## APPLICATION FOR APPOINTMENT TO THE PLAINTIFFS' STEERING COMMITTEE

Since the Court has precluded me from applying for Lead Counsel, as per its previous Order dated June 2, 2010, I am, therefore, applying to be a member of the Plaintiffs' Steering Committee with the particular assignment of Trial Counsel and/or Expert Committee Counsel in this litigation.

I have practiced law full time since September of 1969. Since that time, my office has handled hundreds of thousands of cases of every type including many of the largest chemical explosion cases, train derailment cases and maritime cases in the country. Among the more significant cases handled by my office was the Shell/Norco explosion in 1988 through 1992, where I handled many of the death, injury and burn, as well as the class cases. My office funded most of this litigation on behalf of the Plaintiffs' Committee.

In the Luling Ferry maritime disaster I represented 13 of the 77 death cases and worked on a Committee of seven with U.S. District Judge Eldon Fallon, Jack Martzell (deceased), and Richard Arsenault. This was litigated before U.S. District Judge Alvin Rubin (deceased) and settled within one year for $29 million. Judge Rubin appointed my Economic Expert the Court's Economic Expert (Ernest Huval), calculating the damages for all of the decedents. To date, this is still the largest maritime disaster in the United States.

Honorable Eldon Fallon and I traveled to St. Johns Newfoundland, off the Canadian Coast, at the request of referral lawyers for the sinking of the Ocean Ranger which killed over 100 people. The Canadian Government asked if we would be interested in representing Canadian citizens and this case was ultimately settled.

Honorable Eldon Fallon and I were also involved in the Odeco Rig Ocean Express which sank off the coast of Galveston, TX where 13 people were killed. We both attended all Coast Guard hearing and reported the findings to our respective clients.

Since the Deepwater Horizon sinking, my office and/or I have attended every Coast Guard hearing and MMS hearing. Our office supplied numerous experts to Congressman Waxman's Committee. There are scheduled hearings all of next week which will be attended by Will Percy and myself in Houston, Texas. At the end of each hearing day, our office has supplied a detailed summary of the testimony. Each day I supply the entire Listserv with all relevant documents related to the Deepwater Horizon sinking. This included a summary of the testimony of the National Science Foundation's investigation into the disaster, as well as Prof. Bea's Deepwater Horizon Study Group. I have either retained or personally spoken to many of the experts on these various Committees.

Immediately after the disaster occurred, Russ Herman, Lambert & Nelson, Richard Arsenault, Parker Waichman & Alonso, Robert Becnel, the Cochran Group, R. Edison Hall, Camilo Salas and myself, each put up $5,000 for Richard Aresnault and myself to interview, select and send retainer agreements for every expert we thought necessary to protect the clients' interest in this litigation. They include disciplines such as hydrologists, environmental engineers, toxicologists, blowout preventor experts, drilling experts, and marine experts, to name a few. We interviewed and retained some of the best experts in the world prior to BP and other defendants hiring nearly every other available expert. Russ Herman expressed it best when he said "thank goodness for our hard work otherwise, the plaintiffs would be left without experts and naked." We also had water samples taken throughout the affected area prior to the oil coming on shore, and had Dr. Frank Willis, a hydrologist and an environmental and civil engineer, fly from place to place by seaplane to take photographs of the oil and its aftermath.

Our office has also been involved in numerous other maritime disasters including the Westchester Oil Pollution case in the Mississippi River before U.S. District Judge Jay Zainey which settled and the collision of the Tintomara and Mel Oliver before U.S. District Judge Ivan Lemelle which was ultimately settled.

Appointed by U.S. District Judge John Parker to the Claimants' Steering Committee <u>In the Matter of the Complaint of Ingram Barge Company, as Owner of the M/V F.R. Bigelow and the IB-960, and Ingram Ohio Barge Co., as Owner Pro Hac Vice of the Ing-371, Petitioning for Exoneration From or Limitation of Liability</u>. This case settled for $41.75 million in 1999 (my office handled claims intake for over 17,000 people in this toxic tort maritime disaster), with Don Haycraft.

My office was involved <u>In the Matter of the Complaint of Clearsky Shipping Corp. as Owner, and Cosco (H.K.) Shipping Company Limited, as Manager of the M/V Bright Field, for Exoneration From and/or Limitation of Liability</u> before U. S. District Judge Morey L. Sear. My office is one of ten firms that handled the litigation in this maritime disaster which also settled.

