UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **In Re: Oil Spill by the Oil Rig** | * | |
| **"Deepwater Horizon" in the Gulf** | * | **MDL NO.: 2179** |
| **of Mexico, on April 20, 2010** | * | |
| | * | |
| | * | **SECTION J** |
| **This document relates to 2:10-cv-1926** | * | |
| | * | |
| | * | **JUDGE BARBIER** |
| | * | **MAG. JUDGE SHUSHAN** |
| | * | |
| | * | |

**************************************

**MEMORANDUM IN SUPPORT OF RULE 59(E) MOTION TO ALTER OR AMEND
JUDGMENT DENYING COPELAND'S MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION, AND FOR COURT SUPERVISION**

The plaintiffs – Copeland's of New Orleans, Inc., Cheesecake Bistro, L.L.C., and Sweet

Fire and Ice, L.L.C. (collectively, "Copeland's") – submit this memorandum in support of their

motion for this Court to alter or amend its judgment denying Copeland's motion for a temporary

restraining order and preliminary injunction, and for court supervision. Case No. 10-1156, Doc.

No. 328 ("Copeland's motion").

Copeland's brings this motion because it believes this Court's Judgment may have relied on

manifest factual errors contained in BP's opposition, namely, BP's assertion that Copeland's did

not file a claim with BP. As will be shown below, that assertion is flat wrong. Not only did

Copeland's file a claim with BP, it did so twice. BP's inability to keep track of its own claims process (and who has or has not filed a claim) further supports Copeland's original motion. It reveals the manifest legal error in the legal arguments in BP's opposition. Finally, allowing the July 23 Judgment to stand would result in manifest injustice, as the legal basis argued by BP in its opposition was that it would forsake its OPA obligation to maintain a claims process, an argument that has manifested itself in recent developments regarding the establishment of the Gulf Coast Claims Facility ("GCCF") and the shutting down of BP's claims program. Therefore, Copeland's believes that this Court should revisit its prior Judgment in light of the correct facts, and that the Court should grant the relief originally requested by Copeland's, particularly with regard to the exercise of court supervision (or, alternatively, the appointment of a special master) to ensure that BP (or the GCCF acting appropriately on behalf of BP) complies with all statutorily and Constitutionally required process in the establishment and maintenance of the claims program.

## I.   Background

### A.   Copeland's Motion, BP's Opposition, and the Judgment

On July 8, 2010, the Copeland's plaintiffs filed their initial Complaint in this matter. Case No. 10-1926, Doc. No. 1.[1] On July 21, prior to the filing of any responsive pleadings, pursuant to Federal Rule of Civil Procedure 15(a)(1) Copeland's filed its First Amended and Supplemental Complaint. Doc. Case No. 10-1156, Doc. No. 327. Specifically, Copeland's added a new First Cause of Action for declaratory relief regarding relief under the Oil Pollution Act of 1990 ("OPA"), including allegations that BP is charged with the responsibility under OPA to

---

[1]     This case was subsequently consolidated with case no. 10-1156 in the Eastern District of Louisiana, prior to the lodging of MDL No. 2179. This Court then ordered that this case be consolidated into the proceedings at MDL No. 2179. Doc. No. 15.

administer a claims program, that OPA requires claimants to file a claim with the "responsible party," and seeking a declaration that, *inter alia*, Copeland's is an eligible claimant under OPA. *Id.* at ¶¶ 18-20. Also on July 21, Copeland's filed its motion for TRO and for court supervision, Case No. 10-1156, Doc. No. 328, specifically seeking an injunction against BP directing BP and anyone conducting claims on its behalf – including Kenneth Feinberg and the GCCF – to publicize and advertise immediately any "zone of eligibility" standards or any other categorical determination that certain classes of potential claims will be denied; and asking this Court to exercise supervision over the procedures employed by the GCCF in administering BP's claims responsibilities under OPA to ensure that those procedures comply with all statutory and Constitutional requirements, or alternatively appoint a Special Master to perform this supervisory role pursuant to Federal Rule of Civil Procedure 53.

BP filed its opposition to Copeland's motion, relying primarily on the erroneous assertion that none of the Copeland's plaintiffs filed OPA claims with BP. BP repeated this assertion throughout its opposition, using it as the underlying factual basis for almost every substantive point of analysis. Case No. 10-1156, Doc. No. 368, at pp. 1 ("[T]he three moving plaintiffs have not even filed a claim, much less had a claim denied by BP or the [GCCF], as [OPA] requires before any litigation like this is filed."), 2 ("BP's OPA claims process has been operating since late April 2010 and is currently adjudicating and paying claims filed by individuals and businesses. Despite this, plaintiffs [Copeland's] have not filed OPA claims. Indeed, plaintiffs have not pursued OPA claims even though they concede that, under OPA, '[u]pon either denial of a claim or the passage of 90 days from presentment of a claim, a party may elect to seek relief ... through the courts through a substantive claim for damages against BP."), 3 ("Plaintiffs profess concern over the OPA claims process, but to date, they have not even submitted an OPA

