## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| IN RE:  OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on April 20, 2010 | * * * * | MDL No. 2179 |
|  | * | Section "J" |
|  | * |  |
| This Document Relates to: Civil No. 2:10-cv-01497, *Gulf Restoration Network, et al. v. Salazar, et al.* | * * * * | Judge Barbier Mag. Judge Shushan |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM IN SUPPORT OF DEFENDANT-INTERVENORS' MOTION TO DECONSOLIDATE AND TRANSFER

Intervenors American Petroleum Institute, Independent Petroleum Association of America, US Oil & Gas Association, and International Association of Drilling Contractors (the "Associations") file this memorandum in support of their motion to deconsolidate Civil No. 2:10-cv-01497 ("*Gulf Restoration*") from MDL No. 2179 and transfer the action back to Judge Engelhardt.

Counsel for Plaintiffs have indicated that they object to the Associations' motion to deconsolidate and transfer.  Counsel for the Federal Defendants have indicated that they do

164591

not oppose the Associations' motion to deconsolidate, and that they take no position with regard to the Associations' request to transfer the case back to Judge Engelhardt.

## BACKGROUND

A.   **MDL No. 2179.**

On August 10, 2010, the Judicial Panel on Multidistrict Litigation ("JPML") issued an order centralizing 77 actions "concerning the cause (or causes) of the Deepwater Horizon explosion/fire and the role, if any, that each defendant [in those cases] played in it" before this Court under MDL No. 2179. *Transfer Order* at 3, MDL No. 2179 (J.P.M.L. Aug. 10, 2010). The consolidated cases principally involve claims for monetary damages against private corporations—such as British Petroleum and Transocean (respectively, the owner of the oil lease upon which the Deepwater Horizon oil rig was situated and the owner/operator of that rig)—for alleged negligence relating to the Deepwater Horizon explosion and resulting oil spill into the Gulf of Mexico. *See, e.g.*, *Roshto, et al. v. Transocean, Ltd., et al.*, Civil No. 2:10-cv-01156 (E.D. La.); *Robin Seafood Co., et al. v. BP, PLC, et al.*, Civil No. 2:10-cv-01314 (E.D. La.); *Silver, et al. v. BP, PLC, et al.*, Civil No. 2:10-cv-01387 (E.D. La.). This Court has set a September 16, 2010 hearing to consider matters relating to pretrial and discovery proceedings in these cases. *See Pretrial Order #1 (Amendment)*, MDL No. 2179 (E.D. La. August, 16, 2010).

B.   ***Gulf Restoration Network, et al. v. Salazar, et al.***, **Civil No. 2:20-cv-01497.**

The Outer Continental Shelf ("OCS") Lands Act, 43 U.S.C. §§ 1301 *et seq.*, confers on the United States control over the mineral resources in the submerged lands of the OCS. 43 U.S.C. §§ 1301(a), 1331(a). The Secretary of Interior is empowered to sell leases granting the exclusive right "to explore [for], develop, and produce" the oil and gas resources

contained within the leased area, in exchange for the lessee's payment to the Government of an up-front bonus, annual rentals, and royalties on any oil and gas produced.  43 U.S.C. § 1337(b); 30 C.F.R. § 256.32.  The Secretary has delegated most of his authority under the OCS Lands Act to the Bureau of Ocean Energy, Management, Regulation, and Enforcement ("BOEMRE").  30 C.F.R. § 250.104.[1]

After lease issuance, an OCS lessee may submit an exploration plan ("EP") for BOEMRE approval.  43 U.S.C. §§ 1340(c), 1351; 30 C.F.R.  § 250.201.  BOEMRE's regulations set forth the information that generally should be included in an exploration plan, including information concerning the likely impact of, and planned response to, a worst case oil spill, *see* Section 250.219(a)(2)(v), and information concerning the impact of and response to a drilling rig blowout, *see* Section 250.213(g).  However, 30 C.F.R. § 250.201(b) provides that the BOEMRE Regional Director may require a lessee to submit additional information, while 30 C.F.R. § 250.201(c) provides that the BOEMRE Regional Director "may limit the amount of information or analysis that you otherwise must provide in your proposed plan or document...."

The Regional Director invoked both of these provisions in adopting Notice to Lessees ("NTL") No. 2008-G04.  BOEMRE regulations explicitly provide for the issuance of such NTLs, which are designed to "clarify, supplement, or provide more detail about certain requirements."  *See* 30 C.F.R. § 250.103.  NTL No. 2008-G04 provided, with respect to the

---

[1]     By a June 22, 2010 executive order, the Secretary of the Interior changed the name of the Minerals Management Service to the BOEMRE.  For ease of reference, the Associations will refer to the agency both before and after this name change as BOEMRE.

164591

worst case oil spill information required by 30 C.F.R. § 250.219(a)(2)(v), that if the lessee already had an approved regional Oil Spill Response Plan ("OSRP"), it would be sufficient for the lessee to provide in the exploration plan a comparison of the appropriate worst-case scenario from the approved regional OSRP with the worst-case scenario from the proposed activities, and set forth the information to be included in that comparison.  Lessees were required to submit the additional blow-out scenario information set forth in Section 250.213(g) only in specified circumstances.

