**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| | : | **MDL NO. 2179** |
| | : | |
| **IN RE: OIL SPILL by the OIL RIG** | : | |
| **"DEEPWATER HORIZON" in the** | : | |
| **GULF OF MEXICO, on** | : | **SECTION: J** |
| **APRIL 20, 2010** | : | |
| | : | |
| | : | **JUDGE BARBIER** |
| | : | **MAG. JUDGE SHUSHAN** |
| | : | |

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**THIS DOCUMENT RELATES TO CASE NO. 10-2087**

**MEMORANDUM IN SUPPORT OF MOTION TO REMAND**

**MAY IT PLEASE THE COURT:**

This memorandum focuses on an issue not yet raised in detail by any state-related plaintiff in these consolidated proceedings. While other plaintiffs have filed motions to remand their respective cases, as recognized by Defendants in their Notice of Removal, this Plaintiff's allegations are different. Hence, Plaintiff's arguments in this motion to remand are different too.

BP Exploration & Production Inc., BP Products North America Inc. and BP America Inc. (collectively the "BP Entities") allege in their Notice of Removal that the State of Louisiana, through St. Bernard District Attorney John Rowley, ("Plaintiff") attempted to "hide the ball" by failing to specifically reference the incident causing the damages sued upon in Plaintiff's Petition. This allegation is nothing more than a desperate attempt by the BP Entities to create federal jurisdiction where none exists.

The sole cause of action raised by Plaintiff in its Petition is for the loss of wild life under Title 56 of the Louisiana Revised Statutes ("Title 56"). For the purposes of a Title 56 claim, the location of the source of the action(s) by BP that resulted in harm is irrelevant and, thus, was not addressed in the Petition.[1] What is important, and all that is alleged, is that the result of the actions of the BP Entities caused the unlawful killing, catching, taking, possessing or injuring of fish, wild birds, wild quadrupeds and other wild life and aquatic life within the Parish of St. Bernard.[2]

The Petition also sets forth that, notwithstanding any language to the contrary, Plaintiff does not plead, and will never at any time in the future plead, any claim or cause

[1] Indeed, the source of the harm in this instance is not just the actual oil released from the Deepwater Horizon Incident (as that term is used in the Notice of Removal). The harm also includes, but is not limited to, attempts to combat the oil via both the use of chemical dispersants employed by the BP Entities, fresh water diversion, and oil retention/protection apparatus (*e.g.*, boom).

[2] *See* Paragraph 10 of the Petition.

of action arising under any federal law, and asserts no such claims or causes of action therein.[3]

Consequently, and despite the spurious allegations made by the BP Entities, federal subject matter jurisdiction does not extend to Plaintiff's claim which is based solely upon Louisiana law. Thus, this matter must be remanded to the 34th Judicial District Court for the Parish of St. Bernard for further proceedings. The BP Entities should also be required to pay the just costs and expenses, as well as attorney's fees, incurred by Plaintiff as a result of their improper removal.[4]

## I. The Legal Standard for Removal

Federal courts are courts of limited jurisdiction and, thus, a presumption exists that cases lie outside this limited jurisdiction.[5] Moreover, the removal statutes are to be strictly construed and any doubt as to the propriety of removal is to be resolved in favor of remand.[6] Consequently, when the appropriateness of removal is challenged by a plaintiff seeking remand, the defendant attempting to establish removal bears the burden

---

[3] *See* Paragraph 13 of the Petition.

[4] 28 U.S.C. § 1447.

[5] *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994).

[6] *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108 (1941); *Carpenter v. Wichita Falls Independent School District*, 44 F.3d 362 (5th Cir. 1995); *Butler v. Polk*, 592 F.2d 1293 (5th Cir. 1979).

of proof.[7] If a federal court lacks subject matter jurisdiction over a removed case, the case must be remanded.[8]

## II. The BP Entities Basis For Removal -- Federal Question Jurisdiction -- Does Not Exist In This Case

The BP Entities rely solely upon federal question jurisdiction for its removal of this case.[9] In order for federal question jurisdiction to arise, the federal issue must (a) appear on the face of the complaint ***and*** (b) involve a claim founded directly on federal law.[10] The Court ***cannot*** rely on the notice of removal to supply a federal question when none is provided on the face of the removed petition.[11] Yet this (and more) is exactly what the BP Entities seek to have this Court do in this case.

Neither the declaration of one of the BP Entities' employees nor the reference to other lawsuits in the Notice of Removal[12] can be given judicial notice or considered in connection with determining the propriety of removal in this case.

