IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

|  |  |
|---|---|
|  ) | MDL No. 2179 |
| In re: OIL SPILL by the OIL RIG ) |  |
| "DEEPWATER HORIZON" in the ) |  |
| GULF OF MEXICO, on April 20, 2010 ) | Section "J" |
|  ) |  |
| This Document Relates to: ) | Judge Barbier |
| Civil No. 2:10-cv-01497 ) | Magistrate Judge Shushan |
|  ) |  |

**CHEVRON U.S.A., INC.'S
MEMORANDUM IN SUPPORT OF ITS
MOTION FOR LEAVE TO INTERVENE AS DEFENDANT**

Pursuant to Rule 24 of the Federal Rules of Civil Procedure, Chevron U.S.A., Inc. ("Chevron") respectfully moves to intervene as a defendant in civil action number 2:10-cv-01497, brought by plaintiffs Gulf Restoration Network, Inc. and Sierra Club, Inc. (collectively, "GRN"), which has been consolidated into the above-captioned Multidistrict Litigation for purposes of pre-trial proceedings.

**PRELIMINARY STATEMENT**

This Court should grant Chevron leave to intervene in this proceeding because Chevron is one of the principal holders of leases for exploration and development activities in the Gulf of Mexico and, therefore, has a direct and substantial interest in the outcome of these proceedings. GRN's requested relief includes (1) a declaration that certain portions of the Department of the Interior's April 1, 2008 Notice to Lessees ("NTL 2008-G04") concerning the informational requirements for operators' submissions of oil and gas exploration plans for leases on the Outer Continental Shelf in the Gulf of Mexico are unlawful, and (2) accordingly, an order requiring the Department of the Interior to perform a retroactive review of all exploration plans and permits it

has previously granted pursuant to NTL 2008-G04. Based on these requests for relief, Chevron is a real party in interest with a substantial financial stake in the outcome of this proceeding. Because no existing party to this litigation can adequately represent Chevron's specific interests, Chevron respectfully requests leave to intervene to protect those interests either as of right or with the Court's permission. Intervention is especially appropriate given that, in parallel suits that these same plaintiffs have filed against these same defendants raising similar issues in the United States Court of Appeals for the Fifth Circuit (which has original jurisdiction over some agency review claims), the Fifth Circuit has already granted Chevron leave to intervene.

## BACKGROUND

Under the Outer Continental Shelf Lands Act, the United States Secretary of the Interior awards winners of a competitive sealed bidding process oil and gas leases on the Outer Continental Shelf in the Gulf of Mexico. *See* 43 U.S.C. § 1337. Lease sales typically occur as part of a five-year program. The current five-year program is known as the Outer Continental Shelf Oil and Gas Leasing Program 2007-2012 (the "2007-2012 Lease Sale Program"). Under the statutory scheme, winning leaseholders whose bids are accepted, and who have paid a substantial up-front bonus, are entitled to request the Secretary's approval of exploration, development, and production plans, *see* 43 U.S.C. §§ 1340 & 1351, and to seek a permit to drill from a District Manager, *see* 30 C.F.R. § 250.410.

In some circumstances, exploration plans submitted for the Secretary's approval must include the information outlined in 30 CFR § 250.213(g) and 30 CFR § 250.219(a)(2)(v). Section 250.213(g) provides that the exploration plan include the following "general information":

> A scenario for the potential blowout of the proposed well in your [exploration plan] that you expect will have the highest volume of liquid hydrocarbons. Include the estimated flow rate, total volume, and maximum duration of the

2

>potential blowout. Also, discuss the potential for the well to bridge over, the likelihood for surface intervention to stop the blowout, the availability of a rig to drill a relief well, and rig package constraints. Estimate the time it would take to drill a relief well.

Section 250.219(a)(2)(v) provides that the exploration plan include "[a] description of the worst case discharge scenario that could result from your proposed exploration activities." § 250.219(a)(2)(v). Section 250.219 also references section 254.26, which requires that the appendix to a worst case discharge scenario include such information as a trajectory analysis, strategies for protecting resources that could be impacted, and plans for responding to the worst case discharge scenario in adverse weather conditions.

