IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on April 20, 2010 | ) ) ) ) ) | MDL No. 2179 Section "J" |
| This Document Relates to: Civil No. 2:10-cv-01497 | ) ) ) | Judge Barbier Magistrate Judge Shushan |

## DECLARATION OF J. KEITH COUVILLION

I, J. Keith Couvillion, hereby attest as follows:

1. I am over 21 years of age and competent to make this declaration. The facts set forth herein are based on my personal knowledge gained in the course of my business activities.

### Basis for Personal Knowledge

2. I am currently employed by Chevron U.S.A., Inc. ("Chevron"), in the position of Deepwater Land Manager. I have worked for either Texaco Inc. or Chevron for the past 30 years. In the last 24 years of my career I've worked in various capacities in exploration and production operations in the Gulf of Mexico. In my current position with Chevron, I have acquired knowledge regarding Chevron's oil and gas holdings and activities in the Gulf of Mexico.

### Chevron's Interests in the Gulf of Mexico

3. Chevron has for many decades engaged in oil and gas exploration and production activities on the Outer Continental Shelf of the Gulf of Mexico. Chevron is one of the largest leaseholders and one of the largest producers in the Gulf of Mexico. Chevron's leasehold includes interests in over 600 leases in the Gulf of Mexico, over 400 of which are located in water depths greater than 1,000 feet. Chevron has over 600 platforms in the Gulf.

4. In order to engage in oil and gas production activities in federal jurisdictional waters of the Gulf, Chevron has acquired numerous leases through a sealed bid process managed by the Department of the Interior and through transactions with other operators. After acquiring a lease Chevron must submit to the Department of the Interior, for its review and approval, various applications and permits allowing Chevron to engage in exploration and development activities on the lease. Without these approvals, Chevron is not allowed to drill and develop the leases it has acquired. Chevron's exploration and development activities have required Chevron to invest hundreds of millions of dollars to purchase the necessary leases, obtain the necessary approvals, and engage in the necessary exploration and development operations.

5. Chevron has been a successful bidder in most of the Gulf of Mexico lease sales that have occurred to date as part of the Department of the Interior's 2007–2012 Outer Continental Shelf Oil and Gas Leasing Program. Under this current Leasing Program, Chevron has acquired an interest in more than 200 Outer Continental Shelf leases in the Gulf of Mexico paying to the federal government over $700 million in lease bonuses. To maintain its leases in the Gulf of Mexico that are not currently producing, Chevron pays the government over $12 million in lease rentals each year.

## Chevron's Interests in GRN's Requested Relief

6. NTL 2008-G04 is a Notice to Lessees and Operators that addressed information that operators must include in exploration plans and development operations coordination documents that operators submit to the Department of the Interior for approval to engage in exploration and development activities on the Outer Continental Shelf in the Gulf of Mexico. NTL 2008-G04 built upon other informational guidelines for such exploration plans and development operations coordination documents, including the Blowout Scenario disclosure and

Worst Case Oil Spill response requirements for exploration plans contained in 30 CFR § 250.213(g) and 30 CFR § 250.219(a)(2)(v). The effective date of NTL 2008-G04 was May 1, 2008.

7. In this lawsuit, Gulf Restoration Network, Inc. and Sierra Club, Inc. (collectively, "GRN") seek to enjoin the application of certain provisions of NTL 2008-G04 that GRN has characterized as exemptions from the blowout scenario and worst case discharge scenario informational requirements contained in 30 CFR § 250.213(g) and 30 CFR § 250.219(a)(2)(v). In addition, GRN requests an order requiring the Department of the Interior to review all deepwater permits granted under NTL 2008-G04.

8. GRN's request that the Court order the Department of the Interior to review exploration plans and permits previously granted under NTL 2008-G04 poses a significant financial threat to Chevron. Since May 1, 2008, Chevron has submitted and been granted by the Department of the Interior over 30 Gulf of Mexico exploration plans, including in deepwater, all of which complied with the Department of the Interior's regulations and NTL 2008-G04. Those approvals include the Department of the Interior's approvals of the following plans:

   a. Exploration Plan Control No. R-4838, submitted on June 16, 2008, and approved on July 15, 2008;

   b. Exploration Plan Control No. R-4893, submitted on November 12, 2008, and approved on December 30, 2008;

   c. Exploration Plan Control No. R-5004, submitted on January 20, 2010, and approved on April 7, 2010;

   d. Exploration Plan Control No. S-7399, submitted on March 19, 2010, and approved on April 16, 2010;

   e. Exploration Plan Control No. N-9366, submitted on April 1, 2009, and approved on May 15, 2009;

f. Exploration Plan Control No. N-9380, submitted on May 7, 2009, and approved on June 8, 2009;

g. Exploration Plan Control No. N-9385, submitted on May 18, 2009, and approved on July 15, 2009; and

h. Exploration Plan Control No. N-9463, submitted on November 16, 2009, and approved on January 7, 2010.

If the Department of the Interior were required to conduct a retroactive review of approvals pertaining to these exploration plans, Chevron would incur costly delays in the millions of dollars in implementing its planned oil and gas exploration and development projects and, in some cases, those delays could put Chevron's leases in jeopardy of being lost.

9. Chevron's interests in this litigation are both more expansive and more targeted than those of the associations that have intervened. Among other things, many of the associations' members are known to have no or very few deepwater leases or investments in the development of deepwater technology. Many of the associations' members that have offshore interests and staffs dedicated to technology development are more focused on shallow water exploration and development.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed on August 25th, 2010 in Houston, Texas.

_____
J. KEITH COUVILLION