UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CLAY WHITTINGHILL<br>          Plaintiff | CIVIL ACTION NO. 2:10-cv-01984 |
| VERSUS | JUDGE CARL BARBIER |
| ABDON CALLAIS OFFSHORE, L.L.C.<br>          Defendant | MAG. JUDGE SALLY SHUSHAN |

**MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ARBITRATION
AND STAY LITIGATION PENDING ARBITRATION**

MAY IT PLEASE THE COURT:

Defendant, Abdon Callais Offshore, L.L.C. herewith submits this Memorandum in Support of Motion to Compel Arbitration and Stay Litigation Pending Arbitration.

**I.     Background**

Plaintiff, Clay Whittinghill, was employed by Defendant, Abdon Callais Offshore, L.L.C., as a crewmember of the M/V St. Ignatius Loyola from June 5, 2007 until July 8, 2010. The vessel was involved in the cleanup efforts during the aftermath of the Deepwater Horizon oil spill. Plaintiff claims that he suffered various ailments while working aboard the vessel between April 23, 2010 and June 9, 2010 because of exposure to contaminants from the oil spill. Plaintiff has sued Defendant under the Jones Act, 46 U.S.C. § 30104 and the general maritime law claiming Defendant was negligent and the vessel was unseaworthy thereby causing his ailments. Plaintiff has also asserted a claim under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2615, alleging he was terminated in violation of that Act.

1

When he applied for employment with Defendant, Plaintiff signed an Arbitration Agreement dated May 11, 2007.  (See Exhibit A, Declaration of Ron Holman, and Exhibit 3 to the Declaration).  The Agreement provides that:

> [a]ny controversy or claim arising out of, in connection with, incidental to or directly resulting from employment with Abdon Callais Offshore, LLC shall be settled by arbitration, which shall be the sole and exclusive procedure for resolution of any such dispute.  Such claims include, but are not limited to, controversies or disputes resulting from: job application procedures; decisions regarding hiring, advancement, discharge compensation, job assignments or job training; incidents of harassment; or any other terms, conditions and privileges of employment . . .

The Arbitration Agreement in no way limits Plaintiff's right to recovery under any federal/state statutory or common law right of action.  It simply provides, as noted above, that all claims arising out of Plaintiff's relationship with Defendant, by mutual consent of the parties, shall be settled by arbitration.

Defendant maintains that Plaintiff's claims are subject to the terms of the Arbitration Agreement signed by Plaintiff on May 11, 2007.  Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et. seq.*, the Arbitration Agreement is valid and enforceable. Accordingly, Defendant has moved this Court to compel arbitration pursuant to 9 U.S.C. § 2 and to stay all litigation between these parties pending the outcome of the arbitration, pursuant to 9 U.S.C. § 3.

## II.    Law and Argument

Federal Courts strongly support resolution of disputes by arbitration, rather than litigation, and have consistently enforced arbitration agreements.  See, *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927 (1982); *Dean Witter Reynolds, Inc. v Byrd*, 470 U.S. 213, 105 S.Ct. 1238 (1985); *E.E.O.C. v. Waffle*

2

*House, Inc.,* 122 S.Ct. 754 (2002); *City of Meridian, Miss. v. Algernon Blair, Inc.,* 721 F.2d 525 (5th Cir. 1983). A district court has no discretion under the FAA, but must "direct the parties to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter,* 470 U.S. at 218. The Supreme Court has noted that "the preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered, and that concern requires that we rigorously enforce agreements to arbitrate . . ." *Id.* at 221. The FAA specifically provides that a "written provision in any maritime transaction or a contract evidencing a transaction involving commerce" providing for the arbitration of disputes "shall be valid, irrevocable and enforceable" except for "such grounds as exist at law or equity for the revocation of any contract." 9 U.S.C. § 2.

