# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | MDL NO. 2179 |
| | SECTION: J |
| THIS DOCUMENT RELATES TO: | |
| ALL ACTIONS | JUDGE BARBIER<br>MAG. JUDGE SHUSHAN |

## BP'S MEMORANDUM IN RESPONSE TO JOINT MOTION FOR A PROTECTIVE ORDER

BP America Production Company and BP Exploration & Production Inc. ("BP") respectfully submit this response to assist this Court's consideration of Transocean's Joint Motion for a Protective Order (Record Doc. No. 50, 8/19/10), which Transocean filed together with Anadarko. BP makes two points.

*First*, the discussion below updates this Court on the parties' progress regarding the issue initially raised by the pending Motion for a Protective Order. That issue – facility selection where the Macondo Well Blowout Preventer ("BOP") will be taken for testing following its retrieval from the seabed -- is not the subject, as yet, of any clear disagreement between the parties. (*See* Section I, below.)

*Second*, BP seeks to head off Transocean's apparent misinterpretation of the Court's order of August 26, 2010 (Record Doc. No. 109). That order, entered just last Thursday after extensive argument and negotiations between the parties, declined to dictate through an

–1–

417652124.

injunction the manner in which the BOP will be forensically examined. This Court instead left that critical question to a deliberative process to be managed by the United States Department of the Interior, in consultation with other federal agencies. Pursuant to this inter-agency process, as described on the record on August 26, all stakeholders will be given their fair say before any destructive or other forensic testing is undertaken on the BOP, acknowledged by all as a key piece of evidence.

Nonetheless, and notwithstanding this Court's August 26 order addressing the immediate well control and physical evidence recovery imperatives, Transocean now seeks prematurely to draw to this Court's attention and subject to this Court's control the protocols and procedures for the **initial** inspection, disassembly, and evaluation of the BOP. Acceding to such an invitation by Transocean, would be unwise and unfair, as well as premature as a procedural matter. (*See* Section II, below.) Here again, there is no present need for the Court to take up the issue.

## I.   SELECTION OF BOP STORAGE FACILITY

To the extent the Motion for a Protective Order concerns the selection of a storage and testing location for the BOP following its retrieval, BP is pleased to report the parties have engaged in a meet-and-confer process that appears to be making headway, as the parties work collaboratively towards resolving the issue.

No party would dispute, nor could they, that multiple considerations are germane to the selection of a BOP storage and testing facility. The central challenge of finding such a facility is not identifying the relevant considerations. Instead, the challenge is finding an appropriate facility accessible by water, sizeable enough to accommodate a piece of complex equipment more than 50 feet tall and weighing hundreds of tons, and secure enough to protect against the

risk this critical evidence might be tampered with.  On Tuesday August 31, Transocean circulated a list of 34 helpful selection criteria for the parties to consider in thinking through where BOP storage and testing might occur. (See Exhibit A.)  The parties are discussing these criteria, together with other considerations brought into the conversation.

Generally speaking, these criteria and considerations are not the subject of disagreement.  They include characteristics of obvious importance such as a given facility's (i) geographic convenience to the parties, the MBI, and this Court, (ii) access to water-borne transport, (iii) ability to accommodate the large BOP and protect it from the elements, (iv) ability to accommodate the cranes and rigging needed to lift and manipulate the BOP, (v) suitability as a site for complex testing, and (iv) ability to be secured against unauthorized intrusion.  The relevant criteria and considerations also include a host of related or subsidiary considerations, most importantly, the facility's immediate availability for use on suitable contract terms.

Accordingly, the discussion between the parties as to a BOP storage and testing facility is somewhat akin to a couple jointly selecting a home.  Here, as in home buying, there is no one "right" choice.  Instead, each realistic option offers advantages and disadvantages, all of which need to be carefully weighed and balanced in arriving at a final decision.

As of this filing, the parties generally agree that the NASA/Michoud facility, once a fully operational storage and testing facility is built out, may well be appropriate to meet the United States' and the parties' concerns for long-term storage.  At this time, Transocean continues to support the Oil States Industries facility in Texas as an "interim" solution and the government, BP, and other parties are listening carefully to Transocean's concerns.  BP's position is that all

–3–

parties are voicing valid issues and that a mutually-agreeable solution should be acheivable amicably, and without a need for Court intervention.

