UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | MDL NO. 2179 |
| | SECTION: J |
| THIS DOCUMENT RELATES TO: | |
| ALL ACTIONS | JUDGE BARBIER MAG. JUDGE SHUSHAN |

## DECLARATION OF TIMOTHY JOHN ALLEN, P.E.

I, Timothy John Allen, P.E., do hereby declare:

1. I am the Well Systems Engineering Manager, Floating Systems Program, Gulf of Mexico Central Development Organization for BP Exploration & Production, Inc. In this capacity I am responsible for the engineering of deepwater well systems. I have held this position since October 2008. A copy of my curriculum vitae is attached as Exhibit A.

2. Since June 2010, I have been working as a member of BP's investigative team for the Mississippi Canyon Block 252 well (MC-252). Specifically, I have been studying the system performance of the Deepwater Horizon blowout preventer (BOP).

3. As part of my recent responsibilities, I have participated in meetings with the Incident Management Team (which includes representatives from the DOE, BOEM, USCG, Transocean, Cameron, Helix, and BP). Among the topics at these meetings have been the protocols for the MC-252 re-entry procedures and the BOP stack retrieval.

4. On Tuesday, August 31, I participated in a meeting with the Incident Management Team to discuss the procedures for documenting, decontaminating, and preserving the Deepwater Horizon BOP once it is onboard the Q-4000, the vessel responsible for lifting the BOP from the ocean floor. The draft procedure we discussed was Attachment 15 to the document entitled "Plug and Abandonment Project for MC252-1, Contingency: Recover BOPs with DP Inside," procedure number 2200-T2-DO-PR-4744. Attachment 15, entitled "Horizon BOP/LMRP Documentation, Decontamination and Preservation Plan: Ram Opening with Hot Line Procedure," addresses, among other things, the steps that should be taken onboard the recovery vessel to preserve the BOP. Since that August 31 meeting, the Unified Command approved the procedures on September 1, 2010. A copy of the approved version of Attachment 15 is attached as Exhibit B.

5. Attachment 15 provides that "[a]ll documentation, decontamination and preservation activities must be overseen by the USCG – BOEMRE Joint Investigative Team's consultant (Det Norske Veritas) and documented by the FBI Evidence Recovery Team." A point of agreement among the meeting participants was that procedures that

cross over from preservation to investigative testing, or which carry the potential for the alteration of evidence, are to be deferred if possible.

6. I have reviewed an email dated August 31, 2010 (05:24 PM) from Kerry J. Miller, who I understand is a lawyer for Transocean. This email briefly described Transocean's suggested "interim preservation procedures," which include: "1) disassembling the annulars; 2) opening the bonnets; and 3) inspecting the wellhead connectors." None of these topics were raised in the August 31 meeting. Since reviewing the email, I received this morning a more detailed document on Transocean letterhead entitled "Deepwater Horizon Interim Preservation Protocol of BOP/LMRP Components."

7. Based on what I know about the condition of the BOP from my investigation, I believe some of the interim preservations steps being proposed by Transocean could result in the destruction or alteration of valuable evidence concerning the BOP.

8. My specific concern is focused on Transocean's suggestion to disassemble the annular BOPs as part of an interim preservation procedure. Taking apart the annulars requires a significant amount of disassembly of the entire lower marine riser package (LMRP), including, for example, removal of hydraulic hoses and other pieces of equipment that serve as part of the BOP's control system. This activity is mentioned on page one of Transocean's detailed protocol. This step could undermine the later evaluation of the BOP's integrity. One of the key questions surrounding the functionality of the annular BOPs is whether and which BOP control connections were leaking.

Disassembly of the LMRP could frustrate the ability of investigators to make that determination.

9. The August 31 email from Transocean stated that "disassembling the annulars is required for gaining access to and preserving the operating pistons and the pressure containment components of the BOP stack." I believe this is unnecessary. Part of the existing preservation protocol approved by the Unified Command (Attachment 15), calls for the introduction of a large volume of preservation fluid into the BOP stack. This large quantity of fluid, in conjunction with the planned functioning of the BOP stack, should dilute any small amount of acid that may be present in the BOP and eliminate any concerns about corrosion. If there is concern that the preservation fluid will provide an insufficient period of protection, then the better solution would be to drain and replace the preservation fluid, not to tear down the LMRP to disassemble the annulars.

I declare, under penalty of perjury under the laws of the United States, that the foregoing is true and correct.

Dated: September 2, 2010

_____
Timothy John Allen