# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

|  |  |
|---|---|
| In re: Oil Spill by the Oil Rig DEEPWATER HORIZON in the Gulf of Mexico on April 20, 2010 | ) ) ) ) ) | MDL Docket No. 2179<br><br>Section: J |
| This Document Relates to: No. 10-1497, No. 10-1630 | ) ) ) ) ) ) ) | Judge Barbier<br>Mag. Judge Shushan |

**Memorandum in Support of Federal Defendants' Motion to Sever Cases
Brought Pursuant to the Administrative Procedure Act or,
In the Alternative, to Assign Such Cases to Separate Tracks**

Introduction

Federal Defendants[1] in the above-numbered cases, Gulf Restoration Network Inc. et al.
v. Salazar et al., No. 1497, filed May 18, 2010 ("Gulf Restoration Network I"), and Gulf
Restoration Network Inc. et al. v. Department of the Interior et al., No. 1630, filed June 3, 2010
("Gulf Restoration Network II"), move to sever these two cases, which are brought under the
Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, from the numerous cases that have
been centralized for pre-trial purposes in this multi-district litigation ("MDL") proceeding, In re:
Oil Spill by the Oil Rig DEEPWATER HORIZON in the Gulf of Mexico on April 20, 2010, No.

---

[1] The named defendants in the two actions are the Secretary of the Department of the Interior,
the Assistant Secretary for Land and Minerals Management, and the Director and Regional
Director of the Bureau of Ocean Energy Management, Regulation, and Enforcement, and the

10-2179 (E.D. La.) (hereinafter "In re: Oil Spill").[2/]

The two APA cases, which have both been brought by the same plaintiffs, differ from the other MDL cases in that they seek to invalidate actions by federal administrative agencies, and are brought pursuant to a limited waiver of sovereign immunity for non-monetary claims against the government. Under the APA, judicial review of challenged agency action proceeds under a highly deferential standard, and is confined to a pre-existing administrative record.   Many of the requirements of the Federal Rules of Civil Procedure do not apply in APA cases, which do not feature discovery or result in a "trial" or other fact-finding by a judge or jury.   It would therefore be improper to include such cases in the omnibus discovery procedures that will likely be necessary in the MDL action, and unfair to assign Defendants in these two APA cases any portion of the costs for such procedures.

For these reasons, the Gulf Restoration Network cases are sufficiently different than the rest of the actions before this Court to justify an order severing them from the MDL action.   In the alternative, Federal Defendants request that the cases be assigned to separate tracks, and that they be exempt from the case management requirements that apply to the other MDL cases, many of which are not proper in APA cases against the government.

Background and Procedural Posture

On May 18, 2010, Plaintiffs Gulf Restoration Network, Inc. and Sierra Club, Inc. filed an action in the Eastern District of Louisiana against the Secretary of the Department of the Interior,

---

United States Department of the Interior.

[2/]Because the proceedings before the Judicial Panel on Multidistrict Litigation (JPML) and the proceedings before Judge Barbier have the same caption, this motion differentiates between them by noting whether the pleading was filed in "J.P.M.L." or "E.D. La."

the Assistant Secretary for Land and Minerals Management, and the Director of the the Bureau

of Ocean Energy Management, Regulation, and Enforcement (formerly the Minerals

Management

Service (MMS)), and the Department of the Interior.   Gulf Restoration Network I, No. 10-1497,

Dkt. #1.   The case asserts claims under the APA and the National Environmental Policy Act

("NEPA"), 42 U.S.C. §§ 4321-4370h,[3] based upon a 2008 Notice to Lessees that MMS issued to

oil and gas lease holders and operators in the Gulf of Mexico.   Id. ¶¶ 40-50.   Plaintiffs allege

that the Notice to Lessees improperly exempted offshore drilling operations in the Gulf of

Mexico from compliance with certain regulatory requirements pertaining to the Blowout

Scenario Disclosure and portions of the Worst Case Oil Spill Response. Id. at pp. 1-2.   The

Complaint seeks injunctive and declaratory relief.   Id. at pp. 13-14, Prayer for Relief.   The

case was assigned to Judge Engelhardt in Section "N" of this District.

