UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig | : | MDL No. 2179 |
| "Deepwater Horizon" in the | | |
| Gulf of Mexico on | : | Section J [1] |
| April 20, 2010 | | |
| | : | Judge Barbier |
| This Document Relates to: | | Mag. Judge Shushan |
| **Clay Whittinghill v. Abdon Callais Offshore** | : | |
| No. 10-1984 | | |
| | : | |

: : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : :

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL
ARBITRATION AND STAY LITIGATION PENDING ARBITRATION**

Plaintiff, Clay Whittinghill, through undersigned counsel, respectfully requests that the Court *deny* Defendant, Abdon Callais Offshore, L.L.C.'s motion because the Federal Arbitration Act ("FAA") unambiguously exempts claims arising out of "contracts of employment of seamen" from its application.

**Facts**

Clay Whittinghill was employed by Abdon Callais as captain aboard the M/V ST. IGNATIOUS LOYOLA between June 5, 2007 and July 8, 2010. During this time (from approximately April 23, 2010 until he was discharged on July 8, 2010), the M/V IGANTIOUS LOYOLA was a lead vessel in clean-up efforts in the immediate aftermath of the Deepwater Horizon explosion. Mr. Whittinghill suffered serious personal injuries resulting from Defendant's failure to provide him and his vessel with adequate protection and was fired when he got sick. Mr.

1

Whittinghill's claims arise under federal statutory and general maritime law.

As a condition of his employment, Plaintiff was required to sign an "Arbitration Agreement," and on this basis Defendant has moved to compel arbitration. Defendant's argument is without merit because the FAA expressly excludes seamen such as Mr. Whittinghill from its application.

## Law and Argument

### I.  Standard of Review

In evaluating a motion to compel arbitration under the FAA, courts must treat the facts as they would in ruling on a summary judgment motion, construing all facts and reasonable inferences that can be drawn therefrom in a light most favorable to the non-moving party. *See, e.g., Goodman v. ESPE America, Inc.*, 2001 WL 64749, at *1 (E.D. Pa. Jan. 19, 2001); *Raasch v. NCR Corp.*, 254 F.Supp.2d 847, 851 (S.D. Ohio 2003). Because the court's order to arbitrate is in effect a summary disposition of the issue as to whether or not there has been a meeting of the minds on the agreement to arbitrate, "[t]he district court . . . should give to the opposing party the benefit of all reasonable doubts and inferences that may arise." *Brown v. Dorsey & Whitney, LLP*, 267 F.Supp.2d 61, 66-67 (D.D.C. 2003). This is particularly appropriate here, where Mr. Whittinghill has not had the opportunity to conduct discovery into Defendant's factual claims (or even review his complete personnel file, from which the arbitration agreement allegedly comes).

### II.  Plaintiff's claims are exempt from the FAA because he is a seaman who had a valid contract of employment with Defendant at the time of his injuries.

Defendant does not challenge that Mr. Whittinghill was a seaman under the FAA, nor does Defendant challenge that Mr. Whittinghill was employed by Defendant at the time of his injury. Rather, Defendant contends that since the arbitration agreement was placed before Mr. Whttinghill at the same time as his job application, and since Mr. Whittinghill could be fired without cause, his

injuries somehow did not arise from a "contract of employment." Under the Defendant's interpretation, only a signed piece of paper entitled "Employment Contract" which states a term of employment and conditions under which the employee could be terminated would be a "contract of employment" under the FAA. This interpretation is absurd on its face and runs contrary to controlling Fifth Circuit precedent, which holds that a pre-injury arbitration agreement between an seaman and his employer, as is the case here, is a "contract of employment" exempt from arbitration under the FAA.

### 1. The FAA does not apply to "contracts of employment of seamen . . ."

The FAA, section 1, exempts seamen from its application as follows: "**[n]othing herein shall apply to contracts of employment of seamen....**" Stated another way:

> "Congress did unequivocally express its intent to preclude certain matters from arbitration under the FAA. Section 1 of that act explicitly bars the application of the FAA 'to contracts of employment of seamen' . . . Pursuant to this clear expression of Congressional intent, '**federal courts have generally declined to enforce arbitration agreements in cases brought pursuant to the Jones Act on the grounds that the relevant arbitration provision was contained in the governing contract of employment, and thus, subject to the exclusion of [Section 1]**.'"

*Barbieri v. K-Sea Transp. Corp.*, 2006 WL 3751215 (E.D.N.Y. Dec. 19, 2006) (emphasis added) (citing *Brown v. Nabors Offshore Corp.*, 339 F.3d 391 (5th Cir. 2003) and *Buckley v. Nabors Drilling USA, Inc.*, 190 F. Supp.2d 958 (S.D. Tex. 2002) (both holding that arbitration clauses contained in seamen's original, pre-injury employment contracts to be unenforceable pursuant to the FAA exemption). Mr. Whittinghill's application for employment is a pre-injury agreement defining the terms and conditions of his employment, and is therefore a "contract of employment" under the FAA.

