# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

|  |  |
|---|---|
| IN RE:   OIL SPILL by the OIL RIG<br>"DEEPWATER HORIZON" in the<br>GULF OF MEXICO, on<br>APRIL 20, 2010 | MDL NO. 2179 |
|  | SECTION: J |
| THIS DOCUMENT RELATES TO: |  |
| ALL ACTIONS | JUDGE BARBIER<br>MAG. JUDGE SHUSHAN |

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DEFENDANTS' MEMORANDUM IN SUPPORT OF PROPOSED
## INITIAL CASE MANAGEMENT ORDER

Defendants[1] respectfully submit this Memorandum in Support of the Defendants' Initial Case Management Order (Exhibit A), in anticipation of the Status Conference set for September 16, 2010.

## INTRODUCTION

Pursuant to Pretrial Order #1, Defendants' counsel have met with Plaintiffs' counsel on several occasions in an effort to reach a joint proposal regarding the Initial Case Management Order and have agreed on many of the terms and provisions. However, the parties disagree on the critical issue of the timing and scope of discovery and some other important issues. In recognition of the time needed to organize the hundreds of cases in MDL 2179 for efficient and fair procedures and case management, Pretrial Order #1 provided that "[p]ending the initial conference and further orders of this Court, all outstanding discovery proceedings are stayed, and no further discovery shall be initiated." (PTO #1, p. 6, 7.)

---

[1] BP America Inc., BP America Production Company, BP Company North America Inc., BP Corporation North America Inc., BP Exploration & Production Inc., BP Holdings North America Limited, BP Products North America Inc. (collectively, the "BP Defendants"); Cameron International Corporation; Halliburton Energy Services, Inc., ("HESI"); Nalco Company; Hyundai Heavy Industries Co., Ltd.; Marine Spill Response Inc.; M-I L.L.C.; Weatherford U.S., L.P.; Dril-Quip, Inc.; Anadarko Petroleum Corporation, Anadarko E&P Company LP, MOEX USA Corporation and MOEX Offshore 2007 LLC; and Transocean Holdings LLC, Transocean Offshore Deepwater Drilling Inc., and Transocean Deepwater Inc.

First, Defendants urge that the Court and the parties allow a few weeks for the rest of the related cases to be formally transferred to MDL 2179.  Scores of MDL 2179 cases are not even yet before this Court, and the organization of plaintiffs' counsel and a PSC will be not be complete until October.  Second, the Court and the parties should take the short period of time needed to resolve certain fundamental legal issues – including the bedrock issue whether a large number of the plaintiffs should even be before the Court -- and have issue joined.  A phased case management approach that settles the pleadings and streamlines the litigation will ultimately serve the ends of justice.  The first phase of this litigation should involve amendments to the pleadings, plus consolidated and master pleadings as plaintiffs propose, and motion practice directed to those pleadings, followed by answers as necessary.

These matters should be resolved prior to beginning headlong down the path of discovery.   In the meantime, government investigations such as the Marine Board of Investigation can be completed and reports rendered that will shed light on the issues related to the casualty.  Instead, Plaintiffs want to sweep away the stay in PTO #1 and begin full blown, written merits discovery immediately — they propose that merits discovery begin in October.  Such discovery would occur even before Master or Consolidated Complaints are filed, months before Motions to Dismiss are briefed, argued, and decided by this Court, and issue properly joined.

It is easy for the plaintiffs to urge early discovery before issue is joined.  Yet plaintiffs cannot claim any prejudice by allowing time for transfer of most of the cases to MDL 2179, and for counsel to be organized, before discovery starts in earnest.  As the Court knows, as a result of its own prompting early in this case, significant discovery opportunities have already been provided to plaintiffs to begin preparing their cases through their access to the large (and frequently updated) defense document depositories in place since July. On top of that, defendants are willing to provide other preliminary discovery, even during the pleading phase, as set forth in their proposed CMO (Exhibit A).  But it makes

no sense to open up full merits discovery before there is a PSC, before consolidated complaints are filed, before the motions to dismiss are decided, before answers are filed, and before the cases are at issue.

Defendants' proposed CMO provides for ample initial discovery.  By contrast, plaintiffs' proposed CMO goes too far at this early stage of the litigation.  (See Exhibit C - Comparison of the two proposed orders.)  The initial CMO should reflect reality – starting down the path of a complex matter in a coherent, phased fashion.  Neither the parties nor the Court should embark on a path without knowing the shape and direction needed for proper case management.

## ARGUMENT

Defendants' proposed CMO (Exhibit A) is superior to that proposed by plaintiffs' liaison counsel in two important respects: (1)  it provides for a measured and reasonable approach to settling the pleadings and initial discovery in the first phase of the litigation (as opposed to full blown merits discovery), and (2) it allows the litigation to develop through its initial stages, giving the parties and the Court time to be educated about the claims, facts and legal theories at issue, before attempting to set schedules and proceedings for later settings bound to change significantly with the benefit of time and experience in the litigation.    A comparison of the two proposed CMOs is set forth as Exhibit C.

