UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | | |
|---|---|---|---|
| In Re: | Oil Spill by the Oil Rig | : | MDL NO. 2179 |
| | "Deepwater Horizon" in the | : | |
| | Gulf of Mexico, on | : | SECTION: J |
| | April 20, 2010 | : | |
| | | : | JUDGE BARBIER |
| This Document Relates to All Cases | | : | MAG. JUDGE SHUSHAN |

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**STATEMENT OF INTEREST OF THE UNITED STATES
RELATED TO THE INITIAL PRETRIAL CONFERENCE**

The purpose of this Statement of Interest is to present the views of the United States regarding scheduling and case management of this multidistrict litigation ("MDL"). Although the United States has not yet filed a civil action related to the Deepwater Horizon oil spill, it has potential civil claims arising from the spill. In any subsequently filed action, the United States would likely raise several case-management concerns. For the convenience of the Court, we are filing this Statement now to apprise the Court of the most significant of these concerns. Recognizing that the United States is not yet a party, we raise only three general issues now. The United States' filing a complaint, or other changing circumstances, may warrant further proposals.[1]

**I.      The United States Has a Special Role in Oil Spill Litigation.**

The United States has a unique role in civil enforcement matters arising from oil spills. Congress has established several causes of action, enforceable by the United States, that may apply here. Examples include claims for civil penalties and injunctive relief under the Clean

---

[1] As the Court is aware, the United States is a defendant in two actions that are consolidated in this MDL. *See* Case Nos. 10-1497 & 10-1630. On September 7, 2010, the United States filed a request to sever these two cases from the MDL. [Case No. 2:10-md-02179-CJB-SS, Docket entry #174.] This Statement of Interest relates solely to the United States' potential future affirmative claims as a plaintiff and not to the two pending cases.

1

Water Act, 33 U.S.C. § 1251 *et seq.*, and an array of cost and damage claims under the Oil Pollution Act ("OPA"), 33 U.S.C. § 2701 *et seq.*

OPA, enacted in 1990 in the wake of the Exxon-Valdez oil spill, imposes liability on certain "responsible parties" for "removal costs" and "damages" related to discharges or substantial threats of discharge of oil. *Id*. § 2702(a). OPA defines "removal costs" to include "the costs of removal that are incurred after a discharge of oil has occurred." *Id.* § 2701(31). OPA defines "damages" to include, among other things, various categories of economic damages (for example, the net cost of increased public services, and damage to real or personal property), and damages to natural resources and the costs of assessing such damages. *Id.* §§ 2701(5), 2702(b)(2). Notably, many types of removal costs and damages can be recovered only by governmental plaintiffs, whether Federal, State, local, Tribal, or foreign. For example:

- Damages for injury to, destruction of, loss of, or loss of use of, natural resources are recoverable only by a United States trustee, a State trustee, a Tribal trustee, or a foreign trustee. *See id.* § 2702(b)(2)(A). [2]

- Damages equal to the net loss of taxes, royalties, rents, fees, or net profit shares due to the injury, destruction, or loss of real property, personal property, or natural resources are recoverable only by the United States, a State, or a political subdivision thereof. *See id.* § 2702(b)(2)(D).

- Disbursements by the U.S. Coast Guard's National Pollution Funds Center, on behalf of the Oil Spill Liability Trust Fund, are recoverable only by the United States. *See id.* §§ 2712(f), 2715.

---

[2] OPA establishes one specific category of recovery for damage to natural resources open to non-governmental claimants: Those who use a natural resource for subsistence. *See id*. § 2702(b)(2)(C).

Similarly, Section 311(b)(7) of the Clean Water Act authorizes the United States to seek civil penalties from various entities for oil spills like the DEEPWATER HORIZON spill, in amounts potentially up to $1,100 (and in some circumstances up to $4,300) per barrel of oil spilled. *See* 33 U.S.C. § 1321(b)(7); 40 C.F.R. § 19.4. The per-barrel penalty provision was enacted at the same time as OPA.

As the Attorney General announced several months ago, the Department of Justice is reviewing OPA, the Clean Water Act, and other statutes in which enforcement actions may be appropriate. At this juncture, the United States expects that it may file a civil complaint related to the Deepwater Horizon disaster under these provisions and possibly others.

## II. The Court Should Consider Establishing a Special Track for Governmental Claims.

Several of the cases pending before the Court in this MDL include claims under OPA. Other plaintiffs have filed suit under various state tort-law theories, including negligence.

Discovery and motion practice relevant to liability claims of the United States and to private-party claims may overlap substantially. It would be appropriate to coordinate discovery among the various governmental and private parties, to ensure a just, speedy, and thorough resolution of liability issues and, where possible, to reduce the possibility of duplication of effort.

