UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG | : | MDL-2179 |
| "DEEPWATER HORIZON" in the | : | |
| GULF OF MEXICO, on | : | |
| APRIL 20, 2010 | : | |
| | : | SECTION J |
| | : | |
| THIS DOCUMENT RELATES TO: | : | JUDGE BARBIER |
| | : | MAG. JUDGE SHUSHAN |
| ALL ACTIONS | : | |

......................................................................................................................

STATE OF LOUISIANA'S MOTION FOR CREATION OF
GOVERNMENT CASE TRACK AND FOR APPOINTMENT OF LIAISON COUNSEL

NOW INTO COURT, comes the State of Louisiana, through James D. "Buddy" Caldwell, Attorney General of the State of Louisiana, and respectfully requests that this Honorable Court order the creation of a "government case track" for all government-related cases in the above, coordinated proceedings, to be separate from the standard case track for plaintiffs and defendants. Louisiana further requests that a "Liaison Counsel" position be created for the requested government case track, and that the Court consider Allan Kanner of the law firm of Kanner & Whiteley, L.L.C., currently serving as Special Counsel to the Louisiana Attorney General, for appointment as Government Track Liaison Counsel. In further support thereof, Movant offers the following:

A. Creation of a Separate "Government Track" of Cases

The State of Louisiana, which likely has claims in this matter greater in scope than any other state, requests that this Honorable Court order the creation of a "government case track." There is no doubt that Louisiana, along with other sovereign entities, has a profound interest in

the fair and expeditious resolution of the claims of its citizens and businesses.   However, governmental claims differ significantly in their scope, substantive nature, priorities, and in the unique concerns involved therein.  Allowing governmental claims to continue on the same track as those of private plaintiffs and defendants would not only be entirely inconsistent with a wealth of precedent in similar matters, but would be inefficient, potentially prejudicial to the State (and therefore, by definition, to its citizens), and contrary to the interests of justice.   For the reasons discussed below, and in keeping with precedent as discussed herein, the State of Louisiana requests that those cases involving government claims be separated from the standard case track of traditional plaintiffs and defendants.   However, such separation does not preclude cooperation and/or the just and efficient administration of this MDL.

To begin with, sovereign entities such as the State of Louisiana have unique damage claims that differ not only in scope, but in their very nature, from those of private plaintiffs. Government claims include those for natural resource damages including primary ecological restoration and compensatory restoration, as well as for lost tax revenues, increased costs of services, property damages, response and removal costs, and penalties.  Based on these factors alone, government claims will likely involve an entirely different set of strategies, timelines, and evidentiary concerns than those of private plaintiffs.  Natural resource damages, for example, entail a complex process involving scientific assessments that will require extensive testimony from a range of scientific experts not utilized in private plaintiff cases.  This alone would create an expert discovery schedule that may differ significantly from that applicable to private parties. The same principle would apply to economic expert evidence regarding such issues as costs of services, lost tax revenue analysis, and economic impacts of lost natural resource services. These are but a few examples of the need for a separate government track.  The purpose of this

separate government track is to eliminate inconsistent scheduling priorities and potential prejudice to one or more parties which can result from the co-mingling of government and private claims.

Secondly, significant sovereignty concerns mandate a separate track for government claims.  In Louisiana, likely as in other states, the Attorney General is vested with constitutional responsibilities to supervise and control counsel working on behalf of the State.   State sovereignty may be severely compromised if there are not separate tracks, because the States would inevitably be required to defer to private parties' attorneys as liaison or lead counsel. One example of this issue has already taken place.  Within the past week, this Court entered a consent motion to modify Paragraph 8 of Pretrial Order No. 1 to allow for the service of subpoenas on governmental bodies and agencies to obtain documents or information regarding the collection and testing of environmental samples.  This consent motion, which directly implicated the interests of governmental bodies and agencies, was offered to the Court without any consultation with attorneys for the States and the federal government.

Another example is drawn from the proposed case management order submitted by the private plaintiffs which would to require the State to confer with liaison counsel, who do not represent and cannot speak for governmental interests, in advance of any filings.   This consultation requirement purports authorize the liaison counsel to negotiate the timing and nature of such filing with defense liaison.  Louisiana assures this Court that it fully intends to make all efforts to maintain an amiable working relationship with all counsel, but placing the State under the influence of private liaison counsel could impinge on the basic notion's of state sovereignty.

