**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * <br> * <br> * <br> * | MDL No. 2179 <br><br> SECTION J |
| This document relates to 2:10-cv-1926 | * <br> * <br> * | Honorable CARL J. BARBIER <br><br> Magistrate Judge SHUSHAN |

## DECLARATION OF ANDREW B. BLOOMER

I, Andrew B. Bloomer, declare as follows:

1.      I am over twenty-one years of age and make this Declaration based on my own personal knowledge.

2.      I am a partner of the law firm of Kirkland & Ellis LLP, and one of the counsel for defendants BP America Production Company and BP Exploration & Production Inc.

3.      I am submitting this Declaration in support of the Memorandum in Opposition to Plaintiffs' Rule 59(e) Motion to Alter or Amend Judgment Denying Copeland's Motion for Temporary Restraining Order and Preliminary Injunction.

4.      Attached hereto as Exhibit A is a true and correct copy of the Gulf Coast Claims Facility Protocol for Emergency Advance Payments, August 23, 2010, published at http://www.gulfcoastclaimsfacility.com/proto_1.php (last visited on September 21, 2010).

5.      Attached hereto as Exhibit B is a true and correct copy of the Welcome to The Gulf Coast Claims Facility Website, published at http://www.gulfcoastclaimsfacility.com/index (last visited on September 21, 2010).

6.      Attached hereto as Exhibit C is a true and correct copy of Understanding the GCCF's Eligibility Criteria for Emergency Advance Payments, August 23, 2010, published at http://www.gulfcoastclaimsfacility.com/proto_2.php (last visited on September 21, 2010).

7.      Attached hereto as Exhibit D is a true and correct copy of the Explanation of Claim Payments, published at http://www.gulfcoastclaimsfacility.com/notices.php (last visited on September 21, 2010).

8.      Attached hereto as Exhibit E is a true and correct copy of the Required Information/Documentation for a Claim for Final Payment, published at http://www.gulfcoastclaimsfacility.com/proto_3.php (last visited on September 21, 2010).

I make this Declaration under penalties of perjury pursuant to 28 U.S.C. § 1746, and I state that the facts set forth herein are true.

_Andrew B. Bloomer_
Andrew B. Bloomer

Dated:  September 21, 2010

# Exhibit A

- En Español
- _____
- Bằng Tiếng Việt

# Gulf Coast Claims Facility
# Protocol for Emergency Advance Payments
# August 23, 2010

## I. PURPOSE

This Protocol sets forth the procedure for the submission and resolution by the Gulf Coast Claims Facility ("GCCF") of claims for Emergency Advance Payments by Individuals and Businesses for costs and damages incurred as a result of the oil discharges from the April 20, 2010 Deepwater Horizon incident ("the Spill").

### A. Role

The United States Coast Guard ("USCG") has designated BP Exploration & Production, Inc. ("BP"), as a Responsible Party under the Oil Pollution Act of 1990 ("OPA") for oil discharges from the Deepwater Horizon facility. Under OPA, Responsible Parties must establish a claims process to receive certain claims by eligible claimants. USCG, without in any way relieving other Responsible Parties of liability, directed BP to maintain a single claims facility for all Responsible Parties to avoid confusion among potential claimants.

The GCCF is intended to replace BP's claims facility for individuals and businesses. The GCCF (and the protocols under which it operates) are structured to be compliant with OPA. A final claim may be presented to the GCCF at any time that the facility is receiving claims. Whether or not a claim has been presented shall be governed by OPA and applicable law. All open Individual and Business claims that have been filed with the BP Claims Process will be transferred to the GCCF. BP has also authorized the GCCF to process certain non-OPA claims involving personal injury. Submission of such claims shall be wholly voluntary and participation in the GCCF shall not affect any right that the claimant would have had absent such participation unless final resolution and settlement of the claim is achieved.

### B. Approach

The following non-exclusive principles apply to the operation of the GCCF:

- The GCCF will evaluate all claims in a prompt and fair manner guided by applicable law.

- The establishment of the GCCF does not diminish any right of any individual or business that existed prior to the creation of the GCCF; claimants have all of the same rights with respect to their various claims that they had prior to the creation of the GCCF and shall not be forced to relinquish any rights for the opportunity to seek compensation through the GCCF.
- The GCCF claims process is structured to comply with OPA and apply the standards of OPA.

The GCCF is administered by Kenneth R. Feinberg ("the Claims Administrator"), a neutral fund administrator responsible for all decisions relating to the administration and processing of claims by the GCCF. This Protocol addresses only claims for Emergency Advance Payments; a subsequent Protocol will deal with all Final Claims. Under the Final Protocol, interim claims will be considered where appropriate.

