UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the Oil Rig | * | MDL NO. 2179 |
|     "DEEPWATER HORIZON" in the | * | |
|     GULF OF MEXICO, on April 20, 2010 | * | |
| | * | SECTION: "J" |
| | * | |
| | * | |
| | * | JUDGE BARBIER |
| | * | MAG. JUDGE SHUSHAN |
| THIS DOCUMENT RELATES TO: | * | |
| Civil Case Nos. 10-1497 and 10-1630 | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**PLAINTIFFS GULF RESTORATION NETWORK, INC.'S AND SIERRA CLUB, INC.'S
RESPONSE TO FEDERAL DEFENDANTS' MOTION TO SEVER [D.E. 174-1]**

      The federal defendants seek to sever two injunctive and regulatory cases that assert claims against the government and government officials from MDL-2179. [D.E. 174-1]. The subjects of those two cases are: 1) the arbitrary and capricious decision of the then Minerals Management Service ("MMS") to waive the regulatory requirement that oil exploration plans must include blowout scenarios and worst case oil spill scenarios and a related National Environmental Policy Act ("NEPA") claim, *Gulf Restoration Network et al., v. Salazar*, Case No. 10-1497; and 2) that BP and the then MMS violated the Oil Pollution Act when BP submitted and the then MMS approved BP's regional oil spill response plan ("OSRP") which

1

grossly exaggerates that company's oil spill response and recovery capabilities in the event of a major blow-out during the drilling of a deep water exploration well.[1]

The federal defendants' motion rests upon three bases: 1) severance is required because the cases will be decided based on a record made by the agency and will be governed by the highly deferential standard of review afforded administrative actions taken by federal agencies whose actions are afforded a presumption of regularity; 2) severance is required because the cases do not share common characteristics with the other cases in MDL-2179; and 3) severance is required because there will be no need for discovery and because any ruling on the propriety of the government's conduct can have little if any bearing on cases based upon the conduct of private entities.  Because none of these arguments justify severance from MDL-2179, the federal defendants' motion should be denied and the cases managed as proposed by plaintiffs' liaison counsel.

## ARGUMENT

**I.    Under The Circumstances Of This Case The Then MMS' Decision-Making Is Not Entitled To Either Deference Or A Presumption Of Regularity Because The Agency Has Publicly Acknowledged Its Improper Behavior And Its Ethical, Regulatory, And Environmental Failures In Overseeing The Gulf Of Mexico Oil And Gas Industry.**

Contrary to the federal defendants' characterization, judicial review of administrative action is not a rubber stamp, it requires "a searching and careful" inquiry into the facts of each

---

[1] In its Regional Oil Spill Response Plan BP estimated that the "highest capacity well uncontrolled blowout volume associated with [the] exploration well" would be 250,000 barrels of oil per day and represented that BP had the capability of recovering, under adverse weather conditions, 491,721 barrels of oil per day (197% of the spilled oil).  At the time these representations were made both BP and the then MMS knew that containment and recovery of oil at sea (where deep water drilling is located) is at best minimal and at worst negligible, *i.e.* normal recovery rate is at best 10 to 15 % and often substantially less.  *See* D.E. 432, Exhibit B, p. 2 (emphasis added) filed in Case No. 10-1156 (Amended Complaint, *Gulf Restoration Network, et al. v. Dep't of the Interior*, Case No. 10-1630).

2

case.  *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823-24, 28 L.Ed.2d 136 (1971).  That is because, only by "carefully reviewing the record and satisfying [itself] that the agency has made a reasoned decision" can the court "ensure that agency decisions are founded on a reasoned evaluation of the relevant factors."  *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 378, 109 S.Ct. 1851, 1861 (1989) (internal quotation omitted).  Nor are courts obligated to stand aside and affirm administrative decisions that they deem inconsistent with a statutory mandate or that frustrate congressional policy underlying a statute both of which situations plaintiffs assert exist here.  *National Labor Relations Board v. Brown*, 380 U.S. 278, 291-92, 88 S.Ct. 980, 987-89 (1965).[2]

However, Gulf Restoration Network and Sierra Club assert that under the circumstances of this particular case, the then MMS' decision-making is not entitled to either deference or a presumption of regularity because that agency has publicly acknowledged that it failed to fulfill its environmental stewardship role in overseeing the oil and gas industry including acknowledgement of specific failures and improper behavior related to the decision-making challenged in these two cases.  *New York v. Salazar*, 701 F.Supp.2d 224 (N.D.N.Y. 2010) (although judicial review of agency decision-making is ordinarily constrained to the administrative record, courts have adopted a more expansive scope of review where plaintiffs have made "a strong preliminary showing of bad faith or improper behavior.")  *See also* Exhibit

---

[2] The federal defendants also fail to mention that the court's reliance on declarations outside the administrative record is entirely proper in an injunction context (as is the case here), and is not restricted by the summary judgment proceeding addressing an agency's action under the Administrative Procedures Act. *See, Earth Island Institute v. Evans*, 256 F.Supp.2d 1064, 1078 n.16 (N.D. Cal. 2003) (allowing evidence outside of the administrative record in considering "the equitable and public interest considerations that plaintiffs must address in order to obtain preliminary injunctive relief"); *Ft. Funston Dog Walkers v. Babbitt*, 96 F.Supp.2d 1021, 1035 (N.D. Cal. 2000) (use of evidence outside the administrative record appropriate in considering claim of irreparable harm necessary for injunctive relief).

