## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | * * * * * * * * | MDL NO. 2179 |
| | | SECTION J |
| | | JUDGE CARL J. BARBIER |
| This document relates to 2:10-cv-2087, *State of Louisiana ex rel. John F. Rowley, District Attorney for the Parish of St. Bernard v. BP Exploration & Production Inc.* | * * * * * | MAGISTRATE   JUDGE   SALLY SHUSHAN |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## BP DEFENDANTS' MEMORANDUM IN OPPOSITION TO MOTION TO REMAND TO STATE COURT

The State of Louisiana, by and through the District Attorney for the Parish of St. Bernard (the "Parish" or "Plaintiff"), filed in Louisiana state court a Petition for Damages against BP Exploration & Production, Inc., BP Products North America, Inc., and BP America, Inc. (collectively, the "BP Defendants") under the Louisiana wildlife statute, La. R.S. § 56:40.1 *et seq.* Plaintiff's Petition asserts a cause of action arising out of the BP Defendants' exploration and drilling operations on the Outer Continental Shelf ("OCS" or "Shelf") and the oil spill in the Gulf of Mexico. The BP Defendants removed this action to this Court pursuant to 43 U.S.C. § 1349(b)(1)(A) (the federal Outer Continental Shelf Lands Act ("OCSLA")), and Plaintiff has now moved to remand the case to state court.

Plaintiff's motion has no basis in fact or law, and should be denied for many of the same reasons explained by the BP Defendants in opposing the motions to remand similar wildlife suits filed in this Court by the Parishes of Plaquemines, Lafourche, St. Tammany, and Terrebonne.

Plaintiff claims that its "memorandum focuses on an issue not yet raised in detail by any state-related plaintiff." Remand Mem. at 1. But with one irrelevant exception — namely, Plaintiff's convenient omission of any pertinent factual allegations in its Petition for Damages as to the genesis of alleged injuries to wildlife, in an apparent attempt to "plead around" this Court's OCSLA jurisdiction — the arguments made by Plaintiff and the underlying facts are identical to those in the cases already pending before this Court.

As with those cases, this Court has original jurisdiction under section 1349 of OCSLA over this case. By its terms, section 1349(b)(1)(A) grants federal District Courts wide-ranging jurisdiction to decide any action "arising out of, or in connection with" exploration and drilling operations on the Outer Continental Shelf. Under established Fifth Circuit precedent, a District Court has original subject matter jurisdiction over a plaintiff's action if it would not have arisen "but for" exploration and drilling operations conducted on the OCS. *See, e.g., Tenn. Gas Pipeline v. Houston Cas. Ins. Co.*, 87 F.3d 150, 154 (5th Cir. 1996). Plaintiff's argument that this Court should import a *situs*-of-the-injury test into the jurisdictional analysis under section 1349 is incorrect and confuses issues relating to governing law with the jurisdictional issues properly before this Court.

Critically, OCSLA is an ***independent grant*** of federal jurisdiction, and hence is not subject to the well-pleaded complaint rule. *See Amoco Prod. Co. v. Sea Robin Pipeline Co.*, 844 F.2d 1202, 1205 (5th Cir. 1988). Plaintiff cannot artfully plead around this Court's OCSLA jurisdiction, which is different than federal question jurisdiction. OCSLA jurisdiction arises out of specific activities; federal question jurisdiction arises out of the source of the legal causes of action a plaintiff chooses to assert. Here, there can be no dispute that Plaintiff's actions arise from the BP Defendants' operations on the OCS. Had the BP Defendants not been performing

2

exploratory and drilling operations on the OCS, Plaintiff would have had no occasion to file the Petition concerning harm to wildlife allegedly caused by those operations and the resulting spill.

By arguing that the St. Bernard Parish petition is different from those filed by the other four Parishes in this Court, Plaintiff here inherently concedes that it has reviewed the papers in those other cases. Hence, Plaintiff is undoubtedly aware that the BP Defendants are not claiming that the state wildlife statutes are "completely preempted." This reveals that Plaintiff lacks a response to the point that when independent federal jurisdiction exists, courts "need not traverse the Serbonian Bog of the well pleaded complaint rule," *id.* at 1205. Thus, Plaintiff has no option left but to raise up and then laboriously knock down the straw man of the complete-preemption doctrine (Remand Mem. at 10-12) — a defense the BP Defendants have not even invoked.

Removal is proper and this Court has subject matter jurisdiction. Remand should be denied.

## BACKGROUND

The State of Louisiana, by and through the District Attorney for the Parish of St. Bernard, filed a Petition for Damages against the BP Defendants in Louisiana state court. *See* Pet. (filed June 25, 2010). The Petition asserted a claim under La. R.S. § 56:40.1 *et seq.* for damage to wildlife resulting from an incident in which, "[a]s a result of the actions of Defendants, oil, minerals, and other foreign substances have entered and continue to enter into the rivers, lakes, bays, inlets, and other bodies of water of the State of Louisiana, specifically St. Bernard Parish, and the waters of the State in the Gulf of Mexico adjacent to the Parish of St. Bernard Parish." Pet. ¶ 10. The Petition's allegations failed to specify or to describe where, when, or what actions causing Louisiana injury the BP Defendants took. However, the underlying incident's nature and location (embodied in the very caption for these cases) — namely, the oil spill resulting from the fire and explosion on the *Deepwater Horizon* rig located in the Gulf of Mexico on the Shelf

