UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: OIL SPILL BY THE OIL RIG                                                           MDL NO. 2179
"DEEPWATER HORIZON" IN THE
GULF OF MEXICO ON APRIL 20, 2010                                                 DIVISION J-1

THIS DOCUMENT RELATES TO ALL CASES

**APPLICATION BY STUART H. SMITH TO PLAINTIFF'S STEERING COMMITTEE**

I respectfully request that this Honorable Court appoint me to serve on the Plaintiff's Steering Committee ("PSC"). I also submit myself for consideration as lead counsel in this matter. I have devoted over 20 years of my professional career to representing people who have been damaged by oil companies and I have spent over 12 months of my life in trial against multi-national oil companies. After beginning my career in maritime law, fighting oil companies has been my focus and passion since 1989, when I took my first oilfield pollution case.

**I.      PROFESSIONAL EXPERIENCE**

This is primarily an oil pollution case that will benefit from my experience with highly complex oil pollution litigation.  I have been credited with developing the precedent and identifying the science to establish an entirely new area of litigation related to oilfield waste contamination.  This work resulted in the remediation of thousands of acres of polluted property across oil-producing regions of the United States.  Moreover, my firm, Smith Stag, is built to handle complex scientific cases against multi-national oil companies and their contractors. The attorneys working for the firm on this matter possess technical degrees and experience, including petroleum and environmental engineering and doctorate level toxicology degrees.

I believe the variety and scope of the cases in this process will require: (1) extensive experience and knowledge of the long-term effects of oil and its by-products on human health and the environment; (2) an intimate understanding of the networks of corporate structures that have already surfaced as important in this litigation; and (3) real-world experience with how oil

companies defend themselves in the courtroom. My practice has focused on such complexities for more than two decades and Smith Stag has won the largest punitive damage award from a United States jury for oil pollution contamination. The following illustrates a few case results:

> *Grefer v. Alpha Technical*—I served as lead counsel in an oilfield radiation case that resulted in a verdict of $1.056 billion against ExxonMobil for contaminating land it leased from the Grefer family in Harvey, Louisiana — and attempting to cover it up. The Louisiana 4th Circuit Court of Appeal, in its 61-page decision not to rehear the case, stated that ExxonMobil exhibited "callous, calculated, despicable and reprehensible conduct." 901 So.2d 1117 (La.App. 4 Cir. 2005).

> *Street, Inc. v. Chevron*—In 1992, I was the first plaintiff's attorney to take an oil company to trial for damages caused by radioactive oilfield waste. The trial lasted 6½ months and was one of the longest civil trials in American history. The *New York Times* described the case as "the nation's first legal test of the petroleum industry's liability for protecting workers and cleaning up radium contamination in the nation's oilfields." The defendants ultimately settled the case and it opened the door to further suits associated with damages from oil waste.

> *Craft v. Intracoastal Tubular Services, Inc.*—I presented this case to an Orleans Parish jury, which awarded the widow of a deceased oil pipeyard worker $15.2 million for the 1986 death of her husband. The jury concluded that oilfield radiation, and not Mr. Craft's 30-year two-pack-a-day smoking history, led to the lung cancer that claimed his life. This was the first oilfield radiation personal injury case to go to verdict, setting a precedent for future cases of this kind.

I have presented, and continue to give, seminars on the oil spill and related topics for both Tulane and Loyola Universities.[1] I was also asked to participate at a panel during the AAJ summer convention in Vancouver, but I was unable to attend due to a prior commitment to lecture on the spill for the Loyola Law School Summer Program in Vienna.

## II.      WILLINGNESS AND AVAILABLITY TO PURSUE THIS MATTER

It is clear that this matter calls for an enormous commitment over the coming months and years. Within days of the spill, I worked to assemble a team of law firms across the Gulf Coast to address this matter. We currently represent over 500 clients and more than $200 million in real estate claims against BP and other responsible parties. Some of our cases include: *Barisich, et*

---

[1] See http://www.loyno.edu/news/story/2010/8/2/2186 & http://www.loyno.edu/calendar/details/5685

*al., v. BP, p.l.c., et al.*, 10-1324; *Griffits Investment Limited Partnership v. BP, p.l.c.*, 10-1512; *Vath & Louisiana Environmental Action Network, Inc. v. BP, p.l.c.*, 10-01274, *Curtis v. BP, plc, et al*, 10-3001. This team sought and obtained the first order prohibiting BP from demanding a waiver of future legal rights before workers could be hired for cleanup efforts and requiring the company to acknowledge its responsibility to assure worker safety during cleanup operations.

The work of two of our lead researchers, Mr. Marco Kaltofen, P.E. and toxicologist Dr. William Sawyer has been covered extensively by national and local media. Our research team, with direction from Smith Stag and Krupnick Campbell, has collected and analyzed hundreds of samples of environmental materials from across the Gulf Coast. I have also retained professional photographers and videographers to document damages from the air, ground, and water, in addition to a team of individuals who have collected and chronicled print, TV and radio coverage of the spill. My team has also retained economists and a regional CPA firm to work up economic loss claims. We are also aggressively pursuing property diminution claims and have retained both local and nationally-respected firms to assist with these claims.  I am unaware of any one firm, or group of firms, that possesses this depth of independently gathered evidence, which will be critical in establishing causation and damages in this case.

I appreciate the magnitude of the commitment that this case will require. It is a commitment that only those of us who have actually experienced the years-long detailed and relentless litigation against the enormous power and influence of the oil and gas industry can understand. I know, empirically, how the oil industry litigates. I have the experience, resources, passion and depth of knowledge to most effectively represent the victims of this spill. My practice has been almost exclusively focused on this matter since early May and I am prepared to dedicate whatever time and resources are necessary. Moreover, I pledge that this will be the only MDL case I work on during any tenure on the Plaintiff's Steering Committee.

**III.   ABILITY TO WORK COOPERATIVELY WITH OTHERS**

I believe that professional cooperation and transparency are paramount and I have tried to lead by example. Our extensive testing results, including both proprietary testing results and publically available government data, are available to *everyone* on a public website.[2] Our team's data has been requested by, or shared with, the EPA's Federal On-Scene Commander, NOAA, Louisiana Wildlife and Fisheries, Mississippi DMR, and academic researchers participating in the Unified Command/Researchers Meeting at the University of South Florida.

Due, in part, to these efforts, Mr. Roy and Mr. Herman asked me to chair the BP Oil – Interim Ad Hoc Sample Collection & Testing Working Group, which is building on the scientific efforts initiated by Smith Stag to compile recommendations to the PSC. I have worked closely with Mr. Herman and Mr. Roy to resolve issues of worker safety, evidence preservation, and third-party discovery through negotiations with defense counsel and this Court. Finally, over the course of the last two decades, I have developed strong working relationships with many of the attorneys working on this matter.

**IV.   CONCLUSION**

I submit that I have unique professional experience that will be critical to the success of this litigation. I have committed my time and my firm's substantial resources to this matter nearly exclusively and I am prepared to continue to do so. Accordingly, I respectfully request that this Honorable Court appoint me to serve on the PSC and also consider me for lead counsel.

| | |
|---|---|
| **CERTIFICATE OF SERVICE** | Respectfully submitted, |
| I certify that a copy of the foregoing pleading has been sent via the Court's CM/ECF system to all counsel of record. | *s/Stuart H. Smith* <br> **STUART H. SMITH (# 17805)** <br> SMITH STAG, LLC <br> 365 Canal Street, Suite 2850 <br> New Orleans, Louisiana 70130 |
| *s/Stuart H. Smith* | |

---

[2] See http://bostonchemicaldata.com/LEAN