UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | OIL SPILL by the OIL RIG § | MDL NO. 2179 |
| | "DEEPWATER HORIZON" § | |
| | in the GULF OF MEXICO § | SECTION: J |
| | on April 20, 2010 § | |
| | § | JUDGE BARBIER |
| This Document Relates to All Cases | § | MAG. JUDGE SHUSHAN |

**APPLICATION OF JOHN EDDIE WILLIAMS, JR.
FOR PLAINITFFS' STEERING COMMITTEE**

I, John Eddie Williams, Jr., pursuant to Pretrial Order No. 1, submit and file this application for membership to the Plaintiffs' Steering Committee ("PSC") for MDL No. 2179, In Re Oil Spill Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010 (the "Transocean Incident").

**Overview of Application**

Williams Kherkher Hart Boundas, LLP ("WK") currently represents hundreds of individual plaintiffs with claims relating to the Transocean Incident. Virtually all of our clients are businesses and individuals located in and around Pensacola, Destin, and Panama City Beach, Florida. Virtually all of our clients have claims for economic losses pursuant to the Oil Pollution Act of 1990 ("OPA") and Chapter 376 of the Florida Statutes.

The Court has received a large volume of PSC applications from qualified personal injury firms focusing on personal injury and admiralty claims relating to the Transocean Incident. Most of these applications focus on the applicant's experience in well blow-out cases, personal injury cases, and admiralty cases (including Robins Dry Dock claims). It appears that the current PSC applications are disproportionately weighted in these areas.

At the September 16, 2010, hearing the Court considered Liaison Counsel's suggestion that cases be grouped into separate "bundles" by case-type. In all likelihood the largest "bundle" will be plaintiffs with economic losses pursuant to OPA. I respectfully submit that the Court's PSC appointments should also follow this "bundling" concept by appointing qualified lawyers to coordinate discovery and case management for each group. In other words, the PSC should include experienced and qualified lawyers for each "bundle," including the bundle for plaintiffs seeking economic losses pursuant to OPA (and state court pollution statutes such as Florida's Chapter 376).

I feel it is particularly relevant to note that OPA claimants operate under a strict liability statute, and their trials will essentially be limited to causation and damages. It is probable that OPA claimants will form upwards of 90% of the cases in this MDL. For this reason the PSC will need leadership and experience in the disciplines and methodologies for calculating economic losses. An OPA plaintiff realistically needs very little liability

discovery. An OPA plaintiff would most likely not need discovery of the causes of the Transocean Incident. Instead, OPA plaintiffs need a voice in the PSC on issues common to all OPA Plaintiffs: (i) calculation of economic loss; (ii) experts regarding economic loss and the long-term impact of the Transocean Incident; (iii) coordination between the PSC and the Gulf Coast Claim Facility; and (iv) early trial dates.

Two factors combine to make me and my Firm a logical candidate for PSC appointment: (i) virtually all of our clients are seeking recovery of economic losses pursuant to OPA and Florida state law; and (ii) my Firm and I have unique qualifications specific to the calculation and management of economic loss claims (including maintaining a dedicated commercial trial section). OPA claims are essentially commercial cases, and therefore the PSC needs experienced commercial trial lawyers with mass tort experience. I believe I can provide these specific attributes to the PSC.

For these reasons I believe it is imperative that the PSC include individuals with experience and resources in the area of commercial litigation. I submit that I would make an ideal candidate for this role as demonstrated below.

### A. AVAILABILITY FOR THE STEERING COMMITTEE

I have read and am familiar with the responsibilities delegated to the Plaintiffs' Steering Committee ("PSC") pursuant to Pretrial Order #1. I have made this Application after carefully considering my personal ability and availability to satisfy the Court's Order. I am fully aware what the work ahead entails and will make the commitment necessary to faithfully render my services available to the PSC. Additionally, I have at my disposal an experienced team of commercial trial lawyers and support staff to assist me in administering the duties required as a PSC member.

I have allotted the time and resources necessary to develop, propose necessary schedules, engage and coordinate expert witnesses, communicate with the GCCF, file and respond to all motions, and execute, conduct and complete discovery on behalf of all economic loss plaintiffs. I have the staff and technology to maintain files of all pretrial matters. I am available for all hearings, negotiations, and settlement discussions on behalf of all Plaintiffs. I believe my reputation and career achievements – including obtaining a record $17 billion settlement on behalf of the State of Texas in the Tobacco Litigation – will allow me to provide leadership and wisdom to the PSC. The quality of the MDL work product is a direct result of the quality of the lawyers taking charge – lawyers who are not simply billing hours to justify a fee, but rather, lawyers who produce a superior work product. This is particularly relevant in a situation where the average OPA plaintiff will not need access to a great amount of common benefit work, and instead will rely on their own attorney to prosecute their claims in the GCCF and at trial.

