



# OIL (OPA) POLLUTION ACT

*By* Joseph M. Bruno, Bruno & Bruno, LLP
and Melissa A. DeBarbieris

## I. Overview

On March 24, 1989, the *Exxon Valdez* tanker hit Prince William Sound's Bligh Reef, spilling an estimated 10.8 million US gallons or 250,000 barrels of crude oil. As a result of the oil spill, 1,300 miles of coastline and 11,000 square miles of ocean were impacted. After unanimous passage by the United States Congress, the Oil Pollution Act of 1990 ("OPA") was signed into law on August 18, 1990, largely in response to rising public concern following *Valdez*. Under traditional maritime/admiralty law, damages were limited to recovery for only things the oil touched. *See Louisiana ex rel. Guste v. M/V Testbank*, 752 F.2d 1019, 1021 (5th Cir. 1985). Under the OPA, no such limitation exists. The Oil Pollution Act significantly augments claims that were allowed under the Clean Water Act by broadening the range of compensatory damages previously disallowed by traditional maritime/admiralty law and created a new comprehensive compensation scheme. The Act also provides for strict liability for the Responsible Party ("RP") and designates the United States Coast Guard as the sole source in determining who the responsible party is.

## II. The Responsible Party and Damages

The OPA names the responsible party or parties as the "vessel or a facility from which oil is discharged . . . into or upon the navigable waters or adjoining shorelines or the exclusive economic zone is liable for the removal costs and damages". 33 U.S.C § 2702(a) (2005). The damages recoverable by a claimant from the Responsible Party are the following: natural resources, real or personal property, subsistence use, revenues, profits and earning capacity, public services. § 2702(b)(2). In the instant matter, the United States Coast Guard has named BP, PLC as the RP. As such, they are strictly liable for compensating qualifying claimants under the OPA without any further determination of liability.

## III. Limits on Liability

The OPA states an offshore facility (except deepwater port) is generally liable for the total of all removal costs, plus $75 million. 33 U.S.C. § 2704(a)(3) (2005). The OPA eliminates any cap on liability if the incident was proximately caused by the gross negligence, willful misconduct, or the violation of an applicable federal safety, construction, or operating regulation. § 2704(c)(1). BP has publicly stated they would not seek limitation on liability, and would honor all "legitimate claims" presented. For the first time, the White House has confirmed this statement stating "BP has reaffirmed its commitment to pay all removal costs and damages that it owes as a responsible party. It will not assert any liability cap under OPA to avoid liability." According to the White House, BP has agreed to set aside $20 billion in U.S. assets to pay claims for damages resulting from this spill. To assure the escrow account commitment will be honored, BP will contribute $5



billion a year for four years, with the first $5 billion to be paid in 2010. According to the press release, BP will voluntarily contribute an additional $100 million to a foundation for the unemployed oil rig workers. This funding is in addition to the $500 million previously pledged for the ten-year Gulf of Mexico Research initiative to improve understanding of the impacts of and ways to mitigate oil and gas pollution.

After the June 16 meeting between BP chairman, Carl-Henri Svanberg, and President Barack Obama, it was announced that the President and BP chose Ken Feinberg of Feinberg & Rozen to serve as the independent claims administrator of the $20 billion fund. According to the Associated Press, Feinberg will have a claims process established in 30 to 45 days. Feinberg's plan would "guarantee that people making claims in the future would receive them within 30 to 60 days of submitting it." Under the


proposed Feinberg plan, denied claims may appeal to a panel of three judges; however, the identities of the judges have not been revealed by the White House. If claimants are still dissatisfied, they may pursue litigation or pursue a claim under the Oil Spill Liability Trust Fund. Filing a claim with Feinberg does not waive any legal rights available to the claimants. Furthermore, all claims administered by Feinberg will be binding on BP.

This is welcome news. To date, BP has paid less than 56 percent of claims submitted. That translates to only $201 million out of an estimated $360 million having been paid. The House Judiciary Committee also revealed that no payments were made in the first two weeks following the explosion, and BP has yet to make a single payment for bodily injury or diminished home property value. The consistent underpayment of claims is unsurprising. BP and its adjuster have effectively convinced claimants to pursue mediation directly with BP without the benefit of a lawyer. Moreover, the individual claims are likely to be for small amounts and claimants may be further persuaded to pursue mediation on their own. This tactic will result in claimants ultimately losing their right to a more favorable settlement.

### IV. Condition Precedent

Filing an OPA claim with the RP is a condition precedent to filing suit. In *Gabarick v. Laurin Marine*, the U.S. District Court for the Eastern District of Louisiana held that 33 U.S.C § 2713 creates a mandatory condition precedent barring all OPA claims unless and until a claimant has presented her claim in accordance with the statute. A claimant must file a claim with the Responsible Party which informs the Responsible Party of the nature and extent of harm or of the relief requested and that 90 days have passed from the date that the claim was presented before a suit can be filed. Failure to comply with § 2713's mandatory condition precedent requires that a lawsuit making an economic loss claim against a responsible party be dismissed without prejudice. *Gabarick v. Laurin Marine (America), Inc.*, 623 F.Supp.2d 741 (E.D. La. 2009). The Court would be well served to establish guidelines as soon as practicable to enable the parties to understand whether a claim satisfies the presentment requirement.

