UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: OIL SPILL BY THE OIL RIG | MDL NO. 2179 |
| "DEEPWATER HORIZON" IN THE | DIVISION J-1 |
| GULF OF MEXICO ON APRIL 20, 2010 | |

THIS DOCUMENT RELATES TO ALL CASES

APPLICATION FOR MEMBERSHIP ON THE PLAINTIFFS STEERING COMMITTEE

Respectfully Submitted:

WALTZER & WIYGUL

| | |
|---|---|
| Robert Wiygul (LA #17411) | Joel Waltzer (LA #19268) |
| 1011 Iberville Drive | 3715 Westbank Expressway, Ste. 13 |
| Ocean Springs, MS 39564 | Harvey, LA 70058 |
| Office: (228) 872-1125 | Office: (504) 340-6300 |
| Fax: (228) 872-1128 | Fax (504) 340-6330 |
| robert@waltzerlaw.com | joel@waltzerlaw.com |

1

The claims consolidated in this MDL docket present a unique confluence of traditional mass tort law, emergency response law and both public and private environmental law claims. Familiar tort issues are inextricably intertwined with precedent setting environmental issues, like impact restoration, natural resource degradation and regulatory reform, all playing out in the ultra-rare context of a Unified Command response. Mississippi lawyer Robert Wiygul is uniquely qualified with environmental law and incident response expertise and should be appointed to the Plaintiff Steering Committee ("PSC").[1]

1. Robert Wiygul Has Unique Subject Matter Expertise

Waltzer & Wiygul (attorneys Robert Wiygul, Joel Waltzer, and Clay Garside) is the only private Gulf Coast firm within the area of impact with a significant "public side" environmental practice prior to the spill.[2] For decades, Robert Wiygul has successfully litigated many of the same environmental issues found herein, including the Clean Water Act, National Environmental Policy Act, Endangered Species Act, Administrative Procedure Act and wetlands injunctive relief cases.[3] W&W is also experienced litigating disaster response, having provided award winning representation to a wide coalition of non-profit groups and communities concerned with hurricane debris disposal practices in the aftermath of Hurricane Katrina.[4]

---

[1] While undersigned focuses on applicant's environmental law expertise, W&W also demonstrates experience with class actions. W&W was selected lead counsel by Judge Berrigan in *Thompson, et al v. Shaw Group*, EDLA No. 04-1685 and is lead counsel in *Walker, et al v. AMID Metro Partnership et al*, Orleans Parish CDC, #2007-14794, "H."

[2] "Public law" environmental cases as used herein rely on environmental statutes and seek broad injunctive relief to compel policy objectives and statutory and regulatory compliance. The "private" side of environmental law is primarily concerned with financial compensation.

[3] W&W are frequently asked to speak at seminars and at law schools on topics involving public environmental law. Mr. Wiygul has several published articles, including one written seventeen years ago on the environmental law of offshore drilling (OCSLA). Before W&W, Wiygul served as regional director with the Sierra Club Legal Defense Fund. Mr. Waltzer served on the Committee on Environmental Affairs of the Louisiana Law Institute, and testified before state and federal legislative bodies on natural resource and Stafford Act debris removal issues. All W&W attorneys are working together on this case.

[4] As a result of these efforts, since Hurricane Katrina, W&W attorneys were awarded the Tulane Environmental Lawyer of the Year award, the Delta Chapter of the Sierra Club's Pelican Award, Louisiana Environmental Action Network's Scott Welsh award, as well as recognition from the Vietnamese community and City Business' 50 Top Lawyers list for 2008.

As it relates to this spill, Wiygul represents every major environmental group with a case, including the Gulf Restoration Network, Sierra Club, Center for Biological Diversity and National Resources Defense Council. One such suit is filed to enjoin BP's reliance on illegal regulatory waivers, including disaster planning permit requirements like worst case spill and blowout scenario analysis.[5] Another seeks to enjoin reliance on BP's regional oil spill response plan, which grossly over-estimated its ability to remove the oil spilled from a worst case discharge.[6] These suits directly relate either to the sinking of the Deepwater Horizon or the anemic response and are filed to ensure this does not happen again.[7]

Other environmental suits and notice of intent letters have been filed. Through telephone conferences and face to face meetings, Robert Wiygul led a time consuming national effort to organize and coordinate the legal response of the NGO environmental community, to assure that claims were not at cross-purposes, that work was not redundant and that instances of issues conflict are identified and resolved to the greatest extent possible. The involved environmental NGO community knows of and is broadly supportive of the instant application.

