IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

|  |  |
|---|---|
| In re: Oil Spill by the Oil Rig DEEPWATER HORIZON in the Gulf of Mexico on April 20, 2010 ) ) ) ) ) | MDL Docket No. 2179<br><br>Section: J |
| This Document Relates to: No. 10-1497, No. 10-1630 ) ) ) ) ) ) | Judge Barbier<br>Mag. Judge Shushan |

**Reply Memorandum in Support of Federal Defendants' Motion to Sever Cases
Brought Pursuant to the Administrative Procedure Act or,
In the Alternative, to Assign Such Cases to Separate Tracks**

Introduction

Federal Defendants in the above-numbered cases, Gulf Restoration Network Inc. et al. v. Salazar et al., No. 1497, filed May 18, 2010 ("Gulf Restoration Network I"),[1] and Gulf Restoration Network Inc. et al. v. Department of the Interior et al., No. 1630, filed June 3, 2010 ("Gulf Restoration Network II"), have moved to sever these two APA cases from this multi-district litigation ("MDL") proceeding, In re: Oil Spill by the Oil Rig DEEPWATER

---

[1] Plaintiffs in two separate pleadings have essentially conceded that the claims in Gulf Restoration Network I are moot based on a new Notice to Lessees issued by BOEMRE on June 18, 2010. See In re: Oil Spill, No. 10-2179 (E.D. La.), Pls.' Resp. to Intervenors' Mot. to Deconsolidate and Transfer the Case to Its Original Judge, filed Sept. 7, 2010, Dkt. #175, at 1-3; In re: Oil Spill, No. 10-2179 (E.D. La.), Pls. Gulf Restoration Network, Inc.'s and Sierra Club, Inc.'s Resp. to Defendants' Motion to Sever ("Pls.' Resp."), filed Sept. 21, 2010, Dkt. # 314, at 7 n.5. Thus, this reply focuses primarily on the challenges asserted in Gulf Restoration Network II to BP's 2009 Gulf of Mexico Regional Oil Spill Response Plan ("OSRP").

1

HORIZON in the Gulf of Mexico on April 20, 2010, No. 10-2179 (E.D. La.) (hereinafter "In re: Oil Spill"), or in the alternative to assign them to separate tracks and exempt them from the case management requirements that apply to the other MDL cases. In re: Oil Spill, No. 10-2179 (E.D. La.), Fed. Defs.' Mot. to Sever Cases Brought Pursuant to Administrative Procedure Act or, in the Alternative, to Assign Such Cases to Separate Tracks ("Fed. Defs.' Mot."), filed Sept. 7, 2010, Dkt. #174.  Federal Defendants explained in the motion to sever that the two APA cases differ from the other MDL cases in that they seek to invalidate actions by federal agencies, and are brought pursuant to the APA's limited waiver of sovereign immunity for non-monetary claims against the government.  These differences make it improper to include the two cases in the omnibus discovery procedures that will likely be necessary in the MDL action, inefficient to subject them to case management requirements that are tailored to the private party tort actions, and unfair to assign the Federal Defendants with any portion of the costs for such procedures.

Plaintiffs filed a response to the motion to sever opposing the motion. Pls.' Resp., Dkt. #314.  Plaintiffs argue that the motion should be denied because (1) the administrative record for the approval of the challenged OSRP, which has not yet been lodged, will require supplementation based on post-approval reports and statements (including some by MMS employees) regarding alleged shortcomings in the approval process; (2) British Petroleum ("BP") said in its motion to intervene in Gulf Restoration Network II that findings in the APA case may be relevant to its liability in the tort cases; and (3) the regulatory claims against the Federal Defendants can be appropriately handled in the MDL as part of a "pleading bundle" for injunctive claims.  As discussed below, none of these arguments is persuasive, and none is a reason to deny the procedural relief sought in Federal Defendants' motion to sever.

