UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG | : | MDL-2179 |
| "DEEPWATER HORIZON" in the | : | |
| GULF OF MEXICO, on | : | |
| APRIL 20, 2010 | : | |
| | : | SECTION J |
| | : | |
| THIS DOCUMENT RELATES TO: | : | JUDGE BARBIER |
| | : | MAG. JUDGE SHUSHAN |
| ALL ACTIONS | : | |

..............................................................................................................................

**MEMORANDUM IN SUPPORT OF EX PARTE MOTION FOR
HEARING ON MOTION FOR LEAVE AND RELATED MOTION
FOR CREATION OF SEPARATE GOVERNMENT CASE TRACK**

NOW INTO COURT comes the State of Louisiana ("Louisiana"), through James D. "Buddy" Caldwell, Louisiana Attorney General, and hereby files this Memorandum in Support of Ex Parte Hearing on Motion for Leave and Related Motion for Creation of Separate Government Case Track. Louisiana wishes to update and advise the Court on the results of its efforts to resolve the State's disagreement with Plaintiffs' Co-Liaison Counsel regarding a separate track for government claims. Unfortunately, the discussions have not resulted in a solution which addresses the unique interests and responsibilities of the governmental parties. Accordingly, Louisiana hereby renews its request for the establishment of a separate government track.

After preliminary discussions with Plaintiffs' Co-Liaison Counsel in advance of this Court's initial Pretrial Conference for the MDL proceedings, Louisiana filed its Motion for Creation of Government Case Track and Appointment of Liaison Counsel. (Record Doc 248). During the Initial Conference held on September 16, 2010, following the issuance of the transfer

{*}10/8/2010; 14:21:27

order by the Judicial Panel on Multidistrict Litigation ("JPML"), this issue was briefly discussed. At that time the Court requested that Louisiana confer further with Plaintiffs' Co-Liaison Counsel regarding a potential separate government case track. To that end, undersigned counsel for the State (Allan Kanner and Allen Usry) have spoken, corresponded and met with James Roy and Stephen J. Herman, Co-Liaison Counsel for the Plaintiffs. Despite these efforts, the parties have not reached an agreement sufficient to resolve the concerns raised by Louisiana.

## BACKGROUND

Both the United States, through the Department of Justice ("DOJ"), and Louisiana, through its Attorney General and undersigned counsel, participated in arguments before the JPML prior to consolidation of the Deepwater Horizon cases in this Court. Both took the position that all cases should be before this Honorable Judge in this particular Court. DOJ raised the issue of a separate track for governmental cases. In response to a question from Judge Hayden at the panel hearing, Mr. Kanner indicated on behalf of Louisiana that a single judge could handle both tracks, and agreed that all cases should be transferred here.

Although the JPML ruled in favor of consolidation and transfer to the Eastern District of Louisiana, the issue of separate tracks remains unaddressed. The United States again raised the issue in its Statement of Interest (Record Doc. 222), filed in this Court on September 13, 2010. The State of Mississippi has recently filed a joinder in the request for a government track. (Record Doc. 465). Louisiana, in the instant Motion, reasserts and expands upon its earlier submission requesting the creation of a separate government track. (Record Doc. 248). Multidistrict litigation is not intended to create a situation where government claims are

involuntarily mixed with those of private parties, and subject to the leadership of those parties' counsel.

## ARGUMENT

**1. The Attorney General May Not Acquiesce To The Creation Of A Contingent Fee Scenario Under the Guise of "Common Benefits".**

As this Honorable Court is aware, Louisiana, as a sovereign State of the United States, is the trustee for its natural resources. Under the Louisiana Constitution, "The natural resources of the State, including air and water, and the healthful, scenic, historic, and esthetic quality of the environment shall be protected, conserved, and replenished insofar as possible and consistent with the health, safety, and welfare of the people." Louisiana Constitution, Article IX, Section 1. Louisiana is also Co-Trustee with the federal government for some natural resources.

The Louisiana Supreme Court has ruled that in an environmental case, only the Legislature, not the Attorney General, has authority to give away part of the State's "make-whole" recovery in the form of a contingent fee. *Meredith v. Ieyoub*, 700 So.2d 478, 482-84 (La.1997). During this year's legislative session, a limited contingent fee bill to cover this case was considered and failed to pass. SLS 10RS-1820, Regular Session, 2010, Senate Bill No. 731, by Senator Chaisson. Accordingly, based upon the current state of Louisiana law, the Attorney General may neither authorize nor acquiesce to the creation of a contingency fee. It does not matter that the fee is styled as a "common benefit" assessment. Any "common benefit" assessment against State recoveries by the Plaintiffs' Steering Committee ("PSC") would violate the letter and spirit of state law.[1] On top of this, no court has ever held that a state may be forced, without its consent, to participate in a private party-led MDL process, thereby subjecting

---

[1] No Louisiana state official has approved Co-Liaison's plan.

