UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, ON APRIL 20, 2010 | MDL 2179 <br><br> SECTION J |
| This document relates to: | JUDGE CARL J. BARBIER |
| STATE OF LOUISIANA v. BP EXPLORATION & PRODUCTION, INC., BP PRODUCTS NORTH AMERICA, INC. AND BP AMERICA, INC. | MAG. JUDGE SALLY SHUSHAN |
| CIVIL ACTION NUMBER: 10-cv-1758 | |

**MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION OR ALTERNATIVELY, FOR CERTIFICATION UNDER 28 U.S.C §1292(b) AND STAY OF PROCEEDINGS PENDING APPEAL**

MAY IT PLEASE THE COURT:

This memorandum is respectfully submitted on behalf of the State of Louisiana ex rel Charles Ballay, District Attorney for the Parish of Plaquemines, in support of its motion for reconsideration of this Court's October 6, 2010 remand ruling, or alternatively, pursuant to 28 U.S.C. §1292(b), for certification that the order warrants immediate appeal, and for a stay of the proceedings pending appeal.

-1-

This Court accurately stated the procedural history and background facts in its October 6th order, and they will not be repeated here. Significant to this motion are the fact that movant asserted only a limited state-law claim for injury to Louisiana aquatic life and land-based wildlife, and expressly stated its intention not to plead, at any time in the litigation, any claim arising under any federal law. Nonetheless, Defendants removed the action to the federal court for the Eastern District of Louisiana, claiming that the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1349, supports this Court's original subject matter jurisdiction. This Court agreed, and accordingly denied the motion to remand.

The State of Louisiana ex rel Charles Ballay hereby moves for reconsideration of the ruling in order to bring to the Court's attention certain issues pertinent to jurisdiction in this case which were not addressed in this Court's October 6th Order. In fairness to this Court, these issues were not the primary focus of the briefing on plaintiff's remand motion.

I. **THE RULING IMPROPERLY PREMISES FEDERAL REMOVAL JURISDICTION ON OCSLA**

As the Court properly noted, §1349(b)(1) states that "the district courts of the United States shall have jurisdiction of cases and controversies arising out of, or in connection with (A) any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals of the subsoil and seabed of the outer Continental Shelf." That provision, the Court concluded, confers federal jurisdiction over any action arising out of the subject Macondo well catastrophe. Even assuming that the Court is correct in this holding, the Oil Pollution Act, 33 U.S.C. §§2702, displaces OCSLA for claims arising out of oil spills, suggesting that such claims do not arise under OCSLA at all.

### A.    THE SUBJECT CLAIMS DO NOT ARISE UNDER OCSLA

#### 1.    OPA PREEMPTS OCSLA

The explosion at the Macondo well, the sinking of the Deepwater Horizon rig, and the subsequent unprecedented spill of oil and gas into the Gulf of Mexico gave rise to a large array of diverse claims.  Even assuming that those claims relating to the explosion and sinking of the rig arise under OCSLA, as this Court determined, the claims relating to the oil spill do not.  With respect to the oil pollution claims, Congress enacted a more specific set of remedies which clearly supercede OCSLA's broader regulation of the outer Continental Shelf.

The Oil Pollution Act, 28 U.S.C. §§2702 *et seq.*, enacted in response to the Exxon Valdez oil spill in Prince William Sound, Alaska**,** declares that:

> *Notwithstanding any other provision or rule of law,* and subject to the provisions of this Act, each responsible party for a vess4el or facility from which oil is discharged, or which poses the substantial threat of a discharge of oil, into or upon the navigable waters or adjoining shorelines or the exclusive economic zone is liable for the removal costs and damages specified in subsection (b) that result from such incident.

33 U.S.C. §2702(a) (Emphasis supplied).

Congress intended by this measure to "streamline federal law" and to "provide *quick and efficient cleanup of oil spills,* compensate victims of such spills, and internalize the costs of spills with the petroleum industry."    *Rice v. Harken Exploration Co.,* 250 F. 3d 264, 266 (5th Cir. 2001)(citing Senate Report No. 101-94, *reprinted* in U.S.C.C.A.N. 772, 723)(emphasis supplied); *In the Matter of Settoon Towing LLC,* 2009 WL 4730971 (E.D.La.2009).

