# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

IN RE: OIL SPILL by the OIL RIG
"DEEPWATER HORIZON' in the
GULF OF MEXICO, on April 20, 2010

MDL. NO. 2179

SECTION J

JUDGE BARBIER
MAGISTRATE JUDGE SHUSHAN

This Document Relates to: 4:10-cv-01851

## TRACY KLEPPINGER'S, CHRISTOPHER CHOY'S, DOUGLAS HAROLD BROWN'S, BRENT MANSFIELD'S, AND DOMINIQUE USSIN'S MOTION TO REMAND[1]

The Kleppinger Plaintiffs,[2] each Jones Act seaman, move pursuant to 28 U.S.C.

§ 1447(c) for the Court to remand this case on the following grounds:

1.      Jones Act cases are not removable from state court,[3] even when a defendant other than the Jones Act employer removes the case.[4]

2.      In its Notice of Removal, Cameron confuses removal jurisdiction with original jurisdiction. Even if OCSLA applies to this case, which it does not,[5] removal is improper because Cameron and three of the four other properly joined and served Defendants have their principal places of business in Texas.[6]

---

[1]      On June 9, 2010, the Kleppinger Plaintiffs timely filed a Motion to Remand while the case was pending in the Southern District of Texas. (Cause No. 4-10-cv-01851) ; in the Southern District of Texas).

[2]      Tracy Kleppinger, Christopher Choy, Douglas Harold Brown, Brent Mansfield, and Dominique Ussin will be referred to as the Kleppinger Plaintiffs.

[3]      *Fields v. Pool Offshore, Inc.,* 182 F.3d 353, 356 (5th Cir. 1999)); *see also Burchett v. Cargill, Inc.,* 48 F.3d 173, 175 (5th Cir. 1995) ("As a general rule, . . . Jones Act cases are not removable.").

[4]      *See Rybolt v. Laborde Marine Lift,* Civil Action No. 00-3800 Section: "R" (1), 2001 U.S. Dist. LEXIS 3053, at *5-*7 (E.D. La. March 13, 2001).

[5]      *See Walsh v. Seagull Energy Corp.,* 836 F. Supp. 411, 418 (S.D. Tex. 1993) ("In sum, despite the potential and probably intended breadth of the application of federal law under OCSLA to oilfield operations on the shelf, in practice the courts have read *Rodrigue [v. Aetna Cas. & Sur. Co.,* 395 U.S. 352 (1969)] to almost strictly limit its operation as to personal injuries to accidents taking place on fixed platforms.").

[6]      *Morris v. T E Marine Corp.,* 344 F.3d 439, 444 (5th Cir. 2003).

3.    Cameron violated the unanimity[7] or unanimous consent rule when it failed to timely obtain the consent of all served Defendants.[8]

The Kleppinger Plaintiffs respectfully request that the Court rule on this motion quickly for several reasons:

1.    There is no good faith basis for the removal. It is contrary to well-established Fifth Circuit precedent.

2.    Texas has its own MDL procedure. Indeed, BP, prior to Cameron's removal, initiated that procedure. (It surely would have removed the case, as opposed to initiating that procedure, if it honestly believed this case was subject to removal.) Like we have seen in this case, it will take a great deal of time to get the MDL process set up, creating a tremendous necessity for the Court to rule quickly.

3.    The Kleppinger Plaintiffs represent to the Court that it they work cooperatively with the PSC in conducting discovery. That not only makes sense, this Court and the state court will expect this. There have been countless MDL proceedings in which state and federal proceedings are coordinated.

4.    The Kleppinger Plaintiffs are wards of this Court and deserve protection.

# I.
## FACTUAL BACKGROUND

Karl Kleppinger, Jr. was a Transocean employee, a member of the *Deepwater Horizon*'s crew, and therefore a Jones Act seaman.[9] As of the writing of this Motion, Karl is still lost at sea and has been presumed dead.[10] On April 22, 2010, Tracy Kleppinger, Karl's wife and the mother of their minor child, Aaron, filed a wrongful death case pursuant to the Jones Act and general maritime law in state court.[11] She named Transocean and

---

[7]    *Acosta v. Master Maint. & Constr., Inc.*, 452 F.3d 373, 375 (5th Cir. 1992) (referring to "unanimity rule").

[8]    *Doe v. Kerwood*, 969 F.2d 165, 169 (5th Cir. 1992) (referring to "unanimous consent rule" and remanding case to state court because of Red Cross's failure to obtain consent of all defendants).

[9]    (Doc. 1 at 3-4) in Southern District Case.

[10]    *See* Letter of Presumed Death From U.S. Coast Guard attached hereto as Exhibit A.

[11]    (Doc. 1 at Exhibit 2) in Southern District Case (Tracy Kleppinger's Original Petition).

