UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig | ) | MDL No. 2179 |
| "Deepwater Horizon" in the | ) | |
| Gulf of Mexico, on April 20, 2010 | ) | Section: J |
| | ) | |
| This document relates to: | ) | Judge Barbier |
| | ) | Mag. Judge Shushan |
| ALL CASES | ) | |
| | ) | |

**RESPONSE TO STATE OF LOUISIANA'S MOTION FOR CREATION OF SEPARATE GOVERNMENT TRACK**

COMES NOW the Center for Biological Diversity (the "Center"), plaintiff in *Center for Biological Diversity, Inc. v. BP America, Inc., et al.*, 2:10-cv-01768-CJB-SS and 2:10-cv-02454, and respectfully submits this Response to the State of Louisiana's Motion for Creation of Separate Government Track to the Court.  It is the Center's continued position that the creation of a separate government track for pretrial proceedings, with modification to include citizen civil enforcement cases, will result in an efficient determination of certain cases in the current multi-district litigation ("MDL"), as previously stated in the Center's response to the United States' statement regarding a separate government track.  Docket No. 240.  If, as is the case here, multiple actions involve predominantly similar issues and discovery practice, then prudence suggests all should be placed on the same pretrial track.  Due to the substantial similarities among the Center's case and the actions involving governmental entities as plaintiffs, including the State of Louisiana ("State" or "Louisiana"), the Center proposes that the Court institute an

inclusive "civil enforcement" track that also takes into account the special circumstances and needs of the state and federal governments.

## INTRODUCTION

The Center's case is a statutory enforcement action against BP and other entities pursuant to the citizen suit provisions of the Federal Water Pollution Control Act, 33 U.S.C. § 1365, commonly known as the Clean Water Act, the Comprehensive Environmental Response Compensation and Liability Act, 42 U.S.C. § 9659 ("CERCLA"), and the Emergency Planning and Community Right-to-Know Act, 42 U.S.C. § 11046 ("EPCRA").  As a representative of the public interest, the Center seeks to ensure that BP and other entities are held fully accountable for the environmental damage they have caused to the waters of the Gulf of Mexico.  The Center supports the appointment of Allan Kanner as liaison counsel for this separate track provided that the track is modified to include citizen litigants acting in the role of private attorneys general.  The number of entities in this track will not be numerous.  Based upon preliminary discussions with counsel for some of the government parties, cooperation among the entities in this track should run smoothly.

## ARGUMENT

The Center requests that the Court create an inclusive civil enforcement track in the MDL for three reasons.  First, as citizen-plaintiffs, the Center's role as enforcer of the nation's environmental laws is co-extensive with that of the government.  Second, the statutory and procedural law underpinning the Center's case is distinct to the civil enforcement of environmental statutes.  While it is dissimilar from the majority of the private plaintiffs' tort claims in this MDL, much of the same body of law that will govern the actions brought by, or

likely to be brought by, state and federal authorities also applies to citizen suits. Finally, the numerous concerns raised by the State of Louisiana in support of its motion for a separate government track about being represented by private plaintiff lawyers through the Plaintiffs' Steering Committee are inapplicable to citizen enforcement cases. For these reasons, the Court should create an inclusive civil enforcement track as a modification of the requested government-only track in the MDL.

I.   **THE CENTER'S ROLE AS ENFORCER OF THE NATION'S ENVIRONMENTAL LAWS IS CO-EXTENSIVE WITH THE GOVERNMENT.**

The Center's role as a citizen-enforcer of the nation's environmental laws is co-extensive with that of the state and federal authorities in this case. The creation of a civil enforcement track will promote this co-extensive relationship by safeguarding the Center's ability to hold the defendants accountable for the monumental disaster they have created in the Gulf of Mexico. It will also further the goals of the statutes at issue, including the citizen suit provisions of the Clean Water Act, CERCLA, and EPCRA.

Congress made a deliberate choice when it authorized the public to share in the responsibility of enforcing our nation's environmental laws. It recognized that allowing citizens access to the courts would serve as "a supplemental and effective assurance" that our environmental statutes would be implemented and enforced. *See Natural Resources Defense Council, Inc. v. Train*, 510 F.2d 692, 700 (D.C. Cir. 1975) (discussing Congressional rationale for insertion of citizen suit provisions into the Clean Air Act). The cases that citizens bring operate as a "check to ensure that state and federal governments are diligently prosecuting" environmental crimes. *See Sierra Club v. Hamilton County Bd. of Comm'rs.*, 504 F.3d 634, 637

(6th Cir. 2007) (Clean Water Act). Citizen suits fulfill the important public function of ensuring environmental enforcement and should be handled liberally by the courts. *See Sierra Club v. Chevron U.S.A., Inc.*, 834 F.2d 1517, 1525 (9th Cir. 1987). Courts have long recognized that citizens-enforcers, such as the Center, are welcomed participants in the vindication of environmental interests. *Friends of the Earth v. Carey*, 525 F.2d 165, 172 (2d Cir. 1976).

