UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:   OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 <br><br> THIS DOCUMENT RELATES TO: <br><br> ALL ACTIONS | MDL NO. 2179 <br><br> SECTION: J <br><br> JUDGE BARBIER <br> MAG. JUDGE SHUSHAN |

**DEFENDANTS' MEMORANDUM IN RESPONSE TO JOINT MOTION FOR A PROTECTIVE ORDER**

Defendants respectfully submit this memorandum to assist this Court's consideration of the Plaintiff Profile Form (PPF) required in Pretrial Order No. 11 (Case Management Order No. 1, Section V(C)) (Record Doc. No. 569, 10/19/10). As contemplated by Judge Barbier, the purpose of the PPF is to assist in the process of identifying whether a plaintiff has satisfied the Oil Pollution Act presentment requirement and as a step toward identifying OPA test cases for trial in 2011 and personal injury/wrongful death and *Robins Dry Dock* test cases in early 2012. (10/15/20 MDL 2179 Hearing Tr. 12:8-13:18; CMO 1, Sections (V)(C), (VI)(A), (VI)(B).[1] Plaintiffs' proposed PPF does not advance either objective. In contrast, Defendants' proposed PPF will move these cases forward in the manner contemplated by Judge Barbier. Without a PPF that provides meaningful information, the aggressive schedule contemplated by Judge Barbier is compromised. Moreover, Defendants proposed PPF is in line with such forms

---

1    By accepting the need for a PPF to evaluate the Plaintiffs' claims made in this litigation, none of the Defendants (including BP) waives the presentment requirement of 33 U.S.C. § 2713.

−1−

required in other MDL proceedings.

The Plaintiffs have submitted a one-page large-print form with only rudimentary information to be provided. There is no provision in the form to account for differences in the nature of individual and business plaintiffs other than separate address boxes. Nor is the type of claim plaintiff is asserting easily discernable from the form, e.g., property damage, loss of earnings or profits, subsistence use, removal costs, personal injury or wrongful death.2 No guidance is provided on the form to plaintiffs regarding the type of information to supply about their claims. While Plaintiffs propose that their PPF should be "in lieu of Rule 26(a) Disclosures," no provision is made for plaintiffs to provide documentation of their claims as is required by FRCP 26(a). Despite Judge Barbier's guidance that plaintiff's counsel would have "their clients complete" the PPF (10/15/20 MDL 2179 Hearing Tr. 13:8-11), the form requires only the plaintiff's attorney to sign. In short, Plaintiffs' proposal is deficient in information and does not comport with FRCP 33(b)(3) ("Each interrogatory must … be answered separately and fully in writing ***under oath***.") (emphasis added).

The Defendants have provided the Court with a more robust, yet straightforward PPF. Defendants' proposed PPF is a one-page document, albeit front-and-back. It will elicit basic information about each category of damages the Plaintiff is seeking thereby allowing for meaningful evaluation of Plaintiff's claims. It calls for attachment of supporting documentation. It authorizes the Defendants to obtain records the plaintiff submitted to the BP claims process and the Gulf Coast Claims Facility (GCCF) -- and for release of amounts paid to Plaintiff in the

---

2 At risk of stating the obvious, the great majority of Plaintiffs are making claims for losses under the Oil Pollution Act of 1990 (OPA), and the categories of damages recoverable under OPA are set forth in 33 U.S.C. § 2702(b)(A-F). As the Court knows, there are also personal injury and wrongful death claims at issue here, including injuries occurring in the course of the blowout and fire and during the response effort.

claims process -- information that is maintained as confidential by both claims processes. Significantly, the form requires the Plaintiff (not the Plaintiff's lawyer) to sign the PPF, under oath.

Defendants acknowledge that Judge Barbier ordered that the PPF be "one-page," and to the extent possible, it be an agreed-upon document. Defendants submit that their "front-and-back" document complies with the one-page requirement, and note that Judge Barbier's own comments appeared to invite further refinement of details regarding the PPF. At the hearing, Judge Barbier articulated a desire for a "simplified procedure, like development *maybe* of a one-page information or profile from that the plaintiffs' counsel could have their clients complete. All right. *We can work on that.* I think you-all can work on that to develop something." (Tr. 13:8-13, emphasis added) The Court should note that in the *Vioxx* and *Chinese Drywall* MDLs, Judge Fallon required multi-page PPFs to be verified by Plaintiffs, and those forms likewise required attachment of supporting documentation, provision of authorizations for release of records, and attachment of additional pages if space on the form was insufficient to fully supply the requested information. Judge Barbier obviously intends the PPF to be as simple and short as possible, and Defendants believe that they have specified the bare minimum possible amount of information needed to learn the nature and scope of highly diverse claims by what may be hundreds (if not thousands) of named Plaintiffs who have sued them in this litigation.

