## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

IN RE: OIL SPILL by the OIL RIG        MDL. NO. 2179
"DEEPWATER ORISON" in the
GULF OF MEXICO, on April 20, 2010       SECTION J

                                   JUDGE BARBIER
This Document Relates to 10-3168        MAGISTRATE JUDGE SHUSHAN

### CAMERON'S RESPONSE IN OPPOSITION TO THE
### KLEPPINGER PLAINTIFFS' MOTION TO REMAND

Cameron International Corporation ("Cameron") files this Response to the Kleppinger[1]

Plaintiffs' ("Plaintiffs") Motion to Remand (Doc. 562) and for cause would respectfully show

unto the Court as follows:

### I.     SUMMARY OF GROUNDS FOR OPPOSITION

Cameron submits that this Court should defer resolution of Plaintiffs' Remand Motion in

order to achieve judicial economy and promote wise case administration.  The injury claims

asserted in this removed action are necessarily involved in the Transocean limitation action being

managed by this Court in parallel with this MDL proceeding (Case No. 10-2771).  The Court

---

[1] Tracy Kleppinger, on behalf of her deceased husband Karl Kleppinger, filed an action on April 22, 2010—two days after the accident.  Thereafter, 6 groups of individuals filed interventions seeking to join the Kleppinger action.  The "Plaintiffs" pressing this Motion to Remand are Tracy Kleppinger and four of the intervenors – Christopher Choy, Douglas Harold Brown, Brent Mansfield and Dominique Ussin.

1036216v.1

need not and should not address this (or any remand motion) until after the initial trial of limitations claims scheduled for early 2012.

In any event, Cameron properly removed this state court action to federal court under the jurisdictional provision of the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1349(b).  If not deferred, therefore, the Remand Motion should be denied.

Moreover, should this Court have any doubts as to its jurisdiction, the better course to protect the rights of all parties would be to deny removal and certify the question for appeal under 28 U.S.C. § 1292(b).[2]

## II.    RESOLUTION OF THE REMAND MOTION SHOULD BE DEFERRED

The claims at issue in this removed case are all significantly impacted by the limitation proceeding filed by Transocean and transferred to this Court, now pending as Case No. 10-2771. Certain of the intervening plaintiffs in this removed action (Francis, Benton and Ramos) have already filed claims in the limitation proceeding (Doc. No. 110 in 10-2771).  All the remaining named and intervening plaintiffs will no doubt file claims in the limitation proceeding by the rescheduled monition deadline of April 20, 2011, established by CMO No. 1 in this proceeding (Doc. No. 569 § IV.D.).

Furthermore, in CMO No. 1, this Court has initially authorized Transocean to tender these claims to other defendants in the limitation proceeding pursuant to Rule 14(c) and has set deadlines for defendants added by Transocean to file not only cross-claims but also third-party complaints against additional defendants.  (Doc. No. 569 § IV.D.)  By this process, the entirety of the litigation on the claims in this removed action, including all non-Jones Act claims against

---

[2] The denial of a motion to remand is normally not appealable.  *Burden v. General Dynamics Corp.*, 60 F.3d 213, 216 (5th Cir. 1995).  An incorrect remand order, therefore, irrevocably denies the legitimate right of defendants to invoke federal removal jurisdiction.

1036216v.1

defendants other than Transocean, will be resolved by this Court in the federal limitation action.

Also, Plaintiffs should not be permitted to proceed in this action, whether remanded or not, without the stipulation of parties–like BP, Cameron and others–who have indemnity rights or claims against Transocean. *See Odeco Oil & Gas Co. v. Bonnette*, 74 F.3d 671, 675 (5th Cir. 1996); *see also Lewis v. Lewis & Clark Marine, Inc.*, 121 S. Ct. 993, 1001 (2001).

Under CMO No. 1, the defendants herein are required to file, in this MDL proceeding, substantive answers to the personal injury claims by January 18, 2001, along with any legal motions under Federal Rule 12. (Doc. No. 569 § IV.B.). In this process, many of the same legal issues raised in the Remand Motion, particularly those concerning choice of law, will shortly be addressed by this Court. As a matter of proper case administration, this Court should resolve those issues uniformly under the schedule that liaison counsel and the Court have devised, not at the whim of plaintiffs who want to pursue remand precipitately.

Accordingly, even if there were valid grounds for remand, and we will demonstrate below that there are not, it would not make sense as a matter of case administration to remand this action to state court before the initial trial in the limitation proceeding is conducted in February 2012, if then. Any action in this case, even if it could proceed in state court, would be entirely disruptive and duplicative of the coordinated proceedings in this Court.

Plaintiffs obliquely acknowledge this issue, suggesting that they will "work cooperatively with the PSC in conducting discovery." (Doc. 562, p. 2). Not only does this representation beg the question of their ability to proceed in state court while the limitation action is pending, but also it is no meaningful solution to the likely disruption and duplication that would result from parallel state and federal court pre-trial proceedings. Notably, Plaintiffs do not offer any

3

stipulation required for them to proceed with litigation outside the limitation proceeding as required by either the Fifth Circuit in *Odeco* or the Supreme Court in *Lewis*.

Plaintiffs will not be prejudiced by a deferral of ruling on the removal/remand issues.  If a ruling is deferred, they will only have to litigate in one forum--in the limitation action in this Court.  Cameron respectfully submits, therefore, that this Court should defer ruling on Plaintiffs' remand motion, at least until the initial limitation trial is completed in early 2012.

## III.   THE JONES ACT DOES NOT BAR REMOVAL IN THIS CASE

Plaintiffs' principal argument in support of remand is the Jones Act bar to removal. According to Plaintiffs, because their Jones Act claims against Transocean allegedly cannot be removed, then all of the non-Jones Act claims against Cameron and other non-Transocean defendants, which might otherwise be removable, must be sent back to state court.  Plaintiffs' argument fails because 1) the limitation order defeats their Jones Act Claims in state court; and 2) they have mixed in the removable claims of non-seamen and at least one plaintiff who is not asserting a Jones Act claim.

