UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER ORISON" in the GULF OF MEXICO, on April 20, 2010 | MDL. NO. 2179 |
| | SECTION J |
| This Document Relates to 10-3184 | JUDGE BARBIER<br>MAGISTRATE JUDGE SHUSHAN |

### RESPONSE TO PLAINTIFFS' MOTION TO REMAND

Cameron International Corporation ("Cameron") files this its Response to the Motion to Remand filed by Plaintiffs Brad Jones and Michael Wayne Burrell (collectively "Plaintiffs") and for cause would respectfully show unto the Court as follows:

**I.    INTRODUCTION**

Plaintiffs filed two actions in state court. One is against Cameron, Halliburton, and BP and it was filed in the 80th Judicial District of Harris County, Texas (hereinafter the "80 Action"). The second action is against Transocean, but not Cameron, and it was filed in the 157th Judicial District of Harris County, Texas (hereinafter the "157 Action"). By filing two actions, Plaintiffs split their Jones Act claims, which they allege in the 157 Action, and their non-Jones Act claims, which they allege in the 80 Action. Cameron removed only the 80 Action. The 157 action was stayed by the limitation order.

1

## II.     RESOLUTION OF THE REMAND MOTION SHOULD BE DEFERRED

There was only one accident. Plaintiffs understood that their Jones Act claims against Transocean and/or BP would have to be resolved in the federal limitation court. Accordingly, they split their claims and filed two suits hoping that the claims against the non-Jones Act defendants could go forward in state court. But, such procedural maneuvering cannot change the basic nature of the accident and the claims.

The claims at issue in this removed case are all significantly impacted by the limitation proceeding filed by Transocean and transferred to this Court, now pending as Case No. 10-2771. In fact, these defendants have already filed claims in the limitation action. (Doc. 147, Cause 10-1721).

Furthermore, in CMO No. 1, this Court has initially authorized Transocean to tender these claims to other defendants in the limitation proceeding pursuant to Rule 14(c) and has set deadlines for defendants added by Transocean to file not only cross-claims but also third-party complaints against additional defendants. (Doc. No. 569 § IV.D.) By this process, the entirety of the litigation on the claims in this removed action, including all non-Jones Act claims against defendants other than Transocean, will be resolved by this Court in the federal limitation action.

Also, Plaintiffs should not be permitted to proceed in this action, whether remanded or not, without the stipulation of parties–like BP, Cameron and others–who have indemnity rights or claims against Transocean. *See Odeco Oil & Gas Co. v. Bonnette*, 74 F.3d 671, 675 (5th Cir. 1996); *see also Lewis v. Lewis & Clark Marine, Inc.* 121 S.Ct. 993, 1001 (2001).

Under CMO No. 1, the defendants herein are required to file, in this MDL proceeding, substantive answers to the personal injury claims by January 18, 2001, along with any legal motions under Federal Rule 12. (Doc. No. 569 § IV.B.). In this process, many of the same legal

issues raised in the Remand Motion, particularly those concerning choice of law, will shortly be addressed by this Court. As a matter of proper case administration, this Court should resolve those issues uniformly under the schedule that liaison counsel and the Court have devised, not at the whim of plaintiffs who want to pursue remand precipitately.

Accordingly, even if there were valid grounds for remand, and we will demonstrate below that there are not, it would not make sense as a matter of case administration to remand this action to state court before the initial trial in the limitation proceeding is conducted in February 2012, if then. Any action in this case, even if it could proceed in state court, would be entirely disruptive and duplicative of the coordinated proceedings in this Court.

Plaintiffs will not be prejudiced by a deferral of ruling on the removal/remand issues. If a ruling is deferred, they will only have to litigate in one forum – in the limitation action in this Court. Cameron respectfully submits, therefore, that this Court should defer ruling on Plaintiffs' remand motion, at least until the initial limitation trial is completed in early 2012.

