UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | * * * * * * * | MDL NO. 2179<br><br>SECTION J<br><br>JUDGE CARL J. BARBIER |
| This document relates to 10-3169 and 10-3184, *Davis v. Cameron International Corp. et al.* and *Jones v. Cameron International Corp. et al.* | * * * * * | MAGISTRATE JUDGE SALLY SHUSHAN |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**BP'S COMBINED MEMORANDUM IN OPPOSITION TO
MOTION TO REMAND TO STATE COURT**

Plaintiffs filed in Texas state court two separate Petitions for Damages against BP Exploration & Production Inc. ("BP"), as well as Cameron International Corporation f/k/a Cameron Systems Corporation ("Cameron") and Halliburton Energy Services, Inc., pursuant to general maritime law and the Texas Products Liability Act. Plaintiffs' Petitions assert causes of action arising out of exploration and drilling operations on the Outer Continental Shelf ("OCS" or "Shelf") and the oil spill in the Gulf of Mexico. Cameron removed these actions to this Court pursuant to 43 U.S.C. § 1349(b)(1)(A) (the federal Outer Continental Shelf Lands Act ("OCSLA")), and Plaintiffs have now filed two separate motions to remand their claims to state court. The two motions make similar arguments and arise out of a similar set of facts. Accordingly, BP files this combined memorandum opposing both motions.

Plaintiffs' motions lack merit under governing Fifth Circuit law and this Court's recent October 6, 2010 Order ("October 6 Order") denying the State of Louisiana's motion to remand.

This Court has removal jurisdiction under 28 U.S.C. § 1441.  As this Court previously held in its October 6 Order, this Court has "original jurisdiction" under section 1441(a) over cases alleging injuries that would not have occurred "but for" the *Deepwater Horizon* oil spill.  And for two independent reasons, this Court also has "arising under" removal jurisdiction under section 1441(b) over these cases.

First and foremost, the Petitions *on their face* (i) "bring claims against Cameron under the Texas Products Liability Act (Tex. Civ. Prac. & Rem. Code § 82.001, *et seq.*)," Jones Pet. at 3 ¶ VIII; Davis Pet. at 4 ¶ 6, and (ii) allege that Defendants committed "acts of negligence and omissions . . . in violation of state *and Federal law* applicable on the Outer Continental Shelf," Jones Pet. at 6 ¶ VIV; Davis Pet. at 5 ¶ 7 (emphasis added).  By themselves, these state-law claims and accompanying allegations are fatal to Plaintiffs' remand motions, because claims brought pursuant to "state and Federal law applicable on the Outer Continental Shelf" necessarily "arise under" federal law for purposes of federal jurisdiction.  In *Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340 (5th Cir. 1999), the Fifth Circuit held that where a plaintiff had "asserted . . . a non-maritime claim, a claim governed not by maritime law but by [state law], which is made applicable federal law by OCSLA," "[s]uch claim is one 'arising under' OCSLA within the meaning of section 1441(b) and section 1331 and hence is not subject to section 1441(b)'s restriction to cases in which no defendant is a citizen of the state of suit."  *Id.* at 351.  Here, Plaintiffs have done just that.  Having alleged violations of state law (and of federal law applicable on the Shelf), Plaintiffs are now in no position to deny that their claims "arise under" federal law.  As a result, this Court need look no further than the Fifth Circuit's opinion in *Hufnagel* to deny Plaintiffs' motions in these cases.

Second, and independently, even assuming that Plaintiffs have pleaded only maritime

