## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | * * * * * * * | MDL NO. 2179 |
| | | SECTION J |
| | | JUDGE CARL J. BARBIER |
| This document relates to 10-3168, *Kleppinger v. Transocean Offshore Deepwater Drilling, Inc. et al.* | * * * * * * | MAGISTRATE JUDGE SALLY SHUSHAN |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## BP PRODUCTS NORTH AMERICA INC.'S
## MEMORANDUM IN OPPOSITION
## TO MOTION TO REMAND TO STATE COURT

Plaintiffs filed in Texas state court a Petition for Damages against BP Products North America Inc. ("BP Products"), as well as Transocean Offshore Deepwater Drilling, Inc. ("Transocean"), Transocean Deepwater, Inc., Deepwater Horizon, Halliburton Energy Services, Cameron International Corporation f/k/a Cameron Systems Corporation ("Cameron"), MI Swaco, Triton Asset Leasing GmbH, Triton Hungary Asset Management Limited Liability Company, Triton Hungary Asset Management KFT, and Transocean Holdings, L.L.C., pursuant to general maritime law. Plaintiffs' Petition asserts causes of action arising out of exploration and drilling operations on the Outer Continental Shelf ("OCS" or "Shelf") and the oil spill in the Gulf of Mexico. Cameron removed this action to this Court pursuant to 43 U.S.C. § 1349(b)(1)(A) (the federal Outer Continental Shelf Lands Act ("OCSLA")), and Plaintiffs have now filed a motion to remand their claims to state court.

Plaintiffs' motion lacks merit under governing Fifth Circuit law and this Court's recent October 6, 2010 Order ("October 6 Order") denying the State of Louisiana's motion to remand.[1] This Court has removal jurisdiction under 28 U.S.C. § 1441. As this Court previously held in its October 6 Order, this Court has "original jurisdiction" under section 1441(a) over cases — such as the case at issue here — alleging injuries that would not have occurred "but for" the *Deepwater Horizon* oil spill.

In addition, Plaintiffs' claims "arise under" federal law for purposes of removal jurisdiction under section 1441(b). Even assuming that Plaintiffs have pleaded maritime claims in their state-court petition (an issue that this Court need not resolve at this juncture), those maritime claims would "arise under" federal law for purposes of removal jurisdiction, because OCSLA establishes a federal enclave on the Shelf and it is well-settled that claims brought in federal enclaves "arise under" federal law. *See Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 217 (1986) ("The intent behind OCSLA was to treat the artificial structures covered by the Act as upland islands or as federal enclaves within a landlocked State . . . ."); *Texaco Exploration & Prod., Inc. v. AmClyde Engineered Prods. Co.*, 448 F.3d 760, 772 (5th Cir.) (same), *amended in irrelevant part on reh'g*, 453 F.3d 652 (5th Cir. 2006); *Mater v. Holley*, 200 F.2d 123 (5th Cir. 1952) (claims brought regarding federal enclaves necessarily arise under federal law). As a result, it follows that Plaintiffs' maritime claims, brought with respect to

---

[1] BP Products files this opposition brief to address only Plaintiffs' arguments with respect to OCSLA jurisdiction and the federal removal statute, specifically, the questions (1) whether Plaintiffs' claims are within this Court's "original jurisdiction" under OCSLA's jurisdictional provision, 43 U.S.C. § 1349, for purposes of 28 U.S.C. § 1441(a), and (2) whether Plaintiffs' claims "arise under" federal law for purposes of section 1441(b). Plaintiffs have also invoked the Jones Act bar to removal and asserted that removal was untimely in this case. *See* Mem. at 7-9, 16-18. With respect to those two issues, BP Products defers to, and adopts, the arguments made by Cameron in its separate opposition brief to Plaintiffs' remand motion. BP Products' adoption of Cameron's separate opposition brief is limited to the effect of the Limitations Act injunction issued by Judge Ellison on the Jones Act removal issue presented here. BP Products joins Cameron's good-faith argument for the extension of the logic in *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438 (2001), to this removal situation implicating the Jones Act, but BP Products reserves all rights with respect to merits issues concerning the Limitation Act action filed by Transocean.

