# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:   OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | MDL NO. 2179 |
| | SECTION: J |
| THIS DOCUMENT RELATES TO: | |
| ALL ACTIONS | JUDGE BARBIER MAG. JUDGE SHUSHAN |

## BP'S MEMORANDUM IN SUPPORT OF MOTION FOR CONFIRMATION OF NON-APPLICABILITY OF PRESERVATION OF EVIDENCE OBLIGATIONS AS TO CERTAIN SUBPOENAED ITEMS AND CERTAIN NON-EVIDENTIARY ITEMS

BP America Inc., BP America Production Company, and BP Exploration & Production Inc. (collectively, the "BP Defendants" or "BP") submit this Memorandum in Support of BP's motion, which respectfully seeks to confirm the non-applicability of Pretrial Order No. 1's preservation-of-evidence obligations as applied to certain items subject to lawful subpoenas and certain other items lacking evidentiary value.

## INTRODUCTION

BP submits this Motion for the limited purpose of confirming the non-applicability of the preservation-of-evidence obligations of Paragraph 14 of Pretrial Order No. 1 (Doc. No. 2) as it relates to 95 items or groups of items of equipment that have recently been retrieved from the seabed; will soon be retrieved from the seabed; or otherwise have recently been located near the

1317898544.

site of MC252 well #1 (a/k/a the "Macondo Well"). From this total of 95 equipment items, 28 items have been or will be provided directly to the Joint Investigation Team working under the Marine Board of Investigation pursuant to one or the other of two government subpoenas — the MBI's July 7, 2010 Subpoena (the "MBI Subpoena," attached as Attachment A); and/or, the August 31, 2010, Subpoena *Duces Tecum* of the Department of the Interior Office of the Inspector General (the "Pipe Subpoena," attached as Attachment B). The remaining 67 items or groups of items are not being provided to the MBI because they have been determined by the Joint Investigation Team to be of no evidentiary value. For reasons described below, neither category of equipment properly falls within the intended scope of the Paragraph 14 preservation obligations.

With respect to the 28 equipment items sought pursuant to subpoena, BP has an obligation under federal law to produce such materials upon demand. Once produced to the MBI, those items will be secured and preserved by the government precisely because of their evidentiary value and will be treated accordingly.

With respect to the remaining 67 equipment items or groups of items determined by the Joint Investigation Team to be of no evidentiary value, such materials fall expressly outside the scope of Paragraph 14 of Pretrial Order No. 1. By its plain terms, Paragraph 14, sets forth retention obligations that apply only to those tangible things that contain "information potentially relevant to the subject matter of this litigation." These 67 equipment items, by contrast, have been released by the United States Coast Guard and Bureau of Ocean Energy Management, Regulation and Enforcement (BOEMRE) precisely because they contain and convey no such relevant information. Nonetheless, while lacking evidentiary value, many of these equipment

2

items are urgently needed to provide immediate capability for responding to any future Macondo-type incidents.

Accordingly, in the interest of fulsome disclosure, avoiding future disputes or controversy, and providing notice to all parties, BP requests that the Court enter the attached proposed order confirming that BP has no obligation to preserve any of the 95 equipment items specified in this Motion. In advance of this filing, BP shared drafts of the Motion with the appropriate liaison counsel and with counsel for all defendants. After its own extensive review lasting more than several weeks, the United States affirmatively stated its non-objection to this motion. As of the date of this filing, no party has voiced objections to the requested relief.

## BACKGROUND

Following the successful effort to plug the Macondo Well, BP commenced an operation to clean-up various materials on the seabed around the Macondo Well site, as described in the Declaration of Martin Pabon ("Pabon Declaration," attached as Attachment C). This recovery effort falls under the regulatory purview of BOEMRE and is being conducted in cooperation with BOEMRE, the United States Coast Guard, the Joint Investigation Team, and other government entities. As of October 25, 2010, 62 of the items listed on Exhibit C to the Pabon Declaration have been recovered. Of these, 24 have been transferred into government custody pursuant to subpoena or otherwise, and the remaining 38 remain in BP's custody.

