UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | * * * * * | MDL NO. 2179 NO: 2-10-cv-3891 SECTION "J" |
| THIS DOCUMENT RELATES TO CIVIL ACTION NO. 10-3891 | * * * | JUDGE BARBIER MAG. JUDGE SHUSAN |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM IN SUPPORT OF MOTION TO REMAND

**NOW INTO COURT**, through undersigned counsel comes Lionel Serigne and Joan Serigne, (hereinafter referred to as "plaintiffs"), and file their Memorandum in Support of their Motion to Remand this matter back to the state court from which it was removed by Defendants, BP Exploration and Production, Inc., BP America, Inc., and BP Products North America, Inc matter on October 20, 2010.

### I. INTRODUCTION

#### A. Relevant Factual Background

Plaintiffs filed a lawsuit in the 34th Judicial District Court for the Parish of St. Bernard, State of Louisiana against Loupe Construction and Consulting Company, Inc. (hereinafter referred to as "Loupe"), BP Exploration and Production, Inc., BP America, Inc. and BP Products North America, Inc. (hereinafter referred to as "BP", Case No. 116434, Division "D" on September 3, 2010.

Plaintiffs' petition alleges that they are the owners of Serigne's Boat Launch in Delacroix, that they own approximately 4 to 5 acres of ground, that they provide parking

facilities for commercial and sport fishers, that they have 140 feet of dock on Bayou Terre Aux Boeufs, and two boat ramps. Exhibit #1, Petition, ¶ 2.

Plaintiffs' petition alleges that they were approached by Harland Ross who said he was a representative of BP and that they were interested in leasing their land and using it as the staging area for BP to place boom and work the oil spill. Plaintiffs allege that Loupe, BP1, BP2 and BP3 were being represented by Harland Ross as an agent and employee and under the direction and control of said defendants. Petition, ¶¶ 3-4.

Plaintiff, Lionel Serigne, executed an Affidavit, Exhibit #2 with more specific facts on this issue as he alleges that he was approached by Paul Loupe for use and lease of the facilities as a staging area for the placement of boom for the BP oil clean up. Affidavit ¶ 2. That Paul Loupe stated that he wanted to negotiate the lease but that BP wanted to handle the negotiation. That Paul Loupe and Harland Ross walked the property and inspected the facility and had a meeting with several men on the property on whether to lease. Affidavit ¶4. Specifically, that Paul Loupe said he wanted the property and specifically said, "What are we going to do". Affidavit at ¶¶ 4,5. That Harland Ross said "We want the lease." That Harland Ross and Paul Loupe discussed the terms of the lease, and, after discussion, Harland Ross appearing to represent the group began negotiating with plaintiff, Lionel Serigne, for the lease of the facility. After negotiating, Lionel Serigne agreed to lease this facility for $3000.00 per day. Affidavit at ¶ 7. That Harland Ross said that he didn't have the authority for $3000.00 per day and he had to make a phone call. Harland Ross returned to the group which included Paul Loupe; they had a discussion. Harland Ross made the phone call and returned and said "We have a deal at $3000.00 per day", and gave a hand shake. Affidavit ¶ 7,8.

Plaintiff, Lionel Serigne, was under the impression that Paul Loupe was a decision maker

and in charge of leasing Serigne's boat launch but had to have BP's approval to go forward. Affidavit at ¶¶ 9,10. Further, that affiant, Lionel Serigne, was under the impression that Paul Loupe was either leasing the property for himself, for his company, or as a co-contractor or co-lessee with BP for the use of the property. Affidavit ¶10.

