UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA
************************************************************************
UNITED STATES OF AMERICA
                                                    Plaintiff


VERSUS


TRANSOCEAN HOLDINGS, LLC, TRANSOCEAN OFFSHORE
DEEPWATER DRILLING, INC., TRANSOCEAN DEEPWATER, INC.
and TRITON ASSET LEASING GmbH
                                                    Respondents


MISCELLANEOUS DOCKET NO.: 10-CV-04397


JUDGE: BARBIER          MAGISTRATE: CHASEZ
************************************************************************
**MEMORANDUM IN OPPOSITION TO PETITION AND FIRST AMENDED PETITION
FOR SUMMARY ENFORCEMENT OF ADMINISTRATIVE SUBPOENA**
************************************************************************

                          Respectfully Submitted,
                          PREIS & ROY
                          (A Professional Law Corporation)
                            EDWIN G. PREIS, JR. (#10703)
                            RICHARD J. HYMEL (#20230)
                            102 Versailles Blvd., Ste. 400
                            Post Office Drawer 94-C
                            Lafayette, LA 70509
                            Tel: (337) 237-6062
                            Fax: (337) 237-9129
                          COUNSEL FOR TRANSOCEAN HOLDINGS,
                          LLC, TRANSOCEAN OFFSHORE DEEPWATER
                          DRILLING, INC., TRANSOCEAN DEEPWATER,
                          INC. and TRITON ASSET LEASING GmbH

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

I.    BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.    The DEEPWATER HORIZON . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      B.    The ISM Code . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      C.    The Joint Investigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      D.    ISM Document Requests . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

II.   LAW AND ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      A.    Standards for Enforcement of Administrative Subpoena . . . . . . . . . . . . . . . . 10

      B.    The Subpoena Requests Were Not Issued for a Proper Statutory Purpose . . . . . 11

      C.    The Board Has Failed to Meet Its Burden of Proving Relevance . . . . . . . . . . . 12

      D.    The Requested Documents Are Not Relevant
            to the Authorized Joint Investigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

            1.    All documents relating to the last ISM audit report for all
                  Transocean vessels that operated in the Gulf of Mexico at
                  the time of the casualty . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

            2.    The external audit(s) of the Safety Management System
                  (ISM was implemented 12 years ago; including, but not
                  limited to, an initial audit in 1998, two 5-year recertification
                  audits in 2003 and 2008, and four interim audits in 2001,
                  2004, 2007 and 2010[sic] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

III.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

      <u>EXHIBITS</u>

      Exhibit A      --      Joint Department of the Interior and Department of Homeland
                             Security Statement of Principles and Convening Order Regarding
                             Investigating into the Marine Casualty, Explosion, Fire, Pollution,

and Sinking of Mobile Offshore Drilling Unit DEEPWATER HORIZON, with Loss of Life in the Gulf of Mexico 21-22 April 2010.

Exhibit B     --     Documents related to Joint Board of Investigation's August 4, 2010 Subpoena, including:

 B.1. August 4, 2010 Subpoena to Produce Documents, Information, or Objects;

 B.2. Transocean's August 18, 2010 written response and objections;

 B.3. Index of documents produced; and

 B.4. Select ISM-related documents (Bates Nos. TRN-USCG_MMS-00039045 -- 046 and TRN-USCG_MMS-00039147 – 149) produced with response (*in globo*).

Exhibit C     --     Documents relating to Joint Board of Investigation's September 2, 2010 Subpoena, including:

 C.1. September 2, 2010 Subpoena to Produce Documents, Information, or Objects issued to "Transocean"; and

 C.2. Transocean's September 15, 2010 written response and objections (*in globo*).

Exhibit D     --     Select excerpts from the October 5, 2010 Joint Investigation hearing transcript.

Exhibit E     --     Documents related to October 6, 2010 correspondence from the undersigned to Joint Investigation legal advisor, LCDR Jeff R. Bray, including:

 E.1. October 6, 2010 letter; and

 E.2. Document of Compliance issued to Transocean Offshore Deepwater Drilling, Inc. on April 25, 2008 under the authority of the Government of the Republic of the Marshall Islands.

Exhibit F   --   Documents related to the production of the DEEPWATER HORIZON'S current Safety Management Certificate, including:

     F.1.    Transocean's May 24, 2010 written response to the Board's May 17, 2010 subpoena;

     F.2.    Index of documents produced; and

     F.3.    DEEPWATER HORIZON's Safety Management Certificate  in force at the time of the casualty (Bates No. TRN-USCG_MMS-00027980) (*in globo*).

Exhibit G   --   Documents relating to Joint Board of Investigation's October 21, 2010 Subpoena, including:

     G.1.    October 21, 2010 Subpoena to Produce Documents, Information, or Objects issued to "Transocean"; and

     G.2.    Transocean's November 4, 2010 written response and objections (*in globo*).

Exhibit H   --   U.S. Coast Guard Port State Information Exchange Record for MODU DEEPWATER HORIZON.

