UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | *  *  * | MDL. 2179 |
| | | SECTION: J |
| This Document Relates To: 10-CV-04397 | * | |
| | * | Judge Barbier |
| | | Mag. Judge Shushan |
| | * | |

\*   \*   \*

## REPLY MEMORANDUM OF THE UNITED STATES

The United States of America, on behalf of the Joint Board of Investigation of the United States Coast Guard and the Bureau of Ocean Energy Management, Regulation and Enforcement[1] convened under the authority of 46 U.S.C. §6301, et seq. and 43 U.S.C. §1348, respectfully submit this memorandum in order to address two discreet issues discussed by Transocean in its opposition to the United States' petition for enforcement.

**A.    SOLAS, Chap. 1, Reg. 19 is not applicable to the Board's investigation.**

Transocean raises Regulation 19 contained in Chap. 1, Pt. B of SOLAS as a restriction to the Board's ability to obtain supporting documents for the ISM-required certificates. In its opposition, Transocean seems to suggest that Regulation 19 restricts the Board to only the facial review of ISM-required certificates and is prohibited from reviewing the audits or surveys that support the certificates. There are several reasons Transocean's position is without merit.

---

[1] For brevity sake, the Joint Board of Investigation of the United States Coast Guard and the Bureau of Ocean Energy Management, Regulation and Enforcement will sometimes be referred to as the Joint Board of Investigation or the Board.

First, the authority of the Joint Board of Investigation to conduct the investigation into the *Deepwater Horizon* casualty stems <u>not</u> from SOLAS but from 46 U.S.C. § 6301, et. seq. and 43 U.S.C. § 1348. Its jurisdiction arises from the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. 1331 et seq., as the *Deepwater Horizon* was engaged in outer continental shelf activity within the U.S. Outer Continental Shelf at the time of the explosion on April 20, 2010. Section 1333(a)(1) describes the reach of the OCSLA and applies federal law within this scope. It states that the laws and jurisdiction of the United States extend:

> to the subsoil and seabed of the [OCS] and to all artificial islands, and all installations and other devices permanently or temporarily attached to the seabed, which may be erected thereon for the purpose of exploring for, developing, or producing resources therefrom, or any such installation or other device (other than a ship or vessel) for the purpose of transporting such resources, to the same extent as if the [OCS] were an area of exclusive Federal jurisdiction located within a state. 43 U.S.C.A. § 1333(a)(1).

*See also*, <u>Grand Isle Shipyard, Inc. v. Seacor Marine, LLC</u>, 589 F.3d 778 C.A.5 (La.), 2009. Customary international law also recognizes a country's sovereign rights to regulate the seabed and subsoil of the submarine areas that extend beyond its territorial seas to the outer edge of the continental margin, or to a distance of 200 nautical miles from the territorial seas where the outer edge of the continental margin does not extend up to that distance. *See generally*, Articles 56, 76, 77, and 81 of the U.N. Convention on the Law of the Sea (UNCLOS). Similarly, the United States Exclusive Economic Zone, pursuant to Presidential Proclamation, is defined as 200 nautical miles from which the breadth of the territorial sea is measured.[2] As such, due to the nature and location of the *Deepwater* Horizon's activity and subsequent fire and major oil spillage occurring as a result of its operations, federal law mandates a marine casualty

---

[2]The United States Exclusive Economic Zone extends to a distance 200 nautical miles from the baseline from which the breadth of the territorial sea is measured. <u>See</u> Presidential Proclamation 5030, March 10, 1983 (43 FR 10605).

investigation. SOLAS cannot be used to usurp the Board's authority to conduct investigations mandated by Congress on the Outer Continental Shelf.

Second, Regulation 19 pertains to routine examination of ships when visiting the port of another Contracting Government.[3] It was never intended as a limitation on a marine casualty investigation. As evidence of this, SOLAS has a separate set of provisions governing marine casualties, which is found in the Code of the International Standards and Recommended Practices for a Safety Investigation into a Marine Casualty or Marine Incident.[4] The Marine Casualty Code was adopted into SOLAS through SOLAS, Chapter XI-1, Reg. 6, which went into effect on Jan 1, 2010. Under the Marine Casualty Code "surveys and other records held by the flag State, the owners, and classification societies; 2) all recorded data, including voyage data recorders; and 3) evidence that may be provided by government surveyors, coastguard officers, vessel traffic service operators, pilots or other marine personnel" are to be made available to the investigating body. Exhibit No. 1, MSC-MEPC.3/Circ. 2, Chap. 16, § 16.4.2. While the United States has not adopted the Marine Casualty Code, it evidences an intent by the International Maritime Organization to treat accessibility to records differently when a maritime casualty has occurred and clearly indicates an obligation to provide this type of information during a marine casualty investigation. Although not the case here because the *Deepwater Horizon* sank, it is possible to have both a port state control action under Regulation 19 and a

---

[3]"Every ship when in a port of another Contracting Government is subject to control by officers duly authorized by such Government in so far as this control is directed towards verifying that the certificates issued under regulation 12 or regulation 13 are valid." SOLAS, Chap. I, Reg. 19(a).

