UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | | |
|---|---|---|---|
| In Re: | Oil Spill by the Oil Rig | : | MDL NO. 2179 |
| | "Deepwater Horizon" in the | : | |
| | Gulf of Mexico, on | : | SECTION:  J |
| | April 20, 2010 | : | |
| | | : | JUDGE BARBIER |
| This Document Relates to All Cases | | : | MAG. JUDGE SHUSHAN |

. .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .

**MOTION FOR ENTRY OF
ORDER RELATING TO PRESERVATION OF EVIDENCE**

The unprecedented scope and nature of the *Deepwater Horizon* tragedy that is the subject of this Multi-District Litigation involved a response by over ten federal agencies.  All of the response and investigative activities resulted in the generation of vast amounts of electronic data, paper records, physical samples, and other information potentially subject to the preservation obligations set forth in paragraph 14 of Pretrial Order Number 1.  The United States is making reasonable, good faith efforts to comply with those requirements.

Consistent with the objectives of Federal Rule of Civil Procedure 1, to achieve the "speedy, just, and inexpensive" determination of the pending claims, however, the United States now seeks clarification of certain requirements and the exclusion of certain categories of information from the preservation obligation because either United States *cannot* preserve some of this information or because the preservation of some of this information is unduly burdensome in light of its marginal, if any, relevance to the issues being litigated.  Accordingly, the United States respectfully requests entry of the proposed order attached as Exhibit 1.

I.      **Consultation with Liaison Counsel**

The United States has met and conferred with Liaison Counsel and counsel for the State of Louisiana with three different results.  First, Plaintiffs' Liaison Counsel do not object to the

entry of the proposed order attached to this motion. Second, Defense Liaison Counsel object to the entry of this order only to the extent its provisions are limited to the United States. Third, the State of Louisiana does not object to the entry of this order as it applies to the United States but has also requested that this Order extend to the State of Louisiana's preservation obligations.[1]

Further, the United States' originally proposed to address the preservation of tangible things, especially the preservation of the remains of samples collected and analyzed by the United States as part of the response activities and post-incident investigation.[2] At the request of both Plaintiffs and Defendants, the United States removed the provisions authorizing disposal of left-over sample materials and any other provision relating to tangible things from the proposed order. Counsel for Plaintiffs, Defendants and the United States have agreed to develop a separate proposed order addressing this category of potentially relevant information.

## II.   Analysis of Proposed Order

This Court's Pretrial Order No. 1 provides, in part, that all "parties and their counsel are reminded of their duty to preserve evidence that may be relevant to this action." The United States' proposed clarifications and amendments to this Order are designed to reduce the burden of preservation by reducing duplication of information and providing for cost-effective storage of information, while requiring continued preservation of the truly relevant and important data.

---

[1] Plaintiff Liaison Counsel have objected to the application of the provisions of the proposed order to the Defendants and the State of Louisiana. The United States does not object to the application of the proposed order to the State of Louisiana and the Defendants.

[2] Many of these samples, even if properly stored, will degrade over time. Decl. N. Jones (Dec. 15) (Ex. 2). For these reasons, EPA's laboratories initially disposed of some of the left over sample materials after the analysis and quality assurance/quality control had been completed. Since issuance of specific guidance instructing the contract laboratories to cease disposing of the left-over sample material, the laboratories have resumed preservation of the samples, despite the fact that the samples are beyond the maximum holding time (rendering any further analysis of these samples unreliable). *See id*.

### A. Consistency with the Pre-Trial Order 1, Paragraph 14

The proposed order preserves the core requirements of paragraph 14 of the Court's Pretrial Order 1, by requiring the United States to preserve information except as specifically provided in the order.  *See* Proposed Order ¶ 2, 4-10, 14-16.  The order also provides for consultation among counsel before issues are brought to the Court for resolution.  *Id.* ¶ 20.

### B. Proposed Exemptions from the Preservation Obligation

#### 1. Reduction of Duplication

Courts have generally agreed that "the duty to preserve does not require a party to keep multiple identical copies of the same document."  *See, e.g., Clark Const. Group, Inc. v. City of Memphis*, 229 F.R.D. 131, 136 (W.D. Tenn. 2005) (citing *Zubulake v. UBS Warburg, LLC*, 220 F.R.D. 212, 218 (S.D. N.Y. 2003)); *In re NTL, Inc. Sec. Litig.*, Nos. 02 Civ. 3013(LAK)(AJP), 7377(LAK)(AJP), 2007 WL 241344, at *15 (S.D. N.Y. Jan. 30, 2007); *Housing Rights Ctr. v. Sterling*, No. CV 03-859 DSF, 2005 WL 3320739, at *3 (C.D. Cal. Mar. 2, 2005).  After the institution of a litigation hold, the preservation of backup tapes is largely the preservation of duplicate information.  While no one can guarantee perfect compliance with a litigation hold and therefore completely eliminate the possibility that an email or other electronic document will exist on the backup tapes that was not preserved in the agency's active environment, the likelihood of such an occurrence is very low.  Moreover, the cost of preserving backup tapes can be quite substantial.  For these reasons, courts have recognized that, "[a]s a general rule, [a] litigation hold does not apply to inaccessible backup tapes (e.g. those typically maintained solely for the purpose of disaster recovery), which may continue to be recycled on the schedule set

forth" in the party's standard policy. *See*, *e.g.*, *Zubulake v. UBS Warburg*, *LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003).[3]

