UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 NOV 14  AM 10: 46

LORETTA G. WHYTE
CLERK

| | | |
|---|---|---|
| **PATRICK JOSEPH TURNER, ET AL.** | * | CIVIL ACTION |
| **VERSUS** | * | NO. 05-4206<br>CONSOLIDATED CASE |
| **MURPHY OIL USA, INC.** | * | SECTION "L" (2) |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**THIS DOCUMENT RELATES TO ALL CASES**

### ORDER AND REASONS

Before the Court is the Plaintiffs' Motion to Supervise Ex Parte Communications Between Defendant and Putative Class Members. This motion came on for hearing before the Court with oral argument on November 3, 2005. For the following reasons, the motion is hereby GRANTED IN PART.

**I.      Factual and Procedural Background**

These consolidated cases arise from one of the more unfortunate events that occurred after Hurricane Katrina struck southeastern Louisiana earlier this year. Sometime in the first few days of September 2005, a day or so after Katrina struck, a crude oil tank at the refinery owned by Defendant Murphy Oil USA, Inc. ("Murphy Oil") in Meraux, Louisiana discharged an unknown quantity of crude oil into the surrounding area in St. Bernard Parish. The exact number is unknown at this point, but it is contended that several thousand homes received some oil from the spill.

Plaintiffs are residents of St. Bernard Parish who allege that the oil spill damaged their properties. Plaintiffs have filed nineteen class action lawsuits which have been consolidated



-1-

before this Court. On September 27, 2005, Plaintiffs' counsel in *Tommy Duckert, et al. v. Murphy Oil USA, Inc.*, Civil Action Number 05-4210, filed a Motion to Enjoin Any and All Ex Parte Communication Between Murphy Oil and Putative Class Members. Plaintiffs alleged that representatives of Murphy Oil were issuing inaccurate and overreaching statements to residents of St. Bernard Parish. That motion came on for expedited hearing on October 4, 2005, and was denied on that date. The Court held that there was no need for a blanket order prohibiting all communication between the Defendant and residents of St. Bernard Parish based upon the record at that time. The Court determined that such an order would unduly infringe upon Murphy Oil's First Amendment rights and was not justified by any specific evidence of coercion or duress. However, Plaintiffs retained their rights to challenge individual communications by Murphy Oil.

Thereafter, Murphy Oil has continued to issue informational communiques and have undertaken to make settlement proposals to residents who have contacted Murphy Oil and expressed an interest in amicably resolving their damage. On October 25, 2005, Plaintiffs filed the present Motion to Supervise Ex Parte Communications Between Defendant and Putative Class Members. The motion was set for expedited hearing with oral argument on November 3, 2005.

II.     **Plaintiffs' Motion to Supervise Ex Parte Communications Between Defendant and Putative Class Members**

Plaintiffs' present motion is somewhat different from their previous motion in that it asks the Court to supervise, rather than completely prohibit, communications between Murphy Oil and putative class members. In particular, Plaintiffs seek the following relief: 1) prohibition of

communications between Murphy Oil and putative class members unless the communications are recorded or transcribed; 2) filing of all written communications and oral transcripts between Murphy Oil and putative class members with the Court; 3) requirement that all settlement offers be in writing and provide for a 14-day cooling-off period; 4) requirement that all settlement offers give notice to the putative class member of the present litigation; 5) requirement that all settlement offers warn putative class members to seek legal advice prior to settlement; and 6) requirement that all settlement offers contain a statement that the agreement waives all rights to pursue litigation in the future.

In their motion, Plaintiffs argue that Murphy Oil's communications with residents of St. Bernard Parish threaten to undermine the purpose of the class. Moreover, putative class members may be unduly influenced by Murphy Oil's strategies due to the severe financial hardships many face, Plaintiffs argue. In addition, Plaintiffs suggest that Murphy Oil's communications are misleading and require the Court's monitoring. Plaintiffs point to Murphy Oil's communications in mass media, their use of settlement offices and a toll-free number, their use of independent consultants, and their settlement process as areas in which Murphy Oil is engaging in problematic speech.

