UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, on APRIL 20, 2010 | * * * * * | MDL NO. 2179 |
| THIS DOCUMENT RELATES TO: | * * | JUDGE BARBIER |
| ALL CASES | * * | MAG. JUDGE SHUSHAN |

*******************************************

## DECLARATION OF BASILE J. UDDO

**Before me, undersigned notary, came and appeared Basile J. Uddo, who did depose and say:**

1. That he is an attorney licensed to practice in the State of Louisiana and admitted to practice before this Honorable Court.

2. That he serves as ethics counsel to the Plaintiffs' Steering Committee ("PSC") in the above referenced matter.

3. That in that capacity he has been asked to review certain materials related to the operation of the Gulf Coast Claims Facility ("GCCF") and Mr. Kenneth Feinberg, specifically related to the application of the Louisiana Rules of Professional Conduct ("LRPC") and general rules and principles of legal ethics.

4. That his opinions in this matter are based upon his professional education, training, and expertise. Specifically, that he was a full-time professor of law at Loyola Law School from 1975 to 1997, during which time his areas of concentration were professional responsibility and legal ethics, torts and constitutional law. That he taught courses in legal ethics each of his twenty-two years on the full-time law school faculty. That he has represented numerous lawyers in the Louisiana attorney discipline system at all stages including disciplinary counsel screening, negotiation of consent discipline, presenting cases before hearing committees, the disciplinary board and the Louisiana Supreme Court. That he has advised attorneys and class action counsel in various major litigations, including the Murphy Oil Litigation, the Katrina/MR-GO Litigation, the Katrina/Road Home Litigation, the Vioxx Class Action Litigation, the Louisiana Tobacco Litigation, and the Welding Rod Litigation, among others. That he has been appointed on four occasions by the Louisiana Supreme Court to act as a Special Disciplinary Counsel to investigate and, when necessary, prosecute complaints against members of the disciplinary system, including members of the Disciplinary Board and the Office of Disciplinary Counsel. That he investigated and prosecuted a

**EXHIBIT B**

former chairman of the Louisiana Attorney Disciplinary Board, resulting in his disbarment. That he has recently served on a Louisiana State Bar Association (LSBA") committee charged with the responsibility of drafting a handbook on lawyer advertising to implement the new Louisiana Supreme Court rules on lawyer advertising. That he previously served as a liaison between the National Board of the Legal Services Corporation and the ABA to review and amend the Model Rules of Professional Conduct as they apply to providing civil legal services to the poor. That he also regularly teaches continuing legal education seminars on legal ethics, professional responsibility and professionalism. That he has served as an expert in legal ethics and the LRPC in litigation in both state and federal courts.

5. That in connection with this Declaration he has reviewed numerous press releases, press clips, and news articles from or related to the GCCF and Mr. Feinberg. That he has also reviewed a video compilation of pertinent comments by Mr. Feinberg. (See attached DVD). That, in addition, he has reviewed the GCCF web-site, various GCCF protocols and application forms, including the final payment release and covenant not to sue. That he has also reviewed transcripts of certain Court proceedings.

6. That among the issues of concern in his evaluation was whether the GCCF and Mr. Feinberg are truly independent of BP, which is of great significance in determining whether Mr. Feinberg has engaged in misleading communications with unrepresented parties contrary to LRPC, Rule 4.3 and Rule 2.4 (b).

7. That his review indicates that Mr. Feinberg has consistently made public statements that he is independent of BP. That it is, however, undisputed that Mr. Feinberg was hired by BP and is being paid by BP. That there is also evidence that BP lawyers communicate with Mr. Feinberg, and at least at one status conference with the Court they have purported to speak on behalf of Mr. Feinberg. That based upon his review, Mr. Feinberg's independence from BP is unsupported by any facts in the public realm and is questionable, at best. That the absolute statements of independence by Mr. Feinberg are misleading, particularly to unrepresented claimants.

8. That recently Mr. Feinberg has communicated the GCCF "Release and Covenant Not to Sue" ("Release") directly to putative class members, among others. That Mr. Feinberg is requiring claimants to sign this Release before receiving their "final payments".

9. That the Release is a highly technical and legally significant document that few non-lawyers could fully comprehend. That the Release includes numerous provisions that can only be interpreted as very favorable to BP and not in the best interest of claimants. That at no point in the Release, despite various bold cautions, is there any reference encouraging a claimant to seek or obtain independent legal advice or representation before executing the Release.

10. That although contact with putative class members by a representative of a defendant is not prohibited by the LRPC, or general legal ethics rules there are ethics requirements that must be followed to assure protection of putative class members. See LRPC Rule 4.3 and ABA Formal Opinion 07-445 ("ABA Opinion").

11. That both Rule 4.3 and the ABA Opinion limit such contacts to factual inquiries and prohibit a contacting lawyer from giving "legal advice other than advice to engage counsel".

