

En Espanol | Đối với Việt Nam

- Home
- Frequently Asked Questions
- Claimant Bill of Rights
- Town Hall Meetings / Events
- Press and News Releases
- Protocol and Eligibility Criteria
- Contact Information for Claims Not Covered by the GCCF
- Claim Filing Instructions
- File a Claim Form Online
- File a Paper Claim Form
- File a Claim Form in Person
- Claims Site Offices
- Check Claim Status
- To Report Fraud
- Contact Us

August 26, 2010

## The Gulf Claims Racket

**The lawyers are upset they aren't getting more of the action.**

When is $20 billion in ready cash not enough? Answer: When state Attorneys General and the plaintiffs bar are vying for a bigger chunk of the BP compensation fund that is supposed to go to victims of the Gulf of Mexico oil spill.

That's the real story behind the headlines about unhappiness over Kenneth Feinberg's terms for payments under the Gulf Coast Claims Facility. As administrator, er, King Solomon of this exercise, Mr. Feinberg has to make difficult judgments as he attempts to compensate genuine victims while not rewarding freeloaders. Plaintiffs attorneys and their AG pals seem to be afraid that they'll be cut out of the action.

You know the usual suspects. There's Mississippi AG Jim Hood, aka Dickie Scruggs's former comrade in class actions, who told a Biloxi TV station that "We took Mr. Feinberg behind the woodshed for a couple of hours to express our concerns about the draft claims protocol he had circulated." When it comes to personal bluster, Mr. Hood is the Rod Blagojevich of the Gulf Coast.

Then there's Alabama AG Troy King, who called Mr. Feinberg a "corporate shill" of BP. Only in Mr. King's populist neverland could a "shill" be defined as someone paying out $20 billion of a corporation's shareholder wealth.

We can't forget Florida AG Bill McCollum, who called Mr. Feinberg's liability terms "completely unacceptable." Mr. McCollum has usually opposed trial lawyer machinations across his long political career, but until he lost the GOP primary on Tuesday he was running for Governor, and, well, you gotta do what you gotta do, as Bill Clinton once famously said of his 1996 Mediscare TV ads.

What are Mr. Feinberg's supposedly onerous terms? Well, claimants can file through November 23 and receive an immediate cash payment for up to six months of emergency relief without forfeiting any legal right to sue BP. They can take that money and hire a lawyer if they'd like. The same claimants then have three years to apply for a final loss settlement, and only if they accept that Feinberg offer would they have to give up their right to sue.

So let's see. A Gulf Coast shrimper can get immediate emergency cash, plus a larger final settlement from Mr. Feinberg in relatively short order. The money is taxable as income, but otherwise the shrimper can keep it all.

Or, instead of accepting a final settlement offer, that shrimper can hire one of Mr. Hood's plaintiffs bar friends, wait years to see how the litigation plays out, and then pay 40% of his share of any settlement to the lawyer as a contingency fee. Which process sounds fairer to the victims?

One lawyer gripe is that Mr. Feinberg wants to deduct from settlements any wages that BP paid to fishermen for helping to clean up the spill. BP hired those fishermen in part to subsidize their losses due to their inability to pursue their livelihood. In legal terms, this is known as mitigation, and any court in the U.S.-even in Alabama-would take such payments into consideration as part of a settlement.

Mr. Feinberg is also criticized for demanding documentation such as income tax returns or other proof of loss, especially since much of the Gulf economy seems to run on a cash (not to say, tax-avoiding) basis. Others complain that Mr. Feinberg has set too narrow a geographic limit-within five miles of the coast-for some business claims.

These are all judgment calls, but Mr. Feinberg has to be on the lookout for fraudulent or dodgy claims that are certain to proliferate any time a $20 billion honey pot is on the table. Is a hotel 100 miles from the coast that complains of lost business really a victim of the spill, especially when the beaches are now clean and welcoming?

BP paid some $400 million in claims before Mr. Feinberg took over, and the company is now investigating many of those as possibly phony. We're told that one man filed more than 10 claims



EXHIBIT __I__

in multiple BP offices using the same name and was paid for every one. (BP had 35 claims offices and a decentralized process for making payouts.)

