```
 1                    UNITED STATES DISTRICT COURT

 2                    EASTERN DISTRICT OF LOUISIANA

 3

 4

 5

 6   IN RE:  OIL SPILL BY THE          *   Docket 10-1156 "J"
     OIL RIG DEEPWATER HORIZON         *
 7   IN THE GULF OF MEXICO ON          *   October 15, 2010
     APRIL 20, 2010                    *
 8                                     *   9:30 a.m.
                                       *
 9   This Document Relates to:         *
                                       *
10   All cases.                        *
                                       *
11   * * * * * * * * * * * * * * * * * *

12
                         PROCEEDINGS BEFORE THE
13                    HONORABLE CARL J. BARBIER
                     UNITED STATES DISTRICT JUDGE
14

15   APPEARANCES:

16
     For the Plaintiffs:         Domengeaux, Wright, Roy & Edwards
17                               BY:  JAMES P. ROY, ESQ.
                                 556 Jefferson Street
18                               Suite 500
                                 Post Office Box 3668
19                               Lafayette, Louisiana 70502

20
                                 Herman, Herman, Katz & Cotlar
21                               BY:  STEPHEN J. HERMAN, ESQ.
                                 820 O'Keefe Avenue
22                               New Orleans, Louisiana 70113

23

24

25
```



EXHIBIT N

```
 1   of lawyers involved in this case and a lot of law firms on both
 2   sides here.  I'm confident that you-all can handle this.
 3              Now, in terms of the precise scope of the
 4   discovery, I think once the plaintiffs start serving their
 5   discovery, you know, obviously the defendants know that they
 6   have rights to file for protective orders or contest the scope
 7   of discovery.  If that needs to be resolved, we can deal with
 8   those matters as they arise.
 9              The next item is the discovery related to the
10   Gulf Coast Claims Facility.  I know there are, and I know this
11   just from speaking with liaison counsel and from reading the
12   newspapers and watching the TV/media reports, that there have
13   been a lot of concerns by certain people in the public, by
14   certain attorneys about the Gulf Coast Claims Facility and how
15   that's operating and so forth.
16              But I don't see the relevance of discovery --
17   how the discovery of contracts or other communications between
18   BP and Mr. Feinberg's firm or his internal guidelines,
19   protocols, other documents, those sorts of things, really are
20   relevant to any claims involved in this litigation.
21              But if anybody wants to speak about that
22   further.  Mr. Herman?
23         **MR. HERMAN:**  Yes, Your Honor.  We understand the
24   Court's ruling and we don't want to belabor the issue.  But
25   Mr. Roy and I were discussing briefly after the conference what
```

1  had transpired and we were a little disturbed by BP's counsel's
2  statement during the conference that Mr. Feinberg was not BP's
3  agent.
4        Your Honor may recall that in a previous hearing
5  Your Honor had asked BP counsel, "Won't presentment to the
6  claims facility that Mr. Feinberg is running constitute
7  presentment to BP as the responsible party under OPA?"  And I
8  think the response was, "Yes, that will constitute
9  presentment."
10       And we just want to make sure, in light of the
11 statement that Mr. Feinberg is not BP's agent, we want to make
12 sure that he's at least BP's agent for the limited purpose of
13 presentment under OPA.
14       Thank you.
15     **THE COURT:**  Mr. Langan?
16     **MR. LANGAN:**  Your Honor, we've told the plaintiffs
17 before, and we're happy to say now, that we're not going to
18 take the position that if a claimant goes to the GCCF and
19 presents and is denied that they have to turn around and go to
20 BP too.  We've said that in writing.  We've said that before,
21 and we're happy to say that again:  Presentment to the GCCF is
22 adequate.
23       I don't think we need to get into the issue of
24 agency or not to make that point.
25     **THE COURT:**  Okay.

