

**MotleyRice LLC**
ATTORNEYS AT LAW

Joseph F. Rice
*Licensed in SC*

South Carolina Office
Direct Dial 843.216.9159
Direct Fax 843.216.9290

jrice@motleyrice.com

28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
o. 843.216.9000
f. 843.216.9450

321 South Main St.
Providence, RI 02903
o. 401.457.7700
f. 401.457.7708

One Corporate Center
20 Church St., 17th Floor
Hartford, CT 06103
o. 860.882.1681
f. 860.882.1682

275 Seventh Ave., 2nd Floor
New York, NY 10001
o. 212.577.0040
f. 212.577.0054

320 Chestnut St.
Morgantown, WV 26505
o. 304.413.0456
f. 304.413.0458

www.motleyrice.com



September 13, 2010

**Via Certified Mail, Return Receipt Requested and Facsimile(1-866-682-1772)**
Mr. Kenneth R. Feinberg, Esquire
Administrator, Gulf Coast Claims Facility
P.O. Box 9658
Dublin, Ohio 43017-4958

Re: **Your Contact with Represented Parties**
Jasmine Thai Cuisine (GCCF Claimant Identification Number 1167811); Duncan, Eric Name is "Alpha Paraprofessional Services, LLC" (GCCF Claimant Identification Number 1167801); McCaffrey, Vanessa/Vacation Key West (GCCF Claimant Identification Number 1167814); Nguyen, Kimberly (BP Claim # 6866124211205) Name is "The Shrimp Guy" (GCCF Claimant Identification Number 1004888); Nguyen, Do (BP Claim # 6866124217545) Name is "The Shrimp Guy." (GCCF Claimant Identification Number 1167815); Shemper, Jacob Name is "Key West On Fly" (GCCF Claimant Identification Number 1167805); Adams, Emily (GCCF Claimant Identification Number 7170985); Farris, Tim d/b/a God Father's Charter (1167807); Farris, Tim d/b/a God Father's Restaurants LLC (BP Claim # 686612424166)( GCCF Claimant Identification Number 1167802)

Dear Mr. Feinberg:

I am in receipt of correspondence dated September 7, 2010 that you have sent to one or more of the claimants identified above who are represented by Motley Rice LLC.

Pursuant to Rule 4.2 of the Model Rules of Professional Responsibility as adopted in the various states, including Fla. R. Prof. Conduct 4-4.2 and Miss. R. Prof. Conduct 4.2 which are applicable with respect to the claimants identified above, "a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order."

Since you were apparently aware of this rule, Part III of the CGCF's claim form's instructions provides that: "If you complete this section, all communications from the GCCF will be with the lawyer you have identified unless you instruct us otherwise in writing." Nevertheless, with the full knowledge that the claimants identified above were represented by Motley Rice LLC, as identified in Part II of the claim form, your office directly communicated with persons that you knew were

**EXHIBIT S**

Mr. Kenneth R. Feinberg, Esquire
September 13, 2010
Page 2

represented by counsel. We believe that this direct communication is improper and in violation of the applicable rules of professional responsibility.

**Please cease and desist from directly contacting this firm's clients immediately. Instead, please direct all communications concerning the above-referenced claimants, as well as any future claimants who state that they are represented by Motley Rice LLC, to this office.**

I further ask that you advise me via return letter as to what procedures you will put in place to ensure that these improper and unethical direct communications do not happen again.

If you have any questions, please do not hesitate to contact me.

As I am,

Sincerely,

Joseph F. Rice

JFR/gwd

cc: Kevin Dean, Esquire
    Jodi Flowers, Esquire

 Gulf Coast Claims Facility
www.GulfCoastClaimsFacility.com

GULF COAST CLAIMS FACILITY
P.O. BOX 9658
Dublin, OH 43017-4958
1-800-916-4893
Fax: 1-866-682-1772
info@gccf-claims.com

September 27, 2010

**VIA FEDERAL EXPRESS**

Joseph F. Rice, Esq.
Motley Rice LLC
28 Bridgeside Boulevard
Mt. Pleasant, SC 29464

Re: Communications with Clients of Motley Rice LLC

Dear Mr. Rice:

We write in response to your September 13, 2010 letter concerning communications between the Gulf Coast Claims Facility (the "GCCF") and certain people who are clients of Motley Rice LLC ("Motley Rice"). Your letter was accompanied by a schedule (the "Schedule") that lists 9 people that you assert are represented by Motley Rice in connection with claims submitted to the GCCF. We have compared the names on the Schedule to our records, and have concluded that the GCCF has not had any "improper and unethical direct communications" with any Motley Rice clients. Set forth below are the results of our review of all communications with clients of Motley Rice.

