**IN RE: DEEPWATER HORIZON LITIGATION**
**MDL NO. 2179**

JAMES PARKERSON ROY
Domengeaux Wright Roy & Edwards LLC
556 Jefferson St. Suite 500
Lafayette, LA 70501
E-Mail: jimr@wrightroy.com
Telephone: (337) 233-3033
Direct: (337) 593-4190
Fax: (337) 233-2796

STEPHEN J. HERMAN
Herman, Herman Katz & Cotlar, LLP
820 O'Keefe Ave.
New Orleans, LA 70113
E-Mail: sherman@hhkc.com
Telephone: (504) 581-4892
Direct: (504) 680-0554
Fax: (504) 561-6024

December 20, 2010

*via* **E-Mail**

The Honorable Sally Shushan
United States Magistrate Judge
500 Poydras Street, Room B345
New Orleans, Louisiana 70130
E-Mail: Sally_Shushan@laed.uscourts.gov

   Re: In re: Deepwater Horizon
     **MDL No. 2179**

Dear Magistrate Shushan:

   In advance of the conference Wednesday, December 22, 2010, Plaintiffs respectfully provide the following outline of their position regarding the Master Complaints, as well as a brief preview of the discovery issues which appear to be on the horizon:

**The Master Complaints**

   It is important to recognize at the outset that the entire purpose of the Master Complaint is to allow the parties and the Court to focus on the common legal and factual issues so that the litigation can be advanced in the most (collectively) efficient and effective way.  The Master Complaint is employed as a procedural vehicle that enables the parties and the Court to address these central and threshhold issues first, without getting bogged down in the vagaries of each plaintiff's specific facts or pleadings.  Implicitly, those individual questions of standing, mootness, or other legal rights and remedies are reserved for another day.

   Hence, (and for other reasons outlined below), Plaintiffs did not believe that it was either necessary or appropriate to identify specific named plaintiffs within the Master Complaints who were purporting to "bring" those respective master claims or types of claims.

   Plaintiffs did not (and do not) believe that there is an Article III issue, as a "case or controversy" clearly exists between and among the plaintiffs and the defendants whose actions fall within the respective Pleading Bundles. (Plaintiffs also expect that additional litigants will intervene

into, and/or otherwise join or adopt, the Master Complaints between now and the time that the Court is called upon to rule on the Defendants' Rule 12 Motions.)  Nevertheless, and out of an abundance of caution, Plaintiffs are willing to eliminate any potential Article III concerns by stipulating, amending, or otherwise clarifying that:

- As to any and all non-governmental economic loss and property damage claims, the allegations, claims, theories of recovery and/or prayers for relief contained within any pre-existing petition or complaint are amended, supplemented and superceded by the allegations, claims, theories of recovery and/or prayers for relief in the B1 Master Complaint, *as to the Defendants named in the B1 Master Complaint;* and,

- As to any and all post-April 20, 2010 claims for personal injury and/or medical monitoring, the allegations, claims, theories of recovery and/or prayers for relief contained within any pre-existing petition or complaint are amended, supplemented and superceded by the allegations, claims, theories of recovery and/or prayers for relief in the B3 Master Complaint, *as to the Defendants named in the B3 Master Complaint;* and,

- As to any and all claims brought by private parties for regulatory or injunctive relief the allegations, claims, theories of recovery and/or prayers for relief contained within any pre-existing petition or complaint are amended, supplemented and superceded by the allegations, claims, theories of recovery and/or prayers for relief in the D1 Master Complaint, *as to the Defendants named in the D1 Master Complaint;* however,

- The filing of the Master Complaints shall not affect the allegations, claims, theories or recovery or prayers for relief contained within pre-existing petitions or complaints as to any Defendants not named in the respective Master Complaint;

- Nor shall the filing of the Master Complaint affect the original venue of pre-existing petitions or complaints for jurisdictional or choice-of-law purposes;[1]

- Nor shall the filing of the Master Complaint be deemed to waive or supercede requests for the certification of one or more class actions (and/or sub-classes) under Rule 23, (which is currently stayed under Paragraph VII of CMO No. 1 [PTO 11]).

---

[1] *See, e.g.,* In re Propulsid, 208 F.R.D. 133, 141-142 (E.D.La. 2002) (master complaint is a procedural device to enhance efficiency and does not supercede a pre-existing or underlying complaint for choice-of-law purposes).

Defendants (apparently) contend that <u>Plaintiffs</u> should additionally be required to identify – <u>now</u> – which individual plaintiffs fall into which Pleading Bundles.  Plaintiffs strongly disagree with this notion, for several reasons:

- Defendants have the ability to review the <u>existing</u> petitions and complaints – (and/or PPFs) – (and/or information provided to the BP Claims Process and/or GCCF) – and determine whether those plaintiffs have asserted claims for economic loss (B1), post-April 20 personal injury or medical monitoring (B3), and/or regulatory and injunctive relief (D1).

