**IN RE DEEPWATER HORIZON LITIGATION**
**MDL NO. 2179**

| | |
|---|---|
| James Parkerson Roy | Stephen J. Herman |
| Domengeaux Wright Roy & Edwards LLC | Herman, Herman, Katz & Cotlar, LLC |
| 556 Jefferson St. Suite 500 | 820 O'Keefe Ave. |
| Lafayette, LA 70501 | New Orleans, LA 70113 |
| E-Mail jmr@wrightroy.com | E-Mail sherman@HHKC.com |
| Direct: (337) 593-4190 | Direct: (504) 680-0554 |

December 29, 2010

**By Hand and *via* E-Mail**

The Honorable Sally Shushan
United States Magistrate Judge
500 Poydras Street, Room B345
New Orleans, Louisiana 70130
E-Mail: Sally_Shushan@laed.uscourts.gov


Dear Judge Shushan,

      As an MDL transferee court, this Court has ample authority to order the location of the subject depositions. Moreover, and alternatively, this Court has the authority to compel the majority of BP employees at issue to appear in New Orleans under Rule 30.

> **1.   This Court has plenary authority to require BP to offer all of its employees for deposition in New Orleans.**

      An overriding factor supporting the selection of New Orleans as the preferred locale of all depositions is the order directing multi-district transfer and coordination.   This bears particular importance because many of the relevant factors already presented to the Court (e.g., convenience to the parties, counsel and witnesses, availability of hotel and office space, ease of travel, etc.), were considered by the JPML in consolidating this litigation in New Orleans.   In fact, the JPML Transfer Order (hereinafter referred to as "Order" and attached as Exhibit "A") notes that all responding defendants favored centralization, but in Houston, not New Orleans. Nonetheless, the JPML found "if there is a geographic and psychological 'center of gravity' in this docket, then the Eastern District of Louisiana is closest to it." Order at *3. The Panel thus chose the location, the Eastern District of Louisiana, and specifically found that: "Centralization under Section 1407 will eliminate duplicative discovery, prevent inconsistent pretrial rulings . . . and conserve the resources of the parties, their counsel, and the judiciary . . . .   In all these respects, centralization will serve the convenience of the parties and the witnesses and promote the more just and efficient conduct of these cases, taken as a whole." *Id*.   The Panel further found that centralization in New

Orleans would facilitate administrative innovations such as those recommended in sections 11.52 and 11.53 of the *Manual for Complex Litigation. Id.* at 4.  In short, as a practical matter, the defendants fought and lost the deposition location issue when the Panel, duly noting their arguments for centralization in Houston, elected to centralize pretrial proceedings, including discovery, in this district instead.

Moreover, as an MDL transferee court, this Court is vested with the authority to manage the litigation in order to create efficiencies and reduce costs.  One of the methods recognized to create efficiencies and reducing costs is to have deponents come to a central location.  *See Manual for Complex Litigation (Fourth),* § 11.422 (2004); *see also* § 11.41 (the court should strive to "accomplish the objectives of the discovery plan while minimizing travel and other expense, and reasonably accommodating parties, counsel, and witnesses"); § 11.451(judge should be concerned with the time and place of depositions, including proposed travel); § 11.454 (depositions should be scheduled to minimize travel and other expense). *See also,* FED. RULES CIV. PRO. 1 and 16.

As an MDL transferee court, this Court has plenary power to implement the case management techniques set out in the *Manual for Complex Litigation*. *See U.S. ex rel Pougue v. Diabetes Treatment Centers of Am. Inc*., 238 F.Supp.2d 270 (D.D.C. 2002)(an MDL judge's powers are nothing less than plenary). A district judge charged with the responsibility of "just and efficient conduct" of the MDL proceeding must have discretion to manage the case that is commensurate with the enormous task. *In re Phenylpropanolamine Prods. Liab. Litig.*, 460 F.3d 1217 (9th Cir. 2006). To accomplish that goal, it is common to have depositions taken at a central location in MDL cases. *See In re Vitamin Antitrust Litig*., 2001 WL 35814436 *3 (D.D.C. Sept. 11, 2001); *In re The TJX Companies, Inc. Fair and Accurate Credit Transactions Act Litig*., 2008 WL 717890 *3 (D. Kan. March 17, 2008) (court noted that taking depositions at a centralized location and under a condensed schedule served the goal of just and efficient adjudication of the case).

Centralization of the depositions is critical in this case because of the aggressive schedule adopted by the Court and the parties.  Depositions are scheduled to be taken 4 days a week and 3 weeks a month.  To meet that schedule, it is essential that the depositions be scheduled in a way that minimizes travel time and allows the parties sufficient time to prepare for the next witness. As part of the centralization process in the Eastern District of Louisiana, all parties have expended significant money to assemble in New Orleans the resources needed to undertake massive discovery on a fast track.  It is simply illogical to force the parties to transport all of those resources to the location BP proposed for centralization but which the JPML rejected.

