

| | |
|---|---|
| | **U.S. Department of Justice** |
| | Civil Division, Torts Branch |
| | Admiralty & Aviation |
| | P.O. Box 36028 |
| | 450 Golden Gate Avenue |
| | San Francisco, CA 94102-3463 |
| Telephone: (415) 436-6648 | *Overnight Delivery Address:* |
| Facsimile:  (415) 436-6632 | *7th Floor, Room 7-5395* |
| Email:  mike.underhill@usdoj.gov | *450 Golden Gate Avenue* |
| | *San Francisco, CA 94102-3463* |

December 28, 2010

Magistrate Judge Sally Shushan
United States Magistrate Judge
United States Courthouse, Room B-345
Eastern District of Louisiana
500 Poydras Street
New Orleans, LA.  70130

     Re:    *In Re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*
               <u>USDC, EDLA, Civ. No. 10-MD-2179-CJB-SS</u>
                  DJ #62-32-260

Dear Magistrate Judge Shushan:

     We thank you for the opportunity to file this supplemental letter brief, which responds to the supplemental brief submitted by BP on December 21st.  We note that while this letter focuses on BP's officers and managing agents, the principles discussed below apply to all defendants and their employees.

     I.     <u>BP's Initial Argument: The "General Presumption"</u>

     After initially basing their argument on the general presumption that a corporate defendant may be deposed at its principal place of business, our BP and other defendant colleagues did not seriously attempt to dispute that the presumption may be overcome by a number of factors.  As stated in *Sugarhill Records Ltd. v. Motown Record Corp.,* 105 F.R.D. 166, 171 (S.D.N.Y.1985):

> The general rule relied on by Motown is not one without exception.  Corporate defendants are frequently deposed in places other than the location of the principal place of business, especially in the forum, for the convenience of all parties and in the general interests of judicial economy.  The location of the deposition is in [the court's] discretion.  *Tomingas v. Douglas Aircraft Co.,* 45 F.R.D. 94, 96 ( S.D.N.Y. 1968).

*See also*, *Turner v. Prudential Insurance Co. of Am.,* 119 F.R.D. 381, 383 (M.D. N.C. 1988) (setting out the primary considerations that a court must consider when determining where depositions of a corporation should proceed); 8A Wright, Miller & Marcus, *Federal Practice and Procedure,* § 2112 (2010) ("This customary treatment is subject to modification, however, when justice requires." [Citing cases, including *Turner*]); *ISA Chicago Wholesale, Inc. v. Khan,* 2010 WL 2266463 (N.D. Ill. June 3, 2010); *Cadent Ltd. v. 3M Unitek Corp.*, 232 F.R.D. 625 (C.D. Cal. 2005); *Custom Form Mfg., Inc. v. Omron Corp.,* 196 F.R.D. 333, 338 (N.D. Ind.2000) ("[B]ecause of the court's discretion to designate the site of a deposition, 'the presumption appears to be merely a decision rule that facilitates determination when other relevant factors do not favor one side over the other.'" *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.,* 171 F.R.D. 135, 155 (S.D.N.Y.1997), citing *Mill-Run Tours, Inc. v. Khashoggi,* 124 F.R.D. 547, 550 (S.D.N.Y.1989)); *Leist v. Union Oil Co. of California,* 82 F.R.D. 203, 204 (E.D. Wis.1979); *Baker v. Standard Indus., Inc.,* 55 F.R.D. 178, 179 (D. P.R.1972).

Our letter of December 20th analyzed the four *Turner* factors and, accordingly, we shall not reiterate them here. Suffice it to say, *each* of those factors, and particularly the second factor,[1] strongly supports holding depositions in New Orleans, the forum district designated by the Judicial Panel on Multi-District Litigation.

