UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG | : | MDL NO. 2179 |
| "DEEPWATER HORIZON" in the | : | SECTION: J |
| GULF OF MEXICO, on | : |  |
| APRIL 20, 2010 | : |  |
|  | : | JUDGE BARBIER |
| THIS DOCUMENT RELATES TO: |  | MAG. JUDGE SHUSHAN |
| ALL CASES. | : |  |

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**OPPOSITION TO MOTION TO SUPERVISE *EX PARTE* COMMUNICATIONS BETWEEN BP DEFENDANTS AND PUTATIVE CLASS MEMBERS**

**NOW INTO COURT**, through undersigned counsel, come the Plaintiffs in the following cases, to submit this Opposition Brief:

1. Bill's Oyster House, LLC *et al* (E.D. La., 10-cv-1308)
2. Howard Buras (M.D. La., 10-cv-369 and 10-cv-2994)
3. Armand's Bistro (W.D. La., 10-cv-1007 and 10-cv-4489)
4. Faye Loupe *et al.* (E.D. La., 10-cv-2764)
5. Laura Gautreaux (E.D. La., 10-cv-1539)
6. Brent Rodrigue, Sr *et al.* (E.D. La., 10-cv-1325)
7. Issadore Creppel (E.D. La., 10-cv-1346)

**1. Introduction**
**2. Facts**
**3. Law**
**4. Conclusion**

**1. Introduction:**

In its Motion the PSC prays for "an Order supervising the Release and associated communications from the BP Defendants and their agents, Mr. Feinberg and the Claims Facility, to Plaintiffs and Putative Class Members".

1

Because Mr. Feinberg and the Gulf Coast Claims Facility (GCCF) are not parties in this litigation, the PSC's Motion seems to be asking this Court to order BP itself to order Mr. Feinberg and the GCCF (as its purported "agents") take certain actions. However, they clearly are not "agents" of BP.  (See Advisory Letter from Professor Stephen Gillers to Mr. Feinberg, December 28, 2010, attached as Exhibit "1".)

Even if they were, however, it is respectfully submitted that neither this nor any other Court has the constitutional jurisdiction to control or influence the activities of Mr. Feinberg or the GCCF, in that they are an appointee and an agency of the executive branch of the federal government.

**2. Facts:**

On June 16, 2010, President Obama, in response to the BP Spill, announced that he had created the GCCF and had chosen Mr. Kenneth Feinberg to be the "Independent Claims Administrator". (See attached Exhibit "2"; White House Press Release; June 16, 2010).

However, even prior to the President's creation of the GCCF, several Gulf Coast States attorneys, including undersigned counsel, with their overriding  interest and goal being the wellbeing of their fellow Gulf Coast States citizens,  had already started to urge the President to create an entity to bring quick and equitable economic  relief to the spill victims. They had immediately seen that the best way to achieve this clearly would not be through lengthy and complicated litigation against BP and others, but through the creation of an independent claims procedure, to be created, run and controlled by the President, which, in fact, a month later, the President did create.

To this end, on May 19, 2010, a month before the President created the GCCF and appointed Mr. Feinberg, undersigned counsel wrote to the White House (through Mr. Jeffrey

Lerner, its Southern Regional Director, Office of Political Affairs), listing nine suggestions on how to deal with various facets of the spill in an expedited and efficient manner. Among those was the creation an independent and streamlined claims facility and procedure to provide quick economic relief to spill victims:

> I have discussed with some of the defendants a proposal I think could serve the President, the Oil Industry, and all of the victims in connection with the BP disaster well:
> ….
> 2) The President should ask the defendants to put up a fund of $1 billion and appoint a Special Master or team of Special Masters to allow people who have suffered economic injury such as fishermen, oystermen, seafood businesses, condo owners, etc., to be compensated pending the litigation, with a credit being given to the defendants should the case not settle on a global basis.
> *(May 19, 2010 email from Daniel Becnel to Jeffery Lerner, attached as Exhibit "3")*

The President subsequently created the GCCF and it has successfully processed and continues to successfully process almost half a million claims. As Mr. Feinberg stated in a recent interview:

> If you had told me that there would be in the first 90 days of the program 400,000 claims, I would have been shocked. That statistic tells me a great deal about the program. If I wasn't paying the money, if I wasn't finding people eligible, if I wasn't offering compensation, you wouldn't have 400,000 people. There's a reason 400,000 people and businesses have filed with the fund."
> *(John Schwartz video interview with Kenneth Feinberg, November 26, 2010; http://video.nytimes.com/video/2010/11/26/continuous/1248069378883/timescast-november-26-2010.html?emc=eta1*

In the weeks since that interview, the number of claims has steadily increased. As of January 3, 2011, according to GCCF's website:

> - 469,000 plus claims have been filed, including
> -386,000 plus Individual claims and
> -82,000 plus Business claims.
> -Claims' payments total over $2.8 billion.
>
> (http://www.gulfcoastclaimsfacility.com/reports)

3

<u>Over 13,000 of these claimants are represented by counsel with the GCCF.</u>

Counsel for the undersigned and a group of numerous other lawyers from Louisiana, Texas, Mississippi, Alabama and Florida have been and continue to work tirelessly with Mr. Feinberg and GCCF ever since his appointment, to resolve claims of several thousands of businesses, residents and fishermen from all the Gulf Coast States, in all phases of the GCCF's procedure – emergency, interim and final.

