UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG | * | MDL NO. 2179 |
|     "DEEPWATER HORIZON" in the | * | |
|     GULF OF MEXICO, on | * | SECTION:  J |
|     APRIL 20, 2010 | * | |
| | * | JUDGE BARBIER |
| THIS DOCUMENT RELATES TO ALL | * | MAG. JUDGE SHUSHAN |
|     CASES | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*\*

### RESPONSE OF DEFENDANT CAMERON INTERNATIONAL CORPORATION TO MOTION OF PLAINTIFFS TO SUPERVISE COMMUNICATIONS BETWEEN DEFENDANT AND PUTATIVE CLASS MEMBERS

Cameron International Corporation ("Cameron") respectfully responds to the Plaintiffs' motion to supervise communications between the BP Defendants and putative class members [Doc 912].  That motion is primarily a matter between BP and Plaintiffs' Steering Committee.  But the motion does raise a complaint about releases secured by the Gulf Coast Claims Facility, which affects Cameron's interests.  *See* Mot. at 20-21.  Plaintiffs ask the Court to limit the scope of the releases to BP entities.  *Id*.  That suggestion is contrary to basic law governing releases, unsupported by any legal authority, and it would frustrate the scheme created by Congress in the Oil Pollution Act of 1990 (OPA).  In that respect, at least, the motion should be denied.

1042548v.1

**ARGUMENT**

For the most part, Plaintiffs' motion is comprised of complaints about the independence of Kenneth Feinberg, administrator of the Gulf Coast Claims Facility, communications between Mr. Feinberg and potential claimants, and requests for supervision of Mr. Feinberg's activities. Cameron does not believe supervision of Mr. Feinberg is necessary or proper, but if the Court decides that any judicial supervision is warranted, Cameron wishes to address the Plaintiffs' unfounded suggestion that the scope of any release be limited to only BP entities.

**I.     There Is Nothing Wrong With Settling Claims Against a Non-Signatory.**

First, it is settled that a contracting party may bargain for the release of a non-signatory. A release is simply a contract, to be governed by the ordinary rules of contract law and construed in accordance with the parties' intent. *See* RESTATEMENT (SECOND) OF CONTRACTS § 284 cmt. c ("The rules of interpretation that apply to contracts generally apply also to writings that purport to be releases."); *id*. at 302 (third-party beneficiaries may acquire enforceable rights by contract). That proposition is not controversial as a general rule, and Plaintiffs' motion does not deny it— nor do the Plaintiffs cite any legal authority for their suggestion that the Court rewrite releases that are the product of legitimate, bargained-for, arms-length settlements.

Lacking any legal authority, Plaintiffs claim that the Trust Document bars Mr. Feinberg from paying claims for losses caused by other parties. Mot. at 20-21. Putting aside the question whether Plaintiffs have any standing to complain about the alleged *ultra vires* payment of claims (a question that would seem to be between the Trust settlor and the administrator, not Plaintiffs), Plaintiffs have badly misread the Trust Document. It does not limit Mr. Feinberg's authority to secure releases in favor of non-signatories, nor does it forbid him from paying claims for losses that might be attributed to third parties. Indeed, OPA *requires* that BP pay such claims.

As Plaintiffs note, the Gulf Coast Claims Facility was created to address "the Grantor's" liability for this incident.  Mot. at 20.  Because the Grantor (BP) has been designated as the "responsible party" for purposes of OPA, it is liable for all the losses proved by the claimants—even if some of those losses might potentially be blamed on third parties.  *See* 33 U.S.C. § 2713.  Thus, the Plaintiffs are quite wrong to suggest that the claims paid by Mr. Feinberg somehow fall outside the scope of "the Grantor's" liability.

Similarly, the Plaintiffs' claim that the Trust Document "excludes any possible payments for claims or damages caused by the other defendants," Mot. at 20, misreads the document badly.  The Trust Document excludes payments for "any claims by" certain designated third parties—not for claims "caused by" such third parties.  *See* Mot. at 21 (quoting Trust Agreement ¶ 3).  Mr. Feinberg is not paying claims "by" such parties; he is paying claims "by" oil spill claimants.  The Trust Document does not limit his power to settle claims for losses "caused by" third parties and secure broad releases.  Indeed, this activity is essential to the OPA remedial scheme.

**II.     The Broad Release Is Necessary to Effectuate the OPA Remedial Scheme.**

It is no accident that the release is broadly worded to include "anyone who is or could be responsible or liable in any way" for the explosion and oil spill.  Mot. at 20 (quoting the release).  A broad release is integral to the comprehensive remedial scheme enacted by Congress in OPA.  Cameron will provide a comprehensive account of the OPA remedial scheme in its forthcoming motions to dismiss, so it is unnecessary to burden the Court with a complete explanation now.  For present purposes, it is enough to note that OPA contemplates—indeed, virtually mandates—the broad language of the release.  Plaintiffs' request for judicial interference with the release would frustrate the will of Congress and the OPA remedial scheme.

1042548v.1

OPA constructs a comprehensive statutory scheme for the assignment of responsibility and payment of compensation for specified damages that result from the discharge of oil from, *inter alia*, an outer continental shelf facility like the Deepwater Horizon and the Macondo well. 33 U.S.C. §§ 2701(22), (25), (32)(C) and 2702(a). The OPA statutory scheme revolves around the designation of "responsible parties," who are liable for certain removal costs and damages. *Id*. § 2702(b)(A), (B), (D), (F). In this litigation, BP is a "responsible party"; Cameron is not. Doc. 879 at ¶¶ 602-12 (B1 Master Complaint).

