UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG : | MDL-2179 |
| "DEEPWATER HORIZON" in the : | |
| GULF OF MEXICO, on : | |
| APRIL 20, 2010 : | |
| : | SECTION J |
| : | |
| THIS DOCUMENT RELATES TO: : | JUDGE BARBIER |
| : | MAG. JUDGE SHUSHAN |
| ALL ACTIONS : | |

……………………………………………………………………………………………………

## AMICUS BRIEF ON BEHALF OF FIFTEEN STATES
## REGARDING SEPARATE GOVERNMENT CASE TRACK

NOW INTO COURT come the States of Arkansas, Alaska, Colorado, Delaware, Idaho, Indiana, Kentucky, Mississippi, Missouri, Nebraska, New Mexico, Texas, Utah, Vermont, and Washington[1], by and through their respective Attorneys General (the "States").[2] All of the States have a significant interest in this Court's resolution of the State of Louisiana's pending request for a separate government case track because it involves issues that may affect the States' abilities to fulfill their constitutional and statutory responsibilities to protect the interests of the public in the federal courts.

If this Honorable Court's Case Management Order No. 1 is not altered consistent with the State of Louisiana's Motion for Creation of a Separate Government Case Track[3], at least two

---

[1] The State of Florida supports the positions stated in the amicus brief and will be filing a separate document with the court addressing these issues.

[2] Not all of the States represented by the undersigned have filed or will file civil actions related to the Deepwater Horizon oil spill, though some have potential claims arising from the spill and may be plaintiffs in this Multidistrict Litigation ("MDL"). By filing this Amicus Brief, no such State acknowledges, nor waives its right to object to, federal jurisdiction over any potential action that may be filed as a result of the BP oil spill, nor does any State acknowledge support for, or waive its right to object to, the transfer and consolidation of actions brought on behalf of governmental entities into a single action with all litigants having filed claims in connection with this matter.

[3] Louisiana's Motion for Creation of a Separate Government Track (Rec. Doc. 248) also requests appointment of liaison counsel. The States do not join the State of Louisiana's Motion for Appointment of Liaison Counsel to the extent that it seeks appointment of liaison counsel on behalf of any State other than Louisiana.

1

unprecedented events will ensue: First, a federal court will be ordering a sovereign State to turn over authority to prosecute and settle State claims to judicially selected private attorneys not of the State's choosing. Second, the Court will effectively be displacing a State's duly elected or appointed Attorney General. Moreover, this unprecedented arrangement is being undertaken in the speculative hope that it will increase the efficiency of the multidistrict litigation process.

This result infringes upon the most basic notions of federalism and State sovereignty. It is for this reason that the States support the pending Motion for Creation of Separate Government Track filed by the State of Louisiana (Rec. Doc. 248), along with the pending Ex Parte Motion for Hearing and accompanying Memorandum in Support thereof (Rec. Doc. 505). In addition to Louisiana's pending request, position statements have been filed in support of a government track by both the United States[4] and the State of Mississippi[5] which are consistent with the views expressed in this Amicus Brief. For the reasons more fully articulated in each of those filings, and as further argued herein, the undersigned State Attorneys General join the United States, Louisiana, and Mississippi in advocating for the creation of a special "government track" for discovery and other pretrial proceedings, separate from the standard case track for private litigants. Such a dual-track arrangement would set an appropriate legal precedent consistent with basic notions of sovereignty, would recognize the proper role of Attorneys General and others vested with the responsibility of protecting government interests, and would do so while maintaining the fairness and efficiency intended by multidistrict litigation.

