**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * | MDL No. 2179 |
| | * | |
| | * | SECTION J |
| | * | |
| This document relates to: all cases | * | Honorable CARL J. BARBIER |
| | * | |
| | * | Magistrate Judge SHUSHAN |

---

**BP'S MEMORANDUM IN OPPOSITION TO "PLAINTIFFS' MOTION TO SUPERVISE EX PARTE COMMUNICATIONS BETWEEN BP DEFENDANTS AND PUTATIVE CLASS MEMBERS"**

Plaintiffs' motion—which seeks an unconstitutional prior restraint on speech that is clearly protected by the First Amendment and authorized by the federal Oil Pollution Act of 1990—misapprehends the law and misstates the record facts.  Plaintiffs come nowhere close to satisfying the stringent standards for an order limiting or barring statements by the Gulf Coast Claims Facility ("GCCF") and its Claims Administrator, Mr. Kenneth Feinberg.  Indeed, plaintiffs' own submissions contradict their assertions concerning the GCCF, Mr. Feinberg, and BP.  Plaintiffs' motion should be denied in its entirety.

*First*, plaintiffs' requested relief contravenes the extra-judicial claims process statutorily mandated by the Oil Pollution Act ("OPA").  OPA requires BP Exploration & Production Inc. as a responsible party to establish a claims process for attempting to resolve claims resulting from

the *Deepwater Horizon* oil spill.  Before any individual or business can assert a claim under OPA in court—whether a putative class action or an individual suit—they must exhaust OPA's claim presentment requirement.  A plaintiff who fails to do so can make no OPA claim as a matter of law and their complaint is subject to dismissal for lack of jurisdiction.

Here, plaintiffs do not contend that they (or any other putative class member) have exhausted the OPA claims process, and thus they cannot satisfy the "mandatory condition precedent" for pursuing such claims in court.  *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co., Inc.*, 51 F.3d 235, 240 (11th Cir. 1995).  Because plaintiffs can bring no valid court action unless and until they exhaust OPA's extra-judicial claims process, there is no basis for this Court to enter any order dictating how claims will be administered or resolved.

**Second**, plaintiffs' requested relief is an unconstitutional prior restraint on speech protected by the First Amendment and authorized under OPA.  OPA's claim presentment requirement reflects "***a congressional desire to encourage settlement and avoid litigation***."  *Boca Ciega Hotel*, 51 F.3d at 238-39 (emphasis added).  Under OPA, the claims process must be publicly advertised.  The First Amendment plainly protects Mr. Feinberg's and the GCCF's speech promoting OPA's purpose of resolving claims out of court.  The relief requested by plaintiffs, which would limit or bar this speech, is an impermissible prior restraint.  Plaintiffs do not (and cannot) satisfy the rigorous evidentiary requirements for obtaining such an order, and their own submissions show there is no basis to muzzle the speech of Mr. Feinberg or the GCCF under Fed. R. Civ. P. 23(d) or any other authority.

**Third**, it is clear from the record that Mr. Feinberg is not BP's lawyer and instead is an independent contractor.  Nor is BP Mr. Feinberg's legal client; there is no attorney-client

relationship.  As a result, the ethical rules cited by plaintiffs as the basis for the relief sought have no application here and, regardless, Mr. Feinberg is not violating any such rules.

*Fourth*, there is no basis in law or fact for this Court to alter the terms of the GCCF's Release and Covenant Not to Sue.  As an initial matter, plaintiffs' arguments are directed at an earlier, obsolete draft of the Release, not the final version used by the GCCF.  As a result, their motion is the proverbial solution in search of a problem.  Beyond this, a release such as that offered by the GCCF is valid and enforceable, and each claimant's decision whether to accept the Release in return for a final payment by the GCCF is entirely voluntary.  There is no authority for a court to rewrite a legal, valid agreement among parties.

*Finally*, plaintiffs' request for an order requiring the GCCF to change its Release and the way it resolves OPA claims is nothing less than a request for the Court to issue a mandatory injunction.  (*See* Dkt. # 912-4, Plfs.' Proposed Order ¶¶ 1-6.)  But plaintiffs have not even attempted to satisfy the demanding standards for such an "extraordinary remedy."  *Ridgely v. Fed. Emergency Mgmt. Agency*, 512 F.3d 727, 734 (5th Cir. 2008).  The short answer is that plaintiffs cannot do so.  Their motion should be denied.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs' recitation of the background facts is inaccurate and incomplete.  Accordingly, BP restates the background and procedural history as follows:

### A.    The Federal Oil Pollution Act Established An Extra-Judicial Claims Process.

Shortly after the *Deepwater Horizon* incident in April 2010, BP Exploration & Production Inc. was designated as a "responsible party" by the United States Coast Guard pursuant to OPA.  Under OPA, a party responsible for a vessel or facility from which oil is discharged is liable for specified damages and removal costs resulting from the incident.  *See* 33 U.S.C. § 2702(a).

In this regard, OPA requires the responsible party to establish an extra-judicial "Claims procedure" to receive claims.  *Id.* § 2713; *see also id.* § 2705(a).  With certain exceptions not applicable here, the statute mandates that "all claims for removal costs or damages shall be presented first to the responsible party" before the claimant may pursue such costs or damages in court or present the claims to the Oil Spill Liability Trust Fund.  *Id.* § 2713(a), (c).  OPA also requires that the claims process be advertised publicly, which includes "the dissemination of information" that is "reasonably calculated to advise the public how to present a claim."  33 CFR § 136.303; *see also* 33 U.S.C. § 2714(b)(1).

Following its designation as a responsible party, BP Exploration & Production Inc. established the extra-judicial claims procedure required by OPA.  Federal oversight of that process resides with the National Pollution Funds Center ("NPFC"), an arm of the Coast Guard/Department of Homeland Security that administers the Oil Spill Liability Trust Fund.  *See* 40 CFR Pt. 300, App. E, § 3.3.3(g)(4); *see also* U.S. Coast Guard's National Pollution Fund Center (NPFC) Claims Process, Ex. 1, Declaration of Andrew B. Bloomer, Tab A.)

### B.    The GCCF Administers Individual And Business Claims Submitted To BP Under OPA.

On June 16, 2010, the White House announced an agreement with BP to appoint Kenneth Feinberg to act as the administrator of an "independent claims process" for individuals and businesses injured by the oil spill.  (*See* Plfs.' Mem. Ex. C.)  The GCCF, established by Mr. Feinberg, assumed day-to-day administration of individual and business claims submitted to BP under OPA on August 23, 2010.  (*See id.* Ex. E, § 1.5.)[1]  Since that date, the GCCF has approved

---

[1] Plaintiffs concede and do not contest that BP can delegate its OPA responsibilities in this fashion.  (Plfs.' Mem. at 9 (acknowledging that "BP can voluntarily delegate to the GCCF its authority as Responsible Party to pay OPA claims").)

and BP has paid more than $2.949 billion representing over 205,000 claims.  (Overall Program Statistics (Status Report as of January 6, 2011), Bloomer Decl. Tab B.)

Individuals and businesses that have incurred damages resulting from the spill may submit a claim to the GCCF for removal and clean up costs; damage to real or personal property; lost earnings or profits; loss of subsistence use of natural resources; or physical injury or death. (*See* Plfs.' Mem. Ex. E, § 3.1.)[2]  The GCCF is "an independent claims facility" administered by Mr. Feinberg, who is "responsible for all decisions relating to the administration and processing of claims by the GCCF."  (*Id.* § 1.1.)  As Claims Administrator, Mr. Feinberg "does not report to BP and BP does not control his decisions in any way."  (*Id.* § 1.2.)  Instead, "[t]he Claims Administrator's decisions are his and his alone," and in reaching decisions "the Claims Administrator has no duty to serve the interests of any organization or person, including BP." (*See* GCCF Frequently Asked Questions, Section I, ¶ 2, Bloomer Decl. Tab C.)[3]

Finally, Mr. Feinberg is not BP's lawyer and does not have an attorney-client relationship with BP.  (Ex. 2, Declaration of Geir Robinson ¶ 4; Ex. 3, Declaration of Dane S. Ciolino at 3-7; Ex. 4, 12/28/10 letter from S. Gillers to K. Feinberg, at 4.)  As reflected in and confirmed by the written agreement between the parties, Mr. Feinberg and his firm (Feinberg Rozen LLP) are independent contractors in the operation of the GCCF.  (Robinson Decl.  ¶ 5.)

