# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * | MDL No. 2179 |
| | * | SECTION J |
| | * | |
| | * | Honorable CARL J. BARBIER |
| This document relates to: all cases | * | |
| | * | Magistrate Judge SHUSHAN |

---

## DECLARATION OF ANDREW B. BLOOMER

I, Andrew B. Bloomer, declare as follows:

1.      I am over twenty-one years of age and make this Declaration based on my own personal knowledge.

2.      I am a partner of the law firm of Kirkland & Ellis LLP, and one of the counsel for BP in these proceedings.

3.      I am submitting this Declaration in support of BP's Memorandum in Opposition to "Plaintiffs' Motion to Supervise *Ex Parte* Communications Between BP Defendants and Putative Class Members."

4.      Attached hereto as Exhibit A is a true and correct copy of a screen shot of the U.S. Coast Guard's National Pollution Fund Center (NPFC) Claims Process, available at http://www.restorethegulf.gov/release/2010/09/17/us-coast-guards-national-pollution-fund-center-npfc-claims-process (last visited on January 7, 2011).

5.      Attached hereto as Exhibit B is a true and correct copy of an excerpt from the Gulf Coast Claims Facility Overall Program Statistics (Status Report as of January 6, 2011), available   at   http://www.gulfcoastclaimsfacility.com/GCCF_Overall_Status_Report.pdf   (last visited on January 7, 2011).

6.      Attached hereto as Exhibit C is a true and correct copy of the Gulf Coast Claims Facility Frequently Asked Questions, available at http://www.gulfcoastclaimsfacility.com/faq (last visited on January 7, 2011).

7.      Attached hereto as Exhibit D is a true and correct copy of the Gulf Coast Claims Facility Contact Us, available at http://www.gulfcoastclaimsfacility.com/contact (last visited on January 7, 2011).

8.      Attached hereto as Exhibit E is a true and correct copy of the Gulf Coast Claims Facility Protocol for Interim and Final Claims, November 22, 2010, available at http://www.gulfcoastclaimsfacility.com/proto_4#1 (last visited on January 7, 2011).

9.      Attached hereto as Exhibit F is a true and correct copy of the Gulf Coast Claims Facility Summary Of Options For Submission Of Final And Interim Payment Claims, available at   http://www.gulfcoastclaimsfacility.com/summary_options.pdf   (last   visited   on   January   7, 2011).

10.      Attached hereto as Exhibit G is a true and correct copy of the Gulf Coast Claims Facility Quick Payment Final Claim Form (For Individual Claimants).

11.      Attached hereto as Exhibit H is a true and correct copy of the Gulf Coast Claims Facility Quick Payment Final Claim Form (For Business Claimants).

12.      Attached hereto as Exhibit I is a true and correct copy of the Gulf Coast Claims Facility Full Review Final Payment Claim Form.

13.     Attached hereto as Exhibit J is a true and correct copy of the Gulf Coast Claims Facility Sample Release and Covenant Not to Sue.

14.     Attached hereto as Exhibit K is a true and correct copy of the Gulf Coast Claims Facility Bodily Injury Release.

15.     Attached hereto as Exhibit L is a true and correct copy of Moira Herbst, *New strings attached to BP oil spill awards*, Reuters, Nov. 25, 2010, available online at http://in.mobile.reuters.com/article/businessNews/idINIndia-53137120101124 (last visited January 7, 2011).

16.     Attached hereto as Exhibit M is a true and correct copy of Terry Carter, *Master of Disasters: Is Ken Feinberg Changing the Course of Mass Tort Resolution?*, ABA Journal, January 1, 2011, available online at http://www.abajournal.com/magazine/article/master_of_disasters (last visited January 7, 2011).

17.     Attached hereto as Exhibit N is a true and correct copy of Cain Burdeau, Gulf spill fund gets flood of last-minute claims, Associated Press, Nov. 24, 2010, available online at http://news.yahoo.com/s/ap/20101124/ap_on_bi_ge/us_gulf_oil_spill_claims     (last     visited January 7, 2011).

18.     Attached hereto as Exhibit O is a true and correct copy of Statement on Herman, Herman Katz & Cotlar website, Public Officials Speak Out Against Feinberg as BP Claims Process Changes, Nov. 26, 2010, available online at http://hhklk.com/Headlines/BP_Claims.aspx (last visited January 7, 2011).

I make this Declaration under penalties of perjury pursuant to 28 U.S.C. § 1746, and I state that the facts set forth herein are true.

Andrew B. Bloomer

Dated:  January 7, 2011

# EXHIBIT A

*An Official Website of the United States Government*

Follow us:        | Join Mailing List | About Us | Contact Us | Site Map

Search

Home › U.S. Coast Guard's National Pollution Fund Center (NPFC) Claims Process

## U.S. Coast Guard's National Pollution Fund Center (NPFC) Claims Process

September 17, 2010 | 10:21:45 AM EDT

0
tweets

tweet

### Contact Information

**Questions for the NPFC:**

1-800-280-7118
www.uscg.mil/npfc/claims

**To submit a claim:**
US COAST GUARD STOP 7100 (ca)
4200 Wilson Boulevard, Suite 1000
Arlington, Va. 20598-7100

The NPFC administers the Oil Spill Liability Trust Fund, which is governed by the Oil Pollution Act of 1990. Before filing a claim with NPFC, individuals, businesses, and local governments must first file a claim with BP as a Responsible Party. States may choose to file claims directly with NPFC. If BP denies the claim or the claim goes unsettled for 90 days, claimants may then apply to the NPFC. Parties will not be able to file a claim with the NPFC without first applying to BP.

### Types of claims available under the NPFC:

- **Real and personal property damage:** damage or economic loss related to the destruction or harm of real or personal property.
  - **Example:** the owner or leaser of a boat may submit a claim to have the boat cleaned.
- **Loss of profits and earning capacity:** due to the injury or loss of real property, personal property, or natural resources.
  - **Example:** shrimpers who cannot operate due to the closed Gulf waters; seafood producers and packers; businesses affected by the reduced tourism such as hotels, restaurants, charter tours.
- **Loss of Government Revenue or Increased Public Services:** State and local governments may apply for loss of taxes or other revenue due to injury or destruction of loss of real property, personal property, or natural resources.
  - **Example:** city parking revenue from a lot near a public beach that has been closed due to the spill.
  Governments may also apply for providing increased public services directly attributed to the oil spill.
  - **Example:** emergency traffic control in the vicinity of the incident.
- **Natural Resources:** ONLY federal, state, foreign and Indian tribal governments may apply for damage or loss of natural resources including land, fish, drinking water, and air.

Any claimant that can document a loss may file a claim, but claims are not guaranteed to be paid.

- **Damage claims must be made with in 3 years** of when "the damage and its connection with the spill was reasonably discoverable with the exercise of due care." NPFC Claimant's Guide, Page 6 *(PDF - 26 pages, 110 KB)*
- **Removal costs must be made with in 6 years** "after the date of competition of all removal actions for the incident." NPFC Claimant's Guide, Page 6 *(PDF - 26 pages, 110 KB)*

### Adjudication Process

Once NPFC sends a claimant a determination, the claimant must accept or reject the offer with in 60 days:

- If the claimant accepts, they must sign a release.
- If no action is taken within 60 days, the offer to pay will be voided and the claim closed.
- If the claimant rejects the offer, they may provide additional information and ask NPFC to reconsider the claim. This may start an entirely new review process.

**Download Plug-in**
Some of the links on this page require a plug-in to view them. Links to the plug-ins are available below.

 Adobe Acrobat (PDF)

| **Home** | **Response** | **Assistance** | **Health & Safety** | **Fish & Wildlife** | **Environment** | **News** |
|---|---|---|---|---|---|---|
| | Current Operations | File a Claim | Boating | Birds | Air | Press Releases |
| | Education Resources | Other Assistance | Drinking Water | Fish | Beaches | Response Updates |
| | Federal Partners | Small Business | Health Matters | Turtles | Coral | Transcripts & Docs |
| | Recovery Plan | | Mental Health | Other Wildlife | Waste | Events |
| | Investigation | | Seafood Safety | Fish & Wildlife Reports | Water | Features |
| | Ongoing Administration Response | | Workers and Volunteers | | | FOIA Library |
| | State and Local | | | | | Maps & Data |
| | | | | | | Multimedia |

Follow us:     

Cambodian | Croatian | Español | Français | Korean | Kreyòl ayisyen | Lao | Russian | Thai | Vietnamese

Site Map | Site Notices & Plug-Ins

# EXHIBIT B



# Gulf Coast Claims Facility
www.GulfCoastClaimsFacility.com

## Overall Program Statistics
*(Status Report as of January 06, 2011)*

| All Claimants<br>*(Claimants may have one or more Claim Type)* | No. of Claimants |
|---|---|
| **Total Claimants** | **469,789** |
| 1. Individual | 387,318 |
| 2. Business | 82,471 |
| *Represented Claimants: 13,565* | |

### Claimants by State



■ LA  ■ FL  ■ AL  ■ MS  ■ TX  ■ Others

| Paid Claimants | Paid Claimants | Total Amount Paid |
|---|---|---|
| **Total Paid Claimants** | 167,989 | $ 2,889,805,576.96 |
| **Separate Fund for Real Estate Brokers and Agents** | | $ 60,000,000.00 |
| | **Total Paid:** | **$ 2,949,805,576.96** |

| Submitted and Paid Claimants - Individual<br>*(Claimants may have more than one Claim Category)* | Claimants with Filed Claims | Paid Claimants | Paid Claims | Amount Paid |
|---|---|---|---|---|
| 1. Emergency Advance Payment | 369,191 | 123,868 | 123,916 | $ 1,064,150,437.04 |
| 2. Final: Quick Pay | 44,959 | 30,174 | 30,177 | $ 150,870,000.00 |
| 3. Final: Full Review | 71,497 | 0 | 0 | $ - |
| 4. Interim Payment | 14,426 | 0 | 0 | $ - |
| **Sub-Total** | **500,073** | **154,042** | **154,093** | **$ 1,215,020,437.04** |

| Submitted and Paid Claimants - Business<br>*(Claimants may have more than one Claim Category)* | Claimants with Filed Claims | Paid Claimants | Paid Claims | Amount Paid |
|---|---|---|---|---|
| 1. Emergency Advance Payment | 79,364 | 44,120 | 44,213 | $ 1,479,285,139.92 |
| 2. Final: Quick Pay | 11,199 | 7,424 | 7,428 | $ 185,500,000.00 |
| 3. Final: Full Review | 11,049 | 1 | 1 | $ 10,000,000.00 |
| 4. Interim Payment | 3,426 | 0 | 0 | $ - |
| **Sub-Total** | **105,038** | **51,545** | **51,642** | **$ 1,674,785,139.92** |

| | | | | |
|---|---|---|---|---|
| **Separate Fund for Real Estate Brokers and Agents** | | | | $ 60,000,000.00 |
| **Grand Total Paid to Date** | **605,111** | **205,587** | **205,735** | **$ 2,949,805,576.96** |

| Paid Claims by Category<br>*(includes Individual and Business)* | No. of Claimants | No. of Claims | Amount Paid |
|---|---|---|---|
| 1. Removal and Clean Up Costs | 55 | 57 | $ 620,600.00 |
| 2. Real or Personal Property | 164 | 189 | $ 1,696,198.67 |
| 3. Lost Earnings or Profits | 167,804 | 205,420 | $ 2,887,340,713.22 |
| 4. Loss of Subsistence Use of Natural Resources | 8 | 10 | $ 54,285.71 |
| 5. Physical Injury / Death | 56 | 59 | $ 93,779.36 |
| **Total** | **168,087** | **205,735** | **$ 2,889,805,576.96** |



# GCCF

# Gulf Coast Claims Facility
### www.GulfCoastClaimsFacility.com

## Overall Program Statistics
*(Status Report as of January 06, 2011)*

### Individual Claims by Amount
*(Claimants may have more than one Claim Category)*

| Paid Claims by Amount | No. of Claims | Amount Paid |
|---|---|---|
| 1. $0.01 - $5,000.00 | 81,256 | $ 301,120,140.18 |
| 2. $5,000.01 - $10,000.00 | 38,721 | $ 289,873,243.92 |
| 3. $10,000.01 - $25,000.00 | 29,278 | $ 448,797,970.16 |
| 4. $25,000.01 - $100,000.00 | 4,806 | $ 171,076,282.78 |
| 5. $100,000.01 - $500,000.00 | 32 | $ 4,152,800.00 |
| 6. Over $500,000.00 | 0 | $ - |
| **Total** | **154,093** | **$ 1,215,020,437.04** |







# Gulf Coast Claims Facility
## www.GulfCoastClaimsFacility.com

## Overall Program Statistics
*(Status Report as of January 06, 2011)*

### Business Claims by Amount
*(Claimants may have more than one Claim Category)*

| Paid Claims by Amount | No. of Claims | Amount Paid |
|---|---|---|
| 1. $0.01 - $5,000.00 | 10,472 | $ 28,606,745.38 |
| 2. $5,000.01 - $10,000.00 | 7,953 | $ 59,566,695.86 |
| 3. $10,000.01 - $25,000.00 | 18,406 | $ 370,009,822.68 |
| 4. $25,000.01 - $100,000.00 | 12,025 | $ 610,418,400.00 |
| 5. $100,000.01 - $500,000.00 | 2,694 | $ 476,637,900.00 |
| 6. Over $500,000.00 | 92 | $ 129,545,576.00 |
| **Total** | **51,642** | **$ 1,674,785,139.92** |



**Business Claims Paid by Value Range**

- 1. $0.01 - $5,000.00 20.28%
- 2. $5,000.01 - $10,000.00 15.40%
- 3. $10,000.01 - $25,000.00 35.64%
- 4. $25,000.01 - $100,000.00 23.29%
- 5. $100,000.01 - $500,000.00 5.22%
- 6. Over $500,000.00 0.18%



**Business Amount Paid by Value Range**

- 1. $0.01 - $5,000.00 1.71%
- 2. $5,000.01 - $10,000.00 3.56%
- 3. $10,000.01 - $25,000.00 22.09%
- 4. $25,000.01 - $100,000.00 36.45%
- 5. $100,000.01 - $500,000.00 28.46%
- 6. Over $500,000.00 7.74%



## Gulf Coast Claims Facility
### www.GulfCoastClaimsFacility.com

## Overall Program Statistics
*(Status Report as of January 06, 2011)*

### Claims by Category and Amount
*(Claimants may have more than one Claim Category)*

| Paid Claims by Category and Amount | No. of Claims | Amount Paid |
|---|---|---|
| **1. Removal and Clean Up Costs** | | |
| a. $0.01 - $5,000.00 | 37 | $ 60,500.00 |
| b. $5,000.01 - $10,000.00 | 10 | $ 71,400.00 |
| c. $10,000.01 - $25,000.00 | 5 | $ 60,900.00 |
| d. $25,000.01 - $100,000.00 | 3 | $ 133,700.00 |
| e. $100,000.01 - $500,000.00 | 2 | $ 294,100.00 |
| f. Over $500,000.00 | 0 | $ - |
| **Sub-Total** | **57** | **$ 620,600.00** |
| **2. Real or Personal Property** | | |
| a. $0.01 - $5,000.00 | 110 | $ 273,445.38 |
| b. $5,000.01 - $10,000.00 | 33 | $ 231,300.00 |
| c. $10,000.01 - $25,000.00 | 32 | $ 514,389.91 |
| d. $25,000.01 - $100,000.00 | 13 | $ 500,963.38 |
| e. $100,000.01 - $500,000.00 | 1 | $ 176,100.00 |
| f. Over $500,000.00 | 0 | $ - |
| **Sub-Total** | **189** | **$ 1,696,198.67** |
| **3. Lost Earnings or Profits** | | |
| a. $0.01 - $5,000.00 | 91,516 | $ 329,302,717.97 |
| b. $5,000.01 - $10,000.00 | 46,630 | $ 349,130,096.92 |
| c. $10,000.01 - $25,000.00 | 47,644 | $ 818,181,802.93 |
| d. $25,000.01 - $100,000.00 | 16,815 | $ 780,860,019.40 |
| e. $100,000.01 - $500,000.00 | 2,723 | $ 480,320,500.00 |
| f. Over $500,000.00 | 92 | $ 129,545,576.00 |
| **Sub-Total** | **205,420** | **$ 2,887,340,713.22** |



# Gulf Coast Claims Facility
### www.GulfCoastClaimsFacility.com

## Overall Program Statistics
*(Status Report as of January 06, 2011)*

## Claims by Category and Amount
*(Claimants may have more than one Claim Category)*

| Paid Claims by Category and Amount | No. of Claims | Amount Paid |
|---|---|---|
| **4. Loss of Subsistence Use of Natural Resources** | | |
| a. $0.01 - $5,000.00 | 9 | $            29,285.71 |
| b. $5,000.01 - $10,000.00 | 0 | $                      - |
| c. $10,000.01 - $25,000.00 | 1 | $            25,000.00 |
| d. $25,000.01 - $100,000.00 | 0 | $                      - |
| e. $100,000.01 - $500,000.00 | 0 | $                      - |
| f. Over $500,000.00 | 0 | $                      - |
| **Sub-Total** | **10** | **$            54,285.71** |
| | | |
| **5. Physical Injury / Death** | | |
| a. $0.01 - $5,000.00 | 56 | $            60,936.50 |
| b. $5,000.01 - $10,000.00 | 1 | $              7,142.86 |
| c. $10,000.01 - $25,000.00 | 2 | $            25,700.00 |
| d. $25,000.01 - $100,000.00 | 0 | $                      - |
| e. $100,000.01 - $500,000.00 | 0 | $                      - |
| f. Over $500,000.00 | 0 | $                      - |
| **Sub-Total** | **59** | **$            93,779.36** |
| | | |
| **6. Other Claims** | | |
| a. $0.01 - $5,000.00 | 0 | $                      - |
| b. $5,000.01 - $10,000.00 | 0 | $                      - |
| c. $10,000.01 - $25,000.00 | 0 | $                      - |
| d. $25,000.01 - $100,000.00 | 0 | $                      - |
| e. $100,000.01 - $500,000.00 | 0 | $                      - |
| f. Over $500,000.00 | 0 | $                      - |
| **Sub-Total** | **0** | **$                      -** |
| | | |
| **Total** | **205,735** | **$    2,889,805,576.96** |



# Gulf Coast Claims Facility
www.GulfCoastClaimsFacility.com

## Overall Program Statistics
*(Status Report as of January 06, 2011)*

### Individual Lost Earnings or Profits Claims Paid by Industry
*(Claimants may have more than one Claim Category)*

| Paid Claims By Industry | No. of Claims | Amount Paid |
|---|---|---|
| Fishing | 8,989 | $ 134,297,960.03 |
| Food, Beverage and Lodging | 81,076 | $ 563,725,805.71 |
| Rental Property(ies) | 2,741 | $ 23,822,000.00 |
| Retail, Sales and Service | 53,306 | $ 417,766,082.48 |
| Seafood Processing and Distribution | 5,343 | $ 55,101,863.24 |
| Tourism and Recreation | 2,431 | $ 19,312,839.99 |
| **Total** | **153,886** | **$ 1,214,026,551.45** |



**# of Individual Claims Paid by Industry**

Retail, Sales and Service 34.64%
Seafood Processing and Distribution 3.47%
Tourism and Recreation 1.58%
Fishing 5.84%
Rental Property(ies) 1.78%
Food, Beverage and Lodging 52.69%

**Amount of Individual Claims Paid by Industry**

Retail, Sales and Service 34.41%
Seafood Processing and Distribution 4.54%
Tourism and Recreation 1.59%
Fishing 11.06%
Rental Property(ies) 1.96%
Food, Beverage and Lodging 46.43%



# Gulf Coast Claims Facility
www.GulfCoastClaimsFacility.com

## Overall Program Statistics
*(Status Report as of January 06, 2011)*

### Business Lost Earnings or Profits Claims Paid by Industry
*(Claimants may have more than one Claim Category)*

| Paid Claims By Industry | No. of Claims | Amount Paid |
|---|---|---|
| Fishing | 10,390 | $ 395,791,800.00 |
| Food, Beverage and Lodging | 5,100 | $ 279,960,334.00 |
| Rental Property(ies) | 13,647 | $ 218,893,076.00 |
| Retail, Sales and Service | 20,407 | $ 627,940,351.77 |
| Seafood Processing and Distribution | 1,014 | $ 106,365,800.00 |
| Tourism and Recreation | 976 | $ 44,362,800.00 |
| **Total** | **51,534** | **$ 1,673,314,161.77** |

### # of Business Claims Paid by Industry



### Amount of Business Claims Paid by Industry



# EXHIBIT C

- En Español
- _____
- Bằng Tiếng Việt

# Frequently Asked Questions

- **SECTION 1 - GENERAL INFORMATION ABOUT THE GULF COAST CLAIMS FACILITY**
- **SECTION 2 - ATTORNEY REPRESENTATION**
- **SECTION 3 - CLOSING THE EMERGENCY ADVANCE PAYMENT PROGRAM**
- **SECTION 4 - INFORMATION ON QUICK PAYMENT FINAL CLAIMS**
- **SECTION 5 - INFORMATION ON FULL REVIEW FINAL PAYMENT CLAIMS**
- **SECTION 6 – INFORMATION ON INTERIM PAYMENT CLAIMS**
- **SECTION 7 - WHO MAY FILE A CLAIM**
- **SECTION 8 - HOW TO FILE A FULL REVIEW FINAL PAYMENT CLAIM OR AN INTERIM PAYMENT CLAIM**
- **SECTION 9 – INFORMATION ON PAYMENTS**
- **SECTION 10 – INFORMATION ON CLAIM TYPES**
- **SECTION 11 – CLAIMANT BILL OF RIGHTS**

---

## SECTION 1 - GENERAL INFORMATION ABOUT THE GULF COAST CLAIMS FACILITY

### 1. What is the Gulf Coast Claims Facility?

The Gulf Coast Claims Facility ("GCCF") is an independent claims facility for submission and resolution of claims of Individuals and Businesses for costs and damages incurred as a result of the oil discharges due to the Deepwater Horizon incident on April 20, 2010 (the "Spill"). BP has agreed to contribute funds to an escrow account to be used to pay claims submitted to the GCCF. The GCCF is administered by Kenneth R. Feinberg (the "Claims Administrator"), a neutral fund administrator responsible for all decisions relating to the administration and processing of claims by the GCCF.

The GCCF is not a law firm. No one at the GCCF can give you personal legal advice or advise you regarding settlement of any claims, including whether to file a claim with the GCCF or the worth of any claim you may have. No one at the GCCF can represent you. If you wish to consult a lawyer you should do so. (See SECTION TWO below for more information on Attorney Representation.)

### 2. If the Claims Administrator is being paid by BP, how can the GCCF or the Claims Administrator be independent?

Although BP provides the funding for the GCCF, including the Claims Administrator's fees and expenses, the Claims Administrator does not report to BP and BP does not control his decisions in any way. The Claims Administrator's decisions are his and his alone. His decisions are subject only to the

limited appeal authority in the Protocol for Interim and Final Claims (published on this website). In reaching decisions, the Claims Administrator has no duty to serve the interests of any organization or person, including BP.

### 3. I already submitted a claim to BP. What should I do?

If you have previously filed a claim with BP, all of the information you included in your claim to BP as well as the documents you submitted have been transferred to the GCCF. Although the GCCF now has the documents and information you submitted to BP, you must complete a GCCF Claim Form to apply for any payments from the GCCF if you have not done so before now. You will be assigned a new GCCF Claimant Identification Number.

### 4. Can I still file a claim with BP?

No. As of August 23, 2010, all claims must be filed with the GCCF. The GCCF has replaced the BP claims process. Individuals and Businesses should no longer present claims to BP.

### 5. English is not my first language. Are there translation services available?

You can call the Toll Free Number 1-800-916-4893 and ask for assistance in another language. In addition, translators in the following languages are available at these Claims Site Offices:

1. **For Spanish:**

   Bayou LaBatre, AL
   Biloxi, MS
   Clearwater, FL
   Cut Off, LA
   Gretna/Belle Chasse, LA
   Gulf Breeze, FL
   Hammond, LA
   Houma, LA
   Lafitte, LA
   Mobile, AL
   New Iberia, LA
   Orange Beach, AL
   Pointe A La Hache, LA
   Santa Rosa, FL
   Venice, LA

2. **For Vietnamese:**

   Bayou LaBatre, AL
   Bay St. Louis, MS;
   Biloxi, MS
   Gretna/Belle Chase, LA
   Hammond, LA
   Houma, LA
   Mobile, AL
   New Orleans, LA
   Pascagoula, MS
   Venice, LA

3. **For Vietnamese:**

Venice, LA

**6. What should I do if I have information about a potentially fraudulent claim?**

You should call the Department of Justice National Center for Disaster Fraud hotline number: 877-623-3423.

**7. What should I do if I move?**

If you move, you should contact us as soon as possible to ensure that you receive all communication and/or payments to which you are entitled. The quickest way to reach us is by emailing us at info@gccf-claims.com. You may also fax a letter to 1-866-682-1772, or mail a letter to:

GULF COAST CLAIMS FACILITY
P.O. BOX 9658
Dublin, OH 43017-4958

(**back to top**)


**SECTION 2 - ATTORNEY REPRESENTATION**


**8. Do I need to hire a lawyer to help me with my claim?**

You do not have to hire a lawyer to submit a claim to the GCCF. You do have the right to be represented by a lawyer of your choosing. If you are represented by a lawyer, the GCCF will communicate with your lawyer rather than directly with you.

**9. I would like to have a lawyer represent me in the GCCF claims process, but I cannot afford one. Are there any free legal services available?**

Yes. If you cannot afford a lawyer and you would like an attorney to represent you for the Interim or Final Claims Process you may request legal assistance from the Legal Assistance program being administered by the Mississippi Center for Justice which is providing free legal assistance to claimants requesting assistance for the Interim and Final Claims Process. Once you register and request the services of a leg assistance attorney, you will receive a call back from an attorney. The pro bono assistance program will not be providing assistance for litigation or claims filed with the Coast Guard.

If you would like to request that a Pro Bono attorney contact you now regarding the Release required to be signed, please contact us by email at ProBonoRequest@gccf-claims.com or call the toll-free number 1-800-916-4893 and ask for the ***Pro Bono Escalation Team***. You may also download the attached Free Legal Assistance Form and return that completed Form to us via fax, email or regular mail.

**10. How are the free legal services from the Mississippi Center for Justice being paid?**

The Mississippi Center for Justice free legal assistance program is paid for by a pre-paid legal services grant funded by BP. This funding has no impact on the Mississippi Center's legal advice or legal representation of claimants. There is no connection or communication between BP and the Mississippi Center or the lawyers who will provide representation pursuant to the legal services assistance program. There will be no interference by either GCCF or BP with the lawyer's independence or professional judgment or with the client-lawyer relationship.

**11. I am represented by a lawyer and I want to file a claim. What should I do?**

If you are currently represented by a lawyer in connection with any claim you believe you may have against BP, you should not submit a claim until you have conferred with your lawyer about the decision to submit it and about your answers to its questions. If you then choose to submit a claim, you should have your lawyer submit the claim for you. The claim form requests contact information for your lawyer. After receipt of such contact information we will respond directly to him or her.

(**back to top**)

## SECTION 3 - CLOSING THE EMERGENCY ADVANCE PAYMENT PROGRAM

**12. Can I still apply for an Emergency Advance Payment?**

No. From August 23, 2010, through November 23, 2010, Claimants could submit claims to the GCCF for Emergency Advance Payments to receive emergency relief for damages caused by the Spill. The deadline to file a claim for an Emergency Advance Payment passed on November 23, 2010. It is too late now to apply for an Emergency Advance Payment. Claimants who suffered losses or injuries as a result of the Spill can now apply for a Final Payment or an Interim Payment.

