# EXHIBIT 4

## STEPHEN GILLERS
c/o New York University School of Law
40 Washington Square South
New York, New York 10012

December 28, 2010

Kenneth R. Feinberg, Esq.
Administrator
Gulf Coast Claims Facility
c/o Feinberg Rozen LLP
1455 Pennsylvania Avenue, NW
Washington, D.C. 20004

Dear Mr. Feinberg:

You have asked my advice regarding a letter to you, dated November 24, 2010, from James Caldwell, the Attorney General of Louisiana. Mr. Caldwell cites the "Protocol for Interim and Final Claims" issued by the Gulf Coast Claims Facility ("GCCF"). He asks you to "secure… approval" for the protocol from the State's Office of Disciplinary Counsel in Louisiana before issuing it to Louisianans. That office is presumably authorized, in the view of Mr. Caldwell, to confirm that as GCCF administrator you are "exempt from the ordinary rules, including rules concerning the giving of legal advice, that might otherwise apply." The rules Mr. Caldwell has in mind are apparently those that govern lawyers. Although it is not entirely clear, the letter implies that your administration of the GCCF may bring you within Rules 4.2 and 4.3 of Louisiana's Rules of Professional Conduct. His basis for this conclusion seems to be the "public perception of your role as an attorney for BP."

Following your request for advice regarding Mr. Caldwell's letter, you have asked me to respond within the area of my expertise to any additional claims made by counsel in their memorandum and motion, filed December 21, 2010, in *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" In The Gulf of Mexico, on April 20, 2010*, pending in the United States District Court for the Eastern District of Louisiana (MDL No. 2179)("Oil Spill Class Action"). I have read the motion and supporting memorandum and the declaration of Basile Uddo submitted with it. The memorandum cites Rules 4.2, 4.3 and 2.4(b). Mr. Uddo cites Rules 4.3 and 2.4(b).

In the event you choose to share this letter with others, let me briefly summarize my qualifications for writing it. I have been a professor of law at New York University School of Law since 1978 and Vice Dean from 1999-2004. I do almost all of my research and writing on the regulation of the legal profession. I am the author of Regulation of Lawyers: Problems of

1

Law and Ethics, a widely used law school casebook first published by Little, Brown (now Aspen) in 1985 and now in its 8th edition (2009). I am also co-editor of Regulation of Lawyers: Statutes and Standards (Aspen 2011), a 1150 page compilation of ethical and other rules governing American lawyers and judges published yearly since 1989. I have spoken frequently on legal ethics, in the United States and abroad, at law firms, bar conferences, corporate law offices, judicial conferences, and law school lectureships. A complete resume can be found at the New York University School of Law website > Faculty > Faculty Profiles.

**RULES DISCUSSED HERE**

The jurisdictions whose rules could be applicable to your work and the work of Feinberg Rozen LLP are Washington, D.C., where you practice and are admitted and the firm is located, and the Gulf States in which most of the claimants to the GCCF may live or are located (Alabama, Florida, Louisiana, Mississippi, and Texas). I will use the Louisiana rules in my analysis in light of the letter from Mr. Caldwell and because the rules of the other relevant jurisdictions are substantially equivalent except that Alabama and Texas do not have a direct equivalent to Rule 2.4. The rules of each jurisdiction derive from the American Bar Association's Model Rules of Professional Conduct. I have served on various ABA committees whose work concerns the content of the rules and their adoption.

Louisiana Rule 4.2 provides:

In representing a client, a lawyer shall not communicate about the subject of the representation with:

(a) a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

(b) a person the lawyer knows is presently a director, officer, employee, member, shareholder or other constituent of a represented organization and

(1) who supervises, directs or regularly consults with the organization's lawyer concerning the matter;

(2) who has the authority to obligate the organization with respect to the matter; or

(3) whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability.

Louisiana Rule 4.3 provides:

In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role

2

in a matter, the lawyer shall make reasonable efforts to correct the misunderstanding. The lawyer shall not give legal advice to an unrepresented person, other than the advice to secure counsel, if the lawyer knows or reasonably should know that the interests of such a person are or have a reasonable possibility of being in conflict with the interests of the client.

Louisiana Rule 8.4 provides:

It is professional misconduct for a lawyer to:...

(c) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) Engage in conduct that is prejudicial to the administration of justice...

