# EXHIBIT 7

Case 2:10-md-02179-CJB-DPC   Document 963-7   Filed 01/10/11   Page 2 of 6
Case 3:10-cv-00141-MCR-MD   Document 46   Filed 06/17/10   Page 1 of 5

Page 1 of 5

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DEWEY DESTIN, an individual, and
EDGEWATER BEACH OWNER'S
ASSOCIATION INC., a Florida condominium
owners' association, on their own behalf
and on behalf of all others similarly situated,

    Plaintiffs,

v.                                                                   CASE NO. 3:10-cv-00141-MCR-MD

BP, PLC,
BP PRODUCTS NORTH AMERICA, INC.,
BP AMERICA, INC.,
BP EXPLORATION AND PRODUCTION, INC.,
BP CORPORATION NORTH AMERICA, INC.,
TRANSOCEAN, LTD, et al.,,

    Defendants.

_____/

## ORDER

    This matter is before the court on the BP Defendants' "Emergency Motion for the Court to Determine That Plaintiffs' Emergency Motion for Preliminary Injunction Is Moot and to Set Aside the Preliminary Injunction Hearing, or in the Alternative, to Continue the Preliminary Injunction Hearing for Thirty Days," which was filed today.[1] Doc. 42. The Plaintiffs have responded. Doc. 43. Considering the arguments of the parties and the recent development of a new claims process and relief fund, the court agrees with the BP Defendants that the pending motion for preliminary injunction is now moot. The court further agrees that the question of whether judicial intervention over the new claims process is necessary and proper is not yet ripe for review by this court.

    Previously, this court set the Plaintiffs' Emergency Motion for Preliminary Injunction, on

---

[1] The undersigned was unable to review the instant motion until late this afternoon, having spent the entire day interviewing candidates for a Magistrate Judge position in the Gainesville Division.

Case 2:10-md-02179-CJB-DPC   Document 963-7   Filed 01/10/11   Page 3 of 6
Case 3:10-cv-00141-MCR-MD   Document 46   Filed 06/17/10   Page 2 of 5

Page 2 of 5

an expedited briefing schedule and for evidentiary hearing, to be held June 18, 2010, which is tomorrow. Doc. 25.[2] In their motion to deny Plaintiffs' motion and cancel the hearing, BP Defendants argue that the agreement reached yesterday between the President of the United States and BP, which establishes an Independent Claims Facility and a twenty billion dollar fund to pay claims resulting from the Gulf oil spill, renders Plaintiffs' motion for a preliminary injunction moot. Specifically, the BP Defendants state:

> [W]ith the newly announced creation of the ICF by the White House and BP, Plaintiffs have an adequate remedy in the creation of this independent claims process. As a result of the agreement between the President and BP, the claims process will be independent, with monies paid into a claims fund by BP. Any judicial oversight would be duplicative of the efforts of the ICF. By the Presidentially-approved appointment of an independent claims fund and independent administrator Ken Feinberg, the claims process will now have all the oversight that Plaintiffs motion sought, and more. Consequently, Plaintiffs' request for injunctive relief is clearly moot.

According to the BP Defendants, because the motion for protective order is now moot, Plaintiffs' request for preliminary relief should be denied outright and tomorrow's evidentiary hearing canceled.

In the alternative, the BP Defendants ask that the evidentiary hearing be continued for thirty days for two reasons. First, its major witness, Darryl Willis, Vice President of Resources for BP America Production Company and the person designated to oversee BP's claims process, will be significantly hampered in his ability to manage the transition of the claims process from BP's control to the control of the Independent Claims Facility if he is required to appear to testify at tomorrow's hearing. Additionally, the BP Defendants argue the judicial prudence of allowing the Independent Claims Facility to function for thirty days before determining whether further judicial intervention over the claims process.

The motion for preliminary injunction is concerned solely with the claims process as it currently exists, which the Plaintiffs describe as follows:

> [an] inadequate, unduly cumbersome, and unconscionable claims procedure, which attempts to force claimants to surrender their legal claims or right to legal

---

[2]The case was stayed in all other respects, however, pending a transfer decision by the Judicial Panel on Multidistrict Litigation. See Doc. 23.

Case 2:10-md-02179-CJB-DPC   Document 963-7   Filed 01/10/11   Page 4 of 6
Case 3:10-cv-00141-MCR-MD   Document 46   Filed 06/17/10   Page 3 of 5

Page 3 of 5

> representation in order to obtain interim relief. Plaintiffs further move this Court to take specific preventive measures to ensure that the Defendants, in providing immediate, interim relief through their claims process, provide fair and efficient relief and do not engage in practices that would cause Plaintiffs, or members of the proposed Class, to surrender their legal claims, give up their right to representation, or any other unconscionable practice that would exacerbate the damages that the residents of Okaloosa and Walton counties have already suffered as a result of the Defendants' catastrophic oil spill in the Gulf of Mexico.

