# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG | * | MDL NO. 2179 |
| "DEEPWATER HORIZON" IN THE | * | |
| GULF OF MEXICO, ON APRIL 20, 2010 | * | Section: J |
| | * | Judge Barbier |
| This Document Relates to All Cases | * | Mag. Judge Shushan |

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

### MEMORANDUM IN OPPOSITION TO "PLAINTIFF'S MOTION TO SUPERVISE *EX-PARTE* COMMUNICATIONS BETWEEN BP DEFENDANTS AND PUTATIVE CLASS MEMBERS"

The lawfirm of Salas & Co., L.C. ("Salas"), which represents individuals and entities who own thousands of residential and commercial properties and many large developments, hotels and businesses in the Gulf Coast, files this Memorandum in Opposition to Plaintiffs' Motion to Supervise *Ex-Parte* Communications Between BP Defendants and Putative Class Members (the "PSC's Motion").

## I. INTRODUCTION.

In the PSC's Motion, the Plaintiff's Steering Committee ("PSC") asks the Court to (1) rewrite a Release and Covenant Not to Sue ("Release") that the Gulf Coast Claims Facility ("GCCF") is proposing to those claimants who wish to settle their claims relating to the oil spill through the GCCF mechanism, and (2) "manage" the GCCF's communications (through Mr. Kenneth Feinberg) with all claimants to the fund, regardless of whether they are represented by counsel. Salas and the clients it represents object to the PSC's requests. The clients represented

by Salas do not wish any interference by the PSC and they have not requested any assistance from the Court.

Salas represents individuals and entities who have filed, or will file, claims with the GCCF. With a few isolated exceptions, none is a party in this MDL proceeding. Salas and his clients have incurred extensive costs and time investigating, documenting and filing these claims with the GCCF, and in negotiations with the GCCF.

Salas respectfully submits that neither the PSC nor the Court should interject themselves into the private negotiations between parties represented by their own counsel. Represented claimants should be able to enter into any type of agreement or release with the GCCF, or any other party for that matter, without micromanagement by the PSC. Anything else would result in an unwarranted and unprecedented interference in the relation between clients and their retained counsel.

## II. THE JUSTICIABILITY DOCTRINES PROHIBIT THE COURT'S OR THE PSC'S INTERFERENCE WITH THE NEGOTIATIONS BEING CONDUCTED BY MR. FEINGERG WITH INDIVIDUALS AND BUSINESSES WHO ARE NOT PARTIES TO THIS LITIGATION.

The PSC's Motion asks the Court to interfere with the negotiations being carried out between parties who are not before the Court. The justiciability doctrines prohibit the Court's and the PSC's interference with those negotiations.

**1. The Justiciability Doctrines.**

Article III, § 2 of the United States Constitution provides that federal courts have jurisdiction only if presented with a "Case" or "Controversy." The requirement of a case or controversy imposes a "dual limitation" upon the federal courts. *See Flast v. Cohen*, 392 U.S. 83, 94, 88 S. Ct. 1942, 20 L.Ed. 2d 947 (1968). First, the requirement of a case or controversy

2

serves to "limit the business of federal courts to questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process." *Id.* Second, the requirement of a case or controversy serves to "define the role assigned to the judiciary in a tripartite allocation of power to assure that the federal courts will not intrude into areas committed to the other branches of government." *Id.* This "dual limitation" found in the requirement of a case or controversy is enforced by what have been termed the justiciability doctrines of Article III, which states the fundamental limits on federal judicial power in our system of government. *See Allen v. Wright*, 468 U.S. 737, 750, 104 S. Ct. 3315, 82 L.Ed.2d 556 (1984). "Concerns of justiciability go to the power of the federal courts to entertain disputes, and to the wisdom of their doing so." *Renne v. Geary*, 501 U.S. 312, 316, 111 S. Ct. 2331, 115 L.Ed.2d 288 (1991). The justiciability doctrines include principles such as the prohibition against advisory opinions, standing, ripeness, mootness, and the political question doctrine. *See generally Erwin Chemerinsky, Constitutional law: Principles and Policies* 46 (Aspen Law & Business 1997). "The Article III doctrine that requires a litigant to have 'standing' to invoke the power of a federal court is perhaps the most important of these doctrines." *Allen*, 468 U.S. at 750, 104 S. Ct. 3315.

