**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG | * | MDL NO. 2179 |
| "DEEPWATER HORIZON" IN THE | * | |
| GULF OF MEXICO, on APRIL 20, 2010 | * | |
| | * | |
| | * | |
| THIS DOCUMENT RELATES TO: | * | JUDGE BARBIER |
| | * | |
| ALL CASES | * | MAG. JUDGE SHUSHAN |
| | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF
MOTION TO SUPERVISE *EX PARTE* COMMUNICATIONS BETWEEN THE
BP DEFENDANTS AND PUTATIVE CLASS MEMBERS**

Plaintiffs respectfully submit the following Reply Memorandum in Support of their Motion to Supervise *Ex Parte* Communications Between the BP Defendants and Putative Class Members:

**MAY IT PLEASE THE COURT:**

BP's Opposition confuses "independent contractor" with "independent" mediator, crawfishes on the issue of Feinberg-as-adjuster, and misstates the law.  Being BP's "independent contractor" and being "independent" in the claims process are not the same.  Mr. Feinberg answers to BP and is subject to BP's ultimate control.  The BP-Feinberg Rozen Law Firm Contract (signed the day before BP's Opposition was filed) clearly shows that Feinberg is hemmed in by BP.  Mr. Feinberg is doing BP's bidding while using BP's assets, BP's facilities, BP's subcontractors, following BP's

"Code of Conduct," BP's Security Requirements, and reporting to BP pursuant to BP's Confidentiality Agreement.

As much as BP struggles, it is left with the inexplicable conclusion that Federal Rule of Civil Procedure 23(d)(1) provides support for this Court to supervise communications by BP (and its "independent contractor") with putative class members, and that Judge Fallon in <u>Murphy Oil</u> did, in fact, place limitations on the defendants' communication with the putative class during the claims process.  The very existence of the presentment requirement (which requires some putative class members to engage BP in pre-suit communications) creates an environment ripe for abuse.  This is no different from an on-going business relation between defendants and the members of a potential class that district courts have repeatedly held requires special attention.

I.     **BEING AN "INDEPENDENT CONTRACTOR" IS NOT THE SAME AS BEING "INDEPENDENT."**

Just as  in the Katrina litigation, where insurance companies used "independent adjusters" to help settle/adjust claims with insureds, BP has hired Kenneth Feinberg as its "independent adjuster" to help settle claims with the hundreds of thousands of people who have been damaged in their occupations, businesses, and property by the Deepwater Horizon oil spill.  However, the insureds in a Katrina claim knew that the "independent adjuster" was hired and paid by the insurance company, was performing the insurance company's obligation, and was answering to the insurance company.

In this case, BP argues that its "independent adjuster" is an "independent contractor" and, thus, "independent."  BP confuses the fundamental difference between being "independent" and

being an "independent contractor" – *i.e.* control over the means by which an objective is to be achieved, as opposed to the objective itself.[1]  The Feinberg Rozen Law Firm, in this regard, may exercise some ("independent") level of control over the means by which BP fulfills its legal responsibility to maintain and administer a claims process, but that does not mean either that the Feinberg Rozen Law Firm is acting "independently" from BP, or that the goal of GCCF is to pay claims with fair and neutral "independence."

Indeed, the BP-Feinberg Rozen Law Firm Contract lays bare who controls whom, and BP's failure to provide key documents that explain Worley Claims Service's role, and the nature of the GCCF itself demonstrate that BP is not willing to make a full meaningful disclosure.

### A.     What is the GCCF and Why Won't BP Tell Us?

Despite BP's 30-page Opposition, with hundreds of pages of Defense Exhibits, neither the Court, the plaintiffs, nor the putative class members have been provided with:

- Any Trust Agreement, Articles of Incorporation, Executive Order, Legislative Act, or Regulation establishing the GCCF as anything other than the d/b/a of either the Feinberg Rozen Law Firm or BP; [2]

---

[1] Black's Law Dictionary defines "independent" as "not subject to control, restriction, modification, or limitation from a given outside source" and defines "independent contractor" as "[g]enerally, one who, in exercise of an independent employment, contracts to do a piece of work according to his own methods and is subject to his employer's control only to the end product or final result of his work."  BLACK'S LAW DICTIONARY, at 770 (6th ed. 1990).

