# Legal Ethics Forum

January 19, 2011

## Claims Facilities and Nullification of Ethical Duties

The BP-Feinberg matter raises an issue that goes well beyond that case. That is, the use of a "Claims Facility" to permit a law firm to avoid otherwise applicable ethical rules. This device can be used in any case in which a defendant is potentially liable for multiple causes of action and/or a class action – e.g., for an oil spill; an airplane crash; a pharmaceutical that causes disability, death, or birth defects; etc. Here's how it works.

1. The defendant retains a law firm.
2. The defendant decides, unilaterally, the maximum amount for which it is willing to settle all claims against it.
3. The law firm creates a Claims Facility to administer the defendant's settlement fund.
3. The law firm, having been retained, then enters a contract with the defendant that expressly provides that, in administering the Claims Facility: (a) The law firm will provide its professional services in administering the fund, and that all employees will act in a professional manner; (b) The law firm has no conflicts of interest with the defendant with regard to its administration of the Claims Facility; (c) In administering the Claims Facility, the law firm will hold all client information in confidence, subject to specific exceptions, such as information that becomes generally known; (d) Before the law firm reveals any confidential information relating to the Claims Facility, e.g., in response to a statutory requirement or court order, the law firm will give timely notice to the defendant so that the defendant can seek a protective order; (e) All information gathered by the law firm from the claimants will ultimately be turned over to the defendant, with no restrictions as to its use; (f) Nevertheless, the law firm is an independent contractor and is not in a lawyer-client relationship with the defendant in its administration of the Claims Facility.
4. The law firm obtains an expert opinion saying that (a) There are no lawyer-client duties owed to the defendant by the law firm in the administration of the Claims Facility, such as loyalty and confidentiality; (b) There is no lawyer-client relationship between the law firm and the defendant in the administration of the Claims Facility; (c) Therefore, the law firm is not bound by ethical rules, such as MR 4.2, which forbids a lawyer in representing a client to unilaterally bypass an adverse party's lawyer and communicate directly with that party, or MR 4.3, which (i) forbids a lawyer in representing a client to state or imply to an unrepresented party that the lawyer is disinterested; (ii) requires a lawyer to correct misunderstandings in that regard on the part of the unrepresented party; and (iii) forbids the lawyer to give legal advice to the unrepresented party other than advice to secure counsel.

It seems to me that this kind of device can effectively nullify applicable ethical duties, as well as seriously impair access to justice on the part of claimants. Shouldn't something be done about this?

Posted by Monroe Freedman at 07:44 AM | Permalink

## Comments



I omitted paragraph 5:

5. Posing as an entity independent of the defendant, the law firm settles claims with individual plaintiffs, obtaining waivers of all rights against the defendant.

EXHIBIT 2

Posted by: Monroe Freedman | January 19, 2011 at 12:15 PM



What is the evidence that this kind of misconduct (bypassing counsel, misrepresenting status to unrepresented parties) is permitted by claims' facilities own rules and procedures or has in fact occurred?

Posted by: Steve Bundy | January 19, 2011 at 01:30 PM



As I said in my original posting, my involvement is limited and reluctant, and I have no direct evidence, except that I have read the contract (a subject that I have taught for half a century).

Certainly there is nothing in the contract that forbids such conduct. Indeed, the whole purpose of the "independent contractor" facade appears to be to free the law firm from the ethical duties of rules like 4.2 and 4.3. See Steve Gillers' expert witness opinion, which says that that is the effect. Why else would the device of a Claims Facility be used, instead of simply retaining the law firm to settle the claims - as it's doing?

In addition, there have been reports from the Gulf area (which I have not attempted personally to verify) that such practices are widespread, and that tens of thousands of claimants have signed away their rights without understanding what they were doing.

I'm struck, too, by the fact that Steve has not even attempted to challenge my reading of the contract, e.g., regarding the duties of loyalty and confidentiality, or else to acknowledge that that is what the contract provides; also that we do not know the terms of his subcontract with Feinberg Rozen, although it's all supposed to be in the public interest.

Posted by: Monroe Freedman | January 19, 2011 at 01:54 PM



Also omitted are (my addition) paragraphs 6 and 7:

6. The law firm is retained to administer the fund beyond the first year only after an evaluation by BP of the firm's performance during the first year (i.e., the firm's success in getting claimants to give up their claims against BP and to transfer their claims against other defendants to BP [see 7 below]).

I have not read the contract, so I don't know if the following is required by the contract, but it has been reported that, in order to obtain compensation from BP through the fund,

7. In their releases of BP, claimants must assign their (unlimited) claims against all other possible defendants (in BP's case, other clearly liable parties) to the defendant (BP).

Posted by: Richard Wright | January 19, 2011 at 02:14 PM



Could a non-lawyer person or entity provide these services. That is, are these legal services. Seems like they are, or the customer (looks like a client to me) would not have gone to a law firm. If they are legal services, then you can't label them otherwise (say there is no lawyer client relationship) and avoid following the ethics rules. Can you? Please explain, but remember that I am old and unsophisticated.

Posted by: Rick Underwood | January 19, 2011 at 02:47 PM



If a non-lawyer went about settling legal claims and extracting waivers and assignments, I would expect the bar to consider it unauthorized practice of law. Also, Feinberg expressly contracted on behalf of his law firm to provide professional services.

Rick, Are you really older than 82? I think I have about 20 years on you. And that business about being unsophisticated makes me reach for my wallet.

Posted by: Monroe Freedman | January 19, 2011 at 05:06 PM



HA! You are a geezer. I'm 62, but just feel 102 sometimes. Anyway, we seem to be on the same wavelength on this one. By the way, I want you all to go to a blog styled "Barefoot and Progressive" (It's Kentucky) and check out the post on the "Battle Hymn of Sarah Palin." Perhaps I feel 102 cause I'm in Kentucky.

Posted by: Rick Underwood | January 19, 2011 at 05:36 PM



Also, you all need to check out my CLE DVD on Sex with Clients - it's in 3-D too. No kidding. Monroe can't see it unless he gives me a waiver. He's too damn old for that stuff.

Posted by: Rick Underwood | January 19, 2011 at 05:46 PM



LOL^. I'll take 2.
-Ryan-

Posted by: Crossfit Equipment | January 19, 2011 at 11:23 PM

**Verify your Comment**

**Previewing your Comment**

Posted by:  |

This is only a preview. Your comment has not yet been posted.



Your comment could not be posted. Error type:

Your comment has been posted. Post another comment

The letters and numbers you entered did not match the image. Please try again.

As a final step before posting your comment, enter the letters and numbers you see in the image below. This prevents automated programs from posting comments.

Having trouble reading this image? View an alternate.

