# Legal Ethics Forum

January 15, 2011

## More Information on BP and Feinberg

There was a post earlier about the relationship between BP and Kenneth Feinberg. As it was presented, "In essence, the question is whether there is something improper about him getting paid by BP to write [an expert opinion] letter [about the relationship between BP and Feinberg Rozen]." At the time, I agreed that it seemed to be much ado about nothing, and I agreed with the expert opinion, because Feinberg appeared to be free of a lawyer-client relationship with BP and free of any control by BP.

I just received a telephone query and some emailed materials from a public interest lawyer who is concerned about some new information that has come to light. She says that the written contract between BP and the law firm, Feinberg Rozen, was filed in court for the first time last week. According to the contract, it was signed on January 6, 2011, and was made effective June 15, 2010. She is interested in getting expert advice about the ethical implications of the new information.

I explained to her that I have cut back my consulting and testifying to pro bono work in death penalty and Guantanamo cases; that I would take a quick look at whatever she sent; and that I would post on LEF to see whether another ethics person would be willing to work with her. If anyone wants to get involved in an interesting and important piece of work, please email me at lawmhf@hofstra.edu.

Here is what I have found in a quick review of the lawyer's comments and of the contract itself. Because of the nature of my review, I cannot vouch for all the facts stated, but they do appear to me to be accurate.

1. Although Mr. Feinberg was asked by BP and the White House together to administer the claims process, the contract is a private one, signed only by BP and Feinberg. The only role the government has under the contract is that DOJ must approve Feinberg Rozen's termination by BP if BP chooses to do that. BP's power to terminate is otherwise quite broad. Also, Feinberg Rozen's fee of $850,000 per month is to be paid through January 15, 2011. After that date, any compensation to Feinberg Rozen must be agreed to by BP in advance of each successive calendar quarter. The public interest lawyer commented that BP might consider F-R's success in limiting or resolving BP's liability to claimants to be relevant to the forthcoming amount of F-R's compensation.

2. The contract recites that Feinberg Rozen is an independent contractor and that there is no lawyer-client relationship between the parties. However, the contract also recites that Feinberg is "acting through and as a partner of Feinberg Rozen." Also, the contract recites the law firm's obligations to BP, which expressly includes such lawyer-client obligations as confidentiality and an absence of any conflicts with the interests of BP on the part of the law firm. (One might think that the rights of the claimants who were harmed by BP's activities in the Gulf, which F-R is establishing on their behalf, constitutes a conflict with the interests of BP.)

3. The contract refers to subcontractors, including, specifically, Worley, which is evaluating claims. The lawyer who called me has been trying to obtain the Worley subcontract, but has not been successful. However, the Feinberg Rozen contract also recites that all subcontractors are subject to the same obligations as the law firm, including confidentiality on BP's behalf. Also, any subcontractor must be approved in advance by BP.

EXHIBIT 3

4. The releases that Feinberg is obtaining from claimants assigns all of their claims to BP. On termination of the contract, all of F-R's files in the matter are to be turned over to BP, with no restrictions on their use.

There appears to be more. Also, the entire set of transactions is a complex one, and a significant number of claimants might already have relinquished their rights without the benefit of independent services by lawyers who have had access to all of the information about the nature and extent of the relationship between BP and the Feinberg Rozen law firm.

Posted by Monroe Freedman at 06:28 AM | Permalink

**Comments**



Wow, just from what you wrote there appear to be some significant questions of conflicts, at minimum, that need to be analyzed. We don't need a second wave of litigation against BP and the firm!

Posted by: David Hricik | January 15, 2011 at 09:45 AM



On a related note, the other news in this neck of the woods about Mr. Feinberg is that he hired a few law firms to assist the claimants in filing their claims -- it is not entirely clear what those firms' specific role would be -- and at least one of those firms (a prominent Mississippi firm) represents BP in a variety of related and unrelated matters. When this firm's work for BP came to light, Mr. Feinberg cut ties with the firm. According to this article --
http://blog.al.com/live/2011/01/mississippi_firm_says_it_had_n.html -- "Feinberg was aware that the firm was doing other work for BP, but believed there was no conflict because no individual lawyers would be working for both BP and the claims facility, Amy Weiss, a Feinberg spokeswoman, has said." It is hard to believe that a lawyer as smart as Feinberg would not know that this fact is irrelevant to the conflict analysis.

Posted by: Ben Cooper | January 15, 2011 at 02:44 PM



Presumably, all of the lawyers retained by Feinberg to work on the case had to have been approved in advance by BP and were subject to the confidentiality and other lawyer-client provisions of the BP-Feinberg Rozen contract that applied to all subcontractors.

Posted by: Monroe Freedman | January 15, 2011 at 05:22 PM



The conflict of interest seems pretty obvious, doesn't it?

