UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig | ) | |
| "Deepwater Horizon" in the Gulf | ) | MDL No. 2179 |
| of Mexico, on April 20, 2010 | ) | |
| | ) | SECTION:  J |
| Pleading Applies To: | ) | |
| *All Cases in Pleading Bundle B2* | ) | JUDGE BARBIER |
| | ) | |
| | ) | MAGISTRATE SUSHAN |

**PLAINTIFFS' RICO CASE STATEMENT**

Pursuant to this Court's Order of January 18, 2011 and the standing order of the Eastern District of Louisiana, Plaintiffs file the following RICO Case Statement:

1. **State whether the alleged unlawful conduct is in violation of 18 U.S.C. Sections 1962(a), (b), (c), and/or (d). If you allege violations of more than one Section 1962 subsection, treat each as separate RICO claim.**

The alleged unlawful conduct is in violation of 18 U.S.C. Sections 1962(c).

The alleged unlawful conduct is in violation of 18 U.S.C. § 1962(d) for conspiring to violate § 1962(c).

The alleged unlawful conduct is in violation of 18 U.S.C. 1962 (d) for conspiring to violate 18 U.S.C. § 1962(a).

2. **List each defendant and state the alleged misconduct and basis of liability of each defendant.**

BP Exploration & Production, Inc. ("BP Exploration") is a Delaware corporation with its principal place of business in Warrensville, Illinois. BP Exploration was a lease holder and the designated operator in the lease granted that allowed the oil exploration, drilling and production-related operations in the location where the spill emanating from the Deepwater Horizon originated. BP Exploration participated and conspired to participate in the predicate acts that form the pattern of racketeering alleged below.

BP America Production Company ("BP America") is a Delaware corporation with its principal place of business in Houston, Texas. BP America was the party to the Drilling Contract with Transocean Ltd. for the drilling of the Macondo well by the Deepwater Horizon vessel. BP America participated and conspired to participate in the predicate acts that form the pattern of racketeering alleged below.

BP p.l.c. is a British public limited company with its corporate headquarters in London, England. BP p.l.c. is the global parent company of the worldwide business operating under the "BP" logo. BP p.l.c. participated and conspired to participate in the predicate acts that form the pattern of racketeering alleged below.

BP Exploration, BP America, and BP p.l.c. are generally referred to herein collectively as "BP."

3. **List the alleged wrongdoers, other than the defendants listed above, and state the alleged misconduct of each wrongdoer.**

Other possible wrongdoers involved in the pattern of racketeering include the following, although at this point the full extent of their involvement is unknown:

2

Transocean Ltd. ("Transocean Ltd.") is a Swiss corporation that maintains substantial U.S. offices in Houston, Texas, and that at all pertinent times was doing business in the State of Louisiana and within this district. Transocean Ltd. was an owner, managing owner, owner *pro hac vice,* and/or operator of the Deepwater Horizon. Transocean Ltd. participated and conspired to participate in overt acts in furtherance of the pattern of racketeering alleged below.

Transocean Offshore Deepwater Drilling, Inc. ("Transocean Offshore") is a Delaware corporation with its principal place of business in Houston, Texas. Transocean Offshore is affiliated with Transocean Ltd. and was an owner, managing owner, owner *pro hac vice,* and/or operator of the Deepwater Horizon. Transocean Offshore participated and conspired to participate in overt acts in furtherance of the pattern of racketeering alleged below.

Transocean Deepwater, Inc. ("Transocean Deepwater"), is a Delaware corporation with its principal place of business in Houston, Texas. Transocean Deepwater is affiliated with Transocean Ltd. and was an owner, managing owner, owner *pro hac vice,* and/or operator of the Deepwater Horizon. Transocean Deepwater participated and conspired to participate in overt acts in furtherance of the pattern of racketeering alleged below.

Transocean Holdings, LLC ("Transocean Holdings") is a Delaware corporation with its principal place of business in Houston, Texas. Transocean Holdings is affiliated with Transocean Ltd. and is a wholly-owned subsidiary of Transocean Offshore. Transocean Holdings is an owner, managing owner, owner *pro hac vice,* and/or operator of the Deepwater Horizon. Transocean Holdings participated and conspired to participate in overt acts in furtherance of the pattern of racketeering alleged below.

Triton Asset Leasing GmbH ("Triton") is a Swiss limited liability company with its principal place of business in Zug, Switzerland. Triton is affiliated with Transocean Ltd. and is an owner, managing owner, owner *pro hac vice,* and/or operator of the Deepwater Horizon. Triton participated and conspired to participate in overt acts in furtherance of the pattern of racketeering alleged below.

Transocean Ltd., Transocean Deepwater, Transocean Offshore, Transocean Holdings, and Triton are hereinafter referred to collectively as "Transocean."

