

**Gulf Coast State Attorneys General**

| Troy King | James D. "Buddy" Caldwell | Bill McCollum | Jim Hood | Greg Abbott |
|---|---|---|---|---|
| Attorney General | Attorney General | Attorney General | Attorney General | Attorney General |
| State of Alabama | State of Louisiana | State of Florida | State of Mississippi | State of Texas |

July 14, 2010

Kenneth R. Feinberg, Esq.
Feinberg Rozen, LLP
1455 Pennsylvania Avenue, NW
Suite 390
Washington, DC  20004-1008

     RE: Draft Protocol

Dear Mr. Feinberg:

As the Attorneys General for the five Gulf Coast states, we are writing to express our collective concerns over the development of the Protocol for the Gulf Coast Claims Facility ("GCCF"). Many of our offices first received the draft Protocol Monday afternoon, although the Protocol is in its ninth draft.

We will timely submit specific comments on the draft, but we first want to express our dismay over the lack of cooperation and collaboration on this Protocol. Our offices have been involved with the claims process since its inception and have valuable insight that would have benefitted the Protocol's formulation.

The GCCF claims process must be efficient and fair. Indeed, our offices are responsible for many of the advances in the claims process that have occurred to date. We have been, and remain, available to provide input on developing a claims process that works. It is imperative that a meeting be scheduled with our offices as soon as possible.

We look forward to your prompt response on this matter.

Sincerely,

| Troy King | James D. "Buddy" Caldwell | Bill McCollum | Jim Hood | Greg Abbott |
|---|---|---|---|---|
| Attorney General | Attorney General | Attorney General | Attorney General | Attorney General |
| State of Alabama | State of Louisiana | State of Florida | State of Mississippi | State of Texas |

**EXHIBIT**

tabbies

A

    

**Gulf Coast State Attorneys General**

| Troy King | James D. "Buddy" Caldwell | Bill McCollum | Jim Hood | Greg Abbott |
| Attorney General | Attorney General | Attorney General | Attorney General | Attorney General |
| State of Alabama | State of Louisiana | State of Florida | State of Mississippi | State of Texas |

November 24, 2010

Mr. Kenneth R. Feinberg                          **Via Email: Kfeinberg@feinbergrozen.com**
Feinberg Rozen, LLP
The Willard Office Building
1455 Pennsylvania Avenue, NW, Suite 390
Washington, D.C., 20004-1008

Mr. John E. (Jack) Lynch Jr.                     **Via Email: john.lynch@uk.bp.com**
Global Exploration and Production
Global Supply and Trading
US General Counsel
501 WestLake Park Boulevard
Houston, TX  77079


Dear Messrs. Feinberg and Lynch:

We are aware that November 23, 2010, was the final deadline for the filing of Emergency Advance Payments with the Gulf Coast Claims Facility ("GCCF").  Today, the GCCF has released the Final Protocol and has made the Protocol available on its website.  We appreciate the opportunity that you have provided the Gulf Coast Attorneys General to review the Protocol and offer comments on same.  We also appreciate the amendments you have made to the Protocol to address these comments.  Nonetheless, we still have a few outstanding concerns regarding the Final Protocol and, particularly, the release associated with final settlements.

We would like to invite you to meet with us to discuss these outstanding concerns.  Next week, the National Association of Attorneys General is hosting the winter meeting in Fort Lauderdale, FL.  The Gulf Coast Attorneys General have set aside a block of time from 12:15-1:15 on Wednesday, December 1, to meet with you.  Please let us know at your earliest convenience whether you are available and amenable to such a meeting.

We look forward to the continued cooperation of BP and the GCCF and the strong working relationship we have established.

Sincerely,

| | | | | |
|---|---|---|---|---|
| Troy King | James D. "Buddy" Caldwell | Bill McCollum | Jim Hood | Greg Abbott |
| Attorney General | Attorney General | Attorney General | Attorney General | Attorney General |
| State of Alabama | State of Louisiana | State of Florida | State of Mississippi | State of Texas |

cc:    Associate Attorney General Thomas Perrelli
       United States Department of Justice

       Mr. Mark Holstein
       Managing Attorney, BP

**From:**     MARY JO WOODS
**To:**       KFeinberg@feinbergrozen.com
**Date:**     12/16/2010 4:01:29 PM
**Subject:**  Notice to GCCF Claimants

Mr. Feinberg,

Please find attached a notice to GCCF claimants from Attorneys General Buddy Caldwell, Jim Hood, Troy King and Bill McCollum that is being sent out this afternoon.

Thank you,

Mary Jo Woods
Special Assistant Attorney General
Mississippi Attorney General's Office
Post Office Box 220
Jackson, Mississippi 39205
(601) 359-3020 (phone)
(601) 359-2003 (fax)
mwood@ago.state.ms.us

This message is being sent by the Office of the Attorney General for the State of Mississippi and is intended only for the use of the individual to which it is addressed and may contain information that is legally privileged or confidential. If you are not the intended recipient, you are hereby notified that any distribution or copying of this message is strictly prohibited. If you have received this message in error, please notify the original sender or the Office of the Attorney General at (601) 359-3680 immediately by telephone or by return e-mail and delete this message from your computer. Thank you.

**CC:**       ATTORNEY GENERAL JIM HOOD;  cbiros@feinbergrozen.com;
jackiezins@feinbergrozen.com

   

**Gulf Coast State Attorneys General**

| Troy King | James D. "Buddy" Caldwell | Bill McCollum | Jim Hood |
|---|---|---|---|
| Attorney General | Attorney General | Attorney General | Attorney General |
| State of Alabama | State of Louisiana | State of Florida | State of Mississippi |

# NOTICE
December 16, 2010

TO:    BP/GULF COAST CLAIMS FACILITY CLAIMANTS CONSIDERING FINAL OR QUICK PAYMENTS

FROM: GULF COAST STATE ATTORNEYS GENERAL

    On December 13, 2010, Gulf Coast Claims Facility (GCCF) Administrator Kenneth Feinberg announced the GCCF's next phase, which will include three payment options: interim payments, final payments, and quick final payments. All claimants who elect to accept a final payment or quick final payment are required to sign an extensive release that would bar them from any future recovery for damages caused by the Deepwater Horizon Oil Spill, even for future unanticipated losses. The Gulf Coast State Attorneys General have raised concerns regarding the release. Despite efforts by the Attorneys General to work with Mr. Feinberg and BP to improve the claims process, the GCCF is proceeding as planned with implementation of its final protocol and release.

    The Gulf Coast Attorneys General strongly urge all claimants to proceed with caution in evaluating whether to accept an offer of final payment or quick final payment from the GCCF or to sign any release. Claimants considering making a quick final payment claim should also evaluate whether their total possible damages exceed the set amount offered for such claims - $5,000.00 for individuals or $25,000.00 for businesses. Claimants should be aware that by accepting either form of final offer and signing the release, they are agreeing that they can never recover any additional money from BP or any other responsible party for damages resulting from the oil spill. For example, even if an unforeseen event such as a future hurricane causes more oil from the spill to be washed onshore, a claimant who has signed the GCCF release will have lost the right to recover for any resulting loss. Similarly, a fisherman who signs the GCCF release will be barred from any additional recovery even if sometime in the future the fish population is depleted or fishing waters are closed due to the oil. The GCCF final payment system requires the claimant to predict all possible damages, current and future, that the claimant will ever incur from the spill.

    Due to the speculative nature of estimating a final claim value and the breadth of the GCCF release, the Attorneys General advise claimants against accepting any form of final payment or signing any release without first thoroughly reviewing and understanding the GCCF's terms. Claimants are strongly encouraged to consult with counsel before signing any final claim paperwork with the GCCF. The Attorneys General are continuing to press Mr. Feinberg and BP to make improvements to the GCCF final protocol and release. However, in the meantime, claimants may file interim claims to recover their currently known damages without having to sign any release. Claimants with questions or concerns should contact their Attorney General's Office, local bar or legal aid organization or attorney for assistance.

| Troy King | James D. "Buddy" Caldwell | Bill McCollum | Jim Hood |
|---|---|---|---|
| Attorney General | Attorney General | Attorney General | Attorney General |
| State of Alabama | State of Louisiana | State of Florida | State of Mississippi |



**STATE OF ALABAMA**
**OFFICE OF THE ATTORNEY GENERAL**

**TROY KING**
ATTORNEY GENERAL

July 13, 2010

500 DEXTER AVENUE
MONTGOMERY, AL 36130
(334) 242-7300
WWW.AGO.STATE.AL.US

The Honorable Barack Obama
The President
1600 Pennsylvania Avenue, Northwest
Washington, D.C. 20500

Dear President Obama:

I write on behalf of the State of Alabama to convey my strong objection to the "Draft Protocol" for the Gulf Coast Claims Facility ("GCCF") being proposed to be administered by Mr. Kenneth R. Feinberg. Alabama has serious concerns and objections both as to the substance of the Draft Protocol and the processes that put it together. This document appears collusive at best and contrary to the public interest at worst. It undermines and erodes your commendable public statements. The Gulf of Mexico oil spill is the greatest environmental disaster in our nation's history. The devastating effects on the Gulf Coast States, their citizens, their natural resources, and their economies are substantial and worsening by the day. For the past 85 days, the federal government and BP have completely failed in their responsibilities to stop the leaking oil. While oil has continued to spew unabated into the Gulf, the federal government, BP, and Mr. Feinberg have found the time to develop an overly complex process that would limit the liability and responsibilities of BP while needlessly restricting the ability of injured citizens and businesses to recover the losses and damages they have suffered. This is unconscionable and unacceptable.

As a threshold matter, the State objects to the closed-door process that produced the Draft Protocol. The first version that the State has been given is Draft **Nine**. Apparently, even as the Department of Justice was inviting the Attorneys General to partner with it, secret closed door meetings were occurring to devise protocols without our input. From the fact that this is Draft Nine, obviously, significant decisions about the protocol have already been made by the federal government, BP, and Mr. Feinberg without meaningful input from the affected States. Even worse, the states have been given less than 24 hours to review and provide input on Draft Nine, a draft that has apparently been under negotiations for weeks. It is unreasonable to now expect the states to provide thorough review and input in this time frame. That appears to be the intention. The State objects to the Draft Protocol and opposes any effort by the federal government, BP, and Mr. Feinberg to "finalize" or implement it. Draft Nine should be scrapped and the drafting process started over with the full input of those of us bearing the brunt of the disaster.

Letter to President Obama
July 13, 2010
Page Two

     Substantively, the Draft Protocol is an illegal attempt to limit BP's liability for the disaster and an effort by the Executive Branch of the federal government to usurp the constitutional authority of the Legislative and Judicial Branches, and the authority of the States and their judicial systems to protect their own citizens. At the federal level, there is absolutely no legal authority, statutory or otherwise, for the Executive Branch to relieve BP of its obligation under the Oil Pollution Act ("OPA") as the Protocol attempts to do by establishing and administering a claims process. Congress, in the OPA, established how claims were to be presented and when claimants could vindicate their rights in court. Under the Draft Protocol, claimants are faced with the choice of submitting their claims to this dubious "Facility" without any assurance that courts will find that a presentment under the Draft Protocol satisfies the OPA and allows them to seek redress in court. This legal uncertainty is unacceptable. Worse, the Draft Protocol seeks to incorporate aspects of the restrictive eligibility and compensation rules that were issued to govern claims against the Oil Spill Liability Trust Fund ("Fund") in order to shield BP from the full scope of its liability. The rules governing claims against the Fund were never intended to proscribe the full scope of the liability of a responsible party, and they are inappropriate for that purpose.

