# EXHIBIT " C "

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: DEEPWATER HORIZON | * * * * * * * * * * * | CIVIL ACTION NO. 10-CV-1156 (LEAD)<br>c/w<br><br>CIVIL ACTION NO. 10-CV-1196 (MEMBER)<br><br>JUDGE CARL J. BARBIER<br><br>MAGISTRATE JUDGE SHUSHAN |

**Applies to 10-CV-1674**

## BP DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

Before the Court is the motion of the Plaintiff, Elton Johnson, to remand Civil Action No. 2:10-CV-1674 back to the Civil District Court for the Parish of Orleans despite the fact that the Plaintiff has not asserted a Jones Act negligence claim against his employer, Tidewater Marine, LLC ("Tidewater"), and cannot contest that removal jurisdiction in this case is amply supported by the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1349(b)(1)(A). BP Products North America, Inc. and BP America, Inc. (collectively the "BP Defendants") accordingly oppose the Plaintiff's motion to remand, which is scheduled for hearing on August 18, 2010.

On the first issue, a cursory reading of the Plaintiff's petitions reveals that he has failed to allege a necessary element of any Jones Act claim, namely that the negligence of his employer caused or contributed to the Plaintiff's alleged injuries. Neither the Plaintiff's amended petition nor any other pleadings make any such allegation against Tidewater. Perhaps more importantly, the Plaintiff has precluded any arguable Jones Act claim against his employer when he alleges

that the Deepwater Horizon incident was "caused solely by the negligence of BP."[1] As a result, there is no Jones Act claim asserted in the Plaintiff's pleadings to preclude removal of his state court proceeding to this Court.

Otherwise, with no impediment to removal, Section 1349(b)(1)(A) of OCSLA grants federal District Courts wide-ranging jurisdiction to hear and decide any action "arising out of, or in connection with" exploration and drilling operations on the Outer Continental Shelf. Under established Fifth Circuit precedent, a District Court has original subject matter jurisdiction over a plaintiff's action if it would not have arisen "but for" exploration and drilling operations conducted on the OCS. *See, e.g., Tenn. Gas Pipeline v. Houston Cas. Ins. Co.*, 87 F.3d 150 (5th Cir. 1996).

With there being no dispute that the Plaintiff's action arises from the BP Defendants' exploration and drilling operations on the OCS, the Plaintiff's conclusory arguments regarding the lack of OCSLA jurisdiction are unfounded. In sum, removal is proper and this Court has subject matter jurisdiction. The Plaintiff's motion to remand, therefore, should be denied.

## BACKGROUND

The BP Defendants are named in several petitions and one federal court complaint filed by the Plaintiff. While the most recent of these pleadings – the Plaintiff's First Amended and Restated Petition filed in Civil District Court for the Parish of Orleans (the "Amended Petition") – is the operative pleading at issue, the Plaintiff's allegations across all of his pleadings are consistent in at least one respect: none allege that his Jones Act employer was negligent in any way **or** that any fault of his employer caused or contributed to the Plaintiff's injuries.[2] Rather,

---

[1] Plaintiff's First Amended and Restated Petition, ¶ 17 (attached as Exhibit A)("Amended Petition").
[2] *Id. See also*, Plaintiff's May 13, 2010 Petition for Damages filed in state court (attached as Exhibit B)("Original Petition") and Plaintiff's May 5, 2010 Complaint filed with this Court (attached as Exhibit C)("federal

2

all three pleadings allege that, while working aboard Tidewater's M/V DAMON B. BANKSTON on April 20, 2010, the explosion that occurred on Transocean's Deepwater Horizon drilling vessel "violently threw the plaintiff, Elton Johnson, seven (7) feet into a wall and onto a door of the engine room in the supply vessel."[3]

To be clear, the Amended Petition alleges vaguely that the accident "was caused solely by the negligence of defendants, as more particularly set forth herein."[4] However, the allegations of negligence set forth in the remainder of the pleading are directed solely at the BP defendants.[5] Indeed, the Plaintiff then precludes any arguable Jones Act claim against his employer when he asserts that the "above-described incidents were caused solely by the negligence of the defendant, BP."[6] The only specific demand or allegation made against the Plaintiff's employer concerns "maintenance and cure benefits until such time as he reaches 'maximum medical cure,' as determined by his treating physician."[7]

The Plaintiff's assertion of only a maintenance and cure claim against his employer – and the absence of any Jones Act negligence claim – is not unique to his Amended Petition. The same holds true with the Plaintiff's original state court petition,[8] as well as a Complaint filed in this Court, which was later voluntarily dismissed.[9]

The Plaintiff's allegations, on their face, also unquestionably arise from and are inextricably connected to the BP Defendants' operations on the OCS, including the exploration, development, and/or production of oil and other minerals in the subsoil and seabed of the OCS.

