**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | *<br>*<br>*<br>* | MDL No. 2179<br><br>SECTION J |
| This document relates to: all cases | *<br>*<br>* | Honorable CARL J. BARBIER<br><br>Magistrate Judge SHUSHAN |

**BP'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO "PLAINTIFFS' MOTION TO SUPERVISE EX PARTE COMMUNICATIONS BETWEEN BP DEFENDANTS AND PUTATIVE CLASS MEMBERS"**

BP submits this supplemental memorandum in response to (1) Plaintiffs' Reply Memorandum in Support of Motion to Supervise *Ex Parte* Communications Between BP Defendants and Putative Class Members (Dkt. #990-2); (2) Plaintiffs' Submission of Revised Proposed Order (Dkt. #1061 and 1061-1); and (3) the Statement of Interest on Behalf of the State of Mississippi (Dkt. #1060).  These filings serve only to underscore the fatal defects in plaintiffs' original motion.

*First*, the factual record before the Court does not support—but contradicts—the need for relief sought by plaintiffs.  While plaintiffs contend that Mr. Feinberg and the GCCF should be ordered to implement the principal recommendations of their ethics expert, Professor Stephen Gillers, the reality is that Mr. Feinberg and the GCCF did so even before plaintiffs filed their reply brief, as plaintiffs well know.

*Second*, having abandoned their prior proposed order, which sought a naked prior restraint on speech protected by the First Amendment, plaintiffs have replaced it with another that is even more legally indefensible: a Revised Proposed Order that asks this Court both to censor the speech of non-parties (Mr. Feinberg and the GCCF) and then dictate what they must say. On top of this, plaintiffs seek an order mandating that Mr. Feinberg and the GCCF make statements that are untrue. The law permits no such thing.

*Finally*, plaintiffs' arguments about the GCCF's "independence" founder on the simple fact, disclosed to the public and potential claimants, that the decision whether to pay, settle, or deny a claim submitted to the GCCF is decided by the GCCF and Mr. Feinberg—not BP. Plaintiffs offer nothing to refute this. Their arguments that the Court should control the content of the GCCF's and Mr. Feinberg's speech are as legally improper as they are factually unsupported.

## I.  PROFESSOR GILLERS' RECOMMENDATIONS ARE IN PLACE.

Plaintiffs argue that the GCCF should adopt the principal recommendations of Professor Stephen Gillers to:

- "Inform claimants that if they are represented by counsel, advise them to consult with their attorney before submitting claims and request that the lawyer submit the claims for them";

- "Inform claimants that GCCF is not a law firm," "that 'no one at the GCCF can give you personal legal advice,'" and "that 'no one at the GCCF can represent you'";

- "Inform claimants that no one at the GCCF can advise you 'whether to file a claim with the GCCF,'" "'the worth of any claim you may have,'" or "'advise you regarding settlement of any claims'";

- "Inform claimants that they should consult with a lawyer about whether to file a lawsuit"; and

- "Inform claimants that Mr. Feinberg's meaning of 'independent' means that 'decisions about whether a claimant is entitled to compensation and the amount of the

2

>compensation are [Feinberg's] alone, subject only to the limited appeal authority in the protocol….'"

(Dkt. #990-2, Plfs.' Reply at 15-16 (quoting 12/28/10 letter from S. Gillers to K. Feinberg at 6-8).)

While BP continues to point out that the Court cannot and should not order a non-party like GCCF (and Feinberg Rozen LLP) to do anything, much less restrain their speech, the short answer is that these recommendations are in place within the GCCF. The GCCF plainly informs the public and potential claimants that:

- "*If you are currently represented by a lawyer in connection with any claim you believe you may have against BP, you should not submit a claim until you have conferred with your lawyer about the decision to submit it and about your answers to its questions.* If you then choose to submit a claim, *you should have your lawyer submit the claim for you*. The claim form requests contact information for your lawyer. After receipt of such contact information we will respond directly to him or her." (GCCF Frequently Asked Questions, Section 2, ¶ 11 (emphasis added), Dkt. #963, Ex. 1, 1/7/11 Declaration of Andrew Bloomer, Tab C.)

- "*The GCCF is not a law firm. No one at the GCCF can give you personal legal advice or advise you regarding settlement of any claims, including whether to file a claim with the GCCF or the worth of any claim you may have. No one at the GCCF can represent you*. If you wish to consult a lawyer you should do so." (*Id.* Section 1, ¶ 1 (emphasis added).)

