**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | : | MDL-2179 |
| | : | |
| | : | SECTION J |
| | : | |
| THIS DOCUMENT RELATES TO: | : | JUDGE BARBIER |
| | | MAG. JUDGE SHUSHAN |
| ALL ACTIONS | : | |

..................................................................................................................

**STATEMENT OF INTEREST BY THE STATE OF FLORIDA RELATED TO PLAINTIFFS' MOTION TO SUPERVISE *EX PARTE* COMMUNICATIONS BETWEEN BP DEFENDANTS AND PUTATIVE CLASS MEMBERS**

**COMES NOW** Pamela Jo Bondi, Attorney General for the State of Florida, and respectfully joins the requests of the other Attorneys General for judicial supervision of communications between the Gulf Coast Claims Facility ("GCCF") and putative class members and states in support thereof as follows:

1. The State of Florida has not filed any civil action related to the Deepwater Horizon oil spill to date; however, these proceedings concern a myriad of issues that will significantly impact the interests of the State of Florida and its people, environment, and economy. As the State of Florida's chief legal officer, the Attorney General of Florida has numerous responsibilities related to the Deepwater Horizon oil spill. These responsibilities include monitoring and seeking to improve the GCCF claims process, for the benefit of all affected Florida citizens and businesses. The Attorneys General of the Gulf Coast states are entrusted with protecting the collective legal rights of their citizens and advocating for their state's interests and public policy concerns as a sovereign. *See*, *e.g.*, *State ex rel. Att'y Gen. v. Gleason,* 12 Fla. 90, 112 (Fla. 1869).

> The Attorney-General is the attorney and legal guardian of the people, or of the crown, according to the form of government.  His duties pertain to the Executive Department of the State, and it is his duty to use means most effectual to the enforcement of the laws, and the protection of the people, whenever directed by the proper authority, or when occasion arises . . . Our Legislature has not seen fit to make any change in the common law rule.  The office of the Attorney-General is a public trust.  It is a legal presumption that he will do his duty, that he will act with strict impartiality.  In this confidence he has been endowed with a large discretion, not only in cases like this, but in other matters of public concern.  The exercise of such discretion is in its nature a judicial act, from which there is no appeal, and over which the courts have no control.

2. The GCCF is standing in the shoes of BP for the purpose of operating the claims process required by the Oil Pollution Act of 1990 ("OPA").  The State of Florida concurs with the other Attorneys General that all claimants, including putative class members, would benefit from judicial supervision of the GCCF claims process.[1]  Such supervision would provide assurances that the legal rights of claimants under OPA were being honored.  The Court could also play an important role in clarifying any misleading statements made in the past, thus ensuring that claimants make well-informed decisions before signing away their claims.  Finally, the Court has the power to modify the GCCF release paperwork to the extent that it is inconsistent with the requirements of OPA.

3. Many of the concerns expressed by the State of Florida center on the continuing lack of transparency with the GCCF claims process.  Claimants have no way to know the status of their claim, the nature of any additional documentation that might be needed, or when a decision may be made.  Even when there is a decision, the GCCF does not tell claimants why their claim

---

[1] The Florida Attorney General opposes Plaintiffs' request that any judicial supervision of the GCCF claim process take place through the Court-appointed special master, Professor Francis McGovern.  To begin with, most of the concerns over the operation of the GCCF claims process involve issues that would not be well-suited for delegation to a special master.  Moreover, it appears that Mr. Feinberg and Professor McGovern are long-time colleagues; indeed, Professor McGovern accompanied Mr. Feinberg when he met with staff from the Florida Attorney General's office on oil spill matters on August 17, 2010 in Pensacola, Florida.

was denied or discounted. It is vitally important that claims be processed fairly and efficiently.

4. In the same way, the GCCF has repeatedly refused to provide any meaningful information to the Attorneys General of the Gulf Coast states, preventing the Attorneys General from looking for patterns of activity, including inconsistencies in payments. This pattern has continued with the so-called methodology, which the GCCF appears to have released simultaneously to the media and the Attorneys General. While this office had hoped that the methodology would finally provide some transparency, this document provides no useful information to claimants beyond a simplistic multiplier and is based on very optimistic assumptions about unknown environmental and economic conditions.

5. The confusion among claimants has only grown worse after the end of the emergency claims process, since the GCCF has not paid a single interim or final full review claim to any Floridian. It appears that interim or final claims are not being processed, with claimants instead being steered toward final quick pay claims, offering only $5,000.00 to individuals or $25,000.00 to businesses. Claimants need meaningful, objective information before deciding whether to submit an interim, final full review or final quick pay claim but people are submitting quick pay claims out of financial desperation and their lack of faith in the fairness of the GCCF claims process. This problem can be rectified through judicial supervision of the GCCF claims process.

6. By the filing of this document, the State of Florida does not acknowledge or waive its right to object to federal jurisdiction over any potential action that may be filed as a result of the Deepwater Horizon oil spill. Nor does the State of Florida acknowledge its support for or waive its right to object to the transfer and consolidation of actions brought by any governmental entities into a single action with all litigants having filed claims in connection with this matter.

7. The State of Florida's interest is to see that its citizens are protected, with the recovery from this environmental disaster taking place as soon as possible. Court supervision will ensure

that the GCCF claims process operates in a fair and effective manner, with claimants receiving full and accurate information, while protecting against any processing delays. Should the Court desire additional briefing on this issue, the Florida Attorney General would be happy to comply.

Respectfully submitted,

**PAMELA JO BONDI**
ATTORNEY GENERAL
STATE OF FLORIDA

BY: /s/ Russell S. Kent

PATRICIA A. CONNERS
Associate Deputy Attorney General
Florida Bar No. 361275
E-mail:  trish.conners@myfloridalegal.com
RUSSELL S. KENT
Special Counsel for Litigation
Florida Bar No. 20257
E-mail:  russell.kent@myfloridalegal.com
NICHOLAS J. WEILHAMMER
Assistant Attorney General
Florida Bar No. 479322
E-mail:  nicholas.weilhammer@myfloridalegal.com

Office of the Attorney General
The Capitol, PL-01
Tallahassee, FL 32399-1050
Telephone:  850-414-3300
Facsimile:  850-488-9134

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Statement of Interest by the State of Florida Relating to Plaintiffs' Motion to Supervise Ex Parte Communications Between BP Defendants and Putative Class Members has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM / ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 2nd day of February, 2011.

/s/ Russell S. Kent
Russell S. Kent