UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In re: Oil Spill by the Oil Rig                     MDL No. 2179
    "Deepwater Horizon" in the Gulf
    of Mexico, on April 20, 2010                    SECTION J

Applies to: *All Cases*                             JUDGE BARBIER

                                                    MAGISTRATE SHUSHAN

## ORDER AND REASONS

Before the Court is Plaintiffs' **Motion to Supervise Ex Parte Communications with Putative Class (Rec. Doc. 912)**, as well as several responses including BP Defendants' **Opposition (Rec. Doc. 963)**, Plaintiffs' **Reply in Support (Rec. Doc. 1021)**, Plaintiffs' **Supplement (Rec. Doc. 1061)**, BP Defendants' **Supplemental Memorandum in Opposition (Rec. Doc. 1071)**, the State of Mississippi's **Statement of Interest (Rec. Doc. 1060 & 1085)**, the State of Louisiana's **Notice of Joinder in Motion to Supervise (Rec. Doc. 1091)**, and the State of Florida's **Statement of Interest (Rec. Doc. 1095)**.

### PROCEDURAL HISTORY AND BACKGROUND

This multi-district litigation consists of hundreds of consolidated cases, with thousands of claimants, presently pending before this Court. These cases arise from the April 20, 2010 explosion, fire and capsizing of the "Deepwater Horizon" mobile offshore drilling unit, which resulted in the release of millions of gallons of oil into the Gulf of Mexico before it was finally capped approximately three months later. The consolidated cases include claims for the death of eleven individuals, numerous claims for personal injury, and various claims for environmental and economic damages.

The Oil Pollution Act of 1990 ("OPA") requires BP, as the designated "responsible

party" for the Deepwater Horizon oil spill, to "establish a procedure for the payment or settlement of claims for interim, short-term damages." 33 U.S.C. § 2705(a). In the initial months after the casualty, BP began to directly receive and pay interim claims arising from the oil spill. To assist in handling claims, BP contracted with one or more claims adjusting firms. Subsequently, on June 16, 2010, the White House issued a Press Release announcing that an "Independent Claims Facility" and a $20 billion escrow fund would be established by BP to fulfill these and other legal obligations of the company. The Claims Facility was to be responsible for developing and publishing standards for recoverable claims, under the authority of Ken Feinberg, who would serve as an independent administrator. BP announced that effective August 23, 2010, the Gulf Coast Claims Facility ("GCCF"), spearheaded by Mr. Feinberg and his law firm, would replace the original BP claims process and perform BP's obligations under OPA with respect to private economic loss claims. Although a formal Trust Agreement was executed to establish the escrow fund, the nature of the relationship between BP and the GCCF and Mr. Feinberg remains a disputed issue.

In their instant Motion, Plaintiffs request that the Court oversee or supervise communications between the GCCF and putative class members to ensure that communications are neither misleading nor confusing.

**PARTIES' ARGUMENTS**

First, Plaintiffs argue that the GCCF is indistinguishable from BP–explaining, for example, that BP created the GCCF, that BP still retains some level of control over the GCCF, and that the GCCF is BP's agent for the purpose of satisfying BP's role as the "responsible party" under OPA. Accordingly, Plaintiffs argue that the Court should require changes to the GCCF communications

that Plaintiffs perceive to be misleading and confusing. Specifically (in their most recent submission, Rec. Doc. 1061), Plaintiffs argue that the Court should order that BP Defendants, Mr. Feinberg, the GCCF, or their representatives:

- Refrain from contacting directly any claimant that BP and/or the GCCF knows or reasonably should know is represented by counsel, including, but not limited to, any person or entity who has filed a lawsuit or submitted a PPF, a Short-Form Joinder, a GCCF Claim, or a BP Claim that reflects representation by an attorney.

