UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | : : : : | MDL NO. 2179 SECTION: J |
| THIS DOCUMENT RELATES TO: ALL CASES. | : : | JUDGE BARBIER MAG. JUDGE SHUSHAN |

## MEMORANDUM IN SUPPORT OF MOTION FOR REHEARING REGARDING FEBRUARY 2, 2011 ORDER RE PSC's "MOTION TO SUPERVISE *EX PARTE* COMMUNICATIONS BETWEEN BP DEFENDANTS AND PUTATIVE CLASS MEMBERS"

**NOW INTO COURT**, through undersigned counsel, come the Plaintiffs in the following cases, to submit this Motion For Rehearing:

1. Bill's Oyster-House, LLC *et al* (E.D. La., 10-cv-1308)
2. Howard Buras (M.D. La., 10-cv-369 and 10-cv-2994)
3. Armand's Bistro (W.D. La., 10-cv-1007 and 10-cv-4489)
4. Faye Loupe *et al.* (E.D. La., 10-cv-2764)
5. Laura Gautreaux (E.D. La., 10-cv-1539)
6. Brent Rodrigue, Sr *et al.* (E.D. La., 10-cv-1325)
7. Issadore Creppel (E.D. La., 10-cv-1346)

**1. Introduction**
**2. Facts**
**3. Law**
**4. Conclusion**

**1. Introduction:**

On December 21, 2010, the Plaintiffs Steering Committee filed a motion titled "Motion To Supervise Ex Parte Communications Between BP Defendants and Putative Class Members",

1

in which it asked this Court to regulate the conduct and actions of Kenneth Feinberg in his position as Administrator of the Gulf Coast Claims Facility. (Doc. 912)

On January 4, 2011, undersigned counsel file a Memorandum in Opposition to the PSC's Motion, and in the subsequent days counsel for several other Plaintiffs filed similar Memoranda in Opposition. (Doc. 948)

On January 10, undersigned counsel filed a Motion For Oral Argument regarding this matter (Doc. 969)

On January 28, this Court stated at a monthly status conference that it was taking the PSC's Motion under advisement without oral argument. (Minute Entry, Doc. 1083)

On February 2, this Court entered its "Orders and Reasons" regarding the PSC's Motion, granting it in part and denying it it part. (Doc. 1098)

Undersigned counsel respectfully suggests that this Court should have denied the PSC's Motion in its entirety and should rehear this matter.

## 2. Facts:

It is respectfully submitted that this Court was incorrect in the major issues in this matter, namely (1) whether Mr. Feinberg was chosen by President Obama to be the Administrator and (2) whether he is "independent".

The "Order and Reasons" states:

For example, Mr. Feinberg was appointed by BP* [footnote in original]…

*[original footnote:] It has been suggested by several non-PSC attorneys that Mr. Feinberg is a Presidential appointee and therefore a part of the Executive Branch. There is no evidence of such an appointment to support this contention. Apparently, Mr. Feinberg was initially selected by BP, with the approval of the White House, which then issued a Press Release announcing that an independent claims facility was being created, and would be run by Mr. Feinberg. This does not make Mr. Feinberg or the GCCF government agents. (Order and Reasons, p. 9)

2

In fact, however, and contrary to the court's assumption, President Obama announced on June 16, 2010, immediately after a meeting at the White House with BP officials, that he and BP "mutually agreed" that Mr. Feinberg would run the GCCF:

**The President:**

Good afternoon, everybody. I just concluded a constructive meeting with BP's chairman, Carl-Henric Svanberg, and I raised two issues at the meeting....

