UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In re: DEEPWATER HORIZON                    * CIVIL ACTION
                                            *
                                            * NO. 10-CV-1156
                                            * C/W 10-CV-1196
                                            *
                                            * SECTION "J"
                                            *
                                            * DIVISION "1"
                                            *
                                            *
                                            *
                                            *
                                            *JUDGE CARL J. BARBIER
                                            *MAGISTRATE SHUSHAN
                                            *
                                            *Applies to 10-CV-1630

* * * *  * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *


## AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs Gulf Restoration Network, Inc. and Sierra Club, Inc. bring this suit against the United States Department of the Interior, *et al.,* challenging the approval of British Petroleum's 2009 Gulf of Mexico Regional Oil Spill Response Plan which grossly exaggerates that company's oil spill response and recovery capabilities in the event of a major blow-out during the drilling of a deep water exploration well.


## JURISDICTION AND VENUE

1.      This court has federal question jurisdiction over this action under 28 U.S.C. § 1331.



2.      Venue of this action is proper in this court under 28 U.S.C. § 1391(e), in that the action that is the subject of the case (the approval of British Petroleum's 2009 Gulf of Mexico Regional Oil Spill Response Plan) occurred in the Mineral Management Services's ("MMS's") Gulf of Mexico Outer Continental Shelf Regional Office located in New Orleans, Louisiana.

## PARTIES

3.      Plaintiff Gulf Restoration Network ("GRN") is a network including commercial and recreational fishermen, environmental and fishing groups, and other citizens' groups and individuals committed to restoring the Gulf of Mexico to an ecologically and biologically sustainable condition.  GRN's members live in the five Gulf States of Texas, Louisiana, Mississippi, Alabama and Florida, and nationwide, and include residents who live along the Louisiana coastline.

4.      Members of GRN use the waters of the Gulf of Mexico in those states for commercial fishing, for recreation including recreational fishing, for shellfish harvesting both commercially and recreationally, and for traditional purposes such as swimming and wildlife observation, and intend to continue using those waters for those purposes in the future.

5.      Sierra Club is a non-for-profit organization dedicated to the protection and preservation of the environment and our natural resources.  Sierra Club is one of the oldest and largest conservation groups in the country, with over 700,000 members nationally in sixty-four chapters in all of the 50 states, the District of Columbia and Puerto Rico.  Approximately 3,000 members of the Sierra Club are residents of Louisiana.  Sierra Club brings this action for itself and as representative of its members in the State of Louisiana.

6.      Members of the Louisiana Chapter of the Sierra Club use the waters of the Gulf of Mexico for recreational fishing, for recreational shellfish harvesting, and for traditional purposes

such as swimming and wildlife observation, and intend to continue using those waters for those purposes in the future.

7.      The members of the Gulf Restoration Network and the Sierra Club are irreparably injured by MMS's arbitrary and capricious approval of a regional oil spill response plan that grossly exaggerates the oil spill recovery capacity of British Petroleum ("BP") in the event of an uncontrolled deep-water blowout.

8.      The members of the Gulf Restoration Network and the Sierra Club are currently injured by the British Petroleum/Deepwater Horizon oil spill which threatens their uses of the Louisiana coastline and Gulf of Mexico waters as described in paragraphs 4 and 6.  The Plaintiffs' use of the Louisiana coastline and Gulf of Mexico waters will be at further risk if MMS continues to rely upon a Regional Oil Spill Response Plan that grossly exaggerates BP's ability to respond to an uncontrolled blowout, which occurs during the drilling of a deep-water exploration well.

9.      Defendant United States Department of the Interior oversees all oil drilling in federal waters on the Outer Continental Shelf of the United States.

10.     Defendant Ken Salazar is the Secretary of the United States Department of the Interior and is being sued in his official capacity.

11.     Defendant Bob Abbey is the Acting Director of the Minerals Management Service, Department of the Interior, which has been delegated authority to regulate offshore drilling on the Outer Continental Shelf including regulation of oil spill response plans.  Mr. Abbey is being sued in his official capacity.

