UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG | : | MDL NO. 2179 |
| "DEEPWATER HORIZON" in the | : | |
| GULF OF MEXICO, on | : | SECTION:  J |
| APRIL 20, 2010 | : | |
| | : | JUDGE BARBIER |
| **THIS DOCUMENT RELATES TO 10-4185** | : | MAG. JUDGE SHUSHAN |

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## CAMERON INTERNATIONAL CORPORATION'S
## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Defendant Cameron International Corporation ("Cameron") respectfully submits this memorandum in support of its motion to dismiss the claims of the City of Greenville, City of Evergreen, City of Georgiana, and Town of McKenzie ("the Alabama Municipalities").

## SUMMARY OF ARGUMENT

1.      This case is governed by two federal statutes:  the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C.A. §§ 1331-56a, and the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C.A. §§ 2701-20.  Taken together, those statutes dictate that the Alabama Municipalities may pursue their claims only against parties designated by OPA to be "responsible parties"—and it is beyond dispute that Cameron is not such a statutorily designated "responsible party."

1046172v.1

OCSLA establishes that "the subsoil and seabed of the outer Continental Shelf and . . . all artificial islands, and all installations and other devices permanently or temporarily attached to the seabed, which may be erected thereon for the purpose of exploring for, developing, or producing resources therefrom" are "area[s] of exclusive Federal jurisdiction." 43 U.S.C. § 1333(a)(1). This means that state law as such does not extend to these outer continental shelf lands, islands, and installations, including the *Deepwater Horizon* mobile offshore drilling unit, the Macondo well, and all the appurtenant devices that lie at the heart of this case. Under OCSLA, the law of the adjacent state, here Louisiana, is adopted "as the law of the United States" applicable to oil drilling in the seabed, but only to the extent that this adjacent-state law is "applicable and not inconsistent" with other federal law. *Id*. § 1333(a)(2)(A).

In turn, OPA constructs a comprehensive statutory scheme for the assignment of responsibility and payment of compensation for specified injuries that result from the discharge of oil from, *inter alia*, an outer continental shelf facility like the *Deepwater Horizon* and the Macondo well. 33 U.S.C. §§ 2701(22), (25), (32)(C) and 2702(a), (b). Fundamentally, therefore, OCSLA makes OPA the federal law governing the Alabama Municipalities' claims.

The OPA statutory scheme revolves around the designation of "responsible parties" who are made liable for removal costs and damages of the kind claimed by Alabama here. *Id.* § 2702(b)(A), (B), (D), (F). Cameron, however, is not a responsible party liable under OPA. *See* B1 Master Complaint [Doc 1128] ¶¶ 678-90.

OPA mandates that "all claims . . . shall be presented first to the responsible party" (or, alternatively, to the Oil Spill Liability Trust Fund ("Fund") established pursuant to 26 U.S.C. § 9509). 33 U.S.C. §§ 2713(a) and 2701(11) (definition of "Fund"). If a claim is either denied or not paid within 90 days, the claimant may sue "the responsible party." *Id* § 2713(c). If

that suit does not result in full recovery, the claimant may present a claim for the amount of its uncompensated damages to the Fund.  *Id*. § 2713(d).  OPA does not authorize claimants to sue persons other than statutory responsible parties or designated guarantors.  Instead, when either a responsible party or the Fund pays compensation to a claimant, that payor becomes subrogated to "all" causes of action "that the claimant has under any other law." *Id.* § 2715(a).  Similarly, when a responsible party is held liable under OPA, the responsible party may seek contribution against third parties who may be liable "under another law."  *Id.* § 2709.

OPA thereby prescribes a streamlined remedial process pursuant to which claimants who demonstrate actual harm may recover specified removal costs and damages from statutory responsible parties (or the Fund) without proving fault, with ultimate financial responsibility to be determined later in separate litigation brought by the responsible parties (or the Fund) against any third parties who may have caused the harmful discharge of oil and thus may themselves be liable under other law – in this OCSLA case, law borrowed from the adjacent state – for part or all of the resulting damages.

These two federal statutes cover the waterfront:  OPA establishes the rules governing the liability of statutory responsible parties; the law of the adjacent state, adopted as federal law under OCSLA, establishes the rules governing liability of third parties who are not designated as responsible parties under OPA; and OPA prescribes the overall remedial process governing the handling of claims against both responsible parties and third parties.

2.     The Alabama Municipalities' claims against Cameron do not survive these provisions of OCSLA and OPA.  Those claims fall into two distinct categories.  The first two counts of the complaint, sounding in negligence and negligence per se, invoke essentially

3

common law theories of liability.   The third count of the complaint invokes the liability provisions of OPA.  Neither the common law counts nor the OPA count assert viable claims.

      a.    The Alabama Municipalities' two common law counts fail for each of three completely independent reasons under the law of Louisiana, the "adjacent state" whose law is to be borrowed here as surrogate federal law under OCSLA, and under OPA.

      i.    The Alabama Municipalities have not asserted a viable claim under Louisiana products law.  The first two counts of the complaint address Cameron's role as manufacturer of the allegedly defective *Deepwater Horizon* blowout preventer.  But Louisiana law does not recognize the asserted negligence theories of liability in suits, like this one, alleging product defects.  The Louisiana Products Liability Act, LA. REV. STAT. § 2800.52, "establishes the exclusive theories of liability for manufacturers for damage caused by their products," and plaintiffs failed to allege any of the statutorily exclusive theories of liability.

      ii.    The Alabama Municipalities' claims are also foreclosed by the "economic loss" rule.  The Alabama Municipalities do not allege any damage to physical property that they own, but seek to recover purely economic losses.  Under Louisiana law, the Alabama Municipalities may not recover any of these losses from Cameron.  *Phillips v. G&H Seed Co.*, 10 So.3d 339 (La. App. 3 Cir. 2009), *writ denied*, 21 So.3d 284 (2009).

