**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE:  OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | § § § § § § | **MDL NO. 2179**<br><br>**SECTION:  J**<br><br>**JUDGE BARBIER**<br><br>**MAGISTRATE SHUSHAN** |
| Applies to: | § § | |
| 2:10-cv-1156 | § | |
| 2:10-cv-1196 | § | |
| 2:10-cv-1243 | § | |
| 2:10-cv-1502 | § | |
| 2:10-cv-1540 | § | |
| 2:10-cv-1921 | § | |
| 2:10-cv-2814 | § | |
| 2:10-cv-3066 | § | |
| 2:10-cv-3168 | § | |
| 2:10-cv-3169 | § | |
| 2:10-cv-3184 | § | |
| 2:10-cv-3815 | § | |
| 2:10-cv-4211 | § | |
| 2:10-cv-4226 | § | |
| 2:10-cv-4227 | § | |
| 2:10-cv-4229 | § | |
| 2:10-cv-4252 | § | |
| 2:10-cv-4360 | § | |
| 2:10-cv-4427 | § | |

.. .. .. .. .. .. .. .. .. .. .. .. . ..

**HALLIBURTON ENERGY SERVICES, INC.'S
OMNIBUS MEMORANDUM IN SUPPORT OF MOTIONS TO DISMISS
PLAINTIFFS' BUNDLE A PERSONAL INJURY COMPLAINTS**

TO THE HONORABLE JUDGE BARBIER:

In nineteen separate lawsuits brought by 54 plaintiffs, Defendant Halliburton Energy Services, Inc. ("HESI") faces personal injury claims made on behalf of 4 individuals who presumably died aboard the DEEPWATER HORIZON and by or on behalf of 40 other individuals allegedly injured as a result of the explosions and evacuation of the vessel on April 20, 2010.  Plaintiffs asserting these wrongful death and personal injury claims under the Jones

Act and/or general maritime law, however, have not stated legally viable causes of action against HESI.  Therefore, HESI respectfully moves the Court to dismiss all claims asserted against it in the Bundle A personal injury cases pursuant to FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6).  Further, the Court should dismiss all claims against Halliburton Company pursuant to FEDERAL RULE OF CIVIL PROCEDURE 12(b)(2) because the Court lacks personal jurisdiction over it.  HESI respectfully submits the following Omnibus Memorandum in Support of its Motions to Dismiss:

### INTRODUCTION AND SUMMARY

On April 20, 2010, several explosions occurred on the DEEPWATER HORIZON, a semi-submersible mobile drilling unit owned and operated by Transocean, and leased to BP, leading to a series of fires, crew evacuation, and the eventual sinking of the vessel two days later.  At the time of the incident, 126 individuals were aboard the DEEPWATER HORIZON.  After evacuation of the vessel, 11 individuals remained missing and are presumed dead, while many others allege that they sustained various injuries during the explosion and ensuing evacuation.  In 19 of the lawsuits currently comprising Bundle A of MDL-2179, a collective total of 54 plaintiffs have sued HESI on behalf of 4 of those presumed decedents and by or on behalf of 40 of the remaining 115 individuals onboard at the time of the incident.  Although Plaintiffs may have legitimate claims against other parties, they have not stated viable wrongful death or personal injury causes of action against HESI.  Therefore, the Court should dismiss Plaintiffs' claims against HESI in their entirety.

### RULE 12(b)(6) LEGAL STANDARD

FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) provides defendants a mechanism early in litigation for challenging a plaintiff's right to recover on a particular set of facts or by a particular cause of action.  FED. R. CIV. P. 12(b)(6).  In reviewing a Rule 12(b)(6) motion, the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."

*In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  The plaintiff must, however, plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 569-70 (2007).  These "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555-56.

### ARGUMENT AND AUTHORITIES

Plaintiffs bring their wrongful death and personal injury claims against HESI and other defendants under the Jones Act and general maritime law.  Their claims include Jones Act negligence, maintenance and cure, unseaworthiness, and miscellaneous tort theories.  For the vast majority of these claims, Plaintiffs fail to distinguish between (a) those claims that are only cognizable against their employers or the vessel owner, and (b) those claims that may be cognizable against HESI.   Because HESI did not employ any of the Jones Act Plaintiffs/Decedents and did not own/operate the vessel DEEPWATER HORIZON, each of the claims cognizable only as to employers/owners/operators must be dismissed as to HESI.

Similarly, even as to those general maritime law claims that might otherwise be legally cognizable as to HESI, Plaintiffs' pleadings are fatally defective.  Plaintiffs only generally allege that HESI was engaged in cementing operations and, in conclusory fashion, that HESI was somehow negligent.  But Plaintiffs do not sufficiently allege any facts supporting a negligence claim (or any other tort claim) against HESI that is plausible on its face.  Indeed, Plaintiffs make little effort, by and large, to distinguish their conclusory negligence assertions against HESI from the generic conclusions asserted as to the various defendants as a group.  Therefore, the Court should dismiss Plaintiffs' wrongful death and personal injury claims against HESI under Rule 12(b)(6).

1.  **Plaintiffs cannot state legally viable negligence or maintenance and cure claims under the Jones Act because HESI did not employ any of the Plaintiffs making those claims.**

HESI did not employ any Plaintiff in any of the Bundle A personal injury cases who allege any claims against HESI.[1]  None of them allege that they were employed by HESI and, instead, their pleadings demonstrate that each was employed by another entity:

- Roshto alleges that "[a]t all material times, Shane Roshto was employed by Transocean Entities as a Jones Act seaman."  *See* Roshto Second Amended Complaint at ¶ 5 (Cause No. 2:10-cv-1156-CJB-SS).  Additionally, Plaintiff contends that "Shane Roshto, at all times pertinent, was where he was ordered to be and performing the duties and functions he was instructed and obliged to perform pursuant to the directives of defendant, Transocean Entities." *See id.* at ¶ 8.

- Michelle Jones avers that "[o]n or about April 20, 2010, Gordon Lewis Jones was an employee of M-I, L.L.C."  *See* Jones First Amending Complaint at ¶ 4 (Cause No. 2:10-cv-1196-CJB-SS).

- "At all times material, including April 20, 1010, Transocean Deepwater, Inc. and/or Transocean Entity employed Karl W. Rhodes as a Jones Act seaman and a member of the crew."  *See* Rhodes Complaint at ¶ 4 (Cause No. 2:10-cv-1502-CJB-SS).

- "On April 20, 2010, Transocean Deepwater, Inc. and/or Transocean Entity employed Chad Murray as a Jones Act seaman and a member of the crew."  *See* Murray Complaint at ¶ 4 (Cause No. 2:10-cv-2814-CJB-SS).

- "At all material times herein, Complainant, Kenneth Roberts, was employed by ART Catering as a Jones Act Seaman."  *See* Roberts Complaint at ¶ 2, 5 (Cause No. 2:10-cv-3815-CJB-SS).

- "Christopher Choy was employed by Defendant Transocean Deepwater, Inc. and/or Transocean Offshore Deepwater Drilling, Inc. and/or Triton Asset Leasing GmbH and/or Transocean Holdings, L.L.C. and/or Triton Hungary Asset Management KFT."  *See* Choy's Third Amended Original Petition in Intervention at ¶ 17 (Cause No. 2:10-cv-3168-CJB-SS).[2]

- "Dominique Ussin was employed by Defendant, Art Catering, Inc.  At all times hereto, Intervenor was on board the Deepwater Horizon as a borrowed employee of Transocean

---

[1] Indeed, only two HESI employees have filed personal injury lawsuits, Christopher Haire and Cathleenia Willis, and they each explicitly exclude HESI from their personal injury claims.  *See* Second Amended Petition at ¶ III, *Davis v. Cameron Int'l Corp.* (No. 2:10-cv-3169-CJB-SS) ("Christopher Haire is <u>not</u> bringing any claims against Defendant Halliburton Energy Services, Inc."); Plaintiffs' Fifth Amended Petition at ¶ 16, *Kritzer v. Transocean Offshore Deepwater Drilling, Inc.* (No. 2:10-cv-4427-CJB-SS) ("Willis' claims are maintained against all Defendants except Halliburton").

[2] Since this Court dismissed with prejudice the claims brought by Tracy Kleppinger, individually and on behalf of Karl and Aaron Kleppinger, HESI's Omnibus Memorandum addresses only the claims brought by the remaining intervenors.  *See* Order of Dismissal, 2:10-cv-03168-CJB-SS (1/19/11) (Doc. No. 2).

Deepwater, Inc. and/or Transocean Offshore Deepwater Drilling, Inc. and/or Triton Asset Leasing GmbH and/or Transocean Holdings, L.L.C. and/or Triton Hungary Asset Management KFT as a seaman."  *See* Ussin's Original Petition in Intervention at ¶ 18 (Cause No. 2:10-cv-3168-CJB-SS).

- "Douglas Brown was employed by Defendant, Transocean Deepwater, Inc. and/or Transocean Offshore Deepwater Drilling, Inc. and/or Triton Asset Leasing GmbH and/or Transocean Holdings, L.L.C. and/or Triton Hungary Asset Management KFT as a seaman."  *See* Brown's First Amended Petition in Intervention at ¶ 17 (Cause No. 2:10-cv-3168-CJB-SS).

