## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater | : | MDL No. 2179 |
| Horizon" in the Gulf of Mexico, on | : | |
| April 20, 2010 | : | SECTION: J |
| | : | |
| This Document Relates To: Roshto v. | : | JUDGE BARBIER |
| Transocean, Ltd., et al. | : | MAGISTRATE SHUSHAN |
| …………………………………………….. | : | |

### THE BP PARTIES' ANSWER TO SHANE AND
### NATALIE ROSHTO'S SECOND AMENDED COMPLAINT

Defendants BP p.l.c., BP Products North America Inc. ("BPPNA"), and BP Exploration

& Production Inc. ("BPXP") (collectively, "the BP Parties"), by their undersigned counsel, and

pursuant to Rule 8 of the Federal Rules of Civil Procedure, hereby answer the Second Amended

Complaint filed by Natalie Roshto, individually and as personal representative of Shane Roshto

and her minor son, Blaine Roshto, as follows:

1.

Made defendants herein are:

(A)   TRANSOCEAN, LTD, (TRANSOCEAN ENTITY), is a foreign
corporation doing business in the State of Louisiana;

(B)   TRANSOCEAN OFFSHORE DEEPWATER DRILLING,
INC., (TRANSOCEAN ENTITY), is a foreign corporation doing business in
the State of Louisiana;

(C)   TRANSOCEAN DEEPWATER, INC. (TRANSOCEAN ENTITY), is a
foreign corporation doing business in the State of Louisiana;

(D)   BP, PLC (BP ENTITY), is a foreign corporation doing business in the
State of Louisiana;

(E)   BP PRODUCTS NORTH AMERICA, INC. (BP ENTITY), is a foreign
corporation doing business in the State of Louisiana;

(F)     BP EXPLORATION AND PRODUCTION, INC. (BP ENTITY), is a foreign corporation doing business in the State of Louisiana;

(G)     HALLIBURTON ENERGY SERVICES, INC., (HALIBURTON ENTITY), hereinafter referred to as "Halliburton," is a foreign corporation doing business in the State of Louisiana;

(H)     SPERRY DRILLING SERVICES, (HALIBURTON ENTITY), a division of Haliburton, hereinafter referred to as "Sperry," is a foreign corporation doing business in the State of Louisiana;

(I)     WEATHERFORD INTERNATIONAL LTD., hereinafter referred to as "Weatherford," is a foreign corporation doing business in the State of Louisiana;

(J)     CAMERON INTERNATIONAL CORPORATION D/B/A CAMERON SYSTEMS CORPORATION, hereinafter referred to as "Cameron," is a foreign corporation doing business in the State of Louisiana;

(K)     TRITON ASSET LEASING GMBH, hereinafter referred to as "TRITON" and/or a "TRANSOCEAN ENTITY," is a foreign corporation doing business in the State of Louisiana;

(L)     TRITON HUNGARY ASSET MANAGEMENT LIMITED LIABILITY COMPANY, hereinafter referred to as "TRITON" and/or a "TRANSOCEAN ENTITY," is a foreign corporation doing business in the State of Louisiana;

(M)     TRITON HUNGARY ASSET MANAGEMENT KFT, hereinafter referred to as "TRITON" and/or a "TRANSOCEAN ENTITY," is a foreign corporation doing business in the State of Louisiana;

(N)     TRANSOCEAN HOLDINGS, LLC, hereinafter also referred to as a "TRANSOCEAN ENTITY," is a foreign corporation doing business in the State of Louisiana; and

(O)     MI SWACO, is a foreign corporation doing business in the State of Louisiana.

**ANSWER**

The BP Parties admit that BP p.l.c is a foreign corporation, and that BPPNA and BPXP are foreign corporations authorized to and doing business in Louisiana.  The BP Parties deny that BP p.l.c. does business in Louisiana.  The BP Parties lack knowledge or information sufficient to

form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

2.

