UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | : : : : | MDL No. 2179<br><br>SECTION: J |
| This Document Relates To: Jones v. Transocean Holdings, LLC, et al.<br>……………………………………………... | : : : | JUDGE BARBIER<br>MAGISTRATE SHUSHAN |

## THE BP PARTIES' ANSWER TO MICHELLE M. JONES' SECOND AMENDING COMPLAINT

Defendants BP p.l.c., BP Products North America Inc. ("BPPNA") and BP Exploration & Production Inc. ("BPXP") (collectively, "the BP Parties"), by their undersigned counsel, and pursuant to Rule 8 of the Federal Rules of Civil Procedure, hereby answer the Second Amending Complaint filed by Michelle M. Jones, individually and as personal representative of her minor sons, Stafford Hess Jones and Maxwell Gordon Jones, as follows:

1.

The following parties are made defendants herein:

A. **TRANSOCEAN HOLDINGS, LLC**, (hereinafter "Transocean Holdings"), a foreign corporation authorized to do and/or doing substantial business in Louisiana and within this judicial district;

B. **TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INC.** (hereinafter "Transocean Offshore"), a foreign corporation authorized to do and/or doing substantial business in Louisiana and within this judicial district;

C. **TRANSOCEAN DEEPWATER, INC.** (hereinafter "Transocean Deepwater"), a foreign corporation authorized to do and/or doing substantial business in Louisiana and within this judicial district;

D. **TRITON ASSET LEASING GmbH**, (hereinafter "Triton"), a foreign corporation authorized to do and/or doing substantial business in Louisiana and within this judicial district;

E. **BP, PLC** (hereinafter "BP"), a foreign corporation authorized to do and/or doing substantial business in Louisiana and within this judicial district;

1

  F. **BP PRODUCTS NORTH AMERICA, INC.** (hereinafter "BP Products"), a foreign corporation authorized to do and/or doing substantial business in Louisiana and within this judicial district;

  G. **BP EXPLORATION & PRODUCTION, INC.** (hereinafter "BP Exploration"), a foreign corporation authorized to do and/or doing substantial business in Louisiana and within this judicial district;

  H. **HALLIBURTON ENERGY SERVICES, INC.** (hereinafter "Halliburton Energy"), a foreign corporation authorized to do and/or doing substantial business in Louisiana and within this judicial district;

  I. **HALLIBURTON COMPANY** (hereinafter "Halliburton"), a foreign corporation authorized to do and/or doing substantial business in Louisiana and within this judicial district; and

  J. **CAMERON INTERNATIONAL CORPORATION** (hereinafter "Cameron"), a foreign corporation authorized to and/or doing substantial business in Louisiana and within this judicial district.

**ANSWER**

The BP Parties admit that BP p.l.c is a foreign corporation, and that BPPNA and BPXP are foreign corporations authorized to and doing business in Louisiana. The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

2.

The jurisdiction of this Honorable Court is based upon the Admiralty and Maritime jurisdiction pursuant to Article III, Section 2 of the United States Constitution and 28 USC § 1333 and is a claim brought pursuant to the Federal Rule of Civil Procedure Rule 9(h).

**ANSWER**

The BP Parties admit that Plaintiff purports to bring this action pursuant to the Admiralty and Maritime jurisdiction pursuant to Article III, Section 2 of the United States Constitution and 28 USC § 1333. The BP Parties deny that Plaintiff has stated a valid claim pursuant to the Admiralty and Maritime jurisdiction pursuant to Article III, Section 2 of the United States Constitution and 28 USC § 1333. The BP Parties further deny that BPPNA

and BP p.l.c. are proper parties to this litigation.  BPPNA is an entity primarily involved in downstream operations such as crude oil refineries, and transportation and marketing of refined products such as gasoline, and had no employees on the *Deepwater Horizon,* was not a party to the drilling rig contract with Transocean, and had nothing to do with exploration activity involving the Macondo Well or the April 20, 2010 incident or resulting oil spill.  Similarly, BP p.l.c. did not own the MC 252 leasehold, had no employees on the *Deepwater Horizon*, and was not a party to the drilling rig contract with Transocean.  The BP Parties deny the remaining allegations of this paragraph.

3.

