UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig | * | MDL No. 2179 |
| "Deepwater Horizon" in the Gulf | * | |
| of Mexico, on April 20, 2010 | * | SECTION "J" |
| | * | JUDGE BARBIER |
| This Document Relates to: | * | |
| *Taquino v. Transocean Holdings, LLC, et al.* | * | |
| No. 10-01921 | * | MAGISTRATE NO. 1 |
| | * | MAGISTRATE SHUSHAN |
| | * | |
| * * * * * * * * * * * * | * | |

MEMORANDUM OF LAW IN SUPPORT OF MOTION OF
DEFENDANT ANADARKO PETROLEUM CORPORATION
TO DISMISS COMPLAINT PURSUANT TO FED R. CIV. P. 12(b)(6)

**I.**
**INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Anadarko Petroleum Corporation ("Anadarko") moves to dismiss Plaintiffs' Complaint against it in its entirety.[1] There are several reasons why Plaintiffs' Complaint fails to state a claim and must be dismissed.

*First*, Plaintiffs attempt to state a general maritime claim for negligence, but allege that on April 20, 2010, when the *Deepwater Horizon* exploded and Mr. Manuel died, the vessel was 50 miles offshore. Compl. ¶ 7. In other words, the vessel was on the high seas, and no *Moragne* general maritime law death claim can be stated. "When the incident takes place outside the three-mile limit, [the Death on the High Seas Act, 46 U.S.C. §§ 30301–30308 ("DOHSA")] . . . alone controls." *Bodden v. Am. Offshore, Inc.*, 681 F.2d 319, 329 (5th Cir. 1982). Thus, Plaintiffs' general maritime law claim against Anadarko fails.

*Second*, whether under the general maritime law or DOHSA, Plaintiffs fail as a matter of

---

[1]  Mitsui & Co. USA, Inc., was voluntarily dismissed from the Complaint on Sept. 7, 2010. *See* 2:10-cv-01921-CJB-SS [Dkt. 41].

law to state a claim for negligence against Anadarko because their own allegations conclusively establish that Anadarko owed no legal duty to the Plaintiffs or the decedent.  It is fundamental that a duty to prevent harm resulting from oil and gas operations arises as a consequence of control over the operations.  *Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548, 550 (5th Cir. 1987), *cert. denied*, 485 U.S. 1034 (1988).  Yet Plaintiffs do not allege that Anadarko controlled or had any right to control the operations of the *Deepwater Horizon* or the well out of which a duty to the decedent could have arisen.  To the contrary, they allege that at all times, BP and Transocean controlled the *Deepwater Horizon*.  Compl. ¶ 6.

*Third*, Plaintiffs fail to state a claim against Anadarko under the Jones Act because it alleges that the decedent was employed by MI Swaco, not Anadarko.  Compl. ¶ 5; *see Baker v. Raymond Int'l, Inc.* 656 F.2d 173, 177 (5th Cir. 1981) (holding that the Jones Act "is applicable only if the employment relationship exists") (citations omitted).

*Fourth*, even if a claim could be stated against Anadarko, Plaintiffs have no right to recover non-pecuniary damages (loss of enjoyment of life, mental anguish, and punitive damages).  *Miles v. Apex Mar. Corp.*, 498 U.S. 19, 31–32 (1990).

Finally, the Court need not address Plaintiffs' vague and conclusory constitutional challenge to DOHSA, but in any event, it is meritless and should be rejected.

## II.
## FACTUAL ALLEGATIONS IN THE COMPLAINT

Plaintiffs allege that they are "the natural children of their presumed deceased father, Keith Blair Manuel," and that Plaintiff Kelli Manuel Taquino is also "the administrator and personal representative of the estate of Keith Blair Manuel."  Compl. ¶ 3.  They allege that Mr. Manuel "was an employee of MI Swaco," *id.* ¶ 5, and "was permanently assigned by defendant, TRANSOCEAN ENTITIES, to work aboard the offshore drilling vessel, *Deepwater Horizon*,"

which "was owned and/or operated and/or chartered and/or controlled by TRANSOCEAN ENTITIES and/or BP ENTITIES." *Id.* ¶ 6.  Plaintiffs allege that "on April 20, 2010 . . . an explosion occurred on the vessel" while Mr. Manuel "was aboard."  *Id.* ¶ 7.  They allege that his "body has not been found" and that he is "presumed dead as a matter of law."  *Id.* ¶ 8.

Plaintiffs allege that "[t]his casualty occurred as a result of the negligence of, TRANSOCEAN ENTITIES, BP ENTITIES, HALLIBURTON and CAMERON."  *Id.* ¶ 10. Plaintiffs allege that Anadarko "owned and/or held a proprietary interest in the *Deepwater Horizon*, the oil lease and BP ENTITIES' operations as it relates to the production of petroleum products from the well" and was "engaged in a joint venture endeavor with BP ENTITIES . . . ." *Id.* ¶ 15.   Plaintiffs do not allege that Anadarko had any operational control over the rig or the well.

