**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater | : | MDL No. 2179 |
| Horizon" in the Gulf of Mexico, on | : | |
| April 20, 2010 | : | SECTION: J |
| | : | |
| This Document Relates To: Taquino v. | : | JUDGE BARBIER |
| Transocean Holdings, LLC, et al. | : | MAGISTRATE SHUSHAN |
| …………………………………………….. | : | |

## THE BP PARTIES' ANSWER TO KELLI MANUEL TAQUINO, JESSICA MANCHESTER, AND ASHLEY MANUEL'S COMPLAINT

Defendants BP p.l.c. and BP Products North America Inc. ("BPPNA") (collectively, "the

BP Parties"), by their undersigned counsel, and pursuant to Rule 8 of the Federal Rules of Civil

Procedure, hereby answer the Complaint filed by Kelli Manuel Taquino, individually and as

administrator and personal representative of the estate of Keith Blair Manuel, Jessica

Manchester and Ashley Manuel individually and as the heirs of Keith Blair Manuel (collectively

as "Plaintiffs"), as follows:

1.     Made defendants herein are:

A.     TRANSOCEAN HOLDINGS, LLC, (TRANSOCEAN ENTITY), a foreign
       corporation doing business in the State of Louisiana;

B.     TRANSOCEAN       OFFSHORE      DEEPWATER      DRILLING,      INC.,
       (TRANSOCEAN ENTITY), a foreign corporation doing business in the State of
       Louisiana;

C.     TRANSOCEAN DEEPWATER, INC. (TRANSOCEAN ENTITY), a foreign
       corporation doing business in the State of Louisiana;

D.     BP, PLC, (BP ENTITY), a foreign corporation doing business in the State of
       Louisiana;

E.     BP PRODUCTS NORTH AMERICA, INC., (BP ENTITY), a foreign corporation
       doing business in the State of Louisiana;

F.     ANTHONY HAYWARD, (BP ENTITY) upon information and belief, the Chief
       Executive Officer of BP ENTITIES;

1

G.    HALLIBURTON ENERGY SERVICES, INC., hereinafter referred to as "HALLIBURTON," a foreign corporation doing business in the State of Louisiana;

H.    CAMERON INTERNATIONAL CORPORATION, hereinafter referred to as "CAMERON", a foreign corporation doing business in the State of Louisiana;

I.    ANADARKO PETROLEUM CORPORATION, (BP ENTITY), a foreign corporation doing business in the State of Louisiana; and,

J.    MITSUI & CO. (U.S.A.), INC., (BP ENTITY), a foreign corporation doing business in the State of Louisiana.

**ANSWER:**

The BP Parties admit that BP p.l.c. is a foreign corporation, and that BPPNA is a foreign corporation doing business in Louisiana. The BP Parties deny that BP p.l.c. does business in Louisiana. The BP Parties admit that Anthony Hayward was the former Group Chief Executive of BP p.l.c., and deny all remaining allegations regarding Anthony Hayward. The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

2. The jurisdiction of this Honorable Court is based upon the provisions of 28 U.S.C. 1333(1), and is being brought pursuant to the provisions of 46 U.S.C. Section 688 (the "Jones Act") and the provisions of the general maritime law and general maritime products liability law. Plaintiff designates this matter as a maritime claim under Rule 9(h) of the Federal Rules of Civil Procedure.

