**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater | : | MDL No. 2179 |
| Horizon" in the Gulf of Mexico, on | : | |
| April 20, 2010 | : | SECTION: J |
| | : | |
| This Document Relates To: Kritzer v. | : | JUDGE BARBIER |
| Transocean Offshore Deepwater Drilling | : | MAGISTRATE SHUSHAN |
| Inc., et al. | : | |

……………………………………………...

## THE BP PARTIES' ANSWER TO THE KRITZER FIFTH AMENDED PETITION

Defendants BP Exploration & Production Inc. ("BPXP"), BP Products North America Inc. ("BPPNA"), and BP Corporation North America Inc. (collectively, "the BP Parties"), by their undersigned counsel, and pursuant to Rule 8 of the Federal Rules of Civil Procedure, hereby answer the Fifth Amended Petition filed by Joshua Kritzer; Nick Watson; Bill Johnson; Heith Lambert; Coby Richard; Dustin Johnson; Brett Guillory; Stenson Roarke; Denise Arnold, mother of Shane Roshto; Jacquelyn Duncan; Cathleena Willis; and Rhonda Burkeen, individually, and as personal representative for the Estate of Aaron Dale Burkeen and on behalf of all heirs (including Aryn and Timothy Burkeen (minor children)), and as personal representative for her minor son, Timothy Burkeen (collectively as "Plaintiffs"), as follows:

**I.**

### Jurisdiction

1.     This claim is maintained under the Jones Act (46 U.S.C. §§ 30104, *et seq.*) and/or the general maritime law of the United States.

**ANSWER**

The BP Parties admit that Plaintiffs purport to bring their claim under the Jones Act and/or the general maritime law of the United States.  The BP Parties deny that Plaintiffs have stated a valid claim under the Jones Act or the general maritime law of the United States or that

Plaintiffs are entitled to any relief under the Jones Act or the general maritime law of the United States.  The BP Parties further deny that BPPNA and BP Corporation North America Inc. are proper parties to this litigation.  BPPNA is an entity primarily involved in downstream operations such as crude oil refineries, and transportation and marketing of refined products such as gasoline, and had no employees on the *Deepwater Horizon,* was not a party to the drilling rig contract with Transocean, and had nothing to do with exploration activity involving the Macondo Well or the April 20, 2010 incident or resulting oil spill.  Similarly, BP Corporation North America Inc. did not own the MC 252 leasehold, had no employees on the *Deepwater Horizon*, and was not a party to the drilling rig contract with Transocean.  The BP Parties deny the remaining allegations of this paragraph.

2.     These claims are filed in state court pursuant to the "Saving to Suitors" clause. It is well-settled that Jones Act cases are not removable to federal court. Moreover, several defendants are Texas citizens. As such, this case cannot be removed on the basis of diversity jurisdiction. Further, any attempt to stay this case by any defendant under a limitation of liability action (seeking to limit the liability to the value of the vessel on the bottom of the oceanbed floor) is patently frivolous and designed solely to deprive plaintiffs and other similar injured persons from their chosen venue, constitutional right to a jury, and day in court.

## ANSWER

The BP Parties admit that Plaintiffs filed their claims in Texas state court.  The BP Parties deny the remaining allegations of this paragraph.

## II.

## Venue

3.     Venue is proper here pursuant to Texas Civil Practice and Remedies Code, Section 15.0181 and 15.002 because a substantial part of the events giving rise to this action occurred in Galveston County, the residents of Galveston County are affected by this tragedy and spill, witnesses reside in the County, and Defendants do substantial business in, have offices in,

and have the vast majority of their employees in this County. Further, BP is primarily based in Galveston County.

**ANSWER**

The BP Parties deny the allegations of this paragraph.


### III.

### Discovery Level

4.      Discovery in this matter may be conducted under Level 2 of the Texas Rules of Civil Procedure.

**ANSWER**

The BP Parties deny the allegations of this paragraph.


