**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig | * | MDL No. 2179 |
| "Deepwater Horizon" in the Gulf | * | |
| of Mexico, on April 20, 2010 | * | SECTION "J" |
| | * | JUDGE BARBIER |
| This Document Relates to: | * | |
| *Crawford v. BP, PLC*, et al. | * | |
| No. 10-01540 | * | MAGISTRATE NO. 1 |
| | * | MAGISTRATE SHUSHAN |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF
DEFENDANTS ANADARKO PETROLEUM CORPORATION,
ANADARKO E&P COMPANY LP, AND MOEX OFFSHORE 2007 LLC
TO DISMISS COMPLAINT PURSUANT TO FED R. CIV. P. 12(b)(6)**

**I.**
**INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Anadarko Petroleum Corporation, Anadarko E&P Company LP (together, "Anadarko"), and MOEX Offshore 2007 LLC ("MOEX Offshore") move to dismiss Plaintiff's Complaint against them in its entirety.

*First*, Plaintiff fails a matter of law to state a claim for negligence or gross negligence under the general maritime law against Anadarko or MOEX Offshore because his own allegations conclusively establish that they owed no legal duty to Plaintiff. It is fundamental that a duty to prevent harm resulting from oil and gas operations arises as a consequence of control over the operations. *Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548, 550 (5th Cir. 1987), *cert. denied*, 485 U.S. 1034 (1988). Yet Plaintiff makes no allegation that Anadarko or MOEX Offshore owned or possessed a charterer interest in the *Deepwater Horizon* or had any operational control over the rig or the well out of which a duty to Plaintiff could have arisen. To the contrary, Plaintiff alleges that BP operated the oil well and that BP and Transocean operated

and controlled the *Deepwater Horizon*.  Compl. ¶ 23.

*Second*, Plaintiff cannot state a claim for strict liability for ultrahazardous activities because maritime law "does not recognize the doctrine of strict liability for abnormally dangerous or ultrahazardous activity."  *Great Lakes Dredge & Dock Co. v. City of Chicago*, No. 92 C 6754, 1996 WL 210081, at *5 (N.D. Ill. Apr. 26, 1996).  Moreover, even if state law were applicable here, the Fifth Circuit has held that oil drilling is not an ultrahazardous activity.  *See Ainsworth*, 829 F.2d at 550.

Finally, even if Plaintiff could state a claim against Anadarko or MOEX Offshore, Plaintiff has no right to recover non-pecuniary damages (mental anguish, emotional distress, and punitive damages).  *Miles v. Apex Mar. Corp.*, 498 U.S. 19, 31–32 (1990).

## II.
## FACTUAL ALLEGATIONS IN THE COMPLAINT

Plaintiff alleges that "Transocean employed the Named Plaintiff as a member of the crew of the Deepwater Horizon . . . ."  Compl. ¶ 16.  He alleges that "[a]t all times material hereto, the *Deepwater Horizon* was owned, manned, possessed, managed, controlled, chartered, and/or operated by Transocean and/or BP Companies."  *Id*. ¶ 23.  Plaintiff alleges that "[o]n or about April 20, 2010, an explosion and fire occurred aboard the Deepwater Horizon, causing the vessel to sink in the navigable waters of the Gulf of Mexico."  *Id*. ¶ 18.  Plaintiff alleges that he "suffered severe and permanent mental anguish and emotional distress as a survivor of the incident . . . ."  *Id*. ¶ 28.

Plaintiff alleges that "BP Companies, Anadarko E&P, Anadarko Petroleum (collectively 'Anadarko'), and MOEX are the owners of a lease granted by the Mineral Management Service ('MMS') which allows them to drill for oil and perform oil production related operations at the site of the oil spill," and that "BP Companies is the designated operator of the lease."  *Id*. ¶ 17.

Plaintiff does not allege that Anadarko or MOEX Offshore had any ownership or charter's interest in the *Deepwater Horizon*, nor does he allege that these Defendants had operational control over the rig or the well.

Based on these allegations, Plaintiff purports to assert claims against Anadarko and MOEX Offshore for negligence and strict liability under the general maritime law.  *Id.* ¶ 14, 39–59.

