UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | : : : : | MDL No. 2179 SECTION: J |
| This Document Relates To: Morales v. BP Exploration & Production Inc., et al. …………………………………………………... | : : : | JUDGE BARBIER MAGISTRATE SHUSHAN |

## THE BP PARTIES' ANSWER TO THE MORALES ORIGINAL PETITION

Defendants BP Exploration & Production Inc. ("BPXP"), BP Products North America Inc. ("BPPNA") and BP Corporation North America Inc. (collectively, "the BP Parties"), by their undersigned counsel, and pursuant to Rule 8 of the Federal Rules of Civil Procedure, hereby answer the Original Petition filed by Heber Morales as follows:

### I.

### Jurisdiction

1.   This claim is maintained under the Jones Act (46 U.S.C., Hi 30104, et:seq.) and/or the general maritime law of the United States.

**ANSWER**

The BP Parties admit that plaintiff purports to bring his claim under the Jones Act and/or the general maritime law of the United States. The BP Parties deny that plaintiff has stated a valid claim under the Jones Act or the general maritime law of the United States or that plaintiff is entitled to any relief under the Jones Act or the general maritime law of the United States. The BP Parties further deny that BPPNA and BP Corporation North America Inc. are proper parties to this litigation. BPPNA is an entity primarily involved in downstream operations such as crude oil refineries, and transportation and marketing of refined products such as gasoline, and had no employees on the *Deepwater Horizon,* was not a party to the drilling rig contract with

1

Transocean, and had nothing to do with exploration activity involving the Macondo Well or the April 20, 2010 incident or resulting oil spill. Similarly, BP Corporation North America Inc. did not own the MC 252 leasehold, had no employees on the *Deepwater Horizon*, and was not a party to the drilling rig contract with Transocean. The BP Parties deny the remaining allegations of this paragraph.

2. These claims are filed in state court pursuant to the "Saving to Suitors" clause. It is well-settled that Jones Act cases are not removable to federal court. This is true even when a Jones Act claim is joined with claims which would otherwise be removable had no Jones Act claim been asserted. Moreover, several defendants are Texas citizens. As such, this case cannot be removed on the basis of diversity jurisdiction. Further, any attempt to stay this case by any defendant under a limitation of liability action (seeking to limit the liability to the value of the vessel) is patently frivolous and designed solely to deprive plaintiffs and other similarly injured persons from their chosen venue, constitutional right to a jury, and day in court. Additionally, it is undisputed that the tragedy necessitating this claim occurred on a floating vessel on navigable water and not on an OCSLA situs. Any removal of this case would be objectively and subjectively in bad faith. A frivolous removal would also unnecessarily complicate and multiply the proceedings. As a result, Plaintiff hereby gives notice that he will seek sanctions against any Defendant that removes this case. Further, if any Defendant does decide to frivolously remove this case, they must remove it to the Galveston Division of the Southern District of Texas since this case is pending in Galveston County, 28 U.S.C. § 1446(a).

**ANSWER**

The BP Parties admit that plaintiff filed his claims in Texas state court. The BP Parties deny the remaining allegations of this paragraph.

## II.

### Venue

3. Venue is proper here pursuant to Texas Civil Practice and Remedies Code, Section 15.0181 and 15.002 because a substantial part of the events giving rise to this action occurred in Galveston County, the residents of Galveston County are affected by this tragedy and spill, witnesses reside in the County, and Defendants do substantial business in, have offices in, and have the vast majority of their employees in this County. Further, BP is primarily based in Galveston County. Discovery in this matter will be conducted pursuant to Level 2.

**ANSWER**

The BP Parties deny the allegations of this paragraph.

### III.

### Discovery Level

4. Discovery in this matter may be conducted under Level 2 of the Texas Rules of Civil Procedure.

**ANSWER**

The BP Parties deny the allegations of this paragraph.

### IV.

### Parties

5. Plaintiff Heber Morales is a resident of Texas. At the time of the explosion Mr. Morales was employed by Transocean where had worked for 10 years. His path to a lifeboat was blocked by a subsequent explosion. Rather than just taking off in a lifeboat, Mr. Morales helped load wounded men.

