## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater | : | MDL No. 2179 |
| Horizon" in the Gulf of Mexico, on | : | |
| April 20, 2010 | : | SECTION: J |
| | : | |
| This Document Relates To: Kritzer v. BP | : | JUDGE BARBIER |
| Exploration & Production Inc., et al. | : | MAGISTRATE SHUSHAN |
| …………………………………………... | : | |

## THE BP PARTIES' ANSWER TO THE IRELAND
## ORIGINAL PETITION IN INTERVENTION

Defendants BP Exploration & Production Inc. ("BPXP"), BP Products North America

Inc. ("BPPNA"), and BP Corporation North America Inc. (collectively, "the BP Parties"), by

their undersigned counsel, and pursuant to Rule 8 of the Federal Rules of Civil Procedure,

hereby answer the Original Petition in Intervention filed by Frank Ireland and Darren Costello

(collectively as "Intervenors"), as follows:

## I.

### Jurisdiction

1.      This claim is maintained under the Jones Act (46 U.S.C. §§ 30104, *et seq.)* and/or
the general maritime law of the United States.

**ANSWER**

The BP Parties admit that Intervenors purport to bring their claim under the Jones Act

and/or the general maritime law of the United States.  The BP Parties deny that Intervenors have

stated a valid claim under the Jones Act or the general maritime law of the United States or that

Intervenors are entitled to any relief under the Jones Act or the general maritime law of the

United States.  The BP Parties further deny that BPPNA and BP Corporation North America Inc.

are proper parties to this litigation.  BPPNA is an entity primarily involved in downstream

operations such as crude oil refineries, and transportation and marketing of refined products such as gasoline, and had no employees on the *Deepwater Horizon,* was not a party to the drilling rig contract with Transocean, and had nothing to do with exploration activity involving the Macondo Well or the April 20, 2010 incident or resulting oil spill.  Similarly, BP Corporation North America Inc. did not own the MC 252 leasehold, had no employees on the *Deepwater Horizon*, and was not a party to the drilling rig contract with Transocean.  The BP Parties deny the remaining allegations of this paragraph.

2.      These claims are filed in state court pursuant to the "Saving to Suitors" clause.  It is well-settled that Jones Act cases are not removable to federal court. Moreover, several defendants are Texas citizens. As such, this case cannot be removed on the basis of diversity jurisdiction.

**ANSWER**

The BP Parties admit that Intervenors filed their claims in Texas state court.  The BP Parties deny the remaining allegations of this paragraph.

3.      Intervention is proper under the present circumstances because Intervenors causes of action against the named Defendants arise out of the same transactions and occurrences as those alleged by Intervenors. Moreover, Intervenors raised common questions of law and fact with the original action.

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

## II.

### Venue

4.      Venue is proper here pursuant to Texas Civil Practice and Remedies Code, Section 15.0181 and 15.002 because a substantial part of the events giving rise to this action occurred in Galveston County, the residents of Galveston County are affected by this tragedy and spill, witnesses reside in the County, and Defendants do substantial business in, have offices in,

and have the vast majority of their employees in this County. Further, BP is primarily based in Galveston County.

**ANSWER**

The BP Parties deny the allegations of this paragraph.

### III.

### Discovery Level

5.     Discovery in this matter may be conducted under Level 2 of the Texas Rules of Civil Procedure.

**ANSWER**

The BP Parties deny the allegations of this paragraph.

### IV.

### Parties

6.     Intervenor Frank Ireland is a resident of Clear Lake, Texas. Mr. Ireland was working aboard the Deepwater Horizon on the date in question. After the explosion, Mr. Ireland attempted to evacuate the vessel. However, the electricity was out and Mr. Ireland fell as the vessel was exploding around him. Mr. Ireland suffered severe injury to his leg, left shoulder, and other parts of his body. Additionally, Mr. Ireland now suffers the effects of having inhaled the smoke that ensued from the explosion. Moreover, Mr. Ireland suffered substantial emotional injuries as the result of seeing his friends and coworkers burned alive.

**ANSWER**

The BP Parties deeply regret the *Deepwater Horizon* accident on April 20, 2010, and

offer their deepest sympathies to the families, friends and colleagues of those who were lost on

the *Deepwater Horizon* as well as the rig personnel who suffered injuries because of the tragic

accident.  The BP Parties, however, lack knowledge or information sufficient to form a belief

about the truth of the remaining allegations of this paragraph, and therefore deny them.

