UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig | * | MDL No. 2179 |
| "Deepwater Horizon" in the Gulf | * | |
| of Mexico, on April 20, 2010 | * | SECTION: "J" |
| | * | JUDGE BARBIER |
| This Document Relates to: | * | |
| *Becnel v. BP, PLC*, et al., | * | |
| No. 10-03066 | * | MAGISTRATE NO. 1 |
| | * | MAGISTRATE SHUSHAN |
| | * | |
| *   *   *   *   *   *   *   *   *   *   *   * | | |

MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANTS
ANADARKO PETROLEUM CORPORATION AND MOEX OFFSHORE 2007 LLC
TO DISMISS COMPLAINT PURSUANT TO FED R. CIV. P. 12(b)(6)

I.
INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Anadarko Petroleum Corporation (incorrectly identified in the Complaint as "Anadarko Petroleum Co., Ltd., Corp.") and MOEX Offshore 2007 LLC ("MOEX Offshore") move to dismiss Plaintiff's Complaint against them in its entirety. There are several reasons why Plaintiff's Complaint fails to state a claim and must be dismissed.

*First*, Plaintiff attempts to state a general maritime claim for negligence, but all concerned must admit that on April 20, 2010, when the *Deepwater Horizon* exploded and Mr. Manuel died, the vessel was more than 40 miles offshore. In other words, the vessel was on the high seas, and no *Moragne* general maritime law death claim can be stated. "When the incident takes place outside the three-mile limit, [the Death on the High Seas Act, 46 U.S.C. §§ 30301–30308 ("DOHSA")] . . . alone controls." *Bodden v. Am. Offshore, Inc.*, 681 F.2d 319, 329 (5th Cir. 1982). Accordingly, no general maritime law claim can be stated against Anadarko or

MOEX Offshore.

*Second*, whether viewed under general maritime law or DOHSA, Plaintiff has failed as a matter of law to state a claim for negligence against Anadarko or MOEX Offshore because her own allegations conclusively establish that they owed no legal duty to the Plaintiff or her decedent. It is fundamental that a duty to prevent harm resulting from oil and gas operations arise as a consequence of control over the operations. *Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548, 550 (5th Cir. 1987), *cert. denied*, 485 U.S. 1034 (1988). Yet Plaintiff concedes, as she must, that Anadarko and MOEX Offshore were "non-operating investors . . . in the [Macondo] well" who lacked any owner or charterer interest in the *Deepwater Horizon* or any operational control over the rig or the well out of which a duty to the decedent could have arisen. Compl. ¶ 15.

*Third*, the Complaint fails to state a claim under the Jones Act because it fails to allege any employment relationship between her decedent husband and either Anadarko or MOEX Offshore. *See Baker v. Raymond Int'l, Inc.*, 656 F.2d 173, 177 (5th Cir. 1981) (holding that the Jones Act "is applicable only if the employment relationship exists") (citations omitted).

Finally, even if a claim could be stated against Anadarko or MOEX Offshore, Plaintiff has no right to recover non-pecuniary damages (loss of consortium, loss of enjoyment of life, mental anguish, and punitive damages). *Miles v. Apex Mar. Corp.*, 498 U.S. 19, 31–32 (1990).

## II.
## FACTUAL ALLEGATIONS IN THE COMPLAINT

Plaintiff alleges that she "was married to Keith Blair Manuel[,] who was a member of the crew of the DEEPWATER HORIZON" and "was employed as a Jones Act seaman." Compl. ¶ 3. She alleges that the "DEEPWATER HORIZON was a vessel in navigation," and that it was "owned and/or operated and/or chartered and/or controlled by TRANSOCEAN and/or BP at all

2

material times herein." *Id*. ¶ 5.  Plaintiff alleges that "[o]n or about April 20, 2010, Mr. Manuel was on board the DEEPWATER HORIZON" when "an explosion occurred," and that "Mr. Manuel's body was never recovered." *Id*. ¶ 6.  Plaintiff alleges that she is "suffering from post traumatic stress disorder, depression, anxiety and other injuries," and she also asserts claims for Mr. Manuel's death in a representative capacity.  *Id*. ¶¶ 7. 20.

