# EXHIBIT A

# MACONDO PROSPECT
# OFFSHORE DEEPWATER
# OPERATING AGREEMENT

370266

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001601

# TABLE OF CONTENTS

## Operating Agreement
## Outer Continental Shelf – Gulf of Mexico

**ARTICLE 1 – CONTRACT APPLICATION** ...............................................................1
  1.1    Application in General ...........................................................1
  1.2    Application to the Contract Area.......................................1

**ARTICLE 2 – DEFINITIONS** ..........................................................................2
  2.1    Additional Testing, Logging, or Sidewall Coring.....................2
  2.2    Affiliate ...................................................................2
  2.3    Agreement..................................................................2
  2.4    Annual Operating Plan ....................................................2
  2.5    Appraisal Operation ......................................................2
  2.6    Appraisal Well ............................................................3
  2.7    Authorization for Expenditure (AFE)......................................3
  2.8    Complete Recoupment .....................................................3
  2.9    Confidential Data .........................................................3
  2.10    Contract Area ............................................................3
  2.11    Costs ...................................................................3
  2.12    Deepen or Deepening........................................................4
  2.13    Deeper Drilling .........................................................4
  2.14    Deepest Producible Reservoir..............................................4
  2.15    Define AFE ..............................................................4
  2.16    Define Stage ............................................................4
  2.17    Development Operation .....................................................4
  2.18    Development Phase .......................................................4
  2.19    Development Plan ........................................................4
  2.20    Development System ......................................................5
  2.21    Development Well.........................................................5
  2.22    Disproportionate Spending ................................................5
  2.23    Election, Elect, Elects, Elected, Electing...............................5
  2.24    Enhanced Recovery Project Team AFE .......................................5
  2.25    Execution AFE ...........................................................5
  2.26    Execution Stage.........................................................5
  2.27    Exploratory Operation.....................................................5
  2.28    Exploratory Well ........................................................6
  2.29    Export Pipelines ........................................................6
  2.30    Facilities...............................................................6
  2.31    Feasibility AFE..........................................................6
  2.32    Feasibility Stage .......................................................6
  2.33    Feasibility Team.........................................................7
  2.34    Force Majeure ...........................................................7
  2.35    HSE.....................................................................7
  2.36    Hydrocarbon Recoupment ..................................................7
  2.37    Hydrocarbons............................................................7
  2.38    Joint Account............................................................7

CONFIDENTIAL

APC-HEC1-000001602

ACCESS RESTRICTED

2.39    Lease .................................................................................................. 7
2.40    MMS .................................................................................................... 8
2.41    News Release ..................................................................................... 8
2.42    Non-Consent Operation ..................................................................... 8
2.43    Non-Operating Party ........................................................................... 8
2.44    Non-Participating Party ...................................................................... 8
2.45    Non-Participating Interest Share ...................................................... 8
2.46    Objective Depth ................................................................................... 8
2.47    OCS ...................................................................................................... 9
2.48    Offsite Host Facilities ......................................................................... 9
2.49    Operator ............................................................................................... 9
2.50    Overinvested Party ............................................................................. 9
2.51    Participating Interest Share ............................................................... 9
2.52    Participating Party .............................................................................. 9
2.53    Post-Production Project Team AFE ................................................. 10
2.54    Producible Reservoir ........................................................................ 10
2.55    Producible Well .................................................................................. 10
2.56    Production System ............................................................................ 10
2.57    Production Testing ............................................................................ 11
2.58    Project Team ...................................................................................... 11
2.59    Recompletion ..................................................................................... 11
2.60    Selection AFE ..................................................................................... 11
2.61    Selection Stage .................................................................................. 11
2.62    Sidetracking ....................................................................................... 12
2.63    Transfer of Interest ........................................................................... 12
2.64    Underinvested Party .......................................................................... 12
2.65    Underinvestment ............................................................................... 12
2.66    Vote ..................................................................................................... 12
2.67    Well Plan ............................................................................................. 12
2.68    Working Interest ................................................................................ 13
2.69    Workover ............................................................................................ 13

ARTICLE 3 – EXHIBITS ................................................................................. 13
3.1     Exhibits ............................................................................................... 13

ARTICLE 4 – SELECTION OF OPERATOR ................................................. 14
4.1     Designation of the Operator ............................................................ 14
4.2     Substitute Operator ........................................................................... 15
        4.2.1   Substitute Operator if Operator is a Non-Participating Party ............... 15
        4.2.2   Substitute Operator if Operator Fails to Commence Drilling
                Operations ................................................................................. 15
        4.2.3   Circumstances Under Which the Operator Must Conduct a Non-
                Consent Operation ..................................................................... 16
        4.2.4   Operator's Conduct of a Non-Consent Operation in Which it is a Non-
                Participating Party ...................................................................... 16
        4.2.5   Appointment of a Substitute Operator ...................................... 17
        4.2.6   Redesignation of Operator ......................................................... 17
4.3     Resignation of Operator .................................................................... 17
4.4     Removal of Operator .......................................................................... 17
        4.4.1   Removal Upon Assignment ......................................................... 17

CONFIDENTIAL

APC-HEC1-000001603

ACCESS RESTRICTED

|  | 4.4.2 | Removal for Cause by Vote | 18 |
|  | 4.4.3 | Timing of Vote to Remove Operator | 18 |
| 4.5 | Selection of Successor Operator | | 19 |
| 4.6 | Effective Date of Resignation or Removal | | 19 |
| 4.7 | Delivery of Property | | 19 |

**ARTICLE 5 – RIGHTS AND DUTIES OF OPERATOR** ........................ 20

| 5.1 | Exclusive Right to Operate | 20 |
| 5.2 | Workmanlike Conduct | 21 |
| 5.3 | Drilling Operations | 21 |
| 5.4 | Liens and Encumbrances | 21 |
| 5.5 | Records | 22 |
| 5.6 | Reports to Government Agencies | 22 |
| 5.7 | Information to Participating Parties | 22 |
| 5.8 | Completed Well Information | 24 |
| 5.9 | Information to Non-Participating Parties | 24 |
| 5.10 | Health, Safety, and Environment: | 25 |

**ARTICLE 6 – EXPENDITURES AND ANNUAL OPERATING PLAN** ........................ 25

| 6.1 | Basis of Charges to the Parties | | | 25 |
| 6.2 | AFEs | | | 25 |
|  | 6.2.1 | AFE Overrun Notice | | 26 |
|  | 6.2.2 | Supplemental AFEs | | 26 |
|  |  | 6.2.2.1 | Permitted Over-expenditures on Well Operations | 27 |
|  |  | 6.2.2.2 | Permitted Over-expenditures on the Feasibility AFE, a Post-Production Project Team AFE, or an Enhanced Recovery Project Team AFE | 28 |
|  |  | 6.2.2.4 | Permitted Over-expenditures on an Execution AFE | 28 |
|  |  | 6.2.2.5 | Permitted Over-expenditures on All Other AFEs | 28 |
|  | 6.2.3 | Further Operations During a Force Majeure | | 28 |
|  | 6.2.4 | Long Lead Well Operation AFEs | | 29 |
|  |  | 6.2.4.1 | Approval of a Long Lead Well Operation AFE | 29 |
| 6.3 | Security Rights | | | 30 |
|  | 6.4.1 | Effect and Content of Annual Operating Plan | | 30 |
|  |  | 6.4.1.1 | Capital Budget | 30 |
|  |  | 6.4.1.2 | Expense Budget | 31 |
|  |  | 6.4.1.3 | Operator Forecasts and Informational Items | 31 |
|  | 6.4.2 | Submission of Draft Annual Operating Plan | | 32 |
|  | 6.4.3 | Review of Draft Annual Operating Plan | | 32 |

**ARTICLE 7 – CONFIDENTIALITY OF DATA** ........................ 33

| 7.1 | Confidentiality Obligation | | | 33 |
|  | 7.1.1 | Exceptions to Confidentiality | | 33 |
|  | 7.1.2 | Permitted Disclosures | | 33 |
|  |  | 7.1.2.1 | Operator's Permitted Disclosures | 33 |
|  |  | 7.1.2.2 | All Parties' Permitted Disclosures | 34 |
|  | 7.1.3 | Limited Releases to Offshore Scout Association | | 35 |
|  | 7.1.4 | Continuing Confidentiality Obligation | | 35 |
| 7.2 | Ownership of Confidential Data | | | 36 |
|  | 7.2.1 | Trades of Confidential Data | | 36 |
|  | 7.2.2 | Ownership of Non-Consent Data | | 36 |

iii

7.3     Access to the Lease and Rig ...............................................36
7.4     Development of Proprietary Information and/or Technology .....................37

ARTICLE 8 – APPROVALS AND NOTICES ..................................................37
    8.1     Classes of Matters .................................................37
            8.1.1   Voting and Electing Interest ...........................37
    8.2     Voting and Election Procedures ...................................37
            8.2.1   Approval by Vote .......................................38
            8.2.2   Approval by Election....................................38
    8.3     Second Opportunity to Participate ................................39
    8.4     Participation by Fewer Than All Parties ..........................39
    8.5     Approval by Unanimous Agreement ..................................40
    8.6     Response Time for Notices ........................................40
            8.6.1   Well Proposals, Recompletions, and Workovers............40
            8.6.2   Execution AFE ..........................................41
            8.6.3   Other AFE Related Operations ...........................41
            8.6.4   Other Proposals ........................................41
            8.6.5   Failure to Vote or Make an Election ....................42
            8.6.6   Suspensions of Operations and Suspensions of Production ...............42
            8.6.7   Standby Charges ........................................42
    8.7     Giving and Receiving Notices and Responses .......................43
    8.8     Content of Notices ...............................................43
    8.9     Designation of Representatives ...................................43
    8.10    Meetings..........................................................44
    8.11    Obligations of Well Participation ................................44

ARTICLE 9 – NEWS RELEASES ..........................................................44
    9.1     Proposal of News Releases ........................................44
            9.1.1   Operator's News Release ................................44
            9.1.2   Non-Operating Party's News Release .....................45
    9.2     Emergency New Releases ...........................................46
    9.3     Mandatory News Releases...........................................46

ARTICLE 10 – EXPLORATORY OPERATIONS ...............................................47
    10.1    Proposal of Exploratory Wells.....................................47
            10.1.1  Revision of Well Plan ..................................47
            10.1.2  Automatic Revision of the Well Plan ....................48
            10.1.3  Timely Operations ......................................48
            10.1.4  AFE Overruns and Substitute Well........................50
    10.2    Exploratory Operations at Objective Depth.........................51
            10.2.1  Response to Operator's Proposal ........................52
            10.2.2  Response to Highest Priority Proposal ..................53
            10.2.3  Response on Next Highest Priority Proposal..............54
            10.2.4  Non-Participating Parties in Exploratory Operations at Objective
                    Depth...................................................54
            10.2.5  Participation in a Sidetrack or Deepening by a Non-Participating
                    Party in an Exploratory Well at Initial Objective Depth ............54
    10.3    Permanent Plugging and Abandonment and Cost Allocation............55
    10.4    Conclusion of Exploratory Operations .............................56

iv

CONFIDENTIAL                                        APC-HEC1-000001605

ACCESS RESTRICTED

ARTICLE 11 – APPRAISAL OPERATIONS .................................................. 56
  11.1   Proposal of Appraisal Wells ............................................................ 56
         11.1.1   Revision of Well Plan ................................................ 57
         11.1.2   Automatic Revision of the Well Plan ......................... 57
         11.1.3   Timely Operations ..................................................... 57
         11.1.4   AFE Overruns and Substitute Well ............................ 59
  11.2   Appraisal Operations at Objective Depth ....................................... 60
         11.2.1   Response to Operator's Proposal .............................. 61
         11.2.2   Response to Highest Priority Proposal ...................... 62
         11.2.3   Response on Next Highest Priority Proposal ............. 62
         11.2.4   Non-Participating Parties in Appraisal Operations at Objective Depth .. 63
         11.2.5   Participation in a Sidetrack or Deepening by a Non-Participating
                  Party in an Appraisal Well at Initial Objective Depth ............ 63
  11.3   Appraisal Well Proposals That Include Drilling Below the Deepest
         Producible Reservoir ...................................................................... 64
  11.4   Permanent Plugging and Abandonment and Cost Allocation ....................... 64
  11.5   Conclusion of Appraisal Operations ................................................ 65
  11.6   Operations Before the Approval of the Development Plan ........................ 66

ARTICLE 12 – DEVELOPMENT PHASES ...................................................... 66
  12.1   Phased Development ........................................................................ 66
  12.2   Feasibility Team Proposal ................................................................ 66
         12.2.1   Feasibility AFE Approval ............................................ 68
         12.2.2   Feasibility Team and Feasibility Stage Conclusion ........... 68
  12.3   Commencement of the Selection Stage ............................................. 68
         12.3.1   Proposal of a Project Team ......................................... 68
         12.3.2   Selection AFE Approval .............................................. 71
  12.4   Proposal of a Development Plan ...................................................... 71
         12.4.1   Content of the Development Plan ................................. 71
  12.5   Development Plan Approval ............................................................. 75
         12.5.1   Approval of Operator's Development Plan Submitted During its
                  Exclusive Period ......................................................... 75
         12.5.2   Approval of a Development Plan After the Conclusion of the
                  Operator's Exclusive Period ......................................... 75
         12.5.3   Approval of a Development Plan if One is Not Approved by Vote ........ 76
         12.5.4   Approved Development Plan .......................................... 76
  12.6   Long Lead Development System AFEs ............................................... 77
  12.7   Define Stage and Execution Stage ................................................... 78
         12.7.1   Execution AFE ........................................................... 78
         12.7.2   Approval of an Execution AFE and Commencement of the Execution
                  Stage ........................................................................ 78
         12.7.3   Minor Modifications to Development Plans ...................... 79
         12.7.4   Major Modifications to Development Plans ...................... 79
         12.7.5   Major Modifications to Development Plans Prior to the Approval of
                  the Execution AFE ...................................................... 80
         12.7.6   Major Modifications to Development Plans After the Approval of the
                  Execution AFE ............................................................ 81
         12.7.7   Approval of Major Modifications ................................... 81
         12.7.8   Termination of a Development Plan ................................ 82
                  12.7.8.1  Termination Prior to Execution AFE Approval .......... 82
                  12.7.8.2  Termination After Execution AFE Approval ............ 82

v

CONFIDENTIAL

APC-HEC1-000001606

ACCESS RESTRICTED

12.7.9    Timely Operations for Development Systems .................................82
**12.8    Post-Production Project Team AFEs** ..................................................83
**12.9    Subsequent Development Phases** .....................................................84
12.9.1    Proposal of a Subsequent Development Phase .........................84
12.9.2    Execution AFE in a Subsequent Development Phase ..................84
**12.10  Access to Existing Facilities** ..........................................................84
**12.11  Enhanced Recovery and/or Pressure Maintenance Program Proposals** .....85

**ARTICLE 13 – DEVELOPMENT OPERATIONS** ...............................................85
**13.1    Proposal of Development Wells and Development Operations** ...................85
13.1.1    Proposal of Development Wells Included in a Development Plan ........86
13.1.1.1  Revision of Well Plan ...........................................86
13.1.1.2  Automatic Revision of the Well Plan ..........................86
13.1.2    Proposal of Development Operations Not Included in a Development Plan ...........87
13.1.3    Timely Operations .......................................................87
13.1.4    AFE Overruns and Substitute Well ..................................89
**13.2    Development Operations at Objective Depth** ......................................90
13.2.1    Response to Operator's Proposal ...................................91
13.2.2    Response to Highest Priority Proposal ............................92
13.2.3    Response on Next Highest Priority Proposal .......................92
13.2.4    Non-Participating Parties in Development Operations at Objective Depth ...........92
13.2.5    Participation in a Sidetrack or Deepening by a Non-Participating Party in a Development Well at Initial Objective Depth .......................93
**13.3    Development Well Proposals That Include Drilling Below the Deepest Producible Reservoir** ...........93
13.3.1    Multiple Completion Alternatives Above and Below the Deepest Producible Reservoir ...........94
13.3.2    Completion Attempts At or Above the Deepest Producible Reservoir ..96
**13.4    Recompletions and Workovers** .......................................................96
**13.5    Permanent Plugging and Abandonment and Cost Allocation** ..................97

**ARTICLE 14 – FACILITIES AND GATHERING SYSTEMS** ...............................98
**14.1    Facilities as a Part of Development Plan** ..........................................98
**14.2    Use of Offsite Host Facilities** ......................................................98
**14.3    Use of Development Systems** .........................................................99
**14.4    Processing Priorities** ................................................................99
**14.5    Approval of Additional Facilities** .................................................100
**14.6    Expansion or Modification of Existing Production System** ......................100
**14.7    Additions, Expansion, or Modification of Production System or Facilities for Health, Safety, or Environmental Reasons** ...........101

