UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig<br>"Deepwater Horizon" in the Gulf<br>of Mexico, on April 20, 2010<br><br>This Document Relates to:<br>*Rhodes v. Transocean, Ltd.*, et al.<br>No. 10-01502 | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* | MDL No. 2179<br><br>SECTION "J"<br>JUDGE BARBIER<br><br><br>MAGISTRATE NO. 1<br>MAGISTRATE SHUSHAN |

\* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANTS
ANADARKO PETROLEUM CORPORATION AND MOEX OFFSHORE 2007 LLC
TO DISMISS COMPLAINT PURSUANT TO FED R. CIV. P. 12(b)(6)**

**I.
INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Anadarko Petroleum Corporation ("Anadarko") and MOEX Offshore 2007 LLC ("MOEX Offshore") move to dismiss Plaintiff's Complaint against them in its entirety.

*First*, Plaintiff fails as a matter of law to state a claim for negligence under the general maritime law against Anadarko or MOEX Offshore because his own allegations conclusively establish that they owed no legal duty to Plaintiff. It is fundamental that a duty to prevent harm resulting from oil and gas operations arises as a consequence of control over the operations. *Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548, 550 (5th Cir. 1987), *cert. denied,* 485 U.S. 1034 (1988). Yet Plaintiff makes no allegation that Anadarko or MOEX Offshore owned or possessed a charterer interest in the *Deepwater Horizon* or had any operational control over the rig or the well out of which a duty to Plaintiff could have arisen. To the contrary, Plaintiff alleges that BP operated the oil well and that BP and Transocean operated and controlled the *Deepwater*

*Horizon*. Compl. ¶ 5.

*Second*, Plaintiff fails to state a claim against Anadarko or MOEX Offshore under the Jones Act because he alleges that Plaintiff was employed by Transocean, not by Anadarko or MOEX Offshore. Compl. ¶ 4; *see Baker v. Raymond Int'l, Inc.* 656 F.2d 173, 177 (5th Cir. 1981) (holding that the Jones Act "is applicable only if the employment relationship exists") (citations omitted).

Finally, even if Plaintiff could state a claim against Anadarko or MOEX Offshore, Plaintiff has no right to recover non-pecuniary damages (loss of enjoyment of life, mental anguish, and punitive damages). *Miles v. Apex Mar. Corp.*, 498 U.S. 19, 31–32 (1990).

## II.
## FACTUAL ALLEGATIONS IN THE COMPLAINT

Plaintiff alleges that "[a]t all times material, including April 20, 2010, Transocean Deepwater, Inc. and/or Transocean Entity employed Karl W. Rhodes as a Jones Act seaman and a member of the crew of a semi-submersible mobile drilling unit known as the *Deepwater Horizon* . . . ." Compl. ¶ 4. He alleges that Transocean and/or BP "owned and/or operated and/or managed and/or chartered and/or controlled . . . the *Deepwater Horizon*" during "all times pertinent herein." *Id*. ¶ 5. Plaintiff alleges that "[o]n April 20, 2010 at about 10:00 p.m.," he "was injured when an explosion or explosions and fire . . . occurred aboard the vessel." *Id*. ¶ 8. Plaintiff alleges that he sustained physical injuries and that he has sustained "mental anguish, distress, depression," and other injuries. *Id*. ¶ 13.

Plaintiff alleges that BP holds a "lease granted by the Minerals Management Service ('MMS') that allows BP to drill for oil and perform oil-production-related operations at the Macondo site," and that "[a]s of April 20, 2010, BP operated the Macondo oil well that is the source of the current oil spill." Second Supplemental and Amended Complaint ("SSAC")

2

¶ 1(C). Plaintiff's original Complaint did not mention Anadarko or MOEX Offshore or assert any claims against them. His Second Amended Complaint added both companies as defendants, alleging that "Anadarko owns a 25% interest in the Macondo oil well," *id*. ¶ 1(D), and that "MOEX holds a 10% interest in the Macondo oil well." *Id*. ¶ 1(F). Plaintiff does not allege that Anadarko or MOEX Offshore had any ownership or charter's interest in the *Deepwater Horizon*, nor does he allege that these Defendants had any operational control over the rig or the well.

