## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | : : : : | MDL No. 2179<br><br>SECTION: J |
| This Document Relates To: Crawford v. BP p.l.c., et al.<br>……………………………………………... | : : : | JUDGE BARBIER<br>MAGISTRATE SHUSHAN |

### THE BP PARTIES' ANSWER TO DOUG
### CRAWFORD'S CLASS ACTION COMPLAINT

Defendants BP p.l.c., BP Products North America Inc. ("BPPNA"), BP America Inc. ("BPA"), BP America Production Company ("BPAP"), and BP Exploration & Production Inc. ("BPXP") (collectively, "the BP Parties"), by their undersigned counsel, and pursuant to Rule 8 of the Federal Rules of Civil Procedure, hereby answer the Class Action Complaint filed by Doug Crawford individually and on behalf of others similarly-situated, as follows:

1. This is a class action brought pursuant to Rule 23 of the Federal Rules of Civil Procedure.

**ANSWER**

The BP Parties admit that plaintiff purports to bring this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.  The BP Parties deny that this action is properly maintained as a class action or that plaintiff has otherwise stated a valid claim.  The BP Parties deny the remaining allegations of this paragraph.

### I.     PARTIES

### A.     Plaintiffs

2. Named Plaintiff Doug Crawford is a citizen and domiciliary of the State of Mississippi, residing in Mendenhall, Mississippi, who worked aboard the drilling vessel Deepwater Horizon at the time of the incident of April 20, 2010 which gives rise to this litigation, and who sustained personal injuries in connection with same.

### ANSWER

The BP Parties deeply regret the *Deepwater Horizon* accident on April 20, 2010, and

offer their deepest sympathies to the rig personnel who suffered injuries because of the tragic

accident.  The BP Parties, however, lack knowledge or information sufficient to form a belief

about the truth of the allegations of this paragraph, and therefore deny them.

### B.     Defendants

3. Defendant BP, P.L.C., ("BP") a foreign corporation doing business in the State of Louisiana and within this district.

### ANSWER

The BP Parties admit that BP p.l.c. is a foreign corporation.  The BP Parties deny the

remaining allegations of this paragraph.

4. BP Products North America, Inc., ("BP Products") a foreign corporation doing business in the State of Louisiana and within this district.

### ANSWER

The BP Parties admit the allegations of this paragraph.

5. BP America, Inc., ("BP America") a foreign corporation doing business in the State of Louisiana and within this district.

### ANSWER

The BP Parties admit that BPA is a foreign corporation.  The BP Parties deny the

remaining allegations of this paragraph.

2

6. BP America Production Company, ("BP America Production") a foreign corporation doing business in the State of Louisiana and within this district.

**ANSWER**

The BP Parties admit the allegations of this paragraph.

7. BP Exploration & Production, Inc., ("BP E&P") a foreign corporation doing business in the State of Louisiana and within this district.

**ANSWER**

The BP Parties admit the allegations of this paragraph.

8. Anadarko E&P Company LP, ("Anadarko E&P") a foreign limited partnership doing business in the State of Louisiana and within this district.

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth

of the allegations of this paragraph, and therefore deny them.

9. Anadarko Petroleum Corporation, ("Anadarko Petroleum") a foreign corporation doing business in the State of Louisiana and within this district.

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth

of the allegations of this paragraph, and therefore deny them.

10. MOEX Offshore 2007 L.L.C., ("MOEX") a foreign limited liability company doing business in the State of Louisiana and within this district.

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth

of the allegations of this paragraph, and therefore deny them.

11. Halliburton Energy Services, Inc., ("Halliburton Energy") a foreign corporation doing business in the State of Louisiana and within this district.

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth

of the allegations of this paragraph, and therefore deny them.

12. Cameron International Corporation (f/k/a Cooper Cameron Corporation), ("Cameron") a foreign corporation doing business in the State of Louisiana and within this district.

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth

of the allegations of this paragraph, and therefore deny them.

13. M-I, L.L.C. (using the trade name "SWACO" or "M-I SWACO"), ("SWACO") a foreign limited liability company doing business in the State of Louisiana and within this district.

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth

of the allegations of this paragraph, and therefore deny them.

## II.    JURISDICTION AND VENUE

14. This Court has jurisdiction over this class action pursuant to (1) 28 U.S.C. §1332(d)(2), as the matter in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, and it is a class action brought by citizens of a state different from the state of any defendant; (2) 28 U.S.C. § 1331, because the claims asserted herein arise under the laws of the United States of America, including the laws of the neighboring states which have been declared, pursuant to 43 U.S.C. §§ 1331 (f)(1) and 1333(a)(2), to be the law of the United States for that portion of the outer Continental Shelf from which the oil spill originated; (3) 43 U.S.C. § 1332(1), which extends exclusive federal jurisdiction to the Outer Continental Shelf; (4) 28 U.S.C. § 1332, as the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states and citizens of a state and subjects of a foreign state; and (5) 28 U.S.C. § 1333(1), because certain claims herein arise under the General Maritime Law, saving to suitors other remedies to which they are otherwise entitled.

