# Murphy, Silvia

| | |
|---|---|
| From: | Murphy, Silvia |
| Sent: | Friday, January 14, 2011 8:00 PM |
| To: | DGodwin@GodwinRonquillo.com; efk@preisroy.com; twagner@wp-lalaw.com; ajr@frvf-law.com; atc@frvf-law.com; sgordon@geslawfirm.com; Brad.Eastman@c-a-m.com; DJones@brsfirm.com; lkaplan@skv.com; Linsin@blankrome.com; gattrep@smith.com; RJH@preisroy.com; mclements@frilot.com; mlemoine@joneswalker.com; dlongman@joneswalker.com; donjackson@warejackson.com; dkuchler@kuchlerpolk.com; ky.kirby@bingham.com; Sam.Sankar@OilSpillCommission.gov; RWassel@nas.edu; Ray.Porfiri@csb.gov; don.holmstrom@csb.gov; ayork@GodwinRonquillo.com; BRS383@BRSfirm.com; BBowman@godwinronquillo.com; carey.dunne@davispolk.com; frances.bivens@davispolk.com; GILLYG@phelps.com; JMole@frilot.com; jbarrasso@barrassousdin.com; colletta@chaffe.com; MCLEODM@phelps.com; PWittmann@stonepigman.com; rbertram@joneswalker.com; rguidry@kuchlerpolk.com; skupperman@barrassousdin.com; alangan@kirkland.com; jmartinez@GodwinRonquillo.com; rkjarrett@liskow.com; jim.dragna@bingham.com; kyle@semmlaw.com; pfanninglaw@aim.com; srb@mbfirm.com; ebyte2@aol.com; sbickford@mbfirm.com; rsimmons@hmhlp.com; shaun@gergerclarke.com; htanner@morganlewis.com; dscofield@morganlewis.com; dane@gergerclarke.com; dkhaycraft@liskow.com; fpiccolo@preisroy.com; ggoddier@joneswalker.com; kmiller@frilotpartridge.com; LWilgus@blankrome.com; Warde-C@blankrome.com |
| Cc: | Jeff Bray (jeff.r.bray@uscg.mil) |
| Subject: | Joint Investigation Team Update and Evidence Testing |
| Attachments: | USGS protocol 7-15-10.xls; USGS Analysis Plan-7-15-10.doc; 2010-12-10_Ltr_R_Gasaway_to_S_Murphy_and_LCDR_Bray_w_encls_Testing_of_Macondo_Well_Drill_Cuttings[1].pdf; USGS_Response_to_BP.doc |

Ladies and Gentlemen,

We would like to update you on a few matters.

1)      Final hearings:  The final Joint Investigation Team hearings, tentatively scheduled for the week of January 24, 2011, will be postponed until the BOP stack forensic testing is complete.  The JIT will announce the date for the final hearings as soon as possible.  We believe they will be no earlier than mid-February.

2)      Rocks:  On July 15, 2010, the JIT sent the parties in interest the protocol that the U.S. Geological Survey (USGS) would use to analyze the 40 "rocks" found on the DAMON BANKSTON after the blowout.  Please see the attached analysis plan and protocol, which incorporated many suggestions by those of you who submitted proposed protocols.  The protocol noted that USGS would determine if additional tests are appropriate after it completes those that were listed.  The USGS now proposes an additional test.  Specifically, USGS proposes to conduct a carbon isotope analysis on one of the 40 samples.  This analysis will destroy about 0.3 grams of the sample and will help identify its source.  The 0.3 grams will be from the half of the sample USGS originally prepared for its testing -- the other half is archived will remain untouched.  If any of you object to this test, please let us know by January 21, 2011.  Once we confirm that everyone consents to this new test, the Department of Justice (DOJ), on behalf of the JIT, will seek Judge Barbier's approval for this destructive testing.

3)      Drill cuttings:  On a related note, on December 1, 2010, we sought input on an analysis of drill cuttings from the Macondo well as part of the rock testing.  Please see the JIT's December 1 e-mail, below.  We received one submission from BP, which is attached along with USGS's comments on that submission.  The USGS concluded, "in the context of the charge to the USGS, the knowledge already acquired in our on-going study of the 40 samples, and the need to preserve as much of the original sample as possible, it may not be necessary or productive to carry out each step as outlined in the analysis plan and as modified by BP. Therefore, although USGS finds the suggestions outlined by BP to be generally acceptable, we

may accept or reject certain steps in the modified analysis plan based on existing information and what steps we believe necessary to resolve outstanding questions as outlined above." Accordingly, at this time, the protocol is the same as that used for the rocks (attached). If USGS determines that it is necessary to conduct additional destructive tests, we will let you know beforehand. If you object to this course of action or the proposed protocol, please let us know by January 21, 2011. As with the additional rock test, if everyone agrees, DOJ, on behalf of the JIT, will seek Judge Barbier's approval for this destructive testing.

Please let us know if you have any questions.

