UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG | : | MDL NO. 2179 |
| "DEEPWATER HORIZON" in the | : | SECTION: J |
| GULF OF MEXICO, on | : |  |
| APRIL 20, 2010 | : |  |
|  | : | JUDGE BARBIER |
| THIS DOCUMENT RELATES TO: | | MAG. JUDGE SHUSHAN |
| ALL CASES. | | |
|  | : | |

. .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . . .

## OPPOSITION TO "PLAINTIFFS' EX PARTE MOTION FOR COURT APPROVAL OF PROPOSED NOTICE"

**NOW INTO COURT**, through undersigned counsel, come the Plaintiffs in the following

cases, to submit this Opposition to "Plaintiffs' Ex Parte Motion For Court Approval of Proposed

Notice:"

1. Bill's Oyster House, LLC *et al* (E.D. La., 10-cv-1308)
2. Howard Buras (M.D. La., 10-cv-369; and E.D. La., 10-cv-2994)
3. Armand's Bistro (W.D. La., 10-cv-1007 and E.D. La., 10-cv-4489)
4. Faye Loupe *et al.* (E.D. La., 10-cv-2764)
5. Laura Gautreaux (E.D. La., 10-cv-1539)
6. Brent Rodrigue, Sr *et al.* (E.D. La., 10-cv-1325)
7. Issadore Creppel (E.D. La., 10-cv-1346)

On February 8, 2011 the Plaintiffs' Liaison Counsel filed "Plaintiffs' Ex Parte Motion

For Court Approval of Proposed Notice" (Doc. #1126).  The Motion requests Court approval of

an attached Notice (Doc. #1126-3) "advising potential litigants of the availability of the Short-

Form Joinder and of the April 20, 2011 monition date in the Transocean Limitation."

The heading of the Motion states that it "Relates to: *B1 and B3 Bundle Cases*" and

"Relates to: No. 2771."

1

The proposed Notice instructs how one must file a claim "to preserve your ability to recover money and other damages against Transocean and include your claim in this trial."

However, as the proposed Notice is currently worded, the effect on anybody filing such a claim would be to:

> "also join you in the master lawsuit that has been filed against BP and the other defendants. If you do not want to join the master lawsuit you will still need to file an answer and claim by April 20, 2011 in order to preserve your right to recover against Transocean."

Contrary to the motion's heading that it relates only to the Transocean limitation, the motion, in fact, has a much broader scope and reach.

Granting this motion would have the effect of making the PSC class counsel for anybody filing such a claim, not only as regards claims against Transocean but also as well as all other defendants. In that numerous suits and class actions have already been filed in which parties are already represented by counsel, this language is inappropriate and should thus be removed.

The history of this case has been one of constant attempts and maneuvers to unnecessarily extend and protract this litigation and undermine the work of Mr. Feinberg and the Gulf Coast Claims Facility. As is well known, the more claims that are resolved through Mr. Feinberg's office (and the quicker they are so done), the smaller the number and amount of claims will be available for litigation.

Immediately after the spill occurred (and long before the Claims Facility was created), a number of the attorneys who were later appointed to the PSC requested that the undersigned, with Camilo Salas and Richard Arsenault, draft the original Complaint in this litigation (*Acy J. Cooper, Jr. et al. v. BP PLC et al.*, # 10-cv-1229), which Messrs. Becnel, Salas and Arsenault did. Mr. Becnel also paid the $350.00 court cost for filing the suit.

2

The undersigned also filed the moving papers for this Multi District Litigation and argued before the MDL Panel that this Court or any other judge in the Eastern District of Louisiana be appointed to handle this Multi District Litigation.

When the President appointed Mr. Feinberg, the undersigned, along with Mr. Jerry Parker and Messrs. Salas and Arsenault, held numerous informational meetings for all interested attorneys, on behalf of the Louisiana State Bar Association, Harris Martin Publishing Company and others. We also arranged and held numerous private meetings with Mr. Feinberg and Mr. Rosen, his partner, and hosted a public presentation at Loyola Law School by Mr. Rosen that 200 attorneys from all over the country attended.

Immediately after Mr. Feinberg's appointment, he and/or Mr. Rosen had numerous meetings with undersigned, Mr. J.R. Whaley, and Messrs. Salas, Arsenault and Parker in an effort to resolve their large inventory of claims without having to resort to the PSC and the litigation. Shortly after these meetings, however, Russ Herman advised the undersigned and Messrs. Salas and Arsenault that their assistance was no longer wanted and requested that they withdraw from the *Acy Cooper, Jr. v BP* suit, which was done before the Honorable Sarah Vance, to whom the case had been originally allocated.

Much of the work being done by the PSC is unnecessary and involves efforts to garner fees rather than develop facts. The critical facts in this case have long been known through exhaustive work by the Presidential Spill Commission; the Joint Coast Guard/BOEM hearings; the Deepwater Horizon Study Group chaired by Professor Robert Bea of U.C., Berkeley; and numerous congressional committees (including California's Representative Waxman's House Energy and Commerce Committee and Massachusetts's Representative Markey's House Natural Resources Committee).

Upon information and belief, not a single PSC member personally attended the Joint Coast Guard/BOEM hearings. The undersigned, in contrast, DID attend the Joint Hearings, as well as did Scott Bickford, Ronnie Penton and a few other attorneys who had death or injury cases. Further, Mr. Will Percy of undersigned's office attended all the hearings in the New Orleans area as well as hearings in Houston.  After every day's session, undersigned's office would produce written daily reports of that day's witnesses' testimony and, together with exhibits whenever they were available, and would send them both to everybody on the "list serve" and to anybody else who had an interest.

