UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: OIL SPILL by the OIL RIG
       "DEEPWATER HORIZON" in the
       GULF OF MEXICO, on
       APRIL 20, 2010

THIS DOCUMENT RELATES TO:
ALL CASES

MDL NO. 2179

SECTION: J

JUDGE BARBIER
MAG. JUDGE SHUSHAN

## BP'S BRIEF IN OPPOSITION TO PLAINTIFF'S EX PARTE MOTION FOR COURT APPROVAL OF PROPOSED NOTICE

Defendants BP Exploration & Production Inc. and BP America Production Company (the "BP Parties") respectfully object to the PSC's Motion for Court Approval of its Proposed Notice ("Notice"). The proposed Notice does not simply advertise the April 20th monition deadline applicable to the Transocean Limitation Action, but rather seeks approval for a "Court Authorized Notice" scheme to solicit potential claimants to sue "BP and the other defendants," even though there has been no class certification ruling by this Court. Indeed, at the PSC's request, all class certification issues in MDL 2179 have been tabled. There is no basis in the law or under the Federal Rules for the Court to authorize the lawsuit solicitation provisions or the other expanded aspects of the PSC's proposed Notice.

To the extent the Court determines that additional Rule F(4) notice of the Limitation Action is necessary, the BP Parties do not object, so long as the notice is limited — as was the

previous Rule F(4) notice that was approved by Judge Ellison and published at the request of Transocean — to providing information about the monition date for the Limitation Action.

While the PSC seeks to use Rule F(4) as justification for its proposed Notice, the Notice goes well beyond virtually all of the Rule F(4) notification provisions. The PSC's Notice is a transparent attempt at using the Court's imprimatur to help the PSC solicit new potential claimants into MDL 2179 via a Rule 23 notice scheme, without having to first satisfy Rule 23's class certification requirements. The case law and authorities are clear on this point: no Rule 23 notice is permitted unless and until a class is certified.

In addition, the PSC's Notice would undercut the congressionally-mandated OPA claims process by issuing a "Court Authorized Notice" aimed at soliciting lawsuits that would automatically convert potential Limitation Action claimants against the vessel owner into MDL 2179 litigants versus other parties. If the PSC's Notice proceeds, it will likely result in improperly filed MDL 2179 claims that will have to be dismissed due to OPA's mandatory 90-day presentment requirement, wasting the time and resources of the Court, the parties, and the new claimants.

As stated above, the BP Parties do not object if the Court determines that further notice of the Limitation Action and monition date should be issued according to the Rule F(4) guidelines. Moreover, parties are free to advertise to potential claimants in accordance with the relevant legal and ethical rules. However, the PSC's attempt to invoke the Court's authority to solicit potential litigants against "BP and the other defendants" in MDL 2179 proceedings is unjustifiable and prohibited under well-established case law. The PSC's Motion, to that extent, should be denied.

## BACKGROUND

**1.      Prior Notice by Transocean Of the Limitation Action.**

On May 13, 2010, Judge Ellison of the Southern District of Texas ordered that Triton Asset Leasing GmbH and various other Transocean entities (collectively "Transocean") publish and distribute notice of the Limitation Action initiated by Transocean in accordance with Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure [hereinafter Rule F].   (Ex. A, at 3-4.)   Judge Ellison's notice plan included ordering Transocean to publish specific, detailed information about the Limitation Action in the *Houston Chronicle* and to mail "a copy of the Notice of Complaint and Petition to every person known to have made any claim or filed any actions" related to the *Deepwater Horizon* incident. *Id.* at 4.

Transocean did not simply comply with the Court Order regarding publication in the *Houston Chronicle*.  It went above-and-beyond, publishing the notice for four successive weeks in at least 8 other newspapers, including the *Times Picayune* (New Orleans, LA), *The Daily Advertiser* (Lafayette, LA), the *Mobile Press Register*, the *Panama City News Herald*, the *Biloxi-Gulfport Sun Herald*, the *Pensacola News Journal*, *The Advocate* (Baton Rouge, LA), and the *Miami Herald*.  (Exs. B & C.)  Transocean even republished its Rule F(4) notice without being ordered to do so, after this Court moved the monition deadline.  (Transocean Resp. in Opp'n to Pls.' Mot. at 2.)  There has been no suggestion from any party to this action that Transocean did not comply with Judge Ellison's Order or meet the publication and notice requirements of Rule F(4).

