# EXHIBIT D

## SUPPLEMENTAL AFFIDAVIT OF JOHN H. JESSEN

COUNTY OF KING      )
                    ) SS
STATE OF WASHINGTON )

1. I, John H. Jessen, have been asked to provide a supplemental affidavit regarding the Plaintiffs' and Defendants' proposed search terms and selection criteria for discovery of Electronically Stored Information ("ESI") in *IN RE*: OIL SPILL by the OIL RIG "*DEEPWATER HORIZON*," MDL No. 2179.

2. My affidavit will be divided into the following sections. *First*, I will discuss the issue I was asked to evaluate; namely, whether, given the requirements of modern ESI-discovery litigation and this case, it is reasonable for the PSC to decline to agree to selection criteria such as custodians and date limitations. *Second*, I will set forth a summary of the information provided to me or reviewed by me. *Third*, I will provide and describe my opinions regarding the importance of cooperation in identifying selection criteria in ESI-discovery litigation. *Finally*, I will provide and describe my opinions as to whether Defendants should be required, for any given request for production, to (1) produce ESI through agreed upon search terms, *as well as* (2) produce all the documents Defendants would have otherwise produced if no search terms had been employed.

Supplemental Affidavit of John H. Jessen - Page 1

## I. What I Was Asked to Evaluate

3. I was asked to evaluate various correspondence between Defendants and Plaintiffs regarding the identification of selection criteria.

4. I was also asked to evaluate Plaintiffs' claim that Defendants must not only respond to requests for production through the use of agreed upon search terms and other selection criteria as ordered in PreTrial Order #16, but also, as Plaintiffs contend, that Defendants must produce all documents that Defendants would have produced without search terms.

## II. What I Have Reviewed

5. To provide me with the information necessary to formulate my opinions, I have been provided with various correspondence among counsel. I have also reviewed the relevant portions of the November 15, 2010 Transcript of Proceedings before the Honorable Sally Shushan, MDL No. 2179 PreTrial Order #16. My understanding of the facts upon which my opinions are based is derived from these documents.

## III. My Opinions Concerning Cooperation in the Identification of Selection Criteria

6. Whether it be an electronic or paper discovery, the goal of any well thought-out, reasoned discovery response is the same: to identify, locate, retrieve, assess, review, and produce relevant, responsive, non-privileged data sets. In electronic discovery, it is essential for parties to (1) agree upon using selection criteria as a means to identify specific ESI that will be searched for potentially responsive documents; and, (2) work together to develop a

Supplemental Affidavit of John H. Jessen - Page 2

rational and defensible search and review methodology. This collaborative approach is the key to an efficient, fair, and, frankly, "doable" e-discovery effort.

7. The identification of proper selection criteria is at the heart of any proper, good faith electronic discovery effort. Just as in any paper discovery, no requesting party has either the right to seek (or rationally the desire or capability to review) every source of ESI from a responding party. I am not aware of any litigation in history that has required the search of every source of data from a responding party. Rather, a responding party is obligated to develop selection criteria consisting of people, systems, and data stores that are more likely than not to have relevant data and then to reach into those targeted data stores using appropriate processes to retrieve potentially responsive documents.

8. The development and use of rational, good faith selection criteria is critical in electronic discovery because conducting a system wide search across a company's computer system(s), if not impossible, is technically infeasible. A typical company's information technology infrastructure contains diverse operating systems, application programs (usually spanning many different versions), and data formats. In my experience, by the time the technology infrastructure could even be properly catalogued to determine a proper search protocol and then a system wide search capability developed, the search capability would undoubtedly be outdated and obsolete due to changes in technology, software versions, and data usage. Because there is no single database or source for all of a company's data, determining where to focus discovery efforts through the use of selection criteria is critical.

Supplemental Affidavit of John H. Jessen - Page 3

9. As with all selection criteria, well thought-out and defensible identification of things such as specific custodians and beginning and ending date limitations are crucial in including relevant data and helping to exclude data that is less likely to be relevant. Including custodians who are not likely to have relevant data and/or extending the date range of applicable ESI beyond the time period for which relevant data is likely to be found is inefficient, overwhelming to the process, and a waste of time and money.

