# EXHIBIT H



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | | |
|---|---|---|---|
| IN RE: | OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | § § § § § | MDL NO. 2179<br><br>SECTION: J |
| This Document Relates To: ALL CASES | | § § § § § § | JUDGE BARBIER<br>MAG. JUDGE SHUSHAN |

**PLAINTIFFS' INTERROGATORIES AND REQUESTS FOR PRODUCTION TO BP PRODUCTS NORTH AMERICA, INC.**

**NOW COME** Plaintiffs, through Plaintiffs' Liaison Counsel, and, pursuant to Rules 26, 33 and 34 of the Federal Rules of Civil Procedure, serve the following requests upon BP Products North America, Inc. and request that responses be served upon Plaintiffs' Liaison Counsel within thirty (30) days, or as otherwise provided herein, (or upon a rolling or other alternative schedule mutually agreed upon by Plaintiffs' Liaison Counsel and Counsel for Defendant).

**INSTRUCTIONS**

(a)   Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, these interrogatories and requests for production are continuing in nature so that if, after answering, you acquire additional responsive knowledge or information or determine that an answer you provided was false, incomplete, or misleading, Plaintiffs direct that you serve supplemental or amended answers as soon as reasonably possible after acquiring such additional knowledge or information. Furthermore, documents or electronically stored information ("ESI") prepared prior to or subsequent to the period covered by these interrogatories, but which nonetheless relate or refer thereto, are to be included in your response.

(b)   As defined below, you are to produce all documents in your control. Production of documents shall be in conformance with all procedures and formats set forth by the Court.

(c) Pursuant to Rule 34(b)(1)(c), all ESI responses to these discovery requests must be produced in native file format, including embedded data or metadata associated with each electronic file. At a minimum, you shall include in your ESI production all metadata fields recommended by the Electronic Discovery Reference Model ("EDRM") and hash values in the format set forth by the EDRM. Furthermore, if any responsive ESI is not in a "reasonably usable form," you must notify Plaintiffs' Liaison Counsel immediately, in order to confer regarding any translation necessary to put the ESI in a reasonably usable form. Any images of documents which exist in hard copy paper format shall be provided as single-page Tagged Image File Format ("TIFFs" or ".tiff format"). All images generated from hard copy documents shall be scanned as black and white images at 300 d.p.i. resolution and shall be saved and produced in a Group 4 compression single-page "TIFF" format and reflect, without visual degradation, the full and complete information contained on the original document. All images generated from native electronic documents with the exception of source code, dynamic web pages, and web content, shall be saved electronically (or "printed") in a Group 4 compression single-page "TIFF" image that reflects the full and complete information contained on the original document. The parties shall produce a "load file" that is compatible with a commercially available document management software, such as Concordance, to accompany the images, which load file shall include information about where each document begins and ends to facilitate the use of the produced images through a document management or litigation support database system.

(d) All produced documents shall have a legible, unique page identifier ("Bates Number") electronically "burned" onto each image at a location that does not obliterate, conceal, or interfere with any information from the source document. No other legend or stamp will be placed on the document image other than a confidentiality legend (where applicable) redactions (consistent with the Stipulated Protective Order in this matter, or any other protective orders agreed to in the future), and the Bates Number identified above. The confidential legend shall be "burned" onto the document's image at a location that does not obliterate or obscure any information from the source document. With respect to the identification of files produced in their native format, the parties shall confer on an appropriate method for applying a unique identifier to each file produced.

(e) Each page image file shall be named with the unique Bates Number of the page of document, followed by the extension ".TIF". In the event the Bates Number contains a symbol and/or character that cannot be included in a file name, the symbol and/or character will be omitted from the file name.

(f) If you refuse to respond to any of these interrogatories or requests for production based on a claim of privilege, pursuant to Federal Rule of Civil Procedure 26(b)(5), you must provide a "Privilege Log" setting forth, with specificity, a statement of the claim of privilege and all facts relied upon in support of that claim, including the parties involved, any dates involved, the relevant subject matter of the privileged material, any documents or ESI supporting the privileged information, including the dates, authors, recipients, title, and subject matter, and present location of any documents or ESI involved. In the case of attorney work product privilege, you must also identify the litigation for which the work product was prepared.

(g) If you allege that any request is in any manner ambiguous, you are instructed to describe in detail the reasons for your allegations, including but not limited to, each interpretation to which you allege the specific request for discovery is subject. Notwithstanding any of the foregoing, you are instructed to respond, to the best of your ability, to the request for production and produce the documents requested.

