# EXHIBIT I

|  |  |
|---|---|
| Andrew Langan/Chicago/Kirkland-Ellis<br><br>02/14/2011 05:53 PM | To   Sally_Shushan@laed.uscourts.gov<br>cc   James Roy <JIMR@wrightroy.com>, "Herman, S" <sherman@hhkc.com>, RTC@cunninghambounds.com, sterbcow@lksalaw.com, dsc2179@liskow.com,<br>bcc  Esty Lobovits/New York/Kirkland-Ellis<br>Subject  MDL 2179 |

Dear Magistrate Judge Shushan -

I wanted to respond to several of the questions you raised in court last Friday, February 11 regarding the custodial file production for BP's Mark Bly.

The BP Parties and the PSC agreed on a unique custodial certification for the members of BP's internal Incident Investigation Team. Given the PSC's representation that their interest in the deponents related to their role on BP's Incident Investigation Team, we agreed, for these custodians, that BP would focus on just the specific electronic and paper files that each custodian maintained in connection with his (or her) participation on the Incident Investigation Team. We further agreed with PSC representatives that PTO 17 does not require BP to represent that it has produced every document responsive to plaintiffs' requests from a particular custodian's files; but rather that BP has made a good faith, reasonable effort to do so (consistent of course with any unresolved objections to specific requests). BP's custodial certification language is consistent with these agreements reached with the PSC.

With that background and understanding, the BP Parties produced a hard drive containing an additional approximately 1500 documents from Mark Bly's files maintained in connection with his participation on the Incident Investigation Team on Wednesday, February 9, 2010, to the PSC via overnight express delivery. We shipped an additional nineteen hard drives to various other parties including the USA and States' Coordinating Counsel on Thursday, February 10, 2010, also by overnight express delivery. On February 10, 2010 --per PTO 17 and our agreements with the PSC with respect to custodial certifications for BP's internal Incident Investigation Team -- we provided the PSC with a timely certification of BP's good faith effort to complete production of the specified custodial files for Mark Bly. Mr. Bly's deposition is set to occur on February 17-18, 2010. As we explained in court last Friday, it is not possible for BP or its vendor to burn 20 hard drives at once, and thus it is inevitable that some of the 20 stakeholders may sometimes get their hard drive one business day after the requesting party (the PSC) does; there is no PTO that directs BP to undertake only a simultaneous production of every hard drive for every production, nor would such a PTO be practical.

That said, it is possible BP may produce additional documents from Mr. Bly in the coming weeks for two reasons. First, as with all productions of ESI, BP sometimes encounters technical processing and production complications from time to time that may not be resolved prior to a deposition. These include things like password protected, corrupted, and encrypted files among others. When those issues come to our attention, we move promptly to resolve them and to produce responsive, non-privileged documents as soon as it is feasible. Second, BP has devoted substantial attorney resources --well in excess of 100 lawyers-- to BP's document production effort. And, BP employs a quality control process to identify any miscoding by the larger team that might have resulted in a document having been incorrectly coded as not relevant or potentially privileged. That quality control effort will result in some percentage of documents being reclassified and subsequently produced. Under other circumstances, all of these issues might be resolved during a period of document production that precedes depositions. In MDL 2179, the process is compressed and depositions are occurring at the same time the parties are trying to collect and produce documents, rather than after that production effort is substantially complete. Given the schedule, breadth of requests, and pace of production and depositions, we simply are not able to identify and resolve all of the potential complications that could lead to an individual document being excluded from production in advance of a particular witness's deposition. We are doing the best we can, but the fact is that PTO 17's directive that document intensive deponents be deferred until later has not been the practice by the parties

scheduling depositions (the PSC) thus far.

One other topic you were interested in was the method of BP's document productions. With respect to future productions by BP, we are looking at ways to make the productions to all parties simultaneously through an FTP system, as you suggested be explored. However, there are technical challenges to producing documents in that manner due to the volume of materials requested of BP.  (BP has produced over 1.0 million pages in MDL 2179 so far.)   The FTP method is best suited for smaller productions, along the lines of some of the productions by other defendants. We are continuing to investigate this method of production and hope to be able to report on our progress in the next week, including whether it can be implemented for some, if not all, of BP's future document productions.

Best regards


Andy Langan


**J. Andrew Langan, P.C. | Kirkland & Ellis LLP**
300 NORTH LASALLE STREET
CHICAGO, IL 60654-3406
(312) 862-2064 **DIRECT** | (312) 862-2200 **FAX**
andrew.langan@kirkland.com