# IN RE:  DEEPWATER HORIZON
# MDL No. 2179

| | |
|---|---|
| **JAMES PARKERSON ROY** | **STEPHEN J. HERMAN** |
| **Domengeaux Wright Roy & Edwards LLC** | **Herman Herman Katz & Cotlar LLP** |
| 556 Jefferson Street, Suite 500 | 820 O'Keefe Avenue |
| Lafayette, LA  70501 | New Orleans, LA  70113 |
| E-Mail: jimr@wrightroy.com | E-Mail: Sherman@hhkc.com |
| Telephone:  (337)233-3033 | Telephone:  (504)581-4892 |
| Fax No. (337)233-2796 | Fax No. (504)561-6024 |

February 16, 2011

<u>VIA E-MAIL</u>

Honorable Sally Shushan
United States District Court
Eastern District of Louisiana
500 Poydras Street, Room B-345
New Orleans, LA 70130


Dear Judge Shushan,

  In follow-up to last week's discovery conference, the PSC respectfully submits this letter setting forth its position with respect to certain discovery issues that have arisen with the BP Defendants relating to the scope and timing of their document productions.  Since entry of PTO Nos. 16 and 17, PSC representatives have conferred regularly with the Defendants, including the BP Defendants, to address any disagreements or concerns relating to discovery, and to insure that document productions are efficient and are made consistent with applicable orders.  Generally, these discussions have been very productive and the parties have been able to resolve their differences without seeking the Court's involvement.  Regrettably, the PSC and BP Defendants have now reached an impasse with respect to the issues described herein and request Your Honor's guidance to avoid any further discovery delays.  Presently, there are three distinct issues of concern to the PSC:

- Whether Plaintiffs should be required to "agree" to custodial limitations on certain electronic searches absent additional requested information from Defendants;

- BP's proposed date limitations for electronic searches made in response to document requests relating to post-incident conduct; and

- Late production of documents for deposition witnesses.

As described in detail below, Plaintiffs are concerned that failure to resolve these issues will result in unnecessary delays and wasted resources.

**Custodian and Date Limitations on Electronic Searches of Documents**

As the Court is aware, PTO No. 16 requires the parties to confer on electronic search terms. *See generally*, PTO No. 16 at ¶ 13. As part of this discussion, the Court contemplated that "[e]ither party may also propose custodians and date limitations for searches" and that the parties would "produce potentially-relevant ESI in their possession according to the agreed search terms, custodians, and date ranges." *Id.* This is the foundation for the fundamental disagreement between the parties. BP reads the second quote as requiring the PSC to actually "agree" to limit searches based upon custodians BP proposes. The PSC submits that ¶ 13 is optional, and does not mandate agreement before searches may be run by the producing party, particularly since the searches themselves will provide valuable information and insight to both parties. There is no dispute that the Court and the parties intended this to be a fluid process and recognized that there may be the need to amend and revise electronic searches as the case develops and additional information comes to light. Further, the Court intended this to be a cooperative process because it recognized that with respect to Defendants' internal workings, conduct, and employees, Defendants were in a position of superior knowledge and their input would be needed to create electronic searches that were both efficient and responsive to Plaintiffs' requests.

Following entry of PTO No. 16, the PSC provided Defendants with proposed search terms to be used in connection with their document request. Since that time, the parties have met and conferred on several occasions to refine and amend the electronic searches. This process has been very successful and as a general matter, the parties have been able to resolve any disagreements relating to search terms through the meet and confer process. In connection with certain document requests, BP made an initial proposal that limited the agreed-to electronic searches to the custodial files of a relatively small number of BP employees, which in BP's view, were most likely to have responsive information. Rather than first provide a comprehensive list of custodians, BP provided a handful of custodians, and required Plaintiffs to respond with additional custodians. In essence, BP has shifted to the PSC its obligations under the Federal Rules of Civil Procedure to conduct a diligent, thorough and reasonable search for information (which should include custodians). While Plaintiffs are not opposed to limiting certain searches by custodian where appropriate, the limitations and methods proposed by BP have raised significant concerns.

First, while Plaintiffs can identify certain employees that may have responsive information, they are not in a position to know all (or even most) of the employees implicated by a certain document request or whether one employee is likely to have more comprehensive information than another. By contrast, defense counsel can easily query their client to determine the names and job descriptions of those individuals likely to possess responsive information. In connection with BP's proposed custodian limitations, the PSC has requested this information but to date have not been provided with such a list.

Second, in response to BP's proposed custodian limitations, there are multiple instances where Plaintiffs identified many additional custodians who appear to have had significant involvement in the conduct and decisions at issue.[1] Plaintiffs believe BP has not made a diligent effort to identify employees with responsive information. To the extent BP can identify employees with responsive documents, it should provide a comprehensive list of such individuals in the first instance, before attempting to negotiate a custodial limitation on its production. Any other approach is unfair to the Plaintiffs and will result in needless delay, as the identities of employees containing significant information may not be immediately apparent to Plaintiffs for the reasons stated above.

