UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:   OIL SPILL by the OIL RIG                    MDL NO. 2179
         "DEEPWATER HORIZON" in
         the GULF OF MEXICO, on
         APRIL 20, 2010                              SECTION: J

THIS DOCUMENT RELATES TO:

ALL ACTIONS                                          JUDGE BARBIER
                                                     MAG. JUDGE SHUSHAN

**************************************************************************

# MEMORANDUM IN RESPONSE TO JUDGE BARBIER'S FEBRUARY 2, 2011, ORDER ON BEHALF OF THE STATE OF LOUISIANA

## I.   Introduction

NOW INTO COURT comes, Bobby Jindal, in his capacity as Governor of the State of Louisiana, and the State of Louisiana through James D. "Buddy" Caldwell, Louisiana Attorney General, who respectfully submits this memorandum in response to the Honorable Carl J. Barbier's Order of February 2, 2011 (the "Order") (Rec. Doc. 1098). The Order seeks additional briefing on the question of "whether and how BP as the responsible party is fully complying with the mandates of OPA, for example, in the processing of claims for 'interim, short-term damages,' or 'final damages,' methodologies for evaluation of claims, and the release forms required of claimants."

## II.  Overview

On February 1, 2011, Louisiana filed a Notice of Joinder In Motion to Supervise *Ex Parte* Communications Between BP Defendants and Putative Class Members (Rec. Doc. 1091). Louisiana concurs with the Court that it does not want to impede or interfere with the Gulf Coast Claims Facility's ("GCCF") ability to quickly and proficiently

process and pay claims. Successful economic recovery of the Gulf Coast, however, including Louisiana's businesses and citizens harmed by the Gulf oil spill, is directly tied to the implementation of a fair and efficient claims process.  The State of Louisiana has been actively engaged in making suggestions to improve and expedite the payment of claims – initially by BP through Worley, and subsequently through the GCCF.  The State's objective has always been to ensure BP was implementing a process that provides prompt payments, applies uniform and understandable standards, and complies with the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. § 2701 *et seq.*  This goal is still achievable, however, the present process implemented by Ken Feinberg and the GCCF falls short of this goal.  Payments have not been prompt, the rules are not uniform and understandable, and the process does not comply with OPA.

### III.     Interim Payments

Section 2705 of OPA states the "responsible party shall establish a procedure for the payment or settlement of claims for interim, short-term damages."  33 USC 2705(a). Mr. Feinberg has admitted that "the interim claims program has not been implemented yet."[1]  Clearly, the failure to implement such a program violates OPA.

Should the argument be advanced that the Emergency Advance Program instituted by Mr. Feinberg satisfied the requirement for interim payments, this Court should note that as of November 23, 2010, this program terminated and applications for such payments were no longer accepted.  Further, on February 2, 2011, the GCCF released its draft proposal for eligibility and substantiation criteria and payment methodologies for Final and Interim Claims and invited the public to comment on the

---

[1] http://www.bloomberg.com/video/65253264.

protocol.[2]  The protocol was available for public comment only two weeks - from Wednesday, February 2, 2011, through Wednesday, February 16, 2011.  The announcement also provided that "[t]hereafter, the GCCF will adopt final rules for adjudication and payment of all Final and Interim Claims." *Id*.  Therefore, at a minimum, if the Emergency Payment Program constituted an interim payment program, the GCCF arbitrarily ended that program four months ago.[3]  The bottom line is that there is no interim payment program.

OPA also requires the responsible party to pay interest on the amount paid in satisfaction of a claim for interim damages.  33 U.S.C. § 2705(a).  Interest is owed for the period beginning on the thirtieth (30th) day following the date on which the claim is presented to the responsible party and ending on the date on which the claim is paid.  33 U.S.C. § 2705(b)(1).  The GCCF has been accepting claims for interim and final payments for months, but just recently issued protocols for calculating those claims.  Contrary to this clear requirement of OPA, none of the protocols issued by the GCCF require the GCCF to pay interest on the claims once they are processed and paid.

### IV.   Subrogation

The present release for payment of final claims by the GCCF states "As this Release is fully and completely resolving, together with all other claims, Claimant's claim under OPA, BP is hereby subrogated to any and all rights that Claimant has arising from the Incident."  OPA prohibits subrogation of all of a claimant's rights to recover

---

[2] *See* http://www.gulfcoastclaimsfacility.com/methodologylanding.php.

[3] The emergency payment program and the proposed interim payment programs are significantly different. In the emergency payment program, losses were paid in advance for one, three or six months.  The protocol for the new "interim" payment program contains different filing, documentation, and payment requirements.  All interim payments will be for documented past losses with "causation" requirements that are inconsistent with OPA.

