UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | : : : : : | MDL NO. 2179 SECTION:  J JUDGE BARBIER |
| **THIS DOCUMENT RELATES TO ALL CASES** | : | MAG. JUDGE SHUSHAN |

. .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .

## SUPPLEMENTAL BRIEF OF DEFENDANT CAMERON CONCERNING GCCF RELEASE PRACTICES

As directed by the final ordering paragraph of the Court's Order and Reasons [Doc. 1098], Cameron International Corporation ("Cameron") respectfully submits this additional brief concerning the practices of the Gulf Coast Claims Facility ("GCCF"). As with its initial brief [Doc. 957], Cameron limits its briefing to the practice of GCCF to require complete releases for payment of <u>final</u> claims while requiring ***no release for interim claims***, and explains why that practice fully comports with the mandates of the Oil Pollution Act of 1990 ("OPA"). This supplemental brief therefore also explains why the challenges to the release

1046379v.1

practices of the GCCF by *amici curiae* the States of Mississippi [Doc. 1085] and Louisiana [1091] are without merit.

## ARGUMENT

The release practices of the GCCF fully comport with pertinent provisions of OPA, and are consistent with the public policy favoring non-judicial resolution of potential liability that is a hallmark of OPA itself.

I.  **OPA Distinguishes Between Full Final Payment of Claims and Interim Partial Payment of Claims**

As with any issue of statutory construction, in determining the meaning of the provisions of OPA pertinent to the GCCF practices, it is important to read the statute as a whole. *Samantar v. Yousuf*, 130 S. Ct. 2278, 2289 (2010). Moreover, it is well established that the overarching goal of OPA is "to encourage settlement and avoid litigation." *Boca Ciega Hotel, Inc. v. Bouchard Transportation Co.*, 51 F.3d 235, 238-39 (11th Cir. 1995); *Gabarick v. Laurin Maritime (America) Inc.*, 623 F. Supp.2d 741, 747-48 (E.D. La. 2009).

The fundamental provisions of OPA set out the broad parameters of OPA's extra-judicial claims payment system. Section 2702(a) makes statutorily defined "responsible parties" liable for the costs and damages specified in section 2702(b). 33 U.S.C. §§ 2702(a), (b). Except for claims presented to the Oil Spill Liability Trust Fund, "all claims for removal costs or damages shall be presented first to the responsible party" or its guarantor. 33 U.S.C. § 2713(a). A claimant may pursue "an action in court against the responsible party or guarantor" only "[i]f a claim is presented in accordance with [§ 2713(a)] and –

(1) each person to whom the claim is presented denies all liability for the claim, or

> (2) the claim is not settled by any person by payment within 90 days after the date upon which (A) the claim was presented or (B) advertising was begun pursuant to [§ 2714(b)], whichever is later."

33 U.S.C. § 2713(c). This is the basic OPA procedure for "all claims." The point of mandatory claims presentment is undeniably to give the responsible party a 90 day window in which to "settle" all claims "by payment." Of course, a claim is not so settled unless it is paid in full.

To be sure, OPA section 2705(a) also requires the responsible party to "establish a procedure for the payment or settlement of claims for interim, short-term damages." 33 U.S.C. § 2705(a). But this is a procedure that by definition does not apply to "all claims," only to "partial" claims that do not settle all of the liability of the responsible party. *Id.*

In addition, the procedure mandated by section 2705(a) is merely included as part of the obligation of a responsible party under section 2705 to pay interest without regard to the liability limits of OPA. *Id.* §§ 2705(a)-(5). In that context, a responsible party may avoid interest by offering "an amount equal to or greater than that finally paid in satisfaction of the claim." *Id.* § 2705(b)(2). Read as a whole, therefore, Section 2705 makes clear that, while the responsible party must accommodate "partial" claims for "interim, short-term damages," the ultimate focus of OPA is to induce responsible parties to make "final" payments in full "satisfaction" of the claims. "The principal concept of this bill is to provide ready and compete compensation for any party suffering damages from discharges of oil." S. REP. 101-94, 101st Cong., 1st Sess. 1989, 1990 U.S.Code Cong. & Admin. News 722, 732.

