**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG **"DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010** | : : : : | **MDL-2179** |
| | | **SECTION J** |
| **THIS DOCUMENT RELATES TO:** | : | **JUDGE BARBIER** |
| **ALL ACTIONS** | : | **MAG. JUDGE SHUSHAN** |

…………………………………………………………………………………………………

**STATEMENT OF INTEREST BY THE STATE OF FLORIDA**
**RELATED TO THE FEBRUARY 2, 2011 ORDER**

**COMES NOW** Pamela Jo Bondi, the Attorney General for the State of Florida ("Florida"), and responds to the Court's invitation for "additional briefing on the question of whether and how BP as the responsible party is fully complying with the mandates of OPA." (Rec. Doc. 1098, pp. 14-15.)   The Court expressed particular interest in three topics: the processing of interim or final claims, the methodologies for evaluation of claims, and the scope of the required release form.  Florida respectfully submits that the claims process operated by the Gulf Coast Claims Facility ("GCCF") on behalf of BP has failed to comply in numerous respects with the requirements of OPA or the public commitments made by BP[1] even after months in operation.  These failures necessitate immediate and significant changes in the operation of the

---

[1]  BP made numerous statements regarding its legal and moral commitment to "pay all legitimate claims" resulting from the Deepwater Horizon blowout.  BP's public commitments also include the terms of the June 16, 2010 announcement of the GCCF's establishment.  Those terms involved promises that the GCCF would be "fairer, faster, and more transparent in paying damage claims … and would decide all claims as expeditiously as possible," that the "standards for recoverable claims … would be published," and that "[a] panel of three judges would be available to hear appeals of the administrator's decisions," although BP could not appeal any such decisions. *See* http://www.whitehouse.gov/the-press-office/fact-sheet-claims-and-escrow.

GCCF if it is to continue handling claims on BP's behalf.  The public deserves nothing less.

## I.      Introduction

The Attorneys General of the Gulf Coast states are entrusted with protecting the collective legal rights of their citizens and advocating for their state's interests and public policy concerns as a sovereign. *See*, *e.g.*, *State ex rel. Att'y Gen. v. Gleason,* 12 Fla. 90, 112 (Fla. 1869). Although Florida has not filed any civil action related to the Deepwater Horizon oil spill to date, these proceedings concern a myriad of issues that will significantly impact its sovereign interests and the interests of its people, environment, and economy.  As Florida's chief legal officer, the undersigned has numerous responsibilities related to the Deepwater Horizon oil spill, including monitoring and seeking to improve the GCCF claims process, for the benefit of all affected Florida citizens and businesses.  Attorney General Bondi and her predecessor have met with both BP and Mr. Feinberg on several occasions and offered detailed suggestions for improvements to the claims process (as have the other Gulf Coast Attorneys General), all to little avail.

## II.     Overview

As the Court has found, the GCCF is operating the claims process required by the Oil Pollution Act of 1990 ("OPA") on behalf of BP, a responsible party for the Deepwater Horizon blowout.  While BP may chose to use the services of the GCCF or some other entity to operate the claims process on its behalf, it retains the legal responsibility to comply with OPA.  The legislative history indicates that the intent of Congress when it enacted OPA was "to eliminate, to the extent possible, the need for an injured person to seek recourse through the litigation system."  The GCCF's failure to operate a fair and efficient claims process has frustrated the Congressional intent and threatens to delay the recovery of the Gulf Coast from this disaster.

While Florida has many concerns with the GCCF claims process, this statement identifies its four main concerns involving compliance with OPA or the public commitments made by BP

and then offers a solution to each concern for the Court's consideration. Those concerns are as follows: (a) the refusal to process interim claims and the inappropriate steering towards "quick pay" claims; (b) the absence of any objective, transparent methodology for evaluating claims; (c) the lack of a meaningful appellate process; and, (d) the overly broad scope of the release form.

## III.     Interim Payments

As the Court is likely aware, the GCCF accepted claims for emergency advance payments through November 23, 2010 (although some claimants submitted final claims before that date). The GCCF released its Protocol for Interim and Final Claims on November 22, 2010 and this protocol appears to remain the operative document except for the recent addition of two sentences regarding the Court's February 2nd Order. Despite the issuance of a protocol almost three months ago, the GCCF has refused to process over fifty thousand (50,000) interim or final full review claims submitted by Floridians, paying only two such claims to date.

