UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

|   |   |
|---|---|
| IN RE: OIL SPILL by the OIL RIG, "DEEPWATER HORIZON" IN THE GULF OF MEXICO, on APRIL 20, 2010 | *  MDL NO. 2179 <br> * <br> * <br> * <br> * |
| Relates to: *B1 and B3 Bundle Cases* | * JUDGE BARBIER <br> * |
| Relates to: No. 10-2771 | * MAG. JUDGE SHUSHAN <br> * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# REPLY BRIEF IN SUPPORT OF MOTION FOR COURT APPROVAL OF NOTICE

## Introduction

The Plaintiff Steering Committee has the right, and arguably the responsibility, to inform potential litigants of their legal rights, and the mechanism adopted by the Court for the protection and enforcement of same. While such notice is not *required* by either Rule F(4) of the Supplemental Rules for Admiralty and Maritime Claims nor Rule 23(d) of the Rules of Civil Procedure, it is nevertheless *consistent with* the desire that people be informed of deadlines and other procedural issues potentially affecting their legal rights, including particularly the monition date in a Limitation proceeding. The Plaintiff Steering Committee, out of an abundance of caution, wants to ensure that the notice (which they have a right, and arguably the responsibility, to provide) is clear, accurate and formally approved by the Court. To the extent that the Court might have concerns that inclusion of the formal Court Seal might be inappropriate, such modification of the proposed Notice falls squarely within the Court's discretion. But the PSC

912094.1

912094.1

believes that Court approval is necessary and appropriate to distinguish the PSC's proposed Notice from the cacophony of potentially confusing law firm solicitations and messages from other sources, such as the GCCF and BP. While objecting to the PSC's efforts to advise people of the Limitation deadline and availability of the Short-Form Joinder, the defendants have failed to come forward with any basis upon which the proposed Notice could not or should not be *authorized* by the Court. For these reasons, and for the reasons further outlined below, the PSC's Motion for Court Approval of Notice should be granted.

## Background

On February 8, 2001, the Plaintiffs Steering Committee moved on an expedited basis for Court approval of a proposed notice advising potential litigants of the availability of the Short-Form Joinder process utilizing the Direct Filing Short Form to enable claimants to join the Limitation action without preparing a formal pleading or paying a filing fee (approved by the Court in PTO No. 25) and to advise and remind claimants of the deadline for asserting these claims of the April 20, 2011 monition date in the Transocean Limitation. At Defendants' request, this Court set Wednesday, February 16, 2011 as the filing deadline for any objections thereto.

Magistrate Judge Shushan placed the notice on her agenda for initial discussion at her regular February 11, 2011 Status Conference. To provide context for this discussion, the PSC submitted a letter brief to Judge Shushan, together with proposed texts of broadcast (TV and radio) public service announcement spots to complement the previously submitted print notice, as components of a comprehensive notice program. A true copy of this February 10, 2011 letter brief and attachments thereto is attached hereto as Exhibit 1.

During the February 11, 2011 Status Conference, interested parties were heard by the Magistrate Judge with respect to the content of the notice and the notice program itself, and

Judge Shushan made initial suggestions to revise the print notice.  True copies of the current versions of the proposed print notice and radio and TV spots, reflecting the Magistrate Judge's suggestions, are collectively attached hereto as Exhibit 2.

As of Wednesday, February 16, 2011, objections had been filed by Defendants Transocean, BP, and Cameron..[1]  This Response addresses the points raised in these objections to the extent they are relevant to the notice at issue.

## RESPONSE TO TRANSOCEAN'S OBJECTION

Plaintiffs do not suggest that Transocean is required to provide further notice under Rule F(4).[2]  The PSC, rather, seeks to provide notice, due to a pressing need to effectively inform thousands of persons, most of whom are unfamiliar with the admiralty rules or procedures, and are not likely to appreciate the ramifications of a "monition date" without more information, that an impending deadline effects, and may foreclose, important procedural and substantive rights.  The obligation to provide this notice in a meaningful way runs deeper than any Rule or statute.  Meaningful notice is a Due Process right, and this Court possesses the authority and discretion to authorize efforts to ensure that such notice is given.[3]  The United

---

[1] Several "Oppositions" were also filed by plaintiffs' counsel in various actions.  But it is not clear how those plaintiffs have standing to object, and the objections themselves are largely irrelevant to the issues at hand.  The opposition filed by Mr. Becnel, for example, is a narrative casting himself in a central role in events related to this litigation.  While Mr. Becnel's recitation of the facts is, at best, negligently inaccurate, and, at worst, intentionally misleading, the PSC declines to engage in a side-show diversion from the appointed task.

