UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG DEEPWATER HORIZON IN THE GULF OF MEXICO, ON APRIL 20, 2010 | § § § | MDL NO. 2179 |
| | § | CIVIL ACTION NO. 10-2771 |
| IN RE THE COMPLAINT AND PETITION OF TRITON ASSET LEASING GMBH, ET AL. IN A CAUSE FOR EXONERATION FROM OR LIMITATION OF LIABILITY | § § § § § | SECTION: J |
| | § | JUDGE BARBIER |
| THIS DOCUMENT RELATES TO: 2:10-CV-02771 | § § | MAGISTRATE JUDGE SHUSHAN |

## PETITIONERS' RULE 14(c) THIRD-PARTY COMPLAINT

TO THE HONORABLE CARL J. BARBIER:

COME NOW Petitioners Triton Asset Leasing GmbH, Transocean Holdings LLC,

Transocean Offshore Deepwater Drilling Inc., and Transocean Deepwater Inc. (hereinafter

collectively referred to as "Third-Party Plaintiffs"), as Owners, Managing Owners, Owners Pro

Hac Vice, and/or Operators, of the MODU *Deepwater Horizon*, her engines, gear, tackle,

appurtenances, etc. and, pursuant to Rule 14(c) of the Federal Rules of Civil Procedure, file this

their Third-Party Complaint against BP Exploration & Production Inc., BP America Production

Company, BP p.l.c., Halliburton Energy Services, Inc., M-I, LLC, Cameron International

Corporation f/k/a Cooper Cameron Corporation, Anadarko Petroleum Corporation, Anadarko E&P Company LP, MOEX Offshore 2007 LLC, MOEX USA Corporation, Mitsui Oil Exploration Company, Ltd. (a/k/a MOECO), Weatherford International, Inc., Weatherford U.S.L.P., Dril-Quip, Inc., Marine Spill Response Corporation, Airborne Support, Inc., Airborne Support International, Inc., Lynden, Inc., Dynamic Aviation Group, Inc., International Air Response, Inc., Lane Aviation, National Response Corporation, O'Brien Response Management, Inc., Tiger Safety, LLC, DRC Emergency Services LLC, Nalco Company, and the United States of America and, in support thereof, would respectfully show as follows:

## **THE PARTIES**

### THE THIRD-PARTY PLAINTIFFS

#### I.

Third-Party Plaintiff Triton Asset Leasing GmbH is, and was at all material time hereinafter mentioned, a limited liability company organized and existing under the laws of the Swiss Confederation with its principal office in Zug, Switzerland.

#### II.

Third-Party Plaintiff Transocean Holdings LLC is, and was at all material time hereinafter mentioned, a limited liability company organized and existing under the laws of the State of Delaware, with its principal office in Houston, Texas.

#### III.

Third-Party Plaintiff Transocean Offshore Deepwater Drilling Inc. is, and was at all material time hereinafter mentioned, a corporation organized and existing under the laws of the State of Delaware, with its principal office in Houston, Texas.

## IV.

Petitioner Transocean Deepwater Inc. is, and was at all material time hereinafter mentioned, a corporation organized and existing under the laws of the State of Delaware, with its principal office in Houston, Texas.

## V.

Third-Party Plaintiffs were at all time material hereto the Owner, Managing Owners, Owners Pro Hac Vice, and/or Operators, of the MODU *Deepwater Horizon*, and/or are considered "Co-Owners" of the MODU *Deepwater Horizon* under the Limitation of Liability Act, 46 U.S.C. §§ 30501, et seq., as a party or parties sought to be held liable "as Owner" of the MODU *Deepwater Horizon* and are entitled to the protections afforded by the Limitation of Liability Act.  The Third-Party Plaintiffs, as Petitioners, instituted this action on May 13, 2010, seeking exoneration from, or limitation of liability, as to all claims arising out of the Macondo Well blow-out, the explosion, fire, and sinking of the *Deepwater Horizon* (hereinafter collectively referred to as the "Incident of April 20, 2010"), the resulting Oil Spill (hereinafter referred to as the "BP Oil Spill") and the voyage of the *Deepwater Horizon* which commenced on January 30, 2010 and ended on or about April 20, 2010 (hereinafter referred to as the "voyage").

### THE THIRD-PARTY DEFENDANTS

## VI.

Third-Party Defendant in Limitation BP Exploration & Production, Inc. ("BP Exploration") is a Delaware Corporation with its principal place of business in Warrenville,

Illinois.  BP Exploration was a lease-holder and the designated operator in the lease granted by

the former Minerals Management Service ("MMS"), now re-organized as the Bureau of Ocean

Energy Management Regulation & Enforcement ("BOEMRE"), allowing it to perform oil

exploration, drilling, and production-related operations in Mississippi Canyon, Blk. 252, the

location known as "Macondo," where the Macondo well was located and from which the BP Oil

Spill originated.  BP Exploration was designated as a "Responsible Party" by the U.S. Coast

Guard for the oil pollution from the Macondo Well under the Oil Pollution Act of 1990, 33

U.S.C. §§ 2701, *et seq.*  This Court has personal jurisdiction over BP Exploration, because BP

Exploration is registered to do business in Louisiana, does business in Louisiana, and has a

registered agent in Louisiana.   Third-Party Defendant in Limitation BP Exploration has

previously been served with a Summons and Master Complaint, Cross-Claim and Third-Party

Complaint for Private Economic Losses in Accordance with PTO No. 11 [CMO No. 1] §

III(B1)("B1 Bundle") and/or a First Amended B1 Master Complaint and has been served with

other Summonses and Complaints filed as a result of the Incident of April 20, 2010 and the BP

Oil Spill.

## VII.

Third-Party Defendant in Limitation BP America Production Company ("BP America")

is a Delaware Corporation with its principal place of business in Houston, Texas.  BP America

was a party to the Drilling Contract with Petitioner Transocean Holdings LLC  for the drilling of

the Macondo Well by the MODU *Deepwater Horizon*.  This Court has personal jurisdiction over

BP America, because BP America is registered to do business in Louisiana, does business in

Louisiana, and has a registered agent in Louisiana.  Third-Party Defendant in Limitation BP

America has previously been served with a Summons and Master Complaint, Cross-Claim and Tendered Third-Party Complaint for Private Economic Losses in Accordance with PTO No. 11 [CMO No. 1] § III(B1)("B1 Bundle") and/or a First Amended B1 Master Complaint and has been served with other Summonses and Complaints filed as a result of the Incident of April 20, 2010 and the BP Oil Spill.

