**UNITED STATE DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | | |
|---|---|---|---|
| In Re: | **Oil Spill by the Oil Rig** | : | **MDL NO.  2179** |
| | **"Deepwater Horizon" in the** | : | |
| | **Gulf of Mexico, on** | : | **SECTION:  J** |
| | **April 20, 2010** | : | |
| | | : | **JUDGE BARBIER** |
| **This Document Relates to All Cases** | | : | **MAG. JUDGE SHUSHAN** |

. .  . .  . .   . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  .

**MOTION FOR ENTRY OF**
**ORDER RELATING TO THE UNITED STATES' PRESERVATION OF SAMPLES**

The United States currently possesses tens of thousands of out of date samples that were taken in the months following the events that began on April 20, 2010 at the *Deepwater Horizon*. The United States has taken reasonable steps to preserve these samples in accordance with its obligation to preserve potentially relevant information relating to the claims and defenses asserted in this MDL.  Because these samples have now expired, their continued preservation is of limited (if any) value to the parties.  Their preservation, however, is very expensive.

Because the burden of preserving these samples is unreasonable in light of their limited evidentiary value, and because all parties will have access to sufficient information to challenge the results of any analyses performed on these samples, the United States respectfully requests entry of the proposed order attached as Exhibit 1.  The proposed order authorizes the disposition of certain samples immediately and establishes a procedure for disposition of any other samples that have or will expire in the future.

**I.      Consultation with Liaison Counsel**

The United States has conferred with Liaison Counsel and counsel for the States of Alabama and Louisiana.  The Plaintiffs Liaison Counsel advise they do not object to entry of the order.  *See* Barr, Email to Himmelhoch (Feb. 18, 2011) (Ex. 2).  The BP companies have advised

that they do not object to the application of the order to the United States, though they contend a

similar order should apply to BP. *See* Haycraft, Email to Various Counsel (Feb. 16, 2011) (Ex.

3).  Counsel for the Anadarko and MOEX companies initially objected to the order, but have

stated they do not object to the order as currently proposed.  *See, e.g.,* Hedgpeth, Email to

Himmelhoch (Feb. 14, 2011) (Ex. 4). Despite having been given numerous opportunities, no

other party has notified the United States of an objection to the proposed order.  *See, e.g.,*

Himmelhoch, Email to Various Counsel (Jan. 5, 2011) (Ex. 5); Himmelhoch, Email to Various

Counsel (Feb. 3, 2011) (Ex. 6); Himmelhoch, Email to Various Counsel (Feb. 17, 2011) (Ex. 7).

## II.     Factual Background

### A.  Holdings Times Defined

Federal agencies have long recognized that some samples, even when properly stored,

will not retain their characteristics indefinitely.  For these reasons, most federal agencies that

engage in scientific sampling have established regulations or policies governing the "maximum

holding time" or retention period for samples.  The holding time is defined as the "storage time

allowed between field collection of a sample and completion of analysis in a laboratory."  *See*

Decl. N. Jones § 13 (Dec. 15, 2010) (Ex. 8).  Holding times are set to provide quality assurance

for sample analysis to "assure that contaminant concentrations do not change significantly

between sampling and extraction because of intrinsic biogeochemical reactions . . . ."  *Id*.

Federal regulations, including EPA's regulations, set a maximum holding time to represent the

"maximum times that samples may be held before the start of analysis and still be considered

valid."  *See* 40 C.F.R. § 136.3 Table II note 4.  Analysis of the samples after the holding time has

elapsed will generally be inaccurate. *See* Decl. N. Jones § 13 (Dec. 15, 2010) (Ex. 8).

The holding time for any particular sample is established based on the analyses

contemplated for the sample, since maximum holding times are based on the propensity of the constituents to degrade or volatilize. *Id.* Therefore, samples collected for analysis of VOCs have a maximum holding time of 14 days, while samples collected for analysis of the metals content (excluding mercury) have a maximum holding time of 180 days. *Id.* ¶ 14.[1]

### B. Samples Collected by the United States

As part of the response action and its ongoing investigation into the causes and effects of the events at the *Deepwater Horizon*, the United States has collected thousands of samples of all sorts, including over 15,700 water samples collected by the National Oceanic and Atmospheric Administration (NOAA) between April 28, 2010 and November 20, 2010, over 4000 water, sediment and air samples collected by the Environmental Protection Agency's (EPA) Region 6, and numerous additional samples collected by other agencies, including the U.S. Geological Survey and EPA's Region 4. Thousands of these samples have already passed their maximum holding time. *See* Decl. of N. Jones ¶ 4 and attachment (Feb. 15, 2011) (Ex. 09); Decl. of G. Baker ¶ 8 and attachment (Feb. 1, 2011) (Ex. 10); Decl. of D. Myers ¶¶ 5, 8 and attachment (Feb. 15, 2011) (Ex. 11).

