# Exhibit B

## Mayor Craft's Feb. 9, 2011 Response to AG Luther Strange

COMMENTS FROM MAYOR ROBERT CRAFT

TO THE FEBRUARY 2, 2011

GULF COAST CLAIMS FACILITY ANNOUNCEMENT

This is to comment on the proposal of the GCCF regarding corrections to the 2010 claim paying process as well as the future payment of claims.

(1) In the draft circulated for review of future GCCF distributed on February 2, 2011, the "documented" losses for 2010 are explained to be:

>   *"Once claimants have demonstrated a direct connection linking the sustained losses for past and present damages to the OIL SPILL, eligible claimants will be compensated for documented losses directly caused by the Oil Spill incurred during the period immediately following the Oil Spill on April 20, 2010 and the date of filing of an Interim or Final Claim with the GCCF ("the loss period")"*

BP is the final decision maker on determining "direct connection linking the sustained losses…." This has been a major issue from day one of claim paying. Certain businesses and professions, if not entire industries, have been denied despite proving that in 2010 losses were greater than income in 2008 and/or 2009, which are the base years the program has chosen to use as a basis for losses in 2010. These two statements are inconsistent. If losses can be proven with no other identifiable reason other than the OIL SPILL, the claim will still be denied because of BP interpreting the lack of proving a "direct linkage". How, exactly, can one demonstrate a direct cause and effect if that is challenged by BP? Given the perfect circumstances of 2010, great weather, no storms, improving national economy, advance reservations of families anxious to return to our beaches, every indication was that a record year was finally here and all of our local businesses would benefit. The ONLY factor changing this result was the oil spill.

(2) Regarding the future of paying business loss claims GCCF has based their program on an assumption that there is a satisfactory resolution of business losses in 2010.  To date there has been no transparency or reasonable explanation for why most businesses which have been paid for losses in 2010 have only been paid some percentage of the loss claim.  Few have been paid 100% of their claimed losses.  Therefore, using an assumed satisfactory resolution for 2010 on which to base future claims is not fair compensation and simply compounds the problem.

Until there is satisfactory and transparent justification for the payment of loss claims in 2010, there can be no base year on which future percentage payments can be honestly evaluated.  For example. if a business was paid 45% of their actual and proven loss claim in 2010, doubling over two years, according to the GCCF formula, only gets to 90% of one year's loss, not full payment for all three years in question.   The mathematics does not work unless the base year, April 20, 2010 to December 31, 2010 is fairly paid by BP to all affected entities.  There is no evidence this has been the case.

(3) Another assumption used in formulating a "fair" plan is that even in dynamic beach communities subjected to major economic impacts such as rapid condominium expanse due to favorable markets or storms occurring during the height of the season or the aftermath of storms affecting a season, a steady pattern of income occurs year after year in annual succession.  While that may be true of many similarly sized inland cities, it is not true of economically dynamic coastal communities.  Therefore, guessing that a given years income is going to be an average of the two previous years is faulty.

(4) The lodging industry is unique and not comparable to overall community economic behavior.  Two major issues affect lodging, one is the percentage of occupancy and the other is rate. There is an inverse relationship between the two.  If occupancy is poor, heavy discounts are necessary.  For example, in 2009, discounts were very heavy, and overall lodging tax receipts were low despite higher occupancy.  In the first four months of 2010, prior to the effects of the spill, we were able to achieve significantly higher occupancy without discounts, which is evidenced by lodging taxes being more than twenty percent greater than 2009. The sales tax

growth of all of our tourism support businesses due the increased occupancy during this time is additional evidence that more people were visiting our beaches.

(5) Currently the oyster industry is given a longer recovery period than are other industries. Like the oyster industry, each industry, lodging, retail, food service, amusement, fishing, has unique qualities that make them different from one another. The "one size fits all" approach that two years somehow fits across the board to all but the oyster industry is totally unsupported. The recovery period aspects of the GCCF position needs more thorough analysis.

(6) The base period allowed in the draft (April 20 to December 31, 2010), is about eight months long, yet these eight months of income is asked to be the basis for computing twelve months of income over each of the next two years. How can an eight month income period be accurately compared to a twelve month period?

(7) In the GCCF draft document eligibility issues are equally disturbing.

   *"All individuals and businesses that incurred losses due to the oil spill are encouraged to file."*

The burden of proof is on individuals and businesses and the final decision is solely determined by GCCF and BP lawyers and accountants, none of whom are local and understand the inter-relationship of our business culture. They have consistently denied local businesses that clearly only exist here because of our only industries, tourism and seafood.

In summary, unless GCCF and BP modify their evaluation strategy of claims and eligibility, nothing is improved. With 2010 EAP being the key component to the interim and final program, it is imperative that this evaluation be fair and accurate. Recovery time will be relative to each specific business and must be evaluated separately. Proximity to the beach and dependence on tourism, as well as, a thorough understanding of our integrated business community should be used to define a fair and broadened local eligibility standard.

Much simpler and fairer methods are available to the GCCF should they choose to adopt them. We stand ready to assist and provide accurate examples, if and when requested.

Robert Craft, Mayor
Gulf Shores, Alabama