# Exhibit D

## Feb 16, 2011 Letter from Mayors Stan Wright and Jeff Collier to Ken Feinberg

TO: Mr. Ken Feinberg and the Gulf Coast Claims Facility

FROM: Mayor Stan Wright, Bayou La Batre
Mayor Jeff Collier, Dauphin Island

RE: Response to posted methodologies concerning the claims process

DATE: February 16, 2011

On behalf of the people of South Mobile County, and for all those whose livelihoods and ways of life were adversely affected by the disaster which claimed 11 lives and effectively shut down the economies of the entire Gulf Coast region, we would like to encourage BP, through the Gulf Coast Claims Facility (GCCF), to continue working to improve the claims process and move closer to fulfilling its promise to once again make our region whole. Numerous things must happen in order for our communities to fully recover and overhauling the claims process is a vital piece of the equation. The newly announced methodologies are a positive step forward but should be improved before being made permanent.

Before delving too far into the specific issue at hand, it is important to note that due to the nature of the economies in South Mobile County, as well as in other areas along the Gulf Coast, most of our industries are interconnected and heavily dependent upon one another. This fact appears to have been neglected by BP and Mr. Feinberg during the Emergency Advance Payment process, as numerous industries, such as religious institutions, doctors' offices, veterinarian clinics, daycares, to name a few, have been systematically and arbitrarily listed as ineligible to receive just compensation for lost revenues. This approach is wrong and should be corrected going forward. The oil spill had widespread negative affects on nearly every industry in South Mobile County, and each should be given just consideration by BP, through the GCCF.

It is also important that to note several other areas of concern as it relates to the effectiveness of the Emergency Advance Payment process.

First, despite what the public has been told by the GCCF - that the claims process has had some hiccups, but that for the most part it has been effective at distributing approximately $3.5 billion to those in need – the reality on the ground does not appear so rosy. According to the GCCF's Overall Status Report as of February 12, 2011 Alabamians have received $560,097,338.94, or 16.4% of the total amount distributed between the affected states (Facility, 2011). Meanwhile, a recent study by the University of Alabama predicts that the oil spill will have cost the Alabama economy between $1 billion and $3.3 billion in 2010 alone (Amy, 2010).

Additionally, the same report indicates that Gulf-wide roughly two thirds of all

individuals who sought relief during the Emergency Advance Payment process were denied. When evaluating business claimants, approx 44% of prospective business claims were denied. Overall, a startling 65.51% of all claimants have been denied or are wating for BP, through the GCCF, to process their respective claim (Facility, 2011). In most situations, notification of denied claims have been delivered with no justification or explanation as to why the claims were denied, nor how the decisions were made.

For the fortunate claimants who received compensation, clear guidelines were not in place to guarantee that the amount paid equaled the amount owed. To be certain, according to the very same report, the GCCF's own numbers indicate that for a six month claim the average amount given to individuals and businesses equaled $8,574 and $33,727, respectively. On a monthly average, this means that individuals received a mere $1,429 per month, while businesses were awarded $5,621 per month (Facility, 2011).

With the aforementioned concerns in mind, the new methodologies for determining future Quick, Interim and Final payments appear to be a positive and constructive step forward. However, the following points should be considered.

**First, transparency is key.**

Moving forward, the claims methodologies for all payment options should be published and made available to the public. Furthermore, considering the degree to which the new methodologies will impact the lives of thousands throughout the Gulf Coast region and beyond, the names of the "scientific and economic experts" retained by BP, through the GCCF, and their respective affiliations, if any, with BP and other responsible parties for the oil spill, should be published and made available along with the methodologies.

**Second, lingering issues must be addressed.**

As previously stated, just resolutions should be sought to many of the outstanding questions raised about the Emergency Advance Payment process. Given the flawed nature of how claims were awarded in the past, this is especially important when considering that according to the new methodologies, future Quick Payment options will only be available to those who received payment under the Emergency Advance Payment period. Furthermore, the Quick Payment option is to be awarded based on a percentage of the past amounts received, rather than the actual damages owed.

Additional consideration on this point is deserved when one calls into question the methodology by which Interim Payments will be addressed. If past problems, which plagued the Emergency Advance Payment methodology are not addressed, what assurances do claimants have that the Interim Payment methodology will not be equally as flawed?

**Third, BP, through the GCCF, should continue implementing a more hands on approach to reviewing future claims.**

To the GCCF's credit, significant improvements have been made in this field. However, many reports indicate that BP's retained experts have not been able to adequately address the real life situations and needs encountered on a daily basis in South Mobile County. For example, during a recent meeting held in Bayou La Batre with attorneys from Mr. Feinberg's Washington, DC office, members of the GCCF field office and representatives from the Bayou La Batre commercial fishing industry, the statement was made that the experts retained by the GCCF – the same individuals responsible for influencing the methodologies for the ongoing claims process – have had difficulties establishing a method to fairly evaluate the various business models and respective claims of the seafood and related industries, and that this is why so many seemingly obvious and simple claims have been denied.

This is inexcusable. The seafood industry, in ways unlike any other, has been directly and adversely affected by the oil spill. These losses are tangible and can be well documented.

