# Exhibit E

## Feb 15, 2011 Letter from Governor Robert Bentley to AG Luther Strange

OFFICE OF THE GOVERNOR

ROBERT BENTLEY
GOVERNOR



STATE CAPITOL
MONTGOMERY, ALABAMA 36130

(334) 242-7100
FAX: (334) 242-0937

# STATE OF ALABAMA

February 15, 2011

**HANDMAIL**
Attorney General Luther Strange
Office of the Attorney General
501 Dexter Avenue
Montgomery, AL 36130

Re: Gulf Coast Claims Facility

Dear General Strange:

You have requested our comments in light of Judge Carl Barbier's ruling on February 2, 2011, involving the Gulf Coast Claims Facility. I provide you with my thoughts on the following issues:

## I.
### The Effectiveness of the Payment Process

My concern is the effectiveness of the Facility in addressing the needs of Alabamians affected by the oil spill. Unfortunately, the information disclosed by the Facility has not been clear and complete. What I do see (February 5, 2011 report) is that less than half of the claimants who have made claims have been paid. What I do not see is any explanation as to why those who have not been paid have not been paid. And this is a problem that we have heard frequently.

While the report provides various statistics about the claimants that have been paid, we know nothing of the claims that have not been paid. We do not know how many claims have been rejected versus how many claimants have heard no response at all.

It is clear that the vast majority of claims that have been **paid** are small claims. Is this indicative of the claims **made**? We do not know. But, we have heard a great deal from those with relatively larger claims which have not been paid.

Without further information and more detailed disclosures what we know about the claims process is only what the Facility apparently wants us to know.

Page 2
February 15, 2011

And, from the information provided, we can see that the process is not addressing the majority of those claimants who have submitted claims. This is disappointing.

Part of the problem is that the determination as to who is eligible and who is not eligible for a claim payment has been inconsistent and vague. There are individuals and businesses who have clearly been damaged as a result of the oil spill who have not been paid for their damages. In that they have suffered for almost ten months now with no relief, the nature of their claim has changed dramatically. Those who could have been helped with an interim or emergency payment to simply get by are now in dire straits. People are losing their homes and losing their businesses. This next phase of interim and final payments appear to have even more restrictive eligibility requirements. Those who have received no payment have no reasonable hope or expectation that this next phase will be of any assistance to them.

Another part of the problem is that the documentation required of claimants is also unclear. Though individuals and businesses have submitted what they believed would justify their claim, they have simply been told that their documentation was insufficient, without any explanation of what about it was insufficient. They were left to speculate as to why their claim was denied.

And, another facet of the problem has been the causational link between the oil spill and the damages. What is clear from the information that we have obtained is that the causational link between the oil spill and someone's damages has been too narrowly construed and applied. There are claimants clearly damaged as a result of the oil spill who have not been paid. It appears that the Facility's definition of damages caused by the oil spill is far removed from that provided with the simple application of common sense.

II.
The Proposed Guidelines

Even more disappointing is the proposed protocol issued by the GCCF (Gulf Coast Claims Facility) on February 2, 2011. The proposed guidelines do not adequately address the concerns enumerated above.

This proposed protocol does not address the failure of the GCCF to give any explanation to the claimants or the public as to why claims have not been paid or only partially paid. The Facility should tell a claimant why their claim was denied and allow a claimant to supply whatever information was lacking so that their claim can be re-considered with all of the information the Facility might need.

Page 3
February 15, 2011

In addition, the protocol, consistent with the current process, fails to include any specific criteria or standards as to what constitutes a sufficient "link" between a claimant's financial loss and the oil spill. The Oil Pollution Act requires that a Responsible Party pay damages experienced "as a result of" the oil spill, as I understand it. Without knowledge of the criteria and standards by which the GCCF measures the sufficiency of such evidence, we have no way of knowing whether the GCCF claim evaluations are fair and consistent with governing law. Based on the amount of claims that have been paid, the equitable nature of the GCCF claim evaluations is in question. The problems experienced thus far with the Facility are not rectified by this proposed protocol. In fact, it appears that the problems experienced with eligibility and causation will only be exacerbated.

