# Exhibit G

## Feb. 16, 2011 Letter from the Coastal Resiliency Coalition to Ken Feinberg



February 16, 2011

Gulf Coast Claims Facility
Kenneth R. Feinberg, Administrator
P.O. Box 9658
Dublin, OH 43017-4958

Dear Mr. Feinberg,

After reading the proposed Eligibility and Substantiation Criteria and Final Payment
Methodology on the Gulf Coast Claims Facility website and after multiple meetings on February
10, 2011 with GCCF Attorney Bill Mulvey and GCCF Representative Jim Walker on this topic, the
Coastal Resiliency Coalition would like to confirm what we think we heard during these meetings
relative to the proposed final payment methodology:

1. "**SWAT Teams**," or small teams of accountants and adjusters, will be set up and
   operational in Alabama by early March of 2011. These teams will work with individual
   businesses to understand how each business was affected by the oil spill and how this
   will translate into interim and final claim offers.

2. The name, phone number and email address of **an assigned adjuster** within an industry-
   specific team of adjusters will be listed on every interim or final claim response for the
   purpose of claimants being able to contact the adjuster to ask questions or for an
   explanation of the claim payment.

3. **One size does not fit all.** While broad generalities like a 2x multiplier may work for
   certain claimants, it will not work for all. For example, businesses in a highly tourism
   dependant local economy need to be individually considered based on how each loss is
   related to the oil spill. Examples:

   a. A veterinarian whose income comes in large part from boarding pets from
      tourists is different from one whose business is based on treating only local
      pets.

   b. A near-beachfront shopping center owner who loses an ice cream store tenant
      because the store did not have enough tourist business to sustain it should be
      eligible for the lost rent.

    c.  A title company with 70% of its business tied to tourists purchasing real estate ought to eligible.

    d.  A doctor or emergency room whose business depends on emergency treatment of tourists should be eligible.

4.  The **GCCF must 'True-up' 2010 emergency/BP claims** with the final claim or first interim payment to reflect the "true" loss in 2010. This includes getting the business back on the trend line as if the spill never happened.

    a.  Currently, the final claims process fails to provide for the documented growth anticipated for 2010 and for missed growth opportunity for the next 2-3 years. For example, in the ARPC study commissioned by the GCCF, Beachfront Hotel revenues increased by 15% in revenue over spring and fall of 2009. Compensation for this trend should be included in the first interim or final claim payments.

    b.  The Loss of Income (LOI) percentage estimate used in the example calculation should not be used in actual claim calculations where full documentation of actual revenue and expense is available. LOI % is individual and negotiable.

    c.  The claims process needs to provide for the significant expenses incurred by businesses in preparation, filing and documenting claims.

5.  **It is essential that the interim claims process be recognized as a critical part of the program.** It is expected to be transparent, fair and consistent, with interim claims being submitted every one to three months and payments made within 14 days of submission. As discussed below, no one knows how long it will be before the area has fully recovered. Any business which is uncertain about the future should have confidence that the interim claim process will work every time.

6.  We believe that **the recovery pace in our area will depend on the degree of consumer confidence that the beaches/water/seafood will be safe** when they arrive for their vacation.

    a.  The fixed x2 final claim multiplier fails to recognize that beach tourism is just as reliant on a clean environment as seafood harvesting. The rationale which assumes that all will be well in two more years uses a best case scenario, when businesses should be provided with recovery resources from the worst case scenario. For example, the threat of a large tar mat washing ashore during tourist season could destroy tourist confidence and disrupt the industry for additional years to come.

b.  The literature referenced in the GCCF methodology discussion fails to include input from noted tourism experts like Dr. Peter Yesawich and others. Most disasters referenced are not related to "beach tourism."

7.  Every claim payment will come from the same pot of money. There is no longer a separate fund set aside for any specific industries, such as Real Estate.

8.  As Alabama State Mental Health Director, Dr. Richard Powers, explained, the claims process is responsible for more stress in individuals than the oil spill itself. The GCCF's constant public discussion on fraud without more than a handful of examples of prosecution further stigmatizes and demoralizes our already frustrated and stressed population. Quit using the word 'fraud'.

Sincerely,

Bob Higgins
Chairman
Coastal Resiliency Coalition
P.O. Box 276
Gulf Shores, AL 36547
(251) 968-8821