# Exhibit H

**Feb 4, 2011 Letter from AAG Thomas J. Perrelli to Ken Feinberg**




U. S. Department of Justice

Office of the Associate Attorney General

---

The Associate Attorney General                                        *Washington, D.C. 20530*

February 4, 2011

Mr. Kenneth Feinberg
Gulf Coast Claims Facility
The Willard Office Building
1455 Pennsylvania Avenue, Suite 390
Washington, DC  20004-1008

Dear Mr. Feinberg:

As I have previously discussed with you, it is essential that the individuals and businesses most affected by the Deepwater Horizon Oil Spill are fairly treated by the Gulf Coast Claims Facility ("GCCF").  Over the past nine months, that overarching goal and the need for the GCCF to comply with the Oil Pollution Act have led us to ask that you make several changes, from the continuation of interim payments to the payment of all emergency advance payments by December 15.  Thank you for fulfilling those requests.

The GCCF is, however, entering another critical period for the people of the Gulf.  April 20, 2010 ushered in a lost season for many in the Gulf, as communities, businesses, and workers that depend on a summer of strong revenue saw their bookings drop, their ships stay in port, and their hours cut.  To ensure that 2011 is not a lost season as well, and to turn the page on the spill, the next few weeks and months will be critical. Businesses in the Gulf that have suffered harm as a result of the Deepwater Horizon explosion and oil spill need to be investing in their businesses and marketing themselves now to avoid losing another year of revenue and to continue the revitalization of the Gulf that is a national priority.  This is a matter of urgency.

The impact of the spill on the lives of the people of the Gulf cannot be overstated.  For them, the GCCF – an entity whose mission is to fulfill the obligations of responsible parties under the Oil Pollution Act and to make the people of the Gulf whole, consistent with that statute – has a critical role to play in the future of their communities.  Resolving claims efficiently, fairly, and swiftly is more important than ever.  There are several areas that I would highlight for your particular attention.

First, over the past several months, we have reiterated that the Oil Pollution Act requires BP and other responsible parties to pay for damages that arise "as a result of" the oil spill. Notwithstanding the terminology concerning causation used in the various GCCF protocols, you must apply OPA's standard.

In resolving claims, it is important to note that OPA does not create categories of eligible and ineligible claimants. Rather, in determining whether a particular damage resulted from the spill, the GCCF must examine the facts and circumstances of each claim and ascertain whether the harm asserted by the claimant occurred "as a result of" the oil spill and is a type of harm, such as lost profits, covered by OPA. In so doing, it is relevant to consider the nature of the economy from which the claim arises. In many parts of the Gulf, tourism is the economic engine on which many industries and professions depend.

As we enter this most critical period, I urge you to take a second look at the categories of eligible and ineligible claims that the GCCF applied with respect to emergency advance payments. As noted above, OPA does not create such categories. Rules of decision regarding a particular industry that may make sense further inland may be wholly inapplicable for that industry in a purely coastal community that depends on visitors whose plans changed as a result of the spill. Communities that can demonstrate pervasive effects of the spill on their overall economy should have that evidence credited. The National Pollution Funds Center will issue its rulings based on the particular facts and circumstances of these claims, and the GCCF should, too.

Second, as I previously urged and as the Oil Pollution Act requires, the GCCF has agreed to continue offering interim payments at the same time that it offers final, prospective payments that require prospective releases. This option could not be more important: With significant uncertainty about how long the effects of the spill will last, businesses and individuals ought not be forced to take the risk that the GCCF's estimate of the ongoing impact of the spill – however rigorously developed, and however well-intentioned – will ultimately prove incorrect. We appreciate your continuing to offer the interim payment option.

For the GCCF to fulfill its mission, the interim payment process must be efficient, fair, and straight forward. It cannot be a disfavored fallback from the final claims process. When a small business files for its interim claim every three months, and then waits 90 days for the claim to be resolved, its cash flow is already running six months behind – at the very moment when it needs to be getting back on its feet and investing in its future. Therefore, I ask that you ensure that the interim claims process functions efficiently and swiftly for claimants, including businesses that submit appropriate documentation of loss and that are attempting to keep their businesses alive in the face of significant uncertainty.

Similarly, when the three-month limit on filing interim claims puts a claimant in serious hardship, you committed to me that there would be a reasonable and efficient mechanism to prioritize resolution of that claim. I would like additional information from you about how the GCCF intends to fulfill this commitment.

Third, I urge you once again to make the GCCF's processes more transparent. The period you have provided for public comment on the final payment methodology is important, and I know that you will take the feedback received on that proposed methodology very seriously. It is similarly important that claimants have an understanding of why their claims are handled as they are, and I ask that the GCCF find ways to provide additional information about its decisions.

2

Finally, I note the negative public response to comments made by you concerning your view about the total amount of claims likely to be paid by the GCCF.  I know those comments have been taken out of context, and that you have taken steps to clarify them.  I will simply confirm what you have already said: The role of the GCCF is to satisfy the obligations of the responsible parties to compensate those harmed as a result of the Deepwater Horizon oil spill under the Oil Pollution Act – in whatever amount ultimately is required.  It is not to preserve the $20 billion fund that BP has established or to return money to BP.  As Judge Barbier's decision yesterday noted, "BP does not control [the GCCF's] evaluation of individual claims," and this is an element of your independence that must never be compromised.

Your immediate attention to these issues will go a long way toward fulfilling BP's commitment, and the GCCF's responsibility, to provide a fair and efficient process that serves the needs of the people of the Gulf.

Sincerely,

Thomas J. Perrelli