UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: OIL SPILL by the OIL RIG                                    MDL-2179
"DEEPWATER HORIZON" in the GULF
OF MEXICO, on APRIL 20, 2010

THIS DOCUMENT RELATES TO:                                    SECTION J

ALL ACTIONS                                                        JUDGE BARBIER
                                                              MAG. JUDGE SHUSHAN

BRIEFING AND MEMORANDUM OF AUTHORITIES
ON BEHALF OF THE STATE OF MISSISSIPPI REGARDING BP'S FAILURE TO
FULLY COMPLY WITH THE MANDATES OF THE OIL POLLUTION ACT OF 1990

INTRODUCTION

In accordance with the Court's February 2, 2011, Order ("the February 2nd Order"), Jim

Hood, Attorney General for the State of Mississippi, pursuant to his *parens patriae* authority,

files the following brief on behalf of the people and State of Mississippi, on the question of

whether BP as the responsible party is fully complying with the mandates of the Oil Pollution

Act of 1990 ("OPA").  The Attorney General of Mississippi respectfully submits that BP,

through the Gulf Coast Claims Facility ("GCCF"), is *not* fully complying with the requirements

of OPA, prior public commitments of BP regarding the payment of claims, and the provisions of

the June 16, 2010, agreement between BP and the White House ("the June 16th Agreement).

Accordingly, the Attorney General respectfully submits that Court intervention, monitoring and

direction is needed to bring the claims process into compliance with all applicable commitments

BP has made with respect to paying "all legitimate claims" that "result from" the Deepwater

Horizon explosion and oil spill.[1]

_____

[1]Although part of the deficiencies of the BP claims process are attributable to BP's failure to
honor the commitments BP made in the June 16th Agreement, creating the GCCF claims process,

In order to conserve judicial resources, the Attorney General of Mississippi further respectfully suggests that the Court consider appointing the Gulf State Attorneys General, or other independent parties of the Court's choosing, as Monitors to: review the GCCF's claims processing thus far; oversee the GCCF's operations going forward; and report their findings to the Court. The lack of transparency in the claims process, combined with this Court's holding that the GCCF is not operating independently from BP, emphasizes the need for Monitors with full access to the GCCF's claims data, materials, centers, and personnel to conduct a truly independent oversight.[2]

## BACKGROUND

From its inception, BP has used the GCCF and its origins in the June 16th Agreement between BP and the White House to avoid Court oversight and to evade adherence to the mandates of OPA. *On June 16th*, BP successfully argued against entry of a preliminary injunction by the District Court for the Northern District of Florida for imposition of Court oversight and appointment of a special master over the BP claims process by representing to the Court that:

> [W]ith the newly announced creation of the [Independent Claims Facility] ICF by the White House and BP, Plaintiffs have an adequate remedy in the creation of this independent claims process. As a result of the agreement between the President and BP, the claims process will be independent, with monies paid into a claims fund by BP. Any judicial oversight would be duplicative of the efforts of

this brief focuses only on the violations of OPA in the current BP/GCCF claims process, per the dictates of this Court's February 2nd Order.

[2]Attorney General Hood has requested a meeting with GCCF Claims Administrator Kenneth Feinberg and BP U.S. General Counsel Jack Lynch to discuss the possibility of reaching an agreement to provide greater transparency in the GCCF process by allowing for such independent oversight. Exhibit A, February 10, 2011, Letter from Attorney General Hood to K. Feinberg. Mr. Lynch has declined the invitation to meet, and the Attorney General has received no written response from Mr. Feinberg, although he has agreed to a meeting.

> the ICF.  By the Presidentially-approved appointment of an independent claims
> fund and independent administrator Ken Feinberg, the claims process will now
> have all the oversight that Plaintiffs motion sought, and more.  Consequently,
> Plaintiffs' request for injunctive relief is clearly moot.

