**STATE OF MISSISSIPPI**



**JIM HOOD**
ATTORNEY GENERAL

February 10, 2011

Mr. Kenneth Feinberg, Esquire
Feinberg Rozen, LLP
The Willard Office Building
1455 Pennsylvania Ave., NW, Suite 390
Washington, DC 20004-1008

Re:   Final Request for Transparency to Claims Process and
      Access to Files by Coastal Attorneys General

Dear Mr. Feinberg:

During our telephone conversation last week regarding Judge Carl Barbier's order, I asked for a meeting with you and BP U. S. General Counsel Jack Lynch in my office to see if we could reach an agreement to give the claims process some transparency by giving the coastal Attorneys General or a court appointed, neutral auditor access to the claims database. Unfortunately, although you agreed to at least meet, Mr. Lynch has declined to do so.

Even before you took over the claims process, Mr. Lynch agreed to give the coastal Attorneys General access to BP's ESIS claims database. The attached correspondence reflects several of my written requests for access to the claims database. In addition, I raised this issue with you in our meetings together in Biloxi on July 30, 2010, in Fort Lauderdale on December 1, 2010, as well as in a telephone conversation on October 15, 2010. During our meetings, and in your letter to me dated October 26, 2010, you agreed to provide me the requested data and to make your staff available to work with my office to establish a means of sharing GCCF claims information. Despite your assurances, no progress whatsoever has been made toward that goal. In fact, during a telephone conference with representatives from all of the Gulf Coast Attorneys General on December 16, 2010, Camille Biros and Jackie Zins made clear that the GCCF is unwilling to work cooperatively to provide us with any kind of access to the GCCF's claims database. Instead of giving our office access to the files or database, your firm merely hired a Jackson law firm for us to call with questions - no documents and no access.

I have agreed in the past to place some limitations on the access of my office to the



WALTER SILLERS BUILDING  •         ON, MISSISSIPPI 39205-0220
TELEPHONE           ) 359-3441

**EXHIBIT**

A

claims files, databases and claims offices and to sign confidentiality agreements. Alternatively, I have even agreed to let the Department of Justice audit the files. However, given Judge Barbier's findings and his request for more briefing on the validity of the releases and transparency of the process, I am no longer willing to accept the meager access to information which you and your firm have offered. Therefore, I am again requesting that you provide my office complete, unfettered access to the GCCF's claims database, claims offices, personnel, and files. The GCCF should enter an agreement with the coastal Attorneys General appointing them, or their designees, as truly independent monitors of the GCCF's claims process. I propose using the attached documents outlining a monitoring agreement the Attorneys General used in the Ameriquest settlement as a model to develop a similar agreement here.

Finally, Judge Barbier's call for additional briefing on the validity of the GCCF's Release and Covenant Not to Sue ("the Release"), prompts me to demand that the GCCF agree to discontinue use of the Release until the court has ruled on the issue. Let me be clear: I am not asking for you to stop paying claims. In fact, you should immediately begin paying interim claims as is required by OPA. Just stop requiring Mississippi victims to sign a release.

Thank you for at least agreeing to meet with me. I look forward to your written response to my requests.

Sincerely yours,

Jim Hood
Attorney General

cc:   Jack Lynch, Esq.
      Professor Francis McGovern

    

**Gulf Coast State Attorneys General**

| Troy King | James D. "Buddy" Caldwell | Bill McCollum | Jim Hood | Greg Abbott |
|---|---|---|---|---|
| Attorney General | Attorney General | Attorney General | Attorney General | Attorney General |
| State of Alabama | State of Louisiana | State of Florida | State of Mississippi | State of Texas |

Rupert Bondy
Group General Counsel
BP P.L.L.C.
International Headquarters
1 St James's Square
London, SW1Y 4PD
UK

Stephen R. Winters, Esq.
Associate Group General Counsel
Refining and Marketing, Global
BP America Inc.
4101 Winfield Road – 4W
Warrenville, Illinois 60555

Mr. Doug Suttles
Chief Operating Officer
BP Exploration & Production Inc.
200 Westlake Park Boulevard
Houston, Texas 77079

Dear Messrs. Bondy, Winters & Suttles:

As the Attorneys General for the five Gulf Coast states, we write concerning the Deepwater Horizon oil spill that threatens our coasts and shared natural resources—as well as the livelihood of our coastal citizens and communities.

In the wake of the tragic loss of human life that has already occurred, our top concern now must be the well-being of the precious environmental and wildlife resources of our states. Protecting the fragile coastal ecologies and economies is critical to preserving the ongoing sustainability of our coastal communities. From the fisherman and shrimpers who rely directly upon the Gulf for their income, to the local businesses that are sustained by our fishing communities, and the small businesses that thrive on coastal tourism, this oil spill threatens the health and safety of our coastal communities. In addition, if the oil spill is not fully remediated, it could be an ecological and economic disaster for all of our states.

At a time when local communities are struggling with budget shortfalls, coastal towns and cities cannot afford to fund the necessary mitigation and clean-up efforts. The same is true for each of our states. Yet without the necessary financial resources it will be impossible to both protect and restore the Gulf. As a result, we are focused on working—hopefully cooperatively—with BP and others to ensure that our state and local governments, as well as our citizens and communities, have access to the financial resources necessary to prevent further environmental degradation, mitigate future ecological damage, and fully

restore the Gulf to its natural state, as well as to compensate for any economic losses suffered on an individual, corporate, and governmental level.

BP has extensive liability for the consequences of this spill, including but not limited to under the Oil Pollution Act of 1990. Indeed, Mr. Tony Hayward, your Chief Executive, has publicly accepted responsibility for the oil spill on BP's behalf.

With that in mind, we appreciate the statement that BP issued recently reaffirming its commitment to "pay all necessary and appropriate clean-up costs" and detailing claims procedures for those seeking reimbursement. Further, we understand that yesterday morning BP provided $25 million each to Louisiana, Florida, Alabama, and Mississippi to pay for mitigation and remediation efforts. These up-front payments—in addition to the payments that BP has already begun making to reimburse expenses incurred by state and local governments—reflect an important step in the right direction and show that BP has begun to make good on its promise to fully fund the protection and clean-up of our coastline. While we appreciate BP's demonstrated commitment thus far, the Mississippi Canyon #252 site is still releasing oil into the Gulf and clean-up efforts are expected to last for months or longer—so additional resources will undoubtedly be necessary before our coast has been properly remediated.

We must consider all appropriate measures to preserve taxpayer dollars and maximize the financial resources available to fund this massive clean-up and recovery effort. Because current indications suggest that the magnitude of the damage inflicted and losses expected will very likely exceed the total amount of money currently in the Oil Spill Liability Trust Fund, we request that BP memorialize its public statements and provide further assurances going forward as to paying all legitimate claims that stem from this oil spill —which will allow us to advise our states on how best to plan for the future.

Additionally, to help facilitate the flow of accurate and timely information between our offices and BP, we request that you assign an individual to serve as our point of contact on this matter. Doing so will ensure that each of our offices can quickly and effectively communicate with BP about any problems, concerns or questions that arise during the clean-up effort.

Finally, although we appreciate BP's commitment to cooperation thus far, there are multiple outstanding questions about the cause and ultimate effect of the oil spill. Thus, while all of our efforts are concentrated on the environmental impact of this disaster, it is certainly possible that there may be governmental investigations at some point in the future. Accordingly, we would ask that BP and any of your affected employees or affiliated organizations preserve any documents, data compilations (including electronically recorded and stored data), tangible objects or other information relevant to the explosion of the Deepwater Horizon oil rig, the resulting oil spill or the clean-up effort in the form in which they currently exist until further notice. Regardless of BP's current retention policy, please ensure that the appropriate person within each entity takes all necessary measures to avoid the destruction or modification of any such records.

We look forward to your prompt response on this important matter.

Sincerely,

| Troy King | James D. "Buddy" Caldwell | Bill McCollum | Jim Hood | Greg Abbott |
| Attorney General | Attorney General | Attorney General | Attorney General | Attorney General |
| State of Alabama | State of Louisiana | State of Florida | State of Mississippi | State of Texas |



**bp**

John E. Lynch, Jr.

Global Exploration and Production
Global Supply and Trading
US General Counsel

BP America, Inc.
501 Westlake Park Blvd.
Houston, TX 77079
USA

Direct: 281-366-1500
Main: 281 366 2000
Fax: 713-558-3444

May 7, 2010

Greg Abbott
Attorney General
State of Texas
300 W. 15th Street
Austin, TX 78701

James D. "Buddy" Caldwell
Attorney General
State of Louisiana
1885 N. 3rd Street
Baton Rouge, LA 70802

Jim Hood
Attorney General
State of Mississippi
Walter Sillers Building
550 High Street
Suite 1200
Jackson, MS 39201

Troy King
Attorney General
State of Alabama
500 Dexter Avenue
Montgomery, AL 36130

Bill McCollum
Attorney General
State of Florida
PL-01, The Capitol
400 S. Monroe Street
Tallahassee, FL 32399-0140

Dear Attorneys General Abbott, Caldwell, Hood, King and McCollum:

I would like to thank each of you for taking the time to meet with Mark Holstein and me yesterday. We appreciate your concerns and appreciate the value of opening and continuing a productive dialogue. We value your input and ideas. To that end, I want to restate my offer to be your point of contact for any reason, at the address and phone number above or via my mobile phone: 1 713.417.0744.

As we agreed, BP will respond in writing to your May 5, 2010 letter to Mr. Bondy, et. al. early next week. However, I did commit to you that we would respond today to an issue that I believe was of concern to each of you. I confirm that no person asserting a claim or receiving payment for interim benefits through our claims process will be asked or required to sign a release or to waive any rights or assert additional claims, to file an individual legal action, or to participate in other legal actions associated with this oil spill.

Please do not hesitate to contact me with any questions or concerns.

Very truly yours,

John E. Lynch, Jr.

JEL/gg

bp

**John F. Lynch, Jr.**
Global Exploration and Production
Global Supply and Trading
US General Counsel

BP America, Inc.
501 Westlake Park Blvd
Houston, TX 77079
USA

Direct: 281-366-1700
Main: 281-366-2000
Fax: 713-353-9345

May 10, 2010

Greg Abbott
Attorney General
State of Texas
399 W. 15th Street
Austin, TX 78701

James D. "Buddy" Caldwell
Attorney General
State of Louisiana
1885 N. 3rd Street
Baton Rouge, LA 70802

Jim Hood
Attorney General
State of Mississippi
Walter Sillers Building
550 High Street
Suite 1200
Jackson, MS 39201

Troy King
Attorney General
State of Alabama
500 Dexter Avenue
Montgomery, AL 36130

Bill McCollum
Attorney General
State of Florida
PL 01, The Capitol
400 S. Monroe Street
Tallahassee, FL 32399-0140

Dear Attorneys General Abbott, Caldwell, Hood, King and McCollum:

As we agreed in our meeting last week, and stated in my letter of May 7, 2010, I write to respond to your letter of May 5, 2010.

BP intends to take responsibility for responding to the MC 252 spill. BP is a responsible party under the Oil Pollution Act. As our chief executive has already stated publicly, it is BP's position that the cap on liability under the Oil Pollution Act is not relevant. BP will pay necessary clean up costs associated with the spill and legitimate claims for other loss and damage.

I attach an information sheet that provides additional detail and information regarding BP's claims process. We have tried to anticipate the types of claims we might receive and to develop a general approach that is responsive, practical and fair. Among the examples we discussed at our meeting are claims for lost profits incurred by businesses impacted by the oil spill. BP agrees that businesses can establish the amount of their losses using either or both their 2009 and 2008 profit statements. We will address these claims in a reasonable time. BP also agrees to consider claims for loss of tax revenues incurred by your states, municipalities and counties.

Beginning immediately, BP will make available to your designated state agency a daily report regarding claims activity within your state. These reports will contain: the number of claims filed by category; the number of open, closed and denied claims; and the amount of compensation paid as of the date of the report. Please identify the single point of contact in your state for this information.

You have also inquired about document and evidence preservation. As I told you, BP is already under document hold demands, subpoenas and other requests by federal agencies. In addition, BP is subject to at least two court orders in pending litigation.

Beginning shortly after the incident, and before BP became subject to these hold orders, BP instituted document and evidence preservation protocols in anticipation of government investigations and litigation. I can assure you that we are making all reasonable efforts to do this professionally and thoroughly. As I know you will understand, BP and others remain engaged in efforts to stop the flow of oil. This large scale effort includes, and will continue to include work on the well, the riser pipe, the Blowout Preventer (BOP), and related equipment. This is being done under the supervision and control of the Unified Command. It inevitably involves alteration of portions of this equipment, which we are performing with the knowledge and concurrence of federal agencies. We trust that your requirement that BP "avoid the destruction or modification" of evidence excepts the necessary work we are undertaking to stop the flow of oil. If this is not the case, please let me know as soon as possible.

Please do not hesitate to contact me with any questions or concerns.

Very truly yours,

John E. Lynch, Jr.

