

**STATE OF ALABAMA**
**OFFICE OF THE ATTORNEY GENERAL**

TROY KING
ATTORNEY GENERAL

July 13, 2010

500 DEXTER AVENUE
MONTGOMERY, AL 36130
(334) 242-7300
WWW.AGO.STATE.AL.US

The Honorable Barack Obama
The President
1600 Pennsylvania Avenue, Northwest
Washington, D.C. 20500

Dear President Obama:

I write on behalf of the State of Alabama to convey my strong objection to the "Draft Protocol" for the Gulf Coast Claims Facility ("GCCF") being proposed to be administered by Mr. Kenneth R. Feinberg. Alabama has serious concerns and objections both as to the substance of the Draft Protocol and the processes that put it together. This document appears collusive at best and contrary to the public interest at worst. It undermines and erodes your commendable public statements. The Gulf of Mexico oil spill is the greatest environmental disaster in our nation's history. The devastating effects on the Gulf Coast States, their citizens, their natural resources, and their economies are substantial and worsening by the day. For the past 85 days, the federal government and BP have completely failed in their responsibilities to stop the leaking oil. While oil has continued to spew unabated into the Gulf, the federal government, BP, and Mr. Feinberg have found the time to develop an overly complex process that would limit the liability and responsibilities of BP while needlessly restricting the ability of injured citizens and businesses to recover the losses and damages they have suffered. This is unconscionable and unacceptable.

As a threshold matter, the State objects to the closed-door process that produced the Draft Protocol. The first version that the State has been given is Draft **Nine**. Apparently, even as the Department of Justice was inviting the Attorneys General to partner with it, secret closed door meetings were occurring to devise protocols without our input. From the fact that this is Draft Nine, obviously, significant decisions about the protocol have already been made by the federal government, BP, and Mr. Feinberg without meaningful input from the affected States. Even worse, the states have been given less than 24 hours to review and provide input on Draft Nine, a draft that has apparently been under negotiations for weeks. It is unreasonable to now expect the states to provide thorough review and input in this time frame. That appears to be the intention. The State objects to the Draft Protocol and opposes any effort by the federal government, BP, and Mr. Feinberg to "finalize" or implement it. Draft Nine should be scrapped and the drafting process started over with the full input of those of us bearing the brunt of the disaster.

**EXHIBIT**

G

Letter to President Obama
July 13, 2010
Page Two


Substantively, the Draft Protocol is an illegal attempt to limit BP's liability for the disaster and an effort by the Executive Branch of the federal government to usurp the constitutional authority of the Legislative and Judicial Branches, and the authority of the States and their judicial systems to protect their own citizens. At the federal level, there is absolutely no legal authority, statutory or otherwise, for the Executive Branch to relieve BP of its obligation under the Oil Pollution Act ("OPA") as the Protocol attempts to do by establishing and administering a claims process. Congress, in the OPA, established how claims were to be presented and when claimants could vindicate their rights in court. Under the Draft Protocol, claimants are faced with the choice of submitting their claims to this dubious "Facility" without any assurance that courts will find that a presentment under the Draft Protocol satisfies the OPA and allows them to seek redress in court. This legal uncertainty is unacceptable. Worse, the Draft Protocol seeks to incorporate aspects of the restrictive eligibility and compensation rules that were issued to govern claims against the Oil Spill Liability Trust Fund ("Fund") in order to shield BP from the full scope of its liability. The rules governing claims against the Fund were never intended to proscribe the full scope of the liability of a responsible party, and they are inappropriate for that purpose.

At the state level, the Draft Protocol tries to reach outside the OPA and federal law, and adjudicate state law claims and to interpret and apply state law. The federal government, especially the Executive Branch, has no business usurping state court jurisdiction and meddling in the state law liability arising from the oil spill. Congress was very clear in the OPA to honor and preserve to the States the right to protect their citizens and resources from oil spills. The OPA states that "Nothing in the Act . . . shall (1) affect, or be construed or interpreted as preempting, the authority of any State . . . from imposing any additional liability or requirements . . . or (2) affect, or be construed or interpreted to affect or modify in any way the obligations or liabilities of any person under . . . State law, including common law." 33 USC 2718. But this is exactly what the GCCF attempts to do.

