

# STATE OF FLORIDA

**BILL McCOLLUM**
ATTORNEY GENERAL

November 8, 2010

**VIA U.S. MAIL AND E-MAIL**

Kenneth R. Feinberg, Esq.
Feinberg Rozen, LLP
The Willard Office Building
1455 Pennsylvania Avenue, NW
Suite 390
Washington, DC 20004-1008

Re: Gulf Coast Claims Facility Draft Final Protocol

Dear Mr. Feinberg:

    It was good to see you this past weekend in New Orleans. Thank you for sharing a draft version of the Final Protocol with my office last week and for expressing your willingness to meet with me soon to discuss any recommendations or concerns we may have regarding the draft. I was very pleased to see that, consistent with the requirements of the Oil Pollution Act (OPA), you have decided to include interim payments as part of the draft protocol. I was also happy to see in your cover e-mail that you are continuing to consider the inclusion of the appeals process discussed so often at the beginning of this process and considered an important and necessary component by many, including, based upon the White House press release announcing your appointment, the President and BP.

    I look forward to meeting with you as soon as practicable to discuss the draft protocol. In the meantime, the purpose of this letter is to set forth some of the more overarching of my concerns with the draft, which I recognize is a work in progress, so that you have an opportunity to consider them in advance of our meeting. Because the November 23rd deadline for the implementation of your Final Protocol is fast approaching, I am also enclosing for your consideration a redlined version of your protocol incorporating our suggested edits and recommendations. Our draft makes little effort at word smithing in light of the November 23rd deadline. I also recognize that many important issues, such as providing enhanced claims data to my office for easier review and transparency, can be handled outside of the Final Protocol, and I will address those issues with you or your staff separately.



EXHIBIT J

Specifically, my "big-picture" concerns involve, first, ensuring that the Final Protocol properly reflects in all respects that the Gulf Coast Claims Facility (GCCF) is governed by OPA, except for any personal injury or death claims. Accordingly, you will see language added in different places throughout the document to attempt to clarify and ensure your intent to be consistent with OPA. In this regard, in particular, consistent with OPA, there should be no reference to the proximate cause doctrine for economic loss claims, since OPA rejected that tort concept. Second, our draft has also deleted references to the claims process being "voluntary." As we have indicated, the GCCF is the only available way to seek relief for individual and business claims and any contrary statement is unnecessarily confusing to claimants and is contrary to the views of BP as the responsible party. Third, contrary to your remarks before the Economic Recovery Task Force on October 28, our draft also allows for the recovery of the reasonable costs of estimating the damages claimed, as that is a remedy provided by OPA. Fourth, since your cover note indicated that the appellate panel remained under consideration, in the interests of time, we have taken the liberty of including in our redlined draft, for your review, some proposed language regarding an appellate panel and process. Finally, you will note that we have marked a few places (the "KF" notes) in the draft for further discussion with you, as we are not sure that we agree with your approach as described, but would like to hear the reasoning for them. We also continue to review and consider the draft release you sent with the draft protocol, but will be prepared to discuss it with you when we meet.

As you well know, the economic impact of this environmental disaster will be felt for many years to come by Florida's businesses and its people if the claims process does not operate in a fair and efficient manner. As always, I remain committed to continuing to work with you to reach consensus on an appropriate Interim and Final Payment Protocol. I look forward to continuing our discussions in person and look forward to hearing from you within the next few days as to a convenient date and time for such a meeting.

Sincerely,

Bill McCollum

Enclosures

**CONFIDENTIAL**
**Working Draft**

(For Discussion Purposes Only; to be revised as appropriate following such discussions)
November 1, 2010

**Gulf Coast Claims Facility Protocol for Interim and Final Claims**

## I.   PURPOSE

This Protocol sets forth the procedure for the submission and resolution by the Gulf Coast Claims Facility ("GCCF") of interim and final claims by Individuals and Businesses for costs and damages incurred as a result of the oil discharges from the April 20, 2010 Deepwater Horizon incident ("the Spill"). Claims for Emergency Advance Payments are governed by a separate protocol.

   A.   Role

The United States Coast Guard ("USCG") has designated BP Exploration & Production, Inc. ("BP") as a Responsible Party under the Oil Pollution Act of 1990 ("OPA") for oil discharges from the Deepwater Horizon facility. Under OPA, Responsible Parties must establish a claims process to receive certain claims by eligible claimants. BP accepted the USCG designation as a Responsible Party and established and advertised a single claims facility for all claimants.

