**Gulf Coast Claims Facility**
www.GulfCoastClaimsFacility.com

202.962.9280

December 1, 2010

The Honorable George H. Sheldon
Secretary
State of Florida
Department of Children and Families
1317 Winewood Blvd.
Tallahassee, Florida 32399-0700

Dear Secretary Sheldon:

I thank you for your letter of November 22 and welcome your comments pertaining to changes and improvements in the Gulf Coast Claims Facility process. I very much appreciated the opportunity to meet with the Task Force on October 28 and look forward to a return visit in 2011. I respond to your latest series of inquires in the order presented in your November 22 letter, and enclose a copy of the "Gulf Coast Claims Facility Protocol for Interim and Final claims" (attached as Exhibit #1) which addresses some of the concerns expressed in your letter:

1) Information and Document Scanning Resources for Local GCCF Staff

As I stated on October 28, I am currently in the process of retaining more local Floridians to assist the GCCF in the submission and processing of claims. I agree with the Task Force that individual claimants must be afforded a better opportunity to be made aware of the status of their claim and the reasons underlying GCCF decisions. This entire issue of transparency is being addressed and I assure you that my hiring of additional local Floridians will help claimants have better access to the details surrounding their respective claims. As for "scanning capability," each of the GCCF sites in the Gulf has the staff and equipment necessary for scanning documents as directed by my office.

2) Early Communication Regarding Documentation

This issue, too, involves transparency and helping the claimant know more about the status of his/her claim and deficiencies associated with the absence of adequate documentation. However, I disagree with the criticism that claimants need "better guidance about the documentation that is required to verify a claim."



**EXHIBIT**

**M**

I believe the GCCF has consistently highlighted the need for adequate documentation, both in the Claim Form itself and the Frequently Asked Questions posted on our web site and available in each of our claims offices (Exhibit A to the Claim Form for Emergency Benefits provides specific information for required documentation necessary to support each claim type). This is a separate issue from that of transparency. The GCCF has received approximately 450,000 claims during the 90 day emergency payment period and has paid about 150,000 claims with adequate documentation. I believe that those claimants who submit a claim with inadequate documentation cannot reasonably maintain that "they didn't know" about documentation requirements. In the great majority of cases, I believe they simply lack the necessary documentation required to process the claim. But, I reiterate the view expressed in your letter that the GCCF needs "to take steps necessary to ensure early and complete communication, so that the process can move expeditiously."

3) <u>Lagging Action on Business Claims</u>

I do not believe that the GCCF can be faulted for "delay in action on business claims." During the just completed 90 day emergency period, the GCCF processed and paid some 15,037 Florida business claims totaling $427,387,976. The processing of some business claims has taken longer than individual claims because of the complexity of the claims, but it would not be fair to state that the GCCF has deliberately delayed the payment of such claims.

4) <u>The Claims Process Should Be More Decentralized</u>

Once again, this issue primarily involves the need for greater GCCF transparency. I do not believe that the organizational structure of the GCCF needs to be modified in order to achieve greater transparency. As I read your letter, the issue is not really whether "the claims process should be more decentralized" but, rather, how the GCCF can be made more efficient and transparent in responding to individual claimant inquires. As already indicated, this is a fair point, and I am taking steps to promote greater transparency at the local level. But I reject the idea that decentralization is required in the interest of promoting efficiency and speed; and I am troubled about conferring more authority on local claims evaluators. I believe to do so would promote greater inconsistency and arbitrariness (this was certainly the case when BP managed the claims processing function prior to August 23). What is important, as you point out, is the need to better inform the claimant of the status of his/her claim and the reasons pertaining to the awards. . I have already taken steps to improve the online information available to claimants regarding the status of their claims and the explanation of payments made. Claimants may go online and obtain current more detailed information on the status of their claims. In addition, if a claimant requires more information or wishes to speak with a representative of the GCCF, the claimant may call the toll-free number and request to speak with a member of our Claim Escalation Team.

5) Revising the GCCF Web Site

In your letter, you once again raise the issue of what is meant by "voluntary," and assert that the GCCF web site is confusing in this regard. Mr. Secretary, based on the fact that in the past 90 days of the Emergency Payment Program, the GCCF received approximately 450,000 claims (!), I reject the idea that the issue of voluntariness has promoted confusion in the processing of claims. If the statistics demonstrate any single point, it is that there is absolutely no confusion whatsoever concerning the GCCF Program or the ability of any claimant to access the Program. One can agree or disagree about what is meant by "voluntary"; but access to the GCCF as the first step in the processing of a claim has simply never been an issue. As far as I know, contrary to your letter, I know of no single claimant that, as a result of "confusion," has advanced a claim directly with the USCG or the Court. If you know of such a case, or a pattern of such cases, please so advise.

6) Transparency

Once again, the Economic Recovery Task Force raises the issue of "data currently provided by the GCCF about its operations…" As I have previously stated, this is a sensitive issue involving a tension between the public's right to know, and, the confidentiality of individual claimant submissions. In addition to online information available to individual claimants, I have attached, for your review, both the first page of daily statistical reports for the overall Program, and state specific reports which are updated daily and publicly available on the GCCF's Website at www.gulfcoastclaimsfacility.com (attached as Exhibit 2).

