# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | *<br>*<br>*<br>*<br>*<br>*<br>* | MDL No. 2179<br><br>SECTION J<br><br>Honorable CARL J. BARBIER<br><br>Magistrate Judge SHUSHAN |
| This document relates to: all cases | | |

**DECLARATION OF GEIR ROBINSON**

I, Geir Robinson, declare as follows:

1. I am over 18 years of age and am the Director—Claims for BP America Inc.'s Gulf Coast Restoration Organization. My role within BP America Inc. gives me oversight capacity for administering BP's existing claims process under the Oil Pollution Act of 1990 ("OPA"). I also had authority for transitioning the individual and business claims in that process to the Gulf Coast Claims Facility ("GCCF") administered by Mr. Kenneth Feinberg.

2. In my position, I have personal knowledge of the matters set forth in this declaration, including the OPA claim described below, and if called upon to do so, I could testify to the same effect.

3. A company with which BP does business (the "Claimant") provides geoscience data and services to the oil and gas industry, and was conducting a seismic survey in the vicinity of the Macondo prospect when the explosions aboard the *Deepwater Horizon* occurred on April

20, 2010.  The Claimant also was involved in the emergency response to the *Deepwater Horizon* incident at the behest of the United States Coast Guard.

4. On August 20, 2010, before the GCCF began administering individual and business OPA claims, the Claimant filed a claim with BP in the amount of $40,304,204.  BP had begun the transition of the OPA claims administration process to the GCCF, which was nearly complete by August 20.  The Claimant's claim related to the seismic survey it was conducting on April 20, 2010, and the alleged costs and damages that the Claimant claimed to have incurred as a result of the *Deepwater Horizon* incident and the oil spill, which prevented the Claimant from conducting the survey.  Given the nature of the Claimant's business, the evaluation of its OPA claim required industry specific commercial and technical expertise.

5. After receiving the Claimant's claim, BP transferred the claim to the GCCF.  However, BP and the Claimant had been actively involved in settlement discussions before the GCCF began accepting OPA claims in late August 2010, and agreed to continue their efforts to resolve the Claimant's claim.

6. On September 30, 2010, BP and the Claimant agreed to a commercial settlement framework that had two components: (i) the Claimant would receive the amount of $10 million, which was substantially less than the amount of its stated OPA claim of $40,304,204, and (ii) BP would commit to purchasing certain seismic data in the amount of approximately $18 million from the Claimant in the future.  The parties agreed that, in the event the GCCF paid the Claimant less than $10 million for its new claim, BP would pay the Claimant the difference between $10 million and the lesser amount paid by the GCCF to the Claimant.  If, however, the GCCF paid the Claimant more than $10 million for its new claim, BP would be entitled to receive from the Claimant an amount equal to the difference between $10 million and the

amount paid by the GCCF, provided that the Claimant would apply such amount as a credit against any outstanding amounts BP then owed or later came to owe the Claimant. The Claimant and BP further agreed that if the GCCF did not respond prior to June 30, 2011, BP would pay the $10 million directly to the Claimant and the Claimant agreed to pay any GCCF payment made thereafter back to BP through the credit process described above.

7. On October 4, 2010, BP forwarded the joint resolution of the Claimant and BP to the GCCF, explaining the background of the Claimant's OPA claim and the parties' agreement relating to the commercial resolution of that claim. In the transmittal to the GCCF, BP recognized that the joint resolution represented BP's and the Claimant's agreed view but did not bind the GCCF. It was BP's understanding that the GCCF was free to make a different determination of the merits of the Claimant's claim that could have been higher or lower than the agreed resolution amount.

8. It is my understanding that on or about November 3, 2010, following a request by the GCCF, the Claimant filed an electronic claim with the GCCF in the amount of $10 million and that the GCCF paid the claim in December 2010. BP received a full release from the Claimant in connection with the payment of its revised OPA claim.

Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the forgoing is true and correct.

Dated: February 18, 2011

Geir Robinson