# EXHIBIT C

# GCCF   Gulf Coast Claims Facility

**GULF COAST CLAIMS FACILITY ANNOUNCEMENT**
**OF**
**PAYMENT OPTIONS, ELIGIBILITY AND SUBSTANTIATION CRITERIA, AND**
**FINAL PAYMENT METHODOLOGY**
February 2, 2011

## I. INTRODUCTION

The Gulf Coast Claims Facility ("GCCF") seeks public comment pertaining to the next phase of the claims process. In particular, the GCCF invites all claimants and other interested parties to respond to the following draft proposal governing eligibility and substantiation criteria and payment methodologies for Final and Interim Claims. (NOTE: the "Quick Payment" option is always available to any claimant who received an Emergency Advance Payment or an Interim Payment.)

The public comment period will be open from Wednesday, February 2 through Wednesday, February 16, 2011. Thereafter, the GCCF will adopt final rules for adjudication and payment of all Final and Interim Claims.

During the past several months, the GCCF has sought the advice and guidance of experts who have studied the present and future condition of the Gulf. In addition, the GCCF has benefitted from the valuable input of individuals and businesses whose economic livelihood depends upon Gulf resources, including those involved in all aspects of tourism, commercial and charter fishing and other industries including shrimping, crabbing, oyster harvesting, etc. The GCCF has sought a comprehensive understanding of the impact caused by the Deepwater Horizon Incident (the "Oil Spill") and its aftermath. Experts retained by GCCF have pored through various reports and studies pertaining to the future of the Gulf, and have compiled an extensive list of references. Copies of the expert opinions and the reference materials used, are attached to this Announcement. In adopting its final rules governing payment of all Final and Interim Claims, the GCCF is gathering facts from various sources in order to develop a credible and fair payment program.

The purpose of the two-week public comment period is to promote transparency and open discussion. Written comments received by the GCCF during the two-week public comment period will be made publicly available on the GCCF website. What follows is a <u>draft</u> proposal; it may be modified following input received during the comment period.

## II. ELIGIBILITY AND SUBSTANTIATION CRITERIA

The GCCF proposes to adopt the following principles governing the eligibility and substantiation criteria applicable to Final and Interim Claims for individuals and businesses to receive a Final or an Interim Payment from the GCCF:

1. All individuals and businesses that incurred losses due to the Oil Spill are encouraged to file a Final or Interim Claim with the GCCF. Documentation of damage <u>attributable to the Oil Spill</u> is essential.

2. Final and Interim Payments are available for those claimants who can prove their damages due to the Oil Spill, or who can establish a physical injury or death caused by the Deepwater Horizon Incident and its aftermath.

3. As expressly indicated from the very beginning of the Emergency Advance Payment Program, the documentation requirements for receiving either a Final Payment or an Interim Payment are more rigorous and exacting than the minimal documentation requirements that governed administration of the Emergency Advance Payment Program. Each claimant is required to establish both actual financial loss and the connection between the loss and the Oil Spill. More detailed guidance on required documentation will be posted on the GCCF website to assist claimants in providing all necessary supporting documentation and to reduce or eliminate delay due to deficient submissions.

4. The GCCF will not presume that a given loss was or was not caused by the Oil Spill, regardless of whether or not the claimant received an Emergency Advance Payment. Each claim stands on its own merits, and the GCCF will evaluate each submission to determine whether a loss was caused by the Oil Spill. In all cases, there must be an identifiable link between an actual loss

2

and the Oil Spill. Evidence establishing this connection is required. For example, a claimant might provide documentation of cancelled orders for goods or services, disruptions to the supply of Gulf seafood, a termination of employment or reduction in wages that an employer confirms was caused by the Oil Spill, etc. Likewise, the GCCF will not presume that a claimant's 2010 income or profits would have been greater or less than the claimant's 2009 income or profits. Providing financial information about losses sustained in 2010 is but one form of proof, and will not be sufficient documentation for many individuals and businesses other than those claiming injury to specific property or a specific natural resource, e.g., a beach, a swimming area, fishing grounds, etc. Documentation linking the sustained losses to the Oil Spill will be required.

