```
 1              UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF LOUISIANA
 2

 3    ******************************************************************

 4    IN RE:  OIL SPILL BY THE
      OIL RIG DEEPWATER HORIZON
 5    IN THE GULF OF MEXICO ON
      APRIL 20, 2010
 6
                          CIVIL ACTION NO. 10-MDL-2179 "J"
 7                        NEW ORLEANS, LOUISIANA
                          FRIDAY, FEBRUARY 18, 2011, 11:00 A.M.
 8
      THIS DOCUMENT RELATES TO
 9    ALL ACTIONS

10    ******************************************************************

11
            TRANSCRIPT OF E-DISCOVERY STATUS CONFERENCE PROCEEDINGS
12             HEARD BEFORE THE HONORABLE SALLY SHUSHAN
                  UNITED STATES MAGISTRATE JUDGE
13

14    APPEARANCES:

15

16    PLAINTIFFS'
      LIAISON COUNSEL:          DOMENGEAUX WRIGHT ROY & EDWARDS
17                              BY:  JAMES P. ROY, ESQUIRE
                                P. O. BOX 3668
18                              556 JEFFERSON STREET
                                LAFAYETTE, LA  70502
19

20                              HERMAN HERMAN KATZ & COTLAR
                                BY:  STEPHEN J. HERMAN, ESQUIRE
21                              820 O'KEEFE AVENUE
                                NEW ORLEANS, LA  70113
22

23
      FOR THE PLAINTIFFS:       IRPINO LAW FIRM
24                              BY:  ANTHONY IRPINO, ESQUIRE
                                ONE CANAL PLACE
25                              365 CANAL STREET, SUITE 2990
                                NEW ORLEANS LA  70130
```

09:23AM

```
 1   APPEARANCES CONTINUED:

 2


 3   FOR THE UNITED STATES
     OF AMERICA:              ENVIRONMENTAL ENFORCEMENT SECTION
 4                            U.S. DEPARTMENT OF JUSTICE
                              BY:  STEVEN O'ROURKE, ESQUIRE
 5                            P.O. BOX 7611
                              WASHINGTON, D.C. 20044
 6


 7


 8   FOR BP AMERICA INC.,
     BP AMERICA PRODUCTION
 9   COMPANY, BP COMPANY
     NORTH AMERICA INC.,
10   BP CORPORATION NORTH
     AMERICA INC.,
11   BP EXPLORATION &
     PRODUCTION INC.,
12   BP HOLDINGS NORTH
     AMERICA LIMITED,
13   BP PRODUCTS NORTH
     AMERICA INC.:            KIRKLAND & ELLIS
14                            BY:  J. ANDREW LANGAN, ESQUIRE
                                   MARK J. NOMELLINI, ESQUIRE
15                            300 N. LASALLE
                              CHICAGO, IL 60654
16


17                            LISKOW & LEWIS
                              BY:  DON K. HAYCRAFT, ESQUIRE
18                            ONE SHELL SQUARE
                              701 POYDRAS STREET
19                            SUITE 5000
                              NEW ORLEANS, LA 70139
20


21


22   FOR CAMERON INTERNATIONAL
     CORPORATION:             STONE PIGMAN WALTHER WITTMANN
23                            BY:  CARMELITE M. BERTAUT, ESQUIRE
                              546 CARONDELET STREET
24                            NEW ORLEANS, LA 70130

25
```

```
 1    APPEARANCES CONTINUED:

 2

 3    FOR HALLIBURTON
      ENERGY SERVICES, INC.:   GODWIN RONQUILLO
 4                             BY:  R. ALAN YORK, ESQUIRE
                               1331 LAMAR, SUITE 1665
 5                             HOUSTON, TEXAS 77010

 6

 7    ALSO PRESENT:            WILLIAM LARGE, ESQUIRE
                               MICHELLE MACLEOD, ESQUIRE
 8                             RYAN BABIUCH, ESQUIRE
                               CHRISTOPHER KAUL, ESQUIRE
 9

10

11    OFFICIAL COURT REPORTER:     CATHY PEPPER, CRR, RMR, CCR
                                   CERTIFIED REALTIME REPORTER
12                                 500 POYDRAS STREET, ROOM B406
                                   NEW ORLEANS, LA  70130
13                                 (504) 589-7779

14    PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.  TRANSCRIPT
      PRODUCED BY COMPUTER.
15

16

17

18

19

20

21

22

23

24

25
```

1               **P-R-O-C-E-E-D-I-N-G-S**

09:23AM  2          FRIDAY, FEBRUARY 18, 2011

09:23AM  3          A F T E R N O O N   S E S S I O N

09:23AM  4               (COURT CALLED TO ORDER)

09:23AM  5

11:02AM  6

11:02AM  7          THE DEPUTY CLERK:  All rise.

11:02AM  8          THE COURT:  Hi, guys.  How are you?

11:02AM  9          MR. LANGAN:  Good morning, Your Honor.  My partner is

11:02AM 10  out there.  They are talking with the opposing counsel.

11:02AM 11          THE COURT:  That's good.  Leave them alone.  Leave them

11:02AM 12  alone.

11:02AM 13               How is the week going?

11:02AM 14          MR. YORK:  It is Friday, isn't it?

11:03AM 15          THE COURT:  I'm not sure.  I haven't had the kind of

11:03AM 16  week you had.

11:03AM 17          MR. YORK:  Judge Shushan, may I introduce you to

11:03AM 18  Michelle MacLeod, who is an associate with our firm in Dallas.

11:03AM 19          THE COURT:  Nice to meet you.  What's your role going to

11:03AM 20  be?

11:03AM 21          MS. MACLEOD:  Spectator.

11:03AM 22          MR. YORK:  She has actually got some information on

11:03AM 23  Halliburton's electronic discovery and ESI information, a topic

11:03AM 24  about which I will do my very best not to speak today.

11:03AM 25          MR. LARGE:  Your Honor, William Large.  I asked if

11:03AM  1     Michelle could be here so that when I represent what I think
11:03AM  2     Halliburton is doing, that she will tug on my sleeve and tell me
11:03AM  3     if I'm incorrect so I don't overstep anything.
11:03AM  4              THE COURT:  That's good.  So she's here as a monitor.
11:03AM  5              MR. LARGE:  To keep me honest.
11:03AM  6              THE COURT:  Yes, exactly.
11:03AM  7              MR. NOMELLINI:  Your Honor, Mark Nomellini on behalf of
11:03AM  8     BP.
11:03AM  9              THE COURT:  How are you doing, Mark?
11:03AM  10                 All right.  Well, let's get our ourselves rolling.
11:04AM  11                 Let's see, where do we want to start?  We had a
11:04AM  12     sort of dispute, but an amicable one, with regard to the
11:04AM  13     provisions of Pretrial Order Number 16 and whether or not we
11:04AM  14     needed to reach agreement on the provisions of Paragraph 13
11:04AM  15     regarding search terms, date ranges, etcetera.
11:04AM  16                 I sort of did anticipate that agreement would be
11:04AM  17     reached, but what I hope to do today is reach agreement, so we'll
11:04AM  18     put that behind us and we'll move forward.
11:04AM  19                 You all got my questions relative to your
11:05AM  20     submissions, and I thought maybe we could go through those to
11:05AM  21     educate me.
11:05AM  22              MR. LANGAN:  Your Honor, I'm not sure we got any
11:05AM  23     questions.
11:05AM  24              MR. HAYCRAFT:  I know of none.
11:05AM  25              THE COURT:  Really?

11:05AM 1          MR. LARGE:  Gee, I did.  I don't know what happened,
11:05AM 2    Andy, Mark.
11:05AM 3          UNIDENTIFIED SPEAKER:  Thank you very much.
11:05AM 4          MR. LANGAN:  Do you have another copy?  When did they
11:05AM 5    come around?
11:05AM 6          THE COURT:  Yesterday.  Let's just go through them.
11:05AM 7    Mike, would you go ask Marie to print out that e-mail again
11:05AM 8    and --
11:05AM 9          MR. LANGAN:  Sorry about that.  Maybe it's a mistake at
11:05AM 10   our end.
11:05AM 11         THE COURT:  No, it sounds like it didn't go to anybody.
11:05AM 12         MR. LARGE:  I did get it, Your Honor.
11:05AM 13         MR. YORK:  I don't think we were technically supposed to
11:05AM 14   be in the loop, but we didn't get it.
11:05AM 15         THE COURT:  It's not a big deal.  They are easy
11:05AM 16   questions, not even multiple choice.
11:05AM 17             Well, let's see.  I don't know what happened, guys,
11:05AM 18   and I apologize because everybody is busy doing other things.
11:06AM 19             Have the parties already agreed to a list of
11:06AM 20   custodians that were involved in the incident itself?  Because
11:06AM 21   the 57 custodians that we are currently looking at appear to only
11:06AM 22   be related to the amount of oil spilled, the health and
11:06AM 23   environmental aspect, and the efforts to cap and seal the well.
11:06AM 24             So I wanted to start with seeing what the universe
11:06AM 25   was.  Have you all agreed to the incident custodians?

11:06AM  1         MR. NOMELLINI:  Your Honor, Mark Nomellini.  We did

11:06AM  2   propose a list of incident custodians to the PSC.

11:06AM  3         THE COURT:  Where does the PSC stand on that list,

11:07AM  4   because it seems to me that's important?

11:07AM  5         MR. LARGE:  Your Honor, I think this actually gets to

11:07AM  6   one of the broader questions.  We have not agreed on the 57.

11:07AM  7         THE COURT:  This is not the 57.  I'm trying to put the

11:07AM  8   57 aside.

11:07AM  9         MR. LARGE:  I understand.

11:07AM 10         THE COURT:  I'm trying to see what the universe of

11:07AM 11   custodians is.  You all are out taking depositions.

11:07AM 12         MR. LARGE:  Yes, Your Honor.

11:07AM 13         THE COURT:  Those custodial files are being produced on

11:07AM 14   a rolling basis.

11:07AM 15              In addition to that, have you all identified the

11:07AM 16   custodians of information regarding the incident independently of

11:07AM 17   these 57 who don't relate to the incident at all?

11:07AM 18              What Mark just said is, yes, we've proposed a list

11:08AM 19   of those custodians to the PSC.

11:08AM 20         MR. LARGE:  Let me -- can I confer with Mark?

11:08AM 21         THE COURT:  Sure.

11:08AM 22         MR. LARGE:  Because we have some very large spreadsheets

11:08AM 23   here that we have had going back and forth.  Do you know which

11:08AM 24   requests those were?

11:08AM 25         MR. NOMELLINI:  Yes, there were a number of different

11:08AM 1  requests for which we proposed the incident custodians.  I can

11:08AM 2  show you our spreadsheet --

11:08AM 3          MR. LARGE:  I just want the numbers of the actual --

11:08AM 4  she's talking about the nonincident custodians.

11:08AM 5          MR. HAYCRAFT:  No, she's talking about the incident.

11:08AM 6          THE COURT:  No, I'm talking about the incident.

11:08AM 7          MR. LARGE:  Oh, I thought that was the 57.

11:08AM 8          THE COURT:  The 57, as I read it, are nonincident

11:08AM 9  custodians.  Somebody help me.

11:08AM 10          As I read it -- and wait a minute, let me get it

11:08AM 11  out -- as I read it, the 57 custodians that we are currently

11:08AM 12  looking at relate only to calculations of the amount of the oil

11:08AM 13  spill, ecological, health and environmental impact of

11:08AM 14  dispersants, and efforts to cap and seal the well.  Now, is that

11:09AM 15  incorrect?

11:09AM 16          MR. IRPINO:  Not as far as we understand it, Your Honor.

11:09AM 17          THE COURT:  So put them aside for a minute.  Have we

11:09AM 18  identified a universe of custodians who are event related?

11:09AM 19          MR. IRPINO:  Yes.  BP has proposed those to us.  We have

11:09AM 20  conducted a search.

11:09AM 21          The initial proposal from BP was robust in terms of

11:09AM 22  the names of custodians, their --

11:09AM 23          THE LAW CLERK:  Excuse me, sir.  I beg your pardon.

11:09AM 24          (Addressing Judge Shushan) They are experiencing

11:09AM 25  technical difficulty getting on with the phone connection.

11:09AM 1   Assuming we'll just go ahead --

11:09AM 2             THE COURT:  Ask Marie to work on it, whatever it is.

11:09AM 3             So you've got a robust list of incident custodians?

11:09AM 4        MR. IRPINO:  Yes.  Going from memory, Your Honor, we

11:09AM 5   were dealing with all of the people who were part of the --

11:09AM 6             THE REPORTER:  Could you speak into the microphone?

11:09AM 7             THE COURT:  Please.  We have people on the phone, and

11:09AM 8   we've got a court reporter.

11:10AM 9        MR. IRPINO:  I apologize.  We were dealing with a good

11:10AM 10  number of people.  It was a good first go-round.  So we didn't

11:10AM 11  have anything significant to add to those custodians.

11:10AM 12            THE COURT:  So let's make sure we are on track because

11:10AM 13  we're going to get on track today.

11:10AM 14            As to BP's robust list of event custodians, have

11:10AM 15  you all started the production of those?  I assume that overlaps

11:10AM 16  with some of the witnesses that are currently being taken?

11:10AM 17       MR. NOMELLINI:  Yes, Your Honor, we have started the

11:10AM 18  production of those because a lot of the documents that will hit

11:10AM 19  on the search terms have already been produced.

11:10AM 20            What we have to do is we kind of have to get the

11:10AM 21  parameters of the search all together with the custodians, the

11:11AM 22  date ranges, and the search criteria, the terms, and then run

11:11AM 23  them.  Then we can compare that to what's already gone out the

11:11AM 24  door.  Then we take the difference and review it and produce the

11:11AM 25  remainder of that.

11:11AM  1      THE COURT:  So, as I'm hearing it -- anybody that wants

11:11AM  2  to correct me, let me know -- relative to event custodians, it

11:11AM  3  looks like we are proceeding apace, and we don't need to worry

11:11AM  4  about that part of the custodial file production.

11:11AM  5           Is that right, Mr. Large?

11:11AM  6      MR. LARGE:  That's correct, Your Honor.  I apologize, I

11:11AM  7  had them -- I had them confused, the two categories.

11:11AM  8      THE COURT:  The only thing we need to discuss, then, are

11:11AM  9  the custodial files for the nonevent custodians?

11:12AM 10      MR. LARGE:  That's correct, kind of the

11:12AM 11  request-by-request proposal that you see in the spreadsheet.

11:12AM 12      THE COURT:  Right.  So let's talk about, first, the

11:12AM 13  custodial production for the events.  Do we think we're

11:12AM 14  proceeding apace, and there is no real problem with getting the

11:12AM 15  custodial files for those people whose depositions are going to

11:12AM 16  be scheduled, and a rolling production for those whose

11:12AM 17  depositions aren't going to be scheduled?

11:12AM 18      MR. NOMELLINI:  That's correct, Your Honor.  We will

11:12AM 19  prioritize, obviously, the people of the -- the production for

11:12AM 20  the people who are scheduled for deposition.  I wouldn't quite

11:12AM 21  say no problem.  I mean, it is going to be a challenging process

11:12AM 22  because we have quite a lot going on, and I think Your Honor can

11:13AM 23  appreciate.  We will prioritize the deposition folks.

11:13AM 24           In fact, I think that a lot of them are listed as

11:13AM 25  incident custodians.  I'd have to check to make sure it's every

11:13AM  1  one, but I think that a lot of the initial depositions are

11:13AM  2  incident custodian folks.

11:13AM  3          MR. LARGE:  That's correct.

11:13AM  4          THE COURT:  So there is a lot of overlap?

11:13AM  5          MR. NOMELLINI:  There is a lot of overlap.

11:13AM  6              So if you looked at the chart, you would then look

11:13AM  7  for the -- you look at the requests by which the incident

11:13AM  8  custodians are listed and the search terms by those incident

11:13AM  9  custodians and run those search terms for those dates, and that

11:13AM 10  would generate the universe for the data to review.

11:13AM 11          UNIDENTIFIED SPEAKER VIA TELEPHONE:  I don't know, you

11:13AM 12  might want to wait for the operator.

11:13AM 13          THE COURT:  The operator is Magistrate Judge Shushan.

11:13AM 14  May I help you?

11:13AM 15          TELEPHONE OPERATOR:  For the host, I do have a

11:13AM 16  Mr. O'Rourke trying to join your conference call, but it's asking

11:13AM 17  for a security code that he doesn't have.

11:14AM 18          THE COURT:  Hi, Mr. O'Rourke.

11:14AM 19          TELEPHONE OPERATOR:  He's off the line.

11:14AM 20          THE COURT:  Do we know who Mr. O'Rourke is?

11:14AM 21          MR. LANGAN:  He's Mr. Underhill's colleague, I believe.

11:14AM 22          THE COURT:  He's Mr. Underhill's colleague.  Let him

11:14AM 23  join.  I would appreciate that.  Thank you.

11:14AM 24          THE REPORTER:  Will you just state your name before you

11:14AM 25  speak.

11:14AM 1          MR. NOMELLINI:  Sure.  This is Mark Nomellini speaking.

11:14AM 2               Your Honor, if you would like me to, I don't want

11:14AM 3     to get things out of order, I can address some -- I understood

11:14AM 4     Your Honor was interested in some suggestions for the custodial

11:14AM 5     deposition production process and how to make that go as smoothly

11:14AM 6     as possible for all parties.  Maybe we could put that off.

11:14AM 7          THE COURT:  Let's put that off toward the end.  I want

11:14AM 8     to make sure that we understand the dispute, how we got here, so

11:14AM 9     that we can resolve it, and then talk about moving forward.

11:14AM 10         MR. NOMELLINI:  Sounds good.

11:14AM 11         THE COURT:  Don't move, because I've got the next

11:14AM 12    question for you.

11:15AM 13         MR. NOMELLINI:  Okay.

11:15AM 14         THE COURT:  The next question is how were the

11:15AM 15    57 custodians that we're talking about this morning selected?

11:15AM 16         MR. NOMELLINI:  Your Honor, I haven't done a count.  I

11:15AM 17    understand the 57 you're referring to to be the nonincident

11:15AM 18    folks.

11:15AM 19         THE COURT:  Correct.

11:15AM 20         MR. NOMELLINI:  Those were -- those were selected by

11:15AM 21    talking to people to figure out who had -- you know, who were the

11:15AM 22    most relevant folks with respect to those requests, talking to

11:15AM 23    people in the business.

11:15AM 24              There was a number of -- a number of different

11:15AM 25    steps involved there, Your Honor.  One is plaintiffs --

11:15AM 1   plaintiffs served some interrogatories, so we provided

11:15AM 2   interrogatory answers of -- I did a count.  I think about

11:15AM 3   50 pages of the interrogatory answers are involved with

11:16AM 4   identifying people for various specific topics.  So that's one

11:16AM 5   source.

11:16AM 6            Then we had some helpful discussions with the

11:16AM 7   plaintiffs, and the plaintiffs identified, I think, an additional

11:16AM 8   48 custodians to add to our list.  We -- and I think those are

11:16AM 9   all post-incident people.  Mr. Irpino is nodding yes.  We agreed

11:16AM 10  to add all 48 of those individuals to our post-incident list.

11:16AM 11           THE COURT:  So that's how we got to 57.

11:16AM 12           MR. NOMELLINI:  Your Honor, I think -- I have no reason

11:16AM 13  to doubt that 57 is the number.

11:16AM 14           THE COURT:  I didn't count either.  Plaintiffs keep

11:16AM 15  telling me it's 57, so I'm just assuming their count is correct.

11:17AM 16  Whatever the count is.  Nobody is going to worry if it's 59 or

11:17AM 17  57, whatever.

11:17AM 18           MR. NOMELLINI:  The only reason is -- the only concern I

11:17AM 19  have about the number is that I would tend to think that our

11:17AM 20  initial number was greater than nine; but, standing right here, I

11:17AM 21  can't say that for sure.

11:17AM 22           THE COURT:  Okay.  Well, I'm looking at Exhibit B to

11:17AM 23  Andy's letter to me of February 16, 2011.  It's got, at the back

11:17AM 24  of it, three pages of custodial witnesses.  Let's make sure

11:17AM 25  that's the universe of what we're talking about.

11:18AM 1     MR. NOMELLINI:  Those -- Your Honor, those are actually

11:18AM 2  only the people that plaintiffs proposed to add to the list, and

11:18AM 3  we agreed to add all of those.  So I'm glad Your Honor raised

11:18AM 4  that point.

11:18AM 5         There are some additional number of post-incident

11:18AM 6  custodians that are on our list that you would have to add to

11:18AM 7  that number to get the total number.

11:18AM 8     THE COURT:  Got you.  So all we're looking at is

11:18AM 9  plaintiffs' request to add these people and BP has agreed to add

11:18AM 10 them?

11:18AM 11    MR. NOMELLINI:  That's correct, Your Honor.

11:18AM 12    THE COURT:  Okay.

11:18AM 13    MR. LARGE:  William Large for PSC.

11:18AM 14        Your Honor, I just -- Mr. Nomellini, in assuming

11:18AM 15 that the 57 included some of his proposals, had talked about how

11:18AM 16 BP selected those.  That's a big part of our concern.  First of

11:18AM 17 all --

11:18AM 18    THE COURT:  Let's stop.  Let's stop.  He's telling me

11:18AM 19 that the 57 we're looking at are your proposed additions.

11:19AM 20    MR. LARGE:  Correct.

11:19AM 21    THE COURT:  And that they've agreed to accept your

11:19AM 22 additions.

11:19AM 23    MR. LARGE:  Yes.  These are on three RFP's.  This was

11:19AM 24 meant to be an exemplar, actually.  I think for some of those

11:19AM 25 requests, they had proposed three, four, five people.  We said,

11:19AM 1    we don't think your search has been diligent.  We looked at two

11:19AM 2    or three e-mails and added all those people.

11:19AM 3                And then, at that point -- we did have a discussion

11:19AM 4    last week, and I asked, what is your criteria for picking these

11:19AM 5    folks and how you've done your investigation, because I don't

11:19AM 6    have a lot of confidence when we look back and we come up with

11:19AM 7    57 people, just for three of them.

11:19AM 8                And I was told, at least -- and I'll be careful

11:19AM 9    here -- as to a few of the ones you have before you, that the

11:19AM 10   only thing that was selected were the most central people.  And I

11:19AM 11   think at that point we said we can't agree to a list that's only

11:20AM 12   the most central people.  We feel your obligation to locate those

11:20AM 13   places where relevant information is likely to be goes beyond

11:20AM 14   just the most reasonable people.

11:20AM 15               They did accept these for this three, but I think

11:20AM 16   the process they'd like is for us to go through all the other

11:20AM 17   requests for production.

11:20AM 18               And I think our comeback to that was, we think

11:20AM 19   you've got to give it a better try when you have three or four

11:20AM 20   people, and then just on the first e-mail we look at that they

11:20AM 21   send, there is a whole bunch others.

11:20AM 22               I mean, they are in a much better position to know

11:20AM 23   this information.  And I would add, just from the numbers

11:20AM 24   themselves and the fact they agreed to it shows that I don't

11:20AM 25   think the initial list is good.

11:20AM 1           So what we feel has happened is they've put their

11:20AM 2   obligation on us and then asked us to agree to it, and I think

11:20AM 3   that process is where the sticking point comes.

11:20AM 4           THE COURT:  Okay.

11:20AM 5           MR. LARGE:  When we get to it, we have a lot of

11:20AM 6   proposals, Your Honor, to use the things such as predictive

11:21AM 7   coding and other advanced techniques to try to identify

11:21AM 8   custodians as they relate to the search terms that we proposed.

11:21AM 9           I mean, we are -- I believe -- we are fairly much,

11:21AM 10  90, 95 percent in agreement on the search terms, Boolean terms

11:21AM 11  themselves.  Is that fair, Mark?

11:21AM 12          MR. NOMELLINI:  Yes, on the terms themselves, as opposed

11:21AM 13  to the custodians and the date ranges, that's correct,

11:21AM 14  Your Honor.

11:21AM 15          MR. LARGE:  One thing that we had proposed, and I'm not

11:21AM 16  saying necessarily that BP has completely declined, but it's

11:21AM 17  something that has been hanging out in our discussions, is why

11:21AM 18  don't you run some of this predictive coding, why don't you run

11:21AM 19  some of this statistical sampling?

11:21AM 20          I mean, Kirkland is a good firm and a leader in

11:21AM 21  ESI, and that really -- we would have a lot of comfort with what

11:21AM 22  some people, I think, have some fear about is, is that predictive

11:21AM 23  coding, are those statistical tools going to leave people out?

11:22AM 24          We feel it's the other way around.  We're more

11:22AM 25  likely to identify custodians through that method if they would

11:22AM 1    run those across.

11:22AM 2         And you don't have to necessarily run it across

11:22AM 3    everything.  You can run it across some targeted servers and some

11:22AM 4    targeted laptops, like the custodians they propose, and see what

11:22AM 5    comes back.  Who is on the another ends of those e-mails and how

11:22AM 6    many times.

