UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG | § | MDL NO. 2179 |
| "DEEPWATER HORIZON" IN THE GULF OF | § | |
| MEXICO, ON APRIL 20, 2010 | § | SECTION: J |
| | § | |
| THIS PLEADING APPLIES TO: | § | |
| ALL CASES IN PLEADING BUNDLE SECTION | § | |
| III.B(1) ["B1 BUNDLE"] | § | JUDGE BARBIER |
| | § | |
| THIS PLEADING APPLIES TO: | § | |
| 2:10-CV-02771 | § | MAGISTRATE JUDGE SHUSHAN |

**TRANSOCEAN'S RULE 12(b)(6)
MOTION TO DISMISS THE FIRST AMENDED B1 MASTER CLAIM
IN LIMITATION AND FIRST AMENDED MASTER COMPLAINT**

TO THE HONORABLE CARL J. BARBIER, United States District Judge:

Petitioners in Limitation and Defendants Transocean Offshore Deepwater Drilling, Inc., Transocean Holdings LLC, Transocean Deepwater, Inc. and Triton Asset Leasing GmbH (collectively "Transocean") respectfully submit Transocean's Rule 12(b)(6) Motion to Dismiss the First Amended B1 Master Claim in Limitation and the First Amended B1 Master Complaint.

**I.**

**STATEMENT OF THE NATURE AND
STAGE OF THE PROCEEDINGS**

By the terms of Pre-Trial Order No. 11 [Case Management Order No. 1], this proceeding was separated into Pleading Bundles for the purpose of the filing of complaints, answers, and any Rule 12 motions.  As to claims by "Private Individuals and Business Loss Claims," this Court directed that the Pleading Bundles would be pled pursuant to Master Complaints for four categories, including the B1 claims for "Non-Governmental Economic Loss and Property Damages."  The B1 Pleading Bundle was to include, *inter alia*, (i) *Robins Dry Dock* claims; (ii) OPA claims; and (iii) state law claims.  **Dkt. No. 569 at pp. 2-3.**

On December 15, 2010, a Master Claim in Limitation [No. 10-2771] and Master Complaint, Cross-Claim, and Third-Party Complaint for Private Economic Losses in Accordance with PTO No. 11 [CMO No. 1] Section III(B1) ["B1 Bundle"] was filed.  **Dkt. No. 879.**

On January 12, 2011, this Court entered its Pre-Trial Order No. 25 clarifying the Master Complaints, including the "B1" Bundle Master Complaint.  In the Court's Pre-Trial Order No. 25, it was provided that:

> For the procedural and administrative purpose of answering or otherwise responding to the complaints in Pleading Bundles B1, B3 and D1, (and subject to the provisions of Paragraph 8), as to any Defendant named in one or more Master Complaint(s), the allegations, claims, theories of recovery and/or prayers for relief contained within the pre-existing petition or complaint are deemed to be amended, restated, and superseded by the allegations, claims, theories of recovery, and/or prayers for relief in the respective Master Complaint(s) in which the Defendant is named that apply to the pre-existing petition or complaint.

*In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179, **Dkt. No. 247 at 2**.

On February 9, 2011, a First Amended B1 Master Claim in Limitation [No. 10-2771] and Master Complaint, Cross-Claim and Third-Party Complaint for Private Economic Losses in Accordance with PTO No. 11 [CMO No. 1] Section III (B1) ["B1 Bundle"] was filed. **Dkt. No. 1128.**

As a result of the Court's Pre-Trial Order No. 25 clarifying the Master Complaints, Transocean directs its Rule 12(b)(6) motion to the specific allegations of the First Amended B1 Master Claim in Limitation and the First Amended B1 Master Complaint, in lieu of responding to the hundreds of previously filed Petitions, Complaints and Short-form Joinders seeking the recovery of "Non-Governmental Economic Loss and Property Damages."[1]

## II.

## THE FIRST AMENDED B1 MASTER CLAIM AND COMPLAINT

The First Amended B1 Master Claim in Limitation alleges six claims against Transocean under federal and state law:

(1) Negligence;

(2) Gross negligence and willful misconduct;

(3) Nuisance;

(4) Trespass;

(5) Punitive damages; and

(6) Declaratory relief.

---

[1]   For purposes of this Motion and Transocean's Brief, the Claimants in Limitation and the Plaintiffs will be referred to as "Plaintiffs," except where separate references are required.

The First Amended B1 Master Complaint alleges six "Claims for Relief" under federal and state law, five of which are asserted against Transocean.  These five are:

      (1) General Maritime Law (negligence, gross negligence and willful misconduct);

      (2) OPA;

      (3) State Law (nuisance, trespass, and fraudulent concealment);

      (4) Punitive Damages Under All Claims; and

      (5) Declaratory Relief.

