UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG | § | MDL NO. 2179 |
| "DEEPWATER HORIZON" IN THE GULF OF | § | |
| MEXICO, ON APRIL 20, 2010 | § | SECTION: J |
| | § | |
| THIS PLEADING APPLIES TO: | § | |
| ALL CASES IN PLEADING BUNDLE SECTION | § | |
| III.B(1) ["B1 BUNDLE"] | § | JUDGE BARBIER |
| | § | |
| THIS PLEADING APPLIES TO: | § | |
| 2:10-CV-02771 | § | MAGISTRATE JUDGE SHUSHAN |

**BRIEF IN SUPPORT OF TRANSOCEAN'S RULE 12(b)(6)
MOTION TO DISMISS THE FIRST AMENDED B1 MASTER CLAIM IN
LIMITATION AND THE FIRST AMENDED B1 MASTER COMPLAINT**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ..................................................................................................1

II.     TRANSOCEAN IS ENTITLED TO DISMISSAL OF THE FIRST AMENDED
        B1 MASTER COMPLAINT'S OPA CLAIMS FOR THE PLAINTIFFS'
        FAILURE TO SATISFY OPA'S PRESENTMENT REQUIREMENTS ..........................4

        A.      The OPA Presentment Requirement is a Mandatory Condition Precedent
                to Filing Suit Based on OPA...................................................................4

        B.      The First Amended B1 Master Complaint Fails to Allege Full Satisfaction
                of OPA's Presentment Requirements ....................................................6

III.    TRANSOCEAN IS ENTITLED TO DISMISSAL OF ALL THE CLAIMANTS'
        AND THE PLAINTIFFS' STATE COMMON LAW CLAIMS ON THE BASIS
        OF PREEMPTION ..................................................................................................7

        A.      All B1 Claims Arising Out of the BP Oil Spill Are Subject to This Court's
                Admiralty Jurisdiction .........................................................................7

        B.      Admiralty Jurisdiction Requires the Application of Federal Admiralty Law........10

        C.      OPA is Comprehensive in Scope in Providing Remedies for the B1
                Plaintiffs' Oil Spill Damages ...............................................................11

        D.      General Maritime Common Law Would Preempt All State Common Law
                Claims Even If OPA Had Not Been Enacted.......................................14

        E.      This Court Has Exclusive Jurisdiction Over the B1 Claims Under OCSLA
                and, Under OCSLA, Federal Law Preempts All State Claims ..............................18

        F.      OPA's Section 2718(a) Neither Creates Nor Saves Any State Common
                Law Claims ..........................................................................................23

IV.     THE PLAINTIFFS' CLAIMS FOR "FRAUDULENT CONCEALMENT" MUST
        BE DISMISSED ..................................................................................................28

        A.      The Plaintiffs' Pleading Lacks the Particularity Required by Rule 9(b) ..............28

        B.      The Plaintiffs Have Failed to State a Claim Under Any Potentially
                Applicable State Law ...........................................................................29

                1.      The Plaintiffs' Allegations Fail to State a Claim Under Louisiana
                        Law .........................................................................................29

                2.      The Plaintiffs' Allegations Fail to State a Claim Under Texas Law .........30

3.  The Plaintiffs' Allegations Fail to State a Claim Under Mississippi Law ..........................................................................................31

4.  The Plaintiffs' Allegations Fail to State a Claim Under Alabama Law ..........................................................................................32

5.  The Plaintiffs' Allegations Fail to State a Claim Under Florida Law ..........................................................................................32

V.  TO THE EXTENT THAT THEY HAVE NOT SUSTAINED PHYSICAL DAMAGE TO A PROPRIETARY INTEREST, THE PLAINTIFFS' FEDERAL MARITIME AND STATE LAW CLAIMS ARE BARRED BY THE *ROBINS DRY DOCK* RULE ..........................................................................................33

A.  Maritime Law Bars the Plaintiffs' Claims Under *Robins Dry Dock* ....................34

B.  Louisiana Law Bars the Plaintiffs' Claims Under Its Economic Loss Rule ..........36

C.  Texas Law Bars the Plaintiffs' Claims Under Its Economic Loss Rule ...............37

D.  Mississippi Law Bars the Plaintiffs' Claims Under Its Economic Loss Rule ..........................................................................................38

E.  Alabama Law Bars the Plaintiffs' Claims Under Its Economic Loss Rule ..........40

VI.  THE PLAINTIFFS' CLAIMS UNDER FLORIDA'S MINI-OPA STATUTE MUST BE DISMISSED ..........................................................................................41

A.  Florida's Mini-OPA Statute Applies Only to Discharges Occurring Within State Territorial Waters and, Accordingly, is Inapplicable to the BP Oil Spill ..........................................................................................41

B.  Individuals Not Residing or Owning Property in Florida Have No Standing to Assert Claims Under the Florida Statute ...........................................43

VII.  THE PLAINTIFFS' CLAIMS FOR PUNITIVE DAMAGES MUST BE DISMISSED ..........................................................................................44

VIII.  THE PLAINTIFFS' CLAIMS FOR DECLARATORY RELIEF MUST BE DISMISSED ..........................................................................................46

IX.  ALL MORATORIUM DAMAGE CLAIMS MUST BE DISMISSED ..........................47

X.  CONCLUSION ..........................................................................................48

CERTIFICATE OF SERVICE ..........................................................................................50

# **TABLE OF AUTHORITIES**

CASES

*Abundiz v. Explorer Pipeline Co.*, CIV.A. 300CV2029H,
2003 WL 23096018 (N.D. Tex. Nov. 25, 2003) ...................................................................... 5

*Adcock v. S. Austin Marine, Inc.*, CIVA 208 CV 263 KS-MTP,
2009 WL 3633335 (S.D. Miss. Oct. 30, 2009) ................................................................ 38, 39

*American Dredging Co. v. Miller*,
510 U.S. 443 (1994) ........................................................................................................ 12

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009) ...................................................................................................... 7

*Askew v. Am. Waterways Operators, Inc.*,
411 U.S. 325 (1973) .......................................................................................... 16, 42, 44

*Barasich v. Shell Pipeline Co., LP*, CIV.A. 05-4180,
2006 WL 3913403 (E.D. La. Nov. 20, 2006) .................................................................. 37

*Barnes v. Andover Co., L.P.*,
900 F.2d 630 (3d Cir. 1990) ............................................................................................ 11

*Blue Gulf Seafood, Inc. v. TransTexas Gas Corp.*,
24 F. Supp. 2d 732 (S.D. Tex. 1998) .............................................................................. 34

*Boca Ciega Hotel, Inc. v. Bouchard Transp. Co., Inc.*,
51 F.3d 235 (11th Cir. 1995) ............................................................................................ 5

*Bradford v. Vento*,
48 S.W.3d 749 (Tex. 2001) .............................................................................................. 30

*Byrd v. Byrd*,
657 F.2d 615 (4th Cir. 1981) ............................................................................................ 15

*Cameron Offshore Boats, Inc. v. Alpine Ocean Seismic Surveys*,
862 F. Supp. 1578 (W.D. La. 1994) ................................................................................ 18

*Carroll v. Fort James Corp.*,
470 F.3d 1171 (5th Cir. 2006) .......................................................................................... 29

*Chelentis v. Luckenbach S.S. Co.*,
247 U.S. 372 (1918) ........................................................................................................ 10

*City of Milwaukee v. Illinois & Michigan*,
451 U.S. 304 (1981) ........................................................................................................ 11

*Clausen v. M/V NEW CARISSA*,
   171 F. Supp. 2d 1127 (D. Or. 2001) ................................................................ 45

*Coastal Conduit & Ditching, Inc. v. Noram Energy Corp.*,
   29 S.W.3d 282 (Tex. App.—Houston [14th Dist.] 2000, no pet.) ........................... 37

*Coastal Iron Works, Inc. v. Petty Ray Geophysical*,
   783 F.2d 577 (5th Cir. 1986) ............................................................................. 11

*Conn. ex rel. Blumenthal v. Crotty*,
   180 F. Supp. 2d 392 (N.D.N.Y. 2001) ............................................................... 42

*Cooper Stevedoring Co. v. Fritz Kopke, Inc.*,
   417 U.S. 106 (1974) ........................................................................................ 16

*Cuvillier v. Taylor*,
   503 F.3d 397 (5th Cir. 2007) .............................................................................. 7

*Dana Corp. v. Microtherm, Inc.*, 13-05-00281 CV,
   2010 WL 196939 (Tex. App.—Corpus Christi Jan. 21, 2010, pet. filed) ................ 38

*Dean Foods Co. v. Brancel*,
   187 F.3d 609 (7th Cir. 1999) ............................................................................. 42

*Dempster v. Louis Eymard Towing Co., Inc.*,
   503 So. 2d 99 (La. Ct. App. 1987) ..................................................................... 36

*Don Slack Ins., Inc. v. Fidelity & Cas. Co. of N.Y.*,
   385 So. 2d 1061 (Fla. Dist. Ct. App. 1980) ........................................................ 33

*E. Miss. Elec. Power Ass'n v. Porcelain Prod. Co.*,
   729 F. Supp. 512 (S.D. Miss. 1990) ................................................................... 38

*E. River S.S. Corp. v. Transamerica Delaval, Inc.*,
   476 U.S. 858 (1986) ........................................................................................ 10

*Edgar v. MITE Corp.*,
   457 U.S. 624 (1982) ........................................................................................ 42

*Egorov, Puchinsky, Afanasiev & Juring v. Terriberry, Carroll & Yancey*,
   183 F.3d 453 (5th Cir. 1999) .............................................................................. 8

*EP Operating Ltd. P'ship v. Placid*,
   26 F.3d 563 (5th Cir. 1994) ......................................................................... 20, 22

*Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*,
   51 S.W.3d 573 (Tex. 2001) ............................................................................... 30

*Ex parte Fritz*,
  38 So. 722 (Miss. 1905) ............................................................................................. 39

*Executive Jet Aviation, Inc. v. City of Cleveland*,
  409 U.S. 249 (1972) ................................................................................................... 9

*Express One Int'l, Inc. v. Steinbeck*,
  53 S.W.3d 895 (Tex. App.—Dallas 2001, no pet.) .................................................. 37

*Exxon Corp. v. CHICK KAM CHOO*,
  817 F.2d 307 (5th Cir. 1987) .................................................................................... 16

*Fields v. Pool Offshore, Inc.*, No. Civ. A. 97-3170,
  1997 WL 767634 (E.D. La. Dec. 8, 1997) ............................................................... 18

*Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*,
  565 F.3d 200 (5th Cir. 2009), *cert. denied*, 130 S. Ct. 199 (2009) .......................... 28

*Fontenot v. Mesa Petroleum Co.*,
  791 F.2d 1207 (5th Cir. 1986) .................................................................................... 9

*Foremost Ins. Co. v. Richardson*,
  457 U.S. 668 (1982) ................................................................................................... 9

*Freeport Sulphur Co. v. S.S. HERMOS*,
  526 F.2d 300 (5th Cir. 1976) .................................................................................... 10

*Friedman v. Am. Guardian Warranty Servs., Inc.*,
  837 So. 2d 1165 (Fla. Dist. Ct. App. 2003) ............................................................. 33

*Gabarick v. Laurin Maritime (Am.), Inc.*,
  623 F. Supp. 2d 741 (E.D. La. 2009) ................................................................. 6, 12

*Gardes Directional Drilling v. U.S. Turnkey Exploration*,
  98 F.3d 860 (5th Cir. 1996) ...................................................................................... 23

*Gatlin Oil Co. v. United States*,
  169 F.3d 207 (4th Cir. 1999) .................................................................................... 12

*Golnoy Barge Co. v. M/T SHINOUSSA*,
  841 F. Supp. 783 (S.D. Tex. 1993) .......................................................................... 34

*Gulf Offshore Co. v. Mobil Oil Corp.*,
  453 U.S. 473 (1981) ............................................................................................ 20, 22

*Harris Moran Seed Co., Inc. v. Phillips*,
  949 So. 2d 916 (Ala. Civ. App. 2006) ...................................................................... 40

*Healy v. Beer Inst.,*
    491 U.S. 324 (1989) ..................................................................................................... 42

*Hufnagel v. Omega Serv. Indus., Inc.,*
    182 F.3d 340 (5th Cir. 1999) ...................................................................................... 22

*Hughes v. Hertz Corp.,*
    670 So. 2d 882 (Ala. 1995) ......................................................................................... 32

*IMTT-Gretna v. ROBERT E. LEE SS,*
    993 F.2d 1193 (5th Cir. 1993) ......................................................................... 17, 25, 35

*In Re Air Disaster Near Honolulu, Hawaii,*
    792 F. Supp. 1541 (N.D. Cal. 1990) .......................................................................... 11

*In re Exxon Valdez,*
    270 F.3d 1215 (9th Cir. 2001) .................................................................................... 46

*In re Settoon Towing LLC,* CIV. A. 07-1263,
    2009 WL 4730969 (E.D. La. Dec. 4, 2009) ......................................................... 34, 47

*In re Taira Lynn Marine Ltd. No. 5, LLC v. Jays Seafood, Inc.,*
    444 F.3d 371 (5th Cir. 2006) ...................................................... 17, 25, 34, 35, 47

*In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico,*
    *on the April 20, 2010,* 2:10-md-02179, Rec. Doc. 470 (E.D. La. Oct. 6, 2010) ...................... 21

*Ins. Co. of N. Am. v. Morris,*
    981 S.W.2d 667 (Tex. 1998) ....................................................................................... 30

*Interstate Truck Leasing, Inc. v. Bender,*
    608 So. 2d 716 (Ala. 1992) ......................................................................................... 32

*Isla Corp. v. Sundown Energy, LP,* CIV.A. 06-8645,
    2007 WL 1240212 (E.D. La. Apr. 27, 2007) ......................................................... 5, 45

*J. Ray McDermott v. The VESSEL MORNING STAR,*
    457 F.2d 815 (5th Cir. 1972) (en banc), *cert. denied,* 409 U.S. 948 (1972) ............................ 11

*Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,*
    513 U.S. 527 (1995) .................................................................................................. 8, 9

*Johnson v. Colonial Pipeline Co.,*
    830 F. Supp. 309 (E.D. Va. 1993) ................................................................................. 6

*Kingston Shipping Co., Inc. v. Roberts,*
    667 F.2d 34 (11th Cir. 1982) ...................................................................................... 35

*Knickerbocker Ice Co. v. Stewart*,
   253 U.S. 149 (1920) ............................................................................. 10

*Kossick v. United Fruit Co.*,
   365 U.S. 731 (1961) ............................................................................. 10

*La. Crawfish Producers Ass'n-West v. Amerada Hess Corp.*,
   2005-1156 (La. App. 3 Cir. 7/12/06); 935 So. 2d 380 ........................... 37

*La. Seafood Mgmt. Council v. La. Wildlife & Fisheries Comm'n*,
   1997-1367 (La. 5/19/98), 715 So. 2d 387 ............................................. 37

*LaBauve v. La. Wildlife & Fisheries Comm'n*,
   444 F. Supp. 1370 (E.D. La. 1978) ....................................................... 37

*Lauritzen v. Larsen*,
   345 U.S. 571 (1953) ............................................................................. 12

*Le Sassier v. Chevron USA, Inc.*,
   776 F.2d 506 (5th Cir. 1985) ............................................................... 23

*Lee v. Gen. Motors Corp.*,
   950 F. Supp. 170 (S.D. Miss. 1996) ..................................................... 38

*Lloyd Wood Coal Co. v. Clark Equip. Co.*,
   543 So. 2d 671 (Ala. 1989) .................................................................. 40

*Louisville & Nashville R.R. Co. v. Arrow Transp. Co.*,
   170 F. Supp. 597 (N.D. Ala. 1959) ...................................................... 40

*Louisville & Nashville R.R. Co. v. M/V BAYOU LACOMBE*,
   597 F.2d 469 (5th Cir. 1979) ............................................................... 40

*Mabus v. St. James Episcopal Church*,
   884 So. 2d 747 (Miss. 2004) ............................................................... 31

*Marastro Compania Naviera, S.A. v. Canadian Maritime Carriers, Ltd.*,
   959 F.2d 49 (5th Cir. 1992) ................................................................. 15

*Marathon Pipe Line Co. v. LaRoche Indus., Inc.*,
   944 F. Supp. 476 (E.D. La. 1996) .......................................................... 6

