UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * MDL NO. 2179 <br> * <br> * SECTION: J <br> * |
| These Pleadings apply to: <br> All Cases in Pleading Bundle Section III.B(3) | * <br> * <br> * JUDGE BARBIER <br> * <br> * MAGISTRATE SHUSHAN |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF LYNDEN INCORPORATED'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

## I.     INTRODUCTION

Lynden Incorporated ("LI") moves to dismiss for lack of personal jurisdiction. In the alternative, LI also moves to dismiss for failure to state a claim.

LI is named as a defendant in the Master Complaint for the B3 Bundle (Dkt. 881). The B3 Bundle relates to claims against entities that participated in BP's cleanup efforts. However, LI did not undertake or participate in any spill response or cleanup efforts. Likewise, LI does not do business in Louisiana and has no other contacts with the state. Accordingly, both general and specific personal jurisdiction fail. *See Jackson v. Tanfoglio Giuseppe, S.R.L.,* 615 F.3d 579 (5th Cir. 2010). Stated simply, LI was not involved and should not have been sued.

A subsidiary of LI, Lynden Air Cargo, LLC ("LAC"), participated in spill response operations and provided planes and crews used to spray dispersants. The B3 Master Complaint seems to allege personal jurisdiction over LI based on the activities of LAC. As this Court has recognized, however, "[p]arent-subsidiary corporations are presumed to be independent of one another for purposes of determining whether one corporation's contacts with a forum can form the basis of a related corporation's contacts for purposes of the personal jurisdiction inquiry."[1] This presumption can only be overcome "by clear evidence that one corporation is the alter ego of another."[2] "[T]he party alleging the alter ego relationship bears the burden of proving it."[3] Here, the Master Complaint contains no allegations supporting personal jurisdiction on the basis of an alter ego relationship. Nor is there any factual basis for such allegations. LI and LAC are separately incorporated entities with distinct operations, separate executive management, and separate Boards of Directors. Requisite corporate formalities are observed. Thus, personal jurisdiction on the basis of an alter ego relationship likewise fails. *See id.; Jackson*, 615 F.3d at 587.

---

[1] *IMC Exploration Co. v. Texaco, Inc.,* 2005 WL 161178, at *3 (E.D. La. Jan. 24, 2005) (citing *Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir. 1999)).
[2] *Id.*
[3] *Id.*

In addition to the lack of personal jurisdiction, the Master Complaint fails to allege any act or omission on the part of LI that could give rise to liability. Nor could any such allegation be made. LI did not undertake or participate whatsoever in any spill response or cleanup activities. Accordingly, regardless of jurisdiction, the Master Complaint fails to state a claim against LI upon which relief can be granted.

## II.   FACTS

### A.   LI Did Not Participate in Any Spill Response or Cleanup Efforts.

The claims asserted in the B3 Bundle Master Complaint relate to spill response and cleanup efforts. LI did not participate at all in any spill response or cleanup efforts. In the spirit of full disclosure, LI's CEO, Jim Jansen, made one visit to Louisiana shortly after the spill. It was a sales call, and he was hoping to persuade a potential customer to use barges and other equipment owned by other LI subsidiaries, Alaska Marine Lines, Inc., or Bering Marine Corp. in connection with the customer's cleanup activities. However, nothing materialized and neither LI, Alaska Marine Lines, nor Bering Marine Corp. ever participated in any way in spill response or cleanup activities.[4]

While in Louisiana, Jansen toured BP's spill response center at Houma. He also helped arrange one meeting on behalf of LAC. Specifically, Jansen received a telephone call from an LAC pilot about issues relating to air traffic control and flight operations logistics. In response, Jansen helped set up a meeting between representatives of LAC, Marine Spill Response Corp. ("MSRC") and others.[5]

### B.   LI Does Not Have "Minimum Contacts" with Louisiana.

LI does not do any business in Louisiana and is not registered to do business in Louisiana. It does not have any offices in Louisiana. It does not own or lease property in Louisiana. It does not have any bank accounts in Louisiana. It does not have any employees

