**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | | |
|---|---|---|---|
| In Re: | Oil Spill by the Oil Rig | : | MDL NO. 2179 |
| | "Deepwater Horizon" in the | : | |
| | Gulf of Mexico, on | : | SECTION: J |
| | April 20, 2010 | : | |
| | | : | JUDGE BARBIER |
| This Document Relates to: | | : | |
| Case No. 2:10-cv-04536 | | : | MAG. JUDGE SHUSHAN |

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**UNITED STATES' MEMORANDUM IN OPPOSITION**
**TO SIERRA CLUB'S MOTION TO INTERVENE [Doc. 1115]**

**INTRODUCTION**

Congress sometimes provides groups like Sierra Club with opportunities for intervention in government enforcement actions, either by express provisions in a particular statute or pursuant to the standards of Fed. R. Civ. P. 24. Here, however, Sierra Club has demonstrated no basis warranting intervention. Sierra Club's proposed complaint alleges claims that it cannot bring. The statutes from which those claims flow – the Clean Water Act (CWA) and the Oil Pollution Act (OPA) – allow Sierra Club to bring certain claims, but not those it proposes here. Instead, Congress entrusted the United States with the exclusive authority to enforce Section 311(b) of the CWA and invested the United States and other governmental entities with the sole authority to act as natural resource trustees on behalf of the public to recover damages for injuries to those resources under OPA. A putative intervenor's legal incapacity to prosecute the claim it proposes may not be fatal, as a matter of law, to its motion for intervention, but that incapacity makes it extremely difficult as a practical matter to satisfy either Rule 24 test for intervention.

1

While Rule 24 can permit intervention of interested parties into government actions under certain circumstances, "a federal case is a limited affair, and not everyone with an opinion is invited to attend." *See Mausolf v. Babbitt*, 85 F.3d 1295, 1301 (8th Cir. 1996). The facts here simply do not support Sierra Club's intervention into the United States' enforcement action. Sierra Club's complaint in intervention offers no claim it could legally prosecute on its own. Sierra Club also fails to demonstrate any meaningful difference between its general interest in the government's claims and the interests and goals of the United States. At most, Sierra Club asserts a generalized interest in ensuring that the Nation's environmental laws are enforced and that justice is done. But that is an interest shared by all Americans, which in any event is appropriately represented by the United States government. To the extent that Sierra Club's interests in the restoration of the Gulf would be affected by this litigation, Sierra Club has the opportunity to comment on any proposed settlement on an equal footing with other interested non-government organizations and individuals. That the defendants here may try to put in issue the actions of federal agencies does not erode the United States' statutory obligation to obtain civil penalties fully commensurate with the defendants' violations and to demonstrate that the defendants are liable without limitation under OPA.

When federal law requires or merely warrants intervention by citizen groups in an environmental enforcement case, the United States government often welcomes such participation. Those groups may add significant value to such cases and thereby foster the policy goals of Congress and the fruits of enforcement. Here, however, other than meeting the timeliness requirement for seeking intervention under Rule 24, Sierra Club cannot satisfy any of the legal standards necessary to secure that status. Proper application of the law in this case requires denial of Sierra Club's request for intervention.

**ARGUMENT**

**I. Sierra Club Cannot Demonstrate that it is Entitled to Intervention as of Right**

Pursuant to Rule 24(a)(2), intervention must be granted to anyone who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). The Fifth Circuit has stated that this procedural rule is based on "four requirements: (1) the applicant must file a timely application; (2) the applicant must claim an interest in the subject matter of the action; (3) the applicant must show that disposition of the action may impair or impede the applicant's ability to protect that interest; *and* (4) the applicant's interest must not be adequately represented by existing parties to the litigation." *United States v. Franklin Parish Sch. Bd.*, 47 F.3d 755, 756 (5th Cir. 1995) (emphasis added).[1] Other than making a timely application for intervention, Sierra Club has not and cannot demonstrate that it meets these requirements.

---

[1] The Fifth Circuit test appears to depart from the plain language of Rule 24(a)(2) by suggesting that the applicant need only have an interest in the "subject matter" of the action as opposed to "an interest relating to the property or transaction that is the subject of the action." The 1966 amendments to Rule 24(a) suggest a more narrow interpretation of "interest" than the Fifth Circuit's gloss on the Rule. As the Advisory Committee Notes to the 1966 Amendment state: "Intervention of right is here seen to be a kind of counterpart to Rule 19(a)(2)(i) on joinder of persons needed for a just adjudication; where, upon motion of a party in an action, an absentee should be joined so that he may protect his interest which as a practical matter may be substantially impaired by disposition of the action, he ought to have a right to intervene." *See* Fed. R. Civ. P. 24 Advisory Committee Notes; *see also* James, Hazard & Leubsdorf, Civil Procedure § 10.17 at 542 (4th ed. 1992). Under this conception, the proper analysis under Rule 24(a) would be whether a court must allow an entity to intervene – i.e., whether, if the entity did not itself seek to intervene in the lawsuit, the court *must* join the entity on the motion of one of the parties (even if the entity has not chosen to participate in the lawsuit).

### A. The Clean Water Act and the Oil Pollution Act Establish the United States as the Sole Enforcer for the Claims Raised in the United States Action in Which Sierra Club Seeks Intervention

Each requirement of Rule 24(a)(2) must be viewed in light of the enforcement regime established by CWA and OPA, and the statutory provisions for citizen participation. *E.g., United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 72 (2d Cir. 1994) (The Rule "must be examined in the context of the statutory scheme under which the underlying litigation is being pursued."). Congress has carefully prescribed the contours of citizen participation in CWA actions, and has not provided a statutory right of action or intervention to Sierra Club here. Where a statutory scheme wholly commits enforcement authority of the claims at issue to the federal government, this strongly argues against intervention under Rule 24(a)(2). *E.g., United States v. Hooker Chemical & Plastic Corp.*, 749 F.2d 968, 985 (2d Cir. 1984) (Friendly, J.).

