## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig | * | MDL No. 2179 |
| "Deepwater Horizon" in the Gulf | * | |
| of Mexico on April 20, 2010 | * | SECTION "J" |
| | * | JUDGE BARBIER |
| This Document Relates to: | * | |
| | * | |
| *City of Greenville, et al. v.* | * | MAGISTRATE NO. 1 |
| *BP, PLC,* No. 10-4185 | * | MAGISTRATE SHUSHAN |
| *State of Veracruz, Repub. of Mexico v.* | * | |
| *BP, PLC*, No. 10-4239 | * | |
| *State of Tamaulipas, Repub. of Mexico v.* | * | |
| *BP, PLC*, No. 10-4240 | * | |
| *State of Quintana Roo, Repub. of Mexico v.* | * | |
| *BP, PLC*, No. 10-4241 | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## CONSOLIDATED MEMORANDUM OF LAW IN SUPPORT OF MOTIONS OF DEFENDANTS ANADARKO PETROLEUM CORPORATION, ANADARKO E&P COMPANY LP,  AND  MOEX OFFSHORE 2007 LLC TO DISMISS THE COMPLAINTS OF THE ALABAMA CITIES AND THE MEXICAN STATES ["PLEADING BUNDLE C"]

## TABLE OF CONTENTS

Page

I.   INTRODUCTION ........................................................................................... 1

II.  BACKGROUND ............................................................................................ 2

    A.   The Cities' Complaint ........................................................................... 2

    B.   The Mexican States' Complaints .......................................................... 3

III. ARGUMENT ................................................................................................. 5

**THE PUBLIC DAMAGE PLAINTIFFS' CLAIMS AGAINST THE NON-OPERATING DEFENDANTS MUST BE DISMISSED IN THEIR ENTIRETY BECAUSE EACH FAILS TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED.**

    A.   OPA Alone Governs the Public Damage Plaintiffs' Claims, and Their State Law Claims Must be Dismissed ................................................... 5

        1.   The Public Damage Plaintiffs' Cases Arise out of and in Connection with OCS Operations That Involve Exploration, Development, and Production of Minerals ................................. 6

        2.   OCSLA Prescribes the Choice-of-Law Rules That Apply to the Public Damage Plaintiffs' Cases, and Those Rules Restrict Application of Substantive State Law ........................................ 6

        3.   OPA, Not State Law, Governs the Public Damage Plaintiffs' Claims ......................................................................................... 8

        4.   Allegations That the Public Damage Plaintiffs Were Injured on Land or in State Waters Do Not Change the Choice-of-Law Inquiry or Its Result ................................................................. 11

        5.   In Cases Involving Oil Spills Originating from the OCS, the Law of an Affected State Is Preempted ......................................... 14

    B.   The Public Damage Plaintiffs Have Not Satisfied Requirements for Filing a Claim Under OPA, and Their Claims Must be Dismissed .............................. 18

        1.   The Public Damage Plaintiffs' OPA Claims Must be Dismissed Because They Do Not Allege That They Complied with OPA's Pre-Suit Presentment Requirement ......................................... 18

        2.   The Mexican States' OPA Claims Must Be Dismissed Because They Have Not Alleged Necessary Elements of Their Claims ................ 20

        3.   The Cities' OPA Claim Against Anadarko E&P Must be Dismissed Because Anadarko E&P Did Not Hold a Lease Interest in the Macondo Prospect at the Time of the Discharge .......................... 21

    C.   Even if the Public Damage Plaintiffs' Claims Were Not Preempted, Their Claims Under Maritime or State Law Must be Dismissed ................................. 23

        1.   The Complaints Do Not Clear the Low Bar Set By Rule 8(a) ................ 24

        2.   The Complaints Also Fail to State Claims for which Relief can be Granted ................................................................................... 26

TABLE OF CONTENTS
(continued)

Page

a. There Are No Allegations Sufficient to Hold the Non-Operating Defendants Directly or Indirectly Liable .................... 26

b. The Public Damage Plaintiffs Have Not Stated Cognizable Claims for Negligence, Gross Negligence, or Wantonness ........ 28

c. The Public Damage Plaintiffs Fail to State Cognizable Claims for Negligence Per Se ....................................................... 32

d. The Mexican States Fail to State Cognizable Claims for Private Nuisance Against Anadarko ............................................ 34

e. The Mexican States Fail to State a Claim for Public Nuisance Against Anadarko ......................................................... 35

3. The Economic Loss Rule Precludes The Cities' and Mexican States' Recovery Under Maritime and State Law.................................... 36

IV. CONCLUSION .................................................................................................. 39

## TABLE OF AUTHORITIES

Page

CASES

*Ainsworth v. Shell Offshore, Inc.*,
   829 F.2d 548 (5th Cir. 1987), *cert. denied*, 485 U.S. 1034 (1988)..........................................28

*Alleman v. Omni Energy Servs. Corp.*,
   580 F.3d 280 (5th Cir. 2009) ........................................................................................12

*Ambrosio v. Carter's Shooting Ctr., Inc.*,
   20 S.W.3d 262 (Tex. App. 2000)...................................................................................33

*Anchundia v. Northeast Util. Servs. Co.*,
   No. CV 07-4446(AKT), 2010 WL 2400154 (E.D.N.Y. June 11, 2010)................................33

*Andry v. Murphy Oil, U.S.A., Inc.*,
   935 So. 2d 239 (La. Ct. App. 2006)..............................................................................31

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009)................................................................................................29

*Askew v. Am. Waterways Operators, Inc.*,
   411 U.S. 325 (1973)............................................................................................16, 17

*Ayco Dev. Corp. v. G.E.T. Serv. Co.*,
   616 S.W.2d 184 (Tex. 1981).........................................................................................28

*Barasich v. Shell Pipeline Co.*,
   No. 05-4180, 2006 WL 3913403 (E.D. La. Nov. 20, 2006)..........................................35, 39

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...................................................................................................29

*Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.*,
   51 F.3d 235 (11th Cir. 1995) ........................................................................................18

*Bolivar v. R & H Oil and Gas Co.*,
   789 F. Supp. 1374 (S.D. Miss. 1991)............................................................................28

*Bonin v. Ferrellgas, Inc.*,
   877 So. 2d 89 (La. 2004) ............................................................................................31

*Brown v. ANA Ins. Grp.*,
   994 So. 2d 1265 (La. 2008) .........................................................................................32

TABLE OF AUTHORITIES
(continued)

Page

*Burlington Res., Inc. v. United Nat'l Ins. Co.*,
  481 F. Supp. 2d 567 (E.D. La. 2007) ..............................................................................29, 30

*Butler ex rel. Anderson v. Miss-Lou Ambulance Serv., LLC*,
  No. 07-0924, 2008 WL 2816845 (W.D. La. July 22, 2008) ...................................................32

*Canal Barge Co. v. Torco Oil Co.*,
  220 F.3d 370 (5th Cir. 2000) .................................................................................................29

*Cape Flattery Ltd. v. Titan Mar. LLC*,
  607 F. Supp. 2d 1179 (D. Hi. 2009)......................................................................................32

*Carr v. United States*,
  130 S. Ct. 2229 (2010)...........................................................................................................23

*Carrieri v. Jobs.com, Inc.*,
  393 F.3d 508 (5th Cir. 2004) .................................................................................................23

*City of Milwaukee v. Illinois*,
  451 U.S. 304 (1981)...............................................................................................................14

*Coastal Iron Works, Inc. v. Petty Ray Geophysical*,
  783 F.2d 577 (5th Cir. 1986) .................................................................................................32

*Conner v. Aerovox, Inc.*,
  730 F.2d 835 (lst Cir. 1984)..................................................................................................14

*Consol. Aluminum Corp. v. C.F. Bean Corp.*,
  833 F.2d 65 (5th Cir. 1987) ..............................................................................................30, 31

*Cook's Pest Control, Inc. v. Rebar*,
  28 So. 3d 716 (Ala. 2009)......................................................................................................33

*Cox v. City of Dallas*,
  256 F.3d 281 (5th Cir. 2001) .................................................................................................36

*Demette v. Falcon Drilling Co.*,
  280 F.3d 492 (5th Cir. 2002), *overruled in part on other grounds by Grand Isle
  Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778 (5th Cir. 2009) ............................. passim

*Dennis v. Bud's Boat Rental, Inc.*,
  987 F. Supp. 948 (E.D. La. 1997)..........................................................................................25

*Diamond Offshore Co. v. A&B Builders, Inc.*,
  302 F.3d 531 (5th Cir. 2002) ...................................................................................................8

TABLE OF AUTHORITIES
(continued)

Page

*Dunham-Price Group, LLC v. Citgo Petroleum Corp.*,
    2010 WL 1285446 (W.D. La. Mar. 31, 2010) ........................................................37

*Dupre & Son Floor Covering, Inc. v. City of Iota*,
    36 So. 3d 1117 (La. Ct. App. 2010) ....................................................................31

*EP Operating LP v. Placid Oil Co.*,
    26 F.3d 563 (5th Cir. 1994) ...........................................................................6, 11

*Everett v. Brad Ragan, Inc.*,
    No. 99-663CBC, 2000 WL 360240 (S.D. Ala. Mar. 28, 2000)................................37

*Ex parte Randall*,
    971 So. 2d 652 (Ala. 2007)............................................................................32

*Freedman v. Briarcroft Property Owners, Inc.*,
    776 S.W.2d 212 (Tex. App. 1989)....................................................................35

*Fruge v. Parker Drilling Co.*,
    337 F.3d 558 (5th Cir. 2003) ..........................................................................27

*Gabarick v. Laurin Mar. (Am.) Inc.*,
    623 F. Supp. 2d 741 (E.D. La. 2009) ..................................................................8

*Gabarick v. Laurin Maritime (Am.) Inc.*,
    No. 08-4007, 2009 WL 102549 (E.D. La. Jan. 12, 2009).......................................19

*Gates v. W.R. Grace & Co.*,
    No. 8:08-cv-2560-T-27TBM, 2009 WL 1455316 (M.D. Fla. May 21, 2009).........................33

*Gatlin Oil Co. v. United States*,
    169 F.3d 207 (4th Cir. 1999) ...........................................................................9

*Geier v. Am. Honda Motor Co.*,
    529 U.S. 861 (2000)....................................................................................16

*Gooden v. City of Talladega*,
    966 So. 2d 232 (Ala. 2007)............................................................................31

*Gregory v. Mitchell*,
    634 F.2d 199 (5th Cir. 1981) ..........................................................................19

*Gulf Offshore Co. v. Mobil Oil Corp.*,
    453 U.S. 473 (1981)......................................................................................7

v

TABLE OF AUTHORITIES
(continued)

Page

*Hallstrom v. Tillamook County,*
    493 U.S. 20 (1989)..................................................................................................19

*Harris Moran Seed Co. v. Phillips,*
    949 So. 2d 916 (Ala. Civ. App. 2006) ...................................................................37

*Holler v. Cinemark USA, Inc.,*
    185 F. Supp. 2d 1242 (D. Kan. 2002) ...................................................................34

*Hooper v. Thomas,*
    No. 01-1730, 2002 WL 1268399 (E.D. La. June 5, 2002).....................................19

*Houston Exploration Co. v. Halliburton Energy Servs., Inc.,*
    269 F.3d 528 (5th Cir. 2001) ................................................................................32

*IHS Cedars Treatment Center of DeSoto, Texas, Inc. v. Mason,*
    143 S.W.3d 794 (Tex. 2003)..................................................................................30

*Illinois v. Milwaukee,*
    406 U.S. 91 (1972)................................................................................................14

*IMTT-Gretna v. Robert E. Lee SS,*
    993 F.2d 1193 (5th Cir. 1993) ..............................................................................39

*In re Burlington Coat Factory Sec. Litig.,*
    114 F.3d 1410 (3d Cir. 1997).................................................................................22

*In re Great Lakes Dredge & Dock Co.,*
    624 F.3d 201 (5th Cir. 2010) ................................................................................30

*In re Settoon Towing LLC,*
    722 F. Supp. 2d 710 (E.D. La. 2010).....................................................................24

*In re Taira Lynn Marine Ltd. No. 5,*
    444 F.3d 371 (5th Cir. 2006) ...........................................................................39, 40

*Int'l Paper Co. v. Ouellette,*
    479 U.S. 481 (1987).....................................................................................14, 15, 16

*James v. Nico Energy Corp.,*
    838 F.2d 1365 (5th Cir. 1988) ..............................................................................28

*Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,*
    513 U.S. 527 (1995)........................................................................................12, 24

TABLE OF AUTHORITIES
(continued)

Page

*Kitty Hawk Aircargo, Inc. v. Chao*,
418 F.3d 453 (5th Cir. 2005) ...................................................................................22

*Landry v. Island Operating Co.*,
No. 09-1051, 2009 WL 3241560 (W.D. La. Sept. 30, 2009) .................................13

