**UNITED STATES DISTRICT OF COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL | § | **MDL No. 2179** |
| RIG "DEEPWATER HORIZON" | § | |
| IN THE GULF OF MEXICO, | § | **SECTION:  J** |
| ON APRIL 20, 2010 | § | |
| | § | **JUDGE BARBIER** |
| This Pleading applies to: | § | |
| *All Cases in Pleading Bundle B1* | § | **MAG. JUDGE SHUSHAN** |
| | § | |

**MEMORANDUM IN SUPPORT OF HALLIBURTON ENERGY**
**SERVICES, INC.'S MOTION TO DISMISS PLAINTIFFS'**
**MASTER COMPLAINT FOR ECONOMIC LOSSES**

Defendant Halliburton Energy Services, Inc. ("HESI")[1] respectfully files this memorandum in support of its motion asking the Court to dismiss all claims asserted against HESI in Plaintiffs' Master Complaint for Private Economic Losses (the "Master Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[2]

## I.    INTRODUCTION AND PROCEDURAL HISTORY

This case arises out of the fire, explosion, and sinking of the *Deepwater Horizon*, and a subsequent release of oil into the Gulf of Mexico (hereinafter, the "Incident"). (Master Complaint at pp. 39-40).  Numerous individual and class action lawsuits were filed in state and federal courts, many of which allege predominantly economic damages.

---

[1] The Master Complaint identifies Halliburton Energy Services, Inc. ("HESI") as a defendant.  It is unclear whether the Master Complaint asserts that Halliburton's division, Sperry Drilling Services ("Sperry"), is a separate defendant.  Nevertheless, to the extent Plaintiffs assert claims against Sperry in the Master Complaint, Halliburton expressly adopts the arguments set forth herein as being applicable to Sperry in addition to HESI.

[2] HESI expressly reserves its right to assert "any other defense that may be specific or unique to any particular plaintiff" pursuant to Pre-Trial Order No. 25, ¶ 15, including the right to challenge the adequacy of each underlying complaint under the principles set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007), and *Ashcroft v. Iqbal*, 556 U.S. __, 129 S. Ct. 1937, 1949 (2009).

On October 19, 2010, this Court entered its Case Management Order No. 1 ("CMO 1"), in which it directed the filing of master complaints for, *inter alia*, claims involving allegations of economic losses and property damage by private party plaintiffs ("Plaintiffs").  (CMO 1 at ¶ III.B.B1).  On December 15, 2010, Plaintiffs filed their Master Complaint, asserting against HESI claims under maritime law and state common law.  (Master Complaint ¶¶ 501-560, 613-653, and 668-690).  Plaintiffs identified the Master Complaint as an admiralty or maritime case as provided in Federal Rule of Civil Procedure 9(h)(1).  (Master Complaint at p. 39).  In the Master Complaint, Plaintiffs generally assert against HESI and others maritime law claims for negligence and for gross negligence and willful misconduct and state law claims for nuisance, trespass and fraudulent concealment.  Plaintiffs also assert other claims against additional defendants, including claims for relief under the Oil Pollution Act of 1990, 33 U.S.C. § 2701, *et seq.,* against Defendants BP, Transocean, Anadarko, Anadarko E&P, and MOEX and for punitive damages pursuant to all their claims.

Generally, Plaintiffs allege in the Master Complaint that the acts of various defendants, including HESI, caused the fire and explosion on board the *Deepwater Horizon*, its sinking, a subsequent oil spill, and Plaintiffs' alleged damages.  (Master Complaint ¶¶ 174-180).  The purported Plaintiff class is defined as

> "[a]ll individuals and entities residing or owning property in the United States who claim economic losses, or damages to their occupations, businesses, and/or property as a result of the April 20, 2010 explosions and fire aboard, and sinking of, the Deepwater Horizon, and the resulting Spill.

(*Id.* ¶ 476).

## II.    <u>STATEMENT OF FACTS</u>

Defendant BP was the holder of a lease granted by the Minerals Management Service ("MMS") authorizing the exploration, development and production of oil in Mississippi Canyon Block 252 in the Gulf of Mexico.  (Master Complaint ¶ 186).  BP conducted activities at this site on the *Deepwater Horizon*, a "dynamically-positioned semi-submersible deepwater drilling vessel" built for and owned by Defendant Transocean and leased to Defendant BP for the purpose of drilling exploratory wells.  (*Id.* ¶¶ 248-249).  Plaintiffs allege that HESI was responsible for the provision of technical advice about the design, modeling, placement, and testing of the cement that was used in the Macondo well.  (*Id.* ¶ 202).[3]

On April 20, 2010, there was an explosion on board the *Deepwater Horizon* during well completion efforts.  (*Id.* ¶¶ 174, 265).  Subsequently, the *Deepwater Horizon* sank into the Gulf of Mexico and oil was released.  (*Id.* ¶¶ 174-176).  Plaintiffs allege that "[f]ishermen and marine-related businesses have lost and continue to lose income and their businesses; the tourism industry and hotels, resorts, restaurants, and other tourism-reliant businesses have lost and continue to lose income; and real property owners have suffered the loss, damage, and/or diminution of the value of their properties throughout the Coastal Zone."  (*Id.* ¶ 180).

## III.    <u>SUMMARY OF ARGUMENT</u>

The Oil Pollution Act of 1990, 33 U.S.C. §§ 2701, *et seq.* (the "OPA"), provides the exclusive federal remedy for the categories of oil spill-related damages that Plaintiffs

---

[3] Plaintiffs also allege that Sperry was responsible for providing mudlogging personnel on the rig and those personnel were partially responsible for monitoring the well.  (Master Complaint ¶ 203).

allege.  As the exclusive federal remedial scheme for such damages, the OPA specifically preempts or displaces[4] maritime tort claims seeking damages caused by oil spills. Plaintiffs assert against HESI maritime law claims and specifically invoke Federal Rule of Civil Procedure 9(h)(1) to designate the Master Complaint as "an admiralty or maritime case." (Master Complaint ¶¶ 219-220).  Plaintiffs further bring against HESI state law claims sounding in nuisance, trespass and fraudulent concealment (the "State Law Claims"), attempting to circumvent the OPA's exclusive remedial scheme and its preemptive effect on maritime tort claims.  However, Plaintiffs lack state law causes of action against HESI.  All of Plaintiffs' claims arise, if at all, under maritime law and are, therefore, preempted or displaced by the OPA.

