UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig<br>"Deepwater Horizon" in the<br>Gulf of Mexico, on April 20, 2010 | *<br>*<br>*<br>* | MDL No. 2179<br><br>SECTION "J" |
| **THIS PLEADING APPLIES TO ALL<br>CLAIMS AND CASES IN PLEADING<br>BUNDLE B1, INCLUDING ALL<br>COMPLAINTS IN THE B1 BUNDLE<br>NAMING WEATHERFORD AS<br>DEFENDANT, IN PARTICULAR:**<br>10-01222, 10-1561, 10-1556, 10-1560,<br>10-01573, 10-01574, 10-03113, 10-03112,<br>10-02984, 10-02985, 10-03274, 10-03269,<br>10-01752, 10-02986, 10-01850, 10-01852,<br>10-01855, 10-01857, 10-03272, 10-02669,<br>10-02654, 10-1920, 10-03095, 10-01935,<br>10-04207, 10-04359, 10-03114, 10-03115,<br>10-03105, 10-01908, 10-03085, 10-03100,<br>10-2114, 10-02116, 10-02770 | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* | JUDGE: BARBIER<br><br>MAGISTRATE: SHUSHAN |

\*      \*      \*      \*      \*      \*      \*

## MEMORANDUM IN SUPPORT OF WEATHERFORD U.S., L.P.'S MOTION TO DISMISS THE PLAINTIFFS' BUNDLE B1 CLAIMS FOR PRIVATE ECONOMIC LOSSES

**MAY IT PLEASE THE COURT:**

Weatherford U.S., L.P. ("Weatherford") submits this Memorandum in Support of its

Motion to Dismiss the Plaintiffs' Bundle B1 Claims for Private Economic Losses under

Rules 12(b)(6) and Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth more fully below, all claims asserted by the B1 Plaintiffs against Weatherford should be dismissed.

## I.   INTRODUCTION AND FACTUAL BACKGROUND

As has been well documented in these proceedings, on April 20, 2010, a well blowout occurred at the Macondo Well site, and an explosion and fire occurred aboard the semi-submersible drilling vessel *Deepwater Horizon,* a vessel owned and operated by one of several Transocean entities and chartered to one of several BP entities. The explosion and fire resulted in fatalities, personal injuries, and the total loss of the *Deepwater Horizon.*

In accordance with OPA, the Coast Guard formally designated BP as the "responsible party" for the subsea release of oil, and Transocean as the "responsible party" for the surface release of oil. Weatherford was not designated a "responsible party" nor is Weatherford a guarantor of either the BP or Transocean entities. BP and Transocean published their designation as responsible parties and advertised procedures by which claims could be submitted for consideration and potential resolution. Claim presentment and submission of a claim for certain damages through OPA's claims presentment procedure is a jurisdictional prerequisite which must be satisfied by a plaintiff prior to bringing any lawsuit in court.

Nonetheless, hundreds of lawsuits have been filed throughout the country seeking to hold various parties liable for the damages sustained as a result of the fire, explosion and resulting oil spill that occurred on April 20, 2010. The majority of the lawsuits filed in federal courts have been transferred and consolidated in these proceedings by orders of the Multi-District Litigation Panel. Certain "pleading bundles" have been established by the Court for purposes of filing master complaints, answers, and any F.R.C.P. 12 motions. According to Case Management Order No. 1, Paragraph III B(1), one such pleading bundle is the B1 Bundle, which consists of

plaintiffs (the "B1 Plaintiffs") seeking non-governmental economic loss and property damages. On February 9, 2011, the B1 Plaintiffs filed a "First Amended Master Complaint, Cross-Claim, and Third-Party Complaint for Private Economic Losses in Accordance with PTO No. 11 [CMO No. 1] Section III (B1) ["B1 Bundle"]" (the "B1 Amended Complaint"). (Rec. Doc. 1128).

The B1 Amended Complaint lists the following parties as B1 Plaintiffs:

(a)     Commercial fisherman, shrimpers, crabbers, oysterman and the owners/operators of businesses involving these trades (the "Commercial Fishermen Plaintiffs");

(b)     Seafood processors, distributors, retail and seafood markets, restaurant owners/operators, and all those employed by those entities (the "Processing and Distributing Plaintiffs");

(c)     Recreational business owners/operators, and/or workers, including recreational fishing businesses, commercial guides and charter fishing businesses ("Recreational Business Plaintiffs");

(d)     Commercial businesses, business owners/operators, and/or workers, including commercial divers, offshore oilfield service, repair, and supply and real estate agents ("Commercial Business Plaintiffs");

(e)     Recreational sport fisherman, recreational divers, beachgoers, and recreational boaters ("Recreation Plaintiffs");

(f)     Plant and dock workers, including seafood plant workers, longshoremen, and ferry operators ("Plant and Dock Worker Plaintiffs");

(g)     Boat captains, crew, charterers, workers, and/or volunteers involved in the Vessel of Opportunity program who were not compensated for their work in the program and/or whose property was damaged as a result of their work in the program ("VoO Plaintiffs")[1];

(h)     Owners, lessors and lessees of real property alleged to be harmed or impacted, including lessees of oyster beds (Real Property Plaintiffs");

(i)     Hotel owners/operators, vacation rental owners/agents, and all those who earn their living from the tourism industry ("Real Property/Tourism Plaintiffs");

---

[1] Weatherford submits that the VoO Plaintiffs are improperly included in the B1 Amended Complaint as these VoO Plaintiffs' claims consist in part of contractual claims which are solely recoverable against the BP entity or BP contractor with which the claimant contracted. Moreover, although PTO 25 allows for a claimant to plead claims in both the B1 Bundle and the B3 Bundle, the VoO Plaintiffs are more properly included in the B3 Bundle as "Clean-Up . . . claims." *See* PTO 11, Rec. Doc. 569, p. 3, ¶ III(B)(3); PTO 25, Rec. Doc. 983, ¶ 1.