Our office has been involved in single event death and injury cases involving helicopter crashes, tug boat accidents, and barges striking bridges, such as the Manchac Bridge Collapse and Disaster in which seven lives were lost.

Our office is involved in the CAPECO Chemical Explosion in Puerto Rico where the M/V Cape Bruny was offloading fuel and 24 oil storage tanks blew up over a five day period closing the airport in Puerto Rico and injuring thousands. Only this week, I set up additional inspections after having inspected this plant immediately after the explosion. At the request of John Nevares from Puerto Rico, I hired a team of experts that will handle this case before U.S. District Judge Francisco A. Besosa.

As the Court can see, I have been involved in maritime cases throughout my career on a regular basis. I have highlighted a few of the cases that dealt with explosions, oil pollution, environmental issues and clean up.

I personally have been involved in some of the largest litigation in the U.S., including having won the first million dollar verdict in the South for a single individual, tried in Shreveport, Louisiana only two years after I was out of law school entitled "Paulette Trosclair v. Melton Truck Lines, et al."

Court-appointed in one of the first mass tort civil MDL's in the country in MDL No. 330 Swine Flu Immunization Products Liability Litigation to represent all the plaintiffs (approximately 4,000) across the United States in reference to the Swine Flu Inoculation Program. These cases were tried and handled in Washington, D.C. before U. S. District Judge Gearhart Gisel (deceased), with settlements exceeding $500 million with the U.S. Government.

In reference to MDL 926 In re Breast Implant Products Liability Litigation, my office supplied forty-three attorneys, full time, for over two years to the document depository in Cincinnati, Ohio. I was asked to become involved in this litigation by Wendell Gauther after I obtained a million dollar verdict in Jefferson Parish before a jury in a Breast Implant case. In addition, I supervised approximately thirty lawyers who were supplied by Wendell Gauthier, John Cummings, Calvin Fayard and Hugh Sibley. I personally took numerous depositions in this litigation, including the CEO of Dow Corning Corporation and Dr. Georgiade, the inventor of the MEC breast implant devices (a Bristol-Myers defendant). At the request of MDL Judge Pointer, I loaned four of my attorneys, full time, to handle the incoming calls of unrepresented women who needed questions answered in reference to the Breast Implant Litigation. I personally spent, on the common effort, in excess of $4 million.

As one of the founding members of Dianne Castano, et al v. The American Tobacco Company, et al, a class action suit against the tobacco industry, my office represented Governor Gray Davis and the State of California in the states' settlement with the tobacco industry. My office also did extensive work in cases against the tobacco industry that were pending in New York, Pennsylvania and California. After almost a two year trial, jury selection and liability, a verdict was rendered against the Tobacco Industry for in excess of $500 million, which was the only smoking cessation verdict in the entire cigarette litigation. In the Louisiana class action, Scott v. The American Tobacco Company, a certified class action for medical monitoring and cessation assistance in the State of Louisiana before Judge Ganucheau, Orleans Parish, was argued before the Appellate Court six months ago and affirmed; writs denied by both the Louisiana Supreme Court and the U.S. Supreme Court. I am also a member of the Plaintiffs' Committee in the Brown Tobacco case pending in the State of California.

Appointed by Chief Judge John A. Woodcock, Jr. to the Plaintiffs' Steering Committee in MDL No. 2068, In Re: Light Cigarettes Marketing Sales Practices Litigation presently pending in Bangor, Maine. This case represents all of the other 49 states involving Lights Cigarettes.

Appointed to the Plaintiffs' Steering Committee in the case of Jimmie Badon, Jr., et al v. DSI Transports, Inc., et al, 19th Judicial District Court, Number 450,957. This case settled for $9.75 million (my office handled all Proof of Claim forms for 2,300 people in this tractor-trailer tanker and chemical release).

Appointed to the Plaintiffs' Steering Committee in the case involving the Kaiser explosion of July 5, 1999, titled Carl Bell, et al v. Kaiser Aluminum and Chemical Corporation, 23rd Judicial District Court, No. 25,975. This case settled for $26.5 million, plus $11 million for the inside-the-gate cases. My office handled all Proofs of Claim, as well as, over one hundred depositions in this litigation. Personally hired all experts.

Appointed by U.S. District Judge Louis Bechtle (a member of the MDL Panel), as State/Federal Liaison to the national class in MDL 1203 In re Diet Drug Product Liability Litigation. Settled for $22 billion (both State and Federal).