claim or participated in the claims process."); 3 ("[G]iven that plaintiffs have not submitted an OPA claim, their complaint under OPA is not ripe and there is no case or controversy for this Court to decide."), 4 ("By its terms, OPA precludes any court action unless and until an individual or business has presented a claim to the claims facility and that claim has been denied. Because plaintiffs have not submitted any OPA claim, their complaint about the OPA claims process must be dismissed."), 7 ("[C]ounsel for movants fail to mention a key fact in their brief and complaint – their clients *have not filed any claim* through the BP claims process. … Plaintiffs' complaints ring hollow in light of this indisputable and essential fact. The plaintiffs (movants) have not even attempted presentment of their claim to BP (much less the GCCF).") (emphasis in original), 8 ("Plaintiffs have not even attempted to avail themselves of the claims procedures granted by OPA, although they demonstrate in their brief that they are well aware of the process and the OPA presentment requirement."), 8 ("In the three months since [BP commenced its claims process], not one of the plaintiffs has filed an OPA claim with BP."), 9 ("[N]one of the plaintiffs have submitted a claim pursuant to the BP claims process currently in place."), 13 ("As their motion papers make clear, plaintiffs are aware of the claims process and their rights under OPA; they have simply decided not to engage in that process to date. And because they have not submitted any OPA claim, their purported concern about how a non-existent claim would be administered by BP or the GCCF under Administrator Feinberg is pure speculation, which is a legally insufficient basis for any injunctive relief."), 15 ("Plaintiffs do not allege here that they have complied with this OPA-mandated claims presentment requirement, and BP's records confirm that none of the three plaintiffs have filed an OPA claim."), 18 ("Given that plaintiffs have not even filed a claim or participated in the OPA claims process, they cannot show *any* harm from denial of their motion.").

4

BP is patently, demonstrably wrong. Copeland's has, on multiple occasions, filed claims with BP's claims process. Indeed, BP's failure to recognize Copeland's claims only serves to underscore the need for this Court to supervise the claims process. In its July 23 Judgment, this Court found that the Copeland's plaintiffs "have not established their factual or legal burden of proving that a temporary restraining order or a preliminary injunction should be issued at this time." To the extent that this Court's ruling relied on the erroneous information contained in BP's opposition, this Court should reconsider.

**B.     Copeland's Claim in the BP Claims Process**

Despite BP's repeated assertions to the contrary in its opposition, and the attestation in the Declaration of Darryl Willis, Vice President-Resources for BP America Inc., attached to BP's opposition, that "<u>none</u> of the plaintiffs who have filed for declaratory relief and for an injunction … have filed a claim through the above-described claims process for any alleged losses,"[2] all three of the Copeland's plaintiffs have been pursuing claims through BP's claims process since prior to May 24, 2010.

Catherine Walston, a paralegal working with the undersigned, first filed claims on behalf of each of the Copeland's plaintiffs via BP's online claims form at www.bp.com/claims prior to May 24, 2010.[3] Despite instructions on the online form that she would be contacted via e-mail or telephone with claims numbers for each of the Copeland's entities, she did not receive any such contact from BP.[4] As a result, she called BP's claims number multiple times to ascertain the status of the claims; on the last of those calls, she was informed by BP's claims personnel that up to half of claims submitted through the online form were never fully processed and were never

---

[2]     Declaration of Darryl Willis (July 23, 2010) (Exh. A to Doc. No. 368, Case No. 10-1156), at ¶ 9.

[3]     Affidavit of Catherine Walston (July 26, 2010) (Exh. A hereto), at ¶ 2.

[4]     *Id.* at ¶¶ 3, 4.

assigned claims numbers.[5] Therefore, on June 24, 2010, after determining that the Copeland's claims must have been lost, Ms. Walston completed the online forms for each of the three Copeland's entities a second time, and printed out the completed forms to retain a record of the claims submission.[6] On June 25, 2010, Ms. Walston received three emails with the claims numbers for the Copeland's claimants: 6866-124-177270 for Copeland's of New Orleans, 6866-124-177269 for Cheesecake Bistro, and 6866-124-177271 for Sweet Fire and Ice; three days later, she also received letters addressed to Robert Kutcher, counsel of record for the Copeland's plaintiffs and one of the undersigned, dated May 24, 2010, and containing the same three claims numbers.[7] On July 9, 2010, Ms. Walston sent BP letters of representation on behalf of the Copeland's claimants.[8] Subsequently, Ms. Walston had multiple conversations with Ms. Elizabeth Debenedetto, an interim claims adjuster assigned to the Copeland's claims, including a conversation on July 23 – the same day BP filed its opposition proclaiming that Copeland's had not filed any claims – wherein Ms. Debenedetto specifically confirmed the claims numbers for the Copeland's entities.[9]

Therefore, the "indisputable and essential"[10] factual basis for the bulk of BP's arguments in its opposition, and the subject of an attestation by BP's Vice President of Resources, who claims to have "responsibility for the BP claims process,"[11] is manifestly false. The confusion of this claims process shows further why this Court should exercise oversight of the claims process.