On May 18, 2010, Plaintiffs Gulf Restoration Network and Sierra Club ("Plaintiffs") filed their complaint challenging the provisions of NTL 2008-G04 addressing the informational requirements for EPs that lessees are required to submit to BOEMRE with respect to proposed oil and gas exploration activities on OCS of the Gulf of Mexico.  The lawsuit claims that the government agencies and officers responsible for implementing the OCS Lands Act and adopting the NTL ("Government" or "Federal Defendants") violated the National Environmental Policy Act, 42 U.S.C. §§ 4321 *et seq.* ("NEPA"), and the Administrative Procedure Act, 5 U.S.C. §§ 551 *et seq.* ("APA").  *See* Complaint Counts I and II.  The lawsuit seeks two forms of relief: (1) an order requiring the Government retroactively to apply a more expansive set of informational requirements to exploration plan permits that have previously been granted pursuant to the challenged NTL with respect to deepwater Gulf of Mexico exploration, *see* Prayer for Relief ¶ 4, and (2) a preliminary and permanent injunction prohibiting any future application of the challenged NTL, *see* Prayer for Relief ¶¶ 1-3.

- 4 -

164591

By order dated August 12, 2010, *Gulf Restoration* was transferred from Section "N" to Section "J" of the Eastern District of Louisiana and, by order dated August 13, 2010, consolidated with MDL No. 2179.

## LAW AND ARGUMENT

I.   ***Gulf Restoration* Should be Deconsolidated from MDL No. 2179 and Transferred to Judge Engelhardt Because the Parties and Issues are Fundamentally Different.**

Multidistrict consolidation is appropriate "[w]hen civil actions involving one or more common questions of fact are pending in different districts."  28 U.S.C. § 1407(a). Moreover, "any common questions of fact" must be "sufficiently complex and/or numerous to justify Section 1407 transfer." *See, e.g.*, *In re Depo-Provera Prod. Liability Litig.*, 499 F. Supp. 2d 1348, 1349 (J.P.M.L. 2007) (denying consolidation).[2]  Because *Gulf Restoration*'s parties and underlying issues are fundamentally different than those in MDL No. 2179, this most basic requirement for consolidation is not satisfied.

As noted above, the existing cases in MDL No. 2179 involve claims for monetary damages against the private companies that owned the OCS lease upon which the Deepwater Horizon oil rig was situated, and owned or operated the Deepwater Horizon oil rig itself. Alleging, among other things, common law negligence by these private companies, the lawsuits seek to recover for the loss of life and alleged damage to Gulf of Mexico businesses caused by

---

[2]   Similarly, under Fed. R. Civ. P. 42, consolidating actions is proper when two or more district court cases "involve common questions of law or fact," and consolidation is improper where the issues in the suits are different, *see e.g.*, *Picard v. Am. Tobacco Co.*, No. 95-985, 1996 WL 156861, at *2 (E.D. La. Apr. 3, 1996); *Guillermo Sintes Reyes, S.A. v. Opulence Transport Corp.*, No. 92-2312, 1993 WL 114522, at *1 (E.D. La. Apr. 9, 1993). *See also infra* pp. 4-7.

164591

the explosion of Deepwater Horizon and resulting oil spill. *See* pp. 1-2 *supra*. Accordingly, MDL No. 2179 directly involves only those lawsuits "concerning the cause (or causes) of the Deepwater Horizon explosion/fire and the role, if any, that each defendant played in it." *Transfer Order* at 3, MDL No. 2179 (J.P.M.L. Aug. 10, 2010).

In contrast, *Gulf Restoration* involves the plaintiffs' administrative law challenge to the Government's decision-making with respect to the approval of certain exploration plans in the Gulf of Mexico OCS. Arising under the APA, the lawsuit seeks only declaratory and injunctive relief invalidating the Government's rules governing exploration plan approval as the product of improper rulemaking procedures, and vacating the exploration plans approved under those rules.[3] Because *Gulf Restoration* implicates only the actions of federal regulatory actors under federal administrative law standards, not the alleged common law negligence of private actors involved in the Deepwater Horizon oil spill, the federal law claims in *Gulf Restoration* "bear[] no relation to" the actions in MDL No. 2179. *In re Worldcom, Inc. Securities & ERISA Litig.*, 226 F. Supp. 2d 1352, 1355 (J.P.M.L. 2002) (denying consolidation of claim involving breach of specific contract with cases involving broader "financial irregularities"). *See also In re Gaiam, Inc. Water Bottle Mktg., Sales Practices & Prods. Liability Litig.*, 672 F. Supp. 2d 1373, 1375 (J.P.M.L. 2010) (denying consolidation where, *inter alia*, "[t]he actions . . . involve parties, facts and theories different from those in the actions in [the] MDL"); *In re Seroquel Prods.*

---

[3]    While the Complaint alleges violations of NEPA, that statute does not include a private right of action independent of the APA. *See Public Citizen v. U.S. Trade Representative*, 5 F.3d 549, 551 (D.C. Cir. 1993); *Sierra Club v. Penfold*, 857 F.2d 1307, 1315 (9th Cir. 1988); *Sierra Club v. Slater*, 120 F.3d 623, 630-31 (6th Cir. 1997).