---

[7] *Wilson v. Republic Iron & Steel, Co.*, 257 U.S. 92, 97 (1921); *Sid Richardson Carbon & Gasoline Co. v. Interenergy Res.*, 99 F.3d 746, 751 (5th Cir. 1996) ("A party invoking the removal jurisdiction of the federal courts bears a heavy burden.").

[8] 28 U.S.C. § 1447; *International Primate Protection League v. Administrators of Tulane Educational Fund*, 500 U.S. 72, 87 (1991); *Albarado v. Southern Pacific Transp. Co.*, 199 F.3d 762, 764 (5th Cir. 1999).

[9] *See* paragraphs 17 and 18 of the Notice of Removal, citing 28 U.S.C. § 1331.

[10] *Phillips Petroleum Co. v. Texaco*, 415 U.S. 125, 127-128 (1974), citing *Gully v. First Nat'l Bank*, 299 U.S. 109, 112-113 (1936); *Superior Oil Co. v. Pioneer Corp.*, 706 F.2d 603, 605-606 (5th Cir. 1983).

[11] *Rommick v. Bekins Van & Storage Co.*, 197 F.2d 369 (5th Cir. 1952), citing *Tennessee v. Union & Planters' Bank*, 152 U.S. 454, *Louisville & Nashville Railroad Company v. Mottley*, 211 U.S. 149, and *Gully v. First National Bank in Meridian*, 299 U.S. 109.

[12] *See* paragraphs 9 and 10 of the Notice of Removal.

As explicitly set forth on the face of Plaintiff's Petition, the sole cause of action asserted is exclusively based upon Louisiana's Title 56, which imposes civil penalties on parties responsible for illegally killing, catching, taking, possessing, or injuring wildlife and aquatic life. The actual cause or source of their doing so is irrelevant under Title 56 claims; rather, simply that they did so. The singular nature of Plaintiff's claim is further highlighted in the Petition, which states:

> Plaintiff asserts only those causes of action specifically pled in this Petition, and which have occurred within the Parish of St. Bernard, State of Louisiana, which causes of action arise solely under the provision of La. R.S. 56:40.1, *et seq.*[13]

> Notwithstanding any language in this Petition to the contrary, Plaintiff does not plead, and will never at any time in the future plead, any claim or cause of action arising under any federal law, and asserts no such claims or causes of action herein.[14]

> To the extent any state law claims expressed or implied in this Petition are preempted by federal law, such claims are not alleged herein.[15]

As Plaintiff clearly has not asserted a federal claim, the BP Entities cannot use an unasserted federal claim as the basis for removing this case to federal court.[16]

---

[13] *See* Paragraph 12 of the Petition.

[14] *See* Paragraph 13 of the Petition.

[15] *See* Paragraph 14 of the Petition.

[16] *Stroud v. Petroleum Helicopters, Inc.*, 1992 WL 300828 (E.D. La. 1992), citing *Coody v. Exxon Corp.*, 630 F.Supp. 202 (M.D. La. 1986).



158755 3

## III. Plaintiff's Cause of Action Does Not Fall Under the Jurisdictional Grant of OCSLA

Despite the Petition's lack of any reference to a federal cause of action ***and*** its explicit renunciation of any federal cause of action in this lawsuit, the BP Entities argue that this Court is granted jurisdiction over Plaintiff's state law cause of action by virtue of 43 U.S.C. § 1349(b), the jurisdiction portion of OCSLA[17] which provides in pertinent part:

> (1) Except as provided in subsection (c) of this section, the district courts of the United States shall have jurisdiction of cases and controversies arising out of, or in connection with (A) any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals...

The BP Entities argue in their Notice of Removal that because the source of the harm at issue resulted from "operations" conducted on the outer continental shelf ("OCS"), this Court is granted original jurisdiction over the lawsuit via OCSLA. But OCSLA does not apply federal law to every dispute involving the OCS. Rather, OCSLA applies only to the "subsoil and seabed" of the OCS and to structures "permanently or temporarily attached to the seabed" for the purpose of exploring for or producing natural resources.[18] Both the United States Supreme Court and the United States Fifth Circuit Court of Appeals have held that 43 U.S.C. § 1333(a)(1) creates a "situs" requirement that

---

[17] The Outer Continental Shelf Lands Act ("OCSLA").