In an April 1, 2008 Notice to Lessees ("NTL 2008-G04"), the Department of the Interior clarified the requirements of sections 250.213(g) and 250.218(a)(2)(v). NTL 2008-G04 stated that a "blowout scenario" and "oil spill response discussion" are required "only when you propose the following":

(1) Activities for which the State of Florida is an affected State.

(2) Activities within the Protective Zones of the Flower Garden Banks and Stetson Bank.

(3) To install a surface facility located in water depths greater than 400 meters (1,312 feet), or a surface facility in any water depth that supports a subsea development in water depths greater than 400 meters (1,312 feet).

(4) Initial DOCD's and supplemental DOCD's with new multiwell structures for which the State of Louisiana is an affected State (15 CFR 930.58(a)(2)).

(5) Initial EP's and DOCD's and supplemental DOCD's with new multiwell structures for which the State of Texas is an affected State (15 CFR 930.58(a)(2)).

NTL 2008-G04 at 6 & 19.

In this lawsuit, GRN claims that (1) NTL 2008-G04 was not published in the Federal Register and there was no opportunity for public comment, (2) NTL 2008-G04 is contrary to

3

sections 250.213(g) and 250.218(a)(2)(v), (3) NTL 2008-G04 is a rule that was not promulgated in accordance with the rulemaking requirements in the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* ("APA"), and (4) NTL 2008-G04 violates the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.* ("NEPA").  Based on these claims, GRN seeks relief sweeping in scope, including a declaration that what it characterizes as NTL 2008-G04's exemptions from the requirements contained in sections 250.213(g) and 250.219(a)(2)(v) were unlawful, and an order requiring the Department of the Interior to perform a retroactive review of all deepwater permits granted under NTL 2008-G04.

## ARGUMENT

Rule 24 of the Federal Rules of Civil Procedure, which governs motions for leave to intervene, is to be construed liberally, and doubts resolved in favor of the proposed intervenor. *Poynor v. Chesapeake Energy Ltd. P'ship*, 570 F.3d 244, 248 (5th Cir. 2009).  Rule 24 recognizes two paths to intervention.  Under Rule 24(a), a party is entitled to intervene as a matter of right if the party "claims an interest relating" to the action and "is so situated that disposing of the action may as a practical matter impair or impede" the party's "ability to protect its interest."  Fed. R. Civ. P. 24(a).  Alternatively, a party may seek "permissive" intervention under Rule 24(b)(1), if the party has a "claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).

For reasons explained below, Chevron is entitled to intervene under Rule 24(a) and, in any event, should be permitted to intervene under Rule 24(b).  Chevron's motion to intervene has been timely filed; its business, regulatory, and property interests are at risk in this litigation; an adverse decision would substantially impair those interests; and existing parties may not be able to represent adequately Chevron's interests.

4

## I.     CHEVRON'S MOTION TO INTERVENE IS TIMELY.

Intervention of right and permissive intervention both require the filing of a "timely" motion to intervene. *See* Fed. R. Civ. P. 24(a), (b)(1). When assessing the timeliness of a motion for leave to intervene, a district court should consider: (1) the length of time between the would-be intervenor's learning of his interest and his petition to intervene, (2) the extent of prejudice to existing parties from allowing late intervention, (3) the extent of prejudice to the would-be intervenor if the petition is denied, and (4) any unusual circumstances. *Poyner*, 570 F.3d at 247-248 (citing *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264-66 (5th Cir. 1977)); *see also Ross v. Marshall*, 426 F.3d 745, 754 (5th Cir. 2005) (same). These factors "give structure" to the determination, yet "the timeliness analysis remains 'contextual'": the requirement is not a "tool of retribution to punish the tardy would-be intervenor," but is rather merely "a guard against prejudicing the original parties by the failure to apply sooner." *Ross*, 426 F.3d at 754 (quoting *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994)). "Intervention should generally be allowed where 'no one would be hurt and greater justice could be attained.'" *Ross*, 426 F.3d at 753 (quoting *Espy*, 18 F.3d at 1205).