Courts entertain a strong presumption favoring arbitration, which is particularly strong in the context of maritime transactions. *Filanto S.P.A Chilewich International Corp.,* 789 F.Supp. 1229, 1241 (S.D.N.Y 1992); appeal dismissed, 984 F.2d 58 (2d Cir. 1993), citing, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 631, 105 S.Ct. 3346, 3356 (1985). The strong presumption favoring arbitration requires that agreements to arbitrate should not be denied "unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the disputed issue . . ." *Commerce Park of D.F.W. Freeport v. Martin Construction, Co.,* 729 F.2d 334, 338 (5th Cir. 1984), quoting *Wick v. Atlantic Marine, Inc.,* 605 F.2d 166, 168 (5th Cir. 1979).

In short, federal policy favoring arbitration requires this Court to resolve any question as to whether this dispute is arbitrable in favor of arbitration.

3

### III.   The Arbitration Agreement Must Be Enforced Under The Federal Arbitration Act

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, requires enforcement of arbitration agreements in contracts involving commerce and maritime contracts.  Section 2 of the FAA provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (emphasis added).  Section 1 of the FAA defines maritime transaction as:

> Charter parties, bills of lading of water carrier's, agreements relating to wharfage, supplies furnished vessels or repairs to vessels, collisions or any other matters in foreign commerce which, if the subject of controversy, would be embraced within admiralty jurisdiction . . .

9 U.S.C. § 1 (emphasis added).  Section 1 also defines "commerce" to include "commerce among the several states or with foreign nations." *Id.*

The Arbitration Agreement was entered into in connection with Plaintiff's working as a Captain on Defendant's boats which service the offshore oil industry.  Those vessels transport persons, materials and supplies to and from oil rigs in the Gulf of Mexico and various states on the Gulf Coast.  (Exhibit A).  The Agreement clearly involves transactions involving commerce and, further, involves maritime transactions.  The Agreement was knowingly signed by Plaintiff and calls for arbitration of all claims arising from his relationship with Defendant.  Maritime personal injury claims fall within admiralty jurisdiction, 28 U.S.C. 1333. *Neely v. Club Med Management Servs., Inc.*, 63 F.3d 166 (5th Cir. 1995); *Schexneider v. McDermott Int'l Inc.*, 817 F.2d 1159 (5th Cir. 1987); *Borne v. A &*

4

*P Boat Rentals No. 4, Inc.*, 780 F.2d 1254 (5th Cir. 1986).  Thus, the Arbitration Agreement involves maritime transactions and transactions involving commerce within the meaning of Section 2 of the FAA.  As such, the FAA applies to the Arbitration Agreement and Plaintiff should be compelled to arbitrate this dispute.

IV.     **The FAA Section 1 Exemption For Contracts Of Employment Of Seamen Has No Application To This Case Because The Agreement Is Not A Contract of Employment**

Plaintiff may assert that the arbitration provision in the Agreement is not enforceable because of the exemption in Section 1 of the FAA, which states:

> Nothing herein contained shall apply to contracts of employment of seamen, railroad employees or any other class of workers engaged in foreign interstate commerce.

However, this exemption has no application in this instance.  The present Arbitration Agreement is not a contract of employment for Plaintiff.  The Agreement is a condition of employment requiring that all claims related to Plaintiff's relationship with Defendant be submitted to arbitration.  As set forth in Exhibit A, Plaintiff had no contract of employment with Defendant – he was an at-will employee.  Furthermore, the Arbitration Agreement lacks any of the substantive elements typically found in an employment agreement including salary, job title duties, employment term, etc.[1]  It simply proscribed a condition for employment, similar to the requirement for a drug test, which was also a condition.  (See Exhibit A).

There is nothing in the FAA which precludes a seaman and his employer from agreeing to submit a seaman's claim for personal injuries to arbitration.  In *Endriss v. Eklof Marine*, 1999 AMC 556, 561 (S.D.N.Y. 1998), the district court considered an agreement

---

[1] See *Conner v. Lavaca Hospital District*, 267 F.3d 426, 433 (5th Cir. 2001).  In the present case, the parties established by a separate document that Plaintiff's employment was "at-will." (Exhibits 1 and 2 to Exhibit A).

between a seaman and his employer to submit the seaman's personal injury claims to arbitration.   The district court discussed the argument that a claims arbitration agreement was invalid under 9 U.S.C. § 1 because it purportedly constituted a contract of employment of a seaman.  The court rejected that argument finding that the agreement did not constitute a contract of employment in part because the contract was entered into for the purpose of resolving claims arising from injuries to the seaman.