## II.   INSPECTION, DISASSEMBLY, AND INITIAL EVALUATION OF BOP

In what appears as a misreading of the Court's Order of August 26, 2010, Transocean may use its pending Protective Order Motion as the vehicle to improperly invite the Court to get involved in the precise technical details by which the inspection, disassembly, and **initial** evaluation of the BOP will be conducted. At the August 30 meet-and-confer session among the parties, Transocean surprised key participants by downplaying the **location** issue that had been at the top of the agenda. Transocean instead offered a lengthy presentation of a so-called "interim Preservation Protocol" detailing Transocean's favored approach to the BOP's initial examination, disassembly, and evaluation, once it has been recovered from the ocean floor.

The upshot of Transocean's unexpected presentation was the parties' joint request for a continuance of the scheduled hearing date from Wednesday, September 1, to Friday, September 3, plus the parties' joint request Transocean precisely describe in writing its favored interim testing protocols. This morning at 9:15 a.m., about 24 hours before the rescheduled hearing, Transocean circulated aa new extensive Protocol drafted by Transocean, not subjected to any peer review or review by the Unified Command, a detailed Protocol for so-called "preservation" of the BOP.

In light of the above, it is simply unrealistic to expect BP, much less other parties, to fully evaluate this eleventh-hour protocol circulated by Transocean on the eve of Friday's hearing. Transocean's suggestions regarding an interim protocol for the inspection, disassembly and evaluation of the BOP therefore should not be taken up at that hearing.

Although it is too soon to fully respond to whatever issues Transocean may ultimately raise in this regard, BP has serious concerns, even at this early juncture, regarding any bid to lure this Court into the uncomfortable position of dictating the terms of the inspection, disassembly, and **initial** evaluation of the BOP.  BP is concerned any such order(s) may conflict with Unified Command protocols, truncate the deliberative discussions between the parties, advantage some parties over others, and, potentially, result in the destruction or alteration of evidence.

For example, as set forth in the Declaration of Timothy Allen, P.E. (*see* Exhibit B), Transocean has suggested that the BOP's annulars be immediately disassembled upon its recovery.  (Exhibit B, at paragraph 6.)  Such disassembly would require significant alterations to the lower marine riser package and would require the removal of hydraulic hoses and other pieces of equipment.  (*Id.*, at paragraph 8.)  But, as Mr. Allen explains, this disassembly would involve the certain alteration of evidence, as well as unwarranted risks of evidence destruction. (*Id.*)  BP respectfully suggests such intrusive procedures, if undertaken at all, be carefully weighed through a transparent, open, and deliberate process -- not casually ordered by a busy Court on short notice at the behest of one or a few litigants.  Instead, Defendants BP America Production Company and BP Exploration & Production Inc. respectfully submit that this Court should adhere to its prior decision and refrain from enjoining or restraining the protocols to be employed for recovery of the BOP and any initial steps taken for immediate preservation purposes.

## **CONCLUSION**

For the foregoing reasons, the Joint Motion for a Protective Order should be denied.

Respectfully submitted,

/s/ Don K. Haycraft
Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana  70139-5099
Telephone:  (504) 581-7979
Facsimile:  (504) 556-4108

and

| | |
|---|---|
| Robert R. Gasaway | Richard C. Godfrey, P.C. |
| Joseph A. Eisert | J. Andrew Langan, P.C. |
| Kirkland & Ellis LLP | Kirkland & Ellis LLP |
| 655 Fifteenth Street, N.W. | 300 North LaSalle Street |
| Washington, D.C.  20005 | Chicago, IL  60654 |
| 202-879-5000 (Tel) | 312-862-2000 (Tel) |
| 202-879-5200 (Fax) | 312-862-2200 (Fax) |

**Attorneys for BP America Production Company and BP Exploration & Production Inc.**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 2, 2010, a copy of the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record registered to receive electronic service by operation of the court's electronic filing system. I also certify that I have mailed this filing by United States Postal Service to all counsel of record who are not registered to receive electronic service by operation of the court's electronic filing system.

/s/ Don K. Haycraft

417652124.