On June 3, 2010, the same plaintiffs filed a separate action in the Eastern District of

Louisiana alleging that MMS's  approval of British Petroleum's (BP's) 2009 Gulf of Mexico

Regional Oil Spill Response Plan violated the Oil Pollution Act of 1990 ("OPA"), 32 U.S.C. §§

2701-2762, and Section 706 of the APA, 5 U.S.C. § 706. Gulf Restoration Network II, No.

10-1630, Dkt. #1, ¶¶ 13-23, 46-50.   Plaintiffs allege that MMS's approval was arbitrary and

capricious because the agency knew at the time of approval that the rates of containment and recovery at

sea for oil spills, and the effectiveness rate of dispersants, were lower than represented in BP's Response

Plan.  Id. at ¶¶ 47-49.   The named defendants are the United States Department of the Interior, the

_____

[3]Because NEPA does not provide a private right of action, suits alleging violations of NEPA are
brought under the APA.   See Save Our Community v. EPA, 971 F.2d 1155, 1161 n.11 (5th Cir.
1992).

3

Secretary of the Interior, and the Director and Regional Director of the Bureau of Ocean Energy Management, Regulation, and Enforcement.  Id. ¶¶ 9-12.[4/]  The case was assigned to Judge Barbier, in Section "J" of the Eastern District of Louisiana.

On June 21, 2010, Judge Barbier consolidated the Gulf Restoration Network II case with cases before him that arose out of "the Deepwater Horizon explosion, fire or resulting spill . . . pending a ruling on transfer and coordination by the [Judicial Panel on Multidistrict Litigation]." See Gulf Restoration Network II, No. 10-1630, Dkt. #13 (June 21, 2010 Interim Case Management Order), ¶¶ 1-2.  The lead case in the consolidated cases before Judge Barbier was Roshto, et al. v. Transocean, et al., No. 10-1156, a negligence action brought against BP and Transocean by the family of a roustabout killed during the Deepwater Horizon explosion. Roshto, et al. v. Transocean, et al., No. 10-1156, Dkt. #1.

Meanwhile, in the J.P.M.L., BP and other parties had moved under 28 U.S.C. § 1407 to centralize and transfer dozens of cases filed nationwide that arose out of the Deepwater Horizon explosion and spill.  Neither Gulf Restoration Network I nor Gulf Restoration Network II were identified as "related" or "tag-along" actions[5/] by BP or any other party seeking action by the JPML.  Because the lead case with which Gulf Restoration Network II was administratively consolidated (Roshto), however, was identified as a member case in the MDL proceeding, in an

---

[4/]The case originally asserted one count but was later amended to include two additional counts. See Amended Complaint for Declaratory and Injunctive Relief, Gulf Restoration Network II, No. 10-1156, Dkt. # 432.

[5/]The APA cases, which do not turn on disputed "questions of fact," see infra pp. 7-9, do not meet the threshold criteria for a "tag-along action," which is a case that has "common questions of fact" with a case that has been transferred pursuant to 28 U.S. § 1407(a).  Rule 1.1, Rules of Procedure of the Judicial Panel on Multidistrict Litigation ("R.P.J.M.L."), 199 F.R.D. 425 (2001).

abundance of caution the Department of Justice requested that <u>Gulf Restoration Network II</u> (and two other APA cases that have since been dismissed) be excluded from any centralization order due to their legal and procedural differences from the tort actions underlying the MDL proceeding.[6] <u>See</u> United States of America's Amended Statement of Interest and Response to Motion to Transfer and to Notices of Related Action, <u>In re: Oil Spill</u>, MDL Docket No. 2179, Dkt. #203 (J.P.M.L.) (attached hereto as "Exhibit A").

On August 10, 2010, the JPML issued a Transfer Order centralizing seventy-seven Deepwater-Horizon-related actions and transferring to the Eastern District of Louisiana those actions that were pending in other districts, in order to "eliminate duplicative discovery, prevent inconsistent pretrial rulings, including rulings on class certification . . . and conserve the resources of the parties, their counsel, and the judiciary," and because it would facilitate closer coordination with Kenneth Feinberg's administration of the BP compensation fund.  Transfer Order, <u>In re: Oil Spill</u>, No. 10-2179, at 3, Dkt. # 1 (E.D. La.).   Neither <u>Gulf Restoration Network I</u> nor <u>Gulf Restoration Network II</u> was included as part of the JPML's Order.