### *2. Plaintiff's pre-injury agreement defining the terms and conditions of his employment is a "contract of employment."*

The courts have long interpreted Section 1's "contract of employment" provision to include agreements between an employee and employer outside of only those formal contracts stating a specific duration of employment. For example, the courts have unanimously held that collective bargaining agreements of seamen, railroad employees, and transportation workers engaged in interstate commerce are "contracts of employment" for purposes of Section 1's exclusion. *See, e.g., Lincoln Mills of Ala. v. Textile Workers*, 230 F.2d 81, 86 (5th Cir. 1956), *rev'd on other grounds*, 353 U.S. 448 (1957); *Electrical Workers v. Miller Metal Products, Inc.*, 215 F.2d 221, 224 (4th Cir. 1954); *Electric R. and Motor Coach Employees v. Pennsylvania Greyhound Lines, Inc.*, 192 F.2d 310, 313 (3rd Cir. 1951); *Mercury Oil Refinancing Co. v. Oil Workers*, 187 F.2d 980, 983 (10th Cir. 1951); *Shirley-Herman Co. v. Hod Carriers*, 182 F.2d 806, 809 (2nd Cir. 1950). Further, the Supreme Court recently reiterated that Section 1 exemption applies to employment contracts of seamen, railroad workers, and transportation workers involved in interstate commerce in *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001).

The Fifth Circuit has at least twice held that pre-injury agreements establishing or modifying the terms or conditions of employment are "contracts of employment" under Section 1. In *Buckley v. Nabors Dilling USA, Inc.*, 190 F.Supp.2d 958 (2002), *aff'd*, 51 Fed. Appx. 928 (5th Cir. 2002), the Fifth Circuit affirmed the district court's holding that an at-will employee's continued employment after receipt of a letter informing him of the defendant's newly-enacted dispute resolution program constituted a "contract of employment" under Section 1. The court had held that under Section 1, the at-will employee was exempt from the FAA, denying the defendant's attempt to compel arbitration.

One year later, the Fifth Circuit affirmed *Buckley* in *Brown v. Nabors Offshore Corp.*, 339 F.3d 391(5th Cir. 2003).  In *Brown*, like in *Buckley*, several months before the seaman plaintiff's injury, the defendant employer sent employees, including the plaintiff, a letter noticing its adoption of a program requiring all disputes between the employer and employees be resolved through mandatory, binding arbitration.  *Id.* at 392.  Attached to the letter was an acknowledgment form which the defendant required its employees to sign confirming notice and understanding of the letter. *Id.*  The letter also stated that failure to return the signed form and continued employment constituted acceptance of the program.  *Id.*  The Fifth Circuit denied the defendant employer's request to stay the action and compel arbitration, holding that the letter was a "contract of employment," and the seaman plaintiff's employment contract was expressly excluded from FAA coverage under Section 1.

The Fifth Circuit's conclusion in *Brown* and *Buckley* that pre-injury agreements to arbitrate are "contracts of employment" under the FAA has subsequently been applied by state and federal district courts to exempt from arbitration transportation employees involved in interstate commerce under Section 1 of the FAA.  In *Carr v. Transam Trucking, Inc.*, 2008 WL 1776435 (N.D. Tex. April 14, 2008), the court held that the truck-driver plaintiff employee was exempt from arbitration under Section 1 when he signed an arbitration agreement six days prior to his injury.  The court rejected the defendant's argument that the arbitration agreement was not a "contract of employment," explaining that a contract of employment is simply an agreement between the employer and employee in which terms and conditions of employment are stated:

> "[T]he Arbitration Acknowledgment signed by plaintiff unambiguously provides that his agreements to arbitrate claims relating to on-the-job injuries is a '**condition of my commencing or continuing employment**' . . . **It is clear that plaintiff's agreement to arbitrate was a condition of his employment and formed part of**

5

**his employment contract** with defendant. Any argument to the contrary strains credulity." *Id.* (citing *Brown*, 339 F.3d at 392) (emphasis added).