### 1.       More than 150 MDL 2179 Cases Are Not Yet Before the Court.

In the first place, the transfer of cases to this Court for MDL 2179 under JPML Rules is far from complete.  Many counsel and parties are not yet formally before the Court while the JPML CTO process continues.  Four (4) CTOs have been issued to date, conditionally transferring 142 cases.  Only CTO #1 (26 cases) is even final, as shown in the following chart:

**MDL 2179 Transfer Order and Conditional Transfer Order Status**

| Order Number | Date Issued | Number of Cases Included | Status of Order | Notes |
|---|---|---|---|---|
| 1 | 8/24/10 | 26 cases conditionally transferred | Became final on 9/8/10 | Includes cases from N. Cal., S. Fla., N. Ga., S. Ga., E. Ky., W. Ky, , M. La., W. La, E. Tenn., M. Tenn., and E. Va. |
| 2 | 8/31/10 | 45 cases conditionally transferred | At least one objection to the order has been filed, staying the order as to that case.  Deadline for objections is 9/14/10 | Includes cases from M. Fla., N. Fla., S. Fla., E. Tex., S. Tex., and E. Va. |
| 3 | 9/2/10 | 33 cases conditionally transferred | At least one objection to the order has been filed, staying the order as to that case.  Deadline for objections is 9/16/10 | Includes cases from S. Tex. |
| 4 | 9/8/10 | 38 cases conditionally transferred | Deadline for objections is 9/22/10 | Includes cases from M. Ala., S. Ala., S. Miss., D. S.C., and E. Tex. |

As a result, while many cases have been sent to MDL 2179, many others (the 116 actions in CTO-2 through CTO-4) have been conditionally transferred only, while at least 40 more cases have yet to be even conditionally transferred.  When a conditional transfer order is entered, it does not go into

4

effect for 14 days, and if a party objects, the delay is significantly longer, as the order is stayed while the parties brief the objections.  *See* R. of Proc. of the Jud. Panel on Multidistrict Lit. 7.4.   All told, more than 150 cases are not yet before the MDL 2179 court.  And further, objections to transfer have been filed before the JPML recently by at least three parties, Plaintiffs M.P. Cheng, LLC, Pappas Restaurant, Inc., and Joshua Kritzer, which will delay transfer of those cases.  Those objections will not even be fully briefed before the JPML until October 15, 2010.

The point is this:  Defendants fully expect that all the listed cases (and more) will be before this Court soon as part of MDL 2179.  But they are not here yet, nor are their counsel.  It will be at least several weeks (or in the case of actions where objections have been filed, months) before all (or even substantially all) of these cases will be before the MDL 2179 court.  An order for merits discovery now would be at best premature and inefficient, risking duplicative discovery sought by later arriving parties and counsel. At worst, entering an order that would initiate full discovery on the merits is procedurally unfair, when at least 150 cases with parties that would be affected by such an order are not before this Court.

## 2. Plaintiffs Should Not Be Allowed Full Discovery Before Fundamental Legal Issues Have Been Resolved and the Pleadings Settled.

The parties agree on one thing—there is substantial work to do on the pleadings before the cases are at issue and the pleadings are settled.  Both sides agree that the plaintiffs' steering committee ("PSC") needs to form after this Court's appointment order in October 2010, and then the PSC will become organized as set forth in PTO #1.  And following that organization, plaintiffs have indicated (as set forth in Plaintiffs' Proposed CMO § III) that they intend to file several consolidated or Master Complaints that, in some fashion, will cover the various legal theories and parties now asserting claims in the approximately 400 separate actions.  Plaintiffs' proposed order suggests that the Master Complaints will not be filed before December 15, 2010.  (Plaintiffs' Proposed CMO § IV(A))

Following the filing of amended, consolidated and/or Master Complaints, there will undoubtedly be various legal motions, including potentially dispositive motions, directed at the pleadings then on file.[2]

To take an important example, the majority of the cases in MDL 2179 are brought by plaintiffs seeking economic losses arising from the *Deepwater Horizon* Macondo well incident, including fishermen, hotels, seafood processors, restaurants and others involved in the tourism business.  Under the Oil Pollution Act of 1990 ("OPA"), however, these plaintiffs are not even entitled to be in court until at least 90 days after presentment and (if applicable) denial of their claims before BP's extra judicial OPA process, the Gulf Coast Claims Facility administered by Kenneth R. Feinberg.  This statutory requirement provides that any prospective plaintiff must first present all its claims for damages resulting from the oil spill stemming from the *Deepwater Horizon* incident to BP Exploration & Production Inc. *before* any lawsuit is filed.