But, as discussed above, some of the categories of remedy, such as removal costs expended by the Oil Spill Liability Trust Fund and certain damages under OPA, are available only to governmental entities.[3] Issues concerning these uniquely governmental categories therefore may differ from issues arising from the private-party actions in this MDL. Moreover, given the nature of the governmental claims, they may involve complex scientific and economic

---

[3] Similarly, any judgment for civil penalties under Section 311(b)(7) of the Clean Water Act, 33 U.S.C. § 1321(b)(7), would be paid to the United States, specifically to the Oil Spill Liability Trust Fund. *See* 33 U.S.C. § 1321(s); 26 U.S.C. § 9509(b)(8).

3

expert testimony that is may not be required to quantify the damages suffered by private plaintiffs. For example, unlike private claims, governmental claims for natural resources damages under 33 U.S.C. § 2702(b)(2)(A) and 15 C.F.R. Part 990 typically include a multi-step assessment of injuries and damages, planning of restoration, and public comment.

The United States asks the Court to, at this time or at such point that the United States files its complaint, establish a special "government track" for discovery and other pretrial proceedings to (1) ensure that the Government's special position as a plaintiff will not be prejudiced by the litigation choices of private parties and (2) provide a separate process for resolving issues that are uniquely governmental, especially those involving remedy issues. *See* Pretrial Order #1 in MDL 2179 (Docket entry #2) (anticipating that the consolidated cases may need to be "grouped into separate tracks for purposes of pretrial discovery, motions practice, etc."); 28 U.S.C. § 1407 (MDL statute granting District Courts the discretion to "coordinate[]," rather than consolidate, pretrial proceedings).

A separate government track within the MDL would allow the Court to craft a coordinated schedule for overlapping factual and legal matters, to establish a separate schedule for matters that do not overlap, and to protect the Government's unique role under the relevant Federal statutes whenever the value of coordination is outweighed by the importance of ensuring a thorough and complete investigation of the facts. This dual-track approach would promote efficiency, as it would avoid duplication without delaying resolution of issues that are unique to the private-party suits or to the governmental suits. And most important, this approach would serve the significant public interests in the fair and just resolution of an environmental and economic disaster of this magnitude.

Use of separate tracks for different kinds of discovery or motion practice is the method for garnering MDL efficiency while recognizing material difference among the centralized cases. *See, e.g., In re: Rembrandt Technologies Patent Litigation*, 493 F. Supp. 2d 1367, 1369 (Jud.Pan.Mult.Lit. 2007) (where some proceedings to be centralized are further advanced than others, transferee court will be able to formulate pretrial program that allows any unique discovery in these actions to proceed concurrently on separate tracks with discovery on common issues); *In re: Stanford Securities Litigation*, 655 F. Supp. 2d 1360, 1361 (Jud.Pan.Mult.Lit. 2009) (while some unique questions distinguish the cases, transfer to a single court permits formulation of a pretrial program that allows any non-common issues to proceed concurrently with common issues); *In re Oill Spill By the "Amoco Cadiz" Off the Coast of France on March 16, 1978*, 471 F. Supp. 473, 478 (Jud.Pan.Mult.Lit. 1979) ("transferee judge . . . has the authority to schedule any pretrial proceedings that are unique to particular parties . . . [and] to provide that no party need participate in pretrial proceedings unrelated to that party's interests"); *In re Republic National-Realty Equities Securities Litigation*, 382 F. Supp. 1403, 1405-06 (Jud.Pan.Mult.Lit. 1974) (the degree of coordination between government action and private actions is in the discretion of the transferee judge).

Moreover, for reasons of sovereignty, as well as the unique nature of certain claims that may be pursued solely by the United States, it is not appropriate for the United States to be represented by private party's counsel as liaison or lead counsel. *See* 28 U.S.C. § 516. A government's interest, especially where its claims are part of law enforcement, could depart markedly from the interests of private party, tort plaintiffs. Courts have established separate lead and liaison counsel for government parties. *In re: Compact Disk Minimum Advertised Price Antitrust Litigation*, No. MDL 1361, 2001 WL 64775 (D. Me. Jan. 26, 2001) (Appointment of

5

lead and liaison counsel for State Attorneys General suing *in parens patriae*, followed by appointments of separate liaison and lead counsel for private party plaintiffs).

State plaintiffs may have similar sovereignty concerns. At least one of the Gulf States, Alabama, already has filed a complaint.

We therefore suggest that the Court create a separate government track for discovery and other pretrial proceedings related to government claims, especially those related to remedy. If the United States files an action, it will provide specific proposals for this government track, possibly proposing, among other things, that issues related to Governmental damages or other Governmental remedies be completely severed or otherwise phased for litigation on a long-term schedule, well after the resolution of the pending MDL liability issues.