Closely intertwined with the sovereignty issue is the fact that states may be subject to important legal restrictions which are not applicable to private parties.   For example, in

Louisiana's case, any monetary assessment ultimately charged and paid to private liaison counsel may violate State law.  In *Meredith v. Ieyoub*, 700 So.2d 478, 482-84 (La.1997), the Louisiana Supreme Court held that, absent legislative authorization, contingency fee contracts between the Attorney General and private attorneys to represent the State in enforcing the state's environmental laws were illegal and violated state law.  In so ruling, the Louisiana Supreme Court noted that the fiscal affairs of the state are matters pertaining exclusively to the legislature, and that the payment of outside attorneys to prosecute legal claims on behalf of the state is a fiscal matter.  According to the Court in *Meredith*, the separation of powers doctrine prevents the Attorney General from paying outside counsel contingency fees from state funds, unless expressly granted the power in the constitution or by legislative enactment of such authority.  At present, no such authority exists in this context.  To the extent the Attorney General has authority to hire private counsel, it currently must be done on an hourly basis and subject to statutory requirements. The attorney general cannot, without violating the principles of *Meredith,* agree to nor allow the creation of a relationship between the private counsel and state claims which would allow the assessment against the State's recovery of attorney's fees on any basis.

Additionally, governmental entities are unique in that they are not easily categorized as plaintiffs or defendants in the general sense.  Governments are often subject to atypical claims, such as citizen suits.  It is entirely possible (as happened in Alaska after the *Exxon Valdez* matter) that some private party plaintiffs may seek to sue state or federal government entities.  Often, if one state or the federal government is sued, other governmental entities might desire to be heard. Louisiana, for its part, has already been sued in state court by the shrimping industry on issues related to Deepwater Horizon and the State's subsequent closure of fishing grounds.

Finally, litigation involving private plaintiffs will inevitably entail different priorities from litigation involving government entities.  The most obvious issue in this regard is the $20 billion Gulf Coast Claims Facility fund administered by Kenneth Feinberg.  Private party litigation will have to tackle questions regarding plaintiffs who filed their cases prior to the creation of the fund, as well as issues related to potential delays in bringing plaintiffs into suits due to requirements and/or deadlines related to the fund.  These issues are not relevant to the claims of the State, which would be prejudiced by the likely significant delay created thereby. Along the same lines, certain State claims by law must be processed consistent with the completion of antecedent regulatory requirements, and so cannot be litigated on the same schedule or basis as other claims. Further, none of the State's claims will implicate class action proceedings.

There is precedent for the creation of separate tracks in Multidistrict Litigation.  For example, Judge Fallon, in *Chinese Drywall* MDL-2047*,* has established separate groups for home builders and insurers.  More to the point, courts have established separate lead and liaison counsel for government parties. *In re: Compact Disk Minimum Advertised Price Antitrust Litigation*, No. MDL 1361, 2001 WL 64775 (D. Me. Jan. 26, 2001) (appointing six lead and liaison counsel for State Attorneys General suing *in parens patriae*, followed by appointments of separate liaison and lead counsel for private party plaintiffs).  For separate government and private tracks, it has also been held to be within the court's discretion to manage cases in this fashion. *See In re Republic National-Realty Equities Securities Litigation*, 382 F. Supp. 1403, 1405-06 (J.P.M.L. 1974) (holding that the degree of coordination between government action and private actions is in the discretion of the transferee judge). *See also  In re: Lehman Brothers Holdings, Inc., Securities & Employee Retirement In-Come Security Act (ERISA) Litigation*,

MDL No. 2017 598 F.Supp.2d 1362, 1364 (J.P.M.L. 2009)(citing 28 U.S.C. § 1407(a)) (holding that an MDL transferee court could "employ any number of pretrial techniques-such as establishing separate discovery and/or motion tracks-to efficiently manage (the) litigation").

In the present case, the organization of the government track would likely consist of a committee of the whole, including the attorneys general of each of the five Gulf Coast states (or his designee), and the United States.  As a practical matter, this group has already worked together on a wide array of issues, including negotiating the entry of an order in Transocean's Limitation of Liability action exempting governmental claims, working with BP and Ken Feinberg on attempting to fix the claims process, and securing BP's agreement not to destroy evidence.  Because of sovereignty issues, a committee of the whole makes the most sense.  In addition, the state attorneys general would coordinate with all other political agencies or subdivisions within their respective states.