## II. ELIGIBILITY

Claimants who are experiencing hardship resulting from damages set forth below incurred due to the Spill may apply for an Emergency Advance Payment.

A. <u>Removal and Clean Up Costs</u>

1. Who may make a claim?

Any Individual or Business that incurred costs, as a result of the Spill for the removal of oil or to prevent, minimize, or mitigate oil pollution.

2. Required Proof

◦ The costs are for removal of oil discharged due to the Spill or that are to prevent, minimize or mitigate oil pollution from the Spill;

◦ The costs are reasonable and necessary; and The actions taken to remove, prevent, minimize, or mitigate oil pollution were approved by the Federal On-Scene Coordinator or are otherwise proven to be consistent with the National Contingency Plan.

3. What information should the claimant submit?

◦ Information or documentation (e.g., bills) showing the costs incurred after the Spill for removal of oil discharged as a result of the Spill or incurred to prevent, minimize, or mitigate oil pollution from the Spill.

◦ Information or documentation explaining how the actions taken were necessary to prevent, minimize, or mitigate the effects of the Spill.

◦ Information or documentation showing that the actions taken were approved by the Federal On-Scene Coordinator or were consistent with the National Contingency Plan.

◦ Information or documentation explaining why the costs were reasonable.

B. <u>Real or Personal Property</u>

1. Who may make a claim?

Any Individual or Business that owns or leases real or personal property physically damaged or destroyed as a result of the Spill.

In order to avoid duplication of claims, an owner or lessee of the property must provide notice to all others with an ownership or lease interest in the property of the intent to file a claim. If duplicate claims are received, the GCCF will determine the appropriate claimant.

2. What information should the claimant submit?

  ◦ Information or documentation showing an ownership or leasehold interest in the property.

  ◦ Information or documentation showing the property was physically damaged or destroyed.

  ◦ Information or documentation showing the damages claimed were incurred as the result of the physical damage to or destruction of the property.

  ◦ Information or documentation showing the cost of repair or replacement of the property, or economic losses resulting from destruction of the property.

  ◦ Information or documentation showing the value of the property both before and after damage.


C. Lost Profits and Lost Earning Capacity

1. Who may make a claim?

An Individual or Business that incurred a loss in profits or earning capacity due to the injury, destruction, or loss of real property, personal property or natural resources as a result of the Spill. The individual or business need not be the owner of the injured property or resources to recover for lost profits or income.

2. What information should the claimant submit?

  ◦ Identification of injury, destruction, or loss to a specific property or natural resource.

  ◦ Information concerning Claimant's lost earnings or profits that were caused by the injury, destruction, or loss of specific property or natural resource as a result of the Spill (such as lost income by a fisherman whose fishing grounds have been closed or a hotel or rental property that has had decreased profits because beaches, swimming, or fishing areas have been affected by the oil from the Spill).

  ◦ Reduction of earnings or profits, or increase in expenses resulting from such damage.

  ◦ Amount of profits and earnings or expenses in comparable time periods.

  ◦ Income received from alternative employment or business during the period when the loss was suffered, and expenses incurred in generating the alternative income.

  ◦ Savings to overhead and other normal expenses not incurred as a result of the Spill.


D. Subsistence Use of Natural Resources

1. Who may make a claim?

Any Individual who uses the natural resources that have been injured, destroyed or lost as a result of the Spill to obtain food, shelter, clothing, medicine, or other subsistence uses.

2. What information should be submitted?

- Identification of the specific natural resources that have been injured, destroyed or lost as a result of the Spill for which compensation for loss of subsistence use is being claimed. The Claimant need not own the affected natural resource.

- Description of the actual subsistence use made of each specific natural resource.

- Description of how and to what extent the subsistence use was affected by the injury to or loss of each specific natural resource as a result of the Spill.

- Description of expenditures made to replace or substitute for the subsistence use.

E. Physical Injury /Death

1. Who may make a claim?

A claim may be made by an injured individual or the representative of a deceased individual for a physical injury or death proximately caused by the Spill or the explosion and fire associated with the Deepwater Horizon incident, or by the clean-up of the Spill.

Submitting a physical injury or death claim to the GCCF is entirely voluntary. However, unlike claims under the Oil Pollution Act, claims for physical injury and death cannot be submitted to the National Pollution Funds Center.

2. What information should be submitted?

- Medical records or death certificate demonstrating physical injury or death.