A: U.S. Department of the Interior Outer Continental Shelf Safety Oversight Board, Report to Secretary of the Interior Salazar, September 1, 2010.  For example, the agency has acknowledged that the agency's review of Oil Spill Response Plans does not insure that critical data are correct or that other relevant agencies are involved in the review process.  Exh. A, p. 24.  Specifically, it has acknowledged that its Gulf of Mexico oil spill coordinators conducted minimal reviews and analyses of OSRPs (leaving worst-case discharge calculations unverified), may not have the qualifications necessary to conduct a proper review; and failed to verify the availability or presence of equipment listed in the OSRP.  Exh. A, pp. 25-28.  It has also acknowledged that managers have changed or minimized scientists' potential environmental impact findings in NEPA documents to expedite plan approvals and that managers believed that the result of NEPA evaluations should always be a "green light" to proceed.  Exh. A. p. 20.

Furthermore, no presumption of regularity is warranted where the agency has acknowledged the need for new ethics policies based on evidence from a "plethora of reports" critical of inappropriate behavior on the part of certain MMS employees (including those who operate in the Gulf of Mexico) whose behavior was, for the most part, enabled by the industry. *New York v. Salazar*, 701 F.Supp.2d 224 (N.D.N.Y. 2010).  Exhibit. B: Testimony of Mary Kendall, Acting Inspector General for the Department of the Interior, June 17, 2010; Exhibit C: Oil and Gas Management: Key Elements to Consider for Providing Assurance of Effective Independent Oversight, United States Government Accountability Office, June 17, 2010; Exhibit D: U.S. DOI, Investigative Report re: *Island Operating Company, et al.*, Case No. PI-GA-09-0102-I, April 12, 2010; Exhibit E: Ethics Memo from Michael R. Bromwich to All BOEMRE District Employees, August 31, 2010 (barring inspectors from dealing with a company that employs a family member or personal friend).

As to the federal defendants' contention that the case will be decided wholly on an administrative record compiled by the agency without any need for supplementation of the record with documents resulting from discovery in this proceeding, plaintiffs respond that the circumstances described above make these cases ripe for supplementation of the record and, perhaps, even trial.  *See, Citizen Advocates For Responsible Expansion, Inc. v. Dole,* 770 F.2d 423, 437 (5th Cir. 1985) (where agencies failed to develop adequate reviewable administrative record to support decision not to prepare an Environmental Impact Statement ("EIS"), evidence developed at trial could be used to determine whether EIS was necessary).  Proceeding in this manner is particularly appropriate where a statute contains a substantive duty to perform an adequate environmental analysis (as is the case here)[3] and a court needs to look to outside evidence to determine if that analysis is sufficient.  *Sierra Club v. Peterson,* 185 F.3d 349, 369-70 (5th Cir. 1999) (approving district court's decision to hold trial in case brought under environmental management statute where record was wholly inadequate).

Lastly, an administrative record may also be supplemented by documents normally shielded by the deliberative process privilege based on a determination by a court that there is sufficient need for disclosure after balancing the competing interests and taking into account factors such as the relevance of the evidence, the availability of other evidence, the seriousness of the litigation, the role of the government and the possibility of future timidity by government employees.  *In re Sealed Case*, 121 F.3d 729, 737-38 (D.C. Cir. 1997) (quoting *In re Subpoena Served Upon Comptroller of Currency*, 967 F.2d 630, 634 (D.C. Cir. 1992)); *New York v. Salazar*, 701 F.Supp.2d 224 (N.D.N.Y. 2010) (record could be supplemented with pre-decisional

---

[3] The Outer Continental Shelf Lands Act permits exploration only where the Department of Interior finds "such exploration will not be unduly harmful to aquatic life in the area, result in pollution, create hazardous or unsafe conditions. . . ." 43 U.S.C. 1340(c), (g).

5

documents where process used by Department of Interior to make determination that 13,000 acres of land should be taken and placed in trust for Indian tribe was challenged as exercise of unbridled discretion resulting in violations of due process).[4] Where, as here, the agency has admitted that its decision-making process was fundamentally flawed, the deliberative-process privilege is simply inapplicable.

## II.  BP, Which Has Moved To Intervene In The OSRP Case, Has Acknowledged That The OSRP Case And Other MDL-2179 Cases Share Common Characteristics.