3

— are well known and appropriate for judicial notice.[1]

Indeed, Plaintiff's claim for recovery based on wildlife damage is the same manner of case brought by six other Louisiana Parishes under the very same statute, La. R.S. § 56:40.1 *et seq.*, four of which are pending in this District.[2] In each of those cases, various Parish District Attorneys (acting on behalf of the State of Louisiana) have set forth allegations describing the underlying *Deepwater Horizon* incident and, specifically, have noted that the actions giving rise to the alleged injury occurred on the OCS. This Court (as explained below) may take judicial notice of those allegations. Moreover, though it is not necessary to secure removal in this case, the BP Defendants have submitted the declaration of Kemper Howe ("Howe Declaration"), made under penalty of perjury pursuant to 28 U.S.C. § 1746 and according to his personal knowledge as Gulf of Mexico Land Manager for BP America Inc. The Howe Declaration is consistent with the pertinent jurisdictional allegations in the State of Louisiana's pleadings in the other Parish cases pending before this Court.

Taken together, the State of Louisiana's pleadings in cases pending before this Court and the Howe Declaration establish that Plaintiff's claim arises from and is inextricably connected to the BP Defendants' OCS operations, including the exploration, development, or production of oil in the OCS subsoil and seabed:

- The *Deepwater Horizon* incident occurred in the Gulf of Mexico on April 20, 2010.

---

[1] The BP Defendants respectfully submit that Plaintiff has omitted from its Petition any factual description of the *Deepwater Horizon* incident in an effort to "plead around" this Court's OCSLA jurisdiction. As explained below, Plaintiff's omission of any allegations relating to the oil spill does not defeat the existence of federal subject matter jurisdiction in this case.

[2] *See Louisiana State v. BP Exploration & Production, Inc. et al.*, No. 10-1757 (E.D. La.) (removed from Lafourche Parish); *Louisiana State v. BP Exploration & Production Inc. et al.*, No. 10-1758 (E.D. La.) (removed from Plaquemines Parish); *Louisiana State v. BP Exploration & Production Inc. et al.*, No. 10-1759 (E.D. La.) (removed from Terrebonne Parish); *Louisiana State v. BP Exploration & Production Inc. et al.*, No. 10-1760 (E.D. La.) (removed from St. Tammany Parish); *State of Louisiana v. BP Exploration & Production Inc. et al.*, No. 10-991 (W.D. La.) (removed from Iberia Parish); and *State of Louisiana v. BP Exploration & Production Inc. et al.*, No. 19-992 (W.D. La.) (removed from St. Mary Parish).

4

Howe Declaration ¶ 6; *see also* Terrebonne Pet. ¶ 9; St. Tammany Pet. ¶ 9; Lafourche Pet. ¶ 8; Plaquemines Pet. ¶ 8. The agency formerly known as the Minerals Management Services ("MMS") assigned MMS Mineral Lease Number OCS-G G32306 to the area that is the site of the incident. Howe Declaration ¶ 7; *see also* Terrebonne Pet. ¶ 7; St. Tammany Pet. ¶ 7; Lafourche Pet. ¶ 6; Plaquemines Pet. ¶ 6.[3]

- The Lease is situated wholly on submerged lands located on the OCS. The lands covered by the Lease lie seaward and outside of the area of lands beneath navigable waters. The Lease accordingly covers submerged lands of which the subsoil and seabed appertain to the United States and are subject to its jurisdiction and control by virtue of those submerged lands being more than three miles from the coast of any State, including Louisiana. Howe Declaration ¶¶ 8-11; *see also* Terrebonne Pet. ¶ 9; St. Tammany Pet. ¶ 9; Lafourche Pet. ¶ 8; Plaquemines Pet. ¶ 8.

- The *Deepwater Horizon* incident arises out of an operation conducted on the OCS that involves the exploration, drilling, development, or production of the minerals of the subsoil and seabed of the OCS or that involves rights to such minerals. Howe Declaration ¶ 12; *see also* Terrebonne Pet. ¶ 9; St. Tammany Pet. ¶ 9; Lafourche Pet. ¶ 8; Plaquemines Pet. ¶ 8.

- The *Deepwater Horizon* incident is the cause of the alleged injury to wildlife advanced in this suit and claimed to be occurring due to the entry of oil, minerals, and other foreign substances into the rivers, lakes, bays, inlets, and other bodies of water of the State of Louisiana, specifically those in St. Bernard Parish, and the waters of the State in the Gulf of Mexico adjacent to the Parish of St. Bernard Parish.[4] *See* Terrebonne Pet. ¶¶ 9-10, 12; St. Tammany Pet. ¶¶ 8-9, 15; Lafourche Pet. ¶¶ 7-8, 12; Plaquemines Pet. ¶¶ 8-9, 12.