### B. ABILITY TO WORK COOPERATIVELY WITH OTHERS

My service on behalf of the state of Texas in the aforementioned Tobacco litigation is illustrative of the caliber and level of commitment I personally give in large and complex

2

mass tort cases. The entire case was trial ready only 20 months from its inception. I took a leading role in the litigation, and worked and cooperated closely with the other Plaintiff's firms involved. My focus in the Tobacco litigation was on the State of Texas' damage model, which required extensive knowledge and study regarding extraordinarily complex subject-matter. My role in the Tobacco litigation provides me with a unique perspective on the issues of economic loss, which I can apply to this case.

In addition, my firm represented 140 injured plaintiffs in claims against BP related to the explosion of BP's refinery in Texas City, Texas. I personally supervised and coordinated discovery in that case (including serving as lead plaintiff's counsel on several critical depositions), including using my office as the document repository of the Plaintiffs' steering committee in that case. I was personally involved in settlement discussions with British Petroleum that resulted in the resolution of a large volume of those cases I believe my experience and leadership in that litigation facilitated the global settlement of my Firm's cases against BP in less than 18 months from the date of the explosion.

My collaborative skills were also demonstrated in the Vioxx Litigation. In that litigation my firm was part of a consortium involving several other Texas firms. I was directly involved in the prosecution of a docket of over 2,000 Vioxx clients prosecuting claims before the Honorable Edlon E. Fallon in the United States District Court for the Eastern District of Louisiana, and before the Honorable Carol Higbee in the Superior Court in Atlantic City, New Jersey. My firm tried a Vioxx case to a verdict in New Orleans, and was directly involved in the coordination of discovery and pre-trial matters in both New Orleans and Atlantic City. Through that litigation I forged relationships with lawyers that are also involved in this litigation.

In addition, my firm prosecuted roughly 6,500 individual cases in the Diet Drug litigation against Wyeth, and we work closely with Plaintiff's counsel from several other firms in a cooperative manner to ensure the best possible representation of our clients.

My cooperative efforts are further confirmed by me and my Firm's participation in the In Re: Light Cigarettes Marketing Sales Practices Litigation, MDL 2068 and in the various state welding fume cases as well as federal cases in MDL 1535. I am a member of the MDL Executive Committees in both matters.

Finally, I have a long history of cooperative efforts in the Asbestos Litigation for a period spanning at least 20 years. I feel my reputation is that of a cooperative and accessible person who is willing to dedicate a substantial amount of my personal and professional time for the purposes of liasoning with other counsel.

C.  **PROFESSIONAL EXPERIENCE IN MASS TORT LITIGATION**

The following provides highlights of my personal experience in various mass tort cases:

- In the Tobacco Litigation, my primary role was to develop and articulate the

3

- damage model for the State of Texas, culminating in a $17 billion settlement.
- In the BP Texas City Explosion Litigation, I personally performed the above-described activities.
- In the Vioxx Litigation, I was part of a consortium that handled over 2,000 cases. Our Consortium coordinated discovery of these cases, we tried a case in New Orleans to a verdict, and were actively involved in pre-trial and settlement issues.
- In the Diet Drug Litigation, my Firm and I handled roughly 6,500 individual cases, have deposed and presented for deposition literally thousands of plaintiffs, doctors, experts, and other witnesses, as well as successfully trying to verdict dozens of cases in Philadelphia.
- In the Welding Rod Litigation, my firm and I handle roughly over 5,000 cases, have been involved in intensive discovery, and tried several cases to a verdict.
- In the Asbestos Litigation, I have personally tried numerous cases to large verdicts, as well as personally negotiated settlements aggregating in the hundreds of millions of dollars.
- We are also involved in mass torts involving other products including PCB, vaccines containing Thimerosal, lead and benzene exposure, MTBE contamination, Paxil, and many other mass actions.
- I graduated first in my class from Baylor Law School and was Editor-in-Chief of the *Baylor Law Review*. I was Baylor Lawyer of the Year in 2002, and President of the Texas Trial Lawyers' Association in 2004.
- I am board certified in personal injury trial law, as are many lawyers in my Firm.
- Both I, personally, and my Firm have the economic resources necessary to prosecute these cases, as well as serve on the PSC.

### D.   SUMMARY

I believe my education, training, and experience, together with the capabilities of my law firm, provide me with a unique perspective that will assist the thousands of economic loss plaintiffs in this MDL. For most economic loss plaintiffs the most crucial issue is time. I personally will dedicate the time and resources necessary to ensure that economic loss cases are moved forward as quickly as possible.

I fully understand the heavy responsibility that serving on the PSC will entail, and I do not undertake to make this application lightly. I would be honored to serve on the PSC, and will commit all necessary resources to ensuring I faithfully discharge my duties as a member of the PSC. I believe my extensive experience in mass tort cases in a cooperative fashion speaks for itself, and supports my belief I am well qualified to serve. I thank the Court for considering my application.

Respectfully submitted:

John Eddie Williams, Jr.

        Williams Kherkher Hart Boundas, LLP
        8441 Gulf Freeway, Suite 600
        Houston, Texas 77017
        Tel:  713.230.2200
        Fax: 713.643.6226

## **CERTIFICATE OF SERVICE**

      I hereby certify that this application has been served on all counsel of record via the Court's CM/ECF system.

                                            /s/