### V. The Oil Spill Liability Trust Fund

The OPA also created the national Oil Spill Liability Trust Fund, which is available to provide up to $1 billion per spill incident, "used for costs not directly paid by the polluter." "OSLTF Funding for Oil Spills", NPFCPUB 16465.2 (January 2006). This fund is available to the President and state officials for payment of removal costs, among other things. 33 U.S.C. §2712 (2009). According to the Code of Federal Regulations, the Governor of a state or the President may waive the OPA presentment requirement to the RP by first presenting a claim to the Oil Spill Liability Trust Fund for removal costs incurred by the state or federal government. 33 C.F.R. § 136.103(b)(3).

### VI. State Law Claims

The OPA provides the exclusive federal remedy for oil pollution liability; however, it does not preempt state law claims. 33 U.S.C. § 2718(a)(1)(A) provides that "[n]othing in this Act . . . shall affect, or be construed or interpreted as preempting, the authority of any State or political subdivision thereof from imposing any additional liability or requirements with respect to the discharge of oil or other pollution by oil within such state." § 2718(a)(1)(A) (2005). Moreover, the court in *Tanguis* stated "the OPA does not preempt state law in the area of oil spill liability and compensation." *Tanguis v. Westchester*, 153 F.Supp.2d 859, 863 (E.D. La. 2001).

### 1. Florida

In June, the Florida Supreme Court ruled that under Florida state law a commercial fisherman has a right to recover damages for loss of income and other economic losses proximately caused by the negligent release of pollutants despite the fact that the fisherman sustained no property damage as a result of the pollution. Furthermore, the Court held that commercial fishermen were owed a duty of care by Mosaic that was not shared by the public as a whole, as they have "a protectable economic expectation in the marine life that qualifies as a property right." *Curd v. Mosaic Fertilizer, LLC*, SC08-1920 (Fla. 17 June 2010).

### 2. Louisiana

In an effort to compliment federal law, the Louisiana legislature enacted the Oil Spill Prevention and Response Act (OSPRA). The OSPRA was enacted with the intent to support and complement the Oil Pollution Act of 1990 and other federal law, specifically those provisions relating to the national contingency plan for cleanup of oil spills and discharges, including provisions relating to the responsibilities of state agencies designated as natural resources trustees. *See* La. Rev. Stat. Ann. 30:2453 (2009). While the OSPRA recognizes that it does not preempt OPA, it opens the door for state law claims similar to those available under OPA.

### VII. The OPA Preempts General Maritime Law

The OPA's "savings provision" provides "[e]xcept as otherwise provided in this Act, this Act does not affect admiralty or maritime law; or the jurisdiction of the district courts of the United States with respect to civil actions under admiralty and maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 33 U.S.C. 2751(e).

The United States District Court for the Eastern District of Louisiana has held that the OPA preempts general maritime law claims that are recoverable under the OPA. *Gabarick,* 623 F.Supp.2d 741. Further, the *Gabarick* Court found that the intent of Congress was to encourage settlement and reduce litigation in oil spill cases through the enactment of comprehensive federal legislation that provides "cleanup authority, penalties, and liability for oil pollution." *Id.* The Eastern District of Louisiana affirmed that the "OPA 90's admiralty and maritime law savings clause evidences its preemption in that it permits the admiralty and maritime law claims 'except as otherwise provided in [the] Act.'" *In re Settoon Towing LLC*, 2009 WL 4730971*3(E.D. La. 2009), see also 33 U.S.C.A. 2751.

### VIII. Does the OPA Preempt Punitive Damage Claims?

Two courts have held that punitive damages are not allowed under the OPA. The First Circuit in *South Port Marine, LLC,* denied punitive damages based on the reasoning that Congress intended the OPA to be the sole federal law applicable in the area of maritime pollution. As the OPA sets forth a comprehensive list of recoverable damages, from which punitive damages is noticeably absent, Congress specifically intended to exclude punitive damages. *South Port Marine, LLC v. Gulf Oil Ltd.*, 234 F.3d 58 (1 Cir. 2000).

*Clausen* affirms the First Circuit denying an award of punitive damages to the owner of an oyster bed following an oil spill. The Court held that punitive damages were precluded under any general maritime or admiralty law theory for any claim for which the OPA could provide relief. *Clausen v. M/V New Carissa*, 171 F.Supp.2d 1127 (D. Or. 2001). The issue is not settled in the Fifth Circuit.

### IX. General Impressions

This litigation is not unlike the Katrina Homeowner's Claim litigation. From the outset, our firm encouraged homeowners to get the best offer possible from their insurance companies. When, not if, the homeowners were unhappy with the evaluation of their claim, our firm offered assistance to get a resolution more favorable to the homeowner.

When handling a BP claim, counsel must begin with a good evaluation of the nature and type of the claim. Counsel must be patient, allowing the claimant to attempt a favorable resolution with BP. Everyone involved in this litigation knows BP will not offer to compensate the full value of a claim. Therefore, the claimant will need representation.

The main problem will be "presentment." As required by OPA as a condition precedent to filing suit, failure to allow the tolling of the 90 days after presentment will result in dismissal of the suit.

One of the main issues that Mr. Feinberg must resolve is that his claim handling procedure cannot delay or hinder a person's ability to file a lawsuit 90 days after the initial presentment to BP.

In order to make sure the claim has been properly presented, it is suggested that excellent adjustment of the claim at the outset will ensure there is no impediment to litigation.

A form detailing the proper presentment process may be downloaded at our firm's website, www.brunobrunolaw.com.

> THIS IS WELCOME NEWS: TO DATE, BP HAS PAID LESS THAN 56 PERCENT OF CLAIMS SUBMITTED. THAT TRANSLATES TO ONLY $201 MILLION DOLLARS OUT OF AN ESTIMATED $360 MILLION HAVING BEEN PAID.