Mr. Wiygul's efforts have also resulted in changes without need for litigation.  Early on, W&W helped its constituent Vietnamese community gain interpreters when dealing with BP's interim claims offices.  Waltzer, Wiygul and Garside trained Asian volunteer lawyers and law students to assist pro bono community members in applying for emergency, interim payments. Finally, as a result of his years long natural resource law background, Mr. Wiygul was approached by and helped the scientific academic community to expose BP's attempts squelch what science is available to the public through confidentiality agreements.

---

[5] *Gulf Restoration Network and Sierra Club v. U.S. Dept. Interior*, USDC-EDLA; No. 2:10-cv-01497.
[6] *Gulf Restoration Network and Sierra Club v. Salazar*, USDC-EDLA; No. 2:10-cv-01630.
[7] As a result of these efforts, expertise and the work being featured in national publications, Waltzer and Wiygul has been asked to teach other lawyers emergency response and environmental law relevant to BP.

3

2.      Robert Wiygul Represents Clients Groups Deserving Separate Representation on the PSC

In addition to the non-profit environmental community discussed above, Waltzer & Wiygul represent three distinct client constituents in this matter that are also uniquely deserving a seat in determining the course of this litigation: Native American tribes, the Vietnamese fishing community and the largest, most affected private landowner in this spill.

Together with tribal member Patty Ferguson, director of ASU's Indian Law Clinic, W&W is the only firm to represent tribal entities and currently represents the two tribes whose cultural properties, burial grounds and traditional fisheries are most affected, the Pointe au Chien Indian Tribe (PACIT) in Terrebonne Bay and the Grand Bayou Chawasha in Barataria Bay. The Oil Pollution Act of 1990 confers broad remedial rights on Native American tribes, to correct the legal pounding taken by Alaskan tribes after the Exxon Valdez. Tribes are afforded natural resource trustee status on par with the interests of a state government, but limited to tribal territories. W&W has used this scheme to successfully negotiate with Unified Command to set up PACIT as its own forward operating base, entrusted to protect the tribe's historic sites and burial grounds. Likewise, W&W has worked out a cooperative memorandum of agreement between the tribe and federal government for the protection of historic, cultural properties. The interests of these tribes stand alone and must be represented when crafting litigation strategies.

For over 15 years, Waltzer & Wiygul has served Gulf Coast Vietnamese fishing communities. W&W has Vietnamese paralegals in Robert Wiygul's Ocean Springs office, Clay Garside's New Orleans East office and Joel Waltzer's Harvey office. Each are located at centers of Vietnamese daily life. W&W represents a great many Vietnamese in this litigation and filed a Mississippi class action, *Trieu v. BP*, 1:10-cv-00177-LG-RHW, in this case.

From shuckers to large business owners, hundreds more come for simple help submitting claims. We will continue to help Vietnamese community members submit claims and continue to help the volunteer lawyers assist them, regardless of whom that person ultimately hires.

Finally, Robert Wiygul has directly serviced over nine miles of beach just west of Grand Isle and 35,000 acres of wetlands which lay behind on behalf of a landowning trust. As a result of this representation, Robert Wiygul has developed good working relations with BP, the Coast Guard and federal and state trustee agencies. For example, W&W successfully negotiated an access agreement with counsel for BP and its contractors, that provides BP access to the property but conditions it on sharing of testing plans and protocols and the test results themselves. As part of a daily conversation, the federal agencies are likewise compliant. Also a first, BP has paid for some testing and even some fees as a response cost. Wiygul's understanding of incident response, the roles of the parties and counsel and what are reimbursable costs will benefit the PSC, the class and the Court.

3.   Robert Wiygul Has Sufficient Resources to Participate and a Record of Cooperation.

Since the beginning, Robert Wiygul and Joel Waltzer have actively shared their environmental law and incident response expertise with plaintiffs' counsel and liaison, making substantive contributions to written motions already submitted and supplying arguments for counsel. Likewise, W&W compiled and wrote a comprehensive outline on the incident response and environmental laws relevant to the spill. The material was distributed as course material in an ABA seminar and is now freely posted on Waltzer & Wiygul's BP Oil Spill website, http://bpoilspill.us/category/library/ for the benefit of all. Finally, W&W has the relationships and ability to provide human and financial resources as needed to meet the demands of this position, if we are so honored by this Court.