2

<u>Argument</u>

1. **The APA Cases Will be Reviewed Based on the Administrative Records Supporting the Challenged Agency Decisions and Thus Are Fundamentally Different Than the Other MDL Cases.**

Plaintiffs argue that the APA cases should remain in the MDL because the Court will need to review materials outside the administrative record in these cases. They speculate that the records will be supplemented because Federal Defendants will not be entitled the presumption of regularity ordinarily accorded agency decision makers under the APA. Significantly, Plaintiffs acknowledge, citing Supreme Court precedents that discuss this principle, that in an APA case, review is based on the administrative record to determine whether the agency made a reasoned decision. Pls.' Resp., Dkt. #314, at 2-3, <u>see also</u> Fed. Defs.' Mot., Dkt. #174-1, at 7-8. That form of review alone, markedly distinct from cases that are prepared and tried based on standard discovery and evidentiary principles, makes Plaintiffs' APA cases inappropriate for inclusion in the MDL. Moreover, Plaintiffs' assumption (wholly unfounded at this early stage of the cases) that the records in the two cases will have to be supplemented raises issues concerning the scope of an administrative record under the APA, which further distinguishes the two cases from the others in the MDL.

Plaintiffs' assumption that judicial review of documents outside the records will occur in the two cases is premature because neither record has been lodged and thus, there is no basis even to hypothesize about a need to supplement with extra-record documents.[2] Courts do not

---

[2] Similarly, Plaintiffs' speculative assertions that the administrative records in the APA cases will have to be supplemented with documents protected under the deliberative process privilege – a privilege that is itself unique to government defendants – is no reason to include the cases in the MDL. <u>See</u> Pls.' Resp., Dkt. #314, at 5-6. Rather, it illustrates further that record supplementation issues may be resolved only after the records are lodged and that these record

make such determinations in a vacuum. For example, they examine questions of "good faith factfinding" – which plaintiffs appear to raise as a basis for extra-record review – in light of agencies' "stated reasons." Spiller v. White, 352 F.3d 235, 241-42 (5th Cir. 2004) ("Although it is true that agencies are expected to engage in good faith fact-finding, when their findings are challenged as arbitrary and capricious, the agencies' actions are judged in accordance with their stated reasons."). Further, Plaintiffs' asserted reasons for supplementation are legally erroneous.[3] In APA cases, judicial review of documents outside the record is permitted only under certain narrowly defined circumstances that are not present here. See Medina County Envtl. Action Ass'n v. Surface Transp. Bd., 602 F.3d 687, 706 (5th Cir. 2010) (listing circumstances in which supplementation may be permitted).

In addition, the law in this jurisdiction, as elsewhere, requires Plaintiffs to show that an exception to record review applies. Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985) ("[I]f the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation.") (emphasis added); Medina County Envtl. Action Ass'n., 602 F.3d

---

review cases are ill-suited for the MDL.

[3] Plaintiffs' response brief fails to address relevant cases from this jurisdiction. The Fifth Circuit cases Plaintiffs do cite are inapposite. In Sierra Club v. Peterson, 185 F.3d 349, 357 & 369 (5th Cir. 1999), the agency had produced no record in support of the challenged decision, whereas in each of these cases, a record will be lodged in due course. Citizen Advocates for Responsible Expansion (CARE) v. Dole, 770 F.2d 423 (5th Cir. 1985) refutes Plaintiffs' position. In that case the trial judge, after a bench trial, ruled that the Department of Transportation's decision not to prepare an EIS for a highway project was reasonable based on evidence adduced during the trial. Id. at 431. The Court of Appeals reversed, emphasizing that "[s]tudies, statements, opinions, reports, rationalizations, or other assertedly relevant and non-duplicative evidence made or offered after the decision not to prepare an EIS has been reached to support that decision . . . ordinarily cannot constitute part of the administrative record." Id. at 434. The panel's apparent disapproval of the procedures used by the trial court is consistent with cases holding that review

at 706 ("Supplementation of the administrative record is not allowed unless the moving party demonstrates 'unusual circumstances justifying a departure' from the general presumption that review is limited to the record compiled by the agency."). Although Plaintiffs do not address the many cases from this Circuit cited in Federal Defendants' motion, even the case Plaintiffs rely on acknowledges that "[a]bsent clear evidence to the contrary, a presumption exists that the agency has properly designated the administrative record." New York v. Salazar, 701 F.Supp.2d 224, 235 (N.D.N.Y. 2010) (emphasis added).