{*}10/8/2010; 14:21:27

itself to fees payable out of the State's recovery. Louisiana cannot agree to a scenario which will likely lead to such a result.

In an effort to resolve Louisiana's concern that State recoveries not be taxed for attorneys' fees, Louisiana requested that Plaintiffs' Co-Liaison Counsel agree to waive the right to ask the Court for "common benefit" fees to come from the State's recoveries, including any recovery resulting from Louisiana's natural resource damage ("NRD") claims. Plaintiffs' Co-Liaison would not agree to such a waiver.

PSC Counsel should focus their energies on expeditious resolution of the private party claims without any reliance upon obtaining fees from the State's recovery. Further, the State does not need the PSC's common benefit work. Consistent with Louisiana law, the Legislature and Governor are advancing monies to pay hourly fees to its attorneys, as well as its consultants and experts. Considering the size, scope and complexity of the State's claims, it is likely the PSC, if anything, will ultimately borrow from the State's work, as often happens in environmental and antitrust cases.

Finally, even if other state or local government entities request appointment to the PSC and do not object to subjecting their clients to a PSC assessment or control, these requests should not bear on Louisiana's objection to this result. The State of Louisiana and the Attorney General's sovereign obligations are shaped by express legal restrictions. A separate government case track with separate Liaison Counsel is appropriate, so that Louisiana can maintain its sovereignty and its obligation to its citizens as trustee.

### 2. As A Sovereign Entity, Louisiana May Not Delegate Its Litigation To Others Without Maintaining Control.

The Attorney General is the chief legal officer of the State of Louisiana pursuant to Article IV, Section 8 of the Louisiana Constitution and in order to assert or protect any right or interest of the State, he has the authority to institute, prosecute, or intervene in any civil action or proceeding on behalf of the State.  La. Rev. Stat. 13:5036.  The Louisiana Legislature issued a Joint Resolution directing Governor Jindal and Attorney General Caldwell to investigate and prosecute all state claims. HLS 10RS-3588, Reg. Sess. (L.A. 2010) H.R. Con. Res. 192.  This is being done and the Governor's office fully supports the State's efforts to maximize the State's recovery.

Attorney General Caldwell has selected and funded a team of attorneys and experts.  Because of the State's legal obligations, it is far ahead of the private plaintiffs in investigating the evidence of this disaster and preparing the State's claims, which is why the Plaintiffs are seeking to subpoena State files.  The State should not have to apply for and hope to be assigned to a "working group" on its claims.  Only Louisiana can maintain an action for damages to the natural resources within the State's trust.  It is inappropriate that a State or its chief law enforcement officer be required to stand aside and have a private steering committee, not retained by the State, make determinations regarding the State's claims.

It is also inappropriate to suggest that the novelty of "pleading bundles" somehow warrants subsuming State litigation to the direction of private parties.  The practical, legal and sovereignty issues raised by the mixing of government and private claims are significant.  The notion of "bundles" glosses over this fact, in effect sweeping these critical issues under the rug.  In truth, there is no need for a Master Government Complaint, assuming such a thing could be

ordered.[2]  There is also no reason for the Attorney General to have to send proposed pleadings to Plaintiffs' Co-Liaison for approval.  The appropriate course of action, both in terms of practical application and precedent, is to create a government track of cases in light of the different issues and timelines which are implicated.  This is a well-settled concept.  It would allow a Government Liaison to work with the other parties to put together an appropriate case management order for governmental claims.

### 3.  Significant Conflict-Of-Interest Issues Already Exist.

There are significant conflict of interest issues in this matter which, if left unresolved, could have potentially disastrous consequences for the interests of all parties and the course of this litigation.  Private plaintiffs have already sued Louisiana (in State court) and will likely sue the State in this Court.[3]  Furthermore, the PSC has just been authorized by this Honorable Court to issue subpoenas to Louisiana for its environmental sampling and testing data.  While much of the data generated in the context of the State and Federal natural resource damage assessment is already being made available to the public, the State will resist any efforts to obtain its work product and deliberative materials.  A serious conflict of interest would be created for Co-Liaison counsel by these issues alone.  Indeed, it is likely that the PSC's legal ability to continue representing the plaintiffs would be called into serious doubt, potentially requiring the appointment of a new steering committee and drastically setting back the course of this entire litigation.