In view of the comprehensive scope and legislative history of the act, several courts have decided that OPA preempts or otherwise supplants preexisting federal law.  *South Port Marine LLC v. Gulf Oil Limited Partnership,* 234 F. 3d 58, 65 (1st Cir. 2000); *Settoon Towing, LLC, supra;*

*Gabarick v. Laurin Maritime, Inc.,* 623 F. Supp. 2d 741, 750 (E.D.La. 2009); *Tanguis v. M/V Westchester,* 153 F. Supp. 2d 859, 867 (E.D.La. 2001). None of these cases was called upon to address nor did address OPA's impact on OCSLA. However, they found that it displaced general maritime law, whose constitutional underpinnings establish a much higher bar to displacement that OCSLA, which is merely another statute. *See, Gabarick,* 623 F. Supp 2d at 746-747. In so holding, these courts hearkened to reminders by the United States Supreme Court that "[w]here a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it," *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 19, 100 S. Ct. 242 (1990), and "when Congress does speak directly to a question, the courts are not free to 'supplement' Congress's answer so thoroughly that the act becomes meaningless," *Miles v. Apex marine Corp.,* 498 U.S. 19, 32, 111 S.Ct. 317 (1990).

      The *Gabarick* analysis strongly suggests that OPA preempts many of the general maritime and admiralty claims which various and sundry plaintiffs have asserted against BP under OCSLA.[1] The Fifth Circuit considers four factors to be considered when analyzing statutory preemption of general maritime claims, : 1) legislative history; 2) the scope of the legislation; 3) whether judge-made law would fill a gap left by Congress's silence or rewrite rules Congress enacted, and 4) the likelihood that Congress intended to preempt "long-established and familiar principles of th common law or the general maritime law." *United States v. M/V Big Sun,* 681 F. 2d 432, 442 (5th Cir. 1982).

---

[1] OPA preemption would not bar those claims which are not encompassed by its structure of remedies. For example, OPA does not address damages for personal injury or death. This lacuna is consistent with the statute's objective of regulating remedies for and damages arising out of oil pollution. *See,* 33 U.S. C. §2751, and *Gabarick,* 623 F. Supp. at 748 ("Preemption by OPA of the claims covered by OPA still allows the claimant to pursue claims not covered by OPA under general maritime and admiralty law.")

The same factors are instructive in considering OPA's preemption of the constitutionally unprotected OCSLA.

### a) Legislative History

*Gabarick* found from the following statements that Congress intended, in enacting OPA, to create a single federal law regarding liability and damages for oil pollution:

> It is important to note that following the enactment of this Act, liability and compensation for petroleum oil pollution damages caused by a discharge from a vessel or facility will be determined in accordance with this Act.

H.R. Conf. Rpt., p. 802.

> OPA "create[s] a single Federal law providing clean-up authority, penalties, and liability for oil pollution."

Senate Rpt., p. 730

These clear statements of intent stand in stark contrast to a Congressional intention to establish OPA as companion legislation to OCSLA. To the contrary, they express a clear intention to supercede OCSLA with respect to oil pollution, wherever the spill may originate.

### b) Scope of the Legislation

*Gabarick* found that the text of OPA implies its mandatory and exclusive nature. 623 F. Supp. 2d at 745. As noted above, Section 2702 (a) mandates the strict liability for the damages enumerated in section (b), "notwithstanding any other provision or rule of law, and subject to the provisions of this Act." Section 2713(a) uses the absolute words "all" and "shall," directing the course of action for "all claims," and mandating that they "shall" first be presented to the responsible party.