BP Products North America, Inc. ("BP Products") as Defendants.[12] Tracy Kleppinger served Transocean on April 26, 2010[13] and BP Products on the following day.[14]

On April 30, 2010, Stephen and Sara Stone intervened as Plaintiffs in the *Kleppinger* wrongful death case for the personal injuries Stephen sustained in the explosion and fire aboard the *Deepwater Horizon*.[15] The Stones have no connection to the Kleppinger Plaintiffs or their counsel. While the intervention was procedurally proper, the first time that the Kleppinger Plaintiffs knew that the Stones were filing suit was when their counsel filed their suit. Like Karl Kleppinger, Jr., Stephen Stone was a Transocean employee, a member of the *Deepwater Horizon*'s crew, and therefore a Jones Act seaman.[16] In addition to Transocean and BP Products, the Stones named Halliburton Energy Services ("Halliburton"), Cameron, and MI Swaco as Defendants.[17] Stephen and Sara Stone served MI Swaco with a temporary restraining order on May 4, 2010.[18] On the following day, the Stones served both Halliburton[19] and Cameron[20] with their petition.

---

[12]   *(Id.)*

[13]   (Doc. 1 at Exhibit 3) in Southern District Case (Return of Service on Transocean of Tracy Kleppinger's First Amended Original Petition and Request for Disclosure).

[14]   *(Id.* at Exhibit 3) (Return of Service on BP Products of Tracy Kleppinger's First Amended Original Petition and Request for Disclosure).

[15]   *(Id.* at Exhibit 29) (Stephen Stone's and Sara Stone's Petition in Intervention, Application for Temporary Restraining Order and Temporary Injunction and Request for Disclosure).

[16]   *Id.*

[17]   *Id.*

[18]   *(Id.* at Exhibits 21) (Return of Service on MI Swaco of Stephen Stone's and Sara Stone's Petition in Intervention, Application for Temporary Restraining Order and Temporary Injunction and Request for Disclosure) and (26) (Return of Service on MI Swaco of Temporary Restraining Order).

[19]   *(Id.* at Exhibit 13) (Return of Service on Halliburton of Stephen Stone's and Sara Stone's Petition in Intervention, Application for Temporary Restraining Order and Temporary Injunction and Request for Disclosure and (14) (Return of Service on Halliburton of Temporary Restraining Order).

[20]   *(Id.* at Exhibit 12) (Return of Service on Cameron of Stephen Stone's and Sara Stone's Petition in Intervention, Application for Temporary Restraining Order and Temporary Injunction and Request for Disclosure and (16) (Return of Service on Cameron of Temporary Restraining Order).

Subsequently, Christopher Choy, Bill Francis, Carlos Ramos, Douglas Harold Brown, and Brent Mansfield intervened as Plaintiffs in the *Kleppinger* wrongful death case.[21]  Like Karl Kleppinger, Jr. and Stephen Stone, Choy, Francis, Ramos, Brown, and Mansfield were Transocean employees, members of the *Deepwater Horizon*'s crew, and therefore Jones Act seamen.[22]  In addition, Dominique Ussin and Tyrone Benton intervened as Plaintiffs in the *Kleppinger* wrongful death case.[23]  Although Ussin and Benton were on the payrolls of employers other than Transocean, they were Transocean's borrowed servants, worked standard hitches on the *Deepwater Horizon*, were aboard the *Deepwater Horizon* as members of its crew, and were therefore Jones Act seamen.[24]

MI Swaco filed its answer in state court on May 7, 2010.[25]  Approximately eleven days later, BP Products filed its answer.[26]  Cameron filed its answer in state court on May 24, 2010 and removed this case on the same day.[27]  The Stones filed their motion to remand on June 4, 2010,[28] the Kleppinger Plaintiffs filed timely their Motion to Remand on June 9, 2010,[29] and Tyrone Benton, Bill Francis, Carlos Ramos filed their Motion to Remand

---

[21]  (*Id.* at Exhibits 8) (Choy's Petition in Intervention);  (4) (Francis's and Benton's Petition in Intervention); (6) (Brown's Petition in Intervention); and (5) (Mansfield's Petition in Intervention).

[22]  (*Id.* at Exhibits 8) (Choy's Petition in Intervention), (4) (Francis's and Benton's Petition in Intervention), (6) (Brown's Petition in Intervention), & (5) (Mansfield's Petition in Intervention).

[23]  (*Id.* at Exhibits 7) (Ussin's Petition in Intervention) and (4) (Ramos's Petition in Intervention).

[24]  (*Id.* at Exhibits 7) (Ussin's Petition in Intervention); (4) (Ramos's Petition in Intervention). *Baker v. Raymond Int'l., Inc.*, 656 F.2d 173, 178 (5th Cir.1981) (addressing test for borrowed servant/seaman doctrine).

[25]  (*Id.* at Exhibit 18) (MI Swaco's Original Answer).

[26]  BP Products North America, Inc.'s Original Answer attached hereto as Exhibit B.

[27]  (Doc. 1 at Exhibit 33) (Cameron's Original Answer).

[28]  (Doc. 19) in Southern District Case.