As the U.S. Environmental Protection Agency also recognizes, citizen suits allow the public to perform a "distinct role" in the private enforcement of our environmental laws by both spurring and supplementing governmental response. U.S. E.P.A., Procedures for Agency Response to Clean Water Act Citizen Enforcement Suit Activity, June 15, 1989, p. 2. Here, the Center's case accomplishes both of those goals. The Center's suit will likely cause state and federal authorities to carefully consider their options in bringing similar claims against the defendants. When the federal government files its enforcement action, as expected, the Center will share the responsibility of enforcement against the defendants. If for some unlikely reason the federal government does not file suit to enforce the Clean Water Act and other applicable environmental protection statutes, then the goals of citizen suits will remain fulfilled, as the Center will zealously advance the public interest in its case against BP and TransOcean.

Regardless of what litigation choices the state and federal authorities make in this MDL, the Center's co-extensive enforcement role will remain intact. Presumably, all parties involved will seek to hold the defendants fully accountable for the monumental disaster created in the Gulf of Mexico. Due to this joint responsibility, given the already properly filed action by the Center, the Court should create an inclusive civil enforcement track for the MDL to ensure that citizens are allowed to play their rightful role throughout the proceedings along with the federal and state

governments.

## II. THE STATUTORY AND PROCEDURAL LAW UNDERPINNING THE CENTER'S CASE IS DISTINCT TO THE CIVIL ENFORCEMENT OF THE NATION'S ENVIRONMENTAL STATUTES.

The second reason why the Court should institute an inclusive civil enforcement track relates to the statutory and procedural law underpinning the Center's case. In particular, the body of environmental enforcement law that governs the Center's case is distinct from the precedents that apply to the overwhelming majority of the private plaintiffs in this MDL. At the same time, however, that same body of law applies to the actions brought by, or likely to be brought by, state and federal authorities. Thus, while the Center's action is very different than the claims brought by the majority of private plaintiffs, it can easily be characterized as belonging to the same category as state and federal environmental claims. As such, the Center's claim should be placed on the same track as the governmental claims in the MDL.

The vast number of cases in this litigation are based in the laws of torts and admiralty. The procedural and substantive issues related to these actions differ significantly from those involved in the enforcement of environmental statutes. For instance, a number of procedural and substantive issues apply to the Center's case which are simply inapplicable to private tort claims, such as the notice and penalty provisions of the Clean Water Act, 33 U.S.C. § 1365(b), § 1319(d) and § 1321. Substantively, even though there are many areas of overlap for purposes of discovery, many of the matters to be resolved in the Center's case are dissimilar to those of the private tort plaintiffs. While most of the private partes in the MDL will focus on causation and the extent of present and future damages, the Center's case is based on strict liability provided by statute and will be focused on the precise amount of oil discharged by the Deepwater Horizon

well, the nature and volume of chemical constituents released into the Gulf of Mexico, and the reasonableness of the defendants' actions in operating the well.

The claims brought by, or likely to be brought by, state and federal authorities will, however, be based on enforcement of statutory law, just like the Center's action.  Because the Center was the first non-governmental organization to file an action against defendants under the Clean Water Act, CERCLA, and EPCRA, its claims cannot be dismissed by the later subsequent filing of a government complaint on these issues.  *See, e.g., Long Island Soundkeeper Fund, Inc. v. New York City Dep't. of Environmental Protection*, 27 F. Supp.2d 380, 384 (E.D. N.Y. 1998) (government prosecution of same claims as citizen enforcers will not preclude prior citizen action nor require its dismissal); *Conn. Fund for Environment, Inc. v. Upjohn Co.*, 660 F. Supp. 1397, 1404 (D. Conn. 1987) (same); *Atlantic States Legal Foundation, Inc. v. Koch Refining Co.*, 681 F. Supp. 609, 614 (D. Minn. 1988) (same); *Chesapeake Bay Foundation v. American Recovery Co., Inc.*, 769 F.2d 207, 208-09 (4th Cir. 1985) (same, in dicta).  This means that the Center and any subsequently filed state or federal action will be inextricably linked and would likely be consolidated, even absent this MDL, under Fed. R. Civ. Proc. 42.