*First*, the Defendants' PPF is absolutely necessary to make informed decisions in the next two or three months about which Plaintiff or Plaintiffs should be selected for "OPA Test Cases" starting eight months from now.3 This cannot be done randomly, based simply on Plaintiff's

---

3   PTO No. 11, CMO No. 1, Paragraph VI(A).

name, address, and a brief attorney-generated description of the claim. The Defendants have a legitimate concern that the Plaintiffs will have an understandable desire to "cherry pick" their clients to propose to Judge Barbier as a potential "test case," which Plaintiff can then be deposed and subject to other typical discovery. But Defendants need more than "name, rank, and serial number" information for the selection process to have any real meaning and to be able to employ a reliable methodology to select truly representative "test cases."

Indeed, both the MANUAL OF COMPLEX LITIGATION (FOURTH) (2010) and law review article by Hon. Eldon E. Fallon, Jeremy T. Grabill & Robert Pitard Wynne, *Bellwether Trials in Multidistrict Litigation*, 82 TULANE L. REV. 2323 (2008), stress the importance of obtaining information at the outset of the MDL to adequately categorize and understand the universe of cases before limiting discovery or selecting bellwether cases. "Early identification and clarification of issues is essential to discovery control. It enables the court to assess the materiality and relevance of proposed discovery and provides the basis for a fair and effective discovery plan. A plan established early in the litigation needs to take into account the possibility of revisions based on information gained through discovery. MANUAL FOR COMPLEX LITIGATION (FOURTH) § 11.41 (2010). "In determining appropriate limits [on discovery], the court will need to balance efficiency and economy against the parties' need to develop an adequate record for summary judgment or trial. *This task further underlines the importance of clarifying and understanding the issues in the case **before** imposing [discovery] limits.*" *Id*. at § 11.422 (citation omitted and emphasis added).

Judge Fallon recommends that bellwether selection proceed in a three-step process: (1) cataloguing the universe of cases in an MDL and dividing them into substantively important

categories; (2) creating a bellwether pool from cases that reflect those categories—and that are amenable to trial in the MDL forum, *e.g.*, through direct and original filing in the MDL district or party consent; and (3) selecting cases from the bellwether pool for trial after case-specific discovery. *See Bellwether Trials in Multidistrict Litigation*, 82 TULANE L. REV. 2323, 2343 (2008). "Before the transferee court and the attorneys can determine which cases to set for trial, they should first ascertain the makeup of the MDL." 82 TULANE L. REV. at 2344. Judge Fallon explains, "[T]o ensure that the cases ultimately tried are emblematic of all the cases comprising the MDL, the transferee court and the attorneys must determine the composition of the MDL prior to engaging in any further trial-selection steps." *Id*. Judge Fallon advises that "the transferee court and the attorneys should each conduct a census of the entire litigation and identify all the major variables. This initial step in the bellwether process will require that the attorneys have some knowledge about the individual cases in the MDL. In the *Vioxx* MDL, this was achieved with limited case-specific discovery through the exchange of plaintiff and defendant profile forms." *Id*. at 2344.

Defendants' proposed PPF is designed to yield the type of information required in the first step toward selection of bellwether cases. Reviewing the PPFs used in *Vioxx* and *Chinese Drywall*, which are multi-page forms, Defendants worked assiduously to hone the information required to evaluate the diverse spectrum of Plaintiffs and claims presented in MDL 2179 into a one page front-and-back form. Like both those forms, Defendants' proposed PPF provides that Plaintiffs should attach additional sheets required to provide complete responses to each question on the form.