### A.   THE LIMITATION ORDER

Because of the limitation order, the Jones Act claims against Transocean[3] *cannot* go forward in state court.  Instead, these claims will be resolved in the limitation trial, which this Court has already scheduled.  It makes no sense to remand to state court non-Jones Act claims

---

[3] A Jones Act claim is a negligence claim by a seaman against his employer.  46 U.S.C. § 30104. "A seaman may bring suit under the Jones Act *only* against his employer[]."  *Scarborough v. Clemco Industries*, 391 F.3d 660, 667 (5th Cir. 2004) (emphasis added); *Addison v. Gulf Coast Contracting Serv's., Inc.*,744 F.2d 494, 498 (5th Cir. 1984) ("an employer-employee relationship is a necessary element of a true Jones Act claim").  In this case, the employer claimed by Plaintiffs, real or borrowed, is Transocean.  (Doc. 562-1 at p. 3).  Hence, the *only* Jones Act claims are against Transocean.  There are no such claims against Cameron or any other defendant in this case.

against non-Jones Act defendants because of the existence of Jones Act claims against Transocean that will be resolved in federal court, *by this Court.*

Transocean, the owner of the *Deepwater Horizon*, filed a complaint on May 13, 2010 pursuant to the Limitation Act.  46 U.S.C. §§ 30501, *et seq.*  In accordance with that statute, the federal limitation court issued an order that enjoined the continued prosecution of, or the initiation of, claims against Transocean, including Jones Act claims, outside of the limitation action until the termination of the limitation proceeding.  (Doc. 9, Cause 10-1721, at p. 4).  Subsequently, the limitation proceeding was transferred to this Court. But, the limitation order has been in effect since its issuance on May 13, 2010, and will likely remain in effect until the limitation issues are resolved by this Court.  Pursuant to this Court's October 6, 2010 order, a limitation trial is currently set for February 2012.  (Doc. 473).

Cameron filed its Notice of Removal on May 24, 2010.  (Doc. 1, Cause 10-1851).  The propriety of a removal is assessed as of the time of the removal.  *Federal Savings & Loan Ins. Corp. v. Griffin*, 935 F.2d 691, 696 (5th Cir. 1991) ("the power to remove is evaluated at the time of removal").  At the time of the removal, the Jones Act claims against Transocean could not proceed in state court and were only cognizable, if at all, in the federal limitation court.

There is an obvious tension between the Jones Act and the Limitations Act.  The United States Supreme Court addressed this tension in *Lewis v. Lewis & Clark Marine, Inc.*, 121 S. Ct. 993, 1001 (2001).  In that case, a seaman injured aboard a vessel brought a Jones Act claim against his employer, the owner of the vessel, in state court.  The vessel owner filed a limitation action in federal court, and that court subsequently enjoined the prosecution of any suits against the vessel owner in any other forum.  *Id.* at 997.  The Supreme Court granted certiorari in an attempt to sort out the competing rights of a seaman, who wishes to proceed in state court

5

1036216v.1

pursuant to the saving to suitors clause, and the shipowner, who has a right to have claims impacting the limitation issue resolved in federal court.

In balancing the parties' competing interests, the Supreme Court noted that district courts have jurisdiction over actions arising under the Limitation Act, and discretion over any stay that may be issued pursuant to that Act.  *Id.* at 1004.  If the district court determines that the vessel owner's right to limitation will not be adequately protected, the district court may enjoin all state court actions and "proceed to adjudicate the merits, deciding issues of liability and limitation." *Id.*  On the other hand, if the vessel owner's right to limitation can be protected by some means (usually a stipulation), the court has discretion to dissolve the injunction and allow state court actions to proceed.  *Id.*  In sum, the Supreme Court taught that "state courts, with all of their remedies, may adjudicate claims like petitioner's against vessel owners *so long as the vessel owner's right to seek limitation of liability is protected*."  *Id.* at 1005 (emphasis added).   The converse is also true—such actions *cannot* go forward if the limitation right is not protected.

In *Lewis*, the plaintiff, the sole claimant against the vessel, protected the vessel owner's limitation right by entering into a stipulation that the value of his claim was less than the value of the limitation fund.  *Id.* at 997.  In this case, however, Transocean's limitation right is not protected.  There are innumerable claims against Transocean and there is no way to cap the value of all such claims within the amount of whatever limitation fund is eventually determined.

Accordingly, Plaintiffs' Jones Act claims against Transocean cannot proceed in state court.  To the contrary, such claims must and will be adjudicated *by this Court.*

The essence of Plaintiffs' argument is that a seaman prosecuting Jones Act claims against his employer can join claims against other defendants whose actions allegedly contributed to his

6

injuries.  Moreover, Plaintiffs contend, because there is a bar to removing the Jones Act claim, the otherwise removable claims against other defendants cannot be removed.

That reasoning falls apart in this case.  Here, the Jones Act claims themselves *cannot* proceed in state court because of the limitation order, but will be resolved in federal court.  It would therefore turn the removal statute on its head to remand to state court the *otherwise removable* claims against the non-Jones Act defendants because of Jones Act claims against Transocean that cannot be resolved in state court and will be resolved in federal court.

Finally, Cameron has a right to seek a federal forum if the claims against it are removable.  *See Smallwood v. Illinois Central Rwy. Co.,* 385 F.3d 568, 573 (5th Cir. 2004) ("Federal courts should not sanction devices intended to prevent the removal to a Federal court where one has that right, and should be equally vigilant to protect the right to proceed in the Federal court as to permit the state courts, in proper cases, to retain their own jurisdiction").  Cameron's right to seek a federal forum should not be sacrificed based on the existence of a Jones Act claim against a co-defendant that cannot be prosecuted in state court.

## B.    SOME, IF NOT ALL, PLAINTIFFS ARE NON-SEAMEN

To maintain a Jones Act claim, plaintiffs must actually be seamen.  *See Harbor Tug & Barge Co. v. Papai*, 117 S. Ct. 1535, 1540 (1997).  While the Jones Act does not define the term "seaman," the Supreme Court has created a two-part test to aid in making that determination.  *See Chandris v. Latsis*, 115 S. Ct. 2172, 2190 (1995).  To qualify as a seaman, (1) the employee's activities must contribute to the function or mission of the vessel, *and* (2) the employee must possess a substantial connection to a single vessel or identifiable fleet of vessels.  *Id*.  It is not enough for claimants simply to *say* they are seamen.