### III. CAMERON PROPERLY REMOVED THIS CASE

#### A. OCLSA MANIFESTLY APPLIES

As will be discussed further, and as this Court has already found, OCSLA applies to this accident. (Doc. 470, at p. 6). In fact, Plaintiffs actually pled OCSLA in their petition.

##### 1. PLAINTIFFS ACTUALLY PLED OCSLA

Paragraph "VIV" of Plaintiffs' Original Petition (in the 80 Action) lists numerous acts that Plaintiffs contend are negligence. The final subparagraph in that section then states as follows:

> Such other acts of negligence and omissions as will be shown at the trial of this matter; *all of which acts are in violation of state and Federal law applicable on the Outer Continental Shelf.*

3

(Doc. 1-3, Cause 10-1852, p. 6) (emphasis added).  That is an obvious reference to OCSLA.

### 2. THIS COURT HAS ALREADY CORRECTLY DETERMINED THAT OCSLA APPLIES

Plaintiffs were allegedly injured aboard a drilling rig that was temporarily attached to the seabed by a marine riser for the purpose of exploring for, or producing, minerals from the OCS. OCSLA clearly applies.  43 U.S.C. § 1333(a) & 1349(b)(1); *Demette v. R&B Falcon Drilling Co.*, 280 F.3d 492, 497 (5th Cir. 2002), *rev'd on other grounds*, *Grand Isle Shipyard, Inc. v. Seacor Marine LLC*, 589 F.3d 778 (5th Cir. 2009) (en banc) (determining that structures, even vessels, which are temporarily attached to the seabed for the purpose of producing the minerals are OCSLA situses).

Plaintiffs' argument to the contrary relies solely on a situs argument.  Specifically, they contend that if the situs of the accident was a vessel, as opposed to a fixed platform, OCSLA *cannot* apply.  But, Plaintiffs' argument ignores the fact that Congress amended OCSLA to remove the "fixed structure" limitation.  *Alliance to Protect Nantucket Sound, Inc. v. US Dept. of the Army*, 398 F.3d 105, 110 n.4 (1st Cir. 2005).  Indeed, Congress did so with the specific intent of capturing all of the myriad new "drilling platforms, to include activities on drilling ships, semi-submersibles, drilling rigs, and other watercraft, when they are attached to the seabed." *Id.* (quoting H.R. Rep. No. 95-590, at 128 (1977), *reprinted in* 1978 U.S.C.C.A.N. 1450, 1534).

The *Deepwater Horizon* was temporarily attached to the seabed by a marine riser–a rigid pipe that extended from the wellhead to the drilling unit.  The rig had been on station for months and could not leave station until it detached from the wellhead.  Its only purpose when attached to the seabed was to produce minerals from the OCS.  And, it was maintained as stationary as

technologically possible.[1]  The *Deepwater Horizon* was clearly an OCSLA situs.

More importantly, however, in the *State of Louisiana* case within the MDL, this Court recognized that the test for the application of OCSLA was not situs-based.  Specifically, this Court explained that to evaluate whether there is original jurisdiction pursuant to Section 1349, "courts determine whether the activities that caused the injury can be classified as an 'operation conducted on the outer Continental Shelf' and whether that 'operation' involved the exploration and production of minerals." (Doc. 470, at p. 6, quoting 43 U.S.C. § 1349(b)(1)).  Applying that test, this Court has recognized that the *Deepwater Horizon* accident arose during operations on the OCS for the exploration and production of oil from a federal mineral lease.  OCSLA manifestly applies.

B.   **THERE IS REMOVAL JURISDICTION PURSUANT TO 1441(a)**

Removal under 28 U.S.C. § 1441 is divided into separate sections.

- **Subsection 1441(a)** provides authority for the removal of any civil action "of which the district courts of the United States have original jurisdiction."