claims, those maritime claims would "arise under" federal law for purposes of removal jurisdiction, because OCSLA establishes a federal enclave on the Shelf and it is well-settled that claims brought in federal enclaves "arise under" federal law. *See Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 217 (1986) ("The intent behind OCSLA was to treat the artificial structures covered by the Act as upland islands or as federal enclaves within a landlocked State . . . ."); *Texaco Exploration & Prod., Inc. v. AmClyde Engineered Prods. Co.*, 448 F.3d 760, 772 (5th Cir.) (same), *amended in irrelevant part on reh'g*, 453 F.3d 652 (5th Cir. 2006); *Mater v. Holley*, 200 F.2d 123 (5th Cir. 1952) (claims brought regarding federal enclaves necessarily arise under federal law). As a result, it follows that Plaintiffs' maritime claims, brought with respect to activities on a federal enclave, "arise under" federal law. Thus, this Court should adopt the Fifth Circuit's reasoning in *Tennessee Gas Pipeline v. Houston Casualty Ins. Co.*, 87 F.3d 150, 156 (5th Cir. 1996), where the court explained in *dicta* that "[g]iven the national interests that prompted Congress to pass OCSLA and grant broad jurisdiction under 43 U.S.C. § 1349, Congress arguably intended to vest the federal courts with the power to hear ***any case*** [including a case with a maritime claim] involving the OCS, even on removal, without regard to citizenship." *Id.* at 156 (emphasis added). As *Tennessee Gas Pipeline* indicates, the law applied within OCSLA — much like the law applied in other federal enclaves — should be considered federal law for purposes of "arising under" jurisdiction under section 1441(b).[1]

---

[1] To be sure, the Fifth Circuit has not resolved this issue, and there is arguably inconsistent *dictum* in *Hufnagel*. As the Court recognized in its October 6, 2010 Order, "the Fifth Circuit has not determined that finding that a court has OCSLA jurisdiction is synonymous with finding that a plaintiff's claim arises under the laws of the United States." Slip op. at 9. In fact, the Fifth Circuit has twice described the question whether OCSLA maritime claims "arise under" federal law as a "conundrum," while avoiding answering the question and thus reserving it for another day. *Hufnagel*, 182 F.3d at 351 (quoting *Tenn. Gas Pipeline v. Houston Cas. Ins. Co.*, 87 F.3d 150, 156 (5th Cir. 1996)). In a proper case, this Court would need to address and rule on the "conundrum" issue, and BP respectfully submits, given the importance of this MDL proceeding, certify it to the Fifth Circuit for resolution in an interlocutory appeal. But the Court need not address this "conundrum" here, because (as in *Hufnagel*) alternative grounds for federal jurisdiction are plainly apparent on the face of Plaintiffs' petitions, namely, that Plaintiffs have brought state and federal claims that clearly "arise under" OCSLA. If, however, the Court does reach the "conundrum" in this case,

In sum, removal is proper and this Court has subject matter jurisdiction. Remand should be denied.

## BACKGROUND

Plaintiffs filed two separate Petitions in Texas state court, bringing claims "pursuant to Title 46 U.S.C. § 688 and the general admiralty laws," Jones Pet. at 2 ¶ 5 (filed June 4, 2010), and also "under the Texas Products Liability Act (Tex. Civ. Prac. & Rem. Code § 82.0001, et seq.)," Jones Pet. at 3 ¶ VIII; Davis Pet. at 4 ¶ 6 (filed Apr. 30, 2010). Plaintiffs' Petitions establish that their claims arise from and are inextricably connected to OCS operations, including the exploration, development, or production of oil in the OCS subsoil and seabed:

- At all material times, "Plaintiffs were aboard the DEEPWATER HORIZON." Jones Pet. at 2 ¶ VI; Davis Pet. at 3 ¶ V.

- On April 20, 2010, the Plaintiffs "were aboard" the *Deepwater Horizon* when the rig "caught fire and exploded, and ultimately sank. . . . Because of this incident, Plaintiffs sustained serious injuries to their persons." Jones Pet. at 2-3 ¶ VII; Davis Pet. at 3 ¶ V.

- Defendants have acted "in violation of state and Federal law applicable on the Outer Continental Shelf." Jones Pet. at 6 ¶ VIV; Davis Pet. at 5 ¶ 7.

Thus, it is clear that Plaintiffs complain of activities that occurred on the OCS as a result of the *Deepwater Horizon* incident. Cameron removed the *Davis* and *Jones* cases on May 24, 2010 and July 1, 2010 respectively, and the Judicial Panel on Multidistrict Litigation transferred them to this Court on September 21, 2010. Plaintiffs have now moved to remand to state court.

---

BP respectfully submits that the OCS's status as a federal enclave ensures that maritime claims that come within its jurisdictional provision necessarily "arise under" federal law for purposes of federal jurisdiction.