Case 2:10-md-02179-CJB-DPC   Document 675   Filed 11/05/10   Page 3 of 14

activities on a federal enclave, "arise under" federal law.  Thus, this Court should adopt the Fifth Circuit's reasoning in *Tennessee Gas Pipeline v. Houston Casualty Ins. Co.*, 87 F.3d 150, 156 (5th Cir. 1996), where the court explained in *dicta* that "[g]iven the national interests that prompted Congress to pass OCSLA and grant broad jurisdiction under 43 U.S.C. § 1349, Congress arguably intended to vest the federal courts with the power to hear *any case* [including a case with a maritime claim] involving the OCS, even on removal, without regard to citizenship." *Id.* at 156 (emphasis added).  As *Tennessee Gas Pipeline* indicates, the law applied within OCSLA — much like the law applied in other federal enclaves — should be considered federal law for purposes of "arising under" jurisdiction under section 1441(b).[2]

In sum, removal is proper and this Court has subject matter jurisdiction.  Remand should be denied.

## BACKGROUND

Plaintiff Kleppinger filed a Petition in Texas state court, bringing "an admiralty and maritime claim" and a claim pursuant to "46 U.S.C. § 30104, *et seq.*," the federal Jones Act, which was joined by the other Plaintiffs as intervenors.  Pet. at 3 ¶¶ 14-15 (Fourth Amended Original Petition, filed May 5, 2010).  Plaintiff Kleppinger's Petition establishes that Plaintiffs'

---

[2] To be sure, the Fifth Circuit has not resolved this issue, and there is arguably inconsistent *dictum* in *Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340 (5th Cir. 1999).  As the Court recognized in its October 6, 2010 Order, "the Fifth Circuit has not determined that finding that a court has OCSLA jurisdiction is synonymous with finding that a plaintiff's claim arises under the laws of the United States."  Slip op. at 9.  In fact, the Fifth Circuit has twice described the question whether OCSLA maritime claims "arise under" federal law as a "conundrum," while avoiding answering the question and thus reserving it for another day.  *Hufnagel*, 182 F.3d at 351 (quoting *Tenn. Gas Pipeline v. Houston Casualty Ins. Co.*, 87 F.3d 150, 156 (5th Cir 1996)).

   BP Products respectfully submits that this Court cannot deny jurisdiction merely because the Fifth Circuit has not addressed a question.  *See, e.g.*, *Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336, 351 (1976) (court exceeds authority if it remands a case on grounds not permitted by statute).  In this regard, Plaintiffs are wrong in suggesting that this Court must resolve "ambiguities in current substantive law in plaintiff's favor."  Mem. at 10 (quoting *Holmes v. Atlantic Sounding Co.*, 437 F.3d 441, 445 (5th Cir. 2006)).  *Holmes* simply applies the settled law that, in determining whether "plaintiff has no possibility of establishing a Jones Act claim on the merits," courts must "resolv[e] all disputed facts and ambiguities in current substantive law in plaintiff's favor."  *Holmes*, 437 F.3d at 445 (quoting *Hufnagel*, 182 F.3d at 345-46).  Accordingly, should the Court reach the question of whether maritime claims on the OCS "arise under" federal law, BP Products respectfully submits that the OCS's status as a federal enclave is dispositive here.

3

claims arise from and are inextricably connected to OCS operations, including the exploration, development, or production of oil in the OCS subsoil and seabed:

- "[T]his lawsuit has become necessary as a result of an incident, which occurred on or about April 20, 2010." Pet. at 4 ¶ 16.

- Plaintiff Kleppinger was employed by Transocean, or one of its affiliates, "as a seaman and was assigned as a member of the crew on board the *DEEPWATER HORIZON*" and his "duties contributed to the mission of the *DEEPWATER HORIZON*." *Id.*

- As a result of certain actions by some of the defendants, a "blowout, ignition and deadly explosion" occurred. *Id.* ¶¶ 16-17.

- Defendants' negligence "was a proximate and/or producing cause of the incident and the resulting damages" to Plaintiffs. *Id.* at 5 ¶ 19.

- Defendants "owed a duty to Karl Kleppinger, Jr. to maintain [the *Deepwater Horizon*] in a safe and seaworthy condition. However, Plaintiffs will show that the DEEPWATER HORIZON was unseaworthy and that said unseaworthiness was a proximate and/or producing cause of the incident and resulting damages." *Id.* at 5 ¶ 22.

Thus, it is clear that Plaintiffs complain of activities that occurred on the OCS as a result of the *Deepwater Horizon* incident. Cameron removed this case on May 24, 2010, and the Judicial Panel on Multidistrict Litigation transferred it to this Court on September 21, 2010. Plaintiffs have now moved to remand to state court.