BP has worked diligently to sift the materials retrieved from the seabed in order to separate out those that might potentially have evidentiary value. On October 1, 2010, BP met with Lieutenant Commander Jeff Bray, counsel to the Joint Investigation Team and the attorney identified as the government contact point for the administration of the MBI Subpoena. The meeting's purpose was to offer the MBI an opportunity to consider further the disposition of

materials recovered from around the Macondo Well.  At the meeting, an index of all materials known to be on the seabed around the site was circulated.  The question to be answered was which of those materials was sufficiently "associated with" the Deepwater Horizon to possess evidentiary value and thus fall within the scope of the MBI Subpoena.  (*See* Attachment A (commanding production of all "equipment removed from or associated with the MODU DEEPWATER HORIZON, whenever retrieved or recovered and brought to the surface")).

Naturally, some items on the ocean floor possess evidentiary value and some do not.  Taking guidance from the MBI, the October 1 meeting's overriding purpose was to enable the implementation of an inclusive approach to subpoena compliance that would ensure secure custody at the Michoud NASA facility in New Orleans of all equipment items that did have, or might have, evidentiary value.  Before the meeting, during the meeting, and after the meeting, the Joint Investigation Team worked diligently to inform itself as to the nature of the equipment in question and its potential value as evidence.  The end-result was a tri-partite division of the seabed equipment into three categories for disposition.  This division was memorialized in a confirmatory letter from BP's counsel to the Joint Investigation Team dated October 7, 2010.  *See* Pabon Decl., Exhibit B.

***First***, those materials determined to have any value, or potential value, as evidence were designated by the Joint Investigation Team as "Category No. 1."  These Category No. 1 items are all deemed responsive to the MBI Subpoena and the Pipe Subpoena; hence, they must be transported to the NASA Michoud facility for preservation and use by the MBI as soon as they are retrieved from the seabed.  (*Id.*)

***Second***, those materials determined to have no evidentiary value, and no potential evidentiary value, were designated by the Joint Investigation Team as "Category No. 2."  These

4

Category No. 2 items are all deemed *un*responsive to the MBI Subpoena on account of their being not sufficiently "associated" with the Deepwater Horizon incident to possess potential value as evidence. For purposes of this Motion, BP has sub-divided these materials into three (3) "Category No. 2A" materials that BP proposes be approved for immediate reuse either because their extreme size makes their storage and preservation unduly burdensome, or because the item is needed for use on a BP project that originally loaned this item to support the Macondo Well incident response; 44 "Category No. 2B" materials that BP proposes be approved for reuse because they may well be urgently needed for a new consortium of oil producers formed for the purpose of responding to future Macondo-type incidents; and 20 "Category No. 2C" materials that BP proposes be approved for reuse either by the consortium and/or by BP, but only after each party to the litigation is provided with an opportunity to inspect the materials. Regardless of subcategory, BP will photograph each Category No. 2 item, using a vendor experienced in litigation photography, and make these photos available to all parties to this proceeding.

*Third*, another category of materials was designated as "Category No. 3." These Category No. 3 items are outside the scope of this Motion, but are nonetheless described in the interest of completeness. The Category No. 3 equipment is made up of items that for various reasons, including reasons of safety or impracticality of retrieval, are currently designated for abandonment in place at the Macondo Well site. These materials are not currently in BP's possession; BP has not been authorized to retrieve them; and, unless present decisions are later revisited and revised, they will never come into BP's possession in the future. They accordingly form no part of this Motion.