Plaintiffs' petition ¶ 6 alleges that Harland Ross promised there would be a written contract terms in the mail immediately. Plaintiff, Lionel Serigne, wishing to cooperate with cleanup of BP's oil spill consented to the immediate occupation of his land by representatives Loupe, BP. Petition, ¶6. Plaintiffs' petition states that representatives of defendants, Loupe and BP advised that the contract called for Lionel Serigne to provide diesel and gasoline fuel to boats operated by Loupe, BP. Petition ¶8. Defendants Loupe and BP advised that they were having difficulty in dropping a meter and electric line to service the staging area. Petition ¶ 9. Plaintiffs had the meter installed under their name and have been billed approximately $1,000 per month since the installation of the meter and have incurred energy bills as pled of approximately $4,000.00. Petition at ¶9, Affidavit ¶ 15

Plaintiff confirmed the oral lease with a handshake with Harland Ross in front of Paul Loupe. Petition ¶11 All defendants referred to the lease, to the terms of the lease, and what was expected of plaintiffs in fulfillment of the terms of the lease. Petition ¶¶ 13,14, Affidavit ¶13.

Paul Loupe and several employees of Loupe maintained a physical presence on the property after the lease was agreed to and that Paul Loupe appeared and acted as if he was the big boss from day one. Affidavit ¶12. That it was only subsequent to the facility being fenced in and occupied by representatives of Loupe, that plaintiff first understood that Paul Loupe was representing Loupe and that Harland Ross was employed and representing the defendant, BP. Affidavitt ¶ 12. Further, that the defendants, Loupe and BP, would refer to the terms in the lease

that needed to be complied met. Affidavit ¶13. Paul Loupe and his employees wanted to remove and replace the wharf and docking area. Affidavit ¶14. Plaintiff, Lionel Serigne, was faced with an oral lease that had terms and conditions in an alleged written lease that he had to comply with, and it was assumed by him that he was dealing with Loupe and BP in the lease of his property. Paul Loupe required plaintiff to provide fuel for the boats taking part in the cleanup process and that these fuel bills were paid by Loupe Construction and Consulting, Original Petition ¶12, Affidavit ¶¶ 14, 15, 16, and Exhibit 3, First Supplemental and Amended Petition Amending ¶ 12.

Plaintiff, Lionel Serigne, feels that defendants, Loupe and BP were playing a shell game, neither disclosing their full relationship and responsibilities concerning the oral lease nor the requirements under the lease nor any confirmation in writing of the agreed rent for the facility. The defendants without producing the alleged written lease hid from plaintiffs the nature of their relationship to each other, in particularly to the plaintiffs. Affidavit at ¶ 17.

### B. Alleged Grounds For Removal

Defendant, BP, removed this action from the 34th Judicial District Court for the Parish of St. Bernard, State of Louisiana on the following bases:

1. **Complete diversity pursuant to 28 U.S.C. § 1332:** This statute provides that, where complete diversity exists between the parties, and the amount in controversy exceeds $75,000.00, the case is removable to federal court. Of course, the presence of Loupe, who is a major player and used and negotiated for the lease of plaintiffs' facilities, is a Louisiana domestic corporation and the presence of Loupe, Inc. defeats diversity jurisdiction, as both Loupe and plaintiffs are domiciled and citizens of the State of Louisiana.

4

## II. LAW AND ARGUMENT

### A. Principals Of Federal Jurisdiction

"Federal Courts have limited subject jurisdiction and cannot entertain cases unless authorized by the Constitution and legislation." Berry v. Allstate Insurance Co., C.A. No. 06-4922, 2006 WL 2710588 (E.D. La. Sept. 19, 2006) *citing* Coury v. Prot, 85 F.3d 244, 248 (5th Cir. 1996). Accordingly, there is a presumption against subject matter jurisdiction in a federal court, Id. A removing party bears the heavy burden of pleading and proving that removal is proper, which includes pleading and proving proper subject matter jurisdiction. Carpenter v. Wichita Falls Indep. Sch. Dist., 44 F.3d 365 (5th Cir. 1995) (noting burden on defendant to establish right to removal); Saxton v. Capital One Bank, 392 F. Supp. 2d 772, 777 (S.D. Miss. 2005) (Characterizing burden as "heavy"). The United States Court of Appeals for the Fifth Circuit has explained that this burden of pleading and production lies with the removing party, as follows:

> [T]he burden of establishing jurisdiction rests upon the party seeking to invoke it and cannot be placed upon the adversary who challenges it…[The removing party] must allege in his pleading the facts essential to show jurisdiction. If he fails to make the necessary allegations he has not standing…As he is seeking relief subject to this supervision, it follows that he must carry throughout the litigation the burden of showing that he is properly in court. The authority which the statute vests in the court to enforce the limitations of its jurisdiction precludes the idea that jurisdiction may be maintained by mere averment or that the party asserting jurisdiction may be relieved of his burden by any formal procedure. If his allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof.

Gaitor v. Peninsular & Occidental S.S., 287 F.2d 252, 253-54 (5th Cir. 1961) (quotations and citations omitted).

The Fifth Circuit has also stated that the statutory right to removal must be strictly

construed: "[B]ecause the effect of removal is to deprive the state court of an action properly before it; removal raises significant federalism concerns, which mandate strict construction of the removal statute." Carpenter, 44 F.3d 365-66; *see also* Jones v. Nastech Pharm, 319 F. Supp. 2d 720, 723 (S.D. Miss. 2004) (citations omitted). Therefore, "doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction." Acuna v. Brown & Root, Inc., 200 F.3d 335, 339 (5th Cir. 2000); *see also* Spillers v. Tillman, 959 F. Supp 364, 368 (S.D. Miss. 1997).

### B. Diversity Jurisdiction Is Lacking As Plaintiffs Have A Valid Claim Against Defendant Loupe

#### 1. *Standard of Improper Fraudulent Joinder*

Complete diversity is lacking in this matter as both plaintiffs and Loupe are respectively Louisiana citizens and have corporate domicile in Louisiana. Defendants have alleged that plaintiffs have improperly or fraudulently joined Loupe in an attempt to defeat the diversity of jurisdiction in this court.

The test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by plaintiffs against an in-state defendant. Stated differently, this legal principle means that there must be no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant. *See* Smallwood v. Ill. Cent. R.R., 385 F.3d 568, 573 (5th Cir. 2004); Richmond v. Chubb Group of Ins. Co., 06-3973 (E.D. La. 9/20/2006), 2006 WL2710566. In deciding a claim of improper joinder, the court must consider all unchallenged factual allegations in a light most favorable to the plaintiff. *See e.g.*, Travis v. Irby, 326 F.3d 644 (5th Cir. 2003); Burden v. Gen. Dynamics Corp., 60 F.3d 213 (5th Cir. 1995);

6

Richmond, 2006 WL 2710566.

The court must also resolve all ambiguities in the controlling state law in plaintiffs' favor. Burden, 60 F.3d 213. The court does not decide whether the plaintiff will actually or even probably prevail on the merits, but look only for a possibility that he may do so. *See* Green v. Amerada Hess Corp., 707 F.2d 201 (5th Cir. 19830. If that possibility exists, then "'a good faith assertion of such and expectancy in a state court is a sham…and is not fraudulent in fact or in law.'" B., Inc. v. Miller Brewing Co., 663 F.2d 545, 550 (5th Cir. 1981) (quoting Bobby Jones Garden Appartments v. Suleski, 391 F.2d 172, 177 (5th Cir. 1968). Thus, the United States Court of Appeals for the Fifth Circuit has consistently held that the burden of persuasion for improper joinder is indeed a **heavy one**. *See* Ross v. Citifinancial Inc., 344 F.3d 458 (5th Cir. 2003); B. Inc. v. Miller Brewing Co., 663 F.2d 545 (5th Cir. 1981).