Exhibit I   --   International Safety Management (ISM) Code (available at **http://www.imo.org/OurWork/HumanElement/SafetyManagement/Pages/ISMCode.aspx** (2010 Ed.)

## TABLE OF AUTHORITIES

### CASES

*Sandsend Financial Consultants, Ltd. v. Fed. Home Loan Bank Bd.,*
878 F.2d 875, 882 (5th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Powell,* 379 U.S. 48, 57-58 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12

*United States v. Richards,* 631 F.2d 341, 345 (4th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Security State Bank and Trust,*
473 F.2d 638, 642 (5th Cir. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*United States v. Wyatt,* 637 F.2d 293, 302 (5th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . 11

### STATUTES

30 C.F.R. §§250.186-191 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

33 C.F.R. §96.380(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

33 C.F.R. §140, Subpart C . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

33 C.F.R. §140.101(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

33 C.F.R. §143.210 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

46 C.F.R. Part 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

46 U.S.C. Chapter 32 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

14 U.S.C. §141 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

43 U.S.C. §1348 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

46 U.S.C. §3203 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

46 U.S.C. §6301 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 11

46 U.S.C. 6301(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Code, Sec. 405(a), Pub. L. 108-293, 118 Stat. 1043
(Aug. 9, 2004) (46 U.S.C. Ch. 32) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Code, Title V, Pub. L. 104-324, 110 Stat. 3928
(Oct. 19, 1996) (46 U.S.C. Ch. 32) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**OTHER**

ISM Code, Part B - "Certification and Verification" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ISM Code Preamble §1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ISM Code §1.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ISM Code §11.2.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

ISM Code §13 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ISM Code §13.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

ISM Code §13.7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

SOLAS, Chapter I, Reg. 17 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 13

SOLAS, Chapter I, Reg. 19 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 13, 15

SOLAS, Chapter IX, Reg. 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

U.S. Coast Guard Marine Safety Manual, Vol. II, Sec. D, chap. 4, Sec. B.2 . . . . . . . . . . . . . 14

U.S. Coast Guard Navigation and Inspection Circular
(NVIC) No. 3-88, as amended by Change 1 (Jan. 28, 2000) . . . . . . . . . . . . . . . . . . . . . . . 3

U.S. Coast Guard Navigation and Inspection Circular
(NVIC) 04-05, (Aug. 1, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | MISCELLANEOUS |
| | * | DOCKET NO.: 10-CV-04397 |
| Plaintiff, | * | |
| | * | |
| VERSUS | * | JUDGE: BARBIER |
| | * | |
| TRANSOCEAN HOLDINGS, LLC, | * | |
| TRANSOCEAN OFFSHORE DEEPWATER | * | MAGISTRATE: CHASEZ |
| DRILLING, INC., TRANSOCEAN | * | |
| DEEPWATER, INC. and TRITON ASSET | * | Action for Summary Enforcement |
| LEASING GmbH | * | of Administrative Subpoena |
| | * | |
| Respondents. | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## MEMORANDUM IN OPPOSITION TO PETITION AND FIRST AMENDED PETITION FOR SUMMARY ENFORCEMENT OF ADMINISTRATIVE SUBPOENA

MAY IT PLEASE THE COURT:

This matter is now before the Court on a Petition and First Amended Petition for

Summary Enforcement of an Administrative Subpoena issued by the Joint Board of Investigation

of the United States Coast Guard and the Bureau of Ocean Energy Management, Regulation and

Enforcement (hereinafter referred to as "the Board") to "Transocean." The subpoena was

allegedly issued pursuant to the Board's "joint investigation of the April 21-22, 2010 explosion

and sinking of the mobile offshore drilling unit DEEPWATER HORIZON."[1]  Petitioner(s) seek

enforcement of the subpoena as to the production of:

---

[1] See Exhibit A -- "Joint Department of the Interior and Department of Homeland Security Statement of Principles
and Convening Order Regarding Investigating into the Marine Casualty, Explosion, Fire, Pollution, and Sinking of

- All documents relating to the last ISM audit report for all Transocean vessels that operated in the Gulf of Mexico at the time of the casualty. [and]

- The external audit(s) of the Safety Management System (ISM was implemented 12 years ago; including, but not limited to, an initial audit in 1998, two 5-year recertification audits in 2003 and 2008, and four interim audits in 2001, 2004, 2007 and 2010.

Respondents, Transocean Holdings, LLC, Transocean Offshore Deepwater Drilling, Inc., Transocean Deepwater, Inc. and Triton Asset Leasing GmbH (hereinafter collectively referred to as "Transocean"), object to the subpoena on grounds that the requested documents are not relevant to the Joint Investigation of the DEEPWATER HORIZON casualty and that the Board's subpoena request was not issued for a proper purpose within its statutory authority.

Transocean offers and introduces into evidence all exhibits attached to this Memorandum in opposition to the Petition and First Amended Petition filed herein.