[4]In the interest of brevity, the Code of the International Standards and Recommended Practices for a Safety Investigation into a Marine Casualty or Marine Incident will be referred to hereinafter as simply the Marine Casualty Code. A copy of the Marine Casualty Code is attached hereto as Exhibit 1.

marine casualty investigation being conducted simultaneously, each with its own set of rules of conduct.

The reason for treating marine casualty investigations differently is patent. The stated reason in SOLAS for investigations of marine casualties and incidents is for "the objective of preventing marine casualties and marine incidents in the future." Exhibit No. 1, Pt. 1, Ch. 1, § 1.1 and Ch. 2, § 2.11. "The International Convention for the Safety of Life at Sea (SOLAS), 1948, included a provision requiring flag State Administrations to conduct investigations into any casualty suffered by a ship of its flag if an investigation may assist in identifying regulatory issues as a contributing factor." Id., Forward, ¶4. Thus, the Marine Casualty Code adopted by SOLAS provides for access by the investigating body to a broad range of information, well beyond the facial review of certificates, including "surveys and records held by the flag State, the owners, and classification societies" and other "evidence that may be provided by government surveyors, coastguard officers, vessel traffic service operators, pilots or other marine personnel."

Finally, even Regulation 19 recognizes instances in which a Contracting Government could look beyond the facial validity of a certificate, even during routine port inspections. Reg. 19 provides that the Contracting Government must accept valid certificates ". . . unless it has clear grounds for believing that the condition of the vessel does not correspond substantially with the particulars of the certificate."[5] It is beyond cavil that, here, there are "clear grounds" for such a belief.

---

[5]"Such certificates, if valid, shall be accepted unless there are clear grounds for believing that the condition of the ship or of its equipment does not correspond substantially with the particulars of any of the certificates or that the ship and its equipment are not in compliance with the provisions of regulation 11(a) and (b)." SOLAS, Chap. I, Reg. 19(b).

**B.     The Board's request for ISM documents pertaining to other Transocean vessels operating in the Gulf of Mexico are within its statutory authority and are relevant to the Board's investigation.**

Transocean argues that ISM documents pertaining to other Transocean vessels operating in the Gulf of Mexico and for the operating company are not within the Coast Guard's statutory purpose because they do not relate to the *Deepwater Horizon* casualty itself.

Transocean construes the Board's mission too narrowly. Certainly it is well within the Board's statutory purpose, as expressed in 46 U.S.C. § 6301, to examine the casualty to determine its cause or causes. But its statutory purpose goes well beyond simply determining what caused the casualty. The Board is also tasked with looking prospectively to determine "whether there is need for new laws or regulations, or amendment or repeal of existing laws or regulations, to prevent the recurrence of the casualty." While downplayed by Transocean, this statutory purpose is no less significant that its statutory purpose of determining the cause of the casualty.

To accomplish this prospective prong of its mission, the Board must determine the root cause or causes that led up to the casualty to determine if laws and regulations should be amended or new laws or regulations enacted to address them. For example, did an isolated error or series of errors cause or contribute to the casualty or was the problem systemic? If systemic problems contributed to the casualty, can existing laws or regulations be amended or new laws or regulations enacted to prevent a recurrence? These questions are all well within the Board's broad statutory purpose.

The Board believes that to accomplish its purpose, it must look at whether the rules governing safety applicable to Transocean as a company and the vessels it operates, including the ISM, were being followed and how they were administered, not just aboard the *Deepwater*

5

*Horizon*, but aboard other vessels as well. This will assist the Board in identifying weaknesses in the legal framework that can be addressed by amendments to existing laws or new laws. Thus, ISM documents pertaining not just to the *Deepwater Horizon* but to other Transocean vessels operating in the Gulf of Mexico are relevant to the Board's statutory purpose.

Finally, Transocean suggests that the fact that other Transocean vessels for which documents are sought may be flagged under different States makes these documents irrelevant. In fact, the opposite is true. Differences in the administration of ISM by different flag States is germane to the Board's analysis of whether amendments to the ISM should be recommended. The Board is well within its statutory authority to explore these differences in its effort to determine if existing laws or regulations should be amended or repealed or new laws enacted.

For the foregoing reasons and those expressed in the United States' petition and supporting memo, the United States respectfully requests that its petition be granted.

    Respectfully submitted,

    JIM LETTEN
    UNITED STATES ATTORNEY

    *s/ SHARON D. SMITH*
    SHARON D. SMITH (17146)
    Assistant United States Attorney
    Hale Boggs Federal Building
    500 Poydras Street, Room B210
    New Orleans, Louisiana 70130
    Telephone: (504) 680-3004