In accordance with these principles, the proposed order provides for the elimination of duplication in several ways. First, Paragraph 14 identifies several categories of electronic information that are duplicative of other data and therefore exempt from the preservation obligation: backup and continuity of operation systems (¶ 14.a.); data on personal digital assistants (including Blackberries) (¶ 14.b., e., f., g.); and data stored on memory cards of printers, copy machines, or fax machines (¶ 15.p.). Second, the proposed order provides that the United States need keep only one copy of each potentially relevant non-identical document and that it need retain only one copy of each potentially relevant electronic mail sent to multiple parties. (¶¶ 10, 12).

### 2. Marginally Relevant Electronic Data that is Difficult to Preserve

In the electronic age, there are many forms of electronic information that may arguably be marginally relevant to claims or defenses asserted in the Multi-District Litigation but that are extraordinarily difficult, if not impossible, to preserve. The Advisory Committee recognized this phenomenon in crafting Federal Rule of Civil Procedure 37(g), which provides a safe harbor for the loss of data resulting from the routine good-faith operation of an electronic information system. Courts have also recognized the difficulty in preserving certain forms of electronic

---

[3] All but three of the federal agencies involved in the response to this tragedy continued the standard practice of recycling backup tapes, relying on the implementation of a litigation hold to preserve relevant information. The National Oceanic and Atmospheric Agency ("NOAA") and the Coast Guard did, in the immediate aftermath of the fire and explosion, suspend recycling of backup tapes for those offices most likely to have potentially relevant information. Further, the Bureau of Ocean Energy Management, Regulation and Enforcement (formerly Minerals Management Service) already had a practice in place of preserving its backup media as a result of an unrelated case. If the proposed order is entered, the Coast Guard and NOAA would resume recycling of backup tapes going forward while still preserving the backup tapes removed from recycling before the date of the Order. *See* Proposed Order ¶¶ 9, 14.a., 15, 16.

information. *See, e.g., Columbia Pictures v. Bunnell,* 2007 WL 2080419 at *3-6 (C.D. Cal. May 29, 2007) (holding no duty to preserve information temporarily stored in random access memory). In fact, Sedona Conference Principle 9 suggests that it is not ordinarily required to "preserve, review, or produce deleted, shadowed, fragmented, or residual [ESI]." The Sedona Principles: Second Edition at pii (2007) (http://www.thesedonaconference.org/publications_html). All of these authorities are simply implementing the guiding balance between burden and relevance that lies at the heart of the discovery process. *See*, *e.g.*, *S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006) ("The court must balance the need for discovery by the requesting party and the relevance of the discovery to the case against the harm, prejudice, or burden to the other party.").

There are several categories of electronic information that the United States cannot preserve or that it can preserve at only great expense and difficulty. Each of these categories, however, consists of information that is marginally relevant, if at all, to the claims and defenses brought in the MDL. These categories include logs of telephone calls from cellular phones, deleted files, temporary files, internet history, server logs, and ephemeral data created by processing equipment such as copiers, printers, and laboratory equipment. The United States has extremely limited ability to preserve this information and has not been preserving this information to date. The proposed Order would exclude these categories of information from the preservation obligation. Proposed Order ¶¶ 14.h., i., j., k., l., p.

There are additional categories of data for which there is a slightly greater possibility of potential relevance, such as voicemails, instant messages, text messages, postings on social media and micro-blogging sites, and email headers for emails retrieved from third party servers (such as Yahoo or Hotmail). The various agencies of the United States have varying abilities to

preserve these categories of information, but on the whole, the preservation of these categories of information is not within the technical or budgetary ability of the United States at this time.  *See, e.g.*, Decl. of J. Wood (Dec. 17, 2010) (Ex. 3); Decl. of V. Noga ¶¶ 5-6 (Dec. 16, 2010) (Ex. 4).  Moreover, the United States has taken steps to reduce the potential for relevant information to be stored in these categories of information by issuing instructions to its employees directing them to avoid the use of these technologies for transmission of potentially relevant information.  For these reasons, the proposed order would exempt these categories of information from the preservation obligation as well.  Proposed Order ¶¶ 14.b., c., d., m., o.[4]