However, Defendant argues that there is no legitimate reason for restricting Murphy Oil's communications with residents of St. Bernard Parish. Primarily, Defendant argues that there is no clear evidence of abuse in the communications at issue here. There is no evidence of threats or coercion, and the Defendant is in no position of control over putative class members. Moreover, Plaintiffs' counsel equally have used mass media and other marketing tools to contact putative class members about the litigation. Defendant argues that the supervision requested by

Plaintiffs would constitute a prior restraint on Murphy Oil's and St. Bernard Parish residents' First Amendment rights to free speech and free association, and as such should be denied.

a. **Law and Analysis**

As stated in the Court's October 4, 2005 Minute Entry in this matter, district courts enjoy broad discretion under Rule 23 of the Federal Rules of Civil Procedure to make appropriate orders imposing conditions upon the parties in class actions. Fed. R. Civ. P. 23(d). However, because orders limiting the communication of defendants impinges upon a defendant's First Amendment right to free speech, "an order limiting communications must be based upon a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Lee v. American Airlines, Inc.*, 2002 WL 226347 *2 (N.D.Tex. Jun. 19, 2001), citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 (1981).

A defendant's speech to putative class members is considered commercial speech, because the defendant's economic interest in reducing its litigation costs is involved. *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1204 n.22 (11th Cir. 1985). Because this speech is commercial speech, a defendant's communications with potential class members does not enjoy heightened First Amendment protection. *Id.* at 1204. Also, a district court may freely prohibit false or misleading speech by a defendant, and may restrict a defendant from using methods of speech that are inherently coercive or prone to abuse, like oral solicitation. *Id.* at 1204 & 1206. As the Eleventh Circuit has stated, "[u]nsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without opportunity for rebuttal. The damage from misstatements could well be irreparable." *Id.* at 1203.

In other cases, district courts have limited a defendant's communications with putative class members in situations in which defendants engaged in speech that was clearly coercive or threatening. For example, in *Kleiner*, the defendant, a bank, called its customers, the putative class members, in a massive telephone solicitation and demanded that they opt out of a potential class action. *Id.* at 1198. The district court and Eleventh Circuit found that the oral, unsolicited communication by the bank was inherently coercive and threatening both because of the way it was conducted (by telephone) and because of the ongoing business relationship between the bank and its customers. *Id.* at 1206-07.

Similarly, in *Hampton Hardware, Inc. v. Cotter & Company*, the defendant, a hardware wholesaler, had an ongoing business relationship with the putative class members, individual stores that received supplies from the wholesaler. 156 F.R.D. 630, 631 (N.D. Tex. 1994). The defendant sent letters to putative class members that specifically mentioned the litigation and its possible financial costs to the class members. *Id.* at 631. The district court held that these letters were threatening due to the parties' ongoing relationship, and prohibited the defendant from discussing the litigation with putative class members. *Id.* at 632.

However, in *Burrell v. Crown Central Petroleum, Inc.*, the district court determined that an order prohibiting communication between the defendant and putative class members was not appropriate. 176 F.R.D. 239, 245 (E.D. Tex. 1997). In that case, a group of employees sued their employer for sexual and racial discrimination. *Id.* at 241. The employer sent a mass email to its employees informing them of the litigation, and posted this email at the workplace. *Id.* Also, the employer held two informational meetings with employees to discuss the litigation. *Id.* None of these communications threatened the employees or asked them to opt out of the litigation. *Id.*

The district court found that the putative class members could not show specific instances of harm from these communications; thus, an order prohibiting the defendant's speech was inappropriate. *Id.* at 244-45.

In the present motion, Plaintiffs have challenged a range of different communications between Murphy Oil and residents of St. Bernard Parish. The Court finds it useful to address each type of communication individually to determine whether a potential for serious abuse exists. If such potential exists, restriction or supervision of Murphy Oil's communications would be appropriate. *Kleiner*, 751 F.2d at 1206.

### 1. Open Letters and Advertisements in Local Media; Settlement Offices

According to Plaintiffs, Murphy Oil has published at least two "open letters" and one full-page advertisement in local newspapers in New Orleans and Baton Rouge in September and October 2005. In these advertisements, Murphy Oil discusses the oil spill and offers a toll-free number for residents to call who have been affected by the spill. Murphy Oil states in several of these advertisements that the most of the oil has been recovered or has evaporated. In the October 24, 2005 advertisement, Murphy Oil states that it will contact residents who have previously called Murphy Oil for the purposes of settlement of their claims. Although the details have not been presented to the Court, counsel allege that similar advertisements have been posted on the Internet as well.