12. That Mr. Feinberg has repeatedly disseminated the contrary legal advice to putative class members, that they do not need legal representation and that it is in their best interest to sign the comprehensive Releases, without limitation or hesitation. Examples of such statements are:

    > You will get money quicker. You will get money with a certainty. You don't have to give 40% to your lawyer. Come in and get a check.
    >
    > Should you litigate? Is it a good idea? Absolutely not, it's a mistake; it's a mistake to litigate, but that's your choice. If you litigate, years of litigation, years! You may not win in your litigation against BP, and if you do win, give forty percent to your lawyer.
    >
    > I would urge everybody to file with this program and get your emergency payments if you're eligible. If I'm not going to pay you, I am dubious that you'll go to court and get paid.
    >
    > Why litigate? If I won't pay you, I urge, no one will pay you—the law is much more rigorous than I will be.[1]

13. That Mr. Feinberg's actions are directly contrary to Rule 4.3 and the ABA Opinion.

14. That the risk of harm to putative class members is exacerbated by the insistence of both BP and Mr. Feinberg that Mr. Feinberg is "independent" of BP, which is misleading to putative class members who would reasonably be mislead into believing that they do **not** need their own (or class) counsel and that Mr. Feinberg's "advice" that the Release is in their best interest is accurate and reliable. All of which is in further contravention of Rule 4.3:

    > In dealing on behalf of a client with a person who is unrepresented by counsel, **a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in a matter, the lawyer shall make reasonable efforts to correct the misunderstanding.** (Emphasis added.)

15. That based upon his comprehensive review of the above-referenced materials, Declarant believes that Mr. Feinberg has not undertaken to clarify his misleading

---

[1] See attached DVD, which contains references to these comments, some of which are available on youtube.com.

statements, which statements could only result in the confusion sought to be ameliorated by Rule 4.3.

16. That in order to comply with Rule 4.3 and the ABA Opinion at a minimum the Release should contain a clear admonition that a claimant should seek independent legal advice before deciding to accept the proffered "final payment" and sign the Release.

17. That, should it be determined that Mr. Feinberg is not a representative of BP and that he is a "third party neutral", based upon the facts presented for review, Mr. Feinberg has not adhered to the rules applicable to a "third party neutral" as defined in LRPC, Rule 2.4 (b), which says in part:

> A lawyer serving as a third-party neutral **shall** inform unrepresented parties that the lawyer is not representing them. When the lawyer knows or reasonably should know that a party does not understand the lawyer's role in the matter, the lawyer shall explain the differences between the lawyer's role as third-party neutral and a lawyer's role as one who represents a client. (Emphasis added.)

18. That Mr. Feinberg has actually done the opposite. Many of his public statements, which are intended to reach unrepresented claimants, have misrepresented Mr. Feinberg's role and allegiances. That the same is true of the GCCF web-site and associated links, attachments and other documents.

19. That based upon these statements and associated materials, it appears highly unlikely that claimants would understand Mr. Feinberg's role.

20. That at best, there is massive confusion over his role, at worst he has mislead claimants. That the disclosure requirement of Rule 2.4 (b) is mandatory, and says the lawyer "shall inform" unrepresented parties.

21. That commentary on the Rule emphasizes this point:

> ....paragraph (b) **requires** the lawyer serving as a third-party neutral to inform unrepresented parties in **all** cases that the lawyer does not represent them. **The potential for confusion is sufficiently great to mandate this requirement in all cases involving unrepresented parties.**[2]

> ....paragraph (b) requires a lawyer-neutral to inform unrepresented parties that the lawyer is not representing them. For some parties, particularly parties who frequently use

---

[2] See D. Ciolino, Louisiana Professional Responsibility Law and Practice (2004) at Rule 2.4, comments (emphasis added).

4

dispute resolution, this information will be sufficient. **For others, particularly those who are using the process for the first time, more information will be required....The extent of disclosure required under this paragraph will depend on the particular parties involved and the subject matter of the proceeding, as well as the particular features of the dispute-resolution process selected.**[3]

22. That based upon the facts presented, it appears that Mr. Feinberg is not independent of BP and therefore he is in violation of Rule 4.3 in his contacts and communications with unrepresented claimants. Alternatively, should it be argued or determined that Mr. Feinberg is a "third party neutral" the facts support that he has violated Rule 2.4 (b) by not making the mandatory disclosures to unrepresented claimants.

23. That both Rule 4.3 and Rule 2.4 (b) of the Louisiana Rules of Professional Conduct are based upon the ABA Model Rules of Professional Conduct and have counterparts in most states.

Signed this __15th__ day of December, 2010.

_____
Basile J. Uddo

_____
Notary  Soren Gisleson
Bar No. 26302

---

[3] Annotated Model Rules of Professional Conduct (ABA, 5th ed.) at Rule 2.4, comment [3] (emphasis added).

5