No doubt the documentation and geographic demands will work to the disadvantage of some claimants, though Mr. Feinberg will also have every political incentive to make the payouts generous and widespread enough to damp down any public uproar.

The danger is that all of this loud lawyer complaining will drive some victims away from making claims through the $20 billion facility in hopes of a bigger payday if they sue. This is a risky proposition that could mean they never get a dime of compensation. There's no guarantee that the courts will be more generous than Mr. Feinberg, especially as the damage from the spill recedes and Gulf fisheries and tourism return to normal.

We would have preferred that the Gulf claims follow the regular laws of liability, but President Obama insisted on the $20 billion fund and BP agreed to an offer it couldn't refuse. The best path now is to let Mr. Feinberg get on with judging claims and getting cash to the victims as soon as possible so they can get back to making a living and the Gulf economy can revive.

Printed in The Wall Street Journal, page A14 Copyright 2009 Dow Jones & Company, Inc. All Rights Reserved This copy is for your personal, non-commercial use only. Distribution and use of this material are governed by our Subscriber Agreement and by copyright law. For non-personal use or to order multiple copies, please contact Dow Jones Reprints at 1-800-843-0008 or visit www.djreprints.com

###



Home

Frequently Asked Questions

Claimant Bill of Rights

Town Hall Meetings / Events

Press and News Releases

Protocol and Eligibility Criteria

Contact Information for Claims Not Covered by the GCCF

Claim Filing Instructions

File a Claim Form Online

File a Paper Claim Form

File a Claim Form in Person

Claims Site Offices

Check Claim Status

GCCF Program Statistics

To Report Fraud

Contact Us

En Español | Đối với Việt Nam

New York Times

August 29, 2010

## Mr. Feinberg and the Gulf Settlement

Kenneth Feinberg, charged with administering BP's $20 billion compensation fund, has been here before. A master mediator, he showed compassion and business sense when he settled claims for the families of those killed in the Sept. 11 attacks, Vietnam veterans damaged by Agent Orange, and women harmed by the defective Dalkon Shield birth control device.

Mr. Feinberg's plans for distributing BP's money, announced last Monday, seem magnanimous and fair. They would provide swift, short-term relief for Gulf Coast residents, and a process for measuring — and appropriately compensating — long-term losses. Mr. Feinberg must be willing to make adjustments along the way. But everyone will get a hearing, and his fund is sure to be vastly better than the BP operation it replaces.

That, of course, has not stopped the legal and political ambulance chasers from jumping on Mr. Feinberg, much as they did after 9/11. Lawyers complained that his approach would deprive victims of the settlements they could command in case-by-case litigation. Grandstanding politicians charged that Mr. Feinberg would go easy on the company because BP is paying his expenses and those of his army of adjusters in 35 Gulf Coast offices.

Mr. Feinberg can safely ignore them. BP should, after all, be paying the bill. And the point of the exercise is to help victims, not lawyers. At the same time, he must also remain flexible on important questions like eligibility and requirements for documentation.

Mr. Feinberg's preliminary guidelines for the final payouts, for instance, say that "proximity" to the gulf will factor heavily in who gets paid and how much. How close to the gulf is unclear. And while Mr. Feinberg must remain alert to fraud, he must allow for the fact that much of the gulf's fishing economy is cash-driven.

The program has two parts. Part one offers "emergency payments" equivalent to six months' lost income to any legitimate claimant. People have 90 days to file from Aug. 23, and anyone who receives a payment still has a right to sue. These payments will almost certainly be larger and quicker than the average check — about $3,200 — that BP has already doled out to 127,000 individuals. They can now file again. Mr. Feinberg calls this part of the program a no-brainer, and we agree.

Part two is trickier. It aims to provide compensation — "final payments," under the guidelines — to individuals and businesses for long-term damages. Claimants will have three years to estimate these damages and submit a claim. If they accept payment, they will waive their right to sue BP. As with the 9/11 fund, this part of the program is intended to be an expeditious, reliable alternative to tens of thousands of tort cases, sparing plaintiffs and the company alike the expense and uncertainty of drawn-out lawsuits.