1    **MR. LANGAN:**  So that's not an issue.  And, obviously,
2    I'm not going to say anymore about the lack of relevance of the
3    discovery because we agree with Your Honor.
4         **THE COURT:**  Okay.  Very well.  So I'm going to deny
5    the plaintiff's request for discovery on the GCCF.
6              Now, there's a related issue that we'll talk
7    about in a little while, I think, regarding preservation of
8    evidence.  Is that on the agenda?  We talked about -- it's
9    somewhat related, the issue of preservation of
10   Mr. Feinberg's -- the information he's collecting.
11             Mr. Roy, you want to talk about that?
12        **MR. ROY:**  Sure, Your Honor.  But first I'd like to
13   ask the Court if we could clarify whether Mr. Langan's
14   statement on the record just now is, indeed, a stipulation for
15   purposes of this litigation.
16        **THE COURT:**  I took it as that.
17        **MR. ROY:**  We just need to know, because we haven't
18   had a stipulation.
19        **THE COURT:**  Well, let's ask Mr. Langan.
20        **MR. LANGAN:**  Your Honor, that's the kind of thing I'd
21   like to talk to my client about.  You know, we've already --
22   we've written a letter to that effect, but --
23        **THE COURT:**  Well, you know when a lawyer stands up in
24   open court on the record and makes a statement, I take that as
25   an admission, and, in fact, I think there's case law that says

1  it's an admission.  I mean, I'm not trying to put you crossways
2  with your client, but --
3            **MR. LANGAN:**  I believe what I said is an admission as
4  well.  I mean, I have no problem with that.
5            **THE COURT:**  Okay.  Well, I'm going to consider it as
6  an admission.  But if for some reason BP wants to backtrack on
7  that, let us know within seven days --
8            **MR. LANGAN:**  Very good.
9            **THE COURT:**  -- okay?
10           **MR. LANGAN:**  Yes.
11           **THE COURT:**  Okay.  Good.
12           **MR. LANGAN:**  Do you want me to touch on the
13  preservation issue?
14           **THE COURT:**  Yes.  If you would, yes.
15           **MR. LANGAN:**  Your Honor, in chambers yesterday, and
16  this was raised, the question was our position on paragraph 14
17  of Pretrial Order No. 1 being extended to the GCCF.
18                And what we told Your Honor was we objected to
19  that as a technical matter because GCCF is not a party here.
20  Having said that, I think BP is quite happy to take appropriate
21  steps to assure the Court that we've given appropriate
22  instructions to Mr. Feinberg and his organization.
23                So they are well aware of their obligations to
24  preserve evidence.  We have no problem with that, and we intend
25  to follow-up in a way that is satisfactory to Your Honor and to

```
 1  the plaintiffs.
 2           THE COURT:  Okay.  Mr. Roy, is that satisfactory?
 3           MR. ROY:  It's part of the doughnut, Your Honor, but
 4  not all of it.
 5              You know, there's a lot at stake here.  We need
 6  to be, first of all, in this presentment issue, it's something
 7  we've got to be absolutely certain of.  The plaintiffs steering
 8  committee feels that, in light of the representations that have
 9  been made to the Court, why can't the BP entities stipulate;
10  and if they can't stipulate, then maybe we need to file --
11           THE COURT:  Wait.  Are we talking about the first
12  issue now or the second issue?
13           MR. ROY:  Yes, sir, the first issue.  Maybe we need
14  to file a declaratory action and let them either -- let it
15  become --
16           THE COURT:  Well, you'll know within seven days,
17  okay?
18           MR. ROY:  All right.
19              The second issue, Your Honor, on the
20  preservation is, we believe, very crucial, especially as to
21  amounts paid, geographic regions paid, and actually to whom
22  paid, and why would that be.
23              Because on the backside of this litigation,
24  when -- if we reach a punitive damage quantification trial,
25  especially if we reach one as a class, if, indeed, that
```

1 happens, very relevant information is going to be the total
2 amount of damages that have been incurred, and this is one of
3 the best sources for the quantification of it.
4       And if that damage -- if that damage information
5 has not been retained, then it's going to be impossible to
6 otherwise reconstruct. So that's the issue --
7       **THE COURT:** I think there's no disagreement on that.
8 You're just trying to make sure that that happens, and we'll
9 make that happen. If I need to issue some kind of order, I
10 will. The concern was, you know, to what extent I could order
11 Mr. Feinberg to do something. I'm pretty confident that
12 Mr. Feinberg's not going to be out there intentionally
13 destroying any of these records.
14       We can work towards -- in fact, we can
15 communicate with him and get some assurances, if that would
16 make you more comfortable --
17       **MR. ROY:** Once again, Your Honor --
18       **THE COURT:** -- that he's agreed to do that.
19       **MR. ROY:** -- it's a matter of, I think, us wanting
20 this court to, by way of a preservation order, or a directive
21 or whatever to actually say this is not a matter of discretion,
22 preserve your records.
23       **THE COURT:** Well, I can certainly order that BP and
24 its contractors, subcontractors, whatever we want to call
25 them -- I guess he's sort of a subcontractor of BP -- preserve