We have located in our records the names of 10 people (9 on the Schedule and 1 that is not) who both submitted claims to the GCCF and listed on those claims Motley Rice as attorney of record. Apart from the initial form claim acknowledgement letters that were sent to all claimants, the GCCF has had no communications with those 10 claimants, and we will not have any communications with them as long as we believe that they continue to be represented by Motley Rice.

As you know, Section VIII of the Claim Form, entitled "Method of Payment," governs how the GCCF will make payments to or on behalf of eligible claimants. Accordingly, the GCCF follows the claimant's direction regarding where to send the claimant's payment. The GCCF has made 3 payments thus far to Motley Rice clients, all of which were sent to Motley Rice.

If you have any questions, please call the GCCF toll-free at 1-800-916-4893, email us or visit our website.

Sincerely,
Administrator
Gulf Coast Claims Facility

Enclosure

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

| | |
|---|---|
| EMILY R. ADAMS, Individually and on behalf of all others similarly situated;<br><br>Plaintiff,<br><br>v.<br><br>BP P.L.C.; BP AMERICA INC.; BP PRODUCTS NORTH AMERICA INC.; BP AMERICA PRODUCTION COMPANY; BP EXPLORATION & PRODUCTION INC.; ANADARKO PETROLEUM CORPORATION; ANADARKO E&P COMPANY, LP; MOEX OFFSHORE 2007, LLC; TRANSOCEAN LTD.; TRANSOCEAN DEEPWATER, INC.; TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INC.; TRANSOCEAN HOLDINGS, LLC; TRITON ASSET LEASING GMBH; HALLIBURTON ENERGY SERVICES, INC.; M-I, LLC; WEATHERFORD U.S., L.P.; DRIL-QUIP, INC.; CAMERON INTERNATIONAL CORPORATION F/K/A COOPER CAMERON CORPORATION; JOHN AND JANE DOES A-Z; and CORPORATIONS A-Z.<br><br>Defendants. | Civil Action No. 4:10-cv-00306-SPM-WCS |

## AFFIDAVIT OF EMILY R. ADAMS

STATE OF FLORIDA )
)
COUNTY OF BAY )

1

Before me, the undersigned official on this day appeared Emily R. Adams, who is known to me, first being duly sworn according to law, upon her oath, deposed and said:

1. I am a resident of Mexico Beach, Florida, and am an employee of Toucan's Restaurant located in Mexico Beach, Florida and have been significantly impacted as the result of the BP oil spill both emotionally and financially.

2. I retained Kevin R. Dean and the Law Offices of Motley Rice LLC, on July 12, 2010, to assist and handle all my claims arising out of the spill whether by claim to BP, GCCF, U.S. Coast Guard and/or lawsuit if warranted.

3. Motley Rice filed suit on my behalf on July 21, 2010 in the above-captioned matter, subsequently consolidated and transferred to the Eastern District of Louisiana, IN RE OIL SPILL: by the Oil Rig "Deepwater Horizon" in the GULF OF MEXICO, APRIL 20, 2010, MDL NO. 2179.

4. On August 31, 2010, Motley Rice filed, on my behalf, a claim with Mr. Feinberg as a result of all representations made by him and BP to me as to this process. In this claim form, on page 3, Section III, it specifically states that "If you complete this section, all communications from the GCCF will be with the lawyer you have identified unless you instruct us otherwise in writing." Additionally, on page 11 of the claim form, my attorney Kevin R. Dean, specifically requested that any communications regarding my claim be directed to him (see attached Exhibits 1 and 2 which are pages 3 and 11 of my GCCF Claim Form submitted at my request by Mr. Dean to the GCCF).