- The individual litigants, and their claims, are in a constant state of flux.  BP, through the GCCF, is aggressively engaged in a campaign to secure releases. Some, if not many, existing plaintiffs will likely settle in the GCCF.  There is no reason for the plaintiffs, the defendants, or the Court, to waste time with individual pleadings in cases that will not exist by the time the Court rules.

- At the same time, <u>additional</u> <u>cases</u> will likely be filed between now and the time the issues are briefed by the Parties, and/or ruled upon by the Court. Defendants would have new plaintiffs <u>themselves</u> determine and check-off which Bundle or Bundles to which they "belong".  This is neither reasonable nor efficient.  If and when it becomes necessary, or otherwise required by the Court, such "categorization" can be determined from PPFs, or can be made by Liaison Counsel, (as was done in the *In re Katrina* litigation).[2]

- The entire purpose of the Master Complaint, as noted, is to allow the parties and the Court to address common legal issues, affecting the broadest number of plaintiffs and claims, first.

- The parties and the Court will have the opportunity to focus on more individualized issues through the Test Cases.

- It will be much more efficient to apply the Court's rulings, as appropriate, (and/or to take up individual issues), at a later point in time.

---

[2]Plaintiffs anticipate that the Defendants' proposal will lead to further confusion and inefficiency – even as compared with the *In re Katrina Litigation* – due to the large number of potential *pro se* plaintiffs expected in this litigation.

Page 3

As to the handful of peripheral defendants who may have been named in underlying complaints, but were not named in the applicable Master Complaint, there is no existing obligation under the CMO for those defendants to Answer.  Perhaps those cases will settle in the GCCF; perhaps those attorneys will agree to voluntarily dismiss; or perhaps the Court will establish a procedure for consideration of Rule 12 Motions or Motions for Summary Judgment.  But, it is respectfully submitted, we should not "let the tail wag the dog."

## Deposition Locations

The issue, in a nutshell, is that BP wants the "default" location of depositions to be in Houston, while Plaintiffs believe that, absent some exceptional circumstances, the depositions should be conducted here in New Orleans.  This is, of course, consistent with the ruling of the MDL Panel, which considered the location of the parties, documents and witnesses, the ease of ingress and egress, the availability of hotel rooms and office space, and, undoubtedly, the economic impact of centralizing the litigation within the most deeply affected area.  Plaintiffs have established their depository in New Orleans; we understand that the United States has established its depository and central offices for this litigation in New Orleans; and, of course, the Court is located in New Orleans.  More of the primary defense counsel are located in New Orleans than in Houston.[3]  In addition, all parties have agreed to use a New Orleans Court Reporting Firm. The cost of flying (and, in many cases, housing) attorneys, support staff, and the court reporter (and videographer) to Houston, certainly outweighs the cost of flying a witness in from Houston to New Orleans.[4]  Plaintiffs, again, recognize that there will be exceptional circumstances.  But, particularly where the parties have control over a witness, as an officer, expert, or employee, we believe that the location of the deposition should be New Orleans.

## Written Discovery Issues

Plaintiffs are still in the process of meeting and conferring with the defendants regarding their written discovery responses.  Plaintiffs will provide Your Honor with the specific objections at issue (if any), once the parties have had a chance to confer.

_____

[3]BP's primary counsel are located in Chicago and New Orleans; Halliburton in Dallas; Transocean in New Orleans and Lafayette; Weatherford in New Orleans; Anadarko in New Orleans and Washington DC; MOEX in New Orleans and San Francisco; and the "Responder Defendants" in New Orleans and New York City.  The only primary attorney located in Houston is Mr. Beck, who represents Cameron, (which is also represented by Stone Pigman here in New Orleans).

[4]Indeed, some of these BP witnesses are not even located in Houston, but places like Alaska, Chicago, London, and New York.  Why would it be any more convenient to bring those witnesses to Houston than to New Orleans?

In addition to Your Honor and Defense Liaison Counsel, Plaintiffs are providing a courtesy copy of this correspondence to Judge Barbier, through his law clerk, Ms. Shea, as we understand that Judge Barbier may also participate in these discussions, depending upon his availability.

We greatly appreciate the Court's time and consideration in this matter.

Respectfully submitted,

   /s/ James Parkerson Roy                      /s/ Stephen J. Herman   
James Parkerson Roy, Esq.                  Stephen J. Herman, Esq.
*Plaintiffs Liaison Counsel*                *Plaintiffs Liaison Counsel*

cc: Honorable Carl J. Barbier
    Defense Liaison Counsel
    Mike Underhill, Esq.

Page 5