### 2. **Even without plenary authority, Rule 30 allows the Court to compel most, if not all, of BP's employees to appear in New Orleans for deposition.**

Even if the power granted to this Court as an MDL transferee Court does not provide the authority the Court needs to centralize the depositions in New Orleans, the Court has the authority under Rule 30 to require most, if not all, of BP's employees to appear in New Orleans for deposition.   First,  BP's suggestion that a subpoena will be needed to compel most of its employees' attendance stands in stark contrast to BP's stated ability to produce all of its employees in Houston or London. The Court clearly has the power to issue orders requiring BP to exercise its control over its employees and, thus, make its employees available for deposition in New Orleans.

Obviously, there may be exceptional circumstances where BP cannot control its employees, and the PSC is willing to address those exceptional circumstances through a subpoena or otherwise. However, BP should not be allowed to turn these exceptional circumstances into the rule, thus defying the entire purpose of consolidating this litigation in New Orleans.

Second, the Court cannot accept BP's unsubstantiated assertion that most of its employees who will be deposed are not subject to notice of a deposition under Rule 30. Under Rule 30(b)(1), a plaintiff may issue a notice that identifies a specific officer, director, or managing agent to testify on behalf of a corporate defendant. *Founding Church of Scientology of Washington, D.C. v. Webster*, 802 F.2d 1448, 1451 (D.C. Cir. 1986); *United States v. Afram Lines (USA), Ltd.*, 159 F.R.D. 408, 413 (S.D.N.Y. 1994). A corporate defendant along with its officers, directors, and managing agents may be sanctioned for failing to comply with a properly issued deposition notice. *Fed. R. Civ. P.* 37(d)(1)(A)(i).

In BP's letter of December 20, 2010, BP suggests that the terms "directors" and "officers" are synonymous with the term "managing agent," and that because the majority of its employees are not "directors" or "officers," their testimony can only be compelled through a Rule 45 subpoena or compliance with the Hague Convention. In reality, however, many employees who are not "officers" or "directors" nonetheless qualify as "managing agents" and, thus, may be compelled to appear for a deposition by notice. *See, e.g. Smith v. Shoe Show of Rocky Mount, Inc.*, 2001 WL 1757184 at *2 (D. Mass. April 26, 2001)(although not an officer or director, district manager whose conduct was at center of dispute was managing agent); *Torres v. U.S. Lines Co.*, 31 F.R.D. 209, 210 (S.D.N.Y. 1961)(chief engineer who supervised plaintiff and was responsible for engine room where plaintiff was injured was managing agent); *Klop v. United Fruit Co.*, 18 F.R.D. 310, 313 (S.D.N.Y. 1955)(second mate who was in charge of vessel and had supervisory authority over it was a managing agent); *Krauss v. Erie R.R. Co.*, 16 F.R.D. 126, 128 (S.D.N.Y. 1954)(chief surgeon and claims department manager involved in decisions related to medical treatment of plaintiff were managing agents for purposes of Rule 30 deposition). Consequently, this Court's authority under Rule 30 to require BP and its employees to appear in New Orleans for depositions is much broader than BP suggests, and in most, if not all cases, will not be constrained by Rule 45 or the Hague Convention.

Courts have refused to define the term "managing agent" too literally. *Kolb v. A.H. Bull S.S. Co.*, 31 F.R.D. 252, 254 (E.D.N.Y. 1962). Instead, courts have emphasized that the term must be defined pragmatically and on an *ad hoc* basis. *United States v. The DOROTHY MCALLISTER*, 24 F.R.D. 316, 318 (S.D.N.Y. 1959). Courts typically consider the following non-exclusive factors in analyzing whether a witness is a managing agent: (1) whether the witness is invested with general powers allowing him or her to exercise judgment and discretion in corporate matters; (2) whether the witness can be relied upon to give testimony at his or her employer's request; (3) whether any person or persons are employed by the corporate employer in positions of higher authority than the witness regarding which information is sought by the examination; (4) the general responsibilities of the witness respecting the matters involved in the litigation; and (5) whether the witness can be expected to identify with the interests of the corporation as opposed to the opposing party. *See, e.g.*, *Sugarhill*, 105 F.R.D. at 170.