    **II.**    **BP's Second Argument: The Applicability of Rule 45 Procedures Instead of the Deposition Notice Procedures of Rule 30**

        **A.**    **The Relevant Legal Standards**

Recognizing that its first argument falls far short, given the facts and equities of this case, BP shifted its focus to one of reliance on Fed.R.Civ.P. 45 and the rules governing subpoenaed witnesses. In doing so, BP tacitly acknowledges, as it must, the

---

[1] The defendants, and especially BP, are large corporations whose employees often engage in international travel due to the nature of the oil business. As for BP's counsel, they are headquartered in Chicago. Regarding BP's argument that its Houston-based general counsel must be present to prep BP's witnesses, and even assuming that consideration should be a factor in determining deposition venue, we observe that New Orleans depositions would not in any way inhibit pre-deposition prepping of witnesses in Houston or any other city (the witness can be prepped on any given day, then fly the hour commute flight to New Orleans the same evening or the morning of the deposition). Conversely, a passel of attorneys for plaintiffs and the United States would be required to travel to Houston and, once there, still lack the support infrastructure (offices, T-1 communication lines, document repositories, staff, scanners, copy machines, *etc.*) necessary to support the depositions.

rule summarized in *Cadent Ltd. v. 3M Unitek Corp., supra,* 232 F.R.D. at 628 fn.1:

> Under Rule 30(b)(1), it is well recognized that "if the corporation is a *party, the notice compels it to produce* any 'officer, director or managing agent' named in the deposition notice. It is not necessary to subpoena such individual. The corporation risks *sanctions*-including default or dismissal-if the designated individual fails to appear." Schwarzer, Tashima & Wagstaffe, *California Practice Guide: Fed. Civil Procedure Before Trial,* §§ 11:1419, 11:2226 (2005 rev.) (emphasis in original); *JSC Foreign Economic Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.,* 220 F.R.D. 235, 237 (S.D.N.Y.2004).

The thrust of BP's fall-back position is that its employee/deponents are neither officers, directors, nor managing agents and, so the argument goes, only subject to deposition through the compulsion of subpoenae – rather than the simple and standard procedure of a deposition notice issued under Fed.R.Civ.P. 30(b)(1). BP follows its premise with the corollary that the "100 mile rule" of Fed.R.Civ.P. 45 precludes noticing such depositions in the E.D. of Louisiana if the deponent is served with a subpoena in, for example, the Southern District of Texas.

The flaw in BP's argument, however, is its cursory and constricted understanding of the term "managing agent" in the *specific* context of Rule 30. The most critical flaw in the argument is the implication that the deponent must be imbued with express authority to represent the corporation's interests in *all* business matters if she is to be considered a managing agent. But of course that is *not* the test.

> The term 'managing agent' should not be given too literal an interpretation but rather should depend largely on whether the interests of the individual involved are identified with those of his principal and on the nature of his 'functions, responsibilities and authority * * * *respecting the subject matter of the litigation*.'

*Tomingas v. Douglas Aircraft Co., supra,* 45 F.R.D. at 96 (emphasis in original), quoting *Kolb v. A.H. Bull Steamship Co.,* 31 F.R.D. 252, 254 (E.D.N.Y.1962). *See also*, *Sugarhill Records Ltd., supra,* 105 F.R.D. at 170. Indeed, the deponent need not even be an employee of the defendant since independent contractors can be deemed managing agents for purposes of noticing depositions under Rule 30. *United States v. Afram Lines ( USA), Ltd.,* 159 F.R.D. 408, 413 ( S.D.N.Y. 1994) (under the facts of the case, the court determined that independent contractor/port agents in various African and South American countries were not managing agents for the vessel owner); *Calgene, Inc. v. Enzo Biochem, Inc.,* 1993 WL 645999 (E.D. Cal. Aug. 23, 1993) (a consultant and advisory board member who identified with the interests of the company and who had "power regarding the subject matter of the litigation" was a managing agent); *United*

*States v. Fid. & Guar. Co. v. Braspetro Oil Services Co.,* WL 43607 (S.D.N.Y. Jan. 17, 2001) ("[T]he focus of the [managing agent] analysis is accordingly on the scope of the agent's authority, and the nature of his role in the matters at stake in the litigation.").