This group of lawyers communicates regularly to organize and maintain the efficient and timely processing of thousands of claims with the GCCF. They have divided up various assignments and responsibilities and are a substantial benefit not just to their own thousands of clients but to the GCCF itself. As but one indication of the size and extent of the work this group is performing is the Organizational Chart the group uses in organizing, presenting, negotiating and settling their claims to GCCF, reproduced immediately below:

| CATEGORY OF CLAIMANTS | CLAIMS |
|---|---|
| 1. Rental Management Company | Lost income (past and future) |
| 2. Real Estate Owners | 1. Lost income (past and future)<br>2. Diminution in property value (oiled)<br>3. Diminution in property value (not oiled)<br>4. Claims for testing/cleanup/monitoring expenses |
| 3. Tourism Related Businesses (e.g. Wedding Planner on Beach; T-Shirt Shop, etc.) | Lost income (past and future) |
| 4. Hotels/Restaurants/Cafes | Lost income (past and future) |
| 5. Developers/Construction/Construction-related | 1. Diminution in property value (oiled)<br>2. Diminution in property value (not oiled)<br>3. Canceled/delayed development/interruption of business plan<br>4. Lost income from sales (past and future)<br>5. Other lost income (e.g. rentals of construction equipment; sales of construction materials) (past and future) |
| 6. Real Estate Company/Real Estate Services/Agent | Lost income (past and future) |
| 7. Seafood Processors/Wholesalers /Retailers/Longshoremen/ etc. (in chain of harvesting marine resource) | Lost income (past and future) |
| 8. Suppliers to marine industry | Lost income (past and future) |

...
...

| | |
|---|---|
| 9. Shrimper/Fisherman/Oysterman/ Charter Boat Captains/Fishing Guides | Lost income (past and future) |
| 10. Others: | |
|     Environmental Claimants | |
|     Securities Claims/Stockholders | |
|     General business/professional | |
|     Banks | |

With fast and fair compensation for spill victims being the utmost priority to this group, they have steadfastly supported and worked with Mr. Feinberg since the day his office was created. (In fact, as noted above, undersigned counsel recommended to the President that he create exactly such a position a full month before the President so announced.)

Last June 29, 2010, just two weeks after the President appointed Mr. Feinberg, this group of lawyers got his partner, Michael Rozen, to travel to New Orleans and address and take questions and suggestions from two hundred lawyers at a public forum at Loyola Law School. In September, they were instrumental in organizing the LSBA's 17th Annual Admiralty Symposium –"The Gulf Oil Spill";  and just last month they arranged for Mr. Rozen to meet again with lawyers involved in the MDL.

Members of the group have also provided crucial and substantial work directly for this multi-district litigation. They filed the first suits, were the first to request the suits be made into a multi-district litigation, provided oral argument before the Multi District Litigation Panel, and successfully advocated that New Orleans be the site of any MDL and that a judge from this district be assigned to it. They have retained dozens of the foremost experts in hydrology, environmental engineering, toxicology, blowout preventers, offshore drilling and more.

Undersigned counsel's firm alone has consistently provided some of this most critical support. This includes:

- Attending the Joint Coast Guard/B.O.E.M. hearings and reporting and distributing daily on them;

- Viewing the Presidential Spill Commission hearings and reporting and distributing daily on them;

- Obtaining and distributing critical reports by both the government and private interests, including numerous reports by the Presidential Spill Commission as well as the *Deepwater Horizon Study Group*, headed by Professor Bob Bea of U.C., Berkeley and comprised of scientists and experts worldwide;

- Hiring numerous experts in chemical engineering, geology, offshore drilling, metallurgy, wave action, oil dissemination, property evaluation, air modeling and more; and

- Working closely with U.S. Congressmen Waxman and Markey and their investigations, including providing them with numerous documents and information, such as identification of several experts. (See email from congressional aide Jennifer Owens, House Committee on Energy and Commerce; May 7, 2010, attached as "Exhibit 4".)

In stark contrast to these attorneys' successful workings with the GCCF, many other attorneys' primary impression of the GCCF seems to be as nothing more than an obstacle to more fees. The more they can control and limit the efficacy and power and of the GCCF, the more their fees will increase – at the expense of spill victims' opportunity not only to quick and

fair settlements but settlement amounts of smaller value in that there would be not only increases in attorney's fees but also the inclusion of deductions for common benefit work.