Under the OPA scheme, "all claims . . . shall be presented first to the responsible party." 33 U.S.C. §§ 2713(a). If a claim is not paid, then the claimant may sue "the responsible party." *Id.* § 2713(c). OPA does not authorize claimants to sue non-responsible parties like Cameron. Instead, when a responsible party pays a claimant, that party becomes "subrogated to all rights, claims, and causes of action that the claimant has under any other law." 33 U.S.C. § 2715(a). Congress adopted this remedial scheme to implement its considered judgment that "litigation or lengthy adjudicatory proceedings over liability, defenses, or the propriety of claims should be reserved for subrogation actions against dischargers." S. REP. 101-94, 101st Cong., 1st Sess. 1989 ("S. REP."), 1990 U.S. CODE CONG. & ADMIN. NEWS 722, 732.

By this comprehensive scheme, OPA creates a streamlined remedial process under which claimants may recover removal costs and damages from a statutorily defined "responsible party," without any need to prove fault. That party is then subrogated to any claims against third parties. In this case, once a claimant is paid by Mr. Feinberg with BP funds, OPA treats the payment as having resolved all of the claimants' rights and causes of action with respect to the oil spill and transfers "all" of the claimant's "rights, claims, and causes of action" to the responsible party. The claimant has no direct claim against third parties like Cameron.

Given this comprehensive OPA remedial scheme, the release in question is entirely fair. It accurately and truthfully communicates the legal effect of the OPA subrogation provision. Once a claimant is paid, the paid claimant no longer has any rights, claims or causes of action against third parties. Plaintiffs' objections to the scope of the release conflict irreconcilably with the OPA subrogation provision and the OPA remedial scheme.

In addition, Plaintiffs' desire to preserve claims against non-responsible parties would "interfere with the methods by which" OPA "was designed" to achieve the goals of Congress. *International Paper Co. v. Ouellette*, 471 U.S. 481, 491-92 (1987). OPA's language and history unquestionably reflect "a congressional desire to encourage settlement and avoid litigation." *Boca Ciega Hotel, Inc. v. Bouchard Transportation Co.*, 51 F.3d 235, 238-39 (11th Cir. 1995); *Gabarick v. Laurin Maritime (America) Inc.*, 623 F. Supp.2d 741, 747-48 (E.D. La. 2009). Here, Plaintiffs' motion seeks to discourage settlement and foment litigation (by preserving claims against non-responsible parties and thereby reducing the responsible party's incentive to settle). Permitting claimants to preserve claims against third parties, even after receiving payment from a responsible party who is supposed to be subrogated to all potential claims against third parties, would conflict with the carefully orchestrated procedure fashioned by Congress.

In *Ouellette*, the Supreme Court observed that "it would be extraordinary for Congress," having carefully crafted a comprehensive remedial scheme for offshore oil spills, "to tolerate common-law suits that have the potential to undermine" that scheme. *Ouellette* 479 U.S. at 497. The same is true here. The release in question responsibly uses language that is routinely used in settlements of multi-party litigation to achieve closure and finality. The Court should decline the Plaintiffs' request to interfere with the release.

1042548v.1

## **CONCLUSION**

Cameron respectfully submits that the Court should not interfere with the release as requested at pp. 20-21 of Plaintiffs' motion.

Respectfully submitted,

David J. Beck, T.A.
    dbeck@brsfirm.com
Joe W. Redden, Jr.
    jredden@brsfirm.com
David W. Jones
    djones@brsfirm.com
Geoffrey Gannaway
    ggannaway@brsfirm.com
BECK, REDDEN & SECREST, L.L.P.
One Houston Center
1221 Mckinney, Suite 4500
Houston, TX  77010-2010
713-951-3700
713-951-3720 (fax)

Howard L. Murphy, 9844
    hmurphy@dkslaw.com
Bertrand M. Cass, Jr., 3984
    bcass@dkslaw.com
Francis J. Barry, Jr., 2830
    fbarry@dkslaw.com
Jonathan M. Walsh, 25922
    jwalsh@dkslaw.com
Paul D. Hales, 30539
    phales@dkslaw.com
DEUTSCH, KERRIGAN & STILES
755 Magazine Street
New Orleans, Louisiana 70130
504-581-5141
504-566-4039 (fax)

and

/s/ Phillip A. Wittmann
Phillip A. Wittmann, 13625
    pwittman@stonepigman.com
Carmelite S. Bertaut, 3054
    cbertaut@stonepigman.com
Keith B. Hall, 24444
    khall@stonepigman.com
Jared Davidson, 32419
    jdavidson@stonepigman.com
STONE PIGMAN WALTHER WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
504-581-3200
504-581-3361 (fax)

ATTORNEYS FOR DEFENDANT
CAMERON INTERNATIONAL
CORPORATION

## CERTIFICATE OF SERVICE

    I hereby certify that the above and foregoing Response of Defendant Cameron International Corporation to Motion of Plaintiffs to Supervise Communications Between Defendant and Putative Class members has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pre Trial Order # 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179 on this 7th day of January, 2011.

    /s/ Phillip A. Wittmann
    Phillip A. Wittmann

1042548v.1