## BACKGROUND

It is widely understood that the Federal Judicial Panel on Multidistrict Litigation ("JPML") has the role of transferring and consolidating litigation involving related matters from

---

[4] See Statement of Interest of the United States Related to the Initial Pretrial Conference (Rec. Doc. 222).
[5] See Mississippi's Notice of Joinder in Request for Government Track (Rec. Doc. 465).

federal courts throughout the United States. After the Deepwater Horizon disaster, the JPML sent all private and governmental damage claims to Hon. Judge Carl J. Barbier of United States District Court for the Eastern District of Louisiana (MDL-2179),[6] while transferring all related securities and ERISA litigation to Judge Ellison in the Southern District of Texas (MDL-2185).[7]

## ARGUMENT

There are significant sovereignty concerns which mandate the existence of a separate government track in this MDL and in similar litigation. The instant MDL's current case management structure directly interferes with the role of the Offices of the Attorneys General or the private counsel of their choosing. As a general matter, Attorneys General are legally charged with certain obligations, duties, and powers regarding the representation of their respective States in litigation. When Attorneys General retain private counsel to represent State interests, they typically retain control of the litigation and place various requirements on the attorneys, such as conflict-of-interest safeguards. When private counsel, not approved or controlled by a State, represent both their private clients as well as sovereign States in the same litigation, the obligations, duties and powers of the Attorney General are usurped. This is unacceptable from both a practical and legal perspective. It is entirely contrary to the public interest for Attorneys General and other State-approved counsel to take a back seat to private attorneys in advancing the interests of the State.

The notion that a federal court may displace a State Attorney General from full authority over preparation, settlement, and presentation of a case at trial is unprecedented. The instant MDL, under its current arrangement, already offers several examples of infringement upon the statutory, constitutional, or other legal authority vested in the Attorneys General. For example,

---

[6] See United States Judicial Panel on Multidistrict Litigation's Transfer Order dated August 10, 2010 (Rec. Doc. 1).
[7] See United States Judicial Panel on Multidistrict Litigation's Transfer Order dated August 10, 2010 (Rec. Doc. 1, S.D. Texas, 4:10-md-2185).

Pre-Trial Order No. 8 (Rec. Doc. 506) limits the ability of a State to enter into settlement discussions with Defendants, placing this responsibility in the hands of private counsel. The same Order entrusts the Plaintiffs' Steering Committee with various responsibilities including the power to "negotiate and enter into stipulations" with the Defendants; coordinate the trial team(s)'s selection, management and presentation of any common issue; examine witnesses and introduce evidence at hearings on behalf of the State; and in general act as spokesperson for the State before the Court.[8]

To cite other examples, in Pre-Trial Order No. 11 (a/k/a "Case Management Order No. 1"), Item X states that "[a]ll motions, requests for discovery or other pre-trial proceedings with respect to plaintiffs shall be initiated by and/or coordinated through the Plaintiff Steering Committee ("PSC"), to be filed by and through Plaintiffs' Liaison Counsel." Pursuant to Item IX of the same Order, some tasks have already been performed by private Plaintiff Liaison Counsel on behalf of Louisiana, such as conferring with Defense Liaison regarding matters including (i) an Order Relating to the Treatment of Confidential Materials, (ii) an Order Relating to the Treatment of Privileged Materials; (iii) a Deposition Protocol, (iv) Document Production Protocol, (v) E-Discovery Protocol, and (vi) Protocol for the Service of Pleadings and Discovery.[9] These are perfect examples of tasks that a State's attorneys have a right to approve or seek judicial resolution for. Deference to private counsel on these and other matters constitutes direct interference with the proper role of an Attorney General in advancing the interests of his State.

Another of the more troubling concerns is the potential for large portions of the public's recovery being paid to private counsel. The current arrangement runs the risk of allowing the

---

[8] See Pre-Trial Order No. 8. (Rec. Doc. 506).
[9] See Pre-Trial Order No. 11 (Rec. Doc 569).

assessment of fees and/or costs by Court-appointed private counsel against a State's recovery, over the State's express objection and absent any agreement---as well as potentially in violation of the law, as in Louisiana's case.[10]  Large "common benefit" fee awards are routinely assessed in multidistrict litigation proceedings and are anticipated in this proceeding.[11]  MDL judges make decisions regarding the compensation of their selected counsel over and above what those attorneys would earn handling individual cases.  In the present matter, the Court has put in place a mechanism to tax all cases before the Court to pay the Court's selected private attorneys.  In Pretrial Order No. 9 (Rec. Doc. 508), all attorneys who desire to claim "common benefit" fees from the cases of others, including State and Federal governments, must 1) obtain permission from the lead attorneys to do such work and 2) file appropriate time and cost records with the Court.