### C.    The GCCF's And Mr. Feinberg's Communications With Potential Claimants.

The GCCF is accessible to the public and potential OPA claimants through the GCCF's website (http://www.gulfcoastclaimsfacility.com); by telephone or facsimile using the GCCF's

---

[2] OPA does not provide for or allow damages for physical injury or death.  *See* 33 U.S.C. § 2701(b) (defining covered removal costs and damages under OPA).  Despite this, BP has authorized the GCCF to process such claims. (*See* Plfs.' Mem. Ex. E, § 3.1.)

[3] Plaintiffs cite and attach to their motion an outdated version of the GCCF's Frequently Asked Questions.  (*See* Plfs.' Mem. Ex. E.)  The current version available on the GCCF's website is Tab C to the Declaration of Andrew Bloomer.

toll free numbers; by email or regular mail; or by visiting one of the 35 GCCF Claims Site Offices.  (*See* Contact Us, Bloomer Decl. Tab D.)  The GCCF discloses to the public and potential plaintiffs that "BP has agreed to contribute funds to an escrow account to be used to pay claims submitted to the GCCF" and that "the Claims Administrator is being paid by BP." (Plfs.' Mem. Ex. E, §§ 1.1-1.2.)[4]

The GCCF makes clear that claimants "have the right to be represented by a lawyer of [their] choosing," although they do not need to hire a lawyer to submit a claim to the GCCF.  (*Id.* § 2.4.)  Claimants are further instructed that the "GCCF is not a law firm," cannot provide "personal legal advice or advise you regarding settlement of any claims, including whether to file a claim," and that "[n]o one at the GCCF can represent you."  (*See* GCCF Frequently Asked Questions, Section 1, ¶ 1, Bloomer Decl. Tab C.)  Instead, claimants are informed that "[i]f you wish to consult a lawyer you should do so."  (*Id.*)  The GCCF likewise informs claimants:

> If you are currently represented by a lawyer in connection with any claim you believe you may have against BP, ***you should not submit a claim until you have conferred with your lawyer about the decision to submit it and about your answers to its questions***. If you then choose to submit a claim, you should have your lawyer submit the claim for you. The claim form requests contact information for your lawyer. After receipt of such contact information we will respond directly to him or her.

(*Id.* Section 2, ¶ 11 (emphasis added).)

As plaintiffs' own submissions show, GCCF Administrator Feinberg has repeatedly made clear that claimants should consult their attorneys and other advisors, that the decision whether or not to accept any payment from the GCCF is entirely voluntary, and that claimants are free to litigate if they are not satisfied with the GCCF's offer to resolve their claims:

---

[4] The fees and expenses of Mr. Feinberg and his firm are not paid from the $20 billion escrow fund established by BP, but from monies separate from the fund.  (*See* Plfs.' Mem. Ex. G, at 7, 24; *see also* Ex. 4, 12/28/10 letter from S. Gillers to K. Feinberg, at 5.)

- "There is no obligation, ultimately, down the road, sixty, ninety days, one hundred twenty days, six months from now, take this check. We think it is fair. Think it over. ***Talk to your lawyer***, your accountant, your priest, your rabbi." (Plfs.' Mem. Ex. L, Dkt. #912-12, p. 3 (emphasis added);

- "It's a free country. If you wanna come into the fund, with all the benefits of the fund, come on in. You're welcome. … If you don't like what we're paying you, if you think we're nickel and diming you, ***if you think we're not being fair, opt out and go the other route***." (*Id.* p. 15 (emphasis added));

- "If you don't want the interim payments and ***you don't want the final payment and you'd rather litigate in court, that is your choice. That is up to you***." (*Id.* p. 24 (emphasis added).)

**D.     The GCCF's Claims Process.**

In the current phase of the GCCF, individuals and businesses have the option of filing Interim Payment and/or Final Payment claims. (*See* GCCF Frequently Asked Questions, Section 3, ¶ 12, Bloomer Decl. Tab C.) An Interim Payment claim seeks past damages caused by the spill; it does not cover or compensate a claimant for future losses or damages. (*Id.* Section 6, ¶¶ 51, 55.) Claimants may submit Interim Payment claims each quarter through the conclusion of the GCCF Claims Program on August 22, 2013, or until the submission of a claim for Final Payment. (*Id.* ¶¶ 56-57.) A claimant seeking an Interim Payment is "not…required to execute a Release or waive any rights to assert additional claims, to submit an individual legal action, or to participate in other legal actions associated with the Spill." (*Id.* ¶ 62.) Claimants who receive Interim Payments are free to submit a claim for Final payment at any time until the GCCF Program closes on August 22, 2013, after which BP will continue to receive claims as required by OPA. (*Id.* ¶ 65.)

A claim for Final Payment seeks to resolve all of the claimant's past and future alleged damages from the spill. (*See* Summary Of Options For Submission Of Final And Interim Payment Claims, at 1, Bloomer Decl. Tab C.) The GCCF provides two options for Final Payment claims. The first is a Quick Payment Final Claim, which pays $5,000 to an eligible

individual claimant or $25,000 to an eligible business claimant without requiring any more claim documentation or review.  (*See* GCCF Frequently Asked Questions, Section 4, ¶ 16, Bloomer Decl. Tab C.)[5]  Quick Payment Final Claims provide a mechanism for expeditious resolution of claims (*i.e.*, payment within 14 days) where the claimant believes that the fixed Quick Pay amount fully and fairly resolves the claim.  Claimants who choose to accept that payment must submit the claim form and sign a Release and Covenant Not to Sue ("Release").  (*See id.* ¶ 23.) Individuals and businesses may submit a Quick Payment Final Claim at any time before the close of the GCCF Program on August 22, 2013.  (*Id.* ¶ 28.)

For those claimants who desire to fully resolve their claims but who believe that their losses are greater than the fixed Quick Pay Final Claim amount, the GCCF offers an individualized claim evaluation process known as a Full Final Payment Claim.  A Full Review Final Payment Claim covers all past and future losses or injuries resulting from the spill and requires the claimant to submit the claim form and documents supporting the claimed losses and injuries.  (*See id.* Section 5, ¶¶ 31-32, 35, 38.)   As with the Quick Payment Final Claim, to receive payment on a Full Review Final Payment Claim, the claimant must sign a Release.  (*Id.* ¶ 44.)[6]  An individual or business may submit a Full Review Final Payment Claim at any time prior to August 22, 2013, even if they previously submitted a claim for and received an Interim Payment or Emergency Advance Payment from the GCCF.  (*Id.* ¶ 49.)

As shown by plaintiffs' submissions, Mr. Feinberg and the GCCF fully inform potential claimants that their decision to apply for and accept any payment from the GCCF—whether

---

[5] To submit a Quick Review Final Claim, the claimant must have previously received an Emergency Advance Payment from the GCCF or be eligible for an Interim Payment.  (*See* GCCF Frequently Asked Questions, Section 4, ¶ 16, Bloomer Decl. Tab C.)

[6] A separate release is required for claimants who receive a Final Payment offer from the GCCF for claims for physical injury or death.  (*See* GCCF Frequently Asked Questions, Section 5, ¶ 44, Bloomer Decl. Tab C.)

through an Interim Payment Claim, a Quick Payment Final Claim or a Full Review Final Claim—is entirely voluntary:  "The goal in providing these three compensation alternatives is to give each and every eligible claimant an opportunity to choose which option is best.  The choice is purely voluntary."  (Plfs.' Mem. Ex. K (quoting Kenneth Feinberg); *see also* Gulf Coast Claims Facility Protocol for Interim and Final Claims, Nov. 22, 2010, § I.A., Role ("Acceptance of payments…shall be wholly voluntary, and participation in the GCCF shall not affect any right that the Claimant would have had absent such participation unless final resolution of the claim is achieved."), Bloomer Decl. Tab E.)  Thus, "[a] Claimant may elect to reject an Interim or Final Payment determination and, as permitted by law, either present the claim to the [NPFC] or commence an action in court."  (*Id.* § V.D., Rejection of Interim or Final Payment Determination.)