**13. What if I applied for an Emergency Advance Payment and have not heard about the outcome of that claim?**

If you have not heard about the final outcome on your EAP claim, you will hear soon. The GCCF is finishing the evaluation of all the EAP claims soon.

**14. What if I applied for an Emergency Advance Payment after the November 23, 2010 deadline?**

Such a claim is late and will not be processed. If you want to seek any benefits now from the GCCF, you must apply for a Full Review Final Payment or an Interim Payment.

**15. What types of payments are available now?**

A Claimant who has been paid an Emergency Advance Payment has the option to receive a Quick Payment from the GCCF of $5,000 for Individual Claimants and $25,000 for Business Claimants without having to submit any more documents or undergoing any more claims review.

Any Claimant who suffered losses or injuries as a result of the Spill can now apply for:

1. A Full Review Final Payment Claim, to be paid, if eligible, for all past losses caused by the Spill and all future losses caused by the Spill.
2. An Interim Payment Claim, for all past losses caused by the Spill.

(**back to top**)

## SECTION 4 - INFORMATION ON QUICK PAYMENT FINAL CLAIMS

### 16. What is a Quick Payment Final Claim?

A Quick Payment Final Claim is the opportunity for a Claimant who has been paid an Emergency Advance Payment by the GCCF to sign a Release and within 14 days be paid $5,000 if an Individual Claimant or $25,000 if a Business Claimant without having to submit any more documents or go through any more claims review.

In addition, a Claimant found eligible for an Interim Payment, even though never paid an Emergency Advance Payment, will also have the opportunity to accept a Quick Payment.

### 17. Who is eligible for a Quick Payment?

A Claimant who has been paid an Emergency Advance Payment from the GCCF of any kind can receive a Quick Payment. Thus any Claimant who has been paid an Emergency Advance Payment by the GCCF on a Lost Income, Property Damage, Removal and Clean Up, Loss of Subsistence Use, or Physical Injury/Death claim can receive a Quick Payment.

In addition, a Claimant found eligible for an Interim Payment, even though never paid an Emergency Advance Payment, will also have the opportunity to accept a Quick Payment.

### 18. What if my Emergency Advance Payment claim has not been finished?

The GCCF will finish the review of all Emergency Advance Payment claims and will notify all Claimants of the outcome on their claims. If you are found eligible and get paid an Emergency Advance Payment, you have the opportunity to submit a Quick Payment Claim.

### 19. What if I was paid by BP but have not been paid by the GCCF?

You are not eligible for a Quick Payment. You can receive a Quick Payment only if you were paid an Emergency Advance Payment by the GCCF or an Interim Payment by the GCCF.

### 20. How do I apply for a Quick Payment?

You have to fill out, sign and send back to the GCCF a Quick Payment Claim Form. You must also sign the Release and Covenant Not to Sue. You should not elect the Quick Payment Final Claim process unless you are willing to accept the fixed payment of $5,000 for individuals and $25,000 for businesses and to sign a full release of liability.

### 21. How do I get a Quick Payment Claim Form?

If you have been paid an Emergency Advance Payment, the GCCF will mail you a packet containing the Quick Payment Claim Form and the Release and Covenant Not to Sue that must be signed to receive a Quick Payment. The GCCF will pre-fill the Quick Payment Claim Form with your name and address. If you have been paid an Emergency Advance Payment, you may download the Quick Payment Claim Form and the Release and Covenant Not to Sue from the GCCF website or you may also go to a Claims Site Office and have the Quick Payment Claim Form and the Release and Covenant Not to Sue printed for you.

If your address has changed since your Emergency Advance Payment was paid, be sure that the GCCF has your correct current mailing address.

If you do not receive that packet from the GCCF in the mail, you may call the GCCF Toll Free Number 1-800-916-4893 or email us at info@gccf-claims.com to ask that the packet be sent to you.

### 22. Do I have to submit any more documents on my damages to be paid a Quick Payment?

No. All you have to do is send in a signed Quick Payment Claim Form and Release and Covenant Not to Sue. You do not have to submit any more documents on your losses or damages.

### 23. Do I have to sign a Release to be paid a Quick Payment?

Yes. The Quick Payment Final Claim option requires you to release and waive any claims that you have or may have in the future against BP and all other potentially responsible parties with regard to the Spill or to submit any claim for payment to the National Pollution Funds Center, the Coast Guard office responsible for evaluating and approving Oil Pollution Act claims. The Quick Payment Claim Form contains important information to read before signing the Release and Covenant Not to Sue.

### 24. Who has to sign the Quick Payment Claim Form and the Release?

Individual Claimants must personally sign the Quick Payment Claim Form and the Release and Covenant Not to Sue. If the Individual Claimant is married, the Claimant's spouse also must sign the Release and Covenant Not to Sue. If an Individual Claimant is deceased, is a legal minor under the law of the state or jurisdiction where the Claimant lives, or is not legally competent to sign, the Claimant's authorized legal representative must sign. That representative must also submit a copy of the document issued by a court or other official that appointed the representative to act on behalf of the Claimant, or must sign an Affidavit required by the GCCF to show authority to act. See Section VII of the Gulf Coast Claims Facility Required Documents for what is required to prove the authority to act.

The authorized officer or other representative of a Business Claimant must personally sign the Quick Payment Claim Form and the Release and Covenant Not to Sue. If the business is a sole proprietorship owned by a married individual, or if the business is jointly owned by a married couple, the individual's spouse also must sign the Quick Payment Claim Form and the Release and Covenant Not to Sue.

### 25. I want to file my own claim for my own damages. In order for my spouse to receive a payment for his or her Quick Payment Final Claim, I have to sign the Release. Am I releasing my right to file my own separate claim for my own damages?

No. Your signature on the Release applies to your spouse's claim (or to the claim of a business owned by your spouse or a business jointly owned by you and your spouse), not to a separate claim you might have.

**26. Can I change anything in the Release?**

No. If you mark through or strike out anything in the Release and Covenant Not to Sue, or you add any language to it, the GCCF cannot accept it and cannot pay you a Quick Payment.

**27. How long will it take for me to get a Quick Payment?**

The GCCF will send you your payment within 14 days after the GCCF receives your properly completed Quick Payment Claim Form and properly signed Release and Covenant Not to Sue.

**28. How long do I have to apply for a Quick Payment?**

If you have received an Emergency Advance Payment or an Interim Payment, you may submit a Quick Payment Final Claim at any time before the close of the GCCF Program on August 22, 2013.

**29. Will any deductions be taken out of my Quick Payment before it is sent to me?**

Your $5,000 Individual Quick Payment or $25,000 Business Quick Payment will not be reduced for any prior payments to you by BP or by the GCCF, or by any amounts you have received from unemployment compensation or any insurance or other program. The only deductions that will be made from a Quick Payment will be for any legally authorized liens, garnishments or other attachments against you that the GCCF has received.

**30. Where will my Quick Payment be sent?**

The GCCF will send Quick Payments by wire transfer or by a check mailed to you. You will indicate in the Quick Payment Claim Form how you want your payment to be made and where it is to be sent.

(**back to top**)

## SECTION 5 - INFORMATION ON FULL REVIEW FINAL PAYMENT CLAIMS

**31. If I am not eligible for a Quick Payment or decide not to choose the Quick Payment option, what kind of payments can I seek now from the GCCF?**

Any Claimant who suffered losses or injuries as a result of the Spill can now apply to the GCCF for:

1. A Full Review Final Payment Claim, to be paid, if eligible, for all past losses caused by the Spill and all future losses caused by the Spill.
2. An Interim Payment Claim, to be paid once a quarter, if eligible, for all past losses caused by the Spill. A Claimant found eligible for an Interim Payment will also have the opportunity to accept a Quick Payment or a Final Payment instead.

**32. What is a Full Review Final Payment?**

If you do not choose or are not eligible for the Quick Payment Final Claim option, you may elect to submit a Full Review Final Payment Claim to receive a lump sum single payment for all documented losses and damages, both past and future, caused to you by the Spill.

**33. Who can apply for a Full Review Final Payment?**

Any Claimant who suffered losses or injuries as a result of the Spill can now apply for a Full Review Final Payment Claim, to be paid, if eligible, for all past losses caused by the Spill and all future losses caused by the Spill. You can still submit a Full Review Final Payment Claim even if: (a) you received payments from BP or from the GCCF on an Emergency Advance Payment Claim; (b) you submitted an Emergency Advance Payment Claim that was denied (other than as an excluded Government, Real Estate Agent or Broker, Oil Rig Moratorium claim or a claim for property damage that occurred during the Vessels of Opportunity Program); or (c) you have not previously asserted a claim to BP or to the GCCF.

**34. What types of claims can I submit on a Full Review Final Payment Claim?**

If you suffered damages or injuries caused by the Spill and are eligible to apply for a Full Review Final Payment, you can submit a Full Review Final Payment Claim for the same types of claims for which Claimants could seek Emergency Advance Payments: Removal and Clean Up Costs, Damage to Real or Personal Property, Lost Earnings or Profits, Loss of Subsistence Use of Natural Resources (Individuals only), or Physical Injury or Death (Individuals only).

**35. How do I apply for a Full Review Final Payment?**

You have to fill out, sign and send back to the GCCF a Full Review Final Payment Claim Form, along with documents to support your claim if you have not previously submitted those documents. If you previously submitted an Emergency Advance Payment Claim to the GCCF, the GCCF will mail you a packet containing the Full Review Final Payment Claim Form. If you do not get that packet, see Section 7 – How to File a Full Review Final Payment Claim or an Interim Payment Claim for the steps on how to get the Full Review Final Payment Claim Form and how to submit it to the GCCF.

**36. I have already submitted a Final Claim Form. Do I have to submit a new one?**

No. You do not need to submit a new Full Review Final Payment Claim Form, though you can do so if you would like to change anything about your claim. You should review the Gulf Coast Claims Facility Document Requirements and you should submit any and all required documents that you have not previously submitted. You do not need to resubmit documentation or information that you have already submitted.

**37. What kind of losses will be paid on a Full Review Final Payment Claim?**

A Full Review Final Payment will include all past losses or injuries caused to you by the Spill and any future losses or injuries you may incur, if any, as a result of the Spill. The Full Review Final Payment Claim evaluation and determination will include a review of the calculation of any previous Emergency Advance Payments. If appropriate, the GCCF will adjust the calculation and include any additional compensation due as part of the Final Payment Offer.

**38. Do I have to submit documents to be paid a Full Review Final Payment?**

Yes. To be considered for a Full Review Final Payment, you must submit documents that prove the losses or injuries you claim you suffered as a result of the Spill. A Full Review Final Payment Claim requires complete substantiation and documentation of all damages sustained in the past. You may choose to provide documents that support amounts claimed as future damages as a result of the Spill, including documents demonstrating the manner in which such future damages have been calculated, the period of time for which they are claimed, and any expert reports or other analyses on which the

calculation is based. The GCCF will perform a complete analysis of all existing and newly submitted documentation to compute, determine and pay all past and future damages. The GCCF will rely upon any documentation you submit and analyses and documentation provided to the GCCF by independent experts to determine the damages, if any. See the Gulf Coast Claims Facility Document Requirements list for details on the documents required for each Claim Type you can assert on a Full Review Final Payment Claim. If you previously submitted documents to the GCCF, you do not have to send them in again, but you must make sure that you have submitted everything required by the Gulf Coast Claims Facility Document Requirements list and you must submit any new documents for any time period not covered by what you previously submitted.

**39. What if my claim is missing any documents needed to prove my Full Review Final Payment Claim?**

The GCCF will perform a complete analysis of all existing and newly submitted documentation to compute, determine and pay all past and future damages. If the GCCF does not have all the documents from you needed to be able to evaluate your claim, the GCCF will send you a deficiency notice telling you what is missing and giving you a period of time to submit those documents.

**40. How will future damages be determined on a Full Review Final Payment Claim?**

Claimants who submit a Full Review Final Payment Claim may submit documents that support amounts claimed as future damages as a result of the Spill, including documents demonstrating the manner in which such future damages have been calculated, the period of time for which they are claimed, and any expert reports or other analyses on which the calculation is based. The GCCF will rely upon any documentation you submit and analyses and documentation provided to the GCCF by independent experts to determine the damages, if any, payable to you as future damages for losses or injuries caused by the Spill.

**41. The Full Review Final Payment Claim information says that the claim includes any claim for future damages. How far into the future can I claim damages?**

Your Full Review Final Payment Claim includes ALL of your future damages, if any. If you have any documentation or information regarding any future damages you may incur due to the Spill you should include all of this documentation and information. In order to receive a payment of your Full Review Final Payment Claim you will have to sign a Release that releases all of your past and future damages in exchange for a liquidated amount.

**42. Will any deductions be taken out of my Full Review Final Payment?**

Yes. The following amounts will be deducted from your Full Review Final Payment.

1. Any prior payments to you by BP, by the Coast Guard, or by the GCCF for losses due to the Spill.
2. If you make a claim for Lost Individual Earnings, any amounts you have received from unemployment compensation, as severance pay or any other employment benefit since the Spill.
3. On any Lost Income claim from an Individual Claimant or a Business Claimant, amounts you have received since the Spill from any insurance or other program as replacement income.
4. Payments from insurance for the losses on injuries for which you seek benefits on Removal and Clean Up Costs, Damage to Real or Personal Property, Loss of Subsistence Use of Natural Resources, or Physical Injury or Death.

5.  Amounts needed to pay any liens, garnishments or other attachments against you that the GCCF has received.

However, amounts you have received from charities will not be deducted from your Full Review Final Payment.

**43. If I qualify, how will I get the offer on my Full Review Final Payment Claim?**

Your Final Payment Offer will be an offer of a lump sum amount for all past and future damages based upon specific documentation received and expert analysis of future damages. You will have an opportunity to discuss your Final Payment Offer with a member of the GCCF Senior Evaluation Team and/or a member of the Accounting Team. This Final Payment Offer will be valid for 90 days. If you have not accepted this Final Payment Offer during the 90-day period, the GCCF will re-evaluate any later submission or request for a Final Payment Offer you may make to reflect additional information and less uncertainty, regarding your damages.

**44. Do I have to sign a Release to be paid a Full Review Final Payment?**

Yes. To be paid on a Full Review Final Payment Claim, you will have to release and waive any claims that you have or may have in the future against BP and all other potentially responsible parties with regard to the Spill or to submit any claim for payment to the National Pollution Funds Center, the Coast Guard office responsible for evaluating and approving Oil Pollution Act claims. The Full Review Final Payment Claim Form contains a sample of that Release and Covenant Not to Sue. If you qualify for a Full Review Final Payment, the GCCF will send you a Final Payment Offer based on the GCCF's review and evaluation of the Full Review Final Payment Claim, along with a Release and Covenant Not to Sue for you to sign if you accept the Final Payment Offer. If you accept the Final Payment Offer, you must sign the Release and Covenant Not to Sue and return it to the GCCF. A separate Release will be required for Claimants who have received a Final Payment Offer for claims for physical injury or death.

**45. Who has to sign the Release on a Full Review Final Payment Claim?**

Individual Claimants must personally sign the Release and Covenant Not to Sue. If the Individual Claimant is married, the Claimant's spouse also must sign the Release and Covenant Not to Sue. If an Individual Claimant is deceased, is a legal minor under the law of the state or jurisdiction where the Claimant lives, or is not legally competent to sign, the Claimant's authorized legal representative must sign. That representative must also submit a copy of the document issued by a court or other official that appointed the representative to act on behalf of the Claimant. If such documents have not been issued, the representative must sign an Affidavit required by the GCCF to show authority to act. See Section VII of the Gulf Coast Claims Facility Required Documents for what is required to prove the authority to act.

The authorized officer or other representative of a Business Claimant must personally sign the Release and Covenant Not to Sue. If the business is a sole proprietorship owned by a married individual, or if the business is jointly owned by a married couple, the individual's spouse also must sign the Release and Covenant Not to Sue.

**46. I want to file my own claim based on my own damages. In order for my spouse to receive payment for his/her Full Review Final Claim I have to sign the Release. Am I releasing my right to file my own separate claim based on my own damages?**

No. Your signature on the Release applies to your spouse's claim (or to the claim of a business owned by your spouse or a business jointly owned by you and your spouse), not to a separate claim you might have.

### 47. Can I change anything in the Release?

No. If you mark through or strike out anything in the Release and Covenant Not to Sue, or you add any language to it, the GCCF cannot accept it and cannot pay you a Final Payment.

### 48. How long will it take for me to get a Full Review Final Payment?

The GCCF will fully evaluate and determine your Full Review Final Payment Claim within 90 days after receipt of your substantiated claim. You will be notified of the amount of the Final Payment Offer or of any missing documents that are necessary to be able to evaluate the claim within this 90-day period. Claimants who previously submitted a Final Claim will have their claim reviewed on a priority basis.

### 49. How long do I have to apply for a Full Review Final Payment?

You may submit a Full Review Final Payment Claim at any time prior to the close of the GCCF Program on August 22, 2013 (even if you have previously submitted and received an Emergency Advance Payment or an Interim Payment). You may accept only one Final Payment.

### 50. Where will my Full Review Final Payment be sent?

The GCCF will send Final Payments by wire transfer or by a check mailed to you. You will indicate in the Full Review Final Payment Claim Form how you want your payment to be made and where it is to be sent.

(**back to top**)

## SECTION 6 – INFORMATION ON INTERIM PAYMENT CLAIMS

### 51. What is an Interim Payment Claim?

An Interim Payment Claim is a claim only for documented past damages caused by the Spill. An Interim Payment is not an Emergency Advance Payment.

### 52. How do I apply for an Interim Final Payment?

You have to fill out, sign and send back to the GCCF an Interim Payment Claim Form, along with documents to support your claim if you have not previously submitted those documents. If you previously submitted an Emergency Advance Payment Claim to the GCCF, the GCCF will mail you a packet containing the Interim Payment Claim Form. If you do not get that packet, see Section 7 – How to File a Full Review Final Payment Claim or an Interim Payment Claim for the steps on how to get the Full Review Final Payment Claim Form and how to submit it to the GCCF.

### 53. I have already submitted a Final Claim. Can I now submit an Interim Claim?

If you have already submitted to the GCCF a Claim Form in which you asserted a Final Payment Claim and now would like to switch and seek an Interim Payment instead, you must submit an Interim Payment Claim Form to the GCCF and check the appropriate box on the first page of the Claim Form stating that you previously filed a Final Claim Form and now wish to file an Interim Payment Claim.. You cannot seek or receive an Interim Payment unless you have submitted an Interim Payment Claim Form to the GCCF.

**54. What kind of claims can I make on an Interim Payment Claim?**

If you suffered damages or injuries caused by the Spill and are eligible to apply for a Full Review Final Payment, you can submit an Interim Payment Claim for the same types of claims for which Claimants could seek Emergency Advance Payments: Removal and Clean Up Costs, Damage to Real or Personal Property, Lost Earnings or Profits, Loss of Subsistence Use of Natural Resources (Individuals only), or Physical Injury or Death (Individuals only).

**55. What kind of losses will be paid on an Interim Payment Claim?**

An Interim Payment will cover only past losses caused by the Spill. An Interim Payment will not compensate you for future losses or damages. For future losses or damages to be evaluated and paid, you must submit a Full Review Final Payment Claim. If you have submitted an Interim Payment Claim, you may submit a subsequent Full Review Final Payment Claim. If appropriate, the GCCF will adjust the calculation of a previously paid Emergency Advance Payment and include any additional compensation as part of the Interim Payment.

**56. How often can I apply for an Interim Payment?**

You may submit an Interim Payment Claim only once each quarter of each calendar year throughout the duration of the GCCF Claims Program which concludes on August 22, 2013, or until the submission of either a Quick Payment Final Claim or a Full Review Final Payment Claim. The first quarter begins now and concludes on March 31, 2011. Subsequent quarters will be April 1 through June 30, July 1 through September 30, and October 1 through December 31 of each of each year.

**57. I have an emergency situation and I cannot wait to submit my next Interim Claim until the next quarter. Is there a process where I can receive permission to submit my Interim Claim early?**

Yes. If you are able to document an emergency that is determined to constitute exigent circumstances the Claims Administrator will grant you permission to submit your Interim Claim early.

**58. What period of time is covered by an Interim Payment Claim?**

Evaluation of your Interim Payment Claim consists of a review of your losses measured over the period that begins with the Spill and concludes at the end of the month for which you have provided the most recent actual financial data ("Loss Measurement Period").

**59. Do I have to submit documents to be paid an Interim Payment?**

Yes. You must provide supporting documentation to demonstrate all past losses and damages sustained as a result of the Spill. The Gulf Coast Claims Facility Document Requirements accompanying the Claim Form identify the supporting documents required for each type of claim. If you previously submitted a claim with supporting documentation, you do not need to resubmit that documentation. However, you must supplement and update your documentation already on file with

Case 2:10-md-02179-CJB-DPC    Document 963-1    Filed 01/10/11    Page 30 of 116

the GCCF to include the applicable Loss Measurement Period. If you have not previously submitted a claim, you must provide complete substantiation and documentation to support your claim for losses and damages. If you qualify, your Interim Payment will include payments only for the losses that the documents you have submitted prove. For example, if you submit a claim for past Lost Earnings or Profits and do not submit the records to show income during any week or period since the Spill, you will not be paid any damages for that period.

**60. What if my claim is missing any documents needed to prove my Interim Payment Claim?**

If you fail to submit the required documents to prove your losses or injuries, you will not be paid for them in an Interim Payment. *The GCCF will not send any deficiency notices to you to notify you of any documents missing from your file.* Instead, your losses will be determined solely on the basis of the documents you have submitted.

**61. Will any deductions be taken out of my Interim Payment?**

Yes. The same deductions that apply to a Full Review Final Payment Claim apply to an Interim Payment Claim:

1. Any prior payments to you by BP, the GCCF, or the Coast Guard will be deducted from your Interim Payment.
2. If you make a claim for Lost Individual Earnings, any amounts you have received from unemployment compensation, as severance pay or any other employment benefit since the Spill, will be counted as income to you since the Spill and will reduce any award for past earnings losses.
3. On any Lost Income claim from an Individual Claimant or a Business Claimant, amounts you have received since the Spill from any insurance or other program as replacement income will be deducted from your Interim Payment.
4. Payments from insurance for the losses on injuries for which you seek benefits on Removal and Clean Up Costs, Damage to Real or Personal Property, Loss of Subsistence Use of Natural Resources, or Physical Injury or Death will be deducted from Interim Payment.
5. Amounts to pay any legally authorized liens, garnishments or other attachments against you that the GCCF has received will be deducted from your Interim Payment.

However, amounts you have received from charities will not be deducted from your Interim Payment.

**62. Do I have to sign a Release to be paid an Interim Payment?**

No. To receive an Interim Payment, you will not be required to execute a Release or waive any rights to assert additional claims, to submit an individual legal action, or to participate in other legal actions associated with the Spill.

**63. How long will it take for me to get an Interim Final Payment?**

Within 90 days of receipt of a substantiated claim for an Interim Payment, the GCCF will evaluate and review the submitted documentation. The GCCF will mail you notice of your eligibility and calculated amount for payment of your Interim Payment Claim.

**64. If I qualify for an Interim Payment, can I decide to be paid a Quick Payment?**

Yes. You can accept a Quick Payment any time after you have been found eligible for or have been paid an Interim Payment.

**65. If I am paid an Interim Payment, can I still submit a Full Review Final Payment Claim?**

Yes. You can submit a Full Review Final Payment Claim at any time until the Program closes.

**66. If I qualify for an Interim Payment, will I receive a Final Payment Offer?**

You will receive notice of your eligibility and calculated amount for payment of your Interim Payment Claim. At the same time, if the documents you have submitted permit the GCCF to do so, the GCCF also will provide you with the GCCF's current valuation and Final Payment Offer for your claim; you will have the option to continue with the Interim Payment Claim process or to accept the GCCF's Final Payment Offer.

**67. If I receive both an Interim Payment Offer and a Final Payment Offer and decide to accept the Interim Payment, is there a chance that my Final Payment Offer could go down?**

Yes. If you make a subsequent claim for a Final Payment, the GCCF's valuation and Final Payment Offer for your claim may change at a later date to reflect additional information and less uncertainty regarding damages.

**68. How long do I have to apply for a Full Review Final Payment?**

You may submit an Interim Payment Claim at any time prior to the close of the GCCF Program on August 22, 2013.

**69. Where will my Interim Payment be sent?**

The GCCF will send Interim Payments by wire transfer or by a check mailed to you. You will indicate in the Interim Payment Claim Form how you want your payment to be made and where it is to be sent.

**70. Will the awards be subject to Federal estate or Federal income tax?**

The GCCF will report payments made annually to federal and state taxing authorities, using a Form 1099 or state form equivalent. The GCCF will send you a copy of that form, but cannot give you tax advice regarding any payment issued to you. You should consult your own tax advisor to determine the impact of any payment you receive from the GCCF on your individual tax situation.

(**back to top**)


# SECTION 7 - WHO MAY FILE A CLAIM


**71. Who is an Eligible Claimant?**

Individuals and Businesses that have incurred damages as a result of the Spill may submit a claim to the GCCF for Removal and Clean Up Costs, Damage to Real or Personal Property, Lost Earnings or Profits, Loss of Subsistence Use of Natural Resources, or Physical Injury or Death.

**72. Do I have to live in the Gulf region to make a claim?**

No. You do not have to live in the Gulf region to file a claim for costs and damages incurred as a result of the oil discharges from the Spill. However, the GCCF will only pay for harm or damage that is proximately caused by the Spill.

**73. Do I have to be a United States citizen or have proof of legal residency to be eligible to receive payment from the GCCF?**

No, you do not need to be a United States citizen or submit proof of legal residency to be eligible to receive a payment under the GCCF eligibility criteria.

(**back to top**)


## SECTION 8 - HOW TO FILE A FULL REVIEW FINAL PAYMENT CLAIM OR AN INTERIM PAYMENT CLAIM


**74. If I did not receive one in the mail from the GCCF, how do I get the Claim Form I need?**

You can obtain and submit a Claim Form and supporting documentation in any one of the following ways:

1. ***Through the Website:*** You can complete the Claim Form online by going to the www.GulfCoastClaimsFacility.com website and selecting "Claim Form." The online instructions will tell you how to complete the correct Claim Form and how to submit the form and the supporting documents online.
2. ***By Visiting a GCCF Claims Site Office:*** You can complete a Claim Form and submit documents in person at one of the GCCF Claims Site Offices, where a Claims Evaluator will help you fill out the form. You may obtain a list of the GCCF Claims Site Offices near you by visiting www.GulfCoastClaimsFacility.com or by calling the GCCF toll free number, 1-800-916-4893. TTY: 1-866-682-1758.
3. ***By Telephone:*** You can get a Claim Form by calling the GCCF toll free number, 1-800-916-4893. TTY: 1-866-682-1758. Staff members are available to take your call at this number from 7:30 a.m. to 10:30 p.m., Eastern Time, seven days a week. You will be asked for your name and address. The GCCF will mail you a Claim Form for you to fill out and sign.

**75. Are Claim Forms available in other languages?**

Yes. Claim Forms are available in Spanish, Vietnamese and Khmer. To access these Claim Forms, visit: www.GulfCoastClaimsFacility.com. For additional assistance call the Toll Free Number 1-800-916-4893.