Louisiana Rules 2.4 provides:

(a) A lawyer serves as a third-party neutral when the lawyer assists two or more persons who are not clients of the lawyer to reach a resolution of a dispute or other matter that has arisen between them. Service as a third-party neutral may include service as an arbitrator, a mediator or in such other capacity as will enable the lawyer to assist the parties to resolve the matter.

(b) A lawyer serving as a third-party neutral shall inform unrepresented parties that the lawyer is not representing them. When the lawyer knows or reasonably should know that a party does not understand the lawyer's role in the matter, the lawyer shall explain the difference between the lawyer's role as a third-party neutral and a lawyer's role as one who represents a client.

**ANALYSIS**

In connection with your request, we (Barbara S. Gillers, Esq., who has assisted with legal research with your permission, and I) have reviewed numerous court and bar ethics committee opinions regarding Rules 4.2 and 4.3 in Louisiana and Washington, D.C.

Rule 4.2 ensures that in representing their clients lawyers will not attempt to take advantage of the client of another lawyer in the matter. "The dual purposes behind Rule 4.2 are to prevent disclosure of attorney/client communications, and to protect a party from 'liability-creating statements' elicited by a skilled interrogator." State v. Gilliam, 748 So.2d 622, 638 (La. App. 1999)(citing Jenkins v. Wal-Mart Stores, Inc., 956 F.Supp. 695 (W.D. La. 1997). The prohibition of communication when a lawyer knows that another person has counsel in a matter in which the lawyer is representing a client prevents the lawyer, for example, from learning information from an opposing client that may be protected by applicable law. The rule requires that the lawyer "know[]" that the person with whom he or she is communicating has counsel in the matter. Knowledge means actual knowledge, which can be inferred from the circumstances. Terminology, Louisiana Rule 1.0(f). In re Katrina Canal Breaches Consolidated Lit., 2008

3

Westlaw 2066999 at *5, *6 (E.D. La. 2008)(requirement of actual knowledge). See also Oklahoma Bar Assn. v. Harper, 995 P.2d 1143 (Okla. 2000)("explicit language of the rule requires actual knowledge of the representation on the matter of the subject of the communication").

Rule 4.3 recognizes that in dealing on behalf of a client a lawyer will often have to communicate with persons who are *not* represented by a lawyer, which may include an opposing party but is more likely to include unrepresented witnesses and other sources of information. The rule requires lawyers to make their role clear when the person with whom they are communicating misunderstands that role as the lawyer knows or should know. For the same reason, the lawyer cannot suggest that he or she is disinterested when, of course, as a lawyer representing a client, that is not so. Finally the rule forbids the lawyer who is dealing on behalf of a client to give legal advice to a person who is not represented by counsel if the interests of that person may conflict with those of the lawyer's client.

Like Rule 4.2, though in a different context, Rule 4.3 is intended to prevent a situation where a lawyer for a client may take unfair advantage of an unrepresented person. In re Guilbeau, 35 So.3d 207, 214 (La. 2010)(stating the requirements of Rule 4.3); Zichichi v. Jefferson Ambulatory Surgery Center, LLC, 2008 Westlaw 2859232 at *5 (E.D. La. 2008)(meaning of "advice").

Rules 4.2 and 4.3 govern lawyers acting for clients, that is, lawyers who are "representing a client" (Rule 4.2) or "dealing on behalf of a client" (Rule 4.3). They do not apply to lawyers who are not acting for a client. Rule 8.4 applies to the conduct of lawyers even when they are not acting in a representative capacity. Rule 2.4 applies to lawyers acting as third-party neutrals, like arbitrators and mediators.

As the administrator of the GCCF, you (including Feinberg Rozen) are not as acting on behalf of a client, nor are you representing a client. Indeed, a nonlawyer could act as administrator of the GCCF without engaging in the unauthorized practice of law as routinely defined. And of course the GCCF is not a law firm and not authorized to practice law.

You are not in an attorney-client relationship with BP. You are an independent administrator and owe none of the attributes of the attorney-client relationship (e.g., loyalty, confidentiality) to BP. By "independent" I mean (and I think the context is clear) that you are independent of BP. You are not subject to its direction or control.