Doc. 15, p. 2. Indeed, the only relief requested in the motion is an order:

> (1) prohibiting Defendants from engaging in any tactics through its claims process that would adversely affect disaster victims' legal rights (including forcing them to give up their legal claims, or their right to legal representation in order to obtain interim relief); and (2) appointing a special master to oversee BP's claims process designed to provide emergency interim relief to the residents of Okaloosa and Walton counties who have been affected by the oil spill caused by the explosion of BP's Deepwater Horizon and to ensure that BP does not prevent the disaster victims from engaging in any form of self-help permitted by state or federal law.

Plaintiffs largely complain about BP's authority over the claims procedure and how that has negatively affected disaster victims' rights. However, under the agreement reached yesterday, BP is no longer in control of the process for resolving the claims of individuals adversely affected by the oil disaster, a development which, the court concludes, renders Plaintiffs' request for preliminary relief moot.[3]

Plaintiffs also express concern, however, over the time for transition from the former program to the new one and worry that the transition may take "many weeks, and probably months" during which time "the process continues in real time." Doc. 43, p. 2. Thus, they continue to argue for the temporary appointment of a Special Master whose sole purpose would be "reporting to the Court within 15 days and again 30 days after the Special Master's appointment, about the status of the claims process and the other steps being taken by the BP Defendants to protect the residents of Walton and Okaloosa Counties." Plaintiffs suggest that during this time anyone could contact the Special Master to provide information or grievances.

---

[3] Plaintiffs themselves "applaud the establishment of a fund that will be administered by someone independent of BP," thus acknowledging the end of the process about which they complain in their motion for preliminary relief.

Case 2:10-md-02179-CJB-DPC   Document 963-7   Filed 01/10/11   Page 5 of 6
Case 3:10-cv-00141-MCR-MD   Document 46   Filed 06/17/10   Page 4 of 5

Page 4 of 5

A hearing would be held at the end of forty days to assess the efficacy of the new claims procedures.

It would be pure speculation at this point for the court to try to predict how the new process will work for claimants. The purpose of the ripeness doctrine is to prevent "the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements...." *Pittman v. Cole*, 267 F.3d 1269, 1278 (11th Cir. 2001.) (quoting *Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1315 (11th Cir.2000)). When considering whether a claim is ripe, the court must "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* Considering the issue of fitness, the Eleventh Circuit has noted that "claims are less likely to be considered 'fit' for adjudication when they ... require 'speculation about contingent future events.'" *Cheffer v. Reno*, 55 F.3d 1517, 1524 (11th Cir.1995). Here, in order to decide the issues presented by Plaintiffs, the court would be required to engage in precisely this kind of "speculation about contingent future events." That is, the court would have to attempt to predict the success or failure of the new Independent Claims Facility. This is precisely the type of entanglement the Eleventh Circuit has counseled courts against involving themselves in.[4] *Pittman*, 267 F.3d at 1278. The court is without authority to issue such an advisory opinion. *See Preiser v. Newkirk*, 422 U.S. 395, 95 S.Ct. 2330 (1975).

Turning to the second form of relief requested in the motion for preliminary injunction; i.e., an order enjoining Defendants from "engaging in any tactics through its claims process that would adversely affect disaster victims' legal rights (including forcing them to give up their legal claims, or their right to legal representation in order to obtain interim relief.)", the court also finds this issue not ripe for review, in light of the recent developments. In their response, Plaintiffs do not suggest any specific interim action by the court regarding this relief; they merely suggest appointment of a temporary Special Master, whose purpose apparently would be

---

[4] The obvious potential for confusion and waste of resources were the court to appoint a Special Master to interact with members of the public, their attorneys, as well as the Defendants and their attorneys, at the very same time the executive branch is attempting to implement a new claims procedure makes the Plaintiffs' request for relief even more problematic and in fact contrary to the public interest.

Case 2:10-md-02179-CJB-DPC   Document 963-7   Filed 01/10/11   Page 6 of 6
Case 3:10-cv-00141-MCR-MD   Document 46   Filed 06/17/10   Page 5 of 5

Page 5 of 5

merely investigatory. Also, while Plaintiffs allege that the BP Defendants once attempted to require claimants to sign releases in order to obtain interim relief, they also admit that BP agreed to cease that practice as part of a Joint Stipulation entered in a separate case in Louisiana. Indeed, Plaintiffs do not allege that such tactics are actually continuing, but merely allege that "attempt[ing] such a tactic in the first place demonstrates that their [BP's] motivation is not to fully compensate those who have been damaged by their wrongful conduct, but to extinguish the Plaintiffs' claims as quickly and cheaply as possible." In short, the Plaintiffs are seeking an injunction based on speculation as to the BP Defendants' likely future motives and conduct. Such concerns may well be alleviated by the independence of the Independent Claims Facility administrator; nonetheless the present concerns amount to nothing more than speculation on which this court is powerless to act. *See Preiser*, 422 U.S. 395.

Accordingly, Plaintiffs' motion for preliminary injunction, Doc. 15, is denied, without prejudice to the Plaintiffs bringing a similar motion concerning the new claims procedure in the event a claim for immediate relief arises, one with concrete issues, capable of review. Any such motion should be supported by affidavits. The evidentiary hearing, set for June 18, 2010, is canceled. The case shall remain stayed in all other respects, pursuant to the order at Doc. 23.

**DONE and ORDERED** this 17th day of June, 2010.

s/ *M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**