> **2. The PSC lacks standing to assert any claims on behalf of individuals and entities who are not before the Court and are not represented by the PSC.**

The doctrine of "standing" ensures that a litigant is the proper party to bring a matter before a federal court for adjudication, by asking if that specific litigant has a sufficient stake in the matter to invoke the federal judicial process. This central principle of United States Supreme Court jurisprudence has deep historical roots. *See Miss. & M.R. Co. v. Ward*, 67 U.S. 485, 491,

3

2 Black 485, 17 L.Ed 311 (1863) ("unless he shows that he has sustained, and is still sustaining, individual damage, he cannot be heard"). As the Supreme Court recently reiterated: "We have consistently stressed that a plaintiff's complaint must establish that he has a 'personal stake' in the alleged dispute, and that the alleged injury suffered is particularized as to him." *Raines v. Byrd*, 521 U.S. 811, 819, 177 S.Ct. 2312, 138 L.Ed. 2d 849 (1997).

The modern formulation of the constitutional limitations of the standing doctrine was elucidated in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1192), where the Supreme Court stated:

> Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered any injury in fact-an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of-the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan*, 504 U.S.at 560-61, 112 S.Ct. 2130 (citations and internal quotations omitted). None of those elements are present in our case as to justify the PSC's requests. No-one has suffered injury in fact as a result of any thing that Mr. Feinberg has said or not said. Any injury is conjectural or hypothetical and exists only in the minds of the PSC. Moreover, any injury would be caused by a party who is not before the Court, (Mr. Feinberg) to parties who are also not before the Court and the Court simply lacks jurisdiction over them or any controversy that could only become ripe for adjudication <u>after</u> those negotiations are concluded. The PSC is wrong in arguing that claimants who are negotiating with the GCCF are putative class members.

4

### 3. The political question doctrine prohibits the Court's interference with a process established by the Executive Branch of government.

It is well established that the federal courts will not adjudicate questions that fall within the purview of the political question doctrine. *See Baker v. Carr*, US. 186, 210, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). Like standing, mootness and ripeness, the political question doctrine is a justiciability limitation with its prudential roots dating back to the 18th century. *See e.g., Hayburn's Case*, 2 U.S. 408 (2 Dall. 409), 410, 1 L.Ed 436 (1972) (invalidating a statute authorizing the Executive branch to accept or reject federal court determinations of pension eligibility for Revolutionary War veterans); *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 170 2 L.Ed. 60 (1803) ("Questions, in their nature political, or which are, by the constitution and laws, submitted to the executive, can never be made in this court,"). The political question doctrine restricts judicial review that might interfere with other branches of the federal government. *See McIntyre v. Fallahay*, 766 F.2d 1078, 1081 (7th Cir. 1985).

Here, the GCCF was established and Mr. Feinberg was appointed by the President of the United States. Any interference by this Court with the process established by the Executive branch is prohibited by the political question doctrine.

### III.  CONCLUSION.

For all the reasons stated above, as well as those stated in BP's Memorandum in Opposition (Doc. 963), which is incorporated and adopted herein, Salas respectfully requests that the Court deny the PSC's Motion.

**RESPECTFULLY SUBMITTED BY:**
*s/* Camilo K. Salas III
Camilo K. Salas III (LA Bar No. 11657)
SALAS & Co., L.C.
650 Poydras Street, Suite 2000
New Orleans, LA 70130
Telephone: (504) 799-3080
Fax: (504) 799-3085
E-Mail:  csalas@salaslaw.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the above and foregoing MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO SUPERVISE *EX-PARTE* COMMUNICATIONS BETWEEN BP DEFENDANTS AND PUTATIVE CLASS MEMBERS has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana using the CM/ECF system, which will send notification of such filing in accordance with the procedures established in MDL 2179, on this 7th day of January, 2011.

*/s/*Camilo K. Salas III

6