[2] In its Opposition, BP points to the GCCF's website for the proposition that the GCCF is not a law firm. Opposition, at 6.  In the Declaration of Geir Robinson, BP's Director of Claims, he briefly states that "Mr. Feinberg established the GCCF."  Robinson Declaration, ¶ 3, attached as Exhibit 2 to BP's Opposition.  But this is directly contrary to the Trust Agreement which explicitly states that BP as Grantor of the Trust "has established the Gulf Coast Claims Facility (the "GCCF") to be administered by Kenneth R. Feinberg."  Trust, ¶ 2, attached as Exhibit "F" to Plaintiffs' Memorandum.

- Any Executive Order, Legislative Act, Regulation or Contract either "appointing" or "jointly appointing" Mr. Feinberg or the Feinberg Rozen to administer the BP Claims Process or Gulf Coast Claims Facility; or

- Any document or other explanation of the manner in which the GCCF and its Protocols (including the Release at issue) were established, developed and/or approved by the Feinberg Rozen Law Firm and/or BP.

If BP controls the GCCF, not Feinberg, then BP could be authorized to implement the rules for the adjustments of the GCCF claims. BP could also implement the rules that the boot-on-the-ground adjusters (such as Worley) need to follow, thereby controlling much of the claims valuation that is taking place.

This is a remarkable "oversight" because it is the hallmark of Feinberg's role – administrator of the GCCF. If the GCCF is a BP-created entity (as the Trust Agreement declares), then Feinberg is not only paying out BP funds (as well as collecting them) but he is directing and/or managing BP assets and staff. If the GCCF is nothing more than Feinberg Rozen's alter-ego, then the GCCF is a law-firm -- a law-firm retained by BP with no "buffering" of assets or personnel, a lawyer for hire. In either case, BP's deliberate silence should be viewed as a direct attempt to conceal the true nature of BP's relationship with Feinberg.

It seems disingenuous for BP to argue what Feinberg is not without disclosing what the GCCF is.

**B.    The BP-Feinberg Rozen Law Firm Contract Conclusively Shows That Feinberg is Not "Independent" and BP's Failure to Include (or Produce) the BP-Worley Contract is Most Telling of All.**

Mr. Feinberg is doing BP's bidding while using BP's assets, BP's facilities, BP's subcontractors, following BP's "Code of Conduct," BP's Security Requirements, and reporting to

BP pursuant to BP's Confidentiality Agreement.  This is not "independence."  The BP-Feinberg

Rozen Law Firm contract provides that Feinberg must follow all of these BP rules and more:

- The Feinberg Rozen Law Firm must follow the claims protocol set forth by GCCF, but it remains unclear whether BP created the claims protocol that Feinberg must follow.  <u>BP-Feinberg Rozen Law Firm Contract</u>, ¶ 1.

- Feinberg Rozen's compensation includes reimbursement for costs, business expenses, and attorneys' fees and costs in addition to his $850,000 per month.  <u>Id.</u> at Exhibit "C" to <u>Defendants' Opposition</u>.

- The Feinberg Rozen Law Firm must discharge any employees or subcontractors who do not meet the "standards of performance" as set forth in the Contract – a determination influenced by BP's ability to  withhold indemnity.  <u>Id.</u> ¶¶ 1(d) & 3(a).

- BP has authority to refuse to indemnify Feinberg Rozen Law Firm employees or subcontractors.  <u>Id.</u> at ¶3(c).

- Feinberg has authority to disclose confidential information to BP.  <u>Id.</u> at ¶4(a).

- BP allows the Feinberg Rozen Law Firm to use BP assets such as "computers, equipment, furniture, properties, infrastructure, and other assets."  <u>Id.</u> at ¶5(a).

- BP allows the Feinberg Rozen Law Firm to access "certain facilities, properties, and offices owned by BP its affiliates or their service providers."  <u>Id.</u> at ¶5(b).

- Feinberg must comply with BP's IT and security requirements.  <u>Id.</u> at ¶5(c).

- The Feinberg Rozen Law Firm must comply with BP's "Code of Conduct" (a copy of which was not attached to BP's Opposition).  <u>Id.</u> at ¶5(d)(ii).

- Feinberg must comply with BP's "environmental, safety and health policies and physical security policies."  <u>Id.</u> at ¶5(d)(iii).