Posted by: JT | January 15, 2011 at 07:36 PM



Oscar Wilde commented that the problem with socialism is that it takes up too many evenings. That is true of blogs, which is why LEF is the only one I participate in actively. This string is a good illustration of the problem. – I'm getting drawn into the issue more than I want to be. Won't someone volunteer to help the public interest lawyer? Based on my admittedly hasty reading, the following points appear to be accurate, and, at this point, have not yet been rebutted.

The expert opinion states: "You are not in an attorney-client relationship with BP. You are an independent administrator and owe none of the attributes of the attorney-client relationship (e.g., loyalty, confidentiality) to BP.

Contra: The contract recites that Feinberg is "acting through and as a partner of Feinberg Rozen." Also, the contract recites the law firm's obligations to BP, which expressly includes such lawyer-client obligations as confidentiality and an absence of any conflicts with the interests of BP on the part of the law firm (a matter that is explained in the comment to MR 1.7 in terms of loyalty) . (In my opinion, the rights of the claimants who were harmed by BP's activities in the Gulf, which Feinberg Rozen is establishing on their behalf, constitute a conflict with the interests of BP.)

The expert opinion states: "By 'independent' I mean (and I think the context is clear) that you are independent of BP. You are not subject to its direction or control."

Contra: Feinberg Rozen's monthly fee of $850,000 was paid through January 15, 2011. Beginning on that date, and for the rest of the term, any compensation to Feinberg Rozen must be agreed to by BP in advance of each successive calendar quarter. There is no limitation on the extent to which BP might consider Feinberg Rozen's success in limiting or resolving BP's liability to claimants to be relevant to the forthcoming amount of FR's compensation.

The expert opinion states with regard to the applicability of Rules 4.2 and 4.3: "Because you are not representing a client in the work you are doing through the GCCF, you are not subject to the requirements of Rules 4.2 and 4.3. Attorney General Caldwell suggests that the public may perceive you as BP's counsel. Public perception cannot create an attorney-client relationship. Except for court assignments, that relationship is created by contract express or implied between lawyer and client. Nevertheless, it is in the interest of the fair administration of the GCCF to re-emphasize to the public, even if redundant, that you are not BP's lawyer and owe it none of the duties that arise in a lawyer-client (or principal-agent) relationship.

Contra: Since the premise that Feinberg Rozen owes none of the duties that arise in a lawyer-client relationship is inconsistent with the terms of the contract, the critical part of the expert opinion regarding rules 4.2 and 4.3 is inaccurate.

The expert opinion states: I understand that you have arranged with the Mississippi Center for Justice to provide those who qualify and do not have a lawyer but want one to receive legal counsel at no expense to them. This will bolster the fairness and appearance of fairness of the process.

Contra: Ben Cooper posted on January 15 that "news in this neck of the woods about Mr. Feinberg is that he hired a few law firms to assist the claimants in filing their claims -- it is not entirely clear what those firms' specific role would be -- and at least one of those firms (a prominent Mississippi firm) represents BP in a variety of related and unrelated matters. When this firm's work for BP came to light, Mr. Feinberg cut ties with the firm. According to this article -- http://blog.al.com/live/2011/01/mississippi_firm_says_it_had_n.html -- 'Feinberg was aware that the firm was doing other work for BP, but believed there was no conflict because no individual lawyers would be working for both BP and the claims facility, Amy Weiss, a Feinberg spokeswoman, has said.' It is hard to believe that a lawyer as smart as Feinberg would not know that this fact is irrelevant to the conflict analysis."

In addition, the contract provides that all subcontractors must be approved in advance by BP, and the releases that Feinberg is obtaining from claimants assigns all of their claims to BP. On termination of the contract, all of F-R's files in the matter are to be turned over to BP, with no restrictions on their use. This includes files created in violation of Rules 4.2 and 4.3.

Posted by: Monroe Freedman | January 16, 2011 at 08:54 PM



If you come across an updated opinion from Professor Gillers, please post it. Given the new information, Professor Gillers' existing opinion doesn't seem quite as useful as it did before this new information came to light. Of course, the facts make all the difference and it's not yet clear what the facts are.

Posted by: W.R. Chambers | January 17, 2011 at 11:08 AM



I'm surprised that Professor Gillers hasn't done that, or corrected any facts that I have gotten wrong. However, he might be limited by his subcontract(s) with Feinberg/BP, which have not yet been made public.

Posted by: Monroe Freedman | January 17, 2011 at 12:36 PM

**Verify your Comment**

**Previewing your Comment**

Posted by:   |

This is only a preview. Your comment has not yet been posted.

Post    Edit

Your comment could not be posted. Error type:

Your comment has been posted. Post another comment

The letters and numbers you entered did not match the image. Please try again.

As a final step before posting your comment, enter the letters and numbers you see in the image below. This prevents automated programs from posting comments.

Having trouble reading this image? View an alternate.



Continue