Halliburton Energy Services, Inc. ("Halliburton") is a Delaware corporation with its principal place of business in Houston, Texas. Halliburton provided engineering services, materials, testing, mixing, and pumping for cementing operations on board the Deepwater Horizon, as well as onshore engineering support for those operations. Subject to discovery of information in the hands of the Defendant, Plaintiffs may determine that Halliburton participated and conspired to participate in overt acts in furtherance of the pattern of racketeering activity alleged below.

Halliburton division Sperry Drilling Services ("Sperry") (formerly Sperry Sun Drilling Services) was responsible for mudlogging personnel and equipment on the Deepwater

Horizon, including downhole drilling tools. Subject to discovery of information in the hands of the Defendant, Plaintiffs may determine that Sperry participated and conspired to participate in overt acts in furtherance of the pattern of racketeering activity alleged below.

"Halliburton" shall refer to both Halliburton Energy Services, Inc. and its Sperry division.

Cameron International Corporation f/k/a Cooper-Cameron Corporation ("Cameron") is a Delaware corporation with its principal place of business in Houston, Texas. Cameron is registered to do and does business in the State of Louisiana. Cameron manufactured, designed, supplied, and/or installed the Deepwater Horizon's sub-sea emergency well-closure device known as a blowout-preventer ("BOP"), which is, and was at all material times, an appurtenance of the vessel and a part of the vessel's equipment. Subject to discovery of information in the hands of the Defendant, Plaintiffs may determine that Cameron participated and conspired to participate in overt acts in furtherance of the pattern of racketeering activity alleged below.

M-I, LLC ("M-I") is a Delaware limited liability company with its principal place of business in Wilmington, Delaware.  M-I, also known as M-I SWACO, supplies drilling and completion fluids and additives to oil and gas companies in Louisiana and elsewhere, providing pressure control, vessel instrumentation, and drilling waste management products and services. On the Deepwater Horizon, M-I provided mud products, including drilling fluids and spacers, engineering services, and mud supervisory personnel, such as mud engineers and drilling fluid specialists, to manage the properties of those fluids in the well. M-I employees planned and/or supervised key fluid-related activities at Macondo, such as the mud displacement that was occurring at the time of the April 20, 2010, blowout.  Subject to discovery of information in the hands of the Defendant, Plaintiffs may determine that M-I participated and conspired to participate in overt acts in furtherance of the pattern of racketeering activity alleged below.

Weatherford U.S. L.P. ("Weatherford") is a Louisiana limited partnership that maintains its principal place of business in Houston, Texas. Weatherford designed and manufactured, marketed, sold, and/or distributed the casing components such as the float collar, shoe, and centralizers appurtenant to the vessel, and provided the personnel and equipment for running the casing and casing components into the wellbore.  Subject to discovery of information in the hands of the Defendant, Plaintiffs may determine that Weatherford participated and conspired to participate in overt acts in furtherance of the pattern of racketeering activity alleged below.

Anadarko Petroleum Corporation Co. ("Anadarko") is a Delaware corporation with its principal place of business in The Woodlands, Texas. Anadarko is an oil and gas exploration and production company.  Anadarko E&P Company LP ("Anadarko E&P") is a Delaware limited partnership with its principal place of business in The Woodlands, Texas. Anadarko E&P is an oil and gas exploration and production company.  MOEX

Offshore 2007 LLC ("MOEX Offshore") is a Delaware corporation with its principal place of business in Houston, Texas. MOEX Offshore is a wholly-owned subsidiary of MOEX USA Corporation. MOEX USA Corporation ("MOEX USA") is incorporated in Delaware and has its principal place of business in Houston, Texas. MOEX USA is the parent company of MOEX Offshore. Mitsui Oil Exploration Co., Ltd. ("MOECO") is incorporated in Japan and has its principal place of business in Tokyo, Japan. As of June 30, 2010, MOECO identified itself as having the following U.S. subsidiaries or affiliates: MitEnergy Upstream LLC, MOEX USA Corporation, MOEX Offshore 2007 LLC, MOEX Gulf of Mexico Corporation, MOEX Oil & Gas Texas LLC, and Mitsui E&P USA LLC. Each of these subsidiaries of MOECO share the same Houston, Texas, address.  Defendants MOEX Offshore, MOEX USA, and MOECO are referred to collectively herein as "MOEX."  While BP was the sole lease operator of the Deepwater Horizon, Anadarko, Anadarko E&P, and MOEX were considered non-operational leaseholders. On October 1, 2009, BP Exploration, as operator, and MOEX Offshore, as non-operator, entered into the Macondo Prospect Offshore Deepwater Operating Agreement. On December 17, 2009, BP Exploration, MOEX Offshore, Andarko E&P, and Andarko executed a "Joinder" of the Operating Agreement. Subsequently, the parties to the Operating Agreement held the following ownership percentages in the Macondo Prospect: BP Exploration, 65%; MOEX Offshore, 10%; Anadarko E&P, 22.5%; and, Anadarko, 2.5%. According to the MMS's website, effective April 1, 2010, record title interest in the Macondo prospect was held as follows: BP Exploration, 65%; MOEX Offshore, 10%; and, Anadarko, 25%. Subject to discovery of information in the hands of the Defendant, Plaintiffs may determine that Anadarko and MOEX participated and conspired to participate in overt acts in furtherance of the pattern of racketeering activity alleged below.