     At the state level, the Draft Protocol tries to reach outside the OPA and federal law, and adjudicate state law claims and to interpret and apply state law. The federal government, especially the Executive Branch, has no business usurping state court jurisdiction and meddling in the state law liability arising from the oil spill. Congress was very clear in the OPA to honor and preserve to the States the right to protect their citizens and resources from oil spills. The OPA states that "Nothing in the Act . . . shall (1) affect, or be construed or interpreted as preempting, the authority of any State . . . from imposing any additional liability or requirements . . . or (2) affect, or be construed or interpreted to affect or modify in any way the obligations or liabilities of any person under . . . State law, including common law." 33 USC 2718. But this is exactly what the GCCF attempts to do.

     Even though the determinations of the GCCF are in no way binding on State or even federal courts, the end result of the Draft Protocol, if implemented, would be to create a de facto adjudication process that can only serve to rob individuals and businesses of their fair and impartial day in court in the venue of their choosing. For example, the Draft Protocol states that Claimants will be required to sign a "Release" before being paid and that "The release will waive any rights the Claimant may have against BP to assert additional claims, to file an individual legal action, to participate in other legal actions associated with the Spill." The OPA contains no such requirement and

Letter to President Obama
July 13, 2010
Page Three

neither should the GCCF. The OPA is designed to set up a process to get claims of injured parties paid as quickly and efficiently as possible, not to limit their recovery or to protect responsible parties like BP.   No governmentally negotiated and endorsed protocol should contain any requirement that any claimant sign any release.  The coastal Attorneys General negotiated a claims process with BP that preserved citizens' claims.  One would have expected the federal government to have more leverage and to deliver an even better process. Instead, the concessions won in the Attorneys' General negotiations have been ceded.   Even after being paid for certain claims, claimants have and should continue to have the right to seek full recovery through the judicial process. Should a claimant elect to do so, BP can then assert as a defense or set-off any amounts the claimant has been paid by BP, the GCCF, or another responsible party.

The Draft Protocol is needlessly complicated with deadlines, forms, appeals processes, and other legal jargon and requirements that will not be intelligible to ordinary citizens.   The legal process established by the Draft Protocol is far too complex and contains pitfalls that will trip up most individuals and prevent them from obtaining compensation for their full losses and damages.   The Draft Protocol was obviously drafted by lawyers and is confusing even to lawyers who specialize in environmental practices.   This is not the simple claims process that was promised and that is contemplated by the OPA.  The OPA does not contain these complex rules for presentment of claims to the responsible party.  The Draft Protocol will not expedite claims payments, but will complicate the process.

There are many other problems with the Draft Protocol.  I will provide to Mr. Feinberg, by separate cover, some of the specific problems and issues the State has identified in the limited time it has been given for review and comment. I urge you to compel Mr. Feinberg to scrap this Draft Protocol and to replace it with one that puts the needs of the Gulf States' citizens first.  Mr. President, your concern is those citizens, not BP. Our citizens are watching and waiting. We are depending on you.

Sincerely,

Troy King
Attorney General

TK:oi

Letter to President Obama
July 13, 2010
Page Four


cc:     Mr. Kenneth R. Feinberg
        Honorable Eric Holder, United States Attorney General
        Honorable Bob Riley, Governor of Alabama
        Honorable Jeff Sessions, United States Senator
        Honorable Richard Shelby, United States Senator
        Honorable Robert Aderholt, United States Congressman
        Honorable Spencer Bachus, United States Congressman
        Honorable Jo Bonner, United States Congressman
        Honorable Bobby Bright, United States Congressman
        Honorable Artur Davis, United States Congressman
        Honorable Parker Griffith, United States Congressman
        Honorable Mike Rogers, United States Congressman



**STATE OF ALABAMA**
**OFFICE OF THE ATTORNEY GENERAL**

TROY KING
ATTORNEY GENERAL

August 20, 2010

500 DEXTER AVENUE
MONTGOMERY, AL 36130
(334) 242-7300
WWW.AGO.STATE.AL.US

Mr. Kenneth R. Feinberg
Feinberg Rozen, LLP
The Willard Office Building
1455 Pennsylvania Avenue, Northwest
Suite 390
Washington, D.C. 20004-1008

**TRANSMITTED VIA E-MAIL**

Dear Mr. Feinberg:

I am in receipt of your August 9 and 19, 2010, e-mails transmitting a draft of the Gulf Coast Claims Facility Protocol for Emergency Advance Payments. I share the concerns Attorneys General Jim Hood and Buddy Caldwell conveyed in their letter to you dated August 16, 2010, and I join in them. Beyond their concerns, I remain disturbed by your refusal to incorporate more of the changes we, as Attorneys General, suggested to you in Biloxi. In fact, your latest draft demonstrates a regrettable and continued disingenuousness toward the process. Although provisions addressing final payments have been stricken from this latest draft, you appear to have largely ignored the basic principles and comments submitted by us in response to your original draft protocol.

Based on the lack of any forward progress made in your latest draft, as well as your actions and public statements since we met, it appears that the concerns of the Attorneys General and those of the citizens of our States have fallen on deaf ears. Indeed, I believe the current approach to the claims process is symptomatic of the overall strategy adopted by BP and the other responsible parties with respect to their oil disaster and their unwillingness to fairly and adequately compensate the States and their citizens for the catastrophic damage the oil companies have caused. Their reactions, as well as yours, have left Alabama with little choice other than to initiate litigation to ensure that the State is made whole. We have done so.

Letter to Mr. Kenneth R. Feinberg
August 20, 2010
Page Two


        While I am hopeful that there will be opportunities to collaborate in the future with respect to any Final Protocol being developed for payment of individual and business claims, it appears that, at this time, there is little common ground between your views on the claims process and those of the State of Alabama and our citizens.  Your comments in Biloxi made clear that you see your mandate far differently than I do.  My job is to protect the interests of the State of Alabama and our citizens, and that I fully intend to do.  You have repeatedly stated that all claims decisions are your decisions.  Your actions indicate that those decisions are not being guided by the best interests of Alabama or our citizens.  I find that unfortunate.  Should you ever mean what you have said and wish to engage in a meaningful discussion, I would welcome it.  I call on you again to develop an equitable and reasonable claims process.  Thus far, you have not done so.

                                        Sincerely,

                                        Troy King
                                        Attorney General

TK:oi

cc:    Attorney General Jim Hood
       Attorney General James Buddy Caldwell



STATE OF ALABAMA
OFFICE OF THE ATTORNEY GENERAL

TROY KING
ATTORNEY GENERAL

500 DEXTER AVENUE
MONTGOMERY, AL 36130
(334) 242-7300
WWW.AGO.STATE.AL.US

November 16, 2010

Mr. Kenneth R. Feinberg
Feinberg Rozen, LLP
The Willard Office Building
1455 Pennsylvania Avenue, Northwest
Suite 390
Washington, D.C. 20004-1008

**TRANSMITTED VIA E-MAIL**

Dear Mr. Feinberg:

I am in receipt of the working draft of your Gulf Coast Claims Facility Protocol for Interim and Final Claims dated November 1, 2010. This document, like previous versions of it, is far out of touch with the real world needs that you should be meeting. The startling revelations that you are being paid $850,000 a month by BP only serves to underscore the concerns I have repeatedly expressed publicly that you have every reason to act on behalf of BP and at the expense of those they have harmed.

After reviewing the latest draft of your protocol, I remain convinced that your protocol is unfair to Gulf Coast residents and businesses whose rights are being ignored, if not trampled, by it. You shamefully continue to cede the concessions won by Gulf Coast Attorneys General to your benefactor, BP. For example, whereas BP committed to the Attorneys General that they would pay 100% of any claim attributable to their Deepwater Horizon disaster, you have made public comments that change by the day regarding your intent to discount claims based on how far away from the water they arose. Such arbitrariness accrues to the detriment of those who are depending upon you to live up to your word as an "independent" administrator. The Attorneys General won a further concession from BP that they would not require anyone receiving a payment from them to execute a release. Inexplicably, you persist in requiring (and your current protocol appears to provide for) unsolicited final offers with a full release of legal rights to the benefit of BP and "other potentially responsible or liable parties."

November 16, 2010
Page Two

Families and business claimants continue to find themselves in more and more desperate financial straits as a result of your delays.  It appears that they may ultimately be forced to accept under-compensation.  Perhaps that is the point.  Residents and business owners should not be asked, nor should they be forced by you, to settle their claims cheaply because your process failed them.  Moreover, the Gulf Coast Claims Facility and your protocol still fail to provide adequate transparency regarding the processing of claims.  It seems only reasonable that, if a claimant is being asked to forever waive his right to sue BP and other responsible parties, he should understand how and why his damages were calculated by the Gulf Coast Claims Facility.   With no published calculation formula, your protocol lacks transparency and legitimacy.

Perhaps  of  even  greater  concern,  your  protocol  is  misleading.  Specifically, your protocol does not provide remedies for negligence, gross negligence, punitive damages, nuisance, trespass, or any other statutory or common law remedy outside the parameters of the Oil Pollution Act of 1990.  Yet, pursuant to paragraph two of the Release and Covenant Not to Sue document, your protocol attempts to waive all rights that a claimant might have to bring suit under any of these theories.  Claimants should not be led to believe that they are being compensated for damages which lie beyond the scope of your protocol.  Significantly, paragraph three attempts to release all other responsible or liable parties even though the full extent of their responsibility has not yet been determined.  Conveniently, while claimants give up their legal rights to these known or unknown parties, those parties still retain their rights or responsibilities of contribution, subrogation, indemnity, or "any other law."  It is incredible that your release would insist that a claimant agree that their payment is "made without any admission of liability or wrongdoing by BP or any other released party."  BP has repeatedly admitted on national television (and has even been formally designated by the federal government itself) to being a party responsible for this disaster.  It is incomprehensible why you have drafted a document to protect and benefit the reputation of the perpetrators of this tragedy at the expense of their victims' legal rights.

There are a number of issues of concern that I call to your attention.  If there is any geographic scope or other restrictions which your staff will be instructed to use to uniformly deny claims, you should state this now.  It would be unconscionable to force a group of claimants who have already waited many

November 16, 2010
Page Three

months into a further ninety-day waiting period. There is only one explanation
for this attempt to delay justice and these claimants' entrance into the court
system – to further compromise their claims. I ask you to please confirm that
the payments will not be delayed unnecessarily. Given that it is within your
authority to shape the claims process as you alone see fit, please confirm that
you are not going to rely on the ninety-day language as an excuse to delay the
processing and payment of interim claims. It is unacceptable that the Gulf
Coast Claims Facility might take up to ninety days to make a determination on a
final claim, thereby asking claimants to allow their bills to pile up for a period
that is longer than the entire amount of time it took BP to plug their gushing
well. Please commit that you will not send unsolicited final offers only to delay
sending an interim claim check. Please verify that BP has no veto power over
any GCCF payments. It is your responsibility to ensure that your staff
understands and abides by the rules of ethical conduct in Alabama which
prohibits contact with represented parties. I ask that you not make requests for
unnecessary and confidential information such as retainer agreements. I ask you
to confirm that your staff will not have direct contact with represented clients.
I ask you to commit that it will not be necessary to apply for an emergency
advance payment in order to receive an interim payment. I also ask for your
assurances that, whatever final protocols are promulgated by you, they will, in
fact, be followed by your staff.

It is regrettable that you continue to exclude those with the greatest
knowledge and interest in this process from the process. As Attorneys General,
we have repeatedly offered to lend our legal and technical expertise in matters
such as this to you. However, you have not accepted our offers or our
recommendations. Instead, you have continued to work in isolation and your
product shows it. While I never believed you were sincere, initially Alabama
Governor Bob Riley bought your line. His Director of Homeland Security, Jim
Walker, welcomed you to the Gulf Coast by assuring Alabamians that "[h]e
doesn't work for BP ... he works for the people of the Gulf Coast" – he even
referred to you as "your attorney, your lawyer, your advocate, Mr. Ken
Feinberg." You, yourself, told Gulf Coast residents that you were their
"fiduciary." You have proved to be none of these. Now, even Governor Riley
has come to call your process and the way it is being implemented "extortion."