---

court Complaint"), which was voluntarily dismissed on May 11, 2010 (the Notice of Dismissal is attached as Exhibit D).
[3] Exhibit A, ¶ 7; Exhibit B, ¶ 7; Exhibit C, ¶ 7.
[4] Exhibit A, ¶ 12.
[5] *Id.* at ¶ 17.
[6] *Id.*
[7] *Id.* at ¶ 16.
[8] Exhibit B, ¶¶ 12-17.
[9] Exhibit C, ¶¶ 12-17.

3

Specifically, the Plaintiff alleges that the "DEEPWATER HORIZON was moored to the ocean floor at the time of the incident and was owned and/or operated and/or chartered and/or controlled by TRANSOCEAN and/or BP at all material times herein."[10] The Plaintiff also avers that on April 20, 2010 he "was an employee of Tidewater Marine working on the *MV Damon B. Bankston* supply vessel mud-roped to DEEPWATER HORIZON"[11] and that "while the vessel, DEEPWATER HORIZON, was performing drilling operations for crude oil off the Coast of Louisiana, an explosion occurred..."[12] Furthermore, at no point in the Plaintiff's motion to remand does he contest that the DEEPWATER HORIZON was performing exploration and drilling operations on the OCS.[13]

The BP Defendants therefore removed the Plaintiff's state court lawsuit on June 7, 2010.

## ARGUMENT

### I. THE PLAINTIFF HAS NOT PROPERLY PLED A JONES ACT CLAIM FOR NEGLIGENCE AND THUS THERE IS NO BAR TO REMOVAL.

While the Plaintiff is correct as a general matter that Jones Act lawsuits may not be removed from state court to federal court,[14] the Plaintiff's motion to remand omits any description of the claims against his employer. The Plaintiff's silence on the issue is not accidental; his pleadings prove that no such claim has been made. The issue before this Court, therefore, is not whether a Jones Act claim has been fraudulently joined to avoid removal; it is whether a Jones Act claim has even been alleged. *Preston v. Grant Advertising*, 375 F.2d 439, 441 (5th Cir. 1967). "The mere allegation in the remand that the 'cause is predicated on the

---

[10] Exhibit A, ¶ 5.
[11] *Id.* at ¶ 6.
[12] *Id.*
[13] *See* BP Defendants' Notice of Removal, ¶¶ 9-14.
[14] *See generally, Lackey v. Atlantic Richfield Co.*, 990 F.2d 202, 207 (5th Cir. 1993).

4

Jones Act' is not enough to require the district court to remand the case to the state court where the action was originally brought." *Id.*

As this Court is well-aware, the Jones Act is a federal statute that allows a seaman who was injured in the course of his employment to bring a negligence claim against his employer only. 46 U.S.C. § 30104. A necessary element of such a claim is an allegation that the plaintiff was injured "by the negligence of his employer, the ship's master, or fellow crew member." T. Schoenbaum, ADMIRALTY AND MARITIME LAW § 6-20, p. 336 (4th ed. 2004); *see also Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 441 (2001).

Although it is incumbent on a Jones Act seaman to "set forth every ground of negligence which he claimed to exist and upon which he relied,"[15] the Plaintiff here has alleged no such negligence against Tidewater. The failure to allege a cognizable ground of negligence – much less to make no allegations of negligence whatsoever – constitutes a failure to state a claim under the Jones Act. *Birks v. United Fruit Co, Inc.*, 48 F.2d 656, 657 (S.D.N.Y. 1930). Thus, the Jones Act ban on removability does not apply here.