- "You do have the right to be represented by a lawyer of your choosing." (*Id.* Section 2, ¶ 8.)

- "**If you are represented by an attorney in connection with your claim, confer with your attorney about your options before submitting a claim or signing a release**." (Summary Of Options For Submission Of Final And Interim Payment Claims, at 1 (emphasis in original), Bloomer Decl. Tab F; *see also, e.g.*, GCCF Quick Payment Final Claim Form (Individual Claimants), § A, Instructions ¶ 6 ("**If you are represented by an attorney in connection with your claim, do not submit this Form or sign the Release until you have conferred with your attorney about the decision to submit it and sign the Release**." (emphasis in original), Bloomer Decl. Tab G).)

- "*[T]he Claims Administrator does not report to BP and BP does not control his decisions in any way. The Claims Administrator's decisions are his and his alone. His decisions are subject only to the Gulf Coast Claims Facility limited appeal authority in the Protocol for Interim and Final Claims* (published on this website).

3

> In reaching decisions, the Claims Administrator has no duty to serve the interests of any organization or person, including BP." (GCCF Frequently Asked Questions, Section 1, ¶ 2 (emphasis added), Bloomer Decl. Tab C.)

The GCCF fully and directly addresses these issues and the principal Gillers recommendations. Indeed, as is evident from the citations to BP's opposition papers filed on January 7, 2011, the GCCF did so long before plaintiffs filed their January 17 Reply Brief.

## II. PLAINTIFFS' REVISED PROPOSED ORDER SEEKS A MANDATORY INJUNCTION DIRECTING SPEECH BY THE GCCF ON MATTERS (A) ALREADY DISCLOSED ON THE GCCF'S WEBSITE AND IN ITS CLAIMS FORMS/RELEASES, OR (B) CLEARLY INAPPROPRIATE OR UNTRUE.

Plaintiffs' Submission of Revised Proposed Order includes a request that the Court enter a proposed order directing, in the form of a mandatory injunction, that non-parties Mr. Feinberg and GCCF make various statements on the GCCF's website and otherwise. (*See* Dkt. #1061-1 (Feinberg and GCCF "SHALL FURTHER. … Affirmatively state (on website, Release, and all communications — oral, written and electronic)…").) This request for a mandatory injunction directing what speech should be made by a non-party lacks any legal basis and would violate the First Amendment for the reasons set forth in BP's January 7 opposition papers. (Dkt. #963 at 14-24.)

Apart from the constitutional and other legal impediments to plaintiffs' requested mandatory injunction order, most of the information plaintiffs want disseminated is already publicly disclosed by the GCCF. Thus, as to plaintiffs' contentions that Mr. Feinberg and the GCCF should "Affirmatively state…that a lawyer of the claimant's choice should be consulted before accepting a final offer or signing a Release" and "that they cannot advise as to value of the claim, merits of the claim, or any legal consequences of the settlement" (Dkt. #1061-1, ¶ 2.A, C), such disclosures are already made on the GCCF's website and in the GCCF's Claims Forms/Releases. (*See* Part I, *supra*.) Likewise, as to plaintiffs' contention that "'*pro bono*

4

attorneys' or 'community leaders' retained to assist claimants in the GCCF process are being compensated directly or indirectly by BP, and are not 'independent'" (Dkt. #1061-1, ¶ 2.F), the GCCF fully discloses and informs the public and potential claimants that:

> The free legal services program being administered by the Mississippi Center for Justice *is paid for by a pre-paid grant funded by BP*. This funding has no impact on the Mississippi Center's legal advice or legal representation of claimants. There is no connection or communication between BP and the Mississippi Center or the lawyers who will provide representation pursuant to the legal services assistance program. There will be no interference by either GCCF or BP with the lawyer's independence or professional judgment or with the client-lawyer relationship.

(GCCF Frequently Asked Questions, Section 2, ¶ 10 (emphasis added), Bloomer Decl., Tab C.)[1]

Beyond the information already dealt with directly on the GCCF's website and/or in its Claims Forms/Releases, plaintiffs' other requested communications are both inappropriate statements for the GCCF to make and improper subjects of a mandatory injunctive order. For example, plaintiffs seek to require Mr. Feinberg and the GCCF—non-parties engaged in OPA's extrajudicial claims process—to advise potential claimants that the MDL 2179 litigation exists and has an option for short form joinders, as well as inform them of the schedule for the Limitation Action trial and potential relief (such as "punitive damages") that may (or may not) be available in such litigation. (Dkt. #1061-1, ¶¶ 2.B, E; *see also id.* ¶ 4.) PSC lawyers and other plaintiffs' counsel are free to exercise their First Amendment rights by continuing, as they have in the past, to make speeches, issue press releases, provide media comments, and publish