- Refrain from referring to the GCCF, Mr. Feinberg, or Feinberg Rozen, LLP (or their representatives), as "independent" or "neutral," and should further:

  - Affirmatively state (on the website, Release, and in all communications–written, oral, and electronic) that a lawyer of the claimant's choice should be consulted before accepting a final offer or signing a Release;

  - Affirmatively state that punitive damages (and/or additional damages) may be available in litigation, but are not being recognized or paid by the GCCF;

  - Affirmatively state (on the website, Release, and in all communications) that they cannot advise as to the value of the claim, merits of the claim, or any legal consequences of the settlement;

  - Affirmatively state (on the website, Release, and in all private and public communications) that Mr. Feinberg, Feinberg Rozen, LLP, and the GCCF are BP's agents in performing BP's statutory duties under the Oil Pollution Act of 1990;

  - Affirmatively advise claimants (on the website, Release, and in all communications) of the pendency of the MDL 2179 litigation, the availability of Short-Form Joinders (without the need of an attorney or the payment of a filing fee), and the existence of the Liability/Limitation/Test Case Trial in February 2012 in New Orleans;

  - Affirmatively advise (on the website, Release, and in all communications) the putative class and claimants that pro bono attorneys or community leaders retained to assist claimants in the GCCF process are being compensated directly or indirectly by BP, and are not "independent."

3

- Every communication with a putative class member should be prefaced to inform them of the above.

- Further if any communication, public or private, from the GCCF, Mr. Feinberg, or Feinberg Rozen, LLP purports to inform claimants/plaintiffs/putative class members of their right to seek relief from the Oil Spill Trust Fund, such communication shall also advise: (a) that they can also elect to seek relief in a court of law using a Short-Form Joinder in MDL 2179 that can be filed without an attorney and without the payment of a filing free; (b) that some damages or other remedies available in a court of law may not be available from the Oil Spill Trust Fund; (c) that the total funds available from the Oil Spill Trust Fund are limited; and (d) that the Coast Guard (not a court) may determine that they have not satisfied the Coast Guard's presentment requirements.

Plaintiffs maintain that this Court has the duty and the authority to protect members of the putative class, citing Federal Rule of Civil Procedure 23, Federal Rule of Civil Procedure 16, the Manual for Complex Litigation, and Turner v. Murphy Oil, No. 05-4206 (E.D. La. Nov. 14, 2005). Because MDL 2179 includes cases which were initiated as putative class actions, Plaintiffs argue that these proceedings are subject to Rule 23, which allows courts to issue orders "to protect class members and fairly conduct the action" and "impose conditions on represented parties." The Manual for Complex Litigation explains that "[t]he court must protect the interests of absent class members, and Rule 23(d) gives the judge broad administrative power to do so, reflecting the equity origins of class action" which includes the ability to "regulate communications with potential class members, even before certification." § 21, at 244, and § 21.12, at 247.

Plaintiffs also urge the Court to adopt analogous reasoning to that of Judge Fallon in Turner v. Murphy Oil, No. 05-4206 (E.D. La. Nov. 14, 2005) (Rec. Doc. 39). There, Judge Fallon decided to supervise communications between defendant Murphy Oil and the putative class members, concluding that Murphy Oil's communications with putative class members was commercial speech

not fully protected by the First Amendment (because defendant's economic interest in reducing litigation costs were involved). Accordingly, Judge Fallon ordered certain restrictions on communications by or on behalf of the defendant, Murphy Oil, including (1) the requirement that the Release contain language about seeking independent legal advice, (2) the requirement that Murphy Oil not initiate contact with any individual who had not previously contacted Murphy Oil, and (3) the requirement that Murphy Oil comply with Rule 4.2 of the Louisiana Rules of Professional Conduct and not communicate with persons already represented by counsel.

BP counters that Plaintiffs' requested relief contravenes the extra-judicial process statutorily mandated by OPA. Because Plaintiffs do not contend that they have exhausted the OPA's claims process (by fulfilling the presentment requirement), BP argues that Plaintiffs cannot bring a valid court action. Next, BP takes the position that Plaintiffs' requested relief is an unconstitutional prior restraint on speech protected by the First Amendment and authorized by OPA. Citing Bernard v. Gulf Oil Co., 619 F.2d 459, 473 (5th Cir. 1980), BP explains that prior restraints are justified only in "exceptional circumstances" and require a showing that judicial intervention is necessary to prevent "direct, immediate and irreparable harm," a standard BP contends Plaintiffs cannot meet. BP argues that Plaintiffs have not provided any evidence that putative class members misunderstood GCCF publications or felt coerced. BP also argues that Mr. Feinberg's and the GCCF's speech is non-commercial expression entitled to full protection under the First Amendment–as Mr. Feinberg and the GCCF are implementing public policy established by Congress and the President and are not acting on behalf of a client. BP draws a distinction between cases that Plaintiffs cite for the proposition that courts can interfere with communications to members of a putative class–in Plaintiffs' cases, defendants were in ongoing business relationships with the defendants; whereas,