<u>Another important element is that this $20 billion fund will not be controlled by either BP or by the government. It will be put in an escrow account, administered by an impartial, independent third party....</u>

<u>We've mutually agreed that Ken Feinberg will run the independent claims process we're putting into place.</u>

(Transcript of June 16, 2010 "Statement by the President After Meeting with BP Executives;
Transcript is at:
http://www.whitehouse.gov/the-press-office/statement-president-after-meeting-with-bp-executives
Video of statement is at:
http://www.whitehouse.gov/photos-and-video/video/meeting-obligations-gulf-coast-20100616
(Transcript is attached as Exhibit "A")

The President's statements directly contradict the primary assumptions behind this Court's ruling. Again, as confirmed by the President's own statements: (1) the President DID choose Mr. Feinberg and (2) the President DID set up the claims process to ensure that Mr. Feinberg would be "independent". Indeed, in light of the President's previous relationship with Mr. Feinberg, if anything, it is likely that the President suggested Mr. Feinberg's appointment to BP – precisely the opposite of the Court's unsubstantiated assumption that Mr. Feinberg

3

"apparently" (Order and Reasons, p. 9) was chosen by BP.*

### 3. Law:

**A) The selection and control of Mr. Feinberg is not reviewable by the judicial branch.**

"The executive power shall be vested in a President of the United States of America." (*Article 2, United States Constitution*)

In reviewing this clause in the first judicial challenge to the powers of the President,

Justice Marshall stated in *Marbury v Madison*:

> By the constitution of the United States, the President is invested with certain important political powers, in the exercise of which he is to use his own discretion, and is accountable only to his country in his political character and to his own conscience. To aid him in the performance of these duties, he is authorized to appoint certain officers, who act by his authority, and in conformity with his orders.
>
> In such cases, their acts are his acts; and whatever opinion may be entertained of the manner in which executive discretion may be used, still there exists, and can exist, no power to control that discretion. The subjects are political. They respect the nation, not individual rights, and being intrusted to the executive, the decision of the executive is conclusive. The application of this remark will be perceived by adverting to the act of congress for establishing the department of foreign affairs. This officer, as his duties were prescribed by that act, is to conform precisely to the will of the President. He is the mere organ by whom that will is communicated. The acts of such an officer, as an officer, can never be examinable by the courts.

---

*There is nothing whatsoever in the record indicating any relationship whatsoever between BP and Mr. Feinberg prior to his appointment. However, the President and Mr. Feinberg had worked together before and already knew each other. The President had previously appointed Mr. Feinberg for other work for the White House. On June 10, 2009, the President had appointed Mr. Feinberg, who worked *pro bono*, as "Compensation Czar", to study the salaries of executives of the nation's largest companies that had received federal assistance after the financial crisis in the fall of 2008. (See "Treasury To Set Executives' Pay at 7 Ailing Firms", New York Times, June 10, 2009, at:
http://www.nytimes.com/2009/06/11/business/11pay.html?_r=1&scp=1&sq=feinberg%20june%202009&st=cse
(Exhibit "B")

4

> But when the legislature proceeds to impose on that officer other duties; when he is directed peremptorily to perform certain acts; when the rights of individuals are dependent on the performance of those acts; he is so far the officer of the law; is amenable to the laws for his conduct; and cannot at his discretion sport away the vested rights of others.
>
> The conclusion from this reasoning is, that where the heads of departments are the political or confidential agents of the executive, merely to execute the will of the President, or rather to act in cases in which the executive possesses a constitutional or legal discretion, nothing can be more perfectly clear than that their acts are only politically examinable. But where a specific duty is assigned by law, and individual rights depend upon the performance of that duty, it seems equally clear that the individual who considers himself injured, has a right to resort to the laws of his country for a remedy.
>
> It is not by the office of the person to whom the writ is directed, but the nature of the thing to be done, that the propriety or impropriety of issuing a mandamus is to be determined. Where the head of a department acts in a case, in which executive discretion is to be exercised; in which he is the mere organ of executive will; it is again repeated, that any application to a court to control, in any respect, his conduct would be rejected without hesitation.
>
> But where he is directed by law to do a certain act affecting the absolute rights of individuals, in the performance of which he is not placed under the particular direction of the President, and the performance of which the President cannot lawfully forbid, and therefore is never presumed to have forbidden; as for example, to record a commission, or a patent for land, which has received all the legal solemnities; or to give a copy of such record; in such cases, it is not perceived on what ground the courts of the country are further excused from the duty of giving judgment that right be done to an injured individual, than if the same services were to be performed by a person not the head of a department.
>
> *Marbury v Madison*, 5 U.S. (1 Cranch) 137, 154, 2 L.Ed 60 (1803), (as quoted in *National Treasury Employees Union v Nixon*, 492 F.2d 588, at 590-91 (D.C. Cir., 1974); emphasis added