12.     Defendant Lars Herbst is the Regional Director of MMS's Gulf of Mexico OCS Region with offices located in New Orleans, Louisiana.  The Regional Office is delegated the

authority to review and approve regional oil spill response plans.  Mr. Herbst is being sued in his official capacity.

## STATUTORY AND REGULATORY BACKGROUND

13.     Under the Oil Pollution Act of 1990 ("OPA 90"), enacted after the *Exxon-Valdez* spill, federal offshore lessees must have approved oil spill response plans in place before the Department of Interior's Minerals Management Service may approve their Exploratory Plans and issue drilling permits.  The purpose of the Act was to strengthen provisions concerning oil spill prevention efforts and oil-spill response capabilities.

14.     OPA 90 directs the President, who has delegated his authority to the Secretary of Interior, to issue regulations requiring owners and operators of offshore oil facilities to prepare and submit plans "for responding, to the maximum extent practicable, to a worst case discharge, and to a substantial threat of such a discharge, of oil or a hazardous substance."  33 U.S.C. § 1321(j)(5)(A).

15.     A response plan required under OPA 90 "shall . . . identify, and ensure by contract or other means approved by the President the availability of, private personnel and equipment necessary to remove to the maximum extent practicable a worst case discharge (including a discharge resulting from fire or explosion), and to mitigate or prevent a substantial threat of such a discharge."  33 U.S.C. § 1321(j)(5)(C)(iii).

16.     Under Executive Order 12777, the Secretary of Interior is charged with reviewing oil spill response plans, requiring amendments to meet the requirements of OPA 90, and approving only those plans that comply with OPA 90.  33 U.S.C. § 1321(j)(5)(D).

17.     The Mineral Management Service finalized rules implementing OPA 90's requirements on June 23, 1997.  *See* 30 C.F.R. Part 254.

18.     Under those rules, a lessee can submit an oil spill response plan for a particular operation, but more commonly the lessees prepare a regional plan that covers multiple operations (such as operation of production wells and operation of exploratory wells) in the area.  30 C.F.R. § 254.3.

19.     Oil spill response plans for actitivies on the Outer Continental Shelf in the Gulf of Mexico are submitted to the Mineral Management Services's Gulf of Mexico OCS Regional Office located in New Orleans, Louisiana for approval.  30 C.F.R § 254.7(b).

20.     Regional oil spill response plans must include a description of a "worst-case discharge scenario," which assumes an uncontrolled blowout lasting 30 days.  30 C.F.R. § 254.26.

21.     A lessee must calculate the volume of the "worst-case discharge" and then provide a description of the response equipment that will be used to contain and recover the discharge "to the maximum extent practicable."  30 C.F.R. § 254.26(a)&(d).  "Maximum extent practicable" means "within the limitations of available technology, as well as the physical limitations of personnel, when responding to a worst case discharge in adverse weather conditions."  30 C.F.R. § 254.6.

22.     The lessee must also calculate "effective daily recovery capacities" of the response equipment that will be used to recover the oil.  30 C.F.R. § 254.26(d)(1).

23.     The sum of the listed response equipment's daily "effective daily recovery capacity" consitutes the total amount of oil that the lessee projects it can recover from an uncontrolled blowout.

**BRITISH PETROLEUM'S 2009 GULF OF MEXICO
REGIONAL OIL SPILL RESPONSE PLAN**

24.     BP's 2009 Gulf of Mexico Regional Oil Spill plan was approved by MMS's Gulf of Mexico OCS Regional Office on July 21, 2009.  Exhibit A (Excerpts of 2009 Regional Plan).

25.     The Regional Plan includes three worst case discharge scenarios: a) for a pipeline that is within 10 miles of shoreline; b) for its Thunder Horse operations which involve drilling and production of oil on Mississippi Canyon Lease 778; and c) for exploratory drilling rig operations in the Mississippi Canyon 462 lease.  Exhibit A (Regional Plan, App. H).