      The Alabama Municipalities may not invoke any other source of law to support their common law claims.  OCSLA requires the application of federal law exclusively; the law of the adjacent state, and only of that state, may be borrowed in limited circumstances as surrogate federal law to fill gaps in federal statutory law.  *Rodrigue v. Aetna Casualty and Surety Co.*, 395 U.S. 352, 355-59 (1969).  Thus, the Alabama Municipalities cannot rely on state law as such.

Nor is federal common law or general maritime law available here.  *Chevron Oil Co. v. Huson*, 404 U.S. 97, 104-05 (1971).

     iii.  Although Louisiana law governs third parties' potential liability with respect to the *Deepwater Horizon* spill, OPA prescribes the remedial process governing the claims arising from that spill.  OPA does not authorize claimants to pursue litigation against ***both*** statutory responsible parties ***and*** third parties, and effectively assigns the claimants' causes of action under any other law for pursuit by responsible parties or the Fund.  The Alabama Municipalities' direct pursuit of their common law claims against Cameron, even if viable under Louisiana law, is "inconsistent with" the OPA remedial scheme.  Under OCSLA, therefore, those claims may not be pursued by the Alabama Municipalities.  43 U.S.C. § 1333(a)(2).

     b.  The third count of the Alabama Municipalities' complaint, which attempts to assert a cause of action against Cameron under OPA, has no basis in law.  To repeat, Cameron is not a "responsible party" under OPA, and the statute provides no direct right of action against a third party, like Cameron, who is not designated as an OPA "responsible party."

## ARGUMENT

     The claims of the Alabama Municipalities against Cameron fall into two distinct categories.  The first two counts of the complaint sound in negligence, and negligence per se, respectively, and thus seek to invoke essentially common law theories of liability.  The third count of the complaint invokes a federal theory of liability under OPA.  These two distinct categories of claims raise distinctly different legal issues.

**A.  The Common Law Counts Are Pre-Empted by OCSLA and OPA**

     The Alabama Municipalities' two negligence counts fail for three completely independent reasons.  First, they fail under the Louisiana product liability statute.  Second, and

independently, they fail under the "economic loss" rule governing product liability actions. Third, the plaintiffs' direct pursuit of those purported negligence causes of action against Cameron is "inconsistent with" the remedial scheme of OPA, and is therefore pre-empted by the terms of OCSLA in any event.

> *1. Under OCSLA, Cameron's Potential Liability Is Governed by Louisiana Substantive Law, Which Does Not Recognize Alabama's Common Law Claims*

> a. Cameron's Potential Liability Is Governed by Louisiana Law

OCSLA determines the body of law applicable in this case. OCSLA declares that "the subsoil and seabed of the outer Continental Shelf appertain to the United States and are subject to its jurisdiction, control and power of disposition as provided [herein]." 43 U.S.C. § 1332(1), quoted as originally enacted in *Rodrigue*, 395 U.S. at 356 & n.2. The "outer" continental shelf was (and still is) defined generally as the continental shelf lying seaward of the coastal states' three-mile marginal belt. 43 U.S.C. § 1331(a).

When OCSLA was amended in 1978, a central purpose remained "to define a body of law applicable to the subsoil and seabed" of the outer continental shelf. *Cf. Rodrigue*, 395 U.S. at 355. Following the 1978 amendments, the key provisions of OCSLA read as follows:

> (1)     The Constitution and laws and civil and political jurisdiction of the United States are extended to the subsoil and seabed of the outer Continental Shelf and to all artificial islands, and all installations and other devices permanently or temporarily attached to the seabed, which may be erected thereon for the purpose of exploring for, developing or producing resources therefrom, . . . to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a state.

> (2) To the extent that they are applicable and not inconsistent with this subchapter or with other Federal laws and regulations of the Secretary [of Interior] now in effect or hereafter adopted, the civil and criminal laws of each adjacent State . . . are declared to be the law of the United States for that

portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf, . . .

43 U.S.C. § 1333(a).  In other words, "federal law is 'exclusive' in its regulation of [oil development on the outer continental shelf], and . . . state law is adopted only as surrogate federal law." *Rodrigue*, 395 U.S. at 357.  And state law is adopted as "surrogate federal law" only to the extent it is "applicable and not inconsistent" with federal law.  43 U.S.C. § 1333(a); *Gulf Offshore*, 453 U.S. at 480.