- "Brent Mansfield was employed by Defendant, Transocean Deepwater, Inc. and/or Transocean Offshore Deepwater Drilling, Inc. and/or Triton Asset Leasing GmbH and/or Transocean Holdings, L.L.C. and/or Triton Hungary Asset Management KFT as a seaman."  *See* Mansfield's Original Petition in Intervention at ¶ 17 (Cause No. 2:10-cv-3168-CJB-SS).

- "Stephen Stone was employed by Defendant, Transocean Offshore Deepwater Drilling, Inc., as a seaman."  Stone Petition in Intervention at ¶ 12 (Cause No. 2:10-cv-3168-CJB-SS).

- With the exception of Willis, who asserts no claims against HESI, none of the Plaintiffs in *Kritzer* allege that HESI employed them or controlled their work; instead, they identify other defendants as their employers.  *See* Kritzer Fifth Amended Petition at ¶¶ 5-16; Ireland Petition in Intervention at ¶¶ 6-7 (Cause No. 2:10-cv-4427-CJB-SS).

- Taquino alleges that Keith Blair Manuel, deceased, was, at all material times, an "employee of MI Swaco, contracted to serve the interests of Transocean and/or BP entities aboard the vessel."  *See* Taquino Complaint at ¶ 5 (Cause No. 2:10-cv-1921-CJB-SS).

- Becnel avers that her husband, Keith Blair Manuel, deceased, was a "member of the crew of the DEEPWATER HORIZON" and employed as a "Jones Act seaman."  *See* Becnel Complaint at ¶ 3 (Cause No. 2:10-cv-3066-CJB-SS).  Becnel does not specify who employed Keith Blair Manuel, but, as noted above, Taquino (allegedly the administrator for Manuel's estate) alleges he was employed by MI Swaco.  In any event, Plaintiff does not allege that HESI employed him.

- Reed alleges that at all material times he was employed by Art Catering.  *See* Reed Petition for Damages at ¶¶ 4, 7, 11 (Cause No. 2:10-cv-4252-CJB-SS).

- Neither Brad Jones nor Burrell contend that HESI employed them.  *See* Jones Original Petition at ¶ III (Cause No. 2:10-cv-3184-CJB-SS).  Nor does Lance John.  *See* John Original Petition at ¶ VI (Cause No. 2:10-cv-4429-CJB-SS).

- Lavergne alleges that he was an "employee of and in the course and scope of his employment with Offshore Cleaning Systems, L.L.C." at all pertinent times.  *See* Lavergne Petition for Damages at ¶ 5 (Cause No. 2:10-cv-4211-CJB-SS).

- Faulk and Benton contend that each was "aboard as a borrowed employee of Defendants Transocean, Ltd. and/or Transocean Offshore Deepwater Drilling L.L.C." *See* Faulk Original Petition at ¶ VI (Cause No. 2:10-cv-4227-CJB-SS); Benton Original Petition at ¶ VI (Cause No. 2:10-cv-4226-CJB-SS).

- Morales avers that he "was employed by Transocean." *See* Original Petition at ¶ 5 (Cause No. 2:10-cv-4360-CJB-SS).

- Crawford alleges that he was employed by Transocean at all pertinent times. *See* Crawford Class Action Complaint at ¶ 16 (Cause No. 2:10-cv-1540-CJB-SS).

The same is true as to the maintenance and cure claims:

- Kritzer avers that "Kritzer worked for Offshore Cleaning Systems," "Johnson worked for Transocean as the Deck Pusher," "Burkeen worked for Transocean as a crane operator," "Watson worked for Transocean as for three years as a roustabout," "Lambert worked for Offshore Cleaning Systems," "Richard worked for Offshore Cleaning Systems," "Johnson worked for Transocean as a roustabout," and "Roarke worked for Transocean." *See* Kritzer Fifth Amended Petition at ¶¶ 5-13 (Cause No. 2:10-cv-4427-CJB-SS); Ireland Petition in Intervention at ¶¶ 6-7 (Cause No. 2:10-cv-4427-CJB-SS).

- As noted, Lavergne readily acknowledges that he "was an employee of and in the course and scope of his employment with Offshore Cleanings, L.L.C." *See* Petition for Damages at ¶ 5 (Cause No. 2:10-cv-4211-CJB-SS).

- Morales likewise concedes that he "was employed by Transocean." *See* Original Petition at ¶ 5 (Cause No. 2:10-cv-4360-CJB-SS).

Plaintiffs asserting Jones Act negligence and maintenance and cure claims, accordingly, concede

that HESI was not their employer, which is fatal to their claims.

### A.   Plaintiffs cannot state a legally viable Jones Act negligence claim against HESI.

While it is not entirely clear, several personal injury complaints appear to assert Jones

Act negligence claims against HESI.  In particular, it appears that plaintiffs in the following

matters assert Jones Act claims that do not, on the face of the pleadings, exclude HESI:[3]

- *Roshto v. Transocean, Ltd., et al.,* Cause No. 2:10-cv-1156.  *See* Second Amended Complaint at ¶¶ 2, 7(b), 9, 12, 15.

- *Rhodes v. Transocean, Ltd., et al.,* Cause No. 2:10-cv-1502.  *See* Complaint at ¶¶ 2, 6, 9, 19.

- *Murray v. Transocean, Ltd., et al.,* Cause No. 2:10-cv-2814.  *See* Complaint at ¶¶ 2, 6, 9, 13, 19.

---

[3] HESI references Plaintiffs' lawsuits by the cause numbers the Court assigned after they were transferred into MDL-2179.

- *Roberts v. BP, PLC, et al.,* Cause No. 2:10-cv-3815.  *See* Complaint at ¶ 2, 5, 8, 13, 16, 19.

- Stone Petition in Intervention at ¶¶ 10, 15, 16; Choy Third Amended Petition in Intervention at ¶ 15; Ussin's Original Petition in Intervention at ¶ 18; Brown's First Amended Petition in Intervention at ¶ 17; Mansfield's Original Petition in Intervention at ¶ 15; Francis' Petition in Intervention at ¶ 7.  (Interventions filed in the Kleppinger matter, 2:10-cv-3168).

- *Kritzer v. Transocean Offshore Deepwater Drilling, Inc., et al.,* Cause No. 2:10-cv-4427.  *See* Kritzer Fifth Amended Petition at ¶¶ 1, 27, 28; Ireland Petition in Intervention at ¶¶ 1, 15, 20.

- *Jones, et al. v. Cameron International Corporation a/k/a Cameron System Corporation, et al.,* Cause No. 2:10-cv-3184.  *See* Original Petition at ¶¶ V, IX.

- *Taquino, et al. v. Transocean Holdings, LLC, et al.,* Cause No. 2:10-cv-1921.  *See* Complaint at ¶¶ 2, 10, 30.

- *Crawford, et al. v. BP, PLC., et al.,* Cause No. 2:10-cv-01540.  *See* Class Action Complaint at ¶¶ 24, 45.

- *Becnel v. BP, PLC, et al.,* Cause No. 2:10-cv-03066.  *See* Complaint at ¶¶ 2, 3, 10, 17.

- *Reed v. BP, PLC, et al.,* Cause No. 2:10-cv-04252.  *See* Petition for Damages at ¶¶ 4, 14, 20.

- *Lavergne v. Transocean, Ltd., et al.,* Cause No. 2:10-cv-4211.  *See* Petition for Damages at ¶¶ 10, 16, 19.

- *Faulk v. Transocean, Ltd., et al.,* Cause No. 2:10-cv-4227.  *See* Original Petition at ¶¶ V, VII.

- *Benton v. Transocean, Ltd., et al.,* Cause No. 2:10-cv-4226.  *See* Original Petition at ¶¶ V, VII.

- *John v. Transocean, Ltd., et al.,* Cause No. 2:10-cv-4229.  *See* Original Petition at ¶¶ V, VII.

- *Morales v. BP Exploration and Production, Inc., et al.,* Cause No. 2:10-cv-4360.  *See* Original Petition at ¶¶ 1, 16, 21.

- *Michelle Jones, et al. v. Transocean, Ltd., et al.,* Cause No. 2:10-cv-1196.  *See* First Amending Complaint at ¶ 10.

Such claims, however, are only legally viable as to a Jones Act seaman's employer.  *See Miles v. Apex Marine Corp.*, 498 U.S. 19, 28 (1990); *Tucker v. Fearn*, 333 F.3d 1216, 1219 (11th Cir. 2003); *Petersen v. The Chesapeake & Ohio Ry Co.*, 784 F.2d 732, 736 (6th Cir. 1986); *Baker v. Raymond Int'l, Inc.*, 656 F.2d 173, 177 (5th Cir. 1981).  Indeed, "the only proper defendant in a

Jones Act action is the seaman's employer." *Davis v. Bender Shipbuilding & Repair Co.*, 27 F.3d 426, 428 (9th Cir. 1994).

But, as noted above, Plaintiffs recognize that HESI did not employ any of them. Therefore, none of these Plaintiffs can state a legally viable claim under the Jones Act against HESI and, under Rule 12(b)(6), the Court should dismiss all such claims with prejudice.