The jurisdiction of this Honorable Court is based upon the provisions of 28 U.S.C. 1333(1), and is being brought pursuant to the provisions of 46 U.S.C. Section 30104 ("The Jones Act") and the provisions of the general maritime law and general maritime products liability law.

**ANSWER**

The BP Parties admit that Plaintiff purports to bring this action pursuant to 46 U.S.C. § 30104 and the general maritime laws and general maritime products liability laws.  The BP Parties deny that Plaintiff has stated a valid claim pursuant to 46 U.S.C. § 30104 or the general maritime laws and general maritime products liability laws or that Plaintiff is entitled to any relief.  The BP Parties further deny that BPPNA and BP p.l.c. are proper parties to this litigation. BPPNA is an entity primarily involved in downstream operations such as crude oil refineries, and transportation and marketing of refined products such as gasoline, and had no employees on the *Deepwater Horizon,* was not a party to the drilling rig contract with Transocean, and had nothing to do with exploration activity involving the Macondo Well or the April 20, 2010 incident or resulting oil spill.  Similarly, BP p.l.c. did not own the MC 252 leasehold, had no employees on the *Deepwater Horizon*, and was not a party to the drilling rig contract with Transocean.  The BP Parties deny the remaining allegations of this paragraph.

3.

At all times pertinent, Blaine Roshto, three years of age, is the natural child of Shane Roshto and Natalie Roshto, who were lawfully married and living together with their minor son, Blaine Roshto. Natalie Roshto is the personal representative of her minor son, Blaine Roshto, and of her presumed deceased husband, Shane.

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

4.

Defendants are justly and truly indebted unto your plaintiff, Natalie Roshto, individually and as personal representative, for the following reasons, to-wit:

**ANSWER**

The BP Parties deny the allegations of this paragraph.

5.

At all material times, Shane Roshto was employed by TRANSOCEAN ENTITIES as a Jones Act seaman.

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

6.

Shane Roshto was permanently assigned by defendant, TRANSOCEAN ENTITIES, to work aboard the offshore drilling vessel, DEEPWATER HORIZON, a semi-submersible mobile drilling unit that was owned and/or operated and/or chartered and/or controlled by TRANSOCEAN ENTITIES and/or BP ENTITIES at all material times herein. Shane Roshto was employed by TRANSOCEAN ENTITIES and permanently assigned to the vessel, DEEPWATER HORIZON, at all material times herein.

**ANSWER**

The BP Parties admit that the *Deepwater Horizon* was owned and operated and controlled by one or more Transocean affiliates at all relevant times.  The BP Parties deny that any BP entity owned, operated, chartered, or controlled the *Deepwater Horizon* at any relevant

4

time.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of

the remaining allegations of this paragraph, and therefore deny them.


7.

On or about April 20, 2010, Shane Roshto was performing his duties as a deck floor hand
on-board the vessel, DEEPWATER HORIZON, 50 miles southeast of Venice, Louisiana.
The vessel was located more than a marine league outside of and adjacent to the Louisiana
shore. Without warning to the plaintiff, on or about 10 p.m., April 20, 2010, while the
vessel, DEEPWATER HORIZON, was performing drilling operations for crude oil, an
explosion occurred on the vessel, causing eleven (11) of her crewmembers to be thrown
overboard to their death. Shane Roshto was one of those crewmembers thrown to his death.

**ANSWER**

The BP Parties admit that one or more explosions occurred on the *Deepwater Horizon* on

April 20, 2010.  The BP Parties lack knowledge or information sufficient to form a belief about

the truth of the remaining allegations of this paragraph, and therefore deny them.


7a.