At all times pertinent herein, including April 20, 2010, Michelle M. Jones was married to and living with Gordon Lewis Jones.  Of that marriage two children were born: Stafford Hess Jones, born on March 28, 2008 and Maxwell Gordon Jones, born on May 14, 2010.

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

4.

On or about April 20, 2010, Gordon Lewis Jones was an employee of M-I, L.L.C. and working as a seaman and member of the crew of the semi-submersible mobile drilling unit, DEEPWATER HORIZON, which was a vessel operating in the navigable waters of the Gulf of Mexico off the coast of Louisiana.

**ANSWER**

The BP Parties admit that on April 20, 2010 the *Deepwater Horizon* was located in the Gulf of Mexico.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

5.

On or about April 20, 2010, because of the conduct of the defendants, enumerated below, the DEEPWATER HORIZON exploded, caught fire and ultimately sank. While the body of Gordon Lewis Jones was never found, it is alleged that he died as a result of the explosions, fire and/or sinking of the DEEPWATER HORIZON and a Judgment of Presumed Death was signed and entered on August 10, 2010.

**ANSWER**

The BP Parties admit that Mr. Gordon Lewis Jones has been declared presumed dead and that on April 20, 2010, there were one or more explosions and fires aboard the *Deepwater Horizon* and that the vessel sank. The BP Parties deeply regret the *Deepwater Horizon* accident on April 20, 2010, and offer their deepest sympathies to the families, friends and colleagues of those who were lost on the *Deepwater Horizon*. The BP Parties, however, deny the remaining allegations of this paragraph to the extent they are directed at the BP Parties. The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

6.

At all times pertinent herein, including April 20, 2010, DEEPWATER HORIZON was owned and/or owned *pro hac vice* and/or operated and/or managed by Transocean Holdings, Transocean Offshore and/or Transocean Deepwater and/or Triton.

**ANSWER**

The BP Parties admit that one or more Transocean affiliates, at all relevant times, owned and/or operated and/or managed the *Deepwater Horizon*. The BP Parties lack knowledge or information sufficient to form a belief about the truth of the further remaining allegations of this paragraph, and therefore deny them.

7.

At all times pertinent herein, DEEPWATER HORIZON was chartered and/or hired and/or leased and/or controlled by defendants BP and/or BP Products and/or BP Exploration and being used in a drilling operation being conducted by BP and/or BP Products.

**ANSWER**

The BP Parties deny the allegations of this paragraph.

8.

Halliburton Energy and/or Halliburton were at all times material hereto engaged in, among other activities, cementing operations of the completed well and well cap.

**ANSWER**

The BP Parties admit that Halliburton was engaged to perform cementing operations in connection with the well. The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

9.

Plaintiff shows that the Blow Out Preventer ("BOP") and associated piping and equipment was designed, manufactured, marketed and sold by defendant Cameron and being used by Transocean Holdings and/or Transocean Offshore and/or Transocean Deepwater and/or Trident and/or BP and/or BP Products and was a part of the DEEPWATER HORIZON and/or part of its equipment and an appurtenance thereof.

**ANSWER**

The BP Parties admit that Cameron manufactured and supplied the *Deepwater Horizon*'s BOP, and that the BOP failed to prevent the oil spill. The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

10.

Michelle M. Jones shows that the accident and resulting injuries to and death of Gordon Lewis Jones and the damages sued upon were the direct and proximate result of the gross, willful, and wanton negligence and fault of the defendants, Transocean, Transocean Offshore, Transocean Deepwater, and Triton is shown more particularly, and unseaworthy conditions caused, created or allowed to exist by virtue of these defendants' gross, willful and wanton conduct, with negligence, fault, conduct and conditions are listed more particularly but not exclusively, as follows:

A. Negligent failure to properly perform the operation ongoing at the time of the accident in question;

B. Negligent failure to take all appropriate precautions to avoid an accident and explosion of the kind which occurred;

C. Negligent failure to have all proper equipment and gear necessary to perform the job being performed at the time of the accident and explosion in a safe manner;

D. Negligent failure to keep the equipment on board the vessel in proper condition and repair;

E. Negligent failure to properly inspect the rig and all of its equipment and gear;

F. Negligent failure to have sufficient number of properly trained and qualified personnel to perform the job being performed at the time of the accident and explosion in a safe manner;