Based on these allegations, Plaintiffs assert claims "pursuant to the provisions of 46 U.S.C. § 688 and the general maritime law for negligence."  *Id.* ¶ 10.  They also seek a declaration that the Death on the High Seas Act is "unconstitutional as it deprives plaintiffs of their due process rights and privileges . . . ."  *Id.* ¶ 38.

### III.
### ARGUMENT

**THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFFS FAIL TO STATE A CLAIM AGAINST ANADARKO UPON WHICH RELIEF CAN BE GRANTED**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555); *see also Hershey v. Energy Transfer Partners*, 610 F.3d 239, 245–46 (5th Cir. 2010) (same).

To state a claim for relief, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). If there are insufficient factual allegations to raise a right to relief "'above the speculative level,'" *Jebaco, Inc. v. Harrah's Operating Co.*, 587 F.3d 314, 318 (5th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555), or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007), the claim should be dismissed. In the latter circumstance, which fully applies here, the plaintiff "pleads himself out of court by 'admitting all the ingredients of an impenetrable defense.'" *Barasich v. Shell Pipeline Co.*, Nos. 05-4180, 05-4197, 05-4199, 05-4212, 05-4512, 06-5102, 2006 WL 3913403, at *2 (E.D. La. Nov. 20, 2006) (Barbier, J.) (internal citations omitted) (granting Rule 12(b)(6) dismissal in part).

## A.   Plaintiffs Fail to Allege Any Facts Supporting Their Allegations That Anadarko is Liable for Maritime Negligence, and the Complaint's Allegations Establish as a Matter of Law That No Such Liability Exists.

The Complaint contains no facts from which the Court plausibly could infer that Anadarko is liable to Plaintiffs under general maritime law or the Jones Act.[2] To the contrary, the facts alleged make clear that, as a matter of law, Plaintiffs cannot state a claim against Anadarko. Accordingly, their claims against Anadarko should be dismissed.

### 1.   The General Maritime Law Does Not Apply to Plaintiffs' Claim.

Plaintiffs cannot sue under the general maritime law for negligence. The Death on the

---

[2]   The Complaint cites "46 U.S.C. § 688," the superseded codification of the Jones Act. *See* Compl. ¶¶ 2, 10. The Jones Act is now codified at 46 U.S.C. § 30104.

High Seas Act, 46 U.S.C. §§ 30301–30308, which the Complaint does not invoke, "is the exclusive remedy given to a seaman's survivors for death occurring on the high seas outside of state territorial waters, *i.e.*, more than 3 nautical miles from shore." *In re Offshore Transp. Servs., L.L.C.*, 409 F. Supp. 2d 753, 755 (E.D. La. 2005); *see also Bodden v. Am. Offshore, Inc.*, 681 F.2d 319, 329 (5th Cir. 1982) ("As [decedent's] injury occurred on the high seas, the general maritime wrongful death remedy which *Moragne-Gaudet* created does not apply;" rather, "[w]hen the incident takes place outside the three-mile limit, DOHSA and DOHSA alone controls") (citation and internal quotation marks omitted).

Under controlling Fifth Circuit authority, DOHSA applies "where the injury or accident resulting in death occurred while the decedent was at sea." *Motts v. M/V Green Wave*, 210 F.3d 565, 571 (5th Cir. 2000).  The Complaint alleges that decedent's injury occurred "50 miles southeast of Venice, Louisiana," Compl. ¶ 7, which is more than three nautical miles from shore. Accordingly, the Court should dismiss Plaintiffs' general maritime claim.

> **2.  The Complaint Does Not Allege Facts That Show Direct Liability for Negligence Under Any Potentially Applicable Law.**
>
>> **a.  As a Matter of Law, Anadarko Did Not Owe Plaintiffs or the Decedent Any Duty of Care.**

Independent of Plaintiffs' inability to sue under general maritime law because it is inapplicable, the Complaint contains no allegations of fact that, even if true, would establish Anadarko's direct liability for negligence under either the general maritime law or DOHSA.  "To establish maritime negligence, a plaintiff must 'demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by [the] plaintiff, and a causal connection between the defendant's conduct and the plaintiff's injury.'" *Canal Barge Co. v. Torco Oil Co.*, 220 F.3d 370, 376 (5th Cir. 2000) (quoting *In re Cooper/T. Smith*, 929 F.2d 1073, 1077 (5th Cir. 1991)).  Likewise, DOHSA requires factual allegations showing duty, breach, and

causation of injury.  *See In re Am. River Transp. Co.*, 490 F.3d 351, 354 (5th Cir. 2007) (DOHSA provides a remedy "'[w]here death is caused by the breach of a duty imposed by federal maritime law'") (quoting *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 393 (1970)); *Hartsfield v. Seafarers Int'l Union*, 427 F. Supp. 264, 268 (S.D. Ala. 1977) ("To render a vessel, person or corporation liable under the Death on the High Seas Act, there must be a violation of some legal duty owed to the decedent.  Only those wrongful acts, neglects, or defaults which would produce causes of action for a living person are preserved by the Act") (internal citations omitted).