**ANSWER:**

The BP Parties admit that Plaintiffs purport to bring this action pursuant to 28 U.S.C. §1333, 46 U.S.C. §30104, *et seq.*, the general maritime law of the United States, and Rule 9(h) of the Federal Rules of Civil Procedure. The BP Parties deny that Plaintiffs have stated a valid claim pursuant to 28 U.S.C. §1333, 46 U.S.C. §30104, *et seq.*, the general maritime law of the United States, or Rule 9(h) of the Federal Rules of Civil Procedure. The BP Parties further deny that BPPNA and BP p.l.c. are proper parties to this litigation. BPPNA is an entity primarily

2

involved in downstream operations such as crude oil refineries, and transportation and marketing of refined products such as gasoline, and had no employees on the *Deepwater Horizon,* was not a party to the drilling rig contract with Transocean, and had nothing to do with exploration activity involving the Macondo Well or the April 20, 2010 incident or resulting oil spill.  Similarly, BP p.l.c. did not own the MC 252 leasehold, had no employees on the *Deepwater Horizon*, and was not a party to the drilling rig contract with Transocean.  The BP Parties deny the remaining allegations of this paragraph.

3. At all times pertinent, Kelli Manuel Taquino, Jessica Manchester and Ashley Manuel were the natural children of their presumed deceased father, Keith Blair Manuel.  Kelli Manuel Taquino is the administrator and personal representative of the estate of Keith Blair Manuel.

**ANSWER:**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

4. Defendants, TRANSOCEAN HOLDINGS, LLC; TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INC.; TRANSOCEAN DEEPWATER INC.; BP, PLC; BP PRODUCTS NORTH AMERICA, INC.; HALLIBURTON ENERGY SERVICES, INC.; ANTHONY HAYWARD; CAMERON INTERNATIONAL CORPORATION, ANADARKO PETROLEUM CORPORATION and MITSUI & CO. (U.S.A.), INC., are justly and truly indebted unto your plaintiffs, Kelli Manuel Taquino, Jessica Manchester and Ashley Manuel, individually and as the heirs of Keith Blair Manuel.

**ANSWER:**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

5. At all material times, Keith Blair Manuel was an employee of MI Swaco, contracted to serve the interests of TRANSOCEAN ENTITIES and/or BP ENTITIES aboard the vessel, *Deepwater Horizon.*

**ANSWER:**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

6. Keith Blair Manuel was permanently assigned by defendant, TRANSOCEAN ENTITIES, to work aboard the offshore drilling vessel, *Deepwater Horizon,* a semi-submersible mobile drilling unit that was owned and/or operated and/or chartered and/or controlled by TRANSOCEAN ENTITIES and/or BP ENTITIES.  At all material times herein, Keith Blair Manuel was a contract employee aboard *Deepwater Horizon* and permanently assigned to the vessel, *Deepwater Horizon.*

**ANSWER:**

The BP Parties admit that one or more Transocean affiliates, at all relevant times, owned, operated, and controlled the *Deepwater Horizon*.  The BP Parties deny the remaining allegations of this paragraph to the extent they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the further remaining allegations of this paragraph, and therefore deny them.

7. On or about April 20, 2010, Keith Blair Manuel was performing his duties on-board the vessel, *Deepwater Horizon,* 50 miles southeast of Venice, Louisiana.  The vessel was located more than a marine league outside of and adjacent to the Louisiana shore.  Without warning to the plaintiff, on or about 10:00 p.m. on April 20, 2010, while the vessel, *Deepwater Horizon,* was performing drilling operations for crude oil, an explosion occurred on the vessel. Keith Blair Manuel was aboard the vessel during the explosion and resulting fires.

**ANSWER:**

The BP Parties admit that on April 20, 2010, there were one or more explosions and fires aboard the *Deepwater Horizon*, which at the time was located more than a marine league from the Louisiana shore.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

8. As a result of the above-described incident, Keith Blair Manuel's body has not been found despite an extensive and thorough search orchestrated by the United State Coast Guard

which lasted several days.  It has been more than eight weeks since Keith Blair Manuel disappeared.  Under Louisiana Civil Code Article 60 and the general maritime law *(Deal v. A.P. Bell Fish Co.,* 647 F.2nd 438 (5th Cir. 1982), Keith Blair Manuel is herein alleged to be presumed dead as a matter of law.