### IV.

### Parties

5.      Plaintiff Joshua Kritzer is a resident of Louisiana. Mr. Kritzer worked for Offshore Cleaning Systems. Mr. Kritzer was blown over 30 feet in the hallway and the ceiling collapsed on him causing him to blackout. He has suffered a closed head injury, other physical injuries, and post traumatic distress.

**ANSWER**

The BP Parties admit that Joshua Kritzer worked for Offshore Cleaning Systems.  The

BP Parties deeply regret the *Deepwater Horizon* accident on April 20, 2010, and offer their

deepest sympathies to the rig personnel who suffered injuries because of the tragic accident.  The

BP Parties, however, lack knowledge or information sufficient to form a belief about the truth of

the remaining allegations of this paragraph, and therefore deny them.


6.      Plaintiff Bill Johnson is a resident of Louisiana. Mr. Johnson worked for Transocean as the Deck Pusher. Bill Johnson has worked offshore nearly 35 years. He was Burkeen's direct supervisor on the day in question. Once the power went out, an explosion

3

rocked Johnson. He suffered smoke inhalation and other physical injuries as he rushed to get his crew to the life rafts. Sadly, Burkeen was one of Johnson's best friends and Burkeen was the only man lost from Johnson's crew. Once they pushed off, the company refused to take Johnson and others in for help. Instead, the company made the decision to keep these men there for over ten hours alongside the blazing rig as the men stared at the rig knowing their friends were on it.

**ANSWER**

The BP Parties admit that Bill Johnson worked for Transocean.  The BP Parties deeply regret the *Deepwater Horizon* accident on April 20, 2010, and offer their deepest sympathies to the rig personnel who suffered injuries because of the tragic accident.  The BP Parties, however, lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

7.     Plaintiff Rhonda Burkeen is a resident of Mississippi.  At the time of the explosion, Rhonda Burkeen was married to Aaron Dale Burkeen.  Aaron Dale Burkeen worked for Transocean as a crane operator.  He was not even supposed to be on tower when the explosion occurred.  Burkeen was relieving another crane operator for dinner when the explosion occurred.  He tried to cradle the crane and escape down the stairs.  The second explosion is believed to have caused his death. Rhonda Burkeen and Aaron Dale Burkeen have a minor child -- Timothy Burkeen.   Additionally, Rhonda Burkeen brings this lawsuit as personal representative on behalf of Aryn Burkeen, who is a minor child of Dale Burkeen from a previous marriage.

**ANSWER**

The BP Parties admit that Mr. Aaron Dale Burkeen worked for Transocean and is now presumed dead.  The BP Parties deeply regret the *Deepwater Horizon* accident on April 20, 2010, and offer their deepest sympathies to the families, friends and colleagues of those who were lost on the *Deepwater Horizon*.  The BP Parties, however, lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

8.     Nick Watson is a resident of Louisiana. Mr. Watson worked for Transocean for three years as a roustabout. He worked with Burkeen on the day of the incident. He was on deck when suddenly the mud came out of the hole at alarming speeds. The power went out and then the explosions occurred. Watson inhaled significant smoke, suffered physical injuries, and suffers from post traumatic stress from watching many of his friends get severely injured and die as a result of the negligence of Defendants.

**ANSWER**

The BP Parties admit that Nick Watson worked for Transocean.  The BP Parties deeply regret the *Deepwater Horizon* accident on April 20, 2010, and offer their deepest sympathies to the rig personnel who suffered injuries because of the tragic accident.  The BP Parties, however, lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

9.     Heith Lambert is a resident of Louisiana. Mr. Lambert worked for Offshore Cleaning Systems and suffered smoke inhalations, hearing loss, physical injury, and suffers from post traumatic stress from watching many of his coworkers get severely injured and die as a result of the negligence of Defendants.