### III.
### ARGUMENT

**The Complaint Should Be Dismissed Because Plaintiff Fails to State a Claim Against Anadarko or MOEX Offshore Upon Which Relief Can Be Granted**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555); *see also Hershey v. Energy Transfer Partners*, 610 F.3d 239, 245–46 (5th Cir. 2010) (same).

To state a claim for relief, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556).  If there are insufficient factual allegations to raise a right to relief "'above the speculative level,'" *Jebaco, Inc. v. Harrah's Operating Co.*, 587 F.3d 314, 318 (5th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555), or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199,

215 (2007), the claim should be dismissed.  In the latter circumstance, which fully applies here, the plaintiff "pleads himself out of court by 'admitting all the ingredients of an impenetrable defense.'"  *Barasich v. Shell Pipeline Co.*, Nos. 05-4180, 05-4197, 05-4199, 05-4212, 05-4512, 06-5102, 2006 WL 3913403, at *2 (E.D. La. Nov. 20, 2006) (Barbier, J.) (internal citations omitted) (granting Rule 12(b)(6) dismissal in part).

**A.      Plaintiff's Claims Arise Under Only the General Maritime Law.**

Plaintiff variously asserts that his claims arise under the general maritime law, Compl. ¶ 14, Louisiana law, and the laws of other affected Gulf Coastal States.  *Id.* ¶ 46.  However, based upon Plaintiff's allegations, Plaintiff's claims arise under only the general maritime law, and state law does not apply to this case.  In a case of an alleged tort occurring on a vessel on the navigable waters and where the injury is connected to a traditional maritime activity, federal admiralty and maritime law supplies the rules of decision.  *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 533–34 (1995).  Plaintiff satisfies the location test because he alleges that he was injured while working on the vessel *Deepwater Horizon*.  Compl. ¶ 2.  Plaintiff satisfies the connection test because "oil and gas drilling on navigable waters aboard a vessel is recognized to be maritime commerce."  *Theriot v. Bay Drilling Corp.*, 783 F.2d 527, 538–39 (5th Cir. 1986).  Furthermore, maritime commerce has unquestionably been disrupted, as evidenced by the closure of large swaths of the Gulf of Mexico to commercial fishing, and thus the connection test is met for this reason also.  *Grubart*, 513 U.S. at 533–34. Therefore, Plaintiff's claims are governed by the general maritime law, and state law does not apply to this case.

**B.      Plaintiff Fails to Allege Any Facts Supporting His Allegations That Anadarko and MOEX Offshore Are Liable for Maritime Negligence, Gross Negligence, or Strict Liability.**

The Complaint contains no facts from which the Court plausibly could infer that Anadarko or MOEX Offshore is liable to Plaintiff under the general maritime law for negligence or strict liability.[1]  To the contrary, the facts alleged make clear that, as a matter of law, Plaintiff cannot state a claim against Anadarko and MOEX Offshore for which relief can be granted.

**1.      The Complaint Contains No Facts That, If True, Would Render Anadarko or MOEX Offshore Directly Liable for Maritime Negligence or Gross Negligence.**

**a.      As a Matter of Law, Anadarko and MOEX Offshore Did Not Owe Plaintiff Any Duty of Care.**

"To establish maritime negligence, a plaintiff must 'demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by [the] plaintiff, and a causal connection between the defendant's conduct and the plaintiff's injury.'"  *Canal Barge Co. v. Torco Oil Co.*, 220 F.3d 370, 376 (5th Cir. 2000) (quoting *In re Cooper/T. Smith*, 929 F.2d 1073, 1077 (5th Cir. 1991)).