**ANSWER**

The BP Parties admit that Heber Morales worked for Transocean. The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

6. Defendant BP Products North America Inc. is a foreign entity with its principal place of business in Texas. BP Products North America Inc. may be served with process through its registered agent, Prentice Hall Corp. System, 701 Brazos Street, Suite 1050, Austin, Texas 78701.

**ANSWER**

The BP Parties admit the allegations of this paragraph.

7. Defendant BP Exploration and Production Inc. is a foreign entity with its principal place of business in Texas. BP Corporation North America, Inc. may be served with process at CT Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas 75201.

**ANSWER**

The BP Parties admit the allegations of this paragraph.

8. Defendant BP, LLC is a foreign entity with its principal place of business in Texas. BP Corporation North America, Inc. may be served with process at CT Corporation 3 System, 350 North St. Paul Street, Suite 2900, Dallas, Texas 75201.

**ANSWER**

The BP Parties deny that BP, LLC is a foreign entity with its principal place of business in Texas. The BP Parties deny the remaining allegations of this paragraph.

9. Defendant BP Corporation North America, Inc. is a foreign entity with its principal place of business in Texas. BP Corporation North America, Inc. may be served with process at Prentice Hall Corp. System, 701 Brazos Street, #1050, Austin, Texas 78701.

**ANSWER**

The BP Parties admit that BP Corporation North America Inc. is a foreign entity. The BP Parties deny the remaining allegations of this paragraph.

10. Defendant Halliburton Energy Services, Inc. is a foreign entity with its principal place of business in Texas. Halliburton Energy Services, Inc. may be served with process at CT Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas 75201.

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

11. Defendant Cameron International Corporation d/b/a Cameron Systems Corporation is a foreign corporation with its principal place of business in Texas. Weatherford International, Inc. may be served with process at CT Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas 75201.

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

12. Defendant Transocean, Ltd. is a foreign entity with its principal place of business in Texas, and may be served through its registered agent, Capitol Corporate Services, Inc., 800 Brazos Suite 400, Austin, Texas 78701.

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

13. Defendant Transocean Offshore Deepwater Drilling Inc. is a foreign entity with its principal place of business in Texas, and may be served through its registered agent, Capitol Corporate Services, Inc., 800 Brazos Suite 400, Austin, Texas 78701.

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

14. Defendant Transocean Deepwater, Inc. is a foreign entity with its principal place of business in Texas, and may be served through its registered agent, Capitol Corporate Services, Inc., 800 Brazos Suite 400, Austin, Texas 78701.

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

15. Defendant Sperry-Sun Drilling Services, Inc. is a foreign entity with its principal place of business in Texas. Sperry-Sun Drilling Services, Inc. may be served with process at CT Corporation System, 350 North St. Paul Street, Dallas, Texas 75201.

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

**V.**

**Nature of the Action**

16.     Plaintiff suffered severe injuries as a result of the senseless DEEPWATER HORIZON explosion on April 20, 2010. At the time, Plaintiff was a seaman. While the DEEPWATER HORIZON was deployed on navigable waters, and while Plaintiff was contributing to and aiding such vessel to accomplish its mission, Plaintiff was critically injured as a result of the explosion. Plaintiff suffered smoke inhalation, physical injuries, hearing loss, mental anguish and other damages. Aside from the human losses, the explosion has caused what is expected to be the worst man-made environmental disaster in U.S. history—far eclipsing the EXXON VALDEZ oil spill in 1989.

**ANSWER**

The BP Parties admit that the *Deepwater Horizon* was deployed on navigable waters and that there were one or more explosions on the *Deepwater Horizon* on April 20, 2010. The BP Parties deeply regret the *Deepwater Horizon* accident on April 20, 2010, and offer their deepest sympathies to the rig personnel who suffered injuries because of the tragic accident. The BP Parties, however, deny that they employed plaintiff. The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

17.     The DEEPWATER HORIZON was a floating semi-submersible drilling rig owned by Transocean. It was built in 2001, utilized dynamic positioning technology, and was designed to move from location to location as necessary. BP leased the drilling rig from Transcocean for $500,000 per day. The total lease contract was worth more than $544 million. Prior to the April 20, 2010 explosion, the DEEPWATER HORIZON had suffered other fires, collisions, and oil spills.