7.     Intervenor, Darren Costello is a resident of Florida. Like Mr. Ireland, Mr. Costello was working aboard the Deepwater Horizon the day it exploded. When the blast occurred, Mr. Costello thought he would be killed. When he gathered his wits, he attempted to evacuate the

vessel. However, a second blast blew him though a fire and up against a wall where he lost consciousness. When he came to, Mr. Costello, ran into the crew quarters and began helping other workers who had been injured evacuate. Mr. Costello even carried out a coworker on a stretcher. Before evacuating the vessel himself, Mr. Costello witnessed the last moments of Plaintiff, Aaron Dale Burkeen's life. That image was burned into his memory and he lives with it on a daily basis. As a result of the explosion, Mr. Costello has suffered severe injury to body as a result of being thrown into the wall, now suffers as a result of being knocked unconscious, and suffers emotionally from having seen his friends and coworkers being burned alive.

## ANSWER

The BP Parties deeply regret the *Deepwater Horizon* accident on April 20, 2010, and offer their deepest sympathies to the families, friends and colleagues of those who were lost on the *Deepwater Horizon* as well as the rig personnel who suffered injuries because of the tragic accident. The BP Parties, however, lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

8. Defendant BP Products North America Inc. is a foreign entity with its principal place of business in Texas. BP Products North America Inc. may be served with process through its registered agent, Prentice Hall Corp. System, 701 Brazos Street, Suite 1050, Austin, Texas, 78701.

## ANSWER

The BP Parties admit the allegations of this paragraph.

9. Defendant BP Exploration and Production Inc. is a foreign entity with its principal place of business in Texas. BP Corporation North America, Inc. may be served with process at CT Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas 75201.

## ANSWER

The BP Parties admit the allegations of this paragraph.

10. Defendant BP, LLC is a foreign entity with its principal place of business in Texas. BP Corporation North America, Inc. may be served with process at CT Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas 75201.

**ANSWER**

The BP Parties deny that BP, LLC is a foreign entity with its principal place of business in Texas.  The BP Parties deny the remaining allegations of this paragraph.

11.     Defendant BP Corporation North America, Inc. is a foreign entity with its principal place of business in Texas. BP Corporation North America, Inc. may be served with process at Prentice Hall Corp. System, 701 Brazos Street, #1050, Austin, Texas 78701.

**ANSWER**

The BP Parties admit that BP Corporation North America Inc. is a foreign entity.  The BP Parties deny the remaining allegations of this paragraph.

12.     Defendant Halliburton Energy Services, Inc. is a foreign entity with its principal place of business in Texas. Halliburton Energy Services, Inc. may be served with process at CT Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas 75201.

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

13.     Defendant Sperry-Sun Drilling Services, Inc. is a foreign entity with its principal place of business in Texas. Sperry-Sun Drilling Services, Inc. may be served with process at CT Corporation System, 350 North St. Paul Street, Dallas, Texas 75201.

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

14.     Defendant Cameron International Corporation d/b/a Cameron Systems Corporation is a foreign corporation with its principal place of business in Texas.  Weatherford International, Inc. may be served with process at CT Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas 75201.

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

**V.**

**Nature of the Action**

15.  Intervenors suffered severe injuries as a result of the senseless DEEPWATER HORIZON explosion on April 20, 2010. At the time, Intervenors were seamen, borrowed or otherwise, employed by Defendants. While the DEEPWATER HORIZON was deployed on navigable waters, and while Intervenors were each contributing to and aiding such vessel to accomplish its mission, Intervenors were critically injured as a result of the explosion. Intervenors suffered bodily injuries, smoke inhalation, severe emotional distress and other damages. Aside from the human losses, the explosion has caused what is expected to be the worst man-made environmental disaster in U.S. history — far eclipsing the EXXON VALDEZ oil spill in 1989.

**ANSWER**

The BP Parties admit that the *Deepwater Horizon* was deployed on navigable waters and that there were one or more explosions on the *Deepwater Horizon* on April 20, 2010.  The BP Parties deny that they employed any of the Intervenors.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

16.  The DEEPWATER HORIZON was a floating semi-submersible drilling rig owned by Transocean. It was built in 2001, utilized dynamic positioning technology, and was designed to move from location to location as necessary. BP leased the drilling rig from Transocean for $500,000 per day. The total lease contract was worth more than $544 million. Prior to the April 20th explosion, the DEEPWATER HORIZON had suffered other fires, collisions, and oil spills.