Plaintiff alleges that BP holds a "lease granted by the Minerals Management Service that allows BP to drill for oil and perform oil-production-related operations at the site of the oil spill, and on April 20, 2010 operated the oil well that is the source of the spill." *Id*. ¶ 11.  She alleges that "Anadarko Petroleum Corp. and MOEX Offshore - 2007, LLC, are non-operating investors who maintain 25% and 10% respective ownership in the well . . . ." *Id*. ¶ 15.  Plaintiff does not allege that Anadarko or MOEX Offshore had any ownership or charterer's interest in the *Deepwater Horizon*, nor does she allege that these Defendants had any operational control over the rig or the well.  Nowhere does she allege that either Anadarko or MOEX Offshore employed Mr. Manuel.  Based on these allegations, Plaintiff asserts claims "solely under the general maritime law and as a Jones Act seaman and member of the crew of the DEEPWATER HORIZON vessel." *Id*. ¶ 17.

### III.
### ARGUMENT

**THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILS TO STATE A CLAIM AGAINST ANADARKO OR MOEX OFFSHORE UPON WHICH RELIEF CAN BE GRANTED**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause

3

of action will not do.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555); *see also Hershey v. Energy Transfer Partners*, 610 F.3d 239, 245–46 (5th Cir. 2010) (same).

To state a claim for relief, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). If there are insufficient factual allegations to raise a right to relief "'above the speculative level,'" *Jebaco, Inc. v. Harrah's Operating Co.*, 587 F.3d 314, 318 (5th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555), or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007), the claim should be dismissed. In the latter circumstance, which fully applies here, the plaintiff "pleads himself out of court by 'admitting all the ingredients of an impenetrable defense.'" *Barasich v. Shell Pipeline Co.*, Nos. 05-4180, 05-4197, 05-4199, 05-4212, 05-4512, 06-5102, 2006 WL 3913403, at *2 (E.D. La. Nov. 20, 2006) (Barbier, J.) (internal citations omitted) (granting Rule 12(b)(6) dismissal in part).

**A.  Plaintiff Fails to Allege Any Facts Supporting Her Allegations That Anadarko and MOEX Offshore Are Liable for Maritime Negligence, and the Complaint's Allegations Establish as a Matter of Law That No Such Liability Exists.**

Here, the Complaint does not allege facts from which the Court plausibly could infer that Anadarko or MOEX Offshore is liable to Plaintiff under general maritime law or the Jones Act.[1] To the contrary, the facts alleged make clear that, as a matter of law, Plaintiff cannot state a claim against Anadarko and MOEX Offshore. Accordingly, her claims against Anadarko and MOEX Offshore should be dismissed.

---

[1]  The Complaint cites "46 U.S.C. § 688," the superseded codification of the Jones Act. *See* Compl. ¶¶ 2, 10. The Jones Act is now codified at 46 U.S.C. § 30104.

### 1. The General Maritime Law Does Not Apply to Plaintiff's Claim.

Plaintiff cannot sue under the general maritime law for negligence. The Death on the High Seas Act, 46 U.S.C. §§ 30301–30308, which is entirely absent from the Complaint, "is the exclusive remedy given to a seaman's survivors for death occurring on the high seas outside of state territorial waters, *i.e.*, more than 3 nautical miles from shore." *In re Offshore Transp. Servs., L.L.C.*, 409 F. Supp. 2d 753, 755 (E.D. La. 2005); *see also Bodden v. Am. Offshore, Inc.*, 681 F.2d 319, 329 (5th Cir. 1982) ("As [decedent's] injury occurred on the high seas, the general maritime wrongful death remedy which *Moragne-Gaudet* created does not apply;" rather, "[w]hen the incident takes place outside the three-mile limit, DOHSA and DOHSA alone controls") (citation and internal quotation marks omitted).

Under controlling Fifth Circuit authority, DOHSA applies "where the injury or accident resulting in death occurred while the decedent was at sea." *Motts v. M/V Green Wave*, 210 F.3d 565, 571 (5th Cir. 2000). This Court may take judicial notice of the fact that the *Deepwater Horizon* was more than 40 miles offshore when the explosion occurred. FED. R. EVID. 201(b) (authorizing judicial notice of facts "generally known within the territorial jurisdiction of the trial court" and facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"). The only plausible inference is that Mr. Manuel died at sea, where DOHSA applies. *See Motts*, 210 F.3d at 571. Indeed, Plaintiff alleges that Mr. Manuel was not seen, and his body was not recovered, after the explosion, which conclusively defeats any inference that Mr. Manuel died in state territorial waters or on land. Compl. ¶ 6.