**ARTICLE 15 – DISPOSITION OF HYDROCARBON PRODUCTION** ..........................101
**15.1    Duty to Take in Kind** .................................................................101
**15.2    Facilities to Take in Kind** .........................................................101
**15.3    Failure to Take Oil or Condensate in Kind** .....................................102
**15.4    Gas Balancing Provision** ............................................................102
**15.5    Expenses of Delivery in Kind** ......................................................102

vi

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001607

**ARTICLE 16 – NON-CONSENT OPERATIONS** ....................................................... **103**
16.1   **Conduct of Non-Consent Operations** ............................................ **103**
    16.1.1   Costs ........................................................................................ 103
    16.1.2   Multiple Completions ............................................................... 104
16.2   **Acreage Forfeiture Provisions** ...................................................... **104**
    16.2.1   First Exploratory Well ............................................................. 104
    16.2.2   Execution AFE ......................................................................... 106
16.3   **Costs and Liabilities of Prior Operations** ..................................... **106**
16.4   **Non-Consent Operations to Maintain Contract Area** ..................... **106**
    16.4.1   Acreage Forfeiture in the Entire Contract Area ....................... 107
    16.4.2   Acreage Forfeiture in a Portion of a Contract Area ................. 107
    16.4.3   Limitations on Acreage Forfeiture .......................................... 109
16.5   **Percentage Hydrocarbon Recoupment for Non-Consent Operations** ........ **109**
    16.5.1   Non-Consent Exploratory Operations down to Objective Depth in the First Exploratory Well .................................................. 109
        16.5.1.1   Non-Consent Exploratory Operations at Objective Depth ... 110
    16.5.2   Non-Consent Appraisal Operations ......................................... 110
    16.5.3   Non-Consent Proprietary Geophysical Operations, Feasibility AFEs, Selection AFEs, Define AFEs, Long Lead Development System AFEs, Post-Production Project Team AFEs, or Enhanced Recovery Project Team AFEs ..... 110
    16.5.4   Non-Consent Development Operations .................................... 111
    16.5.5   Non-Consent Subsequent Development System and Additional Facilities ..... 111
    16.5.6   Additional Hydrocarbon Recoupment ..................................... 111
    16.5.7   Hydrocarbon Recoupment From Production .......................... 111
        16.5.7.1   Non-Consent Exploratory Operations, Non-Consent Appraisal Operations, and Non-Consent Development Operations That Discover or Extend a Producible Reservoir 111
        16.5.7.2   Non-Consent Development Operations in an Existing Producible Reservoir ..... 112
        16.5.7.3   Non-Consent Subsequent Development Systems ............. 113
16.6   **Restoration of Interests to Non-Participating Party** ...................... **113**
    16.6.1   Dry Hole Reversion ................................................................. 114
    16.6.2   Sidetracking or Deepening a Non-Consent Well ...................... 114
16.7   **Operations From a Subsequent Non-Consent Development System** ..... **115**
16.8   **Allocation of Development System Costs to Non-Consent Operations** ..... **115**
    16.8.1   Investment Charges ................................................................. 115
    16.8.2   Payments ................................................................................. 117
    16.8.3   Operating and Maintenance Charges ...................................... 117
16.9   **Settlement of Underinvestments** ................................................... **117**
    16.9.1   Cash Settlement of Underinvestment ...................................... 119

**ARTICLE 17 – WITHDRAWAL FROM AGREEMENT** ........................................... **119**
17.1   **Right to Withdraw** ........................................................................ **119**
17.2   **Response to Withdrawal Notice** .................................................... **120**
    17.2.1   Unanimous Withdrawal ........................................................... 120
    17.2.2   No Additional Withdrawing Parties ......................................... 120
    17.2.3   Acceptance of the Withdrawing Parties' Interests .................. 120
    17.2.4   Effects of Withdrawal .............................................................. 121
17.3   **Limitation Upon and Conditions of Withdrawal** ............................ **121**

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001608

17.3.1   Prior Expenses................................................................121
17.3.2   Confidentiality................................................................122
17.3.3   Emergencies and Force Majeure ................................123

**ARTICLE 18 – ABANDONMENT AND SALVAGE** ..................................123
18.1   Abandonment of Wells................................................................123
18.2   Abandonment of Equipment.......................................................124
18.3   Disposal of Surplus Materiel ......................................................125
18.4   Abandonment Operations Required by Governmental Authority.............125

**ARTICLE 19 – RENTALS, ROYALTIES, AND MINIMUM ROYALTIES** .....................126
19.1   Burdens on Hydrocarbon Production..........................................126
19.1.1   Subsequently Created Lease Burdens....................126
19.2   Payment of Rentals and Royalties..............................................126
19.2.1   Non-Participation in Payments ...............................127
19.2.2   Royalty Payments .....................................................127

**ARTICLE 20 – TAXES** ....................................................................128
20.1   Internal Revenue Provision.........................................................128
20.2   Other Taxes and Assessments....................................................128
20.2.1   Property Taxes..........................................................129
20.2.2   Production and Severance Taxes ............................129

**ARTICLE 21 – INSURANCE AND BONDS** ..........................................129
21.1   Insurance ...................................................................................129
21.2   Bonds .........................................................................................129

**ARTICLE 22 – LIABILITY, CLAIMS, AND LAWSUITS** ............................130
22.1   Individual Obligations .................................................................130
22.2   Notice of Claim or Lawsuit ..........................................................130
22.3   Settlements .................................................................................130
22.4   Defense of Claims and Lawsuits .................................................130
22.5   Liability for Damages ..................................................................131
22.6   Indemnification for Non-Consent Operations ..............................131
22.7   Damage to Reservoir and Loss of Reserves ...............................132
22.8   Non-Essential Personnel ............................................................132
22.9   Dispute Resolution Procedure ....................................................133

**ARTICLE 23 – CONTRIBUTIONS** ......................................................133
23.1   Contributions from Third Parties .................................................133
23.2   Methods of Obtaining Contributions ............................................134
23.3   Counteroffers..............................................................................134
23.4   Approval of Contributions ...........................................................134
23.5   Cash Contributions .....................................................................135
23.6   Acreage Contributions ................................................................135
23.6.1   Two or More Parties Own One Hundred Percent of the Acreage Contribution..........................................135
23.6.2   Two or More Parties Own Less Than One Hundred Percent of the Acreage Contribution .................135

CONFIDENTIAL

APC-HEC1-000001609

ACCESS RESTRICTED

**ARTICLE 24 – TRANSFER OF INTEREST AND PREFERENTIAL RIGHT TO PURCHASE**.............................................................................................136
   **24.1**   **Transfer of Interest**.....................................................................136
           24.1.1   Exceptions to Transfer Notice ..................................136
           24.1.2   Effective Date of Transfer of Interest ......................137
           24.1.3   Minimum Transfer of Interest ...................................137
           24.1.4   Form of Transfer of Interest .....................................137
           24.1.5   Warranty ...................................................................138
   **24.2**   **Preferential Right to Purchase** .................................................138
           24.2.1   Notice of Proposed Transfer of Interest ..................138
           24.2.2   Exercise of Preferential Right to Purchase ..............138
           24.2.3   Transfer of Interest Not Affected by the Preferential Right to Purchase ..............................................................139
           24.2.4   Completion of Transfer of Interest............................140

**ARTICLE 25 – FORCE MAJEURE** .......................................................140
   **25.1**   **Force Majeure** ...........................................................................140

**ARTICLE 26 – ADMINISTRATIVE PROVISIONS**...................................140
   **26.1**   **Term**...........................................................................................140
   **26.2**   **Waiver**.......................................................................................141
   **26.3**   **Waiver of Right to Partition** ......................................................141
   **26.4**   **Compliance With Laws and Regulations**..................................141
           26.4.1   Applicable Law .........................................................142
           26.4.2   Severance of Invalid Provisions ...............................142
           26.4.3   Fair and Equal Employment .....................................142
   **26.5**   **Construction and Interpretation of this Agreement**...................142
           26.5.1   Headings for Convenience .......................................142
           26.5.2   Article References .....................................................143
           26.5.3   Gender and Number .................................................143
           26.5.4   Joint Preparation ......................................................143
           26.5.5   Integrated Agreement ...............................................143
           26.5.6   Binding Effect............................................................143
           26.5.7   Further Assurances ..................................................144
           26.5.8   Duplicate Counterpart Execution..............................144
           26.5.9   Currency ...................................................................144
           26.5.10  Future References ....................................................144
   **26.6**   **Restricted Bidding**....................................................................144

**REMAINDER OF PAGE INTENTIONALLY LEFT BLANK**

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001610

# OPERATING AGREEMENT
# <u>OUTER CONTINENTAL SHELF – GULF OF MEXICO</u>

This Agreement, effective as of October 1, 2009 (the "Effective Date"), is between BP Exploration & Production Inc. ("BP") and MOEX Offshore 2007 LLC ("MOEX"), the signers of this Agreement, each referred to individually as a "Party" and collectively as the "Parties."

Whereas the Parties own one or more Leases, identified in Exhibit "A" *(Description of Leases),* and desire to explore, appraise, develop, and operate the Leases for the production of Hydrocarbons;

Now, therefore, in consideration of the premises and mutual promises in this Agreement, the Parties agree to explore, appraise, develop, and operate the Contract Area under the following provisions:

## <u>ARTICLE 1 – CONTRACT APPLICATION</u>

### 1.1    <u>Application in General</u>

This Agreement governs the rights and obligations of the Parties relating, without limitation, to the exploration, appraisal, development, operation, production, treatment, gathering, and storage of Hydrocarbons.  This Agreement does not apply to the fabrication or installation of Export Pipelines.

### 1.2 <u>Application to the Contract Area</u>

This Agreement applies to the entire Contract Area.  Unless otherwise provided in this Agreement, all the rights and obligations in and under the Leases comprising the Contract Area, all property and rights acquired pursuant to this Agreement, and all Hydrocarbons are owned by the Parties according to their respective Working Interest or Participating Interest, as applicable.

1

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001611

# ARTICLE 2 – DEFINITIONS

**2.1    Additional Testing, Logging, or Sidewall Coring**

Testing (excluding Production Testing), logging, or sidewall coring that is in addition to that approved by virtue of a previously approved well or subsequent operation.

**2.2    Affiliate**

A corporation, company, limited liability company, partnership, or other legal entity that:

(a)    is owned or controlled by a Party,

(b)    is owned or controlled by another corporation, company, limited liability company, partnership, or other legal entity that is owned or controlled by a Party,

(c)    owns or controls a Party, or

(d)    is owned or controlled by a corporation, company, limited liability company, partnership, or other legal entity that owns or controls a Party.

For the purposes of this definition, ownership or control means the ownership, directly or indirectly, of fifty percent (50%) or more of the shares, voting rights, or interest in a corporation, company, limited liability company, partnership, or other legal entity.

**2.3    Agreement**

This operating agreement, together with its attached Exhibits.

**2.4    Annual Operating Plan**

The operational plan and estimate of Costs for activities and operations, as described in Article 6.4 *(Annual Operating Plan)*.

**2.5    Appraisal Operation**

An operation (including, but not limited to, an operation after an Appraisal Well has reached its Objective Depth but before the attempted completion of the well) conducted under Article 11 *(Appraisal Operations)*.

2

CONFIDENTIAL

APC-HEC1-000001612

ACCESS RESTRICTED

**2.6    Appraisal Well**

A well proposed and drilled as an Appraisal Operation [including, but not limited to, a substitute well for an Appraisal Well abandoned under Article 11.1.4 *(AFE Overruns and Substitute Well)*].

**2.7    Authorization for Expenditure (AFE)**

A written description and Cost estimate of a proposed activity or operation accompanying a proposal for that activity or operation.

**2.8    Complete Recoupment**

The point in time when the Participating Parties have been reimbursed, through Hydrocarbon Recoupment, through Disproportionate Spending, or through a lump sum cash settlement, an amount equal to the Non-Participating Party's Non-Participating Interest Share of the Costs of the Non-Consent Operation multiplied by the applicable percentage provided in Article 16 *(Non-Consent Operations)*.

**2.9    Confidential Data**

All proprietary geophysical, geological, geochemical, drilling, or engineering data acquired or derived from operations conducted under this Agreement and all analyses, compilations, maps, models, interpretations, and other documents that reflect or incorporate that data.  The term also includes, but is not limited to:

(a)    the provisions of this Agreement, subject to Exhibit "I"; and

(b)    commercial, contractual, and financial information acquired or derived from activities or operations conducted under this Agreement;

however, the term does not include the fact that the Operator has let a contract for an activity or operation to be conducted under this Agreement.  The term excludes "Confidential Information" as that term is defined in Exhibit "G."

**2.10    Contract Area**

The OCS Leases, or portions thereof, listed on Exhibit "A."

**2.11    Costs**

The monetary amount of all expenditures (or indebtedness) incurred by the Operator and the Participating Parties in the conduct of activities and operations, determined under this Agreement.

3

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001613

**2.12 Deepen or Deepening**

An operation to drill an existing well (including sidetracking a well) deeper than the stratigraphic equivalent of the Objective Depth of any prior operation conducted in the well.

**2.13 Deeper Drilling**

The drilling of an Appraisal Well or Development Well below the Deepest Producible Reservoir in existence when the well is proposed.

**2.14 Deepest Producible Reservoir**

The deepest Producible Reservoir in existence when a drilling or Deeper Drilling proposal is made.

**2.15 Define AFE**

The AFE for the Define Stage.

**2.16 Define Stage**

The stage of a Development Phase during which the Operator, with the assistance of the Project Team, if applicable, will (a) commence the implementation of a Development Plan, (b) complete enough of the detailed design of the Development System to enable contractors to formulate their bids on the components of the Development System, and (c) submit an Execution AFE to the Parties for their review and approval.

**2.17 Development Operation**

*An operation (including, but not limited to, a Recompletion, a Workover, the attempted completion of an Exploratory Well or an Appraisal Well, or an operation after a Development Well has reached its Objective Depth) conducted under Article 13* (Development Operations)

or under Article 11.6 *(Operations Before the Approval of the Development Plan).*

**2.18 Development Phase**

The proposals, activities, and operations associated with determining the feasibility of development and the design, fabrication or acquisition, and installation of a Development System.

**2.19 Development Plan**

The plan for a Development Phase, as described in Article 12 *(Development Phases).*

4

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001614

**2.20   Development System**

A Production System and its associated Facilities.

**2.21   Development Well**

A well proposed and drilled as a Development Operation [including, but not limited to, a substitute well for a Development Well abandoned under Article 13.1.4 *(AFE Overruns and Substitute Well)*].

**2.22   Disproportionate Spending**

The payment of the Costs of an activity or operation by a Participating Party in excess of its Participating Interest Share of the Costs of that activity or operation in order to settle an Underinvestment previously incurred by that Participating Party.

**2.23   Election, Elect, Elects, Elected, Electing**

A response or deemed response by a Party to a proposal requiring approval under Article 8.2.2 *(Approval by Election)*, or the act by a Party of responding to a proposal requiring approval under Article 8.2.2 *(Approval by Election)*.

**2.24   Enhanced Recovery Project Team AFE**

The AFE that is to accompany a proposal for the formation of a Project Team whose sole scope of work is the design of an enhanced recovery and/or pressure maintenance program.

**2.25   Execution AFE**

A collection of AFEs, which, according to the submitting Party's estimates, will cover all of the Costs of the Execution Stage (which do not include the Costs of Development Wells), and which shall be deemed by the Parties to have been submitted as one AFE.

**2.26   Execution Stage**

The final stage of a Development Phase during which the Operator, with the assistance of the Project Team, if applicable, will complete the implementation of the Development Plan, implement the Execution AFE, and commence the first production of Hydrocarbons for that particular Development Phase.

**2.27   Exploratory Operation**

An operation (including, but not limited to, an operation after an Exploratory Well has reached its Objective Depth but before the attempted completion of the well,

5

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001615

except for Production Testing) conducted under Article 10 *(Exploratory Operations)*.

**2.28   Exploratory Well**
A well proposed and drilled as an Exploratory Operation [including, but not limited to, a substitute well for an Exploratory Well abandoned under Article 10.1.4 *(AFE Overruns and Substitute Well)*].

**2.29   Export Pipelines**
Pipelines to which a gathering line or lateral line downstream of the Development System is connected and which are used to transport Hydrocarbons or produced water to shore.

**2.30   Facilities**
Production equipment located downstream of the wellhead connections, which is installed on or outside the Contract Area in order to enhance, handle, or process Hydrocarbon production or transport Hydrocarbons to processing facilities. Facilities include, but are not limited to, control umbilicals, disposal wells and their associated components, flowlines, and gathering lines or lateral lines and their associated components that are paid for by the Joint Account.   Facilities exclude (1) Production Systems, (2) Export Pipelines, (3) the equipment procured and utilized for an enhanced recovery and pressure maintenance program described in Article 12.11 *(Enhanced Recovery and/or Pressure Maintenance Program Proposals)*, and (4) the facilities referred to in Article 15.2 *(Facilities to Take in Kind)*.