Based on these allegations, Plaintiff purports to assert a claim under the general maritime law and as a Jones Act seaman. Compl. ¶¶ 2, 6, 17, 19.

## III.
## ARGUMENT

### THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILS TO STATE A CLAIM AGAINST ANADARKO OR MOEX OFFSHORE UPON WHICH RELIEF CAN BE GRANTED

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555); *see also Hershey v. Energy Transfer Partners*, 610 F.3d 239, 245–46 (5th Cir. 2010) (same).

To state a claim for relief, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). If there are insufficient factual allegations to raise a right to relief "'above the speculative level,'" *Jebaco, Inc. v. Harrah's Operating Co.*,

587 F.3d 314, 318 (5th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555), or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007), the claim should be dismissed.  In the latter circumstance, which fully applies here, the plaintiff "pleads himself out of court by 'admitting all the ingredients of an impenetrable defense.'"  *Barasich v. Shell Pipeline Co.*, Nos. 05-4180, 05-4197, 05-4199, 05-4212, 05-4512, 06-5102, 2006 WL 3913403, at *2 (E.D. La. Nov. 20, 2006) (Barbier, J.) (internal citations omitted) (granting Rule 12(b)(6) dismissal in part).

### A. Plaintiff Fails to Allege Any Facts Supporting His Allegations That Anadarko and MOEX Offshore Are Liable for Maritime Negligence.

The Complaint contains no facts from which the Court plausibly could infer that Anadarko or MOEX Offshore is liable to Plaintiff under the general maritime law or the Jones Act.[1]  To the contrary, the facts alleged make clear that, as a matter of law, Plaintiff cannot state a claim against Anadarko and MOEX Offshore for which relief can be granted.

#### 1. The Complaint Contains No Facts That, If True, Would Render Anadarko or MOEX Offshore Directly Liable for Maritime Negligence.

##### a. As a Matter of Law, Anadarko and MOEX Offshore Did Not Owe Plaintiff Any Duty of Care.

"To establish maritime negligence, a plaintiff must 'demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by [the] plaintiff, and a causal connection between the defendant's conduct and the plaintiff's injury.'"  *Canal Barge Co. v. Torco Oil Co.*, 220 F.3d 370, 376 (5th Cir. 2000) (quoting *In re Cooper/T. Smith*, 929 F.2d 1073, 1077 (5th Cir. 1991)).

Plaintiff alleges no facts from which the Court could infer that Anadarko or MOEX

---

[1]  The Complaint cites "46 U.S.C. § 688," the superseded codification of the Jones Act.  *See* Compl. ¶ 2.  The Jones Act is now codified at 46 U.S.C. § 30104.

4

Offshore owed him any legal duty because Plaintiff does not allege that Anadarko or MOEX Offshore controlled or had any right to control the operations of the *Deepwater Horizon*. *See generally In re Graham Offshore, Inc.*, 287 F.3d 352, 359 (5th Cir. 2002) (owner of mobile oil rig owed no duty to injured employee of subcontractor). It is fundamental that a duty to prevent harm resulting from oil and gas operations arises as a consequence of control over the operations. *See, e.g.*, *Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548, 550 (5th Cir. 1987), *cert. denied*, 485 U.S. 1034 (1988). Further, it is settled that where a principal retains an independent contractor to conduct oil and gas operations but does not retain control over or participate in the actions of the contractor, the principal neither assumes nor owes any duty to the contractor's employees. *Thomas v. Burlington Res. Oil & Gas Co.*, No. Civ. A. 99-3904, 2000 WL 1528082, at *2 (E.D. La. Oct. 13, 2000) (Barbier, J.). Even when a principal without control over or participation in the operation has *actual knowledge* of dangerous conditions on an oil rig, the principal has no legal duty to intercede. *See id.*; *Ronquille v. MMR Offshore Servs., Inc.*, 353 F. Supp. 2d 680, 682 (E.D. La. 2004) (the presence of a company representative on an oil platform with knowledge of the rig's operations "is insufficient to create a duty; therefore, the law does not support the imposition of liability for any failure to intercede").[2]