**ANSWER**

The BP Parties admit that Plaintiff purports to bring this action pursuant to 28 U.S.C. § 1332(d)(2), 28 U.S.C. § 1331, 43 U.S.C. §§ 1331(f)(1) and 1333(a)(2), 43 U.S.C. §1332, and 28 U.S.C. § 1333(1), and the general maritime law of the United States and that this Court has jurisdiction over Plaintiff's claims.  The BP Parties deny that Plaintiff has stated a valid claim pursuant to 28 U.S.C. § 1332(d)(2), 28 U.S.C. § 1331, 43 U.S.C. §§ 1331(f)(1) and 1333(a)(2), 43 U.S.C. §1332, and 28 U.S.C. § 1333(1), and the general maritime law of the United States. The BP Parties further deny that BPPNA, BP p.l.c., and BPA are proper parties to this litigation. BPPNA is an entity primarily involved in downstream operations such as crude oil refineries, and transportation and marketing of refined products such as gasoline, and had no employees on the *Deepwater Horizon,* was not a party to the drilling rig contract with Transocean, and had nothing to do with exploration activity involving the Macondo Well or the April 20, 2010 incident or resulting oil spill.  Similarly, BP p.l.c. and BPA did not own the MC 252 leasehold, had no employees on the *Deepwater Horizon*, and were not parties to the drilling rig contract with Transocean.  The BP Parties deny the remaining allegations of this paragraph.

15. Prosecution of this action in this district is proper pursuant to 28 U.S.C. § 1391(a)(2) because all of the events or omissions giving rise to the claims asserted herein occurred in this district.

**ANSWER**

The BP Parties deny the allegations of this paragraph.

### III.   FACTS AND GENERAL ALLEGATIONS

16. Transocean, Ltd., Transocean Offshore, Transocean Deepwater, and Transocean Holdings (collectively "Transocean") are the owners and/or operators of the *Deepwater Horizon*, a semi-submersible mobile drilling rig, which was performing completion operations for BP, BP Products, BP America, BP America Production, and/or BP E&P (collectively "BP Companies") on the Outer Continental Shelf, at the site from which the oil spill originated on April 20, 2010, and has continued spread until the present time and the foreseeable future. Transocean employed the Named Plaintiff as a member of the crew of the Deepwater Horizon at all times pertinent herein.

**ANSWER**

The BP Parties admit that one or more Transocean affiliates, at all relevant times, owned

and operated the *Deepwater Horizon*, and that one or more Transocean affiliates contracted with

BP to drill on the Outer Continental Shelf.  The BP Parties deny the remaining allegations of this

paragraph to the extent they are directed at the BP Parties.  The BP Parties lack knowledge or

information sufficient to form a belief about the truth of the further remaining allegations of this

paragraph, and therefore deny them.

17. BP Companies, Anadarko E&P, Anadarko Petroleum (collectively "Anadarko"), and MOEX are the owners of a lease granted by the Minerals Management Service ("MMS") which allows them to drill for oil and perform oil production related operations at the site of the oil spill, and on April 20, 2010, did operate the oil well which is the source of the oil spill.  BP Companies is the designated operator of the lease.  BP Companies, Anadarko, and MOEX as lessees, as well as Transocean, are jointly and solidarily responsible for all activities of the *Deepwater Horizon* and for all damages and relief requested herein.

**ANSWER**

The BP Parties admit that BPXP, one or more affiliates of Anadarko, and MOEX

Offshore 2007 LLC shared ownership in the Mississippi Canyon Block 252 lease, holding

interests of 65%, 25% and 10%, respectively, and that Anadarko and MOEX have certain

obligations under their agreement with BP that require them to share in liabilities imposed as a

result of the oil spill.  The BP Parties lack knowledge or information sufficient to form a belief

about the truth of the remaining allegations of this paragraph, and therefore deny them.

18. On or about April 20, 2010, an explosion and fire occurred aboard the *Deepwater Horizon*, causing the vessel to sink in the navigable waters of the Gulf of Mexico.