LCDR Jeff R. Bray
(202) 309-9559
Jeff.R.Bray@uscg.mil

Silvia Murphy
(202) 219-3031
Silvia.Murphy@sol.doi.gov

---

From: Murphy, Silvia
Sent: Wednesday, December 01, 2010 6:09 PM
To: DGodwin@GodwinRonquillo.com; efk@preisroy.com; twagner@wp-lalaw.com; ajr@frvf-law.com; atc@frvf-law.com; sgordon@geslawfirm.com; Brad.Eastman@c-a-m.com; DJones@brsfirm.com; lkaplan@skv.com; Linsin@blankrome.com; gattrep@smith.com; RJH@preisroy.com; mclements@frilot.com; mlemoine@joneswalker.com; dlongman@joneswalker.com; donjackson@warejackson.com; dkuchler@kuchlerpolk.com; ky.kirby@bingham.com; Sam.Sankar@OilSpillCommission.gov; RWassel@nas.edu; Ray.Porfiri@csb.gov; don.holmstrom@csb.gov; ayork@GodwinRonquillo.com; BRS383@BRSfirm.com; BBowman@godwinronquillo.com; carey.dunne@davispolk.com; frances.bivens@davispolk.com; GILLYG@phelps.com; JMole@frilot.com; jbarrasso@barrassousdin.com; colletta@chaffe.com; MCLEODM@phelps.com; PWittmann@stonepigman.com; rbertram@joneswalker.com; rguidry@kuchlerpolk.com; skupperman@barrassousdin.com; alangan@kirkland.com; jmartinez@GodwinRonquillo.com; rkjarrett@liskow.com; jim.dragna@bingham.com; kyle@semmlaw.com; pfanninglaw@aim.com; srb@mbfirm.com; ebyte2@aol.com; sbickford@mbfirm.com; rsimmons@hmhlp.com; shaun@gergerclarke.com; htanner@morganlewis.com; dscofield@morganlewis.com; dane@gergerclarke.com; dkhaycraft@liskow.com; fpiccolo@preisroy.com; ggoddier@joneswalker.com; kmiller@frilotpartridge.com; LWilgus@blankrome.com; Warde-C@blankrome.com
Cc: Jeff Bray (jeff.r.bray@uscg.mil)

Subject: Macondo Drill Cuttings

Ladies and Gentlemen,

As you may know, Anadarko produced its drill cuttings from the Macondo well to the Joint Investigation Team for testing by the U.S. Geological Survey (USGS). This testing is part of the analysis of the "rocks" retrieved from the DAMON BANKSTON after the blowout. The USGS plans to use generally the same analysis protocol for the Anadarko drill cuttings as used on the "rock" samples. The rock protocol is attached, and the parties in interest had an opportunity to contribute to it several months ago.

The USGS explains that, prior to analysis of the cutting samples, selected samples will be split using the cone and quarter technique, a Jones riffle splitter, or other appropriate technique depending on the grain size and amount of each sample. Approximately one half of each split sample will be repackaged for return to Anadarko provided there is enough material to complete the analysis. (If for any sample there is not enough material to return approximately one half to Anadarko, USGS will contact the Joint Investigation Team before

proceeding with work on that sample.)  After splitting, each sample will be analyzed using steps 1 and/or 2 in the attached spreadsheet.  This will be followed by steps 3 - 6 (step 3 may also be used in the screening process prior to splitting).  Step 7 will be completed if deemed necessary and there is enough sample remaining.  It is possible that some steps in the analytical process will be skipped for individual samples if deemed appropriate by USGS.

While it was the Joint Investigation Team's intention to obtain input from all interested parties before beginning to test the cuttings, through a miscommunication, certain steps have been undertaken.  To date, 8 of the approximately 400 drill cutting samples have been processed for XRD analysis.  Specifically, each of the 8 samples were split; one half was preserved and the other half was further processed by splitting again.  Approximately ½ of the split used for processing (approximately 25% of the total) has been processed by grinding for XRD analysis.  Accordingly, three quarters of the 8 samples on which processing had begun are still preserved.

Before any further processing or testing is undertaken, the Joint Investigation Team is seeking input from all interested parties about testing of the cuttings.  Please provide any comments on the proposed protocol by next Friday, December 10.

Please let me know if you have any questions.

Thank you.
Silvia

_____
Silvia Murphy, Attorney-Advisor
Division of Mineral Resources
Office of the Solicitor
U.S. Department of the Interior
(202) 219-3031

NOTICE:  This e-mail (including any attachments) is intended for the use of the individual or entity to which it is addressed.  It may contain information that is privileged, confidential, or otherwise protected by applicable law.  If you are not the intended recipient or the employee or agent responsible for delivery of this e-mail to the intended recipient, you are hereby notified that any dissemination, distribution, copying, or use of this e-mail or its contents is strictly prohibited.  If you received this e-mail in error, please notify the sender immediately and destroy all copies.