All the testimony from the dozens of witnesses before the Joint Hearings has by now been transcribed and is all available online, and its final report is forthcoming as soon as the study of the blowout preventer is completed.  The Presidential Commission has published its exhaustive Final Report, which is also available online. Numerous congressional committees held hearings, both in the New Orleans area and in Congress. Undersigned sent representatives of his office to the local hearings and viewed them on CSPAN and the internet when available, and prepared and circulated summaries of these as well. The Deepwater Horizon Study Group has published numerous technical reports – all available online as well.  This all has had the effect of minimizing the discovery for the PSC to conduct, and, accordingly, the minimization of fees they can charge for such.

So much evidence and testimony has  come out of these various hearings and reports that the PSC has already had its most important discovery done for it by these groups and provided to the PSC, and the general public, for free.

Indeed, so much of the critical testimony and evidence has already been established that undersigned counsel is preparing motions for summary judgments against responsible parties in

this litigation.  The PSC, however, per the directive of Mr. Steve Herman, has refused to allow

such proposed motions to be filed, resulting in still more unnecessary protraction of this

litigation - to the financial benefit of PSC but to the detriment of the victims of the spill.

A number of lawyers, including Messrs.  Arsenault, Salas, Parker and myself, had

numerous meetings and seminars recommending that the Feinberg approach to settling claims

was far more efficient, transparent, and honest for people who had legitimate claims and,

therefore, this option should be considered first, prior to litigation.  It was important to file a few

complaints in federal court in order to have a backup plan should the Feinberg approach prove to

be unfruitful.  Throughout this process, many members of the Plaintiffs' Committee continually

objected to this approach and continually recommended litigation, with large legal fees as a

result, including large common benefit fees.  We, however, continually recommended and urged

that fees should be kept minimal considering the losses suffered by the plaintiffs.

As of February 15, 2011, according to Gulf Coast Claims Facility's website, there have

been 490,186 claimants, of which 168,842 have been paid $3,396,354,241.09.  168,839

claimants have received Emergency Advance payments; 88,613 have received Final Quick Pay

payments; 2 have received Final Full Review payments (net of claimants with Quick Payment

issued); and 1 has received Interim payment (net of claimants with Quick Payment issued).

Pursuing and resolving these claims with Mr. Feinberg  has been an ongoing process

involving constant phone conferences, hiring experts,  gathering expert reports and having expert

testing conducted in numerous fields, including environmental toxicology, hydrology, and air-

modeling.

Mr. Arsenault even hired an expert hydrologist and environmental engineer, Dr. Frank

Willis. Dr. Willis, a pilot, continually flew and landed his seaplane throughout the Gulf region

5

and took photographs to document the discharge and track the flow of the oil as it spread out and approached the beaches, marshes and coastal estuaries.  Another expert, Marco Kaltofen, on behalf of Mr. Stuart Smith's consortium of lawyers, tested the beaches from Louisiana to Florida. Other lawyers, including the undersigned and Mr. Salas, also had samples taken by Mr. Kaltofen to be used to fingerprint the oil and determine the extent of the spill. Professor Steve Werely from Purdue was retained to calculate flow rates.

When the members of the PSC were chosen, those attorneys, and, therefore, the PSC itself, lost all interest in working with Mr. Feinberg (where their fees would have been smaller). When Mr. Steven Herman was appointed as Liaison Counsel, he requested the undersigned to give to the PSC the numerous experts I and Messrs. Salas, Arsenault, Parker and Smith had already retained, paid and were working with, together with their entire work product.  He demanded that the PSC members would then be in charge of these experts and that I and Messrs. Salas, Arsenault and Parker would have no further involvement. Mr. Herman reported that both he and Mr. Roy had come to the opinion that if all this was provided to the PSC, the PSC would allow the recovery of costs and include our time as common benefit time. However, it was specifically noted that neither Mr. Becnel nor his firm would be allowed to do any further common benefit work.  This was decided despite all the work and the large inventory of clients (in terms of both numbers of clients and values of claims) that he, together with Messrs. Salas, Arsenault, Parker and Smith, had brought to the litigation.

The current motion pending before the Court is an attempt to make all claimants come under the jurisdiction of the PSC and, therefore, to gain unwarranted common benefit fees, to the financial detriment of the claimants.

There is no necessity at this time to adopt a Master Complaint suing all the defendants

(including BP, Halliburton, Anadarko, Weatherford and Cameron).

Accordingly, it is respectfully that the PSC's Motion as to the suggested language of the

Transocean Limitation Notice be denied.

Respectfully submitted,
this __16th__ day of __February__, 2011.

_/s/    Daniel E. Becnel, Jr._____
DANIEL E. BECNEL, JR. (#2926)
CHRISTOPHER D. BECNEL (#30859)
DARRYL J. BECNEL (#22943)
TONI S. BECNEL (#23645)
SALVADORE CHRISTINA, JR. (#27198)
MATTHEW B. MORELAND (#24567)
WILLIAM A. PERCY III (#01532)
**BECNEL LAW FIRM, LLC**
P. O. Drawer H
106 West Seventh Street
Reserve, Louisiana 70084
Telephone: (985) 536-1186
Facsimile: (985) 536-6445
E-mail: dbecnel@becnellaw.com
**Attorneys for Plaintiffs Bill's Oyster House,
LLC; Howard Buras, Armand's Bistro, Faye
Loup et al.; Laura Gautreaux, Brent Rodrigue,
Sr., et al.; and Issadore Creppel**

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that the above and foregoing Motion will be served
on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in
accordance with Pretrial Order No. 12, and that the foregoing will be electronically filed
with the Clerk of Court of the United States District Court for the Eastern District of
Louisiana by using the CM/ ECF System, which will send a notice of electronic filing in
accordance with the procedures established in MDL 2179, on this 16th_ day of _February_,

2011.

_/s/    Daniel E. Becnel, Jr._____

.