**2.      Class Certification Issues Are Tabled By This Court At the PSC's Request.**

In the fall of 2010, during discussions by the Court with various parties regarding initial case management, the PSC opposed having the Court make an early determination on class

3

certification or having any class certification proceedings prior to the Limitation Trial (or prior to potential OPA test cases).  On October 6, 2010, in the PSC's proposed Case Management Order, the PSC draft proposed an indefinite stay on class certification determinations.  (Ex, D, Proposed CMO # 1, Doc 474-4, at 14.)  Again, at the October 15, 2010 status conference, the PSC stated that class certification issues should be tabled pending further discovery and possible test trials. (Ex. E, Status Conf. Tr. 29-31, Oct. 15, 2010.)  Four days later, on October 19, 2010, the Court issued PTO # 11, which stayed all "Federal Rule 23 motion practice and discovery on class certification issues . . . until further order of this Court."  (Ex. F, PTO # 11 at § VII.)  As a result of PTO # 11, there has been no discovery of class certification issues, no Rule 23 motion for class certification has been filed, and no determination by the Court as to the appropriateness of these cases for class treatment.

**3.      The Proposed Class Notice.**

On February 8, 2011, without meeting and conferring with the Defendants on the issue, the PSC filed a Motion asking the Court to approve its proposed Notice regarding the April 20th monition date to "potential claimants in Limitation *and other potential litigants*."  (Pls.' Mem. at 2; emphasis added.)   The Notice, which displays the Court's seal and the notation "Court Authorized Notice" prominently at the top, is entitled "To Protect Your Right to Recover Money and Other Damages Against Transocean."  (Ex. G.)

The proposed Notice is very different from the notice under Rule F previously published by Transocean in accordance with Judge Ellison's Order.  The body of the new Notice spends nearly as much time describing how potential claimants can bring a lawsuit against "BP and the other defendants" as it does discussing the Limitation Action.  In fact, the Notice advertises that, by filing a short-form joinder claims form, potential claimants will be joined in the "master lawsuit that has been filed against BP and other Defendants."  (Ex. G.)  It also has an entire

section dedicated to explaining that a potential claimant can still bring a claim to the Gulf Coast Claims Facility (GCCF) if they submit a short-form joinder claims form.  *Id.*  In short, the Notice is not an expanded version of an admiralty law notice of the monition date; it is a lawyer's solicitation of new litigants to join litigation versus all defendants under the guise of a court notice.

As explained below, there is no basis in the law for such a class notice without a class certification order, or a notice that goes far beyond the Rule F parameters.  The proposed Notice is instead a blatant solicitation of members of the public to join separate civil lawsuits before this Court.  What's more, the Notice makes such solicitations using incomplete and inaccurate information about the effect of joining civil lawsuits on a member of the public's ability to make a claim against Responsible Parties including BP under OPA.

## ARGUMENT

The Court should deny the PSC's Motion because: (1) the Notice goes well-beyond the notice provisions of Rule F(4); (2) the Notice essentially seeks a "court authorized," pre-class certification solicitation of prospective claimants, which is clearly prohibited under Rule 23 and the corresponding case law; (3) the Notice would  undercut the congressionally-sanctioned OPA claims process; and (4) the Notice would likely lead to an influx of improperly filed claims that would have to be dismissed for failure to allege proper presentment, wasting the resources of both the Court and the parties.  If the Court determines that additional notice should be distributed regarding the monition deadline of the Limitation Trial, such notice should be disseminated only according to the provisions of Rule F(4), as was prior notice by Transocean.

1.     **The PSC Notice Scheme Goes Well-beyond Rule F(4)'s Notification Provisions and Instead Seeks to Send A Broad, "Court Authorized" Solicitation For New Claimants.**

There is no basis for the PSC's proposed Notice scheme under Rule F(4).  First, Transocean — the party responsible for publishing Rule F(4) notice — has already met and exceeded the Rule F(4) publication requirements.  In addition to publishing the required notice for four successive weeks in the *Houston Chronicle* as ordered by Rule F(4) and Judge Ellison, Transocean also published notice for four successive weeks in at least 8 other major newspapers spanning the Gulf Coast region.  (Exs. B & C.)  The PSC has not claimed that Transocean did not comply with both Judge Ellison's Order and the notification requirements of Rule F(4).  Nor could it.  Not only did Transocean meet all of the Rule F(4) requirements, it even voluntarily published additional Rule F(4) notice for four consecutive weeks after this Court extended the monition deadline.  (Transocean Resp. in Opp'n to Pls.' Mot. at 2.)  The PSC also did not cite, and BP is not aware of, any cases in which a court ordered additional Rule F(4) notice after the requirements of Rule F(4) had been met.