## IV. My Opinions Concerning The Proper Interaction Between Search Terms And Non Search Term Collections In Electronic Discovery

10. Search terms are used universally in electronic discovery today. The primary reasons for this are twofold: (1) the amount of ESI in virtually any organization, let alone one as large and distributed as BP, is simply too great to support manual efforts in all but a limited fashion, and, (2) the tools and processes for utilizing search in discovery have reached a point where they can be employed effectively, accurately, and economically.

11. A standard process is one where the parties work together to develop an initial set of search criteria, which is then run through the set of ESI defined by the application of the selection criteria discussed earlier. The data set that is returned through such a search (often referred to as the "hit" set) is then reviewed by a responding party for privilege, relevance, and responsiveness. As this review is taking place, any new information that is learned from the document set that can be used to improve the accuracy of the search process, either by adding, removing, or modifying the search criteria, is incorporated into the search criteria and incremental searches can be run against the data set. This idea of a feedback loop based on

Supplemental Affidavit of John H. Jessen - Page 4

lessons learned is one of the aspects of the use of search through ESI that makes it so effective.

12. In electronic discovery, using search terms is indisputably more efficient (from the perspective of time, money, and complexity) than not using search terms. Properly developed search terms are not only more efficient, but many argue that they are more accurate than a manual human review as they maintain consistency over time, allow for incremental feedback loops based on lessons learned and new information, and do not suffer from fatigue or boredom.

13. A properly developed search protocol is comprised of (1) a well-developed set of search terms (2) being applied against a set of ESI selected using agreed-upon selection criteria (3) with appropriate search tools that incorporate features that make the search more effective by looking for things like misspellings and search terms that are within a given proximity to one another (4) and that incorporate feedback loops that apply lessons learned to the process in both a go-forward and a retroactive manner. When all of these components are considered, a rational, efficient, and effective process results. When components are missing, the process suffers. For example, trying to run search terms through "all" data and not data identified by selection criteria effectively destroys the efficiency of the process.

14. While the use of a search process as defined above should be the default process for discovery of ESI today, there are some exceptions that should be considered, such as: (1) when marginal utility dictates a manual search (i.e., when the data is already organized

and a party knows exactly where the requested data is); and, (2) when the data requested doesn't lend itself to automated search (e.g. 3-D blueprints or other formats that are of a format that are not inherently searchable). It is my understanding that PreTrial Order #16 allows for parties to request non-search-term documents in certain circumstances, and that BP has acted in accordance with PreTrial Order #16 in this regard. A proper process should allow for parties to request, based upon rational and defensible reasons, those certain documents that may not fit within an automated search protocol. It appears as if PreTrial Order #16 properly allows for this.

15. Although the use of search terms and manual procedures may be right in particular situations (as stated by Comment 11.c to The Sedona Principle 11, *The Sedona Principles, Second Edition*, June 2007), a responding party should not be obligated to conduct a search term collection and review as well as a full blown non-search term collection and review for any given request for production. Such a scenario would be akin to conducting a manual search of every document and then conducting a search term review, which would be duplicative and would defeat the purpose of developing search term criteria in the first place.

16. The Sedona Principle 11 speaks to the points of my affidavit. "A responding party may satisfy its good faith obligation to preserve and produce relevant electronically stored information by using electronic tools and processes, such as data sampling, searching, or the use of selection criteria, to identify data reasonably likely to contain relevant information." (Principle 11, *The Sedona Principles, Second Edition*, June 2007). When the spirit of this Sedona Principle is combined with a good-faith collaboration between the parties

Supplemental Affidavit of John H. Jessen - Page 6

to (1) develop selection criteria to define the set of ESI to be searched and (2) search criteria to define the way in which that ESI will be searched, an effective, efficient and proper ESI discovery process emerges.

**FURTHER AFFIANT SAYETH NAUGHT**

JOHN H. JESSEN

Subscribed and sworn to before me this 16th day of February, 2011

Notary Public

My commission expires: Dec 31, 2011