(h) If you or any of your attorneys, agents, or representatives at any time had possession or control of a document requested and that document has been lost, destroyed, or purged or is not presently in your possession, custody, or control, identify the document and describe the circumstances surrounding the loss, destruction, purge, or separation from your possession, custody, or control, indicating the dates that those circumstances occurred.

## DEFINITIONS

As used herein, the following terms are defined as follows:

(i) "Deepwater Horizon" means, without limitation, the mobile offshore drilling unit (MODU) of that name involved in the drilling of the Macondo Well, or any component thereof, as well as any vessel, vehicle, aircraft, or other equipment used in connection with the process of drilling, developing, exploring for and/or producing oil and gas resources.

(j) "Macondo Well" means the Macondo Prospect (Mississippi Canyon Block 252, abbreviated MC252) an oil and gas prospect in the Gulf of Mexico, off the coast of Louisiana. The prospect was the site of the Deepwater Horizon drilling rig explosion in April 20, 2010.

(k) "Incident" refers to the explosion that occurred on the Deepwater Horizon on or around April 20, 2010.

(l) "Oil spill" refers to all releases, leaks, or emanations of oil, hydrocarbons, gases, or other materials of any kind into the Gulf of Mexico from the Macondo Well or the formation into which the Macondo Well was drilled at any time since April 20, 2010.

(m) "BOP" or "Blowout preventer" relates to the large valve device(s) created by Defendant to ensure safety through the sealing, controlling, and monitoring of oil and gas wells including the associated, monitoring, warning, electronic, and hydraulic systems.

(n) "Deepwater Horizon Blowout Preventer" refers to the large valve device(s) specifically created by Defendant to ensure safety through the sealing, controlling, and monitoring of the Macondo Well including the associated, monitoring, warning, electronic, and hydraulic systems for the Deepwater Horizon rig.

(o) "Clean up" refers to any efforts by you to remove, dispense, clean, mitigate, minimize, collect, or eliminate any oil, hydrocarbons, gases, or other materials of any kind that have been released, leaked, or have emanated into the Gulf of Mexico from the Macondo Well since April 20, 2010.

(p) "Relevant time period" refers to the time period from January 1, 1997 through the current date.

(q) "Defendant," "you," "your," "your company" or "BP" refers to, without limitation, the interests of BP Products North America, Inc. including relevant predecessors, successors, subsidiaries, departments, divisions or affiliates, and including, without limitation, any organization or entities in which BP has a ten percent (10%) or greater ownership interest, together with all current and former directors, officers, employees, agents, representatives, or persons acting, or purporting to act, on its behalf.

(r) "Anadarko" refers to, without limitation, the interests of Anadarko Petroleum Corporation and Anadarko E&P Company, including relevant predecessors, successors, subsidiaries, departments, divisions and/or affiliates, and including, without limitation, any organization or entities in which Anadarko has a ten percent (10%) or greater ownership interest, together with all current and former directors, officers, employees, agents, representatives, or persons acting or purporting to act on its behalf.

(s) "Cameron" refers to, without limitation, the interests Cameron, Cameron International, Cameron International Corporation, Cooper Cameron Corporation, and any of its domestic or international predecessors in interest, successors in interest, subsidiaries, divisions, subdivisions, affiliates, and including, without limitation, any organization or entities in which Cameron has a ten percent (10%) or greater ownership interest, together with all current and former officers, directors, employees, representatives, independent contractors, consultants, or agents, whether present or former, including but not limited to Jack Moore, David Jones, Scott Amann, Richard Coronado, Bolie Williams, Brad Eastman, and including attorneys and accountants.

(t) "Halliburton" refers to, without limitation, the interests of Halliburton, any entity names and any variations thereof of that entity, including Halliburton Energy Services, Inc., any predecessors, successors, parent organizations, subsidiaries, departments, divisions, affiliates, and branches, any organization or entity which Halliburton manages, controls or subcontracts, and including, without limitation, any organization or entities in which Halliburton has a ten percent (10%) or greater ownership interest, together with all current and former directors, officers, employees, agents, representatives, attorneys, contractors, subcontractors, and persons acting or purporting to act on its behalf.

(u) "M-I SWACO" refers to, without limitation, the interests M-I L.L.C d/b/a M-I Drilling Fluids L.L.C., any entity names and any variations thereof of that entity, including M-I SWACO, any predecessors, successors, parent organizations, subsidiaries, departments, divisions, affiliates, and branches, any organization or entity which M-I Swaco manages, controls or subcontracts, and including, without limitation, any organization or entities in which M-I Swaco has a ten percent (10%) or greater ownership interest, together with all current and former directors, officers, employees, agents, representatives, attorneys, contractors, subcontractors, and persons acting or purporting to act on its behalf.