Third, BP has proffered that it requires custodian limitations on the electronic searches at issue because the sources to be searched are the laptop computers of certain employees. BP has represented that much of the information sought by Plaintiffs is kept on individual computers, rather than at a centralized location. Plaintiffs find this implausible. Local storage devices, such as laptop computers, are commonly implicated in litigation involving large, sophisticated parties, such as BP. Typically, these devices are collected and their hard drives are copied in connection with litigation holds and document collections. Further, in corporate environments, laptop computers are usually connected (often wirelessly) to email and document servers that preserve and back-up the information contained on those laptops. Indeed, in its Statement of Information Not Reasonably Accessible, dated XXXXX, 2010, BP did not identify laptop computers as a source of information it could not search in response to Plaintiffs' requests.[2]

In connection with the PSC's document requests, other Defendants have run the agreed-to search terms across all of their accessible servers *before proposing any custodian limitations*.[3]

---

[1] While Plaintiffs do not agree that custodial limitations are appropriate for the document requests at issue, in the spirit of cooperation, they have provided BP with a list of additional custodians beyond those first proposed by BP. Despite its suggestion of additional custodians, the PSC has no idea whether it is receiving an adequate production and strongly objects to BP's insistence that Plaintiffs must agree to a custodian limitation.

[2] Annexed hereto as Exhibit A.

[3] The PSC's cooperative approach with Halliburton, for instance, provides a model that is effective and efficient for both parties. First, Halliburton and the PSC agreed to search terms. Halliburton then proposed, and the PSC accepted, a process whereby Halliburton will run a thorough "test" of terms to generate hit lists and statistical analysis. The results of this test, which Halliburton will share with the PSC, will assist the parties in agreeing to

This approach is the most practical and efficient because it permits the parties to identify all individuals with responsive information and to determine the number of potentially relevant documents in their possession. By having this information at the outset, the parties can then determine whether a custodian limitation is even necessary and make educated decisions about which employees' documents should be produced. The PSC has requested that BP follow this protocol—which has been utilized by other Defendants—but thus far, BP has refused.

Plaintiffs should not be put in a position where they have to make educated guesses at the identities of those BP employees with the most responsive information. The PSC respectfully requests that this Court order BP to run the agreed-to electronic searches first—to identify if custodian limits are even necessary. Then, if custodian limits are required, BP should provide a comprehensive list of proposed custodians, and the parties can proceed from there. Otherwise, delays will be inevitable, because significant documents may not be discovered until after depositions have been taken or the parties will fail to identify important witnesses at an early stage of the litigation.

Additionally, BP initially refused to run search terms relating to certain document requests, where counsel had raised an objection to the date range proposed by Plaintiffs. For example, with respect to post-incident conduct and decisions not related to the capping of the well, BP initially refused to produce documents dated beyond July 2010. Following discussions with PSC representatives, it has now proposed a cut-off date of November 2010. While Plaintiffs do not agree that any date cut-offs are appropriate for these requests, they have proposed that BP move forward with its productions subject to the proposed date limitations, with an understanding that neither party has waived its objection to such limitations and may seek the Court's guidance to resolve any disagreements. In an email dated February 11, 2011, BP appears to have agreed to this approach. The parties continue to confer on these issues.

**Late Productions of Custodial Files**

Under PTO No. 17, Defendants shall provide Plaintiffs "with a written certification that it has completed production of documents from that witness's custodial files which are responsive to requests for production of documents and relevant to the litigation." This certification is due "[a]t least seven (7) days prior to the deposition of any person currently or formerly employed by any of the defendants." PTO No. 17 at 10-11. In Plaintiffs view, the certification deadline was never intended to be synonymous with the custodial file production deadline. BP appears to have interpreted this provision as setting a deadline for its custodial file productions of seven (7) days before a deposition. As a result, Plaintiffs have received numerous productions only a week before the deposition and in some cases, even less.[4] Most recently, Plaintiffs received a

---

narrow the search terms themselves, and help indicate which custodians and date limits may be proper on a document request by document request basis.

[4] For instance, several critical documents, relating to the from the files of Kent Corser were not included in his original custodial file production, and were produced only a day prior to his deposition. Among these were his

production that contained documents from witnesses whose depositions *had already been taken*.[5] The PSC is presently reviewing this production to determine whether any of the documents contained therein will require the witnesses to be recalled for further examination. Nevertheless, it appears that these documents were easily identifiable by BP and could have been obtained just by running an electronic search for his name. Indeed, BP was notified that Plaintiffs intended to depose the witness months in advance of the deposition date. It is not clear why these documents were not included in the original custodial file production for this witness.

The certification requirement is distinct from the custodial file production requirement and Plaintiffs contend that BP should be producing such documents on a rolling basis in advance of schedule depositions, rather than waiting to the eleventh hour to make their production and simultaneously with their certifications that the custodial file production is complete. Failure to do so will result in unnecessary delay.

Regrettably, it does not appear that the disputes and concerns discussed herein can be resolved without the Court's guidance. The PSC looks forward to presenting these issues to Your Honor in greater detail at the upcoming conference on February 18, 2011. Please let us know if the Court requires any additional information relating to these matters.

Respectfully submitted,


  /s/  James Parkerson Roy                    /s/ Stephen J. Herman



cc: DEFENSE LIAISON COUNSEL
    Attorney General Luther Strange
    Mike Underhill, Esq.
    William Large, Esq.
    Jeff Grand, Esq.
    Anthony Irpino, Esq.

---

spiral bound notebooks, containing well over a hundred pages of handwritten notes, detailing his activities in the Bly report investigation.

[5] Another example of the prejudice of BP's late productions, acknowledged by BP, was that well over a hundred custodial documents were produced after the depositions of Kent Corser and Steve Robinson, two of the most important depositions taken to date.