OPA payments.  33 USC 2715(a).  In addition, there are strong policy reasons for limiting the expansive subrogation provisions contained in the GCCF's proposal.  33 USC 2702(b)(1)(B)(ii).  As a primary responsible party, BP's entitlement to subrogation for any and all of a claimant's rights against any party is inappropriate given that the GCCF program is run only by BP and not an objective and neutral third party.  Because the GCCF claims process does not allow claimants a real role in negotiating the extent of their releases and subrogation rights associated therewith, the proposed subrogation language should be adjusted to appropriately reflect BP's role as a responsible party.

V.     **Released Parties**

The current release being utilized by BP includes the release of parties other than BP.  The provision of OPA most analogous to the payment of final claims is Section 2715(b)(2) of OPA, which provides the following regarding "Final Damages" - "Payment of such a claim shall not foreclose a claimant's right to recovery of all damages to which the claimant otherwise is entitled under this Act or under any other law."  33 USC 2715(b)(2).  Clearly, this provision in OPA prohibits a release that includes, as a requirement, the release of other parties.

VI.    **Methodologies for Evaluation of Claims**

On February 2, 2011, the GCCF released the methodology that it proposed to utilize in making "Final Payments" in exchange for the execution of a release that violates the provision of OPA.  A two week period for comment was allowed.

The basic premise of this methodology is that the duration of recovery is to be determined and set by the GCCF on the basis of a report by John W. "Wes" Tunnell, Jr.

of the Harte Research Institute for the Gulf of Mexico Studies.[4] The Tunnell report concerns the predicted time of recovery by four categories of fisheries (crab, oyster, finfish and shrimp). Any proposed methodology that is based solely on this report necessarily contains serious flaws. For example, the Tunnell projections do not address industries other than the four categories of fisheries and it does not logically follow that you could extrapolate his conclusions on other industries such as tourism, gaming, etc. As relates to oyster harvesting, Tunnell limits the future losses to four times their 2010 losses. Tunnell's own report says "In areas where oyster reefs were heavily oiled, oyster reefs may not recover for 6-8 or even 10 years."[5] Additionally, according to the methodology, the GCCF will pay two times the documented loss for 2010, 70% for 2011 and 30 % for 2012. Under this methodology, claimants would be negatively affected as the 2010 losses are not based on a full year of analysis. The losses calculated by the GCCF would only be for the period of April 20 to December 31 of 2010. These are a few examples of the defects that exist in the proposed methodology.

**VII.   Recommendations**

1. Immediately implement an interim payment program and commence interim payments; or alternatively, order that emergency payments be resumed immediately and continued until the court approves the protocols and a shift to the revised "interim" process.

2. Utilize existing final payment submissions to support interim payments.

3. Require the payment of interest in accordance with Section 2705 of OPA.

---

[4] Tunnell, Jr. , John W. , "An expert opinion of when the Gulf of Mexico will return to pre-spill harvest status following the BP Deepwater Horizon MC 252 oil spill." Harte Research Institute of Gulf of Mexico Studies, Texas A&M University – Corpus Christi, 2011, available at http://www.gulfcoastclaimsfacility.com/exhibit_d.pdf  (the "Tunnell Report").
[5] Tunnell Report, p. 33.

5

4. Prohibit the use of the present release; or, alternatively, limit the release only to BP and to prohibit "double recovery," consistent with OPA.

5. Revise the present release to conform with OPA.

Respectfully submitted,

BOBBY JINDAL
LOUISIANA GOVERNOR

By:   /s/ Elizabeth B. Murrill
Elizabeth Baker Murrill
Deputy Executive Counsel
*Attorney for Governor Bobby Jindal*

JAMES D. "BUDDY" CALDWELL
LOUISIANA ATTORNEY GENERAL

By:   /s/ Megan K. Terrell
Megan K. Terrell
Assistant Attorney General
Section Chief, Environment
Louisiana Department of Justice
Phone: (225) 326-6085
Fax: (225) 326-6099
Email: terrellm@ag.state.la.us

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the above and foregoing Memorandum in Response to Judge Barbier's February 2, 2011, Order on behalf of the State of Louisiana has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 17th day of February, 2011. In addition this filing has been transmitted electronically to the following interested parties:

    Russell S. Kent
    Special Counsel for Litigation
    Office of the Florida Attorney General
    The Capitol, PL-01
    Tallahassee, FL 32399-1050

    Jim Hood
    Attorney General for the State of Mississippi
    Office of the Mississippi Attorney General
    Post Office Box 220
    Jackson, Mississippi 39205

                                      /s/ Megan K. Terrell
                                        Megan K. Terrell