OPA section 2715 provides in pertinent part as follows:

(a) In general

> Any person, including the Fund, who pays compensation pursuant to this Act to any claimant for removal costs shall be subrogated to all rights, claims, and causes of action that the claimant has under any other law.
>
> (b) Interim damages
>
> (1) In general
>
> If a responsible party, a guarantor, or the Fund has made payment to a claimant for interim, short-term damages representing less than the full amount of damages to which the claimant ultimately may be entitled, subrogation under subsection (a) of this section shall apply only with respect to the portion of the claim reflected in the paid interim claim.
>
> (2) Final damages
>
> Payment of such a claim shall not foreclose a claimant's right to recovery of all damages to which the claimant otherwise is entitled under this Act or any other law.

33 U.S.C. §§ 2715(a), (b). These provisions are clear and unambiguous. Subsection (b) represents an exception to the general subrogation rule of subsection (a) – namely that a paying party is subrogated to "all" of the rights of the paid claimant.

By its very terms, the exception in subsection (b) is applicable solely to partial payments for "interim damages." Under subsection (b)(1), when a claimant is paid "less than the full amount of damages to which the claimant ultimately may be entitled," statutory subrogation applies to "that portion of the claim reflected in the paid interim claim." Subsection (b)(2) then addresses the consequence of payment of "such a claim." Because it resides in subsection (b), titled "Interim Damages," this phrase in subsection (b)(2) clearly refers to the payment of "less than the full amount of damages" described in subsection (b)(1). Indeed, the only way to make sense of subsection (b)(2) is that payment of a claim for "interim damages" leaves the claimant free to recover against BP as the responsible party the balance of "all damages to which the

4

claimant otherwise is entitled." Partial payment based on an interim claim does not relieve the responsible party of its obligation to pay the claim in full.

By contrast, payment of the "full amount of damages to which the claimant ultimately may be entitled" leads to the result prescribed in subsection 2715(a). Full payment subrogates the paying party to "all" rights of the paid claimant. In the words of subsection (b)(1), the "portion of the claim reflected in" *full payment* – that portion to which the paying entity is subrogated – is the *entire claim*. Correspondingly, a claimant that has been paid all damages to which he or she is entitled, rather than just a portion of the claimant's damages, no longer has any "right to recovery" of *any* remaining damages within the meaning of subsection (b)(2). This is the unambiguous meaning of OPA §§ 2715(a) and (b) as applied to full and final payments of claims as distinguished from the payment of interim damages.

Nothing in section 2715 directly addresses what release provisions might be appropriate when claimants receive final payment of their claim in full. It is clear, however, that a complete release of all claims against all potentially liable parties is the only type of release that makes sense under the subrogation principles established in section 2715 and the non-judicial claims payment process established by OPA as a whole. A responsible party that entered into less than a complete release of all claims against all potentially liable parties would be effectively conceding that it had not satisfied its liability in full as ultimately mandated by OPA. Only a complete release of all potentially liable parties, therefore, is consistent with satisfaction of the responsible party's liability both contemplated and mandated by OPA.

1046379v.1

## II.     The Release Practices Followed By the GCCF Comply with OPA

The Gulf Coast Claims Facility Protocol for Interim and Final Claims, dated November 22, 2010 (the "GCCF Protocol"), is attached as Exhibit A.  The claims payment procedures and the corresponding release practices established by the GCCF Protocol fully correspond to and fully comport with the pertinent provisions of OPA §§ 2705 and 2715.

As its title indicates, the GCCF Protocol complies with OPA § 2705(a) by establishing procedures for Interim Claims as distinguished from Final Claims. *See* GCCF Protocol ¶ **I**. There are separate claim forms for the two types of claim. *See id.* ¶ **III**.B.1.  There are different consequences for an Interim Payment as distinguished from a Final Payment. *Id.* ¶ The review procedures for interim and final claims, however, are largely identical. *Id.* ¶ 5.