Indeed, GCCF officials have publicly indicated that interim or final claims would not be processed for at least ninety (90) days while "quick pay" claims would be paid within fourteen (14) days. Florida respectfully submits that BP has failed to provide a process for the payment of interim or final damages, as required by OPA, when the GCCF simply lets these claims languish.[2] Likewise, the GCCF is surely not "decid[ing] all claims as expeditiously as possible," as promised in the June 16th announcement, when it deliberately chooses to hold all interim or final claims, well aware of the desperate economic situation faced by many claimants.

This state of affairs is made even worse by the fact that the GCCF has promptly paid over thirty-five thousand (35,000) "quick pay" claims to Floridians during this time period. These

_____

[2]  The GCCF's refusal to allow the filing of interim claims more frequently than every ninety (90) days, except at the whim of Mr. Feinberg, further increases the hardship on claimants waiting on interim payments, especially since interim claims are already backwards-looking. Under the best of circumstances, a claimant's cash flow would be running months behind before getting a payment, at a time when their business or personal income may already be struggling.

claims are not contemplated by OPA and provide only $5,000.00 to individuals or $25,000.00 to businesses, regardless of the extent of their losses, while requiring the execution of the same release form as for final, full review claims.  Florida is very concerned that many claimants have filed quick pay claims, not because that option was appropriate for their circumstances, but due to their desperation and the GCCF's refusal to pay for any other claim.

Florida respectfully submits that the GCCF's refusal to process interim or final claims and the inappropriate steering towards quick pay claims can be remedied by a court order directing the GCCF to process **all** claims as expeditiously as possible, without distinction or favor.  An additional remedy might be to prevent BP from enforcing the releases executed with any quick pay claim, both due to the refusal to process interim or final claims to date and in light of the past misrepresentations concerning the relationship between BP and the GCCF.[3]

## IV.    Methodologies for Evaluation of Claims

The next important issue involves the absence of any objective, transparent methodology employed by the GCCF to evaluate claims.[4]  It is vitally important that claims be processed fairly and efficiently.  Claimants have no way to know whether their claim will be paid or to what extent, just as they cannot find out the status of their claim, the nature of any additional

---

[3]  Florida would note that pro bono lawyers have only recently become available to work with certain claimants, after months of requests by the Attorneys General.  *See* http://www.pnj.com/article/20110130/NEWS01/101300333/BP-funds-legal-group-to-help-spill-victims.  However, there is only enough funding for five lawyers for the entire State of Florida. In time, pro bono lawyers could provide important assistance in navigating the claims process, including identifying any necessary supporting documentation and advising on the choice of filing interim or final claims, as long as funding is provided for enough lawyers to meet the need. In the same way, independent claims advocates could be hired from the affected communities to work with the adjusters to ensure that the most critical claims receive an expedited resolution.

[4]  While the GCCF recently provided a "methodology," the reality is that the document provides no useful information to claimants beyond a simplistic multiplier and is based on very optimistic assumptions about unknown environmental and economic conditions.  Attached hereto as Exhibit "A" is Florida's response to Mr. Feinberg, providing comments on the draft document.

documentation that might be needed or when a decision may be made. The GCCF presumably has claims manuals and other materials it employs to determine the eligibility of claims and the level of any payment but it has refused to make such materials available, either to the public or the Attorneys General. Likewise, even when there is a decision, the GCCF does not tell claimants why their claim was denied (as were the majority of emergency claims) or discounted.[5]

In the same way, the GCCF has repeatedly refused to provide any meaningful information to the Gulf Coast Attorneys General, preventing them from looking for patterns of activity, including inconsistencies in payments. While OPA requires the payment of all claims "that result from" an oil spill, *see* 33 U.S.C. § 2702, the GCCF has attempted to implement additional, improper barriers to eligibility at various times, such as proximate cause or geographic proximity, but it is virtually impossible to tell if improper claims decisions are being (or have been) made based on these concepts without access to the claims data.

Florida respectfully submits that the Court should enter an order requiring the GCCF to publicly disclose its claims manuals and any other materials it employs to determine the eligibility of claims and the level of any payment. Florida further requests that the Court appoint an independent auditor to review the past and future decisions of the GCCF and ensure that the claims process is being operated in a manner consistent with BP's public commitments and OPA obligations. The Gulf Coast Attorneys General are uniquely situated to offer input to the Court as to the selection of any independent auditor and the appropriate oversight of the audit process.