[2] It should be noted, of course, that these Rule F(4) notices are written in technical admiralty language and appeared as small print legal notices in various newspapers, most recently in June 2010 (seven months ago) long before the development and approval of the Short-Form Joinder and the issuance of PTO No. 25. [*See* Exhibits to BP Opposition]

[3] Indeed, this Court has affirmatively published notice of the monition deadline on its own MDL 2179 website.  Such Court-administered websites are now common practice in MDLs, although no rule or statute expressly requires them, because MDL courts recognize that, in large cases such as this

*Footnote continued on next page*

States Supreme Court, in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), established the principle, transcending any particular type of action or proceeding, that "when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as are desirous of actually informing the absentee might reasonably adopt to accomplish it." 339 U.S. at 315. That is the goal of the PSC's proposed Notice and program. As *Mullane* explains:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. [citations omitted] The notice must be of such nature as reasonably to convey the required information [citation] and it must afford a reasonable time for those interested to make their appearance [citations]. But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met, the constitutional requirements are satisfied.

339 U.S. 306, 314-315.

*Mullane*, it should be noted, was not a class action; it involved a statutory notice to trust beneficiaries regarding a bank trust fund. The published notice to potential beneficiaries of a settlement of the account, by publication in a local newspaper, set forth merely the name and address of the trust company, the name and the date of establishment of the common trust fund, and a list of all participating estates, trusts, or fund (which notice was in compliance with the relevant state notice statute). It complied with the state statute, but was held inadequate.[4]

---

*Footnote continued from previous page*
one, thousands of laypeople, many of whom are unrepresented, have an ongoing interest in, and should be able to stay informed about, the proceedings. It is a simple matter of access to information. This Court's MDL No. 2179 website is a tremendous resource; however, many claimants are as yet unaware of it. One of the functions of the proposed notice is to widely disseminate this website address to enable claimants to keep apprised of ongoing proceedings in this litigation, including events in the Limitation Action.

[4] The published notice in *Mullane* ran for four consecutive weeks, in the back pages of a local newspaper, in small print. *Id.* at 310; *see also* Hillsee, Wheatman & Intrepido, *Do You Really Want Me to Know My Rights? The Ethics Behind Due Process in Class Action Notice Is*
*Footnote continued on next page*

*Mullane* and other early cases were the genesis of the notice requirement later embodied in Rule 23, with respect to opt-out class actions, which currently provides for the rigorous yet flexible standard of "the best notice that is practicable under the circumstances" and the content requirement that the notice must communicate "clearly and concisely" "in plain, easily understood language" the rights and options of class members.

That the *Mullane* meaningful notice principle was subsequently written into Rule 23 does not mean that the *Mullane* standard, which was established independently of Rule 23 and arose in a non-class action proceeding, is now limited solely to class actions.  To the contrary, it is a principle that should be applied to any instance in which many persons, unaware of and/or unsophisticated with respect the pendency of proceedings that nonetheless affect their procedural rights and legal interests, should be informed of deadlines that foreclose these rights, and the actions they can take to protect themselves.  Plaintiffs' notice program is intended to implement these principles.

Regardless of Transocean's prior notice under Rule F(4), there has not been widespread notice of the existence of the Direct Filing Short Form process described and approved by PTO No. 25.  A pressing need remains to effectively inform thousands of persons, most of whom are unfamiliar with the admiralty rules or procedures, and who are unlikely to have found, read or understood the Transocean notice, or to appreciate, that an impending deadline effects, and may foreclose, important procedural and substantive rights.

---

*Footnote continued from previous page*
*More Than Just Plain Language: A Desire to Actually Inform*, 18 Geo. J. Legal Ethics 1359 (Fall 2005).  The problem in *Mullane* was, *inter alia*, that many of the beneficiaries were not local, and had no way to know that they should be looking in these back pages for a tiny print notice that affected their economic rights.  That is why, without taking issue as to whether Transocean has complied with Rule F(4) notice, Plaintiffs' notice program comprises TV and radio spots, as well as print notices, that will run multiple times throughout the entire geographic area affected by the spill and its sequelae, as well as in nationwide publications.

Court approval is requested because Plaintiffs recognize the inherent authority of this Court, together with its case management authority under the Federal Rules and the MDL statute, 1) to notify and inform claimants directly where their rights are at stake; and 2) to implement procedures approved by this Court in PTO No. 25 to streamline, facilitate, and render less expensive and more-cost effective, the exercise of their rights given the sheer numbers of claimants involved and the finite resources of the court.