## VIII.

Third-Party Defendant in Limitation BP p.l.c. is a British Public Limited Company with its corporate headquarters in London, England.  BP p.l.c. is the global parent company of the world-wide business operating under the "BP" logo.  BP p.l.c. operates its various business divisions, such as the "Exploration & Production" division in which BP Exploration and BP America fall, through vertical business arrangements.  Third-Party Defendants in Limitation BP Exploration and BP America are wholly-owned subsidiaries of BP p.l.c. and are sufficiently controlled by BP p.l.c. so as to be BP p.l.c.'s agents in Louisiana and the U.S. more generally. This Court has general jurisdiction over BP p.l.c. pursuant to Louisiana's Long-Arm General Jurisdiction Provision (13 Louisiana Statute § 3201(B)), in combination with Rule 4(k)(l)(A) of the Federal Rules of Civil Procedure.  BP p.l.c. does business in Louisiana, has had continuous and systematic contacts with Louisiana (and the U.S. more generally).  This Court also has specific jurisdiction over BP p.l.c. pursuant to Louisiana's Long-Arm Specific Jurisdiction Provision (13 Louisiana Statute § 3201(B)), in combination with Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure.  The Third-Party Plaintiffs' Complaint arises out of conduct committed by BP p.l.c. directly or indirectly, by its agents, that caused injury or damage in Louisiana by an offense or quasi offense committed through an act or omission outside of Louisiana, and BP

p.l.c. regularly does or solicits business, or engages in any other persistent course of conduct, or derives revenue from goods used or consumed or services rendered in Louisiana.  These acts or omissions took place both before the BP Oil Spill and in the conduct of BP p.l.c. after the BP Oil Spill in attempting to contain the damage caused by the BP Oil Spill.  Third-Party Defendant in Limitation BP p.l.c. has previously been served with a Summonses and Master Complaint, Cross-Claim and Third-Party Complaint for Private Economic Losses in Accordance with PTO No. 11 [CMO No. 1] § III(B1)("B1 Bundle") and/or a First Amended B1 Master Complaint and has been served with other Summonses and Complaints filed as a result of the Incident of April 20, 2010 and the BP Oil Spill.

## IX.

Third-Party Defendant in Limitation Halliburton Energy Services, Inc. ("Halliburton") is a Delaware Corporation with its principal place of business in Houston, Texas.  Halliburton is registered to do and does business in the State of Louisiana.  Halliburton provided engineering services, materials, testing, mixing, and pumping for cementing operations onboard the *Deepwater Horizon*, as well as onshore engineering support for those operations.  Halliburton was responsible for the provision of technical advice about the design, modeling, placement and testing of the cement that was used in the Macondo Well at and before the time of the Macondo Well blow-out.  Halliburton was engaged in cementing operations to isolate the hydrocarbon reservoirs and seal the bottom of the well against the influx of hydrocarbons like gas and oil. Through its division Sperry Drilling Services (f/k/a Sperry Sun Drilling Services), Halliburton Energy Services, Inc. was responsible for mud logging personnel and equipment on the *Deepwater Horizon*, including down-hole drilling tools.  Halliburton and Sperry Drilling

Services' mud logging personnel were partially responsible for monitoring the well, including mud pit fluid levels, mud float in and out of the well, mud gas levels, and pressure fluctuations. This Court has personal jurisdiction over Halliburton because Halliburton is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana. Third-Party Defendant in Limitation Halliburton has previously been served with a Summonses and Master Complaint, Cross-Claim and Third-Party Complaint for private economic losses in accordance with PTO No. 11 [CMO No. 1] § III(B1)("B1 Bundle") and/or a First Amended B1 Master Complaint and has been served with other Summonses and Complaints filed as a result of the Incident of April 20, 2010 and the BP Oil Spill.

## X.

Third-Party Defendant in Limitation M-I, LLC ("M-I") is a Delaware limited liability company with its principal place of business in Wilmington, Delaware.  M-I was, at all relevant time, registered to do, and was doing, business in Louisiana and within this district.  M-I also known as M-I Swaco, supplies drilling and completion fluids and additives to oil and gas companies in Louisiana and elsewhere, providing pressure control, vessel instrumentation, and drilling waste management products and services.  On the Deepwater Horizon, M-I provided mud products, including drilling fluids and spacers, engineering services, and mud supervisory personnel, such as mud engineers and drilling fluid specialists, to manage the properties of those fluids in the Macondo Well.  M-I employed, planned and/or supervised key fluid activities concerning the Macondo Well, such as the mud displacement that was occurring at the time of the April 20, 2010 Macondo Well blow-out.  This Court has personal jurisdiction over M-I because M-I is registered to do business in Louisiana, does business in Louisiana, and has a

registered agent in Louisiana. Third-Party Defendant in Limitation M-I has previously been served with a Summonses and Master Complaint, Cross-Claim and Third-Party Complaint for Private Economic Losses in Accordance with PTO No. 11 [CMO No. 1] § III(B1)("B1 Bundle") and/or a First Amended B1 Master Complaint and has been served with other Summonses and Complaints filed as a result of the Incident of April 20, 2010 and the BP Oil Spill.

## XI.

Third-Party Defendant in Limitation Cameron International Corporation f/k/a Cooper-Cameron Corporation ("Cameron") is a Delaware corporation with its principal place of business in Houston, Texas. Cameron is registered to do and does business in the State of Louisiana. Cameron manufactured, designed, supplied and/or installed the *Deepwater Horizon*'s sub-sea emergency well-closure device known as a blowout-preventer ("BOP") and, at all pertinent time, contracted with Third-Party Plaintiff Transocean Deepwater Drilling, Inc. for the provision of the BOP which was installed at the Macondo Wellhead. This Court has personal jurisdiction over Cameron, because Cameron is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana. Third-Party Defendant in Limitation Cameron has previously been served with a Summons and Master Complaint, Cross-Claim and Third-Party Complaint for Private Economic Losses in Accordance with PTO No. 11 [CMO No. 1] § III(B1)("B1 Bundle") and/or a First Amended B1 Master Complaint and has been served with other Summonses and Complaints filed as a result of the Incident of April 20, 2010 and the BP Oil Spill.

## XII.

Third-Party Defendant in Limitation Anadarko Exploration & Production Company LP ("Anadarko E&P") is a Delaware limited partnership with its principal place of business in The Woodlands, Texas.   Anadarko E&P is registered to do and does business in the State of Louisiana.  Anadarko E&P is an oil and gas exploration production company.  On various dates, BP and Anadarko E&P became co-lessees under the terms of a lease executed on or about May 8, 2008, by BP, as Lessee, and the United States, by and through the MMS, as Lessor, for the "Oil & Gas Lease of Submerged Lands under the Outer Continental Shelf Lands Act, Serial No. OCS-G 32306" (hereinafter the "Lease"), pertaining to "All of Block 252, Mississippi Canyon OSC Official Protraction Diagram, N.H. 16-10," which Lease became effective on June 1, 2008. As of April 20, 2010, and continuing until at least April 28, 2010, Anadarko E&P held a 22.5% interest in the Lease.   This Court has personal jurisdiction over Anadarko E&P, because Anadarko E&P is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.   Third-Party Defendant in Limitation Anadarko E&P has previously been served with a Summons and Master Complaint, Cross-Claim and Third-Party Complaint for Private Economic Losses in Accordance with PTO No. 11 [CMO No. 1] § III(B1)("B1 Bundle") and/or a First Amended B1 Master Complaint and has been served with other Summonses and Complaints filed as a result of the Incident of April 20, 2010 and the BP Oil Spill.

## XIII.

Third-Party Defendant in Limitation Anadarko Petroleum Corporation Co. ("Anadarko") is a Delaware corporation with its principal place of business in The Woodlands, Texas.

Anadarko is registered to do and does business in the State of Louisiana. Anadarko is an oil and gas exploration and production company. This Court has personal jurisdiction over Anadarko, because Anadarko is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana. On various dates, BP and Anadarko became co-Lessees under the terms of the Lease. As of April 20, 2010, and continuing until at least April 28, 2010, Anadarko held a 2.5% interest in the Lease. Third-Party Defendant in Limitation Anadarko has been served with a Summons and Master Complaint, Cross-Claim and Third-Party Complaint for Private Economic Losses in Accordance with PTO No. 11 [CMO No. 1] § III(B1)("B1 Bundle") and/or a First Amended B1 Master Complaint and has previously been served with other Summonses and Complaints filed as a result of the Incident of April 20, 2010 and the BP Oil Spill.