The United States has striven to preserve these samples to the best of its ability. Though some samples were initially discarded by contract laboratories when the maximum holding time was reached and a few samples have been lost since that time, the United States has endeavored to preserve all the samples under the proper storage conditions. *See, e.g.,* Decl. N. Jones ¶¶ 8-9

---

[1] It is also important to note that varying amounts of the samples collected by the United States have been consumed in the analysis and testing conducted on the samples. In some cases, there is insufficient remaining sample to perform further analyses. The preservation of these tiny sample amounts is, therefore, even more burdensome in light of their lack of evidentiary value.

(Dec. 15, 2010) (Ex. 8); Himmelhoch, Email to Various Counsel (Jan. 27, 2011) (Ex. 12);

Himmelhoch, Email to Various Counsel (Feb. 17, 2011) (Ex. 7).[2]

The storage of these samples is costly for the United States.  NOAA estimates that the

preservation of 15,708 expired samples costs over $40,000 per month.  *See* Decl. of G. Baker

¶¶ 8,11 (Feb. 1, 2011) (Ex. 10).  The U.S. Geological Survey has quite literally run out of space

in its refrigerators to store samples and therefore must either purchase a new refrigeration unit,

cease taking samples, or discard samples that have expired.  *See* Decl. of D. Myers ¶ 6 (Feb. 14,

2011) (Ex. 12).  EPA Region 6 estimates that the cost of preserving its expired samples costs

$6,500 per month.  Decl. of N. Jones ¶ 17 (Dec. 15, 2010) (Ex. 8).

### C. Description of Proposed Order

The proposed order, attached as Exhibit 1, is a simple two-pronged order.  First, the order

permits the United States to dispose of specific samples identified in the attachment to the order.

All of these samples are water, air, or waste samples in the custody of EPA's Region 6.  The

United States is obliged, however, to preserve all Information (as defined in Pretrial Order 22)

relating to the listed samples, including the sample results, field notes, and the quality assurance-

quality control records.[3]

The proposed order also provides a process for resolving the disposition of the remaining

samples while minimizing the demands on the Courts attention.  Specifically, the order provides

that the United States must give written notice of its intent to dispose of samples and provide

specific information regarding the samples.  Liaison Counsel and counsel for each State that is a

---

[2] The United States is actively engaged in numerous scientific studies related to the effects of the events of April 20, 2010.  It is possible that additional samples have been or will be lost inadvertently.  The United States will continue to monitor the preservation of the samples to the best of its ability and advise Liaison Counsel and counsel for the States of any additional sample losses as soon as practical and take appropriate remedial measures to avoid similar losses in the future.

[3] This Order will not, of course, alter the provisions of PTO 22 and the United States will not be required to preserve information that is exempt from preservation under PTO 22 (such as transient data on laboratory equipment).

party to this MDL have twenty days to object to the disposal or to request custody of the samples.  The United States and the requesting party must then meet and confer.  If the negotiating parties are unable to reach agreement, the United States must then move the Court for an order governing the disposition of the samples.  The United States must preserve the samples until the negotiations are complete or the Court has issued an order.

### III.    Argument

The proposed order is consistent with the Federal Rules of Civil Procedure and provides for the preservation of useful evidence while obviating the need for the wasteful preservation of samples that are not eligible for further admissible analyses.  The obligation to preserve evidence exists to ensure that parties have equal access to the evidence and to assure that a party is not deprived of the opportunity to fairly challenge the evidence offered against it.  *Cf. United Medical Supply Co., Inc. v. United States*, 77 Fed. Cl. 257, 258 (Fed. Cl. 2007).  Where the evidence can no longer be examined in any meaningful way because it has altered through no fault of any party, continued preservation of that evidence no longer serves the purposes of the preservation obligation.