Following this constructive exchange, Jim Walker, the GCCF's lead contact in Alabama, stated that a "SWAT Team" of Mr. Feinberg's key decision makers would visit South Mobile County during the first week of March to evaluate the GCCF's processes and determine why there have been so many problems addressing the needs of such an important industry. Again, to the GCCF's credit, this is a sign of improvement. The industry is hopeful for this opportunity and as has been stated from day one, will warmly welcome anyone who is serious about working to address their needs.

**Fourth, the expected time of recovery should be re-evaluated.**

Although certain *experts* (emphasis added) predict that a full economic recovery is likely (but not certain) within two to three years from the date of the oil spill, numerous individuals and business owners have publicly stated disagreement with this assessment. These disagreements are based on a number of merits, such as the following:

   1) Although the Gulf Coast region is unique and resilient, there are many unknown factors at work in this post spill environment that can and will shape the short and long term economic, environmental and social recovery time frame.

   2) In addition to the physical impacts of the spill, public perception and the gulf "brand" has also been damaged for some time to come. This will have a lasting effect on tourism and the gulf seafood industry as a whole.

> 3) Given the interdependent nature of the economies throughout South Mobile County and along the Gulf Coast, when one industry lags behind in the recovery process, others do as well. Subsequently, as industries are banned from participation in the ongoing claims process, either arbitrarily, or due to an unresolved problem relating to the Emergency Advance Payment process, the region's overall growth and recovery is again slowed.

**Fifth, future methodologies should include interest.**

Questions have been raised by numerous individuals concerning the fact that past and present methodologies do not take into consideration interest that accrues while victims wait patiently for their respective claims to be processed – a process that often takes up to six months.

According to Attorney General Hood of Mississippi, this is in clear violation of the OPA, which states *the responsible party (BP) is also liable to a claimant for interest on the amount paid in satisfaction of a claim.* In other words, if it takes six months to process and pay a claim, the responsible party (BP) is supposed to also pay interest on "the amount paid" in order to satisfy said claim (Hood, 2011).

In real terms, many businesses operate on a certain amount of credit, and with credit comes interest. Similarly, the longer the $20 billion recovery fund sits in a bank, or investment account, the more interest it will generate. Under these same guidelines, interest should be factored into the claims methodology. Barring this action BP, through the GCCF, will have little incentive to expedite paying future Interim claims. In short, a six month waiting period is unacceptable!

**Sixth, there are serious questions surrounding the Final Payment methodology.**

On December 16, 2010, the Attorneys General from Alabama, Mississippi, Louisiana and Florida issued a joint letter expressing their concern that claimants choosing to accept a final or quick payment are being required to sign an extensive release that would "bar them from any future recovery for damages caused by the Deepwater Horizon Oil Spill." (General, 2010)

Mississippi's Attorney General, Jim Hood, has taken this concern a step further and released information stating that by implementing this policy BP, through the GCCF, is acting in violation of the Oil Protection Act of 1990 (OPA).

The relevant portions of OPA read as follows:

> § 2715. Subrogation
> (a) In general

> Any person, including the Fund, who pays compensation pursuant to this Act to any claimant for removal costs or damages shall be subrogated to all rights, claims, and causes of action that the claimant has under any other law.
> (b) Interim damages
> (1) In general
> If a responsible party, a guarantor, or the Fund has made payment to a claimant for interim, short-term damages representing less than the full amount of damages to which the claimant ultimately may be entitled, subrogation under subsection (a) of this section shall apply only with respect to the portion of the claim reflected in the paid interim claim.
> (2) Final damages
> *Payment of such a claim shall not foreclose a claimant's right to recovery of all damages to which the claimant otherwise is entitled under this Act or under any other law* (emphasis added) (Hood, 2011).

Due to the speculative nature of estimating a final claim value and the breadth of the GCCF release, the Attorneys General from Alabama, Mississippi, Louisiana and Florida strongly recommended that all claimants thoroughly review their particular circumstances and or consult legal advice before accepting a Final or Quick Payment and waiving any and all legal rights going forward.

In closing, it has been written, *"no man can serve two masters. For either he will hate the one and love the other, or he will be devoted to one and despise the other."*

Given the recent New Orleans court ruling by Judge Carl Barbier which found that Mr. Feinberg is not an independent mediator as has been claimed, but that he has numerous obligations to consult and provide information to BP while administering the company's $20 billion recovery fund, this verse appears to bear new merit. Nevertheless, we believe Mr. Feinberg and his people *can* do better, and we expect that they will.

We further believe the Federal Government has a significant role to play in the ongoing recovery and call on President Obama and the appropriate parties to expedite the process of assessing fines and distributing those funds throughout the gulf coast region in order to restore and rehabilitate the environment and local economies in a timely fashion. We expect a full recovery, and look forward to working with BP, through the GCCF, as well as state and federal agencies in order to implement an expedited, transparent and fair claims process.

Thank you for the opportunity to publicly voice our concerns. We hope the information shared will be taken into consideration as Mr. Feinberg and his team make the necessary changes to the drafted methodologies for future payments.