Clearly, for businesses and individuals living on the coast, or very near it, the burden of proof necessary to link their damages to the oil spill should be much less stringent, or in many cases presumed. However, the proposed protocol specifically describes the "documentation requirements for receiving either a Final Payment or an Interim Payment" as "more rigorous and exacting" than that which was required for an Emergency Advance Payment. The proposed protocol further states, "[t]he GCCF will not presume that a given loss was or was not caused by the Oil Spill, regardless of whether or not the claimant received an Emergency Advance Payment." This protocol fails to acknowledge the many claimants who have claims for damages that, by their very nature, were obviously caused by the oil spill. Claimants making these types of claims should not be forced to overcome some unspecified burden of proof regarding causation, much less one that could be described as "rigorous and exacting".

Another major problem with the proposed protocol is the method with which the GCCF will calculate a claimant's actual loss. The protocol states that "actual documented losses will be based on a comparison to income from prior years for the same months". While the protocol gives the example of 2008-2009 as a comparison period, it does not commit to any method of choosing a comparison period. The protocol does acknowledge that fair comparison periods will vary from claimant to claimant, but it simply states that an "appropriate historical comparison deemed most relevant to the claimant's experience" will be chosen by the GCCF. There is no specified method for making such a determination. The protocol goes on to state that for "a 'start up' company which anticipated generating income in 2010, a different methodology will be employed." However, that methodology is not given. Apparently, the claimant's will continue to be subject to the arbitrary determination of the GCCF as to their damages calculations. Without knowledge of the methods used to determine the comparison period for each claimant, the accuracy of a claimant's actual documented loss as determined by the GCCF is called into question.

Page 4
February 15, 2011

This problem is further compounded by the proposed method for calculating future losses. Under the proposed protocol, calculations of future losses will be equal to the amount of the claimant's actual loss as determined by the GCCF. Accordingly, the calculations for future losses will be even more arbitrary and inaccurate than the calculations for a claimant's actual loss. Further, the Facility has not provided any information as to how these recovery periods or recovery projections were derived. While acknowledging that certain industries will experience differing recovery periods (four years for oysters), the protocol arbitrarily locks everyone else into a two year recovery period. Clearly, different businesses and industries will experience different periods of recovery.

The manner in which the proposed protocol handles interim claims is another cause for concern. Because interim claims are based on losses already incurred, the amount of time the interim claim evaluation process takes could financially make or break a claimant. Thus far, no interim payments have been made. Accordingly, it is necessary for the GCCF to make the evaluation of interim claims expediently, and to specify the maximum amount of time they will take to process the claim. The failure of the proposed protocol to specify a short time limit on the processing of interim claims prevents the claimant from being able to accurately predict when he or she can expect payment and plan accordingly.

If a claimant has already submitted a claim which has been denied as not qualifying for Emergency relief, why must a claimant re-submit all of his or its documentation for the claim when making an interim payment? The protocol does not address this inefficiency.

Ultimately, the proposed protocol fails to address the historic problems with the GCCF claims process. While I understand that the Facility's intent is to reach more genuinely affected claimants, this protocol fails to say that.

III.
The Proposed Release

Exhibit A (attached) is the release form that the facility requires a claimant to execute in accepting a final payment. Though my understanding is that the Facility is to address BP's requirements under the OPA (Oil Pollution Act), I fail to see why a claimant receiving payment from BP should be required to release all other responsible parties. It seems clear to me that what BP is doing is asking those to whom it makes payments for *its* responsibility to assign to BP that claimants rights to make claims against others. This seems beyond the breadth of what was anticipated by OPA. While I understand BP's need and desire to receive

Page 5
February 15, 2011

a release for monies that it pays, I do not see why BP cannot merely receive a release of itself.

    Thank you for considering these issues as you prepare a response to the Court. If you are in need of anything further, please do not hesitate to let me know.

                                Sincerely,

                                Robert Bentley
                                Governor

/vm
Attachments

## GULF COAST CLAIMS FACILITY
## SAMPLE RELEASE and COVENANT NOT TO SUE

This is a sample of the Release and Covenant Not To Sue that you will be required to sign if you accept the GCCF Offer of Final Payment. DO NOT SIGN THIS SAMPLE RELEASE. You will receive a copy of the Release and Covenant Not to Sue for you to sign with your Offer of Final Payment.