*Destin v. BP, PLC*, 2010 WL 2508951, *1 (N.D. Fla. Jun. 17, 2010).  The BP Defendants failed

to advise the district court that Mr. Feinberg was already under contract with and, thus, an agent

of BP effective June 15th.  The district court denied the Plaintiffs' request for entry of a

preliminary injunction for oversight of the BP claims process as moot, noting that, "[i]t would be

pure speculation at this point for the court to try to predict how the new process will work for

claimants."  *Id.* at *2.[3]

     In its February 2nd Order, this Court held that Mr. Feinberg and the GCCF, in fact, are *not*

independent, but instead are agents of BP, "acting for and on behalf of BP in fulfilling its

statutory obligations as the 'responsible party' under the Oil Pollution Act of 1990."  February

2nd Order, Doc. 1098, p. 14.  As a result, this issue is no longer a matter of speculation.  The

GCCF is operating without sufficient oversight, and the Attorney General of Mississippi

respectfully submits that the time is now ripe for this Court to fashion remedial relief and appoint

Monitors over the GCCF to protect the rights of claimants.

### ARGUMENT REGARDING BP'S SPECIFIC VIOLATIONS OF OPA

     As requested in the Court's February 2nd Order, the Attorney General of Mississippi

submits the following briefing on the "question of whether and how BP as the responsible party

is fully complying with the mandates of OPA, for example, in the processing of claims for

---

[3]Subsequently, the *Destin v. BP, PLC* case was transferred to this Court and made a part of this MDL.

3

'interim, short-term damages,' or 'final damages,' methodologies for evaluation of claims, and the release forms required of claimants."  February 2nd Order, Doc. 1098, p. 15.

## I.  Interim, Short-term Claims, "Final damages" and the Release

The Attorney General incorporates the facts, legal arguments and authorities in the State of Mississippi's prior submissions to the Court.  Pursuant to the facts and arguments presented in those prior submissions:

- BP, through the GCCF, is violating OPA by failing to process or pay "Interim, short-term damages" in direct contravention of OPA Section 2705(a).  Mr. Feinberg has publicly confirmed that the "interim claims program has not been implemented yet"[4] and the GCCF's statistics verify this as fact.

- The subrogation rights BP attempts to confer upon itself through language in the Release and Covenant Not to Sue ("the Release") that the GCCF requires claimants to sign in order to obtain "Quick Payment Final" or "Full Final" claims payments violates OPA Section 2715(b)(1).

- The Final Payment scheme that Mr. Feinberg and BP have concocted lacks any authority in OPA and is in direct contravention of OPA Section 2715(b)(2).[5]

- BP, through the artifice of the GCCF, has altered, reduced or eliminated its obligations under OPA in the administration of the claims process and payment of claims and improperly increased the burdens and standards of proof required of claimants under OPA.

- The Release the GCCF is requiring claimants to sign, for the benefit of BP, violates OPA (*see, e.g.,* 33 U.S.C.A. §§ 2705(a) and 2715(b)(2)), state law and public policy. Further, by deviating from the mandates of OPA and the commitments of BP in the June 16th

---

[4] http://www.bloomberg.com/video/65253264/

[5] In the brief submitted on February 18, 2011, by Defendant Cameron, Cameron defends the GCCF's use of a sweeping Release that purports to waive all of a claimants' future legal rights, as well as those of a laundry list of "Affiliates" against BP and all other responsible parties – including Cameron.  Cameron ignores the plain meaning of Section 2715(b)(2) and fails to give effect to *all words* Congress included in this Section, including the heading "Final damages," as is fully addressed in the Attorney General's previously filed memorandum.

Agreement, BP, through Mr. Feinberg and the GCCF, has manipulated claimants into providing an outrageous, over-reaching release of all legal rights of the executing claimant, and an overbroad list of released parties and "Affiliates," unsupported by adequate consideration, through the exercise of economic duress.

## II. Methodologies for Evaluation and Payment of Claims

Despite repeated requests by State officials and the Department of Justice ("DOJ") for transparency with respect to *all* of the criteria, standards, procedures and methodologies that the GCCF uses in determining eligibility for and payment of claims, to date, BP and GCCF Administrator Ken Feinberg have refused to provide State officials or DOJ with this information. However, the Attorney General of Mississippi respectfully submits that, based on the methodologies that *have* been publicly released by the GCCF, the BP claims process, as administered by the GCCF, violates OPA by deviating from the express requirements and standards mandated by that federal law.