JEL/sp

Attachment

cc: R. Bondy
    D. Suttles

**Fact Sheet - Claims and procedures for Deepwater Horizon Incident**

- BP takes responsibility for responding to the Deepwater Horizon oil spill. We will clean it up. BP has established a robust process to manage claims resulting from the Deepwater Horizon Incident

- BP will pay all necessary clean-up costs.

- BP is committed to pay legitimate claims for other loss and damage caused by the spill - this may include

  - Clean-up Expenses: Necessary and appropriate cost of assessing and mitigating impact of oil contamination, incurred by federal or state governments and/or others including local governments.

  - Damages to Natural Resources.

  - Personal Injury: As caused by the oil spill.

  - Loss of Real and Personal Property: Repair or replacement of personal property damaged by oil contamination.

  - Lost income: Lost wages/income caused by the impact of the spill. This would include anyone who has lost income as the result of the spill.

  - Commercial Losses: Lost earnings/profit and business interruption losses caused by the impact of the oil spill.

**Call Center for Deepwater Horizon Incident Claims**

BP has established a call center for oil spill related claims. The toll free number for the claims hotline is **1-800-440-0858** and is available 24 hours a day, 7 days a week

- The call center is manned by the catastrophic loss division of ESIS, a national loss adjusting company with deep expertise in adjusting oil spill claims that will process initial claims. The claims hotline is available 24/7. As an alternative, claimants can also visit one of BP's local claims centers that will also be staffed with adjusters

- ESIS will collect information regarding the claim/loss.

- The claim is then assigned to an adjuster, who will contact the claimant. If the loss is small, it will be handled over the phone, with the claimant providing documentation by mail, e-mail or fax.

- If the loss is larger, the adjuster will meet with the claimant to obtain additional information and documentation. Damaged property will be inspected and photographed. A repair/replacement estimate may be written.

- For Individual Losses, the adjuster will determine the amount of lost time that the individual has been unable to work. They will typically request pay stubs, trip tickets, license verification and sales receipts.

- For Commercial Losses, the adjuster will determine the amount of time the business is not operational. They will request financial records including relevant profit and loss statements and tax returns. ESIS will consider past and current business profits to determine the best measure of actual loss.

- For both Commercial and Individual Loss of Income ("LOI") claims, BP will provide interim payments to claimants who are not receiving ordinary income or profit as a result of the oil contamination. This will continue for as long as the oil spill causes the claimant's loss of income.

- For LOI claims, the claims process will be expedited and these claims will be evaluated promptly. As described above, the adjuster will require some substantiation of income impacted by the spill, but will make a reasonable effort to keep the documentation requirements to a minimum.

- Reasonable efforts will also be made to provide interim payments to claimants within 48 hours of receipt. The claimant will then be set up for regular (we anticipate monthly) payment for as long as the loss continues to be caused by the oil spill. **A release or other waiver of legal rights, including the ability to file or participate in legal action, will not be required in exchange for the interim or subsequent LOI payments.**

- The ESIS adjuster will verify documentation and calculate the amount of all claimed losses, including LOI claims. Some claims, other than LOI, will justify interim payments while the entirety of the claim is evaluated or during the duration of the spill event.

- BP will not require a release or any other waiver of rights at such time as the claim is filed or at the time that interim payments are made.

- If a claim is rejected, the claimant will be notified in writing that no payment will be made, and the reason for that decision.

**STATE OF MISSISSIPPI**



**JIM HOOD**
ATTORNEY GENERAL

May 11, 2010

Mr. John E. (Jack) Lynch Jr.
Global Exploration and Production
Global Supply and Trading
US General Counsel
501 WestLake Park Boulevard
Houston, TX  77079

Re:    Request for Additional Assurances

Dear Mr. Lynch:

Thank you for your prompt letter of May 10, 2010, in response to the joint letter from the Gulf Coast Attorneys General dated May 5, 2010. In it, you state that BP will not raise the caps under the Oil Pollution Act against individuals or states and that no claimant against the BP fund will waive its right to file or join a suit later. If my interpretation of your letter is not correct, please send me a letter or email advising me otherwise.

As a veteran of the insurance litigation after Katrina, I learned it is in everyone's interest that claims be paid quickly through a transparent claims process with no caps and no waivers. As I told you during our meeting, the people affected by the oil disaster will be looking to their attorneys general to assess the fairness of the BP claims process. During our meeting I explained that I would need more information and written assurances before I try to explain the BP claims process to our citizens.

In order for me to fully embrace the BP claims process and recommend it to the affected Mississippians, I must have written commitments from BP that it will do the following: (1) establish a website with a link on BP's homepage on which claimants may file claims electronically; (2) accept an independent monitor of the claims process; (3) provide my office with a claims manual describing the claims process with same being made available on your website and at your claims centers; (4) assure that any waivers signed by claimants or boat owners are effectively revoked, and submit to me a list of all of the claimants in Mississippi who signed these waivers and their contact information; and (5) disclose to me the maximum number of barrels per day that the well is capable of emitting.

As I explained to you in our meeting, any assertion by BP of federal preemption of potential state claims or removal by BP to federal court and consolidation of these claims would be viewed with disdain by the states. Consequently, the final assurance I need before agreeing to endorse the BP claims process is BP's written agreement that it will not assert

federal preemption and will not remove to federal court or attempt to consolidate claims asserted by the states.

Pursuant to your request, I hereby designate my assistant, Melanie Webb, to receive the daily updates for the State of Mississippi on the claims handling process. Please email daily the number of claims pending, the type of claims, how many have been paid, and the total amount of payments to date for each affected state to mwebb@ago.state.ms.us.

Please let me know when I can expect a response from you regarding these critical questions. I look forward to hearing from you and to working with BP to ensure that all individuals, private companies, and governmental entities are fully compensated for all losses associated with this event.

Sincerely yours,

Jim Hood
Attorney General

bp



## John E. Lynch, Jr.

Global Exploration and Production
Global Supply and Trading
US General Counsel

**BP America, Inc.**
501 Westlake Park Blvd.
Houston, TX 77079
USA

May 17, 2010

Jim Hood
Attorney General
State of Mississippi
Walter Sillers Building
550 High Street
Suite 1200
Jackson, MS 39201

Dear General Hood:

Direct: 281-366-1500
Main: 281-366-2000
Fax: 713-658-3944

I want to thank you for your letter of May 11, 2010.

As I said in my May 7, 2010 letter to you and the other Attorneys General, no person submitting a claim through our claims process will be asked to sign a release or waive any rights to assert additional claims, to file an individual action, or to participate in other legal actions associated with the spill.

I can also confirm the commitments I made to you and your colleagues at our recent meeting and in my letter of May 10, 2010 regarding funding of claims for economic loss. To further demonstrate that commitment, I have attached recent correspondence among BP's Tony Hayward and Secretaries Napolitano and Salazar.

We certainly agree with you that a claims process that is efficient and fair is important to your state and to BP. We are working hard to meet our legal obligations and to do what is right. We look forward to your support.

You have asked for clarification of several specific items:

1.) <u>On-line claims form/website</u>: We appreciated your suggestion and we are working to implement it. By early next week, we expect to have a specific BP spill response website. That site will contain information on the claims process, guidance regarding how to file a claim, and a link to an on-line claims form that will allow a claimant to submit their information on-line, as an alternative to calling the 1 800 number. We will notify you when that site is available.

2.) <u>Independent Monitor</u>: BP is not opposed to this idea in concept, but we would need to understand more about this proposal. As you may know, the National Pollution Funds Center, United States Coast Guard, has responsibility for monitoring and assuring the integrity of BP's claims process and is actively overseeing the program. In addition, BP expects to conduct independent audits of our processes. Therefore, we believe the program already has significant oversight. However, if you believe something more is appropriate, BP will consider it.

3.) <u>Claims Manual</u>: I have checked with ESIS Catastrophic Loss. They do not have a "claims manual", as such. I'm attaching to this letter a claims process workflow from ESIS. We agree that a description of the claims process that is easily understood and used by claimants would be useful. We are developing that in parallel with the website referenced above and expect to have that available early next week.

4.) <u>Vessels of Opportunity</u>: In response to your request I attach a list of those Mississippi charterers receiving the initial incorrect charter contract. We are beginning this week to reach out to these charterers to inform them in writing that BP will not enforce the waiver and indemnity provisions of this incorrect contract. Further, if any charterer prefers, we will replace and re-execute the existing contract with the corrected form.

5. <u>Well Flow</u>: That is a question for the Unified Command so I must defer.

We acknowledge your request to provide Ms. Webb with daily reports regarding claims activity and payments in Mississippi and will begin to transmit the reports immediately.

Finally, we also acknowledge your requests that BP agree to certain conditions associated with litigation that might be brought by your state. While we remain hopeful that you will not see a need to bring litigation against BP, I cannot agree to your broad request for a waiver of BP's potential rights.

I am available to discuss these matters at your convenience.

Very truly yours,

John E. Lynch, Jr.

JEL/sja

Attachments

cc: R Bondy
    D Suttles

**STATE OF MISSISSIPPI**



**JIM HOOD**
ATTORNEY GENERAL

June 8, 2010

John E. (Jack) Lynch Jr.
Global Exploration and Production
Global Supply and Trading
US General Counsel
501 WestLake Park Boulevard
Houston, TX  77079

Re:    Claims Process Follow-Up

Dear Mr. Lynch:

I regret that I was unable to participate in last week's conference call, but I have been fully apprised by my staff of the discussion regarding oversight of the claims process.  Although I think it would be useful for BP to implement a claimant questionnaire or other means of assessing the fairness and accessibility of the claims process, I stress the importance of providing the State Attorneys General direct access to the ESIS database to allow for our independent review and oversight.  This need is particularly critical given the current lack of an independent monitor over the process.  In addition, I have been advised that investigators from our Consumer Protection Division were turned away by workers at your claims center in Hancock County when they identified themselves and requested to speak with claimants regarding the process.  Therefore, I am requesting that you expedite the procedure for allowing our office direct access to the database, and, in the meantime, please advise your employees in the claims centers not to impede our legitimate investigation of the claims process.

Regarding the independent monitor, I understand that you requested that we send you the names of potential candidates.  In response, I suggest that you contact Ben Goren, Managing Director of FTI Consulting (312-759-8100), and Joseph Spinelli, Managing Director of Navigant Consulting (212-554-2603).  Both of these firms have considerable experience in environmental and legal issues and have come highly recommended to me.

Finally, I again request BP's written agreement that it will not assert federal preemption, and will not remove to federal court or attempt to consolidate claims

asserted by the states.  During our last conversation, you asked me to specify the types of claims we would anticipate asserting, in order that you might more knowledgeably consider my request.  The potential claims on behalf of the State of Mississippi would include all damages recoverable under the Mississippi Air and Water Pollution Control Law, our Coastal Wetlands Protection Act, and common law causes of action such as public nuisance, strict liability, negligence, and trespass.  We still hope to resolve all liability issues and recovery of clean-up costs, natural resource damages, lost revenues, and other damages related to the oil spill without the need for litigation.  However, should the need arise to pursue relief in the courts on behalf of the state, I would expect BP to agree that it will not remove the case to federal court.  These are clearly state law claims that Mississippi should be allowed to assert and have decided in a Mississippi state court.

I look forward to hearing from you and to continuing our coordinated efforts to resolve these issues.

Sincerely yours,

Jim Hood
Attorney General

**STATE OF MISSISSIPPI**



**JIM HOOD**
ATTORNEY GENERAL

December 7, 2010

Mr. Mark Holstein
BP Legal
501 Westlake Park Blvd.
Houston, Texas 77079

Dear Mark:

Thank you again for taking the time to meet with the Gulf Coast Attorneys
General in Fort Lauderdale last week to discuss developments regarding the Gulf
Coast Claims Facility ("GCCF").  BP has indicated commitment to restoring the
economic and natural resource losses resulting from the Deepwater Horizon Oil
Spill ("the Spill"), and I appreciate BP's attention to my concerns.

One of the issues that BP immediately addressed in the aftermath of the Spill was
the need for establishment of a fair, efficient, and transparent claims process to
restore losses suffered by our citizens, private businesses, and government
entities.  To advance the goal of transparency, BP was working with the
Department of Homeland Security to allow the states access to the ESIS
database, and you had assured the State Attorneys General that you were close
to achieving that goal.  Since the inception of the GCCF, and transfer of claims
information to its database, those efforts have halted and Ken Feinberg has failed
to cooperate with the Attorneys General on this critical issue.  Therefore, I am
requesting that you resume responsibility for the task and work with my staff and
the GCCF to coordinate an appropriate level of information access that will allow
the Attorneys General to conduct an independent review of the GCCF's
operations while maintaining the claimants' privacy rights.  In addition, for those
claimants who wish to allow one of our offices access to their entire claims file to
provide them assistance, I propose that we implement a privacy release such as
the one I attach here.

Thank you for your assistance in this matter.  I look forward to working with you to
improve the GCCF and to recommit its purpose of serving our Gulf Coast
communities.