Even though the determinations of the GCCF are in no way binding on State or even federal courts, the end result of the Draft Protocol, if implemented, would be to create a de facto adjudication process that can only serve to rob individuals and businesses of their fair and impartial day in court in the venue of their choosing. For example, the Draft Protocol states that Claimants will be required to sign a "Release" before being paid and that "The release will waive any rights the Claimant may have against BP to assert additional claims, to file an individual legal action, to participate in other legal actions associated with the Spill." The OPA contains no such requirement and

Letter to President Obama
July 13, 2010
Page Three

neither should the GCCF. The OPA is designed to set up a process to get claims of injured parties paid as quickly and efficiently as possible, not to limit their recovery or to protect responsible parties like BP. No governmentally negotiated and endorsed protocol should contain any requirement that any claimant sign any release. The coastal Attorneys General negotiated a claims process with BP that preserved citizens' claims. One would have expected the federal government to have more leverage and to deliver an even better process. Instead, the concessions won in the Attorneys' General negotiations have been ceded. Even after being paid for certain claims, claimants have and should continue to have the right to seek full recovery through the judicial process. Should a claimant elect to do so, BP can then assert as a defense or set-off any amounts the claimant has been paid by BP, the GCCF, or another responsible party.

The Draft Protocol is needlessly complicated with deadlines, forms, appeals processes, and other legal jargon and requirements that will not be intelligible to ordinary citizens. The legal process established by the Draft Protocol is far too complex and contains pitfalls that will trip up most individuals and prevent them from obtaining compensation for their full losses and damages. The Draft Protocol was obviously drafted by lawyers and is confusing even to lawyers who specialize in environmental practices. This is not the simple claims process that was promised and that is contemplated by the OPA. The OPA does not contain these complex rules for presentment of claims to the responsible party. The Draft Protocol will not expedite claims payments, but will complicate the process.

There are many other problems with the Draft Protocol. I will provide to Mr. Feinberg, by separate cover, some of the specific problems and issues the State has identified in the limited time it has been given for review and comment. I urge you to compel Mr. Feinberg to scrap this Draft Protocol and to replace it with one that puts the needs of the Gulf States' citizens first. Mr. President, your concern is those citizens, not BP. Our citizens are watching and waiting. We are depending on you.

Sincerely,

Troy King
Attorney General

TK:oi

Letter to President Obama
July 13, 2010
Page Four

cc: Mr. Kenneth R. Feinberg
    Honorable Eric Holder, United States Attorney General
    Honorable Bob Riley, Governor of Alabama
    Honorable Jeff Sessions, United States Senator
    Honorable Richard Shelby, United States Senator
    Honorable Robert Aderholt, United States Congressman
    Honorable Spencer Bachus, United States Congressman
    Honorable Jo Bonner, United States Congressman
    Honorable Bobby Bright, United States Congressman
    Honorable Artur Davis, United States Congressman
    Honorable Parker Griffith, United States Congressman
    Honorable Mike Rogers, United States Congressman

**From:** MARY JO WOODS
**To:** MARY JO WOODS
**Date:** Tue, Jul 20, 2010  3:39 PM
**Subject:** Fwd: Gulf Coast Claims Facility

>>> MARY JO WOODS 7/16/2010 4:06 PM >>>
Mr. Feinberg,

Our office is in receipt of comments from other state and federal entities addressing the Gulf Coast Claims Facility draft protocol's compliance with OPA and other issues. In addition, please find attached our initial recommendations for the overall claims process related to the need for fairness, accessibility, and simplicity. We look forward to working with you in coordination with the other states and federal government on this matter.

Thank you,

Mary Jo Woods
Special Assistant Attorney General
Mississippi Attorney General's Office
Post Office Box 220
Jackson, Mississippi 39205
(601) 359-3020 (phone)
(601) 359-2003 (fax)
mwood@ago.state.ms.us

This message is being sent by the Office of the Attorney General for the State of Mississippi and is intended only for the use of the individual to which it is addressed and may contain information that is legally privileged or confidential. If you are not the intended recipient, you are hereby notified that any distribution or copying of this message is strictly prohibited. If you have received this message in error, please notify the original sender or the Office of the Attorney General at (601) 359-3680 immediately by telephone or by return e-mail and delete this message from your computer. Thank you.

### Recommendations Regarding the Gulf Coast Claims Facility

1. The Gulf States Attorneys General should have full access to the claims data, centers, and personnel.

2. Security measures must be taken to protect the sensitive and personal nature of information maintained on the claims database.