The GCCF is intended to replace BP's claims facility for Individuals and Businesses. The GCCF (and the protocols under which it operates) are structured to be compliant with OPA. Whether or not a claim has been presented shall be governed by OPA. Filing a claim for a sum certain with the GCCF satisfies the "presentment" requirement of OPA. All documentation submitted by Individuals or Businesses in support of claims filed with the BP Claims Process have been transferred to the GCCF. However, all Claimants with pending BP claims are required to complete and refile new claims forms using the GCCF claims form before the GCCF will consider or process their claims for payment. BP has also authorized the GCCF to process certain non-OPA claims involving physical injury or death.

[Deleted: and applicable law.]

[Deleted: Submission of all claims pursuant to this Protocol shall be wholly voluntary, and participation in the GCCF shall not affect any right that the Claimant would have had absent such participation unless final resolution of the claim is achieved.]

   B.   Approach

The following non-exclusive principles apply to the operation of the GCCF:

- The GCCF will evaluate all claims in a prompt and fair manner.

  [Deleted: guided by applicable law.]

- The establishment of the GCCF does not diminish any right of any Individual or Business that existed prior to the creation of the GCCF; Claimants have all of the same rights with respect to their various claims that they had prior to the creation of the GCCF and shall not be forced to relinquish any rights for the opportunity to seek compensation through the GCCF, provided that acceptance of final payments will require the execution of a release of liability, as discussed below.

- The GCCF claims process is structured to comply with OPA and apply the standards of OPA.

The GCCF is administered by Kenneth R. Feinberg ("the Claims Administrator"), a neutral fund administrator responsible for all decisions relating to the administration and processing of claims by the GCCF. While the GCCF is an independent facility, it is important that the views of all stakeholders be considered. All stakeholders, including claimants, government entities, and BP, may provide input and comments regarding the GCCF process.

## II.  ELIGIBILITY

### A. Removal and Clean Up Costs

1. Who may make a claim?

Any Individual or Business that incurred costs, as a result of the Spill for the removal of oil or to prevent, minimize, or mitigate oil pollution.

2. Required Proof

- The <ins>actions taken were necessary</ins> for removal of oil discharged due to the Spill or <ins>to</ins> prevent, minimize, or mitigate oil pollution from the Spill; [Deleted: costs are] [Deleted: that are]

- The <ins>removal</ins> costs <ins>were incurred as a result of these actions</ins>; and [Deleted: are reasonable and necessary]

- The actions taken to remove, prevent, minimize, or mitigate oil pollution were <ins>directed or</ins> approved by the Federal On-Scene Coordinator or are otherwise <ins>determined</ins> to be consistent with the National Contingency Plan. [Deleted: proven] [Deleted:]

3. What information should the Claimant submit?

- Information or documentation (e.g., bills) showing the costs incurred after the Spill for removal of oil discharged as a result of the Spill or incurred to prevent, minimize, or mitigate oil pollution from the Spill.

- Information or documentation explaining how the actions taken were necessary to prevent, minimize, or mitigate the effects of the Spill.

- Information or documentation showing that the actions taken were <ins>directed or</ins> approved by the Federal On-Scene Coordinator or were consistent with the National Contingency Plan.

- Information or documentation explaining why the costs were reasonable.

- <ins>Information or documentation of the reasonable costs incurred of estimating the amount of the claim, but not attorney's fees or other administrative costs associated with preparation of the claim.</ins>

[Formatted: Left, Indent: Left: 0.5", No bullets or numbering, No widow/orphan control]

2

B. Real or Personal Property

1. Who may make a claim?

Any Individual or Business that owns or leases real or personal property physically damaged or destroyed as a result of the Spill.

In order to avoid duplication of claims, an owner or lessee of the property must provide notice to all others with an ownership or lease interest in the property of the intent to file a claim {Note to KF: We would like to discuss your experience with this notice requirement under the Emergency Protocol thus far}. If duplicate claims are received, the GCCF will determine the appropriate claimant or apportion between claims the damage attributable to each claimant based on the nature of their losses and damages.

2. What information should the Claimant submit?

- Information or documentation showing an ownership or leasehold interest in the property.