7) Demographics of the Recent Undocumented Claims Phenomenon

The GCCF has received a total of 451,439 claims for Emergency Advance Payments. Of that number, 147,471 are insufficiently documented, with 68,261 of these claims submitted with no documentation at all. These claimants have been notified of these deficiencies

8) Frequency of Interim Claims

I agree with you that there may be circumstances where the quarterly payment of interim claims "may be problematic for some claimants." Accordingly, the GCCF Final Protocol expressly points out that, although quarterly payments will be the rule, there will be exceptions made in individual cases involving "exigent circumstances." (Section IV.A). The addition of this language is designed to deal with the problem posed in your letter. Whether or not an individual claimant will be able to document such damage on a monthly or quarterly basis is a separate issue; but I agree with you that it is important to permit monthly submissions in those cases where pertinent circumstances exist.

9)  Recovery of Claim Preparation and Filing Costs

Again, I agree with your letter urging the GCCF to pay claimants for the "substantial cost in preparing and presenting their claims to be BP and the GCCF." The GCCF Final Protocol now permits reimbursement of such costs associated with the preparation of claims, as permitted by OPA (Section II.F).

10) Opportunity to Appeal or Reconsideration and Appeals Panel

Your letter highlights the necessity of some type of appeals procedure to be part of the GCCF processing of claims. I agree, and the enclosed Final Protocol provides for a claimant's limited right to appeal to a three judge panel in a certain number of limited cases (Section VI). But it is important to point out that all claimants currently have the right to appeal a decision of the GCCF, first to the USCG and, thereafter, to court if the claimant is unhappy or dissatisfied with the result. This is a requirement of OPA and a claimant need not accept a GCCF decision concerning eligibility or the amount of damages; the claimant already has the right to appeal. This opportunity to appeal is in no way undercut by "the limited dollar amount available to the Oil Spill Liability Trust Fund"; BP has made it expressly clear that any dollar limitation of liability in the Trust Fund will be waived by the Company.

Nevertheless, I agree with the thrust of your letter that the GCCF should also provide a limited right to appeal. I emphasize the need to limit the appeals process. As a practical matter, the sheer volume of claims, and the need to process claims expeditiously in order to get compensation into the hands of eligible claimants, require that the appeals process be efficient, timely, and consistent with speed. This is why the appeals process included in the Final Protocol is limited to both larger claims or those claims where the entire GCCF program would benefit from an appellate ruling. The claims administrator will not choose the members of this three judge panel. They will be chosen by an individual with the credibility and reputation necessary to perform this important function.

Finally, any claimant who received an emergency payment and believes that the payment is inadequate, or was declared ineligible to receive an emergency payment, may request reconsideration by the GCCF as part of the final payment or interim payments process. This is expressly spelled out in the Claim Forms.

Mr. Secretary, it is very important that we balance the due process considerations of an appeal or reconsideration with the practical problems associated with the huge volume of claims. It is simply not practical to encourage appeals which will undercut the need for the very efficiency and speed which you rightfully demand in your letter. We have tried to strike the appropriate balance. Access to the USCG and the courts is always available to a dissatisfied claimant.

11) <u>Proximity</u>

Geographic proximity will not be a barrier to the filing of a claim with the GCCF. But damage must still be proven as directly attributable to the oil spill. Indeed, I continue to believe that the GCCF will be more generous in finding eligibility, and calculating damages, than any court under the law governing OPA. In this regard, I enclose for your consideration, and that of the Task Force, a Memorandum prepared at my request by Professor John Goldberg of the Harvard Law School. (attached as Exhibit 3). He reached his conclusions independently without any substantive review by the GCCF. I am concerned about the possibilities advanced in your letter: should a restaurant in Boston, Massachusetts be eligible for GCCF compensation; what about an inland golf course in Florida 100 miles from the Gulf; what about a furniture store, a dentist, a veterinarian, a chiropractor, all located inland? (The GCCF has received such claims.) I agree with you that "if the claimant has met his burden under OPA, i.e., the loss is the result of the oil spill, regardless of proximity, he is entitled to be fully compensated." The questions remain – is such loss "the result of the oil spill" and has the claimant "met his burden under OPA?" The Goldberg Memorandum is very informative in these regards.

12) <u>Adoption of Standards That Deviate from the Express Language of OPA</u>

I disagree with you that "the concept of foreseeability is not reflected in the language of OPA…" The Goldberg Memorandum discusses this very point at length. The language in the Final Protocol is designed to make it easier, not more difficult, for the claimant to be found eligible. It is true that the Final Protocol does not reflect verbatim the language of OPA; but, as Professor Goldberg points out, the language of OPA would bar many of the very claims that you urge be compensated by the GCCF. The goal of the GCCF is to be as generous as possible. On this point, I am sure we agree. The issue is the language in the Final Protocol and whether or not it advances this objective. I believe it does.

13) <u>Structured Payouts of Final Claims</u>

In theory, I agree with you. The idea of structured payouts makes a great deal of sense—but not in the situation confronted by the GCCF where we have, literally, thousands of eligible claims to be processed for payment. The volume of claims coupled with the understandable need for efficient and speedy payments preclude our ability to provide for structured payouts. It is simply impossible to process claims in the manner desired while at the same time providing some type of structured payout. I would only add that in administering the September 11, 2001 Victim Compensation Fund, we provided structured payments as an option for all claimants, yet only 3% of eligible claimants requested such payments!

Secretary Sheldon, once again permit me to thank you and the Task Force for all of your constructive advice, both in writing and during our October 28 meeting. The GCCF Final Protocol is a much better product as a result of your individual and collective input. I do hope we can continue to work together in the weeks and months ahead and look forward to the next opportunity to meet with the Task Force at a time and place to be determined.

Sincerely,

Kenneth R. Feinberg
Administrator

KRF:shs


cc:     Chris Hart
        Chairman
        Economic Recovery Task Force


Enclosures