Individuals claiming physical injury or death due to the Oil Spill will be eligible to receive compensation from the GCCF. Such claims must be documented, proving that the physical injury or death is attributable to the Oil Spill and not some other cause. In cases where claimants assert a disability caused by the Oil Spill, evidence of partial or permanent disability, such as a Social Security or State Workers' Compensation determination of disability, will be required in order to determine the extent of any long term impact on the ability of the claimant to work in his/her chosen profession.

### III. CALCULATION OF AWARDS FOR FINAL AND INTERIM PAYMENTS

The GCCF has retained scientific and economic experts to comprehensively research and review studies pertaining to the impact of the Oil Spill on Gulf resources. These experts also reviewed numerous studies analyzing the economic recovery rates from other major catastrophic events affecting tourism. In addition, the GCCF consulted with numerous individuals and businesses located in the Gulf region in order to understand the possible impact to individuals and Gulf businesses due to the Oil Spill. The GCCF's goal is to determine the impact of the Oil Spill on seafood harvests, the recovery rate for the tourism industry and the general Gulf economy. An effort has

been made by the GCCF to determine the length of time to full economic recovery and the related pattern of gradual recovery over time.

The GCCF will base its calculation of awards for Interim Payments on actual documented losses incurred by a claimant during the period immediately following the Oil Spill on April 20, 2010 and the date the Interim Claim is filed. For Final Payments, the GCCF will base its calculation on two important factors: (1) actual documented losses incurred by the claimant from the date the losses began since the Oil Spill on April 20, 2010, and (2) a future losses factor to value the risk of possible future losses as determined by the retained experts.

Having examined available expert opinions, studies, reports and comments the GCCF believes that based on the existing available data:

- There is evidence of a strong recovery underway. However, the GCCF has concluded that it is reasonable to base its future payment calculations on the principle that a full economic recovery in the Gulf region is likely (but not certain) within two to three years from the date of the Oil Spill.
- Prediction is not an exact science. In light of the uncertainty that remains, the GCCF believes that it is appropriate to provide claimants desiring to finally resolve their claim at this time with a payment that accounts for the inherent uncertainty concerning the future.
- The GCCF's conclusions are based on currently available data. The GCCF will undertake a renewed evaluation of available data every four months. If such re-evaluation suggests a change in the relative uncertainty concerning the future that warrants an adjustment to the payment for future risk, the GCCF will make the appropriate adjustment and will apply the adjustment to all claims submitted from that date forward. However, final claims previously submitted with complete documentation but not yet evaluated will be paid the higher of the future losses factor applicable at the time the claim submitted was completely documented, or the adjusted future losses factor.
- Any claimant who disagrees with the GCCF's approach regarding future payment calculations or is not ready to accept it, is free to opt for Interim Payments based

upon documented past damage, while awaiting further evidence of Gulf region economic recovery.

1. Actual Documented Losses – Once claimants have demonstrated a direct connection linking the sustained losses for past and present damages to the Oil Spill, eligible claimants will be compensated for documented losses directly caused by the Oil Spill incurred during the period immediately following the Oil Spill on April 20, 2010 and the date of the filing of an Interim or Final Claim with the GCCF ("the loss period"). (For many claimants, much of this documented loss has already been compensated by BP and the GCCF Emergency Advance Payment Program. Such compensation will be deducted from the claimant's total payment offer.) The calculation of these actual documented losses will be based on a comparison to income from prior years for the same months (for example the average of income earned in 2008 - 2009 or another appropriate historical comparison deemed most relevant to the claimant's experience). In these cases, the claimant's actual loss will be determined by taking the difference between the claimant's income during the loss period and the comparison period to arrive at the claimant's actual loss. In other cases, for example for a "start-up" company which anticipated generating income in 2010, a different methodology will be employed.