11:22AM 7         And that's really the way we would like to go --

11:22AM 8    and not to throw it in here, but that's what we're doing with

11:22AM 9    Halliburton -- and to generate a statistical list and a list with

11:22AM 10   hits to look at together and then agree on custodians.

11:22AM 11        THE COURT:  How many more requests for production

11:22AM 12   custodians do we have at issue?  Does anybody have an idea or a

11:22AM 13   feel?  I don't mean an exact number.  Just give me an idea.

11:22AM 14        MR. IRPINO:  Probably close to 50.

11:22AM 15        MR. LARGE:  50.

11:22AM 16        THE COURT:  50 more requests?

11:22AM 17        MR. LARGE:  And, Your Honor, we have also proposed one

11:22AM 18   thing is if you feel comfortable with the custodians you've

11:23AM 19   proposed, then by all -- you know, by all means, run them.  Let's

11:23AM 20   get this going.

11:23AM 21        We can't agree to those custodians because I've

11:23AM 22   said, as we've found, they are lacking a little bit.  And I just,

11:23AM 23   I think some efforts, whether it be through actual electronic

11:23AM 24   tools or through going back and going -- interviewing some of

11:23AM 25   these folks, there has got to be a better way than having us just

11:23AM 1 try to pick everyone from what I see, initially, a small and

11:23AM 2 insufficient list to start with.

11:23AM 3    THE COURT:  Now --

11:23AM 4    MR. NOMELLINI:  Your Honor --

11:23AM 5    THE COURT:  Come on up.

11:23AM 6    MR. NOMELLINI:  -- it's Mark Nomellini.

11:23AM 7    With respect to identifying custodians, first of

11:23AM 8 all, we think our list was a good list.  By agreeing to their

11:23AM 9 list, and I think we said that's what we agreed, we're not

11:23AM 10 admitting that these are relevant folks; but, in the interest of

11:23AM 11 moving forward, we want to say, let's get this -- we'll take who

11:24AM 12 you submitted, let's get it going, let's get it done.

11:24AM 13    In terms of, you know, the difficulty for the PSC

11:24AM 14 identifying custodians, I respectfully disagree, Your Honor.

11:24AM 15 Number one, we served interrogatory answers that had about, you

11:24AM 16 know, 50 pages devoted to identifying various kinds of

11:24AM 17 custodians.

11:24AM 18    Number two, our production has included something

11:24AM 19 like, I don't know the exact number, but three or four hundred

11:24AM 20 custodians and their data.  There is no better way to figure out

11:24AM 21 who is relevant than to look at the documents that they have now

11:24AM 22 had for many months and figure out what are people saying in the

11:24AM 23 documents, who are they copying.

11:24AM 24    Maybe we didn't -- maybe one of those three or four

11:24AM 25 hundred custodians was not collected from, but he's copied on an

11:24AM 1   e-mail.

11:24AM 2               And so looking at the e-mails to figure out who is

11:24AM 3   relevant is much better than me talking to Mr. Large, is, you

11:25AM 4   know, the PSC going through those documents to figure out who is

11:25AM 5   relevant?  That wealth of information is there.

11:25AM 6               To the extent the PSC has had any questions about

11:25AM 7   custodians, we haven't declined to answer any.  Last Monday, we

11:25AM 8   had a call where we talked about, you know, who were we

11:25AM 9   identifying, what were their titles, what were their roles?

11:25AM 10              So, I think, you know, given the document

11:25AM 11  production that plaintiffs have now had for some time, I

11:25AM 12  respectfully disagree that, A, we haven't done a good search, or,

11:25AM 13  B, that they are not on a level playing field.

11:25AM 14              With respect to Halliburton, I'm glad that that

11:25AM 15  example was raised about doing the search.  I haven't had a long

11:25AM 16  time to talk to Halliburton about that issue; but, this morning

11:25AM 17  for a few minutes I talked to Michelle, who was very helpful.

11:26AM 18              And I was -- I suspected that the Halliburton

11:26AM 19  search terms were not run against the entire universe of

11:26AM 20  Halliburton data in the company, and, in fact, they weren't.

11:26AM 21  They were run against a few hundred custodians, which sounds very

11:26AM 22  similar to what BP has produced from.

11:26AM 23              And I asked, well, how did you -- how did you pick

11:26AM 24  those custodians?  And I was told by Halliburton, we identified

11:26AM 25  the relevant custodians.  So it's very similar to what BP has

11:26AM 1    done.  And we're happy to identify specifics.

11:26AM 2         THE COURT:  While you're up there, let's talk about the

11:26AM 3    share point sites and whether you all consider a custodian who

11:26AM 4    participates in a share point site to have access to those

11:26AM 5    documents.  Is that part of their custodial file?

11:27AM 6         MR. NOMELLINI:  Your Honor, I think it would -- I think

11:27AM 7    it would depend on the custodian.  I mean, there are some --

11:27AM 8    there are some share point sites that have, you know, data from a

11:27AM 9    very large number of custodians.  So, in terms of a custodial

11:27AM 10   production for a deposition, in terms of what we can certify at

11:27AM 11   this time frame, we are not including share point sites.

11:27AM 12        But we have produced data from share point sites

11:27AM 13   and will continue to do so.  They are among the four hundred

11:27AM 14   custodians we've produced from.

11:27AM 15        THE COURT:  Okay, good.  All right.

11:27AM 16        MR. YORK:  Since our name has been drug into this,

11:27AM 17   Judge Shushan, I do want to point out --

11:27AM 18        THE COURT:  Identify yourself.

11:27AM 19        MR. YORK:  I'm sorry, Alan York for Halliburton.  I just

11:28AM 20   want to raise a couple of things.

11:28AM 21        Number one, we're sort of Switzerland today.  We're

11:28AM 22   not taking anybody's position.  But I will say that it does feel

11:28AM 23   awfully good to be held up as an example of doing something the

11:28AM 24   right way in this case by the plaintiffs.  So it's a good thing.

11:28AM 25        But I do want to clarify, we did have a

11:28AM  1    conversation with Mr. Nomellini out in the hall before the

11:28AM  2    hearing.  I think that the way that it was just repeated doesn't

11:28AM  3    necessarily give the full context of that conversation, so I just

11:28AM  4    wanted to fill in a little bit of extra color.

11:28AM  5         We have been working very cooperatively with the

11:28AM  6    PSC on this issue.  And while it is true that my understanding is

11:28AM  7    that our first blush, first run at custodians, is Halliburton

11:28AM  8    looking at the universe of custodians and saying, these are the

11:28AM  9    folks that we think had anything to do with this well, we

11:28AM 10    understand a couple of things.

11:28AM 11         Number one, that Halliburton and BP are very

11:28AM 12    different.  BP's universe is much larger than Halliburton's is,

11:29AM 13    and so I don't think that necessarily what works for one

11:29AM 14    necessarily works for the other.

11:29AM 15         But, secondarily, I don't want it to be lost that

11:29AM 16    that is done in conjunction with our working cooperatively with

11:29AM 17    the PSC and understanding that we're going to do some of those

11:29AM 18    test runs, get data hits, analyze that data, and it's not a

11:29AM 19    static list.

11:29AM 20         If we come back -- and we've had conversations with

11:29AM 21    Bill in which if we come back and there are certain custodians

11:29AM 22    that are getting no hits, we're not going to spend a lot of time

11:29AM 23    searching those custodial files.  If, on the other hand, the hits

11:29AM 24    come back and there is somebody that we didn't have on the list,

11:29AM 25    we're going to look at that list.

11:29AM 1        So it's going to be, as we understand it, an

11:29AM 2  ongoing cooperative function that we're going to try to continue

11:29AM 3  to push information out.

11:29AM 4     THE COURT:  Let's talk about, on the other hand, if we

11:29AM 5  find somebody that had not been identified, how are you going to

11:29AM 6  find that somebody who had not previously been identified?

11:29AM 7     MR. YORK:  And, again, this is where we start getting

11:29AM 8  into a very dangerous area of my level of technical expertise.

11:30AM 9  But, as I understand it, when we start running these reports, in

11:30AM 10  addition to actual documents being found, there will also be data

11:30AM 11  reports and statistics related to the number of hits, the types

11:30AM 12  of hits, the substantive nature of the hits, etcetera.

11:30AM 13       And from those reports, as I understand it -- Bill

11:30AM 14  can correct me -- it is possible to determine, for example, okay,

11:30AM 15  this request is hitting on this name a significant enough number

11:30AM 16  of times that it's important that we add that person to the

11:30AM 17  custodial list and do an actual direct search of those custodial

11:30AM 18  files.

11:30AM 19       Likewise, it may be, like I say, people that we

11:30AM 20  have on the list show up with nothing, and we can avoid having to

11:30AM 21  spend the time, money and energy searching those files.

11:30AM 22       Now, again, I'll leave that to Bill because he's

11:30AM 23  much more technologically advanced than I am.  I just wanted to

11:31AM 24  state our position.

11:31AM 25     THE COURT:  Thank you.

11:31AM 1      MR. LARGE:  William Large for the PSC.

11:31AM 2          I appreciate the kudos, but I don't know that

11:31AM 3   that's necessarily true.  A lot of what he said we have learned

11:31AM 4   from direct contact with their vendor, which they allowed us to

11:31AM 5   talk to, at least a few times, to have some familiarity with what

11:31AM 6   they were doing.

11:31AM 7          And yes, Mr. York, from what I understand in

11:31AM 8   talking to them, we do get back reports.  They will pull in other

11:31AM 9   people that, say, are recipients of e-mails or have an account on

11:31AM 10  a file server that they have looked through to do this initial

11:31AM 11  study.

11:31AM 12         So what we feel is and what we have proposed, I

11:31AM 13  think, even going back two or three months, is that -- to BP is

11:31AM 14  why not do that, instead of kind of playing this game of going

11:31AM 15  back -- it's not a game, but a process of going back and forth

11:31AM 16  trying to pick people out of e-mails, having them accept them,

11:32AM 17  perhaps having them say no, without really any statistics.

11:32AM 18         I mean, five years ago, I would say, it had to be

11:32AM 19  done this way; but, technology today really does away with that

11:32AM 20  extra effort and, also, that uncertainty.  Which, really, that

11:32AM 21  gets us to one of our major concerns, and I'll tell you what it

11:32AM 22  is, we are stuck on the word "agreement."  And the reason why --

11:32AM 23  as to custodians and date claims.

11:32AM 24         THE COURT:  I understand.

11:32AM 25         MR. LARGE:  -- we feel then, especially after we look at

11:32AM 1  BP's letter brief from Mr. Langan, that our agreement will

11:32AM 2  prejudice us going forward.

11:32AM 3         And here is why.  They have -- I think it's on

11:32AM 4  Page 13, maybe 11, they talk about -- let me find it to be

11:32AM 5  specific here -- Page 11, and it's in the discussion of end date,

11:32AM 6  but we feel this is the potential trap that we run into.

11:33AM 7         BP describes a process where they have to go

11:33AM 8  collect hard drives and laptops, it'll take a week or two of

11:33AM 9  people away from their laptops.

11:33AM 10        Our concern is we come up with a few custodians, BP

11:33AM 11 will say this is a heavy burden, we've already done this and

11:33AM 12 you've agreed to these custodians; whereas, you know, what we

11:33AM 13 said is, look, you have an obligation under the Federal Rules of

11:33AM 14 Civil Procedure to do a diligent search.

11:33AM 15        We feel that, for instance, Halliburton is doing

11:33AM 16 that, not by necessarily giving us their custodians up front, but

11:33AM 17 by letting us know what the results of, you know, sophisticated

11:33AM 18 and, I believe we are willing to accept, reliable tests that

11:33AM 19 is -- that in the end are going to, if used properly, make BP's

11:33AM 20 job much easier.  It will eliminate quite a bit of the human

11:33AM 21 review that would eventually need to be done if we just agree on

11:33AM 22 a static list of custodians.

11:33AM 23        And so I think using some of those tools do two

11:34AM 24 things:  One is, reduces their burden, like I just described;

11:34AM 25 two, takes the risk from both parties of missing people.

11:34AM 1          From our side it does because we can see if the

11:34AM 2    terms we've proposed do hit some people outside of what was on

11:34AM 3    their list or what we gave them.

11:34AM 4          From their side we're saying, hey, let's use the

11:34AM 5    statistical list.  If we are, then, really, we can't come back

11:34AM 6    later, I think, and say, you didn't get this person, you didn't

11:34AM 7    get that person, so long as we have the right date range and

11:34AM 8    we're looking at the right servers, which we've asked them to

11:34AM 9    entertain that idea, as well.

11:34AM 10          THE COURT:  Okay.

11:34AM 11          MR. NOMELLINI:  Your Honor, Mark Nomellini again.  I

11:34AM 12   have to comment on some of these things.

11:34AM 13          First of all, there is a big difference between BP

11:34AM 14   and Halliburton here in a number of respects.  One, BP has

11:34AM 15   produced from some 400 custodians.  Halliburton, I think, has

11:34AM 16   produced from 20 thus far.  I think BP has produced, like, three

11:35AM 17   times more than all of the other parties in this case combined.

11:35AM 18   So BP has actually -- not just running tests.  BP has actually

11:35AM 19   produced documents from these custodians, and plaintiffs have had

11:35AM 20   those documents.

11:35AM 21          Secondly, the way these tests have been described

11:35AM 22   gives me a lot of doubt.  I understand that Mr. York is not, you

11:35AM 23   know, an expert on ESI issues, but the point is they started with

11:35AM 24   a certain number of custodians that were deemed relevant, and

11:35AM 25   that is exactly what BP has done, and produced from those

11:35AM  1    custodians.

11:35AM  2              The difference here is that it sounds like

11:35AM  3    Halliburton may run tests and come back from that original list,

11:35AM  4    and that's why we're at, you know, 20 custodians right now versus

11:35AM  5    many hundreds.

11:35AM  6              And, you know, we can talk about all kinds of

11:36AM  7    testing procedures, protocols, etcetera.  We have put a lot of

11:36AM  8    work into a list of search terms, dates, custodians.  Mr. Large,

11:36AM  9    Mr. Irpino have been very cooperative, friendly to deal with in

11:36AM 10    that process; but, we really need to move forward on that

11:36AM 11    process.

11:36AM 12              And I would add, Your Honor, that the pretrial

11:36AM 13    order thought -- was right on point on this topic because 13(b)

11:36AM 14    addresses this situation and says, there is no waiver here.  You

11:36AM 15    know, you can -- you can request additional searches.

11:36AM 16              So respectfully, Your Honor, we really would like

11:36AM 17    to move forward with the process that we have identified subject

11:36AM 18    to whatever, you know, Your Honor has to say about that process.

11:36AM 19              THE COURT:  Okay.  Thank you.

11:36AM 20              And, look, I do agree, guys, that we've got to move

11:36AM 21    forward.  We can't be waiting on either side to do something at

11:37AM 22    this point.

11:37AM 23              Our 2 o'clock conference is going to start

11:37AM 24    scheduling deponents.  And so we just can't wait for one side or

11:37AM 25    the other to blink.  We're going to have to blink at the same

11:37AM 1   time and roll.

11:37AM 2           Let's talk about date range next.  Let me go to the

11:37AM 3   PSC and ask about the date range that you all have proposed,

11:37AM 4   which is 13 years.

11:37AM 5           MR. LARGE:  No, Your Honor.  I mean, not in the search

11:37AM 6   terms.  Not -- no.

11:37AM 7           THE COURT:  Well, then tell me what it is you all are

11:37AM 8   proposing.

11:37AM 9           MR. LARGE:  We have proposed on a request-by-request

11:37AM 10  basis several important date ranges, and they are tied to the

11:37AM 11  incident themselves and events as they happened, as they should

11:37AM 12  be.  They are not meant to exclude relevant data.  They are meant

11:37AM 13  to narrow the data, to capture what's going to be relevant.

11:38AM 14          So anything that has to do with the lead up,

11:38AM 15  testing, to the explosion itself, I mean, we have said cut it off

11:38AM 16  at April 20th, I mean, obviously.

11:38AM 17          For the IIT, the investigative -- internal

11:38AM 18  investigative team, Mr. Bly's report, we've said April 20th to

11:38AM 19  September 9th.  As to the post-effort cleanups, we said

11:38AM 20  April 21st forward; cleanup, response, capping the well,

11:38AM 21  etcetera.

11:38AM 22          THE COURT:  Forward to what date?

11:38AM 23          MR. LARGE:  Forward -- well, we have alternatively

11:38AM 24  offered a few things in trying to compromise.  We feel that there

11:38AM 25  is no reason that it shouldn't be run up until today, if they

11:38AM 1   haven't been run yet, for certain ones.  Obviously, not, you

11:38AM 2   know, necessarily how did you cap the well.  That could have an

11:38AM 3   earlier date, perhaps.

11:38AM 4          But let's take an example of analysis of COREXIT.

11:39AM 5   I have to believe that they are still analyzing internally.

11:39AM 6   We're talking about the effects of COREXIT and how that is

11:39AM 7   affecting wildlife in the Gulf.  There is no legitimate reason in

11:39AM 8   my mind to limit it to, as they initially proposed, and if we

11:39AM 9   look at one of their exhibits, July 15th.

11:39AM 10         Now, at first, we had July 15th across the board.

11:39AM 11  And I just wanted to respond to something that figures

11:39AM 12  prevalently in their brief, as well as what Mr. Jessen from the

11:39AM 13  Sedona conference used as the basis for his opinion.

11:39AM 14         Mr. Grand, in one of our discussions, did use the

11:39AM 15  term, you do this at your own risk.  It was limited to one

11:39AM 16  specific topic, and that was BP's insistence that we agree to

11:39AM 17  July 15th.  And we said, we're never going to agree to July 15th,

11:39AM 18  there is no reason to agree to July 15th, any logical reason,

11:39AM 19  there is no technical or burden reason to agree to that.  So he

11:40AM 20  said, if you want to choose that date, you're going to do so at

11:40AM 21  your own risk because we're going to just come back and ask for

11:40AM 22  more.

11:40AM 23         I think, at one point, we proposed December 31st,

11:40AM 24  at least for now, for a number of these.  That was rejected.

11:40AM 25  They have alternatively now gone between September 8th for all --

11:40AM 1    across the board.  And then I think there was a November date for

11:40AM 2    a while, but that was taken back.

11:40AM 3                We really have worked hard on the date limits.  And

11:40AM 4    we've done it, again, on a request-by-request basis, to cut out

11:40AM 5    data that isn't going to be relevant to those particular

11:40AM 6    questions.

11:40AM 7                THE COURT:  Bill, how did I look at 13.5 years?  Where

11:40AM 8    did that come from?

11:40AM 9                MR. LARGE:  In our written discovery requests, I believe

11:40AM 10   it says, the date of your responses shall be -- you know, the

11:40AM 11   assumed date is 1997 to the present.  They have clearly objected

11:40AM 12   and stated their objections that that is temporally overbroad.

11:41AM 13               And in our search term discussions, we've never

11:41AM 14   proposed an across the board 13 years.  I think, for certain

11:41AM 15   things, such as information about a particular piece of equipment

11:41AM 16   or design, I think in certain limited instances, perhaps going

11:41AM 17   back 10 years or 8 years may be appropriate; but, I honestly

11:41AM 18   don't think in our discussions we ever used 13 years for

11:41AM 19   anything.  For certain selective ones, I think we talked about

11:41AM 20   2002 or 2005.  We tried to pick our dates rationally by request

11:41AM 21   to capture the information and lessen the burden on BP.

11:41AM 22               THE COURT:  All right.  Now, we're going to get that

11:41AM 23   straight, too, because that's going to hold us up.

11:41AM 24               And how many different requests in time dates are

11:41AM 25   we looking at?  Same number of custodians?  I mean, we have got

11:41AM  1    another 50 requests?

11:41AM  2          MR. LARGE:  40 or 50.  We did spend a long time,

11:41AM  3    Your Honor, going together request by request, and both parties

11:42AM  4    had -- we do have an idea of where we disagree on dates and

11:42AM  5    custodians.

11:42AM  6              But, largely, I have to say, the biggest dispute

11:42AM  7    that we get bogged down on is really the end date, because that's

11:42AM  8    where, in a sense, when we are having a useful discussion, we

11:42AM  9    just get caught up there and can't get past that.

11:42AM 10          THE COURT:  Well, let me ask you all this one, because I

11:42AM 11    don't know what the specific requests are.  I do tend to agree

11:42AM 12    that some of the environmental things may continue, but most

11:42AM 13    things should have ended already.

11:42AM 14          MR. LARGE:  We agree.

11:42AM 15          THE COURT:  It also seems to me, and obviously I was

11:42AM 16    mistaken, but what jumped out at me was the 13-year issue, and

11:42AM 17    that seems overly broad.

11:42AM 18              I sort of came up with a default end date of

11:42AM 19    November 30th for most things, allowing you all to work up a very

11:43AM 20    small list of things that you think there may be ongoing

11:43AM 21    investigations.  Obviously, what that means to me is things like

11:43AM 22    the environmental impact.  I think a default begin date, and

11:43AM 23    maybe you all have worked past that -- have you all substantially

11:43AM 24    talked about the begin dates and worked through it?

11:43AM 25          MR. NOMELLINI:  Your Honor, we haven't heard any dissent

11:43AM 1    from the PSC that the general begin date should be January 1,

11:43AM 2    2009, for -- as a general matter.  On a request-by-request basis,

11:43AM 3    we could go different from that, but we have not heard any

11:43AM 4    objection to 1/1/09.

11:43AM 5            MR. LARGE:  As a default, yes.

11:43AM 6            THE COURT:  Then let's not fool with the begin dates.

11:43AM 7    Let's stick with that default begin date.  Let's impose a

11:43AM 8    November 30th end date, but for those things that are a

11:44AM 9    continuing investigation, for instance, the environmental impact.

11:44AM 10           MR. NOMELLINI:  So, Your Honor, I would -- just to -- we

11:44AM 11   covered a number of things there.  Just to summarize, as I

11:44AM 12   understand it, it would be April 20th for incident related?

11:44AM 13           THE COURT:  April 20th.  Yes, April 20, 2010.

11:44AM 14           MR. NOMELLINI:  April 20, 2010, would be the cutoff for

11:44AM 15   incident related.  For environmental-related requests, the cutoff

11:44AM 16   for most things would be November 30th, 2010, subject to specific

11:44AM 17   discussions about things that may go beyond that date.

11:44AM 18           THE COURT:  Yes.  And I think we'd need to -- we

11:44AM 19   probably can take those requests, pull them out, and agree to

11:44AM 20   what those are.  It shouldn't be a problem.  Maybe I'm wrong, but

11:44AM 21   it shouldn't be.  We all know what the continuing things are.

11:44AM 22           MR. NOMELLINI:  Okay.  And, Your Honor, just one

11:44AM 23   logistical practical problem for getting through a deposition is

11:45AM 24   the way that these collections work is you have to go out and

11:45AM 25   collect the custodians' laptops.

11:45AM 1        So what we would propose, and I think Mr. Large is

11:45AM 2   agreeable to this, is for people who have had no significant

11:45AM 3   involvement, after we collect their laptop, that we don't have to

11:45AM 4   go back and make another collection in order to get their

11:45AM 5   production out the door.

11:45AM 6        THE COURT:  Well, what I would propose we do is for the

11:45AM 7   vast majority of custodians, why don't we set a date of X.

11:45AM 8   You're going to gather their information -- let me just throw it

11:45AM 9   out, February 1, 2011.  You all will agree, for those limited

11:45AM 10  issues that are still ongoing, that you will conduct your search

11:46AM 11  as of that end date; and, if you all want an update six months

11:46AM 12  from now, we can discuss it.

11:46AM 13       MR. NOMELLINI:  Your Honor, I think that -- Mr. Large

11:46AM 14  and I had a conversation.  I think that -- and, actually, the --

11:46AM 15  a lot of these collections were done well in advance of February.

11:46AM 16  Some of the collections were done, you know, in the summer, for

11:46AM 17  example.  So I think it depends on the person.

11:46AM 18       I would respectfully submit that for people who

11:46AM 19  have not had involvement since their collection, whatever that

11:46AM 20  may be, even if it's before February, that we would not have to

11:46AM 21  re-collect after that date.

11:46AM 22       THE COURT:  I think that's right.  You'd just go ahead

11:46AM 23  and certify that that person has not had any involvement, boom,

11:46AM 24  you're done.

11:46AM 25       MR. NOMELLINI:  Okay.

11:46AM 1       THE COURT:  Oh, absolutely.  I'm not trying to make work

11:46AM 2  for you.

11:46AM 3       MR. NOMELLINI:  Okay.  Yes, because I think

11:46AM 4  February 2011 is going to -- would make a lot of work, because

11:47AM 5  there are people who had no significant involvement after

11:47AM 6  February 2011.

11:47AM 7       THE COURT:  Certify, and he'll be fine with that.

11:47AM 8       MR. NOMELLINI:  Okay.

11:47AM 9       THE COURT:  Now, can you live with those defaults?

11:47AM 10       MR. LARGE:  Your Honor, I would ask for -- if I may --

11:47AM 11       MR. NOMELLINI:  Sure.