As set forth in more detail by Transocean's Brief in Support of its Rule 12(b)(6) Motion to Dismiss, Transocean is entitled to a dismissal of the following Plaintiffs' claims asserted by the First Amended B1 Master Claim in Limitation and the First Amended B1 Master Complaint:

(1)      All OPA claims as defined in 33 U.S.C. § 2702(b)(2) where the Plaintiffs have failed to present their claims pursuant to 33 U.S.C. § 2713;

(2)      All general maritime law claims to the extent preempted or displaced by OPA;

(3)      All state common law claims based on negligence, gross negligence and willful misconduct, nuisance, trespass, and fraudulent concealment;

(4)      All non-OPA economic loss claims where the Plaintiffs/Claimants have not sustained physical damage to a proprietary interest under *Robins Dry Dock* and/or the equivalent state economic loss rule;

(5)      All claims under Florida's mini-OPA statute;

(6)      All claims for punitive damages; and

(7)      All claims for declaratory relief; and

(8)      All claims by Moratorium Plaintiffs.[2]

---

[2]    The only exception to claim dismissal will be those non-Moratorium OPA claims asserted against Transocean for which proper presentment has been made in accordance with 33 U.S.C. § 2713.

## III.

## RULE 12(b)(6) STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b) (6). To survive a motion to dismiss, a plaintiff must plead facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "shown"—"that the pleader is entitled to relief." *Id.* at 1950 (citing FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court further explained that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. While legal conclusions can provide the framework of a complaint, "they must be supported by factual allegations." *Id.* at 1950. Accordingly, the *Iqbal* Court instructed that a two-step approach is necessary for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion: First, courts must identify, and disregard, conclusory allegations, because they are "not entitled to the assumption of truth." *Id.* Second, upon identifying the well-pleaded factual allegations, courts "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

A motion to dismiss must be granted "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir.

2007) (quoting *Twombly*, 550 U.S. at 557).  The court should not "'strain to find inferences favorable to the plaintiffs'" or "accept 'conclusory allegations, unwarranted deductions, or legal conclusions'" to allow such a claim to proceed.  *R2 Invests. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004)).  Rather, this "basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier*, 503 F.3d at 401 (quoting *Twombly*, 550 U.S. at 557).

## IV.

### THE B1 CLAIMS AGAINST TRANSOCEAN MUST BE DISMISSED PURSUANT TO RULE 12(b)(6) AS THEY DO NOT RAISE A CLAIM OF ENTITLEMENT TO RELIEF FOR THE CAUSES OF ACTION ASSERTED

A Motion to Dismiss must be granted when the allegations in a complaint, even if true, do not raise a claim of entitlement to relief.  For the reasons summarized below, *infra* 6-11, the allegations in the First Amended B1 Master Claim and the First Amended B1 Master Complaint do not raise claims of entitlement to relief.  Based upon the arguments and authorities contained in the Brief in Support of Transocean's Rule 12(b)(6) Motion to Dismiss the First Amended B1 Master Claim in Limitation and the First Amended B1 Master Complaint, filed contemporaneously with this Motion, the B1 Claims should be dismissed, with prejudice.[3]

---

[3]   This Motion contains a brief summary of Transocean's arguments, without citation to the applicable case, statutory, and other authorities supporting dismissal.  Reference is made to Transocean's Brief which contains the full argument and authorities mandating dismissal.

6

**The OPA Claims Must Be Dismissed for the
Failure to Satisfy OPA's Presentment Requirements**

BP has been designated the "responsible party" under the Oil Pollution Act ("OPA") for the downhole release of oil from the Macondo Well.  OPA's § 2713 provides that all claims for removal costs or damages shall be presented first to the responsible party or guarantor of the source designated under § 2714 of OPA.  Presentment of a claim in accordance with OPA's § 2713 is a "mandatory condition precedent" for commencing an OPA action in court against a responsible party.  OPA's presentment requirement is jurisdictional.  For the Plaintiffs to be able to file suit, they must first satisfy OPA's presentment requirement.

The allegations in the First Amended B1 Master Complaint fail to establish that (1) the Plaintiffs' claims have been presented to the responsible party <u>and</u> (2) either the responsible party has denied all liability for the claim <u>or</u> the claim has not been settled by any person by payment within 90 days after the date of presentment or advertisement, whichever is later. Accordingly, Transocean is entitled to dismissal of Plaintiffs' OPA claims for the failure to satisfy OPA's presentment requirements.