*Mason v. Chrysler Corp.*,
   653 So. 2d 951 (Ala. 1995) .................................................................. 32

*McLachlan v. New York Life Ins. Co.*,
   488 F.3d 624 (5th Cir. 2007) ............................................................... 30

*Mettler, Inc. v. Ellen Tracy, Inc.*,
  648 So. 2d 253 (Fla. Dist. Ct. App. 1994).................................................................... 33

*Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n*,
  453 U.S. 1 (1981) ...................................................................................................... 11

*Miles v. Apex Marine*,
  498 U.S. 19, 111 S. Ct. 317, 112 L.Ed.2d 275 (1990) ............................................... 45

*Miller Indus. v. Caterpillar Tractor Co.*,
  733 F.2d 813 (11th Cir. 1984)............................................................... 1, 35, 49, 50

*Muse v. Freeport McMoran, Inc.*, CIV. A. 91-4247,
  1992 U.S. Dist. LEXIS 13397, 1992 WL 233771 (E.D. La. Aug. 28, 1992) ........... 27

*Nat'l Collegiate Athletic Ass'n v. Miller*,
  10 F.3d 633 (9th Cir. 1993)....................................................................................... 42

*Nat'l Foreign Trade Council v. Natsios*,
  181 F.3d 38 (1st Cir. 1999) *aff'd*, 530 U.S. 363 (2000) ........................................... 42

*Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atlantic Corp.*,
  924 F. Supp. 1436 (E.D. Va. 1996), *aff'd*, 122 F.3d 1062 (4th Cir. 1997),
  *cert. denied*, 523 U.S. 1021 (1998) ......................................................................... 12

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Cagle*,
  68 F.3d 905 (5th Cir. 1995)....................................................................................... 30

*New Jersey v. New York*,
  283 U.S. 336 (1931) .................................................................................................. 11

*Nissan Motor Corp. v. Md. Shipbuilding*,
  544 F. Supp. 1104 (D. Md. 1982) ............................................................................. 15

*Norfolk & Portsmouth Belt Line R. Co.. v. M/V MARLIN*,
  2009 WL 1974298 (E.D. Va. 2009) .......................................................................... 17

*Norfolk Southern Ry. v. James N. Kirby, Pty. Ltd.*,
  543 U.S. 14 (2004) ................................................................................................ 8, 10

*Offshore Logistics, Inc. v. Tallentire*,
  477 U.S. 207 (1986) .................................................................................................. 10

*Parks v. Simpson*,
  137 So. 2d 136 (Miss. 1962) ..................................................................................... 39

*Phillips v. BP PLC.*,
  4:10-cv-00259-RH-WCS, Rec. Doc. 19 (N.D. Fla. Aug. 17, 2010) ......................... 22

*Phillips v. G&H Seed Co.,* 2008-934 (La. App. 3 Cir. 4/8/09);
   10 So. 3d 339, 342-45, *reh'g denied* (June 3, 2009),
   *writ denied*, 2009-1504 (La. 10/30/09); 21 So. 3d 284,
   *reconsideration not considered,* 2009-1504 (La. 1/8/10); 24 So. 3d 871 ................................ 36

*Pioneer Valley Hosp., Inc. v. Elmwood Partners, L.L.C.*,
   01-453 (La. App. 5 Cir. 10/17/01) 800 So. 2d 932 ..................................................... 30

*Pope & Talbot, Inc. v. Hawn*,
   346 U.S. 406 (1953) ........................................................................................ 16

*PPG Indus., Inc. v. Bean Dredging*,
   447 So. 2d 1058 (La. 1984) .............................................................................. 36

*Rankin v. Brokman*,
   502 So. 2d 644 (Miss. 1987) ............................................................................ 31

*Reserve Mooring Inc. v. Am. Commercial Barge Line, LLC*,
   251 F.3d 1069 (5th Cir. 2001) .......................................................................... 34

*Robins Dry Dock & Repair Co. v. Flint et al.*,
   275 U.S. 303 (1927) ...................................................... 15, 16, 17, 33, 34, 35, 37, 40

*Rodriquez v. Carson*,
   519 S.W.2d 214 (Tex. App.—Amarillo 1975, *writ ref'd n.r.e*) ................................. 38

*Romero v. Int'l Terminal Operating Co.*
   358 U.S. 354 (1959) ........................................................................................ 10

*Russo v. M/T DUBAI STAR*, C 09-05158 SI,
   2010 WL 1753187 (N.D. Cal. Apr. 29, 2010) ....................................................... 6

*S. Pac. Co. v. Jensen*,
   244 U.S. 205 (1917) ........................................................................................ 10

*S. Port Marine LLC v. Gulf Oil Ltd. P'Ship*,
   234 F.3d 58 (1st Cir. 2000) ............................................................... 12, 44, 45, 46

*Schlumberger Tech. Corp. v. Swanson*,
   959 S.W.2d 171 (Tex. 1997) ............................................................................ 30

*Seaboats, Inc. v. Alex C Corp.,* Nos. Civ. A. 01-1284-DPW,
   2003 WL 203078 (D. Mass. Jan. 30, 2003) ........................................................ 12

*State Farm Mut. Auto. Ins. Co. v. Ford Motor Co.*,
   736 So. 2d 384 (Miss. Ct. App. 1999) ............................................................... 38

*State of La. ex rel. Guste v M/V TESTBANK*,
   752 F.2d 1019 (5th Cir. 1985) (en banc)
   *cert. denied* 477 U.S. 903 (1986) .............................................. 10, 14, 15, 17, 25, 34, 35, 37

*State of Md. Dept. of Natural Resources v. Kellum*,
   51 F.3d 1220 (4th Cir. 1995) ................................................................................. 17

*Stewart v. Dutra Constr. Co.*,
   543 U.S. 481 (2005) ........................................................................................... 9, 10

*Strong v. B.P. Exploration & Prod., Inc.*,
   440 F.3d 665 (5th Cir. 2006) ................................................................................... 9

*Sun Drilling Prods. Corp. v. Rayborn*, 2000-1884 (La. App. 4 Cir. 10/3/01); 798 So. 2d 1141,
   *writ denied*, 2001-2939 (La. 1/25/02) 807 So. 2d 840 .......................................... 30

*Tanguis v. M/V WESTCHESTER*,
   153 F. Supp. 2d 859 (E.D. La. 2001) ...................................................................... 12

*Targa Midstream Servs. Ltd. P'Ship v. K-FC Transp. Partners, L.P.*, No. Civ. A. G-05629,
   2006 WL 2520914 (S.D. Tex. Apr. 20, 2006) ........................................................ 12

*Tenn. Gas Pipeline v. Houston Cas. Ins. Co.*,
   87 F.3d 150 (5th Cir. 1996) ....................................................................... 18, 20, 22

*Texaco Exploration & Prod. Inc. v. AmClyde Engineered Prods. Co.*,
   448 F.3d 760 (5th Cir. 2006) ..................................................................... 9, 19, 20

*THE LOTTAWANNA*,
   88 U.S. 558 (1874) ................................................................................................. 8

*Trans-Gulf Corp. v. Performance Aircraft Servs., Inc.*,
   82 S.W.3d 691 (Tex. App.—Eastland 2002, no pet.) .............................................. 37

*TS & C Inv., L.L.C. v. Beusa Energy, Inc.*,
   637 F. Supp. 2d 370 (W.D. La. 2009) ..................................................................... 36

*Turner v. Murphy Oil U.S.A., Inc.*, CIV.A. 05-4206,
   2007 WL 4208986 (E.D. La. Nov. 21, 2007) .......................................................... 5

*Union Tex. Petroleum Corp. v. PLT Eng'g, Inc.*,
   895 F.2d 1043 (5th Cir. 1990) ................................................................................ 22

*United States ex rel. Riley v. St. Luke's Episcopal Hosp.*,
   355 F.3d 370 (5th Cir. 2004) .................................................................................. 29

*United States v. BIG SAM*,
   681 F.2d 432 (5th Cir. 1982) ....................................................................... 14, 44, 46

*United States v. Louisiana, Texas, Mississippi, Alabama & Florida,*
    363 U.S. 1, 65, 128-29 (1960) .................................................................................... 41

*United States v. Reliable Transfer Co.,*
    421 U.S. 397 (1975) .................................................................................................. 16

*United Teacher Assocs. Ins. Co. v. Union Labor Life Ins. Co.,*
    414 F.3d 558 (5th Cir. 2005) .................................................................................... 31

*Van Schaeffer v. Tsakos Shipping & Trading, S.A.,* CIV. A. 05-4486,
    2006 U.S. Dist. LEXIS 25304, 2006 WL 1192939 (E.D. Pa. May 2, 2006) ............. 7

*Walsh v. Seagull Energy Corp.,*
    836 F. Supp. 411 (S.D. Tex. 1993) ........................................................................... 20

*White v. Chevron, USA, Inc.,* CIV. A. No. 90-113,
    1990 WL 28167 (E.D. La. Mar. 14, 1990) ................................................................ 18

*Williams v. WMX Techs., Inc.,*
    112 F.3d 175 (5th Cir. 1997) .................................................................................... 28

*Zurich Am. Ins. Co. v. Hughes,* 11-05-00044-CV,
    2006 WL 1914689 (Tex. App.—Eastland July 13, 2006, pet. denied) .................... 38

RULES

FED. R. CIV. P. 12(b)(6) ......................................................................... 28, 41, 47

FED. R. CIV. P. 9(b) ...................................................................................... 28

STATUTES

1 U.S.C. § 3 ........................................................................................................ 9

28 U.S.C. § 1333(1) ............................................................................................ 8

33 U.S.C. § 2701(32)(A), (B) .............................................................................. 4

33 U.S.C. § 2701(5) ........................................................................................... 47

33 U.S.C. § 2701(a) ........................................................................................... 47

33 U.S.C. § 2702(b)(2) ...................................................................................... 14

33 U.S.C. § 2702(b)(2)(E) .................................................................................. 48

33 U.S.C. § 2713(a) ......................................................................................... 5, 6

33 U.S.C. § 2713(a) and (b) ................................................................................. 7

33 U.S.C. § 2713(c) ........................................................................................... 5

33 U.S.C. § 2714 ............................................................................................... 4

33 U.S.C. § 2718(a) ..................................................................................... 24, 25

33 U.S.C. § 2718(a)(2) ............................................................... 23, 24, 25, 26, 27

33 U.S.C. § 2751(e)(1) ...................................................................................... 24

33 U.S.C. § 3701 (14) ........................................................................................ 47

42 U.S.C. 6901 *et seq.* ................................................................................ 24, 26

43 U.S.C. § 1332(1) ........................................................................................... 18

43 U.S.C. § 1333 ............................................................................................... 20

43 U.S.C. § 1333(a)(2)(A) .................................................................................. 22

43 U.S.C. § 1349(b)(1) ................................................................................. 20, 21

43 U.S.C. § 1802 ............................................................................................... 20

43 U.S.C. §§ 1301(2), 1302, 1312 ..................................................................... 41

46 U.S.C. § 30101 .............................................................................................. 8

ALA. CODE 1975, § 6-5-102 .............................................................................. 32

FLA. STAT. § 376.031(17) ................................................................................. 44

FLA. STAT. § 376.1 ........................................................................................... 43

FLA. STAT. § 376.12(1) ..................................................................................... 44

FLA. STAT. § 376.205 ....................................................................................... 41

FLA. STAT. §§ 376.011-376.21 .......................................................................... 41

LA. CIV. CODE ANN. ART. 1953 ...................................................................... 29

LA. CIV. CODE ARTS. 2315 to 2318 ................................................................. 27

MISS. CODE. ANN. § 49-15-5 (West 2010) ........................................................ 39

## OTHER AUTHORITIES

135 CONG. REC. H7965 (daily ed. Nov. 2, 1989) ................................................. 6

Grant Gilmore & Charles L. Black, Jr.,
  *The Law of Admiralty* § 1-17, at 48 (2d ed. 1975) .................................................................. 11

H. R. REP. NO. 95-590, at 128 (1977) (emphasis added),
  *reprinted in* 1978 U.S.C.C.A.N. 1450, 1534.......................................................................... 22

S. REP. NO. 101-94, *reprinted in* 1990
  U.S.C.C.A.N. 722, 730.......................................................................................................... 11

U.S. CONST. Art. III, § 2, cl.1. ............................................................................................. 8

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG | § | MDL No. 2179 |
| "DEEPWATER HORIZON" IN THE GULF OF | § | |
| MEXICO, ON APRIL 20, 2010 | § | SECTION: J |
| | § | |
| THIS PLEADING APPLIES TO: | § | |
| ALL CASES IN PLEADING BUNDLE SECTION | § | |
| III.B(1) ["B1 BUNDLE"] | § | JUDGE BARBIER |
| | § | |
| THIS PLEADING APPLIES TO: | § | |
| 2:10-CV-02771 | § | MAGISTRATE JUDGE SHUSHAN |

**BRIEF IN SUPPORT OF TRANSOCEAN'S RULE 12(b)(6)
MOTION TO DISMISS THE FIRST AMENDED B1 MASTER CLAIM IN
LIMITATION AND THE FIRST AMENDED B1 MASTER COMPLAINT**

TO THE HONORABLE CARL J. BARBIER, United States District Judge:

Petitioners in Limitation and Defendants Transocean Offshore Deepwater Drilling Inc.,
Transocean Holdings LLC, Transocean Deepwater Inc. and Triton Asset Leasing GmbH
(collectively "Transocean") respectfully submit their Brief in Support of Transocean's Rule
12(b)(6) Motion to Dismiss the First Amended B1 Master Claim in Limitation and the First
Amended B1 Master Complaint.

## I.

## INTRODUCTION

When the EXXON VALDEZ fetched up on Bligh Reef in Alaska in 1989, the nation's
attention was focused on the problem of oil spill liability and compensation. The national outcry
that followed in the wake of the EXXON VALDEZ grounding prompted Congress to undertake
a careful review of the nation's oil spill laws, and a consensus readily emerged in Congress to
produce a dramatic overhaul of the prior federal oil pollution legislation. The result was a
comprehensive federal scheme for oil pollution liability in the Oil Pollution Act of 1990
("OPA").

One of Congress's principal motivations in enacting OPA was to benefit the victims of oil pollution.  OPA has met this goal.  OPA imposes strict liability on a responsible party.  By its very terms, OPA is a "polluter pays" statute.

OPA also sets forth a comprehensive list of recoverable damages, including: removal costs; damage to natural resources and real or personal property; loss of subsistence use of natural resources; loss of government revenues; lost profits and earning capacities; and costs of increased or additional public services occasioned by a pollution incident.  By expanding the range of recoverable damages, Congress has given a comprehensive remedy to virtually every B1 Bundle Plaintiff.  These OPA remedies are unaffected by any maritime or state law-based limitations on the recoverability of foreseeable economic losses, sometimes known as the *Robins Dry Dock* or "economic loss" rule which, at the time of the EXXON VALDEZ spill, substantially limited the damages that could be recovered by victims of oil spills.  And by expanding the types of parties entitled to make claims for foreseeable losses, OPA expresses Congress's intent that a responsible party be held accountable for the consequences of an oil spill.

Congress also intended OPA to provide for a prompt and efficient system for the compensation of victims of marine oil spills, without the need for an injured person to seek recourse through litigation.  It did so by establishing a claims procedure that requires <u>all</u> claims for removal costs or damages to be presented first to the responsible party or guarantor of the source of the oil.  In their First Amended Master Claim in Limitation and Master Complaint, the Claimants and Plaintiffs acknowledge—as they must—that BP has been designated as the OPA responsible party for the downhole release of oil from the Macondo Well, and Transocean Holdings has been designated as the responsible party for the release of diesel on the surface of the water.  As the designated source of and responsible party for the downhole release of oil, BP

has provided notice advising all potential claimants desiring to assert an OPA claim that they may file and present their claims (1) at a BP claim center set up specifically to address OPA claims; (2) by calling a BP toll-free telephone number; or (3) by submitting their claims online to BP.  BP has also funded the Gulf Coast Claims Facility with twenty billion dollars to resolve claims.

Despite these obvious benefits of OPA, and BP's well-publicized statements that it intends to pay all legitimate claims, many of the Claimants and Plaintiffs have chosen to file suit without first presenting their claims to BP.  And, all Claimants and Plaintiffs have attempted to stack their OPA claims with inapplicable state common law claims, notwithstanding the fact that OPA provides them with a full remedy for their losses and a prompt and efficient process to obtain full compensation from BP, without regard to BP's fault.