---

[4] Decl. of Everett H. Billingslea in Supp. of Lynden Incorporated's Mot. to Dismiss for Lack of Personal Jurisdiction ("Billingslea Decl.") at ¶ 2.
[5] *Id.* at ¶ 3.

in Louisiana.  Over the last ten years, LI has not transacted any business in Louisiana.  It does not pay, and has never paid, any taxes in Louisiana.  In short, LI has no business presence, and no operations, in Louisiana.[6]

**C.     LI and LAC Are Not Alter Egos.**

LI and its subsidiary, LAC, are separate and distinct corporate entities with separate and distinct operations, officers, Boards, records, and accounts.  The two entities observe corporate formalities.[7]

LI is incorporated in Washington with its principal place of business in Seattle, Washington.  LI is a subchapter S corporation.  It owns various subsidiaries, each of which provides distinct transportation services.  For reasons of economy and efficiency, LI provides certain services to each of its subsidiaries.  These services are formally provided through contractual service agreements between LI and each separate subsidiary.  The services provided by LI include, for example, human resources, legal, payroll, insurance, and IT.[8]

LAC is an Alaska company with its principal place of business in Anchorage, Alaska.  LAC provides air cargo transportation services and is a standby oil spill response provider in Alaska and in the Caribbean.  LAC is a wholly-owned subsidiary of LI.  Although related, the two entities are distinct, and corporate formalities are strictly observed and maintained.[9]

LAC is a separate Profit & Loss ("P&L") entity, distinct both from LI and from other Lynden subsidiaries.  The revenues and expenses of LAC are separately booked and accounted for.  Pursuant to specific Internal Revenue Code rules and regulations governing subchapter S corporations and their subsidiaries, LAC's profits are paid as a dividend to LI, as would normally be the case between a corporation and its shareholders.  Operating capital is then reinvested by LI, as the owner and shareholder.  All financial transactions between

---

[6] *Id.* at ¶ 4.
[7] *Id.* at ¶¶ 5-9.
[8] *Id.* at ¶ 5.
[9] *Id.* at ¶ 6.

4

parent and subsidiary are documented and accounted for pursuant to IRS and GAAP rules and regulations. There are no undocumented transactions between parent and subsidiary.[10]

LI and LAC are separately managed and have separate executive officers. Jon Burdick is the president and Jim Jansen is the CEO of LI. Judy MacKenzie is the president and CEO of LAC. No officers of LAC are employed by LI. No officers of LI are employed by LAC.[11]

The Board of Directors of LI and the Board of Managers of LAC are separate bodies that have separate responsibilities and meet separately, although certain Directors serve on both Boards. The LAC Board meets three times a year in Alaska and is responsible for LAC's operations. The Board of LI is responsible for the operations of LI and for the overarching business strategy of the Lynden family of companies. It is a separate body and meets in Washington separately from the Board of LAC.[12]

### III. ARGUMENT

#### A. The Exercise of Personal Jurisdiction over LI Fails.

The limits of the Louisiana long-arm statute are coextensive with constitutional due process limits. *Jackson*, 615 F.3d at 584. The inquiry is whether the exercise of jurisdiction comports with federal constitutional guarantees. *Id.*

Jurisdiction may be general or specific, depending on the nature of the defendant's forum-related contacts. *Id.*

> Where a defendant "has continuous and systematic general business contacts" with the forum state, the court may exercise general jurisdiction over any action brought against the defendant. Where contacts are less pervasive, the court may still exercise "specific" jurisdiction "in a suit arising out of or related to the defendant's contacts with the forum."

*Id.*

---

[10] *Id.* at ¶ 7.
[11] *Id.* at ¶ 8.
[12] *Id.* at ¶ 9.

5

Here, both general and specific jurisdiction are lacking. Likewise, any attempt to exercise personal jurisdiction over LI due to LAC's spill response activities in the Gulf Region fails because LI and LAC are not alter egos. Accordingly, personal jurisdiction fails and all claims against LI should be dismissed.