In *Hooker Chemical*, the court denied intervention in part because Congress had not provided citizens with the right to bring (or intervene in) a CWA action to abate an "imminent and substantial endangerment" under the emergency powers provisions of Section 504 of the Act. *See id.* at 978, 985. The court found that Congress had entrusted enforcement authority, including "control over the litigation," to the federal government, *id.* at 985, 989, and that intervention under Rule 24(a)(2) would be inappropriate without "a strong affirmative showing that the sovereign is not fairly representing the interests of the applicant." *Id.* at 985. As noted in a law review article cited heavily by the court:

> The choice of whether to commit enforcement of a statute to the joint efforts of individuals and the government or to rely solely on government initiative reflects a congressional judgment as to which mechanism better serves the larger public interest in enforcing the law.

Note, *Intervention in Government Enforcement Actions*, 89 Harv. L. Rev. 1174, 1178 (1976) (cited in *Hooker Chemical*, 749 F.2d at 983, 985, 989 n.17, 993 n.22).  Other courts have similarly found that where the relevant statutory scheme fails to confer a right of action to a potential intervenor, intervention may not be appropriate.  *See, e.g., United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 840-41 (8th Cir. 2009) (denying intervention into a CWA action under Rule 24(a)(2) where the applicant had no private right of action, noting "[j]udicial efficiency is not promoted by allowing intervention with no interest upon which [the applicant] could seek judicial relief in a separate lawsuit."); *United States v. S. Fla. Water Mgmt. Dist.*, 922 F.2d 704, 707 n.3 (11th Cir. 1991) (remarking that "[d]enial of intervention cannot impair a nonparty's ability to protect its interests if that nonparty would have no legal protection for those interests in any event").

While the CWA grants citizens both a right of action and a right to intervene in some circumstances, those circumstances do not exist in this case.  Section 505, 33 U.S.C. § 1365, is the CWA's "citizen suit" provision.  It provides for a private right of action for violations of effluent standards and limitations, *id.* § 1365(a)(1)(A), and permits a citizen to intervene in such a government-initiated action, but only where the citizen would otherwise have been able to bring a suit.  *Id.* § 1365(b)(1)(B); *Metro. St. Louis Sewer Dist.*, 569 F.3d at 837-38 ("[O]nly a citizen whose suit has been displaced by the government action is entitled to intervene" under Section 505(b)(1)(B), 33 U.S.C., § 1365(b)(1)(B), as that provision requires citizens to "show that they are able to bring a private enforcement action in the first instance.").  Through this tailored scheme, Congress has permitted citizens to supplement federal enforcement, but has not

"enable[d] citizens to commandeer the federal enforcement machinery."  *Dubois v. Thomas*, 820 F.2d 943, 949 (8th Cir. 1987); *see also* S. Rep. No. 99-50, at 28 (1985).[2]

However, Section 505 does not apply to the United States' enforcement action here. Section 505(a) provides that a citizen may only commence a civil action under the CWA against a person "alleged to be in violation of (A) an effluent standard or limitation or (B) an order issued by the Administrator or a State with respect to such a standard or limitation."  33 U.S.C. § 1365(a).[3]  Section 505(f) carefully defines "effluent standard or limitation" in relation to various prohibitions or limitations established under specific sections of the CWA.  Nowhere does the definition include CWA Section 311's prohibition on the discharge of oil in such quantities as may be harmful.  As a result, suits based on that Section – such as the government's enforcement action in which Sierra Club seeks to intervene – can only be brought by the United States.

In its instant action, the United States has not alleged any ongoing violation of an "effluent standard or limitation" as defined in the citizen suit provision.  Sierra Club also has not alleged such a violation, and concedes it does not have a right of action under Section 505(a). Sierra Club's Mem. of Legal Authority in Support of Mot. to Intervene ("Mem."), No. 10-md-02179 (filed Feb. 7, 2010) [doc. 1115-1], at 4 n.3.  *See also Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 58-59 (1987).  Thus, it cannot intervene under

---

[2] The value of citizen suits, as authorized by Congress in the CWA and discussed below, is beyond question.  In this case, however, Sierra Club attempts to intervene in a government action under circumstances in which the Act did not provide for a right of private enforcement or intervention.

[3] A separate basis for a citizen suit is an action seeking to compel the Administrator of the Environmental Protection Agency (EPA) to perform a non-discretionary duty.  33 U.S.C. § 1365(a)(2).  Here, Sierra Club's proposed complaint in intervention asserts no claims against the Administrator, nor would such claims fall within the scope of this litigation.

Section 505(b)(1)(B), 33 U.S.C. § 1365(b)(1)(B), *see United States v. City of Toledo*, 867 F. Supp. 595, 597 (N.D. Ohio 1994), and should not be allowed to do so here under Rule 24(a)(2).

Title I of OPA, 33 U.S.C. §§ 2701-2720, also evidences Congress' intent to entrust enforcement of the natural resource damage portion of that statute to governmental parties.  For natural resource injuries, liability is not to an individual, but to designated officials of the United States, states, Indian tribes or foreign governments who act as trustees for the natural resources on behalf of the public, tribal members or foreign governments to recover damages to those resources.  *Id.* §§ 2702(b)(2)(A); 2706(a), (b).  In order to fully determine and address damages to natural resources, the trustees must develop a plan for the "restoration, rehabilitation, replacement, or acquisition of the equivalent, of the natural resources under their trusteeship." *Id.* § 2706(c).  This plan shall be "developed and implemented . . . only after adequate public notice, opportunity for a hearing, and consideration of all public comment."  *Id.* § 2706(c)(5). Thus, rather than providing for private enforcement suits, Congress required a public comment process to incorporate citizen views into the natural resource damages restoration process.