*Lane v. Capital Acquisitions & Mgmt. Co.*,
No. 04-60602 CIV, 2006 WL 4590705 (S.D. Fla. Apr. 14, 2006) .........................26

*Le Jeune v. Allstate Ins. Co.*,
365 So. 2d 471 (La. 1978) .......................................................................................31

*Lloyd Wood Coal Co. v. Clark Equip. Co.*,
543 So. 2d 671 (Ala. 1989)......................................................................................37

*Lloyd's Leasing Ltd. v. Conoco*,
868 F.2d 1447 (5th Cir. 1989) .................................................................................31

*Long Beach v. City of New York*,
445 F. Supp. 1203 (D.N.J. 1978) .............................................................................34

*Louisiana ex rel. Guste v. M/V Testbank*,
752 F.2d 1019 (5th Cir. 1985) (*en banc*) .........................................................37, 39

*Louisiana v. Rowan Co.*,
728 F. Supp. 2d 896 (S.D. Tex. 2010) ...............................................................29, 31

*Lucas v. South Carolina Coastal Council*,
505 U.S. 1003 (1992) (Blackmun, J., dissenting)...................................................36

*Magluta v. Samples*,
256 F.3d 1282 (11th Cir. 2001) .........................................................................26, 27

*Marathon Pipe Line Co. v. LaRouche Indus. Inc.*,
944 F. Supp. 476 (E.D. La. 1996)............................................................................19

*Marshall v. Isthmian Lines, Inc.*,
334 F.2d 131 (5th Cir. 1964) ...................................................................................33

*Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n*,
453 U.S. 1 (1981)......................................................................................................34

*Miles v. Am. Tel. & Tel. Co.*,
703 F.2d 193 (5th Cir. 1983) ...................................................................................21

TABLE OF AUTHORITIES
(continued)

Page

*Miller v. E.I. Du Pont de Nemours & Co.*,
880 F. Supp. 474 (S.D. Miss. 1994)........................................................................34

*Mobil Oil Exploration & Producing SE, Inc. v. United States*,
530 U.S. 604 (2000)..................................................................................................15

*Moore v. Merchants & Planters Bank*,
434 So. 2d 751 (Ala. 1983).......................................................................................28

*Moses v. Mosley*,
146 So. 2d 263 (La. Ct. App. 1962).........................................................................33

*Nase v. Teco Energy, Inc.*,
347 F. Supp. 2d 313 (E.D. La. 2004)..........................................................................6

*Nat'l Envtl. Found. v. ABC Rail Corp.*,
926 F.2d 1096 (11th Cir. 1991) ...............................................................................19

*Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atl. Corp.*,
924 F. Supp. 1436 (E.D. Va. 1996), *aff'd*, 122 F.3d 1062 (4th Cir. 1997) ...............9

*North Carolina ex rel. Cooper v. Tenn. Valley Auth.*,
615 F.3d 291 (4th Cir. 2010) ...................................................................................36

*O'Toole v. Northrop Grumman Corp.*,
499 F.3d 1218 (10th Cir. 2007) ...............................................................................22

*Offshore Logistics, Inc. v. Tallentire*,
477 U.S. 207 (1986)............................................................................................10, 16

*Oppen v. Aetna Ins. Co.*,
485 F.2d 252 (9th Cir. 1973) ...................................................................................13

*Parker Bldg. Servs. Co. v. Lightsey*,
925 So. 2d 927 (Ala. 2005).......................................................................................33

*Pierson v. Orlando Reg'l Healthcare Sys., Inc.*,
No. 6:08-cv-466-Orl-28GJK, 2009 WL 2151176 (M.D. Fla. July 13, 2009).........27

*Prill v. Marrone*,
23 So. 3d 1 (Ala. 2009).............................................................................................30

*Pro Image Installers, Inc. v. Dillon*,
No. 3:08cv273/MCR/MD, 2009 WL 112953 (N.D. Fla. Jan. 15, 2009) ...........26, 27

TABLE OF AUTHORITIES
(continued)

Page

*Quaker State Corp. v. U.S. Coast Guard*,
    681 F. Supp. 280 (W.D. Pa. 1988) ................................................................................24

*Robins Dry Dock & Repair v. Flint*,
    275 U.S. 303 (1927) .......................................................................................................37, 39

*Rodrigue v. Aetna Cas. & Sur. Co.*,
    395 U.S. 352 (1969) .......................................................................................................7, 12

*Rodriguez v. Am. Cyanamid Co.*,
    858 F. Supp. 127 (D. Ariz. 1994) .................................................................................34

*Ronquille v. MMR Offshore Servs., Inc.*,
    353 F. Supp. 2d 680 (E.D. La. 2004) (Mississippi Canyon Block 809) .................................25

*Russell Corp. v. Sullivan*,
    790 So. 2d 940 (Ala. 2001) ...........................................................................................36

*Russo v. M/T Dubai Star*,
    No. C 09-05158 SI, 2010 WL 1753187 (N.D. Cal. Apr. 29, 2010) .........................19

*Sasportes v. M/V Sol de Copacabana*,
    581 F.2d 1204 (5th Cir. 1978) ......................................................................................28

*Sekco Energy, Inc. v. M/V Margaret Chouest*,
    820 F. Supp. 1008 (E.D. La. 1993) ..............................................................................35, 36

*Smith v. Trans-World Drilling Co.*,
    772 F.2d 157 (5th Cir. 1985) ........................................................................................33

*Snyder Oil Corp. v. Samedan Oil Corp.*,
    208 F.3d 521 (5th Cir. 2000) ........................................................................................25

*South Port Marine, LLC v. Gulf Oil LP*,
    234 F.3d 58 (1st Cir. 2000) ...........................................................................................9

*Tanguis v. M/V Westchester*,
    153 F. Supp. 2d 859 (E.D. La. 2001) ...........................................................................9

*Ten Taxpayer Citizens Group v. Cape Wind Assocs.*,
    373 F.3d 183 (1st Cir. 2004) .........................................................................................7, 10

*Terrebonne v. Blackburn*,
    646 F.2d 997 (5th Cir. 1981) ........................................................................................22

TABLE OF AUTHORITIES
(continued)

Page

*Texaco Exploration & Prod., Inc. v. AmClyde Engineered Prods. Co.*,
   448 F.3d 760 (5th Cir. 2006) ...........................................................................................8, 12

*Texas v. Pankey*,
   441 F.2d 236 (10th Cir. 1971) ...............................................................................................14

*Theriot v. Bay Drilling Corp.*,
   783 F.2d 527 (5th Cir. 1986) .................................................................................................24

*Thomas v. Express Boat Co.*,
   759 F.2d 444 (5th Cir. 1985) .................................................................................................31

*Todd Shipyards Corp. v. Turbine Serv., Inc.*,
   674 F.2d 401 (5th Cir. 1982) .................................................................................................31

*Toussaint v. Chevron Phillips Chem. Co.*,
   2006 WL 2349465 (E.D. La. Aug. 11, 2006) ...........................................................................6

*Transcon. Gas Pipe Line Corp. v. Mobile Drill Barge*,
   424 F.2d 684 (5th Cir. 1970) .................................................................................................30

*Trevino v. Lightning Laydown, Inc.*,
   782 S.W.2d 946 (Tex. App. 1990).........................................................................................32

*Turner v. Murphy Oil USA, Inc.*,
   No. 05-4206, 2007 WL 4208986 (E.D. La. Nov. 21, 2007)....................................................19

*Union Oil Co. v. Oppen*,
   501 F.2d 558 (9th Cir. 1974) .................................................................................................13

*Union Texas Petroleum Corp. v. PLT Eng'g*,
   895 F.2d 1043 (5th Cir. 1990) ...........................................................................................7, 11

*United States v. BP Exploration & Prod., Inc.*,
   No. 2:10-cv-04536.(E.D. La. Dec. 15, 2010) ........................................................................22

*Williams v. Classic Locksmith, LLC*,
   No. 2:06 CV 1547, 2010 WL 1506925 (W.D. La. Apr. 14, 2010).........................................28

*Wooten v. Pumpkin Air, Inc.*,
   869 F.2d 848 (5th Cir. 1989) ...................................................................................................7

*Younger v. Marshall Indus., Inc.*,
   618 So. 2d 866 (La. 1993) .....................................................................................................30

TABLE OF AUTHORITIES
(continued)

Page

**RULES**

Fed. R. Civ. P. 8 ..................................................................................................25, 26

Fed. R. Civ. P. 12 ...................................................................................................1, 29

Fed. R. Civ. P. 201 ....................................................................................................22

**REGULATIONS**

30 C.F.R. § 256.62 .....................................................................................................23

**STATUTES**

16 U.S.C. §§ 1451–1464 ............................................................................................15

16 U.S.C. § 1456 .........................................................................................................16

33 U.S.C. 2701 ...............................................................................................21, 23, 24

33 U.S.C. 2702 .......................................................................................................9, 21

33 U.S.C. 2707 ............................................................................................................20

33 U.S.C. 2713 .......................................................................................................9, 17

33 U.S.C. 2718 .....................................................................................................10, 16

42 U.S.C. § 9607 .........................................................................................................23

43 U.S.C. § 1331 ...........................................................................................................6

43 U.S.C. § 1333 .........................................................................................................11

43 U.S.C. § 1349 ..................................................................................................5, 6, 16

ALA. CODE § 6-5-121 (1975) ......................................................................................36

ALA. CODE § 6-11-20 (2010) ......................................................................................32

Clean Water Act, 33 U.S.C. §§ 1251–1387 ...............................................................34

Fed. Water Pollution Control Act Amendments of 1972, Pub. L. No. 92-500, 86 Stat. 816 ........14

LA. CIV. CODE ANN. art. 667 (2010) ..........................................................................35

TABLE OF AUTHORITIES
(continued)

Page

LA. REV. STAT. ANN. §§ 13:4711; 14:107.3 (2010).......................................................37

Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. §§ 2701–2761............................................. passim

Refuse Act of 1899, 33 U.S.C. § 407........................................................................34

**OTHER AUTHORITIES**

66 C.J.S. NUISANCES § 81 (1950) ...........................................................................36

135 CONG. REC. H7954-02 (daily ed. Nov. 2, 1989) ......................................................18

H.R. REP. NO. 101-242, pt. 2 (1989) .....................................................................18

H.R. REP. NO. 95-590 (1977), *reprinted in* 1978 U.S.C.C.A.N. 1450.........................................13

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(1) (1969) ................................................11

RESTATEMENT (SECOND) OF TORTS § 821 (1979)..........................................................35, 36

S. REP. NO. 101-94 (1990), *reprinted in* 1990 U.S.C.C.A.N. 722 ..................................................10

PRIVILEGED AND CONFIDENTIAL DRAFT
ATTORNEY WORK PRODUCT
SUBJECT TO ATTORNEY-CLIENT PRIVILEGE

## I.      INTRODUCTION

On September 9, 2010, the City of Greenville, City of Evergreen, City of Georgiana, and Town of McKenzie (together "Cities") filed a complaint against Anadarko Petroleum Corporation and Anadarko E&P Company LP (collectively "Anadarko"), and MOEX Offshore 2007 LLC ("MOEX Offshore") (all movants collectively the "Non-Operating Defendants").[1] On September 16, 2010, three Mexican States, Veracruz, Tamaulipas, and Quintana Roo (together "Mexican States") filed separate, substantively identical complaints against Anadarko Petroleum Corporation only.  Consistent with this Court's Case Management Order, this motion refers to the Cities and Mexican States collectively as "Public Damage Plaintiffs."[2]  Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Non-Operating Defendants move to dismiss all counts of the Public Damage Plaintiffs' complaints.

First, because federal law alone applies to claims arising out of exploration and drilling activities on the Outer Continental Shelf ("OCS"), the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. §§ 2701–2761, alone governs the claims of the Public Damage Plaintiffs in this case. Because OPA provides the only remedy for the Public Damage Plaintiffs, their non-OPA claims under the general maritime law or state law must be dismissed.

---

[1]      Reference to Anadarko Petroleum Corporation and Anadarko E&P Company, LP together as "Anadarko" and to all movants together as the "Non-Operating Defendants" is solely for purposes of this Motion and is not intended to, and expressly does not, indicate any relationship between the parties or signify in any way that each party is not an independent and distinct corporate entity.

[2]      The Public Damage Plaintiffs fall under Pleading Bundle C, as set forth in PTO NO. 11 [CMO No. 1] Section III(C), covering "claims brought by governmental entities for, *inter alia*, loss of resources, loss of tax revenues, response costs and civil penalties."  The complaints of the United States government, case no. 10-cv-4536, and the State of Louisiana *ex. rel.* Plaquemines Parish School Board, case no. 11-cv-0348, also fall within Pleading Bundle C but will be responded to in separate filings by Anadarko Petroleum Corporation, Anadarko E&P Company, and MOEX Offshore 2007.