Because the OPA applies to all of Plaintiffs' claims against HESI, this Court lacks subject matter jurisdiction over such claims due to Plaintiffs' failure to plead and/or comply with the statute's mandatory claims presentment procedure.  This failure provides both an independent and additional basis requiring dismissal of Plaintiffs' claims.

---

[4] The doctrine of "preemption" generally pertains to the effect of federal law on state law, where there are concerns associated with federalism and balancing states' rights.  However, the discussion herein regarding the OPA's effect on federal common law (*i.e.*, maritime law) pertains the the effect of a federal statute on a body of federal law, not state law.  In such instances, the federal statute more accurately "displaces" the federal common law, and there are no corresponding federalism issues.  Nevertheless, in discussing the OPA's effect on federal maritime law, certain courts have referred to this issue as one of "preemption," and other courts seem to use "preemption" and "displacement" interchangeably.  *See, e.g., Gabarick v. Laurin Mar. (Am.) Inc.,* 623 F. Supp. 2d 741, 750-51 (E.D. La. 2009) (holding that "all [general maritime law] claims that are recoverable under OPA, specifically those covered damages enumerated in 33 U.S.C. § 2702, are preempted by OPA").  To avoid confusion with supporting case law, HESI's discussion of the OPA asserts that the statute "preempts or displaces" federal maritime law.

Importantly, the OPA only allows for claims to be asserted against a "responsible party," as that term is defined by the OPA.[5]  The Coast Guard has designated BP and certain other defendants, not including HESI, as "responsible parties" under the OPA.[6]  Because HESI is not a designated "responsible party" under the OPA,  Plaintiffs' claims must be dismissed.

Even if one were to assume Plaintiffs' claims are somehow properly asserted against HESI, such claims require dismissal under Rule 12(b)(6) to the extent they seek economic damages without alleging physical injury to a proprietary interest.  These claims are barred by the "economic loss" rule established under federal maritime and/or

---

[5] 33 U.S.C. §§ 2701(32) (defining "responsible party" of "vessels" and "offshore facilities") and 2702 (describing the liability of "responsible parties").  For limitation of liability purposes, under the OPA, a MODU such as the *Deepwater Horizon* may be treated as a "vessel" or an "offshore facility" depending on the nature of an oil spill and/or the extent of damages caused by a spill.  *See* 33 U.S.C. § 2704(b).  To the extent the *Deepwater Horizon* is treated as a "vessel," the OPA defines a "responsible party" as "any person owning, operating, or demise chartering the vessel."  *Id.* § 2701(32)(A).  To the extent the *Deepwater Horizon* is treated as an "offshore facility," the OPA defines a "responsible party," in relevant part, as "the lessee or permittee of the area in which the facility is located[.]"  *Id.* § 2701(32)(C).  Regardless of the limitation of liability treatment afforded the *Deepwater Horizon* under the Act, HESI was a third-party contractor on the vessel and, therefore, satisfies neither definition of a "responsible party."

[6] In the days following the *Deepwater Horizon* incident, the Coast Guard designated BP as a responsible party under the OPA.   *See* http://www.uscg.mil/foia/docs/DWH/2094.pdf (including the Coast Guard's correspondence to BP, designating it as a responsible party under the OPA and BP's acknowledgment of that designation); *see also* http://www.uscg.mil/foia/docs/DWH/2886.pdf (including the Coast Guard's designation of Transocean Holding, LLC, as a responsible party); OIL SPILL COST AND REIMBURSEMENT FACT SHEET, http://www.restorethegulf.gov/release/2011/01/11/oil-spill-cost-and-reimbursement-fact-sheet (noting that Anadarko and MOEX have also been designated as responsible parties).  Copies of these documents are attached as Exhibit A.  *See also Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (internal citations omitted) (noting that in deciding a motion to dismiss, courts may consider matters of public record).

Moreover, courts may consider facts not specifically alleged in the Complaint when considering a 12(b)(6) motion.  *See Universal Express, Inc. v. SEC*, 177 F. App'x 52, 53-54 (11th Cir. 2006); *Brown v. S. Fla. Fishing Extreme, Inc.,* No. 08-CV-20678, 2008 U.S. Dist. Lexis 49452, at * 3-4 (S.D. Fla. June 27, 2008); *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007) ("materials that are part of a public record or do not contradict the complaint may be considered by a court in deciding a Rule 12(B)(6) motion").

state law.  Plaintiffs' request for punitive damages must also be dismissed as punitive damages are not recoverable under the OPA.

Therefore, HESI respectfully moves the Court to dismiss all claims asserted against it pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## IV.    ARGUMENT AND AUTHORITY

**A.    This Court Lacks Subject Matter Jurisdiction.**

### *1.    Applicable Law*

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of an action where the court lacks subject matter jurisdiction.  A motion to dismiss filed pursuant to Rule 12(b)(1) allows a party to challenge the subject matter jurisdiction of the district court to hear a case.  *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001); *see also McElmurray v. Consol. Gov't. of Augusta Richmond County*, 501 F.3d 1244, 1251 (11th Cir. 2007).   A court may decide such a motion on one of three bases: (1) the complaint alone; (2) the complaint and the undisputed facts in the record; or (3) the complaint, the undisputed facts in the record, and the court's own resolution of disputed facts.  *McElmurray*, 501 F.3d at 1251; *Ynclan v. Dep't of the Air Force,* 943 F.2d 1388, 1390 (5th Cir. 1991) (citing *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir. 1981)).  In a Rule 12(b)(1) motion, the burden of proving that jurisdiction exists falls to the party asserting jurisdiction.  *Ramming,* 281 F.3d at 161; *Eaton v. Dorchester Dev., Inc.,* 692 F.2d 727, 732 n.9 (11th Cir. 1982).