(j)     Banks, financial institutions and businesses that suffered losses as a result of the spill ("Banking/Retail Business Plaintiffs");

(k)     Persons who utilize natural resources for subsistence ("Subsistence Plaintiffs");

(l)     Oil service, exploration, and/or drilling service companies, workers, providers, or suppliers who have lost income, profits and/or earning capacity as a result of the casualty (including, but not limited to the Moratorium issued by the Department of the Interior) ("Moratorium Plaintiffs")[2]; and

(m)     Automobile and boat businesses, dealers, and service stations and the employees thereof who have suffered damages as a result of the casualty ("Dealer Plaintiffs").[3]

The B1 Plaintiffs allege that a Weatherford-manufactured float collar "may have failed to seal properly, which could have allowed hydrocarbons to leak into the casing, contributing to the April 20, 2010 blowout."[4]  The B1 Plaintiffs ultimately conclude that since hydrocarbons entered the casing, the Weatherford float collar failed to properly seal.[5]

According to the B1 Plaintiffs, because the float collar allegedly failed to seal properly, the Weatherford float collar was defectively designed and/or manufactured.[6]  Although these allegations clearly sound in products liability, the B1 Plaintiffs seek recovery from Weatherford under various theories of liability and sources of law in addition to products liability, including the Oil Pollution Act of 1990, 33 U.S.C. §2701, *et seq.* ("OPA"), federal, General Maritime Law and state law tort, and trespass and nuisance under state law.[7]

---

[2] To the extent that the Moratorium Plaintiffs state any injunctive or regulatory claims, these claims are impermissibly included in the B1 Amended Complaint and are required to be asserted under Bundle D.  PTO 11, Rec. Doc. 569, p. 3, ¶ III(D).

[3] B1 Amended Complaint, Rec. Doc. 1128, ¶¶ 209(a)-(m).

[4] B1 Amended Complaint, Rec. Doc. 1128, ¶ 318.

[5] B1 Amended Complaint, Rec. Doc. 1128, ¶ 609, 664.

[6] B1 Amended Complaint, Rec. Doc. 1128, ¶ 609, 660.

[7] B1 Amended Complaint, Rec. Doc. 1128, ¶ 232, 572, 578, 587, 609-11, 660, 676-77, 691-711.

However, for the reasons that follow, the B1 Plaintiffs have no claims against Weatherford because OPA provides the exclusive remedy for the damages sought by the B1 Plaintiffs and OPA does not provide a right of action against a third party like Weatherford. Further, to the extent that the B1 Plaintiffs' claims against Weatherford are not precluded by OPA, the claims are governed by either the General Maritime Law or Louisiana law, and the B1 Plaintiffs have no claims against Weatherford under the laws of Texas, Mississippi, Alabama, or Florida. Insofar as Louisiana law is applicable, the Louisiana Products Liability Act provides the sole remedy for the B1 Plaintiffs, and the statute does not provide for the recovery of punitive damages or attorneys' fees. Finally, under both Louisiana law and the General Maritime Law, the economic loss rule bars the recovery by the B1 Plaintiffs of purely economic loss.

## II.     LAW AND ARGUMENT

### A.     Legal Standard for Dismissal under Rule 12(b)(6) and Rule 12(c) of the Federal Rules of Civil Procedure

The standard for deciding a motion for judgment on the pleadings under F.R.C.P. 12(c) is the same as the standard for a motion to dismiss for failure to state a claim under F.R.C.P. 12(b)(6). *Doe v. Myspace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). To survive a motion for judgment on the pleadings, the factual allegations in the B1 Amended Complaint "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007). The pleading must contain "enough facts to state a claim for relief that is plausible on its face." *Id.* at 570, 127 S. Ct. at 1974; *see also Hoover v. Florida Hydro, Inc.*, 2009 WL 1380619, at *2-*3 (E.D. La. May 14, 2009); *Nungesser v. New York Life Insur. & Annuity Corp.*, 2009 WL 537199, at *1 (E.D. La. Mar. 3, 2009); *Sullivan v. Monsanto Co.*, 2009 WL 43202, at *1 (E.D. La. Jan. 7, 2009). Moreover, "conclusory

allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993).

**B.      OPA Provides the B1 Plaintiffs' Sole Remedy**

*1.      OPA Establishes an Exclusive Federal Cause of Action for Damages Arising out of a Marine Oil Spill*

OPA is the exclusive remedy for any public or private claimant seeking recovery for "covered damages" as defined by OPA in 33 U.S.C. §2702(b)(2)(A)-(F).   Section 2702(a) provides: "*Notwithstanding any other provision or rule of law*, and subject to the provisions of this Act, each responsible party for a vessel or a facility from which oil is discharged, or which poses the substantial threat of a discharge of oil, into or upon the navigable waters or adjoining shorelines or the exclusive economic zone is liable for the removal costs and damages specified in subsection (b) of this section that result from said incident." (emphasis added).   Section 2702(b)(2) provides:

> (2) Damages
>
> The damages referred to in subsection (a) of this section are the following:
>
> (A)  Natural Resources
>
> Damages for injury to, destruction of, loss of, or loss of use of, natural resources, including the reasonable costs of assessing the damage, which shall be recoverable by a United States trustee, a State trustee, an Indian tribe trustee, or a foreign trustee.
>
> (B)  Real or personal property
>
> Damages for injury to, or economic losses resulting from destruction of, real or personal property, which shall be recoverable by a claimant who owns or leases that property.