Appointed by U.S. District Judge Eldon Fallon to the Plaintiffs' Steering Committee and Executive Committee in MDL 1355 Propulsid Products Liability Litigation. My office provided office space for the

document depository. Settled for $100 million.

Appointed by U.S. District Judge Kathleen McDonald O'Malley to serve as Class Counsel in MDL 1401 Sulzer Inter-Op Hip Prosthesis Products Liability Litigation (a class settlement in the amount of over $1 billion was reached).

Appointed by U.S. District Judge Michael J. Davis to the Plaintiffs' Steering Committee in MDL 1431 In Re Baycol Products Liability Litigation. Settled for $1.2 billion.

Appointed by U.S. District Judge Joseph R. Goodwin to serve on the Executive Committee and the Plaintiffs' Steering Committee in MDL 1477 In Re Serzone Products Liability Litigation. Settled for $76 million.

Appointed Co-Lead Counsel in MDL No. 1629 In Re Neurontin Marketing and Sales Practices Litigation in Boston. Verdict in this case in the amount of $142 million.

Appointed Liaison Counsel in MDL No. 1632 In re High Sulfur Content Gasoline Products Liability Litigation. All cases settled before U.S. District Judge Ivan L.R. Lemelle.

Appointed by U. S. District Judge Charles R. Breyer to the Plaintiffs' Steering Committee in MDL No. 1691 In Re Bextra and Celebrex Litigation. Cases were settled for $750 million.

Appointed to the Plaintiffs' Steering Committee and Chairman of the Settlement Committee in MDL No. 1708 In Re Guidant Corp. Implantable Defibrillators Products Liability Litigation before U.S. District Judge Donovan W. Frank in St. Paul, Minnesota. I recently participated in settlement negotiations which resulted in a settlement of $240 million.

Appointed to the Plaintiffs' Steering Committee by U.S. District Judge James M. Rosenbaum to MDL No. 1726 In Re Medtronics, Inc. Implantable Defibrillators Products Liability Litigation in Minneapolis, Minnesota. A settlement was reached in this case in the amount of $195 million.

Appointed Lead Counsel by U.S. District Judge Paul A. Magnuson in MDL No. 1724 In Re Viagra Products Liability Litigation. Case settled.

Appointed by Judge Eldon E. Fallon to the Executive Committee in reference to the Murphy Oil Litigation wherein hundreds of homes were destroyed by an oil spill during Hurricane Katrina. This case settled for $330 million.

Appointed to the Preliminary Master Committee in reference to Berthelot, et al v. Boh Brothers Construction (Levee Failure Litigation) by Judge Stanwood R. Duval, Jr. This case involves the flooding of the City of New Orleans and the surrounding parishes as a result of the negligence of the U.S. Army Corps of Engineers and/or its contractors. Our office represents 86,000 people.

Appointed by U.S. District Judge David Katz to the Executive Committee in MDL No. 1742 In Re Ortho Evra Products Liability Litigation in Ohio. All cases were settled on a confidential basis.

Lead Trial Counsel in reference to the Mother's Day Bus Crash where the case was tried and settled in the U.S. District Court before Judge Mary Ann Lemmon and two state Judges. As Lead Trial Counsel, I tried the case against the State of Louisiana, Department of Transportation and Development before Judge Rosemary Ledet resulting in a judgment finding the State 50% at fault. This judgment has been affirmed by an *en banc* panel of the Louisiana Fourth Circuit Court of Appeals and writs denied by the Louisiana Supreme Court. I personally tried this case for all lawyers involved which included 24 deaths and 17 injuries. I personally hired all of the experts in this case. Our office handled all of the briefing and oral arguments before all of the Appellate Courts on Appeal.

Cases filed by my office pending before this Court in the Deepwater Horizon case are the following: C.A. No. 2:10-cv-01229; C.A. No. 10-cv-01308; C.A. No. 10-cv-01325; C.A. No. 10-cv-01346; C.A. No. 10-cv-01482; C.A. No. 10-cv-01539; C.A. No. 10-cv-02078 and C.A. No. 10-2764.

Since critical mass is one of the important factors in the appointment of counsel, it should be noted that I personally represent many of the largest claims in this litigation including Sandestin (recently purchased by Tom Becnel for $1.3 billion), Silver Shells, Tops'L Resort, most of the business locations in Sandestin to name a few.