---

[5]   *Id.* at ¶¶ 4, 5.
[6]   *Id.* at ¶ 6, and at Exh. 1 to Ms. Walston's Affidavit.
[7]   *Id.* at ¶¶ 7, 8, and Exhs. 2 and 3 to Ms. Walston's Affidavit.
[8]   *Id.* at ¶ 11, and Exh. 4 to Ms. Walston's Affidavit.
[9]   *Id.* at ¶¶ 12, 13.
[10]  BP's Opposition, at 7.
[11]  Declaration of Darryl Willis (July 23, 2010) (Exh. A to Doc. No. 368).

## II.      Analysis

### A.      Rule 59(e) Standard

Federal Rule of Civil Procedure 59(e) provides a party 28 days from the entry of a judgment to move to alter or amend that judgment. Fed. R. Civ. P. 59(e); *see also* Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all of the claims or the rights and liabilities of fewer than all of the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."); *In re Elevating Boats LLC*, 286 Fed. Appx. 116, 122 (5th Cir. 2008). Rule 59(e) specifically can be applied to orders regarding requests for TROs. *See McWaters v. FEMA*, 408 F. Supp. 2d 221, 237 (E.D. La. 2006).

> Factors to consider in ruling on a motion to alter or amend include whether the judgment was ***based upon a manifest error of fact or law*** and whether amendment is necessary ***to prevent manifest injustice***. Courts enjoy considerable discretion in addressing a Rule 59(e) motion; however, relief under Rule 59(e) is an extraordinary remedy that should be used sparingly. Courts typically consider four factors in exercising their discretion: (1) whether the judgment was based upon a manifest error of fact or law; (2) whether the movant presents newly discovered or previously unavailable evidence; (3) whether amendment is necessary to prevent manifest injustice; and (4) whether an intervening change in controlling law has occurred. In addition, courts must attempt to strike the proper balance between two competing imperatives: (1) finality, and (2) ***the need to render just decisions on the basis of all the facts***. Such a motion is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment, and thus courts will grant such a motion only to correct manifest errors of law or facts or to present newly discovered evidence.

*Id.* at 238 (emphasis added). In addition, independent of the issue of the requested TRO, Copeland's requests that this Court exercise its power under Rule 59(e) to alter its judgment

specifically with regard to its request for court supervision (or, alternatively, appointment of a Special Master) of the claims process.

It is fully within this Court's jurisdiction to reopen the Judgment to consider further evidence and ensure that it has all of the facts before it. *See Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167, 174 (5th Cir. 1990), *overruled on other grounds*, *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994); *see also Hale v. Townley*, 45 F.3d 914, 921 (5th Cir. 1995). For example, in *United States v. Casita Enterprises, Inc.*, 2010 WL 935379 (5th Cir. March 16, 2010) (unpub.), the United States sought to recover costs of fire abatement under 28 U.S.C. § 2415(b), which requires proof that the lands on which the wildfire occurred be owned by the federal government. Although the allegations in the United States' complaint supported this triggering condition, the district court granted a summary judgment in favor of the defendants on the basis that the United States had not established ownership of the lands at issue. *Id.* at *1-2. The United States sought by a Rule 59(e) motion to introduce evidence of the government's ownership of the land. *Id.* at *2. On appeal of the district court's summary judgment and denial of Rule 59(e) relief, the Fifth Circuit held that the district court abused its discretion in not vacating the summary judgment in favor of the defendants in the face of the proof of ownership provided by the United States in its Rule 59 motion. *Id.* at *2. Likewise, here the Court should consider the evidence attached to this Rule 59 motion where it establishes conclusively that the Copeland's plaintiffs are claimants in the BP claims process (and have been since May 2010), thus refuting BP's assertion that Copeland's is not entitled to raise its claims for declaratory and injunctive relief and its request for court supervision.

8

### B.     Manifest Error of Fact

As detailed above, the "key" and "indisputable and essential fact"[12] identified by BP in its opposition was that the Copeland's plaintiffs had failed to file OPA claims in the BP claims process. No less than a dozen times in BP's opposition did it rely on this assertion, and it featured, as well, in Mr. Willis's declaration attached to the BP opposition. This assertion was material to BP's position, and it is patently untrue. Not only did the Copeland's plaintiffs filed claims two months prior to the filing of BP's opposition, but they did so twice because BP appeared to have lost track of the claims the first time.[13] While Copeland's doubts that BP's misrepresentation of these facts was deliberate, it is nevertheless telling that BP is unable to keep track of the claimants that have entered its claims process and administer this process efficiently.