*Liability Litig.*, 447 F. Supp. 2d 1376, 1379 (J.P.M.L. 2006) (finding consolidation inappropriate because actions involved different defendants and different prescription drugs).

Moreover, whereas Section 1407 endeavors to consolidate cases with common questions of fact in order to "eliminate duplicative discovery," *Worldcom*, 226 F. Supp. 2d at 1354, as an APA challenge *Gulf Restoration* involves no questions of fact at all, but rather the purely legal question whether the administrative record indicates that Government decisionmakers followed the proper procedural steps in adopting NTL No. 2008-G04.  Indeed, under the APA, judicial review of agency action is limited to the administrative record that gave rise to the government decisions in dispute, *see, e.g.*, *IMS, P.C. v. Alvarez*, 129 F.3d 618, 623 (D.C. Cir. 1997) ("It is a widely accepted principle of administrative law that the courts base their review of an agency's actions on the materials that were before the agency at the time its decision was made."); *Env'l Def. Fund, Inc. v. Costle*, 657 F.2d 275, 284 (D.C. Cir. 1981) ("The focal point for judicial review should be the administrative record already in existence, not some new record completed initially in the reviewing court."), and, as a result, generally resolved as a matter of law via motion to dismiss or summary judgment briefing, *see, e.g.*, *James Madison, Ltd. v. Ludwig*, 82 F.3d 1085, 1096 (D.C. Cir. 1996) ("Generally speaking, district courts reviewing agency action under the APA's arbitrary and capricious standard do not resolve factual issues, but operate instead as appellate courts resolving legal questions.").  Accordingly, in stark contrast to the negligence claims in MDL No. 2179, there is no discovery to be managed in *Gulf Restoration*.

164591

Without any "[d]iscovery . . . overlap" or "legal issues . . . turn[ing] on similar facts and law," *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, No. MDL 2147, 2010 WL 1437639, at *1 (J.P.M.L. April 7, 2010), relating to the actions of similar defendants, there is no justification for consolidation of *Gulf Restoration* with MDL No. 2179. *Cf. In re Janus Mutual Funds Investment Litig.*, 310 F. Supp. 2d 1359, 1361 (J.P.M.L. 2004) (granting consolidation where cases had "common questions of fact" involving "some common defendants and/or witnesses").

## II.     Consolidation with MDL No. 2179 Will Improperly Delay Resolution of *Gulf Restoration.*

Through parallel management of complex pretrial factual issues, multidistrict consolidation under Section 1407 is designed to expedite cumbersome pretrial proceedings and "conserve the resources of the parties, their counsel and the judiciary," *Worldcom*, 226 F. Supp. 2d at 1354. However, as explained above, unlike the actions in MDL No. 2179, *Gulf Restoration* turns on pure questions of administrative law viewed against an established administrative record, and is consequently free from the burdens of discovery. By forcing Plaintiffs, the Government and the Associations to await resolution of irrelevant discovery and factual disputes—relating to completely different parties, theories of recovery and remedies— consolidation with MDL No. 2179 unreasonably delays *Gulf Restoration*'s resolution. This Court should therefore deconsolidate *Gulf Restoration* and transfer the lawsuit back to Judge Engelhardt so that the parties can proceed with the quick legal resolution that is typical of APA actions.

164591

## **CONCLUSION**

Consolidation of Civil No. 2:10-cv-01497 with MDL No. 2179 is improper and the Court should transfer the action back to Judge Engelhardt.

Respectfully submitted,

/s/John W. Joyce
Judy Y. Barrasso, 2814
John W. Joyce, 27525
Andrea Mahady Price, 30160
Barrasso Usdin Kupperman
  Freeman & Sarver, L.L.C.
909 Poydras Street, 24th Floor
New Orleans, Louisiana 70112
Telephone: (504) 589-9720
Facsimile: (504) 589-9701
jbarrasso@barrassousdin.com
jjoyce@barrassousdin.com
aprice@barrassousdin.com

Steven J. Rosenbaum
Bradley K. Ervin
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue N.W.
 Washington, D.C. 20004
Telephone: (202) 662-5568
Facsimile: (202) 778-5568
srosenbaum@cov.com

Counsel for Defendant-Intervenors
American Petroleum Institute, Independent
Petroleum Association of America, US Oil
& Gas Association, and International
Association of Drilling Contractors

August 23, 2010

164591

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 23rd day of August 2010, the foregoing Memorandum in Support of Defendant-Intervenors' Motion to Deconsolidate and Transfer was filed via the Court's CM/ECF system and served via the Court's CM/ECF system upon all counsel of record.

*/s/John W. Joyce* _____

164591