[18] *Fuselier v. Sea Boat Rentals, Inc.*, 2007 WL 2713278 (E.D. La. 2007).

must be met before other sections of OCSLA, including Section 1349, can be applied.[19] The BP Entities cannot meet that "situs" requirement because of the nature of the injury in this case which is solely in State waters within or immediately adjacent to St. Bernard Parish.[20]

## IV. The Sole Cause of Action Asserted By Plaintiff Does Not Arise From an OCSLA "Situs"

The following locations are appropriate situses under OCSLA:

(1) the subsoil and seabed of the OCS;

(2) any artificial island, installation, or other device if

(a) it is permanently or temporarily attached to the seabed of the OCS, and

(b) it has been erected on the seabed of the OCS, and

(c) its presence on the OCS is to explore for, develop, or produce resources from the OCS;

---

[19] *See Golden v. Omni Energy Services Corp.*, 242 Fed. Appx. 965, 967 (5th Cir. 2007) (disregarding defendant's argument that the court should ignore a "situs" test and rely solely upon a "but for" test to determine the applicability of OCSLA); *Landry v. Island Operating Company, Inc.*, 2009 WL 3241560 (W.D. La. 2009); *Id.*, citing *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207 (1986) ("Congress determined that the general scope of OCSLA's coverage ...would be determined principally by locale...) and *Mills v. Director, OWCP*, 877 F.2d 356 (5th Cir. 1989).

[20] In paragraph 11 of its Notice of Removal, the BP Entities admit that the injury at issue occurred in the "rivers, lakes, bays, inlets, and other bodies of water of the State of Louisiana, specifically those in St. Bernard Parish, and the waters of the State of Louisiana in the Gulf of Mexico adjacent to the Parish of St. Bernard Parish." The BP Entities also allege in that paragraph that the "but for" causation for those injuries is the Deepwater Horizon Incident. But there is no reason for this Court to consider the BP Entities' "but for" causation argument because the threshold issue for determining OCSLA jurisdiction is the "situs" of the injury. "Situs" and "but for" causation are not considered in tandem; rather, the "situs" test is a threshold to be overcome before there is any reason to even reach the issue of "but for" causation. *See, e.g., Golden*, 242 Fed. Appx at 967 (applying "situs" test and not reaching "but for" analysis).



158755 3

(3) any artificial island, installation, or other device if

(a) it is permanently or temporarily attached to the seabed of the OCS, and

(b) it is not a ship or vessel, and

(c) its presence on the OCS is to transport resources from the OCS.[21]

In determining whether OCSLA's jurisdictional test is met, the "situs" required to trigger jurisdiction refers to the ***location of the injury***.[22] For example, the Fifth Circuit in *Golden v. Omni Energy Services Corporation*[23] held that the scope of OCSLA's coverage pursuant to Section 1349(b)(1)(A) must be determined principally by locale, because the United States Supreme Court holds that OCSLA neither requires nor permits courts to extend the coverage of the statute to injuries occurring away from the OCS. While in *Golden* the situs of both the injury and the event causing the injury were located outside the OCS, recent decisions interpreting *Golden* have held that when the situs of the injury and the event causing the injury are different, the situs of the injury controls for determining the existence of OCSLA jurisdiction.

In *Landry v. Island Operating Company, Inc.*, the defendants suggested that a cause of action based in tort arose not at the point of an explosion on land (*ie*., the location of the injury), but at the point of their allegedly negligent act of allowing flammable

---

[21] *Demette v. Falcon Drilling Co.*, 280 F.3d 492 (5th Cir. 2002) (reversed on other grounds).

[22] *Landry*, 2009 WL 3241560, citing *Golden*, 242 Fed. Appx. at 967; *Demette*, 270 F.3d at 496; *Mills*, 877 F.2d 356.

[23] 242 Fed. Appx. at 967, citing *Offshore Logistics, Inc.*, 477 U.S. at 219.

substances to enter into or remain within the tank without plaintiff's knowledge (*ie*., the location of the breach of duty leading to the injury).[24] The court in *Landry* found the defendants' argument to be meritless as it, taken to its logical conclusion, would essentially immunize defendants from actions in state courts (or give them unqualified powers of removal to federal court) simply through the nature of their industry.[25]

This same logic applies to the argument of the BP Entities. The BP Entities urge this Court to use the site of the Deepwater Horizon Event[26] (*ie*., the site where the BP Entities' breached their duty of care) as opposed to the site where Plaintiff's injury occurred (*ie*., the injuring/killing of wild life in Louisiana's territorial land and waters in and adjacent to St. Bernard Parish) as the situs for determining OCSLA jurisdiction.[27] This argument is untenable in that it (a) requests the Court to ignore the site of the actual injury as the appropriate situs and (b) would result in the precise prejudice envisioned and rejected by the court in *Landry* (*ie*., complete immunity for the BP Entities from suit in state court based on the nature of their business and unqualified powers of removal).

---

[24] *Landry*, 2009 WL 3241560 at 3.

[25] *Id*.

[26] *See* paragraph 9, 10, and 11 of the Notice of Removal.