Chevron readily satisfies Rule 24's timeliness requirement because Chevron is filing this motion to intervene approximately three months after GRN filed the lawsuit, and before the government defendants have even filed a responsive pleading or motion. *See, e.g.*, *Poyner*, 570 F.3d at 248-50 (reversing finding that intervention was untimely, as abuse of discretion, even though sought more than two years after would-be intervenor learned of its interest in the litigation and after entry of the final order); *Ross*, 426 F.3d at 754-56 (holding that intervention was timely even though sought after district court entered final judgment); *Association of Prof'l Flight Attendants v. Gibbs*, 804 F.2d 318, 321 (5th Cir. 1986) (reversing denial of intervention as

untimely, despite five-month delay before seeking leave to intervene, due to lack of prejudice to existing parties on account of the delay); *see also Edwards v. City of Houston*, 78 F.3d 983, 1001 (5th Cir. 1996) (en banc) ("that these motions were filed prior to entry of judgment favors timeliness, as most of our case law rejecting petitions for intervention as untimely concern motions filed after judgment was entered in the litigation").

Because this case is at a very early stage, and there have been no significant proceedings to date, neither Chevron's participation in this lawsuit nor any delay in Chevron's application for leave to intervene could cause any prejudice to any party or inconvenience to the Court. In contrast, as discussed below, Chevron would be significantly prejudiced were its motion for leave to intervene to be denied.

## II.   CHEVRON IS ENTITLED TO INTERVENE AS A MATTER OF RIGHT.

Chevron is entitled to intervene in this proceeding as a matter of right. A party is entitled to intervene if: (1) the motion is timely; (2) the party claims a legally protectable interest relating to the property or transaction that is the subject of the action; (3) that interest could be impaired or impeded as a result of the litigation; and (4) the party's interests are not adequately represented by existing parties. Fed. R. Civ. P. 24(a).

### A.   Chevron Possesses A Concrete And Legally Cognizable Interest In This Litigation.

Chevron is a real party in interest with standing to participate in this proceeding because it has legally protectable interests relating to the property and transactions in the Gulf of Mexico that are the subject of this action. As discussed below, Chevron has an interest in the numerous deepwater leases it has acquired in the Gulf of Mexico, an interest in developing those leases, and an interest in the existing exploration plan approvals that permit Chevron to develop the leases.

GRN's request for an order requiring the Department of the Interior to perform a retroactive review of all deepwater exploration plans approved under NTL 2008-G04, without application of the NTL's clarifications of the requirements for exploration plan submissions, is also a direct and substantial threat to Chevron's vested interests in exploration plan approvals that it received pursuant to the NTL. Since May 1, 2008, Chevron has submitted and been granted by the Department of the Interior over 30 Gulf of Mexico exploration plans, including in deepwater, all of which complied with the Department of the Interior's regulations and NTL 2008-G04. Decl. of Keith Couvillion at ¶ 8 (citing examples of deepwater plan approvals). If the Department of the Interior were required to conduct a retroactive review of approvals pertaining to those deepwater exploration plans, Chevron would incur costly delays in the millions of dollars in implementing its planned oil and gas exploration and development projects and, in some cases, those delays could put Chevron's leases in jeopardy of being lost. *Id.*; *Sierra Club v. Glickman*, 82 F.3d 106 (5th Cir. 1996) (per curiam) (holding that interest of farmers in drawing water from an aquifer was sufficient to justify their intervention as of right in environmental group suit against federal agency, seeking to enjoin expenditure of "any funds to the farmers that directly or indirectly support pumping from the aquifer," and finding that farmers were real parties in interest and that suit targeted their pumping, because Sierra Club alleged that farmers' pumping constituted threat to endangered species and public health); *Sierra Club v. Espy*, 18 F.3d 1202 (5th Cir.1994) (holding that timber purchaser trade groups were entitled to intervene as matter of right in suit brought by environmental group against federal agency, seeking to ban logging practices in Texas); *Sylvester v. Boissiere*, Civil Action No. 05-5527, 2006 U.S. Dist. LEXIS 15500, *14 (E.D. La. Apr. 3, 2006) (noting that "the Fifth Circuit has warned against defining 'property or transaction' too narrowly" and that, if a

potential intervenor establishes that it is a real party in interest, that generally establishes sufficient interest for intervention).