The Eastern District of Louisiana has also endorsed the *Endriss* interpretation limiting the extent of the Section 1 exemption solely to contracts of employment.  In *Lejano v. K.S. Bandak*, 2001 AMC 1724, 1729 n.5 (E.D. La. 2000), the court concluded that a Filipino seaman's filing of a complaint with a Philippine government arbitration tribunal constituted an agreement in writing to arbitrate his personal injury claim against his employer.  The court, citing *Endriss*, noted that this agreement was "beyond the terms of the employment contract" and would not be affected by the exclusion of 9 U.S.C. §1.

The *Endriss* decision is by analogy applicable to the present case.  Court rulings have tended to focus on post-injury rather than pre-injury agreements to arbitrate.  Nonetheless, the Fifth Circuit in broaching the issue has stated that the inherent difficulty with the argument that a pre-injury agreement to arbitrate rather than litigate is unfair because of a lack of opportunity to assess the extent of a plaintiff's injuries is no longer a debatable issue. *Terrebonne v. K-Sea Transportation Corp., et al.*, 477 F.3d 271, 285-286 (5th Cir. 2007), citing, *Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 342 (5th Cir.2004).  According to the court, it is beyond cavil that such an agreement is in fact presumptively enforceable. *Id.* The Fifth Circuit has consistently acknowledged that "[o]nly by rigorously enforcing arbitration agreements according to their terms, do we 'give effect to

6

the contractual rights and expectations of the parties, without doing violence to the policies behind the FAA.'" *Freudensprung*, 379 F.3d at 342, quoting, *Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 141 F.3d 243, 248-249 (5th Cir. 1998), quoting, *Volt Information Sci., Inc. v. Bd. Of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479, 109 S.Ct. 1248 (1989).   Accordingly, the Fifth Circuit has stated that in relation to pre-injury arbitration agreements, "[t]he plain implication is that if the agreement was not contained in a seaman's contract of employment it would be enforceable under the FAA."  *Terrebonne*, 477 F.3d at 286.

Further support for the position that the arbitration agreement is not part of an employment agreement can be found in a recent Second Circuit case.  That court interpreted several Supreme Court decisions and stated that arbitration agreements such as the one at issue in this matter do not constitute "contracts of employment" where the arbitration agreement is "not contained" in a broader employment agreement between the parties. *Harrington v. Atlantic Sounding Co., Inc.*, 602 F.3d 113, 121 (2nd Cir. 2010), citing *Gilmer*, 500 U.S. at 25 n. 2, 111 S.Ct. 1647.  See also, *Nunez v. Weeks Marine, Inc.*, 2007 WL 496855, at *3 n. 4 (E.D. La. 2007) (noting that, in *Gilmer*, the Supreme Court "d[id] not broadly define 'employment contract' as any contract that has some connection or relation to a party's employment").  The Second Circuit went on to state that "the Supreme Court has recognized that if the term 'contracts of employment' was read so broadly as to include independent arbitration agreements, then every seaman's contract would be exempt from the FAA, thereby rendering the separate exemption for 'contracts of employment of seamen . . .' pointless."  *Id.*, citing, *Circuit City Stores v. Adams*, 532 U.S. 105, 113, 121 S.Ct.1302 (2001).

7

Several courts have recognized that the Section 1 exemption should be narrowly construed and applied only to "contracts of employment."   See *Patterson v. Tenet Healthcare*, 113 F.3d 832 (8th Cir. 1997); *Asplundh Tree Expert Co. v. Bates*, 71 F.3d 592 (6th Cir. 1995); *Golenia v. Bob Baker Toyota*, 915 F.Supp. 201 (S.D. Cal. 1996).   No legal basis exists to expand the "contract of employment" exemption of the FAA to this Arbitration Agreement which is a stand alone document clearly indicating Plaintiff's acknowledgment that any and all claims arising out of his relationship with Defendant would in fact be submitted to arbitration for resolution.