On August 12, 2010, Judge Engelhardt *sua sponte* transferred the <u>Gulf Restoration Network I</u> case to the MDL and Judge Barbier.   Order, <u>Gulf Restoration Network I</u>, No. 10-1497, Dkt. #41.  On August 13, 2010, this Court consolidated certain cases, including <u>Gulf</u>

---

[6]Because <u>Gulf Restoration Network II</u> was filed in the transferee district (the Eastern District of Louisiana), the centralization order did not result in its "transfer," and the defendants therefore had no opportunity under Panel Rule 7.4(c) to object before the Panel to a conditional transfer order.   <u>See</u> Panel Rule 7.5(a); <u>In Re: Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation</u>, MDL No. 2151, Transfer Order, at 3 n.4 (Apr. 9, 2010).   <u>See also</u> Transfer Order <u>In re: Oil Spill</u>, No. 10-2179, at 3, Dkt. # 1 (E.D. La.) (permitting objection by parties to "transferred" actions after issuance of conditional transfer order). Similarly, motions to remand are available under the MDL rules only for actions that

Restoration Network I and Gulf Restoration Network II, with the MDL action as "related" cases. Order, In re: Oil Spill, No. 10-2179, Dkt. # 15 (E.D. La.).   On the same day, the Court entered a separate order deconsolidating all cases that had been previously consolidated under the June 21 Interim Case Management Order.   Order, In re: Oil Spill, No. 10-2179, Dkt. # 21 (E.D. La.).

On August 23, 2010, Intervenors in the Gulf Restoration I case filed a motion to deconsolidate and transfer that case back to Section "N."   Intervenors' Motion to Deconsolidate Civil No. 2:10-1497 and Transfer the Case to Its Original Judge, In re: Oil Spill, No. 10-2179, Dkt. # 59.   Federal Defendants did not oppose the motion to deconsolidate, and took no position regarding the request to transfer the case.

Argument

A.  The APA Cases Should be Severed from the MDL Because APA Cases Are Governed by Unique Legal Standards and Procedures.

The Court should sever the Gulf Restoration Network cases because the legal and procedural standards that will apply to those APA cases are unique and differentiate them from the other cases in the MDL.   Under the APA, a court must uphold a challenged decision absent a finding that the decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); Marsh v. Or. Natural Res. Council, 490 U.S. 360, 376 (1989).   The APA standard of review is "highly deferential."   Save Our Wetlands, Inc. v. Conner, No. 98-3625, 2000 WL 1010255, at *4 (E.D. La. July 20, 2000). The agency's action is afforded a presumption of regularity, that is, a presumption that the agency has acted in accordance with the law.   Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416

---

have been "transferred" from another district.   R.P.J.P.M.L. Rule 7.6(c).

(1971); <u>Avoyelles Sportsmen's League v. Marsh</u>, 715 F.2d 897, 905 (5th Cir. 1983).[8/] In the context of a challenged agency action, "[j]udicial review has the function of determining whether the administrative action is consistent with the law – that and no more." <u>Girling Health Care, Inc. v. Shalala</u>, 85 F.3d 211, 214-15 (5th Cir. 1996).

Unlike the other MDL actions, any merits review by the Court in the <u>Gulf Restoration Network</u> cases would be based upon the Department of the Interior's administrative record for each action. In considering claims brought under the APA, a court is to "review the whole record or those parts of it cited by a party." 5 U.S.C. § 706. The court's review is confined to the record before the agency at the time of its decision.[9/] <u>Fla. Power & Light Co. v. Lorion</u>, 470 U.S. 729, 743 (1985); <u>Camp v. Pitts</u>, 411 U.S. 138, 142-43 (1973); <u>Conner</u>, 2000 WL 1010255 at *4 (citing <u>Sabine River Auth. v. U.S. Dep't of the Interior</u>, 951 F.2d 669, 677-78 (5th Cir. 1992)) ("Where conflicting evidence is before the agency, <u>the agency and not the reviewing court</u> has the discretion to accept or reject from the several sources of evidence.'") (emphasis added); <u>Save Our Wetlands v. Julich</u>, Civ. No. 01-3472, 2002 WL 59401, at *3 (E.D. La. Jan. 15, 2002) (same).