In *Shanks v. Swift Transport Co., Inc.*, 2008 WL 2513056 (S.D. Tex. June 19, 2008), the district court likewise rejected the defendant employer's motion to compel arbitration, when the truck-driver plaintiff employee signed an arbitration agreement *prior to commencing employment*, as a mandatory condition of his employment with defendant. The court rejected the defendant's argument that the arbitration agreement was not a contract of employment but rather a "separate agreement providing for certain benefits incident to employment." *Id.* at * 3. The court held that because the arbitration agreement was part of a "mandatory company policy" which the plaintiff signed as a condition of being hired, it constituted a "contract of employment" under Section 1. The court explained, "[g]iven that the agreement was between [plaintiff] and his employer, provided benefits tied to continued employment, and was mandatory to boot, the Court easily concludes that the Plan comprises a component of [plaintiff's] contract of employment." *Id.* (citing *Brown*, 339 F.3d at 394). *See also In re Swift Tranp. Co., Inc.*, 311 S.W.3d 484 (Ct. App. Tex. 2009) ("[Plaintiff] accepted the mandatory arbitration provision on the date he became employed by [defendant]. We conclude that the Injury Benefit Plan is an employment contract within the meaning of Section 1 because the Plan and agreement to arbitrate are conditions of [plaintiff's] employment and formed part of his at-will employment contract with [defendant]. The FAA is therefore inapplicable to the Plan's arbitration provision.").

In this case, like in *Brown, Buckley, Carr*, and *Shanks*, Mr. Whittinghill executed a pre-injury agreement to arbitrate as a mandatory condition of his employment. The Arbitration Agreement signed by Mr. Whittinghill stated "[a]ny controversy or claim arising out of, in connection with, incidental to or directly *resulting from employment* with [Defendant] shall be settled by arbitration."

6

The agreement further stated "[i]n exchange for the valuable consideration of acceptance of my application for possible employment with [Defendant] *and/or continued employment with this company*, I hereby agree to be bound by this Arbitration Agreement."

The plain language of this agreement makes employment with Defendant conditioned on Mr. Whittinghill's assent to arbitration. Given that the agreement was between Mr. Whittinghill and his employer, provided benefits to Mr. Whittinghill in the form of employment with Defendant, and was mandatory to Mr. Whittinghill's employment by Defendant, this Court should "easily conclude that the [arbitration agreement] comprises a component of [Mr. Whittinghill's] contract of employment." *See Shanks*, 2008 WL 2513056 at *3. Under the express language of Section 1, Mr. Whittinghill is exempt from the FAA, and Defendant's arguments to the contrary must fail.

### 3. *Defendant's argument that Mr. Whittinghill was an "at-will" employee and thus cannot have an employment contract is without merit.*

Defendant also contends there was no "contract of employment" between Defendant and Mr. Whittinghill because Mr. Whittinghill was an at-will employee. This argument, however, misrepresents the nature of at-will employment. An at-will employee can still have a valid "contract of employment" subject to the Section 1 exemptions, as evidence by the plaintiffs in *Brown* and *Buckley*, *supra*, both at-will employees whom the Fifth Circuit determined had valid "contracts of employment" under Section 1. The fallacy in the Defendant's argument is underscored by the court's holding in *Durkin v. CIGNA Property & Casualty Corp.*, 942 F.Supp. 481 (D. Kan. 1996), which stated as follows:

> "In fact, **an at-will employee does work under an employment contract, by which, at its most basic level, the employee promises to do a certain job and the employer promises payment therefore**; the failure to fulfil either promise constitutes a breach of contract . . . Employment at will is not a state of nature but a continuing contractual relationship. Wages, benefits, duties, working conditions,

and all (but one) of the other terms are specified and a breach of any of any of them will give the employee a cause of action for breach of contract. **All that is missing is a provision that gives the contract a fixed term or that entitles one or both parties to a specified amount of notice before the other party can cancel the contract without liability**." *Id.* at 488 (emphasis added).

The courts that have addressed what constitutes an "employment contract" have nearly uniformly held that a "contract of employment" is evidenced by anything that describes the duties and conditions of employment, not only a formal document entitled "Employment Contract." *See, e.g., Collie v. Wehr Dissolution Corp.*, 345 F.Supp.2d 555, 560 (M.D.N.C. 2004) (FAA applies to most employment contracts, including at-will employment contracts); *Meier v. Family Dollar Servs., Inc.*, 443 F.Supp.2d 1036, 1050 (N.D. Iowa 2006) (in considering whether an employee handbook constitutes a contract of employment, "[the] key to determining whether a contract has been created is whether a reasonable employee, when reading the handbook, would believe that the employer guaranteed him certain protections"); *Feges v. Perkins Restaurant, Inc.*, 483 N.W.2d 701, 707 (Minn. 1992) (also considering whether an employee handbook constitutes an employment contract, and holding that the question is one of fact to be determined by the trier of fact).