In relevant part, OPA provides that "***all claims*** for removal costs or damages ***shall be presented first to the responsible party*** or guarantor of the source designated under section 2714(a) of this title." 33 U.S.C. §2713(a) (emphasis added).  ***A suit may only be initiated <u>after</u> a claim is presented in accordance with 2713(a), and the responsible party denies all liability for the claim or the claim is not settled by payment within 90 days after the date upon which the claim was presented.***  33 U.S.C. §2713(c) (emphasis added).  In light of OPA's statutory "presentment" requirement, a court may not entertain damages claims unless and until a claimant has presented his or her claim in compliance with §2713(a).  *Turner v. Murphy Oil USA, Inc.*, No. 05-4206, 2007 WL 4208986, at *2 (E.D. La. Nov. 21, 2007) (dismissing OPA claims for lack of jurisdiction because plaintiffs failed to follow the presentment requirement). The OPA claims process is, in other words, "a mandatory condition precedent" to

---

[2]  The parties' proposed CMO each advocate that the cases be organized into pleading bundles by subject area and/or primary cause of action for purposes of pleadings and legal motions -- such as personal injury/wrongful death arising from the April 20, 2010  casualty.  These bundles are not intended to be discovery tracks.  Although the proposals are similar (see Exhibit C), Defendants' proposal for pleading bundles is preferable to plaintiffs as it is more precise in distinguishing among the types of cases.  (Exhibit A, Defendants' Proposed CMO  § III)

pursuing OPA claims in court.  *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co., Inc.*, 51 F.3d 235, 240 (11th Cir. 1995); *Gabarick v. Laurin Maritime (Am.) Inc.*, Civil Action No. 08-4007, 2009 WL 102549, at *3 (E.D. La. Jan. 12, 2009) (Lemelle, J.).   Thus, courts dismiss lawsuits brought under OPA where the plaintiffs have not followed Section 2713's presentment requirements.  *Id.*; *Marathon Pipe Line Co. v. LaRoche Indus., Inc.*, 944 F. Supp. 476, 477 (E.D. La. 1996) ("The Court agrees that § 2713's presentation requirement is jurisdictional and mandates dismissal when that provision is applicable and not complied with by the claimant"); *United States v. Murphy Exploration and Prod. Co.*, 939 F. Supp. 489, 492 (E.D. La. 1996) ("We therefore hold that the clear text of § 2713 creates a mandatory condition precedent barring all OPA claims unless and until a claimant has presented her claims in compliance with § 2713(a)."); *Johnson v. Colonial Pipeline Co.*, 830 F. Supp. 309, 310 (E.D. Va. 1993) ("If plaintiffs fail to comply with the prerequisites for bringing such a claim, the OPA claim must be dismissed.")   Pending resolution of this fundamental legal issue, the plaintiffs making OPA claims (and others seeking economic damages) have no right to be in court at all, much less to use the courts to be making sweeping discovery demands.[3]

This Court would be perfectly within its discretion to order that the discovery stay of PTO #1 continue in place *in toto* pending resolution of these motions to dismiss (some potentially dispositive of all claims of some parties).[4]   Courts have found that "a plaintiff's entitlement to discovery prior to a ruling on a motion to dismiss is not unlimited and may be terminated when the record shows that the

---

[3]  Defendants plan other motions to dismiss as well, such as motions based on the applicability of the *Robins Dry Dock* rule as a bar to the economic loss claims in many cases in the docket.

[4]  Defendant Nalco Company and Marine Spill Response Inc. take the position that they are situated differently than the other defendants, and the claims against them should be administered differently in some respects.  Each has been named only in a small number of lawsuits, and their involvement in MCL 2179 arises from allegations peripheral to the core allegations common to the vast majority of lawsuits.  For some such defendants, their only involvement was as a responder after the events of April 20, 2010.  None of these peripheral defendants is a "responsible party" under the Oil Pollution Act, for example, and most have not been involved in government investigations or produced documents.  Their meritorious legal defenses, which they expect to invoke in motions to dismiss, include defenses that are separate and distinct from those of the other defendants.  Engaging in full master discovery (and related potential disputes) while those motions to dismiss are pending could be extremely burdensome, time consuming and a waste of judicial resources.  Accordingly, the CMO should provide that for these defendants the current stay of discovery should continue through the pendency of such motions.

requested discovery is not likely to produce facts necessary to withstand judgment as a matter of law." *Dresser v. MEBA Medical & Benefits Plan*, Civil Action No. 08-2662, 2008 WL 2705584, at *2 (E.D. La. July 10, 2008) (granting a temporary stay of discovery pending the resolution of the motion to dismiss).[5]  Here, both parties have agreed to a short period for amending pleadings and motion practice to settle fundamental legal issues before defendants need to answer the complaints.  (*See* Defendants' Proposed CMO, § IV.)  Discovery should not be opened wide prematurely, before the pleadings are settled, especially where (as we next explain) plaintiffs have plenty to review already.[6]

     **3.**     **Plaintiffs Already Have Access To A Significant Amount Of Discovery through the Defense Document Depositories.**

Before MDL 2179 was transferred to this Court by JPML order of August 10 for coordinated pretrial proceedings, this Court had already taken steps to ensure that plaintiffs would have access to significant materials related to the *Deepwater Horizon* incident.  Even before formal discovery commenced, the Court encouraged the voluntary creation of document depositories by various defendants.