### III. In Setting a Discovery Schedule, the Court Should Consider the United States' Interests.

If the United States files claims, including claims under OPA or the Clean Water Act, there may be areas where the governmental claims and the private claims overlap, including on issues of liability and on allegations of gross negligence or willful or other culpable conduct. In light of that potential for factual overlap, the United States – like others already party to the MDL – has a significant interest in the timing and manner of the development of the record. It is therefore critical that the discovery schedule, the order of discovery, and the nature of the factual development be managed with recognition of all the significant interests at play, both to avoid prejudice and to foster efficient, effective litigation. To those ends, any case management order should consider the following:

1. <u>Document Production and Interrogatories Should Precede Depositions</u>: Before the start of depositions, document exchanges and other paper discovery techniques should be well under way. Depositions can then proceed based on an appropriate foundation.

2. <u>Early Motion Practice Should Be Allowed</u>:  Narrowing or clarifying certain issues in these cases may be accomplished by motion practice.  Such efforts should be encouraged.

3. <u>A Reasonable Period of Discovery Should Follow the Deadline for Pleadings to Amend, Supplement, or Join</u>:  The schedule should allow ample time following commencement of discovery for parties to amend their complaints to add parties or claims.  But the schedule also should ensure sufficient time for discovery after the pleadings have been amended.

4. <u>Other Discovery and Case Management Issues Are Already of Acute Interest</u>:  The United States possesses large amounts of electronic material and documents that could be of interest here.  Accordingly, the United States has a strong interest in many case management procedures, both as a potential plaintiff and as possible recipient of discovery requests.  Such requests will need to be coordinated carefully to minimize any adverse impact on important, ongoing governmental functions.  The United States is likely to make proposals pertaining to:  (a) limits on preservation and destruction of electronic information (*see*, *e.g.*, Fed. R. Civ. P. 26(b)(2)); (b) document repositories (including public access); (c) rules for handling samples collected in oil-spill response actions and other physical evidence (given that other investigations may be ongoing); (d) standards for privilege logs; and (e) agreements governing inadvertent waiver and "claw-backs."

To date, the Department of Justice has sought to work cooperatively with the parties that have an interest in these issues and intends to continue to do so.

//

//

The United States thanks the Court for considering these views.

Respectfully submitted,

| | |
|---|---|
| TONY WEST<br>Assistant Attorney General<br>Civil Division | IGNACIA S. MORENO<br>Assistant Attorney General<br>Environment & Natural Resources Division |
| PETER F. FROST<br>Director, Torts Branch, Civil Division<br>Admiralty and Aviation<br>STEPHEN G. FLYNN, Assistant Director<br>MICHELLE DELEMARRE, Trial Attorney<br>SHARON SHUTLER, Trial Attorney<br>Torts Branch, Civil Division<br>Admiralty and Aviation<br>U.S. Department of Justice<br>P.O. Box 14271<br>Washington, DC  20044-14271<br>Telephone:  (202) 616-4100<br>Facsimile:  (202) 616-4002 | BRUCE S. GELBER<br>Chief, Environmental Enforcement Section<br>THOMAS A. MARIANI, Jr.<br>Assistant Section Chief<br>Environmental Enforcement Section<br>Environment & Natural Resources Division<br><br>/s/ Steven O'Rourke<br>STEVEN O'ROURKE, Senior Attorney<br>JAMES M. NICOLL, Senior Counsel<br>LOREN REMSBERG, Trial Attorney<br>Environmental Enforcement Section<br>Environment & Natural Resources Division<br>U.S. Department of Justice<br>P.O. Box 7611<br>Washington, DC 20044-7611<br>Telephone: (202) 514-2779<br>Facsimile: (202) 514-2583<br>E-mail: steve.o'rourke@usdoj.gov |
| /s/ R. Michael Underhill<br>R. MICHAEL UNDERHILL, T.A.<br>Attorney in Charge, West Coast Office<br>Torts Branch, Civil Division<br>U.S. Department of Justice<br>7-5395 Federal Bldg., Box 36028<br>450 Golden Gate Avenue<br>San Francisco, California  94102-3463<br>Telephone: (415) 436-6648<br>Facsimile: (415) 436-6632<br>E-mail: mike.underhill@usdoj.gov | JAMES LETTEN<br>United States Attorney<br>Eastern District of Louisiana<br>SHARON D. SMITH<br>Assistant United States Attorney<br>Hale Boggs Federal Building<br>500 Poydras Street, Ste. B-210<br>New Orleans, Louisiana 70130<br>Telephone:  (504) 680-3000 |

Attorneys for the UNITED STATES OF AMERICA

CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that the above and foregoing submission will be electronically filed into the record using the Court's ECF filing system.

This 13th day of September, 2010.

/s/R. Michael Underhill