### B.  Appointment of Government Liaison Counsel

In order to facilitate expedient communication and coordination between the parties and the Court, and overall efficiency of the litigation, the "Governmental Committee" should also have a liaison.    The duties of Government Liaison Counsel would be strictly administrative as set forth in the Manual for Complex Litigation (4th), Sec. 10.221:

> *Liaison Counsel.*  Charged with essentially administrative matters, such as communications between the court and other counsel (including receiving and distributing notices, orders, motions, and briefs on behalf of the group), convening meetings of counsel, advising parties of developments, and otherwise assisting in the coordination of activities and positions.  Such counsel may act for the group in managing document depositories and in resolving scheduling conflicts.  Liaison counsel will usually have offices in the same locality as the court.  The court may appoint (or the parties may select) a liaison for each side, [25] and if their functions are strictly limited to administrative matters, they need not be attorneys.

The State of Louisiana hereby requests that Allan Kanner of the law firm of Kanner & Whiteley, L.L.C. be appointed Government Committee Liaison.  The State believes Mr. Kanner is well-positioned to act as committee liaison, based on his current role as Special Counsel to the Louisiana Attorney General, and his expertise in multiple areas of complex litigation. Mr. Kanner can be trusted to work in close cooperation with other liaison counsel, both in the development of subsequent Case Management Orders as well as any future undertakings, in a manner that will make this litigation as cost-effective and efficient as possible.

## C. Conclusion

In conclusion, Louisiana requests that this Court create a separate case track for matters related to government claims, and appoint Allan Kanner, Esq. as Government Liaison Counsel. The goal of the government track will be to expedite cases by or against governmental entities in a fair and efficient manner; to coordinate with plaintiffs or defendants, where possible, depending on the issues; and to avoid duplicative discovery to the greatest extent.  The creation of a government track will provide more focus and economy for all parties in this Multidistrict Litigation.

Dated this 16th day of September, 2010.

Respectfully submitted,


James D. "Buddy" Caldwell
Louisiana Attorney General

James Trey Phillips
First Assistant Attorney General
Megan K. Terrell
Assistant Attorney General
Section Chief – Environmental

State of Louisiana
P.O. Box 94005
Baton Rouge, Louisiana  70804-9005
Tel: 225- 326-6708
Fax: 225- 326-6797


Kanner & Whiteley, L.L.C.


 /s/ Allan Kanner_____
 Allan Kanner
 a.kanner@kanner-law.com
 Elizabeth B. Petersen
 e.petersen@kanner-law.com
Rebecca J. Davis
 r.davis@kanner-law.com
701 Camp Street
New Orleans, Louisiana 70130
Tel: 504-524-5777
Fax: 504-524-5763


Henry Dart, Attorneys at Law P.C.


 /s/ Henry T. Dart_____
 Henry T. Dart, Esq.
 hdart@dartlaw.com
 Grady J. Flattmann, Esq.
 gflattmann@dartlaw.com
 510 N. Jefferson St.
 Covington, LA 70433
 Tel: 985-809-8093
 Fax: 985-809-8094


Usry, Weeks, & Matthews, APLC


 /s/ T. Allen Usry_____
 T. Allen Usry, Esq.
 ausry@uwmlaw.com
 1615 Poydras St., Ste. 12
 New Orleans, LA  70112
 Tel: 504-592-4600
 Fax: 504-592-4641


Shows, Cali, Berthelot & Walsh, LLP.

_/s/ E. Wade Shows_____
E. Wade Shows
ews@scbllp.com
628 St. Louis Street
Baton Rouge, Louisiana 70802
Tel: 225-346-1461
Fax: 225-346-1467

Special Counsel to the Attorney General


Marten Law PLLC


_/s/ Bradley M. Marten_____
Bradley M. Marten
bmarten@martenlaw.com
Linda R. Larson
llarson@martenlaw.com
Marten Law PLLC
1191 Second Avenue, Suite 2200
Seattle, Washington  98101
Tel: 206-292-2600
Fax: 206-292-2601

Special Counsel to the Attorney General
Pro Hac Vice to be Submitted




## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has on this 16th day of September,

2010 been served on all counsel of record in this proceeding by CM/ECF electronic filing.



_/s/ Allan Kanner_____
ALLAN KANNER, ESQ.