- Medical records reflecting diagnosis by a medical practitioner.

- Information concerning the cause of physical injury.

- Information concerning the circumstances of the physical injury and the location where the physical injury occurred.

- Information concerning any total or partial disability of the Claimant.

- Records showing expenditures for medical care not otherwise compensated.

- Proof of lost income, if the Claimant seeks compensation for such lost income.

F. Causation

The GCCF will only pay for harm or damage that is proximately caused by the Spill. The GCCF's causation determinations of OPA claims will be guided by OPA and federal law interpreting OPA and the proximate cause doctrine. Determinations of non-OPA claims will be guided by applicable law. The GCCF will take into account, among other things, geographic proximity, nature of industry, and dependence upon injured natural resources.

## III. FILING FOR AN EMERGENCY ADVANCE PAYMENT

A. Equal Access and Fair Adjudications in the Claims Process

All potential claimants will be treated with respect, dignity, and fairness, without regard to race, color, sexual orientation, national origin, religion, gender, or disability. The GCCF shall strive to ensure that all claimants can equally access the GCCF process, and that claims will be adjudicated fairly. Individuals with disabilities will be able to effectively communicate their claims and problems to the GCCF. Individuals with language barriers will have meaningful access to the process and to the GCCF. Individuals with low literacy will have documents and forms explained to them plainly and in a simple manner they understand.

B. Claim Form

1. The Claimant will indicate on the Claim Form if the Claimant is applying for an Emergency Advance Payment.[1] Claimants will complete a Claim Form for an Individual or Business.

2. Claimants shall submit the documentation requested on the Claim Form for an Emergency Advance Payment or other similar information as is sufficient to substantiate the claim and for the GCCF to review and process the Claim.

C. Process for Filing a Claim for an Emergency Advance Payment

A Claim Form may be obtained and submitted in any one of the following ways:

1. Via the Internet - Claimants may submit a claim online by visiting the GCCF website: www.gulfcoastclaimsfacility.com. Claimants will be instructed to follow simple steps for completing a claim. Once completed, the claim will be automatically submitted to the GCCF Database, a printable confirmation notification will be generated and displayed immediately confirming submission and providing the Claim Number and a confirmation email will be sent to those Claimants who have provided email addresses. The Claim Number will be the claim identifier throughout the process. The Claim Form and Instructions will be available in English, Spanish, Vietnamese and Khmer.

2. By Visiting a GCCF Claims Site Office - Claimants may visit one of the 36 Claims Site Offices established to assist Claimants with the claims submission process to (1) seek information about filing a claim or to (2) submit a claim in person. Claimants may either walk in to one of the Claims Site Offices or may make an appointment by calling the toll-free telephone line. The locations of the Claims Site Offices are posted on the GCCF website, www.gulfcoastclaimsfacility.com. If a visitor requires an interpreter and an interpreter is not available on site, the Claims Evaluator will make arrangements to provide these services either via conference call or a scheduled return trip to the Claims Site Office. A Claims Evaluator will assist the Claimant in completing the Claim Form. The Claims Evaluator will print a copy of the Claim Form, the claimant will sign the Claim Form and the claim will be automatically submitted to the GCCF Database. A confirmation of the claim submission and Claim

Identification Number will be provided by the Claims Evaluator. The Claim Form must be signed by the Claimant.

3. Via U.S. Postal Service - Claimants may call the toll free, dedicated telephone line to request that a Claim Form be mailed via U.S. Postal Service. The Claims Operator will ask the caller to provide basic information which the Claims Operator will enter into the on-line system. The system will automatically generate a unique, pre-populated and bar-coded Claim Form which will include the identifying information provided by the caller. The Claim Form will contain a Claim Identification Number which will be the Claim identifier through the course of the process. The coded Claim Form will be mailed via U.S. Postal Service to the Claimant. The Claim Form must be signed by the Claimant. The Claimant may return the completed form via:

   ◦ U.S. Postal Service:
     Gulf Coast Claims Facility
     P. O. Box 9658
     Dublin, OH 43017-4958

   ◦ Overnight, Certified or Registered Mail:
     Gulf Coast Claims Facility
     5151 Blazer Parkway, Suite A
     Dublin, OH 43017-4958

   ◦ Fax:
     1-866-682-1772

   ◦ Email:
     info@gccf-claims.com.