The federal defendants' argue that the cases should be severed because they share no common characteristics with other MDL-2179 cases and because to the extent that legal issues overlap, the questions will not be decided by the same evidentiary standards or burdens. BP, which has moved to intervene in the OSRP case (Case No. 10-1630), believes to the contrary:

> Plaintiffs' Complaint contains numerous allegations about representations in BP's Regional OSRP, including purported representations that BP 'could recover 197% of the daily discharge from an uncontrolled blowout of 250,000 barrels per day.' Compl. ¶ 9 (emphasis omitted). The April 20, 2010 incident at the Deepwater Horizon rig and the Regional OSRP central to Plaintiffs' Complaint are the subject of numerous lawsuits pending against BP. Any precedential effect of an adverse judgment or factual findings related to BP's Regional OSRP would potentially impair BP's ability to protect its interest in related pending and future litigation against BP, as well as potential regulatory matters."

[D.E. 475-1, page 9, Case No. 10-1156]. BP's intervention gives the OSRP case a common defendant with the other MDL actions, and for the reasons set forth above, the agency's decision-making is not entitled to deference or a presumption of regularity and fact finding. BP's submission and the approval of a grossly exaggerated OSRP is relevant to spill liability claims raised in other cases in this proceeding such as failure to contain the spill claims, cleanup and worker exposure claims, and Corexit (dispersant) issues. *See* D.E. 215-1, Proposed Pre-Trial

---

[4] Supplementation of the record with decisional documents is currently being litigated in *Ensco Offshore Co. v. Salazar*, Case No. 10-1941, E.D. La. [D.E. 50-1; Case No. 10-1941].

Order No. ___, p. 3 (creating pleading bundle for Medical Monitoring and post 4/20/10 Personal Injury Claims).

### III.     The Regulatory Claims Are An Appropriate Pleading Bundle In MDL-2179.

After consideration of suggestions made by counsel for Gulf Restoration Network and the Sierra Club and others, liaison counsel have proposed a separate pleading bundle for injunctive and regulatory claims against government entities.  *See* D.E. 215-1, Proposed Pre-Trial Order No. ___, pp 3-4 (creating pleading bundle for injunctive and regulatory claims).  A master complaint for this pleading bundle under the proposed order is due December 15, 2010.  Other outstanding and impending cases and claims fit this pleading bundle.  For example, plaintiffs are in the processing of amending their OSRP complaint to add additional claims (including a NEPA claim) and have filed a dispersant action, there is an impending 60 day notice on an Endangered Species Act claim against the federal agencies related to the oil spill response, and plaintiffs anticipate the filing of similar environmental/regulatory claims by other parties.[5]  Discovery, some of which (such as the environmental sampling data sought from the United States) will be relevant to the environmental claims, should be completed prior to October, 2011—the trial date on liability issues set by this court at the Case Management Conference on September 16, 2010.  This schedule does not unduly delay resolution of claims that raise issues of great public importance to those who use and enjoy the waters of the Gulf of Mexico.

---

[5] In response to an intervenor's motion to deconsolidate Case No. 10-1497 from MDL-2179, plaintiffs asserted that the motion was moot because the agency had largely provided the substantive relief requested in the complaint.  [D.E. 175].  To the extent this court finds that there are issues remaining to be decided in that case, it is appropriately part of the MDL for the same reasons set forth in this response.

## CONCLUSION

WHEREFORE, plaintiffs request that this court deny the federal defendants' motion to sever and approve plaintiffs' liaison counsels' proposed pre-trial order creating a pleading bundle for injunctive/regulatory cases against governmental agencies that relate to the Deepwater Horizon's explosion, sinking, and uncontrolled blowout and the oil spill response to the massive spill created by the blowout.

Respectfully submitted this 21st day of September, 2010.

> *s/* Alisa Coe_____
> Alisa A. Coe
> La. Bar No. 27999
> Monica K. Reimer
> Fl. Bar. No. 0090069
> Admitted *Pro Hac Vice*
> David G. Guest
> Fla. Bar. No. 267228
> Admitted *Pro Hac Vice*
> Earthjustice
> 111 S. Martin Luther King Jr. Blvd.
> Tallahassee, FL 32302-1329
> Phone: (850) 681-0031
> Facsimile: (850) 681-0020
> acoe@earthjustice.org
>
>
> Joel Waltzer
> La. Bar No. 19268
> Waltzer & Associates
> 3715 Westbank Exprwy, Ste. 13
> Harvey, LA  70058
> Office: (504) 340-6300
> Facsimile: (504) 340-6330
> joel@waltzerlaw.com
>
> and

Robert Wiygul
La. Bar No. 17411
Waltzer & Associates
1011 Iberville Drive
Ocean Springs, MS  39564
Office: (228) 872-1125
Fax:  (228) 872-1128
robert@waltzerlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of September I caused a copy of the foregoing to be served through the Court's CM/ECF system to all parties.

      s/ Alisa A. Coe
           Attorney