Thus, it is clear that Plaintiff complains of activities that occurred on the OCS as a result

of the *Deepwater Horizon* incident. Plaintiff nevertheless seeks to avoid federal jurisdiction —

not only by omitting relevant facts from its allegations — but also by alleging that it purportedly

"does not plead, and will never at any time in the future plead, any claim or cause of action

---

[3] This Court can take judicial notice that the agency formerly called the MMS, part of the United States Department of the Interior, is a federal agency that exercises exclusive federal leasing authority for all mineral development on the Outer Continental Shelf. *See Shell Offshore, Inc. v. Babbitt*, 238 F.3d 622, 624 (5th Cir. 2001). MMS is now known as BOEMRE, the Bureau of Ocean Energy Management, Regulation and Enforcement. BOEMRE remains resident within the Department of Interior. *See* http://www.boemre.gov/ (last visited Sept. 18, 2010). The foregoing underlying facts are "not subject to reasonable dispute" and instead are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

[4] Plaintiff suggests that the BP Defendants admitted the existence of these alleged injuries in paragraph 11 of the removal notice. *See* Remand Mem. at 7 n.20. Simple review of paragraph 11 of the removal notice will show that no such admission was made.

arising under any federal law, and asserts no such claims or cause of action herein." Pet. ¶ 13.

The BP Defendants removed Plaintiff's claim on July 26, 2010, and Plaintiff has now moved to remand to state court.

## ARGUMENT

## I. THIS COURT HAS JURISDICTION OVER THIS CASE UNDER OCSLA.

### A. Statutory Framework.

National authority over the Shelf is exercised in interconnected ways — through (A) OCSLA's assertion of federal sovereignty, 43 U.S.C. § 1333(a)(1); (B) OCSLA's "surrogate federal law" provision, 43 U.S.C. § 1333(a)(2)(A); and (C) OCSLA's jurisdictional provision, 43 U.S.C. § 1349. Because these provisions set forth substantive and jurisdictional rules that differ from those applicable in more familiar contexts (such as federal question jurisdiction under 28 U.S.C. § 1331), the BP Defendants explain them in some detail below.

### 1. Section 1331(a)(1) — OCSLA's Assertion Of Federal Sovereignty and the Paramount Nature of Federal Purposes on the Shelf.

OCSLA declares that "the subsoil and seabed of the outer Continental Shelf appertain to the United States and are subject to its jurisdiction, control, and power of disposition," 43 U.S.C. § 1332(1), thus establishing "national authority over the OCS at the expense of both foreign governments and the governments of the individual states." *Tenn. Gas Pipeline*, 87 F.3d at 153. Under 43 U.S.C. § 1333(a)(1),

> The Constitution and laws and civil and political jurisdiction of the United States *are extended to* the subsoil and seabed of the outer Continental Shelf and to all artificial islands, and *all installations and other devices permanently or temporarily attached to the seabed*, which may be erected thereon for the purpose of exploring for, developing, or producing resources therefrom, or any such installation or other device (other than a ship or vessel) for the purpose of transporting such resources, to the same extent *as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State* . . . . (emphases added).

6

The purposes of OCSLA are many, and embrace not just the efficient exploitation of resources on the Shelf, but also provide for (i) protection of the environment, including wildlife, (ii) consideration of the interests and input of affected States and local governments, and (iii) harmonization of OCSLA with the operations of the Oil Pollution Act of 1990, which establishes the Oil Spill Liability Trust Fund. Specifically, OCSLA's relevant purposes are to:

* * *

(2) *preserve, protect, and develop oil and natural gas resources* in the Outer Continental Shelf in a manner which is consistent with the need (A) to make such resources available to meet the Nation's energy needs as rapidly as possible, (B) *to balance orderly energy resource development with protection of the human, marine, and coastal environments,* (C) to insure the public a fair and equitable return on the resources of the Outer Continental Shelf, and (D) to preserve and maintain free enterprise competition;

* * *

(4) *provide States, and through States, local governments,* which are impacted by Outer Continental Shelf oil and gas exploration, development, and production *with comprehensive assistance in order to anticipate and plan for such impact,* and thereby to assure adequate protection of the human environment;

* * *

(6) *assure that States, and through States, local governments,* which are directly affected by exploration, development, and production of oil and natural gas *are provided an opportunity to participate in policy and planning decisions* relating to management of the resources of the Outer Continental Shelf;

* * *

(8) *establish an oilspill liability fund* to pay for the prompt removal of any oil spilled or discharged as a result of activities on the Outer Continental Shelf and for any damages to *public or private interests* caused by such spills or discharges;

* * *

43 U.S.C. § 1802 (emphases added).

### 2.    Section 1333(a)(2) — OCSLA's Surrogate Federal Law Provision.

OCSLA "makes federal law exclusive in its regulation of the OCS . . . ." *Tenn. Gas Pipeline,* 87 F.3d at 153; *see also Gulf Offshore Co. v. Mobil Oil Corp.,* 453 U.S. 473, 480-81 (1981).    OCSLA achieves this exclusive federal control in part through 43 U.S.C.

§ 1333(a)(2)(A) (emphasis added), which provides, in relevant part:

> To the extent that they are applicable and not inconsistent with this subchapter or with other Federal laws and regulations of the Secretary now in effect or hereafter adopted, *the civil and criminal laws of each adjacent State, now in effect or hereafter adopted, amended, or repealed are declared to be* <u>*the law of the United States*</u> *for that portion of the subsoil and seabed of the outer Continental Shelf*, and *artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf . . . .* All of such applicable laws shall be administered and enforced by the appropriate officers and courts of the United States.