Further, the continued consolidation of the APA cases in the MDL would not promote judicial economy because the claims and records in the APA cases will be very different than the claims and relevant evidence in the other MDL actions. The example Plaintiffs provide illustrates these differences. Plaintiffs refer to unspecified "environmental sampling data sought from the United States," Pls.' Resp., Dkt. #314, at 7, and make a conclusory assertion that the data will be relevant to their claims that the OSRP approval decision was arbitrary and capricious. The motion to which Plaintiffs presumably refer, Dkt. #211, is a motion filed by the tort plaintiffs that seeks leave to serve subpoenas on any "governmental bodies" in order "to ensure appropriate preservation of potential evidence – in the form of weathered oil, water, dispersants, soil, tissues and air – that is undergoing constant change, in and around the Gulf of Mexico." Id. at 2. Such data would have no bearing on Plaintiffs' APA challenge to the OSRP approval decision, which is subject to review based on the record available to the agency at the

---

in an APA case should be based solely on the administrative record.

time it approved the OSRP, see Fed. Defs.' Mot., Dkt. #174-1, at 7-8, not data that have become available since the Deepwater Horizon spill.[4]

Even if it were possible for this Court, without the benefit of the administrative records for the challenged decisions, to rule on the adequacy of those records, none of the circumstances or documents relied upon by Plaintiffs is a basis for departing from the rule that review is limited to the administrative record, much less a reason for including the cases in the MDL. For example, Plaintiffs cite testimony and reports issued in 2010 that critically examine MMS's operations. See Pls.' Resp., Dkt. #314, at 4. But such documents, created long after the decisions challenged in Plaintiffs' complaints, would not be relevant to those decisions or a basis for allowing extra-record evidence without some nexus to the decisions – which is nowhere alleged.

In sum, the parties agree with the statutory principle that APA cases ordinarily are reviewed based on administrative records lodged by the agency. This alone distinguishes the APA cases from the other MDL cases and warrants severing them. Plaintiffs' assumption that contested issues will arise involving the content of the records, rather than minimizing these differences, instead underscores the unique nature of record review cases that distinguishes the two APA cases from the other MDL actions. Finally, any assumption about supplementation of

---

[4]To the extent Plaintiffs seek the results of scientific sampling by the National Oceanic and Atmospheric Administration (NOAA), the results of that sampling are available to them, as they are to the general public, on government websites.
See, e.g., http://www.geoplatform.gov/gulfresponse/; http://www.noaa.gov/sciencemissions/bpoilspill.html.

the records is premature at this stage, when Federal Defendants have neither answered the complaints nor lodged the records.[5]

## 2. The APA Cases Do Not Share Common Characteristics with the State-Law Tort Cases in the MDL.

Plaintiffs' second reason for opposing severance is that non-party BP, in its motion to intervene in Gulf Restoration Network II, argues that the OSRP case and the other MDL cases share common characteristics. Pls.' Resp., Dkt. #314, at 6. This assertion does not withstand scrutiny. As Federal Defendants explained in their motion, there are salient distinctions between the APA cases and the tort cases in the MDL docket, given the unique role of government employees and agencies as litigants, and the substantive and procedural limitations attached to the waiver of sovereign immunity contained in the APA. In Gulf Restoration Network II, Plaintiffs allege that the government's approval of BP's OSRP in July 2009 was arbitrary and capricious.[6] They do not challenge any aspect of actual operation of the Macondo well or assert legal damages as a result of the Deepwater Horizon explosion or oil spill, which occurred in April 2010. The Gulf Restoration Network cases are actions only for injunctive and declaratory relief against federal defendants – not damages (which are not authorized under the APA). Plaintiffs' response fails to rebut any of these compelling reasons why the APA cases are fundamentally different from the other actions in the MDL and should be severed.