---

[2] Unlike the thousands of individual private plaintiffs, whose hundreds of class action lawsuits arguably merit a master complaint to the extent theories and interests overlap, there are only six governmental plaintiffs: the United States and five coastal states.

[3] *American Shrimp Processors Assoc. v. La. Dept. of Wildlife and Fisheries, et al.,* No. 593-867-26 (19th JDC, Parish of E. Baton Rouge, La. filed Aug. 23, 2010).

{*}10/8/2010; 14:21:27

Rule 1.7 of the Louisiana Rules of Professional Conduct governing all Louisiana lawyers, reads in pertinent part as follows:

Rule 1.7. Conflict of Interest: Current Clients

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest.  A concurrent conflict of interest exists if:

(1) the representation of one client will be directly adverse to another client; or

(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

*See also Scheffler v. Adams and Reese LLP*, 950 So.2d 641, 652 (La. 2007) ("...we conclude that it is fundamental to the attorney-client relationship that an attorney have an undivided loyalty to his or her client."); Dane S. Ciolino, ed., *Louisiana Rules of Professional Conduct,* Rule 1.7 comment 3 (L.S.B.A. 2001) ("As a general proposition, loyalty to a client prohibits undertaking representation directly adverse to that client without that client's consent.")

Government entities are being and will likely continue to be sued in relation to this disaster.  As indicated above, the State of Louisiana has already been sued in State court on shrimping issues related to Deepwater Horizon.  The significant conflict of interest created by a PSC that purports to represent the interests of both the State as plaintiff in some cases, and the State's adversaries in others, is obvious and self-apparent.  Based on the Rules of Professional Conduct cited above, it is difficult to see how the PSC would not fall into a position where it is subject to disqualification from the case altogether if this issue is not resolved upfront.  The consequences of such a development down the road would be chaotic and in the interests of no one.  For all of these reasons Co-Liaison Counsel, and the soon-to-be-formed PSC, will be

{*}10/8/2010; 14:21:27

prohibited from representing the State of Louisiana in any proceeding, especially without the State's consent.

In this regard, Louisiana does not consent to representation by the PSC. The Rules of Professional Conduct mandate that attorneys may represent parties notwithstanding such conflicts as described above, but only where each client consents after full disclosure of the implications and risks involved. Rule 1.7(b), Louisiana Rules of Professional Conduct. On a practical level, this is untenable in the present case based on the sheer number of plaintiffs involved. More specifically, however, Louisiana has no intention to waive its protection from conflict-of-interest rules regarding the representation of clients by attorneys. As the Louisiana Supreme Court said in *In re: Hoffman*, 883 So.2d 425, 432 (La. 2004):

> At the outset, we note that Rule 1.7(b) of the Rules of Professional Conduct permits an attorney to represent multiple clients in a single legal matter only if the lawyer reasonably believes that all of the clients will receive competent representation notwithstanding a potential conflict, and only if **each client** consents after full disclosure of "the implications of the common representation and the advantages and risks involved." These limitations permit a lawyer to represent multiple parties whose interests are generally aligned, assuming those parties consent after consultation.

(Emphasis in original).

A similar issue is raised by the issuance of subpoenas to the State. The Louisiana Supreme Court has consistently held that when an attorney must cross examine his own client in defense of another client, a clear conflict exists. *State v. Carmouche*, 508 So.2d 792, 804 (La. 1987); *State v. Franklin*, 400 So.2d 616, 620 (La.1981). *See also Zuck v. Alabama*, 588 F.2d 436, 439 (5th Cir.1979), cert denied, 444 U.S. 833, 100 S.Ct. 63, 62 L.Ed.2d 42 (1979):

> If a defense attorney owes duties to a party whose interests are adverse to those of the defendant, then an actual conflict exists. The interest of the other client and

the defendant are sufficiently adverse if it is shown that the attorney owes a duty to the defendant to take some action that could be detrimental to the other client.

Since Co-Liaison Counsel and the soon-to-be-formed PSC will likely be prohibited by conflict rules from representing the State of Louisiana and other government entities, the creation of a separate case track is warranted.