Prior to the enactment of OPA, OCSLA contained provision for an "Offshore Oil Spill Pollution Fund" whose purpose was "to pay for the prompt removal of any oil spilled or discharged as a result of activities on the Outer Continental Shelf and for any damages to public or private interests caused by those discharges." 43 U.S.C. §1802(8). The provisions for OCSLA pollution fund were repealed in 1990. The drafters of OPA explained that this was done because the OPA fund would "assume all liabilities of the former OCSLA fund:"

> Section 405 of the Senate amendments provides that the remaining balance of the Offshore Oil Pollution Fund established under the Outer Continental Shelf Lands Act of 1978 (OCSLA) is transferred to the Oil Spill Liability Trust Fund [created under OPA] and that the Fund will assume all liabilities of the former fund. Title III of that law (Public Law 95-372), which established the Offshore Oil Pollution Compensation Fund is repealed in its entirety.

House Conf. Rep. No. 101-653, reprinted at 1990 U.S.C.C.A.A.N., p. 803.

The shift in the compensation fund from OCSLA to OPA is consistent with and indicative of the intention to establish OPA as the exclusive federal remedy.

### c) Whether Judge-made Law Would Fill a Gap Left by Congress's Silence or Rewrite the Rules That Congress Enacted

In its savings clause, OPA expressly leaves claims not addressed by the act to general maritime and admiralty law. 33 U.S.C. §2751. This means that this court cannot, by establishing OCSLA as a companion to OPA, fill a gap that OPA has left open, for OPA specifically invokes the application of other laws to areas beyond its express reach. The establishment of OCSLA as a complementary law would instead simply override Congress's intent that OPA provide the exclusive federal remedy for the covered acts and damages.

### d) Likelihood of Congress's Intent to Preempt OCSLA

In *Altria Group, Inc. v. Good,* 129 S. Ct. 538, 543 (2008), the High Court noted that

-6-

"Congress may indicate preemptive intent through a statute's express language or through its structure and purpose." The Court also determined that preemptive intent may be inferred. *Id.* The "ultimate touchstone in every preemption case," said the court, is the intent of Congress. *Altria* found that the Federal Cigarette Labeling and Advertising Act did not preempt a claim of deceptive advertising under a state unfair trade practices act. The federal act's purpose of informing the public concerning the risks of smoking, the court reasoned, would not be served by limiting the states' authority to prohibit deceptive statements in cigarette advertising. The "tangential relationship" between the statutes under consideration in *Altria*, *Gabarick* observed, "is quite distinct from claims that are explicitly covered by OPA rather than tangentially related." 623 F. Supp. at 749. The intent of Congress, *Gabarick* concluded, was to enact comprehensive federal legislation that provides "cleanup authority, penalties, and liability for oil pollution." *Id.,* at 750, citing Senate Rpt., p. 730.

The abolition of OCSLA's compensation fund and assumption of its functions, liabilities, and assets by the newly-created OPA fund further signifies the Congressional intent to substitute OPA as the exclusive federal remedy for covered damages from oil spills, regardless of origin on the outer Continental Shelf.

This Court's conclusion that movant's state-law claims arise under OCSLA conflicts with Congress's intention to establish an exclusive federal remedy within OPA.

### 2.  OPA PRESERVES STATE LAW RIGHTS AND REMEDIES

Unlike OCSLA, which adopts applicable state law *as federal law*, OPA preserves the states' rights to create and enforce state law *as state law*.   OPA expressly states that its provisions shall not be construed as "preempting the authority of any State or political subdivision thereof from imposing any additional liability," 33 U.S.C. §2718(a), nor to affect the authority of the United

States or any State or political subdivision thereof 1) to impose additional liability or additional requirements; or 2) to impose, or to determine the amount of, any fine or penalty (whether criminal or civil in nature) for any violation of law," *Id.* at §2718©.

Notably, the savings clause appears in Title I, which regulates oil spill liability, but does not regulate the design, equipment, or operation of vessels or rigs. Thus, States' freedom to impose additional fines and liability is limited to the compensation of damages, and would not encompass the regulation of oil transportation or drilling operations, as to which a greater federal interest arguably obtains. OPA appears to exercise exclusive authority over the latter subjects, while affording the states the right to prescribe liability only for damages "relating to the discharge, or substantial threat of discharge, of oil." 33 U.S.C. §2718 ©; *see, United States v. Locke,* 529 U.S. 89, 105, 120 S. Ct. 1135 (2000).