[29]  (Doc. 25) in Southern District Case.

on June 14, 2010.[30] Cameron responded to these filings on June 24, 2010.[31] The Kleppinger

Plaintiffs filed a Reply on June 5, 2010.[32] These filings followed BP's May 28, 2010 Motion

to Stay Pending Transfer to the MDL Court,[33] which the court granted on July 8, 2010.[34]

The MDL Conditional Transfer Order issued on September 21, 2010.[35]

## III.
## MOTION TO REMAND

### A.   Some Basic Removal Principles[36]

Federal jurisdiction is limited.[37] Federal courts "possess only that power authorized

by the Constitution and statute, which is not to be expanded by judicial decree."[38] The Court

should begin with the presumption that a case lies outside its limited jurisdiction.[39] The

burden of establishing removal jurisdiction rests on the party seeking the federal forum.[40]

The removal statute "is subject to strict construction because a defendant's use of that statute

deprives a state court of a case properly before it and thereby implicates important federalism

---

[30]   (Doc. 32) in Southern District Case.

[31]   (Doc. 41) in Southern District Case.

[32]   (Doc. 45) in Southern District Case.

[33]   (Doc. 11) in Southern District Case.

[34]   (Doc. 49) in Southern District Case.

[35]   (Doc. 58) in Southern District Case.

[36]   This section tracks closely the prior trial judge's opinion in *Ogg v. Aviva Life & Annuity Co.,* Civil Case No. H-09-4015, 2010 U.S. Dist. LEXIS 23568, at *4 (S.D. Tex. March 15, 2010) (Atlas, J.).

[37]   *Rasul v. Bush,* 542 U.S. 466, 489 (2004) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994)); *see also Martin v. Nationwide Prop. & Cas. Ins. Co.,* Civil Action No. H-09-4005, 2010 U.S. Dist. LEXIS 1008, at *1 (S.D. Tex. January 7, 2010) (Atlas, J.).

[38]   *Id.* (quoting *Kokkonen,* 511 U.S. at 377).

[39]   *Howery v. Allstate Ins. Co.,* 243 F.3d 912, 916 (5th Cir. 2001); *see also Hart v. Kanady,* Civil Case No. H-09-3089, 2009 U.S. Dist. LEXIS 107001, at *3 (S.D. Tex. November 17, 2009) (Atlas, J.) ("The party invoking the removal jurisdiction of federal courts bears the burden of establishing federal jurisdiction.").

[40]   *Martin,* 2010 U.S. Dist. LEXIS 1008, at *1.

concerns."[41] "All doubts regarding whether a lawsuit is properly removable must be resolved against removal and in favor of remand."[42]

## B.    Cameron Admitted that Certain Plaintiff's Claims were not Removable

In an effort to get around the 30 day removal rule, discussed *infra*, Cameron conceded that Kleppinger's claims did not suggest a basis for removal when she filed her claim: "On the face of the petition, Kleppinger's claims do not suggest a basis for removal to federal court."[43] That concession is not surprising: Kleppinger's claim is governed by the Jones Act and Jones Act cases are not subject to removal.[44] Because Cameron has judicially admitted that Kleppinger's claims were not subject to removal when originally filed, the Court should sever her claims and remand them to state court.

Cameron did not admit that Christopher Choy's, Douglas Harold Brown's, Brent Mansfield's, and Dominique Ussin's claims were not originally removable. Nevertheless, their status as Jones Act seaman are identical to Kleppinger's. Cameron should explain how their status differs than Kleppinger's and how their admission concerning Kleppinger should not extend to them.

---

[41]    *Frank v. Bear Sterns & Co.,* 128 F.3d 919, 922 (5th Cir. 1997).

[42]    *Behrmann v. ConocoPhillips Co.,* Civil Case No. H-09-2066, 2009 U.S. Dist. LEXIS 86061, at *4 (S.D. Tex. September 21, 2009) (Atlas, J.) (citing *Manguno v. Prudential Prop. and Cas. Ins. Co.,* 276 F.3d 720, 723 (5th Cir. 2002) and *Crossroads of Texas, LLC v. Great-West Life & Annuity Ins. Co.,* 467 F. Supp. 2d 705, 708 (S.D. Tex. 2006)).

[43]    (Doc. 41 at 4) in Southern District Case.

[44]    *Burchett v. Cargill, Inc.,* 48 F.3d 173, 175 (5th Cir. 1995).

## C.   **These Jones Act Cases Are Not Removable**

As a general rule, Jones Act cases are not removable.[45]  Cameron recognized this principle in its Notice of Removal.[46]  But it argued that "[b]ecause one or more, if not all, of the injured or deceased claimants was not a seaman, and/or because none of the parties naming Cameron as Defendant was employed by Cameron, the provisions of 28 U.S.C. §1445(a) do not apply."[47]  Cameron's attempt to avoid the bar to the removal of Jones Act cases fails for three reasons.