Furthermore, there will be direct overlap of discovery, motion practice, and general case management between the Center's enforcement action and those brought by state and federal authorities.  All parties involved in the civil enforcement of environmental laws will seek similar information in the discovery process.  Given these and other common aspects of the claims brought by the Center and likely to be brought by state and federal entities, creating an exclusionary governmental track would ignore the rights and similarities of citizen enforcement.  Such a process would also thwart judicial economy.

**III.   THE STATE OF LOUISIANA'S CONCERNS DO NOT APPLY TO CITIZEN ENFORCEMENT CASES.**

The numerous concerns raised by the State of Louisiana in its Motion for Creation of Separate Government Track do not apply to citizen enforcement cases. While the Center concurs with the State that its concerns justify the Court's separation of government cases from private tort actions, the rationales for this separation do not apply to citizen enforcement actions.

The State first contends that it cannot allow any portion of its recovery from defendants to be taxed by private plaintiffs for attorney fees under the "common benefit" scheme. Memorandum in Support of Ex Parte Motion for Hearing on Motion for Leave and Related Motion for Creation of Separate Government Track, p. 3 ("State's Motion"). Unlike private plaintiffs, the Center's case is not based on contingency fees, but rather statutory penalties and fee-shifting provisions Congress inserted into the various environmental statutes. *See, e.g.,* 33 U.S.C. § 1319, § 1321 and § 1365(d). Under these provisions, any attorney fees and costs awarded to the Center must be paid directly by the liable defendants. As such, the Center will not seek recompense for its fees and costs from the State and other governmental entities' recovery.

Second, the State is uneasy about ceding control of its case to other plaintiffs. State's Motion, p. 2. Given the number of private tort plaintiffs in this MDL, the State notes that under the present proposed structure that it will be forced to delegate some portion of its management authority to a steering committee or a working group. While the creation a separate track would assuage the State's concerns on this matter, including citizen enforcement cases on that same track would not result in a loss of the State's control. First, a civil enforcement track will not

require the State to join in common "pleading bundles" or a "master complaint," because there are too few potential members in the track to justify such a measure.  Each plaintiff in the civil enforcement track should retain control over the content of their own pleadings, motions, and briefs.  Second, given the small number of likely members, the State would not need to worry about ceding control to a committee on which it lacks representation.  The small number of members on the civil enforcement track means that liaisons from each plaintiff would have the representation and authority to contribute to any decision affecting the track as a whole.

Finally, the State is apprehensive about conflicts of interests, liability, and damages issues.  State's Motion, pp. 3-9.  While these concerns may be applicable to the private tort plaintiffs in the MDL, they do not have the same relevance to the Center or other citizen enforcers.  First, the Center is not representing any client that creates a concurrent conflict of interest problem.  To the contrary, the Center is representing the public interest just like state and federal authorities.  Second, the liability and damages issues relating to the Center's case mirror those of the actions brought by, or likely to be brought by, state and federal authorities.  In fact, both groups will likely seek similar remedies against the defendants: the imposition of significant civil penalties under environmental statutes and full remediation and restoration.

The Center believes that specific concerns about sovereign responsibilities can easily be worked out within a much smaller, and more easily manageable, civil track.

## CONCLUSION

The Center intends to work cooperatively with state and federal authorities (and, of course, where appropriate the other plaintiff groups) throughout the duration of this MDL, as all parties have an interest in the mutual enforcement of our nation's environmental laws.  In light of

this intent, and for the reasons outlined above, the Center respectfully requests that the Court create an inclusive civil enforcement track in lieu of the government-only track thus far requested.

Respectfully submitted this 20th day of October, 2010.

        s/ Charles M. Tebbutt
        Charles M. Tebbutt, *pro hac vice*
        Law Offices of Charles M. Tebbutt, P.C.
        P.O. Box 10112
        470 W. Broadway
        Eugene, Oregon 97440
        Tel: (541) 344-8312
        Fax: (541) 344-0188
        charlie.tebbuttlaw@gmail.com

        Marc Fink, *pro hac vice*
        Center for Biological Diversity
        209 East 7th St.
        Duluth, Minnesota 55805
        Tel: (218) 525-3884
        Fax: (817) 582-3884
        mfink@biologicaldiversity.org

        Damon A. Kirin, LSBA 24729
        Diliberto & Kirin, L.L.C.
        3636 S. I 10 Service Rd., W., Ste 210
        Metairie, LA 70001
        Tel: (504) 828-1600
        Fax: (504) 828-1555
        kirin@attorneys-louisiana.com