*Second*, Defendants will need to obtain any documents that support a Plaintiff's claim of

economic consequences of the oil spill.  The claim has to be substantiated, after all.  Included in such documents would be the claim form and other supporting information submitted by the Plaintiff to BP and/or the GCCF, including amounts paid on the claim by either BP or GCCF over the past few months.  The plaintiff may have that material.  The plaintiff can submit it him or herself.  In any event, if the plaintiff does not have a copy of what he or she submitted, the Court should understand that BP itself does not have access to such materials – claims documentation and payment amounts are held in confidence and absent written authorization from a particular claimant, they remain confidential.  At a minimum, then, each Plaintiff in this litigation should be required to submit a records release authorization.  Moreover, Plaintiffs should be required to provide the documentation to substantiate their claims so that Defendants can meaningfully assess their claims.  These requirements for Plaintiffs to provide authorizations and produce supporting documentation are consistent with the PPF forms contemplated in other MDL proceedings.  *See*, *e.g.*, *In re Vioxx* PTO 18C at Par. 1 (ordering plaintiffs to complete the PPF, authorizations for release of records and to "produce with their PPF all documents responsive to the document requests contained therein."); Chinese Drywall PPF (requiring attachment of insurance declaration, construction/renovation contracts, new home warranty declaration, floor plan)

      Notably, courts impose stringent deadlines on plaintiffs to produce the required PPF, authorizations and documents with the sanction of dismissal of their case for failure to comply with the deadlines.  *See*, e.g, *In re Vioxx* PTO 18C at Par. 4 (providing that Defendants Liaison Counsel should issue a warning to Plaintiffs who "fail to provide complete and verified PPFs, signed and dated Authorizations and all responsive documents requested in the PPF with the time

periods set forth" and twenty days to cure the deficiency and that "[n]o other extensions will be granted."); *In re Phenylpropoanolamine Products Liability Litig.*, 460 F.3d 1217, 1232-34 (9th Cir. 2006) (holding dismissal of plaintiffs who failed to timely complete fact sheets was not an abuse of discretion).

*Third*, the Court should note that both *Vioxx* and *Drywall* involved plaintiffs with a uniform type of claim. The injuries in *Vioxx* were a particular type of medical condition allegedly connected with the medication. In *Drywall*, of course, the claims are confined to somewhat standardized damages caused by a specific type of building product. In this MDL, by contrast, Defendants are confronted with diverse individual claims of earnings losses, personal injury, property damage and commercial claims of lost profits, property damage, all spread across several states and arising at different periods of time. The types of plaintiffs range from commercial fisherman to owners of vacation property rentals to sophisticated businesses alleging lost revenues. In short, this litigation presents complex damages issues. The Court is well aware that "lost profits" and other types of claimed economic losses present complexity in accounting and proof. An unsigned claim form with the deceptive simplicity proposed by Plaintiffs will fall far short of providing damages information sufficient to allow an informed judgment of which claimants may present a representative or helpful test case.4

*Fourth*, should the Court decide that "one page" means one side of one page, then Defendants wish to preserve their strong objection to this interpretation on grounds that such a form will yield no meaningful information, and Defendants suggest this alternative: that the PPF form be tailored to the particular types of claims and plaintiffs, e.g., a different PPF for an

---

4   Attached as Exhibits are PPFs from the Vioxx and Drywall litigation.

individual's loss of earnings claim, a business's lost profits claim, an individual's claim for property damage, a commercial enterprise's claim of lost revenue/profits or property damage, and so on. In this way, with separate forms particularized to different categories of losses, no "one size fits all" form will be necessary with its concomitant extra fields of information. For example, in *Chinese Drywall*, commercial and governmental entities filing suit were required to completed only the property information section of the PPF, and were then sent a follow up form at a later date, and separate profile forms were ordered for insurers, retailers, distributers and importer/exporters. Next, the PPF must be signed by the Plaintiff and it must be in compliance with FRCP 33(b)(3). Also, the PPF should have release forms attached, again signed by the Plaintiff, so that BP and GCCF will be authorized to release claims information regarding any submission that Plaintiff has already made. Finally, Plaintiffs should be required to attach to the PPF all documents substantiating their claims.

## CONCLUSION

For the foregoing reasons, the Defendants respectfully submit that their proposed Plaintiff Profile Form be approved and required to be complete by Plaintiffs.

Respectfully submitted,

/s/ Don K. Haycraft
Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana  70139-5099
Telephone:  (504) 581-7979
Facsimile:  (504) 556-4108

and

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Wendy Bloom, P.C.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL  60654
312-862-2000 (Tel)
312-862-2200 (Fax)

**Attorneys for BP America Production Company and BP Exploration & Production Inc.**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 31, 2010, a copy of the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all counsel of record registered to receive electronic service by operation of the court's electronic filing system.  I also certify that I have mailed this filing by United States Postal Service to all counsel of record who are not registered to receive electronic service by operation of the court's electronic filing system.

/s/ Don K. Haycraft

417652124.