Here, that is all Plaintiffs have done.  They have not presented any evidence, by affidavit or otherwise, to establish that fact, nor have they made detailed allegations to support that status. And, at least one plaintiff–Sara Stone--is obviously not a seaman.  She was not on the rig, was not employed by any defendant, and is not claiming though any deceased seaman.  (Doc. 1-4, Cause 10-1851, at pp. 84-85).  Three other intervening plaintiffs who do not join the motion to remand (Francis, Benton, and Ramos) have alleged, in the alternative, that they were not seamen. (Doc. 111, Cause 10-1721, at p. 10).  Two plaintiffs (Ussin and Benton) work for companies other than Transocean or BP, and neither their duties nor their connection to the *Deepwater Horizon* is stated.  In fact, Plaintiff Benton cannot be advancing a Jones Act claim because he is not suing his employer (Oceaneering), and he makes no allegation that he is a borrowed servant of any defendant in the case.  *Scarborough*, 391 F. 3d at 667.

*Hufnagel v. Omega Serv. Indus., Inc.*, 182 F. 3d 340 (5th Cir. 1999) is instructive here. In that case, a worker injured on a platform claimed to be a seaman and brought Jones Act claims against his employer.  The defendant challenged the seaman status of the plaintiff.  In addressing Hufnagel's motion to remand, the Fifth Circuit held that "defendants may pierce the pleadings to show that the Jones Act claim has been fraudulently pleaded to prevent removal." *Id*.  The Fifth Circuit noted that, although a trial court should not pre-try a case to determine removability, a court may use a "summary judgment-like procedure" to test that issue.  *Id*.  Hufnagel was deposed and that deposition revealed that he was not employed by the owner of the vessel and that his duties had nothing to do with the navigation, maintenance, or voyage of the vessel.  *Id.* at 347.  Hence, the Fifth Circuit determined that Hufnagel was not, in fact, a seaman and removal was proper pursuant to OCSLA despite the Jones Act allegations.  *Id*. at 349.

1036216v.1

In this case, at least one plaintiff is most assuredly not a seaman.  Moreover, there are insufficient allegations of seaman status as to several others, and minimal allegations as to the rest.  Moreover, Plaintiffs have submitted no evidence to support the seamen status of any plaintiff. At a minimum, as in *Hufnagel*, this Court should allow limited discovery to determine whether, and which, plaintiffs are seamen.

## IV.     CAMERON PROPERLY REMOVED THIS CASE

### A.     OCSLA MANIFESTLY APPLIES

OCSLA expressly invests the federal district courts with jurisdiction as follows:

> [T]he district courts of the United States shall have jurisdiction of cases and controversies arising out of, or in connection with (A) any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals . . . .

43 U.S.C. § 1349(b)(1).  As this Court recognized, this jurisdictional grant is very broad.  (Doc. 470, p. 6).  It must be broad to accomplish the purposes of the Act.  Specifically, one purpose of OCSLA is to assert national sovereignty over the outer Continental Shelf.  *Tennessee Gas Pipeline v. Houston Casualty Ins. Co.*, 87 F. 3d 150, 153 (5th Cir. 1996).  Another "purpose of OCSLA [is] to define the law applicable to" the outer Continental Shelf.  *Id.*  That law is exclusively federal.  43 U.S.C. § 1333(a).  Finally, OCSLA expressly invests the district courts with jurisdiction over OCS disputes.  *Id.* at 154 ("OCSLA not only defines the law applicable to the OCS, but also grants federal courts jurisdiction over disputes occurring there").

This Court has already explained that to evaluate whether there is original jurisdiction pursuant to Section 1349, "courts determine whether the activities that caused the injury can be classified as an 'operation conducted on the outer Continental Shelf' and whether that 'operation' involved the exploration and production of minerals."  (Doc. 470, at p. 6, quoting 43

U.S.C. § 1349(b)(1)).  In addition, this Court has already recognized that this accident arose during operations on the OCS for the exploration and production of oil from a federal mineral lease.  OCSLA manifestly applies.

### B.     THERE IS REMOVAL JURISDICTION PURSUANT TO 1441(a)

Removal under 28 U.S.C. § 1441 is divided into separate sections.

- **Subsection 1441(a)** provides authority for the removal of any civil action "of which the district courts of the United States have original jurisdiction."

- **Subsection 1441(b)** provides authority in its <u>first sentence</u> for removal of "[a]ny civil action of which the district courts have original jurisdiction founded on a claim or right ***arising under*** the Constitution, treaties or laws of the United States" and in that instance the state court case "shall be removable without regard to the citizenship or residence of the parties." (emphasis added).  Under the <u>second sentence</u> of subsection (b), however, "in state court actions in which the only basis for federal jurisdiction is complete diversity of citizenship and a sufficient amount in controversy, removal is barred if any of the properly joined and served defendants is a citizen of the state in which the action was brought."  14B C. WRIGHT, A. MILLER, E. COOPER & J. STEINMAN, FEDERAL PRACTICE AND PROCEDURE, § 3722 at (4th ed. 2009).

"Arising under" jurisdiction, as referenced in subsection (b) above, flows from 28 U.S.C. § 1331.

In cases where federal court jurisdiction relies on "arising under" status, the well-pleaded complaint rule applies.  *American National Red Cross v. S.G.*, 112 S. Ct. 2465, 2472 (1992).  But, in cases where federal court jurisdiction arises from a separate and independent grant of federal jurisdiction, the well-pleaded complaint rule does not apply.  *Id.*  This Court recognized, in the *State of Louisiana* order, that OCSLA § 1349 provides such a separate and independent basis for jurisdiction.[4]  (Doc. 470, at p. 5).

---

[4] Specifically, this Court held as follows:

[a]lthough Plaintiff is correct in arguing that the well-pleaded complaint rule prevents Defendants from removing this matter on the basis of 28 U.S.C. § 1331, there is nothing preventing Defendants from removing this matter based on an assertion of jurisdiction under 43 U.S.C. § 1349.