- **Subsection 1441(b)** provides authority in its <u>first sentence</u> for removal of "[a]ny civil action of which the district courts have original jurisdiction founded on a claim or right *arising under* the Constitution, treaties or laws of the United States" and in that instance the state case "shall be removable without regard to the citizenship or residence of the parties." (emphasis added).  Under the <u>second sentence</u> of subsection (b), however, "in state court actions in which the only basis for federal jurisdiction is complete diversity of citizenship and a sufficient amount in controversy, removal is barred if any of the properly joined and served defendants is a citizen of the state in

---

[1]  Plaintiffs rely on *Alex v. Wild Well Control, Inc.*, 2009 WL 2599782, at *1 (E.D. La. Aug. 18, 2009).  But that case involved a vessel that was dynamically positioned and had no attachment—temporary or permanent—to the seabed.  By contrast, the *Deepwater Horizon* was attached to the seabed floor by the marine riser.  The Fifth Circuit recognized that OCSLA can apply to a floating rig like the *Deepwater Horizon* in *Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 543-46 (5th Cir. 2002), *rev'd on other grounds*, *Grand Isle Shipyard, Inc. v. Seacor Marine LLC*, 589 F.3d 778 (5th Cir. 2009).

which the action was brought." 14B C. WRIGHT, A. MILLER, E. COOPER & J. STEINMAN, FEDERAL PRACTICE AND PROCEDURE, § 3722 at (4th ed. 2009).

"Arising under" jurisdiction, as referenced in subsection (b) above, flows from 28 U.S.C. § 1331.[2]

In cases where federal court jurisdiction relies on "arising under" status, the well-pleaded complaint rule applies. *American National Red Cross v. S.G.*, 112 S. Ct. 2465, 2472 (1992). But, in cases where federal court jurisdiction arises from a separate and independent grant of federal jurisdiction, the well-pleaded complaint rule does not apply. *Id.* This Court recognized, in the *State of Louisiana* order, that OCSLA § 1349 provides such a separate and independent basis for jurisdiction.[3] (Doc. 470, at p. 5).

This Court's opinion is consistent with the Fifth Circuit's opinion in *Amoco Production Co. v. Sea Robin Pipeline Co.*, 844 F.2d 1202 (5th Cir. 1988). In that case, Sea Robin removed pursuant to section 1441(a). *Id.* at 1203 n.1. The district court denied remand on the ground that it had jurisdiction under OCSLA's separate and independent grant of jurisdiction, 43 U.S.C. § 1349(b)(1). *Id.* at 1204. As in the *Red Cross* case cited above, the parties opposing removal attempted to invoke the well-pleaded complaint rule. Correctly anticipating the Supreme Court's holding in *Red Cross* that an independent grant of jurisdiction made the well-pleaded complaint

---

[2] 28 U.S.C. § 1331 provides as follows: "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

[3] Specifically, this Court held as follows:

> [a]lthough Plaintiff is correct in arguing that the well-pleaded complaint rule prevents Defendants from removing this matter on the basis of 28 U.S.C. § 1331, there is nothing preventing Defendants from removing this matter based on an assertion of jurisdiction under 43 U.S.C. § 1349.

*Id.*

rule inapplicable, Judge Brown concluded that "we need not traverse the Serbonian Bog of the well-pleaded complaint rule" because "OCSLA [§ 1349(b)(1)] expressly invests jurisdiction in the United States District Courts." 844 F.3d at 1205 & n.13 (citation omitted). The Fifth Circuit then determined that the case involved oil and gas operations within the meaning of OCSLA § 1349(b)(1) and thus raised a controversy governed by that jurisdictional grant. 844 F.2d at 1205-10. On that basis, the Fifth Circuit concluded that "this controversy is within federal jurisdiction under OCSLA," and therefore affirmed the district court's denial of remand. *Id.* at 1210.