**ARGUMENT**

I.  **THIS COURT HAS REMOVAL JURISDICTION OVER THIS CASE UNDER OCSLA AND THE FEDERAL REMOVAL STATUTE.**

Under the federal removal statute, this Court has jurisdiction over any civil action where (1) it has "original jurisdiction," 28 U.S.C. § 1441(a), and (2) a claim "aris[es] under the . . . laws of the United States," *id.* § 1441(b). Both conditions are met here. The October 6 Order — which Plaintiffs remarkably neglect to cite in their motions for remand — conclusively establishes that this Court has "original jurisdiction" over any claim that would not have occurred "but for" the *Deepwater Horizon* oil spill. And Plaintiffs' claims "arise under" federal law here because Plaintiffs have expressly pleaded OCSLA claims under state and federal law, and because Plaintiffs seek to bring claims arising out of torts on an exclusive federal enclave, namely, the Outer Continental Shelf.

   A.  **OCSLA Establishes "Original Jurisdiction" Over Plaintiffs' Claims For Purposes Of Section 1441(a).**

Under this Court's October 6 Order, this Court has original jurisdiction over claims that would not have occurred "but for" the *Deepwater Horizon* oil spill. *See, e.g.*, Slip op. at 8 ("[I]t is clear that original jurisdiction rests with this Court pursuant to § 1349(b)(1)."). By its terms, section 1349(b)(1)(A) grants federal District Courts wide-ranging jurisdiction to decide any action "arising out of, or in connection with" exploration and drilling operations on the Outer Continental Shelf. Under established Fifth Circuit precedent, a District Court has original subject matter jurisdiction over a plaintiff's action if it would not have arisen "but for" exploration and drilling operations conducted on the OCS. *See, e.g.*, *Tenn. Gas Pipeline v. Houston Cas. Ins. Co.*, 87 F.3d 150, 154 (5th Cir. 1996).

Accordingly, in the October 6 Order, this Court recognized that the OCSLA's jurisdiction grant, 43 U.S.C. § 1349, is "very broad." Slip op. at 6. The Court observed that, to determine

5

whether section 1349(b)(1) grants jurisdiction over a claim under the OCSLA, courts conduct a two-part analysis. *See id.* First, courts determine whether "the activities that caused the injury can be classified as an 'operation conducted on the outer Continental Shelf' and whether that 'operation' involved the exploration or production of minerals." Slip op. at 6-7 (quoting 43 U.S.C. § 1349(b)(1)). This Court held that "it is clear that Defendants' activities qualify as an operation" because "Defendants were exploring and producing minerals, namely oil, from the outer Continental Shelf" and "[i]t is these activities that allegedly caused the April 20, 2010 explosion and the resulting oil spill." Slip op. at 7.

Second, this Court noted that courts "focus on whether the case and controversy 'arises out of, or in connection with the operation,'" which requires the use of "a 'but-for' test, i.e., but for the operation, would the case or controversy have arisen." *Id.* at 7-8. This Court held that, in that case, "Plaintiffs' theory of liability is based on Defendants' alleged negligent actions during the drilling and exploration operation," and that "[t]hese facts clearly satisfy the 'but-for' test." *Id.* at 8. In reaching this conclusion, the Court observed that "neither the Supreme Court nor the Fifth Circuit has held that the situs requirement has to be satisfied for jurisdiction to be proper under § 1349." *Id.* at 8 n.1.

The exact same analysis applies in this case. Plaintiffs claim that their injuries would not have arisen "but for" the very same "operation" at stake in the October 6 Order. Accordingly, for the same reasons expressed by this Court in that Order, the Court has "original jurisdiction" over Plaintiffs' claims here.[2]

---

[2] Plaintiffs' arguments that OCSLA does not apply to the *Deepwater Horizon*, *see* Jones Mem. at 4-6; Davis Mem. at 4-6, simply repeat arguments already heard and rejected by this Court in its October 6 Order. The arguments are meritless. *See Demette v. Falcon Drilling Co.*, 280 F.3d 492, 496 (5th Cir. 2002) (OCSLA applies to "a device temporarily attached to the seabed, which was erected on the OCS for the purpose of drilling for oil"), *overruled in irrelevant part by Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778 (5th Cir. 2009) (en banc). To the extent that Plaintiffs suggest that the "savings to suitors" clause contained in 28 U.S.C. § 1333(1), provides a reason for remand, they are mistaken. It is well established that the "savings to suitors" clause "does not guarantee

## B. Plaintiffs' Claims "Arise Under" Federal Law For Purposes Of Section 1441(b).

Plaintiffs' claims "arise" under federal law under section 1441(b) for two independent reasons. *First*, Plaintiffs have expressly pleaded federal claims, as well as state claims that become "surrogate federal law" under section 1333(a)(2)(A) of the OCSLA, on the face of their state-court Petitions. Those pleadings, in themselves, are enough to provide jurisdiction here. *Second*, even assuming that Plaintiffs have pleaded only maritime claims, Plaintiffs are seeking to bring those claims within the federal enclave of the OCS. Claims brought within such federal enclaves "arise under" federal law for purposes of federal jurisdiction.