## ARGUMENT

### I. THIS COURT HAS REMOVAL JURISDICTION OVER THIS CASE UNDER OCSLA AND THE FEDERAL REMOVAL STATUTE.

Under the federal removal statute, this Court has jurisdiction over any civil action where (1) it has "original jurisdiction," 28 U.S.C. § 1441(a), and (2) a claim "aris[es] under the . . . laws of the United States," *id.* § 1441(b). Both conditions are met here. The October 6 Order conclusively establishes that this Court has "original jurisdiction" over any claim that would not have occurred "but for" the *Deepwater Horizon* oil spill. And Plaintiffs' claims "arise under"

federal law here because Plaintiffs seek to bring claims arising out of torts on an exclusive federal enclave, namely, the Outer Continental Shelf.

### A. OCSLA Establishes "Original Jurisdiction" Over Plaintiffs' Claims For Purposes Of Section 1441(a).

Under this Court's October 6 Order, this Court has original jurisdiction over claims that would not have occurred "but for" the *Deepwater Horizon* oil spill. *See, e.g.*, Slip op. at 8 ("[I]t is clear that original jurisdiction rests with this Court pursuant to § 1349(b)(1)."). By its terms, section 1349(b)(1)(A) grants federal District Courts wide-ranging jurisdiction to decide any action "arising out of, or in connection with" exploration and drilling operations on the Outer Continental Shelf. Under established Fifth Circuit precedent, a District Court has original subject matter jurisdiction over a plaintiff's action if it would not have arisen "but for" exploration and drilling operations conducted on the OCS. *See, e.g.*, *Tenn. Gas Pipeline v. Houston Cas. Ins. Co.*, 87 F.3d 150, 154 (5th Cir. 1996).

Accordingly, in the October 6 Order, this Court recognized that the OCSLA's jurisdiction grant, 43 U.S.C. § 1349, is "very broad." Slip op. at 6. The Court observed that, to determine whether section 1349(b)(1) grants jurisdiction over a claim under the OCSLA, courts conduct a two-part analysis. *See id.* First, courts determine whether "the activities that caused the injury can be classified as an 'operation conducted on the outer Continental Shelf' and whether that 'operation' involved the exploration or production of minerals." Slip op. at 6-7 (quoting 43 U.S.C. § 1349(b)(1)). This Court held that "it is clear that Defendants' activities qualify as an operation" because "Defendants were exploring and producing minerals, namely oil, from the outer Continental Shelf" and "[i]t is these activities that allegedly caused the April 20, 2010 explosion and the resulting oil spill." Slip op. at 7.

Second, this Court noted that courts "focus on whether the case and controversy 'arises

out of, or in connection with the operation,'" which requires the use of "a 'but-for' test, i.e., but for the operation, would the case or controversy have arisen." *Id.* at 7-8.  This Court held that, in that case, "Plaintiffs' theory of liability is based on Defendants' alleged negligent actions during the drilling and exploration operation," and that "[t]hese facts clearly satisfy the 'but-for' test." *Id.* at 8.  In reaching this conclusion, the Court observed that "neither the Supreme Court nor the Fifth Circuit has held that the situs requirement has to be satisfied for jurisdiction to be proper under § 1349." *Id.* at 8 n.1.

The exact same analysis applies in this case.  Plaintiffs claim that their injuries would not have arisen "but for" the very same "operation" at stake in the October 6 Order.  Accordingly, for the same reasons expressed by this Court in that Order, the Court has "original jurisdiction" over Plaintiffs' claims here.[3]

### B. Plaintiffs' Claims "Arise Under" Federal Law For Purposes Of Section 1441(b).

Even assuming that Plaintiffs have pleaded maritime claims in their state-court petition (a governing law issue that this Court need not resolve at this stage of the proceedings), Plaintiffs claims would "arise under" federal law for purposes of section 1441(b).  That is because the OCSLA denominates the Outer Continental Shelf a federal enclave, and it is well-settled that