5

## ARGUMENT

As with the Court's October 15 order concerning cement samples, BP respectfully requests that the Court confirm that BP's delivery of the 28 Category No. 1 items to the NASA Michoud facility pursuant to the MBI Subpoena and the Pipe Subpoena, and that BP's delivery of seven (7) additional items to the MBI's Joint Investigation Team that have been subpoenaed or otherwise requested by the government, relieves BP of any further obligation under the preservation-of-evidence obligation of Pretrial Order No. 1 as respects these pieces of equipment. (*See* Pabon Decl., Exhibits F, F-6.) In addition, BP also respectfully requests that the Court further confirm that BP may reuse or otherwise dispose of the 67 items falling into Category No. 2 in accordance with the procedures described below. (*See* Pabon Decl., Exhibit G (identifying all Category No. 2A, 2B, and 2C items)) All of these Category No. 2 items lack a connection or association with the issues involved in this litigation and hence properly fall outside BP's obligations to preserve tangible things that possess evidentiary value.

**I.     THE COURT SHOULD CONFIRM THAT BP'S ONGOING MBI SUBPOENA AND PIPE SUBPOENA COMPLIANCE IS NOT INCONSISTENT WITH THE COURT'S PTO #1 PRESERVATION REQUIREMENTS.**

The MBI Subpoena broadly requires BP to provide the Joint Investigation Team with "[a]ll equipment removed from or associated with the MODU DEEPWATER HORIZON, whenever retrieved or recovered and brought to the surface." (Attachment A.) The subpoena further directs BP to deliver all such materials to the U.S. Coast Guard Base Support Unit New Orleans, which is located at NASA's Michoud facility. (*Id.*) As set forth above, the Joint Investigation Team has, upon diligent inquiry, clarified that only the "Category No. 1" materials from the ocean floor are sufficiently "associated" with the Deepwater Horizon incident as to be

6

responsive. The Joint Investigation Team had the authority to issue the MBI Subpoena for these materials.

*First*, the MBI Subpoena was issued pursuant to the authority granted to the Joint Investigation Team by Section 1348 of the Outer Continental Shelf Land Act ("OCSLA"), 43 U.S.C. § 1348. Section 1348(d)(2) requires the BOEMRE and the USCG to investigate and to produce a public report on each major fire, each major oil spillage, and any death or serious injury occurring as a result of operations conducted pursuant to OCSLA. 43 U.S.C. § 1348(d)(1)-(2). Additionally, the OCSLA gives the BOEMRE and the USCG the power to issue subpoenas that summon witnesses and require production of evidence while conducting its investigation. 43 U.S.C. § 1348(f).

*Second*, the MBI Subpoena was also issued pursuant to 46 U.S.C. § 6301, *et seq.*, which grants the USCG authority to investigate a "marine casualty or accident." *See* 46 U.S.C. § 6301, *et seq.* This statute mandates the investigation of "marine casualties" to determine, as closely as possible, the cause of the casualty and whether new laws or regulations would prevent reoccurrence of the casualty. *See* 46 U.S.C. § 6301 (1)–(6). In investigating marine casualties, 46 U.S.C. § 6304 grants the USCG authority to issue subpoenas that command the attendance and testimony of witnesses, including parties-in-interest, and the production of evidence. 46 U.S.C. § 6304(a). The subpoena authority granted by § 6304 is coextensive with the civil jurisdiction of the district courts of the United States located in the district where the investigation is conducted. (*Id.*)

In contrast to the Joint Investigation Team's clear entitlement to these materials, they are beyond the scope of discovery in this matter. BP's retention obligations under Pretrial Order No. 1 and the Federal Rules of Civil Procedure are limited to materials in the "possession,

7

custody, [and/or] control," of BP. (*See* Pretrial Order No. 1, at ¶ 14; Fed. R. Civ. P. 34.) Federal law, however, makes clear that materials on or around the MC-252 site do not meet this criteria because those materials are under the exclusive control of the federal government. *See* 43 U.S.C. § 1333(a)(1) (extending laws of the United States to the outer Continental Shelf); *see also Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352, 355 (1969) (OCSLA "makes it clear that federal law, supplemented by state law of the adjacent State, is to be applied to these artificial islands as though they were federal enclaves in an upland State."). Any authorized recovery of materials in or around the MC-252 site therefore has been and will continue to be under the direction of the Joint Investigation Team. *See id.* Accordingly, when BP is authorized to retrieve items solely for the purpose of producing them to government agents pursuant to subpoena, those items are at no point in the "possession, custody, and control" of BP.