### 2. *BP Defendants Have Failed To Demonstrate That Plaintiffs' Claims Are Invalid As To Loupe Or That Plaintiffs' Joinder Of Loupe Was Fraudelent*

BP defendants are unable to prove under the terms of the oral lease that Loupe was not a co-lessee nor co-obligor. Loupe paid and/or reimbursed plaintiffs for the fuel that was used at the staging area, and, more particularly, that Paul Loupe took an integral part in selecting the property, approving property, negotiating the lease and directing activities on the leased property during the term of the lease. Petition ¶8, Affidavit ¶¶2-6, 8-11, 13, 16. It appears from defendants' Removal that they wish to refer to the oral lease to limit the involvement of Loupe to a simple contractor to BP. In defendants' Memorandum, it produced an Affidavit by Alvin Paul Loupe of Loupe Construction and Consulting Company, Inc. that denies his involvement in negotiating the lease or any references to the lease but does admit that he reimbursed the plaintiffs for fuel and oil that was used as a part of the lease agreement. Defendants do not produce any separate contracts or agreements between Loupe and plaintiff concerning the oil and

7

fuel invoices. Plaintiffs knowledge is that Paul Loupe was physically involved with all aspects of the lease of his property and that Loupe reimbursed plaintiffs for some of the fuel and oil..

The shell game played between defendants BP and Loupe by never having a written lease, but demanding that plaintiffs abide by their alleged written lease puts plaintiff in the detrimental position of relying on these major corporate entities to be fair. The plaintiffs have pled in their original petition and supplemental petitions that defendants, BP and Loupe, were in violation of the Louisiana Unfair Trade Practice and Consumer Protection Law that they were conducting themselves in the same manner with other staging areas such as that operated out of Hopedale's Breton Sound Marina by Amigo Enterprises, Inc. and by the Campos as Shell Beach. Petition ¶¶17-20, Supplemental Petition ¶15,19.

What is significant is what the defendant BP has not attached and made an exhibit in their Motion to Remove, the alleged written contract that has the conditions and agreements of all of the parties. This is evidence of the way BP conducts it's business, BP requires plaintiffs to live up to the conditions of an alleged written contract, and then use the lack of the written contract to allow them to make the allegations that plaintiffs committed a fraudulent joinder by putting Loupe as a defendant. Plaintiffs only recourse to this removal is to submit his own affidavit with a reminder to the court that Loupe does admit to paying the fuel bill that plaintiffs assumed to be a part of the lease.

Plaintiff has outstanding discovery, Exhibit 4, to Loupe to produce all contracts between Loupe and BP concerning the lease of plaintiff's property, all contracts between Loupe and BP concerning the fuel sold by plaintiffs, and any proposed, unwritten contracts between plaintiffs, BP and Loupe.

**In summary,** for BP to be successful in opposing this motion to remand, BP must prove that Loupe had nothing to do with selecting plaintiff's property as a staging area, nothing to do with the request to remove 15 campers, nothing to do with fencing off the staging area, that Loupe didn't take possession of the staging area, nothing to do with the providing and paying plaintiff for the fuel for the oil recovery vessels, and nothing to do with directing the activities at the staging area. Plaintiffs' petition and affidavit rebuts the allegations of the BP that Loupe was not an integral part of the lease of plaintiffs' property. Paul Loupe's affidavit admits to Loupe paying plaintiffs for the fuel, why would plaintiff extend credit to Loupe if Loupe wasn't part of the lease. BP took advantage of plaintiffs wanting to help, plaintiffs acted in haste in allowing possession of their property without a written lease and it is precisely the fact that the lease was not written inures to BP's benefit and to plaintiffs detriment. The shell game continues.

/s/WAYNE M. LeBLANC
WAYNE M. LeBLANC
A PROFESSIONAL LAW CORPORATION
Attorney for Lionel Serigne and Joan Serigne
Bar Roll Number 08210
LeBlanc8210@aol.com
3016 19th Street, Suite A
P. O. Box 8573
Metairie, LA   70011
Phone: (504)834-3772
Fax: (504)834-3791

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served upon all counsel of record through electronic service by the Eastern District of Louisiana Electornic Filing System on the 17th day of November, 2010.

Metairie, Louisiana.

/s/Wayne M. LeBlanc
WAYNE M. LeBLANC

9