## I. <u>BACKGROUND</u>

### A. **The DEEPWATER HORIZON**

The DEEPWATER HORIZON was a Mobile Offshore Drilling Unit (MODU) operated by Transocean Offshore Deepwater Drilling, Inc.  It was operating under charter to BP, Inc. at the time of the April 21-22, 2010 casualty, engaged in the drilling of the Macondo 252 oil well at a site leased by BP, Inc. from the Minerals Management Service (now the Bureau of Ocean Energy Management, Regulation and Enforcement (BOEMRE)).

The DEEPWATER HORIZON had been built and was delivered to Transocean on April 21, 2001.  It was registered (flagged) in the Republic of Panama at the time of delivery.  On June 2, 2005, the DEEPWATER HORIZON changed registry and became flagged in the Republic of the Marshall Islands.  It remained flagged in the Marshall Islands, and carried all required certificates and documents, which were up to date and valid as required under international and

Mobile Offshore Drilling Unit DEEPWATER HORIZON, with Loss of Life in the Gulf of Mexico 21-22 April 2010", paragraph 1.

Marshall Islands law, at the time of the April 21-22 casualty.  These included two documents issued under the authority of the government of the Republic of the Marshall Islands establishing compliance with the International Safety Management (ISM) Code:  (1) a valid Document of Compliance for Transocean Offshore Deepwater Drilling Inc., the company operating the vessel in the Gulf of Mexico (Exh. E.2.) , and (2) a Safety Management Certificate specifically issued for the DEEPWATER HORIZON (Exh. F.3.).

In addition, the DEEPWATER HORIZON had been operating in the U.S. Gulf of Mexico on a consistent basis since April 2002 and was subject to regular inspections by both the U.S. Coast Guard and the BOEMRE.  The DEEPWATER HORIZON had undergone annual inspections by the U.S. Coast Guard since April 2002.  (Exh. H.)  Further, the DEEPWATER HORIZON had held a valid Letter of Compliance issued by the U.S. Coast Guard continuously since that time, including at the time of the April 21-22, 2010 marine casualty.[2]

## B. **The ISM Code**

In 1994, the International Convention for the Safety of Life at Sea, more commonly referred to as SOLAS, was amended to include a new Chapter IX, implementing measures for the Management for the Safe Operation of Ships.  This Chapter established the International Safety Management (ISM) Code.  (Exh. I.)  Compliance with the ISM Code was made mandatory for all SOLAS signatory nations, including the United States.  Congress enacted its provisions into U.S. law in 1996.  Title V, Pub. L. 104-324, 110 Stat. 3928 (Oct. 19, 1996) (codified at 46 U.S.C. Chapter 32).

---

[2] See 33 C.F.R. §143.210.  Pursuant to the U.S. Coast Guard Navigation and Inspection Circular (NVIC) No. 3-88, as amended by Change 1 (Jan. 28, 2000), *available at* **http://www.uscg.mil/hq/cg5/nvic/pdf/1988/n3-88ch1.pdf**., the Coast Guard conducts annual inspections of all foreign flag MODUs operating on the U.S. Outer Continental Shelf for compliance with all applicable international treaty standards, including SOLAS, and all applicable U.S. marine safety and maritime environmental laws and regulations.  If after inspection, which must be conducted annually, the MODU is found to be in compliance with all applicable international and U.S. treaties, statutes and regulations, including the ISM Code, the Coast Guard issues a Letter of Compliance to the MODU.  No MODU can conduct operations on the U.S. Outer Continental Shelf without a valid Letter of Compliance.

The ISM Code entered into force on July 1, 1998, but did not apply to mobile offshore drilling units of at least 500 gross tons, such as the DEEPWATER HORIZON, until July 1, 2002. See SOLAS, Chap. IX, Reg. 2.  The amendments to the ISM Code expanding its application were not implemented in the United States until August 2004. Sec. 405(a), Pub. L. 108-293, 118 Stat. 1043 (Aug. 9, 2004).

The purpose of the ISM Code is to provide "an international standard for the safe management and operation of ships and for pollution prevention." ISM Code Preamble §1. (Exh. I.) Owners/ operators of covered vessels must develop a Safety Management System that meets certain criteria established by the Code.  ISM Code §1.4.  See also 46 U.S.C. § 3203.  The Flag State Administration is responsible for verifying compliance with the provisions of the ISM Code for (1) companies operating vessels under its registry, and (2) all vessels in the registry covered by the ISM Code.  This is done through a series of audits mandated by the Code, which result in the issuance of specified documents used to verify ISM Code compliance. See generally ISM Code, Part B – "Certification and Verification." (Exh. I.)