### 3. Management of Electronic Information

Pretrial Order No. 1 defines preservation as "the obligation not to alter any such [potentially relevant information] as to its form, content or manner of filing."  PTO 1 ¶ 14.  Read strictly, this provision prevents the United States from moving potentially relevant electronic data from its active environment to a more secure archive location.  The large volume of data generated in the response would likely cause significant operational difficulties for several agencies if they were precluded from moving the data from their active environment to a centralized repository.  *See, e.g.,* Decl. of L. Furgione, ¶¶ 5–7 (Dec. 16, 2010) (Ex. 5).  In addition, allowing the centralization of information (where appropriate) is likely to improve the security of the information, since access can be restricted to individuals fully briefed on the preservation obligation.

For these reasons, the proposed order specifies that the United States may preserve electronically stored information by making a "forensically sound copy" of the file and, having

---

[4] The proposed Order would also exclude the obligation to preserve "metadata other than metadata identified on Exhibit 1 to Pretrial Order 16."  Proposed Order ¶ 14.n. Pretrial Order 16 governs the format for production and specifies the metadata fields that must be produced in response to discovery requests.

done so, may dispose of the original in the ordinary course of its business.  The order defines a "forensically sound" copy to mean a copy that includes the data itself and relevant metadata – including custodian, creation date, and other application and file metadata.

### C. Proposed Clarifications to Pre-Trial Order No. 1, Paragraph 14

Though the scope and nature of the United States' response to this tragedy was unprecedented, it still did not involve all agencies within the federal government.  To ensure the United States is meeting the requirements of the Court's Order and to provide notice to all parties as to the affected agencies, the United States proposes that the Court define the United States for purposes of the preservation obligation as those agencies involved in the leasing and development of the Macondo well, as well as the agencies involved in the response and investigative activity, and any other person who possesses information within the custody and control of these departments and agencies.  Similarly, the proposed order clarifies that information gathered by individual employees on their personal time is not within the possession, custody, or control of the United States or the State.

### III. Conclusion

The attached proposed order is consistent with the key elements of the Court's Pretrial Order No. 1.  The differences and clarifications proposed by the United States will ensure preservation of truly relevant information, clarify the information the United States cannot and therefore will not preserve, and improve the efficiency of discovery with respect to information in the possession, custody, or control of the United States.  Liaison Counsel do not object to the substance of these provisions, though the Defendants and the State of Louisiana seek their application to all parties in the litigation.  For these reasons, the United States respectfully requests entry of the order attached as Exhibit 1 to this Motion.

Respectfully submitted,

IGNACIA S. MORENO
Assistant Attorney General
Environment & Natural Resources
 Division

JAMES NICOLL
 Senior Counsel
NANCY FLICKINGER
 Senior Attorney
SARAH HIMMELHOCH
 Senior Attorney
DEANNA CHANG
 Trial Attorney

SCOTT CERNICH
 Trial Attorney
A. NATHANIEL CHAKERES
 Trial Attorney
JUDY HARVEY
 Trial Attorney
MATT LEOPOLD
 Trial Attorney

/s/ Steven O'Rourke
STEVEN O'ROURKE
Senior Attorney
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
Telephone: 202-514-2779
Facsimile: 202-514-2583
E-mail: steve.o'rourke@usdoj.gov

TONY WEST
Assistant Attorney General
Civil Division

PETER F. FROST
Director, Torts Branch, Civil Division
Admiralty and Aviation
STEPHEN G. FLYNN
Assistant Director
MICHELLE DELEMARRE
Trial Attorney

SHARON SHUTLER
Trial Attorney
JESSICA SULLIVAN
Trial Attorney
JESSICA MCCLELLAN
Trial Attorney
DAVID PFEFFER
Trial Attorney
Torts Branch, Civil Division
P.O. Box 14271
Washington, D.C. 20044-4271
Telephone: 202-616-4000
Facsimile: 202-616-4002

/s/ R. Michael Underhill
R. MICHAEL UNDERHILL, T.A.
Attorney in Charge, West Coast Office
Torts Branch, Civil Division
U.S. Department of Justice
7-5395 Federal Bldg., Box 36028
450 Golden Gate Avenue
San Francisco, CA 94102-3463
Telephone: 415-436-6648
Facsimile: 415-436-6632
E-mail: mike.underhill@usdoj.gov

JIM LETTEN
United States Attorney
SHARON D. SMITH
Assistant United States Attorney
Eastern District of Louisiana
Hale Boggs Federal Building
500 Poydras Street, Ste. B-210
New Orleans, LA 70130

Attorneys for the UNITED STATES OF AMERICA