In addition, it has been well-publicized that Murphy Oil has set up five offices for settlement of claims regarding the oil spill. Plaintiffs object to the opening of these offices for the same reasons that they object to Murphy Oil's use of a toll-free number: Plaintiffs allege that there is inherent potential for coercion and abuse in an oral, in-person, unsupervised meeting

between a putative class member and representatives of the Defendant.

Plaintiffs argue that these communications should be prohibited because Murphy Oil is using the ads and settlement offices to shrink the size of the class. Plaintiffs contend that this effort is at odds with the purposes of Rule 23 of the Federal Rules of Civil Procedure. In addition, Plaintiffs argue that the use of the toll-free number and settlement offices creates oral, unsupervised communication between the defendant and putative class members that is particularly problematic.

The Court agrees with Plaintiffs in principle that oral, unsupervised solicitations by counsel are a type of communication that is particularly subject to abuse. However, in this case, the danger of abuse appears to be low. Murphy Oil is not making targeted, oral solicitations to individuals for settlement: any oral communication that occurs between the defendant and a resident of St. Bernard Parish is initiated by the *resident*, not by Murphy Oil. Plaintiffs also underestimate their own media access and the media access of the residents of St. Bernard Parish. The present cases have been well-publicized, and Plaintiffs' counsel have taken out their own advertisements regarding the oil spill. In addition, local government and federal agencies have made much information available about the oil spill and its effects. This is not a case in which a defendant has a monopoly on the information available to putative class members.

Moreover, Murphy Oil set up these claims offices two months after Hurricane Katrina: claimants have had time to deliberate and consider what to do with their properties. In addition, Murphy Oil has no ongoing relationship with the putative class members, except in that both are residents of St. Bernard Parish. Murphy Oil is not in a position to force individuals into settlement. Plaintiffs have not presented evidence of threats or coercion.

However, given the potential for abuse inherent in any unsupervised oral communication in this context, IT IS ORDERED that Defendant Murphy Oil shall begin any communication with a putative class member with the statement that the individual has a right to consult with an attorney prior to any settlement or waiver of legal rights. The Court specifically finds that such a statement will not unduly burden Defendant's First Amendment right to speak on its own behalf. Communication can continue, while the interests of putative class members in receiving independent information is protected.

In addition, Murphy Oil shall not initiate contact with any individual who has not previously contacted Murphy Oil. The Defendant shall comply with Rule 4.2 of the Louisiana Rules of Professional Conduct and not communicate with persons already represented by counsel.

2. **Communication Regarding Murphy Oil's Use of the Center for Toxicology and Environmental Health**

Plaintiffs further argue that Murphy Oil is misleading residents of St. Bernard Parish about its relationship with the Center for Toxicology and Environmental Health ("CTEH"), a private consulting and testing firm. Murphy Oil has hired CTEH to perform testing of public and private property in the area of the oil spill, and CTEH has published its preliminary results on the St. Bernard Parish government Web site and Murphy Oil's Web site. Murphy Oil has stated in mailings to parish residents that CTEH has determined that there will be no long- or short-term health or safety hazards from the spill. Plaintiffs object to these communications for two reasons. First, Murphy Oil does not clearly state that the CTEH is a paid consultant of Murphy Oil, and not an independent agency. Second, Plaintiffs allege that Murphy Oil

deliberately presents CTEH as a quasi-official agency by placing it on equal footing with agencies like the Environmental Protection Agency and Louisiana Department of Environmental Quality. Plaintiffs argue that Murphy Oil's communications about CTEH may mislead putative class members into believing they are receiving objective, unbiased information from the firm. Defendants argue that CTEH is a reputable organization that is conducting unbiased testing, and that there is no intent to deceive residents. Defendants further contend that CTEH's test results are similar to those issued by the EPA.

The Court finds that Murphy Oil's public representations regarding the Center for Toxicology and Environmental Health can be misleading. Accordingly, IT IS ORDERED that, if the CTEH has been retained by Murphy Oil, Murphy Oil shall disclose its relationship with the CTEH in all public communications regarding the CTEH. If the CTEH is not a governmental regulatory agency, Murphy Oil shall disclose that fact as well in all public communications involving the CTEH.