In another sense, however, the BP fund is very different from the 9/11 fund. Then, the problem was to figure out how much a victim would have earned over the course of a working career, an agonizing but relatively straightforward actuarial exercise. In this case, where the full effects of the spill on, say, fish populations may not be known for years, it may be impossible for fishermen and Mr. Feinberg's experts to make more than informed guesses. Mr. Feinberg says he is well aware of these uncertainties, but without a deadline the claims process will go on forever.

After 9/11 Mr. Feinberg wrote checks totaling $7 billion to 5,300 families and injured individuals. Only 94 potential claimants went to court. Given his reputation, experience, and the amount of money on the table, it is clearly in the interests of every victim of this spill to give this program a careful, unemotional look. We probably cannot expect the lawyers to act responsibly. We do expect better of the politicians.

###

EXHIBIT
___J___

Gulf Coast Claims Facility

PRIVACY POLICY   |   ALL RIGHTS RESERVED

- En Español
- នៅក្នុងភាសាខ្មែរ
- Bằng Tiếng Việt

December 13, 2010

## Gulf Coast Claims Facility Announces Next Phase of the Compensation Program for Victims of the BP Oil Spill

Kenneth R. Feinberg, Administrator of the Gulf Coast Claims Facility (www.gulfcoastclaimsfacility.com) today announced that the Facility would begin providing additional compensation to the victims of the BP oil spill. All eligible claimants will have the opportunity to choose one of three compensation alternatives:

1. A lump-sum final payment for all documented past, present and future damage. Each eligible claimant choosing this option will be required to sign a full release giving up the right to sue BP and all other alleged defendant companies arising out of the explosion and spill.
2. Quarterly interim payments for documented past damage. Some eligible claimants, uncertain as to the future of the Gulf, may be reluctant to accept a final payment. Interim payments will be available to such eligible claimants once every quarter until the expiration of the Facility in August 2013. Quarterly interim payments will be made for documented past damage not previously covered by emergency payments. No release will be required under this option.
3. A one-time "quick pay" amount of $5,000 for an eligible individual or $25,000 for an eligible business. **This "quick pay" alternative is only available to those eligible claimants who have already received an emergency payment from the Facility (over 166,000 individuals and businesses have received such payments).** No further documentation need be submitted by any eligible claimant choosing this option. But a full release will be required. **Claimants submitting claims for the first time or claimants who were denied emergency payments will not be eligible for this option but may file either a lump sum fully documented final claim or a fully documented interim claim.**

"The goal in providing these three compensation alternatives is to give each and every eligible claimant an opportunity to choose which option is best. The choice is purely voluntary. In less than four months, the Facility has processed over 463,000 claims and paid about $2.5 billion to over 166,000 individuals and businesses," said Feinberg.

Feinberg also announced that a program for free legal assistance will soon be made available to any claimant seeking such help. He also announced that he is retaining the services of respected local citizens throughout the Gulf region to assist claimants during this next phase of the compensation program. "I have listened to those claimants and others who have urged me to retain the services of respected local individuals who can be available to answer questions at the various Claims Offices throughout the Gulf. Their physical presence should make the claims process more transparent and consistent."

**EXHIBIT K**

The necessary claim forms for the three payment options will be available at the end of this week on Friday at the various 35 Claims Offices and online (at www.gulfcoastclaimsfacility.com).

###

- Privacy Policy |
- All Rights Reserved

- Home
- Important Notices and Information
- Frequently Asked Questions
- Claimant Bill of Rights
- Town Hall Meetings / Events
- Press and News Releases
- Summary of Options for Filing Claims
- Protocol for Interim and Final Claims
- Emergency Advance Payment Protocol and Eligibility Criteria
- File a Claim Form Online
- File Paper Claim Forms
- File a Claim Form in Person
- Required Forms for Claimant Representatives
- Claims Site Offices
- View Quick Payment Final Claim Form
- Check Claim Status
- GCCF Program Statistics
- Contact Information for Claims Not Covered by the GCCF
- To Report Fraud
- Contact Us