1  documentation.  Maybe that's the way to approach it.
2             **MR. ROY:**  That would be satisfactory, Your Honor.  As
3  long as it's understood that that extends to Mr. Feinberg and
4  the Gulf Coast Claims Facility.
5             **THE COURT:**  Okay.  Again, I would ask you-all to try
6  to agree on some language to submit, okay, on that?
7                  That brings us to the OPA test cases or
8  bellwether trials.  I had -- I mentioned previously, and again
9  yesterday, that I did not think it was feasible for this case
10 to proceed along between now and February of 2011 without some
11 type of trial activity in the way of either test trials, or
12 bellwether trials, or maybe even summary jury trials.  A lot of
13 ways we can think creatively of things to do of how to approach
14 these issues.
15                 I'm thinking primarily about the OPA type
16 claims, but perhaps there are other claims that might be
17 suitable for that too.  Primarily I'm thinking of the OPA
18 claims because, again, I envision that those could be tried on
19 damage issues without a full-blown liability trial and
20 allocation of fault and all of that which is going to occur
21 later in the February of 2012 trial.
22                 So anybody want to speak now on this?  I've
23 indicated yesterday what my thoughts were and that -- what I
24 would envision is that the -- the case management order would
25 require the plaintiffs to confer with the defendants sometime

JODI SIMCOX, RMR, FCRR - OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

1  documentation.  Maybe that's the way to approach it.
2             **MR. ROY:**  That would be satisfactory, Your Honor.  As
3  long as it's understood that that extends to Mr. Feinberg and
4  the Gulf Coast Claims Facility.
5             **THE COURT:**  Okay.  Again, I would ask you-all to try
6  to agree on some language to submit, okay, on that?
7                  That brings us to the OPA test cases or
8  bellwether trials.  I had -- I mentioned previously, and again
9  yesterday, that I did not think it was feasible for this case
10 to proceed along between now and February of 2011 without some
11 type of trial activity in the way of either test trials, or
12 bellwether trials, or maybe even summary jury trials.  A lot of
13 ways we can think creatively of things to do of how to approach
14 these issues.
15                 I'm thinking primarily about the OPA type
16 claims, but perhaps there are other claims that might be
17 suitable for that too.  Primarily I'm thinking of the OPA
18 claims because, again, I envision that those could be tried on
19 damage issues without a full-blown liability trial and
20 allocation of fault and all of that which is going to occur
21 later in the February of 2012 trial.
22                 So anybody want to speak now on this?  I've
23 indicated yesterday what my thoughts were and that -- what I
24 would envision is that the -- the case management order would
25 require the plaintiffs to confer with the defendants sometime

1  after the first of the year, early next year, say in January,
2  to begin the process of identifying one or more of the OPA type
3  claims brought against BP as a responsible party under OPA to
4  serve as test cases that we could tee up and begin trying as
5  early as, say, June of next year.
6          Mr. Langan?
7          **MR. LANGAN:** Yes, Your Honor. We heard you. We hear
8  you now. BP does need to object to this for a couple of
9  reasons. Some of them are in our October 6th brief, but I want
10 to just amplify only a few today if I could.
11         As I said in September, one issue we have is
12 that if the master complaints have class certification
13 allegations in them, we would like to deal with the class
14 certification issues before we get to test trials; in other
15 words, we don't want to put the cart before the horse. And we
16 think --
17         **THE COURT:** I don't know that that's putting the cart
18 before the horse. It's not unheard of to do test trials in
19 class cases before class certification, because that can give
20 you information as to whether the class should be certified or
21 not.
22         **MR. HERMAN:** I understand. But we think the better
23 approach would be to have, let's deal with the class issues
24 first before we get there.
25         Secondly, in terms of the timing, we think that