5. On or about September 12, 2010, I received a direct letter from the GCCF not copied to my attorney, Mr. Dean. Upon receipt, I immediately sent a copy to Mr. Dean for my file.

2

6. On September 13, 2010, much to my amazement and shock, I received a phone call from a GCCF (was this a cell phone call and do you have records of the call) adjuster. The representative said that they received all the information needed to process my claim and were just waiting to see if it was accepted. He asked if I had any questions, I asked him why he would contact me directly. He had no response. I then advised him "that we both know I have been represented and that there were many laws that prevented him from contacting me." He said thanks you and have a good day right after I asked for his name.

AFFIANT FURTHER SAYETH NAUGHT.

This 1st day of November, 2010.

Emily R. Adams

Signed, Sealed and Delivered in the presence of:

Selena Jo Noblit
Notary, In and for Franklin Co. Florida   Emily R. Adams
Dated this 1st day of November, 2010.



SELENA JO NOBLIT
Comm# DD0705462
Expires 9/10/2011
Florida Notary Assn., Inc

3

| Name: | Emily Adams | SSN or EIN: | 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 | Claimant #: | |
|---|---|---|---|---|---|

| 24. Middle Name: | Rebeca |
|---|---|
| 25. Title: | Ms |

| 26. Current Address (if different from Business Address): | Street: 14 14th st |
|---|---|
| | City: Apalachicola  State: FL  Zip: 32320  Country: Franklin |

| 27. Phone Number: | ( ) - |
|---|---|
| 28. Cell Phone Number: | 828 289-4858 |
| 29. Fax Number: | ( ) - |
| 30. Email Address: | Emily1120@Hotmail.com |

### III. ATTORNEY INFORMATION

Complete this section only if you are represented by a lawyer for your claim arising out of the Spill. If you complete this section, all communications from the GCCF will be with the lawyer you have identified unless you instruct us otherwise in writing. You must complete each question in this section if you are represented by a lawyer.

| 31. Lawyer Name: | Last: Dean | First: Kevin | Middle Initial: R. |
|---|---|---|---|
| 32. Law Firm Name: | Motley Rice LLC | | |
| 33. Law Firm Address: | Street: 28 Bridgeside Boulevard | | |
| | City: Mt. Pleasant | State: SC  Zip: 29464 | Country: USA |
| 34. Law Firm Phone Number: | (843) 216-9513 | | |
| 35. Law Firm Fax Number: | (843) 216-9267 | | |
| 36. Law Firm Email Address: | kdean@motleyrice.com | | |

| Name: Emily Adams | SSN or EIN: 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 | Claimant #: |
|---|---|---|

| | | |
|---|---|---|
| 98. Bank Name to Which Wire is to be Sent: | Bank Name: Centennial Bank <br> Street: 22 Ave E <br> City: Apalachicola  State: Fl  Zip: 32320  County: Franklin | |
| 99. Bank Telephone Number: | 850-653-8800 | |
| 100. Bank ABA/ Routing Number: | 063209928 | |
| 101. Account Name: | Emily R Adams | |
| 102. Account Number: | 7510875306 | |

### B. ELECTION TO RECEIVE PAYMENT BY CHECK

Complete this section if you want to receive your payment by check. For Emergency Advance Payments, checks will be sent by overnight courier and will be made payable to the Individual or Business Claimant who completes this Claim Form. (Be sure to provide your Street Address for overnight delivery.) If you want to receive your payment by wire transfer, do not complete this section.

| 103. Do you want to receive your payments by check? | * ■ Yes   ☐ No |
|---|---|
| 104. If Yes, and you are an individual who does not have your own bank account, please review the Notice attached to this Claim Form. After reviewing this Notice, elect whether you prefer to receive one check or multiple checks. | ■ One Check   ☐ Multiple Checks |

Provide the street address to which you would like the check(s) to be sent in the space below:

| 105. Payment Address: | Street: Motley Rice LLC, 28 Bridgeside Boulevard |
|---|---|
| | City: Mt. Pleasant   State: SC   Zip: 29464   Country: USA |

*Payable to Motley Rice Client Trust Account For the benefit of Emily R. Adams

You are to direct all communications regarding our client and their claim to this office and to refrain from any direct communication with our individual client.