Of these factors, the identity of the witness' interest with his or her employer as opposed to the opposing party is paramount. *E.I. DuPont Nemours & Co. v. Kolon Indus., Inc.*, 268 F.R.D. 45, 49 (E.D. Va. 2010), *Honda*, 168 F.R.D. at 541; *Boston Diagnostic Dev. Corp., Inc. v. Kollsman Mfg. Co.*, 123 F.R.D. 415 (D. Mass. 1988); *see also Tomingas v. Douglas Aircraft Co.*, 45 F.R.D. 94, 96-97 (S.D.N.Y. 1968)(although not "managing agents" in the course of their everyday duties for defendant aircraft manufacturer, engineers who assisted in investigation of crash possessed an identity of interest with their principal that constituted them "managing agents" for purpose of giving testimony regarding accident investigation). Further, when the witness' interests are aligned with those of the corporate defendant <u>and</u> the corporate defendant can control when and where the witness appears for deposition, the factors are weighed heavily in favor of finding that the witness is a managing agent. *In re Meta Systems*, 1997 WL 173206 (Fed. Cir. Mar. 20, 1997)(finding that employees were managing agents of corporate defendant based almost entirely on fact that employees' interest were aligned with corporate defendant and corporate defendant could control employees' attendance at depositions). At the pretrial stage, any doubt as to whether a witness is a managing agent of a corporate defendant should be resolved in favor of a finding that the witness is a managing agent. *Dupont*, 268 F.R.D. 45; *Honda*lain , 168 F.R.D. at 541; *The DOROTHY MCALLISTER*, 24 F.R.D. at 318.

BP's December 20, 2010 letter makes clear that it has absolute control over when and where its employees appear for depositions. Likewise, it can hardly be argued that the interests of BP's employees in this litigation are more closely aligned with BP than with plaintiffs. Most of the BP employees who will be deposed were directly involved with the design, drilling, and completion of the well and the response to the blowout. As such, these employees will have just as much incentive as BP to defend their conduct, particularly given that BP continues to pay their salaries and, in some cases, their private lawyers. *Dupont*, 268 F.R.D. at 49-50 (concluding that continued payment of employees' salaries and hiring of lawyers for employees was sufficient to show identity of interest with corporate defendant.) The remaining BP employees who will be deposed consist primarily of upper level managers and employees who participated in BP's self-serving investigation of the blowout. Without a doubt, these witnesses will be far more concerned with defending BP and/or the findings of BP's investigation than helping plaintiffs.

Thus, the primary question with respect whether a given BP employee can be compelled under Rule 30 to appear for deposition in New Orleans is whether the employee has sufficient supervisory authority with respect to the issues in this litigation to be considered a managing agent. The Court need only look to the witnesses BP has agreed to offer for deposition in January 2011 to see that most, if not all, of BP's witnesses have such authority. For example, Steve Robinson is Vice-President of Drilling and Completions in Alaska and supervised the operations portion of the BP investigation into the blowout. Likewise, James Wetherbee is a former astronaut and an auditor for BP's Safety & Operations Audit Team. He was hired by BP specifically because of his management and leadership experience, was a member of BP's investigation team, and headed up the portion of the investigation that looked at the leadership and cultural issues that contributed to the blowout. Kevin Fontenot is a Safety Superintendent and similarly led portions of BP's

investigation of the blowout.[1]

Given the foregoing, three things are clear: (1) most if not all of the BP employees who will be deposed are directors, officers, or managing agents for purposes of Rule 30; (2) the depositions of BP's directors, officers, and managing agents can be compelled by this Court; and (3) this Court has complete discretion to decide where those depositions will take place.[2]  Under the circumstances, the most reasonable, efficient, and cost effective location for these depositions is in New Orleans.

### 3. Conclusion

Plaintiffs understand that there will be exceptional circumstances, and are happy to work with BP and the other Defendants to make appropriate accommodations.  However, as a general matter, consistent with the MDL Transfer Order, and pursuant to 28 U.S.C. 1407, the Court's inherent authority, and Federal Rules of Civil Procedure 1, 16 and 30, BP's employees should typically be required to appear for deposition in New Orleans.

Respectfully submitted,

/s/ James Parkerson Roy  
*Plaintiffs Liaison Counsel*

/s/ Stephen J. Herman  
*Plaintiffs Liaison Counsel*

cc: Honorable Carl J. Barbier  
    Defense Liaison Counsel  
    Mike Underhill, Esq

---

[1] BP has also agreed to put Rex Anderson up for deposition in January 2011.  In BP's discovery responses, it identified Mr. Anderson, along with Mr. Robinson, Mr. Wetherbee, and Mr. Fontenot, as participants in its investigation of the blowout.  However, despite being requested to do so, BP did not provide any other information regarding these witnesses (i.e. job title and description, home address, office address, etc.)  Thus, the information that plaintiffs do have on these witnesses is limited to what is available from public sources.  The ability of a defendant to block the managing agent analysis through such evasive and unjustified discovery tactics is the primary reason doubts regarding a witness' status are resolved in favor of the witness being a managing agent. *Afram*, 159 F.R.D. at 413-14.

[2] The PSC adopts the arguments made by the United States regarding the Court's general discretion to order the location of depositions away from a corporation's principal place of business.  The PSC also adopts its previous arguments regarding why depositions should be centralized in New Orleans.