It is well-settled that the test for managing agent status is not formulaic, *Schindler Elevator Corp. v. Otis Elevator Company*, 2007 WL 1771509 (S.D.N.Y.) (citing *Boss Mfg. Co. v. Hugo Boss AG,* (S.D.N.Y. Jan. 13, 1999)), and that the term should not be given too literal an interpretation." *Tomingas v. Douglas Aircraft Co., supra,* 45 F.R.D. at 96. As summarized in Wright and Miller's treatise, the question of whether a person is a managing agent under Rule 30 is answered pragmatically and on a fact-specific basis. 8A Wright, Miller & Marcus, *Federal Practice and Procedure* § 2103, at 39 (2d ed.2007). *See also*, *Afram Lines, supra,* 159 F.R.D. at 413 ("Because of the vast variety of factual circumstances to which the concept must be applied, the standard ... remains a functional one to be determined largely on a case-by-case basis.") (quoting *Founding Church of Scientology of Washington, D.C., Inc. v. Webster,* 802 F.2d 1448, 1452 (D.C. Cir.1986)).

At least three general factors have been utilized to determine managing agent status. The basic three are summarized in 8A *Federal Practice and Procedure, supra,* § 2103: (1) whether the individual involved is invested by the corporation with general powers to exercise his discretion and judgment in dealing with corporate matters; (2) whether he or she can be depended upon to carry out the employer's direction to give testimony at the demand of a party engaged in litigation with the employer; and (3) whether he or she can be expected to identify with the interests of the corporation rather than with those of the other parties. "Typically a court will look to all three of these factors, [citations omitted] although it has been said that the third factor, identification with the interests of the employer, is the 'paramount test.' [Citations omitted.]" *Id*.

The burden of establishing managing agent status is "modest," *Boss Mfg., supra,* 1999 WL 20828, and all doubts are to be resolved in favor of the examining party. *Schindler Elevator Corp. v. Otis Elevator, supra,* 2007 WL 1771509; *Malletier v. Dooney & Bourke, Inc.,* 2006 WL 3476735 (S.D.N.Y. Nov. 30, 2006); *Afram Lines, supra,* 159 F.R.D. at 414; *Sugarhill Records, supra,* 105 F.R.D. at 171. The noticing party therefore satisfies its burden when it produces "enough evidence to show that there is at least a close question whether the proposed deponent is the managing agent." *Afram Lines, supra,* 159 F.R.D. at 413.

This "modest" burden of establishing managing agent status under Rule 30 satisfies the ultimate goal of serving the ends of justice because, "[a]s in all matters appertaining to discovery, it is the ends of justice that are to be served." *Church of Scientology, supra,* 802 F.2d at 1453. The underlying reason that this light burden serves the ends of justice is because the corporate defendant is not prejudiced by the determination of managing agent status. As stated by the court in *Sugarhill Records Ltd.,*

*supra,* 105 F.R.D. at 171:

> I am to resolve close questions regarding the status of an employee as 'managing agent' in favor of the examining party, since the issue of whether the witness' testimony can be used as a statement by the defendant still remains to be resolved at trial. *See, e.g., Tomingas,* 45 F.R.D. at 97; *United States v. The Dorothy McAllister,* 24 F.R.D. 316, 318 (S.D.N.Y.1959).

*See also*, *Boss Mfg., supra,* 1999 WL 20828 ("[A] determination that the witness is a managing agent may be made provisionally . . . while awaiting the deposition testimony before determining whether the witness is an agent for purposes of binding the corporation."); *Afram Lines, supra,* 159 F.R.D. at 413-14; 8A Wright, Miller & Marcus, *Federal Practice and Procedure, supra,* § 2103.

Finally, we point out that a restrictive application of the rules concerning managing agent status would allow much mischief were a corporate defendant, and most especially a multi-national corporation, to seek to prevent its employees' depositions. For example, an employee easily could be shifted to a foreign country in order to avoid the subpoena power of the federal courts. Furthermore, not all countries are parties to the Hague Convention and its highly restricted procedures for taking evidence abroad; yet other countries have ratified some, but not all, sections of the Convention. In some countries, including many European countries, depositions taken by counsel are not even allowed. The result in such cases would be that securing useful discovery from critical employee witnesses could be thwarted and, in some instances, prevented altogether.[2] We emphasize that we do *not* contend that BP (or any other defendant in this case) is attempting to move or transfer its employee witnesses for the purpose of avoiding discovery. Instead, our point is that from a precedential standpoint, the case law interpreting the meaning of "managing agent" has evolved to protect against such actions by any litigant in any case.