Although the Motion at issue states that the PSC does not want to "interfere with the processing of payments of claims", its antagonism towards Mr. Feinberg is long standing, and its Motion, if successful, surely will prove to be just the first salvo of many to follow in the PSC's attempt to limit Mr. Feinberg any and every why it can.

As but one example, cited on the main page of Liaison Counsel's website is an in-house "article": "Public Officials Speak Out Against Feinberg as BP Claims Process Changes". It notes, *inter alia*:

> Public officials across the nation are speaking out against Kenneth Feinberg and his protocol for paying claims…. his neutrality is being questioned by many nationwide, including the attorneys here at HHK&C.
>
> Alabama Attorney General Troy King … describes Feinberg's actions and statements as "misleading, "inadequate", "extortion",  "a delay in justice" and an attempt to force these citizens into accepting less than what they need and are entitled to from BP."
> (*http://www.hhkc.com/Headlines/BP_Claims.aspx*);
> (Attached as Exhibit "4").

Mr. Feinberg has uniformly and unequivocally performed all his work honestly and efficiently.  And when he makes mistakes he forthrightly admits and rectifies them to improve the operation of the GCCF. When, for example, preparing the operational rules for the GCCF, he sought the advice of numerous public officials, even including the Attorneys General of every Gulf State. When first confronted with unique claims for *indirect* damage to (non-adjacent) property, he retained an expert in tort law, Professor John Goldberg of Harvard. Likewise, and as noted above (and attached as Exhibit "1"), he retained an ethics law expert, Professor Stephen Gillers of N.Y.U. Law School, to evaluate the criticisms in the PSC's Motion regarding the language in the GCCF's Claim Release Form.

In fact, the primary criticism of Mr. Feinberg has only been that he has denied claims with lack of proof. This, however, as he has noted, is to preserve the integrity of and the public's faith in the GCCF:

> "Nothing can undercut the credibility of a program more than the perception that you're paying fraudulent claims," said Mr. Feinberg, who administered the settlement for victims of the 9/11 attacks and has done similar work for people affected by Hurricane Katrina, the defoliant Agent Orange and the 2007 killings at Virginia Tech University.
>
> The key to fighting fraud, he said, is corroboration of large claims. Of the 7,300 claims processed in the $7 billion 9/11 fund, he said, his team determined that 35 were fraudulent. "Some people went to jail, others paid a fine," he said. (*http://www.nytimes.com/2010/06/19/us/19escrow.html*)

To this end, Mr. Feinberg has enlisted the help of the F.B.I., Department of Justice, Secret Service and U.S. Postal Inspection Service. As of last month, Mr. Feinberg announced that less than one percent ("2,000 to 3,000 claims") appeared "very suspicious" and he was forwarding to the Justice Department "any claims that appear to be fraudulent". To date, seven people have been indicted by the Justice Department

 (*http://www.nola.com/news/gulf-oil-spill/index.ssf/2010/12/fraudulent_claims_in_gulf_oil.html*)

Mr. Feinberg's concerns and success in preserving the integrity of the GCCF stands in stark contrast to that of FEMA, which was universally ridiculed in its handling of the effects of Hurricane Katrina, and which just this week was accused by the Department of Homeland Security's Inspector General for improperly paying $643 million in claims, which amounted to nine percent of the claims paid.

*(http://www.nola.com/hurricane/index.ssf/2011/01/fema_urged_to_pursue_64_millio.html)*

If the PSC succeeds in this Motion to limit the independence of Mr. Feinberg, it will certainly lead to substantial disruption, delay and confusion in GCCF's negotiations and settlement discussions with spill victims, including the thousands represented by the attorneys as discussed in this memorandum, not to mention the confusion that would be caused by such an unprecedented restriction of an executive agency's powers.  Additionally, the insertion of the PSC into this process would result in a decrease in funds provided directly to the injured parties, through the allocation of exorbitant attorney's fees in the nature of common benefit funds.