In effect, the Court is in the position of ordering payment to Court-selected private lawyers a percentage of any State or Federal recovery without the consent of the State Attorney General (or the Legislative or Executive branches).  Although no such payment has yet been ordered in this MDL, virtually every case in which a court has used this technique has resulted in the award of a common benefit fee. Moreover, these fees are generally massive, based upon the nature of most multidistrict litigation.  A typical example is the fee award issued by Judge Fallon in the *In re: Vioxx Products Liability Litigation*, Eastern District of Louisiana MDL-1657.  There, the Court utilized the simple "percentage" method commonly used in MDL cases, using a 6.5% benchmark, resulting in an award of $315,250,000 based on a settlement amount of $4.85 billion. While that fee appears staggering, it would almost certainly pale in comparison to a fee awarded on a recovery by a sovereign State in natural resource damages ("NRD") litigation,

---

[10] See Louisiana's Ex Parte Motion for Hearing (Rec. Doc. 505) at pp. 3-4.
[11] See Pretrial Order No. 9 (Rec. Doc. 508) (providing for invoicing by PSC in anticipation of common benefit fees and costs).

where the recovery will likely be many times in excess of that of the private *Vioxx* plaintiffs. This magnifies the issues already raised and extensively discussed by Louisiana in its aforementioned Motions. States should not be in the position of being taxed for fees and costs, particularly for the amounts involved in NRD litigation, without their consent. Furthermore, the federal courts cannot condition the States' use of the federal court system upon an arrangement whereby the State is taxed for its recovery by private counsel not approved or controlled by the State.

The problems created by this arrangement for the States are self-evident. First, the allocation of State monies (including damage awards) is governed by constitutional and statutory rules that are completely ignored under the current arrangement. Second, this issue is especially problematic in the context of natural resource damages, which are used by State trustees for ecological restoration to pre-pollution levels.

An early resolution of this significant issue is important, rather than at a time after which significant work has been done in connection with the litigation (ostensibly on behalf of sovereigns) but absent State or Federal authority. This issue should not be allowed to fester under the surface until later stages of litigation, when the sovereignty issue will come of full force with respect to common benefit fees.

Several government entities have already raised concerns regarding these issues in the instant litigation. Louisiana, already a plaintiff, has cited statutory, constitutional, and judicial case law in illustrating the problematic sovereignty issues that arise in the absence of a government track. The United States, in an amicus filing, has also argued that 28 U.S.C. § 516 makes its representation by private-party liaison counsel inappropriate.[12] The State of

---

[12] See Statement of Interest of the United States Related to the Initial Pretrial Conference (Rec. Doc. 222).

Mississippi has also raised objections to the current format.[13]  Without the separate management structure offered by a government case track in the instant litigation, these sovereignty issues will multiply each time a new State or government entity enters this MDL, and will almost certainly create myriad legal problems down the road.   The public interest mandates a government track to ensure that governmental entities, and those legitimately acting on their behalf pursuant to the appropriate authority, may properly carry out their duties and sovereign obligations as intended and required by law, and in keeping with any express legal restrictions to which they may be subject.  Allowing the current arrangement to continue, in which governments take a back seat to private liaison counsel, hinders their ability to do so.

In addition to sovereignty concerns, there is the simple fact that governmental claims are clearly unique and deserving of different treatment in this type of litigation.  The present MDL is a clear example.  As trustees for their natural resources, States will be pursuing, in large part, remedies that are different in size, scope, and complexity from those sought by private-party litigants.  These unique remedies, which include, but are not limited to, natural resource damages (including primary ecological restoration and compensatory restoration), removal costs expended by the Oil Spill Liability Trust Fund, macro-scale economic damages under the Oil Pollution Act, 33 U.S.C. 2701 et seq. (such as lost tax revenues, increased costs of services, property damages, etc.), and civil penalties under the Clean Water Act, 33 U.S.C. § 1321, are available only to government entities and frequently involve complex scientific and economic expert testimony not applicable to, or required of, private plaintiffs.  To take one example, natural resources damages alone typically include a multi-step assessment of injuries and damages, planning of restoration, and public comment.[14]

---

[13] See Mississippi's Notice of Joinder in Request for Government Track (Rec. Doc. 465).
[14] See 33 U.S.C. § 2702(b)(2)(A) and 15 C.F.R. Part 990.