Finally, the GCCF has established a voluntary appeal procedure for Final Payment determinations.  (*See id.* § VI.A., No Waiver of Rights.)  Among other things, a claimant may appeal the GCCF's Final Claim determination if the total monetary award (including any Emergency, Interim or Final Payment) exceeds $250,000; BP may appeal if the total monetary award exceeds $500,000.  (*Id.* § VI.B.1, The Right to Appeal Pursuant to this Protocol.)  Appeals are decided by a three-judge panel and are binding only on BP; a claimant that disagrees with the appeal decision may reject the GCCF's determination and pursue the claim in the courts or as otherwise permitted under OPA.  (*Id.* § VI.I., Impact of the Appeal Decision.)

### E.     The GCCF's Release With Respect To Final Claim Payments.

Claimants who choose to accept payment on a Quick Payment Final Claim or Full Review Final Claim must sign a Release—a copy or sample of which is included with the claim form—that releases and waives any claims the claimant has or may have in the future (other than for bodily injury or mental health) against BP and all other potentially responsible parties for the

spill, and waives any right to submit a claim for payment to the NPFC.  (*See* GCCF Frequently Asked Questions, Section 4, ¶ 23, Bloomer Decl. Tab C; *see also id*. Section 5, ¶ 44; GCCF Quick Payment Final Claim Form (Individual Claimants), Bloomer Decl. Tab G; GCCF Quick Payment Final Claim Form (Business Claimants), Bloomer Decl. Tab H; GCCF Full Review Final Payment Claim Form, Bloomer Decl. Tab I.)[7]

The GCCF provides full disclosure regarding the nature of the Release.  For example, potential claimants are advised, "**Do not elect the Quick Payment Final Claim process unless you are willing to accept the fixed payment of $5,000 for individuals and $25,000 for businesses and to sign a full release of liability.  If you sign a release of liability, you will not be able to seek further compensation from the GCCF, the Coast Guard, or in court**." (Summary Of Options For Submission Of Final And Interim Payment Claims, at 1 (emphasis in original), Bloomer Decl. Tab F.)  Claimants are also instructed to "**Read the release and cover information page to the release carefully.  Do not sign the release unless you fully understand and agree to all of its terms**."  (*Id*. at 2, ¶ A(3) (emphasis in original); *see also id*. at 3, ¶ B(8).)  Similar disclosures are repeated on the cover page of the release itself.  Likewise, claimants are informed they can and should consult their counsel: "**If you are represented by an attorney in connection with your claim, confer with your attorney about your options before submitting a claim or signing a release**."  (*Id*. at 1 (emphasis in original).)

Plaintiffs cite to and rely upon an obsolete draft of the GCCF's Release, which is not the final version available through the GCCF's website and sent to claimants.  (*See* Plfs.' Mem. Ex. H.)  The final version (as well as the draft cited by plaintiffs) makes clear to claimants:

---

[7] Claimants who choose to accept a Final Payment Offer for a physical injury or death claim must sign a separate Release of Bodily Injury Claims, which releases all such claims related to the spill.  (GCCF Full Review Final Payment Claim Form at 1, Bloomer Decl. Tab H; *see* Release of Bodily Injury Claims, Bloomer Decl. Tab K.)

> You are under no obligation to accept the final payment offered to you by the Gulf Coast Claims Facility.  You are free to reject the final payment offered by the Gulf Coast Claims Facility and to pursue other means of compensation.  If you want to file a lawsuit regarding the Incident or make a claim against the Oil Spill Liability Trust Fund, do not sign this Release.

(*See* GCCF Full Review Final Payment Claim Form, Sample Release and Covenant Not to Sue, Bloomer Decl. Tab I; *see also* GCCF Quick Payment Final Claim Form (Individual Claimants), § D, Bloomer Decl. Tab G; GCCF Quick Payment Final Claim Form (Business Claimants), § D, Bloomer Decl. Tab I.)   The claim form and release documents also instruct: "**If you are represented by an attorney in connection with your claim, do not submit this Form or sign the Release until you have conferred with your attorney about the decision to submit it and sign the Release**."   (GCCF Quick Payment Final Claim Form (Individual Claimants), § A, Instructions ¶ 6, Bloomer Decl. Tab G (emphasis in original); *see also id.* § D, Important Information About the Attached Release and Covenant Not to Sue; GCCF Full Review Final Payment Claim Form, Sample Release and Covenant Not to Sue, Bloomer Decl. Tab J.)

### F.    Proceedings In This Court.

While various complaints filed in MDL 2179 are styled as class actions, this Court—at plaintiffs' urging—has stayed all class certification discovery and motion practice pending further order of the Court.   (*See* Ex. 5, 10/19/10 Pretrial Order No. 11, ¶ VII, Dkt. #569.) Despite conceding that OPA mandates the establishment of an extra-judicial claims procedure, plaintiffs nowhere contend that ***any*** purported member of a putative class has exhausted that process and thus may assert a claim in court.  (Plfs.' Mem. at 3-5 & n.5.)

## I.    THE RELIEF SOUGHT BY PLAINTIFFS IS CONTRARY TO THE EXTRA-JUDICIAL CLAIMS PROCESS PROVIDED FOR UNDER OPA.

Plaintiffs' motion is premised on the assertion that the GCCF "is a purely private endeavor designed to resolve a purely private obligation in hopes of limiting lawsuits."  (Plfs.'

Mem. at 8.)  This is simply wrong, and fundamentally misapprehends the law.  The extra-judicial claims process established by BP as a responsible party, and administered by Mr. Feinberg and the GCCF, is a statutory requirement *imposed by Congress under OPA*.  Federal law mandates that "all claims for removal costs or damages shall be presented first to the responsible party" before the claimant can file suit in court, and that the claims process itself be publicly advertised. 33 U.S.C. § 2713(a), (c); *see also id*. § 2714(b)(1).

The very purpose of OPA's extra-judicial claims procedure is to settle and resolve oil spill claims without court involvement.  As Representative Hammerschmidt explained in urging passage of OPA, "[t]he system of liability and compensation provided for in the bill…*is intended to allow for quick and complete payment of reasonable claims without resort to cumbersome litigation*."  135 Cong. Rec. H7965 (daily ed. Nov. 2, 1989) (emphasis added); *see also* 135 Cong. Rec. H7962 (daily ed. Nov. 2, 1989) ("The thrust of this legislation is to eliminate, to the extent possible, the need for an injured person to seek recourse through the litigation process.") (Rep. Lent).  The legislative history of the statute indicates that "one goal of the claims presentation provision was to temper the Act's increased liability with a *congressional desire to encourage settlement and avoid litigation*."  *Boca Ciega Hotel*, 51 F.3d at 238-39 (emphasis added).[8]

As a result, a court may not entertain any damages claims under OPA "*unless and until*" a claimant has exhausted the claim presentment requirement.  *See id.* at 240 (emphasis added) (citing § 2713(a)).  Where a plaintiff fails to comply with the presentment requirement, courts (including Judge Fallon in *Turner v. Murphy Oil*) routinely dismiss OPA claims.  *Turner v.*

---

[8] *See also Gabarick v. Laurin Mar. (Am.) Inc.*, Civ. A. No. 08-4007, 2009 WL 102549, *2 (E.D. La. Jan. 12, 2009) (declining to interpret OPA to "nullify the very administrative process" it created); *Abundiz v. Explorer Pipeline Co.*, No. Civ. A. 300CV2029H, Civ. A. 303CV0508H, Civ. A. 303CV0787H, 2003 WL 23096018, at *3 (N.D. Tex. Nov. 25, 2003) ("The purpose of the presentation requirement is to 'promote settlement and avoid litigation.'").