**76. Where do I submit the Claim Form when complete?**

You can submit your Claim Form and supporting documents in one of these ways:

1. ***By Regular Mail:***

   Gulf Coast Claims Facility

Kenneth R. Feinberg, Administrator
P.O. Box 9658
Dublin, OH 43017-4958

2. **By Overnight, Certified or Registered Mail:**

Gulf Coast Claims Facility
Kenneth R. Feinberg, Administrator
5151 Blazer Pkwy.
Suite A
Dublin, OH 43017

3. **By Fax:** You can fax your completed Claim Form and documents to the GCCF at 1-866-682-1772. However, a signed Release cannot be submitted by Fax. We must receive an original signed copy of a Release.

4. **By Email:** You can scan your completed Claim Form and documents and email PDF files to the GCCF at info@gccf-claims.com. However, a signed Release cannot be submitted by email. We must receive an original signed copy of a Release.

**77. Does it cost anything to file a claim?**

No. There is no fee for filing a claim with the GCCF.

**78. Can I submit photographs or videos in support of my claim?**

Yes. You can submit photographs and videos in support of your claim.

**79. What if I need more space to write on the Claim Form?**

If you need additional space for one or more of the sections in the Claim Form, photocopy the section before completing it and make as many copies as you need. You must attach these copies to your Claim Form. Include your name, address and Claimant Identification Number on all pages you submit. If you do not have a Claimant Identification Number, include your Social Security Number or Employer Identification Number on all pages you submit.

**80. How will I know that the GCCF has received my claim?**

You will receive a confirmation from the GCCF that will confirm your claim submission and tell you the unique 9-digit Claimant Identification Number that is assigned to your claim. The GCCF will enter for processing all submitted Claim Forms, regardless of the method of submission, into the GCCF central database.

**81. How do I submit supplemental information for a claim I already filed?**

Make sure you provide your Claimant Identification Number along with any supplemental information you submit. You may submit supplemental information in the following ways:

1. **Through the Website:** You can submit supplemental information electronically through the GCCF website, www.GulfCoastClaimsFacility.com by following the instructions on this link: documents/onlinesubmission.

2. **By Visiting a GCCF Claims Site Office:** You can submit supplemental information to a Claims Evaluator at any of the GCCF Claims Site Offices. You may obtain a list of the GCCF Claims Site Offices near you by visiting the GCCF website www.GulfCoastClaimsFacility.com and following the links to contact us/GCCFofficelocations.

3. ***By Regular Mail:*** You may submit supplemental information by U.S. Mail to the following address:

    Gulf Coast Claims Facility
    Kenneth R. Feinberg, Administrator
    P.O. Box 9658
    Dublin, OH 43017-4958

4. ***By Overnight, Certified or Registered Mail:*** You may submit supplemental information by Overnight, Certified or Registered Mail to the following address:

    Gulf Coast Claims Facility
    Kenneth R. Feinberg, Administrator
    5151 Blazer Pkwy.
    Suite A
    Dublin, OH 43017

5. ***By Fax:*** You may fax supplemental information to 1-866-682-1772.

6. ***By Email:*** You may submit supplemental information in a PDF file to the GCCF at info@gccf-claims.com.

## 82. Can someone else talk to the GCCF about my claim?

Yes, as follows:

1. **If you are represented by a lawyer.** If you are represented by a lawyer, the GCCF will communicate with your lawyer rather than directly with you. You should identify your lawyer on the Claim Form.

2. **If you have an Authorized Legal Representative.** An Authorized Legal Representative is a person who is authorized to act for a deceased person who was affected by the Spill, or for a person affected by the Spill who is unable to act for himself or herself. The Authorized Legal Representative must submit to the GCCF a copy of the paperwork that shows the authority to act on behalf of a person affected by the Spill, such as a power of attorney, an order appointing a guardian, letters testamentary or letters of administration for an estate.

## 83. Are the fees attorneys can charge limited by law or the GCCF?

Attorneys' fees are not limited by the GCCF. If you want to know whether there any are restrictions on attorneys' fees in your jurisdiction, contact a local bar association.

## 84. I received a call from an individual from Guidepost who explained that he was assisting GCCF in confirming information submitted in my Claim Form. Who is Guidepost and what is its role in the claims process?

Guidepost has been retained by the GCCF to assist GCCF in auditing and monitoring claims. Guidepost may be calling claimants or other parties to ask for confirmation of information or documentation submitted by a claimant. Any information received by Guidepost is subject to the same privacy policy that applies to other information submitted to the GCCF.

(**back to top**)

## SECTION 9 – INFORMATION ON PAYMENTS

**85. Can I receive payment at the Claims Site Office?**

No. Payments will be issued through one central payment distribution center and will be sent to Claimants by overnight delivery.

**86. Can I receive my payment through direct deposit?**

Yes. You can elect to receive your payment as a wire transfer directly to your bank account.

**87. In what ways can I elect to receive payment?**

You can elect to receive payment by wire transfer or check.

**88. Can payments be made through direct deposit to foreign banks?**

No.

**89. Can direct deposit payments be made to money market or brokerage accounts?**

Yes.

**90. If I elect to receive my payment by check, how will it be sent to me?**

Your payment will be sent via overnight mail, either through Federal Express or the United States Postal Service's Express Mail.

**91. Where will I be able to cash my check?**

If you do not have your own bank account, the GCCF has made arrangements with Whitney National Bank for check-cashing services. Whitney National Bank has branches located throughout the affected region. If you are an Individual and not a Business, and you do not have your own bank account, you may go to any branch of Whitney National Bank and cash up to $5,000 of your payment in one day. (No fee will be charged by Whitney National Bank for this service.)

(**back to top**)

## SECTION 10 – INFORMATION ON CLAIM TYPES

**92. For what Claim Types will the GCCF provide compensation?**

The GCCF will provide compensation to qualifying Claimants for the following Claim Types:

1. Removal and Clean Up Costs;
2. Damages to Real or Personal Property;

3.  Lost Earnings or Profits;
4.  Loss of Subsistence Use of Natural Resources;
5.  Physical Injury or Death.

## 93. What are Removal and Clean Up Costs?

Removal and Clean Up costs are costs that result from actions you took to prevent, minimize, mitigate or clean up damages or anticipated damages from the Spill.

## 94. What is Real Property?

Real Property is land and buildings, houses, or objects affixed or attached to the land.

## 95. What are damages to Real Property?

Damages include any physical injury or damage to the Real Property.

## 96. What is Personal Property?

Personal Property is equipment, boats, cars, furniture, or objects not affixed or attached to the land and any property not considered real property.

## 97. What are damages to Personal Property?

Damages include any physical injury or damage to the Personal Property.

## 98. What are Lost Earnings?

Lost Earnings occur when you experience a loss of or reduction in your ability to earn wages or income because of the Spill. If you were unable to engage in your normal job because of the Spill or made less money than usual because of the Spill, you may have experienced Lost Earnings.

## 99. What are Lost Profits?

Lost Profits are loss of income or profits by a Business. If your Business experienced a temporary or permanent loss or reduction in profits due to the Spill, you can make a claim for Lost Profits. Your Business may also have experienced Lost Profits if it was forced to operate under different conditions than those that existed prior to the Spill.

## 100. What is Loss of Subsistence Use of a Natural Resource?

Loss of Subsistence Use of a Natural Resource is when an Individual or Business can no longer use a natural resource to obtain food, shelter, clothing, medicine or other minimum necessities of life because the natural resource has been injured, destroyed or lost because of the Spill. For example, an Individual who uses fish or other wildlife for food but can no longer do so because of the Spill may file a Loss of Subsistence Use claim.

## 101. What is a Physical Injury?

A physical injury is an injury to the body proximately caused by the Spill or the explosion and fire associated with the Deepwater Horizon incident, or by the cleanup of the Spill. An injury that relates to emotional or mental health is not a physical injury and is not an eligible claim.

([**back to top**](#))

## SECTION 11 – CLAIMANT BILL OF RIGHTS

**102. You have the right to equal treatment.**

You have the right to be treated with respect, dignity, and fairness, without regard to your race, color, sexual orientation, national origin, religion, gender, or disability.

**103. You have the right to equal access to the claims process.**

If you have a disability, the Gulf Coast Claims Facility ("GCCF") will make reasonable accommodations in order for you to access the services of the GCCF.

If you have difficulty communicating in English, the GCCF will provide translation services for you to communicate about the claims process with the GCCF.

If you have difficulty reading or writing, the GCCF will endeavor to explain all documents and forms in a plain and simple manner, and assist you in filing a claim form.

**104. You have the right to privacy.**

Your submitted personal information will be kept secure by the GCCF and will only be used and disclosed for legitimate purposes in connection with administering the GCCF.

**105. You have the right to information about your claim.**

You can meet with a member of the GCCF staff to ask any questions you have about the claims process. Once you have filed a claim with the GCCF, you have the right to check the status of that claim by calling the toll-free number (1-800-916-4893 (TTY 1-866-682-1758)), visiting the GCCF's internet site, www.GulfCoastClaimsFacility.com, or visiting a GCCF office in person. (A list of site offices is available by phone or on-line.)

**106. You have the right to a fair review and determination of your claim.**

The GCCF Claims Evaluator will consider all properly submitted evidence that you provide to prove your loss.

**107. You have the right to a timely claim decision.**

The GCCF will issue a timely determination of your claim. If the GCCF needs additional information in order to decide your claim, the GCCF will notify you in a timely manner of the request for additional information.

**108. You have the right to timely payment.**

If you qualify for a payment, you will be paid promptly.

**109. You have the right to ethical treatment.**

All representatives of the GCCF will act ethically and in good faith.

(**back to top**)

- Privacy Policy |
- All Rights Reserved

- Home
- Important Notices
  and Information
- Frequently Asked Questions
- Town Hall Meetings / Events
- Press and News Releases
- Protocol for Interim
  and Final Claims
- Summary of Options
  for Filing Claims

- File a Quick Payment Final Claim Form

- File a Full Review Final
  Claim Form Online

- File an Interim
  Claim Form Online

- File a Paper Interim or Full Review Final Claim Form
- Required Forms for Claimant Representatives
- Claims Site Offices
- Check Claim Status
- GCCF Program Statistics
- Pro Bono Assistance
- To Report Fraud
- Contact Us

# EXHIBIT D

- En Español
- _____
- Bằng Tiếng Việt

# Contact Us

**By Telephone:** Toll free: 1-800-916-4893 For TTY assistance please call: 1-866-682-1758. The GCCF toll-free help line is available 24 hours a day, seven days a week and live operators are available from 7:30 a.m. to 10:30 p.m., Eastern Time, seven days a week.

**By Regular Mail:**

Gulf Coast Claims Facility
Kenneth R. Feinberg, Administrator
P.O. Box 9658
Dublin, OH 43017-4958

**By Overnight, Certified or Registered Mail:**

Gulf Coast Claims Facility
Kenneth R. Feinberg, Administrator
5151 Blazer Pkwy.
Suite A
Dublin, OH 43017

**By Fax:** 1-866-682-1772

**By Email:** info@gccf-claims.com

- Privacy Policy |
- All Rights Reserved

- Home
- Important Notices
  and Information
- Frequently Asked Questions
- Town Hall Meetings / Events
- Press and News Releases
- Protocol for Interim
  and Final Claims
- Summary of Options
  for Filing Claims

- <u>File a Quick Payment Final Claim Form</u>

- <u>File a Full Review Final
  Claim Form Online</u>

- <u>File an Interim
  Claim Form Online</u>

- <u>File a Paper Interim or Full Review Final Claim Form</u>
- <u>Required Forms for Claimant Representatives</u>
- <u>Claims Site Offices</u>
- <u>Check Claim Status</u>
- <u>GCCF Program Statistics</u>
- <u>Pro Bono Assistance</u>
- <u>To Report Fraud</u>
- <u>Contact Us</u>

# EXHIBIT E

- En Español
- _____
- Bằng Tiếng Việt

# Gulf Coast Claims Facility Protocol
# for Interim and Final Claims
# November 22, 2010

## I. PURPOSE

This Protocol sets forth the procedure for the submission and resolution by the Gulf Coast Claims Facility ("GCCF") of Interim and Final Claims by Individuals and Businesses for costs and damages incurred as a result of the oil discharges from the April 20, 2010 Deepwater Horizon incident ("the Spill"). Claims for Emergency Advance Payments are governed by a separate protocol.

<u>A. Role</u>

The United States Coast Guard ("USCG") has designated BP Exploration & Production, Inc. ("BP") as a Responsible Party under the Oil Pollution Act of 1990 ("OPA") for oil discharges from the Deepwater Horizon facility. Under OPA, Responsible Parties must establish a claims process to receive certain claims by eligible claimants. BP accepted the USCG designation as a Responsible Party and established and advertised a single claims facility for all claimants.

The GCCF is intended to replace BP's claims facility for Individuals and Businesses. The GCCF (and the protocols under which it operates) are structured to be compliant with OPA. Whether or not a claim has been presented shall be governed by OPA and applicable law. All documentation submitted by Individuals or Businesses in support of claims filed with the BP Claims Process have been transferred to the GCCF. BP has also authorized the GCCF to process certain non-OPA claims involving physical injury or death. Acceptance of payments offered pursuant to this Protocol shall be wholly voluntary, and participation in the GCCF shall not affect any right that the Claimant would have had absent such participation unless final resolution of the claim is achieved.

<u>B. Approach</u>

The following non-exclusive principles apply to the operation of the GCCF:

- The GCCF will evaluate all claims in a prompt and fair manner guided by applicable law.
- The establishment of the GCCF does not diminish any right of any Individual or Business that existed prior to the creation of the GCCF; Claimants have all of the same rights with respect to their various claims that they had prior to the creation of the GCCF and shall not be forced to relinquish any rights for the opportunity to seek compensation through the GCCF, provided that acceptance of a Final Payment will require the execution of a release of liability, as discussed below.
- The GCCF claims process is structured to comply with OPA and apply the standards of OPA.
- Under OPA a claimant must file a claim with BP or the GCCF for OPA damages prior to seeking payment from the National Pollution Fund Center or commencing an action in court.

The GCCF is administered by Kenneth R. Feinberg ("the Claims Administrator"), a neutral fund administrator responsible for all decisions relating to the administration and processing of claims by

the GCCF. While the GCCF is an independent facility, it is important that the views of all stakeholders be considered. All stakeholders, including claimants, government entities, and BP, may provide input and comments regarding the GCCF process.

## II. ELIGIBILITY

A. Removal and Clean Up Costs

1.  Who may make a claim?

    Any Individual[1] or Business that incurred costs, as a result of the Spill for the removal of oil or to prevent, minimize, or mitigate oil pollution.

2.  Required Proof

    ◦ The actions taken were necessary for removal of oil discharged due to the Spill or to prevent, minimize, or mitigate oil pollution from the Spill;
    ◦ The removal costs incurred as a result of these actions are reasonable and necessary; and
    ◦ The actions taken to remove, prevent, minimize, or mitigate oil pollution were directed or approved by the Federal On-Scene Coordinator or are otherwise determined to be consistent with the National Contingency Plan.

3.  What information should the Claimant submit?

    ◦ Information or documentation (e.g., bills) showing the costs incurred after the Spill for removal of oil discharged as a result of the Spill or incurred after the Spill to prevent, minimize, or mitigate oil pollution from the Spill.
    ◦ Information or documentation explaining how the actions taken to remove oil discharged as a result of the Spill were necessary to prevent, minimize, or mitigate the effects of the Spill.
    ◦ Information or documentation showing that the actions taken were approved by the Federal On-Scene Coordinator or were consistent with the National Contingency Plan.
    ◦ Information or documentation explaining why the costs were reasonable.

B. Real or Personal Property

1.  Who may make a claim?

    Any Individual or Business that owns or leases real or personal property physically damaged or destroyed as a result of the Spill.

    In order to avoid duplication of claims, an owner or lessee of the property must provide notice to all others with an ownership or lease interest in the property of the intent to file a claim. If duplicate claims are received, the GCCF will determine the appropriate claimant or claimants and their appropriate shares.

2.  What information should the Claimant submit?

    ◦ Information or documentation showing an ownership or leasehold interest in the property.
    ◦ Information or documentation showing the property was physically damaged or destroyed.
    ◦ Information or documentation showing the damages claimed were incurred as the result of the physical damage to or destruction of the property.

◦ Information or documentation showing the cost of repair or replacement of the property, or economic losses resulting from destruction of the property.
◦ Information or documentation showing the value of the property both before and after damage.

C. Lost Profits and Lost Earning Capacity

1.  Who may make a claim?

An Individual or Business that incurred a loss in profits or earning capacity due to the injury, destruction, or loss of real property, personal property or natural resources as a result of the Spill. The Individual or Business need not be the owner of the injured property or resources to recover for lost profits or earnings.

2.  What information should the Claimant submit?

◦ Identification of injury, destruction, or loss to a specific property or natural resource.
◦ Information concerning the Claimant's lost profits or earnings that were caused by the injury, destruction, or loss of specific property or natural resource as a result of the Spill (such as lost earnings by a fisherman whose fishing grounds have been closed or a hotel or rental property that has had decreased profits because beaches, swimming, or fishing areas have been affected by the oil from the Spill).
◦ Reduction of earnings or profits, or increase in expenses resulting from such damage.
◦ Amount of profits and earnings or expenses in comparable time periods.
◦ Earnings received from alternative employment or business during the period when the loss was suffered, and expenses incurred in generating the alternative earnings.
◦ Savings to overhead and other normal expenses not incurred as a result of the Spill.

D. Subsistence Use of Natural Resources

1.  Who may make a claim?

Any Individual who uses the natural resources that have been injured, destroyed, or lost as a result of the Spill to obtain food, shelter, clothing, medicine, or other subsistence use.

2.  What information should the Claimant submit?

◦ Identification of the specific natural resources that have been injured, destroyed or lost as a result of the Spill for which compensation for loss of subsistence use is being claimed. The Claimant need not own the affected natural resource.
◦ Description of the actual subsistence use made of each specific natural resource.
◦ Description of how and to what extent the subsistence use was affected by the injury to or loss of each specific natural resource as a result of the Spill.
◦ Description of expenditures made to replace or substitute for the subsistence use including any documentation verifying such expenditures.

E. Physical Injury or Death

1.  Who may make a claim?

A claim may be made by an injured Individual or the representative of a deceased Individual for economic and non-economic damages for a physical injury or death proximately caused by the Spill or the explosion and fire associated with the Deepwater Horizon incident, or by the clean-up of the Spill.

Submitting a physical injury or death claim to the GCCF is entirely voluntary; a Claimant is not required to submit their physical injury or death claim to the GCCF in order to obtain a Final Payment for Removal and Clean up Costs, Real or Personal Property Damage, Lost Profits and Lost Earning Capacity, or Subsistence Use of Natural Resources. However, unlike claims under the Oil Pollution Act, claims for physical injury or death cannot be submitted to the National Pollution Funds Center.

2. What information should the Claimant submit?

   ◦ Medical records or death certificate demonstrating physical injury or death.
   ◦ Medical records reflecting diagnosis by a medical practitioner.
   ◦ Information concerning the cause of physical injury or death.
   ◦ Information concerning the circumstances of the physical injury or death and the location where the physical injury or death occurred.
   ◦ Information concerning any total or partial disability of the Claimant.
   ◦ Records showing expenditures for medical care.
   ◦ Proof of lost income, if the Claimant seeks compensation for such lost income.
   ◦ Information and documentation regarding health care insurance or disability insurance.

F. Costs of Estimating Damages Claimed

Damages for claims for Removal and Clean Up Costs, Damage to Real or Personal Property, Lost Profits and Lost Earning Capacity, and Subsistence Use of Natural Resources, include the reasonable cost of estimating the damages claimed, but not attorney's fees or other administrative costs associated with preparation of the claim.

G. Causation

The GCCF will only pay for harm or damage that is proximately caused by the Spill. The GCCF's causation determinations of OPA claims will be guided by OPA and federal law interpreting OPA. Determinations of physical injury and death claims will be guided by applicable law.

**III. FILING FOR COMPENSATION**

A. Equal Access and Fair Adjudications in the Claims Process

All potential Claimants will be treated with respect, dignity, and fairness, without regard to race, color, sexual orientation, national origin, religion, gender, or disability. The GCCF shall strive to ensure that all Claimants can equally access the GCCF process, and that claims will be adjudicated fairly. Individuals with disabilities will be able to effectively communicate their claims and problems to the GCCF. Individuals with language barriers will have meaningful access to the process and to the GCCF. Individuals with low literacy will have documents and forms explained to them plainly and in a simple manner they understand.

B. Claim Form

1. The Claimant will fill out a Claim Form for an Interim Claim or a Final Claim.
2. Claimants shall submit the documentation requested on the Interim or Final Claim Form or other similar information sufficient both to substantiate the claim and for the GCCF to review and process the Interim or Final Claim.

3. Legal Representatives of decedents, minors, incompetent or legally incapacitated persons may file on behalf of such claimants but will be required to show proof that the legal representative has been duly appointed.

## C. Process for Filing a Claim

An Interim or Final Claim Form may be obtained and submitted in any one of the following ways:

1. Via the Internet – Claimants may submit an Interim or Final Claim online by visiting the GCCF website: www.gulfcoastclaimsfacility.com. Claimants will be instructed to follow simple steps for completing an Interim or Final Claim Form. Interim and Final Claim Forms and Instructions will be available in English, Spanish, Vietnamese and Khmer. Claimants who have previously filed a claim for an Emergency Advance Payment will not be required to resubmit previously submitted documentation, but will be required to submit additional documentation necessary to substantiate the Interim or Final Claim. A Claim Form submitted via the Internet will require the electronic signature of the Claimant.

2. By Visiting a GCCF Claims Site Office – Claimants may visit one of the 35 Claims Site Offices established to assist Claimants with the claims submission process. The locations of the Claims Site Offices are posted on the GCCF website, www.gulfcoastclaimsfacility.com. If a visitor requires an interpreter and an interpreter is not available on site, the Claims Evaluator will make arrangements to provide these services either via conference call or a scheduled return trip to the Claims Site Office. A Claims Evaluator will assist the Claimant in completing an Interim or Final Claim Form. The Claimant will not be required to resubmit previously submitted documentation but will only be required to submit additional documentation necessary to substantiate the Interim or Final Claim. The Claim Form must be signed by the Claimant.

3. Via U.S. Postal Service – Claimants may call the toll free, dedicated telephone line to request that an Interim or Final Claim Form be mailed via U.S. Postal Service. The Interim or Final Claim Form will be mailed via U.S. Postal Service to the Claimant. The Claimant will not be required to resubmit previously submitted documentation but will only be required to submit additional documentation necessary to substantiate the Interim or Final Claim. The Claim Form must be signed by the Claimant. The Claimant may return the completed form via:

   ◦ U.S. Postal Service:
     Gulf Coast Claims Facility
     P. O. Box 9658
     Dublin, OH 43017-4958
   ◦ Overnight, Certified or Registered Mail:
     Gulf Coast Claims Facility
     5151 Blazer Parkway, Suite A
     Dublin, OH 43017-4958
   ◦ Fax:
     1-866 682-1772
   ◦ Email:
     info@gccf-claims.com
   ◦ The toll-free telephone lines are as follows:

     ▪ Toll Free Number: 1-800 916-4893
     ▪ Multilingual Telephone Line: 1-800 916-4893
     ▪ TTY Telephone Line: 1-866 682-1758

All submitted Claim Forms, regardless of the method of submission, will be automatically forwarded to the Central Processing Database and integrated into a comprehensive GCCF Database.

## IV. APPLICATIONS FOR PAYMENT

Claimants have the option of submitting a claim for an Interim Payment or a Final Payment.

<u>A. Applications for Interim Payment</u>

An Interim Payment covers only substantiated, past damages. An Interim Payment does not cover any future damages.

The following principles will apply to claims for an Interim Payment:

- In order to receive an Interim Payment, a Claimant shall not be required to execute a release or waive any rights to assert additional claims, to file an individual legal action, or to participate in other legal actions associated with the Spill.
- A Claimant who seeks an Interim Payment may make a subsequent claim for an additional Interim Payment or a Final Payment.
- An Interim Claim may not be submitted more frequently than once per quarterly period, unless the Claimant is able to demonstrate the presence of exigent circumstances, in which case an Interim Claim may be submitted more than once per quarterly period. An Interim Claim for the first quarterly period may be submitted up to and including December 31. An Interim Claim for the second quarterly period may be submitted up to and including March 31. An Interim Claim for the third quarterly period may be submitted up to and including June 30. An Interim Claim for the fourth quarterly period may be submitted up to and including September 30.
- When evaluating an Interim Claim, the GCCF will take into account and offset prior payments by BP, the GCCF, and collateral sources.
- In the event that the Claimant has submitted an eligible, substantiated claim, the GCCF will provide the Claimant with a payment determination for both an Interim Payment and Final Payment so that the Claimant can select which form of payment the Claimant desires.
- If the Claimant elects to receive an Interim Payment, should the Claimant make a subsequent claim for a Final Payment, GCCF's valuation of the Final Payment may change to reflect additional information and less uncertainty regarding damages.
- Any Interim Payment or Emergency Advance Payment made to a Claimant will be deducted from that Claimant's Final Payment.

<u>B. Applications for Final Payment</u>

By applying for a Final Payment, an applicant is seeking to resolve all claims including any claims for future damages resulting from the Spill. A Final Payment constitutes a complete and final resolution of all claims for any past, current, or future losses that a Claimant has or may have with regard to the Deepwater Horizon incident and oil spill against BP and all other potentially liable parties, except as otherwise noted in paragraph V.C. of this Protocol. Accepting a Final Payment requires the Claimant to sign a release of past and future claims. The Release is attached to this Protocol as Tab A. In determining the Final Payment, the GCCF will take into account and offset prior payments by BP, the GCCF, and collateral sources.

## V. REVIEW PROCEDURES

<u>A. Determination of Claims</u>

1. After an Interim Claim or a Final Claim is presented, the GCCF shall determine within 90 days whether to make a payment to the Claimant and if so the amount of such payment.
2. Determinations of claims asserted under OPA will be guided by OPA. Determinations of physical injury or death claims will be guided, as applicable, by other federal law and pertinent state law.
3. If the GCCF determines that more information is necessary in order to resolve a claim, it will advise the Claimant promptly.

B. Notification of GCCF Decision

The Claimant will be sent in writing: (1) the GCCF's decision regarding the claim, including the reason for any denial, reduction or increase to the claimed amount; (2) the amount of the determined compensation; and (3) in the case of an eligible claim for Final Payment, a Release to be signed by the Claimant. Offers of Final Payment shall be valid for 90 days, after which they are null and void.

C. Acceptance of Final Payment

Claimant acceptance of a Final Payment is voluntary. Claimants who accept a Final Payment must sign a Release. A copy of the main Release is attached as Tab A. The Release will waive any rights the Claimant may have against BP and any other potentially liable parties to assert additional claims, to file an individual legal action, to participate in other legal actions associated with the Spill, or to submit any claim for payment by the National Pollution Funds Center. However, except where the Claimant accepts a Final Payment for physical injury or death, the Release will not waive the Claimant's rights with regard to a physical injury or death claim. If the Claimant elects to accept a Final Payment for a claim for physical injury or death, the Claimant will return to the GCCF a Release specifically waiving the Claimant's rights with regard to the Claimant's physical injury or death claim.

D. Rejection of Interim or Final Payment Determination

A Claimant may elect to reject an Interim or Final Payment determination and, as permitted by law, either present the claim to the National Pollution Funds Center or commence an action in court. A claim for physical injury or death is not a claim under OPA and therefore cannot be submitted to the National Pollution Funds Center.