Your status as "independent" has been emphasized in public announcements of your appointment, including by the White House Press Office on June 16, 2010 ("To assure independence, Kenneth Feinberg…will serve as the independent claims administrator"). By contrast, lawyers work for the benefit of their clients' interests, not independent of their interests. The "Gulf Coast Claims Facility Protocol for Interim and Final Claims" similarly recognizes that you are "a neutral fund administrator" and the GCCF "is an independent facility."

Further, the protocol provides that BP may appeal any of your awards over $500,000. Paragraph 6(B)(1). Paragraph 6(B)(2) provides that BP may appeal other decisions made by the

GCCF but only if you approve "in [your] sole discretion." These provisions are wholly inconsistent with the notion that you are BP's lawyer or its agent. Principals do not appeal the decisions of their agents. Agents exist to serve the interests of principals within the scope of the agency. The fact that BP has an interest in the success of the GCCF does not make you its agent or its lawyer. Nor does the fact that BP is paying you for your services do so. While payment to a lawyer can be some evidence of a professional relationship with the payer, payment is neither sufficient by itself nor necessary to create an attorney-client relationship. In fact, payment from BP, rather than from the fund itself, avoids a conflict between the interests of those who seek compensation from the fund and your interests if you were also relegated to compensation from the very same fund.

In addition, I am told that the written agreement between you and BP will contain the following language in substance, which explicitly recognizes the fact that you are not BP's lawyer or its agent:

> It is the express intention of the parties that Feinberg Rozen shall be an independent contractor throughout the Term of this Agreement. Except as otherwise agreed to by the parties, nothing in this Agreement shall in any way be construed to constitute Feinberg Rozen as an agent or representative of BP, and Feinberg Rozen shall otherwise perform the Services hereunder as an independent contractor. The execution of this Agreement shall not be construed to create an attorney-client relationship between BP and Feinberg Rozen, and the provision of Services hereunder shall not constitute, or be otherwise construed to constitute, provision of legal advice from Feinberg Rozen, or any of its partners or employees, to BP.

Because you are not representing a client in the work you are doing through the GCCF, you are not subject to the requirements of Rules 4.2 and 4.3.

Attorney General Caldwell suggests that the public may perceive you as BP's counsel. Public perception cannot create an attorney-client relationship. Except for court assignments, that relationship is created by contract express or implied between lawyer and client. Nevertheless, it is in the interest of the fair administration of the GCCF to re-emphasize to the public, even if redundant, that you are not BP's lawyer and owe it none of the duties that arise in a lawyer-client (or principal-agent) relationship. I make suggestions to further advance that goal below.

Unlike Rules 4.2 and 4.3, Rule 8.4 does govern the conduct of lawyers when they are not representing a client. As stated above, the rule forbids "conduct involving dishonesty, fraud, deceit or misrepresentation" and "conduct that is prejudicial to the administration of justice." Nothing I have seen in the disclosures to prospective claimants shows conduct inconsistent with Rule 8.4. Counsel in the Oil Spill Class Action does not cite Rule 8.4 as a basis for the requested relief. Neither does Mr. Uddo cite Rule 8.4 in his Declaration.

Rule 2.4 does not govern your work because you are not a third-party neutral in your role as the administrator of the GCCF. A third-party neutral is a person to whom two or more disputants have come for assistance in resolving a dispute between them. The neutral may be an arbitrator with the power to issue a binding decision. You, of course, do not have authority to

bind a claimant, who can always reject your decision. You do evaluate a claim but not between two or more disputants who present their dispute to you. Rather, you are administering a compensation scheme and making an offer to one claimant at a time. It is true that the end product of a claim may be to resolve a dispute when you make an offer that a claimant then chooses to accept. But you are still responding to the claim of a single claimant.

## RECOMMENDATIONS

You have asked me for suggestions of language you might include on the website of the GCCF and in GCCF documents not because the professional conduct rules discussed here require that you do so, but because you desire to advance the *policies* that underlie these rules so far as reasonably possible. I now do so. Proposed language is by way of example.

**FIRST**: I recommend that you take appropriate steps to ensure that anyone submitting a claim form who has counsel on the subject of the claim consult with counsel before providing information to the GCCF. By way of example, to this end, language in the claim form or other pertinent documents might provide:

> If you are currently represented by a lawyer in connection with any claim you believe you may have against BP, please do not submit this application until you have conferred with your lawyer about the decision to submit it and about your answers to its questions. If you then choose to submit this application, please have your lawyer submit the application for you. If you have already conferred with a lawyer prior to submitting this application and in providing answers to its questions, and the lawyer continues currently to be your lawyer in the matter, please have your lawyer submit this application for you or, with your lawyer's approval, supply your lawyer's name, firm name, address, phone number, fax number, and e-mail address and we will respond directly to him or her.