- The Feinberg Rozen Law Firm must report information to BP sufficient for BP "to comply with OPA."  <u>Id.</u> at ¶6(a).

- The Feinberg Rozen Law Firm must submit claims files to BP upon written request by BP.  <u>Id.</u> at ¶6(b).

- Feinberg must submit to BP audits.  <u>Id.</u> at ¶6(d).

- Feinberg is not allowed to change the terms of the BP-Worley Claims Service Agreement or the GCCF-Worley Claims Services Agreement without BP's consent

(neither Agreement was attached to BP's Opposition).  Id. at ¶8(a).

- BP has absolute right to discharge the Feinberg Rozen Law Firm if Feinberg breaches his "fiduciary duty to expend funds or administer and resolve claims in accordance with the Claims Protocols."  Id. at ¶10(b)(2).

- BP has absolute authority over all Claims information after Feinberg is removed or withdraws.  Id. at ¶ 10(d).

Numerous other provisions in the Contract challenge BP's claim that Feinberg is independent.  The Contract was signed the day before BP's Opposition to Plaintiffs' motion was due (1/6/11), not when Feinberg commenced his work.  The Contract is between Feinberg and BP, not between Feinberg and the White House, the Trust, or even the U.S. Coast Guard.  See also Declaration of Geoffrey Hazard, Jr., at ¶¶ 11 & 12, attached as Exhibit "1."

Finally, BP's failure to provide copies of the BP-Worley Claims Service Agreement and the GCCF-Worley Claims Services Agreement provides a glaring question as to who is really controlling the boots-on-the-ground adjusters, the ones who are really making the decisions concerning payment of claims.  The condition that Feinberg is unable to change their terms without BP approval more than suggests that BP has established the rule for payment of claims, not Feinberg.

### C.     OPA-Mandated Responsibility Defeats Any Pretense of "Independence" Because Feinberg's Actions are Necessarily Attributable to BP.

The fundamental principle that BP repeatedly ignores is that Mr. Feinberg's central function is BP's statutory obligation to establish a claims process, allow OPA claimants to make presentment, and pay interim claims.  Mr. Feinberg's ongoing characterization as "independent" causes very real problems in the OPA scheme.  BP delegated its statutorily required obligation to pay OPA claims to Feinberg.  As a result, BP is necessarily bound to Feinberg's decisions.  If Feinberg denies a claim

based on "lack of documentation" or "proximity," then BP will be limited to that as a defense after suit is filed.  If a claimant sends the application to Feinberg (at the GCCF), then it is the same as if it was sent to BP.  If Feinberg pays an emergency interim claim to a Texas claimant, and the Texas claimant then files suit because an agreement could not be reached as to a final amount, then BP would be precluded from arguing at trial that the Texas claimant did not suffer damage as a result of the spill or that it was not within proximity.   OPA presentment is BP's responsibility to accept. BP cannot shirk its responsibility or use Feinberg as some kind of shield or another layer of defense by alleging that he was "independent" and that his actions in the OPA-mandated presentment cannot be imputed to BP.

To allow Feinberg's conduct not to be binding on BP fatally undermines OPA's presentment requirement.    BP's delegation of the presentment requirement to Feinberg must also include everything that goes with it.  There must be complete accountability between Feinberg and BP.  To allow BP to drive a wedge between itself and Feinberg is allowing BP to create defenses it would not otherwise of had but for the delegation.

## II.   BP'S LAST MINUTE CHANGES TO THE RELEASE STILL DO NOT ADDRESS THE ROOT PROBLEMS.

To be absolutely clear: OPA does not mention, contemplate, or provide any authority for the use of a Release of litigation rights during the OPA-presentment stage.   OPA does not provide any mechanism to resolve (with a release or otherwise) punitive damage claims, maritime claims, medical monitoring or personal injury claims. Feinberg's motivation to use the OPA-presentment requirement as a tool to avoid litigation is unquestioningly a BP directive.  As a BP directive, the

Release should be clear to a layperson, contain necessary safeguards, be expressly limited to OPA claims against BP, and not infringe upon the Court's authority to supervise and manage this litigation and the putative class.

While BP did correct some of the problems with the Release, the Release language does not yet, but should be required to:

- Release only the BP entities providing payments thru the GCCF.

- Reserve General Maritime Law or other claims for punitive damages, which the GCCF does not consider, offer, or pay.