The former Minerals Management Service ("MMS") was a federal entity created in 1982, intended to serve as the designated agency responsible for the mineral leasing of submerged lands of the Outer Continental Shelf, including the supervision of the Deepwater Horizon drilling operations.  The MMS was reorganized as the Bureau of Ocean Energy Management, Regulation, and Enforcement (BOEMRE) on June 18, 2010; however, it shall be referred to as the MMS throughout this document. Subject to discovery of information in the hands of the Defendant, Plaintiffs may determine that certain dishonest MMS employees participated and conspired to participate in overt acts in furtherance of the pattern of racketeering activity alleged below.

The Marine Preservation Association ("MPA") is a consortium of major oil industry companies, including BP, Chevron, Exxon-Mobil, Shell and Conoco Phillips, created in response to the 1990 Oil Pollution Act, which required that anyone involved in the transportation, distribution or receipt of petroleum products on water must establish an approved plan that—should they cause a significant oil spill, responds to the "maximum extent practicable."  The MPA funds the Marine Spill Response Corporation ("MSRC"), which has been held out by Defendants as the "largest, most dedicated standby oil spill response program in the United States."  The above oil companies all utilized the Response Group to prepare the plans submitted to the MMS that contain misrepresentations and omissions regarding their ability to respond to and contain

5

deepwater oil spills. Subject to discovery of information in the hands of the Defendant, Plaintiffs may determine that the above oil companies colluded through the above entities to misrepresent their ability to contain a deepwater oil spill and thereby participated and conspired to participate in overt acts in furtherance of the pattern of racketeering activity alleged below.

**4.     List the alleged victims and state how each victim allegedly was injured.**

The named plaintiffs and their injuries are as follows:

Plaintiff, Robert L. Rinke owns and resides at 18 Via De Luna Drive, Beach Club Penthouse #6, Pensacola Beach, Florida 32561.  The Beach Club Resort and Spa is a 130 unit condominium complex located on the Gulf of Mexico, Pensacola Beach, Escambia County, Florida.  Due to the Spill, Plaintiff Rinke has suffered the loss, damage and diminution in value of his condominium property abutting the Gulf of Mexico.

Plaintiff, Armand's Bistro LLC, is a domestic limited liability company domiciled and doing business in Louisiana. Armand's Bistro was a seafood restaurant located inside the Holiday Inn on Highway 51 in LaPlace, Louisiana.  Due to the Spill, it could not obtain the seafood it needed to operate, and had to close.

Plaintiffs Roland and Barbara Hingle reside at 151 Bouson Lane, Buras, Louisiana.  The Hingles are commercial shrimpers in the Gulf of Mexico who have lost earnings and property from the Spill.

Plaintiff Alan Sheen, M.D. is a resident of Louisiana who resides in this district and owns property in Florida—a condominium with the address of Sundunes 112, 7979 Gulf Blvd., Navarre Beach, Florida.  Dr. Sheen has owned the condominium for more than five years.  In 2010, his rental income was less than half the average of the prior two years, due to the Spill.

Plaintiff Mid South Seafood, Inc. is a Mississippi corporation doing business throughout the state of Mississippi.  Plaintiff is a seafood business that buys seafood from the Gulf of Mexico on the Gulf Coast and sells the seafood throughout Mississippi.  Due to the Spill, Plaintiff Mid South Seafood has lost business and earnings.

The alleged class members—all victims—fall into nine basic categories, all of whom were injured in their business or property as a result of the Deepwater Horizon oil spill. In presenting these categories of victims in the following order, Plaintiffs do not suggest or imply any hierarchy of merit, preference, or importance:

> (a)     Commercial fishermen, shrimpers, crabbers, oystermen, the owners and operators of businesses involving commercial fishing, shrimping, crabbing and oystering (the "Commercial Fishermen Plaintiffs").

6

    (b)    Seafood processors, distributors, retail and seafood markets, and restaurant owners and operators, and all those employed by seafood processors, distributors, retail and seafood markets, and restaurants (the "Processing and Distributing Plaintiffs").

    (c)    Recreational business owners, operators, and/or workers, including recreational fishing businesses, commercial guides, and charter fishing businesses who earn their living through the use of the Gulf of Mexico for businesses (the "Recreational Business Plaintiffs").