November 16, 2010
Page Four


    I call on you again to devise and implement a strategy and a protocol that is in the best interests of those you will be paying, not those who pay you. If you would like to discuss this matter further, please do not hesitate to contact me.

Sincerely,

Troy King
Attorney General

TK:oi

cc:   Honorable Bob Riley, Governor of Alabama
       Honorable Jim Hood, Attorney General of Mississippi
       Honorable Buddy Caldwell, Attorney General of Louisiana
       Honorable Bill McCollum, Attorney General of Florida
       Honorable Greg Abbott, Attorney General of Texas



# STATE OF FLORIDA

### BILL McCOLLUM
### ATTORNEY GENERAL

July 2, 2010

## VIA U.S. MAIL AND FACSIMILE TRANSMISSON

Kenneth R. Feinberg, Esq.
Feinberg Rozen, LLP
The Willard Office Building
1455 Pennsylvania Avenue, NW
Suite 390
Washington, D.C. 20004-1008

Re: Claims Process

Dear Mr. Feinberg:

I am writing to you to express my concerns over your testimony this Wednesday before the House Small Business Committee. As Florida's chief legal officer, I must respectfully disagree with both your interpretation of Florida law as well as the relevance of Florida common law in the context of claims made pursuant to a federal claims process. BP has routinely paid claims to Floridians in areas where oil has not yet washed ashore, an approach entirely consistent with the Oil Pollution Act of 1990, 33 U.S.C. §§ 2701 *et seq.* ("OPA"). Since we understand that your involvement is meant to replace (and improve upon) BP's claims process under OPA, it would indeed be a perverse result if the escrow account you administer provides less relief to Floridians than the existing process.

In your testimony, you indicated that the $20 billion escrow account for claims against BP arising out of the Deepwater Horizon catastrophe will be administered according to state law principles. In particular, you stated that if a claim is "legally sufficient under your own state law I will recognize it." You then made several statements concerning your view of the scope of Florida law, apparently from a tort perspective.

For example, in response to questions concerning lost tourism due to the misperception of oil on a local beach, you indicated that "clearly under Florida law I think it's fair to say that it's not compensable. If there is no physical damage to the beaches and it's public perception ... it is

Mr. Kenneth Feinberg
July 2, 2010
Page 2

not compensable." You later stated that "Florida law would never recognize that claim." You also referred to the geographical area used to determine eligibility of claims for respiratory and other illnesses made against the September 11[th] Victim Compensation Fund, perhaps implying that you might set geographical limits in this context as well. Finally, you mentioned that Florida had received a grant from BP for tourism advertising, perhaps to suggest that misperception should not be a problem going forward. While I recognize that you have promised to further address compensability issues in the next few weeks and to keep an open mind about providing compensation to individuals and businesses located in places where oil is not yet visible, I felt compelled to write you now and share my thoughts about both OPA and Florida law.

To begin with, I disagree with your apparent view that state law, much less state tort law, principles are helpful in determining the compensability of claims under the OPA claims process. If that were true, citizens of one Gulf Coast state might receive greater compensation from the $20 billion escrow account than similarly situated citizens of a neighboring state based only on perceived differences in state tort law, despite the existence of a uniform federal statute on oil pollution claims. Indeed, courts do not look to state law to determine the compensability of claims under OPA. See, e.g., Gabarick v. Laurin Maritime (Am.) Inc., 623 F.Supp.2d 741, 747 (E.D. La. 2009) ("OPA explicitly states the damages to which it applies and the remedy to be pursued.")

In your testimony, you cited your experience in administering the September 11th Victim Compensation Fund as the basis for looking to state tort law in considering claims against BP arising out of the Deepwater Horizon blowout. With all due respect, the situations are very different. In particular, I understand that Congress directed you to look at state laws in determining the level of compensation for the victims of the September 11th tragedy. In contrast, the $20 billion escrow account was the result of an agreement and Congress has already spoken as to which oil spill damage claims are compensable when it passed OPA. OPA dictates a uniform claims process for determining compensability under federal law, a determination made without analysis of state law. Moreover, as you recently indicated in a Wall Street Journal interview, the September 11th fund is not "a precedent for any other compensation fund. I think it stands alone in its uniqueness."

In any event, there is no requirement under Florida law that claimants must reside in an area where oil has already washed ashore in order to seek compensation. BP is liable to Florida and its residents for cleanup costs and other damages under the Florida "Pollutant Discharge

Mr. Kenneth Feinberg
July 2, 2010
Page 3

Prevention and Control Act," §§ 376.011-376.17, 376.19-376.21, Florida Statutes, as well as under common law theories.

The Florida Supreme Court recently held that the Florida Pollutant Discharge Prevention and Control Act, in addition to Florida common law, permits commercial fishermen to recover lost profits due merely to the **"damaged reputation"** of their fishery products resulting from an oil spill into Tampa Bay, despite not owning any property damaged by the pollution. <u>Curd v. Mosaic Fertilizer, LLC,</u> No. SC08-1920, 2010 WL 2400384, *1 (Fla. June 17, 2010). The Court found the statute to be "clear and unambiguous." <u>Id.</u> at *4. Indeed, "the [Florida] Legislature has enacted a far-reaching statutory scheme aimed at remedying, preventing, and removing the discharge of pollutants from Florida's waters and lands." <u>Id.</u>

Mr. Feinberg, I would welcome the opportunity to meet with you and further discuss this important matter. My office is also available to answer any questions you may have concerning Florida law or our experiences with the claims process to date. Thank you.

Sincerely,

Bill McCollum

cc: Governor Charlie Crist



# STATE OF FLORIDA

### BILL McCOLLUM
#### ATTORNEY GENERAL

**VIA U.S. MAIL AND E-MAIL**

August 20, 2010

Kenneth R. Feinberg, Esq.
Feinberg Rozen, LLP
The Willard Office Building
1455 Pennsylvania Avenue, NW
Suite 390
Washington, DC 20004-1008

Re: Protocol for Emergency Advance Payments

Dear Mr. Feinberg:

I am writing to you to express my strong objections to the Protocol for Emergency Advance Payments, the narrative on Understanding the Eligibility Criteria for Emergency Advance Payments, and the GCCF Claims Form.[1] Despite the sincere and diligent efforts of my office and others over the last seven weeks to work with you to craft a claims process that allows *at least* the same protections and rights as the Oil Pollution Act of 1990 ("OPA"), our input has been completely disregarded. Instead, the documents regrettably fall far short of even the minimal protections mandated by OPA. Moreover, these documents are confusing and contradict many of your public statements regarding the claims process.

The appointment of an independent Administrator of a facility to process the Deepwater Horizon claims of individuals and businesses was meant to replace *and improve upon* the claims process that BP had implemented to fulfill its OPA obligations as a responsible party for the Spill. However, the current process appears to be even less generous to Floridians than the BP process. Such an outcome is completely unacceptable.

---

[1] The 18-page GCCF Claims form was released to the public this morning but has never previously been provided or discussed with my office, despite the statement in the press release accompanying the claim form that the process was developed after working "closely with the Governors and Attorneys General of Louisiana, Alabama, Mississippi and Florida." Likewise, my office saw the Criteria document for the first time yesterday afternoon.

Kenneth R. Feinberg
August 20, 2010
Page 2

As Florida's chief legal officer, I must again respectfully disagree with your interpretation of the law applicable to the Gulf Coast Claims Facility ("GCCF") process. The GCCF was proposed as an alternative to the BP claims process, which was seen as lacking credibility and efficiency. However, the GCCF was never contemplated as a means of reducing the requirements for an OPA claims process. The GCCF has been represented to be "OPA-plus" in the protections and rights it will confer on eligible Claimants. Unfortunately, the current process is far more onerous than OPA allows and greatly reduces Claimants' rights. Indeed, the process appears to have as its primary goal the reduction or elimination of claims against BP, instead of making claimants whole.

My office has communicated with you on numerous occasions and in various ways in an effort to develop a claims process that meets the needs of the people of Florida and the Gulf Coast and the requirements of the law but virtually every substantive edit that we have offered has been rejected.[2] Specifically, although the list below does not detail every major deficiency with the Protocol, the following provisions are particularly troublesome:

- **Proximate Causation:** The inclusion of language concerning a Claimant's alleged burden to prove "proximate causation" between his or her damages and the Spill improperly increases the burden of proof imposed upon Claimants. OPA and its implementing regulations allow a Claimant to recover damages which are "the result of" the Spill – a less onerous standard of causation, reflective of the fact that OPA is a strict liability statute. OPA's only mention of proximate causation is in the limitation of liability context. My staff has provided the necessary edits for the Protocol to conform to the OPA standards. The Protocol's continued reference to "proximate causation," by deviating from the language of OPA, suggests an increased burden of proof on Claimants. Just creating such an ambiguity disserves the public, is contrary to the goal of creating a means of obtaining compensation for damages without the need for litigation, and violates OPA.

- **Limitation on the Right to File Interim Claims:** The Protocol proposes a limitation on the time and ability of Claimants to file "Interim Claims" without any legal authority for doing so. Interim Claims under OPA are intended to provide Claimants with a mechanism for obtaining partial recovery of known damages, without providing a release to a responsible party. The Protocol limits the right to obtain such Interim Payments to 90 days after the GCCF begins operation, in violation of OPA. The Protocol also creates a two-tiered claims

---

[2] Without having the chance to review the Criteria document in detail, my July 2nd letter explains why the extensive reliance on geographic proximity is so misplaced.

Kenneth R. Feinberg
August 20, 2010
Page 3

> process scheme with only "Emergency Advance Payments," which must be filed
> before November 23, 2010, and "Final Payments," which require an as-yet
> unspecified release of claims by the Claimant. Although a footnote characterizes
> "Emergency Advance Payments" as "Interim Payments," and the Protocol later
> states that interim claims will be considered, after November 23, 2010, in
> "appropriate circumstances," this characterization appears to be nothing more
> than a thinly veiled attempt to make the Protocol *seem to provide* the elements
> required by OPA – while actually violating the rights provided by OPA. Interim
> Payments are a required part of the OPA claims process and payment of such
> claims cannot and should not be at the complete discretion of the administrator.

- **Presentment:** The Protocol fails to acknowledge that filing a claim with the
  GCCF for an Emergency Advance Payment satisfies OPA's requirement that a
  Claimant first present a claim to the responsible party before they can either
  obtain money from the Oil Pollution Liability Trust Fund or file a suit for
  damages. Fixing the ambiguity *should* have been an easy edit – but it was not
  made, despite repeated requests by my office. Rather, the latest draft further
  obfuscates this issue by stating that: "Whether or not a claim has been presented
  shall be governed by OPA and applicable law."

- **Refiling Claims:** While the Protocol states that all pending claims previously
  filed with BP will be transferred to the GCCF, today's press release indicates that
  every Claimant who has a pending claim with BP will have to refile their claim
  with the GCCF on an 18-page claims form (but without the supporting
  documentation). Nothing in the Protocol or the Criteria reveals this refiling
  requirement, however. Claimants with pending claims should not and cannot be
  required to refile and thus restart the 90-day clock provided in OPA for
  processing their claims, especially since BP has admitted delaying the processing
  of thousands of claims in anticipation of the GCCF beginning operations. It is
  also unclear what will happen if Claimants do not refile their claims. While I
  recognize your desire to re-evaluate claims that have been denied and to make
  sure that claims are brought fully up-to-date, this procedure does not accomplish
  those goals in an effective manner.

Although the leak has been stopped, the Deepwater Horizon Spill is an on-going
environmental disaster, not a one-time event. While it is all of our most fervent hope that
the Gulf and the people who rely on it for their life and livelihoods will recover soon
from the scourge of the Spill, it is our duty to provide for the possibility that the recovery
will take some time to be fully realized. Part of the recovery process will depend on

Kenneth R. Feinberg
August 20, 2010
Page 4

providing a credible claims process that, at the very least, meets the requirements of
OPA. We remain committed to that goal and hope that you will adopt a Final Protocol
that incorporates the edits that we have previously and repeatedly provided to you and
which are necessary to meet the requirements of OPA. My office is, as always, available
to consult with you.