Furthermore, the Plaintiff has repeatedly alleged in his petitions and federal court complaint that it was the negligence of BP alone, or the negligence of only BP and Transocean, that was the cause of his injuries. While BP strongly denies these allegations, the fact remains that Plaintiff's pleadings, if taken as true, do not allege any negligence by his Jones Act employer, thereby precluding any basis for a Jones Act claim. The Plaintiff's pleadings do allege a claim for maintenance and cure against Tidewater;[16] however, those allegations are irrelevant because such a claim arises under the general maritime law, not the Jones Act. *Chandris, Inc. v. Latsis*, 515 U.S. 347, 354, 115 S.Ct. 2172, 2183, 132 L.Ed.2d 314(1995) (*citing*

---

[15] *Baltimore S.S. Co. v. Phillips*, 274 U.S. 316, 321-322, 47 U.S. 600, 603 (1927); *see also Slaney v. Cromwell*, 38 F.2d 304, 306 (D. Mass. 1930).
[16] *See, e.g.*, Exhibit A, ¶ 16.

5

*The Osceola*, 189 U.S. 158, 175, 23 S.Ct. 483, 487, 47 L.Ed. 760 (1903)). As a result, with the Plaintiff having not pled a cause of action under the Jones Act in his Amended Petition, the Jones Act cannot preclude the removal of the Plaintiff's lawsuit.

## II. THIS COURT HAS ORIGINAL JURISDICTION OVER THIS CASE UNDER OCSLA.

The remainder of the Plaintiff's remand focuses on whether federal maritime law, rather than OCSLA, applies to his claims. This argument, however, confuses choice of law and jurisdiction. While it is true that where maritime and OCSLA jurisdiction overlap for a particular claim, substantive maritime law will govern, *Tennessee Gas Pipeline v. Houston Casualty Insurance Co.* 87 F.3d 150, 154 (5th Cir. 1996), the issue of remand turns not on choice of substantive law, but instead on jurisdiction. In the context of this remand motion, the Court is not called upon to determine which body of substantive law will eventually apply. Instead, the question presented is whether matters asserted in the Plaintiff's Amended Petition furnish a basis for original federal jurisdiction under OCSLA.

As a starting point, a maritime claim brought in state court does not "arise under" the laws of the United States for purposes of federal question jurisdiction under 28 U.S.C. § 1331, and it is not removable solely because it could have been filed initially as an admiralty claim in federal court. *See Hufnagel v. Omega Service Industries, Inc.*, 182 F.3d 340, 348 n.4 (5th Cir. 1999). Removal of a maritime claim is nonetheless available "if federal jurisdiction is based on something other than admiralty jurisdiction, such as diversity or a statutory provision." *Id.* (citing *Tennessee Gas Pipeline*, 87 F.3d at 153 and ns. 5 and 6). As the Fifth Circuit explained in *Dahlen v. Gulf Crews, Inc.*, "[t]he decision to apply maritime law has nothing to do with whether or not a federal court has jurisdiction." 281 F.3d 487, 492 (5th Cir. 2002) (holding that

6

the court "clearly" had jurisdiction under section 1349(b)). The appropriate inquiry, therefore, is whether OCSLA provides this Court with subject matter jurisdiction, which is addressed below.

### A. Statutory Framework.

National authority over the Shelf is exercised in interconnected ways — through (a) OCSLA's assertion of federal sovereignty, 43 U.S.C. § 1333(a)(1); (b) OCSLA's "surrogate federal law" provision, 43 U.S.C. § 1333(a)(2)(A); and (c) OCSLA's jurisdictional provision, 43 U.S.C. § 1349. BP Defendants lay these provisions out in some detail here.

### 1. Section 1331(a)(1) — OCSLA's Assertion Of Federal Sovereignty And the Paramount Nature of Federal Purposes on the Shelf.

OCSLA declares that "the subsoil and seabed of the outer Continental Shelf appertain to the United States and are subject to its jurisdiction, control, and power of disposition," 43 U.S.C. § 1332(1), thus establishing "national authority over the OCS at the expense of both foreign governments and the governments of the individual states." *Tenn. Gas Pipeline*, 87 F.3d at 153. Under 43 U.S.C. § 1333(a)(1),

> The Constitution and laws and civil and political jurisdiction of the United States *are extended to* the subsoil and seabed of the outer Continental Shelf and to all artificial islands, and *all installations and other devices permanently or temporarily attached to the seabed,* which may be erected thereon for the purpose of exploring for, developing, or producing resources therefrom, or any such installation or other device (other than a ship or vessel) for the purpose of transporting such resources, to the same extent *as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State* ....