---

[1] Plaintiffs' request for an order that the GCCF and Mr. Feinberg "[r]efrain from contacting directly any claimant that BP and/or the GCCF knows or reasonably should know is represented by counsel" (Dkt. #1061-1, ¶ 1), is entirely unnecessary. The GCCF already informs potential claimants that, "[i]f you are represented by a lawyer, the GCCF will communicate with your lawyer rather than directly with you." (GCCF Frequently Asked Questions, Section 2, ¶ 8, Bloomer Decl., Tab C.) Moreover, the GCCF's Claims Forms require claimants to provide contact information for any lawyers representing them; upon receipt of such information, the GCCF "will respond directly" to the lawyer, not the claimants. (*Id.* Section 2, ¶ 11.)

5

websites and blog messages that tout their opinion that the superior option for claimants is to pursue litigation rather than make OPA claims through presentment to the GCCF. They may express opinions, subject only, for example, to professional responsibility and other legal constraints. The PSC can also publish as it wishes about the status of MDL 2179 and its schedule. But just as it would be unlawful and poor policy for this Court to compel the PSC to include in their expressions a statement about a claimant's option of making a claim to the GCCF, this Court should not order the GCCF to include in its communications the PSC's opinions on claimant options that the PSC likes better. *See, e.g., Pac. Gas & Elec. Co. v. Pub. Utilities Comm'n of California*, 475 U.S. 1, 11, 15 (1986) ("the State is not free either to restrict appellant's speech to certain topics or views or to force appellant to respond to views that others may hold"; holding that an order requiring public utility to disseminate third party's newsletter in billing envelope "impermissibly requires appellant to associate with speech with which appellant may disagree"); *Wooley v. Maynard*, 430 U.S. 705, 714 (1977) ("The right to speak and the right to refrain from speaking are complementary components of the broader concept of 'individual freedom of mind.'") (quoting *Board of Education v. Barnette*, 319 U.S. 624, 637 (1943)); *Miami Herald Publishing Co. v. Tornillo*, 418 U.S. 241, 258 (1974) (holding unconstitutional a statute requiring newspapers to publish the replies of political candidates whom they had criticized). Likewise, just as the Court would not require the PSC to publish on their law firm websites details about GCCF protocols, neither should the GCCF be compelled to publish details about MDL 2179 schedules or relief that may or may not be available in such a proceeding.

Finally, plaintiffs would have this Court enter a mandatory injunction compelling speech that is not true—such as that GCCF and Feinberg Rozen LLP are BP's "agents." (Dkt. #1061-1, ¶ 2.D.) In fact, the submissions previously provide to this Court, including the BP contract with

6

the Feinberg Rozen firm, demonstrate that the firm is an independent contractor, not BP's agent. (Dkt. # 963, Ex. 2, 1/7/11 Declaration of Geir Robinson ¶ 7.)  It is clearly improper for any court to mandate speech that is not true.  Plaintiffs' Revised Proposed Order should be rejected.

### III.   MR. FEINBERG AND THE GCCF ARE INDEPENDENT DECISIONMAKERS AS TO OPA CLAIMS.

Plaintiffs argue that "[b]eing BP's 'independent contractor' and being 'independent' in the claims process are not the same.  Mr. Feinberg answers to BP and is subject to BP's ultimate control."  (Plfs.' Reply at 1.)  Plaintiffs are wrong and their argument ignores the GCCF's public statements and disclosures on this very issue.[2]  Just as the GCCF fully informs potential claimants that "BP has agreed to contribute funds to an escrow account to be used to pay claims submitted to the GCCF" and that "BP provides the funding for the GCCF, including the Claims Administrator's fees and expenses," it makes equally clear that "***the Claims Administrator does not report to BP and BP does not control his decisions in any way.  The Claims Administrator's decisions are his and his alone***. … ***In reaching decisions, the Claims Administrator has no duty to serve the interests of any organization or person, including BP***.  (GCCF Frequently Asked Questions, Section 1, ¶ 2 ("If the Claims Administrator is being paid by BP, how can the GCCF or the Claims Administrator be independent?" (emphasis added)), Bloomer Decl. Tab C.)  Accordingly, the record is clear that while the GCCF is funded by BP and has a contract with BP, subject to the legal requirements of OPA, the Feinberg Rozen firm makes OPA claims decisions for the GCCF, not BP.