5

the GCCF has had no prior relationship with claimants. Rather than monitor Mr. Feinberg's speech, BP urges Plaintiffs to exercise their own First Amendment rights–a step that BP explains Plaintiffs are already taking by airing their concerns through the local and national media.

Furthermore, BP maintains that Mr. Feinberg and the GCCF are independent decision-makers as to OPA claims. Although the GCCF is funded by BP and has a contract with BP, Feinberg Rozen, LLP makes OPA claims decisions subject to the legal parameters of OPA. BP insists that Mr. Feinberg is solely responsible for administering the GCCF, that he developed the protocols and Release, and that he does not report to BP. BP argues that these facts more than satisfy the definition of an independent contractor under Newcomb v. North East Ins. Co., 721 F.2d 1016, 1017 (5th Cir. 1983) (which provides that an independent contractor works according to his own methods and without direct supervision).

Additionally, BP insists that Plaintiffs seek a mandatory injunction directing speech by the GCCF on matters either already disclosed on the GCCF website and in its claims and releases or that, under BP's perspective, is clearly inappropriate or untrue. Specifically, BP points to GCCF materials that already inform claimants that: (1) if a claimant has an attorney, he or she should confer with the attorney before submitting a GCCF claim or signing a reslese; (2) the GCCF is not a law firm and does not give legal advice; (3) claimants have the right to be represented by lawyers of their own choosing; (4) Mr. Feinberg does not report to BP and BP does not control the GCCF in any way–the decisions of Mr. Feinberg are only subject to the GCCF limited appeal authority in the protocol for interim and final claims; and (5) the free legal services program is paid for by a pre-paid grant funded by BP.

## DISCUSSION

The Court has the responsibility to ensure that the mandates of OPA are implemented. A responsible party's use of a third party to fulfill its statutory obligations is not only consistent with the intent of OPA but also highly commendable if those claims can be resolved even more efficiently and fairly. The existence of the GCCF does, however, raise issues concerning both its role and its relationship to BP. Is the GCCF completely independent of BP and a neutral arbiter of claims? Is the GCCF actually BP or an agent of BP? Or, is the GCCF another type of hybrid mixture of the traditional plaintiff-defendant adversarial model of dispute resolution and the use of a third party?

OPA contemplates that the responsible party will "establish a procedure for the payment or settlement of claims for interim, short-term damages." 33 U.S.C. § 2705(a). If the responsible party decides to have a third party accomplish this obligation, the assumption is that the third party is an extension or agent of the responsible party–as was the situation prior to the creation of the GCCF when BP used claims-adjusting firms to handle claims. If, however, the responsible party decides that an "independent" and "neutral" or other hybrid entity is to fulfill its OPA claims obligation, it is incumbent on the responsible party to disclose the nature of its relationship to this entity and the precise role of the entity. Otherwise, the default assumption applies that the claims are being handled by the responsible party itself.

Full disclosure concerning the relationship between the responsible party and the third party acting in accordance with OPA is consistent with the policy underlying other court-overseen claims-resolution facilities–such as class actions or other settlement funds and bankruptcy trusts–and is consistent with the transparency policies of many defendants. The legitimacy of a third-party claims-resolution facility is derived in no small part from the claimants' ability to learn, comprehend, and

appreciate how that facility is operated so that the claimants can fully evaluate the rationale behind the communications made to them by the facility. Full disclosure and transparency can insure that the reality of the operation of a third party will be consistent with any publicity concerning that entity. Full disclosure can also give protection to the responsible party from possible future legal attacks on the validity of the evaluation, payment, and release of claims.