No "ministerial" act, as discussed in *Marbury* or any of its uninterrupted line of authority since 1803, is involved in this matter and the PSC has alleged none.

The President's choice of Mr. Feinberg to administer the GCCF is analogous to Presidential appointments as discussed in *Marbury*. Mr. Feinberg, as an appointee of the President, stands in the shoes of the President, and "in such cases, their [Mr. Feinberg's] acts are his [the President's] acts; and whatever opinion may be entertained of the manner in which

5

executive discretion may be used, still there exists, and can exist, no power to control that discretion". (*Marbury*, at 154, and quoted in *NTEU* at 590.)

### B) The "political question" doctrine prohibits the Court's interference with a process established by the Executive branch of the government.

It is well established that the federal court will not adjudicate questions that fall within the purview of the political question doctrine. See *Baker v. Carr*, 369 U.S. 186, at 210; 82 S.Ct. 691, at 706; 7 L.Ed2d 663, at 682 (1962).

Like standing, mootness and ripeness, the political question doctrine is a justiciability limitation with it jurisprudential roots dating back to the 18th century. See, e.g., *Hayburns's Case*, 2 U.S. 408 (2 Dall.), at 410; 1 L.Ed 436 (1792) (invalidating a statute authorizing the executive branch to accept or reject federal court determinations of pension eligibility for Revolutionary War veterans); *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, at 17; 2 L.Ed 60 (1803) ("Questions, in their nature political, or which are, by the constitution and laws, submitted to the executive, can never be made in this court")

The political question doctrine resists judicial review that might interfere with other branches of the federal government. (See *McIntyre v Fallahay*, 766 F.2d 1078, 1081 (7th Cir. 1985).

Here, Mr. Feinberg was appointed by the President. Any interference with the process established by the Executive branch is prohibited by the political question doctrine.

## 4. Conclusion:

First, Mr. Feinberg is an appointee of the President. Second, the President, as he expressly stated himself, organized the claims process to assure that Mr. Feinberg be "independent". As such, it is respectfully submitted, Mr. Feinberg's actions are beyond the constitutional powers of the judiciary to control or regulate.

Accordingly, it is respectfully requested that this Court grant a rehearing of the PSC's "Motion to Supervise *Ex Parte* Communications Between BP Defendants and Putative Class Members" and after being reheard, that the PSC's Motion be denied in full.

Respectfully submitted,

this __4th__ day of __February__, 2011.

__/s/    Daniel E. Becnel, Jr.__
DANIEL E. BECNEL, JR. (#2926)
CHRISTOPHER D. BECNEL (#30859)
DARRYL J. BECNEL (#22943)
TONI S. BECNEL (#23645)
SALVADORE CHRISTINA, JR. (#27198)
MATTHEW B. MORELAND (#24567)
WILLIAM A. PERCY III (#01532)
**BECNEL LAW FIRM, LLC**
P. O. Drawer H
106 West Seventh Street
Reserve, Louisiana 70084
Telephone: (985) 536-1186
Facsimile: (985) 536-6445
E-mail: dbecnel@becnellaw.com
**Attorneys for Plaintiffs Bill's Oyster House, LLC; Howard Buras, Armand's Bistro, Faye Loup et al.; Laura Gautreaux, Brent Rodrigue, Sr., et al.; and Issadore Creppel**

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that the above and foregoing Memorandum will be served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing will be electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this __4th__ day of __February__, 2011.

/s/   *Daniel E. Becnel, Jr.*