26.     The exploratory drilling rig scenario is for drilling in deep water 33 miles from the Louisiana shoreline.

27.     Based on the anticipated size and productivity of the oil reservoir it was exploring for, BP estimated that the "highest capacity well uncontrolled blowout volume associated with [the] exploration well" would be 250,000 barrels of oil per day.  Exhibit A (Regional Plan, App. H. at p. 30 of 45 pages).

28.     BP represented that the response equipment it listed in its plan would have the capability of recovering, under adverse weather conditions, 491,721 barrels of oil per day.  Exhibit A (Regional Plan, App. H. at p. 32 of 45 pages).

29.     BP also claimed that it could disperse approximately 5500 to 7600 barrels of oil per day using chemical dispersants based on an assumption that the dispersants would be 90% effective.  Exhibit A (Regional Plan, App. H. at p. 32 of 45 pages).

## FACTS KNOWN BY MMS AT THE TIME OF APPROVAL

30.     MMS's Gulf of Mexico OCS Regional Office approved BP's 2009 Gulf of Mexico Regional Plan on July 21, 2009.

31.     At the time the Regional Plan was approved, MMS was involved, and continues to be involved, in a Technology Assessment and Research (TA&R) Project on mechanical containment and recovery of oil spills.[1]  Exhibit B (Printout from MMS website).

32.     As a result of its research project, the following facts were known to MMS at the time the Regional Plan was approved.

33.     Deep water drilling, which is defined as drilling in waters deeper than 300 meters, had increased dramatically by the late 1990's.

34.     As the oil industry advanced into deep water exploration, the risks of a blowout increased due to difficulties related to kick detection and control procedures under deep water conditions.

35.     There was very little blowout experience in deep water for MMS to draw from when evaluating countermeasures that could be used to deal with oil discharges resulting from deep water uncontrolled blowouts.

36.     Containment and recovery of oil at sea (where deep water drilling is located) is at best minimal and at worst negligible:

> Overall, containment and recovery operations at sea require extensive logistical support. In rough seas, a large spill of low viscosity oil such as a light or medium crude oil can be scattered over many square kilometers within just a few hours. Oil recovery systems typically have a swath width of only a few meters and move at slow speeds (1 knot) while recovering oil. Thus, even if response personnel can be operational within a few hours, it will not be feasible for them to encounter more than a fraction of a widely dispersed slick. *This is the main reason why containment and recovery at sea rarely results in the removal of more than a relatively small proportion of a large spill, at best only 10 - 15% of the spilled oil and often considerably less.*

Exhibit B, p. 2 (emphasis added).

---

[1]  *See* http://www.mms.gov/tarprojectcategories/mechanic.htm

37.    Historically, the application of dispersants is effective on only 33 percent of the oil that is treated.

## IRREPARABLE INJURY

38.    Between 1960 and 1996 there were at least 150 blowouts on the Outer Continental Shelf of the Gulf of Mexico.

39.    Offshore oil well blowouts on the Outer Continental Shelf have recurred at a general rate of about 6 blowouts per thousand wells for the past 50 years.

40.    Over that course of time the frequency of blowouts per foot drilled have remained at a fairly stable rate, even though blowout prevention procedures have changed dramatically and procedures have been substantially altered.

41.    Exploratory drilling in deep water presents unique dangers, and historically, most blowouts have occurred during the drilling of exploratory wells.

42.    On April 20, 2010, a BP exploratory well being drilled by the Deepwater Horizon suffered an uncontrolled blowout about 45 miles off the coast of Louisiana in 5,000 feet of water. The uncontrolled blowout is discharging oil at an estimated rate of 12,000 to 19,000 barrels per day, and it appears likely that this discharge will continue until a relief well is drilled three or more months from now.