The oil development project at the heart of this case, as this Court already has decided, is subject to federal jurisdiction by reason of OCSLA.  *See* Document # 470 (order denying State of Louisiana motion to remand).   The Alabama Municipalities' complaint confirms this.  The complaint is based on an oil spill from a "well located on the Macondo Prospect Mississippi Canyon 252 ('MC252' or the 'Oil Well') approximately 100 miles from the Alabama coast" and "approximately 5,000 feet below the sea floor.  Complaint ¶ 2.  The oil spill "resulted from" an "explosion" that "occurred during the course of cementing work being performed to create a cement seal to plug the Oil Well as part of the final phases of converting the Oil Well into a production well."  Complaint ¶¶ 2, 25.  The development operations leading to the explosion had permitted the release of "highly flammable" hydrocarbons from the subsoil, and the resulting discharge of oil originated at the wellhead on the seabed.  Complaint ¶¶ 22, 23, 33.b., c.

These allegations make manifest that this case falls within exclusive federal jurisdiction under OCSLA.  The Macondo oil well was being drilled on the outer continental shelf outside the jurisdiction of any state.  The explosion and oil discharge occurred in the course

7

of development operations of the kind specifically identified in OCSLA, i.e., "activities which take place following discovery of minerals in paying quantities, including . . . drilling . . . and which are for the purpose of ultimately producing the minerals discovered." 43 U.S.C. § 1331(l). The discharge emanated from "the subsoil and seabed of the outer Continental Shelf" and resulted from operations conducted on or in connection with "installations and other devices attached to the seabed" that were "erected thereon for the purpose of . . . developing resources . . . therefrom," all as described in OCSLA. *Id*. § 1333(a)(1). In short, this is precisely the factual situation that OCSLA's regime of exclusively federal law was designed to cover.

As noted, OCSLA provides that the law of the adjacent state may be borrowed as surrogate federal law to the extent that it is "applicable and not inconsistent" with other federal law. 43 U.S.C. § 1333(a)(2). The Court may take judicial notice from the NOAA map attached as Exhibit 1 that the Macondo well "would be within the area of [Louisiana] if its boundaries were extended seaward to the outer margin of the outer Continental Shelf." *Id*.; *see also* B1 Master Complaint [Doc. 1128] ¶ 272 ("48 miles off the coast of Louisiana). Accordingly, Louisiana is the adjacent state whose law is adopted as federal law in this case.

> b. Louisiana Law Does Not Recognize The Alabama Municipalities' Common Law Theories of Liability

The Alabama Municipalities' two common law counts seek to impose liability on Cameron in its capacity as manufacturer of the allegedly defective *Deepwater Horizon* blowout preventer. Complaint ¶ 15. But Louisiana law does not subject product manufacturers to liability on the grounds Plaintiffs have chosen to assert. The Louisiana Products Liability Act provides that "[t]his Chapter establishes *the exclusive theories of liability for manufacturers* for damage caused by their products." LA. REV. STAT. § 2800.52 (emphasis added). The Act further

enjoins that "[a] claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in this Chapter." *Id.* The Act does not set forth any theory of liability sounding in negligence, trespass, public nuisance, or private nuisance, the theories advanced here by Alabama. Under applicable Louisiana law, therefore, Alabama "may not recover from" Cameron under any of the first two counts in its complaint. Those counts simply do not state claims under which relief may be granted.

Moreover, even if the Alabama Municipalities had asserted a theory of liability recognized by Louisiana law, the complaint still fails to set forth factual allegations warranting relief under the Louisiana Act. The Alabama Municipalities allege nothing more than a product "defect." Complaint ¶ 18.p. This vague allegation is predicated on the claim that Cameron's blowout preventer "failed to activate ***at the time of the explosion***." *Id.* (emphasis added). Under the Louisiana Act, a product defect is generally actionable only if it existed "***at the time the product left its manufacturer's control***." LA. REV. STAT. §§ 2800.55, 2800.56 (emphasis added). Because Plaintiffs make no attempt to allege, even in conclusory fashion, that the blowout preventer was defective when it left Cameron's control (which took place some ten years before the *Deepwater Horizon* explosion and spill), the complaint plainly fails to state a viable claim against Cameron under the Louisiana Act.

c. The Alabama Municipalities May Not Recover in the Absence of Damage to Owned Property

Under the "economic loss" rule of longstanding tort law, liability for the economic consequences of an accident extends only to those who suffer bodily injury or who own property physically damaged as a proximate result of the accident. *See Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 308 (1927) (Holmes, J.). The Fifth Circuit, sitting en banc,

9

has adhered to the rule as a matter of maritime tort law.  "We are asked to abandon physical damage to a proprietary interest as a prerequisite to recovery for economic loss in cases of unintentional maritime tort.  We decline the invitation." *State of Louisiana v. M/V Testbank*, 752 F.2d 1019, 1020 (5th Cir. 1986) (en banc).  Both the Fifth Circuit and other Circuits have explained the many reasons for adherence to the rule.  *See id.* at 1028-29; *Barber Lines A/S v. M/V Donau Maru*, 764 F.2d 50, 53-55 (1st Cir. 1985) (Breyer, J.).

As the Fifth Circuit observed in *Testbank*, courts applying the tort law of "Louisiana have consistently denied recovery for economic losses" in tort actions "where there was no physical damage to a proprietary interest." *Testbank*, 752 F.2d at 1027.  In the leading case, the Supreme Court of Louisiana denied recovery to the plaintiff, the direct customer of a pipeline damaged by the defendant, because the customer had no proprietary interest in the pipeline. *PPG Industries, Inc. v. Bean Dredging, Inc.*, 447 So.2d 1057 (La. 1984).  Anticipating the conclusions reached by the Fifth and First Circuits, the Supreme Court of Louisiana likewise held that there were valid reasons for adhering to this rule denying recovery for "economic loss" without physical injury to owned property.  *Id.* at 1060-61.  *See also TS&C Investments, L.L.C. v. Beusa Energy, Inc.*, 637 F. Supp.2d 370 (W.D. La. 2009).