**B.      Plaintiffs asserting maintenance and cure claims cannot state a legally viable claim against HESI.**

Similarly, Plaintiffs fail to state a legally viable claim against HESI for recovery of maintenance and cure.  "Maintenance and cure is an ancient duty imposed upon a shipowner to provide for a seaman who becomes ill or injured during his service to the ship." *Silmon v. Can Do II, Inc.*, 89 F.3d 240, 242 (5th Cir. 1996).  Maintenance is a subsistence allowance intended to cover the reasonable costs a seaman incurs for his food and lodging during the period of his illness. *See Guevara v. Maritime Overseas Corp.*, 59 F.3d 1496, 1499 (5th Cir. 1995), abrogated on other grounds, *Atl. Sounding Co., Inc. v. Townsend*, 129 S. Ct. 2561 (2009); THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 6-32, at 358 (2d ed. 1994).  Cure is an employer's obligation to pay for the medical care of the sick or injured seaman. *See Guevara*, 59 F.3d at 1499; SCHOENBAUM, § 6-32, at 361 (2d ed. 1994).

Maintenance and cure, importantly, is a non-delegable duty of the employer.  It appears, however, that Plaintiffs in the following Bundle A cases assert maintenance and cure claims that do not, on the face of the pleadings, exclude HESI:

- *Lavergne v. Transocean, Ltd., et al.,* Cause No. 2:10-cv-4211.  *See* Petition for Damages at ¶ 17.

- *Kritzer v. Transocean Offshore Deepwater Drilling, Inc., et al.*, Cause No. 2:10-cv-4427.  *See* Kritzer Fifth Amended Petition at ¶ 36; Ireland Petition in Intervention at ¶ 24.

- *Morales v. BP Exploration and Production, Inc., et al.*, Cause No. 2:10-cv-4360.  *See* Original Petition at ¶ 25.

Since such claims are only legally viable as to Plaintiffs' employers and Plaintiffs, as reflected above, plainly acknowledge that HESI did not employ any of them, all claims for maintenance and cure against HESI should be dismissed as a matter of law.

2.    **Plaintiffs cannot articulate legally viable unseaworthiness claims as to HESI because it was not the owner of the vessel at issue.**

Although several Plaintiffs also appear to assert unseaworthiness claims against HESI, those claims are not legally viable. Such claims may only be asserted against the owner of the vessel at issue (here, the DEEPWATER HORIZON). Under general maritime law, "[b]oth ship and shipowner are liable to seamen for injuries caused by unseaworthiness. The duty to provide a seaworthy vessel is absolute and extends not only to the owner's employees but to all who do seaman's work." *Baker*, 656 F.2d at 181. Importantly, however, unseaworthiness claims may only be asserted against the vessel's owner or operator. *See Cerqueira v. Cerqueira*, 828 F.2d 863, 865 (1st Cir. 1987) ("A plaintiff normally can bring an unseaworthiness claim only against the owner of a vessel."); *La Voie v. Kualoa Ranch & Activity Club, Inc.*, 797 F. Supp. 827, 828 (D. Hi. 1992) ("The duty to provide a seaworthy vessel is imposed only upon vessel owners and owners *pro hac vice*."). "To be held liable for breach of the duty, the defendant 'must be in the relationship of an owner or operator of a vessel.'" *Baker*, 656 F.2d at 181 (quoting *Daniels v. Florida Power & Light Co.*, 317 F.2d 41, 43 (5th Cir. 1963)).

Although HESI did not own or operate the DEEPWATER HORIZON, the following Bundle A personal injury cases include unseaworthiness claims that do not, on the face of the pleadings, plainly exempt HESI from the claims:

- *Lavergne v. Transocean, Ltd., et al.,* Cause No. 2:10-cv-4211. *See* Petition for Damages at ¶ 18.
- *Rhodes v. Transocean, Ltd., et al.,* Cause No. 2:10-cv-1502. *See* Complaint at ¶ 10.
- *Murray v. Transocean, Ltd., et al.,* Cause No. 2:10-cv-2814. *See* Complaint at ¶ 10.

- *Roberts v. BP, PLC, et al.,* Cause No. 2:10-cv-3815.  *See* Complaint at ¶ 8.
- Stone Petition in Intervention, S.D. Tex, Cause No. 4:10-cv-1851, at ¶ 17;  Francis' Petition in Intervention at ¶ 7. (Interventions filed in the Kleppinger matter, 2:10-cv-03168).
- *Kritzer v. Transocean Offshore Deepwater Drilling, Inc., et al.,* Cause No. 2:10-cv-4427.  *See* Kritzer Fifth Amended Petition at ¶ 33; Ireland Petition in Intervention at ¶ 21.
- *Benton v. Transocean, Ltd., et al.,* Cause No. 2:10-cv-2764.  *See* Original Petition at ¶ VII.
- *Faulk v. Transocean, Ltd., et al.,* Cause No. 2:10-cv-4227.  *See* Original Petition at ¶ VII.
- *John v. Transocean, Ltd., et al.,* Cause No. 2:10-cv-4229.  *See* Original Petition at ¶ VII.
- *Morales v. BP Exploration and Production, Inc., et al.,* Cause No. 2:10-cv-4360.  *See* Original Petition at ¶ 22.

HESI, however, cannot be held liable for any alleged unseaworthiness because, as Plaintiffs' pleadings confirm, HESI neither owned nor operated the DEEPWATER HORIZON.   For example, Roshto specifically alleges that Shane Roshto was working "aboard the offshore drilling vessel, DEEPWATER HORIZON, a semi-submersible mobile drilling unit that was owned and/or operated and/or chartered and/or controlled by Transocean Entities and/or BP Entities at all material times herein."  *See* Roshto Second Amended Complaint at ¶ 6.  More specifically, Roshto asserts that "the vessel on which Shane Roshto was injured and/or died was owned, navigated in navigable waters, manned, possessed, managed, controlled, chartered and/or operated by defendants, Transocean Entities and/or BP Entities."  *Id.* at ¶ 11.  Mr. Lavergne notes that "[a]t all times pertinent herein, Defendant, Transocean, Ltd., was the owner of the M/V DEEPWATER HORIZON."  *See* Lavergne Petition for Damages at ¶ 6.  Others also contend that Transocean owned and/or operated the DEEPWATER HORIZON.  *See* Kritzer Fifth Amended Petition at ¶ 28; Ireland Petition in Intervention at ¶ 16; Faulk Original Petition at ¶ VI; Benton Original Petition at ¶ VI; John Original Petition at ¶ VI; Morales Original Petition

at ¶ 17.  Similarly, several Plaintiffs assert that the DEEPWATER HORIZON was "owned and/or operated and/or managed and/or chartered and/or controlled" by Transocean and/or BP. *See* Rhodes Complaint at ¶ 5.  *See also* Murray Complaint at ¶ 5; Roberts Complaint at ¶¶ 4, 9.[4]

None of the plaintiffs who raise unseaworthiness claims contend that HESI was the owner, owner *pro hac vice* or operator of the vessel at issue.  Therefore, HESI cannot be held liable for any of their unseaworthiness claims and the Court should dismiss all such claims.

**3.  The Court should dismiss Plaintiffs' claims against HESI because their complaints fail to contain sufficient factual material, accepted as true, to state a claim for relief that is plausible on its face.**

Despite the tragedy of the presumed deaths of 11 individuals and the significance of the alleged personal injuries sustained by others on the DEEPWATER HORIZON, Plaintiffs' pleadings are fatally deficient.  To state a viable claim, they must allege sufficient facts suggesting the plausibility of their legal conclusion that HESI is somehow responsible for their purported injuries.  Plaintiffs, however, fail to do so.  They allege *no facts* as to HESI other than its corporate status and that it was engaged in unspecified cementing operations of the well and/or well cap.[5]  Without anything else, Plaintiffs move from the proposition that HESI, a foreign corporation doing business in the state, was doing some cementing work to conclusory claims of negligence.  And in most cases, those conclusory allegations are not even specific to HESI, instead they generically cast aspersions about unspecified "Defendants."  Nor do those conclusory allegations even identify the legal elements of their negligence claims.[6]  Indeed,

---

[4]  Further, Transocean and its related entities also have filed a Petition for Limitation of or Exoneration from Liability pending in the MDL that states those parties are the owners/operators of the vessel.  2:10-cv-02771.

[5]  Certain plaintiffs also suggest that "Sperry (a division of Halliburton) was charged with real time gas monitoring, but failed to safely perform this function."  *See* Kritzer Fifth Amended Petition at ¶ 31.  This generic assertion, however, does nothing to alter the underlying conclusion that plaintiffs' pleadings lack the requisite factual specificity.

[6]  Roshto, for example, admits that HESI did not employ Shane Roshto yet asserts it negligently failed to train/supervise him and failed to provide him with a safe work place without any allegation, factual or otherwise, of

Plaintiffs do not plead *any* facts supporting their claims against HESI or *any* facts as to their purported personal injuries.