As a result of the above-described incident, Shane Roshto's body was not found
despite an extensive and thorough search orchestrated by the United States Coast Guard which
lasted several days. It has now been over two weeks since that search was terminated by
the USCG. The USCG has taken testimony and/ or statements from co-workers which
confirm that Shane Roshto was in the direct vicinity of the blast that caused the vessel to sink.
Moreover, the vessel from which he disappeared was more than thirty miles offshore. Under
the general maritime law *(Deal v. A.P. Bell Fish Co.,* 647 F.2d 438 (5th Cir. 1982), Shane
Roshto is herein alleged to be presumed dead as a matter of law.

**ANSWER**

The BP Parties admit that Mr. Shane Roshto has been declared presumed dead.  The BP

Parties deeply regret the *Deepwater Horizon* accident on April 20, 2010, and offer their deepest

sympathies to the families, friends and colleagues of those who were lost on the *Deepwater*

*Horizon*.  The BP Parties, however, lack knowledge or information sufficient to form a belief

about the truth of the remaining allegations of this paragraph, and therefore deny them.

7b.

Defendant herein, HALLIBURTON INTERESTS, prior to the explosion, were engaged in cementing operations of the well and well cap and, upon information and belief, improperly and negligently performed these duties, which was a cause of the explosion. Defendant herein, SPERRY, prior to the explosion, was engaged in monitoring gas levels and other "measurement while drilling" and "surface data logging" and, upon information and belief, improperly and negligently performed these duties, which was a cause of the explosion.

**ANSWER**

The BP Parties admit that (i) Halliburton Energy Services was a contractor engaged to provide cementing services on the MC 252 exploration well; (ii) the cement barrier did not isolate the hydrocarbons, and there were weaknesses in cement design and testing, quality assurance, and risk assessment; and (iii) Sperry Drilling Services and/or its affiliates provided certain monitoring, measurement, and/or other data services for the drilling operations on the *Deepwater Horizon* drilling rig. The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

7c.

Defendant herein, WEATHERFORD, was both the supplier of defective products that were used aboard the DEEPWATER HORIZON and immediately prior to the explosion, was engaged in drilling operations which caused a breakdown of equipment and hole integrity thereby allowing oil and gas into the well column and onto the DEEPWATER HORIZON and ran the inner production liner, among other operations, and, upon information and belief, which was a cause of the explosion.

**ANSWER**

The BP Parties admit that Weatherford was engaged to perform casing operations in connection with the well. The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

7d.

Defendant herein, CAMERON, was a manufacturer of products and equipment, including, but not limited to, the multiplex control system, single and double preventers and wellhead connector on the DEEPWATER HORIZON vessel and, upon information and belief, improperly and defectively manufactured these products and equipment, which was a cause of the explosion.

**ANSWER**

The BP Parties admit that Cameron manufactured and supplied the *Deepwater Horizon*'s

BOP, and that the BOP failed to prevent the oil spill.  The BP Parties lack knowledge or

information sufficient to form a belief about the truth of the remaining allegations of this

paragraph, and therefore deny them.

7e.

Defendant herein, MI SWACO, was contracted to provide drilling fluid services to the rig DEEPWATER HORIZON, owned by Transocean and leased to BP. MI Swaco, in conjunction with Halliburton failed to maintain appropriate drilling fluid weight before and during the cement operation, thus allowing gas to escape and ignite, ultimately resulting in a deadly explosion.

**ANSWER**

The BP Parties admit that M-I Swaco was engaged to perform drilling fluids operations

in connection with the well.  The BP Parties lack knowledge or information sufficient to form a

belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

8.

Shane Roshto, at all times pertinent, was where he was ordered to be and performing the duties and functions he was instructed and obliged to perform pursuant to the directives of defendant, TRANSOCEAN ENTITIES.

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

9.

The accident was caused by no fault of the plaintiffs and was caused solely by the negligence of the defendants as more fully set forth herein.

**ANSWER**

The BP Parties deny the allegations of this paragraph to the extent they are directed at them.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

10.

Paragraph 10 is deleted (sic).

11.

At all times material hereto, the vessel on which Shane Roshto was injured and/or died was owned, navigated in navigable waters, manned, possessed, managed, controlled, chartered and/or operated by defendants, TRANSOCEAN ENTITIES and/or BP ENTITIES.