G. Negligent failure to properly train and/or instruct and/or warn Gordon Lewis Jones and those similarly situated;

H. Negligent violation of government and industry rules, regulations and standards;

I. Proceeding with the operation ongoing prior to the accident in the face of negative pressure and other testing which showed that well integrity had not been established and that there was an extreme risk of a blowout, explosion and fire;

J. Placement of heavy drilling mud with seawater at a time when it was known well integrity, underbalancing the well and allowing hydrocarbons under pressure to flow up to the production casing and passed the ball out preventer;

K. Ignoring data showing an influx of pressured hydrocarbons and an increase in drill pipe pressure which were unmistakable signs of an impending blowout or blowout in progress;

L. Failing to take steps to prevent the impending blowout or blowout in progress in the face of test data which called for immediate protective measures to control well;

M. Closing the blow out preventer and diverter, routing the fluids exiting the riser to the vessels mud gas separator system rather than to the overboard diverter line;

N. Following the diversion of hydrocarbons to the mud gas separator, venting the hydrocarbons directly onto the rig through a 12 inch gooseneck vent and other flowlines which allowed the hydrocarbons onto the rig floor to be exposed to ignition sources;

O. Failing to properly inspect, maintain and repair a blowout preventer, which blowout preventer was in disrepair and was unseaworthy and which failed to seal the well;

P. Having a fire and gas system which allowed for the dispersion of hydrocarbons and, ultimately, their ignition and which rendered the vessel unseaworthy;

Q. Having a crew which was not properly trained and overly working which rendered the vessel unseaworthy;

R. Other items of unseaworthiness which may be shown for discovery or trial;

S. Other acts of gross, willful, reckless, and wanton conduct which may be shown through discovery or at trial; and

T. Generally, the failure of these defendants to act with the required degree of care and commensurate with the existing situation.

**ANSWER**

The BP Parties deny the allegations of this paragraph to the extent they are directed at them. The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

11.

Plaintiff Michelle M. Jones shows that the accident and resulting injuries to and death of Gordon Lewis Jones and the damages sued upon were the direct and proximate result of the gross, willful, and wanton negligence and conduct of BP, BP Products and BP Exploration which negligence is listed more particularly, but not exclusively, as follows:

A. Negligent failure to properly perform the operation ongoing at the time of the accident in question;

B. Negligent failure to take all appropriate precautions to avoid an accident and explosion of the kind which occurred;

C. Negligent failure to have all proper equipment and gear necessary to perform the job being performed at the time of the accident and explosion in a safe manner;

D. Negligent failure to keep the equipment on board the vessel in proper condition and repair;

E. Negligent failure to properly inspect the rig and all of its equipment and gear;

7

F. Negligent failure to have sufficient number of properly trained and qualified personnel to perform the job being performed at the time of the accident and explosion in a safe manner;

G. Negligent failure to properly train and/or instruct and/or warn Gordon Lewis Jones and those similarly situated;

H. Negligent violation of government and industry rules, regulations and standards;

I. Proceeding with the operation ongoing prior to the accident in the face of negative pressure and other testing which showed that well integrity had not been established and that there was an extreme risk of a blowout, explosion and fire;

J. Placement of heavy drilling mud with seawater at a time when it was known well integrity, underbalancing the well and allowing hydrocarbons under pressure to flow up to the production casing and passed the ball out preventer;

K. Ignoring data showing an influx of pressured hydrocarbons and an increase in drill pipe pressure which were unmistakable signs of an impending blowout or blowout in progress;

L. Failing to take steps to prevent the impending blowout or blowout in progress in the face of test data which called for immediate protective measures to control well;

M. Closing the blow out preventer and diverter, routing the fluids exiting the riser to the vessels mud gas separator system rather than to the overboard diverter line;

N. Following the diversion of hydrocarbons to the mud gas separator, venting the hydrocarbons directly onto the rig through a 12 inch gooseneck vent and other flowlines which allowed the hydrocarbons onto the rig floor to be exposed to ignition sources;

O. Failing to properly inspect, maintain and repair a blowout preventer, which blowout preventer was in disrepair and was unseaworthy and which failed to seal the well;

P. Having a fire and gas system which allowed for the dispersion of hydrocarbons and, ultimately, their ignition and which rendered the vessel unseaworthy;

Q. Other acts of gross, willful, reckless, and wanton conduct which may be shown through discovery or at trial; and

R. Generally, the failure of these defendants to act with the required degree of care and commensurate with the existing situation.