Plaintiffs allege no facts from which the Court could infer that Anadarko owed any legal duty to Plaintiffs or the decedent.  *See generally In re Graham Offshore, Inc.*, 287 F.3d 352, 359 (5th Cir. 2002) (owner of mobile oil rig owed no duty to injured employee of subcontractor).  It is fundamental that a duty to prevent harm resulting from oil and gas operations arises as a consequence of control over the operations.  *See, e.g.*, *Ainsworth v. Shell Offshore, Inc*., 829 F.2d 548, 550 (5th Cir. 1987), *cert. denied*, 485 U.S. 1034 (1988).  Further, it is settled that where a principal retains an independent contractor to conduct oil and gas operations but does not retain control over or participate in the actions of the contractor, the principal neither assumes nor owes any duty to the contractor's employees.  *Thomas v. Burlington Res. Oil & Gas Co.*, No. Civ. A. 99-3904, 2000 WL 1528082, at *2 (E.D. La. Oct. 13, 2000) (Barbier, J.).  Even when a principal without control over or participation in the operation has *actual knowledge* of dangerous conditions on an oil rig, the principal has no legal duty to intercede.  *See id.*; *Ronquille v. MMR Offshore Servs., Inc.*, 353 F. Supp. 2d 680, 682 (E.D. La. 2004) (the presence of a company representative on an oil platform with knowledge of the rig's operations "is insufficient to create a duty; therefore, the law does not support the imposition of liability for any failure to

intercede").[3]

   *Ainsworth* is instructive and is cited by courts applying both Louisiana law and the general maritime law.  *See, e.g.*, *Gremillion v. Gulf Coast Catering Co.*, No. 88-4544, 1989 WL 104100, at *6 (E.D. La. Sept. 5, 1989), *aff'd*, 904 F.2d 290 (5th Cir. 1990) (citing *Ainsworth* in tort case under maritime law); *Fontenot v. Southwestern Offshore Corp.*, 787 So.2d 588, 594 (La. Ct. App. 2001) (tort case under maritime law).   In *Ainsworth*, Shell hired an independent contractor, Hercules, to erect an offshore drilling rig.  829 F.2d  at 549.  Hercules worked its crews around the clock, with no lights in the work area, and a worker fell as a result.  *Id.*  Shell had a "company man" on the rig who was aware of the hazardous conditions, but Shell retained no control over and did not participate in the operation of the rig.  The Fifth Circuit rejected the plaintiff's argument that Shell's knowledge of the danger made it directly liable for the injury and held instead that because Shell lacked control over the operation, it had no duty to intervene.  *Id.* at 551.

   A similar analysis pertains here because Plaintiffs' allegations fall far short of even the *Ainsworth* facts.  Plaintiffs (incorrectly) allege that Anadarko had "a proprietary interest" in the *Deepwater Horizon*, the oil lease, and BP's petroleum production operations.  Compl. ¶ 15.  A non-operating proprietary interest in a vessel, lease, or another company's business does not plausibly create a duty to someone else's employee working onboard the vessel.  *See In re Graham Offshore, Inc.*, 287 F.3d 352, 359 (5th Cir. 2002).  The Complaint is devoid of any facts

---

   [3]      Plaintiffs also "aver the applicability of the doctrine of Res Ipsa Loquitur."  Compl. ¶ 31. That is a legal conclusion, not a factual allegation assumed to be true on a motion to dismiss. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  In addition, as a legal matter, res ipsa loquitur applies only "when a thing which causes injury . . . is shown to be under the exclusive control of the defendant."  *Fruge v. Penrod Drilling Co.*, 918 F.2d 1163, 1166 (5th Cir. 1990) (quoting *San Juan Light & Transit Co. v. Requena*, 224 U.S. 89, 98–99 (1912)).  The Complaint's allegations establishing Anadarko's lack of control make res ipsa loquitur inapplicable to Anadarko.

alleging conduct by Anadarko in breach of any duty.  Nor do the Plaintiffs allege any facts in their Complaint that decedent's or Plaintiffs' injuries resulted from any act by Anadarko.  To the contrary, the express allegations that "[a]t all times material hereto," BP and Transocean "managed, controlled . . . and/or operated" the *Deepwater Horizon*, Compl. ¶ 9, and "serviced and operated" the well, *id*. ¶ 14, negate any inference that Anadarko conducted any of the *operations* on the *Deepwater Horizon* that allegedly led to the decedent's injuries and establish that Plaintiffs are not entitled to relief.  *See Jones v. Bock*, 549 U.S. 199, 215 (2007) ("if the allegations, taken as true, show the plaintiff is not entitled to relief," then the "complaint is subject to dismissal").