**ANSWER:**

The BP Parties admit that Mr. Keith Blair Manuel has been declared to be presumed dead.  The BP Parties deeply regret the *Deepwater Horizon* accident on April 20, 2010, and offer their deepest sympathies to the families, friends and colleagues of those who were lost on the *Deepwater Horizon*.  The BP Parties, however, lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

9. At all times material hereto, the vessel on which Keith Blair Manuel was injured and died was owned, navigated in navigable waters, manned possessed, managed, controlled, chartered and/or operated by defendants, TRANSOCEAN ENTITIES, and/or BP ENTITIES.

**ANSWER:**

The BP Parties admit that one or more Transocean affiliates, at all relevant times, owned, operated, and controlled the *Deepwater Horizon*.  The BP Parties deny the remaining allegations of this paragraph to the extent they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the further remaining allegations of this paragraph, and therefore deny them.

10. This casualty occurred as a result of the negligence of, TRANSOCEAN ENTITIES, BP ENTITIES, HALLIBURTON and CAMERON.  These acts of negligence render the defendants liable to plaintiffs pursuant to the provisions of 46 USC § 688 and the general maritime law for negligence.

**ANSWER:**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

11. Keith Blair Manuel's incident was caused by all defendants' violation of numerous statutes and regulations, including, but not limited to, statutes and regulations issued by the United States Minerals Management Service (MMS) and the United States Coast Guard, including, but not limited to, the items iterated in paragraph 15.

**ANSWER:**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

12. Defendant herein, HALLIBURTON, prior to the explosion, was engaged in cementing operations of the well and well cap and, upon information and belief, improperly and negligently performed those duties, which was a cause of the explosion.

**ANSWER:**

The BP Parties admit that Halliburton was engaged in cementing operations for the well. The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

13. Defendant herein, ANTHONY HAYWARD, was at all times ultimately in control of and supervised the conduct of BP ENTITIES and/or TRANSOCEAN ENTITIES and all contractors of BP ENTITIES/TRANSOCEAN ENTITIES.  He failed to supervise the conduct and activities of BP ENTITIES and/or TRANSOCEAN ENTITIES and all contractors of BP ENTITIES/TRANSOCEAN ENTITIES that led to the events resulting in the death of Keith Blair Manuel.

**ANSWER:**

The BP Parties deny the allegations of this paragraph.

14. Upon information and belief, CAMERON designed the blowout preventer (BOP) equipment controlling the well being serviced and operated by BP ENTITIES and TRANSOCEAN ENTITIES.  A substantial factor in the incident that caused the death of Keith Blair Manuel was the failure of the BOP.  The BOP further failed to comply with its express warranty of fitness and service.  But for the failure of the BOP, the incident and resulting death of Keith Blair Manuel would not have occurred.

6

**ANSWER:**

The BP Parties admit that Cameron designed the BOP.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

15. Upon information and belief, ANADARKO PETROLEUM CORPORATION owned and/or held a proprietary interest in the *Deepwater Horizon,* the oil lease and BP ENTITIES' operations as it relates to the production of petroleum products from the well.  ANADARKO PETROLEUM CORPORATION was engaged in a joint venture endeavor with BP ENTITIES and as such is liable for the negligent conduct of BP ENTITIES.

**ANSWER:**

The BP Parties admit that Anadarko shared ownership in the lease pursuant to which the well was being drilled and that Anadarko has certain obligations under its agreement with BP that require it to share in liabilities imposed as a result of the oil spill.  The BP Parties deny the remaining allegations of this paragraph.

16. Upon information and belief, MITSUI & CO. (U.S.A.), INC., owned and/or held a proprietary interest in the *Deepwater Horizon,* the oil lease and BP ENTITIES' operations as it relates to the production of petroleum products from the well.  MITSUI & CO. (U.S.A.), INC., was engaged in a joint venture endeavor with BP ENTITIES and as such is liable for the negligent conduct of BP ENTITIES.