**ANSWER**

The BP Parties admit that Heath Lambert worked for Offshore Cleaning Systems.  The BP Parties deeply regret the *Deepwater Horizon* accident on April 20, 2010, and offer their deepest sympathies to the rig personnel who suffered injuries because of the tragic accident.  The BP Parties, however, lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

10.     Coby Richard is a resident of Louisiana. Mr. Richard worked for Offshore Cleaning Systems and suffered smoke inhalations, hearing loss, physical injury, and suffers from post traumatic stress from watching many of his coworkers get severely injured and die as a result of the negligence of Defendants.

**ANSWER**

The BP Parties admit that Coby Richard worked for Offshore Cleaning Systems.  The BP Parties deeply regret the *Deepwater Horizon* accident on April 20, 2010, and offer their deepest sympathies to the rig personnel who suffered injuries because of the tragic accident.  The BP Parties, however, lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

11.     Brett Guillory is a resident of Louisiana. Mr. Guillory a back injury, neck injury, shoulder injury, suffered smoke inhalations, hearing loss, other physical injury, and suffers from post traumatic stress from the events that unfolded. The ceiling collapsed on him in his room causing him severe injury.

**ANSWER**

The BP Parties deeply regret the *Deepwater Horizon* accident on April 20, 2010, and offer their deepest sympathies to the rig personnel who suffered injuries because of the tragic accident.  The BP Parties, however, lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

12.     Dustin Johnson is a resident of Louisiana. Mr. Johnson worked for Transocean for as a roustabout. He was on tower at the time of the incident. He was knocked to the ground multiple times and suffered physical injuries to his back, shoulder, and neck. Johnson inhaled significant smoke, suffered physical injuries, and suffers from post traumatic stress from watching many of his friends get severely injured and die as a result of the negligence of Defendants.

**ANSWER**

The BP Parties admit that Dustin Johnson worked for Transocean.  The BP Parties deeply regret the *Deepwater Horizon* accident on April 20, 2010, and offer their deepest sympathies to the rig personnel who suffered injuries because of the tragic accident.  The BP Parties, however,

lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.


13.     Stenson Roarke is a resident of Mississippi. Mr. Roarke worked for Transocean. Roarke inhaled significant smoke, suffered physical injuries, and suffers from post traumatic stress from watching many of his friends get severely injured and die as a result of the negligence of Defendants.

**<u>ANSWER</u>**

The BP Parties admit that Stenson Roark worked for Transocean.  The BP Parties deeply regret the *Deepwater Horizon* accident on April 20, 2010, and offer their deepest sympathies to the rig personnel who suffered injuries because of the tragic accident.  The BP Parties, however, lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.


14.     Denise Arnold is mother of Shane Roshto. She tragically lost her son in this accident. Under maritime and relevant law, she was financially dependent current and in to the future. She seeks punitive damages came under the maritime law for the loss her son.

**<u>ANSWER</u>**

The BP Parties admit that Mr. Shane Roshto is presumed dead.  The BP Parties deeply regret the *Deepwater Horizon* accident on April 20, 2010, and offer their deepest sympathies to the families, friends and colleagues of those who were lost on the *Deepwater Horizon*.  The BP Parties, however, lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.


15.     Jacquelyn Duncan is a resident of Mississippi. Upon hearing the news of the explosion, she rushed to the Transocean Offices to check on the status of her brother, Wyatt Kemp, who was working aboard the Deepwater Horizon. Despite knowing her brother was already dead, Transocean told her that her brother was alive and well. Ms. Duncan's relief that her brother was alive and safe was short lived. She later learned that Mr. Kemp had died in the

explosion and that Transocean had lied about his well-being. She has suffered severe emotional distress ever since.

**ANSWER**

The BP Parties admit that Mr. Wyatt Kemp is presumed dead.  The BP Parties deeply regret the *Deepwater Horizon* accident on April 20, 2010, and offer their deepest sympathies to the families, friends and colleagues of those who were lost on the *Deepwater Horizon.*  The BP Parties, however, lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

16.     Cathleena Willis is a resident of Harris County, Texas. Ms. Willis was working aboard the Deepwater Horizon on the date in question. Ms. Willis now suffers from severe ankle pain, back pain, and hearing loss as a result of the explosion. Ms. Willis' claims are maintained against all Defendants except Halliburton.