Plaintiff alleges no facts from which the Court could infer that Anadarko or MOEX Offshore owed him any legal duty because Plaintiff does not allege that Anadarko or MOEX Offshore controlled or had any right to control the operations of the *Deepwater Horizon*.  *See generally In re Graham Offshore, Inc.*, 287 F.3d 352, 359 (5th Cir. 2002) (owner of mobile oil

---

[1]      Plaintiff purports to bring a class action, *see* Compl. ¶¶ 1, 29–38, and at times refers to claims under "the laws of the neighboring states."  *Id*. ¶ 14; *see also id*. ¶¶ 46–48.  However, no class has been certified.  While defendants normally are able to move to dismiss class action claims, *see John v. Nat'l Sec. Fire and Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007), Anadarko and MOEX Offshore have not done so here because the Court has stayed class action motion practice and deadlines.  CMO 1 at 12.  Anadarko and MOEX Offshore thus do not waive any argument that the class action allegations in Complaint are insufficient as a matter of law.

rig owed no duty to injured employee of subcontractor).  It is fundamental that a duty to prevent harm resulting from oil and gas operations arises as a consequence of control over the operations. *See, e.g.*, *Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548, 550 (5th Cir. 1987), *cert. denied*, 485 U.S. 1034 (1988).  Further, it is settled that where a principal retains an independent contractor to conduct oil and gas operations but does not retain control over or participate in the actions of the contractor, the principal neither assumes nor owes any duty to the contractor's employees. *Thomas v. Burlington Res. Oil & Gas Co.*, No. Civ. A. 99-3904, 2000 WL 1528082, at *2 (E.D. La. Oct. 13, 2000) (Barbier, J.).  Even when a principal without control over, or participation in, the operation has *actual knowledge* of dangerous conditions on an oil rig, the principal has no legal duty to intercede.  *See id.*; *Ronquille v. MMR Offshore Servs., Inc.*, 353 F. Supp. 2d 680, 682 (E.D. La. 2004) (the presence of a company representative on an oil platform with knowledge of the rig's operations "is insufficient to create a duty; therefore, the law does not support the imposition of liability for any failure to intercede").[2]

*Ainsworth* is instructive and is cited by courts applying both Louisiana law and the general maritime law.  *See, e.g.*, *Gremillion v. Gulf Coast Catering Co.*, No. 88-4544, 1989 WL 104100, at *6 (E.D. La. Sept. 5, 1989), *aff'd*, 904 F.2d 290 (5th Cir. 1990) (citing *Ainsworth* in tort case under maritime law); *Fontenot v. Southwestern Offshore Corp.*, 787 So.2d 588, 594 (La. Ct. App. 2001) (tort case under maritime law).  In *Ainsworth*, Shell hired an independent contractor, Hercules, to erect an offshore drilling rig.  829 F.2d at 549.  Hercules worked its

---

[2]      Plaintiff also alleges that "the evidentiary doctrine of *res ipsa loquitur* is applicable herein."  Compl. ¶ 55.  That is a legal conclusion, not a factual allegation assumed to be true on a motion to dismiss.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  In addition, as a legal matter, res ipsa loquitur applies only "when a thing which causes injury . . . is shown to be under the exclusive control of the defendant."  *Fruge v. Penrod Drilling Co.*, 918 F.2d 1163, 1166 (5th Cir. 1990) (quoting *San Juan Light & Transit Co. v. Requena*, 224 U.S. 89, 98–99 (1912)).  The Complaint's allegations showing Anadarko's and MOEX Offshore's lack of control make res ipsa loquitur inapplicable to Anadarko and MOEX Offshore.

crews around the clock, with no lights in the work area, and a worker fell as a result.  *Id.*  Shell had a "company man" on the rig who was aware of the hazardous conditions, but Shell retained no control over and did not participate in the operation of the rig.  The Fifth Circuit rejected the plaintiff's argument that Shell's knowledge of the danger made it directly liable for the injury and held instead that because Shell lacked control over the operation, it had no duty to intervene. *Id.* at 551.