**ANSWER**

The BP Parties admit that the *Deepwater Horizon* was a floating semi-submersible drilling rig owned by Transocean, that it was built in 2001, that it utilized dynamic positioning technology, and that it was designed to move from location to location as necessary. The BP Parties deny that any BP entity leased the drilling rig from Transocean for $500,000 per day or that there was a lease contract that was worth more than $544 million. The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

18.     As a result of the tragedy, U.S. Attorney General Eric Holder is considering bringing criminal charges against BP. This would not be the first time BP has faced criminal charges in relation to its activities in and around the Gulf of Mexico. In 2007, BP pled guilty to felony charges arising out of the March 2005 explosion at its Texas City refinery which killed 15 workers and injured hundreds more. After that explosion, BP was fined more than $21 million by OSHA—the largest penalty ever issued at that time. BP was also required to fix the deficiencies which led to the Texas City disaster. However, BP refused to comply with its obligations and failed to make the required safety upgrades. As a result, in 2009, BP was fined an additional $87 million by OSHA—by far the largest fine in OSHA history, BP's reckless safety culture is systemic.

**ANSWER**

The BP Parties admit that (i) BPPNA pleaded guilty to one violation of Section 112(r)(7) of the Clean Air Act relating to the March 2005 explosion at BP's Texas City refinery; (ii) on or about March 23, 2005 an explosion caused the deaths of fifteen people at BP's Texas City refinery and harmed over 170 others; (iii) the U.S. Department of Labor issued a Citation and Notification of Penalty for Inspection Number 308314640 on September 21, 2005, which contained Proposed Penalties for violations totaling $21,070,000; (iv) in 2005 a settlement agreement was entered into with OSHA which related to the operation of BP's Texas City refinery and included a payment of more than $21 million and, among other things, an agreement to commission an independent audit and take certain actions as a result of the audit findings; and

(v) in or around August 2010, with no admission of liability, BPPNA entered into a settlement agreement with OSHA and paid a fine of $50.61 million for alleged failure to abate certain matters identified in a 2005 settlement agreement with OSHA relating to conditions at BP's Texas City refinery.  The BP Parties deny that OSHA fined any of the BP Parties an additional $87 million, and that any settlement agreement, felony plea, and fines related to BP's Texas City refinery are related in any way to the *Deepwater Horizon* drilling rig or operations, or the Mississippi Canyon Block 252 ("MC 252") exploration well.  The BP Parties deny the remaining allegations of this paragraph.

19. The DEEPWATER HORIZON tragedy was caused by, among other things, a failure of the rig's well control system. Cameron supplied much of the rig's inadequate, defective blow out prevention equipment.

**ANSWER**

The BP Parties admit that (i) the events aboard the *Deepwater Horizon* were caused by a complex and interlinked series of mechanical failures, human judgments, engineering design, operational implementation and team interfaces that came together to allow the initiation and escalation of the accident; (ii) Cameron International Corp. and/or its affiliates manufactured the blowout preventer used on the *Deepwater Horizon*, which was used on the MC 252 exploration well, and (iii) the blowout preventer failed to seal the well.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

20. Halliburton was in charge of cementing the well, but failed to safely do its job. Halliburton's failures contributed to the explosion. Halliburton's faulty cementing work has been linked to other major offshore disasters. For instance, Halliburton's cementing work caused a massive blowout in August 2009 on another rig off the coast of Australia.