**ANSWER**

The BP Parties admit that the *Deepwater Horizon* was a floating semi-submersible drilling rig owned by Transocean, that it was built in 2001, that it utilized dynamic positioning

technology, and that it was designed to move from location to location as necessary. The BP

Parties deny that any BP entity leased the drilling rig from Transocean for $500,000 per day or

that there was a lease contract that was worth more than $544 million. The BP Parties lack

knowledge or information sufficient to form a belief about the truth of the remaining allegations

of this paragraph, and therefore deny them.

17.     As a result of the tragedy, U.S. Attorney General Eric Holder is considering
bringing criminal charges against BP. This would not be the first time BP has faced criminal
charges in relation to its activities in and around the Gulf of Mexico. In 2007, BP pled guilty to
felony charges arising out of the March 2005 explosion at its Texas City refinery which killed 15
workers and injured hundreds more. After that explosion, BP was fined more than $21 million by
OSHA — the largest penalty ever issued at that time. BP was also required to fix the deficiencies
which led to the Texas City disaster. However, BP refused to comply with its obligations and
failed to make the required safety upgrades. As a result, in 2009, BP was fined an additional
$87 million by OSHA — by far the largest fine in OSHA history. BP's reckless safety culture is
systemic.

**ANSWER**

The BP Parties admit that (i) BPPNA pleaded guilty to one violation of Section 112(r)(7)

of the Clean Air Act relating to the March 2005 explosion at BP's Texas City refinery; (ii) on or

about March 23, 2005 an explosion caused the deaths of fifteen people at BP's Texas City

refinery and harmed over 170 others; (iii) the U.S. Department of Labor issued a Citation and

Notification of Penalty for Inspection Number 308314640 on September 21, 2005, which

contained Proposed Penalties for violations totaling $21,070,000; (iv) in 2005 a settlement

agreement was entered into with OSHA which related to the operation of BP's Texas City

refinery and included a payment of more than $21 million and, among other things, an agreement

to commission an independent audit and take certain actions as a result of the audit findings; and

(v) in or around August 2010, with no admission of liability, BPPNA entered into a settlement

agreement with OSHA and paid a fine of $50.61 million for alleged failure to abate certain

matters identified in a 2005 settlement agreement with OSHA relating to conditions at BP's

Texas City refinery.  The BP Parties deny that OSHA fined any of the BP Parties an additional

$87 million, and that any settlement agreement, felony plea, and fines related to BP's Texas City

refinery are related in any way to the *Deepwater Horizon* drilling rig or operations, or the

Mississippi Canyon Block 252 ("MC 252") exploration well.  The BP Parties deny the remaining

allegations of this paragraph.

    18.    The DEEPWATER HORIZON tragedy was caused by, among other things, a
failure of the rig's well control system. Cameron supplied much of the rig's inadequate, defective
blow out prevention equipment.

**ANSWER**

    The BP Parties admit that (i) the events aboard the *Deepwater Horizon* were caused by a

complex and interlinked series of mechanical failures, human judgments, engineering design,

operational implementation and team interfaces that came together to allow the initiation and

escalation of the accident; (ii) Cameron International Corp. and/or its affiliates manufactured the

blowout preventer used on the *Deepwater Horizon*, which was used on the MC 252 exploration

well, and (iii) the blowout preventer failed to seal the well.  The BP Parties lack knowledge or

information sufficient to form a belief about the truth of the remaining allegations of this

paragraph, and therefore deny them.

    19.    Halliburton was in charge of cementing the well, but failed to safely do its job.
Halliburton's failures contributed to the explosion. Halliburton's faulty cementing work has been
linked to other major offshore disasters. For instance, Halliburton's cementing work caused a
massive blowout in August 2009 on another rig off the coast of Australia. Moreover, Sperry (a
division of Halliburton) was charged with real time gas monitoring, but failed to safely perform
this function.