The Complaint does not allege that the decedent was injured in state territorial waters, and the Complaint cannot plausibly be amended to make such an allegation. Accordingly, the Court should dismiss Plaintiff's general maritime claim.

5

> **2.     The Complaint Does Not Allege Facts That Show Direct Liability for Negligence Under Any Applicable Law.**
>
>> **a.     As a Matter of Law, Anadarko and MOEX Offshore Did Not Owe Plaintiff or Her Decedent Any Duty of Care.**

Separate and independent from Plaintiff's inability to sue under the general maritime law at all, the Complaint fails to allege facts that would show direct liability under either the general maritime law or DOHSA. "To establish maritime negligence, a plaintiff must 'demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by [the] plaintiff, and a causal connection between the defendant's conduct and the plaintiff's injury.'" *Canal Barge Co. v. Torco Oil Co.*, 220 F.3d 370, 376 (5th Cir. 2000) (quoting *In re Cooper/T. Smith*, 929 F.2d 1073, 1077 (5th Cir. 1991)). Likewise, DOHSA requires factual allegations showing duty, breach, and causation of injury. *See In re Am. River Transp. Co.*, 490 F.3d 351, 354 (5th Cir. 2007) (DOHSA provides a remedy "'[w]here death is caused by the breach of a duty imposed by federal maritime law'") (quoting *Moragne v. States Mar. Lines, Inc.*, 398 U.S. 375, 393 (1970)); *Hartsfield v. Seafarers Int'l Union*, 427 F. Supp. 264, 268 (S.D. Ala. 1977) ("To render a vessel, person or corporation liable under the Death on the High Seas Act, there must be a violation of some legal duty owed to the decedent. Only those wrongful acts, neglects, or defaults which would produce causes of action for a living person are preserved by the Act") (internal citations omitted).

Plaintiff alleges no facts from which the Court could infer that Anadarko or MOEX Offshore owed any legal duty to Plaintiff or her decedent. *See generally In re Graham Offshore, Inc.*, 287 F.3d 352, 359 (5th Cir. 2002) (owner of mobile oil rig owed no duty to injured employee of subcontractor). It is fundamental that a duty to prevent harm resulting from oil and gas operations arises as a consequence of control over the operations. *See, e.g., Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548, 550 (5th Cir. 1987), *cert. denied*, 485 U.S. 1034 (1988).

Further, it is settled that where a principal retains an independent contractor to conduct oil and gas operations but does not retain control over or participate in the actions of the contractor, the principal neither assumes nor owes any duty to the contractor's employees. *Thomas v. Burlington Res. Oil & Gas Co.*, No. Civ. A. 99-3904, 2000 WL 1528082, at *2 (E.D. La. Oct. 13, 2000) (Barbier, J.). Even when a principal without control over or participation in the operation has *actual knowledge* of dangerous conditions on an oil rig, the principal has no legal duty to intercede. *See id.*; *Ronquille v. MMR Offshore Servs., Inc.*, 353 F. Supp. 2d 680, 682 (E.D. La. 2004) (the presence of a company representative on an oil platform with knowledge of the rig's operations "is insufficient to create a duty; therefore, the law does not support the imposition of liability for any failure to intercede").[2]

*Ainsworth* is instructive and is cited by courts applying both Louisiana law and the general maritime law. *See, e.g.*, *Gremillion v. Gulf Coast Catering Co.*, No. 88-4544, 1989 WL 104100, at *6 (E.D. La. Sept. 5, 1989), *aff'd*, 904 F.2d 290 (5th Cir. 1990) (citing *Ainsworth* in tort case under maritime law); *Fontenot v. Southwestern Offshore Corp.*, 787 So.2d 588, 594 (La. Ct. App. 2001) (tort case under maritime law). In *Ainsworth*, Shell hired an independent contractor, Hercules, to erect an offshore drilling rig. 829 F.2d at 549. Hercules worked its crews around the clock, with no lights in the work area, and a worker fell as a result. *Id.* Shell had a "company man" on the rig who was aware of the hazardous conditions, but Shell retained no control over and did not participate in the operation of the rig. The Fifth Circuit rejected the