**2.31   Feasibility AFE**
The AFE for the Feasibility Stage.

**2.32   Feasibility Stage**
The stage of a Development Phase during which the Operator, with the assistance of the Feasibility Team, will attempt to find at least one scenario for the development of Hydrocarbons, which is technologically and economically feasible.

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001616

**2.33    Feasibility Team**

A group of employees, contractors, and/or consultants of the Participating Parties or their respective Affiliates that assists the Operator during the Feasibility Stage.

**2.34    Force Majeure**

An event or cause that is reasonably beyond the control of the Party claiming the existence of such event or cause, which includes, but is not limited to, a flood, storm, hurricane, loop current/eddy, or other act of God; a fire, loss of well control, oil spill, or other environmental catastrophe; a war, a civil disturbance, a terrorist act, a labor dispute, a strike, a lockout; an inability to immediately comply with a law, order, rule, or regulation; a governmental action or delay in granting necessary permits or permit approvals; and the inability to secure materials or a rig.

**2.35    HSE**

Health, safety, and environment.

**2.36    Hydrocarbon Recoupment**

An amount to be recovered by the Participating Parties from all or part of the Non-Participating Interest Share of the proceeds from the sale of future Hydrocarbon production equal to the Non-Participating Interest Share of the Costs of the Non-Consent Operation multiplied by the applicable percentage in Article 16 *(Non-Consent Operations)*.

**2.37    Hydrocarbons**

The oil, gas, and associated liquid and gaseous by-products (except helium) that may be produced from a well bore on the Contract Area.

**2.38    Joint Account**

The account maintained by the Operator under this Agreement, showing the charges paid and credits received in connection with the activities and operations conducted under this Agreement.

**2.39    Lease**

Each OCS federal oil and gas lease (or portion thereof) identified in Exhibit "A" and each oil and gas lease covering one or more OCS blocks, or portions thereof, in the Contract Area that is acquired during the term of this Agreement

7

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001617

by the Operator and the Non-Operating Parties (including substitutions for and replacements of existing Leases).

**2.40   MMS**

The Minerals Management Service, United States Department of Interior, or its successor agency.

**2.41   News Release**

A press release or other public announcement or disclosure by a Party containing a reference, either directly or by implication, to this Agreement or the activities or operations herein contemplated, including, but not limited to, any public release via print media, broadcast news, internet, extranet, public networks or service providers, and discussions with journalists.

**2.42   Non-Consent Operation**

An activity or operation proposed and approved under this Agreement in which one or more Parties, having the contractual right to do so, Elect or Vote not to participate, except when an activity or operation is approved by Vote and the approval binds all Parties.

**2.43   Non-Operating Party**

A Party other than the Operator.

**2.44   Non-Participating Party**

A Party who, having the contractual right to do so, Elects or Votes not to participate in sharing the Costs, risks, and benefits (including the rights to Hydrocarbons) of an activity or operation proposed and approved under this Agreement, except when an activity or operation is approved by Vote and the approval binds all Parties.

**2.45   Non-Participating Interest Share**

The percentage of participation in the Costs, risks, and benefits (including rights to Hydrocarbons) that a Non-Participating Party would have had in a proposed activity or operation if all Parties had participated in that proposed activity or operation.

**2.46   Objective Depth**

For each well, the shallower of the total footage to be drilled by that well (as measured in true vertical subsea depth) or the penetration by the drill bit to the

8

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001618

base of the deepest target formation or interval in that well, as that depth or target formation or interval is stated in the AFE for the well.

**2.47   OCS**

The Outer Continental Shelf of the Gulf of Mexico.

**2.48   Offsite Host Facilities**

Production equipment that is (a) used to process or handle Hydrocarbon production and (b) owned by one or more third parties or by one or more Participating Parties in an Execution AFE (under which that production equipment is to be utilized for Hydrocarbon production), whose respective ownership interests in the production equipment are not exactly the same as their respective Participating Interest Shares in the Execution AFE.

**2.49   Operator**

The Party designated in Article 4.1 *(Designation of the Operator)*, a successor Operator selected under Article 4.5 *(Selection of Successor Operator)*, and, if applicable, a substitute Operator selected under Article 4.2 *(Substitute Operator)*.

**2.50   Overinvested Party**

A Party entitled to receive its Participating Interest Share of an Underinvestment.

**2.51   Participating Interest Share**

A Participating Party's percentage of participation in:

(a)   the Costs, risks, and benefits (including rights to Hydrocarbons) of an approved activity or operation; or,

(b)   if applicable, interests to be assigned to the Parties.

A Participating Party's percentage of participation is either the proportion, expressed as a percentage, that the Participating Party's Working Interest bears to the total Working Interests of all Participating Parties or such different basis for Cost sharing or assignment as the Participating Parties agree upon.

**2.52   Participating Party**

A Party who, having the contractual right to do so, participates in the sharing of:

(a)   the Costs, risks, and benefits (including rights to Hydrocarbons) of an approved activity or operation; or,

9

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001619

(b)   if applicable, the interests to be assigned to the Parties.

The term includes a Party who does not Vote to participate in a proposed activity or operation, but is nonetheless bound to participate in that proposed activity or operation if it is approved by Vote.

**2.53   Post-Production Project Team AFE**

An AFE submitted in association with the continuance of the Project Team under Article 12.8 *(Post-Production Project Team AFEs)*.

**2.54   Producible Reservoir**

An underground accumulation of Hydrocarbons (a) separate from and not in Hydrocarbon communication with another accumulation of Hydrocarbons, and (b) into which a Producible Well has been drilled.

**2.55   Producible Well**

A well on the Contract Area that:

(a)   produces Hydrocarbons;

(b)   meets, according to the MMS, the "well producibility criteria" in Title 30 CFR 250.116 or any succeeding order or regulation issued by an appropriate governmental authority; or

(c)   the Participating Parties in the subject well unanimously agree is a Producible Well.

**2.56   Production System**

A system or combination of systems on the Contract Area to develop, produce, store, distribute, and initiate the transportation of Hydrocarbons.   The term includes:

(a)   an offshore surface structure, whether fixed, compliant, or floating;

(b)   a subsea structure or template designed as a guide to or to provide structural rigidity to one or more wells;

(c)   any combination of the items mentioned in clauses (a) and (b);

10

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001620

(d)   any other type of structure designed to develop and produce Hydrocarbons; and

(e)   all associated components of the items mentioned above, including, but not limited to, a drilling rig, mooring lines, and anchor piles.

Production System excludes Facilities, mobile offshore drilling units, and the facilities referred to in Article 15.2 *(Facilities to Take in Kind)*.

**2.57   Production Testing**
Operations for the controlled flow of Hydrocarbons to the surface for the purpose of measuring flow rates or flowing pressures, or gaining other subsurface data.

**2.58   Project Team**
A group of employees, contractors, and/or consultants of the Participating Parties or their respective Affiliates, who assists the Operator in carrying out the scope of work for the Selection Stage, Define Stage, and Execution Stage and the scope of work under Articles 12.8 *(Post-Production Project Team AFEs)* and 12.11 *(Enhanced Recovery and/or Pressure Maintenance Program Proposals)*.

**2.59   Recompletion**
A Development Operation in a single well bore in which a completion in one Producible Reservoir is abandoned in order to attempt a completion in a different Producible Reservoir. To "Recomplete" means to conduct a Recompletion.

**2.60   Selection AFE**
The AFE for the Selection Stage.

**2.61   Selection Stage**
The stage of a Development Phase during which the Operator, with the assistance of the Project Team, if applicable, will determine whether to:

(a)   install a Development System on the Contract Area, or

(b)   tie-back to, and utilize,

    (i)   a Development System resulting from a previous Development Phase or

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001621

(ii)   a development system and/or facilities located outside the Contract Area

in order to produce Hydrocarbons.

**2.62  Sidetracking**

An operation to directionally control or intentionally deviate a well to change the bottomhole location to another bottomhole location not deeper than the stratigraphic equivalent of the Objective Depth of an operation previously conducted in the well, unless the intentional deviation is done to straighten the hole, drill around junk, or overcome other mechanical difficulties. To "Sidetrack" means to conduct a Sidetracking.

**2.63  Transfer of Interest**

A conveyance, assignment, transfer, farmout, exchange, or other disposition of all or part of a Party's undivided Working Interest.

**2.64  Underinvested Party**

A Party with an Underinvestment.

**2.65  Underinvestment**

A monetary obligation incurred under this Agreement to be settled under Article 16.9 *(Settlement of Underinvestments)*.

**2.66  Vote**

As a noun, a response or deemed response by a Party to a proposal requiring approval under Article 8.2.1 *(Approval by Vote)*; as a verb, to respond to a proposal requiring approval under Article 8.2.1 *(Approval by Vote)*.

**2.67  Well Plan**

A detailed written description accompanying a proposal to drill an Exploratory Well, Appraisal Well, or Development Well, or to conduct a Workover, Recompletion, well repair, or subsequent operation at Objective Depth, which must include, at a minimum:

(a)   the surface and target bottomhole locations of the operation, if applicable;

(b)   the expected commencement date of the operation and the anticipated time necessary to conclude the operation;

12

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001622

(c)   the total vertical subsea depth to be drilled, along with the specified Objective Depth (and the target zones to be penetrated), if applicable;

(d)   the proposed drilling plan, if applicable, and the proposed completion plan, including the casing program and directional details, if applicable;

(e)   details of all coring, logging, and other evaluation operations to be conducted, if applicable; and

(f)   information about the drilling rig to be used, including day rates, water depth rating, and other limitations relevant to the operations to be conducted, if applicable.

**2.68   Working Interest**

The record title leasehold interest or, where applicable, the operating rights of each Party in and to each Lease (expressed as the percentage provided in Exhibit "A"). If a Party's record title interest is different from its operating rights, the Working Interest of each Party is the interest provided in Exhibit "A."

**2.69   Workover**

A Development Operation conducted in an existing well after the well has been completed in one or more Producible Reservoirs to restore, maintain, or improve production from one or more of those Producible Reservoirs.

# ARTICLE 3 – EXHIBITS

**3.1   Exhibits**

All references in this Agreement to "Exhibits" without further qualification mean the Exhibits listed below and attached to this Agreement. Each Exhibit is made a part of this Agreement and is incorporated into this Agreement by this reference. If any provision of an Exhibit conflicts with any provision of the body of this Agreement, the provision of the body of this Agreement shall prevail, with the exception of Exhibits "C," "D," and "G," each provision of which shall prevail over any provision of the body of this Agreement, except as provided in Article 6.2.4 *(Long Lead Well Operation AFEs)*. If any provision of Exhibit "C" conflicts with any provision of Exhibit "G," the provision of Exhibit "G" shall prevail. If any

13

CONFIDENTIAL

APC-HEC1-000001623

ACCESS RESTRICTED

provision of Exhibit "C" conflicts with any provision of Exhibit "D," the provision of Exhibit "C" shall prevail.

**Exhibit "A"**     Description of Leases, Working Interests of the Parties, and Representatives

**Exhibit "B"**     Insurance Provisions

**Exhibit "C"**     Accounting Procedure

**Exhibit "D"**     Gas Balancing Agreement

**Exhibit "E"**     Certification of Non-segregated Facilities

**Exhibit "F"**     Security Interest Provisions

**Exhibit "G"**     Project Team and Technology Sharing

**Exhibit "H"**     Dispute Resolution Procedure

**Exhibit "I"**     Well Data Trade and Confidentiality Agreement

~~Exhibit "J"        Tax Partnership~~ **INTENTIONALLY DELETED**

**Exhibit "K"**     Health, Safety and Environment

**Exhibit "L"**     Geophysical Operations Provisions

## ARTICLE 4 – SELECTION OF OPERATOR

**4.1   Designation of the Operator**

BP Exploration & Production Inc. is designated as the Operator of the Contract Area. The Parties shall promptly execute and file all documents required by the MMS in connection with the designation of BP Exploration & Production Inc. as Operator or with the designation of any other Party as a substitute or successor Operator. Unless agreed otherwise by all the Parties, the Operator shall be classified as the designated applicant for oil spill financial responsibility purposes, and each Non-Operating Party shall promptly execute the appropriate documentation reflecting that classification and promptly provide that documentation to the Operator for filing with the MMS.

14

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001624

**4.2**   **Substitute Operator**

    **4.2.1**   **Substitute Operator if Operator is a Non-Participating Party**

Except as otherwise provided in Article 4.2.3 *(Circumstances Under Which the Operator Must Conduct a Non-Consent Operation)*, if the Operator is a Non-Participating Party in a Non-Consent Operation, the Participating Parties may approve by Vote the designation of any Participating Party as the substitute Operator.  The substitute Operator shall serve as the Operator only (a) for the Non-Consent Operation (if the Non-Consent Operation is the drilling of a well, through the release of the drilling rig for that well), (b) of the Lease affected by the Non-Consent Operation, and (c) with the same authority, rights, obligations, and duties as the Operator, subject to the limitations in (a) and (b).  If a Non-Operating Party is the only Participating Party in a Non-Consent Operation, then the Non-Operating Party shall be designated as the substitute Operator for that Non-Consent Operation, with no Vote required, unless the Non-Operating Party elects not to accept the designation. A Non-Operating Party, who is a Participating Party, shall not be designated as a substitute Operator against its will. If a substitute Operator is not designated under the foregoing procedures, the Operator shall, upon the unanimous agreement of the Participating Parties, conduct the Non-Consent Operation on behalf of the Participating Parties and at the Participating Parties' sole Cost and risk under Article 16 *(Non-Consent Operations)*.  If the Participating Parties do not approve by Vote a substitute Operator to conduct the Non-Consent Operation or do not unanimously agree that the Operator shall conduct the Non-Consent Operation on behalf of the Participating Parties, then the proposal of the Non-Consent Operation shall be deemed withdrawn, with the effect as if the proposal for the Non-Consent Operation had never been proposed and approved.

    **4.2.2**   **Substitute Operator if Operator Fails to Commence Drilling Operations**

If the Operator fails to timely commence an Exploratory Well in accordance with Article 10.1.3 *(Timely Operations)*, an Appraisal Well in accordance with Article 11.1.3 *(Timely Operations)* or a Development Well in accordance with Article 13.1.3 *(Timely Operations)*, the non-operating Participating Parties may select a substitute Operator in the

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001625

same manner as the selection of a successor Operator under Article 4.5 *(Selection of Successor Operator)*, and the substitute Operator shall serve as the Operator only (a) for the drilling of that well through the release of the drilling rig for that well, (b) of the Lease on which the well is drilled, and (c) with the same authority, rights, obligations, and duties as the Operator, subject to the limitations in (a) and (b).

**4.2.3**   **Circumstances Under Which the Operator Must Conduct a Non-Consent Operation**

If:

(a)   a drilling rig is on location and the Operator becomes a Non-Participating Party (i) in a supplemental AFE pursuant to the terms of Article 6.2.2 *(Supplemental AFEs)*, or (ii) after reaching Objective Depth as provided in Article 10.2 *(Exploratory Operations at Objective Depth)*, Article 11.2 *(Appraisal Operations at Objective Depth)*, or Article 13.2 *(Development Operations at Objective Depth)*, or

(b)   the Operator becomes a Non-Participating Party in an operation to be conducted on or from a Development System operated by the Operator,

the Operator, as a Non-Participating Party, shall conduct the Non-Consent Operation on behalf of the Participating Parties and at the Participating Parties' sole Cost and risk under Article 16 *(Non-Consent Operations)*.

**4.2.4**   **Operator's Conduct of a Non-Consent Operation in Which it is a Non-Participating Party**

When, under Article 4.2.1 *(Substitute Operator if Operator is a Non-Participating Party)* or Article 4.2.3 *(Circumstances Under Which the Operator Must Conduct a Non-Consent Operation)*, the Operator conducts a Non-Consent Operation in which it is a Non-Participating Party, it shall follow the practices and standards in Article 5 *(Rights and Duties of Operator)*. The Operator shall not be required to proceed with the Non-Consent Operation until the Participating Parties have advanced the Costs of the Non-Consent Operation to the Operator.

16

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001626

The Operator shall never be obligated to expend any of its own funds for the Non-Consent Operation.

### 4.2.5 Appointment of a Substitute Operator

After expiration of all applicable response periods for the Non-Consent Operation and selection of a substitute Operator, each Party shall promptly provide the substitute Operator with the appropriate MMS designation of operator forms and certification of oil spill financial responsibility forms. The Operator and the substitute Operator shall coordinate the change of operatorship to avoid interfering with ongoing activities and operations, if any, including but not limited to, lease maintenance activities and operations.