*Ainsworth* is instructive and is cited by courts applying both Louisiana law and the general maritime law. *See, e.g.*, *Gremillion v. Gulf Coast Catering Co.*, No. 88-4544, 1989 WL 104100, at *6 (E.D. La. Sept. 5, 1989), *aff'd*, 904 F.2d 290 (5th Cir. 1990) (citing *Ainsworth* in

---

[2]   Plaintiff also "pleads the doctrine of *res ipsa loquitur*." Compl. ¶ 11. That is a legal conclusion, not a factual allegation assumed to be true on a motion to dismiss. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). In addition, as a legal matter, res ipsa loquitur applies only "when a thing which causes injury . . . is shown to be under the exclusive control of the defendant." *Fruge v. Penrod Drilling Co.*, 918 F.2d 1163, 1166 (5th Cir. 1990) (quoting *San Juan Light & Transit Co. v. Requena*, 224 U.S. 89, 98–99 (1912)). The Complaint's allegations showing Anadarko's and MOEX Offshore's lack of control make res ipsa loquitur inapplicable to Anadarko and MOEX Offshore.

5

tort case under maritime law); *Fontenot v. Southwestern Offshore Corp.*, 787 So.2d 588, 594 (La. Ct. App. 2001) (tort case under maritime law).  In *Ainsworth*, Shell hired an independent contractor, Hercules, to erect an offshore drilling rig.  829 F.2d at 549.  Hercules worked its crews around the clock, with no lights in the work area, and a worker fell as a result.  *Id.*  Shell had a "company man" on the rig who was aware of the hazardous conditions, but Shell retained no control over and did not participate in the operation of the rig.  The Fifth Circuit rejected the plaintiff's argument that Shell's knowledge of the danger made it directly liable for the injury and held instead that because Shell lacked control over the operation, it had no duty to intervene.  *Id.* at 551.

A similar analysis pertains here because Plaintiff's allegations fall far short of even the *Ainsworth* facts. Plaintiff's sole allegation that even mentions Anadarko is that the company "owns a 25% interest in the Macondo oil well."  SSAC ¶ 1(D).  Likewise, his sole allegation against MOEX Offshore is that "MOEX holds a 10% interest in the Macondo oil well."  *Id.* ¶ 1(F).  A minority ownership interest in a well does not plausibly create a duty to someone else's employee working onboard someone else's vessel.  *See In re Graham Offshore, Inc.*, 287 F.3d 352, 359 (5th Cir. 2002).  The Complaint is devoid of any facts alleging conduct by Anadarko or MOEX Offshore in breach of any duty.  Nor does the Complaint allege any facts that Plaintiff's injuries resulted from any act by Anadarko or MOEX Offshore.  To the contrary, Plaintiff's express allegations that "*BP* operated the Macondo oil well that is the source of the current oil spill," SSAC ¶ 1(C) (emphasis added), and that "[a]t all times pertinent herein," Transocean and BP operated and controlled the *Deepwater Horizon*, Compl. ¶ 5, negate any inference that Anadarko or MOEX Offshore conducted any of the *operations* on the *Deepwater Horizon* that allegedly led to Plaintiff's injuries and establish that Plaintiff is not entitled to relief.

*See Jones v. Bock*, 549 U.S. 199, 215 (2007) ("if the allegations, taken as true, show the plaintiff is not entitled to relief," then the "complaint is subject to dismissal").