**ANSWER**

The BP Parties admit that on April 20, 2010, there were one or more explosions and fires aboard the *Deepwater Horizon*.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

19. Cameron manufactured and/or supplied the blow-out preventer ("BOP") for the Deepwater Horizon, which failed to operate following the explosion on the Deepwater Horizon, and which should have prevented the sinking of the vessel.  The BOP was defective, as it failed to operate as intended.  Crews were unable to activate the BOP.  As such, Cameron is liable to the Plaintiffs and the Class Members pursuant to the General Maritime Law of product liability, and/or the Louisiana Products Liability Act, as well as being liable for negligence.

**ANSWER**

The BP Parties admit that Cameron manufactured and supplied the *Deepwater Horizon*'s BOP, and that the BOP failed to prevent the oil spill.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

20. A study commissioned by the MMS in 2004 singled out Cameron's BOP for relying on calculations to determine the needed strength of certain components of the BOPS in deep water conditions, as opposed to actual testing of the components in deep water conditions, finding Cameron used "shear forces lower than required or desired in many cases."

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

21. Halliburton Energy was handling the cementing operations on the *Deepwater Horizon* well and well cap at the time of the explosion which led to the oil spill.  The cementing operations were conducted negligently, increasing the pressure at the well and allowing highly combustible gas to escape from the well and ignite.  Problems with cementing operations were identified as factors in 18 of 39 well blowouts in the Gulf of Mexico from 1992 to 2006.

**ANSWER**

The BP Parties admit that Halliburton was engaged to perform cementing operations in connection with the well.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

22. SWACO was, upon information and belief, contracted to provide drilling fluid ("cement") services to the rig *Deepwater Horizon*.  SWACO, in conjunction with Halliburton Energy, failed to maintain appropriate drilling fluid weight before and during the cementing operations, thus allowing highly combustible gas to escape from the well and ignite.

**ANSWER**

The BP Parties admit that M-I Swaco was engaged to perform drilling fluid services in connection with the well.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

23. At all times material hereto, the *Deepwater Horizon* was owned, manned, possessed, managed, controlled, chartered, and/or operated by Transocean and/or BP Companies

**ANSWER**

The BP Parties admit that the *Deepwater Horizon* was owned, manned, possessed, managed, controlled, chartered, and/or operated by one or more Transocean affiliates.  The BP Parties deny the remaining allegations of this paragraph.

24. The BP Companies have a history of poor safety and maintenance.  At its Texas City, Texas refinery, on March 23, 2005, explosions killed fifteen workers and injured 170, as a result of hydrocarbon vapors being discharged from refinery components as a result of increases in pressure in the components.  The incident was caused by BP personnel not following procedures, supervisory personnel not being present or doing their jobs, and using out-of-date procedures.  In Prudhoe Bay, Alaska, in March, 2006, BP discharged over 250,000 gallons of crude oil from a corroded pipeline it maintained, shutting down America's largest oil field.  The spill was the largest in Alaska, with the exception of the *Exxon Valdez* disaster, and occurred as a result of BP's lack of maintenance on the pipeline.  Two years prior to the spill, BP had been advised about corrosion problems in its pipes.  In November, 2007, BP was fined $20 million for the discharge pursuant to the Clean Water Act.

## ANSWER

The BP Parties admit that an explosion at the Texas City Refinery killed 15 people and injured 170 others in 2005, that in March 2006 a pipeline leak temporarily shut down the Prudhoe Bay oil field and that BP Exploration (Alaska) Inc. paid a $12 million dollar fine, $4 million to the National Fish and Wildlife Foundation, and $4 million in restitution to the State of Alaska as a result of the leak.  The BP Parties deny the remaining allegations of this paragraph.

25. The fire and explosion on the *Deepwater Horizon*, and its resultant sinking, were caused by the negligence of all Defendants, which renders them liable jointly, severally, and solidarily unto the Named Plaintiff and the Class Members for all the physical and/or mental injuries sustained by them in connection with the fire, explosion and sinking.

## ANSWER

The BP Parties deny the allegations of this paragraph to the extent they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

26. The injuries and damages suffered by Plaintiff and the Class Members were caused by the Defendants' violations of numerous statutes and regulations, including, but not limited to, statutes and regulations issued by OSHA and the U.S. Coast Guard, including the requirement to test the sub-sea BOP at regular intervals.

**ANSWER**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the

BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the

truth of the remaining allegations of this paragraph, and therefore deny them.

27. Defendants knew the dangers associated with deep water drilling and failed to take appropriate measures to prevent harm to the Plaintiffs and Class Members.

**ANSWER**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the

BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the

truth of the remaining allegations of this paragraph, and therefore deny them.

28. The Named Plaintiff suffered severe and permanent mental anguish and emotional distress as a survivor of the incident giving rise to this litigation.  Class members likewise suffered injuries of this nature, and/or physical injury, as a direct result of the incident.

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth

of the remaining allegations of this paragraph, and therefore deny them.