Initial analyses proposed for USGS Denver laboratories. Subsequent analyses will depend or results from these analyses.*
Representative portions of each sample will be kept for the record. No sample will be completely consumed during analyses. Some samples may be too small to perform all tests or analyses.

| order | Analysis | Results | Purpose | Sample amount required | Sample requirements | Comment |
|---|---|---|---|---|---|---|
| 1 | Photograph and weigh | digital images - weight of sample | documentation | N/A | non-destructive | |
| 2 | Macro photography - Stereo microscopy | digital images - higher magnification | documentation - identify features for further analyses | N/A | non-destructive | |
| 3 | Visible-infrared reflectance spectroscopy | wavelength spectra | phase/component/contaminant identification | N/A | non-destructive | Using handheld reflectance spectrometer |
| 4 | Variable pressure SEM w/ x-ray microanalysis | high magnification images - chemical data - phase identification | determine components, structure, texture | N/A | non-destructive | Phase chemistry less accurate than 5. Resolution for x-ray analysis not optimum. Larger samples may not fit into the analysis chamber. |
| 5 | SEM and x-ray microanalysis - high vacuum mode. Optical petrography. | high magnification images - chemical data - phase identification | Determine components, structure, texture. Determine accurate phase chemistry. Identify trace phases. Identify and document distinctive textures and morphology | Portion of sample. Depends on sample homogeneity and grain/feature size. | Requires portion of sample to be removed and processed for analysis. Polished section and/or grain mount(s). Processed sample can be preserved for future analysis and for the record. | More accurate and precise phase chemistry. Ability to analyze grain texture. Ability to do fully quantitative analysis of textures and phase chemistry to the limits of the technique. Optical petrography can be done on same polished sections and grain mounts. |
| 6 | X-ray diffraction analysis (XRD) | x-ray diffractogram for phase identification of crystalline materials | Identify major and minor phases. Confirm SEM identification. Provide estimate of relative proportions of phases | 0.1 - 3 grams | Requires grinding of a portion of the sample. Prepared sample can be preserved for future analysis. | Some samples may be too small for this analysis or results may be less accurate if sample weight is not optimum. Results and time required for analysis will depend on amount of sample used. |
| 7 | Bulk chemistry - XRF and/or ICPMS | major and trace element bulk chemistry | Obtain accurate and precise bulk chemistry of sample | 0.5 grams | Requires dissolution of portion of sample. | Results will depend on homogeneity of sample. Some samples may be too small for this analysis |
| | | | | | | * Results from the above will allow us to determine if the samples are rock, cement (and possibly type), or other material. The results will also provide quantitative information on phases present, phase chemistry (major and trace), textures, grain size, and contaminants. Additional analyses required such as micropaleo, hydrocarbon, compressive strength, density, etc. can then be determined as appropriate based on results from above. All of the above may not be needed for each sample. |

**Initial analyses to be conducted by USGS Denver laboratories on the Deepwater Horizon samples. Subsequent analyses will depend on results from these initial analyses.**

Forty samples were obtained under chain-of-custody from BOEM (formerly MMS) and Phillip Brickman from the law firm of Fowler, Rodriguez, Valdes-Fauli. The samples are currently undergoing non-destructive analyses to begin addressing the following three questions posed by BOE:

1. Are the samples from the Deepwater Horizon (MC-252 G32306 1) well?
2. Are the samples rock, cement or some other material?
3. If the samples are from the MC-252 G32306 1 well, at what depth did the samples originate?

The USGS plans to take a stepwise approach to answer as many of the above questions as possible. The USGS is beginning with nondestructive characterization of the samples. The samples will be photographed, described by petrologists, and weighed. Following this initial examination the samples will be analyzed as described in the attached spreadsheet. Initially, only the non-destructive techniques will be employed (1 through 4). The results from these analyses will be evaluated prior to any destructive testing.

Unless otherwise instructed from BOEM and DOI, a representative portion of each sample will be left for the record. At this time USGS plans to use no more than one half of each sample for analyses. It must be understood that in any destructive procedure, it is not always possible to preserve the intended amount of sample, however, every effort will be made to do so. Many of the analyses will require preparation of sub-samples, such as petrographic thin sections, polished grain mounts, and x-ray diffraction powder mounts, that will be analyzed by non-destructive methods and will be available for future analyses and for the record. Some samples may be too small to perform all analyses. The attached spreadsheet describes the initial proposed analyses, the amount of sample required, and the expected results.

During sample preparation, all processes requiring modification of samples will be thoroughly documented with photographs and a description of the preparation procedure. This documentation will become part of the final report prepared by USGS. After initial analysis of a sample it may be determined that further analyses would best be done by a certified laboratory specializing in a specific type of analysis such as compressive strength. If such an analysis is required, the sample will be shipped to the certified laboratory for testing under chain-of-custody and the laboratory will need to be unbiased and independent of the parties related to the investigation. Results of any outside analyses will be incorporated into the final USGS report.