Second, Rule F(4) is clear that notice regarding the Limitation Action is to be distributed by Transocean to newspapers identified by the Court and to the set of recipients described in the Rule.  Supp. R. for Certain Admiralty & Mar. Claims Rule F(4) ("The notice shall be published in such newspaper or newspapers as the court may direct once a week for four successive weeks prior to the date fixed for the filing of claims.  The plaintiff not later than the day of second publication shall also mail a copy of the notice to every person known to have made any claim against the vessel or the plaintiff arising out of the voyage or trip on which the claims sought to be limited arose.").  If the Court concludes that additional Rule F(4) notice regarding the monition date is necessary (for example, to emphasize the modified monition date of April 20,

2011), Transocean — not the PSC — is the proper party to arrange publication of that additional notice.

Moreover, while the PSC's Motion is conspicuously silent as to how the PSC intends to distribute its proposed Notice, the PSC's statement that it anticipates a "massive influx" of short-form joinders following its distribution implies that the PSC intends to distribute its Notice widely.  (Ex. H, Status Conf. Tr. 17:8-14, Jan. 28, 2011.)  Indeed, the PSC has recently stated its intent to use TV and radio ads for solicitation of claimants under the guise of a court sanctioned notice.  But such a distribution scheme would go well-beyond the provisions of Rule F(4), which states that notice is to be sent "to every person known to have made any claim against the vessel or the plaintiff arising out of the voyage or trip on which the claims sought to be limited arose" (the "Required Parties") and to those "newspapers" identified by the Court.  The PSC has not argued or provided any evidence that Transocean failed to distribute its Rule F(4) notice to the Required Parties.  The only other avenue of publication contemplated by Rule F(4) is "newspapers as the court may direct."  The Rule does not grant the unlimited authority that the PSC is apparently seeking to distribute notice flyers, television commercials, and radio messages wherever it desires.

Third, the content of the PSC's Notice goes well-beyond what is envisioned by Rule F(4).  This point is made plain by simply comparing the court-ordered Rule F(4) notices with the PSC's proposed Notice.  (Exs. C & G.)  Rule F(4)'s purpose regarding notification is to publicize the monition date and the underlying limitation action to potential claimants.  That is why the notifications published by Transocean are limited to addressing those two issues.  The PSC's Notice, however, plainly goes beyond publicizing the April 20, 2011 monition date for the Limitation Action.  For instance, it discusses filing a claim "against BP and the other defendants"

and has an entire section detailing that potential claimants can "participate in the federal lawsuit even if you already filed a claim with BP's GCCF."  (Ex. G.)

In sum, while the PSC attempts to justify its Notice scheme via Rule F(4), the PSC's Notice does not stay within *any* of the Rule's requirements regarding notification.  The PSC does not show that the Rule F(4) notification requirements have not already been met, that the PSC is a proper party to distribute any additional notice, that the additional notice will be distributed through the channels enumerated in Rule F(4), or that the sole purpose of the Notice is to advertise the monition date of the Limitation Action.  Nor can it, because the primary purpose of the PSC's Notice is not to advertise the monition date of the Limitation Action, but rather to gather potential claimants for the PSC's lawsuit against "BP and the other defendants."

## 2.    The PSC's Notice Proposal is Prohibited By Rule 23, Which Does Not Allow Pre-Class Certification Notice.

The law on pre-class certification notice under Fed. R. Civ. P. 23 is clear: "***notice*** for the purpose of bringing the claims of unnamed members of the plaintiff class before the court ***may not issue before a class action has been certified***."  *Pan Am. World Airways, Inc. v. US Dist. Ct. for the C.D. Cal.*, 523 F.2d 1073, 1079 (9th Cir. 1975) (emphasis added); *see also* Federal Practice & Procedure § 1788 (3rd ed.) ("[N]otice should not be sent out prior to class certification . . . ."); 3 Newberg on Class Actions § 8:9 (4th ed.) ("There is no occasion for any notice until after the propriety of the class action been determined . . . ."); Manual for Complex Litigation (Fourth) § 21.311 ("[N]otice to class members should be given promptly ***after*** the certification order is issued.") (emphasis added).  In fact, a recent Federal Claims Court decision could not find "a single case wherein a federal court permissibly notified potential plaintiffs of an on-going case before class certification."  *Farmers Co-op. Co. v. U.S.*, 90 Fed. Cl. 72, 73 (Fed. Cl. 2009).   The purpose of this prohibition is to prevent parties from