A claimant that submits an Interim Claim does not sign a release to be paid.  The GCCF Protocol is clear and unequivocal on this point.  "In order to receive an Interim Payment, a Claimant shall not be required to execute a release or waive any rights to assert additional claims, to file an individual legal action, or to participate in other legal actions associated with the Spill."  GCCF Protocol ¶ **IV.**A. (first "principle).  This principle of the Protocol faithfully implements the pertinent provisions of OPA §§ 2705(a) and 2715(b)(2), each of which provides that a claimant does not abandon the right to final and complete payment of the claim upon payment of interim damages.

But the GCCF Protocol makes crystal clear that full rather than partial payment leads to a different result. "By applying for a Final Payment, an applicant is seeking to resolve all claims including any claims for future damages resulting from the Spill.  A Final Payment constitutes a complete and final resolution of all claims for any past, current, or future losses that

a Claimant has or may have with regard to the Deepwater Horizon incident and oil spill against BP and all other potentially liable parties, except as otherwise noted in paragraph V.C. of this Protocol." GCCF Protocol ¶ **IV.**B.

Paragraph **V.**C. of the Protocol reemphasizes the point that a release is required upon acceptance of full and final payment of a claim. Whereas "Claimant acceptance of a Final Payment is voluntary," those "Claimants who accept a Final Payment must sign a Release." The Protocol leaves no room for misunderstanding on this point. "The Release will waive any rights the Claimant may have against BP and any other potentially liable parties to assert additional claims, to file an individual legal action, [or] to participate in other legal actions associated with the Spill." *Id.* ¶ **V.**C. The only exception to this release requirement in **V.**C. (as referenced in **IV.**B.) relates to personal injury and death claims that are not addressed by OPA.

As explained above, such a complete release of claims and parties is the only form of release conceivably consistent with full resolution of BP's OPA liability as statutorily-defined "responsible party." Any other form of release would frustrate the Congressional goal in OPA to achieve "ready and complete" settlement of oil spill damage claims without litigation.

The States of Mississippi and Louisiana, as *amicus curiae*, nevertheless argue that OPA section 2715(b)(2), which unquestionably deals with the consequence of the partial payment of interim damages, somehow prevents the use of such a complete release to resolve full payment of final OPA claims. Memorandum of Authorities in Support of Statement of Interest on Behalf of the State of Mississippi (Doc. 1085), pp. 7-10; Notice of Joinder in Motion to Supervise *Ex Parte* Communications Between BP Defendants and Putative Class Members (Doc. 1091), p. 4. With all due respect, the states' tortured reading of section 2715(b)(2) is

illogical and just plain wrong.  Section 2715(b)(2) unambiguously prevents a complete release upon *partial* payment, and nothing more.

Plainly, Section 2715(b)(2) unambiguously does *not* even address the consequence of a full and final payment.  Because 2715(b)(2) has nothing to do with a full and final payment, the complete subrogation of Section 2715(a) applies instead, making a complete release of all claims and all potentially liable parties entirely consistent with BP's undertaking to resolve all of its liability under OPA as mandated by OPA.

The GCCF asserts that its Protocol is "structured to be compliant with OPA." GCCF Protocol ¶ **I.**A.  With respect to the release provisions of the Protocol, the GCCF is correct.  The release provisions do comport with the pertinent provisions of OPA.

### III. The Complete Release Required for Full Payment of Final Claims Under the GCCF Protocol Is Consistent with Standard Practice and Established Public Policy

These applicable provisions of OPA and the GCCF release Protocol are also fully consistent with established practice.  For example, after the PSC filed its motion for supervision of the GCCF (Doc. 912), the personal representative of a Transocean employee who died as a result of the explosion on the *Deepwater Horizon* settled her claims with Transocean.  In doing so, the personal representative dismissed all of her claims against all Defendants, Cameron included. (Doc. 984.)  Such a complete dismissal makes sense, because it is the only way for Transocean and the personal representative to avoid further litigation over Transocean's liability for the claims of the representative.