Additional suggestions to improve the fairness and efficiency of the claims process include a requirement that claimants be told of the nature of any additional documentation that

---

[5] Claimants also have no way to know if they have received all of the relief required by OPA, such as interest for delayed claims, *see* 33 U.S.C. § 2705, or the costs of assessing their damages. *See* 33 U.S.C. § 2701(5). The payments from the GCCF currently provide no such itemization.

may be needed in order to make a claims decision.  Claimants should also receive a detailed explanation for any denied or reduced payment.  Moreover, the GCCF should promptly establish a single point of contact system for providing meaningful, up-to-date information for claimants and appoint adjusters in the affected communities with the ability to settle and pay claims on the spot up to a certain monetary amount, with the monetary amount being established after consultation with the state-level officials.  Florida would further request that the Gulf Coast Attorneys General have the same level of access to claimant information as BP or class counsel, including the composite data that may reveal payment trends.

## V.      Appellate Process

Another issue related to the lack of an objective, transparent methodology for evaluating claims is the failure to provide a meaningful appellate process, as promised in the June 16th announcement of the establishment of the GCCF.  That announcement indicated that a panel of three judges would be available to hear appeals of GCCF decisions, although BP would have no appeal rights.  This appellate panel would provide due process protections to claimants, above and beyond the availability of the National Pollution Funds Center operated by the Coast Guard.

However, Mr. Feinberg has designed a process that provides virtually no appellate rights to claimants (only available to those who have received more than $250,000.00 in payments from the GCCF) while creating rights out of whole cloth for the benefit of BP, including the right to seek discretionary review of bellwether cases,[6] with any such appeal being granted at Mr. Feinberg's sole discretion, and the right to appeal awards in excess of $500,000.00.  To the best of the undersigned's knowledge, Mr. Feinberg has not selected the appeals judges to date, much

---

[6] In theory, claimants have the same right to seek review of issues of first impression under OPA or issues representative of a larger category of claims, but it is difficult to imagine how claimants would be aware of their status as a bellwether case.  In contrast, BP, with its access to all of the claims files and the right to audit the GCCF, could easily seek to invoke this provision.

less allowed any appeals under the protocol.  While Florida acknowledges that there is no requirement for an appellate process under OPA, it respectfully submits that Mr. Feinberg must abide by BP's public commitments and cannot unilaterally decide to ignore the terms of his appointment.  Should the Court be concerned by the volume of potential appeals, perhaps the independent auditor could select bellwether cases for review by the appellate panel.

## VI.     Release Form

The final issue involves the release forms required of claimants receiving a final payment.  One of the most troubling provisions of this form is that the claimant purports to release claims on behalf of a number of other individuals or entities, including the claimant's spouse, heirs, and business partners.  While duplicative claims should be avoided, this wording may lead a wife not to file a claim because her husband has already received a payment or a son and father that work on the same fishing boat submitting only one claim.  Florida respectfully submits that the Court should order a modification of the release form to clarify that only derivative claims are being released, *i.e.*, with a release signed by a wife, the husband may not assert any claim solely due to the marriage status but may assert a claim for any damages he has suffered from the Deepwater Horizon oil spill.

## VII.    Conclusion

The State of Florida's interest is to see that its citizens are protected, with the recovery from this environmental disaster taking place as soon as possible.[7]  The Court's entry of the requested remedial relief, namely: (a) the commencement of interim payments, with no further steering towards "quick pay" claims; (b) the creation of objective, transparent methodologies for

---

[7]  By the filing of this document, Florida does not acknowledge or waive its right to object to federal jurisdiction over any potential action that may be filed as a result of the Deepwater Horizon oil spill.  Nor does Florida acknowledge its support for or waive its right to object to the transfer and consolidation of actions brought by any governmental entities into a single action with all litigants having filed claims in connection with this matter.

evaluating claims along with the appointment of an independent auditor; (c) the establishment of a meaningful appellate process; and, (d) the revision of the release form (along with any further relief the Court deems appropriate) would ensure that the claims process operates in a fair and effective manner, consistent with OPA's requirements and BP's public commitments, while protecting against any further processing delays.

Respectfully submitted,

**PAMELA JO BONDI**
ATTORNEY GENERAL
STATE OF FLORIDA

BY: /s/ Russell S. Kent
PATRICIA A. CONNERS
Associate Deputy Attorney General
Florida Bar No. 361275
E-mail:  trish.conners@myfloridalegal.com
RUSSELL S. KENT
Special Counsel for Litigation
Florida Bar No. 20257
E-mail:  russell.kent@myfloridalegal.com

Office of the Attorney General
The Capitol, PL-01
Tallahassee, FL 32399-1050
Telephone:  850-414-3300
Facsimile:  850-488-9134

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Statement of Interest by the State of Florida Relating to the February 2, 2011 Order has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM / ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 18th day of February, 2011.

/s/ Russell S. Kent
Russell S. Kent