Transocean argues that the proposed notice is "potentially misleading" in two specific respects. Transocean objects to the inclusion in the notice of this Court's seal, and the phrase "Court Authorized Notice". Plaintiffs submit that the inclusion of the seal is a matter for this Court's determination and discretion; we propose to include it to highlight the importance of the notice, and to differentiate it from lawyer advertising and other communication. Similarly, use of the legend "Court-Approved Notice" is accurate with respect to the form of notice that is approved by the Court, and is normally included in such notices.

Transocean's Rule F(4) notice prominently displayed the Southern District of Texas caption, and that court's Clerk's signature. This was appropriate, as these notices were court-approved. It is similarly appropriate for the PSC's proposed notice to include the Court seal and "Court Authorized Notice" legend upon court approval. Indeed, these are simplified versions of the format used in the Transocean notices.

## PLAINTIFFS' RESPONSE TO BP'S OBJECTIONS

Plaintiffs addressed the better part of BP's argument in their February 10, 2011 letter to Magistrate Judge Shushan, attached hereto as Exhibit 1. Not every notice as to which court approval may be sought falls under Rule 23; and the courts' authority to approve notice is not limited to class certification. This Court has the inherent authority, the discretion under Rule 16,

and the power to implement its own orders (such as PTO No. 25) by approving notice to litigants. Such notices are often resolved in non-class contexts, such as bankruptcy proceedings, to provide due process notice to claimants of claims deadlines, voting deadlines, and other affirmative actions that must be taken by a specified deadline to preserve a procedural right or statute. While, indeed, as this Court is well aware, Rule 23(d) specifically authorizes the Court to send notice and provide information to putative class members before class certification,[5] this is not a "class action notice" that is submitted in connection with a class certification motion, does not involve an opt-out deadline, and does not take the place of, or preclude the necessity for, a later class notice if and when any component of these MDL proceedings is certified as a Rule 23 class.[6]

The proposed Notice is not "solicitation" (although the Steering Committee members certainly have the right to engage in clear and accurate communication protected by the First Amendment, subject to the Professional Rules). BP disparages the notice program as "a lawyer's solicitation", and argues that the F(4) notice given to date more than suffices. As noted above, under *Mullane* and due process/notice principles the F(4) notice alone, while it may comply with

---

[5] FED. RULE CIV. PRO. 23(d)(1)(B)(i) ("the court may issue orders that require – to protect class members and fairly conduct the action – giving appropriate notice to some or all class members of any step in the action"); *see, e.g., Puffer v. Allstate Ins. Co.,* 614 F. Supp.2d 905, 908-911 (N.D.Ill. 2009); *Sanft v. Winnebago Industries, Inc.,* 216 F.R.D. 453, 460 (N.D.Iowa 2003).

[6] If this notice were to be characterized as a class action notice, it would correlate with notices given prior to, or independent of, the class certification decision, by a court in its discretion to protect putative class members, such as a Rule 23(d) notice. Rule 23(d)(1)(B) authorizes the Court to issue orders that "require—to protect class members and fairly conduct the action, giving appropriate notice to some or all class members of: (i) any step in the action; (ii) the proposed extent of the judgment; or (iii) the members' opportunity to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or to otherwise come into the action." The notice standards developed previously in the Rule 23 context, embodied comprehensively in the Federal Judicial Center's 2010 *Judges' Guide*, are appropriately applied to other notices of events that implicate claimants' rights, whether they are characterized as class action notices or otherwise, and the PSC has done so here.

admiralty and maritime requirements in a routine case, is not sufficient here to give actual and meaningful, as opposed to merely constructive notice.  In this case, such notice is being provided at the initial expense of the PSC, not to solicit clients, but to apprise all potential claimants, whether they are represented by counsel or not, of important deadlines and steps they must take to protect their interests and enforce their rights.  This is an appropriate and necessary function of the PSC under PTO No. 8, and it is an appropriate matter for the Court's attention and approval.

BP complains of inadequate information on the nature and scope of the notice program itself, and of the steps that the PSC's experts are ready, willing, and able to take to expedite, facilitate, and reduce expense in the filing of the Short-Form Joinders.  Ms. Kinsella and her colleagues at Kinsella Communications have served as court-approved and court-appointed notice experts and providers in a number of actions in this District, including the *Katrina* cases, and *Turner v. Murphy Oil*.  It would be virtually impossible to find a currently practicing notice provider with broader experience, or one more highly regarded than Ms. Kinsella, who is frequently consulted in a wide array of situations calling for notice by both defendants and plaintiffs alike.