## XIV.

Third-Party Defendant in Limitation MOEX Offshore 2007 LLC ("MOEX Offshore") is a Delaware corporation with its principal place of business in Houston, Texas. On various dates, BP and MOEX became co-Lessees under the terms of the Lease. As of April 20, 2010 and continuing until at least April 28, 2010, MOEX Offshore held a 10% interest in the Lease. This Court has personal jurisdiction over MOEX Offshore, because MOEX Offshore is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana. Third-Party Defendant in Limitation MOEX Offshore has been served with a Summons and Master Complaint, Cross-Claim and Third-Party Complaint for Private Economic Losses in Accordance with PTO No. 11 [CMO No. 1] § III(B1)("B1 Bundle") and/or a First Amended B1

Master Complaint and has previously been served with other Summonses and Complaints filed as a result of the Incident of April 20, 2010 and the BP Oil Spill.

## XV.

Third-Party Defendant in Limitation MOEX USA Corporation ("MOEX USA") is a Delaware corporation with its principal place of business in Houston, Texas.  MOEX USA is the parent company of MOEX Offshore 2007 LLC.  This Court has general jurisdiction over MOEX USA pursuant to Louisiana's Long-Arm Specific Jurisdiction Provision (13 Louisiana Statute § 3201(B)), in combination with Rule 4(k)(l)(A) of the Federal Rules of Civil Procedure.  MOEX USA does business in Louisiana, has continuous and systematic contacts with Louisiana (and the U.S. more generally) and has been served with a Summons and individual Complaints that are the subject of the Master Claim in Limitation.  This Court has specific jurisdiction over MOEX USA pursuant to Louisiana's Long-Arm Specific Jurisdiction Provision (13 Louisiana Statute § 3201(B), in combination with Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure.  The Third-Party Plaintiffs' Complaint arises out of conduct committed by MOEX USA directly or indirectly, by its agents, that caused injury or damage in Louisiana by an offense or quasi-offense committed through an act or omission outside of Louisiana, and MOEX USA regularly does or solicits business, or engages in any other persistent course of conduct, or derives revenue from goods used or consumed or services rendered in Louisiana.  These acts or omissions took place both before the BP Oil Spill and in the conduct of MOEX USA after the BP Oil Spill and attempted to contain the damage caused by the BP Oil Spill.   Third-Party Defendant in Limitation MOEX USA has been served with a Summons and Master Complaint, Cross-Claim and Third-Party Complaint for Private Economic Losses in Accordance with PTO No. 11 [CMO

No. 1] § III(B1)("B1 Bundle") and/or a First Amended B1 Master Complaint and has previously been served with other Summonses and Complaints filed as a result of the Incident of April 20, 2010 and the BP Oil Spill.

## XVI.

Third-Party Defendant in Limitation Mitsui Oil Exploration Company, Ltd. ("MOECO") is a Japanese corporation with its principal place of business in Tokyo, Japan.  Upon information and belief, MOECO is a corporate parent and/or alter ego of MOEX Offshore, which holds a 10% stake in the Macondo prospect lease where the BP Oil Spill originated.   This Court has personal jurisdiction over MOECO  for the reasons set forth in the B1 Master Claim/Master Complaint and the First Amended B1 Master Claim/Master Complaint.  Third-Party Defendant in Limitation MOECO has been served with a Summons and Master Complaint, Cross-Claim and Third-Party Complaint for Private Economic Losses in Accordance with PTO No. 11 [CMO No. 1] § III(B1)("B1 Bundle") and/or a First Amended B1 Master Complaint and has previously been served with other Summonses and Complaints filed as a result of the Incident of April 20, 2010 and the BP Oil Spill.

## XVII.

Third-Party Defendant in Limitation Weatherford U.S. L.P. ("Weatherford") is a Louisiana limited partnership but maintains its principal place of business in Houston, Texas, and at all pertinent time was registered to do, and was doing business, in Louisiana and within this District.  Weatherford designed and manufactured, marketed, sold and/or distributed the casing components such as the float collar, shoe, and centralizers and provided the personnel and equipment for running the casing and casing components into the well bore.  This Court has

personal jurisdiction over Weatherford because Weatherford is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana. Third-Party Defendant in Limitation Weatherford has been served with a Summons and Master Complaint, Cross-Claim and Third-Party Complaint for Private Economic Losses in Accordance with PTO No. 11 [CMO No. 1] § III(B1) ("B1 Bundle") and/or a First Amended B1 Master Complaint and has previously been served with other Summonses and Complaints filed as a result of the Incident of April 20, 2010 and the BP Oil Spill.

## XVIII.

Third-Party Defendant in Limitation Weatherford International, Inc. ("Weatherford International") is a Delaware corporation with its principal place of business in Houston, Texas. Weatherford International designed and manufactured, marketed, sold and/or distributed the casing components such as the float collar, shoe, and centralizers and provided the personnel and equipment for running the casing and casing components into the well bore. This Court has personal jurisdiction over Weatherford International because Weatherford International is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana. Third-Party Defendant in Limitation Weatherford International has been served with a Summons and Master Complaint, Cross-Claim and Third-Party Complaint for Private Economic Losses in Accordance with PTO No. 11 [CMO No. 1] § III(B1) ("B1 Bundle") and/or a First Amended B1 Master Complaint and has previously been served with other Summonses and Complaints filed as a result of the Incident of April 20, 2010 and the BP Oil Spill.

## XIX.

Third-Party Defendant in Limitation Dril-Quip, Inc. ("Dril-Quip") is a Delaware corporation which maintains its principal place of business in Houston, Texas. Dril-Quip, Inc. was involved with providing wellhead systems to the *Deepwater Horizon*, including the Macondo Well that suffered the Incident of April 20, 2010 and subsequently led to the BP Oil Spill. This Court has personal jurisdiction over Dril-Quip, Inc., because Dril-Quip, Inc. is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana. Third-Party Defendant in Limitation Dril-Quip has been served with a Summons and Master Complaint, Cross-Claim and Third-Party Complaint for Private Economic Losses in Accordance with PTO No. 11 [CMO No. 1] § III(B1)("B1 Bundle") and/or a First Amended B1 Master Complaint and has previously been served with other Summonses and Complaints filed as a result of the Incident of April 20, 2010 and the BP Oil Spill.

## XX.

Third-Party Defendant in Limitation Marine Spill Response Corporation ("MSRC") is a Tennessee non-profit corporation with its principal place of business in Herndon, Virginia, and at all pertinent time was doing business in the State of Louisiana. MSRC participated in the post-explosion BP Oil Spill remediation and response efforts. Third-Party Defendant in Limitation MSRC has been served with a Master Complaint in Accordance with PTO No. 11 [Case Management Order No. 1] Section III.B(3) ["B3 Bundle"].

## XXI.

Third-Party Defendant in Limitation Airborne Support, Inc. ("ASI") is a Florida corporation with its principal place of business in Houma, Louisiana, and at all pertinent time

was doing business in the State of Louisiana.  ASI participated in the post-explosion BP Oil Spill remediation and response efforts.  Third-Party Defendant in Limitation ASI has been served with a Master Complaint in Accordance with PTO No. 11 [Case Management Order No. 1] Section III.B(3) ["B3 Bundle"].

## XXII.

Third-Party Defendant in Limitation Airborne Support International, Inc. ("ASI International") is a Florida corporation with its principal place of business in Houma, Louisiana, and at all pertinent time was doing business in the State of Louisiana.  ASI International participated in the post-explosion BP Oil Spill remediation and response efforts.  Third-Party Defendant in Limitation ASI International has been served with a Master Complaint in Accordance with PTO No. 11 [Case Management Order No. 1] Section III.B(3) ["B3 Bundle"].