In this case, with respect to the out of date samples, all parties will have full opportunity to challenge the admission of the samples, and the reliability of the results of analysis on those samples by examining the quality assurance and quality control of the laboratory to determine whether the standard testing and preservation methodologies were used and properly documented.  Loss of a sample that no longer shares the same physical characteristics it had when analyzed will not deter that examination.

Moreover, each of the parties has been offered an opportunity to take possession of the samples that would be destroyed upon entry of the order.  *See, e.g.,* Himmelhoch, Email to

Various Counsel (Feb. 3, 2011) (Ex. 7).  The proposed order also provides that all future disposal

of samples would occur only after the parties have been given a similar opportunity to take

possession of the samples.  *Cf. Ellicott Mach. Corp. Int'l v. Jesco Constr. Corp.*, 199 F. Supp. 2d

290, 295 n.5 (D. Md. 2002).

Further, the cost of preserving this evidence is very high.  NOAA alone is expending

more than $40,000 per month to preserve the out of date samples.  The U.S. Geological Survey is

facing the possibility of either suspending sample collection or purchasing a refrigerator that is

not within the agency's budget.  Where the evidentiary value of the samples is minimal at best,

these kinds of unbudgeted expenses are an inappropriate burden on the tax payers.

Finally, the proposed order reduces the burdens upon the Court.  While the parties have

been unable to agree upon a set rule allowing disposition of all samples, the proposed order

would substantially reduce the number of disputes that the Court must resolve.  The United

States expects that with further discussion and exchange of information it can substantially

reduce the number of samples over which the parties cannot agree.  This process will ensure that

only genuine disputes rise to the Court's attention and only after the issues have been fully

developed.

## IV.    Conclusion

No party opposes the terms of the order as they apply to the United States, though some

parties seek similar relief for themselves.  The order provides a sensible solution to the handling

of samples of limited (if any) evidentiary value while minimizing the demands upon the Court's

attention.  For these reasons, as set forth above, the United States respectfully requests the entry

of the attached proposed Order Relating to the United States' Preservation of Samples.

Respectfully submitted,

IGNACIA S. MORENO
Assistant Attorney General
Environment & Natural Resources
   Division

JAMES NICOLL
  Senior Counsel
NANCY FLICKINGER
  Senior Attorney
SARAH HIMMELHOCH
  Senior Attorney
DEANNA CHANG
  Trial Attorney

SCOTT CERNICH
  Trial Attorney
A. NATHANIEL CHAKERES
  Trial Attorney
JUDY HARVEY
  Trial Attorney
MATT LEOPOLD
  Trial Attorney

TONY WEST
Assistant Attorney General
Civil Division

PETER F. FROST
Director, Torts Branch, Civil Division
Admiralty and Aviation
STEPHEN G. FLYNN
Assistant Director
MICHELLE DELEMARRE
Trial Attorney

SHARON SHUTLER
Trial Attorney
JESSICA SULLIVAN
Trial Attorney
JESSICA MCCLELLAN
Trial Attorney
DAVID PFEFFER
Trial Attorney
MALINDA LAWRENCE
Trial Attorney
Torts Branch, Civil Division
P.O. Box 14271
Washington, D.C. 20044-4271
Telephone: 202-616-4000
Facsimile: 202-616-4002

/s/ Steven O'Rourke
STEVEN O'ROURKE
Senior Attorney
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
Telephone: 202-514-2779
Facsimile: 202-514-2583
E-mail: steve.o'rourke@usdoj.gov

/s/ R. Michael Underhill
R. MICHAEL UNDERHILL, T.A.
Attorney in Charge, West Coast Office
Torts Branch, Civil Division
U.S. Department of Justice
7-5395 Federal Bldg., Box 36028
450 Golden Gate Avenue
San Francisco, CA 94102-3463
Telephone: 415-436-6648
Facsimile: 415-436-6632
E-mail: mike.underhill@usdoj.gov

JIM LETTEN
United States Attorney
SHARON D. SMITH
Assistant United States Attorney
Eastern District of Louisiana
Hale Boggs Federal Building
500 Poydras Street, Ste. B-210
New Orleans, LA 70130

Attorneys for the UNITED STATES OF AMERICA

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 18th day of February, 2011.

/s/ Sarah D. Himmelhoch