<u>Important Information About the Attached Release And Covenant Not to Sue;
Acknowledgement and Election to Accept the Final Payment Offer</u>

The attached Release and Covenant Not to Sue ("Release") is a binding legal document. By signing this document, you are forever waiving and releasing all claims that you may have against BP or any other party other than claims for Bodily Injury (including claims alleging a mental health injury) ("Bodily Injury") or by shareholders of BP or other Released Parties for alleged violations of Securities laws ("Securities Claim") in connection with the April 20, 2010 blowout of the Macondo Well, the sinking of Transocean's Deepwater Horizon drilling rig, and the subsequent oil spill in the Gulf of Mexico (the "Incident").

You are under no obligation to accept the final payment offered to you by the Gulf Coast Claims Facility. You are free to reject the final payment offered by the Gulf Coast Claims Facility and to pursue other means of compensation. If you want to file a lawsuit regarding the Incident or make a claim against the Oil Spill Liability Trust Fund, do not sign this Release.

By signing the attached Release, you are forever giving up and discharging any rights which you may have for any costs, damages or other relief related to or arising from the Incident (excepting claims for **Bodily** Injury or Securities Claim), even if you are not currently aware of such costs or damages and even if such costs or damages arise in the future (i.e., additional oil impacts) or do not manifest themselves until the future.

By signing the attached Release, you acknowledge that you have read and understand the terms of the Release, and that you execute the Release voluntarily and without being pressured or influenced by, and without relying upon, any statement or representation made by any person acting on behalf of BP or any other released party.

**If you are represented by an attorney in connection with your Claim, confer with your attorney before signing this Release.**

For a Business Claimant, if the business is a sole proprietorship and you are the owner and you are married, or if the business is jointly owned by you and your spouse, both you and your spouse must sign the Release. For an Individual Claimant, if you are married, both you and your spouse must sign the Release. You and your spouse should not sign the Release unless you both intend to release all claims.

Claimant acknowledges that Claimant has read and understands the information in this Section. Claimant elects to accept the Final Payment Offer as a final settlement of all claims against any party in connection with the Incident (other than claims for Bodily Injury or Securities Claim).

Claimant consents to the use and disclosure by the GCCF and those assisting the GCCF of any information that it believes necessary and/or helpful to process Claimant's claim for compensation and payment including any legitimate business purposes associated with administering the GCCF and providing adequate documentation for insurance coverage of responsible parties, and/or as otherwise required by law, regulation or judicial process.

Signature of Claimant: _____ Date: _____

I acknowledge that I have read and understand the information in this Section. I consent to the claimant's election to accept the Final Payment Offer as a final settlement of all claims of Claimant against any party in connection with the Incident (other than claims for Bodily Injury or Securities Claim).

Spousal Signature (if applicable): _____ Date: _____

## RELEASE AND COVENANT NOT TO SUE

1. In consideration of payment in the amount of _____, Claimant hereby releases and forever discharges, and covenants not to sue BP Exploration & Production Inc. ("BP") and the other Released Parties, including but not limited to the parties listed in Attachment A to this Release, for any losses, damages, costs, expenses, injuries, claims, causes of actions, liabilities, or other relief that Claimant has or may have, whether known or unknown, whether present or future, whether direct or indirect, whether legal or equitable, arising from or relating in any way to the April 20, 2010 blowout of the Macondo Well, the sinking of Transocean's Deepwater Horizon drilling rig, and the subsequent oil spill in the Gulf of Mexico (the "Incident") (collectively, "Claims"), provided however that this Release does not apply to claims (i) for bodily injury (including claims alleging a mental health injury) ("Bodily Injury") or (ii) by shareholders of BP or other Released Parties for alleged violations of securities laws ("Securities Claim").