Further, a review of these OPA deviations and deficiencies in the publicly available methodologies (including GCCF Protocols), reinforces the need for an Order from this Court appointing Monitors under the direction of the Court to ensure that remedial measures and future compliance measures ordered by this Court are adhered to by BP, Mr. Feinberg and the GCCF. The need for greater transparency and oversight is underscored by this Court's holding that the GCCF in fact is *not* independent from BP.

### A. OPA Violations in GCCF Protocols

Since shortly after the Deepwater Horizon oil spill began, the Gulf State Attorneys General have attempted to negotiate with BP to bring the claims process into compliance with OPA mandates and to make the claims process *more transparent*.  Since mid-July, 2010, the

State Attorneys General and other governmental officials have attempted to negotiate with both BP and Mr. Feinberg to bring the claims process into compliance with OPA and to make this process *more transparent.* These efforts met with only very limited success.

> As noted by this Court:
>
> "Full disclosure and transparency can insure that the reality of the operation of a third party will be consistent with any publicity concerning that entity…. Innovative and thoughtful procedures are to be encouraged. Those procedures must, however, be fully transparent so that claimants can evaluate them appropriately."

February 2nd Order, Doc. 1098, p. 8. However, after months of negotiations, BP and Mr. Feinberg have still failed to make the claims process transparent, despite their repeated commitments to do so.

From the outset, Mr. Feinberg has acted as though he was a law unto himself – free to ignore the requirements of OPA, even though his recently revealed contract with BP expressly requires him to administer the BP claims process in compliance with OPA.[6] Indeed, Mr. Feinberg has repeatedly maintained that he had no obligation to provide claimants with the right to file interim, short-term damage claims after November 23, 2010. He only grudgingly acceded to the demands of State officials, especially the Gulf State Attorneys General, to continue offering any opportunity to file such claims in the Protocol for Interim and Final Claims (the "Final Claims Protocol"), released on November 23, 2010.[7] To date, *only one business claimant*

---

[6]Defs.' Br. Ex. 2A, Doc. 963-2, "Agreement" between BP and Feinberg Rozen, LLP, p. 1.

[7]Exhibit B, Final Claims Protocol; Exhibit C, October 25, 2010, Letter from K. Feinberg to George Sheldon; Exhibit D, November 22, 2010, Letters from K. Feinberg to Attorney General Hood and Attorney General Bill McCollum.

and *no individual claimants* have had their Interim Claim petitions processed or paid – rendering this a rather illusory "right" at best.

The claims process Mr. Feinberg has contrived on BP's behalf attempts to provide BP and a two-page list of other responsible parties and "Affiliates"[8] with "total peace."[9]  This goal is being accomplished by steering or leveraging individuals and businesses into waiving their OPA-mandated right to interim, short term damages that fully compensate them for all damages incurred as a result of this oil spill, *without a release of any legal right*.  Two-thirds of the claimants who filed for "emergency advance payments" from August 23, 2010 to November 23, 2010, were denied *any relief.*  Many of the one-third of "emergency" claimants who received some compensation report that the compensation they received was far below the compensation to which they are entitled under OPA, and that the GCCF provided little or no explanation for the reduced payment.

The GCCF criteria, Protocols, and Release deviate from OPA and, as a consequence, favor BP by reducing, eliminating or modifying BP's obligations as a "responsible party" under OPA, and increasing the standards and burdens of proof on claimants.  The following elements of the GCCF Protocols used to operate the BP claims process deviate from OPA mandates.

### 1.  OPA's Presentment Requirement

Under OPA, claimants are required to first seek payment from the designated "responsible party" before they can file a lawsuit against the responsible party or seek compensation from the U.S. Coast Guard's Oil Spill Liability Trust Fund ("OSLTF").  33 U.S.C.

---

[8]Exhibit E, GCCF Release.

[9]http://money.cnn.com/2010/07/12/news/companies/feinberg_BP_claims.fortune/

§ 2713(a).  This prerequisite to filing suit or seeking compensation from the OSLTF is called the

"presentment" requirement.  Failure of a claimant to comply with the presentment requirement in

OPA will result in denial of their OSLTF claim and/or dismissal of their OPA lawsuit for lack of

subject matter jurisdiction.  *See, e.g.*, 33 U.S.C. § 2713(a); *Boca Ciega Hotel, Inc. v. Bouchard*

*Transp. Co*., 51 F.3d 235, 240 (11th Cir. 1995).