Sincerely yours,

Jim Hood
Attorney General

WALTER SILLERS BUILDING  •  POST OFFICE BOX 220  •  JACKSON, MISSISSIPPI 39205-0220
TELEPHONE (601) 359-3680  •  TELEFAX (601) 359-3441

## MARY JO WOODS - RE: Meeting today at NAAG

| | |
|---|---|
| **From:** | "Holstein, Mark E" <Mark.Holstein@bp.com> |
| **To:** | "MELANIE WEBB" <MWEBB@ago.state.ms.us>, <PhillipsT@ag.state.la.us>, <terrellm@ag.state.la.us>, <RTambling@ago.state.al.us>, "MARY JO WOODS" <MWOOD@ago.state.ms.us>, "Daniel Cantor" <Daniel.Cantor@APORTER.COM>, "Thomas Milch" <Thomas.Milch@APORTER.COM>, <a.kanner@kanner-law.com>, "Trish Conners" <Trish.Conners@myfloridalegal.com>, <jay.dyer@oag.state.tx.us>, "Lynch, John E Jr. (Jack)" <john.lynch@uk.bp.com>, "Brian (SMO) Hauck" <Brian.Hauck@usdoj.gov>, "Thomas J. (SMO) Perrelli" <Thomas.J.Perrelli@usdoj.gov> |
| **Date:** | 12/8/2010 6:08 PM |
| **Subject:** | RE: Meeting today at NAAG |
| **CC:** | "Ken Feinberg" <KFeinberg@feinbergrozen.com>, "Jackie Zins" <JackieZins@feinbergrozen.com> |

Dear General Hood,

Thank you for the opportunity to meet with you and your colleagues in Washington yesterday. As we discussed, BP agreed to share your concerns regarding the final claims protocol and release with the GCCF and I agreed to share your concerns with Mr. Lynch and BP management. We have done so. While Mr. Feinberg will speak for himself, we believe that he intends to proceed with the final claims process and BP does not intend to interfere. As we discussed, BP supports offering claimants a choice to settle now or to avail themselves of the other options available.

Finally, I acknowledge receipt of your letter of this date. We intend to work with your staff to find the best way to share claims data in BP's control (the "ESIS" data). Thank you.

**Mark Holstein**
BP Legal
501 Westlake Park Blvd.
Houston, Texas 77079
Phone: 281-366-8895
Mobile: 630-362-8167

---

**From:** MELANIE WEBB [mailto:MWEBB@ago.state.ms.us]
**Sent:** Tuesday, December 07, 2010 9:19 AM
**To:** PhillipsT@ag.state.la.us; terrellm@ag.state.la.us; RTambling@ago.state.al.us; MARY JO WOODS; Daniel Cantor; Thomas Milch; Holstein, Mark E; a.kanner@kanner-law.com; Trish Conners; jay.dyer@oag.state.tx.us; Lynch, John E Jr. (Jack); Brian (SMO) Hauck; Thomas J. (SMO) Perrelli
**Cc:** MELANIE WEBB; jhunter@NAAG.ORG
**Subject:** Meeting today at NAAG

Meeting today at the National Association of Attorneys General Office

**Time:** 12:45 pm
**Location:** Executive Conference Room. NAAG Office
 8th Floor - 2030 M Street, NW, Washington DC
NAAG main phone: 202-326-6000
**Emergency Contact:** Jeffrey Hunter, NAAG
**Directions:** The NAAG Office is located across the street from the St. Gregory Hotel.
on M Street NW - go to the 8th floor  - The meeting room holds 7 people & we have 7 attending.  It is crucial to let me know if

anyone else was hoping to attend person.

**Attending in Person:**

MS Attorney General Jim Hood
Brian Hauck, USDOJ
Mark Holstein - BP
Porter - BP
Dan Cantor – Arnold
Trey Phillips - Louisiana AG's Office
Allan Kanner - Louisiana AG's Office (representing)

**Confirmed Attending via phone:**

Mary Jo Woods - Mississippi Attorney General's Office
Trish Conners - Florida Attorney General's Office
Texas Attorney General's Office
Louisiana Attorney General's Office

**Dial in Information:**

Reservationless-Plus Toll Free Dial-In Number (US & Canada): (866) 634-1110
Reservationless-Plus International Dial-In Number:(770) 659-3580
United Kingdom 08000320432
Conference code: 793 319 0985

Thanks all - Melanie Webb -
Direct:  601-359-3692  (no voice mail)
Cell:  336-402-2410  (always with me)

# ARNOLD & PORTER LLP

**Anne P. Davis**
Anne_Davis@aporter.com

202.942.6197
202.942.5999 Fax

555 Twelfth Street, NW
Washington, DC 20004-1206

December 14, 2010

Attorney General Jim Hood
State of Mississippi
Walter Sillers Building
Post Office Box 220
Jackson, Mississippi 39205-0220

Dear Attorney General Hood:

I write on behalf of BP in response to your letter of December 7, 2010, to Mark Holstein regarding transparency into the Deepwater Horizon claims process in which you request that we assist in facilitating access to claims data for the State Attorneys General. As you are aware, the GCCF is operating independently and BP does not itself have direct access to the GCCF claims files or data. As such, any request for access to the GCCF data or files would have to be made through the GCCF. However, BP does continue to have access to data in the ESIS system that relates to the (pre-GCCF) BP claims process, and we would be happy to look into how we can best provide access to data provided to BP by claimants without compromising the privacy rights of the claimants. We will endeavor to provide you and your staff with a proposed data report as soon as possible.

You also attached to your letter a proposed form of release to be executed by claimants who wish to allow your office access to their GCCF claim files. Again, any particulars regarding release of GCCF materials would have to be negotiated through the GCCF. However, we enclose herewith a modified proposed release form that would allow a claimant to request that BP release to your office any materials the claimant submitted to the (pre-GCCF) BP claims process.

We look forward to working with your staff on this issue.

Sincerely,

Anne P. Davis

Enclosure
cc: John E. Lynch Jr.
    Mark Holstein

Washington, DC    New York    London    Brussels    Los Angeles    Century City    Northern Virginia    Denver

From:        "Davis, Anne" <Anne.Davis@APORTER.COM>
To:          MARY JO WOODS <MWOOD@ago.state.ms.us>, MELANIE WEBB
<MWEBB@ago.state.ms.us>
Date:        2/1/2011 10:54:48 AM
Subject:     RE: Fwd: Letter to Attorney General Hood

Dear Ms. Woods:

 Thank you for your email, and I apologize for the delay in getting back to you - we wanted to be sure that
the following information was available before we made any proposal.  In any case, we now believe
(subject to a test run on the export) that we could provide a data cut for all Mississippi claims that includes
the following fields as they existed as of the date the claims process was transferred to the GCCF.  In
other words, the status of the claims and information contained in the data cut would be as of August 23,
2010.  This information is contained in the database of the Worley group, which provided the adjusters for
the BP claims process.  The fields below would allow your office to review non-identifying claim
information at an individual claim level that would indicate basic information about the nature of the claim
(the claim factor), when it was received, transferred to an adjuster, etc., whether any payments had been
made on the claim, whether any documents submitted by the claimant might be available (which might
later be retrieved subject to the claimant's consent), whether and how many payments had been made on
the claim, and in what amounts.

I am attaching a "data dictionary" for the fields below that provides a brief descriptor of the data that would
be contained in each field.  Please let us know if this data proposal is something you all would be
interested in.  Thanks.

Anne Davis

Basic Claim Info:
Claimnumber
Lossdate
City
State
Zip
Receivedate
Claimstatus (as of 8/23/2010)
Claim Assigned (date)
Contact Letter Mailed (date)
Contact Date (date)

Attached Documents:
Documenttype
Filename
Stamp (time added)
Subletternumber
Receivedate

Subletter Attached Documents:
Subletter number
Filename
Stamp
Documenttype

Subletter Information:
Subletternumber
Factor

Assets:
Assettype
Sublettemumber
Stamp (time added)

Check Information:
Sublettemumber
Claimchecktype_id
Checkamount
Stamp
Requestdate
Issuedate
Manualcheck
Approvaldate
Clientapproved
Clientapproveddate
Checkstate

-----Original Message-----
From: MARY JO WOODS [mailto:MWOOD@ago.state.ms.us]
Sent: Wednesday, January 26, 2011 11:39 AM
To: MELANIE WEBB; Davis, Anne
Subject: Re: Fwd: Letter to Attorney General Hood

Ms. Davis,

To my knowledge, we have not received anything further from your office
on this issue.  Could you please advise me if you already sent us a
proposed data report, and if not, an estimated time frame for doing so?

Thank you,

Mary Jo Woods
Special Assistant Attorney General
Mississippi Attorney General's Office
Post Office Box 220
Jackson, Mississippi  39205
(601) 359-3020 (phone)
(601) 359-2003 (fax)
mwood@ago.state.ms.us

This message is being sent by the Office of the Attorney General for
the State of Mississippi and is intended only for the use of the
individual to which it is addressed and may contain information that is
legally privileged or confidential.  If you are not the intended
recipient, you are hereby notified that any distribution or copying of
this message is strictly prohibited.  If you have received this message
in error, please notify the original sender or the Office of the
Attorney General at (601) 359-3680 immediately by telephone or by return
e-mail and delete this message from your computer.  Thank you.

>>> "Davis, Anne" <Anne.Davis@APORTER.COM> 12/16/2010 4:44 PM >>>
Ms. Wood:

Please find attached a letter sent by first class mail on December 14

to Attorney General Hood in response to his letter to Mark Holstein of
BP Legal dated December 7.

Sincerely,

Anne Davis

---

U.S. Treasury Circular 230 Notice

Any U.S. federal tax advice included in this communication (including
any attachments) was not intended or written to be used, and cannot be
used, for the purpose of (i) avoiding U.S. federal tax-related penalties
or (ii) promoting, marketing or recommending to another party any
tax-related matter addressed herein.

---

This communication may contain information that is legally privileged,
confidential or exempt from disclosure. If you are not the intended
recipient, please note that any dissemination, distribution, or copying
of this communication is strictly prohibited. Anyone who receives this
message in error should notify the sender immediately by telephone or by
return e-mail and delete it from his or her computer.

---

For more information about Arnold & Porter LLP, click here:
http://www.arnoldporter.com

---

U.S. Treasury Circular 230 Notice

Any U.S. federal tax advice included in this communication (including any attachments) was not intended
or written to be used, and cannot be used, for the purpose of (i) avoiding U.S. federal tax-related penalties
or (ii) promoting, marketing or recommending to another party any tax-related matter addressed herein.

---

This communication may contain information that is legally privileged, confidential or exempt from
disclosure. If you are not the intended recipient, please note that any dissemination, distribution, or
copying of this communication is strictly prohibited. Anyone who receives this message in error should
notify the sender immediately by telephone or by return e-mail and delete it from his or her computer.

---

For more information about Arnold & Porter LLP, click here:
http://www.arnoldporter.com

## MARY JO WOODS - Fwd: Draft Protocol

| | |
|---|---|
| **From:** | MELANIE WEBB |
| **To:** | WOODS, MARY JO |
| **Date:** | 1/20/2011 5:23 PM |
| **Subject:** | Fwd: Draft Protocol |

>>> "Ken Feinberg" <KFeinberg@feinbergrozen.com> 7/12/2010 12:21 PM >>>
Dear Attorney General Hood:

I attach the Gulf Coast Claims Facility Draft Protocol arising out of the BP Oil Spill and the decision of the Obama Administration and BP to establish a process for considering claims for compensation.  It is only that - a draft. I welcome comments from you and your office, but request that any comments be transmitted to me by 5 PM this Thursday July 15. Only the federal government, the Governors of Alabama, Florida, Louisiana and Mississippi and the Attorneys General of these four states plus Texas are receiving this advance copy, which is not being released to the press or the public. Thanks.

Ken

Kenneth R. Feinberg
Feinberg Rozen, LLP
1455 Pennsylvania Avenue, NW
Suite 390
Washington, DC  20004-1008
Office: 202 962 9280
Email:  kfeinberg@feinbergrozen.com

    

**Gulf Coast State Attorneys General**

| Troy King | James D. "Buddy" Caldwell | Bill McCollum | Jim Hood | Greg Abbott |
|---|---|---|---|---|
| Attorney General | Attorney General | Attorney General | Attorney General | Attorney General |
| State of Alabama | State of Louisiana | State of Florida | State of Mississippi | State of Texas |

July 14, 2010

Kenneth R. Feinberg, Esq.
Feinberg Rozen, LLP
1455 Pennsylvania Avenue, NW
Suite 390
Washington, DC   20004-1008

     RE: Draft Protocol

Dear Mr. Feinberg:

As the Attorneys General for the five Gulf Coast states, we are writing to express our collective concerns over the development of the Protocol for the Gulf Coast Claims Facility ("GCCF"). Many of our offices first received the draft Protocol Monday afternoon, although the Protocol is in its ninth draft.

We will timely submit specific comments on the draft, but we first want to express our dismay over the lack of cooperation and collaboration on this Protocol. Our offices have been involved with the claims process since its inception and have valuable insight that would have benefitted the Protocol's formulation.

The GCCF claims process must be efficient and fair. Indeed, our offices are responsible for many of the advances in the claims process that have occurred to date. We have been, and remain, available to provide input on developing a claims process that works. It is imperative that a meeting be scheduled with our offices as soon as possible.