3. Claimants should be allowed to submit claims at conveniently located claims centers, via telephone, or through an online claims procedure. The online process should allow submission of both the claim form and supporting documentation. In order to deter the filing of fraudulent claims, claimants should be required to provide a notarized, sworn statement that the information is true subject to the penalty for perjury. A pdf version of the notarized, sworn statement would be sufficient for claims filed on-line. The form of the sworn statement should be approved by the Coastal attorneys general and the Department of Justice.

4. Claim forms, a claims manual, and FAQ's should be available in each claims center and on the internet. All claim forms and the claims manual should be reviewed and approved by the Gulf States Attorneys General.

5. Translators should be available in each claims center and through the telephonic claims process. Translated claims materials must also be available.

6. In addition to a sufficient number of claims handlers, at least one claims manager should be present and available in each claims center, and claims managers should be available by telephone and an online "chat" mechanism to address problems during the claims application process.

7. Claims centers should have operational, toll-free telephones available for claimants so that they may obtain advice or further information to complete their claims. Contact information for the local State Attorney General's Office should be posted in each claims center.

8. When a claimant calls the telephonic claims center, the wait time for the next available claims assistant should be announced, and the claimant should be given the option of leaving a message to be returned by a claims assistant.

9. Claimants should be provided with secure online access to their claims files to check the status of their claims and to submit any required follow-up documentation. To accommodate claimants without internet access, any claimant should be provided with a copy of his/her claims file within five business days of receipt of the claimant's written request.

10. Deadlines for responding to claims need to be set. Any request for further documentation or information should be sent to a claimant no later than five business days after submission of the claim. Within twenty-one days of submission of an interim, short-term claim, payment should be made or the claimant should be advised that the claim is being denied. Any claim not paid within twenty-one days of submission shall be deemed denied.

11. Payment of interim, short-term claims should be made on a monthly or weekly basis. All payments should be made available either by check or by wire transfer.

12. Lost income documentation should be allowed based on revenues dating back to 2007.

13. Alternative forms of documenting income loss in addition to tax returns, such as receipts and/or sworn affidavits, should be allowed.

2

14. Failure to obtain requested documentation that is not the fault of, or is beyond the control of, the claimant shall not be held against the claimant. In those instances, alternative documentation shall be accepted, such as a sworn affidavit explaining the situation signed by the claimant or the third party in control of the required documentation.

15. Claims should not be denied based on a random distance limit in relation to the shoreline. All claims incurred as a result of the oil spill should be paid regardless of the claimant's physical location.

16. Claimants should be compensated for time and expense incurred in filing their claims. A minimum payment should be set for all legitimate claimants because the trouble of having to submit a claim at all is a direct and proximate result of the oil spill. Claimants who incur greater costs due to the need for professional assistance or excessive documentation requirements should be allowed to present proof to recoup those losses.

17. Instead of an appeals procedure, a panel should be appointed by the Gulf States Attorneys General to monitor the claims handling process. As previously recommended, the panel should consist of former Gulf States Attorneys General – one from each affected state, if possible.

18. If an appeals procedure is retained in the protocol, it should not be binding, and claimants should retain their right to pursue other avenues of relief, including litigation.

3

 

August 16, 2010

Mr. Kenneth R. Feinberg, Esq.
Feinberg Rozen, LLP
The Willard Office Building
1455 Pennsylvania Avenue, NW, Suite 390
Washington, D.C., 20004-1008

Dear Mr. Feinberg:

We are in receipt of your August 8 and 13, 2010, emails transmitting drafts of the Gulf Coast Claims Facility Protocol for Emergency Advance Payments. We appreciate the opportunity to review this protocol and offer comments. As we have mentioned, the claims process is extremely important to the citizens who have been affected by this disaster, and it is pertinent for the Attorneys General to continue encouraging you to incorporate best practices into the protocols in order to ensure that claimants are fully compensated for the losses they have suffered from this disaster.