- Information or documentation showing the property was physically damaged or destroyed.

- Information or documentation showing the damages claimed were incurred as the result of the physical damage to or destruction of the property.

- Information or documentation showing the cost of repair or replacement of the property, or economic losses resulting from destruction of the property.

- Information or documentation showing the value of the property both before and after damage.

- Information and documentation of the reasonable costs of estimating the amount of the claim, but not attorney's fees or other administrative costs associated with preparation of the claim.

**Formatted:** Left, Indent: Left: 0.5", No bullets or numbering, No widow/orphan control

C. Lost Profits and Lost Earning Capacity

1. Who may make a claim?

An Individual or Business that incurred a loss in profits or earning capacity due to the injury, destruction, or loss of real property, personal property or natural resources as a result of the Spill. The Individual or Business need not be the owner of the injured property or resources to recover for lost profits or income.

2. What information should the Claimant submit?

- Identification of injury, destruction, or loss to a specific property or natural resource.

3

- Information concerning Claimant's lost earnings or profits that were caused by the injury, destruction, or loss of specific property or natural resource as a result of the Spill (such as lost income by a fisherman whose fishing grounds have been closed or a hotel or rental property that has had decreased profits because beaches, swimming, or fishing areas have been affected by the oil from the Spill).

- Reduction of earnings or profits, or increase in expenses resulting from such damage.

- Amount of profits and earnings or expenses in comparable time periods.

- Income received from alternative employment or business during the period when the loss was suffered, and expenses incurred in generating the alternative income. Income received performing oil removal or other related work for BP or any other responsible party shall not be used to offset against any damages or loss of income claim submitted to the GCCF.

- Savings to overhead and other normal expenses not incurred as a result of the Spill.

- Information and documentation of the reasonable costs of estimating the amount of the claim, but not attorney's fees or other administrative costs associated with preparation of the claim.

D. Subsistence Use of Natural Resources

1. Who may make a claim?

Any Individual who uses the natural resources that have been injured, destroyed, or lost as a result of the Spill to obtain food, shelter, clothing, medicine, or other subsistence uses.

2. What information should the Claimant submit?

- Identification of the specific natural resources that have been injured, destroyed or lost as a result of the Spill for which compensation for loss of subsistence use is being claimed. The Claimant need not own the affected natural resource.

- Description of the actual subsistence use made of each specific natural resource.

- Description of how and to what extent the subsistence use was affected by the injury to or loss of each specific natural resource as a result of the Spill.

- Description of expenditures made to replace or substitute for the subsistence use, including any documentation verifying such expenditures.

4

- Information and documentation of the reasonable costs of estimating the amount of the claim, but not attorney's fees or other administrative costs associated with preparation of the claim.

E. Physical Injury /Death

1. Who may make a claim?

A claim may be made by an injured Individual or the representative of a deceased, minor or incompetent Individual for a physical injury or death proximately caused by the Spill or the explosion and fire associated with the Deepwater Horizon incident, or by the clean-up of the Spill.

Submitting a physical injury or death claim to the GCCF is entirely voluntary. However, unlike claims under the Oil Pollution Act, claims for physical injury or death cannot be submitted to the National Pollution Funds Center.

2. What information should the Claimant submit?

- Medical records or death certificate demonstrating physical injury or death.
- Medical records reflecting diagnosis by a medical practitioner.
- Information concerning the cause of physical injury or death.
- Information concerning the circumstances of the physical injury or death and the location where the physical injury or death occurred.
- Information concerning any total or partial disability of the Claimant.
- Records showing expenditures for medical care not otherwise compensated.
- Proof of lost income, if the Claimant seeks compensation for such lost income.

F. Causation

The GCCF will only pay for harm or damage that is the result of the Spill. The GCCF's causation determinations of economic loss claims will be guided by OPA and federal law interpreting OPA. Determinations of personal injury and death claims will be guided by applicable law.

III. **FILING FOR COMPENSATION**

A. Equal Access and Fair Adjudications in the Claims Process

All potential Claimants will be treated with respect, dignity, and fairness, without regard to race, color, sexual orientation, national origin, religion, gender, or disability. The GCCF shall strive to ensure that all Claimants can equally access the GCCF process, and that claims will be adjudicated

5

fairly. Individuals with disabilities will be able to effectively communicate their claims and problems to the GCCF. Individuals with language barriers will have meaningful access to the process and to the GCCF. Individuals with low literacy will have documents and forms explained to them plainly and in a simple manner they understand.