2. Calculation of Future Losses – The calculation of future losses will be based upon the actual losses incurred during the period immediately following the Oil Spill on April 20, 2010 through December 31, 2010. The GCCF will use these actual documented 2010 losses to anticipate the gradual economic recovery expected to conclude within two to three years from the date of the Oil Spill. It is anticipated that, for all businesses other than oyster harvesting, recovery will continue in 2011 with full recovery expected in 2012. This gradual recovery anticipates that losses in 2011 will be approximately 70% of the actual documented losses in 2010. With continuation of the recovery,

5

the GCCF expects claimants will experience losses in 2012, but at an average of approximately 30% of the actual documented losses in 2010. <u>Adding together the effect over 2011 and 2012, the Final Payment Offer will be equal to two times the actual documented losses in 2010.</u>

The experts anticipate that individuals and businesses engaged in harvesting oysters destroyed as a result of the Oil Spill, or due to the diversion of fresh water into the Gulf in reaction to the Oil Spill, will likely require a longer recovery period than that experienced by other claimants, without the same degree of gradual recovery. Accordingly, <u>the Final Payment Offer for those claimants will be equal to an amount four times the actual documented losses in 2010</u>.

For claimants with actual documented losses in 2010 of $500,000 or more, the GCCF will not automatically apply the future losses factor to claimant's actual 2010 total losses. The Final Payment calculation for these claimants will be determined on an individualized basis after analyzing input from the claimant as well as the experts retained by the GCCF. The Final Payment Offer will be the actual documented losses in 2010 and an additional amount to compensate for the recovery and risk of possible future losses.

3. In sum, eligible claimants will be paid <u>two times</u> actual documented 2010 losses due to the Oil Spill to compensate for all past and anticipated future losses (except, as described above for claimants with 2010 losses of $500,000 or more). Eligible oyster harvesters will be paid <u>four times</u> actual documented 2010 losses due to the Spill to compensate for all past and anticipated future losses. (The Final Payment Offer will be reduced by compensation already received in Emergency Advance Payments from BP, the GCCF and other offsets.) <u>If any claimant believes that the future of the Gulf continues to be uncertain and is not yet prepared to file a Final Claim, that Claimant may continue to file Interim Claims with the GCCF</u>.

6

4. Final Payments or Interim Payments – The GCCF will pay eligible individuals or businesses either a Final Payment or an Interim Payment, as the claimant may request. The future losses factor, as determined by the GCCF, may be modified going forward as more information becomes available about the future of the Gulf Coast economy. It is, therefore, entirely possible that the future losses factor for determining the future impact of the Oil Spill in the Gulf will be increased or reduced as more information becomes available. Claimants should take this possibility into account in deciding whether to file an Interim Claim or a Final Claim.

For Claimants who have filed a Final Payment Claim with incomplete 2010 documentation, the GCCF will determine and calculate the claim based upon submitted documented actual 2010 losses. Claimant will have the option to accept the Final Payment Offer based upon submitted 2010 documentation of actual loss that was available to the GCCF for determination and calculation, or accept the payment of an Interim Payment Claim as an installment on the Final Payment Offer and request the re-evaluation of the Final Payment Claim after they have submitted additional documentation of 2010 losses.

---

EACH CLAIMANT'S FINAL PAYMENT OFFER AMOUNT WILL BE THE LARGER OF:

(1) Two times each eligible Claimant's 2010 Actual Documented Losses (except for claimants with 2010 losses in excess of $500,000); four times each eligible oyster harvester's 2010 Actual Documented Losses, or

(2) The total actual documented losses through the date of the filing of the Final Claim.

---

# EXHIBIT D

# GCCF  Gulf Coast Claims Facility
Learn More at: www.GulfCoastClaimsFacility.com

The Gulf Coast Claims Facility ("GCCF") is administered by Kenneth R. Feinberg, who is responsible for all decisions relating to the administration and processing of claims submitted to the GCCF. Mr. Feinberg and the GCCF are acting for and on behalf of BP Exploration & Production Inc. in fulfilling BP's statutory obligations as a "responsible party" under the Oil Pollution Act of 1990.

Please note that you have the right to consult with an attorney of your choosing prior to accepting any settlement from the GCCF or signing a release of legal rights.

**Multilingual Toll Free: 1-800-916-4893 | TTY: 1-866-682-1758**
**www.GulfCoastClaimsFacility.com**

Contáctenos para obtener información en español.

Hãy liên hệ với chúng tôi để có thông tin bằng tiếng Việt

សូមទំនាក់ទំនងមកការិយាល័យខ្ញុំដើម្បីទទួលបានព័ត៌មានជាភាសាខ្មែរ។

info@GCCF-Claims.com

# GULF COAST CLAIMS FACILITY
# SAMPLE RELEASE and COVENANT NOT TO SUE

This is a sample of the Release and Covenant Not To Sue that you will be required to sign if you accept the GCCF Offer of Final Payment. DO NOT SIGN THIS SAMPLE RELEASE. You will receive a copy of the Release and Covenant Not to Sue for you to sign with your Offer of Final Payment.