11:47AM 12       MR. LARGE:  -- just some clarifications, Your Honor.

11:47AM 13       We talked about a default on the near term,

11:47AM 14  November 30th.  And then -- for the default.  And you mentioned

11:47AM 15  some examples, for instance, the ongoing environmental analysis

11:47AM 16  and such.

11:47AM 17       Obviously, for folks that were involved in the IIT

11:47AM 18  efforts, and they can certify now they had no other involvement

11:47AM 19  in any relevant stuff, there's -- just like a paper production,

11:47AM 20  going back, there is no reason to go back and look at their

11:47AM 21  files.  We would like the comfort of certification, and you have

11:47AM 22  mentioned that.

11:47AM 23       On the earlier date, I just want to make sure we're

11:47AM 24  clear on January 1, 2009.  First, I'd like to say Halliburton, in

11:48AM 25  their original sweep and analysis, has agreed to January 1st,

11:48AM 1   2008.  There is a number of reasons why when we're doing a

11:48AM 2   general default date.

11:48AM 3           I think defaults can move up, as well as move back.

11:48AM 4   Obviously, if we want activities on this well, and the request is

11:48AM 5   for activities on this well by the DEEPWATER HORIZON, then, you

11:48AM 6   know, we could move those up, if they make sense, as opposed to

11:48AM 7   moving them back.

11:48AM 8           I am concerned, though, of how firm this default

11:48AM 9   is, and make sure that the parties have the agreement to talk

11:48AM 10  about this and perhaps come back to you, because there are things

11:48AM 11  such as similar incidents that we would want earlier searches on;

11:48AM 12  analysis, say, of BOP performance and how they do those --

11:48AM 13  although that's probably more Transocean -- but, there are a

11:48AM 14  number of things that, by the nature of the quest -- request,

11:49AM 15  which are, on their face -- or are unobjectionable and are proper

11:49AM 16  requests that going back assumes.

11:49AM 17          So the default dates are helpful.  I just want to

11:49AM 18  make sure on the record that, absent agreement to go back, that

11:49AM 19  we come back to you.

11:49AM 20      THE COURT:  Yes.  What I would like to do is, if you

11:49AM 21  guys have time this afternoon, for you to sit down and go through

11:49AM 22  these 50 requests and see if the defaults apply; and, if you can

11:49AM 23  reach agreement on it -- and I think, the vast majority, it

11:49AM 24  sounds like you can -- agree to the ones that are still ongoing

11:49AM 25  so that we go ahead and get production through a date certain.

11:49AM 1        I don't care what that date certain is, but get

11:49AM 2  production through a date certain, with an obligation to

11:49AM 3  supplement, and see if you can reach agreement on when that

11:50AM 4  supplementation takes place.

11:50AM 5        Remember, we're not getting into environmental

11:50AM 6  stuff a year from now, right?

11:50AM 7        MR. LARGE:  I mean, we do have experts that need to

11:50AM 8  look -- I understand there is not a July 31st cutoff date for

11:50AM 9  issues such as that, I don't believe, for environmental experts?

11:50AM 10        So I understand there is no reason to -- I mean,

11:50AM 11  usually a year is a short period.  In this case, it seems like

11:50AM 12  forever.

11:50AM 13        THE COURT:  It seems like forever, exactly.

11:50AM 14        MR. LARGE:  But there is no reason not to.

11:50AM 15        THE COURT:  So what I was suggesting is, on those

11:50AM 16  requests that we know are going to be continuing investigations,

11:50AM 17  why don't you agree that production will take place on a

11:50AM 18  continuing basis every three months or every four months,

11:50AM 19  something like that, just scheduling, and those will go beyond

11:50AM 20  the default end date.

11:50AM 21        MR. LARGE:  Your Honor, I think that's a great idea.

11:51AM 22        MR. NOMELLINI:  Yes, Your Honor.  I mean, it really does

11:51AM 23  depend on the request, the specific request.

11:51AM 24        THE COURT:  I agree.

11:51AM 25        What I would like to do is maybe set you all up in

11:51AM 1   my library, or if you all have some place more comfortable, get

11:51AM 2   your 50 requests out and set your beginning and your end dates.

11:51AM 3   Some may go earlier than the default begin date, and I assume a

11:51AM 4   few may go beyond the end default date.

11:51AM 5          MR. NOMELLINI:  Your Honor, the other thing is, the

11:51AM 6   search term dates don't need to encompass the full gamut, I

11:51AM 7   think, in order to achieve what we want here because we have

11:51AM 8   produced documents from -- quite a number of documents from

11:51AM 9   outside the date limits.  For example, the July 2010 limit that

11:51AM 10  Mr. Large mentioned, we produced thousands of documents from

11:51AM 11  outside that limit.

11:51AM 12         So the search term approach is kind of the

11:51AM 13  blunderbuss approach.  And if there are -- if there are specific

11:52AM 14  needs to go beyond the date limits for specific documents, you

11:52AM 15  can do that with specific nonsearch term requests, which both

11:52AM 16  sides have been doing.

11:52AM 17         THE COURT:  I'm getting a quizzical look over here.

11:52AM 18         MR. LARGE:  I just want to clarify one thing, and that

11:52AM 19  is -- a couple things.  One is my understanding of the way we

11:52AM 20  have been negotiating the dates is on a request-by-request basis.

11:52AM 21         THE COURT:  I'd like to get that done today.

11:52AM 22         MR. LARGE:  Yes.

11:52AM 23         When is your plane home?

11:52AM 24         MR. NOMELLINI:  I will find a way to get there.

11:52AM 25         THE COURT:  What time is your plane home?

11:52AM 1          MR. NOMELLINI:  It's mid afternoon.

11:52AM 2          THE COURT:  Do you want to take a ride out to the

11:52AM 3  airport?

11:52AM 4          MR. LARGE:  Sure.

11:52AM 5          THE COURT:  I don't want to keep you from getting home.

11:52AM 6  But I would like you all, on a request-by-request basis, anything

11:52AM 7  that you can't agree on, let me know early next week, and I'm

11:53AM 8  just going to rule on it because we've got to get you going.

11:53AM 9          MR. NOMELLINI:  Understood, Your Honor.

11:53AM 10          And one other comment I would just like to make

11:53AM 11  quickly is, until we reach final agreement, because we are doing

11:53AM 12  ongoing production, we would like to proceed with what is set

11:53AM 13  forth in our Exhibit E.

11:53AM 14          THE COURT:  Please.  Not only may you, but please do.

11:53AM 15          MR. NOMELLINI:  We will do that, Your Honor.

11:53AM 16          THE COURT:  Hello, Mr. Roy.

11:53AM 17          MR. ROY:  Good morning, Your Honor.  Jim Roy for the

11:53AM 18  PSC.  I had hoped to actually get through here without saying

11:53AM 19  anything and just observe.

11:53AM 20          THE COURT:  I was hoping so, too.

11:53AM 21          MR. ROY:  But sometimes transcripts, six months after

11:53AM 22  the fact or four months, when certain lines are cited on a

11:53AM 23  certain page, they don't have the same context that they did on

11:53AM 24  the day of the hearing or the status conference.  I fear such a

11:53AM 25  thing has happened potentially today, and I stand just to make

11:54AM 1  sure that we put it in the proper context, the exchange between

11:54AM 2  Mr. Large and the Court about whether or not environmental

11:54AM 3  aspects will be a part of the trial in February or the follow-up

11:54AM 4  damages trial.

11:54AM 5       And while, you know, issues such as the biology,

11:54AM 6  the marine biology, whether the fisheries are going to be alive

11:54AM 7  or dead or impaired eight years from now, I think we generally

11:54AM 8  agree with that to the extent of environmental damage; but, to

11:54AM 9  the extent what some of our experts and our people call fate and

11:54AM 10 transport of the oil, or as we call the duration of the spill and

11:54AM 11 the extent of the spill, and whether or not it would have been as

11:54AM 12 great as it was had it been capped sooner, etcetera, etcetera, to

11:54AM 13 the extent that has an environmental ring to it, want to make it

11:54AM 14 very clear that we believe that is part -- and it's not

11:54AM 15 necessarily for debate today, but it's an expression --

11:55AM 16      THE COURT:  I think that's a good point.  I would

11:55AM 17 consider that to be one of the exceptions where BP will then, on

11:55AM 18 a regular basis, update the custodial information.

11:55AM 19      MR. ROY:  And the second thing is, come May, assuming it

11:55AM 20 happens in May that we actually make the selection of the

11:55AM 21 plaintiffs between the Court, the defense, and the PSC and

11:55AM 22 whoever else actually select test plaintiffs for the February

11:55AM 23 trial, and to the extent an OPA type case is implicated, once

11:55AM 24 again, at least the nature and extent and duration of the spill

11:55AM 25 will be, we believe, relevant there, as well as the -- well, to

11:55AM 1    the extent that implicates the term environmental.

11:55AM 2         THE COURT:  Yes.  Do you believe that a regular update

11:56AM 3    of production for those issues will take care of that?

11:56AM 4         MR. ROY:  Yes, ma'am, I do.  Absolutely.

11:56AM 5         I say that.  I'm not the ESI expert.  I'm going to

11:56AM 6    let the ESI tell you that.

11:56AM 7         THE COURT:  Not knowing what you're saying.

11:56AM 8         MR. ROY:  I'm going to confess that I don't know the ESI

11:56AM 9    like they do, so I would like to hear them say that.

11:56AM 10        THE COURT:  Bill.

11:56AM 11        MR. LARGE:  Your Honor, William Large.  I'm going to

11:56AM 12   confess, unfortunately, in the small world I live in, I don't

11:56AM 13   necessarily know the merits as well as Mr. Roy and the others.

11:56AM 14   So, please, when -- if I do use examples or touch on things that

11:56AM 15   are the merits, allow me some latitude in what I may represent,

11:56AM 16   but that's why we bring people who know what's going on.

11:56AM 17        I want to just -- one loose end.  I think

11:56AM 18   Mr. Nomellini and I have our marching orders, and we are prepared

11:56AM 19   to carry them out forthwith.

11:56AM 20        One thing is, though, we had discussed generally

11:56AM 21   the share points.  And what I would like to propose, if it hasn't

11:57AM 22   already been basically suggested by Your Honor, is that the share

11:57AM 23   points themselves be considered custodians in certain -- certain

11:57AM 24   identified share points.

11:57AM 25        Because there is the IIT share point, the internal

11:57AM 1    investigative team share point, which it's clear to me, I think,

11:57AM 2    that BP searched very early on, just like they would a custodian.

11:57AM 3    And I have seen reference in various other e-mails and other

11:57AM 4    papers to other share points.

11:57AM 5          I mean, it's kind of hit or miss.  I've seen some

11:57AM 6    links, I've seen a few other things for groups, you know, in

11:57AM 7    terms of drilling -- you know, different divisions, different

11:57AM 8    work groups within BP.  That's a real hard one for us to try to

11:57AM 9    track down.

11:57AM 10          And I would like, perhaps, a good-faith effort to

11:57AM 11   identify share points that may contain relevant information.

11:58AM 12   Because it's clear, at least the way they used it on the internal

11:58AM 13   investigation team, that some of the most critical and important

11:58AM 14   documents that's used by a group are stored there.  And I don't

11:58AM 15   know how many there are, but, in a sense, they really are

11:58AM 16   custodians.

11:58AM 17          MR. NOMELLINI:  Mark Nomellini.

11:58AM 18          Your Honor, we have produced from quite a number of

11:58AM 19   nonindividual custodians and -- well, the PSC has the list of

11:58AM 20   overall custodians.  There are hundreds, and I think it's a

11:58AM 21   custodian-by-custodian basis.  Mr. Large and I should go through

11:58AM 22   and discuss those just to figure out which ones we need to focus

11:58AM 23   on.

11:58AM 24          Just so I understand, on the supplemental

11:58AM 25   discussions -- supplemental productions is also to be something

11:58AM 1   that I discuss with Mr. Large.

11:58AM 2        THE COURT:  I think so.  I'm thinking that, on the

11:58AM 3   supplemental production, those that do not have the default end

11:59AM 4   date, you all see if you can agree to those.  If you can't, let

11:59AM 5   me know early next week which requests those are.  Let me see the

11:59AM 6   requests, and I'll tell you if it's a continuing request or

11:59AM 7   whether it's the default end date.

11:59AM 8        MR. NOMELLINI:  Okay.  So any potential supplemental

11:59AM 9   productions would be request specific, as opposed to custodian

11:59AM 10  specific?

11:59AM 11       THE COURT:  Request specific.  You're going to have to,

11:59AM 12  it seems to me, decide who the custodians are.  So, for instance,

11:59AM 13  if one of your custodians dropped out, didn't do any further work

11:59AM 14  on that continuing request, you don't need to search him.

11:59AM 15       MR. NOMELLINI:  Right.  Okay.  So that identifying the

11:59AM 16  custodians for the requests become even more important because

11:59AM 17  you have to figure out who is associated with that.

11:59AM 18       THE COURT:  I think that's right, and I think that's

11:59AM 19  going to be a joint obligation.  You all are going to have to

12:00PM 20  know who is continuing on these investigations and update those

12:00PM 21  requests on a continuing basis and see if you all can reach

12:00PM 22  agreement every three months.  Does that sound good to people?

12:00PM 23       MR. IRPINO:  Yes, Your Honor.

12:00PM 24       MR. NOMELLINI:  Yes, I think -- Your Honor, I don't want

12:00PM 25  to -- I don't want to commit right here, right now.

12:00PM  1            THE COURT:  I understand.

12:00PM  2            MR. NOMELLINI:  I think we need to take it request by

12:00PM  3    request, and we will definitely look at it in good faith and

12:00PM  4    figure it out.

12:00PM  5            On another topic, Your Honor, the privilege log

12:00PM  6    people wanted me to raise a certain thing, and that is -- and you

12:00PM  7    can tell from our charts we have been making more production than

12:00PM  8    anybody these days, and tied to that is our privilege logs, which

12:00PM  9    also come out.

12:00PM 10            Right now, the amount of time we have, I think, is

12:00PM 11    15 business days, and we wanted to see if -- and perhaps the PSC

12:01PM 12    would be agreeable to this -- we could extend it simply to

12:01PM 13    20 business days to produce those logs, given the large amount of

12:01PM 14    production that we're making these days.

12:01PM 15            MR. IRPINO:  Anthony Irpino, Your Honor.  We would be

12:01PM 16    willing to work with them on that.  And we can agree.  Let's just

12:01PM 17    make things easy.

12:01PM 18            I do want to address, go back and make sure we have

12:01PM 19    clarity on the continuing production issue and the every three

12:01PM 20    months and producing documents and make sure we have the Court's

12:01PM 21    guidance, which I understand to be issues that seem to be

12:01PM 22    inherently continuing, such as analyzing the environmental

12:01PM 23    aspects, health, safety of things like the dispersants, COREXIT,

12:01PM 24    the scope of the release, how much, how far, things of that

12:02PM 25    nature, just so that when we sit down afterward, we --

12:02PM 1          There is always interpretation of what the Court

12:02PM 2   has said.  We're not interested in having things ongoing for

12:02PM 3   incident-related issues or investigation team, but those two

12:02PM 4   particular things that you mentioned we just want to make sure

12:02PM 5   we're clear on so that we have guidance.

12:02PM 6          THE COURT:  What I'm thinking about are things that we

12:02PM 7   don't know yet, ecological, health, environmental impact of any

12:02PM 8   substances used, such as dispersants.  You all had that as one of

12:02PM 9   your requests for production.

12:02PM 10          I'm at a disadvantage because I only see three of

12:02PM 11   your requests for production of documents out of approximately

12:02PM 12   50, but that seems to me to be something that would be an ongoing

12:02PM 13   issue.

12:02PM 14          If at any point BP says, we're not working on that

12:03PM 15   anymore, that's the end of that.

12:03PM 16          MR. IRPINO:  Fair, as long as we get a certification.

12:03PM 17   Big thing is certification.

12:03PM 18          I think you said it the way we wanted to understand

12:03PM 19   it, was things we don't have an answer to yet, things that are

12:03PM 20   not finalized yet.  And some of those things that we see, aside

12:03PM 21   from -- we've got the ecological, environmental impacts, we don't

12:03PM 22   have a clear answer, at least from our standpoint, of what's been

12:03PM 23   produced as to the final number, geographic areas of how much

12:03PM 24   oil, where it's going, so forth.  Those are also things that seem

12:03PM 25   to be continuing.

12:03PM 1          THE COURT:  That's right.  And that BP is still working

12:03PM 2     on; because, other people might be looking at it, but if BP has

12:03PM 3     stopped, for whatever reason, then they no longer have a duty to

12:03PM 4     continue updating if there is nothing to update.  And they'll

12:03PM 5     certify that.

12:03PM 6          I'm looking at Attachment F to Andy's letter.  Is

12:04PM 7     that the entire list of requests for production?  It numbers a

12:04PM 8     hundred and something?

12:04PM 9          MR. IRPINO:  To BP?

12:04PM 10         MR. NOMELLINI:  No, Your Honor, it's not.  Let me

12:04PM 11    clarify that.  There are a number -- excuse me, Mark Nomellini.

12:04PM 12    And I apologize, I have a bad cold, so I'm difficult to pick up

12:04PM 13    here, which is why Mr. Large might not want to ride out to the

12:04PM 14    airport with me.

12:04PM 15         THE COURT:  That's also why you want to get on your

12:04PM 16    plane.

12:04PM 17         MR. NOMELLINI:  Right.

12:04PM 18         So there are a number of requests for which BP

12:04PM 19    said, we can -- we don't need to rely on search terms.  This is a

12:04PM 20    limited universe of documents, so we're just going to produce

12:04PM 21    documents.  So you'll see some gaps in the numbering here.

12:04PM 22         There are also a number of requests for which BP

12:04PM 23    said, we object.  And I understand there is a different group,

12:05PM 24    which thankfully does not involve Mr. Large or Mr. Irpino or

12:05PM 25    ourselves --

12:05PM 1         UNIDENTIFIED SPEAKER:  It actually does involve me.

12:05PM 2         MR. NOMELLINI:  Okay.

12:05PM 3              -- that is dealing with those objections.  So that

12:05PM 4    is why you may see some gaps there, Your Honor.

12:05PM 5         THE COURT:  Well, when you all -- or if you all can't

12:05PM 6    reach agreement relative to any of the requests, let me know what

12:05PM 7    the requests are so I can look at them and tell you what I think

12:05PM 8    the start and end date for the search are.

12:05PM 9              Also, I noted that maybe there are some objections

12:05PM 10   on privilege, etcetera, that you all may not agree with.  Did I

12:05PM 11   see that bubbling up somewhere?

12:05PM 12        MR. IRPINO:  Yes.

12:05PM 13        THE COURT:  Why don't you all bring that to me sooner

12:05PM 14   rather than later if you can't work it out, because we're

12:05PM 15   launching the ship this afternoon.  And so let's bring it on.

12:06PM 16             I'm not trying to get you all to file motions

12:06PM 17   against each other and cause acrimony, but we all want an answer

12:06PM 18   to whatever the disagreement is so we can just keep moving.

12:06PM 19        MR. IRPINO:  Yes.  And we had, actually, a privilege

12:06PM 20   meet and confer scheduled today.  BP needed to reschedule that.

12:06PM 21   It's for early next week.  But our thought is to bring some

12:06PM 22   exemplar issues before the Court for guidance to the extent we

12:06PM 23   cannot agree.  The first step is to see if we can agree.

12:06PM 24        THE COURT:  Look, you guys have been working really well

12:06PM 25   together.  I'm not trying to suggest that there are these

12:06PM 1   broiling, broiling disputes.  But if these are things that you

12:06PM 2   are not able to work out, let us know so that we can go ahead and

12:06PM 3   decide it and move you on.

12:06PM 4          MR. IRPINO:  Early next week.  And then we're proposing

12:06PM 5   a meet and confer right after the status conference next week for

12:06PM 6   the request for production and interrogatory objections and

12:07PM 7   responding to that.

12:07PM 8              I will bring to the Court's attention, there

12:07PM 9   already is an agreement to disagree relative to certain spousal

12:07PM 10  privilege claims brought by Mr. Morel, who is -- I guess, he's --

12:07PM 11         UNIDENTIFIED SPEAKER:  Not represented here.

12:07PM 12         MR. IRPINO:  -- not represented by BP -- or not

12:07PM 13  represented here, but we are going to need a date.  And we're

12:07PM 14  going to follow the protocol set forth in PTO 14 regarding

12:07PM 15  submission of that.  Documents are still being sequestered and

12:07PM 16  treated as such.  I wanted to bring that to the Court's

12:07PM 17  attention.

12:07PM 18             One final thing.  For our meeting, once we leave

12:07PM 19  here, we're going to talk about date ranges and identifying

12:07PM 20  requests.  The custodial issue --

12:07PM 21         THE COURT:  Coming back to.

12:07PM 22         MR. IRPINO:  -- coming back to.

12:07PM 23             And I just want to be clear.  We're willing to try

12:07PM 24  a number of different things.  I think, just to articulate, the

12:07PM 25  biggest problem we have at this point, and I think I can speak to

12:07PM 1    it because I've had to do it, we get some proposed core people

12:07PM 2    from BP, which is, you know, helpful, but it is -- particularly

12:08PM 3    regarding the Request Number 22, 23, regarding ecological

12:08PM 4    effects, how much oil is spilled, it's, in two examples, six

12:08PM 5    people.  And so then we're left with having to fill in the gaps

12:08PM 6    from people who, while we do have a lot of documents produced,

12:08PM 7    it's a fairly inefficient way.

12:08PM 8              And this is what -- I want you to know exactly what

12:08PM 9    happens.  We get the names in.  I and Bill, we go through and go

12:08PM 10   through the documents after that, because it's clearly not enough

12:08PM 11   names.

12:08PM 12             Having the names assists us with going through the

12:08PM 13   documents and conducting searches.  But I'm just telling you,

12:08PM 14   I've spent many nights between midnight and four or 5:00 a.m.

12:08PM 15   going through document after document looking for people who will

12:08PM 16   be relevant to a particular issue.  And I will say 20-plus hours

12:08PM 17   we're talking about spent on a single -- couple -- I'm sorry, two

12:08PM 18   different requests for production.

12:09PM 19             And then I did some more again the last couple

12:09PM 20   nights, and I've identified many more, even, than we've even

12:09PM 21   talked about today.

12:09PM 22             So the issues are, one, it's inefficient; and, two,

12:09PM 23   I promise you, it is incomplete, even as of right now, the way

12:09PM 24   we're doing it.  And I think there might be a better way.

12:09PM 25             I'm not saying the defendants are doing -- they've

12:09PM 1  never misrepresented anything, they have never said this is

12:09PM 2  everybody, these people are all you need.  They just said, these

12:09PM 3  are core people.  That's helpful information.

12:09PM 4            I think, at the very least, on the front end, if we

12:09PM 5  got a more comprehensive listing of people, or if we used some of

12:09PM 6  these other methodologies, it would be more efficient.

12:09PM 7        THE COURT:  Let me ask you this.  I mean, it does seem

12:09PM 8  to me that BP makes a good point that you all have had a large

12:09PM 9  production of documents for a while, and you should be in a

12:09PM 10 position to identify those people that you're particularly

12:09PM 11 interested in because their names show up time and again.  And

12:10PM 12 they may have missed them.

12:10PM 13           So it seems to me we have to have you all do what

12:10PM 14 you're doing to some extent.  You need to give them names that

12:10PM 15 you're interested in and tell them, we would like to see these

12:10PM 16 people, we believe they are involved in this area.

12:10PM 17        MR. IRPINO:  Yes.

12:10PM 18        THE COURT:  So I am going to ask you all to go ahead and

12:10PM 19 continue to do that, because if there is somebody that they've

12:10PM 20 missed, that they don't think is a major custodian, but you want

12:10PM 21 to check them, give it to them.

12:10PM 22        MR. IRPINO:  Can we get some assistance with that, I

12:10PM 23 guess, is really the --

12:10PM 24        THE COURT:  Then let's talk about that.  Come on up and

12:10PM 25 let's talk about -- we've got search terms that are agreed to.

12:10PM 1          MR. NOMELLINI:  Right.

12:10PM 2          THE COURT:  Now, if we ran a search for Request for

12:10PM 3  Production Number 5, we've got search terms for that.

12:10PM 4          MR. NOMELLINI:  Right.

12:10PM 5          THE COURT:  Will that show us custodians, or will that

12:11PM 6  show us hits on names of people who seem to have a lot of these

12:11PM 7  documents?

12:11PM 8          MR. NOMELLINI:  It does because when we use the search

12:11PM 9  terms, we produce documents and they get them.  So that's -- so

12:11PM 10 that's really how -- how it works.  And it's much more effective

12:11PM 11 than statistics, is seeing what the documents say.  You know, the

12:11PM 12 statistical things sound interesting, but they are no substitute

12:11PM 13 for looking at the documents.

12:11PM 14          I mean, I understand they are working hard.  We're

12:11PM 15 all working hard.  I mean, BP, I think, has 160 contract

12:11PM 16 attorneys as we speak looking through documents.