**The Plaintiffs' State Common Law Claims
Must Be Dismissed As They Are Preempted or
Displaced By OPA and By the General Maritime Law**

The B1 Claims arise out of the operations of a semi-submersible drilling rig, the *Deepwater Horizon*, a vessel, which was operating in navigable waters in the Gulf of Mexico, well beyond any state's territorial waters.  For this reason, all cognizable claims arising from the BP Oil Spill are subject to this Court's admiralty jurisdiction and accompanying federal maritime law, which preempts and/or displaces state common law.

56816:10022191
11462065.4

There are three fundamental reasons why the Plaintiffs' state common law actions are preempted and/or displaced by federal law.

First, general maritime law preempts or displaces all state common law claims. According to the Fifth Circuit's *TESTBANK* ruling, and numerous other pre and post-OPA rulings following *TESTBANK*, the general maritime law preempts state common law claims for negligence, gross negligence, nuisance, and trespass. Furthermore, under the distinctive features of admiralty preemption, all state common law remedies for fraudulent concealment are preempted or displaced by the general maritime law.

Second, Congress has spoken comprehensively in the field of oil pollution damages by enacting OPA. Because OPA provides broad all-encompassing remedies for persons damaged as a result of a maritime pollution incident, the courts have found OPA to displace other laws, including general maritime law. No matter how artfully pleaded, the Plaintiffs' claims are cognizable under OPA, as they seek relief for precisely the types of damages Congress enumerated in OPA's § 2702(b)(2). OPA, in conjunction with the general maritime law, preempts and/or displaces all state common law causes of action, leaving only a narrowly defined authority for states to enact the mini-OPAs or similar solid waste disposal laws.

Third, because the BP Oil Spill arises out of exploration, drilling, and production related well operations in Mississippi Canyon Block 252, the location known as "Macondo" where the BP Oil Spill originated, OCSLA applies, and under OCSLA, federal law (OPA or the general maritime law) preempts all state common law claims. Under OCSLA, state law may only apply as "surrogate" federal law if federal maritime law does not apply of its own force <u>and</u> the state law is not inconsistent with federal law. Here, there is no "gap" in federal legal coverage for

8

state law to apply as "surrogate" federal law under OCSLA. OPA, and the general maritime law, apply to the exclusion of state common law.

And finally, OPA provides no savings provision which would permit the assertion of state common law causes of action for negligence, gross negligence, nuisance, trespass, and fraudulent concealment, which did not exist prior to the enactment of OPA.

### The Plaintiffs' Claims for Fraudulent Concealment Must Be Dismissed Under State and/or Federal Law

The Plaintiffs' pleadings in support of their "fraudulent concealment claim" do not meet the requirements of Rule 9(b) of the Federal Rules of Civil Procedure, because they do not provide the time, the place, or the content of any misrepresentation by Transocean, nor do the allegations connect any particular statement to an individual speaker, with regard to the condition of the *Deepwater Horizon*, or its components. Furthermore, the Plaintiffs have alleged no facts showing when, if ever, it was incumbent upon Transocean, which never had any dealings or a relationship with these Plaintiffs, to disclose any information to them at all, nor how Transocean should have done so. Because Plaintiffs have failed to satisfy Rule 9(b), their claim for fraudulent concealment must be dismissed.

In the alternative, the Plaintiffs have failed to state a claim for fraudulent concealment under any potentially applicable state law, including the laws of Louisiana, Texas, Mississippi, Alabama and Florida.

56816:10022191
11462065.4

**The Plaintiffs' Non-OPA Economic Loss Claims Must
Be Dismissed To the Extent the Plaintiffs Have Not
Sustained Physical Damage to a Proprietary Interest
Under State or Federal Law**

The seminal case of *Robins Dry Dock* and its Fifth Circuit equivalent, *TESTBANK*, preclude recovery for economic losses absent physical injury to a proprietary interest.  The *Robins Dry Dock/TESTBANK* rule has also been followed by the state courts in Louisiana, Texas, Mississippi and Alabama.   All of the Processing and Distributing Plaintiffs, the Commercial Business Plaintiffs, the Recreation Plaintiffs, the Plant and Dock Worker Plaintiffs, the Banking/Retail Business Plaintiffs and the Dealer Plaintiffs have not sustained physical damage to a proprietary interest.  In turn, virtually all of the Recreational Business Plaintiffs and Real Property/Tourism Plaintiffs have also not sustained physical damage to a proprietary interest.  And finally, to the extent the Commercial Fisherman Plaintiffs attempt to recover under the laws of Texas, Louisiana, Mississippi, or Alabama, their claims must be dismissed, as they have not sustained physical damage to a proprietary interest.[4]