Congress also made a deliberate choice that OPA itself would not preempt state legislation governing the discharge of oil within such state and, to this end, included within OPA a narrowly crafted "non-preemption" clause designed to give states the right to enact their own oil-spill legislation under state mini-OPA statutes.  But except for certain Florida Plaintiffs who have elected to assert claims under Florida's mini-OPA statute, all of the Claimants and Plaintiffs have chosen to assert an array of state common law claims for negligence, gross negligence, nuisance, trespass, and fraudulent concealment.  This is not what Congress intended when it passed OPA.

The Claimants and Plaintiffs must follow the policies and procedures that Congress set forth in OPA.  They must present their claims to BP for the downhole release of oil from the Macondo Well.  Only if their claims are not resolved may they then file suit.  If BP settles the claims, litigation will be unnecessary.  At that point, BP will be free to file suit to obtain contribution from other parties, if any, that a court may determine are liable for the downhole

release of oil.   OPA gives BP that right.   In addition, if BP believes that it has a valid indemnification agreement with any third party to obtain reimbursement of any sums it has paid or will pay in settlement of any B1 claims, it may pursue those third parties, as OPA does not disrupt indemnity agreements.   This is the very process that Congress, by passing OPA, intended parties to follow in the wake of an oil spill: claimants present out-of-court claims to the responsible party; the responsible party pays valid claims; and, if appropriate, the responsible party pursues other potential parties for contribution or indemnity, as the case may be.

## II.

### TRANSOCEAN IS ENTITLED TO DISMISSAL OF THE FIRST AMENDED B1 MASTER COMPLAINT'S OPA CLAIMS FOR THE PLAINTIFFS' FAILURE TO SATISFY OPA'S PRESENTMENT REQUIREMENTS

**A.** *The OPA Presentment Requirement is a Mandatory Condition Precedent to Filing Suit Based on OPA.*

The Plaintiffs acknowledge that BP Exploration was designated a "'Responsible Party' by the U.S. Coast Guard under the Oil Pollution [Act] of 1990, 33 U.S.C. § 2714." **B1, p. 53, ¶ 210.**   The Plaintiffs also acknowledge that, on October 28, 2010, the U.S. Coast Guard named Transocean Holdings as a "'Responsible Party' under the Oil Pollution Act for the surface oil spill resulting from the blowout by the Deepwater Horizon." **B1, p. 58, ¶ 223.**   And later, in conjunction with their specific allegations under OPA, the Plaintiffs acknowledge:  "The Coast Guard has named BP as the responsible party for the downhole release of oil and Transocean as the responsible party for the release of diesel on the surface." **B1, p. 176, ¶ 680.**[1]

---

[1]   Under OPA, the responsible party for discharges from a vessel is the owner/operator of the vessel, while the responsible party for discharges from an offshore facility is the lessee/permittee of the area in which the facility is located.  33 U.S.C. § 2701(32)(A), (B).

OPA provides that "all claims for removal costs or damages shall be presented first to the responsible party or guarantor of the source designated under § 2713(a) of this title."  33 U.S.C. § 2713(a).  OPA further provides:

**(c)      Election**

If a claim is presented in accordance with subsection (a) of this Section and—

(1)  each person to whom the claim is presented denies all liability for the claim, or

(2)   the claim is not settled by any person by payment within 90 days after the date upon which (A) the claim was presented, or (B) advertising was begun pursuant to section 2714(b) of this title, whichever is later,

***the claimant may elect to commence an action in court against the responsible party or guarantor. . . .***

33 U.S.C. § 2713(c) (emphasis added).

Based upon the unequivocal language of OPA, presentment of a claim in accordance with Section 2713 has been held to be a "mandatory condition precedent" for commencing an OPA action in Court against a responsible party.  *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co., Inc.*, 51 F.3d 235, 240 (11th Cir. 1995); *Isla Corp. v. Sundown Energy, LP*, CIV.A. 06-8645, 2007 WL 1240212, at *2 (E.D. La. Apr. 27, 2007); *Abundiz v. Explorer Pipeline Co.,* CIV.A. 300CV2029H, 2003 WL 23096018, at *5 (N.D. Tex. Nov. 25, 2003); *Turner v. Murphy Oil U.S.A., Inc.,* CIV.A. 05-4206, 2007 WL 4208986, at *2 (E.D. La. Nov. 21, 2007).   As the Eleventh Circuit established in *Boca Ciega*, "the clear text of § 2713 creates a mandatory condition precedent barring all OPA claims unless and until a claimant has presented her claims in compliance with § 2713(a). . . ."   51 F.3d at 240.   Indeed, courts have held that OPA presentment is jurisdictional, such that the failure to strictly comply with OPA's presentment requirement ousts a court of jurisdiction over any OPA claims.  *Russo v. M/T DUBAI STAR*, C

09-05158 SI, 2010 WL 1753187 (N.D. Cal. Apr. 29, 2010); *Gabarick v. Laurin Maritime (Am.), Inc.,* 623 F. Supp. 2d 741 (E.D. La. 2009); *Marathon Pipe Line Co. v. LaRoche Indus., Inc.,* 944 F. Supp. 476, 477 (E.D. La. 1996); *Johnson v. Colonial Pipeline Co.,* 830 F. Supp. 309, 310-11 (E.D. Va. 1993).

The mandatory OPA claims and presentment process was instituted to encourage the resolution of claims outside the context of court action:   "The system of liability and compensation provided for in the Bill . . . *is intended to allow for quick and complete payment of reasonable claims without resort to cumbersome litigation."*  135 CONG. REC. H7965 (daily ed. Nov. 2, 1989).  Thus, for the Plaintiffs to be able to file suit, they must first present their claims to BP for the downhole release of oil from the Macondo Well.  BP may then either pay those claims or deny liability for those claims.  If BP denies liability, or ninety days has elapsed from the date of presentment or the date of advertisement without payment of the claim, whichever is later, then, and only then, may the Plaintiffs file suit under OPA.

**B.**     ***The First Amended B1 Master Complaint Fails to Allege Full Satisfaction of OPA's Presentment Requirements.***

The First Amended B1 Master Complaint falls short of alleging that the requirements of Section 2713(a) and (c) have been fully satisfied as to BP and as to Transocean.  The First Amended B1 Master Complaint alleges:

> To the extent required by law, and/or by consent or stipulation by BP, Plaintiffs have satisfied, or will have satisfied, all of the administrative requirements of 33 U.S.C. § 2713(a) and (b), as to each and all defendants, by the submission of their claims to the Gulf Coast Claims Facility (the "GCCF") and/or BP and/or its agents or designees.

**B1, p. 178, ¶ 689**.  These allegations fail to establish that (1) the Plaintiffs' claims have been presented to the Responsible Party <u>and</u> (2) either the Responsible Party has denied all liability for the claim <u>or</u> the claim was not settled by any person by payment within ninety days after the date

of presentment or advertisement.[2]   In fact, the Claimants and Plaintiffs fail to allege <u>any</u> presentment as to Transocean Holdings for the release of diesel on the surface of the water from the *Deepwater Horizon*.[3]   Accordingly, Transocean is entitled to dismissal of Plaintiffs' OPA claims for failure to satisfy OPA's presentment requirements.

**III.**

**TRANSOCEAN IS ENTITLED TO DISMISSAL OF ALL THE CLAIMANTS' AND THE PLAINTIFFS' STATE COMMON LAW CLAIMS ON THE BASIS OF PREEMPTION**

**A.**     ***All B1 Claims Arising Out of the BP Oil Spill Are Subject to This Court's Admiralty Jurisdiction.***

The B1 claims arise out of the operations of a semi-submersible drilling rig, the *Deepwater Horizon,* a vessel, which was operating in navigable waters in the Gulf of Mexico, well beyond any state's territorial waters.   For this reason, all claims arising from the BP Oil Spill are subject to this Court's admiralty jurisdiction and accompanying federal maritime law, which displaces and preempts state common law.[4]

---

[2]     Transocean does not concede that OPA's presentment requirements have been satisfied, notwithstanding the Plaintiffs' allegations in paragraph 689 of the First Amended B1 Master Complaint that BP has consented or stipulated to the Plaintiffs' satisfaction of their OPA presentment requirements.   BP's stipulation or consent may not bind Transocean.   Furthermore, any such consent or stipulation by BP would be irrelevant to the issue of proper presentment to Transocean as to any claims for the release of diesel on the surface of the water for which Transocean has been designated as the source and the responsible party.

[3]     The Plaintiffs' allegations in paragraph 689 of the Master Complaint that "Plaintiffs have satisfied . . . all of the administrative requirements of 33 U.S.C. § 2713(a) and (b), as to each and all defendants" is a mere legal conclusion, which must not be accepted as true for purposes of Transocean's Rule 12(b)(6) Motion to Dismiss. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009).   While legal conclusions can provide the framework of a complaint, "they must be supported by factual allegations." *Id.* at 1950.   If the allegations in a complaint do not raise a claim of entitlement to relief, "this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor,* 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007)).

[4]     If not dismissed, the state common law claims asserted in the First Amended B1 Master Complaint as to Transocean remain subject to the limitation injunction, stay, and restraining order entered by the Court (Judge K. Ellison) on June 14, 2010, in C. A. No. 4:10-cv-1721 [after transfer, 10-2771]. *Van Schaeffer v. Tsakos Shipping & Trading, S.A.,* CIV. A. 05-4486, 2006 U.S. Dist. LEXIS 25304, 2006 WL 1192939 (E.D. Pa. May 2, 2006).

Under the U.S. Constitution's Admiralty Clause, the judicial power of the United States extends to "all Cases of admiralty and maritime jurisdiction." U.S. CONST. Art. III, § 2, cl.1. This is not only a grant of authority to adjudicate but also a statement that affirms the reception into the United States of a substantive body of admiralty law and implicitly authorizes Congress to pass legislation in this field. *Norfolk Southern Ry. v. James N. Kirby, Pty. Ltd.,* 543 U.S. 14, 22-23 (2004). *See*, *e.g.*, *THE LOTTAWANNA*, 88 U.S. 558, 572-78 (1874). Acting under the Admiralty Clause, Congress vested federal courts with original and exclusive jurisdiction over "admiralty or maritime" matters. *See* 28 U.S.C. § 1333(1). In 1948, Congress extended admiralty jurisdiction to "cases of injury or damage, to person or property, caused by a vessel on navigable waters even though the injury or damage is done or consummated on land." *See* Admiralty Extension Act ("AEA"), 46 U.S.C. § 30101. [5]

If the location and connection-to-maritime-activity tests are satisfied, admiralty tort jurisdiction exists.[6] *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527, 534 (1995). The *location test* requires the tort to have occurred on navigable waters or, for an injury suffered on land, to have been caused by a vessel on navigable waters. *Id.* (citing AEA); *see also Egorov, Puchinsky, Afanasiev & Juring v. Terriberry, Carroll & Yancey*, 183 F.3d 453, 455-56 (5th Cir. 1999). The *connection-to-maritime-activity test* has two sub-parts:

> A court, first, must assess the general features of the type of incident involved to determine whether the incident has a ***potentially disruptive impact on maritime commerce***. Second, a court must determine whether ***the general character of the activity***

---

[5]   The test for jurisdictional purposes under the AEA is whether the Plaintiffs allege that their injuries were caused by a vessel on navigable waters. In the First Amended B1 Master Claim in Limitation, the Claimants are alleged to have suffered property losses, economic damages and/or other costs "as a result of the oil spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico on April 20, 2010." **B1, p. 8.** These allegations satisfy the AEA's jurisdictional test. The Transocean Defendants do not concede, however, that the BP Oil Spill was caused by the *Deepwater Horizon.*

[6]   The AEA serves as an independent basis for admiralty jurisdiction, even if the connection to maritime activity and location tests are not satisfied. *Tagliere v. Harrah's Illinois Corp.*, 445 F.3d 1012 (7th Cir. 2006).

> *giving rise to the incident shows a substantial relationship to traditional maritime activity.*

*Grubart*, 513 U.S. at 534 (emphasis added; internal citations and quotation marks omitted); *see also, e.g., Texaco Exploration & Prod. Inc. v. AmClyde Engineered Prods. Co.*, 448 F.3d 760, 770-71 (5th Cir. 2006); *Strong v. B.P. Exploration & Prod., Inc.,* 440 F.3d 665, 669 (5th Cir. 2006). "The key inquiry is whether the allegedly tortious activity is so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply in the suit at hand." *Strong,* 440 F.3d at 669 (citations and internal quotation marks omitted).

There can be no legitimate dispute that this Court has admiralty jurisdiction over the B1 claims. First, the *Deepwater Horizon* was a semisubmersible drilling rig. This type of rig has been held to be a vessel for general maritime law purposes. *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1314 n.5 (5th Cir. 1986). *See Stewart v. Dutra Constr. Co.*, 543 U.S. 481 (2005); 1 U.S.C. § 3. And, the Gulf of Mexico is a navigable body of water. Accordingly, the location test is met because all B1 Claims involve an alleged injury involving a vessel (*Deepwater Horizon*) on navigable water (Gulf of Mexico).

Second, applying *Grubart*, *supra*, the connection-to-maritime activity test is met despite the fact that the B1 Claims may involve injuries on land. Specifically, the BP Oil Spill had the potential to and did in fact disrupt maritime commerce in the Gulf of Mexico, and the BP Oil Spill unquestionably bears a substantial relationship to a traditional maritime activity—a casualty involving an explosion, fire, and subsequent sinking of a vessel. *Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 249, 269-70 (1972); *Foremost Ins. Co. v. Richardson,* 457 U.S. 668, 669, 674 (1982) (admiralty jurisdiction over claims arising from "operation of a vessel on navigable waters. . . ."); *Grubart,* 513 U.S. at 528, 539 ("damage by a vessel in navigable water

to an underwater structure" had "a potentially disruptive impact on maritime commerce" because the incident "could lead to restrictions in the navigational use of the waterway" and to "disruption of the watercourse itself").

**B.      *Admiralty Jurisdiction Requires the Application of Federal Admiralty Law.***

"It is well-settled that the invocation of federal admiralty jurisdiction results in the application of federal admiralty law rather than state law." *State of La. ex rel. Guste v M/V TESTBANK*, 752 F.2d 1019, 1031-32 (5th Cir. 1985) (en banc), *cert. denied,* 477 U.S. 903 (1986) (citations omitted). *See, e.g., Norfolk Southern Ry. v. Kirby,* 543 U.S. 14, 22-23; *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864 (1986); *Kossick v. United Fruit Co.,* 365 U.S. 731 (1961); *Freeport Sulphur Co. v. S.S. HERMOS,* 526 F.2d 300, 302 n.2 (5th Cir. 1976). Within its sphere of operation, the maritime law of the United States is supreme, and the states are without power to disrupt it:

> [T]he "saving to suitors" clause allows state courts to entertain *in personam* maritime causes of action, but in such cases the extent to which state law may be used to remedy maritime injuries is constrained by a so-called "reverse-*Erie*" doctrine which requires that the substantive remedies afforded by the States conform to governing federal maritime standards.

*Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 222-23 (1986).

The Supreme Court laid the foundation of the supremacy of admiralty law over state law in a series of cases more than ninety years ago. *See S. Pac. Co. v. Jensen,* 244 U.S. 205 (1917); *Chelentis v. Luckenbach S.S. Co.,* 247 U.S. 372 (1918); *Knickerbocker Ice Co. v. Stewart,* 253 U.S. 149 (1920). Although the broad pronouncements of those early cases have been often hedged and qualified, *see, e.g.*, *Romero v. Int'l Terminal Operating Co.,* 358 U.S. 354, 373-75 (1959), their core meaning remains: "If there is any sense at all in making maritime law a federal subject, then there must be some limit set to the power of the states to interfere in the

field of its working."  Grant Gilmore & Charles L. Black, Jr., *The Law of Admiralty* § 1-17, at 48 (2d ed. 1975).  Generally stated, the Supremacy Clause analysis in the maritime law context is this: "Although state law may supplement maritime law where maritime law is silent, or where a local matter is at issue, state law may not be applied where it would conflict with maritime law." *Coastal Iron Works, Inc. v. Petty Ray Geophysical,* 783 F.2d 577, 582 (5th Cir. 1986) (citations omitted).  Put another way, while state law occasionally may be used to fill the gaps in an incomplete and less than perfect maritime system, state law may <u>never</u> be employed to contravene an act of Congress, to prejudice the characteristic features of the maritime law, or to disrupt the harmony maritime law strives to bring to international and interstate relations.  *J. Ray McDermott v. The VESSEL MORNING STAR,* 457 F.2d 815, 818 (5th Cir. 1972) (en banc), *cert. denied*, 409 U.S. 948 (1972).