### 1. General Jurisdiction Is Lacking.

General personal jurisdiction exists only when the defendant's contacts with the forum state are "substantial, continuous, and systematic." *Jackson*, 615 F.3d at 584 (citing *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414-19 (1984)). The "continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between the defendant and a forum." *Id.* (quoting *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008)). To confer general jurisdiction, a defendant must have a business presence in the state. *Id.*

In applying the "continuous and systematic contacts test," the Fifth Circuit has repeatedly stated that the contacts at issue must be substantial contacts. In *Jackson*, the Fifth Circuit held that general jurisdiction was lacking where the defendant did not have an office, bank accounts, employees, or a postal address, and neither owned nor leased any property in Louisiana. *See id.* The Court concluded that the fact that defendants' products reached Louisiana, and that the defendants advertised in nationwide media that also reached Louisiana, was insufficient to establish general jurisdiction because such contacts were "neither systematic, continuous, nor substantial enough to support general jurisdiction." *Id.* at 585.

Here, as in *Jackson,* LI's contacts with Louisiana are insufficient to establish general jurisdiction. In fact, LI's contacts are virtually non-existent:[13]

- LI does not do any business in Louisiana.
- LI is not registered to do business in Louisiana.

---

[13] *See* Billingslea Decl. at ¶ 4.

6

- It does not have any offices in Louisiana.
- It does not own or lease property in Louisiana.
- It does not have any bank accounts in Louisiana.
- It pays no taxes in Louisiana.
- It does not have any employees in Louisiana.
- Over the last 10 years, LI has not transacted any business in Louisiana.

In short, it has no presence in Louisiana.[14]

Because LI's contacts with Louisiana are not systematic, continuous, and substantial, general personal jurisdiction is lacking.

### 2. Specific Jurisdiction Is Lacking.

Specific jurisdiction exists only when (1) the defendant purposely directed its activities toward the forum state, or purposely availed itself of the privileges of conducting activities there, and (2) the controversy arises out of those activities. *See Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004). Under this analysis, the focus of the inquiry is on the relationship between the defendant, the forum, and the litigation. *Id.* Thus, exercise of specific jurisdiction "is only appropriate when a nonresident's contacts with the forum state arise from or are directly related to the cause of action." *Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999).

Here, LI did not engage in any BP spill response or cleanup activities in Louisiana or anywhere else. Although Jim Jansen made one trip to the Gulf Region, including Louisiana, in the hopes of obtaining some spill response work for Alaska Marine Lines or Bering Marine Corp., that trip was unsuccessful.[15] The claims, therefore, do not and cannot arise out of any activity of LI in the forum. As a consequence, specific jurisdiction is lacking.

---

[14] *Id.*
[15] Billingslea Decl. at ¶ 2.

### 3.     LI Is Not the Alter Ego of LAC.

LAC is a wholly-owned subsidiary of LI.  The Master Complaint appears to assert personal jurisdiction over LI on the basis of LAC's spill response and cleanup activities on behalf of BP.  *See* Master Compl. at ¶ 57.  However, a parent-subsidiary relationship is insufficient to establish personal jurisdiction over LI.  *See IMC Exploration Co.,* 2005 WL 161178, at *3.

Parent-subsidiary corporations are presumptively independent of each other when determining whether one corporation's contacts with a forum permit jurisdiction over a related corporation.  *Id.* (citing *Dickson Marine, Inc. v. Panalpina, Inc.* 179 F.3d 331, 338 (5th Cir. 1999)).  This presumption can only be overcome by "clear evidence" that one corporation is the "alter ego of another." *Id.*  The party alleging the alter ego relationship bears the burden of proving it.  *Id.*

The factors for determining whether one entity is an alter ego of another include, but are not limited to, common ownership, common directors and officers, common employees, common offices, unified control, inadequate capitalization, non-compliance with corporate formalities, centralized accounting, unclear allocation of profits and losses between corporations, one corporation's paying the salaries, expenses, or losses of another corporation, and undocumented transfers of funds between entities.  *See Jackson,* 615 F.3d at 587.