By contrast, with respect to *economic* damages from oil spills, a non-governmental entity or individual person has a right to pursue a claim under OPA.  *See id.* § 2702(b)(2)(B), (C), (E). For example, an individual may recover for "[d]amages for injury to, or economic losses resulting from destruction of, real or personal property, which shall be recoverable by a claimant who owns or leases that property."  *Id.* § 2702(b)(2)(B).[4]  That Congress specified a right of recovery to individuals for economic damages, but not with respect to natural resource damages, also weighs against Sierra Club's motion to intervene here, where it has not alleged any damages of its own.

---

[4] Sierra Club has not alleged damages under § 2702(b)(2)(B) to itself or its members.

The fact that Congress has carefully considered and entrusted enforcement responsibility for the CWA and OPA claims at issue here solely to the United States, and has prescribed a more limited role for citizen suits and intervention for which Sierra Club does not qualify, argues strongly against intervention for Sierra Club in this case.  Although Sierra Club's lack of a legal ability to independently prosecute the claims at issue here may not be fatal, as a matter of law, to its motion for intervention, it is a significant factor looked at by the courts in determining whether a party can satisfy Rule 24's requirements.

### B.  Sierra Club Cannot Demonstrate a Direct, Substantial, Legally Protectable Interest in this Action

In order to demonstrate "an interest relating to the property or subject matter of the litigation sufficient to support intervention of right" under Rule 24(a)(2), the applicant must have a "direct, substantial, legally protectable interest in the proceedings."  *New Orleans Pub. Serv., Inc. v. United Gas Pipeline Co. (NOPSI)*, 732 F.2d 452, 463 (5th Cir. 1984) (en banc) (quotations omitted).  This standard requires the interest be "one which the *substantive* law recognizes *as belonging to or being owned by the applicant.*"  *Id.* (second emphasis added).  In other words, to show that its interest is sufficiently direct, substantial and legally protectable, the applicant must establish that it is a "real party in interest" with respect to the claims at issue, *id.* at 464,[5] and that it suffers a harm beyond that suffered by the public generally.

---

[5] The Fifth Circuit has held that the "real party in interest" requirement of Fed. R. Civ. P. 17(a) also applies to potential intervenors.  *NOPSI*, 732 F.2d at 464; *see also* 6A Charles A. Wright, Arthur R. Miller, et al., Federal Practice and Procedure § 1543 (3d ed.) ("the real-party-in-interest requirement is not limited to original plaintiffs but must be satisfied for purposes of . . . a claim by an intervenor").  Although the Fifth Circuit subsequently relaxed the "real party in interest" requirement of Rule 17(a) with respect to potential intervenors "seeking to *defend* an interest being attacked by a plaintiff in a lawsuit," the requirement continues where, as here, the applicant seeks to intervene on behalf of the plaintiff.  *See Ross v. Marshall*, 426 F.3d 745, 757 n.46 (5th Cir. 2005) (emphasis in original).

Sierra Club is not a "real party in interest" to the United States' action for CWA 311(b) penalties and a declaratory judgment under OPA.  The "real party in interest" principle is a means to identify the person who is "entitled to enforce" a right that person is afforded by a substantive law.  *See* 6A Charles A. Wright, Arthur R. Miller, et al., Federal Practice and Procedure § 1543 (3d ed.).  As we have explained above in Part I.A, only the United States is authorized to enforce the claims it alleges in its enforcement action.  As such, it is the United States that is the real party in interest here.  *See Louisiana ex rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418, 428 (5th Cir. 2008).   The underlying enforcement action involves precisely the type of public (as opposed to individual) injury for which the *government*, as the real party in interest, is entitled to address.  *See id*.[6]  Sierra Club can assert no more than a generalized interest in ensuring that the Nation's environmental laws are enforced and that justice is done, an interest shared by all Americans.

Sierra Club cannot demonstrate a legally protectable interest in natural resource damages obtained pursuant to OPA.  *See supra* Part I.A.  In this action, the United States, acting on behalf of the public as provided by OPA, seeks a declaratory judgment that the defendants are liable without limitation for all damages, including natural resource damages.  Accordingly, this case is fundamentally different from those in which environmental groups have successfully intervened in Administrative Procedure Act (APA) and National Environmental Policy Act (NEPA) cases in

---

[6] As discussed *supra* at I.A., the CWA and OPA were enacted to prevent and address environmental injuries to the public occurring from oil spills.  *See, e.g.,* 33 U.S.C. § 1321(b)(1) (declaring it "the policy of the United States that there should be no discharges of oil or hazardous substances into or upon the navigable waters of the United States . . . or in connection with activities under the Outer Continental Shelf Lands Act [42 U.S.C.A. § 1331 et seq.] . . . ."); S. Rep. No. 101-94, at 15-16 (1989) (explaining that OPA "would clarify that in the wake of spills like the *Exxon Valdez*, all reasonably demonstrable natural resource damages caused by a spill are paid by the responsible parties, rather than borne by the public," and would authorize "trustees to act on behalf of the public to assess and to recover for damage to natural resources.").

order to defend a government decision made in its regulatory capacity, e.g., *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1248 (10th Cir. 2001) and in the cases where Sierra Club successfully intervened on behalf of the government to defend suits brought by the oil service industry challenging the Department of the Interior's (DOI) drilling suspensions.  *See* Mem. at 10-11.  As discussed *supra* at n.6, the Fifth Circuit permits a more relaxed assessment of whether an intervenor is a "real party in interest" when the applicant is seeking to defend an interest, but retains a strict standard for plaintiff-intervenors.  This is particularly true where, as here, the government is the plaintiff and is enforcing the law on behalf of the public.  *See Louisiana ex rel. Caldwell*, 536 F.3d at 428.  If Sierra Club is found to have a legally protectable interest in an action for OPA natural resource damages based on its generalized interest in restoration of the Gulf, then hundreds of other stakeholders with members in a Gulf state could potentially claim the same interest, even though Congress declined to provide them with a right to such damages.[7]

Although Sierra Club cites cases from other circuits in support of its assertion that aesthetic and environmental interests are "legally protectable interests" sufficient to meet the test for intervention, Mem. at 7-8, the Fifth Circuit's "interest" standard for plaintiff-intervenors is in some ways more demanding than that applied by other Courts of Appeals in that it expressly rejects interests that are speculative, indirect or contingent.  *See Ross*, 426 F.3d at 757-60;