Second, the Public Damage Plaintiffs' OPA claims must be dismissed because none has alleged compliance with OPA's pre-filing presentment requirement.  Moreover, the Mexican States' OPA claims must be dismissed because, in addition to failing to allege presentment, they have not addressed special OPA requirements that foreign claimants must prove.  Furthermore, the Cities fail to state OPA claims for which relief can be granted against Anadarko E&P because Anadarko E&P was not a lessee of the Macondo Prospect at the time of the discharge.

Third, even if non-OPA claims were available, the Public Damage Plaintiffs fail to state claims against the Non-Operating Defendants under general maritime law or state law for which relief can be granted.

## II.   BACKGROUND

### A.   The Cities' Complaint.

The Complaint filed by the Cities says nothing specific about Anadarko and MOEX Offshore except in two allegations.[3]  Cities Compl. ¶ 18(j–n).  The Cities allege that "BP, Anadarko Petroleum, and [MOEX Offshore] are the holders of a lease granted by the Minerals Management Service for the drilling of oil and performance of oil-production-related operations at the site of the oil release, and on April 20, 2010 operated the oil well that is the source of the oil release."  Cities Compl. ¶ 19.  The Cities also allege that "the *Deepwater Horizon* was manned, possessed, managed, controlled, chartered and/or operated, directly or through agents, by BP, Anadarko Petroleum, and [MOEX Offshore]."  Cities Compl. ¶ 24.

---

[3]     On February 25, 2011, the Alabama Cities voluntarily dismissed defendant Mitsui & Co. (USA), Inc.  *See* Notice of Voluntary Dismissal of Mitsui & Co. (U.S.A.), Inc., 2:10-cv-02179 (Rec. Doc. 1365). The Cities' allegations against "Mitsui" in their Complaint therefore are now allegations only against MOEX Offshore 2007.

These bare and conclusory allegations sharply contrast with their specific allegations about other defendants, especially BP and Transocean.  Indeed, the obvious focus of the Cities' Complaint is BP and Transocean, not the Non-Operating Defendants.  *See, e.g.*, Cities Compl. ¶ 20 ("BP was authorized to conduct offshore drilling operations using the semi-submersible drilling rig *Deepwater Horizon* at Macondo prospect MC252 in the Gulf of Mexico"); *id.* ¶ 21 (Transocean "owned" and "designed" the *Deepwater Horizon*).  The Cities otherwise vaguely refer to the actions, omissions, and duties of "Defendants" as whole, without differentiation.

Although they are non-coastal municipalities located in the State of Alabama, the Cities nonetheless allege that they have been injured by the *Deepwater Horizon* oil spill.  They claim that "[d]ue to the oil disaster and the attempted clean-up involving toxic chemicals, tourists have cancelled their plans to visit locations along the Gulf of Mexico" and that "[t]his decreased tourism to the Gulf has resulted in less traffic along I-65, US-31, and the connecting highways; less revenue for Plaintiffs' businesses; and substantially less tax revenue for the municipalities of Greenville, Evergreen, Georgiana, and McKenzie."  *Id.* ¶ 29.  The Cities also claim that they have "seen an increase in demand and costs for economic, human, and social services" as a result of the oil spill.  *Id.*  ¶ 17.

The Cities assert the following claims against the Non-Operating Defendants:  negligence and/or wantonness (Count I), negligence *per se* (Count II), and damages under OPA (Count III).

**B.**     **The Mexican States' Complaints.**

The Mexican States are sovereign states of the Republic of Mexico with coastlines on the western side of the Gulf of Mexico.  Veracruz Compl. ¶¶ 1, 7.[4]  The Mexican States assert

---

[4]     Because the three Mexican States' Complaints are virtually identical, even down to the enumeration of substantive allegations, this motion cites only the Veracruz Complaint.

claims against Anadarko Petroleum Corporation, but not against MOEX Offshore.  The Mexican

States acknowledge that the oil spill has not impacted their territories but claim that the

consequences of the spill eventually will flow westward and cause them harm.  Veracruz Compl.

¶¶ 5–6, 39–41.  Their complaints refer to Anadarko in only one allegation:

> Defendant Anadarko Petroleum Corporation is engaged, in part, in
> the business of oil and gas exploration, development, and
> production, both on-shore in places which include Texas and off-
> shore.   It is headquartered at 1201 Lake Robbins Drive, the
> Woodlands Texas, 77380-1046 and does business throughout the
> State of Texas.  Defendant Anadarko held a substantial financial
> interest (believed to be about twenty-five percent ownership) in the
> well that has spewed the oil into the Gulf.   This Defendant, in
> whole or in part, owned, controlled, managed, supervised, and/or
> oversaw Deepwater Horizon and the well that is the subject of this
> suit.

Veracruz Compl. ¶ 21.  Of the few factual allegations concerning the actions leading up to the oil

spill, none implicates Anadarko.   As in the Cities' complaint, the Mexican States allege that

"Transocean owned, and BP was leasing and operating, the Deepwater Horizon as it performed

production well completion operations on the outer continental shelf off the Gulf Coast, at the

site from which the massive oil spill originated."  Veracruz Compl. ¶ 22.  The Mexican States

allege that BP—not Anadarko—conducted the drilling operations that led to the spill.  Veracruz

Compl. ¶ 34.  They also allege that "BP, Transocean, and other Defendants" had knowledge of

unidentified "warning signs."  Veracruz Compl. ¶ 38.

The Mexican States assert six claims against Anadarko: negligence (Count I); gross

negligence (Count II); negligence *per se* (Count III); damages under OPA (Count IV); private

nuisance (Count V); and public nuisance (Count VI).

## III.   ARGUMENT

THE PUBLIC DAMAGE PLAINTIFFS' CLAIMS
AGAINST THE NON-OPERATING DEFENDANTS
MUST BE DISMISSED IN THEIR ENTIRETY BECAUSE
EACH FAILS TO STATE A CLAIM FOR
WHICH RELIEF CAN BE GRANTED.

### A.   OPA Alone Governs the Public Damage Plaintiffs' Claims, and Their State Law Claims Must be Dismissed.

The Public Damage Plaintiffs plead claims against the Non-Operating Defendants under federal and state law, yet taking the Public Damage Plaintiffs' factual allegations as true, state law cannot apply to this case.  Federal law alone applies to claims arising out of and in connection with oil exploration, development, and extraction operations on the OCS.  Although federal law sometimes borrows state law as surrogate federal law, it does not borrow the state laws that the Public Damage Plaintiffs invoke because OPA applies and leaves no gaps for state law to fill.  This result holds true regardless of the allegations that operations on the OCS have had harmful effects in Alabama's or Mexico's territorial waters or on their territorial lands.  Just as in cases involving interstate water pollution, federal law preempts the law of allegedly affected states in cases involving pollution flowing from the OCS .

Because federal law mandates that the Public Damage Plaintiffs can bring only OPA claims for the damages alleged in their Complaints, their non-OPA claims under state or federal law must be dismissed.  Moreover, courts have routinely held that the OPA presentment requirement is jurisdictional, and failure to comply mandates dismissal.  Because the Public Damage Plaintiffs have not alleged compliance with OPA's mandatory pre-filing presentment requirements, their Complaints fail to set forth an essential jurisdictional element of their claims, and their OPA claims should be dismissed.

1. **The Public Damage Plaintiffs' Cases Arise out of and in Connection with OCS Operations That Involve Exploration, Development, and Production of Minerals.**

Through the Outer Continental Shelf Lands Act ("OCSLA"), Congress has given federal courts broad jurisdiction over all "cases and controversies arising out of, or in connection with any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals . . . ." 43 U.S.C. § 1349(b)(1)(A).  This Court already has held that OCSLA gives it jurisdiction over cases like those of the Public Damage Plaintiffs.  *See* Order Denying State of Louisiana's Motion to Remand, Case No. 10-cv-1758 [Dkt. # 471] (E.D. La. Oct. 6, 2010).  As this Court recognized, but for "exploring and producing minerals, namely oil, from the outer Continental Shelf," "the April 20, 2010 explosion and the resulting oil spill" would not have caused the Public Damage Plaintiffs the harms they allege.  *Id.* For those reasons, the Public Damage Plaintiffs' claims satisfy the two-part test for determining OCSLA jurisdiction.  *See id.* (discussing the "operation" and causation requirements for OCSLA jurisdiction laid out in *EP Operating LP v. Placid Oil Co.*, 26 F.3d 563, 568–69 (5th Cir. 1994)); *see also Nase v. Teco Energy, Inc.*, 347 F. Supp. 2d 313, 317 (E.D. La. 2004) (OCSLA confers jurisdiction when events occur on the OCS and "arise out of or relate to mineral production") (citing 43 U.S.C. § 1331(a)).

2. **OCSLA Prescribes the Choice-of-Law Rules That Apply to the Public Damage Plaintiffs' Cases, and Those Rules Restrict Application of Substantive State Law.**

OCSLA does more than confer federal-court jurisdiction in these cases.  It also "provides comprehensive choice-of-law rules . . . to a wide range of activity occurring beyond the territorial waters of the states on the outer continental shelf of the United States."  *Demette v.*

*Falcon Drilling Co.*, 280 F.3d 492, 495 (5th Cir. 2002), *overruled in part on other grounds by Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778, 782–83 (5th Cir. 2009).[5] OCSLA's choice-of-law rules, codified in Section 1333 of the Act, apply to all cases within OCSLA's jurisdictional grant: "the most consistent reading of the statute instructs that the jurisdictional grant of section 1349 should be read co-extensively with the substantive reach of section 1333." *EP Operating*, 26 F.3d at 569 & n.14; *see Toussaint v. Chevron Phillips Chem. Co.*, 2006 WL 2349465, at *2 (E.D. La. Aug. 11, 2006) (when a "case arises in connection with a mineral production operation on the Outer Continental Shelf[,] it falls within the scope of OCSLA," and Section 1333 "in turn" applies); *see also Ten Taxpayer Citizens Group v. Cape Wind Assocs.*, 373 F.3d 183, 192–93 (1st Cir. 2004) (Section 1333 applies even when Section 1349 does not).  Under OCSLA, this Court must look to only Section 1333 to determine which substantive laws—federal statutory law, general maritime law, or state law—govern the Public Damage Plaintiffs' claims.   Other choice-of-law rules, such as those of the forum state or maritime choice-of-law rules, are irrelevant.  *See Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 482 n.8 (1981) (OCSLA "supersede[s] the normal choice-of-law rules that the forum would apply"); *see also Wooten v. Pumpkin Air, Inc.*, 869 F.2d 848, 852 (5th Cir. 1989) (rejecting the *renvoi* argument that Section 1333 adopts the choice-of-law rules of the state adjacent to an OCSLA situs).

The purpose of Section 1333 is "to define a body of law applicable to the seabed, the subsoil, and the fixed structures . . . on the outer Continental Shelf." *Rodrigue v. Aetna Cas. &*

---

[5]     *Grand Isle* holds that, for tort actions under OCSLA, the situs of a claim is the location where the controversy arises.  *See Grand Isle*, 598 F.3d at 784.  For contract actions, the situs of a claim is the location where the majority of work under the contract is to be performed.  *Id.* at 787.  In so holding, the Fifth Circuit overruled prior decisions (like *Demette*) insofar as they applied the tort situs analysis to contract claims.  However, *Demette*'s other holdings remain good law.  *Id.*

*Sur. Co.*, 395 U.S. 352, 355 (1969); *see Demette*, 280 F.3d at 495.  After considering several choice-of-law options and recognizing "substantial doubt whether state law and jurisdiction could or should be extended," *Rodrigue*, 395 U.S. at 364, Congress determined that "federal law is 'exclusive' in its regulation of this area, and that state law is adopted only as surrogate federal law," *id.* at 357, and "then only when no inconsistent federal law applied."  *Id.* at 358.  According to Section 1333(a), then, the substance of state law may apply (as "surrogate federal law") in an OCSLA case, but only if the controversy arises on a situs covered by OCLSA, if substantive maritime law does not apply, and if state law is not inconsistent with federal law. *Union Texas Petroleum Corp. v. PLT Eng'g*, 895 F.2d 1043, 1047 (5th Cir. 1990); *see Demette*, 280 F.3d at 499 ("Since the incident occurred on the OCS beyond the territorial waters of Louisiana, the only way state law could have operated was by incorporation into federal law under OCSLA").  Otherwise, federal law, not supplemented by state law, is all that applies.