### *2.    Plaintiffs' Claims, If Any, Arise Exclusively Under the Court's Admiralty Jurisdiction.*

A threshold question in this litigation is the issue of whether Plaintiffs' claims are cognizable only in the admiralty or maritime jurisdiction. Fed.R.Civ.P. 9(h)(1). Plaintiffs' claims cannot arise under both state law and admiralty law, as admiralty jurisdiction normally ousts state law from its own application. *See E. River S.S. Corp. v. Transamerica Delaval*, 476 U.S. 858, 864 (1986) ("With admiralty jurisdiction comes the application of substantive admiralty law"). Plaintiffs expressly designated the Master Complaint "as an admiralty or maritime case as provided in Rule 9(h)(1) of the Federal Rules of Civil Procedure." (Master Complaint at p. 39). Further, Plaintiffs cite, as a jurisdictional basis for their claims, the Admiralty Extension Act, 46 U.S.C. § 30101, which extends federal admiralty jurisdiction to cases involving damages caused by a vessel on navigable waters, "even though the injury or damage is done or consummated on land." (Master Complaint ¶ 223) (quoting 46 U.S.C. § 30101(a)). Nevertheless, the Master Complaint also asserts State Law Claims against HESI, without invoking an exception to the general rule that "with admiralty jurisdiction comes the application of substantive admiralty law" and thus provides no rationale for the application of state law to any of Plaintiffs' claims.

Moreover, many of the underlying individual and class action complaints assert, predominantly or exclusively, state law claims arising out of the Incident.[7] Given the Plaintiffs' view that the Master Complaint is merely "an administrative device to serve the functions of efficiency and economy" and that it does "not constitute a waiver or

---

[7] *See Appendix 1,* which lists the underlying cases in which Plaintiffs assert pure state law claims; *Appendix 2,* which contains a list of cases in which Plaintiffs assert state law claims under the laws of a State other than Louisiana by operation of the Outer Continental Shelf Lands Act's adjacent state law provision, 43 U.S.C. § 1333(a)(2)(A). As set forth herein, state law does not apply to any such claims, whether of its own force or pursuant to OCSLA's adjacent state law provision.

dismissal of any actions or claims asserted in the individual and class actions," (Master Complaint ¶¶ 181-182), the issue whether admiralty jurisdiction, and thus substantive maritime law, applies to this case must be addressed.   That many of the underlying Plaintiffs did not allege admiralty jurisdiction does not mean that maritime law is inapplicable to their claims.   Fed.R.Civ.P. 9(h)(1) ("A claim cognizable only in the admiralty or maritime jurisdiction is an admiralty or maritime claim for those purposes, whether or not so designated.")

Indeed, based on the nature of the Incident, all claims in the Master Complaint and the underlying complaints guised as state law claims are governed by maritime law. The Supreme Court's decision in *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.* provides the Court with the proper analytical framework to determine the applicability of admiralty jurisdiction and, therefore, substantive maritime law. *See* 513 U.S. 527 (1995).   As shown below, applying *Grubart*, Plaintiffs' claims clearly arise under admiralty jurisdiction, not state law.

In *Grubart*, the Supreme Court reiterated the current test for admiralty tort jurisdiction, stating that "a party seeking to invoke federal admiralty jurisdiction . . . over a tort claim must satisfy conditions of both [i] location and [ii] connection with maritime activity." *Id*. at 534.   To satisfy the location test, the Court must determine only "whether the tort occurred on navigable water or whether injury suffered on land was caused by a

vessel on navigable water." *Id.* The *Deepwater Horizon* qualifies as a "vessel" on navigable water.[8]

The Supreme Court in *Grubart* explained that the "connection with maritime activity" test raises two "*Sisson* inquiries."[9]  Under the first *Sisson* inquiry, the Court

---

[8] 1 U.S.C. § 3 (defines "vessel" as "every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water"); *see also Stewart v. Dutra*, 543 U.S. 481, 490 (2005) (standardizing the meaning of the word "vessel" as that supplied in 1 U.S.C. § 3 and noting that "[s]ection 3 merely codified the meaning that the term 'vessel' had acquired in general maritime law"). Plaintiffs' description of the *Deepwater Horizon* indicates that it was a vessel (*See* Complaint ¶ 248) (acknowledging that the *Deepwater Horizon* was "a dynamically-positioned, semisubmersible deepwater drilling vessel") and that it was located on navigable waters at the time of the Incident (*See* Plaintiffs' Master Answer to Complaint and Petition of Triton Asset Leasing GmbH, *et al.*, For Exoneration From or Limitation of Liability, at ¶ 28, in case No. 10-2771 before this Court) ("[T]he Deepwater Horizon was a movable drilling rig and a vessel in navigation upon the navigable waters of the United States"). Further, courts have consistently held that mobile, semi-submersible rigs, like the *Deepwater Horizon*, are vessels. *See, e.g., Manuel v. P.A.W. Drilling & Well Serv., Inc.*, 135 F.3d 344, 351-52 (5th Cir. 1998) (holding that drilling craft was a vessel because it was a "highly mobile unit"); *Domingue v. Ocean Drilling and Exploration Co.*, 923 F.2d 393, 394 n.1 (5th Cir. 1991) ("We have consistently applied general maritime law [in Jones Act cases] . . . to accidents aboard special-purpose watercraft such as submersible, semi-submersible, jack-up, and other similar rigs."); *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1214 n.5 (5th Cir. 1986) (finding semi-submersible drilling rig to be "indisputably a vessel"); *Colomb v. Texaco, Inc.*, 736 F.2d 218, 221 (5th Cir. 1984) (finding submersible drilling barge to be a "vessel" because it was "highly mobile" due to routine relocation); *Case v. Omega Natchiq, Inc.*, No. H-08-0835, 2008 U.S. Dist. LEXIS 52931, at *16, (S.D. Tex. July 10, 2008) ("In contrast to production platforms, semisubmersible drilling rigs are generally considered vessels under the Jones Act.").