(C)  Subsistence use

Damages for loss of subsistence use of natural resources, which shall be recoverable by any claimant who so uses natural resources which have been injured, destroyed, or lost, without regard to the ownership or management of the resources.

(D)  Revenues

damages equal to the net loss of taxes, royalties, rents, fees, or net profit shares due to the injury, destruction, or loss of real property, personal property, or natural resources, which shall be recoverable by the Government of the United States, a State, or a political subdivision thereof.

(E)  Profits and earning capacity

Damages equal to the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources, which shall be recoverable by any claimant.

(F)  Public services

Damages for net costs of providing increased or additional public services during or after removal activities, including protection from fire, safety, or health hazards, caused by a discharge of oil, which shall be recoverable by a State, or a political subdivision of a State.

OPA does not provide for recovery of damages for bodily injury or for recovery of certain property damages traditionally recognized under the General Maritime Law but not enumerated under OPA, including collision damages (hull damage, loss of vessel, wreck removal, and the like).

It is well recognized that when Congress comprehensively legislates in an area, it preempts the federal common law and General Maritime Law in that area, e.g. water pollution. *See Middlesex County Sewerage Authority v. National Sea Clammers Association*, 453 U.S. 1, 11, 101 S. Ct. 2615, 2621-22 (1981) (Federal Water Pollution Control Act, as amended, fully preempted federal common law of nuisance in area of ocean pollution); *Conner v. Aerovox, Inc.*,

730 F.2d 835, 840-841 (1st Cir. 1984) (General Maritime Law tort claims preempted by Federal Water Pollution Control Act). OPA is even more comprehensive in the field of oil pollution than the Federal Water Pollution Act is in the field of water pollution.

The legislative history also supports the view that OPA establishes an entirely new federal cause of action. As the Court in *Tanguis* noted, "OPA 'represents Congress' attempt to provide a comprehensive framework in the area of marine oil pollution.'" *Tanguis v. M/V Westchester*, 153 F. Supp. 2d 859, 867 (E.D. La. 2001) (citing *Rice v. Harken Exploration Co.*, 89 F. Supp. 2d 820, 822 (N.D. Tex. 1999)). The Senate Report also states that "OPA 'creates a single federal law providing clean up authority, penalties, and liability for oil pollution.'" *Id.* at 867 (citing S. REP. NO. 101-94, U.S. Code Cong. & Admin. News 1990, pp. 722, 730). Thus, the legislative history makes clear Congress' desire to create "an entirely new cause of action." *Id.*

Indeed, the Senate found that "the Nation need[ed] . . . a package of complementary international, national, and State laws that will adequately compensate victims of oil spills, provide quick, efficient cleanup, minimize damage to fisheries, wildlife and other natural resources and internalize those costs within the oil industry and its transportation sector" to replace the inadequate and "fragmented collection of Federal and State laws" in existence prior to OPA. S. REP. NO. 101-94, U.S. Code Cong. & Admin. News 1990, pp. 722, 723. The legislative history makes clear Congress' intent to create an entirely new OPA cause of action. As such, the exclusive remedy of the B1 Plaintiffs herein for OPA "covered damages," as defined in 33 U.S.C. §2702(b)(2)(A)-(F), lies in OPA, not in some other source of law.

In finding that OPA precludes recovery of the damages enumerated in 33 U.S.C. §2702(b)(2)(A)-(F) in a claim under the General Maritime Law, Judge Lemelle in *Gabarick v.*

*Laurin Maritime (America) Inc.*, 623 F. Supp. 2d 741 (E.D. La. 2009), recognized that the central inquiry should focus not on plaintiffs' characterization of the claims at issue, but on the damages sought by plaintiffs and whether or not those damages are specifically covered by OPA. *Id.* at 746  ("Claimants often cloud the issue at bar by arguing that OPA does not preempt General Maritime Law claims rather than focusing on preemption solely of the damages specifically covered by OPA.").

In reaching his decision on the preemptive effect of OPA, Judge Lemelle noted that the plain language of OPA supported the Court's decision:

> The Act [OPA] applies to the damages listed in §2702, which also specifically references its exclusive nature with respect to other provisions of law: *"Notwithstanding any other provision or rule of law*, and subject to the provisions of this Act ..." 33 U.S.C. §2702(a).  The Act also uses the absolute words "all" and "shall," stating that "*all* claims for ... damages *shall* be presented first to the responsible party," and allows for suit after exhaustion of the claims process as outlined in §2713(c).    33 U.S.C. §2713 (emphasis added).    Hence, the plain language of the statute indicates its mandatory and exclusive nature with respect to its covered damages.

*Id.*

33 U.S.C. §2702(b)(2) sets forth the list of damages recoverable under OPA.  Those damages are enumerated above.  As courts have routinely recognized, this statutory scheme is "comprehensive legislation."  While OPA allows the States to legislate "additional liability or requirements" for oil discharges and removal, the clear import to be drawn from the statutory text and legislative history of OPA, including 33 U.S.C. §2718, is that plaintiffs may not raise state law tort claims to recover those damages enumerated under OPA.  To allow such a reading, would effectively abrogate OPA in its entirety.  There is no alternative basis upon which to seek the damages enumerated under the provisions of OPA.