I have been working closely with Mark Lanier from Texas, Richard Arsenault and Camilo Salas from Louisiana, and the Parker Waichman firm in Florida. Our office has filed Civil RICO cases, environmental cases, economic loss cases, tax abatement cases and personal injury cases in Florida, Louisiana, Mississippi and Alabama. I am involved with the Gulf Action Spill Counsel Team, which includes ten firms with $850 million worth of real estate claims, restaurants, fishermen, etc. I have worked closely with Prof. Tim Howard and his team of ten firms. I have also worked closely with Scott Bickford and Ronnie Penton in reference to the Coast Guard hearings and experts and, in fact, during the Coast Guard hearings in

Louisiana, both Ronnie and Scott, as well as one of the widows, would eat lunch at my guest house during these hearings in Kenner. Keith Jones, whose son Gordon was tragically killed in this incident, recently sent me a thank you for all of the information I have been providing to everyone involved on the Listserv.

As you can see from working with these various groups and sharing information with all concerned, I have the ability to work well with others.

In reference to Continuing Legal Education, on the Oil Spill case I have been invited to talk at Mass Torts Made Perfect at a seminar scheduled in Las Vegas on October 14 & 15, 2010. Russ Herman and Steve Herman will also be making presentations at that time. I will be speaking at the LSBA 17th Annual Admiralty Symposium in New Orleans on September 24, 2010 on the Deepwater Horizon. I have previously spoken at the Louisiana Bar Association Seminar on the Deepwater Horizon on May 25, 2010. I was also invited to speak at the Harris Martin Seminar on the Deepwater Horizon. I spoke at the Deepwater Horizon Seminar in Vancouver at AAJ. My office filed the moving papers for the MDL shortly after the event occurred. I worked closely with Gerald Meunier and was able to convince the Panel to give additional time for the argument before the Panel in Boise, Idaho. In practicing before the Panel for over 37 years, to my knowledge, this is the first time any additional time was granted. I, along with Scott Bickford and Russ Herman, were given 3 minutes. The State was given two minutes and the U.S. Government was given two minutes. Perry Weitz argued for a New York judge to come to Louisiana. Therefore, we had a total of 19 minutes. Usually on cases of this magnitude, you are usually given two to three minutes per district. I believe my meeting ten days before the oral argument with Prof. McGovern, from the Duke Law School, who is doing a large survey for the MDL Panel concerning what is right or what is wrong with MDL's, convinced him of the necessity to give us additional time, along with Gerald Meunier's excellent brief where he and I discussed all of the factors involved.

I was personally hired by Sean Payton, Coach of the New Orleans Saints, not only in the Chinese Drywall case, but also in the Deepwater Horizon case in reference to Sean's home on the beach in Florida. Our office also represents many of the Saints football players, including Ricky Jackson, as well as numerous coaches. Our office has one of the largest inventories of cases in Chinese Drywall in the country representing approximately 9% of the total cases in the United States.

Having one of the largest plaintiff law offices in Louisiana, our office has the ability to work cooperatively with others, as well as the financial resources to fund such a massive case. A case of this type will require a minimum of a million dollars to fund, per firm. In Chinese Drywall our office has already paid $570,000 in assessments and experts, and Chinese Drywall only involves 6,000 people.

Our office made the recommendation for the hiring of Ken Feinberg and Mike Rozen as Special Masters to handle the fund. If the Court looks at my previous application for Liaison Counsel, you will note that almost every suggestion I made to the White House has been adopted with the exception of two. I have worked over the years with Ken Feinberg and Mike Rozen and, in fact, held a seminar at Loyola University, at no expense to the 200 attorneys, to spend hours with Mike Rozen discussing how the fund would handle claims. Thereafter, there was a private dinner attended by Steve Herman, Calvin Fayard, Richard Arsenault's office, Parker Waichman's office, and Beasley Allen's office to be able to tell all of the lawyers how the fund would work. I believe that these various speaking engagements and meetings show the ability of working closely with others.

Almost everyone who knows me knows that I work 60 to 70 hours per week and my office opens at 7:30 a.m. every day, including Saturday. Most people are amazed at how hard I work and how I share my work product with anyone involved in every case where I am appointed, or even not appointed. I have personally attended meetings throughout Louisiana, Mississippi, Alabama and Florida with client groups, and town hall meetings to discuss the issues of the case, not only with my clients but with anyone else's clients.

It would be an honor to serve.

DANIEL E. BECNEL, JR. (#2926)
BECNEL LAW FIRM, LLC
106 West Seventh Street
Post Office Drawer "H"
Reserve, Louisiana 70084
E-mail: dbecnel@becnellaw.com
Telephone (985) 536-1186
Facsimile (985) 536-6445