Here the Court's Judgment appears to rely on BP's erroneous assertion that Copeland's had not filed a claim (and the arguments that flowed therefrom). Under these circumstances, Copeland's urges this Court to exercise its Rule 59(e) discretion to reopen its motion and alter or amend the Judgment to reflect a ruling based on the actual facts of the matter.

### C.     Manifest Error of Law

In addition to basing its analysis on a patently mistaken presentation of the facts, BP's arguments in its opposition have led to manifest error of law in the Judgment. First, BP's legal arguments as to this Court's authority to grant relief with regard to the OPA claims *process* conflate that issue with the completely distinct issue of whether the Court has authority to grant relief with regard to the *substance* of particular OPA damages claims. Second, BP admits that the GCCF process to which it is transitioning is outside of the OPA statutory framework, such

---

[12]    BP's opposition, at 7.
[13]    Affidavit of Ms. Walston, Exh. A hereto.

that moving forward without the Court supervision requested by Copeland's would result in clear legal error.

While *the substance* of claims for damages pursuant to OPA may be subject to OPA's presentment requirement, questions as to whether *the procedure* employed by or on behalf of BP in administering the claims scheme is fair and comports with all statutory and Constitutional requirements are well within this Court's jurisdiction. OPA provides a strict liability regime for certain defined types of damages resulting from a discharge of oil into navigable waters or upon adjoining shorelines. *See* 33 U.S.C. § 2702(a). OPA also provides that federal district courts "shall have exclusive original jurisdiction over *all controversies* arising under this Act." 33 U.S.C. § 2717(b) (emphasis added). Nevertheless, BP claims that the presentment requirement in 33 U.S.C. § 2713(a) operates to limit this Court's jurisdiction over "all controversies" pending completion of the presentment requirement. Section 2713, however, expressly only applies to claims for damages or removal costs. 33 U.S.C. § 2713(a). It does not apply to other controversies arising under OPA, and the "all controversies" provision of § 2717(b) confers unqualified jurisdiction on this Court to entertain controversies beyond those that are limited to the substance of a damages or removal costs claim. BP finds significant that there is no specific provision for judicial review of the process put in place by a responsible party to govern § 2713 claims,[14] yet BP's focus solely on § 2717(a) as one source of judicial remedy (for challenges to regulations promulgated under OPA) completely reads out of the statute the "all controversies" language in § 2717(b). Such a construction is anathema to the statutory construction principles applied by the federal courts. *In re: Southern Scrap Material Co., LLC*, 541 F.3d 584, 594 (5th Cir. 2008).

---

[14]    BP's opposition, at 16.

The nature of the declaratory and injunctive relief sought by Copeland's at this stage does not run afoul of the presentment requirement of the OPA claims program. The damages sought in Copeland's First Amended and Supplemental Complaint arise solely under state law, while the OPA relief that Copeland's seeks in that complaint is limited to the administration of the procedures and standards applied in the BP claims process. The only forum in which Copeland's is currently seeking *damages* under OPA is in the claims that the Copeland's claimants have filed (twice) with BP.[15] The specific relief sought from the Court in the Copeland's motion is not a substantive determination of the merits of the claims being pursued through BP's claims scheme, but is oversight over the procedures that govern the implementation of that scheme. The presentment requirement in OPA does not foreclose the exercise of such jurisdiction, nor are the jurisdictional or statute of limitations provisions at 33 U.S.C. § 2717 in any way qualified so as to preclude the exercise of jurisdiction to provide the procedural supervision sought by Copeland's.

The cases cited in BP's opposition regarding the presentment requirement are all cases concerned with whether claimants may bring the substance of their OPA damages claims to a court prior to engaging in the presentment process. *See Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.*, 51 F.3d 235, 237-38 (11th Cir. 1995) (specifying that a "claim" subject to the presentment requirement is specific to a claim for damages or removal costs under 33 U.S.C. § 2701(3)); *Gabarick v. Laurin Mar. (Am.) Inc.*, 2009 WL 102549, *2 (E.D. La. Jan. 12, 2009); *Turner v. Murphy Oil USA, Inc.*, 2007 WL 4208986 (E.D. La. Nov. 21, 2007); *Abundiz v. Explorer Pipeline Co.*, 2003 WL 23096018, *1 (N.D. Tex. Nov. 25, 2003); *Marathon Pipe Line Co. v. LaRoche Indus., Inc.*, 944 F. Supp. 476, 477-79 (E.D. La. 1996) (refusing to extend §

---

[15]     Indeed, according to materials recently released by the GCCF and BP, it appears Copeland's may have to file these materials a *third* time with the GCCF.