[27] The BP Entities go so far as to allege that "the alleged injury for which they [plaintiffs] were bringing suit occurred miles out to sea and beyond State jurisdiction on the Outer Continental Shelf." *See* paragraph 9 of the Notice of Removal. This is wholly contrary to Plaintiff's allegations that the harm for which it seeks relief, the death or injury of fish, wild birds, wild quadrupeds and other wild life and aquatic life in violation of Title 56 ***occurred in St. Bernard Parish.***

**V. OCSLA Does Not Preempt State Wildlife Laws**

The BP Entities also argue that they are not bound by the clear language of the Petition or the "well plead complaint" rule on the basis that part of OCSLA, specifically 43 U.S.C. § 1349(b)(1)(a), purportedly preempts Plaintiff's state law claims and provides an original basis for federal jurisdiction. Put simply, this argument is meritless as it is clear that OCSLA does not completely preempt Louisiana's regulation of its wildlife.

Federal preemption is ordinarily a federal defense to a plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint and cannot provide a proper basis for removal to federal court.[28] This legal tenet is so strong that a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint.[29]

Only where Congress has so completely preempted a particular area of law is there an exception to this rule. This exception provides that if a federal cause of action completely preempts a state cause of action, any complaint that comes within the scope of the federal cause of action necessarily "arises under" federal law.[30]

The captioned matter arises out of Louisiana's law governing the killing/injuring of its wildlife, an activity completely unrelated to the activities governed by OCSLA (*ie.*

---

[28] *Lakeland Anesthesia, Inc. v. Louisiana Health Service & Indemnity Company*, 2000 WL 1801834 (E.D. La. 2000), citing *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58 (1987).

[29] *Id.*, citing *Franchise Tax Board v. Construction Laborers*, 463 U.S. 1 (1983).

[30] *Id.*, citing *Franchise Tax Board*, 463 U.S. at 24.

the exploration for, and removal of, oil and minerals from the OCS). Consequently, the BP Entities cannot ignore the well plead complaint rule in an attempt to create non-existent federal jurisdiction over this matter.

The issue of whether Congress intended to completely preempt the ability of a State to regulate its wildlife, and activities related to its wildlife, was exhaustively analyzed by the Supreme Court of Alaska (a state very familiar with large oil spills) in *State v. Bundrant*.[31] In its lengthy opinion, *Bundrant* held that OCSLA merely provides that no state shall have jurisdiction over "subsoil" and "seabed" of the OCS and the natural resources thereof.[32] Further, that the actual distinction intended by Congress was between inorganic resources of the subsoil and seabed (*ie*., oil and minerals), which were thenceforth the exclusive domain of the federal government, and organic marine life resources, which were not affected by OCSLA.[33]

The state law Plaintiff sues upon (*ie*., Title 56 of Louisiana's Revised Statutes) is the state's regulation of its natural wildlife resources. As set forth in *Bundrant*, OCSLA clearly was not intended to completely preempt a state's regulation of its wildlife. Consequently, the BP Entities cannot ignore the well plead complaint rule in an attempt

---

31 546 P.2d 530 (Alaska 1976), *reh den*, 547 P.2d 838 (Alaska 1976), *and app dism'd*, 429 U.S. 806 (1976).

32 *Id*. at 546.

33 *Id*.



158755 3

to create federal subject matter jurisdiction where none exists. Instead, the BP Entities are bound by Plaintiff having only raised state law claims in its Petition.

## VI. Concluding Remarks

For all the foregoing reasons, the BP Entities' attempt to fabricate federal jurisdiction fails and, thus, this matter must be remanded to the 34th Judicial District Court for the Parish of St. Bernard for further proceedings. The BP Entities should also be required to pay Plaintiff's just costs and expenses, as well as attorney's fees, incurred as a result of the BP Entities' improper removal of this case.

Respectfully submitted,

/s/ Peter J. Butler, Jr.

Peter J. Butler, Jr. (Bar #18522)
Richard G. Passler (Bar #21006)
Barrett R. Stephens (Bar #31331)
Justin W. Stephens (Bar #30987)
**BREAZEALE, SACHSE & WILSON, L.L.P.**
909 Poydras Street, Suite 1500
New Orleans, Louisiana 70112
Telephone: (504) 584-5454
Facsimile: (504) 584-5452

***Appointed Counsel by District Attorney for the Parish of St. Bernard, State of Louisiana***

John F. Rowley (Bar #02245)
1101 W. St. Bernard Highway
P.O. Box 947
Chalmette, Louisiana 70044-0947
Telephone: (504) 271-1811
Facsimile: (504) 279-2874

***District Attorney for the Parish of St. Bernard***

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2010, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants.

/s/ Peter J. Butler, Jr.