Furthermore, under established Fifth Circuit law, such direct and indirect threats to Chevron's contractual rights in its exploration plan approvals from, and lease contracts with, the Department of the Interior easily establishes that Chevron is entitled to intervene in this proceeding as a matter of right. *See Ross*, 426 F.3d at 760 & n.63 (noting "the toleration shown in our case law for some degree of contingency in the interests of persons seeking intervention as of right," and citing cases in which direct and indirect contract rights established entitlement to intervene as matter of right); *Glickman*, 82 F.3d at 109 (basing holding that farmers had right to intervene in suit in part on potential impact of suit on farmers' existing subsidy contracts with Department of Agriculture and interest in entering into similar contracts in future); *Espy*, 18 F.3d at 1207 (basing holding that timber purchaser trade groups had right to intervene in part on potential impact of suit on members' existing contracts with Forest Service).

### B. The Disposition Of This Litigation May As A Practical Matter Impair Or Impede Chevron's Ability To Protect Its Interests.

It is equally clear that the disposition of this action may impair or impede Chevron's ability to protect its interests. *See* Fed. R. Civ. P. 24(a)(2); *see also id.*, advisory committee note (1966) ("If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene . . . ."). If the Court were to deny the proposed intervention and grant the relief requested by GRN, Chevron would have to bring an independent action to protect its interest in its leases and exploration plan approvals. Even if Chevron could challenge an unfavorable ruling by bringing a separate lawsuit, the Fifth Circuit has repeatedly ruled that "[t]he stare decisis effect of an adverse judgment constitutes a sufficient impairment to compel intervention." *Heaton v. Monogram Credit Card Bank*, 297

F.3d 416, 424 (5th Cir. 2002); *see also Glickman*, 82 F.3d 106, 109-10 (same); *Espy*, 18 F.3d at 1207 (same); *Ranger Ins. Co. v. Events, Inc.*, Civil Action No. 03-2831, 2004 U.S. Dist. LEXIS 17998, *18-19 (E.D. La. Sept. 8, 2004) (same, and noting that "considerations of judicial economy guide this Court to allow intervention in order to avoid duplication of litigation").

C.  *Chevron's Interests Are Not Adequately Represented By Any Existing Party.*

Finally, Chevron is entitled to intervene as a matter of right because its interests are not adequately represented by any existing party. The United States Supreme Court has stated that Rule 24(a)'s adequate-representation requirement should be treated as a "minimal" burden, which is "satisfied if the applicant shows that representation of his interest 'may be' inadequate." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *Doe #1 v. Glickman*, 256 F.3d 371, 380 (5th Cir. 2001) (same); *Espy*, 18 F.3d at 1207 (same); *Kadlec Med. Ctr. v. Lakeview Anesthesia Assocs.*, Civil Action No. 04-997, 2004 U.S. Dist. LEXIS 18277, *8-9 (E.D. La. Sept. 10, 2004) (same). Chevron readily carries this minimal burden because its interests are distinct from those of the government defendants and trade group intervenors.

Chevron's interests in GRN's requested relief differ from those of the government defendants because the government defendants are charged with representing the interests of varied public and private stakeholders possessing a broad spectrum of interests in the Gulf of Mexico, whereas Chevron's foremost interest is its property interests in Gulf of Mexico leases and the development of those leases. In *Espy*, the Fifth Circuit confronted a divergence of interests similar to that between Chevron's interests and those of the government defendants and, noting the prospective intervenors' minimal burden in satisfying the inadequate representation requirement, held that the government defendants' representation of the industry movants' interests was inadequate. 18 F.3d at 1207-08. The court based its holding on the fact that "[t]he government must represent the broad public interest, not just the economic concerns of the

9

timber industry." *Id.* at 1208.  In its per curiam decision in *Glickman*, the Fifth Circuit reached the same conclusion, noting that "[f]or this reason alone, the interests of [the prospective industry intervenors] will not necessarily coincide, even though, at this point, they share common ground."  82 F.3d at 110.  Notably, the Eastern District of Louisiana has also allowed federal permit-holders to intervene in environmental group lawsuits against the governmental agencies that granted the permits.  *See Louisiana ex rel. Guste v. Lee*, 635 F. Supp. 1107, 1130 (E.D. La. 1986) (in suit in which the State of Louisiana, the Sierra Club, and other environmental groups sued the Army Corps of Engineers, challenging its extension of permits allowing shell dredging companies to dredge in areas of southern Louisiana, noting that three of the shell dredging companies whose permits were at issue had intervened as defendants in the lawsuit).