**V.      Plaintiff's FMLA Discrimination Claims Are Subject To Arbitration**

It is well established that an employee can be required to arbitrate employment discrimination claims.  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 35 (1991); See also, *Thomas v. Bear Stearns & Co., Inc.*, 196 F.3d 1256 (5th Cir. 1999)(unpublished opinion); *Armijo v. Prudential Ins. Co. of America*, 72 F.3d 793, 797 (10th Cir. 1995).  The Supreme Court has stated that, "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum."  *Id.* at 26, quoting, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).  In the instant matter the Arbitration Agreement signed by Plaintiff explicitly contemplates his employment discrimination claims being submitted to arbitration.  The agreement denotes Plaintiff's agreement to submit all employment discrimination claims to arbitration including ADA, Title VII, ADEA and FMLA claims. (See Exhibit 3 to Exhibit A).  Nothing in the Arbitration Agreement limits Plaintiff's right to recovery under any employment discrimination statute and as a result the

1458158.1/010726.000002

Supreme Court precedent clearly requires submission of Plaintiff's employment discrimination claims to arbitration.

## VI.   American Arbitration Association Rules

The Arbitration Agreement signed by Plaintiff includes the following provision:

> The parties to this agreement jointly agree that the arbitrators' award will be final and binding upon all parties. The parties jointly agree that arbitration hearings shall proceed before the American Arbitration Association and in accordance with the procedural and due process rules of the American Arbitration Association. The substantive laws of the state of Louisiana, including the conflict of interest provisions, shall govern as to the merits of the dispute. The arbitrator[s] shall be empowered to enter a judgment of damages in accordance with any federal or state statute.

The above provision makes clear that the procedural and due process rules of the American Arbitration Association will apply to any matter submitted under the agreement. Those rules are attached as Exhibit B. As set forth on pages 12 - 14, section 48, the costs of arbitration for a dispute arising out of employer-promulgated plans, such as the Arbitration Agreement signed by Plaintiff, are to be borne by the employer, Defendant herein, except for the sum of $175.00 to be paid by the employee when a claim is filed. The rules of the American Arbitration Association provide a comprehensive, thorough and expeditious means for the resolution of issues such as those presented by the Plaintiff herein. The Arbitration Agreement between Plaintiff and Defendant further provides that the arbitrator "shall be empowered to enter a judgment of damages in accordance with any federal or state statute." Given this, the Arbitration Agreement and the rules of the American Arbitration Association protect Plaintiff's rights and afford him the opportunity to assert his claims.

## VII.    Conclusion

Plaintiff executed a valid and binding Arbitration Agreement on May 11, 2007 which requires submission of all claims arising out of his relationship with Defendant to an American Arbitration Association (AAA) panel for complete resolution and subject to the rules of the AAA.  This Agreement involves a maritime transaction and/or a transaction involving commerce and, therefore, this Agreement is valid, irrevocable and enforceable under Section 2 of the FAA.  Accordingly, Defendant is entitled to an order compelling Plaintiff to submit his claims to arbitration.  Furthermore, under Section 3 of the FAA, Defendant is entitled to a stay of this lawsuit pending the arbitration panel's decision.

Respectfully submitted,

/s/ Walter W. Christy
Walter W. Christy, La Bar No. 04134
Jacob C. Credeur, La Bar No. 31116
Coats | Rose
One Canal Place
365 Canal Street, Suite 800
New Orleans, Louisiana  70130
Telephone:  (504) 299-3070
Facsimile:  (504) 299-3071

Attorneys for Defendant
Abdon Callais Offshore, L.L.C.

10

1458158.1/010726.000002

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served on all counsel of record via the Court's Electronic Filing/Notification System.

This 27th day of August, 2010.

/s/ Walter W. Christy

1458158.1/010726.000002