Because of the APA's narrow scope of review, discovery is presumptively improper; "the

---

[8/] Administrative action must be upheld "if the agency has considered the relevant factors and articulated a rational connection between the facts found and the choice made." <u>Sierra Club v. Glickman</u>, 67 F.3d 90, 97 (5th Cir. 1995). The agency's reasons and policy choices need only satisfy "minimum standards of rationality." <u>Medina County Envtl. Action Ass'n v. Surface Transp. Bd.</u>, 602 F.3d 687, 699 (5th Cir. 2010) (citing <u>Public Citizen, Inc. v. EPA</u>, 343 F.3d 449, 455 (5th Cir. 2003). The court is not "empowered to substitute its judgment for that of the agency." <u>Avoyelles Sportsmen's League</u>, 715 F.2d at 904 (citing <u>Volpe</u>, 401 U.S. at 416).

[9/] As a procedural matter, the record typically is lodged with the Court at a date agreed upon by the parties that occurs within a reasonable amount of time after the defendant files its responsive pleading.

focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."   Camp, 411 U.S. at 142; Medina, 602 F.3d at 706; Joseph G. Moretti, Inc. v. Hoffman, 526 F. 2d 1311, 1312 (5th Cir. 1976); see also Fed. R. Civ. P. 26(a)(1)(B)(i) (exempting APA cases from initial disclosure requirements) & advisory committee note (excluded actions are "cases in which there are likely to be little or no discovery, or in which initial disclosure appears unlikely to contribute to the effective development of the case").   And because the Court's role under the APA is not to "find facts," expert discovery – which presumably will have significant weight and costs in the other MDL cases – is also improper.   Sabine River Auth., 951 F.2d at 678 (court must defer to an agency's reasoned decision "even if the reviewing court finds the opinions of other experts equally or more persuasive") (citing Marsh, 490 U.S. at 378).   As there can be no genuine issue of material fact, APA cases do not typically proceed to trial but are decided on summary judgment.   See Girling, 85 F.3d at 214-15 (summary judgment procedure is "particularly appropriate in cases in which the court is asked to review or enforce a decision of a federal administrative agency"); Glickman, 67 F.3d at 95-96 (district court is not to conduct de novo fact-finding in case proceeding governed by APA standard of review); see also Se. Conference v. Vilsack, 684 F. Supp. 2d 135, 142 (D.D.C. 2010) ("Summary judgment is . . . the mechanism for deciding whether as a matter of law the agency action is supported by the administrative record and is otherwise consistent with the APA standard of review.") (citing Volpe, 401 U.S. at 415).

   B.   The APA Cases Should be Severed from the MDL Because They Do Not Share Common Characteristics with the Other MDL Cases.

   The Gulf Restoration Network cases should also be severed from the remainder of the

cases in this action because their differences from the other MDL cases outweigh any shared characteristics, and their consolidation even for "pre-trial" purposes thwarts rather than promotes judicial efficiency.   The other cases in the MDL docket differ in almost every respect from these APA cases, including the nature of the allegations, the theory of relief, and the form of relief sought.   The MDL tort cases between private parties assert claims largely, if not solely, against the owners and operators of the DEEPWATER HORIZON rig (none of which are officers or agencies of the United States).[7/] Many of the complaints request a jury trial.   As described in BP's transfer motion, other cases designated as related for purposes of the MDL arise out of "the explosion of Deepwater Horizon and subsequent oil spill," and generally allege causes of action for negligence and seek recovery of damages.   BP Exploration & Production Inc.'s Motion to Transfer for Coordinated or Consolidated Proceedings Under 28 U.S.C. § 1407, In re: Oil Spill, MDL No. 2179, Dkt. # 13 (J.P.M.L.).   Fifty-nine of the seventy cases initially designated by BP as Related Cases are putative class actions.   Id.   The fact-intensive nature of the legal issues makes them candidates for intensive discovery, and will require the active judicial management that is the hallmark of "complex" litigation.   Cf. Manual for Complex Litigation, p. 3 (3d ed. 1995) ("On the other hand, litigation raising difficult and novel questions of law, though challenging to the court, may require little or no management, and therefore may not be complex as that term is used here.").