        **4.**      ***Defendant's reliance on cases involving <u>post-injury</u> arbitration agreements is misplaced.***

In support of its argument that the express language of Section 1 does not actually exempt seaman from the FAA, Defendant cites several cases in which a seaman plaintiff signs a *post-injury* arbitration agreement. The courts in those cases reasonably hold that the *post-injury* agreement is not a "contract of employment" because it does not create or modify the terms and conditions of employment in effect at the time of injury. *See, e.g., Endriss v. Eklof Marine*, 1999 AMC 556, 551 (S.D.N.Y. 1998); *Terrebonne v. K-Sea Transportation Corp.*, 477 F.3d 285-86 (5th Cir. 2007). Indeed, an agreement to arbitrate, signed *after* an injury, cannot by definition modify the terms of

employment in effect at the time of injury.  Pre-injury agreements to arbitrate, in contrast, *do* establish or modify the terms and conditions of employment, and therefore are "contracts of employment" under Section 1 as illustrated in *Brown* and *Buckley*.  Pre-injury arbitration agreements are fundamentally different from post-injury agreements because pre-injury agreements modify the employee's right to bring a claim in his chosen forum before he knows of or understands the nature and extent of his injuries.  Pre-injury agreements, therefore, form part of the "contract of employment" because they modify the terms and conditions of the employment relationship in effect at the time of injury.  *See, e.g., Garza Nunez v. Weeks Marine, Inc.*, 2007 WL 496855 *3 (E.D. La. Feb. 13, 2007) (Fallon, J.) (Post-injury agreement to arbitrate was not a "contract of employment" because "[n]o language exists in the [agreement] itself that indicates the Plaintiff's acceptance of the agreement was a condition of his continued employment, nor does it otherwise modify the Plaintiff's employment status or alter the terms of his employment.)"

In *Garza*, Judge Fallon contrasted the post-injury agreement that the plaintiff signed with the *pre-injury* agreements signed in *Brown* and *Buckley*:

> "This is in contrast to *Brown* and *Buckley* where the defendant employer "effectively required all . . . employees to resolve disputes against [defendant] through binding arbitration proceedings, no matter what types of dispute was involved and no matter when the events giving rise to the dispute took place.  In those cases, failure to send back a signed acknowledgment form and continued employment was deemed consent.  In the present case, the Plaintiff was allegedly offered a choice whether to accept the arbitration or not for a tort claim, and he was offered this choice after his injury occurred."  *Id.* at *4 (emphasis added, internal citations omitted).

Judge Fallon also noted that "a reading of Circuit City and Section 1's text and legislative history reveal that *all* seamen are exempted under Section 1." *Id.* at. *3 (emphasis in original). The court further explained, "[t]hough the Supreme Court [in *Circuit City*] found the legislative record regarding the Section 1 exemption limited, the Court made the 'permissible inference' that

9

'Congress excluded 'seamen' and 'railroad employees' from the FAA for the simple reason that it did not wish to unsettle established or developing statutory dispute resolution schemes covering specific workers.'" *Id.* at *2 (quoting *Circuit City*, 532 U.S. at 121).

In this case, Mr. Whittinghill signed the arbitration agreement prior to his injury; therefore, this case falls squarely under binding Fifth Circuit precedent that pre-injury agreements constitute a "contract of employment" under Section 1.

### III.    Mr. Whittinghill's FMLA claims are not subject to arbitration because seamen, as a class, are exempt from the FAA.

Finally, Defendant argues that Plaintiff's Family Medical Leave Act ("FMLA") claims are subject to arbitration because they are discrimination claims. However, Section 1 exempts seaman *as a class* from the FAA, and the exemption applies without regard to the type of claims asserted. *See, e.g., Circuit City*, 532 U.S. at 105 (holding that the issue of whether a worker is engaged in interstate commerce, rather than the nature of his claims, triggered the Section 1 exemptions); *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 505-06 (4th Cir. 2002) (analyzing the nature of the plaintiffs' job assignments as a class to determine whether they are transportation workers engaged in interstate commerce); *Gagnon v. Service Trucking, Inc.*, 266 F.Supp.2d 1361, 1364 (plaintiff truck driver and all other truck driver employees constitute a class of workers who are exempt under Section 1), *vacated by settlement*, 2004 WL 290743. Defendant's argument that Mr. Whittinghill's discrimination claims are not exempt from the FAA is therefore wholly without merit.

### Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court *deny* Defendant's Motion to Compel Arbitration and Stay Litigation Pending Arbitration.

Respectfully Submitted,

**MARTZELL & BICKFORD, A.P.C.**

*s/ Spencer R. Doody*
_____
Scott R. Bickford, T. A. (#1165)
Spencer R. Doody (#27795)
Neil F. Nazareth (#28969)
338 Lafayette Street
New Orleans, LA 70130
Telephone:    504-581-9065
Facsimile:    504-581-7635
**Counsel for Plaintiff**

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served on all counsel of record via the Court's Electronic Filing/Notification System on September 7, 2010.

*s/ Spencer R. Doody*
_____