As an example, the BP Defendants have created an electronic database consisting of documents BP has produced to the Marine Board of Investigation ("MBI") and various committees of Congress. This database became accessible on July 6, 2010, and contained the documents that the BP Defendants

---

[5] S*ee also In re Harrah's Entertainment, Inc.*, Civil Action No. 95-3925, 1997 WL 40640, at *2 (E.D. La. February 3, 1997) (holding a brief stay of discovery was warranted pending the outcome of a motion to dismiss); *Landry v. Air Line Pilots Assn'n Int'l. AFL-CIO*, 901 F.2d 404, 436 (5th Cir. 1990) (finding there was no abuse of discretion in an order staying discovery pending the resolution of dispositive motions); *Enplanar Inc. v. Marsh*, No. 93-7633, at *2, 1994 WL 261088 (5th Cir. June 2, 1994) (holding that because plaintiffs only made "vague and conclusory assertions" that it was entitled to discovery, "the district court did not abuse its discretion in declining to grant additional discovery"); *Paul v. Kadair, Inc. v. Sony Corp. of America*, 694 F.2d 1017, 1030 (5th Cir. 1983) (noting that "a district judge may exercise his discretion to prevent the 'plaintiff from burdening the defendant with a needless round of discovery'"); *Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir. 1987) ("A trial court has broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined.").

[6] If plaintiffs want to move the cases faster, one approach suggested by defendants was to have Master Complaints on file before the December 15, 2010 date in plaintiffs' proposed CMO -- such as in mid October.   Defendants proposed October 15.   Plaintiffs' liaison counsel resisted this suggestion, saying it was too soon.   Defendants respect the need for additional time for amended and Master complaints given the number of parties and need for a formal PSC to be formed, but that reality does not mean that merits discovery of defendants should proceed before those pleadings are filed and tested by legal motions.

had produced to the MBI and various congressional committees as of June 18, 2010.  And this extensive

collection is not stagnant—it has been and is replenished periodically as set forth in the BP Defendant's

July 2010 letter agreement.  Any documents that the BP Defendants have produced or will produce to

those entities after June 18, 2010 have been, and will continue to be, uploaded and available within three

weeks of the production to the MBI or Congress.  Currently, the BP document depository contains over

54,000 documents spanning well over 250,000 pages of discovery material. Furthermore, the BP

Defendants have informed plaintiffs' liaison counsel that they are willing to discuss creating a separate

hard drive of these documents for the MDL 2179 plaintiffs for their ease of access to the documents and

the ESI in those documents as produced. [7]

   Other defendants have likewise established depositories with very large numbers of documents

available:  Halliburton's depository has at least 4466 documents covering over 49,000 pages;

Transocean's depository has over 200,000 pages; Cameron's depository has documents numbering over

16,000 pages; Anadarako's depository has 2836 documents covering 14,835 pages; and MOEX's

depository has 240 documents with 14,511 pages.

   Defendants believe that in total, the MDL 2179 plaintiffs have access to more than 600,000

pages of information, which is surely unprecedented (or nearly so) in complex multi-district litigation at

this early stage of the proceedings.  These defense document depositories are available to all plaintiffs'

counsel in all lawsuits, provided those lawyers agree to certain conditions, including adhering to a

Confidentiality Agreement.

---

[7] Plaintiffs' CMO would require ESI related production of these existing databases including production of all documents "in native format".   (Plaintiffs' Proposed CMO § V(A)(1).)  This is unwieldy to say the least for existing databases of materials produced to other entities.   The Court should expect the parties to meet and confer about the appropriate manner in which MDL 2179 plaintiffs' liaison counsel may access these existing depositories, without the overbroad and sweeping language in plaintiffs' proposed CMO.

**4.     Defendants' Proposed CMO Offers Additional Early Discovery**

In addition to the significant discovery available to the plaintiffs through the existing defense document depositories, the Defendants' proposed CMO (Exhibit A) goes further and provides for additional, targeted early discovery.  Defendants are willing to produce the following:

- applicable insurance policies described in Rule 26(a)(1)(A)(iv).

- Written identification of the identity (including name, address, telephone number, and job title or job description) of any employee who has provided testimony to the Marine Board of Investigation, or committees of the United States Congress, in connection with the casualty of April 20, 2010 at the Macondo Well.