   ◦ The toll-free telephone lines are as follows:

     Toll Free Number: 1-800-916-4893
     Multilingual Telephone Line: 1-800-916-4893
     TTY Telephone Line: 1-866-682-1758

All submitted Claim Forms, regardless of the method of submission, will be automatically forwarded to the Central Processing Database and integrated into a comprehensive GCCF Database.

D. Appointment with a Claims Evaluator

The Claimant may request an appointment with a Claims Evaluator at the nearest Claims Site Office to answer or clarify issues regarding a claim for an Emergency Advance Payment. The Claims Evaluator will review the claim for completeness and eligibility and may contact the Claimant to request additional supporting documentation if necessary or if the Claims Evaluator has any questions about the information submitted with the Claim Form. Examples of information and documentation that support a claim are attached as Exhibit A.

E. Evaluation of Application for Emergency Advance Payment

1. Evaluation of an Emergency Advance Payment application will apply a less rigorous standard for required corroboration than evaluation of a claim for Final Payment. Documentation sufficient to establish the claim will be described in the Claim Form.

2. Each Emergency Advance Payment application will be evaluated preliminarily within 24 hours of receipt of the completed form and supporting documentation to determine whether an Emergency Advance Payment is appropriate based on the information submitted by the Claimant. Complex business claims submitted for an Emergency Advance Payment will be evaluated preliminarily within 7 days of receipt of the completed form and supporting documentation to determine whether an Emergency Advance Payment is appropriate based on the information submitted by the Claimant.

3. Upon a determination that the Claimant is eligible for an Emergency Advance Payment, a payment will be authorized within 24 hours.

F. Period for Application for Emergency Advance Payment

1. Emergency Advance Payment applications may be submitted on a monthly basis. Emergency Advance Payment applications for Lost Profits and Lost Earning Capacity, Loss of Subsistence Use of Natural Resources, or loss of income due to physical injury or death may be submitted either on a monthly basis or for six months of losses, at the option of the Claimant. Claimants seeking an Emergency Advance Payment on a six month basis must establish that they will incur loss for the six month period. To the extent possible, six month payments will be based on the seasonally adjusted lost income or lost profits, as applicable.

2. Emergency Advance Payment applications may be submitted during the period August 23 - November 23, 2010. After that date, applications for Emergency Advance Payments will no longer be accepted. Applications for Final Claims, and in appropriate circumstances applications for interim claims, will continue to be accepted pursuant to the Protocol for Final Claims.

G. Request or Receipt of Emergency Advance Payment Does Not Waive Any Rights

Claimants requesting an Emergency Advance Payment or receiving an Emergency Advance Payment will not be asked or required to sign a release or waive any rights to assert additional claims, to file an individual legal action, or to participate in other legal actions associated with the Spill.

H. Credit Against Final Payment

Any Emergency Advance Payment made to a Claimant will be deducted from any Final Payment of a Final Claim.

**IV. REPORTING**

The GCCF shall provide reports of non-personally identifiable information to state, local, and federal government officials and to BP to permit an evaluation of the claims process. The GCCF shall submit to interested parties, including BP, periodic reports regarding claims made and claims determinations.

**V. PRIVACY**

Information submitted by a Claimant to the GCCF will be used and disclosed for purposes of: (i) processing the Claimant's claim for compensation and any award resulting from that claim; (ii) legitimate business purposes associated with administering the GCCF, including the prevention of fraud and the determination of collateral source payments; and/or (iii) as otherwise required by law, regulation or judicial process.

## VI. QUALITY CONTROL AND PROCEDURES TO PREVENT AND DETECT FRAUD

A. Review of claims

For the purpose of detecting and preventing the payment of fraudulent claims and for the purpose of accurate and appropriate payments to Claimants, the GCCF shall implement procedures to:

1. Verify and authenticate claims.

2. Analyze claim submissions to detect inconsistencies, irregularities, and duplication.

3. Ensure the quality control of claims review procedures.

B. Quality Control

1. The GCCF shall institute periodic quality control audits designed to evaluate the accuracy of submissions and the accuracy of payments.

2. The GCCF shall engage an independent outside accounting firm to perform an independent test of claims to ensure that the claims have been accurately processed.

C. False or Fraudulent Claims

Each Claimant will sign a form at the time of application, stating that he or she certifies that the information provided in the Claim Form is true and accurate to the best of his or her knowledge, and that he or she understands that false statements or claims made in connection with that application may result in fines, imprisonment, and/or any other remedy available by law, and that suspicious claims will be forwarded to federal, state, and local law enforcement agencies for possible investigation and prosecution. The GCCF shall refer all evidence of false or fraudulent claims to appropriate law enforcement authorities.