Under this framework, "gaps" in substantive federal law are filled by "the 'applicable and not inconsistent' laws of the adjacent States," and state laws, when they are applicable to the Shelf at all, are thus adopted "as surrogate federal law," meaning that such state laws do not apply of their own force. *Gulf Offshore*, 453 U.S. at 480-81; *see also Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 349 (5th Cir. 1999); *EP Operating Ltd. P'ship v. Placid Oil Co.*, 26 F.3d 563, 566 (5th Cir. 1994); *Union Tex. Petroleum Corp. v. PLT Eng'g, Inc.*, 895 F.2d 1043, 1052 (5th Cir. 1990) ("Any other result here would frustrate the Congressional purpose that the OCS be treated as an area of exclusive federal jurisdiction within the state where state law will apply to fill in the gaps in the federal law."); *Laredo Offshore Constructors, Inc. v. Hunt Oil Co.*, 754 F.2d 1223, 1228 (5th Cir. 1985) ("If the OCSLA was intended only to govern those cases directly implicating the regulatory and proprietary purposes of the Act, there would have been no need to make available such a broad legal base, including both civil and criminal laws, upon which courts could draw to fill in anticipated gaps in federal law."). And cases that fall within OCSLA's assertion of national sovereign authority under section 1333(a)(1), but that are not governed by section 1333(a)(2)(A), are governed by substantive OCSLA provisions, other provisions of federal law, or by federal maritime law. *See, e.g., Tenn. Gas Pipeline*, 87 F.3d at

8

153 (asserting OCSLA jurisdiction over maritime claim affecting the Shelf).

Taken together, section 1333(a)(2)(A), substantive OCSLA provisions, the ordinary array of federal statutes, and maritime law thus provide a body of law that is "intended 'to govern the *full range* of potential legal problems that might arise in connection with operations on the Outer Continental Shelf.'" *EP Operating Ltd. P'ship*, 26 F.3d at 569 (citing *Laredo Offshore*, 754 F.2d at 1228) (emphasis added). To the extent that the statutory text and Fifth Circuit precedents leave *any* room for doubt on this issue, those doubts are easily resolved by reference to the statute's legislative history. In amending OCSLA to expand its coverage in 1978, the House Select Committee on the Outer Continental Shelf specifically observed in its report that:

> It is thus made clear that *Federal* law is to be applicable to *all activities on all devices* in contact with the seabed for exploration, development, and production. The committee intends that *Federal law is, therefore, to be applicable to* activities on drilling ships, *semi-submersible drilling rigs*, and other watercraft, when they are connected to the seabed by drillstring, pipes, or other appurtenances, on the OCS for exploration, development, or production purposes.

H.R. Rep. No. 95-590, at 128 (1977) (emphasis added), reprinted in 1978 U.S.C.C.A.N. 1450, 1534.

### 3.    Section 1349(b)(1) — OCSLA's Jurisdictional Provision.

Lastly, OCSLA grants federal District Courts broad jurisdiction to decide *any* dispute "arising out of, or in connection with" operations conducted on the OCS:

> [T]he district courts of the United States shall have jurisdiction of cases and controversies *arising out of, or in connection with* (A) *any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals*, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals, or (B) the cancellation, suspension, or termination of a lease or permit under this subchapter . . .

43 U.S.C. § 1349(b)(1) (emphasis added). *See also EP Operating Ltd. P'ship*, 26 F.3d at 569

9

("[B]road reading of the jurisdictional grant of section 1349 is supported by the expansive substantive reach of the OCSLA."); *Tenn. Gas Pipeline*, 87 F.3d at 154 (OCSLA's jurisdictional grant is "very broad"). Precisely because the jurisdictional grant is so "broad," the Fifth Circuit has recognized that "the Act covers a wide range of activity occurring beyond the territorial waters of the states on the outer continental shelf of the United States." *Texaco Exploration & Prod., Inc. v. AmClyde Engineered Prods. Co.*, 448 F.3d 760, 768 (5th Cir. 2006) (citations and quotation marks omitted); *Walsh v. Seagull Energy Corp.*, 836 F. Supp. 411, 417 (S.D. Tex. 1993) (observing that there can be "*no dispute*" that "the jurisdictional grant of OCSLA is *more broad* than [the coverage of OCSLA under section 1333(a)(1)]") (emphasis added).

OCSLA's definitions establish that section 1349(b)(1) jurisdiction encompasses all drilling activities on the Shelf. *First*, OCSLA defines "minerals" as including "*oil*, gas, sulphur, geopressured-geothermal and associated resources . . . ." 43 U.S.C. § 1331(q) (emphasis added). *Second*, "exploration" is defined as the "process of searching for minerals, including . . . any drilling," and "development" includes "those activities which take place following discovery of minerals in paying quantities, including geophysical activity, drilling, platform construction, and operation of all onshore support facilities, and which are for the purpose of ultimately producing the minerals discovered." 43 U.S.C. § 1331(k), (l).

And *third*, according to the Fifth Circuit, the term "operation" is to be read expansively as "the doing of some physical act." *Sea Robin Pipeline*, 844 F.2d at 1207. As a result, the section 1349(b) jurisdictional grant, at the very least, applies to "the entire range of legal disputes that [Congress] knew would arise relating to resource development on the Outer Continental Shelf." *EP Operating Ltd. P'ship*, 26 F.3d at 569. Federal jurisdiction thus depends on a factual connection between the suit and resource development on the OCS, and not on any particular

10

legal theory of recovery plaintiffs might allege or the relief they might seek.