Plaintiffs counter that "BP's submission and the approval of a grossly exaggerated OSRP is [sic] relevant to spill liability claims raised in other cases in this proceeding such as failure to

---

[5] Moreover, Plaintiffs have indicated that the scope of their lawsuit continues to evolve. Pls.' Resp., Dkt. #314, at 7 (discussing Plaintiffs' plans to amend complaint again to add NEPA claim).

[6] In Gulf Restoration Network I, Plaintiffs allege that a Notice to Lessees regarding Outer

7

contain the spill claims, cleanup and worker exposure claims, and Corexit (dispersant) issues." Pls.' Resp., Dkt. #314, at 6.[7] Plaintiffs misstate the scope of the APA action and its relevance to the MDL. In Gulf Restoration II, the Court will address whether the agency's approval of the OSRP was arbitrary and capricious based on information available to government decision-makers at the time the decision was made. Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 420 (1971); CARE v. Dole, 770 F.2d at 434 ("[T]he administrative record the court must review . . . is the record in existence at the time the agency committed itself to a particular course or decision."). Plaintiffs quote from BP's pleading, in which BP asserts that "[a]ny precedential effect of an adverse judgment or factual findings related to BP's Regional OSRP would potentially impair BP's ability to protect its interest in related pending and future litigation against BP, as well as potential regulatory matters."[8] In re: Oil Spill, No. 10-1156 (E.D. La.), BP Exploration & Production, Inc.'s Motion to Intervene, filed Aug. 6, 2010, Dkt. # 475-1 ("motion to intervene"), at 9.  The OPA itself, however, precludes reliance on agency approval of a response plan as a defense to an operator's liability under state law. The Act provides that "[t]he owner or operator of a tank vessel, nontank vessel, offshore facility, or onshore facility may not claim as a defense to liability under title I of the Oil Pollution Act of 1990 [33 U.S.C.A. § 2701 et seq.] that the owner or operator was acting in accordance with an approved response plan." 33 U.S.C. § 1321(j)(5)(H).

---

Continental Shelf plans violated the APA and NEPA.
[7] To the extent that BP's motion to intervene relies on "findings of fact" in the OSRP case that may be used in other MDL cases, that reliance is misplaced because the Court's role in an APA case is not to find facts, but to pass on the adequacy of the agency's fact-finding. See Fed. Defs.' Mot., Dkt. #174-1, at 6-8 (citing cases).
[8] Although Plaintiffs' Complaint asserts claims based solely on the OPA, Plaintiffs' response, for the first time in the context of this litigation, cites (in a footnote) the Outer Continental Shelf

Plaintiffs have not identified any shared question of law or fact that the APA cases have in common with the MDL cases. Even if they could do so, Plaintiffs have not explained why normal principles of collateral estoppel would not be sufficient to address any common issues, or why keeping the cases in the MDL would be a more effective vehicle for addressing such issues.

**3. Consolidation of The APA Cases with the MDL Cases is Unfair to Federal Defendants Because They May Become Subject to Procedures and Costs That are Inapplicable in APA Cases.**

The third reason Plaintiffs cite for opposing Federal Defendants' motion is that the regulatory claims are appropriately included in the MDL as part of a "pleading bundle." Plaintiffs otherwise make no meaningful response to Federal Defendants' point that allowing the APA cases to remain in the MDL will result in inefficiency, inconvenience, and prejudice to the Federal Defendants. Undersigned counsel would be tasked with monitoring and in many cases responding to lengthy pleadings related to discovery, trial preparation, and class-certification procedures that are beyond the scope of APA record review cases. This complex and prolonged litigation management would be inefficient and inconsistent with the APA, which provides for the streamlined resolution of cases challenging agency action by applying the summary judgment process to comparatively discrete records. An order requiring the United States to bear any share of costs for discovery conducted by other litigants could impermissibly "assess monetary liability against the United States for what are normal incidents of litigation between private parties." United States v. Idaho ex rel. Director, Idaho Dept. of Water Res., 508 U.S. 1, 7-8 (1993). Similarly, it would be improper to subject the government to any share of costs for efforts by liaison counsel, since Federal Defendants are prohibited by statute from accepting