### 4. Common Liability Issues Exist, But Are Limited And Do Not Warrant Unprecedented Infringement of State Rights.

While there is some commonality with respect to liability issues, it is in the interest of sovereign entities and the citizens thereof that certain aspects of this matter move swiftly before the Court.  The Oil Pollution Act, 33 U.S.C. § 2701 et seq., ("OPA") provides for strict joint and several liability.  This can be litigated quickly by the State.  Another matter which can and should be resolved quickly is Louisiana's declaratory judgment against Transocean regarding the scope of Transocean's liability.  This action seeks only a ruling of law and can be decided expeditiously.  Moreover, various response cost claims could be litigated immediately without presentment issues and with no need for common benefit work.

### 5. Damages Claims of the State Are Substantially Different From Private Party, or Even Local Government Claims

Sovereign entities such as Louisiana have unique damage claims that differ not only in scope, but in their very nature, from those of private plaintiffs.  Government claims include those for NRD, including primary ecological restoration and compensatory restoration, as well as for lost tax revenues, increased costs of services, property damages, response and removal costs, and penalties.  Based on these factors alone, government claims will likely involve an entirely different set of strategies, timelines, and evidentiary concerns than those of private plaintiffs. The timing of NRD issues involves complex negotiations among governmental trustees.  NRD,

{*}10/8/2010; 14:21:27

for example, involve unique scientific assessments that will require extensive testimony from a range of scientific experts not needed or utilized in private plaintiff cases. Government damage claims for NRD can only be pursued by the State. The PSC, on the other hand, has no legitimate interest in these claims.

NRD alone will require an expert discovery schedule significantly different from that applicable to private parties. The same principle would apply to economic expert evidence regarding such issues as costs of increased public services, lost tax revenue analysis and contingent valuations of NRD. BP has rejected a number of valid State claims (e.g. seafood safety; mental health) that require action. These are but a few examples of the need for a separate government track due to the inconsistent scheduling priorities and prejudice to one or more parties which can result from the co-mingling of government and private claims.

## CONCLUSION

For the foregoing reasons, the State of Louisiana requests that this Court establish a separate track for government claims.

Respectfully submitted,

James D. "Buddy" Caldwell
Louisiana Attorney General

James Trey Phillips
First Assistant Attorney General
Megan K. Terrell
Assistant Attorney General
Section Chief – Environmental
State of Louisiana
P.O. Box 94005
Baton Rouge, Louisiana  70804-9005
Tel: 225- 326-6708
Fax: 225- 326-6797

{*}10/8/2010; 14:21:27

Kanner & Whiteley, L.L.C.

/s/ Allan Kanner_____
Allan Kanner
a.kanner@kanner-law.com
Elizabeth B. Petersen
e.petersen@kanner-law.com
Rebecca J. Davis
r.davis@kanner-law.com
David A. Pote
d.pote@kanner-law.com
701 Camp Street
New Orleans, Louisiana 70130
Tel: 504-524-5777
Fax: 504-524-5763


Henry Dart, Attorneys at Law P.C.

/s/ Henry T. Dart_____
Henry T. Dart, Esq.
hdart@dartlaw.com
Grady J. Flattmann, Esq.
gflattmann@dartlaw.com
510 N. Jefferson St.
Covington, LA 70433
Tel: 985-809-8093
Fax: 985-809-8094


Usry, Weeks, & Matthews, APLC

/s/ T. Allen Usry_____
T. Allen Usry, Esq.
ausry@uwmlaw.com
1615 Poydras St., Ste. 12
New Orleans, LA  70112
Tel: 504-592-4600
Fax: 504-592-4641


Shows, Cali, Berthelot & Walsh, LLP.

/s/ E. Wade Shows_____
E. Wade Shows
ews@scbllp.com
628 St. Louis Street
Baton Rouge, Louisiana 70802
Tel: 225-346-1461

Fax: 225-346-1467

Special Counsel to the Attorney General

Marten Law PLLC

/s/ Bradley M. Marten_____
Bradley M. Marten
bmarten@martenlaw.com
Linda R. Larson
llarson@martenlaw.com
Marten Law PLLC
1191 Second Avenue, Suite 2200
Seattle, Washington  98101
Tel: 206-292-2600
Fax: 206-292-2601

Special Counsel to the Attorney General

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has on this 8th day of October, 2010 been served on all counsel of record in this proceeding by CM/ECF electronic filing.

/s/ Allan Kanner_____
ALLAN KANNER, ESQ.

[K&W 1763]

{*}10/8/2010; 14:21:27