That Congress meant precisely what it said about preserving state-law damage claims is clarified by the Senate Report of the legislation:

> Section 106 of the reported bill explicitly preserves the authority of any State to impose its own requirements or standards with respect to discharges of oil within such State. Also explicitly preserved is States' authority to establish or maintain funds for cleanup or compensation purposes and collect such fees or penalties as they may establish.

Senate Rep. No. 101-94, reprinted at 1990 U.S.C.C.A.A.N., p. 739.

These conclusions, the report explains, derived from an in-depth discussion of preemption. "The issue of Federal preemption of State laws," the Senate Report observed, "is one that often arises during the formulation of legislation which imposes Federal environmental controls." *Id.,* at 727. Prior federal legislation "has affirmed the rights of States to protect their own air, water, and land resources by permitting them to establish State standards which are more restrictive than Federal

standards." *Id.* Ultimately, Congress reserved to the States the right "to determine for themselves the best way in which to protect their citizens:"

> Preemption has been discussed by the members of the Committee more than any other single issue. S. 686 does not embrace any preemption of State oil spill liability laws, State oil spill funds, or State fees, taxes, or penalties used to contribute to such funds. The long-standing policy in environmental laws of not preempting State authority and recognizing the rights of States to determine for themselves the best way in which to protect their citizens, is clearly affirmed in S. 686.

*Id.* at 739.

Congress envisioned a system under which parties would have a choice whether to proceed under state or federal law. At the time OPA was enacted, twenty-four states already had oil spill and compensation laws on the books, and twelve states had oil spill funds. Seventeen of the states' laws had liability without specified limits. The oil companies lobbied hard for federal preemption, arguing that they could not afford reasonably-priced insurance coverage under such regimes and even suggesting that "they would not operate in an atmosphere of 'unlimited' risk." *Id.,* at 728. Congress found their arguments "totally unfounded," noting that no oil shipping or producing companies were avoiding the seventeen states without liability limits. *Id.* In choosing to expose oil producers to state laws of potentially unlimited risk, Congress affirmed two "widely accepted" core principles: "a polluter should pay in full for the costs of oil pollution paid by that polluter; and, a victim should be fully compensated." *Id.*

OPA was "designed to provide basic protection for the environment and victims damaged by spills of oil." *Id.,* at 728. A State "wishing to impose a greater degree of protection for its own resources and citizens is entitled to do so." *Id.* On the other hand, a State which considered itself adequately protected by OPA could choose not to enact additional state law. "In any event," the

Committed said, it chose "not to impose, arbitrarily, the constraints of the Federal regime on the States while at the same time preempting their rights to their own laws." *Id.* The acknowledged federalism concerns that underlie OPA's decision against preemption have counsel courts to take an equally skeptical view of preempting state law, including state law not specifically regulating liability for oil releases. *South Port Marine, LLC v. Gulf Oil Limited Partnership,* 234 F. 3d 58, 65 (1st Cir. 2000) ("Where as here the state remedy is aimed at a matter of great and legitimate state concern, a court must act with caution"); *Russo v. M/T Dubai Star,* 2010 WL 1753187 (N.D. Ca. 2010); *Isla Corp. V. Sundown Energy LP*, 2007 WL 1240212, at 2 (E.D.La.. 2007); *Williams v. Potomac Elec. Power Co.,* 115 F. Supp. 2d 561, 565 & n. 3 (D. Md. 2000).

This Court's ruling does violence to the scheme established by OPA. In effect, this Court justifies removal on a theory of complete preemption by OCSLA; this theory holds that the state oil spill claims, although asserted under state law are "necessarily federal" by virtue of the initiating explosion on the outer Continental shelf. *See,* Wright and Miller, *Federal Practice and Procedure,* §3722.2. The fundamental error in the Court's decision is that it overlooks OPA's preemption of OCSLA, and Congress's explicit intention to preserve Louisiana's right to establish its own remedies, completely independent of federal law, for damages relating to oil pollution. This Court's ruling undermined the very right Congress meant to affirm, "of States to protect their own air, water, and land resources."