First, although "'a defendant may pierce the pleadings to show that the Jones Act claim has been fraudulently pleaded to prevent removal,'"[48] Cameron has not even attempted to meet the high threshold that the Fifth Circuit has placed on a removing defendant in this context.[49]  It would have to show that each of the Kleppinger Plaintiffs has no reasonable possibility of establishing a Jones Act claim on the merits.[50]  But Cameron has failed to provide any proof supporting its argument that "one or more, if not all, of the injured or deceased claimants was not a seaman."[51]  Cameron is simply wrong that the Kleppinger

---

[45]  *Fields v. Pool Offshore, Inc.,* 182 F.3d 353, 356 (5th Cir. 1999)); *see also Burchett v. Cargill, Inc.,* 48 F.3d 173, 175 (5th Cir. 1995) ("As a general rule, . . . Jones Act cases are not removable.").

[46]  (Doc. 1 at 5) in Southern District Case.

[47]  *Id.*

[48]  *Burchett v. Cargill, Inc.,* 48 F.3d 173, 175 (5th Cir. 1995) (quoting *Lackey v. Atlantic Richfield Co.,* 990 F.2d 202, 207 (5th Cir. 1993)).

[49]  *Hufnagel v. Omega Serv. Indus., Inc.,* 182 F.3d 340, 345-46 (5th Cir. 1999) ("The court may deny remand where, but only where, resolving all disputed facts and ambiguities in current substantive law in the plaintiff's favor, the court determines that the plaintiff has no reasonable possibility of establishing a Jones Act claim on the merits.").

[50]  *Id.*

[51]  (Doc. 1 at 5) in Southern District Case.

Plaintiffs had an obligation to present "evidence" at the pleading stage to support its claim that they are Jones Act seaman.[52]

The absence of Cameron's Jones-Act-defeating evidence is, however, not surprising. All of the Kleppinger Plaintiffs were Transocean employees or Transocean borrowed servants, members of the *Deepwater Horizon*'s crew, and therefore Jones Act seamen as a matter of law. In this connection, when a removing party fails to provide pleading-piercing evidence, the Fifth Circuit instructs that a court is limited to a plaintiff's pleadings to determine whether a Jones Act claim was properly pled.[53]  Applying that standard to the petitions on file herein, it is apparent that all Plaintiffs and Intervenors have properly pled Jones Act claims.

Second, Jones Act cases are not removable from state court, even when a defendant other than the Jones Act employer removes the case.[54]  Through the savings-to-suitors clause in 28 U.S.C. § 1333(1), "Congress intended for seamen to have their choice of a state or federal forum in Jones Act cases."[55]  Thus, "removal by virtue of another claim would seriously limit a seaman's right to elect his forum."[56]  Accordingly, when seamen choose a state forum and join defendants in addition to their Jones Act employers, courts have remanded cases as long as the seamen's claims arose from a single set of facts, and the

---

[52]   (Doc. 1 at 6) ("They have not presented any evidence, by affidavit or otherwise, to establish that fact.").

[53]   *Case v. Omega Natchig, Inc.,* Civil Action No. H-08-0835, 2008 U.S. Dist. LEXIS 52931, at *3 (S.D. Tex. July 10, 2008) (Rosenthal, J.) (noting that this limitation only exists when there is no issue of a fraudulent attempt to avoid removal).

[54]   *Rybolt,* 2001 U.S. Dist. LEXIS 3053, at *5-*7.

[55]   *Lockhart v. Applied Coating Servs., Inc.,* Civil Action No. 05-1630 Section: "R" (3), 2005 U.S. Dist. LEXIS 1387, at *12-13 (E.D. La. June 24, 2005) (citing *Rybolt*).

[56]   *Rideau v. Hendry Corp.,* Civil Action No. 01-1726 Section: "D" (5), 2001 U.S. Dist. LEXIS 9996, at *4 (E.D. La. July 22, 2001).

seamen sought a single recovery.[57]  Because the Kleppinger Plaintiffs' claims against Cameron arose from a single set of facts, *i.e.,* the explosion and fire aboard the *Deepwater Horizon,* for which they seek their respective single recoveries, their claims against Cameron are not separate and independent under 28 U.S.C. § 1441(c),[58] and therefore, this case is not removable pursuant to 28 U.S.C. § 1445(a).[59]

Finally, Cameron also fails to acknowledge even if these gentlemen were not seaman, their claims would be governed by general maritime law.  General maritime law claims are not removable when there is not complete diversity of citizenship: "There is no dispute that general maritime law claims are subject to the 'savings to suitors' clause and may not be removed unless there is complete diversity of citizenship."[60]  There is not complete diversity here.

## D.    The OCSLA Does Not Apply to This Case as a Matter of Law

Cameron's main basis for removal is the OCSLA.  The Kleppinger Plaintiff's recognize that the Court, at least in the context of the State of Louisiana's claims (Doc.470), found that OCSLA applies to this case.  Because there is a bullet-proof argument about why the removal was improper even if the claims are governed by OCSLA, the Kleppinger Plaintiffs will not belabor the argument that the OCSLA does not govern their claims.