*Id.*

1036216v.1

This Court's opinion is consistent with the Fifth Circuit's opinion in *Amoco Production Co. v. Sea Robin Pipeline Co.*, 844 F.2d 1202 (5th Cir. 1988).  In that case, Sea Robin removed pursuant to section 1441(a).  *Id.* at 1203 n.1.  The district court denied remand on the ground that it had jurisdiction under OCSLA's separate and independent grant of jurisdiction, 43 U.S.C. § 1349(b)(1).  *Id.* at 1204.  As in the *Red Cross* case, the parties opposing removal attempted to invoke the well-pleaded complaint rule.  Correctly anticipating the Supreme Court's holding in *Red Cross* that an independent grant of jurisdiction made the well-pleaded complaint rule inapplicable, Judge Brown concluded that "we need not traverse the Serbonian Bog of the well-pleaded complaint rule" because "OCSLA [§ 1349(b)(1)] expressly invests jurisdiction in the United States District Courts."  844 F.3d at 1205 & n.13 (citation omitted).  The Fifth Circuit then determined that the case involved oil and gas operations within the meaning of OCSLA § 1349(b)(1) and thus raised a controversy governed by that jurisdictional grant.  844 F.2d at 1205-10.  On that basis, the Fifth Circuit concluded that "this controversy is within federal jurisdiction under OCSLA," and therefore affirmed the district court's denial of remand.  *Id.* at 1210.

*Tennessee Gas Pipeline v. Houston Casualty Ins. Co.*, 87 F.3d 150 (5th Cir. 1996), reached a similar result.  The decision in *Tennessee Gas* involved an allision between a tug and an offshore drilling platform.  The platform owners sued in state court, admittedly seeking to foreclose federal jurisdiction by alleging only a general maritime claim.  87 F.3d at 152.  The insurance company removed.  The district court denied remand, but certified the issue for interlocutory appeal.

In addressing the issue, the Fifth Circuit carefully reviewed the purposes of OCSLA.  *Id.* at 153.  After concluding this analysis, the Court had "no difficulty in deciding that [OCSLA] § 1349" granted jurisdiction over the claims in the case because the case involved "development or

11

production of minerals on the OCS." 87 F.3d at 154.  Notably, the Court's "conclusion that
OCSLA confers original jurisdiction over this suit [was] unaffected by the maritime nature of the
underlying claim." *Id.* at 155.  Referring specifically to the removal question, the Fifth Circuit
held as follows:

> Our conclusion that OCSLA vests the federal courts with original subject matter
> jurisdiction over this case establishes that removal is proper under 28 U.S.C. §
> 1441(a).

87 F.3d 155.  The Court observed that the *Sea Robin* decision supported this holding.  *Id.* at 155-
56.

The majority opinion also discussed the supposed "conundrum" posed by the provisions
of 28 U.S.C. § 1441(b), but ultimately found that removal was proper under the second sentence
of subsection (b) without resolving the interaction between subsections (a) and (b).  *Id.* at 156.
In concurrence, however, Judge Jolly pointed out that the discussion of subsection (b) was
unnecessary, and merely dicta, because removal jurisdiction had already been established under
28 U.S.C. 1441(a).  *Id.* (Jolly, J., concurring).

Because OCSLA provides a separate and independent basis for jurisdiction, removal of
an OCSLA case is proper without respect to the strictures that might apply to an "arising under"
case.  Hence, removal of an OCSLA dispute is proper, under Section 1441(a) or otherwise.

C.     **REMOVAL WAS PROPER PURSUANT TO 1441(b)**

The separate and independent grant of jurisdiction set out in OCSLA section 1349 makes
removal proper under 28 U.S.C. § 1441(a) because 1349 does not rely solely on "arising under"
jurisdiction.  Plaintiffs do not even address this point and this Court should reject remand on this
basis alone without addressing the "arising under" provisions of 1441(b).  *See Tennessee Gas*, 87
F.3d at 155 (Jolly, J., concurring).

1036216v.1

However, OCSLA is obviously a federal statute and a claim under OCSLA manifestly would also "arise under" federal law.   Consequently, OCSLA provides a basis for removal pursuant to the "arising under" standard of the first sentence of 1441(b) as well and removal is proper without regard to the citizenship of the parties.   In fact, Plaintiffs do not dispute that proposition.

Instead, the Plaintiffs rely on a line of district court cases holding that where maritime law and OCSLA overlap, maritime law displaces OCSLA.  Because maritime law does not "arise under" federal law for removal purposes, they contend removal is only proper under the second sentence of 1441(b) if no defendant is a citizen of the state where suit is brought.

This argument lacks merit.   Removal is proper, regardless of citizenship, pursuant to 1441(b) because OCSLA arises under federal law.   The second sentence of 1441(b) is not implicated.  Alternatively, the claims advanced are not maritime in any case.

> 1. **This Court Should Resolve the "Conundrum" Consistently with the Manifest Intent of Congress**

In *Tennessee Gas* the Fifth Circuit reviewed the congressional history and concluded that Congress may well have intended for OCSLA to support removal under the <u>first sentence</u> of 1441(b) regardless of the citizenship of the parties even though the <u>second sentence</u> arguably only supported removal if no defendant was a citizen of the state where suit was brought.   87 F.3d at 156.   The Fifth Circuit called this apparent conflict within 1441(b) a "conundrum."  *Id.* However, the Fifth Circuit determined that it "need not resolve the conundrum" because in the case before it, no defendant was a citizen of the state where suit was brought and so removal was appropriate regardless.  *Id.*

In *Hufnagel* the Fifth Circuit again acknowledged this "conundrum." *Hufnagel*, 182 F.3d at 340.   Once again, though, the Fifth Circuit stated that "we need not resolve this conundrum

1036216v.1

today, either" because the court concluded that the claims before it were non-maritime. *Id.*

In the *State of Louisiana* case, this Court recognized that the Fifth Circuit has never resolved this conundrum.[5]   And, this Court was in the exact same position as the *Tennessee Gas* Court because no defendant before it was a citizen of Louisiana where the suit was brought. Hence, like the *Tennessee Gas* court, this Court could rest its opinion on that fact, and it did not need to resolve the "conundrum" that the Fifth Circuit recognized twice, but never resolved.

Here, the Court should find that removal jurisdiction is proper pursuant to 1441(a) and thus it need not reach the 1441(b) "conundrum."  Moreover, as will be discussed below, even if this Court does engage in an analysis pursuant to Section 1441(b), it should determine that there is no overlap between maritime law and OCSLA because, as in *Hufnagel*, the activity giving rise to the accident in this case did not have a sufficient maritime connection.