*Tennessee Gas Pipeline v. Houston Casualty Ins. Co.*, 87 F.3d 150 (5th Cir. 1996), reached a similar result. The decision in *Tennessee Gas* involved an allision between a tug and an offshore drilling platform. The platform owners sued in state court, admittedly seeking to foreclose federal jurisdiction by alleging only a general maritime claim. 87 F.3d at 152. The insurance company removed. The district court denied remand, but certified the issue for interlocutory appeal.

In addressing the issue, the Fifth Circuit carefully reviewed the purposes of OCSLA. *Id.* at 153. After concluding this analysis, the Court had "no difficulty in deciding that [OCSLA] § 1349" granted jurisdiction over the claims in the case because the case involved development or production of "minerals on the OCS." 87 F.3d at 154. Notably, the court's "conclusion that OCSLA confers original jurisdiction over this suit [was] unaffected by the maritime nature of the underlying claim." *Id.* at 155. Referring specifically to the removal question, the Fifth Circuit held as follows:

> Our conclusion that OCSLA vests the federal courts with original subject matter jurisdiction over this case establishes that removal is proper under 28 U.S.C. § 1441(a).

1036229v.1

87 F.3d 155.  The court observed that the *Sea Robin* decision supported this holding.  *Id.* at 155-56.

The majority opinion also discussed the supposed "conundrum" posed by the provisions of 28 U.S.C. § 1441(b), but ultimately found that removal was proper under the second sentence of subsection (b) without resolving the interaction between subsections (a) and (b).  *Id.* at 156. In concurrence, however, Judge Jolly pointed out that the discussion of subsection (b) was unnecessary, and merely dicta, because removal jurisdiction had already been established under 28 U.S.C. 1441(a).  *Id.* (Jolly, J., concurring).

Because OCSLA provides a separate and independent basis for jurisdiction, removal of an OCSLA case is proper without respect to the strictures that might apply to an "arising under" case.  Consequently, removal of an OCSLA dispute is proper, under 1441(a) or otherwise.

### C.      REMOVAL WAS PROPER PURSUANT TO 1441(b)

The separate and independent grant of jurisdiction set out in OCSLA section 1349 makes removal proper under 28 U.S.C. § 1441(a) because 1349 does not rely solely on "arising under" jurisdiction.  Plaintiffs do not even address this point, and this Court may reject remand on this basis without addressing the "arising under" provisions of 1441(b).  *See Tennessee Gas*, 87 F.3d at 155 (Jolly, J., concurring).

However, OCSLA is obviously a federal statute and a claim under OCSLA manifestly would also "arise under" federal law.  Consequently, OCSLA provides a basis for removal pursuant to the "arising under" standard of the first sentence of 1441(b) as well and removal is proper without regard to the citizenship of the parties.  In fact, Plaintiffs do not dispute that proposition.

1036229v.1

Instead, the Plaintiffs rely on a line of district court cases holding that where maritime law and OCSLA overlap, maritime law displaces OCSLA. Because maritime law does not "arise under" federal law for removal purposes, they contend removal is only proper under the second sentence of 1441(b) if no defendant is a citizen of the state where suit is brought.

These arguments lack merit for several reasons. Removal is proper, irrespective of citizenship, pursuant to 1441(b) because OCSLA arises under federal law. The second sentence of 1441(b) is not implicated. But, at any rate, the activity fiving rise to the claims advanced here is not maritime.

> **1. IF THIS COURT DECIDES TO RESOLVE THE "CONUNDRUM," IS SHOULD DO SO CONSISTENTLY WITH THE MANIFEST INTENT OF CONGRESS**

In *Tennessee Gas*, the Fifth Circuit reviewed the congressional history and concluded that Congress may well have intended for OCSLA to support removal under the <u>first sentence</u> of 1441(b) regardless of the citizenship of the parties even though the <u>second sentence</u> arguably only supported removal if no defendant was a citizen of the state where suit was brought. 87 F.3d at 156. The Fifth Circuit called this apparent conflict within 1441(b) a "conundrum." *Id.* However, the Fifth Circuit determined that it "need not resolve the conundrum" because in the case before it, no defendant was a citizen of the state where suit was brought and so removal was appropriate regardless. *Id.*