### 1. Plaintiffs have expressly pleaded OCSLA claims in their Petitions.

In these cases, the "arising under" analysis is particularly straightforward because the Fifth Circuit has squarely held that when a plaintiff asserts "a non-maritime claim," the claim "arises under" OCSLA within the meaning of section 1441(b). Here, Plaintiffs expressly (i) "bring claims against Cameron under the Texas Products Liability Act (Tex. Civ. Prac. & Rem. Code § 82.001, *et seq.*)," Jones Pet. at 3 ¶ VIII; Davis Pet. at 4 ¶ 6, and (ii) allege that Defendants committed "acts of negligence and omissions . . . in violation of state and Federal law applicable on the Outer Continental Shelf," Jones Pet. at 6 ¶ VIV; Davis Pet. at 5 ¶ 7. These are not maritime claims, but federal claims and state claims that become "surrogate federal law" under OCSLA. *See generally AmClyde Engineered Prods.*, 448 F.3d 760 (OCSLA jurisdiction existed over products liability action filed concerning crane used on construction project for offshore oil and gas facility, not traditional maritime claims).

The Fifth Circuit's decision in *Hufnagel* is on point. In *Hufnagel*, the Fifth Circuit

---

[plaintiffs] a nonfederal forum, or limit the right of defendants to remove such actions to federal court where there exists some basis for federal jurisdiction other the admiralty." *Tenn. Gas Pipeline*, 87 F.3d at 153. It is therefore "also well established that the saving clause does not prevent the removal of maritime claims when original jurisdiction is based upon something other than admiralty," such as OCSLA, applicable to this case. *Id.*

7

addressed a case in which plaintiff had "asserted against Kerr-McGee [one of the defendants] a non-maritime claim, a claim governed not by maritime law but by La. Civil Code § 2322." 182 F.3d at 351.  The Fifth Circuit held that this claim was "made applicable federal law by OCSLA, 43 U.S.C. § 1333(a)(2)(A)," and thus was "one 'arising under' OCSLA within the meaning of section 1441(b) and section 1331." *Id.*  As a result, "[e]ven if one of the other claims might be characterized as maritime, it too would be removable." *Id.* at 351 n.8 (citing section 1441(c), which allows removal of "non-removable claims or causes of action" when at least one "separate and independent claim or cause of action" arises under federal law).

Similarly, in *Stokes v. Petroleum Helicopters*, 1997 WL 695557 (E.D. La. Nov. 5, 1997), the Court determined that there was federal "arising under" jurisdiction when plaintiffs' complaints "include[d] claims under both general maritime law and Louisiana state law," including a claim alleging that "'[a]ll or some of the foregoing acts of negligence, fault and liability were in violation of the laws of the State of Louisiana and or the laws of the United States.'" *Id.* at *3 (quoting the complaint in *Stokes*).  The Court noted that "[a]lthough plaintiffs do not specifically allege OCSLA claims, this is not dispositive," reasoning that "[s]ince [1] the alleged accident arose on an OCSLA situs, [2] plaintiffs made state law claims independent from their maritime claims, and [3] the state law claims are not facially inconsistent with federal law, [4] the plaintiffs' state claims arise under OCSLA." *Id.*  In so holding, the Court specifically rejected an argument that the entire complaint arose under maritime law:  "While plaintiffs argue that their claims are governed by maritime law, they are also based, in part, on non-maritime claims." *Id.*