---

[3] Plaintiffs concede that in the October 6 Order, this Court effectively "found that OCSLA applies to this case." Mem. at 9.  They nevertheless argue that OCSLA does not apply to the *Deepwater Horizon*. *See* Mem. at 10.  Their arguments provide no basis for this Court to reconsider its holding.  *See Demette v. Falcon Drilling Co.*, 280 F.3d 492, 498 (5th Cir. 2002) (OCSLA applies to "a device temporarily attached to the seabed, which was erected on the OCS for the purpose of drilling for oil"), *overruled in irrelevant part by Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778 (5th Cir. 2009) (en banc).  Plaintiffs are simply wrong that OCSLA "is inapplicable because the DWH was a vessel." Mem. at 18 n.102.  As the Fifth Circuit has squarely said, "the use of the term 'temporarily' [in the OCSLA statute] implies that devices that can detach from the seabed and are capable of movement on the sea — *i.e.*, vessels — can fall within the scope of the OCSLA." *Demette*, 280 F.3d at 498 n.19.  Nor is it correct, as explained above, *see supra* 3 n.2, that this Court must resolve "ambiguities in current substantive law in plaintiff's favor," Mem. at 10 (quoting *Holmes v. Atlantic Sounding Co.*, 437 F.3d 441, 445 (5th Cir. 2006).  *Holmes* applies only in the context of resolving ambiguities in whether plaintiffs have a viable Jones Act claim.  *See, e.g.*, *Hufnagel*, 182 F.3d at 345-46.

6

claims brought within such enclaves "arise under" federal law.[4]

The OCSLA declares that "the subsoil and seabed of the outer Continental Shelf appertain to the United States and are subject to its jurisdiction, control and power of disposition." 43 U.S.C. § 1332(1). As part of that "jurisdiction, control and power," the OCSLA declares that:

> The Constitution and laws and civil and political jurisdiction of the United States *are extended to* the subsoil and seabed of the outer Continental Shelf and to all artificial islands, and *all installations and other devices permanently or temporarily attached to the seabed*, which may be erected thereon for the purpose of exploring for, developing, or producing resources therefrom, or any such installation or other device (other than a ship or vessel) for the purpose of transporting such resources, to the same extent *as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State* . . . . (emphasis added).

43 U.S.C. § 1333(a)(1) (emphases added). Areas of "exclusive Federal jurisdiction located within a State" are more commonly known as federal enclaves.[5] Section 1333(a)(1) thus extends "exclusive Federal jurisdiction" equivalent to federal enclave jurisdiction over "all installations and other devices . . . attached to the seabed" — including all such devices that have been "temporarily attached." Moreover, in amending OCSLA to expand its coverage in 1978, the House Select Committee on the Outer Continental Shelf specifically observed in its report that:

> It is thus made clear that *Federal* law is to be applicable to *all activities on all devices* in contact with the seabed for exploration, development, and production. The committee intends that *Federal law is, therefore, to be applicable to* activities on drilling ships, *semi-submersible drilling rigs*, and other watercraft, when they are connected to the seabed *by drillstring, pipes, or other*

---

[4] BP Products recognizes that several district courts within the Fifth Circuit have determined that, even in the context of the OCSLA, maritime claims do not "arise under" federal law for purposes of removal jurisdiction. *See* Mem. at 11 n.65 (citing cases), 16 n.90 (same). BP Products notes that that those courts did not address the "federal enclave" argument presented herein, and therefore respectfully submits that they are not persuasive.

[5] *See, e.g.*, BLACK'S LAW DICTIONARY (9th ed. 2009) ("Examples of federal enclaves are military bases, national parks, federally administered highways, and federal Indian reservations. The U.S. government has *exclusive authority and jurisdiction* over federal enclaves.") (emphasis added). The Outer Continental Shelf is simply another example of a type of federal enclave.

7

>     *appurtenances*, on the OCS for exploration, development, or production purposes.

H.R. Rep. No. 95-590, at 128 (1977) (emphasis added), reprinted in 1978 U.S.C.C.A.N. 1450, 1534.

Through these statutory provisions, the OCSLA "makes it clear that federal law, supplemented by state law of the adjacent State, is to be applied to these artificial islands *as though they were federal enclaves in an upland State*." *Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352, 355 (1969) (emphasis added); *see Demette v. Falcon Drilling Co.*, 280 F.3d 492, 498 (5th Cir. 2002) (holding that "a device temporarily attached to the seabed, which was erected on the OCS for the purpose of drilling for oil" fell within the scope of section 1333(a)(1)), *overruled in irrelevant part by Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778 (5th Cir. 2009) (en banc); *see also Tenn. Gas Pipeline*, 87 F.3d at 153 (OCSLA establishes "national authority over the OCS at the expense of both foreign governments and the governments of the individual states" and "makes federal law exclusive in its regulation of the OCS . . . ."); *EP Operating Ltd. P'ship v. Placid Oil Co.*, 26 F.3d 563, 569 (5th Cir. 1994) (OCSLA is "intended to govern the *full range* of potential legal problems that might arise in connection with operations on the Outer Continental Shelf.") (quoting *Laredo Offshore Constructors, Inc. v. Hunt Oil Co.*, 754 F.2d 1223, 1228 (5th Cir. 1985) (emphasis added)); *Union Tex. Petroleum Corp. v. PLT Eng'g, Inc.*, 895 F.2d 1043, 1052 (5th Cir. 1990) (reasoning that Congress intended that the OCS should "be treated as an area of exclusive federal jurisdiction within the state").