With this background in mind, it is clear that subpoena compliance is the only lawful option for BP, as well as a practical and workable option for preserving and ultimately making use of the evidentiary value of the retrieved items. BP therefore respectfully seeks confirmation that the 28 items or groups of items of equipment listed in Exhibit F to the Pabon Declaration do not implicate preservation-of-evidence obligations under this Court's orders.

In addition to these 28 items or groups of items of equipment, an additional seven (7) items or groups of items of equipment used to support the Macondo Well incident response also have been, or will soon be, retrieved and have been subpoenaed or otherwise requested by the government. As to these seven (7) items, turning them to MBI's Joint Investigation Team is an appropriate way for BP to comply with its preservation-of-evidence obligations of Paragraph 14 of Pretrial Order No. 1. Once turned over, these items also will be secured and preserved by the government precisely because of their evidentiary value and will be treated accordingly. BP

8

therefore respectfully seeks confirmation that, by turning these seven (7) items or groups of items of equipment listed in Exhibit F-6 to the Pabon Declaration over to the government, BP will have compiled fully with its preservation-of-evidence obligations under this Court's orders.

## II. THE COURT SHOULD CONFIRM THAT BP'S PLAN FOR ADDRESSING CERTAIN IDENTIFIED ITEMS OF PHYSICAL EVIDENCE WITHOUT EVIDENTIARY VALUE IS NOT INCONSISTENT WITH THE COURT'S PTO #1 PRESERVATION REQUIREMENTS.

The MBI designated 67 items of equipment that have been or soon will be retrieved from the seabed as "Category No. 2." Materials and equipment items were given a Category No. 2 designation only where they lack evidentiary value. BP cannot fairly be said to be under an obligation to preserve materials and items of equipment that lack value as evidence. *See, generally, In re Bridgestone/Firestone, Inc.,* No. 00-CV-9379, 2001 WL 219858, at **2-3 (S.D. Ind. Mar. 6, 2001) (defendant tire manufacturer under no obligation to warehouse all recalled tires regardless of evidentiary value).

Nonetheless, out of an abundance of caution BP will photograph each and every Category No. 2 item notwithstanding its lack of evidentiary value. In addition, to ensure the appropriate handling of each individual item, BP has further subdivided these equipment items into Category Nos. 2A, 2B, and 2C described below, together with BP's proposal for handling and disposing equipment in those particular subcategories.

In this regard, BP seeks immediate confirmation that three (3) of the 67 Category No. 2 items, the "Category No. 2A" materials, fall outside Paragraph 14 and are available for immediate reuse because they lack evidentiary value and their continued preservation would be unduly burdensome. (*See* Pabon Decl., Exhibit G). Likewise, BP seeks immediate confirmation that 44 of the 67 Category No. 2 items, the "Category No. 2B" materials, fall outside Paragraph 14 and are available for immediate reuse because they are urgently needed for a newly formed

9

consortium of oil producers to be available to respond to future Macondo-type incidents in the Gulf of Mexico. (*See* Pabon Decl., Exhibit G.)

Finally, as to the remaining 20 Category No. 2 items, the "Category No. 2C" materials, BP plans upon retrieval to make these 20 later-recovered items available at a secure location for a period of five business days for inspection by interested parties while BP arranges for litigation photographs to be taken (*See* Pabon Decl., Exhibit I.). BP requests, respectfully, that if no objection to the release and reuse of a Category 2C item is made to BP before the close of the five-day period, then the item be considered as confirmed and consented-to by all sides as falling outside the scope of BP's Paragraph 14 preservation-of-evidence obligations. If, for whatever reason, a party requests a further hold during the five-day period, then BP and the party will work to resolve the issue, with the assistance as necessary of the Court.