Two such documents are of particular significance to the Board's Petition to enforce its October 21, 2010 subpoena: (1) the "Document of Compliance" and (2) the "Safety Management Certificate." A Document of Compliance is issued by the Flag State Administration to the vessel operating company, and is valid for a period of five (5) years.  In order to obtain a DOC, the operating company must undergo an initial audit.  For the DOC to remain valid, the operating company must undergo annual verification audits.  A recertification audit is done every 5 years. A Safety Management Certificate is issued by the Flag State Administration to each individual ship under its registry subject to the ISM Code, and is also valid for five (5) years.  In order to obtain an SMC, the vessel must undergo an initial audit.  For the SMC to remain valid, the ship

must undergo at least one intermediate verification audit, which at a minimum must be done between the second and third anniversary dates of the issuance of the SMC. A recertification audit is done every 5 years.

Required audits under the ISM Code are conducted by representatives of the Flag State Administration, or by recognized organizations acting on its behalf. The current DOC of an operator and SMC of a vessel must be retained on board the vessel for examination by the Flag State Administration or by other Contracting Governments to SOLAS at all times. See ISM Code §13 *et seq.*

Under SOLAS, a Contracting Government may exercise port state control for foreign flag vessels that are operating in ports or waters subject to its jurisdiction (such as the United States in the case of the DEEPWATER HORIZON). See SOLAS, Chap. I, Reg. 19. Under these provisions, a Contracting Government may verify that the certificates issued under SOLAS – in this case, the DOC and the SMC required by the ISM Code – are valid. If the certificates are valid, a Contracting Government <u>must accept them</u> unless it has clear grounds for believing that the condition of the vessel does not correspond substantially with the particulars of the certificates. *Id.* See also, 33 C.F.R. §140.101(e). If the certificates are valid, they <u>must also be regarded by a Contracting Government as having the same force as if the certificates had been issued by that government itself</u>. SOLAS, Chap. I, Reg. 17.

Coast Guard regulations implementing the ISM Code state that, for vessels operating in waters subject to the jurisdiction of the United States, the Coast Guard may board a vessel to determine that (1) valid copies of the DOC and SMC are on board, and (2) that the vessel's crew or shore-based personnel are following the procedures of the safety management system. 33 C.F.R. § 96.380(a). The Coast Guard has issued further guidance applicable to enforcement of

the ISM Code for foreign flag vessels.  See U.S. Coast Guard Navigation and Inspection Circular (NVIC) 04-05 (Aug. 1, 2005), *available at* http://www.uscg.mil/hq/cg5/nvic/pdf/2005/NVIC%2004-05.pdf.  This guidance states that an examination for compliance with the ISM Code will be conducted as part of all port state control examinations conducted on foreign vessels operating in U.S. waters.  The Coast Guard inspection record for the DEEPWATER HORIZON establishes that the Coast Guard conducted at least 11 port state control (PSC) examinations of the vessel since July 1, 2002.  (Exh. H.)  Following the provisions of NVIC 04-05, compliance with the ISM Code and applicable Coast Guard regulations and guidelines implementing it for the DEEPWATER HORIZON would have been verified through these examinations.

## C.  The Joint Investigation

On April 26-27, 2010, the Department of the Interior and Department of Homeland Security issued an Order convening a "joint investigation ("Joint Investigation") of the April 21-22, 2010 explosion and sinking of the mobile offshore drilling unit DEEPWATER HORIZON." (Exh. A.)  It was ordered that the investigation be conducted pursuant to the procedures set forth in 43 U.S.C. §1348; 14 U.S.C. §141; 46 U.S.C. §§6301 *et seq.*; 33 C.F.R. §140, Subpart C; 30 C.F.R. §§250.186-191; and 46 C.F.R. Part 4.

Under 46 U.S.C. §6301, the Joint Investigation is tasked to decide:

(1) the cause of the casualty, including the cause of any death;

(2) whether an act of misconduct, incompetence, negligence, unskillfulness, or willful violation of law committed by any individual licensed, certificated, or documented under part E of this subtitle has contributed to the cause of the casualty, or to a death involved in the casualty, so that appropriate remedial action under chapter 77 of this title may be taken;

(3) whether an act of misconduct, incompetence, negligence, unskillfulness, or willful violation of law committed by any person, including an officer, employee, or member of the Coast Guard, contributed to the cause of the casualty, or to a death involved in the casualty;

6

(4) whether there is evidence that an act subjecting the offender to a civil penalty under the laws of the United States has been committed, so that appropriate action may be undertaken to collect the penalty;

(5) whether there is evidence that a criminal act under the laws of the United States has been committed, so that the matter may be referred to appropriate authorities for prosecution; and

(6) whether there is need for new laws or regulations, or amendment or repeal of existing laws or regulations, to prevent the recurrence of <u>the casualty</u>.