### 3. Claimant Intake Forms

Plaintiffs also object to the format and content of intake forms used by Murphy Oil to process claims from residents of St. Bernard Parish. When a claimant calls the toll-free number or visits one of Murphy Oil's settlement offices, the claimant is asked to complete an intake form, which asks questions regarding ownership of the property, and requests information regarding the claimant's insurance coverage. The form also asks whether the claimant will consent to testing on his or her property; however, the form also states that by signing it, the claimant consents to testing on his or her property. Plaintiffs argue that the form is misleading in a number of respects. The form seeks information on insurance coverage, ostensibly for proof of

Case 2:10-md-02179-CJB-DPC Document 912-5 Filed 12/21/10 Page 10 of 12
Case 2:05-cv-04206-EEF-JCW Document 39-2 Filed 11/14/2006 Page 10 of 12

ownership of the property, but Plaintiffs argue that this information could also be used to "low-ball" a claimant for settlement. Also, there is no disclaimer that this information could be used in future litigation. Plaintiffs also argue that the question regarding consent to testing is confusing, in that a claimant automatically consents to testing by signing the form. Again, there is no disclaimer that any information gathered during testing could be used in future litigation.

Murphy Oil argues that it requests insurance coverage from claimants for the same reason that FEMA and other government agencies have been requesting this information: insurance coverage is solid evidence of ownership. Murphy Oil alleges that the mortgage and conveyance office in St. Bernard Parish has been destroyed, and that it is difficult to establish ownership without this information. In addition, Murphy Oil contends that the consent to testing on the intake form is harmless, in that the testing itself is beneficial.

The Court finds that the intake form used by Murphy Oil can be misleading. If claimants wish to consent to testing of their properties, Murphy Oil should offer that option to them clearly because there could be evidentiary issues that arise from the testing. Accordingly, IT IS ORDERED that the final sentence of the intake form shall be deleted in all future versions of the form. This sentence reads, "By signing and returning this form you consent to testing on your property by environmental specialists hired by Murphy Oil Corporation."

### 4. Settlement and Release Agreement

Plaintiffs also object to the template that Murphy Oil is using for settlement of claims. Plaintiffs argue that the Settlement and Release Agreement contains numerous waivers using technical legal language, and that a claimant or lay person would not understand the consequences of these waivers without independent legal advice. Moreover, Plaintiffs object to

Addendum A to the agreement, which Plaintiffs allege requires homeowners to remove their oil-damaged belongings and to gut their houses of drywall prior to Murphy Oil's cleanup of the properties. Plaintiffs argue that under Louisiana law Murphy Oil may have an absolute duty to cleanup the entire property, and that an agreement requiring a homeowner to cleanup these materials is premature. Defendants counter that the Agreement speaks for itself and is clear about what rights an individual is surrendering through settlement.

The Court considers the Settlement and Release Agreement to be a communication with a putative class member by Murphy Oil. As such, the Settlement and Release Agreement should contain a statement that the individual signing the agreement should seek independent legal advice prior to any settlement or waiver of his or her legal rights. This statement should be adequate to protect the interests of putative class members.

### III.  Conclusion

Accordingly, the Plaintiffs' Motion to Supervise Ex Parte Communications should be and hereby is GRANTED IN PART. IT IS ORDERED that Defendant Murphy Oil shall begin any communication with a putative class member with the statement that the individual should consult with an attorney prior to any settlement or waiver of legal rights. Murphy Oil's settlement agreements with putative class members should also contain this statement. In addition, Murphy Oil shall not initiate contact with any individual who has not previously contacted Murphy Oil. The Defendant shall comply with Rule 4.2 of the Louisiana Rules of Professional Conduct and not communicate with persons already represented by counsel.

In addition, IT IS ORDERED that, if the Center for Toxicology and Environmental Health has been retained by Murphy Oil, Murphy Oil shall disclose that the CTEH is a paid

-11-

consultant of Murphy Oil in all public communications regarding the CTEH. If the CTEH is not a governmental regulatory agency, Murphy Oil shall disclose that fact as well in all public communications involving the CTEH.

Regarding the claimant intake forms used by Murphy Oil, IT IS ORDERED that the final sentence of the intake form shall be deleted in all future versions of the form. This sentence reads, "By signing and returning this form you consent to testing on your property by environmental specialists hired by Murphy Oil Corporation."

New Orleans, Louisiana, this 10th day of November, 2005.

UNITED STATES DISTRICT COURT