*[signature]*
8/31/2010

Exhibit 2

Claim Form - Page 11

# AFFIDAVIT

STATE OF MISSISSIPPI
COUNTY OF LAMAR

PERSONALLY appeared before me, the undersigned authority in and for said county and state, TIMOTHY M. FARRIS ,Coowner of Godfathers Restaurants LLC, who, having been being first duty sworn by the undersigned Notary Public, deposes and says:

1. I am the claimant on behalf of Godfather's Restaurants LLC which filed a claim with BP and would state the following facts to wit:

2. Godfather's Restaurants LLC is owned by Timothy M. Farris and Paul Christopher Rowell and purchased the Godfather's Pizza franchise which operated in Gulf Shores, Alabama for the last 35 years. The purchase was final September 28th, 2008. This particular location has survived it's share of Hurricanes in its 35 year history. The Gulf Shores location was a 44 seat location and had been in the same building for the last 35 years. In March of 2010 we entered into negotiations to move the restaurant from Gulf Shores to Orange Beach, Alabama to the Wharf Entertainment complex. We leased a newer restaurant in the heart of a tourist location with a 120 seat capacity. We officially moved the last week of April. At that time BP was saying that the oil spill was only about 1000 barrels. We opened for business and awaiting the arrival of the tourist. The rest is pretty much history in that the BP Oil Spill turned out to be the largest natural disaster in history. The tourist failed to come and we experienced our worst summer season in the history of the location.

3. We began filing our claims with BP for our losses in April, May and June. These claims were submitted with all of the documentation requested by BP on June 16, 2010. As a practicing attorney myself, I filled out the claim form completely according to the instructions and provided all of the documentation requested of BP. I continued to send follow up letters and my claim was assigned to three different adjusters. I never received any documentation or request for additional information. We did not receive any payments. The first week of August I contacted the BP Claims Office and was advised that they were no longer adjusting the claims and that everything was going to be turned over to Kenneth Feinberg. I followed up with the GCCF office and was advised we would need to resubmit all documentation.

4. At this point I was representing various clients in the BP Oil Spill and became associated with Kevin Dean and Joe Rice of the Motley Rice firm. I turned over all documentation to their firm for this claim and a claim was timely filed with the GCCF on September 1, 2010. Thereafter, we did not receive any response to the claim. On September 22, 2010 I contacted Kevin Dean and advised him that as of September 25, 2010 we would be shutting the doors to the Restaurant due to the failure of BP and GCCF to pay any money at all. I myself had already put $40,000.00

1

of my own money into the restaurant in an attempt to keep it operating. At that time Kevin Dean and Joe Rice demanded that Mr. Feinberg place our claim on the emergency claims list and asked that it be expedited. We were advised that it was placed on the expedited list. During this time we asked for weekly updates and were told the claim was pending. We were then advised at one point that the claim was being paid. When we contacted them back to determine the amount being paid we were advised that they needed additional documentation. The additional documentation was the same information provided to BP back in June of 2010.

5. As a result of the restaurant closing, in or about October, 2010, the Wall Street Journal contacted the Alabama Chamber of Commerce and began a investigation into the claims process. They came to Orange Beach, Alabama and interviewed myself for their story. They also contacted Mr. Feinberg in regard to the story. It is my understanding that after Mr. Feinberg learned of the expected story Mr. Dean's office and I were advised that our claim would be getting paid shortly. The Wall Street Journal waited approximately two weeks from the date of our interview to run the story trying to determine if we were in fact going to be paid. The story finally ran in the news on October 20, 2010, and then <u>we were advised the very next day it would was being paid, but no information supplied as to amount</u>. The claim was well documented with all requested information and substantiated for "interim" seasonal losses in the amount of $258,000.00 in losses. On October 22, 2010, Motley Rice informed me that they had received a check for only $125,300.00 without any explanation as to why the claim was not paid in full. This amount did not cover all of our losses and expenses and we are still unable to reopen. I believe we were paid less by Mr. Feinberg and the GCCF because the story ran that exposed the wrongs of the GCCF Fund.