### B.   The Legal Standards Applied to This Case

A number of the upcoming BP deponents conducted BP's internal accident investigation report, the "Bly Report," named after its lead author, Mark Bly.[3] As stated

---

[2] Securing discovery under Hague Convention procedures can be extremely cumbersome, slow-moving, and potentially very unsatisfactory compared to standard discovery procedures ensconced in the United States courts.

[3] The BP investigation witnesses are Mark Bly, Rex Anderson, Jim Cowie, Jim Wetherbee, Kent Corser, Brian Martin, Walter Guillot, Matt Lucas, Warren Winters, Jim McKay, Gill Cowlam, Dave Wall, Steve Robinson, and Kevin Fontenot.

in the report itself, it was commissioned under the authority of BP's President; it was conducted under the supervision of BP counsel; and, upon its conclusion, it was adopted by BP and published as a public document on the BP official corporate website.[4] Under these facts, *Tomingas v. Douglas Aircraft Co., supra,* is directly on point.

In *Tomingas,* the defendant corporation sent two of its employees, both members of its engineering department, to assist the Canadian government's investigation team regarding the airplane crash which was the subject of the litigation. Plaintiff sought to depose the two engineers at its counsel's New York office. The defendant countered by seeking to vacate the notice of deposition on the basis that both engineers/investigators were merely "employees" and not "managing agents," such that the defendant was under no obligation to produce them for the depositions. The defendant also argued that if the depositions were to be taken, they should proceed at the defendant's principal place of business in California. The court rejected defendant's arguments on both counts, holding:

> Both men appear to possess an identity of interests with their principal, and it likewise appears that they would be responsive to any future directions by their principal either to participate in other accident investigations or to give testimony at the demand of opposing parties to a litigation.
>
> This Court concludes, therefore, that although [the engineer/investigators] may not be 'managing agents' in the course of their everyday duties for the defendant corporation, they are 'managing agents' for the purpose of giving testimony regarding the accident investigation, a most relevant aspect of this litigation. Although the characterization of these two proposed deponents as 'managing agents' is not free from doubt, whatever doubt remains should be resolved in favor of the examining party in that the ultimate determination as to whether the defendant herein shall be bound by the testimony of [the engineers] 'is to be made by the trial court.' *United States v. The Dorothy McAllister, supra*, 24 F.R.D. at 318; *Rubin v. General Tire & Rubber Co., supra*, 18 F.R.D. at 56.
>
> Rule 30(b) of the Federal Rules of Civil Procedure makes it clear that the location designated for the taking of a deposition is solely within the discretion of the court, thereby requiring each application to be considered on its own facts and equities. *Branyan v. Koninklijke*

---

[4] *See*, Appendix "A" hereto, BP's Bly Report, "Transocean Deepwater Horizon Rig Incident Investigation into the Facts and Causation," page 193, Appendix "A", which also is available online at BP's official website at:
<http://www.bp.com/sectiongenericarticle.do?categoryId=9034902&contentId=7064891>.

> *Luchtvaart Maatschappij*, 13 F.R.D. 425, 429 (S.D.N.Y.1953). . . . [T]here has been no showing that any harm would result to defendant's business by virtue of the deponents' brief absence from their jobs. *Toho Bussan Kaisha, Ltd. v. American President Lines*, 141 F.Supp. 783 (S.D.N.Y.1956). Certainly, the depositions could be scheduled to take place at such a time and in such a way that would be most convenient to both [engineers] and least disruptive to defendant's everyday business operations. *Schultz v. Koninklijki Luchtvaart Maatschappij N.V. KLM Royal Dutch Airlines Holland*, 21 F.R.D. 20 (E.D.N.Y.1957). . . . Accordingly, [the engineer/investigators] are required to appear for the taking of their depositions at the New York office of plaintiff's counsel.

*Tomingas v. Douglas Aircraft Co., id.,* 45 F.R.D. at 96-97. Another BP witness, Harry Thierens, is a BP corporate officer ("Vice President for Drilling and Completions"). We therefore need not even apply the "managing agent" analysis as to him. BP claims, however, that Mr. Thierens is based in London and chooses not to travel from the UK to the United States due to an alleged medical condition.