**3. Law:**

> "The executive power shall be vested in a President of the United States of America." (*Article 2, United States Constitution*)

In reviewing this clause in the first judicial challenge to the powers of the President, Justice Marshall stated in <u>Marbury v Madison</u>:

> <u>By the constitution of the United States, the President is invested with certain important political powers, in the exercise of which he is to use his own discretion, and is accountable only to his country in his political character and to his own conscience. To aid him in the performance of these duties, he is authorized to appoint certain officers, who act by his authority, and in conformity with his orders.</u>
>
> In such cases, their acts are his acts; and whatever opinion may be entertained of the manner in which executive discretion may be used, still there exists, and can exist, no power to control that discretion. The subjects are political. They respect the nation, not individual rights, and being intrusted to the executive, the decision of the executive is conclusive. The application of this remark will be perceived by adverting to the act of congress for establishing the department of foreign affairs. <u>This officer, as his duties were prescribed by that act, is to conform precisely to the will of the President. He is the mere organ by whom that will is communicated. The acts of such an officer, as an officer, can never be examinable by the courts.</u>
>
> But when the legislature proceeds to impose on that officer other duties; when he is directed peremptorily to perform certain acts; when the rights of individuals are dependent on the performance of those acts; he is so far the officer of the law; is amenable to the laws for his conduct; and cannot at his discretion sport away the vested rights of others.

> The conclusion from this reasoning is, that where the heads of departments are the political or confidential agents of the executive, merely to execute the will of the President, or rather to act in cases in which the executive possesses a constitutional or legal discretion, nothing can be more perfectly clear than that their acts are only politically examinable. But where a specific duty is assigned by law, and individual rights depend upon the performance of that duty, it seems equally clear that the individual who considers himself injured, has a right to resort to the laws of his country for a remedy.
>
> It is not by the office of the person to whom the writ is directed, but the nature of the thing to be done, that the propriety or impropriety of issuing a mandamus is to be determined. Where the head of a department acts in a case, in which executive discretion is to be exercised; in which he is the mere organ of executive will; it is again repeated, that any application to a court to control, in any respect, his conduct would be rejected without hesitation.
>
> But where he is directed by law to do a certain act affecting the absolute rights of individuals, in the performance of which he is not placed under the particular direction of the President, and the performance of which the President cannot lawfully forbid, and therefore is never presumed to have forbidden; as for example, to record a commission, or a patent for land, which has received all the legal solemnities; or to give a copy of such record; in such cases, it is not perceived on what ground the courts of the country are further excused from the duty of giving judgment that right be done to an injured individual, than if the same services were to be performed by a person not the head of a department.
>
> *Marbury v Madison*, 5 U.S. (1 Cranch) 137, 154, 2 L.Ed 60 (1803), (as quoted in *National Treasury Employees Union v Nixon*, 492 F.2d 588, at 590-91 (D.C. Cir., 1974); *emphasis added*

No "ministerial" act, as discussed in Marbury or any of its uninterrupted line of authority since 1803, is involved in this matter and the PSC has alleged none.

To the contrary, Mr. Feinberg, as an appointee of the President, stands in the shoes of the President, and "in such cases, their [Mr. Feinberg's] acts are his [the President's] acts; and whatever opinion may be entertained of the manner in which executive discretion may be used, still there exists, and can exist, no power to control that discretion". *(Marbury, at 154, and as quoted in NTEU at 590.)*

Accordingly, it is respectfully submitted neither this nor any other Court has any constitutional jurisdiction to grant the PSC's Motion.

**4. Conclusion:**

First, the Motion should be denied because Mr. Feinberg and the GCCF are neither parties in this litigation nor "agents" of BP.

Second, even if they were BP's "agents", the Motion should be denied because it would disrupt both (1) the substantial ongoing negotiations that a group of numerous attorneys is having directly with the GFFC to settle several thousands of claims and (2) the ongoing procedures and processes of the GCCF itself.

Finally, the GCCF is an agency of the executive branch of the United States and its Administrator, Mr. Feinberg, is an appointee of the President. As such, the actions that the PSC requests this Court to take, it is respectfully submitted, are beyond the constitutional powers of our nation's judiciary to grant on anybody's behalf, including the PSC's.

Accordingly, it is respectfully requested that the "Motion to Supervise *Ex Parte* Communications Between BP Defendants and Putative Class Members" be denied.

Respectfully submitted,

this 4th day of January, 2010.

  /s/    Daniel E. Becnel, Jr.
DANIEL E. BECNEL, JR. (#2926)
CHRISTOPHER D. BECNEL (#30859)
DARRYL J. BECNEL (#22943)
TONI S. BECNEL (#23645)
SALVADORE CHRISTINA, JR. (#27198)
MATTHEW B. MORELAND (#24567)
WILLIAM A. PERCY III (#01532)
**BECNEL LAW FIRM, LLC**
P. O. Drawer H
106 West Seventh Street
Reserve, Louisiana 70084

Telephone: (985) 536-1186
Facsimile: (985) 536-6445
E-mail: dbecnel@becnellaw.com
**Attorneys for Plaintiffs Bill's Oyster House, LLC; Howard Buras, Armand's Bistro, Faye Loup et al.; Laura Gautreaux, Brent Rodrigue, Sr., et al.; and Issadore Creppel**

.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that the above and foregoing Memorandum will be served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing will be electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this ___4th___ day of January, 2011.

_/s/   Daniel E. Becnel, Jr._____