Finally, there are clear procedural benefits to the concept of separate government case tracks in this litigation. For example, a coordinated schedule can be established for overlapping factual and legal matters, with a separate schedule for matters that do not overlap. This would be consistent with the entire purpose of multidistrict litigation, promoting efficiency and providing for the just and efficient administration of both private and government claims. In this regard, transferee judges have discretion to allow separate tracks for discovery, motions, or other matters unique to certain parties.

## CONCLUSION

It is important that the unique role of the various governments, and the recoveries on behalf of such governments, be protected in the instant litigation, particularly in consideration of the precedent it may set. Allowing governments a case track of their own, and preventing common benefit fee and cost assessments against governmental recovery, serves the interest the public has in the fair and just resolution of disasters of this magnitude. Dual tracks will ensure that the sovereignty of governments and the recovery they obtain are properly protected, that governments are not prejudiced by the litigation choices of private parties, and that they are fairly allocated a separate process to resolve, and obtain full recovery for, claims that are uniquely governmental.

The undersigned State Attorneys General, in consideration of the important legal precedent at stake, including the ability of State Governments and their duly authorized officers to carry out their duties in protecting and advancing the interests of their citizens in federal courts, hereby advocate for the creation of a separate governmental case track, and for the prevention of assessment of costs and fees by non-approved private counsel against State recovery, in these proceedings.

Respectfully Submitted,

DUSTIN McDANIEL
Attorney General of the State of Arkansas

By:   /s/ Sarah R. Tacker
Sarah R. Tacker, Ark. Bar No. 2002189
Senior Assistant Attorney General
Office of the Attorney General
323 Center Street, Suite 500
Little Rock, AR 72201
Phone: (501) 682-1321
Fax: (501) 682-8118
Email: sarah.tacker@arkansasag.gov

*Automatic Pro Hac Vice Admission
Pursuant to Pretrial Order No. 1, p. 9*

JOHN J. BURNS
Attorney General of Alaska
P.O. Box 110300
Juneau, Alaska 99811

JOHN W. SUTHERS
Colorado Attorney General
1525 Sherman Street
Denver, Colorado 80203

JOSEPH R. BIDEN, III
Attorney General of Delaware
Carvel State Office Building
820 N. French Street
Wilmington, Delaware 19801

JACK CONWAY
Attorney General
Commonwealth of Kentucky
Suite 118, State Capitol
Frankfort, KY 40601

LAWRENCE G. WADSEN
Idaho Attorney General
P.O. Box 83720
Boise, ID 83720-0010

GREGORY F. ZOELLER
Attorney General of Indiana
302 W. Washington Street
IGC-South, Fifth Floor
Indianapolis, IN 46204

JIM HOOD
Mississippi Attorney General
P. O. Box 220
Jackson MS 38701

CHRIS KOSTER
Attorney General of Missouri
Supreme Court Building
P.O. Box 899
Jefferson City, MO 65102-0899

JON BRUNING
Attorney General of the State of Nebraska
2115 State Capitol
Lincoln, NE 68509

GARY K. KING
Attorney General of New Mexico
P. O. Drawer 1508
Santa Fe, New Mexico 87504-1508

GREG ABBOTT
Attorney General of Texas
P.O. Box 12548
Austin, Texas 78711-2548

MARK L. SHURTLEFF
Utah Attorney General
Utah State Capitol Suite #230
PO Box 142320
Salt Lake City, Utah 84114-2320

WILLIAM H. SORRELL
Attorney General
Office of the Attorney General
109 State Street
Montpelier, Vermont 05609-1001

ROBERT M. MCKENNA
Attorney General of Washington
1125 Washington Street SE
PO Box 40100
Olympia, WA   98504-0100

## CERTIFICATE OF SERVICE

     I hereby certify that a copy of the foregoing pleading has on this 7th day of January, 2011 been served on all counsel of record in this proceeding by CM/ECF electronic filing.

/s/ Sarah R. Tacker
Sarah R. Tacker