*Murphy Oil USA, Inc.*, Civ. A. No. 05-4206, 2007 WL 4208986, at *2 (E.D. La. Nov. 21, 2007); *Abundiz*, 2003 WL 23096018, at *5 (same).  The OPA claims process is "a mandatory condition precedent" to pursuing such claims in court, and a plaintiff who fails to satisfy that condition has no claim as a matter of law.  *Boca Ciega*, 51 F.3d at 240 (citing § 2713); *Gabarick*, 2009 WL 102549, at *3.[9]  Moreover, although Congress specified certain narrowly-defined causes of action under OPA, it created no cause of action under OPA that allows claimants to challenge or interfere with the claims process itself.[10]

Here, plaintiffs do not contend that they or any other putative class member has fulfilled the OPA presentment requirement; consequently, any conceivable OPA claims they could have are not ripe and may not be asserted in court.  Given that plaintiffs have no valid OPA claims, there can be no valid class action lawsuit and no basis for a court order predicated on a putative class.  For this reason alone, plaintiffs' motion should be denied.

Furthermore, other efforts seeking court supervision of or involvement in the OPA claims process already have been denied by this Court and two other federal judges.  (Ex. 6, July 23, 2010 Order, Dkt. # 377.)[11]  Nothing in plaintiffs' motion leads to a different result in this case or

---

[9] *See also Marathon Pipe Line Co. v. LaRoche Indus., Inc.*, 944 F. Supp. 476, 477 (E.D. La. 1996) ("The Court agrees that § 2713's presentation requirement is jurisdictional and mandates dismissal when that provision is applicable and not complied with by the claimant"); *United States v. Murphy Exploration & Prod. Co.*, 939 F. Supp. 489, 492 (E.D. La. 1996) ("We therefore hold that the clear text of § 2713 creates a mandatory condition precedent barring all OPA claims unless and until a claimant has presented her claims in compliance with § 2713(a)."); *Johnson v. Colonial Pipeline Co.*, 830 F. Supp. 309, 310 (E.D. Va. 1993) ("If plaintiffs fail to comply with the prerequisites for bringing such a claim, the OPA claim must be dismissed.").

[10] *See*, e.g., 33 U.S.C. § 2702 (claim for damages), § 2707 (recovery by foreign plaintiffs), § 2708 (recovery by responsible parties), & § 2713(c) (election of remedies); 33 U.S.C. § 2706 (recovery of natural resources damages by a limited category of plaintiffs); 33 U.S.C. § 2717(a) (judicial review for certain regulated parties).

[11] *See* June 17, 2010 Order, Dkt. # 46, *Destin, et al. v. BP, PLC, et al*, Case No. 10-141 (N.D. Fla.) (Judge Rodgers) (attached as Ex. 7); June 2, 2010 Order at 5 n.2, Dkt. # 66, *Bill's Oyster House et al. v. BP, plc, et al.*, Case No. 10-1308, pending in E.D. La., Section "F" (Judge Feldman) (attached as Ex. 8).

otherwise justifies contravening Congress's clear intent in creating an extra-judicial claims resolution process.[12]

## II.   PLAINTIFFS' REQUESTED RELIEF IS AN UNCONSTITUTIONAL PRIOR RESTRAINT ON SPEECH PROTECTED BY THE FIRST AMENDMENT.

### A.   The First Amendment Protects Mr. Feinberg's And The GCCF's Right To Communicate With Potential Members Of The Proposed Class.

Plaintiffs' motion seeks a prior restraint injunction that not only interferes with the GCCF's statutory duty under OPA, but also with Mr. Feinberg's and the GCCF's rights under the First Amendment to freely communicate with GCCF claimants, potential class members, and the public at large.  Plaintiffs want the Court to provide "ongoing supervision and correction" (Plfs.' Mem. at 25) of all GCCF written communications—*i.e.,* to act as censor of the GCCF. *See Bernard v. Gulf Oil Co.*, 619 F.2d 459, 468 (5th Cir. 1980) (*en banc*) ("The essence of prior restraint is that it places specific communications under the personal censorship of the judge."). Courts presume that such prior restraints are unconstitutional.  *See id.* at 476 (citing *S.E. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 558-59 (1975)), *aff'd on other grounds*, 452 U.S. 89, 104 (1981) (declining to reach constitutional issue but cautioning that the order "involved serious restraints on expression").

The proponent "'carries a heavy burden of showing justification for the imposition of such a restraint.'"  *Schultz v. City of Cumberland*, 228 F.3d 831, 851 (7th Cir. 2000) (*quoting New York Times Co. v. United States*, 403 U.S. 713, 714 (1971)).  The Fifth Circuit, which struck down a similar restraint upon communications with potential class members, has squarely held

---

[12] Plaintiffs assert that they do not ask the Court to "dictate, enjoin or otherwise interfere with the processing or payment of claims by BP."  (Plfs' Mem. at 1.)  On the contrary, plaintiffs' request for "ongoing supervision and correction" of the claims process, and the injunctive nature of the relief they seek, would necessarily disrupt and delay the GCCF's administration of claims, to the detriment of claimants.  (*Id.* at 25.)  Such requests are particularly inappropriate when Mr. Feinberg, his firm, and the GCCF are not even parties to these proceedings, raising serious questions about how the Court could issue an order directed at the activities of such entities.

that prior restraints are justified only in "*exceptional circumstances*" and require a showing that judicial intervention is necessary to prevent "*direct, immediate and irreparable harm*"—a standard plaintiffs do not and cannot meet.  *See Gulf Oil Co.*, 619 F.2d at 473 (quoting *Int'l Society for Krishna Consciousness v. Eaves*, 601 F.2d 809, 833 (5th Cir. 1979)); *Burrell v. Crown Cent. Petroleum, Inc.*, 176 F.R.D. 239, 243 (E.D. Tex. 1997) (denying plaintiffs' motion; "[a]n order limiting communications between parties and class members is a prior restraint of speech.").  Plaintiffs' speculation that potential class members might be "confus[ed]" (Plfs.' Mem. at 25) or potentially misled by future communications by Mr. Feinberg and the GCCF is insufficient as a matter of law to justify a prior restraint on those communications.  *Gulf Oil Co.*, 619 F.2d at 475-76; *see also* 5-23 Moore's Federal Practice - Civil § 23.144[3].

Furthermore, the communications about which plaintiffs complain are pure, non-commercial expression entitled to full protection under the First Amendment.  This case does not, as plaintiffs suggest, involve commercial speech—*i.e.*, expression "related largely or solely to the economic interests of the speaker and the audience"—as plaintiffs' own authorities make clear.  *See Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1204 n.22 (11th Cir. 1985) (cited in Plfs.' Mem. at 17-18) (citing *Virginia Pharm. Bd. v. Virginia Citizens Consumer Council*, 425 U.S. 748, 762 (1976); *Cent. Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 561 (1980)).  Just the opposite, the GCCF claims process implements national public policy established by Congress and the President.  *Cf. Kleiner* 751 F.2d at 1204 n.22.  And as the GCCF's Claims Administrator, Mr. Feinberg (and his law firm) neither act on behalf of a client nor represent a client—a fact that plaintiffs' lawyers have already recognized, at least for purposes of their argument that no privilege attaches to GCCF's work.  (Ex. 9, 11/19/10 Tr. at 15 (Plaintiffs' counsel arguing that GCCF performs "an independent review").)  Like the restrained

party in *Gulf Oil* (and unlike the party in *Kleiner*), Mr. Feinberg and GCCF have "no direct financial stake in the case," and there is no basis for applying a more lenient, commercial speech standard.  *See Gulf Oil*, 619 F.2d at 472-73; *compare Kleiner*, 751 F.2d at 1205 n.24.

For this reason, plaintiffs' cases—which all involve restraints on commercial speech—are inapposite.   In *Murphy Oil v. Turner*, for example, the district court held that communications by *the defendant* oil refinery owner itself to homeowners affected by a discharge were "commercial speech, because the defendant's economic interest in reducing its litigation costs is involved."  (Plfs.' Ex. A, at 4.)  Plaintiffs' attempt to extend the district court's reasoning in *Murphy Oil* (and in the other cases cited in their brief) to the noncommercial speech at issue here is flatly inconsistent with the Fifth Circuit's *en banc* opinion in *Gulf Oil*, which granted full protection under the First Amendment to counsel's communications to putative class members.  *See Gulf Oil*, 619 F.2d at 475-76.