E. Denial of Interim or Final Claim

If an Interim or Final Claim is denied, the Claimant may, as permitted by law, either present the claim to the National Pollution Funds Center or commence an action in court.

F. Payment of Final Claims

Within fourteen (14) days of the receipt of the signed Release, the GCCF will issue payment to the Claimant.

G. Collateral Source Compensation

The amount of compensation will be reduced by collateral source compensation that the Claimant has received due to the Spill where such collateral source compensation would be duplicative of payments by the GCCF.[2]

1. Payments that constitute collateral source compensation.

   ◦ Collateral source compensation includes, but is not limited to, insurance payments including health insurance payments, and payments by federal, state, or local governments related to the Spill, including unemployment benefits.

2. Payments that do not constitute collateral source compensation.

   ◦ Charitable donations and the value of services or in-kind charitable gifts such as provision of emergency housing, food, or clothing distributed to the Claimant.

## VI. APPEAL PROCEDURES

A. No Waiver of Rights

Appeal by a Claimant or BP of a Final Payment determination under this section is voluntary. Such appeal shall not waive any rights the Claimant has under OPA or other applicable law.

B. The Right to Appeal Pursuant to this Protocol

1. The Claimant may appeal a Final Claim determination of the GCCF if a total monetary award (including any Emergency, Interim or Final Payment made by BP or the GCCF) is in excess of $250,000. BP may appeal a Final Claim Determination of the GCCF if a total monetary award (including any Emergency, Interim or Final Payment made by BP or the GCCF) is in excess of $500,000.

2. If either the claimant or BP asserts that the Final Claim: a) presents an issue of first impression under OPA; or b) that the determination of the GCCF is inconsistent with prior legal precedent under OPA and that the Final Claim is likely to be representative of a larger category of claims to be considered by the GCCF, then a right to appeal may be granted by the Claims Administrator in his sole discretion.

C. Timing of Filing of Appeal

Any appeal pursuant to this Section must be made within fourteen (14) days of notification of the GCCF's determination of the Final Claim.

D. Selection of Appeals Judges

1. The Claims Administrator shall select one distinguished member of the legal profession (e.g., a retired federal or state judge, respected legal academic, professional mediator or arbitrator) who will identify distinguished members of the legal community (e.g., retired federal or state judges, respected legal academics, professional mediators or arbitrators) to serve as impartial GCCF Appeals Judges.

2. When an appeal is certified, the Claims Administrator will assign the appeal to a panel of three approved GCCF Appeals Judges for decision.

E. Claim File

For any claim that is appealed by a Claimant, the Claimant will approve disclosure of the complete claim file to both BP and the assigned Panel of Appeals Judges. For any claim that is appealed by BP, the Claims Administrator will release only such information from the claim file as is necessary for BP to evaluate the decision and a decision by the Panel of Appeals Judges.

F. Timing of Appeal Decision

The Panel of Appeals Judges will decide the appeal within fourteen (14) days after receiving the claim file.

G. Applicable Law Governing Appeals

Appeals of claims asserted under OPA will be guided by OPA. Appeals of non-OPA claims (physical injury or death) will be guided by applicable federal and state law.

H. Tolling Period

Once an appeal commences, a Claimant may not file a claim against the Oil Spill Liability Fund, or file a claim in court, until the appeal pursuant to this Section is either decided or withdrawn.

I. Impact of the Appeal Decision

Any decision of the Panel of Appeals Judges shall be deemed final as to BP only. If the Claimant does not agree with the decision of the Panel of Appeals Judges, the Claimant may reject the GCCF determination and pursue a claim in the courts or as otherwise permitted under OPA.

## VII. REPORTING

The GCCF shall provide reports of non-personally identifiable information to state, local, and federal government officials and to BP to permit an evaluation of the claims process. The GCCF shall submit to interested parties, including BP, periodic reports of non-personally identifiable information regarding claims made and claims determinations.

## VIII. PERIOD FOR SUBMISSION OF CLAIMS

Claims for an Emergency Advance Payment will not be accepted after November 23, 2010. Claims for an Interim or Final Payment may be submitted to the GCCF through August 23, 2013. After that date, BP will continue to receive claims as required by OPA; under OPA, any action in court to recover damages must be filed within three (3) years after the date on which the injury and its connection with the discharge in question were reasonably discoverable with the exercise of due care. The time limitations do not begin to run against: (1) a minor until the earlier of the date when the minor reaches 18 years of age or the date on which a legal representative is duly appointed for the minor; or (2) an incompetent person until the earlier of the date on which such incompetent's incompetency ends or the date on which a legal representative is duly appointed for the incompetent. Claimants should be aware of this limitation period in determining whether to present their claims to GCCF or BP.

## IX. PRIVACY

Information submitted by a Claimant to the GCCF will be used and disclosed for purposes of: (1) processing the Claimant's claim for compensation and any award resulting from that claim; (2) legitimate business purposes associated with administering the GCCF, including the prevention of fraud and the determination of collateral source payments; and/or (3) as otherwise required by law, regulation or judicial process.

## X. QUALITY CONTROL AND PROCEDURES TO PREVENT AND DETECT FRAUD

A. Review of Claims

For the purpose of detecting and preventing the payment of fraudulent claims and for the purpose of accurate and appropriate payments to Claimants, the GCCF shall implement procedures to:

1. Verify and authenticate claims.
2. Analyze claim submissions to detect inconsistencies, irregularities, and duplication.
3. Ensure the quality control of claims review procedures.

B. Quality Control

The GCCF shall institute periodic quality control audits designed to evaluate the accuracy of submissions and the accuracy of payments.

C. False or Fraudulent Claims

Each Claimant will sign an Interim or Final Claim Form at the time of application, stating that he or she certifies that the information provided in the Claim Form is true and accurate to the best of his or her knowledge, and that he or she understands that false statements or claims made in connection with that application may result in fines, imprisonment, and/or any other remedy available by law, and that suspicious claims will be forwarded to federal, state, and local law enforcement agencies for possible investigation and prosecution. Claims filed via the Internet will require an electronic signature which shall be equally as binding upon the Claimant as a physical signature. The GCCF shall refer all evidence of false or fraudulent claims to appropriate law enforcement authorities.

---

[1] For purposes of this Protocol, the term "Individual" includes the representative of a minor or incompetent individual.

[2] The offset of collateral source compensation will be used to prevent duplicative payments to a Claimant. The rights, if any, of the entity that made the initial payment to the claimant will be determined by the applicable law.

- Privacy Policy |
- All Rights Reserved

- Home
- Important Notices
  and Information
- Frequently Asked Questions
- Town Hall Meetings / Events
- Press and News Releases
- Protocol for Interim
  and Final Claims
- Summary of Options
  for Filing Claims

- File a Quick Payment Final Claim Form

- File a Full Review Final
  Claim Form Online

- File an Interim
  Claim Form Online

- File a Paper Interim or Full Review Final Claim Form
- Required Forms for Claimant Representatives
- Claims Site Offices
- Check Claim Status
- GCCF Program Statistics
- Pro Bono Assistance
- To Report Fraud
- Contact Us

# EXHIBIT F



**SUMMARY OF OPTIONS FOR SUBMISSION OF FINAL AND INTERIM PAYMENT CLAIMS**

**TO:**      ALL CLAIMANTS TO THE GULF COAST CLAIMS FACILITY

**RE:**      FINAL AND INTERIM CLAIM SUBMISSION OPTIONS AND PROCEDURES

Please carefully review the Final and Interim Claim Submission Options and Procedures outlined below for submission to the Gulf Coast Claims Facility ("GCCF") of Final and Interim Payment Claims.  You may submit a Final or an Interim Claim.

- A Final Claim seeks to resolve your entire claim against BP and all other potentially liable parties for any and all past and future alleged damages.  As explained below, you will be required to sign a release of liability in order to receive payment for a Final Claim.  Do not sign a release of liability unless you want to accept the final payment as full and final resolution of all of your claims.  If you sign a release of liability, you will not be able to seek further compensation from the GCCF, the Coast Guard, or in court.

- There is a separate option for those claimants who want to file a Final Claim and who previously received an Emergency Advance Payment.  Such claimants may apply for a Quick Payment Final Claim.  This is an expedited procedure which offers a fixed amount of $5,000 for individuals and $25,000 for businesses to finally resolve their Final Claims.  Under the Quick Payment Final Claim process, you do not have to document your final claim.  **Do not elect the Quick Payment Final Claim process unless you are willing to accept the fixed payment of $5,000 for individuals and $25,000 for businesses and to sign a full release of liability.  If you sign a release of liability, you will not be able to seek further compensation from the GCCF, the Coast Guard, or in court.**

- If you do not want to file a Final Claim at this time you may file an Interim Payment Claim.  An Interim Payment Claim is a **non-final claim** for additional past alleged damages that have not yet been compensated.  In order to receive payment for an Interim Payment Claim you must fully document your past additional losses. You will <u>not</u> be required to sign a release of liability to obtain an Interim payment, and may file a Final Claim at a later time.

**If you are represented by an attorney in connection with your claim, confer with your attorney about your options before submitting a claim or signing a release.**

If you do not understand your options or have a question, please call the GCCF toll free at 1-800-916-4893 and **ask for Quick Pay Information.**

**A.   VOLUNTARY QUICK PAYMENT FINAL CLAIM**
$  5,000 for Individuals
$25,000 for Businesses

If you previously received an Emergency Advance Payment you may choose to submit a Final Claim requesting a Quick Payment of $5,000 if you are an individual claimant, or $25,000 if you are a business claimant.  ***This Quick Payment Final Claim option provides you with an automatic payment with no further review or requirement for additional supporting documentation***.   The Quick Payment Final Claim option requires you to release and waive any claims that you have or may have in the future against BP and all other potentially responsible parties with regard to the Deepwater Horizon Incident and Oil Spill (the "Spill") or to submit any claim for payment to the National Pollution Funds Center, the Coast Guard office responsible for evaluating and approving Oil Pollution Act claims (the "Coast Guard").  (A separate release will be required for claimants who have submitted a claim for physical injury or death.)[1] Within 14 days of the receipt of the original signed release by the GCCF, a payment for $5,000 (if you are an Individual) or $25,000 (if you are a Business) will be sent to you.   ***Underline: This payment of a Quick Payment Final Claim constitutes a final payment of your claim.   A Quick Payment Final Claim is available only to those claimants who have received an Emergency Advance Payment.***

To submit a Quick Payment Final Claim:

1)  You must have received an Emergency Advance Payment.

2)  You must complete the enclosed simple Quick Payment Final Claim Form.  **No additional documentation is required**.

3)  You must sign the release that is part of the Quick Payment Final Claim Form and return the **original** signed document to the GCCF.  **Read the release and cover information page to the release carefully.  Do not sign the release unless you fully understand and agree to all of its terms.**

4)  If you have received an Emergency Advance Payment, you may submit a Quick Payment Final Claim at any time prior to the close of the GCCF Program on August 22, 2013.[2]

5)  Amounts previously received for damages due to the Spill from BP, the GCCF, the Coast Guard, state unemployment benefits, and private insurance **will not** be deducted from the payment of a Quick Payment Final Claim.  Legally authorized garnishments, liens or similar forms of attachments received relating to your claim will be honored and deducted from your payment.

**B.  VOLUNTARY FULL REVIEW FINAL PAYMENT CLAIM**

If you do not choose or are not eligible for the Quick Payment Final Claim option, you may elect to submit a Full Review Final Payment Claim to receive a lump sum single payment for all documented losses and damages, both past and future.  A Full Review Final Payment Claim requires complete substantiation and documentation of all damages sustained in the past.  You may choose to provide documents that support amounts claimed as future damages as a result of the Spill, including documents demonstrating the manner in which such future damages have been calculated, the period of time for which they are claimed, and any expert reports or other analyses on which the calculation is based. The GCCF will perform a complete analysis of all existing and newly submitted documentation to compute, determine and pay all past and future damages. The GCCF will rely upon documentation you submit and analyses and documentation provided to the GCCF by independent experts.   You will receive a Final Payment Offer based on the GCCF's review and evaluation of the Full Review Final Payment Claim.  You will receive a

---

[1] If you choose to submit a Quick Payment Final Claim for physical injury or death, you must sign a Release of Bodily Injury Claims which releases all claims for physical or mental injury related to the Spill.  You must return the ***original*** signed document to the GCCF.

[2] If you file an Interim Claim and receive an Interim Payment, you will thereafter be eligible to submit a Quick Payment Final Claim.

2

written explanation of your payment calculation and you will have an opportunity to discuss your Final Payment Offer with a member of the GCCF Senior Evaluation Team and/or a member of the Accounting Team.  Acceptance of a Full Review Final Payment Offer will require you to release and waive any claims that you have or may have in the future against BP and all other potentially responsible parties with regard to the Spill or to submit any claim for payment to the Coast Guard.   A copy of the language of the release is included with the Full Review Final Payment Claim Form.  A separate release will be required for claimants who have submitted claims for physical injury or death.

To Submit a Full Review Final Payment Claim:

1) You must complete the enclosed Full Review Final Payment Claim Form.

2) You must provide substantiation and documentation for all past damages caused by the Spill.  The Gulf Coast Claims Facility Document Requirements accompanying the Claim Form identify the specific documentation requirements for each type of claim.  If you previously submitted a claim with supporting documentation, you do not need to resubmit that documentation.  You must submit any new documentation related to your claim which was not previously submitted to the GCCF.

3) Claimants who previously submitted a Final Claim with the GCCF do not have to submit a Full Review Final Payment Claim but should review the Gulf Coast Claims Facility Document Requirements and make sure all of the required documents have been submitted.

4) You may choose to provide documents that support amounts claimed as future damages as a result of the Spill, including documents demonstrating the manner in which such future damages have been calculated, the period of time for which they are claimed, and any expert reports or other analyses on which the calculation is based.

5) The GCCF will fully evaluate and determine your Full Review Final Payment Claim within 90 days of receipt of your substantiated claim.  You will be notified of the amount of the Final Payment Offer within this 90-day period.  Claimants who previously submitted a Final Claim will have their claim reviewed on a priority basis.

6) You will receive your Final Payment Offer once eligibility of your claim is determined.  Your Final Payment Offer will be a lump sum amount for all past and future damages (other than alleged physical or mental health injury) based upon specific documentation received and expert analysis of future damages if any.  This Final Payment Offer will be valid for 90 days.   If you have not accepted this Final Payment Offer during the 90-day period, the GCCF will re-evaluate any later submission or request for a Final Payment Offer you may make to reflect additional information and less uncertainty regarding damages.

7) Amounts previously received for damages due to the Spill from BP, the GCCF (including Emergency Advance Payments and Interim Payments), the Coast Guard, state unemployment benefits and private insurance will be deducted from your Full Review Final Payment.  Legally authorized garnishments, liens, or similar forms of attachments received relating to your claim will be honored and deducted from your payment.

8) With the lump sum Final Payment Offer for all past and future damages, you will receive a copy of the release.[3] To receive a Full Review Final Payment, you will be required to sign that release.  Enclosed is a sample copy of the release you will be required to sign if you accept your Final Payment Offer.  Please read the release and cover information page to the release carefully.  Do not sign the release unless you fully understand and agree to all of its terms.

---

[3] Claimants receiving a Final Payment Offer for a physical injury or death claim will receive a copy of a Release of Bodily Injury Claims, which will release all physical or mental injury ("Bodily Injury") claims related to the Spill. In order to receive a Full Review Final Payment for a physical injury or death claim, you will be required to sign a copy of the Release of Bodily Injury Claims.

9)  You may submit a Full Review Final Payment Claim at any time prior to the close of the GCCF Program on August 22, 2013 (even if you have previously submitted and received an Emergency Advance Payment or an Interim Payment).   You may accept only **one** Final Payment.

10) The Full Review Final Payment Claim evaluation and determination will include a review of the calculation of any previous Emergency Advance Payment. If appropriate, the GCCF will adjust the calculation and include any <u>additional</u> compensation as part of the Final Payment Offer.

## C.   VOLUNTARY INTERIM PAYMENT CLAIM

If you do not elect the Quick Payment Final Claim or the Full Review Final Payment Claim, you may submit an Interim Payment Claim for additional past losses and damages incurred as a result of the Spill.   An Interim Payment Claim may be submitted only for documented PAST damages caused by the Spill.   An Interim Payment is NOT an Emergency Advance Payment. Previous payment of an Emergency Advance Payment is not required to submit an Interim Payment Claim. If you have received an Emergency Advance Payment, you may now submit an Interim Payment Claim; however, you will be compensated ONLY for additional documented losses or damages you have incurred since the Spill for which you have not previously been compensated.   An Interim Payment will not compensate you for future losses or damages.   For future losses or damages to be evaluated and paid, you must submit a Full Review Final Payment Claim, described above.

To Submit an Interim Payment Claim:

1)  You must complete the Interim Payment Claim Form.

2)  You may submit an Interim Payment Claim <u>only once</u> each quarter of each calendar year throughout the duration of the GCCF Claims Program which concludes on August 22, 2013, or until the submission of either a Quick Payment Final Claim or a Full Review Final Payment Claim.   The first quarter begins now and concludes on March 31, 2011.   Subsequent quarters will be April 1 through June 30; July 1 through September 30; and October 1 through December 31 of each year.   Evaluation of your Interim Payment Claim consists of a review of your losses measured over the period that begins with the Spill and concludes at the end of the month for which you have provided the most recent actual financial data ("Loss Measurement Period").   If you have submitted an Interim Payment Claim you may submit a subsequent claim for Final Payment as discussed in Sections A and B above.

3)  You must provide supporting documentation to demonstrate all past losses and damages sustained as a result of the Spill.   The Gulf Coast Claims Facility Document Requirements accompanying the Claim Form identify the supporting documents required for each type of claim.   If you previously submitted a claim with supporting documentation, you do not need to resubmit that documentation. However, you must **supplement and update** your documentation already on file with the GCCF to include the applicable Loss Measurement Period.   If you have not previously submitted a claim, you must provide complete substantiation and documentation to support your claim for losses and damages.   <u>Deficiency notices for missing documents will not be sent to claimants submitting an Interim Payment Claim</u>.   Instead, your damages will be calculated only for the period(s) for which you provide the required documentation.   You must provide all documentation you wish the GCCF to consider in calculating your Interim Payment.

4)  To receive an Interim Payment, you will <u>not</u> be required to execute a release or waive any rights to assert additional claims, to submit an individual legal action, or to participate in other legal actions associated with the Spill.

5)  If appropriate, the GCCF will adjust the calculation of a previously paid Emergency Advance Payment and include any <u>additional</u> compensation as part of the Interim Payment.   Amounts you previously received for damages due to the Spill from BP, the GCCF (including Emergency Advance Payments), the Coast Guard, state unemployment benefits and private insurance will be deducted from the Interim Payment.   Legally authorized garnishments,

4

liens or similar forms of attachments received relating to your claim will be honored and deducted from your payment.

6) Within 90 days of receipt of a substantiated claim for an Interim Payment, the GCCF will evaluate and review the submitted documentation.  You will receive notice of your eligibility and calculated amount for payment of your Interim Payment Claim.  At the same time, if the documents you have submitted permit the GCCF to do so, the GCCF also will provide you with the GCCF's current valuation and Final Payment Offer for your claim; you will have the option to continue with the Interim Payment Claim process or to accept the GCCF's Final Payment Offer.  If you have previously filed a Final Claim with the GCCF and wish to file an Interim Payment Claim prior to completion of the Final Payment Claim Process, please notify the GCCF by checking the appropriate box on the Interim Payment Claim form.   As stated above, if you have submitted sufficient documentation, the GCCF will provide you with the current valuation and Final Payment Offer for your claim.  The GCCF's valuation and Final Payment Offer for your claim may change at a later date to reflect additional information and less uncertainty regarding damages.

**D.  APPEALS**

You will have an opportunity to appeal the GCCF's determination of your Full Review Final Payment Claim if your total payment (including any Emergency, Interim, or Final Payments made by BP or the GCCF) is in excess of $250,000.   Appeals will be made to a three Judge Panel.  Any appeal must be made within 14 days of notification of the GCCF's determination of your Final Claim.  Appeals will be determined within 14 days of assignment of the appeal to the three Judge Panel. If you do not agree with the decision of the three Judge Panel, you may reject the GCCF determination and pursue a claim with the Coast Guard or in the courts to the extent permitted by law.

There is also an additional appeal right available for a limited number of claims that the GCCF decides are of precedential value for the GCCF's process. To review the requirements for this type of limited appeal, visit www.GulfCoastClaimsFacility.com and select Frequently Asked Questions: Appeals.

# EXHIBIT G

| Name: | | SSN or EIN: | | Claimant #: | |
|---|---|---|---|---|---|

| GCCF 2000-QI | GULF COAST CLAIMS FACILITY QUICK PAYMENT FINAL CLAIM FORM (For Individual Claimants) |
|---|---|
| **FINAL PAYMENT AMOUNT** | **$5,000** |

## A. Instructions

To elect to be paid $5,000 in full settlement of all claims arising from the Deepwater Horizon "Incident" (as defined in Section D below), a claimant must complete the Quick Payment Final Claim Form and sign the attached Release and Covenant Not to Sue. Claimants who are eligible to submit a Quick Payment Final Claim for physical injury or death will receive an enclosed copy of a Release of Bodily Injury Claims, which will release all physical or mental injury ("Bodily Injury") claims related to the Incident. In order to receive a Quick Payment for a physical injury or death claim, a claimant will be required to sign a copy of the Release of Bodily Injury Claims.

1. **Basic Information.** If pre-filled information is incorrect, make corrections directly on this Form. Be sure to enter your Social Security or Individual Taxpayer Number.

2. **Authorized Signatory.** Individual claimants must personally sign this Form. If an individual claimant is deceased, is a legal minor, or is not legally competent to sign, the claimant's legal representative must fill out Section C below.

3. **Spousal Information.** Spousal information is required for all married individual claimants.

4. **Payment Instructions.** Provide instructions on how you want to receive the $5,000. NOTE: legally authorized garnishments, liens or similar forms of attachments received relating to your claim will be honored and deducted from any payment.

5. **Understanding Your Rights.** This Quick Payment Final Claim Form and Release contain important information about your legal rights, including giving up your right to sue BP and other parties. You must read the information before signing. **Do not sign the Release unless you understand and agree to its terms.**

6. **Attorney Representation. If you are represented by an attorney in connection with your claim, do not submit this Form or sign the Release until you have conferred with your attorney about the decision to submit it and sign the Release.**

7. **Required Signatures.** By signing this Quick Payment Final Claim Form and Release, you are electing to receive the $5,000 Quick Final Payment. If you are married, your spouse must sign in each place as well.

8. **Originals Required.** Return this original signed Quick Payment Final Claim Form and Release using the enclosed postage prepaid envelope or by overnight delivery. Facsimiles, PDFs, or copies of a signature will not be accepted.

9. **No Modifications.** Do not mark through or try to change any of the language in the Release. Doing so will mean your Release cannot be accepted and we will not be able to process your Quick Payment Final Claim Form.

## B. Individual Claimant Information

| Claimant ID#: | | Social Security #: | |
|---|---|---|---|
| **Claimant Name:** | | | |
| **Claimant Address:** | Street | | |
| | City | State | Zip Code |
| | Parish/County | Country | |
| **Telephone Number:** | ( \|  \|  \| ) \|  \|  \| - \|  \|  \|  \| | | |
| **Spouse Name (if applicable):** | First | Middle | Last |
| **Spouse Address (if different from Claimant Address):** | Street | | |
| | City | State | Zip Code |
| | Parish/County | Country | |

| Name: | | SSN or EIN: | | Claimant #: | |
|---|---|---|---|---|---|

| GCCF 2000-QI | **GULF COAST CLAIMS FACILITY QUICK PAYMENT FINAL CLAIM FORM (For Individual Claimants)** |
|---|---|
| **FINAL PAYMENT AMOUNT** | **$5,000** |

## C. Representative Claimant Information

You must complete each question in this section if you are filling out this Quick Payment Final Claim Form for an individual claimant affected or injured by the Spill who is deceased, or is incompetent or legally incapacitated and unable to complete the Claim Form for himself or herself.  (You must provide proof that you are a duly appointed Representative.) See Section VII of the Gulf Coast Claims Facility Document Requirements for the documents required to establish authority to act as the Representative Claimant or visit the website at www.gulfcoastclaimsfacility.com.

| **Reason person affected or injured by the Spill is unable to complete the Claim Form:** | |
|---|---|
| **Your relationship to Claimant:** | ☐ Spouse  ☐ Parent  ☐ Child<br>☐ Sibling  ☐ Administrator  ☐ Executor<br>☐ Other (specify): _____ |

### Provide *your* name and contact information below.

| **Last Name:** | |
|---|---|
| **First Name:** | |
| **Middle Name:** | |
| **Current Address:** | Street |
| | City / State / Zip Code / Country |
| **Home Phone Number:** | ( ___ ) ____ - _____ |
| **Cell Phone Number:** | ( ___ ) ____ - _____ |
| **Email Address:** | |
| **Social Security Number:** ☐ <br>*or*<br> **Individual Taxpayer Identification Number:** ☐ | ___ - __ - ____ <br><br> ___ - __ - ____ |
| **Type of proof submitted that you are a duly appointed Representative:** | |

| GCCF 2000-QI | GULF COAST CLAIMS FACILITY QUICK PAYMENT FINAL CLAIM FORM (For Individual Claimants) |
| --- | --- |
| **FINAL PAYMENT AMOUNT** | **$5,000** |

## D. Important Information About the Attached Release and Covenant Not to Sue; Acknowledgement and Election to Receive a $5,000 Quick Payment

The attached Release and Covenant Not to Sue ("Release") is a binding legal document. By signing this document, you are forever waiving and releasing all claims that you may have against BP or any other party other than claims for Bodily Injury (including claims alleging a mental health injury) ("Bodily Injury") or by shareholders of BP or other Released Parties for alleged violations of Securities laws ("Securities Claim") in connection with the April 20, 2010 blowout of the Macondo Well, the sinking of Transocean's Deepwater Horizon drilling rig, and the subsequent oil Spill in the Gulf of Mexico (the "Incident").

You are under no obligation to accept the final payment offered to you by the Gulf Coast Claims Facility. You are free to reject the final payment offered by the Gulf Coast Claims Facility and to pursue other means of compensation. If you want to file a lawsuit regarding the Incident or make a claim against the Oil Spill Liability Trust Fund, do not sign this Release.

By signing the attached Release, you are forever giving up and discharging any rights which you may have for any costs, damages or other relief related to or arising from the Incident (excepting claims for Bodily Injury or Securities Claim), even if you are not currently aware of such costs or damages and even if such costs or damages arise in the future (i.e., additional oil impacts) or do not manifest themselves until the future.

By signing the attached Release, you acknowledge that you have read and understand the terms of the Release, and that you execute the release voluntarily and without being pressured or influenced by, and without relying upon, any statement or representation made by any person acting on behalf of BP or any other released party. **If you are represented by an attorney in connection with your Claim, confer with your attorney before submitting this Claim and signing this Release.**

The Quick Pay option is intended to provide an expedited settlement mechanism for those claimants who believe that the amount offered by the Quick Pay fully and fairly resolves their claim. Do not select the Quick Pay option if you believe you have a claim in an amount greater than the Quick Pay amount. If you elect the Quick Pay amount, you will not be permitted to later seek additional amounts.

If you are married, both you and your spouse must sign the Release. You and your spouse should not sign the Release unless you both intend to release all claims.