The goal of this language (tracking the *policy* behind Rule 4.2) is to ensure that any information a represented claimant gives to the GCCF has been approved by counsel. It also instructs that the GCCF will communicate with the claimant through counsel for so long as the representation continues. I stress that this language is an example. It can be edited as appropriate keeping its purpose in mind. I suggest that claimants be required to initial the language or sign an acknowledgement indicating that they have read and understood it. If a claimant does identify a lawyer who represents him or her, I recommend that before proceeding, the GCCF contact that lawyer and confirm that the lawyer approves of submission of the claim form.

I understand that you have arranged with the Mississippi Center for Justice to provide those who qualify and do not have a lawyer but want one to receive legal counsel at no expense to them. This will bolster the fairness and appearance of fairness of the process. However, please note that Louisiana Rule 1.8(f) (and counterparts in the Model Rules and the rules of Washington, D.C., and the other Gulf States) provides:

> (f) A lawyer shall not accept compensation for representing a client from one other than the client unless:

6

(1) the client gives informed consent, or the compensation is provided by contract with a third person such as an insurance contract or a prepaid legal service plan;

(2) there is no interference with the lawyer's independence or professional judgment or with the client-lawyer relationship; and

(3) information relating to representation of a client is protected as required by Rule 1.6.

Under this rule, payment of a legal fee to the lawyer for another person does not create an attorney-client relationship between the lawyer and the person paying the fee. Because I understand that BP will pay the legal fees of the counsel provided through the Mississippi Center for Justice, the claimant must be informed that BP is paying the lawyer and, of course, the lawyer must understand his or her obligations under Rule 1.8(f)(2) and (f)(3) and counterparts in other jurisdictions. You should inform the claimant in writing of BP's payment and get initialed confirmation.

**SECOND:** I recommend that you take appropriate steps further to dispel any possible confusion among potential claimants over the role of the GCCF and its personnel in settling claims. This can be done, as feasible, with language in a prominent font on forms claimants complete and in signs and any relevant printed matter at GCCF locations as appropriate. The answer to the first of the Frequently Asked Questions on the GCCF website can be repeated in documents given to claimants with the additional language underscored below (which might be added to the FAQs on the website), by way of example:

> The Gulf Coast Claims Facility ("GCCF") is an independent claims facility for submission and resolution of claims of Individuals and Businesses for costs and damages incurred as a result of the oil discharges due to the Deepwater Horizon incident on April 20, 2010 (the "Spill"). BP has agreed to contribute funds to an escrow account to be used to pay claims submitted to the GCCF. The GCCF is administered by Kenneth R. Feinberg (the "Claims Administrator"), a neutral fund administrator responsible for all decisions relating to the administration and processing of claims by the GCCF.
>
> <u>The GCCF is not a law firm. No one at the GCCF can give you personal legal advice or advise you regarding settlement of any claims, including whether to file a claim with the GCCF or the worth of any claim you may have. No one at the GCCF can represent you. If you wish to consider filing an action in court instead of filing a claim with the GCCF, you should consult a lawyer if you have not already done so.</u>

The goal of this language (tracking the *policy* behind Rule 4.3) is to ensure that claimants understand the nature of the facility and do not mistakenly infer that its personnel can give them legal advice or serve as their lawyers.

7

    GCCF personnel should be aware of and comply with the limitations on their activities as described in the language quoted above.

    **THIRD:** Class counsel appears troubled by your use of the word "independent" despite explanations of its meaning on the website's FAQs. Their suggestion that you are not independent because you are BP's lawyer is wrong. You are not BP's lawyer. Nor are you its agent. However, it may help meet any concern if you expand on what you mean by "independent" in appropriate disclosures. I understand you to mean that your decisions about whether a claimant is entitled to compensation and the amount of the compensation are yours alone, subject only to the limited appeal authority in the protocol, and that in reaching your decisions you have no duty to serve the interests of any organization or person, including BP. I recommend that you supply this additional explanation of the meaning of "independent" on the GCCF website's FAQs.

    If I can be of any further assistance, please let me know.

    Sincerely yours,

    *Stephen Sillen*