- Exclude spouses, minors, relatives, and business interests from the definition of "Claimant."

- Inform the putative class members of the MDL Litigation, the right to counsel, and the February 2012 trial date.

- Inform putative class members that the GCCF was created by BP, that Mr. Feinberg is BP's agent – or, at the very least, its limited agent – and a lawyer hired and paid by BP.

- Instruct BP, Mr. Feinberg and the GCCF to refrain from representations that Mr. Feinberg or the GCCF is "independent."

- Instruct BP, Mr. Feinberg and the GCCF to refrain from offering putative classmembers "free legal advice" or retaining the services of non-lawyer "respected local citizens" to provide legal advice to claimants regarding their claims.

- Instruct BP, Mr. Feinberg and the GCCF to refrain from advising putative class members that they should not retain counsel.

BP's Opposition fails to address the bulk of the above complaints other than to broadly suggest that a defendant can settle a broader set of claims with a claimant than what the defendant may be paying for.  However, this MDL is different.  It concerns the largest environmental disaster in the history of the United States, impacts the finance and culture of no less than five Gulf States,

and has caused BP's Release to be presented to a wide range of people with varying degrees of sophistication.  A putative class member can not knowingly waive his rights, if he does not know what his rights and options are to begin with.

The Communications and messages Mr. Feinberg telegraphs daily to putative class members are succinct but incomplete, often inaccurate or incorrect, and frequently contested.  For example:

Feinberg is only settling OPA claims.  Feinberg is only paying on behalf of BP.  Feinberg is trying to settle claims so that these people will not sue BP.  Feinberg is telling the public that he will pay more than this Court.  Feinberg is telling people that the spill is not nearly as bad as previously thought.  Feinberg is telling the claimants that there is no need to hire a lawyer – a lawyer  will only take 40%.  See Declaration of Edward F. Sherman, ¶ 14, attached as Exhibit "2."

Mr. Feinberg is NOT telling these claimants that they may have punitive damages claims. He is NOT telling them that he will use their settlements to extract a reimbursement from the other defendants.  Mr. Feinberg is NOT telling them that this Court could award claimants more than he is willing to pay.  He is NOT telling people that BP-funded scientists believe more time is needed before the true long-term effects of the spill are known.  Mr. Feinberg is NOT telling people to consult a lawyer about their rights or about what they will be giving up should they sign BP's release. See also Hazard Declaration, ¶ 7; Sherman Declaration, ¶ 15.

Similarly, and more recently, Mr. Feinberg is telling people who are dissatisfied with the GCCF process to make claims with the Coast Guard,[3] *without* informing them that:

---

[3] "Crowd Grows Angry During Ken Feinberg's Meeting in Bay St. Louis," wwltv.com, Bill Capo, attached as Exhibit "3."

1.      They may be giving up valuable claims against BP or other defendants;

2.      The funds available through the Oil Spill Trust Fund are limited;

3.      The claimants may not have satisfied the presentment requirements imposed by the Coast Guard; or,

4.      Every dollar paid by the Trust Fund is one less dollar paid by BP.

Plaintiffs refer the Court back to the arguments and factual support proffered in its Memorandum and remind the Court that when a defendant takes advantage of a statutorily mandated obligation by turning it into a vehicle to get putative class members to waive litigation rights through misinformation, then this Court has "both the duty and the broad authority" to protect those putative class members.

## III.    IF A LAWYER BY TRADE IS GIVING LEGAL ADVICE, HIRING LAWYERS, ADVISING ADVERSE PARTIES OF THE MERITS OF THE SCIENCE AND THE LITIGATION SYSTEM, AND PERFORMING WORK PURSUANT TO A CONTRACT SIGNED BY HIS LAW FIRM, THEN HIS CONDUCT IS SUBJECT TO THE RULES OF PROFESSIONAL CONDUCT.

Mr. Feinberg was retained to pursue a *legal* obligation – to fulfill BP's obligation to establish a claims process, allow claimants to present OPA claims, and to pay interim claims on an unconditional basis.  This legal requirement is itself a legal endeavor, requiring a lawyer to understand OPA and its obligations.  Even the BP-Feinberg Rozen Law Firm Contract which defines the scope of his services reflects this:   "Feinberg Rozen's determinations with respect to OPA claims will be guided by OPA and federal law.  Determinations with respect to non-OPA Claims will be guided by applicable law.  Feinberg Rozen Law Firm Contract, Exhibit "A," at 1 (emphasis supplied).