    (d)    Commercial businesses, business owners, operators, and/or workers, including commercial divers, offshore oilfield service, repair, and supply, real estate agents, and supply companies and their employees (the "Commercial Business Plaintiffs").

    (e)    Recreational sport fishermen, recreational divers, beachgoers, and recreational boaters (the "Recreation Plaintiffs").

    (f)    Plant and dockworkers, including commercial seafood plant workers, longshoremen, and ferry operators (the "Plant and Dock Worker Plaintiffs"). Owners, lessors, and lessees of real property, alleged to be damaged, harmed, or impacted, physically or economically, including but not limited to condominium owners along the Gulf Coast that suffered economic loss through diminution in their property value and lessees of oyster beds (the "Real Property Plaintiffs").

    (g)    Hotel owners and operators, vacation rental owners and agents, and all those who earn their living from the tourism industry (the "Real Property/Tourism Plaintiffs").

    (h)    Banks, financial institutions, and retail businesses that suffered losses as a result of the Spill (the "Banking/Retail Business Plaintiffs").

    (i)    Persons who utilize natural resources for subsistence (the "Subsistence Plaintiffs").

**5.** **Describe in detail the pattern of racketeering activity or collection of an unlawful debt alleged for each RICO claim. A description of the pattern of racketeering activity shall include the following information:**

    **(a)**    **List the alleged predicate acts and the specific statutes allegedly violated;**

The predicate acts constitute violations of mail fraud under 18 U.S.C. § 1341 and wire

7

fraud under 18 U.S.C. § 1343. These predicate acts form the pattern of racketeering and are the basis of BP's violation of 18 U.S.C. § 1962(c). These predicate acts also constitute the primary overt acts taken in furtherance of the conspiracies under 18 U.S.C. § 1962(d) to violate 18 U.S.C. §§ 1962(c) and (a).

> **(b) Provide the dates of the predicate acts, the participants in the predicate acts and a description of the facts surrounding each predicate act;**

See response to 5(c), below.

> **(c) If the RICO claim is based upon the predicate offenses of wire fraud, mail fraud, fraud in the sale of securities, or fraud in connection with a case under U.S.C. Title 11, the "circumstances constituting fraud or mistake shall be stated with particularity," Fed. R. Civ. P. 9(b). Identify the time, place, and contents of the alleged misrepresentation or omissions, and the identity of persons to whom and by whom the alleged misrepresentations or omissions were made;**

The facts and details such as time, place, content of misrepresentations and omissions, and identity of persons or the government entity to whom and by whom the alleged misrepresentations and omissions were made that are known to date constituting the predicate acts are:

> i. Upon information and belief, on December 1, 2000, BP submitted by mail and/or interstate wire or interstate carrier to MMS a Regional Oil Response Plan addressing the entire Gulf of Mexico area, including the area later drilled by the Deepwater Horizon. This plan falsely stated that BP could contain an oil spill of up to 250,000 barrels per day. This plan included other blatant misrepresentations, such as: an ability to haul out sea lions, seals and walruses; links to a Japanese home shopping website as being one of the "primary equipment providers for BP in the Gulf of Mexico region [for] rapid deployment of spill response resources." BP Regional Oil Response Plan – Gulf of Mexico.
>
> ii. Upon information and belief, on June 30, 2009, BP submitted by mail and/or interstate wire or interstate carrier to MMS a revised Regional Oil Response Plan addressing the Gulf of Mexico, that included the same misrepresentations as the prior plan. It also added new misrepresentations, such as references to a professor

        listed as a consultant for responding to the spill who had died in 2005.

iii. Upon information and belief, on February 23, 2009, BP submitted by mail and/or interstate wire or interstate carrier to MMS an Initial Exploration Plan for Mississippi Canyon Block 252 – the document covering the Macondo project. In this document, BP falsely minimized the prospect of any serious damage associated with a spill, saying there would be only "sub-lethal" effects on fish and marine mammals, and "birds could become oiled." BP further misrepresented that "[i]n the event of an unanticipated blowout resulting in an oil spill, it is unlikely to have an impact based on the industry wide standards for using *proven equipment and technology* for such responses, implementation of BP's Regional Oil Spill Response Plan which address available equipment and personnel, techniques for containment and recovery and removal of the oil spill." [emphasis added]. BP also falsely stated that it was prepare to handle a worst-case discharge of 162,000 barrels of oil per day.