Sincerely,

Bill McCollum
Attorney General



# STATE OF FLORIDA

**BILL McCOLLUM**
**ATTORNEY GENERAL**

August 27, 2010

John E. (Jack) Lynch, Jr.
U.S. General Counsel
BP America, Inc.
501 Westlake Park Boulevard
Houston, Texas  77079

Re:     Gulf Coast Claims Facility

Dear Mr. Lynch:

I am writing to express my deep concerns regarding the Gulf Coast Claims Facility
("GCCF") and to request a meeting to discuss how BP, as a "responsible party" under the Oil
Pollution Act of 1990 ("OPA"), can assist in rectifying this situation. It remains BP's duty to
provide a credible claims process, consistent with the requirements of OPA, for those
individuals and businesses in Florida that have suffered damages as a result of the Deepwater
Horizon blowout. As it currently stands, the emergency payment protocol and claims
process provided by Ken Feinberg last Friday appear to fall far short of this goal and may
well hamper injured parties as they seek to be made whole and lead to unnecessary litigation.

It is my understanding that the GCCF was proposed as a substitute for the BP claims process,
which was seen as lacking credibility and efficiency. I also understand that BP was directly
involved in the decision to select Mr. Feinberg as the administrator. I am certain that the
GCCF was never contemplated as a means of reducing or changing the requirements for a
claims process under OPA. To operate fairly and effectively, the GCCF process for
individual and business claims instead must, *at a minimum*, comply with OPA.

Despite repeated attempts by my office and many others in the Gulf Coast to assist Mr.
Feinberg in drafting a Protocol that conforms to the requirements of OPA, Mr. Feinberg has
consistently ignored our suggestions. As outlined in my August 20th letter to Mr. Feinberg,
the result is a claims process for emergency payments that provides Claimants with
significantly fewer protections and rights than those conferred by OPA, leading to needless
delays in obtaining compensation and continued uncertainty. As a consequence, even claims
that have been paid under the BP claims process will apparently be rejected by the GCCF.
Such an inequitable result is harmful to the public and not in BP's long-term interests.

Jack Lynch
August 27, 2010
Page 2

Over the past several weeks, BP has reassured the people of the Gulf Coast of its legal and moral commitment to "pay all legitimate claims" from the Deepwater Horizon blowout. It is now time for BP to honor that commitment by supporting the creation of a claims process that meets the requirements of OPA and allows the people of Florida to move forward. Such a process will provide those who have been injured by the blowout with needed relief in an expeditious manner while allowing BP to avoid the uncertainty and costs of litigation.

It appears that the GCCF is the *only* existing process for individuals and businesses to present their claims to BP for this environmental and economic disaster. While Mr. Feinberg has claimed the GCCF process is "strictly voluntary," filing a claim with the GCCF is a condition precedent to seeking payment from the Oil Spill Liability Trust Fund ("OSLTF") or filing suit. Failure of an individual or business to comply with the presentment requirement would result in denial of their OSLTF claim and/or dismissal of their OPA lawsuit. *See, e.g.*, 33 U.S.C. § 2713(a); *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.*, 51 F.3d 235, 240 (11th Cir. 1995). Of course, please let me know if BP is willing to waive the presentment requirement under OPA, thus making the GCCF process truly voluntary. Please also advise me whether BP plans to establish a separate claims process for those business and individual claimants whose claims have been or would have been paid by BP under the prior claims process, but who now appear ineligible for relief under the GCCF process.

In order for the GCCF to perform its critical role in the recovery of the Gulf Coast, it must have the trust of the people. Gaining this trust will be impossible as long as the GCCF eliminates, restricts or minimizes the protections for business and individual claimants while increasing the burden of proof or filing obligations on such claimants. It would be a betrayal of BP's commitment to "pay all legitimate claims" if the GCCF provides less protections to and imposes greater burdens upon the victims of the blowout than OPA requires.

The legislative history establishes that the intent of Congress when it enacted OPA was "to eliminate, to the extent possible, the need for an injured person to seek recourse through the litigation process." By deviating from the requirements and language of OPA, Ken Feinberg appears to be frustrating this congressional intent through a process that encourages costly and protracted litigation, thereby delaying the economic recovery of the Gulf Coast.

I am committed to ensuring the implementation of a claims process that allows the people of the Gulf Coast to fairly and efficiently obtain compensation for their damages from the Deepwater Horizon blowout, an outcome required by OPA and in the interest of both the public and BP. I look forward to meeting with you in the near future to further discuss this matter.

Sincerely,

Bill McCollum

cc:    Kenneth R. Feinberg, Esq.
       Douglas J. Suttles
       Raymond Dempsey



# STATE OF FLORIDA

### BILL McCOLLUM
### ATTORNEY GENERAL

August 27, 2010

The Honorable Eric H. Holder, Jr.
Attorney General of the United States
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530-0001

> Re:   Gulf Coast Claims Facility

Dear Attorney General Holder: *Eric* —

I am writing to express my deep concerns regarding the Gulf Coast Claims Facility ("GCCF")
which was established through your negotiation with BP and to request a meeting to discuss
possible solutions for this situation. It remains the federal government's duty to oversee the
claims process established by BP as a "responsible party" under the Oil Pollution Act of 1990
("OPA"). As Florida's chief legal officer, I must insist on a fair and efficient claims process,
consistent with the requirements of OPA, for those individuals and businesses that have
suffered damages as a result of the Deepwater Horizon blowout. As it currently stands, the
emergency payment protocol and claims process provided by Ken Feinberg last Friday appear
to fall far short of this goal and may well hamper injured parties as they seek to be made
whole and lead to unnecessary litigation.

It is my understanding that the GCCF was proposed as a substitute for the BP claims process,
which was seen as lacking credibility and efficiency. I am certain that the GCCF was never
contemplated as a way to reduce or change the requirements for a claims process under OPA.
To operate fairly and effectively, the GCCF process for individual and business claims must,
*at a minimum*, comply with OPA's requirements.

Despite repeated attempts by my office and many others in the Gulf Coast to assist Mr.
Feinberg in drafting a Protocol that conforms to the requirements of OPA, Mr. Feinberg has
consistently ignored our suggestions. As outlined in my August 20th letter to Mr. Feinberg,
the result is a claims process for emergency payments that provides claimants with far fewer
protections and rights than those conferred by OPA, leading to needless delays in obtaining
compensation and continued uncertainty. As a consequence, even claims that have been paid
under the BP claims process will apparently be rejected by the GCCF. Such an inequitable
result is harmful to the public and completely unacceptable as a matter of policy.

Attorney General Holder
August 27, 2010
Page 2

President Obama has repeatedly stated that the people of the Gulf Coast will be "made whole" through payments from BP. Similarly, BP has recognized its legal and moral commitment to "pay all legitimate claims" from the Deepwater Horizon blowout. That commitment should be honored through the creation of a claims process that meets the requirements of OPA and allows the people of Florida to move forward. Such a process will provide the victims of the blowout with needed relief in an expeditious manner.

It appears that the GCCF is the *only* existing process for individuals and businesses to present their claims to BP for this environmental disaster. While Mr. Feinberg has claimed that the GCCF process is "strictly voluntary," filing a claim with the GCCF is a condition precedent to seeking payment from the Oil Spill Liability Trust Fund ("OSLTF") or filing suit. Failure of an individual or business to comply with the presentment requirement would result in denial of their OSLTF claim and/or dismissal of their OPA lawsuit. *See, e.g.*, 33 U.S.C. § 2713(a); *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.*, 51 F.3d 235, 240 (11th Cir. 1995). Of course, please let me know if the federal government is willing to waive the presentment requirement under OPA for OSLTF claims, thus making the GCCF process truly voluntary.

In order for the GCCF to perform its critical role in the recovery of the Gulf Coast, it must have the trust of the people. Gaining this trust will be impossible as long as the GCCF eliminates, restricts or minimizes the protections for business and individual claimants while increasing the burden of proof or filing obligations on such claimants. The people of the Gulf Coast cannot be "made whole" through payments from BP if the GCCF provides fewer protections to and imposes greater burdens upon the victims of the Deepwater Horizon blowout than OPA requires.

The legislative history establishes that the intent of Congress when it enacted OPA was "to eliminate, to the extent possible, the need for an injured person to seek recourse through the litigation process." By deviating from the requirements and language of OPA, Mr. Feinberg appears to be frustrating this congressional intent through a process that encourages costly and protracted litigation, thereby delaying the economic recovery of the Gulf Coast.

I am committed, as I am sure you are, to ensuring the implementation of a claims process that allows the people of the Gulf Coast to fairly and efficiently obtain compensation for their economic losses, an outcome required by OPA and very much in the public interest. I look forward to meeting with you in the near future to further discuss this matter.

Sincerely,

Bill McCollum

cc:     Admiral Thad Allen
        Kenneth R. Feinberg, Esq.



# STATE OF FLORIDA

### BILL McCOLLUM
### ATTORNEY GENERAL

September 20, 2010

**VIA U.S. MAIL AND E-MAIL**

Kenneth R. Feinberg, Esq.
Feinberg Rozen, LLP
The Willard Office Building
1455 Pennsylvania Avenue NW, Suite 390
Washington, DC 20004-1008

Re: Gulf Coast Claims Facility

Dear Mr. Feinberg:

I appreciate the time you took to travel to Tallahassee to meet with me and my staff. This letter memorializes some of the key points from our lengthy meeting.

Much of our discussion involved the needed improvements to the Gulf Coast Claims Facility (GCCF) operation to ensure that claims are promptly processed and paid, a goal that I know you share. The GCCF has clearly accelerated the delivery of relief, paying out almost $30 million in the last eight days, over half of the GCCF payment total for Floridians. To date, the GCCF has resolved roughly 6,800 emergency payment claims from Floridians, with an average payout of $8,000.00. In three weeks, the GCCF has already paid out more than half of the BP total for Florida payments.

However, GCCF's own reports make it clear that more must, and can, be done to streamline the claims process and afford faster relief to Florida individual and business claimants. Almost 14,000 claims from Floridians (64% of the total number of claims) remain under review, a much higher percentage than for the Gulf Coast overall (47%). Florida also had a far lower percentage of claims in need of additional documentation than for the Gulf Coast overall. This backlog is particularly problematic because Florida had the highest percentage of claims deferred by BP in anticipation of your appointment as the Administrator for the Deepwater Horizon claims of individuals and businesses.

In addition, even with the accelerated payments over the last eight days, the number of new claims during this time was more than double the number of paid claims. Moreover, roughly half of the individuals or businesses who submitted claims to BP have

Kenneth R. Feinberg
September 20, 2010
Page 2

not refiled claims with the GCCF to date. At our meeting, you expressed a commitment to eliminating the backlog over the next two weeks. As I indicated at our meeting, claimants need to have confidence in a fair claims process with prompt payments, as many of their claims were left unresolved in anticipation of the GCCF's implementation.

I hope you will quickly implement some of the suggestions that were made during our meeting to ensure a more streamlined, responsive, and timely claims process. For example, given that each claim is certain to have its own unique issues, a key suggestion made was to have a single point of contact for each claimant, so that the individual or business would always have the same person to deal with on the claim. This approach, when used by banks during our residential mortgage crisis, proved very helpful in reducing the delay in the consideration of loan modification requests.