The purposes of OCSLA are many, and embrace not just the efficient exploitation of resources on the Shelf, but also provide for (i) protection of the environment and (ii) harmonization of OCSLA with the operations of the Oil Pollution Act of 1990, which establishes the Oil Spill Liability Trust Fund. Specifically, OCSLA's relevant purposes are to;

7

\* \* \*

(2) *preserve, protect, and develop oil and natural gas resources* in the Outer Continental Shelf in a manner which is consistent with the need (A) to make such resources available to meet the Nation's energy needs as rapidly as possible, (B) *to balance orderly energy resource development with protection of the human, marine, and coastal environments,* (C) to insure the public a fair and equitable return on the resources of the Outer Continental Shelf, and (D) to preserve and maintain free enterprise competition;

\* \* \*

(8) *establish an oilspill liability fund* to pay for the prompt removal of any oil spilled or discharged as a result of activities on the Outer Continental Shelf and for any damages to *public or private interests* caused by such spills or discharges;

43 U.S.C. § 1802 (emphasis added).

        2.     *Section 1333(a)(2) — OCSLA's Surrogate Federal Law Provision.*

OCSLA "makes federal law exclusive in its regulation of the OCS . . . ." *Tenn. Gas Pipeline,* 87 F.3d at 153; *see also Gulf Offshore Co. v. Mobil Oil Corp.,* 453 U.S. 473, 480-81 (1981). OCSLA achieves this exclusive federal control in part through 43 U.S.C. § 1333(a)(2)(A) (emphasis added), which provides, in relevant part:

> To the extent that they are applicable and not inconsistent with this subchapter or with other Federal laws and regulations of the Secretary now in effect or hereafter adopted, *the civil and criminal laws of each adjacent State, now in effect or hereafter adopted, amended, or repealed are declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf,* **and** *artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf....* All of such applicable laws shall be administered and enforced by the appropriate officers and courts of the United States.

Under this framework, "gaps" in substantive federal law are filled by "the 'applicable and not inconsistent' laws of the adjacent States," and state laws, when they are applicable to the OCS at all, are thus adopted "as surrogate federal law," meaning that such state laws do not apply of their own force. *Gulf Offshore Co.,* 453 U.S. at 480-81; *see also Hufnagel* v. *Omega*

8

*Sent. Indus., Inc.*, 182 F.3d 340, 349 (5th Cir. 1999); *EP Operating Ltd. P'ship v. Placid Oil Co.*, 26 F.3d 563, 566 (5th Cir. 1994); *Union Tex. Petroleum Corp. v. PLT Eng'g, Inc.*, 895 F.2d 1043, 1052 (5th Cir. 1990) ("Any other result here would frustrate the Congressional purpose that the OCS be treated as an area of exclusive federal jurisdiction within the state where state law will apply to fill in the gaps in the federal law."); *Laredo Offshore Constructors, Inc. v. Hunt Oil Co.*, 754 F.2d 1223, 1228 (5th Cir. 1985) ("If the OCSLA was intended only to govern those cases directly implicating the regulatory and proprietary purposes of the Act, there would have been no need to make available such a broad legal base, including both civil and criminal laws, upon which courts could draw to fill in anticipated gaps in federal law.").

Any cases that fall within OCSLA's assertion of national sovereign authority under section 1333(a)(1), but that are not governed by section 1333(a)(2)(A), are governed by substantive OCSLA provisions or by federal maritime law. *See, e.g., Term. Gas Pipeline*, 87 F.3d at 153 (asserting OCSLA jurisdiction over maritime claim affecting the Shelf). Taken together, section 1333(a)(2)(A), substantive OCSLA provisions, and maritime law thus provide a body of law that is "intended 'to govern the *full range* of potential legal problems that might arise in connection with operations on the Outer Continental Shelf.'" *EP Operating Ltd. P'ship*, 26 F.3d at 569 (citing *Laredo Offshore*, 754 F.2d at 1228) (emphasis added). To the extent that the statutory text and Fifth Circuit precedents leave *any* room for doubt on this issue, those doubts are easily resolved by reference to the statute's legislative history. In amending OCSLA to expand its coverage in 1978, the House Select Committee on the Outer Continental Shelf specifically observed in its report that:

> It is thus made clear that *Federal* law is to be applicable to *all activities on all devices* in contact with the seabed for exploration, development, and production. The committee intends that *Federal law is, therefore, to be applicable to* activities on drilling ships,

9

> *semi-submersible drilling rigs,* and other watercraft, when they are connected to the seabed by drillstring, pipes, or other appurtenances, on the OCS for exploration, development, or production purposes.