---

[2] BP established that Feinberg Rozen (and GCCF) is an independent contractor in part to refute plaintiffs' original argument that because GCCF was allegedly BP's "agent," Feinberg was therefore BP's lawyer.  BP has now refuted any suggestion of agency through the Feinberg Rozen contract and otherwise.  (*See* Dkt. # 963, Ex. 2, Robinson Decl.)  And so now the PSC argues that the fact the Feinberg Rozen firm is an independent contractor does not mean Mr. Feinberg is an independent decisionmaker.  The PSC is simply seeking to change the issue, to no avail, as the PSC is also wrong about Mr. Feinberg's role as an independent decisionmaker.

In short, in consultation with and agreement by the White House, the GCCF replaced the claims facility that was established by BP Exploration & Production Inc. as a designated "responsible party" under OPA. (*See id*. Section 1, ¶ 4 ("The GCCF has replaced the BP claims process.").)[3] Now, claimants who submit OPA claims to BP have those claims paid, settled, or denied under a process developed and operated by the GCCF pursuant to the legal requirements of OPA, not BP. (*See* Gulf Coast Claims Facility Protocol for Interim and Final Claims, November 22, 2010, § I.A, Role ("The GCCF (and the protocols under which it operates) are structured to be compliant with OPA."), Bloomer Decl. Tab E.)[4] Plaintiffs do not cite record evidence that BP is administering the GCCF claims process, making the decisions about GCCF protocols, or deciding what claims to pay, settle, or deny. As a result, plaintiffs are left with such vaporous assertions as "Feinberg is hemmed in by BP." (Plfs.' Reply at 1.) Putting aside that such complaints are contrary to the record before the Court, they fall far short of the rigorous

---

[3] BP reaffirms here its October 22, 2010 statement to the Court that presentment to the GCCF in accordance with the requirements of OPA is sufficient for OPA purposes, without any requirement that separate presentment be made to BP. (*See* Dkt. #594.)

[4] If anything, the Statement of Interest on Behalf of the State of Mississippi confirms that the GCCF independently administers the claims process. (*See* Dkt. #1060.) Putting aside fundamental standing issues arising from the fact that neither Mississippi nor its Attorney General have filed any case in, or are a party to, these MDL proceedings, the State's submission attaches numerous letters from Gulf State Attorneys General to Mr. Feinberg regarding the development and operation of the GCCF. (*See, e.g., id.* Ex. A, 11/9/10 letter to K. Feinberg from Attorney General J. Hood ("Thank you for the extended opportunity to comment on your draft Final Protocol and Release for the Gulf Coast Claims Facility").) BP attaches to this Supplemental Memorandum Mr. Feinberg's responses and other correspondence with the Attorneys General, which demonstrate that Mr. Feinberg himself solicited and considered the points they raised, accepting (or rejecting) various recommendations in whole or in part. (*See* Ex. 1 hereto.) Notably, the State's submission underscores another fact: by issuing public press releases and notices, the Gulf State Attorneys General are more than capable of disseminating their views concerning the GCCF claims process. (*See* Statement of Interest, Ex. A, 12/16/2010 Notice to BP/Gulf Coast Claims Facility Claimants Considering Final or Quick Payments from Gulf State Attorneys General ("The Gulf Coast Attorneys General strongly urge all claimants to proceed with caution in evaluating whether to accept an offer of final payment or quick final payment from the GCCF or to sign any release. … Claimants with questions or concerns should contact their Attorney's General's Office, local bar or legal aid organization or attorney for assistance.").)

showing necessary for the Court to dictate or censor speech that even plaintiffs concede by their silence is fully protected by the First Amendment.

The law strongly disfavors prior restraints on First Amendment protected speech, and that precedent should control here.  Plaintiffs have failed to establish any sort of record that would warrant this Court exercising injunctive power to adopt the requested prior restraint on speech.

## **CONCLUSION**

Plaintiffs' motion is unsupported by the record facts and contrary to the law.  Nothing in the Revised Proposed Order Changes this.  Plaintiffs' motion should be denied.

Respectfully submitted,

/s/ Don K. Haycraft
Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana  70139-5099
Telephone:  (504) 581-7979
Facsimile:  (504) 556-4108

and

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL  60654
312-862-2000 (Tel)
312-862-2200 (Fax)

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
202-662-5985

Attorneys for BP Exploration & Production Inc.

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 26th day of January, 2011.

                                                  /s/ Don K. Haycraft
                                                    Don K. Haycraft