This Court encourages and commends any claims process that will fairly, quickly, and efficiently resolve claims in this litigation. Innovative and thoughtful procedures are to be encouraged. Those procedures must, however, be fully transparent so that claimants can evaluate them appropriately. The Court recognizes and appreciates the enormity of the undertaking of Mr. Feinberg and does not intend to impede or interfere with his ability to fairly and efficiently process claims.

**Mr. Feinberg, Feinberg Rozen, LLP and GCCF Are Not Fully "Independent" of BP**

BP argues that since Feinberg Rozen, LLP is not providing legal advice to BP, they are not subject to the ethical rules restricting contact by lawyers with unrepresented persons. But, this argument misses the larger point. As the designated "responsible party" under OPA, it is BP's responsibility to "establish a procedure for the payment or settlement of claims for interim, short-term damages." 33 U.S.C. § 2705(a). To fulfill its statutory obligations, BP has created the GCCF, which is administered by Mr. Feinberg and his law firm, Feinberg Rozen, LLP. The fact that BP in this instance has chosen to delegate this responsibility cannot relieve BP of its statutory obligations.

After reviewing the facts and submissions by the parties, the Court finds that BP has created a hybrid entity, rather than one that is fully independent of BP. While BP may have delegated to Mr. Feinberg and the GCCF independence in the evaluation and payment of individual claims, many

8

other facts support a finding that the GCCF and Mr. Feinberg are not completely "neutral" or independent from BP. For example, Mr. Feinberg was appointed by BP,[1] without input from opposing claimants or the Plaintiffs' Steering Committee ("PSC"), and without an order from the Court.  Mr. Feinberg is not a true third-party neutral such as a mediator, arbitrator, or court-appointed special master.

BP pays Mr. Feinberg and his law firm a flat fee each month, pursuant to a written contract which outlines his duties and responsibilities in great detail. (Defs.' Br. Ex. 2A, "BP-Feinberg Contract.") This Contract is a private one between only BP and Feinberg Rozen, LLP–the United States is not a party to this Contract. Mr. Feinberg and Feinberg Rozen, LLP provide claim intake, claim review, claim evaluation and claim settlement and payment services. (See, e.g., id.; Pls.' Br. Ex. G at 15-18, "Mukasey Statement.")[2] BP decided the amount and manner in which it funded the GCCF through this trust agreement. (See Pls. Br. Ex. F, "Trust Agreement" at 1, ¶ 4; 19.) BP is given monthly reports regarding distributions made to GCCF beneficiaries (id. at 6, ¶ D.1), and Mr. Feinberg states that in administering the fund, the GCCF has no conflicts of interest (BP-Feinberg Agreement at 10-11); that it will hold all client information in confidence (id. at 3-5); that it cannot reveal any confidential information relating to the GCCF without giving BP prior notice so that BP can seek a protective order (id.); that all information gathered from claimants will be turned over

---

[1] It has been suggested by several non-PSC attorneys that Mr. Feinberg is a Presidential appointee and therefore a part of the Executive Branch. There is no evidence of such an appointment to support this contention. Apparently, Mr. Feinberg was initially selected by BP, with the approval of the White House, which then issued a Press Release announcing that an independent claims facility was being created, and would be run by Mr. Feinberg. This does not make Mr. Feinberg or the GCCF government agents.

[2] On October 2, 2010, Michael Mukasey, partner at Debevoise & Plimpton LLP, sent Mr. Feinberg a memorandum reviewing the compensation agreements between Feinberg Rozen, LLP and BP relating to the administration of the GCCF.

to BP, with no restrictions as to its use (id. at 7).

Additionally, the Contract provides that BP will "indemnify, defend, and hold harmless" Feinberg Rozen, LLP "from and against any and all threatened or commenced actions . . . that are threatened, asserted, brought, commenced, or sought by any person or entity . . . relating to or arising from the operation of the GCCF." (BP-Feinberg Contract at 2.) BP may choose to allow Feinberg Rozen, LLP to "use and access certain of its computers, equipment, furniture, [and] properties" (id. at 5), as well as "use and access certain facilities, properties, and offices owned or leased by BP" (id.). Under the Contract, BP retains the ability to audit Feinberg Rozen, LLP as long as the firm retains information about claimants. (Id. at 6.) In administering the GCCF, Feinberg Rozen, LLP agrees to comply with BP's Code of Conduct (id. at 7) and to refrain from subcontracting its obligations without prior written approval from BP (id. at 8).