43.    There are at least five current BP Exploration Plans which rely upon BP's 2009 Gulf of Mexico Regional Oil Spill Response Plan in order to fulfill the regulatory requirements of 30 C.F.R. § 250.219(a)(2): [2] a) N-09475, Green Canyon Area Blocks 825, 826, 869, 870; b) S-

---

[2] Exploration Plans are developed after an area is leased but prior to approval of permits for exploratory drilling.  *See* 30 C.F.R. Part 250.  An Exploration Plan must include an oil spill response plan, however, MMS rules allow the Exploration Plan to simply reference the Regional Oil Spill Response Plan to fulfill its regulatory requirements.  30 C.F.R. § 250.219(a)(2).

07416, Supplemental Exploration Plan, Mississippi Canyon Area Block 252; c) S-07380,

Supplemental Exploration Plan, Green Canyon Area Blocks 700, 744; d) S-07364, Supplemental

Exploration Plan, Keathly Canyon Area Block 292; and e) N-09510, Initial Exploration Plan,

Green Canyon Area Blocks 782, 738.

44.     Approvals to drill new wells have been granted on Exploration Plans N-09475

and S-07416.

## COUNT I

45.     Paragraphs 1 through 44 are incorporated by reference.

46.     This court has the power to hold unlawful and set aside agency actions which are

found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the

law.  5 U.S.C. § 706 (Administrative Procedures Act).

47.     At the time of the approval, MMS knew that oil containment and recovery at sea

(which was where the exploratory drilling worst case discharge scenario was projected to occur)

was at best 10-15% of the spilled oil and at worst "considerably less."

48.     Nevertheless, it approved an oil spill response plan in which BP represented that it

could recover *197%* of the daily discharge from an uncontrolled blowout of 250,000 barrels per

day.

49.     At the time of approval, MMS knew that chemical dispersants were only 33%

effective, yet it approved an oil spill response plan that assumed a 90% effectiveness rate.

Given these facts, MMS's approval of BP's 2009 Gulf of Mexico Regional Oil Spill Response

Plan was patently arbitrary and capricious.

## COUNT II

50.     Paragraphs 1 through 49 are incorporated by reference.

51.     The Oil Spill Response Plan  does not "identify, and ensure by contract or other means approved by the President the availability of, private personnel and equipment necessary to remove to the maximum extent practicable a worst case discharge (including a discharge resulting from fire or explosion)."

52.      This court has the power to set aside agency actions which are found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.  5 U.S.C. § 706 (Administrative Procedures Act).

## COUNT III

53.     Paragraphs 1 through 52 are incorporated by reference.

54.     The Oil Spill Response Plan does not "mitigate or prevent a substantial threat of such a discharge."  33 U.S.C. § 1321(j)(5)(C)(iii).

55.     This court has the power to set aside agency actions which are found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.  5 U.S.C. § 706 (Administrative Procedures Act).

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiffs pray that this court:

1) Declare unlawful and set aside BP's 2009 Gulf of Mexico Regional Oil Spill Response Plan;

2)  Enjoin MMS from relying upon BP's 2009 Gulf of Mexico Regional Oil Spill Response Plan in approving future BP Exploration Plans or future drilling permit applications related to those Plans;

3)  Award the Plaintiffs attorneys' fees and costs; and,

4)  Grant such other and further relief as the court deems just and proper.

_____/S/_____

Alisa A. Coe
La. Bar No. 27999
David G. Guest
Fla. Bar No. 0267228
Monica K. Reimer
Fla. Bar No. 0090066
Earthjustice
P.O. Box 1329
Tallahassee, FL  32302-1329
Phone:  (850) 681-0031
Facsimile: (850) 681-0031
acoe@earthjustice.org

*COUNSEL FOR PLAINTIFFS*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing was filed with the Clerk of Court using CM/ECF on this 30th day of July, 2010. I also certify that the foregoing document is being served on this day to the following Service List in the manner specified.


STACEY BOSSHARDT, Trial Attorney
United States Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663
(202) 514-2912/(fax)(202) 305-0506
US MAIL


                                      s/Alisa Coe
                                      Attorney