The Louisiana Courts of Appeals have therefore adhered to the rule and denied tort recovery of economic losses to plaintiffs with no proprietary interest in damaged property, and the Supreme Court has not seen fit to revisit the issue. *See, e.g., Louisiana Crawfish Producers Ass'n – West v. Amerada Hess Corp.*, 935 So.2d 380 (La. App. 3 Cir.2006), *writ denied*, 943 So.2d 1094 (La. 2006); *Dempster v. Louis Eymard Towing Co.*, 503 So.2d 99 (La. App. 5 Cir. 1987), *writ denied*, 505 So.2d 1136 (La. 1987).  *See also Barisich v. Shell Pipeline Co.*, 2006 WL 3913403 (E.D. La. 2006) (J. Barbier).  Most importantly, the rule applies in cases

brought under the Louisiana Products Liability Act.  *Phillips v. G&H Seed Co.*, 10 So.3d 339 (La. App. 3 Cir. 2009), *writ denied*, 21 So.3d 284 (2009).

The Alabama Municipalities seek recovery for purely economic losses, but allege no physical damage to property that they own.  Complaint ¶ 40.  For this reason, they are not entitled to recovery of their alleged losses as a matter of applicable Louisiana law (or as a matter of any other state's common law).

### d.  No Other State or Federal Law Is Applicable

The Alabama Municipalities have not identified the source of law that their common law claims were meant to invoke.  Plaintiffs may seek to avoid Louisiana law by contending, for example, that Alabama law governs the common law counts of its complaint on the ground that oil from the spill physically reached Alabama state waters and coastal property, or that, alternatively, under appropriate choice of law rules the law of some state other than Louisiana should control.  But neither Alabama law nor the law of any other state besides Louisiana can be invoked to support the Alabama Municipalities' common law claims.  Oil and gas development on the outer continental shelf is subject to exclusive federal jurisdiction under OCSLA, and federal law alone (including, however, law borrowed from the adjacent state) governs claims arising from the discharge of oil from the subsoil and seabed of the outer continental shelf and the installations and structures thereon.  43 U.S.C. § 1333(a); *Gulf Offshore*, 453 at 480-81(1981); *Chevron v. Huson*, 404 U.S. at 101-05; *Rodrigue*, 395 U.S. at 355-59.  The statute leaves no room for application of Alabama law in this case.

It makes no difference that the discharged oil may have reached state territorial waters or even washed ashore.  It has long been understood that state common law does not govern interstate oil pollution when the pollution migrates from a discharge outside the state into

state waters and onto state land.  *Illinois v. Milwaukee*, 406 U.S. 91 (1972) (*Milwaukee I*); *see also International Paper Co. v. Ouellette*, 491 U.S. 481, 488 (1987) ("the implicit corollary of [*Milwaukee I*] was that state common law was pre-empted").  As the Supreme Court further explained, "regulation of interstate water pollution is a matter of federal, not state law."  *Ouellette*, 491 U.S. at 488, citing *Milwaukee I*, 406 U.S. at 102 n.3.

Similarly, it is well settled that OCSLA "supersede[s] the normal choice of law rules that the forum would apply."  *Gulf Offshore*, 453 U.S. at 482 n.8, citing *Chevron v. Huson*, 404 U.S. 97 at 102-03.  Choice of law is governed by OCSLA, and its choice of law provision calls only for the application of the law of the adjacent state borrowed as surrogate federal law; OCSLA does not permit the application or borrowing of the law of any other state.  43 U.S.C. § 1333(a)(2).

The OPA savings clause, 33 U.S.C. § 2718, does not alter this conclusion.  The savings clause provides that OPA itself does not preempt various state laws, but preemption here is prescribed not by OPA but by OCLSA; section 2718 does not disturb the exclusivity of federal law mandated by OCSLA.  This is made clear both by the statutory text and by the Supreme court's definitive construction and application of that text in *United States v. Locke*, 529 U.S. 89 (2000).

The OPA savings clause contains three subsections.  Subsection (a) provides that "nothing in this chapter," and also "nothing in" the maritime Limitation of Liability Act, precludes states from imposing additional liability.  33 U.S.C. § 2718(a).  Similarly, subsection (b) provides that "nothing in this chapter," and nothing in a specified provision of the federal tax code, precludes the creation of state compensation funds; and subsection (c) provides that "nothing in this chapter," the maritime Limitation of Liability Act, or the same provision of the

tax code, bars either the states or the federal government from imposing additional liability or fines or penalties.  *Id*. §§ 2718(b), (c).  By its terms, therefore, section 2718 limits the preclusive reach only of OPA, the maritime Limitation of Liability Act, and a specific provision of the tax code; it does not speak to OCSLA or purport to curb OCSLA's preemptive force.  Consistent with OCSLA and the Supreme Court decisions on interstate pollution, section 2718 preserves certain state law with respect to discharges originating "within" state waters.  But section 2718 leaves the outer continental shelf, an area determined by Congress to be "exclusive Federal jurisdiction," 43 U.S.C. § 1333(a)(1), subject solely to federal law in the manner prescribed by OCSLA.  In short, OPA does not preserve state laws that OCSLA pre-empts.