It is not enough for Plaintiffs to simply aver in conclusory fashion that some unspecified acts or omissions by HESI (or other defendants) somehow caused or contributed to the fire, explosion, and/or personal injuries. Nor is it enough to simply aver random tort claims (*e.g.*, negligence, negligence per se, products liability, intentional infliction of emotional distress, etc.) without alleging sufficient facts to support the plausibility of those legal conclusions. A Rule 12(b)(6) motion tests the sufficiency of the pleadings. Although the court accepts well-pleaded facts as true, the Supreme Court has rejected the former rule that a dismissal for failure to state a claim was improper "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim." *Twombly*, 550 U.S. at 561-62. Rather, to survive a Rule 12(b)(6) challenge, the "complaint must contain sufficient factual material, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 570); *see also Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). This standard "does not require 'detailed factual allegations,' ***but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation***." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 570) (emphasis added).

The courts' application of *Twombly* and *Iqbal* proceeds in two steps. First, the court determines which allegations in the complaint are not entitled to the assumption of truth. *Id.* at 1950. Courts reject attempts by plaintiffs to simply recite the elements of a cause of action or to "dress up" legal conclusions as factual allegations in determining whether a complaint contains sufficient factual information to "state a claim to relief that is plausible on its face." *See*

---

a duty by a non-employer to do so. *See* Roshto Complaint at ¶¶ 5, 15. And Jones goes no further than to assert in conclusory fashion that HESI was somehow negligent "in the cementing of the well and well cap" and "in performing other operations," which remain wholly unspecified. *See* Jones Complaint at ¶ 10.

*Twombly*, 550 U.S. at 555-56 ("[A] formulaic recitation of the elements of a cause of action will not do."); *see also, Little v. USAA Cas. Ins. Co.*, No. 09-30948, 2010 U.S. App. LEXIS 6993, at *5-6 (5th Cir. Apr. 2, 2010); *Taylor v. Books A Million*, 296 F.3d 376, 378 (5th Cir. 2002) (conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss).

Second, the court considers the remaining factual allegations that are entitled to the assumption of truth to determine whether they plausibly suggest an entitlement to relief. *See Iqbal*, 129 S. Ct. at 1951.

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it stops short of the line between possibility and plausibility of "entitlement to relief."

*Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 557). A claim only has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'--'that the pleader is entitled to relief.'" *Id.*; *see also Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). In such cases, the complaint should be dismissed pursuant to Rule 12(b)(6).

Applying this pleading standard to Plaintiffs' complaints requires dismissal of their personal injury claims against HESI. First, Plaintiffs' assertions of negligence and other torts, at best dressed-up legal conclusions, are not entitled to the assumption of truth. As such, the Court should disregard those conclusory assertions in its application of the *Twombly/Iqbal* standards. Second, the only remaining factual allegations entitled to the assumption of truth as to HESI are its corporate status and the fact that it was purportedly engaged in some unspecified cementing

operations.  Those factual allegations do not plausibly suggest an entitlement to relief and are not sufficient for the Court to draw any reasonable inference that HESI is liable for the incident aboard the Deepwater Horizon or Plaintiffs' alleged injuries.  *See Iqbal*, 129 S. Ct. at 1951.

Plaintiffs fail to plead any facts suggesting the plausibility of their claims as to HESI.[7] The absolute paucity of facts alleged as to HESI is a recurring theme among the Bundle A personal injury cases.  In particular, certain Plaintiffs allege *no facts* as to HESI other than its corporate status.  *See* Rhodes Complaint at ¶ 3 (2:10-cv-1502-CJB-SS); Murray Complaint at ¶ 3 (2:10-cv-2814-CJB-SS).[8]  Going a half-step further, Lavergne provides HESI's corporate status and alleges that it was the "well cement contractor" for BP.  *See* Lavergne Petition for Damages at ¶¶ 2 and 8 (2:10-cv-4211-CJB-SS).  Other Plaintiffs generally assert HESI's corporate status and only allege that HESI was engaged in nonspecific cementing activities (*e.g.*, cementing the well and well cap or cementing a cement plug).  *See* Williams First Amended Complaint at ¶¶ 1, 7 (2:10-cv-1243-CJB-SS); Taquino Complaint at ¶¶ 1, 12, 30 (2:10-cv-1921-CJB-SS); Crawford Class Action Complaint at ¶¶ 1, 17 (2:10-cv-1540-CJB-SS); Michelle Jones First Amending Complaint at ¶¶ 1, 7 (2:10-cv-1196-CJB-SS); Davis Second Amended Complaint at ¶¶ II, V (2:10-cv-3169-CJB-SS); Roberts Complaint at ¶¶ 1, 13 (2:10-cv-3815-CJB-SS); Stone Petition in Intervention at ¶¶ 5, 13;  Choy Third Amended Original Petition in Intervention at ¶¶ 5, 18; Ussin Original Petition in Intervention at ¶¶ 5, 19; Brown First Amended Petition in Intervention at ¶¶5, 18; Mansfield Original Petition in Intervention at ¶¶ 5, 18; Kritzer Fifth Amended Petition at ¶¶ 24, 25, 31 (2:10-cv-4427-CJB-SS); Ireland Petition in Intervention at ¶¶ 12, 13,

---

[7] The pleading standard under *Twombly/Iqbal* necessarily "requires some articulation of the duty owed in these circumstances and how, as a factual matter, it was breached."  *See Procentury Ins. Co. v. Harbor House Club Condo. Ass'n, Inc.*, 652 F. Supp. 2d 552, 560 (D.N.J. 2009).

[8] That is, these plaintiffs articulate absolutely no facts whatsoever regarding what HESI supposedly did or did not do, its role on the DEEPWATER HORIZON, if any, or any connection to the events giving rise to their purported-yet-unspecified injuries.  Plaintiffs Francis, Benton and Ramos do not even allege HESI's corporate status.  *See* Francis', et al., Petition in Intervention.

19;[9] Jones Original Petition at ¶¶ II, VII (2:10-cv-3184-CJB-SS); Faulk Original Petition at ¶¶ II,

VII (2:10-cv-4227-CJB-SS); Benton Original Petition at ¶¶ II, VII (2:10-cv-4226-CJB-SS); John

Original Petition at ¶¶ II, VII (2:10-cv-4229-CJB-SS); Morales Original Petition at ¶¶ 10, 15, 20

(2:10-cv-4360-CJB-SS); Roshto Second Amended Complaint at ¶¶ 1(G), 7(b) (2:10-cv-1156-

CJB-SS).[10]  Finally, a few plaintiffs allege that HESI was "engaged in cementing operations of

the well and well cap" and increased "the pressure at the well."  *See* Becnel Complaint at ¶¶ 1, 13

(2:10-cv-3066-CJB-SS); Reed Petition for Damages at ¶¶ 1, 17 (2:10-cv-4252-CJB-SS); Roberts

Complaint at ¶ 13 (2:10-cv-3815-CJB-SS).

  In short, Plaintiffs vaguely allege that they sustained personal injuries from the fire,

explosion, and/or evacuation, and that one or more of the defendants did something unspecified

to cause it.  Plaintiffs offer little more than general assertions of "joint" or "collective"

negligence without any HESI-specific factual basis.[11]  That is not nearly enough to sustain a

viable cause of action against HESI.  *See Procentury Ins. Co.*, 652 F. Supp. 2d at 560-61

(holding that plaintiff did not sufficiently plead claims under *Twombly*/*Iqbal* where it simply

lumped the defendants together with no factual allegations as to specific defendant).  As the

Supreme Court observed, a plaintiff must offer "more than an unadorned, the-defendant-

unlawfully-harmed-me accusation."  *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 570)

---

[9]  In equally conclusory fashion without any factual particulars, the Kritzer plaintiffs also generically allege that Sperry "was charged with real time gas monitoring, but failed to safely perform this function."

[10]  Roshto also pleads only the corporate status of Sperry-Sun Drilling Services, Inc. and the general statement that it was "engaged in monitoring gas levels."  *See* Roshto Second Amended Complaint at ¶¶ 1(H), 7(b).

[11]  In *Davis*, for example, Plaintiffs allege that "Halliburton was a contractor working on the Vessel engaged in cementing operations of the well and well cap and, upon information and belief, improperly and negligently performed those duties, allowing pressure to escape the well, leading to the blowout (sic) and fire."  Second Amended Petition at ¶ V.  Then, Plaintiffs postulate that their injuries "were cause by the joint negligence and fault of the Defendants in the following non-exclusive particulars", including "[c]onducting well and well cap cementing operations improperly."  *Id.* ¶ VII.  They offer no specifics or any supporting facts, instead relying exclusively on a general assertion of HESI's role on the vessel and the conclusion that it was (somehow) negligent.  *See also* Jones Original Petition at ¶¶ VII, IX (2:10-cv-3184-CJB-SS); Faulk Original Petition at ¶ VII (2:10-cv-4227-CJB-SS); Benton Original Petition at ¶ VII (2:10-cv-4226-CJB-SS); John Original Petition at ¶ VII (2:10-cv-4229-CJB-SS).

(emphasis added).   Thus, under *Twombly*, *Iqbal* and their progeny, the Court should dismiss

Plaintiffs' personal injury claims against HESI in their entirety under Rule 12(b)(6).