**ANSWER**

The BP Parties admit that the *Deepwater Horizon* was in navigation and that the *Deepwater Horizon* was owned and operated and controlled by one or more Transocean affiliates at all relevant times. The BP Parties deny that any BP entity owned, operated, chartered, or controlled the *Deepwater Horizon* at any relevant time. The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

12.

These casualties occurred as a result of the negligence of defendants, TRANSOCEAN ENTITIES, BP ENTITIES, WEATHERFORD, CAMERON, HALLIBURTON ENTITIES and MI SWACO. These acts of negligence render the defendants liable to plaintiffs pursuant to the provisions of 46 USC § 30104 and the general maritime law for negligence.

**ANSWER**

The BP Parties admit that Plaintiff purports to bring a claim under 46 U.S.C. § 30104. The BP Parties deny that Plaintiff has stated a valid claim under 46 U.S.C. § 30104. The BP Parties deny the allegations of this paragraph to the extent they are directed at them. The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

13.

Shane Roshto's incident was caused by defendants' violation of numerous statutes and regulations, including, but not limited to, statutes and regulations issued by the United States Minerals Management Service (MIMS) and the United States Coast Guard, including but not limited to, the items iterated in paragraph 15.

**ANSWER**

The BP Parties deny the allegations of this paragraph to the extent they are directed at them.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

14.

Paragraph 14 is deleted (sic).

15.

The above-described incidents were caused solely by the negligence of defendants, TRANSOCEAN ENTITIES, BP ENTITIES, WEATHERFORD, CAMERON, HALLIBURTON ENTITIES, and MI SWACO through their agents, servants and employees, which are more particularly described as follows:

NEGLIGENCE OF TRANSOCEAN ENTITIES

a.      Failing to provide a competent crew;

b.      Failing to properly supervise its employees;

c.      Failing to properly train and/or supervise plaintiff decedent and other employees;

d.      Failing to provide plaintiff decedent with a safe place to work, and requiring plaintiff to work in unsafe conditions;

e.      Failing to provide sufficient personnel to perform operations aboard the vessel;

f.      Failing to properly follow drilling protocols and policies, proper well monitoring and control practices;

g.      Failing to exercise due care and caution;

h.      Failing to avoid this accident;

i.      Failing to provide decedent with a seaworthy vessel;

j.      Other acts of negligence which will be shown more fully at trial.

## NEGLIGENCE OF BP ENTITIES

a.      Failing to properly train and/or supervise its crew and other employees;

b.      Failing to ensure that its crew worked in a safe and prudent manner;

c.      Failing to provide plaintiff decedent with a safe place to work, and requiring plaintiff to work in unsafe conditions;

d.      Failing to exercise due care and caution;

e.      Failing to avoid this accident;

f.      Failing to provide decedent with a seaworthy vessel;

g.      Other acts of negligence which will be shown more fully at trial.

## NEGLIGENCE OF WEATHERFORD

a.      Failing to sufficiently and competently perform drilling operations aboard the vessel;

b.      Failing to properly supervise its employees;

c.      Failing to properly train and/or supervise plaintiff and other employees;

d.      Failing to provide plaintiff decedent with a safe place to work, and requiring plaintiff to work in unsafe conditions;

e.      Failing to provide sufficient personnel to perform operations aboard the vessel;

f.      Failing to exercise due care and caution;

g.      Failing to avoid this accident;

h.      Providing and manufacturing equipment used in drilling operations which was unreasonably dangerous due to design or defect and are liable under the General Maritime Product Liability laws.

i.      Other acts of negligence which will be shown more fully at trial.