**ANSWER**

The BP Parties deny the allegations of this paragraph to the extent they are directed at them. The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

12.

Plaintiff shows that the accident and resulting injuries and damages sued upon were also the direct and proximate result of the negligence and fault of defendants, Halliburton Energy and/or Halliburton, which negligence and fault is listed more particularly, but not exclusively, as follows:

- A. Its (their) gross, willful, wanton and reckless negligence and conduct in the cementing of the well and well cap;

- B. Its (their) gross, willful, wanton and reckless negligence and conduct in performing other operations aboard the vessel DEEPWATER HORIZON;

- C. Other acts of negligence and fault which may be shown through discovery or at trial; and

- D. Generally, the failure of this (these) defendant(s) to act with the required degree of care commensurate with the existing situation.

**ANSWER**

The BP Parties deny the allegations of this paragraph to the extent they are directed at them. The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

13.

Plaintiff shows that the accident and resulting injuries and damages sued upon were also the direct and proximate result of the negligence, strict liability and fault of Cameron which negligence, strict liability and fault is listed more particularly, but not exclusively, as follows:

- A. Its defective, unreasonably dangerous and negligent design, manufacture, marketing and sale of the BOP and associated piping and equipment;

- B. Its negligent failure to properly test said equipment;

- C. Its negligent failure to properly instruct and/or warn regarding said equipment;

- D.  Its negligent failure to properly train regarding the safe use of its equipment;

- E.  Its gross, willful, wanton and reckless conduct and negligence, as stated above;

- F.  Other items of strict liability, negligence and fault which may be shown through discovery or at trial; and

- G.  Generally, the failure this defendant act with the required degree of care commensurate with the existing situation.

**ANSWER**

The BP Parties deny the allegations of this paragraph to the extent they are directed at them. The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

14.

Plaintiff specifically pleads the doctrine of *res ipsa loquitur* inasmuch as the defendants herein owned and had custody and control of the rig where the accident and explosion occurred and the accident and explosion could not have occurred absent the negligent conduct of one or all of the defendants herein.

**ANSWER**

The BP Parties deny the allegations of this paragraph to the extent they are directed at them. The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

15.

The negligence and fault the defendants and unseaworthiness of the vessel, as enumerated above, was the proximate cause of injuries and death of Gordon Lewis Jones and damages sued upon which damages are listed more particularly, but not exclusively, as follows:

- A.  Physical injury, pain and suffering of Gordon Lewis Jones prior to death;

- B.  Extreme fright, mental injury and mental anguish and distress and fright for Gordon Lewis Jones prior to death;

- C.  Loss of earnings and/or support, past and future;

- D.  Loss of found, past and future;

  E.  Funeral and related expenses;

  F.  Loss nurture, guidance and support;

  G.  Mental anguish, grief, profound depression, anxiety and suffering of Michelle M. Jones;

  H.  Loss of enjoyment of life of Michelle M. Jones and her two children;

  I.  Loss of love, affection, comfort, and society of Michelle in Jones and her two children;

  J.  Medical and related expenses of Michelle M. Jones;

  K.  Loss of inheritance;

  L.  Punitive or exemplary damages;

  M.  Other items of damage which may be shown through discovery or at trial;

  N.  All appropriate general and equitable relief;

  O.  Prejudgment interest on all sums awarded from date of loss until judgment;

  P.  Post judgment on all sums awarded from date of judgment until paid; and

  Q.  All court costs and litigation costs allowed by law.

**ANSWER**

The BP Parties deny the allegations of this paragraph to the extent they are directed at them. The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

WHEREFORE Plaintiff, Michelle M. Jones, individually and as personal representative on behalf of her minor sons, Stafford Hess Jones and Maxwell Gordon Jones, prays that after due proceedings are had, there be judgment in her favor and against defendants, Transocean, Ltd.; Transocean Offshore Deepwater Drilling, Inc.; Transocean Deepwater, Inc.; Triton Asset Leasing GmbH; BP, PLC; BP Products North America, Inc.; BP Exploration & Production, Inc.;

11

Halliburton Energy Services, Inc.; Halliburton Company; and Cameron International Corporation for compensatory and punitive, exemplary, and other appropriate damages with legal interest thereon from date of loss until paid for all costs of these proceedings. Plaintiff also prays for all other relief as may be just and equitable in the premises.