If in *Ainsworth* a company man on the rig with actual knowledge of a dangerous situation had no duty to intercede because he lacked control over the operations on the rig, it necessarily follows that Anadarko had no duty to Plaintiffs or their decedent.  Anadarko was hundreds of miles away from the rig, lacked any *contractual relationship with the decedent's employer*, and is not alleged to have had any actual knowledge of a dangerous situation.[4]

> **b.    Plaintiffs Cannot State a Claim Against Anadarko by Indiscriminately Lumping It Together with Other Defendants Whose Relationship to the Decedent Was Fundamentally Different.**

The Complaint is replete with conclusory allegations against the "defendants" and the "BP ENTITIES," with the latter term defined to include BP, its CEO, Anadarko, and Mitsui &

---

[4]    Plaintiffs' allegations against Anadarko contrast sharply with their allegations against the drilling defendants, such as BP and Transocean, on this point.  Unlike Anadarko, BP and Transocean are expressly alleged to have either controlled, approved, or participated in the drilling, cementing, and temporary well abandonment activities of the *Deepwater Horizon* that allegedly caused Plaintiffs harm.  Compl. at ¶ 24–27; *see Denson v. Diamond Offshore Co.*, 955 So.2d 730, 733–34 (La. Ct. App. 2007) (distinguishing *Ainsworth*, 829 F.2d, *Wallace v. Oceaneering Int'l*, 727 F.2d 427 (5th Cir. 1984), and *McCormack v. Noble Drilling Corp.*, 608 F.2d 169 (5th Cir. 1979), because evidence showed company man on oil rig was involved in operations in that case).

Co. (U.S.A.), Inc., the last of which has since been dismissed.  Compl. ¶ 1.  Plaintiffs improperly lump together with broad and ambiguous factual assertions entities and people that are differently situated.  As the plaintiffs in Amended B1 Bundle Master Complaint recognize, Anadarko, as a non-operating investor, is not similarly situated to the defendants who actually controlled the drilling operations on the *Deepwater Horizon*.[5]  In contrast, Plaintiffs in this case allege in paragraph 11 of the Complaint that the accident "was caused by all defendants' violations of numerous statutes and regulations . . . ;" allege in paragraph 29 that "[t]he accident was caused by no fault of the plaintiffs and was caused solely by the negligence of the defendants . . . ;" and allege in paragraphs 17–27 negligent conduct by the "BP ENTITIES."

As an initial matter, those generalized, undifferentiated allegations fail to satisfy the notice pleading requirement of Federal Rule of Civil Procedure 8.  *See Pro Image Installers, Inc. v. Dillon*, No. 3:08cv273/MCR/MD, 2009 WL 112953, at *2 (N.D. Fla. Jan. 15, 2009) (dismissing complaint that inadequately distinguished between the separate defendants); *Lane v. Capital Acquisitions & Mgmt. Co.*, No. 04-60602CIV, 2006 WL 4590705, at *5 (S.D. Fla. Apr. 14, 2006) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, the Lane's Complaint fails to satisfy the minimum standard of Rule 8").  Here, the lumping-together allegations are particularly inadequate in light of Plaintiffs' allegations that defendants other than Anadarko exercised control over drilling operations and

---

[5]     The B1 Bundle plaintiffs divide the named defendants into three distinct groups: (1) "the Drilling Defendants," including BP, Transocean, Halliburton and M-1, who are alleged to have operated or participated in the operations of the *Deepwater Horizon*, Amend. Mast. Compl. B1 ¶¶ 210–29; (2) the products liability defendants, including Weatherford and Cameron, who are alleged to have manufactured defective products used on the *Deepwater Horizon*, *id.* ¶¶ 230–32); and (3) the non-operating investor defendants, including Anadarko Petroleum Corporation, Anadarko E&P Company, LP, MOEX Offshore 2007, LLC, MOEX USA Corporation, and Mitsui Oil Exploration Co., who are alleged to be "non-operational leaseholders" of the Macondo well where the Drilling Defendants conducted their operations.  *Id.* ¶¶ 233–50, 282.

activities.

In addition, the one sentence out of the 39-paragraph Complaint that attempts to allege a basis for liability against Anadarko specifically, *see* Compl. ¶ 15, is wholly conclusory and insufficient.  As noted, Plaintiffs (incorrectly) assert that Anadarko "owned and/or held a proprietary interest" in the *Deepwater Horizon*, the oil lease, and BP's petroleum operations, but Plaintiffs do not allege any conduct or actions by Anadarko that caused harm.  Compl. ¶ 15. Those allegations do not even rise to the level of "[t]hreadbare recitals of the elements of a cause of action," which would still "not suffice."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Jebaco, Inc. v. Harrah's Operating Co.*, 587 F.3d 314, 318 (5th Cir. 2009) ("the complaint must allege 'more than labels and conclusions'") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

In sum, the Complaint alleges no facts that show that Anadarko could be directly liable on a claim of maritime negligence.  Instead, Plaintiffs allege facts that show as a matter of law that Anadarko cannot be held so liable.