**ANSWER:**

The BP Parties admit that an affiliate of Mitsui, MOEX Offshore 2007 LLC ("MOEX"), shared ownership in the lease pursuant to which the well was being drilled and that MOEX has certain obligations under its agreement with BP that require it to share in liabilities imposed as a result of the oil spill.  The BP Parties deny the remaining allegations of this paragraph.

17. BP ENTITIES negligently, intentionally and repeatedly chose risky procedures in order to reduce costs and save time and made minimal efforts to contain or control the risk of injury and/or death to those aboard the *Deepwater Horizon.*

**ANSWER:**

The BP Parties deny the allegations of this paragraph.

18. Specifically, BP ENTITIES ignored industry guidelines and warnings from its own employees relative to safe cementing and control operations of the well that were specifically intended to prevent a blowout of' the well and escape of natural gas and other flammable product from the well.

**ANSWER:**

The BP Parties deny the allegations of this paragraph.

19. Despite specific warnings and advice to the contrary, BP ENTITIES chose to install an inadequate number of centralizers designed to stabilize the production pipe and casing that is designed to ensure safe cementing operations to prevent the escape of natural gas and other flammable product from the well.

**ANSWER:**

The BP Parties deny the allegations of this paragraph.

20. On April 20, 2010, BP ENTITIES chose not to test the cemented well casing to determine its integrity and ability to prevent the escape of natural gas and other flammable product from the well. The testing of the cement well casing is a long-standing industry safety standard and petroleum production requirement. BP ENTITIES' intentional refusal to test a well casing cement job of this nature is clear and convincing evidence of its grossly negligent, willful and wanton conduct, which proved to substantially contribute to the blowout, loss of control of the well, and explosion that injured and killed Keith Blair Manuel.

**ANSWER:**

The BP Parties deny the allegations of this paragraph.

21. BP ENTITIES intentionally chose not to circulate the mud in the well to test for gas influx into the well casing and production piping in an effort to save time and money. The circulation and testing of mud in an oil and gas production well is a well recognized industry standard safety. BP ENTITIES' decision to forego circulation and testing of the mud during drilling and production operations aboard the *Deepwater Horizon* is clear and convincing evidence of its grossly negligent, will and wanton conduct, all of which proved to substantially contribute to the blowout, loss of control of the well, and explosion that injured and killed Keith Blair Manuel.

**ANSWER:**

The BP Parties deny the allegations of this paragraph.

22. Prior to the incident in question, BP ENTITIES representatives recognized the operation of the *Deepwater Horizon* as an "engineering nightmare" in the days and weeks preceding the incident because BP ENTITIES' conduct in choosing not to adhere to fundamental industry safety and drilling practices as more fully described herein. BP ENTITIES' recognition of its own conduct as an "engineering nightmare" further demonstrates BP ENTITIES' knowledge of the unreasonable risk of harm it created relative to all those aboard the *Deepwater Horizon* and that its conduct was intentional, wanton and reckless, substantially certain to result in the blowout, loss of control of the well, and explosion that injured and killed Keith Blair Manuel.

**ANSWER:**

The BP Parties deny the allegations of this paragraph.

23. In an effort to save time and money, BP ENTITIES chose to install production pipe instead of a pipe and well liner. The installation of production pipe instead of a pipe and well liner in an oil and gas production well is a well recognized industry safety standard. BP ENTITES' decision to ignore those standards in connection with the operations of the *Deepwater Horizon* is clear and convincing evidence of its grossly negligent, willful and wanton conduct, all of which proved to substantially contribute to the blowout, loss of control of the well, and explosion that injured and killed Keith Blair Manuel.

**ANSWER:**

The BP Parties deny the allegations of this paragraph.