**ANSWER**

The BP Parties deeply regret the *Deepwater Horizon* accident on April 20, 2010, and offer their deepest sympathies to the rig personnel who suffered injuries because of the tragic accident.  The BP Parties, however, lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

17.     Defendant Transocean, Ltd. is a foreign entity with its principal place of business in Texas, and may be served through its registered agent, Capitol Corporate Services, Inc., 800 Brazos Suite 400, Austin, Texas 78701.

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

18.     Defendant Transocean Offshore Deepwater Drilling Inc. is a foreign entity with its principal place of business in Texas, and may be served through its registered agent, Capitol Corporate Services, Inc., 800 Brazos Suite 400, Austin, Texas 78701.

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

19.     Defendant Transocean Deepwater, Inc. is a foreign entity with its principal place of business in Texas, and may be served through its registered agent, Capitol Corporate Services, Inc., 800 Brazos Suite 400, Austin, Texas 78701.

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

20.     Defendant BP Products North America Inc. is a foreign entity with its principal place of business in Texas. BP Products North America Inc. may be served with process through its registered agent, Prentice Hall Corp. System, 701 Brazos Street, Suite 1050, Austin, Texas, 78701.

**ANSWER**

The BP Parties admit the allegations of this paragraph.

21.     Defendant BP Exploration and Production Inc. is a foreign entity with its principal place of business in Texas. BP Corporation North America, Inc. may be served with process at CT Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas 75201.

**ANSWER**

The BP Parties admit the allegations of this paragraph.

22.     Defendant BP, LLC is a foreign entity with its principal place of business in Texas. BP Corporation North America, Inc. may be served with process at CT Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas 75201.

**ANSWER**

The BP Parties deny that BP, LLC is a foreign entity with its principal place of business in Texas.  The BP Parties deny the remaining allegations of this paragraph.

23.     Defendant BP Corporation North America, Inc. is a foreign entity with its principal place of business in Texas. BP Corporation North America, Inc. may be served with process at Prentice Hall Corp. System, 701 Brazos Street, #1050, Austin, Texas 78701.

**ANSWER**

The BP Parties admit that BP Corporation North America Inc. is a foreign entity.  The BP Parties deny the remaining allegations of this paragraph.

24.     Defendant Halliburton Energy Services, Inc. is a foreign entity with its principal place of business in Texas. Halliburton Energy Services, Inc. may be served with process at CT Corporation System,

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

25.     Defendant Sperry-Sun Drilling Services, Inc. is a foreign entity with its principal place of business in Texas. Sperry-Sun Drilling Services, Inc. may be served with process at CT Corporation System, 350 North St. Paul Street, Dallas, Texas 75201.

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

26.     Defendant Cameron International Corporation d/b/a Cameron Systems Corporation is a foreign corporation with its principal place of business in Texas. Weatherford International, Inc. may be served with process at CT Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas 75201.

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

**V.**

**Nature of the Action**

27.     Plaintiffs suffered severe injuries as a result of the senseless DEEPWATER HORIZON explosion on April 20, 2010. At the time, Plaintiffs were seamen, borrowed or otherwise, employed by Defendants. While the DEEPWATER HORIZON was deployed on navigable waters, and while Plaintiffs were each contributing to and aiding such vessel to accomplish its mission, Plaintiffs were critically injured as a result of the explosion. Plaintiffs suffered smoke inhalation, physical injuries, hearing loss and other damages. Tragically, Aaron Dale Burkeen lost his life in the explosion. Aside from the human losses, the explosion has caused what is expected to be the worst man-made environmental disaster in U.S. history — far eclipsing the EXXON VALDEZ oil spill in 1989.