A similar analysis pertains here because Plaintiff's allegations fall far short of even the *Ainsworth* facts.  Plaintiff concedes that "BP Companies is the designated *operator* of the lease," Compl. ¶ 17 (emphasis added), and that Anadarko and MOEX Offshore are merely co-lessees. A *non-operating* interest in a lease does not plausibly create a duty to someone else's employee working onboard someone else's vessel.  *See In re Graham Offshore, Inc.*, 287 F.3d 352, 359 (5th Cir. 2002).  The Complaint is devoid of any facts alleging conduct by Anadarko or MOEX Offshore in breach of any duty.  Plaintiff does not allege any facts in his Complaint that his injuries resulted from any act by Anadarko or MOEX Offshore.  To the contrary, the express allegation that "BP Companies"—a term Plaintiff defines to include solely "BP, BP Products, BP America, BP America Production, and/or BP E&P," Compl. ¶ 16—"is the designated operator of the lease," *id*. ¶ 17, negates any inference that Anadarko or MOEX Offshore conducted any of the *operations* on the *Deepwater Horizon* that allegedly led to Plaintiff's injuries and establishes that Plaintiff is not entitled to relief.  *See Jones v. Bock*, 549 U.S. 199, 215 (2007) ("if the allegations, taken as true, show the plaintiff is not entitled to relief," then the "complaint is subject to dismissal").

If in *Ainsworth* a company man on the rig with actual knowledge of a dangerous situation had no duty to intercede because he lacked control over the operations on the rig, it necessarily

follows that Anadarko and MOEX Offshore had no duty to Plaintiff.  Both were hundreds of miles away from the rig, both lacked any contractual relationship with the Plaintiff's employer, and neither are alleged to have had any actual knowledge of a dangerous situation.[3]  Because Plaintiff fails to state a claim for negligence against Andarko or MOEX Offshore, Plaintiff also fails to state any claim against them for gross negligence.[4]

> **b.    Plaintiff Cannot State a Claim Against Anadarko and MOEX Offshore by Indiscriminately Lumping Them Together with Other Defendants Whose Relationship to Plaintiff Was Fundamentally Different.**

The Complaint is replete with conclusory allegations against the "defendants."  Plaintiff improperly lumps together with broad and ambiguous factual assertions entities that are differently situated.  As the plaintiffs in Amended B1 Bundle Master Complaint recognize, Anadarko and MOEX Offshore, as non-operating investors, are not similarly situated to the defendants who actually controlled the drilling operations on the *Deepwater Horizon*.[5]  In

---

[3]    Plaintiff's allegations against Anadarko and MOEX Offshore contrast sharply with Plaintiff's allegations against drilling defendants, such as BP and Transocean, on this point. Unlike Anadarko and MOEX Offshore, BP and Transocean are expressly alleged to have either controlled, approved, or participated in the drilling, cementing, and temporary well abandonment activities of the *Deepwater Horizon* that allegedly caused Plaintiff's harm.  Compl. ¶ 16; *see also Denson v. Diamond Offshore Co.*, 955 So.2d 730, 733–34 (La. Ct. App. 2007) (distinguishing *Ainsworth*, 829 F.2d, *Wallace v. Oceaneering Int'l*, 727 F.2d 427 (5th Cir. 1984), and *McCormack v. Noble Drilling Corp.*, 608 F.2d 169 (5th Cir. 1979) because evidence showed company man on oil rig was involved in operations in that case).

[4]    In addition to Plaintiff's failure to allege any basis for finding that Anadarko and MOEX Offshore owed him any duty, Plaintiff fails to allege all elements necessary to state a claim for the emotional distress damages he seeks.  Plaintiff does not allege that he suffered any physical injury or impact. Compl. ¶ 28.  "Beyond question, purely emotional injuries will be compensated [only] when maritime plaintiffs satisfy the "physical injury or impact rule." *Plaisance v. Texaco, Inc.*, 966 F.2d 166, 168-169 (5th Cir. 1992) (*en banc*); *Gough v. Natural Gas Pipeline Co. of Amer.*, 996 F.2d 763, 765 (5th Cir. 1993).

[5]    The B1 Bundle plaintiffs divide the named defendants into three distinct groups: (1) "the Drilling Defendants," including BP, Transocean, Halliburton and M-1, who are alleged to have operated or participated in the operations of the *Deepwater Horizon*, Amend. Mast. Compl. B1

contrast, Plaintiff in this case alleges in paragraph 25 of the Complaint that the accident was

"caused by the negligence of all Defendants . . . ;" alleges in paragraph 47 that "Defendants

failed to conform their conduct to the appropriate legal standard . . . ;" and alleges in paragraph

49 that "[a]s a direct and proximate result of Defendants' wrongful conduct, Defendants have

caused or will cause the Named Plaintiff and Class Members to suffer and continue to suffer

disability" and other injuries.