**ANSWER**

The BP Parties admit that (i) Halliburton Energy Services was a contractor engaged to provide cementing services on the MC 252 exploration well; (ii) the cement barrier did not isolate the hydrocarbons, and there were weaknesses in cement design and testing, quality assurance, and risk assessment; (iii) Halliburton performed the cementing work on the Montara Wellhead Platform off the coast of Australia, which experienced a blowout in August 2009; (iv) Sperry Drilling Services and/or its affiliates provided certain monitoring, measurement, and/or other data services for the drilling operations on the *Deepwater Horizon* drilling rig. The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

21. Defendants are negligent, negligent per se, grossly negligent, and reckless for the following reasons:

   a. failure to properly supervise their crew;

   b. failure to properly train their employees;

   c. failure to provide adequate safety equipment;

   d. failure to provide adequate medical treatment;

   e. operating the vessel with an inadequate crew;

   f. failure to maintain the vessel;

   g. failure to conduct a proper search and rescue mission;

   h. vicariously liable for their employees' and agents' negligence, gross negligence, and recklessness;

   i. violating applicable Coast Guard, MMS, and/or OSHA regulations;

   j. failure to provide Plaintiff with a safe place to work, and requiring Plaintiff to work in unsafe conditions;

   k. failure to provide sufficient personnel to perform operations aboard the vessel;

       1.     failure to exercise due care and caution;

       m,    failure to avoid this accident; and

       n.     other acts deemed negligent.

**ANSWER**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the BP Parties. The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

22.    At all relevant times, the DEEPWATER HORIZON was unseaworthy.

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

23.    As a result of said occurrences, Plaintiff sustained the following damages:

       a.     Past, present, and future physical pain and suffering;

       b.     Past, present, and future mental pain, suffering, and anguish;

       c.     Past, present, and future medical expenses;

       d.     Past lost wages;

       e.     Loss of future earning capacity;

       f.     Loss of fringe benefits;

       g.     Disfigurement and/or disability;

       h.     Loss of enjoyment of life;

       i.     All survival damages recognized under the general maritime law; and

       j.     All other damages recoverable under law.

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

24.     Plaintiff is also entitled to punitive damages because the aforementioned actions of Defendants were grossly negligent and reckless. Defendants' conduct was willful, wanton, arbitrary, and capricious. They acted with flagrant and malicious disregard of Plaintiff's health and safety and the health and safety of Plaintiff's co-workers, Defendants were subjectively aware of the extreme risk posed by the conditions which caused Plaintiff's injuries, but did nothing to rectify them. Instead, Defendants had Plaintiff and other crew members continue working despite the dangerous conditions that were posed to them and the faulty, defective equipment provided to them. Defendants did so knowing that the conditions posed dangerous and grave safety concerns. Defendants' acts and omissions involved an extreme degree of risk considering the probability and magnitude of potential harm to Plaintiff and others. Defendants had actual, subjective awareness of the risk, and consciously disregarded such risk by allowing Plaintiff to work under such dangerous conditions. Moreover, Plaintiff may recover punitive damages under the general maritime law following the United States Supreme Court's ruling in Atlantic Sounding and Exxon Shipping Company.

**ANSWER**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

25.     As a result of said occurrences, Plaintiff sustained severe injuries to his body. Plaintiff suffered injuries to his ankles, hips, knees, backs, necks, and other body parts, which resulted in physical pain, suffering, mental anguish, fear, and discomfort. Plaintiff continues to suffer following his injuries. He is owed maintenance and cure for the past and the future. To the extent Defendants have refused and will refuse to pay Plaintiff's maintenance and cure, their refusal is willful, intentional, arbitrary, and capricious, entitling Plaintiff to an award of attorneys' fees and punitive damages. Plaintiff has sustained a loss of earnings in the past and earning capacity in the future. Plaintiff has been damaged in a sum far in excess of the minimum jurisdictional limits of this Honorable Court, for which they now sue.

**ANSWER**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the BP Parties. The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

## VI.

### Jury Trial

26. Plaintiff hereby requests a trial by jury on all claims.

**ANSWER**

The BP Parties admit that plaintiff has requested a trial by jury on all claims. The BP Parties deny that plaintiff is entitled to a trial by jury except as required under the laws applicable to a trial of their claims.