**ANSWER**

    The BP Parties admit that (i) Halliburton Energy Services was a contractor engaged to

provide cementing services on the MC 252 exploration well; (ii) the cement barrier did not

isolate the hydrocarbons, and there were weaknesses in cement design and testing, quality

assurance, and risk assessment; (iii) Halliburton performed the cementing work on the Montara

Wellhead Platform off the coast of Australia, which experienced a blowout in August 2009; (iv)

Sperry Drilling Services and/or its affiliates provided certain monitoring, measurement, and/or

other data services for the drilling operations on the *Deepwater Horizon* drilling rig.  The BP

Parties lack knowledge or information sufficient to form a belief about the truth of the remaining

allegations of this paragraph, and therefore deny them.

    20.    Defendants are negligent, negligent per se, grossly negligent, and reckless for the
following reasons:

     (a)    failure to properly supervise their crew;

     (b)    failure to properly train their employees;

     (c)    failure to provide adequate safety equipment;

     (d)    failure to provide adequate medical treatment;

     (e)    operating the vessel with an inadequate crew;

     (f)    failure to maintain the vessel;

     (g)    failure to conduct a proper search and rescue mission;

     (h)    vicariously liable for their employees' and agents' negligence, gross
negligence, and recklessness;

     (i)    violating applicable Coast Guard, MMS, and/or OSHA regulations;

     (j)    failure to provide plaintiff with a safe place to work, and requiring
plaintiff to work in unsafe conditions;

     (k)    failure to provide sufficient personnel to perform operations aboard the
vessel;

     (l)    failure to exercise due care and caution;

     (m)    failure to avoid this accident; and

     (n)    other acts deemed negligent.

**ANSWER**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

21.   At all relevant times, the DEEPWATER HORIZON was unseaworthy.

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

22.   As a result of said occurrences, Intervenors collectively sustained the following damages:

     (a)   Past, present, and future physical pain and suffering;

     (b)   Past, present, and future mental pain, suffering, and anguish;

     (c)   Past, present, and future medical expenses;

     (d)   Past lost wages;

     (e)   Loss of future earning capacity;

     (f)   Loss of fringe benefits;

     (g)   Loss of services and support;

     (h)   Disfigurement, disability, and/or death;

     (i)   All other damages recoverable under law.

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

23.   Intervenors are also entitled to punitive damages because the aforementioned actions of Defendants were grossly negligent and reckless. Defendants' conduct was willful,

wanton, arbitrary, and capricious. They acted with flagrant and malicious disregard of Intervenors' health and safety and the health and safety of Intervenors' co-workers. Defendants were subjectively aware of the extreme risk posed by the conditions which caused Intervenors' injuries, but did nothing to rectify them. Instead, Defendants had Intervenors and other crew members continue working despite the dangerous conditions that were posed to them and the faulty, defective equipment provided to them. Defendants did so knowing that the conditions posed dangerous and grave safety concerns. Defendants' acts and omissions involved an extreme degree of risk considering the probability and magnitude of potential harm to Intervenors and others. Defendants had actual, subjective awareness of the risk, and consciously disregarded such risk by allowing Intervenors to work under such dangerous conditions. Moreover, Intervenors may recover punitive damages under the general maritime law following the United States Supreme Court's ruling in *Atlantic Sounding* and *Exxon Shipping Company.*

**ANSWER**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the

BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the

truth of the remaining allegations of this paragraph, and therefore deny them.


24.    As a result of said occurrences, Intervenors sustained severe injuries to their bodies. Intervenors suffered injuries to their ankles, hips, knees, backs, necks, and other body parts, which resulted in physical pain, suffering, mental anguish, fear, and discomfort. Intervenors continue to suffer following such injuries. They are owed maintenance and cure for the past and the future. To the extent Defendants have refused and will refuse to pay Intervenors maintenance and cure, their refusal is willful, intentional, arbitrary, and capricious, entitling Intervenors to an award of attorneys' fees and punitive damages. Intervenors have sustained a loss of earnings in the past and earning capacity in the future. Intervenors have been damaged in a sum far in excess of the minimum jurisdictional limits of this Honorable Court, for which they now sue.

**ANSWER**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the

BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the

truth of the remaining allegations of this paragraph, and therefore deny them.


**VI.**

**Jury Trial**

25.    Intervenors hereby request a trial by jury on all claims.

11

**ANSWER**

The BP Parties admit that Intervenors have requested a trial by jury on all claims.  The

BP Parties deny that Intervenors are entitled to a trial by jury except as required under the laws

applicable to a trial of their claims.