---

[2] Plaintiff also "avers the applicability of the doctrine of Res Ipsa Loquitur." Compl. ¶ 19. That is a legal conclusion, not a factual allegation assumed to be true on a motion to dismiss. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). In addition, as a legal matter, res ipsa loquitur applies only "when a thing which causes injury . . . is shown to be under the exclusive control of the defendant." *Fruge v. Penrod Drilling Co.*, 918 F.2d 1163, 1166 (5th Cir. 1990) (quoting *San Juan Light & Transit Co. v. Requena*, 224 U.S. 89, 98–99 (1912)). The Complaint's allegations establishing Anadarko's and MOEX Offshore's lack of control make res ipsa loquitur inapplicable to Anadarko and MOEX Offshore.

plaintiff's argument that Shell's knowledge of the danger made it directly liable for the injury and held instead that because Shell lacked control over the operation, it had no duty to intervene. *Id.* at 551.

A similar analysis pertains here because Plaintiff's allegations fall far short of even the *Ainsworth* facts. Plaintiff concedes that Anadarko and MOEX Offshore "are *non-operating investors* . . . ." Compl. ¶ 15 (emphasis added). A *non-operating* interest in a well does not plausibly create a duty to someone else's employee working onboard someone else's vessel. *See In re Graham Offshore, Inc.*, 287 F.3d 352, 359 (5th Cir. 2002). The Complaint is devoid of any facts alleging conduct by Anadarko or MOEX Offshore in breach of any duty. Nor does Plaintiff allege any facts in her Complaint that decedent's or Plaintiff's injuries resulted from any act by Anadarko or MOEX Offshore. To the contrary, the express allegation that Anadarko and MOEX Offshore "are *non-operating* investors" negates any inference that they conducted any of the *operations* on the *Deepwater Horizon* that allegedly led to Plaintiff's injuries and establishes that Plaintiff is not entitled to relief. *See Jones v. Bock*, 549 U.S. 199, 215 (2007) ("if the allegations, taken as true, show the plaintiff is not entitled to relief," then the "complaint is subject to dismissal").

If in *Ainsworth* a company man on the rig with actual knowledge of a dangerous situation had no duty to intercede because he lacked control, it necessarily follows that Anadarko and MOEX Offshore had no duty to Plaintiff or her decedent. Both Defendants were hundreds of miles away from the rig, both lacked any *contractual relationship with the decedent's employer*, and neither are alleged to have had any actual knowledge of a dangerous situation.[3]

---

[3] Plaintiff's allegations against Anadarko and MOEX Offshore contrast sharply with Plaintiff's allegations against the drilling defendants, such as BP and Transocean, on this point. Unlike Anadarko and MOEX Offshore, the drilling defendants are expressly alleged to have

  **b.**  **Plaintiff Cannot State a Claim Against Anadarko and MOEX Offshore by Indiscriminately Lumping Them Together with Other Defendants Whose Relationship to the Decedent Was Fundamentally Different.**

The Complaint is replete with conclusory allegations against the "defendants." Plaintiff improperly lumps together with broad and ambiguous factual assertions entities that are differently situated. As the plaintiffs in Amended B1 Bundle Master Complaint recognize, Anadarko and MOEX Offshore, as non-operating investors, are not similarly situated to the defendants who controlled the drilling operations on the *Deepwater Horizon*.[4] In contrast, Plaintiff in this case alleges in paragraph 9 of the Complaint that the accident "was caused solely by the negligence, fault, gross negligence, and/or wanton and reckless disregard of defendants . . . ;" alleges in paragraph 17 that "Plaintiff seeks recovery against the defendants for their wrongful conduct, including gross, reckless, and wantom [sic] conduct . . . ;" and alleges in paragraph 18 that "[t]he above-described incidents were caused solely by the negligence of defendants . . . ."

As an initial matter, those generalized, undifferentiated allegations fail to satisfy the notice pleading requirement of Federal Rule of Civil Procedure 8. *See Pro Image Installers, Inc.*

---

either controlled, approved, or participated in the drilling, cementing, and temporary well abandonment activities of the *Deepwater Horizon* that allegedly caused Plaintiffs harm. *See* Amend. Mast. Compl. B1 ¶ 229; *see also Denson v. Diamond Offshore Co.*, 955 So.2d 730, 733–34 (La. Ct. App. 2007) (distinguishing *Ainsworth*, 829 F.2d, *Wallace v. Oceaneering Int'l*, 727 F.2d 427 (5th Cir. 1984), and *McCormack v. Noble Drilling Corp.*, 608 F.2d 169 (5th Cir. 1979) because evidence showed company man on oil rig was involved in operations in that case).