### 4.2.6 Redesignation of Operator

Within fifteen (15) days after conclusion of the Non-Consent Operation, all Parties shall execute and provide the Operator with the appropriate MMS designation of operator forms and certification of oil spill financial responsibility forms to return operatorship to the Operator, thereby superseding the Parties' designation of the substitute Operator under Article 4.2.5 *(Appointment of a Substitute Operator)*.

### 4.3 Resignation of Operator

Subject to Article 4.5 *(Selection of Successor Operator)*, the Operator may resign at any time by giving written notice to the Parties, except that the Operator may not resign during a Force Majeure or an emergency that poses a threat to life, safety, property, or the environment. If the Operator ceases to own a Working Interest, the Operator automatically shall be deemed to have resigned as the Operator without any action by the Non-Operating Parties.

### 4.4 Removal of Operator

The Operator may be removed under the following circumstances:

### 4.4.1 Removal Upon Assignment

If the Operator assigns part of its Working Interest (excluding an interest assigned to an Affiliate) and the assignment reduces the Operator's Working Interest to less than the Working Interest of a Non-Operating Party, whether accomplished by one or more

17

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001627

assignments, then the removal of the Operator requires approval by Vote.

**4.4.2**   **Removal for Cause by Vote**

Under the following circumstances, the removal of the Operator shall be approved by Vote, excluding the Vote of the Operator:

(a)   the Operator is found liable by a final judicial decision or a final decision under binding arbitration for an act of gross negligence or willful misconduct regarding the Contract Area;

(b)   the Operator commits a substantial breach of a material provision of this Agreement and fails to cure the breach within thirty (30) days after receipt of written notice of the breach from a Non-Operating Party.  If the breach specified in the notice reasonably cannot be corrected within the thirty (30) day period, but the Operator within said period begins action to correct the breach and thereafter diligently carries the corrective action to completion, the Operator shall not be removed.   The Operator shall not be removed under this Article 4.4.2 if the Operator is able to prove the non-existence of the alleged breach within thirty (30) days after receipt of written notice of the alleged breach;

(c)   the Operator becomes insolvent or unable to pay its debts as they mature, makes an assignment for the benefit of its creditors, commits an act of bankruptcy, or seeks relief under laws providing for the relief of debtors;

(d)   a receiver is appointed for the Operator or for substantially all of its property or affairs; or

(e)   the Operator fails to timely commence the fabrication or acquisition of the Development System in accordance with Article 12.7.9 *(Timely Operations for Development Systems)*.

**4.4.3**   **Timing of Vote to Remove Operator**

A Vote to remove the Operator for cause as provided in this Article 4.4 shall be taken within ninety (90) days after the Non-Operating Party's actual knowledge of the cause.

18

CONFIDENTIAL

APC-HEC1-000001628

ACCESS RESTRICTED

### 4.5    Selection of Successor Operator

Upon the resignation or removal of the Operator, a successor Operator shall be approved by Vote, subject to this limitation on the Voting right of Operator:  if the resigned or removed Operator is not entitled to Vote, fails to Vote, or Votes only to succeed itself, then the successor Operator shall be approved by Vote after excluding the Vote of the resigned or removed Operator.  If the Operator assigns all or a part of its Working Interest, then under Article 4.3 *(Resignation of Operator)* or Article 4.4.1 *(Removal Upon Assignment)* the Party who acquired all or a part of the former Operator's Working Interest shall not be excluded from Voting for a successor Operator.  If there are only two Parties to this Agreement when the Operator resigns or is removed, then the Non-Operating Party automatically has the right, but not the obligation, to become the Operator.  If no Party is willing to become the Operator, this Agreement shall terminate under Article 26.1 *(Term)*.

### 4.6    Effective Date of Resignation or Removal

The resignation or removal of the Operator shall become effective as of 7:00 a.m. on the first day of the month following a period of ninety (90) days from, and inclusive of, the day of the Parties' receipt of the applicable notice, unless a longer period is required for the Parties to obtain approval of the designation of the successor Operator, and certification for oil spill financial responsibility purposes by the MMS, in which case the resignation or removal of the Operator shall become effective at 7:00 a.m. on the day immediately following MMS approval. The resignation or removal of the outgoing Operator shall not prejudice any rights, obligations, or liabilities of the outgoing Operator which accrued during its tenure.  The outgoing Operator and the successor Operator may charge the Joint Account for the reasonable Costs incurred in connection with the change of operatorship, except when the change of operatorship results from a merger, consolidation, reorganization, or sale or transfer to an Affiliate of the Operator.

### 4.7    Delivery of Property

On the effective date of resignation or removal of the Operator, the outgoing Operator shall deliver to the successor Operator custodianship of the Joint Account and possession of all items purchased for the Joint Account under this Agreement; all Hydrocarbons that are not the separate property of a Party; all equipment, materials, and appurtenances purchased for the Joint Account under

19

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001629

this Agreement; and all books, records, and inventories relating to the Joint Account (other than those books, records, and inventories maintained by the outgoing Operator as the owner of a Working Interest). The outgoing Operator shall further use its reasonable efforts to transfer to the successor Operator, as of the effective date of the resignation or removal, its rights as Operator under all contracts exclusively relating to the activities or operations conducted under this Agreement, and the successor Operator shall assume all obligations of the Operator that are assignable under the contracts. The Parties may audit the Joint Account and conduct an inventory of all property and all Hydrocarbons that are not the separate property of a Party, and the inventory shall be used in the return of, and the accounting by the outgoing Operator of, the property and the Hydrocarbons that are not the separate property of a Party. The inventory and audit shall be conducted under Exhibit "C."

## ARTICLE 5 – RIGHTS AND DUTIES OF OPERATOR

### 5.1    Exclusive Right to Operate

Except as otherwise provided, the Operator has the exclusive right and duty to conduct (or cause to be conducted) all activities or operations under this Agreement. In performing services under this Agreement for the Non-Operating Parties, the Operator is an independent contractor, not subject to the control or direction of Non-Operating Parties, except as provided in Article 8.2 *(Voting and Election Procedures)* or Article 8.5 *(Approved by Unanimous Agreement)*. The Operator is not the agent or fiduciary of the Non-Operating Parties. With the exception of any Feasibility Team or Project Team formed under this Agreement, the Operator shall select and determine the number of employees, Affiliates, contractors, and/or consultants used in conducting activities or operations under this Agreement and the hours of labor and the compensation for those employees, Affiliates, contractors, and/or consultants. All of those employees, Affiliates, contractors, and/or consultants shall be the employees, Affiliates, contractors, and/or consultants of the Operator. The Operator shall contract for and employ any drilling rigs, tools, machinery, equipment, materials, supplies, and personnel reasonably necessary for the Operator to conduct the activities or operations provided for in this Agreement; however, if a substitute Operator is designated to drill a well, the substitute Operator may utilize a rig, which it owns or has under contract, for the drilling of that well.

20

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001630

### 5.2    Workmanlike Conduct

The Operator shall timely commence and conduct all activities or operations in a good and workmanlike manner, as would a prudent operator under the same or similar circumstances.  THE OPERATOR SHALL NOT BE LIABLE TO THE NON-OPERATING PARTIES FOR LOSSES SUSTAINED OR LIABILITIES INCURRED, EXCEPT AS MAY RESULT FROM OPERATOR'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT.  UNLESS OTHERWISE PROVIDED IN THIS AGREEMENT, THE OPERATOR SHALL CONSULT WITH THE NON-OPERATING PARTIES AND KEEP THEM INFORMED OF IMPORTANT MATTERS.  The Operator shall never be required to conduct an activity or operation under this Agreement that it, as a reasonable and prudent operator in similar circumstances, believes would be unsafe or would endanger persons, property, or the environment.

### 5.3    Drilling Operations

The Operator may have drilling operations conducted by qualified and responsible independent contractors who are not an Affiliate of the Operator and are employed under competitive contracts.  A competitive contract is a contract, or any extension thereof (a) that was entered into within five (5) years before the commencement of drilling operations and (b), that contains terms, rates, and provisions that, when the contract was entered into, did not exceed those generally prevailing on the OCS for operations involving drilling rigs of an equivalent type, operating in similar environments and water depths, equipped to the Operator's standard conditions, and capable of drilling the proposed well or conducting other required operations within the schedule in the well AFE.  The Operator may employ its own or its Affiliate's equipment, personnel, drilling rig, Workover rig, and snubbing unit in the conduct of those operations, either under Exhibit "C" or under a written agreement among the Participating Parties.  If the Operator's or its Affiliate's equipment, personnel, drilling rig, Workover rig, or snubbing unit is employed in conducting operations under this Agreement, the terms, conditions, and rates for that employment shall be consistent with those currently prevailing in competitive contracts for the deepwater OCS.

### 5.4    Liens and Encumbrances

The Operator shall endeavor to keep the Leases, Production Systems, Facilities, and other equipment purchased for the Joint Account under this Agreement and the Hydrocarbons free from liens and encumbrances (except those provided in

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001631

Exhibit "F") that might arise by reason of the activities or operations conducted under this Agreement.  If a lien is placed on the Leases, Production Systems, Facilities, other equipment, or any Hydrocarbons, the Operator shall make reasonable efforts to remove the lien.

**5.5     Records**

The Operator shall keep accurate books, accounts, and records of activities or operations under this Agreement in compliance with the Accounting Procedure in Exhibit "C."  Unless otherwise provided in this Agreement, all records of the Joint Account shall be available to a Non-Operating Party at all reasonable times during the Operator's normal office hours under Exhibit "C."  The Operator shall use good-faith efforts to ensure the settlements, billings, and reports rendered to each Party under this Agreement are complete and accurate.  The Operator shall notify the other Parties promptly upon the discovery of any error or omission pertaining to the settlements, billings, and reports rendered to each Party.  This provision does not affect a Party's audit rights under this Agreement. This provision shall also apply to each Non-Operating Party's books, accounts, and records kept to support its charges to a Project Team.

**5.6     Reports to Government Agencies**

The Operator shall make timely reports to all governmental authorities to which it has a duty to make reports and shall furnish copies of the reports to the Participating Parties.  The Operator shall provide each Non-Operating Party with a copy of each notice, order, and directive received from the MMS.  As soon as reasonably practicable, each Party shall give written notice to the other Parties before each meeting with government authorities of which it has notice and that affect the Contract Area.

**5.7     Information to Participating Parties**

The Operator shall, as soon as reasonably practicable and to the extent that the information has then been obtained or received by the Operator, furnish each Participating Party the following information about well operations:

(a)     a copy of each application for a permit to drill and all amendments to that application;

(b)     drilling and Workover reports, which shall include, but not be limited to, the current depth, the corresponding lithological information, data on drilling

22

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001632

1   fluid characteristics, information about drilling difficulties or delays (if any),
2   mud checks, mud logs, and Hydrocarbon information, casing and
3   cementation tallies, and estimated cumulative Costs, to be sent by
4   facsimile or electronic transmission within eight (8) hours (exclusive of
5   Saturdays, Sundays, and federal holidays) of well operations conducted in
6   the preceding twenty-four (24) hour period; provided, however, the
7   information and data set forth in this Article 5.7(b) shall be provided in "real
8   time" if it is available to the Operator in "real time" and a Participating Party
9   has contractual rights to utilize the "real time" system that the Operator is
10  utilizing and has agreed to pay any incremental expenses associated with
11  its accessing that information and data from that "real time system";

12  (c)   a complete report of all core data and analyses;

13  (d)   copies of logs and surveys as run, including all digitally recorded data;

14  (e)   copies of well test results, bottomhole pressure surveys, Hydrocarbon
15        analyses, and other similar information, including PVT analyses;

16  (f)   copies of reports made to regulatory agencies;

17  (g)   forty-eight (48) hours' advance notice of logging, coring, or testing
18        operations (or, if conditions do not permit that much advance notice, as
19        much advance notice as is reasonably possible);

20  (h)   upon written request, and if sufficient quantities are available, samples of
21        cutting and sidewall cores, marked as to depth, to be packaged and
22        shipped at the expense of the requesting Party;

23  (i)   copies of drilling prognoses;

24  (j)   if conventional cores are taken, access to the rig to inspect and evaluate
25        said cores; and

26  (k)   samples of Hydrocarbons, if sufficient quantities are available, after
27        performing routine tests.

28  Upon written request, the Operator shall use reasonable efforts to furnish to a
29  requesting Participating Party any additional available information (including a
30  complete slabbed section of all recovered cores, if requested and available),

23

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001633

acquired by the Operator for the Participating Parties, not otherwise furnished under this Article (not including any derivative information independently developed at Operator's sole cost and risk).   The Costs of gathering and furnishing the additional available information shall be charged to the Participating Party that requested it.

**5.8   Completed Well Information**

Operator shall, as soon as reasonably practicable, furnish to each Participating Party the following information pertaining to each completed well, provided, however, the following information shall be provided in "real time" if it is available to the Operator in "real time" and a Participating Party has contractual rights to utilize the "real time" system that the Operator is utilizing and has agreed to pay any incremental expenses associated with its accessing that information from that "real time system":

(a)   monthly report of production and injection;

(b)   copies of routine reports made to regulatory agencies;

(c)   report on the status of wells not producing and not abandoned;

(d)   report on Hydrocarbons produced during Production Testing;

(e)   bottomhole pressure data and surface pressure data; and

(f)   composite of all logs run (for example, TDT, Carbon-Oxygen, Spinner Surveys, and Casing Collar).

**5.9   Information to Non-Participating Parties**

The Operator shall furnish to each Non-Participating Party:

(a)   as soon as reasonably practicable, copies of all non-confidential reports made to regulatory agencies, and

(b)   if applicable, after Complete Recoupment, the information specified in Articles 5.7 *(Information to Participating Parties)* and 5.8 *(Completed Well Information)*.

24

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001634

**5.10   Health, Safety, and Environment:**

With the goal of achieving safe and reliable activities and operations in compliance with all applicable laws and regulations, including avoiding significant and unintended impact on (i) the health or safety of people, (ii) property, or (iii) the environment, the Operator shall, with the support and cooperation of the Non-Operators, while it conducts activities or operations under this Agreement:

(a)   design and manage activities or operations to standards intended to achieve sustained reliability and promote the effective management of HSE risks;

(b)   apply structured HSE management systems and procedures consistent with those generally applied in the petroleum industry to effectively manage HSE risks and pursue sustained reliability of operations under this Agreement; and

(c)   conform with locally applicable HSE related statutory requirements that may apply.

In fulfilling its duties and obligations hereunder, the Operator shall act in accordance with the provisions of Exhibit "K."

## ARTICLE 6 – EXPENDITURES AND ANNUAL OPERATING PLAN

**6.1   Basis of Charges to the Parties**

Except as otherwise provided in this Agreement, the Operator shall pay all Costs of all activities and operations under this Agreement, and each Participating Party shall reimburse the Operator in proportion to its Participating Interest Share for the Costs of these activities and operations. All charges, credits, and accounting for expenditures shall be made under Exhibit "C." Funds received by the Operator under this Agreement may be commingled with the Operator's own funds.

**6.2   AFEs**

The Operator shall not undertake an activity or operation whose Costs are Five Hundred Thousand dollars ($500,000.00) or more, unless an AFE has been

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001635

included in a proposal for an activity or operation and the proposal has been approved by Vote, Election, or unanimous agreement, whichever is applicable, or the Operator is exercising one of its discretionary powers under this Agreement. An approved proposal grants the Operator authority to commit or expend funds on the approved proposal for the account of the Participating Parties. For an activity or operation whose Costs are in excess of Two Hundred Fifty Thousand dollars ($250,000.00), but less than Five Hundred Thousand dollars ($500,000.00), the Operator shall furnish the Participating Parties with an AFE for information purposes only. Notwithstanding the foregoing, in the event of an emergency, or if in the sole discretion of the Operator a perceived emergency exists that poses an imminent threat to life, safety, property, or the environment, the Operator may immediately make those expenditures for the Joint Account as, in its opinion as a reasonable and prudent operator, are necessary to deal with the emergency, but only to the extent necessary to stabilize the situation and alleviate the imminent threat. The Operator shall report to the Participating Parties, as promptly as possible, the nature of the emergency, the action taken, and the Costs incurred.

**6.2.1**   **AFE Overrun Notice**

For informational purposes only, the Operator shall provide an AFE overrun notice to all the Participating Parties if it appears (based upon Operator's reasonable estimate) that the actual total Costs associated with an original AFE will exceed the estimated total expenditures in that original AFE by more than ten percent (10%), but will not require the submission of a supplemental AFE under Article 6.2.2 (*Supplemental AFEs*).