If in *Ainsworth* a company man on the rig with actual knowledge of a dangerous situation had no duty to intercede because he lacked control over the operation of the rig, it necessarily follows that Anadarko and MOEX Offshore had no duty to Plaintiff. Both were hundreds of miles away from the rig, both lacked any *contractual relationship with the Plaintiff's employer*, and neither are alleged to have had any actual knowledge of a dangerous situation.[3]

> **b.    Plaintiff Cannot State a Claim Against Anadarko and MOEX Offshore by Indiscriminately Lumping Them Together with Other Defendants Whose Relationship to Plaintiff Was Fundamentally Different.**

The Complaint is replete with conclusory allegations against the "defendants." Plaintiff improperly lumps together with broad and ambiguous factual assertions entities that are differently situated. As the plaintiffs in Amended B1 Bundle Master Complaint recognize, Anadarko and MOEX Offshore, as non-operating investors, are not similarly situated to the defendants who actually controlled the drilling operations on the *Deepwater Horizon*.[4] In

---

[3] Plaintiff's allegations against Anadarko and MOEX Offshore contrast sharply with Plaintiff's allegations against drilling defendants such as Transocean on this point. Unlike Anadarko and MOEX Offshore, Transocean is expressly alleged to have either controlled, approved, or participated in the drilling, cementing, and temporary well abandonment activities of the *Deepwater Horizon* that allegedly caused Plaintiff harm. Compl. ¶ 5; *see also Denson v. Diamond Offshore Co.*, 955 So.2d 730, 733–34 (La. Ct. App. 2007) (distinguishing *Ainsworth*, 829 F.2d, *Wallace v. Oceaneering Int'l*, 727 F.2d 427 (5th Cir. 1984), and *McCormack v. Noble Drilling Corp.*, 608 F.2d 169 (5th Cir. 1979) because evidence showed company man on oil rig was involved in operations in that case).

[4] The B1 Bundle plaintiffs divide the named defendants into three distinct groups: (1) "the Drilling Defendants," including BP, Transocean, Halliburton, and M-1, who are alleged to have operated or participated in the operations of the *Deepwater Horizon*, Amend. Mast. Compl. B1 ¶¶ 210–29; (2) the products liability defendants, including Weatherford and Cameron, who are alleged to have manufactured defective products used on the *Deepwater Horizon*, *id.* ¶¶ 230–32; and (3) the non-operating investor defendants, including Anadarko Petroleum Corporation, Anadarko E&P Company, LP, MOEX Offshore 2007, LLC, MOEX USA Corporation, and

contrast, Plaintiff in this case alleges in paragraph 9 of the Complaint that the accident was "caused directly and proximately by the combined or individual negligence and fault of the defendants . . . ;" alleges in paragraph 11 that the "incident could not have occurred absent the negligent conduct of one or all of the defendants herein . . . ;" and alleges in paragraph 12 that "this incident was caused by defective equipment that was manufactured or in the care, custody, and control of one or more of the defendants."

As an initial matter, those generalized, undifferentiated allegations fail to satisfy the notice pleading requirement of Federal Rule of Civil Procedure 8. *See Pro Image Installers, Inc. v. Dillon*, No. 3:08cv273/MCR/MD, 2009 WL 112953, at *2 (N.D. Fla. Jan. 15, 2009) (dismissing complaint that inadequately distinguished between the separate defendants); *Lane v. Capital Acquisitions & Mgmt. Co.*, No. 04-60602CIV, 2006 WL 4590705, at *5 (S.D. Fla. Apr. 14, 2006) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, the Lane's Complaint fails to satisfy the minimum standard of Rule 8") (citation omitted). Here, the lumping-together allegations are particularly inadequate in light of Plaintiff's concession that BP and Transocean were the entities that had control over drilling operations and activities.

Plaintiff's generalized allegations also "do not suffice" because they are, at most, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). They are prototypes of the "unadorned, the-defendant-unlawfully-harmed-me accusation" that the Supreme Court has held insufficient. *Id.*; *see also Jebaco, Inc. v. Harrah's Operating Co.*, 587 F.3d 314, 318 (5th Cir. 2009) ("the complaint must allege 'more than labels and conclusions'") (quoting *Bell Atl. Corp.*

---

Mitsui Oil Exploration Co., who are alleged to be "non-operational leaseholders" of the Macondo well where the Drilling Defendants conducted their operations. *Id.* ¶¶ 233–50.