## IV.    CLASS ACTION ALLEGATIONS

29. Plaintiffs bring this class action pursuant to the Federal Rules of Civil Procedure 23(a), 23(b)(1),and 23(b)(3) on behalf of themselves and all others similarly situated. The proposed Class is defined as follows:

All persons who suffered physical and/or mental injuries as a result of the April 20, 2010 explosion and fire aboard, and sinking of, the Deepwater Horizon.

Plaintiffs submit this proposed class definition is subject to further refinement and stratification through the application of Fed. R. Civ. P. 23(c)(4) and (5).

**ANSWER**

The BP Parties admit that Plaintiff purports to bring this action on behalf of a class.  The

BP Parties deny that a class should be certified and that this case is properly maintained as a

class action.  The BP Parties deny the remaining allegations of this paragraph.


30. Named Plaintiff herein recognizes that not all claims asserted herein may be
susceptible to class certification treatment under Fed. R. Civ. P. 23.  However, there are several
issues relative to all personal injury claims being asserted by Plaintiffs, individually and
class-wide, which are amenable to class action certification under Subdivision (c)(4).  Under
Rule 23, this provision recognizes that an action may be maintained as a class action as to
particular issues only, for example, the adjudication of certain liability issues common to the
claims being asserted by all Plaintiffs may most efficiently and expeditiously be determined
through a class.  Thereafter, the members of the class may be required to come in individually
and prove the amounts of their respective claims.

**ANSWER**

The BP Parties admit that Plaintiff purports to bring this action on behalf of a class.  The

BP Parties deny that a class should be certified and that this case is properly maintained as a

class action.  The BP Parties deny the remaining allegations of this paragraph.


31. The membership of the proposed Class is so numerous, and its members so
geographically dispersed, that joinder of all members would be impracticable.

**ANSWER**

The BP Parties deny the allegations of this paragraph.


32. There is a well-defined community of interest in that the questions of law and fact
common to the Class which predominate over questions affecting only individual Class Members
and include, but are not limited to, the following:

    a.      Whether Defendants owed a duty of care to Plaintiffs to ensure the safe
             functioning of the *Deepwater Horizon* and its equipment;

    b.      Whether Defendants knew or should have known of the risk of explosion and/or
             fire aboard, and/or the sinking of, the *Deepwater Horizon*;

    c.      Whether Defendants' failure to use reasonable care to avoid Plaintiffs' injuries
             and damages;

      d.        Whether Defendants caused and/or contributed to the explosion and/or fire aboard, and/or the sinking of, the *Deepwater Horizon*.

      e.        Whether Defendants' actions were negligent;

      f.        Whether Defendants' conduct constitutes an abnormally dangerous activity;

      g.        Whether Plaintiffs are entitled to damages pursuant to the claims alleged herein;

      h.        The elements of damages for which Plaintiffs should receive compensation; and,

      i.        The amount of damages Plaintiffs should receive in punitive or exemplary damages.

**ANSWER**

The BP Parties deny the allegations of this paragraph.

33. The Named Plaintiff and the Class members have suffered similar harm (mental and/or physical injury) as a result of Defendants' actions.

**ANSWER**

The BP Parties deny the allegations of this paragraph.

34. The Named Plaintiff will fairly and adequately represent and protect the interests of the members of the Class because their interests do not conflict.

**ANSWER**

The BP Parties deny the allegations of this paragraph.

35. The Named Plaintiff and the Class are represented by skilled attorneys who are experienced in the handling of mass tort class action litigation, maritime and environmental litigation, and who may be expected to handle this action in an expeditious and economic manner in the best interest of all members of the Class.

**ANSWER**

The BP Parties deny the allegations of this paragraph.

36. The class action procedural device affords a superior vehicle for the efficient disposition of the issues and claims herein presented, especially since individual joinder of each of the Class members is impracticable.  Individual litigation by each of the class members, besides being unduly burdensome to the plaintiffs, would be unduly burdensome and expensive to the court system as well as the defendants.

**<u>ANSWER</u>**

The BP Parties deny the allegations of this paragraph.

37. The various claims asserted in the action are also certifiable under the provisions of Rules 23(b)(1) and/or 23(b)(3) of the Federal Rules of Civil Procedure because:

    a.        The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members, thus establishing incompatible standards of conduct for Defendants;

    b.        The individual prosecution of claims and individual litigation of all relevant issues by Class members would also create the risk of separate adjudications which could, as a practical matter, be dispositive of the interests of the other claimants not made parties to such adjudications, and would substantially impair or impede their ability to protect their interests; and,

    c.        The questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, so and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

**<u>ANSWER</u>**

The BP Parties deny the allegations of this paragraph.