"circumvent[ing] Rule 23 by creating a mass of joined claims that resembles a class action but fails to satisfy the requirements of the rule." *Pan Am. World Airways, Inc.*, 523 F.2d at 1079.[1]

The PSC's proposed Notice scheme would issue a solicitation meant to "join [prospective claimants] in the master lawsuit that has been filed against BP and the other Defendants." (Ex. G)  Although not in its carefully-crafted Motion, Plaintiffs' Liaison Counsel stated in open court that it is essentially seeking to distribute a Rule 23 notice, asserting that its Notice is "typical" of other notices "used in communicating notices to punitive [*sic*] class members in various situations . . ." (Ex. H., Status Conf. Tr. 17:11-14, Jan. 28, 2011.)  Most troubling, perhaps, is that the PSC's Notice attempts to use the Court's imprimatur to help solicit these new claimants, as the very conspicuous Court seal and "Court Authorized Notice" notation at the top of the PSC's Notice demonstrate.[2]  While the PSC's Notice in some modified form might be proper if a class was ever certified in these cases, as things now stand, and at the urging of the PSC, all proceedings on class certification have been tabled indefinitely.  As a result, under virtually all of the case law and class action authorities, the PSC's Notice to prospective class members is wholly improper.[3]

---

[1] The PSC's Notice scheme would also effectively allow the PSC to distribute Rule 23 notice while preventing the defendants from availing themselves of the protections of Rule 23(f).

[2] To the extent the PSC or any other party, wants to privately advertise for clients, they are free to do so, provided the advertisements follow the relevant legal and ethical rules.  In fact, many lawyers have been running such advertisements for months.  The PSC should not, however, be allowed to blatantly solicit new claimants for these proceedings under the guise of a "Court Authorized Notice."

[3] The PSC's additional argument that its Notice is necessary to "help ameliorate any confusion that may have stemmed from potentially inaccurate or confusing information provided by or thru BP's Gulf Coast Claims Facility" is also without merit.  (Pls.' Mem. at 1-2.)  The PSC's Notice simply combines limited information about the monition date for the Limitation Action with a straightforward solicitation to potential claimants to join in a lawsuit against "BP and other defendants."  Nothing in the PSC's Notice even addresses, let alone corrects, any alleged "potentially inaccurate or confusing" information allegedly released by the GCCF.

3.     **By Asking For Court Approval Of Its Notice, The PSC Seeks To Enlist The Court In An Effort To Undercut The OPA Claims Process And Frustrate Congressional Policy.**

The PSC Notice also runs afoul of OPA.  OPA's administrative claims process is the congressionally-mandated vehicle for addressing maritime oil spills.  Congress crafted OPA as a comprehensive statutory answer to oil spill liability and compensation.  *Gabarick v. Lauren Mar. (Am.) Inc.*, No. 08-4007, 2009 WL 102549, at *2 (E.D. La. Jan. 12, 2009); *Tanguis v. M/V Westchester*, 153 F. Supp. 2d 859, 867 (E.D. La. 2001).  As part of that federal regime, Congress instituted a requirement that "responsible parties" establish a privately-administered claims process for spill-related recoveries, rather than a process based primarily on litigation.  135 Cong. Rec. H7965 (daily ed. Nov. 2, 1989) ("The system of liability and compensation provided for in the bill . . . is ***intended to allow for quick and complete payment of reasonable claims without resort to cumbersome litigation***.") (statement of Rep. Hammerschmidt) (emphasis added); 135 Cong. Rec. H7962 (daily ed. Nov. 2, 1989) (statement of Rep. Lent) ("***The thrust of this legislation is to "eliminate, to the extent possible, the need for an injured person to seek recourse through the litigation process.***") (emphasis added).  Accordingly, Congress designed OPA to promote settlement and avoid litigation.  *Gabarick*, 2009 WL 102549 at *3; *Turner v. Murphy Oil USA, Inc.*, No. 05-4206, 2007 WL 4208986, at *2 (E.D. La. Nov. 21, 2007); *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.*, 51 F.3d 235, 238-39 (11th Cir. 1995); H.R. Rep. No. 101-242 Part 2, at 66 (1989) (lawsuits only appropriate "where attempts to reach a settlement with the responsible party . . . were unsuccessful").