The Fifth Circuit cogently explained the practical reason for such complete, multiparty releases to resolve liability of a single party in *Davis v. Huskipower Outdoor*

*Equipment Corp.*, 936 F.2d 193 (5th Cir. 1991).  The panel addressed a release indistinguishable from the GCCF release for Final Payments of OPA claims.  In order "to dispose of all possible liability of the defendants," the settlement released "all other persons, firms, or corporations liable or claimed to be liable."  *Id.* at 197.  The Fifth Circuit found these provisions appropriate and compatible, reasoning as follows:

> ". . . the agreement achieves it stated purpose – to dispose of all possible liability of the defendants – by effectively putting an end to *all* litigation arising from the accident.  Unless Davis released all possible defendants, the settlement agreement would abysmally fail to protect the named parties from liability.  Davis could later sue an unnamed party . . . and the unnamed party could then drag all the named parties back into the suit."

*Id.*  This is a risk that would arise under OPA in the absence of complete subrogation and a complete release.  In such a situation, if a claimant sues a party other than BP, that other party has a statutory right under OPA itself to contribution from BP.  33 U.S.C. § 2709.

Longstanding public policy favors non-judicial compromise of liability disputes through out-of-court settlement.  *See Bass v. Phoenix Seadrill/78, Ltd.*, 749 F.2d 1154, 1165 (5th Cir. 1985) (reversing district court order partially abrogating settlement agreement).  OPA's mandatory presentment requirement for "all claims" for oil spill damages and response costs is a strong legislative embodiment of that public policy.  *See* 33 U.S.C. § 2713(a).

Through its release practices for Final Claims, not only is the GCCF  following standard, accepted practice, and fulfilling public policy in general, but also it is satisfying the specific mandates of OPA: the extra-judicial resolution of all of BP's liability to fully paid claimants.

1046379v.1

## CONCLUSION

This Court "recognizes and appreciates the enormity of the undertaking of Mr. Feinberg and does not intend to impede or interfere with his ability to fairly and efficiently process claims." Order and Reasons (Doc. 1098), p. 8. Consistent with this stated intention, Cameron respectfully requests that the Court refrain from granting any relief to alter the entirely appropriate release practices of the GCCF, which clearly comport with the provisions of OPA.

Respectfully submitted,

| | |
|---|---|
| David J. Beck, T.A.<br>    dbeck@brsfirm.com<br>Joe W. Redden, Jr.<br>    jredden@brsfirm.com<br>David W. Jones<br>    djones@brsfirm.com<br>Geoffrey Gannaway<br>    ggannaway@brsfirm.com<br><br>BECK, REDDEN & SECREST, L.L.P.<br>One Houston Center<br>1221 Mckinney, Suite 4500<br>Houston, TX  77010-2010<br>713-951-3700<br>713-951-3720 (fax)<br><br>Howard L. Murphy, 9844<br>    hmurphy@dkslaw.com<br>DEUTSCH, KERRIGAN & STILES<br>755 Magazine Street<br>New Orleans, Louisiana 70130<br>504-581-5141<br>504-566-4039 | /s/ Phillip A. Wittmann_____<br>Phillip A. Wittmann, 13625<br>    pwittman@stonepigman.com<br>Carmelite S. Bertaut, 3054<br>    cbertaut@stonepigman.com<br>Keith B. Hall, 24444<br>    khall@stonepigman.com<br>Jared Davidson, 32419<br>    jdavidson@stonepigman.com<br><br>STONE PIGMAN WALTHER WITTMANN L.L.C.<br>546 Carondelet Street<br>New Orleans, Louisiana  70130<br>504-581-3200<br>504-581-3361 (fax)<br><br>**ATTORNEYS FOR CAMERON**<br>**INTERNATIONAL CORPORATION** |

1046379v.1

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Supplemental Brief of Defendant Cameron Concerning GCCF Release Practices has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 17th day of February, 2011.

/s/ Phillip A. Wittmann