BP has a number of specific objections to the language of the proposed notice itself.  We submit that these have been met by the notice itself, specifically, in the current form attached as Exhibit 2, which incorporates the suggestions of Judge Shushan.  The print notice, to be effective, cannot be a "fine print" notice with extensive legalese.  It must be simple, straightforward, and direct.  It must be capable of prominent placement in publications, and the broadcast spots must similarly be succinct and to the point.

Obviously, there are many technical aspects to the Limitation Action, and a fuller explication is appropriate.[7]  That is the very reason for the website, which will contain all court orders, transcripts, and pertinent briefs to date, as well as a set of frequently asked questions ("FAQs") which can be updated on an ongoing basis.  This is a public website, and Defendants, as well as claimants, may go online to determine whether this detailed information is accurate and complete.  The website will be built as the published and print notice campaign unfolds, and Plaintiffs are happy to submit website content for this Court's approval.

The notice is not a solicitation of new clients by the PSC; indeed, as BP points out, if the PSC wished to mount a client solicitation campaign, it or its members could do so.  Yet the content of such a campaign, while complying with ethical requirements, would doubtless look much different from the proposed notice, for one simple reason:  the proposed notice is indeed intended to be disseminated under Court authorization (and *imprimatur*), because it seeks to perform what is essentially a court function, not a lawyer solicitation function.  As such, the notice avoids the *Mullane*-rejected trap of fine print and legalese, and complies with the plain language and other standards recommended by the Federal Judicial Center in its *Judges' Guide* to notices.

The Defendants have not pointed to anything "misleading" in the notice, nor provided any reason why this Court cannot or should not approve of a notice submitted by the Plaintiffs'

---

[7] Both BP and some of the plaintiffs who filed Oppositions complain that the proposed Notice is potentially "misleading" based upon – not facts, but - their own contentions regarding complex and unsettled questions of law which are largely disputed by the Plaintiff Steering Committee. Such debate is not appropriate in the context of a notice advising potential litigants of a legal deadline and a procedural mechanism to protect and enforce their rights. Nor is it appropriate to provide "one-size-fits-all" declarations or recommendations to a universe of persons and businesses whose legal rights may ultimately determined in widely divergent ways based on the nature of their claims and circumstances. The existence of such uncertainty, rather, is – as it should be – noted in the proposed Notice, and further in the FAQ, along with the recommendation that people who are confused about their rights seek advice from an attorney.

Steering Committee (to be disseminated at its initial expense), informing people in the clearest, plainest, most straightforward possible language, of legal rights, and of deadlines, that no one can deny are of central import to the Limitation action and trial over which this Court presides.

BP attaches, to its objections, a brief colloquy from the October 15, 2010 status conference.  Much has transpired since then.  This Court has determined to conduct the Limitation Trial prior to class certification issues, and the PSC endorses that view, as reflected in Case Management Order No. 1.  This is but one of the many procedural determinations that renders this litigation far from a routine MDL, or a routine maritime and admiralty case.  That is why simple repetition of the previously-published F(4) notice by Transocean, which is BP's suggested alternative to the Court-approved notice program Plaintiffs propose, would not be adequate.

This litigation affects many more claimants, in many more places, and in many more economic, sociological, business, and property situations, than the routine admiralty or maritime case; indeed more than any such case to date.  It is thus of utmost importance that, as clearly and simply as possible, and as effectively as possible, these claimants be given direct, clear, and forthright notice in media and in language that is designed to reach them of basic steps they must take with respect to the Limitation Action.  It is for them to decide how to take such action: either by filing the Short-Form Joinder, or filing their own claim, in their own way, through their own lawyer.  The proposed Notice embraces and informs them of these possibilities and opportunities.

## PLAINTIFFS' RESPONSES TO CAMERON INTERNATIONAL CORPORATION'S OBJECTION

Cameron objects on the ground that plaintiffs have not proved the prior Rule F(4) notice was "legally deficient". But, as demonstrated above, this is not the basis for the new notice, nor is such a showing required. The new notice is appropriate because new and important information is now available regarding the form and manner in which claimants may exercise their joinder rights. This information did not exist when the Rule F(4) notice was published, and it should now be published, at least as widely. Today, through no fault of Transocean, it is the 2010 F(4) notices that are inaccurate, incomplete, and obsolete.