## XXIII.

Third-Party Defendant in Limitation Lynden, Inc. is a Washington corporation with its principal place of business in Seattle, Washington, and at all pertinent time was doing business in the State of Louisiana by virtue of its 100% ownership interest in Lynden Air Cargo, LLC, an Alaska limited liability company with its principal place of business in Seattle, Washington, which at all pertinent time was doing business in the State of Louisiana (hereinafter collectively "Lynden").   Lynden participated in the post-explosion BP Oil Spill remediation and response efforts.  Third-Party Defendant in Limitation Lynden has been served with a Master Complaint in Accordance with PTO No. 11 [Case Management Order No. 1] Section III.B(3) ["B3 Bundle"].

## XXIV.

Third-Party Defendant in Limitation Dynamic Aviation Group, Inc. ("Dynamic") is a Virginia corporation with its principal place of business in Bridgewater, Virginia and at all pertinent times was doing business in the State of Louisiana.  Dynamic participated in the post-explosion BP Oil Spill remediation and response efforts.  Third-Party Defendant in Limitation Dynamic has been served with a Master Complaint in Accordance with PTO No. 11 [Case Management Order No. 1] Section III.B(3) ["B3 Bundle"].

## XXV.

Third-Party Defendant in Limitation International Air Response, Inc. ("IAR") is an Arizona corporation with its principal place of business in Coolidge, Arizona, and at all pertinent time was doing business in the State of Louisiana.  IAR participated in the post-explosion BP Oil Spill remediation and response efforts.  Third-Party Defendant in Limitation IAR has been served with a Master Complaint in Accordance with PTO No. 11 [Case Management Order No. 1] Section III.B(3) ["B3 Bundle"].

## XXVI.

Third-Party Defendant in Limitation Lane Aviation ("Lane") is a Texas corporation with its principal place of business in Rosenberg, Texas and at all pertinent time was doing business in the State of Louisiana.  Lane participated in the post-explosion BP Oil Spill remediation and response efforts.  Third-Party Defendant in Limitation Lane has been served with a Master Complaint in Accordance with PTO No. 11 [Case Management Order No. 1] Section III.B(3) ["B3 Bundle"].

**XXVII.**

Third-Party Defendant in Limitation National Response Corporation ("NRC") is a Delaware corporation with its principal place of business in Great River, New York and at all pertinent time was doing business in the State of Louisiana (together with SEACOR Holding, Inc., a Delaware corporation with its principal place of business in Delaware, of which NRC is a wholly-owned subsidiary). NRC participated in the post-explosion BP Oil Spill remediation and response efforts. Third-Party Defendant in Limitation NRC has been served with a Master Complaint in Accordance with PTO No. 11 [Case Management Order No. 1] Section III.B(3) ["B3 Bundle"].

**XXVIII.**

Third-Party Defendant in Limitation O'Brien Response Management, Inc. ("O'Brien") is a Louisiana corporation with its principal place of business in the Parish of St. Tammany, State of Louisiana and was, at all time, doing business in the State of Louisiana. O'Brien participated in the post-explosion BP Oil Spill remediation and response efforts. Third-Party Defendant in Limitation O'Brien has been served with a Master Complaint in Accordance with PTO No. 11 [Case Management Order No. 1] Section III.B(3) ["B3 Bundle"].

**XXIX.**

Third-Party Defendant in Limitation Tiger Safety, LLC ("Tiger") is a Louisiana limited liability company with its principal place of business in the Parish of East Baton Rouge, State of Louisiana. Tiger participated in the post-explosion BP Oil Spill remediation and response efforts. Third-Party Defendant in Limitation Tiger has been served with a Master Complaint in Accordance with PTO No. 11 [Case Management Order No. 1] Section III.B(3) ["B3 Bundle"].

## XXX.

Third-Party Defendant in Limitation DRC Emergency Services, LLC ("DRC") is an Alabama limited liability company that at all pertinent time was doing business in the State of Louisiana.  DRC participated in the post-explosion BP Oil Spill remediation and response efforts.  Third-Party Defendant in Limitation DRC has been served with a Master Complaint in Accordance with PTO No. 11 [Case Management Order No. 1] Section III.B(3) ["B3 Bundle"].

## XXXI.

Third-Party Defendants in Limitation MSRC, NRC, IAR, ASI, ASI International, Lane, Lynden, Dynamic, O'Brien, Tiger and DRC are collectively referred to as the "Dispersant Third-Party Defendants," where appropriate.

## XXXII.

Third-Party Defendant in Limitation Nalco Company is a Delaware corporation, wholly owned by Nalco Holdings LLC, a Delaware limited liability company.  Nalco Holdings LLC is wholly owned by Nalco Finance Holdings LLC, a Delaware limited liability company.  Nalco Finance Holdings LLC is wholly owned by Nalco Holding Company, a Delaware corporation. Nalco Company, Nalco Holding LLC, Nalco Finance Holdings LLC and Nalco Holding Company are collectively referred to as "Nalco".  At all pertinent times, Nalco was doing business in the State of Louisiana.  Nalco was the manufacturer of the chemical dispersants purchased by BP for use in connection with clean-up efforts in response to the BP Oil Spill.

## XXXIII.

Third-Party Defendant in Limitation United States of America is responsible for the acts of Federal Agencies and government employees.  This Court has jurisdiction over civil actions or

claims against the United States of America for declaratory relief and/or money damages with respect to injury or loss of property caused by the negligent or wrongful act or omission of any agency or employee of the United States of America.  Third-Party Defendant in Limitation United States of America has submitted itself to the jurisdiction of this Court by filing suit in *United States of America v. BP Exploration & Production, Et Al,* 2:10-cv-04536 (E.D. La. 2010).

## CLAIMANTS

### XXIV.

Pursuant to his Original Order dated May 13, 2010, his First Amended Order dated May 26, 2010, and his Second Amended Order dated June 14, 2010, the Honorable Keith P. Ellison, United States District Judge for the Southern District of Texas, directed all Plaintiffs/Claimants subject to the Limitation Injunction, Stay, and Restraining Order, to file their respective claims with the Clerk of the Court on or before November 15, 2010.  This monition date was later extended to April 20, 2011 by the Honorable Carl J. Barbier, United States District Judge for the Eastern District of Louisiana, pursuant to his Pre-Trial Order No. 11 [Case Management Order No. 1].