2. Claimant also, on behalf of Claimant's spouse, heirs, beneficiaries, agents, estates, executors, administrators, personal representatives, subsidiaries, parents, affiliates, partners, limited partners, members, joint venturers, shareholders, predecessors, successors, assigns, insurers, and attorneys (collectively, "Affiliates"), hereby releases and forever discharges, and covenants not to sue BP and the other Released Parties for any Claims released by Claimant pursuant to Paragraph 1 above. With regard to an insurer of the Claimant, notwithstanding anything to the contrary in the foregoing, the execution of this Release by Claimant shall not release the claims of an insurer of Claimant if and only if the Claimant has disclosed in writing on Claimant's Full Review Final Claim Form for Final Payment or Emergency Advance Payment Claim Form submitted to the Gulf Coast Claims Facility, the fact of a payment, and the amount of the payment, by the insurer to Claimant.

3. This Release applies to all Claims regardless of the legal or equitable theory (including legal and equitable theories under federal, state, local, and international law, and including without limitation statutory law, regulation, common law, maritime law, strict liability, negligence, gross negligence, punitive damages, nuisance, trespass, and all other legal and equitable theories), whether existing now or arising in the future, arising out of or in any way relating to the Incident, provided however that this Release does not apply to claims for Bodily Injury or Securities Claim.

4. Released Parties means anyone who is or could be responsible or liable in any way for the Incident or any damages related thereto, whether a person, company or governmental entity, including (but not limited to) BP, other potentially responsible or liable parties, including but not limited to the parties listed in Attachment A to this Release, the federal Oil Spill Liability Trust Fund and any state or local fund, and each of their respective Affiliates as defined above.

5. Claimant represents and warrants that Claimant (i) has authority to execute this Release; and (ii) has not sold or otherwise transferred or assigned any of the Claims, or any interests in such Claims.

6. Claimant represents and warrants that Claimant has not received any payment from any insurer or other party (other than BP or the GCCF) in connection with the Incident, other than payments disclosed on the Full Review Final Claim Form for Final Payment. However, the representation and warranty contained in this section (6) is not applicable to a Claimant electing to submit a Quick Payment Final Claim Form and receive a Quick Payment.

7. Claimant will dismiss with prejudice within 10 days of executing this Release any litigation concerning the Incident (other than litigation alleging only Bodily Injury or Securities Claim) filed by or on behalf of Claimant against BP or any other Released Parties. Claimant also will withdraw (the obligation to withdraw is satisfied by affirmatively declining to participate if and when the Claimant receives any communication giving Claimant the option of participating or not participating in a class action or similar procedural device) from any existing and will not join any new class actions or similar procedural devices concerning or relating to the Incident (other than class actions or similar procedural devices alleging only Bodily Injury or Securities Claim).

8. This Release is not intended to prevent any of the Released Parties from exercising their respective rights of contribution, subrogation, or indemnity under the Oil Pollution Act of 1990 ("OPA") or any other law. As this Release is fully and completely resolving, together with all other Claims, Claimant's claim under OPA, BP is hereby subrogated to any and all rights that Claimant has arising from the Incident.

9. The payment to Claimant is made without any admission of liability or wrongdoing, or any acknowledgment that the law recognizes any allegation referenced herein, by BP or any other Released Party.

10. The provisions of this Release and all questions with respect to the construction and enforcement thereof and the rights and liabilities hereto shall be governed by, and construed and enforced in accordance with, the laws of the state of residence of the Claimant at the time of signing this Release without regard to conflicts of laws principles.

11. This Release supersedes any and all other agreements, written or oral, between BP and Claimant with respect to such subject matter of this Release.

12. If there is no signature on the line below for Claimant's Spouse, Claimant represents and warrants that Claimant is not married.

# RELEASE AND COVENANT NOT TO SUE

### Release and Covenant Not to Sue – Signature by the Claimant

As the Claimant, or authorized signatory of the Claimant, as set forth in the Claim Form, I am signing this Release and Covenant Not to Sue:

| | |
|---|---|
| Signature of Claimant or Authorized Signatory of the Claimant: | |
| Printed Name: | |
| Title, if a business: | |
| Date: | (Month/Day/Year): ____/____/____ |

### Release and Covenant Not to Sue – Signature by the Claimant's Spouse (if applicable)

As the spouse of the individual signing above, I am signing this Release and Covenant Not to Sue:

| | |
|---|---|
| Signature: | |
| Printed Name: | |
| Date: | (Month/Day/Year): ____/____/____ |