The EAP Protocol and the Final Claims Protocol erroneously suggest that filing a claim

with the GCCF may not satisfy the presentment requirement of OPA.  Injecting such an

ambiguity on this issue into the GCCF claims process appears calculated to advance a litigation

posture that advantages BP.

The August 7th and 13th drafts of the EAP Protocol stated:

> Proper presentation of a *final claim* to the GCCF *satisfies a claimant's obligation*
> *to present a claim to a Responsible Party under OPA*.  A final claim may be
> presented to the GCCF at any time that the facility is receiving claims.  However,
> *submission of a claim for an emergency payment does not constitute presentment*
> *under OPA*.[10]

Thus, the GCCF declared that filing an emergency interim, short-term claim with the GCCF – the

only claims process option available at the time – would not have satisfied the OPA presentment

requirement.  After objection by the Gulf State Attorneys General,[11] this language was only

slightly modified to ambiguously state, "Whether or not a claim has been presented shall be

---

[10]Exhibit F, August 7, and August 13, 2010, drafts of EAP Protocol, Section I.A. (emphasis
added).

[11]Composite Exhibit G, July 13, 2010, Letter from Attorney General Troy King to K. Feinberg;
July 20, 2010, Letter from Attorney General Hood to K. Feinberg; August 16, 2010, Letter from
Attorney General Buddy Caldwell and Attorney General Hood to K. Feinberg; and August 20,
2010, Letter from Attorney General McCollum to K. Feinberg.

governed by OPA and applicable law."[12]  Moreover, despite ongoing protest by federal and state officials,[13] this same ambiguous language has been carried over into the Final Claims Protocol,[14] suggesting that the presentment issue remains open for debate.

Inserting this ambiguity into the GCCF Protocols serves no discernable public purpose and only benefits BP by leaving claimants vulnerable to a later challenge by BP of failure to comply with a condition precedent to suit.  By including this language, BP and the GCCF have violated the Congressional intent underlying OPA "to eliminate, to the extent possible, the need for an injured person to seek recourse through the litigation process."  *U.S. v. M/V COSCO BUSAN*, 557 F.Supp.2d 1058 (N.D. Cal. 2008) (quoting 135 Cong. Rec. H7954-H7978 (daily ed. Nov. 2, 1989)).

The Attorney General of Mississippi respectfully submits that the GCCF Protocols should be amended to acknowledge that filing *any claim* with the GCCF (regardless of what that claim is labeled by the GCCF) satisfies OPA's presentment requirement.

### 2.  Reasonable Costs of Assessing Damages

Pursuant to OPA, recoverable damages include the reasonable costs of assessing damages.  33 U.S.C. §§ 2701(5) and 2702(b).  BP, through the GCCF, did not include the reasonable costs of assessing damages during the Emergency Advance Payment period.[15]

---

[12]Exhibit H, EAP Protocol, Section I.A.

[13]Exhibit I, September 2, 2010, Letter from USCG National Pollution Funds Center Claims Adjudication Division Chief Thomas S. Morrison to BP Director of Claims Meir Robinson; Exhibit J, November 8, 2010, Letter from Attorney General McCollum to K. Feinberg.

[14]Exhibit B, Final Claims Protocol, Section I.A.

[15]*See* Exhibit H, EAP Protocol.

Without transparency, there will be no way to verify if they are complying with this obligation in the future.  Accordingly, the Attorney General of Mississippi respectfully requests a Court Order requiring BP, through the GCCF to: (1) appoint Court Monitors to re-evaluate all previously filed claims to determine the amount of assessment costs each claimant is due, with interest; and (2) direct BP, through the GCCF, to pay all assessment costs, past and present, that are due, with interest for past claims.