We look forward to your prompt response on this matter.

Sincerely,

| Troy King | James D. "Buddy" Caldwell | Bill McCollum | Jim Hood | Greg Abbott |
|---|---|---|---|---|
| Attorney General | Attorney General | Attorney General | Attorney General | Attorney General |
| State of Alabama | State of Louisiana | State of Florida | State of Mississippi | State of Texas |

# FEINBERG ROZEN, LLP

THE WILLARD OFFICE BUILDING
1455 PENNSYLVANIA AVENUE, N.W.
SUITE 390
WASHINGTON, D.C. 20004-1008

(202) 371-1110 (TELEPHONE)

(202) 962-9290 (FAX)

WRITER'S DIRECT DIAL NUMBER

NEW YORK OFFICE
780 3RD AVENUE
26TH FLOOR
NEW YORK, NEW YORK 10017-2024
TEL: (212) 527-9600
FAX: (212) 527-9611

July 14, 2010

Honorable Troy King
Attorney General
State of Alabama
500 Dexter Avenue
Montgomery, AL 36130

Honorable Jim Hood
Attorney General
State of Mississippi
P.O. Box 220
Jackson, MS 39205

Honorable James D. "Buddy" Caldwell
Attorney General
State of Louisiana
P.O Box 94005
Baton Rouge, LA 70804

Honorable Greg Abbott
Attorney General
State of Texas
PO Box 12548
Austin, TX 78711-2548

Honorable Bill McCollum
Attorney General
State of Florida
The Capitol PL-01
Tallahassee, FL 32399-1050

RE: Gulf Coast Claims Facility Draft Protocol

To The Gulf Coast State Attorneys General:

I am in receipt of your letter of July 14th. I have already had the opportunity with some of you either to meet in person individually or participate in a telephone conversation with you and/or your staff. I hope during the next few weeks to return to your respective states and meet with you in person.

I wish to assure you that my only objective in designing and administering the Gulf Coast Claims Facility is to serve the people of the Gulf Region. I have no other agenda. By agreement of both the Federal Government and BP, I am the Administrator of an *independent* process that answers neither to the Federal Government nor BP. It is a purely private facility that offers a purely voluntary process for interested claimants.

What I circulated to each of you a few days ago was merely a draft Protocol; I made it clear that I welcomed input from each of you in order to gauge your thinking as

to how the Protocol could best be improved to meet citizen needs. I understand and respect your concern that you be afforded sufficient time to engage in a dialogue with me as to how the Protocol can be further improved. I welcome that dialogue and will be contacting each of you during the next few days to schedule subsequent meetings and/or telephone conference calls with this objective in mind.

I assure you that I share your concerns.

Sincerely,

Kenneth R. Feinberg
Administrator, Gulf Coast Claims Facility

KRF/abs

**From:**     MARY JO WOODS
**To:**       MARY JO WOODS
**Date:**     Tue, Jul 20, 2010  3:39 PM
**Subject:**  Fwd: Gulf Coast Claims Facility

>>> MARY JO WOODS 7/16/2010 4:06 PM >>>
Mr. Feinberg,

Our office is in receipt of comments from other state and federal entities addressing the Gulf Coast Claims Facility draft protocol's compliance with OPA and other issues.  In addition, please find attached our initial recommendations for the overall claims process related to the need for fairness, accessibility, and simplicity.  We look forward to working with you in coordination with the other states and federal government on this matter.

Thank you,

Mary Jo Woods
Special Assistant Attorney General
Mississippi Attorney General's Office
Post Office Box 220
Jackson, Mississippi 39205
(601) 359-3020 (phone)
(601) 359-2003 (fax)
mwood@ago.state.ms.us

This message is being sent by the Office of the Attorney General for the State of Mississippi and is intended only for the use of the individual to which it is addressed and may contain information that is legally privileged or confidential.  If you are not the intended recipient, you are hereby notified that any distribution or copying of this message is strictly prohibited.  If you have received this message in error, please notify the original sender or the Office of the Attorney General at (601) 359-3680 immediately by telephone or by return e-mail and delete this message from your computer.  Thank you.

Recommendations Regarding the Gulf Coast Claims Facility

    1.     The Gulf States Attorneys General should have full access to the claims data, centers, and personnel.

    2.     Security measures must be taken to protect the sensitive and personal nature of information maintained on the claims database.

    3.     Claimants should be allowed to submit claims at conveniently located claims centers, via telephone, or through an online claims procedure. The online process should allow submission of both the claim form and supporting documentation. In order to deter the filing of fraudulent claims, claimants should be required to provide a notarized, sworn statement that the information is true subject to the penalty for perjury. A pdf version of the notarized, sworn statement would be sufficient for claims filed on-line. The form of the sworn statement should be approved by the Coastal attorneys general and the Department of Justice.

    4.     Claim forms, a claims manual, and FAQ's should be available in each claims center and on the internet. All claim forms and the claims manual should be reviewed and approved by the Gulf States Attorneys General.

    5.     Translators should be available in each claims center and through the telephonic claims process. Translated claims materials must also be available.

    6.     In addition to a sufficient number of claims handlers, at least one claims manager should be present and available in each claims center, and claims managers should be available by telephone and an online "chat" mechanism to address problems during the claims application process.

7.    Claims centers should have operational, toll-free telephones available for claimants so that they may obtain advice or further information to complete their claims. Contact information for the local State Attorney General's Office should be posted in each claims center.

8.    When a claimant calls the telephonic claims center, the wait time for the next available claims assistant should be announced, and the claimant should be given the option of leaving a message to be returned by a claims assistant.

9.    Claimants should be provided with secure online access to their claims files to check the status of their claims and to submit any required follow-up documentation. To accommodate claimants without internet access, any claimant should be provided with a copy of his/her claims file within five business days of receipt of the claimant's written request.

10.    Deadlines for responding to claims need to be set. Any request for further documentation or information should be sent to a claimant no later than five business days after submission of the claim. Within twenty-one days of submission of an interim, short-term claim, payment should be made or the claimant should be advised that the claim is being denied. Any claim not paid within twenty-one days of submission shall be deemed denied.

11.    Payment of interim, short-term claims should be made on a monthly or weekly basis. All payments should be made available either by check or by wire transfer.

12.    Lost income documentation should be allowed based on revenues dating back to 2007.

13.    Alternative forms of documenting income loss in addition to tax returns, such as receipts and/or sworn affidavits, should be allowed.

14.     Failure to obtain requested documentation that is not the fault of, or is beyond the control of, the claimant shall not be held against the claimant.  In those instances, alternative documentation shall be accepted, such as a sworn affidavit explaining the situation signed by the claimant or the third party in control of the required documentation.

15.     Claims should not be denied based on a random distance limit in relation to the shoreline.  All claims incurred as a result of the oil spill should be paid regardless of the claimant's physical location.

16.     Claimants should be compensated for time and expense incurred in filing their claims.  A minimum payment should be set for all legitimate claimants because the trouble of having to submit a claim at all is a direct and proximate result of the oil spill.  Claimants who incur greater costs due to the need for professional assistance or excessive documentation requirements should be allowed to present proof to recoup those losses.

17.     Instead of an appeals procedure, a panel should be appointed by the Gulf States Attorneys General to monitor the claims handling process. As previously recommended, the panel should consist of former Gulf States Attorneys General – one from each affected state, if possible.

18.     If an appeals procedure is retained in the protocol, it should not be binding, and claimants should retain their right to pursue other avenues of relief, including litigation.

## MARY JO WOODS - Fwd: Advance Payment Emergency Protocol

| | |
|---|---|
| **From:** | MELANIE WEBB |
| **To:** | WOODS, MARY JO |
| **Date:** | 1/20/2011 5:26 PM |
| **Subject:** | Fwd: Advance Payment Emergency Protocol |

>>> "Ken Feinberg" <KFeinberg@feinbergrozen.com> 8/9/2010 8:48 AM >>>
To All:

I attach my latest working draft of the Gulf Claims Facility Advance Payment Emergency Protocol. I have incorporated many of the suggestions made by the State Attorneys General. Most importantly, as mentioned in Biloxi, this protocol governs only emergency payments, with no release required by any claimant. I plan to go public with this emergency protocol next week, in advance of the August 23 roll out date for the Gulf Coast Claims Facility. Accordingly, I welcome any additional comments to the attached. I will also be prepared to meet with you and/or the Attorneys General themselves shortly after Labor Day to discuss a Final Protocol, including appropriate release language. It is important that we continue to coordinate. I thank you.

Ken


Kenneth R. Feinberg
Feinberg Rozen, LLP
1455 Pennsylvania Avenue, NW
Suite 390
Washington, DC  20004-1008
Office: 202 962 9280
Email: kfeinberg@feinbergrozen.com

## MARY JO WOODS - Fw: BP Emergency Claims Protocol

**From:**    ATTORNEY GENERAL JIM HOOD
**To:**       MARY JO WOODS
**Date:**    8/13/2010 11:51 AM
**Subject:** Fw: BP Emergency Claims Protocol

Jim:

Thanks so much for yesterday's email. I do hope you are taking a few days off to recharge the batteries. Please note that the emergency claims protocol defers for the time being your major concerns about the Final Protocol e.g. the nature of the releases, etc. I plan to continue working on the emergency protocol and will do my best to incorporate some of your important constructive suggestions. I will forward another version to you later today or tomorrow. I want to wrap up the emergency protocol early next week and go public with it sometime next week in advance of the August 23 start date for the Gulf Coast Claims Facility. I also hope (wishful thinking?) that you – with your national credibility – will encourage claimants in Mississippi to take advantage of the emergency claims process without surrendering any of their rights to litigate in the future. I very much appreciate your input and acknowledge that I should have done a better job of brining you into the drafting process earlier rather than later. But, I will send you another version of the emergency protocol and welcome any additional comments. Frankly, your support means a great deal to me. Once you receive my next version, feel free to contact me over the weekend by telephone (202 256 3877) or on Monday in my Washington office 202 962 9280 or by email.

Thanks for reaching out to me. Mississippi is lucky to have you as AG.

Ken

**From:** ATTORNEY GENERAL JIM HOOD [mailto:JHOOD@ago.state.ms.us]
**Sent:** Wednesday, August 11, 2010 12:37 PM
**To:** Ken Feinberg
**Subject:** BP Emergency Claims Protocol

Dear Ken,

I noticed that the BP Emergency Claims Protocol contained very few of the suggestions we provided you in our alternative protocol. Are you going to incorporate more of them in another document such as a claims manual? If so, please advise me which of our provisions you intend to include and by what process do you intend to so advise the public?

If you prefer to talk with me about it, please call me. I will be out of the office the remainder of the week, but if you will email me with a time and number to call you I will call you back.

Thanks,

Jim Hood

## MARY JO WOODS - Fwd: Attached Draft Emergency Protocol

| | |
|---|---|
| **From:** | MELANIE WEBB |
| **To:** | WOODS, MARY JO |
| **Date:** | 1/20/2011 5:28 PM |
| **Subject:** | Fwd: Attached Draft Emergency Protocol |

>>> "Ken Feinberg" <KFeinberg@feinbergrozen.com> 8/13/2010 9:34 AM >>>
To All:

I continue to make changes in the Draft Gulf Coast Claims Facility Protocol for Emergency Advanced Payments to reflect ongoing input from the AGs and Department of Justice. I would appreciate your constructive criticism concerning the attached no later than the close of business on Monday, August 16. I plan to release a final Emergency Protocol next week, well in advance of the August 23 start up date for the Gulf Coast Claims Facility. I hope that all of you will find a way to support this effort at the prompt distribution of emergency funds to eligible claimants. I will then turn my attention to drafting a Final Protocol and believe it would be beneficial for all of us to meet in person to discuss the most controversial features of the Final Protocol e.g. the subject of release language, etc. I propose that this meeting occur sometime in September. I thank you for your valuable and constructive input and look forward to working with you. .

Ken

Kenneth R. Feinberg
Feinberg Rozen, LLP
1455 Pennsylvania Avenue, NW
Suite 390
Washington, DC   20004-1008
Office: 202 962 9280
Email: kfeinberg@feinbergrozen.com

 

August 16, 2010

Mr. Kenneth R. Feinberg, Esq.
Feinberg Rozen, LLP
The Willard Office Building
1455 Pennsylvania Avenue, NW, Suite 390
Washington, D.C., 20004-1008

Dear Mr. Feinberg:

We are in receipt of your August 8 and 13, 2010, emails transmitting drafts of the Gulf Coast Claims Facility Protocol for Emergency Advance Payments. We appreciate the opportunity to review this protocol and offer comments. As we have mentioned, the claims process is extremely important to the citizens who have been affected by this disaster, and it is pertinent for the Attorneys General to continue encouraging you to incorporate best practices into the protocols in order to ensure that claimants are fully compensated for the losses they have suffered from this disaster.