We have reviewed the Advance Payment Emergency Protocol and while we are pleased to see some positive changes, there are still a few major concerns with this Protocol. These concerns are outlined below in more detail:

Comments:

1. A claimant's right to appeal, and the time frame within which to do so, a final claim decision is triggered by the presentment of a claim. However, on page 1 of the Protocol for Emergency Advance Payments, you state that the "submission of a claim for an emergency payment does not constitute presentment under OPA." Furthermore, the Protocol does not outline any process for the appeal of a decision on an emergency claim. A denial of an interim payment will have a negative impact on a claimant and it is important that they have some recourse to challenge that decision. The statement violates Oil Pollution Act (OPA) requirements and therefore should be eliminated from the Protocol and replaced with a

statement that submission of a claim for an emergency payment constitutes presentment under OPA.

2. The Period for Application for Emergency Advance Payment (page 7) continues to incorporate a 90 day time frame within which claimants can submit emergency claims. At this time, it is still unknown how long claimants might suffer damages. Furthermore, it is also highly unlikely that claimants will be able to calculate the full extent of their losses in 90 days. Without knowing what long-term impacts might result from this disaster, it will be impossible for claimants to submit real claims for final payments by November 24, 2010. The period for application of emergency advance payments should be, at a minimum, six months.

3. The most recent draft Protocol amends the language for "personal injury" claims to restrict such claims to "physical injury/death." As has been previously brought to your attention, there is great concern over the need for mental health injuries to be compensable through the Protocol. This change in terminology appears to unjustly eliminate from the claims process persons with mental health claims and unduly limit the scope of the Protocol.

4. In our meeting with you on July 30, you indicated that you were willing to incorporate a large majority of our recommendations for the mechanics of the overall claims process related to the need for fairness, accessibility, and simplicity, as outlined in Attorney General Hood's communication to you dated July 20. Those issues are not addressed in your Emergency Protocol, and it may be more appropriate to document such details in the Final Protocol or in a separate claims manual. However, we would like assurance from you that these critical protections and assistance for claimants will be implemented in your claims process.

Thank you for providing us with an opportunity to comment on this Protocol. We encourage you to make the changes suggested above so that we can support the claims process and recommend it to our citizens.

Sincerely,

James. D. "Buddy" Caldwell
Attorney General
State of Louisiana

Jim Hood
Attorney General
State of Mississippi



# STATE OF FLORIDA

**BILL McCOLLUM**
**ATTORNEY GENERAL**

**VIA U.S. MAIL AND E-MAIL**

August 20, 2010

Kenneth R. Feinberg, Esq.
Feinberg Rozen, LLP
The Willard Office Building
1455 Pennsylvania Avenue, NW
Suite 390
Washington, DC 20004-1008

Re: Protocol for Emergency Advance Payments

Dear Mr. Feinberg:

    I am writing to you to express my strong objections to the Protocol for Emergency Advance Payments, the narrative on Understanding the Eligibility Criteria for Emergency Advance Payments, and the GCCF Claims Form.[1] Despite the sincere and diligent efforts of my office and others over the last seven weeks to work with you to craft a claims process that allows *at least* the same protections and rights as the Oil Pollution Act of 1990 ("OPA"), our input has been completely disregarded. Instead, the documents regrettably fall far short of even the minimal protections mandated by OPA. Moreover, these documents are confusing and contradict many of your public statements regarding the claims process.

    The appointment of an independent Administrator of a facility to process the Deepwater Horizon claims of individuals and businesses was meant to replace *and improve upon* the claims process that BP had implemented to fulfill its OPA obligations as a responsible party for the Spill. However, the current process appears to be even less generous to Floridians than the BP process. Such an outcome is completely unacceptable.

---

[1] The 18-page GCCF Claims form was released to the public this morning but has never previously been provided or discussed with my office, despite the statement in the press release accompanying the claim form that the process was developed after working "closely with the Governors and Attorneys General of Louisiana, Alabama, Mississippi and Florida." Likewise, my office saw the Criteria document for the first time yesterday afternoon.

Kenneth R. Feinberg
August 20, 2010
Page 2

As Florida's chief legal officer, I must again respectfully disagree with your interpretation of the law applicable to the Gulf Coast Claims Facility ("GCCF") process. The GCCF was proposed as an alternative to the BP claims process, which was seen as lacking credibility and efficiency. However, the GCCF was never contemplated as a means of reducing the requirements for an OPA claims process. The GCCF has been represented to be "OPA-plus" in the protections and rights it will confer on eligible Claimants. Unfortunately, the current process is far more onerous than OPA allows and greatly reduces Claimants' rights. Indeed, the process appears to have as its primary goal the reduction or elimination of claims against BP, instead of making claimants whole.