B. <u>Claim Form</u>

1. The Claimant will fill out a Claim Form for an Interim Claim or a Final Claim.

2. Claimants shall submit the documentation requested on the Interim or Final Claim Form or other similar information as is sufficient to substantiate the claim and for the GCCF to review and process the Interim or Final Claim.

C. <u>Process for Filing a Claim</u>

An Interim or Final Claim Form may be obtained and submitted in any one of the following ways:

1. Via the Internet – Claimants may submit an Interim or Final Claim online by visiting the GCCF website: www.gulfcoastclaimsfacility.com. Claimants will be instructed to follow simple steps for completing an Interim or Final Claim Form. Once completed, the claim will be automatically submitted to the GCCF Database, a printable confirmation notification will be generated and displayed immediately confirming submission and providing the Claim Number, and a confirmation email will be sent to those Claimants who have provided email addresses. The Claim Number will be the claim identifier throughout the process. Interim and Final Claim Forms and Instructions will be available in English, <u>French,</u> Spanish, Vietnamese and Khmer. Claimants who have submitted an Emergency Advance Payment Claim will be able to utilize their previously provided Claim Number to complete an Interim or Final Claim Form. The Interim or Final Claim Form will be pre-populated with previously submitted information. The Claimant will not be required to resubmit previously submitted information or documentation but will only be required to submit additional documentation to substantiate the Interim or Final Claim.

2. By Visiting a GCCF Claims Site Office – Claimants may visit one of the 35 Claims Site Offices established to assist Claimants with the claims submission process. The locations of the Claims Site Offices are posted on the GCCF website, www.gulfcoastclaimsfacility.com. If a visitor requires an interpreter and an interpreter is not available on site, the Claims Evaluator will make arrangements to provide these services either via conference call or a scheduled return trip to the Claims Site Office. A Claims Evaluator will assist the Claimant in completing an Interim or Final Claim Form. If the Claimant has previously submitted an Emergency Advance Payment Claim, the Interim or Final Claim Form will be pre-populated with previously submitted information. The claimant will not be required to resubmit previously submitted information or documentation but will only be required to submit documentation to substantiate the Interim or Final Claim. The Claims Evaluator will print a copy of the Interim or Final Claim Form, the claimant will sign the Interim or Final Claim Form and the claim will be automatically submitted to the GCCF Database. A confirmation of the claim submission and Claim Identification Number will be provided by the Claims Evaluator. The Claim Form must be signed by the Claimant.

3. Via U.S. Postal Service – Claimants may call the toll free, dedicated telephone line to request that an Interim or Final Claim Form be mailed via U.S. Postal Service. The Claims Operator will

ask the caller to provide basic information which the Claims Operator will enter into the on-line system. The system will automatically generate a unique, pre-populated and bar-coded Claim Form which will include the identifying information provided by the caller. The Claim Form will contain a Claim Identification Number which will be the Claim identifier through the course of the process. If the Claimant has filed an Emergency Advance Payment Claim Form, the Claimant will receive a pre-populated Interim or Final Claim Form which contains all of the information submitted by the Claimant on the Emergency Advance Payment Claim Form. The coded Interim or Final Claim Form will be mailed via U.S. Postal Service to the Claimant. The Claim Form must be signed by the Claimant. The Claimant may return the completed form via:

- U.S. Postal Service:
  Gulf Coast Claims Facility
  P. O. Box 9658
  Dublin, OH 43017-4958

- Overnight, Certified or Registered Mail:
  Gulf Coast Claims Facility
  5151 Blazer Parkway, Suite A
  Dublin, OH 43017-4958

- Fax:
  1 866 682-1772

- Email:
  info@gccf-claims.com

- The toll-free telephone lines are as follows:

  - Toll Free Number:              1-800 916-4893
  - Multilingual Telephone Line:   1-800 916-4893
  - TTY Telephone Line:            1-866 682-1758

All submitted Claim Forms, regardless of the method of submission, will be automatically forwarded to the Central Processing Database and integrated into a comprehensive GCCF Database.

## IV. APPLICATIONS FOR PAYMENT

Claimants have the option of submitting a claim for an interim payment or a final payment.