<u>Important Information About the Attached Release And Covenant Not to Sue;
Acknowledgement and Election to Accept the Final Payment Offer</u>

The attached Release and Covenant Not to Sue ("Release") is a binding legal document. By signing this document, you are forever waiving and releasing all claims that you may have against BP or any other party other than claims for Bodily Injury (including claims alleging a mental health injury) ("Bodily Injury") or by shareholders of BP or other Released Parties for alleged violations of Securities laws ("Securities Claim") in connection with the April 20, 2010 blowout of the Macondo Well, the sinking of Transocean's Deepwater Horizon drilling rig, and the subsequent oil spill in the Gulf of Mexico (the "Incident").

You are under no obligation to accept the final payment offered to you by the Gulf Coast Claims Facility. You are free to reject the final payment offered by the Gulf Coast Claims Facility and to pursue other means of compensation. If you want to file a lawsuit regarding the Incident or make a claim against the Oil Spill Liability Trust Fund, do not sign this Release.

By signing the attached Release, you are forever giving up and discharging any rights which you may have for any costs, damages or other relief related to or arising from the Incident (excepting claims for Bodily Injury or Securities Claim), even if you are not currently aware of such costs or damages and even if such costs or damages arise in the future (i.e., additional oil impacts) or do not manifest themselves until the future.

By signing the attached Release, you acknowledge that you have read and understand the terms of the Release, and that you execute the Release voluntarily and without being pressured or influenced by, and without relying upon, any statement or representation made by any person acting on behalf of BP or any other released party.

**If you are represented by an attorney in connection with your Claim, confer with your attorney before signing this Release.**

For a Business Claimant, if the business is a sole proprietorship and you are the owner and you are married, or if the business is jointly owned by you and your spouse, both you and your spouse must sign the Release. For an Individual Claimant, if you are married, both you and your spouse must sign the Release. You and your spouse should not sign the Release unless you both intend to release all claims.

Claimant acknowledges that Claimant has read and understands the information in this Section. Claimant elects to accept the Final Payment Offer as a final settlement of all claims against any party in connection with the Incident (other than claims for Bodily Injury or Securities Claim).

Claimant consents to the use and disclosure by the GCCF and those assisting the GCCF of any information that it believes necessary and/or helpful to process Claimant's claim for compensation and payment including any legitimate business purposes associated with administering the GCCF and providing adequate documentation for insurance coverage of responsible parties, and/or as otherwise required by law, regulation or judicial process.

Signature of Claimant: _____ Date: _____

I acknowledge that I have read and understand the information in this Section. I consent to the claimant's election to accept the Final Payment Offer as a final settlement of all claims of Claimant against any party in connection with the Incident (other than claims for Bodily Injury or Securities Claim).

Spousal Signature (if applicable): _____ Date: _____

# RELEASE AND COVENANT NOT TO SUE

1. In consideration of payment in the amount of _____, Claimant hereby releases and forever discharges, and covenants not to sue BP Exploration & Production Inc. ("BP") and the other Released Parties, including but not limited to the parties listed in Attachment A to this Release, for any losses, damages, costs, expenses, injuries, claims, causes of actions, liabilities, or other relief that Claimant has or may have, whether known or unknown, whether present or future, whether direct or indirect, whether legal or equitable, arising from or relating in any way to the April 20, 2010 blowout of the Macondo Well, the sinking of Transocean's Deepwater Horizon drilling rig, and the subsequent oil spill in the Gulf of Mexico (the "Incident") (collectively, "Claims"), provided however that this Release does not apply to claims (i) for bodily injury (including claims alleging a mental health injury) ("Bodily Injury") or (ii) by shareholders of BP or other Released Parties for alleged violations of securities laws ("Securities Claim").