12:11PM 17         THE COURT:  And they are all very glad for the work.

12:11PM 18         MR. NOMELLINI:  Right.  Not only for this, but for some

12:11PM 19 other -- and there is a picture of Bill Large, by the way,

12:11PM 20 hanging in the contractor section --

12:11PM 21         MR. LARGE:  With darts in it?

12:11PM 22         THE COURT:  No, no, no, no, with hearts and kisses.

12:11PM 23         MR. IRPINO:  I'm going to take a step back on that one.

12:12PM 24         THE COURT:  But if we ran, for instance, Request for

12:12PM 25 Production Number 13 -- we know what the search terms probably

12:12PM 1    are.  If we ran that and just asked for a list of names, could we

12:12PM 2    do that?

12:12PM 3         MR. NOMELLINI:  I am skeptical of that, Your Honor.

12:12PM 4         THE COURT:  Are you?

12:12PM 5         MR. NOMELLINI:  I'm really skeptical of that.  I mean, I

12:12PM 6    guess you could -- you could -- we would be producing the

12:12PM 7    documents, so when we produce the documents they get the names in

12:12PM 8    the metadata.

12:12PM 9         So, yes, you would get a list in the metadata.  And

12:12PM 10   they have been getting lists in the metadata.  I think that there

12:12PM 11   are 400 custodians in the metadata, plus to/froms, and cc's.  I

12:12PM 12   haven't even added those in.  There have got to be, you know,

12:12PM 13   thousands of to/froms and cc's in the metadata.  So that's where

12:12PM 14   you get the lists.

12:12PM 15        You could add up the tos, the froms, the cc's, and

12:12PM 16   the custodians.  It's all there in the documents that they have

12:12PM 17   had for, you know, many, many months.

12:13PM 18        THE COURT:  Bill, why can't you run that same search

12:13PM 19   from the metadata that you have on those documents?

12:13PM 20        MR. LARGE:  It's the 160 people that he just mentioned.

12:13PM 21   Before we get those documents, it does get filtered to them.  And

12:13PM 22   so we have a subset.  If they are not the people that the folks

12:13PM 23   that are reviewing are looking for, perhaps they have given them

12:13PM 24   our custodian list or whatever, those things will just pass

12:13PM 25   through.

12:13PM   1          I mean, we get a filtered list.  They have a set

12:13PM   2  of -- when they send to their review team, they capture from a

12:13PM   3  much larger universe.

12:13PM   4          And some of the tools, just so you know, they will

12:13PM   5  take our search terms and run, basically, scores on how much --

12:13PM   6  how many times are these search terms associated with this name?

12:13PM   7  Because one person may be e-mailing another one, and it may have

12:13PM   8  nothing to do with this case.  It may have to do with their

12:13PM   9  softball team.

12:13PM  10          So, you know, it would cut those out.  It would

12:13PM  11  show a report where you have that other person that maybe was not

12:14PM  12  on the custodian list, but it would say, yeah, he shows up a lot

12:14PM  13  in this guy's mailbox, but he's got nothing to do with this case.

12:14PM  14  And we'd look at it.  I'd look at it and say, I'm satisfied with

12:14PM  15  that, let's get rid of it.  You know, you get those types of

12:14PM  16  reports.

12:14PM  17          I guess -- I think we're really close here, and I

12:14PM  18  want to just make sure we have one thing on the record, and it

12:14PM  19  comes back to what the word "agree" means.

12:14PM  20          THE COURT:  It means what we do today.

12:14PM  21          MR. LARGE:  Right, and I understand.  But BP, I think,

12:14PM  22  and the PSC have a slightly different concept of what it is.

12:14PM  23  And, again, this gets back to what we are concerned about, and

12:14PM  24  that is, when we agree -- I understand, you know, PTO 13(b)

12:14PM  25  does -- it does include language which I believe --

12:14PM 1        THE COURT:  Will not be construed as a waiver of any

12:14PM 2  party's right to request subsequent searches and production.

12:14PM 3        MR. LARGE:  Particularly where -- and that's where I'm

12:15PM 4  saying that there is some type of standard there that's just

12:15PM 5  beyond us saying, in good faith we really think we should have

12:15PM 6  these people.

12:15PM 7        So if it didn't have that last part, if we struck

12:15PM 8  that after the semicolon, I'd feel pretty good about it.

12:15PM 9        MR. HERMAN:  Could I say something real briefly,

12:15PM 10 Your Honor?

12:15PM 11       THE COURT:  Certainly, Mr. Herman.

12:15PM 12       MR. HERMAN:  Steve Herman for the plaintiffs.

12:15PM 13       And I was reluctant to get up, just like Mr. Roy

12:15PM 14 was; but, in terms of the issue that we've had a bunch of

12:15PM 15 documents for a while, I just think it's important from a big

12:15PM 16 picture standpoint to keep in mind, at least the way that we've

12:15PM 17 kind of looked at the case in a few different stages, you have

12:15PM 18 the incident leading up to April 20th, then you have the

12:15PM 19 investigation of that incident with MBI, with the oil spill

12:16PM 20 commission, the Bly report, presumably Transocean did a report,

12:16PM 21 or it's doing one, etcetera.

12:16PM 22       Then you have the -- what we call the cap, kill,

12:16PM 23 containment issues and stage.  And then you have all of the

12:16PM 24 other, quote, unquote, environmental things that Mr. Roy was

12:16PM 25 referring to, which might include booming, dispersants, taking

12:16PM 1    samples, etcetera.

12:16PM 2         And while we have had a lot of time and all the

12:16PM 3    parties collectively have had a lot of time to deal with the

12:16PM 4    incident, what we'll call the incident and what we'll call the

12:16PM 5    investigation of the incident, which is specifically April 20th,

12:16PM 6    leading up to that, you know, with respect to the MBI hearings,

12:16PM 7    the oil spill commission, this first round of depositions,

12:16PM 8    because we're trying to kind of deal with the low hanging fruit,

12:16PM 9    and particularly because we're focused on the February 2012 trial

12:16PM 10   and we know that that's going to be an issue, and we're kind of

12:17PM 11   slowly bringing everything else into focus, such as the cap,

12:17PM 12   kill, containment issues and the environmental issues.

12:17PM 13        And so, while BP perhaps does make a good point

12:17PM 14   with respect to what we'll call the incident and the

12:17PM 15   investigation, I think it is reasonable that we take a little bit

12:17PM 16   of time -- and, frankly, we still have some discovery requests

12:17PM 17   that they're responding to hopefully as we speak, within the next

12:17PM 18   few days, where we're trying to get a handle on some of these

12:17PM 19   other stages or subuniverses that we haven't been as acquainted

12:17PM 20   with.

12:17PM 21        THE COURT:  No, I think that's right.

12:17PM 22        MR. NOMELLINI:  Your Honor, Mark Nomellini.  I am happy

12:17PM 23   that -- I'm glad to hear that, that there are some areas that we

12:17PM 24   are still getting into.

12:17PM 25        You know, I hope, in light of the recognitions that

12:17PM 1  we're still moving forward here, where we've not been getting

12:17PM 2  letters saying, you know, X, Y or Z documents should have been

12:17PM 3  produced long ago, we are clearly -- we are clearly working on

12:18PM 4  this together, and that's what this is all about.

12:18PM 5          I do think, at a certain point, we have to -- we

12:18PM 6  have to say, you know, this is the plan, and this is what we're

12:18PM 7  moving forward on.

12:18PM 8          Respectfully, plaintiffs asked for org charts to

12:18PM 9  identify people.  We gave them org charts, organizational charts.

12:18PM 10 They asked for people in interrogatories.  We have 50 pages of

12:18PM 11 interrogatory answers dealing with people.  The time is really

12:18PM 12 now to move on this.

12:18PM 13         THE COURT:  I tend to agree.  And, guys, I would like

12:18PM 14 you all to supplement their custodial list with those people you

12:18PM 15 are aware of in a week.  Let's get rolling on it.

12:18PM 16         Relative to their assistance in helping you search,

12:19PM 17 if you all can ask them on a case-by-case basis, I'll bet you

12:19PM 18 they'll do it.  I wouldn't ask them to do it in all 50 requests

12:19PM 19 for production of documents, but why don't you all suggest to

12:19PM 20 them on some of these requests what you would like them to do,

12:19PM 21 run a report to show you custodial names and hits.

12:19PM 22         MR. NOMELLINI:  And we can do that, Your Honor.  And as

12:19PM 23 I understand it, it will be from -- from the universe of

12:19PM 24 documents that we have produced.

12:19PM 25         THE COURT:  I think that is --

12:19PM  1         MR. IRPINO:  That does us no good, Your Honor.  I mean,

12:19PM  2    I can do that.  What I need -- Anthony Irpino.

12:19PM  3              I can do that.  We don't have --

12:19PM  4         THE COURT:  That's what I'm telling you to do.

12:19PM  5         MR. IRPINO:  Right.  Your Honor, I promise you I've been

12:19PM  6    doing it.  And reading.

12:19PM  7              When I have the universe of documents that have

12:19PM  8    been produced, and it's this big, and I'm looking through that,

12:20PM  9    it's going to tell me this much information.

12:20PM 10              When there is a universe of documents that's one

12:20PM 11    hundred times the size of the documents that are produced or a

12:20PM 12    thousand times or a hundred times -- a thousand times the size of

12:20PM 13    the documents produced, which is the universe of documents that

12:20PM 14    they are looking through and they can run those searches, that

12:20PM 15    gives me names.

12:20PM 16              I mean, I have a limited universe of names that I

12:20PM 17    can identify who are going to be responsive to a particular

12:20PM 18    request.  And I'm limited, in large part, by the documents that

12:20PM 19    have been produced already.  And there is a whole bunch more

12:20PM 20    documents out there that names are going to pop up from that I

12:20PM 21    don't even have -- we don't even have access to.

12:20PM 22              And aside from the fact that, you know, trying to

12:20PM 23    get around and not having institutional knowledge of their inner

12:20PM 24    workings and so forth, that's the issue.

12:20PM 25              THE COURT:  Yes, but what I'm hearing you say, Anthony,

12:20PM 1   is that you want them to run these searches on their entire

12:20PM 2   database of the company.

12:20PM 3          MR. IRPINO:  Or wherever -- look, I'll take it any way I

12:21PM 4   can get it.  I'll take -- I would ask them to go talk to their

12:21PM 5   people and say, who is relevant?  You know, just talk to one

12:21PM 6   person in this department and say, who are the people?  You know,

12:21PM 7   supplement the names.  When I start with six and I come up with

12:21PM 8   an additional 70, there is something wrong there as a starting

12:21PM 9   point.

12:21PM 10         THE COURT:  But your premise is, is that these 70 are

12:21PM 11  going to be critical custodians, whereas we don't know that.

12:21PM 12  They've agreed to run it because you've asked them to run it, but

12:21PM 13  we're not sure yet they are critical custodians.  I think you're

12:21PM 14  making an assumption that we've not yet confirmed.

12:21PM 15         MR. IRPINO:  Actually, not really.  I can confirm it

12:21PM 16  because the documents that I've seen, these people are all

12:21PM 17  included on, you know, dealing with the dispersant issue and how

12:21PM 18  much dispersant is getting ordered, what dispersant is getting

12:21PM 19  ordered, where it's getting put, the amounts it's getting put in,

12:21PM 20  vendor problems, supply.  I see all these people on there, every

12:21PM 21  one of which -- or not every one, the vast majority of which are

12:22PM 22  left off the things.

12:22PM 23         And I'm not trying to say they are doing anything

12:22PM 24  inappropriate, but it's a bad starting point when we've got six

12:22PM 25  on an issue that's pretty clearly widespread throughout at least

12:22PM  1   a couple different portions of this company, and then the

12:22PM  2   plaintiffs -- the parties who are not asking to limit the

12:22PM  3   production, so it's ironic -- are burdened with trying to find

12:22PM  4   and put the pieces of the puzzle together by going through, when

12:22PM  5   I think it's fairly reasonable to say -- and I'm just asking for

12:22PM  6   assistance -- to say, hey, you know, we talked to a couple

12:22PM  7   people, and these are some additional names that we think are

12:22PM  8   real good.  But I've already identified people who we think to be

12:22PM  9   pretty important who are in addition.

12:22PM 10              THE COURT:  Thank you.

12:22PM 11              MR. LARGE:  Your Honor, William Large.  If I can clarify

12:22PM 12   just one thing.

12:22PM 13              When Anthony talks about universe, we're not

12:22PM 14   talking about BP, PLC over in Australia or Equatorial Guinea or

12:23PM 15   whatever.  What we are talking about in terms of a universe are

12:23PM 16   the servers and the storage devices in those areas that are most

12:23PM 17   likely.

12:23PM 18              So if we have, you know, a chemical engineering

12:23PM 19   department, wherever, that is analyzing COREXIT, that's one of

12:23PM 20   the places that I think they should look.  If they are looking at

12:23PM 21   it -- they listed, I think, Doug Suttle, the former president, I

12:23PM 22   believe.  He's got other people in his office.  He has a server.

12:23PM 23              And really, you know, BP has -- I couldn't even

12:23PM 24   guess the number of servers it must have worldwide.  That's not

12:23PM 25   what we're asking for.  Our universe is those servers in the

12:23PM 1    areas that are going to likely have this information.  And those

12:23PM 2    kind of searches can be -- the kind of searches and statistical

12:23PM 3    analysis we're talking about can be run.

12:23PM 4           I might ask, also, BP obviously has to have some

12:23PM 5    type of criteria for narrowing -- I think, some type of program

12:24PM 6    or process where they do narrow prior to their 160 folks doing

12:24PM 7    their review.  Perhaps, as they are running this, they could

12:24PM 8    share with us their hit lists or whatever they are doing, just as

12:24PM 9    an added level of trust, but verify.

12:24PM 10          THE COURT:  Okay.

12:24PM 11          MR. NOMELLINI:  Your Honor, respectfully, I think we're

12:24PM 12   moving backwards here.  I think Your Honor had a good proposal

12:24PM 13   with respect to, you know, running -- we can both run metrics on

12:24PM 14   the produced items.

12:24PM 15          In terms of making the universe larger, Your Honor,

12:24PM 16   our universe is already four hundred custodians.  The big

12:24PM 17   universe that Halliburton was talking about looking at for their

12:24PM 18   analysis is only 200, so already we're at a larger universe.

12:24PM 19          You cannot -- you cannot do searches on servers

12:24PM 20   that are out there, you know, whether it's 80,000 people or

12:24PM 21   10,000 people, you cannot just run searches on servers.  The

12:25PM 22   material has to be pulled down, indexed.  It's a very time

12:25PM 23   consuming, very expensive process to do that.  So we're already

12:25PM 24   starting from a universe that's three times larger than all of

12:25PM 25   the other parties in the case combined.

12:25PM 1          THE COURT:  Well, for the purposes of moving forward,

12:25PM 2    guys, I'm going to ask that BP run these searches on the universe

12:25PM 3    of documents that they have identified as being relevant to what

12:25PM 4    we're doing.  See what you come up with running the searches and

12:25PM 5    custodians, and share that with the PSC.

12:25PM 6          MR. NOMELLINI:  That would be the universe of produced

12:25PM 7    documents that we've identified as relevant?

12:25PM 8          UNIDENTIFIED SPEAKER:  No.

12:25PM 9          UNIDENTIFIED SPEAKER:  No.

12:25PM 10         MR. NOMELLINI:  Well, if they are talking about some

12:25PM 11   broader universe of servers, Your Honor, that's entirely

12:25PM 12   infeasible if they're talking about 80,000 people or even a

12:26PM 13   smaller number.  We've already --

12:26PM 14         THE COURT:  It seems to me that BP has already

12:26PM 15   identified the universe of relevant documents.  Now, what you're

12:26PM 16   concerned about is that particular custodian and custodian files

12:26PM 17   be identified out of that universe.

12:26PM 18         MR. LARGE:  I haven't understood, Your Honor, that they

12:26PM 19   have identified all the relevant documents because we haven't

12:26PM 20   even run the search terms yet.

12:26PM 21             I would like to speak to the server issue.  I

12:26PM 22   understand what Mark -- excuse me, Mr. Nomellini is saying

12:26PM 23   regarding running a full search; but, as he knows, there are

12:26PM 24   statistical tools, things that are called crawlers or spiders or

12:26PM 25   various other things that go in and sample folders and whatnot

12:26PM  1    and give you reports on this stuff.

12:27PM  2             It runs in the background.  You don't have to shut

12:27PM  3    down.  It's not going to use 80 percent of your CPU space.  You

12:27PM  4    get reports from those things and the vendors, I assume, that

12:27PM  5    they use, and I would be shocked if Kirkland itself didn't have

12:27PM  6    them, have these types of tools to use them.

12:27PM  7             We can look at the Sedona conference.  Mr. Jessen

12:27PM  8    talks about these things in the affidavit he produced.  In fact,

12:27PM  9    he talks about using these type of search and culling devices,

12:27PM 10    and that -- and they are not just indexing and running a search.

12:27PM 11         THE COURT:  Mark, when you run the search terms with the

12:27PM 12    agreed-to dates, the dates we're going to agree to today or

12:27PM 13    Monday or whenever, is there a data field that will show

12:27PM 14    custodian?

12:27PM 15         MR. NOMELLINI:  Yes.  And that will be in the universe

12:27PM 16    of documents that we produce to the plaintiffs that will result

12:28PM 17    from these searches.

12:28PM 18             Your Honor, I strongly object to any request that

12:28PM 19    we do more work on these identifying custodians.  You know, we've

12:28PM 20    answered -- we have 50 pages of interrogatory answers.  That's

12:28PM 21    how you identify people.

12:28PM 22             We've had discussions with them.  We've produced

12:28PM 23    hundreds of thousands of documents, much more than anyone else in

12:28PM 24    the case.  Respectfully, it's time to move forward.  We're not

12:28PM 25    going to do any other kind of exotic analysis.

12:28PM  1          THE COURT:  Let me ask you:  When you go ahead and agree

12:28PM  2  to the dates and you run these searches, guys, isn't that going

12:28PM  3  to help you with the custodial issue?

12:28PM  4          MR. NOMELLINI:  Yes, from our perspective, Your Honor,

12:28PM  5  it definitely will.  They will get much -- they are getting many

12:28PM  6  more documents and many more custodians, to, from, cc's in the

12:28PM  7  metadata.

12:28PM  8          MR. LARGE:  Your Honor, this brings us back to probably

12:28PM  9  what I'm a broken record on, and that is what does "agreed to"

12:28PM 10  mean?  Yes, we will get more information.  But when we come back

12:29PM 11  to that, the second part of 13(b), where it says -- particularly

12:29PM 12  where we have to make a showing, and they reserve rights to

12:29PM 13  object.  And rights to object would mean, oh, burden; oh,

12:29PM 14  difficult to collect these laptops.  And that's really what we're

12:29PM 15  concerned about.

12:29PM 16          We can get this data from them.  We can analyze it.

12:29PM 17  We come up with five names, and then they say, well, we can't go

12:29PM 18  back and look again.  And they would object.

12:29PM 19          What I would like to do today is have an agreement

12:29PM 20  where "agree" means go ahead and run it; and, if we give you

12:29PM 21  names that are in good faith and we can show are relevant or

12:29PM 22  potentially relevant, that they have to run them, and we don't

12:29PM 23  get an argument back that you already had your chance, you

12:29PM 24  already agreed to the other names, too bad, it's going to be too

12:29PM 25  burdensome for us.  As long as we know that's not the case, I'm

12:29PM 1  happy to follow his protocol.

12:29PM 2          THE COURT:  Mark, do you have a problem with that?

12:29PM 3          MR. NOMELLINI:  Your Honor, respectfully, I think that

12:30PM 4  Paragraph 13(b), I think it's very fair.  It says there is no

12:30PM 5  waiver of their position to request more searches be run.  I

12:30PM 6  don't understand --

12:30PM 7          THE COURT:  Here is the hypothetical.  If you all run

12:30PM 8  your searches with the agreed-to date ranges and it shows six

12:30PM 9  custodians that weren't on your list and it wasn't on their list

12:30PM 10 to please run for them, you're not going to have a problem

12:30PM 11 saying, okay, yeah, we'll run these six people?

12:30PM 12         MR. NOMELLINI:  If it's six people, yes, I think that

12:30PM 13 that sounds very reasonable.  If it's a number that's unduly

12:30PM 14 burdensome, I think it's going to be different.  I think it will

12:30PM 15 depend on the specifics.

12:30PM 16          And I think we have been very reasonable because,

12:30PM 17 for example, they've just identified, I think it was,

12:30PM 18 48 additional people, and we agreed to them all.  I'm reluctant

12:30PM 19 to commit to large numbers in advance; but, I think that with

12:30PM 20 this team we have here and Your Honor working through these

12:30PM 21 dates, and Paragraph 13(b), I think we can work these things out.

12:31PM 22         THE COURT:  I think we can, too, guys.

12:31PM 23          What I would like to do is agree to your date

12:31PM 24 ranges.  Those things that we can't agree on, give me the request

12:31PM 25 for production, I'll set the date ranges.

12:31PM 1            You all go ahead and give them supplemental

12:31PM 2    custodians that you want them to run the search terms with.

12:31PM 3    They'll go ahead and run it.  We're going to start that

12:31PM 4    production.  We're going to get it underway.

12:31PM 5            If something pops up, a new custodian that wasn't

12:31PM 6    on their list, that wasn't on the supplemental list, let's bring

12:31PM 7    it up, let's talk about it.  We'll have a conference call, you

12:31PM 8    know.

12:31PM 9            MR. HERMAN:  Steve Herman for the plaintiffs.

12:31PM 10           But just to get clarification, in terms of running

12:31PM 11   these new searches, that's not limited to the universe of

12:31PM 12   documents that they've already decided is relevant, correct?

12:31PM 13           THE COURT:  No.  Mark is running new searches based on

12:31PM 14   the search terms that you all agreed to.  We had to agree today

12:31PM 15   to the date range, right, and to a custodian list.  And that's

12:32PM 16   what I want to get done so that Mark can go ahead and run these

12:32PM 17   searches and dump these new documents on you, new documents.

12:32PM 18           MR. HERMAN:  Well, that's, I guess, comforting.

12:32PM 19           What we thought we heard was -- and we're not

12:32PM 20   intimately involved with the ESI issues, but what we thought we

12:32PM 21   heard BP saying is we're only going to do searches of the

12:32PM 22   documents that we already decided were relevant and that we've

12:32PM 23   already produced.

12:32PM 24           MR. NOMELLINI:  No, Your Honor, we're not only running

12:32PM 25   the search terms against the produced documents.

12:32PM  1          THE COURT:  Right.  You're running a new search.

12:32PM  2          MR. NOMELLINI:  We're running a new search.  All of the

12:32PM  3    parameters of the search are laid out in our Exhibit E in my

12:32PM  4    letter.

12:32PM  5          THE COURT:  I'm with you.  So that's how we're going to

12:32PM  6    proceed.

12:32PM  7               Now, guys, the sooner we can agree to dates and the

12:32PM  8    sooner you all can -- Bill, and the sooner you all can supplement

12:32PM  9    the custodial list, the sooner Mark can get going on this new

12:32PM 10    run.

12:32PM 11          MR. NOMELLINI:  Although, Your Honor, again, to be

12:33PM 12    clear, because -- because things are moving, we're going to get

12:33PM 13    started with Exhibit E now; and, then to the extent -- you know,

12:33PM 14    for the depositions that are coming up.  And then, to the extent

12:33PM 15    there are changes, we will modify the process to the extent it's

12:33PM 16    agreed or Your Honor orders.

12:33PM 17          THE COURT:  But I would put a deadline, guys, of no

12:33PM 18    later than noon next Friday to get the custodial additions over

12:33PM 19    to Mark.  If you can do it earlier, great.  But get the custodial

12:33PM 20    over to him.  And hopefully, by Monday, you all will know whether

12:33PM 21    you can agree to the date ranges; and, if not, Tuesday let me

12:33PM 22    know what the disagreement is, and I'll go ahead and rule on

12:33PM 23    those.

12:33PM 24               Yes, Mr. Herman.

12:33PM 25          MR. HERMAN:  Steve Herman for the plaintiffs.  When I

12:33PM  1   originally got up to speak, it was based on my old comments about

12:33PM  2   kind of the big picture and categories and maybe not being as

12:33PM  3   familiar or focused with some issues.  And the response from BP's

12:34PM  4   counsel was, well, we've given you a bunch of interrogatory

12:34PM  5   responses identifying those people already.

12:34PM  6           I don't want to jump the gun.  I understand that

12:34PM  7   we're meeting and conferring about this.  But we've had omnibus

12:34PM  8   requests out.  They got drafts, I think, in August.  They were

12:34PM  9   served in October.  And we specifically staged those responses to

12:34PM 10   focus first on the -- what I'll call the incident, then on the

12:34PM 11   investigation, and then on the environmental and capping issues.