**The Plaintiffs' Claims Under Florida's Mini-OPA
Statute Must be Dismissed**

For three reasons, the claims under the Florida mini-OPA statute must be dismissed.  First, the discharge of oil that resulted from the BP Oil Spill occurred in federal, not state, territorial waters, beyond the jurisdiction of Florida's mini-OPA statute.  Florida's mini-OPA statute imposes liability for clean-up costs for discharges that take place within state boundaries.  Because the BP Oil Spill occurred in the EEZ, many miles beyond Florida's territorial waters,

---

[4]   In describing the Commercial Fisherman Plaintiffs, neither the First Amended B1 Master Claim in Limitation nor the First Amended Master Complaint alleges that the Commercial Fisherman Plaintiffs were properly licensed under the applicable state law.  The claims of any unlicensed Commercial Fisherman Plaintiffs must be dismissed, whether those Plaintiffs proceed under state or federal law, because they lack standing to bring claims.

10

Florida's mini-OPA statute does not apply.  Second, Florida's mini-OPA statute cannot apply to the BP Oil Spill because its application to a spill at this location, approximately 125 miles from the Florida coast, would violate the Commerce Clause.  And third, individuals not residing or owning property in Florida have no standing to assert claims under the Florida mini-OPA statute.

### The Plaintiffs' Claims for Punitive Damages Must Be Dismissed

The Plaintiffs' separate count for punitive damages should be dismissed, because punitive damages do not constitute a separate cause of action, but instead constitute a remedy available for tortious or otherwise unlawful acts.  The only cause of action alleged in either the First Amended B1 Master Claim in Limitation or the First Amended B1 Master Complaint that might permit recovery of punitive damages is the count of gross negligence and willful misconduct.  Therefore, as a matter of law, any claims for punitive damage based upon negligence, nuisance, trespass, or fraudulent concealment, whether based on state or federal law, must therefore be dismissed.

The federal maritime law determines whether the Plaintiffs may recover punitive damages for gross negligence and willful misconduct.  The federal maritime law consists of federal statutory law and judicially-created general maritime law.  Punitive damages are not recoverable under OPA, which has supplanted the general maritime law in the realm of punitive damages.  Accordingly, all claims for punitive damages, whether based on state or general maritime law, or OPA, must be dismissed.

### The Plaintiffs' Claims for Declaratory Relief Must Be Dismissed

The First Amended B1 Master Claim in Limitation and First Amended B1 Master Complaint are tied to "settlement provisions" which attempt to release or affect the calculation of

56816:10022191
11462065.4

punitive damages.   Because the Plaintiffs are not entitled to a recovery of punitive damages, the claims for declaratory relief against Transocean should be dismissed.

## The Moratorium Plaintiffs' Claims Must Be Dismissed

The Moratorium Plaintiffs' claims for losses and damage as a result of the six-month deepwater drilling Moratorium issued by the United States Department of the Interior on May 28, 2010, should be dismissed.   OPA only allows recovery of damages that result from an "incident."  33 U.S.C. § 2702(a).  OPA defines an "incident" to include an occurrence or series of occurrences having the same origin resulting in the discharge or substantial threat of discharge of oil.  33 U.S.C. § 2701(14).  A responsible party may thus be liable under OPA only if the Plaintiffs' damages were caused by a pollution incident, i.e., the discharge or threatened discharge of oil.  The Moratorium Plaintiffs' damages were not caused by the discharge of oil, but resulted from the Moratorium, a superseding, unforeseeable cause.  Furthermore, under OPA, any "damages" must also result from the "discharge of oil."  33 U.S.C. § 2701(5).   The Moratorium Plaintiffs' "damages" are not damages due to the injury, destruction, or loss of real property, personal property, or natural resources resulting from the "discharge of oil" as required for the OPA recovery of "loss of profits or impairment of earning capacity," but are damages resulting from the Department of Interior's Moratorium.  33 U.S.C. § 2702(b)(2)(E).  All such Moratorium claims should therefore be dismissed.

56816:10022191
11462065.4

# V.

## CONCLUSION

One of Congress's principal motivations in enacting OPA was to benefit the victims of oil pollution. OPA has met this goal, by imposing strict liability upon a responsible party. OPA is a "polluter pays" statute.

Congress also intended OPA to provide for a prompt and efficient system for the compensation of victims of marine oil spills, without the need for an injured person to seek recourse through court action. To further this purpose, Congress established a claims procedure under OPA. This claims procedure requires that all claims for removal costs or damages be presented first to the responsible party or guarantor of the source of the spill, before that party may institute suit to recover damages or removal costs.