## C.      OPA is Comprehensive in Scope in Providing Remedies for the B1 Plaintiffs' Oil Spill Damages.

Admiralty law is characterized by both federal statutory law and judicially-created general maritime law.[7]  Congress has spoken comprehensively in the admiralty law field of oil pollution damages by enacting OPA.  *See, e.g.*, S. Rep. No. 101-94, *reprinted in* 1990 U.S.C.C.A.N. 722, 730 (OPA "creates a single federal law providing clean-up authority, penalties and liability for oil pollution").  And, the courts have routinely recognized the comprehensive nature of OPA by OPA's provision of broad remedies for persons damaged as a

---

[7]    General maritime law is "subject to the paramount authority of Congress."  *New Jersey v. New York,* 283 U.S. 336, 348 (1931).  In the case of conflict between the two, it is the statutory law that prevails.  *Miles v. Apex Marine Corp.*, 498 U.S. 19, 31-33 (1990).  Furthermore, congressional legislation preempts the general maritime law "if it speaks directly to the question at issue."  *Barnes v. Andover Co., L.P.*, 900 F.2d 630 (3d Cir. 1990) (*en banc*); *see also, In Re Air Disaster Near Honolulu, Hawaii*, 792 F. Supp. 1541 (N.D. Cal. 1990).  Thus, admiralty recognizes "horizontal" preemption of the federal maritime common law by federal statutory law.  Accordingly, when Congress speaks, especially when it speaks comprehensively, it may displace pre-existing general maritime law.  *City of Milwaukee v. Illinois & Michigan*, 451 U.S. 304, 314 (1981); *Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n,* 453 U.S. 1 (1981).  Indeed, there is a presumption of displacement when a new federal statute is adopted to control a particular subject area.  *City of Milwaukee, supra,* at 314.

result of a maritime pollution incident.  *See, e.g.*, *Targa Midstream Servs. Ltd. P'Ship v. K-FC Transp. Partners, L.P.,* No. Civ. A. G-05629, 2006 WL 2520914, at *2 (S.D. Tex. Apr. 20, 2006) ("OPA created a stricter and more comprehensive liability scheme for oil spill pollution than had existed under prior legislation. . . ."); *Tanguis v. M/V WESTCHESTER*, 153 F. Supp. 2d 859, 867 (E.D. La. 2001) ("OPA 'represents Congress' attempt to provide a comprehensive frame work in the area of marine oil pollution'"); *Gatlin Oil Co. v. United States,* 169 F.3d 207, 209 (4th Cir. 1999) (Congress enacted OPA to provide a "prompt, federally-coordinated response to oil spills in navigable waters of the United States and to compensate innocent victims").

It is therefore of no surprise that courts have found OPA to displace other laws.[8]  *S. Port Marine LLC v. Gulf Oil Ltd. P'Ship*, 234 F.3d 58, 65-66 (1st Cir. 2000).  In *South Port*, the court held that punitive damages were not available under OPA because "Congress's very specific treatment of oil pollution in OPA, which does not provide for punitive damages, supplanted general admiralty and maritime law, which has traditionally provided for the general availability of punitive damages for reckless conduct."  *Id.* at 65.  And in a similar fashion, other courts have agreed that OPA displaces the general maritime law, and the general maritime law preempts state common law, see *infra III.D,* where OPA provides a remedy.  *Tanguis*, *supra,* 153 F. Supp. 2d at 867; *Gabarick,* 623 F. Supp. 2d at 750-51; *Seaboats, Inc. v. Alex C Corp.,* Nos. Civ. A. 01-1284-DPW, 2003 WL 203078, at *11 (D. Mass. Jan. 30, 2003); *Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atlantic Corp.,* 924 F. Supp. 1436, 1447 (E.D. Va. 1996), *aff'd,* 122 F.3d 1062 (4th Cir. 1997), *cert. denied,* 523 U.S. 1021 (1998).

---

[8]   Transocean generally uses the term "preemption" or "displacement" in the context of a choice of law principle whereby federal maritime law is supreme and state law remedies that conflict with maritime law are not legally cognizable for a plaintiff in the event of such a conflict, as discussed in Sections III.B and III.D of this Brief. See, e.g., *Lauritzen v. Larsen,* 345 U.S. 571 (1953); *American Dredging Co. v. Miller,* 510 U.S. 443 (1994).  In this regard, section 2718(a) of OPA does not save common law claims that were not viable due to a conflict with maritime law before and after enactment of OPA, as discussed in detail in Section III.F.

No matter how artfully pleaded, the Plaintiffs' claims are cognizable under OPA, as they seek relief for precisely the types of damages Congress enumerated in OPA's Section 2702(b)(2). Pursuant to OPA, the Plaintiffs may recover a broad range of damages from a Responsible Party, including:

**(A)     Natural resources**

Damages for injury to, destruction of, loss of, or loss of use of, natural resources, including the reasonable costs of assessing the damage, which shall be recoverable by a United States trustee, a State trustee, an Indian tribe trustee, or a foreign trustee.

**(B)     Real or personal property**

Damages for injury to, or economic losses resulting from destruction of, real or personal property, which shall be recoverable by a claimant who owns or leases that property.

**(C)     Subsistence use**

Damages for loss of subsistence use of natural resources, which shall be recoverable by any claimant who so uses natural resources which have been injured, destroyed, or lost, without regard to the ownership or management of the resources.

**(D)     Revenues**

Damages equal to the net loss of taxes, royalties, rents, fees, or net profit shares due to the injury, destruction, or loss of real property, personal property, or natural resources, which shall be recoverable by the Government of the United States, a State, or a political subdivision thereof.

**(E)     Profits and earning capacity**

Damages equal to the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources, which shall be recoverable by any claimant.

**(F)     Public services**

Damages for net costs of providing increased or additional public services during or after removal activities, including protection

> from fire, safety, or health hazards, caused by a discharge of oil, which shall be recoverable by a State, or a political subdivision of a State.

33 U.S.C. § 2702(b)(2).  On pages 51-53 of the First Amended B1 Master Complaint, and on pages 8-10 of the First Amended B1 Master Claim in Limitation, there are identified thirteen categories of Plaintiffs who allege they have suffered "property losses, economic damages, and/or other costs (including removal costs) as a result of the Spill."  **B1, pp. 51-53, ¶ 209 and pp. 8-10, ¶ 28.**  Virtually all of these categories of Plaintiffs and categories of damages are clearly covered and provided for under OPA's Section 2702(b)(2)(A)-(F).

Thus, OPA displaces general maritime law, and general maritime law preempts state common law, *infra* III.D, leaving only a narrowly defined authority for states to enact mini-OPAs or similar solid waste laws.

**D.    *General Maritime Common Law Would Preempt All State Common Law Claims Even If OPA Had Not Been Enacted.*[9]**

General maritime law applies to the BP Oil Spill, *supra,* III-B, and preempts the Plaintiffs' state common law claims even absent the comprehensive scheme set forth in OPA.  In *State of Louisiana ex rel. Guste v M/V TESTBANK,* the *en banc* Fifth Circuit ruled that federal maritime law preempts state common law claims for negligence and public nuisance in maritime vessel pollution cases.  752 F.2d 1019 (5th Cir. 1984), *cert. denied,* 477 U.S. 903 (1986).  In *TESTBANK,* containers aboard a vessel spilled more than twelve tons of pentachlorophenol in the Mississippi River Gulf Outlet, which is located entirely within the territorial waters of Louisiana.  Certain claimants alleged, among other things, liability under Louisiana negligence and public nuisance law.  *Id.*  The *en banc* Fifth Circuit held that such state claims were

---

[9]    To the extent not preempted by OPA, any general maritime common law claims asserted in the First Amended B1 Master Complaint against Transocean remain subject to the Limitation injunction, stay, and restraining order entered by the Court (Judge K. Ellison) on June 14, 2010, in C. A. No. 4:10-cv-1721 [after transfer, 10-2771]. *United States v. BIG SAM*, 681 F.2d 432 (5th Cir. 1982).

foreclosed under the rule of *Robins Dry Dock,* a decision that precludes damages for economic loss resulting from the defendant's negligence absent physical harm to person or to property in which the plaintiff has a proprietary interest. *Id.* (discussing *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 308-09 (1927)).   In so doing, the *en banc* Fifth Circuit reasoned:

> While our maritime decisions are informed by common law developments in the state courts, there is no requirement, as in diversity cases, that state law be adopted.   Indeed the federal interest in protecting maritime commerce is often best served by the establishment of uniform rules of conduct.   We believe that such is the case here. . . .   To permit recovery here on state law grounds would undermine the principles we seek to preserve today. ***Accordingly, we decline to adopt plaintiffs' state law claims as theories of recovery.***

*TESTBANK*, 752 F.2d at 1032 (emphasis added).   Furthermore, although the specific holding in *TESTBANK* dealt only with state law claims based on negligence and nuisance, in *Marastro Compania Naviera, S.A. v. Canadian Maritime Carriers, Ltd.,* the Fifth Circuit subsequently ruled that federal law applied to a trespass claim, in a matter falling within the Court's admiralty and maritime jurisdiction. 959 F.2d 49, 53 (5th Cir. 1992).   The *Marastro* court ruled that a federal court sitting in admiralty should necessarily borrow from a variety of sources of federal law "rather than state law which would 'impair the uniformity and simplicity which is a basic principle of the federal admiralty law. . . .'"   *Id.* (quoting *Nissan Motor Corp. v. Md. Shipbuilding,* 544 F. Supp. 1104, 1111 (D. Md. 1982), and citing *Byrd v. Byrd*, 657 F.2d 615 (4th Cir. 1981)).   According to the *Marastro* court, federal general common law "should control to determine the law of maritime trespass, in order to promote uniformity in general maritime law." *Id.* at 53.

Because of the controlling *en banc* Fifth Circuit decision in *TESTBANK* and the Fifth Circuit's later decision in *Marastro*, the Plaintiffs' state common law claims for negligence, gross negligence, nuisance, and trespass are preempted and must be dismissed.   But further, dismissal of all of these state claims, and any state claims based upon fraudulent concealment, is

also warranted under the distinctive features of admiralty preemption.  *See Askew v. Am. Waterways Operators, Inc.*, 411 U.S. 325 (1973).

Under the admiralty preemption doctrine, to determine when state law may supplement general maritime law, federal courts sitting in admiralty consider several factors.  *See, e.g., Exxon Corp. v. CHICK KAM CHOO*, 817 F.2d 307, 316-18 (5th Cir. 1987), *rev'd on other grounds,* 486 U.S. 140 (1988).  *CHICK KAM CHOO* identified five factors that inform maritime preemption analysis.  Four of the five factors are relevant here:  (1) state law is not preempted when it contains a detailed scheme to fill a gap in maritime law; (2) state law is not preempted when the law regulates behavior in which the state has an especially strong interest via its "police power"; (3) maritime law preempts state law whenever a uniform rule will facilitate maritime regulation; and (4) maritime law preempts state law when the state law impinges on international or interstate relations.  *Id.* at 316-19.

Applying the *CHICK KAM CHOO* factors to this case, the First Amended B1 Master Claim in Limitation and Master Complaint cannot use state common law to displace substantive maritime law.  First, by reason of well-entrenched maritime comparative fault,[10] economic loss,[11] and indemnity and contribution doctrines,[12] it cannot be suggested that state common law negligence, gross negligence, nuisance, trespass, and fraudulent concealment principles provide detailed distinctions that are absent from or of little concern to federal maritime law.  Of course, the states have a legitimate interest in protecting their coastlines and their economies related to fishing and similar industries.  But, as set forth above, the Fifth Circuit has recognized that the general maritime law should be applied to claims for pollution damage caused by vessels

---

[10]   *See generally United States v. Reliable Transfer Co.*, 421 U.S. 397 (1975); *Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406 (1953).

[11]   *See generally Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303 (1927).

[12]   *See generally Cooper Stevedoring Co. v. Fritz Kopke, Inc.*, 417 U.S. 106 (1974).

operating on navigable waterways. *TESTBANK*, 752 F.2d at 1032; s*ee, e.g.*, *IMTT-Gretna v. ROBERT E. LEE SS*, 993 F.2d 1193 (5th Cir. 1993), *supplemented by* 999 F.2d 105 (5th Cir. 1993); s*ee also In re Taira Lynn Marine Ltd.,* No. 5, LLC, 444 F.3d 371, 377 (5th Cir. 2006).

More significantly, given the *en banc* Fifth Circuit's decision in *TESTBANK*, the B1 Claimants and Plaintiffs cannot genuinely contend that displacement of general maritime law with state land-based torts of negligence, gross negligence, public and private nuisance, trespass, and fraudulent concealment would not conflict with the characteristic features of maritime law and defeat its desired uniformity.  If the B1 Bundle Claimants and Plaintiffs were allowed to supplant clearly applicable substantive law—the general maritime law—with state land-based common law claims, then Transocean would be potentially subjected to claims under Alabama, Florida, Texas, Louisiana, Mississippi, and other states that each apply their own set of laws. Again, such would be counter to uniformity principles that the general maritime law seeks and would subject Transocean to a variety of legal regimes that are wholly inconsistent with entrenched maritime legal doctrines, such as limitations on damages under *Robins Dry Dock*, and, depending upon the Gulf state and its laws, maritime comparative fault and indemnity and contribution principles.[13]  Applying a variety of Gulf state common laws to Transocean's alleged liability arising out of the BP Oil Spill would displace these important components of the maritime tort regime, thus destroying these essential features of maritime law and defeating uniformity.[14]  Thus, federal general maritime law preempts the B1 state common law claims.

---

[13]   *See, e.g., State of Md. Dep't. of Natural Res. v. Kellum,* 51 F.3d 1220 (4th Cir. 1995) (holding that Maryland statute imposing strict liability for damages to oyster bar was preempted by federal maritime law).

[14]   *TESTBANK*, 752 F.2d at 1032.  For example, in *Norfolk & Portsmouth Belt Line R. Co. v. M/V MARLIN*, 2:08-CV 134, 2009 WL 1974298 (E.D. Va. Apr. 3, 2009), a vessel went outside the navigation channel and allided with a railroad bridge.  The Eastern District of Virginia found that applying state law would "upset uniformity principles within maritime law because it would require a different calculation of damages depending upon the location of the allision or the property affected."  *Id*. at *4.  Similarly, allowing the B1 Bundle Economic Loss Plaintiffs to supplement their claims with state common law as to the *Deepwater Horizon* incident would create

Accordingly, for this additional reason, the Plaintiffs' claims under state common law must be dismissed with prejudice.

**E.**     ***This Court Has Exclusive Jurisdiction Over the B1 Claims Under OCSLA and, Under OCSLA, Federal Law Preempts All State Claims.***

In the First Amended B1 Master Claim in Limitation and the First Amended B1 Master Complaint, there is no specific mention of OCSLA.  In their First Amended Master Complaint, however, the B1 Plaintiffs acknowledge that the BP Oil Spill arises out of "oil exploration, drilling and production-related operations in Mississippi Canyon Block 252, the location known as 'Macondo' where the Spill originated."  **B1, p. 53, ¶ 210.**  Therefore, notwithstanding the Master Complaint's lack of any explicit reference to OCSLA, all B1 claims are still subject to OCSLA.[15]  That is because OCSLA declares that "the subsoil and seabed of the outer Continental Shelf appertain to the United States and are subject to its jurisdiction, control, and power of disposition. . . ."  43 U.S.C. § 1332(1).  OCSLA thus establishes "national authority over the OCS at the expense of both foreign governments and the governments of the individual states."  *Tenn. Gas Pipeline v. Houston Cas. Ins. Co.,* 87 F.3d 150, 153 (5th Cir. 1996).  Stated another way, "OCSLA's jurisdictional grant is broad, and the Act covers a wide

---

an unharmonious situation in which a different outcome could arise in each state where oil allegedly washed ashore.