Generally speaking, so long as corporate formalities are observed, an alter ego relationship sufficient for personal jurisdiction does not exist.  This is true even when there is significant practical overlap.  For example, in *Jackson*, the Fifth Circuit observed that the defendant corporations "appear to have been operated in a way that their brands and products appear identical and their business relationships are deeply intertwined." *Jackson*, 615 F.3d at 587.  The Court observed that the corporations shared office space and phone numbers and that the "Tanfoglio siblings were officers and directors of each of the Tanfoglio entities."  *Id.*  The Court also observed that customers of the defendant corporations "could not distinguish"

between them "and viewed them as one company." *Id.* The Court also observed that the defendant corporations "were indebted to one another through a variety of business transactions." *Id.* Nevertheless, the Court concluded that the corporations were *not* alter egos and that the activities of one could *not* be imputed to the other for purposes of personal jurisdiction. The Court observed that the companies maintained separate books, had separate tax identifications, there was no evidence of undocumented transfers of funds between them, shareholder and director meetings were separate, and corporate formalities were observed. *See id.* at 587-88.

In concluding that the entities were not alter egos, the Court held that even where some factors suggest that one entity was the alter ego of the other, "the maintenance of corporate formalities tips in favor of finding that the entities are not alter egos." *Id.* at 588.

Here, the evidence that LI and LAC are distinct entities and that corporate formalities are observed is even stronger than in *Jackson.* Specifically, as set forth in the Declaration of Everett H. Billingslea at paragraphs five through nine, LI and LAC are separately incorporated entities with separate executive management, distinct Boards of Directors and separate operations. LAC's revenues and expenses are separately booked and accounted for. There are no undocumented transactions between the two entities. Separate executive management controls the daily operations of each entity and corporate formalities are observed.[16]

Because LI and LAC are distinct entities, with distinct management, distinct operations, distinct accounts, and observe corporate formalities, LAC's spill response and cleanup activities in the Gulf Region cannot be imputed to LI for purposes of personal jurisdiction. *See Jackson,* 615 F.3d at 587-88.

---

[16] *See* Billingslea Decl. at ¶¶ 5-9.

**B.     The Complaint Fails to State a Claim Against LI on Which Relief Can Be Granted.**

In addition to the lack of personal jurisdiction, the B3 Master Complaint fails to allege or identify any specific act or omission on the part of LI that could give rise to liability. Nor could any such allegation be made. LI did not undertake or participate whatsoever in any spill response or cleanup activities.[17] Accordingly, regardless of jurisdiction, the Master Complaint fails to state a claim against LI upon which relief can be granted. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

## IV.     CONCLUSION

Because LI does not have systematic, continuous, and substantial contacts with Louisiana, general personal jurisdiction is lacking over LI. Because LI did not engage or participate in oil spill response and cleanup operations in the Gulf or any neighboring state, specific personal jurisdiction is lacking. Because LI and LAC are separate and distinct entities, with separate operations, management, and accounts, and because corporate formalities were observed, the activities of LAC cannot be imputed to LI for purposes of personal jurisdiction. As a consequence, personal jurisdiction is lacking over LI, and LI should be dismissed as a defendant in this action.

In the alternative, the Master Complaint fails to state a claim against LI on which relief can be granted.

---

[17] *See* Billingslea Decl. at ¶ 2.

RESPECTFULLY SUBMITTED this 28th day of February, 2011.

        BYRNES KELLER CROMWELL LLP

        By  /s/ Paul R. Taylor
           Paul R. Taylor, WSBA #14851
           Jofrey M. McWilliam, WSBA #28441
        1000 Second Avenue, 38th Floor
        Seattle, WA  98104
        Telephone:  (206) 622-2000
        Facsimile:  (206) 622-2522
        Email:  ptaylor@byrneskeller.com
                jmcwilliam@byrneskeller.com
        Attorneys for Defendant
        Lynden Incorporated

**CERTIFICATE OF SERVICE**

      WE HEREBY CERTIFY that the above and foregoing Memorandum in Support of Lynden Incorporated's Motion to Dismiss for Lack of Personal Jurisdiction has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on February 28, 2011.

                                            /s/ Paul R. Taylor