---

[7] Moreover, Sierra Club's assertion that it has an interest in the actual restoration of the Gulf through the Natural Resource Damage Assessment (NRDA) process under OPA, *see* Mem. at 17, is simply premature.  At issue in this lawsuit is only whether the defendants are liable without limitation under OPA.  The NRDA long-term restoration plan has not yet been developed, and is not the subject of the pending lawsuit.  Sierra Club's purported interest is not sufficient to support intervention of right under these circumstances.  *Cf. Ross v. Marshall*, 456 F.3d 442, 443 (5th Cir. 2006) ("The interest required to intervene as of right is a 'direct' interest . . . . By definition, an interest is not direct when it is contingent on the outcome of a subsequent lawsuit.").

*NOPSI*, 732 F.2d at 463-64; *see also Conservation Law Found. v. Mosbacher*, 966 F.2d 39, 41-42 (1st Cir. 1992) (compares various Courts of Appeals' application of Rule 24(a)'s interest test).

Sierra Club can point to *no* court that has recognized a legally protectable interest held by a private entity in the deterrent effect of any penalty amount recovered by the United States. Mem. at 8, 14.[8]  Sierra Club's argument that the penalty amount might have some future impact on its members' aesthetic, recreational, and environmental interests is far too speculative and tenuous to meet Rule 24's standard.  *See Ross*, 426 F.3d at 757-60 (evaluating whether potential interevenor's interest was too "remote or contingent" to meet requirements of Rule 24(a)).

As a related matter, Sierra Club purports to have a legally protectable interest in the development of any supplemental environmental projects (SEPs) that might be part of a settlement of the CWA Section 311 penalty claims.  Mem. at 11.  SEPs may be appropriate in certain instances, but they are not legally required, *see* Final EPA Supplemental Environmental Projects Policy Issued, 63 Fed. Reg. 24,796 (May 5, 1998).  As importantly, it is entirely speculative whether SEPs would be involved in a resolution of this case, much less whether Sierra Club has a "substantial" interest in a particular SEP.  Accordingly, Sierra Club's interest in the development of a SEP is too contingent an interest to be considered "direct, substantial, and legally protectable."  *See Ross*, 426 F.3d at 757-60.

---

[8] Sierra Club also claims an interest in the *disposition* of Section 1321 civil penalties, specifically an interest "in seeing that they are used to address the specific environmental harms in the Gulf areas where its members are located."  Mem. at 4-5.  Civil penalties recovered pursuant to the CWA's oil pollution provisions are deposited into the Oil Spill Liability Trust Fund (OSLTF) pursuant to 33 U.S.C. § 1321(s) and the Oil Pollution Act of 1990, Pub. L. No. 101-380, § 4304, 104 Stat. 484.  The disposition of these funds is similarly prescribed by statute.  *See* 33 U.S.C. §§ 2712(a), 2752.  Accordingly, the ultimate disposition of OSLTF funds is not at issue here, so any interest Sierra Club has in the use of such funds will not be impaired or affected in the resolution of this litigation.

Sierra Club also asserts a legally protectable interest based on the fact that it is pursuing other "related" actions "arising" out of the Deepwater Horizon oil spill.  Mem. at 9-11.  This fact does not here establish that it has a direct and substantial interest in the United States' enforcement action brought pursuant to CWA and OPA.  *See Commonwealth Edison Co. v. Train,* 71 F.R.D. 391, 392 (N.D. Ill. 1976) (holding that potential intervenors, who had previously successfully litigated a suit to compel the EPA to issue certain regulations under the CWA, did not have "an enforceable interest" in the subsequent suit defending those regulations).  While the cases that Sierra Club is currently involved in may have been prompted by the Deepwater Horizon event, they concern different facts, are based on different statutes (e.g., APA, NEPA, and the Outer Continental Shelf Lands Act (OCSLA)), and seek different relief (e.g., setting aside the DOI approvals of drilling plans submitted by companies other than BP).[9]  Under Sierra Club's theory, any party involved in any of the hundreds of cases related to the Gulf spill has a "legally protectable interest" in the government's enforcement action.  Mere involvement in these legally distinct cases does not create such a right.

### C.  Sierra Club Cannot Demonstrate Impairment of any Legally Protectable Interest Here

An applicant for intervention must be "so situated that the dispos[ition] of the action may as a practical matter impair or impede the movant's ability to protect its interest."  Fed. R. Civ. P. 24(a)(2).  First, Sierra Club argues that it must be allowed to intervene as a plaintiff here in order to "coordinate this litigation with its other cases."  Mem. at 13.  Part I.B., *supra*, and Part I.D., *infra*, demonstrate that these other cases bear so tenuous a relation to this enforcement action that they do not support the intervention sought here.  Sierra Club also argues that its interest in

---

[9] Sierra Club's assertion that issues in these cases are relevant to BP's gross negligence and the penalty amounts is discussed more fully, *infra* at Part I.D.

bringing its "particular knowledge and expertise" in the CWA to this case will be impaired if it does not intervene.  Mem. at 14.  Sierra Club cites no persuasive authority suggesting that general legal expertise in an area justifies intervention, particularly where the United States is acting pursuant to its sovereign law enforcement role in an area of its expertise.

Sierra Club further asserts that it has an interest in the resolution of any CWA penalty claims, and argues that this interest would be impaired if the United States inadequately deters similar oil spills in the future, thereby indirectly impacting the aesthetic, recreational, and environmental interests of Sierra Club's members.  Mem. at 14.  Sierra Club cites no persuasive authority for the proposition that a private party can hold a legally protectable interest in the deterrent effect of any penalty amount recovered by the United States.  (See Part I.B., *supra*, for discussion of cases Sierra Club cites.)  Nor does Sierra Club explain how its interest is distinguishable from that which all citizens share in ensuring that violations of the law are appropriately punished.  Without a legally protectable interest that could possibly be impaired, intervention must fail.  *Cf. S. Fla. Water Mgmt. Dist.*, 922 F.2d at 707 n.3 (noting "[d]enial of intervention cannot impair a nonparty's ability to protect its interest if that nonparty would have no legal protection for those interests in any event").