### 3.      OPA, Not State Law, Governs the Public Damage Plaintiffs' Claims.

The Public Damage Plaintiffs allege that they were injured by oil spilled as the result of OCS drilling operations conducted by the *Deepwater Horizon* while it was temporarily attached to the OCS seabed.   Cities Compl. ¶ 2; Veracruz Compl. ¶¶ 3–5.   The Mexican States specifically allege that the "*Deepwater Horizon* and the well" on the OCS "is the subject of this case."  Veracruz Compl. ¶ 21.  As alleged, the controversy arose on an OCSLA situs: the subsoil and seabed of the OCS and devices (like vessels) exploring, developing, or producing OCS resources.  *See Demette*, 280 F.3d at 497; *Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 549–50 (5th Cir. 2002) (holding that a semisubmersible drilling vessel is an OCSLA situs under Section 1331(a)(1) when it is temporarily attached to the OCS for purposes of exploring for resources), *overruled in part on other grounds by Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778, 782–83 (5th Cir. 2009).  The controversy is "inextricably linked" to

resource exploration and development on the OCS "and would not have arisen but for such development." *Texaco Exploration & Prod., Inc. v. AmClyde Engineered Prods. Co.*, 448 F.3d 760, 774 (5th Cir. 2006).  State law therefore can apply to the Public Damage Plaintiffs' claims only if there is no applicable federal statutory law, if substantive maritime law does not apply, and if state law is not inconsistent with federal law.

In this case, OPA applies whether or not plaintiffs' claims are deemed maritime, and the state laws that the Public Damage Plaintiffs invoke do not apply at all because they are duplicative of and inconsistent with OPA.  OPA is Congress's comprehensive and reticulated liability scheme for all cases governed by federal or maritime law alleging damages covered by OPA.  *See Gabarick v. Laurin Mar. (Am.) Inc.*, 623 F. Supp. 2d 741, 750–51 (E.D. La. 2009) (general maritime law claims are displaced by OPA); *Tanguis v. M/V Westchester*, 153 F. Supp. 2d 859, 867 (E.D. La. 2001) (OPA "includes new remedies, which . . . preempt traditional maritime remedies"); *South Port Marine, LLC v. Gulf Oil LP*, 234 F.3d 58, 65–66 (1st Cir. 2000) ("Congress's very specific treatment of oil pollution in the OPA . . . supplanted general admiralty and maritime law . . . ."); *Gatlin Oil Co. v. United States*, 169 F.3d 207, 209 (4th Cir. 1999) (Congress enacted OPA to provide a "prompt, federally-coordinated response to oil spills in navigable waters of the United States and to compensate innocent victims"); *Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atl. Corp.*, 924 F. Supp. 1436, 1447 (E.D. Va. 1996), *aff'd*, 122 F.3d 1062 (4th Cir. 1997) ("OPA clearly preempts maritime law as to recovery of cleanup expenses and the cost of compensating injured persons").

As the Public Damage Plaintiffs have tacitly confirmed by bringing OPA claims, OPA provides the same type of relief that they seek under state law.  Cities Compl. ¶ 40; Veracruz Compl. ¶¶ 5–6.  "[E]ach responsible party for a vessel or a facility from which oil is discharged

. . . into or upon the navigable waters or adjoining shorelines . . . is liable for the removal costs and damages," including damages to natural resources, real or personal property, subsistence use, taxes, revenues, profits, and public services.  33 U.S.C. §§ 2702(a), (b)(2)(A–F).

Because OPA is comprehensive and was meant to apply by itself, there is no gap that OCSLA would use state law to fill.  Moreover, the state laws that the Public Damage Plaintiffs invoke are inapplicable, in any event, because they are inconsistent with OPA in at least two respects.  <u>First</u>, whereas state-law claims for relief can be litigated immediately, OPA requires that "all claims for removal costs or damages shall be presented first to the responsible party . . . ."  33 U.S.C. § 2713(a).  <u>Second</u>, unlike state law, OPA bars claims for punitive damages.  *See South Port Marine*, 234 F.3d at 65–66.

State law therefore cannot be the basis for the Public Damage Plaintiffs' claims.  Unlike cases involving oil spills in state territorial waters, in this case OPA and state law are not alternatives, such that the Public Damage Plaintiffs can choose to plead one or the other.  In accordance with the choice-of-law rules in Section 1333(a) of OCSLA, OPA alone—not state law applying of its own force or applying as surrogate federal law—provides the substantive rules for claims arising out of oil spills originating from operations on the OCS.  Because it is OCSLA—not OPA—that precludes application of state law, OPA's savings clause, which limits only the preemptive effect of OPA itself, does not allow state law to be applied in this case.  *See* 33 U.S.C. § 2718; *cf. Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 223–27 (1986) (holding that the savings clause in the Death on the High Seas Act does "not implicitly sanction the operation of state wrongful death statutes on the high seas," where states have no power, but only "preserve[s] the state courts' jurisdiction to provide wrongful death remedies under state law for fatalities *on territorial waters*") (emphasis added); *Ten Taxpayer Citizens Group v. Cape*

*Wind Assocs.*, 373 F.3d 183, 193–97 (1st Cir. 2004) (rejecting the argument that a federal statute recognizing state power over specific activities overrides OCSLA's displacement of state law on the OCS).[6]

### 4.    Allegations That the Public Damage Plaintiffs Were Injured on Land or in State Waters Do Not Change the Choice-of-Law Inquiry or Its Result.

To escape the consequences of OCSLA and OPA, the Public Damage Plaintiffs may argue that their alleged injuries did not (or will not) occur until oil from operations on the OCS migrated (or will migrate) by wind and wave into territorial waters and onto land.  Cities Compl. ¶ 40; Veracruz Compl. ¶ 4.  Such allegations do not overcome Section 1333(a)'s choice-of-law rules, which apply "co-extensively" with Section 1349.  *EP Operating LP v. Placid Oil Co.*, 26 F.3d 563, 569 & n.14 (5th Cir. 1994).  The Non-Operating Defendants are aware of no case under Section 1349 where a court used choice-of-law rules other than those Congress prescribed in Section 1333.[7]

---

[6]    When enacting OPA, Congress foresaw this very result.  Senators Chaffee, Lieberman, Graham, and Durenberger objected that an early draft of OPA was ill-suited to OCS oil spills because it would have capped liability for cleanup costs.  S. REP. NO. 101-94, at 26 (1990), *reprinted in* 1990 U.S.C.C.A.N. 722, 748.  In a statement on the bill, which had a savings clause like that which was ultimately enacted into law, the Senators noted that states could not impose additional liability for cleanup costs above the cap because OCS facilities "are outside the 3 mile limit, and therefore are not subject to state laws." *Id.* at 27, 1990 U.S.C.C.A.N. at 749.  Congress responded to the Senators' objection by eliminating the cap on cleanup liability—not by giving states authority over OCS oil spills.

[7]    Section 1333's primacy in this case defeats any argument that the Court should employ *dépeçage*, by which the "rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties . . . ."  RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(1) (1969).  Neither the most-significant-interest test for choice of law nor its *dépeçage* variant has a place in a Section 1349 case.  *Cf. Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778, 804 & n.8 (5th Cir. 2009) (Owen, J., dissenting) (proposing *dépeçage* as superior to the majority's focus-of-the-contract test for determining the "situs of the controversy" in contract cases governed by Section 1333).  Section 1333 does not license a free-ranging investigation of interests.  Even when state law applies as surrogate federal law, courts do not pick the law of the state most interested in a case; Congress required applying the civil and criminal laws of the "adjacent State," regardless of interests.  43 U.S.C. § 1333(a)(2)(A).

Nor do allegations that the Public Damage Plaintiffs were injured within state (or foreign state) territories indicate that, for Section 1333 purposes, the "situs" of the controversy is somewhere other than the OCS or the *Deepwater Horizon*. *See Union Texas Petroleum Corp. v. PLT Eng'g*, 895 F.2d 1043, 1047 (5th Cir. 1990). As an initial matter, it is not clear that state law would apply of its own force even if the situs of the controversy were not an OCSLA situs. Section 1333's situs-of-the-controversy requirement helps distinguish between OCSLA cases closely connected with the OCS and operations thereon (which, under Section 1333(a), are governed by federal statutory law with state law as surrogate federal law) and OCSLA cases involving traditional maritime interests (which are governed by maritime law). *See Demette v. Falcon Drilling Co.*, 280 F.3d 492, 504 n.53 (5th Cir. 2002), *overruled in part on other grounds by Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778, 782–83 (5th Cir. 2009) ("OCSLA requires courts to draw lines between the zones in which surrogate federal law applies and in which admiralty law applies"); *see also Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352, 363 (1969) ("Careful scrutiny of the hearings which were the basis for eliminating from the [OCSLA] the treatment of artificial islands as vessels convinces us that the motivation for this change, together with the adoption of state law as surrogate federal law, was the view that maritime law was inapposite to these fixed structures"). The Non-Operating Defendants are aware of no case where a court following Section 1333 determined that state law applied of its own force.

Regardless, an OCSLA situs is the "situs of a controversy" as long as the alleged tortious activity occurred on the OCSLA situs, even if the alleged injury occurred elsewhere. *See Alleman v. Omni Energy Servs. Corp.*, 580 F.3d 280, 286 (5th Cir. 2009) (accidents occurring on a fixed platform are not governed by maritime law merely because an injury begun by activities

on the platform was consummated at sea); *Texaco Exploration & Prod., Inc. v. AmClyde Engineered Prods. Co.*, 448 F.3d 760, 773 (5th Cir. 2006) (federal statutory law supplemented with state law applies when harms occur on fixed platforms and when harms "aris[e] directly from" them); *see also Grand Isle*, 589 F.3d at 787–88 (in a contract case, an OCSLA situs is the situs of the controversy if it is where the majority of the <u>activity</u> contemplated by the contract is to occur); *cf. Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 531 (1995) (the Extension of Admiralty Jurisdiction Act "invest[s] admiralty with jurisdiction over 'all cases' where the injury was caused by a ship or other vessel on navigable water, even if such injury occurred on land").  Legislative history confirms Congress's intent to have federal law apply to "activities" on OCSLA situses.  H.R. REP. NO. 95-590, at 128 (1977), *reprinted in* 1978 U.S.C.C.A.N. 1450, 1534.[8]   A holding that injury, not activity, determines the situs of the controversy would have the opposite effect.[9]

Even if the place of injury was one factor to consider in determining the situs of this controversy, it should not be dispositive.  The Public Damage Plaintiffs' allegations revolve

---

[8]      The House Report states: "Section 203—Laws Applicable to Outer Continental Shelf[:] . . . It is thus made clear that Federal Law is to be applicable to <u>all activities</u> on all devices in contact with the seabed for exploration, development, and production.  The Committee intends that Federal Law is, therefore, to be applicable to <u>activities</u> on drilling ships, semi-submersible drilling rigs, and other watercraft, when they are connected to the seabed by drillstring, pipes, or other appurtenances, on the OCS for exploration, development, or production purposes."  H.R. REP. NO. 95-590, at 128, 1978 U.S.C.C.A.N. at 1534 (emphasis added).

[9]      Contrary language in *Landry v. Island Operating Co.*, No. 09-1051, 2009 WL 3241560 (W.D. La. Sept. 30, 2009), is not persuasive.  Considering whether OCSLA justified removal of a case from state court when the plaintiff was complaining of injuries he suffered on shore while welding a pressurized tanker that had been filled with flammable substances on an offshore rig, the court asserted that "the 'situs' required to trigger OCSLA refers to the location of the injury."  *Id.* at *3.  Putting aside the court's conflating OCSLA jurisdiction (under Section 1349) with the situs element of the OCSLA choice of law standard (under Section 1333), the heart of the court's reasoning is not that erroneously broad statement, but its conclusion that "[t]he manner in which plaintiff allegedly sustained injury simply bears too indirect and attenuated a relationship to any 'operation' on the OCS for defendants to be allowed to invoke OCSLA."  *Id.*  In this case, by contrast, the alleged injuries are directly tied to operations on the OCS.

around the operations on the *Deepwater Horizon* and the steps taken following the spill.  Cities Compl. ¶¶ 25–27; Veracruz Compl. ¶¶ 34–37.  This case's geographic center of gravity is on the OCS, regardless of where the Public Damage Plaintiffs may allegedly have suffered injury.[10]

### 5.    In Cases Involving Oil Spills Originating from the OCS, the Law of an Affected State Is Preempted.

Any effort to have the Court apply *lex loci delicti* in this case, either as the overarching choice-of-law rule instead of Section 1333 or through Section 1333's situs-of-the-controversy requirement, would fail for another reason.  The Supreme Court has held that federal law preempts applying an affected state's law (that is, the state where an injury allegedly occurs) to interstate water pollution originating from outside that state.  Likewise, federal law also preempts applying an affected state's law to claims arising out of oil spills originating from OCS sources, far outside the reach of any state's jurisdiction.