That the *Deepwater Horizon* was a "vessel in navigation" is further supported by facts alleged in the public record.  For example, certain Transocean employees and/or representatives of deceased persons who were aboard the *Deepwater Horizon* on April 20, 2010, have filed Jones Act suits asserting damages for injuries sustained in their capacity as "seamen" under the Jones Act.  In doing so, these plaintiffs have asserted admiralty jurisdiction and the application of maritime law, claiming that their injuries or damages were sustained as members of the crew on board *Deepwater Horizon*, "a vessel within the meaning of the Jones Act, 46 U.S.C. §§ 30104, *et seq.*"  *See, e.g.*, Plaintiffs Stephen and Sara Stones' Petition in Intervention at ¶¶ 9-10, 12, *Kleppinger v. Transocean Deepwater Offshore Drilling, Inc.*, Case No. 4:10-cv-01851 (S.D. Tex.).

Additionally, Transocean, the owner of the *Deepwater Horizon*, and related entities have filed a Complaint and Petition for Exoneration From or Limitation of Liability, under the Limitation of Liability Act, 46 U.S.C. §§ 30501 *et seq.*, seeking to have their liability capped for an amount equal to the value of the "vessel."  *See* Case No. 10-2771 [Doc. No. 1].  These Transocean entities have filed such Petition in their capacities as the "owner of the vessel."  *See* 46 U.S.C. §§ 30505(a), 30506(a)-(b); *see also* 46 U.S.C. § 30511(a) ("The *owner of a vessel* may bring a civil action in a district court of the United States for limitation of liability under this chapter." (emphasis added)).

[9] "*Sisson* inquiries" refer to inquiries developed by the Supreme Court in the case of *Sisson v. Ruby*, 497 U.S. 358, 363 (1990), which also dealt with the issue of whether claims arose under federal admiralty

must "assess the general features of the type of incident involved . . . to determine whether the incident has a potentially disruptive impact on maritime commerce."  513 U.S. at 534 (quotations and citations omitted).  The Court in *Grubart* stressed that this inquiry focuses "*not on the specific facts* at hand but on whether the '*general features*' of the incident were 'likely to disrupt commercial activity.'"  *Id.* at 538 (citations omitted) (emphasis added).  Applying these principles, the *Grubart* Court found that the general features of that case—namely "damage by a vessel in navigable water to an underwater structure"—plainly constituted "the kind of incident that has a potentially disruptive impact on maritime commerce."  *Id.*  (citations omitted).

The facts alleged by Plaintiffs likewise are potentially disruptive of commercial maritime activity.  Plaintiffs allege, among other things, that Defendants were negligent with respect to their operation of and activities aboard a vessel, the *Deepwater Horizon*,[10] and seek largely economic damages arising from alleged harm to the Gulf of Mexico,[11] a body of water "teeming with maritime activity."  *Broughton Offshore Drilling, Inc. v. S. Cent. Mach., Inc.*, 911 F.2d 1050, 1052 n.1 (5th Cir. 1990).  Accordingly, this *Sisson* prong of the maritime nexus inquiry is satisfied.

Under the second *Sisson* inquiry, the Court must determine "whether the general character of the activity giving rise to the incident shows a substantial relationship to

---

jurisdiction.  The Supreme Court advanced the analysis further in *Grubart*, but retained the *Sisson* inquiries as part of the admiralty jurisdiction analysis.  *See Grubart*, 513 U.S. at 533-34.

[10] *See, e.g.*, Master Complaint ¶¶ 487, 541(a)-(c), (e)-(f), 554.

[11] *See, e.g., id.* ¶¶ 176, 180 (describing the impact of the oil spill on the Gulf of Mexico and on the economic activities dependent on the Gulf of Mexico); *see also id* at ¶ 476 (defining the proposed class as "[a]ll individuals and entities residing or owning property in the United States who claim economic losses, or damages to their occupations, businesses, and/or property as a result of the April 20, 2010 explosions and fire aboard, and sinking of, the Deepwater Horizon, and the resulting Spill").

traditional maritime activity." *Grubart*, 513 U.S. at 539.  Thus, the appropriate analysis focuses on the general nature of the incident.  For example, in *Grubart*, the Supreme Court described the general character of the relevant activity as "repair or maintenance work on a navigable waterway performed from a vessel." *Id.* at 540.  The Court further noted that "[n]avigation of boats in navigable waters clearly falls within the substantial [maritime] relationship[.]" *Id.*  Likewise, here, the general character of Incident could be described as *oil and gas well drilling from a vessel on a navigable waterway*.  Clearly, the general character of the Incident shows a substantial relationship to general maritime activity.

In determining whether admiralty jurisdiction applies, the general nature of the Incident controls.  On the basis of the Master Complaint, the parties aboard the *Deepwater Horizon* were engaged in traditional maritime activity—operating a vessel in navigable waters—and such activity is claimed to have been a proximate cause of the Incident.  (Master Complaint ¶¶ 541(a)-(c), (e)-(f), 554).  Thus, admiralty jurisdiction governs Plaintiffs' claims.

Furthermore, the admiralty jurisdiction test set forth in *Grubart* is not affected by the fact that some of the Plaintiffs might be characterized as land-based claimants or by the allegations that some or all of their damages were incurred on land.  First, Plaintiffs' asserted damages—predicated on allegations of harm to the Gulf of Mexico—are themselves intensely maritime.  Second, even assuming Plaintiffs demonstrate direct injury to property on land or in state waters, admiralty jurisdiction over those claims would still apply maritime law in lieu of substantive state law by virtue of the Admiralty

Extension Act, 46 U.S.C. § 30101, which Plaintiffs invoked as a jurisdictional basis for the Master Complaint.[12]  *See In re Exxon Valdez,* 767 F. Supp. 1509, 1512 (D. Alaska 1991) (observing that if it is established that the oil spill from the *Exxon Valdez* is found to be the proximate cause of shore-based damages, plaintiffs' claims will be subject to admiralty jurisdiction by operation of the Admiralty Extension Act).  As the Supreme Court has explained, "[t]he purpose of the [Admiralty Extension Act] was to end concern over the sometimes confusing line between land and water, by investing admiralty with jurisdiction over 'all cases' where the injury was caused by a ship or other vessel on navigable water, even if such injury occurred on land."  *Grubart*, 513 U.S. at 532.