### 2.      The Statutory Text of OPA is Mandatory Rather than Permissive

The exclusive scheme of OPA is mandatory, and requires the dismissal of all claims against Weatherford in the B1 Amended Complaint.  OPA requires that claims for damage must first be presented to the responsible party.  33 U.S.C. § 2713(a).  The statute could not be clearer.  Section 2713(a) is captioned "Presentation" and states:  "Except as provided in subsection (b) of this section, all claims for removal costs or damages shall be presented first to the responsible party or guarantor of the source designated under section 2714(a) of this title."[8]  If the claim is presented and the responsible party denies all liability or the claim is not settled within 90 days of presentment, then the claimant may elect to file suit in federal court.  33 U.S.C. §2313(c).

Caselaw and OPA's legislative history reflect that the purpose of OPA's notice requirement and claim presentment procedure is to promote settlement and to avoid litigation:

> The purpose of the claim presentation procedure is to promote settlement and avoid litigation.  Congress believed that lawsuits against parties are appropriate only "where attempts to reach a settlement with the responsible party . . . were unsuccessful." H.R. Rep. No. 242, 101st Cong., 1st Sess., pt. 2, at 66 (1989).  It therefore mandated a 90-day period in which the parties would attempt to resolve monetary disputes arising from oil spills prior to commencing litigation.   The hope was to avoid costly and cumbersome litigation.  See 135 Cong. Rec. at H 7962, 7965 (statements of Rep. Hammerschmidt and Rep. Lent).

> In this case, plaintiffs have not complied with the presentation requirement of OPA.  They filed this suit on April 2, 1993 without having first presented a claim to Colonial.  Thereafter, apparently realizing their failure to comply, plaintiffs sent a letter to Colonial on April 7, 1993, which purports to present an OPA claim.  However, the April 7 letter fails to cure the jurisdictional defect for two reasons.

> First, Colonial has not denied all liability under OPA and 90 days have not passed since the claim was presented.  At least one of these events must occur before an OPA action may proceed.

---

[8] 2713(b) is inapplicable to this case as it deals with presentation to the Oil Spill Liability Trust Fund.

*Johnson v. Colonial Pipeline Co.*, 830 F.Supp. 309, 310-11 (E.D. Va. 1993); *see also Gabarick v. Laurin Maritime (America) Inc.*, 623 F.Supp.2d 741, 747 (E.D. La. 2009) ("[T]he legislative intent of OPA was to encourage settlement and reduce litigation in oil spill cases.").

Weatherford is not an OPA "responsible party" whereas BP and Transocean have been designated "responsible parties." Weatherford is merely a third party and cannot be sued by the B1 Plaintiffs under OPA. In *Gabarick*, Judge Lemelle dismissed OPA claims against a third party whose vessel was involved in a collision which resulted in an oil spill. Judge Lemelle noted that OPA's statutory scheme contemplated that all claims must be pursued against the "responsible party" and granted the third party's motion to dismiss. *Gabarick*, 623 F.Supp. 2d at 750-51.

The B1 Plaintiffs seek property damage and/or economic losses as a result of an oil spill. Those damages are clearly encompassed within OPA and can be sought only against the designated responsible parties. Allowing the B1 Plaintiffs to pursue damage claims against the designated responsible parties *and* third parties such as Weatherford runs afoul of the clear intent of OPA (i.e. to promote settlement, as well as efficiency and uniformity in claims resolution, while also avoiding voluminous litigation as the parties are faced herein). Accordingly, all claims asserted against Weatherford in the B1 Amended Complaint should be dismissed.[9]

C.   **Although OPA's Preemptive Effect Warrants Dismissal of All B1 Claims against Weatherford, in Any Event No Other Law Affords a Remedy for "Purely" Economic Loss Absent Physical Damage**

As noted above, OPA preempts all of the claims in the B1 Amended Complaint against Weatherford. Even in the absence of OPA, no other law permits the B1 Plaintiffs to seek pure

---

[9] OPA does not provide for the recovery of punitive damages. *South Port Marine, LLC v. Gulf Oil Ltd.*, 234 F.2d 58, 65-66 (1st Cir. 2000). Therefore, all claims for punitive damages under OPA should be dismissed with prejudice.

economic damages without physical damage to property in which the plaintiff has a propriety interest.  Unless the General Maritime Law applies by its own force to the B1 Plaintiffs claims, the Outer Continental Shelf Lands Act ("OCSLA") generally dictates that the law of the adjacent state, Louisiana, applies to the claims in the B1 Amended Complaint.

As discussed more fully below, OCSLA precludes the application of any state law other than Louisiana law to the claims in question; and therefore, all claims against Weatherford under the laws of Texas, Mississippi, Alabama, and Florida should be dismissed with prejudice.  OCSLA also precludes the application of the federal common law to the B1 Bundle claims, and all claims asserted against Weatherford under the federal common law should be dismissed.

Moreover, to the extent that Louisiana law applies to the B1 Plaintiffs' claims, the Louisiana Products Liability Act (the "LPLA") provides the exclusive remedy against a manufacturer like Weatherford; and therefore, all claims against Weatherford under theories of negligence, negligence *per se*, *res ipsa loquitor*, nuisance, and trespass under Louisiana law should be dismissed with prejudice.  Similarly, the LPLA does not afford punitive damages or attorneys' fees to the Plaintiffs, and all claims against Weatherford for punitive damages and attorneys' fees under Louisiana law should be dismissed with prejudice.  Moreover, all claims against Weatherford for purely economic loss are precluded under both Louisiana law and the General Maritime Law, and therefore, all claims in the B1 Amended Complaint for purely economic loss should be dismissed.