2713(a)'s presentment requirement beyond the limited provisions of the statute); *U.S. v. Murphy Expl. & Prod. Co.*, 939 F. Supp. 489, 490 (E.D. La. 1996); *Johnson v. Colonial Pipeline Co.*, 830 F. Supp. 309, 310 (E.D. Va. 1993). While courts have found that OPA's presentment requirement prevents a party from bringing a claim for recovery of damages under OPA to a court before engaging in the 90 days' claims scheme under 33 U.S.C. § 2713(a), those decisions concern only whether a court can hear the merits of the claim for OPA damages, not whether a court's § 2717 jurisdiction is precluded as to issues regarding the procedures employed in the claims scheme. *See, e.g., Gabarick v. Laurin Maritime (America) Inc.*, 623 F. Supp. 2d 741, 750-51 (E.D. La. 2009); *see also Tanguis v. M/V Westchester*, 153 F. Supp. 2d 859, 867 (E.D. La. 2001).

Indeed, in one of the cases cited in BP's opposition, *Marathon Pipe Line*, this Court refused to extend the presentment requirement of § 2713(a) to a claim by a designated responsible party against a possible sole-cause third party:

> Congress specifically limited the treatment of a sole cause third party as a responsible party to the determination of liability. Congress could have adopted a more expansive treatment of a sole cause third party as the responsible party in § 2702(d)(1)(A) ..., but did not do so. ... The Court can only conclude where [Congress] did not include such a cross-reference in a particular provision, Congress did not intend for another provision to apply. Accordingly, absent such language, ***the Court will not read into the statute a presentation requirement that Congress did not include.***

944 F. Supp. at 478-79 (emphasis added). Where OPA fails to address a particular aspect of a claim arguably otherwise arising under OPA, such as particular procedural oversight to be employed in the initial presentment scheme, this Court is free to exercise its "all controversies" jurisdiction under § 2717(b). *See also Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atlantic Corp.*, 924 F. Supp. 1436, 1454 (E.D. Va. 1996) (holding that, where OPA does not provide

specifically applicable provisions to a dispute, courts may "bridge the gap" by applying general maritime law).

Furthermore, BP's opposition and the supporting materials attached to the opposition suggest that BP anticipates that the GCCF will operate outside the parameters authorized in OPA, resulting not in an "extra-judicial," but an **extra-legal** scheme with no basis in any law. Lacking court supervision, this result would be clear legal error. As BP concedes – indeed, urges – throughout its brief, the presentment requirement of § 2713(a) is a critical component of the OPA scheme. As BP admits, "[t]he public interest is best served in this matter by effectuating and enforcing Congress' intent *as expressed in OPA*[.]"[16] Congress's intent was to provide a limited window within which claimants would present claims *to the responsible party* and negotiate a quick and fair resolution of those claims *with the responsible party*. *See* 33 U.S.C. § 2713(a) ("[A]ll claims for removal costs or damages shall be presented first to the responsible party or guarantor of the source designated under section 2714(a) of this title."); *see also Johnson*, 830 F. Supp. at 310-11 ("The purpose of the claim presentation procedure is to promote settlement and avoid litigation.").

Yet, BP also concedes that the GCCF, to which it acknowledges it will be transitioning its claims program,[17] is a "process that is being established under the auspices of the Executive Branch."[18] BP has also repeatedly characterized the GCCF process as an "independent claims process."[19] BP stresses that the GCCF process is subject to parameters dictated in a White House

---

[16]     BP's Opposition, at 19 (emphasis added).

[17]     Declaration of Darryl Willis (July 23, 2010) (Exh. A to Doc. No. 368, Case No. 10-1156), at ¶ 8; *see also* Declaration of Geir Robinson (July 23, 2010) (Exh. B to Doc. No. 368, Case No. 10-1156), at ¶ 1.

[18]     BP's opposition, at 19.

[19]     Declaration of Geir Robinson (July 23, 2010) (Exh. B to Doc. No. 368, Case No. 10-1156), at ¶ 6.

"Fact Sheet," demonstrating the GCCF's independence from BP.[20] BP has adopted Kenneth

Feinberg's own testimony that the GCCF will be "totally independent."[21] Aside from these

positions taken by BP prior to this Court's July 23 Judgment, recent developments have

confirmed that BP is actively backing away from its OPA-defined duty. In a press release issued

by BP on August 17, 2010, BP announced that it "is in the final stages of preparing to transfer

responsibility for individual and business claims related to the oil spill in the Gulf of Mexico to

the Gulf Coast Claims Facility (GCCF) on August 23."[22] BP confirmed that it is shutting down

its own claims program: "BP will accept new claims into its system through Wednesday, August

18. From August 19-22, individuals and businesses will be asked to file a claim when the GCCF

is operational on August 23."[23] Lest there be any ambiguity, BP reiterated, "Effective August 23,

GCCF will be the only authorized organization managing business and individual claims related

to the Deepwater Horizon Incident."[24]

Despite BP's characterization of GCCF as an "authorized organization" in its press

release announcing its abdication of its claims responsibilities under OPA, there is no authority

within OPA for a responsible party to delegate its claims responsibility to a totally independent

claims administrator. There is no authority within OPA for the Executive Branch to engineer

alterations to the claims process in § 2713. OPA is clear that claimants must bring their claims to

---

[20]  *Id.* at ¶¶ 6-7.