The intervenor trade groups also may not adequately represent Chevron's interests in this matter because, like the government, their interests are much broader and more diverse than those of Chevron.  As stated in the Complaint, GRN is seeking retroactive review of "***deepwater*** permits granted under NTL 2008-G04."  Compl. at 14 (emphasis added).  Because Chevron is one of the largest overall leaseholders in the Gulf of Mexico, and has more deepwater wells and assets than other intervening parties, the intervenor trade groups' representation of Chevron's interest "may be inadequate" because many of the trade groups' members have no deepwater leases or investments in deepwater technology.  *See* Couvillion Decl. at ¶¶ 3, 5, 9.  Although Chevron is a member of the American Petroleum Institute, many of that organization's members that have offshore interests and technology are focused on shallow water exploration and development.  *Id*. at ¶ 9.  Moreover, apart from the American Petroleum Institute, the other intervenor trade associations — Independent Petroleum Association of America, U.S. Oil and Gas Association, and International Association of Drilling Contractors — all have a similarly

10

wide range of members beyond those with deepwater interests.  *See id.*  Accordingly, although there may be "shared agreement" on some issues, there is no assurance that the intervenors will be in agreement on issues that directly impact Chevron's specific interests.

Moreover, depending on how this litigation proceeds, the intervenor trade groups, in seeking to represent all of their members' divergent interests, may not be in a position to advance or raise arguments that adequately represent Chevron's specific interests.  For example, although there is significant overlap, there are unique defenses and arguments presented in Chevron's Answer that are not explicitly raised in the intervenor trade groups' Answer.  *Compare* API, *et al.* Answer (Doc. No. 15) *with* Chevron's Proposed Answer (Attachment B).  Also, for GRN to obtain the relief it seeks, it will need to show that the Department of the Interior's past approval of exploration plans was unlawful.  That may well require a focus on specific exploration plan approvals as to which the intervenor trade groups' members may have differing views and perspectives.  Chevron's participation in these proceedings will therefore likely bring a unique perspective to bear on some of the issues before the Court.

Intervention is especially appropriate given that, in parallel suits these same plaintiffs have filed against these same defendants in the Fifth Circuit, challenging the Department of the Interior's approval of individual exploration plans, the Fifth Circuit has already granted Chevron leave to intervene, and did so at the same time that it allowed intervention by the same trade groups that intervened in this lawsuit.  *See Gulf Restoration Network, Inc. and Sierra Club, Inc. v. Salazar et al.*, Case Nos. 10-60411, 10-60413, 10-60414, 10-60415, 10-60416 (5th Cir. July 1, 2010).  Moreover, four of the five Fifth Circuit lawsuits in which Chevron was allowed to intervene involved challenges to the Department of the Interior's approval of non-Chevron exploration plans.

The Fifth Circuit's ruling is consistent with the rulings of other courts that have recognized that, for purposes of applying Rule 24, trade associations often have broader and more diverse interests than their specific individual members, and have allowed both individual members and their trade associations to intervene in litigation. *See Tribal Village of Akutan v. Hodel*, 869 F.2d 1185, 1187 (9th Cir. 1988) (noting that trade group and multiple oil and gas companies, including Chevron, had intervened in suit challenging proposed Outer Continental Shelf lease sale); *see also American Petroleum Inst. v. EPA*, 216 F.3d 50 (D.C. Cir. 2000) (allowing intervention of both trade group and individual member of oil and gas industry); *False Pass v. Watt*, 565 F. Supp. 1123, 1129 (D. Alaska 1983) (noting that nine oil and gas companies intervened in suit challenging proposed Outer Continental Shelf lease sale). Here, because there is "sufficient doubt" about the adequacy of the existing parties' representation of Chevron's interests, Rule 24(a)'s minimal burden is readily satisfied. *Trbovich*, 404 U.S. at 538 & n.10. Accordingly, the Court should allow Chevron to intervene as a matter of right.