The Gulf Restoration Network cases share none of these characteristics.   Accordingly, there will be relatively little subject matter overlap between the APA cases and the MDL cases.

_____

[7/]Although some industry defendants, including BP, have moved to intervene in one or both of the Gulf Restoration Network cases, the named defendants included only federal agencies or

The <u>Gulf Restoration Network</u> cases seek only injunctive and declaratory relief against federal

defendants – not damages (which are not authorized under the APA).   <u>Gulf Restoration Network</u>

<u>I</u> alleges that a Notice to Lessees regarding deepwater drilling violated the APA and NEPA.

<u>Gulf Restoration Network II</u> alleges that the government's approval of BP's 2009 Gulf of

Mexico Regional Oil Spill Response Plan was arbitrary and capricious.   Neither case challenges

any aspect of actual operation of the Macondo well or asserts legal damages as a result of the

Deepwater Horizon explosion or oil spill.   Thus, the predominant questions in the MDL cases

regarding the standard of care, negligence, causation of damages, and the amount and nature of

damages, have no bearing on the narrow legal questions that will be dispositive in the <u>Gulf</u>

<u>Restoration Network</u> cases. To the extent that there is any overlap, the questions will not be

governed by the same evidentiary standards and burdens.   <u>Sabine River Auth.</u>, 951 F.2d at 678

(agency's reasoned decision entitled to deference "even if the reviewing court finds the opinions

of other experts equally or more persuasive") (citing <u>Marsh</u>, 490 U.S. at 378).

   C.  The APA Cases Should be Severed from the MDL to Further the Underlying Policies of
       Federal Rule of Civil Procedure 42(a) and the J.P.M.L.'s Transfer Order.

   Finally, continued consolidation of the <u>Gulf Restoration Network</u> cases with the MDL

cases would be inconsistent with the standards for consolidation under Federal Rule of Civil

Procedure 42(a), which authorizes consolidation to "avoid unnecessary cost or delay."   <u>See</u>   <u>PC</u>

<u>Healthcare Enters., Inc. v. Ariz. Hosp. and Healthcare Ass'n.</u>, No. 05-1793-PHX-MHM, 2007

WL 2990138, at *1 (D. Ariz. Oct. 11, 2007)   ("Consolidation is inappropriate . . . if it leads to

inefficiency, inconvenience, or unfair prejudice to a party.").   The APA cases, though they

employees.

involve oil and gas development in the Gulf of Mexico, are legally and factually distinct from the other MDL cases.   Thus, the parties and counsel in the Gulf Restoration Network cases would likely be unnecessarily subject to undue delay, burden, and cost from the centralized procedures – including procedures to address the discovery obligations of parties to the tort cases.

The effects of consolidation on the APA cases would also flout the underlying rationale for centralization, which was to "eliminate duplicative discovery, prevent inconsistent pretrial rulings, including rulings on class certification . . . and conserve the resources of the parties, their counsel, and the judiciary," Transfer Order,   In re: Oil Spill, No. 10-2179, at 3, Dkt. # 1 (E.D. La.).[10/] The APA cases do not present a risk of "inconsistent pretrial rulings" because there are unlikely to be any pretrial rulings, and any summary judgment ruling about the propriety of challenged government conduct will have little if any bearing on cases based upon the conduct of private entities.   Because there is no basis for discovery in APA cases, there is likewise no justification to saddle government defendants (and ultimately, the taxpayers) with a *pro rata* share of costs for discovery procedures related to, e.g., document depositories, see Dkt. #271-1; the recovery of underwater evidence, see letter from Don K. Haycraft to Judge Barbier dated August 19, 2010; and the like.   An order requiring the United States to bear any share of costs for discovery conducted by other litigants would require express statutory authority. Lane v. Peña, 518 U.S. 187, 192 (1996) (waiver of sovereign immunity against the United States must be "unequivocally expressed in statutory text").   For that reason, the Supreme Court has

---

[10/]To the extent that rationale for the Transfer Order rested on coordination with the BP compensation fund to support centralization, it is also inapplicable to the APA cases.