- a written transcript of any such testimony (if available and in the possession of the defendants).

In addition, defendants' proposed CMO would authorize plaintiffs to serve additional interrogatories and document requests in December, before even rulings on motions to dismiss. (Defendants' Proposed CMO § V)   A timeline of events according to the defendants' Proposed CMO is attached as Exhibit B hereto.

This discovery, in addition to the hundreds of thousands of pages of discovery material already available to plaintiffs, is more than adequate, pending the outcome of the motions to dismiss and rulings on other fundamental legal issues.[8]  Thus, beyond the vast amount of documentary evidence currently available through the defendants' document depositories, plaintiffs and their counsel also have ready access to testimony from the Joint Investigation Team hearings (being conducted by the United States Coast Guard and the Bureau of Ocean Energy Management).  These MBI hearing transcripts capture the sworn testimony of 64 individuals taken over fifteen days.  This sworn testimony comes from witnesses

---

[8] For example, some defendants may file motions to dismiss based on lack of personal jurisdiction.   Some discovery of the moving parties (if any) related to such motions may be appropriate and should be handled case by case.

determined by the Joint Investigation Team to be integral to causation analysis, and calls into question Plaintiffs' claimed need for immediate causation discovery efforts.[9]

The posture of this MDL is unusual.  There is already a large body of evidence resulting from the myriad of investigations and the disclosures prompted by the Court in the early days of this matter. There is no need to require additional materials be produced at this time, as plaintiffs' proposed CMO would do, such as "all emails and electronic data to, from and about the actions on the rig or with respect to the well for a period 60 days prior the blowout."   The huge volume of materials already available to plaintiffs should suffice for the purpose of fact-finding on the casualty.  Plaintiffs thus cannot credibly argue that "early and often" formal written and deposition discovery is immediately needed.

**5.      Plaintiffs' Proposed CMO Improperly Attempts To Expand The Scope Of Rule 26 Initial Disclosures.**

Among other things, Plaintiffs' proposed CMO would obligate the defendants to produce by November 1, 2010 (six weeks before the plaintiffs say they would file Master Complaints) information and documents that Plaintiffs have defined as "Rule 26 Initial Disclosures."   (Plaintiffs' Proposed CMO § V(A))   But in doing so, plaintiffs have misconstrued the scope of Initial Disclosures, which Fed. R. Civ. P. 26 defines as those materials that a disclosing party "may use to support its claims or defenses."[10]

Under the guise of calling for Defendants' production of information as "Initial Disclosures" in the CMO, plaintiffs actually are propounding Rule 33 interrogatories (e.g., defendants to disclose "the

---

[9] Defendants note that United State Coast Guard investigation reports cannot be used in subsequent litigation.  46 U.S.C. § 6308(a).  Besides the MBI, certain defendants are subject to investigatory demands from other government entities such as the Chemical Safety Board and others.   Allowing those government investigations to run their course without additional, intrusive civil discovery in the next few months is also advisable as a case management technique for this Court, at least until the pleadings are settled and the actions here joined.  Furthermore, this Court will want to coordinate discovery as appropriate with the related MDL 2185 -- *In re BP p.l.c. Securities Litigation* (S.D. Tex.), another reason for a measured approach to these proceedings.

[10] At one time, Rule 26 required the disclosure of relevant material, without regard to whether the disclosing party would rely on the information.  However, in 2000, Rule 26 was amended to narrow the Initial Disclosure obligations:  "A party is no longer obligated to disclose witnesses or documents, whether favorable or unfavorable, that it does not intend to use."  Fed. R. Civ. P. Rule 26, 2000 Amendment, Comments.

areas of responsibility and/or authority within the Defendants (or other party or entity); his or her immediate supervisor, as well as those employees whom they supervise, manage or direct") and Rule 34 requests for production of documents (e.g., defendants to disclose "Defendants' Information Systems (IS), Management Information System (MIS) and Information Technology (IT) manuals and/or protocols").  Plaintiffs even purport to require defendants to create special organization charts, apparently whether or not they currently exist in defendants' files,  including information "by both position and name and should include the person's full name, their position(s), and their location during the 48 hour, 24 hour, 12 hour, 6 hours and 3 hours preceding the April 20, 2010 explosion."   Obviously, this type of request is a disguised interrogatory that should await ordinary Rule 33 discovery after the pleadings are settled -- it is not a Rule 26(a) "initial disclosure."

By calling for the production of "Initial Disclosures" pursuant to a Case Management Order of the Court, Plaintiffs impermissibly broaden Rule 26 obligations, effectively deny defendants those Federal Rules of Civil Procedure protections afforded any party responding to written interrogatories and requests for production of documents; significantly accelerate the time line for response to written discovery requests and inflate the number of interrogatories and requests for production to which they are allowed.