**Exhibit A - Required Information/Documentation for a Claim for Final Payment**

---

[1] A claim for an Emergency Advance Payment is an interim claim under OPA. To the extent that the claimant incurs additional compensable damages that are not reflected in the Emergency Advance Payment, receipt of an Emergency Advance Payment shall not preclude a claimant from seeking additional damages not reflected in the Emergency Advance Payment.

- Privacy Policy |
- All Rights Reserved

- Home

Case 2:10-md-02179-CJB-DPC   Document 310-1   Filed 09/21/10   Page 12 of 28

- Important Notices
  and Information
- Frequently Asked Questions
- Claimant Bill of Rights
- Town Hall Meetings / Events
- Press and News Releases
- Protocol and Eligibility Criteria
- Contact Information for Claims Not Covered by the GCCF
- Claim Filing Instructions
- File a Claim Form Online
- File a Paper Claim Form
- File a Claim Form in Person
- Supplemental Claim Form
- Claims Site Offices
- Check Claim Status
- GCCF Program Statistics
- To Report Fraud
- Contact Us

# Exhibit B

- En Español
- _____
- Bằng Tiếng Việt

# Welcome to The Gulf Coast Claims Facility Website

The Gulf Coast Claims Facility ("GCCF") is the official way for Individuals and Businesses to file claims for costs and damages incurred as a result of the oil discharges due to the Deepwater Horizon Incident on April 20, 2010 ("the Spill"). The GCCF is administered by Kenneth R. Feinberg ("the Claims Administrator"), a neutral fund administrator responsible for all decisions relating to the administration and processing of claims by the GCCF.

All claims filed before August 23, 2010 have been transferred to the GCCF for ongoing review and determination.

This website provides information about how to file a claim, how to check the current status of a claim, and answers to questions about the process. If you are interested in making a claim you should review this website, call our toll-free helpline at 1-800-916-4893 (for TTY assistance call 1-866-682-1758), or email us at info@gccf-claims.com.

---

### IMPORTANT NOTICES

- The GCCF continues to strive to review all claims submitted by individuals and businesses as quickly as possible. The documentation submitted by individuals and business claimants is, in some cases, voluminous and complex and requires careful scrutiny and attention to assure that each claimant will be afforded the benefit of the most generous payment determination as supported by the documentation. Thus, the announced 48 hour claim determination rule for individual claims, and the 7 day claim determination rule for business claims will be extended as necessary and appropriate.

- The GCCF has reviewed payments for lost income and lost profits made to date and has determined that adjustments to payments made to certain claimants are appropriate. Supplemental checks for these certain claimants will be mailed within the next few weeks. The adjustment is currently in progress. The Toll Free Help Line will not have specific information regarding supplemental checks until after September 15, 2010.

- The GCCF has determined not to deduct earnings from the Vessels of Opportunity Program from payments made to claimants.

---

## I want more information about:

Whether I Am Eligible to Participate

Filing a Claim Form Online,
in Person, or by Mail/Fax

Visiting a Claims Site Office

My Claim Status

- Privacy Policy |
- All Rights Reserved

- Home
- Important Notices
  and Information
- Frequently Asked Questions
- Claimant Bill of Rights
- Town Hall Meetings / Events
- Press and News Releases
- Protocol and Eligibility Criteria
- Contact Information for Claims Not Covered by the GCCF
- Claim Filing Instructions
- File a Claim Form Online
- File a Paper Claim Form
- File a Claim Form in Person
- Supplemental Claim Form
- Claims Site Offices
- Check Claim Status
- GCCF Program Statistics
- To Report Fraud
- Contact Us

# Exhibit C

- En Español
- _____
- Bằng Tiếng Việt

# Understanding the GCCF's Eligibility Criteria for Emergency Advance Payments August 23, 2010

## I. In General

Claims that are eligible for payment include those for: 1) Removal and Clean-Up Costs; (2) Physical Damages to Real or Personal Property; (3) Lost Profits or Impairment of Earning Capacity; (4) Loss of Subsistence Use of Natural Resources; and (5) Physical Injury or Death.

The GCCF will first determine whether the claimant is eligible for compensation - has the claimant provided sufficient personal or business details and description of the damage to support eligibility for compensation for the type of claim? If additional information is needed to determine eligibility, the GCCF will immediately inform the claimant of what else to submit. A claim for an Emergency Advance Payment requires less documentation than a claim for Final Payment.

## II. Claims for Lost Profits and Impairment of Earning Capacity

The GCCF anticipates that most submitted claims will be for Lost Profits or Impairment of Earning Capacity.