In short, 43 U.S.C. § 1349(b)(1)(A) creates a factual-nexus grant of independent federal jurisdiction tied to the existence of exclusive federal sovereignty over the OCS as mandated by Congress. OCSLA is a comprehensive scheme that declares absolute federal control over mineral exploration on and under the seabed on the Shelf. Here, the State's allegations that wildlife have been taken within the Parish of St. Bernard in violation of La. R.S. § 56:40.1 *et seq.* arises out of the *Deepwater Horizon* incident, which occurred on the Outer Continental Shelf in direct connection to the Defendants' oil exploration, development, and production operations.

**B.      OCSLA Establishes Jurisdiction Here Because The Parties' Dispute Would Not Have Arisen "But For" The BP Defendants' Operations On The Outer Continental Shelf.**

The connection to Shelf operations required for purposes of establishing OCSLA jurisdiction is not a difficult standard for a removing defendant to meet. The Fifth Circuit applies an expansive "but for" test, under which the requisite factual nexus is established, and the District Court has original subject matter jurisdiction, *if the parties' dispute would not have arisen "but for" the exploration or development operations on the Outer Continental Shelf. See, e.g., Tenn. Gas Pipeline*, 87 F.3d at 155. This but-for test reflects the "broad jurisdictional grant under § 1349," because "a broad, not a narrow, reading of this grant is supported by the clear exertion of federal sovereignty over the OCS." *Id.* (quotation marks omitted).

Thus, the Fifth Circuit in *Tennessee Gas Pipeline* had "no difficulty in deciding that § 1349 grants original jurisdiction in federal court" over a claim involving an allision with a platform affixed to the OCS that was used to extract and transport minerals from the OCS. 87 F.3d at 154. "The undeniable fact is that there would not have been an accident had Tennessee Gas not built its platform to extract minerals from the OCS." *Id.* at 155. As the Fifth Circuit reasoned, "This was clearly enough physical activity on the OCS to constitute an

11

operation." *Id.* at 154. Similarly, in *Barger v. Petroleum Helicopters, Inc.*, 692 F.2d 337 (5th Cir. 1982), the court held that a case arising from the crash of a helicopter ferrying employees to production platforms was covered by the OCSLA because the pilot "would not have been killed in a helicopter crash in the Gulf of Mexico 'but for' the fact that he was employed to transport eleven workers to a fixed platform on the Shelf. His work furthered mineral exploration and development activities and was in the regular course of such activities." *Id.* at 340.

Likewise, in *EP Operating*, the District Court had original jurisdiction over an action to determine ownership interests in an offshore platform and other facilities, even though active operations at the site had ceased. Former operations transporting minerals and the potential for future operations established the required factual connection, even if the only remaining activity would be to dismantle the offshore facilities. *See* 26 F.3d at 567-68; *see also United Offshore Co. v. Southern Deepwater Pipeline Co.*, 899 F.2d 405, 407 (5th Cir. 1990) (District Court had jurisdiction even though underlying dispute among partners for control of pipeline was "one step removed" from actual operations on the OCS, since the dispute would affect the efficient exploitation of resources from the Gulf and thus threaten the total recovery of minerals).[5]

Applying these well-settled standards, this Court possesses jurisdiction over Plaintiff's claim. Here, Plaintiff would have had no dispute with the BP Defendants "but for" their production-related operations on the Shelf, and hence this Court has subject matter jurisdiction. *See Tenn. Gas Pipeline*, 87 F.3d at 155 (holding that but-for test was satisfied when "there would have been no navigational error but for the existence of the platform"); *Barger*, 692 F.2d at 340.

---

[5] In a footnote, Plaintiff attempts to argue that it is seeking recovery for wildlife damage stemming not simply from the oil spill, but from "attempts to combat the oil via both the use of chemical dispersants employed by the BP Entities, fresh water diversion, and oil retention/protection apparatus (*e.g.,* boom)." Remand Mem. at 2 n.1. This category of activities, authorized by the Federal On Scene Coordinator, are part of the response effort to the spill and thus self-evidently would not have occurred "but for" the spill. Moreover, if OCSLA jurisdiction exists over a contractual dispute about pipeline ownership as in *United Offshore*, comprehensive and coordinated response activities ranging across both Shelf and non-Shelf waters similarly fall within OCSLA section 1349(b) jurisdiction.

12

In the face of these clear precedents, Plaintiff seeks to import a "*situs*" requirement into the jurisdictional analysis under section 1349(b). But Plaintiff's argument that section 1349 incorporates a *situs*-of-the-injury requirement confuses OCSLA governing law with OCSLA jurisdiction.[6] With respect to selection of the governing law to apply, various OCSLA provisions may in fact incorporate a "*situs*" requirement requiring harm to have occurred on the OCS. The Court need not address such governing law issues at this time. *See Dahlen v. Gulf Crews, Inc.*, 281 F.3d 487, 492 (5th Cir. 2002) (explaining that the question of which governing law to apply "has nothing to do with whether or not a federal court has jurisdiction"). With respect to jurisdiction, however, by including no direct geographic limitation, § 1349(b)(1) describes a broader coverage than the remainder of OCSLA's provisions. At bottom, Plaintiff's argument regarding the alleged *situs* of the tort is relevant, at most, to governing law, not the jurisdictional question that is currently pending before this Court in St. Bernard Parish's remand motion.[7]

None of the cases that Plaintiff cites support its arguments. Indeed, the Fifth Circuit's unpublished, non-precedential disposition in *Golden v. Omni Energy Services Corp.*, 242 Fed.