---

Lands Act in support of their claims. See Pls.' Resp., Dkt. #314, at 5 n.3.

outside representation except under narrowly defined circumstances. See 28 U.S.C. § 516 (conduct of litigation on behalf of the United States, federal agency, or employee reserved to Department of Justice attorneys); 5 U.S.C. § 3106 (head of agency may not employ an attorney or counsel for the conduct of litigation in which the United States, an agency, or employee thereof is a party).

For the foregoing reasons, Plaintiffs' opposition to Federal Defendants' motion is groundless, and this Court should sever Gulf Restoration Network I, No. 10-1497, and Gulf Restoration Network II, Case No. 10-1630, from this MDL proceeding or, alternatively, assign them to separate tracks.

Dated: September 28, 2010　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　　IGNACIA S. MORENO
　　　　　　　　　　　　　　　　　　　　Assistant Attorney General
　　　　　　　　　　　　　　　　　　　　Environment and Natural Resources Division

　　　　　　　　　　　　　　　　　　　　*s/ Kristofor R. Swanson*
　　　　　　　　　　　　　　　　　　　　KRISTOFOR R. SWANSON, Trial Attorney
　　　　　　　　　　　　　　　　　　　　Col. Bar No. 39378
　　　　　　　　　　　　　　　　　　　　United States Department of Justice
　　　　　　　　　　　　　　　　　　　　Environment and Natural Resources Division
　　　　　　　　　　　　　　　　　　　　Natural Resources Section
　　　　　　　　　　　　　　　　　　　　P.O. Box 663
　　　　　　　　　　　　　　　　　　　　Washington, D.C. 20044-0663
　　　　　　　　　　　　　　　　　　　　(202) 514-2912/(fax)(202) 305-0506

　　　　　　　　　　　　　　　　　　　　JIM LETTEN
　　　　　　　　　　　　　　　　　　　　UNITED STATES ATTORNEY

　　　　　　　　　　　　　　　　　　　　*s/Peter M. Mansfield*
　　　　　　　　　　　　　　　　　　　　PETER M. MANSFIELD (28671)
　　　　　　　　　　　　　　　　　　　　Assistant United States Attorney
　　　　　　　　　　　　　　　　　　　　Hale Boggs Federal Building
　　　　　　　　　　　　　　　　　　　　500 Poydras St., Ste. 210B
　　　　　　　　　　　　　　　　　　　　New Orleans, LA 70130

Tele: (504) 680-3047  
Fax: (504) 680-3184  
Peter.Mansfield@usdoj.gov

      I hereby certify that on this 28th day of September, 2010, I electronically filed the foregoing REPLY MEMORANDUM IN SUPPORT OF FEDERAL DEFENDANTS' MOTION TO SEVER CASES BROUGHT PURSUANT TO THE ADMINISTRATIVE PROCEDURE ACT OR, IN THE ALTERNATIVE, TO ASSIGN SUCH CASES TO SEPARATE TRACKS, and proposed order, with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to the following counsel of record: Alisa A. Coe, David G. Guest, Monica K. Reimer, Joel Waltzer, and Robert Wiygul.  The CM/ECF system will also send a notice of electronic filing to Interim Liaison Counsel for the consolidated cases: Stephen J. Herman, James Parkerson Roy, Don K. Haycraft, Donald Godwin, Deborah D. Kuchler, Phil Wittmann, and Kerry Miller.

        *s/ Kristofor R. Swanson*  
        KRISTOFOR R. SWANSON, Trial Attorney