As a practical matter, the denial of the motion to remand draws discrete, simple, and straightforward state claims for damage to wildlife into a complex piece of multi-district litigation. Despite this Court's best efforts, that massive proceeding will inevitably be cumbersome, slow-paced, and extremely costly. The State's claims for loss of wildlife, which could be swiftly resolved

in state court, may languish for years in the MDL, and the State will be forced to surrender a substantial share of its recovery for damage to its natural resources to fund the costs of extensive discovery and procedural maneuvering having no bearing on its claims.

After careful consideration of the preemption issue, Congress properly extended to the States the right to choose whether to proceed under state or federal law. This Court improperly rescinded that right, with potentially severe adverse consequences to the state.

### B.  SECTION 1349 DOES NOT CONFER JURISDICTION OVER THE SUBJECT CLAIMS

This Court premised jurisdiction over the captioned action on Section 1349(b)(1) of OCSLA, which states:

> the district courts of the United States shall have jurisdiction of cases and controversies arising out of, or in connection with A) any operation conducted on the outer continental shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf. . .

This action does not arise under the laws of the United States, for two reasons. First, as discussed in the preceding section, the Oil Pollution Act preempts all federal law with regard to damages for oil spills on the Outer Continental Shelf or elsewhere, although it does expressly preserve state law claims. Therefore this oil-spill damage claim does not arise out of or in connection with any operation conducted on the outer Continental Shelf.

Second, 43 U.S.C. 1333(a)(2)(A), which is the statute borrowing state law on the Shelf, has a situs requirement, which requires that the injury occur on the shelf. Since the injury at issue clearly does not, 1333 does not apply, and accordingly no federal law under the OCSLA governs the plaintiff's purely state law claim for civil penalties.

28 USC § 1333, entitled "Laws and regulations governing lands," provides in pertinent part:

> (a) Constitution and United States laws; laws of adjacent States; publication of projected State lines; international boundary disputes; restriction on State taxation and jurisdiction
>
> (1) The Constitution and laws and civil and political jurisdiction of the United States are extended to the subsoil and seabed of the outer Continental Shelf and to all artificial islands, and all installations and other devices permanently or temporarily attached to the seabed, which may be erected thereon for the purpose of exploring for, developing, or producing resources therefrom, or any such installation or other device (other than a ship or vessel) for the purpose of transporting such resources, to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State: Provided, however, That mineral leases on the outer Continental Shelf shall be maintained or issued only under the provisions of this subchapter.
>
> (2)(A) To the extent that they are applicable and *not inconsistent with this subchapter or with other Federal laws* and regulations of the Secretary now in effect or hereafter adopted, *the civil and criminal laws of each adjacent State, now in effect or hereafter adopted, amended, or repealed are declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon,* which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf, and the President shall determine and publish in the Federal Register such projected lines extending seaward and defining each such area. All of such applicable laws shall be administered and enforced by the appropriate officers and courts of the United States. State taxation laws shall not apply to the outer Continental Shelf.

(emphasis supplied).

*In Landry, et al. v. Island Operating Company Inc.*, 2009 WL 3241560 (W.D.La.), Judge Melancon observed that "[t]he Fifth Circuit has conclusively stated in tort cases the "situs" required to trigger OCSLA refers to the location of the injury. *See, e.g., Golden v. Omni Energy Services Corp.*, 242 Fed. Appx. 965, 967 (5th Cir.2007) ("OCSLA ... compel[s] the district court to take into account the location of incidents giving rise to the lawsuit"); *Demette v. Falcon Drilling Co., Inc.*, 280 F.3d 492, 496 (5th Cir.2002) ("First, we must determine whether the injury occurred on an

OCSLA situs ..."); *Mills v. Director, Office of Workers' Compensation Programs, U.S. Dept. of Labor*, 877 F.2d 356 (5th Cir.1989) (en banc) (holding that applicability of § 1333(b) limited to "situs" of injury)." He further extensively analyzed the concept of when a cause of action in tort accrues, and noted that until injury ensures, no action claim has arisen. *See Landry, supra*, at 3. Finally, he convincingly discussed all cases that bear upon the subject, and noted that "defendants' numerous cited cases do not reveal a single instance where an actual injury suffered on land has been construed to be covered by the Outer Continental Shelf Lands Act." *Id.*.[2]