---

[57]   *Rybolt,* 2001 U.S. Dist. LEXIS 3053, at *5-7; *see also McInnis v. Parker Drilling Co.,* Civil Action No. 01-2927 Section: "L" (3), 2002 U.S. Dist. LEXIS 5154, at *10-12 (E.D. La. March 20, 2002) (citing *Rybolt*); *Lockhart,* 2005 U.S. Dist. LEXIS 1387, at *14-*16 (applying *McInnis* and *Rybolt*).

[58]   28 U.S.C. § 1441(c) provides that "[w]henever a separate and independent claim or cause of action within the jurisdiction conferred by § 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates."

[59]   *Id.*

[60]   *Lewis v. Transocean Terminal Operators, Inc.,* No. Civ. A. 00-772, 2001 WL 15636, at *1 (E.D. La. Jan 5, 2001).

Nevertheless, their claims are different than the State of Louisiana's because they are Jones Act seaman who were injured on a vessel as opposed to being injured from oil that spilled from the OCS. Fifth Circuit has stated that "[t]he law is clear that when a tort occurs on navigable water on the OCS, as opposed to, for example, a stationary platform, . . . maritime law applies to the ensuing tort action by that worker against third parties."[61] OSCLA has also universally been applied solely to fixed structures.[62]

While Cameron contends that the case is subject to the OCSLA because the vessel was temporarily attached to the sea floor via the riser, no case was located suggesting that a riser--as opposed to, for example, a jack up rig that is jacked up on the OCS--is sufficient to bring the claims within the purview of the OCSLA in a Jones Act case. Because this Court must resolve all "ambiguities in current substantive law in plaintiff's favor[,]"[63] the Kleppinger Plaintiffs' respectfully assert that the Court must find—until the Fifth Circuit rules otherwise–that a riser is insufficient. In reality, having a riser connected to the sea floor is no different that having a temporary anchor and it is nonsensical that a vessel under an anchor would bring a Jones Act claim into the OCSLA. Another tact the Court should take is to specifically hold that it is not reaching the question of whether OCSLA applies because for the reasons stated in the next section, the removal was improper even if it did apply. This Court should not make law unless it has to.

## E.    Even if the OCSLA Applied, Removal was Improper

### 1.    The Court's Opinion.

---

[61]   *Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778, 781 (5th Cir. 2009) (en banc) (emphasis added).

[62]   Refer to footnote 4

[63]   *Holmes v. Atlantic Sounding Co., Inc.*, 437 F.3d 441, 445 (5th Cir. 2006).

The Court's recent remand ruling (Doc. 470) found that the State of Louisiana's claims were governed by the OCSLA. The Court's reasoning, if correct, ends Cameron's argument that a party can remove a OCSLA claim irrespective of the citizenship or residence of the parties.[64]   In its order, the Court recognized that it is well settled that maritime law claims do not arise under the laws of the United States and cannot be removed to federal court unless there is complete diversity. *Id.* at 10. Because Plaintiffs filed suit in Texas and there is not complete diversity, the removal was improper.

     2.    Was it a Maritime Event?

The only question is whether the incident was a maritime event.  Several district courts have held that 43 U.S.C. § 1349 does not provide removal jurisdiction when: (1) a claim is governed by maritime law; (2) the claim is brought in state court pursuant to the "Savings to Suitors" clause; and (3) one of the defendants is a citizen of the state where the case was filed.[65]  The second and third factor is indisputable present.

To evaluate whether there is maritime jurisdiction, the Court should apply the test announced in *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995).[66]  "[A]dmiralty jurisdiction exists, and maritime law applies, to tort claims that involve both a maritime location and a maritime connection."[67] "A 'maritime location' exists

---

[64]   (Doc. 1 at 5) in the Southern District Case.

[65]   *Nase v. Teco Energy*, 347 F. Supp. 2d 313, 318-20 (E.D. La. 2004) ("the Court finds that removal under OCSLA is not proper when maritime law governs the plaintiff's claim and one of the defendants is from the state of the suit) (citing 11 different cases); *see also Bulen v. Hall-Houston Oil Co.*, 953 F.Supp. 141, 144 (E.D. La 1997); *Newman v. Superior Well Services*, 1997 WL 208980, at *3 (E.D. La April 28, 1997); *Walsh v. Seagull Energy Corp.*, 836 F. Supp. 411, 417-18 (S.D. Tex 1993); *Fogleman v. Tidewater Barges, Inc.*, 747 F. Supp. 348, 354-56 (E.D. La 1990).

[66]   *El Paso E & P Co., L.P.*, 2010 U.S. Dist. LEXIS 12539, at *4-*5.

[67]   *Id.* at *4.

when, as here, the tort occurred in n[68]avigable waters."[69]   "The 'maritime connection' element is satisfied when the incident has 'a potentially disruptive impact on maritime commerce,' and the vessel's activity 'on navigable waters is so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply in the suit at hand.'"[70]

      a.   A "maritime location" exists.

In its response to the original remand motion, Cameron conceded that "[t]he *Deepwater Horizon* was a mobile offshore drilling unit ... that undoubtedly was capable of movement across navigable waters."[71]   Nevertheless, Cameron attempted to transform the *Deepwater Horizon* into a fixed drilling platform attached to the OCS.