However, if this Court rejects both of those arguments, it will have to resolve the "conundrum" in this case because several defendants are citizens of Texas where this suit was brought.  Respectfully, this Court should resolve this "conundrum" in a manner consistent with the manifest intention of Congress.

Congress passed OCSLA to assert sovereignty over the minerals of the OCS, to define the law that would apply there, and to provide a federal forum for any cases or controversies arising therefrom.  *Tennessee Gas*, 87 F. 3d at 153-54; *EP Operating Ltd. P'ship. v. Placid Oil Co.*, 26 F. 3d 563, 566 (5th Cir. 1994) (OCSLA was "intended to govern the full range of potential legal problems that might arise in connection with operations on the Outer Continental

---

[5] This Court's order in the *State of Louisiana* case relates that the Fifth Circuit has never affirmatively stated that where OCSLA and general maritime law overlap, the case is removable without regard to citizenship.  (Doc. 470, pp. 9-10).  The opposite is, therefore, necessarily true—i.e., the Fifth Circuit has never said that when OCSLA and maritime law overlap, removal is only proper if no defendant is a citizen of the state where suit is brought.  Even though the issue has been put before the Fifth Circuit twice, that Court declined to resolve the "conundrum."

Shelf").  Consequently, this Court should not interpret 28 U.S.C. § 1441(b) in such as way as to exclude from federal court a large segment of cases or controversies arising from operations on the OCS.  Instead, this Court should hold that cases falling within the broad scope of OCSLA § 1349 can be removed pursuant to Section 1441(b) regardless of the citizenship of the parties.

Plaintiffs contend that they are advancing maritime claims pursuant to the saving to suitors clause.  Because maritime claims do not arise under the Constitution, treaties, or federal statute, they cannot generally be removed pursuant to Section 1441(b).  Even so, "it is … well-established that the saving to suitors clause does not prevent the removal of maritime claims when original jurisdiction is based on something other than admiralty." *Tennessee Gas*, 87 F.3d at 153.  To wit,

> [t]he "saving to suitors' clause does no more than preserve the right of maritime suitors to pursue nonmaritime *remedies.* It does **not** guarantee them a nonfederal *forum,* or limit the right of defendants to **remove** such actions to federal court **where there exists some basis for federal jurisdiction other than admiralty.**

*Id.* (emphasis added).  In this case, OCSLA provides the basis for removal, outside of admiralty, under the first sentence of Section 1441(b).  *Id.  See also Dahlen v. Gulf Crews, Inc.*, 281 F.3d 487, 492 (5th Cir. 2002).  Therefore, this Court should find that removal is proper, regardless of citizenship, and never reach the second sentence of Section 1441(b).

This construction of OCSLA would resolve the "conundrum" consistently with Congress' intent to treat oil drilling activities on the OCS under OCSLA, as opposed to maritime law.  This intent was made clear in *Rodrigue v. Aetna Cas. & Surety Co.*, 89 S. Ct. 1835 (1969).  In that case, the Supreme Court carefully parsed OCSLA and its legislative history and determined that Congress intended that OCSLA, and not maritime law, was to apply to operations from a structure attached to the OCS for the purpose of procuring minerals therefrom.  *Id.* at 1842.

1036216v.1

The Fifth Circuit echoed this conclusion in *Texaco Exploration & Prod. v. AmClyde Engineered Products Co.*, *Inc.*, 448 F3d 760 (5th Cir. 2006).  In that case, a crane on a vessel (barge) was lifting a component part of an oil platform onto the platform when a line snapped and the part fell into the sea.  *Id.* at 765.  Even though the accident happened on a vessel, the Fifth Circuit determined that OCSLA, to the exclusion of maritime law, applied because the accident occurred in connection with operations to "develop[] the resources of the Outer Continental Shelf…"  *Id.* at 771.  Accordingly, "any connection to maritime law is eclipsed by the construction's connection to the development of the Outer Continental Shelf."  *Id.*

Plaintiffs rely entirely on the *situs* of the accident.  They argue that if the situs of the accident was a vessel, then maritime law applies to the exclusion of OCSLA.  But, that did not matter in *Amclyde.*  Of significance in *Amclyde* was the connection to the development of the OCS.  That the accident occurred on a vessel was immaterial.

In this case, the only purpose for the *Deepwater Horizon* to be where it was, doing what it was, at the time of the accident, was to develop the mineral resources of the OCS.  This was the type of activity that Congress intended to capture in OCSLA.  That federal statute provides arising under jurisdiction for purposes of 1441(b).  Maritime law does not apply because any connection to maritime law is eclipsed by the connection to oil and gas development on the OCS.  *Amclyde*, 448 F.3d at 771.  But even if it might apply, it should not disturb the question of whether a federal court has jurisdiction.  *Dahlen*, 281 F.3d at 492.

With respect, the district courts that allowed maritime law to apply to defeat an OCSLA removal pursuant to the second sentence of 1441(b) are not binding on this Court and were wrongly decided.  This "conundrum" was presented to the Fifth Circuit twice, and the Fifth

Circuit chose not to resolve it either time.  This Court should resolve it in keeping with the text and intent of OCSLA.

### 2.   The Claims are Not Maritime in Any Event

Even if this Court does credit the district court cases relating to situations where maritime law and OCSLA overlap, it should still deny remand because, here, there is no overlap.  The claims being advanced are not maritime.

Plaintiffs note (Doc. 562-1, p. 10) that *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 115 S. Ct. 1043, 1048 (1995), set out the test to determine if a claim is maritime.  Specifically, to "give rise to a tort claim in admiralty, an incident must have *both* a maritime situs and a connection to traditional maritime activity."  *Id.*   Plaintiffs argue that a mobile offshore drilling unit ("MODU") like the *Deepwater Horizon* is a vessel; hence they conclude that the maritime situs element is met.  Next, they effectively argue that *anything* that occurs on a vessel has a maritime connection.  The upshot of this argument is that the *Grubart* test will *always* be satisfied whenever a non-fixed oil platform is involved.  Based on this syllogism, they conclude that OCSLA can never apply to vessels, but instead "applie[s] solely to fixed structures."  (Doc. 562-1, at p. 9).  Plaintiffs' argument proves too much.  It is directly contrary to the terms of the statute and the intent of Congress.