In *Hufnagel* the Fifth Circuit again acknowledged this "conundrum." *Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 351 (5th Cir. 1999). Once again, though, the Fifth Circuit stated that "we need not resolve this conundrum today, either" because the court concluded that the claims before it were non-maritime. *Id.*

In the *State of Louisiana* case, this Court recognized that the Fifth Circuit has never

resolved this conundrum.[4]  And, this Court was in the exact same position as the *Tennessee Gas* Court because no defendant before it was a citizen of Louisiana where the suit was brought. Hence, like the *Tennessee Gas* court, this Court could rest its opinion on that fact, and therefore did not need to resolve the "conundrum" that the Fifth Circuit recognized twice, but never resolved.

Here, the Court should find that removal jurisdiction is proper pursuant to 1441(a) and thus it need not reach the "conundrum" under 1441(b).  Moreover, as will be discussed below, even if this Court does engage in an analysis pursuant to Section 1441(b), it should determine that there is no overlap between maritime law and OCSLA because, as in *Hufnagel*, the activity giving rise to the accident in this case did not have a sufficient maritime connection.

However, if this Court rejects both of those arguments, it will have to resolve the "conundrum" because several defendants are citizens of Texas where this suit was brought. Respectfully, this Court should resolve the "conundrum" in a manner consistent with the manifest intention of Congress.

Congress passed OCSLA to assert sovereignty over the minerals of the OCS, to define the law that would apply there, and to provide a federal forum for any cases or controversies arising therefrom.  *Tennessee Gas*, 87 F.3d at 153-54; *EP Operating Ltd. P'ship*, 26 F. 3d 563, 569 (5th Cir. 1994) (OCSLA was "intended to govern the full range of potential legal problems that might arise in connection with operations on the Outer Continental Shelf").  Consequently, this Court should not interpret 28 U.S.C. § 1441(b) in such as way as to exclude from federal

---

[4] This Court's order in the *State of Louisiana* case relates that the Fifth Circuit has never affirmatively stated that where OCSLA and general maritime law overlap, the case is removable without regard to citizenship.  (Doc. 470, pp. 9-10).  The opposite is, therefore, necessarily true—i.e., the Fifth Circuit has never said that when OCSLA and maritime law overlap, removal is only proper if no defendant is a citizen of the state where suit is brought.  Even though the issue has been put before the Fifth Circuit twice, that court declined to resolve the "conundrum."

court a large segment of cases or controversies arising from operations on the OCS. Instead, this Court should hold that cases falling within the broad scope of OCSLA § 1349 can be removed pursuant to Section 1441(b) regardless of the citizenship of the parties.

Plaintiffs contend that they are advancing maritime claims pursuant to the saving to suitors clause. Because maritime claims do not arise under the Constitution, treaties, or federal statute, they cannot generally be removed pursuant to Section 1441(b). Even so, "it is … well-established that the saving to suitors clause does not prevent the removal of maritime claims when original jurisdiction is based on something other than admiralty." *Tennessee Gas*, 87 F.3d at 153. For example,

> [t]he "saving to suitors' clause does no more than preserve the right of maritime suitors to pursue nonmaritime *remedies*. It does **not** guarantee them a nonfederal *forum,* or limit the right of defendants to **remove** such actions to federal court **where there exists some basis for federal jurisdiction other than admiralty.**

*Id.* (emphasis added). In this case, OCSLA provides the basis for removal, outside of admiralty, under the first sentence of Section 1441(b). *Id. See also Dahlen v. Gulf Crews, Inc.*, 281 F.3d 487, 492 (5th Cir. 2002). Therefore, this Court should find that removal is proper, regardless of citizenship, and if it so concludes, it need not even address the second sentence of Section 1441(b).