The same is true here, and for the same reason federal OCSLA jurisdiction attaches. Plaintiffs have expressly pleaded a products-liability claim under Texas state law, and have

stated in their Petitions that their claims depend on "Federal law applicable on the Outer Continental Shelf." Plaintiffs' arguments that maritime law governs where admiralty and OCSLA jurisdiction overlap, *see* Jones Mem. at 7; Davis Mem. at 7, is of no relevance: As *Hufnagel* and *Stokes* make clear, this Court need not determine the governing law at the jurisdictional stage of the proceedings where (as here) Plaintiffs have expressly sought to bring state-law and federal-law claims on the face of their petitions.[3]

### 2. Even assuming that Plaintiffs have pleaded only maritime claims, Plaintiffs' claims "arise under" the OCSLA.

Even if Plaintiffs had not pleaded a claim premised on violations of state and federal law, however, their claims would "arise under" federal law pursuant to section 1441(b). That is because OCSLA establishes a federal enclave over the Outer Continental Shelf, and it is well-settled that claims brought within such enclaves "arise under" federal law.

The OCSLA declares that "the subsoil and seabed of the outer Continental Shelf appertain to the United States and are subject to its jurisdiction, control and power of disposition." 43 U.S.C. § 1332(1). As part of that "jurisdiction, control and power," the OCSLA declares that:

> The Constitution and laws and civil and political jurisdiction of the United States ***are extended to*** the subsoil and seabed of the outer Continental Shelf and to all artificial islands, and ***all installations and other devices permanently or temporarily attached to the seabed***, which may be erected thereon for the purpose of exploring for, developing, or producing resources therefrom, or any such installation or other device (other than a ship or vessel) for the purpose of transporting such resources, to the same extent ***as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State*** . . . . (emphasis added).

---

[3] To the extent Plaintiffs rely on the statement in *Bulen v. Hall-Houston Oil Co.*, 953 F. Supp. 141, 145 (E.D. La. 1997), that "state law claims are not converted into claims arising under the laws of the United States by virtue of OCSLA," that reasoning is no longer good law and was rejected in *Hufnagel*. *See* 182 F.3d at 351 (reasoning that state-law claim was "made applicable federal law by OCSLA, 43 U.S.C. § 1333(a)(2)(A)," and thus was "one 'arising under' OCSLA within the meaning of section 1441(b) and section 1331").

43 U.S.C. § 1333(a)(1) (emphases added).  Areas of "exclusive Federal jurisdiction located within a State" are more commonly known as federal enclaves.[4]  Section 1333(a)(1) thus extends "exclusive Federal jurisdiction" equivalent to federal enclave jurisdiction over "all installations and other devices . . . attached to the seabed" — including all such devices that have been "temporarily attached."  Moreover, in amending OCSLA to expand its coverage in 1978, the House Select Committee on the Outer Continental Shelf specifically observed in its report that:

> It is thus made clear that ***Federal*** law is to be applicable to ***all activities on all devices*** in contact with the seabed for exploration, development, and production.  The committee intends that ***Federal law is, therefore, to be applicable to*** activities on drilling ships, ***semi-submersible drilling rigs***, and other watercraft, when they are connected to the seabed by drillstring, pipes, or other appurtenances, on the OCS for exploration, development, or production purposes.

H.R. Rep. No. 95-590, at 128 (1977) (emphasis added), reprinted in 1978 U.S.C.C.A.N. 1450, 1534.

Through these statutory provisions, the OCSLA "makes it clear that federal law, supplemented by state law of the adjacent State, is to be applied to these artificial islands ***as though they were federal enclaves in an upland State***." *Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352, 355 (1969) (emphasis added); *see Demette v. Falcon Drilling Co.*, 280 F.3d 492, 498 (5th Cir. 2002) (holding that "a device temporarily attached to the seabed, which was erected on the OCS for the purpose of drilling for oil" fell within the scope of section 1333(a)(1)), *overruled in irrelevant part by Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778 (5th Cir. 2009) (en banc); *see also Tenn. Gas Pipeline*, 87 F.3d at 153 (OCSLA establishes "national authority over the OCS at the expense of both foreign governments and the governments of the

---

[4] *See, e.g.*, BLACK'S LAW DICTIONARY (9th ed. 2009) ("Examples of federal enclaves are military bases, national parks, federally administered highways, and federal Indian reservations.  The U.S. government has ***exclusive authority and jurisdiction*** over federal enclaves.") (emphasis added).  The Outer Continental Shelf is simply another example of a type of federal enclave.