The Fifth Circuit has long held that claims brought within federal enclaves "arise under" federal law for purposes of federal jurisdiction *by virtue of the location's status as an enclave*. *See, e.g.*, *Symonds v. Day & Zimmerman, Inc.*, 981 F.2d 1255, at *1 (5th Cir. 1992) (unpublished) ("We have jurisdiction over the instant case as the incidents that gave rise to it

occurred on a federal enclave."); *see also Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006) ("Federal courts have federal jurisdiction over tort claims that arise on 'federal enclaves.'"). Thus, in *Mater v. Holley*, 200 F.2d 123, the Fifth Circuit considered a substantially similar argument by a plaintiff who filed suit in federal district court because she was injured within the boundaries of Fort McPherson, Georgia, an area of exclusive federal sovereignty. The court of appeals reversed the district court's denial for lack of federal jurisdiction, reasoning that "[i]t seems indubitable that any law existing in territory over which the United States has 'exclusive' sovereignty must derive its authority and force from the United States and is for that reason federal law, even though having its origin in the law of the state within the exterior boundaries of which the federal area is situate." *Id.* at 124. The Fifth Circuit observed that "[i]t would be incongruous to hold that although the United States has exclusive sovereignty in the area here involved, its courts are without power to adjudicate controversies arising there, but must relegate the parties to the courts of another sovereign for relief." *Id.* at 124-25. In short, claims brought within federal enclaves necessarily "arise under" federal law even when they are based on non-federal law.

The same logic applies here. It cannot be contested that, under the OCSLA, the United States has "exclusive sovereignty" over operations on the OCS. Therefore, under *Mater*'s reasoning, the law that applies on the OCS, whether state law or maritime law, is necessarily federal law for purposes of the "arising under" jurisdiction of United States courts. To be sure, the law at stake in *Mater* was state law, whereas Plaintiffs contend that the law at stake here is maritime law. But that makes no difference for jurisdictional purposes: In both cases, claims that would not otherwise "arise under" federal law are converted into federal claims by virtue of their relationship to a federal enclave.

Although there is no Fifth Circuit opinion applying *Mater* in a case involving OCSLA, two district courts have noted the logic of applying *Mater* to the Shelf.  In *Stokes v. Petroleum Helicopters*, 1997 WL 695557 (E.D. La. Nov. 5, 1997), the Court observed that the Supreme Court had treated the OCS as a "federal enclave" in *Rodrigue* and reasoned that, accordingly, "cases interpreting the effect of applying state law in other federal enclaves provide guidance here."  *Id.* at *5 (citing *Mater* and noting that, in that case, the Fifth Circuit held that "even though state law governed a negligence claim stemming from an accident on a federal military base, the case 'arose under federal law'").  And in *Hodges v. Shell Oil Co.*, 1997 WL 473809 (E.D. La. Aug. 19, 1997), the Court reasoned that "the application of laws on the outer Continental Shelf should be analogous to the application of laws in federal enclaves within a state."  *Id.* at *4.  As a result, the Court relied on *Mater*, noting that the case determined that "any law that applies to such an area [namely, a federal enclave] is federal law."  *Id.* at *5. The Court thus held that because "plaintiffs' negligence claims stem from an accident that occurred on the outer Continental Shelf, an enclave of exclusive federal jurisdiction," those "claims arise under federal law."  *Id.*

For the same reasons, if this Court reaches this issue, it should apply *Mater* here and determine that maritime claims brought within a federal enclave necessarily arise under federal law.

## II.    GIVEN THE PRESENCE OF STRONG AND PLAIN GROUNDS FOR OCSLA REMOVAL UNDER FIFTH CIRCUIT PRECEDENT, THE COURT SHOULD REJECT PLAINTIFFS' REQUESTS FOR COSTS AND ATTORNEYS' FEES.