### A. DISPOSITION OF CATEGORY NO. 2A MATERIALS

Attached to the Pabon Declaration as Exhibit G is a list of all Category No. 2 materials, including the three (3) Category No. 2A materials. As described in the Pabon Declaration each of these items is large and bulky, Pabon Decl at ¶¶ 29-30, and each lacks any conceivable evidentiary value. For those reasons, their continued preservation is both unnecessary and would be unduly burdensome.

*First*, the stack manifold is a 52-foot-long piece of equipment weighing in at 180,000 lbs. Pabon Decl., at ¶ 29. This equipment is designed to serve as a piping "hub." *Id*. It could have provided a direct flow path from the BOP Stack main bore to other equipment and piping on the sea bottom. *Id*. But in fact the equipment was never connected to the BOP stack during well control operations; hydrocarbons never flowed through it; and it was not used for its intended purpose. *Id*. This item is therefore excess equipment of no evidentiary value. Moreover, this

10

item is needed for use on the BP project that loaned this item to support the Macondo Well incident response.

***Second and third,*** BP is also in the process of retrieving two long strings of non-evidentiary casing from the Macondo Well. This casing to be retrieved is comprised of long strings of 9-7/8" 62.8 ppf Q-125, Hydril 523 Casing and long strings of 16" 97 ppf P-110, Hydril 511 Casing. At issue here are the two portions of casing that will remain in BP's possession after the delivery to the government of several other specific portions of casing the government has demanded via its "Pipe Subpoena."

BP responded to the Pipe Subpoena by working with the government to identify those portions of the bulky, thousand-plus-foot-long Macondo Well casing having evidentiary value. BP has thus committed to transferring hundreds of feet of casing into government custody for evaluation as evidence pursuant to the Pipe Subpoena. This commitment was memorialized in a confirmatory letter from BP's counsel to the Joint Investigation Team dated October 20, 2010. *See* Letter from R. Gasaway to K. Laden and LCDR Bray (Oct. 20, 2010), (Attachment D). Subject to the Court's approval, then, the evidentiary portions of casing will be conveyed to the Joint Investigation Team.

Nonetheless, the remaining two casing strings, taken together, still constitute thousands of linear feet of bulky casing that lacks evidentiary value. Pabon Decl. at ¶ 30. By this Motion, BP seeks confirmation that these portions of casing do not properly fall within BP's preservation-of-evidence obligations.

### B. DISPOSITION OF CATEGORY NO. 2B MATERIALS

Attached to the Pabon Declaration as Exhibit G is a list a list of all Category No. 2 materials, including the 44 Category 2B materials. Also attached to the Pabon Declaration as

11

Exhibit D is a seabed map indicating where these materials were located on the seabed prior to their retrieval to the surface, and as Exhibit E is a compilation of photos and additional information concerning some of the Category No. 2 materials. (*See* Pabon Decl., Exhibits D, E & G.) As described in the Pabon Declaration, these materials clearly lack evidentiary value, but nonetheless possess great potential value to promote public safety and economic expansion as the Gulf region seeks to go "back to work" in the wake of the recently ended offshore drilling moratorium. They therefore have been prioritized for retrieval and early disposition. In particular, BP intends to offer each of these Category No. 2B materials to the Marine Well Containment Company ("MWCC") in order to help put the Gulf region back to work in a safe and environmentally sound manner.

The MWCC is a consortium of energy companies formed to provide rapid-response capability in the event of future inadvertent releases of hydrocarbons in the Gulf region. *See* Pabon Decl., at ¶ 25. BP intends to join the proposed MWCC. *Id*. Moreover, BP currently intends to provide the MWCC with much of its early operational capability by making available to MWCC, and thus to all oil and gas companies operating in the Gulf of Mexico, certain underwater well containment equipment that is now or recently has been located near the Macondo Well. In this fashion, all oil and gas companies operating in the Gulf, both BP and BP competitors, would be able to use this equipment in responding to any future spills. Until the MWCC procures or otherwise obtains other well containment equipment, the Category No. 2B equipment that BP intends to provide the MWCC will be the primary, if not the only, equipment that the MWCC will have available to respond to future Macondo-type incidents. Because of long lead times required for manufacturing, it would not be feasible for MWCC to otherwise purchase similar equipment items in the near term.