(Emphasis added).  Similarly, 43 U.S.C. § 1348 requires investigators to determine the cause of "<u>each</u> major fire and <u>each</u> major oil spillage" arising from operations conducted under the Outer Continental Shelf Lands Act.  (Emphasis added).  The language of these statutes clearly limits the scope of the Joint Investigation to the marine casualty for which it was convened.  As set forth below, the information sought by the Board, relating to ISM audits of (1) other Transocean vessels not involved in the casualty and (2) Transocean as an operating company since the adoption of the ISM Code, is irrelevant to this clear mandate.[3]

## D.  ISM Document Requests

The Joint Investigation Board initiated formal hearings on the DEEPWATER HORIZON casualty on May 11, 2010.  Multiple hearing rounds have been conducted since that time and will continue until the Board's investigation is completed.  "Transocean" was designated as a party-in-interest to the Joint Investigation on May 4, 2010.  It has participated in all formal hearings and has given the Board its full cooperation since that time.  The Board has issued a total of 22

---

[3] Transocean recognizes that ISM Code audits of the DEEPWATER HORIZON itself are relevant to the purposes of the Joint Investigation, and has voluntarily provided these audits to the Joint Investigation, along with numerous other safety audits and inspections conducted by third parties.  As stated in the Board's Petition, Transocean also recognizes that <u>current</u> audit information related to Transocean Offshore Deepwater Drilling, Inc., the company operating the DEEPWATER HORIZON at the time of the casualty, for audits that have been conducted by or on behalf of the Republic of the Marshall Islands, the Flag State Administration for the DEEPWATER HORIZON, are also relevant, and has produced/will produce those documents in compliance with the Board's subpoenas.

subpoenas to Transocean "commanding" the production of 108 categories of documents, information or objects.  Transocean has provided the Board with thousands of documents consisting of tens of thousands of pages in response, and has objected to only 17 requests, 7 of which it ultimately provided responsive documents notwithstanding the objection.

On August 4, 2010, the Board issued a subpoena *duces tecum* to Transocean requesting, among other things, "Last ISM Code audit reports for Transocean office & all its vessels subject to ISM Code operating in GOM."  (Exh. B.1.)  Transocean issued a written response and objection to this request on August 18, 2010, stating, "We object to this request as overly broad. We are producing the last ISM audit reports for the Transocean office."  (Exh. B.2.)  Transocean produced documents responsive to the subpoena, which included a valid "Document of Compliance" and "ISM Code DOC Annual Audit" certifying that the company and its branch offices were in full compliance with ISM Code regulations.  (See Exhs. B.2., B.3. and B.4.)  The Board accepted the ISM audit documents produced by Transocean and declined to seek judicial enforcement of the subpoena.

On September 2, 2010, the Board issued a subpoena *duces tecum* to Transocean requesting, among other documents, the "Most recent ISM Code company audit report for Transocean," and the "Most recent ISM Code audit for all Transocean vessels operating in GOM within the past 12 months."  (Exh. C.1.)  Transocean objected to these requests in writing on September 15, 2010 on grounds that they were "overly broad, unduly burdensome, irrelevant, and not reasonably calculated to lead to admissible evidence in this proceeding."  (Exh. C.2.) Moreover, Transocean had already provided the Board with its current DOC.  (Exh. B.4.) The Board accepted Transocean's response and again declined to seek judicial enforcement of the subpoena.

On October 5, 2010, during an investigative hearing round, the Board recited a pre-planned statement into the record accusing Transocean of not being responsive to the Board's requests concerning ISM audit information and of "thwarting" the investigation.  (Exh. D, pp. 98-99, 105-111.)  This statement was read into the record without prior notice to Transocean and without the Board having taken any action to have its prior subpoenas enforced.  The undersigned, on behalf of Transocean, responded to the Board's accusations in writing on October 6, 2010, identifying errors in its statement (Exh. E.1.) and again providing it with Transocean's current DOC certifying that Transocean Offshore Deepwater Drilling, Inc. and its branch offices were in full compliance with ISM Code requirements as of the time of the April 21-22 casualty.  (Exh. E.2.)  It should be noted that Transocean had also already provided the Board with a copy of the DEEPWATER HORIZON's  Safety Management Certificate in force at the time of the casualty when the Board issued its October 5, 2010 statement.  (See Exh. F, *in globo.*)

Finally, on October 21, 2010, the Board issued the subpoena made subject to this action. In it, the Board requested among other things:

- All documents relating to the last ISM audit report for all Transocean vessels that operated in the Gulf of Mexico at the time of the casualty. [and]

- The external audit(s) of the Safety Management System (ISM was implemented 12 years ago; including, but not limited to, an initial audit in 1998, two 5-year recertification audits in 2003 and 2008, and four interim audits in 2001, 2004, 2007 and 2010. (Exh. G.1.)

On November 4, 2010, Transocean again responded with its written objection that these requests were overly broad, unduly burdensome, irrelevant, not reasonably calculated to lead to admissible evidence in the proceeding, and were outside the scope of the Joint Investigation's charge to investigate "the April 21-22, 2010 explosion and sinking of the mobile offshore

drilling unit DEEPWATER HORIZON." (Exh. G.2.)  The Board's Petition and First Amended

Petition were subsequently filed.  For the reasons that follow, Transocean respectfully submits

that the Board's Petition must be denied as its requests are beyond the scope of its charge and

irrelevant to its authorized investigation.