6. I have read the above claim, and the same is true of my own knowledge, except as to matters stated on information and belief, which I believe to be true.

_____
TIMOTHY M. FARRIS, Member
Godfather's Restaurants LLC

SWORN to and subscribed before me, this the 11th day of November, 2010.

_____
NOTARY PUBLIC

My Commission Expires:

[Notary seal: LESLIE LOTT MAULDIN, ID # 46628, Commission Expires June 1, 2013, STATE OF MISSISSIPPI, LAMAR COUNTY]

2

## AFFIDAVIT

**COMMONWEALTH OF VIRGINIA**
**CITY OF NORFOLK, to-wit:**

The undersigned Affiant, being first dually sworn, deposes and says:

1. My name is Jennifer D. Bartee. I reside at 804 Beaver Dam Road, Chesapeake, Virginia 23322.

2. I am employed as a secretary to Jeffrey A. Breit at the law firm of Breit, Drescher, Imprevento and Walker, PC. The office is located at 999 Waterside Drive, Suite 1000, Norfolk, Virginia 23510.

3. I have knowledge of the facts set forth in this Affidavit either from personal knowledge or from facts provided to me by our client Gerald Druilhet.

4. On the 29th day of October, 2010, at 3:36 pm, the firm's receptionist, Autumn Davis, spoke with our client, Gerald Druilhet, who stated the following: "Got off the phone with GCCF and they said they still don't have all his paperwork. I don't understand why [my attorney] isn't responding to us, GCCF has given me a settlement offer."

5. Approximately, ten minutes after receiving the phone call, Autumn Davis, handed me the message.

6. I then proceeded to the Gulf Coast Claims Facility ("GCCF") website to look up Mr. Druilhet's claim status before I returned his call.

7. According to the GCCF website, the status of Mr. Druilhet's claim as of October 29, 2010, was that additional information or documentation was required for his Lost Earnings or Profits claim.

8. The GCCF website attached a letter to his claim status, dated October 22, 2010,

with the exact documentation it was requesting to finalize Mr. Druilhet's claim. That letter stated the GCCF needed all paystubs from May through present to allow for an accurate adjustment of the claim. Our firm, however, had not yet received the aforementioned letter as of October 29, 2010.

9. On October 29, 2010, at approximately 3:50 pm, I called our Mr. Druilhet and spoke with him about the status of the claim. I told him that the GCCF requested his paystubs from May through the present to make an accurate adjustment on his claim. I told him that we have most of his paystubs from May through present and that we will make sure his paystubs are sent to the GCCF.

10. After discussing his claim status, I asked him to tell me about the conversation he had with the GCCF. He told me that he called and asked for a status of his claim and was told that the Fund did not have all of his paperwork. He said they told him he could settle the entirety of his claim. He said he did not think he should settle with them and called our office when he got off the phone with the GCCF.

11. On October 29, 2010, after speaking with our Mr. Druilhet, I called the GCCF at 1-800-916-4893. I was on hold for approximately 15 to 20 minutes waiting for a representative to answer my call.

12. After being on hold, a male representative answered the phone. I gave him my name and explained that I work for attorney Jeffrey Breit at the law firm of Breit, Drescher, Imprevento and Walker. I told him I was calling with regard to our client, Gerald Druilhet.

13. He asked for Mr. Druilhet's claim number, which I gave him -- 1106833. He found his claim information, and I proceeded to explain why I was calling.

14. I told that representative that I spoke to Mr. Druilhet prior to calling the GCCF and that Mr. Druilhet told me he was offered a settlement of his claim.

2

15. I told him that I was interested in finding out the GCCF's procedure for dealing with claimants who are represented by attorneys.

16. I told him that I have heard from some of our clients that the GCCF will speak to them even though they are represented by an attorney and that their interim claim form clearly identifies that the clients are represented by counsel and the name and contact information for the attorney. I have had some clients tell me that the GCCF won't speak to them because they are represented by an attorney.

17. The GCCF representative said that as far as he knew they are allowed to speak to the claimants if they call the GCCF and request information about their claims. He said that, because they are the claimants, as long as they know their claim number, last four digits of their social security number and the address on file representatives will speak to them.