Assuming that BP comes forward and carries its burden of proving a medical condition that counsels against its corporate officer's travel to New Orleans, the United States would consider deposing the witness in London. We note that our BP colleagues have represented that Bly Report investigators/managing agents Jim Cowie and Gill Cowlam are now based in Aberdeen, Scotland, and Dave Wall in London. As a demonstration of reasonableness, flexibility, and professional courtesy that we hope will be reciprocated by our colleagues, the United States would consider taking the depositions of the three witnesses in London if the Thierens deposition were to go forward there as a result of the latter's purported medical condition.

BP's witness, Donald Vidrine, was one of two BP "Company Men" aboard the *Deepwater Horizon* on April 20, 2010 (the official job title is "Well Site Leader"). As such, he and BP's other Company Man, Robert Kaluza, were BP's representatives aboard the rig and thus directly charged with executing BP's orders, policies, and interests, including the methods and manner of drilling the Macondo Well.[5] Based upon their job title alone (either the official or the vernacular), we respectfully suggest that no serious argument could or would be made to the effect that both men are anything other than managing agents.

---

[5] BP's Ronald Sepulvado was another "Company Man" aboard *Deepwater Horizon*. Mr. Sepulvado had gone ashore only days before the blowout and explosion. During his time aboard the rig, he made many critical management decisions on behalf of BP concerning the drilling of the Macondo Well.

A number of other BP witnesses are (or soon will be) scheduled, all of whom are likewise officers and/or managing agents within the meaning of Rule 30 and the case law discussed above. Attached as Appendix "B" is an "Onshore Organizational Chart" published by the President's Oil Spill Commission.[6] The chart lists prospective witnesses such as Pat O'Bryan, John Guide, Brian Morel, Mark Hafle, *etc.* It cannot be reasonably or seriously disputed that these witnesses (and others), each of whom was charged with management and execution of a staggering $100,000,000-plus exploration budget for the Macondo Well, were not invested by BP with general powers to exercise their discretion and judgment *"respecting the subject matter of the litigation."* Quoting *Tomingas v. Douglas Aircraft Co., supra*, 45 F.R.D. at 96 (emphasis in original); *Kolb v. A.H. Bull Steamship Co., supra,* 31 F.R.D. at 254; *Sugarhill Records Ltd., supra,* 105 F.R.D. at 170.

Indeed, these witnesses, as well as the "Well Site Leaders" a/k/a "Company Men," were variously involved in matters that go to the very heart of the litigation, including, merely as examples, well design, drilling, cementing, use of "centralizers," and well control and well abandonment procedures that include the fateful and infamous "negative pressure test" performed only hours before the *Deepwater Horizon's* April 20th blowout, explosions, fire, and oil spill. *See, e.g.*, Appendix "C", which is an April 20th e-mail from Brian Morel to various co-managing agents, concerning the well abandonment procedures for the Macondo Well, including the negative pressure test.[7] In short, these core witnesses and others are subject to the deposition notice requirements of Rule 30 of the Fed.R.Civ.P.

## Conclusion

For the reasons stated in our letter of December 20th and this letter brief, as well as at oral argument, we respectfully submit that the equities and the relationships of the parties in this MDL strongly favor holding depositions in New Orleans rather than

---

[6] Also attached as part of Appendix "B" is the "Rig Crew Organizational Chart." Both documents are publicly available on the Oil Spill Commission's website at: <http://www.oilspillcommission.gov/sites/default/files/meeting5/Master_Presentation_v2.pdf>.

[7] The e-mail is marked "Confidential Treatment Requested." Despite our understanding that the document is already publicly available (it was made available to Congress and to various investigations) and, in any event, would not enjoy any type of legally protected status, we shall honor the provisions of PTO 13 ("Order Protecting Confidentiality"). Since this letter is not being filed and is only being sent to counsel, the Court, and its staff, it falls within the provisions of Paragraph 5 of PTO 13. Should we later file the letter and the Appendices as part of the docket, we shall follow the procedures outlined at Paragraphs 8(b) and/or 9 of PTO 13.

Houston. We therefore ask that the Court exercise its discretion and order that the depositions be taken in this District.