### B.       Rule 23 Provides No Authority For Plaintiffs' Proposed Order.

Plaintiffs assert that Fed. R. Civ. P. 23(d)(1) authorizes their requested relief—even though they have resisted any Rule 23 proceedings in this case and at their behest, PTO 11 (CMO 1) tables any class certification proceedings.  (10/15/10 Tr. at 28-31 (attached as Ex. 10).) Regardless, Rule 23 cannot legitimize an unconstitutional prior restraint.  As the Fifth Circuit has made clear, such an order "is not brought within any exception permitting prior restraints merely because it arises in the general context of the administration of justice and the particular context of Rule 23."  *Gulf Oil*, 619 F.2d at 474.  Instead, the legality of "a prior restraint entered under Rule 23 must be tested by the same standards utilized in other contexts."  *Id.* at 475.

But even if plaintiffs could overcome the fatal constitutional deficiencies of the prior restraint they propose—and they cannot—their motion independently fails under Rule 23 itself. In *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981), the Supreme Court (reviewing the Fifth Circuit's

*en banc* decision) struck down an order requiring counsel to obtain prior court approval of any communications with putative class members.  *Id.* at 94-95.  Although recognizing the "order involved serious restraints on [First Amendment] expression," *id.* at 104, the Court based its decision on the Fifth Circuit's alternative ground for invalidating the order—that it could not be supported even as an exercise of the district court's discretion under Rule 23.

According to the Supreme Court, "an order limiting communications between parties and potential class members should be based on a ***clear record and specific findings*** that reflect ***a weighing of the need for a limitation and the potential interference with the rights of the parties***."  *Id.* at 101 (emphasis added).  Moreover, "'[t]o the extent that the district court is empowered…to restrict certain communications in order to prevent frustration of the policies of Rule 23, it may not exercise the power without a ***specific record showing by the moving party of the particular abuses by which it is threatened***.'"  *Id.* at 102 (quoting *Coles v. Marsh*, 560 F.2d 186, 189 (3rd Cir. 1977) (emphasis added)).[13]  The moving party's "unsworn allegation of misconduct on the part of [the nonmovant's] attorneys" cannot as a matter of law supply the required evidentiary showing.  *Id.* at 104 n.18.

Applying these standards, courts have consistently refused to limit communications with potential class members without clear and specific evidence of abuse.  *See Gates v. Cook*, 234 F.3d 221, 227 (5th Cir. 2000) (vacating, as contrary to "the principles enunciated in *Gulf Oil Co. v. Bernard*, 452 U.S. 89 [(1981)]," a no-contact order entered without specific evidence "establish[ing] the necessity for the order"); *Basco v. Wal-Mart Stores, Inc.*, No. Civ. A. 00-3184, 2002 WL 272384 at *4 (E.D. La. Feb. 25, 2002) (denying limitation despite ongoing

---

[13] Plaintiffs do not cite to Eastern District of Louisiana Local Rule 23.1(d), which establishes requirements for a motion seeking to restrict communications with class members or putative class members.  Regardless, the local rule (whether before or after the recent amendment effective Feb. 1, 2011) is relevant only to the extent it reflects the Supreme Court's opinion (and the Fifth Circuit's *en banc* opinion) in *Gulf Oil*.  District courts cannot contradict those standards by local rule, any more than they could overrule those cases.

employer-employee relationship when plaintiffs "provided no evidence, other than speculation" of coercion); *Flagler Automotive, Inc. v. Exxon Mobil Corp*, No. 04-21542-CIV-MORENO (S.D. Fla. Aug. 14, 2006) (attached as Ex. 11); *Lee v. Am. Airlines, Inc*., No. Civ. A. 3:01-CV-1179-P, 2002 WL 226347, at *2 (N.D. Tex. Feb. 12, 2002) (denying request to impose conditions when plaintiff failed to prove that "Defendant has engaged in any abusive or unethical communications with the potential class members.").[14]

Plaintiffs' authorities are not to the contrary.  All of plaintiffs' cases (except *Murphy Oil*, discussed *supra*) involve defendants that had **ongoing business relationships** with class members, who may fear interference with that relationship—a concern not present in this case.[15] For example, *Kleiner v. First National Bank of Atlanta* addressed a secret campaign by the defendant bank to solicit its loan customers' exclusion from the certified class.  751 F.2d at 1197. In upholding the limitation, the Eleventh Circuit relied on the ongoing business relationship between the bank and members of the certified class, finding that contacts by class members' loan officers were coercive. *Id.* at 1202 ("The class consisted of Bank borrowers, many of whom were dependent on the Bank for future financing … or [for] any type of discretionary financial indulgence from their loan officers, and who did not have convenient access to other credit sources."); *see also Jones v. Jeld-Wen, Inc.*, 250 F.R.D. 554, 561 (S.D. Fla. 2008) (relying on ongoing business relationship and restricting communications where glass manufacturer informed putative class members that their windows were vulnerable during storms and suggested that replacement was delayed by class action); *Hampton Hardware, Inc. v. Cotter &*

---

[14] *Accord Great Rivers Co-Op v. Farmland Indus., Inc*., 59 F.3d 764, 766 (8th Cir. 1985) ("In a class-action…, a district court may not order restraints on speech under Fed. R. Civ. P. 23(d) except when justified by actual or threatened misconduct of a serious nature"); *McLaughlin v. Liberty Mut. Ins.*, 224 F.R.D. 295, 297 (D. Mass. 2004) ("nothing in Rule 23 precludes communications with putative class members from either side of the litigation").

[15] Even when there is an ongoing business relationship, courts will refuse to impose a limitation without specific evidence of abuse.  *See Basco*, 2002 WL 272384 at *4 ("[T]he plaintiffs have provided no evidence, other than speculation, that Wal-Mart is attempting to coerce its employees to not participate in or 'opt out' of the suit.").

*Co.*, 156 F.R.D. 630, 631-632 (N.D. Tex. 1994) (defendant sent three letters telling prospective class members that "[t]he expense [for the suit] will, ultimately, come out of your pocket," and "[b]y not participating in this suit, you will help save your Company expense in dollars and time").[16]

Plaintiffs ignore this crucial distinction.  Indeed, in quoting from the Manual for Complex Litigation § 21.12 ("MCL"), plaintiffs omit (and substitute an ellipsis for) the manual's reference to the parties' business relationship in the first two sentences of the omitted text.  See Plfs.' Mem. at 17, citing MCL § 21.12 ("***If defendants are in an ongoing business relationship with members of a putative class,*** the court might consider requiring production of communications relating to the case.  In appropriate cases, courts have informed counsel that communications ***during an ongoing business relationship***, including individual releases or waivers, must be accompanied by notification [of the litigation].")

### C.    Plaintiffs Have Not Met Their Burden Of Demonstrating Direct, Immediate And Irreparable Harm Absent Court Intervention.

Plaintiffs' motion comes nowhere close to providing a "***clear record***" of "***specific***" abuse sufficient to justify an order under Rule 23, let alone the ***direct, immediate and irreparable harm*** necessary before a court may impose a prior restraint on protected speech.  *Gulf Oil Co.*, 619 F.2d at 466-471.

Contrary to *Gulf Oil*, plaintiffs seek this extraordinary remedy based on nothing more than the unsworn statements in their motion (which are entitled to no weight, *Gulf Oil Co.*, 619

---

[16] Plaintiffs' other cases likewise involve ongoing business relationships.  *United States v. Ashbritt, Inc.*, Civ. A. No. 1:07cv94WJG-JMR, 2008 WL 4861921, at *2 (S.D. Miss. Nov. 10, 2008) (the subcontractors "may believe that a quick resolution is in their best interest, because the defendant…is the company owing these companies money for work performed almost three years ago"); *Burford v. Cargill Inc.*, Civ. A. No. 05-0283, 2007 WL 81667, at *1 (W.D. La. Jan. 9, 2007) (class action by dairy owners against feed supplier), *see* Fourth Amended and Restated Complaint-Class Action, No. 505CV00283, 2010 WL 2691972 (W.D. La. May 7, 2010)); *see also* the cases cited in Plfs.' Mem. at 19 n.32.