***

Claimant acknowledges that claimant has read and understands the information in this Section D. Claimant elects to receive a $5,000 Quick Payment as a final settlement of all claims against any party in connection with the Incident (other than claims for Bodily Injury or Securities Claim.)

Claimant consents to the use and disclosure by the GCCF and those assisting the GCCF of any information that it believes necessary and/or helpful to process claimant's claim for compensation and payment including any legitimate business purposes associated with administering the GCCF and providing adequate documentation for insurance coverage of responsible parties, and/or as otherwise required by law, regulation or judicial process.

_____        _____

Signature of Claimant                                                              Date

I acknowledge that I have read and understand the information in this Section D. I consent to the claimant's election to receive a $5,000 Quick Payment as a final settlement of all claims of claimant against any party in connection with the Incident (other than claims for Bodily Injury or Securities Claim.)

_____        _____

Spousal signature (if applicable)                                            Date

| Name: | SSN or EIN: | Claimant #: |
|---|---|---|

## RELEASE AND COVENANT NOT TO SUE

| FINAL PAYMENT AMOUNT | $5,000 |
|---|---|

1. In consideration of payment in the amount of $5,000, Claimant hereby releases and forever discharges, and covenants not to sue BP Exploration & Production Inc. ("BP") and the other Released Parties, including but not limited to the parties listed in Attachment A to this Release, for any losses, damages, costs, expenses, injuries, claims, causes of actions, liabilities, or other relief that Claimant has or may have, whether known or unknown, whether present or future, whether direct or indirect, whether legal or equitable, arising from or relating in any way to the April 20, 2010 blowout of the Macondo Well, the sinking of Transocean's Deepwater Horizon drilling rig, and the subsequent oil spill in the Gulf of Mexico (the "Incident") (collectively, "Claims"), provided however that this Release does not apply to claims (i) for bodily injury (including claims alleging a mental health injury) ("Bodily Injury") or (ii) by shareholders of BP or other Released Parties for alleged violations of securities laws ("Securities Claim").

2. Claimant also, on behalf of Claimant's spouse, heirs, beneficiaries, agents, estates, executors, administrators, personal representatives, subsidiaries, parents, affiliates, partners, limited partners, members, joint venturers, shareholders, predecessors, successors, assigns, insurers, and attorneys (collectively, "Affiliates"), hereby releases and forever discharges, and covenants not to sue BP and the other Released Parties for any Claims released by Claimant pursuant to Paragraph 1 above.   With regard to an insurer of the Claimant, notwithstanding anything to the contrary in the foregoing, the execution of this Release by Claimant shall not release the claims of an insurer of Claimant if and only if the Claimant has disclosed in writing on Claimant's  Full Review Final Claim Form for Final Payment or Emergency Advance Payment Claim Form submitted to the Gulf Coast Claims Facility the fact of a payment, and the amount of the payment, by the insurer to Claimant.

3.  This Release applies to all Claims regardless of the legal or equitable theory (including legal and equitable theories under federal, state, local, and international law, and including without limitation statutory law, regulation, common law, maritime law, strict liability, negligence, gross negligence, punitive damages, nuisance, trespass, and all other legal and equitable theories), whether existing now or arising in the future, arising out of or in any way relating to the Incident, provided however that this Release does not apply to claims for Bodily Injury or Securities Claim.

4. Released Parties means anyone who is or could be responsible or liable in any way for the Incident or any damages related thereto, whether a person, company or governmental entity, including (but not limited to) BP, other potentially responsible or liable parties, including but not limited to the parties listed in Attachment A to this Release, the federal Oil Spill Liability Trust Fund and any state or local fund, and each of their respective Affiliates as defined above.

5. Claimant represents and warrants that Claimant (i) has authority to execute this Release; and (ii) has not sold or otherwise transferred or assigned any of the Claims, or any interests in such Claims.

6. Claimant represents and warrants that Claimant has not received any payment from any insurer or other party (other than BP or the GCCF) in connection with the Incident, other than payments disclosed on the Full Review Final Claim Form for Final Payment. However, the representation and warranty contained in this section (6) is not applicable to a Claimant electing to submit a Quick Payment Final Claim Form and receive a Quick Payment.

7. Claimant will dismiss with prejudice within 10 days of executing this Release any litigation concerning the Incident (other than litigation alleging only Bodily Injury or Securities Claim) filed by or on behalf of Claimant against BP or any other Released Parties. Claimant also will withdraw (the obligation to withdraw is satisfied by affirmatively declining to participate if and when the Claimant receives any communication giving Claimant the option of participating or not participating in a class action or similar procedural device) from any existing and will not join any new class actions or similar procedural devices concerning or relating to the Incident (other than class actions or similar procedural devices alleging only Bodily Injury or Securities Claim).

8. This Release is not intended to prevent any of the Released Parties from exercising their respective rights of contribution, subrogation, or indemnity under the Oil Pollution Act of 1990 ("OPA") or any other law.  As this Release is fully and completely resolving, together with all other Claims, Claimant's claim under OPA, BP is hereby subrogated to any and all rights that Claimant has arising from the Incident.

9. The payment to Claimant is made without any admission of liability or wrongdoing, or any acknowledgment that the law recognizes any allegation referenced herein, by BP or any other Released Party.

10. The provisions of this Release and all questions with respect to the construction and enforcement thereof and the rights and liabilities hereto shall be governed by, and construed and enforced in accordance with, the laws of the state of residence of the Claimant at the time of signing this Release without regard to conflicts of laws principles.

11. This Release supersedes any and all other agreements, written or oral, between BP and Claimant with respect to such subject matter of this Release.

12. If there is no signature on the line below for Claimant's Spouse, Claimant represents and warrants that Claimant is not married.

| Name: | | SSN or EIN: | | Claimant #: | |
|---|---|---|---|---|---|

## RELEASE AND COVENANT NOT TO SUE

| **FINAL PAYMENT AMOUNT** | **$5,000** |
|---|---|

### Release and Covenant Not to Sue – Signature by the Claimant

As the Claimant set forth in Section B of the attached Quick Payment Final Claim, I am signing this Release and Covenant Not to Sue:

| **Signature:** | |
|---|---|
| **Printed Name:** | |
| **Date:** | (Month/Day/Year):  _____/_____/_____ |

### Release and Covenant Not to Sue – Signature by the Claimant's Spouse (if applicable)

As the spouse of the individual signing above, I am signing this Release and Covenant Not to Sue:

| **Signature:** | |
|---|---|
| **Printed Name:** | |
| **Date:** | (Month/Day/Year):  _____/_____/_____ |

## PAYMENT INSTRUCTIONS

Indicate either a wire transfer or check payment by checking the appropriate box below and completing the corresponding details. **Payments will be reduced as necessary to satisfy legally authorized garnishments, liens or similar forms of attachments that have been presented to the GCCF.** The GCCF will report annually to federal and state taxing authorities, using a form 1099 or state form equivalent, for certain payments made. The GCCF will send you a copy of that form, but cannot give you tax advice regarding any payment issued to you. You should consult with your own tax advisor to determine the impact of any payment you receive from the GCCF on your individual tax situation.

| ☐ | **Wire the payment to the following account:** | |
|---|---|---|
| | Bank Name | |
| | Bank Mailing Address | |
| | Bank Telephone Number | |
| | Bank Account Name: *If the Account Name for your bank account differs from your name, please also explain the reason for the difference.* | |
| | Bank ABA/Routing Number: | Bank Account Number: |

| ☐ | **Mail a check to the following address:** | | |
|---|---|---|---|
| | Street | | |
| | City | State | Zip Code |
| | Parish/County | Country | |

<u>Attachment A</u>

Aerotek, Inc.
Ameri-Force, Inc.
Anadarko Petroleum Company
Anadarko Petroleum Corporation
Anadarko E&P Company LP
Art Catering, Inc.
Ashland
BJ Services Company, USA
BP America Inc.
BP America Production Company
BP Company North America Inc.
BP Corporation North America Inc.
BP Corporation North America Inc. Savings Plan Investment Oversight Committee
BP Energy Company
BP Exploration (Alaska) Inc.
BP Global Special Products (America) Inc.
BP Holdings North America Limited
BP plc
BP Products North America Inc.
Brett Robinson Gulf Corporation
Cameron Corporation
Cameron International Corporation f/k/a Cooper Cameron Corporation
Cameron International Corporation d/b/a/ Cameron Systems Corporation
Center for Toxicology and Environmental Health L.L.C.
Chouest Shorebase Services, LLC
Clean Harbors
Core 4 Kebawk, LLC
Crowder/Gulf Joint Venture
Crowder Gulf Disaster Recovery
Diamond Offshore Company
DOF Subsea USA, Inc.
Drill-Quip, Inc.
Entrix, Inc.
Environmental Standards
EPS Corporation
ERG
ES&H Environmental Services
ESIS, Inc.
Exponent
Global Diving & Salvage, Inc.
Gulf Offshore Logistics, LLC
Gulf Offshore Logistics International,LLC
Halliburton Energy Services, Inc.
Halliburton Company
Hamilton Eng.
Hepaco
Hilcorp Energy Company
Hyundai Heavy Industries Co. Ltd, Inc.
Hyundai Motor Company
In Rem Vessels
Island Ventures II
Jupiter Insurance Limited
LaBorde Marine Services, LLC
Lloyd's of London
Marine Spill Response Corporation
MEG Energy Corp
M-I L.L.C.
M-I Drilling Fluids L.L.C.
M-I Swaco
Miller Environmental Group, Inc.

Mitsui & Co. (USA), Inc.
Mitsui & Co. Ltd.
Mitsui Oil Exploration Co. Ltd.
Moran Environmental Recovery, LLC
MOEX Offshore 2007 LLC
Moex USA Corporation
MV Monica  Ann
MV Pat Tilman
MV Damon B. Bankston
MV Max Chouest
MV Ocean Interventions
MV C. Express
MV Joe Griffin
MV Mr. Sidney
MV Hilda Lab
MV Sailfish
MV Seacor Washington
MV Seacor Vanguard
Nalco Holding Company
Nalco Finance Holdings LLC
Nalco Finance Holdings Inc.
Nalco Holdings LLC
Nalco Company
Nautical Ventures, LLC
Nautical Solutions, LLC
O'Brien's Response Management, Inc.
Ocean Runner, Inc.
Oceaneering International, Inc.
Offshore Cleaning Systems L.L.C.Offshore Service Vessels, LLC
Offshore Inland Marine & Oilfield Services, Inc.
Ranger Offshore, Inc.
Reel Pipe, LLC
Schlumberger, Ltd.
Seacor Marine, LLC
Seacor Marine, Inc.
Seacor Marine International, Inc.
Siemens Financial, Inc.
Seafairer Boat, LLC
State Street Bank and Trust Company
Subsea 7 LLC
The Response Group, Inc.
TestAmerica, Inc.,
Tiburon Divers, Inc.
Tidewater Marine LLC
Tiger Safety, LLC
TL Wallace
Transocean Inc.
Transocean Deepwater, Inc.
Transocean Drilling (U.S.A.) Inc.
Transocean Enterprise Inc.
Transocean Holdings Inc.
Transocean Holdings LLC
Transocean Ltd.
Transocean Offshore Deepwater Drilling, Inc.
Transocean Offshore USA, Inc.
Triton Asset Leasing GmbH
Triton Hungary Asset Management KFT
Triton Hungary Asset Management Limited Liability Company
USES/Construct Corps
Weatherford International Ltd.
Weatherford U.S. L.P
Worley Catastrophe Services, LLC
Worley Catastrophe Response, LLC

# EXHIBIT H

| Name: | | SSN or EIN: | | Claimant #: | |

| | GULF COAST CLAIMS FACILITY |
|---|---|
| **GCCF 2000-QB** | **QUICK PAYMENT FINAL CLAIM FORM** (For Business Claimants) |
| **FINAL PAYMENT AMOUNT** | **$25,000** |

## A. Instructions

To elect to be paid $25,000 in full settlement of all claims arising from the Deepwater Horizon "Incident" (as defined in Section C below), a Claimant must complete the Quick Payment Final Claim Form and sign the attached Release and Covenant Not to Sue.

1. **Basic information.** If pre-filled information is incorrect, make corrections directly on this Form. Be sure to enter the Employer Identification Number.

2. **Authorized Signatory.** Business claimants must identify who will sign on behalf of the business.

3. **Spousal information.** Spousal information is required for business claimants if the business is a sole proprietorship owned by a married individual, or if the business is jointly owned by a married couple.

4. **Payment instructions.** Provide instructions on how you want to receive the $25,000. NOTE: legally authorized garnishments, liens or similar forms of attachments relating to your claim will be honored and deducted from any payment.

5. **Understanding your rights.** This Quick Payment Final Claim Form and Release contain important information about your legal rights, including giving up your right to sue BP and other parties. You must read the information before signing. **Do not sign the Release unless you understand and agree to its terms.**

6. **Attorney Representation. If you are represented by an attorney in connection with your claim, do not submit this Form or sign the Release until you have conferred with your attorney about the decision to submit it and sign the Release.**

7. **Required signatures.** By signing this Quick Payment Final Claim Form and Release on pages 2 and 4, you are electing to receive the $25,000 Quick Final Payment. If the business is a sole proprietorship owned by you and you are married or if the business is jointly owned by you and your spouse, your spouse must sign in each place as well.

8. **Originals required.** Return this original signed Quick Payment Final Claim Form and Release using the postage prepaid envelope or by overnight delivery. Facsimiles, PDFs, or copies of a signature will not be accepted.

9. **No modifications.** Do not mark through or try to change any of the language in the Release. Doing so will mean your Release cannot be accepted and we will not be able to process your settlement.

## B. Business Claimant Information

| Claimant ID#: | | | Employer Identification #: | |
|---|---|---|---|---|
| **Claimant Name:** | | | | |

| **Authorized Business Signatory:** | First | Middle | Last | Title |
|---|---|---|---|---|

| **Claimant Address:** | Street | | | |
|---|---|---|---|---|
| | City | State | | Zip Code |
| | Parish/County | Country | | |

| **Telephone Number:** | ( \| \| \| ) \| \| \| - \| \| \| \| |
|---|---|

| **Spouse Name (if applicable):** | First | Middle | Last |
|---|---|---|---|

| **Spouse Address (if different from Claimant Address):** | Street | | | |
|---|---|---|---|---|
| | City | State | | Zip Code |
| | Parish/County | Country | | |

| GCCF 2000-QB | GULF COAST CLAIMS FACILITY QUICK PAYMENT FINAL CLAIM FORM (For Business Claimants) |
|---|---|
| **FINAL PAYMENT AMOUNT** | **$25,000** |

## C. Important Information About the Attached Release and Covenant Not to Sue; Acknowledgement and Election to Receive a $25,000 Quick Payment

The attached Release and Covenant Not to Sue ("Release") is a binding legal document.  By signing this document, you are forever waiving and releasing all claims that you may have against BP or any other party other than by shareholders of BP or other Released Parties for alleged violations of securities laws ("Securities Claim") in connection with the April 20, 2010 blowout of the Macondo Well, the sinking of Transocean's Deepwater Horizon drilling rig, and the subsequent oil Spill in the Gulf of Mexico (the "Incident").

You are under no obligation to accept the final payment offered to you by the Gulf Coast Claims Facility.  You are free to reject the final payment offered by the Gulf Coast Claims Facility and to pursue other means of compensation.  If you want to file a lawsuit regarding the Incident or make a claim against the Oil Spill Liability Trust Fund, do not sign this Release.

By signing the attached Release, you are forever giving up and discharging any rights which you may have for any costs, damages or other relief related to or arising from the Incident (excepting claims for Bodily Injury or Securities Claim), even if you are not currently aware of such costs or damages and even if such costs or damages arise in the future (i.e., additional oil impacts) or do not manifest themselves until the future.

By signing the attached Release, you acknowledge that you have read and understand the terms of the Release, and that you execute the release voluntarily and without being pressured or influenced by, and without relying upon, any statement or representation made by any person acting on behalf of BP or any other released party.  **If you are represented by an attorney in connection with your Claim, confer with your attorney before submitting this Claim and signing this Release.**

The Quick Pay option is intended to provide an expedited settlement mechanism for those claimants who believe that the amount offered by the Quick Pay fully and fairly resolves their claim.  Do not select the Quick Pay option if you believe you have a claim in an amount greater than the Quick Pay amount.  If you elect the Quick Pay amount, you will not be permitted to later seek additional amounts.

If the business is a sole proprietorship and you are the owner and you are married, or if the business is jointly owned by you and your spouse, both you and your spouse must sign the Release.  You and your spouse should not sign the Release unless you both intend to release all claims.

*   *   *

Claimant acknowledges that claimant has read and understands the information in this Section C.  Claimant elects to receive a $25,000 Quick Payment as a final settlement of all claims against any party in connection with the Incident (other than claims for Bodily Injury or Securities Claim).

Claimant consents to the use and disclosure by the GCCF and those assisting the GCCF of any information that it believes necessary and/or helpful to process claimant's claim for compensation and payment including any legitimate business purposes associated with administering the GCCF and providing adequate documentation for insurance coverage of responsible parties, and/or as otherwise required by law, regulation or judicial process.

_____          _____
Signature of Business Claimant's Authorized Signatory          Date


I acknowledge that I have read and understand the information in this Section C.  I consent to the claimant's election to receive a $25,000 Quick Payment as a final settlement of all claims of claimant against any party in connection with the Incident (other than claims for Bodily Injury or Securities Claim).

_____          _____
Spousal Signature (if applicable)                              Date

| Name: | SSN or EIN: | Claimant #: |
|---|---|---|

## RELEASE AND COVENANT NOT TO SUE
### (For Business Claimants)

| **FINAL PAYMENT AMOUNT** | **$25,000** |
|---|---|

1. In consideration of payment in the amount of $25,000, Claimant hereby releases and forever discharges, and covenants not to sue BP Exploration & Production Inc. ("BP") and the other Released Parties, including but not limited to the parties listed in Attachment A to this Release, for any losses, damages, costs, expenses, injuries, claims, causes of actions, liabilities, or other relief that Claimant has or may have, whether known or unknown, whether present or future, whether direct or indirect, whether legal or equitable, arising from or relating in any way to the April 20, 2010 blowout of the Macondo Well, the sinking of Transocean's Deepwater Horizon drilling rig, and the subsequent oil spill in the Gulf of Mexico (the "Incident") (collectively, "Claims"), provided however that this Release does not apply to claims (i) for bodily injury (including claims alleging a mental health injury) ("Bodily Injury") or (ii) by shareholders of BP or other Released Parties for alleged violations of securities laws ("Securities Claim").

2. Claimant also, on behalf of Claimant's spouse, heirs, beneficiaries, agents, estates, executors, administrators, personal representatives, subsidiaries, parents, affiliates, partners, limited partners, members, joint venturers, shareholders, predecessors, successors, assigns, insurers, and attorneys (collectively, "Affiliates"), hereby releases and forever discharges, and covenants not to sue BP and the other Released Parties for any Claims released by Claimant pursuant to Paragraph 1 above.   With regard to an insurer of the Claimant, notwithstanding anything to the contrary in the foregoing, the execution of this Release by Claimant shall not release the claims of an insurer of Claimant if and only if the Claimant has disclosed in writing on Claimant's  Full Review Final Claim Form for Final Payment or Emergency Advance Payment Claim Form submitted to the Gulf Coast Claims Facility the fact of a payment, and the amount of the payment, by the insurer to Claimant.

3. This Release applies to all Claims regardless of the legal or equitable theory (including legal and equitable theories under federal, state, local, and international law, and including without limitation statutory law, regulation, common law, maritime law, strict liability, negligence, gross negligence, punitive damages, nuisance, trespass, and all other legal and equitable theories), whether existing now or arising in the future, arising out of or in any way relating to the Incident, provided however that this Release does not apply to claims for Bodily Injury or Securities Claim.

4. Released Parties means anyone who is or could be responsible or liable in any way for the Incident or any damages related thereto, whether a person, company or governmental entity, including (but not limited to) BP, other potentially responsible or liable parties, including but not limited to the parties listed in Attachment A to this Release, the federal Oil Spill Liability Trust Fund and any state or local fund, and each of their respective Affiliates as defined above.

5. Claimant represents and warrants that Claimant (i) has authority to execute this Release; and (ii) has not sold or otherwise transferred or assigned any of the Claims, or any interests in such Claims.

6. Claimant represents and warrants that Claimant has not received any payment from any insurer or other party (other than BP or the GCCF) in connection with the Incident, other than payments disclosed on the Full Review Final Claim Form for Final Payment. However, the representation and warranty contained in this section (6) is not applicable to a Claimant electing to submit a Quick Payment Final Claim Form and receive a Quick Payment.

7. Claimant will dismiss with prejudice within 10 days of executing this Release any litigation concerning the Incident (other than litigation alleging only Bodily Injury or Securities Claim) filed by or on behalf of Claimant against BP or any other Released Parties.  Claimant also will withdraw (the obligation to withdraw is satisfied by affirmatively declining to participate if and when the Claimant receives any communication giving Claimant the option of participating or not participating in a class action or similar procedural device) from any existing and will not join any new class actions or similar procedural devices concerning or relating to the Incident (other than class actions or similar procedural devices alleging only Bodily Injury or Securities Claim).

8. This Release is not intended to prevent any of the Released Parties from exercising their respective rights of contribution, subrogation, or indemnity under the Oil Pollution Act of 1990 ("OPA") or any other law.  As this Release is fully and completely resolving, together with all other Claims, Claimant's claim under OPA, BP is hereby subrogated to any and all rights that Claimant has arising from the Incident.

9. The payment to Claimant is made without any admission of liability or wrongdoing, or any acknowledgment that the law recognizes any allegation referenced herein, by BP or any other Released Party.

10. The provisions of this Release and all questions with respect to the construction and enforcement thereof and the rights and liabilities hereto shall be governed by, and construed and enforced in accordance with, the laws of the state of residence of the Claimant at the time of signing this Release without regard to conflicts of laws principles.

11. This Release supersedes any and all other agreements, written or oral, between BP and Claimant with respect to such subject matter of this Release.

12. If there is no signature on the line below for Claimant's Spouse, Claimant represents and warrants that Claimant is not married.

| Name: | | SSN or EIN: | | Claimant #: | |
|---|---|---|---|---|---|

## RELEASE AND COVENANT NOT TO SUE
### (For Business Claimants)

| **FINAL PAYMENT AMOUNT** | **$25,000** |
|---|---|

### Release and Covenant Not to Sue – Signature by the Claimant

As the authorized signatory of the claimant set forth in Section B of the attached Quick Payment Final Claim, I am signing this Release and Covenant Not to Sue:

| **Signature:** | |
|---|---|
| **Printed Name:** | |
| **Title:** | |
| **Date:** | (Month/Day/Year):  _____/_____/_____ |

### Release and Covenant Not to Sue – Signature by the Claimant's Spouse (if applicable)

As the spouse of the individual signing above, I am signing this Release and Covenant Not to Sue:

| **Signature:** | |
|---|---|
| **Printed Name:** | |
| **Date:** | (Month/Day/Year):  _____/_____/_____ |

## PAYMENT INSTRUCTIONS

Indicate either a wire transfer or check payment by checking the appropriate box below and completing the corresponding details. **Payments will be reduced as necessary to satisfy legally authorized garnishments, liens or similar forms of attachments that have been presented to the GCCF.** The GCCF will report annually to federal and state taxing authorities, using a form 1099 or state form equivalent, for certain payments made. The GCCF will send you a copy of that form, but cannot give you tax advice regarding any payment issued to you. You should consult with your own tax advisor to determine the impact of any payment you receive from the GCCF on your individual tax situation.

| ☐ | **Wire the payment to the following account:** | |
|---|---|---|
| | Bank Name | |
| | Bank Mailing  Address | |
| | Bank Telephone Number | |
| | Bank Account Name: *If the Account Name for your bank account differs from your name or the name of your business, please also explain the reason for the difference* | |
| | Bank ABA/Routing Number: | Bank Account Number: |
| ☐ | **Mail a check to the following address:** | |
| | Street | |
| | City | State | Zip Code |
| | Parish/County | Country |

Attachment A

Aerotek, Inc.
Ameri-Force, Inc.
Anadarko Petroleum Company
Anadarko Petroleum Corporation
Anadarko E&P Company LP
Art Catering, Inc.
Ashland
BJ Services Company, USA
BP America Inc.
BP America Production Company
BP Company North America Inc.
BP Corporation North America Inc.
BP Corporation North America Inc. Savings Plan Investment Oversight Committee
BP Energy Company
BP Exploration (Alaska) Inc.
BP Global Special Products (America) Inc.
BP Holdings North America Limited
BP plc
BP Products North America Inc.
Brett Robinson Gulf Corporation
Cameron Corporation
Cameron International Corporation f/k/a Cooper Cameron Corporation
Cameron International Corporation d/b/a/ Cameron Systems Corporation
Center for Toxicology and Environmental Health L.L.C.
Chouest Shorebase Services, LLC
Clean Harbors
Core 4 Kebawk, LLC
Crowder/Gulf Joint Venture
Crowder Gulf Disaster Recovery
Diamond Offshore Company
DOF Subsea USA, Inc.
Drill-Quip, Inc.
Entrix, Inc.
Environmental Standards
EPS Corporation
ERG
ES&H Environmental Services
ESIS, Inc.
Exponent
Global Diving & Salvage, Inc.
Gulf Offshore Logistics, LLC
Gulf Offshore Logistics International,LLC
Halliburton Energy Services, Inc.
Halliburton Company
Hamilton Eng.
Hepaco
Hilcorp Energy Company
Hyundai Heavy Industries Co. Ltd, Inc.
Hyundai Motor Company
In Rem Vessels
Island Ventures II
Jupiter Insurance Limited
LaBorde Marine Services, LLC
Lloyd's of London
Marine Spill Response Corporation
MEG Energy Corp
M-I L.L.C.
M-I Drilling Fluids L.L.C.
M-I Swaco
Miller Environmental Group, Inc.

Mitsui & Co. (USA), Inc.
Mitsui & Co. Ltd.
Mitsui Oil Exploration Co. Ltd.
Moran Environmental Recovery, LLC
MOEX Offshore 2007 LLC
Moex USA Corporation
MV Monica  Ann
MV Pat Tilman
MV Damon B. Bankston
MV Max Chouest
MV Ocean Interventions
MV C. Express
MV Joe Griffin
MV Mr. Sidney
MV Hilda Lab
MV Sailfish
MV Seacor Washington
MV Seacor Vanguard
Nalco Holding Company
Nalco Finance Holdings LLC
Nalco Finance Holdings Inc.
Nalco Holdings LLC
Nalco Company
Nautical Ventures, LLC
Nautical Solutions, LLC
O'Brien's Response Management, Inc.
Ocean Runner, Inc.
Oceaneering International, Inc.
Offshore Cleaning Systems L.L.C.Offshore Service Vessels, LLC
Offshore Inland Marine & Oilfield Services, Inc.
Ranger Offshore, Inc.
Reel Pipe, LLC
Schlumberger, Ltd.
Seacor Marine, LLC
Seacor Marine, Inc.
Seacor Marine International, Inc.
Siemens Financial, Inc.
Seafairer Boat, LLC
State Street Bank and Trust Company
Subsea 7 LLC
The Response Group, Inc.
TestAmerica, Inc.,
Tiburon Divers, Inc.
Tidewater Marine LLC
Tiger Safety, LLC
TL Wallace
Transocean Inc.
Transocean Deepwater, Inc.
Transocean Drilling (U.S.A.) Inc.
Transocean Enterprise Inc.
Transocean Holdings Inc.
Transocean Holdings LLC
Transocean Ltd.
Transocean Offshore Deepwater Drilling, Inc.
Transocean Offshore USA, Inc.
Triton Asset Leasing GmbH
Triton Hungary Asset Management KFT
Triton Hungary Asset Management Limited Liability Company
USES/Construct Corps
Weatherford International Ltd.
Weatherford U.S. L.P
Worley Catastrophe Services, LLC
Worley Catastrophe Response, LLC

# EXHIBIT I

| GCCF 2000-F | **GULF COAST CLAIMS FACILITY**<br>**FULL REVIEW FINAL PAYMENT CLAIM FORM** |

This Full Review Final Payment Claim Form is to be completed for individuals or businesses who wish to receive a **Full Review Final Claim Payment** for damages suffered as a result of the Deepwater Horizon incident on April 20, 2010, and resulting oil discharges (the "Spill").