In addition to the materials and evidence provided in Plaintiffs' Memorandum, Mr. Feinberg continues to communicate legal positions to putative class members in at least two significant ways. First, Mr. Feinberg commissioned a legal memorandum from Harvard Professor John C.P. Goldberg purporting to analyze the legal principles surrounding the oil spill.  See Goldberg Memorandum, attached to the Supplemental Declaration of Basile Uddo as Exhibit "F".[4]   In a press release posted on the GCCF website, Mr. Feinberg promoted the memorandum as providing a legal proof that the GCCF will be more generous than this Court:

> The Goldberg Memorandum makes clear that proximity to the spill is a major requirement for a valid legal claim under the Federal Oil Pollution Control Act (OPA).  But, according to Feinberg, "the GCCF will be much more generous than current Federal and State law." Proximity is not a bar to a GCCF claim, but damage must still be proven.

GCCF Final Protocol Press Release, at 2 (11/24/10) (emphasis supplied), attached as Exhibit "E" to Uddo Supplemental Declaration.  Again, this an example of Feinberg making legal representations to putative class members.

Second, Feinberg has recently retained three law firms to provide, presumably, legal *pro bono* advice to putative class members who inquire about submitting a final claim.  "Information Regarding Free Legal Assistance," GCCF Website, attached as Exhibit "5."  It is unclear how the three firms will be paid or the extent of the contractual relationship between BP and these firms. One of the original three firms was shown to have a pre-existing attorney-client relationship with BP

---

[4]  The Supplemental Declaration of Basile Uddo is attached as Exhibit "4."

in the oil spill litigation. "Claims Operation Severs Ties to BP-Linked Law Firm," PRESS-REGISTER (1/12/11), attached as Exhibit "6."  Nonetheless, the putative class members deserve full  disclosure before seeking any BP-provided legal advice that is not approved by this Court.

BP's position that Mr. Feinberg is not its agent, not its attorney, and not answerable to this Court threatens the putative class members' right to not be coerced or materially misinformed:

> That it is a matter of no small concern that BP and Mr. Feinberg currently take the position that Mr. Feinberg is answerable to no one; no rules govern his conduct. BP asserts the Court has no authority to supervise Mr. Feinberg or the GCCF. Professors Ciolino and Gillers assert that he is not governed by the Rules of Professional Conduct, unless perhaps he commits a crime. Mr. Feinberg is not answerable to the White House or Congress. He is not a court supervised special master, nor is he carrying out some legislative mandate. He is apparently, according to BP, totally unfettered!  Except of course for a provision in their Agreement with Mr. Feinberg, which says "Feinberg Rozen shall perform its obligations…in a manner consistent with…BP's Code of Conduct." Not subject to the Court, Congress, the President or the Office of Disciplinary Counsel, but to BP.[5]

Now Mr. Feinberg appears to have hired "community leaders" such as a lawyer and former congressman to go out into certain communities and persuade putative class members to submit final claims and sign Releases.  "Anh Joseph Cao Helping Vietnamese With Oil Spill Claims," TIMES PICAYUNE (1/12/11), attached as Exhibit "7."  Are these "community leaders" disclosing themselves as BP's agents?  Are they advising putative class members that they could be releasing their rights to collect putative damages when they accept a settlement that only includes lost profits under OPA?

---

[5] Uddo Supplemental Declaration, ¶ 14.

These are significant legal questions that the putative class members are faced in the final claims protocol where BP's Feinberg is requiring the Release of all litigation rights – something not required by OPA. See also Uddo Supplemental Declaration, ¶¶ 7-12; Sherman Declaration, ¶ 14.

## IV.   THE COURT SHOULD EXERCISE ITS SUPERVISORY AUTHORITY WHERE OPA'S PRESENTMENT REQUIREMENT NECESSITATES THAT PUTATIVE CLASS MEMBERS INTERACT WITH BP AND ITS AGENTS.

Mr. Feinberg has repeatedly postured the GCCF as an alternative to the "tort system", but he does not operate in a parallel universe. The worlds of the GCCF and this MDL intersect by the very nature of presentment. Moreover, BP's decision to use presentment as a pretext to capture, for its own benefit, plaintiffs' claims against other defendants—the same claims entrusted to this Court's authority under 28 U.S.C. § 1407 and Fed. R. Civ. P. 23—places Mr. Feinberg and the GCCF on a collision course with this Court.