iv. Interstate wires were used on March 25, 2010 and March 30, 2010 to further BP's scheme to defraud the MMS. Emails on those dates were sent among BP personnel, and concluded that the long string casing design would "save a lot of time…at least 3 days," "saves a good deal of time/money," and is the "[b]est economic case." Email from Brian Morel, BP Drilling Engineer, to Allison Crane, Materials Management Coordinator, March 25, 2010; Email from Brian Morel, BP Drilling Engineer, to Sarah Dobbs, Completion Engineer, March 30, 2010. Despite the fact the BP itself had concluded that it would not use the long string casing design because of the high risk of a failed cement job and the inability to comply with MMS regulations, BP then on April 15, 2010 sent by mail and/or interstate wire or interstate carrier a request to MMS asking for a permit to use long string casing, apologizing for not having mentioned its use earlier and falsely stating that they had "inadvertently" failed to include its use in earlier submitted plans.

v. Similarly, interstate wires were used on March 25, 2010 to further BP's scheme to defraud the MMS when Brian Morel of BP sent an email to Heather Powell, copied to Scherie Douglas, Senior Regulatory Compliance Team Lead at BP, stating in part with respect to obtaining a bypass permit: "I have attached what I feel is pertinent data, only thing missing from the documents we submitted for the bypass permit is the engineering calculations, as they don't completely pertain to this liner, hopefully they will not ask for them. However if they do want them I can provide." This

9

     email reflects an intent to knowingly provide insufficient documentation to MMS and then, if caught with respect to the insufficient documentation, provide incorrect documentation.

  vi. BP used the interstate wires in furtherance of its scheme, in particular as the scheme was implemented to place profit above safety with respect to the use of pipe centralizers. BP knowingly chose an insufficient number of "centralizers" to prevent channeling of gas during the cementing process. Halliburton, the contractor hired by BP to cement the well, warned BP that the well could have a "SEVERE gas flow problem" if BP lowered the final string of casing with only six centralizers instead of 21 recommended by Halliburton. BP rejected Halliburton's advice to use additional centralizers, solely because the delay it would entail. In an April 16, 2010 email, a BP executive involved in the decision-making explained: "it will take 10 hours to install them…I do not like this." Later that day, another BP official knowingly acknowledged the increased risk of proceeding without a sufficient number of centralizers, but carelessly commented with lethal disregard for the people and the environment that could be seriously injured, causing further injury to business or property: "who cares, it's done, end of story, will probably be fine. . . ." (Email from Brett W. Cocales to Brian P. Morel, April 16, 2010).

  vii. According to the National Commission report, on April 16, 2010 BP sent, upon information or belief by mail or interstate wire, an Application for Permit to Modify to MMS describing a temporary abandonment procedure that was different from the procedure in either the April 12 drilling plan, an April 14 email, or an April 20 "Ops Note." There is no evidence that these changes went through any sort of formal risk assessment or management of change process as required.

Upon information and belief, numerous other acts of mail and wire fraud will be uncovered in discovery, because the bulk of relevant mails and wires currently are in the hands of BP and its co-conspirator Transocean.

  **(d) Describe whether the alleged predicate acts relate to the enterprise as part of a common plan. If so, describe in detail.**

The alleged predicate acts relate to the association-in-fact enterprise of BP and Transocean as part of a common plan to place profits over safety by: (1) fraudulently deceiving federal and state regulators that they would safely conduct their offshore oil drilling operations to prevent oil spills, (2) fraudulently deceiving federal and state regulators that they could effectively respond to and contain any oil spill, including worse case scenario oil spills like the Deepwater Horizon disaster, (3) hampering containment

and cleanup responses by fraudulently deceiving federal and state regulators regarding the oil spill flow rate; and (4) fraudulently deceiving federal and state regulators regarding the quickest and safest method to kill the Macondo well and stop the Spill. Defendant BP participated in and conspired with Transocean to engage in one or more of these schemes. BP individually, and BP in conjunction with its co-conspirator Transocean, used the association-in-fact enterprise of BP and Transocean to carry out this common plan.

6. **Describe in detail the alleged enterprise for each RICO claim. A description of the enterprise shall include the following information;**

   (a) **State the names of the individuals, partnerships, corporations, associations or other entities allegedly constituting the enterprise;**

BP and Transocean constitute the association-in-fact enterprise, within the meaning of 18 U.S.C. § 1961(4), for Plaintiffs' 18 U.S.C. § 1962(c) claim, for Plaintiffs' 18 U.S.C. § 1962(d) RICO claim for conspiracy to violate 18 U.S.C. § 1962(c), and for Plaintiffs' 18 U.S.C. § 1962(d) claim for conspiracy to violate 18 U.S.C. § 1962(a).

   (b) **Describe the structure, purpose, roles, function and course of conduct of the enterprise;**

The structure of the enterprise is an association-in-fact between BP and Transocean. The purpose, role, function and course of conduct of the enterprise is in part to carry out the lawful business of exploring and developing oil reserves, and in part to carry out the pattern of racketeering described in answer to question No. 5, above. The enterprise possessed and continues to possess an ongoing organizational structure.