While the GCCF website provides claimants with access to the status of their claim, the information provided has been of limited value to date. Stating that a claim is "under review" does not tell a claimant whether the claim is complete, how long the review will take or the likely amount of any payment. Calls to the toll-free number do not alleviate this problem, as our office has heard from claimants that they can rarely get a helpful answer from the adjuster and may get conflicting information from different adjusters. Finally, my staff is hearing that claims adjusters located in Florida have no access to the GCCF database and can do little more than pass on the toll-free number when claimants come in to seek assistance in getting their claims promptly paid. Having a claims adjuster assigned to each claim would solve all of these problems, it seems.

I also appreciate your commitment to designate a Florida-based GCCF official to provide regular updates to my office and resolve any constituent concerns. Please let me know when this person has been selected and how they may be reached. Another suggestion was for the GCCF to provide more meaningful claimant data, both in terms of turn-around times and by categories of claims.

We also discussed the GCCF's reliance on geographic proximity as a factor to be applied to deny or limit claims payments. For some time my office has urged you to apply the straightforward OPA (Oil Pollution Act of 1990) standards of causation instead of reliance on proximate causation and geographic proximity concepts. I understand from our discussion that you are leaning towards recognizing tourism-related claims throughout Florida on their merits, acknowledging the statewide impact on the tourism industry from this environmental disaster. You recognized the likelihood unnecessary litigation will occur if tourism-related claims are not honored from everywhere in the state. I will continue to work with you to find a creative solution that will make all injured Florida businesses and individuals whole.

Kenneth R. Feinberg
September 20, 2010
Page 3

Likewise, my office has argued that any claims process must allow for the filing of Interim Claims, as required by OPA. I restated this to you in our meeting. Interim Claims provide claimants with a mechanism for obtaining partial recovery of known damages, without providing a release to a responsible party, and are available for a period of at least three years under OPA. I understand from our discussion that you are leaning toward allowing the filing of both Interim and Final Claims under the Final Protocol. I trust that you will provide my office with enough time to provide meaningful input on the draft Final Protocol including any release language.

Although the discharge of oil has been stopped, the Deepwater Horizon blowout is an ongoing economic and environmental disaster and we must recognize that recovery will take some time. Part of the recovery process will depend on providing a fair and efficient claims process that, at the very least, complies with the requirements of OPA and ensures at least some mitigation of economic loss so that affected Floridians can weather this crisis.

The economic impact of this environmental disaster will be felt for many years to come by Florida's businesses and its people if the backlogs in processing claims and making payments are not resolved. I remain committed to continuing to work with you over the next few weeks to ensure a more prompt and responsive claims process and to reach consensus on an appropriate Final Protocol. I trust that you will contact me by the end of this week to continue our discussions.

Sincerely,

Bill McCollum

cc:     The Honorable Charlie Crist
        The Honorable Alex Sink
        The Honorable Charlie Bronson



# STATE OF FLORIDA

### BILL McCOLLUM
### ATTORNEY GENERAL

November 8, 2010

**VIA U.S. MAIL AND E-MAIL**

Kenneth R. Feinberg, Esq.
Feinberg Rozen, LLP
The Willard Office Building
1455 Pennsylvania Avenue, NW
Suite 390
Washington, DC 20004-1008

Re:  Gulf Coast Claims Facility Draft Final Protocol

Dear Mr. Feinberg:

It was good to see you this past weekend in New Orleans.  Thank you for sharing a draft version of the Final Protocol with my office last week and for expressing your willingness to meet with me soon to discuss any recommendations or concerns we may have regarding the draft.  I was very pleased to see that, consistent with the requirements of the Oil Pollution Act (OPA), you have decided to include interim payments as part of the draft protocol.  I was also happy to see in your cover e-mail that you are continuing to consider the inclusion of the appeals process discussed so often at the beginning of this process and considered an important and necessary component by many, including, based upon the White House press release announcing your appointment, the President and BP.

I look forward to meeting with you as soon as practicable to discuss the draft protocol.  In the meantime, the purpose of this letter is to set forth some of the more overarching of my concerns with the draft, which I recognize is a work in progress, so that you have an opportunity to consider them in advance of our meeting.  Because the November 23rd deadline for the implementation of your Final Protocol is fast approaching, I am also enclosing for your consideration a redlined version of your protocol incorporating our suggested edits and recommendations.  Our draft makes little effort at word smithing in light of the November 23rd deadline.  I also recognize that many important issues, such as providing enhanced claims data to my office for easier review and transparency, can be handled outside of the Final Protocol, and I will address those issues with you or your staff separately.

Specifically, my "big-picture" concerns involve, first, ensuring that the Final Protocol properly reflects in all respects that the Gulf Coast Claims Facility (GCCF) is governed by OPA, except for any personal injury or death claims. Accordingly, you will see language added in different places throughout the document to attempt to clarify and ensure your intent to be consistent with OPA. In this regard, in particular, consistent with OPA, there should be no reference to the proximate cause doctrine for economic loss claims, since OPA rejected that tort concept. Second, our draft has also deleted references to the claims process being "voluntary." As we have indicated, the GCCF is the only available way to seek relief for individual and business claims and any contrary statement is unnecessarily confusing to claimants and is contrary to the views of BP as the responsible party. Third, contrary to your remarks before the Economic Recovery Task Force on October 28, our draft also allows for the recovery of the reasonable costs of estimating the damages claimed, as that is a remedy provided by OPA. Fourth, since your cover note indicated that the appellate panel remained under consideration, in the interests of time, we have taken the liberty of including in our redlined draft, for your review, some proposed language regarding an appellate panel and process. Finally, you will note that we have marked a few places (the "KF" notes) in the draft for further discussion with you, as we are not sure that we agree with your approach as described, but would like to hear the reasoning for them. We also continue to review and consider the draft release you sent with the draft protocol, but will be prepared to discuss it with you when we meet.

As you well know, the economic impact of this environmental disaster will be felt for many years to come by Florida's businesses and its people if the claims process does not operate in a fair and efficient manner. As always, I remain committed to continuing to work with you to reach consensus on an appropriate Interim and Final Payment Protocol. I look forward to continuing our discussions in person and look forward to hearing from you within the next few days as to a convenient date and time for such a meeting.

Sincerely,

Bill McCollum

Enclosures



JAMES D. "BUDDY" CALDWELL
ATTORNEY GENERAL

**State of Louisiana**
DEPARTMENT OF JUSTICE
OFFICE OF THE ATTORNEY GENERAL
POST OFFICE BOX 94005
BATON ROUGE 70804-9005

July 21, 2010

Mr. Kenneth R. Feinberg, Esq.
Feinberg Rozen, LLP
The Willard Office Building
1455 Pennsylvania Avenue, NW, Suite 390
Washington, D.C., 20004-1008

Dear Mr. Feinberg:

I am in receipt of your July 12, 2010, email transmitting the Gulf Coast Claims Facility Draft Protocol and requesting comments from the Gulf Coast Attorneys General. As an initial note, I appreciate your agreement to extend the time frame within which the states can comment on this Protocol. This Protocol is going to be extremely important to the citizens who have been affected by this disaster, and it is pertinent that the claims process be fully vetted and incorporate best practices to fully compensate claimants for the losses they have suffered from this event.

My office is working closely with the other Gulf Coast Attorneys General, as well as the United States Department of Justice, and we are working towards the submission of joint comments on this Protocol. However, I would like to take the opportunity to submit to you the following interim comments for your review and incorporation into the Draft Protocol. In addition to the comments listed below, I would also like to incorporate by reference all of the comments previously submitted by the Governor and the Louisiana executive branch agencies, thru Mr. Pat Juneau.

General Comments:

- To the extent that this Protocol will be released to the public, the document is not written in layman's terms and will not likely be easily understood by claimants. I suggest that, in addition to the Protocol being developed for government review, you develop a simple brochure that explains the claims process, including a claimant's legal rights, which can be publicly advertised throughout the Gulf Coast community.

- The causation requirement in the Draft Protocol seems to exclude claimants for which the Oil Pollution Act ("OPA") and its implementing regulations allow recovery. For example, it is unclear whether the Draft Protocol would allow a

Mr. Kenneth R. Feinberg, Esq.
July 21, 2010
Page 2

seafood processor to recover for its losses, yet BP's current claims process does allow such recovery since these losses are compensable under OPA.

- The time frame for the evaluation of the claim is also unclear, e.g. how long will it take for a claimant to be notified that the claim has been deemed sufficiently complete for consideration; how long will it take for a claim to be assigned to a Claims Evaluator.

- The Draft Protocol states that Emergency Advance Payment applications may be submitted until 90 days after the date that the Claims Facility posts on its website that the well has been successfully closed. This 90 period seems to be arbitrary in nature. A claimant's damages are not based on the number of days after the well is shut-in, but rather for the extent of time for which their damages, as defined by OPA, continue to occur. At this time, it is unknown how long claimants might suffer damages incurred from this disaster. The Emergency Advance Payment should be based on a more concrete and definable date, and one that occurs at least six months after the oil ceases to impact Louisiana waters.

- It is also contrary to OPA and its implementing regulations, as well as statements made by BP, to require claimants to sign releases in order to receive a payment on a final decision. Additionally, an individual or business filing a claim for lost revenue should not be required to waive any rights the claimant may have against BP in order to receive a payment. For example, accepting a payment for lost revenue does not legally prevent a claimant from filing a separate action against a responsible party for damage to property.

- A claimant's appeals process should be more easily defined in your Protocol. Additionally, a time period of 7 days following receipt of the Final Decision does not allow sufficient time for a claimant to decide whether to appeal a decision. Claimants should also be advised of their right to seek legal counsel before signing any releases and/or should otherwise be advised of the consequences of such action. I suggest that you team with the Gulf Coast State Bar Associations to provide claimants with options to seek pro bono legal advice.

- OPA does not require that removal and clean-up costs be pre-approved by the Federal On-Scene Coordinator ("FOSC") and be consistent with the National Contingency Plan ("NCP"). Rather, the statute only requires that removal costs be consistent with the NCP to be reimbursable. *See* 33 U.S.C. § 2702(b)(1)(B). This claims process should not be, and legally cannot be, more onerous than the law allows.

- OPA does not limit the time frame within which a claim may be brought to three years after the date that a Claims Protocol is established. Rather, OPA provides that claims for damages must be brought within "3 years after the date on which

Mr. Kenneth R. Feinberg, Esq.
July 21, 2010
Page 3

the loss and the connection of the loss with the discharge in question are reasonably discovered." 33 U.S.C. § 2717(f)(1). Many losses will certainly be discovered after three years of the effective date of this Protocol. If the intent is to set a date on which the Gulf Coast Claims Facility will close, then the Protocol should explain how claims will be transitioned out of the Claims Facility and back to the responsible party.

Thank you for providing me with an opportunity to comment on the Draft Protocol. I look forward to the opportunity to remain involved in the development of this Protocol and to meeting with you with the Gulf Coast Attorneys General so that we can collectively create a Claims Process that sufficiently protects the citizens of our respective states.

Yours very truly,

James D. "Buddy" Caldwell,
Attorney General, State of Louisiana

cc: Honorable Greg Abbott, Attorney General, State of Texas
Honorable Jim Hood, Attorney General, State of Mississippi
Honorable Bill McCollum, Attorney General, State of Florida
Honorable Troy King, Attorney General, State of Alabama

 

August 16, 2010

Mr. Kenneth R. Feinberg, Esq.
Feinberg Rozen, LLP
The Willard Office Building
1455 Pennsylvania Avenue, NW, Suite 390
Washington, D.C., 20004-1008

Dear Mr. Feinberg:

We are in receipt of your August 8 and 13, 2010, emails transmitting drafts of the Gulf Coast Claims Facility Protocol for Emergency Advance Payments.  We appreciate the opportunity to review this protocol and offer comments.  As we have mentioned, the claims process is extremely important to the citizens who have been affected by this disaster, and it is pertinent for the Attorneys General to continue encouraging you to incorporate best practices into the protocols in order to ensure that claimants are fully compensated for the losses they have suffered from this disaster.