H.R. Rep. No. 95-590, at 128 (1977) (emphasis added), reprinted in 1978 U.S.C.C.A.N. 1450, 1534.

### 3. Section 1349(b)(1) — OCSLA's Jurisdictional Provision.

Lastly, OCSLA grants federal District Courts broad jurisdiction to decide *any* dispute "arising out of, or in connection with" operations conducted on the OCS:

> [T]he district courts of the United States shall have jurisdiction of cases and controversies arising out of or in connection with (A) any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals, or (B) the cancellation, suspension, or termination of a lease or permit under this subchapter...

43 U.S.C. § 1349(b)(1) (emphasis added). *See also EP Operating Ltd. P'ship,* 26 F.3d at 569 ("[Broad reading of the jurisdictional grant of section 1349 is supported by the expansive substantive reach of the OCSLA."); *Tenn. Gas Pipeline,* 87 F.3d at 154 (OCSLA's jurisdictional grant is "very broad"). Precisely because the jurisdictional grant is so "broad," the Fifth Circuit has recognized that "the Act covers a wide range of activity occurring beyond the territorial waters of the states on the outer continental shelf of the United States." *Texaco Exploration & Prod., Inc. v. AmClyde Engineered Prods. Co.,* 448 F.3d 760, 768 (5th Cir. 2006) (citations and internal quotation marks omitted); *Walsh v. Seagidl Energy Corp.,* 836 F. Supp. 411, 417 (S.D. Tex. 1993) (observing that there can be *"no dispute"'* that "the jurisdictional grant of OCSLA is *more broad* than [the coverage of OCSLA under section 1333(a)(1)]") (emphasis added).

OCSLA's definitions clearly establish that section 1349(b)(1) jurisdiction encompasses all drilling activities on the OCS. *First,* OCSLA defines "minerals" as including *"oil,* gas,

10

sulphur, geopressured-geothermal and associated resources . . . ." 43 U.S.C. § 1331(q) (emphasis added). *Second,* "exploration" is defined as the "process of searching for minerals, including . . . any drilling," and "development" includes "those activities which take place following discovery of minerals in paying quantities, including geophysical activity, drilling, platform construction, and operation of all onshore support facilities, and which are for the purpose of ultimately producing the minerals discovered." 43 U.S.C. § 133 l(k), (1).

And *third,* according to the Fifth Circuit, the term "operation" is to be read expansively as "the doing of some physical act." *Sea Robin Pipeline,* 844 F.2d at 1207. As a result, the section 1349(b) jurisdictional grant, at the very least, must be taken to apply to "the entire range of legal disputes that [Congress] knew would arise relating to resource development on the Outer Continental Shelf." *EP Operating Ltd. P'ship,* 26 F.3d at 569. Federal jurisdiction thus depends on a factual connection between the suit and resource development on the OCS, and not on any particular legal theory of recovery plaintiff might allege or the relief he might seek.

In short, 43 U.S.C. § 1349(b)(1)(A) creates a factual-nexus grant of independent federal jurisdiction tied to the existence of exclusive federal sovereignty over the OCS as mandated by Congress. OCSLA is a comprehensive scheme that declares absolute federal control over mineral exploration on and under the seabed on the Shelf. Here, by the Plaintiff's own admissions, his injuries were caused as a result of the explosion aboard the *Deepwater Horizon,*[17] which occurred on the Outer Continental Shelf in direct connection to the Defendants' oil exploration, development, and production operations. More specifically than that, the Plaintiff specifically avers that the *Deepwater Horizon* "was moored to the ocean floor at the time of the

---

[17] Exhibit A, ¶¶ 6, 14.

11

incident."[18] That connection to the subsea lands of the OCS clearly triggers OCSLA jurisdiction over this case.

### B. OCSLA Establishes Jurisdiction Here Because The Parties' Dispute Would Not Have Arisen "But For" BP Defendants' Operations On The Outer Continental Shelf.