Although the Contract has an expiration date of August 13, 2013, the Contract may be terminated earlier: by BP, if Feinberg Rozen, LLP materially breaches its obligations and fails to cure, if Feinberg Rozen, LLP breaches its fiduciary obligations, or if Feinberg Rozen, LLP ceases to devote substantial time to running the GCCF; and by Feinberg Rozen, LLP for any reason whatsoever. (Id. at 9-10.) The Contract also provides that Feinberg Rozen, LLP's fees will be evaluated after January 15, 2011, and that thereafter the parties will mutually agree on fees in advance of the first day of each successive quarter. (Id. at Ex. C.)

The GCCF is settling claims against BP under OPA, but also attempting to settle claims that fall outside of OPA, such as personal injury and death claims. (Id. at Ex. B, "Gulf Coast Claims Facility Protocol for Interim and Final Claims November 22, 2010," available at http://www.gulfcoastclaimsfacility.com/proto_4 (last visited Feb. 2, 2011).) In their releases of BP,

the GCCF requires claimants to release and assign all rights or claims not only against BP, but against any other potentially liable party. (Id.) Whether or not seeking such broad releases is appropriate, the GCCF is clearly acting to benefit BP in doing so. BP may appeal an award of the GCCF if it exceeds $500,000; appeals are decided by a three-judge panel and are binding only on BP. (Id.)

Under these circumstances, while Mr. Feinberg appears "independent" in the sense that BP does not control Mr. Feinberg's evaluation of individual claims,[3] Mr. Feinberg and the GCCF cannot be considered "neutral" or totally "independent" of BP.

**Supervision of Communications with Putative Class Members**

BP is not only the designated OPA "responsible party," but also a primary Defendant in this MDL and the consolidated putative class actions. Even prior to certification of a class, this Court has both the inherent authority and the responsibility under Rule 23 to supervise or control certain communications with potential class members, especially those who are unrepresented by their own counsel. Manual for Complex Litigation § 21.12 (4th ed. 2004). If potential class members have received inaccurate, confusing or misleading communications, the Court may take action to cure the mis-communication and to prevent similar problems in the future. Id. This is long-established law:

> Misleading communications to class members concerning the litigation pose a serious threat to the fairness of the litigation process, the adequacy of representation and the administration of justice generally.

---

[3] BP does retain some degree of control of payments from the GCCF fund, as evidenced by recent media reports that the GCCF was ordered by BP to pay a $10 million business claim which had never been reviewed by the GCCF for merit. 91,000 Gulf Oil Spill Claims, Just 1 Final Payment, Times Picayune, Jan. 31, 2011, available at
http://www.nola.com/newsflash/index.ssf/story/91000-gulf-oil-spill-claims-just-1-final-payment/4fe693b a31fc4747afa8d5f39f84bb18 (last visited Feb. 2, 2011).

In re School Asbestos Litigation, 842 F.2d 671, 680 (3d Cir. 1988). This authority is consistent with the First Amendment, as are many other controls on statements about litigation. See, e.g., Kleiner v. First Nat'l Bank of Atlanta, 751 F.2d 1193, 1204-06 (11th Cir.1985); Hampton Hardware, Inc. v. Cotter & Co., 156 F.R.D. 630 (N.D. Tex. 1994) (prohibiting defendant's letters to putative class members regarding the litigation and possible financial costs to class members). In Kleiner, the Eleventh Circuit explained that:

> In general, an order limiting communications regarding ongoing litigation between a class and class opponents will satisfy First Amendment concerns if it is grounded in good cause and issued with a "heightened sensitivity" for First Amendment concerns. In ascertaining the existence of good cause, four criteria are determinative: the severity and likelihood of the perceived harm; the precision with which the order is drawn; the availability of a less onerous alternative; and the duration of the order.

Id. at 1205-06 (internal citations omitted). Furthermore, the Kleiner court noted that district courts are free to prohibit false or misleading speech by a defendant and may restrict a defendant from using methods of speech that are inherently coercive or prone to abuse. Id. at 1204 & 1206. BP attempts to distinguish this line of cases by the fact that in several cases there was an ongoing business relationship between the claimants and the defendant. In this case, OPA itself mandates that claimants must first present their claims to BP as the responsible party, thereby requiring ongoing contact between the parties.