This reading of the statute is confirmed by the Supreme Court's analysis of a similar savings clause in *Ouellette* and also by its definitive ruling with respect to section 2718 itself in *Locke*.  The decision in *Ouellette* demonstrates that statutory savings clauses like section 2718 must be strictly construed:  the Court held that a savings clause in the Clean Water Act providing that "[n]othing in this section" preempts state law "does not purport to preclude pre-emption of state law by other provisions of the Act." 479 U.S. at 493.  By the same token, a savings clause like OPA § 2718, providing that "nothing in this chapter" preempts state law, does not preclude preemption of state law by other federal statutes, specifically including OCSLA.  This was, in essence, the holding in *Locke*.  In that case, the state of Washington argued that section 2718 had the effect of depriving the Port and Waterways Safety Act of preemptive effect.  The Supreme Court explicitly rejected that argument, holding that the savings clause means only what it says and nothing more, i.e., that only "nothing ***in this chapter***" is preemptive, and therefore "the pre-emptive effect of the [Port and Waterways Safety Act] and regulations promulgated under it are not affected by OPA."  529 U.S. at 107.  It follows in this

13

case that OCSLA, like the Port and Waterways Safety Act in *Locke*, is not affected by the OPA savings clause. OCSLA applies here in accordance with its terms, foreclosing both the application of state law of its own force and the use of state conflict of law rules.

Finally, neither federal common law nor general maritime law applies here either. In providing for the adoption of the law of the adjacent state as federal law under OCSLA, "Congress made clear provision for filling the 'gaps' in federal law; it did not intend that federal courts fill in those 'gaps' themselves by creating new federal common law." *Chevron v. Huson*, 404 U.S. at 104-05. In that case the Supreme Court required the application of the Louisiana prescription statute as surrogate federal law under OCSLA rather than general maritime law laches principles. Thus OCSLA, not federal common law or general maritime law, governs here.

The underlying facts do not trigger the application of general maritime law in any event, for the development operations on the *Deepwater Horizon* lacked the necessary "substantial relationship to traditional maritime activity." *Texaco Exploration & Prod. v. Amclyde Engin. Prod.*, 448 F.3d 760, 771 (5th Cir. 2006). As the Fifth Circuit concluded in the seminal decision on the subject, the activities at the heart of this case do not justify the application of general maritime law because they "are not traditionally maritime. Rather they are the subjects of oil and gas exploration and production." *Union Texas Petroleum v. PLT Engineering, Inc.*, 895 F.2d 1043, 1049 (5th Cir. 1990); *see Grand Isle Shipyard, Inc. v. Seacor Marine, L.L.C.*, 589 F.3d 778, 783-89 & n. 9 (5th Cir. 2009) (en banc) (applying and adopting the "test" set out in *PLT*). In summary, Congress's choice of adjacent-state law in OCSLA "deliberately eschewed the application of maritime principles to" OCS oil and gas development. *Rodrigue*, 395 U.S. at 355.

Moreover, it is now well understood that OPA preempts general maritime law. *South Port Marine, LLC v. Gulf Oil Ltd. P'ship*, 234 F.3d 58, 65 (1st Cir. 2000) ("Congress intended the OPA to be the exclusive law governing oil spills"). *Accord, Gabarick v. Laurin Maritime (America) Inc*., 623 F.Supp.2d 741, 746 (E.D. La. 2009); *Clausen v. M/V New Carissa*, 171 F.Supp.2d 1127, 1133 (D. Or. 2001); *Nat'l Shipping Co. of Saudi Arabia*, 924 F.Supp. 1436, 1447 (E.D. Va.), *aff'd w/o published opinion*, 122 F.3d 1064 (4th Cir. 1997), *cert. denied*, 523 U.S. 1021 (1998).

### 2.   The Alabama Municipalities' Pursuit of Their Common Law Claims Against Cameron is Inconsistent with OPA and thus Pre-empted by OCSLA

Although Louisiana substantive law governs the potential liability of third parties like Cameron with respect to the *Deepwater Horizon* oil spill, federal law governs the remedial process for the handling of claims asserted by the Alabama Municipalities. OPA establishes an extensive remedial process and spells out that process in exhaustive detail. It authorizes claimants to sue only persons designated by statute as "responsible parties." OPA does not permit claimants to sue other persons.

The Alabama Municipalities are seeking identical relief under both their common law causes of action and their claim under OPA. Complaint ¶¶ 40, 60. To the extent that Louisiana law would permit such litigation against both responsible parties and persons who are not responsible parties, however, that law conflicts with and is inconsistent with OPA and thus cannot be adopted as surrogate federal law under OCSLA. As the Supreme Court has explained, "[t]o the extent that a comprehensive body of federal law is applicable under [OCSLA], state law 'inconsistent' with that law would be inapplicable." *Chevron v. Huson*, 404 U.S. at 100-01.

a.  <u>OPA Establishes a Comprehensive and Exclusive Remedial Scheme for
Handling Claims Arising from Offshore Oil Spills</u>

OPA was enacted in the wake of the *Exxon Valdez* oil spill to provide a coherent
set of federal rules to affix responsibility and provide compensation for injuries resulting from oil
discharges "into or upon the navigable waters or adjoining shorelines or the exclusive economic
zone."  33 U.S.C. § 2702(a).  OPA is therefore one of the federal laws – indeed, the principal
federal law – that OCSLA extends to activities relating to oil development facilities located on
the subsoil and seabed of the outer continental shelf.  43 U.S.C. § 1333(a)(1).