4.      **Plaintiffs' claims against HESI for nonpecuniary and punitive damages are not legally viable under the Jones Act or general maritime law.**

Plaintiffs seek, among other things, to recover nonpecuniary damages from HESI.[12]

Although a federal remedy for wrongful death now exists under general maritime law, Congress

and the courts have "limited survivors to recovery of their pecuniary losses."  *See Miles*, 498

U.S. at 32-33.   Recognizing the need for uniformity and consistency, the Supreme Court in

*Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618 (1978) refused to permit the recovery of

nonpecuniary damages in nonstatutory wrongful death claims under general maritime law since

such remedy was excluded by Congress in statutory claims, stating as follows:

> Congress did not limit [Death on the High Seas Act] beneficiaries to recovery of their pecuniary losses in order to encourage the creation of nonpecuniary supplements.  There is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted.   In the area covered by the statute, it would be no more appropriate to prescribe a different measure of damages than to prescribe a different statute of limitations, or a different class of beneficiaries. . . . [W]e have no authority to substitute our views for those expressed by Congress in a duly enacted statute.  *See Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 215 (1996) ("When Congress has prescribed a comprehensive tort recovery regime to be uniformly applied, there is, we have generally recognized, no cause for enlargement of the damages statutorily provided.").

*Higginbotham*, 436 U.S. at 625-26.  In accordance with *Higginbotham*, "loss of society damages

are not recoverable by [survivors] in a wrongful death action under general maritime law." *See*

*Scarborough v. Clemco Indus.,* 391 F.3d 660, 666 (5th Cir. 2004); *Tucker v. Fearn,* 333 F.3d

1216, 1218 (11th Cir. 2003); *Miles*, 498 U.S. at 31-33.  Such damages are not recoverable under

DOHSA or the Jones Act either.  *Id.*   Likewise, lost future earnings of the decedent are not

---

[12]  Roshto Complaint at ¶ 17 (2:10-cv-1156); Jones Complaint at ¶ 13 (2:10-cv-3184); Lavergne Petition for Damages at ¶ 18 (2:10-cv-4211); Crawford Class Action Complaint at ¶¶ 49, 67 (2:10-cv-1540); Reed Petition for Damages at ¶¶ 24, 25 (2:10-cv-4252); Rhodes Complaint at ¶¶ 13, 14 (2:10-cv-1502); Murray Complaint at ¶¶ 14, 15 (2:10-cv-2814); Roberts Complaint at ¶¶ 18, 19 (2:10-cv-3815); Michelle Jones First Amending Complaint at ¶ 13 (2:10-cv-1196); Taquino Complaint at ¶¶ 33, 36 (2:10-cv-1921).

recoverable.  *See Myles,* 498 U.S. at 36; *Davis v. Bender Shipbuilding & Repair Co.,* 27 F.3d 426, 430 (9th Cir. 1994).  It is well-established that "loss of society and future earnings may not be recovered in a seaman's wrongful death and survival action, whether brought under the Jones Act, the Death on the High Seas Act ("DOHSA") or general maritime law."  *La Voie*, 797 F. Supp. at 829.  Nor are punitive damages recoverable.  *Id.* at 831.  Quite simply, "nonpecuniary damages are not available to survivors of seamen under the general maritime law."  *Kelly v. Bass Enterps. Prod. Co.*, 17 F. Supp. 2d 591, 595 (E.D. La. 1998).

Similarly, Jones Act seamen cannot recover nonpecuniary damages under the Jones Act or general maritime law for personal injury.  *See Murray v. Anthony J. Bertucci Constr. Co.,* 958 F.2d 127, 130 (5th Cir. 1992); *Michel v. Total Transp., Inc.* 957 F.2d 186, 191 (5th Cir. 1992); *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 215 (1996) ("When Congress has prescribed a comprehensive tort recovery regime to be uniformly applied, there is, we have generally recognized, no cause for enlargement of the damages statutorily provided.").  This is true whether the claims are against an employer under the Jones Act or a non-employer defendant under the general maritime law.  *Scarborough v. Clemco Indus.*, 391 F.3d 660, 666 (5th Cir. 2004);  *Holman v. Applied Drilling Tech.*, No. H-05-3830, 2007 U.S. Dist. LEXIS 3665, at *8 (S.D. Tex. 2007)(Judge Miller).  Nor are punitive damages recoverable.  *See Ellison v. Messerschmitt-Bolkow-Blohm,* 807 F. Supp. 39, 41 (E.D. Tex. 1992*).*  Plaintiffs, therefore, cannot recover nonpecuniary damages or punitive damages against HESI under either general maritime law, DOHSA or the Jones Act, and the Court should dismiss all such claims.

Assuming *arguendo*, for purposes of this Omnibus Memorandum only, that Plaintiffs are somehow found to not be Jones Act seamen, their claims for punitive damages are still not legally sufficient.  Under general maritime law, punitive damages are limited to cases where the

defendant's conduct is outrageous owing to gross negligence; willful, wanton and reckless indifference; or behavior even more deplorable. *See Exxon Shipping Co. v. Baker,* 554 U.S. 471, 586 (2008). Plaintiffs fail to allege *any* facts sufficient to establish that HESI was in any way grossly negligent or acted with malice leading to Plaintiffs' injuries. Plaintiffs' vague reference to HESI's role in cementing and monitoring the well does not rise to specific facts, which, if true, would constitute gross negligence. For these reasons, Plaintiffs have no legally viable claim for these damages and the Court should dismiss all such claims against HESI for nonpecuniary or punitive damages as a matter of law.

5.      **The Court should dismiss Plaintiffs' claims against the HESI Defendants for *Res Ipsa Loquitor* because it is not a legally viable cause of action.**

In a number of the Bundle A personal injury cases, Plaintiffs include allegations invoking the doctrine of *res ipsa loquitor.* In particular, the following cases purport to raise such assertions:

- *Crawford v. BP, PLC, et al.,* Cause No. 2:10-cv-1540. *See* Class Action Complaint at ¶ 55.

- *Rhodes v. Transocean, Ltd., et al.,* Cause No. 2:10-cv-1502. *See* Complaint at ¶ 11.

- *Roshto v. Transocean, Ltd., et al., Cause No.* 2:10-cv-1156. *See* Second Amended Complaint at ¶ 16.

- *Jones v. Transocean, Ltd., et al.*, Cause No. 2:10-cv-01196. *See* First Amending Complaint at ¶ 12.

- *Taquino, et al. v. Transocean Holdings, LLC, et al.,* Cause No. 2:10-cv-01921. *See* Complaint at ¶ 31.

- *Murray v. Transocean, Ltd., et al.*, Cause No. 2:10-cv-02814. *See* Complaint at ¶ 11.

- *Becnel v. BP, PLC, et al.,* Cause No. 2:10-cv-03066. *See* Complaint at ¶ 19.

- *Reed v. BP, PLC, et al.*, Cause No. 2:10-cv-04252. *See* Petition for Damages at ¶ 23.

- *Jones, et al. v. Cameron International Corporation a/k/a Cameron System Corporation, et al.*, Cause No. 2:10-cv-3184. *See* Plaintiff's Original Petition at ¶ IX.

- *Faulk v. Transocean, Ltd., et al.*, Cause No. 2:10-cv-4227. *See* Plaintiff's Original Petition at ¶ VII.

- *Benton v. Transocean, Ltd., et al.*, Cause No. 2:10-cv-4226. *See* Plaintiff's Original Petition at ¶ VII.

- *John v. Transocean, Ltd., et al.*, Cause No. 2:10-cv-4229. *See* Plaintiff's Original Petition at ¶ VII.

To the extent that Plaintiffs assert the doctrine of *res ipsa loquitor* against HESI, which is not entirely clear from the Complaints, the doctrine does not apply and is improperly pleaded. The Supreme Court formulated a three-part test for application of *res ipsa loquitor* in an admiralty context: (1) the injured party was without fault; 2) the instrumentality causing the injury was under the exclusive control of the defendant; and 3) the mishap is of a type that ordinarily does not occur in the absence of negligence. *See Johnson v. United States*, 333 U.S. 46, 68 S. Ct. 391, 92 L. Ed. 468 (1948); *United States v. Nassau Marine Corp.*, 778 F.2d 1111, 1115 (5th Cir. 1985); *see also* Restatement (Second) of Torts § 328 D.

Plaintiffs have not alleged that HESI had exclusive control over the object which caused the injury – the DEEPWATER HORIZON and/or the Macondo Well. In fact, as outlined above, Plaintiffs concede that the DEEPWATER HORIZON, on which the explosion occurred, was owned, navigated, manned, possessed and controlled by others. By Plaintiffs' own admissions, HESI did not have exclusive control of the object which caused Plaintiffs' injury, thus Plaintiffs have failed to establish a necessary prerequisite of the doctrine of *res ipsa loquitor* and do not have a legally viable cause of action against HESI under that doctrine. Therefore, the Court should dismiss the allegations of *res ipsa loquitor* against HESI.