## NEGLIGENCE OF CAMERON

a.      Failing to manufacture products and equipment free of defects on the vessel, and the component parts thereof;

b.      Failing to properly supervise its employees;

c.      Failing to properly train and/or supervise plaintiff a decedent and other employees;

d.      Failing to provide plaintiff decedent with a safe place to work, and requiring plaintiff to work in unsafe conditions;

e.      Failing to provide sufficient personnel to perform operations aboard the vessel;

f.      Failing to exercise due care and caution;

g.      Failing to avoid this accident;

h.      Other acts of negligence which will be shown more fully at trial.

<u>NEGLIGENCE OF HALLIBURTON ENTITIES</u>

a.      Failing to sufficiently and competently perform cementing operations aboard the vessel;

b.      Failing to properly supervise its employees;

c.      Failing to properly train and/or supervise plaintiff decedent and other employees;

d.      Failing to provide plaintiff with a safe place to work, and requiring plaintiff to work in unsafe conditions;

e.      Failing to provide sufficient personnel to perform operations aboard the vessel;

f.      Failing to exercise due care and caution;

g.      Failing to avoid this accident;

h.      Other acts of negligence which will be shown more fully at trial.

<u>NEGLIGENCE OF MI SWACO</u>

a.      Failing to monitor pressure of wells;

b.      Failing to use adequate weight drilling fluid to prevent gas escape;

c.      Failing to follow industry protocol and procedure during plug completion phases;

d.      Use of sea water as weight and gas control medium during drilling and completion processes;

     e.     Attempting to carry out drilling operations with substandard and defective cement casing; and

     f.     Other acts of negligence which will be shown more fully at trial.

**ANSWER**

The BP Parties deny the allegations of this paragraph to the extent they are directed at them.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

16.

In the further alternative, plaintiff, reiterating and re-alleging each and every allegation set forth above, as though set forth herein in extenso, avers the applicability of the doctrine of Res Ipsa Loquitur.

**ANSWER**

The BP Parties deny the allegations of this paragraph to the extent they are directed at them.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

17.

As a result of the above-described negligence, Plaintiff, Natalie Roshto, individually and as personal representative of her minor son, Blaine Roshto, sustained the following damages:

     a.     Physical and mental pain and suffering, mental anguish, distress and fright for Shane Roshto, decedent;

     b.     Past, present and future mental anguish, pain, suffering, grief, depression and anguish;

     c.     Past, present and future medical expenses;

     d.     Past lost wages;

     e.     Past lost found;

f.      Loss of future earning capacity;

g.      Loss of future found;

h.      Loss of fringe benefits;

i.      Loss of services and support;

j.      Loss of nurture, guidance, care and instruction;

k.      Loss of funeral expenses;

l.      Loss of inheritance;

m.      Disfigurement, disability and/or death;

n.      Loss of enjoyment of life;

o.      Punitive damages;

p.      All survival damages recognized under the general maritime law and,

q.      Other damages which shall be proven at trial.

**ANSWER**

The BP Parties deny the allegations of this paragraph to the extent they are directed at them.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.


18.

Plaintiff is entitled to prejudgment interest on her damages from the dates of loss. As to any damages which the court determines are not properly subject to an award of prejudgment interest, plaintiff demands interest from the date of judicial demand.

**ANSWER**

The BP Parties deny the allegations of this paragraph to the extent they are directed at them.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

19.

Plaintiff is entitled to recover all costs of these proceedings, including filing fees, expert witness fees, attorney's fees and other court costs and litigation costs.

**ANSWER**

The BP Parties deny the allegations of this paragraph to the extent they are directed at them. The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

20.

Based on information and belief, due to the gross negligence and fault of defendants TRANSOCEAN ENTITIES' shore side management, the DEEPWATER HORIZON was unseaworthy and unfit for the job task required of her, which unseaworthy condition caused or substantially contributed to the explosion and vessel sinking described herein.

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

21.

By virtue of defendants TRANSOCEAN ENTITIES' callous and willful disregard for the condition of its vessel, which condition was either caused by, known to or should have been known to Defendants' shore side management personnel, plaintiff is entitled to punitive damages in an amount to be determined by this Honorable Court.