**ANSWER**

WHEREFORE, the BP Parties respectfully request that the Court dismiss Plaintiff's claims against the BP Parties with prejudice.  The BP Parties deny the allegations of this paragraph to the extent they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

**AFFIRMATIVE DEFENSES**

**FIRST DEFENSE**

The BP Parties maintain that there was no negligence or fault on their part and that Plaintiff's damages and injuries, if any, were caused by the fault, carelessness, misconduct, negligence and/or want of due care of other individuals, entities, or vessels for whom the BP Parties are not legally responsible.

**SECOND DEFENSE**

Plaintiff's damages or injuries, if any, were the result of an occurrence and/or accident unforeseeable by the BP Parties and for which the BP Parties cannot be held legally responsible.

**THIRD DEFENSE**

Plaintiff's alleged damages or injuries, if any, were caused or contributed to by acts and/or omissions that constitute independent, intervening and/or superseding causes for which the BP Parties are not legally responsible.

**FOURTH DEFENSE**

Any alleged negligence by the BP Parties, which the BP Parties specifically deny, was not the proximate cause or sole proximate cause of Plaintiff's alleged damages and there is no causal connection between the acts complained of and the damages and injuries alleged.

**FIFTH DEFENSE**

To the extent the BP Parties are found liable to Plaintiff for any damages or injuries, the BP Parties are entitled to have any reward or recovery mitigated or reduced accordingly by the contributory or comparative negligence of other individuals, entities, or vessels.

**SIXTH DEFENSE**

To the extent that the BP Parties are found liable to Plaintiff for any damages, the BP Parties are entitled to contractual indemnity from other parties or entities.

**SEVENTH DEFENSE**

To the extent that the BP Parties are found liable to Plaintiff for any damages, the BP Parties are entitled to indemnity from other parties or entities.

**EIGHTH DEFENSE**

To the extent that the BP Parties are found liable to Plaintiff for any damages, the BP Parties are entitled to contribution from other parties or entities.

**NINTH DEFENSE**

To the extent that the BP Parties are found liable to Plaintiff for any damages, the BP Parties are entitled to a set-off or other equitable reduction in liability for any compensation paid by the BP Parties or other parties or entities.

**TENTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, because Plaintiff is not entitled under the law to the damages that she seeks, the alleged damages sought are too speculative and uncertain, and because of the impossibility of the ascertainment and allocation of such damages.

**ELEVENTH DEFENSE**

Plaintiff's claims for punitive damages are barred, in whole or in part, because the BP Parties did not engage in any willful, wanton, malicious, oppressive, or reckless conduct that might entitle Plaintiff to an award of punitive damages.

**TWELFTH DEFENSE**

Plaintiff's damages are barred, in whole or in part, by a failure to mitigate damages.

**THIRTEENTH DEFENSE**

The BP Parties deny that they are liable to any extent as alleged in the Second Amending Complaint, and claim exoneration from any and all liability for all losses, damages, and injuries incurred by Plaintiff as a result of the allegations contained in the Second Amending Complaint and for any other damages or claims which exist or may arise, but have not been specifically pled.

The BP Parties specifically reserve the right to amend or supplement their affirmative defenses and this Answer as additional facts concerning their defenses become known to them.

WHEREFORE, the BP Parties respectfully request that the Court dismiss Plaintiff's claims against the BP Parties with prejudice.

Dated:  February 11, 2011                                          Respectfully submitted,

                                                                   /s/ Don K. Haycraft
                                                                   Don K. Haycraft (Bar #14361)
                                                                   R. Keith Jarrett (Bar #16984)
                                                                   LISKOW & LEWIS

701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

and

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Wendy Bloom, P.C.
Timothy A. Duffy, P.C.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
312-862-2000 (Tel)
312-862-2200 (Fax)

and

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
202-662-5985

*Attorneys for BP p.l.c., BP Products North America Inc. and BP Exploration & Production Inc.*

**CERTIFICATE OF SERVICE**

  I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice in accordance with the procedures established in MDL 2179, on this 11th day of February, 2011.

                  /s/   Don K. Haycraft