### 3.   The Complaint Alleges No Facts From Which Anadarko Could Be Found Vicariously Liable for the Negligence of Other Defendants.

Lacking any facts to directly tie Anadarko to the casualty, Plaintiffs conclusorily assert that Anadarko was "engaged in a joint venture endeavor with BP ENTITIES and as such is liable for the negligent conduct of BP ENTITIES."  Compl. ¶ 15.  That allegation also is a "bare assertion[]" that is "conclusory and not entitled to be assumed to be true."  *Iqbal*, 129 S. Ct. at 1951 (citations omitted).  Furthermore, Plaintiffs' conclusory allegation that Anadarko was engaged in a joint venture with BP fails because Plaintiffs do not allege that Anadarko had a right of joint control over the drilling operation.  Compl. ¶¶ 9, 14.

Before a non-actor can be jointly and solidarily liable for the tortious conduct of another,

there must be a sufficient relationship among the parties to permit imputation of liability to the non-actor. *See generally St. Paul Fire and Mar. Ins. Co. v. Vest Transp. Co.*, 666 F.2d 932, 937 (5th Cir. 1982) (considering in case of maritime casualty whether parties were "in a joint venture at the time of the casualty so as to impute" one party's negligence to the other); *see also Johnson v. Peerless Ins. Co.*, 299 So.2d 434, 436 (La. Ct. App. 1974) ("[I]n order to hold a third party liable for the damage caused by a tort-feasor[,] plaintiff must allege and prove a relationship which forms the legal basis for the third party's vicarious liability"). "[I]n determining whether a joint venture exists  . . . [p]ertinent factors include: (1) *the existence of joint control, or a joint right of control, relevant to the vessel's operations*, (2) joint proprietary interests in the subject matter of the venture, and (3) a sharing of profits and losses." *Hinson v. M/V Chimera*, 661 F. Supp. 2d 614, 619 (E.D. La. 2009) (emphasis added, citations omitted). Furthermore, "the parties' intentions are important." *Sasportes v. M/V Sol de Copacabana*, 581 F.2d 1204, 1208 (5th Cir. 1978). Thus, in *Sasportes*, the Fifth Circuit explained that while a "joint venture" could support a finding of vicarious liability, such joint ventures "involve joint control or the joint right of control." 581 F.2d at 1208 (citation omitted). Indeed, courts have observed that the Fifth Circuit "equates vicarious liability with control." *Hajtman v. NCL (Bahamas) Ltd.*, 526 F. Supp. 2d 1324, 1327 (S.D. Fla. 2007) (citing *Barbetta v. Bermuda Star*, 848 F.2d 1364, 1369 (5th Cir. 1988)).

Applying this standard, courts have held that a non-operating partner of a mining operation cannot be vicariously liable for the negligence of an operating partner where the non-operating partner does not have authority to control the enterprise. *See, e.g., James v. Nico Energy Corp.*, 838 F.2d 1365, 1373 (5th Cir. 1988) (no joint venture where one party's involvement in oil wells was limited to investment of capital and another party had "the sole

right of control in drilling and operating of wells"); *Transcon. Gas Pipe Line Corp. v. Mr. Charlie*, 294 F. Supp. 1025, 1031 (E.D. La. 1968), *aff'd in relevant part and rev'd in part on other grounds*, 424 F.2d 684 (5th Cir. 1970), *cert. denied*, 400 U.S. 832 (1970) (no indirect liability under maritime law for non-operating co-owners of oil and gas lease where designated operator, but not non-operators, was negligent); *Bolivar v. R & H Oil and Gas Co.*, 789 F. Supp. 1374, 1381–82 (S.D. Miss. 1991) (one who has no right to control operations at gas well may not be held liable as joint venturer).[6]

Plaintiffs' mistaken allegation that Anadarko possessed a "proprietary interest" in the vessel, lease, and BP's drilling operations, by itself, is not a legally sufficient basis on which to impose vicarious liability. *Burlington Res., Inc. v. United Nat'l Ins. Co.*, 481 F. Supp. 2d 567, 573 (E.D. La. 2007) ("a non-operator of a well is not liable for the tortious acts of the operator," so "[t]he [Joint Operating Agreement] in no way created any type of vicarious tort liability . . ."). Plaintiffs do not allege that Anadarko had a right of joint control over the *Deepwater Horizon* or otherwise participated in any of its operations. *See* Compl. ¶ 15.  To the contrary, Plaintiffs allege that the *Deepwater Horizon* was "owned, navigated in navigable waters, manned[,] possessed, managed, controlled, chartered and/or operated" at all times by BP and Transocean, *id*. ¶ 9, who also "serviced and operated" the well.  *Id*. ¶ 14.  By affirmatively alleging that defendants *other than* Anadarko "controlled" the *Deepwater Horizon* and "operated" the well,