24. In an effort to save time and money, BP ENTITIES consciously chose not to install a lock-down ring on the well to prevent the escape of gas from the well. The installation of a lock-down ring on an oil and gas production well is a well recognized industry safety standard. BP ENTITIES' decision to ignore those standards in connection with the operations of the *Deepwater Horizon* is clear and convincing evidence of its grossly negligent, will and wanton conduct, all of which proved to substantially contribute to the blowout, loss of control of the well, and explosion that injured and killed Keith Blair Manuel.

**ANSWER:**

The BP Parties deny the allegations of this paragraph.

25. Prior to the incident in question, BP ENTITIES and TRANSOCEAN ENTITIES were aware that the BOP's annulus was destroyed and/or otherwise inoperable and would not function as intended to prevent the type of blowout and loss of control of the well.  The damaged annulus further demonstrates BP ENTITIES and TRANSOCEAN ENTITIES' knowledge of the unreasonable risk of harm it created relative to all those aboard the *Deepwater Horizon* and that their conduct was intentional, wanton and reckless, substantially certain to result in the blowout, loss of control of the well, and explosion that injured and killed Keith Blair Manuel.

**<u>ANSWER:</u>**

The BP Parties deny the allegations of this paragraph to the extent they are directed at them.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

26. BP ENTITIES and TRANSOCEAN ENTITIES knew to a reasonable degree of engineering certainty that the replacement of drilling mud/fluids with seawater would result in an eruption and escape of flammable and explosive gasses and fluids, substantially certain to result in the explosion and fire that caused the death of Mr. Manuel.

**<u>ANSWER:</u>**

The BP Parties deny the allegations of this paragraph to the extent they are directed at them.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

27. BP ENTITIES and TRANSOCEAN ENTITIES had specific knowledge prior to the event in question that the blowout prevention equipment was defective, inoperable and/or otherwise not fit for its intended purposes and would not operate to prevent the blowout and resulting explosion.

**<u>ANSWER:</u>**

The BP Parties deny the allegations of this paragraph to the extent they are directed at them.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

28. Keith Blair Manuel, at all times pertinent, was where he was ordered to be and performing the functions he was instructed and obliged to perform pursuant to the directives of defendant, BP ENTITIES and/or TRANSOCEAN ENTITIES.

**ANSWER:**

The BP Parties deny the allegations of this paragraph to the extent they are directed at them.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

29. The accident was caused by no fault of the plaintiffs and was caused solely by the negligence of the defendants as more fully set forth herein.

**ANSWER:**

The BP Parties deny the allegations of this paragraph to the extent they are directed at them.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

30. The above-described incidents were caused solely by the negligence of defendants, TRANSOCEAN ENTITIES, BP ENTITIES, HALLIBURTON, and CAMERON through their agents, servants and employees, which are more particularly described as follows:

**NEGLIGENCE OF TRANSOCEAN ENTITIES**

    a.      Failing to provide a competent crew;

    b.      Failing to properly supervise its employees;

    c.      Failing to properly train and/or supervise decedent and other employees;

    d.      Failing to provide decedent with a safe place to work, and requiring decedent to work in unsafe conditions;

    e.      Failing to provide sufficient personnel to perform operations aboard the vessel;

    f.      Failing to properly follow drilling protocols and policies, proper well monitoring and control practices;

    g.      Failing to exercise due care and caution;

    h.      Failing to avoid this accident;

i.      Failing to provide decedent with a seaworthy vessel;

j.      Failing to maintain equipment essential to the safety of crewmembers;

k.      Intentionally engaging in conduct that was substantially certain to result in the blowout and explosion of the vessel in question (i.e. seawater replacement of drilling fluid); and

l.      Other acts of negligence which will be shown more fully at trial.

**ANSWER:**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

## NEGLIGENCE OF BP ENTITIES

a.      Failing to properly train and/or supervise its crew and other employees;

b.      Failing to ensure that its crew worked in a safe and prudent manner;

c.      Failing to provide decedent with a safe place to work, and requiring decedent to work in unsafe conditions;

d.      Failing to exercise due care and caution;

e.      Failing to avoid this accident;

f.      Failing to provide decedent with a seaworthy vessel;

g.      Failing to maintain equipment essential to the safety of crewmembers;

h.      Intentionally engaging in conduct that was substantially certain to result in the blowout and explosion of the vessel in question (i.e. seawater replacement of drilling fluid); and

i.      Other acts of negligence which will be shown more fully at trial.