**ANSWER**

The BP Parties admit that the *Deepwater Horizon* was deployed on navigable waters and that there were one or more explosions on the *Deepwater Horizon* on April 20, 2010.  The BP Parties deny that they employed any of the Plaintiffs.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

28.     The DEEPWATER HORIZON was a floating semi-submersible drilling rig owned by Transocean. It was built in 2001, utilized dynamic positioning technology, and was designed to move from location to location as necessary. BP leased the drilling rig from Transocean for $500,000 per day. The total lease contract was worth more than $544 million. Prior to the April 20th explosion, the DEEPWATER HORIZON had suffered other fires, collisions, and oil spills.

**ANSWER**

The BP Parties admit that the *Deepwater Horizon* was a floating semi-submersible drilling rig owned by one or more Transocean affiliates at the time of the incident, that it was built in 2001, that it utilized dynamic positioning technology, and that it was designed to move from location to location as necessary. The BP Parties deny that any of them leased the drilling rig from Transocean for $500,000 per day or that there was a lease contract that was worth more than $544 million. The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

29.     As a result of the tragedy, U.S. Attorney General Eric Holder is considering bringing criminal charges against BP. This would not be the first time BP has faced criminal charges in relation to its activities in and around the Gulf of Mexico. In 2007, BP pled guilty to felony charges arising out of the March 2005 explosion at its Texas City refinery which killed 15 workers and injured hundreds more. After that explosion, BP was fined more than $21 million by OSHA — the largest penalty ever issued at that time. BP was also required to fix the deficiencies which led to the Texas City disaster. However, BP refused to comply with its obligations and failed to make the required safety upgrades. As a result, in 2009, BP was fined an additional $87 million by OSHA — by far the largest fine in OSHA history. BP's reckless safety culture is systemic.

**ANSWER**

The BP Parties admit that (i) BPPNA pleaded guilty to one violation of Section 112(r)(7) of the Clean Air Act relating to the March 2005 explosion at BP's Texas City refinery; (ii) on or about March 23, 2005 an explosion caused the deaths of fifteen people at BP's Texas City refinery and harmed over 170 others; (iii) the U.S. Department of Labor issued a Citation and Notification of Penalty for Inspection Number 308314640 on September 21, 2005, which contained Proposed Penalties for violations totaling $21,070,000; (iv) in 2005 a settlement agreement was entered into with OSHA which related to the operation of BP's Texas City refinery and included a payment of more than $21 million and, among other things, an agreement

to commission an independent audit and take certain actions as a result of the audit findings; and (v) in or around August 2010, with no admission of liability, BPPNA entered into a settlement agreement with OSHA and paid a fine of $50.61 million for alleged failure to abate certain matters identified in a 2005 settlement agreement with OSHA relating to conditions at BP's Texas City refinery.  The BP Parties deny that OSHA fined any of the BP Parties an additional $87 million, and that any settlement agreement, felony plea, and fines related to BP's Texas City refinery are related in any way to the *Deepwater Horizon* drilling rig or operations, or the Mississippi Canyon Block 252 ("MC 252") exploration well.  The BP Parties deny the remaining allegations of this paragraph.


30.     The DEEPWATER HORIZON tragedy was caused by, among other things, a failure of the rig's well control system. Cameron supplied much of the rig's inadequate, defective blow out prevention equipment.

**<u>ANSWER</u>**

The BP Parties admit that (i) the events aboard the *Deepwater Horizon* were caused by a complex and interlinked series of mechanical failures, human judgments, engineering design, operational implementation and team interfaces that came together to allow the initiation and escalation of the accident; (ii) Cameron International Corp. and/or its affiliates manufactured the blowout preventer used on the *Deepwater Horizon*, which was used on the MC 252 exploration well, and (iii) the blowout preventer failed to seal the well.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.


31.     Halliburton was in charge of cementing the well, but failed to safely do its job. Halliburton's failures contributed to the explosion. Halliburton's faulty cementing work has been linked to other major offshore disasters. For instance, Halliburton's cementing work caused a

massive blowout in August 2009 on another rig off the coast of Australia. Moreover, Sperry (a division of Halliburton) was charged with real time gas monitoring, but failed to safely perform this function.