As an initial matter, those generalized, undifferentiated allegations fail to satisfy the

notice pleading requirement of Federal Rule of Civil Procedure 8. *See Pro Image Installers, Inc.*

*v. Dillon*, No. 3:08cv273/MCR/MD, 2009 WL 112953, at *2 (N.D. Fla. Jan. 15, 2009)

(dismissing complaint that inadequately distinguished between the separate defendants); *Lane v.*

*Capital Acquisitions & Mgmt. Co.*, No. 04-60602CIV, 2006 WL 4590705, at *5 (S.D. Fla. Apr.

14, 2006) ("By lumping all the defendants together in each claim and providing no factual basis

to distinguish their conduct, the Lane's Complaint fails to satisfy the minimum standard of Rule

8") (citation omitted).  Here, the lumping-together allegations are particularly inadequate in light

of Plaintiff's concession that BP and Transocean were the entities that had control over drilling

operations and activities.

Plaintiff's generalized allegations also "do not suffice" because they are, at most,

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  They are prototypes of the

"unadorned, the-defendant-unlawfully-harmed-me accusation" that the Supreme Court has held

---

¶¶ 210–29; (2) the products liability defendants, including Weatherford and Cameron, who are
alleged to have manufactured defective products used on the *Deepwater Horizon*, *id.* ¶¶ 230–32;
and (3) the non-operating investor defendants, including Anadarko Petroleum Corporation,
Anadarko E&P Company, LP, MOEX Offshore 2007, LLC, MOEX USA Corporation, and
Mitsui Oil Exploration Co., who are alleged to be "non-operational leaseholders" of the
Macondo well where the Drilling Defendants conducted their operations.  *Id.* ¶¶ 233–50.

insufficient.  *Id.*; *see also Jebaco, Inc. v. Harrah's Operating Co.*, 587 F.3d 314, 318 (5th Cir.

2009) ("the complaint must allege 'more than labels and conclusions'") (quoting *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007)).

In sum, Plaintiff alleges no facts that show that Anadarko or MOEX Offshore could be

directly liable for maritime negligence.  Instead, Plaintiff alleges facts that show as a matter of

law that Anadarko and MOEX Offshore cannot be held so liable.

**2.    The Complaint Contains No Facts From Which Anadarko or MOEX Offshore Could be Found Vicariously Liable for Maritime Negligence or Gross Negligence.**

Lacking any facts to directly tie the Anadarko and MOEX Offshore to Plaintiff's injuries,

the Complaint conclusorily asserts that Anadarko and MOEX Offshore are "jointly and solidarily

responsible for all activities of the Deepwater Horizon and for all damages and relief requested

herein" as "lessees" of the well site.  Compl. ¶ 17.[6]  That allegation also is a "bare assertion[]"

that is "conclusory and not entitled to be assumed to be true."  *Iqbal*, 129 S. Ct. at 1951 (citations

omitted).  This is particularly so given Plaintiff's express allegation—in the same paragraph—

that "BP companies is the designated *operator* of the lease."  *Id.* ¶ 17 (emphasis added).

The mere existence of a lease agreement between Anadarko, MOEX Offshore, and BP is

not a legally sufficient basis on which to impose vicarious liability.  *Burlington Res., Inc. v.*

*United Nat'l Ins. Co.,* 481 F. Supp. 2d 567, 573 (E.D. La. 2007) ("a non-operator of a well is not

liable for the tortious acts of the operator," so "[t]he [Joint Operating Agreement] in no way

created any type of vicarious tort liability . . .").  Before a non-actor can be jointly and solidarily

liable for the tortious conduct of another, there must be a sufficient relationship among the

parties to permit imputation of liability to the non-actor.  *See generally St. Paul Fire and Mar.*

---

[6]    "The civil law concept of *in solido* or solidary liability is the functional equivalent of the common law principle of joint and several liability."  *Martin v. D.R. Horton, Inc.*, No. 07-940-C, 2008 WL 4693397, at *3 n.4 (M.D. La. Oct. 23, 2008) (citations omitted).