## VII.

### Prayer

Plaintiff prays that this citation issue and be served upon Defendants in a form and manner prescribed by law, requiring that the Defendants appear and answer, and that upon final hearing, Plaintiff has judgment against Defendants, both jointly and severally, in a total sum in excess of the minimum jurisdictional limits of this Court, plus pre-judgment and post- judgment interests, all costs of Court, attorneys' fees, punitive damages, and all such other and further relief, to which they may show themselves justly entitled.

**ANSWER**

WHEREFORE, the BP Parties respectfully request that the Court dismiss Plaintiff's claims against the BP Parties with prejudice. The BP Parties deny the allegations of this paragraph to the extent they are directed at the BP Parties. The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

The BP Parties maintain that there was no negligence or fault on their part and that Plaintiff's damages and injuries, if any, were caused by the fault, carelessness, misconduct, negligence and/or want of due care of other individuals, entities, or vessels for whom the BP Parties are not legally responsible.

### SECOND DEFENSE

Plaintiff's damages or injuries, if any, were the result of an occurrence and/or accident unforeseeable by the BP Parties and for which the BP Parties cannot be held legally responsible.

### THIRD DEFENSE

Plaintiff's alleged damages or injuries, if any, were caused or contributed to by acts and/or omissions that constitute independent, intervening and/or superseding causes for which the BP Parties are not legally responsible.

### FOURTH DEFENSE

Any alleged negligence by the BP Parties, which the BP Parties specifically deny, was not the proximate cause or sole proximate cause of Plaintiff's alleged damages and there is no causal connection between the acts complained of and the damages and injuries alleged.

### FIFTH DEFENSE

To the extent the BP Parties are found liable to Plaintiff for any damages or injuries, the BP Parties are entitled to have any reward or recovery mitigated or reduced accordingly by the contributory or comparative negligence of other individuals, entities, or vessels.

### SIXTH DEFENSE

To the extent that the BP Parties are found liable to Plaintiff for any damages, the BP Parties are entitled to contractual indemnity from other parties or entities.

## SEVENTH DEFENSE

To the extent that the BP Parties are found liable to Plaintiff for any damages, the BP Parties are entitled to indemnity from other parties or entities.

## EIGHTH DEFENSE

To the extent that the BP Parties are found liable to Plaintiff for any damages, the BP Parties are entitled to contribution from other parties or entities.

## NINTH DEFENSE

To the extent that the BP Parties are found liable to Plaintiff for any damages, the BP Parties are entitled to a set-off or other equitable reduction in liability for any compensation paid by the BP Parties or other parties or entities.

## TENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff is not entitled under the law to the damages that he seeks, the alleged damages sought are too speculative and uncertain, and because of the impossibility of the ascertainment and allocation of such damages.

## ELEVENTH DEFENSE

Plaintiff's claims for punitive damages are barred, in whole or in part, because the BP Parties did not engage in any willful, wanton, malicious, oppressive, or reckless conduct that might entitle Plaintiff to an award of punitive damages.

## TWELFTH DEFENSE

Plaintiff's damages are barred, in whole or in part, by a failure to mitigate damages.

## THIRTEENTH DEFENSE

The BP Parties deny that they are liable to any extent as alleged in the Original Petition, and claim exoneration from any and all liability for all losses, damages, and injuries incurred by

Plaintiff as a result of the allegations contained in the Original Petition and for any other damages or claims which exist or may arise, but have not been specifically pled.

The BP Parties specifically reserve the right to amend or supplement their Affirmative Defenses and this Answer as additional facts concerning their defenses become known to them.

WHEREFORE, the BP Parties respectfully request that the Court dismiss Plaintiff's claims against the BP Parties with prejudice.

Dated: February 11, 2011

Respectfully submitted,

/s/ Don K. Haycraft
Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

and

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Wendy Bloom, P.C.
Timothy A. Duffy, P.C.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
312-862-2000 (Tel)
312-862-2200 (Fax)

and

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
202-662-5985

*Attorneys for BP Exploration & Production Inc., BP Products North America Inc. and BP Corporation North America Inc.*

**CERTIFICATE OF SERVICE**

  I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice in accordance with the procedures established in MDL 2179, on this 11th day of February, 2011.

                  /s/   Don K. Haycraft