## VII.

### Prayer

Intervenors pray that this citation issue and be served upon Defendants in a form and
manner prescribed by law, requiring that the Defendants appear and answer, and that upon final
hearing, Intervenors have judgment against Defendants, both jointly and severally, in a total sum
in excess of the minimum jurisdictional limits of this Court, plus pre-judgment and post-
judgment interests, all costs of Court, attorneys' fees, punitive damages, and all such other and
further relief, to which they may show themselves justly entitled.

**ANSWER**

WHEREFORE, the BP Parties respectfully request that the Court dismiss Intervenors'

claims against the BP Parties with prejudice.  The BP Parties deny the allegations of this

paragraph to the extent they are directed at the BP Parties.  The BP Parties lack knowledge or

information sufficient to form a belief about the truth of the remaining allegations of this

paragraph, and therefore deny them.

### AFFIRMATIVE DEFENSES

### FIRST DEFENSE

The BP Parties maintain that there was no negligence or fault on their part and that

Intervenors' damages and injuries, if any, were caused by the fault, carelessness, misconduct,

negligence and/or want of due care of other individuals, entities, or vessels for whom the BP

Parties are not legally responsible.

## SECOND DEFENSE

Intervenors' damages or injuries, if any, were the result of an occurrence and/or accident unforeseeable by the BP Parties and for which the BP Parties cannot be held legally responsible.

## THIRD DEFENSE

Intervenors' alleged damages or injuries, if any, were caused or contributed to by acts and/or omissions that constitute independent, intervening and/or superseding causes for which the BP Parties are not legally responsible.

## FOURTH DEFENSE

Any alleged negligence by the BP Parties, which the BP Parties specifically deny, was not the proximate cause or sole proximate cause of Intervenors' alleged damages and there is no causal connection between the acts complained of and the damages and injuries alleged.

## FIFTH DEFENSE

To the extent the BP Parties are found liable to Intervenors for any damages or injuries, the BP Parties are entitled to have any reward or recovery mitigated or reduced accordingly by the contributory or comparative negligence of other individuals, entities, or vessels.

## SIXTH DEFENSE

To the extent that the BP Parties are found liable to Intervenors for any damages, the BP Parties are entitled to contractual indemnity from other parties or entities.

## SEVENTH DEFENSE

To the extent that the BP Parties are found liable to Intervenors for any damages, the BP Parties are entitled to indemnity from other parties or entities.

## EIGHTH DEFENSE

To the extent that the BP Parties are found liable to Intervenors for any damages, the BP Parties are entitled to contribution from other parties or entities.

**NINTH DEFENSE**

To the extent that the BP Parties are found liable to Intervenors for any damages, the BP Parties are entitled to a set-off or other equitable reduction in liability for any compensation paid by the BP Parties or other parties or entities.

**TENTH DEFENSE**

Intervenors' claims are barred, in whole or in part, because Intervenors are not entitled under the law to the damages that they seek, the alleged damages sought are too speculative and uncertain, and because of the impossibility of the ascertainment and allocation of such damages.

**ELEVENTH DEFENSE**

Intervenors' claims for punitive damages are barred, in whole or in part, because the BP Parties did not engage in any willful, wanton, malicious, oppressive, or reckless conduct that might entitle Intervenors to an award of punitive damages.

**TWELFTH DEFENSE**

Intervenors' damages are barred, in whole or in part, by a failure to mitigate damages.

**THIRTEENTH DEFENSE**

The BP Parties deny that they are liable to any extent as alleged in the Petition in Intervention, and claim exoneration from any and all liability for all losses, damages, and injuries incurred by Intervenors as a result of the allegations contained in the Petition in Intervention and for any other damages or claims which exist or may arise, but have not been specifically pled.

The BP Parties specifically reserve the right to amend or supplement their Affirmative Defenses and this Answer as additional facts concerning their defenses become known to them.

WHEREFORE, the BP Parties respectfully request that the Court dismiss Intervenors' claims against the BP Parties with prejudice.

Dated:  February 11, 2011             Respectfully submitted,


/s/ Don K. Haycraft
Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

and

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Wendy Bloom, P.C.
Timothy A. Duffy, P.C.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
312-862-2000 (Tel)
312-862-2200 (Fax)

and

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
202-662-5985


*Attorneys for BP Exploration & Production Inc.,*
*BP Products North America Inc. and BP*
*Corporation North America Inc.*

15

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice in accordance with the procedures established in MDL 2179, on this 11th day of February, 2011.

/s/   Don K. Haycraft