[4] The B1 Bundle plaintiffs divide the named defendants into three distinct groups: (1) "the Drilling Defendants," including BP, Transocean, Halliburton and M-1, who are alleged to have operated or participated in the operations of the *Deepwater Horizon*, Amend. Mast. Compl. B1 ¶¶ 210–29; (2) the products liability defendants, including Weatherford and Cameron, who are alleged to have manufactured defective products used on the *Deepwater Horizon*, *id.* ¶¶ 230–32; and (3) the non-operating investor defendants, including Anadarko Petroleum Corporation, Anadarko E&P Company, LP, MOEX Offshore 2007, LLC, MOEX USA Corporation, and Mitsui Oil Exploration Co., who are alleged to be "non-operational leaseholders" of the Macondo well where the Drilling Defendants conducted their operations. *Id.* ¶¶ 233–50, 282.

*v. Dillon*, No. 3:08cv273/MCR/MD, 2009 WL 112953, at *2 (N.D. Fla. Jan. 15, 2009) (dismissing complaint that inadequately distinguished between the separate defendants); *Lane v. Capital Acquisitions & Mgmt. Co.*, No. 04-60602 CIV, 2006 WL 4590705, at *5 (S.D. Fla. Apr. 14, 2006) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, the Lane's Complaint fails to satisfy the minimum standard of Rule 8") (citation omitted).  Here, the lumping-together allegations are particularly inadequate in light of Plaintiff's concession that Anadarko and MOEX Offshore lacked any control over drilling operations and activities.  Plaintiff's generalized allegations also "do not suffice" because they are, at most, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  They are prototypes of the "unadorned, the-defendant-unlawfully-harmed-me accusation" that the Supreme Court has held insufficient.  *Id.*; *see also Jebaco, Inc. v. Harrah's Operating Co.*, 587 F.3d 314, 318 (5th Cir. 2009) ("the complaint must allege 'more than labels and conclusions'") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

In sum, the Complaint alleges no facts that show that Anadarko or MOEX Offshore could be directly liable on a claim of maritime negligence.  Instead, Plaintiff alleges facts that show as a matter of law that Anadarko and MOEX Offshore cannot be held so liable.

### 3. The Complaint Alleges No Facts From Which Vicarious Liability for Negligence Could be Found.

Lacking any facts to directly tie the Non-Operating Investors to the casualty, the Complaint conclusorily asserts that Anadarko and MOEX Offshore are "joint venturers" with BP and "solidarily liable with co-defendants pursuant to the Operating Agreement with the BP

10

defendants."  Compl. ¶¶ 1(G–H), 15.[5]  That allegation also is a "bare assertion[]" that is "conclusory and not entitled to be assumed to be true."  *Iqbal*, 129 S. Ct. at 1951 (citations omitted).  This is particularly so given Plaintiff's express allegation—in the same sentence—that Anadarko and MOEX Offshore "are non-operating investors."  Compl. ¶ 15.

The mere existence of an operating agreement between Anadarko and MOEX Offshore, on the one hand, and BP, on the other, is not a legally sufficient basis on which to impose vicarious liability.  *Burlington Res., Inc. v. United Nat'l Ins. Co.*, 481 F. Supp. 2d 567, 573 (E.D. La. 2007) ("a non-operator of a well is not liable for the tortious acts of the operator," so "[t]he [Joint Operating Agreement] in no way created any type of vicarious tort liability . . .").  Before a non-actor can be jointly and solidarily liable for the tortious conduct of another, there must be a sufficient relationship among the parties to permit imputation of liability to the non-actor.  *See generally St. Paul Fire and Mar. Ins. Co. v. Vest Transp. Co.*, 666 F.2d 932, 937 (5th Cir. 1982) (considering in case of maritime casualty whether parties were "in a joint venture at the time of the casualty so as to impute" one party's negligence to the other); *see also Johnson v. Peerless Ins. Co.*, 299 So.2d 434, 436 (La. Ct. App. 1974) ("[I]n order to hold a third party liable for the damage caused by a tort feasor[,] plaintiff must allege and prove a relationship which forms the legal basis for the third party's vicarious liability").