**6.2.2**   **Supplemental AFEs**

Except as provided in Article 6.2.3 (*Further Operations During a Force Majeure)*, if it appears (based upon the Operator's reasonable estimate) that the actual Costs associated with an original AFE or its approved supplemental AFEs will exceed the relevant permitted over-expenditure set forth below, the Operator shall promptly submit a supplemental AFE to the Participating Parties. A supplemental AFE shall include the dollar amount of the permitted over-expenditure from the previously approved AFE as part of the dollar amount of that supplemental AFE. Subject to Article 8.6.1 (*Well Proposals,*

26

APC-HEC1-000001636

ACCESS RESTRICTED

*Recompletions, and Workovers)*, after receipt of the supplemental AFE each Participating Party has the right to make an Election as to its further participation in the approved activity or operation. If a proposed supplemental AFE is approved by Election, the Operator shall continue to conduct the approved activity or operation associated with the supplemental AFE at the sole Cost and risk of the Participating Parties in the supplemental AFE. Any Participating Party making an Election not to participate in an approved supplemental AFE becomes a Non-Participating Party in the activity or operation associated with the original AFE once the actual Costs expended on the activity or operation exceed the permitted over-expenditure amount of the last AFE in which the Non-Participating Party Elected to participate, without regard to whether all the activities or operations (including plugging and abandonment) in the original AFE have been conducted at the time of its Election not to participate. A Non-Participating Party in a supplemental AFE is subject to the same Hydrocarbon Recoupment premium, Underinvestment, or acreage forfeiture provision in Article 16 *(Non-Consent Operations)* that would apply to a Party Electing or Voting not to participate in the originally approved activity or operation, except a Hydrocarbon Recoupment premium or an Underinvestment shall apply only to the Costs of the approved activity or operation not borne by the Non-Participating Party. If a supplemental AFE is not approved by Election, the Operator shall conclude the activity or operation as soon as practical, and each Participating Party will be responsible for its Participating Interest Share of the Costs of the activity or operation, including Costs in excess of the permitted over-expenditure amount.

6.2.2.1   <u>Permitted Over-expenditures on Well Operations</u>

The permitted over-expenditure for an Exploratory Operation, an Appraisal Operation, or a Development Operation is an amount equal to ten percent (10%) of the estimated total Costs in the original AFE for that operation or its approved supplemental AFEs for wells.

27

CONFIDENTIAL

APC-HEC1-000001637

ACCESS RESTRICTED

**6.2.2.2**   **Permitted Over-expenditures on the Feasibility AFE, a Post-Production Project Team AFE, or an Enhanced Recovery Project Team AFE**

The permitted over-expenditure for the Feasibility AFE, a Post-Production Project Team AFE, or an Enhanced Recovery Project Team AFE is an amount equal to fifteen percent (15%) of the estimated total Costs in the original AFE for that activity or its approved supplemental AFEs.

**6.2.2.3**   **Permitted Over-expenditures on a Selection AFE or Define AFE**

The permitted over-expenditure for the Selection AFE or the Define AFE is an amount equal to fifteen percent (15%) of the estimated total Costs in the original AFE for that activity or its approved supplemental AFEs.

**6.2.2.4**   **Permitted Over-expenditures on an Execution AFE**

The permitted over-expenditure for the Execution AFE is an amount equal to fifteen percent (15%) of the estimated total Costs in the original AFE for that activity or its approved supplemental AFEs. The "cumulative estimated total Costs in the original AFE for that activity" is the total dollar amount of the Execution AFE, its approved supplemental AFEs and all approved Long Lead Development System AFEs.

**6.2.2.5**   **Permitted Over-expenditures on All Other AFEs**

The permitted over-expenditure for all other AFEs is an amount equal to fifteen percent (15%) of the estimated total Costs in the original AFE for that activity or operation or its approved supplemental AFEs.

**6.2.3**   **Further Operations During a Force Majeure**

No Party is permitted to make an Election not to participate in further activities or operations under Article 6.2.2 *(Supplemental AFEs)* during a Force Majeure or during an emergency that poses a threat to life, safety, property, or the environment, but may make an Election not to participate in further activities or operations that are to be conducted

28

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001638

after the termination of the Force Majeure or emergency. Notwithstanding any contrary provision of this Agreement, if Costs arising as a result of Force Majeure or emergency cause the amount of an original AFE and its approved supplemental AFEs to exceed their permitted over-expenditure in Article 6.2.2 *(Supplemental AFEs)*, no supplemental AFE will be required; however, once stabilization takes place and Force Majeure or emergency expenditures are no longer being incurred, the Operator shall submit to the Participating Parties a supplemental AFE for the activities or operations that are to be conducted after termination of the Force Majeure or emergency in order for them to make an Election under Article 6.2.2 *(Supplemental AFEs)* as to their participation in those activities or operations.

**6.2.4**   **Long Lead Well Operation AFEs**

In addition to the Operator's right under Article 12.6 *(Long Lead Development System AFEs)* to submit Long Lead Development System AFEs for long lead-time items prior to the submission of the Execution AFE, the Operator may submit an AFE to the Parties, which will allow the Operator to make advance commitments for or purchases of equipment or services, which are commercially reasonable and necessary to facilitate the early and orderly commencement of any kind of well or well operation (including any associated tie-back Facilities) ("Long Lead Items") (a "Long Lead Well Operation AFE").

**6.2.4.1**   **Approval of a Long Lead Well Operation AFE**

Each Long Lead Well Operation AFE requires the unanimous agreement of the Parties.

**6.2.4.2**   **Non-Participating Parties in the Operations Associated with the Long Lead Well Operation AFE**

If a Party, who participated in a Long Lead Well Operation AFE, does not participate in an approved well or well operation, for which Long Lead Items were procured under that AFE, the Operator shall reimburse that Party its Participating Interest Share of the Costs of those Long Lead Items within thirty (30) days of the approval of that well or well operation, provided, however, that Party's share of those

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001639

Costs shall be included in the calculation of any Hydrocarbon recoupment to which it is subject as a result of that well or well operation.  The Operator shall invoice the Participating Parties in that well or well operation for their proportionate share of the reimbursement under this Article 6.2.4.2 in accordance with Exhibit "C."

6.2.4.3   **Disposition of Items Associated with the Long Lead Well Operation AFE**
Notwithstanding the provisions of Exhibit "C," the Participating Parties in an approved well or well operation for which Long Lead Items were procured shall approve by Vote the disposition of those Long Lead Items if they are not utilized for the approved well or well operation.  If the disposition is approved, the disposition will be binding on all Participating Parties in that well or well operation.  The disbursement of the proceeds realized from the disposition of those Long Lead Items shall take place in accordance with Exhibit "C."

6.3   **Security Rights**
Addressed in Exhibit "F" of this Agreement and is incorporated into this Agreement by this reference.

6.4   **Annual Operating Plan**

6.4.1   **Effect and Content of Annual Operating Plan**
The Annual Operating Plan is for informational and planning purposes and does not obligate any Party to any course of action or expenditures or constitute a Vote, Election, or unanimous agreement to participate in any specific activity or operation.  To the extent known on the date of submission of the Annual Operating Plan, the Annual Operating Plan shall include the following items, without limitation:

6.4.1.1   **Capital Budget**
(a)   a list of proposed wells to be drilled including their anticipated order, drilling time, depths, surface and bottomhole locations, objective sands, type of well

30

APC-HEC1-000001640

(Development, Appraisal), purpose of well (production, injection), and estimated Costs;

(b)     capital well operations listed by well, with their estimated Cost;

(c)     capital projects that have estimated gross Costs greater than three million dollars ($3,000,000.00).   The term "capital project" includes addition of new equipment and expansion or upgrades of existing equipment; and

(d)     an estimated total amount (in aggregate) for capital projects.

### 6.4.1.2   Expense Budget

(a)     expense well operations listed by well, with their estimated Cost;

(b)     expense projects that have estimated gross Costs greater than three million dollars ($3,000,000.00).   The term "expense project" includes repair, replacement, inspection, and maintenance of existing equipment;

(c)     an estimated total amount (in aggregate) for expense projects; and

(d)     estimated Operations and Maintenance (O&M) expenditures for the year may be shown in the aggregate.   O&M expenses include the ongoing, everyday expenditures necessary to operate the field.

### 6.4.1.3   Operator Forecasts and Informational Items

(a)     production forecasts;

(b)     injection forecasts;

(c)     fuel gas forecasts;

31

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001641

(d) scheduled or planned downtime exceeding three (3) days;

(e) data collection programs;

(f) Facility constraint and ullage forecast;

(g) geochemical or geophysical survey(s) or special test(s) that might be contemplated; and

(h) other areas deemed of significance by the Operator.

**6.4.2**   **Submission of Draft Annual Operating Plan**

Beginning in the year in which a Development Plan is approved, and in each subsequent year, the Operator shall develop and submit to the Non-Operating Parties, by July 1st, a draft Annual Operating Plan for the next calendar year.  The Annual Operating Plan process will be used (a) as a reporting mechanism by which the Operator will inform the Non-Operating Parties of results of the previous year's activities and operations, (b) to review ongoing activities and operations, and (c) for the remainder of the current year and the next succeeding calendar year, to forecast and plan activities and operations and to forecast anticipated Hydrocarbon production volumes, operating expenses, and capital expenditures.

**6.4.3**   **Review of Draft Annual Operating Plan**

The Non-Operating Parties may provide suggested changes, additions, or deletions to the Annual Operating Plan to the Operator and all other Parties in writing before September 1st of each year.  The Operator will then make changes that it deems necessary (if any) and submit the final Annual Operating Plan to the Non-Operating Parties no later than November 1st of each year, at which time the Annual Operating Plan is deemed adopted by all Parties.

32

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001642

## ARTICLE 7 – CONFIDENTIALITY OF DATA

**7.1     Confidentiality Obligation**

Confidential Data acquired or obtained by a Party shall be kept confidential during the term of this Agreement and for an additional period of one hundred eighty (180) days after termination of this Agreement and shall not be disclosed to a third party, unless it is disclosed under Article 7.1.1 *(Exceptions to Confidentiality)* or 7.1.2 *(Permitted Disclosures)*.  Each Party shall maintain the secrecy of the Confidential Data, using the standard of care it normally uses in protecting its own confidential information and trade secrets.

**7.1.1     Exceptions to Confidentiality**

The confidentiality obligation shall not apply to Confidential Data that is:

(a)   now or later becomes part of the public domain (other than as a result of a wrongful act or omission by a Party);

(b)   now or later becomes available to a Party on a non-confidential basis from a source, other than a Party, that is legally permitted to disclose the item of Confidential Data;

(c)   known to a Party on a non-confidential basis before disclosure of the Confidential Data to it under this Agreement or to which that Party was otherwise entitled at the time of disclosure; or

(d)   independently developed by employees, Affiliates, contractors, and/or consultants of a Party who have not had access to the Confidential Data.

**7.1.2     Permitted Disclosures**

**7.1.2.1     Operator's Permitted Disclosures**

The Operator may disclose items of Confidential Data to those third parties as may be necessary to conduct activities and operations under this Agreement, if the third parties are bound by written agreement to keep the Confidential Data secret for the period of time set forth in the Operator's service agreement with those third parties or two (2) years if a service agreement does not exist with those third parties.

33

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001643

Notwithstanding the foregoing, should the Operator disclose Confidential Data to an Affiliate, then the Affiliate shall require its Affiliate to handle, hold, and protect the Confidential Data as if it were a Party to this Agreement.

### 7.1.2.2   All Parties' Permitted Disclosures

Subject to the restriction that a third party shall be bound by written agreement not to use or disclose the Confidential Data for a period of two (2) years, except for the express purpose for which the disclosure is to be made, all Parties may disclose, in whole or in part, the Confidential Data to the following receiving parties, who may remove the Confidential Data from the custody and premises of the Party making such disclosure:

(a)   to its Affiliate;

(b)   to a bona fide, financially responsible, prospective assignee of any portion of the Party's Working Interest (including but not limited to an entity with whom a Party or its Affiliates is conducting bona fide negotiations directed toward a merger, consolidation or a sale of a Party's or an Affiliate's shares or substantially all of its assets on the OCS);

(c)   to potential contractors, professional consultants, or outside legal counsel engaged by or on behalf of the Party and acting in a capacity where that disclosure is essential to the contractor's, consultant's, or outside legal counsel's work;

(d)   to a bank or other financial institution to the extent appropriate to a Party arranging financing for its obligations under this Agreement;

(e)   to the extent required by a Lease, or by law, order, decree, regulation, or rule (including, without limitation, those of any regulatory agency, securities commission,

34

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001644

stock exchange, judicial, or administrative proceeding). If a Party is required to disclose Confidential Data under this Article 7.1.2.2(e), the Party shall promptly provide all other Parties to this Agreement written notice of those proceedings so that the non-disclosing Parties may seek a protective order or other remedy.  A disclosing Party shall furnish only such Confidential Data as is legally required and will use its reasonable efforts to obtain confidential treatment for any Confidential Data disclosed;

(f)   to an entity allocating or desiring to transport, process, or purchase Hydrocarbons produced under this Agreement for the purpose of making Hydrocarbon reserve estimates or other technical evaluations or allocating Hydrocarbon products to source points;

(g)   to third parties for benchmarking studies and industry performance reviews; provided that the Confidential Data disclosed does not include competitive information or data and the studies blind the identities of the participants and the origin of the Confidential Data; and

(h)   to a contractor for the purpose of offsite storage of Confidential Data.

**7.1.3   Limited Releases to Offshore Scout Association**

The Operator may disclose Confidential Data to the Offshore Oil Scouts Association at their weekly meetings.  The Confidential Data that may be disclosed is limited to information concerning well locations, well operations, and well completions to the extent reasonable and customary in industry practice or required under the by-laws of the Offshore Oil Scouts Association.

**7.1.4   Continuing Confidentiality Obligation**

A Party who ceases to own a Working Interest remains bound by the confidentiality and use obligations of this Agreement as to Confidential

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001645

Data obtained through this Agreement under Article 7.1 *(Confidentiality Obligation)*.

## 7.2   Ownership of Confidential Data

Except as otherwise provided for in this Article 7, all Confidential Data produced as a result of an activity or operation shall be the property of all Participating Parties in that activity or operation.  A Non-Participating Party has no rights in or access to Confidential Data produced or derived from a Non-Consent Operation unless and until Complete Recoupment has taken place.

### 7.2.1   Trades of Confidential Data

Any Participating Party may propose the exchange or trade of any Confidential Data or other similar data and information owned by a third party.   Upon approval of said exchange or trade by Vote of the Participating Parties, that approval shall bind all Participating Parties, and the Operator shall utilize the Well Data Trade and Confidentiality Agreement in Exhibit "I" in order to consummate that exchange or trade with the third party. The Operator shall promptly provide all Participating Parties copies of the third party data obtained along with copies of any agreement relating to that exchange or trade.

### 7.2.2   Ownership of Non-Consent Data

After Complete Recoupment has taken place and a Non-Participating Party has become a Participating Party in an activity or operation, that Non-Participating Party shall become an owner of the Confidential Data and information resulting from that activity or operation.  Within fifteen (15) days after Complete Recoupment, the Operator shall furnish that Confidential Data and information to the former Non-Participating Party.

## 7.3   Access to the Lease and Rig

Except as provided in Article 6.3(b) *(Default)* in Exhibit "F," each Participating Party may attend meetings between the Operator and any contractors constructing the Production System or Facilities specified in the Execution AFE as well as access to the construction sites.  Except as otherwise provided in Article 6.3(b) *(Default)* in Exhibit "F," each Participating Party shall have access to all drilling rigs, Production Systems, and Facilities to observe and inspect operations and wells in which it participates (and the pertinent records and other data).  Access by the Participating Party to a drilling rig, Production System, or

36

APC-HEC1-000001646

Facility serving a Contract Area shall be scheduled through the Operator at least forty-eight (48) hours in advance (or, if conditions do not permit that much advance scheduling, with as much advance scheduling as is reasonably possible). Each Party's access will be at reasonable times and may not unreasonably interfere with operations at the site.

**7.4    Development of Proprietary Information and/or Technology**

The ownership, use, treatment, and disclosure of proprietary information or technology, including, but not limited to, drilling technology, production technology, production systems and facilities, and their transportation and installation, pipelines, flowlines, and offshore oil and gas transportation that are charged to the Joint Account shall be handled under Exhibit "G."

## ARTICLE 8 – APPROVALS AND NOTICES

**8.1    Classes of Matters**

Action will be taken on a proposed activity or operation only after the procedures and approval requirements in this Agreement have been satisfied. There are four general classes of activities or operations under this Agreement: (a) those requiring approval by Vote, (b) those requiring approval by Election, (c) those requiring approval by unanimous agreement, and (d) those within the discretion of the Operator.