*v. Twombly*, 550 U.S. 544, 555 (2007)).

In sum, the Complaint alleges no facts that show that Anadarko or MOEX Offshore could be directly liable on a claim of maritime negligence. Instead, Plaintiff alleges facts that show as a matter of law that Anadarko and MOEX Offshore cannot be held so liable.

> **2.    The Complaint Contains No Facts From Which Anadarko or MOEX Offshore Could be Found Vicariously Liable for Maritime Negligence.**

Plaintiff's sole allegations that relate specifically to Anadarko and MOEX Offshore are that they own a minority interest in the Macondo well, which was operated by BP. SSAC ¶¶ 1(C), (D), (F). Having a minority ownership interest in a lease that is operated by someone else is not a legally sufficient basis on which to impose vicarious liability for the negligence of the operator. *Burlington Res., Inc. v. United Nat'l Ins. Co.*, 481 F. Supp. 2d 567, 573 (E.D. La. 2007) ("a non-operator of a well is not liable for the tortious acts of the operator," so the relationship "in no way created any type of vicarious tort liability . . ."). Before a non-actor can be held liable for the tortious conduct of another, there must be a sufficient relationship among the parties to permit imputation of liability to the non-actor. *See generally St. Paul Fire and Mar. Ins. Co. v. Vest Transp. Co.*, 666 F.2d 932, 937 (5th Cir. 1982) (considering in case of maritime casualty whether parties were "in a joint venture at the time of the casualty so as to impute" one party's negligence to the other); *see also Johnson v. Peerless Ins. Co.*, 299 So.2d 434, 436 (La. Ct. App. 1974) ("[I]n order to hold a third party liable for the damage caused by a tort-feasor[,] plaintiff must allege and prove a relationship which forms the legal basis for the third party's vicarious liability").

The Fifth Circuit "equates vicarious liability with control." *Hajtman v. NCL (Bahamas) Ltd.*, 526 F. Supp. 2d 1324, 1327 (S.D. Fla. 2007) (citing *Barbetta v. Bermuda Star*, 848 F.2d 1364, 1369 (5th Cir. 1988)). Thus, in *Sasportes v. M/V Sol de Copacabana*, the Fifth Circuit

9

explained that while a "joint venture" could support a finding of vicarious liability, such joint ventures must "involve joint control or the joint right of control." 581 F.2d 1204, 1208 (5th Cir. 1978). Here, Plaintiff does not contend, and certainly does not allege any facts from which the Court could infer, that there was a joint venture with joint control. "[I]n determining whether a joint venture exists . . . [p]ertinent factors include: (1) *the existence of joint control, or a joint right of control, relevant to the vessel's operations*, (2) joint proprietary interests in the subject matter of the venture, and (3) a sharing of profits and losses." *Hinson v. M/V Chimera*, 661 F. Supp. 2d 614, 619 (E.D. La. 2009) (emphasis added, citations omitted). Furthermore, "the parties' intentions are important." *Sasportes*, 581 F.2d at 1208 (citation omitted).

Applying this standard, courts have held that a non-operating partner of a mining operation does not have vicarious liability for the negligence of the operating partner where, as here, the non-operating partner does not have authority to control the enterprise. *See, e.g.*, *James v. Nico Energy Corp.*, 838 F.2d 1365, 1373 (5th Cir. 1988) (no joint venture where one party's involvement in oil wells was limited to investment of capital and another party had "the sole right of control in drilling and operating of wells"); *Transcon. Gas Pipe Line Corp. v. Mr. Charlie*, 294 F. Supp. 1025, 1031 (E.D. La. 1968), *aff'd in relevant part and rev'd in part on other grounds*, 424 F.2d 684 (5th Cir. 1970), *cert. denied*, 400 U.S. 832 (1970) (no indirect liability under maritime law for non-operating co-owners of oil and gas lease where designated operator, but not non-operators, was negligent); *Bolivar v. R & H Oil and Gas Co.*, 789 F. Supp. 1374, 1381–82 (S.D. Miss. 1991) (one who has no right to control operations at gas well may not be held liable as joint venturer).[5]