38. Rule 23(b)(3) classes require that "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members."  When a court decides to limit a class action with respect to particular common issues only pursuant to under Rule 23(c)(4), it follows that the predominance test of Rule 23(b)(3) must be read with a recognition of the power of the court to uphold a class with respect to particular issues under Rule 23(c)(4).  *See* William B. Rubenstein, Alba Conte and Herbert B. Newberg, 2 NEWBERG ON CLASS ACTIONS, § 4:23 (4th ed.).  In this case there are, as set forth herein, several predominant issues common to the Named Plaintiff, individually, and Class members, which issues should be determined unitarily in one judicially-efficient proceeding.

**<u>ANSWER</u>**

The BP Parties deny the allegations of this paragraph.

## V.      CLAIMS ASSERTED AGAINST THE DEFENDANTS

### COUNT 1:

### NEGLIGENCE AND GROSS NEGLIGENCE

39. The Named Plaintiff and Putative Class members incorporate the above allegations as if fully repeated verbatim herein.

**ANSWER**

The BP Parties incorporate the above answers as if fully repeated verbatim herein.

40. Defendants owed a duty of care to Plaintiffs to ensure the safe operation of the *Deepwater Horizon*, and to avoid the incident which occurred on April 20, 2010.

**ANSWER**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the

BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the

truth of the further remaining allegations of this paragraph, and therefore deny them.

41. Defendants knew or should have known that conditions and procedures aboard the *Deepwater Horizon* presented a serious risk of the type of explosion, fire and sinking which occurred herein.

**ANSWER**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the

BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the

truth of the further remaining allegations of this paragraph, and therefore deny them.

42. Defendants knew or should have known that certain equipment utilized by the *Deepwater Horizon* was defective or not properly functioning.

**ANSWER**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the

BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the

truth of the further remaining allegations of this paragraph, and therefore deny them.

43. Defendants knew or should have known that the cement used in the cementing of the well head was defective and/or that the cementing of the well head was not completed and/or done properly.

**ANSWER**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the

BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the

truth of the further remaining allegations of this paragraph, and therefore deny them.

44. Defendants knew or should have known that significant amounts of petroleum were leaking from the *Deepwater Horizon* immediately following the April 20, 2010 fire and explosion.

**ANSWER**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the

BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the

truth of the further remaining allegations of this paragraph, and therefore deny them.

45. The incident described above that caused damage to Plaintiffs was a proximate result of the negligence, fault, gross negligence, and/or willful misconduct of Defendants, acting through their agents, servants and employees, including as follows:

    a.        Failure to properly inspect and monitor the *Deepwater Horizon* and its equipment;

    b.        Failure to properly and safely maintain the *Deepwater Horizon* and its equipment;

c.      Failure to properly and safely operate the *Deepwater Horizon* and its equipment;

d.      Failure to take adequate precautionary measures to prevent the explosion, fire and sinking of April 20, 2010;

e.      Operating the Deepwater Horizon in such a manner that made it likely there would be an explosion and fire aboard the vessel,

f.      Acting in a careless and negligent manner without due regard for the safety of others;

g.      Failing to promulgate, implement and enforce rules and regulations pertaining to the safe operations of the *Deepwater Horizon* which, if they had been so promulgated, implemented and enforced, would have averted the incident of April 20, 2010;

h.      Operating the *Deepwater Horizon* with untrained and unlicensed personnel;

i.      Inadequate and negligent training and hiring of personnel;

j.      Failing to take appropriate action to avoid or mitigate the incident;

k.      Negligent implementation of policies and procedures to safely conduct offshore operations in the Gulf of Mexico;

l.      Employing untrained or poorly trained employees and failing to properly train their employees;

m.      Failing to ascertain that the *Deepwater Horizon* and its equipment were free from defects and/or in proper working order;

n.      Failure to timely warn;

o.      Failure to timely bring a crisis in well operations under control;

p.      Failure to provide appropriate fire and explosion prevention equipment and procedures aboard the vessel;

q.      Failure to observe and read gauges that would have indicated excessive pressures in the well;

r.      Failure to react to danger signs, including such failure as a consequence of haste motivated by concerns for revenue instead of safety;

s.      Providing a blowout valve or blowout preventer that did not work properly;

t.      Failure to properly design, manufacture, and install the blowout valve or blowout preventer;

16

u.      Failure to employ an acoustic switch in the blowout valve or blowout preventer;

v.      Failure to ensure that the blowout valve or blowout preventer was functioning properly and as intended;

w.      Failure to ensure that the concrete casing was sufficient for sealing the well;

x.      Failure to properly cement the well head and final production casing string;

y.      Conducting well and well cap cementing operations improperly;

z.      Failing to provide all reasonable cooperation and assistance requested by the responsible officials in connection with the clean-up and removal activities;

aa.     Failure to properly report and/or maintain records, and/or the intentional manipulation and fabrication of equipment inspections, including crew inspections, was a substantial contributing factor to the explosion and resulting damages;

bb.     Acting in a manner that justifies imposition of punitive damages; and,

cc.     Such other acts of negligence and omissions as will be shown at the trial of this matter, all of which acts are in violation of the laws of Louisiana, other Gulf Coastal States, and Federal law applicable on the outer Continental Shelf.