To promote settlements through OPA claims facilities, Congress set out specific directions for "responsible parties" to advertise oil spills and corresponding recovery procedures.  33. U.S.C. §§ 2714(b) & (c).  These statutory provisions and their regulatory counterparts empower the executive branch to regulate the content, scope, means, sufficiency, and timing of

advertising related to OPA spills and compensation.  *See Id.*; 33 C.F.R. § 136.309 (National Pollution Funds Center (NPFC) determines "type, geographic scope, frequency, and duration of advertisement required" for the specific circumstances of each incident); 33 C.F.R. § 136.313 (content and NPFC control over content of advertising).  Congress intended OPA's advertising provisions and agency regulations to provide a unified governance regime binding public and private parties.  H.R. Rep. No. 101-653, at 18 (1990) (Conf. Rep.) ("The Conferees intend that uniform procedures shall be established and that these procedures are used by both public and private parties.").

Approving the PSC's Notice in this case would mean using the Court's imprimatur (via the conspicuous placement of the Court's Seal and "Court Authorized Notice" notation at the top of the Notice) to solicit claimants whose Limitation Action short-forms are automatically converted into MDL 2179 cases.  In effect, this would subject the MDL to Rule F(4) and work to make litigation — instead of an OPA claims facility, as Congress intended — the primary method for resolving spill-related claims.  Endorsing the MDL as the main road to recovery would, in turn, minimize the efficiencies Congress sought to promote through OPA's claims process.  Thus, by adding its seal of approval to the PSC's Notice, the Court would undercut OPA and frustrate congressional policy.[4]

**4.      The PSC's Notice Will Result In Many Improperly-Filed Lawsuits By Claimants Who Have Not Satisfied The Mandatory Presentment Requirements of 33 U.S.C. § 2713 Before Filing Suit.**

OPA has a mandatory 90-day presentment period that must lapse before a claimant may file a lawsuit.  33 U.S.C. § 2713(a) & (c) ("***all claims*** for removal costs or damages ***shall be presented first to the responsible party***") (emphasis added); *Boca Ciega*, 51 F.3d 235 (affirming

---

[4] In contrast, recall the Supreme Court's warning that "[e]ven in admiralty, however, where the federal judiciary's lawmaking power may well be at its strongest, it is our duty to respect the will of Congress."  *Nw. Airlines, Inc. v. Transp. Workers Union of Am., AFL-CIO*, 451 U.S. 77, 96 (1981).

dismissal of lawsuits not properly presented under OPA); *Gabarick*, 2009 WL 102549 (dismissing claims for failure to present pursuant to OPA); *Turner*, 2007 WL 4208986 (same); *Berthelot v. Boh Bros. Const. Co.*, No. Civ.A. 05-4182, 2006 WL 2256995 (E.D. La. July 19, 2006) (claim that OPA supports jurisdiction "has no merit" where plaintiffs do not satisfy OPA presentment); *Abundiz v. Explorer Pipeline Co.*, Nos. Civ.A. 300CV2029H, 303CV0508H, 303CV0787H.2003, WL 23096018 (N.D. Tex. Nov. 25, 2003) (dismissing claims for failure to present pursuant to OPA); *Marathon Pipe Line Co. v. LaRoche Indus. Inc.*, 944 F. Supp. 476 (E.D. La. 1996).

Accordingly, potential plaintiffs who have not already presented their claim to BP or the GCCF cannot satisfy OPA's 90-day presentment period in time to properly join the MDL by April 20, 2011.  *See* 33 U.S.C. § 2713(c).  The PSC's Notice nevertheless encourages — and seeks to recruit — potential MDL litigants to disregard OPA and file lawsuits before April 20, 2011.  Because OPA bars lawsuits before presentment, the Court will have to dismiss the overwhelming majority of limitation claimants conjoined to the MDL through the PSC's Notice, for it is not sufficient to simply stay proceedings for such plaintiffs pending satisfaction of the OPA mandatory presentment requirement.  *See Gabarick*, 2009 WL 102549, at *3 (holding that OPA claims filed in limitation action must be "dismissed without prejudice, rather than stayed, as desired by certain claimants" where claimants had not complied with presentment requirements).[5]  Therefore, the "massive influx" of short forms that the Plaintiffs anticipate materializing based on the proposed Notice, (Ex. H, Status Conf. Tr. 17:8-10, Jan. 28, 2011), if