Cameron correctly notes this Court's "due regard for the rights of potential claimants" observing that this Court has posted the April 20, 2011 deadline on its Deepwater Horizon MDL home web page, at its Status Conferences, and in minute entry. In light of this acknowledgement that this information is of importance and a proper subject of dissemination by the Court, Cameron's objection to the even wider dissemination of the same information, in order to reach claimants who do not attend the status conferences and who are as yet unaware of the Court's website, is unfounded.

Cameron characterizes the Notice's statement regarding participation in both the federal lawsuit and the GCCF as "misleading" because it purportedly ignores the OPA presentment requirement. The Notice as originally submitted stated:

> There may be other requirements you have to fulfill to proceed with a lawsuit against BP and the other defendants. You may, for example, have to fulfill presentment requirements of the Oil Pollution Act.   [*See* Doc 1126-3]

Upon the suggestion of Judge Shushan, the "presentment" example has been deleted (see Exhibit 2 hereto) as technical/legalese that would not be meaningful to claimants, and better

suited to a fuller explanation on the website, *e.g.* in the FAQs.  The PSC is happy to do either, or both. The point is that Cameron's interpretation of the interaction of OPA, the GCCF, and the MDL is not the only one, and indeed each defendant's contentions on these points, not to mention plaintiffs' will diverge. Cameron's stated concern for claimants, that "any suggestion that a GCCF claim is somehow extraneous to the MDL is incorrect and may cause individuals not to file or not to pursue a GCCF claim to their detriment" is belied by the language of the notice itself, which includes a bold headline: "You Can continue to File Claims with BP's Gulf Coast Claims Facility ('GCCF')." The Notice is neutral: it does not, and should not, attempt to force a choice between joinder and the GCCF. Instead, it appears to be defendants' wish to do so.

The Notice does not, as Cameron contends, create "the potential for confusion" *vis-a-viz* the GCCF.  Plaintiffs submit that it is BP's GCCF which has created confusion, of which many claimants continue to complain. It is BP's GCCF that is requiring releases, and hence attempting to force a choice between what should be unconditional interim payments and assertion of claims in the MDL, (including claims against Defendants other than BP and for relief which the GCCF has unambiguously refused to consider or recognize).  While plaintiffs are requesting, in another context - *i.e.,* the Supplemental Brief requested in this Court's February 2, 2011 Order and Reasons regarding the Motion to Supervise - correction and transparency regarding the GCCF's conduct and procedures, the proposed Notice was designed to be general, neutral and non-dispositive regarding potentially complex and as-yet-unsettled questions of law.

**Conclusion**

The many thousands of individuals and entities affected by the Deep Water Horizon catastrophe face a looming deadline for joinder in the Transocean Limitation.  The monition date of April 20, 2011 is fast approaching.  These claimants must act affirmatively, to satisfy a technical requirement in admiralty, that affects their procedural and substantive rights.  They are, for the most, not repeat players in admiralty suits, unsophisticated in the procedures and technicalities of this type of litigation, and they justly look to the Court and its appointed PSC to provide information in as clear and simple a manner as possible so that they may timely act and protect their rights.

This 18th day of February, 2011.

Respectfully submitted,

| | |
|---|---|
| /s/  Stephen J. Herman | /s/  James Parkerson Roy |
| **Stephen J. Herman**, La. Bar No. 23129 | **James Parkerson Roy**, La. Bar No. 11511 |
| **HERMAN HERMAN KATZ & COTLAR LLP** | **DOMENGEAUX WRIGHT ROY & EDWARDS LLC** |
| 820 O'Keefe Avenue | 556 Jefferson Street, Suite 500 |
| New Orleans, Louisiana 70113 | Lafayette, Louisiana 70501 |
| Telephone: (504) 581-4892 | Telephone: (337) 233-3033 |
| Fax No. (504) 569-6024 | Fax No. (337) 233-2796 |
| E-Mail: sherman@hhkc.com | E-Mail: jimr@wrightroy.com |
| *Plaintiffs Liaison Counsel* | *Plaintiffs Liaison Counsel* |