### XXXV.

Commencing on May 24, 2010, Claims against the Third-Party Plaintiffs have been filed in these Limitation proceedings.  For example, on December 15, 2010, the Master Claim in Limitation and Master Complaint, Cross-Claim and Third-Party Complaint for Private Economic Losses in Accordance with PTO No. 11 [CMO No. 1] Section III (B1) ["B1 Bundle"], was filed on behalf of Claimants, individuals and/or entities who have suffered property losses, economic damages, and/or other costs (including removal costs) as a result of the Incident of April 20,

2010 and the BP Oil Spill.  **Dkt. No. 879 at pp. 7-8** (Master Claim in Limitation) and **43-45** (Master Complaint) (where appropriate, collectively referred to as the "B1 Master Claim/Master Complaint).   The B1 Master Claim/Master Complaint was designated as an admiralty or maritime case as provided for by Rule 9(h)(1) of the Federal Rules of Civil Procedure.  **Dkt. No. 879 at cover page and p. 39.**  Thereafter on February 9, 2011, a First Amended B1 Master Claim/Master Complaint was filed.  **Dkt. No. 1128** (collectively referred to as the "First Amended B1 Master Claim/Master Complaint").   The First Amended B1 Master Claim/Master Complaint was designated as an admiralty or maritime case as provided for by Rule 9(h)(1) of the Federal Rules of Civil Procedure.  **Dkt. No. 1128, cover page, pp. i, 6, 13, and 46.**  In addition to the B1 Master Claim/Master Complaint and the First Amended B1 Master Claim/Master Complaint, on December 15, 2010, the Master Complaint in Accordance with PTO No. 11 [Case Management Order No. 1] Section III.B(3) ["B3 Bundle"] (referred to as the "B3 Master Complaint") was filed on behalf of Plaintiffs seeking damages for physical injuries, costs of future medical screening and monitoring, the implementation of a medical screening and monitoring program and other damages resulting from clean-up efforts after the Incident of April 20, 2010.  **Dkt. No. 881.**  The B3 Master Complaint was designated as an admiralty or maritime case within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.  **Dkt. No. 881 at cover page and p. 21.**  In addition to the B1 Master Claim/Master Complaint, the First Amended B1 Master Claim/Master Complaint and the B3 Master Complaint, other claims have been filed in these Limitation proceedings against the Third-Party Plaintiffs by other Plaintiffs/Claimants. These Plaintiffs/Claimants and Claims are identified by and are set forth on Exhibit "A", which is a current list of all Claims which have been filed in the Limitation proceedings against Third-

Party Plaintiffs as of February 17, 2011 under Civil Action No. 10-2771.  As of February 17, 2011, 123 Claimants have filed short form joinders in 10-8888.  A copy of the Docket Sheet current through February 17, 2011 for 10-8888 is attached as Exhibit "B".  In addition, because the deadline (monition) date for the filing of claims in the Limitation proceedings is April 20, 2011, additional claims are expected to be filed in the Limitation proceedings by other Claimants against the Third-Party Plaintiffs following February 17, 2011.[1]

## JURISDICTION AND VENUE

## XXXVI.

The  Court  has  admiralty  and  maritime  jurisdiction  of  the  Rule  14(c)  Third-Party Complaint pursuant to Rule 9(h) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1333. Venue is proper in this District pursuant to Rule F(9) of the Supplemental Rules for Admiralty and Maritime Claims.

## RULE 14(c) TENDER OF THIRD-PARTY DEFENDANTS TO CLAIMANTS

## XXXVII.

This Third-Party Complaint is filed pursuant to Rule 14(c) of the Federal Rules of Civil Procedure.   The  Plaintiffs/Claimants  have  filed  or  will  file  claims  against  the  Third-Party Plaintiffs in these Limitation proceedings for which Impleader is allowed.  As provided for in

---

[1]  This Court signed Pre-trial Order No. 11 [Case Management Order No. 1] dated October 19, 2010, **Dkt. No. 411-1**, MDL No. 2179, by which the Court directed that Master Complaints be filed by December 15, 2010 and that Pleading Bundles be pled pursuant to the Master Complaints.  The Court's October 19, 2010 Order also directed that Transocean's Rule 14(c) claims asserted in connection with their Limitation proceedings be asserted on or before February 18, 2011.  In Pre-Trial Order No. 24 filed on January 12, 2011, this Court created Civil Action No. 10-8888 for the sole purpose of the filing of the Claim Limitation/Short Claim Forms ("Short-Form Joinder").  **Dkt. No. 982.**  This Court further ordered that any Short-Form Joinder filed in C.A. No. 10-8888 "shall be deemed a simultaneous filing of an answer and claim in C.A. No. 10-2771 , and an intervention into one or more of the Master Complaints (Docs. 879 and/or 881) in Civil Action No. 10-md-2179."  **Dkt. No. 983 at 4.**

Rule 14(c), the Third-Party Defendants "may be wholly or partially liable – either to the plaintiff or the third-party plaintiff – for remedy over, contribution, or otherwise, on account of the same transaction, occurrence, or series of transactions or occurrences" made the basis of the Plaintiffs'/Claimants' Claims originally made against the Third-Party Plaintiffs.  Fed. R. Civ. P. 14(c)(1).  The Third-Party Plaintiffs demand judgment in the Plaintiffs/Claimants' favor against the tendered Third-Party Defendants pursuant to Rule 14(c)(2).  Accordingly, the tendered Third-Party Defendants must defend against the Plaintiffs/Claimants' claims under Rule 12, and the action proceeds as if the Plaintiffs/Claimants had sued both the tendered Third-Party Defendants and the Third-Party Plaintiffs.  Fed. R. Civ. P. 14(c)(2).  Pursuant to Rules 4, 12 and 14(c) of the Federal Rules of Civil Procedure, the Third-Party Plaintiffs demand that the Plaintiffs/Claimants assert their Claims directly against the tendered Third-Party Defendants and that the tendered Third-Party Defendants file responsive pleadings to the Claims in Limitation.  This Rule 14(c) tender and demand applies to all Limitation claims filed or to be filed in these Limitation proceedings on or prior to April 20, 2011, including Claims in Limitation pursuant to any Short Form Joinder filed in C.A. No. 10-8888.

## XXXVIII.

The Third-Party Plaintiffs have or will  file Rule 12(b) Motions to Dismiss or Answers in response to the Claims in Limitation and have denied or will deny that they are liable, in whole or in part, to the Plaintiffs/Claimants on account of their Claims in Limitation.  The Third-Party Plaintiffs will also answer or file Rule 12(b) Motions to Dismiss in response to any future Claims in Limitation filed after the filing of this Third-Party Complaint, and will deny that they are liable, in whole or in part, to any Plaintiffs/Claimants on account of any Claims filed on or

before April 20, 2011.  Although the Third-Party Plaintiffs deny that they are liable to any Limitation Plaintiffs/Claimants for the Incident of April 20, 2010 or the BP Oil Spill, the tendered Third-Party Defendants may, however, be directly liable, in whole or in part, to the Plaintiffs/Claimants on account of the Plaintiffs/Claimants' Claims in Limitation.  Thus, joinder of the tendered Third-Party Defendants is proper on the basis of the Third-Party Defendants' direct liability to the Plaintiffs/Claimants for the allegations and causes of action as set forth in the Plaintiffs/Claimants' Claims in Limitation.

## XXXIX.

The true facts and circumstances regarding the Incident of April 20, 2010 are that the April 20, 2010 incident was caused not by any acts, omissions, or culpable conduct of the Third-Party Plaintiffs, but may have been caused in whole or in part by the acts, omissions or culpable conduct of the Third-Party Defendants.

## XL.

The true facts and circumstances regarding the BP Oil Spill are that the BP Oil Spill was caused not by any acts, omissions, or culpable conduct of the Third-Party Plaintiffs, but may have been caused in whole or in part by the acts, omissions or culpable conduct of the Third-Party Defendants.