Attachment A

Aerotek, Inc.
Ameri-Force, Inc.
Anadarko Petroleum Company
Anadarko Petroleum Corporation
Anadarko E&P Company LP
Art Catering, Inc.
Ashland
BJ Services Company, USA
BP America Inc.
BP America Production Company
BP Company North America Inc.
BP Corporation North America Inc.
BP Corporation North America Inc. Savings Plan Investment Oversight Committee
BP Energy Company
BP Exploration (Alaska) Inc.
BP Global Special Products (America) Inc.
BP Holdings North America Limited
BP plc
BP Products North America Inc.
Brett Robinson Gulf Corporation
Cameron Corporation
Cameron International Corporation f/k/a Cooper Cameron Corporation
Cameron International Corporation d/b/a/ Cameron Systems Corporation
Center for Toxicology and Environmental Health L.L.C.
Chouest Shorebase Services, LLC
Clean Harbors
Core 4 Kebawk, LLC
Crowder/Gulf Joint Venture
Crowder Gulf Disaster Recovery
Diamond Offshore Company
DOF Subsea USA, Inc.
Drill-Quip, Inc.
Entrix, Inc.
Environmental Standards
EPS Corporation
ERG
ES&H Environmental Services
ESIS, Inc.
Exponent
Global Diving & Salvage, Inc.
Gulf Offshore Logistics, LLC
Gulf Offshore Logistics International,LLC
Halliburton Energy Services, Inc.
Halliburton Company
Hamilton Eng.
Hepaco
Hilcorp Energy Company
Hyundai Heavy Industries Co. Ltd, Inc.
Hyundai Motor Company
In Rem Vessels
Island Ventures II
Jupiter Insurance Limited
LaBorde Marine Services, LLC
Lloyd's of London
Marine Spill Response Corporation
MEG Energy Corp
M-I L.L.C.
M-I Drilling Fluids L.L.C.
M-I Swaco
Miller Environmental Group, Inc.
Mitsui & Co. (USA), Inc.
Mitsui & Co. Ltd.
Mitsui Oil Exploration Co. Ltd.
Moran Environmental Recovery, LLC
MOEX Offshore 2007 LLC

Moex USA Corporation
MV Monica Ann
MV Pat Tilman
MV Damon B. Bankston
MV Max Chouest
MV Ocean Interventions
MV C. Express
MV Joe Griffin
MV Mr. Sidney
MV Hilda Lab
MV Sailfish
MV Seacor Washington
MV Seacor Vanguard
Nalco Holding Company
Nalco Finance Holdings LLC
Nalco Finance Holdings Inc.
Nalco Holdings LLC
Nalco Company
Nautical Ventures, LLC
Nautical Solutions, LLC
O'Brien's Response Management, Inc.
Ocean Runner, Inc.
Oceaneering International, Inc.
Offshore Cleaning Systems L.L.C.Offshore Service Vessels, LLC
Offshore Inland Marine & Oilfield Services, Inc.
Ranger Offshore, Inc.
Reel Pipe, LLC
Schlumberger, Ltd.
Seacor Marine, LLC
Seacor Marine, Inc.
Seacor Marine International, Inc.
Siemens Financial, Inc.
Seafairer Boat, LLC
State Street Bank and Trust Company
Subsea 7 LLC
The Response Group, Inc.
TestAmerica, Inc.,
Tiburon Divers, Inc.
Tidewater Marine LLC
Tiger Safety, LLC
TL Wallace
Transocean Inc.
Transocean Deepwater, Inc.
Transocean Drilling (U.S.A.) Inc.
Transocean Enterprise Inc.
Transocean Holdings Inc.
Transocean Holdings LLC
Transocean Ltd.
Transocean Offshore Deepwater Drilling, Inc.
Transocean Offshore USA, Inc.
Triton Asset Leasing GmbH
Triton Hungary Asset Management KFT
Triton Hungary Asset Management Limited Liability Company
USES/Construct Corps
Weatherford International Ltd.
Weatherford U.S. L.P
Worley Catastrophe Services, LLC
Worley Catastrophe Response, LLC