### 3.  Geographic Proximity Test

The Protocols and Criteria used by the GCCF violate OPA by requiring that claimants demonstrate "geographic proximity" to an oiled beach or shoreline in order to receive payment for OPA damages.  OPA does not require claimants to show geographic proximity to oil to be eligible to file for or receive compensation.  Indeed, OPA envisions that claimants will be eligible for compensation for damages relating to the mere threat of a discharge of oil.  Specifically, OPA states:

> § 2701. Definitions
> For the purposes of this Act, the term–
> . . . .
> (14) "incident" means any occurrence or series of occurrences having the same origin, involving one or more vessels, facilities, or any combination thereof, resulting in the discharge *or substantial threat of discharge of oil* (emphasis added);
>
> . . . .
>
> § 2702. Elements of liability
> (a) In general
> Notwithstanding any other provision or rule of law, and subject to the provisions of this Act, each responsible party for a vessel or a facility from which oil is discharged, *or which poses the substantial threat of a discharge of oil*, into or upon the navigable waters or adjoining shorelines or the exclusive economic zone

is liable for the removal costs and damages specified in subsection (b) of this section that result from such incident.  (Emphasis added).

Thus, under the express language of OPA, compensation may be due even when no actual discharge of oil has occurred.  From the outset, however, the GCCF Protocols attempted to introduce "geographic proximity" as a tool to limit "*eligibility*" to *file* a claim and as a basis to *deny or reduce the payment* a claim.[16]  The GCCF's "geographic proximity" bias for compensating claims is not supported by OPA or by the regulations and case law applying OPA.  This criteria has a particularly adverse impact on claimants in industries related to tourism, who are entitled to compensation under OPA, but who will be denied eligibility for compensation as a result of Mr. Feinberg's deviation from OPA's requirements in this regard.

Following public criticism, Mr. Feinberg has stated that he has abandoned "proximity" as an *eligibility* or *filing* criteria.[17]/[18]  However, the recently released Eligibility and Substantiation Criteria, and Final Payment Methodology ("the Methodology"), simply does not address the issue, and the lack of transparency in the GCCF process makes it impossible to determine whether the GCCF continues to use geographic proximity as a basis for *denying or reducing payment* of claims.  Accordingly, the Attorney General of Mississippi requests an order directing BP, through the GCCF, to cease and desist from using "geographic proximity" as a criteria for

---

[16]Exhibit H, EAP Protocol, Section II.F.; Exhibit K, GCCF Criteria for Eligibility.

[17]Exhibit L, July 16, 2010 Recommendations Regarding the Gulf Coast Claims Facility from Attorney General Hood to K. Feinberg; Exhibit M, December 1, 2010, Letter from K. Feinberg to George Sheldon ("Geographic proximity will not be a barrier to the filing of a claim with the GCCF.").

[18]Pensacola News Journal Q&A with Mr. Feinberg, available at http://www.pnj.com/article/20110208/NEWS01/102080319/Q-A-Feinberg-talks-about-claims-pr ocess ("Now, physical proximity is not a barrier to anybody filing.").

eligibility *and payment* of OPA claims; and to appoint Monitors under the jurisdiction of this Court to audit all previous interim claims to determine if claims were denied or underpaid as a consequence of the improper use of "geographic proximity" as part of the GCCF criteria.

### B.  OPA Violations Specific to the February 2, 2011, Methodology

On February 2, 2011, the GCCF publicly released the Methodology that BP, through the GCCF, proposes to use for making "Final Payment" offers to claimants, in exchange for the GCCF's sweeping Release.  After a two-week comment period, which ended on February 16, 2011, some version of this Methodology will be instituted to facilitate implementation of the "Final Payment" scheme contrived by BP, through the GCCF.  In fact, consistent with the GCCF's confusing pattern of ever-shifting standards, Mr. Feinberg has indicated that new rules for awarding payments will be announced later today.[19]

The underlying premise of the Methodology is that, based upon a body of mostly unidentified "expert opinions, studies, reports and comments," BP's agents, Mr. Feinberg and the GCCF, have determined that: "[t]here is evidence of a strong recovery underway."[20] Accordingly, the Methodology states that "it is reasonable to base [the GCCF's] future payment calculations on the principle that a full economic recovery in the Gulf region is likely (but not certain) within two to three years from the date of the Oil Spill."[21]

The real question raised by the Methodology is not whether it is based on sound scientific conclusions but instead whether the use of *any* Final Payment Methodology violates OPA.  OPA

---

[19]http://www.miamiherald.com/2011/02/18/2073497/bp-oil-spill-claims-process-flawed.html#

[20]Exhibit N, Methodology, Section III, p. 4.