We have reviewed the Advance Payment Emergency Protocol and while we are pleased to see some positive changes, there are still a few major concerns with this Protocol. These concerns are outlined below in more detail:

Comments:

1. A claimant's right to appeal, and the time frame within which to do so, a final claim decision is triggered by the presentment of a claim. However, on page 1 of the Protocol for Emergency Advance Payments, you state that the "submission of a claim for an emergency payment does not constitute presentment under OPA." Furthermore, the Protocol does not outline any process for the appeal of a decision on an emergency claim. A denial of an interim payment will have a negative impact on a claimant and it is important that they have some recourse to challenge that decision. The statement violates Oil Pollution Act (OPA) requirements and therefore should be eliminated from the Protocol and replaced with a

statement that submission of a claim for an emergency payment constitutes presentment under OPA.

2. The Period for Application for Emergency Advance Payment (page 7) continues to incorporate a 90 day time frame within which claimants can submit emergency claims. At this time, it is still unknown how long claimants might suffer damages. Furthermore, it is also highly unlikely that claimants will be able to calculate the full extent of their losses in 90 days. Without knowing what long-term impacts might result from this disaster, it will be impossible for claimants to submit real claims for final payments by November 24, 2010. The period for application of emergency advance payments should be, at a minimum, six months.

3. The most recent draft Protocol amends the language for "personal injury" claims to restrict such claims to "physical injury/death." As has been previously brought to your attention, there is great concern over the need for mental health injuries to be compensable through the Protocol. This change in terminology appears to unjustly eliminate from the claims process persons with mental health claims and unduly limit the scope of the Protocol.

4. In our meeting with you on July 30, you indicated that you were willing to incorporate a large majority of our recommendations for the mechanics of the overall claims process related to the need for fairness, accessibility, and simplicity, as outlined in Attorney General Hood's communication to you dated July 20. Those issues are not addressed in your Emergency Protocol, and it may be more appropriate to document such details in the Final Protocol or in a separate claims manual. However, we would like assurance from you that these critical protections and assistance for claimants will be implemented in your claims process.

Thank you for providing us with an opportunity to comment on this Protocol. We encourage you to make the changes suggested above so that we can support the claims process and recommend it to our citizens.

Sincerely,

James. D. "Buddy" Caldwell
Attorney General
State of Louisiana

Jim Hood
Attorney General
State of Mississippi

## MARY JO WOODS - Fwd: Attached - Final Emergency Protocol & Criteral

| | |
|---|---|
| **From:** | MELANIE WEBB |
| **To:** | WOODS, MARY JO |
| **Date:** | 1/20/2011 5:28 PM |
| **Subject:** | Fwd: Attached - Final Emergency Protocol & Criteral |

>>> "Ken Feinberg" <KFeinberg@feinbergrozen.com> 8/19/2010 1:28 PM >>>

To All:

I attach the final Emergency Protocol I plan to release tomorrow, along with a Summary Criteria Narrative Explanation suggested by Attorney General Hood. I thank you all for your constructive input and assistance. I have adopted many of your suggestions - particularly the "presentment" language urged by Attorney General McCollum.
It is my hope that the various Gulf Coast AGs will be supportive of my emergency compensation efforts commencing next Monday, August 23.  Your credibility in supporting the Program is very important. I also pledge to each of you my commitment to meet with you in the weeks and months ahead as we strive to fashion a Final Settlement Protocol (including important release language).

Ken


Kenneth R. Feinberg
Feinberg Rozen, LLP
1455 Pennsylvania Avenue, NW
Suite 390
Washington, DC  20004-1008
Office: 202 962 9280
Email:  kfeinberg@feinbergrozen.com

**STATE OF MISSISSIPPI**



**JIM HOOD**
ATTORNEY GENERAL

September 20, 2010

Mr. Kenneth R. Feinberg, Esq.
Feinberg Rozen, LLP
The Willard Office Building
1455 Pennsylvania Avenue, NW, Suite 390
Washington, D.C., 20004-1008

Re:   Claims Reports

Dear Mr. Feinberg:

Within only a few days following the Deepwater Horizon blowout and resulting oil spill, the Gulf Coast State Attorneys General called a meeting with counsel for BP to address their concerns on behalf of the impacted states. Foremost among the issues raised by the Attorneys General was the need for the establishment of a fair, efficient, and transparent claims process to restore losses suffered by our citizens, private businesses, and governmental entities. As part of that process, BP agreed and immediately began to compile and provide us with daily claims summary reports through its contractor, ESIS.

In my discussions and correspondence with you, I have reiterated the continued need for these daily accounts, and I understood you to be in agreement with me on this issue. However, to date, my office has received only seven status updates from the GCCF, the last one dated September 3, 2010, more than two weeks ago. This interruption of the daily reports directly interferes with our ability to monitor the progress of the GCCF and thwarts the need for transparency in the process. I strongly urge you to resume providing the Gulf Coast State Attorneys General with daily GCCF status updates in compliance with the agreement reached with BP before your assumption of the role as Claims Administrator.

In addition, we have received no reply to a September 16, 2010, request that a GCCF point of contact be designated for issues related to Mississippi claimants. I would also appreciate consideration of this request.

Thank you for your assistance in this matter.

Sincerely yours,

Jim Hood
Attorney General

WALTER SILLERS BUILDING  •  POST OFFICE BOX 220  •  JACKSON, MISSISSIPPI 39205-0220
TELEPHONE (601) 359-3680  •  TELEFAX (601) 359-3441

cc:     The Honorable James D. Caldwell
        Attorney General
        State of Louisiana

        The Honorable Greg Abbott
        Attorney General
        State of Texas

        The Honorable Troy King
        Attorney General
        State of Florida

        The Honorable Bill McCollum
        Attorney General
        State of Florida

STATE OF MISSISSIPPI



**JIM HOOD**
ATTORNEY GENERAL

October 11, 2010

Mr. Kenneth Feinberg, Esquire
Feinberg Rozen, LLP
The Willard Office Building
1455 Pennsylvania Ave., NW, Suite 390
Washington, DC 20004-1008

Re:   Deepwater Horizon Claims

Dear Mr. Feinberg:

As you are aware, one of the concessions made by BP to the Gulf Coast State
Attorneys General in our early discussions about BP's claims process was that BP
would provide us with daily status reports. BP had also agreed to arrange for the
Attorneys General to have direct access to the claims database maintained by ESIS.
In our discussions, you agreed to continue providing daily status reports at the
inception of the GCCF.

Given the number of complaints lodged against the GCCF by Mississippi claimants,
I am compelled to conduct an investigation into the GCCF process through the
authority and duty vested in our Consumer Protection Division. Your staff has
demonstrated an overall lack of cooperation and communication with my office in
providing simple daily data reports. Combined with the lack of specific claims
information, this problem makes it impossible to make an independent assessment
of the fairness and effectiveness of the GCCF. Therefore, I am requesting that you
provide me with direct access to your database to evaluate the GCCF's compliance
with our Consumer Protection Act. Should you decline to provide this access
voluntarily, I will have to resort to issuance of an administrative subpoena to obtain
the requested information.

In addition, there recently has been a significant amount of media attention regarding
the compensation you are receiving from BP for your services. When we last spoke,
you did not have any specific information about what you would be paid or any
finalized contract memorializing other details of your agreement with BP to
administer the GCCF. Since apparently that is no longer the case, I am further

requesting that you send me copies of all agreements between you or your firm and BP, including any compensation agreements.

Thank you for your cooperation in this matter.

Sincerely yours,

Jim Hood
Attorney General

CC.  Associate Attorney General Thomas Perrelli

**GCCF**   Gulf Coast Claims Facility
www.GulfCoastClaimsFacility.com

October 18, 2010

The Honorable Jim Hood
Attorney General
State of Mississippi
Walter Sillers Building
P.O. Box 220
Jackson, Mississippi 39205-0220

Dear Attorney General Hood:

I am in receipt of your letter of October 2010, and hasten to reply. I appreciate the concerns you express in your letter and wish to assure you of my determination to make the Gulf Coast Claims Facility ("GCCF") as efficient and effective as possible in serving the needs of those individuals and businesses in Mississippi damaged by the oil spill.

In your letter, you state that you are "compelled to conduct an investigation into the GCCF process through the authority and duty invested in our Consumer Protection Division." You state that my staff "has demonstrated an overall lack of cooperation and communication ... in providing simple daily data reports." I respectfully disagree. The GCCF has been transparent and open in offering and distributing daily detailed statistics concerning the processing of individual and business claims. These daily reports are available to you and your staff either through daily distribution or online via the GCCF's website. (Please see the attached Binder with examples of GCCF daily reports which are available through distribution or via the GCCF website. The statistics shown on these reports are through October 16, 2010.) These data reports are updated daily and are readily available. The Overall Program Statistics Report (Tab A of the Attached Binder) is distributed daily to numerous government representatives and entities who have requested receipt on a daily basis, including State Attorneys General. I am happy to add as many of your staff to this distribution list as you deem appropriate. Attachments B, C and D are too large for distribution and are available via the GCCF website. I have attached the first pages of each of the GCCF's more detailed claimant specific reports (by ID number) which are available with daily updates on the GCCF website. This report contains information regarding the nature of the loss, the claim type, the date the claim was received, the status of the claim, whether it was filed initially with BP, the State of the loss and the amount paid.

Second, you note "the lack of specific claims information ..." You are correct. I am obligated to protect the privacy and confidentiality rights of claimants, whether they are individual persons or businesses. Experience demonstrates that any breach of such privacy and confidentiality will chill claimants from filing claims with the GCCF and receiving compensation. Your well intentioned determination to seek "specific claims information" ignores these considerations. I doubt very much that claimants would welcome your attempt to gain access to such private information. If a claimant seeks your assistance, and consents to the GCCF providing you confidential information, I will readily cooperate. We have experienced, state specific representatives available to assist Congressional and other governmental agencies in determining the status of constituents' claims. But I cannot be a party to an agreement with the State of Mississippi's Attorney General to gain access to such "specific claims information" without the claimant's consent. I must, therefore, respectfully disagree with your attempt to secure "direct access to [the GCCF] database."

Third, you express the desire "to make an independent assessment of the fairness and effectiveness of the GCCF." I welcome such an assessment and stand ready to meet with you and/or your designees to answer any questions posed by your office. I note that, in less than two months, the GCCF has already paid and approved payment to over 70,000 claimants of almost $1.5 billion; almost 6,000 Mississippi claimants have already been paid almost $125,000,000. This, without any obligation on the part of the claimants to waive any rights in return for these Emergency Advance Payments. I believe the statistics speak for themselves.

Finally, your letter references the issue of my personal compensation. I have already forwarded to you the independent Report prepared by former Attorney General Michael Mukasey concerning this subject, which was publicly released over a week ago. I enclose an additional copy. There are no "compensation agreements" or any other "agreement," entered into between me and BP.

Attorney General Hood, I very much appreciate the concerns and constructive criticism formalized in your October 11 letter. I am obligated to assist you in any way I can, and am pleased to do so. I stand ready to meet with you to discuss the most effective way to serve the citizens of Mississippi damaged by the oil spill. I thank you for your interest.

Sincerely,

Kenneth R. Feinberg
Administrator
Gulf Coast Claims Facility

Enclosure

STATE OF MISSISSIPPI



**JIM HOOD**
ATTORNEY GENERAL

October 21, 2010

Mr. Kenneth Feinberg, Esquire
Feinberg Rozen, LLP
The Willard Office Building
1455 Pennsylvania Ave., NW, Suite 390
Washington, DC 20004-1008

Re:    Deepwater Horizon Claims

Dear Mr. Feinberg:

Thank you for your prompt response to my previous letter to you regarding my
concerns about the GCCF process and my request for access to your claims
database. While I share your interest in protecting the privacy of Mississippi citizens,
as I explained to you in our telephone conversation I am not seeking any personal
documentation about claimants that would violate that privacy interest. Any
identifying information, such as names and social security numbers, could be
redacted to allow my investigators to effectively evaluate claims handling practices
without disclosing any otherwise confidential data. My IT staff is available to work
with you to establish a secure computer access that would satisfy your privacy
requirements, as BP and ESIS had agreed to do before you took over as the claims
administrator.

Also, my office continues to receive complaints from claimants whose claims have
remained stagnantly "under review" since the inception of the GCCF. This pervasive
problem leads me to believe that your team is understaffed to adequately handle the
number and complicated nature of claims being filed. The report from Michael
Mukasey, which I appreciate your sending me, indicates that the members of your
firm will personally review high-dollar claims, claims with recommended payment
lower than that requested by the claimants, and claims slated for rejection. Although
it is a laudable goal to strive for consistency in the claims review process, it seems
overly optimistic to think that the seven members of your firm alone will be sufficient
to perform this weighty task. Similarly, it is my understanding from media reports
that only twenty-five reviewers are available for ultimate decision-making on all
claims submitted to the GCCF. I request that you please provide me with the identity

of those decision-makers, allow me access to them to assist claimants, and suggest that you consider retaining additional personnel to serve in that capacity to accelerate the process. Although I have not yet seen the documentation you promised me regarding the GCCF's claims evaluation procedures, if the instructions to claims reviewers are adequately specific, then consistency should be achievable even with an expanded group of claims handlers.

Thank you for your consideration of these critical matters, and I look forward to further discussions with you regarding the need for continued improvements to the GCCF and its service to the Gulf Coast community.