My office has communicated with you on numerous occasions and in various ways in an effort to develop a claims process that meets the needs of the people of Florida and the Gulf Coast and the requirements of the law but virtually every substantive edit that we have offered has been rejected.[2] Specifically, although the list below does not detail every major deficiency with the Protocol, the following provisions are particularly troublesome:

- **Proximate Causation:** The inclusion of language concerning a Claimant's alleged burden to prove "proximate causation" between his or her damages and the Spill improperly increases the burden of proof imposed upon Claimants. OPA and its implementing regulations allow a Claimant to recover damages which are "the result of" the Spill – a less onerous standard of causation, reflective of the fact that OPA is a strict liability statute. OPA's only mention of proximate causation is in the limitation of liability context. My staff has provided the necessary edits for the Protocol to conform to the OPA standards. The Protocol's continued reference to "proximate causation," by deviating from the language of OPA, suggests an increased burden of proof on Claimants. Just creating such an ambiguity disserves the public, is contrary to the goal of creating a means of obtaining compensation for damages without the need for litigation, and violates OPA.

- **Limitation on the Right to File Interim Claims:** The Protocol proposes a limitation on the time and ability of Claimants to file "Interim Claims" without any legal authority for doing so. Interim Claims under OPA are intended to provide Claimants with a mechanism for obtaining partial recovery of known damages, without providing a release to a responsible party. The Protocol limits the right to obtain such Interim Payments to 90 days after the GCCF begins operation, in violation of OPA. The Protocol also creates a two-tiered claims

---

[2] Without having the chance to review the Criteria document in detail, my July 2nd letter explains why the extensive reliance on geographic proximity is so misplaced.

Kenneth R. Feinberg
August 20, 2010
Page 3

process scheme with only "Emergency Advance Payments," which must be filed before November 23, 2010, and "Final Payments," which require an as-yet unspecified release of claims by the Claimant. Although a footnote characterizes "Emergency Advance Payments" as "Interim Payments," and the Protocol later states that interim claims will be considered, after November 23, 2010, in "appropriate circumstances," this characterization appears to be nothing more than a thinly veiled attempt to make the Protocol *seem to provide* the elements required by OPA – while actually violating the rights provided by OPA. Interim Payments are a required part of the OPA claims process and payment of such claims cannot and should not be at the complete discretion of the administrator.

- **Presentment:** The Protocol fails to acknowledge that filing a claim with the GCCF for an Emergency Advance Payment satisfies OPA's requirement that a Claimant first present a claim to the responsible party before they can either obtain money from the Oil Pollution Liability Trust Fund or file a suit for damages. Fixing the ambiguity *should* have been an easy edit – but it was not made, despite repeated requests by my office. Rather, the latest draft further obfuscates this issue by stating that: "Whether or not a claim has been presented shall be governed by OPA and applicable law."

- **Refiling Claims:** While the Protocol states that all pending claims previously filed with BP will be transferred to the GCCF, today's press release indicates that every Claimant who has a pending claim with BP will have to refile their claim with the GCCF on an 18-page claims form (but without the supporting documentation). Nothing in the Protocol or the Criteria reveals this refiling requirement, however. Claimants with pending claims should not and cannot be required to refile and thus restart the 90-day clock provided in OPA for processing their claims, especially since BP has admitted delaying the processing of thousands of claims in anticipation of the GCCF beginning operations. It is also unclear what will happen if Claimants do not refile their claims. While I recognize your desire to re-evaluate claims that have been denied and to make sure that claims are brought fully up-to-date, this procedure does not accomplish those goals in an effective manner.

Although the leak has been stopped, the Deepwater Horizon Spill is an on-going environmental disaster, not a one-time event. While it is all of our most fervent hope that the Gulf and the people who rely on it for their life and livelihoods will recover soon from the scourge of the Spill, it is our duty to provide for the possibility that the recovery will take some time to be fully realized. Part of the recovery process will depend on

Kenneth R. Feinberg
August 20, 2010
Page 4

providing a credible claims process that, at the very least, meets the requirements of OPA. We remain committed to that goal and hope that you will adopt a Final Protocol that incorporates the edits that we have previously and repeatedly provided to you and which are necessary to meet the requirements of OPA. My office is, as always, available to consult with you.

Sincerely,

Bill McCollum
Attorney General