A. Applications for Interim Payment

An interim payment covers only substantiated, past damages.

. The following principles will apply to claims for interim payments:

7

- In order to receive an interim payment, a Claimant shall not be required to execute a release or waive any rights to assert additional claims, to file a claim for compensation with the Oil Spill Liability Trust Fund upon denial of the claim by the GCCF in whole or part, to file an individual legal action, or to participate in other legal actions associated with the Spill.

- A Claimant who seeks an interim payment may make a subsequent claim for an additional interim payment or a final payment.

- Interim claims shall not be made more frequently than once per month, and may be made quarterly.

- When evaluating a claim for an interim payment, the GCCF will take into account and offset prior payments by BP, the GCCF, and collateral sources. However, income received performing oil removal or other related work for BP shall not be used to offset any interim damages or loss of income claim submitted to the GCCF.

- In the event that the Claimant has submitted an eligible, substantiated claim, the GCCF will provide the Claimant with a payment determination for both an interim payment and final payment so that the Claimant can select which form of payment the Claimant desires. {KF: This is an addition that gives us some pause and we would like to discuss further.}

- If the Claimant elects to receive an interim payment, should the Claimant make a subsequent claim for a final payment, GCCF's valuation of the final payment may change to reflect additional information and less uncertainty regarding damages.

- Any interim payment or Emergency Advance Payment made to a Claimant will be deducted from the final payment of the claim.

B. Applications for Final Payment

A final payment constitutes a complete and final resolution of all claims that a Claimant has or may in the future have with regard to the Deepwater Horizon incident and oil spill except as otherwise noted in paragraph V.C. of this Protocol. The GCCF will take into account and offset prior payments by BP, the GCCF, and collateral sources, except that income received performing oil removal or other related work for BP shall not be used to offset against any final damages or loss of income claim submitted to the GCCF.

Deleted: .

V. **REVIEW PROCEDURES**

A. Determination of Claims

1. After a claim is presented, the GCCF shall determine within 90 days whether to make a payment to the Claimant. The 90 days begins to run from the date a claim is submitted, not from the time it is determined that all documentation has been received.

Deleted:

8

2. Determinations of economic loss claims will be guided by OPA. Determinations of personal injury and death non-OPA claims will be guided, as applicable, by other federal law and pertinent state law.

3. If the GCCF requires more documentation than has been provided by a Claimant, then it is the responsibility of the GCCF to advise the Claimant as soon as practicable as to what specific additional documentation is needed in order to evaluate and pay the claim.

B. Notification of GCCF Decision

The Claimant will be sent in writing: (1) the GCCF's decision regarding the claim; (2) the amount of the determined compensation; (3) the reason for denial, reduction, or increase to a claimed amount; and (3) in the case of an eligible claim for final payment, a Release to be signed by the Claimant.

C. Appeals Panel {Note to KF: submitted for discussion as we discuss the appeals process}

1. A panel of three judges will be available, in each of the five (5) Gulf States, to hear appeals of the administrator's decisions. A 3-member GCCF Appeals Panel shall be created for each of the five (5) Gulf States. The Attorney General of each Gulf State will name the members of the State's GCCF Appeals Panel. Any vacancies on a State's GCCF Appeals Panel will be filled by the same official who made the original appointment.

2. Formal legal briefs and pleadings shall not be required in an appeal of a GCCF determination. Claimants may represent themselves before the GCCF Appeals Board or be represented by an attorney.

3. A Claimant may appeal an Interim or Final Claim decision of the GCCF to the GCCF Appeals Panel if an Interim or Final Claim is denied or is offered for less than the amount requested in the Claim. Decisions under current law by the independent claims facility shall be binding on BP.

4. An appeal must be submitted to the GCCF Appeals Panel within 10 days of receipt of an Interim or Final Claim determination or denial. This appeals process is purely voluntary and a Claimant is not required to file an appeal in order to pursue other remedies, such as seeking payment for OPA-damages from the Oil Spill Liability Trust Fund or filing a lawsuit in State or federal court.

5. All appeals will be based on the documentation and information submitted to the GCCF. If a Claimant wishes to provide additional information in support of a claim that was not provided to the GCCF, the GCCF Appeals Panel shall return the claim back to the GCCF for further consideration in light of the additional information.