2. Claimant also, on behalf of Claimant's spouse, heirs, beneficiaries, agents, estates, executors, administrators, personal representatives, subsidiaries, parents, affiliates, partners, limited partners, members, joint venturers, shareholders, predecessors, successors, assigns, insurers, and attorneys (collectively, "Affiliates"), hereby releases and forever discharges, and covenants not to sue BP and the other Released Parties for any Claims released by Claimant pursuant to Paragraph 1 above. With regard to an insurer of the Claimant, notwithstanding anything to the contrary in the foregoing, the execution of this Release by Claimant shall not release the claims of an insurer of Claimant if and only if the Claimant has disclosed in writing on Claimant's Full Review Final Claim Form for Final Payment or Emergency Advance Payment Claim Form submitted to the Gulf Coast Claims Facility, the fact of a payment, and the amount of the payment, by the insurer to Claimant.

3. This Release applies to all Claims regardless of the legal or equitable theory (including legal and equitable theories under federal, state, local, and international law, and including without limitation statutory law, regulation, common law, maritime law, strict liability, negligence, gross negligence, punitive damages, nuisance, trespass, and all other legal and equitable theories), whether existing now or arising in the future, arising out of or in any way relating to the Incident, provided however that this Release does not apply to claims for Bodily Injury or Securities Claim.

4. Released Parties means anyone who is or could be responsible or liable in any way for the Incident or any damages related thereto, whether a person, company or governmental entity, including (but not limited to) BP, other potentially responsible or liable parties, including but not limited to the parties listed in Attachment A to this Release, the federal Oil Spill Liability Trust Fund and any state or local fund, and each of their respective Affiliates as defined above.

5. Claimant represents and warrants that Claimant (i) has authority to execute this Release; and (ii) has not sold or otherwise transferred or assigned any of the Claims, or any interests in such Claims.

6. Claimant represents and warrants that Claimant has not received any payment from any insurer or other party (other than BP or the GCCF) in connection with the Incident, other than payments disclosed on the Full Review Final Claim Form for Final Payment. However, the representation and warranty contained in this section (6) is not applicable to a Claimant electing to submit a Quick Payment Final Claim Form and receive a Quick Payment.

7. Claimant will dismiss with prejudice within 10 days of executing this Release any litigation concerning the Incident (other than litigation alleging only Bodily Injury or Securities Claim) filed by or on behalf of Claimant against BP or any other Released Parties. Claimant also will withdraw (the obligation to withdraw is satisfied by affirmatively declining to participate if and when the Claimant receives any communication giving Claimant the option of participating or not participating in a class action or similar procedural device) from any existing and will not join any new class actions or similar procedural devices concerning or relating to the Incident (other than class actions or similar procedural devices alleging only Bodily Injury or Securities Claim).

8. This Release is not intended to prevent any of the Released Parties from exercising their respective rights of contribution, subrogation, or indemnity under the Oil Pollution Act of 1990 ("OPA") or any other law. As this Release is fully and completely resolving, together with all other Claims, Claimant's claim under OPA, BP is hereby subrogated to any and all rights that Claimant has arising from the Incident.

9. The payment to Claimant is made without any admission of liability or wrongdoing, or any acknowledgment that the law recognizes any allegation referenced herein, by BP or any other Released Party.

10. The provisions of this Release and all questions with respect to the construction and enforcement thereof and the rights and liabilities hereto shall be governed by, and construed and enforced in accordance with, the laws of the state of residence of the Claimant at the time of signing this Release without regard to conflicts of laws principles.

11. This Release supersedes any and all other agreements, written or oral, between BP and Claimant with respect to such subject matter of this Release.

12. If there is no signature on the line below for Claimant's Spouse, Claimant represents and warrants that Claimant is not married.

# RELEASE AND COVENANT NOT TO SUE

### Release and Covenant Not to Sue – Signature by the Claimant

As the Claimant, or authorized signatory of the Claimant, as set forth in the Claim Form, I am signing this Release and Covenant Not to Sue:

| | |
|---|---|
| Signature of Claimant or Authorized Signatory of the Claimant: | SAMPLE DO NOT SIGN |
| Printed Name: | |
| Title, if a business: | |
| Date: | (Month/Day/Year): ____/____/_____ |

### Release and Covenant Not to Sue – Signature by the Claimant's Spouse (if applicable)

As the spouse of the individual signing above, I am signing this Release and Covenant Not to Sue:

| | |
|---|---|
| Signature: | SAMPLE DO NOT SIGN |
| Printed Name: | |
| Date: | (Month/Day/Year): ____/____/_____ |