12:34PM 12           Last week was the 120-day period when they were

12:34PM 13   supposed to provide us with the names of the people who were

12:34PM 14   involved in the spill/environmental/capping issues; and, based on

12:34PM 15   my recollection, we didn't get a single name.  So --

12:34PM 16           THE COURT:  Andy is standing up.

12:34PM 17           MR. LANGAN:  This is something I do know about.

12:34PM 18   Andy Langan for BP.

12:34PM 19           That's not true.  We get the 60 and 90, 120 days.

12:34PM 20   We answered the 120-day one.  I think we gave him the whole org

12:35PM 21   chart, the whole layout for the unified command.

12:35PM 22           THE COURT:  That's good.  Now, where did it go?  You

12:35PM 23   know about it --

12:35PM 24           MR. LANGAN:  We served it.

12:35PM 25           THE COURT:  -- and I believe you.  I believe you.  No

12:35PM  1    reason not to believe you.  Would you double check it?

12:35PM  2         MR. LANGAN:  Sure.

12:35PM  3         MR. HERMAN:  We'll double check, too, Your Honor.  And I

12:35PM  4    apologize if I'm mistaken.

12:35PM  5         MR. LANGAN:  I do, too.  I do, too.  But we take these

12:35PM  6    deadlines seriously, so.

12:35PM  7         THE COURT:  No.  And, look, if you say it's been done,

12:35PM  8    do me a favor and, Andy, send another copy direct to Steve, if

12:35PM  9    you don't mind, and then that's taken care of, because I know

12:35PM 10    that it's been done.

12:35PM 11         MR. IRPINO:  Anthony Irpino.  They have it already and

12:35PM 12    they have those names.  We just automatically include those

12:35PM 13    people in the custodial searches.

12:35PM 14         THE COURT:  It's up to you.

12:35PM 15         MR. IRPINO:  Yes.  I just think the process -- it's a

12:35PM 16    process, it's not --

12:35PM 17         THE COURT:  Take a look at the list.  If you want to

12:35PM 18    include those people, then include those people.

12:36PM 19         MR. IRPINO:  Could we have it so that when we need --

12:36PM 20    get the list of names --

12:36PM 21         MR. NOMELLINI:  Your Honor, I think they have the list.

12:36PM 22    They can look at the list and talk to us about who, if anyone,

12:36PM 23    they want to add.  I think that's the next step.

12:36PM 24         THE COURT:  By noon on Friday next week, give them your

12:36PM 25    supplemental list to add to their list of custodians.  Okay?

12:36PM 1                All right, guys.  You've got a very short lunch

12:36PM 2      period.

3                (WHEREUPON, at 12:36 p.m., the proceedings were

4      concluded.)

5                              *    *    *

6

7

8                         REPORTER'S CERTIFICATE

9

10          I, Cathy Pepper, Certified Realtime Reporter, Registered

11     Merit Reporter, Registered Professional Reporter, Certified Court

12     Reporter of the State of Louisiana, Official Court Reporter for

13     the United States District Court, Eastern District of Louisiana,

14     do hereby certify that the foregoing is a true and correct

15     transcript, to the best of my ability and understanding, from the

16     record of the proceedings in the above-entitled and numbered

17     matter.

18

19

20                              *s/Cathy Pepper*

21                              Cathy Pepper, CRR, RMR, CCR

22                              Official Court Reporter

23                              United States District Court

24

25

1

**1**

**1** [3] - 31:1, 32:9, 33:24
**1/1/09** [1] - 31:4
**10** [1] - 29:17
**10,000** [1] - 58:21
**10-MDL-2179** [1] - 1:6
**11** [2] - 24:4, 24:5
**11:00** [1] - 1:7
**120** [1] - 65:19
**120-day** [2] - 65:19, 65:20
**12:36** [1] - 67:3
**13** [6] - 5:14, 24:4, 27:4, 29:14, 29:18, 49:25
**13(b** [5] - 26:13, 51:24, 61:11, 62:4, 62:21
**13-year** [1] - 30:16
**13.5** [1] - 29:7
**1331** [1] - 3:4
**14** [1] - 46:14
**15** [1] - 42:11
**15th** [5] - 28:9, 28:10, 28:17, 28:18
**16** [2] - 5:13, 13:23
**160** [3] - 49:15, 50:20, 58:6
**1665** [1] - 3:4
**18** [2] - 1:7, 4:2
**1997** [1] - 29:11
**1st** [1] - 33:25

**2**

**2** [1] - 26:23
**20** [6] - 1:5, 25:16, 26:4, 31:13, 31:14, 42:13
**20-plus** [1] - 47:16
**200** [1] - 58:18
**2002** [1] - 29:20
**20044** [1] - 2:5
**2005** [1] - 29:20
**2008** [1] - 34:1
**2009** [2] - 31:2, 33:24
**2010** [5] - 1:5, 31:13, 31:14, 31:16, 36:9
**2011** [6] - 1:7, 4:2, 13:23, 32:9, 33:4, 33:6
**2012** [1] - 53:9
**20th** [6] - 27:16, 27:18, 31:12, 31:13, 52:18, 53:5
**21st** [1] - 27:20
**22** [1] - 47:3

**23** [1] - 47:3
**2990** [1] - 1:25

**3**

**300** [1] - 2:15
**30th** [4] - 30:19, 31:8, 31:16, 33:14
**31st** [2] - 28:23, 35:8
**365** [1] - 1:25
**3668** [1] - 1:17

**4**

**40** [1] - 30:2
**400** [2] - 25:15, 50:11
**48** [3] - 13:8, 13:10, 62:18

**5**

**5** [1] - 49:3
**50** [13] - 13:3, 17:14, 17:15, 17:16, 18:16, 30:1, 30:2, 34:22, 36:2, 43:12, 54:10, 54:18, 60:20
**500** [1] - 3:12
**5000** [1] - 2:19
**504** [1] - 3:13
**546** [1] - 2:23
**556** [1] - 1:18
**57** [17] - 6:21, 7:6, 7:7, 7:8, 7:17, 8:7, 8:8, 8:11, 12:15, 12:17, 13:11, 13:13, 13:15, 13:17, 14:15, 14:19, 15:7
**589-7779** [1] - 3:13
**59** [1] - 13:16
**5:00** [1] - 47:14

**6**

**60** [1] - 65:19
**60654** [1] - 2:15

**7**

**70** [2] - 56:8, 56:10
**701** [1] - 2:18
**70113** [1] - 1:21
**70130** [3] - 1:25, 2:24, 3:12
**70139** [1] - 2:19
**70502** [1] - 1:18

**7611** [1] - 2:5
**77010** [1] - 3:5

**8**

**8** [1] - 29:17
**80** [1] - 60:3
**80,000** [2] - 58:20, 59:12
**820** [1] - 1:21
**8th** [1] - 28:25

**9**

**90** [2] - 16:10, 65:19
**95** [1] - 16:10
**9th** [1] - 27:19

**A**

**a.m** [1] - 47:14
**A.M** [1] - 1:7
**ability** [1] - 67:15
**able** [1] - 46:2
**above-entitled** [1] - 67:16
**absent** [1] - 34:18
**absolutely** [2] - 33:1, 39:4
**accept** [4] - 14:21, 15:15, 23:16, 24:18
**access** [2] - 20:4, 55:21
**account** [1] - 23:9
**achieve** [1] - 36:7
**acquainted** [1] - 53:19
**acrimony** [1] - 45:17
**ACTION** [1] - 1:6
**ACTIONS** [1] - 1:9
**activities** [2] - 34:4, 34:5
**actual** [4] - 8:3, 17:23, 22:10, 22:17
**add** [14] - 9:11, 13:8, 13:10, 14:2, 14:3, 14:6, 14:9, 15:23, 22:16, 26:12, 50:15, 66:23, 66:25
**added** [3] - 15:2, 50:12, 58:9
**addition** [3] - 7:15, 22:10, 57:9
**additional** [6] - 13:7, 14:5, 26:15, 56:8, 57:7, 62:18
**additions** [3] - 14:19, 14:22, 64:18
**address** [2] - 12:3,

42:18
**addresses** [1] - 26:14
**addressing** [1] - 8:24
**admitting** [1] - 18:10
**advance** [2] - 32:15, 62:19
**advanced** [2] - 16:7, 22:23
**affecting** [1] - 28:7
**affidavit** [1] - 60:8
**afternoon** [3] - 34:21, 37:1, 45:15
**ago** [2] - 23:18, 54:3
**agree** [35] - 15:11, 16:2, 17:10, 17:21, 24:21, 26:20, 28:16, 28:17, 28:18, 28:19, 30:11, 30:14, 31:19, 32:9, 34:24, 35:17, 35:24, 37:7, 38:8, 41:4, 42:16, 45:10, 45:23, 51:19, 51:24, 54:13, 60:12, 61:1, 61:20, 62:23, 62:24, 63:14, 64:7, 64:21
**agreeable** [2] - 32:2, 42:12
**agreed** [20] - 6:19, 6:25, 7:6, 13:9, 14:3, 14:9, 14:21, 15:24, 18:9, 24:12, 33:25, 48:25, 56:12, 60:12, 61:9, 61:24, 62:8, 62:18, 63:14, 64:16
**agreed-to** [2] - 60:12, 62:8
**agreeing** [1] - 18:8
**agreement** [15] - 5:14, 5:16, 5:17, 16:10, 23:22, 24:1, 34:9, 34:18, 34:23, 35:3, 37:11, 41:22, 45:6, 46:9, 61:19
**ahead** [11] - 9:1, 32:22, 34:25, 46:2, 48:18, 61:1, 61:20, 63:1, 63:3, 63:16, 64:22
**airport** [2] - 37:3, 44:14
**Alan** [1] - 20:19
**ALAN** [1] - 3:4
**alive** [1] - 38:6
**ALL** [1] - 1:9
**allow** [1] - 39:15
**allowed** [1] - 23:4
**allowing** [1] - 30:19
**alone** [2] - 4:11, 4:12
**ALSO** [1] - 3:7
**alternatively** [2] -

27:23, 28:25
**AMERICA** [7] - 2:3, 2:8, 2:8, 2:9, 2:10, 2:12, 2:13
**amicable** [1] - 5:12
**amount** [6] - 6:22, 8:12, 42:10, 42:13
**amounts** [1] - 56:19
**analysis** [4] - 28:4, 33:15, 33:25, 34:12, 58:3, 58:18, 60:25
**analyze** [2] - 21:18, 61:16
**analyzing** [3] - 28:5, 42:22, 57:19
**ANDREW** [1] - 2:14
**Andy** [4] - 6:2, 65:16, 65:18, 66:8
**Andy's** [1] - 13:23, 44:6
**answer** [4] - 19:7, 43:19, 43:22, 45:17
**answered** [2] - 60:20, 65:20
**answers** [5] - 13:2, 13:3, 18:15, 54:11, 60:20
**Anthony** [5] - 42:15, 55:2, 55:25, 57:13, 66:11
**ANTHONY** [1] - 1:24
**anticipate** [1] - 5:16
**apace** [2] - 10:3, 10:14
**apologize** [5] - 6:18, 9:9, 10:6, 44:12, 66:4
**appear** [1] - 6:21
**APPEARANCES** [3] - 1:14, 2:1, 3:1
**apply** [1] - 34:22
**appreciate** [3] - 10:23, 11:23, 23:2
**approach** [2] - 36:12, 36:13
**appropriate** [1] - 29:17
**APRIL** [1] - 1:5
**April** [9] - 27:16, 27:18, 27:20, 31:12, 31:13, 31:14, 52:18, 53:5
**area** [2] - 22:8, 48:16
**areas** [4] - 43:23, 53:23, 57:16, 58:1
**argument** [1] - 61:23
**articulate** [1] - 46:24
**aside** [4] - 7:8, 8:17, 43:20, 55:22
**aspect** [1] - 6:23
**aspects** [2] - 38:3,

42:23
**assistance** [3] - 48:22, 54:16, 57:6
**assists** [1] - 47:12
**associate** [1] - 4:18
**associated** [2] - 41:17, 51:6
**assume** [3] - 9:15, 36:3, 60:4
**assumed** [1] - 29:11
**assumes** [1] - 34:16
**assuming** [4] - 9:1, 13:15, 14:14, 38:19
**assumption** [1] - 56:14
**Attachment** [1] - 44:6
**attention** [2] - 46:8, 46:17
**attorneys** [1] - 49:16
**August** [1] - 65:8
**Australia** [1] - 57:14
**automatically** [1] - 66:12
**AVENUE** [1] - 1:21
**avoid** [1] - 22:20
**aware** [1] - 54:15
**awfully** [1] - 20:23

**B**

**B406** [1] - 3:12
**BABIUCH** [1] - 3:8
**background** [1] - 60:2
**backwards** [1] - 58:12
**bad** [3] - 44:12, 56:24, 61:24
**based** [2] - 63:13, 65:1, 65:14
**basis** [12] - 7:14, 27:10, 28:13, 29:4, 31:2, 35:18, 36:20, 37:6, 38:18, 40:21, 41:21, 54:17
**become** [1] - 41:16
**BEFORE** [1] - 1:12
**beg** [1] - 8:23
**begin** [6] - 30:22, 30:24, 31:1, 31:6, 31:7, 36:3
**beginning** [1] - 36:2
**behalf** [1] - 5:7
**behind** [1] - 5:18
**BERTAUT** [1] - 2:23
**best** [2] - 4:24, 67:15
**bet** [1] - 54:17
**better** [6] - 15:19, 15:22, 17:25, 18:20, 19:3, 47:24
**between** [5] - 25:13,

28:25, 38:1, 38:21, 47:14
**beyond** [6] - 15:13, 31:17, 35:19, 36:4, 36:14, 52:5
**big** [8] - 6:15, 14:16, 25:13, 43:17, 52:15, 55:8, 58:16, 65:2
**biggest** [2] - 30:6, 46:25
**bill** [1] - 50:18
**Bill** [8] - 21:21, 22:13, 22:22, 29:7, 39:10, 47:9, 49:19, 64:8
**biology** [2] - 38:5, 38:6
**bit** [4] - 17:22, 21:4, 24:20, 53:15
**blink** [1] - 26:25
**blunderbuss** [1] - 36:13
**blush** [1] - 21:7
**Bly** [1] - 52:20
**Bly's** [1] - 27:18
**board** [3] - 28:10, 29:1, 29:14
**bogged** [1] - 30:7
**Boolean** [1] - 16:10
**boom** [1] - 32:23
**booming** [1] - 52:25
**BOP** [1] - 34:12
**BOX** [2] - 1:17, 2:5
**BP** [49] - 2:8, 2:8, 2:9, 2:10, 2:11, 2:12, 2:13, 5:8, 8:19, 8:21, 14:9, 14:16, 16:16, 19:22, 19:25, 21:11, 23:13, 24:7, 24:10, 25:13, 25:14, 25:16, 25:18, 25:25, 29:21, 30:17, 40:2, 40:8, 43:14, 44:1, 44:2, 44:9, 44:18, 44:22, 45:20, 46:12, 47:2, 48:8, 49:15, 51:21, 53:13, 57:14, 57:23, 58:4, 59:2, 59:14, 63:21, 65:18
**BP's** [6] - 9:14, 21:12, 24:1, 24:19, 28:16, 66:3
**brief** [2] - 24:1, 28:12
**briefly** [1] - 52:9
**bring** [7] - 39:16, 45:13, 45:15, 45:21, 46:8, 46:16, 63:6
**bringing** [1] - 53:11
**brings** [1] - 61:8
**broad** [1] - 30:17
**broader** [2] - 7:6,

59:11
**broiling** [2] - 46:1
**broken** [1] - 61:9
**brought** [1] - 46:10
**bubbling** [1] - 45:11
**bunch** [4] - 15:21, 52:14, 55:19, 65:4
**burden** [5] - 24:11, 24:24, 28:19, 29:21, 61:13
**burdened** [1] - 57:3
**burdensome** [2] - 61:25, 62:14
**business** [3] - 12:23, 42:11, 42:13
**busy** [1] - 6:18
**BY** [10] - 1:4, 1:17, 1:20, 2:4, 2:14, 2:17, 2:23, 3:4, 3:14, 3:14

**C**

**calculations** [1] - 8:12
**CALLED** [1] - 4:4
**CAMERON** [1] - 2:22
**CANAL** [2] - 1:24, 1:25
**cannot** [4] - 45:23, 58:19, 58:21
**cap** [5] - 6:23, 8:14, 28:2, 52:22, 53:11
**capped** [1] - 38:12
**capping** [2] - 27:20, 65:11
**capture** [3] - 27:13, 29:21, 51:2
**care** [3] - 35:1, 39:3, 66:9
**careful** [1] - 15:8
**CARMELITE** [1] - 2:23
**CARONDELET** [1] - 2:23
**carry** [1] - 39:19
**case** [12] - 20:24, 25:17, 35:11, 38:23, 51:8, 51:13, 52:17, 54:17, 58:25, 60:24, 61:25
**case-by-case** [1] - 54:17
**categories** [2] - 10:7, 65:2
**Cathy** [2] - 67:10, 67:21
**CATHY** [1] - 3:11
**caught** [1] - 30:9
**cc's** [4] - 50:11, 50:13, 50:15, 61:6
**CCR** [2] - 3:11, 67:21
**central** [2] - 15:10,

15:12
**certain** [16] - 21:21, 25:24, 28:1, 29:14, 29:16, 29:19, 34:25, 35:1, 35:2, 37:22, 37:23, 39:23, 42:6, 46:9, 54:5
**certainly** [1] - 52:11
**CERTIFICATE** [1] - 67:8
**certification** [3] - 33:21, 43:16, 43:17
**CERTIFIED** [1] - 3:11
**Certified** [2] - 67:10, 67:11
**certify** [6] - 20:10, 32:23, 33:7, 33:18, 44:5, 67:14
**challenging** [1] - 10:21
**chance** [1] - 61:23
**changes** [1] - 64:15
**chart** [2] - 11:6, 65:21
**charts** [4] - 42:7, 54:8, 54:9
**check** [4] - 10:25, 48:21, 66:1, 66:3
**chemical** [1] - 57:18
**CHICAGO** [1] - 2:15
**choice** [1] - 6:16
**choose** [1] - 28:20
**CHRISTOPHER** [1] - 3:8
**cited** [1] - 37:22
**Civil** [1] - 24:14
**CIVIL** [1] - 1:6
**claims** [2] - 23:23, 46:10
**clarification** [1] - 63:10
**clarifications** [1] - 33:12
**clarify** [4] - 20:25, 36:18, 44:11, 57:11
**clarity** [1] - 42:19
**cleanup** [1] - 27:20
**cleanups** [1] - 27:19
**clear** [8] - 34:24, 38:14, 40:1, 40:12, 43:5, 43:22, 46:23, 64:12
**clearly** [5] - 29:11, 47:10, 54:3, 56:25
**CLERK** [2] - 4:7, 8:23
**close** [2] - 17:14, 51:17
**code** [1] - 11:17
**coding** [1] - 16:7, 16:18, 16:23
**cold** [1] - 44:12

**colleague** [2] - 11:21, 11:22
**collect** [5] - 24:8, 31:25, 32:3, 32:21, 61:14
**collected** [1] - 18:25
**collection** [2] - 32:4, 32:19
**collections** [3] - 31:24, 32:15, 32:16
**collectively** [1] - 53:3
**color** [1] - 21:4
**combined** [2] - 25:17, 58:25
**comeback** [1] - 15:18
**comfort** [2] - 16:21, 33:21
**comfortable** [2] - 17:18, 36:1
**comforting** [1] - 63:18
**coming** [4] - 46:21, 46:22, 64:14
**command** [1] - 65:21
**comment** [2] - 25:12, 37:10
**comments** [1] - 65:1
**commission** [2] - 52:20, 53:7
**commit** [2] - 41:25, 62:19
**COMPANY** [2] - 2:9
**company** [3] - 19:20, 56:2, 57:1
**compare** [1] - 9:23
**completely** [1] - 16:16
**comprehensive** [1] - 48:5
**compromise** [1] - 27:24
**COMPUTER** [1] - 3:14
**concept** [1] - 51:22
**concern** [3] - 13:18, 14:16, 24:10
**concerned** [4] - 34:8, 51:23, 59:16, 61:15
**concerns** [1] - 23:21
**concluded** [1] - 67:4
**conduct** [1] - 32:10
**conducted** [1] - 8:20
**conducting** [1] - 47:13
**confer** [3] - 7:20, 45:20, 46:5
**CONFERENCE** [1] - 1:11
**conference** [7] - 11:16, 26:23, 28:13, 37:24, 46:5, 60:7, 63:7
**conferring** [1] - 65:7
**confess** [2] - 39:8,

39:12
**confidence** [1] - 15:6
**confirm** [1] - 56:15
**confirmed** [1] - 56:14
**confused** [1] - 10:7
**conjunction** [1] - 21:16
**connection** [1] - 8:25
**consider** [2] - 20:3, 38:17
**considered** [1] - 39:23
**construed** [1] - 52:1
**consuming** [1] - 58:23
**contact** [1] - 23:4
**contain** [1] - 40:11
**containment** [2] - 52:23, 53:12
**context** [3] - 21:3, 37:23, 38:1
**continue** [5] - 20:13, 22:2, 30:12, 44:4, 48:19
**CONTINUED** [2] - 2:1, 3:1
**continuing** [11] - 31:9, 31:21, 35:16, 35:18, 41:6, 41:14, 41:20, 41:21, 42:19, 42:22, 43:25
**contract** [1] - 49:15
**contractor** [1] - 49:20
**conversation** [3] - 21:1, 21:3, 32:14
**conversations** [1] - 21:20
**cooperative** [2] - 22:2, 26:9
**cooperatively** [2] - 21:5, 21:16
**copied** [1] - 18:25
**copy** [2] - 6:4, 66:8
**copying** [1] - 18:23
**core** [2] - 47:1, 48:3
**COREXIT** [4] - 28:4, 28:6, 42:23, 57:19
**CORPORATION** [2] - 2:10, 2:22
**correct** [13] - 10:2, 10:6, 10:10, 10:18, 11:3, 12:19, 13:15, 14:11, 14:20, 16:13, 22:14, 63:12, 67:14
**COTLAR** [1] - 1:20
**counsel** [2] - 4:10, 65:4
**COUNSEL** [1] - 1:16
**count** [5] - 12:16, 13:2, 13:14, 13:15, 13:16
**couple** [7] - 20:20,

21:10, 36:19, 47:17, 47:19, 57:1, 57:6
**Court** [9] - 38:2, 38:21, 43:1, 45:22, 67:11, 67:12, 67:13, 67:22, 67:23
**court** [1] - 9:8
**COURT** [137] - 1:1, 3:11, 4:4, 4:8, 4:11, 4:15, 4:19, 5:4, 5:6, 5:9, 5:25, 6:6, 6:11, 6:15, 7:3, 7:7, 7:10, 7:13, 7:21, 8:6, 8:8, 8:17, 9:2, 9:7, 9:12, 10:1, 10:8, 10:12, 11:4, 11:13, 11:18, 11:20, 11:22, 12:7, 12:11, 12:14, 12:19, 13:11, 13:14, 13:22, 14:8, 14:12, 14:18, 14:21, 16:4, 17:11, 17:16, 18:3, 18:5, 20:2, 20:15, 20:18, 22:4, 22:25, 23:24, 25:10, 26:19, 27:7, 27:22, 29:7, 29:22, 30:10, 30:15, 31:6, 31:13, 31:18, 32:6, 32:22, 33:1, 33:7, 33:9, 34:20, 35:13, 35:15, 35:24, 36:17, 36:21, 36:25, 37:2, 37:5, 37:14, 37:16, 37:20, 38:16, 39:2, 39:7, 39:10, 41:2, 41:11, 41:18, 42:1, 43:6, 44:1, 44:15, 45:5, 45:13, 45:24, 46:21, 48:7, 48:18, 48:24, 49:2, 49:5, 49:17, 49:22, 49:24, 50:4, 50:18, 51:20, 52:1, 52:11, 53:21, 54:13, 54:25, 55:4, 55:25, 56:10, 57:10, 58:10, 59:1, 59:14, 60:11, 61:1, 62:2, 62:7, 62:22, 63:13, 64:1, 64:5, 64:17, 65:16, 65:22, 65:25, 66:7, 66:14, 66:17, 66:24
**Court's** [3] - 42:20, 46:8, 46:16
**covered** [1] - 31:11
**CPU** [1] - 60:3
**crawlers** [1] - 59:24
**criteria** [3] - 9:22, 15:4, 58:5
**critical** [1] - 40:13,