Here, BP has been designated as the OPA responsible party for the downhole release of oil from the Macondo Well. Despite BP's well-publicized statements that it intends to pay all legitimate claims, despite BP's funding of the Gulf Coast Claims Facility with twenty billion dollars to resolve claims, and despite the fact that BP has set up claim centers, toll free numbers, and an on-line process for the submission of claims, the Plaintiffs have chosen to file suit without first presenting their claims to BP, the responsible party. To make matters worse, all Plaintiffs have attempted to stack their OPA claims with inapplicable state common law claims, notwithstanding the fact that OPA provides them with a full remedy for their losses and a prompt and efficient process to obtain full compensation from BP. This is not what Congress intended when it passed OPA.

56816:10022191
11462065.4

The Congressionally mandated claims settlement process can only be respected and preserved by the dismissal of all claims asserted in the First Amended B1 Master Claim and the First Amended B1 Master Complaint which purport to bring claims outside of OPA's statutory scheme.  Dismissal of the non-OPA claims will not result in any OPA responsible party escaping liability for the BP Oil Spill, as virtually all of the victims of the BP Oil Spill have a remedy, and that remedy is OPA.  And finally, dismissal of those OPA claims for which presentment has not been made will also facilitate settlement of all legitimate claims arising from the BP Oil Spill, because those who have legitimate claims can then present those claims to the GCCF or to BP directly for prompt settlement.

Transocean respectfully requests that its Rule 12(6) Motion to Dismiss the First Amended B1 Master Claim in Limitation and the First Amended B1 Master Complaint be granted.

Respectfully submitted,

By:  /s/ Steven L. Roberts
Steven L. Roberts (Texas, No. 17019300)
Rachel Giesber Clingman (Texas, No. 00784125)
Kent C. Sullivan (Texas, No. 19487300)
Teri L. Donaldson (Florida, No. 784310)
Sutherland Asbill & Brennan LLP
1001 Fannin Street, Suite 3700
Houston, Texas 77002
Telephone: (713) 470-6100
Facsimile: (713) 654-1301
Email: steven.roberts@sutherland.com,
rachel.clingman@sutherland.com,
kent.sullivan@sutherland.com,
teri.donaldson@sutherland.com

By:  /s/ Kerry J. Miller
Kerry J. Miller (Louisiana, No. 24562)
Frilot, L.L.C.
1100 Poydras Street, Suite 3700
New Orleans, Louisiana 70163
Telephone: (504) 599-8169
Facsimile: (504) 599-8154
Email: kmiller@frilot.com

-and-

/s/ Edwin G. Preis, Jr.
Edwin G. Preis, Jr. (Louisiana, No. 10703)
Edward F. Kohnke, IV (Louisiana, No. 07824)
Preis & Roy PLC
102 Versailles Boulevard, Suite 400
Lafayette, Louisiana 70501
Telephone: (337) 237-6062
Facsimile: (337) 237-9129

14

-and-

601 Poydras Street, Suite 1700
New Orleans, Louisiana 70130
Telephone: (504) 581-6062
Facsimile: (504) 522-9129
Email: egp@preisroy.com, efk@preisroy.com

Of Counsel:

Daniel O. Goforth (Texas, No. 08064000)
Goforth Geren Easterling LLP
4900 Woodway, Suite 750
Houston, Texas 77056
Telephone: (713) 650-0022
Facsimile: (713) 650-1669
Email: dangoforth@goforthlaw.com

John M. Elsley (Texas, No. 0591950)
Royston, Rayzor, Vickery & Williams LLP
711 Louisiana Street, Suite 500
Houston, Texas 77002
Telephone: (713) 224-8380
Facsimile: (713) 225-9945
Email: john.elsley@roystonlaw.com

Brad D. Brian (California, No. 79001)
Allen M. Katz (California, No. 054933)
Munger Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California 90071
Telephone: (213) 683-9100
Facsimile: (213) 683-5180, (213) 683-4018
Email: brad.brian@mto.com, allen.katz@mto.com

COUNSEL FOR PETITIONERS IN
LIMITATION AND DEFENDANTS
TRANSOCEAN OFFSHORE DEEPWATER
DRILLING INC., TRANSOCEAN HOLDINGS
LLC, TRANSOCEAN DEEPWATER INC. AND
TRITON ASSET LEASING GMBH

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing pleading has been electronically filed through the Court's CM/ECF system and/or LexisNexis File & Serve, in accordance with Pretrial Order No. 12, which will send a notice of electronic filing to all counsel of record on this 28th day of February, 2011.

/s/  Kerry J. Miller

56816:10022191
11462065.4