[15]  Courts have previously held that the failure to refer specifically to OCSLA does not transform a federal claim over which federal courts have jurisdiction into a state law claim.  *See, e.g., Fields v. Pool Offshore, Inc.,* No. Civ. A. 97-3170, 1997 WL 767634, at *3 (E.D. La. Dec. 8, 1997) ("The fact that plaintiff's state court petition did not invoke jurisdiction under OCSLA is not dispositive . . ."); *White v. Chevron, USA, Inc.,* CIV. A. No. 90-113, 1990 WL 28167, at *1 (E.D. La. Mar. 14, 1990) ("Although in this case, the plaintiffs did not plead OCSLA in their state court petition but only alleged state causes of action, the statute and the jurisprudence clearly demonstrate that because this action arose on the outer continental shelf, the plaintiffs' exclusive remedy is pursuant to OSCLA.");  *see also Cameron Offshore Boats, Inc. v. Alpine Ocean Seismic Surveys,* 862 F. Supp. 1578, 1584 (W.D. La. 1994) (court had jurisdiction although "petition does not specifically refer to OCSLA"). It is therefore irrelevant that the Plaintiffs base their claims on state common law.  Nor would it be relevant if the Plaintiffs sought to circumvent OCSLA by asserting that they will never at any time in the future plead any claim or cause of action arising under any federal law.  The Fifth Circuit has found OCSLA jurisdiction even when the plaintiff "admits forthrightly that it attempted to craft its lawsuit to avoid federal removal jurisdiction." *Tenn. Gas Pipeline v. Houston Cas. Ins. Co*., 87 F.3d 150, 152 (5th Cir. 1996).  Plaintiffs thus cannot avoid the force of OCSLA through clever pleading, or through omission of any reference to OCSLA.

range of activity occurring beyond the territorial waters of the states on the outer continental shelf of the United States." *Texaco Exploration & Prod., Inc. v. AmClyde Engineered Prods. Co.,* 448 F.3d 760, 768 (5th Cir. 2006) (citations and internal quotation marks omitted).

The purposes of OCSLA are many, and embrace not just the development and production of mineral resources on the Shelf, but also provide for (i) protection of the environment, including wildlife, (ii) consideration of the interests and input of affected states and local governments, and (iii) harmonization of OCSLA with the operations of the Oil Pollution Act of 1990, which establishes the Oil Spill Liability Trust Fund.  Specifically, OCSLA's relevant purposes, among other things, are to:

> * * *
>
> (2)     preserve, protect, and develop oil and natural gas resources in the Outer Continental Shelf in a manner which is consistent with the need (A) to make such resources available to meet the Nation's energy needs as rapidly as possible, (B) to balance orderly energy resource development with protection of the human, marine, and coastal environments, (C) to insure the public a fair and equitable return on the resources of the Outer Continental Shelf, and (D) to preserve and maintain free enterprise competition;
>
> * * *
>
> (4)     provide States, and through States, local governments, which are impacted by Outer Continental Shelf oil and gas exploration, development, and production with comprehensive assistance in order to anticipate and plan for such impact, and thereby to assure adequate protection of the human environment;
>
> * * *
>
> (8)     *establish an oil spill liability fund* to pay for the prompt removal of any oil spilled or discharged as a result of activities

on the Outer Continental Shelf and for any damages to *public or private interests* caused by such spills or discharges;

\* \* \*

43 U.S.C. § 1802 (emphasis added).

National authority over the OCS is exercised in two interconnected ways.  First, OCSLA "makes federal law exclusive in its regulation of the OCSLA . . . ," except where substantial gaps exist in the coverage of federal law.  *See infra* 22-23; *Tenn. Gas Pipeline,* 87 F.3d at 153; *see also Gulf Offshore Co. v. Mobil Oil Corp.,* 453 U.S. 473, 480-481 (1981); 43 U.S.C. § 1333.  Second*,* OCSLA grants federal district courts broad jurisdiction to decide *any* dispute "arising out of, or in connection with" operations conducted on the OCS:

> [T]he district courts of the United States shall have jurisdiction of cases and controversies arising out of or in connection with (A) *any* operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals. . . .

43 U.S.C. § 1349(b)(1) (emphasis added); s*ee also EP Operating Ltd. P'ship v. Placid,* 26 F.3d 563, 569 (5th Cir. 1994) ("[B]road reading of the jurisdictional grant of section 1349 is supported by the expansive substantive reach of the OCSLA."); *Tenn. Gas Pipeline*, 87 F.3d at 154 (OCSLA's jurisdictional grant is "very broad").  Precisely because the jurisdictional grant of OCSLA is so "broad," the Fifth Circuit has recognized that "the Act covers a wide range of activity occurring beyond the territorial waters of the States on the Outer Continental Shelf." *Texaco Exploration & Prod. Inc. v. AmClyde Engineered Prods. Co.,* 448 F.3d at 768 (5th Cir. 2006) (citations and quotation marks omitted); *Walsh v. Seagull Energy Corp.*, 836 F. Supp. 411, 417 (S.D. Tex. 1993) (observing that there can be "no dispute" that the "jurisdictional grant of OSCLA is *more broad* than [the coverage of OCSLA under section 1333(a)(1)]") (emphasis added).

In deciding whether OCSLA's broad jurisdictional grant of federal authority gives a court jurisdiction, the courts routinely perform a two-part analysis.  This two-part analysis has been applied previously by this Court in an action filed by the State of Louisiana involving the BP Oil Spill.  *See In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on the April 20, 2010,* 2:10-md-02179, Rec. Doc. 470 (E.D. La. Oct. 6, 2010) (Ex. A).  In that action, the State of Louisiana filed suit against various BP entities for economic losses associated with the BP Oil Spill.  BP removed the action.  The plaintiff filed a motion to remand, and BP opposed, arguing that § 1349 of OCSLA clearly supported the Court's original subject-matter jurisdiction, and therefore removal.  In considering whether OCSLA's broad jurisdictional grant applied to the BP Oil Spill, this Court ruled that § 1349 of OCSLA vested this Court with original jurisdiction:

> Defendants were exploring and producing minerals, namely oil, from the Outer Continental Shelf.  It is these activities that allegedly caused the April 20, 2010 explosion and the resulting oil spill.  For these reasons, this Court finds that Defendants' activities should be classified as an "operation conducted on the Outer Continental Shelf, which involved the exploration and production of minerals."  Therefore, Defendants were conducting an operation as defined under § 1349.
>
> *   *   *   *
>
> These facts clearly satisfy the "but-for" test because the oil and other contaminants would not have entered into the State of Louisiana's territorial waters "but for" Defendants' drilling and exploration operation.  Accordingly, it is clear that original jurisdiction rests with this Court pursuant to § 1349(b)(1).

*Id.* at *5-8.

The Northern District of Florida has also held that OCSLA's broad jurisdictional grant applies to economic loss claims arising from the BP Oil Spill:  "As a matter of plain English, § 1349(b)(1) provides federal jurisdiction over the Plaintiff's claim, because the claim arises out

of, and is connected with, the Deepwater Horizon's oil-related operations on the Continental Shelf. ***That begins and ends the proper analysis of the jurisdictional issue as presented in this case.***" *See Phillips v. BP PLC.*, 4:10-cv-00259-RH-WCS, Rec. Doc. 19 (N.D. Fla. Aug. 17, 2010) (emphasis added).

When OCSLA applies, it "makes federal law exclusive in its regulation of the OCS. . . ." *Tenn. Gas Pipeline,* 87 F.3d at 153; *see also Gulf Offshore,* 453 U.S. at 480-81. To fill any "gaps" in federal legal coverage, OCSLA provides that the applicable law of the adjacent state may be applied as "surrogate federal law," but <u>only</u> to the extent state law is not "inconsistent . . . with other Federal laws . . . now in effect or hereafter adopted . . . ." 43 U.S.C. § 1333(a)(2)(A); *Gulf Offshore,* 453 U.S. at 480-81; *see also Hufnagel v. Omega Serv. Indus., Inc.,* 182 F.3d 340, 349 (5th Cir. 1999); *EP Operating Ltd. P'ship,* 26 F.3d at 566; *Union Tex. Petroleum Corp. v. PLT Eng'g, Inc.,* 895 F.2d 1043, 1052 (5th Cir. 1990) ("Any other result here would frustrate the Congressional purpose that the OCS be treated as an area of exclusive federal jurisdiction within the state where state law will apply to fill in the gaps in the federal law.[16]

The Fifth Circuit has adopted a three-part test to answer the question of when, if ever, state law may be applied to shelf activities. *Union Tex. Petroleum Corp. v. PLT Eng'g*, 895 F.2d at 1047 ("*PLT*"). Under the *PLT* test, for state law to apply as "surrogate" federal law, three pre-conditions must be met: (1) the controversy must arise on a situs covered by OCSLA, (2) federal

---

[16] In amending OCSLA to expand its coverage in 1978, the House Select Committee on the Outer Continental Shelf observed in its report that:

> It is thus made clear that ***Federal*** law is to be applicable to all activities on all devices in contact with the seabed for exploration, development, and production. The committee intends that ***Federal law is, therefore, to be applicable to*** activities on drilling ships, ***semi-submersible drilling rigs***, and other watercraft, when they are connected to the seabed by drillstring, pipes, or other appurtenances, on the OCS for exploration, development, or production purposes.

H. R. REP. NO. 95-590, at 128 (1977) (emphasis added), *reprinted in* 1978 U.S.C.C.A.N. 1450, 1534.

maritime law must not apply of its own force, and (3) the state law must not be inconsistent with federal law.  *Id.  See, e.g.*, *Gardes Directional Drilling v. U.S. Turnkey Exploration,* 98 F.3d 860, 864-65 (5th Cir. 1996).

For the reasons set forth previously, *supra* III-D, OPA, a federal law, applies of its own force to the B1 claims and controls to the exclusion of state common law.  There is thus no "gap" in federal legal coverage to fill with state law.[17]  And, to the extent OPA is not the Plaintiffs' exclusive remedy, the general maritime law controls, to the exclusion of state common law. There is still no "gap" in federal legal coverage to fill in with state law.  It therefore follows that state common law may not apply as "surrogate federal law" to the BP Oil Spill, as federal law (either OPA or the general maritime law) preempts state common law.  Accordingly, all B1 state common law claims must be dismissed pursuant to Rule 12(b)(6).

**F.      *OPA's Section 2718(a) Neither Creates Nor Saves Any State Common Law Claims.***

OPA's § 2718(a)(1) preserves the authority "of any State or political subdivision" to enact mini-OPAs to impose "additional liability" with respect to "the discharge of oil . . . within such State . . . ."  This narrowly crafted provision states:

> **§ 2718.  Relationship to other law**
>
> **(a)      Preservation of State authorities; Solid Waste Disposal Act**
>
> > Nothing in this chapter or the Act of March 3, 1851 shall—
> >
> > (1)      affect, or be construed or interpreted as preempting, the authority of any State or political subdivision thereof from imposing any additional liability or requirements with respect to—

---

[17]   OCSLA may borrow the "applicable" and not inconsistent laws of an adjacent state as "surrogate" federal law.  "Applicable," according to the Fifth Circuit, must be read as "necessity to fill a significant void or gap."  *Le Sassier v. Chevron USA, Inc.*, 776 F.2d 506, 509 (5th Cir. 1985).  If a federal statutory scheme gives rise to a remedy, federal law applies to the exclusion of state law.  *Id.*  OPA is a federal law which provides a remedy to oil spill victims.  Thus, OPA eliminates any such "gap" in federal legal coverage for the Plaintiffs' claims.  *See, supra,* III-D, referring to the broad range of damages recoverable from a responsible party under OPA.

> (A)     the discharge of oil or other pollution by oil within such State; or
>
> (B)     any removal activities in connection with such a discharge; or
>
> (2)     affect, or be construed or interpreted to affect or modify in any way the obligations or liabilities of any person under the Solid Waste Disposal Act (42 U.S.C. 6901 et seq.) or State law, including common law.

33 U.S.C. § 2718(a).  Section 2718(a) does not save the B1 state common law claims from preemption.

OPA governs the discharge of oil from both onshore facilities and offshore facilities.  Congress therefore was mindful of the states' interests of regulating facilities sitting within a state's borders.  Section 2718 makes perfect sense when understood in this context.  Section 2718 cannot be read to abrogate general maritime law, as § 2718(a)(2) does not disturb the long-standing and established admiralty preemption of state common law claims.  In fact, OPA contains an actual "savings provision," but this savings provision is located in OPA's sub-chapter III.  In § 2751(e)(1), OPA provides:

> **(e)     Admiralty and maritime law**
>
> Except as otherwise provided in this chapter, this chapter does not affect—
>
> (1)     admiralty and maritime law;

33 U.S.C. § 2751(e)(1).

Further, by its own explicit terms, § 2718(a) provides that "[n]othing in this chapter [OPA] or the Act of March 3, 1851 [the Shipowners' Limitation of Liability Act] shall – (2) affect, or be construed or interpreted to affect or modify. . . State law, including common law."  33 U.S.C. § 2718(a)(2) (bracketed expressions added).  The general maritime law is neither OPA nor the Shipowners' Limitation of Liability Act, to which § 2718(a) refers.  As set

forth previously, *supra* III-D, the general maritime law applies to the B1 claims because these claims arise from the explosion and sinking of a semi-submersible drilling rig, the *Deepwater Horizon*, a vessel operating in the navigable waters of the United States.   And the general maritime law prohibits application of state common law under the admiralty preemption doctrine.

Section 2718(a), which appears under the sub-title "Preservation of State authorities," merely preserves to the states the right to pass mini-OPA legislation.  It does not create any new state law, nor does it permit the application of state law to claims that arise squarely within admiralty's jurisdiction, particularly when the state laws are otherwise in conflict with maritime law.[18]   The import of OPA's actual savings clause relating to admiralty and maritime law is clear:   OPA "does not affect – (1) admiralty and maritime law. . . ."   And, admiralty and maritime law is clear:  State law may never apply when it conflicts with admiralty law.

Moreover, Section 2718(a)(2) does not save state common law claims from OCSLA preemption.  By its own explicit terms, Section 2718(a) provides that nothing in OPA or in the Limitation of Liability Act shall affect or modify state law, including common law, that existed at the time of OPA's enactment.   OCSLA is neither OPA nor the Shipowners' Limitation of Liability Act, to which Section 2718(a) refers.   OCSLA, which applies to this blow-out arising from shelf drilling activities, applies federal maritime law, preempting application of state common law.  *See supra* III-E.

Furthermore, under its own structure and terminology, Section 2718(a)(2) does not save state common law claims that did not exist in favor of Plaintiffs due to the supremacy of the

---

[18]   The Fifth Circuit has repeatedly recognized that the general maritime law should be applied to claims for pollution damage caused by vessels operating on navigable water and has, on numerous occasions, specifically declined to apply state common law when it conflicts with maritime law, specifically with respect to the subject of compensating oil spill victims.  *TESTBANK, supra,* 752 F.2d at 1032; *ROBERT E. LEE SS, supra,* 993 F.2d 1193; *In re Taira Lynn Marine Ltd.,* No. 5, *supra,* 444 F.3d 371, 377.

general maritime law and its preemption of state law.  Section 2718 is entitled "Relationship to Other Law," and contains two sub-headings which are "Preservation of State Authorities" and "Solid Waste Disposal Act."  The first sub-heading "Preservation of State Authorities" relates to subsection (a)(1), which deals with mini-OPA statutes, *i.e.*, legislation passed by the individual states or political subdivisions of states imposing additional liability or requirements upon polluters, beyond OPA's scheme.  The second sub-heading, "Solid Waste Disposal Act," relates to subsection (a)(2), which contains the phrase "Solid Waste Disposal Act (42 U.S.C. § 6901 *et seq.*) or State law, including common law."  Thus, from the structure of the statute alone, the reference to "State law including common law" relates to laws specific to solid waste disposal.

It follows that Section 2718(a)(2) provides a savings feature for claims under the federal Solid Waste Disposal Act (42 U.S.C. § 6901 *et seq.*), a federal statute dealing with the regulation of solid and hazardous waste.[19]  In that same subsection, the reference to "or State law, including common law" appears, immediately following the reference to the SWDA, now RCRA.  The phrase "or State law, including common law," must logically be read to exclude from OPA's broad preemptive reach state statutes or state common law that provide the state equivalent of the SWDA/RCRA.  But the First Amended B1 Master Complaint does not assert any viable claim under a State Solid Waste Disposal Statute or under any state common law specific to the subjects of hazardous or non-hazardous solid waste disposal.  To the contrary, the First Amended Claim and Master Complaint's allegations of negligence, gross negligence, nuisance, trespass, and fraudulent concealment are garden variety allegations which derive from the various Gulf States' fundamental tort principles.