Even assuming that Sierra Club's purported interest was a sufficiently direct, substantial, and legally protectable one, then other procedures available to the public would protect that interest and thereby defeat this request for intervention.  By regulation, any settlement of "an action to enjoin discharges of pollutants" must be issued for public comment.  28 C.F.R. § 50.7.  The United States interprets "discharges of pollutants" broadly, so the regulation would apply in any case in which injunctive relief is sought, irrespective of what is secured in the proposed settlement.  Here, as the United States' complaint seeks injunctive relief, see Compl. of U.S., at

26, No. 10-04536 (E.D. La. filed Dec. 15, 2010) [doc. 1], the proposed settlement would be made available for public comment, which allows persons to submit their views on proposed settlements.  Numerous courts have evaluated this process and found it to sufficiently protect the interests of proposed intervenors.  *See, e.g., Stotts v. Memphis Fire Dep't*, 679 F.2d 579, 584 (6th Cir. 1982); *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 73 (2d Cir. 1994); *City of Bloomington, Ind. v. Westinghouse Elec. Corp.*, 824 F.2d 531, 537 (7th Cir. 1987).  To the extent that Sierra Club finds any settlement inadequate (as to penalty amounts or otherwise), it could raise such concerns during the public comment process, and those comments would be made available to the court if the United States elected to seek entry of a settlement.

Sierra Club also seeks to influence potential SEP projects that speculatively could be part of a settlement.  In addition to 28 C.F.R. § 50.7, other avenues would allow Sierra Club to provide input into this process on an equal footing with other interested non-government organizations and individuals.  For example, EPA's SEP policy explicitly encourages community input into the development of SEPs, and provides guidelines for soliciting such input.  63 Fed. Reg. at 24,803.

### D. Sierra Club's Motion Should Be Denied Because it Cannot Show that its Interests May Be Inadequately Represented

Even if an applicant satisfies all other requirements for intervention, the applicant must demonstrate that the representation of its interests may be inadequate.  Fed. R. Civ. P. 24(a)(2).[10] This Circuit has held that "when the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented."  *Bush v.*

---

[10] While this burden has been described as "minimal," see *Sierra Club v. Epsy*, 18 F.3d 1202, 1207 (5th Cir. 1994), "it cannot be treated as so minimal as to write the requirement completely out of the rule." *Bush v. Viterna*, 740 F.2d 350, 355 (5th Cir. 1984).

*Viterna*, 740 F.2d 350, 355 (5th Cir. 1984) (internal quotations omitted).  A would-be intervenor must demonstrate "adversity of interest, collusion, or nonfeasance" to rebut the presumption of adequate representation.  *Id.*

Moreover, the requirement that the applicant show "adversity of interest, collusion, or nonfeasance" also should be viewed in light of the heightened burden that exists where the applicant seeks to intervene on the side of a government body, as "[a]dequacy can be presumed when the party on whose behalf the applicant seeks intervention is a government body or officer charged by law with representing the interests of the proposed intervenor."  *United States v. Tex. Educ. Agency (Lubbock Indep. Sch. Dist.)*, 138 F.R.D. 503, 506 (N.D. Tex.), *aff'd*, 952 F.2d 399 (5th Cir. 1991).  *See also South Dakota ex rel. Barnett v. Dep't of the Interior*, 317 F.3d 783, 785 (8th Cir. 2003) (the "applicant for intervention bears a heavier burden on this factor" where the government already has a trust relationship with the proposed Tribal intervenor) (internal quotation omitted); *Hooker Chemical*, 749 F.2d at 987 ("[I]n an enforcement action by a governmental entity suing as a *parens patriae*, it is proper to require a strong showing of inadequate representation before permitting the intervenors to disrupt the government's exclusive control over the course of its litigation."); 7C Charles A. Wright, Arthur R. Miller, et al., Federal Practice and Procedure § 1909 (3d ed.) (A "very compelling showing" of inadequacy should be required "when a governmental body or officer is the named party.").  Sierra Club's objectives are aligned with the United States', and Sierra Club does not demonstrate that the government's representation is inadequate.

### 1)   The United States' objectives in the enforcement of this action are statutorily-prescribed by CWA and OPA, and are aligned with Sierra Club's interest

The text and legislative history of CWA and OPA dictate the goals of federal enforcement actions, and these goals are aligned with Sierra Club's objectives.  *See, e.g.*, 33

U.S.C. § 1321(b)(1) (declaring it "the policy of the United States that there should be *no* discharges of oil or hazardous substances into or upon the navigable waters of the United States . . . .") (emphasis added); *Exxon Shipping Co. v. Exxon Seamen's Union*, 11 F.3d 1189, 1194 (3d Cir. 1993) (explaining that Congress implemented the policy of § 1321(b)(1) "by enacting strong remedial and penalty provisions"); 33 U.S.C. §§ 2702(b)(2)(A); 2706(a) (providing that for natural resource damages, liability is not to an individual, but to designated governmental officials who act as trustees for the natural resources on behalf of the public to recover damages to those resources).