"[R]egulation of interstate water pollution is a matter of federal, not state, law . . . ."  *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 488 (1987) (citations omitted).  Before Congress extensively regulated in the area (through, for instance, the Clean Water Act), courts did not undertake a choice-of-law analysis in cases of interstate water pollution because federal common

---

[10]     Before most of the relevant Fifth Circuit and the Supreme Court opinions on OCSLA, the Ninth Circuit reached a consistent conclusion in a factually analogous case.  In 1969, large amounts of oil escaped from the OCS, which currents carried into Santa Barbara harbor, where the oil damaged boats, the livelihood of fisherman, and the local environment.  In two cases arising out of the spill, the Ninth Circuit, despite stating that the "locus of a tort is the place where injury takes effect," *Oppen v. Aetna Ins. Co.*, 485 F.2d 252, 256 (9th Cir. 1973), applied OCSLA and concluded "that admiralty law [could be] exclusively applicable to the present controversy."  *Union Oil Co. v. Oppen*, 501 F.2d 558, 561 (9th Cir. 1974).  In neither case did the court hold that state law, either through OCSLA or of its own force, applied to the spill, because it found that state standards either were not met or were duplicative.  *See Aetna*, 485 F.2d at 259 ("Even assuming that the California statutes providing a remedy for nuisance were intended to apply to injuries occurring within the navigable waters, and that . . . such application would be constitutional, it would not help the plaintiffs in the present case"); *Union Oil*, 501 F.2d at 563 ("[W]e are content to say that for purposes of this case we regard it as irrelevant whether our efforts are designated as an exposition of admiralty law or the law of California").

law alone provided all substantive rules of decision.  *See Illinois v. Milwaukee*, 406 U.S. 91, 102 (1972), *superseded by statute*, Fed. Water Pollution Control Act Amendments of 1972, Pub. L. No. 92-500, 86 Stat. 816, *as recognized in Conner v. Aerovox, Inc.*, 730 F.2d 835, 836 (lst Cir. 1984); *see also Texas v. Pankey*, 441 F.2d 236, 241 (10th Cir. 1971) ("Federal common law and not the varying common law of the individual States is, we think, entitled and necessary to be recognized as a basis for dealing in uniform standard with the environmental rights of a State against improper impairment by sources outside its domain").  While federal statutes have since displaced the *ad hoc* federal common law remedy, *see City of Milwaukee v. Illinois*, 451 U.S. 304, 317 (1981), "it is clear that the only state suits that remain available are those specifically preserved by" the new federal statutes.  *Ouellette*, 479 U.S. at 492.  Thus, the Supreme Court held that the Clean Water Act, in light of its text, purposes, and history and <u>notwithstanding its savings clause</u>, does not "preserve the right to bring suit under the law of any affected State."  *Id.* at 493.  To apply the law of an affected state to pollution originating in another state would seriously undermine, and stand as an obstacle to the full implementation of, the methods by which the Clean Water Act regulates interstate water pollution.  *Id.* at 494–97 (explaining how applying an affected state's law would circumvent the Act, which gives regulatory authority only to EPA and source states and which defines a narrow role for affected states).  Because of those federal-state conflicts, together with the likelihood of state-state conflicts, the Court ultimately held that the Act's savings clause preserves only claims brought under the law of a source state. *Id.* at 497–500; *see id.* at 495 ("An interpretation of the saving clause that preserved actions brought under an affected State's law would disrupt this balance of interests").[11]

---

[11]      The Clean Water Act's preservation of source-state law is inapplicable here because the Public Damage Plaintiffs have pleaded that the oil that harmed them was discharged not from within a state, but

(Footnote Continued on Next Page.)

Applying the law of affected states to oil spills originating on the OCS would equally frustrate Congress's methods for regulating OCS operations and would lead to problems of conflicting multistate regulation.  Through OCSLA and the Coastal Zone Management Act (CZMA), 16 U.S.C. §§ 1451–1464, the federal government extensively regulates exploration and drilling operations on the OCS for their potential environmental impacts.  *See Mobil Oil Exploration & Producing SE, Inc. v. United States*, 530 U.S. 604, 609–10 (2000) (summarizing the four pillars of the comprehensive regime).  Just as in *Ouellette*, applying the law of affected states to discharges from OCS operations would circumvent this careful scheme, which specifically assigns only an advisory rather than a regulatory role to affected states.  "The inevitable result of" applying an affected state's law "would be that . . . States could do indirectly what they could not do directly—regulate the conduct of" OCS operations.  *Ouellette*, 479 U.S. at 495.  Applying the law of affected states also would "undermine the important goals of efficiency and predictability."  *Id.* at 496.  "[A]pplication of numerous States' laws would only exacerbate the vagueness and resulting uncertainty," *id.*, especially because many states may be affected by a single oil spill originating from the OCS, and the affected states' regulatory authority would be the product of such indeterminable variables as the wind and tide.  Also as in *Ouellette*, the savings clauses in the relevant federal statutes (*e.g.*, 16 U.S.C. § 1456(e) (CZMA); 33 U.S.C. § 2718 (OPA); 43 U.S.C. § 1349(a)(6) (OCSLA)) do not obviate resort to ordinary conflict preemption principles.  *See Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 869–74 (2000) (citing *Ouellette*, 479 U.S. at 493-94); *cf. Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 230 (1986) ("[I]t is hardly conceivable that Congress," through a mere savings clause,

---

(Footnote Continued from Previous Page.)

from a federal enclave—a well on the OCS.

"could have intended that these diverse state statutes could be applied to remedy maritime torts occurring the world over").

*Askew v. Am. Waterways Operators, Inc.*, 411 U.S. 325 (1973), does not require a contrary result.  There, considering a limited preemption question, the Supreme Court approved a Florida statute that, by its own terms, governed only oil pollution discharged from within Florida's territory.  *Id.* at 327–38.  While the Court broadly opined that "sea-to-shore pollution" was "historically within the reach of the police power of the States," *id.* at 343, the Court held only that the federal Water Quality Improvement Act (earlier legislation upon which the Clean Water Act expanded) and general maritime law did not preempt Florida's oil-pollution law, reserving the question of whether the law otherwise unconstitutionally "conflict[ed] with any federal Act." *Id.*  The Clean Water Act, OCSLA, and OPA were not at issue in *Askew*, and they are what preempts applying the substantive laws of states affected by oil spills originating on the OCS.  Thus, in this case, the comprehensive federal regulation allocating responsibility for the environmental impacts of OCS operations preempts applying the substantive law of states affected by oil spills originating on the OCS and does no violence to *Askew*.

Because of Section 1333 and comprehensive federal regulation of the environmental impacts of OCS operations, state law cannot apply to the Public Damage Plaintiffs' claims. Federal law must apply, and OPA is that law.  Accordingly, all of the Public Damage Plaintiffs' non-OPA claims must be dismissed because the substantive law upon which they rely is not available.

**B.** **The Public Damage Plaintiffs Have Not Satisfied Requirements for Filing a Claim Under OPA, and Their Claims Must be Dismissed.**

    **1.** **The Public Damage Plaintiffs' OPA Claims Must be Dismissed Because They Do Not Allege That They Complied with OPA's Pre-Suit Presentment Requirement.**

The Public Damage Plaintiffs fail to state claims under OPA for which relief can be granted against the Non-Operating Defendants because they do not allege compliance with OPA's jurisdictional presentment requirement.  Before filing an OPA claim in court, a plaintiff must first present his claim to the designated responsible party.  *See* 33 U.S.C. § 2713(a).  Only after a claim is presented and either the responsible party denies liability or the claim is not settled within 90 days may a plaintiff "elect to commence an action in court against the responsible party or guarantor."  33 U.S.C. § 2713(c).  Because the Court lacks jurisdiction over claims that have not been first presented, the Public Damage Plaintiffs' jurisdictional defect cannot be cured by a tardy presentment of their claims in the midst of ongoing litigation, and their OPA claims must be dismissed.

Simply put, "the clear text of § 2713 creates a mandatory condition precedent barring all OPA claims <u>unless and until</u> a claimant has presented her claims . . . ."  *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.*, 51 F.3d 235, 240 (11th Cir. 1995) (emphasis added).  By failing to comply and rushing to the courthouse instead, the Public Damage Plaintiffs undermine one of the principal purposes of OPA.  Congress wanted to avoid slow and costly litigation and believed that lawsuits are appropriate only "where attempts to reach a settlement with the responsible party . . . were unsuccessful."  H.R. REP. NO. 101-242, pt. 2, at 66 (1989); *see* 135 CONG. REC. H7954-02 (daily ed. Nov. 2, 1989) (statement of Rep. Hammerschmidt), 135 Cong. Rec H7954-02, at *H7965 (Westlaw) (OPA is "intended to allow for quick and complete payment of reasonable claims without resort to cumbersome litigation"); *id.* at *H7962 (statement of Rep.

Lent) ("The thrust of [OPA] is to eliminate, to the extent possible, the need for an injured person to seek recourse through the litigation process . . . ."); *id.* at *H7955 (statement of Rep. Jones) ("We do not want claimants to have to wait years upon years to recover their losses while lawsuits drag on in the courts"). The claims presentment provision reflects a compromise "to temper the Act's increased liability with a congressional desire to encourage settlement and avoid litigation." *Boca Ciega*, 51 F.3d at 238–39 (citing legislative history of the Act). This central Congressional purpose—the fundamental premise and condition precedent for the enactment and application of the Oil Pollution Act—cannot be ignored for convenience's sake or any other reason.

Accordingly, courts—including this Court—have consistently held that OPA's presentment requirement "is jurisdictional and mandates dismissal when . . . not complied with by the claimant." *Marathon Pipe Line Co. v. LaRouche Indus. Inc.*, 944 F. Supp. 476, 477 (E.D. La. 1996); *see also Turner v. Murphy Oil USA, Inc.*, No. 05-4206, 2007 WL 4208986, at *2 (E.D. La. Nov. 21, 2007) (presentment provision is a "'mandatory condition precedent'" to bringing a suit under OPA) (quoting *Boca Ciega*, 51 F.3d at 240); *Russo v. M/T Dubai Star*, No. C 09-05158 SI, 2010 WL 1753187, at *2–3 (N.D. Cal. Apr. 29, 2010) (collecting cases holding that OPA's presentment requirement is jurisdictional and mandates dismissal for failure to comply). Indeed, this Court has ruled that dismissal, not some lesser remedy, is the proper course when a party files an OPA claim in court before presenting it to a responsible party. *Gabarick v. Laurin Maritime (Am.) Inc.*, No. 08-4007, 2009 WL 102549, at *3 (E.D. La. Jan. 12, 2009) (dismissing OPA claims for failing to comply with OPA's presentment requirement and denying plaintiff's request for a stay in lieu of dismissal). Jurisdictional defects, like failure to comply with the presentment requirement, cannot be cured in the midst of litigation. *Hallstrom*

*v. Tillamook County*, 493 U.S. 20, 33 (1989) (holding that failure to comply with a 60-day notice provision necessitates dismissal and that a district court cannot stay the case to await compliance); *Nat'l Envtl. Found. v. ABC Rail Corp.*, 926 F.2d 1096, 1097–98 (11th Cir. 1991) ("If a plaintiff fails to comply with [the notice requirement of the Clean Water Act] where it is applicable, the district court is required to dismiss the action"); *Gregory v. Mitchell*, 634 F.2d 199, 203–04 (5th Cir. 1981) (holding that "[t]he requirement of exhaustion of administrative review is a jurisdictional requisite to the filing of an action under the FTCA" and that the failure to exhaust cannot be cured by a stay of the case until the requirement is met); *Hooper v. Thomas*, No. 01-1730, 2002 WL 1268399, at *1 (E.D. La. June 5, 2002) (holding that the "federal court's power to adjudicate a claim brought under the Federal Tort Claims Act depends solely on whether the claimant has previously complied" with the mandatory notice requirement and that a "stay pending exhaustion cannot cure a jurisdictional defect which was present when the suit was filed").

The Public Damage Plaintiffs have adduced no justification for their failure to comply with OPA's presentment requirement. Dismissal is the only way to vindicate that essential Congressional objective. Because they have not alleged a jurisdictional element of their claim—presentment—the Public Damage Plaintiffs' OPA claims against the Non-Operating Defendants must be dismissed.

> **2.      The Mexican States' OPA Claims Must Be Dismissed Because They Have Not Alleged Necessary Elements of Their Claims.**

The Mexican States are foreign claimants and are therefore subject to additional requirements under OPA. *See* 33 U.S.C. § 2707(a), (c). They must demonstrate that they have "not been otherwise compensated for the removal costs or damages" and that "recovery is authorized by a treaty or executive agreement between the United States and the claimant's

country, or [that] the Secretary of State, in consultation with the Attorney General and other appropriate officials, has certified that the claimant's country provides a comparable remedy for United States claimants."  33 U.S.C. § 2707(a)(1).  The Mexican States do not allege either essential element in their complaints.  Furthermore, the movants are not aware of any treaty or executive agreement authorizing the Mexican States to bring OPA claims, nor are they aware that the Secretary of State has certified that parties like the Mexican States can bring OPA claims.  These pleading defects are fatal to the Mexican States' OPA claims, so those claims must be dismissed.