Accordingly, admiralty jurisdiction clearly attaches to any claims Plaintiffs may have arising out of the Incident.  Such claims are fundamentally maritime in nature and, therefore, arise under maritime law, not state law.

### 3. *The Outer Continental Shelf Lands Act Does Not Require the Application of "Adjacent State Law" to Plaintiffs' Claims.*

The only other basis on which state law could theoretically apply to Plaintiffs' claims is the "adjacent state law" provision of OCSLA, which applies, as a proxy for federal law, the law of the adjacent state in *certain situations* on the Outer Continental Shelf ("OCS").  *See* 43 U.S.C. § 1333(a)(2)(A) (emphasis added).  The "adjacent state law" provision of OCSLA does not apply in this case because the *Deepwater Horizon* was neither an "artificial island" nor a "fixed structure" erected on the subsoil or seabed of the OCS.

---

[12] *See supra,* p. 7.  The Admiralty Extension Act, which was codified at 46 U.S.C. § 740, has now been recodified at 46 U.S.C. § 30101.

As a threshold matter, if maritime law applies to Plaintiffs' claims of its own force (and it does, as demonstrated above), OCSLA's adjacent state law provision does not apply. *See Tennessee Gas Pipeline v. Houston Cas. Ins. Co.,* 87 F.3d 150, 154 (5th Cir. 1996) (noting that "where OCSLA and general maritime law both could apply, the case is to be governed by maritime law"). This conclusion is reinforced by the statutory text of OCSLA, which contains two relevant but significantly different statutory provisions— Section 1333(a)(1) and 1333(a)(2)(A).

Section 1333(a)(1) of OCSLA contains a very broad exertion of federal control and authority over virtually all activities occurring on the OCS involving the exploration, development, production, and transportation of resources. That exertion of federal control is extended to "the subsoil and seabed of the outer Continental Shelf and to all artificial islands, *and all installations and other devices permanently or temporarily attached to the seabed*[.]" 43 U.S.C. § 1333(a)(1) (emphasis added). The *Deepwater Horizon*, a vessel, fairly falls within the language of a "device . . . temporarily attached to the seabed[.]" Thus, the vessel and its operations were subject to federal control and authority.

In stark contrast, § 1333(a)(2)(A) of OCSLA separately applies the "laws of each adjacent state" on the OCS in a much narrower set of circumstances. That provision provides, in relevant part, that the law of the adjacent state applies "to that portion of the subsoil and seabed of the outer Continental Shelf, and *artificial islands* and *fixed structures* erected thereon[.]" (emphasis added). Conspicuously absent is the language contained in § 1333(a)(1) pertaining to "all installations and other devices permanently or

temporarily attached to the seabed."  Rather, § 1333(a)(2)(A) has a far narrower reach, applying adjacent state law only to "artificial islands" and "fixed structures," not to vessels like the *Deepwater Horizon*.[13]  As the *Deepwater Horizon* was neither an artificial island nor a fixed structure, but rather was a vessel,[14] Section 1333(a)(2)(A) does not operate to apply "adjacent state law" in this case.[15]

### 4.  *Plaintiffs' Alleged Damages Demonstrate that the OPA Is Their Exclusive Remedy.*

Because all of Plaintiffs' claims, including their attempted State Law Claims, are governed by maritime law, *see supra*, they are displaced by the OPA as they seek oil

---

[13] It is not surprising that §§ 1333(a)(1) and 1333(a)(2)(A) differ in scope.  The very broad exertion of federal authority under § 1333(a)(1) necessarily encompasses all mineral exploration and production activities on the OCS, whether performed by "fixed platforms" or "vessels," in order to maximize federal control over vital national resources.  However, maritime law has historically governed claims arising on or in connection to a vessel, *see Sisson*, 497 U.S. at 360-61, and so § 1333(a)(2)(A)'s application of adjacent state law is only needed to fill the gap where claims arise on or in connection with a non-vessel—*i.e.*, an artificial island or fixed structure—such as a fixed platform.  Consequently, claims arising out of mineral exploration on the OCS may broadly arise under OCSLA, but such claims may be governed either by maritime law (as in this case) or, to the extent they fall within § 1333(a)(2)(A)'s narrower "adjacent state law" provision (applicable to fixed structures), state law as a proxy for federal law.

[14] *See supra* fn. 8.

[15] Even if § 1333(a)(2)(A) were to apply in this case, Louisiana law likely would apply as adjacent state law.  In *Snyder Oil Corp. v. Samedan Oil Corp.*, the court considered four kinds of evidence to determine which state was considered "adjacent" to an OCSLA situs:  (1) geographic proximity; (2) which coast federal agencies consider the subject platform to be "off of"; (3) prior court determinations; and (4) projected boundaries.  208 F.3d 521, 524 (5th Cir. 2000).  Louisiana is closer to the situs of the *Deepwater Horizon* incident than any other state, and the Minerals Management Service (MMS) (n/k/a Bureau of Ocean Energy Management, Regulation, and Enforcement (BOEMRE)) has described the *Deepwater Horizon* incident as occurring "50 miles offshore Louisiana" on its official website linking a webpage describing the *Deepwater Horizon* incident, http://www.mms.gov/DeepwaterHorizon.htm, a copy of which is attached hereto as Exhibit B.  Similarly, in a notice entitled "*Information to Lessees and Operators on Federal Oil and Gas Leases on the Outer Continental Shelf, Gulf Mexico Region*," dated April 28, 2010, MMS notified lessees and operators in the Gulf of Mexico about its intention to initiate controlled burns to abate the oil spill and described the oil spill as being "located offshore Louisiana."  *See* https://www.gomr.mms.gov/homepg/regulate/regs/itls/100428.pdf, a copy of which is attached hereto as Exhibit C.  In addition, federal district courts have noted that other locations in the Mississippi Canyon are adjacent to the State of Louisiana and have applied Louisiana law as surrogate federal law.  *See, e.g., Ronquille v. MMR Offshore Servs., Inc.*, 353 F. Supp. 2d 680, 682 n.4 (E.D. La. 2004); *Dennis v. Bud's Boat Rental, Inc.*, 987 F. Supp. 948, 949-954 (E.D. La. 1997).  Therefore, even if OCSLA were to apply adjacent state law in this case, it likely would apply Louisiana law to Plaintiffs' claims, including but not limited to those alleged in the cases identified on Appendix 2.