  **1.**   *Unless the General Maritime Law Applies of Its Own Force, OCSLA's Choice of Law Provision Requires the Application of Louisiana Law to the B1 Plaintiffs' Claims*

Congress enacted OCSLA to extend the federal government's control over "the subsoil and seabed of the Outer Continental Shelf, and artificial islands and fixed structures" erected

thereon.  43 U.S.C. § 1333(a)(2)(A).  OCSLA provides a broad jurisdictional grant for federal district courts:

> [T]he district courts of the United States shall have jurisdiction of cases and controversies arising out of, or in connection with (A) any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the materials, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals . . . .

43 U.S.C. § 1349(b)(1).  By Order dated October 6, 2010, this Court ruled that the Macondo blowout gives rise to subject matter jurisdiction under OCSLA.  *See In re Oil Spill by the Oil Rig "DEEPWATER HORIZON" in the Gulf of Mexico*, MDL No. 2179, 2010 WL 3943451, at *3 (E.D. La. Oct. 6, 2010).  Therefore, OCSLA, through its choice of law provision, determines the substantive law to be applied to the claims of the B1 Plaintiffs arising out of the blowout.

In pertinent part, OCSLA provides as follows:

> (a)(1) The Constitution and laws and civil and political jurisdiction of the United States are hereby extended to the subsoil and seabed of the outer Continental Shelf and to all artificial islands, and all installations and other devices permanently or temporarily attached to the seabed, which may be erected thereon for the purpose of exploring for, developing, or producing resources therefrom, or any such installation or other device (other than a ship or vessel) for the purpose of transporting such resources, to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State . . . .

> .*.*.*

> (2)(A) To the extent that they are applicable and not inconsistent with this Act or with other Federal laws and regulations of the Secretary now in effect or hereafter adopted, the civil and criminal laws of each adjacent State now in effect or here-after adopted, amended, or repealed are hereby declared to be the law of the United States for that portion of the sub-soil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf . . . .

43 U.S.C. § 1333(a)(1), 1333(a)(2)(A).

Under Section 1333(a)(1), OCSLA extends the laws of the United States seaward onto certain structures on the Outer Continental Shelf and provides the geographical limit of OCSLA's reach.   43 U.S.C. § 1333(a)(1).   Within the area covered by OCSLA, Section 1333(2)(A) dictates that federal law controls but the law of the adjacent State is adopted as surrogate federal law to the extent that it is not inconsistent with applicable federal laws or regulations.  43 U.S.C. § 1333(a)(2)(A).  "Since federal law, because of its limited function in a federal system, might be inadequate to cope with the full range of potential legal problems, the Act supplemented gaps in the federal law with state law through the 'adoption of State law as the law of the United States.'"  *See Rodrigue v. Aetna Cas. & Surety Co.*, 395 U.S. 352, 357, 89 S. Ct. 1835, 1838, 23 L. Ed. 2d 360 (1969).  The intent behind OCSLA is to treat the artificial structures covered by the statute as upland islands or as federal enclaves within a landlocked state, and not as vessels, for purposes of defining the applicable law because maritime law was deemed inapposite to these fixed structures.  *Id.* at 361-66, 89 S. Ct. at 1840-42.  Therefore, OCSLA merely provides for federal question jurisdiction and does not confer any substantive rights.  *Golden v. Omni Energy Servs. Corp.*, 242 Fed. Appx. 965, 967 (5th Cir. 2007).

In *Union Texas Petroleum Corp. v. PLT Engineering, Inc.*, 895 F.2d 1043, 1047 (5th Cir. 1990), the Fifth Circuit stated that to determine whether OCSLA requires state law to be applied as surrogate federal law, the following three criteria must be met: (1) the controversy must arise on a situs that is covered by OCSLA; (2) federal maritime law must not apply of its own force; and (3) state law must not be inconsistent with federal law.  The Fifth Circuit has applied this three-factor test regardless of whether the underlying action lies in tort or contract.  *See Texaco Exploration & Prod., Inc. v. AmClyde Engineered Prods. Co.*, 448 F.3d 760, 2006 A.M.C. 1297 (5th Cir. 2006); *PLT*, 895 F.2d at 1047.

In this case, OCSLA and the *PLT* Test dictate that either the General Maritime Law or the law of the adjacent state, here Louisiana, apply to the claims in the B1 Amended Complaint.

### 2. OCSLA Precludes the Application of Any State Law Other than Louisiana Law

To the extent that Louisiana law applies to the B1 Amended Complaint, OCSLA requires the substantive application of Louisiana law to the claims without any consideration of Louisiana's choice of law principles. The Fifth Circuit has noted that "[i]n tort cases, the Supreme Court has given us clear directions to directly adopt the adjacent state's law rather than to adopt that state's conflict rules." *Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778, 788 n.7 (5th Cir. 2009). The U.S. Supreme Court has stated that "[s]ince the federal court is not, then, applying the law of *another* forum in the usual sense, ordinary conflict of law principles have no relevance." *Chevron Oil Co. v. Huson*, 404 U.S. 97, 102-03, 92 S. Ct. 349, 349, 30 L. Ed. 2d 296 (1971) (emphasis in original); *see also Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 101 S. Ct. 2870, 69 L. Ed. 2d 784 (1981) ("OCSLA does supercede the normal choice of law rules that the forum would apply."). Moreover, in *Wooten v. Pumpkin Air, Inc.*, 869 F.2d 848 (5th Cir. 1991), the Fifth Circuit held that OCSLA mandated that the applicable substantive law be that of the adjacent state, and did not permit the application of the adjacent state's choice-of-law rules to determine the applicable substantive law.