[21]  *Id.* at ¶ 9; *see also* Testimony of Kenneth R. Feinberg to the U.S. House of
Representatives Committee on Small Business (June 30, 2010) (Tab 2 to Exh. B to Doc. No.
368, Case No. 10-1156); Testimony of Kenneth R. Feinberg to U.S. House of Representatives
Committee on the Judiciary (July 21, 2010) (Tab 3 to Exh. B to Doc. No. 368, Case No. 10-
1156).

[22]  "BP Readies to Transfer to Gulf Coast Claims Facility as Claim Payouts Top $368
Million" (Aug. 17, 2010) (available at
http://www.bp.com/genericarticle.do?categoryId=2012968&contentId=7064522) (Exh. B
hereto).

[23]  *Id.*

[24]  *Id.*

the responsible party, and does not provide that claimants must being their claims to an extra-statutory third party. That BP is now advocating that Copeland's requested relief should be denied because the GCCF is "totally independent" suggests manifest legal error if this is the basis for the Court's Judgment. If BP is preparing to completely abdicate its statutorily defined role in the OPA claims process, then the questions asked in Copeland's motion with regard to court supervision over the establishment of the GCCF procedures are even more critical. Indeed, to the extent that BP is no longer fulfilling its obligation as an OPA "responsible party" to maintain a claims process, then there is no OPA claims process to which claims can be presented. In this case, Copeland's suggests that the issue is now ripe whether the OPA presentment requirement has been waived by BP.[25]

In response to Copeland's request for injunctive relief, BP asserts that Copeland's has adequate relief available in the form of money damages under OPA, but this completely misses the thrust of Copeland's argument. First, as discussed above, the relief requested by Copeland's is with regard to the standards and procedures employed in the BP claims process, either by BP or by the GCCF (assuming that the GCCF is operating on BP's behalf), not relief with regard to any particular disposition of Copeland's claims. Monetary damages would be an adequate remedy for the latter, but not for the former. Each of the arguments by BP in its opposition to the request for injunctive relief depend either on the manifest factual error that Copeland's has filed no claims or on the legal error manifest in this conflation of the request for relief on the procedure governing BP's claims process with the request for relief on the merits of Copeland's OPA damages claims. Because Copeland's does not request that this Court review the merits of

---

[25]     In fact, in a "Frequently Asked Questions" document put out by the GCCF, the GCCF represents plainly, "Individuals and Businesses should no longer present claims to BP." *Gulf Coast Claims Facility Frequently Asked Questions*, at ¶ 1.5 (Exh. C hereto).

its OPA damages claims at this time (which claims have been properly before BP for almost three months now), any Judgment based on the cases cited by BP regarding compliance with the presentment requirement before the substance of damages claims may be brought to a court is inappropriate. For example:

- BP argues that Copeland's has no irreparable harm because the plaintiffs have the potential for a lawsuit for monetary damages.[26] Monetary damages based on standards and procedures that do not comply with statutory and Constitutional guarantees, however, will be inadequate, particularly where BP is able to manipulate when presentment occurs by losing claims and shuffling claimants from one adjuster to another,[27] causing severe delay to the plaintiffs' (and other claimants') exercise of their right to seek judicial review.

- BP also argues that Copeland's has no irreparable harm from the chilling of legitimate claims because Copeland's has not submitted any claims to the process.[28] Of course, as demonstrated above, this circular argument has no basis in fact, leaving intact Copeland's argument that the chilling of claims represents an irreparable harm.

- BP's argument that Copeland's has no likelihood of success on the merits is based on the faulty premise that Copeland's had not filed a claim and the mistaken legal premise that relief with respect to the standards and procedures of the claims process must first be "presented" to BP.[29]

---

[26]    BP's opposition, at 12.
[27]    Affidavit of Catherine Walston (July 26, 2010) (Exh. A hereto), at ¶¶ 4, 5, 9, 10, 14; *see also* Affidavit of Jeffrey Berniard (July 26, 2010) (Exh. D hereto), at ¶¶ 5-11.
[28]    BP's opposition, at 13.
[29]    BP's opposition, at 14-15.

- BP's argument that Copeland's does not have a substantial likelihood of success on the merits because there is no specific provision in OPA for judicial review of the procedures employed by a responsible party is legally incorrect because it ignores the "all controversies" provision of 33 U.S.C. § 2717(b).[30]

- BP's argument that the balance of harms weighs in its favor is completely without any legal or factual basis.[31] The only injunctive relief sought by Copeland's is that BP and those acting on its behalf publicize the parameters of any "zones of eligibility" – widely discussed by Mr. Feinberg and not disputed by BP in its opposition – so that claimants can know that they have been effectively denied and can move more quickly to judicial review. BP argues that this would somehow harm claimants and would impede the goal of an efficient and effective claims process, but does not explain how. Indeed, if BP or the GCCF would publicize up front the basis for their predeterminations of eligibility for certain categories of claimants, the boundaries of these "eligibility zones," then the claims process would be vastly streamlined and important questions of OPA applicability could be more quickly answered by the courts when the merits of claimants' claims may then be brought to the Fund or to courts for review. As Mr. Feinberg himself is reported to have stated, however, BP has been "stalling."[32]

---

[30]    BP's opposition, at 15-18.