### III. IN THE ALTERNATIVE, CHEVRON SATISFIES THE REQUIREMENTS FOR PERMISSIVE INTERVENTION.

Even if it is not entitled to intervention of right, Chevron should still be granted leave to intervene under Rule 24(b), which allows "permissive" intervention, upon timely motion, when a party "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3); *see Newby v. Enron Corp.*, 443 F.3d 416, 424 (5th Cir. 2006). "Rule 24(b) should be liberally construed," and, unless intervention would lead to undue delay or prejudice, "[b]asically . . . anyone may be permitted to intervene if his claim and the main action have a

common question of law or fact." *Moore v. Tangipahoa Parish Sch. Bd.*, 298 F. Supp. 288, 292-93 (E.D. La. 1969) (quotation omitted).

Chevron and the government's defenses in this action will involve common questions of law and fact because Chevron has an interest in supporting the Secretary's approvals of Chevron activities under existing rules, regulations, and policies, including NTL 2008-G04, that were in place at the time of Chevron's submissions.  As discussed above, Chevron has applied to intervene in a timely fashion, and no undue prejudice or delay will result to any other party by granting Chevron's intervention.  *See, e.g.*, *Board of Trustees New Orleans Employers Int'l Longshoremen's Ass'n v. Gabriel, Roeder, Smith & Co.*, Civil Action No. 05-1221, 2006 WL 2631946, at *1 (E.D. La. Sept. 13, 2006) (affirming permissive intervention, which would cause no delay or prejudice, where "no substantive motions had been decided" and there was "ample time left to complete discovery and adhere to the pre-trial schedule").

Moreover, as discussed above and demonstrated in the Declaration of J. Keith Couvillion (Attachment A), permissive intervention is also appropriate because Chevron is not "adequately represented by other parties" and is "likely to contribute significantly to the development of the underlying factual issues." *League of United Latin American Citizens, Council No. 4434 v. Clements*, 884 F.2d 185, 189 (5th Cir. 1989).  Yet even if this were not the case, "the *stare decisis* effect" of a lawsuit on a would-be intervenor "may tip the scales in favor of allowing permissive intervention even by one who is adequately represented." *Theriot v. Parish of Jefferson*, Civ. A. No. 95-2453, 1995 WL 731680, at *2 (E.D. La. Dec. 5, 1995) (quoting Wright & Miller, 7C *Fed. Prac. & Proc. Civ.* § 1911, at 356 (3d ed. 1986)).  The "nature and extent of [Chevron's] interest" and its "standing to raise relevant legal issues" also support permissive intervention.  *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 472

n.40 (5th Cir. 1984) (en banc); *see In re Babcock & Wilcox Co.*, No. Civ. A. 01-912, 01-1187, 2001 WL 1095031, at *5 (E.D. La. Sept. 18, 2001) (finding permissive intervention appropriate where intervenors "may have a stronger incentive to oppose" the adverse parties than the parties on whose behalf intervention was sought, such that "the intervention will further the interests of justice by forcing the [adverse parties] to face a more vigorous opponent" (quotation omitted)).

Finally, Chevron is willing and able to cooperate with the other intervenor-defendants to these proceedings. Accordingly, if the Court grants Chevron's intervention request, Chevron will coordinate as much as possible with the other intervenor-defendants to maximize the efficiency of these proceedings and to avoid unnecessarily duplicative argument or briefing.

Date: August 26, 2010

Respectfully submitted,

/s/Meredith P. Young
Meredith P. Young, 27149
KING & SPALDING LLP
1180 Peachtree Street, NE
Atlanta, GA 30309-3521
Telephone: (404) 572-4600
Facsimile: (404) 572-5100

Charles J. Engel, III
Ashley C. Parrish
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Washington, DC  20006
Telephone: (202) 737-0500
Facsimile: (202) 626-3737

Reginald R. Smith
Tracey M. Robertson
KING & SPALDING LLP
1100 Louisiana Street, Suite 4000
Houston, Texas  77002-5213
Telephone: (713) 751-3200
Facsimile: (713) 751-3290

*Counsel for Chevron U.S.A. Inc.*