consistently "rejected efforts to assess monetary liability against the United States for what are normal incidents of litigation between private parties." United States v. Idaho ex rel. Director, Idaho Dept. of Water Resources, 508 U.S. 1, 7 (1993).   Moreover, the resources of the parties, counsel, or judiciary would not be well-served by requiring counsel to respond to the dozens if not hundreds of motions to compel, motions for protective orders, and motions relating to class certification in tort actions that are reasonably likely to be filed in the MDL.   Severing the actions would be the most "just and efficient" result.   Cf. 28 U.S.C. § 1407(a).[11/]

D.   In the Alternative, the APA Cases Should Be Assigned to Separate Tracks Within the MDL.

Alternatively, the United States moves for this Court to establish separate "tracks" within this docket for each of the Gulf Restoration Network cases.   See, e.g., In re: Oil Spill by "Amoco Cadiz" Off Coast of France on March 16, 1978, 471 F. Supp. 473, 478 (J. P. M. L. 1979) (stating that "[t]he transferee judge has power to provide that no party need participate in pretrial proceedings unrelated to that party's interests").   As demonstrated above, there are compelling reasons for managing Gulf Restoration Network cases separately from the tort cases, including but not limited to the fact that centralization likely would delay and impede, rather than promote, the just and efficient conduct of the APA cases because of the unique nature of the standard and scope of review governing claims against the Federal Government. Accordingly, if the Court is not inclined to grant Federal Defendants' motion to sever the cases, there are important reasons why – at a minimum – the Gulf Restoration Network cases should proceed on

---

[11/]   Because the Gulf Restoration Network I case was originally filed in Section "N" of this District, the Court, in its discretion, may find that it is most efficient to transfer that case back to that Section.

alternate tracks.    The proposed order attached to this motion exempts the parties to these two cases from the requirements, including any in the Pre-Trial Orders issued to date, that apply to the other MDL cases, and contemplates that the parties in each case will submit a proposed scheduling order within sixty (60) days.

For the foregoing reasons, Federal Defendants move to sever  <u>Gulf Restoration Network I</u>, No. 10-1497, and <u>Gulf Restoration Network II</u>, Case No. 10-1630, from this MDL proceeding or, alternatively, to assign them to separate tracks.


Dated: September 7, 2010                    Respectfully Submitted,

                                            IGNACIA S. MORENO
                                            Assistant Attorney General
                                            Environment and Natural Resources Division

                                             <u>s/ Kristofor R. Swanson</u>
                                            KRISTOFOR R. SWANSON, Trial Attorney
                                            Col. Bar No. 39378
                                            United States Department of Justice
                                            Environment and Natural Resources Division
                                            Natural Resources Section
                                            P.O. Box 663
                                            Washington, D.C. 20044-0663
                                            (202) 305-0248/(fax)(202) 305-0506

                                            JIM LETTEN
                                            UNITED STATES ATTORNEY

                                            <u>s/Peter M. Mansfield</u>
                                            PETER M. MANSFIELD (28671)
                                            Assistant United States Attorney
                                            Hale Boggs Federal Building
                                            500 Poydras St., Ste. 210B
                                            New Orleans, LA 70130
                                            Tele: (504) 680-3047
                                            Fax: (504) 680-3184
                                            Peter.Mansfield@usdoj.gov

I hereby certify that on this 7th day of September, 2010, I electronically filed the foregoing MEMORANDUM IN SUPPORT OF FEDERAL DEFENDANTS' MOTION TO SEVER CASES BROUGHT PURSUANT TO THE ADMINISTRATIVE PROCEDURE ACT OR, IN THE ALTERNATIVE, TO ASSIGN SUCH CASES TO SEPARATE TRACKS, and proposed order, with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to the following counsel of record: Alisa A. Coe, David G. Guest, and Monica K. Reimer.   The CM/ECF system will also send a notice of electronic filing to Interim Liaison Counsel for the consolidated cases: Stephen J. Herman, James Parkerson Roy, Don K. Haycraft, Donald Godwin, Deborah D. Kuchler, Phil Wittmann, and Kerry Miller.

 *s/ Kristofor R. Swanson*
KRISTOFOR R. SWANSON, Trial Attorney