When such requests are recognized as what they truly are --- interrogatories and document requests to be charged against whatever numerical limitation the Court will ultimately set here -- defendants will have no problem with responding to the demands in accordance with the deadline set by the court for defendants to respond, when merits discovery properly begins.  But defendants do object to the designation of written discovery as "Initial Disclosure" obligations.

**6.      Other Discovery Identified by Plaintiffs is Inappropriate on its Face.**

Several of the categories of discovery the plaintiffs propose in the CMO are particularly inappropriate.  A prime example is the requests for communications between the BP Defendants and the

Gulf Coast Claims Facility.  (Plaintiffs' Proposed CMO § V(B)(4).)  Communications between the BP

Defendants and the Gulf Coast Claims Facility have no relevance to any claim properly in court.   Such

communications do not bear on liability, causation, injury or damages.   In fact, as previously discussed,

no plaintiff with a claim subject to the Oil Pollution Act should be in court in the first instance, before

claim presentment and denial, much less serving and receiving discovery from an independent facility

administered by the neutral GCCF administrator, Kenneth R. Feinberg.

Plaintiffs would also require the production of defendants "organization charts" (Plaintiffs'

Proposed CMO § V(A)(4)) without reference to whether the org charts involve segments of defendants'

organizations that are of any relevance to the April 20, 2010 incidents -- for example, under plaintiffs'

proposed requirement, proposed org charts from an Indiana crude oil refinery might be called for.   Such

an overbroad set of required disclosures should be rejected.

Further, as to plaintiffs' requests for environmental sampling information (§ V(A)(7)), not only

have the BP Defendants already provided substantial information regarding oil samples, but this court

has previously denied a Motion to Compel the production of oil samples.  (*See* 7/23/10 Order Denying

Plaintiffs' Motion for the Collection and Preservation of Oil Samples.)  At this early stage in the

litigation, plaintiffs already have access to and will be provided with more than adequate discovery

pending the outcome of the motions to dismiss and organization and narrowing of the other fundamental

legal issues.

**7.     Plaintiffs' Objections to Making Initial Disclosures Are Inappropriate.**

Despite making significant demands on the defendants for the production of documents as part of

the defendants' Initial Disclosures, plaintiffs object to having to produce *any* information as part of their

own initial disclosures in contradiction to the Federal Rules of Civil Procedure.  In fact, Fed. R. Civ. P.

26(a)(1)(A)(iii) requires plaintiffs to provide, unless otherwise stipulated or ordered by the court, "a

computation of each category of damages claimed by the disclosing party — who must also make

available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered."

Plaintiffs object to this disclosure arguing that "a full computation of damages is premature until the long-term environmental and/or health effects are known."  (*See* Defendants' Proposed CMO, § V(D))  However, this argument does not impact whether the computation should be made in the first instance, but instead impacts the plaintiffs' obligation to supplement the produced computation per Rule 26(a)(2)(D) and Rule 26(e) should new information become available.  Accordingly, Plaintiffs, per Rule 26(a)(1)(A)(iii), should be ordered to provide a list of the names and addresses of all the plaintiffs, and a general description of the claim and a computation of each category of damages.  Each plaintiff should also disclose whether their individual claims have been presented to the BP claims facility or the Gulf Coast Claims Facility, as this will directly impact the motions to dismiss filed by the defendants regarding OPA's presentment requirement.

       **8.**     **Other Issues Raised by the Competing CMOs.**

     (a)     **Motions to Dismiss Should Stay any Obligation to Answer any Complaint to which the MTD applies.**  Plaintiffs' proposed CMO calls for Master and Consolidated complaints, and would purport to require answers to those pleadings even where a defendant files a motion to dismiss. (Plaintiffs' Proposed CMO § IV(B))  Defendants object to that provision and state that the normal rules should apply -- a Rule 12(b) motion is a responsive pleading and tolls the required time for filing an answer under Rule 12(a)(4)(A).  (*See* Defendants' Proposed CMO § IV(B))  There is no basis for sweeping aside the Federal Rules in this case.

     (b)     **Crossclaims and Third Party Practice should be Deferred** .  Plaintiffs' proposed order would require any crossclaims among defendants and third-party complaints be filed by January 15,

2011.  (Plaintiffs' Proposed CMO § IV(B))  Such an early deadline is contrary to Rules 13 and 14.