The GCCF will apply industry-specific criteria in determining the appropriate amount of emergency compensation, including factors like seasonality. Every claim will receive individual consideration and be evaluated on case-specific facts.

Claimants with losses that are closely tied to injury to real or personal property, or natural resources, resulting from the Spill-such as fishermen whose fishing grounds are closed and hotels located on oiled beaches-will receive an emergency payment for the full amount of the claimant's losses for either one month or up to six months where the claimant can establish that six months of loss will be incurred. Claimants have the choice to file for a one-month (or multiple up to six months) payment.

Economic losses which are more remote, or occurred at a location more distant from the Spill, are less likely to be fully compensated. In determining eligibility, and how much compensation is appropriate for such eligible claims, the GCCF will take into account geographic proximity to the Spill, the nature of the claimant's job or business, and the extent to which the claimant's job or business is dependent upon injured property or natural resources. Each of these factors will be weighed in the initial assessment of a claim.

Geographic proximity will primarily be based on whether the claimant's loss occurred in a community or municipality adjacent to a beach, shoreline, marsh, bay or tributary of the Gulf where oil or oil residues came ashore or appeared in the waters. Determinations regarding proximity focus on where the claimant's work or business activity takes place (or normally takes place) - not an individual's or business's mailing address.

The nature of the claimant's business will be evaluated based on the information provided by the claimant, such as whether the claimant is in the seafood processing industry, a supplier of commercial

fishermen, a supplier of recreational users of the waters of the Gulf, or a tourist-oriented business such as a motel.

Based on the weighing of these factors, the GCCF will make an initial assessment of whether the claimant is eligible to receive compensation, and what amount of a claim for Lost Profits or Impairment of Earning Capacity is compensable. Claimants are encouraged to submit documentation that helps the GCCF evaluate these factors. The GCCF will review every claim, and a claimant that demonstrates special circumstances at variance with the weighing system will receive fair and careful consideration.

- Privacy Policy |
- All Rights Reserved

- Home
- Important Notices
  and Information
- Frequently Asked Questions
- Claimant Bill of Rights
- Town Hall Meetings / Events
- Press and News Releases
- Protocol and Eligibility Criteria
- Contact Information for Claims Not Covered by the GCCF
- Claim Filing Instructions
- File a Claim Form Online
- File a Paper Claim Form
- File a Claim Form in Person
- Supplemental Claim Form
- Claims Site Offices
- Check Claim Status
- GCCF Program Statistics
- To Report Fraud
- Contact Us

# Exhibit D

- En Español
- _____
- Bằng Tiếng Việt

# Explanation of Claim Payments

1. ***Explanation Applicable to All Payments.*** The GCCF calculates the amount of an Emergency Advance Payment according to its established rules and guidelines that apply uniformly to all claimants. The amount is an estimate of the claimant's projected losses. If you disagree with the amount of your Emergency Advance Payment, you can submit a claim for Final Payment and will have the opportunity to present all your arguments and any materials that you feel support your position. We will consider all of these materials when determining your Final Payment.

2. ***Lost Income Claims from Individuals.*** We evaluate your claim for lost earnings as a wage-earner using these steps:

   - We look at the documents you submitted to determine your wage income for 2008, 2009, or from January through April 2010, before the Spill. We look at tax returns, W-2s, a 1099, paycheck stubs, payroll records from an employer, a letter from an employer, or a letter from a clergy person or public official giving information on pay levels. If you do not have and did not submit documents showing your wage income for 2008 or 2009, but you did submit information for January through April 2010, we use that amount to project what the annual total would have been for 2010 if you had continued to earn at those same income levels.
   - Next, we use your **highest** income from 2008, 2009 or 2010 (in a job like your 2010 job) to predict what wages you would have earned for 2010 if the Spill had not occurred.
   - To determine the portion of your annual income earned in each month, we apply seasonality percentages based upon information we have obtained regarding your occupation. This allocates higher amounts to the summer months, which are the peak seasons for most businesses affected by the Spill.
   - If you asked for one month Emergency Advance Payment, we pay you the amount you were projected to earn in May 2010.
   - If you asked for a six-month Emergency Advance Payment, we pay you for the months from May through October 2010. We deduct from your Emergency Advance Payment any documented wages you earned after the Spill from May 2010 to the present.
   - We do not deduct any payments you received from BP, or charities, or any other source.