---

[6] *See, e.g.*, Remand Mem. at 7-8 nn. 19-20 (citing *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207 (1986), *Mills v. Director, OWCP*, 877 F.2d 356 (5th Cir. 1989), and *Demette v. Falcon Drilling Co.*, 280 F.3d 492 (5th Cir. 2002)). But these cases do not address whether OCSLA's jurisdictional provision incorporates a *situs* requirement. *See Offshore Logistics*, 477 U.S. at 220 (addressing whether section 1333(a) of OCSLA or the Death on the High Seas Act ("DOHSA") provided the appropriate remedy when helicopter carrying rig workers crashed on the high seas in an accident unrelated to drilling activities and holding that "[b]ecause the fatalities underlying this suit did not arise from an accident in the area covered by OCSLA but rather occurred on the high seas, DOHSA plainly was intended to control"); *Mills*, 877 F.2d at 359 (interpreting another provision of OCSLA, 43 U.S.C. § 1333(b), to address whether a land-based welder qualifies for benefits under the Longshore and Harbor Workers' Compensation Act as incorporated under OCSLA and holding that "OCSLA's provision adopting LHWCA includes a situs of injury requirement"); *Demette*, 280 F.3d at 496 (holding that to determine whether OCSLA makes the LHWCA applicable, court must determine whether the injury occurred on an OCSLA *situs*).

[7] Even if the *situs* of injury were relevant to the resolution of this remand motion, which it is not, St. Bernard Parish could not show that there is a distinct *situs* of injury confined within the boundaries of that Parish. Wildlife range freely across the boundary line between state and federal authority. Accordingly, no identifiable place of injury within the Parish is apparent, given the Parish's allegations and the nature of the *Deepwater Horizon* incident.

13

Appx. 965, 967 (5th Cir. July 27, 2007) (per curiam),[8] undermines Plaintiff's argument. *Golden* addressed a helicopter accident on land that injured a rig worker being transported to his job on an offshore platform in the Gulf of Mexico. The case held that a district court, in determining OCSLA jurisdiction, must "take into account the *location of incidents giving rise to the lawsuit*. Here, the undisputed facts show that the helicopter accident giving rise to [the] lawsuit did not occur on the Continental Shelf." *Id.* at 967-68 (emphasis added). However, to the extent that this non-precedential disposition represents an additional requirement — above and beyond the "but for" test reflected in the remainder of the Fifth Circuit's jurisprudence — the requirement undermines Plaintiff's arguments here. Contrary to Plaintiff's argument that the *situs* for jurisdictional purposes is "the location of the injury," Remand Mem. at 8, *Golden* says that district courts must "take into account the location of incidents giving rise to the lawsuit," *i.e.*, the location of the helicopter accident. In this case, it is undisputed that the location of the incidents giving rise to the lawsuit — *i.e.*, the explosion — is the *Deepwater Horizon* rig, located indisputably on the Shelf.

Nor does *Landry v. Island Operating Co.*, Civil Action No. 09-1051, 2009 WL 3241560 (W.D. La. Sept. 30, 2009), help Plaintiff. To be sure, portions of *Landry* could be read to attach a *situs* requirement to OCSLA jurisdiction under section 1349. But even in *Landry*, Judge Melancon recognized that "the jurisdiction-granting provision [section 1349], in reality, is somewhat broader in scope" than 43 U.S.C. § 1333(a)(1), *see id.* at *2, and independently applied the "but for" test to determine that it lacked jurisdiction, *see id.* at *4. Moreover, even assuming that *Landry* was correctly decided, it confesses adherence to the "but for" test consistently applied by the Fifth Circuit to determine section 1349 jurisdiction. Under that test,

---

[8] *See* 5th Cir. R. 47.5.4: "Unpublished opinions issued on or after January 1, 1996, are not precedent, except under the doctrine of res judicata, collateral estoppel or law of the case (or similarly to show double jeopardy, notice, sanctionable conduct, entitlement to attorney's fees, or the like)."

the *Landry* court concluded that the plaintiff's injuries did not "hinge on the fact that the tanker had seen OCS action or that his independently-contracted employer conducted OCS operations." *Id.* at *5. By contrast, in this case, "but for" actions on the Shelf, there would be no oil spill from the subsea reservoir on the Shelf, which spill Plaintiff contends caused harm to wildlife.