The situs requirement, as interpreted by the preceding cases, is entirely consistent with OPA's tactical decision to reserve to the States the right to establish liability and compensation for oil spill *injuries,* while reserving to federal jurisdiction the regulation of *operations* on rigs and vessels. *See, United States v. Locke,* 529 U.S. 89, 105, 120 S. Ct. 1135 (2000), and discussion at pp. 7-8 *supra*. This Court's substitution of the "but-for" test improperly relies upon the inapplicable Section 1349.

In sum, this Court's ruling overturns a carefully-crafted Congressional determination that OPA should provide the exclusive federal remedy for oil spill cases, and that States have an incontrovertible interest in establishing, enforcing, and exercising jurisdiction over laws designed to compensate their citizens for injuries within their borders.

---

[2] The Fifth Circuit recently distinguished tort from contractual disputes, and held that in the later class of cases, which are governed by 43 U.S.C. 1333(b), instead of 1333(a)(2)(A), the focus-of-the-contract test determines the situs of the controversy in contract cases under the Outer Continental Shelf Lands Act. *See Grand Isle Shipyard, Inc. v. Seacor Marine*, LLC, 589 F.3d 778 (5th Cir2009), *cert. denied, Seacor Marine LLC v. Grand Isle Shipyard, Inc.*, 130 S.Ct. 3386, 177 L.Ed.2d 302, (U.S. 2010). In so holding, the Court distinguished tort cases, and left undisturbed its previous "cases that had determined OCSLA situs using tort principles" in tort claims. *Id*, at 786-77.

## II.   REQUEST FOR SECTION 1292(b) CERTIFICATION AND A STAY

An order denying remand of a case removed to federal court is not a final order within the meaning of 28 U.S.C. §1291. *PCI Transportation, Inc. v. Fort Worth & Western Railroad Company,* 418 F. 3d 535, 539; *Melancon v. Texaco, Inc.,* 659 F. 2d 551, 552-553. Thus, such an interlocutory order cannot be appealed unless certified by the district court in accordance with 28 U.S.C. §1292(b). *Id.*

That section provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such an order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order.

Even should this Court decide, upon consideration of the arguments raised herein, to maintain its October 6th ruling denying remand, it will undoubtedly recognize that the jurisdictional issues are serious and warrant a definitive resolution at the outset of the litigation. A question of subject matter jurisdiction necessarily involves an issue that materially affects the ultimate termination of litigation, at least in the forum court. " *Ex parte Tokio Marine & Fire Ins. Co.*, 322 F.2d 113, 114 (5th Cir. 1963). ("[T]he 'litigation' is here the Louisiana libel against the tug's underwriters. If the underwriters are correct- and we may assume without deciding the if is a big one- then the Constitution forbids the further prosecution of the case against them in Louisiana. An authoritative decision would not only 'materially advance' the ultimate disposition of 'the litigation,' it would terminate it altogether. On that hypothesis, to require the parties to go through a trial before

a court lacking jurisdiction would be both expensive and senseless for no matter what facts were developed on the trial, the Constitution would forbid the adjudication there. Nothing in the legislative history requires any such artificial result.").