Ironically, Cameron cited to *Demette,* a 2002 Fifth Circuit case,[72] where the majority held that the maritime law applied to a dispute arising from an incident that occurred on a jack-up rig located on the OCS outside of Louisiana's territorial waters.[73]   Even though the rig was jacked-up on the OCS at the time of the underlying incident, Judge Higginbotham was clear that the rig did not lose its vessel status.[74]   Characterizing the jack-up rig's vessel status as "beyond dispute," he wrote that "[t]his circuit has repeatedly held that special-purpose movable drilling rigs, including jack-up rigs, are vessels within the meaning of

---

[68]

[69]   *Id.*

[70]   *Id.* at *4-*5 (quoting *Grubart,* 513 U.S. at 539-40).

[71]   (Doc. 1 at 11) in Southern District Case (Cameron's Response to Motions to Remand).

[72]   (Doc.41 at 9-11) in Southern District Case (Cameron's Response to Motions to Remand).

[73]   *Demette,* 280 F.3d at 501.

[74]   *Id.* at 498 n. 18.

admiralty law."[75] Thus, *Demette* stands for two propositions important to the pending Motions to Remand: (1) a vessel retains its vessel status, even when secured to the seabed of the OCS, and (2) maritime law can apply when a vessel is within OCSLA jurisdiction.

In 2006, another Fifth Circuit panel applied these two propositions from *Demette* in *Strong v. B.P. Exploration & Prod., Inc.* The panel considered whether a liftboat jacked up on the OCS outside of Louisiana's territorial waters was a vessel.[76]   Importantly, BP successfully took the position that maritime law governed the tort claim of Strong, a wireline worker who was injured aboard the liftboat,[77] which was positioned next to B.P.'s fixed platform and served as additional workspace for the various operations performed at the well.[78] The Kleppinger Plaintiffs have a deep concern--from an ethical standpoint--that BP is taking the position that is contrary to the position it took in *Strong*.

Relying on Judge Higginbotham's opinion in *Demette,* the unanimous panel resolved the issue of vessel status in one sentence. "The liftboat, although jacked up and not 'under sail,' qualifies as a vessel on navigable waters."[79] In addition, accepting BP's argument, the panel concluded that the maritime law applied to the plaintiff's tort claim.[80] Thus, *Demette*

---

[75]   *Id.* On March 2, 2010, Judge Clement issued a concurring opinion, where she considered whether a pipelay/bury barge stationed at an oil and gas production site in international waters was a "federal enclave" under the OCSLA. *United States v. Pickett,* 598 F.3d 231, 235-37 (5th Cir. 2010) (Clement, J., concurring).   After examining "longstanding Fifth Circuit precedents," she concluded that the barge was not an OCSLA situs but a vessel. *Id.* Judge Clement's concurrence could be viewed as a supplement to Judge Higginbotham's discussion at footnote 18 in *Demette.* And her concurring opinion serves as additional authority that Cameron is the party in out of step with the Fifth Circuit jurisprudence in this area of the maritime law.

[76]   *Strong v. B.P. Exploration & Production, Inc.,* 440 F.3d 665, 669 (5th Cir. 2006).

[77]   *Id.* at 668 ("B.P. moved for summary judgment, arguing that federal maritime law applies of its own force and provides a three-year statute of limitations that bars Strong's claim.").

[78]   *Id.* at 667.

[79]   *Id.* at 669 (citing *Demette,* 280 F.3d at 498 n. 18).

[80]   *Id.* at 669-670 ("B.P. moved for summary judgment, arguing that federal maritime law applies of its own force and provides a three-year statute of limitations that bars Strong's claim.").

and *Strong* stand for the propositions that a vessel, jacked up on the OCS and not "under sail," remains a vessel, and the maritime law applies to a claim arising on that vessel.

The *Deepwater Horizon* was a semisubmersible drilling rig (technically called a "Mobile Offshore Drilling Unit Dynamically Positioned Vessel (MODU-DPV)" afloat in the Gulf of Mexico at the time of the deadly explosion on April 20, 2010. The Court should conclude that the *Deepwater Horizon* was a vessel on navigable water and, therefore, a maritime location.[81]

> b.   Plaintiffs' Claims Have a Maritime Connection

This element of the *Grubart* test contains a two-part inquiry. "The 'maritime connection' element is satisfied when the incident has 'a potentially disruptive impact on maritime commerce,' and the vessel's activity 'on navigable waters is so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply in the suit at hand.'"[82]

*Strong* ended any debate about whether injuries occurring on vessels are maritime torts, as stated before: "failing to provide a safe workplace aboard a vessel is a maritime tort." Moreover, in *Coats*, the plaintiff suffered a severe knee injury when a jack-up rig's bullplug failed during a pressure test conducted while the vessel was sitting in navigable waters.[83]  On these facts, an en banc Fifth Circuit found that a potentially disruptive impact on maritime commerce existed.[84]  Based on *Coats* and *Strong*, the Court should find that the

---

[81]   "A 'maritime location' exists when, as here, the tort occurred in navigable waters." *El Paso E & P Co., L.P.,* 2010 U.S. Dist. LEXIS 12539, at *4-*5.