#### a.  Congress Intended for OCSLA to Apply to Vessels that are Temporarily Attached to the Seabed – Not Just Fixed Structures

In its original form, OCSLA provided for federal jurisdiction over "all artificial islands and *fixed structures* which may be erected thereon for the purpose of exploring for, developing, removing, and transporting resources therefrom."  *Alliance to Protect Nantucket Sound, Inc. v. US Dept. of the Army*, 398 F.3d 105, 100 n.4 (1st Cir. 2005) (quoting 43 U.S.C. § 1333(a) (1953)) (emphasis in original). In 1978, however, because of the development of relatively

17

impermanent structures that did not clearly fall within the "fixed structures" rubric, Congress expanded the scope of the statute.  Today, OCSLA provides:

> The Constitution and laws and civil and political jurisdiction of the United States are herby extended to the subsoil and seabed of the outer Continental shelf and to all artificial islands, *and all installations and other devices permanently or temporarily attached to the seabed* which may be erected thereon for the purpose of exploring for, developing, or producing resources therefrom, or any such installation or other device (other than a ship or vessel) for the purpose of transporting such resources, to the same extent as if the outer Continental shelf were on area of exclusive Federal jurisdiction located within a state . . . .

43 U.S.C. § 1333(a) (emphasis added).

The legislative history of the 1978 amendment leaves no doubt that OCSLA can apply to vessels:

> It is thus made clear that federal law is to be applicable to all activities on all devices in contact with the seabed for exploration, development, and production. The committee intends that federal law is, therefore, to be applicable to activities on *drilling ships, semi-submersible drilling rigs, and other watercraft*, when they are *connected to the seabed by drillstring, pipes, or other appurtenances*, on the OCS for exploration, development, or production purposes.

H.R. Rep. No. 95-590, at 128 (1977), *reprinted in* 1978 U.S.C.C.A.N. 1450, 1534 (emphasis added).

Accepting Plaintiffs' argument that anything that happens on a vessel is maritime would effectively reinsert the "fixed structures" limitation back into the statute.

### b.  The Fifth Circuit recognizes that OCSLA Applies to Vessels Temporarily Attached to the Seabed–Not Just Fixed Structures

The Fifth Circuit has recognized that, in its present form, OCSLA may include vessels involved in "exploring for, developing, or producing resources."  *Demette v. R&B Falcon Drilling Co.*, 280 F.3d 492, 497 (5th Cir. 2002) ("[T]he use of the term 'temporarily' implies that devices that can detach from the seabed and are capable of movement on the sea—*i.e.*, *vessels*— can fall within the scope of the OCSLA." (emphasis added)), *rev'd on other grounds*, *Grand Isle*

1036216v.1

*Shipyard, Inc. v. Seacor Marine LLC*, 589 F.3d 778 (5th Cir. 2009).   Based on this reasoning,

*Demette* held that a jackup rig[6] was an OCSLA situs.   *Id.*

Plaintiffs cite *Demette* for the proposition that a rig "temporarily attached" to the seabed

for the purpose of producing the minerals does not lose its vessel status.   (Doc. 562-1, p. 11).

But they ignore the holding that such a vessel is *also* an OCSLA situs.   By focusing exclusively

on the vessel status, and reasoning that *anything* that happens on a vessel is maritime, they

essentially render moot the finding that a "temporarily attached" vessel is an OCSLA situs.   That

is because under their paradigm OCSLA would *never* apply to a vessel.

Congress manifestly intended for OCSLA to apply to any device, including a vessel, that

was temporarily attached to the seabed for the purpose of exploring for, or producing, minerals

from the OCS.   The Fifth Circuit has clearly held that OCSLA can apply to vessels.

Accordingly, this Court must reject Plaintiffs' bedrock argument that OCSLA only applies to

fixed structures, but can never apply to vessels.

### c.  If the Only Question was Whether the Accident Occurred on a Vessel, the *Grubart* Factors Would Be Unnecessary

---

[6] Plaintiffs also argue that a connection to the seabed by a marine riser is an insufficient attachment to the seabed to fall under the amended statute.   (Doc. 562-1, p. 9).   They concede that that the "temporarily attached" language of the statute might apply to a jackup rig like the one in *Demette*, but argue that it would not apply to a MODU like the *Deepwater Horizon.*   However, the clear intent of the amended statute was to capture all of the myriad new devices being used to drill for oil on the OCS.   As the legislative history makes clear, this includes "drilling ships, semisubmersible drilling rigs, and other watercraft" when attached to the seabed by things such as "pipes."   H.R. Rep. No. 95-590, at 128 (1977), *reprinted in* 1978 U.S.C.C.A.N. 1450, 1534 (emphasis added).   Furthermore, the Fifth Circuit taught that OCSLA could apply to a floating rig, which would be attached to the seabed with a marine riser, in *Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 543-46 (5th Cir. 2002), *rev'd on other grounds*, *Grand Isle Shipyard, Inc. v. Seacor Marine LLC*, 589 F.3d 778 (5th Cir. 2009).   The *Deepwater Horizon* had been on station for several months. Its sole purpose was to explore for undersea oil.   It was attached to the seabed by a rigid pipe known as a marine riser and could not leave station without detaching that pipe from the wellhead.   Finally, it was held as stationary as technologically possible.   The *Deepwater Horizon* clearly falls within the new class of drilling devices that Congress intended to capture when it amended the statute.

Plaintiffs effectively argue that if the accident occurred on a vessel – even a specialty-purpose drilling vessel – the claims are invariably maritime because, according to Plaintiffs, *anything* that happens on a vessel is maritime in nature.  But, if Plaintiffs' argument were true, there would be no need for the *Grubart* factors.  The only relevant question would be – did the accident occur on a vessel?

Plaintiffs' argument is wrong, though.  There are things that can occur on a specialty-purpose drilling vessel that do not lead to maritime claims. That is why the *Grubart* factors -- a maritime situs and a maritime connection – are needed.  115 S.Ct. at 1048.  *Both* tests must be met for maritime law to apply.  *Hufnagel*, 182 F.3d at 351.  In this case, the maritime connection test is not met.