This construction of OCSLA would resolve the "conundrum" consistently with Congress' intent to treat oil drilling activities on the OCS under OCSLA, as opposed to maritime law. This intent was made clear in *Rodrigue v. Aetna Cas. & Surety Co.*, 89 S. Ct. 1835 (1969). In that case, the Supreme Court carefully parsed OCSLA and its legislative history and determined that Congress intended that OCSLA was to apply to operations from a structure on the OCS for the purpose of procuring minerals therefrom, not maritime law. *Id.* at 1842.

11

The Fifth Circuit echoed this conclusion in *Texaco Exploration & Prod. v. AmClyde Engineered Products Co.*, 448 F3d 760 (5th Cir. 2006). In that case, a crane on a vessel (barge) was lifting a component part of an oil platform onto the platform when a line snapped and the part fell into the sea. *Id.* at 765. Even though the accident happened on a vessel, the Fifth Circuit determined that OCSLA, to the exclusion of maritime law, applied because the accident occurred in connections with operations to "develop[] the resources of the Outer Continental Shelf…" *Id.* at 771. Accordingly, "any connection to maritime law is eclipsed by the construction's connection to the development of the Outer Continental Shelf." *Id.*

Plaintiffs rely entirely on the *situs* of the accident. They argue that if the situs of the accident was a vessel, then maritime law applies to the exclusion of OCSLA. But, that did not matter in *Amclyde*. Of significance in *Amclyde* was the connection to the development of the OCS. That the accident occurred on a vessel was immaterial.

In this case, the only purpose for the *Deepwater Horizon* to be where it was, doing what it was, at the time of the accident, was to develop the mineral resources of the OCS. This was the type of activity that Congress intended to capture in OCSLA. That federal statute provides arising under jurisdiction for purposes of 1441(b). Maritime law does not apply because any connection to maritime law is eclipsed by the connection to oil and gas development on the OCS. *Amclyde*, 448 F.3d at 771. But even if it might apply, it should not disturb the question of whether a federal court has jurisdiction. *Dahlen*, 281 F.3d at 492.

Respectfully, the district courts that allowed maritime law to defeat an OCSLA removal pursuant to the second sentence of 1441(b) are not binding on this Court and were wrongly decided. This "conundrum" was presented to the Fifth Circuit twice, and the Fifth Circuit chose

1036229v.1

not to resolve it either time. If this Court should decide to resolve it, it should do so in keeping with the text and intent of OCSLA.

## 2. THE ACTIVITY GIVING RISE TO THE ACCIDENT WAS NOT MARITIME IN ANY EVENT

Even if this Court gives credence to the district court cases relating to situations where maritime law and OCSLA overlap, it should still deny remand because, here, there is no overlap. The claims being advanced are not maritime.

*Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 115 S. Ct. 1043, 1048 (1995), established the test to determine if a claim is maritime. Specifically, to "give rise to a tort claim in admiralty, an incident[5] must have *both* a maritime situs and a connection to traditional maritime activity." *Id.* *Both tests*—maritime situs and maritime connection—must be met for maritime law to apply. *Hufnagel*, 182 F.3d at 351. In this case, the maritime connection test is not met.

The connection or nexus element of the *Grubart* test "requires a claim to arise from a traditionally maritime activity." *Case v. Omega Natichiq, Inc.*, 2008 WL 274124, at *12 (S.D. Tex. July 10, 2008). Moreover, the maritime nexus must exist wholly apart from the situs of the relevant structure in navigable waters. *Simms v. Roclan Energy Servs., Inc.*, 137 F. Supp. 2d 731, 737 (W.D. La. 2001).