individual states" and "makes federal law exclusive in its regulation of the OCS . . . ."); *EP Operating Ltd. P'ship v. Placid Oil Co.*, 26 F.3d 563, 569 (5th Cir. 1994) (OCSLA is "intended to govern the ***full range*** of potential legal problems that might arise in connection with operations on the Outer Continental Shelf.") (quoting *Laredo Offshore Constructors, Inc. v. Hunt Oil Co.*, 754 F.2d 1223, 1228 (5th Cir. 1985) (emphasis added)); *Union Tex. Petroleum Corp. v. PLT Eng'g, Inc.*, 895 F.2d 1043, 1052 (5th Cir. 1990) (reasoning that Congress intended that the OCS should "be treated as an area of exclusive federal jurisdiction within the state").

The Fifth Circuit has long held that claims brought within federal enclaves "arise under" federal law for purposes of federal jurisdiction ***by virtue of the location's status as an enclave***. *See, e.g.*, *Symonds v. Day & Zimmerman, Inc.*, 981 F.2d 1255, at *1 (5th Cir. 1992) (unpublished) ("We have jurisdiction over the instant case as the incidents that gave rise to it occurred on a federal enclave."); *see also Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006) ("Federal courts have federal jurisdiction over tort claims that arise on 'federal enclaves.'"). Thus, in *Mater v. Holley*, 200 F.2d 123, the Fifth Circuit considered a substantially similar argument by a plaintiff who filed suit in federal district court because she was injured within the boundaries of Fort McPherson, Georgia, an area of exclusive federal sovereignty. The court of appeals reversed the district court's denial for lack of federal jurisdiction, reasoning that "[i]t seems indubitable that any law existing in territory over which the United States has 'exclusive' sovereignty must derive its authority and force from the United States and is for that reason federal law, even though having its origin in the law of the state within the exterior boundaries of which the federal area is situate." *Id.* at 124. The Fifth Circuit observed that "[i]t would be incongruous to hold that although the United States has exclusive sovereignty in the area here involved, its courts are without power to adjudicate controversies

11

arising there, but must relegate the parties to the courts of another sovereign for relief." *Id.* at 124-25. In short, claims brought within federal enclaves necessarily "arise under" federal law even when they are based on non-federal law.

The same logic applies here. It cannot be contested that, under the OCSLA, the United States has "exclusive sovereignty" over operations on the OCS. Therefore, under *Mater*'s reasoning, the law that applies on the OCS, whether state law or maritime law, is necessarily federal law for purposes of the "arising under" jurisdiction of United States courts. To be sure, the law at stake in *Mater* was state law, whereas Plaintiffs contend that the law at stake here is maritime law. But that makes no difference for jurisdictional purposes: In both cases, claims that would not otherwise "arise under" federal law are converted into federal claims by virtue of their relationship to a federal enclave.

Although there is no Fifth Circuit opinion applying *Mater* in a case involving OCSLA, two district courts have noted the logic of applying *Mater* to the Shelf. In *Stokes*, the Court observed that the Supreme Court had treated the OCS as a "federal enclave" in *Rodrigue* and reasoned that, accordingly, "cases interpreting the effect of applying state law in other federal enclaves provide guidance here." 1997 WL 695557, at *5 (citing *Mater* and noting that, in that case, the Fifth Circuit held that "even though state law governed a negligence claim stemming from an accident on a federal military base, the case 'arose under federal law'"). And in *Hodges v. Shell Oil Co.*, 1997 WL 473809 (E.D. La. Aug. 19, 1997), the Court reasoned that "the application of laws on the outer Continental Shelf should be analogous to the application of laws in federal enclaves within a state." *Id.* at *4. As a result, the Court relied on *Mater*, noting that the case determined that "any law that applies to such an area [namely, a federal enclave] is federal law." *Id.* at *5. It thus held that because "plaintiffs' negligence claims stem from an

12

accident that occurred on the outer Continental Shelf, an enclave of exclusive federal jurisdiction," those "claims arise under federal law." *Id.*

For the same reasons, if this Court reaches this issue, it should apply *Mater* here and determine that maritime claims brought within a federal enclave necessarily arise under federal law.

## II. GIVEN THE PRESENCE OF STRONG AND PLAIN GROUNDS FOR OCSLA REMOVAL UNDER FIFTH CIRCUIT PRECEDENT, THE COURT SHOULD REJECT PLAINTIFFS' REQUESTS FOR COSTS AND ATTORNEYS' FEES.