If the Court agrees with the merits of the OCSLA removal arguments detailed above, or with the further arguments made in Cameron's opposition brief, then it goes without saying that Plaintiffs' request for attorney's fees and costs must also be rejected.  Only if the Court were to disagree with the invocation of the OCSLA jurisdictional statute under the case law in this

Circuit and hold that it lacked subject matter jurisdiction under OCSLA's section 1349, *see* 28 U.S.C. § 1447(c), would this Court then have to decide "whether [BP] had objectively reasonable grounds to believe the removal was legally proper." *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 293 (5th Cir. 2000). But any such request for costs and attorneys' fees under 28 U.S.C. § 1447(c) should be quickly denied unless "the removing party *lacked an objectively reasonable* basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005) (emphasis added).

In this case, objectively reasonable grounds are manifest. "[W]hen an objectively reasonable basis exists, fees should be denied." *Id.* Contrary to Plaintiffs' arguments, (1) this Court has "original jurisdiction" over the claims here under its October 6 Order and (2) this Court has "arising under" removal jurisdiction over the claims because this Court has jurisdiction over claims brought concerning accidents occurring in federal enclaves such as the OCS. And Plaintiffs' professed "deep concern — from an ethical standpoint" (Mem. at 13) that BP Product's position here is contrary to BP's position in *Strong v. B.P. Exploration & Production, Inc.*, 440 F.3d 665 (5th Cir. 2006), is baseless. The Fifth Circuit's opinion in *Strong* addresses which *governing law* should apply under the particular facts of *that* case. In explaining why this Court has jurisdiction because of OCSLA's status as a federal enclave, BP Products has taken *no position* on the *governing law* that this Court should ultimately apply to the particular facts of *this* case. Indeed, the salient point — which Plaintiffs fail to address — is that no matter what law this Court applies, Plaintiffs' claims necessarily "arise" on a federal enclave (the OCS) and, accordingly, "arise under" federal law.

At the end of the day, the issues at stake in this motion are complex and weighty, and defendants should not be faulted for seeking an authoritative jurisdictional determination from

11

this Court at an early stage in the *Deepwater Horizon* litigation, in an attempt to avoid innumerable and potentially conflicting holdings by other courts. Thus, even if this Court disagreed with defendants' arguments, Plaintiffs have not met their high burden of showing objective unreasonableness. *See Valdes*, 199 F.3d at 293 (concluding that a court "need not express an opinion" on a removing party's authorities "except to say that [the removing party] could conclude from [them] that its position was not an unreasonable one").

## **CONCLUSION**

For these reasons, BP Products respectfully requests that Plaintiffs' Motion to Remand to State Court be denied, that Plaintiffs' requests for fees and costs be denied, and that this action be maintained in federal court.

Respectfully submitted,

s/ Paul Matthew Jones

| | |
|---|---|
| Don K. Haycraft (Bar #14361) | Paul Matthew Jones (Bar #19641) |
| R. Keith Jarrett (Bar #16984) | April L. Rolen-Ogden (Bar #30698) |
| **LISKOW & LEWIS** | Stuart T. Welch (Bar #31359) |
| 701 Poydras Street, Suite 5000 | **LISKOW & LEWIS** |
| New Orleans, LA  70139-5099 | 822 Harding Street |
| Telephone:     (504) 581-7979 | Lafayette, LA  70503 |
| Facsimile:      (504) 556-4108 | Telephone:     (337) 232-7424 |
| | Facsimile:      (337) 267-2399 |

*Attorneys for BP Exploration & Production, Inc., BP Products North America, Inc., and BP America Inc.*

| | |
|---|---|
| | Richard C. Godfrey, P.C. |
| Jeffrey Bossert Clark | J. Andrew Langan, P.C. |
| Aditya Bamzai | **KIRKLAND & ELLIS LLP** |
| **KIRKLAND & ELLIS LLP** | 300 North LaSalle Street |
| 655 Fifteenth Street, N.W. | Chicago, IL 60654 |
| Washington, DC 20005 | Telephone:     (312) 862-2000 |
| Telephone:     (202) 879-5960 | Facsimile:      (312) 862-2200 |
| Facsimile:      (202) 879-5200 | |

*Of Counsel*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing **BP PRODUCTS NORTH AMERICA, INC.'S MEMORANDUM IN OPPOSITION TO MOTION TO REMAND TO STATE COURT** has been served upon all counsel of record by placing same in the United States mail, properly addressed and postage prepaid, this 2nd day of November, 2010.

s/ Paul Matthew Jones