The reasons why the items falling within Category No. 2B lack evidentiary value varies from item to item. Generally speaking, however, these items were not critical for well control, and/or were sent to the Macondo Well site to provide backup capacity or operational redundancy, and/or constitute standard tools or pieces of equipment. *See id*. Mr. Pabon's description of these equipment items makes clear that, while none of the 44 items has evidentiary value warranting its preservation, each is urgently needed for the stand-by spill-control capability that is crucial for putting the Gulf region back to work.

C. **DISPOSITION OF CATEGORY NO. 2C MATERIALS**

Attached to the Pabon Declaration as Exhibit I is a list of 20 proposed Category No. 2C materials. Exhibit I to the Pabon Declaration lists: (1) the item; (2) a brief description of what it is and/or does; (3) a brief description of size; and (4) when it is scheduled to be retrieved. This list is also cross-referenced to a map of the seabed. (*See* Pabon Decl., Exhibits D, I.) Current operational planning calls for these Category No. 2C materials to be retrieved after the Category No. 2B materials. While many or most of these equipment items may also end up being provided to the MWCC, this category of equipment is generally seen as less critical than the Category No. 2B equipment; hence, it has been slated for later retrieval from the seabed. *See* Pabon Decl. at ¶¶ 27. (To be clear, however, which pieces of retrieved equipment will ultimately be provided by BP and put to use by the MWCC is a decision that ultimately rests with MWCC and has yet to be made. *See* Pabon Decl. at ¶ 26-27.)

Subject to this Court's approval, as these Category No. 2C items are retrieved from the seabed in the future, BP plans to store them at a secure site for no fewer than five business days while they are photographed by a litigation photography vendor. During this time, the items will be made available for inspection by the other parties to this litigation. Further, BP will offer to

13

hold an operational conference with the parties to the litigation so that, if they so desire, they may further explore and understand what each item is and why it has no evidentiary value. In this manner, parties can both see for themselves and ask questions about the items.

As noted above, BP suggests, respectfully, that if no objection to the release and reuse of an item is received by BP before the close of the five-business-day period, then the item would be considered as confirmed and consented-to by all sides as falling outside the scope of BP's preservation-of-evidence obligations.

## CONCLUSION

BP respectfully requests that the Court grant this Confirmation Motion and enter the proposed Order submitted herewith.

Respectfully submitted,

By: /s/ Don K. Haycraft
Don K. Haycraft (Bar #14361)
(dkhaycraft@liskow.com)
R. Keith Jarrett (Bar #16984)
(rkeithjarrett@liskow.com)
LISKOW & LEWIS
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana  70139-5099
Telephone:  (504) 581-7979
Facsimile:  (504) 556-4108

Richard C. Godfrey, P.C.
(richard.godfrey@kirkland.com)
J. Andrew Langan, P.C.
(andrew.langan@kirkland.com)
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, Illinois  60654
Telephone: (312) 862-2000

-- and –

>Robert R. Gasaway
>(robert.gasaway@kirkland.com)
>Joseph A. Eisert
>(joseph.eisert@kirkland.com)
>KIRKLAND & ELLIS LLP
>655 Fifteenth Street, N.W., Suite 1200
>Washington, D.C. 20005
>Telephone:  (202) 879-5000
>
>***Attorneys for BP America Inc., BP America Production Company, and BP Exploration & Production Inc.***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 12, 2010, a copy of the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all counsel of record registered to receive electronic service by operation of the court's electronic filing system.  I also certify that I have mailed this filing by United States Postal Service to all counsel of record who are not registered to receive electronic service by operation of the court's electronic filing system.

>/s/ Don K. Haycraft
>Don K. Haycraft

15