## II.  LAW AND ARGUMENT

### A.  <u>Standards for Enforcement of Administrative Subpoena</u>

Enforcement of an administrative subpoena depends upon (1) whether it was issued for a

proper statutory purpose, and (2) whether the documents sought are relevant to the agency's

investigation or proceeding.  *United States v. Security State Bank and Trust*, 473 F.2d 638, 642

(5th Cir. 1973).  As established by the U.S. Supreme Court, an administrative subpoena can only

be enforced if:

- the investigation is conducted for a "legitimate purpose;"
- the specific inquiry is relevant to the purpose of the investigation;
- the information is not already in the possession of the agency; and
- administrative procedures for requiring the information have been adhered to.

*United States v. Powell*, 379 U.S. 48, 57-58 (1964).

It is the agency's burden to prove the subpoena was issued for a proper statutory purpose

and that the requested documents are relevant to the investigation.  *Security State Bank*, 473 F.2d

at 642.  An agency's conclusory allegation that the records sought are relevant to an investigation

is insufficient to meet this burden.  *Id.* at 643.  Rather, the agency must show that the requested

information "touches a matter under investigation."  *Sandsend Financial Consultants, Ltd. v.*

*Fed. Home Loan Bank Bd.*, 878 F.2d 875, 882 (5th Cir. 1989) (citation omitted).  In addition, the

request cannot be overly broad, *i.e.*, "of such a sweeping nature and so unrelated to the matter

properly under inquiry as to exceed the investigatory power." *United States v. Wyatt*, 637 F.2d 293, 302 (5th Cir. 1981) (citations omitted).  As stated by the Fourth Circuit, "a 'fishing expedition' through a [subpoena recipient's] records exceeds the relevant scope of the summons power." *United States v. Richards*, 631 F.2d 341, 345 (4th Cir. 1980).

The Joint Investigation Board has failed to satisfy its burden of showing that the subject subpoena requests were issued for a proper statutory purpose, or that the requested documents are relevant to its investigation.

**B.  The Subpoena Requests Were Not Issued for a Proper Statutory Purpose**

An agency seeking enforcement of an administrative subpoena must show that it was issued for a "proper statutory purpose." *Security State Bank*, 473 F.2d at 642.  The "statutory purpose" of the Joint Investigation is to conduct an "investigation into the marine casualty, explosion, fire, pollution, and sinking of mobile offshore drilling unit DEEPWATER HORIZON, with loss of life in the Gulf of Mexico 21-22 April 2010."  (Exh. A.)  The Convening Order for the Joint Investigation, and the statutes that authorize the Joint Investigation, limit its inquiry to "the casualty" that occurred on the DEEPWATER HORIZON on April 21-22, 2010.  The subpoena requests for documents showing ISM Code compliance of other vessels operated by Transocean, or of Transocean's operating companies since the date the ISM Code was promulgated, are not related to the casualty and, therefore, were not issued for a proper statutory purpose.

The Board relies almost exclusively on Paragraph 6 of 46 U.S.C. §6301 to justify enforcement of its requests, claiming the documents sought "are relevant to determining 'whether there is a need for new laws or regulations, or amendment or repeal of existing laws or regulations, to prevent the recurrence of the casualty,' 46 U.S.C. 6301(6), including the ISM

11

Code or other laws." See Petitioner(s)' Amended Memorandum in Support of Petition, p.6.
However, the Board's consideration and inquiry in this regard must be confined to the scope of
its investigation, i.e., the DEEPWATER HORIZON, and must be based on facts and evidence
concerning the marine casualty in question. Although the Board is allowed to make
recommendations concerning the effectiveness of existing laws, it must do so based on evidence
adduced within the confines of its charge. The Board's requests do not relate to the casualty and,
therefore, were not issued for a "proper statutory purpose."

## C. **The Board Has Failed to Meet Its Burden of Proving Relevance**

An agency seeking enforcement of an administrative subpoena must also demonstrate to
the reviewing court that the information sought is relevant to the purpose of the investigation.
*United States v. Powell*, 379 U.S. 48, 57-58 (1964). The Board has also failed to meet its burden
in this regard.

The Board attempts to support its relevance claim by arguing that "[i]nformation
contained in the requested documents will help the Joint Board of Investigation identify gaps in
existing laws and regulations as well as international agreements that may need to be amended in
order to prevent the occurrence of similar casualties in the future," See Petitioner(s)' Amended
Memorandum in Support of Petition, p.6. It goes on to state:

> Since the ISM Code contemplates commitment to safety from the top,
> shortcomings in ISM compliance aboard one Transocean vessel <u>may</u> indicate
> shortcomings aboard other Transocean vessels. Systemic problems existing
> within a fleet may, in turn, indicate that existing laws and regulations pertaining
> to the ISM Code or other applicable laws <u>may</u> need to be amended or new laws
> created to fill existing gaps or clarify obligations under the law.