18. I said that it does not seem right for the GCCF representatives to speak with our clients when they know they are represented by attorneys, and that it concerns our firm particularly when it relates to the final settlement process. I emphasized that the GCCF representatives should not be able to talk to our clients about settling without going through us as their attorneys.

19. He said that if settlement or final payment is discussed, the client will have to sign a release which will release BP from everything. I said I realize what it means for a client to sign a release, which is why I am so concerned that the GCCF would believe they have the right to discuss any possible final settlement offers with our clients directly.

20. The representative then asked me to hold so he could verify the accuracy of the information he has provided about the process. I told him I would hold.

21. The representative returned to the phone, explained to me that he had just spoken with his supervisor and that the GCCF is permitted to speak to the claimants when they call the

3

GCCF whether they are represented by an attorney or not.

22. I was also informed that the GCCF will discuss final settlements with any claimant who contacts it, regardless of whether the claimant is represented by counsel and, if the claimant decides to settle with the GCCF for final payment the claimant can finalize that settlement through the GCCF without going through claimant's attorney.

23. I thanked him for the information and hung up the phone.

24. On October 29, 2010 at 4:54 pm I sent Jeffrey Breit and our office manager, Selena Misco, an email paraphrasing my conversation with the GCCF representative as follows:

I just spoke to the GCCF about one of clients who was offered a final payment/settlement. The client didn't accept it, but it made me curious as to why they are speaking to our clients about that. So after a long time on hold and conversations with supervisors - I was told that it is their policy to speak to the claimants whether they have an attorney or not and our clients can accept the settlement/final payment without GCCF having to go through the attorney. Maybe it is just me but that doesn't seem right especially if they have an attorney - just thought I'd pass it along

11/10/10
Date

Jennifer D. Bartee, Affiant

**STATE OF VIRGINIA**
**CITY OF NORFOLK, to-wit:**

This day appeared before me Jennifer D. Bartee, who, after first being duly sworn, took oath and, under penalty of perjury, stated that the information contained herein is true and correct to the best of his knowledge, information, and belief.

11/10/10
Date

Notary Public

My Commission Expires: 10/31/2012
Registration No. 213349

4

# AFFIDAVIT

STATE OF LOUISIANA

PARISH OF TERREBONNE

BEFORE ME, the undersigned authority, personally came and appeared, Billy R. Sundy Jr, who after being duly sworn did depose and say that:

On or about 5/19/2010 I called the 800-440-0858 phone number to file a claim with BP on behalf of BRB Enterprises, LLC, a Wholesale Fishing Tackle Supply Company that I own. I spoke to Jason who asked me several questions. He said I would be receiving paperwork in the mail to sign and return. I would also be contacted by an adjustor. My claim number is 6866124231383. I did not get anything in the mail nor did anyone contact me.

Eventually on or about 5/27/2010 I went to the claims office on Grand Caillou road in Houma LA to speak to someone in person. I brought 2007,2008 and 2009 income tax returns just in case. I was assigned to an adjuster named Broadie. He was very nice and cordial. The first thing he asked me was, "are you represented by an attorney". I said yes, I joined a class action suit. He said, well we can go no further until this paper is filled out, signed by your attorney, and brought back. He gave me a document that I was suppose to fax to my attorney for him to sign stating that I could negotiate with BP on my own behalf. I filled out the paper, faxed it to my atty., Derriel McCorvey. Derriel signed it and faxed it back to me.
I immediately went back to the BP claims office with the signed document where it was reviewed by Mr. Boradie. Mr. Broadie then took the tax returns I brought and made copies of certain documents from those tax returns for the claim file. He then instructed me as to what other documentation I needed to provide.

6/12/2010
I returned to the BP claims office with additional paperwork on or about 6/12/10. Broadie, the adjuster was very cordial and I gave him additional paperwork. After reviewing the entire file, he felt there were still a few other pieces of documentation I needed to provide in order for my claim to be complete.
I returned on or about 6/13/10 with the additional documentation. He then asked his supervisor if I was going to be put into the large loss category or if I would be staying with him, Broadie. He was told I would be staying with him. He then told me that he would cut a check today for an initial $5000 and that in no way was it a final settlement of the claim and I would have to sign for it, but that by signing I was not giving up any rights to future compensation. I asked him how things would progress from this point forward. He told me to come back to the claims office sometime in the second week of July. He would have further information then. A few minutes later, I signed for, and was handed check no. EM00 044760, in the amount of $5000. I took the check and left.