Respectfully submitted,

R. Michael Underhill
Attorney in Charge
Dept. Of Justice, Torts Branch
West Coast and Pacific Rim Office

Attachments (Appendices "A", "B", and "C")

cc: (via e-mail)

    Mike O'Keefe (Law Clerk to Magistrate Judge Shushan)
    Kat Shea (Law Clerk to Judge Barbier)
    Plaintiffs' Liaison Counsel
    Defendants' Liaison Counsel
    Steve O'Rourke, U.S. DOJ
    AUSA Sharon Smith

# APPENDIX "A"

# APPENDIX "A" TO BLY REPORT

# Appendix A.

## Transocean Deepwater Horizon Rig Incident
### Investigation Into the Facts and Causation
(April 23, 2010)

The President of BP Exploration & Production Inc. agreed the following Terms of Reference and has requested that Mark Bly, Group Head of Safety & Operations, lead the investigation team[1]:

The scope of the investigation to find the facts surrounding the uncontrolled release of hydrocarbons and efforts to contain the release aboard the Transocean drillship Deepwater Horizon, located approximately 40 miles south of Venice, LA at Mississippi Canyon 252, BP's Macondo prospect is as follows:

1. Collect evidence surrounding the incident[2]

2. Determine the actual physical conditions, controls, and operational regime related to the incident to understand:
    a. Sequence of relevant events
    b. Reasons for initial release
    c. Reasons for fire
    d. Efforts to control flow at initial event

3. Prepare a report to include:
    a. Background
    b. Timeline
    c. Description of incident
    d. Critical factors
        i. Immediate Causes
        ii. System Causes
    e. Proposed Recommendations

4. Administrative
    a. All activities of the fact-finding teams will be approved in advance by the respective team leader
    b. Retain all incident investigation team documents (including notes, drafts, electronic documents and emails) relating to the fact-finding and the incident
    c. Maintain confidentiality of our discussions
    d. BP person at each interview
    e. No questions or tasks to BP contractors without BP approval

---

[1] James Lucari, Managing Attorney – BP Legal HSSE and Regulation, has been assigned to provide legal advice and counsel to Mr. Bly in his role as investigation team lead.

[2] Given the business and regulatory relationships involved in this context, the Incident Investigation team's efforts will be informed by physical evidence, data and information that is in the custody and/or control of third parties. The incident investigation team's access to this information may affect its ability to complete the terms of reference set forth herein.

# APPENDIX "B"

# "ONSHORE ORGANIZATIONAL CHART" AND "RIG CREW ORGANIZATIONAL CHART"









# APPENDIX "C"

# APRIL 20, 2010 E-MAIL FROM MOREL TO VIDRINE, KALUZA, LAMBERT, LEE, GUIDE, HAFLE, COCALES, AND WALZ

**Kaluza, Robert**

| | |
|---|---|
| From: | Morel, Brian P |
| Sent: | Tuesday, April 20, 2010 10:43 AM |
| To: | Morel, Brian P; Vidrine, Don J; Kaluza, Robert; Lambert, Lee; Lee, Earl P (Oper Svcs Dril) |
| Cc: | Guide, John; Hafle, Mark E; Cocales, Brett W; Walz, Gregory S |
| Subject: | Ops Note |
| Follow Up Flag: | Follow up |
| Flag Status: | Red |

Quick ops note for the next few days:
1. Test casing per APD to 250 / 2500 psi
2. RIH to 8367'
3. Displace to seawater from there to above the wellhead
4. With seawater in the kill close annular and do a negative test ~2350 psi differential
5. Open annular and continue displacement
6. Set a 300' balanced cement plug w/ 5 bbls in DP
7. POOH ~100-200' above top of cement and drop neft ball / circulate DS volume
8. Spot corrosion inhibitor in the open hole
9. POOH to just below the wellhead or above with the 3-1/2" stinger (if desired wash with the 3-1/2" / do not rotate / a separate run will not be made to wash as the displacement will clean up the wellhead)
10. POOH and make LIT / LDS runs
11. Test casing to 1000 psi with seawater (non MMS test / BP DWOP) – surface plug
    a. Confirm bbls to pressure up on original casing test vs bbls to test surface plug (should be less due to volume differences and fluid compressibility –seawater vs sobm)
    b. Plot on chart / send to Houston for confirmation

4/25/2010

Confidential Treatment Requested

BP-HZN-CEC020165
BPC002-023831