F.2d at 466); speculation (unsupported by evidence) that GCCF's Release and other future communications might be "at the very least, confusing, and, at most, misleading" to claimants (Plfs.' Mem. at 25) (counsel does not claim any statement was false); and on a series of claims about Mr. Feinberg, BP and the GCCF claims process that are selective and erroneous.  This is hardly the "clear record" showing required by the Supreme Court in *Gulf Oil*.  *See* 452 U.S. at 101.  Far from establishing direct, immediate, and irreparable harm, exceptional circumstances, or specific abuse, the statements identified by plaintiffs—and counsel's own public statements— reflect a vigorous and fluid exchange of information and opinions.  As the Fifth Circuit observed, "[n]ot everything that tends to make a class action less convenient than ideal, or more difficult to manage, is an 'abuse.'"  *Gulf Oil*, 619 F.2d at 476.

With respect to plaintiffs' specific contentions, ***first***, their assertion that Mr. Feinberg is BP's "lawyer" is simply wrong.  (Plfs.' Mem. at 3-4.)  Neither Mr. Feinberg nor anyone in his firm represents BP or acts as its lawyer, and there is no attorney-client relationship between them.  (Ex. 2, Robinson Decl. ¶¶ 4-6; Ex. 3, Ciolino Decl. at 3-7; 1Ex. 4, 2/28/10 letter from S. Gillers to K. Feinberg, at 4.)  Instead, Mr. Feinberg and his firm are independent contractors in the operation of the GCCF.  (Robinson Decl. ¶ 7.)[17]  That Mr. Feinberg is a lawyer by training and profession does not make him *BP's* lawyer and even plaintiffs' ethics counsel makes no such claim.  (*See* Plfs.' Mem. Ex. B, Declaration of Basile J. Uddo.)[18]  The fundamental premise of

---

[17] Illustrative of this fact is that, under the GCCF's claims protocols, BP may appeal a Final Claim determination by the GCCF that exceeds $500,000.  (Gulf Coast Claims Facility Protocol for Interim and Final Claims, November 22, 2010, § VI.B.1, The Right to Appeal Pursuant to this Protocol, Bloomer Decl. Tab E)  As Mr. Feinberg's ethics expert, Professor Stephen Gillers, notes, such a provision contradicts the notion that Mr. Feinberg is BP's lawyer: "[p]rincipals do not appeal the decisions of their agents"; rather, "[a]gents exist to serve the interests of principals within the scope of the agency."  (Ex. 4, 12/28/10 letter from S. Gillers to K. Feinberg, at 4-5.)

[18] Plaintiffs' assertions that Mr. Feinberg's communications and the GCCF's Final Claim forms violate the Louisiana Rules of Professional Conduct (Plfs' Mem. at 10 n.21.), are irresponsible and without basis in the record.  Mr. Feinberg is not BP's lawyer and the GCCF is not a party to the case—and plaintiffs have no evidence to the contrary.  On their face, the Rules simply do not apply where, as here, a lawyer is not representing a client.  (Ex. 3, Ciolino Decl. at 7-11.)  Additionally, plaintiffs ignore that GCCF communications with claimants (including alleged

plaintiffs' motion—that Mr. Feinberg is BP's lawyer and thus subject to various ethical rules, including Rules 4.2 and 4.3—is incorrect and as a result, the motion fails on that basis alone.

***Second***, although plaintiffs complain about Mr. Feinberg's statements that he is "independent" of BP (Plfs.' Mem. at 9-11, 25), they do not address, much less refute, the fact that Mr. Feinberg is "responsible for all decisions relating to the administration and processing of claims by the GCCF"; that he developed the GCCF's claims protocols and Release; that he "does not report to BP and BP does not control his decisions in any way"; and that he (not BP) "will decide your claim." (Plfs.' Mem. Ex. E §§ 1.1-1.3.) That more than satisfies the definition of an independent contractor. *See, e.g., Newcomb v. North East Ins. Co.*, 721 F.2d 1016, 1017 (5th Cir. 1983) ("An independent contractor…works according to his own methods without direct supervision or control by the employer except as to the overall result."); Blacks Law Dictionary (9th ed. 2009) (defining independent contractor as "[o]ne who is entrusted to undertake a specific project but who is left free to do the assigned work and to choose the method for accomplishing it. It does not matter whether the work is done for pay or gratuitously."). As for plaintiffs' assertion that "BP is paying Mr. Feinberg and his law firm," this fact was fully and publicly disclosed from the beginning and says nothing about Mr. Feinberg's independence in the administration of claims. (Plfs.' Mem. at 7, 25; *see id*. Ex. E § 1.2.) Beyond this, who do plaintiffs think should pay for the work of the GCCF and Mr. Feinberg if not BP as the OPA responsible party? Plaintiffs do not say.

***Third***, plaintiffs' repeated assertion that Mr. Feinberg is "urging putative class members not to seek advice from an attorney" is belied by their own motion papers. (Plfs.' Mem. at 11;

---

putative class members) are pursuant to the claims process required by OPA and thus, even if Rule 4.2 somehow applied, the GCCF communications are within Rule 4.2's exclusion for contacts "authorized … by law." *See, e.g.*, Model Rules of Prof'l Conduct R. 4.2 cmt. (2006) ("[A] lawyer having independent justification or legal authorization for communicating with a represented person is permitted to do so.").

*see also* 12-13; Plfs.' Mot. ¶ VI.)  In fact, Mr. Feinberg tells potential claimants to "[t]alk to your lawyer" and the GCCF makes clear that "you do have the right to be represented by a lawyer of your choosing."  (Plfs.' Mem. Ex. L, Dkt. #912-12, p. 3; *id.* Ex. E § 2.4.)  Indeed, claimants are advised that "***you should not submit a claim until you have conferred with your lawyer about the decision to submit it and about your answers to its questions.  If you then choose to submit a claim, you should have your lawyer submit the claim for you***."  (GCCF Frequently Asked Questions, Section 1, ¶ 1 (emphasis added), Bloomer Decl. Tab C; *see also* Summary Of Options For Submission Of Final And Interim Payment Claims, at 1 ("**If you are represented by an attorney in connection with your claim, confer with your attorney about your options before submitting a claim or signing a release**" (emphasis in original), Bloomer Decl. Tab F.)[19]  Plaintiffs' argument gets it backwards.

*Fourth*, plaintiffs' contention that Mr. Feinberg and the GCCF have "discouraged claimants from…engaging in litigation" is both irrelevant and untrue.  (Plfs.' Mem. at 10-11.) Putting aside Mr. Feinberg's (and BP's) First Amendment rights to promote the compromise of legal claims, as well as plaintiffs' concession that "[p]ublic policy favors settlements" (*id.* at 4 n.5), Mr. Feinberg is the administrator of a federally mandated claims process specifically intended by Congress to resolve claims out of court—and which under OPA must be publicly

---

[19] Plaintiffs' assertion that "Mr. Feinberg and the GCCF are now offering to provide 'free legal advice' to the plaintiffs and putative class members," citing the GCCF's web page regarding its pro bono assistance program, is likewise incorrect.  (Plfs' Mem. at 10.)  The web page itself states that the program is administered by the Mississippi Center for Justice, not Mr. Feinberg or the GCCF, and "will not be providing assistance for litigation or claims filed with the Coast Guard."  (Plfs Mem. Ex. AA.)  The GCCF informs potential claimants that, while the program is paid for by a pre-paid legal services grant funded by BP, "[t]here is no connection or communication between BP and the Mississippi Center or the lawyers who will provide representation pursuant to the legal services assistance program."  (GCCF Frequently Asked Questions, Section 2, ¶ 10, Bloomer Decl. Tab C.)  The GCCF also makes clear that it "is not a law firm," does not represent claimants, and cannot "give you personal legal advice or advise you regarding settlement of any claims, including whether to file a claim with the GCCF or the worth of any claim you may have."  (*Id.* Section 1, ¶ 1.)

advertised.  That Mr. Feinberg would espouse OPA's purpose is as unremarkable as it is entirely appropriate.