**A claim for a Full Review Final Payment provides for a complete assessment of <u>PAST</u> and <u>FUTURE</u> (if any) damages sustained as a result of the Spill. Acceptance of the Gulf Coast Claims Facility ("GCCF") Final Payment Offer for final payment of a Full Review Final Payment Claim will require you to sign a Release and Covenant not to Sue. For your review, a sample of the Release and Covenant Not to Sue that you will be required to sign if you accept the GCCF's Final Payment Offer accompanies this Full Review Final Claim Form. If you accept that Final Payment Offer when made and sign the Release, you will be forever waiving and releasing all claims that you may have against BP or any other party other than claims for physical or mental health injury ("Bodily Injury") or by shareholders of BP or other Released Parties for alleged violations of Securities laws ("Securities Claim") in connection with the Spill. If you accept a Final Payment Offer for a physical injury or death claim you will receive a copy of a Release of Bodily Injury Claims which will release all Bodily Injury claims related to the Spill. You are under no obligation to accept the GCCF's Final Payment Offer. You are free to reject the GCCF's Final Payment Offer and to participate in other legal actions associated with the Spill, or to submit any claim for payment to the Coast Guard's National Pollution Funds Center (the "Coast Guard").**

To learn more about filing a claim for a Full Review Final Payment and for a copy of the Protocol for Interim and Final Claims, go to www.gulfcoastclaimsfacility.com, call toll free at 1-800-916-4893, or visit a GCCF Site Office.

| **Send me all future communications and notices in the following language** (check only one box) |

English ☐          Spanish ☐          Vietnamese ☐          Khmer ☐

| **Indicate whether you have previously filed a claim** (check only one box) |

I previously filed a Claim with the GCCF ☐          I am a new Claimant to the GCCF ☐

| **SECTION I.  INSTRUCTIONS** |

1.  If you previously filed a claim for Emergency Advance Payment, you MUST indicate your existing GCCF Claimant Identification Number at the top of each page of this Form.

    If this is the first claim you are submitting to the GCCF, the GCCF will assign you a Claimant Identification Number. **That Claimant Identification Number will allow you to track the status of your claim online and will be your Claimant Identification Number throughout the claims process.**

    You can get information about your claim online at www.gulfcoastclaimsfacility.com, by phone toll free at 1-800-916-4893, or in person at a GCCF Claims Site Office.

2.  If you are an Individual Claimant, enter your Social Security Number in the box at the top of each page. If you are a Business Claimant, enter your Employer Identification Number in the box at the top of each page.

3.  The Claimant must print the name of the Individual or Business Claimant and sign and date the Claim Form in Section VIII.

4.  You may fill out and submit a Full Review Final Payment Claim Form and provide supporting documents to the GCCF online by visiting the GCCF's website at www.gulfcoastclaimsfacility.com, or by mail, email, overnight delivery, fax or in person. If you submit your Full Review Final Payment Claim Form online, you must submit all supporting documentation within five (5) days of your online filing. If you submit your Full Review Final Payment Claim Form by mail, email, overnight delivery, fax or in person, you must submit all supporting documentation with your Claim Form. Claim applications and supporting documentation that are submitted in person are not retained at the GCCF Claims Site Offices. These materials are sent to the GCCF processing center in Dublin, Ohio, or are scanned and sent to the processing center via the internet.

## SECTION II.  CLAIMANT INFORMATION

### II.A.  Individual Claimant Information

Provide the following information about the person who was affected or injured by the Spill.  **All Individual Claimants must complete each question in this section.**  (If you are filing for a business, skip this section and proceed to Section II.B)

| 1. | **Name:** | Last | First | Middle Initial |
|---|---|---|---|---|

| 2. | **Current Address:** | Street | | |
|---|---|---|---|---|
| | | City | State | Zip Code |
| | | Parish/County | Country | |

| 3. | **Home Phone Number:** | (   )     - |
|---|---|---|

| 4. | **Cell Phone Number:** | (   )     - |
|---|---|---|

| 5. | **Email Address:** | |
|---|---|---|

| 6. | **Date of Birth:** | |
|---|---|---|

| 7. | **Social Security Number:** ☐ | |   -   - |
|---|---|---|---|
| | *or* | | |
| | **Individual Taxpayer Identification Number:** ☐ | | |

| 8. | **Other Name Used (Maiden Name, Previous Married Name(s), Aliases):** | |
|---|---|---|

**Provide complete information about your employment status since January 1, 2010** (add more pages if necessary):

| 9. | **Current Employer:** | Name | Period of employment |
|---|---|---|---|
| | | Street | _____ to: _____ |
| | | City | State | Zip Code |
| | | Parish/County | Country |
| | | Employer Identification Number (EIN)   - | *(from your W-2 or 1099 form)* |

| | **Other/ Previous Employer:** | Name | Period of employment |
|---|---|---|---|
| | | Street | _____ to: _____ |
| | | City | State | Zip Code |
| | | Parish/County | Country |
| | | Employer Identification Number (EIN)   - | *(from your W-2 or 1099 form)* |

**10. Does the Claimant own any part of a business listed above and/or serve as an officer in the business?  If so, name the applicable business and check either or both boxes below and specify the percentage of ownership and/or the office held:**

**Name of business:** _____

☐ Owner *(specify percentage)*:_____    ☐ Officer *(specify title)*:_____

## II.B. Business Claimant Information

Provide information in Section II.B. **ONLY if you are completing this Form for a business that was affected by the Spill.**

### II.B.1. Information about the Business

**11. Name of Business:**

**12. Type of Business:**

**13. Business Address:**

| Street | | |
|---|---|---|
| City | State | Zip Code |
| Parish/County | Country | |

**14. Phone Number:** ( | | | ) | | | | - | | | | |

**15. Website Address:**

**16. Other Business Name:**

**17. Name of Business on Federal Income Tax Return:**

**18. Employer Identification Number (EIN):** ☐

*or*

Check here if EIN is also your Social Security Number ☐

**19. Date and Place Founded/Incorporated:** Date:_____ Place:_____

### II.B.2. Information about the Authorized Business Representative

**20. Name:**

| Last | First | Middle Initial |
|---|---|---|

**21. Title:**

**22. Home Address:** (if different from Business Address)

| Street | | | |
|---|---|---|---|
| City | State | Zip Code | Country |

**23. Phone Number:** ( | | | ) | | | | - | | | | |

**24. Cell Phone Number:** ( | | | ) | | | | - | | | | |

**25. Email Address:**

**26. Social Security Number:** ☐

*or*

Individual Taxpayer Identification Number: ☐

## SECTION III.  ATTORNEY INFORMATION

Complete this section only if you are represented by a lawyer for this Full Review Final Payment Claim.  **If you complete this section, all communications from the GCCF will be with the lawyer you have identified unless your lawyer instructs us otherwise in writing. You must complete each question in this section if you are represented by a lawyer.  Previous information provided about Attorney Representation will <u>not</u> apply to this Full Review Final Payment Claim.**

| **27.  Lawyer Name:** | Last | First | Middle Initial |
|---|---|---|---|
| **28.  Law Firm Name:** | | | |

| **29.  Law Firm Address:** | Street | | | |
|---|---|---|---|---|
| | City | State | Zip Code | Country |

**30.  Law Firm Phone Number:**   ( |__|__| ) |__|__|__| - |__|__|__|__|

**31.  Law Firm Email Address:**

Case 2:10-md-02179-CJB-DPC Document 963-1 Filed 01/10/11 Page 80 of 116

## SECTION IV. CLAIM INFORMATION FOR FULL REVIEW FINAL PAYMENT

Check which Claim Type(s) you want to submit. Enter the amount you are claiming for each Claim Type. If you have previously received a payment, do not include that amount in the amount you are requesting. **All Claimants must complete this Section. You must indicate each Claim Type that you want considered in your Final Payment Offer below; you will receive only one Final Payment Offer based on an evaluation of all Claim Types indicated below.**

**You must provide documentation or evidence of the damage or injury for each Claim Type checked below. The Gulf Coast Claims Facility Document Requirements accompanies this Full Review Final Payment Claim Form and lists the REQUIRED supporting documentation you must submit to support each Claim Type.** For each Claim Type you submit, you must provide documentation to support your Claim. You must complete this form and submit the completed form to the GCCF along with all supporting documentation. (You are not required to resubmit any documentation you previously submitted with an Emergency Advance Payment Claim or Interim Payment Claim.)

## IV.A. Claims for Removal and Clean Up Costs

☐    CLAIMANT IS SUBMITTING A REMOVAL AND CLEAN UP COSTS CLAIM FOR $_____

Check the box above and enter the amount of your claim if you are seeking to recover costs incurred to remove oil discharged by the Spill and/or costs to prevent, minimize or mitigate oil pollution when there was a substantial threat of a discharge of oil due to the Spill. You can claim costs for both preventative and clean up measures.

If you are claiming multiple removal and clean up actions and need additional pages, photocopy this page before filling it in and attach the copy to this Claim Form for submission. Make as many copies as you need.

If you need more space to answer any questions, please use a blank page and attach it to this Claim Form for submission.

| (A.1) | **Was the Removal and Clean Up action taken approved by the Federal On-Scene Coordinator and/or consistent with the National Contingency Plan?** | ☐ Yes    ☐ No |
|---|---|---|

**(A.2)    Provide the address where the Removal and Clean Up action took place:**

Street

City                                        State                            Zip Code

Parish/County

**(A.3)    Provide a description of the Removal and Clean Up action:**

## IV.B.  Claims for Real or Personal Property Damage

☐    CLAIMANT IS SUBMITTING A REAL OR PERSONAL PROPERTY DAMAGE CLAIM FOR $_____

Check the box above and enter the amount of your claim if you are seeking damages for any physical damage to real, personal or business property that you own or lease.

If you are an owner of a property that you lease to someone else, you must notify the lessee that you are submitting a claim.  If you lease property from someone else, you must notify the owner that you are filing a claim.

If you suffered damage to more than one piece of property and need additional pages, photocopy this page before filling it in and attach the copy to this Claim Form.  Make as many copies as you need.  Identify the type of Personal Property that was damaged or destroyed (*i.e.*, boat, equipment, machinery) and, if applicable, the make, model, year and identification number.

If you need more space to answer any questions, please use a blank page and attach it to this Claim Form for submission.

**(B.1)**    **If you are claiming damage to Real Property, provide the address of the property.  If you are claiming damage to Personal Property, provide the address where the damage occurred:**

Street

| City | State | Zip Code |

Parish/County

**(B.2)**    **If you are claiming damages to Personal Property, list the type of Personal Property that was damaged (*i.e.* boat, equipment, machinery) and provide the additional information, as applicable:**

Type of Personal Property

| Make | Model |

| Year | Identification Number |

**(B.3)**    **Describe your relationship to the Real or Personal Property:**    ☐ Owner    ☐ Lessor

**(B.4)**    **Provide a description of the property damage sustained as a result of the Spill, and how the damage occurred:**

| **(B.5)**    **Were you working for the Vessels of Opportunity at the time of the property damage sustained due to the Spill?** | ☐ Yes    ☐ No |

## IV.C.  Claims for Lost Earnings or Profits

☐    CLAIMANT IS SUBMITTING A LOST EARNINGS OR PROFITS CLAIM FOR $_____

Check the box above and enter the amount of your claim if you are seeking damages for lost earnings or profits due to the Spill.  Business Claimants seeking lost earnings or profits must complete questions C.8.– C.15.

If you need more space to answer any questions, please use a blank page and attach it to this Claim Form for submission.

---

### IV.C.1.  Questions for Individual Claimants Seeking Lost Earnings or Profits

**(C.1)**    **State the occupation and job title you had at the time of the Spill:**

Occupation:                                                  Title:

**(C.2)**    **Describe the nature of business of your employer at the time of the Spill:**

**(C.3)**    **State the total lost earnings or profits you have suffered as a result of the Spill to date and describe how you have calculated these losses:**

**(C.4)**    **Describe in detail the efforts you have made to find work or additional work since the Spill:**

**(C.5)**    **State the amount of any job hunting expenses you have incurred since the Spill:**          $_____

**(C.6)**    **Provide a description of the loss you sustained as a result of the Spill and how the Spill caused the loss:**

**Lost my Job:**      ☐          **Work Hours Reduced:**      ☐          **Pay/Tips Reduced:**      ☐

**(C.7)**    **Provide the name and address of your Employer at the time of the Spill:**

Name

Street

City                                                  State                          Zip Code

Parish/County

| **IV.C.2.  Questions for Business Claimants Seeking Lost Earnings or Profits** |
|---|

**(C.8)**   State the sources of income or types of customers for the business at the time of the Spill:

**(C.9)**   Describe the nature of business at the time of the Spill:

**(C.10)**   Describe in detail any efforts you have made to increase revenues or reduce costs since the Spill:

**(C.11)**   State the total amount in operating costs you have saved (or were able to avoid) as a result of reduced operations since the Spill:          $_____

**(C.12)**   State the total loss in revenues the business has suffered as a result of the Spill to date and how you have calculated those losses:

**(C.13)**   State the total loss in profits the business has suffered as a result of the Spill to date and how you have calculated those losses:

**(C.14)**   Provide a description of the loss the business sustained as a result of the Spill and how the loss occurred:

**(C.15)**   Provide the business address where the loss occurred:

| Street | | |
|---|---|---|
| City | State | Zip Code |
| Parish/County | | |

Case 2:10-md-02179-CJB-DPC Document 963-1 Filed 01/10/11 Page 84 of 116

---

**IV.D. Claims for Loss of Subsistence Use of Nature Resources** (Individual Claimants only)

☐    CLAIMANT IS SUBMITTING A LOSS OF SUBSISTENCE USE OF NATURAL RESOURCES CLAIM FOR $_____

Check the box above and enter the amount of your claim if you suffered damages to your ability to rely, without purchase, on natural resources for food, shelter, clothing, medicine or other minimum necessities of life because of the Spill. Identify below in Section D.2 the natural resource that you relied on for subsistence prior to the Spill, and how it has been affected by the Spill.

If you need more space to answer any questions, please use a blank page and attach it to this Claim Form for submission.

**(D.1)**    **Provide a detailed description of the loss of subsistence as a result of the Spill:**

**(D.2)**    **Identify the natural resource that you relied on for subsistence prior to the Spill and how it has been affected by the Spill:**

**(D.3)**    **Describe how frequently you use this natural resource for subsistence and its approximate monthly value to you:**

Case 2:10-md-02179-CJB-DPC   Document 963-1   Filed 01/10/11   Page 85 of 116

## IV.E.  Claims for Physical Injury or Death (Individual Claimants only)

☐    CLAIMANT IS SUBMITTING A PHYSICAL INJURY OR DEATH CLAIM FOR $_____

Check the box above and enter the amount of your claim if you are seeking damages for physical injury or death proximately caused by the Spill or the explosion and fire associated with the Deepwater Horizon incident on April 20, 2010, or by the clean-up of the Spill.

If you need more space to answer any questions, please use a blank page and attach it to this Claim Form for submission.

**(E.1)**  **Were you working for the Vessels Of Opportunity at the time your physical injury occurred?**   ☐ Yes   ☐ No

**(E.2)**  **Were you working on the Removal and Clean Up actions at the time your physical injury occurred?**   ☐ Yes   ☐ No

**(E.3)**  **Provide the date you were first injured and whether the injury is resolved or ongoing:**   Date   ☐ Resolved   ☐ Ongoing

**(E.4)**  **If you are seeking damages for death, provide the name of the decedent and the date of the death:**   Name   Date

**(E.5)**  **Provide a brief description of the physical injury sustained as a result of the Spill, and how the injury occurred:**

**(E.6)**  **Provide the address where the injury was experienced:**

Street

City                              State                          Zip Code

Parish/County

## SECTION V.  COLLATERAL SOURCE COMPENSATION

**All claimants must complete this section.**  You must complete this section to provide information on unemployment benefits, private insurance or any other replacement income received relating to any Claim Type.  Legally authorized garnishments, liens, or similar forms of attachments received relating to your claim will be honored and deducted from any payment.

| | |
|---|---|
| **32. Have you received any compensation from BP for your losses due to the Spill?** | ☐ Yes  ☐ No |
| **33. Total amount of compensation received from BP for your losses due to the Spill:** | $ |
| **34. Have you received any compensation from GCCF for your losses due to the Spill?** | ☐ Yes  ☐ No |
| **35. Total amount of compensation from GCCF for your losses due to the Spill:** | $ |
| **36. Have you received compensation for state unemployment benefits?** | ☐ Yes  ☐ No |
| **37. For what period of time did you receive compensation for state unemployment benefits?** | |
| **38. Total amount of unemployment benefits received:** | $ |
| **39. Have you received compensation from private insurance for damages due to the Spill?** | ☐ Yes  ☐ No |
| **40. Name of Carrier or Provider:** | |
| **41. Account or Policy Number:** | |
| **42. For what period of time did you receive compensation from private insurance?** | |
| **43. Total amount of insurance benefits received:** | $ |
| **44. Have you received any other replacement income, such as severance pay?** | ☐ Yes  ☐ No |
| **45. For what period of time did you receive this other replacement income?** | |
| **46. If you are still receiving this other replacement income, when will these benefits end?** | |
| **47. Total amount of other replacement income received:** | $ |

## SECTION VI.  REPRESENTATIVE CLAIMANT INFORMATION

You must complete each question in this section if you are filling out this Claim Form for an individual claimant affected or injured by the Spill who is deceased, is a minor, or is incompetent or legally incapacitated and unable to complete the Claim Form for himself or herself. (You must provide proof that you are a duly appointed Representative.) See Section VII of the Gulf Coast Claims Facility Document Requirements for the documents required to establish authority to act as the Representative Claimant or visit the website at www.gulfcoastclaimsfacility.com.  **Business claimants do not complete this section.**

| | |
|---|---|
| **48.  Reason person affected or injured by the Spill is unable to complete the Claim Form:** | |
| **49.  Your relationship to Claimant:** | ☐ Spouse  ☐ Parent  ☐ Child<br>☐ Sibling  ☐ Administrator  ☐ Executor<br>☐ Other (specify): _____ |

### Provide *your* name and contact information below.

| | |
|---|---|
| **50.  Last Name:** | |
| **51.  First Name:** | |
| **52.  Middle Name:** | |
| **53.  Current Address:** | Street<br><br>City     State     Zip Code     Country |
| **54.  Home Phone Number:** | ( _ _ _ ) _ _ _ _ - _ _ _ _ |
| **55.  Cell Phone Number:** | ( _ _ _ ) _ _ _ _ - _ _ _ _ |
| **56.  Email Address:** | |
| **57.  Social Security Number:** ☐<br>*or*<br>**Individual Taxpayer Identification Number:** ☐ | _ _ _ - _ _ - _ _ _ _<br><br>_ _ _ - _ _ - _ _ _ _ |
| **58.  Type of proof submitted that you are a duly appointed Representative:** | |

Case 2:10-md-02179-CJB-DPC   Document 963-1   Filed 01/10/11   Page 88 of 116

## SECTION VII.  METHOD OF PAYMENT

Complete this section to choose how you would like to receive your payment.  You may choose to receive payment by check or by a direct wire deposit/electronic fund transfer into your account.   Payments made by wire will be made from the New York, NY area.   Based on your selection, complete the appropriate section below.  Do not complete both sections. Legally authorized garnishments, liens, or similar forms of attachments relating to your claim will be honored and deducted from your payment. The GCCF will report annually to federal and state taxing authorities, using a form 1099 or state form equivalent, for certain payments made. The GCCF will send you a copy of that form, but cannot give you tax advice regarding any payment issued to you. You should consult with your own tax advisor to determine the impact of any payment you receive from the GCCF on your individual tax situation.

### VII.A.  Election to Receive Payment by Wire Transfer

Complete this section if you want to receive your payment by direct deposit/electronic fund transfer.  If you want to receive your payment by check, do not complete this section.

| | | |
|---|---|---|
| **59.  Do you want to receive your payment by direct deposit/electronic fund transfer?** | ☐ Yes   ☐ No | |

**60.  Bank to Which Wire is to be Sent:**

| Bank Name | | | |
|---|---|---|---|
| Street | | | |
| City | State | Zip Code | Country |

**61.  Bank Telephone Number:**

**62.  Bank ABA/Routing Number:**

**63.  Account Name:**

*If the Account Name for your bank account differs from your name or the name of your business, please also explain the reason for the difference in the box to the right.*

**64.  Account Number:**

### VII.B.  Election to Receive Payment by Check

Complete this section if you want to receive your payment by check.  Checks will be sent by overnight courier and will be made payable to the individual or business claimant who completes this Claim Form.  (Be sure to provide your Street Address for overnight delivery.)  If you want to receive your payment by wire transfer, do not complete this section.

**65.  Do you want to receive your payment by check?**      ☐ Yes      ☐ No

**66.  If Yes, and you are an individual who does not have your own bank account, please review the Notice of Check Cashing Options accompanying this Claim Form.  After reviewing this Notice, elect whether you prefer to receive one check or multiple checks:**      ☐ One Check   ☐ Multiple Checks

Provide the address to which you would like the check(s) to be sent in the space below, if it differs from the address provided in Section II.

**67.  Payment Address:**

| Street | | | |
|---|---|---|---|
| City | State | Zip Code | Country |

Case 2:10-md-02179-CJB-DPC   Document 963-1   Filed 01/10/11   Page 89 of 116

## SECTION VIII.  SIGNATURE

I certify that the information provided in this Full Review Final Payment Claim Form is true and accurate to the best of my knowledge, and I understand that false statements or claims made in connection with this Full Review Final Payment Claim Form may result in fines, imprisonment, and/or any other remedy available by law to the Federal Government, and that suspicious claims will be forwarded to federal, state, and local law enforcement agencies for possible investigation and prosecution.

By submitting this Full Review Final Payment Claim Form, I consent to the use and disclosure by the Gulf Coast Claims Facility ("GCCF") and those assisting the GCCF of any information about me that it believes necessary and/or helpful to process my claim for compensation and any payment resulting from that claim, including any appeal of that payment, legitimate business purposes associated with administering the GCCF and providing adequate documentation for insurance coverage of responsible parties, and/or as otherwise required by law, regulation or judicial process.  My consent also includes release to the GCCF by the relevant state unemployment compensation agency of any information regarding any unemployment benefits I received for periods of unemployment on or after April 20, 2010.

| Signature: | | Date: | ___/___/_____<br>(Month/Day/Year) |
| Printed Name: | First                Middle | | Last |
| Title, if a business: | | | |

| Has anyone, other than a family member or an attorney you identified in Section III, assisted you in the preparation of this Claim Form? | ☐ Yes   ☐ No |
| Name of individual and company, if applicable: | |

## How to Submit this Claim Form

Submit this Full Review Final Payment Claim Form and the supporting documents to the GCCF by one of the following methods:

| **Regular Mail:** | **Overnight, Certified or Registered Mail:** | **Fax:** |
| Gulf Coast Claims Facility | Gulf Coast Claims Facility | 1-866-682-1772 |
| Kenneth R. Feinberg, Administrator | Kenneth R. Feinberg, Administrator | |
| P.O. Box 9658 | 5151 Blazer Pkwy., Suite A | **Email Attachment:** |
| Dublin, OH  43017-4958 | Dublin, OH  43017 | info@gccf-claims.com |

When attaching your supporting documents, be sure to provide the appropriate identification number (your Claimant Identification Number, Social Security Number, or other Tax Identification Number).  Attach all supporting documents to the Claim Form and submit your claim to the GCCF.

**THIS PAGE INTENTIONALLY LEFT BLANK**

# EXHIBIT J

# GULF COAST CLAIMS FACILITY
## SAMPLE RELEASE and COVENANT NOT TO SUE

This is a sample of the Release and Covenant Not To Sue that you will be required to sign if you accept the GCCF Offer of Final Payment. DO NOT SIGN THIS SAMPLE RELEASE. You will receive a copy of the Release and Covenant Not to Sue for you to sign with your Offer of Final Payment.

<u>Important Information About The Attached
Release And Covenant Not To Sue</u>

The attached Release and Covenant Not to Sue ("Release") is a binding legal document. By signing this document, you are forever waiving and releasing all claims that you may have against BP or any other party other than claims for Bodily Injury (including claims alleging a mental health injury) ("Bodily Injury") or by shareholders of BP or other Released Parties for alleged violation of Securities laws ("Securities Claim") in connection with the April 20, 2010 blowout of the Macondo Well, the sinking of Transocean's Deepwater Horizon drilling rig, and the subsequent oil spill in the Gulf of Mexico (the "Incident").

You are under no obligation to accept the final payment offered to you by the Gulf Coast Claims Facility. You are free to reject the final payment offered by the Gulf Coast Claims Facility and to pursue other means of compensation.  If you want to file a lawsuit regarding the Incident or make a claim against the Oil Spill Liability Trust Fund, do not sign this Release.

By signing the attached Release, you are forever giving up and discharging any rights which you may have for any costs, damages or other relief related to or arising from the Incident (excepting claims for Bodily Injury or Securities Claim), even if you are not currently aware of such costs or damages and even if such costs or damages arise in the future (i.e., additional oil impacts) or do not manifest themselves until the future.

By signing the attached Release, you acknowledge that you have read and understand the terms of the Release, and that you execute the Release voluntarily and without being pressured or influenced by, and without relying upon, any statement or representation made by any person acting on behalf of BP or any other released party.

If you are married, both you and your spouse must sign the Release.  You and your spouse should not sign the Release unless you both intend to release all claims.

**If you are represented by an attorney in connection with your claim, confer with your attorney about your options before signing this Release.**

## RELEASE AND COVENANT NOT TO SUE

1. In consideration of payment in the amount of _____, Claimant hereby releases and forever discharges, and covenants not to sue BP Exploration & Production Inc. ("BP") and the other Released Parties, including but not limited to the parties listed in Attachment A to this Release, for any losses, damages, costs, expenses, injuries, claims, causes of actions, liabilities, or other relief that Claimant has or may have, whether known or unknown, whether present or future, whether direct or indirect, whether legal or equitable, arising from or relating in any way to the April 20, 2010 blowout of the Macondo Well, the sinking of Transocean's Deepwater Horizon drilling rig, and the subsequent oil spill in the Gulf of Mexico (the "Incident") (collectively, "Claims"), provided however that this Release does not apply to claims (i) for bodily injury (including claims alleging a mental health injury) ("Bodily Injury") or (ii) by shareholders of BP or other Released Parties for alleged violations of securities laws ("Securities Claim").