This scenario is more severe, in its threat to putative class members' rights, and its intrusion into the province of this Court to determine liability and allocation of fault, than the more routine situation of an ongoing business or employment relationship between defendants and class members that renders the class vulnerable to intimidation or coercion.

In its Opposition, BP repeatedly returned to the theme that since there was no "on-going business relationship" between the putative class members and BP, there was no need for the Court's heightened interest in insuring that the communications were not misleading or coercive. However, this argument completely ignores OPA's presentment requirement, which forces unrepresented putative class members to engage in the exchange of highly personal financial documents, explanation of claim calculation, and other communications which can be used against them in

Page 13

litigation.

OPA's presentment requirement has become an "on-going business relationship." As far back as May 2010 many claimants directly submitted claims to BP for payment. After Feinberg took over, many of these same claimants filed interim emergency claims through November 23, 2010. Now these same claimants are in the process of filing quarterly interim claims possibly through 2013. Three years of submitting financial information to BP's agent qualifies as an "on-going business relationship" which promotes an environment of coercion.

Courts have created the rule (which BP concedes) that these relationships deserve the Court's heightened attention and that communications and the exchange of documents can and should be supervised by the district court. See, e.g., Kleiner v. First Nat'l Bank of Atlanta, 751 F.2d 1193, 1197 (11th Cir. 1995); Jones v. Jeld-Wen, Inc., 250 F.R.D. 554, 561 (S.D. Fla. 2008); Hampton Harwarde, Inc. v. Cotter & Co., 156 F.R.D. 630, 631-32 (N.D. Tex. 1994). But, regardless of an on-going business relationship, Rule 23(d)(1) protects the members of a proposed class against coercion and mis-information. See, e.g., In re Currency Conversion Fee Antitrust Litigation, 361 F. Supp. 2d 237, 252 (S.D.N.Y. 2005) (stating that the district court's authority to regulate communications under Rule 23(d) "is not limited to communications that actually mislead or otherwise threaten to create confusion, but extends to communications that interfere with the proper administration of a class action or those that abuse the rights of members of the class"); Keystone Tobacco Co., Inc v. U.S. Tobacco Co., 238 F.Supp.2d 151, 154 (D.D.C. 2002) ("[T]he Court rejects defendants' position that it has no authority to limit communications between litigants and putative class members prior

to class certification.").

A Rule 23(d)(1) order is an exercise of the Court's case management authority.  It is not a Rule 65 injunction.  <u>Kleiner</u>, supra.  Thus, courts have held that a specific showing of abuse is not needed for a court to exercise authority; indeed, the goal of Rule 23(d)(1) orders is to prevent confusion, concern or abuse before it happens, by recognizing and regulating the situations in which the risk of such incursions into class members' rights can arise, before such rights are lost.  <u>See, e.g.,</u> <u>Abdallah v. Coca-Cola Co.</u>, 186 F.R.D. 672, 678 (N.D. Ga. 1999) ("Coca-Cola has not given the Court any reason to suspect that it will attempt to mislead its employees and coerce them into non-participation in this case. But simple reality suggests the danger of coercion is real and justifies the imposition of limitations on Coca-Cola's communications with potential class members.").  <u>See also</u> <u>Hazard Declaration</u>, ¶ 8.

## V.     AT THE VERY LEAST, THE BP DEFENDANTS, THE FEINBERG ROZEN LAW FIRM, AND THE GCCF SHOULD BE ORDERED TO MAKE THE DISCLOSURES THAT THEIR OWN EXPERT, MR. GILLERS, ADMITS ARE REQUIRED.

Professor Gillers, who was retained and paid by the Feinberg Rozen Law Firm and/or BP, opines that the BP Defendants, the Feinberg Rozen Law Firm and the GCCF should, at the very least, take the following steps:

- Inform claimants that if they are represented by counsel, advise them to consult with their attorney before submitting claims and request that the lawyer submit the claims for them, <u>LTR from Stephen Gillers to Kenneth Feinberg</u>, at 6 (12/28/10), attached as Exhibit "4" to BP's <u>Opposition</u>.