   (c) **State whether any defendants are employees, officers or directors of the alleged enterprise;**

Defendant BP is not an employee, officer or director of the alleged enterprise.

   (d) **State whether any defendants are associated with the alleged enterprise, and if so, how;**

Defendant BP is associated with alleged enterprise both as a member of the association-in-fact enterprise, and an entity engaged in the management, operation and control of the enterprise.

   (e) **State whether you allege that the defendants are individuals or entities separate from the alleged enterprise, or that the defendants are the enterprise itself, or members of the enterprise;**

Defendant BP is a member of the association-in-fact enterprise.

11

> **(f)     If you alleged any defendants to be the enterprise itself, or members of the enterprise, explain whether such defendants are perpetrators, passive instruments, or victims of the alleged racketeering activity.**

Defendant BP is a perpetrator of the alleged racketeering activity.

**7.     State whether you allege and describe in detail how the pattern of racketeering activities and the enterprise are separate or have merged into one entity.**

The Enterprise exists separate and apart from its pattern of racketeering activity, inasmuch as BP and association-in-fact member Transocean have multiple goals, not all of which are fraudulent.

**8.     Describe the alleged relationship between the activities of the enterprise and the pattern of racketeering activity. Discuss how the racketeering activity differs from the usual and daily activities of the enterprise, if at all.**

The lawful activity engaged in by the Enterprise includes ongoing partnerships between BP and Transocean to explore and develop oil reserves. But Defendant BP has, at a minimum since 2001, also used this enterprise to conduct the related acts of mail and wire fraud comprising the pattern of racketeering.

**9.     Describe what benefits, if any, the alleged enterprise receives from the alleged pattern of racketeering activities.**

The Enterprise benefits from the alleged pattern of racketeering activity by obtaining billions of dollars in oil and profits through the pattern of racketeering activity that misled the government regulators into believing the Enterprise was using the best available and safest technology to conduct its offshore drilling operations and contain any spills. The mail and wire fraud constituting the pattern of racketeering activities was necessary for the Enterprise to receive this benefit, because absent the pattern of racketeering the regulators would have required BP and co-conspirator Transocean to expend the funds necessary to comply with regulatory requirements, or forego the profitable activities. Government regulators would not have allowed the Enterprise to conduct its offshore exploration, development and containment activities in a knowingly unsafe manner.

**10.    Describe the effect of the activities of the enterprise on interstate or foreign commerce.**

At all relevant times, the activities of the Enterprise substantially affected interstate and foreign commerce, through and including but not limited to, its large investments, expenditures and offshore drilling activities with numerous entities involved in its ongoing offshore drilling in the Gulf of Mexico and around the world.

11. **If the complaint alleges a violation of 18 U.S.C. Section 1962 (a), provide the following information:**

   (a) **State who received the income derived from the pattern of racketeering activity or through the collection of an unlawful debt; and,**

   (b) **Describe the use or investment of such income.**

Not applicable.

12. **If the complaint alleges a violation of 18 U.S.C. Section 1962 (b), provide the following information:**

   (a) **Describe in detail the acquisition or maintenance of any interest in or control of the alleged enterprise; and,**

   (b) **State whether the same entity is both the liable "person" and the "enterprise" under Section 1962 (b).**

Not applicable.

13. **If the complaint alleges a violation of 18 U.S.C. Section 1962 (c), provide the following information:**

   (a) **State who is employed by or associated with the enterprise;**

Defendant BP is associated with the Enterprise.

   (b) **State whether the same entity is both the liable "person" and the "enterprise" under Section 1962 (c).**

Defendant BP is not both the liable "person" and the "enterprise" under Section 1962(c).

14. **If the complaint alleges a violation of 18 U.S.C. Section 1962 (d), describe in detail the alleged conspiracy.**

As described in more detail in response to 5(c) and in the Complaint, Defendant BP conspired with Transocean to mislead government regulators into believing they were safely conducting offshore drilling operations and that they could safely contain deepwater oil spills. Defendant BP and Transocean conspired under Section 1962(d) to violate Section 1962(c) and undertook overt acts of mail and wire fraud in furtherance of that conspiracy. Similarly, Defendant BP and Transocean conspired under Section 1962(d) to violate Section 1962(a) by undertaking overt acts of mail and wire fraud in an effort to use or invest income unlawfully derived from such conduct, directly or indirectly, in the establishment or operation of the association-in-fact Enterprise. BP and

13

Transocean both agreed to the objective of the conspiracy. The specifics of some of the knowing interactions evidencing this conspiracy are set forth in more detail in response to 5(c), above, and some of the specifics will be secured in discovery since such additional evidence supporting these conspiracy claims is in the hands of Defendant BP and co-conspirator Transocean.