We have reviewed the Advance Payment Emergency Protocol and while we are pleased to see some positive changes, there are still a few major concerns with this Protocol.  These concerns are outlined below in more detail:

Comments:

1. A claimant's right to appeal, and the time frame within which to do so, a final claim decision is triggered by the presentment of a claim.  However, on page 1 of the Protocol for Emergency Advance Payments, you state that the "submission of a claim for an emergency payment does not constitute presentment under OPA."  Furthermore, the Protocol does not outline any process for the appeal of a decision on an emergency claim. A denial of an interim payment will have a negative impact on a claimant and it is important that they have some recourse to challenge that decision.  The statement violates Oil Pollution Act (OPA) requirements and therefore should be eliminated from the Protocol and replaced with a

statement that submission of a claim for an emergency payment constitutes presentment under OPA.

2.  The Period for Application for Emergency Advance Payment (page 7) continues to incorporate a 90 day time frame within which claimants can submit emergency claims.   At this time, it is still unknown how long claimants might suffer damages.   Furthermore, it is also highly unlikely that claimants will be able to calculate the full extent of their losses in 90 days.   Without knowing what long-term impacts might result from this disaster, it will be impossible for claimants to submit real claims for final payments by November 24, 2010.   The period for application of emergency advance payments should be, at a minimum, six months.

3.  The most recent draft Protocol amends the language for "personal injury" claims to restrict such claims to "physical injury/death."  As has been previously brought to your attention, there is great concern over the need for mental health injuries to be compensable through the Protocol.   This change in terminology appears to unjustly eliminate from the claims process persons with mental health claims and unduly limit the scope of the Protocol.

4.  In our meeting with you on July 30, you indicated that you were willing to incorporate a large majority of our recommendations for the mechanics of the overall claims process related to the need for fairness, accessibility, and simplicity, as outlined in Attorney General Hood's communication to you dated July 20.  Those issues are not addressed in your Emergency Protocol, and it may be more appropriate to document such details in the Final Protocol or in a separate claims manual.  However, we would like assurance from you that these critical protections and assistance for claimants will be implemented in your claims process.

Thank you for providing us with an opportunity to comment on this Protocol.  We encourage you to make the changes suggested above so that we can support the claims process and recommend it to our citizens.

Sincerely,


James. D. "Buddy" Caldwell                    Jim Hood
Attorney General                                       Attorney General
State of Louisiana                                     State of Mississippi



**State of Louisiana**
DEPARTMENT OF JUSTICE
OFFICE OF THE ATTORNEY GENERAL
POST OFFICE BOX 94005
BATON ROUGE 70804-9005

JAMES D. "BUDDY" CALDWELL
ATTORNEY GENERAL

November 17, 2010

Mr. Kenneth R. Feinberg, Esq.
Feinberg Rozen, LLP
The Willard Office Building
1455 Pennsylvania Avenue, NW, Suite 390
Washington, D.C., 20004-1008

Dear Mr. Feinberg:

We are in receipt of your November 1, 2010, email transmitting the Gulf Coast Claims Facility ("GCCF") Draft Protocol for Interim and Final Claims. We appreciate the opportunity to review this protocol and offer comments. As we have mentioned, the claims process is extremely important to the citizens who have been affected by this disaster, and it is pertinent that the GCCF incorporate best practices into the protocols in order to ensure that claimants are fully compensated for the losses they have suffered from this disaster.

I have reviewed the Draft Protocol and the Attached Release and Covenant Not To Sue and have outlined below a list of ongoing concerns:

Comments:

1. The referenced causation determination of OPA claims is not consistent between the GCCF evaluation and the release. Section F of the Draft Protocol states that "[t]he GCCF will only pay for harm or damage that is proximately caused by the Spill." However, the Release states that the claimant is discharging the Released Parties for any claim "arising from or relating in any way" to the incident. Claimants are not required to release the responsible parties from liability for claims that the GCCF will not pay.

2. Neither the Release nor the Draft Protocol contain a re-opener clause. In fact, the release specifically states that the claimant "releases and forever discharges...any losses, damages, costs, expenses, injuries, claims, causes of actions, liabilities, or other relief that Claimant has or may have, whether known or unknown, whether present or future, whether direct or indirect, whether legal or equitable..." arising from the Spill. Our continued investigation into this incident suggests that some of the damages claimants may suffer will not manifest or be determinable until some unknown future date. As such, I must insist that any release contain a re-opener clause allowing for the possibility for additional compensation in the event that new damages are discovered.

Kenneth R. Feinberg
November 17, 2010
Page Two

3.  OPA does not support the concept that the GCCF can release BP and other responsible or liable parties and allow BP to subrogate itself to the claimant's rights against other "Released Parties" without limitation.   All references to "Released Parties" should be removed.

4.  Section 6 of the Release and Covenant Not To Sue should be amended as follows, "This Release is not intended to prevent ~~any of the Released Parties~~ any person from exercising their respective rights of contribution, subrogation, or indemnity under the Oil Pollution Act of 1990 ("OPA") or any other law.  ~~As this Release is fully and completely resolving, together with all other Claims, Claimant's claim under OPA,~~ To the extent authorized by OPA, BP is hereby subrogated to any and all rights that Claimant has ~~arising from the Incident.~~ under any other law."  This amendment is consistent with OPA, and specifically, the subrogation language of § 2715 of OPA.

5.  The last bullet of Section IV (A) of the Draft Protocol states, "Any interim payment or Emergency Advance Payment made to a Claimant will be deducted from the final payment of the claim."  The Draft Protocol should clarify that the deduction only applies to a final claim for the same loss, i.e. GCCF should not deduct an interim payment for property damage from a final payment for lost profits.

I would also like to incorporate by reference the comments submitted to you, via email, on November 8, 2010, by Patrick Juneau.  Thank you for providing us with an opportunity to comment on this Protocol.  We encourage you to make the changes suggested above so that we can support the claims process and recommend it to our citizens.

Sincerely,

James D. "Buddy" Caldwell,
Attorney General, State of Louisiana


cc:    Attorney General Jim Hood
       State of Mississippi

       Attorney General Troy King
       State of Alabama

       Attorney General Bill McCollum
       State of Florida

Kenneth R. Feinberg
November 17, 2010
Page Three


    Attorney General Greg Abbott
    State of Texas

    Associate Attorney General Thomas Perrelli
    United States Department of Justice

    Mr. Jack Lynch
    General Counsel, BP

    Mr. Mark Holstein
    Managing Attorney, BP



JAMES D. "BUDDY" CALDWELL
ATTORNEY GENERAL

**State of Louisiana**
DEPARTMENT OF JUSTICE
OFFICE OF THE ATTORNEY GENERAL
POST OFFICE BOX 94005
BATON ROUGE 70804-9005

November 24, 2010

Mr. Kenneth R. Feinberg, Esq.
Feinberg Rozen, LLP
The Willard Office Building
1455 Pennsylvania Avenue NW, Suite 390
Washington, DC 20004-1008

     Re: Proposed GCCF Protocol for Interim and Final Claims

Dear Mr. Feinberg:

     We have enjoyed a solid working relation in the past, and I hope you take my concern about the GCCF's "Protocol for Interim and Final Claims" in that spirit.

     I very strongly believe that you need to run this document by the State's Office of Disciplinary Counsel and secure its approval before issuing the same to Louisianans both with and without Counsel. My concerns include the public perception of your role as an attorney for BP. If Disciplinary Counsel determines that you are a neutral fund administrator and exempt from the ordinary rules, including rules concerning the giving of legal advice, that might otherwise apply, then my main concern is satisfied.

     Thank you for your time and attention to this important matter.

                             Very Truly Yours,

                             James D. "Buddy" Caldwell
                             Attorney General, State of Louisiana

**From:**      MARY JO WOODS
**To:**        MARY JO WOODS
**Date:**      Tue, Jul 20, 2010  3:39 PM
**Subject:**   Fwd: Gulf Coast Claims Facility


>>> MARY JO WOODS 7/16/2010 4:06 PM >>>
Mr. Feinberg,

Our office is in receipt of comments from other state and federal entities addressing the Gulf Coast Claims
Facility draft protocol's compliance with OPA and other issues.  In addition, please find attached our initial
recommendations for the overall claims process related to the need for fairness, accessibility, and
simplicity.  We look forward to working with you in coordination with the other states and federal
government on this matter.

Thank you,

Mary Jo Woods
Special Assistant Attorney General
Mississippi Attorney General's Office
Post Office Box 220
Jackson, Mississippi  39205
(601) 359-3020 (phone)
(601) 359-2003 (fax)
mwood@ago.state.ms.us

This message is being sent by the Office of the Attorney General for the State of Mississippi and is
intended only for the use of the individual to which it is addressed and may contain information that is
legally privileged or confidential.  If you are not the intended recipient, you are hereby notified that any
distribution or copying of this message is strictly prohibited.  If you have received this message in error,
please notify the original sender or the Office of the Attorney General at (601) 359-3680 immediately by
telephone or by return e-mail and delete this message from your computer.  Thank you.

<u>Recommendations Regarding the Gulf Coast Claims Facility</u>

1.      The Gulf States Attorneys General should have full access to the claims data, centers, and personnel.

2.      Security measures must be taken to protect the sensitive and personal nature of information maintained on the claims database.

3.      Claimants should be allowed to submit claims at conveniently located claims centers, via telephone, or through an online claims procedure. The online process should allow submission of both the claim form and supporting documentation. In order to deter the filing of fraudulent claims, claimants should be required to provide a notarized, sworn statement that the information is true subject to the penalty for perjury. A pdf version of the notarized, sworn statement would be sufficient for claims filed on-line. The form of the sworn statement should be approved by the Coastal attorneys general and the Department of Justice.

4.      Claim forms, a claims manual, and FAQ's should be available in each claims center and on the internet. All claim forms and the claims manual should be reviewed and approved by the Gulf States Attorneys General.

5.      Translators should be available in each claims center and through the telephonic claims process. Translated claims materials must also be available.

6.      In addition to a sufficient number of claims handlers, at least one claims manager should be present and available in each claims center, and claims managers should be available by telephone and an online "chat" mechanism to address problems during the claims application process.

7.      Claims centers should have operational, toll-free telephones available for claimants so that they may obtain advice or further information to complete their claims.  Contact information for the local State Attorney General's Office should be posted in each claims center.

8.      When a claimant calls the telephonic claims center, the wait time for the next available claims assistant should be announced, and the claimant should be given the option of leaving a message to be returned by a claims assistant.

9.      Claimants should be provided with secure online access to their claims files to check the status of their claims and to submit any required follow-up documentation.  To accommodate claimants without internet access, any claimant should be provided with a copy of his/her claims file within five business days of receipt of the claimant's written request.

10.      Deadlines for responding to claims need to be set.  Any request for further documentation or information should be sent to a claimant no later than five business days after submission of the claim.  Within twenty-one days of submission of an interim, short-term claim, payment should be made or the claimant should be advised that the claim is being denied.  Any claim not paid within twenty-one days of submission shall be deemed denied.

11.      Payment of interim, short-term claims should be made on a monthly or weekly basis.  All payments should be made available either by check or by wire transfer.

12.      Lost income documentation should be allowed based on revenues dating back to 2007.

13.      Alternative forms of documenting income loss in addition to tax returns, such as receipts and/or sworn affidavits, should be allowed.

2

14.     Failure to obtain requested documentation that is not the fault of, or is beyond the control of, the claimant shall not be held against the claimant.  In those instances, alternative documentation shall be accepted, such as a sworn affidavit explaining the situation signed by the claimant or the third party in control of the required documentation.

15.     Claims should not be denied based on a random distance limit in relation to the shoreline.  All claims incurred as a result of the oil spill should be paid regardless of the claimant's physical location.

16.     Claimants should be compensated for time and expense incurred in filing their claims.  A minimum payment should be set for all legitimate claimants because the trouble of having to submit a claim at all is a direct and proximate result of the oil spill.  Claimants who incur greater costs due to the need for professional assistance or excessive documentation requirements should be allowed to present proof to recoup those losses.