The connection to Shelf operations required for purposes of establishing OCSLA jurisdiction is not a difficult standard for a removing defendant to meet. The Fifth Circuit applies an expansive "but-for" test, under which the requisite factual nexus is established, and the District Court has original subject matter jurisdiction if *the parties' dispute would not have arisen "but for" the exploration or development operations on the Outer Continental Shelf.* See, e.g., *Tenn. Gas Pipeline*, 87 F.3d at 155. This but-for test reflects the broad jurisdictional grant under § 1349, because "a broad, not a narrow, reading of this grant is supported by the clear exertion of federal sovereignty over the OCS." *Id.* (quotation marks omitted).

Thus, the Fifth Circuit in *Tennessee Gas Pipeline* had "no difficulty in deciding that § 1349 grants original jurisdiction in federal court" over a claim involving an allision with a platform affixed to the OCS that was used to extract and transport minerals from the OCS. 87F.3d at 154. "The undeniable fact is that there would not have been an accident had Tennessee Gas not built its platform to extract minerals from the OCS." *Id.* at 155. As the Fifth Circuit reasoned, "[t]his was clearly enough physical activity on the OCS to constitute an operation." *Id.* at 154. Similarly, in *Barger v. Petroleum Helicopters, Inc.*, 692 F.2d 337 (5th Cir. 1982), the court held that a case arising from the crash of a helicopter ferrying employees to production platforms was covered by the OCSLA because the pilot "would not have been killed in a helicopter crash in the Gulf of Mexico 'but for' the fact that he was employed to transport

---

[18] *Id.* at ¶ 5.

12

eleven workers to a fixed platform on the Shelf. His work furthered mineral exploration and development activities and was in the regular course of such activities." *Id.* at 340.

Likewise, in *EP Operating*, the District Court had original jurisdiction over an action to determine ownership interests in an offshore platform and other facilities, even though active operations at the site had ceased. Former operations transporting minerals and the potential for future operations established the required factual connection, even if the only remaining activity would be to dismantle the offshore facilities. *See* 26 F.3d at 567-68; *see also United Offshore Co. v. Southern Deepwater Pipeline Co.*, 899 F.2d 405, 407 (5th Cir. 1990) (District Court had jurisdiction even though underlying dispute among partners for control of pipeline was "one step removed" from actual operations on the OCS, since the dispute would affect the efficient exploitation of resources from the Gulf and thus threaten the total recovery of federally owned minerals).

Applying these well-settled standards, this Court clearly possesses jurisdiction over the Plaintiff's causes of action. Here, the Plaintiff would have no claim of damage "but for" the operation on the OCS. The Plaintiff alleges that he was injured due to the explosion which occurred "while the vessel, Deepwater Horizon, was performing drilling operations for crude oil off the Coast of Louisiana ..."[19] He alleges that the explosion that occurred on the drilling vessel "violently threw the plaintiff, Elton Johnson, seven (7) feet into a wall and onto a door of the engine room in the supply vessel."[20] Such allegations clearly establish that the Plaintiff's claims would not have arisen but for the exploration-related operations at the site, and hence this Court has subject matter jurisdiction. *See Tenn. Gas Pipeline*, 87 F.3d at 155 (holding that but-for test

---

[19] *Id.* at ¶ 6.
[20] Exhibit A, ¶ 7; Exhibit B, ¶ 7; Exhibit C, ¶ 7.

13

was satisfied when "there would have been no navigational error but for the existence of the platform"); *Barger*, 692 F.2d at 340.

### C. Plaintiff's Argument That This Case Is Not Governed By OCSLA Confuses OCSLA's Provisions.

In the face of these clear precedents, the Plaintiff makes only one argument, namely that he "was injured aboard an offshore supply vessel, not a fixed platform. Obviously, a supply vessel is not a 'fixed platform' that is 'erected' on the seabed" and thus "OCSLA does not apply."[21] The Plaintiff thus concludes that "OCSLA generally does not apply to torts that occur aboard vessels. 43 U.S.C. § 1333(a) (expressly exempting "a ship or vessel" from OCSLA)."[22]

This argument is contradicted by a wealth of case law. In the Supreme Court's decision in *Gulf Offshore Company v. Mobil Oil Corporation*, 453 U.S. 473 (1981), the court determined that federal courts did not have exclusive jurisdiction over cases under OCSLA. In doing so, the court assumed that a federal court could have had removal jurisdiction over the case, which concerned an injury that occurred on a boat moving across the water away from an offshore platform. *See also Recar v. CNG Producing Co.*, 853 F.2d 367, 369 (5th Cir. 1988) (treating Section 1349 as covering an action for injuries sustained by an OCS platform worker aboard a boat); *Stevenson v. Point Marine, Inc.*, 697 F. Supp. 285 (E.D. La. 1988) (same).