Because the Court finds that the hybrid role of Mr. Feinberg and the GCCF has led to confusion and misunderstanding by claimants, especially those who are unrepresented by their own counsel, the Court finds that certain precautions should be taken to protect the interests of claimants–narrowly tailored in accordance with the First Amendment. Gulf Oil Co. v. Bernard, 452 U.S. 89, 101-02 (1981). The clear record in this case demonstrates that any claim of the GCCF's

neutrality and independence is misleading to putative class members and is a direct threat to this ongoing litigation, as claimants must sign a full release against all potential defendants before obtaining final payments. Compare In re School Asbestos Litigation, 842 F.2d at 683 (concluding that the district court was justified in imposing a disclosure requirement after finding that the communication was "misleading," and "may convince members of the plaintiff class to forego asbestos removal in their buildings"). For example, in this case Mr. Feinberg has been quoted on a number of occasions as publicly advising potential claimants that they do not need to hire a lawyer and will be much better off accepting what he offers rather than going to court. A full disclosure of the relationship between Mr. Feinberg, the GCCF, and BP will at least make transparent that it is BP's interests as the OPA responsible party that are being promoted.

The Court finds that not all of Plaintiffs' requested measures are appropriate or necessary, and will tailor a more narrowly focused remedy. The Court finds that the following precautions represent a narrowly-tailored approach, and that "an order any less restrictive would not effect the purposes of Rule 23." Hampton Hardware, 156 F.R.D. at 634. Further, the Court specifically finds that this will not unduly burden BP's, Mr. Feinberg's and the GCCF's ability to speak on their own behalf. "Communication can continue [with potential claimants], while the interests of putative class members in receiving independent information is protected." Turner v. Murphy Oil, No. 05-4206 at 8 (E.D. La. Nov. 14, 2005).

Accordingly, **IT IS ORDERED** that the Motion to Supervise Ex Parte Communications with Putative Class (Rec. Doc. 912) is **GRANTED IN PART**, as follows:

**IT IS ORDERED that Defendant BP, through its agents Ken Feinberg, Feinberg Rozen LLP, and the Gulf Coast Claims Facility, and any of their representatives, in any of their oral**

13

**or written communications[4] with claimants**, **shall:**

(1) Refrain from contacting directly any claimant that they know or reasonably should know is represented by counsel, whether or not said claimant has filed a lawsuit or formal claim;

(2) Refrain from referring to the GCCF, Ken Feinberg, or Feinberg Rozen, LLP (or their representatives), as "neutral" or completely "independent" from BP. It should be clearly disclosed in all communications, whether written or oral, that said parties are acting for and on behalf of BP in fulfilling its statutory obligations as the "responsible party" under the Oil Pollution Act of 1990.

(3) Begin any communication with a putative class member with the statement that the individual has a right to consult with an attorney of his/her own choosing prior to accepting any settlement or signing a release of legal rights.

(4) Refrain from giving or purporting to give legal advice to unrepresented claimants, including advising that claimants should not hire a lawyer.

(5) Fully disclose to claimants their options under OPA if they do not accept a final payment, including filing a claim in the pending MDL 2179 litigation.

(6) Advise claimants that the "pro bono" attorneys and "community representatives" retained to assist GCCF claimants are being compensated directly or indirectly by BP.

Further, in light of the Court's responsibility to ensure full compliance with the Oil Pollution Act of 1990, and to address various additional concerns that have been raised,

**IT IS FURTHER ORDERED** that the parties shall submit additional briefing on the

---

[4] Including but not limited to websites, telephone scripts, personal contacts, release documents, correspondence, etc.

question of whether and how BP as the responsible party is fully complying with the mandates of OPA, for example, in the processing of claims for "interim, short-term damages," or "final damages," methodologies for evaluation of claims, and the release forms required of claimants. Said briefing shall be filed not later than February 11, 2011.

    New Orleans, Louisiana, this 2nd day of February, 2011.

                                               **CARL J. BARBIER**
                                               **United States District Judge**