OPA prescribes a streamlined, comprehensive, and exclusive remedial process
pursuant to which designated responsible parties compensate claimants for the amount of their
verifiable damages without requiring proof of fault.  Ultimate financial responsibility is then
determined in separate litigation between the responsible parties who have paid compensation
and any third parties who may be liable under other federal law, including law borrowed from
the adjacent state, for having caused the discharge of oil.

In the event of a discharge of oil from a vessel or offshore facility, the OPA
remedial process focuses, first and foremost, on the "responsible party," a statutory term that
designates the owner or operator of the vessel and the lessee of the area in which the facility is
located.  33 U.S.C. § 2791(32)(A), (C).  The pertinent responsible parties in this case are
Macondo prospect lessees BP, Anadarko, and MOEX, and *Deepwater Horizon* owner or
operator Transocean, each of whom has been identified as a responsible party by the federal
government.  *See* Complaint ¶ 64 (BP and Transocean and perhaps others have been identified as
responsible parties); 33 U.S.C. § 2701(32)(A), (C).  It is undisputed that Cameron is not a
"responsible party" within the meaning of the OPA.

16

OPA makes the "responsible parties" liable, without proof of fault, for certain recovery: "Notwithstanding any other provision or rule of law, and subject to the provisions of this chapter, each responsible party for a vessel or a facility from which oil is discharged, . . . into or upon the navigable waters . . . is liable for [specified] removal costs and damages . . . that result from such incident." *Id*. § 2702(a). There are six such categories of removal costs and damages for which the responsible party is liable, including damages for injury to natural resources, economic loss for injury to property, and increased costs due to injury to property. *Id*. § 2702(b).

OPA sets forth an administrative claims procedure that claimants must follow before bringing suit: "all claims for removal costs or damages shall be presented first to the responsible party or guarantor." 33 U.S.C. § 2713(a); *see also id*. § 2701(13) (defining "guarantor" as a person financially responsible for a responsible party). If the claim is not paid within 90 days, "the claimant may elect to commence an action in court against the responsible party or guarantor or to present the claim to the [Oil Spill Liability Trust] Fund." *Id*. § 2713(c). Such lawsuits must be brought within three years. *Id*. § 2717(f)(1). In the event of litigation, the responsible party is entitled to assert only very narrowly circumscribed statutory defenses – specifically, that the discharge was "caused solely by" an act of God, an act of war, or certain independent acts of third parties. *Id*. § 2703. The responsible party also may assert statutory limits on liability, *id*. § 2704, but BP, indisputably the principal responsible party here, has waived those limits. *See* Document # 559.

Once the responsible party or guarantor or the Fund "pays compensation pursuant to this chapter to any claimant for removal costs or damages," whether pursuant to the administrative claims procedure or litigation, the person paying such compensation "shall be

17

subrogated to all rights, claims, and causes of action that the claimant has under any other law." 33 U.S.C. § 2715(a).  Actions on such subrogated claims must be brought within three years after payment of compensation.  *Id.* § 2717(f)(4).

OPA does not authorize claimants to sue persons other than statutory responsible parties.  Instead, OPA interposes the responsible party between the claimant and any such third parties.  "If the responsible party alleges that the discharge . . . was caused solely by the act or omission of a third party, the responsible party . . . shall pay removal costs and damages to any claimant; and shall be entitled to subrogation to all rights of . . . the claimant to recover [from the third party the amount of] removal costs or damages . . . [so] paid." 33 U.S.C. § 2702(d)(1)(B). If the third party is alleged to be only partially and not solely liable, the responsible party remains fully liable to the claimant but may bring a civil action for contribution against the third party.  *Id.* § 2709.  Any such claim for contribution must be brought within three years after entry of judgment or court-approved settlement establishing the responsible party's liability to the claimant.  *Id.* at § 2717(f)(3).

This comprehensive and carefully crafted remedial structure is straightforward and unambiguous: responsible parties are subject, for all practical purposes, to strict liability and must pay compensation to claimants who can prove that they incurred removal costs or damages covered by OPA.  Then, in separate litigation, the responsible parties may sue potentially liable third parties under other law to recover all or some of the compensation they paid to claimants. This statutory scheme does not allow claimants to pursue competing litigation against persons who are not designated by OPA as responsible parties.

The OPA legislative history confirms this understanding of the statute and makes clear that Congress deliberately chose to establish an exclusive statutory remedial procedure for

the resolution of claims arising out of discharges of oil on the outer continental shelf.  OPA was consciously designed "to create a single Federal law providing cleanup authority, penalties, and liability for oil pollution."  S. REP. 101-94, 101st Cong., 1st Sess. 1989 ("S. REP."), 1990 U.S. CODE CONG. & ADMIN. NEWS 722, 730.  "[F]ollowing enactment, liability and compensation for oil pollution removal costs and damages caused by a discharge from a vessel or facility (as defined in this [bill]) will be determined in accordance with this [legislation]."  CONF. REP. 101-653, 101st Cong., 2nd Sess. 1990 ("CONF. REP."), 1990 U.S.C.C.A.N. 779, 802, repeating the language of S. REP., 1990 U.S.C.C.A.N. at 746-47.  "Wherever possible, the burden is to be on the discharger to first bear the costs of removal and provide compensation for any damages."  S. REP. at 732.  In particular, and most tellingly, the Senate Report admonishes that "litigation or lengthy adjudicatory proceedings over liability, defenses, or the propriety of claims should be reserved for subrogation actions against dischargers."  *Id.*