**6.    The Court Should Dismiss Plaintiffs' Claim For Products Liability Against HESI Because Plaintiffs Failed to Allege *Any* Facts In Support of Such Claims.**

Plaintiffs in three Bundle A personal injury lawsuits appear to bring products liability claims against HESI:

- *Rhodes v. Transocean, Ltd., et al.,* Cause No. 2:10-cv-1502. *See* Complaint at ¶ 12.
- *Murray v. Transocean, Ltd., et al.,* Cause No. 2:10-cv-2814. *See* Complaint at ¶ 12.
- *Crawford v. BP, P.L.C., et al.,* Cause No. 2:10-cv-1540. *See* Class Action Complaint at ¶ 50.

Specifically, Rhodes and Murray each allege that "this incident was caused by defective equipment that was manufactured or in the care, custody, and control of one or more of the defendants. Defendants knew or should have known of all these defects and defendants are, therefore, liable for them." *See Rhodes* Complaint at ¶12; *Murray* Complaint at ¶12. Similarly, Crawford alleges that "the fire, explosion and sinking of the Deepwater Horizon, and resulting oil spill, were caused by defective equipment, including the blowout valve or blowout preventer, which were in the care, custody, and control of Defendants." *See* Crawford Class Action Complaint at ¶ 50.

General maritime law governs both products liability actions based on negligence, and on strict liability. *See Sieracki v. Seas Shipping Co.,* 149 F.2d 98, 99-100 (3rd Cir. 1945), *aff'd on other grounds,* 328 U.S. 85 (1946) (negligence); *Pan-Alaska Fisheries, Inc. v. Marine Constr. & Design Co.,* 565 F.2d 1129, 1135 (9th Cir. 1977) (strict liability); *East River Steamship Co. v. Transamerica Delaval, Inc.,* 476 U.S. 858 (1986)) (same). Section 402A of the Restatement (Second) of Torts provides the standard for a strict products liability claim in a maritime lawsuit, requiring a plaintiff to prove: (1) that the defendant sold or manufactured the product; (2) that the product was in a defective condition and was unreasonably dangerous when it left the defendant's control; and (3) that the defect resulted in an injury to the plaintiff. *See Pan-Alaska Fisheries, Inc.,* 565 F.2d at 1135. Under maritime law, liability is also imposed upon sellers and manufacturers for failure to warn and for inadequate warnings. *Id.* A products liability claim is grounded in general maritime law principles and incorporates maritime negligence elements. *See East River Steamship Co.,* 476 U.S. at 866.

It is not clear from Plaintiffs' complaints whether their product liability claim against HESI and others is based on negligence or strict liability. Regardless, however, Plaintiffs have

failed to allege sufficient facts to support either claim.  To the extent Plaintiffs allege a strict liability claim, it fails because Plaintiffs have not alleged: (1) what product HESI sold or manufactured; (2) how this product was defective and unreasonably dangerous; or (3) how the defect in the product proximately caused Plaintiffs' injuries.  As explained in detail in Section 3 *supra*, the Plaintiffs' only factual allegations specific to HESI are that HESI "a division of Halliburton, is a foreign corporation doing business in the state of Louisiana."  Murray Complaint at 3 *(2:10-cv-2814)*; Rhodes Complaint at 3 (2:10-cv-1502).  Crawford only asserts HESI's corporate status and that it handled "the cementing operations on the Deepwater Horizon well and well cap."  Crawford Class Action Complaint at ¶¶ 11, 21 (2:10-cv-1540).  The rest of the allegations in the complaints lump all Defendants together and fail to state any facts to support a strict product liability claim against HESI.  Additionally, to the extent Plaintiffs' products liability claim is based on negligence, it fails as well, for the reasons explained in Section 3 *supra*.  Thus, this Court should dismiss Plaintiffs' products liability claims against HESI.

**7.      The Court should dismiss Plaintiffs' gross negligence and recklessness claims against HESI because they failed to allege any facts in support of such claims.**

Plaintiffs in the following lawsuits claim that HESI, along with other defendants, acted either in a reckless or grossly negligent manner or both:

- *Rhodes v. Transocean, Ltd., et al.*, Cause No. 2:10-cv-1502.  *See* Complaint at ¶ 9(L).
- *Jones v. Transocean, Ltd., et al.*, Cause No. 2:10-cv-1196.  *See* First Amending Complaint at ¶ 10.
- *Taquino, et al. v. Transocean Holdings, LLC, et al.,* Cause No. 2:10-cv-1921.  *See* Complaint at ¶ 36.
- *Lavergne v. Transocean, Ltd., et al.,* Cause No. 2:10-cv-4211.  *See* Petition for Damages at ¶ 18.
- *Murray v. Transocean, Ltd., et al.,* Cause No. 2:10-cv-2814.  *See* Complaint at ¶ 13.
- *Becnel v. BP, PLC, et al.,* Cause No. 2:10-cv-3066.  *See* Complaint at ¶ 13.

- *Reed v. BP, PLC, et al.,* Cause No. 2:10-cv-4252.  *See* Petition for Damages at ¶ 20.

- *Roberts v. BP, PLC, et al.,* Cause No. 2:10-cv-3815.  *See* Complaint at ¶ 16, 19.

- *Crawford, et al. v BP, PLC, et al.*, Cause No. 2:10-cv-1540. *See* Class Action Complaint at ¶¶ 45, 53.

- *Davis,* Cause No. 2:10-cv-1852.  *See* Second Amended Petition at ¶ VIII.

- *Kleppinger v. Transocean Offshore Deepwater Drilling, Inc., et al.,* Cause No. 2:10-cv-3168.  *See* Fourth Amended Original Petition at ¶ 25.  *See also* Choy Third Amended Original Petition in Intervention at ¶ 31; Ussin Original Petition in Intervention at ¶ 33; Brown's First Amended Petition in Intervention at ¶ 30; Mansfield Original Petition in Intervention at ¶ 30.

- *Kritzer v. Transocean Offshore Deepwater Drilling, Inc., et al.,* Cause No. 2:10-cv-4427. *See* Kritzer Fifth Amended Petition at ¶¶ 32, 35; Ireland Petition in Intervention at ¶¶ 20, 23.

- *Jones, et al. v. Cameron International Corporation a/k/a Cameron System Corporation, et al.*, Cause No. 2:10-cv-2354.  *See* Original Petition at ¶ X.

- *Faulk v. Transocean, Ltd., et al.,* Cause No. 2:10-cv-4227.  *See* Original Petition at ¶ VII.

- *Benton v. Transocean, Ltd., et al.,* Cause No. 2:10-cv-4226.  *See* Original Petition at ¶ VII.

- *John v. Transocean, Ltd., et al.,* Cause No. 2:10-cv-4229.  *See* Original Petition at ¶ VII.

- *Morales v. BP Exploration and Production, Inc.*, Cause No. 2:10-cv-4360.  *See* Original Petition at ¶¶ 21, 24.

These Plaintiffs, however, simply state in a conclusory manner that HESI was reckless or grossly negligent.  They allege *no elements* supporting either of those claims and allege *no facts* suggesting these particular claims are plausible against HESI.  In maritime cases, the Fifth Circuit defines gross negligence as "harm willfully inflicted or caused by gross or wanton negligence."  *See Coastal Iron Works, Inc. v. Petty Ray Geophysical Div. of Geosources, Inc.,* 783 F.2d 577, 582 (5th Cir. 1986) (quoting *Todd Shipyards Corp. v. Turbine Serv., Inc.*, 674 F.2d 401, 411 (1982) (quoting 6A Corbin on Contracts § 1472 (1964 ed.))); *see also* Black's Law Dictionary 1057 (7th ed. 1999) (defining gross negligence as "[a] lack of slight diligence or care . . . [a] conscious, voluntary act or omission in reckless disregard of a legal duty").  As noted above, however, Plaintiffs fail to allege *any facts* that could conceivably support a plausible

finding of gross negligence or recklessness by HESI. They allege no facts beyond the generic claim that HESI was responsible for nonspecific cementing, and then aver in conclusory fashion that some unspecified acts or omissions by HESI somehow caused or contributed to the fire, explosion, and/or personal injuries, and that such unspecified acts and omissions were grossly negligent and/or reckless. To survive a Rule 12(b)(6) challenge, however, the "complaint must contain sufficient factual material, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949. As the Fifth Circuit explained, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss. *See Taylor*, 296 F.3d at 378. The Plaintiffs further fail in pleading these claims because they group HESI along with other defendants without specifying which defendant did what and how each defendant was reckless and/or grossly negligent. *See Procentury Ins. Co.*, 652 F. Supp. 2d at 560-61 (holding that plaintiff did not sufficiently plead claims under *Twombly*/*Iqbal* where it simply lumped the defendants together with no factual allegations as to specific defendant).

Thus, under *Twombly*, *Iqbal* and their progeny, the Court should dismiss Plaintiffs' gross negligence and recklessness claims against HESI in their entirety under Rule 12(b)(6).

## 8.   Plaintiffs' strict liability claims against HESI for an ultra hazardous condition should be dismissed because they do not state a legally viable claim.