**ANSWER**

The BP Parties deny the allegations of this paragraph to the extent they are directed at them. The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

22.

Based on information and belief, due to the gross negligence and fault of defendants BP ENTITIES in their management, control, supervision and direction of the DEEPWATER HORIZON and drilling activities thereon, an ultrahazardous situation was created onboard the DEEPWATER HORIZON that was a cause of the explosion and vessel sinking described herein.

**<u>ANSWER</u>**

The BP Parties deny the allegations of this paragraph.

23.

By virtue of defendants BP ENTITIES' callous and willful disregard for the safety of the crew of the DEEPWATER HORIZON, including plaintiff's decedent Shane Roshto, plaintiff is entitled to punitive damages in an amount to be determined by this Honorable Court.

**<u>ANSWER</u>**

The BP Parties deny the allegations of this paragraph.

24.

Plaintiff demands a trial by jury.

**<u>ANSWER</u>**

The BP Parties admit that Plaintiff has requested a trial by jury.  The BP Parties deny that Plaintiff is entitled to a trial by jury except as required under the laws applicable to a trial of his claims.

25.

To the extent that the Original and First Supplemental and Amending Complaints have not been supplemented and amended herein, Plaintiff reasserts, reiterates and re-alleges each and every allegation set forth therein, as though set forth herein in extenso.

**ANSWER**

The BP Parties incorporate their answers to the above paragraphs as if set forth fully below.

WHEREFORE, plaintiff, Natalie Roshto, individually and as personal representative of Shane Roshto and of her minor son, Blaine Roshto, prays that the defendants, TRANSOCEAN, LTD., TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INC., TRANSOCEAN DEEPWATER, INC., BP PLC, BP PRODUCTS NORTH AMERICA, INC., BP EXPLORATION AND PRODUCTION, INC., HALLIBURTON ENERGY SERVICES, INC., SPERRY DRILLING SERVICES, WEATHERFORD INTERNATIONAL LTD., CAMERON INTERNATIONAL CORPORATION D/B/A CAMERON SYSTEMS CORPORATION, TRITON ASSET LEASING GMBH, TRITON HUNGARY ASSET MANAGEMENT LIMITED LIABILITY COMPANY, TRITON HUNGARY ASSET MANAGEMENT KFT, TRANSOCEAN HOLDINGS, LLC., and MI SWACO, be duly cited and served with a copy of this Amended Complaint and that after due proceedings are had there be judgment rendered herein in favor of the plaintiff and against defendants, TRANSOCEAN, LTD., TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INC., TRANSOCEAN DEEPWATER, INC., BP PLC, BP PRODUCTS NORTH AMERICA, INC., BP EXPLORATION AND PRODUCTION, INC., HALLIBURTON ENERGY SERVICES, INC., SPERRY DRILLING SERVICES, WEATHERFORD INTERNATIONAL LTD., CAMERON INTERNATIONAL CORPORATION D/B/A CAMERON SYSTEMS CORPORATION, TRITON ASSET LEASING GMBH, TRITON HUNGARY ASSET MANAGEMENT LIMITED LIABILITY COMPANY, TRITON HUNGARY ASSET MANAGEMENT KFT, TRANSOCEAN HOLDINGS, LLC., and MI SWACO, in an amount sufficient to adequately compensate your plaintiff, individually and as personal representative, for her damages, together with legal interest thereon from date of judicial demand until paid, for all costs of this suit and for all general and equitable relief.

**ANSWER**

WHEREFORE, the BP Parties respectfully request that the Court dismiss Plaintiff's claims against the BP Parties with prejudice.  The BP Parties deny the allegations of this paragraph to the extent they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

The BP Parties maintain that there was no negligence or fault on their part and that Plaintiff's damages and injuries, if any, were caused by the fault, carelessness, misconduct, negligence and/or want of due care of other individuals, entities, or vessels for whom the BP Parties are not legally responsible.