---

[6]     *See also Blocker Exploration Co. v. Frontier Exploration, Inc*., 740 P.2d 983, 988 (Colo. 1987) (no joint venture where non-operating owner merely invested funds and there was no right of participation in management and control of operation); *Archer v. Bill Pearl Drilling Co.*, 655 S.W.2d 338, 344 (Tex. App. 1983) (no joint venture in negligence action as a matter of law where co-owner merely invested in venture but exercised no right to participate in control or operation of drill site); *Ayco Dev. Corp. v. G.E.T. Serv. Co.*, 616 S.W.2d 184, 186 (Tex. 1981) (no joint venture where defendants merely invested by paying costs of drilling well but did not participate in actual drilling, operation, and control of the well).

Plaintiffs' own allegations conclusively establish that Anadarko cannot be held vicariously liable under maritime law.

Anadarko's lack of joint control or right of joint control over the operation is made clear by the Operating Agreement that Anadarko entered into with BP, and on which Plaintiffs implicitly rely.  Compl. ¶ 15; *see* Macondo Prospect Offshore Deepwater Operating Agreement, attached hereto as Exhibit A ("Ex. A").  Plaintiffs' claim that Anadarko is "liable for the negligent conduct of BP ENTITIES" is based entirely on the alleged "joint venture" between the companies.  Compl. ¶ 15.  The Court, therefore, may consider the Operating Agreement from which the alleged joint venture arises in ruling on this motion to dismiss.[7]

The Operating Agreement vests authority to control all operations solely in BP and provides unambiguously that the parties have not created a joint venture.  Specifically, Article 4.1 designates "BP Exploration & Production Inc." as the "Operator."  Ex. A at 14.  Article 5.1 provides that

> the Operator has the *exclusive right and duty to conduct (or cause to be conducted) all activities or operations under this Agreement*.  In performing services under this Agreement for the Non-Operating Parties, the Operator is an independent contractor, *not subject to the control or direction of Non-Operating Parties* . . . .

*Id*. at 20 (emphases added).

---

[7]      "[D]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) (internal citation and quotation marks omitted); *In re Katrina Canal Breaches Litig*., 495 F.3d 191, 205 (5th Cir. 2007) ("[B]ecause the defendants attached the contracts to their motion to dismiss, the contracts were referred to in the complaints, and the contracts are central to plaintiffs' claims, we may consider the terms of the contracts in assessing the motions to dismiss"); *Kane Enters. v. MacGregor Inc*., 322 F.3d 371, 374 (5th Cir. 2003) ("[T]he court may review the documents attached to the motion to dismiss, e.g., the contracts in issue here, where the complaint refers to the documents and they are central to the claim").

Similarly, Article 22.1 provides that the

> obligations, duties, and liabilities of the Parties under this Agreement are
> several and not joint or collective, and . . . nothing in this Agreement shall
> be construed to create a partnership, joint venture, association or other
> form of business entity recognizable in law for any purpose.

*Id*. at 130.   Nothing in the Operating Agreement supports Plaintiffs' claim that Anadarko is vicariously liable for BP's or any other defendant's conduct.   Indeed, the language of the Operating Agreement establishes the opposite.   "[T]he parties' intentions are important" and could not be more clear.   *Sasportes v. M/V Sol de Copacabana*, 581 F.2d 1204, 1208 (5th Cir. 1978).

In sum, the Complaint contains no factual allegations that, even if true, would establish Anadarko's vicarious liability for BP's alleged negligence.   Rather, Plaintiffs' own allegations preclude any finding of liability as a matter of law.   Because Plaintiffs fail to sufficiently allege any basis for holding Anadarko liable for their alleged injuries, either directly or vicariously, the Court must dismiss Plaintiffs' maritime negligence claim against Anadarko.[8]

**B.      Plaintiffs Fail to State a Claim Against Anadarko Under the Jones Act.**

The Jones Act gives an injured seaman or, if death occurs, the seaman's personal representative, the right to bring an action "against the *employer*."   46 U.S.C. § 30104 (emphasis added).   The Jones Act "is applicable only if the employment relationship exists."   *Baker v. Raymond Int'l, Inc*., 656 F.2d 173, 177 (5th Cir. 1981) (citations omitted).   Here, Plaintiffs allege that "[a]t all material times, Keith Blair Manuel was an employee of MI Swaco," not Anadarko. Compl. ¶ 5.

---

[8]      The same result would obtain if Plaintiffs had sued under DOHSA.   Assuming *arguendo* that vicarious liability is available at all under DOHSA, DOHSA does not have a lesser standard for imposing it than the control requirement described above.