**ANSWER:**

The BP Parties deny the allegations of this paragraph.

## **NEGLIGENCE OF HALLIBURTON**

a. Failing to sufficiently and competently perform cementing operations aboard the vessel;

b. Failing to properly supervise its employees;

c. Failing to properly train and/or supervise decedent and other employees;

d. Failing to provide decedent with a safe place to work, and requiring decedent to work in unsafe conditions;

e. Failing to provide sufficient personnel to perform operations aboard the vessel;

f. Failing to exercise due care and caution;

g. Failing to avoid this accident; and,

h. Other acts of negligence which will be shown more fully at trial.

**ANSWER:**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

## **NEGLIGENCE OF CAMERON**

a. Failing to properly design and/or manufacture the blowout preventer;

b. Failing to properly train, instruct and/or provide accurate instructions for installation of the blowout preventer;

c. Failing to comply with express warranties of service and fitness relative to the blowout preventer; and,

d. Other acts of negligence which will be shown more fully at trial.

**ANSWER:**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

31. In the further alternative, plaintiffs, reiterating and re-alleging each and every allegation set forth above, as though set forth herein in extensor, avers the applicability of the doctrine of Res Ipsa Loquitur.

**ANSWER:**

The BP Parties reiterate and re-allege each and every answer set forth above, as though set forth herein.  The BP Parties deny the remaining allegations of this paragraph.

32. Upon information and belief, gas fumes, unusual and excessive vibration, loud unusual noises, panicked workers seeking to escape the vessel, sounding of emergency alarms and the panicked efforts of those attempting to engage the defective BOP's resulted in the decedent's awareness that the vessel was in danger of imminent and catastrophic failure.  Under these circumstances and given Keith Blair Manuel's experience and training, he was aware of the certainty of his impending physical harm and probable death by explosion and/or fire, all of which led him to experience severe emotional distress, anxiety and pre-death suffering.

**ANSWER:**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

33. As a result of the above-described negligence, Plaintiffs, Kelli Manuel Taquino, Jessica Manchester and Ashley Manuel, seek to recover the following survival action and wrongful death damages:

    a.      Pre-death past pain, fear and suffering;

    b.      Pre-death past mental pain, suffering and anguish;

    c.      Past lost wages;

    d.      Past lost found;

    e.      Loss of future earning capacity;

    f.      Loss of future found;

    g.      Loss of fringe benefits;

    h.      Loss of services and support;

    i.      Loss of nurture, guidance, care and instruction;

j.     Funeral expenses:

k.     Loss of inheritance;

l.     Disfigurement, disability and/or death;

m.     Loss of enjoyment of life;

n.     All survival damages recognized under the general maritime law; and,

o.     Other damages which shall be proven at trial.

**ANSWER:**

The BP Parties deny the allegations of this paragraph to the extent they are directed at them.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.


34. Plaintiffs are entitled to prejudgment interest on their damages from the date of loss. As to any damages which the court determines are not properly subject to an award of prejudgment interest, plaintiffs demand interest from the date of judicial demand.

**ANSWER:**

The BP Parties deny the allegations of this paragraph to the extent they are directed at them.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.


35. Plaintiffs are entitled to recover all costs of these proceedings, including filing fees, expert witness fees, attorney's fees and other court costs and litigation costs.

**ANSWER:**

The BP Parties deny the allegations of this paragraph to the extent they are directed at them.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

36. Further, given the egregious, reckless, wonton and intentional conduct of the defendants, plaintiffs seek and are entitled to recover punitive damages against all defendants.