**ANSWER**

The BP Parties admit that (i) Halliburton Energy Services was a contractor engaged to provide cementing services on the MC 252 exploration well; (ii) the cement barrier did not isolate the hydrocarbons, and there were weaknesses in cement design and testing, quality assurance, and risk assessment; (iii) Halliburton performed the cementing work on the Montara Wellhead Platform off the coast of Australia, which experienced a blowout in August 2009; (iv) Sperry Drilling Services and/or its affiliates provided certain monitoring, measurement, and/or other data services for the drilling operations on the *Deepwater Horizon* drilling rig.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

32.    Defendants are negligent, negligent per se, grossly negligent, and reckless for the following reasons:

  a.   failure to properly supervise their crew;

  b.   failure to properly train their employees;

  c.   failure to provide adequate safety equipment;

  d.   failure to provide adequate medical treatment;

  e.   operating the vessel with an inadequate crew;

  f.   failure to maintain the vessel;

  g.   failure to conduct a proper search and rescue mission;

  h.   vicariously liable for their employees' and agents' negligence, gross negligence, and recklessness;

  i.   violating applicable Coast Guard, MMS, and/or OSHA regulations;

j.   failure to provide plaintiff with a safe place to work, and requiring plaintiff to work in unsafe conditions;

k.   failure to provide sufficient personnel to perform operations aboard the vessel;

l.   failure to exercise due care and caution;

m.  failure to avoid this accident; and

n.   other acts deemed negligent.

**ANSWER**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

33.    At all relevant times, the DEEPWATER HORIZON was unseaworthy.

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

34.    As a result of said occurrences, Plaintiffs collectively sustained the following damages:

a.   Pre-death physical pain and suffering;

b.   Pre-death mental pain, suffering, and anguish;

c.   Past, present, and future physical pain and suffering;

d.   Past, present, and future mental pain, suffering, and anguish;

e.   Past, present, and future medical expenses;

f.   Past lost wages;

g.   Loss of future earning capacity;

h.   Loss of fringe benefits;

15

    i.   Loss of services and support;

    j.   Loss of nurture, guidance, care, and instruction;

    k.   Loss of funeral expenses;

    l.   Loss of inheritance;

    m.  Disfigurement, disability, and/or death;

    n.   Loss of enjoyment of life;

    o.   All survival damages recognized under the general maritime law; and

    p.   all other damages recoverable under law.

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.


35.    Plaintiffs are also entitled to punitive damages because the aforementioned actions of Defendants were grossly negligent and reckless. Defendants' conduct was willful, wanton, arbitrary, and capricious. They acted with flagrant and malicious disregard of Plaintiffs' health and safety and the health and safety of Plaintiffs' co-workers. Defendants were subjectively aware of the extreme risk posed by the conditions which caused Plaintiffs' injuries, but did nothing to rectify them. Instead, Defendants had Plaintiffs and other crew members continue working despite the dangerous conditions that were posed to them and the faulty, defective equipment provided to them. Defendants did so knowing that the conditions posed dangerous and grave safety concerns. Defendants' acts and omissions involved an extreme degree of risk considering the probability and magnitude of potential harm to Plaintiffs and others. Defendants had actual, subjective awareness of the risk, and consciously disregarded such risk by allowing Plaintiffs to work under such dangerous conditions. Moreover, Plaintiffs may recover punitive damages under the general maritime law following the United States Supreme Court's ruling in *Atlantic Sounding* and *Exxon Shipping Company*.