*Ins. Co. v. Vest Transp. Co.*, 666 F.2d 932, 937 (5th Cir. 1982) (considering in case of maritime casualty whether parties were "in a joint venture at the time of the casualty so as to impute" one party's negligence to the other); *see also Johnson v. Peerless Ins. Co.*, 299 So.2d 434, 436 (La. Ct. App. 1974) ("[I]n order to hold a third party liable for the damage caused by a tort-feasor, plaintiff must allege and prove a relationship which forms the legal basis for the third party's vicarious liability").

The Fifth Circuit "equates vicarious liability with control." *Hajtman v. NCL (Bahamas) Ltd.*, 526 F. Supp. 2d 1324, 1327 (S.D. Fla. 2007) (citing *Barbetta v. Bermuda Star*, 848 F.2d 1364, 1369 (5th Cir. 1988)). Thus, in *Sasportes v. M/V Sol de Copacabana*, the Fifth Circuit explained that while a "joint venture" could support a finding of vicarious liability, such joint ventures must "involve joint control or the joint right of control." 581 F.2d 1204, 1208 (5th Cir. 1978). Here, while Plaintiff attempts to impute vicarious liability based on the existence of a lease agreement, he does not allege the existence of a joint venture with joint control and does not allege any facts from which the Court could infer the existence of such a joint venture. *See* Compl. ¶ 17. "[I]n determining whether a joint venture exists . . . pertinent factors include: (1) *the existence of joint control, or a joint right of control, relevant to the vessel's operations*, (2) joint proprietary interests in the subject matter of the venture, and (3) a sharing of profits and losses." *Hinson v. M/V Chimera*, 661 F. Supp. 2d 614, 619 (E.D. La. 2009) (emphasis added, citations omitted). Furthermore, "the parties' intentions are important." *Sasportes*, 581 F.2d at 1208 (citation omitted).

Applying this standard, courts have held that a non-operating partner of a mining operation does not have vicarious liability for the negligence of the operating partner where, as here, the non-operating partner does not have authority to control the enterprise. *See, e.g., James*

*v. Nico Energy Corp.*, 838 F.2d 1365, 1373 (5th Cir. 1988) (no joint venture where one party's involvement in oil wells was limited to investment of capital and another party had "the sole right of control in drilling and operating of wells"); *Transcon. Gas Pipe Line Corp. v. Mr. Charlie*, 294 F. Supp. 1025, 1031 (E.D. La. 1968), *aff'd in relevant part and rev'd in part on other grounds*, 424 F.2d 684 (5th Cir. 1970), *cert. denied*, 400 U.S. 832 (1970) (no indirect liability under maritime law for non-operating co-owners of oil and gas lease where designated operator, but not non-operators, was negligent); *Bolivar v. R & H Oil and Gas Co.*, 789 F. Supp. 1374, 1381–82 (S.D. Miss. 1991) (one who has no right to control operations at gas well may not be held liable as joint venturer).[7]

Plaintiff does not allege that Anadarko or MOEX Offshore exercised, or had any right to control, any relevant activity.  To the contrary, Plaintiff alleges that only BP was "the designated operator of the lease" in the Macondo well, Compl. ¶ 17, and that "[a]t all times material hereto, the *Deepwater Horizon* was owned, manned, possessed, managed, controlled, chartered, and/or operated by Transocean and/or BP Companies."  *Id.* ¶ 23.  By affirmatively alleging that defendants *other than* Anadarko and MOEX Offshore "controlled" the *Deepwater Horizon* "at all material times," *id.* ¶ 23, and that Anadarko and MOEX Offshore were merely co-leaseholders in the well, *id.* ¶ 17, Plaintiff's own allegations conclusively establish that Anadarko and MOEX Offshore cannot be held vicariously liable under maritime law.