The Fifth Circuit "equates vicarious liability with control."  *Hajtman v. NCL (Bahamas) Ltd.*, 526 F. Supp. 2d 1324, 1327 (S.D. Fla. 2007) (citing *Barbetta v. Bermuda Star*, 848 F.2d 1364, 1369 (5th Cir. 1988)).  Thus, in *Sasportes v. M/V Sol de Copacabana*, the Fifth Circuit explained that while a "joint venture" could support a finding of vicarious liability, such joint

---

[5]  "The civil law concept of *in solido* or solidary liability is the functional equivalent of the common law principle of joint and several liability."  *Martin v. D.R. Horton, Inc.*, No. 07-940-C, 2008 WL 4693397, at *3 n.4 (M.D. La. Oct. 23, 2008) (citations omitted).

ventures must "involve joint control or the joint right of control." 581 F.2d 1204, 1208 (5th Cir. 1978) (citation omitted). Here, while Plaintiff attempts to impute vicarious liability based on the existence of an Operating Agreement, she does not allege the existence of a joint venture with joint control and does not allege any facts from which the Court could infer the existence of such a joint venture. *See* Compl. ¶ 15. No such facts exist. "[I]n determining whether a joint venture exists . . . [p]ertinent factors include: (1) *the existence of joint control, or a joint right of control, relevant to the vessel's operations*, (2) joint proprietary interests in the subject matter of the venture, and (3) a sharing of profits and losses." *Hinson v. M/V Chimera*, 661 F. Supp. 2d 614, 619 (E.D. La. 2009) (emphasis added, citations omitted). Furthermore, "the parties' intentions are important." *Sasportes*, 581 F.2d at 1208 (citation omitted).

Applying this standard, courts have held that a non-operating partner of a mining operation does not have vicarious liability for the negligence of the operating partner where, as here, the non-operating partner does not have authority to control the enterprise. *See, e.g.*, *James v. Nico Energy Corp.*, 838 F.2d 1365, 1373 (5th Cir. 1988) (no joint venture where one party's involvement in oil wells was limited to investment of capital and another party had "the sole right of control in drilling and operating of wells"); *Transcon. Gas Pipe Line Corp. v. Mr. Charlie*, 294 F. Supp. 1025, 1031 (E.D. La. 1968), *aff'd in relevant part and rev'd in part on other grounds*, 424 F.2d 684 (5th Cir. 1970), *cert. denied*, 400 U.S. 832 (1970) (no indirect liability under maritime law for non-operating co-owners of oil and gas lease where designated operator, but not non-operators, was negligent); *Bolivar v. R & H Oil and Gas Co.*, 789 F. Supp.

1374, 1381–82 (S.D. Miss. 1991) (one who has no right to control operations at gas well may not be held liable as joint venturer).[6]

Plaintiff makes no factual allegations that Anadarko or MOEX Offshore exercised control over any relevant activity. To the contrary, Plaintiff alleges that Anadarko and MOEX Offshore were "non-operating investors" in the Macondo Prospect, Compl. ¶ 15, and that the vessel *Deepwater Horizon* was "owned and/or operated and/or chartered and/or controlled *by TRANSOCEAN and/or BP* at all material times herein." *Id*. ¶ 5 (emphasis added); *see also id*. ¶ 11 (alleging that BP "operated the oil well that is the source of the oil spill"). By affirmatively alleging that defendants *other than* Anadarko and MOEX Offshore "controlled" the *Deepwater Horizon* "at all material times," *id*. ¶ 5, and that Anadarko and MOEX Offshore were "non-operating investors," Plaintiff's own allegations conclusively establish that Anadarko and MOEX Offshore cannot be held vicariously liable under maritime law.

The absence of control by Anadarko and MOEX Offshore is likewise made clear by the Operating Agreement on which Plaintiff relies. *See* Macondo Prospect Offshore Deepwater Operating Agreement, attached hereto as Exhibit A ("Ex. A"). "[D]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) (internal citation and quotation marks omitted); *see also In re Katrina Canal Breaches Litig*., 495 F.3d 191, 205 (5th Cir. 2007) ("[B]ecause the defendants

---

[6] *See also Blocker Exploration Co. v. Frontier Exploration, Inc*., 740 P.2d 983, 988 (Colo. 1987) (no joint venture where non-operating owner merely invested funds and there was no right of participation in management and control of operation); *Archer v. Bill Pearl Drilling Co.*, 655 S.W.2d 338, 344 (Tex. App. 1983) (no joint venture in negligence action as a matter of law where co-owner merely invested in venture but exercised no right to participate in control or operation of drill site); *Ayco Dev. Corp. v. G.E.T. Serv. Co*., 616 S.W.2d 184, 186 (Tex. 1981) (no joint venture where defendants merely invested by paying costs of drilling well but did not participate in actual drilling, operation, and control of the well).