**8.1.1    Voting and Electing Interest**

If all Parties are entitled to make an Election or Vote, each Party has an Electing interest or a Voting interest equal to its Working Interest or its Participating Interest Share, as applicable. If a Party does not have a right to make an Election or Vote, each of the other Parties has an Electing interest or a Voting interest, as applicable, equal to its Working Interest or its Participating Interest Share, as applicable, divided by the total Working Interest or Participating Interest, as applicable, of those Parties who have a right to make an Election or Vote.

**8.2    Voting and Election Procedures**

The Parties shall Vote or make an Election on proposals requiring a Vote or Election in the order in which those proposals are submitted, except as specified in Articles 10.2 *(Exploratory Operations at Objective Depth)*, 11.2 *(Appraisal*

37

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001647

*Operations at Objective Depth)*, and 13.2 *(Development Operations at Objective Depth)*.  Subject to Article 6.2 *(AFEs)*, after receipt of a notice properly given for an activity or operation requiring a Vote or Election, the Parties entitled to make that Vote or Election (a) may Vote or make an Election in accordance with this Article 8.2 *(Voting and Election Procedures)* and Article 8.7 *(Giving and Receiving Notices and Responses)* or (b) shall be deemed to have Voted or made an Election as provided in Article 8.6.5 *(Failure to Vote or Make an Election)*.

A Vote or Election to participate in a proposal is evidenced by a Party making a written affirmative response to the proposal or by a Party's execution of the AFE associated with the proposal.  Except as otherwise provided in this Agreement, a Vote or Election not to participate in a proposal is evidenced by a Party's written negative response to the proposal, a Party's failure to make a timely written affirmative response to the proposal or to timely execute the AFE associated with the proposal, or a Party's failure to timely make a subsequent Vote or Election under Article 8.3 *(Second Opportunity to Participate)*.

**8.2.1**   <u>Approval by Vote</u>

Approval by Vote shall be decided by a Vote of the Parties as follows:

(a)   when one Party or two Parties are entitled to Vote, approval by Vote shall require an affirmative Vote of one or more Parties with a Voting interest of fifty-one percent (51%) or more, or if two Parties entitled to Vote have the same Voting interest, the affirmative Vote of all Parties entitled to Vote; and

(b)   when more than two Parties are entitled to Vote, approval by Vote shall require an affirmative Vote of two (2) or more Parties entitled to Vote with a combined Voting interest of fifty percent (50%) or more.

**8.2.2**   <u>Approval by Election</u>

Approval by Election shall be decided by an affirmative Election by one or more Parties, entitled to make an Election, with a combined Electing interest of ten percent (10%) or more.

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001648

**8.3**    <u>Second Opportunity to Participate</u>

Unless otherwise provided to the contrary in this Agreement, if an activity or operation is approved by Vote or Election but is not approved by all of the Parties, a Party who Voted or Elected not to participate in the approved activity or operation may make a subsequent Vote or Election to participate in the approved activity or operation within forty-eight (48) hours (exclusive of Saturdays, Sundays, and federal holidays) of its receipt of the original Voting or Election results from the Operator. If a Party does not exercise its right to make a subsequent Vote or Election to participate, it shall become a Non-Participating Party in the approved activity or operation. If (a) all the Parties entitled to do so make an original Vote or Election or a subsequent Vote or Election to participate in a proposed activity or operation or (b) an approval by Vote is binding on all Parties, then the Operator shall commence the activity or operation in accordance with the applicable timely operations provisions of this Agreement.

**8.4**    <u>Participation by Fewer Than All Parties</u>

If, after the period in which a Party may make a subsequent Vote or Election to participate, there is at least one Non-Participating Party in the approved activity or operation, each Party who made an original or a subsequent Vote or Election to participate in the approved activity or operation shall, within forty-eight (48) hours (exclusive of Saturdays, Sundays, and federal holidays) of its receipt of the subsequent Voting or Election results,

(a)    limit its participation in the approved activity or operation to its Working Interest share, or

(b)    agree to bear its Participating Interest Share of the approved activity or operation

by written correspondence to the Operator. Failure to submit that written correspondence shall be deemed a written correspondence under (a). If a Party, who made an original or a subsequent Vote or Election to participate in the approved activity or operation, submits or is deemed to have submitted a written correspondence under (a) and the other Parties who made an original or a subsequent Vote or Election to participate in the approved activity or operation do not agree to bear all of the remaining Costs of the approved activity or operation within thirty (30) days after the written correspondence period, the proposal of the approved activity or operation and all Votes and Elections in

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001649

regard to the approved activity or operation shall be deemed withdrawn.  Once the Parties, who made an original or a subsequent Vote or Election to participate in an approved activity or operation in which there is a Non-Participating Party, agree to bear all of the Costs of the approved activity or operation, the Operator shall commence the activity or operation at the sole Cost and risk of the Participating Parties in accordance with the applicable timely operations provisions of this Agreement. Notwithstanding the foregoing, the election periods in Articles 10.2 *(Exploratory Operations at Objective Depth)*, 11.2 *(Appraisal Operations at Objective Depth)*, and 13.2 *(Development Operations at Objective Depth)* shall govern in the event of a conflict.

### 8.5    Approval by Unanimous Agreement

After receipt of a notice for a proposal that requires unanimous agreement, each Party entitled to approve (or disapprove) that activity or operation may indicate its approval or disapproval by providing a written statement in a response.  Unless otherwise specifically provided, failure of a Party to make such a response is deemed its disapproval.

### 8.6    Response Time for Notices

After receipt of an AFE or notice under this Article 8, the Parties may (a) submit their Vote or (b) make an Election or (c) submit a written statement, whichever is applicable.  If requested in writing by a Party entitled to (a) submit their Vote or (b) make an Election or (c) submit a written statement on an AFE or notice, the Operator shall give prompt notice of the results of those Votes, Elections or written statements to each Party entitled to (a) submit their Vote or (b) make an Election or (c) submit a written statement, as applicable.   Except as otherwise provided in this Agreement, the response times for each type of proposal shall be as follows:

#### 8.6.1    Well Proposals, Recompletions, and Workovers

When a well, Recompletion, or Workover is proposed, each Party entitled to Vote or make an Election or submit a written statement, whichever is applicable, has thirty (30) days after receipt of the proposal (inclusive of Saturdays, Sundays, and federal holidays) to respond to it.  If a drilling rig is on location and day rate rig charges are being charged to the Joint Account and if a Party, who is entitled to do so, has proposed the immediate commencement of a substitute well or

40

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001650

a supplemental AFE to a well, or a Recompletion or Workover in or through the same well bore in which the previous operation was conducted or has submitted a supplemental AFE to a well, and if the rig that is on location is to conduct the operation or is to be utilized under the supplemental AFE, a Party entitled to Vote or make an Election or submit a written statement has forty-eight (48) hours after receipt of the proposal (inclusive of Saturdays, Sundays, and federal holidays) to respond to it. The response times for subsequent operations at Objective Depth are provided in Article 10.2 *(Exploratory Operations at Objective Depth)*, Article 11.2 *(Appraisal Operations at Objective Depth)*, and Article 13.2 *(Development Operations at Objective Depth)*.

**8.6.2    Execution AFE**

Each Party entitled to make an Election on an Execution AFE has one hundred twenty (120) days after the date of its receipt of the Execution AFE to make that Election.

**8.6.3    Other AFE Related Operations**

Except as otherwise provided in Articles 8.6.1 *(Well Proposals, Recompletions, and Workovers)*, 8.6.2 *(Execution AFE)*, and 12.7.7 *(Approval of Major Modifications)*, the response time to a proposed AFE, activity, or operation will depend upon the gross AFE amount. Response times will be as follows:

(a)   AFE of five hundred thousand $500,000.00 or more but less than twenty million dollars $20,000,000.00; response will be made within thirty (30) days after receipt of said proposal;

(b)   AFE of twenty million dollars $20,000,000.00 or more but less than fifty million dollars $50,000,000.00; response will be made within sixty (60) days after receipt of said proposal; and

(c)   AFE of fifty million dollars $50,000,000.00 or more; response will be made within ninety (90) days after receipt of said proposal.

**8.6.4    Other Proposals**

For all other proposals requiring notice, and all supplemental AFEs other than those subject to Article 8.6.1 *(Well Proposals,*

41

*Recompletions, and Workovers)*, each Party has thirty (30) days after receipt of the proposal to respond to it.

**8.6.5    Failure to Vote or Make an Election**

Unless otherwise specifically provided, failure of a Party to Vote or make an Election, whichever is applicable, within the period required by this Agreement is deemed to be a Vote or Election not to participate.

**8.6.6    Suspensions of Operations and Suspensions of Production**

Notwithstanding any contrary provision in Article 8.6 *(Response Time for Notices)*, if the MMS grants a Suspension of Production ("SOP"), a Suspension of Operations ("SOO"), or similar regulatory grant for all or part of the Contract Area, and if the SOP, SOO, or grant requires the commencement of an activity or operation before the expiration of the period for Voting, making an Election, or submitting a written statement, as provided in Article 8.5 *(Approval by Unanimous Agreement)* for that activity or operation, the Parties shall cast their Votes, make their Elections, or submit their written statement on the activity or operation at least ten (10) days (inclusive of Saturdays, Sundays and federal holidays) before the commencement date required in the SOO, SOP, or grant.

**8.6.7    Standby Charges**

The Participating Parties in a well or well operation conducted immediately prior to the delivery of (a) a proposal for a substitute well or a subsequent operation in a well or (b) a supplemental AFE are responsible for charges associated with the well or well operation that accrue before that delivery.  All charges, which accrue after that delivery, are the responsibility of the Participating Parties in the substitute well, subsequent operation, or supplemental AFE.  If (a) the proposal of a substitute well or subsequent operation or (b) the supplemental AFE is not approved, the Participating Parties in the well or well operation conducted immediately prior to the delivery of that proposal or supplemental AFE are responsible for the charges that accrue after that delivery.

42

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001652

**8.7    Giving and Receiving Notices and Responses**

Except as otherwise provided in this Agreement, all notices and responses required or permitted by this Agreement shall be in writing and shall be delivered in person or by mail, courier service, or facsimile transmission, with postage and charges prepaid, addressed to the Parties at the addresses in Exhibit "A." A notice is deemed delivered only when received by the Party to whom it was directed, and the period for a Party to deliver a response begins on the date the notice is received. "Receipt" of a written notice means actual delivery of the notice to the Party's address or transmission to the facsimile number provided in Exhibit "A." A response is deemed delivered when it is deposited in the United States mail, delivered to a courier, transmitted by facsimile transmission, or is personally delivered to a Party.

However, when a drilling rig is on location and day rate rig charges are being charged to the Joint Account, notices or responses pertaining to operations utilizing a drilling rig shall be given orally or by telephone. "Receipt" of an oral or telephone notice means actual and immediate communication to the Party to be notified. All telephone or oral notices or responses permitted by this Agreement shall be confirmed immediately thereafter by facsimile transmission. A message left on an answering machine or with an answering service or other third person is not adequate telephone or oral notice or response. If a Party is unavailable to receive a notice or response required to be given orally or by telephone, the notice or response may be delivered by facsimile transmission.

**8.8    Content of Notices**

A notice requiring a response shall indicate the appropriate response time specified in Article 8.6 *(Response Time for Notices)*. A well proposal notice shall include the type of well being proposed, (for example, Exploratory Well, Appraisal Well, or Development Well), a Well Plan, and an AFE that includes the Costs of permanently plugging and abandoning the well. If a proposed activity or operation is subject to Article 16.4 *(Non-Consent Operations to Maintain Contract Area)*, the notice shall specify that the proposal is a Contract Area maintenance activity or operation.

**8.9    Designation of Representatives**

The names, addresses, and telephone and facsimile numbers of a designated representative and alternate for each Party to whom notices or responses shall

43

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001653

be directed, are provided in Exhibit "A." The designated representative and the
alternate may be changed by written notice to the other Parties.

**8.10    Meetings**

Any Party may call a meeting. Except in an emergency, no meeting shall be
called on less than five (5) days' advance notice (inclusive of Saturdays,
Sundays, and federal holidays), and the notice shall include a proposed agenda.
The Operator shall be chairman of each meeting and take minutes of each
meeting. Only matters included in the agenda may be considered at a meeting
unless unanimously agreed to by the Parties.

**8.11    Obligations of Well Participation**

Subject to Article 6.2 *(AFEs)*, a Participating Party in an Exploratory Well, an
Appraisal Well, or a Development Well is responsible for its Participating Interest
Share of all necessary Costs in the original well AFE, which shall include only the
Cost to drill, test (except Production Testing), and log the well to its Objective
Depth, or shallower depth if applicable, and to plug and abandon the well.

## ARTICLE 9 – NEWS RELEASES

**9.1    Proposal of News Releases**

Any Party may propose for issuance a News Release about the activities or
operations covered by this Agreement by submitting the text of the News
Release to the Parties. A News Release proposal requires the unanimous
agreement of the Parties. The Parties shall respond to a News Release
proposal within seventy-two (72) hours of their receipt of it by agreeing or
disagreeing with the text of the proposed News Release, or by submitting
alternative text for the News Release. If a Party submits alternative text for the
News Release, the Parties shall have forty-eight (48) hours to agree or disagree
with any of the proposed texts of the News Release. If a Party fails to respond,
the Party shall be deemed to have not approved any of the proposed News
Releases.

**9.1.1    Operator's News Release**

If the Parties do not unanimously agree to any of the texts of a
proposed News Release within the time period set forth in Article 9.1
*(Proposal of News Releases)*, the Operator has the exclusive right for

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001654

forty-eight (48) hours, following the last response under Article 9.1 *(Proposal of News Releases)*, to submit a News Release on the subject matter of the original proposal to the Parties in accordance with this Article 9.1.1. If the News Release pertains to a well or an operation in a well, the Operator must limit the content of the News Release to the following information:

(a)   the name of the well or operation and the water depth;

(b)   the location of the well by protraction area, block, and adjacent state;

(c)   the lease bonus paid and the lease acquisition date;

(d)   the result of a Production Test, if conducted;

(e)   the participants in, and their Working Interest in, the well or operation; and

(f)   the surrounding acreage controlled by the participants.

If the News Release does not pertain to a well or an operation in a well, it may only contain information that is not Confidential Data or Confidential Information (as defined in Exhibit "G") and does not substantially undermine the Parties' competitive advantage in the area surrounding, or trend or play pertaining to, the Contract Area. The Operator shall transmit the News Release to the Non-Operating Parties not less than seventy-two (72) hours (exclusive of Saturdays, Sundays, and federal holidays) before the time at which the Operator wishes to issue it. Any Party may have its name excluded from the News Release by notifying the Operator of that desire within forty-eight (48) hours of that Party's receipt of the News Release.

**9.1.2    <u>Non-Operating Party's News Release</u>**

If the Operator does issue the News Release within forty-eight (48) hours of the termination of the seventy-two (72) hour period referred to in Article 9.1.1 *(Operator's News Release)*, any Participating Party may prepare and issue its own News Release, using the content guidelines and procedures provided in Article 9.1.1 *(Operator's News Release)*,

45

simultaneously with or following the Operator's News Release. If the Operator does not issue the News Release within forty-eight (48) hours of the termination of the seventy-two (72) hour period referred to in Article 9.1.1 *(Operator's News Release)*, any Participating Party may prepare and issue its own News Release, using the content guidelines and procedures provided in Article 9.1.1 *(Operator's News Release)*.

**9.2    Emergency New Releases**

In an emergency involving extensive property damage, loss of human life, or other clear emergency and where there is insufficient time to obtain approval from the other Parties, the Operator may furnish factual information necessary to satisfy legitimate public interest or governmental authorities having jurisdiction. The Operator shall immediately notify the Parties of the information furnished in response to the emergency.

**9.3    Mandatory News Releases**

Each Party has the right to issue a News Release which contains information not otherwise permitted under Article 9 *(News Releases)* in order to comply with the laws, orders, rules, or regulations of the country in which its parent company is incorporated; provided, however, prior to issuing that News Release, that Party must submit, not less than seventy-two (72) hours (exclusive of Saturdays, Sundays, and federal holidays) before issuance of the News Release, the text of that News Release to the other Parties and a statement from a licensed attorney in the country, with whose laws, orders, rules, or regulations the Party is complying, verifying that the News Release (including its content) is required under those laws, orders, rules, or regulations.

46

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001656

## ARTICLE 10 – EXPLORATORY OPERATIONS

### 10.1   Proneed Proposal of Exploratory Wells

Any Party may propose drilling an Exploratory Well within the Contract Area by giving notice of the proposal (along with the associated AFE and Well Plan) to the other Parties. Each proposed Exploratory Well requires approval by Election.

Each Non-Participating Party in an Exploratory Well will be subject to either an acreage forfeiture or Hydrocarbon Recoupment as provided in Article 16 *(Non-Consent Operations)*.