---

[5]   *See also Blocker Exploration Co. v. Frontier Exploration, Inc.,* 740 P.2d 983, 988 (Colo. 1987) (no joint venture where non-operating owner merely invested funds and there was no right of participation in management and control of operation); *Archer v. Bill Pearl Drilling Co.*, 655

Plaintiff does not allege that Anadarko or MOEX Offshore exercised control, or had any right to control, any relevant activity. To the contrary, Plaintiff alleges that "BP operated the Macondo oil well," SSAC ¶ 1(C), and that "[a]t all times pertinent herein, including April 20, 2010, Triton Asset Leasing GmbH, Transocean Holdings LLC, Transocean Offshore Deepwater Drilling Inc., and Transocean Deepwater Inc., and/or Transocean Entity and/or BP Entity owned and/or operated and/or managed and/or chartered and/or controlled or, alternatively, was the demise or bareboat charterer or owner *pro hac vice* of the *Deepwater Horizon*." Compl. ¶ 5. By affirmatively alleging that defendants *other than* Anadarko and MOEX Offshore "operated" the well, and "operated," "managed," and "controlled" the *Deepwater Horizon* "at all material times," Plaintiff's own allegations conclusively establish that Anadarko and MOEX Offshore cannot be held vicariously liable under maritime law.

In sum, the Complaint contains no factual allegations that would support a finding that Anadarko and MOEX Offshore are vicariously liable for other defendants' negligence or gross negligence under the general maritime law. Rather, Plaintiff's own allegations preclude any finding of liability as a matter of law. Because neither direct nor vicarious liability has been adequately alleged, the Court should dismiss Plaintiff's claims for maritime negligence as to Anadarko and MOEX Offshore.

**B.    Plaintiff Fails to State a Claim Against Anadarko or MOEX Offshore Under the Jones Act.**

Plaintiff attempts to assert a claim under the Jones Act, but the Complaint is unclear concerning which defendants Plaintiff is suing under the Act. Compl. ¶¶ 17, 19. If

---

S.W.2d 338, 344 (Tex. App. 1983) (no joint venture in negligence action as a matter of law where co-owner merely invested in venture but exercised no right to participate in control or operation of drill site); *Ayco Dev. Corp. v. G.E.T. Serv. Co.*, 616 S.W.2d 184, 186 (Tex. 1981) (no joint venture where defendants merely invested by paying costs of drilling well but did not participate in actual drilling, operation, and control of the well).

11

Plaintiff is asserting a Jones Act claim against Anadarko and MOEX Offshore, it is flawed as a matter of law and must be dismissed.

The Jones Act gives an injured seaman the right to bring an action "against the *employer*." 46 U.S.C. § 30104 (emphasis added). The Jones Act "is applicable only if the employment relationship exists." *Baker v. Raymond Int'l, Inc*. 656 F.2d 173, 177 (5th Cir. 1981) (citations omitted). Here, Anadarko and MOEX Offshore did not employ Plaintiff. Instead, "[a]t all times material . . . Transocean Deepwater, Inc., and/or Transocean Entity employed Karl W. Rhodes . . . ." Compl. ¶ 4; *see also id*. ¶ 17 ("As petitioner's Jones Act employer, Transocean Deepwater, Inc. and/or Transocean Entity has an absolute, nondelegable duty . . ."). Plaintiff also does not allege that either Anadarko or MOEX Offshore had "the power to control and direct" him "in the performance of (his) work" to support a Jones Act claim under the "borrowed servant doctrine." *Baker*, 656 F.2d at 178 (quoting *Gaudet v. Exxon Corp.*, 562 F.2d 351, 355 (5th Cir. 1977)) (internal quotation marks omitted). Again, the facts alleged conclusively establish the absence of any such control. Thus, Plaintiff fails to state a claim against Anadarko or MOEX Offshore under the Jones Act. *See, e.g.*, *Perkins v. Union Barge Line Corp.*, 373 F.2d 714, 716 (6th Cir. 1967) (affirming dismissal of complaint where the plaintiff "does not allege that respondent was his employer in fact, and his pleaded facts do not state a case under 'the loaned servant' doctrine") (citations omitted).