## **ANSWER**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the further remaining allegations of this paragraph, and therefore deny them.

46. Defendants had a duty to conform their conduct in such a manner as to assure that a fire, explosion and sinking of the Deepwater Horizon, and resulting oil spill, would not occur, pursuant to federal, Louisiana law, and the laws of the other affected Gulf Coastal States.

## **ANSWER**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the further remaining allegations of this paragraph, and therefore deny them.

47. Defendants failed to conform their conduct to the appropriate legal standard, thereby breaching their duty to conform their conduct in such a manner as to assure that a fire, explosion and sinking of the Deepwater Horizon would not occur pursuant to federal, Louisiana law, and the laws of the other affected Gulf Coastal States.

**ANSWER**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the further remaining allegations of this paragraph, and therefore deny them.

48. Defendants' substandard conduct in failing to prevent the fire, explosion and sinking of the Deepwater Horizon, pursuant to federal, Louisiana law, and the laws of the other affected Gulf Coastal States., was the cause-in-fact of the injuries, harm, and damages suffered by the Named Plaintiff and Class members.

**ANSWER**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the further remaining allegations of this paragraph, and therefore deny them.

49. As a direct and proximate result of Defendants' wrongful conduct, Defendants have caused or will cause the Named Plaintiff and Class Members to suffer and continue to suffer disability, financial and economic loss, physical and emotional injuries, medical treatment, and other damages recoverable under the applicable laws/statutes.

**ANSWER**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the further remaining allegations of this paragraph, and therefore deny them.

50. In addition, the fire, explosion and sinking of the Deepwater Horizon, and resulting oil spill, were caused by defective equipment, including the blowout valve or blowout preventer, which were in the care, custody, and control of Defendants and over which the Defendants had *garde*. Defendants knew or should have known of these defects and Defendants are, therefore, liable for them.

**<u>ANSWER</u>**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the

BP Parties. The BP Parties lack knowledge or information sufficient to form a belief about the

truth of the further remaining allegations of this paragraph, and therefore deny them.


51. The injuries to Named Plaintiff and Class members were also caused by or aggravated by the fact that Defendants failed to take necessary actions to mitigate the danger associated with their operations.

**<u>ANSWER</u>**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the

BP Parties. The BP Parties lack knowledge or information sufficient to form a belief about the

truth of the further remaining allegations of this paragraph, and therefore deny them.


52. It was foreseeable that the conduct and/or omissions taken by the Defendants, resulting in the fire, explosion and sinking of the Deepwater Horizon would proximately cause the damage, injury, and harm complained of to individuals situated like the Named Plaintiff and Class Members, as defined above.

**<u>ANSWER</u>**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the

BP Parties. The BP Parties lack knowledge or information sufficient to form a belief about the

truth of the further remaining allegations of this paragraph, and therefore deny them.

53. Defendants were aware at all times relevant hereto that their operations and the acts and/or omissions described above created an unreasonable risk of harm and knew that catastrophic environmental destruction and economic loss would occur if there were a pressure blow-out in the well being serviced by the *Deepwater Horizon*.  Defendants were indifferent to this risk of harm, for the sake of business interests.  Defendants intentionally failed to perform the duties owed to Plaintiffs in reckless disregard of the consequences their actions and/or omissions would have on Plaintiffs.  Moreover, Defendants acted intentionally with knowledge that their acts would probably result in injury or in such a way as to allow an inference of a reckless disregard of the probable consequences of their acts.  Therefore, Defendants are also liable to Plaintiffs for all damages recoverable on the basis of gross negligence and/or willful misconduct.

## **ANSWER**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the

BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the

truth of the further remaining allegations of this paragraph, and therefore deny them.

54. Upon information and belief, the incident of April 20, 2010 was proximately caused by the Defendants' violation of applicable federal safety, construction, or operating regulations and/or by violations of such regulations by an agent or employee of the Defendants and/or a person acting pursuant to a contractual relationship with Defendants, making the doctrine of negligent fault *per se* applicable herein.

## **ANSWER**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the

BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the

truth of the further remaining allegations of this paragraph, and therefore deny them.