---

[5] The mandatory OPA presentment requirement will be addressed in detail in BP's Motion To Dismiss Plaintiffs' Master Complaint for the B1 Bundle.  Dismissal is required pursuant to Fed. R. Civ. P. 12(b)(1) and/or 12(b)(6) where a plaintiff has failed to satisfy OPA's mandatory presentment requirement in advance of filing their lawsuit. *See also Boca Ciego*, 51 F.3d at 240; *Turner*, 2007 WL 4208968, at *2; *Berthelot*, 2006 WL 2256995, at *6; *Abundiz*, 2003 WL 23096018, at *3-5; *Marathon Pipe Line Co.*, 944 F. Supp. at 477; *Johnson v. Colonial Pipeline Co.*, 830 F. Supp. 309, 311 (E.D. Va. 1993).

an accurate prediction, would likely be a flood of improperly filed lawsuits that would serve to simply confuse potential litigants whose claims will likely have to be dismissed and waste both judicial and party resources.

Moreover, the Notice provides incorrect and misleading information about OPA presentment. The Notice states: "There may be other requirements you have to fulfill to proceed with a lawsuit against BP and the other defendants. You may, for example, have to fulfill presentment requirements of the Oil Pollution Act." (Ex. G.) Because OPA's pre-suit requirements are mandatory, recipients **will** have to meet additional requirements **before** joining the MDL. However, the Notice fails to inform recipients that they cannot meet these mandatory requirements by April 20, 2011, unless they filed final claims for a sum certain with supporting documentation before January 21, 2011. 33 U.S.C. §§ 2701(3) & 2713; *see, e.g.*, *Gabarick*, 2009 WL 102549, at *2 n.21. The Notice also states that "[y]ou can participate in the federal lawsuit even if you already filed a claim with BP's GCCF." (Ex. G.) But this is not true: recipients can only join MDL 2179 **after** they satisfy the mandatory pre-suit requirements of 33 U.S.C. § 2713. The Notice therefore provides inaccurate information that will mislead recipients into thinking that they are eligible for MDL 2179 when they are not.

The Notice also makes inaccurate and incomplete statements about the consequences of joining MDL 2179. The PSC's Notice promises that joining the MDL "will not prevent you from recovering money through BP's GCCF." (Ex. G.) First, this statement is not true, because legal determinations in both the Limitations Action and MDL 2179 may preclude recipients from recovering against BP and the GCCF. Second, given that the Notice states that "[y]ou can participate in the federal lawsuit even if you already filed a claim with BP's GCCF," the recipients will likely be misled into believing that filing a short-form joinder will also have no

impact on their ability to file a claim with the U.S. Coast Guard. *Id.* Under 33 U.S.C. § 2713(b)(2), however, as a matter of law, a claimant forfeits the ability to take a claim to the Coast Guard for the relief they are seeking through the short-form claims process during the pendency of their claim. Moreover, since there is no express tolling provision allowing potential litigants to regain this right in the event that MDL 2179 exceeds the relevant statute of limitations, short-form claimants could lose their right to recover from the Oil Spill Liability Trust Fund completely. *See* 33 U.S.C. §§ 2713(b)(2) & 2712(h). As a result of these misstatements and omissions, the PSC's Notice will likely confuse and mislead recipients about the legal rights that they may lose by filing a short-form joinder.

## CONCLUSION

The PSC is free to advertise for clients on its own within the relevant legal and ethical guidelines. Moreover, the BP Parties do not object if the Court determines that additional notice regarding the Limitation Action is necessary, provided that such notice tracks the prior Notice by Transocean and stays within the applicable provisions of Rule F(4). However, for the foregoing reasons, the BP Parties respectfully request that this Court deny the PSC's Motion to essentially enact a "court authorized" Rule 23 notice scheme to solicit prospective class members when no classes have been certified in this action.

Respectfully submitted,

/s/ Don K. Haycraft
Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana  70139-5099
Telephone:  (504) 581-7979
Facsimile:  (504) 556-4108

and

14

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL  60654
312-862-2000 (Tel)
312-862-2200 (Fax)

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
202-662-5985

**Attorneys for BP America Production
Company and BP Exploration &
Production Inc.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 16th day of February, 2011.

/s/ Don K. Haycraft
_____