## **PLAINTIFFS' STEERING COMMITTEE**

| | |
|---|---|
| Brian H. Barr<br>LEVIN, PAPANTONIO, THOMAS, MITCHELL,<br>ECHSNER & PROCTOR, PA<br>316 South Baylen St., Suite 600<br>Pensacola, FL 32502-5996<br>Office: (850) 435-7045<br>Telefax: (850) 436-6187<br>E-Mail: bbarr@levinlaw.com | Robin L. Greenwald<br>WEITZ & LUXENBERG, PC<br>700 Broadway<br>New York, NY 10003<br>Office: (212) 558-5802<br>Telefax: (212) 344-5461<br>E-Mail: rgreenwald@weitzlux.com |
| Jeffrey A. Breit<br>BREIT DRESCHER & IMPREVENTO<br>999 Waterside Drive, Suite 1000<br>Norfolk, VA 23510<br>Office: (757) 670-3888<br>Telefax: (757) 670-3895<br>E-Mail: jbreit@bdbmail.com | Rhon E. Jones<br>BEASLEY, ALLEN, CROW, METHVIN, PORTIS &<br>MILES, P. C.<br>218 Commerce St., P.O. Box 4160<br>Montgomery, AL 36104<br>Office: (334) 269-2343<br>Telefax: (334) 954-7555<br>E-Mail: rhon.jones@beasleyallen.com |
| Elizabeth J. Cabraser<br>LIEFF, CABRASER, HEIMANN &<br>BERNSTEIN, LLP<br>275 Battery Street, 29th Floor<br>San Francisco, CA 94111-3339<br>Office: (415) 956-1000<br>Telefax: (415) 956-1008<br>E-Mail: ecabraser@lchb.com | Matthew E. Lundy<br>LUNDY, LUNDY, SOILEAU & SOUTH, LLP<br>501 Broad Street<br>Lake Charles, LA 70601<br>Office: (337) 439-0707<br>Telefax: (337) 439-1029<br>E-Mail: mlundy@lundylawllp.com |
| Philip F. Cossich, Jr.<br>COSSICH, SUMICH, PARSIOLA & TAYLOR<br>8397 Highway 23, Suite 100<br>Belle Chasse, LA 70037<br>Office: (504) 394-9000<br>Telefax: (504) 394-9110<br>E-Mail: pcossich@cossichlaw.com | Michael C. Palmintier<br>deGRAVELLES, PALMINTIER,<br>HOLTHAUS & FRUGE<br>618 Main Street<br>Baton Rouge, LA 70801-1910<br>Office: (225) 344-3735<br>Telefax: (225) 344-0522<br>E-Mail: mpalmintier@dphf-law.com |
| Robert T. Cunningham<br>CUNNINGHAM BOUNDS, LLC<br>1601 Dauphin Street, P. O. Box 66705<br>Mobile, AL 36660<br>Office: (251) 471-6191<br>Telefax: (251) 479-1031<br>E-Mail: rtc@cunninghambounds.com | Paul M. Sterbcow<br>LEWIS, KULLMAN, STERBCOW & ABRAMSON<br>601 Poydras Street, Suite 2615<br>New Orleans, LA 70130<br>Office: (504) 588-1500<br>Telefax: (504) 588-1514<br>E-Mail: sterbcow@lksalaw.com |
| Alphonso Michael "Mike" Espy<br>MORGAN & MORGAN, P.A.<br>188 East Capitol Street, Suite 777<br>Jackson, MS 39201<br>Office: (601) 949-3388<br>Telefax: (601) 949-3399<br>E-Mail: mike@mikespy.com | Scott Summy<br>BARON & BUDD, P.C.<br>3102 Oak Lawn Avenue, Suite 1100<br>Dallas, TX 75219<br>Office: (214) 521-3605<br>Telefax: (214) 599-1172<br>E-Mail: ssummy@baronbudd.com |

| | |
|---|---|
| Calvin C. Fayard, Jr.<br>FAYARD & HONEYCUTT<br>519 Florida Avenue, SW<br>Denham Springs, LA 70726<br>Office: (225) 664-4193<br>Telefax: (225) 664-6925<br>E-Mail: calvinfayard@fayardlaw.com<br><br>Ervin A. Gonzalez<br>COLSON HICKS EIDSON<br>255 Alhambra Circle, Penthouse<br>Coral Gables, FL 33134<br>Office: (305) 476-7400<br>Telefax: (305) 476-7444<br>E-Mail: ervin@colson.com | Mikal C. Watts (PSC)<br>WATTS GUERRA CRAFT, LLP<br>Four Dominion Drive, Building 3, Suite 100<br>San Antonio, TX 78257<br>Office: (210) 447-0500<br>Telefax: (210) 447-0501<br>E-Mail: mcwatts@wgclawfirm.com |

## CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that the above and foregoing Reply Brief will be served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing will be electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, this 18th day of February, 2011.

                                                             /s/ James Parkerson Roy and Stephen J. Herman