## XLI.

Because the Incident of April 20, 2010 and the BP Oil Spill may have been caused, in whole or in part, by the acts, omissions or culpable conduct of the Third-Party Defendants, the Plaintiffs/Claimants must assert their Claims directly against the Third-Party Defendants and the Third-Party Defendants must file responsive pleadings to all Claims in Limitation pursuant to

Rule 14(c) of the Federal Rules of Civil Procedure. The Limitation Claims will then proceed as if the Plaintiffs/Claimants had sued the Third-Party Defendants directly. The Plaintiffs/Claimants in Limitation could have brought suit against the tendered Third-Party Defendants and, in fact, have done so in the B1 Master Claim/Master Complaint, the First Amended B1 Master Claim/Master Complaint, the B3 Master Complaint, or other Complaints, filed as a result of the Incident of April 20, 2010 and/or the BP Oil Spill. The allegations, contentions and causes of action which have been asserted by the various Plaintiffs/Claimants which have filed suit as a result of the Incident of April 20, 2010 and/or the BP Oil Spill are set forth in the B1 Master Claim/Master Complaint, the First Amended B1 Master Claim/Master Complaint, the B3 Master Complaint, and the Claims listed on Exhibit "A", and are incorporated herein for reference only.[2] On the basis of these allegations, contentions and causes of action, the Third-Party Defendants may be liable directly to the Plaintiffs/Claimants.

## XLII.

## THE PLAINTIFFS'/CLAIMANTS' CLAIMS AS TO BP EXPLORATION, BP AMERICA AND BP p.l.c.

As to BP Exploration, BP America, and BP p.l.c. (collectively "BP") the following allegations, among others, have been made by the Plaintiffs/Claimants:

1.     BP owed and breached duties of ordinary and reasonable care in connection with its drilling operations owed and breached duties to the Claimants to guard against and/or prevent the risk of an oil spill;

---

[2]     Third-Party Plaintiffs' reference to the allegations, contentions, and causes of action asserted by the various Plaintiffs/Claimants who have filed suit as a result of the Incident of April 20, 2010 and/or the BP Oil Spill, is not intended by Third-Party Plaintiffs as an adoption of these allegations, contentions and causes of action. Reference is made to these allegations, contentions, and causes of action only to establish that, under Rule 14(c), the Third-Party Defendants may be liable, in whole or in part, to the Plaintiffs/Claimants and, accordingly, impleader of these Third-Party Defendants – and their tender to the Plaintiffs/Claimants – is proper.

2.     BP failed to exercise reasonable care while participating in drilling operations to ensure that a blow-out and subsequent oil spill did not occur;

3.     BP failed to exercise reasonable care to ensure that oil would expeditiously and adequately be contained within the immediate vicinity of the *Deepwater Horizon* in the event of a blow-out;

4.     BP failed to exercise reasonable care to ensure that adequate safeguards, protocols, procedures and resources would be readily available to prevent and/or mitigate the effects of an uncontrolled oil spill into the waters of the Gulf of Mexico;

5.     BP chose and implemented a long string well design instead of a liner/tie back design;

6.     BP used pipe material that it knew, and which it recognized before the blow-out, might collapse under high pressure;

7.     BP used too few centralizers to ensure that the casing was centered into the well bore;

8.     BP failed to implement a full "bottoms-up" circulation of mud between the running of the casing and the beginning of the cement job;

9.     BP failed to require comprehensive lab testing to ensure the density of the cement, and did not account for the results of the negative pressure testing;

10.     BP cancelled the cement bond log test that would have determined the integrity of the cement job;

11.     BP failed to deploy the casing hanger lock down sleeve to prevent the well head seal from being blown out by pressure from below;

12.     BP used an abnormally large quantity of mixed and untested spacer fluid;

13.     BP failed to train its employees in the management of complex systems like that found on the *Deepwater Horizon*;

14.     BP required simultaneous operations in an effort to expedite the project, making it difficult to track fluid volumes in the wellbore;

15.     BP failed to take appropriate action to avoid or mitigate the BP Oil Spill;

16.     BP failed to timely bring the oil release under control; and

17.     BP failed to exercise reasonable care in the operation, maintenance, handling, design, implementation, and execution of the relief and recovery efforts following the BP Oil Spill.

In addition to the above, the allegations, contentions and causes of action which have been asserted against BP by the various Plaintiffs/Claimants in the B1 Master Claim/Master Complaint, the First Amended B1 Master Claim/Master Complaint, the B3 Master Complaint, or other Complaints, filed as a result of the Incident of April 20, 2010 and/or the BP Oil Spill are incorporated herein for more particular reference, as if set forth herein.

## XLIII.

## THE PLAINTIFFS'/CLAIMANTS' CLAIMS AS TO ANADARKO E&P, ANADARKO, MOEX OFFSHORE, MOEX USA AND MOECO

As to Anadarko E&P, Anadarko, MOEX Offshore, MOEX USA and MOECO, the Plaintiffs/Claimants have made allegations, among others, that they should have known of the presence of hydrocarbons in the well on the evening of April 20, 2010 and failed to warn the drilling vessel crew of the imminent blow-out so that the drilling vessel crew could take evasive action.

In addition to the above, the allegations, contentions and causes of action which have been asserted against Anadarko E&P, Anadarko, MOEX Offshore, MOEX USA and MOECO by the various Plaintiffs/Claimants in the B1 Master Claim/Master Complaint, the First Amended B1 Master Claim/Master Complaint, the B3 Master Complaint, or other Complaints, filed as a result of the Incident of April 20, 2010 and/or the BP Oil Spill are incorporated herein for more particular reference, as if set forth herein.

## XLIV.

## THE PLAINTIFFS'/CLAIMANTS' CLAIMS AS TO CAMERON

As to Cameron, the following allegations, among others, have been made by the

Plaintiffs/Claimants:

1. Cameron, as designer, manufacturer, and supplier of the *Deepwater Horizon*'s BOP, owed and breached duties of ordinary and reasonable care in connection with the design, manufacture and supply of the BOP;

2. Cameron failed to ensure and verify that the BOP as designed and manufactured was suitable for the types of drill pipe and casing assembly design which would reasonably be used during the *Deepwater Horizon*'s drilling and exploration operations;

3. Cameron designed the BOP such that it was vulnerable to a single-point failure;

4. Cameron failed to install a back-up activation system for the BOP;

5. Cameron failed to provide adequate warnings, instructions and guidelines on the permissible uses, modifications and applications of the BOP;

6. Cameron failed to effectively design the BOP with a back-up activation system, or provide adequate warnings, instructions, and/or guidelines on the permissible uses, modifications and applications of the BOP;

7. Cameron's BOP was defective in design because its emergency modes of system operation did not provide a fully-independent means of closing the BOP which rendered the BOP abnormally dangerous;

8. Cameron's BOP was defectively designed and/or manufactured because its blind shear rams were vulnerable to the failure of a single shuttle valve carrying hydraulic fluid to the ram blades;

9. Cameron's BOP was defectively designed and/or manufactured because it failed to operate as intended, if at all;

10. Cameron's BOP was defectively designed and/or manufactured such that it did not operate as intended to prevent or minimize blow-outs;

11. Cameron's BOP was in a defective condition and unreasonably dangerous;

12.     The BOP left Cameron's control in a defective condition; and

13.     The BOP left Cameron's control with over 260 known defects and failure modes.

In addition to the above, the allegations, contentions and causes of action which have been asserted against Cameron by the various Plaintiffs/Claimants in the B1 Master Claim/Master Complaint, the First Amended B1 Master Claim/Master Complaint, or other Complaints, filed as a result of the Incident of April 20, 2010 and/or the BP Oil Spill are incorporated herein for more particular reference, as if set forth herein.