[21]*Id.* at Section III, p. 3.

does not envision nor permit its mandated claims process to be converted into a game of chance in which claimants are asked to bet on what the future will bring.

Under the proposed Methodology, final payments will be based on documented actual losses from May to December 2010, plus assumptions in the Methodology and its attachments about future losses.  Most claimants would receive twice their 2010 losses, and oyster harvesters would receive four times their demonstrated 2010 losses.  However, claimants who suffered losses of more than $500,000 in 2010 will not automatically get a final payment of twice their 2010 losses.  Instead, these larger claims will receive individualized assessment of their future losses.

The GCCF bases these arbitrary, fixed future loss multipliers in the Methodology on the rather optimistic Gulf recovery predictions contained in an analysis prepared by John W. "Wes" Tunnell, Jr., of the Harte Research Institute for Gulf of Mexico Studies, from Texas A&M University-Corpus Christi ("the Tunnell Report") (available at http://www.gulfcoastclaimsfacility.com/exhibit_d.pdf).  The Tunnell Report addresses the predicted time for recovery by four categories of fisheries – crab, oysters, fin-fish and shrimp.  This "report" is *one expert's opinion* on when the Gulf of Mexico will allegedly return to pre-oil spill harvest status for these four fisheries.

Rather than providing a scientific foundation and justification for BP's speculative compensation awards, the Tunnell Report demonstrates the reason why implementation of the BP/GCCF Final Payment claims scheme should be enjoined by this Court.  The following excerpts from the Tunnell Report exhibit violations of the letter and spirit of OPA – specifically Sections 2705(a) and 2715(b)(2).

13

- "[E]stablishing a recovery date and time is more difficult that determining the impact from the spill itself.  In fact, establishing an exact recovery time is *essentially impossible*."  Tunnell Report, Endorsement by Larry D. McKinney, Executive Director, Harte Research Institute for Gulf of Mexico Studies, p. iii (emphasis added).

- "The above complexities of oil spilled in the environment and the subsequent fate and effects clearly reveal the *difficulty in assessing damages from a spill* and the *near impossibility in accurately predicting the environmental impact or time of recovery*."  Tunnell Report, p. 14 (emphasis added).

- "Changes in feeding behavior or reproductive behavior could affect populations for years from re-oiling of submerged or hidden oil that was not removed.  The unprecedented and unexpected crash in the herring fishery five years after the Exxon Valdez oil spill is a classic example of the unknown that can surprisingly appear years later. (Peterson et al. 2003)."  Tunnell Report, p. 15.

- "The effects of oil on plankton (food for larvae of fish and invertebrates) are *currently unknown, and may never be known*.  The effects of oil on trophic cascades and ecological interactions are also *unknown* (T. Shirley. pers. comm.)"  Tunnell Report, p. 22 (emphasis added).

- "The purpose of this report is to give the Claims Facility a best informed estimate to allow them to proceed with their claims process as soon as possible.  *Realistically, the true loss to the ecosystem and fisheries may not be accurately known for years, or even decades*…"  Tunnell Report, p. 37 (emphasis added).

- "In conclusion, making an exact call for the time of recovery of any fishery group after a major oil spill is *impossible*.  However, it is realized that *it is very important to settle claims with individuals and businesses* on a timely basis, so *the expert opinions for the four fishery groups given in this report are as reasonable as possible at this time*."  Tunnell Report, pp. 38-39 (emphasis added).

The Tunnell Report was commissioned by BP's agent, Mr. Feinberg, for the express purpose of

justifying the use of multipliers to develop "Final Damage" offers – multipliers that the Tunnell

Report itself contradicts.  Claimants should not and must not be required to relinquish their rights

to all future recovery in exchange for a purely arbitrary and speculative "Final" payment.