Sincerely,

Jim Hood

cc:     Jack Lynch, Esquire
        Tom Perrelli, Esquire

GCCF | Gulf Coast Claims Facility
www.GulfCoastClaimsFacility.com

October 26, 2010

Attorney General Jim Hood
State of Mississippi
Walter Sillers Building
PO Box 220
Jackson, MS  39205-0220

RE:    Gulf Coast Claims Facility

Dear Attorney General Hood:

I thank you for your letter of October 21 as part of our ongoing dialogue to make sure that the Gulf Coast Claims Facility ("GCCF") serves the citizens of Mississippi.  I share your interest in that objective.

In your letter, you request additional information concerning Mississippi claimants in order "to effectively evaluate claims handling practices without disclosing any otherwise confidential data."  As you know, the latter is of great concern to me, but I am prepared to try to meet your legitimate concerns by providing you the information you request.  I must redact names, social security numbers/tax ID numbers, addresses, etc., but would be prepared to provide you the specific data which, I believe, you are requesting.  I attach an overall GCCF Program Statistics Report and GCCF Program Statistics Summary for the State of Mississippi.  In addition, I attach details of payments by claimants from the State of Mississippi.  Please advise as how we should move this process forward in an efficient and expedited manner.

You also state that the GCCF "is understaffed to adequately handle the number and complicated nature of claims being filed."  I disagree.  In just the past eight weeks, the GCCF has processed and made payment to 85,286 claimants totaling $1,586,327,890.88.  In Mississippi alone, we have approved payment to 7,907 claimants totaling $144,558,936.50.  True, there are currently 12,045 claims that have been deemed deficient, and an additional 8,700 claims are currently in the evaluation queue to be processed.  But, as to the former, you will note that 7,407 claims have been submitted <u>with no documentation whatsoever accompanying the claim form</u>.  This is not a problem of a lack of GCCF resources.  One may reasonably presume to question

whether such claims will ever be documented and whether they will ever be eligible for payment. We have, nevertheless, requested additional documentation, or other proof, from these claimants. As to the claims currently being processed, this is the result of a recent flood of undocumented filings with the GCCF (with some 50% of the total volume such filings arriving since October 1). Obviously, the citizens of Mississippi and the rest of the Gulf see some value in submitting their claims to the GCCF in the hope of receiving compensation. The filing rate and payment amounts speak for themselves. (I note that 86% of eligible claimants have received either the amount requested in the individual claim forms, or an amount in excess of that requested, clear evidence of GCCF generosity).

Finally, you seek more information concerning media reports "that only twenty-five reviewers are available for ultimate decision-making on all claims submitted to the GCCF." This is incorrect. I offer the following information to assist you in better understanding the design and administration of the GCCF:

1) My Law Firm, Feinberg Rozen, LLP, makes the policy and management decisions underlying the GCCF, and supervises all other subcontractors regarding the GCCF. The intake, review, analyses, determinations and payments of all claims is handled by a large team of specialists including lawyers, technical staff, claims analysts and accountants. This team is responsible, under direction of Feinberg Rozen, LLP, to review every one of the 271,773 claims received to date by the GCCF. Feinberg Rozen, LLP has contracted, and has direct supervision of, the subcontractors listed below to fulfill the responsibility of claims intake, processing, reviewing, evaluating, and distributing payments to eligible claimants.

2) A subcontractor, Brown Greer of Richmond, Virginia, employs approximately 500 people (programmers, senior claims analysts and lawyers) in working for the GCCF. It is Brown Greer that conducts the first round of eligibility review; it employs three shifts of workers who make these eligibility findings seven days a week.

3) A second subcontractor, The Garden City Group, employs approximately 500 people working from regional offices in Melville, New York, Seattle, Washington and Dublin, Ohio. This group is responsible for responding to hundreds of thousands of claimant calls, electronic claims intake, receipt and management of all data, programming, staffing the 1-800 call center (responding to hundreds of thousands of call per day), data processing, document control and payment processing.

4) A third subcontractor, The Worley Company in Hammond, Louisiana, employs approximately 1,300 individuals and is responsible for staffing the 36 claims offices located throughout the five state Gulf region. These

offices assist claimants with in person documentation claim intake and data entry into the system.

5)    A fourth subcontractor, PriceWaterhouse Coopers, employs approximately 15 accountants in assisting Feinberg Rozen, LLP in Washington, DC.

6)    Additional subcontractors, Cowheard and Assurance Accounting Companies together employ a staff of approximately 50 accountants working in the Worley facility in Hammond, Louisiana.

7)    We have also subcontracted with Guidepost, which provides us investigative services designed to discover fraudulent claims which are then referred to the Department of Justice in Washington, DC.

I trust that this detailed information provides you and your staff with a better understanding of the massive infrastructure that is the GCCF.  Media reports that a very small group of individuals are making decisions impacting thousands of claimants, resulting in extended delays, are wildly exaggerated.  Of course, there will always be isolated instances of delay or inconsistency in the evaluation of specific claims; this is inevitable when you establish a program that must respond to over 271,773 claims submissions to date encompassing a 90-day filing window.  But I remind you that this entire emergency program does not require any claimant to waive any rights that may exist in court against BP or any other defendant.

Mr. Attorney General, I look forward to continuing to work with you in a timely fashion.  With this thought in mind, I will shortly be sending you a draft Final Protocol for your review and constructive suggestions.   And, I thank you for your interest in the GCCF.

Sincerely,

Kenneth R. Feinberg
Administrator
Gulf Coast Claims Facility

KRF:shs

Attachments

**MARY JO WOODS - Fw: Draft Final Protocol and Release**

| | |
|---|---|
| **From:** | MELANIE WEBB |
| **To:** | MARY JO WOODS |
| **Date:** | 11/1/2010 5:16 PM |
| **Subject:** | Fw: Draft Final Protocol and Release |

Gentlemen:

I attach my initial effort at a Draft Final Protocol and accompanying release language. It is only a draft; I welcome your comments. There are additional provisions that may yet be added e.g. some type of appeal procedure from my decisions. Please advise, hopefully by the end of this week. Thanks.

Ken

Kenneth R. Feinberg
Feinberg Rozen, LLP
1455 Pennsylvania Avenue, NW
Suite 390
Washington, DC 20004-1008
Office: 202 962 9280
Email: kfeinberg@feinbergrozen.com

**STATE OF MISSISSIPPI**



**JIM HOOD**
ATTORNEY GENERAL

November 3, 2010

Mr. Kenneth Feinberg, Esquire
Feinberg Rozen, LLP
The Willard Office Building
1455 Pennsylvania Ave., NW, Suite 390
Washington, DC 20004-1008

Re:   Draft Final Protocol for the Gulf Coast Claims Facility

Dear Mr. Feinberg,

Thank you for your e-mail of November 1, 2010, circulating your Draft Final Protocol
for the Gulf Coast Claims Facility. I appreciate the opportunity to provide you with
feedback regarding the Protocol. I am in the process of reviewing it and drafting my
comments for you. However, due to other responsibilities and previously scheduled
matters, I will be unable to meet your proposed deadline of Friday, November 4. It
will be sometime early next week before I will be able to respond to your request for
input. Please let me know if this delay will overly inconvenience you. Otherwise,
you may expect to hear from me by Wednesday, November 10.

Thank you in advance for your cooperation in this matter. I look forward to
continuing our discussion of this vital recovery process.

Sincerely yours,

Jim Hood
Attorney General

## MARY JO WOODS - Fwd: RE: From Attorney General Hood

| | |
|---|---|
| **From:** | MELANIE WEBB |
| **To:** | WOODS, MARY JO |
| **Date:** | 1/20/2011 5:21 PM |
| **Subject:** | Fwd: RE: From Attorney General Hood |

>>> Ken Feinberg <KFeinberg@feinbergrozen.com> 11/4/2010 5:04 PM >>>

Ms. Webb:

Please let AG Hood know that Wednesday will be fine.

Thanks,

Ken

**From:** MELANIE WEBB [mailto:MWEBB@ago.state.ms.us]
**Sent:** Thursday, November 04, 2010 4:11 PM
**To:** Ken Feinberg; Susan Schmidt
**Cc:** MARY JO WOODS
**Subject:** From Attorney General Hood

Ms. Schmidt,

Hope you are well – Attorney General Hood asked that I send the attached letter to Mr. Feinberg. The hard copy will follow in the mail.

Please let me know if the attachment doesn't open properly.

Thanks so much!

Melanie

Melanie Webb
Office of Attorney General
P. O. Box 220
Jackson, MS 39205
Ph: (601) 359-3692

STATE OF MISSISSIPPI



JIM HOOD
ATTORNEY GENERAL

November 9, 2010

Mr. Kenneth R. Feinberg, Esquire
Feinberg Rozen, LLP
The Willard Office Building
1455 Pennsylvania Avenue, NW, Suite 390
Washington, D.C., 20004-1008

Re:   Draft Final Protocol

Dear Mr. Feinberg,

Thank you for the extended opportunity to comment on your Draft Final Protocol and Release for the Gulf Coast Claims Facility ("GCCF"). As you have acknowledged, it is critical that the input of all interested parties, including government officials, be considered for the GCCF to succeed in its mission to assist victims of the Deepwater Horizon Oil Spill. Although we lacked sufficient time to submit joint comments, I support the recommendations from my fellow Gulf Coast State Attorneys General. In addition, I provide you the following list of concerns that struck me when reviewing the protocol and release.

1.      Interim payments are limited to a quarterly basis. This provision is not based on OPA or any other applicable law, and it operates to the severe detriment of people injured most by the oil spill who live paycheck to paycheck. Claimants should instead be given the option of receiving monthly interim payments.

2.      Final payments will be offset by any collateral source compensation previously received by claimants. BP should not receive the benefit of collateral source payments. Unless the GCCF or BP intends to reimburse the collateral sources directly for the amount of these offsets, the collateral sources and claimants themselves should be left to decide how to resolve this issue.

3.      The release overall is much too broad, particularly in its application not only to BP but to all responsible parties, despite their lack of participation in the claims process. Only people who are beaten down, poor, and/or desperate would agree to the terms of the proposed release. The excessive breadth of the release will lead the public to believe that the GCCF's goal is not to assist people in the Gulf, but to assist BP in taking advantage of this downtrodden group of people.

4.      The GCCF claims evaluation is limited to injuries "proximately caused" by the spill arising under OPA or for personal injury or death, but the release applies much more broadly to all claims "arising from or relating in any way to" the spill. It is simply unacceptable for BP and all other responsible parties to obtain release for a broader range of claims than the GCCF will even consider paying.

5.      As I have previously discussed with you, claimants should be provided access to volunteer counsel so that they are fully advised of their rights. This need is particularly great given the excessive breadth of the proposed release.

6.      There is no protection provided to preserve claims for minors or incompetents and no protection for unknown, non-discoverable, or latent claims or injuries in the release. Language should be added to the protocol and the release to correct this problem.

7.      As yet, the GCCF has not implemented an appeals process for dissatisfied claimants. One of the federal administration's demands was that a three-judge panel be available to hear appeals of the GCCF's decisions. It is my understanding that you are in the process of creating an appeals process and I hope that you will invite comments from all interested parties in its development. My continuing suggestion to you is that the appeals process should not be binding, and claimants should retain their right to pursue other avenues of relief, including litigation.

8.      The protocol allows disclosure of claimants' private information for purposes of subsequent litigation, among other things. In other words, BP and other responsible parties would have access for their benefit in litigation to the specific claims information you have denied government entities wishing to monitor the GCCF and assist claimants.

This last item leads me to address the persistence of the GCCF's very serious problem with a lack of transparency in the process. When your firm accepted responsibility for the GCCF, one of the promises you made to the federal administration and to the citizens of the Gulf was to improve the claims process, including making it more transparent. If anything, the GCCF claims process is less transparent than that of the initial BP claims process. The information available to claimants regarding claim status is insufficient and no better than BP provided. No explanation of claim status or basis for claim calculations or denials is provided through the online system. In addition, claimants are reportedly unable to speak to anyone from the GCCF to obtain more specific information on their claims. Before the GCCF's inception, BP was working with the Department of Homeland Security to allow the states access to the ESIS database and the State Attorneys General had been assured that they were close to achieving that goal. You, on the other hand, have denied repeated requests by the State Attorneys General for access to

the GCCF database on purported grounds of protecting the privacy rights of claimants. Without further cooperation from you on this issue, we are unable to assist you or the claimants to improve the effectiveness of the process.

Thank you again for the opportunity to offer my opinions regarding the draft protocol and release. I strongly encourage you to continue your efforts to improve the GCCF process and look forward to further discussions with you toward that end.