6. Within 21 calendar days of receipt of an appeal, the GCCF Appeals Panel shall take one of the following actions: 1) affirm the decision of the GCCF; 2) modify the decision of the GCCF; or 3) return the claim to GCCF for further consideration in light of additional information or

9

instructions. This deadline may only be extended at the request or with the consent of the Claimant.

D. Acceptance of Final GCCF Decision        `Deleted: C`

If the Claimant decides to accept a final payment, the Claimant shall return to the GCCF a signed Release. A copy of the Release is attached to this Protocol as Tab A. The Release will waive any rights the Claimant may have against BP and any other potentially liable parties to assert additional claims, to file an individual legal action, to participate in other legal actions associated with the Spill, or to submit any claim for payment by the National Pollution Funds Center. However, a Claimant who has filed a claim for economic loss (defined for purposes of this sentence as a claim for all loss other than physical injury/death) and physical injury/death but wishes to accept only the GCCF's final payment for the claim for economic loss, may elect to accept the final payment as to the claim for economic loss only: the attached Release does not waive the Claimant's rights with regard to the Claimant's physical injury/death claim.

D. Payment of Claims

Within 14 days of the receipt of the signed Release, the GCCF will issue payment to the Claimant.

E. Collateral Source Compensation

The amount of compensation will be reduced by collateral source compensation that the Claimant has received due to the Spill where such collateral source compensation would be duplicative of payments by the GCCF.[1]

1. Payments that constitute collateral source compensation.

    - Collateral source compensation includes, but is not limited to, insurance and payments by federal, state, or local governments related to the Spill, including unemployment benefits.

2. Payments that do not constitute collateral source compensation.

    - Charitable donations and the value of services or in-kind charitable gifts such as provision of emergency housing, food, or clothing distributed to the Claimant.

## VI. REPORTING

The GCCF shall provide reports of non-personally identifiable information to state, local, and federal government officials and to BP to permit an evaluation of the claims process. The GCCF shall submit to interested parties, including state, local, and federal government officials and BP, periodic reports of non-personally identifiable information regarding claims made and claims determinations.

---

[1] The offset of collateral source compensation will be used to prevent duplicative payments to a Claimant. An entity who made the initial compensation payment to the Claimant will not be prevented from recovery against the Responsible Party where permitted by law.

### VII. PERIOD FOR SUBMISSION OF CLAIMS TO GCCF

Claims for Emergency Advance Payments will not be accepted after November 23, 2010. Claims for Interim or Final Payments may be submitted to the GCCF through August 23, 2013. After that date, BP will continue to receive claims as required by OPA.

### VIII. PRIVACY

Information submitted by a Claimant to the GCCF will be used and disclosed for purposes of: (1) processing the Claimant's claim for compensation and any award resulting from that claim; (2) legitimate business purposes associated with administering the GCCF, including the prevention of fraud and the determination of collateral source payments; (3) subsequent litigation filed by a Claimant; (4) in the aggregate, assisting a state or federal governmental entity in evaluating the Claims Process; (5) assisting a state or federal governmental entity in facilitating a pending Claim brought to its attention, with the consent of the Claimant, and/or (6) as otherwise required by law, regulation or judicial process.

### IX. QUALITY CONTROL AND PROCEDURES TO PREVENT AND DETECT FRAUD

A. Review of claims

For the purpose of detecting and preventing the payment of fraudulent claims and for the purpose of accurate and appropriate payments to Claimants, the GCCF shall implement procedures to:

1. Verify and authenticate claims.

2. Analyze claim submissions to detect inconsistencies, irregularities, and duplication.

3. Ensure the quality control of claims review procedures.

B. Quality Control

1. The GCCF shall institute periodic quality control audits designed to evaluate the accuracy of submissions and the accuracy of payments.

2. The GCCF shall engage an independent outside accounting firm to perform an independent test of claims to ensure that the claims have been accurately processed.

C. False or Fraudulent Claims

Each Claimant will sign an Interim or Final Claim Form at the time of application, stating that he or she certifies that the information provided in the Claim Form is true and accurate to the best of his or her knowledge, and that he or she understands that false statements or claims made in connection with that application may result in fines, imprisonment, and/or any other remedy available by law, and that suspicious claims will be forwarded to federal, state, and local law enforcement agencies for possible investigation and prosecution. The GCCF shall refer all evidence of false or fraudulent claims to appropriate law enforcement authorities.

11