Aerotek, Inc.
Ameri-Force, Inc.
Anadarko Petroleum Company
Anadarko Petroleum Corporation
Anadarko E&P Company LP
Art Catering, Inc.
Ashland
BJ Services Company, USA
BP America Inc.
BP America Production Company
BP Company North America Inc.
BP Corporation North America Inc.
BP Corporation North America Inc. Savings Plan Investment Oversight Committee
BP Energy Company
BP Exploration (Alaska) Inc.
BP Global Special Products (America) Inc.
BP Holdings North America Limited
BP plc
BP Products North America Inc.
Brett Robinson Gulf Corporation
Cameron Corporation
Cameron International Corporation f/k/a Cooper Cameron Corporation
Cameron International Corporation d/b/a/ Cameron Systems Corporation
Center for Toxicology and Environmental Health L.L.C.
Chouest Shorebase Services, LLC
Clean Harbors
Core 4 Kebawk, LLC
Crowder/Gulf Joint Venture
Crowder Gulf Disaster Recovery
Diamond Offshore Company
DOF Subsea USA, Inc.
Drill-Quip, Inc.
Entrix, Inc.
Environmental Standards
EPS Corporation
ERG
ES&H Environmental Services
ESIS, Inc.
Exponent
Global Diving & Salvage, Inc.
Gulf Offshore Logistics, LLC
Gulf Offshore Logistics International,LLC
Halliburton Energy Services, Inc.
Halliburton Company
Hamilton Eng.
Hepaco
Hilcorp Energy Company
Hyundai Heavy Industries Co. Ltd, Inc.
Hyundai Motor Company
In Rem Vessels
Island Ventures II
Jupiter Insurance Limited
LaBorde Marine Services, LLC
Lloyd's of London
Marine Spill Response Corporation
MEG Energy Corp
M-I L.L.C.
M-I Drilling Fluids L.L.C.
M-I Swaco
Miller Environmental Group, Inc.
Mitsui & Co. (USA), Inc.
Mitsui & Co. Ltd.
Mitsui Oil Exploration Co. Ltd.
Moran Environmental Recovery, LLC
MOEX Offshore 2007 LLC

Moex USA Corporation
MV Monica Ann
MV Pat Tilman
MV Damon B. Bankston
MV Max Chouest
MV Ocean Interventions
MV C. Express
MV Joe Griffin
MV Mr. Sidney
MV Hilda Lab
MV Sailfish
MV Seacor Washington
MV Seacor Vanguard
Nalco Holding Company
Nalco Finance Holdings LLC
Nalco Finance Holdings Inc.
Nalco Holdings LLC
Nalco Company
Nautical Ventures, LLC
Nautical Solutions, LLC
O'Brien's Response Management, Inc.
Ocean Runner, Inc.
Oceaneering International, Inc.
Offshore Cleaning Systems L.L.C.Offshore Service Vessels, LLC
Offshore Inland Marine & Oilfield Services, Inc.
Ranger Offshore, Inc.
Reel Pipe, LLC
Schlumberger, Ltd.
Seacor Marine, LLC
Seacor Marine, Inc.
Seacor Marine International, Inc.
Siemens Financial, Inc.
Seafairer Boat, LLC
State Street Bank and Trust Company
Subsea 7 LLC
The Response Group, Inc.
TestAmerica, Inc.,
Tiburon Divers, Inc.
Tidewater Marine LLC
Tiger Safety, LLC
TL Wallace
Transocean Inc.
Transocean Deepwater, Inc.
Transocean Drilling (U.S.A.) Inc.
Transocean Enterprise Inc.
Transocean Holdings Inc.
Transocean Holdings LLC
Transocean Ltd.
Transocean Offshore Deepwater Drilling, Inc.
Transocean Offshore USA, Inc.
Triton Asset Leasing GmbH
Triton Hungary Asset Management KFT
Triton Hungary Asset Management Limited Liability Company
USES/Construct Corps
Weatherford International Ltd.
Weatherford U.S. L.P
Worley Catastrophe Services, LLC
Worley Catastrophe Response, LLC