56:11, 56:13
**CRR** [2] - 3:11, 67:21
**culling** [1] - 60:9
**custodial** [21] - 7:13, 10:4, 10:9, 10:13, 10:15, 12:4, 13:24, 20:5, 20:9, 21:23, 22:17, 38:18, 46:20, 54:14, 54:21, 61:3, 64:9, 64:18, 64:19, 66:13
**custodian** [15] - 11:2, 20:3, 20:7, 40:2, 40:21, 41:9, 48:20, 50:24, 51:12, 59:16, 60:14, 63:5, 63:15
**custodian-by-custodian** [1] - 40:21
**custodians** [80] - 6:20, 6:21, 6:25, 7:2, 7:11, 7:16, 7:19, 8:1, 8:4, 8:9, 8:11, 8:18, 8:22, 9:3, 9:11, 9:14, 9:21, 10:2, 10:9, 10:25, 11:8, 11:9, 12:15, 13:8, 14:6, 16:8, 16:13, 16:25, 17:4, 17:10, 17:12, 17:18, 17:21, 18:7, 18:14, 18:17, 18:20, 18:25, 19:7, 19:21, 19:24, 19:25, 20:9, 20:14, 21:7, 21:8, 21:21, 23:23, 24:10, 24:12, 24:16, 24:22, 25:15, 25:19, 25:24, 26:1, 26:4, 26:8, 29:25, 30:5, 32:7, 39:23, 40:16, 40:19, 40:20, 41:12, 41:13, 41:16, 49:5, 50:11, 50:16, 59:5, 60:19, 61:6, 62:9, 63:2, 66:25
**custodians'** [1] - 31:25
**cut** [3] - 27:15, 29:4, 51:10
**cutoff** [3] - 31:14, 31:15, 35:8

## D

**D.C** [1] - 2:5
**Dallas** [1] - 4:18
**damage** [1] - 38:8
**damages** [1] - 38:4
**dangerous** [1] - 22:8
**darts** [1] - 49:21

**data** [13] - 11:10, 18:20, 19:20, 20:8, 20:12, 21:18, 22:10, 27:12, 27:13, 29:5, 60:13, 61:16
**database** [1] - 56:2
**date** [47] - 5:15, 9:22, 16:13, 23:23, 24:5, 25:7, 27:2, 27:3, 27:10, 27:22, 28:3, 28:20, 29:1, 29:3, 29:10, 29:11, 30:7, 30:18, 30:22, 31:1, 31:7, 31:8, 31:17, 32:7, 32:11, 32:21, 33:23, 34:2, 34:25, 35:1, 35:2, 35:8, 35:20, 36:3, 36:4, 36:9, 36:14, 41:4, 41:7, 45:8, 46:13, 46:19, 62:8, 62:23, 62:25, 63:15, 64:21
**dates** [16] - 11:9, 26:8, 29:20, 29:24, 30:4, 30:24, 31:6, 34:17, 36:2, 36:6, 36:20, 60:12, 61:2, 62:21, 64:7
**days** [6] - 42:8, 42:11, 42:13, 42:14, 53:18, 65:19
**dead** [1] - 38:7
**deadline** [1] - 64:17
**deadlines** [1] - 66:6
**deal** [4] - 6:15, 26:9, 53:3, 53:8
**dealing** [5] - 9:5, 9:9, 45:3, 54:11, 56:17
**debate** [1] - 38:15
**December** [1] - 28:23
**decide** [2] - 41:12, 46:3
**decided** [2] - 63:12, 63:22
**declined** [2] - 16:16, 19:7
**deemed** [1] - 25:24
**DEEPWATER** [2] - 1:4, 34:5
**default** [14] - 30:18, 30:22, 31:5, 31:7, 33:13, 33:14, 34:2, 34:8, 34:17, 35:20, 36:3, 36:4, 41:3, 41:7
**defaults** [1] - 33:9, 34:3, 34:22
**defendants** [1] - 47:25
**defense** [1] - 38:21
**definitely** [2] - 42:3,

61:5
**department** [2] - 56:6, 57:19
**DEPARTMENT** [1] - 2:4
**deponents** [1] - 26:24
**deposition** [5] - 10:20, 10:23, 12:5, 20:10, 31:23
**depositions** [6] - 7:11, 10:15, 10:17, 11:1, 53:7, 64:14
**DEPUTY** [1] - 4:7
**described** [2] - 24:24, 25:21
**describes** [1] - 24:7
**design** [1] - 29:16
**determine** [2] - 22:14
**devices** [2] - 57:16, 60:9
**devoted** [1] - 18:16
**difference** [3] - 9:24, 25:13, 26:2
**different** [14] - 7:25, 12:24, 21:12, 29:24, 31:3, 40:7, 44:23, 46:24, 47:18, 51:22, 52:17, 57:1, 62:14
**difficult** [2] - 44:12, 61:14
**difficulty** [2] - 8:25, 18:13
**diligent** [2] - 15:1, 24:14
**direct** [3] - 22:17, 23:4, 66:8
**disadvantage** [1] - 43:10
**disagree** [4] - 18:14, 19:12, 30:4, 46:9
**disagreement** [2] - 45:18, 64:22
**DISCOVERY** [1] - 1:11
**discovery** [3] - 4:23, 29:9, 53:16
**discuss** [4] - 10:8, 32:12, 40:22, 41:1
**discussed** [1] - 39:20
**discussion** [3] - 15:3, 24:5, 30:8
**discussions** [8] - 13:6, 16:17, 28:14, 29:13, 29:18, 31:17, 40:25, 60:22
**dispersant** [3] - 56:17, 56:18
**dispersants** [4] - 8:14, 42:23, 43:8, 52:25
**dispute** [3] - 5:12, 12:8, 30:6

**disputes** [1] - 46:1
**dissent** [1] - 30:25
**District** [3] - 67:13, 67:23
**DISTRICT** [2] - 1:1, 1:1
**divisions** [1] - 40:7
**document** [3] - 19:10, 47:15
**DOCUMENT** [1] - 1:8
**documents** [56] - 9:18, 18:21, 18:23, 19:4, 20:5, 22:10, 25:19, 25:20, 36:8, 36:10, 36:14, 40:14, 42:20, 43:11, 44:20, 44:21, 46:15, 47:6, 47:10, 47:13, 48:9, 49:7, 49:9, 49:11, 49:13, 49:16, 50:7, 50:16, 50:19, 50:21, 52:15, 54:2, 54:19, 54:24, 55:7, 55:10, 55:11, 55:13, 55:18, 55:20, 56:16, 59:3, 59:7, 59:15, 59:19, 60:16, 60:23, 61:6, 63:12, 63:17, 63:22, 63:25
**DOMENGEAUX** [1] - 1:16
**DON** [1] - 2:17
**done** [18] - 12:16, 15:5, 18:12, 19:12, 20:1, 21:16, 23:19, 24:11, 24:21, 25:25, 29:4, 32:15, 32:16, 32:24, 36:21, 63:16, 66:7, 66:10
**door** [2] - 9:24, 32:5
**double** [2] - 66:1, 66:3
**doubt** [2] - 13:13, 25:22
**Doug** [1] - 57:21
**down** [6] - 30:7, 34:21, 40:9, 42:25, 58:22, 60:3
**drafts** [1] - 65:8
**drilling** [1] - 40:7
**drives** [1] - 24:8
**dropped** [1] - 41:13
**drug** [1] - 20:16
**dump** [1] - 63:17
**duration** [2] - 38:10, 38:24
**duty** [1] - 44:3

## E

**E-DISCOVERY** [1] -

1:11
**e-mail** [3] - 6:7, 15:20, 19:1
**e-mailing** [1] - 51:7
**e-mails** [6] - 15:2, 17:5, 19:2, 23:9, 23:16, 40:3
**early** [5] - 37:7, 40:2, 41:5, 45:21, 46:4
**easier** [1] - 24:20
**EASTERN** [1] - 1:1
**Eastern** [1] - 67:13
**easy** [2] - 6:15, 42:17
**ecological** [4] - 8:13, 8:7, 43:21, 47:3
**educate** [1] - 5:21
**EDWARDS** [1] - 1:16
**effective** [1] - 49:10
**effects** [2] - 28:6, 47:4
**efficient** [1] - 48:6
**effort** [3] - 23:20, 27:19, 40:10
**efforts** [4] - 6:23, 8:14, 17:23, 33:18
**eight** [1] - 38:7
**either** [2] - 13:14, 26:21
**electronic** [2] - 4:23, 17:23
**eliminate** [1] - 24:20
**ELLIS** [1] - 2:13
**encompass** [1] - 36:6
**end** [17] - 6:10, 12:7, 24:5, 24:19, 30:7, 30:18, 31:8, 32:11, 35:20, 36:2, 36:4, 39:17, 41:3, 41:7, 43:15, 45:8, 48:4
**ended** [1] - 30:13
**ends** [1] - 17:5
**energy** [1] - 22:21
**ENERGY** [1] - 3:3
**ENFORCEMENT** [1] - 2:3
**engineering** [1] - 57:18
**entertain** [1] - 25:9
**entire** [3] - 19:19, 44:7, 56:1
**entirely** [1] - 59:11
**entitled** [1] - 67:16
**ENVIRONMENTAL** [1] - 2:3
**environmental** [19] - 6:23, 8:13, 30:12, 30:22, 31:9, 31:15, 33:15, 35:5, 35:9, 38:2, 38:8, 38:13, 39:1, 42:22, 43:7, 43:21, 52:24, 53:12,

65:11
**environmental-related** [1] - 31:15
**Equatorial** [1] - 57:14
**equipment** [1] - 29:15
**ESI** [7] - 4:23, 16:21, 25:23, 39:5, 39:6, 39:8, 63:20
**especially** [1] - 23:25
**ESQUIRE** [13] - 1:17, 1:20, 1:24, 2:4, 2:14, 2:14, 2:17, 2:23, 3:4, 3:7, 3:7, 3:8, 3:8
**etcetera** [9] - 5:15, 22:12, 26:7, 27:21, 38:12, 45:10, 52:21, 53:1
**event** [3] - 8:18, 9:14, 10:2
**events** [2] - 10:13, 27:11
**eventually** [1] - 24:21
**exact** [2] - 17:13, 18:19
**exactly** [4] - 5:6, 25:25, 35:13, 47:8
**example** [7] - 19:15, 20:23, 22:14, 28:4, 32:17, 36:9, 62:17
**examples** [3] - 33:15, 39:14, 47:4
**exceptions** [1] - 38:17
**exchange** [1] - 38:1
**exclude** [1] - 27:12
**excuse** [3] - 8:23, 44:11, 59:22
**exemplar** [1] - 14:24, 45:24
**Exhibit** [4] - 13:22, 37:13, 64:3, 64:13
**exhibits** [1] - 28:9
**exotic** [1] - 60:25
**expensive** [1] - 58:23
**experiencing** [1] - 8:24
**expert** [2] - 25:23, 39:5
**expertise** [1] - 22:8
**experts** [3] - 35:7, 35:9, 38:9
**EXPLORATION** [1] - 2:11
**explosion** [1] - 27:15
**expression** [1] - 38:15
**extend** [1] - 42:12
**extent** [13] - 19:6, 38:8, 38:9, 38:11, 38:13, 38:23, 38:24, 39:1, 45:22, 48:14, 64:13, 64:14, 64:15

**extra** [2] - 21:4, 23:20

## F

**face** [1] - 34:15
**fact** [6] - 10:24, 15:24, 19:20, 37:22, 55:22, 60:8
**fair** [3] - 16:11, 43:16, 62:4
**fairly** [3] - 16:9, 47:7, 57:5
**faith** [4] - 40:10, 42:3, 52:5, 61:21
**familiar** [1] - 65:3
**familiarity** [1] - 23:5
**far** [3] - 8:16, 25:16, 42:24
**fate** [1] - 38:9
**favor** [1] - 66:8
**fear** [2] - 16:22, 37:24
**February** [9] - 13:23, 32:9, 32:15, 32:20, 33:4, 33:6, 38:3, 38:22, 53:9
**FEBRUARY** [2] - 1:7, 4:2
**Federal** [1] - 24:13
**few** [10] - 15:9, 19:17, 19:21, 23:5, 24:10, 27:24, 36:4, 40:6, 52:17, 53:18
**field** [2] - 19:13, 60:13
**figure** [8] - 12:21, 18:20, 18:22, 19:2, 19:4, 40:22, 41:17, 42:4
**figures** [1] - 28:11
**file** [4] - 10:4, 20:5, 23:10, 45:16
**files** [8] - 7:13, 10:9, 10:15, 21:23, 22:18, 22:21, 33:21, 59:16
**fill** [2] - 21:4, 47:5
**filtered** [2] - 50:21, 51:1
**final** [3] - 37:11, 43:23, 46:18
**finalized** [1] - 43:20
**fine** [1] - 33:7
**firm** [3] - 4:18, 16:20, 34:8
**FIRM** [1] - 1:23
**first** [13] - 9:10, 10:12, 14:16, 15:20, 18:7, 21:7, 25:13, 28:10, 33:24, 45:23, 53:7, 65:10
**fisheries** [1] - 38:6

**five** [3] - 14:25, 23:18, 61:17
**focus** [3] - 40:22, 53:11, 65:10
**focused** [2] - 53:9, 65:3
**folders** [1] - 59:25
**folks** [11] - 10:23, 11:2, 12:18, 12:22, 15:5, 17:25, 18:10, 21:9, 33:17, 50:22, 58:6
**follow** [3] - 38:3, 46:14, 62:1
**follow-up** [1] - 38:3
**fool** [1] - 31:6
**FOR** [5] - 1:23, 2:3, 2:8, 2:22, 3:3
**foregoing** [1] - 67:14
**forever** [2] - 35:12, 35:13
**former** [1] - 57:21
**forth** [6] - 7:23, 23:15, 37:13, 43:24, 46:14, 55:24
**forthwith** [1] - 39:19
**forward** [14] - 5:18, 12:9, 18:11, 24:2, 26:10, 26:17, 26:21, 27:20, 27:22, 27:23, 54:1, 54:7, 59:1, 60:24
**four** [9] - 14:25, 15:19, 18:19, 18:24, 20:13, 35:18, 37:22, 47:14, 58:16
**frame** [1] - 20:11
**frankly** [1] - 53:16
**FRIDAY** [2] - 1:7, 4:2
**Friday** [3] - 4:14, 64:18, 66:24
**friendly** [1] - 26:9
**froms** [1] - 50:15
**front** [2] - 24:16, 48:4
**fruit** [1] - 53:8
**full** [3] - 21:3, 36:6, 59:23
**function** [1] - 22:2

## G

**game** [2] - 23:14, 23:15
**gamut** [1] - 36:6
**gaps** [3] - 44:21, 45:4, 47:5
**gather** [1] - 32:8
**gee** [1] - 6:1
**general** [3] - 31:1,

31:2, 34:2
**generally** [2] - 38:7, 39:20
**generate** [2] - 11:10, 17:9
**geographic** [1] - 43:23
**given** [4] - 19:10, 42:13, 50:23, 65:4
**glad** [4] - 14:3, 19:14, 49:17, 53:23
**go-round** [1] - 9:10
**GODWIN** [1] - 3:3
**good-faith** [1] - 40:10
**Grand** [1] - 28:14
**great** [3] - 35:21, 38:12, 64:19
**greater** [1] - 13:20
**group** [2] - 40:14, 44:23
**groups** [2] - 40:6, 40:8
**guess** [4] - 46:10, 48:23, 50:6, 51:17, 57:24, 63:18
**guidance** [3] - 42:21, 43:5, 45:22
**Guinea** [1] - 57:14
**GULF** [1] - 1:5
**Gulf** [1] - 28:7
**gun** [1] - 65:6
**guys** [12] - 4:8, 6:17, 26:20, 34:21, 45:24, 54:13, 59:2, 61:2, 62:22, 64:7, 64:17, 67:1

**H**

**hall** [1] - 21:1
**HALLIBURTON** [1] - 3:3
**Halliburton** [16] - 5:2, 17:9, 19:14, 19:16, 19:18, 19:20, 19:24, 20:19, 21:7, 21:11, 24:15, 25:14, 25:15, 26:3, 33:24, 58:17
**Halliburton's** [2] - 4:23, 21:12
**hand** [2] - 21:23, 22:4
**handle** [1] - 53:18
**hanging** [3] - 16:17, 49:20, 53:8
**happy** [3] - 20:1, 53:22, 62:1
**hard** [5] - 24:8, 29:3, 40:8, 49:14, 49:15
**HAYCRAFT** [2] - 2:17, 5:24, 8:5
**health** [4] - 6:22, 8:13,

42:23, 43:7
**hear** [2] - 39:9, 53:23
**heard** [4] - 30:25, 31:3, 63:19, 63:21
**HEARD** [1] - 1:12
**hearing** [4] - 10:1, 21:2, 37:24, 55:25
**hearings** [1] - 53:6
**hearts** [1] - 49:22
**heavy** [1] - 24:11
**held** [1] - 20:23
**hello** [1] - 37:16
**help** [3] - 8:9, 11:14, 61:3
**helpful** [5] - 13:6, 19:17, 34:17, 47:2, 48:3
**helping** [1] - 54:16
**hereby** [1] - 67:14
**HERMAN** [9] - 1:20, 1:20, 52:9, 52:12, 63:9, 63:18, 64:25, 66:3
**Herman** [5] - 52:11, 52:12, 63:9, 64:24, 64:25
**hi** [2] - 4:8, 11:18
**hit** [4] - 9:18, 25:2, 40:5, 58:8
**hits** [9] - 17:10, 21:18, 21:22, 21:23, 22:11, 22:12, 49:6, 54:21
**hitting** [1] - 22:15
**hold** [1] - 29:23
**HOLDINGS** [1] - 2:12
**home** [3] - 36:23, 36:25, 37:5
**honest** [1] - 5:5
**honestly** [1] - 29:17
**Honor** [78] - 4:9, 4:25, 5:7, 5:22, 6:12, 7:1, 7:5, 7:12, 8:16, 9:4, 9:17, 10:6, 10:18, 10:22, 12:2, 12:4, 12:16, 12:25, 13:12, 14:1, 14:3, 14:11, 14:14, 16:6, 16:14, 17:17, 18:4, 18:14, 20:6, 25:11, 26:12, 26:16, 26:18, 27:5, 30:3, 30:25, 31:10, 31:22, 32:13, 33:10, 33:12, 35:21, 35:22, 36:5, 37:9, 37:15, 37:17, 39:11, 39:22, 40:18, 41:23, 41:24, 42:5, 42:15, 44:10, 45:4, 50:3, 52:10, 53:22, 54:22, 55:1, 55:5, 57:11, 58:11,

58:12, 58:15, 59:11, 59:18, 60:18, 61:4, 61:8, 62:3, 62:20, 63:24, 64:11, 64:16, 66:3, 66:21
**HONORABLE** [1] - 1:12
**hope** [2] - 5:17, 53:25
**hoped** [1] - 37:18
**hopefully** [2] - 53:17, 64:20
**hoping** [1] - 37:20
**HORIZON** [2] - 1:4, 34:5
**host** [1] - 11:15
**hours** [1] - 47:16
**HOUSTON** [1] - 3:5
**human** [1] - 24:20
**hundred** [8] - 18:19, 18:25, 19:21, 20:13, 44:8, 55:11, 55:12, 58:16
**hundreds** [3] - 26:5, 40:20, 60:23
**hypothetical** [1] - 62:7

**I**

**idea** [5] - 17:12, 17:13, 25:9, 30:4, 35:21
**identified** [16] - 7:15, 8:18, 13:7, 19:24, 22:5, 22:6, 26:17, 39:24, 47:20, 57:8, 59:3, 59:7, 59:15, 59:17, 59:19, 62:17
**identify** [9] - 16:7, 16:25, 20:1, 20:18, 40:11, 48:10, 54:9, 55:17, 60:21
**identifying** [9] - 13:4, 18:7, 18:14, 18:16, 19:9, 41:15, 46:19, 60:19, 65:5
**IIT** [3] - 27:17, 33:17, 39:25
**IL** [1] - 2:15
**impact** [4] - 8:13, 30:22, 31:9, 43:7
**impacts** [1] - 43:21
**impaired** [1] - 38:7
**implicated** [1] - 38:23
**implicates** [1] - 39:1
**important** [7] - 7:4, 22:16, 27:10, 40:13, 41:16, 52:15, 57:9
**impose** [1] - 31:7
**IN** [2] - 1:4, 1:5
**inappropriate** [1] -

56:24
**INC** [6] - 2:8, 2:9, 2:10, 2:11, 2:13, 3:3
**incident** [27] - 6:20, 6:25, 7:2, 7:16, 7:17, 8:1, 8:5, 8:6, 9:3, 10:25, 11:2, 11:7, 11:8, 13:9, 13:10, 14:5, 27:11, 31:12, 31:15, 43:3, 52:18, 52:19, 53:4, 53:5, 53:14, 65:10
**incident-related** [1] - 43:3
**incidents** [1] - 34:11
**include** [5] - 51:25, 52:25, 66:12, 66:18
**included** [3] - 14:15, 18:18, 56:17
**including** [1] - 20:11
**incomplete** [1] - 47:23
**incorrect** [2] - 5:3, 8:15
**independently** [1] - 7:16
**indexed** [1] - 58:22
**indexing** [1] - 60:10
**individuals** [1] - 13:10
**inefficient** [2] - 47:7, 47:22
**infeasible** [1] - 59:12
**information** [16] - 4:22, 4:23, 7:16, 15:13, 15:23, 19:5, 22:3, 29:15, 29:21, 32:8, 38:18, 40:11, 48:3, 55:9, 58:1, 61:10
**inherently** [1] - 42:22
**initial** [5] - 8:21, 11:1, 13:20, 15:25, 23:10
**inner** [1] - 55:23
**insistence** [1] - 28:16
**instance** [5] - 24:15, 31:9, 33:15, 41:12, 49:24
**instances** [1] - 29:16
**instead** [1] - 23:14
**institutional** [1] - 55:23
**insufficient** [1] - 18:2
**interest** [1] - 18:10
**interested** [4] - 12:4, 43:2, 48:11, 48:15
**interesting** [1] - 49:12
**internal** [3] - 27:17, 39:25, 40:12
**internally** [1] - 28:5
**INTERNATIONAL** [1] - 2:22

**interpretation** [1] - 43:1
**interrogatories** [2] - 13:1, 54:10
**interrogatory** [7] - 13:2, 13:3, 18:15, 46:6, 54:11, 60:20, 65:4
**interviewing** [1] - 17:24
**intimately** [1] - 63:20
**introduce** [1] - 4:17
**investigation** [8] - 15:5, 31:9, 40:13, 43:3, 52:19, 53:5, 53:15, 65:11
**investigations** [3] - 30:21, 35:16, 41:20
**investigative** [3] - 27:17, 27:18, 40:1
**involve** [2] - 44:24, 45:1
**involved** [7] - 6:20, 12:25, 13:3, 33:17, 48:16, 63:20, 65:14
**involvement** [5] - 32:3, 32:19, 32:23, 33:5, 33:18
**ironic** [1] - 57:3
**IRPINO** [26] - 1:23, 1:24, 8:16, 8:19, 9:4, 9:9, 17:14, 41:23, 42:15, 43:16, 44:9, 45:12, 45:19, 46:4, 46:12, 46:22, 48:17, 48:22, 49:23, 55:1, 55:5, 56:3, 56:15, 66:11, 66:15, 66:19
**Irpino** [6] - 13:9, 26:9, 42:15, 44:24, 55:2, 66:11
**issue** [15] - 17:12, 19:16, 21:6, 30:16, 42:19, 43:13, 46:20, 47:16, 52:14, 53:10, 55:24, 56:17, 56:25, 59:21, 61:3
**issues** [16] - 25:23, 32:10, 35:9, 38:5, 39:3, 42:21, 43:3, 45:22, 47:22, 52:23, 53:12, 63:20, 65:3, 65:11, 65:14
**it'll** [1] - 24:8
**items** [1] - 58:14
**itself** [3] - 6:20, 27:15, 60:5

**J**

**JAMES** [1] - 1:17
**January** [3] - 31:1, 33:24, 33:25
**JEFFERSON** [1] - 1:18
**Jessen** [2] - 28:12, 60:7
**Jim** [1] - 37:17
**job** [1] - 24:20
**join** [2] - 11:16, 11:23
**joint** [1] - 41:19
**JUDGE** [1] - 1:12
**Judge** [3] - 8:24, 11:13, 20:17
**judge** [1] - 4:17
**July** [7] - 28:9, 28:10, 28:17, 28:18, 35:8, 36:9
**jump** [1] - 65:6
**jumped** [1] - 30:16
**JUSTICE** [1] - 2:4

**K**

**KATZ** [1] - 1:20
**KAUL** [1] - 3:8
**keep** [5] - 5:5, 13:14, 37:5, 45:18, 52:16
**kill** [2] - 52:22, 53:12
**kind** [13] - 4:15, 9:20, 10:10, 23:14, 36:12, 40:5, 52:17, 53:8, 53:10, 58:2, 60:25, 65:2
**kinds** [2] - 18:16, 26:6
**KIRKLAND** [1] - 2:13
**Kirkland** [2] - 16:20, 60:5
**kisses** [1] - 49:22
**knowing** [1] - 39:7
**knowledge** [1] - 55:23
**knows** [1] - 59:23
**kudos** [1] - 23:2

**L**

**LA** [6] - 1:18, 1:21, 1:25, 2:19, 2:24, 3:12
**lacking** [1] - 17:22
**LAFAYETTE** [1] - 1:18
**laid** [1] - 64:3
**LAMAR** [1] - 3:4
**Langan** [2] - 24:1, 65:18