---

[19]   The SWDA became law on October 20, 1965.  In its original form, it was a broad attempt to address the solid-waste problems confronting the nation through a series of research projects, investigations, experiments, training, demonstrations, surveys, and studies.  The decade following its passage revealed that the SWDA was not sufficiently structured to resolve the growing mountain of waste-disposal issues facing the country.  As a result, the Resource Conservation and Recovery Act of 1976 ("RCRA"), which became law on October 21, 1976, significantly amended the SWDA.  The SWDA as amended in 1976 is more commonly known as RCRA.

Judge Edith Brown Clement's opinion in *Muse v. Freeport McMoran, Inc.,* CIV. A. 91-4247, 1992 U.S. Dist. LEXIS 13397, 1992 WL 233771 (E.D. La. Aug. 28, 1992), is instructive in this respect, although it did not deal with OPA's § 2718(a)(2).   In *Muse,* Judge Clement addressed a party's assertion of state tort claims in a matter falling within the Court's maritime jurisdiction.   Recognizing that, in an area in which a state's regulatory or "police" power was involved, state law may legitimately apply, the Court nevertheless ruled that La. Civ. Code arts. 2315 to 2318 "do not represent a detailed statutory scheme or an exercise of the State's police power.   Instead, they embody Louisiana's fundamental tort law principles." *Muse,* at *2. Following from that reasoning, Judge Clement dismissed all state law claims. *Id.*

In OPA's Section 2718(a)(2), Congress recognized that the regulation of solid waste is an area in which the states have a legitimate interest in imposing their own laws.   Congress acknowledged this area of local state concern by including the phraseology "or State law, including common law," immediately following the reference to the federal SWDA, now RCRA. Therefore, OPA makes it abundantly clear that it was not intended in any way to "affect, or be construed or interpreted to affect or modify in any way" the obligations of any person under any state common or statutory law dealing with the regulation of solid waste, just as OPA does not affect any obligations of any person under the SWDA/RCRA.   But, just as in *Muse,* the various Gulf States' common law of negligence, gross negligence, nuisance, trespass, and fraudulent concealment do not represent a detailed statutory scheme or the exercise of the State's police power specific to the regulation of solid or hazardous waste—they represent general tort principles, an area preempted by maritime law.   Thus, such state common law claims did not exist at the time OPA was enacted, OPA did not create any state common law claims, and none of them were saved by Section 2718(a)(2).

## IV.

## THE PLAINTIFFS' CLAIMS FOR "FRAUDULENT CONCEALMENT" MUST BE DISMISSED

The First Amended B1 Master Complaint fails to state a claim for "fraudulent concealment" under Rules 9(b) and Rule 12(b)(6).  The Master Complaint seeks to recover against Transocean for its alleged "fraudulent concealment of material facts concerning the Spill."  **B1, p. 182, ¶ 713.**  Plaintiffs allege that Transocean "misrepresented and concealed" the safety record and condition of the *Deepwater Horizon* and various components of the vessel. **B1, p. 184, ¶¶ 725-728.**  According to Plaintiffs, this "induced Plaintiffs to act or to refrain from acting to protect their property, businesses, livelihoods and income."  **B1, p. 184, ¶ 729.**

### A.    *The Plaintiffs' Pleading Lacks the Particularity Required by Rule 9(b).*

Plaintiffs' pleadings in support of their "fraudulent concealment" claim do not meet the requirements of Federal Rule of Civil Procedure 9(b), which states that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b).  The Fifth Circuit interprets Rule 9(b) strictly, requiring the plaintiff to "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 206-07 (5th Cir. 2009), *cert. denied*, 130 S. Ct. 199 (2009) (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997)).  In cases concerning the omission of facts, Rule 9(b) requires the claimant "to plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the representations misleading." *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1174 (5th Cir. 2006) (quoting *United States ex rel. Riley v. St. Luke's Episcopal*

*Hosp.*, 355 F.3d 370, 381 (5th Cir. 2004)).   A plaintiff must also allege facts showing that a defendant had a duty to disclose the omitted facts.  *Carroll*, 470 F.3d at 1174.

Here, Plaintiffs' allegations do not provide the time, place, or contents of any misrepresentation by Transocean, nor do the allegations connect any particular statement to an individual speaker with regard to the condition of the *Deepwater Horizon* or its components. With regard to Transocean's alleged concealment of material facts, Plaintiffs' pleading fails to indicate "the place in which the omissions should have appeared."  *See Riley*, 355 F.3d at 381. They allege no facts showing when, if ever, it was incumbent upon Transocean, which never had any dealings or a relationship with these Plaintiffs, to disclose any information to them at all, nor how Transocean should have done so.  *See Carroll*, 470 F.3d at 1174.  As a result, Plaintiffs' pleading in support of their fraudulent concealment claim falls short of the kind and degree of particularity required by Rule 9(b) and the Fifth Circuit.  Because Plaintiffs have failed to satisfy Rule 9(b), their claim for fraudulent concealment must be dismissed.

**B.**    ***The Plaintiffs Have Failed to State a Claim Under Any Potentially Applicable State Law.***

As set forth below, the Plaintiffs' allegations also fail to state a cognizable claim under the laws of Louisiana, Texas, Mississippi, Alabama, or Florida.

### 1.    The Plaintiffs' Allegations Fail to State a Claim Under Louisiana Law

The Louisiana Civil Code defines fraud as follows:

> Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other.  Fraud may result from silence or inaction.

LA. CIV. CODE ANN. ART. 1953.  To find fraud from silence or suppression of the truth, there must exist a duty to speak or to disclose information.  *Pioneer Valley Hosp., Inc. v. Elmwood Partners, L.L.C.*, 01-453 (La. App. 5 Cir. 10/17/01); 800 So. 2d 932, 937.  A legal duty to

disclose exists only if there is privity of contract or a fiduciary relationship between the parties. *Id.*; *McLachlan v. New York Life Ins. Co.*, 488 F.3d 624, 628 (5th Cir. 2007) (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Cagle*, 68 F.3d 905 (5th Cir. 1995)).   Because there is no fiduciary duty or contract between Transocean and any Plaintiff, and Plaintiffs do not allege any, Plaintiffs cannot state a claim for "fraudulent concealment" against Transocean under Louisiana law.  Plaintiffs have also failed to allege any facts showing the intent of Transocean to "obtain an unjust advantage" or "to cause a loss or inconvenience" to them.  Intent is an essential element of a fraud claim.  *See Sun Drilling Prods. Corp. v. Rayborn*, 2000-1884 (La. App. 4 Cir. 10/3/01); 798 So. 2d 1141, 1152, *writ denied*, 2001-2939 (La. 1/25/02); 807 So. 2d 840.   Accordingly, under Louisiana law, Plaintiffs' fraudulent concealment claims must be dismissed.

### 2.      The Plaintiffs' Allegations Fail to State a Claim Under Texas Law

To state a claim of fraud by misrepresentation under Texas law, a plaintiff must sufficiently allege (1) a misrepresentation that (2) the speaker knew to be false or made recklessly (3) with the intention to induce the plaintiff's reliance, followed by (4) actual and justifiable reliance (5) causing injury. *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001).   Fraudulent concealment or non-disclosure is a subcategory of fraud that occurs when a party with a duty to disclose a material fact fails to disclose that fact. *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997).  "Generally, no duty of disclosure arises without evidence of a confidential or fiduciary relationship," and Plaintiffs allege no such relationship in the instant case.  *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998).   Outside of such a relationship, Texas courts have recognized a duty to disclose under certain circumstances only between parties to a business transaction or relationship.  *See Bradford v. Vento*, 48 S.W.3d 749, 755-56 (Tex. 2001).  Plaintiffs do not allege any commercial relationship or transaction with Transocean that could impose a duty on Transocean to disclose

anything to Plaintiffs.  In addition, Plaintiffs fail to allege any intent of Transocean to induce Plaintiffs' reliance on any alleged misrepresentations or omissions. *See United Teacher Assocs. Ins. Co. v. Union Labor Life Ins. Co.*, 414 F.3d 558, 567-68 (5th Cir. 2005) ("Courts in Texas have consistently held that fraud by nondisclosure or concealment requires proof of all of the elements of fraud by affirmative misrepresentation, including fraudulent intent."). As a result, Plaintiffs have failed to state a claim for fraud or fraudulent concealment under Texas law. Therefore, Plaintiffs' claims of fraudulent concealment under Texas law must be dismissed.

     **3.**     The **Plaintiffs' Allegations Fail to State a Claim Under Mississippi Law**

In order to state a claim for common law fraud in Mississippi, a plaintiff must allege: (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) reliance upon its truth, (8) a right to rely on the representation, and (9) an injury proximately caused by the reliance on the representation. *Mabus v. St. James Episcopal Church*, 884 So. 2d 747, 762 (Miss. 2004).  The omission or concealment of material facts can constitute a misrepresentation, but, in such a case, the plaintiff must demonstrate that the defendant "took some action, affirmative in nature, which was designed or intended to prevent and which did prevent the discovery of the facts giving rise to the fraud claim." *Rankin v. Brokman*, 502 So. 2d 644, 646 (Miss. 1987).  In this case, Plaintiffs' allegations fail to state a claim for fraud under Mississippi law because they fail to plead any affirmative act of concealment or fraudulent intent by Transocean with regard to any alleged misrepresentation or omission or any reliance by the Plaintiffs.  Therefore, Plaintiffs' claims of fraudulent concealment under Mississippi law must be dismissed.

4.      **The Plaintiffs' Allegations Fail to State a Claim Under Alabama Law**

To state a cause of action for "fraud by suppression" as provided in the Alabama Code, a plaintiff must establish: (1) that the defendant had a duty to disclose material facts, (2) that the defendant concealed or failed to disclose those facts, (3) that the concealment induced the plaintiff to act, and (4) that the plaintiff's action resulted in harm to the plaintiff. *Hughes v. Hertz Corp.*, 670 So. 2d 882, 887 (Ala. 1995) (citing *Interstate Truck Leasing, Inc. v. Bender*, 608 So. 2d 716 (Ala. 1992); ALA. CODE 1975, § 6-5-102).   The related causes of action of "deceit" and "fraudulent deceit" under §§ 6-5-104 and -105 of the Alabama Code result "from either a willful or a reckless misrepresentation or a suppression of material facts with an intent to mislead." *Hughes*, 670 So. 2d at 888.   For each of these causes of action, mere silence is not fraudulent in the absence of a duty to disclose.   A duty to disclose may arise from the particular circumstances of the case, from a confidential relationship, or from a request for information. *Hughes*, 670 So. 2d at 887-88.   When "parties to a transaction deal with each other at arm's length, with no confidential relationship, no obligation to disclose information arises when the information is not requested."   *Mason v. Chrysler Corp.*, 653 So. 2d 951, 954-55 (Ala. 1995). Here, Plaintiffs allege no relationship with Transocean or any request for information that could support a duty to disclose under Alabama law.   In addition, Plaintiffs fail to plead that Transocean intended to mislead them with the alleged misrepresentations and omissions. *See Hughes*, 670 So. 2d at 888.   Accordingly, Plaintiffs fail to state a claim for fraudulent suppression, deceit, and fraudulent deceit under the Alabama Code.

5.      **The Plaintiffs' Allegations Fail to State a Claim Under Florida Law**

To state a cause of action for fraud under Florida law, a party must allege: (1) a false statement concerning a material fact, (2) the representor's knowledge that the representation is false, (3) an intention that the representation induce another to act on it, and (4) consequent

injury by the party acting in reliance on the representation.  *Mettler, Inc. v. Ellen Tracy, Inc.*, 648 So. 2d 253, 255 (Fla. Dist. Ct. App. 1994).   A defendant's knowing concealment or nondisclosure of a material fact may support an action for fraud when there is a duty to disclose, which arises when there is a fiduciary or other relation of trust or confidence between the two parties.  *See Don Slack Ins., Inc. v. Fidelity & Cas. Co. of N.Y.*, 385 So. 2d 1061 (Fla. Dist. Ct. App. 1980).  If no such relationship exists, Florida courts recognize a duty to disclose only in the context of a commercial transaction, when a party voluntarily undertakes to disclose information. *Friedman v. Am. Guardian Warranty Servs., Inc.*, 837 So. 2d 1165, 1166 (Fla. Dist. Ct. App. 2003).  Because Plaintiffs fail to allege any relationship or business transaction with Transocean, they have failed to state a fraud claim under Florida law as well.

## V.

### TO THE EXTENT THAT THEY HAVE NOT SUSTAINED PHYSICAL DAMAGE TO A PROPRIETARY INTEREST, THE PLAINTIFFS' FEDERAL MARITIME AND STATE LAW CLAIMS ARE BARRED BY THE *ROBINS DRY DOCK* RULE

The First Amended B1 Master Claim in Limitation and the First Amended B1 Master Complaint allege that the Plaintiffs fall into thirteen basic categories of claimants characterized as "Commercial Fisherman Plaintiffs," "Processing and Distributing Plaintiffs," "Recreational Business Plaintiffs," "Commercial Business Plaintiffs," "Recreation Plaintiffs," "Plant and Dock Worker Plaintiffs," the "VoO Plaintiffs," "Real Property Plaintiffs," "Real Property/Tourism Plaintiffs," "Banking/Retail Business Plaintiffs," "Subsistence Plaintiffs," The "Dealer Plaintiffs," and the "Moratorium Plaintiffs."  **B1, pp. 7-10 and 51-53, ¶¶ 28 and 209.**  To the extent that the Plaintiffs comprising those thirteen categories have not sustained physical damage

to a proprietary interest,[20] maritime and state law bar those claims under the *Robins Dry Dock* rule or its "economic loss" state equivalent and should be dismissed pursuant to Rule 12(b)(6).

## A.    *Maritime Law Bars the Plaintiffs' Claims Under Robins Dry Dock.*

*Robins Dry Dock & Repair Co. v. Flint* precludes recovery for economic loss in general maritime law tort claims absent physical injury to a proprietary interest.  275 U.S. 303, 309 (1927).  The Supreme Court's "unmistakable" rule of *Robins Dry Dock* has been adopted and applied repeatedly and without qualification by the Fifth Circuit.  *See, e.g., In re Taira Lynn Marine Ltd. No. 5, LLC*, 444 F.3d 371, 377 (5th Cir. 2006) ("It is unmistakable that the law of this circuit does not allow recovery of purely economic claims absent physical injury to a proprietary interest in a maritime negligence suit"); *State of La. ex rel. Guste v. M/V TESTBANK*, 524 F. Supp. at 1173 ("having reexamined the history and central purpose of the doctrine of *Robins Dry Dock* as developed in this circuit, we remain committed to its teaching"); *Reserve Mooring Inc. v. Am. Commercial Barge Line, LLC,* 251 F.3d 1069, 1071 (5th Cir. 2001) (denying a mooring facility's claims for lost income against barge that sank during unloading, and holding circuit "had not retreated from *TESTBANK*'s physical injury requirement").  *See, e.g.*, *In re Settoon Towing LLC*, CIV. A. 07-1263, 2009 WL 4730969, at *3 (E.D. La. Dec. 4, 2009) (denying oil production company's claim for economic losses for inability to access platform during oil spill cleanup, citing *Robins Dry Dock*); *Blue Gulf Seafood, Inc. v. TransTexas Gas Corp.*, 24 F. Supp. 2d 732, 734 (S.D. Tex. 1998) (denying economic claims of Louisiana

---

[20]   It will almost certainly be the case that the Processing and Distributing Plaintiffs, Commercial Business Plaintiffs, Recreation Plaintiffs, Plant and Dock Worker Plaintiffs, Banking/Retail Business Plaintiffs and Dealer Plaintiffs will not have sustained physical damage to a proprietary interest.  It is also highly probable that many Recreational Business Plaintiffs and Real Property/Tourism Plaintiffs will also not have sustained physical damage to a proprietary interest.  To the extent the Commercial Fisherman Plaintiffs attempt to recover under the laws of Texas, Louisiana, Mississippi, or Alabama, they too will be subject to dismissal.  *See infra* 36-41.  It is also noteworthy that, in describing the Commercial Fisherman Plaintiffs, neither the First Amended Master Claim in Limitation nor the First Amended Master Complaint allege that the Commercial Fisherman Plaintiffs were properly licensed under the applicable state law.  The claims of any unlicensed Commercial Fisherman Plaintiffs are in turn subject to dismissal for this additional reason.  *Golnoy Barge Co. v. M/T SHINOUSSA*, 841 F. Supp. 783, 784 (S.D. Tex. 1993).

oyster farmers leasing oyster beds in Texas, finding farmers suffered no property damage, as Texas laws limit proprietary interest in seabed to Texas corporations).