As these passages demonstrate, the United States and Sierra Club ultimately seek the same objectives:  to deter the defendants and the oil industry from future incidents that will cause harm to the waters of the United States and adjoining shorelines, and to hold the defendants accountable to the full extent of the law so that sufficient funds will be available for the restoration of natural resources of the Gulf for injuries resulting from the spill.  Accordingly, this current lawsuit is materially different from cases finding the requirements of intervention met where the government is balancing multiple, statutorily-imposed interests in the litigation. *Compare, e.g., Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538-39 (1972) (finding inadequate representation and permitting union member to intervene into government action to set aside union election where the Secretary of Labor had "two distinct interests" – one, in the union member's interest in the outcome of the election, and two, in the general public's interest in the free and democratic union elections) *with Hooker Chemical*, 749 F.2d at 987 (finding adequate representation where the government was seeking to abate a pollution hazard pursuant to the CWA and environmental groups had not "pointed to anything like the conflicting statutory obligations imposed on the Secretary in *Trbovich*."); *Maine v. Dir., U.S. Fish & Wildlife Serv.*,

16

262 F.3d 13, 19 (1st Cir. 2001) (denying intervention to environmental group in suit against government challenging endangered species listing where there was "no statutorily imposed conflict" and the government's interest was closely aligned with the environmental group's).

The litigation here is similarly distinguishable from *Sierra Club v. Epsy*, 18 F.3d 1202 (5th Cir. 1994), which reversed a district court's denial of intervention by timber purchasers' associations in an action brought by environmental groups challenging Forest Service logging procedures. There, as the court pointed out, the government was obligated to protect more than "just the economic concerns of the timber industry." *Id.* at 1207-08. And, this litigation presents different circumstances than the challenge to DOI's drilling suspensions, where the district court granted Sierra Club's intervention on behalf of the United States. In those cases, Sierra Club alleged that its interests, which were narrowly focused on the environmental implications of the drilling suspensions, diverged from the government's interests, which stemmed from OCSLA's requirement to consider (in issuing regulations under the Act) both the potential for expeditious resource development and the environmental effects of such development. *See* 43 U.S.C. § 1332(3). There is no such intra-statutory conflict with respect to the United States' civil prosecution of its CWA and OPA claims.

**2)  The role of federal agencies and officials in approving BP's 2009 Regional Oil Spill Response Plan (OSRP) and dispersant application is not relevant to the issue of willful misconduct, gross negligence and CWA penalty factors**

Sierra Club argues that its interests are adverse to the United States because the "reasonableness of Defendants' reliance on [the OSRP] . . . may be an issue in the instant case in regards to whether Defendants were negligent or grossly negligent, and in determining the amount of civil penalties that should be assessed." Mem. at 10. However, the United States' approval of BP's OSRP is not relevant to the defendants' culpability or to the question of

whether the discharge resulted from willful misconduct or gross negligence, which are the pertinent issues in the penalty action.[11]  It is the defendants who violated the CWA's prohibition on the discharge of oil (33 U.S.C. § 1321(b)(3)), and it is the defendants' culpability that is at issue for the purposes of this penalty action, not the asserted culpability of the United States. Regulations promulgated pursuant to 33 U.S.C. § 1321 make clear that a responsible party's duty to abate a discharge is absolute and in no way limited by its independent duty to have an OSRP. 30 C.F.R. § 254.5 ("General response plan requirements . . . (c) Nothing in this part relieves you from taking all appropriate actions necessary to immediately abate the source of a spill and remove any spills of oil.").

Sierra Club's argument is further undermined by the text of OPA, which clearly precludes an operator from asserting agency approval of an OSRP as a defense to liability under OPA.  The Act provides that "[t]he owner or operator of a tank vessel, nontank vessel, offshore facility, or onshore facility may not claim as a defense to liability under title I of the Oil Pollution Act of 1990 [33 U.S.C.A. § 2701 et seq.] that the owner or operator was acting in accordance with an approved response plan."  33 U.S.C. § 1321(j)(5)(H).[12]

---

[11] *See* 33 U.S.C. § 1321(b)(7)(D) (heightened penalties where the discharge "was the result of gross negligence or willful misconduct").  Other factors relevant to determining the amount of penalties under CWA Section 311(b) are "the seriousness of the violation or violations, the economic benefit to the violator, if any, resulting from the violation, the degree of culpability involved, any other penalty for the same incident, any history of prior violations, the nature, extent, and degree of success of any efforts of the violator to minimize or mitigate the effects of the discharge, the economic impact of the penalty on the violator, and any other matters as justice may require."  33 U.S.C. § 1321(b)(8).

[12] In addition, Sierra Club's NEPA lawsuits, referenced in Mem. at 11, which challenge the approval of oil drilling Exploration Plans submitted by companies that were not involved in the Deepwater Horizon explosion and are not defendants in the United States' enforcement action, are not relevant here.  Such suits do not rely on BP's Gulf of Mexico Regional OSRP, and are thus wholly unrelated to the events underlying the MDL litigation.

The United States' approval of dispersant use also is not relevant to establishing willful misconduct or gross negligence, where the relevant inquiry relates to the actions taken that led to the discharge, not those taken to remove the oil from the water once it has been discharged.  33 U.S.C. § 1321(b)(7)(D).  Moreover, responsible parties remain liable for harm to natural resources occurring during the course of the response to remove the oil.  *See* 15 C.F.R. § 990.51(b)(ii), (e).

Even if Sierra Club were to make arguments that the government may not, these arguments could be advanced through participation as an *amicus curiae* rather than as an intervenor with the same rights of an existing party.  *Cf. Maine*, 262 F.3d at 18-20 (affirming denial of intervention even though applicant would present an argument that the government was highly unlikely to make; argument could be made in applicant's capacity as *amicus curiae*).

### 3) Sierra Club's motion improperly attempts to avoid the effect of this Court's order transferring and severing its APA case from the Multi-District Litigation (MDL), and does not establish adversity of interests here

To demonstrate that its interests are not adequately represented by the United States in the MDL, Sierra Club relies upon a separately filed case it brought with co-plaintiff Gulf Restoration Network, which asserts claims against the Department of the Interior, the Secretary of the Interior, and several Minerals Management Service (now Bureau of Ocean Energy Management, Regulation and Enforcement (BOEMRE)) officials under the APA.  Mem. at 9-10.  *See Gulf Restoration Network, Inc., et al. v. U.S. Department of the Interior* (*GRN*), No. 10-1630 (E.D. La. filed June 3, 2010).  The *GRN* complaint, which is attached as an exhibit to Sierra Club's motion to intervene, Ex. K to Mot., alleges generally that the former Minerals Management Service approval of the 2009 BP Gulf of Mexico Regional OSRP was "arbitrary and capricious."  In its motion to intervene, Sierra Club provides a lengthy recitation of the

19

complaint's allegations, see Mem. at 9-10, 18-19, but fails to mention that the *GRN* case, which was administratively consolidated with this MDL proceeding after it was filed, was severed from the MDL and transferred by order of this Court.  *See* Order, Dec. 2, 2010 [doc. 842 in No. 10-md-02179].[13]  The Court found that the APA actions were "not sufficiently related to the MDL and therefore should be deconsolidated."  *Id.* at 1.