> **3.**      **The Cities' OPA Claim Against Anadarko E&P Must be Dismissed Because Anadarko E&P Did Not Hold a Lease Interest in the Macondo Prospect at the Time of the Discharge.**

The Cities allege that Anadarko E&P is liable as a responsible party under OPA because "Anadarko Petroleum" is a holder of a "lease granted by the Minerals Management Service for the drilling of oil . . . ."  Cities Compl. ¶ 19.  However, public Bureau of Ocean Energy Management, Regulation and Enforcement ("BOEMRE") records establish that Anadarko E&P's status as a lessee of the Macondo Prospect terminated as of April 1, 2010, before the alleged discharge on April 20, 2010.[12]  *See* Ex. B.  Prior to the *Deepwater Horizon* incident, Anadarko

---

[12]      Lease Owner Query Search Results, BUREAU OF OCEAN ENERGY MANAGEMENT, REGULATION AND ENFORCEMENT, http://www.gomr.boemre.gov/homepg/fastfacts/leaseOwner/master.asp (check box next to "Lease Number;" enter G32306 into text box next to "Lease Number;" click "Submit Query" button). Ex. B. Under Rule 201(b), the court may take judicial notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  *See Terrebonne v. Blackburn*, 646 F.2d 997, 1000 n.4 (5th Cir. 1981) ("Absent some reason for mistrust, courts have not hesitated to take judicial notice of agency records and reports").  This includes information from reliable sources on the internet.  *See, e.g., O'Toole v. Northrop Grumman Corp*., 499 F.3d 1218, 1224–25 (10th Cir. 2007) (abuse of discretion for court not to take judicial notice of company's earnings information posted on website); *Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005) (taking judicial notice of information found on agency website). The Court may also consider documents upon which a complaint is based irrespective of whether plaintiff has chosen to cite or quote them.  *See In re Burlington Coat Factory Sec. Litig*., 114 F.3d 1410, 1426 (3d Cir. 1997) ("Plaintiffs cannot prevent a court from looking at the text[] of the documents on which its claim is based

(Footnote Continued on Next Page.)

E&P assigned its interest in the lease to Anadarko Petroleum Corporation.   *See* Ex. C, Assignment of Record Title Interest in Federal OCS Oil and Gas Lease.  Although MMS did not approve the assignment until April 28, 2010, by law the effective date was April 1, 2010 as approved by the MMS.  30 C.F.R. § 256.62(c); Ex. C.  Thus, as a matter of law Anadarko E&P held no interest in the lease at the Macondo Prospect as of April 1, 2010, is not a person "holding a leasehold interest" at the time of the alleged discharge, and is not a responsible party under OPA.

For purposes of determining the responsible party, OPA does not define "lessees" to include <u>former lessees</u>.  *See Carr v. United States*, 130 S. Ct. 2229, 2236 (2010) ("Consistent with normal usage, we have frequently looked to Congress' choice of verb tense to ascertain a statute's temporal reach") (citations omitted); *cf.* 42 U.S.C. § 9607(a)(2) (imposing former owner/operator liability on persons who "owned or operated" facility at time of a disposal).  Rather, under OPA, former lessees are responsible parties only in "the case of an abandoned . . . offshore facility," which is not the case here.  33 U.S.C. § 2701(32)(F).  If former lessees were also liable as responsible parties, then this provision would be superfluous.  *See Carrieri v. Jobs.com, Inc.*, 393 F.3d 508, 520 n.11 (5th Cir. 2004) ("A couple of canons of construction state that a statute should be construed such that none of its terms are redundant and should be read to avoid internal inconsistency") (citations omitted).  Even in such cases, instead of imposing liability on any former lessee, Congress imposed liability on only "the persons who would have been responsible parties <u>immediately prior</u> to the abandonment of the . . . facility."  33 U.S.C. § 2701(32)(F) (emphasis added); *see also* 33 U.S.C. § 2701(26)(A)(iii), (iv) (regarding

---

(Footnote Continued from Previous Page.)

by failing to attach or explicitly cite them").

owner/operator liability).

Courts have construed similar provisions in the Clean Water Act as defining liable parties based on the time of the discharge or discovery of the discharge.  *See Quaker State Corp. v. U.S. Coast Guard*, 681 F. Supp. 280, 285 (W.D. Pa. 1988).  Because the assignment occurred before the *Deepwater Horizon* incident, Anadarko E&P did not hold any leasehold interest at the time of the spill, which the Cities allege occurred on April 20, 2010.  Cities' Compl. ¶ 25.  *Cf. In re Settoon Towing LLC*, 722 F. Supp. 2d 710, 713 (E.D. La. 2010) (finding holder of state lease of mineral rights at time of discharge "responsible party" despite assignment of interest, which had a retroactive effective date, that occurred eight months after discharge and was approved eleven months after discharge).  Thus, the Cities' OPA claim against Anadarko E&P fails as a matter of law and must be dismissed.

> **C.     Even if the Public Damage Plaintiffs' Claims Were Not Preempted, Their Claims Under Maritime or State Law Must be Dismissed.**

For the reasons explained, OPA controls this case, and neither maritime law nor state law applies.  Absent the preemptive effects of OCSLA and OPA, federal maritime law, not state law, would govern the complaints.  Where, as here, the <u>location</u> of a tort is on navigable waters and the injury is <u>connected</u> to a traditional maritime activity, federal admiralty and maritime law supplies the rules of decision, as opposed to state common law.  *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co*., 513 U.S. 527, 533–34 (1995); *see Theriot v. Bay Drilling Corp*., 783 F.2d 527, 538–39 (5th Cir. 1986) ("Oil and gas drilling on navigable waters aboard a vessel is recognized to be maritime commerce") (citations omitted).

Moreover, if any state law possibly could apply in this case, it would be the law of Louisiana, because OCSLA limits any possible application of state law to the law of the "adjacent state."  *See Snyder Oil Corp. v. Samedan Oil Corp.*, 208 F.3d 521 (5th Cir. 2000)

(describing factors in determining adjacency).  Courts in this District have concluded that OCS locations within the Mississippi Canyon are adjacent to the State of Louisiana.  *See, e.g.*, *Ronquille v. MMR Offshore Servs., Inc*., 353 F. Supp. 2d 680 (E.D. La. 2004) (Mississippi Canyon Block 809); *Dennis v. Bud's Boat Rental, Inc*., 987 F. Supp. 948 (E.D. La. 1997) (Mississippi Canyon Block 20).

Nevertheless, solely for purposes of this Motion and only *arguendo*, this Motion analyzes the Public Damage Plaintiffs' claims under maritime law as well as the laws of Louisiana, Alabama, and Texas in order to demonstrate that no matter what law applies, the Public Damage Plaintiffs' claims against the Non-Operating Defendants must be dismissed.

### 1.    The Complaints Do Not Clear the Low Bar Set By Rule 8(a).

Federal Rule of Civil Procedure 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  The Public Damage Plaintiffs have not satisfied even this minimal notice-pleading standard.

For one, their allegations about the conduct of the Non-Operating Defendants are utterly conclusory.  The Cities, for example, allege that "the *Deepwater Horizon* was manned, possessed, managed, controlled, chartered and/or operated, directly or through agents, by BP, Anadarko Petroleum, and [MOEX Offshore]."  Cities Compl. ¶ 24.  The Cities have set forth no factual matter tending to show that any agent or employee of any of the Non-Operating Defendants "manned, possessed, managed, controlled, chartered and/or operated" the *Deepwater Horizon*.  *Id.*  Whereas the Cities allege that "BP was authorized to conduct offshore drilling operations," the Cities do not allege that the Non-Operating Defendants were so authorized. Cities Compl. ¶ 20.  Whereas the Cities allege that Halliburton "was engaged in cementing operations of the well and well cap," the Cities do not allege that the Non-Operating Defendants were engaged in any specific conduct upon the rig.  Cities Compl. ¶ 23.  The Cities fail to set

forth any nonconclusory allegation against the Non-Operating Defendants.  The same reasoning defeats the Mexican States' single conclusory allegation that Anadarko "in whole or in part, owned, controlled, managed, supervised, and/or oversaw *Deepwater Horizon* and the well that is the subject of this suit."  Veracruz Compl. ¶ 21.

The complaints are also replete with conclusory allegations against the "Defendants," which, with broad and poorly defined factual assertions, lump together entities that are differently situated.  Such general, undifferentiated allegations about "Defendants" fail to satisfy the notice requirement of Rule 8.  *See Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (dismissing complaint where there was no differentiation between defendants, geographic and temporal realities made complaint factually impossible, and all defendants were named in each count); *Pro Image Installers, Inc. v. Dillon*, No. 3:08cv273/MCR/MD, 2009 WL 112953, at *2 (N.D. Fla. Jan. 15, 2009) (dismissing complaint where claims were alleged against multiple defendants with very little in each count to distinguish between the separate defendants); *Lane v. Capital Acquisitions & Mgmt. Co.*, No. 04-60602 CIV, 2006 WL 4590705, at *5 (S.D. Fla. Apr. 14, 2006) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, the Lane's Complaint fails to satisfy the minimum standard of Rule 8") (citation omitted).  That lack of notice is particularly apparent given that, as discussed, the complaints' allegations that do relate specifically to the Non-Operating Defendants do not allege any particular conduct that caused harm.

Hiding behind the catchall term "Defendants" does "not provide fair notice to each Defendant of their alleged wrongdoing or role in the alleged wrongdoing," a key goal of Rule 8. *Pierson v. Orlando Reg'l Healthcare Sys., Inc.*, No. 6:08-cv-466-Orl-28GJK, 2009 WL 2151176, at *1 (M.D. Fla. July 13, 2009).  The Public Damage Plaintiffs' use of vague labels requires that

their claims against the Non-Operating Defendants be dismissed.  *See Magluta,* 256 F.3d at 1284–85 (11th Cir. 2001); *Pro Image Installers*, 2009 WL 112953, at *2.

> **2.     The Complaints Also Fail to State Claims for which Relief can be Granted.**

The Public Damage Plaintiffs' nonconclusory allegations do not show that they are entitled to recover from the Non-Operating Defendants; rather, those allegations conclusively establish the opposite.   The Public Damage Plaintiffs' non-OPA claims therefore must be dismissed for this reason as well.

> **a.     There Are No Allegations Sufficient to Hold the Non-Operating Defendants Directly or Indirectly Liable.**

The Public Damage Plaintiffs' complaints lack factual allegations that show that the Non-Operating Defendants should be held directly liable on the Public Damage Plaintiffs' non-OPA claims.   Ignoring (as the Court must) the Cities' conclusory allegation that "the *Deepwater Horizon* was manned, possessed, managed, controlled, chartered and/or operated, directly or through agents by . . . Anadarko Petroleum[] and [MOEX Offshore]," Cities Compl. ¶ 24, the Cities allege only that Anadarko and MOEX Offshore were holders of a mineral lease. *Id.* ¶ 19. The Mexican States make essentially the same allegations about Anadarko.  Veracruz Compl. ¶21.  But an interest in a mineral lease does not, by itself, render the lessee liable for negligence under maritime or state law. *Fruge v. Parker Drilling Co*., 337 F.3d 558, 563 (5th Cir. 2003).

The Complaints also lack factual allegations that show the Non-Operating Defendants' indirect or joint-and-several liability.   At no point do the Public Damage Plaintiffs allege <u>facts</u> showing that the Non-Operating Defendants had management or operating roles; that employees or contractors of the Non-Operating Defendants were on board the *Deepwater Horizon*; or that the Non-Operating Defendants had a right to control any of the *Deepwater Horizon's* activities. Allegations that the Non-Operating Defendants had contractual relationships with BP do not,

without more, show a joint venture or the requisite quantum of control.  *See Sasportes v. M/V Sol de Copacabana*, 581 F.2d 1204, 1208 (5th Cir. 1978) (under maritime law, "[j]oint ventures involve joint control or the joint right of control") (citation omitted); *Williams v. Classic Locksmith, LLC*, No. 2:06 CV 1547, 2010 WL 1506925, at *3 (W.D. La.  Apr. 14, 2010) (stating that a "joint venture results from 'two or more persons undertaking to combine their efforts . . . with each party having some right of control over the business'") (quoting *Garber v. Badon & Ranier*, 981 So. 2d 92, 102 (La. Ct. App. 2008)); *Moore v. Merchants & Planters Bank*, 434 So. 2d 751, 753 (Ala. 1983) (stating that "a right to mutual control or management of the enterprise" is an "element" of a joint venture); *Ayco Dev. Corp. v. G.E.T. Serv. Co.*, 616 S.W.2d 184, 186 (Tex. 1981) (per curiam) (one of the elements required to establish a joint venture is a showing that the parties have a "mutual right of control or management of the enterprise").