spill-related damages of the type recoverable under that statute.  The OPA is the exclusive federal remedy for the types of damages alleged.  *See S. Port Marine, LLC v. Gulf Oil Ltd. P'ship*, 234 F.3d 58, 65-66 (1st Cir. 2000) (citations omitted) (noting that Congress has established a "comprehensive" scheme that outlines with particularity the types of damages recoverable under the OPA and that this is a "strong indication that Congress intended the OPA to be the sole federal law applicable in this area of maritime pollution").  Plaintiffs cannot circumvent the OPA with state law allegations arising under this Court's admiralty jurisdiction.

The OPA was enacted by Congress in the wake of the *Exxon Valdez* oil spill to provide a prompt, federally-coordinated response to oil spills in the navigable waters of the United States and to compensate innocent victims.  *Gatlin Oil Co. v. United States*, 169 F.3d 207, 209 (4th Cir. 1999).  The OPA provides a comprehensive statutory framework for parties injured by oil spills in navigable waters to make claims to a designated responsible party for recovery of costs and damages.  *See* 33 U.S.C. §§ 2701, *et seq.*  The OPA "represents Congress's attempt to provide a comprehensive framework in the area of marine oil pollution."  *Tanguis v. M/V Westchester*, 153 F. Supp. 2d 859, 867 (E.D. La. 2001) (citations omitted).  Its purpose is "to promote settlement and avoid litigation."  *Johnson v. Colonial Pipeline Co.*, 830 F. Supp. 309, 310 (E.D. Va. 1993).

Plaintiffs' claims—including their purported State Law Claims, which are maritime claims no matter how artfully pleaded—seek relief for precisely the types of damages Congress intended to be recovered exclusively under the OPA.  *See S. Port Marine*, 234 F.3d at 65-66; *see also In re Jahre Spray II K/S*, 1996 U.S. Dist. LEXIS

11594, at * 11 (D. N.J. Aug. 5, 1996) (noting that in the wake of the *Exxon Valdez* incident, the OPA was developed as a comprehensive statutory scheme that would deal with all issues surrounding an oil spill, including liability levels for the respective responsible parties."); *Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atl. Corp.*, 924 F. Supp. 1436, 1447 (E.D. Va. 1996) ("OPA clearly preempts maritime law as to recovery of cleanup expenses and the cost of compensating injured persons.").

Pursuant to the OPA, injured parties may recover a broad range of damages from a responsible party, including:

Natural resources

>   Damages for injury to, destruction of, loss of, or loss of use of, natural resources, including the reasonable costs of assessing the damage, which shall be recoverable by a United States trustee, a State trustee, an Indian tribe trustee, or a foreign trustee.

Real or personal property

>   Damages for injury to, or economic losses resulting from destruction of, real or personal property, which shall be recoverable by a claimant who owns or leases that property.

Subsistence use

>   Damages for loss of subsistence use of natural resources, which shall be recoverable by any claimant who so uses natural resources which have been injured, destroyed, or lost, without regard to the ownership or management of the resources.

Revenues

>   Damages equal to the net loss of taxes, royalties, rents, fees, or net profit shares due to the injury, destruction, or loss of real property, personal property, or natural resources, which shall be recoverable by the Government

of the United States, a State, or a political subdivision
thereof.

Profits and earning capacity

Damages equal to the loss of profits or impairment of
earning capacity due to the injury, destruction, or loss of
real property, personal property, or natural resources,
which shall be recoverable by any claimant.

Public services

Damages for net costs of providing increased or additional
public services during or after removal activities, including
protection from fire, safety, or health hazards, caused by a
discharge of oil, which shall be recoverable by a State, or a
political subdivision of a State.

33 U.S.C. § 2702(b)(2).

The OPA provides the exclusive federal remedy for recovery of oil spill-related

damages, preempting or displacing maritime or other federal claims for recovery of those

damages.  *See S. Port Marine*, 234 F.3d at 65 ("Congress intended the OPA to be the

exclusive federal law governing oil spills."); *Gabarick v. Laurin Mar. (Am.) Inc.*, 623 F.

Supp. 2d 741, 750-51 (E.D. La. 2009) ("This Court finds that an evaluation of the

*Oswego* factors indicates that OPA preempts general maritime law claims that are

recoverable under OPA.").  Regarding the preemptive effect of OPA, it has been held that

"all [general maritime law] claims that are recoverable under OPA, specifically those

covered damages enumerated in 33 U.S.C. § 2702, are preempted by OPA."  *Gabarick*,

623 F. Supp. 2d at 750-51.

Consequently, any attempt by Plaintiffs to recover oil spill-related damages

addressed by OPA under common law theories of trespass, nuisance, and fraudulent

concealment must fail.  Plaintiffs contend that

> [f]ishermen and marine-related businesses have lost and continue to lose income and their businesses; the tourism industry and hotels, resorts, restaurants, and other tourism-reliant businesses have lost and continue to lose income; and real property owners have suffered the loss, damage, and/or diminution of the value of their properties throughout the Coastal Zone.

(Master Complaint ¶ 180).  Clearly, these damage categories are encompassed by Section 2702(b) of OPA.  (*See also* Master Complaint ¶¶ 608-610) (asserting damages under subsections (B), (C), and (E) of OPA § 2702(b)(2)).  Because "Congress intended OPA to be the exclusive federal law governing oil spills," *S. Port Marine*, 234 F.3d at 65-66, Plaintiffs' claims against HESI—their asserted maritime claims, including those guised as purported State Law Claims—for recovery of oil spill-related damages fail as a matter of law, demanding dismissal under Federal Rule of Civil Procedure 12(b)(6).