Therefore, under *Wooten*, if the law of Louisiana is applicable under OCSLA to the B1 Plaintiffs' claims, Louisiana law applies as the substantive law to the claims to the exclusion of any other state's law. Therefore, all claims asserted against Weatherford under state laws other than Louisiana law should be dismissed with prejudice.

Finally, OCSLA also precludes the application of federal common law to the B1 Plaintiffs' claims.[10]  *See Frazier v. Columbia Gas Dev. Corp.*, 596 F. Supp. 429 (W.D. La., 1984) ("Certainly this word 'laws' does not refer to federal common law.  We find the words 'other Federal laws' refers to other Federal acts or statutes."); *see also Walter Oil & Gas Corp. v. NS Group, Inc.*, 867 F. Supp. 549 (S.D. Tex. 1994) ("After a careful reading of § 1333(a)(2)(A), as well as relevant Federal case law interpreting this statute, this Court has determined that the phrase 'other Federal laws' in § 1333(a)(2)(A) refers not to Federal common law, but rather to Federal statutory law.") (citations omitted).  Accordingly, the B1 Plaintiffs' claims under federal common law should be dismissed with prejudice.

### 3.    *If Louisiana Law Applies, Plaintiffs' Exclusive Remedy Is the LPLA*

The B1 Plaintiffs seek to impose liability on Weatherford as the manufacturer of an allegedly defective float collar under various theories, including negligence, negligence *per se*, *res ipsa loquitor*, strict liability, nuisance and trespass.  However, Louisiana law does not impose liability on the manufacturer of an allegedly defective product under the theories alleged by the B1 Plaintiffs.  Instead, liability can only be had against a product manufacturer under the Louisiana Products Liability Act, La. R.S. 9:2800.51, *et seq.* ("LPLA").  Any and all other claims made against Weatherford by the B1 Plaintiffs under some other theory of liability must be dismissed with prejudice as a matter of law.

Section 2800.52 of the LPLA provides that "[t]his Chapter establishes the exclusive theories of liability for manufacturers for damages caused by their products."  La. R.S. 9:2800.52.  Section 2800.52 instructs further that "[a] claimant may not recover from a

---

[10] Although it is not entirely clear from the B1 Amended Complaint, the B1 Plaintiffs appear to allege causes of action against Weatherford under "federal" law.  *See* B1 Amended Complaint, Rec. Doc. 1128, ¶ 232.

manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in this Chapter." *Id.* Section 2800.54(B) sets forth the four exclusive theories of recovery:

> B. A product is unreasonably dangerous if and only if:
>
> (1) The product is unreasonably dangerous in construction or composition as provided in R.S. 9:2800.55;
>
> (2) The product is unreasonably dangerous in design as provided in R.S. 9:2800.56;
>
> (3) The product is unreasonably dangerous because an adequate warning about the product has not been provided as provided in R.S. 9:2800.57; or
>
> (4) The product is unreasonably dangerous because it does not conform to an express warranty of the manufacturer about the product as provided in R.S. 9:2800.58.

La. R.S. 9:2800.54(B).

"These statutory mechanisms for establishing that a product is unreasonably dangerous 'are predicated on principles of strict liability, negligence, or warranty.'" *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 261 (5th Cir. 2002) (citing *Jefferson v. Lead Indus. Assoc.*, 930 F. Supp. 241, 245 (E.D. La. 1996)). However, as recognized by Judge Vance in *Jefferson, supra,* "[a] plaintiff may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability not set forth in the LPLA." *Jefferson*, 930 F. Supp. at 244-45; *see also Brown v. R.J. Reynolds Tobacco Co.*, 852 F.Supp. 8 (E.D. La. 1994), *aff'd,* 52 F.3d 524 (5th Cir. 1995) (summarily dismissing claims for fraudulent misrepresentation, concealment and conspiracy); *Grenier v. Medical Engineering Corp.*, 99 F. Supp. 2d 759 (W.D. La. 2000) (dismissing claims of strict liability, negligence, breach of warranty of fitness for particular purpose, breach of implied warranty, misrepresentation, fraud by concealment, false advertising, negligent infliction of emotional distress, common plan to prevent public awareness of breast implant hazards, and fear of future product failure as "outside the scope of the LPLA.").

The B1 Plaintiffs cannot as a matter of law recover from Weatherford for damages allegedly caused by the float collar on a theory of recovery not set forth in the LPLA. To the extent that the B1 Plaintiffs' claims sound in state law negligence, negligence *per se*, *res ipsa loquitor*, strict liability, nuisance and trespass, those claims must be dismissed with prejudice.