[31]    BP's opposition, at 18-19.

[32]    Leigh Coleman, "BP stalls payments to oil spill victims: Feinberg," Reuters (July 24, 2010) (available at http://www.reuters.com/article/idUSTRE66N15020100724) (Exh. C hereto) ("*I have a concern that BP is stalling claims. Yes, BP is stalling. I doubt they are stalling for money. It's not that. I just don't think they know the answers to the questions* (by the claimants),' Feinberg told reporters.") (emphasis added). *See Galaviz v. Post-Newsweek Stations*, 2009 WL 2105981, *5 & n.51 (W.D. Tex. July 13, 2009) (observing that courts may take judicial notice of newspaper articles on a particular subject matter, not as proof of the matters asserted therein, but as proof of the existence of the articles and the fact of publication of the subject matter).

- BP's argument that Copeland's requested relief disserves the public interest in compliance with the OPA presentment process[33] is belied by the fact that BP concedes that it is preparing to bow out of its role in the presentment process, and again does not explain how the requested injunctive relief will impede the OPA claims process rather than streamline it. Indeed, as recent developments have shown, BP is shutting down its claims process, even knowing that its August 18 shut-down will leave a gap before the "independent" GCCF will begin accepting claims on August 23.

As for the independent relief sought by Copeland's – court supervision over the procedures put in place by BP and any entity acting on its behalf – the shifting shell games played by BP – losing claims, accepting claims anew, communicating regarding and confirming claims, denying claims exist, arguing that the OPA presentment requirement must be complied with, then implying that it doesn't have to perform its role in the OPA presentment requirement by relying in defense of its actions on the assertion that the GCCF is operating totally independently – suggest that the danger is great that, to the extent it relied on BP's erroneous opposition, the Judgment contained legal error.

### D.    Manifest Injustice

Aside from the manifest factual and legal errors in any Judgment that is based on the arguments put forth in BP's opposition, it is becoming ever clearer that court supervision is required to prevent manifest injustice. In confirming the existence of the claims lodged by the Copeland's claimants, the undersigned counsel also confirmed that the Copeland's claim was (1) lost at least once; (2) shuffled from the claims center to the Legal Department; and (3) will not even be handled by its current assigned adjuster but will be shuffled again to a "Large Loss

---

[33]    BP's opposition, at 19-20.

Claims" adjuster.[34] Additionally, Ms. Walston attests that she has been informed by BP claims center personnel that claimants represented by counsel are not allowed to use BP's toll-free claims line.[35] This experience of BP losing claims or claims materials, and of being shuffled from one adjuster to another, is not unique to the Copeland's claims.[36] Indeed, after filing the initial motion at issue here, counsel for Copeland's was contacted by Jeffrey Berniard, counsel for another claimant, who reported (and attests in an attached affidavit) that he has been informed by BP claims adjusters that his client's claims are of a "*type* that is not being paid" – supporting the media reports that BP has a categorical approach to claim eligibility – but that BP would not issue a former denial because claims are not being denied at this time, just not paid.[37] Mr. Feinberg of the GCCF has recently been reported to have characterized BP's claims process as a "black hole": "'No more beating up on BP. BP leaves the scene, Feinberg said at a meeting here with hundreds of spill claimants. 'If you file an eligible claim and document it, we guarantee to process personal claims within 48 hours.... If you're a business and you've been waiting for months in a black hole with BP, you will get an answer within seven days.'"[38]

While these incidents show that BP has, indeed, been "stalling," that it is seeking to delay litigation by deliberately withholding formal denials while at the same time relying on unpublished categorical treatment to effectively deny classes of claims, BP argues that this is actually permissible. BP argues that there is no provision for a court to supervise or review such

---

[34]    Affidavit of Catherine Walston (July 26, 2010) (Exh. A hereto), at ¶¶ 4, 5, 9, 14.
[35]    *Id.* at ¶ 10.
[36]    Affidavit of Jeffrey Berniard (July 26, 2010) (Exh. D hereto), at ¶¶ 2-7, 8-9.
[37]    Affidavit of Jeffrey Berniard (July 26, 2010) (Exh. D hereto), at ¶¶ 10-11.
[38]    Kim Murphy, "Mediator takes reins on gulf oil spill claims," Los Angeles Times (Aug. 19, 2010) (available at http://latimes.com/news/nationworld/nation/la-na-oil-spill-claims-20100819,0,5676447.story) (Exh. E hereto).