Crossclaims are not compulsory under the Federal Rules and in particular Rule 13(g).  Further, given the

likelihood of motions to dismiss directed at the upcoming Consolidated and Master Complaints, and

because Answers (including Master Answers) may not be filed for many months in many of the MDL

2179 cases, there is no need for seeking to override the time period set forth in Rule 14(a)(1) for third

party complaints.  In addition, the Court has not yet resolved what law might govern the claims that may

govern any crossclaims.  The Defendants submitting this brief have agreed that crossclaims and third

party practice are best deferred.  The Court should in its discretion defer the setting of any deadlines for

crossclaims and third party complaints until a future date. [11]

(c)     **Consideration of Test Cases and the Timing of a Limitation Trial Should be**

**Discussed with the Court at a Subsequent Conference.**  Plaintiffs' CMO also would have the court

set a deadline for various future proceedings, including identifying test cases and  setting a trial date for

Limitation Trial.   (Plaintiffs' proposed CMO §§ V(B)(2) and VI.)   Defendants respectfully suggest that

any such scheduling is premature and overly ambitious.  Until the pleadings are settled and more is

known about the shape of what claims and parties will remain, it is simply too early for the Court to set

such deadlines.  Defendants' proposed CMO, with its phased, step-by-step approach, will result in a

organized case, with the initial legal  motions decided and the pleadings settled.  At the same time, the

plaintiffs will have access to a huge volume of information on the facts concerning this casualty.

---

[11]In their proposed CMO, defendants suggest that a new deadline for claims made in the Limitation Action be set for January 31, 2011.  (§ IV(D))  Defendants recognize that if and when the Court establishes a schedule for a Limitation trial, and sets a new schedule for the filing of claims in the Limitation Action, a date may need to be set for filing of cross claims in the Limitation Action as well, depending on the issue to be addressed in that proceeding.

## **CONCLUSION**

Defendants respectfully request that the Court enter Defendants' proposed CMO (Exhibit A).


Dated:  September 13, 2010                    Respectfully submitted,

                                              By: /s/Don K. Haycraft
                                              Don K. Haycraft (Bar #14361)
                                              R. Keith Jarrett (Bar #16984)
                                              LISKOW & LEWIS
                                              One Shell Square
                                              701 Poydras Street, Suite 5000
                                              New Orleans, Louisiana  70139-5099
                                              Telephone:  (504) 581-7979
                                              Facsimile:  (504) 556-4108

                                              Richard C. Godfrey, P.C.
                                              (richard.godfrey@kirkland.com)
                                              J. Andrew Langan, P.C.
                                              (andrew.langan@kirkland.com)
                                              KIRKLAND & ELLIS LLP
                                              300 North LaSalle Street
                                              Chicago, Illinois  60654
                                              Telephone: (312) 862-2000

                                              ***Attorneys for BP America Inc., BP America
                                              Production Company, BP Company North
                                              America Inc., BP Corporation North
                                              America Inc., BP Exploration & Production
                                              Inc., BP Holdings North America Limited,
                                              BP Products North America Inc.***

                                              Deborah D. Kuchler, T.A. (La. Bar No.
                                              17013)
                                              Janika D. Polk, (La. Bar No. 27608)
                                              Robert E. Guidry (La. Bar No. 28064)
                                              KUCHLER POLK SCHELL
                                              WEINER & RICHESON, LLC
                                              1615 Poydras Street, Suite 1300
                                              New Orleans, Louisiana 70112
                                              Telephone (504) 592-0691
                                                      and
                                              Of Counsel:

James J. Dragna
Bingham McCutchen
355 South Grand Avenue, Suite 4400
Los Angeles, California  90071-3106
Telephone (213)  680-6436
Facsimile (213) 680-8636

Warren Anthony Fitch
Ky E. Kirby
Michael B. Wigmore
Bingham McCutchen
2020 K Street, NW
Washington, DC  20006-1806
Telephone (202) 373-6000
Facsimile (202) 373-6001
***Attorneys for Defendants,***
***Anadarko Petroleum Corporation,***
***Anadarko E&P Company LP,***
***MOEX USA Corporation,***
***and MOEX Offshore 2007 LLC***

David J. Beck, T.A.
 *dbeck@brsfirm.com*
Joe W. Redden, Jr.
 *jredden@brsfirm.com*
David W. Jones
 *djones@brsfirm.com*
Geoffrey Gannaway
 *ggannaway@brsfirm.com*
BECK, REDDEN & SECREST, L.L.P.
One Houston Center
1221 McKinney St., Suite 4500
Houston, TX 77010
Phone: (713) 951-3700
Fax: (713) 951-3720

Howard L. Murphy, 9844
 *hmurphy@dkslaw.com*
Bertrand M. Cass, Jr., 3984
 *bcass@dkslaw.com*
Francis J. Barry, Jr., 2830
 *fbarry@dkslaw.com*
Jonathan M. Walsh, 25922
 *jwalsh@dks.com*
Paul D. Hale, 30539
 *phale@dkslaw.com*
DEUTSCH, KERRIGAN & STILES