3. ***Lost Business Profits Claims from Businesses.*** If you submit a claim for lost sales or profits from running a business we evaluate your claim as a business lost profits claim. If you are the sole owner of a business and file your taxes on a Schedule C that shows deduction of any expenses, we evaluate your claim as a business profits claim, rather than an individual wage loss claim. We use these steps to determine your payment.

   - We look at the sales history of your business. If we have income tax forms and sales tax records for both 2009 and 2008 we look at both and determine the total sales revenue from sales and services for each of those years, before any deductions for expenses.
   - If we have only 2009 information, we assume that the business would have made the same gross revenues in 2010, plus a 3.7% increase for 2010 to account for inflation and cost of living increases.

- If we have only 2008 information, we assume that the business would have made the same gross revenues in 2010.
- If we have both 2008 and 2009 gross sales numbers, then:

1. For fishing businesses, we average 2008 and 2009 revenues and assume the same gross revenues for 2010. We average 2008 and 2009 because we understand that 2008 was a better year for fishing businesses in the Gulf. But if 2009 revenues were higher than 2008 for any claimant, we use only 2009.
2. For all other businesses, if 2009 was higher than 2008, we use the higher 2009 total and assume the business would have generated the same revenues in 2010. We then add a 3.7% increase for 2010 to account for inflation and cost of living increases. If the percentage increase from 2008 to 2009 was higher than 3.7% we use the higher percentage up to a maximum increase of 20%.

- Next, we look at the actual gross sales after the Spill (from May through July 2010) to project the likely sales for the rest of 2010.
- To determine the sales for each month, we take into account the seasonality of revenues of businesses in the Gulf. For most businesses, we use 2009 monthly sales tax records for certain coastal areas that reflect the largest concentration of revenues from May through October to determine seasonality. For fishing businesses, we use monthly percentages based upon state landing totals by month from 2004 to 2008. For charter fishing businesses, we use seasonality data based on the experience of actual charter fishing companies in past years. Next, we apply a loss of income rate or profit margin percentage to the lost sales to determine lost profits. This profit margin percentage varies depending upon industry data for different types of businesses.
- These calculations give us lost profits by month in 2010. For claimants who requested a six-month Emergency Advance Payment, the payment is based on lost profits for May-October 2010. For those who requested a one-month Emergency Advance Payment, the payment is based on lost profits for May 2010.
- We do not deduct any amounts for payments you received from BP, or charities, or any other source.
- Certain claims from larger businesses, start-up businesses, or more complicated claims are reviewed by an accountant to determine lost profits. The accountants use a similar methodology, but also perform a detailed analysis of the specific business, its condition and its trends, to determine the lost profits resulting from the Spill. Start-up businesses that were new in 2009 or 2010 do not have an income history to serve as the basis for projecting 2010 sales. The accountants review the business plans for the business, any available sales history, the performance of similar businesses in similar areas, and any other available information to assess the revenues the company was likely to have received in 2010 had the spill not occurred.

- Privacy Policy |
- All Rights Reserved

- Home
- Important Notices and Information
- Frequently Asked Questions
- Claimant Bill of Rights
- Town Hall Meetings / Events
- Press and News Releases

- Protocol and Eligibility Criteria
- Contact Information for Claims Not Covered by the GCCF
- Claim Filing Instructions
- File a Claim Form Online
- File a Paper Claim Form
- File a Claim Form in Person
- Supplemental Claim Form
- Claims Site Offices
- Check Claim Status
- GCCF Program Statistics
- To Report Fraud
- Contact Us

# Exhibit E

- En Español
- _____
- Bằng Tiếng Việt

# Required Information/Documentation for a Claim for Final Payment

The following information and documentation for each of the specified damages claimed supports a claim for Final Payment. The documentation set forth below is intended to illustrate examples of support for the claim. The claim will be evaluated based on the information and documentation received. An application for Emergency Advance Payment will not require the same corroboration as a claim for Final Payment.

A. Removal Costs

  ◦ Demonstration of approval of removal actions by the Unified Command
  ◦ Detailed description of removal actions
  ◦ Dates on which work was performed
  ◦ Analysis of spill substance
  ◦ Map of area

  ◦ Pictures of area

  ◦ Receipts, invoices, or similar records with description of work

  ◦ How rates were determined and any comparison of rates

  ◦ Daily records of personnel costs including details on labor rates, hours, travel, and transportation

  ◦ Daily records of equipment costs including description and use

  ◦ Signed disposal manifests and proof of payment for disposal

  ◦ Payroll verification of hourly rate at the time of removal

  ◦ Verification of standard equipment rates for equipment used

  ◦ Documentation of insurance or other collateral source payments from government entities