## C.    The Well-pleaded Complaint Rule Is No Obstacle To Removal Under OCSLA.

Plaintiff argues that this Court lacks jurisdiction over a case removed to federal court on a non-diversity basis — including a case under OCSLA — where the face of the complaint indicates that plaintiff alleges only violations of state law. *See* Remand Mem. at 4; *see also id.* at 2, 5 (asserting cause of injury to wildlife is "irrelevant" to removal analysis). Plaintiff is incorrect and posits a false dichotomy by which jurisdiction in removed cases must be premised either on diversity jurisdiction under 28 U.S.C. § 1332 or on federal question jurisdiction under 28 U.S.C. § 1331. In reality, there is also a third category of jurisdiction that properly supports the removal of cases from state court to federal court — statutory grants of independent jurisdiction (such as OCSLA) set up outside of the section 1331 or 1332 frameworks. Fifth Circuit precedent thus establishes that the failure to specify federal law on the face of the complaint poses no bar to federal court jurisdiction under OCSLA. *See Tenn. Gas Pipeline*, 87 F.3d at 152 (holding that court had removal jurisdiction "even assuming that . . . [plaintiff's] well-pleaded complaint asserts a maritime claim"); *Sea Robin Pipeline Co.*, 844 F.2d at 1205 (stating that the court "need not traverse the Serbonian Bog of the well pleaded complaint rule . . . . because [section 1349] expressly invests jurisdiction in the United States District Courts").

Plaintiff misconstrues the proper application of the well-pleaded complaint rule. The well-pleaded complaint rule is a gloss on the federal-question subject matter jurisdiction statute (28 U.S.C. § 1331) alone; that rule does not apply to other federal statutes independently creating

federal jurisdiction. *See Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 494-95 (1983); *Osborn v. Bank of the United States*, 22 U.S. (9 Wheat.) 738, 819 (1824).

Thus, it is indeed long established that, pursuant to the well-pleaded complaint rule, in order for a claim to arise "under the Constitution, laws, or treaties of the United States," *see* 28 U.S.C. § 1331, the federal question "must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal," *Gully v. First National Bank*, 299 U.S. 109, 112-13 (1936); *see* Remand Mem. at 4 nn. 10-11 (relying on *Gully* and other section 1331 cases decided outside the OCSLA realm). But it is equally long established that the "'well-pleaded complaint' rule applies only to statutory 'arising under' cases." *Am. Nat'l Red Cross v. S.G.*, 505 U.S. 247, 258 (1992). It is therefore wrong to "invoke [the well-pleaded complaint] rule outside the realm of statutory 'arising under' jurisdiction, *i.e.*, jurisdiction based on 28 U.S.C. § 1331, to jurisdiction based on a separate and independent jurisdictional grant." *Id.* OCSLA's section 1349 is such a "separate and independent jurisdictional grant." *See, e.g., Tenn. Gas Pipeline*, 87 F.3d at 153 ("In this case OCSLA provides an alternative basis for original jurisdiction.").

Furthermore, any dispute concerning Shelf operations is necessarily governed by *federal* law alone, regardless of how it is pleaded. *See Gulf Offshore*, 453 U.S. at 480-81; *Tenn. Gas Pipeline*, 87 F.3d at 153-54 ("OCSLA makes federal law exclusive in its regulation of the OCS, but in order to fill the substantial gaps in the coverage of federal law, OCSLA adopts the 'applicable and not inconsistent' laws of the adjacent states as surrogate federal law."). Thus, "[i]f the state causes of action alleged in the complaint are applicable to this case, it is only because state law has been adopted as surrogate federal law *through OCSLA*." *White v. Chevron, USA, Inc.*, Civ. A. No. 90-0113, 1990 WL 28167, at *1 (E.D. La. Mar. 14, 1990).

In any event, the nature of the claim and the substantive law that applies are not at issue

16

at this time; rather, the relevant question for purposes of jurisdiction under 43 U.S.C. § 1349(b)(1) is whether the dispute has the required connection to Shelf operations. *See, e.g., Recar v. CNG Producing Co.*, 853 F.2d 367, 369 (5th Cir. 1988). Jurisdiction depends on the factual and logical connection to operations on the OCS, not on the cause of action or substantive legal theory alleged. *Id.* at 370; *see EP Operating Ltd. P'ship*, 26 F.3d at 566 (action to determine ownership rights within OCSLA jurisdiction); *see also Gulf Offshore*, 453 U.S. at 481 ("[A] personal injury action involving events occurring on the Shelf is governed by federal law, the content of which is borrowed from the law of the adjacent State . . . ."). It thus makes no difference that Plaintiff seeks to characterize its claim as having been brought under a state statute where, as here, the action arose from the BP Defendants' mineral activities on the Shelf.

In light of this controlling law, the fact that Plaintiff has studiously avoided referring to OCSLA in the Petition is immaterial. This Court has routinely held that the failure to refer specifically to OCSLA does not transform a federal claim over which federal courts have jurisdiction into a state law claim. *See, e.g., Fields v. Pool Offshore, Inc.*, No. Civ. A. 97-3170, 1997 WL 767634, at *3 (E.D. La. Dec. 8, 1997) ("The fact that plaintiff's state court petition did not invoke jurisdiction under OCSLA is not dispositive of [the removal] issue."); *White*, 1990 WL 28167, at *1 ("Although in this case, the plaintiffs did not plead OCSLA in their state court petition but only alleged state causes of action, the statute and the jurisprudence clearly demonstrate that because this action arose on the outer continental shelf, the plaintiffs' exclusive remedy is pursuant to OCSLA."); *see also Cameron Offshore Boats, Inc. v. Alpine Ocean Seismic Surveys*, 862 F. Supp. 1578, 1584 (W.D. La. 1994) (court had jurisdiction although "petition does not specifically refer to OCSLA"). It is therefore irrelevant that Plaintiff attempts to base its claim exclusively on Louisiana's wildlife statute, La. R.S. § 56:40.1 *et seq*.