Here, not only is there an issue the resolution of which affects the progress of litigation, but there is a controlling issue of law – whether OCSLA is preempted by OPA. *See e.g., Miara v. First Allmerica Financial Life Ins. Co.,* 379 F.Supp.2d 20 (D.Mass.2005) (Controlling question of law would be certified to the Court of Appeals for the First Circuit as to whether ERISA preempted state law claims against an insurer, an insurance agency, and an insurance agent stemming from misrepresentations and assurances made by the insurance agent in connection with the establishment of an employee benefit plan; there was substantial ground for difference of opinion and an immediate appeal from court's non-preemption ruling could materially advance the ultimate termination of the litigation.). Moreover, the resolution of this issue affects other cases, some of which have already been filed in this MDL, and others undoubtedly yet to be filed. *See e.g., Freedman v. Philadelphia Terminals Auction Co*., 197 F.Supp. 849 (D.C. Pa. 1961), *aff'd,* 301 F.2d 830, (3rd Cir), *cert. denied* 83 S.Ct. 40, 371 U.S. 829, 9 L.Ed.2d 67  (1962) (Court, upon denying alternative motion for judgment notwithstanding adverse verdict or for new trial of certain plaintiffs in Robinson-Patman Act case, would certify that order of denial involved controlling questions of law as to which there was substantial ground for difference of opinion and that immediate appeal might materially advance ultimate termination of litigation, in view of pending claims of many other plaintiffs and another holding in district under statute. ).  Also, the issue herein is one of  first impression and of significant legal significance, particularly since it involves the State of Louisiana's right to prosecute claims for civil penalties for violation of its laws in its own courts – an issue which strikes at the very heart of

state sovereignty.  See e.g., *Republic of Colombia v. Diageo North America Inc*, 619 F.Supp.2d 7 (D.C. .N.Y. 2007) ( Issues presented within district court order denying in part defendants' motion to dismiss Colombian agencies' Racketeer Influenced and Corrupt Organizations Act (RICO) claims, which involved questions of first impression and significant legal policy concerns that had not been considered in other revenue rule and penal law rule decisions, gave rise to a substantial ground for disagreement subject to interlocutory appeal .)

If this action runs the usual course of MDL proceedings– and nothing in the early procedural maneuvering of the many claimants suggests otherwise– a settlement may be reached years hence, without any possible appeal of the issue of jurisdiction, or if the appeal is ever taken, it may come in ten to fifteen years, after generations of wildlife and their habitats have been destroyed.  The State's strong interest in the preservation of its resources, under its own laws and within its own courts, warrants immediate appeal of this controlling issue of law.

With regard to a stay of the proceedings pending appeal, Section 1292(b) further states: "Provided, however, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order."  For all the reasons militating in favor of a Section 1292(b) certification, the action should be stayed under Rule 62(h) pending appeal.

SIGNATURE BLOCK ON NEXT PAGE

Respectfully submitted,

 /s/ *Stephen B. Murray*
Stephen B. Murray  (No. 9858)
Stephen B. Murray, Jr. (No. 23877)
Arthur M. Murray (No. 27694)
James R. Dugan, II (No. 24785)
MURRAY LAW FIRM
650 Poydras Street, Suite 2150
New Orleans, Louisiana  70130
T:  504.525.8100
F:  504.584.5249

Philip F. Cossich, Jr. (No. 1788)
David A. Parisola (No. 21005)
Christina Cossich de Young (No. 32407)
Darin S. Britt (No. 31639)
COSSICH SUMICH PARSIOLA & TAYLOR
8397 Highway 23, Suite 100
Belle Chasse, Louisiana 70037
T:  504.394.9000
F:  504.394.9110

Charles J. Ballay (No. 2719)
PLAQUEMINES PARISH DISTRICT ATTORNEY
301.A Main Street
Belle Chasse, Louisiana 70037
T:  504.297.5146
F:  504.297.5157

*OF COUNSEL*:
Robert E. Arceneaux (No. 1199)
ROBERT E. ARCENEAUX, LLC
47 Beverly Garden Drive
Metairie, Louisiana 70001
T: 504.833.7533
F: 504.833.7612

*OF COUNSEL*:
MARGARET E. WOODWARD (No. 13677)
3701 Canal Street, Suite C
New Orleans, Louisiana 70119
T:  504.301.4333
F:  504.301.4365

-17-

**CERTIFICATE OF SERVICE**

  I, Stephen B. Murray, do hereby certify that on October 15, 2010, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system.  The CM/ECF system will send notification of the filing to all counsel of record authorized to receive electronic servicing and the filing has also been served by USPS Regular Mail, properly addressed and first-class postage prepaid, on all counsel of record not authorized to receive electronic servicing.

                 /s/ *Stephen B. Murray*