[82]   *Id.* at *4-*5 (quoting *Grubart*, 513 U.S. at 539-40) (bold added).

[83]   *Coats*, 61 F.3d at 1119.

[84]   *Id.*

death and injuries resulting from the explosion aboard the *Deepwater Horizon* satisfy "the disruptive impact" issue.

With regard to the "activity traditionally subject to admiralty law" issue, Cameron argued that "activities on a drilling rig are not related to traditional maritime navigation or commerce and do not meet the 'traditionally maritime' requirement" and cited a district court case, *Case v. Omega Natichiq*.[85] Cameron's reliance on *Case* is misplaced. There, the plaintiff's claim arose on an offshore structure "moored to the seabed of the Outer Continental Shelf by a pre-installed 12-point taut-leg mooring system fixed to the seabed by suction embedded plate anchors."[86] Judge Rosenthal concluded that an accident occurring on an offshore drilling platform did not satisfy the *Grubart* test's maritime location element, and activities on "stationary or fixed drilling platforms" did not meet the maritime connection element.[87] In stark contrast, the *Deepwater Horizon* was a vessel in navigable waters. Therefore, *Case* has no application here and *Strong* applies.

The "activity traditionally subject to admiralty law" issue is easily satisfied because "[o]il and gas drilling on navigable waters aboard a vessel is recognized to be maritime commerce"[88] and "[p]roviding compensation for shipboard injuries is a traditional function of the admiralty laws."[89]

---

[85] (Doc. 41 at 13) in Southern District Case (citing *Case v. Omega Natichiq, Inc.* Civil Action No. H-08-0835, 2008 U.S. Dist. LEXIS 52931, at *6 (S.D. Tex. July 10, 2008)).

[86] *Case v. Omega Natichiq, Inc.* Civil Action No. H-08-0835, 2008 U.S. Dist. LEXIS 52931, at *6 (S.D. Tex. July 10, 2008).

[87] *Id.* at *31.

[88] *Theriot,* 783 F.2d at 538-39.

[89] *Coats,* 61 F.3d at 1119.

Because this was a maritime event, per this Court's opinion, the foregoing cases, and several district court opinions,[90] the removal was improper because many defendants were in-state defendants.

## F.   Cameron Failed to Timely Obtain the Consent of All Served Defendants

The Fifth Circuit has interpreted the removal procedures of 28 U.S.C. §§ 1446(a) and (b) to require that all properly served defendants join in a notice of removal.[91] This long-standing interpretation is often referred to as the "unanimity rule" or the "unanimous consent rule."[92] This rule does not require that all served defendants actually sign the notice of removal.[93] Rather, the rule requires only that there be "some **timely** filed **written** indication from each served defendant, or from some person or entity purporting to formally act on its behalf in this respect and to have authority to do so, that it has consented to such an action."[94] Cameron's Notice of Removal states that "Cameron is advised that the other defendants in this action consent to this removal."[95] This statement is insufficient as a matter of law to show all Defendants' "actual joinder in or consent to the original removal petition."[96]

---

[90]   *Nase v. Teco Energy*, 347 F. Supp. 2d 313, 318-20 (E.D. La. 2004) ("the Court finds that removal under OCSLA is not proper when maritime law governs the plaintiff's claim and one of the defendants is from the state of the suit) (citing 11 different cases); *see also Patlan v. Apache Corp.*, 2010 WL 2293272 (E.D. Tex. 2010); *Bulen v. Hall-Houston Oil Co.*, 953 F. Supp. 141, 144 (E.D. La 1997); *Newman v. Superior Well Services*, 1997 WL 208980, at *3 (E.D. La April 28, 1997); *Walsh v. Seagull Energy Corp.*, 836 F. Supp. 411, 417-18 (S.D. Tex 1993); *Fogleman v. Tidewater Barges, Inc.*, 747 F. Supp. 348, 354-56 (E.D. La 1990).

[91]   *Gillis v. Louisiana*, 294 F.3d 755, 759 (5th Cir. 2002); *Doe v. Kerwood, 969 F.2d at 167; Getty Oil Corp. v. Insurance Co. of N. Am.*, 841 F.2d 1254, 1262-63 (5th Cir. 1988).

[92]   *Acosta*, 452 F.3d at 375 (referring to "unanimity rule"); *Doe v. Kerwood, 969 F.2d at 169* (referring to "unanimous consent rule").

[93]   *Getty Oil*, 841 F.2d at 1262 n. 11.

[94]   *Id.* (emphasis added).

[95]   (Doc. 1 at 5) in the Southern District Case.

[96]   *Getty Oil, 841 F.2d at 1262 n.11* (noting that although the removal petition stated that a codefendant had consented to removal, the petition failed to state that the codefendant had authorized the removing defendant to represent to the court that the codefendant had consented, such that "there was no adequate allegation or showing of [the codefendant's] actual joinder in or consent to the original removal petition").