### d.   The Activity Giving Rise to the Accident was Below the Seabed

The connection or nexus element of the *Grubart* test "requires a claim to arise from a traditionally maritime activity."  *Case v. Omega Natichiq, Inc.*, 2008 WL 274124, at *12 (S.D. Tex. July 10, 2008).  Moreover, the maritime nexus must exist wholly apart from the situs of the relevant structure in navigable waters.  *Simms v. Roclan Energy Servs., Inc.*, 137 F. Supp. 2d 731, 737 (W.D. La. 2001).

"Traditionally, maritime law primarily concerns the movement of vessels upon waters." *Dozier v. Rowan Drilling Co.*, 397 F. Supp. 2d 837, 850 (S.D. Tex. 2005).  Moreover, it involves "navigational rules—rules that govern the manner and direction those vessels may move upon the water."  *Executive Jet Aviation, Inc. v. City of Cleveland*, 93 S. Ct. 493, 505 (1972).  It is concerned with "maritime liens, the general average, captures and prizes, limitation of liability, cargo damage, and claims for salvage."  *Id.*

The accident in this case did not occur while plaintiffs were boarding the vessel, moving

cargo around, or maintaining or repairing the vessel.  Nor did it occur while the *Deepwater Horizon* was navigating the seas.[7]  Rather, the accident here occurred while the parties were displacing drilling mud out of, and preparing to set cement in, a wellbore far beneath the seabed floor.  A gas bubble apparently escaped from the seabed floor, travelled up the riser, and caused an explosion on the rig.  The activity giving rise to this accident was related uniquely to oil and gas production.  Displacing drilling mud and setting cement in a wellbore is required in oil and gas drilling whether on land or on water and has no connection to traditional maritime activity.

The relevant activity in this case can be likened to wireline work because both involve sub seabed activity.  For instance, wireline services involve placing a tool downhole beneath the

---

[7] The cases cited by the Plaintiffs where maritime law applied and displaced OCSLA related to *traditional* maritime activities.  For instance, they involved accidents arising from

- Maintaining or Repairing the Vessel:

  o *Nase v. Teco Energy*, 347 F. Supp. 2d 313, 320 (E.D. La. 2004) (worker injured while performing repair work on vessel);
  o *Patlan v. Apache Corp.*, 2010 WL 2293272, at *6-7 (E.D. Tex. May 11, 2010) (worker injured while repairing the vessel);
  o *Coats v. Penrod Drilling Corp.*, 61 F.3d 11113, 1119 (5th Cir. 1995) (en banc) (worker injured while repairing and maintaining a vessel in navigable waters);
  o *Newman v. Superior Well Serv's., Inc.*, 1997 WL 208920 (E.D. La. Apr. 27, 1997) (worker injured when slag from cutting torch burned through safety harness and he fell to the deck);

- Moving or Loading Cargo or personnel:

  o *Bulen v. Hall-Houston Oil Co.*, 953 F. Supp. 141, 143 (E.D. La. 1997) (worker injured while transferring from a vessel to a platform);
  o *Strong v. BP Exploration & Production, Inc.*, 440 F.3d 665, 667 (5th Cir. 2006) (worker injured while loading equipment into liftboat);
  o *Fogelman v. Tidewater Barges, Inc.*, 747 F. Supp. 348, 355 (E.D. La. 1990) (worker injured while unloading coiled tubing from a vessel);

- A Contract Chartering a Vessel:

  o *Theriot v. Bay Drilling Corp.*, 783 F.2d 527 (5th Cir. 1986) (contract to charter a vessel, even a specialty-purpose drilling vessel, is a maritime contract).

1036216v.1

seabed to perform oil and gas related activities.   Wireline work, even from a vessel temporarily attached to the seabed for the purpose of producing minerals, does not have a maritime nexus. *A.M.C. Liftboats, Inc. v. Apache Corp.*, 622 F. Supp. 2d 355, 360 (5th Cir. 2008); *Domingue v. Ocean Drilling & Exploration Co.*, 923 F.2d 393, 396 (5th Cir. 1991); *Union Tex. Petroleum Corp. v. PLT Eng'g, Inc.*, 895 F.2d 1043, 1050 (5th Cir. 1990); *Thurmond v. Delta Well Surveyors*, 836 F.2d 952, 956 (5th Cir. 1988).   This was made clear in a similar context in *Dozier*, 397 F. Supp. 2d at 837.   That case involved an injury to a worker performing wireline services aboard a drilling vessel.   After a lengthy analysis, the Court determined that the maritime connection test was not met because wireline work has "repeatedly been recognized as nonmaritime in nature."   *Id.*   Accordingly, the *Dozier* Court found that maritime law did not apply, that therefore there was no overlap between OCSLA and maritime law, and thus removal under Section 1441(b) was proper.[8]   *Id.*

In *Hufnagel,* 182 F.3d at 350, the plaintiff contended that maritime claims overlapped with OCSLA such that removal under 1441(b) was only proper if no defendant was a citizen of the state where suit had been brought.   But, the Fifth Circuit analyzed the claims being advanced and determined that they were not maritime. *Id.* at 351.   Consequently, the Fifth Circuit determined that removal under OCSLA was proper pursuant to Section 1441(b) regardless of the citizenship of the parties. *Id.* at 353.   Similarly, the claims in this case, which arise from oil and

---

[8] Plaintiffs rely on *Strong v. BP Exploration & Production, Inc.*, 440 F.3d 665 (5th Cr, 2006) in an attempt to counter this authority.   (Doc. 562-1, pp. 12-13). They stress that even though Strong was a wireline worker the Fifth Circuit found that maritime law applied.   (Doc. 562-1, p. 12).   *Strong* is inapplicable.

First, *Strong* was not a removal case.   But, more importantly, while Strong was a wireline worker, *he was not injured while performing wireline work.*   Instead, he was injured while loading equipment into a liftboat.   *Strong*, 440 F.3d at 667.   Loading and unloading cargo may have a connection to traditional maritime activity.   Displacing drilling mud from, and setting cement in, a wellbore below the seabed does not.

1036216v.1

gas activity beneath the seabed, are not maritime.