"Traditionally, maritime law primarily concerns the movement of vessels upon waters." *Dozier v. Rowan Drilling Co.*, 397 F. Supp. 2d 837, 850 (S.D. Tex. 2005). Moreover, it involves "navigational rules—rules that govern the manner and direction those vessels may move upon the water." *Executive Jet Aviation, Inc. v. City of Cleveland*, 93 S. Ct. 493, 505 (1972). It is

---

[5] The *Grubart* test relies on the "incident" giving rise to the accident, not whether the plaintiffs are seamen.

concerned with "maritime liens, the general average, captures and prizes, limitation of liability, cargo damage, and claims for salvage." *Id.*

The accident in this case did not occur while plaintiffs were boarding the vessel, moving cargo around, or maintaining or repairing the vessel. Nor did it occur while the *Deepwater Horizon* was navigating the seas. Rather, the accident occurred while the parties were displacing drilling mud out of, and attempting to set cement in, a wellbore far beneath the seabed floor. A gas bubble apparently escaped from the seabed floor, travelled up the riser, and caused an explosion on the rig. The activity giving rise to this accident was related uniquely to oil and gas production. Displacing drilling mud and setting cement in a wellbore is required in oil and gas drilling whether on land or on water and has no connection to traditional maritime activity.[6]

---

[6] The cases Plaintiffs rely on for the proposition that anything that occurs on a floating drilling rig has a maritime connection provide no support. First, *Holcomb v. ERA Helicopters, Inc.,* 618 F. Supp. 339 (W.D. La. 1985), involved a helicopter crash into the high seas – not an accident on a drilling platform—floating or otherwise. Moreover, it was not a case where OCSLA and maritime law overlapped because in *Holcomb*, OCSLA did not apply at all. *Id.* at 343. Finally, the activity giving rise to the accident in *Holcomb*—transporting personnel over water—is a traditional maritime function. Displacing drilling mud from beneath the seabed, which was the relevant activity here, is not.

Similarly, *Higginbotham v. Mobil Oil Corporation,* 357 F.Supp. 1164 (W.D.La. 1973), involved a helicopter crash into the high seas. Again, transporting personnel over water is a traditional maritime function. Moreover, *Higginbotham* was decided *before* the 1978 amendments to OCSLA which removed the "fixed structure" limitation. Hence, any distinction made in *Higginbotham* between fixed platforms and floating platforms for purposes of determining seaman status is irrelevant. In fact, the relevant question in this case is not whether Plaintiffs were seamen, but rather whether the incident causing the accident had a sufficient connection to traditionally maritime activity. It did not.

Finally, *Longmire v. Sea Drilling Corp.*, 610 F.2d 1342 (5th Cir. 1980), involved a plaintiff injured on a tender boat—which was a converted warship—not a drilling rig as here. The language from *Longmire* cited by Plaintiffs (Doc. 588-1, at p. 5) relating to fixed platform workers and floating platform workers was therefore merely dicta. Moreover, in *Demette,* the Fifth Circuit considered the very language that Plaintiffs quote, labeled it "out of context," and concluded that tender vessels are simply not like floating rigs. *Demette*, 280 F.3d at 500.

The relevant activity in this case can be likened to wireline work because both involve sub seabed activity. For instance, wireline services involve placing a tool downhole beneath the seabed to perform oil and gas related activities. Wireline work, even from a vessel temporarily attached to the seabed for the purpose of producing minerals, does not have a maritime nexus. *A.M.C. Liftboats, Inc. v. Apache Corp.,* 622 F. Supp. 2d 355, 360 (5th Cir. 2008); *Domingue v. Ocean Drilling & Exploration Co.*, 923 F.2d 393, 396 (5th Cir. 1991); *Union Tex. Petroleum Corp. v. PLT Eng'g, Inc.*, 895 F.2d 1043, 1050 (5th Cir. 1990); *Thurmond v. Delta Well Surveyors*, 836 F.2d 952, 956 (5th Cir. 1988). This was made clear in a similar context in *Dozier*, 397 F. Supp. 2d at 837. That case involved an injury to a worker performing wireline services aboard a drilling vessel. After a lengthy analysis, the court determined that the maritime connection test was not met because wireline work has "repeatedly been recognized as nonmaritime in nature." *Id.* Accordingly, the *Dozier* Court found that maritime law did not apply, that therefore there was no overlap between OCSLA and maritime law, and thus removal under Section 1441(b) was proper. *Id.*