If the Court agrees with the merits of the OCSLA removal arguments detailed above, or with the further arguments made in Cameron's opposition brief, then it goes without saying that Plaintiffs' request for attorney's fees and costs must also be rejected. Only if the Court were to disagree with the invocation of the OCSLA jurisdictional statute under the case law in this Circuit and hold that it lacked subject matter jurisdiction under OCSLA's section 1349, *see* 28 U.S.C. § 1447(c), would this Court then have to decide "whether [BP] had objectively reasonable grounds to believe the removal was legally proper." *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 293 (5th Cir. 2000). But any such request for costs and attorneys' fees under 28 U.S.C. § 1447(c) should be quickly denied unless "the removing party ***lacked an objectively reasonable*** basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005) (emphasis added).

In this case, objectively reasonable grounds are manifest. "[W]hen an objectively reasonable basis exists, fees should be denied." *Id.* Contrary to Plaintiffs' arguments, (1) this Court has "original jurisdiction" over the claims here under its October 6 Order and (2) this Court has "arising under" removal jurisdiction over the claims because Plaintiffs expressly pleaded OCSLA claims and because, at any rate, this Court has jurisdiction over claims brought concerning accidents occurring in federal enclaves such as the OCS. Indeed, the ***only reason***

13

that Plaintiffs put forth for why removal lacks an objectively reasonable basis is that OCSLA "does not apply to installations that are neither erected upon nor attached to the OCS," Jones Mem. at 10; Davis Mem. at 10, without ever citing (let alone discussing) this Court's clear holding in its October 6 Order that Defendants were conducting an "operation" on the *Deepwater Horizon*, which is all that is required to trigger OCSLA jurisdiction.  Moreover, the issues at stake in this motion are complex and weighty, and defendants should not be faulted for seeking an authoritative jurisdictional determination from this Court at an early stage in the *Deepwater Horizon* litigation, in an attempt to avoid innumerable and potentially conflicting holdings by other courts.  Thus, even if this Court disagreed with BP's arguments, Plaintiffs have not met their high burden of showing objective unreasonableness.  *See Valdes*, 199 F.3d at 293 (concluding that a court "need not express an opinion" on a removing party's authorities "except to say that [the removing party] could conclude from [them] that its position was not an unreasonable one").

## CONCLUSION

For these reasons, BP respectfully requests that Plaintiffs' Motions to Remand to State Court be denied, that Plaintiffs' requests for fees and costs be denied, and that these actions be maintained in federal court.

Respectfully submitted,

s/ Paul Matthew Jones

| | |
|---|---|
| Don K. Haycraft (Bar #14361) | Paul Matthew Jones (Bar #19641) |
| R. Keith Jarrett (Bar #16984) | April L. Rolen-Ogden (Bar #30698) |
| **LISKOW & LEWIS** | Stuart T. Welch (Bar #31359) |
| 701 Poydras Street, Suite 5000 | **LISKOW & LEWIS** |
| New Orleans, LA 70139-5099 | 822 Harding Street |
| Telephone: (504) 581-7979 | Lafayette, LA 70503 |
| Facsimile: (504) 556-4108 | Telephone: (337) 232-7424 |
| | Facsimile: (337) 267-2399 |

*Attorneys for BP Exploration & Production, Inc., BP Products North America, Inc., and BP America Inc.*

| | |
|---|---|
| | Richard C. Godfrey, P.C. |
| Jeffrey Bossert Clark | J. Andrew Langan, P.C. |
| Aditya Bamzai | **KIRKLAND & ELLIS LLP** |
| **KIRKLAND & ELLIS LLP** | 300 North LaSalle Street |
| 655 Fifteenth Street, N.W. | Chicago, IL 60654 |
| Washington, DC 20005 | Telephone: (312) 862-2000 |
| Telephone: (202) 879-5960 | Facsimile: (312) 862-2200 |
| Facsimile: (202) 879-5200 | |

*Of Counsel*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing **BP'S COMBINED MEMORANDUM IN OPPOSITION TO MOTION TO REMAND TO STATE COURT** has been served upon all counsel of record by placing same in the United States mail, properly addressed and postage prepaid, this 2nd day of November, 2010.

s/ Paul Matthew Jones