Id. at p.8. (Emphasis added.)

The Board does not present any evidence of shortcomings in ISM compliance or
systematic problems aboard Transocean vessels. Rather, the Board makes conclusory allegations

that shortcomings in ISM compliance and/or systematic problems aboard Transocean's vessels
may be relevant. The Board asks this court to enforce the subpoena so that it can search for
shortcomings in ISM compliance or systematic problems aboard Transocean vessels. The
Board's request is the definition of a prohibited fishing expedition.

Moreover, to the extent the Board is concerned with the safety management system and
safety culture on board the DEEPWATER HORIZON, Transocean has already provided it with
the DEEPWATER HORIZON's SMC in force at the time of the casualty (Exh. F.3.), not to
mention thousands of additional documents concerning its operation.  To the extent the Board is
concerned with Transocean's "commitment to safety from the top," Transocean has already
provided it with its currently valid DOC issued under the authority of the Government of the
Republic of the Marshall Islands certifying that "the safety management system of the Company
has been audited and that it complies with the requirements of the International Management
Code for the Safe Operation of Ships and for Pollution Prevention (ISM Code)."  (Exh. E.2.)
These documents are to be accepted as evidence of ISM Code compliance under Sections 13.2
and 13.7 of the Code. (Exh. I.)  Contracting Governments, such as the United States, must also
accept them as verification from the Flag State Administration of ISM Code compliance under
SOLAS, Ch. I, Regs. 17 and 19.  The Board's attempt to obtain additional ISM reports
concerning vessels and time periods having nothing to do with this casualty again amounts to
nothing more than a "fishing expedition" for superfluous information on which administrative
subpoenas cannot be based.

**D.  The Requested Documents Are Not Relevant to the Authorized Joint Investigation**

The two categories of documents sought by the Board in its Petition are also irrelevant to
the Joint Investigation on several additional factual and legal grounds.

### 1. All documents relating to the last ISM audit report for all Transocean vessels that operated in the Gulf of Mexico at the time of the casualty.

First, several of the vessels for which the subpoena seeks audits are not flagged in the Republic of the Marshall Islands. The identity of the Flag State Administration is a critical factor in implementation and enforcement of the ISM Code. Under the international treaties and U.S. laws implementing the Code, all required documents are issued by the Flag State Administration for the vessel and all required audits are conducted by the Flag State Administration for vessels under its registry. The DEEPWATER HORIZON was flagged in the Republic of the Marshall Islands at the time of the April 21-22 casualty. Compliance with ISM Code requirements by other vessels not flagged in the Marshall Islands is not relevant to the casualty involving the DEEPWATER HORIZON. Each Flag State Administration has its own unique enforcement regime, and other governments may recognize organizations other than those recognized by the Republic of the Marshall Islands to conduct ISM audits on their behalf.[4]

Second, the DEEPWATER HORIZON was a dynamically-positioned, semisubmersible, Mobile Offshore Drilling Unit or MODU. Transocean operates a number of different types of vessels, including vessels regulated as tankers and as freight vessels, as well as several different types of MODUs. The subpoena seeks ISM audit reports of all vessels operated by Transocean in the Gulf of Mexico without regard to the type of service and design of the vessels. The safety program, and the elements of the safety program that are the subject of the audits, are different on different types of vessels. This is because different SOLAS and safety standards apply, as

---

[4] The significance of the Flag State Administration to the operation of vessels under its registry, and the unique role it plays in ensuring compliance of these vessels with applicable international requirements, such as the ISM Code, is confirmed by the Coast Guard's own policies. Port state control efforts are focused on identifying and targeting potentially substandard vessels. One of the prime criteria in the matrix used to establish Coast Guard boarding priorities is the vessel's flag state, in recognition of the fact that flag state administrations have different enforcement programs for the vessels under their jurisdiction. *See* Coast Guard Marine Safety Manual, Vol. II, Sec. D, Chap. 4, Sec. B.2 ("Targeted Flag State"), *available at* http://www.uscg.mil/directives/cim/16000-16999/CIM_16000_7A.pdf.

well as different manning standards, pollution prevention requirements and other such standards that are implemented by the Flag State for the specific vessels, including different types of MODUs.  Thus, each individual vessel is required to show its compliance with the ISM Code by having an individual Safety Management Certificate, based on an individual audit of each vessel by the applicable Flag State Administration, to show its compliance with the ISM Code.  For these reasons, the audits of vessels that are not of the same type or service cannot be relevant to "the casualty" involving the DEEPWATER HORIZON.