6/14/2010
On or about 6/14 I got a call from Craig Elkin, cell # 321-427-4241 who said he was with BP's large claims located in the Grand Caillou office and he would be handling my claim now. He asked if I was represented by an attorney and I told him "yes and no". There was a letter in my file that stated that I could negotiate for myself. I told him that this was a form provided to me by BP that this was not something I had just done on my own. I proceeded to tell him about my first meeting with Mr. Broadie. He said well is that a yes or no. I said, no. He then stated that my claim file looked complete, and he would be calling me back in a few days after putting some numbers together. I said ok and hung up thinking that he would call in a few days with a dollar figure to settle the claim. Four of five days went by with no call from him. Then news broke that a BP claims fund would be established and it would be handled independently from BP as well as the govt. I spoke with a friend who told me he was called by a BP rep. who stated that BP would no longer handle claims, that the U.S. govt. would be, to get in touch with your congressman. After hearing this, the following day, 6/18/10, I asked my wife to go by the claims office to see if it was still open and operating and if someone could give her any information as to what we needed to do now. She did and she called me to

say it was open and operating. I asked her to see if Mr. Elkin was available and to see if he could advise us as to what to do now. She did speak to Mr. Elkin and it is my understanding from what she told me, nothing in the way of our claim or the handling of our claim had changed.

I called Mr. Elkin on 6/18, Friday, to verify what he told my wife. I asked him about the "letter of non representation" he told my wife was holding up the claim. He said we needed that and I went on to tell him again about the letter I had previously provided, at their, BP's asking. He seemed to fumble through the file to find it like he didn't know it was even there. Again I told him this was something provided by a BP claims person, not me. After a bit of rambling, he finally said that my file was complete and in order and he would be back in touch with me. I asked him what that meant, would it be a week or three weeks or what before I got a call. I had been told several times I would be hearing from someone and never have I been contacted by anyone with BP claims. He said, Oh no, more like a couple of days. It wouldn't take long at all to enter the numbers into the program and get a dollar figure. Well today is 6/21 and I have not heard a word from anyone at BP. Clearly I am getting the run around.

6/22/2010
After not hearing from Mr. Elkin as he assured me I would, and after his conversation with my wife and all that took place, I went down to the BP claim center to speak with him in person. I asked him why I had not gotten a call from him after being told he would call. He asked if I was a little angry and I said yes, I feel like I am being jerked around. I then recounted the phone calls and the times he said he would call and did not. He then told me he was not going to be a dart board. I said it was his actions that have made the situation what it is. I asked about the letter of non representation he told my wife was holding up the claim. He said yes, he had told her that and then proceeded to say, "well are you"? I said you know, you aren't suppose to even be asking me that question. It doesn't make a bit of difference if I am or not. I am not giving up or signing over any right to be legally represented or any right to sue BP at any time. He said he was unaware he was not suppose to ask me if I am represented. Once again, I pointed out to him that he had a form signed by my attorney stating that I could negotiate on my own, and yes he stated he was aware of it. He then went on to say once again, that my file was complete and he wanted to wait til the end of June to get the end of month figures from me. Well he did not ask for any of that when he spoke to me last. Just said I would be getting a call in a day or two. With the end of the month only being a week away, I told him I would get him the figures as soon as I was done for the month and I would fax them to him and then call him to make sure he was aware of the fax. I asked him if I also needed the LA Sales and Use Tax form for the end of the month also, or just the spread sheet with the sales and totals. He said just the spreadsheet would be sufficient. I thought, yeah right! I shook his hand, said goodbye and left, still upset at this whole process.