For their part, plaintiffs ignore Mr. Feinberg's many public statements that the decision whether to accept the GCCF's offers is "purely voluntary" and a claimant remains free to sue: "If you don't want the interim payments and you don't want the final payment and you'd rather litigate in court, that is your choice.  That is up to you."  (Plfs.' Mem. Ex. L, Dkt. #912-12, p. 24; *id.* Ex. K (quoting Kenneth Feinberg); *see also* Gulf Coast Claims Facility Protocol for Interim and Final Claims, November 22, 2010, § I.A., Role (acceptance of payment is "wholly voluntary" and a "Claimant may elect to reject an Interim or Final Payment determination and, as permitted by law, either present the claim to the [NPFC] or commence an action in court."), Bloomer Decl. Tab E.)  Plaintiffs' arguments are contradicted by the record facts.

***Finally***, nothing in plaintiffs' motion demonstrates that potential class members have misunderstood or felt coerced by Mr. Feinberg's or the GCCF's communications, including the Quick Payment Final Claim or Full Review Final Claim forms.  Regardless, the proper remedy for any hypothetical misperception is not judicial intervention and a prior restraint.  Rather, if plaintiffs and their counsel disagree with Mr. Feinberg's statements, they may exercise their own First Amendment right to express that disagreement—as they have at various times during the last several months, to a wide media audience and through the internet.  This includes, as the Court has already observed, the extensive coverage of plaintiffs' dissatisfaction with the GCCF and the issues they raise in this motion.  (Plfs. Mem. Ex. N, 10/15/10 Tr. at 22 (noting newspaper and television coverage of "concerns by certain people in the public, by certain attorneys about the Gulf Coast Claims Facility and how that's operating and so forth.").)

As in *Turner v. Murphy Oil*, "[t]his is not a case in which a defendant has a monopoly on the information available to putative class members." (Plfs.' Ex. A) Just the opposite. Plaintiffs' liaison counsel and the Plaintiffs' Steering Committee ("PSC") have enjoyed local and national coverage of their own opinions, including their assertions (not conceded as accurate by BP) that (1) Mr. Feinberg is not independent of BP, (2) the release is overly broad, and (3) plaintiffs will do better in court than with the GCCF. For example:

- "'***Feinberg is acting in BP's interest in this situation and not the claimants. … To me, the victims' best appeal process is going to court.***'"
  (Moira Herbst, *New strings attached to BP oil spill awards*, Reuters, Nov. 25, 2010 (quoting PSC member Brian H. Barr), Bloomer Decl. Tab L);

- "***Many or most plaintiffs lawyers involved are convinced Feinberg is doing BP's bidding.*** … '***[I]n fact he's nothing more than a defense lawyer trying to settle cases for BP.***'"
  (Terry Carter, *Master of Disasters: Is Ken Feinberg Changing the Course of Mass Tort Resolution?,* ABA Journal, January 1, 2011 (quoting PSC member Stephen Herman), Bloomer Decl. Tab M);

- "'***Mr. Feinberg is preying on the victims at the height of the holidays in an effort to settle this case and absolve his client — BP. These claims of being generous are ridiculous.***'"
  (Cain Burdeau, *Gulf spill fund gets flood of last-minute claims*, Associated Press, Nov. 24, 2010 (quoting PCS member James Roy), Bloomer Decl. Tab N);

- "'***Feinberg wants people to give up their rights to punitive damages.*** Even though we still do not know the full extent of harm that the spill has caused, Feinberg still ***wants people to release not just BP for any and all damages, but also give up claims against Transocean and Haliburton.***'"
  (Statement on Herman, Herman Katz & Cotlar website, *Public Officials Speak Out Against Feinberg as BP Claims Process Changes*, Nov. 26, 2010 (quoting Soren Gisleson), Bloomer Decl. Tab O.)

Against the record of their own repeated and widely reported expressions of opinion about the GCCF, plaintiffs' motion seeking to restrain the expression of opinions by others, including Mr. Feinberg, is at best inconsistent and at worst hypocritical. These and other public statements by plaintiffs' counsel disprove any claim that court intervention is necessary to protect putative class members from a "one-sided" flow of information. (*See* Plfs.' Mem. at 15)

III.    **THIS COURT CANNOT NEGATE OR REWRITE THE GCCF'S RELEASE.**

Relying on an obsolete draft and without citing any authority, plaintiffs ask this Court to negate and re-write the GCCF's Release.  There is no basis in law or fact to do so.

At the threshold, plaintiffs cite no authority that would permit this Court to delete or alter the terms of a voluntary settlement between private parties pursuant to an extra-judicial claim resolution process mandated by federal law.  If plaintiffs/claimants do not like the terms of the Release, they are entirely free to reject them.  But they have no legal basis to ask the Court to re-write the Release to suit the preferences of plaintiffs' counsel.[20]

Equally important, plaintiffs ignore that releases which waive any and all claims, known and unknown, are perfectly valid and enforceable and indeed promote the public policy favoring settlement of disputes.  *See, e.g.*, *Ingram Corp. v. J. Ray McDermott & Co., Inc.*, 698 F.2d 1295, 1312 (5th Cir. 1983) ("When a release provides that 'any and all claims,' 'past, present, or future' are to be extinguished, a court is required to enforce its provisions both as to known and unknown claims.  A contrary result would not contribute significantly to the public policy of encouraging the settlement of differences and compromise of disputes…"); *Robin v. Binion*, 469 F.Supp.2d 375, 386-87 (W.D. La. 2007) (release of "any and all claims" "known or unknown" should be enforced because not doing so would undermine the strong public policy favoring settlement).  Likewise, the voluntary release of potentially-liable third parties is entirely proper because it promotes compromise and finality.  *See, e.g., Davis v. Huskipower Outdoor Equipment Corp.*, 936 F.2d 193, 197 (5th Cir. 1991) (upholding release of defendant as well as "all other persons, firms, or corporations liable or claimed to be liable"; "[u]nless [plaintiff] released all possible defendants, the settlement agreement would abysmally fail to protect the

---

[20] Indeed, even in *Murphy Oil*, the court rejected the plaintiffs' various objections to Murphy Oil's Settlement and Release Agreement, requiring only the inclusion of a statement that claimants should seek independent legal advice. (Plfs' Mem. Ex. A at 10-11.)  The GCCF's claims forms and Release already contain such a statement.

named parties from liability" as the plaintiff could "later sue an unnamed party…and the unnamed party could then drag all the named parties back into the suit."). Finally, a general release serves the purpose of OPA, which requires an extra-judicial claims process precisely in order to "to encourage settlement and avoid litigation." *Boca Ciega*, 51 F.3d at 238-39.

Against these basic principles and authorities, plaintiffs' arguments collapse. *First*, their assertion that the Release "should be limited" to certain BP entities and exclude "punitive damages," "attorneys' fees" and other claims (Plfs.' Mem. at 20, 22), has no basis in the law. The parties to a settlement are free to agree as to its scope, *Ho v. Martin Marietta Corp.*, 845 F.2d 545, 548 (5th Cir. 1988) ("Under familiar contract principles, the parties were free to agree to any terms, not opposed to public policy, that would settle" the plaintiff's claims), and plaintiffs cite no authority under Rule 23 or otherwise to support their position that the Court should prevent BP and claimants from fully resolving their dispute. In addition to interfering with the parties' right to contract, plaintiffs' desired result would encourage litigation rather than settlement, as claims which could be settled are not, and potentially liable third parties who are not released by claimants "could then drag all the named parties back into the suit." *Davis*, 936 F.2d at 197. This would undermine OPA and the federal policy favoring settlement. *See Boca Ciega*, 51 F.3d at 238-39.[21]

*Second*, plaintiffs' arguments that the Release (i) should identify the released parties, including the defendants named in the Master Complaint, as well as the claimant's "right to seek