2. Claimant also, on behalf of Claimant's spouse, heirs, beneficiaries, agents, estates, executors, administrators, personal representatives, subsidiaries, parents, affiliates, partners, limited partners, members, joint venturers, shareholders, predecessors, successors, assigns, insurers, and attorneys (collectively, "Affiliates"), hereby releases and forever discharges, and covenants not to sue BP and the other Released Parties for any Claims released by Claimant pursuant to Paragraph 1 above.   With regard to an insurer of the Claimant, notwithstanding anything to the contrary in the foregoing, the execution of this Release by Claimant shall not release the claims of an insurer of Claimant if and only if the Claimant has disclosed in writing on Claimant's  Full Review Final Claim Form for Final Payment or Emergency Advance Payment Claim Form submitted to the Gulf Coast Claims Facility the fact of a payment, and the amount of the payment, by the insurer to Claimant.

3. This Release applies to all Claims regardless of the legal or equitable theory (including legal and equitable theories under federal, state, local, and international law, and including without limitation statutory law, regulation, common law, maritime law, strict liability, negligence, gross negligence, punitive damages, nuisance, trespass, and all other legal and equitable theories), whether existing now or arising in the future, arising out of or in any way relating to the Incident, provided however that this Release does not apply to claims for Bodily Injury or Securities Claim.

4. Released Parties means anyone who is or could be responsible or liable in any way for the Incident or any damages related thereto, whether a person, company or governmental entity, including (but not limited to) BP, other potentially responsible or liable parties, including but not limited to the parties listed in Attachment A to this Release, the federal Oil Spill Liability Trust Fund and any state or local fund, and each of their respective Affiliates as defined above.

5. Claimant represents and warrants that Claimant (i) has authority to execute this Release; and (ii) has not sold or otherwise transferred or assigned any of the Claims, or any interests in such Claims.

6. Claimant represents and warrants that Claimant has not received any payment from any insurer or other party (other than BP or the GCCF) in connection with the Incident, other than payments disclosed on the Full Review Final Claim Form for Final Payment. However, the representation and warranty contained in this section (6) is not applicable to a Claimant electing to submit a Quick Payment Final Claim Form and receive a Quick Payment.

7. Claimant will dismiss with prejudice within 10 days of executing this Release any litigation concerning the Incident (other than litigation alleging only Bodily Injury or Securities Claim) filed by or on behalf of Claimant against BP or any other Released Parties. Claimant also will withdraw (the obligation to withdraw is satisfied by affirmatively declining to participate if and when the Claimant receives any communication giving Claimant the option of participating or not participating in a class action or similar procedural device) from any existing and will not join any new class action or similar procedural devices concerning or relating to the Incident (other than class actions or similar procedural devices alleging only Bodily Injury or Securities Claim).

8. This Release is not intended to prevent any of the Released Parties from exercising their respective rights of contribution, subrogation, or indemnity under the Oil Pollution Act of 1990 ("OPA") or any other law.  As this Release is fully and completely resolving, together with all other Claims, Claimant's claim under OPA, BP is hereby subrogated to any and all rights that Claimant has arising from the Incident.

9. The payment to Claimant is made without any admission of liability or wrongdoing, or any acknowledgment that the law recognizes any allegation referenced herein, by BP or any other Released Party.

10. The provisions of this Release and all questions with respect to the construction and enforcement thereof and the rights and liabilities hereto shall be governed by, and construed and enforced in accordance with, the laws of the state of residence of the Claimant at the time of signing this Release without regard to conflicts of laws principles.

11. This Release supersedes any and all other agreements, written or oral, between BP and Claimant with respect to such subject matter of this Release.

12. If there is no signature on the line below for Claimant's Spouse, Claimant represents and warrants that Claimant is not married.

| Print Name of Claimant: | Claimant's Signature: | Date: ___/___/_____ (Month/Day/Year) |
|---|---|---|
| Print Name of Claimant's Spouse: | Spouse's Signature: | Date: ___/___/_____ (Month/Day/Year) |
| Title, if a business: | | |

Attachment A

Aerotek, Inc.
Ameri-Force, Inc.
Anadarko Petroleum Company
Anadarko Petroleum Corporation
Anadarko E&P Company LP
Art Catering, Inc.
Ashland
BJ Services Company, USA
BP America Inc.
BP America Production Company
BP Company North America Inc.
BP Corporation North America Inc.
BP Corporation North America Inc. Savings Plan Investment Oversight Committee
BP Energy Company
BP Exploration (Alaska) Inc.
BP Global Special Products (America) Inc.
BP Holdings North America Limited
BP plc
BP Products North America Inc.
Brett Robinson Gulf Corporation
Cameron Corporation
Cameron International Corporation f/k/a Cooper Cameron Corporation
Cameron International Corporation d/b/a/ Cameron Systems Corporation
Center for Toxicology and Environmental Health L.L.C.
Chouest Shorebase Services, LLC
Clean Harbors
Core 4 Kebawk, LLC
Crowder/Gulf Joint Venture
Crowder Gulf Disaster Recovery
Diamond Offshore Company
DOF Subsea USA, Inc.
Drill-Quip, Inc.
Entrix, Inc.
Environmental Standards
EPS Corporation
ERG
ES&H Environmental Services
ESIS, Inc.
Exponent
Global Diving & Salvage, Inc.
Gulf Offshore Logistics, LLC
Gulf Offshore Logistics International,LLC
Halliburton Energy Services, Inc.
Halliburton Company
Hamilton Eng.
Hepaco
Hilcorp Energy Company
Hyundai Heavy Industries Co. Ltd, Inc.
Hyundai Motor Company
In Rem Vessels
Island Ventures II
Jupiter Insurance Limited
LaBorde Marine Services, LLC
Lloyd's of London
Marine Spill Response Corporation
MEG Energy Corp
M-I L.L.C.
M-I Drilling Fluids L.L.C.
M-I Swaco
Miller Environmental Group, Inc.

Mitsui & Co. (USA), Inc.
Mitsui & Co. Ltd.
Mitsui Oil Exploration Co. Ltd.
Moran Environmental Recovery, LLC
MOEX Offshore 2007 LLC
Moex USA Corporation
MV Monica  Ann
MV Pat Tilman
MV Damon B. Bankston
MV Max Chouest
MV Ocean Interventions
MV C. Express
MV Joe Griffin
MV Mr. Sidney
MV Hilda Lab
MV Sailfish
MV Seacor Washington
MV Seacor Vanguard
Nalco Holding Company
Nalco Finance Holdings LLC
Nalco Finance Holdings Inc.
Nalco Holdings LLC
Nalco Company
Nautical Ventures, LLC
Nautical Solutions, LLC
O'Brien's Response Management, Inc.
Ocean Runner, Inc.
Oceaneering International, Inc.
Offshore Cleaning Systems L.L.C.Offshore Service Vessels, LLC
Offshore Inland Marine & Oilfield Services, Inc.
Ranger Offshore, Inc.
Reel Pipe, LLC
Schlumberger, Ltd.
Seacor Marine, LLC
Seacor Marine, Inc.
Seacor Marine International, Inc.
Siemens Financial, Inc.
Seafairer Boat, LLC
State Street Bank and Trust Company
Subsea 7 LLC
The Response Group, Inc.
TestAmerica, Inc.,
Tiburon Divers, Inc.
Tidewater Marine LLC
Tiger Safety, LLC
TL Wallace
Transocean Inc.
Transocean Deepwater, Inc.
Transocean Drilling (U.S.A.) Inc.
Transocean Enterprise Inc.
Transocean Holdings Inc.
Transocean Holdings LLC
Transocean Ltd.
Transocean Offshore Deepwater Drilling, Inc.
Transocean Offshore USA, Inc.
Triton Asset Leasing GmbH
Triton Hungary Asset Management KFT
Triton Hungary Asset Management Limited Liability Company
USES/Construct Corps
Weatherford International Ltd.
Weatherford U.S. L.P
Worley Catastrophe Services, LLC
Worley Catastrophe Response, LLC

# EXHIBIT K

**BODILY INJURY RELEASE**


**IMPORTANT INFORMATION ABOUT THE ATTACHED RELEASE AND COVENANT NOT TO SUE**


**THE ATTACHED RELEASE AND COVENANT NOT TO SUE ("RELEASE") IS A BINDING LEGAL DOCUMENT.  BY SIGNING THIS DOCUMENT, YOU ARE FOREVER WAIVING AND RELEASING ALL CLAIMS FOR BODILY INJURY (INCLUDING WITHOUT LIMITATION MENTAL HEALTH INJURY AND ECONOMIC LOSS IN CONNECTION WITH BODILY INJURY OR MENTAL HEALTH INJURY) (COLLECTIVELY, "BODILY INJURY") THAT YOU MAY HAVE AGAINST BP OR ANY OTHER PARTY IN CONNECTION WITH THE APRIL 20, 2010 BLOWOUT OF THE MACONDO WELL, THE SINKING OF TRANSOCEAN'S DEEPWATER HORIZON DRILLING RIG, AND THE SUBSEQUENT OIL SPILL IN THE GULF OF MEXICO (THE "INCIDENT").  DO NOT SIGN THIS DOCUMENT UNLESS YOU UNDERSTAND AND AGREE TO ALL OF ITS TERMS.**

**YOU ARE UNDER NO OBLIGATION TO ACCEPT THE COMPENSATION OFFERED TO YOU BY THE GULF COAST CLAIMS FACILITY.  YOU ARE FREE TO REJECT THE COMPENSATION OFFERED BY THE GULF COAST CLAIMS FACILITY AND TO PURSUE OTHER MEANS OF COMPENSATION.  IF YOU WANT TO FILE A LAWSUIT REGARDING THE INCIDENT OR MAKE A CLAIM AGAINST THE OIL SPILL LIABILITY TRUST FUND, DO NOT SIGN THE RELEASE.**

**BY SIGNING THE ATTACHED RELEASE, YOU ARE FOREVER GIVING UP AND DISCHARGING ANY RIGHTS WHICH YOU MAY HAVE FOR ANY COSTS, DAMAGES OR OTHER RELIEF CONCERNING ALLEGED BODILY INJURY RELATED TO OR ARISING FROM THE INCIDENT, EVEN IF YOU ARE NOT CURRENTLY AWARE OF SUCH COSTS OR DAMAGES AND EVEN IF SUCH COSTS OR DAMAGES ARISE IN THE FUTURE OR DO NOT MANIFEST THEMSELVES UNTIL THE FUTURE.**

**BY SIGNING THE ATTACHED RELEASE, YOU ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTAND THE TERMS OF THE RELEASE, AND THAT YOU EXECUTE THE RELEASE VOLUNTARILY AND WITHOUT BEING PRESSURED OR INFLUENCED BY, AND WITHOUT RELYING UPON, ANY STATEMENT OR REPRESENTATION MADE BY ANY PERSON ACTING ON BEHALF OF BP OR ANY OTHER RELEASED PARTY.**

**IF YOU ARE MARRIED, BOTH YOU AND YOUR SPOUSE MUST SIGN THE RELEASE.  YOU AND YOUR SPOUSE SHOULD NOT SIGN THE RELEASE UNLESS YOU BOTH INTEND TO RELEASE ALL CLAIMS FOR BODILY INJURY.**

**I ACKNOWLEDGE THAT I HAVE READ AND UNDERSTAND THIS INFORMATION SHEET.**


_____          _____          _____
Print Name of Claimant                            Claimant's Signature                              Date


_____          _____          _____
Print Name of Claimant's Spouse                Spouse's Signature                                Date

1.      In consideration of payment in the amount of [insert], Claimant hereby releases and forever discharges, and covenants not to sue BP Exploration & Production Inc. ("BP") and the other Released Parties for any losses, damages, costs, expenses, injuries, claims, causes of actions, liabilities, or other relief that Claimant has or may have, whether known or unknown, whether present or future, whether direct or indirect, whether legal or equitable, concerning bodily injury (including without limitation mental health injury and including any alleged economic loss in connection with bodily injury or mental health injury) (collectively, "Bodily Injury") arising from or relating in any way to the April 20, 2010 blowout of the Macondo Well, the sinking of Transocean's Deepwater Horizon drilling rig, and the subsequent oil spill and response thereto in the Gulf of Mexico (the "Incident") (collectively, "Claims").

2.      Claimant also, on behalf of Claimant's spouse, heirs, beneficiaries, agents, estates, executors, administrators, personal representatives, subsidiaries, parents, affiliates, partners, limited partners, members, joint venturers, shareholders, predecessors, successors, assigns, insurers, and attorneys (collectively, "Affiliates"), hereby releases and forever discharges, and covenants not to sue BP and the other Released Parties for any Claims released by Claimant pursuant to Paragraph 1 above.   With regard to an insurer of the Claimant, notwithstanding anything to the contrary in the foregoing, the execution of this Release by Claimant shall not release the claims of an insurer of Claimant if and only if the Claimant has disclosed in writing on Claimant's  Full Review Final Claim Form for Final Payment or Emergency Advance Payment Claim Form submitted to the Gulf Coast Claims Facility the fact of a payment, and the amount of the payment, by the insurer to Claimant.

3.      This Release applies to all Claims for Bodily Injury regardless of the legal or equitable theory (including legal and equitable theories under federal, state, local, and international law, and including without limitation statutory law, regulation, common law, maritime law, strict liability, negligence, gross negligence, punitive damages, nuisance, trespass, assault, and all other legal and equitable theories), whether existing now or arising in the future, arising out of or in any way relating to the Incident.

4.      Released Parties means anyone who is or could be responsible or liable in any way for the Incident or any damages related thereto, whether a person, company or governmental entity, including (but not limited to) BP, other potentially responsible or liable parties, including but not limited to the parties listed in Attachment A to this Release, the federal Oil Spill Liability Trust Fund and any state or local fund, and each of their respective Affiliates as defined above.

5.      Claimant represents and warrants that Claimant (i) has authority to execute this Release;  and (ii) has not sold or otherwise transferred or assigned any of the Claims, or any interests in such Claims.

6.      Claimant represents and warrants that Claimant has not received any payment from any insurer or other party (other than BP or the GCCF) in connection with the Incident, other than payments disclosed on the Full Review Final Claim Form for Final Payment. However, the representation and warranty contained in this section (6) is not applicable to a Claimant electing to submit a Quick Payment Final Claim Form and receive a Quick Payment.

7.      Claimant will dismiss with prejudice within 10 days of executing this Release any litigation concerning Bodily Injury filed by or on behalf of Claimant against BP or any other Released Parties.  Claimant also will withdraw (the obligation to withdraw is satisfied by affirmatively declining to participate if and when the Claimant receives any communication giving Claimant the option of participating or not participating in a class action or similar procedural device) from any existing and will not join any new class actions or similar procedural devices alleging Bodily Injury arising from or relating to the Incident.

8..     This Release is not intended to prevent any of the Released Parties from exercising their respective rights of contribution, subrogation, or indemnity under any law.  To the fullest extent permitted by law, BP is hereby subrogated to any and all rights that Claimant has relating to Claimant's claims for alleged Bodily Injury arising from the Incident.

9.      The payment to Claimant is made without any admission of liability or wrongdoing, or any acknowledgment that the law recognizes any allegation referenced herein, by BP or any other Released Party.

10.     The provisions of this Release and all questions with respect to the construction and enforcement thereof and the rights and liabilities hereto shall be governed by, and construed and enforced in accordance with, the laws of the state of residence of the Claimant at the time of signing this Release without regard to conflicts of laws principles.

11.     This Release supersedes any and all other agreements, written or oral, between BP and Claimant with respect to such subject matter of this Release.

12.     If there is no signature on the line below for Claimant's Spouse, Claimant represents and warrants that Claimant is not married.

_____        _____        _____
Print Name of Claimant                                   Claimant's Signature                               Date

_____
Claimant's Address

_____        _____        _____
Print Name of Claimant's Spouse                    Spouse's Signature                                 Date

_____
Spouse's Address

# EXHIBIT L



**BUSINESS**
**New strings attached to BP oil spill awards**
Thu, Nov 25 04:51 AM IST



By Moira Herbst

NEW YORK (Reuters Legal) - The administrator of BP Plc's(**BP.N**) $20-billion fund for victims of its U.S. offshore oil spill attached new strings on Wednesday to provisions for paying final awards.

Kenneth Feinberg's protocol largely matches an early draft circulated to attorneys and lawmakers. But a new section gives BP the right to appeal awards of more than $500,000 to a judicial panel set up by the fund and bars victims from disputing any awards under $250,000.

Feinberg's office did not immediately respond to messages seeking an explanation on how these dollar amounts were determined.

"I can see no basis for the choice of those numbers ... they're making up a system here," said David A. Logan, dean of Roger Williams University School of Law in Bristol, Rhode Island.

All the same, Logan said: "The numbers they chose may be arbitrary, but they're not unreasonable. The law is full of arbitrary dollar limits and cutoff points for determining jurisdiction in court. Above one dollar level you're treated one way; below it you're treated another."

U.S. President Barack Obama announced the formation of the Gulf Coast Claims Facility (GCCF) in June as a possible alternative to litigation of victims' claims in what was to become the worst offshore oil spill in U.S. history.

Justice Department spokeswoman Jessica A. Smith said the department was reviewing the new process.

"As we have made clear, there are a number of changes that we believe Mr. Feinberg must make to the protocol and release that we hope will better provide relief to the people and communities of the Gulf Coast."

The 14-page protocol also requires that claimants applying for final lump-sum payments after Nov. 23 give up the right to sue BP and other parties if they accept payment, whereas no such strings were attached for emergency payments.

"IMPARTIAL" JUDGES

Appeals decisions are binding only on BP. Claimants have the right to reject the GCCF appeals judges' decision and pursue a claim in the courts or as otherwise allowed under the Oil Pollution Act of 1990.

The protocol says Feinberg will choose a "distinguished member of the legal profession" who will identify individuals, "e.g., retired federal or state judges, respected legal academics, professional mediators or arbitrators, to serve as impartial GCCF Appeals Judges."

Once an appeal is certified, Feinberg will assign it to a panel made up of three appeals judges. The panel will make a decision within 14 days after receiving the claim file, the protocol says.

"The (appeals) setup shows that the Gulf Coast Claims Facility wants a lot of claims to be eligible for appeals but not all of them," Logan said. "Also I presume the appeals process is being paid by BP. They don't want to offer everyone at every level the ability to appeal."

"There was talk over the summer, at least in academic circles, that BP wouldn't have any right of appeal. So obviously that's changed," he added.

"On the face of it it's not unfair that BP has the right of appeal, unless you think the deck is stacked in their favor."

BP spokesman Daren Beaudo referred questions about the appeals judges to Feinberg. Beaudo said the company had nothing to add.

FEINBERG CRITICIZED

Attorneys representing claimants and some public interest groups were critical of the appeals process, noting that Feinberg was being paid by BP.

"Feinberg is acting in BP's interest in this situation and not the claimants',"said Brian H. Barr, a partner at Pensacola, Florida's Levin Papantonio Thomas Mitchell Rafferty & Proctor who serves on the executive committee for plaintiffs in the multi-district litigation against BP before a judge in New Orleans. Barr said he expected that the judges on the appeals panel would have a corporate-defense background and be friendlier to BP than to claimants. "To me, the victims' best appeal process is going to court."

In a conference call with reporters on Wednesday, Feinberg said the new appeals process was voluntary and that claimants could choose from multiple avenues to dispute the fund's decisions. "If (claimants) don't like what GCCF is doing, if they haven't heard from GCCF, under law they can appeal to the U.S. Coast Guard," Feinberg said. "If they don't like that (response) they can go to federal court. They do have options."

Jamie Court, president of Consumer Watchdog, a Santa Monica, California-based consumer advocacy group, said he was shocked that the new process allowed BP to dispute claim awards. "I don't believe BP should have the right to appeal any award," he said. "Victims are

turning their fortunes over to an employee of BP, Mr. Feinberg, and his judgments in large cases for the victim should not be allowed to be second-guessed by BP."

(Editing by Howard Goller and Amy Stevens)

**Email Article**
**Next Article in Business**
**Home** » **Business**
Search | Stock Quotes | Videos | Currency | Weather | Slideshows | Business | Top News | Deals | Cricket | Entertainment | Oddly Enough | World | Personal Finance | More Categories

# EXHIBIT M

Case 2:10-md-02179-CJB-DPC Document 963-1 Filed 01/10/11 Page 104 of 116

Cover Story

# Master of Disasters: Is Ken Feinberg Changing the Course of Mass Tort Resolution?

Posted Jan 1, 2011 5:00 AM CST
By Terry Carter



Click to view the The Master of Disasters gallery now.

Has Kenneth Feinberg become such a brand unto himself—at once unique and ubiquitous as the nation's problem solver—that a truck running over him would end forever the Feinberg Way for mass-dispute resolution? Is he sui generis? Answers vary. Feinberg's own suffices for the moment. He seems surprised when asked, which is saying a lot given how much press he gets. Feinberg stops fidgeting for brief seconds, suddenly still in a beige leather lounge chair at one end of his long, narrow office in the Willard Office Building, barely more than a block from the White House. A broad smile quickly curls up. "That's an interesting question," he says. "No one seems to be doing what I'm doing."

That answer is perhaps more loaded than he intends. The role was created half for him, half by him. Feinberg has become the go-to guy for our national disasters and vexing problems, from Agent Orange to the Dalkon Shield, from the 9/11 fund to the Virginia Tech massacre; more recently he has been the pay czar for the financial bailout and now the BP oil spill in the Gulf of Mexico. He is said to bring the wisdom of Solomon and, sometimes, the patience of Job in sorting through the unthinkable to compensate for loss.

But it's more complex than that, as is Feinberg himself. Some question the impact these big settlement funds, usually launched in part to prevent or end litigation, might have on the civil justice system in general and tort law in particular. Interestingly, as an arbitrator and mediator for the most complex matters, Feinberg, 65, may or may not be in the top five among otherwise lesser-known names doing such work, depending on whom you ask.

## BUCKS, NOT BLAME

Even admirers note some of his highest-profile work has basically been about who gets how much, with no concern necessary for who did what to whom or where the money comes from. Such was the case with the Sept. 11 Victim Compensation Fund, bankrolled by the U.S. government in the amount of $7 billion, and the Hokie Spirit Memorial Fund, in which he parceled out a privately raised $8 million to families of the 32 people massacred and 17 injured at Virginia Tech in 2007 by a deranged gunman.

"These cases are very important and Ken has done a splendid job, but there's a distinction between large, complex mediation and handling 10,000 claims," says Eric D. Green, who retired in 2007 from the Boston University School of Law after teaching for 30 years. "The crucial thing is having the money to hand out. These are mostly just claims processing."

Green, now a full-time arbitrator and mediator, is best known for his part in a 2001 mediation of stalled negotiations in an antitrust case against Microsoft brought by 18 states.

He is both a fan and admirer of Feinberg and his work, including the more complex matters. When Feinberg was tapped by BP to run its $20 billion claims fund at the urging of President Barack Obama, Green e-mailed him

Case 2:10-md-02179-CJB-DPC Document 963-1 Filed 01/10/11 Page 105 of 116

congratulations that ended with a playful poke: You'll get thousands of small claims to resolve, and I hope someday you get a big case.

There are other ways to view some of Feinberg's higher-profile work.

Robert C. Bordone, the director of Harvard Law School's negotiation and mediation clinical program, says Feinberg is more than a mediator in important ways. Feinberg has visited Bordone's class each of the past five years and, at the teacher's request, spoken about dispute-resolution system design.

"Ken knows how to look at a complex problem and design a system that tends to the needs of all stakeholders, is efficient and is sensitive also to what the public might think," says Bordone. "He's a brilliant system designer of the next-level cutting edge for alternative dispute resolution."

Feinberg is avuncular and charismatic, which lends to his teaching style: raising hard questions by telling his own stories, such as about handling the tensions between the 9/11 fund's statutory requirement that it track tort law— bankers have more projected lifetime income than do janitors—and still being fair to all.

"At the end of the class," Bordone says, "a lot of students are thinking, 'How can I be like him?' "

That ambition should be taken seriously. Last year, some of Bordone's students went to China for Hewlett-Packard to develop a grievance system for the 5,000 to 6,000 workers who make the company's products. This year, others are headed to Egypt to devise a conflict resolution system for the administration of international microloans.

A former vice-chair of the ABA's Committee on Alternative Dispute Resolution and an ABA member since 1980, Feinberg does a lot of one-shot guest teaching and speaking, which accounts in part for his six- and seven-day workweeks—and workdays of 12 hours or more when on a big project. He also regularly teaches semester-long courses.

"I am in demand to teach at Georgetown, NYU, Columbia, Penn and Virginia," he says with the matter-of-fact oomph expected of an ego big enough to command a roomful of lawyerly egos at mediation. "I have an open invitation and usually teach one class each semester at one of them."

Feinberg is taking off this year because of the magnitude of the BP oil spill. He teaches mass torts, evidence and substantive criminal law.

Criminal law? The answer comes crisply and rapidfire: "Love it. Never forget it. Great change of pace."

**A PAST IN PROSECUTION**

Feinberg was a federal prosecutor in New York's Southern District from 1972 to '75, handling criminal matters. That portfolio helped land his next job: staff lawyer on criminal justice reform for the U.S. Senate Judiciary Committee. He worked for the late Sen. Edward Kennedy, D-Mass., and stayed in various roles for five years.

"I didn't think about it at the time, but maybe his first act of phenomenal mediation and compromise was when he got [Sen.] John McClellan and Ted Kennedy to co-sponsor S. 1, the criminal code reform act," says Thomas Susman, who as a subcommittee's chief counsel hired Feinberg. (Susman now is the director of the ABA's Governmental Affairs Office.)

The late McClellan was a Democrat from Arkansas, though he likely would be a Republican in today's Congress. He was conservative and extremely tough on crime. It was unlikely that he and the classic liberal Kennedy would see eye to eye on much.

"Ken somehow got the two to agree on the bill," Susman recalls. "It passed overwhelmingly in the Senate, though it didn't make it through the House. But that was remarkable sleight of hand by Ken."

It also cast a die. In the early 1980s, during the Reagan administration, many key sentencing provisions from S. 1 became law.

Eventually, Kennedy made Feinberg his chief of staff, which lasted two years. Feinberg returned to work for the Judiciary Committee when the senator began preparing a run for the Democratic nomination for president in 1980, which he lost to President Jimmy Carter.

Case 2:10-md-02179-CJB-DPC Document 963-1 Filed 01/10/11 Page 106 of 116

Going to work on the Hill for Kennedy "was the greatest move I ever made in my life," Feinberg says. His matchup with the Massachusetts senator was a natural. Feinberg is a liberal Democrat. And he's from Brockton, Mass., about 20 miles south of Boston. Fein berg's accent is museum-quality more than four decades after leaving home. Even 35 years in Washing ton, D.C.'s Southern proximity hasn't shortened the broad A's, or managed to wedge R's into their rightful place in certain words, such that it's not "hod" to know whence he came.

When Feinberg was selected as special master for the 9/11 fund, Kennedy advised him: "Ken, just make sure that 15 percent of the families don't receive 85 percent of the taxpayers' money."

In 2009, Feinberg was elected chairman of the John F. Kennedy Library Foundation as it geared up to celebrate the 50th anniversaries of the 1960 presidential campaign and 1961 inauguration.

"You never really leave Sen. Kennedy's employ," Feinberg says. "You remain in his ambit."

But after Feinberg entered private practice at age 40, another mentor would have an even greater impact on his career arc: U.S. District Judge Jack Weinstein.

In 1980 Feinberg left the Hill to open and run the Washington, D.C., office of New York City's Kaye, Scholer, Fierman, Hays & Handler, now simply Kaye Scholer. Many big firms around the country were launching D.C. outposts at the time.