- Inform claimants that GCCF is not a law firm.  <u>Id.</u> at 7.

- Inform claimants that "no one at the GCCF can give you personal legal advice." <u>Id.</u>

Page 15

- Inform claimants that no one at the GCCF can "advise you regarding settlement of any claims." Id.

- Inform claimants that no one at the GCCF can advise you "whether to file a claim with the GCCF." Id.

- Inform claimants that no one at the GCCF can advise you about "the worth of any claim you may have." Id.

- Inform claimants that "no one at the GCCF can represent you." Id.

- Inform claimants that they should consult with a lawyer about whether to file a lawsuit. Id.

- Inform claimants that Mr. Feinberg's meaning of "independent" means that "decisions about whether a claimant is entitled to compensation and the amount of the compensation are [Feinberg's] alone, subject only to the limited appeal authority in the protocol . . . ." Id. at 8.

While some of these disclosures may have been made on the GCCF Website, the Court should ensure that such disclosures will remain intact, will be incorporated into any Release, and will accompany all other relevant oral and written communications with plaintiffs and putative classmembers.

**<u>Conclusion</u>**

For the above and foregoing reasons, and for the reasons further provided in the Motion and Exhibits submitted herewith, Plaintiffs' Motion should be granted.

This 17<u>th</u> day of <u>January</u>, <u>2011</u>.


Respectfully submitted,


    /s/   Stephen J. Herman                                    /s/ James Parkerson Roy

**Stephen J. Herman**, La. Bar No. 23129                       **James Parkerson Roy**, La. Bar No. 11511

**Soren E. Gisleson**, La. Bar No. 26302                   **DOMENGEAUX WRIGHT ROY & EDWARDS LLC**

820 O'Keefe Avenue                                       556 Jefferson Street, Suite 500

New Orleans, Louisiana 70113                      Lafayette, Louisiana 70501

Telephone: (504) 581-4892                         Telephone: (337) 233-3033

Fax No. (504) 569-6024                                Fax No. (337) 233-2796

E-Mail: sherman@hhkc.com                         E-Mail: jimr@wrightroy.com

*Plaintiffs Liaison Counsel*                            *Plaintiffs Liaison Counsel*


**PLAINTIFFS' STEERING COMMITTEE**

| | |
|---|---|
| Brian H. Barr | Robin L. Greenwald |
| LEVIN, PAPANTONIO, THOMAS, MITCHELL, ECHSNER & PROCTOR, PA | WEITZ & LUXENBERG, PC |
| 316 South Baylen St., Suite 600 | 700 Broadway |
| Pensacola, FL 32502-5996 | New York, NY  10003 |
| Office:  (850) 435-7045 | Office:  (212) 558-5802 |
| Telefax: (850) 436-6187 | Telefax: (212) 344-5461 |
| E-Mail: bbarr@levinlaw.com | E-Mail:  rgreenwald@weitzlux.com |
| | |
| | Rhon E. Jones |
| Jeffrey A. Breit | BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P. C. |
| BREIT DRESCHER & IMPREVENTO | 218 Commerce St., P.O. Box 4160 |
| 999 Waterside Drive, Suite 1000 | Montgomery, AL 36104 |
| Norfolk, VA 23510 | Office:  (334) 269-2343 |
| Office:  (757) 670-3888 | Telefax: (334) 954-7555 |
| Telefax: (757) 670-3895 | E-Mail:  rhon.jones@beasleyallen.com |
| E-Mail: jbreit@bdbmail.com | |

Elizabeth J. Cabraser
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Office:  (415) 956-1000
Telefax: (415) 956-1008
E-Mail:  ecabraser@lchb.com

Philip F. Cossich, Jr.
COSSICH, SUMICH, PARSIOLA & TAYLOR
8397 Highway 23, Suite 100
Belle Chasse, LA  70037
Office:  (504) 394-9000
Telefax: (504) 394-9110
E-Mail:  pcossich@cossichlaw.com

Robert T. Cunningham
CUNNINGHAM BOUNDS, LLC
1601 Dauphin Street, P. O. Box 66705
Mobile, AL  36660
Office:  (251) 471-6191
Telefax: (251) 479-1031
E-Mail:  rtc@cunninghambounds.com