**15.     Describe the alleged injury to business or property.**

The RICO violations caused the spill and the failure to effectively contain the spill, which was the direct and proximate cause of injury to business or property of Plaintiffs. The injury to business or property of the named Plaintiffs and class members is more fully described in response to question No. 4, above.

**16.     Describe the relationship between the alleged injury and violation of the RICO statute.**

The violation of the RICO statute is the direct and proximate cause of the injuries suffered by the victim/plaintiffs in this case. The scheme to defraud regulators regarding the safety of Defendants' deep sea oil drilling allowed Defendants to proceed with the Deepwater Horizon drilling without prescribed and claimed safeguards that would have prevented the spill, causing the spill and the consequent damage to Plaintiffs' business and property. The scheme to defraud regulators regarding Defendants' ability to contain a spill allowed Defendants to proceed with the Deepwater Horizon drilling without a prescribed and claimed containment plan in place, exacerbating the spill and the consequent injury and damage to Plaintiffs' business and property.

**17.     List the damages sustained by reason of the violation of Section 1962, indicating the amount for which each defendant allegedly is liable.**

The damages sustained by reason of the violation of Section 1962 are ongoing, but to date clearly number in the billions of dollars. Defendant BP is liable for the injury to Plaintiffs and class members and all damages. Plaintiffs reserve the right to amend the Complaint to add additional Defendants that are liable for the injury and damages to Plaintiffs and class members.

**18.     List all other federal causes of action, if any, and provide the relevant statute numbers.**

No other federal cause of action is set forth in the B2 Master Complaint. Plaintiffs reserve the right to add additional federal causes of action against BP and/or additional Defendants.

**19.     List all pendent states claim, if any.**

Plaintiffs also seek equity relief under FLA. STAT. ANN. §§ 895.05 (1), (6).

**20.     Provide any additional information you feel would be helpful to the Court in processing your RICO claim.**

Plaintiffs believe their RICO claim is a straightforward application of civil RICO, and would be pleased to answer any questions the Court may have in processing this claim.

Dated: January 24, 2011.

Respectfully submitted,

| | |
|---|---|
| ___/s/   Stephen J. Herman_____ | ___/s/ James Parkerson Roy_____ |
| Stephen J. Herman, La. Bar No. 23129 | James Parkerson Roy, La. Bar No. 11511 |
| HERMAN HERMAN KATZ & COTLAR LLP | DOMENGEAUX WRIGHT ROY & EDWARDS LLC |
| 820 O'Keefe Avenue | 556 Jefferson Street, Suite 500 |
| New Orleans, Louisiana 70113 | Lafayette, Louisiana 70501 |
| Telephone: (504) 581-4892 | Telephone: (337) 233-3033 |
| Fax No. (504) 569-6024 | Fax No. (337) 233-2796 |
| E-Mail: sherman@hhkc.com | E-Mail: jimr@wrightroy.com |
| *Plaintiffs Liaison Counsel* | *Plaintiffs Liaison Counsel* |

**PLAINTIFFS' STEERING COMMITTEE**

| | |
|---|---|
| Brian H. Barr | Robin L. Greenwald |
| LEVIN, PAPANTONIO, THOMAS, | WEITZ & LUXENBERG, PC |
| MITCHELL, ECHSNER & PROCTOR, PA | 700 Broadway |
| 316 South Baylen St., Suite 600 | New York, NY  10003 |
| Pensacola, FL 32502-5996 | Office:  (212) 558-5802 |
| Office:  (850) 435-7045 | Telefax: (212) 344-5461 |
| Telefax: (850) 436-6187 | E-Mail:  rgreenwald@weitzlux.com |
| E-Mail: bbarr@levinlaw.com | |
| | Rhon E. Jones |
| Jeffrey A. Breit | BEASLEY, ALLEN, CROW, METHVIN, |
| BREIT DRESCHER & IMPREVENTO | PORTIS & MILES, P. C. |
| 999 Waterside Drive, Suite 1000 | 218 Commerce St., P.O. Box 4160 |
| Norfolk, VA 23510 | Montgomery, AL 36104 |
| Office:  (757) 670-3888 | Office:  (334) 269-2343 |
| Telefax: (757) 670-3895 | Telefax: (334) 954-7555 |
| E-Mail: jbreit@bdbmail.com | E-Mail:  rhon.jones@beasleyallen.com |
| | |
| Elizabeth J. Cabraser | Matthew E. Lundy |
| LIEFF, CABRASER, HEIMANN & | LUNDY, LUNDY, SOILEAU & SOUTH, LLP |
| BERNSTEIN, LLP | 501 Broad Street |
| 275 Battery Street, 29th Floor | Lake Charles, LA  70601 |