17.     Instead of an appeals procedure, a panel should be appointed by the Gulf States Attorneys General to monitor the claims handling process.  As previously recommended, the panel should consist of former Gulf States Attorneys General – one from each affected state, if possible.

18.     If an appeals procedure is retained in the protocol, it should not be binding, and claimants should retain their right to pursue other avenues of relief, including litigation.

3

     

August 16, 2010

Mr. Kenneth R. Feinberg, Esq.
Feinberg Rozen, LLP
The Willard Office Building
1455 Pennsylvania Avenue, NW, Suite 390
Washington, D.C., 20004-1008

Dear Mr. Feinberg:

We are in receipt of your August 8 and 13, 2010, emails transmitting drafts of the Gulf Coast Claims Facility Protocol for Emergency Advance Payments.   We appreciate the opportunity to review this protocol and offer comments.   As we have mentioned, the claims process is extremely important to the citizens who have been affected by this disaster, and it is pertinent for the Attorneys General to continue encouraging you to incorporate best practices into the protocols in order to ensure that claimants are fully compensated for the losses they have suffered from this disaster.

We have reviewed the Advance Payment Emergency Protocol and while we are pleased to see some positive changes, there are still a few major concerns with this Protocol.  These concerns are outlined below in more detail:

Comments:

1. A claimant's right to appeal, and the time frame within which to do so, a final claim decision is triggered by the presentment of a claim.  However, on page 1 of the Protocol for Emergency Advance Payments, you state that the "submission of a claim for an emergency payment does not constitute presentment under OPA."  Furthermore, the Protocol does not outline any process for the appeal of a decision on an emergency claim. A denial of an interim payment will have a negative impact on a claimant and it is important that they have some recourse to challenge that decision.  The statement violates Oil Pollution Act (OPA) requirements and therefore should be eliminated from the Protocol and replaced with a

statement that submission of a claim for an emergency payment constitutes presentment under OPA.

2. The Period for Application for Emergency Advance Payment (page 7) continues to incorporate a 90 day time frame within which claimants can submit emergency claims. At this time, it is still unknown how long claimants might suffer damages. Furthermore, it is also highly unlikely that claimants will be able to calculate the full extent of their losses in 90 days. Without knowing what long-term impacts might result from this disaster, it will be impossible for claimants to submit real claims for final payments by November 24, 2010. The period for application of emergency advance payments should be, at a minimum, six months.

3. The most recent draft Protocol amends the language for "personal injury" claims to restrict such claims to "physical injury/death." As has been previously brought to your attention, there is great concern over the need for mental health injuries to be compensable through the Protocol. This change in terminology appears to unjustly eliminate from the claims process persons with mental health claims and unduly limit the scope of the Protocol.

4. In our meeting with you on July 30, you indicated that you were willing to incorporate a large majority of our recommendations for the mechanics of the overall claims process related to the need for fairness, accessibility, and simplicity, as outlined in Attorney General Hood's communication to you dated July 20. Those issues are not addressed in your Emergency Protocol, and it may be more appropriate to document such details in the Final Protocol or in a separate claims manual. However, we would like assurance from you that these critical protections and assistance for claimants will be implemented in your claims process.

Thank you for providing us with an opportunity to comment on this Protocol. We encourage you to make the changes suggested above so that we can support the claims process and recommend it to our citizens.

Sincerely,

James. D. "Buddy" Caldwell
Attorney General
State of Louisiana

Jim Hood
Attorney General
State of Mississippi

STATE OF MISSISSIPPI



**JIM HOOD**
ATTORNEY GENERAL

September 20, 2010

Mr. Kenneth R. Feinberg, Esq.
Feinberg Rozen, LLP
The Willard Office Building
1455 Pennsylvania Avenue, NW, Suite 390
Washington, D.C., 20004-1008

Re:   Claims Reports

Dear Mr. Feinberg:

Within only a few days following the Deepwater Horizon blowout and resulting oil spill, the Gulf Coast State Attorneys General called a meeting with counsel for BP to address their concerns on behalf of the impacted states.  Foremost among the issues raised by the Attorneys General was the need for the establishment of a fair, efficient, and transparent claims process to restore losses suffered by our citizens, private businesses, and governmental entities.  As part of that process, BP agreed and immediately began to compile and provide us with daily claims summary reports through its contractor, ESIS.

In my discussions and correspondence with you, I have reiterated the continued need for these daily accounts, and I understood you to be in agreement with me on this issue.  However, to date, my office has received only seven status updates from the GCCF, the last one dated September 3, 2010, more than two weeks ago.  This interruption of the daily reports directly interferes with our ability to monitor the progress of the GCCF and thwarts the need for transparency in the process.  I strongly urge you to resume providing the Gulf Coast State Attorneys General with daily GCCF status updates in compliance with the agreement reached with BP before your assumption of the role as Claims Administrator.

In addition,  we have received no reply to a September 16, 2010, request that a GCCF point of contact be designated for issues related to Mississippi claimants.  I would also appreciate consideration of this request.

Thank you for your assistance in this matter.

Sincerely yours,

Jim Hood
Attorney General

cc:    The Honorable James D. Caldwell
        Attorney General
        State of Louisiana

        The Honorable Greg Abbott
        Attorney General
        State of Texas

        The Honorable Troy King
        Attorney General
        State of Florida

        The Honorable Bill McCollum
        Attorney General
        State of Florida

STATE OF MISSISSIPPI



**JIM HOOD**
ATTORNEY GENERAL

October 11, 2010

Mr. Kenneth Feinberg, Esquire
Feinberg Rozen, LLP
The Willard Office Building
1455 Pennsylvania Ave., NW, Suite 390
Washington, DC 20004-1008

Re:   Deepwater Horizon Claims

Dear Mr. Feinberg:

As you are aware, one of the concessions made by BP to the Gulf Coast State
Attorneys General in our early discussions about BP's claims process was that BP
would provide us with daily status reports. BP had also agreed to arrange for the
Attorneys General to have direct access to the claims database maintained by ESIS.
In our discussions, you agreed to continue providing daily status reports at the
inception of the GCCF.

Given the number of complaints lodged against the GCCF by Mississippi claimants,
I am compelled to conduct an investigation into the GCCF process through the
authority and duty vested in our Consumer Protection Division. Your staff has
demonstrated an overall lack of cooperation and communication with my office in
providing simple daily data reports. Combined with the lack of specific claims
information, this problem makes it impossible to make an independent assessment
of the fairness and effectiveness of the GCCF. Therefore, I am requesting that you
provide me with direct access to your database to evaluate the GCCF's compliance
with our Consumer Protection Act. Should you decline to provide this access
voluntarily, I will have to resort to issuance of an administrative subpoena to obtain
the requested information.

In addition, there recently has been a significant amount of media attention regarding
the compensation you are receiving from BP for your services. When we last spoke,
you did not have any specific information about what you would be paid or any
finalized contract memorializing other details of your agreement with BP to
administer the GCCF. Since apparently that is no longer the case, I am further

requesting that you send me copies of all agreements between you or your firm and BP, including any compensation agreements.

Thank you for your cooperation in this matter.

Sincerely yours,

Jim Hood
Attorney General

CC.   Associate Attorney General Thomas Perrelli

STATE OF MISSISSIPPI



JIM HOOD
ATTORNEY GENERAL

October 21, 2010

Mr. Kenneth Feinberg, Esquire
Feinberg Rozen, LLP
The Willard Office Building
1455 Pennsylvania Ave., NW, Suite 390
Washington, DC 20004-1008

Re:    Deepwater Horizon Claims

Dear Mr. Feinberg:

Thank you for your prompt response to my previous letter to you regarding my
concerns about the GCCF process and my request for access to your claims
database. While I share your interest in protecting the privacy of Mississippi citizens,
as I explained to you in our telephone conversation I am not seeking any personal
documentation about claimants that would violate that privacy interest.   Any
identifying information, such as names and social security numbers, could be
redacted to allow my investigators to effectively evaluate claims handling practices
without disclosing any otherwise confidential data.  My IT staff is available to work
with you to establish a secure computer access that would satisfy your privacy
requirements, as BP and ESIS had agreed to do before you took over as the claims
administrator.

Also, my office continues to receive complaints from claimants whose claims have
remained stagnantly "under review" since the inception of the GCCF. This pervasive
problem leads me to believe that your team is understaffed to adequately handle the
number and complicated nature of claims being filed.   The report from Michael
Mukasey, which I appreciate your sending me, indicates that the members of your
firm will personally review high-dollar claims, claims with recommended payment
lower than that requested by the claimants, and claims slated for rejection. Although
it is a laudable goal to strive for consistency in the claims review process, it seems
overly optimistic to think that the seven members of your firm alone will be sufficient
to perform this weighty task.  Similarly, it is my understanding from media reports
that only twenty-five reviewers are available for ultimate decision-making on all
claims submitted to the GCCF. I request that you please provide me with the identity

of those decision-makers, allow me access to them to assist claimants, and suggest that you consider retaining additional personnel to serve in that capacity to accelerate the process.   Although I have not yet seen the documentation you promised me regarding the GCCF's claims evaluation procedures, if the instructions to claims reviewers are adequately specific, then consistency should be achievable even with an expanded group of claims handlers.

Thank you for your consideration of these critical matters, and I look forward to further discussions with you regarding the need for continued improvements to the GCCF and its service to the Gulf Coast community.

Sincerely,

Jim Hood

cc:    Jack Lynch, Esquire
       Tom Perrelli, Esquire

**STATE OF MISSISSIPPI**



## JIM HOOD
**ATTORNEY GENERAL**

November 3, 2010

Mr. Kenneth Feinberg, Esquire
Feinberg Rozen, LLP
The Willard Office Building
1455 Pennsylvania Ave., NW, Suite 390
Washington, DC 20004-1008

Re:     Draft Final Protocol for the Gulf Coast Claims Facility

Dear Mr. Feinberg,

Thank you for your e-mail of November 1, 2010, circulating your Draft Final Protocol for the Gulf Coast Claims Facility. I appreciate the opportunity to provide you with feedback regarding the Protocol. I am in the process of reviewing it and drafting my comments for you. However, due to other responsibilities and previously scheduled matters, I will be unable to meet your proposed deadline of Friday, November 4. It will be sometime early next week before I will be able to respond to your request for input. Please let me know if this delay will overly inconvenience you. Otherwise, you may expect to hear from me by Wednesday, November 10.

Thank you in advance for your cooperation in this matter. I look forward to continuing our discussion of this vital recovery process.

Sincerely yours,

Jim Hood
Attorney General

STATE OF MISSISSIPPI



**JIM HOOD**
ATTORNEY GENERAL

November 9, 2010

Mr. Kenneth R. Feinberg, Esquire
Feinberg Rozen, LLP
The Willard Office Building
1455 Pennsylvania Avenue, NW, Suite 390
Washington, D.C., 20004-1008

Re:   Draft Final Protocol

Dear Mr. Feinberg,

Thank you for the extended opportunity to comment on your Draft Final Protocol and Release for the Gulf Coast Claims Facility ("GCCF"). As you have acknowledged, it is critical that the input of all interested parties, including government officials, be considered for the GCCF to succeed in its mission to assist victims of the Deepwater Horizon Oil Spill. Although we lacked sufficient time to submit joint comments, I support the recommendations from my fellow Gulf Coast State Attorneys General. In addition, I provide you the following list of concerns that struck me when reviewing the protocol and release.

1.       Interim payments are limited to a quarterly basis. This provision is not based on OPA or any other applicable law, and it operates to the severe detriment of people injured most by the oil spill who live paycheck to paycheck. Claimants should instead be given the option of receiving monthly interim payments.