The Plaintiff cites only one case in support of his proposition that OCSLA does not apply to torts that occur aboard vessels, *Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F. 3d 778 (5th Cir. 2009) (en banc). This, the Plaintiff argues, when a tort occurs on navigable water on the OCS, as opposed to a stationary platform, maritime law applies.[23] Again, the Plaintiff misses the critical distinction between governing law and jurisdiction. Moreover, even assuming

---

[21] Plaintiff's Memorandum in Support, p.4.
[22] *Id.*
[23] *Id.*

14

maritime law applies to this case, OCSLA provides original jurisdiction under section 1349(b)(1) over maritime cases involving operations on the OCS. Indeed, maritime law often applies in the absence of the application of state law transformed into surrogate federal law by section 1333(a)(2)(A), because OCSLA was "intended 'to govern the *full range* of potential legal problems that might arise in connection with operations on the Outer Continental Shelf.'" *EP Operating Ltd. P'ship*, 26 F.3d at 569 (citing *Laredo Offshore, ISA* F.2d at 1228) (emphasis added); *see also* H.R. Rep. No. 95590, at 128 (1977) ("The committee intends that *Federal law is, therefore, to be applicable to* activities on drilling ships, *semi-submersible drilling rigs*, and other watercraft, *when they are connected to the seabed by drillstring, pipes, or other appurtenances*, on the OCS for exploration, development, or production purposes.") (emphasis added). Thus, the Fifth Circuit has clearly held that the "conclusion that OCSLA confers original jurisdiction over this suit is unaffected by the maritime nature of the underlying claim .... [T]he district court may have *both* admiralty and OCSLA jurisdiction." *Tenn. Gas Pipeline*, 87 F.3d at 155. Contrary to the suggestions of the Plaintiff, OCSLA jurisdiction and maritime jurisdiction are not mutually exclusive.

The Plaintiff's argument is also premised on a confusion of OCSLA's "jurisdiction" provision, 43 U.S.C. § 1349, with its provision concerning the "laws and regulations governing lands," 43 U.S.C. § 1333. But as the Fifth Circuit held in *Dahlen v. Gulf Crews, Inc.*, 281 F.3d 487 (5th Cir. 2002), "[t]he decision to apply maritime law [rather than state law as surrogate federal law] has nothing to do with whether or not a federal court has jurisdiction." *Id.* at 492 (holding that the court "clearly" had jurisdiction under section 1349(b)). In this case, too, the jurisdictional question before this Court is separate and apart from the governing law issues Plaintiff seeks to interpose. Just as in *Tennessee Gas Pipeline*, "even assuming that Plaintiff has

15

defeated diversity jurisdiction and that [his] well-pleaded complaint asserts a maritime claim that is saved to suitors, [this Court] nevertheless ha[s] removal jurisdiction" under OCSLA. *Id.* at 152.

## CONCLUSION

For these reasons, the BP Defendants respectfully request that Plaintiff's Motion to Remand be denied and that this action be maintained in federal court.

Respectfully submitted,

s/ Don K. Haycraft
Donald R. Abaunza (Bar #2273)
R. Keith Jarrett (Bar #16984)
Don K. Haycraft (Bar #14361)
Jonathan A. Hunter (Bar # 18619)
Mark D. Latham (Bar #19673)
Robert E. Holden (Bar #06935)
**LISKOW & LEWIS**
701 Poydras Street, Suite 5000
New Orleans, LA 70139-5099
Telephone: 504-581-7979
Facsimile: 504-556-4108

Attorneys for BP Products North America Inc., and BP America Inc.

and

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Andrew B. Bloomer, P.C.
**KIRKLAND & ELLIS LLP**
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Of Counsel*

16

## Certificate of Service

I HEREBY CERTIFY that on August 10, 2010, a copy of the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record registered to receive electronic service by operation of the court's electronic filing system. I also certify that I have mailed this filing by United States Postal Service to all counsel of record who are not registered to receive electronic service by operation of the court's electronic filing system.

s/ Don K. Haycraft