Congress plainly understood that OPA mandates payment by statutory responsible parties "first" without the need for complex and burdensome litigation over liability and, further, that OPA requires the resolution of more problematic liability and defensive issues under other law, including any law adopted as federal law under OCSLA, in separate subrogation or contribution actions initiated by responsible parties against allegedly liable third parties. Congress left no room for lawsuits seeking to bypass this carefully crafted remedial procedure. Neither the statutory text nor the legislative history allows claimants like Alabama to pursue litigation against both statutory responsible parties and third parties, like Cameron, who are not designated as responsible parties under the statute.

### b.  The Alabama Municipalities' Pursuit of Claims Under Other Law Is Inconsistent with OPA

Pursuit of claims under other law against Cameron by the Alabama Municipalities is irremediably "inconsistent with" OPA's remedial scheme within the meaning of OCSLA.  43 U.S.C. § 1333(a)(2).  Allowing Plaintiffs to pursue litigation against third parties seeking the same relief they seek from statutory responsible parties would impermissibly "interfere with the methods by which" OPA "was designed" to achieve the stated goals of Congress. *Ouellette*, 471 U.S. at 491-92.  Such litigation would directly undermine the litigation-saving efficiencies that Congress intended to achieve (a) when it imposed liability "first" on responsible parties "[n]otwithstanding any other provision or rule of law,"  33 U.S.C. § 2702(a), and (b) when it assigned more difficult litigation under other law to assertion of subrogation or contribution claims by responsible parties, *id.* §§ 2715(a), 2709.

OPA's language and history unquestionably reflect "a congressional desire to encourage settlement and avoid litigation."  *Boca Ciega Hotel, Inc. v. Bouchard Transportation Co.*, 51 F.3d 235, 238-39 (11th Cir. 1995); *Gabarick v. Laurin Maritime (America) Inc.*, 623 F. Supp.2d 741, 747-48 (E.D. La. 2009).  The proliferation of multiple-party litigation that would follow from allowing claimants to pursue two tracks of litigation -- one against responsible parties for relief under OPA, and another seeking the same relief against other parties under other law—runs directly counter to that congressional desire.  This Court is witness to the myriad oil spill lawsuits filed by literally tens of thousands of claimants within the first months after the *Deepwater Horizon* casualty – lawsuits brought, moreover, without regard to the statutory requirement that claims first be presented administratively.  33 U.S.C. § 2713(a).  This chaotic mass of multi-party lawsuits asserting multiple legal theories can be rationally managed

20

consistently with OPA only by following the streamlined procedure prescribed by OPA, i.e., by ignoring everything other than the resolution of the statutory claims filed against responsible parties under OPA.   Allowing claimants to sue persons other than responsible parties is inconsistent with OPA at the most fundamental level; it results in a massive proliferation of litigation, in direct contravention of the congressional purpose of simplifying and streamlining the procedure for determining financial responsibility for oil spills and ensuring prompt payment of claims.   This wastes scarce judicial resources and threatens to produce different and conflicting rulings on both liability and damages.

Allowing claimants to sue third parties directly makes a hash of the OPA remedial process, and especially of its provisions for subrogation and contribution. OPA explicitly contemplates that responsible parties will pay compensation to claimants first, after which they may bring subrogation actions against potentially liable third parties under "all" of the paid claimant's "causes of action."  Permitting claimants to interject themselves into this process, by prosecuting cases against third parties before their claims against the responsible party have been resolved, raises unnecessary doubts about which defendant, the responsible party or the third party, is to be deemed primarily liable – that is, about who must pay what and when – and threatens to disrupt the subrogation procedure entirely.

Responsible parties cannot be subrogated to "all claims and causes of action" if they have already have been satisfied, and claimants plainly are not entitled to recover twice, once from responsible parties under OPA and a second time from third parties under other law. OPA resolves this apparent dilemma by making the responsible party primarily liable and leaving third parties subject only to subrogation actions or suits for contribution.  Permitting claimants to pursue litigation against both responsible parties and third parties would conflict

with the carefully orchestrated step-by-step claim procedure deliberately fashioned by Congress. As the Supreme Court said with respect to a similar issue in *Ouellette*, "it would be extraordinary for Congress, after devising a" comprehensive remedial scheme for providing relief for offshore oil spills, "to tolerate common-law suits that have the potential to undermine" that remedial scheme. 479 U.S. at 497. State law purporting to allow the assertion of claims against third parties before completion of the remedial process prescribed by OPA undermine that process; such state law is inconsistent with OPA and thus cannot be  applied as surrogate federal law under OCSLA.

### c.   The Appropriate Remedy Under OPA is Dismissal Without Prejudice

In a thorough and well-reasoned decision, Judge Lemelle specifically concluded from the structure of OPA and its legislative history that claimants "should pursue claims covered under OPA ***only against the responsible party***."   *Gabarick v. Laurin Maritime (America) Inc.*, 623 F. Supp.2d 741, 750 (E.D. La. 2009) (emphasis added).   Judge Lemelle thereupon dismissed, without prejudice, "all claims covered under 33 U.S.C. § 2702" asserted against defendants who were not statutory responsible parties.   *Id.* at 751.  This Court should do the same.