Plaintiff Crawford's claims against HESI for strict liability due to alleged ultra hazardous activity should be dismissed because general maritime law precludes asserting such claims. Initially, strict liability is only viable under general maritime law in the context of products liability. *See East River S.S. Corp.*, 476 U.S. at 865 ("We join the Courts of Appeals in recognizing products liability, including strict liability**,** as part of the general maritime law."); *see also EAC Timberlane v. Pisces, Ltd.,* 745 F.2d 715, 722 n.13 (1st Cir. 1984) (rejecting plaintiffs'

argument that the doctrine of strict liability has been incorporated into admiralty law, and noting that only strict products liability, which had been uniformly adopted by all of the states, supported incorporation). General maritime law does not recognize a strict liability action for an ultra-hazardous condition. Thus, to the extent that general maritime law governs Plaintiffs' claims, which it does, Plaintiffs have no viable strict liability claims against HESI.

Failing under general maritime law, Plaintiffs cannot rely on state law here to assert viable strict liability claims based on allegedly ultra-hazardous activities. As a starting point, HESI recognizes that the exercise of federal admiralty jurisdiction does not necessarily displace the application of state law. *See Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 545 (1995). "Whether a state claim is litigated in federal court or a state forum, 'the extent to which state law may be used to remedy maritime injuries is constrained by a so-called 'reverse-Erie' doctrine which requires that the substantive remedies afforded by the States conform to governing federal maritime standards." *In re Complaint of Nautilus Motor Tanker Co., Ltd.*, 900 F. Supp. 697, 702 (D.N.J. 1995) (internal quotations omitted). State law is preempted by general maritime law where a state remedy contravenes an essential purpose expressed by an act of Congress, works material prejudice to the characteristic features of the general maritime law, or interferes with the proper harmony and uniformity of that law in its international and interstate relations. *Am. Dredging Co. v. Miller*, 510 U.S. 443, 447 (1994); *S. Pac. Co. v. Jensen*, 244 U.S. 205, 216 (1917). In this action against HESI for strict liability, the well-defined general maritime law governing maritime torts and requiring a finding of fault and causation as a predicate to liability preempts state law. *See Great Lakes Dredge & Dock Co. v. City of Chicago*, 92 C 6754, 1996 U.S. Dist. LEXIS 5553, at *5 (N.D. Ill. Apr. 26, 1996) (quoting *Md. Dep't of Natural Res. v. Kellum*, 51 F.3d 1220, 1224 (4 Cir. 1995)).

Further, in *Fletcher v. Conoco Pipe Line Co.*, 129 F. Supp. 2d 1255, 1260 (W.D. Mo. 2001), the court dismissed plaintiffs' strict liability claim at the motion to dismiss stage because plaintiffs failed to meet their "burden of coming forward with facts sufficient to support a theory of strict liability" based upon an analysis of *Restatement (Second) of Torts* § 520 (1977).  Section 520 of the Restatement requires consideration of six factors in determining whether an activity is abnormally dangerous:

> (a) the existence of a high degree of risk of some harm to the person, land or chattels of others;
> (b) the likelihood that the harm that results from it will be great;
> (c) the inability to eliminate the risk by the exercise of reasonable care;
> (d) the extent to which the activity is not a matter of common usage;
> (e) the inappropriateness of the activity to the place where it is carried; and
> (f) the extent to which its value to the community is outweighed by its dangerous attributes.

Plaintiff Crawford asserts claims of strict liability against HESI, but fails to provide factual allegations, accepted as true, to substantiate a claim for relief that is plausible on its face.  Plaintiff alleges that the "drilling of highly volatile and toxic fuel" constitutes an abnormally hazardous or ultra-hazardous activity.  *See* Crawford Class Action Complaint at ¶ 59 (2:10-cv-01540).  But Plaintiff offers no other allegations and the Complaint does not contain sufficient facts to state a viable cause of action for strict liability against HESI or to preempt the requirement in general maritime law that Plaintiffs must show fault and causation.

General maritime law does not recognize strict liability claims other than for products liability and Plaintiff's conclusory allegations are not sufficient to preempt long-standing and well-established general maritime law.  As such, Plaintiff's claim for strict liability should be dismissed as a matter of law.

**9.     Plaintiffs do not have a legally viable claim for intentional infliction of emotional distress.**

Based on their allegations and the underlying circumstances giving rise to this litigation, Plaintiffs do not state a legally viable claim against HESI for intentional infliction of emotional distress. Pursuant to 46 U.S.C. § 30303, the recovery for Jones Act seamen shall be a fair compensation for the pecuniary loss sustained by the individual for whose benefit the action is brought. Importantly, since the Jones Act limits recovery of damages in intentional infliction of emotional distress cases to situations in which the plaintiff was in the "zone of danger," recovery in those cases is limited under general maritime law as well. *Id*; *see also Szymanski v. Columbia Trans. Co.*, 154 F.3d 591, 594 (6th Cir. 1998). The zone of danger test limits recovery for emotional injury to those plaintiffs who sustain a physical impact as a result of a defendant's conduct, or who are placed in immediate risk of physical harm by that conduct. *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532 (1994). That is, "those within the zone of danger of physical impact can recover for fright, and those outside of it cannot." *Id.* at 547-48.

Plaintiff Stone alleges that "[d]efendants acted intentionally and/or recklessly to keep knowledge of her husband's condition from her", causing emotional distress. *See* Stone Petition in Intervention at ¶ 19, *Kleppinger,* 2:10-cv-3168. Not only does she fail to plead any facts suggesting HESI's involvement and/or potential liability, following the zone of danger test, Stone does not have a legally viable claim for intentional infliction of emotional distress because she does not allege any facts showing that she sustained a physical impact as a result of any defendant's conduct, or was placed in immediate risk of physical harm by the alleged conduct. She was not within the zone of danger. Thus, Plaintiff's claim for intentional infliction of emotional distress against HESI is not legally viable and should be dismissed.

**10.     The Court Should Dismiss Certain Plaintiffs' Wrongful Death Claims Against HESI Because Plaintiffs Lack Standing to Sue Under the Jones Act, DOHSA or General Maritime Law**

Plaintiffs have filed claims arising from the deaths of 4 of the 11 decedents to have presumably perished on the DEEPWATER HORIZON.  The Jones Act authorizes the personal representative of a seaman's estate to bring an action for wrongful death.  46 U.S.C. § 30104.  "[I]t is a well accepted legal principle of admiralty law that a cause of action under the Jones Act and/or general maritime law can only be asserted by the personal representative of the decedent and not by the beneficiaries of the claim."  *Shaffett v. Marquette Transp. Co., LLC*, 2010 U.S. Dist. LEXIS 105437, 6-8 (E.D. La. 2010) (*citing Moragne v. States Marine Lines, Inc.,* 398 U.S. 375, 389 (1970)); *see also Tidewater Marine Towing, Inc. v. Dow Chem. Co., Inc.*, 689 F.2d 1251, 1253 (5th Cir. 1982).  Similarly, the Death on the High Seas Act provides that "the personal representative of the decedent may bring a civil action in admiralty against the person or vessel responsible.  The action shall be for the exclusive benefit of the decedent's spouse, parent, child, or dependent relative."  46 U.S.C. § 30302.  Therefore, "the right to bring an action under the Death on the High Seas Act rests exclusively with the decedent's personal representative."  *Daigle v. Bell Helicopter Textron*, 1987 U.S. Dist. LEXIS 10167 (E.D. La. 1987).  A "personal representative", importantly, is the court-approved executor or administrator of the decedent's estate.  *See Calton v. Zapata Lexington, et, al.*, 811 F.2d 919, 921 (5th Cir. 1987).  The personal representative then must hold any recovery in trust for the beneficiaries named in the Act.  *Id*. at  922; *see also Shaffett*, 2010 U.S. Dist. LEXIS 105437, 6-8*.

Notwithstanding this well-established limitation, the following alleged beneficiaries have asserted wrongful death claims against HESI, but have not sued in their capacity as a court-approved executor or administrator of the estates of the respective decedents:

- Becnel alleges that "[a]t all material times, plaintiff was married to Keith Blair Manuel who was a member of the crew of the DEEPWATER HORIZON.  Mr. Manuel was employed as a Jones Act seaman."  Complaint at ¶ 3.  At no point in her Complaint does she allege that she is the personal representative,

adminstratrix or executrix of the estate of decedent, Keith Blair Manuel.  (In fact, another Plaintiff herein, Ms. Taquino, alleges she is the personal representative of Decedent Manuel's estate.)  Cause No. 2:10-cv-3066.

- Although Manchester and Manuel sue along with their sister, Kelli Manuel Taquino, neither asserts that they are personal representatives, administrators or executors of decedent Keith Blair Manuel's Estate.  Cause No. 2-10-cv-1921.

- Michelle Jones likewise fails to allege that she is the personal representative, adminstratrix or executrix of the estate of decedent Gordon Lewis Jones.  Instead, she sues "individually and on behalf of her minor son, Stafford Hess Jones."  She further alleges that "[a]t all times pertinent herein, including April 20, 2010, Michelle M. Jones was married to and living with Gordon Lewis Jones."  First Amending Complaint at ¶¶ 1, 3.  Cause No. 2:10-cv-01196.

- Although Plaintiff Burkeen alleges she is the personal representative of the Estate of Decedent Aaron Dale Burkeen, she does not allege that she is the Court-appointed administrator or executor of the estate.  Cause No. 2:10-cv-4427.