### SECOND DEFENSE

Plaintiff's damages or injuries, if any, were the result of an occurrence and/or accident unforeseeable by the BP Parties and for which the BP Parties cannot be held legally responsible.

### THIRD DEFENSE

Plaintiff's alleged damages or injuries, if any, were caused or contributed to by acts and/or omissions that constitute independent, intervening and/or superseding causes for which the BP Parties are not legally responsible.

### FOURTH DEFENSE

Any alleged negligence by the BP Parties, which the BP Parties specifically deny, was not the proximate cause or sole proximate cause of Plaintiff's alleged damages and there is no causal connection between the acts complained of and the damages and injuries alleged.

### FIFTH DEFENSE

To the extent the BP Parties are found liable to Plaintiff for any damages or injuries, the BP Parties are entitled to have any reward or recovery mitigated or reduced accordingly by the contributory or comparative negligence of other individuals, entities, or vessels.

### SIXTH DEFENSE

To the extent that the BP Parties are found liable to Plaintiff for any damages, the BP Parties are entitled to contractual indemnity from other parties or entities.

### SEVENTH DEFENSE

To the extent that the BP Parties are found liable to Plaintiff for any damages, the BP Parties are entitled to indemnity from other parties or entities.

## EIGHTH DEFENSE

To the extent that the BP Parties are found liable to Plaintiff for any damages, the BP Parties are entitled to contribution from other parties or entities.

## NINTH DEFENSE

To the extent that the BP Parties are found liable to Plaintiff for any damages, the BP Parties are entitled to a set-off or other equitable reduction in liability for any compensation paid by the BP Parties or other parties or entities.

## TENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff is not entitled under the law to the damages that she seeks, the alleged damages sought are too speculative and uncertain, and because of the impossibility of the ascertainment and allocation of such damages.

## ELEVENTH DEFENSE

The claim of Natalie and Blaine Roshto in this matter should be joined with those of Denise Arnold in Civil Action No. 2:10-cv-4427 under Fed.R.Civ.Proc. 19(a) and/or consolidated for trial purposes under Fed.R.Civ.Proc. 42(a).

## TWELFTH DEFENSE

The BP Parties assert that no double recovery of the same damages should be permitted in Civil Action No. 2:10-cv-1156 and Civil Action No. 2:10-cv-4427.

## THIRTEENTH DEFENSE

Plaintiff's claims for punitive damages are barred, in whole or in part, because the BP Parties did not engage in any willful, wanton, malicious, oppressive, or reckless conduct that might entitle Plaintiff to an award of punitive damages.

## FOURTEENTH DEFENSE

Plaintiff's damages are barred, in whole or in part, by a failure to mitigate damages.

## FIFTEENTH DEFENSE

The BP Parties deny that they are liable to any extent as alleged in the Second Amended Complaint, and claim exoneration from any and all liability for all losses, damages, and injuries incurred by Plaintiff as a result of the allegations contained in the Second Amended Complaint and for any other damages or claims which exist or may arise, but have not been specifically pled.

The BP Parties specifically reserve the right to amend or supplement their affirmative defenses and this Answer as additional facts concerning their defenses become known to them.

WHEREFORE, the BP Parties respectfully request that the Court dismiss Plaintiff's claims against the BP Parties with prejudice.

Dated:  February 11, 2011                       Respectfully submitted,

/s/ Don K. Haycraft
Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

and

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Wendy Bloom, P.C.
Timothy A. Duffy, P.C.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
312-862-2000 (Tel)
312-862-2200 (Fax)

and

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
202-662-5985

*Attorneys for BP p.l.c., BP Products North America Inc. and BP Exploration & Production Inc.*

<u>CERTIFICATE OF SERVICE</u>

      I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice in accordance with the procedures established in MDL 2179, on this 11th day of February, 2011.

/s/  Don K. Haycraft  