Plaintiffs do not allege that Anadarko had "the power to control and direct" the decedent "in the performance of (his) work" to support a Jones Act claim under the "borrowed servant doctrine." *Baker*, 656 F.2d at 178 (quoting *Gaudet v. Exxon Corp.*, 562 F.2d 351, 355 (5th Cir. 1977)) (internal quotation marks omitted). The facts alleged and the plain terms of the Operating Agreement on which Plaintiffs rely conclusively establish the absence of any such control. Thus, Plaintiffs fail to state a claim against Anadarko under the Jones Act for which relief can be granted. *See, e.g.*, *Perkins v. Union Barge Line Corp.*, 373 F.2d 714, 716 (6th Cir. 1967) (affirming dismissal of complaint where the plaintiff "does not allege that respondent was his employer in fact, and his pleaded facts do not state a case under 'the loaned servant' doctrine") (citations omitted).

## C.       Plaintiffs' Claims for Non-Pecuniary Damages Must Be Dismissed.

Plaintiffs seek non-pecuniary damages, including loss of enjoyment of life, survival claims for mental suffering and anguish of the decedent, and punitive damages, Compl. ¶¶ 33, 36, but these remedies are unavailable under the general maritime law, DOHSA, and the Jones Act. With respect to the general maritime law and DOHSA, the Supreme Court has held that "Congress made the decision for us. DOHSA, by its terms, limits recoverable damages in wrongful death suits to '*pecuniary* loss sustained by the persons for whose benefit the suit is brought,'" and "[t]his explicit limitation forecloses recovery for non-pecuniary loss, such as loss of society, in a general maritime action." *Miles v. Apex Mar. Corp.*, 498 U.S. 19, 31 (1990) (emphasis in original, internal citation omitted). In the same case, the Court held that Congress "intended to incorporate the pecuniary limitation on [Jones Act] damages as well." *Id.* at 32; *see also Scarborough v. Clemco Indus.*, 391 F.3d 660, 668 (5th Cir. 2004), *cert. denied,* 544 U.S. 999 (2005) ("[T]he court finds that neither one who has invoked his Jones Act seaman status nor his survivors may recover nonpecuniary damages from non-employer third parties"); *Dunham v.*

*Expro Ams., Inc.*, 423 F. Supp. 2d 664, 668 (S.D. Tex. 2003) ("Plaintiffs' potential recovery is limited to pecuniary losses.  Hence, Plaintiffs are barred from seeking punitive damages").[9] Even if Plaintiffs could state a claim for relief against Anadarko, which for the reasons explained above they manifestly cannot, their claims for non-pecuniary damages must be dismissed.

**D.      Plaintiffs' Constitutional Challenge to the Death on the High Seas Act Must Be Dismissed.**

Plaintiffs' request for a declaration that the Death on the High Seas Act (DOHSA) is unconstitutional is too vague to state a cognizable claim.  Binding Supreme Court precedent precludes Plaintiffs' challenge, to the extent the nature of the challenge can even be discerned. Furthermore, Plaintiffs lack standing because their challenge lacks redressability.

As an initial matter, the Court can simply dismiss this claim as moot if it dismisses Plaintiffs' other claims.  The declaratory judgment claim serves only to anticipate Anadarko's well-founded argument that DOHSA bars Plaintiffs' reliance on general maritime law.  But because Plaintiffs' general maritime claims are not well-pleaded to begin with, there is no real controversy over the application of DOHSA.

Plaintiffs' constitutional challenge to DOHSA is inscrutable.  They assert that "the Death on the High Seas Act is a draconian and unconstitutional statute/rule of law, the applicability of which is unconscionable under the circumstances of this case," Compl. ¶ 37, and that "it deprives plaintiffs of their due process rights and privileges under the Constitution of the United States and all applicable amendments thereto." *Id.* ¶ 38.  Yet Plaintiffs do not explain *why* DOHSA is "unconscionable" and "draconian" or otherwise explain how DOHSA harms them in any way, nor do they specify what aspect of the law they want the Court to strike down.

---

[9]      *Atlantic Sounding Co. v. Townsend*, in which the Court recognized a punitive damages remedy for wrongful failure to pay maintenance and cure, offers Plaintiff no relief.  129 S. Ct. 2561 (2009).  In that decision, the Court restated the *Miles* conclusion that Congress has limited Jones Act and DOHSA remedies to pecuniary losses.  *Id.* at 2564.

Anadarko simply cannot respond to a claim this vague.  Plaintiffs' constitutional challenge fails to state "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  Plaintiffs do not state any legal basis for declaring DOHSA unconstitutional and do not state the relief they seek from the allegedly unconstitutional statute.  Accordingly, Plaintiffs' claim for a judicial declaration (if that is what they seek) must be dismissed.  *See Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) ("'We do not accept as true conclusory allegations . . . or legal conclusions'") (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *cf. Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951 (2009) (complaint failed to satisfy Rule 8 where "[t]hese bare assertions . . . amount to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

While Anadarko should not have to guess what Plaintiffs' constitutional challenge to DOHSA is about, to the extent Plaintiffs challenge DOHSA's limitation of recovery to pecuniary losses, their claim has no merit.  DOHSA provides that

> The recovery in an action under this chapter . . . shall be a fair compensation for the *pecuniary loss* sustained by the individuals for whose benefit the action is brought.  The court shall apportion the recovery among those individuals in proportion to the loss each has sustained.