**ANSWER:**

The BP Parties deny the allegations of this paragraph to the extent they are directed at them.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

37. It is anticipated that the defendants will defend their conduct and plaintiffs' claim by asserting the applicability of the Death on the High Seas Act (46 USCA 30301).  Plaintiffs assert that the Death on the High Seas Act is inapplicable due to the intentional, wanton and reckless conduct of the defendants.  Plaintiffs further assert the Death on the High Seas Act is a draconian and unconstitutional statute/rule of law, the applicability of which is unconscionable under the circumstances of this case.

**ANSWER:**

The BP Parties deny the allegations of this paragraph to the extent they are directed at them.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

38. Plaintiffs therefore seek to have the Death on the High Seas Act declared unconstitutional as it deprives plaintiffs of their due process rights and privileges under the Constitution of the United States and all applicable amendments thereto.

**ANSWER:**

The BP Parties deny the allegations of this paragraph.

39. Plaintiffs herein request trial by jury.

**ANSWER:**

The BP Parties admit that Plaintiffs have requested a trial by jury on all claims.  The BP Parties deny that Plaintiffs are entitled to a trial by jury except as required under the laws applicable to a trial of their claims.

**WHEREFORE,** plaintiffs, Kelli Manuel Taquino (Individually and as administrator and personal representative of the estate of Keith Blair Manuel), Jessica Manchester and Ashley Manuel, pray that the defendants, TRANSOCEAN HOLDINGS, LLC; TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INC.; TRANSOCEAN DEEPWATER INC.; BP, PLC; BP PRODUCTS NORTH AMERICA, INC.; HALLIBURTON ENERGY SERVICES, INC.; ANTHONY HAYWARD; CAMERON INTERNATIONAL CORPORATION; ANADARKO PETROLEUM CORPORATION; and MITSUI & CO. (U.S.A.), INC. be duly cited and served with a copy of this Complaint and that after due proceedings are had, there be judgment rendered herein in favor of the plaintiffs and against defendants, TRANSOCEAN, HOLDINGS, LLC; TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INC.; TRANSOCEAN DEEPWATER INC.; BP, PLC; BP PRODUCTS NORTH AMERICA, INC.; HALLIBURTON ENERGY SERVICES, INC.; ANTHONY HAYWARD; CAMERON INTERNATIONAL CORPORATION; ANADARKO PETROLEUM CORPORATION; and MITSUI & CO. (U.S.A.), INC. in an amount sufficient to adequately compensate your plaintiffs for compensatory and punitive damages, together with legal interest thereon from the date of judicial demand until paid, for all costs of this lawsuit and for all general and equitable relief.

**ANSWER:**

WHEREFORE, the BP Parties respectfully request that the Court dismiss Plaintiffs' claims against the BP Parties with prejudice.  The BP Parties deny the allegations of this paragraph to the extent they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

The BP Parties maintain that there was no negligence or fault on their part and that Plaintiffs' damages and injuries, if any, were caused by the fault, carelessness, misconduct, negligence and/or want of due care of other individuals, entities, or vessels for whom the BP Parties are not legally responsible.

### SECOND DEFENSE

Plaintiffs' damages or injuries, if any, were the result of an occurrence and/or accident unforeseeable by the BP Parties and for which the BP Parties cannot be held legally responsible.

### THIRD DEFENSE

Plaintiffs' alleged damages or injuries, if any, were caused or contributed to by acts and/or omissions that constitute independent, intervening and/or superseding causes for which the BP Parties are not legally responsible.

### FOURTH DEFENSE

Any alleged negligence by the BP Parties, which the BP Parties specifically deny, was not the proximate cause or sole proximate cause of Plaintiffs' alleged damages and there is no causal connection between the acts complained of and the damages and injuries alleged.

### FIFTH DEFENSE

To the extent the BP Parties are found liable to Plaintiffs for any damages or injuries, the BP Parties are entitled to have any reward or recovery mitigated or reduced accordingly by the contributory or comparative negligence of other individuals, entities, or vessels.