**ANSWER**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

36.     As a result of said occurrences, Plaintiffs sustained severe injuries to their bodies. Plaintiffs suffered injuries to their ankles, hips, knees, backs, necks, and other body parts, which resulted in physical pain, suffering, mental anguish, fear, and discomfort. Plaintiffs continue to suffer following their injuries. They are owed maintenance and cure for the past and the future. To the extent Defendants have refused and will refuse to pay Plaintiffs maintenance and cure, entitling Plaintiffs to an award of attorneys fees and punitive damages. Plaintiffs have sustained a loss of earnings in the past and earning capacity in the future. Plaintiffs have been damaged in a sum far in excess of the minimum jurisdictional limits of this Honorable Court, for which they now sue.

**ANSWER**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the

BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the

truth of the remaining allegations of this paragraph, and therefore deny them.


**VI.**

**Intentional Infliction of Emotional Distress Claim by
Jacquelyn Duncan against the Transocean Defendants.**

37.     Plaintiff, Jacquelyn Duncan brings this claim individually against the Transocean Defendants.

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth

of the allegations of this paragraph, and therefore deny them.


38.     Upon hearing of the disaster, Ms. Duncan went to the Transocean offices to inquire about her brother, Wyatt Kemp, because he was working aboard the Deepwater Horizon at the time of the explosion. By the time she spoke to Transocean employees about her brother, Transocean already had knowledge that her brother was dead. Despite this knowledge, Transocean lied to Ms. Duncan, stating that her brother was alive and well and that he would be returning safely to shore. Ms. Duncan was overjoyed at the news her brother was still alive and safe. However, she later learned that her brother was one the workers killed in the explosion.

**ANSWER**

The BP Parties admit that Mr. Wyatt Kemp is presumed dead. The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

39.     In Texas, a cause of action for intentional infliction of emotional distress exists where: (1) the plaintiff is a person; (2) the defendant acted intentionally or recklessly; (3) the emotional distress suffered by plaintiff was severe; (4) the defendant's conduct was extreme and outrageous; (5) the defendant's conduct proximately caused the plaintiff's emotional distress. Here, Ms. Duncan is a person. Transocean acted intentionally as it knew Ms. Duncan's brother was dead but lied to her. Ms. Duncan suffered severe distress as a result of Transocean's lie about her brother. Specifically, she is now an emotional wreck and has trouble performing basic day-to-day tasks. Transocean's conduct was also extreme and outrageous. Transocean knew the families of the rig workers would be looking to them for guidance and honesty. However, they lied to Ms. Duncan's face.

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

40.     As a result of the emotional distress Transocean has inflicted upon Ms. Duncan she seeks actual damages, medical expenses in the past and future, loss of earning capacity in the past and future, and exemplary damages.

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

## VII.

## Jury Trial

41.     Plaintiffs hereby request a trial by jury on all claims.

**ANSWER**

The BP Parties admit that Plaintiffs have requested a trial by jury on all claims.  The BP Parties deny that Plaintiffs are entitled to a trial by jury except as required under the laws applicable to a trial of their claims.

## VIII.

### Prayer

Plaintiffs pray that this citation issue and be served upon Defendants in a form and manner prescribed by law, requiring that the Defendants appear and answer, and that upon final hearing, Plaintiffs have judgment against Defendants, both jointly and severally, in a total sum in excess of the minimum jurisdictional limits of this Court, plus pre-judgment and post-judgment interests, all costs of Court, attorneys' fees, punitive damages, and all such other and further relief, to which they may show themselves justly entitled.

**ANSWER**

WHEREFORE, the BP Parties respectfully request that the Court dismiss Plaintiffs' claims against the BP Parties with prejudice.  The BP Parties deny the allegations of this paragraph to the extent they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

### AFFIRMATIVE DEFENSES

### FIRST DEFENSE

The BP Parties maintain that there was no negligence or fault on their part and that Plaintiffs' damages and injuries, if any, were caused by the fault, carelessness, misconduct, negligence and/or want of due care of other individuals, entities, or vessels for whom the BP Parties are not legally responsible.

## SECOND DEFENSE

Plaintiffs' damages or injuries, if any, were the result of an occurrence and/or accident unforeseeable by the BP Parties and for which the BP Parties cannot be held legally responsible.