---

[7]     *See also Blocker Exploration Co. v. Frontier Exploration, Inc.,* 740 P.2d 983, 988 (Colo. 1987) (no joint venture where non-operating owner merely invested funds and there was no right of participation in management and control of operation); *Archer v. Bill Pearl Drilling Co.*, 655 S.W.2d 338, 344 (Tex. App. 1983) (no joint venture in negligence action as a matter of law where co-owner merely invested in venture but exercised no right to participate in control or operation of drill site); *Ayco Dev. Corp. v. G.E.T. Serv. Co.*, 616 S.W.2d 184, 186 (Tex. 1981) (no joint venture where defendants merely invested by paying costs of drilling well but did not participate in actual drilling, operation and control of the well).

Accordingly, the Complaint lacks any factual allegations that would support a finding that Anadarko and MOEX Offshore are vicariously liable for other defendants' negligence or gross negligence under the general maritime law. Rather, Plaintiff's own allegations preclude any finding of liability as a matter of law. Because neither direct nor vicarious liability has been adequately alleged, the Court should dismiss Plaintiff's claims for maritime negligence as to Anadarko and MOEX Offshore.

## C.   Plaintiff Fails to State a Claim Against Anadarko or MOEX Offshore Under the General Maritime Law for Strict Liability for Ultrahazardous Activity.

Plaintiff's remaining claim against Anadarko and MOEX Offshore is for strict liability, alleging that oil drilling is an ultrahazardous activity. Compl. ¶ 56–59. That claim also fails as a matter of law and should be dismissed.

First, "federal maritime law, which governs the present admiralty proceeding, does not recognize the doctrine of strict liability for abnormally dangerous or ultrahazardous activity." *Great Lakes Dredge & Dock Co. v. City of Chicago*, No. 92 C 6754, 1996 WL 210081, at *5 (N.D. Ill. Apr. 26, 1996); *Actiesselskabet Ingrid v. Cent. R.R. Co.*, 216 F. 72, 78 (2d Cir. 1914), *cert. denied*, 238 U.S. 615 (1915) (rejecting applicability of strict liability principles in case of vessel that exploded while transporting dynamite). Rather, "maritime law that governs a traditional maritime tort . . . requires findings of fault and causation as predicates to liability." *Maryland Dep't of Natural Res. v. Kellum*, 51 F.3d 1220, 1224 (4th Cir. 1995) (holding application of state strict liability law preempted by maritime law); *see also EAC Timberlane v. Pisces, Ltd.*, 745 F.2d 715, 721–22 (1st Cir. 1984) ("The imposition of a rule of strict liability for the carriage of ultrahazardous materials . . . would . . . be inconsistent with established principles

of general maritime law").[8]  Accordingly, Plaintiff's claim for strict liability should be dismissed for that reason alone.

Second, the Fifth Circuit has held as a matter of state law, which is not applicable here, that oil drilling is not an ultrahazardous activity.  In *Ainsworth*, the Court rejected a claim that Shell Offshore was engaged in an ultrahazardous activity when it drilled for oil from an offshore platform in the Gulf of Mexico.  *Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548, 549 (5th Cir. 1987), *cert. denied*, 485 U.S. 1034 (1988).  The Fifth Circuit "conclude[d] that drilling operations are not ultrahazardous."  *Id.* at 550.  Specifically, the Court held that drilling operations failed to satisfy the necessary requirement of the ultrahazard doctrine "that the activity 'can cause injury to others, even when conducted with the greatest prudence and care.'" *Id.* (citation omitted); *see also Roberts v. Cardinal Servs., Inc.*, 266 F.3d 368, 383 (5th Cir. 2001) (holding that activities "performed frequently in conjunction with both enhancing the flow of oil and gas in a well and plugging and abandoning particular strata or entire wells" and "easily classifiable as a 'drilling operation'" are "thus not ultrahazardous under *Ainsworth*").