attached the contracts to their motion to dismiss, the contracts were referred to in the complaints, and the contracts are central to plaintiffs' claims, we may consider the terms of the contracts in assessing the motions to dismiss"); *Kane Enters. v. MacGregor Inc.*, 322 F.3d 371, 374 (5th Cir. 2003) ("[T]he court may review the documents attached to the motion to dismiss, e.g., the contracts in issue here, where the complaint refers to the documents and they are central to the claim"). Here, Plaintiff's claim that Anadarko and MOEX Offshore "are solidarily liable with co-defendants" is based entirely on "the Operating Agreement with the BP defendants," Compl. ¶ 15, so the Court may consider the Agreement in ruling on this motion to dismiss.

The Operating Agreement vests authority to control operations in BP and provides that the parties have not created a joint venture. Specifically, Article 4.1 designates "BP Exploration & Production Inc." as the "Operator." Ex. A at 14. Article 5.1 provides that

> the Operator has the *exclusive right and duty to conduct (or cause to be conducted) all activities or operations under this Agreement.* In performing services under this Agreement for the Non-Operating Parties, the Operator is an independent contractor, *not subject to the control or direction of Non-Operating Parties . . . .*

*Id.* at 20 (emphases added). Similarly, Article 22.1 provides that the

> obligations, duties, and liabilities of the Parties under this Agreement are several and not joint or collective, and . . . nothing in this Agreement shall be construed to create a partnership, joint venture, association, or other form of business entity recognizable in law for any purpose.

*Id.* at 130. Nothing in the Operating Agreement supports Plaintiff's claim that Anadarko and MOEX Offshore are vicariously liable for BP's or any other defendant's conduct. Indeed, the language of the Operating Agreement establishes the opposite and is entirely consistent with Plaintiff's own allegation that Anadarko and MOEX Offshore are "non-operating investors." Compl. ¶ 15.

In sum, the Complaint contains no factual allegations that would support vicarious liability against Anadarko or MOEX Offshore under general maritime law. Rather, Plaintiff's own allegations preclude any finding of liability as a matter of law. Because neither direct nor vicarious liability has been adequately alleged, the Court should dismiss Plaintiff's claims for maritime negligence as to Anadarko and MOEX Offshore.[7]

**B.      Plaintiff Fails to State a Claim Against Anadarko or MOEX Offshore Under the Jones Act.**

Plaintiff attempts to assert a claim under the Jones Act, but the Complaint is unclear concerning which defendants Plaintiff is suing under the Act. Compl. ¶¶ 2, 10. If Plaintiff is asserting a Jones Act claim against Anadarko and MOEX Offshore, it is flawed as a matter of law and must be dismissed.

The Jones Act gives an injured seaman or, if death occurs, the seaman's personal representative, the right to bring an action "against the *employer*." 46 U.S.C. § 30104 (emphasis added). The Jones Act "is applicable only if the employment relationship exists." *Baker v. Raymond Int'l, Inc*., 656 F.2d 173, 177 (5th Cir. 1981) (citations omitted). Plaintiff, however, does not, and cannot, allege that her husband was employed by either Anadarko or MOEX Offshore. Nor does Plaintiff allege that either Anadarko or MOEX Offshore had "the power to control and direct" the decedent "in the performance of (his) work" to support a Jones Act claim under the "borrowed servant doctrine." *Id.* at 178 (*quoting Gaudet v. Exxon Corp.*, 562 F.2d 351, 355 (5th Cir. 1977)) (internal quotation marks omitted). The facts alleged and the plain terms of the Operating Agreement on which Plaintiff relies conclusively establish the absence of any such control. Thus, Plaintiff fails to state a claim against Anadarko or MOEX Offshore

---

[7]      The same result would obtain if Plaintiff had sued under DOHSA. Assuming *arguendo* that vicarious liability is available at all under DOHSA, DOHSA does not have a lesser standard for imposing it than the control requirement described above.

under the Jones Act. *See, e.g.*, *Perkins v. Union Barge Line Corp.*, 373 F.2d 714, 716 (6th Cir. 1967) (affirming dismissal of complaint where the plaintiff "does not allege that respondent was his employer in fact, and his pleaded facts do not state a case under 'the loaned servant' doctrine") (citations omitted).