#### 10.1.1   Revision of Well Plan

A revision to an approved well proposal, Well Plan, or AFE prior to the commencement of actual drilling operations on an Exploratory Well requires the unanimous agreement of the Participating Parties. In the absence of unanimous agreement on a proposed revision to the Well Plan or AFE, the Well Plan and AFE will stand as approved. Only a major revision to an approved Well Plan or AFE will give a Non-Participating Party an additional opportunity to participate in an Exploratory Well prior to the commencement of actual drilling operations. A revision is deemed a major revision if the Objective Depth of an Exploratory Well is changed, or the proposed bottom hole location is moved more than 1000', or both, in which case each Non-Participating Party in the well may, for a period of twenty (20) days after receipt of the revised Well Plan and revised AFE, notify the Operator in writing that it will participate in the revised Exploratory Well.  For the avoidance of doubt, any revisions to the Well Plan subsequent to the commencement of actual drilling operations shall not give any Non-Participating Party the opportunity to participate in the Exploratory Operation.

A Non-Participating Party timely submitting its participation notification under this Agreement due to a major revision in a Well Plan (a) shall become an Underinvested Party for Costs incurred on the modified Exploratory Well prior to the approved major modification and (b) with regard to that well, shall no longer be subject to Article 16 *(Non-*

47

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001657

*Consent Operations*).  The Non-Participating Party's Underinvestment obligation, resulting from its participation decision, shall be calculated as follows: actual Costs expended on that Exploratory Well multiplied by the Non-Participating Party's percentage Participating Interest Share in the modified Exploratory Well.  If the Non-Participating Party forfeited and assigned its right, title, and interest in the Contract Area by not participating in that Exploratory Well, then within thirty (30) days after the Operator's receipt of the Non-Participating Party's participation notification under this Agreement, the Participating Parties in the original Exploratory Well proposal shall assign to the Non-Participating Party one hundred percent (100%) of the Non-Participating Party's former Working Interest in the Contract Area.

**10.1.2    Automatic Revision of the Well Plan**

During the drilling of an Exploratory Well, the Well Plan may be revised by the Operator as is necessary for it to employ prudent oilfield practices or to conduct safe operations, and those revisions will not require the approval of the Participating Parties as long as the Operator's revisions carry out the scope and intent of the approved Well Plan and AFE, except as provided in Article 6.2.2 (*Supplemental AFEs*).

**10.1.3    Timely Operations**

Except as provided below, drilling operations on an Exploratory Well shall be commenced within one hundred eighty (180) days after the end of the period for the approval of the Exploratory Well.  If the Operator, except for an occurrence of Force Majeure, does not commence drilling operations on the Exploratory Well within that one hundred eighty (180) day period, the approved Exploratory Well proposal shall be deemed withdrawn, with the effect as if the Exploratory Well had never been proposed and approved.

If a Party submits an identical Exploratory Well proposal (except for any necessary modifications resulting from a change in the drilling rig to be utilized by the Operator) within ninety (90) days after the deemed withdrawal of the approved original Exploratory Well proposal and if that identical Exploratory Well proposal is approved and if the Operator

48

APC-HEC1-000001658

is a Participating Party in the identical Exploratory Well proposal, the Operator shall commence drilling operations on that well within ninety (90) days after the end of the response period for that proposal. If the Operator, except for an occurrence of Force Majeure (excluding the inability to secure materials or a drilling rig), fails to commence drilling operations on the identical Exploratory Well within that ninety (90) day period, the approved identical Exploratory Well proposal shall be deemed withdrawn, with the effect as if the identical Exploratory Well proposal had never been proposed and approved, and the Non-Operating Parties may then select a substitute Operator under Article 4.2.2 *(Substitute Operator if Operator Fails to Commence Drilling Operations)*. Within sixty (60) days of the selection of the substitute Operator, the substitute Operator shall propose the drilling of an identical Exploratory Well (except for any necessary modifications resulting from a change in the drilling rig to be utilized by the substitute Operator), and it shall commence drilling operations on that well within one hundred eighty (180) days after the end of the period for the approval of that Well.

If a Party submits an identical Exploratory Well proposal (except for any necessary modifications resulting from a change in the drilling rig to be utilized by the Operator) within ninety (90) days after the deemed withdrawal of the approved original Exploratory Well proposal and if that identical Exploratory Well proposal is approved and if the Operator is not a Participating Party in the identical Exploratory Well proposal, the approved identical Exploratory Well proposal shall be deemed withdrawn, with the effect as if the identical Exploratory Well proposal had never been proposed and approved, and the Non-Operating Parties may then select a substitute Operator under Article 4.2.1 *(Substitute Operator if Operator is a Non-Participating Party)*. Within sixty (60) days of the selection of the substitute Operator, the substitute Operator shall propose the drilling of an identical Exploratory Well (except for any necessary modifications resulting from a change in the drilling rig to be utilized by the substitute Operator), and it shall commence drilling operations on that well within ninety (90) days after the end of the period for the approval of that Well.

49

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001659

If an approved original or identical Exploratory Well proposal is deemed withdrawn due to a failure to timely commence drilling operations on that well, all Costs incurred, which are attributable to the preparation for, or in furtherance of, that Exploratory Well, will be chargeable to the Participating Parties.  Drilling operations for an Exploratory Well under this Article 10.1.3 shall be deemed to have commenced on the date the rig arrives on location or, if the rig is already on location, the date when actual drilling operations for the approved Exploratory Well are undertaken.

**10.1.4**   **AFE Overruns and Substitute Well**

Once an Exploratory Well is commenced, the Operator shall drill the well with due diligence to its Objective Depth, subject to:

(a)   all supplemental AFEs required under Article 6.2.2 *(Supplemental AFEs )*,

(b)   the Operator encountering mechanical difficulties, uncontrolled influx of subsurface water, loss of well control, abnormal well or formation pressures, pressured or heaving shale, granite or other practicably impenetrable substances, or other similar conditions in the well bore or damage to the well bore that, in the Operator's sole opinion, render further well operations impractical, and

(c)   the unanimous agreement of the Participating Parties to cease drilling an Exploratory Well before reaching Objective Depth.

If an Exploratory Well is abandoned due to the conditions described under Article 10.1.4(b), then any Participating Party in the abandoned Exploratory Well may, within thirty (30) days after abandonment of that Exploratory Well, propose the drilling of a substitute well for the abandoned Exploratory Well by giving notice of the proposal (along with the associated AFE and Well Plan) to all other Participating Parties in the abandoned Exploratory Well, and that proposal requires approval by Election of the Participating Parties in the abandoned Exploratory Well. Notwithstanding any contrary provision of Article 10.4 *(Conclusion of Exploratory Operations)*, the substitute well shall be an Exploratory Well.   The Well Plan for the substitute Exploratory Well shall be

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001660

substantially the same as the Well Plan for the abandoned Exploratory Well and shall also take into account the conditions that rendered further drilling of the abandoned Exploratory Well impractical.

Each Non-Participating Party in a substitute Exploratory Well or an approved supplemental AFE for an Exploratory Well will be subject to either an acreage forfeiture or Hydrocarbon Recoupment, as provided in Article 16 *(Non-Consent Operations)*.

**10.2   Exploratory Operations at Objective Depth**

After an Exploratory Well has been drilled to its Objective Depth and all operations in the controlling AFE have been conducted or terminated (except temporary abandonment and permanent plugging and abandonment) and all logs and test results have been distributed to the Participating Parties, the Operator shall promptly notify the Parties entitled to make an Election on an operation proposed under this Article 10.2 of its proposal to conduct subsequent operations in the well.  Except for a proposal to permanently plug and abandon the well, the Operator's proposal shall include an associated AFE and a plan for the operation.  The Parties entitled to make that Election are:

(a)   the Participating Parties, and

(b)   the Non-Participating Parties in the original well proposal if (1) the subsequent Exploratory Operation proposal is made at the well's Objective Depth and is for a Sidetrack or Deepening and (2) Article 16.2 *(Acreage Forfeiture Provisions)* was not applicable to the drilling of that Exploratory Well.

The Operator's proposal shall be for one of the following operations:

(a)   conduct Additional Testing, Sidewall Coring, or Logging of the formations encountered prior to setting production casing;

(b)   Sidetrack the well bore to conventionally core the formations encountered;

(c)   Deepen the well to a new Objective Depth;

51

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001661

(d)   Sidetrack the well (however, if in the Operator's sole opinion a casing string is required to Deepen the well, then option "d" shall have priority over Deepening the well to a new Objective Depth);

(e)   conduct Production Testing;

(f)   conduct other operations on the well not listed;

(g)   temporarily abandon the well; or

(h)   permanently plug and abandon the well.

If an Exploratory Well is temporarily abandoned under (g), then any additional operation in that well shall be proposed as a new well operation. A proposal to complete an Exploratory Well that has been temporarily abandoned under clause (g) shall be deemed a Development Operation proposal.

If the Operator fails to submit its proposal to the Participating Parties within twenty-four (24) hours (inclusive of Saturdays, Sundays, and federal holidays) after receipt of all logs and test results from an Exploratory Well by the Participating Parties, then any Participating Party may make a proposal. In that event, the procedures in this Article 10.2 shall apply to that proposal, and any reference in this Article 10.2 to the "Operator's proposal" shall include a proposal made by a Participating Party.

### 10.2.1   Response to Operator's Proposal

A Participating Party may, within twenty-four (24) hours (inclusive of Saturdays, Sundays, and federal holidays) of its receipt of the Operator's proposal, make a separate proposal (along with an associated AFE and a plan for the operation, except if the proposal is to permanently plug and abandon the well) for one of the operations in Article 10.2 *(Exploratory Operations at Objective Depth)*, and the Operator, immediately after the expiration of the twenty-four (24) hour period for making a separate proposal shall provide the Parties entitled to make an Election with a copy of all separate proposals so made. If no separate proposal is made, the Parties entitled to make an Election shall, within forty-eight (48) hours (inclusive of Saturdays, Sundays, and federal holidays) of their receipt of the Operator's proposal, make an Election on the Operator's proposal (except for a proposal to

52

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001662

permanently plug and abandon). If a separate proposal is made, the Parties entitled to make an Election shall make an Election under the procedure in Article 10.2.2 *(Response to Highest Priority Proposal)*. If a proposal to permanently plug and abandon the well is the only operation proposed, then the approval and Cost allocation provisions of Article 10.3 *(Permanent Plugging and Abandonment and Cost Allocation)* shall apply to that proposal. If Article 8.3 *(Second Opportunity to Participate)* or Article 8.4 *(Participation by Fewer Than All Parties)*, or both, apply to any Election in Article 10.2 *(Exploratory Operations at Objective Depth)*, then the response period in those articles shall be twenty-four (24) hours (inclusive of Saturdays, Sundays, and federal holidays) instead of forty-eight (48) hours (exclusive of Saturdays, Sundays, and federal holidays). Notwithstanding any contrary provision of this Agreement, if one or more operations are proposed before the distribution of information resulting from the previously approved operation, then the response periods set forth above shall not commence until the Parties entitled to make an Election have received the information from the previously approved operation.

**10.2.2    <u>Response to Highest Priority Proposal</u>**

If a separate proposal is made, each Party entitled to make an Election shall, within twenty-four (24) hours (inclusive of Saturdays, Sundays, and federal holidays) after its receipt from the Operator of a complete copy of all separate proposals, make its Election on the highest priority proposal (except a proposal to permanently plug and abandon the well). Article 10.2(a) has the highest priority, and Article 10.2(h) has the lowest priority. If different depths or locations are proposed for the same type of operation, priority shall be given to the deepest depth. If the proposal with the highest priority is approved, then the lower priority proposals shall be deemed withdrawn. Once the approved operation is completed, the Parties shall follow the procedure provided in this Article 10.2 *(Exploratory Operations at Objective Depth)* for all other proposals for operations in the well bore until such time as the well is temporarily abandoned or permanently abandoned.

53

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001663

### 10.2.3 Response on Next Highest Priority Proposal

If the proposal with the highest priority is not approved, then the next highest priority proposal shall be deemed the highest priority proposal and it shall be subject to the approval procedure in Article 10.2.2 *(Response to Highest Priority Proposal)*. This process will continue until a proposal is approved to either temporarily abandon or permanently plug and abandon an Exploratory Well.

### 10.2.4 Non-Participating Parties in Exploratory Operations at Objective Depth

A Non-Participating Party in an Exploratory Operation conducted on an Exploratory Well after it has reached its Objective Depth [except as provided for in this Article 10.2 *(Exploratory Operations at Objective Depth)*] is subject to Article 16.5.1.1 *(Non-Consent Exploratory Operations at Objective Depth)* and is relieved of the Costs and risks of that Exploratory Operation, except that a Non-Participating Party in that Exploratory Operation remains responsible for its Participating Interest Share of the Costs of plugging and abandoning an Exploratory Well, less and except all Costs of plugging and abandoning associated solely with the subsequent Exploratory Operation in which it was a Non-Participating Party.

### 10.2.5 Participation in a Sidetrack or Deepening by a Non-Participating Party in an Exploratory Well at Initial Objective Depth

If an Exploratory Well is drilled to its initial Objective Depth and a Non-Participating Party in that Exploratory Well becomes a Participating Party in an approved Sidetracking or Deepening under Article 10.2(c) or (d), that former Non-Participating Party shall become an Underinvested Party in an amount equal to its Non-Participating Interest Share of the Costs of that Exploratory Well prior to that Sidetracking or Deepening. The original Participating Parties in an Exploratory Well are Overinvested Parties in that amount. A former Non-Participating Party in an Exploratory Well that becomes a Participating Party in an approved Sidetracking or Deepening remains a Non-Participating Party in that Exploratory Well to initial Objective Depth until (a) its Underinvestment is eliminated under Article 16.9 *(Settlement of Underinvestments)*, and (b) the Hydrocarbon

54

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001664

Recoupment recoverable under Article 16.5.1 *(Non-Consent Exploratory Operations down to Objective Depth in the First Exploratory Well)*, less the amount of the Underinvestment, has been recovered by the original Participating Parties. If a former Non-Participating Party becomes a Participating Party in more than one approved Sidetracking or Deepening in the same Exploratory Well, that former Non-Participating Party shall become an Underinvested Party only with regard to the first Sidetracking or Deepening it approves; however, that Underinvestment shall not be relieved by an Underinvested Party's subsequent participation.

**10.3   Permanent Plugging and Abandonment and Cost Allocation**

The permanent plugging and abandonment of an Exploratory Well that:

(a)   is to be plugged due to mechanical difficulties or impenetrable conditions before the well has been drilled to its Objective Depth under Article 10.1.4 (b),

(b)   is to be plugged under Article 10.2 *(Exploratory Operations at Objective Depth)*, or

(c)   has been previously temporarily abandoned under Article 10.2 *(Exploratory Operations at Objective Depth)*

and has not produced Hydrocarbons (other than as a result of Production Testing), requires the approval of the Participating Parties by Vote. Approval to plug and abandon an Exploratory Well that has produced Hydrocarbons (other than as a result of Production Testing) shall be governed by Article 18.1 *(Abandonment of Wells)*. If a proposal to plug and abandon an Exploratory Well receives approval by Vote, the approved proposal binds all Parties. If any Participating Party fails to respond within the applicable response period for a proposal to plug and abandon an Exploratory Well, that Participating Party shall be deemed to have approved the plugging and abandonment of that Exploratory Well. If a rig is on location, a proposal to plug and abandon an Exploratory Well under either Article 10.3(a) or 10.3(b) does not receive approval by Vote, and if within twenty-four (24) hours (inclusive of Saturdays, Sundays, and federal holidays) after receipt of that proposal no other operation is proposed (and subsequently approved) for the well by a Party entitled to make a proposal, the

55

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001665

Operator may nevertheless proceed to plug and abandon that Exploratory Well, and shall give each Participating Party notice of that fact.  If the proposal to plug and abandon an Exploratory Well that has not produced Hydrocarbons (other than as a result of Production Testing) does not receive approval by Vote, but the Operator deems the well bore not to be safe or in sound enough condition for it to perform further operations, the Operator may nevertheless proceed to plug and abandon that Exploratory Well, and shall give each Participating Party notice of that fact.

The Participating Parties in an Exploratory Well proposal shall pay all Costs of plugging and abandoning that Exploratory Well, except all increased plugging and abandoning Costs associated solely with a Non-Consent Operation approved under Article 10.2 *(Exploratory Operations at Objective Depth)* or Article 6.2.2 *(Supplemental AFEs)*.   The Participating Parties in that Non-Consent Operation are responsible for the increased plugging and abandoning Costs attributable to that Non-Consent Operation.

**10.4   Conclusion of Exploratory Operations**

Except as provided in Article 10.1.4 *(AFE Overruns and Substitute Well)* after the permanent or temporary abandonment of the first Producible Well and the release of the rig from that Producible Well, Exploratory Operations conclude, and all subsequent operations in the Contract Area are either Appraisal Operations or Development Operations.