**C.     Plaintiff's Claims for Non-Pecuniary Damages Should Be Dismissed.**

Plaintiff seeks non-pecuniary damages, including mental anguish, distress, and punitive and exemplary damages, Compl. ¶ 14, but these remedies are unavailable under the general maritime law and the Jones Act. The Fifth Circuit has held that under general maritime law, a Jones Act seaman cannot recover non-pecuniary damages from third-party non-employers, such as Anadarko and MOEX Offshore. *Scarborough v. Clemco Indus.*, 391 F.3d 660, 668 (5th Cir.

12

2004), *cert. denied*, 544 U.S. 999 (2005) ("[T]he court finds that neither one who has invoked his Jones Act seaman status nor his survivors may recover nonpecuniary damages from non-employer third parties"). Non-pecuniary damages are also unrecoverable under the Jones Act. *Miles v. Apex Mar. Corp.*, 498 U.S. 19, 32 (1990) (holding that "the pecuniary limitation on damages" was incorporated "into the Jones Act"); *see also Dunham v. Expro Ams., Inc.*, 423 F. Supp. 2d 664, 668 (S.D. Tex. 2003) ("Plaintiffs' potential recovery is limited to pecuniary losses. Hence, Plaintiffs are barred from seeking punitive damages").[6] Even if Plaintiff could state a claim for relief against Anadarko or MOEX Offshore, which for the reasons explained above he manifestly cannot, his claims for non-pecuniary damages should be dismissed.

## IV.
## CONCLUSION

For the foregoing reasons, the claims asserted in the Complaint against Anadarko and MOEX Offshore fail as a matter of law and should be dismissed in their entirety. In the alternative, Plaintiff's claims for non-pecuniary loss should be dismissed.

Respectfully submitted,

BINGHAM McCUTCHEN LLP

/s/ *Ky E. Kirby*_____
Ky E. Kirby
ky.kirby@bingham.com
David B. Salmons
david.salmons@bingham.com
Michael B. Wigmore
michael.wigmore@bingham.com
Warren Anthony Fitch
tony.fitch@bingham.com

---

[6] *Atlantic Sounding Co., Inc. v. Townsend*, in which the Court recognized a punitive damages remedy for wrongful failure to pay maintenance and cure, offers Plaintiff no relief. 129 S. Ct. 2561 (2009). In that decision, the Court restated the *Miles* conclusion that Congress has limited Jones Act remedies to pecuniary losses. *Id.* at 2564.

13

Randall M. Levine
randall.levine@bingham.com
2020 K Street, NW
Washington, DC 20006-1806
Telephone (202) 373-6000
Facsimile (202) 373-6001

James J. Dragna
jim.dragna@bingham.com
Bingham McCutchen LLP
355 South Grand Avenue
Suite 4400
Los Angeles, California 90071-3106
Telephone (213) 680-6436
Facsimile (213) 680-8636

KUCHLER POLK SCHELL
WEINER & RICHESON, LLC

Deborah D. Kuchler, T.A. (La. Bar No. 17013)
dkuchler@kuchlerpolk.com
Janika Polk (La. Bar No. 27608)
jpolk@kuchlerpolk.com
Robert Guidry (La. Bar No. 28064)
rguidry@kuchlerpolk.com
1615 Poydras Street, Suite 1300
New Orleans, LA  70112
Tel:  (504) 592-0691
Fax:  (504) 592-0696

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, pursuant to Pre-trial Order No. 12, I have caused the foregoing to be served on all counsel via the Lexis Nexis File & Serve system, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, who will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on February 11, 2011.

                                                             /s/ *Ky E. Kirby*
                                                             Ky E. Kirby