55. The injuries and damages suffered by Plaintiffs were caused by certain acts and/or omissions of the Defendants that may be beyond proof by the Plaintiffs and the Class members, but which were and remain within the knowledge and control of the Defendants. There being no plausible explanation for the April 20, 2010 incident other than the conclusion that the fire, explosion, and sinking all resulted from the negligence of Defendants, and it being clear that the fire, explosion, sinking would not have occurred had the Defendants exercised the degree of care legally imposed on them, the evidentiary doctrine of *res ipsa loquitur* is applicable herein.

**ANSWER**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the

BP Parties. The BP Parties lack knowledge or information sufficient to form a belief about the

truth of the further remaining allegations of this paragraph, and therefore deny them.

## COUNT 2:

## STRICT LIABILITY

56. Plaintiffs incorporate the above allegations as if fully repeated verbatim herein.

**ANSWER**

The BP Parties incorporate the above answers as if fully repeated verbatim herein.

57. Defendants' drilling of highly volatile and toxic fuel within a relatively short distance from the shoreline inherently posed a high degree of risk and the likelihood of substantial harm to persons and property.

**ANSWER**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the

BP Parties. The BP Parties lack knowledge or information sufficient to form a belief about the

truth of the further remaining allegations of this paragraph, and therefore deny them.

58. Due to the hazardous nature of Defendants' activity, this associated high risk could not have been eliminated even through the exercise of reasonable care.

**ANSWER**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the further remaining allegations of this paragraph, and therefore deny them.

59. Defendants' drilling of highly volatile and toxic fuel thus constitutes an abnormally hazardous or ultra-hazardous activity, on the basis of which Defendants are strictly and/or absolutely liable to Plaintiffs under applicable law.

**ANSWER**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the further remaining allegations of this paragraph, and therefore deny them.

**COUNT 3:**

**PRODUCTS LIABILITY**

60. Plaintiffs incorporate the above allegations as if fully repeated verbatim herein.

**ANSWER**

The BP Parties incorporate the above answers as if fully repeated verbatim herein.

61. The blowout valve(s) and/or blowout preventer that were/was in place at the *Deepwater Horizon* were manufactured by defendant Cameron and deviated in material ways from the manufacturer's specifications such that they/it were unreasonably dangerous in construction and composition.

**ANSWER**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the further remaining allegations of this paragraph, and therefore deny them.

62. The blowout valve(s) and/or blowout preventer that were/was in place at the *Deepwater Horizon* and manufactured by Cameron were/was unreasonably dangerous in design at the time they/it left Cameron's control.  There existed alternative designs for the blowout valve(s) and/or blowout preventer that would have prevented the explosion and Plaintiffs' resulting damages, but which were not used by Cameron even though using the alternative designs would have outweighed Cameron's burden of adopting such alternative designs.

**<u>ANSWER</u>**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the further remaining allegations of this paragraph, and therefore deny them.

63. The blowout valve(s) and/or blowout preventer that were/was in place at the *Deepwater Horizon* and manufactured by Cameron were/was unreasonably dangerous because Cameron failed to provide adequate warnings.

**<u>ANSWER</u>**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the further remaining allegations of this paragraph, and therefore deny them.

64. The blowout valve(s) and/or blowout preventer that were/was in place at the *Deepwater Horizon* and manufactured by Cameron were/was unreasonably dangerous because they failed to comply with an express warranty which induced the Defendants to use the product and Plaintiffs' and the Class and/or subclass members' damages were proximately caused because the express warranty was untrue.

**<u>ANSWER</u>**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the further remaining allegations of this paragraph, and therefore deny them.

65. Cameron is therefore strictly liable unto Plaintiff and the Class members for all of their damages, including compensatory damages, on the basis of product liability pursuant to the General Maritime Law, or, as deemed applicable, the Louisiana Product Liability Act.

**ANSWER**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the

BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the

truth of the further remaining allegations of this paragraph, and therefore deny them.

**COUNT 4:**

**PUNITIVE DAMAGES**

66. Named Plaintiff and Class Members incorporate the above allegations as if fully repeated verbatim herein.

**ANSWER**

The BP Parties incorporate the above answers as if fully repeated verbatim herein.

67. By virtue of the Defendants' callous and willful disregard for safety procedures following aboard, and the conditions of, the Deepwater Horizon, which unsafe practices and/or conditions were actually or constructively known to Defendants, Plaintiffs are entitled to recover punitive damages under the General Maritime Law, in an amount to be determined as necessary to punish Defendants as well as deter such misconduct in the future.