## XLV.

## THE PLAINTIFFS'/CLAIMANTS' CLAIMS AS TO WEATHERFORD AND WEATHERFORD INTERNATIONAL

As to Weatherford and Weatherford International (collectively "Weatherford"), the following allegations, among others, have been made by the Plaintiffs/Claimants:

1.     Weatherford, as designer, manufacturer and supplier of the *Deepwater Horizon*'s float collar, owed and breached duties of ordinary and reasonable care in connection with the design, manufacture and supply of the float collar;

2.     Weatherford designed and manufactured a float collar that failed to seal properly and which allowed hydrocarbon back-flow into the casing;

3.     The float collar manufactured by Weatherford did not seal properly;

4.     Weatherford's float collar failed to operate properly or at all;

5.     Weatherford's float collar was defective because it failed to operate as intended; and

6.     Weatherford's float collar was in a defective condition and unreasonably dangerous.

In addition to the above, the allegations, contentions and causes of action which have been asserted against Weatherford by the various Plaintiffs/Claimants in the B1 Master

Claim/Master Complaint, the First Amended B1 Master Claim/Master Complaint, or other Complaints, filed as a result of the Incident of April 20, 2010 and/or the BP Oil Spill are incorporated herein for more particular reference, as if set forth herein.

## XLVI.

### THE PLAINTIFFS'/CLAIMANTS' CLAIMS AS TO HALLIBURTON

As to Halliburton, the following allegations, among others, have been made by the Plaintiffs/Claimants:

1. Halliburton, through its Division, Sperry Sun Drilling Services, owed and breached duties of ordinary and reasonable care in connection with the drilling operations owed and breached duties to the Claimants to guard against and/or prevent the risk of an oil spill;

2. Halliburton, through its Division, Sperry Sun Drilling Services, failed to exercise reasonable care in conducting its cementing, testing, analysis, and monitoring of the Macondo Well;

3. Halliburton, through its Division, Sperry Sun Drilling Services, was negligent by failing to use a full "bottoms-up" circulation of mud between the running of the casing and the beginning of the cement job;

4. Halliburton, through its Division, Sperry Sun Drilling Services, failed to properly monitor the Macondo Well, including mud pit fluid levels, mud flow in and out of the well, mud gas levels, and pressure fluctuations;

5. Halliburton, through its Division, Sperry Sun Drilling Services, was negligent in failing to require comprehensive lab testing to ensure the density of the cement;

5. Halliburton, through its Division, Sperry Sun Drilling Services, was negligent in failing to heed the results of negative pressure testing;

6. Halliburton, through its Division, Sperry Sun Drilling Services, was negligent in cancelling, or acquiesced in the cancellation of, the cement bond log test; and

7. Halliburton, through its Division, Sperry Sun Drilling Services, failed to deploy, or acquiesced in the decision not to deploy, the casing hanger

lock-down sleeve to prevent the wellhead seal from being blown out by pressure from below.

In addition to the above, the allegations, contentions and causes of action which have been asserted against Halliburton by the various Plaintiffs/Claimants in the B1 Master Claim/Master Complaint, the First Amended B1 Master Claim/Master Complaint, or other Complaints, filed as a result of the Incident of April 20, 2010 and/or the BP Oil Spill are incorporated herein for more particular reference, as if set forth herein.

## XLVII.

## THE PLAINTIFFS'/CLAIMANTS' CLAIMS AS TO M-I

As to M-I, the following allegations, among others, have been made by the Plaintiffs/Claimants:

1.     M-I owed and breached duties of ordinary and reasonable care in connection with the drilling operations owed and breached duties to the Claimants to guard against and/or prevent the risk of an oil spill; and

2.     MI failed to provide, control and monitor the mud and spacer solutions in a reasonably safe manner.

In addition to the above, the allegations, contentions and causes of action which have been asserted against M-I by the various Plaintiffs/Claimants in the B1 Master Claim/Master Complaint, the First Amended B1 Master Claim/Master Complaint, or other Complaints, filed as a result of the Incident of April 20, 2010 and/or the BP Oil Spill are incorporated herein for more particular reference, as if set forth herein.

## XLVIII.

## THE PLAINTIFFS'/CLAIMANTS' CLAIMS AS TO DRIL-QUIP

As to Dril-Quip, the following allegations, among others, have been made by the Plaintiffs/Claimants:

1.    Dril-Quip participated in drilling operations related to the Macondo Well and failed to exercise reasonable care while participating in these drilling operations;

2.    Dril-Quip failed to exercise reasonable care to ensure that adequate safeguards, protocols, procedures and resources were available to prevent and/or mitigate the effects of an oil spill; and

3.    Dril-Quip provided wellhead systems for the Macondo Well which suffered the blow-out which subsequently led to the BP Oil Spill which failed to operate, were improperly designed, or possessed product defects.

In addition to the above, the allegations, contentions and causes of action which have been asserted against Dril-Quip by the various Plaintiffs/Claimants in the B1 Master Claim/Master Complaint, the First Amended B1 Master Claim/Master Complaint, or other Complaints, filed as a result of the Incident of April 20, 2010 and/or the BP Oil Spill are incorporated herein for more particular reference, as if set forth herein.

## XLIX.

## THE PLAINTIFFS' CLAIMS AS TO THE DISPERSANT DEFENDANTS

As to the Dispersant Defendants, the following allegations, among others, have been made by the Plaintiffs:

1.    The Dispersant Defendants failed to exercise reasonable care in the operation, maintenance, handling, design, implementation, and execution of the relief and recovery efforts;

2.    The Dispersant Defendants failed to warn the Plaintiffs of the harmful effects of crude oil, chemical dispersants, and hazardous substances to be encountered in

connection with the relief efforts;

3.      The Dispersant Defendants failed to train the Plaintiffs regarding the harmful
        effects of crude oil, chemical dispersants, and hazardous substances encountered
        in connection with the relief efforts;

4.      The Dispersant Defendants failed to equip the Plaintiffs for the harmful effects of
        crude oil, chemical dispersants, and hazardous substances to be encountered in
        connection with the relief efforts;

5.      The Dispersant Defendants failed to coordinate and conduct aerial spraying
        sorties in a  manner so as to eliminate the risk to vessels and crewmembers being
        exposed to aerial chemical dispersants;

6.      The Dispersant Defendants failed to abide by the provisions of the National
        Contingency Plan relating to the use of aerial chemical dispersants in the
        proximity of vessels and in shallow waters;

5.      The Dispersant Defendants violated various statutory and/or regulatory standards
        set forth in the Clean Water Act and the Oil Pollution Act; and

6.      The Dispersant Defendants intentionally sprayed and/or directed spraying
        chemical dispersants in the immediate vicinity of the Plaintiffs.

In addition to the above, the allegations, contentions and causes of action which have
been asserted against the Dispersant Defendants by the various Plaintiffs in the B3 Master
Complaint, or other Complaints, filed as a result of the Incident of April 20, 2010 and/or the BP
Oil Spill are incorporated herein for more particular reference, as if set forth herein.

**L.**

**THE PLAINTIFFS' CLAIMS AS TO THE NALCO DEFENDANTS**

As to the Nalco Defendants, the following allegations, among others, have been made by
the B3 Plaintiffs:

1.      Nalco knew or should have known that its Corexit dispersant was unreasonably
        dangerous to Plaintiffs;

2.    The Corexit dispersant was improperly designed and contained defects in that the Corexit was toxic to humans and could cause physical injury, health hazards, and damage to property; and

3.    The Corexit was defectively inspected, tested, marketed and sold.

In addition to the above, the allegations, contentions and causes of action which have been asserted against Nalco by the various Plaintiffs in the B3 Master Complaint filed as a result of the Incident of April 20, 2010 and/or the BP Oil Spill are incorporated herein for more particular reference, as if set forth herein.