Moreover, the Tunnell Report does *nothing* to predict the short-term or long-term impact

of the Deepwater Horizon oil spill on the tourism industry or, for that matter, on the demand for

Gulf seafood products from even the four fisheries categories evaluated.  It is one thing to speculate about the possible recovery time for certain fisheries and the ecosystem generally – it is another thing altogether to try to divine whether the oil and dispersants will have an impact on the public's confidence in and, thus, demand for the four categories of Gulf seafood that Dr. Tunnell analyzes in his report.  The GCCF offers no justification for attempting to extrapolate conclusions about the time for recovery of other industries (tourism, gaming, etc.) from an analysis of the time required for certain fisheries to recover.

Respectfully, there is only one right response to this Methodology – entry of a court order enjoining BP, acting through Mr. Feinberg and the GCCF, from using it *or any other methodology* to pay speculative, "final" damages, conditioned upon the relinquishment of all current and future legal rights by financially desperate claimants.

There is no need to debate nor litigate the merits or accuracy of the conclusions that Dr. Tunnell has reached regarding the time within which the Gulf may recover.  Indeed, the entire notion of divining the time for recovery of the Gulf, as noted by Dr. Tunnell himself, is "impossible*.*"  The real issue is whether OPA even allows the payment of speculative future damages in exchange for a general release.  As stated in the Notice of Joinder submitted to this Court by the Governor and Attorney General of Louisiana and the Memorandum of Law previously provided to this Court by the State of Mississippi, 33 U.S.C. § 2715(b)(2) expressly prohibits extinguishing claimants' legal rights when "Final damages" are paid.

The Attorney General of Mississippi respectfully submits that trying to determine the future is not required by OPA and not *permitted* by OPA.  OPA only addresses "interim, short-term damages" because "interim, short-term damages" are the best means of compensating an

injury that is on-going, long-term and often results in latent damages.  This view of OPA's remedial scheme is borne out by the limitations period within OPA itself, which runs not from the date of the "incident" or oil spill, but rather from "the date on which the injury and its connection with the discharge in question were *reasonably discoverable with the exercise of due care*."  33 U.S.C.A. § 2712(h)(2) (emphasis added).

If BP, through the GCCF, merely complies with its statutory obligations under OPA to pay interim, short-term damages, then there is no need to conduct a costly and time consuming debate over whether Dr. Tunnell's expert report, or any other such expert report, is right or wrong.  Simply requiring BP, through the GCCF, to pay all legitimate claims for interim, short term damages, without any Release required, is the only and best means to serve the remedial purposes of OPA and to avoid a wasteful and protracted battle-of-the-experts regarding the proposed GCCF Methodology.

The Attorney General of Mississippi respectfully submits that the Court should enter an Order that imposes:

1.      a permanent stay on the implementation of the Methodology and "Final Payment" scheme;

2.      a requirement that all claims be immediately processed as "interim claims" consistent with 33 U.S.C. § 2705(a); and

3.      a prohibition on the use of any Releases, as is consistent with 33 U.S.C. § 2715(b)(2).

In addition, to ensure this Court's Order is fully implemented, the Attorney General of Mississippi respectfully suggests that the Court should consider the appointment of Monitors to

16

oversee the operations of the GCCF and to provide reports to the Court on the implementation of the directives of the Court.

### III.  The Oil Spill Liability Trust Fund is Not a Viable Appeal Alternative

Contrary to the recent assertions of Mr. Feinberg and BP, the OSLTF does *not* provide an adequate process to "appeal" decisions of the GCCF.  Pursuant to federal law, the OSLT Fund is limited to total expenditures of $1 billion "*per incident*."  26 U.S.C. § 9509(C)(2)(A).  As currently drafted, this law does not make exceptions for an incident of the unprecedented magnitude of the Deepwater Horizon spill.  As of November, 2010, a United States Government Accountability Office study indicated that only about $400 million of the $1 billion allocated for this incident remained in the Fund,[22] and it has presumably further decreased since that time.  The remaining $600+ million has been spent on state and federal government response activities. Although BP has supposedly repaid that money to the federal government, the amount is still counted against the $1 billion limit on payments attributable to this incident from the Fund. Thus, at best, only $400 million (and likely much less) remains in the OSLTF to compensate individuals and businesses, as well as federal, state and local governments, that are not adequately compensated by BP and other responsible parties.