Sincerely yours,

Jim Hood
Attorney General
State of Mississippi

cc.     Associate Attorney General Thomas Perrelli
        United States Department of Justice

        Attorney General James "Buddy" Caldwell
        State of Louisiana

        Attorney General Greg Abbott
        State of Texas

        Attorney General Troy King
        State of Alabama

        Attorney General Bill McCollum
        State of Florida

        Mr. Jack Lynch
        General Counsel, BP



202.962.9280

November 22, 2010

The Honorable Jim Hood
Attorney General
State of Mississippi
Walter Sillers Building
Post Office Box 220
Jackson, MS  39205-0220

Dear Attorney General Hood:

I want to thank you for your letter of November 9 urging that I make important changes and improvements to the enclosed Gulf Coast Claims Facility ("GCCF") Protocol for Interim and Final Claims ("the Final Protocol"). I have carefully reviewed the proposals made in your November 9 letter and have adopted certain of your suggestions. I do hope you will find the Final Protocol acceptable. I have done my best in considering proposed changes made by State Attorneys General and others.

In particular, I refer to your suggestions in your November 9 letter:

1)  Interim payments remain payable on a quarterly basis; the vast volume of claims make this necessary. However, consistent with your suggestion, "exigent circumstances" will permit interim claims on a monthly basis.

2)  It is my understanding that BP does, in fact, intend to reimburse collateral sources for at least some of the offsets, e.g. unemployment payments made by State Governments.

3)  I have narrowed the release language somewhat to make it clear that physical injury claims will not be released by a Final Payment made to cover lost income, profits or wages. But I deem it critically important – for both claimants and BP – that some finality occur as a result of a GCCF Final Payment.

4)  I do not believe that the Final Protocol, and the language about "proximate causation," limits the scope of OPA in any way. Indeed, I believe that the GCCF will prove to be much more generous than either the Coast Guard or the courts in determining claimant eligibility and appropriate documented damage under OPA. In this regard, I refer you to the enclosed Memorandum of Law prepared by Professor

John Goldberg, Professor of Law at the Harvard Law School, who, at my request, has prepared a comprehensive Memorandum of Law focusing on this very issue. This Memorandum was prepared independently and without the input of anybody at the GCCF. It confirms my view that the GCCF will find eligibility, and calculate damages, well beyond the requirements of OPA.

5)  I assure you that any individual claimant who seeks pro bono counsel to assist him/her in the processing of a GCCF claim will be afforded same.

6)  The Final Protocol adds language to protect claims of minors or incompetents.

7)  At your request, I have inserted a limited appeals process for dissatisfied claimants and/or BP. As you know, such a separate appeals process is not required by OPA and was originally my idea, not that of the Federal Administration (of course, any dissatisfied GCCF claimant already has the option, under OPA, of "appealing" to the Coast Guard or the courts). I am concerned that a new layer of appeals not be used further to delay prompt payment to eligible claimants. Thus, my decision to limit the additional appeals process to only certain claims.

8)  I am mindful of confidentiality concerns when it comes to disclosing private and proprietary information about individual claimants. I have no intention of permitting broad disclosure which would breach these confidentiality concerns, and I do not believe the Final Protocol contemplates otherwise.

Finally, you raise the question concerning "a lack of transparency in the process." I share this concern. But, I do not agree that "the GCCF claims process is less transparent than that of the initial BP claims process." We provide daily statistical reports which inform public officials and all other interested citizens about the quantity and quality of GCCF claims processing. In certain circumstances, we go even further, customizing additional GCCF reports to meet the specific needs of Federal, State and local governments. We have also taken steps in recent weeks to provide additional information to claimants, who seek to know more about the status of their claim or the reasons for the GCCF calculation. I agree that we can do more and are planning – in conjunction with the Final Payment Program – to place additional local individuals "in the field" at the various claims offices in the Gulf, so that individual claimants can express their opinions, or seek information, with a local GCCF representative.

But, I cannot provide any government official with actual access to individual claimant information submitted in confidence to the GCCF. I would be glad to meet with you to discuss how we can assist you in your efforts to help Mississippi claimants without breaching our confidential responsibility to such claimants.

I want to thank you once again for all you have done, and are doing, to help assure the success of the GCCF. I very much appreciate your constructive input and wise counsel concerning many of the terms and conditions of the Final Protocol.

Sincerely,

Kenneth R. Feinberg
Administrator
Gulf Coast Claims Facility

KRF:shs

Enclolsures:   Final Protocol
               Professor Goldberg's Memorandum of Law

    

**Gulf Coast State Attorneys General**

| Troy King | James D. "Buddy" Caldwell | Bill McCollum | Jim Hood | Greg Abbott |
|---|---|---|---|---|
| Attorney General | Attorney General | Attorney General | Attorney General | Attorney General |
| State of Alabama | State of Louisiana | State of Florida | State of Mississippi | State of Texas |

November 24, 2010

Mr. Kenneth R. Feinberg **Via Email: Kfeinberg@feinbergrozen.com**
Feinberg Rozen, LLP
The Willard Office Building
1455 Pennsylvania Avenue, NW, Suite 390
Washington, D.C., 20004-1008

Mr. John E. (Jack) Lynch Jr. **Via Email: john.lynch@uk.bp.com**
Global Exploration and Production
Global Supply and Trading
US General Counsel
501 WestLake Park Boulevard
Houston, TX 77079

Dear Messrs. Feinberg and Lynch:

We are aware that November 23, 2010, was the final deadline for the filing of Emergency Advance Payments with the Gulf Coast Claims Facility ("GCCF"). Today, the GCCF has released the Final Protocol and has made the Protocol available on its website. We appreciate the opportunity that you have provided the Gulf Coast Attorneys General to review the Protocol and offer comments on same. We also appreciate the amendments you have made to the Protocol to address these comments. Nonetheless, we still have a few outstanding concerns regarding the Final Protocol and, particularly, the release associated with final settlements.

We would like to invite you to meet with us to discuss these outstanding concerns. Next week, the National Association of Attorneys General is hosting the winter meeting in Fort Lauderdale, FL. The Gulf Coast Attorneys General have set aside a block of time from 12:15-1:15 on Wednesday, December 1, to meet with you. Please let us know at your earliest convenience whether you are available and amenable to such a meeting.

We look forward to the continued cooperation of BP and the GCCF and the strong working relationship we have established.

Sincerely,

| | | | | |
|---|---|---|---|---|
| Troy King | James D. "Buddy" Caldwell | Bill McCollum | Jim Hood | Greg Abbott |
| Attorney General | Attorney General | Attorney General | Attorney General | Attorney General |
| State of Alabama | State of Louisiana | State of Florida | State of Mississippi | State of Texas |

cc:     Associate Attorney General Thomas Perrelli
        United States Department of Justice

        Mr. Mark Holstein
        Managing Attorney, BP

**From:**      MARY JO WOODS
**To:**        jackiezins@feinbergrozen.com
**Date:**      12/9/2010 3:16:43 PM
**Subject:**   GCCF legal assistance and database

Jackie,

What do we need to do to move forward on coordinating with the GCCF to provide claims data access to the Attorneys General? I never heard anything from you on this issue after our meeting in Fort Lauderdale. Also, I never received a response to my e-mail request for an update on the provision of legal aid to claimants.

Thanks!
Mary Jo

Mary Jo Woods
Special Assistant Attorney General
Mississippi Attorney General's Office
Post Office Box 220
Jackson, Mississippi 39205
(601) 359-3020 (phone)
(601) 359-2003 (fax)
mwood@ago.state.ms.us

This message is being sent by the Office of the Attorney General for the State of Mississippi and is intended only for the use of the individual to which it is addressed and may contain information that is legally privileged or confidential. If you are not the intended recipient, you are hereby notified that any distribution or copying of this message is strictly prohibited. If you have received this message in error, please notify the original sender or the Office of the Attorney General at (601) 359-3680 immediately by telephone or by return e-mail and delete this message from your computer. Thank you.

## MARY JO WOODS - Fw: Draft Documents - GCCF

| | |
|---|---|
| **From:** | MELANIE WEBB |
| **To:** | ATTORNEY GENERAL JIM HOOD, MARY JO WOODS |
| **Date:** | 12/10/2010 4:50 PM |
| **Subject:** | Fw: Draft Documents - GCCF |

Melanie,

Attached are DRAFT, CONFIDENTIAL documents prepared for the Final and Interim Stage of the GCCF.  Ken Feinberg has asked me to forward these to Attorney General Hood per their conversation yesterday.
Hope all is well with you.

Regards,
Camille Biros

**STATE OF MISSISSIPPI**



**JIM HOOD**
ATTORNEY GENERAL

December 13, 2010

Mr. Kenneth R. Feinberg, Esquire
Feinberg Rozen, LLP
The Willard Office Building
1455 Pennsylvania Avenue, NW, Suite 390
Washington, D.C., 20004-1008

Re:   Gulf Coast Claims Facility

Dear Mr. Feinberg,

Thank you for sending me the draft Gulf Coast Claims Facility (GCCF) claims documents that will be used to implement the new final claims protocol and quick payment option. I have reviewed the materials and provide you with the following list of my concerns and suggestions.

1.     The quick payment option adds more complication and potential for confusion by claimants and should not be offered. It will unfairly encourage fast, low-dollar settlements for people who at this point are financially desperate. No justification is provided for the $5,000 and $25,000 Quick payment amounts. The quick payment option benefits BP and the GCCF by resolving more claims on an expedited basis but provides no apparent benefit to claimants. All claims should be evaluated and paid quickly, not just ones where the claimant is willing to sacrifice monetary value for speed. The quick payment option is particularly troubling due to the speculative nature of any estimate of final damages at this point.

2.     The quick payment option may be in violation of OPA's advertising requirements. To my knowledge, none of the Gulf State Attorneys General were aware that this procedure was even being developed.

3.     In the "Summary of Options for Submission of Final and Interim Payment Claims," the first option listed should be for interim payments, not for final claims or quick payments.

4.     In all GCCF documents, any language indicating that the claimant is releasing or waiving claims should be in bold type. Similarly, where the materials state that interim claims do not require a release, that language should be in bold type.

5.     Since state unemployment benefits are being deducted from final payments, and claimants are required to disclose unemployment benefits they've received, the GCCF should provide that information to the states.

6.     Deficiency notices for missing documents should be sent to claimants submitting interim claims. The GCCF should at least send those claimants a denial letter explaining that the reason for denial was inadequate documentation, and specifying what additional documentation is required.

7.    It is my understanding that a legal assistance program for claimants is being developed, and I appreciate your responsiveness to that particular concern of mine. However, the procedure for final payments and quick payments requiring releases should not be implemented in advance of the legal assistance program being available. It is misleading for the GCCF to announce availability of free legal advice for claimants in press statements without clarifying when that program will be operational. Also, information about the legal assistance program and encouraging its use should be included in the claims materials. It is my expectation that you will ensure that the legal assistance program is sufficient to properly handle the volume of GCCF claims in each Gulf Coast State.

8.    If claimants have questions, they are advised to call the GCCF toll free number and ask for "Quick Pay Information." Please confirm that these claimants will be advised regarding all of their options, and not just about the quick payment option.

In addition to these new concerns, the same objections I previously raised in my correspondence to you regarding the GCCF final protocol and release still remain. Although I will not reiterate those issues here, I do ask that you reconsider the improvements and revisions presented to you by all of the Gulf Coast State Attorneys General.

Thank you for the opportunity to review and for your consideration of my comments regarding the GCCF claims materials. I look forward to continuing our discussions on the GCCF and its procedures.

Sincerely yours,

Jim Hood
Attorney General
State of Mississippi

cc.    Associate Attorney General Thomas Perrelli
       United States Department of Justice

       Attorney General James "Buddy" Caldwell
       State of Louisiana

       Attorney General Greg Abbott
       State of Texas

       Attorney General Troy King
       State of Alabama

       Attorney General Bill McCollum
       State of Florida

       Mr. Jack Lynch
       General Counsel, BP

**From:**      MARY JO WOODS
**To:**        jackiezins@feinbergrozen.com
**Date:**      12/13/2010 12:09:00 PM
**Subject:**   conference call

Jackie,

Following up on our conversation this morning, please let me know when you and Camille Biros are
available for a phone conference to discuss GCCF information access as requested by Attorney General
Hood.  I look forward to hearing from you.

Thank you,
Mary Jo

Mary Jo Woods
Special Assistant Attorney General
Mississippi Attorney General's Office
Post Office Box 220
Jackson, Mississippi  39205
(601) 359-3020 (phone)
(601) 359-2003 (fax)
mwood@ago.state.ms.us

This message is being sent by the Office of the Attorney General for the State of Mississippi and is
intended only for the use of the individual to which it is addressed and may contain information that is
legally privileged or confidential.  If you are not the intended recipient, you are hereby notified that any
distribution or copying of this message is strictly prohibited.  If you have received this message in error,
please notify the original sender or the Office of the Attorney General at (601) 359-3680 immediately by
telephone or by return e-mail and delete this message from your computer.  Thank you.