**LANGAN** [10] - 2:14, 4:9, 5:22, 6:4, 6:9, 11:21, 65:17, 65:24, 66:2, 66:5
**language** [1] - 51:25
**laptop** [1] - 32:3
**laptops** [5] - 17:4, 24:8, 24:9, 31:25, 61:14
**Large** [6] - 4:25, 14:13, 23:1, 39:11, 49:19, 57:11
**LARGE** [47] - 3:7, 4:25, 5:5, 6:1, 6:12, 7:5, 7:9, 7:12, 7:20, 7:22, 8:3, 8:7, 10:6, 10:10, 11:3, 14:13, 14:20, 14:23, 16:5, 16:15, 17:15, 17:17, 23:1, 23:25, 27:5, 27:9, 27:23, 29:9, 30:2, 30:14, 31:5, 33:10, 33:12, 35:7, 35:14, 35:21, 36:18, 36:22, 37:4, 39:11, 49:21, 50:20, 51:21, 52:3, 57:11, 59:18, 61:8
**large** [17] - 7:22, 10:5, 19:3, 20:9, 26:8, 32:1, 32:13, 36:10, 38:2, 40:21, 41:1, 42:13, 44:13, 44:24, 48:8, 55:18, 62:19
**largely** [1] - 30:6
**larger** [5] - 21:12, 51:3, 58:15, 58:18, 58:24
**LASALLE** [1] - 2:15
**last** [5] - 15:4, 19:7, 47:19, 52:7, 65:12
**latitude** [1] - 39:15
**launching** [1] - 45:15
**LAW** [2] - 1:23, 8:23
**layout** [1] - 65:21
**lead** [1] - 27:14
**leader** [1] - 16:20
**leading** [2] - 52:18, 53:6
**learned** [1] - 23:3
**least** [9] - 15:8, 23:5, 28:24, 38:24, 40:12, 43:22, 48:4, 52:16, 56:25
**leave** [5] - 4:11, 16:23, 22:22, 46:18
**left** [2] - 47:5, 56:22
**legitimate** [1] - 28:7
**lessen** [1] - 29:21
**letter** [4] - 13:23, 24:1,

44:6, 64:4
**letters** [1] - 54:2
**letting** [1] - 24:17
**level** [3] - 19:13, 22:8, 58:9
**LEWIS** [1] - 2:17
**LIAISON** [1] - 1:16
**library** [1] - 36:1
**light** [1] - 53:25
**likely** [4] - 15:13, 16:25, 57:17, 58:1
**likewise** [1] - 22:19
**limit** [4] - 28:8, 36:9, 36:11, 57:2
**LIMITED** [1] - 2:12
**limited** [7] - 28:15, 29:16, 32:9, 44:20, 55:16, 55:18, 63:11
**limits** [3] - 29:3, 36:9, 36:14
**line** [1] - 11:19
**lines** [1] - 37:22
**links** [1] - 40:6
**LISKOW** [1] - 2:17
**list** [49] - 6:19, 7:2, 7:3, 7:18, 9:3, 9:14, 13:8, 13:10, 14:2, 14:6, 15:11, 15:25, 17:9, 18:2, 18:8, 18:9, 21:19, 21:24, 21:25, 22:17, 22:20, 24:22, 25:3, 25:5, 26:3, 26:8, 30:20, 40:19, 44:7, 50:1, 50:9, 50:24, 51:1, 51:12, 54:14, 62:9, 63:6, 63:15, 64:9, 66:17, 66:20, 66:21, 66:22, 66:25
**listed** [1] - 10:24, 11:8, 57:21
**listing** [1] - 48:5
**lists** [3] - 50:10, 50:14, 58:8
**live** [2] - 33:9, 39:12
**locate** [1] - 15:12
**log** [1] - 42:5
**logical** [1] - 28:18
**logistical** [1] - 31:23
**logs** [2] - 42:8, 42:13
**look** [27] - 11:6, 11:7, 15:6, 15:20, 17:10, 18:21, 21:25, 23:25, 24:13, 26:20, 28:9, 29:7, 33:20, 35:8, 36:17, 42:3, 45:7, 45:24, 51:14, 56:3, 57:20, 60:7, 61:18, 66:7, 66:17, 66:22
**looked** [4] - 11:6,

15:1, 23:10, 52:17
**looking** [19] - 6:21, 8:12, 13:22, 14:8, 14:19, 19:2, 21:8, 25:8, 29:25, 44:2, 44:6, 47:15, 49:13, 49:16, 50:23, 55:8, 55:14, 57:20, 58:17
**looks** [1] - 10:3
**loop** [1] - 6:14
**loose** [1] - 39:17
**lost** [1] - 21:15
**Louisiana** [2] - 67:12, 67:13
**LOUISIANA** [2] - 1:1, 1:7
**low** [1] - 53:8
**lunch** [1] - 67:1

**M**

**ma'am** [1] - 39:4
**MACLEOD** [2] - 3:7, 4:21
**MacLeod** [1] - 4:18
**Magistrate** [1] - 11:13
**MAGISTRATE** [1] - 1:12
**mail** [3] - 6:7, 15:20, 19:1
**mailbox** [1] - 51:13
**mailing** [1] - 51:7
**mails** [6] - 15:2, 17:5, 19:2, 23:9, 23:16, 40:3
**major** [2] - 23:21, 48:20
**majority** [3] - 32:7, 34:23, 56:21
**marching** [1] - 39:18
**Marie** [2] - 6:7, 9:2
**marine** [1] - 38:6
**MARK** [1] - 2:14
**Mark** [17] - 5:7, 5:9, 6:2, 7:1, 7:18, 7:20, 12:1, 16:11, 18:6, 25:11, 44:11, 53:22, 59:22, 63:13, 63:16, 64:9, 64:19
**mark** [3] - 40:17, 60:11, 62:2
**material** [1] - 58:22
**matter** [2] - 31:2, 67:17
**MBI** [2] - 52:19, 53:6
**mean** [24] - 10:21, 15:22, 16:9, 16:20, 17:13, 20:7, 23:18, 27:5, 27:15, 27:16,

15:1, 23:10, 52:17
**means** [5] - 17:19, 30:21, 51:19, 51:20, 61:20
**meant** [3] - 14:24, 27:12
**MECHANICAL** [1] - 3:14
**meet** [4] - 4:19, 45:20, 46:5
**meeting** [2] - 46:18, 65:7
**memory** [1] - 9:4
**mentioned** [5] - 33:14, 33:22, 36:10, 43:4, 50:20
**Merit** [1] - 67:11
**merits** [2] - 39:13, 39:15
**metadata** [7] - 50:8, 50:9, 50:10, 50:11, 50:13, 50:19, 61:7
**method** [1] - 16:25
**methodologies** [1] - 48:6
**metrics** [1] - 58:13
**MEXICO** [1] - 1:5
**Michelle** [3] - 4:18, 5:1, 19:17
**MICHELLE** [1] - 3:7
**microphone** [1] - 9:6
**mid** [1] - 37:1
**midnight** [1] - 47:14
**might** [6] - 11:12, 44:2, 44:13, 47:24, 52:25, 58:4
**Mike** [1] - 6:7
**mind** [3] - 28:8, 52:16, 66:9
**minute** [2] - 8:10, 8:17
**minutes** [1] - 19:17
**misrepresented** [1] - 48:1
**miss** [1] - 40:5
**missed** [2] - 48:12, 48:20
**missing** [1] - 24:25
**mistake** [1] - 6:9
**mistaken** [2] - 30:16, 66:4
**modify** [1] - 64:15
**Monday** [3] - 19:7, 60:13, 64:20
**money** [1] - 22:21
**monitor** [1] - 5:4
**months** [10] - 18:22,

23:13, 32:11, 35:18, 37:21, 37:22, 41:22, 42:20, 50:17
**Morel** [1] - 46:10
**morning** [4] - 4:9, 12:15, 19:16, 37:17
**most** [9] - 12:22, 15:10, 15:12, 15:14, 30:12, 30:19, 31:16, 40:13, 57:16
**motions** [1] - 45:16
**move** [11] - 5:18, 12:11, 26:10, 26:17, 26:20, 34:3, 34:6, 46:3, 54:12, 60:24
**moving** [9] - 12:9, 18:11, 34:7, 45:18, 54:1, 54:7, 58:12, 59:1, 64:12
**MR** [158] - 4:9, 4:14, 4:17, 4:22, 4:25, 5:5, 5:7, 5:22, 5:24, 6:1, 6:4, 6:9, 6:12, 6:13, 7:1, 7:5, 7:9, 7:12, 7:20, 7:22, 7:25, 8:3, 8:5, 8:7, 8:16, 8:19, 9:4, 9:9, 9:17, 10:6, 10:10, 10:18, 11:3, 11:5, 11:21, 12:1, 12:10, 12:13, 12:16, 12:20, 13:12, 13:18, 14:1, 14:11, 14:13, 14:20, 14:23, 16:5, 16:12, 16:15, 17:14, 17:15, 17:17, 18:4, 18:6, 20:6, 20:16, 20:19, 22:7, 23:1, 23:25, 25:11, 27:5, 27:9, 27:23, 29:9, 30:2, 30:14, 30:25, 31:5, 31:10, 31:14, 31:22, 32:13, 32:25, 33:3, 33:8, 33:10, 33:11, 33:12, 35:7, 35:14, 35:21, 35:22, 36:5, 36:18, 36:22, 36:24, 37:1, 37:4, 37:9, 37:15, 37:17, 37:21, 38:19, 39:4, 39:8, 39:11, 40:17, 41:8, 41:15, 41:23, 41:24, 42:2, 42:15, 43:16, 44:9, 44:10, 44:17, 45:2, 45:12, 45:19, 46:4, 46:12, 46:22, 48:17, 48:22, 49:1, 49:4, 49:8, 49:18, 49:21, 49:23, 50:3, 50:5, 50:20, 51:21, 52:3, 52:9,

53:22, 54:22, 55:1, 55:5, 56:3, 56:15, 57:11, 58:11, 59:6, 59:18, 60:15, 61:4, 61:8, 62:3, 62:12, 63:18, 63:24, 64:2, 64:11, 64:25, 65:17, 65:24, 66:2, 66:3, 66:5, 66:11, 66:15, 66:19, 66:21
**MS** [1] - 4:21
**multiple** [1] - 6:16
**must** [1] - 57:24

## N

**name** [5] - 11:24, 20:16, 22:15, 51:6, 65:15
**names** [21] - 8:22, 47:9, 47:11, 47:12, 48:11, 48:14, 49:6, 50:1, 50:7, 54:21, 55:15, 55:16, 55:20, 56:7, 57:7, 61:17, 61:21, 61:24, 65:13, 66:12, 66:20
**narrow** [2] - 27:13, 58:6
**narrowing** [1] - 58:5
**nature** [4] - 22:12, 34:14, 38:24, 42:25
**near** [1] - 33:13
**necessarily** [10] - 16:16, 17:2, 21:3, 21:13, 21:14, 23:3, 24:16, 28:2, 38:15, 39:13
**need** [16] - 10:3, 10:8, 24:21, 26:10, 31:18, 35:7, 36:6, 40:22, 41:14, 42:2, 44:19, 46:13, 48:2, 48:14, 55:2, 66:19
**needed** [2] - 5:14, 45:20
**needs** [1] - 36:14
**negotiating** [1] - 36:20
**never** [4] - 28:17, 29:13, 48:1
**NEW** [6] - 1:7, 1:21, 1:25, 2:19, 2:24, 3:12
**new** [8] - 63:5, 63:11, 63:13, 63:17, 64:1, 64:2, 64:9
**next** [12] - 12:11, 12:14, 27:2, 37:7, 41:5, 45:21, 46:4,

46:5, 53:17, 64:18, 66:23, 66:24
**nice** [1] - 4:19
**nights** [2] - 47:14, 47:20
**nine** [1] - 13:20
**NO** [1] - 1:6
**nobody** [1] - 13:16
**NOMELLINI** [63] - 2:14, 5:7, 7:1, 7:25, 9:17, 10:18, 11:5, 12:1, 12:10, 12:13, 12:16, 12:20, 13:12, 13:18, 14:1, 14:11, 16:12, 18:4, 18:6, 20:6, 25:11, 30:25, 31:10, 31:14, 31:22, 32:13, 32:25, 33:8, 33:11, 35:22, 36:5, 36:24, 37:1, 37:9, 37:15, 40:17, 41:8, 41:15, 41:24, 42:2, 44:10, 44:17, 45:2, 49:1, 49:4, 49:8, 49:18, 50:3, 50:5, 53:22, 54:22, 58:11, 59:6, 59:10, 60:15, 61:4, 62:3, 62:12, 63:24, 64:2, 64:11, 66:21
**Nomellini** [12] - 5:7, 7:1, 12:1, 14:14, 18:6, 21:1, 25:11, 39:18, 40:17, 44:11, 53:22, 59:22
**none** [1] - 5:24
**nonevent** [1] - 10:9
**nonincident** [3] - 8:4, 8:8, 12:17
**nonindividual** [1] - 40:19
**nonsearch** [1] - 36:15
**noon** [2] - 64:18, 66:24
**NORTH** [4] - 2:9, 2:10, 2:12, 2:13
**noted** [1] - 45:9
**nothing** [4] - 22:20, 44:4, 51:8, 51:13
**November** [3] - 29:1, 30:19, 31:8, 31:16, 33:14
**Number** [3] - 5:13, 18:15, 18:18, 20:21, 21:11, 47:3, 49:3, 49:25
**number** [32] - 7:25, 9:10, 12:24, 13:13, 13:19, 13:20, 14:5, 14:7, 17:13, 18:19,

20:9, 22:11, 22:15, 25:14, 25:24, 28:24, 29:25, 31:11, 34:1, 34:14, 36:8, 40:18, 43:23, 44:11, 44:18, 44:22, 46:24, 57:24, 59:13, 62:13
**numbered** [1] - 67:16
**numbering** [1] - 44:21
**numbers** [4] - 8:3, 15:23, 44:7, 62:19

## O

**o'clock** [1] - 26:23
**O'KEEFE** [1] - 1:21
**O'Rourke** [2] - 11:16, 11:18
**O'ROURKE** [1] - 2:4
**o'Rourke** [1] - 11:20
**object** [5] - 44:23, 60:18, 61:13, 61:18
**objected** [1] - 29:11
**objection** [1] - 31:4
**objections** [4] - 29:12, 45:3, 45:9, 46:6
**obligation** [5] - 15:12, 16:2, 24:13, 35:2, 41:19
**observe** [1] - 37:19
**obviously** [8] - 10:19, 27:16, 28:1, 30:15, 30:21, 33:17, 34:4, 58:4
**October** [1] - 65:9
**OF** [5] - 1:1, 1:5, 1:11, 2:3, 2:4
**offered** [1] - 27:24
**office** [1] - 57:22
**Official** [2] - 67:12, 67:22
**OFFICIAL** [1] - 3:11
**oil** [7] - 6:22, 8:12, 38:10, 43:24, 47:4, 52:19, 53:7
**OIL** [2] - 1:4, 1:4
**old** [1] - 65:1
**omnibus** [1] - 65:7
**ON** [1] - 1:5
**once** [2] - 38:23, 46:18
**one** [45] - 5:12, 7:6, 11:1, 12:25, 13:4, 16:15, 17:17, 18:15, 18:24, 20:21, 21:11, 21:13, 23:21, 24:24, 25:14, 26:24, 28:9, 28:14, 28:15, 28:23, 30:10, 31:22, 36:18, 36:19, 37:10, 38:17,

39:17, 39:20, 40:8, 41:13, 43:8, 46:18, 47:22, 49:23, 51:7, 51:18, 52:21, 55:10, 56:5, 56:21, 57:12, 57:19, 65:20
**ONE** [2] - 1:24, 2:18
**ones** [5] - 15:9, 28:1, 29:19, 34:24, 40:22
**ongoing** [8] - 22:2, 30:20, 32:10, 33:15, 34:24, 37:12, 43:2, 43:12
**OPA** [1] - 38:23
**operator** [2] - 11:12, 11:13
**OPERATOR** [2] - 11:15, 11:19
**opinion** [1] - 28:13
**opposed** [3] - 16:12, 34:6, 41:9
**opposing** [1] - 4:10
**order** [4] - 12:3, 26:13, 32:4, 36:7
**ORDER** [1] - 4:4
**Order** [1] - 5:13
**ordered** [2] - 56:18, 56:19
**orders** [2] - 39:18, 64:16
**org** [3] - 54:8, 54:9, 65:20
**organizational** [1] - 54:9
**original** [2] - 26:3, 33:25
**originally** [1] - 65:1
**ORLEANS** [6] - 1:7, 1:21, 1:25, 2:19, 2:24, 3:12
**ourselves** [2] - 5:10, 44:25
**outside** [3] - 25:2, 36:9, 36:11
**overall** [1] - 40:20
**overbroad** [1] - 29:12
**overlap** [2] - 11:4, 11:5
**overlaps** [1] - 9:15
**overly** [1] - 30:17
**overstep** [1] - 5:3
**own** [2] - 28:15, 28:21

## P

**p.m** [1] - 67:3
**P.O** [1] - 2:5
**Page** [2] - 24:4, 24:5
**page** [1] - 37:23

**pages** [5] - 13:3, 13:24, 18:16, 54:10, 60:20
**paper** [1] - 33:19
**papers** [1] - 40:4
**Paragraph** [3] - 5:14, 62:4, 62:21
**parameters** [2] - 9:21, 64:3
**pardon** [1] - 8:23
**part** [9] - 9:5, 10:4, 14:16, 20:5, 38:3, 38:14, 52:7, 55:18, 61:11
**participates** [1] - 20:4
**particular** [6] - 29:5, 29:15, 43:4, 47:16, 55:17, 59:16
**particularly** [5] - 47:2, 48:10, 52:3, 53:9, 61:11
**parties** [9] - 6:19, 12:6, 24:25, 25:17, 30:3, 34:9, 53:3, 57:2, 58:25
**partner** [1] - 4:9
**party's** [1] - 52:2
**pass** [1] - 50:24
**past** [2] - 30:9, 30:23
**people** [72] - 9:5, 9:7, 9:10, 10:15, 10:19, 10:20, 12:21, 12:23, 13:4, 13:9, 14:2, 14:9, 14:25, 15:2, 15:7, 15:10, 15:12, 15:14, 15:20, 16:22, 16:23, 18:22, 22:19, 23:9, 23:16, 24:9, 24:25, 25:2, 32:2, 32:18, 33:5, 38:9, 39:16, 41:22, 42:6, 44:2, 47:1, 47:5, 47:6, 47:15, 48:2, 48:3, 48:5, 48:10, 48:16, 49:6, 50:20, 50:22, 52:6, 54:9, 54:10, 54:11, 54:14, 56:5, 56:6, 56:16, 56:20, 57:7, 57:8, 57:22, 58:20, 58:21, 59:12, 60:21, 62:11, 62:12, 62:18, 65:5, 65:13, 66:13, 66:18
**PEPPER** [1] - 3:11
**Pepper** [3] - 67:10, 67:20, 67:21
**percent** [2] - 16:10, 60:3
**performance** [1] - 34:12

**perhaps** [9] - 23:17, 28:3, 29:16, 34:10, 40:10, 42:11, 50:23, 53:13, 58:7
**period** [3] - 35:11, 65:12, 67:2
**person** [8] - 22:16, 25:6, 25:7, 32:17, 32:23, 51:7, 51:11, 56:6
**perspective** [1] - 61:4
**phone** [2] - 8:25, 9:7
**pick** [5] - 18:1, 19:23, 23:16, 29:20, 44:12
**picking** [1] - 15:4
**picture** [3] - 49:19, 52:16, 65:2
**piece** [1] - 29:15
**pieces** [1] - 57:4
**PIGMAN** [1] - 2:22
**place** [3] - 35:4, 35:17, 36:1
**PLACE** [1] - 1:24
**places** [2] - 15:13, 57:20
**plaintiffs** [17] - 12:25, 13:1, 13:7, 13:14, 14:2, 19:11, 20:24, 25:19, 38:21, 38:22, 52:12, 54:8, 57:2, 60:16, 63:9, 64:25
**PLAINTIFFS** [1] - 1:23
**PLAINTIFFS'** [1] - 1:16
**plaintiffs'** [1] - 14:9
**plan** [1] - 54:6
**plane** [3] - 36:23, 36:25, 44:16
**playing** [2] - 19:13, 23:14
**PLC** [1] - 57:14
**plus** [1] - 50:11
**point** [24] - 14:4, 15:3, 15:11, 16:3, 20:3, 20:4, 20:8, 20:11, 20:12, 20:17, 25:23, 26:13, 26:22, 28:23, 38:16, 39:25, 40:1, 43:14, 46:25, 48:8, 53:13, 54:5, 56:9, 56:24
**points** [5] - 39:21, 39:23, 39:24, 40:4, 40:11
**pop** [1] - 55:20
**pops** [1] - 63:5
**portions** [1] - 57:1
**position** [5] - 15:22, 20:22, 22:24, 48:10, 62:5

**possible** [2] - 12:6, 22:14
**post** [4] - 13:9, 13:10, 14:5, 27:19
**post-effort** [1] - 27:19
**post-incident** [3] - 13:9, 13:10, 14:5
**potential** [2] - 24:6, 41:8
**potentially** [2] - 37:25, 61:22
**POYDRAS** [2] - 2:18, 3:12
**practical** [1] - 31:23
**predictive** [3] - 16:6, 16:18, 16:22
**prejudice** [1] - 24:2
**premise** [1] - 56:10
**prepared** [1] - 39:18
**PRESENT** [1] - 3:7
**present** [1] - 29:11
**president** [1] - 57:21
**presumably** [1] - 52:20
**Pretrial** [1] - 5:13
**pretrial** [1] - 26:12
**pretty** [3] - 52:8, 56:25, 57:9
**prevalently** [1] - 28:12
**previously** [1] - 22:6
**print** [1] - 6:7
**prioritize** [2] - 10:19, 10:23
**privilege** [5] - 42:5, 42:8, 45:10, 45:19, 46:10
**problem** [7] - 10:14, 10:21, 31:20, 31:23, 46:25, 62:2, 62:10
**problems** [1] - 56:20
**Procedure** [1] - 24:14
**procedures** [1] - 26:7
**proceed** [2] - 37:12, 64:6
**proceeding** [2] - 10:3, 10:14
**proceedings** [2] - 67:3, 67:16
**PROCEEDINGS** [3] - 1:11, 3:14, 4:1
**process** [15] - 10:21, 12:5, 15:16, 16:3, 23:15, 24:7, 26:10, 26:11, 26:17, 26:18, 58:6, 58:23, 64:15, 66:15, 66:16
**produce** [6] - 9:24, 42:13, 44:20, 49:9, 50:7, 60:16
**produced** [27] - 7:13,

9:19, 19:22, 20:12, 20:14, 25:15, 25:16, 25:19, 25:25, 36:8, 36:10, 40:18, 43:23, 47:6, 54:3, 54:24, 55:8, 55:11, 55:13, 55:19, 58:14, 59:6, 60:8, 60:22, 63:23, 63:25
**PRODUCED** [1] - 3:14
**producing** [2] - 42:20, 50:6
**production** [34] - 9:15, 9:18, 10:4, 10:13, 10:16, 10:19, 12:5, 15:17, 17:11, 18:18, 19:11, 20:10, 32:5, 33:19, 34:25, 35:2, 35:17, 37:12, 39:3, 41:3, 42:7, 42:14, 42:19, 43:9, 43:11, 44:7, 46:6, 47:18, 48:9, 52:2, 54:19, 57:3, 62:25, 63:4
**PRODUCTION** [2] - 2:8, 2:11
**Production** [2] - 49:3, 49:25
**productions** [2] - 40:25, 41:9
**PRODUCTS** [1] - 2:13
**Professional** [1] - 67:11
**program** [1] - 58:5
**promise** [2] - 47:23, 55:5
**proper** [2] - 34:15, 38:1
**properly** [1] - 24:19
**proposal** [3] - 8:21, 10:11, 58:12
**proposals** [2] - 14:15, 16:6
**propose** [5] - 7:2, 17:4, 32:1, 32:6, 39:21
**proposed** [18] - 7:18, 8:1, 8:19, 14:2, 14:19, 14:25, 16:8, 16:15, 17:17, 17:19, 23:12, 25:2, 27:3, 27:9, 28:8, 28:23, 29:14, 47:1
**proposing** [2] - 27:8, 46:4
**protocol** [2] - 46:14, 62:1
**protocols** [1] - 26:7
**provide** [1] - 65:13
**provided** [1] - 13:1

**provisions** [2] - 5:13, 5:14
**PSC** [18] - 7:2, 7:3, 7:19, 14:13, 18:13, 19:4, 19:6, 21:6, 21:17, 23:1, 27:3, 31:1, 37:18, 38:21, 40:19, 42:11, 51:22, 59:5
**PTO** [2] - 46:14, 51:24
**pull** [2] - 23:8, 31:19
**pulled** [1] - 58:22
**purposes** [1] - 59:1
**push** [1] - 22:3
**put** [12] - 5:18, 7:7, 8:17, 12:6, 12:7, 16:1, 26:7, 38:1, 56:19, 57:4, 64:17
**puzzle** [1] - 57:4