The Eleventh Circuit has also recognized and "abided by" *Robins Dry Dock*.  *See Kingston Shipping Co., Inc. v. Roberts*, 667 F.2d 34, 35 (11th Cir. 1982) (applying *Robins Dry Dock* to affirm dismissal of economic claims of vessels blocked in channel for twenty six days); *Miller Indus. v. Caterpillar Tractor Co*., 733 F.2d 813, 818-19 (11th Cir. 1984) (applying *Robins Dry Dock*).

Because Plaintiffs' tort claims are barred by the well-founded and unmistakable federal maritime rule of *Robins Dry Dock*, the Plaintiffs may not recover for these same claims under state law.  To maintain its uniformity, maritime law preempts state law when the latter is contradictory to maritime law's purpose.  *IMTT-Gretna v. Robert E. Lee SS*, 993 F.2d 1193 (5th Cir. 1993) (holding any state claims were preempted by maritime law: "To allow state law to supply a remedy when one is denied in admiralty would serve only to circumvent the maritime law's jurisdiction"), *supplemented by*, 999 F.2d 105 (5th Cir. 1993); *see also In re Taira Lynn Marine Ltd. No. 5, LLC*, 444 F.3d at 377 (holding claims were barred under maritime law without evidence that economic losses resulted from physical damage, and all claimants were denied recovery under state law); *Louisiana ex rel. Guste v. M/V TESTBANK*, 752 F.2d at 1032 (to "permit recovery here on state law grounds would undermine the principles we seek to preserve today").

Even if the B1 Plaintiffs' state common law claims were not preempted, however, their claims are barred under the common law of the States of Louisiana, Texas, Mississippi, and Alabama, *infra* V-B-E.

**B.**      ***Louisiana Law Bars the Plaintiffs' Claims Under Its Economic Loss Rule.***

Louisiana jurisprudence or civilian law adopts the policy determinations made in *Robins Dry Dock. See Dempster v. Louis Eymard Towing Co., Inc.,* 503 So. 2d 99, 102 (La. Ct. App. 1987) (citing *TESTBANK* for the "general rule in maritime law" requiring physical damage to a proprietary loss as a prerequisite to recovery for economic loss).  Looking to moral, social, and economic considerations, the Louisiana Supreme Court has recognized that the duty to not injure another's property would not extend beyond the property owner, and would not extend to a third person simply in contract with the property owner, because "the list of possible victims and the extent of economic damages might be expanded indefinitely."  *PPG Indus., Inc. v. Bean Dredging,* 447 So. 2d 1058, 1059-62 (La. 1984) (noting "[m]ost cases have cited *Robins Dry Dock*" to deny recovery for indirect economic losses caused by negligent injury to property that interferes with contractual relations, "without analyzing the problem"); *see also Phillips v. G&H Seed Co.,* 2008-934 (La. App. 3 Cir. 4/8/09); 10 So. 3d 339, 342-45, *reh'g denied* (June 3, 2009), *writ denied,* 2009-1504 (La. 10/30/09); 21 So. 3d 284, *reconsideration not considered,* 2009-1504 (La. 1/8/10); 24 So. 3d 871 (dismissing economic damages brought by purchasers of crawfish against seed provider, after commercial crawfish farm crop was damaged by defective rice seed, as purchasers had no proprietary interest in crop); *TS & C Inv., L.L.C. v. Beusa Energy, Inc.*, 637 F. Supp. 2d 370, 374-75 (W.D. La. 2009) (citing *Robins Dry Dock* in predicting that Louisiana Supreme Court would hold economic loss rule bars local business owners from recovering purely economic damages on state law tort claims against oil company).

Even as to commercial fishermen, Louisiana state law bars recovery of purely economic damages without accompanying physical damage to a proprietary interest.  *See Dempster,* 503 So. 2d at 101-02 (finding plaintiffs had no proprietary interest in fish in state waters, and therefore had no future loss of fish); *La. Seafood Mgmt. Council v. La. Wildlife & Fisheries*

*Comm'n*, 1997-1367 (La. 5/19/98), 715 So. 2d 387, 392 (holding Louisiana Civil Code establishes that the "lack of any property interest in the fish in the waters is well-settled, statutorily and judicially"); *La. Crawfish Producers Ass'n-West v. Amerada Hess Corp.*, 2005-1156 (La. App. 3 Cir. 7/12/06); 935 So. 2d 380, 384-85 (affirming dismissal of commercial crawfishermens' purely economic claims on basis of *Robins Dry Dock*); *Barasich v. Shell Pipeline Co., LP*, CIV.A. 05-4180, 2006 WL 3913403, at *6-7 (E.D. La. Nov. 20, 2006) (denying commercial fishermens' federal and state law claims because they suffered no physical damage and had no proprietary interest in fish in state waters); *LaBauve v. La. Wildlife & Fisheries Comm'n,* 444 F. Supp. 1370, 1378 (E.D. La. 1978) (dismissing commercial fishermen claims for lost wages, because the fish "at large in state waters are the property of the state").

## C.     *Texas Law Bars the Plaintiffs' Claims Under Its Economic Loss Rule.*

Consistent with federal maritime law, Texas common law requires damage to property or physical injury before economic loss may be recovered. *Coastal Conduit & Ditching, Inc. v. Noram Energy Corp.*, 29 S.W.3d 282, 287-89 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (finding Texas law bars recovery of economic damages in a negligence case when parties are contractual strangers and there is no claim for damages to property, as the foreseeability of economic loss "is a standard that sweeps too broadly. . . portending liability that is socially harmful in its potential scope and uncertainty").

Citing *TESTBANK*, Texas courts have recognized that the economic loss doctrine applies to negligence actions, barring damages resulting solely from economic harm. *Express One Int'l, Inc. v. Steinbeck*, 53 S.W.3d 895, 898-99 (Tex. App.—Dallas 2001, no pet.) (requiring a party to plead and prove personal injury or property damages, versus mere economic harm); *Trans-Gulf Corp. v. Performance Aircraft Servs., Inc.*, 82 S.W.3d 691, 695 (Tex. App.—Eastland 2002, no pet.) (citing the economic loss rule to dismiss a duty in tort when the only injury claimed is one

for economic damages); *Rodriquez v. Carson,* 519 S.W.2d 214, 215-16 (Tex. App.—Amarillo 1975, *writ ref'd n.r.e*) (dismissing economic claims of driver who had no injuries and no vested interest in truck); *Zurich Am. Ins. Co. v. Hughes,* 11-05-00044-CV, 2006 WL 1914689, at *2 (Tex. App.—Eastland July 13, 2006, pet. denied) (explaining benefits of economic loss rule, including rule's ability to limit duty owed when a tortfeasor's action damages several others); *Dana Corp. v. Microtherm, Inc.*, 13-05-00281 CV 2010 WL 196939, at *27-28 (Tex. App.—Corpus Christi Jan. 21, 2010, pet. filed) (denying action for loss of value of patents against supplier of defective products, as no actual physical injury or property damages were suffered).

Texas common law makes no exception for commercial fishermen alleging economic losses without proof of property damage or physical injury.

## D.   *Mississippi Law Bars the Plaintiffs' Claims Under Its Economic Loss Rule.*

Mississippi state law does not permit recovery for mere economic damages in a negligence action without personal injury or property damage.  *Adcock v. S. Austin Marine, Inc.*, CIVA 208 CV 263 KS-MTP, 2009 WL 3633335, at *4-5 (S.D. Miss. Oct. 30, 2009).   The Mississippi economic loss doctrine has evolved through products liability common law.  *See State Farm Mut. Auto. Ins. Co. v. Ford Motor Co.*, 736 So. 2d 384, 386-88 (Miss. Ct. App. 1999) (holding economic loss doctrine barred economic damages and recovery for defective product in products liability law, noting "case of first impression as our supreme court has never addressed the question of applying the economic loss doctrine") (citing *Lee v. Gen. Motors Corp.*, 950 F. Supp. 170, 172-73 (S.D. Miss. 1996) (making an "*Erie* guess" state supreme court would agree "overwhelming weight of authority holds that there can be no recovery in tort" for purchasers of vehicles who had not suffered personal injury and alleged only economic damages)); *see also E. Miss. Elec. Power Ass'n v. Porcelain Prod. Co.*, 729 F. Supp. 512 (S.D. Miss. 1990) (holding economic loss doctrine barred negligence action for defective electricity insulators, as only

damages claimed were insulators and economic damages of diminished value and cost of removal and replacement).  And, expanding the rule to negligence actions, the Mississippi federal courts have again made an *Erie* prediction that the Mississippi State Supreme Court would find the economic loss doctrine precludes recovery in tort for purely economic loss, when there is no injury, damage, or defective product.  *Adcock v. S. Austin Marine, Inc.*, at *4-5 (holding boat purchaser could not recover economic losses of tax, title, and registration fees for purchase of wrong model boat, and although no controlling state precedence, state supreme court would hold plaintiff had no remedy for economic damages in sale).

As to the availability of a common law exception for commercial fishermen, a Mississippi statute holds proprietary rights to seafood to be the property of the state:

> All seafoods existing or living in waters within the territorial jurisdiction of the State of Mississippi not held in private ownership legally acquired . . . shall be, continue, and remain the property of the State of Mississippi, to be held in trust for the people thereof until title thereto shall be legally divested in the manner and form hereinafter authorized, and the same shall be under the exclusive control of the commission until the right of private ownership shall vest therein as hereinafter provided.

MISS. CODE. ANN. § 49-15-5 (West 2010); *see Parks v. Simpson*, 137 So. 2d 136, 138-39 (Miss. 1962) (denying claims for ownership of oyster shells on seabed, and acknowledging "an unbroken line" of 100 years of decisions declaring the state of Mississippi to be the owner of the lands in the beds of all its shores, inlets, and adjacent to the islands, and therefore owner of the oyster shells); *Ex parte Fritz*, 38 So. 722, 723 (Miss. 1905) (finding Mississippi common law clearly establishes that a state resident cannot own the fish in the state waters, "even if he owned the bed of the entire lake and all its waters," as fish are "ferae naturae" and incapable of absolute ownership).

**E.**     ***Alabama Law Bars the Plaintiffs' Claims Under Its Economic Loss Rule***.

As in Mississippi, the Alabama common law doctrine of economic loss grew from products liability claims. *Lloyd Wood Coal Co. v. Clark Equip. Co.*, 543 So. 2d 671 (Ala. 1989) (adopting the economic loss rule, finding claims for damage to a defective product would not stand in tort but in contract, and "[o]f course, an action in tort would have arisen had there been personal injury or damage to property other than the product itself"); *Harris Moran Seed Co., Inc. v. Phillips*, 949 So. 2d 916, 931-33 (Ala. Civ. App. 2006) (affirming trial court's dismissal of tort claims based on economic loss doctrine after defective product caused damage only to the product itself).

Federal courts sitting in Alabama have upheld *Robins Dry Dock*, barring claims for purely economic damages without accompanying property damage. *Louisville & Nashville R.R. Co. v. Arrow Transp. Co.*, 170 F. Supp. 597, 599-600 (N.D. Ala. 1959) (citing *Robins Dry Dock* in holding railroad company could not sustain claims in admiralty or common law for loss of use of damaged bridge, as company held no possessory interest in bridge other than "a right of user," which the Alabama Supreme Court had referred to as in the nature of an easement); *Louisville & Nashville R.R. Co. v. M/*V BAYOU LACOMBE, 597 F.2d 469, 473-74 (5th Cir. 1979) (denying claims for pure economic loss, concluding that even if Alabama contract law determined railroad company retained property interest in contract, it had retained no aspects of ownership that would justify recovery for property damage, as company did not maintain bridge nor pay for repairs).   Alabama common law makes no exception for commercial fishermen alleging economic losses without proof of property damage or physical injury.

In summary, to the extent that they have not sustained physical damage to a proprietary interest, the B1 Plaintiffs' general maritime law claims are barred by the *Robins Dry Dock* rule. And, to the extent that they have not sustained physical damage to a proprietary interest, the B1

Plaintiffs' state law claims are barred by the respective state laws of Louisiana, Texas, Mississippi, and Alabama.

## VI.

### PLAINTIFFS' CLAIMS UNDER FLORIDA'S
### MINI-OPA STATUTE MUST BE DISMISSED

The B1 Plaintiffs allege in their Master Complaint a claim under § 376.205 of the Florida Statutes, which provides an individual cause of action for damages "resulting from a discharge or other condition of pollution covered by §§ 376.011-376.21." **B1, p. 186, ¶ 736**; FLA. STAT. § 376.205. Sections 376.011-376.21, however, which comprise Florida's mini-OPA statute, cannot apply to the BP Oil spill because the discharge was beyond the statute's jurisdiction. Further, the non-Florida Plaintiffs have no standing under the Florida statute.

**A.** *Florida's Mini-OPA Statute Applies Only to Discharges Occurring Within State Territorial Waters and, Accordingly, is Inapplicable to the BP Oil Spill.*

The B1 Plaintiffs' claims under the Florida mini-OPA statute must be dismissed because the discharge of oil that resulted from the BP Oil Spill occurred in federal, not state, territorial waters, beyond the jurisdiction of Florida's mini-OPA statute. As the First Amended B1 Master Complaint clearly admits, the BP Oil Spill originated from the Macondo well located in Mississippi Canyon Block 252. **B1, p. 53, ¶ 210.** The federal government's jurisdiction extends from either the 3-mile (Louisiana, Mississippi, and Alabama) or the 9-mile (Texas and Florida) point of state jurisdiction out to 200 miles from the land mass of the United States, an area known as the "exclusive economic zone" ("EEZ").[21] The Mississippi Canyon Block 252 well is

---

[21] A state's territorial waters generally extend seaward from its coast for a distance of three (3) geographical miles. *See* Submerged Lands Act ("SLA"), 43 U.S.C. §§ 1301(2), 1302, 1312. Notably, the SLA ceded to Texas and Florida territorial waters in the Gulf of Mexico over a larger area – from their respective coastlines out to a distance of three marine leagues (a distance equivalent to nine geographical miles). *See United States v. Louisiana, Texas, Mississippi, Alabama & Florida,* 363 U.S. 1, 65, 128-29 (1960). Nevertheless, as set forth herein and in the First Amended B1 Master Complaint, the BP Oil Spill incident occurred well beyond the territorial waters of any state.

located 52 miles off of the coast of Louisiana, and approximately 125 miles from the Florida coast.  It thus falls exclusively in the federal government's jurisdiction, and therefore outside the bounds of Florida's jurisdiction.

Florida's mini-OPA statute cannot apply to the BP Oil Spill because such an application would violate the Commerce Clause.  The Commerce Clause precludes the application of a state statute to commerce that takes place wholly outside of the state's borders, or territorial seas, whether or not the commerce has effects within the state.  *Healy v. Beer Inst.,* 491 U.S. 324, 336 (1989).  It is well established that a state statute violates the Commerce Clause if it has the "practical effect" of regulating commerce beyond the boundaries of the state. *Id.* at 332, 336; *Edgar v. MITE Corp.*, 457 U.S. 624, 642-43 (1982). *See also Dean Foods Co. v. Brancel*, 187 F.3d 609, 615, 619-20 (7th Cir. 1999); *Nat'l Foreign Trade Council v. Natsios*, 181 F.3d 38, 69 (1st Cir. 1999) *aff'd*, 530 U.S. 363 (2000); *Nat'l Collegiate Athletic Ass'n v. Miller*, 10 F.3d 633, 639 (9th Cir. 1993); *Conn. ex rel. Blumenthal v. Crotty*, 180 F. Supp. 2d 392, 400 (N.D.N.Y. 2001) (holding that a New York statute impermissibly regulated the commercial lobster trade beyond the territorial waters of New York State in violation of the Commerce Clause). Accordingly, the Commerce Clause prevents the application of Florida's mini-OPA statute to a spill that occurred in waters "wholly outside" the boundaries of Florida's territorial waters.