To the extent that Sierra Club's motion attempts to resuscitate, as part of this litigation, claims that have been severed and transferred by this Court, it is procedurally improper and should be denied because the earlier decision is the law of the case.  *See Loumar, Inc. v. Smith*, 698 F.2d 759 (5th Cir. 1983).  For the reasons set forth in the briefs submitted by the *GRN* defendants in connection with the motion to sever, allegations and argument about whether the agency's July 2009 approval of the OSRP was arbitrary and capricious have no bearing on the legal and factual issues relevant to the MDL tort, CWA and OPA cases, which concern the acts or omissions of private defendants in connection with the Deepwater Horizon spill and response.[14]

Moreover, Sierra Club's premise that its adversity to federal defendants in a separate lawsuit proves that its interests are not adequately represented by the United States in this litigation is incorrect.  *See, e.g., Assoc. Indus. of Ala., Inc. v. Train*, 543 F.2d 1159, 1160 (5th Cir. 1976) (denying Alabama's motion to intervene despite argument that EPA inadequately

---

[13] The Order also applied to another APA case brought by the same plaintiffs, which was later dismissed voluntarily.  *Gulf Restoration Network Inc. et al. v. Salazar et al.*, No. 10-1497 (E.D. La. filed May 18, 2010).

[14] *See generally In re: Oil Spill*, No. 10-2179, Fed. Defs.' Mot. to Sever Cases Brought Pursuant to Administrative Procedure Act or, in the Alternative, to Assign Such Cases to Separate Tracks ("*GRN* Fed. Defs.' Mot."), Sept. 7, 2010 [doc.174]; Reply Mem. in Support ("*GRN* Fed. Defs.' Reply"), Sept. 30, 2010 [doc.450].

represented state's interest because it had demonstrated a "lack of commitment" to its own
regulatory standards by virtue of its adversity to the state in a separately filed permit case); *see
also Bush*, 740 F.2d at 356 (rejecting argument that would-be intervenor was not adequately
represented where intervenor made "no showing of adversity of interest in *this* proceeding")
(emphasis in original).  Sierra Club cites no cases holding that a would-be intervenor's adversity
to federal agencies or officials in a separate lawsuit demonstrates *per se* that its interests are not
adequately represented by the United States.  Indeed, such a rule would make little sense given
the breadth and diversity of institutional interests represented by both the federal government and
by national environmental organizations like Sierra Club, which may be concurrently adverse in
some matters and aligned in others.

In support of its position, Sierra Club cites *Doe v. Glickman*, 256 F.3d 371, 380-81 (5th
Cir. 2001).  But in *Glickman*, not only was the issue in the separate case against the federal
government identical to the issue in the case for which intervention was sought,[15] but the
government had taken a position in the separate litigation that was directly opposed to that
asserted by the group seeking to intervene.  *Id.* at 381.[16]

Here, in contrast, the issues in the *GRN* case do not overlap with those in the MDL
lawsuit.  *See generally GRN* Fed. Defs.' Mot & *GRN* Fed. Defs.' Reply.  *Cf. Atlantis Dev. Corp.
v. United States*, 379 F.2d 818, 826-29 (5th Cir. 1967) (finding "identity with the very property

---

[15] *See id.* at 377 ("[T]he substantive issue underlying both [ ] [l]awsuits is the same."); *id.* at 380 (Because
the issue in two lawsuits was identical, ruling in later-filed action "could collaterally estop the Institute . .
. [and thus] has the potential to prevent the Institute from obtaining the Identifying Information without
ever being heard.").

[16] The court's finding of inadequate representation in *Sanguine, Ltd. v. U.S. Dep't of Interior*, 736 F.2d
1416, 1419 (10th Cir. 1984), cited in Mem. at 13, was also based on the government's litigation conduct
in defense of that case.  Here, Sierra Club makes no showing that the United States' prosecution of its
CWA and OPA claims has been anything less than vigorous, and indeed, any attempt to do so would be
premature at this juncture.

at stake in the main case and with the particular transaction therein involved" to be "of exceptional importance" in decision to grant intervenor's motion).  Nor does the United States' complaint in the MDL, asserting claims based on OPA and CWA, overlap with the APA-based claims of the *GRN* plaintiffs against federal agencies and agency officials.  There is thus no risk of inconsistent outcomes in the *GRN* case and the United States' case.  Finally, the federal defendants in the *GRN* case have not even answered the complaint, much less taken any position that can be characterized as contrary to Sierra Club's positions taken in its proposed complaint in intervention.  Accordingly, *Glickman* is not on point.

### 4)   Sierra Club's additional allegations of CWA violations also do not rebut the presumption of adequate representation

Sierra Club further alleges that it will make arguments in support of penalties that the United States will not make regarding violations of Section 301 of the Clean Water Act, 33 U.S.C. § 1311, and the applicable EPA Region 6 General Permit.  Sierra Club argues that such potential violations support higher penalties.  However, Sierra Club has asserted no legal basis to file such claims on its own, and it can claim no legally protected interest in the prosecution of such claims.[17]  Moreover, Sierra Club's assertions with respect to the arguments that the United States may or may not make in support of appropriate civil penalties are wholly speculative.  The United States has expressly reserved the right to bring additional claims, including additional claims under the CWA.  U.S. Compl. at ¶ 92.