It is fundamental that a duty to prevent harm resulting from oil and gas operations arises as a consequence of operational control over the operations.  *See, e.g.*, *Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548, 550 (5th Cir. 1987), *cert. denied*, 485 U.S. 1034 (1988).  As a matter of law, without authority to control a mining venture, a non-operating investor cannot be held liable for the negligence of an operating partner.  *See James v. Nico Energy Corp.*, 838 F.2d 1365, 1373 (5th Cir. 1988) (holding that there was no joint venture where the non-operating party's involvement was limited to the investment of capital and the operating party had the sole right of control over the drilling and operation of the wells); *Bolivar v. R & H Oil and Gas Co.*, 789 F. Supp. 1374, 1381–82 (S.D. Miss. 1991) (holding that the non-operating party was not liable for the negligence of the operating party where there was no evidence of the non-operating party's control); *see also Burlington Res., Inc. v. United Nat'l Ins. Co.*, 481 F. Supp. 2d 567, 573

(E.D. La. 2007) ("a non-operator of a well is not liable for the tortious acts of the operator," so "[t]he [Joint Operating Agreement] in no way created any type of vicarious tort liability . . .").[13]

The Public Damage Plaintiffs' allegations are, in short, insufficient to state claims for relief against the Non-Operating Defendants, for they are devoid of "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).   Because the complaints for the most part contain only conclusory allegations and at most plead "facts that are merely consistent with a defendant's liability" (or, better put, merely not inconsistent with it), the Public Damage Plaintiffs' non-OPA claims against the Non-Operating Defendants all must be dismissed. *Iqbal*, 129 S Ct. at 1949 (emphasis added).

### b. The Public Damage Plaintiffs Have Not Stated Cognizable Claims for Negligence, Gross Negligence, or Wantonness.

#### (i) Negligence.

To plead claims for negligence, the Public Damage Plaintiffs must allege that the Non-Operating Defendants owed a duty to the Public Damage Plaintiffs, breached that duty, and thereby caused the Public Damage Plaintiffs' injury. *Canal Barge Co. v. Torco Oil Co.*, 220 F.3d 370, 376 (5th Cir. 2000) (maritime negligence); *Louisiana v. Rowan Co.*, 728 F. Supp. 2d 896, 903 (S.D. Tex. 2010) (maritime negligence); *Prill v. Marrone*, 23 So. 3d 1, 6 (Ala. 2009) (Alabama law); *Younger v. Marshall Indus., Inc.*, 618 So. 2d 866, 872–73 (La. 1993) (Louisiana

---

[13]     To the extent the Public Damage Plaintiffs would infer any element of control from Anadarko's and MOEX Offshore's Operating Agreement with BP, the Agreement by its terms makes clear that Anadarko and MOEX, as non-operating parties, had no such control. *See* Memorandum of Law In Support of Motion of Defendants Anadarko Petroleum Corporation, Anadarko E&P Complany LP, MOEX Offshore 2007 LLC and MOEX USA Corporation to Dismiss Master Complaint in Accordance with PTO No. 11 [CMO No.1] Section III(B3) Pursuant to Fed. R. Civ. P. 12(b)(6) at 12–14.

law); *IHS Cedars Treatment Center of DeSoto, Texas, Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2003) (Texas law).  The Public Damage Plaintiffs have not done so here, and their negligence claims must be dismissed.

As an initial matter, the Public Damage Plaintiffs have not alleged any duty owed to them by the Non-Operating Defendants.  Absent allegations that the parties themselves were negligent, non-operating investors in a drilling operation owe no duties to third parties, for a "non-operator without supervisory powers bears no responsibility to third parties for claims arising out of negligent operation of a drill site."  *Burlington Res. Inc. v. United Nat'l Ins. Co.*, 481 F. Supp. 2d 567, 574 (E.D. La. 2007) (citations omitted); *see id.* ("[A]ny tort liability arising from the operation of the [w]ell belongs only to [the operator], absent the existence of an agreement to the contrary"); *see also Transcon. Gas Pipe Line Corp. v. Mobile Drill Barge*, 424 F.2d 684, 693 (5th Cir. 1970) (holding that, because there was no evidence that the non-operating parties themselves were negligent, the claims against them were properly dismissed).  The Public Damage Plaintiffs do not (and cannot) state nonconclusory allegations that the Non-Operating Defendants had operational control over the drilling operations.  As pleaded in the Public Damage Plaintiffs' complaints, then, the Non-Operating Defendants owed no duties to the Public Damage Plaintiffs.[14]

---

[14]     A "[d]uty may be owed only with respect to the interest that is foreseeably jeopardized by the negligent conduct."  *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 211 (5th Cir. 2010) (citation and internal quotation marks omitted); *see Consol. Aluminum Corp. v. C.F. Bean Corp.*, 833 F.2d 65, 67 (5th Cir. 1987).  The loss of tourist tax and fee revenue by non-coastal cities or towns is not a reasonably foreseeable consequence of negligence in OCS drilling operations, and for this reason also the non-OPA claims of the Cities must be dismissed.  Such injury is not "a harm . . . of a general sort to persons of a general class [that] might have been anticipated by a reasonably thoughtful person, as a probable result of the act or omission, considering the interplay of natural forces and likely human intervention."  *Id.* at 68.  The Cities are like remote landowners, which the Fifth Circuit has held cannot recover for damages that resulted from oil tracked onto their properties from the beach by vacationers.  *See Lloyd's Leasing Ltd. v. Conoco*, 868 F.2d 1447, 1448–49 (5th Cir. 1989) (per curiam).  Although "the [defendant] might

(Footnote Continued on Next Page.)

The Public Damage Plaintiffs' failure to plead that the Non-Operating Defendants took or failed to take some action—negligent or otherwise—with respect to the oil spill underlies their failure to plead that the Non-Operating Defendants actually or proximately caused the Public Damage Plaintiffs' injuries.  *See Rowan Co.*, 728 F. Supp. 2d at 903; *Thomas v. Express Boat Co.*, 759 F.2d 444, 448 (5th Cir. 1985); *Gooden v. City of Talladega*, 966 So. 2d 232, 239–40 (Ala. 2007); *Bonin v. Ferrellgas, Inc*., 877 So. 2d 89, 94 (La. 2004).   Nor have the Public Damage Plaintiffs alleged that an action by the Non-Operating Defendants "was a substantial factor bringing about the complained of harm."  *Andry v. Murphy Oil, U.S.A., Inc.*, 935 So. 2d 239, 255 (La. Ct. App. 2006) (citation omitted).  The Public Damage Plaintiffs have not alleged <u>any</u> specific conduct by any of the Non-Operating Defendants, let alone specific conduct that "played so important a part in producing the result that responsibility should be imposed upon" the Non-Operating Defendants.  *Le Jeune v. Allstate Ins. Co*., 365 So. 2d 471, 477 (La. 1978); *see Dupre & Son Floor Covering, Inc. v. City of Iota*, 36 So. 3d 1117, 1121 (La. Ct. App. 2010) (an "intervening cause" may "supercede[] any breach of duty" by the defendant).

(ii)     <b>Gross Negligence And Wantonness.</b>

Gross negligence is "harm willfully inflicted or caused by gross or wanton negligence." *Todd Shipyards Corp. v. Turbine Serv., Inc.*, 674 F.2d 401, 411 (5th Cir. 1982) (quoting 6A CORBIN ON CONTRACTS § 1472 (1964 ed.)); *see Coastal Iron Works, Inc. v. Petty Ray Geophysical*, 783 F.2d 577, 582 (5th Cir. 1986).   "[G]ross negligence is substantially and appreciabl[y] higher in magnitude than ordinary negligence."   *Houston Exploration Co. v.*

---

(Footnote Continued from Previous Page.)

reasonably anticipate that the oil would probably wash ashore somewhere, it had no reason to have anticipated that the oil would probably wash ashore in a heavily populated area and then be tracked into businesses and homes."  *Id*. at 1449.  The Court of Appeals thus held that the defendant owed the remote

(Footnote Continued on Next Page.)

*Halliburton Energy Servs., Inc.*, 269 F.3d 528, 532 (5th Cir. 2001) (citation omitted); *see Trevino v. Lightning Laydown, Inc.*, 782 S.W.2d 946, 949 (Tex. App. 1990) ("[O]ne's conduct cannot be grossly negligent without being negligent").  Given that the Public Damage Plaintiffs have not stated claims for simple negligence, they manifestly have not stated claims for gross negligence against the Non-Operating Defendants under either maritime or state law.

Wantonness is not a distinct tort under maritime or Louisiana law.  *See Cape Flattery Ltd. v. Titan Mar. LLC*, 607 F. Supp. 2d 1179, 1189 (D. Hi. 2009) (maritime law); *Brown v. ANA Ins. Grp.*, 994 So. 2d 1265, 1269 n.7 (La. 2008); *Butler ex rel. Anderson v. Miss-Lou Ambulance Serv., LLC*, No. 07-0924, 2008 WL 2816845, at *5 (W.D. La. July 22, 2008).  Though distinct under Alabama law, *see Ex parte Randall*, 971 So. 2d 652, 679 (Ala. 2007), the Cities have not adequately pleaded it.[15]  They have not set forth any allegations to support a plausible inference that the Non-Operating Defendants were "conscious of [their] conduct and conscious from [their] knowledge of existing conditions that injury would likely or probably result from [their] conduct, [and] that with reckless indifference to consequences, [the Non-Operating Defendants] consciously and intentionally did some wrongful act or omitted some known duty which produced the injury."  *Id.* at 680 (internal citation and quotation marks omitted) (emphasis in original); s*ee also* ALA. CODE § 6-11-20(b)(3) (2010) (defining wantonness as "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others").

---

(Footnote Continued from Previous Page.)

plaintiffs no duties.  *Id.* at 1450.

[15]     The Mexican States refer to wantonness in the context of their gross negligence claims.  Veracruz Compl. ¶¶ 59–62.

c. **The Public Damage Plaintiffs Fail to State Cognizable Claims for Negligence *Per Se*.**

To state a claim for negligence *per se*, plaintiffs must identify a "violation of a statute which is intended to protect the class of persons to which [the plaintiffs] belong[] against the risk of the type of harm which has in fact occurred."  *Marshall v. Isthmian Lines, Inc*., 334 F.2d 131, 134 (5th Cir. 1964) (maritime law).  With only slight variation under state law, the "[f]ive elements of a . . . negligence *per se* claim are the following: (1) a violation of . . . [a statute or] regulations, (2) the plaintiff's membership in the class of intended beneficiaries of the [statute or] regulations, (3) an injury of a type against which the [statute or] regulations are designed to protect, (4) the unexcused nature of the [statutory or] regulatory violation, and (5) causation." *Smith v. Trans-World Drilling Co*., 772 F.2d 157, 160 (5th Cir. 1985) (citations omitted); *Marshall*, 334 F.2d at 134; *see also Cook's Pest Control, Inc. v. Rebar*, 28 So. 3d 716, 726 (Ala. 2009); *Ambrosio v. Carter's Shooting Ctr., Inc.*, 20 S.W.3d 262, 265 (Tex. App. 2000); *Moses v. Mosley*, 146 So. 2d 263, 267 (La. Ct. App. 1962).

The Public Damage Plaintiffs fail to state a negligence *per se* claim because they fail to specifically identify any statute or regulation that the Non-Operating Defendants allegedly violated.  *See Parker Bldg. Servs. Co. v. Lightsey*, 925 So. 2d 927, 931 (Ala. 2005); *see also Gates v. W.R. Grace & Co*., No. 8:08-cv-2560-T-27TBM, 2009 WL 1455316, at *3 (M.D. Fla. May 21, 2009) (dismissing a claim of negligence *per se* where the plaintiff alleged only that the defendants "violated various Federal, state and local environmental laws and regulations"); *Anchundia v. Northeast Util. Servs. Co.*, No. CV 07-4446(AKT), 2010 WL 2400154, at *5 (E.D.N.Y. June 11, 2010) ("Where plaintiff fails to identify the statute upon which the [negligence *per se*] claim is based, it is impossible to determine if the plaintiff was in a class sought to be protected by the statute or whether the injury suffered by the plaintiff was the type

of injury the statute was designed to prevent.  It is also impossible to assess whether the defendant breached a duty imposed by statute"); *Holler v. Cinemark USA, Inc.*, 185 F. Supp. 2d 1242, 1243–44 (D. Kan. 2002) ("Notice pleading requirements suggest that plaintiff must plead the specific statute on which he bases his claim for negligence *per se*").  Neither the Cities nor the Mexican States offer the requisite modicum of specificity in their vague allegations that the defendants failed "to comply with Federal laws and statutory standards intended to protect and benefit the Plaintiffs," Cities Compl. ¶ 54, and violated "numerous state and federal laws, and permits issued under the authority of these laws," which supposedly "protect and benefit" the plaintiffs.  Veracruz Compl. ¶¶ 64–65.