### 5.   *This Court Cannot Exercise Subject Matter Jurisdiction Over Plaintiffs' Claims To the Extent Plaintiffs Have Failed To Present Their Claims Through the OPA-Mandated Claims Process.*

Although the OPA provides the exclusive remedy for their alleged oil spill-related damages, many Plaintiffs in the underlying cases have failed to follow the Congressionally-mandated claims presentment process in the OPA.  Accordingly, this Court's subject matter jurisdiction cannot be properly invoked by such Plaintiffs, and their claims should be dismissed on this independent, jurisdictional basis.

Parties claiming to have suffered damages from oil releases are required to first present their claims to the responsible party or parties before filing a lawsuit claiming damages:  "[A]ll claims for removal costs or damages *shall be presented first to the responsible party* or guarantor designated under [§] 2714(a) of this title."  33 U.S.C. § 2713(a) (emphasis added).  Claimants may only initiate suit *after* a claim is presented in

accordance with § 2713(a) and the responsible party denies all liability for the claim or

the claim is not settled by payment within ninety days after the date upon which the claim

was presented.  33 U.S.C. § 2713(c).  Pre-suit presentment is mandatory:

> The clear text of § 2713 creates a *mandatory condition precedent* barring all OPA claims unless and until a claimant has presented [its] claims in compliance with § 2713(a) and either: (1) all responsible parties deny all liability; or (2) the claim is not settled by payment within 90 days after (A) the claim was presented, or (B) advertising was begun under [§] 2714(b) of the Act, whichever is later.

*Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.*, 51 F.3d 235, 240 (11th Cir. 1995)

(emphasis added); *see also Gabarick*, 623 F. Supp. 2d at 750-51 (dismissing for lack of

subject matter jurisdiction all non-OPA claims seeking damages of the type covered by

the OPA for failure to present such claims to the designated responsible party); *Marathon

Pipe Line Co. v. LaRoche Indus. Inc.*, 944 F. Supp. 476, 477 (E.D. La. 1996) ("The Court

agrees that § 2713's presentation requirement is jurisdictional and mandates dismissal

when that provision is applicable and not complied with by the claimant."); S. Rep. No.

101-94 (1989), reprinted in 1990 U.S.C.C.A.N. 722, 732 (hereinafter "Senate Report")

(noting that "the bill requires claims to be presented in the first instance to the discharger,

where known.").

In the Master Complaint, Plaintiffs allege that they "have satisfied, or will have

satisfied, all of the administrative requirements of 33 U.S.C. §§ 2713(a) and (b), as to

each and all defendants[.]"  (Master Complaint ¶ 611).  Yet, as set forth above, Plaintiffs

are required to meet the OPA's presentment requirements *before* filing suit.  Moreover,

the vast majority of the underlying complaints make no similar allegation about

presenting claims to a responsible party under the OPA.  As a result, to the extent any

Plaintiff has failed to present a claim under the OPA's mandatory prerequisites to a designated responsible party, this Court lacks jurisdiction to hear any such claims related to the oil spill, and such claims should be dismissed unless and until Plaintiffs comply with the jurisdictional pre-suit presentment requirements of the OPA.

### 6. *Plaintiffs' Sole Remedy for Their Alleged Damages, if Any, Lies Against a Responsible Party or Parties Designated Under the OPA, Not Against HESI.*

The failure of any Plaintiffs to present their claims as required under the OPA warrants dismissal of their actions in their entirety.  However, even if Plaintiffs were subsequently to satisfy the OPA's claims presentment process, their sole remedy, if any, lies only against the designated responsible party or parties, not against HESI.  Indeed, Plaintiffs acknowledge in the Complaint that HESI has not been named a "Responsible Party" for OPA purposes by the U.S. Coast Guard.  (Master Complaint ¶ 604) (noting that "[t]he Coast Guard has named BP as the responsible party for the downhole release of oil and Transocean as the responsible party for the release of diesel on the surface").  Under the OPA, the responsible party for the vessel or facility from which an oil release emanates is liable for all associated damages and removal costs:

> Notwithstanding any other provision or rule of law, and subject to the provisions of this Act, each *responsible party* for a vessel or facility from which oil is discharged  . . . *is liable* for the removal costs and *damages* specified in subsection (b) that result from such incident.

33 U.S.C. § 2702(a) (emphasis added).  In the case of an oil release originating from an offshore vessel or facility, the OPA defines the responsible party, respectively, as "any person owning, operating, or demise chartering the vessel" or the "lessee or permittee of the area in which the facility is located."  33 U.S.C. § 2701(32)(C).  The Coast Guard

designates the responsible party who is strictly liable for recovery costs and damages. 33 C.F.R. § 136.305. *See also Gabarick*, 623 F. Supp. 2d at 744 ("When an oil spill occurs on U.S. navigable waters, the Coast Guard determines the source of the discharge and notifies a responsible party for that source."); Senate Report, at 723 (noting that "wherever possible, the burden is to be on the discharger to first bear the costs of removal and provide compensation for any damages.").

Recourse against the responsible party or parties is the sole remedy for those injured by an oil release. Recovery, if any, against non-responsible third parties is limited to an action for contribution by the responsible party or parties, *not direct claims against non-responsible third parties by those alleging injury resulting from an oil release*. *See* 33 U.S.C. § 2709 (emphasis added). As the Court in *Gabarick* explained:

> In light of Congress's intent to minimize piecemeal lawsuits and the mandatory language of OPA discussed earlier, it appears that Claimants should pursue claims covered under OPA only against the responsible party and in accordance with the procedures established by OPA. Then, the responsible party can take action to recover against third parties.