### 4. If Louisiana Law Governs the B1 Amended Complaint, the B1 Bundle Plaintiffs Are Precluded from Recovering Punitive Damages and Attorneys' Fees

The B1 Plaintiffs impermissibly seek punitive damages and attorneys' fees.[11] Under Louisiana law, exemplary or other "penalty" damages are not allowable unless expressly authorized by statute. *Mosing v. Domas*, 2002-0012 (La. 10/15/02), 830 So. 2d 967, 973. Presently, Louisiana statutes only provide for exemplary damages as a result of wanton and reckless disregard for the safety of others through either driving while intoxicated or acts of child pornography. *See* La. C.C. arts. 2315.3 and 2315.4. Punitive damages are not recoverable against a manufacturer under Louisiana law. *See Wooten v. Pumpkin Air, Inc.*, 869 F.2d 848, 852 (5th Cir. 1989) (affirming the dismissal of claims for punitive damages against manufacturer under Louisiana law); *Cooper v. Wyeth, Inc.*, No. 09-929, 2010 WL 2653321, at *2 (W.D. La. June 25, 2010) (dismissing claims for punitive damages under the LPLA because "[t]he LPLA does not authorize punitive damages.") (citing *Bladen v. C.B. Fleet Holding, Co.*, 487 F. Supp. 2d 759 (W.D. La. 2007)). Additionally, the LPLA definition of "damage" specifically provides that "[a]ttorneys' fees are not recoverable under the Chapter." La. R.S. 9:2800.53(5).

In this case, the B1 Plaintiffs allege that they are entitled to punitive damages under Section 402(A) of the Restatement of Torts and/or under the LPLA, *inter alia*, as a result of Weatherford's gross negligence in the manufacture or design of the float collar. Insofar as

---

[11] B1 Amended Complaint, Rec. Doc. 1128, ¶ 676, Prayer for Relief, ¶ (d).

Louisiana law applies to the B1 Plaintiffs' claims, the LPLA provides the sole potential remedy for the B1 Plaintiffs; and the LPLA does not allow for the recovery of punitive damages. Accordingly, Weatherford submits that the claims against Weatherford for punitive damages under the LPLA should be dismissed with prejudice.

The B1 Plaintiffs also allege that they are entitled to punitive damages under a theory of trespass under state law. As noted above, the LPLA precludes a claimant from recovering from a manufacturer on the basis of any theory of liability not set forth in the LPLA; and therefore, the exclusivity provision of the LPLA precludes the recovery of punitive damages on the basis of trespass under Louisiana law. Accordingly, the B1 Plaintiffs' claims for punitive damages under a theory of trespass should be dismissed with prejudice.

Weatherford also notes that the B1 Plaintiffs' claims for punitive damages under the General Maritime Law are preempted by OPA. Moreover, the General Maritime Law does not recognize the recovery for punitive damages on the basis of products liability. *See Saudi v. S/T Marine Atl.*, 159 F. Supp. 2d 492 (S.D. Tex. 2000). Therefore, Weatherford submits that the B1 Plaintiffs' claims for punitive damages on the basis of liability under Section 402(A) of the Restatement should be dismissed with prejudice.

Finally, the B1 Plaintiffs seek to recover attorneys' fees.[12] Weatherford submits that the LPLA does not provide for the recovery of attorneys' fees. Further, the General Maritime Law does not allow for the recovery of attorneys' fees unless provided for by contract or statute. *Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 565-57 (5th Cir. 2004) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 268-69, 95 S. Ct. 1612, 44 L. Ed. 2d 141 (1975)); *see also Noritake Co. v. M/V Hellenic Champion*, 627 F.2d 724, 730 (5th Cir. 1980)

---

[12] B1 Amended Complaint, Rec. Doc. 1128, p. 194, Prayer for Relief, (d).

("[T]he prevailing party in an admiralty case is generally not entitled to an award for attorneys' fees."). There is no contractual privity between the B1 Plaintiffs, and Weatherford and there is no statute under which the B1 Plaintiffs may recover attorneys' fees from Weatherford. Therefore, the B1 Plaintiffs' claim for attorneys' fees should be dismissed with prejudice.

### D. Louisiana Law Does Not Provide for the Recovery of Purely Economic Loss

If Louisiana law applies to the B1 Plaintiffs' claims, Louisiana law precludes the B1 Plaintiffs from recovering purely economic damages in the absence of physical damage to property in which the particular plaintiff has a proprietary interest. *See Barasich v. Shell Pipeline Co.*, Nos. 05-4180, 05-4197, 05-4199, 05-4212, 05-4512, 06-5102, 2006 WL 3913403, at *7 (E.D. La. Nov. 20, 2006) (dismissing the claims of commercial fishermen, other than oyster fishermen, for purely economic damage under Louisiana law because "there is no property right or ownership of the fish in the state's waters."); *see also La. Crawfish Producers Ass'n-West v. Amerada Hess Corp.*, No. 2005-1156, at *2-*7 (La. App. 3 Cir. 7/12/2006), 935 So. 2d 380, 382-85 (affirming the dismissal of Louisiana state law claims for purely economic loss as a result of alleged damage to an aquatic ecosystem because the plaintiffs lacked a proprietary interest in the waters and crawfish sought to be caught); *Dempster v. Louis Eymard Towing Co.*, 503 So. 2d 99 (La. App. 5 Cir. 1987), *writ denied*, 505 So. 2d 1136 (La. 1987) (affirming the dismissal of claims for loss of a fishing site and economic loss because the fishermen had "no proprietary interest in the fishing site or in anticipated fish caught in the future."); *TS&C Investments, L.L.C. v. Beusa Energy, Inc.*, 637 F. Supp. 2d 370 (W.D. La. 2009), *affirmed*, 344 Fed. Appx. 907 (5th Cir. 2009) (Unpublished) (dismissing all claims for purely economic loss under Louisiana law because the plaintiffs lacked "a proprietary interest in any property that was damaged and have not alleged injuries either to themselves or to their property."). This principle extends to

claims regardless of whether they are grounded in negligence or products liability. *See Phillips v. G&H Seed Co.*, 08-934, at *7 (La. App. 3 Cir. 4/8/09), 10 So. 3d 339, 344-45 (holding that customers of crawfish farmers whose stock was damaged by seed treatment had no claim for economic loss under a products liability theory because the customers had no proprietary interest in the crawfish).