procedural approaches to the OPA claims process,[39] such that it can operate its claims program in such a manner with impunity. BP then argues that this is perfectly acceptable, that "there is no duty owed to the plaintiffs for the responsible party to conduct the OPA presentment requirement in any particular way."[40] According to BP's view, it may be held to any standard or no standard at all; it can conduct its claims procedure in such a way as to abdicate responsibility altogether, to lose claims materials, to indefinitely delay "presentment" of claims so as to delay judicial review through arbitrary rules regarding contact with claimants or accumulation of materials or shuffling of claims among adjusters and departments, with no role for the courts to protect claimants from such abuses.[41] OPA is novel among federal statutes in delegating control of a prerequisite claims process to a private party responsible for the loss, rather than a government agency. Conduct of a government agency is at least governed by the Administrative Procedure Act's "arbitrary and capricious" standard. *See Medina County Envtl. Action Ass'n v. Surface Transp. Bd.*, 602 F.3d 687, 699 (5th Cir. 2010) (describing the APA "arbitrary and capricious" standard as requiring court scrutiny as to whether "the agency considered the relevant factors in making the decision, its action bears a rational relationship to the statute's purposes, and there is substantial evidence in the record to support it"); *cf. Schexnayder v. Hartford Life & Acc. Ins.*

---

[39]    BP's opposition, at 16.

[40]    *Id.*

[41]    Now, of course, with the filing of claims with BP by claimants such as Copeland's nearing the 90-day mark, the GCCF is indicating that claims will need to be refiled with it. *See* Gulf Coast Claims Facility Frequently Asked Questions, at ¶ 1.4 ("If you have previously filed a claim with BP your information will be transferred to the GCCF. **You must complete a GCCF Claim Form if you intend to apply to receive Emergency Advance Payments or a Final Payment for your damages or losses through the GCCF.** You will be assigned a new GCCF Claimant Identification Number.") (emphasis in original) (Exh. C hereto). Will this further push back the commencement of the presentment period? Is it even presentment at all, where BP is the responsible party and there is no authority for a completely independent claims process with BP "leav[ing] the scene." Kim Murphy, "Mediator takes reins on gulf oil spill claims," Los Angeles Times (Aug. 19, 2010) (available at http://latimes.com/news/nationworld/nation/la-na-oil-spill-claims-20100819,0,5676447.story) (Exh. E hereto).

*Co.*, 600 F.3d 465, (5th Cir. 2010) (noting that ERISA plan fiduciaries' decisions are subject to the same type of "arbitrary and capricious" judicial review). BP's view of OPA, however, is that the corporate malfeasor can operate without even this level of scrutiny – indeed, without any scrutiny. This is a manifest injustice that must be prevented.

## III.   Conclusion

For these reasons, Copeland's requests that this Court alter or amend its Judgment to take into account the full and accurate facts of Copeland's claims, as well as the appropriate legal standards to apply to those claims.

Respectfully submitted,

*/s/ James M. Garner*
**JAMES M. GARNER (# 19589)**
**TIMOTHY B. FRANCIS (# 14973)**
**JOSHUA S. FORCE (# 21975)**
**SHARONDA R. WILLIAMS (# 28809)**
**EMMA ELIZABETH ANTIN DASCHBACH (#27358)**
Sher Garner Cahill Richter Klein & Hilbert, L.L.C.
909 Poydras Street, 28th Floor
New Orleans, Louisiana 70112-1033
Telephone: (504) 299-2100
Facsimile: (504) 299-2300

and

**GLADSTONE N. JONES, III (# 22221)**
**LYNN E. SWANSON (#22650)**
**EBERHARD D. GARRISON (# 22058)**
**KEVIN E. HUDDELL (# 26930)**
**H.S. BARTLETT III (# 26795)**
**JACQUELINE A. STUMP (# 31981)**
Jones, Swanson, Huddell & Garrison, L.L.C.
Pan-American Life Center
601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130
Telephone: (504) 523-2500
Facsimile: (504) 523-2508

and

**JAMES R. SWANSON (# 18455)**
**JOSEPH C. PEIFFER (# 26459)**
**LANCE C. McCARDLE (# 29970)**
**JASON W. BURGE (# 30420)**
**ALYSSON L. MILLS (# 32904, admission pending)**
Fishman Haygood Phelps Walmsley Willis
          & Swanson, L.L.P.
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170-4600
Telephone: (504) 586-5252
Facsimile: (504) 586-5250

and

**ROBERT A. KUTCHER (# 7895)**
**CHOPIN, WAGAR, RICHARD & KUTCHER, L.L.P.**
Two Lakeway Center, Suite 900
3850 North Causeway Boulevard
Metairie, Louisiana 70002
Telephone: (504) 830-3820
Facsimile: (504) 836-9573

### CERTIFICATE OF SERVICE

I hereby certify that on August 19th, 2010, I filed the foregoing pleading via CM/ECF with the Clerk of Court of the United States District Courthouse for the Eastern District of Louisiana, 500 Poydras Street, New Orleans, Louisiana, and also delivered a copy on Defendant BP PLC via hand delivery to Don K. Haycraft, local counsel.

*/s/ James M. Garner*