17

755 Magazine Street
New Orleans, Louisiana 70130
Phone: 504-581-5141
Fax: 504-566-4039
        and
Phillip A. Wittmann, 13625
 *pwittmann@stonepigman.com*
Carmelite S. Bertaut, 3054
 *cbertaut@stonepigman.com*
Keith B. Hall, 24444
 *khall@stonepigman.com*
Jared Davidson, 32419
 *jdavidson@stonepigman.com*
STONE PIGMAN WALTHER WITTMANN
L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax: 504-581-3361
***Attorneys for Defendant Cameron***
***International Corporation***

Don Jackson
donjackson@warejackson.com
C. Dennis Barrow, Jr.
dennisbarrow@warejackson.com
Ware, Jackson, Lee & Chambers, L.L.P.
2929 Allen Parkway, 42nd Floor
Houston, Texas 77019-7101
Telephone: (713) 659-6400
Facsimile: (713) 659-6262
***Attorneys for Dril-Quip, Inc.***

Donald E. Godwin
*Attorney in Charge*
dgodwin@godwinronquillo.com
Bruce W. Bowman, Jr.
bbowman@godwinronquillo.com
Jenny L. Martinez
jmartinez@godwinronquillo.com
Floyd Hartley
fhartley@godwinronquillo.com
Gavin Hill
ghill@godwinronquillo.com
GODWIN RONQUILLO PC
1201 Elm Street, Suite 1700

Dallas, Texas 75270-2041
Telephone: 214.939.4400
Facsimile: 214.760.7332
    and
R. Alan York
ayork@godwinronquillo.com
1331 Lamar, Suite 1665
Houston, Texas 77010
Telephone:  713.595.8300
Facsimile:  713.425.7594
***Attorneys for Defendant***
***Halliburton Energy Services, Inc.***

Carey R. Dunne
carey.dunne@davispolk.com
Frances E. Bivens
frances.bivens@davispolk.com
David B. Toscano
david.toscano@davispolk.com
Daniel F. Schubert
daniel.schubert@davispolk.com
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York  10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
  and
Stephen H. Kupperman, 7890
skupperman@barrassousdin.com
Judy Y. Barrasso, 2814
jbarrasso@barrassousdin.com
Barrasso Usdin Kupperman Freeman & Sarver
909 Poydras, Suite 2400
New Orleans, Louisiana  70112
Telephone: (504) 589-9700
Facsimile:  (504) 589-9701
***Attorneys for Hyundai Heavy Industries Co.,***
***Ltd.***

Hugh E. Tanner
htanner@morganlewis.com
Denise Scofield
dscofield@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana St., Suite 4000
Houston, TX  77002

19

Telephone:  (713) 890-5000
***Attorneys for M-I L.L.C.***

Mary Rose Alexander
mary.rose.alexander@lw.com
LATHAM & WATKINS
233 South Wacker Drive, Suite 5800
Chicago IL  60606
Telephone: (312) 876-7700
***Attorneys for Nalco Company***

Miles P. Clements (#4184)
Kerry J. Miller (#24562)
Campbell E. Wallace (#13195)
Paul C. Thibodeaux (#29446)
Everett R. Fineran (#31153)
FRILOT, PREIS ROY, AND PHELPS
1100 Poydras Street, Suite 3700
New Orleans, Louisiana 70163
Telephone: (504) 599-8169
Facsimile:  (504) 599-8154
E-mail: mclements@frilot.com
            kmiller@frilot.com
            cwallace@frilot.com
            pthibodeaux@frilot.com
            efineran@frilot.com
            and
Edward F. Kohnke IV, T.A. (07824)
Edwin G. Preis, Jr. (10703)
Carl J. Hebert (6724)
Richard J. Hymel (20230)
Robert M. Kallam (20242)
Joseph E. Lee III (26968)
PREIS & ROY
(A Professional Law Corporation)
Pan American Life Center
601 Poydras Street, Suite 1700
New Orleans, Louisiana 70130
Telephone: (504) 581-6062
Facsimile: (504) 522-9129
            and
George M. Gilly (6234)
Evans Martin McLeod (24846)
PHELPS DUNBAR, LLP
Canal Place
365 Canal Street, Suite 2000

New Orleans, Louisiana 70130-6534
Telephone: (504) 566-1311
Facsimile: (504) 568-9130
***Counsel for Transocean Holdings LLC,
Transocean Offshore Deepwater Drilling
Inc., and Transocean Deepwater Inc.***

Glenn G. Goodier
ggoodier@joneswalker.com
JONES WALKER
201 St. Charles Avenue
New Orleans, LA  70170-5100
Telephone:  (504) 582-8174
***Attorney for Defendant Weatherford U.S.,
L.P***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 13, 2010, a copy of the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all counsel of record registered to receive electronic service by operation of the court's electronic filing system.  I also certify that I have mailed this filing by United States Postal Service to all counsel of record who are not registered to receive electronic service by operation of the court's electronic filing system.

/s/ Don K. Haycraft