  ◦ Proof equivalent in probative nature to the above

B. Property Damage

  ◦ Copy of title, deed, lease, or license to property in Claimant's name

  ◦ Information demonstrating property was injured or destroyed

- The value of property both before and after injury

- The cost of repair or replacement of the property including copies of bills paid for repair of damage or estimates showing activities and costs to repair the damage

- Information demonstrating the property was not usable because of the Spill

- Whether or not substitute property was available, and, if used, the costs thereof

- Demonstration that economic loss claimed was incurred as the result of the destruction of the property

- Pictures or videotape of property and/or damage

- Maps or legal documents showing the location of the property within the Spill area

- If property was sold, professional property appraisals for the value of the property prior to and after the Spill, actual selling price of the property, and evidence connecting the depressed selling price to the Spill rather than to other economic or real property factors

- Any expenses or money lost while the property was unavailable because of Spill damage

- Lease or rental agreement of any substitute property used

- Documentation of insurance or other collateral source payments from government entities

- Proof equivalent in probative nature to the above

C. Loss of Profits and Earning Capacity

1. Employee Claims

- Property or natural resources that were damaged, destroyed or lost resulting in loss of income

- Affidavit from employer on the impact on Claimant's work or income due to the Spill

- Copies of pay stubs, receipts, etc.

- Personnel records from employer before Spill showing employment

- Description of efforts to reduce loss, including job search

- Copies of any job-hunting expenses (e.g., travel costs)

- Signed copies of income tax returns and schedules for 2008-2009.

- Details of employment expenses not paid during period being claimed (e.g., commuting costs)

- Copies of pay stubs, etc., from alternative employment during period being claimed

- When records are unavailable, a notarized statement from a Public Official or a member of the clergy may be submitted attesting to the occupation and employment background of the claimant.

- Documentation of insurance or other collateral source payments from government entities

- Proof equivalent in probative nature to the above

2. Business Claims

- Property or natural resources that were injured, damaged, destroyed, lost or adversely impacted resulting in loss of profits

- Description and documentation of business losses due to Spill

- Copies of letters of business cancellations caused by the Spill

- Maps or descriptions of the area showing the business location

- Financial statements for 2007-2010

- Signed copies of income tax returns and schedules for 2007-2009

- Details on efforts to mitigate losses or why no efforts were taken

- For hotels, daily and monthly occupancy information for 2007-2010

- Documentation of insurance or other collateral source payments from government entities

- Proof equivalent in probative nature to the above

D. Subsistence Use

- Identification of the specific natural resource for which compensation for loss of subsistence use is being claimed

- Description of the actual subsistence use of each specific natural resource identified

- Description of how and to what extent the subsistence use of the natural resource was affected by the injury to, destruction of, or loss of, the specific natural resource

- Description of effort made to mitigate the subsistence use loss

- Description of each alternative source or means of subsistence available during the period of time for which loss of subsistence is claimed

- Description of any compensation available for the subsistence loss

- Photographs, videos, maps

- Published accounts, witness statements and other written records documenting the claimed use of natural resources for subsistence purposes before, during, and after the Spill

- Store and barter receipts showing the replacement costs claimed

- Witness statements and documents showing the alternative sources of subsistence , and Claimant's efforts to reduce the damages resulting from the loss of subsistence use, including receipts from job-hunting expenses (e.g., travel costs)

- Records showing the expenses avoided during the time Claimant was not able to carry out subsistence use of the affected natural resource

- Documentation of any compensation received for the subsistence loss

- Proof equivalent in probative nature to the above

E. Physical Injury/Death

- Description of injury

- Description of cause of injury/death

- Identification of location where injury/death occurred

- Proof of injury or death including death certificate, medical records, medical bills, pharmacy records

- In cases of physical injury, proof of degree of disability

- Documentation of insurance or other collateral source payments from government entities

- Proof equivalent in probative nature to the above

- Privacy Policy |
- All Rights Reserved

- Home
- Important Notices
  and Information
- Frequently Asked Questions
- Claimant Bill of Rights
- Town Hall Meetings / Events
- Press and News Releases
- Protocol and Eligibility Criteria
- Contact Information for Claims Not Covered by the GCCF

- Claim Filing Instructions
- File a Claim Form Online
- File a Paper Claim Form
- File a Claim Form in Person
- Supplemental Claim Form
- Claims Site Offices
- Check Claim Status
- GCCF Program Statistics
- To Report Fraud
- Contact Us