Nor is it relevant that Plaintiff has sought to circumvent OCSLA by asserting that it "will never at any time in the future plead . . . any claim or cause of action arising under any federal law . . . ." Pet. ¶ 13. The Fifth Circuit has found OCSLA jurisdiction even where the plaintiff "admits forthrightly that it attempted to craft its lawsuit to avoid federal removal jurisdiction." *Tenn. Gas Pipeline*, 87 F.3d at 152. Plaintiff thus cannot avoid the force of OCSLA through clever pleading. *See White*, 1990 WL 28167, at *1 ("A plaintiff cannot defeat removal [under OCSLA] by 'artfully' omitting essential federal issues from a state court petition.").[9]

## II. GIVEN THE PRESENCE OF STRONG AND PLAIN GROUNDS FOR OCSLA REMOVAL UNDER FIFTH CIRCUIT PRECEDENT, THE COURT SHOULD REJECT PLAINTIFF'S REQUEST FOR COSTS AND ATTORNEYS' FEES.

If the Court agrees with the merits of the OCSLA removal arguments detailed above, then it goes without saying that Plaintiff's request for attorney's fees and costs must also be rejected. Only if the Court were to disagree with the BP Defendants' invocation of the OCSLA jurisdictional statute under the case law in this Circuit and hold that it lacked subject matter under OCSLA's section 1349, *see* 28 U.S.C. § 1447(c), would this Court then have to decide "whether [BP] had objectively reasonable grounds to believe the removal was legally proper." *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 293 (5th Cir. 2000). But any such request for costs and attorneys' fees under 28 U.S.C. § 1447(c) should be quickly denied unless "the removing party *lacked an objectively reasonable* basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005) (emphasis added).

---

[9] The court can take judicial notice of the website of the federal government's Unified Command (http://www.deepwaterhorizonresponse.com (last visited Sept. 18, 2010)). *See Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005); *In re Katrina Canal Breaches Consol. Litig.*, No. 05-CV-4182, 2008 WL 4185869, at *2 (E.D. La. Sept. 8, 2008) (taking judicial notice of content on public websites). The Unified Command website verifies that the *Deepwater Horizon* explosion occurred in Mississippi Canyon Block 252, which is located in the Gulf of Mexico approximately 130 miles southeast of New Orleans, and 50 miles southeast of Venice, Louisiana — many miles from the terminal point of the three-mile belt of jurisdiction out from Louisiana's lands where the State of Louisiana's jurisdiction ends, and exclusive federal jurisdiction begins.

In this case, objectively reasonable grounds are manifest.   "[W]hen an objectively reasonable basis exists, fees should be denied."   *Id.*   Contrary to Plaintiff's arguments, a complaint need not specify a federal claim on its face in order for federal jurisdiction to apply under OCSLA, and OCSLA jurisdiction clearly applies to the BP Defendants' operations, which are intimately connected to the Shelf.   Thus, even if this Court disagreed with the BP Defendants' arguments, Plaintiff has not met its high burden of showing objective unreasonableness.   *See Valdes*, 199 F.3d at 293 (concluding that a court "need not express an opinion" on a removing party's authorities "except to say that [the removing party] could conclude from [them] that its position was not an unreasonable one").

## CONCLUSION

For these reasons, the BP Defendants respectfully request that Plaintiff's Motion to Remand to State Court be denied, that Plaintiff's request for fees and costs be denied, and that this action be maintained in federal court.

19

Respectfully submitted,

s/ Paul Matthew Jones

Donald R. Abaunza (Bar #2273)
R. Keith Jarrett (Bar #16984)
Don K. Haycraft (Bar #14361)
Jonathan A. Hunter (Bar #18619)
Mark D. Latham (Bar #19673)
Robert E. Holden (Bar #6935)
**LISKOW & LEWIS**
701 Poydras Street, Suite 5000
New Orleans, LA 70139-5099
Telephone:     (504) 581-7979
Facsimile:     (504) 556-4108

Paul Matthew Jones (Bar #19641)
April L. Rolen-Ogden (Bar #30698)
Stuart T. Welch (Bar #31359)
**LISKOW & LEWIS**
822 Harding Street
Lafayette, LA 70503
Telephone:     (337) 232-7424
Facsimile:     (337) 267-2399

*Attorneys for BP Exploration & Production, Inc.,
BP Products North America, Inc., and
BP America Inc.*

Jeffrey Bossert Clark
Aditya Bamzai
**KIRKLAND & ELLIS LLP**
655 Fifteenth Street, N.W.
Washington, DC 20005
Telephone:     (202) 879-5960
Facsimile:     (202) 879-5200

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Andrew B. Bloomer, P.C.
**KIRKLAND & ELLIS LLP**
300 North LaSalle Street
Chicago, IL 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

*Of Counsel*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing **BP DEFENDANTS'**
**MEMORANDUM IN OPPOSITION TO MOTION TO REMAND TO STATE COURT**
has been served upon all counsel of record by placing same in the United States mail, properly
addressed and postage prepaid, this 21st day of September, 2010.

s/ Paul Matthew Jones

21