Cameron's Notice of Removal does not contain either a written statement from Transocean, BP Products, Halliburton, and MI Swaco consenting to removal or a written statement that these Defendants authorized Cameron to represent their consent to the Court.[97] Accordingly, the Court should conclude that Cameron's Notice of Removal is insufficient as a matter of law.

Cameron implicitly acknowledged this deficiency by filing consents from Transocean, BP Products, Halliburton, and MI Swaco. On June 3, 2010, Cameron filed a document entitled "Consent to and Joinder in Removal" wherein Transocean, BP Products, Halliburton, and MI Swaco purported to consent to Cameron's removal.[98] But this action came too late. To consent to removal, each properly served defendant "must join in the petition no later than thirty days from the day on which the first defendant was served."[99] Tracy Kleppinger served Transocean on April 26, 2010.[100] Under Fifth Circuit precedent, Transocean had until May 26, 2010 to communicate its consent to the Court. The failure by Transocean to join in Cameron's Notice of Removal within the thirty-day removal period renders the removal

---

[97] *Extreme Outdoors Ltd., Inc. v. Gary Yamamoto Custom Baits, Inc.,* Civil Action No. H-08-1259, 2008 WL 2810874, at *5 (S.D. Tex. July 21, 2008) (Rosenthal, J.) (granting motion to remand because not all defendants timely and properly consented to removal).

[98] (Doc. 15) in Southern District case.

[99] *Getty Oil,* 841 F.2d at 1263 (emphasis added); *see also Gillis,* 294 F.3d at 759 (citing *Getty Oil*).

[100] (Doc. 1 at Exhibit 32) (Return of Service on Transocean of Tracy Kleppinger's First Amended Original Petition and Request for Disclosure).

improvident within the meaning of 28 U.S.C. § 1447(c).[101]   Accordingly, remand is appropriate.[102]

## G.   Request for Expenses.

Based on the foregoing analysis and this Court's opinion, there was no good faith basis for the removal and therefore, the Kleppinger Plaintiffs seek costs.[103]

## IV.
## CONCLUSION

Based on the foregoing authority and analysis, Tracy Kleppinger, Individually and as Representative of the Estate of Karl Kleppinger, Jr. and as Next Friend of Aaron Thomas Kleppinger, a Minor Child, Christopher Choy, Douglas Harold Brown, Brent Mansfield, and Dominique Ussin request respectfully that the Court remand this case to the 234th Judicial District Court of Harris County, Texas.

---

[101]   *Getty Oil,* 841 F.2d at 1263 n.12.  Nor does Cameron's Consent to and Joinder in Removal filed on June 3, 2010 cure this defect in the removal procedure.  *See Smith v. Union Nat'l Life Ins. Co.,*187 F. Supp. 2d 635, 645 (S.D. Miss. 2001); *Hammonds v. Youth for Christ USA,* Civil Action No. SA05CA-0531-FB, 2005 U.S. Dist. LEXIS 32383, at *13 (W.D. Tex. August 16, 2005) (citing *Smith v. Union Nat'l Life Ins. Co.* and finding that the defendant's "late-filed formal consent did not cure the procedural defect [of untimely written indication of consent to removal]").

[102]   Cameron's anticipated argument that the case became removable when Sara Stone, a non-seaman, filed herclaim is folly. There are three bodies of law that could govern her claim: Texas law (as she lived and was injured in Texas and each Defendant had a principal place of business in Texas), general maritime law (because she is asserting non-employerclaims again third parties), or OCSLA (which is inapplicable because the DWH was a vessel and even if OCSLA governed her claim, it was not subject to removal because in-state defendants cannot remove OCSLA claims, as this Court and the Fifth Circuit have found).  Under any scenario, her claims were not removable. Moreover, it is only the potential that OCSLA governed her claims that could have rendered her claims removable. But because Kleppinger's claims could have been removed for the same reason (if it was a good reason), Cameron's filing was untimely because it was filed more than 30 days after Kleppinger served the first defendant.

[103]   All such costs will be donated to a fund that is benefitting the families of the eleven men who lost their lives.  The Kleppinger Plaintiffs, contemporaneously to this filing, have asked the Defendants whether they now oppose remand.  If they do not, the Kleppinger Plaintiffs will not seek costs.

Respectfully submitted,

**GORDON, ELIAS, & SEELY, L.L.P.**

By:   _R. Todd Elias_

**R. TODD ELIAS**
rtelias@gordon-elias.com
Texas Bar No. 00787427
**JEFFREY R. SEELY**
jseely@gordon-elias.com
Texas Bar No. 24033172
1811 Bering Drive, Suite 300
Houston, Texas  77057
(713) 668-9999
(713) 668-1980 (fax)

## CERTIFICATE OF SERVICE

I certify that on October 18, 2010, a copy of the foregoing Motion to Remand was filed electronically with the clerk of the Court using the CM/ECF system.  Notice of this filling will be sent to all counsel by operation of the court's electronic system.

_R. Todd Elias_
R. Todd Elias