Indeed, if this case is found to have a maritime connection, then it is hard to imagine *anything* that could occur on a drilling vessel "temporarily attached" to the seabed for the purpose of producing minerals that would not be maritime and Plaintiffs would be right -- OCSLA would *never* apply to anything but fixed platforms.  But, they are not right.  There is no maritime connection here, and thus no overlap between maritime claims and OCSLA.  Removal was proper under Section 1441(b) regardless of the citizenship of the parties.  *Id.* at 350.

## V.     CAMERON FILED ALL CONSENTS WITHIN 30 DAYS OF THE FILING OF A PLEADING OR OTHER PAPER SUGGESTING A BASIS FOR REMOVAL

The thirty-day deadline for filing a notice of removal, or obtaining consents from co-defendants, does not begin to run until "receipt by defendant … of a copy of an amended pleading, motion, order, or other paper from which it may first be ascertained that the case is one which is, or has become, removable…"  28 U.S.C. § 1446(b).  *See also Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1263 (5th Cir. 1988) ("the thirty-day period begins to run as soon as the first defendant is served (provided the case is then removable).").  In this case, the first pleading that suggested a basis for removal[9] was the Stone intervention because Sara Stone was obviously not a seaman and thus had no Jones Act claim to bring.  Cameron timely filed all consents within thirty days of the day the first defendant was served with that intervention.[10]

Alternatively, the limitation order, issued on May 13, 2010, was the "order or other

---

[9] Tracy Kleppinger, on behalf of her deceased husband Karl, filed a Jones Act suit just two days after the accident, against BP and Transocean, but not Cameron.  However, no one has ever argued that Kleppinger's petition, by itself and prior to the issuance of the limitation order, suggested a basis for removal.

[10] The Stones first served MI Swaco on May 4, 2010.  (Doc. 1-4, Cause 10-1851, at p. 37).  Cameron filed its removal on May 20, 2010 averring that all defendants had consented (Doc. 1, Cause 10-1851, at p. 5), and then supplemented with written consents for each defendant by June 3, 2010. (Doc. 15, Cause 10-1851).

1036216v.1

paper" that first demonstrated that the case was removable as to plaintiff and all intervenors. That is because the issuance of that order rendered Plaintiffs' right to pursue their Jones Act claims in state court a virtual nullity and allowed Cameron to remove this action as to all plaintiffs free from the Jones Act removal bar.

Because Cameron removed, and filed all written consents, within thirty days of filing of the first pleading or other paper that suggested a basis for removal, Cameron's actions were timely even under the First-Served-Defendant Rule of *Getty Oil.* [11]

## VI.    **CONCLUSION**

Because of the limitation order, the Jones Act claims cannot go forward in state court and will, in fact, be resolved by this Court in the limitation trial which has already been scheduled. Consequently, this Court should defer ruling on this motion until after the resolution of the limitation action.  If any valid claims remain, remand can be addressed at that time.

Alternatively, this Court should deny remand. Cameron properly removed pursuant to OCSLA and filed timely consents.   Moreover, Plaintiffs' Jones Act claims, which will be resolved *in federal court*, cannot serve as the basis for the remand of other claims *to state court*. And, Plaintiffs cannot shelter from removal claims of non-seaman by joining them to the claims of those who may arguably be seamen.

---

[11] The only way to find Cameron's actions to be untimely would be to start running the 30-day clock based on things which occurred *before* Cameron was served, and indeed before Cameron was even sued.  Plaintiffs seek to do this by resort to the "First-Served Defendant" rule set out in *Getty Oil* which provides that, in multi-defendant cases, the 30-day notice clock begins to run on the day the first defendant is served.  *Getty Oil,* 841 F.2d at 1263.  However, *Getty Oil's* "First-Served-Defendant" rule was always a minority position and was much maligned.  *See, e.g.*, *Barbour v. Int'l Union*, 594 F.3d 315, 319-20 (4th Cir. 2009) (noting that the 6th, 8th, and 11th Circuits have rejected *Getty Oil* in favor of a last-served defendant rule). Moreover, its underpinnings were severely undercut by *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 119 S. Ct. 1322, 1329-30 (1999) which held that a defendant's right to remove cannot be prejudiced by things happening before it was served.  *Id.*  Under *Michetti*, Cameron had thirty days *after* it was served to effectuate a removal.  Cameron met that deadline.  This Court should not deem Cameron's actions untimely under *Getty Oil.*

1036216v.1

Finally, should this Court have any doubts as to its jurisdiction, the better course would be to deny remand and certify the question for appeal under 28 U.S.C. § 1292(b).

Respectfully submitted,

*/s/ Phillip a Wittman*

| | | |
|---|---|---|
| David J. Beck, T.A. | Howard L. Murphy, 9844 | Phillip A. Wittman, 13625 |
| *dbeck@brsfirm.com* | *hurmphy@dkslaw.com* | *pwittmann@stonepigman.com* |
| Joe W. Redden, Jr. | Bertrand M. Cass, Jr., 3984 | Carmelite S. Bertaut, 3054 |
| *jredden@brsfirm.com* | *bcass@dkslaw.com* | *cbertaut@stonepigman.com* |
| David W. Jones | Francis J. Barry, Jr., 2830 | Keith B. Hall, 24444 |
| *djones@brsfirm.com* | *fbarry@ddklaw.com* | *khall@stonepigman.com* |
| Geoffrey Gannaway | Jonathan M. Walsh, 25922 | Jared Davidson, 32419 |
| *ggannaway@brsfirm.com* | *jwalsh@dks.com* | *jdavidson@stonepigman.com* |
| BECK, REDDEN & SECREST, L.L.P. | Paul D. Hale, 30539 | STONE PIGMAN WALTHER |
| One Houston Center | *phale@dkslaw.com* | WITTMAN L.L.C. |
| 1221 McKinney St., Suite 4500 | DEUTSCH, KERRIGAN & STILES | 456 Carondelet Street |
| Houston, TX 77010 | 755 Magazine Street | New Orleans, Louisiana  70130 |
| Phone: (713) 951-3700 | New Orleans, Louisiana  70130 | Phone: 504-581-3200 |
| Fax: (713) 951-3720 | Phone:504-581-5131 | Fax: 504-58103361 |
| | Fax: 504-566-4039 | |

*Attorneys for Cameron International Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Response to Motion to Remand has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 2nd day of November, 2010.

*/s/ Phillip A. Wittmann*

1036216v.1