In *Hufnagel*, 182 F.3d at 350, the plaintiff contended that maritime claims overlapped with OCSLA such that removal under 1441(b) was only proper if no defendant was a citizen of the state where suit had been brought. But, the Fifth Circuit analyzed the claims being advanced and determined that they were not maritime. *Id.* at 351. Consequently, the Fifth Circuit determined that an OCSLA removal was proper pursuant to Section 1441(b) regardless of the citizenship of the parties. *Id.* at 353. Similarly, the claims in this case, which arise from oil and gas activity beneath the seabed, are not maritime.

---

In short, the application of OCSLA is no longer limited to fixed platforms.

15

1036229v.1

Indeed, if this case is found to have a maritime connection, it is hard to imagine *anything* that could occur on a drilling vessel "temporarily attached" to the seabed for the purpose of producing minerals that would not be maritime and thus OCSLA would *never* apply to anything but fixed platforms. But, Congress clearly intended for OCSLA to be applied to structures, including vessels, which are temporarily attached to the seabed for the purpose of producing minerals. H.R. Rep. No. 95-590, at 128 (1977), *reprinted in* 1978 U.S.C.C.A.N. 1450, 1534. There is no maritime connection here, and thus no overlap between maritime claims and OCSLA. For that reason, removal was proper under Section 1441(b) regardless of the citizenship of the parties. *Hufnagel*, 182 F.3d at 350.

## IV.   CONCLUSION

Because the claims in this action intersect with the limitation issues before this Court, the Court should defer ruling on this motion until after the resolution of the limitation action.

Alternatively, this Court should deny remand. Cameron properly removed pursuant to OCSLA.

Finally, should this Court have any doubts as to its jurisdiction, the better course would be to deny remand and certify the question for appeal under 28 U.S.C. § 1292(b).

1036229v.1

Respectfully submitted,

|  |  | /s/ Phillip a Wittman |
|---|---|---|
| David J. Beck, T.A. | Howard L. Murphy, 9844 | Phillip A. Wittman, 13625 |
| dbeck@brsfirm.com | hurmphy@dkslaw.com | pwittmann@stonepigman.com |
| Joe W. Redden, Jr. | Bertrand M. Cass, Jr., 3984 | Carmelite S. Bertaut, 3054 |
| jredden@brsfirm.com | bcass@dkslaw.com | cbertaut@stonepigman.com |
| David W. Jones | Francis J. Barry, Jr., 2830 | Keith B. Hall, 24444 |
| djones@brsfirm.com | fbarry@ddklaw.com | khall@stonepigman.com |
| Geoffrey Gannaway | Jonathan M. Walsh, 25922 | Jared Davidson, 32419 |
| ggannaway@brsfirm.com | jwalsh@dks.com | jdavidson@stonepigman.com |
| BECK, REDDEN & SECREST, L.L.P. | Paul D. Hale, 30539 | STONE PIGMAN WALTHER |
| One Houston Center | phale@dkslaw.com | WITTMAN L.L.C. |
| 1221 McKinney St., Suite 4500 | DEUTSCH, KERRIGAN & STILES | 456 Carondelet Street |
| Houston, TX 77010 | 755 Magazine Street | New Orleans, Louisiana 70130 |
| Phone: (713) 951-3700 | New Orleans, Louisiana 70130 | Phone: 504-581-3200 |
| Fax: (713) 951-3720 | Phone:504-581-5131 | Fax: 504-58103361 |
|  | Fax: 504-566-4039 |  |

*Attorneys for Cameron International Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Response to Motion to Remand has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 2nd day of November, 2010.

/s/ Phillip A. Wittmann

1036229v.1