Third, the Coast Guard and other agencies of the United States are not entitled to obtain the underlying audits under the governing provisions of SOLAS and the ISM Code.  The Flag State Administration is responsible for ensuring compliance of its vessels with the requirements of the Code.  Pursuant to the enforcement provisions of SOLAS and the ISM Code, Contracting Governments, such as the United States, are authorized to verify that the certificates issued (in this case the DOC and the SMC) are valid.  If the certificates are valid, the United States is required to accept them unless it has "clear grounds" for believing that the condition of the vessel does not correspond substantially with the particulars of the certificates.  SOLAS, Chap. I, Reg. 19.  In its submission to the Court, the Board has not asserted nor provided any information to support a claim that it has "clear grounds" for believing that the conditions of the vessels for which it seeks the underlying audit reports do not correspond substantially with the particulars of their SMCs.[5]  Accordingly, the audits upon which Safety Management Certificates were issued are by law not subject to examination by the Coast Guard or other agencies of the United States.

---

[5] The Coast Guard in fact has conducted annual inspections on all MODUs that are the subject of the subpoena and issued them a Letter of Compliance, without which they could not operate on the U.S. Outer Continental Shelf.  This would have included examination of these MODUs for their compliance with the ISM Code.  *See supra* n. 2.

**2. The external audit(s) of the Safety Management System (ISM was implemented 12 years ago; including, but not limited to, an initial audit in 1998, two 5-year recertification audits in 2003 and 2008, and four interim audits in 2001, 2004, 2007 and 2010[*sic*].**

Regarding external audits of its companywide Safety Management System, Transocean avers that only its current DOC, issued in January 2007, is relevant to the Joint Investigation.

First, the 2007 audit was conducted because Transocean merged with Global Santa Fe, a MODU operating company. This required the merger of corporate operations as well as numerous MODUs and vessels into the existing company. As a consequence, any audits of Transocean that were done prior to January 2007 would not reflect the operations of the company as they existed at the time of the April 21-22, 2010 casualty. Prior audits are therefore irrelevant.

Second, the DEEPWATER HORIZON was not built or delivered for service until December 2001, and did not begin operations in waters subject to the jurisdiction of the United States until early 2002. Also, SOLAS provisions for the Safe Management of Ships and the ISM Code establishing the Safety Management System did not become mandatory for MODUs and MODU operators until July 1, 2002. Thus, documents preceding these dates have nothing to do with Transocean's safety management system as it relates to the DEEPWATER HORIZON or to the April 21-22 casualty.

Third, the DEEPWATER HORIZON was initially flagged in the Republic of Panama, rendering the Republic of Panama, and not the Republic of the Marshall Islands, initially responsible for conducting audits required by the ISM Code for operation of the DEEPWATER HORIZON. The DEEPWATER HORIZON was not reflagged to the Republic of the Marshall Islands until June 2005. As noted above, the identity of the Flag State Administration is critical in the matrix of criteria on which the United States enforcement policy is based. Audit-related

documents conducted before 2005 are therefore irrelevant as they would reflect a safety management verification system different to that which was in place at the time of the April 21-22 casualty.

Finally, a Document of Compliance is valid for five years. The ISM Code states that a Company is required to control and maintain documents relevant to the Safety Management System. The Code further states that all obsolete documents must be promptly removed. ISM Code §11.2.3. Thus, the ISM Code itself establishes that only valid, current certificates are relevant for purposes of verifying safety management systems under domestic and international law.

Based on the foregoing, the Board has again failed to satisfy its burden of establishing relevance of these requested documents.

## III.  **CONCLUSION**

Transocean respectfully avers that Petitioner's action for the enforcement of the administrative subpoena at issue is without merit and must be dismissed. The Board's requests far surpass the express authority granted to it by the Department of the Interior and Department of Homeland Security in their April 26-27, 2010 Convening Order. Moreover, the requested information is irrelevant to the scope of the Joint Investigation and relates to safety management verification conditions of Transocean and the DEEPWATER HORIZON that differ from those in place at the time of the April 21-22, 2010 marine casualty. Transocean has already provided the Board with documents that must be accepted as *prima facie* proof of ISM Code compliance under international law. Therefore, it has satisfied its legal obligations under the subpoena, and Petitioner(s)' action should be denied and dismissed with prejudice, at Petitioner(s)' sole cost.

Respectfully Submitted,

PREIS & ROY
(A Professional Law Corporation)

BY: *s/Richard J. Hymel*
   EDWIN G. PREIS, JR. (#10703)
   RICHARD J. HYMEL (#20230)
   102 Versailles Blvd., Ste. 400
   Post Office Drawer 94-C
   Lafayette, LA 70509
   Tel: (337) 237-6062
   Fax: (337) 237-9129

COUNSEL FOR TRANSOCEAN HOLDINGS,
LLC, TRANSOCEAN OFFSHORE DEEPWATER
DRILLING, INC., TRANSOCEAN DEEPWATER,
INC. and TRITON ASSET LEASING GmbH

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing has this date been served on all known counsel of record in this proceeding by:

( ) Hand Delivery                    ( ) Prepaid U.S. Mail

( ) Facsimile                        ( ) Federal Express

( X ) E-mail

Lafayette, Louisiana, this 8th day of December, 2010.

_s/Richard J. Hymel_____
RICHARD J. HYMEL