The meager compensation offered by BP as well as their senseless waste of my time, is in no way enough to compensate me for the loss of sales revenue and the loss of business and inventory growth suffered by me through their negligence in the Horizon incident. I am currently beating the bushes for new customers and revenue. I am afraid any additional revenue I can muster in an effort to stay afloat, will, in the end, be used against me on the bottom line each month. But somehow, I will endeavor to keep my business viable and hope this whole sordid mess gets cleared up soon. Maybe next year or the next, depending on when this gets cleaned up, things will be back to a more normal business cycle for all of us affected by BP's irresponsibility

*/s/ Billy R. Bundy Jr.*
Billy R. Bundy Jr.

SWORN TO AND SUBSCRIBED before me, Notary, this 22nd day of June, 2010.

*/s/ Billy R. Bundy*
NOTARY PUBLIC
Terrebonne, Louisiana
Billy R. Bundy 9/4/10

## **AFFIDAVIT**

**STATE OF LOUISIANA**

**PARISH OF TERREBONNE**

BEFORE ME, the undersigned authority, personally came and appeared, _Cynthia D. Bundy_, who after being duly sworn did depose and say that:

6/18/2010

At the request of my husband, Billy Bundy Jr., I went to the B. P. Claims office on Grand Caillou Rd, in Houma LA the morning of Friday 6/18/2010, to make sure it was still open after the news that the government was getting involved with claims. I spoke with Mr. Craig Elkin, whom is now handling our claim, # 6866124231383. Craig said nothing with the claims process has changed.

He looked over our file, said all the paperwork we provided looked complete. He saw the letter from our attorney and seemed confused about it. I told him, the first time we went to the claims office, we were asked if we were represented by an attorney, and we said yes. We were given a form for our attorney to have signed and returned, before we could proceed with the claim. After returning the signed form, it seemed everything was in order and our claim was addressed.

Mr. Elkin also said he needed a letter of no representation from our attorney to move forward with the claim. As soon as he received that, our claim would be processed. He also said he would like the sales totals for June when we had them.

_Cynthia D. Bundy_
_Cynthia D. Bundy_

SWORN TO AND SUBSCRIBED before me, Notary, this 22nd day of June, 2010.

_Billy R. Bundy_
NOTARY PUBLIC
Terrebonne, Louisiana
Billy R. Bundy 94410

September 2, 2010

New York Times

To the Editor:

I was struck by your editorial "Mr. Feinberg and the Gulf Settlement" (August 30, 2010) about the "compassion and business sense" Mr. Feinberg showed as Special Master of the 9/11 Fund. Having experienced Mr. Feinberg's alleged "compassion and business sense" myself, I assure you that many people who were injured or lost loved ones never saw that side of him. Instead, he lacked compassion or any real understanding of the financial implications of being unable to work due to injuries or other matters out of one's control. In fact, his total indifference toward the wellbeing of the families and survivors angered many.

My heart goes out to those gulf residents whose lost livelihoods are now in his hands. They are subject to his unilateral decisions and likely unfulfilled promises, as was the case for me and other 9/11 Fund applicants. Mr. Feinberg will be 'Special Master' to BP, not to the people of the gulf who will be relying on him.


Sharon Premoli
P.O. Box 168
Manchester Village
Manchester, VT 05254
(310)625-6882

To the Editor:

"Mr. Feinberg and the Gulf Settlement," August 30, 2010, claimed Administrator Feinberg showed "compassion and business sense" in administering the 9/11 Fund (VCF). I strongly disagree.

I was trapped in lower Manhattan on 9/11. Exposed to the dust clouds, I suffered almost immediately; 10% of my right lung was surgically removed that November. I developed lung disease, granulomatous pneumonitis, from exposure to the dust and debris and was a candidate for a lung transplant. I had to obtain a business loan and borrow from my 401(k).

Despite my undisputed injury and losses, Mr. Feinberg offered me far less than the average award for injured victims. I appealed and fought for an increase, which ultimately was still a trivial amount.

Mr. Feinberg did not fully, fairly, or "compassionately" compensate all victims. The fact that most people chose the VCF does not mean we were treated fairly. I hope those who participate in BP's fund have better luck convincing Mr. Feinberg to fully compensate them for all they have endured.

Julio Roig Jr.
33 Van Rensselaer St., 3rd Floor
Belleville, NJ 07109
971-751-1331 (home)
973-919-0230 (cell)