---

[21] Plaintiffs' reliance on the Deepwater Horizon Oil Spill Trust Agreement is misplaced. (Plfs' Mem. 20-21 & Ex. F.) That Agreement addresses the escrow account established by BP; it does not determine how the GCCF administers the OPA claims process or the terms under which claims may be settled and resolved. Plaintiffs' argument that the "the Trust Document…excludes any possible payments for claims or damages caused by the other defendants" misstates that agreement's terms. (*Id.* at 20 (citing Trust Agreement § 3).) Trust Agreement § 3 simply provides that the term "Damage Claims" "shall not include…claims *by* partners, subsidiaries, affiliates," etc. of BP. (Ex. F § 3 (emphasis added).) In other words, the agreement precludes the use of escrow amounts to pay claims asserted by individuals or entities affiliated with BP; it does not, however, preclude settlement of any claims a claimant may have against those parties.

counsel"; (ii) "fails to clearly exclude mental anguish and medical monitoring claims"; and (iii) "improperly releases" more than the claimant's own claim, are contradicted by the Release itself.  (Plfs.' Mem. at 21-24.)  The Release identifies and lists released parties.  (*See, e.g.*, GCCF Full Review Final Payment Claim Form, Sample Release, Attachment A (listing release parties), Bloomer Decl. Tab I; GCCF Quick Payment Final Claim Form (Individual Claimants), Release, Attachment A, Bloomer Decl. Tab G (same).)  It also provides that "***this Release does not apply to claims…for bodily injury (including claims alleging a mental health injury)***…."  (*See, e.g.*, GCCF Full Review Final Payment Claim Form, Sample Release § 1, Bloomer Decl. Tab I (emphasis added); GCCF Quick Payment Final Claim Form (Individual Claimants), Release § 1, Bloomer Decl. Tab G (same).)[22]

Contrary to plaintiffs' argument, the Release applies to and releases only those claims "that Claimant has or may have" arising from or relating to the spill.  (*See, e.g.*, GCCF Full Review Final Payment Claim Form, Sample Release § 1, Bloomer Decl. Tab I; *see also id.* § 2 ("Claimant also, on behalf of Claimant's spouse, heirs, beneficiaries, agents,…hereby releases and forever discharges, and covenants not to sue… ***for any Claims released by Claimant pursuant to Paragraph 1***" (emphasis added).)  It does not release separate claims that a different individual (or business) may have.  Thus, for example, although the GCCF requires a claimant's spouse to sign the Release, it makes clear that the only claims being released are those of the claimant himself or herself, and the spouse's interest in that claim.  (*See* GCCF Frequently Asked Questions, Section 4, ¶ 25 ("Your signature on the Release applies to your spouse's claim (or to the claim of a business owned by your spouse or a business jointly owned by you and your

---

[22] Claimants who choose to accept a Final Payment Offer for a physical injury or death claim must sign a separate Release of Bodily Injury Claims that releases and waives such claims.  (GCCF Full Review Final Payment Claim Form at 1, Bloomer Decl. Tab I; *see* Release of Bodily Injury Claims, Bloomer Decl. Tab K.)

spouse), not to a separate claim you might have."), Bloomer Decl. Tab C; *see also id.* Section 5, ¶ 46.)

*Finally*, plaintiffs' complaint that the Release "fails to identify the MDL" and "Plaintiffs' Co-Liaison Counsel" ignores that the GCCF and Mr. Feinberg are not parties to this litigation nor part of the MDL proceedings.  (Plfs.' Mem. at 24.)  Moreover, OPA's extra-judicial claims process necessarily precedes any litigation on OPA claims and it is not at all clear that any given claimant "is a member of the putative class" in these proceedings.  (*Id.*)  Plaintiffs' request has no basis and should be rejected.

## IV.    PLAINTIFFS CANNOT SATISFY THE STANDARDS FOR THE MANDATORY INJUNCTIVE RELIEF THEY SEEK.

 Plaintiffs seek an order requiring the GCCF to change its Release and the way it resolves OPA claims.  (Dkt. # 912-4, Plfs.' Proposed Order ¶¶ 1-6.)  Aside from its obvious First Amendment and other legal problems, such an order would necessarily require the court to find wrongful conduct by, and grant mandatory injunctive relief against, third parties not before the Court—raising serious questions of due process, personal jurisdiction, and the reach of the Court's injunctive (and contempt) authority.  *See*, *e.g.*, Charles Alan Wright, *et al.*, 11A Fed. Prac. & Proc. Civ. § 2956  ("[N]o court can make a decree which will bind any one but a party; … it cannot lawfully enjoin the world at large, no matter how broadly it words its decree.") (quoting *Alemite Mfg. Corp. v. Staff,* 42 F.2d 832, 833 (2d Cir. 1930) (Hand, J.))[23]

---

[23] Plaintiffs' suggestion that BP could "direct its lawyer/adjuster and agents" to perform the requested relief is wrong as a matter of fact and law.  The GCCF and Mr. Feinberg are not agents (or lawyers/adjusters) of BP (*see* Part II.C, *supra*).  And the injunctive relief plaintiffs seek is based on alleged wrongful conduct and statements not by BP, but by Mr. Feinberg and the GCCF—whose rights and liabilities are not before the court.  *See* Charles Alan Wright, *et al.*, 11A Fed. Prac. & Proc. Civ. § 2956 ("'the only occasion when a person not a party may be punished, is when he has helped to bring about, not merely what the decree has forbidden, because it may have gone too far, but what it has power to forbid, ***an act of a party***.'") (quoting *Alemite Mfg. Corp.,* 42 F.2d at 833).

Beyond this, plaintiffs have not even attempted to meet the demanding standard for mandatory injunctive relief.  To justify this "extraordinary remedy," plaintiffs must establish: (1) a substantial likelihood of success on the merits, (2) a substantial threat that they will suffer irreparable harm without the injunction, (3) that the threatened injury outweighs any damage that the injunction might cause the defendant, and (4) that the injunction will not disserve the public interest.  *See Ridgely v. Fed. Emergency Mgmt. Agency*, 512 F.3d 727, 734 (5th Cir. 2008); *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987) (same).  "Mandatory preliminary relief, which goes well beyond simply maintaining the status quo *pendente lite*, is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party."  *Martinez v. Mathews,* 544 F.2d 1233, 1243 (5th Cir. 1976).

Plaintiffs cannot meet the standard and, indeed, do not even try.  ***First***, plaintiffs can provide no legal basis for altering or invalidating the Release (*see* Part III, *supra*), and cannot show any wrongful act or communication by Mr. Feinberg or the GCCF.  (*See* Part II.C, *supra*.) ***Second***, they have not identified and cannot prove any irreparable injury.  Under the law, potential class members are entitled to (and cannot possibly be "irreparably harmed" by) voluntarily settling their claims out of court; this is precisely what Congress hoped to encourage. *Boca Ciega Hotel*, 51 F.3d at 238-39.

***Third***, the public interest is not served by a mandatory injunction that would disrupt and delay the GCCF's administration of claims, contrary to Congress's intent.  *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (The court "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.") (quotation marks omitted); *Avmed Inc. v. BrownGreer PLC*, 300 Fed. Appx. 261, 265 (5th Cir. 2008) (requested relief would disserve public interest "by stalling and disrupting" the resolution of case and

payments to claimants).  The balancing of the equities clearly favors the GCCF and weighs heavily against the Court intervening in what is specifically intended to be an extra-judicial process.

**Finally**, plaintiffs have provided this Court with no record or evidentiary basis to satisfy the requirements for injunctive relief under Rule 65.  Plaintiffs have no competent evidence, for example, that claimants have been misled or will be irreparably injured, only speculation and argument.  This is not the clear showing the law requires.  *See Martinez,* 544 F.2d at 1243.

<u>CONCLUSION</u>

For the reasons set forth above, BP respectfully requests that the Court deny plaintiffs' motion in its entirety.

Respectfully submitted,


Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Andrew B. Bloomer, P.C.

**KIRKLAND & ELLIS LLP**
300 North LaSalle Street
Chicago, IL  60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

/s/ Don K. Haycraft
R. Keith Jarrett (Bar #16984)
Don K. Haycraft (Bar #14361)
Jonathan A. Hunter (Bar #18619)
Mark D. Latham (Bar #19673)

**LISKOW & LEWIS**
701 Poydras Street, Suite 5000
New Orleans, LA  70139-5099
Telephone:     (504) 581-7979
Facsimile:     (504) 556-4108

*Attorneys for BP America Production Company and BP Exploration & Production, Inc.*