They wanted leverage for clients that can be had only in Washington, but ultimately the offices would have to make money. It was a problem for many. Not for Feinberg.

He was successful early on, but in 1984 his practice took off like a rocket when Judge Weinstein tapped Feinberg as special master in Agent Orange litigation in the Eastern District of New York. Their connection came from having both clerked for Judge Stanley Fuld on the New York Court of Appeals (the state's highest court), though 20 years apart.

The Agent Orange problem had kicked around for seven years, and he got it settled in six weeks with a then-unprecedented $180 million to divvy up through a claims matrix for Vietnam veterans.

"Once it settled, my career did a sea change over night," says Feinberg. "I became a private mediator and arbitrator."

In 1985, he billed $1.5 million, according to contemporaneous news reports, and was expected to easily double that the following year.

After bringing in David Branson, a rainmaker from another major New York firm's D.C. office in 1985, Feinberg boasted to the *Legal Times* newspaper, "We have become a moneymaking machine for the firm. You just have to pray that neither Feinberg nor Branson gets hit by a truck."

It turned out that the firm itself would get hit by a truck seven years later, almost fatally. The federal Office of Thrift Supervision froze Kaye Scholer's assets, saying the firm had put itself between the agency and a savings and loan it regulated, then failed to report wrongdoing. The firm settled with the Securities and Exchange Commission for $41 million.

Kaye Scholer's chairman was at the center of the scandal, and Feinberg often ended up as spokesman. Months later, in February 1993, he left to open his own shop, Kenneth R. Feinberg & Associates.

He took with him his booming mediation and arbitration practice.

## ENERGY EMBODIED

Feinberg's face is long, his chin jutting down like a garden spade and his bare pate pulling the same effect somewhat upward. He's average size, but of course projects large. He is a bouncing heap of kinetic and potential energy, simultaneously coiled and elastic.

His hand is like a paw as it thumps the side of the leather lounge chair, the percussion out of sync with the opera playing in the background (it is there all day, every day). In 2009, Feinberg was elected president of the Washington National Opera, perhaps the perfect person for the job at a time when its finances are down and leadership in flux.

Opera has been Feinberg's abiding passion since boyhood, the works of Richard Wagner his lifelong favorite, and listening to them his method of unwinding. In a special room at home he opens the throttle on tall, freestanding Italian-made Sonus Faber speakers to let musical drama push aside that of the day's work.



Kenneth Feinberg

Feinberg's restlessness probably stems from his compulsion to multitask, which even for him is hard to do during an interview. He is almost always direct, sometimes painfully so.

It can be funny, such as the flap over his 2002 quip to a reporter accompanying him to a 9/11 families meeting on Staten Island that the place is "a Third World country."

And not so much, such as when he tried to coax reluctant families to file with the 9/11 fund, telling a group that it was "the only game in town." He got his head handed to him, as he often puts it when suddenly on the receiving end of powerful and successful persuasion. Some of the grief-stricken relatives let him know that it was not a game.

He changed. He went on to personally conduct more than 900 hearings for victims' families, most of them simply emotional "exorcisms," as he puts it, because the payouts already had been tallied. He listened to telephone messages from their loved ones at the moments they were about to perish. Feinberg wrote a 2005 book about his experiences with the fund: *What Is Life Worth?: The Unprecedented Effort to Compensate the Victims of 9/11.*

While he eventually overcame fallout from his initial sharp edge with the 9/11 victims' families, similar breaches with plaintiffs lawyers in the BP oil spill may prove more difficult.

More than 1,100 plaintiffs lawyers worked pro bono with the 1,700 families in the 9/11 fund, putting together details and reasoning for their claims. Feinberg, who also took no pay, was grateful for the help.

Feinberg obviously believes in the funds he administers. He measures success by the percentage of claimants who sign on—a stunning 97 percent in the 9/11 fund, surpassing his initial hope for as much as 90 percent.

But there are big differences between 9/11 and the BP oil spill. Wrongdoing by terrorists was nearly impossible to target in court, while the deep-pocketed BP can hardly argue the well was intact. Most significantly, this time Feinberg is getting paid—and the plaintiffs lawyers want to be, too.

Last June, just four days after the announcement that he would head the fund, Feinberg delivered the first of many salvos aimed at keeping the lawyers at bay and getting claimants to deal directly with his Gulf Coast Claims Facility, which administers the fund.

On NBC's *Meet the Press* he said a Gulf Coast shrimper "doesn't need a lawyer, doesn't have to pay a lawyer 40 percent of what he receives."

Says Marc Moller, a New York City-based partner at Kreindler & Kreindler who was named plaintiffs liaison counsel in 9/11 litigation by the 94 families that sued airlines and others: "I don't agree with Ken Feinberg on everything he says or every decision he makes, but he is certainly motivated to try to do the right thing as he sees it, and everybody is not always pleased by that approach. He's a solid citizen."

But Moller, who is not involved in the BP spill fund, sees a difference there. Trying to fence out the lawyers where massive harm is attributed directly to the company and others "is a mistake that sounds anti-lawyer, but ultimately is anti-victim. The victims can't navigate on their own through the process in a way that enables them to get the full measure of recovery they're entitled to."

**UNSETTLED**

More than lawyers might be fenced out. Yale Law School professor Owen M. Fiss, author of the landmark 1984 law review article "Against Settlement," has debated Feinberg on mass settlements in print and in person. Fiss believes settlements thwart the expression of public values found in the court system.

"You could settle if you want to and if there's enough pressure for you to do it," Fiss says of the mass-claim funds. "I'm not saying you shouldn't, but don't mislead yourself that this is justice, which takes time—maybe a lot of time."

On the other side, Feinberg thinks Fiss' well-articulated academic view loses for lack of being practical. He drops in periodically to try to disabuse Fiss' students of their prof's notion. "The judicial system would completely break down if private settlements weren't worked out in more than 90 percent of cases," he says.

With asbestos, for example, "why seek a jury result that will only confuse and promote uncertainty when the fact is that we already know issues of liability and damage and causation?" Feinberg explains. The only issue, he says, is whose product caused the injury.

For the record, asbestos litigation marks Feinberg's most spectacular failure. He swooped into Baltimore in the early 1990s to work out a settlement, but the magic touch failed, leading to what then was called "the mother of all asbestos trials," led by the legendary lawyer for Baltimore's labor unions, Peter Angelos.

"I couldn't get defendant companies and Peter Angelos and everybody on the same page, so Peter went to trial and won a smashing victory that let him buy the Baltimore Orioles with his proceeds," says Feinberg, who then and now calls for a legislative remedy for the asbestos quagmire.

## POWER PLAYS

Some have concerns about the nature of the authority ceded to Feinberg over time. When working as a special master over Agent Orange litigation in 1984, under Rule 53 of the Federal Rules of Civil Procedure, Feinberg was supervised by and made detailed reports to Judge Weinstein. With the 9/11 fund Feinberg had statutory authority from Congress with considerable flexibility in his own decisions as well as a blank check.

Last year he was tapped by the Obama administration through regulatory rule-making to be the pay czar determining compensation levels for executives at more than 400 corporations receiving bailouts under the Troubled Asset Relief Program.

Now he's handling the BP fund on basically a handshake, with Oil Pollution Act guidelines as a malleable template.

"It seems we've moved into a new universe of problematic dispute resolution where people really are unrepresented," says Linda Mullenix, a professor at the University of Texas School of Law who knows and admires Feinberg. "All they have is Ken Feinberg saying, 'This is good for you; come on in and it's in your best interest.'

"As you move from each model to the next, there's less oversight. Who's guarding the guardian?"

Thousands of BP oil spill claimants are represented by lawyers. The question is whether the clients will drop out to take lump-sum settlements from Feinberg. There are more than 300 cases from 12 states in multidistrict litigation in federal court in New Orleans against BP, Halliburton Energy Services Inc. and Cameron International Corp.

Joe Rice, a founding member of Mount Pleasant, S.C.-based Motley Rice who represents clients in the MDL, puts a sharper point on the complaint that Feinberg is wrong to keep lawyers out of the equation. Rice was scornful of the recent deadline for claimants to file for emergency funds. If claimants filed, they could receive interim payments until the fund closes in three years, all of which would be offset in any jury award. Or they could enter final settlement and get a lump sum determined by Feinberg.

The late-November deadline coupled with the tender of final settlement rankled Rice, who says, "You have a guy out of work nine months in the Gulf who thinks his claim is worth much more than they might offer, but he looks at his wife and two kids and he's doing what he can to put food on the table as Christmas approaches. He's more likely to take the settlement money. We've seen this kind of thing before from defense lawyers."

Many or most plaintiffs lawyers involved are convinced Feinberg is doing BP's bidding.

Says Stephen Herman of New Orleans' Herman Herman Katz & Cotlar, a member of the MDL plaintiffs' executive committee: "It's extremely dangerous for someone who has the imprimatur of being an independent special master in the past to now be cloaked in this specter of independence, when in fact he's nothing more than a defense lawyer trying to settle cases for BP."

"He likes to say yes," says Jeffrey Breit of Norfolk, Va.'s Breit Drescher Imprevento & Walker, who is a member of the plaintiffs' steering committee in the MDL. "Then later you find out that it's no. He says what the audience wants to hear."

**FACING CRITICISM**

None of this has escaped Feinberg, who admits, "I was too harsh on them at the beginning in trying to entice people into this fund." He is unapologetic in saying "the whole point of this fund is not only to pay claimants but also to corral the plaintiffs so that people don't run to court."

He says the trial lawyers will "end up probably being quite helpful in keeping people in the fund."

As summer moved to autumn, the plaintiffs lawyer drumbeat brought more conciliatory words from Feinberg, though with little palliative effect. In October, he praised them in his keynote speech at a summit hosted by the U.S. Chamber of Commerce's Institute for Legal Reform. The institute's website lists as its first aim: "Neutralize plaintiff trial lawyers' excessive influence over the legal and political systems."

Feinberg bearded the lion in its den after he was introduced by chamber president Thomas Donohue, who noted Feinberg's deft handling of the 9/11 fund was done "without the involvement of massive numbers of lawsuits involving thousands of trial lawyers."

Feinberg stepped to the dais and quipped: "I'm pleased to know that Tom's going to shoot out of here and not listen to what I say. I don't want to spoil his lunch."

Feinberg proceeded by Rolfing his audience—rubbing them the wrong way to ease their tension. He explained, for example, that he believes the "legal system works pretty well," that all claimants in the 9/11 fund were represented by lawyers, and that it "would never have succeeded as it did without the firm, committed support of the trial bar."

He also pointed out that the 9/11 fund was tacked on as a compromise for legislation whose main purpose was statutorily "placing barriers to litigate against the airlines and the World Trade Center."

Feinberg got more applause at that anti-lawyer luncheon than he likely will get anytime soon from the plaintiffs lawyers he praised.

The BP oil spill looks to be Feinberg's most problematic challenge to date. It is difficult to assay the future of the Gulf's health, and thus the livelihoods of tens or hundreds of thousands, and resulting ripple effects elsewhere. The cash-only economy that predomi nates small-scale commercial fishing is equally hard to quantify. The list goes on and on.

Feinberg is going to sort through the mess his way, and some won't be satisfied. He knows that. He will look to the percentages—how many entered the fund— for his measure. Litigation likely will provide another— for the first time.

Then there's the ultimate measure: Is Feinberg sui generis?

"Everyone is sui generis," says Weinstein, still on the bench at age 89, "but he's more sui generis than others."

Copyright 2011 American Bar Association. All rights reserved.

# EXHIBIT N

Gulf spill fund gets flood of last-minute claims - Yahoo! News       Page 1 of 4

Case 2:10-md-02179-CJB-DPC    Document 963-1    Filed 01/10/11    Page 111 of 116

New User? Register | Sign In | Help      **Make Y! Your Homepage**      Yahoo!    Mail

**YAHOO! NEWS**
Brought to you by Yahoo! Finance

Search    **Web Search**

HOME | U.S. | BUSINESS | WORLD | ENTERTAINMENT | SPORTS | TECH | POLITICS | SCIENCE | HEALTH | OPINION | MOST POPULAR

Science Video    Weather News    Space & Astronomy    Animals & Pets    Dinosaurs & Fossils    Biotech    Energy    Green

Search All News    News Search      TRENDING NOW:   ted williams   khloe kardashian   dead birds   elizabeth edwards   jim harbaugh



**WEEKEND EDITION:** The latest health, leisure, travel and fitness news    Like | 7K

# Gulf spill fund gets flood of last-minute claims

AP Associated Press

Buzz up! 9 votes    Share    retweet 22    Email    Print

By CAIN BURDEAU, Associated Press – Wed Nov 24, 4:05 pm ET



Reuters – Oil and gas continues to leak from BP's Gulf of Mexico well after the oil containment cap was removed ...



Slideshow: **Gulf Coast Oil Spill**

RELATED QUOTES

| | | |
|---|---|---|
| BP | 46.23 | 0.00 |
| ^GSPC | 1,273.85 | 0.00 |
| ^IXIC | 2,709.89 | 0.00 |



NEW ORLEANS – The administrator of a $20 billion fund set up to pay for damages from the Gulf oil spill said Wednesday he received a flood of last-minute emergency claims before a key deadline ended.

Kenneth Feinberg said about 450,000 emergency claims were filed by Tuesday's deadline. Of those, about 30,000 were filed Monday or later. "That is about four times what I thought there would be," he said.

Many will likely be denied, he said, because they lack documentation. He estimated about 325,000 claims had no or "woefully inadequate" documentation. About 1,000 claims are suspected of being fraudulent.

"A fisherman will apply and say: 'I lost $30,000 during the spill because I couldn't fish, pay me' and he attaches his fishing license with no further documentation," he said.

In the next phase of the claims process, people and businesses will be able to ask for a lump sum payment, so long as they agree not to sue BP PLC or other companies involved in the spill. They can also ask for smaller payments every three months, which leaves open the possibility of suing the oil giant for damages. The incremental payments would be based on past damages claimants can verify.

The claim process was set up after an offshore oil rig leased by BP exploded on April 20 in the Gulf and released more than 170 millions of gallons of oil into the sea. Fishermen, businesses and the tourism industry were hurt by the massive spill.

Feinberg gave no estimate on how many claimants might opt to settle with BP rather than seek short-term payments. Final and short-term claims can be filed until August 2013.

"I hope my lump-sum payment will be sufficiently generous to take into account the unknown future that many claimants will see the wisdom of taking the lump-sum payment and move on with life," he said.

He said there was no guarantee that someone holding out would end up getting more than an upfront lump sum because the damage to the Gulf may turn out to be less than previously thought.

Plaintiffs lawyers blasted Feinberg's claims protocol.

James P. Roy, a member of a lawyers' steering committee for lawsuits against BP, said it appeared Feinberg was attempting to get as many people as possible to settle prematurely with BP as he announced nuances for future claims on the day before Thanksgiving.

"We feel that Mr. Feinberg is preying on the victims at the height of the holidays in an effort to settle this case and absolve his client — BP," Roy said. "These claims of being generous are ridiculous."

Roy said he would urge his clients not to settle with BP and keep their legal options open. "We are all in favor of the interim payments."

Feinberg said he was independent. "BP has no check on the way I am doing this."

Tom Costanza, the director of the Office of Peace and Justice at Catholic Charities in New Orleans, said the emergency claims process was unfair to fishermen. He said on average fishermen received about $17,000 in compensation for the past six months, which was about half of what they would normally make. He added that thousands of fishermen have not been paid for their losses.

"I would say that this claims process, if I am a fisherman, has not made me whole so far," he said. His office has worked closely with fishermen.

AdChoices

## The Death of the PC

The days of paying for costly software upgrades are numbered. The PC will soon be obsolete. And *BusinessWeek* reports 70% of Americans are already seizing the technology that will replace it. Merrill Lynch calls it "a $160 billion tsunami." Computing giants including IBM, Yahoo!, and Amazon are racing to be the first to cash in on this PC-killing revolution.

Yet, two little-known companies have a huge head start. Get the full details on these companies, and the technology that is destroying the PC, in a free video from the Motley Fool.

**Watch the FREE video now!**

BROUGHT TO YOU BY THE MOTLEY FOOL

sponsored links

**claim processing**
Receive claim reports online with claim processing.
www.apptechnologies.biz

**Spill Kits & Accessories**
Spill 911 has it all. Don't miss our Weekly Specials!
www.spill911.com

**Clean Claim Delivery**
Delivering clean healthcare claims, UB04, 1500, since 1992
www.EMCsoft.com

**Featured**



**Tap water risk**
Study finds probable carcinogen in 31 U.S. cities' tap water.
» More from Washington Post



**Weekend Edition**
Get the latest leisure, travel, fitness and health news.
» Brasher: Perfect cup of coffee?



**Spousal snooping**
Wife responds to husband's hacking.
» More from ABC News



**Top 10 lists of 2010**
Standout news, pop-culture trends and search obsessions.
» Look back now

**Education**



**Demand for Nurses**
Train online for this stable, fast-growing job. Learn more now.

» Report: Benefits of College

Gulf spill fund gets flood of last-minute claims - Yahoo! News          Page 2 of 4

Case 2:10-md-02179-CJB-DPC   Document 963-1   Filed 01/10/11   Page 112 of 116

Feinberg said he built in an appeals process for claimants who received $250,000 or more. A three-judge panel will hear those appeals. All claimants, regardless of their award amount, can appeal their cases to the Coast Guard and federal courts. BP also has the right to appeal awards larger than $500,000.

——

Online:

The Gulf Coast Claims Facility: http://www.gulfcoastclaimsfacility.com

Follow Yahoo! News on   Twitter, become a fan on   Facebook

Buzz up! 9 votes     Share        retweet  **22**        Email     Print

 Report shows that college grads are healthier. Read more...



## Explore Related Content

**BP Spill Shows Industry Needs to …**

- **BP Plc**'s oil spill was caused by "systemic" management failures at the … Full Story »

BusinessWeek



Photo: Eric and Sindy Blackwood look at their new baby … **Gulf Coast**



Photo in Slideshow: **Kenneth Feinberg** testifies before the House Commerce, Trade, and …



Photo in Slideshow: Bacteria ate **Gulf oil spill** methane in 4 months

## Editor's Picks                                                                                  More Slideshows »



New storms soak Australian communities



Homeless man with velvety voice becomes star



Gadgets galore at consumer tech show



Photo Highlight of the Day

### More on Oil, Gas & Energy

**Oil prices mixed before US data** AFP

**Oil rises toward $89 ahead of key US jobs report** AP

**Global Oil Prices Are Soaring Again. Is the Fed to Blame?**
Time.com

More »

### More...

Science Video: **Bizarre Fish Deaths** FOX News

Science Video: **Microsoft's Answer to the iPhone** FOX News

Science Video: **Portable Video? Yeah, Philips Has That** FOX News

## 1,490 Comments                                      Show:  Newest First

Post a Comment                     Comments 1 - 10 of 1490   First | Prev | Next | Last

**BajaPaul** Tue Jan 04, 2011 11:43 pm PST | Report Abuse                    0          0

I am sure Obama is going to be supporting this! Anything to keep his lawyer buddies busy!

Reply

**Dan The Man Spfld,Il** Tue Jan 04, 2011 09:50 pm PST | Report Abuse       0          0

the gulf never will recover bottom line ,people are somehow astonished that oil continues to wash up along not just our coast but all over the world .why because you never here about all the other spills and odds are you never would have heard about this one had anyone not survived,

Reply

**Destinys_Fate** Tue Jan 04, 2011 03:42 pm PST | Report Abuse              1          3

Gulf spill fund gets flood of last-minute claims - Yahoo! News                    Page 3 of 4

Case 2:10-md-02179-CJB-DPC    Document 963-1    Filed 01/10/11    Page 113 of 116



Kinda sucks that oil is disappearing leaving people unemployed. People worry about enviorment too much. I believe in being brown and brown technology. Heck, I'd even burn 10 car tires in a campfire I don't care. Inhalt it, it smells good.

Reply

**Hope**  Tue Jan 04, 2011 03:42 pm PST | Report Abuse                    0        **2**

Obama is going to lift the ban he imposed on drilling??? Gas prices continue to soar, companies have abandoned the rigs off the U.S. shores to head elsewhere, and he didn't think there would be problems with his ban???

Replies (1)

**Constructor**  Tue Jan 04, 2011 02:00 pm PST | Report Abuse                    0        **1**

Botton feeding lawyers looking for more money!

Reply

**Kiss My Nutz**  Thu Dec 30, 2010 10:25 pm PST | Report Abuse                    **1**        0

Man, who is zooming who on this?

Reply

**Truth**  Thu Dec 30, 2010 10:04 pm PST | Report Abuse                    **4**        0

The Exxon Valdez oil spill occurred in Prince William Sound, Alaska, on March 24, 1989, when the Exxon Valdez, an oil tanker bound for Long Beach, California, struck Prince William Sound's Bligh Reef and spilled 260,000 to 750,000 barrels (41,000 to 119,000 m3) of crude oil and Alaska is still not the same as it was ...
How long do you think it well take until the gulf is back to normal .and can it truly be calculated in dollars

Reply

**Troy Boy**  Thu Dec 30, 2010 09:12 pm PST | Report Abuse                    **2**        **1**

$950.00 hr is cheep for ones soul...

Replies (1)

**Remo**  Thu Dec 30, 2010 08:59 pm PST | Report Abuse                    **1**        **2**

THE pOLITICAL STENCH IS ALL OVER THE GULF!!!
WHEN ARE WE GOING TO GET A REAL GOVERNMENT THAT IS HONEST FOR THE PEOPLE????

Reply

**Oswold Cobblepot**  Thu Dec 30, 2010 08:55 pm PST | Report Abuse                    **1**        0

Where the He** do you sign up for a $950/hr job?

Reply

Comments 1 - 10 of 1490   First | Prev | Next | Last

## Post a Comment

Sign in to post a comment, or Sign up for a free account.

**Most Viewed - Science**          **Daily Features**

God was behind Big Bang,
universe no accident: Pope
Reuters

US scientists sound alarm over                    **All Comics »**
animal research  AFP

Gulf spill fund gets flood of last-minute claims - Yahoo! News                    Page 4 of 4

Case 2:10-md-02179-CJB-DPC   Document 963-1   Filed 01/10/11   Page 114 of 116

FACT CHECK: Mass bird, fish
deaths occur regularly AP

How Fast You Walk May Predict
How Long You'll Live
LiveScience.com

Bacteria also removed spilled
methane from Gulf AP

**All Most Viewed »**

Opinions & Editorials: Diverse views on
news from the right, left, and center.

**All Opinion »**



1 in 6 drivers on the road
may be uninsured.

Home | U.S. | Business | World | Entertainment | Sports | Tech | Politics | Science | Health | Travel | Most Popular | Odd News | Opinion

Yahoo! News Network    RSS    News Alerts    Weather Alerts    Site Map    Help    Feedback

Copyright © 2011 The Associated Press. All rights reserved. The information contained in the AP News report may not be published, broadcast, rewritten or redistributed without the prior written
authority of The Associated Press.

Copyright © 2011 Yahoo! Inc. All rights reserved. Questions or Comments    Privacy Policy    About Our Ads    Terms of Service    Copyright/IP Policy

.

# EXHIBIT O

Search

THE FIRM

ATTORNEYS

PRACTICE AREAS

REPRESENTATIVE
CASES

OUR CLIENTS

FIRM NEWS &
EVENTS

STAFF & FACILITIES

PRESS

CONTACT US

## Headlines 11/26/2010

### Public Officials Speak Out Against Feinberg as BP Claims Process Changes

Public officials across the nation are speaking out against Kenneth Feinberg and his protocol for paying claims under his Gulf Coast Claims Facility ("GCCF"). The GCCF is the official way for individuals and businesses to file claims for costs and damages incurred after the Deepwater Horizon accident on April 20, 2010. The GCCF is administered by attorney Kenneth R. Feinberg, who was appointed over the summer to be a "neutral fund administrator" responsible for all decisions relating to the administration and processing of claims by the GCCF. However, his neutrality is being questioned by many nationwide, including the attorneys here at HHK&C.

"Our biggest concern is for our clients' well-being," says Stephen Herman, a member of the Plaintiffs Steering Committee. "We have had serious issues with Feinberg's protocol and for months, and while he was creating a guideline for his claims process under the GCCF, we have been asking for more transparency so that we can be certain that peoples' rights are fully protected."

In a letter dated November 16, Alabama Attorney General Troy King strongly criticized Feinberg and BP Oil for their handling of interim and final claims payments to citizens of the Gulf Coast. He describes Feinberg's actions and statements as "misleading," "inadequate," "extortion," "a delay in justice" and an attempt to force these citizens into accepting less than what they need and are entitled to from BP.

King expresses concern that Feinberg's actions on behalf of BP were at the expense of those whose lives and livelihoods have been affected by BP, especially considering that BP is paying Feinberg's firm $850,000 per month for their work on behalf of the oil company.

"I remain convinced that your protocol is unfair to Gulf Coast residents and businesses whose rights are being ignored, if not trampled, by it," said Attorney General King.

Specifically, King cites Feinberg's repeated concessions to BP that were detrimental to Gulf Coast citizens, including Feinberg's statement that he does not intend to hold BP to their promise of paying 100% of any claims attributed to April's Deepwater Horizon disaster. Another example is Feinberg's continued requirement for those with claims against BP to sign a full release of their legal rights to the benefit of BP and "other potentially responsible or liable parties."

King attacks this lack of transparency behind Feinberg's protocol, stating, "It seems only reasonable that, if a claimant is being asked to forever waive his right to sue BP,he should understand how and why his damages were calculated by the GCCF. With no calculation formula, your protocol lacks transparency and legitimacy."

The Attorney General points out just what claimants are giving up by agreeing to sign a full release.

"Your protocol is misleading," he writes. "Your protocol does not provide remedies for negligence, gross negligence, punitive damages, nuisance, trespass, or any other.remedy outside the parameters of the Oil Pollution Act of 1990..Claimants should not be lead to believe that they are begin compensated for damages which lie beyond the scope of [Feinberg's] protocol."

HHK&C's Soren Gisleson agrees with many of King's comments, and primarily wants to draw attention to the fact that Feinberg's protocol does not recognize punitive damages.

"Instead, Feinberg wants people to give up their rights to punitive damages," says Gisleson. "Even though we still do not know the full extent of harm that the spill has caused, Feinberg still wants people to release not just BP for any and all damages, but also give up claims against Transocean and Haliburton. Additionally, Feinberg is taking people's claims and using them against Transocean, Haliburton and the others to get BP's money."

King's letter puts into words what many attorneys are concerned about - the way Feinberg has acted in isolation, ignoring his and several other Attorneys' General offers to lend "legal and technical expertise," which is further evidenced by the protocol's lack of clarity.

The letter from Attorney General King's office to Kenneth Feinberg's firm can be found in its entirety on the Herman, Herman, Katz & Cotlar website, www.hhkc.com. If you have additional questions about the claims process, you may contact Soren Gisleson at sgisleson@hhkc.com or by calling 581-4892.

This firm and its partners are also partners in          230 Peachtree Street NW, Suite 2260          © 2009 Herman Herman Katz & Cotlar
Herman, Gerel, LLP (formerly known as Herman,          Atlanta, GA 30303          All Rights Reserved.
Mathis, Casey, Kitchens & Gerel, LLP)          404.880.9500          Terms of Use | Privacy Statement

**Disclaimer:** This website provides only general information about the HHKC Firm and should not be interpreted as legal advice. Any visitation to this site or any inquiries submitted do not represent an attorney-client relationship. Only a contract executed between the individual and the HHKC Law Firm can form an attorney-client relationship.