Alphonso Michael "Mike" Espy
MORGAN & MORGAN, P.A.
188 East Capitol Street, Suite 777
Jackson, MS 39201
Office: (601) 949-3388
Telefax: (601) 949-3399
E-Mail:  mike@mikespy.com

Calvin C. Fayard, Jr.
FAYARD & HONEYCUTT
519 Florida Avenue, SW
Denham Springs, LA  70726
Office:  (225) 664-4193
Telefax: (225) 664-6925
E-Mail:  calvinfayard@fayardlaw.com

Ervin A. Gonzalez
COLSON HICKS EIDSON
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Office: (305) 476-7400

Matthew E. Lundy
LUNDY, LUNDY, SOILEAU & SOUTH, LLP
501 Broad Street
Lake Charles, LA  70601
Office:  (337) 439-0707
Telefax: (337) 439-1029
E-Mail:  mlundy@lundylawllp.com

Michael C. Palmintier
deGRAVELLES, PALMINTIER,
HOLTHAUS & FRUGE'
618 Main Street
Baton Rouge, LA  70801-1910
Office:  (225) 344-3735
Telefax: (225) 344-0522
E-Mail:  mpalmintier@dphf-law.com

Paul M. Sterbcow
LEWIS, KULLMAN, STERBCOW & ABRAMSON
601 Poydras Street, Suite 2615
New Orleans, LA  70130
Office:  (504) 588-1500
Telefax:  (504) 588-1514
E-Mail:  sterbcow@lksalaw.com

Scott Summy
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX  75219
Office:  (214) 521-3605
Telefax: (214) 599-1172
E-Mail:  ssummy@baronbudd.com

Mikal C. Watts (PSC)
WATTS GUERRA CRAFT, LLP
Four Dominion Drive, Building 3, Suite 100
San Antonio, TX 78257
Office: (210) 447-0500
Telefax: (210) 447-0501
E-Mail:  mcwatts@wgclawfirm.com

| Telefax: (305) 476-7444<br>E-Mail: ervin@colson.com | |
|---|---|

**SOREN E. GISLESON**

**GARY E. MASON**

**KEVIN R. DEAN**

**KEVIN GOLDBERG**

**JULIA LEMENSE**

*On Brief.*

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that the above and foregoing Reply Brief will be served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing will be electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, and will be provided as a courtesy to Kenneth R. Feinberg, Esq., *via* E-Mail and by U.S. Mail, this 17th day of January, 2011.

Kenneth R. Feinberg, Esq.
FEINBERG ROZEN LLP
1455 Pennsylvania Ave., NW
Washington, DC 20004
E-Mail: kfeinberg@feinbergrozen.com

/s/  James Parkerson Roy and Stephen J. Herman

# SUPPLEMENTAL EXHIBITS

1. DECLARATION OF GEOFFREY C. HAZARD, JR.

        Hazard Ex. A - THE OIL POLLUTION ACT OF 1990

        Hazard Ex. B - FEDERAL DISTRICT COURT SUPERVISION OF COMMUNICATIONS WITH PUTATIVE CLASS MEMBERS DURING PRE-CERTIFICATION STAGE

        Hazard CV

2. DECLARATION OF EDWARD F. SHERMAN

        Sherman CV

3. "Crowd Grows Angry During Ken Feinberg's Meeting in Bay St. Louis" WWLTV.com, January 10, 2011.

4. SUPPLEMENTAL DECLARATION OF BASILE J. UDDO

        Uddo Ex. S-A - Letter from K. Feinberg to Hon. Carl J. Barbier, Oct. 18, 2010.

        Uddo Ex. S-B - Letter from Langan to Plaintiff Liaison Counsel, Nov. 23, 2010

        Uddo Ex. S-C - "More Details on Feinberg's Oil Spill Compensation Process"

        Uddo Ex. S-D - "BP Fund Official: 'No Need for Individual to Sue'"

        Uddo Ex. S-E - GCCF Press Release, Nov. 24, 2010

        Uddo Ex. S-F - GOLDBERG OPINION

5. GCCF Website: INFORMATION REGARDING FREE LEGAL ASSISTANCE

6. "Claims Operation Severs Ties to BP-Linked Law Firm" al.com, Jan. 12, 2011.

7. "Ahn 'Joseph' Cao Helping Vietnamese with Oil Spill Claims" NOLA.com, Jan. 12, 2011.