| | |
|---|---|
| San Francisco, CA  94111-3339<br>Office:  (415) 956-1000<br>Telefax: (415) 956-1008<br>E-Mail:  ecabraser@lchb.com<br><br>Philip F. Cossich, Jr.<br>COSSICH, SUMICH, PARSIOLA & TAYLOR<br>8397 Highway 23, Suite 100<br>Belle Chasse, LA  70037<br>Office:  (504) 394-9000<br>Telefax: (504) 394-9110<br>E-Mail:  pcossich@cossichlaw.com<br><br>Robert T. Cunningham<br>CUNNINGHAM BOUNDS, LLC<br>1601 Dauphin Street, P. O. Box 66705<br>Mobile, AL  36660<br>Office:  (251) 471-6191<br>Telefax: (251) 479-1031<br>E-Mail:  rtc@cunninghambounds.com<br><br>Alphonso Michael "Mike" Espy<br>MORGAN & MORGAN, P.A.<br>188 East Capitol Street, Suite 777<br>Jackson, MS 39201<br>Office: (601) 949-3388<br>Telefax: (601) 949-3399<br>E-Mail:  mike@mikespy.com<br><br>Calvin C. Fayard, Jr.<br>FAYARD & HONEYCUTT<br>519 Florida Avenue, SW<br>Denham Springs, LA  70726<br>Office:  (225) 664-4193<br>Telefax: (225) 664-6925<br>E-Mail:  calvinfayard@fayardlaw.com<br><br>Ervin A. Gonzalez<br>COLSON HICKS EIDSON<br>255 Alhambra Circle, Penthouse<br>Coral Gables, FL 33134<br>Office: (305) 476-7400<br>Telefax: (305) 476-7444<br>E-Mail:  ervin@colson.com | Office:  (337) 439-0707<br>Telefax: (337) 439-1029<br>E-Mail:  mlundy@lundylawllp.com<br><br>Michael C. Palmintier<br>deGRAVELLES, PALMINTIER,<br>HOLTHAUS & FRUGE'<br>618 Main Street<br>Baton Rouge, LA  70801-1910<br>Office:  (225) 344-3735<br>Telefax: (225) 344-0522<br>E-Mail:  mpalmintier@dphf-law.com<br><br>Paul M. Sterbcow<br>LEWIS, KULLMAN, STERBCOW &<br>ABRAMSON<br>601 Poydras Street, Suite 2615<br>New Orleans, LA  70130<br>Office:  (504) 588-1500<br>Telefax:  (504) 588-1514<br>E-Mail:  sterbcow@lksalaw.com<br><br>Scott Summy<br>BARON & BUDD, P.C.<br>3102 Oak Lawn Avenue, Suite 1100<br>Dallas, TX  75219<br>Office:  (214) 521-3605<br>Telefax: (214) 599-1172<br>E-Mail:  ssummy@baronbudd.com<br><br>Mikal C. Watts (PSC)<br>WATTS GUERRA CRAFT, LLP<br>Four Dominion Drive, Building 3, Suite 100<br>San Antonio, TX 78257<br>Office: (210) 447-0500<br>Telefax: (210) 447-0501<br>E-Mail:  mcwatts@wgclawfirm.com | |

16

**RICO MASTER COMPLAINT**
**WORKING GROUP**

Hiram Eastland
EASTLAND LAW OFFICES, PLLC
307 Cotton Street
Greenwood, MS 38930
Telephone:  (662) 453-1227
Facsimile:  (662) 453-2808
Email:  eastlandlaw@bellsouth.net

Wanda J. Edwards
FAYARD & HONEYCUTT, APC
519 Florida Avenue SW
Denham Springs, LA 70726
Telephone:  (225) 664-4193
Facsimile:  (225) 664-6925
Email:  wandaedwards@fayardlaw.com

Keith D. Jones
8480 Bluebonnet Blvd., Suite F
Baton Rouge, LA 70810
Telephone:  (225) 763-6900
Facsimile:  (225)
Email:  keith@kjones-law.com

W. B. Markovits
WAITE, SCHNEIDER, BAYLESS &
CHESLEY CO., L.P.A.
1513 Fourth & Vine Tower
1 West Fourth Street
Cincinnati, OH  45202
Telephone:  (513) 621-0267
Facsimile:  (513) 621-0262
Email:  billmarkovits@wsbclaw.com

Peter Prieto
PODHURST ORSECK P.A.
25 West Flagler Street, Suite 800
Miami, FL 33130
Telephone:  (305) 358-2800
Facsimile:  (305) 358-2382
Email:  PPrieto@podhurst.com

**Of Counsel:**

G. Robert Blakey
Notre Dame Law School *
Notre Dame, IN 36556
Telephone: (574) 631-5717
Facsimile: (574) 631-4197
Email: G.R. Blakey.1@nd.edu
* Notre Dame Law School is used solely for purposes of address.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that the above and foregoing RICO Case Statement has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 24th day of January, 2011.

    /s/  James Parkerson Roy and Stephen J. Herman