2.       Final payments will be offset by any collateral source compensation previously received by claimants. BP should not receive the benefit of collateral source payments. Unless the GCCF or BP intends to reimburse the collateral sources directly for the amount of these offsets, the collateral sources and claimants themselves should be left to decide how to resolve this issue.

3.       The release overall is much too broad, particularly in its application not only to BP but to all responsible parties, despite their lack of participation in the claims process. Only people who are beaten down, poor, and/or desperate would agree to the terms of the proposed release. The excessive breadth of the release will lead the public to believe that the GCCF's goal is not to assist people in the Gulf, but to assist BP in taking advantage of this downtrodden group of people.

4.     The GCCF claims evaluation is limited to injuries "proximately caused" by the spill arising under OPA or for personal injury or death, but the release applies much more broadly to all claims "arising from or relating in any way to" the spill.  It is simply unacceptable for BP and all other responsible parties to obtain release for a broader range of claims than the GCCF will even consider paying.

5.     As I have previously discussed with you, claimants should be provided access to volunteer counsel so that they are fully advised of their rights.  This need is particularly great given the excessive breadth of the proposed release.

6.     There is no protection provided to preserve claims for minors or incompetents and no protection for unknown, non-discoverable, or latent claims or injuries in the release.  Language should be added to the protocol and the release to correct this problem.

7.     As yet, the GCCF has not implemented an appeals process for dissatisfied claimants.  One of the federal administration's demands was that a three-judge panel be available to hear appeals of the GCCF's decisions.  It is my understanding that you are in the process of creating an appeals process and I hope that you will invite comments from all interested parties in its development.  My continuing suggestion to you is that the appeals process should not be binding, and claimants should retain their right to pursue other avenues of relief, including litigation.

8.     The protocol allows disclosure of claimants' private information for purposes of subsequent litigation, among other things.  In other words, BP and other responsible parties would have access for their benefit in litigation to the specific claims information you have denied government entities wishing to monitor the GCCF and assist claimants.

This last item leads me to address the persistence of the GCCF's very serious problem with a lack of transparency in the process.  When your firm accepted responsibility for the GCCF, one of the promises you made to the federal administration and to the citizens of the Gulf was to improve the claims process, including making it more transparent.  If anything, the GCCF claims process is less transparent than that of the initial BP claims process.  The information available to claimants regarding claim status is insufficient and no better than BP provided.  No explanation of claim status or basis for claim calculations or denials is provided through the online system.  In addition, claimants are reportedly unable to speak to anyone from the GCCF to obtain more specific information on their claims.  Before the GCCF's inception, BP was working with the Department of Homeland Security to allow the states access to the ESIS database and the State Attorneys General had been assured that they were close to achieving that goal.  You, on the other hand, have denied repeated requests by the State Attorneys General for access to

the GCCF database on purported grounds of protecting the privacy rights of claimants.  Without further cooperation from you on this issue, we are unable to assist you or the claimants to improve the effectiveness of the process.

Thank you again for the opportunity to offer my opinions regarding the draft protocol and release.  I strongly encourage you to continue your efforts to improve the GCCF process and look forward to further discussions with you toward that end.

Sincerely yours,

Jim Hood
Attorney General
State of Mississippi

cc.   Associate Attorney General Thomas Perrelli
      United States Department of Justice

      Attorney General James "Buddy" Caldwell
      State of Louisiana

      Attorney General Greg Abbott
      State of Texas

      Attorney General Troy King
      State of Alabama

      Attorney General Bill McCollum
      State of Florida

      Mr. Jack Lynch
      General Counsel, BP

**STATE OF MISSISSIPPI**



**JIM HOOD**
ATTORNEY GENERAL

December 6, 2010

Mr. Bill Mulvey
C/O Feinberg Rozen, LLP
1455 Pennsylvania Avenue, NW, Suite 390
Washington, D.C., 20004-1008

Via e-mail: Bmulvey@feinbergrozen.com

Dear Mr. Mulvey:

It has been brought to my attention that emergency claims filed by Mississippi casino workers with the Gulf Coast Claims Facility ("GCCF") were arbitrarily and categorically denied solely on the basis of these claimants' place of employment. My office has received several complaints from the casino workers, and it is my understanding that these concerns should be addressed to you, as the GCCF casino liaison. I appreciate that the GCCF has admitted its mistake in assessing casino worker claims as a whole based solely on reports of overall casino gross revenues, an inaccurate indicator of employee revenues. However, I find it unacceptable that the GCCF has refused to correct the error by re-evaluating these claims on its own initiative without the need for the claimants to submit new claim forms.

I am requesting that the GCCF reconsider its handling of casino worker claims and immediately institute a re-evaluation process to restore some amount of fair treatment to this group of oil spill victims. These claims should be given priority status, and I expect you to provide me with an update on your efforts to remedy this situation as soon as possible.

Thank you for your assistance in this matter.

Sincerely yours,

Jim Hood
Attorney General

cc:    Ken Feinberg
       Beverly Martin

WALTER SILLERS BUILDING  •  POST OFFICE BOX 220  •  JACKSON, MISSISSIPPI 39205-0220
TELEPHONE (601) 359-3680  •  TELEFAX (601) 359-3441

STATE OF MISSISSIPPI



**JIM HOOD**
ATTORNEY GENERAL

December 13, 2010

Mr. Kenneth R. Feinberg, Esquire
Feinberg Rozen, LLP
The Willard Office Building
1455 Pennsylvania Avenue, NW, Suite 390
Washington, D.C., 20004-1008

Re:    Gulf Coast Claims Facility

Dear Mr. Feinberg,

Thank you for sending me the draft Gulf Coast Claims Facility (GCCF) claims documents that will be used to implement the new final claims protocol and quick payment option. I have reviewed the materials and provide you with the following list of my concerns and suggestions.

1.     The quick payment option adds more complication and potential for confusion by claimants and should not be offered. It will unfairly encourage fast, low-dollar settlements for people who at this point are financially desperate. No justification is provided for the $5,000 and $25,000 Quick payment amounts. The quick payment option benefits BP and the GCCF by resolving more claims on an expedited basis but provides no apparent benefit to claimants. All claims should be evaluated and paid quickly, not just ones where the claimant is willing to sacrifice monetary value for speed. The quick payment option is particularly troubling due to the speculative nature of any estimate of final damages at this point.

2.     The quick payment option may be in violation of OPA's advertising requirements. To my knowledge, none of the Gulf State Attorneys General were aware that this procedure was even being developed.

3.     In the "Summary of Options for Submission of Final and Interim Payment Claims," the first option listed should be for interim payments, not for final claims or quick payments.

4.     In all GCCF documents, any language indicating that the claimant is releasing or waiving claims should be in bold type. Similarly, where the materials state that interim claims do not require a release, that language should be in bold type.

5.     Since state unemployment benefits are being deducted from final payments, and claimants are required to disclose unemployment benefits they've received, the GCCF should provide that information to the states.

6.     Deficiency notices for missing documents should be sent to claimants submitting interim claims. The GCCF should at least send those claimants a denial letter explaining that the reason for denial was inadequate documentation, and specifying what additional documentation is required.

7.      It is my understanding that a legal assistance program for claimants is being developed, and I appreciate your responsiveness to that particular concern of mine. However, the procedure for final payments and quick payments requiring releases should not be implemented in advance of the legal assistance program being available. It is misleading for the GCCF to announce availability of free legal advice for claimants in press statements without clarifying when that program will be operational. Also, information about the legal assistance program and encouraging its use should be included in the claims materials. It is my expectation that you will ensure that the legal assistance program is sufficient to properly handle the volume of GCCF claims in each Gulf Coast State.

8.      If claimants have questions, they are advised to call the GCCF toll free number and ask for "Quick Pay Information."  Please confirm that these claimants will be advised regarding all of their options, and not just about the quick payment option.

In addition to these new concerns, the same objections I previously raised in my correspondence to you regarding the GCCF final protocol and release still remain. Although I will not reiterate those issues here, I do ask that you reconsider the improvements and revisions presented to you by all of the Gulf Coast State Attorneys General.

Thank you for the opportunity to review and for your consideration of my comments regarding the GCCF claims materials. I look forward to continuing our discussions on the GCCF and its procedures.

Sincerely yours,

Jim Hood
Attorney General
State of Mississippi

cc.     Associate Attorney General Thomas Perrelli
        United States Department of Justice

        Attorney General James "Buddy" Caldwell
        State of Louisiana

        Attorney General Greg Abbott
        State of Texas

        Attorney General Troy King
        State of Alabama

        Attorney General Bill McCollum
        State of Florida

        Mr. Jack Lynch
        General Counsel, BP



## ATTORNEY GENERAL OF TEXAS
### GREG ABBOTT

July 6, 2010

Kenneth R. Feinberg
Administrator, Gulf Coast Claims Facility
1455 Pennsylvania Avenue, N.W., Suite 390
Washington, D.C. 20004

RE:     Establishment of Claims Offices Along the Texas Gulf Coast

Dear Mr. Feinberg,

Thank you for the opportunity to visit with you earlier today about the claims process for Texas residents who are affected by the BP oil spill, which has now reached the Texas coast. Although it is reported that the oil may have been transported to Texas on a ship, rather than having drifted from the site of the spill, it has been confirmed by both the United States Coast Guard and Texas General Land Office that this event marks the first time oil from the BP spill has soiled Texas waters and beaches. Texas must be prepared to respond to further damage to its shores and to its economy as oil from the Deepwater Horizon continues to spew into the ocean and breach our coastline.

Based upon our conversation, it is my understanding that all private claims for damages arising out of the oil spill (including claims from property owners, small and large businesses, fisherman, and other coastal residents impacted by the spill), are being transitioned from BP to the Gulf Coast Claims Facility, which will be administered by you on behalf of BP and the federal government. While this transition is occurring, I understand that Texas citizens and businesses must still report and submit claims directly to BP (at 1-800-440-0858). If the claim submission process or the claims contact information (such as the "800" number) changes during or after the transition, please let me know as soon as possible so that I can inform Texas businesses and citizens.

Now that oil from the Deepwater Horizon has reached Texas shores, Texans must be able to submit claims for compensation for their losses. As we discussed, Texans need claims offices where claims can be presented and questions answered. Accordingly, I hereby request that the Gulf Coast Claims Facility establish a claims office in Galveston County, Texas. Also, as the movement of the spilled oil continues to evolve, there may be a need for additional claims offices in Texas. In the days ahead, I will work with local officials and affected parties to recommend precise locations for these facilities. Please confirm with my office immediately whether the Galveston claims office will be opened, and when it will become operational.

Sincerely,

GREG ABBOTT
Attorney General of Texas

Precious R. Martin, Esq.
Martin & Associates, PLLC
Post Office Box 373
Jackson, Mississippi 39205

James T. Southwick, Esq.
Harry P. Susman, Esq.
Susman Godfrey, L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096

Arthur F. Jernigan, Jr.
Samuel L. Anderson
Harris Jernigan & Geno, PLLC
Post Office Box 3380
Ridgeland, Mississippi 39157

David A. Barrett, Esq.
Boies, Schiller & Flexner LLP
575 Lexington Avenue
New York, NY 10022

William A. Isaacson, Esq.
Robert M. Cooper, Esq.
Boies, Schiller & Flexner LLP
5301 Wisconsin Avenue, N.W.
Washington, D.C. 20015

John L. Gadow, Esq.
Blake A. Tyler, Esq.
Pond, Gadow & Tyler, P.A.
502 South President Street
Jackson, Mississippi 39201

Richard Schwartz, Esq.
David G. Galyon, Esq.
Schwartz & Associates, P.A.
Post Office Box 3949
Jackson, Mississippi 39207-3949

David W. Clark, Esq.
Bradley, Arant, Rose & White, LLP
Post Office Box 1789
Jackson, Mississippi 39215-1789

Hon. Denise Owens
Hinds County Chancery Court Judge
Post Office Box 686
Jackson, Mississippi 39205