Dismissal without prejudice would be fair to all parties and would not impair Alabama's legitimate interest in securing prompt and full compensation.  If the responsible parties satisfy the Alabama Municipalities' allowable claims, the Plaintiffs will be spared any need to expend resources in litigation with Cameron and other third parties.  The responsible parties then will be subrogated to "all" the claims dismissed here without prejudice and may proceed against Cameron and other third parties if they conclude that it is in their interest to do so.  33 U.S.C. § 2715(a).  On the other hand, in the extremely unlikely event that the OPA

22

remedial process does not fully compensate the Alabama Municipalities for all of their verifiable claims, due to the responsible parties' insolvency or for other reasons, then Plaintiffs may present their claims for uncompensated damages to the Fund.  *Id*. § 2713(d).  In that event, the Fund would bear ultimate responsibility for all removal costs and damages not "caused by the gross negligence or willful misconduct of [the] claimant," *id*. § 2712(b), and upon payment also would become subrogated to "all" of Alabama's claims, *id*. § 2715(a).  Under either scenario, dismissal without prejudice would pave the way for an orderly determination of the Alabama Municipalities' claims and Cameron's liability, if any.

**B.    The Alabama Municipalities' Third Count Does Not State a Viable Claim against Cameron**

The third count of the complaint, purporting to assert a federal cause of action against Cameron under OPA, has no basis in law.  That count seeks relief under OPA § 2702(b) from all "Defendants," a class that would include Cameron.  Complaint ¶¶ 58-61.  But section 2702(a) makes only statutorily designated "responsible parties" and "guarantors" liable for relief under section 2702(b).  33 U.S.C. § 2702.  Cameron is not a statutory "responsible party," and it is far from being a guarantor.  The Alabama Municipalities do not allege, nor could they, that Cameron is the owner or operator of the *Deepwater Horizon* or lessee of the area in which the *Deepwater Horizon* was located.  An equipment manufacturer like Cameron who is not an owner, operator, or lessee is not a responsible party under OPA, *see* 33 U.S.C. § 2701(32), and, indeed, the Alabama Municipalities do not contend otherwise.

The Alabama Municipalities cannot transform Cameron into a responsible party.  Only a person designated by OPA as a responsible party may seek to shift responsibility to a third party under the statute, and even then, the responsible party must prove that the third

party's conduct was the "sole cause" of the oil spill.  33 U.S.C. § 2702(d).  The Alabama Municipalities allege that other defendants participated in causing the oil spill.  Complaint ¶¶ 22-31.  These allegations preclude treatment of Cameron as a "sole cause" responsible party under section 2702(d) in any event.

To summarize, OPA confers causes of action only against designated "responsible parties" or their "guarantors."  33 U.S.C. §§ 2702(a), 2713(a), 2715(f).  It provides that "all claims" for recovery "shall be presented first" to a "responsible party or guarantor."  *Id.* § 2713(a).  If a claim is not paid after mandatory presentment, OPA authorizes suit, but only against the "responsible party or guarantor."  *Id.* § 2713(c).  OPA does not create a federal cause of action against persons other than responsible parties or guarantors.  It does not, in short, create a cause of action against Cameron in this case.

## CONCLUSION

The Court should dismiss with prejudice the first two counts of the Alabama Municipalities' complaint for failure to state a claim under the law of Louisiana adopted as surrogate federal law under OCSLA.  In the unlikely event the Court determines that those counts state viable claims under Louisiana law, the Court should dismiss those two counts, without prejudice, because under OPA and OCSLA they fail to state a claim upon which relief can be granted to the Alabama Municipalities.

24

The Court should dismiss with prejudice the third count of the complaint based on OPA for failure to state a claim against Cameron.

Respectfully submitted,

David J. Beck, T.A.
    dbeck@brsfirm.com
Joe W. Redden, Jr.
    jredden@brsfirm.com
David W. Jones
    djones@brsfirm.com
Geoffrey Gannaway
    ggannaway@brsfirm.com

BECK, REDDEN & SECREST, L.L.P.
One Houston Center
1221 Mckinney, Suite 4500
Houston, TX  77010-2010
713-951-3700
713-951-3720 (fax)

Howard L. Murphy, 9844
    hmurphy@dkslaw.com
DEUTSCH, KERRIGAN & STILES
755 Magazine Street
New Orleans, Louisiana 70130
504-581-5141
504-566-4039

*/s/ Phillip A. Wittmann*
Phillip A. Wittmann, 13625
    pwittmann@stonepigman.com
Carmelite S. Bertaut, 3054
    cbertaut@stonepigman.com
Keith B. Hall, 24444
    khall@stonepigman.com
Jared Davidson, 32419
    jdavidson@stonepigman.com

STONE PIGMAN WALTHER WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
504-581-3200
504-581-3361 (fax)

**ATTORNEYS FOR CAMERON
INTERNATIONAL CORPORATION**

1046172v.1

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Cameron International Corporation's Memorandum in Support of Motion to Dismiss has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 11th day of February, 2011.

*/s/ Phillip A. Wittmann*

1046172v.1