- Plaintiff Arnold alleges she is the mother of decedent Shane Roshto.  Although she alleges that she was financially dependent on decedent, she does not allege that she is the administrator or executor of his estate.  Cause No. 2:10-cv-4427.

- Plaintiff Roshto brings her suit individually and as personal representative of Shane Roshto and her minor son, Blaine Roshto.  At no point in her Second Amended Complaint, however, does she allege that she is the personal representative, administrator or executor of decedent's estate.  Cause No. 2:10-cv-1156.

These Plaintiffs do not allege sufficient facts suggesting that they have standing to sue for claims under the Jones Act or general maritime law arising from the deaths of their respective decedents.  As a result, the Court should dismiss their claims against HESI as a matter of law.

**11.     The Court should dismiss Plaintiffs' claims against Sperry-Sun Drilling Services, Inc. because there is no legally viable cause of action against a terminated entity.**

Plaintiffs in the following lawsuits name Sperry-Sun Drilling Services, Inc. as a defendant and allege that it is a subsidiary of HESI:

- *Roshto v. Transocean, Ltd., et al.,* Cause No. 2:10-cv-1156.  *See* Second Amended Complaint at ¶¶ 1(H), 7(b).

- *Williams v. Transocean, Ltd., et al.*, Cause No. 2:10-cv-1243.  *See* First Amended Complaint at ¶¶ 1(H), 7, 8.

- *Rhodes v. Transocean, Ltd., et al.,* Cause No. 2:10-cv-1502.  *See* Original Complaint at ¶ 3(M).[13]

- *Kritzer v. Transocean Offshore Deepwater Drilling, Inc., et al.,* Cause No. 2:10-cv-4427.  *See* Kritzer Fifth Amended Petition at ¶ 25; Ireland Petition in Intervention at 13.

- *Morales v. BP Exploration and Production, Inc., et al.*, Cause No. 2:10-cv-4360.  *See* Original Petition at 15.

However, Sperry-Sun Drilling Services, Inc. ("Sperry") no longer exists as a corporate entity since it was dissolved on October 31, 1997.  *See* Certificate of Dissolution by the Office of the Secretary of State, State of Delaware (Oct. 31, 1997), attached hereto as Exhibit A.  Sperry Drilling is simply a division within Halliburton and is not a separate legal entity.

Since Sperry was dissolved many years ago, it cannot be liable for claims that occurred after its dissolution.  TEX. BUS. ORGS. CODE § 11.351 ("A terminated filing entity is liable only for an existing claim"); La R. S. 12:147D (providing a three-year window for any claims against the corporation after its dissolution).  Plaintiffs' claims arose more than a decade after Sperry had dissolved, therefore, they have no viable causes of action or claims against it.  *See Landrum v. Thunderbird Speedway*, 97 S.W. 2d 756, 758-59 (Tex. App.–Dallas 2003, no pet.) (summary judgment proper against a family that sued the former owner of a race track for a fatal accident that occurred after the company's dissolution).  Further, Plaintiffs have no common law right to sue Sperry as a dissolved corporation.  *See Hunter v. Ft. Worth Capital Corp.*, 620 S.W.2d 547, 549 (1981) ("Once dissolved, the corporation could neither sue nor be sued, and all legal proceedings in which it was a party abated."); *Anderson v. Hodge Boats & Motors, Inc.*, 814 S.W.2d 894, 896 (Tex. Civ. App.–Beaumont 1991, writ denied) ("Common law does not provide

---

[13] Although listed as a party Defendant in his Complaint, Plaintiff Rhodes voluntarily dismissed Sperry-Sun Drilling Services, Inc. on August 31, 2010.

redress against a corporation which has ceased to exist.").   Thus, the Court should dismiss all

claims against Sperry with prejudice.

**12.   Plaintiffs' claims against Halliburton Company should be dismissed under Rule 12(b)(2) because the Court lacks personal jurisdiction over Halliburton Company.**

In her action originally filed in the Eastern District of Louisiana, Plaintiff Michelle Jones

names Halliburton Company ("HALCO") as a defendant and alleges that HALCO is "a foreign

corporation authorized to do and/or doing substantial business in Louisiana and within this

judicial district."   Jones First Amending Petition at ¶ 1(H) (2:10-cv-1196).   Plaintiff, of course,

bears the burden to demonstrate that the exercise of personal jurisdiction over HALCO, a foreign

corporation, comports with due process.   *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 625 (5th

Cir. 1999); *Caldwell v. Palmetto State Sav. Bank of South Carolina*, 811 F.2d 916, 917 (5th Cir.

1987).   In making its determination, the Court is not restricted to pleadings, but may consider

affidavits or any other appropriate method of discovery.   *Jobe v. ATR Marketing, Inc.*, 87 F.3d

751, 752 (5th Cir. 1996).   As the Louisiana Supreme Court has recognized, "the sole inquiry in

Louisiana into jurisdiction over a nonresident is whether the assertion of jurisdiction complies

with constitutional due process."   *Fox v. Board of Sup'rs of Louisiana State Univ. and Agric.*

*And Mechan. College*, 576 So.2d 978 (La. 1991).

In this context, due process "requires that in order to subject a nonresident defendant to

personal jurisdiction, the defendant must have certain minimum contacts with the forum state

such that the maintenance of the suit does not offend traditional notions of fair play and

substantial justice."   *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945); *Asahi Metal Indus. Co.*

*v. Superior CT*, 480 U.S. 102, 108-09 (1987); *De Reyes v. Marine Mgt. and Consulting*, 586

So.2d 103 (La. 1991).   These minimum contacts "must be based on some act by the defendant

through which he purposefully avails himself of the privilege of conducting activities within the

state and thereby invokes the benefits and protections of the state's law." *Boatwright v. Metropolitan Life Ins. Co.*, 661 So.2d 169, 171, 95-1822 (La. App. 4 Cir. 9/28/95) (*citing Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)). By requiring an act *by the defendant*, the law "ensures that the defendant will not be haled into a jurisdiction solely as a result of a random, fortuitous, or attenuated contact, or by the unilateral activity of another party or a third person." *Id.* (*citing De Reyes*, 586 So.2d at 106). *See also International Shoe*, 326 U.S. at 317-19.

Notably, the burden of proving that a defendant has minimum contacts with the forum sufficient to justify an exercise of personal jurisdiction in that forum lies with the plaintiff. *Boatwright*, 661 So.2d at 171. If a plaintiff meets this burden, the defendant is then afforded an opportunity to show that even considering these minimum contacts, the exercise of personal jurisdiction by the court does not comport with "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 315. Ultimately, "[t]he relationship between the nonresident and the state must be such that it would be reasonable to require the nonresident to defend the suit in that state." *Id.*

Here, consideration of these prevailing due process concerns demonstrates that the Court lacks personal jurisdiction over HALCO. Importantly, HALCO does not have any contacts with the forum and has not availed itself of the privilege of conducting activities within the State of Louisiana. Indeed, HALCO has no office in Louisiana; does not employ any person(s) within Louisiana; has no registered agent for service of process in Louisiana; does not (and has not ever) transacted business within Louisiana; and has never taken any actions connected to the instant dispute within Louisiana. *See* Affidavit of Christina Ibrahim, attached hereto as Exhibit B. In short, HALCO has no contacts with the State in which the action was originally filed (which is also the State in which this Court is presiding over MDL-2179), and there is no

reasonable basis upon which it could have anticipated that it would be called into court here.  As such, Plaintiff cannot meet her burden of establishing the Court's personal jurisdiction over HALCO, and the Court should dismiss all claims against HALCO with prejudice for want of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).

### CONCLUSION

For all the reasons set forth above, on the face of the pleadings Plaintiffs have failed to plead a viable wrongful death or personal injury claim against Halliburton Energy Services, Inc. as a matter of law.  Pursuant to Rule 12(b)(6), the Court, therefore, should dismiss Plaintiffs' claims against Halliburton Energy Services, Inc. in their entirety.  Further, pursuant to Rule 12(b)(2), the Court should dismiss all claims against Halliburton Company because the Court lacks personal jurisdiction over it.

Respectfully Submitted,

GODWIN RONQUILLO PC

By: /s/ Donald E. Godwin
Donald E. Godwin, T.A.
dgodwin@godwinronquillo.com
Bruce W. Bowman, Jr.
bbowman@godwinronquillo.com
Jenny L. Martinez
jmartinez@godwinronquillo.com
Floyd R. Hartley, Jr.
fhartley@godwinronquillo.com
Gavin Hill
ghill@godwinronquillo.com
1201 Elm Street, Suite 1700
Dallas, Texas 75270-2041
Telephone: 214.939.4400
Facsimile: 214.760.7332

and

R. Alan York
ayork@godwinronquillo.com
Jerry C. von Sternberg
jvonsternberg@godwinronquillo.com
1331 Lamar, Suite 1665
Houston, Texas 77010
Telephone: 713.595.8300
Facsimile: 713.425.7594

ATTORNEYS FOR DEFENDANT
HALLIBURTON ENERGY SERVICES, INC.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing Omnibus Memorandum to HESI's Motion to Dismiss Plaintiffs' Personal Injury Complaints has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12 on this 11th day of February, 2011.


  /s/  Floyd R. Hartley, Jr.
Floyd R. Hartley, Jr.