46 U.S.C. § 30303 (emphasis added).  Because DOHSA expressly limits claimants to recovery of "pecuniary loss," the Supreme Court held that "[i]t would be inconsistent with our place in the constitutional scheme were we to sanction *more* expansive remedies in a judicially created cause of action" than what Congress provided for by statute.  *Miles v. Apex Mar. Corp.*, 498 U.S. 19, 32 (1990) (emphasis added).  Thus, the Supreme Court held that the pecuniary damages awarded under DOHSA cannot be supplemented by a court's award of non-pecuniary damages under the General Maritime Law.  *Id.* at 32–33.  Any challenge to DOHSA's limitation of recovery to

pecuniary loss is therefore unfounded.  Far from being unconstitutional, the Supreme Court held that the constitution *requires* courts to preclude claimants from recovering non-pecuniary damages under DOHSA.  *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625 (1978) (DOHSA "does not address every issue of wrongful-death law  . . . but when it does speak directly to a question, the courts are not free to 'supplement' Congress' answer so thoroughly that the Act becomes meaningless") (internal citation omitted).  Therefore, binding precedent mandates that this Court uphold DOHSA's preclusion of recovery of non-pecuniary damages.

Finally, Plaintiffs do not have standing to challenge DOHSA because they lack redressability.  *See Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 754 (5th Cir. 2010) (article III standing requires, among other things, "a causal connection between the injury and the conduct complained of" and "the likelihood that a favorable decision will redress the injury") (citations and internal quotation marks omitted).  Plaintiffs do not assert a claim under DOHSA, so striking down DOHSA's prohibition on recovery of non-pecuniary damages would not expand the relief Plaintiffs seek.  Compl. ¶ 10.  Moreover, if DOHSA were held unconstitutional, Plaintiffs would have *no* remedy at all, for prior to 1920, "there was no remedy for death on the high seas caused by breach of one of the duties imposed by federal maritime law."  *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 393 (1970).  "Congress acted in 1920 to furnish the remedy denied by the courts for deaths beyond the jurisdiction of any State . . . ."  *Id*.  Finally, even if Plaintiffs could invoke general maritime law, the Supreme Court has limited the remedies available in a maritime wrongful death action to pecuniary loss to preserve harmony with the Jones Act.  *Miles*, 498 U.S. at 32–33 ("We must conclude that there is no recovery" for non-pecuniary damages "in a general maritime action for the wrongful death of a Jones Act seaman"); *see Mobil Oil Corp.*, 436 U.S. at 626 (holding that recovery under the general

maritime wrongful death cause of action was limited to the remedies available by statute because "we have no authority to substitute our views for those expressed by Congress in a duly enacted statute").  Accordingly, a judicial declaration that DOHSA is unconstitutional would afford no relief to Plaintiffs because the claims they assert and the remedies available to them would remain the same.  Their constitutional challenge, therefore, must be rejected.

**IV.**
**<u>CONCLUSION</u>**

For the foregoing reasons, the claims asserted in the Complaint against Anadarko fail as a matter of law and must be dismissed in their entirety.  In the alternative, Plaintiffs' claims for non-pecuniary losses must be dismissed.


Respectfully submitted,

BINGHAM McCUTCHEN


/s/ *Ky E. Kirby*_____
Ky E. Kirby
ky.kirby@bingham.com
David B. Salmons
david.salmons@bingham.com
Michael B. Wigmore
michael.wigmore@bingham.com
Warren Anthony Fitch
tony.fitch@bingham.com
Randall M. Levine
randall.levine@bingham.com
2020 K Street, NW
Washington, DC 20006-1806
Telephone (202) 373-6000
Facsimile (202) 373-6001

James J. Dragna
jim.dragna@bingham.com
Bingham McCutchen LLP
355 South Grand Avenue
Suite 4400

Los Angeles, California 90071-3106
Telephone (213) 680-6436
Facsimile (213) 680-8636

KUCHLER POLK SCHELL
WEINER & RICHESON, LLC

Deborah D. Kuchler, T.A. (La. Bar No. 17013)
dkuchler@kuchlerpolk.com
Janika Polk (La. Bar No. 27608)
jpolk@kuchlerpolk.com
Robert Guidry (La. Bar No. 28064)
rguidry@kuchlerpolk.com
1615 Poydras Street, Suite 1300
New Orleans, LA  70112
Tel:  (504) 592-0691
Fax:  (504) 592-0696

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, pursuant to Pre-trial Order No. 12, I have caused the foregoing to be served on all counsel via the Lexis Nexis File & Serve system, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, who will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on February 11, 2011.


_____/s/ *Ky E. Kirby*_____
                    Ky E. Kirby