### SIXTH DEFENSE

To the extent that the BP Parties are found liable to Plaintiffs for any damages, the BP Parties are entitled to contractual indemnity from other parties or entities.

### SEVENTH DEFENSE

To the extent that the BP Parties are found liable to Plaintiffs for any damages, the BP Parties are entitled to indemnity from other parties or entities.

### EIGHTH DEFENSE

To the extent that the BP Parties are found liable to Plaintiffs for any damages, the BP Parties are entitled to contribution from other parties or entities.

**NINTH DEFENSE**

To the extent that the BP Parties are found liable to Plaintiffs for any damages, the BP

Parties are entitled to a set-off or other equitable reduction in liability for any compensation paid

by the BP Parties or other parties or entities.

**TENTH DEFENSE**

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs are not entitled under

the law to the damages that they seek, the alleged damages sought are too speculative and

uncertain, and because of the impossibility of the ascertainment and allocation of such damages.

**ELEVENTH DEFENSE**

The claims of Kelli Manuel Taquino, Jessica Manchester, and Ashley Manuel in this

matter should be joined with those of Melinda Anne Becnel in Civil Action No. 2:10-cv-3066

under Fed.R.Civ.Proc. 19(a) and/or consolidated for trial purposes under Fed.R.Civ.Proc. 42(a).

**TWELFTH DEFENSE**

The BP Parties assert that no double recovery of the same damages should be permitted

in Civil Action No. 2:10-cv-1921 and Civil Action No. 2:10-cv-3066.

**THIRTEENTH DEFENSE**

Plaintiffs' claims for punitive damages are barred, in whole or in part, because the BP

Parties did not engage in any willful, wanton, malicious, oppressive, or reckless conduct that

might entitle Plaintiffs to an award of punitive damages.

**FOURTEENTH DEFENSE**

Plaintiffs' damages are barred, in whole or in part, by a failure to mitigate damages.

**FIFTEENTH DEFENSE**

The BP Parties deny that they are liable to any extent as alleged in the Complaint, and

claim exoneration from any and all liability for all losses, damages, and injuries incurred by

Plaintiffs as a result of the allegations contained in the Complaint and for any other damages or claims which exist or may arise, but have not been specifically pled.

The BP Parties specifically reserve the right to amend or supplement their Affirmative Defenses and this Answer as additional facts concerning their defenses become known to them.

WHEREFORE, the BP Parties respectfully request that the Court dismiss Plaintiffs' claims against the BP Parties with prejudice.


Dated:  February 11, 2011                              Respectfully submitted,

                                                       /s/ Don K. Haycraft
                                                       Don K. Haycraft (Bar #14361)
                                                       R. Keith Jarrett (Bar #16984)
                                                       LISKOW & LEWIS
                                                       701 Poydras Street, Suite 5000
                                                       New Orleans, Louisiana 70139-5099
                                                       Telephone: (504) 581-7979
                                                       Facsimile: (504) 556-4108

                                                       and

                                                       Richard C. Godfrey, P.C.
                                                       J. Andrew Langan, P.C.
                                                       Wendy Bloom, P.C.
                                                       Timothy A. Duffy, P.C.
                                                       Kirkland & Ellis LLP
                                                       300 North LaSalle Street
                                                       Chicago, IL 60654
                                                       312-862-2000 (Tel)
                                                       312-862-2200 (Fax)

                                                       and

                                                       Robert C. "Mike" Brock
                                                       Covington & Burling LLP
                                                       1201 Pennsylvania Avenue, NW
                                                       Washington, DC 20004-2401
                                                       202-662-5985

*Attorneys for BP p.l.c. and BP Products
North America Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice in accordance with the procedures established in MDL 2179, on this 11th day of February, 2011.

/s/  Don K. Haycraft