## THIRD DEFENSE

Plaintiffs' alleged damages or injuries, if any, were caused or contributed to by acts and/or omissions that constitute independent, intervening and/or superseding causes for which the BP Parties are not legally responsible.

## FOURTH DEFENSE

Any alleged negligence by the BP Parties, which the BP Parties specifically deny, was not the proximate cause or sole proximate cause of Plaintiffs' alleged damages and there is no causal connection between the acts complained of and the damages and injuries alleged.

## FIFTH DEFENSE

To the extent the BP Parties are found liable to Plaintiffs for any damages or injuries, the BP Parties are entitled to have any reward or recovery mitigated or reduced accordingly by the contributory or comparative negligence of other individuals, entities, or vessels.

## SIXTH DEFENSE

To the extent that the BP Parties are found liable to Plaintiffs for any damages, the BP Parties are entitled to contractual indemnity from other parties or entities.

## SEVENTH DEFENSE

To the extent that the BP Parties are found liable to Plaintiffs for any damages, the BP Parties are entitled to indemnity from other parties or entities.

## EIGHTH DEFENSE

To the extent that the BP Parties are found liable to Plaintiffs for any damages, the BP Parties are entitled to contribution from other parties or entities.

**NINTH DEFENSE**

To the extent that the BP Parties are found liable to Plaintiffs for any damages, the BP Parties are entitled to a set-off or other equitable reduction in liability for any compensation paid by the BP Parties or other parties or entities.

**TENTH DEFENSE**

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs are not entitled under the law to the damages that they seek, the alleged damages sought are too speculative and uncertain, and because of the impossibility of the ascertainment and allocation of such damages.

**ELEVENTH DEFENSE**

The claim of Denise Arnold in this matter should be joined with those of Natalie and Blaine Roshto in Civil Action No. 2:10-cv-1156 under Fed.R.Civ.Proc. 19(a) and/or consolidated for trial purposes under Fed.R.Civ.Proc. 42(a).

**TWELFTH DEFENSE**

Upon information and belief, Plaintiff Denise Arnold may not be the proper party plaintiff to bring this claim as she makes no allegations that she has been appointed personal representative of the estate of the decedent.

**THIRTEENTH DEFENSE**

The BP Parties assert that no double recovery of the same damages should be permitted in Civil Action No. 2:10-cv-1156 and Civil Action No. 2:10-cv-4427.

**FOURTEENTH DEFENSE**

Plaintiffs' claims for punitive damages are barred, in whole or in part, because the BP Parties did not engage in any willful, wanton, malicious, oppressive, or reckless conduct that might entitle Plaintiffs to an award of punitive damages.

## FIFTEENTH DEFENSE

Plaintiffs' damages are barred, in whole or in part, by a failure to mitigate damages.

## SIXTEENTH DEFENSE

The BP Parties deny that they are liable to any extent as alleged in the Fifth Amended Petition, and claim exoneration from any and all liability for all losses, damages, and injuries incurred by Plaintiffs as a result of the allegations contained in the Fifth Amended Petition and for any other damages or claims which exist or may arise, but have not been specifically pled.

The BP Parties specifically reserve the right to amend or supplement their Affirmative Defenses and this Answer as additional facts concerning their defenses become known to them.

WHEREFORE, the BP Parties respectfully request that the Court dismiss Plaintiffs' claims against the BP Parties with prejudice.


Dated:  February 11, 2011

Respectfully submitted,

/s/ Don K. Haycraft
Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

and

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Wendy Bloom, P.C.
Timothy A. Duffy, P.C.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
312-862-2000 (Tel)
312-862-2200 (Fax)

and

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
202-662-5985

*Attorneys for BP Exploration & Production
Inc., BP Products North America Inc., and
BP Corporation North America Inc.*

### CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice in accordance with the procedures established in MDL 2179, on this 11th day of February, 2011.


/s/  Don K. Haycraft__