**D.     Plaintiff's Claims for Non-Pecuniary Damages Must Be Dismissed.**

Plaintiff seeks to recover non-pecuniary damages, including mental anguish, emotional distress, and punitive and exemplary damages, Compl. ¶¶ 28, 66–67, but these remedies are unavailable under the general maritime law.  The Fifth Circuit has held that under general maritime law, a seaman cannot recover non-pecuniary damages from third-party non-employers, such as Anadarko and MOEX Offshore.[9]  *Scarborough v. Clemco Indus.*, 391 F.3d 660, 666–68

---

[8]     Strict liability has been adopted into maritime law "only" for "the doctrine of strict *products* liability," and not for ultrahazards.  *EAC Timberlane*, 745 F.2d at 722 n.13 (emphasis in original).

[9]     Plaintiff does not expressly allege that he is a Jones Act seaman or assert any claims against any defendant under the Jones Act, but he alleges that "Transocean employed the Named Plaintiff as a member of the crew of the Deepwater Horizon at all times pertinent herein,"

(5th Cir. 2004), *cert. denied*, 544 U.S. 999 (2005) (Plaintiff "was judicially determined to be a Jones Act seaman, injured outside of territorial waters," and he may not "recover nonpecuniary damages from a non-employer third party"); *see also Dunham v. Expro Ams., Inc.*, 423 F. Supp. 2d 664, 668 (S.D. Tex. 2003) ("Plaintiffs' potential recovery is limited to pecuniary losses. Hence, Plaintiffs are barred from seeking punitive damages").[10]   Even if Plaintiff could state a claim for relief against Anadarko or MOEX Offshore, which for the reasons explained above he manifestly cannot, his claims for non-pecuniary damages should be dismissed.

## IV.
## CONCLUSION

For the foregoing reasons, the claims asserted in the Complaint against Anadarko and MOEX Offshore fail as a matter of law and should be dismissed in their entirety.   In the alternative, Plaintiff's claims for non-pecuniary losses should be dismissed.

Respectfully submitted,

BINGHAM McCUTCHEN

/s/ *Ky E. Kirby*
Ky E. Kirby
ky.kirby@bingham.com
David B. Salmons

---

Compl. ¶ 16, which allegation, accepted as true, is sufficient to establish that he is a Jones Act seaman.  *See Chandris, Inc. v. Latsis*, 515 U.S. 347, 368 (1995) (To be a Jones Act seaman, "[f]irst . . . an employee's duties must contribute to the function of the vessel or to the accomplishment of its mission . . . All who work at sea in the service of a ship are *eligible* for seaman status.  Second . . . a seaman must have a connection to a vessel in navigation . . . that is substantial in terms of both its duration and its nature") (emphasis in original, internal citations and quotation marks omitted).

[10]   *Atlantic Sounding Co. v. Townsend*, in which the Court recognized a punitive damages remedy for wrongful failure to pay maintenance and cure, offers Plaintiff no relief.  129 S. Ct. 2561 (2009).  In that decision, the Court restated the *Miles* conclusion that Congress has limited Jones Act remedies to pecuniary losses.  *Id.* at 2564.

david.salmons@bingham.com
Michael B. Wigmore
michael.wigmore@bingham.com
Warren Anthony Fitch
tony.fitch@bingham.com
Randall M. Levine
randall.levine@bingham.com
2020 K Street, NW
Washington, DC 20006-1806
Telephone (202) 373-6000
Facsimile (202) 373-6001

James J. Dragna
jim.dragna@bingham.com
Bingham McCutchen LLP
355 South Grand Avenue
Suite 4400
Los Angeles, California 90071-3106
Telephone (213) 680-6436
Facsimile (213) 680-8636

KUCHLER POLK SCHELL
WEINER & RICHESON, LLC

Deborah D. Kuchler, T.A. (La. Bar No. 17013)
dkuchler@kuchlerpolk.com
Janika Polk (La. Bar No. 27608)
jpolk@kuchlerpolk.com
Robert Guidry (La. Bar No. 28064)
rguidry@kuchlerpolk.com
1615 Poydras Street, Suite 1300
New Orleans, LA  70112
Tel:  (504) 592-0691
Fax:  (504) 592-0696

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, pursuant to Pre-trial Order No. 12, I have caused the foregoing Memorandum of Law to be served on all counsel via the Lexis Nexis File & Serve system, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, who will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on February 11, 2011.


_____ */s/ Ky E. Kirby* _____
KY E. KIRBY