## C.   Plaintiff's Claims for Non-Pecuniary Damages Should Be Dismissed.

Plaintiff seeks non-pecuniary damages, including loss of consortium, loss of enjoyment of life, mental anguish, and punitive and exemplary damages, Compl. ¶ 20, but these remedies are unavailable under the general maritime law, DOHSA, and the Jones Act. With respect to the general maritime law and DOHSA, the Supreme Court has held that "Congress made the decision for us. DOHSA, by its terms, limits recoverable damages in wrongful death suits to '*pecuniary* loss sustained by the persons for whose benefit the suit is brought,'" and "[t]his explicit limitation forecloses recovery for nonpecuniary loss, such as loss of society, in a general maritime action." *Miles v. Apex Mar. Corp.*, 498 U.S. 19, 31 (1990) (internal citation omitted). In the same case, the Court held that Congress "intended to incorporate the pecuniary limitation on [Jones Act] damages as well." *Id.* at 32; *see also Scarborough v. Clemco Indus*, 391 F.3d 660, 668 (5th Cir. 2004), *cert. denied*, 544 U.S. 999 (2005) ("[T]he court finds that neither one who has invoked his Jones Act seaman status nor his survivors may recover nonpecuniary damages from non-employer third parties"); *Dunham v. Expro Ams., Inc.*, 423 F. Supp. 2d 664, 668 (S.D. Tex. 2003) ("Plaintiffs' potential recovery is limited to pecuniary losses. Hence, Plaintiffs are barred from seeking punitive damages").[8] Even if Plaintiff could state a claim for

---

[8]   *Atlantic Sounding Co. v. Townsend*, in which the Court recognized a punitive damages remedy for wrongful failure to pay maintenance and cure, offers Plaintiff no relief. 129 S. Ct. 2561 (2009). In that decision, the Court restated the *Miles* conclusion that Congress has limited Jones Act and DOHSA remedies to pecuniary losses. *Id.* at 2564.

relief against Anadarko or MOEX Offshore, which for the reasons explained above, she manifestly cannot, her claims for non-pecuniary damages should be dismissed.

## IV.
## CONCLUSION

For the foregoing reasons, the claims asserted in the Complaint against Anadarko and MOEX Offshore fail as a matter of law and should be dismissed in their entirety. In the alternative, Plaintiff's claims for non-pecuniary loss should be dismissed.

Respectfully submitted,

BINGHAM McCUTCHEN

/s/ *Ky E. Kirby*
Ky E. Kirby
ky.kirby@bingham.com
David B. Salmons
david.salmons@bingham.com
Michael B. Wigmore
michael.wigmore@bingham.com
Warren Anthony Fitch
tony.fitch@bingham.com
Randall M. Levine
randall.levine@bingham.com
2020 K Street, NW
Washington, DC 20006-1806
Telephone (202) 373-6000
Facsimile (202) 373-6001

James J. Dragna
jim.dragna@bingham.com
Bingham McCutchen LLP
355 South Grand Avenue
Suite 4400
Los Angeles, California 90071-3106
Telephone (213) 680-6436
Facsimile (213) 680-8636

KUCHLER POLK SCHELL
WEINER & RICHESON, LLC

Deborah D. Kuchler, T.A. (La. Bar No. 17013)
dkuchler@kuchlerpolk.com
Janika Polk (La. Bar No. 27608)
jpolk@kuchlerpolk.com
Robert Guidry (La. Bar No. 28064)
rguidry@kuchlerpolk.com
1615 Poydras Street, Suite 1300
New Orleans, LA  70112
Tel:  (504) 592-0691
Fax:  (504) 592-0696

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, pursuant to Pre-trial Order No. 12, I have caused the foregoing to be served on all counsel via the Lexis Nexis File & Serve system, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, who will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on February 11, 2011.

                                                                                          /s/ *Ky E. Kirby*
                                                                                          KY E. KIRBY
                                                                                          BINGHAM McCUTCHEN, LLP
                                                                                          2020 K Street, NW
                                                                                          Washington, DC 20006-1806
                                                                                          Telephone (202) 373-6000
                                                                                          Facsimile (202) 373-6001
                                                                                          ky.kirby@bingham.com