# ARTICLE 11 – APPRAISAL OPERATIONS

**11.1   Proposal of Appraisal Wells**

After the conclusion of Exploratory Operations, any Party may propose drilling an Appraisal Well by giving notice of the proposal (along with the associated AFE and Well Plan) to the other Parties. Each proposed Appraisal Well requires approval by Election.

Each Non-Participating Party in an Appraisal Well will be subject to either an acreage forfeiture or Hydrocarbon Recoupment as provided in Article 16 *(Non-Consent Operations)*.

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001666

**11.1.1    Revision of Well Plan**

Any revisions of the Well Plan or AFE for an Appraisal Well shall take place under the same terms and conditions as those set forth for an Exploratory Well in Article 10.1.1 *(Revision of Well Plan)*.

**11.1.2    Automatic Revision of the Well Plan**

The Well Plan for an Appraisal Well shall automatically be revised under the same terms and conditions as those set forth for an Exploratory Well in Article 10.1.2 *(Automatic Revision of the Well Plan)*.

**11.1.3    Timely Operations**

Except as provided below, drilling operations on an Appraisal Well shall be commenced within one hundred eighty (180) days after the end of the period for the approval of the Appraisal Well.   If the Operator, except for an occurrence of Force Majeure, does not commence drilling operations on the Appraisal Well within that one hundred eighty (180) day period, the approved Appraisal Well proposal shall be deemed withdrawn, with the effect as if the Appraisal Well had never been proposed and approved.

If a Party submits an identical Appraisal Well proposal (except for any necessary modifications resulting from a change in the drilling rig to be utilized by the Operator) within ninety (90) days after the deemed withdrawal of the approved original Appraisal Well proposal and if that identical Appraisal Well proposal is approved and if the Operator is a Participating Party in the identical Appraisal Well proposal, the Operator shall commence drilling operations on that well within ninety (90) days after the end of the response period for that proposal.   If the Operator, except for an occurrence of Force Majeure (excluding the inability to secure materials or a drilling rig), fails to commence drilling operations on the identical Appraisal Well within that ninety (90) day period, the approved identical Appraisal Well proposal shall be deemed withdrawn, with the effect as if the identical Appraisal Well proposal had never been proposed and approved, and the Non-Operating Parties may then select a substitute Operator under Article 4.2.2 *(Substitute Operator if Operator Fails to Commence Drilling Operations)*.   Within sixty (60) days of the selection of the substitute

57

APC-HEC1-000001667

Operator, the substitute Operator shall propose the drilling of an identical Appraisal Well (except for any necessary modifications resulting from a change in the drilling rig to be utilized by the substitute Operator), and it shall commence drilling operations on that well within ninety (90) days after the end of the period for the approval of that Well.

If a Party submits an identical Appraisal Well proposal (except for any necessary modifications resulting from a change in the drilling rig to be utilized by the Operator) within ninety (90) days after the deemed withdrawal of the approved original Appraisal Well proposal and if that identical Appraisal Well proposal is approved and if the Operator is not a Participating Party in the identical Appraisal Well proposal, the approved identical Appraisal Well proposal shall be deemed withdrawn, with the effect as if the identical Appraisal Well proposal had never been proposed and approved,  and the Non-Operating Parties may then select a substitute Operator under Article 4.2.1 *(Substitute Operator if Operator is a Non-Participating Party)*.  Within sixty (60) days of the selection of the substitute Operator, the substitute Operator shall propose the drilling of an identical Appraisal Well (except for any necessary modifications resulting from a change in the drilling rig to be utilized by the substitute Operator), and it shall commence drilling operations on that well within ninety (90) days after the end of the period for the approval of that Well.

If an approved original or identical Appraisal Well proposal is deemed withdrawn due to a failure to timely commence drilling operations on that well, all Costs incurred, which are attributable to the preparation for, or in furtherance of, that Appraisal Well, will be chargeable to the Participating Parties.  Drilling operations for an Appraisal Well under this Article 11.1.3 shall be deemed to have commenced on the date the rig arrives on location or, if the rig is already on location, the date when actual drilling operations for the approved Appraisal Well are undertaken.

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001668

### 11.1.4    AFE Overruns and Substitute Well

Once an Appraisal Well is commenced, the Operator shall drill the well with due diligence to its Objective Depth, subject to:

(a)    all supplemental AFEs required under Article 6.2.2 *(Supplemental AFEs)*;

(b)    the Operator encountering mechanical difficulties, uncontrolled influx of subsurface water, loss of well control, abnormal well or formation pressures, pressured or heaving shale, granite or other practicably impenetrable substances, or other similar conditions in the well bore or damage to the well bore that, in the Operator's sole opinion, render further well operations impractical; and

(c)    the unanimous agreement of the Participating Parties to cease drilling an Appraisal Well before reaching Objective Depth.

If an Appraisal Well is abandoned due to the conditions described under Article 11.1.4(b), then any Participating Party in the abandoned Appraisal Well may, within thirty (30) days after abandonment of that Appraisal Well, propose the drilling of a substitute well for the abandoned Appraisal Well by giving notice of the proposal (along with the associated AFE and Well Plan) to all other Participating Parties in the abandoned Appraisal Well, and that proposal requires approval by Election of the Participating Parties in the abandoned Appraisal Well. Notwithstanding any contrary provision of Article 11.5 *(Conclusion of Appraisal Operations)*, the substitute well shall be an Appraisal Well. The Well Plan for the substitute Appraisal Well shall be substantially the same as the abandoned Appraisal Well's Well Plan and shall also take into account the conditions that rendered further drilling of the abandoned Appraisal Well impractical.

Each Non-Participating Party in a substitute Appraisal Well or an approved supplemental AFE for an Appraisal Well will be subject to either an acreage forfeiture or Hydrocarbon Recoupment, as provided in Article 16 *(Non-Consent Operations)*.

59

CONFIDENTIAL

APC-HEC1-000001669

ACCESS RESTRICTED

## 11.2   Appraisal Operations at Objective Depth

After an Appraisal Well has been drilled to its Objective Depth and all operations in the controlling AFE have been conducted or terminated (except temporary abandonment and permanent plugging and abandonment) and all logs and test results have been distributed to the Participating Parties, the Operator shall promptly notify the Parties entitled to make an Election on an operation proposed under this Article 11.2 *(Appraisal Operations at Objective Depth)*, of its proposal to conduct subsequent operations in the well.   Except for a proposal to permanently plug and abandon the well, the Operator's proposal shall include an associated AFE and a plan for the operation.   The Parties entitled to make that Election are:

(a)   the Participating Parties, and

(b)   the Non-Participating Parties in the original well proposal, if (1) the subsequent Appraisal Operation proposal is made at the well's Objective Depth and is for a Sidetrack or Deepening and (2) Article 16.4 *(Non-Consent Operations to Maintain Contract Area)* was not applicable to the drilling of that Appraisal Well.

The Operator's proposal shall be for one of the following operations:

(a)   conduct Additional Testing, Sidewall Coring, or Logging of the formations encountered prior to setting production casing;

(b)   Sidetrack the well bore to core the formations encountered;

(c)   Sidetrack the well;

(d)   Deepen the well to a new Objective Depth;

(e)   conduct Production Testing;

(f)   conduct other operations on the well not listed;

(g)   temporarily abandon the well; or

(h)   permanently plug and abandon the well.

60

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001670

If the Appraisal Well is temporarily abandoned under (g), then any additional operation in that well shall be proposed as a new well operation. A proposal to complete an Appraisal Well that has been temporarily abandoned under clause (g) shall be deemed a Development Operation proposal.

If the Operator fails to submit its proposal to the Participating Parties within twenty-four (24) hours (inclusive of Saturdays, Sundays, and federal holidays) after receipt by the Participating Parties of all logs and test results from an Appraisal Well, then any Participating Party may make a proposal. In that event, the procedures in this Article 11.2 shall apply to that proposal, and any reference in this Article 11.2 to the "Operator's proposal" shall include a proposal made by a Participating Party.

### 11.2.1   Response to Operator's Proposal

A Participating Party may, within twenty-four (24) hours (inclusive of Saturdays, Sundays, and federal holidays) of its receipt of the Operator's proposal, make a separate proposal (along with an associated AFE and a plan for the operation, except if the proposal is to permanently plug and abandon the well) for one of the operations in Article 11.2 *(Appraisal Operations at Objective Depth)*, and the Operator, immediately after the expiration of the twenty-four (24) hour period for making a separate proposal shall provide the Parties entitled to make an Election with a copy of all separate proposals so made. If no separate proposal is made, the Parties entitled to make an Election shall, within forty-eight (48) hours (inclusive of Saturdays, Sundays, and federal holidays) of its receipt of the Operator's proposal, make an Election on the Operator's proposal (except for a proposal to permanently plug and abandon). If a separate proposal is made, the Parties entitled to make an Election shall make an Election under the procedure in Article 11.2.2 *(Response to Highest Priority Proposal)*. If a proposal to permanently plug and abandon the well is the only operation proposed, then the approval and Cost allocation provisions of Article 11.4 *(Permanent Plugging and Abandonment and Cost Allocation)* shall apply to that proposal. If Article 8.3 *(Second Opportunity to Participate)* or Article 8.4 *(Participation by Fewer Than All Parties)*, or both, apply to any Election in Article 11.2 *(Appraisal Operations at Objective Depth)*, then the response period in those

61

APC-HEC1-000001671

articles shall be twenty-four (24) hours (inclusive of Saturdays, Sundays, and federal holidays) instead of forty-eight (48) hours (exclusive of Saturdays, Sundays, and federal holidays). Notwithstanding any contrary provision of this Agreement, if one or more operations are proposed before the distribution of information from the previously approved operation, then the response periods provided above shall not begin until the Parties entitled to make an Election have received the information from the previously approved operation.

**11.2.2    Response to Highest Priority Proposal**

If a separate proposal is made, each Party entitled to make an Election shall, within twenty-four (24) hours (inclusive of Saturdays, Sundays, and federal holidays) after its receipt from the Operator of a complete copy of all separate proposals, make its Election on the highest priority proposal (except a proposal to permanently plug and abandon the well). Article 11.2(a) has the highest priority, and Article 11.2(h) has the lowest priority. If different depths or locations are proposed for the same type of operation, priority shall be given to the deepest depth. If the proposal with the highest priority is approved, then the lower priority proposals shall be deemed withdrawn. Once the approved operation is completed, the Parties shall follow the procedure provided in Article 11.2 *(Appraisal Operations at Objective Depth)* for all other proposals for operations in the well bore until such time as the well is temporarily abandoned or permanently abandoned.

**11.2.3    Response on Next Highest Priority Proposal**

If the proposal with the highest priority is not approved, then the next highest priority proposal shall be deemed the highest priority proposal and it shall be subject to the approval procedure in Article 11.2.2 *(Response to Highest Priority Proposal)*. This process will continue until a proposal is approved to either temporarily abandon or permanently plug and abandon an Appraisal Well.

62

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001672

**11.2.4**   <u>Non-Participating Parties in Appraisal Operations at Objective Depth</u>

A Non-Participating Party in an Appraisal Operation conducted on an Appraisal Well after it has reached its Objective Depth [except as provided for in this Article 11.2 *(Appraisal Operations at Objective Depth)*] is subject to Article 16.5.2 *(Non-Consent Appraisal Operations)* and is relieved of the Costs and risks of that Appraisal Operation, except that a Non-Participating Party in that Appraisal Operation remains responsible for its Participating Interest Share of the Costs of plugging and abandoning an Appraisal Well, less and except all Costs of plugging and abandoning associated solely with the subsequent Appraisal Operation in which it was a Non-Participating Party.

**11.2.5**   <u>Participation in a Sidetrack or Deepening by a Non-Participating Party in an Appraisal Well at Initial Objective Depth</u>

If an Appraisal Well is drilled to its Objective Depth and a Non-Participating Party in that Appraisal Well becomes a Participating Party in an approved Sidetracking or Deepening under Article 11.2(c) or (d), that former Non-Participating Party shall become an Underinvested Party in an amount equal to its Non-Participating Interest Share of the Costs of that Appraisal Well to its Objective Depth prior to that Sidetracking or Deepening.  The original Participating Parties in that Appraisal Well are Overinvested Parties in that amount.  A former Non-Participating Party in an Appraisal Well that becomes a Participating Party in an approved Sidetracking or Deepening, remains a Non-Participating Party in the Appraisal Well to initial Objective Depth until (a) its Underinvestment is eliminated under Article 16.9 *(Settlement of Underinvestments),* and (b) the Hydrocarbon Recoupment recoverable under Article 16.5.2 *(Non-Consent Appraisal Operations)* less the Underinvestment, has been recovered by the original Participating Parties.  If a former Non-Participating Party becomes a Participating Party in more than one approved Sidetracking or Deepening in the same Appraisal Well, that former Non-Participating Party shall become an Underinvested Party only with regard to the first Sidetracking or Deepening it approves; however, that Underinvestment shall not be relieved by an Underinvested Party's subsequent participation.

63

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001673

**11.3** **Appraisal Well Proposals That Include Drilling Below the Deepest Producible Reservoir**

Any Party may propose an Appraisal Well with an Objective Depth below the Deepest Producible Reservoir, and in response to that well proposal each Party may in writing limit its participation in the drilling of that Appraisal Well to the base of the Deepest Producible Reservoir to be penetrated by that Appraisal Well. A Party who limits its participation in an Appraisal Well to the base of the Deepest Producible Reservoir shall bear its Participating Interest Share of the Cost and risk of drilling that Appraisal Well to the base of the Deepest Producible Reservoir (including abandonment), and it shall be a Non-Participating Party for the Deeper Drilling and shall be subject to Article 16.5.2 *(Non-Consent Appraisal Operations)* in regard to drilling between those depths.

**11.4** **Permanent Plugging and Abandonment and Cost Allocation**

The permanent plugging and abandonment of an Appraisal Well that:

(a)   is to be plugged due to mechanical difficulties or impenetrable conditions before the well has been drilled to its Objective Depth under Article 11.1.4 (b),

(b)   is to be plugged under Article 11.2 *(Appraisal Operations at Objective Depth)*, or

(c)   has been previously temporarily abandoned under Article 11.2 *(Appraisal Operations at Objective Depth)*

and has not produced Hydrocarbons (other than as a result of Production Testing) requires the approval of the Participating Parties by Vote. Approval to plug and abandon an Appraisal Well that has produced Hydrocarbons (other than as a result of Production Testing) shall be governed by Article 18.1 *(Abandonment of Wells).* If a proposal to plug and abandon an Appraisal Well receives approval by Vote, the approved proposal binds all Parties. If any Participating Party fails to respond within the applicable response period for a proposal to plug and abandon an Appraisal Well, that Participating Party shall be deemed to have approved the plugging and abandonment of that Appraisal Well. If a rig is on location and a proposal to plug and abandon an Appraisal Well under either Article 11.4(a) or 11.4(b) does not receive approval by Vote, and if within twenty-four (24) hours (inclusive of Saturdays, Sundays, and federal

64

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001674

holidays) from receipt of that proposal no other operation is proposed (and subsequently approved) for the well by a Party entitled to make a proposal, the Operator may nevertheless proceed to plug and abandon that Appraisal Well, and shall give each Participating Party notice of that fact.  If the proposal to plug and abandon an Appraisal Well that has not produced Hydrocarbons (other than as a result of Production Testing) does not receive approval by Vote, but the Operator deems the well bore not to be safe or in sound enough condition for it to perform further operations, the Operator may nevertheless proceed to plug and abandon that Appraisal Well, and shall give each Participating Party notice of that fact.

The Participating Parties in an Appraisal Well proposal shall pay all Costs of plugging and abandoning that Appraisal Well, except all increased plugging and abandoning Costs associated solely with a Non-Consent Operation approved under Article 11.2 *(Appraisal Operations at Objective Depth)* or Article 6.2.2 *(Supplemental AFEs)*.  The Participating Parties in that Non-Consent Operation are responsible for the increased plugging and abandoning Costs attributable to that Non-Consent Operation.

**11.5   Conclusion of Appraisal Operations**

Upon the earlier of:

(a)   the approval of the conclusion of Appraisal Operations by Vote; or

(b)   the point in time when no Appraisal Operation has been approved within a period of twelve (12) months from the rig release (or cessation of operations) from the previous Appraisal Operation; or

(c)   the abandonment of the third (3rd) Appraisal Well, whether permanent or temporary, and the release of the rig from that Appraisal Well (including any substitute well for that Appraisal Well)

Appraisal Operations for the ensuing Development Phase shall conclude and all subsequent operations in the Contract Area will be Development Operations for the ensuing Development Phase, including operations on temporarily abandoned Appraisal Wells, except as provided in Article 11.6 *(Operations Before the Approval of the Development Plan)*.

65

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001675