**ANSWER**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the

BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the

truth of the further remaining allegations of this paragraph, and therefore deny them.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and Class and/or subclass members demand relief and judgment against Defendants, jointly, severally and *in solido,* as follows:

a. An order certifying a Class as defined herein for the purpose of going forward with anyone or all of the causes of action alleged on behalf of Class Members,

recognizing the Named Plaintiff as Class Representative and appointing undersigned counsel as counsel for the Class;

b. Compensatory damages in amounts for the Named Plaintiff and each Class Member to be determined at trial, but in a total amount not less than$5,000,000.00, in satisfaction of the Class Action Fairness Act;

c. Punitive damages in an amount to be determined at trial;

d. Pre-judgment and post-judgment interest at the maximum rate allowable by law;

e. All taxable costs of litigation; and

f. Any and all general and equitable relief available under applicable state and federal laws, as the Court deems just and appropriate; and,

g. A trial by jury as to all Defendants to the fullest extent permitted by law.

## ANSWER

WHEREFORE, the BP Parties respectfully request that the Court dismiss Plaintiff's claims against the BP Parties with prejudice.  The BP Parties deny the allegations of this paragraph to the extent they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

The BP Parties maintain that there was no negligence or fault on their part and that Plaintiff's damages and injuries, if any, were caused by the fault, carelessness, misconduct, negligence and/or want of due care of other individuals, entities, or vessels for whom the BP Parties are not legally responsible.

## SECOND DEFENSE

Plaintiff's damages or injuries, if any, were the result of an occurrence and/or accident unforeseeable by the BP Parties and for which the BP Parties cannot be held legally responsible.

## THIRD DEFENSE

Plaintiff's alleged damages or injuries, if any, were caused or contributed to by acts and/or omissions that constitute independent, intervening and/or superseding causes for which the BP Parties are not legally responsible.

## FOURTH DEFENSE

Any alleged negligence by the BP Parties, which the BP Parties specifically deny, was not the proximate cause or sole proximate cause of Plaintiff's alleged damages and there is no causal connection between the acts complained of and the damages and injuries alleged.

## FIFTH DEFENSE

To the extent the BP Parties are found liable to Plaintiff for any damages or injuries, the BP Parties are entitled to have any reward or recovery mitigated or reduced accordingly by the contributory or comparative negligence of other individuals, entities, or vessels.

## SIXTH DEFENSE

To the extent that the BP Parties are found liable to Plaintiff for any damages, the BP Parties are entitled to contractual indemnity from other parties or entities.

## SEVENTH DEFENSE

To the extent that the BP Parties are found liable to Plaintiff for any damages, the BP Parties are entitled to indemnity from other parties or entities.

## EIGHTH DEFENSE

To the extent that the BP Parties are found liable to Plaintiff for any damages, the BP Parties are entitled to contribution from other parties or entities.

26

**NINTH DEFENSE**

To the extent that the BP Parties are found liable to Plaintiff for any damages, the BP

Parties are entitled to a set-off or other equitable reduction in liability for any compensation paid

by the BP Parties or other parties or entities.

**TENTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, because Plaintiff is not entitled under the

law to the damages that he seeks, the alleged damages sought are too speculative and uncertain,

and because of the impossibility of the ascertainment and allocation of such damages.

**ELEVENTH DEFENSE**

Plaintiff's claims for punitive damages are barred, in whole or in part, because the BP

Parties did not engage in any willful, wanton, malicious, oppressive, or reckless conduct that

might entitle Plaintiff to an award of punitive damages.

**TWELFTH DEFENSE**

Plaintiff's damages are barred, in whole or in part, by a failure to mitigate damages.

**THIRTEENTH DEFENSE**

The BP Parties deny that they are liable to any extent as alleged in the Class Action

Complaint, and claim exoneration from any and all liability for all losses, damages, and injuries

incurred by Plaintiff as a result of the allegations contained in the Class Action Complaint and

for any other damages or claims which exist or may arise, but have not been specifically pled.

The BP Parties specifically reserve the right to amend or supplement their affirmative

defenses and this Answer as additional facts concerning their defenses become known to them.

WHEREFORE, the BP Parties respectfully request that the Court dismiss Plaintiff's

claims against the BP Parties with prejudice.

Dated:  February 11, 2011                                        Respectfully submitted,

<u>/s/ Don K. Haycraft</u>
Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

and

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Wendy Bloom, P.C.
Timothy A. Duffy, P.C.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
312-862-2000 (Tel)
312-862-2200 (Fax)

and

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
202-662-5985

*Attorneys for BP p.l.c., BP Products*
*North America Inc., BP America Inc., BP*
*America Production Company and BP*
*Exploration & Production Inc.*

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice in accordance with the procedures established in MDL 2179, on this 11th day of February, 2011.

/s/     Don K. Haycraft