## LI.

### THE PLAINTIFFS'/CLAIMANTS' CLAIMS AS TO THE UNITED STATES OF AMERICA

As to the United States of America, the Plaintiffs/Claimants are entitled to a Declaration regarding the relative fault of the United States of America.  By filing this Rule 14(c) Third-Party Complaint, the Third-Party Plaintiffs do not seek a recovery of money damages against the United States of America.  As the Court has indicated that all fault determinations will be made in the trial of this matter during the Spring, 2012, this Court announced timetable has necessitated this pleading, and it should not be interpreted as Third-Party Plaintiffs' failure to acknowledge the discretionary function and sovereign immunity rights of the United States.

In addition to the above recited allegations as to the United States of America, and to the extent necessary to preserve Third-Party Plaintiffs' rights, the Third-Party Plaintiffs have served notice of their affirmative defense in *United States of America v. BP Exploration & Production Inc., et al.*, 2:10-cv-04536 (E.D. La. 2010) (filed December 15, 2010), that the Incident of April 20, 2010 and the BP Oil Spill and any resulting damages therefrom may have been caused in part by the comparative fault and/or negligence of the United States of America.  As such, the Third-

Party Plaintiffs are entitled to a credit, set-off and/or recoupment with respect to any monetary claim of the United States of America against the Third-Party Plaintiffs to the extent that the Third-Party Plaintiffs are held liable to any person or entity, either in that action, or in any other action, arising from the Incident of April 20, 2010 or the BP Oil Spill, for any amounts attributable to the comparable fault and/or negligence of the United States of America.  The Third-Party Plaintiffs seek only to reserve any right to apportionment of fault in any appropriate procedure, and to obtain contribution through a credit, set-off, and recoupment based on such apportionment.  And, to the extent a formal claim rather than affirmative defense in the above referenced pleadings is necessary to preserve such right to obtain contribution through a credit, set-off and/or recoupment, the Third-Party Plaintiffs reserve their rights to file an affirmative claim against the United States of America pursuant to the reservation of rights set forth in Paragraph LII, *infra*.

## LII.

### RESERVATION OF THIRD-PARTY PLAINTIFFS' RIGHTS TO FILE RESPONSIVE PLEADINGS INCLUDING AFFIRMATIVE CLAIMS, CROSS-CLAIMS AND/OR COUNTER-CLAIMS

The Third-Party Plaintiffs reserve their rights under the Federal Rules of Civil Procedure and Pre-Trial Order No. 11 [Case Management Order No. 1] to file responsive pleadings, including Rule 12(b) Motions to Dismiss, Answers and Cross-Claims, to any Cross-Claims and/or Counter-Claims made by any Third-Party Defendant against the Third-Party Plaintiffs as a result of the filing of this Rule 14(c) Complaint.  Under Pre-Trial Order No. 11 [Case Management Order No. 1], the Third-Party Defendants will file any Answer or other responsive

pleading, including cross-claims, to any cross-claims or third-party complaints by the Rule 14(c) Third-Party Defendants in the Limitation on or before April 20, 2011.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Triton Asset Leasing GmbH, Transocean Holdings LLC, Transocean Offshore Deepwater Drilling Inc., and Transocean Deepwater Inc., Petitioners, Third-Party Plaintiffs herein, file this their Rule 14(c) Complaint against BP America Production Company, BP Exploration & Production Inc., BP p.l.c., Halliburton Energy Services, Inc., M-I, LLC, Cameron International Corporation f/k/a Cooper Cameron Corporation, Anadarko Petroleum Corporation, Anadarko E&P Company, LP, MOEX Offshore 2007 LLC, MOEX USA Corporation, Mitsui Oil Exploration Company, Ltd. (a/k/a MOECO), Weatherford International, Inc., Weatherford U.S.L.P., Dril-Quip, Inc., Marine Spill Response Corporation, Airborne Support, Inc., Airborne Support International, Inc., Lynden, Inc., Dynamic Aviation Group, Inc., International Air Response, Inc., Lane Aviation, National Response Corporation, O'Brien Response Management, Inc., Tiger Safety, LLC, DRC Emergency Services LLC, Nalco Company, and the United States of America, and pray for the following:

1. That process in due form of law, according to the practice of this Court in causes of admiralty and maritime jurisdiction pursuant to the provisions of Rules 4, 9(h) and 14(c) of the Federal Rules of Civil Procedure, issue against Third-Party Defendants, requiring them to appear and answer all Claims in Limitation;

2. That all Plaintiffs/Claimants filing Claims in Limitation assert their Claims directly against the Third-Party Defendants, in addition to the Third-Party Plaintiffs; and

3. That Third-Party Plaintiffs have such other and further relief available under applicable federal law and any relief the Court deems just and appropriate.

Respectfully submitted,


By:    /s/ Steven L. Roberts
       Steven L. Roberts (Texas, No. 17019300)
       Rachel Giesber Clingman (Texas, No. 00784125)
       Kent C. Sullivan (Texas, No. 19487300)
       Teri L. Donaldson (Florida, No. 784310)
       Sutherland Asbill & Brennan LLP
       1001 Fannin Street, Suite 3700
       Houston, Texas 77002
       Telephone: (713) 470-6100
       Facsimile: (713) 654-1301
       Email: steven.roberts@sutherland.com,
       rachel.clingman@sutherland.com,
       kent.sullivan@sutherland.com,
       teri.donaldson@sutherland.com

By:    /s/ Kerry J. Miller
       Kerry J. Miller (Louisiana, No. 24562)
       Frilot, L.L.C.
       1100 Poydras Street, Suite 3700
       New Orleans, Louisiana 70163
       Telephone: (504) 599-8169
       Facsimile: (504) 599-8154
       Email: kmiller@frilot.com

       -and-

       Edwin G. Preis, Jr. (Louisiana, No. 10703)
       Edward F. Kohnke, IV (Louisiana, No. 07824)
       Preis & Roy PLC
       102 Versailles Boulevard, Suite 400
       Lafayette, Louisiana 70501
       Telephone: (337) 237-6062
       Facsimile: (337) 237-9129
       -and-
       601 Poydras Street, Suite 1700
       New Orleans, Louisiana 70130
       Telephone: (504) 581-6062
       Facsimile: (504) 522-9129
       Email: egp@preisroy.com, efk@preisroy.com

       -and-

       /s/ Brad D. Brian
       Brad D. Brian (California, No. 79001)
       Allen M. Katz (California, No. 054933)
       Munger Tolles & Olson LLP
       355 South Grand Avenue, 35th Floor
       Los Angeles, California 90071
       Telephone: (213) 683-9100
       Facsimile: (213) 683-5180, (213) 683-4018
       Email:brad.brian@mto.com, allen.katz@mto.com

Of Counsel:

John M. Elsley (Texas, No. 0591950)
Royston, Rayzor, Vickery & Williams LLP
711 Louisiana Street, Suite 500
Houston, Texas 77002
Telephone: (713) 224-8380
Facsimile: (713) 225-9945
Email: john.elsley@roystonlaw.com

Daniel O. Goforth (Texas, No. 08064000)
Goforth Geren Easterling LLP
4900 Woodway, Suite 750
Houston, Texas 77056
Telephone: (713) 650-0022
Facsimile: (713) 650-1669
Email: dangoforth@goforthlaw.com

*Counsel for Triton Asset Leasing GmbH, Transocean Holdings LLC, Transocean Offshore Deepwater Drilling Inc. and Transocean Deepwater Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been electronically filed through the Court's CM/ECF system and/or LexisNexis File & Serve, in accordance with Pretrial Order No. 12, which will send a notice of electronic filing to all counsel of record on this 18th day of February, 2011.

/s/ Kerry J. Miller