Furthermore, the National Pollution Funds Center ("NPFC") has a limited number of staff members available to process all claims submitted to the Fund, for this and every other oil spill. There are not sufficient personnel at the NPFC to act as the appeals board for a half a million or more Claimants – as there could be here.  Accordingly, the OSLTF does not provide a viable

---

[22]Deepwater Horizon Oil Spill: Preliminary Assessment of Federal Financial Risks and Cost Reimbursement and Notification Policies and Procedures, GAO-11-90R, November 12, 2010, (available at http://www.gao.gov/products/GAO-11-90R).

appeals process for GCCF claims determinations, and resorting to the OSLTF is not a viable

alternative to cure OPA violations or to rectify erroneous claims decisions by the GCCF.

## CONCLUSION

A review of the OPA deviations and deficiencies in the publicly available methodologies

(including GCCF Protocols), reinforces the need for an Order from this Court directing BP and

the GCCF to fulfill their commitments to provide greater transparency in the GCCF process.

Because BP, Mr. Feinberg and the GCCF have demonstrated an inability or unwillingness to

accede to the requests of countless state and federal officials to bring the GCCF claims process

into compliance with the mandates of OPA, the Attorney General of Mississippi respectfully

submits that this Court should appoint Monitors for each State, under the direction of the MDL

Court, to ensure that this Court's remedial Orders are adhered to by BP, Mr. Feinberg and the

GCCF.[23]

---

[23]Indeed, the need for vigilant, dedicated Monitors to oversee the implementation of this Court's remedial orders is demonstrated by BP's recent violations of the express terms of this Court's February 2nd Order.  Despite the Court's clear mandate to "[r]efrain from referring to the GCCF, Ken Feinberg, or Feinberg Rozen, LLP (or their representatives), as 'neutral' or completely 'independent' from BP" and admonition that "[i]t should be clearly disclosed in all communications, whether written or oral, that said parties are acting for and on behalf of BP in fulfilling its statutory obligations as the 'responsible party' under the Oil Pollution Act of 1990," on February 9th and 13th, BP sent the following communication to the public, including potential claimants, through its Facebook page (http://www.facebook.com/BPAmerica):

> Have thoughts about the proposed criteria that could be used to evaluate your Gulf oil spill claim?  The Gulf Coast Claims Facility –*administered independently from BP by Kenneth Feinberg* – has published its proposed methodology and will be available from February 2-16 for public comment.  To see the criteria and get other official claims info, visit the link below.

(Emphasis added).

For the foregoing reasons, and those expressed in his earlier filings with this Court, the Mississippi Attorney General respectfully submits that the GCCF claims processes, outlined in the EAP Protocol, the Final Claims Protocol, the Methodology, and the Release, violate OPA, state law, and basic principles of fairness and due process.   Accordingly, the Mississippi Attorney General respectfully requests that the Court grant the relief and remedial measures outlined in this brief.

Respectfully submitted, this the 18th day of February, 2011.

_____
JIM HOOD, ATTORNEY GENERAL FOR THE STATE OF MISSISSIPPI *EX REL*. THE STATE OF MISSISSIPPI

_____
MARY JO WOODS, MSB NO. 10468
SPECIAL ASSISTANT ATTORNEY GENERAL

Office of the Attorney General
Post Office Box 220
Jackson, Mississippi 39205
Telephone No. (601) 359-3680
Facsimile: (601) 359-2003
E-mail: mwood@ago.state.ms.us

## <u>CERTIFICATE OF SERVICE</u>

I, Mary Jo Woods, Special Assistant Attorney General of the State of Mississippi, do

hereby certify that on this date, I filed the foregoing document using the Court's ECF system

which will send notification of such filing to all counsel of record in this proceeding.

THIS the 18th day of February, 2011.

/s Mary Jo Woods
MARY JO WOODS, MS BAR NO. 10468
SPECIAL ASSISTANT ATTORNEY GENERAL

Office of the Attorney General
Post Office Box 220
Jackson, Mississippi 39205
Telephone:  (601) 359-3680
Facsimile:  (601) 359-2003
E-mail:  mwood@ago.state.ms.us