**CC:**        cbiros@feinbergrozen.com

# GCCF   Gulf Coast Claims Facility

www.GulfCoastClaimsFacility.com

202.962.9280

December 14, 2010

The Honorable Jim Hood
Attorney General
State of Mississippi
PO Box 2209
Jackson, MS  39205

Dear Attorney General Hood:

I thank you for your letter of December 13 offering constructive suggestions to the ongoing administration of the Gulf Coast Claims Facility (GCCF).  As usual, you advance some important points and I respond as follows:

1) You state that the quick payment option "should not be offered." I disagree. With approximately 170,000 claims paid by the GCCF, one should not assume that the quick payment option "will unfairly encourage fast, low-dollar settlements..." To the contrary, it is extremely important that the claimants, who feel that they have already been adequately compensated by the GCCF, or who cannot document any additional damage, be afforded the option – purely voluntary – of receiving additional compensation for their claim. The huge volume of payments made to date by the GCCF, and the ongoing criticism directed at the GCCF for payment delays, generates the need for this quick payment option. Contrary to your letter, I believe that the primary benefit of this option goes to claimants, not to BP. Nor is the decision of the GCCF to provide $5,000 to individuals and $25,000 to businesses based upon arbitrary speculation on my part. The numbers were carefully arrived at by examining the emergency payment amounts to individuals and businesses. The individual quick payment amount of $5,000 reflects the fact that **72%** of all individuals receiving an emergency payment were paid $10,000 or less; and **94%** of all businesses were paid emergency amounts of $100,000 or less. I believe, therefore, that the quick payment option is grounded in an analysis of emergency payments made to date.

2) The availability of a quick payment is simply a variation on the final payment option requiring a full release. Once again, it is designed to close out potentially thousands of potential individual and business claims where the claimant either has already been adequately compensated or lacks the necessary documentation to prove any additional damage.

3) I do not understand why the order of listing the three options is material. But, I will consider your additional request.

4) I believe all GCCF documents adequately and effectively explain the three options and the requirements of each. But, I will consider your additional request.

5) I agree with you and will provide you pertinent information concerning unemployment benefits received by eligible claimants. The GCCF continues to coordinate with each of the states regarding the transfer of data from each state for all claimants receiving unemployment benefits.

6) I agree with your concern. The GCCF will send an explanation of the reasons for the denials (for example, inadequate supporting or no documentation provided) to claimants denied requests for interim claim payments.

7) I want to assure you that no claim submitted to the GCCF, regardless of the option chosen by the claimant, will be processed in any case where the claimant requests pro bono legal assistance. Mindful of your concerns, the GCCF is in the process of expediting the establishment of a pro bono lawyer program throughout the Gulf region. The framework for this program should be in place within approximately one week. Contact information for all claimants requesting pro bono legal assistance will be collected and arrangements will be made to assign each claimant to a pro bono lawyer once a request for the services of a pro bono lawyer has been made. But once that request is submitted to the GCCF, no further action will be taken concerning that individual claim until legal counsel has the opportunity to consult with the claimant. Mr. Attorney General, you have taken the lead in urging the establishment of such a pro bono legal assistance program. I assure you "that the legal assistance program is sufficient to properly handle the volume of GCCF claims in each Gulf Coast State."

8) I agree. All claimants "will be advised regarding all of their options, and not just about the quick payment option."

I want to once again thank you, and the other Gulf Coast Attorneys General, for all of your constructive suggestions over the past few months in connection with the design, implementation and administration of the GCCF. You have helped make the GCCF process fairer and more efficient. I will continue to work with you going forward in order to assure the success of the GCCF program.

Sincerely,

Kenneth R. Feinberg
Administrator
Gulf Coast Claims Facility

KRF:shs

cc:    Associate Attorney General Thomas Perrelli
United States Department of Justice

Attorney General James "Buddy" Caldwell
State of Louisiana

Attorney General Greg Abbott
State of Texas

Attorney General Troy King
State of Alabama

Mr. Jack Lynch
General Counsel, BP

## MARY JO WOODS - follow up to phone call

| | |
|---|---|
| **From:** | Camille Biros <CBiros@feinbergrozen.com> |
| **To:** | MARY JO WOODS <MWOOD@ago.state.ms.us> |
| **Date:** | 12/16/2010 3:46 PM |
| **Subject:** | follow up to phone call |

Mary Jo

Attached is the Third-Party inquiry Form we spoke about on the call. This is the form we use for all government inquiries regarding information being sought for the status of specific claimants' files.

As discussed on the call, please note that one of the Liaison representatives to the GCCF for the state of Mississippi is Brian Sanderson who is located in the Biloxi Site Office and reachable at 228 435-8318. Brian should be able to answer all questions you may have regarding a particular individual claimant's file. He will be able to review and discuss the file with you once the form is completed. You should feel free to call either Brian or Chris Shapely, both from the Brunini Firm in Mississippi. Chris can be reached at 601-960-6875 .

Regards,
Camille Brios

**From:** Camille Biros <CBiros@feinbergrozen.com>
**To:** MARY JO WOODS <mwood@ago.state.ms.us>
**Date:** 1/18/2011 10:27:52 AM
**Subject:** RE: follow up to phone call

Hi Mary Jo
We are working on potential new firm. Nothing final to report.
Transition will follow with the same training sessions used for the first group including Brunini
Thanks
Hope all is well
Camille

——Original Message——
From: MARY JO WOODS [mailto:mwood@ago.state.ms.us]
Sent: Tuesday, January 18, 2011 11:21 AM
To: Camille Biros
Subject: Re: follow up to phone call

Hi, Camille,

I understand that Brunini is no longer acting as the liaison representative for Mississippi. Could you
please send me contact information for their replacement and also advise me how the transition between
Brunini and the new liaison is to be handled? If you need to call me, I can be reached on my cell phone
today at (601) 506-0510.

Thank you,
Mary Jo

Mary Jo Woods
Special Assistant Attorney General
Mississippi Attorney General's Office
Post Office Box 220
Jackson, Mississippi 39205
(601) 359-3020 (phone)
(601) 359-2003 (fax)
mwood@ago.state.ms.us

This message is being sent by the Office of the Attorney General for the State of Mississippi and is
intended only for the use of the individual to which it is addressed and may contain information that is
legally privileged or confidential. If you are not the intended recipient, you are hereby notified that any
distribution or copying of this message is strictly prohibited. If you have received this message in error,
please notify the original sender or the Office of the Attorney General at
(601) 359-3680 immediately by telephone or by return e-mail and delete this message from your
computer. Thank you.
>>> Camille Biros <CBiros@feinbergrozen.com> 12/16/10 3:48 PM >>>
Mary Jo

Attached is the Third-Party inquiry Form we spoke about on the call.
This is the form we use for all government inquiries regarding information being sought for the status of
specific claimants' files.
As discussed on the call, please note that one of the Liaison representatives to the GCCF for the state of
Mississippi is Brian Sanderson who is located in the Biloxi Site Office and reachable at 228 435-8318.
Brian should be able to answer all questions you may have regarding a particular individual claimant's file.
He will be able to review and discuss the file with you once the form is completed. You should feel free to
call either Brian or Chris Shapely, both from the Brunini Firm in Mississippi. Chris can be reached at 601-
960-6875 .

Regards,
Camille Brios

**From:**      Camille Biros <CBiros@feinbergrozen.com>
**To:**        MARY JO WOODS <MWOOD@ago.state.ms.us>
**Date:**      1/31/2011 1:51:52 PM
**Subject:**   RE: FW: GCCF DRAFT METHODOLOGY & ELIGIBILITY CRITERIA FOR      FINAL
& INTERIM PAYMENTS AVAILABLE FEB 2

Hi Mary Jo, They are just settling in today but you can email Trudy Allen at TRUDY ALLEN
(tallen@watkinsludlam.com).
If you have any difficulty - please let me know
Regards
Camille

-----Original Message-----
From: MARY JO WOODS [mailto:MWOOD@ago.state.ms.us]
Sent: Monday, January 31, 2011 2:40 PM
To: Camille Biros
Subject: Fwd: FW: GCCF DRAFT METHODOLOGY & ELIGIBILITY CRITERIA FOR FINAL & INTERIM
PAYMENTS AVAILABLE FEB 2

Camille,

Is Watkins Ludlam ready to begin receiving Government/Third Party Inquiries yet?  If so, could you please
send me the name and contact information for the lawyer to whom I should address our inquiries?

Thank you,
Mary Jo

Mary Jo Woods
Special Assistant Attorney General
Mississippi Attorney General's Office
Post Office Box 220
Jackson, Mississippi  39205
(601) 359-3020 (phone)
(601) 359-2003 (fax)
mwood@ago.state.ms.us

This message is being sent by the Office of the Attorney General for the State of Mississippi and is
intended only for the use of the individual to which it is addressed and may contain information that is
legally privileged or confidential.  If you are not the intended recipient, you are hereby notified that any
distribution or copying of this message is strictly prohibited.  If you have received this message in error,
please notify the original sender or the Office of the Attorney General at (601) 359-3680 immediately by
telephone or by return e-mail and delete this message from your computer.  Thank you.

>>> "Moncrief, Jane" <Jane.Moncrief@dhs.gov> 1/27/2011 1:25 PM >>>
FOR IMMEDIATE RELEASE

January 27, 2011


CONTACT: Amy Weiss, Amy@PointBlankpa.com

or Debra Reed, Debra@PointBlankpa.com

GCCF DRAFT METHODOLOGY AND ELIGIBILITY CRITERIA

FOR FINAL AND INTERIM PAYMENTS AVAILABLE FEBRUARY 2, 2011

FOR A TWO-WEEK PUBLIC COMMENT PERIOD;

PAYMENTS TO ELIGIBLE CLAIMANTS TO BEGIN NEXT MONTH

GCCF ALSO ANNOUNCES ADDITIONAL LOCAL FIRMS RETAINED

IN GULF REGION TO WORK IN CLAIMS OFFICES ASSISTING CLAIMANTS

Today, Kenneth R. Feinberg, Administrator of the Gulf Coast Claims Facility ("GCCF"), announced that beginning February 2, 2011, the proposed methodology for determining eligibility and calculating Final and Interim Payments will be available for a public comment period for two weeks.  GCCF will begin making Interim and Final Payments next month.

The draft methodology will be publicly available on-line (www.GulfCoastClaimsFacility.com) and in the 35 GCCF Claims offices located throughout the Gulf region. Translations in Spanish, Vietnamese and Khmer will be made available.

Comments submitted to the GCCF during the two-week public comment period will be posted on-line. The GCCF will evaluate all submitted comments during the two-week public comment period and may modify the proposed methodology based upon such comments.  Comments should be sent to MethodologyComments@gccf-claims.com or by mailing comments to GCCF, P.O. Box 9658, Dublin OH 43017-4958.

"On February 2, the GCCF will begin soliciting comments and input from individuals, public officials, and organizations and businesses who wish to comment on the proposed eligibility criteria and the methodology for calculation of Final and Interim Payments," said Feinberg.

"We have spent the past few months consulting with various experts and others with knowledge of the Gulf region.  We want to hear from the citizens most impacted by the oil spill before we finalize our eligibility criteria and damage calculations," said Feinberg.

Feinberg also announced that two new Gulf-based firms have been retained by the GCCF to assist claimants in the most heavily trafficked GCCF offices throughout the Gulf. These firms will not be providing legal advice to claimants; they will be offering assistance to claimants with the filing of their claims.

"These additional individuals in the GCCF claim site offices will be assisting claimants by providing more details about the status of their claims and assisting them in determining and submitting the necessary documents needed in order to qualify for a final, interim or 'quick pay' claim. They will not be offering legal advice in any way," said Feinberg.

The new firms are:

\*       Watkins Ludlam Winter & Stennis, a Mississippi law firm whose
representatives will be located in the Biloxi, Pascagoula and Bay St.
Louis, MS Claims Offices;
\*       The Triton Group, P.C., an Alabama company headed by Jim
Walker.


Other firms in the Gulf are:
\*     Burke Blue, a Florida law firm, along with attorney John
Boggs,
whose representatives will be located in the Panama City, Ft. Walton Beach, Pensacola and Santa Rosa
Beach Claims Offices;
\*     Long Law Firm, L.L.P., a Louisiana law firm whose
representatives will be located in the New Orleans East Claims Office; and
\*     Hammerman & Gainer, Inc., a Louisiana claims administration
company whose representatives will be located in the Gretna, LA  and the Naples Florida Claims Offices.

To date, the GCCF has paid out over $3.3 billion to 168,646 claimants in just five months.

Last month, Feinberg announced that all eligible claimants will have the opportunity to choose one of three additional compensation
alternatives:

1.     A lump-sum final payment for all documented past, and future
damage.  Each eligible claimant choosing this option will be required to sign a full release giving up the
right to sue BP and all other alleged defendant companies arising out of the explosion and the spill.

2.     Quarterly interim payments for documented past damage.  Some
eligible claimants, uncertain as to the future of the Gulf, may be reluctant to accept a final payment.
Interim payments will be available to such eligible claimants once every quarter until the expiration of
the Facility in August 2013.   Quarterly interim payments will be
made
for documented past damage not previously covered by emergency payments.
No release will be required under this option.

3.     A one-time "quick pay" amount of $5,000 for an eligible
individual or $25,000 for an eligible business.  This "quick pay"
alternative is available to those eligible claimants who received an emergency payment or interim payment
from the Facility (over 85,000
individuals and businesses have received such payments).   No further
documentation need be submitted by any eligible claimant choosing this option.  But a full release will be
required.  Claimants submitting claims for the first time or claimants who were denied emergency
payments will not be eligible for this option but may file either a lump sum fully documented final claim or a
fully documented interim claim.


###