## Q

**quest** [1] - 34:14
**questions** [6] - 5:19, 5:23, 6:16, 7:6, 19:6, 29:6
**quickly** [1] - 37:11
**quite** [5] - 10:20, 10:22, 24:20, 36:8, 40:18
**quizzical** [1] - 36:17
**quote** [1] - 52:24

## R

**raise** [2] - 20:20, 42:6
**raised** [2] - 14:3, 19:15
**ran** [3] - 49:2, 49:24, 50:1
**range** [4] - 25:7, 27:2, 27:3, 63:15
**ranges** [9] - 5:15, 9:22, 16:13, 27:10, 46:19, 62:8, 62:24, 62:25, 64:21
**rather** [1] - 45:14
**rationally** [1] - 29:20
**RE** [1] - 1:4
**re** [1] - 32:21
**re-collect** [1] - 32:21
**reach** [7] - 5:14, 5:17, 34:23, 35:3, 37:11, 41:21, 45:6
**reached** [1] - 5:17
**read** [3] - 8:8, 8:10, 8:11
**reading** [1] - 55:6

**real** [4] - 10:14, 40:8, 52:9, 57:8
**really** [23] - 5:25, 16:21, 17:7, 23:17, 23:19, 23:20, 25:5, 26:10, 26:16, 29:3, 30:7, 35:22, 40:15, 45:24, 48:23, 49:10, 50:5, 51:17, 52:5, 54:11, 56:15, 57:23, 61:14
**Realtime** [1] - 67:10
**REALTIME** [1] - 3:11
**reason** [13] - 13:12, 13:18, 23:22, 27:25, 28:7, 28:18, 28:19, 33:20, 35:10, 35:14, 44:3, 66:1
**reasonable** [5] - 15:14, 53:15, 57:5, 62:13, 62:16
**reasons** [1] - 34:1
**recipients** [1] - 23:9
**recognitions** [1] - 53:25
**recollection** [1] - 65:15
**record** [4] - 34:18, 51:18, 61:9, 67:16
**RECORDED** [1] - 3:14
**reduces** [1] - 24:24
**reference** [1] - 40:3
**referring** [2] - 12:17, 52:25
**regard** [1] - 5:12
**regarding** [6] - 5:15, 7:16, 46:14, 47:3, 59:23
**Registered** [2] - 67:10, 67:11
**regular** [2] - 38:18, 39:2
**rejected** [1] - 28:24
**relate** [3] - 7:17, 8:12, 16:8
**related** [7] - 6:22, 8:18, 22:11, 31:12, 31:15, 43:3
**RELATES** [1] - 1:8
**relative** [5] - 5:19, 10:2, 45:6, 46:9, 54:16
**release** [1] - 42:24
**relevant** [24] - 12:22, 15:13, 18:10, 18:21, 19:3, 19:5, 19:25, 25:24, 27:12, 27:13, 29:5, 33:19, 38:25, 40:11, 47:16, 56:5, 59:3, 59:7, 59:15,

59:19, 61:21, 61:22, 63:12, 63:22
**reliable** [1] - 24:18
**reluctant** [2] - 52:13, 62:18
**rely** [1] - 44:19
**remainder** [1] - 9:25
**remember** [1] - 35:5
**repeated** [1] - 21:2
**report** [5] - 27:18, 51:11, 52:20, 54:21
**REPORTER** [4] - 3:11, 3:11, 9:6, 11:24
**reporter** [1] - 9:8
**Reporter** [6] - 67:10, 67:11, 67:12, 67:22
**REPORTER'S** [1] - 67:8
**reports** [7] - 22:9, 22:11, 22:13, 23:8, 51:16, 60:1, 60:4
**represent** [2] - 5:1, 39:15
**represented** [3] - 46:11, 46:12, 46:13
**request** [34] - 10:11, 14:9, 22:15, 26:15, 27:9, 29:4, 29:20, 30:3, 31:2, 34:4, 34:14, 35:23, 36:20, 37:6, 41:6, 41:9, 41:11, 41:14, 42:2, 42:3, 46:6, 52:2, 55:18, 60:18, 62:5, 62:24
**Request** [3] - 47:3, 49:2, 49:24
**request-by-request** [6] - 10:11, 27:9, 29:4, 31:2, 36:20, 37:6
**requests** [36] - 7:24, 12:17, 12:22, 14:25, 15:17, 17:11, 17:16, 29:9, 29:24, 30:1, 30:11, 31:15, 31:19, 34:16, 34:22, 35:16, 36:2, 36:15, 41:5, 41:6, 41:16, 41:21, 43:9, 43:11, 44:7, 44:18, 44:22, 45:6, 45:7, 46:20, 47:18, 53:16, 54:18, 54:20, 65:8
**reschedule** [1] - 45:20
**reserve** [1] - 61:12
**resolve** [1] - 12:9
**respect** [6] - 12:22, 18:7, 19:14, 53:6, 53:14, 58:13

**respectfully** [8] - 18:14, 19:12, 26:16, 32:18, 54:8, 58:11, 60:24, 62:3
**respects** [1] - 25:14
**respond** [1] - 28:11
**responding** [2] - 46:7, 53:17
**response** [2] - 27:20, 65:3
**responses** [3] - 29:10, 65:5, 65:9
**responsive** [1] - 55:17
**result** [1] - 60:16
**results** [1] - 24:17
**review** [5] - 9:24, 11:10, 24:21, 51:2, 58:7
**reviewing** [1] - 50:23
**RFP's** [1] - 14:23
**rid** [1] - 51:15
**ride** [2] - 37:2, 44:13
**RIG** [1] - 1:4
**rights** [2] - 61:12, 61:13
**ring** [1] - 38:13
**rise** [1] - 4:7
**risk** [3] - 24:25, 28:15, 28:21
**RMR** [2] - 3:11, 67:21
**robust** [3] - 8:21, 9:3, 9:14
**role** [1] - 4:19
**roles** [1] - 19:9
**roll** [1] - 27:1
**rolling** [4] - 5:10, 7:14, 10:16, 54:15
**RONQUILLO** [1] - 3:3
**ROOM** [1] - 3:12
**round** [2] - 9:10, 53:7
**ROY** [7] - 1:16, 1:17, 37:17, 37:21, 38:19, 39:4, 39:8
**Roy** [5] - 37:16, 37:17, 39:13, 52:13, 52:24
**rule** [2] - 37:8, 64:22
**Rules** [1] - 24:13
**run** [39] - 9:22, 11:9, 16:18, 17:1, 17:2, 17:3, 17:19, 19:19, 19:21, 21:7, 24:6, 26:3, 27:25, 28:1, 50:18, 51:5, 54:21, 55:14, 56:1, 56:12, 58:3, 58:13, 58:21, 59:2, 59:20, 60:11, 61:2, 61:20, 61:22, 62:5, 62:7, 62:10, 62:11, 63:2, 63:3, 63:16, 64:10

**running** [12] - 22:9, 25:18, 58:7, 58:13, 59:4, 59:23, 60:10, 63:10, 63:13, 63:24, 64:1, 64:2
**runs** [2] - 21:18, 60:2
**RYAN** [1] - 3:8

# S

**s/Cathy** [1] - 67:20
**safety** [1] - 42:23
**SALLY** [1] - 1:12
**sample** [1] - 59:25
**samples** [1] - 53:1
**sampling** [1] - 16:19
**satisfied** [1] - 51:14
**scheduled** [4] - 10:16, 10:17, 10:20, 45:20
**scheduling** [2] - 26:24, 35:19
**scope** [1] - 42:24
**scores** [1] - 51:5
**seal** [2] - 6:23, 8:14
**search** [44] - 5:15, 8:20, 9:19, 9:21, 9:22, 11:8, 11:9, 15:1, 16:8, 16:10, 19:12, 19:15, 19:19, 22:17, 24:14, 26:8, 27:5, 29:13, 32:10, 36:6, 36:12, 41:14, 44:19, 45:8, 48:25, 49:2, 49:3, 49:8, 49:25, 50:18, 51:5, 51:6, 54:16, 59:20, 59:23, 60:9, 60:10, 60:11, 63:2, 63:14, 63:25, 64:1, 64:2, 64:3
**searched** [1] - 40:2
**searches** [21] - 26:15, 34:11, 47:13, 52:2, 55:14, 56:1, 58:2, 58:19, 58:21, 59:2, 59:4, 60:17, 61:2, 62:5, 62:8, 63:11, 63:13, 63:17, 63:21, 66:13
**searching** [2] - 21:23, 22:21
**second** [2] - 38:19, 61:11
**secondarily** [1] - 21:15
**secondly** [1] - 25:21
**SECTION** [1] - 2:3
**section** [1] - 49:20
**security** [1] - 11:17

**Sedona** [2] - 28:13, 60:7
**see** [22] - 5:11, 6:17, 7:10, 10:11, 17:4, 18:1, 25:1, 34:22, 35:3, 41:4, 41:5, 41:21, 42:11, 43:10, 43:20, 44:21, 45:4, 45:11, 45:23, 48:15, 56:20, 59:4
**seeing** [2] - 6:24, 49:11
**seem** [4] - 42:21, 43:24, 48:7, 49:6
**select** [1] - 38:22
**selected** [4] - 12:15, 12:20, 14:16, 15:10
**selection** [1] - 38:20
**selective** [1] - 29:19
**semicolon** [1] - 52:8
**send** [3] - 15:21, 51:2, 66:8
**sense** [3] - 30:8, 34:6, 40:15
**September** [2] - 27:19, 28:25
**sequestered** [1] - 46:15
**seriously** [1] - 66:6
**served** [4] - 13:1, 18:15, 65:9, 65:24
**server** [3] - 23:10, 57:22, 59:21
**servers** [8] - 17:3, 25:8, 57:16, 57:24, 57:25, 58:19, 58:21, 59:11
**SERVICES** [1] - 3:3
**set** [7] - 32:7, 35:25, 36:2, 37:12, 46:14, 51:1, 62:25
**several** [1] - 27:10
**shall** [1] - 29:10
**share** [14] - 20:3, 20:4, 20:8, 20:11, 20:12, 39:21, 39:22, 39:24, 39:25, 40:1, 40:4, 40:11, 58:8, 59:5
**SHELL** [1] - 2:18
**ship** [1] - 45:15
**shocked** [1] - 60:5
**short** [2] - 35:11, 67:1
**show** [9] - 8:2, 22:20, 48:11, 49:5, 49:6, 51:11, 54:21, 60:13, 61:21
**showing** [1] - 61:12
**shows** [3] - 15:24, 51:12, 62:8
**SHUSHAN** [1] - 1:12

**Shushan** [4] - 4:17, 8:24, 11:13, 20:17
**shut** [1] - 60:2
**side** [4] - 25:1, 25:4, 26:21, 26:24
**sides** [1] - 36:16
**significant** [4] - 9:11, 22:15, 32:2, 33:5
**similar** [3] - 19:22, 19:25, 34:11
**simply** [1] - 42:12
**single** [2] - 47:17, 65:15
**sit** [2] - 34:21, 42:25
**site** [1] - 20:4
**sites** [4] - 20:3, 20:8, 20:11, 20:12
**situation** [1] - 26:14
**six** [8] - 32:11, 37:21, 47:4, 56:7, 56:24, 62:8, 62:11, 62:12
**size** [2] - 55:11, 55:12
**skeptical** [2] - 50:3, 50:5
**sleeve** [1] - 5:2
**slightly** [1] - 51:22
**slowly** [1] - 53:11
**small** [3] - 18:1, 30:20, 39:12
**smaller** [1] - 59:13
**smoothly** [1] - 12:5
**softball** [1] - 51:9
**sometimes** [1] - 37:21
**somewhere** [1] - 45:11
**sooner** [6] - 38:12, 45:13, 64:7, 64:8, 64:9
**sophisticated** [1] - 24:17
**sorry** [3] - 6:9, 20:19, 47:17
**sort** [4] - 5:12, 5:16, 20:21, 30:18
**sound** [2] - 41:22, 49:12
**sounds** [6] - 6:11, 12:10, 19:21, 26:2, 34:24, 62:13
**source** [1] - 13:5
**space** [1] - 60:3
**SPEAKER** [6] - 6:3, 11:11, 45:1, 46:11, 59:8, 59:9
**speaking** [1] - 12:1
**specific** [12] - 13:4, 24:5, 28:16, 30:11, 31:16, 35:23, 36:13, 36:14, 36:15, 41:9, 41:10, 41:11

**specifically** [2] - 53:5, 65:9
**specifics** [2] - 20:1, 62:15
**spectator** [1] - 4:21
**spend** [3] - 21:22, 22:21, 30:2
**spent** [2] - 47:14, 47:17
**spiders** [1] - 59:24
**spill** [6] - 8:13, 38:10, 38:11, 38:24, 52:19, 53:7
**SPILL** [1] - 1:4
**spill/environmental/
capping** [1] - 65:14
**spilled** [2] - 6:22, 47:4
**spousal** [1] - 46:9
**spreadsheet** [2] - 8:2, 10:11
**spreadsheets** [1] - 7:22
**SQUARE** [1] - 2:18
**stage** [1] - 52:23
**staged** [1] - 65:9
**stages** [2] - 52:17, 53:19
**stand** [2] - 7:3, 37:25
**standard** [1] - 52:4
**standing** [2] - 13:20, 65:16
**standpoint** [2] - 43:22, 52:16
**start** [9] - 5:11, 6:24, 18:2, 22:7, 22:9, 26:23, 45:8, 56:7, 63:3
**started** [4] - 9:15, 9:17, 25:23, 64:13
**starting** [3] - 56:8, 56:24, 58:24
**State** [1] - 67:12
**state** [2] - 11:24, 22:24
**STATES** [3] - 1:1, 1:12, 2:3
**States** [2] - 67:13, 67:23
**static** [2] - 21:19, 24:22
**statistical** [7] - 16:19, 16:23, 17:9, 25:5, 49:12, 58:2, 59:24
**statistics** [3] - 22:11, 23:17, 49:11
**status** [2] - 37:24, 46:5
**STATUS** [1] - 1:11
**STENOGRAPHY** [1] - 3:14
**step** [3] - 45:23, 49:23,

66:23
**STEPHEN** [1] - 1:20
**steps** [1] - 12:25
**Steve** [4] - 52:12, 63:9, 64:25, 66:8
**STEVEN** [1] - 2:4
**stick** [1] - 31:7
**sticking** [1] - 16:3
**still** [8] - 28:5, 32:10, 34:24, 44:1, 46:15, 53:16, 53:24, 54:1
**STONE** [1] - 2:22
**stop** [2] - 14:18
**stopped** [1] - 44:3
**storage** [1] - 57:16
**stored** [1] - 40:14
**straight** [1] - 29:23
**STREET** [5] - 1:18, 1:25, 2:18, 2:23, 3:12
**strongly** [1] - 60:18
**struck** [1] - 52:7
**stuck** [1] - 23:22
**study** [1] - 23:11
**stuff** [3] - 33:19, 35:6, 60:1
**subject** [2] - 26:17, 31:16
**submission** [1] - 46:15
**submissions** [1] - 5:20
**submit** [1] - 32:18
**submitted** [1] - 18:12
**subsequent** [1] - 52:2
**subset** [1] - 50:22
**substances** [1] - 43:8
**substantially** [1] - 30:23
**substantive** [1] - 22:12
**substitute** [1] - 49:12
**subuniverses** [1] - 53:19
**suggest** [2] - 45:25, 54:19
**suggested** [1] - 39:22
**suggesting** [1] - 35:15
**suggestions** [1] - 12:4
**SUITE** [3] - 1:25, 2:19, 3:4
**summarize** [1] - 31:11
**summer** [1] - 32:16
**supplement** [4] - 35:3, 54:14, 56:7, 64:8
**supplemental** [7] - 40:24, 40:25, 41:3, 41:8, 63:1, 63:6, 66:25

**supplementation** [1] - 35:4
**supply** [1] - 56:20
**supposed** [2] - 6:13, 65:13
**suspected** [1] - 19:18
**Suttle** [1] - 57:21
**sweep** [1] - 33:25
**Switzerland** [1] - 20:21

## T

**talks** [3] - 57:13, 60:8, 60:9
**targeted** [2] - 17:3, 17:4
**team** [7] - 27:18, 40:1, 40:13, 43:3, 51:2, 51:9, 62:20
**technical** [3] - 8:25, 22:8, 28:19
**technically** [1] - 6:13
**techniques** [1] - 16:7
**technologically** [1] - 22:23
**technology** [1] - 23:19
**TELEPHONE** [3] - 11:11, 11:15, 11:19
**temporally** [1] - 29:12
**tend** [3] - 13:19, 30:11, 54:13
**term** [7] - 28:15, 29:13, 33:13, 36:6, 36:12, 36:15, 39:1
**terms** [34] - 5:15, 8:21, 9:19, 9:22, 11:8, 11:9, 16:8, 16:10, 16:12, 18:13, 19:19, 20:9, 20:10, 25:2, 26:8, 27:6, 40:7, 44:19, 48:25, 49:3, 49:9, 49:25, 51:5, 51:6, 52:14, 57:15, 58:15, 59:20, 60:11, 63:2, 63:10, 63:14, 63:25
**test** [2] - 21:18, 38:22
**testing** [2] - 26:7, 27:15
**tests** [4] - 24:18, 25:18, 25:21, 26:3
**TEXAS** [1] - 3:5
**thankfully** [1] - 44:24
**THE** [143] - 1:4, 1:5, 1:12, 1:23, 2:3, 4:7, 4:8, 4:11, 4:15, 4:19, 5:4, 5:6, 5:9, 5:25, 6:6, 6:11, 6:15, 7:3,

7:7, 7:10, 7:13, 7:21, 8:6, 8:8, 8:17, 8:23, 9:2, 9:6, 9:7, 9:12, 10:1, 10:8, 10:12, 11:4, 11:13, 11:18, 11:20, 11:22, 11:24, 12:7, 12:11, 12:14, 12:19, 13:11, 13:14, 13:22, 14:8, 14:12, 14:18, 14:21, 16:4, 17:11, 17:16, 18:3, 18:5, 20:2, 20:15, 20:18, 22:4, 22:25, 23:24, 25:10, 26:19, 27:7, 27:22, 29:7, 29:22, 30:10, 30:15, 31:6, 31:13, 31:18, 32:6, 32:22, 33:1, 33:7, 33:9, 34:20, 35:13, 35:15, 35:24, 36:17, 36:21, 36:25, 37:2, 37:5, 37:14, 37:16, 37:20, 38:16, 39:2, 39:7, 39:10, 41:2, 41:11, 41:18, 42:1, 43:6, 44:1, 44:15, 45:5, 45:13, 45:24, 46:21, 48:7, 48:18, 48:24, 49:2, 49:5, 49:17, 49:22, 49:24, 50:4, 50:18, 51:20, 52:1, 52:11, 53:21, 54:13, 54:25, 55:4, 55:25, 56:10, 57:10, 58:10, 59:1, 59:14, 60:11, 61:1, 62:2, 62:7, 62:22, 63:13, 64:1, 64:5, 64:17, 65:16, 65:22, 65:25, 66:7, 66:14, 66:17, 66:24
**themselves** [5] - 15:24, 16:11, 16:12, 27:11, 39:23
**they've** [7] - 14:21, 16:1, 47:25, 48:19, 56:12, 62:17, 63:12
**thinking** [2] - 41:2, 43:6
**THIS** [1] - 1:8
**thousand** [2] - 55:12
**thousands** [2] - 36:10, 50:13, 60:23
**three** [16] - 13:24, 14:23, 14:25, 15:2, 15:7, 15:15, 15:19, 18:19, 18:24, 23:13, 25:16, 35:18, 41:22, 42:19, 43:10, 58:24
**throughout** [1] - 56:25

throw [2] - 17:8, 32:8
tied [2] - 27:10, 42:8
titles [1] - 19:9
TO [2] - 1:8, 4:4
to/froms [2] - 50:11, 50:13
today [15] - 4:24, 5:17, 9:13, 20:21, 23:19, 27:25, 36:21, 37:25, 38:15, 45:20, 47:21, 51:20, 60:12, 61:19, 63:14
together [6] - 9:21, 17:10, 30:3, 45:25, 54:4, 57:4
tools [6] - 16:23, 17:24, 24:23, 51:4, 59:24, 60:6
topic [4] - 4:23, 26:13, 28:16, 42:5
topics [1] - 13:4
tos [1] - 50:15
total [1] - 14:7
touch [1] - 39:14
toward [1] - 12:7
track [3] - 9:12, 9:13, 40:9
TRANSCRIPT [2] - 1:11, 3:14
transcript [1] - 67:15
transcripts [1] - 37:21
Transocean [2] - 34:13, 52:20
transport [1] - 38:10
trap [1] - 24:6
treated [1] - 46:16
trial [4] - 38:3, 38:4, 38:23, 53:9
tried [1] - 29:20
true [4] - 21:6, 23:3, 65:19, 67:14
trust [1] - 58:9
try [6] - 15:19, 16:7, 18:1, 22:2, 40:8, 46:23
trying [13] - 7:7, 7:10, 11:16, 23:16, 27:24, 33:1, 45:16, 45:25, 53:8, 53:18, 55:22, 56:23, 57:3
Tuesday [1] - 64:21
tug [1] - 5:2
two [11] - 10:7, 15:1, 18:18, 23:13, 24:8, 24:23, 24:25, 43:3, 47:4, 47:17, 47:22
type [5] - 38:23, 52:4, 58:5, 60:9
types [3] - 22:11, 51:15, 60:6

## U

U.S [1] - 2:4
uncertainty [1] - 23:20
under [1] - 24:13
Underhill's [2] - 11:21, 11:22
understood [3] - 12:3, 37:9, 59:18
underway [1] - 63:4
unduly [1] - 62:13
unfortunately [1] - 39:12
UNIDENTIFIED [6] - 6:3, 11:11, 45:1, 46:11, 59:8, 59:9
unified [1] - 65:21
UNITED [3] - 1:1, 1:12, 2:3
United [2] - 67:13, 67:23
universe [30] - 6:24, 7:10, 8:18, 11:10, 13:25, 19:19, 21:8, 21:12, 44:20, 51:3, 54:23, 55:7, 55:10, 55:13, 55:16, 57:13, 57:15, 57:25, 58:15, 58:16, 58:17, 58:18, 58:24, 59:2, 59:6, 59:11, 59:15, 59:17, 60:15, 63:11
unobjectionable [1] - 34:15
unquote [1] - 52:24
up [36] - 15:6, 18:5, 20:2, 20:23, 22:20, 24:10, 24:16, 27:14, 27:25, 29:23, 30:9, 30:18, 30:19, 34:3, 34:6, 35:25, 38:3, 44:12, 45:11, 48:11, 48:24, 50:15, 51:12, 52:13, 52:18, 53:6, 55:20, 56:7, 59:4, 61:17, 63:5, 63:7, 64:14, 65:1, 65:16, 66:14
update [5] - 32:11, 38:18, 39:2, 41:20, 44:4
updating [1] - 44:4
useful [1] - 30:8

## V

various [4] - 13:4, 18:16, 40:3, 59:25
vast [3] - 32:7, 34:23, 56:21
vendor [2] - 23:4, 56:20
vendors [1] - 60:4
verify [1] - 58:9
versus [1] - 26:4
VIA [1] - 11:11

## W

wait [3] - 8:10, 11:12, 26:24
waiting [1] - 26:21
waiver [3] - 26:14, 52:1, 62:5
WALTHER [1] - 2:22
wants [1] - 10:1
WASHINGTON [1] - 2:5
wealth [1] - 19:5
week [12] - 4:13, 4:16, 15:4, 24:8, 37:7, 41:5, 45:21, 46:4, 46:5, 54:15, 65:12, 66:24
whatnot [1] - 59:25
whereas [2] - 24:12, 56:11
WHEREUPON [1] - 67:3
whole [4] - 15:21, 55:19, 65:20, 65:21
widespread [1] - 56:25
wildlife [1] - 28:7
WILLIAM [1] - 3:7
William [5] - 4:25, 14:13, 23:1, 39:11, 57:11
willing [3] - 24:18, 42:16, 46:23
witnesses [2] - 9:16, 13:24
WITTMANN [1] - 2:22
word [2] - 23:22, 51:19
workings [1] - 55:24
works [3] - 21:13, 21:14, 49:10
world [1] - 39:12
worldwide [1] - 57:24
worry [2] - 10:3, 13:16
WRIGHT [1] - 1:16
written [1] - 29:9

## Y

year [2] - 35:6, 35:11

years [8] - 23:18, 27:4, 29:7, 29:14, 29:17, 29:18, 38:7
yesterday [1] - 6:6
York [3] - 20:19, 23:7, 25:22
YORK [8] - 3:4, 4:14, 4:17, 4:22, 6:13, 20:16, 20:19, 22:7
yourself [1] - 20:18