In addition to violating the Commerce Clause when applied to the BP Oil Spill, Florida's mini-OPA statute does not apply to the spill because it fails to embrace discharges occurring beyond Florida's jurisdiction.  *See Askew v. Am. Waterways Operators, Inc.*, 411 U.S. 325, 327 (1973) (explaining that the Florida mini-OPA statute "imposes strict liability for any damage incurred by the State or private persons as a result of an oil spill ***in the State's territorial waters***") (emphasis added).  In *Askew*, the Supreme Court determined that federal maritime law did not preempt the Florida mini-OPA statute because its provisions did not conflict with the

federal statutory scheme, and the federal statute specifically did not preempt any state from "imposing any requirement or liability with respect to ***the discharge of oil into any waters within such State.***" *Id.* at 332.  According to the Court, this finding was supported by its "broad recognition of the authority of the States to create rights and liabilities ***with respect to conduct within their borders***, when the state action does not run counter to federal laws or the essential features of an exclusive federal jurisdiction." *Id.* at 340 (internal quotations omitted).  In accordance with this authority, Florida's mini-OPA statute imposes liability for cleanup costs on a responsible party for discharges that "***take place within state boundaries.***" FLA. STAT. § 376.12(1) (emphasis added).  Because the BP Oil Spill occurred in the EEZ, many miles beyond Florida's territorial waters, Florida's mini-OPA statute does not apply.  Indeed, the Plaintiffs admit that the "immediate discharge from the Spill occurred into waters outside the territorial limits of Florida." **B1, p. 187, ¶ 742.**

**B.     *Individuals Not Residing or Owning Property in Florida Have No Standing to Assert Claims Under the Florida Statute.***

The B1 Plaintiffs' claims under the Florida mini-OPA statute are preceded by the heading "**Florida Subclass Members v. BP, Transocean**,. . . " but each of the allegations in support of the claims refers to "Plaintiffs and Florida Subclass Members." **B1, pp. 187-88.**  Because the B1 Plaintiffs "reallege each any every allegation set forth in all preceding paragraphs" in support of their Florida mini-OPA claims, **B1, p. 185, ¶ 732**, these allegations include all previously identified "Plaintiffs."  "Plaintiffs," as described in the First Amended Master Complaint, are "individuals and entities residing or owning property in the United States," including subclasses of "individuals residing or owning property in the states of Alabama, Florida, Louisiana, Mississippi, and Texas." **B1, pp. 147-48, ¶¶ 545-46.**  The Florida mini-OPA statute, however, provides relief only for owners of property affected by a prohibited discharge within the

territorial waters of Florida.  *See* FLA. STAT. § 376.205 (providing a cause of action for damages resulting from "pollution" by a "responsible party"); *Id.* § 376.031(17) (defining "pollution" as the presence of pollutants in the "waters of the state"); and *Id.* § 376.12(1) (stating that a responsible party is liable for discharges that "take place within state boundaries"); *Askew*, 411 U.S. at 327.  Accordingly, to the extent that the B1 Plaintiffs' claims under the Florida mini-OPA statute are asserted by individuals not residing or owning property in Florida, the claims must be dismissed.

## VII.

## THE PLAINTIFFS' CLAIMS FOR PUNITIVE DAMAGES MUST BE DISMISSED[22]

In their First Amended B1 Master Claim in Limitation, the Claimants include a claim for "Punitive Damages" separate from their claims for negligence, gross negligence, nuisance, and trespass.  **B1, pp. 42-44, ¶¶ 193-96.**  Similarly, in their First Amended B1 Master Complaint, the Plaintiffs include a separate claim for "Punitive Damages Under All Claims."  **B1, pp. 188-193, ¶¶ 748-769.**[23]  Punitive damages are not recoverable under OPA.

The Oil Pollution Act of 1990 does not specifically address the availability of punitive damages as a remedy.  The leading case on the issue is the First Circuit's decision in *S. Port Marine, LLC v. Gulf Oil Ltd. P'Ship,* which held that punitive damages are not recoverable under OPA.  234 F.3d 58 (1st Cir. 2000).  The basis for that decision was the lack of any statutory

---

[22]   To the extent not preempted by OPA, any general maritime common law claims for punitive damages asserted in the First Amended B1 Master Complaint against Transocean remain subject to the Limitation injunction, stay, and restraining order entered by the Court (Judge K. Ellison) on June 14, 2010, in C. A. No. 4:10-cv-1721 [after transfer, 10-2771].  *United States v. BIG SAM*, 681 F.2d 432 (5th Cir. 1982).

[23]   At the outset, it should be noted that punitive damages do not constitute a separate cause of action, but instead constitute a <u>remedy</u> available for tortious or otherwise unlawful acts.  The only cause of action alleged in either the First Amended B1 Master Claim in Limitation or the First Amended B1 Master Complaint that might permit recovery of punitive damages is the count of gross negligence and willful misconduct.  Any claims for punitive damage based upon negligence, nuisance, trespass, or fraudulent concealment must therefore be dismissed.

authority under OPA to support an award of punitive damages.  In so doing, the First Circuit held

that OPA supplanted general maritime law in this area:

> This case, however, presents an entirely different issue, namely, whether Congress's very specific treatment of oil pollution in the OPA, which does not provide for punitive damages, supplanted general admiralty and maritime law, which has traditionally provided for the general availability of punitive damages for reckless conduct.  This question has largely been decided for us by the Supreme Court in *Miles v. Apex Marine,* 498 U.S. 19, 111 S. Ct. 317, 112 L.Ed.2d 275 (1990), in which the Court declined to supplement damage provisions of the Death on the High Seas Act, 46 App. U.S.C. § 762 [subsequently recodified at 46 U.S.C. § 30303].  The Court refused to allow recovery for loss of society when such damages were not provided in the statute, reasoning that "in an 'area covered by statute, it would be no more appropriate to prescribe a different measure of damage than to prescribe a different statute of limitations, or a different class of beneficiaries.'" *See Miles,* 498 U.S. at 31, 111 S. Ct. 317 (quoting *Mobil Oil Corp. v. Higginbotham,* 436 U.S. 618, 625, 98 S. Ct. 2010, 56 L.Ed. 2d 581 (1978)).  As we indicated in *CEH,* 70 F.3d 694 (1st Cir. 1995), *Miles* dictates deference to congressional judgment "where, at the very least, there is an overlap between statutory and decisional law."  *Id.* at 701.  Such is obviously the case here.

*Id.* at 65-66.

The *South Port Marine* decision has subsequently been followed by an Oregon district

court in *Clausen v. M/V NEW CARISSA*, 171 F. Supp. 2d 1127 (D. Or. 2001), and by this Court.

*See, e.g.*, *Isla Corp. v. Sundown Energy, LP*, CIV. A. 06-8645, 2007 WL 1240212, at *2 (E.D.

La. Apr. 27, 2007).  The holdings of this Court and the Oregon district court are sound:

"Congress intended OPA defendants not to be subject to punitive damages for any property

damage claim under federal law arising out of an oil spill."  *Clausen,* 171 F. Supp. at 1134.[24]

---

[24]   *See also S. Port Marine LLC v. Gulf Oil L.P.,* 234 F.3d at 64:  "OPA sets forth a comprehensive list of recoverable damages, including removal costs, damage to natural resources and real or personal property; loss of subsistence use of natural resources; loss of government revenues; lost profits and earning capacity; and costs of increased or additional public services occasioned by the unlawful act.  Absent from that list of recoverable damages is any mention of punitive damages."

Indeed, "no case or commentator has suggested that the availability of punitive damages under general admiralty and maritime law survived the enactment of the OPA." *S. Port Marine, LLC,* 234 F.3d at 65. As the Ninth Circuit explained, "[s]ometimes punitive damages are allowable, sometimes they are not . . . punitive damages are not available under the Oil Pollution Act." *In re Exxon Valdez,* 270 F.3d 1215, 1226 n.14 (9th Cir. 2001) (*citing S. Port Marine, LLC,* 234 F.3d at 65). Accordingly, all punitive damage claims should be dismissed, with prejudice.

## VIII.

### THE PLAINTIFFS' CLAIMS FOR DECLARATORY RELIEF MUST BE DISMISSED[25]

The Claimants' First Amended B1 Master Claim in Limitation contains a count seeking "Declaratory Relief" in which they contend that they have a legitimate and legally protected interest in punishment and deterrence of reprehensible and harmful conduct. Accordingly, they seek a judicial declaration against Transocean and in favor of the Claimants that "any settlement provisions that purport, directly or indirectly, to release, or to affect the calculation of, punitive damages, without a judicial determination of fairness, adequacy, and reasonableness, are ineffective as contrary to law, equity and public policy." **B1, p. 44, ¶ 197.** Similarly, in their Master Complaint, the B1 Plaintiffs include a count for "Declaratory Relief: Punitive Damages" and include virtually identical allegations as were made in the Claimants' First Amended B1 Master Claim in Limitation. **B1, p. 193, ¶ 770.** These allegations are tied, by both counts, solely to "settlement provisions," which may release or affect the calculation of punitive damages. Therefore, it follows that the extent to which the Claimants/Plaintiffs are entitled to declaratory relief against Transocean depends upon the threshold question of whether the

---

[25]   If not dismissed, the Plaintiffs' claims for declaratory relief asserted in the First Amended B1 Master Complaint against Transocean are subject to the Limitation injunction, stay, and restraining order entered by the Court (Judge K. Ellison) on June 14, 2010, in C.A. No. 4:10-cv-1721 [after transfer, 10-2771]. *United States v. BIG SAM,* 681 F.2d 432 (5th Cir. 1983).

Claimants/Plaintiffs have alleged <u>any</u> cause of action against Transocean that would support the recovery of punitive damages.  They have not, for the reasons stated in VII., *supra,* 44-46.  Accordingly, the claims for declaratory relief against Transocean should be dismissed pursuant to Rule 12(b)(6).

**IX.**

**ALL MORATORIUM DAMAGE CLAIMS MUST BE DISMISSED**

The Moratorium Plaintiffs[26] allege that they have "suffered losses and damage as a result of the Six-Month Deepwater Drilling Moratorium issued by the United States Department of Interior on May 28, 2010".  **B1, p. 142 at ¶ 521.**  OPA, however, only allows for the recovery of "damages" that result from an "incident."  33 U.S.C. § 2702(a).  "[I]ncident" is defined as any occurrence or series of occurrences having the same origin "resulting in the discharge or substantial threat of discharge of oil."  33 U.S.C. § 3701(14).  A responsible party may thus be liable under OPA only if the Plaintiffs' damages "were caused by the pollution incident," i.e., the discharge or threatened discharge of oil.  *Taira Lynn Marine Ltd. No. 5, LLC v. Jays Seafood, Inc.*, *supra*, 444 F.3d 371, 383.  As the Moratorium Plaintiffs' damages were not caused by the discharge of oil, but in fact resulted from the Moratorium, a superseding unforeseeable cause, the Moratorium Plaintiffs may not recover as a matter of law under OPA, or under any other laws, state or federal.  Furthermore, under OPA, the "damages" must also result from "the discharge of oil".  *In re Settoon Towing LLC*, *supra,* CIV. A. 07-1263, 2009 WL 4730969, at *4.  "Damages" are defined as "damages specified in section 2702(b)."  33 U.S.C. § 2701(5).  The Moratorium Plaintiffs' "damages" are not in fact damages due to the injury, destruction, or loss of real property, personal property, or natural resources resulting from the discharge of oil, as required

---

[26]   The Moratorium Plaintiffs are various oil service, exploration or drilling service companies, workers and suppliers who lost revenue as a result of the Moratorium issued by the United States Department of Interior on deepwater drilling.  **B1, pp. 52-53 at ¶ 209.**

by OPA's Section 2702(b)(2)(E), but are in fact damages resulting from the Moratorium, again, a superseding unforeseeable cause, for which recovery is not permitted under OPA or under any other laws, state or federal.  Their claims should be dismissed.

**X.**

**CONCLUSION**

BP's Macondo Well has been designated the source of the release of oil to the environment that occurred immediately following the explosion and sinking of the *Deepwater Horizon*.  As such, BP, the owner/operator of the Macondo Well, is the responsible party for the downhole release of oil.

As the law requires, BP has set up a claims process to receive claims and, to date, has paid out billions of dollars in compensation.  Yet, many of the Claimants and Plaintiffs in this action have failed to follow OPA by filing suit first, before properly presenting their claims to BP.  These claims should be dismissed.

The Plaintiffs' assertion of non-OPA state common law claims for losses that are fully compensable under OPA's compensation scheme is not only unnecessary, but will serve to delay the OPA-sanctioned presentment process which was designed to facilitate the prompt and efficient settlement of claims.  Side-stepping OPA and its claim procedures will only delay settlement of the Plaintiffs' claims.   And by invoking litigation and asserting non-OPA sanctioned claims, not only the Plaintiffs but the Court pays a heavy price.  Prompt action by this Court dismissing these claims and any claims for punitive damages and Moratorium damages will facilitate the direct settlement of claims by BP by the very process contemplated by Congress when it passed OPA.

Respectfully submitted,

By:    /s/ Steven L. Roberts
      Steven L. Roberts (Texas, No. 17019300)
      Rachel Giesber Clingman (Texas, No. 00784125)
      Kent C. Sullivan (Texas, No. 19487300)
      Teri L. Donaldson (Florida, No. 784310)
      Sutherland Asbill & Brennan LLP
      1001 Fannin Street, Suite 3700
      Houston, Texas 77002
      Telephone: (713) 470-6100
      Facsimile: (713) 654-1301
      Email: steven.roberts@sutherland.com,
      rachel.clingman@sutherland.com,
      kent.sullivan@sutherland.com,
      teri.donaldson@sutherland.com

By:    /s/ Kerry J. Miller
      Kerry J. Miller (Louisiana, No. 24562)
      Frilot, L.L.C.
      1100 Poydras Street, Suite 3700
      New Orleans, Louisiana 70163
      Telephone: (504) 599-8169
      Facsimile: (504) 599-8154
      Email: kmiller@frilot.com

      -and-

      /s/ Edwin G. Preis, Jr.
      Edwin G. Preis, Jr. (Louisiana, No. 10703)
      Edward F. Kohnke, IV (Louisiana, No. 07824)
      Preis & Roy PLC
      102 Versailles Boulevard, Suite 400
      Lafayette, Louisiana 70501
      Telephone: (337) 237-6062
      Facsimile: (337) 237-9129
      -and-
      601 Poydras Street, Suite 1700
      New Orleans, Louisiana 70130
      Telephone: (504) 581-6062
      Facsimile: (504) 522-9129
      Email: egp@preisroy.com, efk@preisroy.com

Of Counsel:

Daniel O. Goforth (Texas, No. 08064000)
Goforth Geren Easterling LLP
4900 Woodway, Suite 750
Houston, Texas 77056
Telephone: (713) 650-0022
Facsimile: (713) 650-1669
Email: dangoforth@goforthlaw.com

John M. Elsley (Texas, No. 0591950)
Royston, Rayzor, Vickery & Williams LLP
711 Louisiana Street, Suite 500
Houston, Texas 77002
Telephone: (713) 224-8380
Facsimile: (713) 225-9945
Email: john.elsley@roystonlaw.com

56816:10039562.1
11461963.2

Brad D. Brian (California, No. 79001)
Allen M. Katz (California, No. 054933)
Munger Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California 90071
Telephone: (213) 683-9100
Facsimile: (213) 683-5180, (213) 683-4018
Email: brad.brian@mto.com, allen.katz@mto.com

COUNSEL FOR PETITIONERS IN
LIMITATION AND DEFENDANTS
TRANSOCEAN OFFSHORE DEEPWATER
DRILLING INC., TRANSOCEAN HOLDINGS
LLC, TRANSOCEAN DEEPWATER INC. AND
TRITON ASSET LEASING GMBH

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been electronically filed through the Court's CM/ECF system and/or LexisNexis File & Serve, in accordance with Pretrial Order No. 12, which will send a notice of electronic filing to all counsel of record on this 28th day of February, 2011.

/s/  Kerry J. Miller