---

[17] Sierra Club has no *legally protectable interest* in the timing, targets, or subject matter of future enforcement decisions of the United States.  As the Supreme Court has held, "an agency's decision not to prosecute or enforce. . . is a decision generally committed to an agency's absolute discretion . . . . [A]n agency decision not to enforce often involves a complicated balancing of a number of factors which are peculiarly within its expertise."  *Heckler v. Chaney*, 470 U.S. 821, 831 (1985).

**5)  Sierra Club's assertion that the United States may be more inclined to settle or fail to appeal does not rebut the presumption of adequate representation**

Sierra Club asserts that the United States may be more inclined to settle the suit and less likely to appeal any decision than would Sierra Club.  Mem. at 17-18.  However,

> the mere possibility that a party *may* at some future time enter into a settlement cannot alone show inadequate representation . . . . If this were so, the requirement that the would-be intervenor show inadequacy of representation would be effectively written out of the rule, for it is always a possibility that the parties will settle a lawsuit.  A party's interest may be adequately represented in settlement negotiations as well as in adversarial proceedings.

*Bush*, 740 F.2d at 358 (emphasis in original) (internal citations omitted).  Nor does the possibility that a party may be less willing to appeal a decision necessarily show inadequate representation. *See Acuff v. United Papermakers & Paperworkers, AFL-CIO*, 404 F.2d 169 (5th Cir. 1968).

## II.  Sierra Club's Alternative Motion for Permissive Intervention Should Also Be Denied

Sierra Club also seeks permissive intervention pursuant to Fed. R. Civ. P. 24(b)(2) in the event that its motion for intervention as of right under Rule 24(a)(2) is denied.  Rule 24(b)(2) allows a court, in its discretion, to grant intervention where the applicant "has a claim or defense that shares with the main action a common question of law or fact."  As noted at the outset, Sierra Club is not legally allowed to seek relief on the basis of the claims in its proposed complaint.  Thus, Sierra Club asserts no valid "claim" for the purposes of permissive intervention under Rule 24(b).  In contrast to intervention as of right under Rule 24(a)(2), which speaks in terms of an "interest," implied in the prerequisites for permissive intervention is that one has an independent basis for the "claims" asserted.  *Cf. Diehl v. United States,* 438 F.2d 705, 711 (5th Cir. 1971) (concluding that a widow could not intervene in her deceased husband's income-tax refund suit because she had not fulfilled the statutory prerequisite of filing a claim).

In addition, in exercising its discretion to grant permissive intervention, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."   Fed. R. Civ. P. 24(b)(3).  Sierra Club's petition for permissive intervention should also be denied because the motion would "materially diminish" the rights of the United States by interfering with the United States' exclusive control over the prosecution of its claims. *See NOPSI*, 732 F.2d at 473.

Finally, although the United States disputes Sierra Club's contention that the United States would not advance relevant arguments relating to willful misconduct, gross negligence and penalty factors in light of the United States' approval of the OSRP and dispersant use, the United States is not the only plaintiff in the MDL.  Also involved are state and private plaintiffs seeking relief in tort and other state laws that directly implicate issues of negligence and gross negligence.  These circumstances further support Sierra Club's participation as an *amicus*, not as an intervening party.  *See Bush*, 740 F.2d at 359 ("Where he presents no new questions, a third party can contribute usually most effectively and always most expeditiously by a brief amicus curiae and not by intervention.") (internal quotations omitted); *NOPSI*, 732 F.2d at 473 ("Where the intervenors do not have a legally protectable interest, are adequately represented by an existing party and will not add to the relevant factual development of the case, the position of amicus may be considered more appropriate than an intervention with full-party status.").

## CONCLUSION

For the foregoing reasons, the Court should deny Sierra Club's motion for intervention as of right, or in the alternative, motion for permissive intervention.[18]

Respectfully submitted,

IGNACIA S. MORENO
Assistant Attorney General
Environment & Natural Resources Division

TONY WEST
Assistant Attorney General
Civil Division

JAMES NICOLL
  Senior Counsel
NANCY FLICKINGER
SARAH HIMMELHOCH
 Senior Attorneys
DEANNA CHANG
SCOTT CERNICH
A. NATHANIEL CHAKERES
JUDY HARVEY
MATT LEOPOLD
  Trial Attorneys

PETER F. FROST
  Director, Torts Branch, Civil Division
  Admiralty and Aviation
STEPHEN G. FLYNN,
  Assistant Director
MICHELLE DELEMARRE
SHARON SHUTLER
JESSICA SULLIVAN
 JESSICA MCCLELLAN
 DAVID PFEFFER
  Trial Attorneys

/s/ Steven O'Rourke
STEVEN O'ROURKE
Senior Attorney
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
Telephone: 202-514-2779
Facsimile: 202-514-2583
E-mail: steve.o'rourke@usdoj.gov

/s/ R. Michael Underhill
R. MICHAEL UNDERHILL, T.A.
Attorney in Charge, West Coast Office
Torts Branch, Civil Division
U.S. Department of Justice
7-5395 Federal Bldg, Box 36028
450 Golden Gate Avenue
San Francisco, CA 94102-3463
Telephone: 415-436-6648
Facsimile: 415-436-6632
E-mail: mike.underhill@usdoj.gov

JIM LETTEN
United States Attorney
Eastern District of Louisiana

Attorneys for the UNITED STATES OF AMERICA

---

[18] If the Court were to grant Sierra Club's motion for intervention, the United States reserves its right to move the court to place conditions on Sierra Club's intervention to avoid improper expansion of the issues and duplicative discovery.  The Fifth Circuit has held that "it is now a firmly established principle that reasonable conditions may be imposed even upon one who intervenes as of right."  *Beauregard, Inc. v. Sword Servs., LLC*, 107 F.3d 351, 352-53 (5th Cir. 1997).

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing document has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on February 28, 2011.


/s/ Steven O'Rourke