Despite the Cities' additional conclusory allegation that the "Defendants" violated the Refuse Act of 1899, 33 U.S.C. § 407, and the Clean Water Act, 33 U.S.C. §§ 1251–1387, their negligence *per se* claim against the Non-Operating Defendants still must be dismissed.  Cities Compl. ¶ 55.  Neither act gives rise to a private right of action.  *See Long Beach v. City of New York*, 445 F. Supp. 1203, 1212 (D.N.J. 1978) (Refuse Act); *Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 14–15 (1981) (Clean Water Act).  When Congress does not "create a private right of action" for a statute, "any alleged violation of that statute by defendant cannot provide a basis for a negligence per se claim."  *Miller v. E.I. Du Pont de Nemours & Co.*, 880 F. Supp. 474, 480 (S.D. Miss. 1994); *see Rodriguez v. Am. Cyanamid Co.*, 858 F. Supp. 127, 129 (D. Ariz. 1994) ("Courts considering whether to recognize negligence per se based on violation of broad environmental and public health statutes and regulations . . . have approached this issue by determining whether, in enacting the statute, the legislature intended to create a private right of action").  The absence of a congressionally authorized private right of

action confirms that the Cities cannot state a claim for negligence *per se* based on the Refuse Act and Clean Water Act.

> **d.**     **The Mexican States Fail to State Cognizable Claims for Private Nuisance Against Anadarko.**

The Restatement (Second) of Torts defines private nuisance as "a nontrespassory invasion of another's interest in the <u>private</u> use and enjoyment of land."  RESTATEMENT (SECOND) OF TORTS § 821D (1979) (emphasis added).  "By private use is meant a use of land that a person is privileged to make as an individual, and not as a member of the public."  *Id.* at cmt. c.   Logically, a <u>public</u> entity is incapable of the "<u>private</u> use and enjoyment of land." Accordingly, the Mexican States, as public entities, cannot state claims for private nuisance.

Furthermore, it is doubtful that maritime law recognizes private nuisance as viable cause of action.  *See Sekco Energy, Inc. v. M/V Margaret Chouest*, 820 F. Supp. 1008, 1013 (E.D. La. 1993).  Assuming, *arguendo*, that a claim for private nuisance is cognizable under maritime law, the Mexican States would have to establish that Anadarko "intended to interfere with the use and enjoyment of the maritime interest."  *Sekco Energy*, 820 F. Supp. at 1013.  The Mexican States have not so alleged.

Louisiana and Texas law also preclude the Mexican States' private nuisance claims as a matter of law.  In Louisiana, private nuisance covers cases where a proprietor of land does "work" on his estate that "deprives his neighbor of enjoyment or causes damage to him . . . ." LA. CIV. CODE ANN. art. 667 (2010).  The Mexican States have not alleged facts showing that they qualify as "neighbors" of Mississippi Canyon Block 252, *i.e.*, that they have property "adjacent to Defendants' property."  *Barasich v. Shell Pipeline Co.*, No. 05-4180, 2006 WL 3913403, at *8 (E.D. La. Nov. 20, 2006).  In Texas, a plaintiff must have "title or vested interest" in the lands affected by the alleged nuisance.  *See Freedman v. Briarcroft Property Owners, Inc.*,

776 S.W.2d 212, 215 (Tex. App. 1989) (citing 66 C.J.S. NUISANCES § 81 (1950)).  The Mexican

States have not alleged such rights.

> **e.     The Mexican States Fail to State a Claim for Public Nuisance Against Anadarko.**

"Public nuisance is an all-purpose tort that encompasses a truly eclectic range of

activities" and is, in other words, "an ill-defined omnibus tort of last resort."  *North Carolina ex*

*rel. Cooper v. Tenn. Valley Auth.*, 615 F.3d 291, 301–02 (4th Cir. 2010); *see Lucas v. South*

*Carolina Coastal Council*, 505 U.S. 1003, 1055 (1992) (Blackmun, J., dissenting) ("[O]ne

searches in vain . . . for anything resembling a principle in the common law of nuisance").

Defined generally, "public nuisance is an unreasonable interference with a right common to the

general public."  RESTATEMENT (SECOND) OF TORTS § 821B(1) (1979);  *see Cox v. City of Dallas*,

256 F.3d 281, 289 (5th Cir. 2001) ("In determining whether conduct amounts to a public

nuisance, courts consider, *inter alia*, whether the conduct involves a significant interference with

public health, safety, peace, comfort, or convenience"); *Russell Corp. v. Sullivan*, 790 So. 2d 940,

945 (Ala. 2001) ("'[A] public nuisance gives no right of action to any individual, but must be

abated by a process instituted in the name of the state'") (citing ALA. CODE § 6-5-121) (1975)).[16]

As a matter of law, the Mexican States have no recourse to public nuisance here.

Maritime law does not recognize public nuisance as a cause of action.  *See Sekco Energy, Inc. v.*

*M/V Margaret Chouest*, 820 F. Supp. 1008, 1013–14 (E.D. La. 1993).  In cases of interstate

pollution (like the alleged oil spill), only federal law or the law of a source state may

constitutionally be applied.  *See* Part III.A., *supra*.  No state law public nuisance claims are

available for the alleged oil spill, as a matter of law.  Moreover, because the Mexican States have

---

[16]     Public nuisance under Louisiana law is specifically circumscribed by statute and does not

(Footnote Continued on Next Page.)

not alleged any nonconclusory conduct by Anadarko that <u>caused</u> the alleged public nuisance, they

have not stated a claim against Anadarko for its abatement.

>    **3.    The Economic Loss Rule Precludes The Cities' and Mexican States'
>    Recovery Under Maritime and State Law.**

In 1927, the Supreme Court held that a plaintiff may not recover economic losses

resulting from negligence if he lacks a proprietary interest in the damaged property.  *Robins Dry*

*Dock & Repair v. Flint*, 275 U.S. 303 (1927).  Called the "economic loss rule," this principle still

governs unintentional maritime tort cases in the Fifth Circuit.  *See Louisiana ex rel. Guste v. M/V*

*Testbank*, 752 F.2d 1019 (5th Cir. 1985) (*en banc*); *Dunham-Price Group, LLC v. Citgo*

*Petroleum Corp*., 2010 WL 1285446, at *3 (W.D. La. Mar. 31, 2010).  "In essence, the economic

loss rule is based on the premise that disappointed economic expectations are protected by

contract law, while tort law protects persons and property . . . ."  *Everett v. Brad Ragan, Inc.*, No.

99-663CBC, 2000 WL 360240, at *2 (S.D. Ala. Mar. 28, 2000); *see also Harris Moran Seed Co.*

*v. Phillips*, 949 So. 2d 916, 931 (Ala. Civ. App. 2006); *Lloyd Wood Coal Co. v. Clark Equip.*

*Co*., 543 So. 2d 671 (Ala. 1989).

The Cities allege purely economic damages because they do not allege that any of their

property has been physically injured as a result of the spill.  The Cities seek damages for (a) "lost

revenues from taxes royalties, rents, fees, or net profit shares," (b) "costs expended by the

Plaintiffs for providing increased or additional public services to address the oil disaster's

economic effects on Plaintiffs, including increased administrative costs for economic, human and

social services," and (c) "damages associated with the long-term stigma of the oil disaster,

---

(Footnote Continued from Previous Page.)

encompass oil spills.  *See* La. Rev. Stat. Ann. §§ 13:4711; 14:107.3 (2010).

including the loss of property, taxes,[17] revenues, and other income."  Cities Compl. ¶ 40.  Taxes, royalties, rents, fees, net profit shares, costs associated with providing increased public services to address "economic effects" of the oil spill, and various types of "income" are all pure economic damages.

The Mexican States also allege purely economic damages because they do not allege any present physical injury to any Mexican property as a result of the spill.  The Mexican States allege that they have suffered and will suffer: "financial losses and damages, including, but not limited to, lost fees, taxes, and revenues, incurred present and future expenses related to preventive measures, scientific studies, lost business, and developmental opportunities, and other damages and injuries."  Veracruz Compl. ¶6.  However, the Mexican States allege only that the *Deepwater Horizon* oil spill "will cause current and future harm and risks of harm to the marine life along the shores of [the Mexican States'] coast[s] and on the State[s'] beaches . . . ."  Veracruz Compl.  ¶5 (emphasis added).    Similarly, the Mexican States allege that "oil, dispersants, and other materials and substances discharged by Defendants into the Gulf of Mexico will damage and continue to damage for generations to come, the waters, property, estuaries, seabed, animals[,] plants, beaches, shorelines, coastlines, marshlands, and other natural and economic resources" of the Mexican States.  Veracruz Compl. ¶37 (emphasis added); *see also id.* ¶ 39 (alleging that oil "according to scientific evidence and analysis, will migrate westward across the Gulf of Mexico . . . .") (emphasis added).  While the Mexican States do not allege that oil or any other substance has physically impacted their property or territory, they

---

[17]    The most logical construction of the Cities' Complaint is that the Cities seek damages for the loss of "property taxes," as opposed to the loss of both property and taxes.  The Cities fail to set forth any allegation explaining how the oil spill, which they have not alleged has damaged their property, could result in a "loss of property."

nevertheless seek reimbursement for expenses incurred <u>in anticipation</u> of physical injury, such as: gathering and analyzing information; dissemination of information; meetings with the Mexican Environmental Agency; expenses incurred in conducting mock clean-up exercises; and expenses incurred in acquiring equipment. *See* Veracruz Compl. ¶55.

The Cities' and Mexican States' attempts to recover for alleged economic losses without alleging physical injury to any proprietary interest must fail: "It is unmistakable that the law of this circuit does not allow recovery of purely economic claims absent physical injury to a proprietary interest in a maritime negligence suit." *In re Taira Lynn Marine Ltd. No. 5*, 444 F.3d 371, 377 (5th Cir. 2006); *see also IMTT-Gretna v. Robert E. Lee SS*, 993 F.2d 1193, 1195 (5th Cir. 1993) ("Maritime law specifically denies recovery to non proprietors [*i.e.*, those without proprietary interest in property physically damaged] for economic damages").

The economic loss rule is a "bright line" rule, without exception based upon foreseeability or any other particularized concern. *Louisiana ex rel. Guste v. M/V Testbank*, 752 F.2d 1019, 1032 (5th Cir. 1985) (en banc) ("Denying recovery for pure economic losses is a pragmatic limitation on the doctrine of foreseeability, a limitation we find to be both workable and useful"). While one judge in this District once recognized an exception to *Robins Dry Dock* for commercial fishermen, the exception was not approved by the Fifth Circuit on appeal, nor has it even been approved by the Supreme Court. *See Louisiana ex rel. Guste v. M/V Testbank*, 524 F. Supp. 1170, 1173–74 (E.D. La. 1981), *aff'd on other grounds*, 752 F.2d 1019, 1027 n. 10 (5th Cir. 1985) (en banc), *cert. denied*, 477 U.S. 903 (1986) ("Whether the claims of commercial fishermen ought to be analyzed in this manner or simply carved from the rule today announced . . . or allowed at all, we leave for later"); *see also Barasich v. Shell Pipeline Co.*, No. 05-4180, 2006 WL 3913403, at *6 n.1 (E.D. La. Nov. 20, 2006) (Barbier, J.) ("This Court notes that [the

commercial fishermen] exception has never been formally recognized by the Fifth Circuit or the United States Supreme Court").  Thus there is no exception to the economic loss rule in the Fifth Circuit, and the Mexican States' and Cities' claims must be dismissed.  *In re Taira Lynn Marine*, 444 F.3d at 379 ("[P]hysical injury to a proprietary interest is a prerequisite to recovery of economic damages in cases of unintentional maritime tort") (internal citation and quotation marks omitted).

IV.    **CONCLUSION**

For the foregoing reasons, the Non-Operating Defendants respectfully request that this Court dismiss all claims against them in the complaints of the Cities and the Mexican States.

Respectfully submitted,

BINGHAM McCUTCHEN, LLP


 /s/ *Ky E. Kirby*
Ky E. Kirby
ky.kirby@bingham.com
David B. Salmons
david.salmons@bingham.com
Michael B. Wigmore
michael.wigmore@bingham.com
Warren Anthony Fitch
tony.fitch@bingham.com
Randall M. Levine
randall.levine@bingham.com
2020 K Street, NW
Washington, DC 20006-1806
Telephone (202) 373-6000
Facsimile (202) 373-6001

James J. Dragna
jim.dragna@bingham.com
Bingham McCutchen LLP
355 South Grand Avenue
Suite 4400
Los Angeles, California 90071-3106
Telephone (213) 680-6436
Facsimile (213) 680-8636

KUCHLER POLK SCHELL
WEINER & RICHESON, LLC

Deborah D. Kuchler, T.A. (La. Bar No. 17013)
dkuchler@kuchlerpolk.com
Janika Polk (La. Bar No. 27608)
jpolk@kuchlerpolk.com
Robert Guidry (La. Bar No. 28064)
rguidry@kuchlerpolk.com
1615 Poydras Street, Suite 1300
New Orleans, LA  70112
Tel:  (504) 592-0691
Fax:  (504) 592-0696

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, pursuant to Pre-trial Order No. 12, I have caused the foregoing to be served on all counsel via the Lexis Nexis File & Serve system, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, who will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on February 28, 2011.

_____/s/ *Ky E. Kirby*_____
Ky E. Kirby