623 F. Supp. 2d at 750. Plaintiffs, therefore, can only state viable OPA claims against the designated responsible party or parties, and only in compliance with OPA's mandatory prerequisites. Here, OPA claims brought against HESI in the underlying cases are not cognizable because HESI is not a designated responsible party under the statute. Accordingly, to the extent Plaintiffs have brought claims against HESI under the OPA[16], such claims should be dismissed as a matter of law since HESI is not a designated responsible party. To the extent Plaintiffs bring direct claims against HESI

---

[16] *See Appendix 3*, which lists the underlying cases in which Plaintiffs assert an OPA claim against HESI.

for oil-spill related damages covered by the OPA, such claims are only viable against a designated responsible party or parties, not against HESI.  The Court, therefore, should dismiss all claims against HESI with prejudice because Plaintiffs have failed to state a proper claim.[17]

**B.     Plaintiffs' Claims Are Barred by the Economic Loss Rule to the Extent that They Do Not Allege Physical Damage to a Proprietary Interest.**

Assuming, *arguendo,* that Plaintiffs' claims against HESI are not otherwise barred by the OPA, such claims would nonetheless fail under federal maritime law's economic loss rule to the extent that they seek recovery for economic losses absent physical injury to a proprietary interest.  *See Robins Dry Dock & Repair Co. v. Flint,* 275 U.S. 303, 309 (1927).  "It is unmistakable that the law . . . does not allow recovery of purely economic claims absent physical injury to a proprietary interest in a maritime negligence suit."  *In re Taira Lynn Marine Ltd. No. 5, LLC*, 444 F.3d 371, 377 (5th Cir. 2006).  *See also Reserve Mooring, Inc. v. Am. Commercial Barge Line, LLC*, 251 F.3d 1069, 1072 (5th Cir. 2001) ("[P]hysical injury to a proprietary interest is a prerequisite to recovery of economic damages in cases of unintentional maritime tort.");  *State of Louisiana v. M/V Testbank*, 752 F.2d 1019, 1022 (5th Cir. 1985);  *Kingston Shipping Co. v. Roberts,* 667 F.2d 34 (11th Cir. 1983).   The rule's purpose is to prevent limitless liability for negligence and the filing of lawsuits of a highly speculative nature.  *Akron Corp. v. M/T Cantigny*, 706 F.2d 151, 153 (5th Cir. 1983).

---

[17] By this Motion, HESI does not waive its right to move to dismiss any of the underlying complaints for their failure to comply with the *Twombly/Iqbal* pleading standard, which requires that the "complaint must contain sufficient factual material, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

In the Master Complaint, Plaintiffs allege, among other things, damages in the form of "economic losses, or damages to their occupations, businesses, and/or property[.]" (Master Complaint ¶ 476). Such allegations for purely economic losses are the kinds of speculative claims that the economic loss rule was created to preclude. *See Akron Corp.,* 706 F.2d at 153. Moreover, the Master Complaint does not allege that each Plaintiff seeking economic damages in the underlying complaints has also suffered physical damage to a proprietary interest. Nor could it. The vast majority of Plaintiffs in the underlying complaints do not sufficiently allege or allege at all physical damage to such interest.[18] Accordingly, to the extent Plaintiffs' do not allege or cannot demonstrate physical damage to a proprietary interest, their economic damages claims should be dismissed.[19]

## C      Plaintiffs Cannot, as a Matter of Law, Recover Punitive Damages from HESI.

In addition to the other damage claims discussed *supra*, Plaintiffs seek punitive damages. (Master Complaint ¶¶ 183, 668-689). As a matter of law, however, Plaintiffs cannot recover punitive damages. Punitive damages are not a separate cause of action. *Sulzer Carbomedics v. Or. Cardio-Devices, Inc.*, 257 F.3d 449, 461 (5th Cir. 2001); *see*

---

[18] *See Appendix 4,* which lists the underlying cases in which plaintiffs assert claims for economic damages arising from the Incident without sufficiently alleging or alleging at all physical injury to a proprietary interest.

[19] As previously stated, the only basis on which state law could theoretically apply to Plaintiffs' claims is through the adjacent state law provision of OCSLA, 43 U.S.C. § 1333(a)(2)(A). If that provision were applicable, it would require that Louisiana law govern Plaintiffs' claims. *See supra* fn. 15. Louisiana law, however, also precludes recovery for economic loss absent a showing of physical injury to a proprietary interest. *See Conoco, Inc. v. Halter-Calcasieu, L.L.C.,* 865 So.2d 813, 820-21 (La. Ct. App. 2003). Accordingly, even if this Court finds that state law governs these claims pursuant to OCSLA's adjacent state law provision, such claims should be dismissed to the extent they do not allege a physical injury to a proprietary interest.

*also Byrne v. Nezhat*, 261 F.3d 1075, 1087 (11th Cir. 2001) (noting that plaintiff's claim for punitive damages was not a separate cause of action).  Instead, they "must relate to some separate cause of action which permits recovery of punitive damages."  *South Port Marine, LLC, v. Gulf Oil Ltd. P'ship.*, 234 F.3d 58, 64 (1st Cir. 2000).

As HESI has shown, the OPA provides Plaintiffs' exclusive remedy here, and Plaintiffs have not satisfied the jurisdictional requirements for an OPA claim against HESI.  Further, the OPA does not permit the recovery of punitive damages.  *S. Port Marine*, 234 F.3d at 65-66.  The statute's comprehensive list of recoverable damages is exclusive as "Congress intended the OPA to be the sole federal law applicable in this area of maritime pollution."  *Id.* at 65.  Thus, as a matter of law, Plaintiffs cannot recover punitive damages, even if their claims are construed as maritime tort claims.  *See Clausen v. M/V New Carissa*, 171 F. Supp. 2d. 1127, 1133 (D. Or. 2001) (holding that the OPA precludes recovery of punitive damages under any general maritime law theory for which the OPA could provide relief).  Plaintiffs' demand for the recovery of punitive damages, therefore, must be dismissed.

## V.   <u>CONCLUSION</u>

For the reasons set forth above, subject matter jurisdiction has yet to attach for Plaintiffs' claims and, separately, they have failed to plead viable claims against HESI as a matter of law.  Pursuant to Rule 12(b)(1) and Rule 12(b)(6), the Court, therefore, should dismiss Plaintiffs' claims against HESI in their entirety.

Dated:  February 28, 2011

D  1621789 v3-24010/0002 PLEADINGS