Considering the above, the only the B1 Plaintiffs who have alleged property damage and are entitled to proceed are the following three categories: the Real Property Plaintiffs, the Real Property/Tourism Plaintiffs, and the VoO Plaintiffs.[13]  All remaining B1 Plaintiffs allege purely economic losses, which are not recoverable under Louisiana law.[14]  Therefore, all of these remaining B1 Plaintiffs' claims against Weatherford should be dismissed with prejudice.

**E.    If the General Maritime Law Applies, the B1 Plaintiffs' Claims Are Similarly Barred under the Economic Loss Rule**

If the B1 Plaintiffs state claims cognizable in admiralty, as noted *supra*, OPA preempts the General Maritime Law and bars any claim against Weatherford under the General Maritime Law. *Gabarick v. Laurin Maritime (America) Inc.*, 623 F. Supp. 2d 741, 746 (E.D. La. 2009). Moreover, it is well-settled that a claim for purely economic loss is not cognizable under the General Maritime Law unless the claimant has a proprietary interest in the property damaged. *See Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290 (1927); *Reserve Mooring Inc. v. Amer. Commercial Barge Line, LLC*, 251 F.3d 1069 (5th Cir. 2001) ("[P]hysical injury to a proprietary interest is a prerequisite to recovery of economic damages in cases of unintentional maritime torts."); *Louisiana ex rel. Guste v. M/V TESTBANK*, 752 F.2d

---

[13] B1 Amended Complaint, Rec. Doc. 1128, ¶¶ 614-626. Weatherford notes that not of all the claimants in these three categories of the B1 Plaintiffs have alleged property damage, particularly those claimants in the VoO Plaintiffs' category seeking relief on the basis of breach of contract.

[14] *See* Exhibit 1, which is a list of plaintiffs who seek purely economic loss in previously filed Complaints naming a Weatherford entity as a defendant.

1019, 1029 (5th Cir. 1985) (en banc), *cert. denied*, 477 U.S. 903 (1986) (providing a "bright line" rule that allows plaintiffs to recover economic losses only where the plaintiff has suffered physical injury to a proprietary interest.); *see also Barasich*, 2006 WL 3913403, at *6 (discussing the seminal case of *Robins Dry Dock*, which "stands for the broad proposition that a plaintiff is barred from recovering for economic loss resulting from physical damage to property in which he has no proprietary interest.").

Like Louisiana law, the General Maritime Law bars the recovery by all the B1 Plaintiffs with the exception of those who have alleged physical damage to property in which they have a proprietary interest.

## III.   CONCLUSION

The B1 Plaintiffs fail to state a claim against Weatherford upon which relief may be granted.   OPA is exclusive and mandatory.   The B1 Plaintiffs cannot seek damages from Weatherford under non-OPA theories of liability when all of the damages sought by the B1 Plaintiffs are clearly enumerated damages under OPA.   Moreover, OPA does not provide for the recovery of punitive damages.   Therefore, all claims against Weatherford should be dismissed with prejudice.

Even in the absence of OPA, no other law permits the B1 Plaintiffs to seek pure economic damages without physical damage to property in which the plaintiff has a propriety interest. Unless the General Maritime Law applies by its own force to the B1 Plaintiffs claims, OCSLA generally dictates that the law of the adjacent state, Louisiana, applies to the claims in the B1 Amended Complaint.   The choice of law provision of OCSLA precludes the application of any state law other than Louisiana law, and therefore, all claims against Weatherford under the laws of Texas, Mississippi, Alabama, and Florida should be dismissed with prejudice.

If Louisiana law applies to the B1 Amended Complaint, the LPLA provides the exclusive remedy for the B1 Plaintiffs against a manufacturer like Weatherford. Any claims sounding in negligence, negligence *per se*, *res ipsa loquitor*, trespass, and nuisance should be dismissed with prejudice. Moreover, the LPLA does not provide for the recovery of punitive damages or attorneys' fees, and these claims should be similarly dismissed with prejudice. If the General Maritime Law applies, it similarly does not recognize claims for punitive damages or attorneys' fees against Weatherford, and these claims should be dismissed with prejudice. Finally, both the General Maritime Law and Louisiana law bar claims for purely economic loss, and all claims for pure economic loss should be dismissed with prejudice.

This 28th day of February, 2011.

Respectfully submitted:

*/s/ Glenn G. Goodier*

GLENN G. GOODIER (#06130)
RICHARD D. BERTRAM (#17881)
LANCE M. SANNINO (#29409)
Jones, Walker, Waechter, Poitevent,
  Carrère & Denègre, L.L.P.
201 St. Charles Avenue. 48th Floor
New Orleans, Louisiana  70170-5100
Telephone:    (504) 582-8174
Facsimile:    (504) 589-8174

MICHAEL G. LEMOINE, T.A. (#8308)
GARY J. RUSSO (#10828)
DOUGLAS C. LONGMAN, JR. (#8719)
Jones, Walker, Waechter, Poitevent,
  Carrère & Denègre, L.L.P.
600 Jefferson Street, Suite 1600
Lafayette, , Louisiana  70501-5100
Telephone:    (337) 262-9024

*Counsel for Weatherford U.S., L.P.*

## CERTIFICATE OF SERVICE

I hereby certify that on February 28th, 2011, the above and foregoing has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with the Court's Pretrial Order No. 12, on November 1, 2010.

*/s/ Glenn G. Goodier*