**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig | ) | |
| "Deepwater Horizon" in the Gulf | ) | **MDL No. 2179** |
| of Mexico, on April 20, 2010 | ) | |
| | ) | **SECTION J** |
| This document relates to: | ) | |
| *All Cases in Pleading Bundle B2* | ) | **The Hon. CARL J. BARBIER** |
| | ) | |
| | ) | **Magistrate Judge SHUSHAN** |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED CLASS
ACTION RICO COMPLAINT IN ACCORDANCE WITH PTO NO. 11 [CMO NO. 1]
SECTION III(B2) ["B2 BUNDLE"]**

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................................1

BACKGROUND ....................................................................................................................4

I.  Facts ..........................................................................................................................4

II.  This Lawsuit................................................................................................................5

LEGAL STANDARD.............................................................................................................7

ARGUMENT ..........................................................................................................................8

I.  The RICO Claims Fail For Lack Of Proximate Causation. ........................................10

II.  The RICO Claims Fail For Lack Of "Racketeering Activity.".....................................20

    A.  The Complaint Fails Adequately To Plead The Deprivation Of Honest Services Or The Sale Of A Counterfeit Or Spurious Article................................21

    B.  The Complaint Fails Adequately To Plead A Scheme To Obtain Money Or Property From Government Regulators............................................................22

III.  The RICO Claims Fail For Lack Of "Participation" In An "Enterprise." ......................25

    A.  The Complaint Fails Adequately To Plead "Participation" In An "Enterprise" Through A Pattern Of Racketeering Activity. ................................26

    B.  The Complaint Fails Adequately To Plead A RICO "Enterprise" Distinct From The Defendant. ............................................................................29

IV.  The RICO Claims Fail For Lack Of A "Pattern.".........................................................33

    A.  The Complaint Fails Adequately To Plead A Closed "Pattern."..........................34

    B.  The Complaint Fails Adequately To Plead An Open "Pattern." ..........................36

V.  The RICO Claims Fail For Lack Of Injury...................................................................38

VI.  The RICO Claims Fail For Lack Of A Conspiracy. .....................................................42

    A.  The Complaint Fails Adequately To Plead Any Agreement Among Conspirators. ....................................................................................................43

    B.  The Conspiracy Counts Fall Along With The Substantive Counts. .....................45

VII.    The Florida RICO Claims Fail...........................................................................................46

CONCLUSION..............................................................................................................................48

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Able Security & Patrol, LLC. v. Louisiana,*
  569 F. Supp. 2d 617 (E.D. La. 2008) ..................................................................... 29

*Abraham v. Singh,*
  480 F.3d 351 (5th Cir. 2007)......................................................................... 45, 46

*Alden v. Allied Adult & Child Clinic, L.L.C.,*
  171 F. Supp. 2d 647 (E.D. La. 2001) ............................................................. 10, 13

*All Care Nursing Servs., Inc. v. High Tech Staffing Servs., Inc.,*
  135 F.3d 740 (11th Cir. 1998).............................................................................. 47

*American Dental Ass'n v. Cigna Corp.,*
  605 F.3d 1283 (11th Cir. 2010)...................................................................... 43, 44

*Amos v. AAA Mid-Atl., Inc.,*
  No. 97-1105, 1997 WL 33427089 (D. Md. Nov. 26, 1997) ................................... 36

*Anza v. Ideal Steel Supply Corp.,*
  547 U.S. 451 (2006) ................................................... 7, 10, 12, 13, 14, 18, 19, 38, 47

*Arbaugh v. Y&H Corp.,*
  546 U.S. 500 (2006) ............................................................................................. 11

*Arkansas La. Gas Co. v. Hall,*
  453 U.S. 571 (1981) ............................................................................................. 17

*Ashcroft v. Iqbal,*
  129 S. Ct. 1937 (2009) .................................................... 7, 20, 42, 43, 44, 46

*Atkinson v. Anadarko Bank & Tr. Co.,*
  808 F.2d 438 (5th Cir. 1987) (*per curiam*) ............................................................ 30

*Ayres v. General Motors Corp.,*
  234 F.3d 514 (11th Cir. 2000)................................................................... 17, 22, 23

*Banks v. Wolk,*
  918 F.2d 418 (3d Cir. 1990) ........................................................................... 27, 36

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ...................................................... 7, 20, 36, 43, 44, 46

*Bortell v. White Mountains Ins. Group, Ltd.,*
  2 So. 3d 1041 (Fla. Dist. Ct. App. 2009).............................................................. 47

*Bridge v. Phoenix Bond & Indem. Co.,*
  553 U.S. 639 (2008) ............................................................................................... 8

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.,*
  116 F.3d 1364 (11th Cir. 1997)............................................................................. 25

iii

*Brown v. Protective Life Ins. Co.*,
    353 F.3d 405 (5th Cir. 2003) ........................................................................ 10, 11

*Burns v. Rozen*,
    201 So. 2d 629 (Fla. Dist. Ct. App. 1967) ............................................................ 48

*Calcasieu Marine Nat'l Bank v. Grant*,
    943 F.2d 1453 (5th Cir. 1991) ........................................................................ 33

*Callahan v. A.E.V., Inc.*,
    182 F.3d 237 (3d Cir. 1999) .................................................................... 15, 19

*Canyon County v. Syngenta Seeds, Inc.*,
    519 F.3d 969 (9th Cir. 2008) .......................................................... 10, 11, 38, 39

*Carpenter v. United States*,
    484 U.S. 19 (1987) ................................................................................. 21

*Cedric Kushner Promotions, Ltd. v. King*,
    533 U.S. 158 (2001) ........................................................................... 29, 30

*Chaney v. Dreyfus Serv. Corp.*,
    595 F.3d 219 (5th Cir. 2010) ......................................................................... 43

*City of Columbia v. Omni Outdoor Adver., Inc.*,
    499 U.S. 365 (1991) ................................................................................. 16

*Cleveland v. United States*,
    531 U.S. 12 (2000) ................................................................... 22, 23, 24, 25

*Corcoran v. American Plan Corp.*,
    886 F.2d 16 (2d Cir. 1989) ........................................................................... 24

*Crichton v. Golden Rule Ins. Co.*,
    576 F.3d 392 (7th Cir. 2009) ......................................................................... 28

*Crowe v. Henry*,
    43 F.3d 198 (5th Cir. 1995) ........................................................ 13, 26, 44, 46

*Cullom v. Hibernia Nat'l Bank*,
    859 F.2d 1211 (5th Cir. 1988) ....................................................................... 11

*Danielsen v. Burnside-Ott Aviation Training Center, Inc.*,
    941 F.2d 1220 (D.C. Cir. 1991) ..................................................................... 17

*DeMauro v. DeMauro*,
    115 F.3d 94 (1st Cir. 1997) ..................................................................... 38, 39

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006) ......................................................................... 39

*Dirt Hogs Inc. v. Natural Gas Pipeline Co. of Am.*,
    No. 99-6026, 2000 WL 368411 (10th Cir. Apr. 10, 2000) ................................ 31, 32

*DiVittorio v. Equidyne Extractive Indus.*,
    822 F.2d 1242 (2d Cir. 1987) ........................................................................ 25

*Dixon v. Ford Motor Credit Co.*,
  137 F. Supp. 2d 702 (E.D. La. 2000) ................................................................. 11

*Doe v. O'Connell*,
  146 S.W.3d 1 (Mo. Ct. App. 2004) .................................................................... 48

*Dow Chem. Co. v. Exxon Corp.*,
  30 F. Supp. 2d 673 (D. Del. 1998) ..................................................................... 15

*Downstream Envtl., L.L.C. v. Gulf Coast Waste Disposal Auth.*,
  No. 05-1865, 2006 WL 1875959 (S.D. Tex. July 5, 2006) ................................. 19

*Edgar v. MITE Corp.*,
  457 U.S. 624 (1982) ........................................................................................... 48

*Edwards v. St. John the Baptist Parish*,
  No. 09-4384, 2010 WL 3720436 (E.D. La. Sept. 9, 2010) ......................... 7, 10, 16

*Efron v. Embassy Suites (P.R.), Inc.*,
  223 F.3d 12 (1st Cir. 2000) ............................................................................... 34

*Evans v. City of Chicago*,
  434 F.3d 916 (7th Cir. 2006) ............................................................................. 38

*Evercrete Corp. v. H-Cap Ltd.*,
  429 F. Supp. 2d 612 (S.D.N.Y. 2006) ............................................................... 24

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*,
  385 F.3d 159 (2d Cir. 2004) .................................................................. 27, 33, 34

*Fisher v. Halliburton*,
  No. 05-1731, 2009 WL 5170280 (S.D. Tex. Dec. 17, 2009) .............................. 41

*Fitzgerald v. Chrysler Corp.*,
  116 F.3d 225 (7th Cir. 1997) ............................................................................... 8

*Florida Evergreen Foliage v. E.I. Dupont de Nemours & Co.*,
  336 F. Supp. 2d 1239 (S.D. Fla. 2004) .............................................................. 47

*Floyd v. Bowen*,
  833 F.2d 529 (5th Cir. 1987) ............................................................................. 10

*Fogie v. THORN Americas, Inc.*,
  190 F.3d 889 (8th Cir. 1999) ............................................................................. 30

*Ford Motor Credit Co. v. Sheehan*,
  373 So. 2d 956 (Fla. Dist. Ct. App.),
  *cert. dismissed*, 379 So. 2d 204 (Fla. 1979) ..................................................... 48

*Gross v. State*,
  765 So. 2d 39 (Fla. 2000) (*per curiam*) .............................................................. 47

*H.J. Inc. v. Northwestern Bell Tel. Co.*,
  492 U.S. 229 (1989) ..................................................................................... 33, 47

*Halpin v. Crist*,
  No. 10-10339, 2010 WL 5078222 (11th Cir. Dec. 14, 2010) (*per curiam*) ........... 15

*Heller Fin., Inc. v. Grammco Computer Sales, Inc.*,
    71 F.3d 518 (5th Cir. 1996) ................................................................................ 35

*Hemi Group LLC v. City of New York*,
    130 S. Ct. 983 (2010) ................................... 10, 12, 13, 14, 15, 16, 17, 18, 19

*Holmes v. Securities Investor Prot. Corp.*,
    503 U.S. 258 (1992) ................................................. 10, 12, 13, 19, 38, 47

*Home Ins. Co. v. Dick*,
    281 U.S. 397 (1937) ................................................................................ 48

*Hughes v. Consol-Pa. Coal Co.*,
    945 F.2d 594 (3d Cir. 1991) ................................................................... 35

*In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*,
    155 F. Supp. 2d 1069 (S.D. Ind. 2001) ................................................. 40

*In re Burzynski*,
    989 F.2d 733 (5th Cir. 1993) ............................................................ 29, 45

*In re Insurance Brokerage Antitrust Litig.*,
    618 F.3d 300 (3d Cir. 2010) ................................................................... 27

*In re Mastercard Int'l, Inc. Internet Gambling Litig.*,
    No. 00-MD-1231, 2004 WL 287344 (E.D. La. Feb. 12, 2004) ................... 8

*In re Taxable Mun. Bond Secs. Litig.*,
    51 F.3d 518 (5th Cir. 1995) ................................................................... 11

*International Bhd. of Teamsters v. Carey*,
    297 F. Supp. 2d 706 (S.D.N.Y. 2004) ................................................... 36

*Jackson Lumber Co. v. Walton County*,
    116 So. 771 (Fla.),
    *appeal dismissed*, 296 U.S. 667 (1928) ............................................... 48

*James Cape & Sons Co. v. PCC Constr. Co.*,
    453 F.3d 396 (7th Cir. 2006) ................................................................. 18

*Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc.*,
    162 F.3d 1290 (11th Cir. 1998) ...................................................... 13, 15, 47

*Khurana v. Innovative Health Care Sys., Inc.*,
    130 F.3d 143 (5th Cir. 1997),
    *vacated on other grounds*, 525 U.S. 979 (1998) ............................... 30

*Lerner v. Fleet Bank, N.A.*,
    318 F.3d 113 (2d Cir. 2003) ................................................................... 11

*Leung v. Law*,
    387 F. Supp. 2d 105 (E.D.N.Y. 2005) ................................................. 4

*Maio v. Aetna, Inc.*,
    221 F.3d 472 (3d Cir. 2000) ................................................................... 9

*Manhattan Telecomms. Corp., Inc. v. DialAmerica Mktg., Inc.*,
  156 F. Supp. 2d 376 (S.D.N.Y. 2001) ................................................................. 31

*McNally v. United States*,
  483 U.S. 350 (1987) .......................................................................................... 22

*Mills v. Polar Molecular Corp.*,
  12 F.3d 1170 (2d Cir. 1993) .............................................................................. 25

*Nolen v. Nucentrix Broadband Networks Inc.*,
  293 F.3d 926 (5th Cir. 2002) ............................................................. 7, 13, 45, 46

*Ocean Energy II, Inc. v. Alexander & Alexander, Inc.*,
  868 F.2d 740 (5th Cir. 1989) ............................................................................. 13

*Oceanic Exploration Co. v. ConocoPhillips*,
  No. 07-815, 2008 WL 1777003 (S.D. Tex. Apr. 16, 2008),
  *aff'd,* 352 F. App'x 945 (5th Cir. 2009) (*per curiam*) ..................................... 17

*Oceanic Exploration Co. v. Phillips Petroleum Co. ZOC*,
  352 F. App'x 945 (5th Cir. 2009) (*per curiam*) .............................................. 13

*Oscar v. University Students Co-op. Ass'n*,
  965 F.2d 783 (9th Cir. 1992) (*en banc*) ............................................................. 4

*Overnite Transp. Co. v.*
  *Truck Drivers, Oil Drivers, Filling Station & Platform Workers Union Local No. 705*,
  904 F.2d 391 (7th Cir. 1990) ....................................................................... 28, 29

*Palmas y Bambu, S.A. v. E.I. Dupont de Nemours & Co.*,
  881 So. 2d 565 (Fla. Dist. Ct. App. 2004) ........................................................ 47

*Palo ex rel. Estate of Palo v. Dallas County*,
  No. 05-527, 2005 WL 2090640 (N.D. Tex. Aug. 29, 2005) ............................... 11

*Parker & Parsley Petroleum Co. v. Dresser Indus.*,
  972 F.2d 580 (5th Cir. 1992) ....................................................................... 13, 46

*Pasquantino v. United States*,
  544 U.S. 349 (2005) .......................................................................................... 23

*Patterson v. Mobil Oil Corp.*,
  335 F.3d 476 (5th Cir. 2003) ................................................................... 8, 39, 40

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) .......................................................................................... 48

*Plotkin v. IP Axess Inc.*,
  407 F.3d 690 (5th Cir. 2005) ............................................................................... 7

*Price v. Pinnacle Brands*, *Inc.*,
  138 F.3d 602 (5th Cir. 1998) (*per curiam*) .............................................. 39, 41, 42

*Proctor & Gamble Co. v. Amway Corp.*,
  242 F.3d 539 (5th Cir. 2001) ............................................................................. 13

*Purchase Real Estate Group Inc. v. Jones*,
   No. 05-10859, 2010 WL 1837809 (S.D.N.Y. Apr. 30, 2010).................................... 36

*Reed Constr. Data Inc. v. McGraw-Hill Cos.*,
   __ F. Supp. 2d __, 2010 WL 3835196 (S.D.N.Y. Sept. 14, 2010)........................... 31

*Reed Elsevier, Inc. v. Muchnick*,
   130 S. Ct. 1237 (2010) ................................................................................. 11

*Regions Bank v. J.R. Oil Co.*,
   387 F.3d 721 (8th Cir. 2004)......................................................................... 40

*Reuther v. Smith*,
   No. 01-3625, 2003 WL 1955167 (E.D. La. Apr. 22, 2003) ..................................... 34

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993) ............................................................................... 28, 29

*Rezner v. Bayerische Hypo-Und Vereinsbank AG*,
   630 F.3d 866 (9th Cir. 2010)..................................................................... 15, 19

*Richmond v. Nationwide Cassel L.P.*,
   52 F.3d 640 (7th Cir. 1995)................................................................. 28, 31, 32

*Rolls v. Bliss & Nyitray, Inc.*,
   408 So. 2d 229 (Fla. Dist. Ct. App. 1981)....................................................... 48

*Salinas v. United States*,
   522 U.S. 52 (1997) ................................................................................... 45

*Sedima, S.P.R.L. v. Imrex Co.*,
   473 U.S. 479 (1985) ................................................................................. 38

*Sessions Tank Liners, Inc. v. Joor Mfg., Inc.*,
   17 F.3d 295 (9th Cir. 1994)........................................................................ 16

*Shafer v. Hill*,
   No. 08-395, 2008 WL 4367291 (N.D. Tex. Sept. 23, 2008)................................... 11

*Shimek v. State*,
   610 So. 2d 632 (Fla. Dist. Ct. App. 1992)....................................................... 47

*Skilling v. United States*,
   130 S. Ct. 2896 (2010) .............................................................................. 21

*St. Paul Mercury Ins. Co. v. Williamson*,
   224 F.3d 425 (5th Cir. 2000)....................................................................... 46

*Steele v. Hospital Corp. of Am.*,
   36 F.3d 69 (9th Cir. 1994).......................................................................... 39

*Strates Shows, Inc. v. Amusements of Am., Inc.*,
   379 F. Supp. 2d 817 (E.D.N.C. 2005)......................................................... 17, 18

*Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*,
   975 F.2d 1134 (5th Cir. 1992)................................................................ 7, 33, 44

*Test Masters Educ. Servs., Inc. v. Singh*,
  428 F.3d 559 (5th Cir. 2005)...................................................................... 7

*Toulabi v. United States*,
  875 F.2d 122 (7th Cir. 1989).................................................................... 24

*United States ex rel. Steury v. Cardinal Health, Inc.*,
  625 F.3d 262 (5th Cir. 2010)............................................................... 8, 25

*United States v. Dadanian*,
  856 F.2d 1391 (9th Cir. 1988).................................................................. 24

*United States v. Dillman*,
  15 F.3d 384 (5th Cir. 1994)...................................................................... 43

*United States v. Erwin*,
  793 F.2d 656 (5th Cir. 1986)................................................................... 26

*United States v. Griffin*,
  324 F.3d 330 (5th Cir 2003)..................................................................... 24

*United States v. Kato*,
  878 F.2d 267 (9th Cir. 1989)................................................................... 24

*United States v. Lew*,
  875 F.2d 219 (9th Cir. 1989)................................................................... 24

*United States v. Marino*,
  277 F.3d 11 (1st Cir. 2002) ..................................................................... 28

*United States v. McMillan*,
  600 F.3d 434 (5th Cir. 2010)................................................................... 23

*United States v. Murphy*,
  836 F.2d 248 (6th Cir. 1988)................................................................... 24

*United States v. Nascimento*,
  491 F.3d 25 (1st Cir. 2007) ..................................................................... 27

*United States v. Peter*,
  310 F.3d 709 (11th Cir. 2002) (*per curiam*) ........................................ 24

*United States v. Pierce*,
  224 F.3d 158 (2d Cir. 2000)..................................................................... 23

*United States v. Ratcliff*,
  488 F.3d 639 (5th Cir. 2007).............................................................. 21, 23

*United States v. Schwartz*,
  924 F.2d 410 (2d Cir. 1991)..................................................................... 24

*United States v. Shotts*,
  145 F.3d 1289 (11th Cir. 1998)................................................................ 24

*United States v. Starrett*,
  55 F.3d 1525 (11th Cir. 1995) (*per curiam*) ................................... 27, 28

*Whelan v. Winchester Prod. Co.*,
    319 F.3d 225 (5th Cir. 2003) ................................................................... 45

*Williams v. Dow Chem. Co.*,
    255 F. Supp. 2d 219 (S.D.N.Y. 2003) ................................................. 24, 25

*Williams v. WMX Techs., Inc.*,
    112 F.3d 175 (5th Cir. 1997) .................................................................. 25

*Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*,
    90 F.3d 118 (5th Cir. 1996) ................................................... 33, 34, 37, 38

*Zervas v. Faulkner*,
    861 F.2d 823 (5th Cir. 1988) .................................................................. 13

**Statutes**

18 U.S.C. § 1341 ................................................................................... 20, 21

18 U.S.C. § 1343 ................................................................................... 20, 21

18 U.S.C. § 1346 ......................................................................................... 21

18 U.S.C. § 1961 *et seq.* ............................................................................... 1

18 U.S.C. § 1961(1) ................................................................................... 20

18 U.S.C. § 1962(a) ............................................................. 3, 42, 43, 45, 46

18 U.S.C. § 1962(b) ................................................................................... 45

18 U.S.C. § 1962(c) ............................... 3, 8, 9, 26, 27, 29, 36, 42, 43, 45

18 U.S.C. § 1962(d) ............................................................................... 8, 42

18 U.S.C. § 1964(c) .......................................................... 9, 10, 13, 38, 41

30 C.F.R. § 250.107 ................................................................................... 18

30 C.F.R. § 250.202 ................................................................................... 17

30 C.F.R. § 250.300 ................................................................................... 18

Fed. R. Civ. P. 12(b) ................................................................................... 7

Fed. R. Civ. P. 12(b)(1) ....................................................................... 11, 38

Fed. R. Civ. P. 12(b)(6) .................................................................. 10, 11, 38

Fed. R. Civ. P. 9(b) .......................................................................... 7, 8, 25

Fla. Stat. § 895.03 *et seq.* ........................................................................ 46

**Other Authorities**

Joseph, Gregory P.,
    *Civil RICO: A Definitive Guide* (3d ed. 2010) ....................................... 45

U.S. Dep't of Interior,
   *Press Release: Salazar Announces Regulations to Strengthen Drilling Safety, Reduce Risk of
   Human Error on Offshore Oil and Gas Operations* (Sept. 30, 2010)....................................... 37

U.S. Dep't of Interior,
   *Press Release: Salazar Launches Safety & Environmental Protection Reforms to Toughen
   Oversight of Offshore Oil and Gas Operations* (May 11, 2010) ............................................... 37

U.S. Dep't of Interior,
   *Press Release: Salazar Divides MMS's Three Conflicting Missions* (May 19, 2010).............. 37

## INTRODUCTION AND SUMMARY OF ARGUMENT

The April 20, 2010 blowout of the Macondo oil well, which destroyed the *Deepwater Horizon* mobile offshore drilling unit and resulted in a large oil spill off the Gulf Coast, was certainly an "environmental disaster," Compl. Intro., but just as certainly not a violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-68.  That criminal statute (which creates a civil private right of action, with the lure of treble damages and attorneys' fees) does not criminalize all of tort law.  Rather, as relevant here, the statute seeks to punish persons who proximately cause certain concrete injuries to others through their "participation" in an "enterprise" through a "pattern" of specified predicate crimes.  Plaintiffs here cannot satisfy any of these various statutory requirements as a matter of law; indeed, this case is a poster child for abuse of the RICO statute.  Accordingly, under well-settled law, the complaint must be dismissed.

*First*, the complaint fails to satisfy RICO's proximate causation requirement.  A RICO plaintiff must allege that the defendant's predicate crimes *directly* caused his injuries; it is not enough to allege that such crimes directly injured a third party, and only indirectly injured the plaintiff.  Here, the complaint alleges that BP defrauded *federal and state regulators*, not that BP defrauded *plaintiffs*.  That simple point alone defeats plaintiffs' RICO claims.  Plaintiffs were injured by the *oil spill*, not the alleged *fraud*.  To link the oil spill to the alleged fraud requires plaintiffs to posit a legally speculative causal chain that assumes (among other things) that, but for the fraud, government regulators would have required additional safety measures, and that these additional safety measures would have prevented or mitigated the oil spill and plaintiffs' subsequent injuries.  But this is precisely the kind of speculative chain of "but for" causation that RICO's proximate causation requirement is designed to foreclose.

***Second***, the complaint fails to satisfy RICO's "racketeering" requirement.  The predicate crimes alleged in the complaint are not crimes at all.  Contrary to plaintiffs' apparent belief, the federal mail and wire fraud statutes do not criminalize any and all alleged fraud that uses the mails or wires.  Rather, those statutes reach only frauds that use the mails or wires to obtain money or property, or to carry out a scheme of bribes and kickbacks.  No such objectives are alleged here; rather, the complaint alleges only that BP committed a fraud to obtain regulatory permits and approvals.  But such alleged regulatory fraud does not fall within the scope of the federal mail and wire fraud statutes as a matter of law.

***Third***, the complaint fails to satisfy RICO's "participation" and "enterprise" requirements.  The statute does not reach anyone who commits predicate crimes *per se*, but only persons who commit a pattern of predicate crimes through "participation" in an "enterprise." Here, the complaint alleges predicate crimes by BP, and an "association-in-fact enterprise" consisting of BP and Transocean, but fails to allege the critical ***nexus*** between the predicate crimes and the "enterprise."  In other words, the complaint fails to explain how BP committed the alleged predicate crimes through "participation" in the "enterprise." Under these circumstances, the complaint fails to establish either "participation" in such an enterprise through a pattern of predicate crimes (because BP's alleged predicate crimes have nothing to do with the alleged BP-Transocean "enterprise"), or an "enterprise" truly distinct from the defendant (because that alleged enterprise is really just BP itself).

***Fourth***, the complaint fails to satisfy RICO's "pattern" requirement.  Again, the statute does not reach anyone who commits predicate crimes *per se*, but only persons who commit a "pattern" of predicate crimes.  To qualify as a "pattern," the predicate crimes must be related and continuous over a substantial period of time.  The complaint here alleges that BP committed five

predicate crimes over a period of just over a year in 2009-10, all relating to the Macondo well. While these alleged crimes are related, they are not continuous.  Presumably to address this problem, the complaint tacks on an alleged predicate crime consisting of the filing of a general oil spill response plan in 2000, eight years before BP received a license to drill the Macondo well.  That alleged crime, however, is not related to the others; indeed, the complaint does not even allege that the criminal "enterprise" at issue here began before 2001, when Transocean succeeded to rights under the drilling contract that forms the basis for the "enterprise" and the *Deepwater Horizon* entered into service.

*Fifth*, the complaint fails to satisfy RICO's injury requirement to the extent plaintiffs allege unrealized diminution in property value and/or allege speculative or unspecified injuries. RICO provides redress only for concrete injury to "business or property," and an unrealized diminution in property value does not qualify as such an injury—regardless of whether it qualifies as a cognizable injury under other laws.  In addition, to the extent plaintiffs allege unspecified injuries to their business or property without providing any facts regarding any such injuries, the complaint fails the basic pleading requirements of federal law.

*Sixth*, the complaint fails to satisfy RICO's conspiracy requirements.  As a threshold matter, the complaint fails to allege ***any*** facts relating to the cornerstone of a conspiracy: an agreement between the defendant and another party to violate the law.  In the absence of any such factual allegations, the conspiracy counts fail as a matter of law.  In addition, those counts fail as a matter of law because the complaint fails to state a claim under either of the substantive RICO provisions that are the object of the alleged conspiracy, 18 U.S.C. § 1962(a) and § 1962(c), and plaintiffs cannot state a claim for a RICO conspiracy if they cannot state a claim for a substantive RICO violation.

3

**Finally**, the complaint fails to state a claim under the Florida RICO statute.  As an initial matter, the Florida RICO claims fail for the same reasons as the federal RICO claims, because the Florida courts interpret the relevant requirements of their RICO statute, which is patterned on the federal statute, the same as the federal statute.  In any event, the Florida RICO statute does not, and could not constitutionally, apply extraterritorially to claims arising outside of Florida.

At the end of the day, this is a tort case masquerading as a civil RICO case.  "RICO was intended to combat organized crime, not to provide a federal cause of action and treble damages to every tort plaintiff."  *Oscar v. University Students Co-op. Ass'n*, 965 F.2d 783, 786 (9th Cir. 1992) (*en banc*).  And precisely because "civil RICO is an unusually potent weapon—the litigation equivalent of a thermonuclear device … courts must always be on the lookout for the putative RICO case that is really nothing more than an ordinary fraud case clothed in the Emperor's trendy garb."  *Leung v. Law*, 387 F. Supp. 2d 105, 113 (E.D.N.Y. 2005) (brackets and internal quotation omitted).  That point is particularly true here: this multi-district litigation is already complex enough without the distraction of legally deficient RICO claims.  Accordingly, the Court should grant this motion to dismiss.

## BACKGROUND

### I.       Facts

This case arises out of the April 20, 2010 blowout of the Macondo oil well, which destroyed the *Deepwater Horizon* mobile offshore drilling unit and resulted in an oil spill off the Gulf Coast.  Compl. Intro., ¶¶ 1-3.  As relevant here, however, the story starts over a decade earlier, in December 1998, when a company called Vastar Resources, Inc. entered into a written drilling contract with a company called R&B Falcon Drilling Co. for the construction of a mobile offshore drilling unit, which would become the *Deepwater Horizon*.  Compl. ¶ 66 & n.1.  The

4

drilling contract called for R&B Falcon to build and operate the unit, and for Vastar to hire R&B Falcon to use the unit for drilling wells.  *Id.*

In 2000, BP Amoco Corporation purchased Vastar, and defendant BP America Production Company ("BP America") succeeded Vastar under the drilling contract.  *See id.*  In 2001, Transocean purchased R&B Falcon, and ultimately Transocean Holdings LLC succeeded R&B Falcon under the contract.  *See id.*  The *Deepwater Horizon* drilling unit was also put into service in 2001; from then until the end, it had a contract with BP America and performed drilling operations at numerous wellsites.  *See id.* ¶¶ 65, 184.

In June 2008, defendant BP Exploration & Production Inc. ("BPXP") received a lease from the federal Minerals Management Service ("MMS") to drill an exploration well on the seabed at Mississippi Canyon Block 252, located in the Gulf of Mexico about 130 miles southeast of New Orleans and 48 miles southeast of Venice, Louisiana.  *Id.* ¶¶ 14, 57.  BP America hired Transocean, which used the *Deepwater Horizon* for completion of the project.  *Id.* ¶ 15.  The well, known as Macondo, blew out on April 20, 2010, leading to the destruction of the *Deepwater Horizon* and an oil spill in the Gulf.  *See* Compl. Intro.

## II.        This Lawsuit

The named plaintiffs in this consolidated complaint originally brought separate RICO complaints, which were then consolidated in this MDL proceeding.  The consolidated complaint is brought against three defendants: (1) BP America, (2) BPXP, and (3) their parent, BP p.l.c., headquartered in the United Kingdom.  Compl. Intro.; *id.* ¶¶ 14-16; RICO Case Statement ¶ 2.  The complaint refers to the three defendants collectively as "BP."  Compl. Intro; RICO Case Statement ¶ 2.  According to the complaint, "BP" "fraudulently deceiv[ed] federal and state regulators" in connection with the safety of its drilling operations, its ability to respond to any oil spill, and its response to the spill at the Macondo well.  *See* Compl. ¶ 28; *see also* RICO Case

Statement ¶ 5(d).  That fraud, the complaint alleges, "proximately caused" injury to the named

plaintiffs' "business and property."  Compl. ¶ 30, RICO Case Statement ¶¶ 15-16.  In particular,

the complaint alleges that the named plaintiffs were injured as follows:

- Plaintiff Robert L. Rinke, the owner of a penthouse condominium in Pensacola Beach, Florida, alleges that "[d]ue to the Spill," he "has suffered the loss, damage and diminution in value of his condominium property abutting the Gulf of Mexico," Compl. ¶ 8; RICO Case Statement ¶ 4;

- Plaintiff Armand's Bistro LLC, a former seafood restaurant inside a Holiday Inn in LaPlace, Louisiana, alleges that "[d]ue to the Spill, it could not obtain the seafood it needed to operate, and had to close," Compl. ¶ 9; RICO Case Statement ¶ 4;

- Plaintiffs Roland and Barbara Hingle, commercial shrimpers from Buras, Louisiana, allege that they "have lost earnings and property from the Spill," Compl. ¶ 10; RICO Case Statement ¶ 4;

- Plaintiff Alan Sheen, M.D., a Louisiana resident who owns a condominium in Navarre Beach, Florida, alleges that "in 2010, his rental income was less than half the average of the prior two years, due to the Spill," Compl. ¶ 11; RICO Case Statement ¶ 4; and

- Plaintiff Mid South Seafood, Inc., a Mississippi seafood business that buys seafood from the Gulf of Mexico and sells it throughout the State, alleges that "[d]ue to the Spill," it "lost business and earnings," Compl. ¶ 12; RICO Case Statement ¶ 4.

In addition to seeking relief for these five sets of named plaintiffs, the complaint also

seeks certification of a plaintiff class defined as follows:

> All individuals and entities residing or owning property in the United States who claim economic losses, or damages to their occupations, businesses, and/or property as a result of the April 20, 2010 explosions and fire aboard, and sinking of, the Deepwater Horizon, and the resulting Spill.

Compl. ¶ 216.  The proposed class includes persons who "fall into nine basic categories,"

including (1) "Recreational sport fishermen, recreational divers, beachgoers, and recreational

boaters (the 'Recreation Plaintiffs')," and (2) "Persons who utilize natural resources for

subsistence (the 'Subsistence Plaintiffs')."  RICO Case Statement ¶ 4(e), (i).

**LEGAL STANDARD**

In resolving a motion to dismiss under Fed. R. Civ. P. 12(b), this Court must accept the complaint's well-pleaded factual allegations as true. *See, e.g.*, *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005). The term "well-pleaded" is critical: courts need not, and may not, accept ***any*** factual allegation, but only those that state "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.") (internal quotation omitted). Thus, a complaint "that offers labels and conclusions or a formulaic recitation of the elements of a cause action will not do," *id.* (internal quotation omitted): a court need not, and may not, accept "conclusory allegations, unwarranted factual inferences, or legal conclusions," *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *see also Nolen v. Nucentrix Broadband Networks Inc.*, 293 F.3d 926, 928 (5th Cir. 2002) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.") (internal quotation omitted). In the specific context of civil RICO, a complaint must state sufficient facts to show that plaintiffs can establish each of the statute's various requirements as a matter of law. *See, e.g.*, *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 453 (2006) (directing dismissal of § 1962(c) claim on the pleadings for lack of proximate causation); *Edwards v. St. John the Baptist Parish*, No. 09-4384, 2010 WL 3720436, *14 (E.D. La. Sept. 9, 2010) (Barbier, J.) (dismissing RICO claim on the pleadings for lack of proximate causation).

In addition, RICO claims based on predicate acts of mail and wire fraud are subject to the heightened pleading standard of Fed. R. Civ. P. 9(b). *See, e.g.*, *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1138 (5th Cir. 1992). Under that standard, "a party must state with

particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "Rule 9(b) requires, at a minimum, that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud." *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 266 (5th Cir. 2010) (internal quotation omitted).

Finally, in multi-district litigation, to the extent that the circuit courts of appeals are divided on an issue of federal law, the transferee court must follow the law of its own circuit. *See, e.g.*, *In re Mastercard Int'l, Inc. Internet Gambling Litig.*, No. 00-MD-1321, 2004 WL 287344, at *2 (E.D. La. Feb. 12, 2004) (citing authorities).

## ARGUMENT

The complaint seeks to stretch RICO beyond all bounds of principle and precedent by applying the statute to a situation "absurdly remote from the concerns of the statute's framers." *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 226 (7th Cir. 1997). The statute, as the Fifth Circuit has explained, "is targeted primarily at organized crime." *Patterson v. Mobil Oil Corp.*, 335 F.3d 476, 492 n.16 (5th Cir. 2003). Although the statute is not strictly limited to that context, *see, e.g.*, *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 660 (2008), its various requirements nonetheless reflect that overriding focus. RICO is neither an all-purpose federal criminal fraud statute nor a vehicle to pursue treble damages and attorneys' fees for negligence claims. Rather, RICO seeks to punish persons who proximately cause certain concrete injuries by committing a continuous pattern of specified crimes through an enterprise.

Thus, as relevant here, RICO makes it a federal crime for any person to "conduct or participate" in the affairs of an "enterprise" "through a pattern of racketeering activity," 18 U.S.C. § 1962(c), as well as to conspire to violate that provision (or any of RICO's other substantive provisions), *id.* § 1962(d). In addition, the statute creates a private right of action for "[a]ny person injured in his business or property by reason of" such a crime, in which the

plaintiff can recover both treble damages and attorneys' fees. *Id.* § 1964(c). These statutory requirements "help[] to assure that RICO is not expanded to provide a federal cause of action and treble damages to every tort plaintiff." *Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000) (internal quotation omitted).

The complaint alleges that "BP"—a collective term for all three defendants—violated § 1962(c) by using an "association-in-fact enterprise of BP and Transocean" to carry out a pattern of mail and wire fraud in violation of federal criminal law. Compl. ¶ 28; RICO Case Statement ¶¶ 5-7. In particular, the complaint alleges that BP "(1) ***fraudulently deceiv[ed] federal and state regulators*** that BP would safely conduct their oil drilling operations to prevent oil spills; (2) ***fraudulently deceiv[ed] federal and state regulators*** that BP could safely and effectively respond to and contain any oil spill, including worse case scenario oil spills like the Deepwater Horizon disaster; (3) hamper[ed] containment and cleanup responses by ***fraudulently deceiving federal and state regulators*** regarding the oil spill flow rate; and (4) ***fraudulently deceiv[ed] federal and state regulators*** regarding the quickest and safest method to kill the Macondo well and stop the Spill." Compl. ¶ 28 (emphasis added). Thus, the complaint alleges a "pattern" of predicate crimes consisting of mail and wire fraud "***to defraud the regulators*** into believing BP would conduct oil operations safely and that BP could effectively respond to and contain any oil spill." Compl. ¶ 238 (emphasis added); *see also id*. ¶ 55 ("BP engaged in a pattern of fraudulent conduct ***directed at regulators*** from the inception of the Macondo project.") (emphasis added); *id*. ¶ 234 ("BP engaged in a fraudulent scheme ***to defraud government regulators*** into believing it would safely conduct offshore drilling and that it was able to effectively respond to and contain any oil spill, including the Deepwater Horizon oil spill.") (emphasis added). The complaint further alleges in conclusory terms that "[t]he

enormous economic injury to the Plaintiffs' and class members' business and property was proximately caused by reason of these RICO violations." *Id.* ¶ 30.

For the reasons explained below, the complaint fails to state a claim on which relief can be granted, and thus must be dismissed under Rule 12(b)(6). And because the named plaintiffs' claims fail as a matter of law, it is neither necessary nor appropriate to address class certification. *See, e.g.*, *Brown v. Protective Life Ins. Co.*, 353 F.3d 405, 407-08 (5th Cir. 2003); *Floyd v. Bowen*, 833 F.2d 529, 534 (5th Cir. 1987).

## I.      The RICO Claims Fail For Lack Of Proximate Causation.

The complaint must be dismissed, first and foremost, for failure adequately to plead proximate causation. To bring a private cause of action under RICO, a plaintiff must be injured "by reason of" a RICO violation. 18 U.S.C. § 1964(c). As the Supreme Court has explained, this language requires a civil RICO plaintiff "to show that a RICO predicate offense 'not only was a "but for" cause of his injury, but was the proximate cause as well.'" *Hemi Group LLC v. City of New York*, 130 S. Ct. 983, 989 (2010) (plurality) (quoting *Holmes v. Securities Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)); *see also Anza*, 547 U.S. at 457. If a RICO complaint fails adequately to plead that the alleged predicate crimes proximately caused the plaintiff's injury, it must be dismissed. *See id.* at 455, 457 (affirming dismissal of RICO complaint on proximate causation grounds); *see also Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 982 n.12 (9th Cir. 2008) ("It is … evident that courts need not allow RICO plaintiffs leeway to continue on with their case in an attempt to prove an entirely remote causal link."); *Edwards*, 2010 WL 3720436, at *14 (dismissing RICO complaint for lack of proximate causation); *Alden v. Allied Adult & Child Clinic, L.L.C.*, 171 F. Supp. 2d 647, 650-51 (E.D. La. 2001) (Barbier, J.)

10

(same); *Dixon v. Ford Motor Credit Co.*, 137 F. Supp. 2d 702, 706-09 (E.D. La. 2000) (Barbier, J.) (same).[1]

The point here is simple: the complaint fails as a matter of law to plead proximate causation under RICO because it alleges that BP defrauded ***government regulators***, not ***plaintiffs***. *See* Compl. ¶¶ 234-37; RICO Case Statement ¶¶ 5(c)-(d), 9, 14. ***All*** of the alleged predicate acts of mail and wire fraud were directed at government regulators. *See* Compl. ¶ 237; *see also* RICO Case Statement ¶¶ 5(c)-(d), 9, 14. Plaintiffs theorize that the alleged mail and wire fraud on government regulators in turn caused the oil spill because "absent the pattern of racketeering the regulators ***would*** have required BP and co-conspirator Transocean to expend the funds necessary to comply with regulatory requirements, or forgo the profitable activities. Government regulators ***would*** not have allowed the Enterprise to conduct its offshore exploration, development and containment activities in a knowingly unsafe manner." RICO Case Statement ¶ 9 (emphasis added); *see also id.* at ¶ 16 ("The scheme to defraud regulators

---

[1] Many courts, including the Fifth Circuit, have described RICO's proximate causation requirement as an element of "standing," stating that a plaintiff lacks standing to sue under RICO if his injury was not proximately caused by the alleged RICO violation. *See, e.g.*, *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 607 (5th Cir. 1998) (*per curiam*); *Cullom v. Hibernia Nat'l Bank*, 859 F.2d 1211, 1215 (5th Cir. 1988); *see also Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1319 (11th Cir. 1998). "Standing" in this statutory sense, unlike standing for Article III purposes, is best viewed as a substantive requirement of the statute, not as a limitation on a court's subject-matter jurisdiction. *See, e.g.*, *Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237, 1243 (2010) (noting that courts "have sometimes mischaracterized ... elements of a cause of action as jurisdictional limitations" and explaining the general approach for distinguishing jurisdictional conditions from mere elements of a claim); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006) ("[W]hen Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character."); *but see, e.g.*, *In re Taxable Mun. Bond Secs. Litig.*, 51 F.3d 518, 521 (5th Cir. 1995) (describing RICO standing as "jurisdictional"). Thus, a complaint that fails adequately to plead statutory standing under RICO is best dismissed for failure to state a claim upon which relief can be granted under Rule 12(b)(6), not for lack of jurisdiction under Rule 12(b)(1). *See, e.g.*, *Brown*, 353 F.3d at 406-08 (affirming Rule 12(b)(6) dismissal of civil RICO action for lack of statutory standing); *Canyon County*, 519 F.3d 974 n.7 (same); *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128-29 (2d Cir. 2003) (same). In any event, even if the standing issue here were viewed as jurisdictional, this Court would have discretion to treat this motion to dismiss under Rule 12(b)(6) as a motion to dismiss under Rule 12(b)(1). *See, e.g.*, *Shafer v. Hill*, No. 08-395, 2008 WL 4367291, at *2 n.2 (N.D. Tex. Sept. 23, 2008) ("[W]hen a motion to dismiss attacks the substance of the complaint's jurisdictional allegations, we treat it as brought under Rule 12(b)(1), even if it was improperly identified by the moving party as brought under Rule 12(b)(6).") (internal quotation omitted); *Palo ex rel. Estate of Palo v. Dallas County*, No. 05-527, 2005 WL 2090640, at *1 (N.D. Tex. Aug. 29, 2005) (treating third-party defendant's motion to dismiss "as filed under Fed. R. Civ. P. 12(b)(1) rather than Rule 12(b)(6)").

regarding the safety of Defendants' deep sea oil drilling allowed Defendants to proceed with the Deepwater Horizon drilling without the prescribed and claimed safeguards that **would** have prevented the spill, causing the spill and the consequent damage.") (emphasis added).

Plaintiffs' repeated use of the word "would" in describing their causal chain is a red flag on proximate causation. The key point here is that plaintiffs claim to have been injured by the *oil spill*, not the alleged *fraud* on government regulators. *See* Compl. ¶¶ 8-12. Their theory thus depends on a series of speculative assumptions to link the alleged fraud with the spill:

- If MMS had known the truth about BP's safety practices and capacity to respond to a spill, then MMS would have concluded that these were insufficient to meet regulatory standards;

- If MMS had concluded that BP's safety practices and capacity to respond to a spill were insufficient to meet regulatory standards, then MMS would have required BP to adopt alternative practices;

- If MMS had required BP to adopt alternative practices, those practices would have prevented the blowout or lessened the impact of the spill.

This causal chain—which depends critically on the predicted actions of a third party, MMS—is far too speculative and attenuated as a matter of law to establish RICO proximate causation. *See, e.g.*, *Hemi Group*, 130 S. Ct. at 989-91 (plurality); *Anza*, 547 U.S. at 457-58; *Holmes*, 503 U.S. at 271-74. Although fraud against one party may lead to all sorts of consequences for other parties, that does not make those other parties proper treble-damages plaintiffs under RICO. "The general tendency of the law, in regard to damages at least, is not to go beyond the first step." *Id.* at 271-72 (internal quotation omitted). "'[F]or want of a nail, a kingdom was lost' is a commentary on fate, not the statement of a major cause of action against a blacksmith." *Id.* at 287 (Scalia, J., concurring in the judgment).

Thus, as the Supreme Court has explained, "[w]hen a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led ***directly***

to the plaintiff's injuries." *Anza*, 547 U.S. at 461 (emphasis added); *see also Hemi Group*, 130 S. Ct. at 991 (plurality) ("[I]n the RICO context, the focus is on the ***directness*** of the relationship between the conduct and the harm.") (emphasis added); *Holmes*, 503 U.S. at 268 (requiring a "***direct*** relation between the injury asserted and injurious conduct alleged") (emphasis added); *Johnson Enters.*, 162 F.3d at 1318 ("[A] plaintiff has standing to sue under [RICO] only if his injury flowed ***directly*** from the commission of the predicate acts.") (emphasis added; internal quotation omitted). Here, if anything, the alleged mail and wire fraud directly injured ***government regulators***, not ***plaintiffs***. RICO proximate causation extends only to the alleged "***direct victim***" of a fraud, not to any and all third parties who may suffer some consequential injury. *Anza*, 547 U.S. at 458 (emphasis added). Because plaintiffs here were not the "direct victims" of BP's alleged fraud on government regulators, they cannot establish RICO proximate causation as a matter of law.[2]

Indeed, the Supreme Court in *Anza* specifically rejected the notion that a third party may bring a claim under RICO based on the defendant's alleged predicate acts of fraud against the government. *See* 547 U.S. at 454-55, 457-58. The parties in that case were business

---

[2] Some Fifth Circuit cases decided before *Hemi*, *Anza*, and *Holmes* suggested that the plaintiff's injury need not be the "direct" result of the alleged RICO predicate act. For example, in *Zervas v. Faulkner*, the Fifth Circuit stated that "[a] requirement that the nexus between the injury and a predicate act be 'direct' may, at least in some circumstances, be overly restrictive." 861 F.2d 823, 833 (5th Cir. 1988); *see also Ocean Energy II, Inc. v. Alexander & Alexander, Inc.*, 868 F.2d 740, 744 (5th Cir. 1989). In light of subsequent Supreme Court precedent, however, later Fifth Circuit decisions expressly require a "direct" relationship between the alleged predicate acts and injury. Indeed, the Fifth Circuit declared in 2002 that "[w]e have consistently held that the causal language of § 1964(c) requires that the compensable injury stem ***directly*** from the violation of the RICO section in question." *Nolen*, 293 F.3d at 929 (emphasis added; citing *Crowe v. Henry*, 43 F.3d 198, 205 (5th Cir. 1995); *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 584 (5th Cir. 1992)); *see also Oceanic Exploration Co. v. Phillips Petroleum Co. ZOC*, 352 F. App'x 945, 951 (5th Cir. 2009) (*per curiam*) ("'When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led ***directly*** to the plaintiffs' injuries.'") (quoting *Anza*, 547 U.S. at 461; emphasis added in *Oceanic*); *Proctor & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 565 (5th Cir. 2001) (affirming dismissal of RICO claim where "injury to [the plaintiff] did not flow ***directly***" from the alleged predicate acts) (emphasis added); *cf. Alden*, 171 F. Supp. 2d at 651 (Barbier, J.) ("[T]o maintain a RICO suit, a plaintiff must have been ***directly*** injured by the actions which violate RICO.") (emphasis in original; discussing *Holmes*, 503 U.S. at 274).

competitors, and the plaintiff alleged that the defendant had unlawfully failed to collect sales taxes from its customers, thereby defrauding the State and injuring competitors by being able to reduce prices without affecting its profit margin. *See id.* at 453-54. The Supreme Court held that this theory failed adequately to plead proximate causation under RICO, because the "***direct*** victim of this conduct was the State of New York, not [the plaintiff]." *Id.* at 458 (emphasis added); *see also id.* ("It was the State that was being defrauded and the State that lost tax revenue as a result."). The alleged fraud on the State therefore had not "led ***directly*** to the plaintiff's injuries," and the plaintiff accordingly failed to meet RICO's "requirement of a ***direct*** causal connection" between the predicate fraud and the alleged injury. *Id.* at 460-61 (emphasis added). "The cause of [the plaintiff's] asserted harms … is a set of actions (offering lower prices) entirely distinct from the alleged RICO violation (defrauding the State)." *Id.* at 458. If anything, the chain of causation here is even more attenuated than in *Anza*, because the alleged fraud on the government in that case harmed third parties without any intervening action by the government, whereas here plaintiffs' theory of harm depends critically on the government's hypothetical actions but for the fraud.

And the Supreme Court in *Hemi Group* confirmed that a third party cannot bring a civil claim under RICO based on alleged predicate acts of fraud against the government. The plaintiff there was the City of New York, which alleged that the defendant, an online cigarette seller, defrauded the State of New York by failing to file "Jenkins Act" reports regarding its cigarette sales, and thereby deprived the City of a potential source of information relevant to collecting cigarette taxes from buyers. *See id.* at 986, 988. The Court rejected that argument, holding that "[t]he City … has no RICO claim." *Id.* at 994. As the plurality explained, "the disconnect between the asserted injury and the alleged fraud in this case is even sharper than in *Anza*,"

14

because the City's theory of injury depended on "separate **actions** carried out by separate **parties**." *Id.* at 990 (emphasis modified). The alleged fraud on the State injured the City, if at all, only indirectly by making it "easier" for the cigarette customers to evade their obligation to pay their taxes. *Id.* Because "the City's harm was directly caused by the customers, not [the defendant]," plaintiffs could not establish proximate causation as a matter of law. *Id.*; *see also id.* at 994 ("The City's injuries here were not caused **directly** by the alleged fraud, and thus were not caused 'by reason of' it.") (emphasis added).

Other courts have similarly concluded that civil RICO claims by private parties based on fraud against the government fail for lack of proximate causation. *See, e.g.*, *Rezner v. Bayerische Hypo-Und Vereinsbank AG*, 630 F.3d 866, 873-74 (9th Cir. 2010) (organizer of unlawful tax shelter scheme did not proximately cause injury to participant in scheme where the United States was the direct victim of the fraud); *Halpin v. Crist*, No. 10-10339, 2010 WL 5078222, at *2 (11th Cir. Dec. 14, 2010) (*per curiam*) (party that unlawfully obtained license to operate canteen in prison did not proximately cause injury to residents of prison where the Department of Corrections was the direct victim of the fraud); *Callahan v. A.E.V., Inc.*, 182 F.3d 237, 261-67 (3d Cir. 1999) (party that fraudulently obtained beer distributorship licenses did not proximately cause competitor's injury where the Liquor Control Board was the direct victim of the fraud); *Johnson Enters.*, 162 F.3d at 1317-18 (companies that fraudulently obtained cable franchises did not proximately cause injury to contractor where the franchising authority was the direct victim of the fraud); *Dow Chem. Co. v. Exxon Corp.*, 30 F. Supp. 2d 673, 696 (D. Del. 1998) (manufacturer that fraudulently obtained patent did not proximately cause injury to competitor where the Patent & Trademark Office was the direct victim of the fraud).

Indeed, this Court itself recently rejected a similar claim in *Edwards*.  The plaintiff there, an owner of residential property in St. John the Baptist Parish, alleged that the defendants had committed various predicate crimes involving misappropriation of Parish funds, thereby increasing the tax burden, diminishing the value of property, and hindering business in the Parish.  *See* 2010 WL 3720436, at *13-14.  This Court dismissed the complaint for failure adequately to plead proximate causation, holding that the link between the predicate acts and the injury was "too remote, attenuated, and far too indirect to be sufficient to establish proximate cause for RICO purposes."  *See id.* at *14; *see also id.* ("A proximate cause analysis requires 'some ***direct*** relation between the injury asserted and the injurious conduct alleged.'") (quoting *Hemi Group*, 130 S. Ct. at 989) (emphasis added).

Here, plaintiffs' alleged chain of causation relies critically on the intervening acts of third parties—specifically, government regulators.  There is simply no way of knowing if, as plaintiffs allege, *see* RICO Case Statement ¶¶ 9, 16, those regulators would have done anything differently but for the alleged fraud.  Not only is the answer to that question highly speculative, but it also would require inappropriate judicial deconstruction of agency decision-making.  *See, e.g.*, *City of Columbia v. Omni Outdoor Adver., Inc.*, 499 U.S. 365, 377 (1991) (rejecting theory of liability that "would require the sort of deconstruction of the governmental process and probing of the official 'intent' that we have consistently sought to avoid"); *Sessions Tank Liners, Inc. v. Joor Mfg., Inc.*, 17 F.3d 295, 300 (9th Cir. 1994) (legally inappropriate for courts to "deconstruct[] the decision-making process to ascertain what factors prompted … governmental bodies" to take particular actions); *Oceanic Exploration Co. v. ConocoPhillips*, No. H-07-815, 2008 WL 1777003, at *5 (S.D. Tex. Apr. 16, 2008) ("To reconstruct a collective [government] decision-making process in the absence of a single input … and predict what would have happened

otherwise is on the impossible edge of difficult."), *aff'd*, 352 F. App'x 945 (5th Cir. 2009) (*per curiam*).

And courts have declined to engage in such speculation for good reason. Not only is it impossible to know how a regulatory agency might have exercised its judgment, but attempting to find out would require a mini-trial within the trial to determine what the agency would have done in the absence of the alleged mail and wire fraud. *See, e.g.*, *Strates Shows, Inc. v. Amusements of Am., Inc.*, 379 F. Supp. 2d 817, 829-30 (E.D.N.C. 2005) (explaining that "proximate cause principles do not permit such an after-the-fact, hypothetical, determination of causation and injury" and declining to "conduct a trial within a trial" to determine what the outcome of a public bidding process would have been but for the alleged scheme). Indeed, for a court to decide a case based on how a federal agency would have ruled under hypothetical circumstances would "usurp[] a function that Congress has assigned to a federal regulatory body," *Arkansas La. Gas Co. v. Hall*, 453 U.S. 571, 581 (1981), and distort the remedial system established for that regulatory scheme, *see, e.g.*, *Hemi Group*, 130 S. Ct. at 994-95 (Ginsburg, J., concurring in part and concurring in the judgment); *Danielsen v. Burnside-Ott Aviation Training Center, Inc.*, 941 F.2d 1220, 1226-29 (D.C. Cir. 1991); *Ayres v. General Motors Corp.*, 234 F.3d 514, 521-25 (11th Cir. 2000).

The regulatory backdrop here only confirms the speculative nature of such an exercise. A number of the regulations cited by plaintiffs involve the exercise of considerable judgment and discretion. *See, e.g.*, Compl. ¶ 38 ("The regulation also requires 'these plans must demonstrate that you have planned and are prepared to conduct the proposed activities in a manner that: … (b) Is *safe* ….'") (emphasis added; quoting 30 C.F.R. § 250.202); *id.* ¶ 39 ("'The lessee shall not create conditions that will [im]pose *unreasonable risk* to public health, life, property, aquatic

life, wildlife, recreation, navigation, commercial fishing, or other uses of the ocean.'") (emphasis added; quoting 30 C.F.R. § 250.300); *id.* ¶ 42 ("Of critical importance, to protect 'health, safety, property, and the environment: … ***best available and safest technology*** (BAST) must be used whenever practical on all exploration, development and production operations.'") (emphasis added; quoting 30 C.F.R. § 250.107).  Needless to say, there is no way to know how the agency would have exercised such judgment and discretion but for the alleged fraud.  *See*, *e.g.*, *Strates Shows*, 379 F. Supp. 2d at 829 ("[T]he level of discretion bestowed upon state officials … contributes to the speculative nature of the injury alleged ... [and] prevents determination of a probable winning bidder.").

Above and beyond the wholly speculative nature of what (if any) additional safety measures government regulators might have required but for the alleged fraud, it is wholly speculative whether any such measures would have prevented the blowout or lessened its impact, thereby preventing or mitigating plaintiffs' injuries.  If anything is clear about this incident by now, it is that the blowout and spill resulted from a complex, multi-party causal chain involving action (or inaction) by many different actors.  Trying to analyze the effect of some hypothetical government regulation would enmesh courts in precisely the sort of "intricate, uncertain inquires" that RICO's proximate causation requirement seeks to avoid.  *Anza*, 547 U.S. at 460.

Moreover, it would be anomalous to allow plaintiffs to seek redress for alleged fraud on government regulators, who are perfectly able to seek such redress themselves.  *See, e.g.*, *Hemi Group*, 130 S. Ct. at 990 (plurality); *see also Anza*, 547 U.S. at 460 ("[T]he requirement of a direct causal connection is especially warranted where the immediate victims of an alleged RICO violation can be expected to vindicate the laws by pursuing their own claims."); *James Cape & Sons Co. v. PCC Constr. Co.*, 453 F.3d 396, 404 (7th Cir. 2006) (affirming dismissal of RICO

18

claim for lack of proximate causation where the injured government agency was "fully capable of pursuing appropriate remedies, much like the State of New York in *Anza*"); *Downstream Envtl., L.L.C. v. Gulf Coast Waste Disposal Auth.*, No. 05-1865, 2006 WL 1875959, at *7 (S.D. Tex. July 5, 2006) (dismissing RICO claim based on alleged regulatory violations where "there are public authorities charged with enforcing such violations").  Just as the direct victim of the alleged fraud in *Hemi Group* (the State of New York) "certainly [was] better situated" to seek appropriate redress than the alleged indirect victim (the City of New York), 130 S. Ct. at 990 (plurality), so too here the direct victim of the alleged fraud (federal regulators) are better situated to seek appropriate redress than these private plaintiffs, *see id.* ("We do not opine on whether the State could bring a RICO action for any lost tax revenue.  Suffice it to say that the State would have concrete incentives to try.").  "[T]he need to grapple with" problems of proximate causation "is simply unjustified by the general interest in deterring injurious conduct, since directly injured victims can generally be counted on to vindicate the law as private attorneys general, without any of the problems attendant upon suits by plaintiffs injured more remotely." *Holmes*, 503 U.S. at 269-70.

Indeed, the Federal Government ***has*** sued BP in connection with the Macondo well blowout and the ensuing oil spill.  *See* Compl., *United States v. BP Expl. & Prod. Inc., et al.*, No. 2:10-cv-04536 (E.D. La. Dec. 15, 2010) [Doc. 1] ("Gov't Compl."), ¶¶ 70-91; *see generally Rezner*, 630 F.3d at 873 ("[O]ne consideration is whether a better suited plaintiff would have an incentive to sue.  Here, the direct victim of [the defendant's] fraudulent conduct—the United States—***did*** in fact sue.").  "A civil RICO action is not specifically required to vindicate th[e] general deterrence interest." *Callahan*, 182 F.3d at 266-67.

Finally, it goes without saying that plaintiffs cannot satisfy RICO's proximate causation requirement by simply asserting, in wholly conclusory terms, that BP's alleged fraud on government regulators "proximately caused" or "directly … caused" the Macondo well blowout and ensuing oil spill.  Compl. ¶¶ 30, 79, 240; *see also id.* Intro. ("[T]he unlawful conduct alleged herein … resulted in the well blowout, vessel explosions, and ensuing oil spill."); *id.* ¶ 175 ("BP fraudulently violated [] regulatory mandates, causing the Macondo well blow out and the subsequent explosions, fire, sinking, and Spill, with ensuing damage to Plaintiffs and others."); RICO Case Statement ¶ 15 ("The RICO violations caused the spill and the failure to effectively contain the spill, which was the direct and proximate cause of injury to business or property of Plaintiffs.").  In the absence of factual allegations sufficient to establish proximate causation as a matter of law, the recitation of such conclusory assertions parroting the relevant legal standard does not satisfy bedrock federal pleading requirements.  *See, e.g.*, *Iqbal,* 129 S. Ct. at 1949-51; *Twombly*, 550 U.S. at 555.

## II.        The RICO Claims Fail For Lack Of "Racketeering Activity."

The complaint also must be dismissed for failure adequately to plead the predicate acts of "racketeering activity" necessary for a substantive RICO claim.  The statute, in relevant part, defines "racketeering activity" as a violation of the federal mail or wire fraud statutes.  *See* 18 U.S.C. § 1961(1) (citing, *inter alia*, *id.* §§ 1341, 1343).  And the complaint, in turn, is limited to predicate crimes of mail and wire fraud.  *See* Compl. ¶¶ 234-37; *see also* RICO Case Statement ¶ 5(a).  In particular, the complaint alleges that "BP" (defined collectively as all three BP defendants) violated the federal mail and wire fraud statutes by making false statements "to defraud government regulators into believing [BP] would safely conduct offshore drilling and that it was able to effectively respond to and contain any oil spill."  Compl. ¶ 234; *see also* RICO Case Statement ¶ 5(c)-(d).  ***All*** of the alleged predicate crimes of mail and wire fraud involve

allegedly false statements to government regulators.  Compl. ¶¶ 55, 220, 234-38; RICO Case Statement ¶ 5(c)-(d).

But not every false communication by mail or wire falls within the scope of these statutes.  To the contrary, the false communication must be one intended (1) to "deprive another of the intangible right of honest services," (2) "to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious ... article," or (3) to "obtain[] money or property" from the victim.  18 U.S.C. §§ 1341, 1343, 1346; *see also United States v. Ratcliff*, 488 F.3d 639, 644 (5th Cir. 2007); *cf. Carpenter v. United States*, 484 U.S. 19, 25 n.6 (1987) ("The mail and wire fraud statutes share the same language in relevant part, and accordingly we apply the same analysis to both sets of offenses here.").  Because the alleged false statements to government regulators at issue here do not fall within any of these categories, the complaint fails adequately to plead "racketeering activity" as a matter of law.

### A. The Complaint Fails Adequately To Plead The Deprivation Of Honest Services Or The Sale Of A Counterfeit Or Spurious Article.

As an initial matter, the alleged false statements at issue here do not qualify as a scheme "to deprive another of the intangible right of honest services."  18 U.S.C. § 1346.  As the Supreme Court has recently explained, this "honest services" provision "covers ***only*** bribery and kickback schemes."  *Skilling v. United States*, 130 S. Ct. 2896, 2907 (2010) (emphasis added); *see also id.* at 2908 (explaining that the "honest services" provision in § 1346 provides one definition of the "scheme or artifice to defraud" proscribed by §§ 1341 and 1343).  The complaint does not allege that BP paid or accepted a bribe or kickback.  Nor does the complaint allege a scheme "to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious ... article."  18 U.S.C. § 1341.

21

**B.    The Complaint Fails Adequately To Plead A Scheme To Obtain Money Or Property From Government Regulators.**

In addition, the complaint does not adequately allege that BP unlawfully used the mails or wires to obtain "money or property" from government regulators.  According to the complaint, BP used the mails or wires fraudulently to obtain ***regulatory permits and approvals*** designed to ensure that "BP would safely conduct oil operations and that BP could effectively respond to and contain any environmental incident, such as a deepwater oil spill."  *Id*. ¶ 233; *see also id*. ¶¶ 23, 63-64, 73, 90, 164-165, 237 (alleging false statements to obtain permits and approvals from government regulators).

The problem with this theory is that a regulatory permit or approval is not "money or property" within the meaning of the federal mail and wire fraud statutes.  As the Supreme Court has explained, a regulatory permit or approval "implicates the Government's role as sovereign, not as property holder," and thus does not entail a transfer of the Government's "money or property."  *Cleveland v. United States*, 531 U.S. 12, 15, 21, 24 (2000); *see also McNally v. United States*, 483 U.S. 350, 359 n.8 (1987) ("[T]he mail fraud statute … had its origin in the desire to protect individual property rights, and any benefit which the Government derives from the statute must be limited to the Government's interests as property holder.").  The Government's "intangible rights of allocation, exclusion, and control amount to no more and no less than [the Government's] sovereign power to regulate," and "[a] right to exclude in that governing capacity is not one appropriately labeled 'property.'"  *Cleveland*, 531 U.S. at 23, 24.

That approach makes sense: if a regulatory permit or approval were deemed to be "money or property" within the meaning of the federal mail and wire fraud statutes, then those statutes would swallow up the entire field of regulatory compliance—not only at the federal level, but also at the state and local levels.  *See id.* at 24; *see also Ayres*, 234 F.3d at 522 (in light

of the National Traffic and Motor Vehicle Safety Act's "extensive administrative scheme," including regulatory penalties for violations, "Congress did not intend to equate a violation ... with the felony of mail or wire fraud").  And as *Cleveland* explained, these concerns are heightened precisely because the federal mail and wire fraud statutes are predicate offenses under RICO, where they could be used as vehicles for meritless and harassing civil actions.  *See* 531 U.S. at 25; *Ayres*, 234 F.3d at 522 ("[I]t is also clear that Congress did not intend for a violation of the Safety Act's notification requirements to be the basis for a private civil RICO action, which would permit unlimited, treble damages.").

It is immaterial in this regard whether the alleged fraud on government regulators allowed the defendant to save its ***own*** "money or property."  As the Fifth Circuit has explained, the mail and wire fraud statutes require proof of a scheme "to defraud the alleged ***victim***" out of money or property.  *Ratcliff*, 488 F.3d at 644 (emphasis added); *see also id.* at 645 ("[W]e must look to whether the alleged scheme is one to deprive the [victim] of money or property through misrepresentations, thereby wronging the [victim's] property rights."); *see also id.* at 645 n.8 ("[T]he deprivation must involve a wronging of the victim's property rights."); *United States v. McMillan*, 600 F.3d 434, 448 (5th Cir. 2010) ("[T]he object of a mail fraud scheme must be money or property in the hands of the victims.").  A defendant does not deprive the victim of "money or property" by simply saving its ***own*** money, unless the defendant has a duty to pay the victim that money—which is not (and could not be) alleged here.  *See, e.g.*, *United States v. Pierce*, 224 F.3d 158, 165-66 (2d Cir. 2000); *cf. Pasquantino v. United States*, 544 U.S. 349, 355 (2005) (affirming wire fraud convictions based on the fraudulent withholding of money because the government victim had "an entitlement to collect [the] money from [defendants]").

Nor does it matter whether the regulatory permits and approvals at issue had value to the *defendant*. "It does not suffice ... that the object of the fraud may become property in the [defendant's] hands; for purposes of the mail fraud statute, the thing obtained must be property in the hands of the *victim*." *Cleveland*, 531 U.S. at 15 (emphasis added). Although a regulatory approval or permit may be quite valuable to the defendant, it is not the regulator's "money or property," and thus does not form the basis for a charge of mail or wire fraud. *See id*. at 22; *see also United States v. Peter*, 310 F.3d 709, 711 (11th Cir. 2002) (*per curiam*) (liquor license); *United States v. Shotts*, 145 F.3d 1289, 1297 (11th Cir. 1998) (bail-bond license); *United States v. Schwartz*, 924 F.2d 410, 417 (2d Cir. 1991) (arms-export license); *Toulabi v. United States*, 875 F.2d 122, 125 (7th Cir. 1989) (taxi-cab license and avoidance of INS scrutiny); *Corcoran v. American Plan Corp.*, 886 F.2d 16, 20 (2d Cir. 1989) (reports to insurance regulator); *United States v. Lew*, 875 F.2d 219, 221 (9th Cir. 1989) (Department of Labor application); *United States v. Kato*, 878 F.2d 267, 269 (9th Cir. 1989) (FAA pilot licenses); *United States v. Murphy*, 836 F.2d 248, 253-54 (6th Cir. 1988) (bingo license); *United States v. Dadanian*, 856 F.2d 1391, 1392 (9th Cir. 1988) (gambling license); *Evercrete Corp. v. H-Cap Ltd.*, 429 F. Supp. 2d 612, 629-30 (S.D.N.Y. 2006) (trademark registration with USPTO); *Williams v. Dow Chem. Co.*, 255 F. Supp. 2d 219, 225-26 (S.D.N.Y. 2003) (EPA safety approvals); *see also United States v. Griffin*, 324 F.3d 330, 353-55 (5th Cir 2003) (scheme to obtain federal tax credits issued by state agency).

Indeed, the *Williams* case is on all fours with this one. The plaintiffs there brought a nationwide class action alleging, among other things, that the defendants violated RICO through predicate acts of mail and wire fraud to obtain "approval of [a pesticide] by the federal regulatory authorities ... by intentionally concealing the dangerously defective nature of [a] product" and

"presenting false, inaccurate and/or misleading information about scientific testing."   255 F. Supp. 2d at 222, 224 (internal quotation omitted).  The court held that these allegations failed adequately to plead predicate acts of mail or wire fraud as a matter of law, and hence dismissed the RICO claims.  *See id.* at 226  "[A]llegations of fraud on the EPA cannot be considered racketeering activity because the alleged scheme was designed to obtain EPA regulatory approval of [the pesticide], not to deprive the EPA of money or property."  *Id.* (citing *Cleveland*, 531 U.S. at 20).

Finally, in addition to the foregoing substantive defects, the complaint once again fails on procedural grounds.  As noted above, Rule 9(b) requires plaintiffs to plead fraud (including mail and wire fraud) with particularity.  *See*, *e.g.*, *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997).  The complaint here, however, simply lumps all three defendants together under the label of "BP" or "Defendants," and fails to specify which of them made any allegedly false statement.  *See* Compl. Intro.; RICO Case Statement ¶ 2.  The complaint thus fails to satisfy the fundamental "who" requirement under Rule 9(b).  *Steury*, 625 F.3d at 266; *see also DiVittorio v. Equidyne Extractive Indus.*, 822 F.2d 1242, 1247 (2d Cir. 1987) ("[T]he complaint should inform *each* defendant of the nature of his alleged participation in the fraud.") (emphasis added); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1381 (11th Cir. 1997) (complaint fails to satisfy Rule 9(b) where plaintiffs "simply lump[] together all of the Defendants in their allegations of fraud") (quotation omitted); *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'").

## III.        The RICO Claims Fail For Lack Of "Participation" In An "Enterprise."

The complaint also must be dismissed for failure adequately to plead that BP "participate[d] … in" the affairs of an "enterprise" through a pattern of racketeering activity.  18

U.S.C. § 1962(c).  Under that provision, it is not a crime to carry out a pattern of racketeering activity *per se*, but **only** to "participate … in" (or "conduct") the affairs of an "enterprise" through such an unlawful pattern.  This point reflects RICO's focus on **organized** crime carried out through an "enterprise," not **individual** crime carried out by a "person" in his own right, and thereby prevents RICO from swallowing up much of tort and criminal law.

The complaint fails to overcome this fundamental hurdle, as it merely alleges wrongdoing by BP independent of the enterprise, and then tacks on the allegation of an association-in-fact "enterprise" between BP and Transocean.  What is missing is the critical **nexus** between BP's alleged wrongdoing and the alleged BP-Transocean "enterprise."  The problem can thus be analyzed in two distinct ways, which are flip sides of the same coin: (1) the complaint does not adequately plead that BP "participate[d]" in the enterprise through a pattern of racketeering activity, or (2) the complaint does not adequately plead a RICO "enterprise" distinct from BP.  Each of these points is discussed in turn below.

### A.   The Complaint Fails Adequately To Plead "Participation" In An "Enterprise" Through A Pattern Of Racketeering Activity.

The complaint fails adequately to plead "participation" by BP in the affairs of the alleged BP-Transocean association-in-fact enterprise "through a pattern of racketeering activity."  18 U.S.C. § 1962(c).  To state a claim under that provision, it does not suffice simply to allege that the defendant participated in an "enterprise," or that the defendant engaged in a "pattern" of "racketeering activity."  Rather, the plain text of the statute requires that the defendant's "participation" in the "enterprise" be accomplished "**through** a pattern of racketeering activity." *Id.* (emphasis added).  Thus, as the Fifth Circuit has explained, "[t]here must be a **nexus** between the enterprise, the defendant, and the pattern of racketeering activity." *United States v. Erwin*, 793 F.2d 656, 671 (5th Cir. 1986) (emphasis added); *see also Crowe*, 43 F.3d at 204 ("[A]ny

RICO claim necessitates 1) a person who engages in 2) a pattern of racketeering activity, 3) **connected to** the acquisition, establishment, conduct or control of an enterprise.") (emphasis modified; internal quotation omitted); *In re Insurance Brokerage Antitrust Litig.*, 618 F.3d 300, 371 (3d Cir. 2010) ("Simply pleading that a defendant 'participated in the operation or management' of an enterprise … is not enough to make out a violation of § 1962(c).  The defendant must have done so '**through** a pattern of racketeering activity.'") (emphasis added); *United States v. Nascimento*, 491 F.3d 25, 45 (1st Cir. 2007) ("The word 'through' implies a nexus between these racketeering acts and the enterprise.  That nexus exists when a defendant is able to commit the predicate racketeering acts either by means or as a result of his involvement with the enterprise."); *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 175 (2d Cir. 2004) (requiring a "nexus ... between the enterprise and the racketeering activity that is being conducted"); *United States v. Starrett*, 55 F.3d 1525, 1542 (11th Cir. 1995) (*per curiam*) ("[T]he defendant's predicate acts must be related to the enterprise charged in the indictment."); *Banks v. Wolk*, 918 F.2d 418, 424 (3d Cir. 1990) (requiring a "connection between [the] enterprise and [the alleged racketeering activity]").

The complaint here fails to allege the requisite nexus between the enterprise and the predicate crimes because it alleges no facts indicating how BP engaged in any predicate acts **through** its association with Transocean.  Thus, while the RICO Case Statement asserts in conclusory terms that "Defendant BP has … used this enterprise to conduct the related acts of mail and wire fraud comprising the pattern of racketeering," RICO Case Statement ¶ 8, neither the complaint nor the RICO Case Statement alleges any **facts** linking the alleged predicate crimes to the alleged BP-Transocean association-in-fact.  Absent any such factual allegations, the complaint fails as a matter of law.  *See, e.g.*, *First Capital*, 385 F.3d at 175 ("Plaintiffs have …

27

failed to allege a nexus between the [alleged] Enterprise and the alleged RICO predicates."); *Starrett*, 55 F.3d at 1542-43 ("[P]roof that the facilities and services of the enterprise were regularly and repeatedly utilized to make possible the racketeering activity … establishes the conduct of the affairs of the enterprise 'through' a pattern of racketeering activity.") (internal citation omitted); *United States v. Marino*, 277 F.3d 11, 27 (1st Cir. 2002) ("A sufficient nexus or relationship exists … if the defendant was able to commit the predicate acts by means of, by consequence of, by reason of, by the agency of, or by the instrumentality of his association with the enterprise."); *Overnite Transp. Co. v. Truck Drivers, Oil Drivers, Filling Station & Platform Workers Union Local No. 705*, 904 F.2d 391, 394 (7th Cir. 1990) ("[T]he fatal flaw in this complaint is its failure to allege that [defendant's] relationship to [the alleged enterprise] at least made it easier for the [defendant] to injure [the plaintiff].").

Indeed, far from alleging any nexus between the alleged "enterprise" and the alleged predicate crimes, the complaint alleges only that BP carried out those crimes by itself, in the conduct of its ***own*** affairs.  *See, e.g.*, Compl. ¶ 237 (identifying only ***BP*** as having allegedly committed the predicate acts); RICO Case Statement ¶ 5(c) (same).  As the Supreme Court has explained, however, "liability depends on showing that the defendants conducted or participated in the conduct of the '***enterprise's*** affairs,' not just their ***own*** affairs."  *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (emphasis in original); *see also Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 399 (7th Cir. 2009) ("[W]hat [plaintiff] alleges here is a fraud perpetrated by [defendant], not an association-in-fact enterprise directed and controlled by [defendant]"); *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 647 (7th Cir. 1995) (affirming dismissal of RICO complaint where there was "no showing that other members of the alleged association in fact participated in the fraud, or that the [defendants] ... conducted the affairs of either of the

alleged enterprises (rather than their own affairs) through a pattern of racketeering activity, as required by *Reves*"); *Able Sec. & Patrol, LLC. v. Louisiana*, 569 F. Supp. 2d 617, 626 (E.D. La. 2008) ("It is not enough to establish that a defendant corporation through its agents committed the predicate acts in the conduct of its ***own*** business.") (emphasis added).  As another court has stated, "[w]hat matter are the means the [enterprise] relationship provides the defendant to accomplish [the alleged] unlawful acts.  Since here there are none alleged, the complaint is properly dismissed for failure to state a claim."  *Overnite Transp.*, 904 F.2d at 394.

### B.  The Complaint Fails Adequately To Plead A RICO "Enterprise" Distinct From The Defendant.

Alternatively, the problem here can be analyzed as a failure adequately to plead a RICO "enterprise" distinct from the defendant.  Because § 1962(c) makes it a crime for a "person" to engage in a "pattern" of predicate crimes though an "enterprise," it is axiomatic that the "person"—*i.e.*, the defendant—must be distinct from the "enterprise" through which that "person" allegedly engaged in those crimes.  If the "person" and the "enterprise" were one and the same, the "enterprise" requirement would be meaningless.  Thus, as the Supreme Court has explained, "to establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is ***not*** simply the same 'person' referred to by a different name."  *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001) (emphasis added); *see also In re Burzynski*, 989 F.2d 733, 743 (5th Cir. 1993) ("Under [§ 1962(c),], the RICO 'persons' must be distinct from the RICO 'enterprise.'").

The complaint purports to satisfy this requirement by identifying a RICO "enterprise" (an "association-in-fact 'enterprise' ... [that] consists of BP itself along with Transocean," Compl. ¶ 231) distinct from the alleged RICO "person" (the three BP defendants that the complaint

collectively dubs "BP," *id.* ¶ 230).[3]  But the complaint's factual allegations regarding the purported "enterprise" make clear that the inclusion of Transocean is nothing more than artful pleading.  Thus, the "enterprise" at issue here is "simply the same 'person'"—BP—"referred to by a different name."  *Cedric Kushner*, 533 U.S. at 161.

In particular, the complaint alleges that Transocean associated with BP through contractual "partnerships to explore and develop oil reserves," Compl. ¶ 232, but does ***not*** allege that Transocean participated in any of BP's alleged predicate crimes, or explain how BP used the alleged BP-Transocean "enterprise" to carry out those crimes.  *See id.* ¶ 237 (identifying BP as the sole actor in the purportedly fraudulent communications sent to government officials); *see also id.* ¶ 28 (alleging that "Plaintiffs and the class were injured ... by reason of ***BP's*** ongoing, systematic and fraudulent scheme") (emphasis added); *id.* ¶ 34 (characterizing the "gist of this complaint" as being "that ***BP*** failed to use the best available and safest drilling technologies at Macondo") (emphasis added); *id.* at 21 (setting forth "***BP's*** Scheme to Defraud") (emphasis added); *see also id.* ¶¶ 78, 80, 162-63, 234 (characterizing the alleged fraudulent scheme and conduct thereof as that of BP).  Regarding Transocean, the complaint merely alleges that the company leased the *Deepwater Horizon* mobile drilling unit to BP, that BP was a "'significant customer,'" and that Transocean had demonstrated a "deficient" safety performance in past drilling activities.  *See id.* ¶¶ 65-68, 75, 133, 184-86.

Where, as here, a RICO complaint alleges ***no nexus whatsoever*** between the defendant's alleged predicate crimes and the alleged "enterprise," a court may "pierce[] through the

---

[3] The complaint could not have characterized the three BP defendants themselves as a RICO "enterprise" in light of the well-settled rule that corporate affiliates alone cannot together form an "enterprise."  *See, e.g., Khurana v. Innovative Health Care Sys., Inc.*, 130 F.3d 143, 155 (5th Cir. 1997), *vacated on other grounds*, 525 U.S. 979 (1998); *Fogie v. THORN Americas, Inc.*, 190 F.3d 889, 898 (8th Cir. 1999); *Atkinson v. Anadarko Bank & Tr. Co.*, 808 F.2d 438, 441 (5th Cir. 1987) (*per curiam*).

allegations in the complaint" to disregard allegations concerning an "association in fact enterprise" consisting of the defendant and some other person(s).  *Dirt Hogs Inc. v. Natural Gas Pipeline Co. of Am.*, No. 99-6026, 2000 WL 368411, at *3 (10th Cir. Apr. 10, 2000).  Thus, courts routinely dismiss RICO actions artfully pleaded with alleged "enterprises" consisting of entities merely tacked on in a transparent effort to distinguish the RICO "person" from the RICO "enterprise."  *See, e.g.*, *id.* (affirming dismissal of RICO claims); *Richmond*, 52 F.3d at 645-46 ("Not one of the non-defendant entities, supposedly constituent parts of the 'enterprise,' [wa]s described as playing a role in the [alleged fraudulent scheme].)"; *Reed Constr. Data Inc. v. McGraw-Hill Cos.*, __ F. Supp. 2d __, 2010 WL 3835196, at *5 (S.D.N.Y. Sept. 14, 2010) (dismissing amended RICO claims where, after original complaint failed to satisfy the distinctiveness requirement, plaintiff "added ... an independent third party hired by [defendant]" but failed to allege that the third party participated or even intended to participate in any racketeering scheme with the defendant); *Manhattan Telecomms. Corp., Inc. v. DialAmerica Mktg., Inc.*, 156 F. Supp. 2d 376, 382 (S.D.N.Y. 2001) ("The alleged enterprise is a veiled attempt to bypass the distinctness requirement and to hold … the deep pocket defendant … liable as a RICO person.").

Indeed, this case can be described as a RICO lawsuit in search of an "enterprise."  The consolidated complaint at issue here is the successor to several complaints that alleged entirely *different* "enterprises."  Thus, the original Rinke complaint alleged a RICO "enterprise" comprised of the Minerals Management Service (MMS), a federal agency (now renamed the Bureau of Ocean Energy Management, Regulation and Enforcement) within the U.S. Department of the Interior.  *See* Compl. ¶ 93, *Rinke v. BP, p.l.c.*, No. 10-206 (N.D. Fla. June 12, 2010).  Both the original Hingle/Sheen complaint and the original Mid South Seafood complaint alleged four

RICO "enterprises": (1) the MMS, (2) an association-in-fact comprised of BP and the MMS, (3) an association-in-fact comprised of The Response Group, a company that specializes in emergency responses, the Marine Preservation Association (MPA), an industry group established to respond to oil spills, and the Marine Spill Response Corporation (MSRC), a non-profit oil spill response company established by the MPA, and (4) an association-in-fact comprised of The Response Group, BP, the MPA, the MSRC, and the MMS.  *See* Compl. ¶¶ 165, 168, *Hingle v. BP, p.l.c.*, No. 10-2749 (E.D. La. Aug. 13, 2010); Compl. ¶¶ 161, 164, *Mid South Seafood, Inc. v. BP, p.l.c.*, No. 10-105 (N.D. Miss. Aug. 16, 2010).  And the original Armand's Bistro complaint also alleged four RICO "enterprises": (1) an association-in-fact comprised of BP, Transocean, and the MMS, (2) the MPA, (3) an association-in-fact comprised of the MPA and the MSRC, and (4) an association-in-fact comprised of BP and Transocean.  *See* Compl. ¶ 180, *Armand's Bistro, L.L.C. v. BP, p.l.c.*, No. 10-1007 (W.D. La. June 21, 2010).  It is telling that ***only*** the original Armand's Bistro complaint even alleged the BP-Transocean association-in-fact enterprise on which the consolidated complaint now rests, and even then only as the fourth of four alleged "enterprises."  "Such inconsistent and conclusory allegations employ a 'moving target' approach to describing an enterprise, by naming a string of participants ... and alleging that they acted as an association in fact.  Considering the centrality of the enterprise to a RICO claim, 'a nebulous open-ended description of the enterprise does not sufficiently identify this essential element.'" *Dirt Hogs*, 2000 WL 368411, at *3 (quoting *Richmond*, 52 F.3d at 645).

Plaintiffs' failure to allege facts supporting the existence of a RICO "enterprise" distinct from BP dooms their RICO claims.  If creative litigants could simply allege "enterprises" based on relationships that, even on the face of the allegations, have no connection to the alleged predicate crimes, then virtually any defendant accused of fraud could be subject to RICO

liability. Such an outcome would essentially negate the statutory requirement of an "enterprise." Because a "conclusory naming of a string of entities does not adequately allege an enterprise," *First Capital*, 385 F.3d at 175 (internal quotation omitted), the complaint must be dismissed on this ground too.

### IV.        The RICO Claims Fail For Lack Of A "Pattern."

In addition, the complaint must be dismissed for the simple reason that plaintiffs have not adequately alleged a "pattern" of racketeering activity. To establish such a "pattern," the Supreme Court has explained, a plaintiff "must show [1] that the racketeering predicates are ***related***, ***and*** [2] that they amount to or pose a threat of ***continued*** criminal activity." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989) (emphasis modified). The complaint fails both of these requirements.

The continuity requirement may be satisfied by either a "closed" or "open" pattern. *See id.* at 241. A "closed" pattern refers to "a series of related predicates extending over a ***substantial*** period of time." *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996) (emphasis added; internal quotation omitted). An "open" pattern, in contrast, need not have extended over a substantial period of time, but must involve "conduct that by its nature projects into the future with a threat of repetition." *Id.* (internal quotation omitted). Both types of patterns reflect RICO's purpose of criminalizing only ***persistent*** criminal activity, not isolated or discrete criminal acts. "Congress was concerned in RICO with long-term criminal conduct," not "sporadic activity." *H.J.*, 492 U.S. at 239, 242; *see also Calcasieu Marine Nat'l Bank v. Grant*, 943 F.2d 1453, 1464 (5th Cir. 1991) ("Short-term criminal conduct is not the concern of RICO."); *Tel-Phonic*, 975 F.2d at 1140 ("RICO reaches activities that amount to or threaten long-term criminal activity.") (internal quotation omitted).

Neither the complaint nor the RICO Case Statement identifies which type of "pattern" is alleged in this case, but neither document adequately pleads either a "closed" or "open" pattern. The complaint alleges six predicate crimes by BP; *see* Compl. ¶¶ 234, 237; the RICO Case Statement alleges seven, *see* RICO Case Statement ¶ 5(c).  Five of the six crimes alleged in the complaint (and six of the seven crimes alleged in the RICO Case Statement) are alleged to have occurred within a 14-month period in 2009-10 and relate specifically to the Macondo well, while the remaining alleged crime is alleged to have occurred almost a decade earlier, on December 1, 2000, and involves BP's submission to the MMS of an allegedly false Regional Oil Response Plan for "the entire Gulf of Mexico."  Compl. ¶ 237(a)-(f); RICO Case Statement ¶ 5(c).

## A.   The Complaint Fails Adequately To Plead A Closed "Pattern."

As an initial matter, the complaint fails adequately to plead a ***closed*** "pattern."  With the exception of BP's submission of an allegedly false Regional Oil Response Plan for "the entire Gulf of Mexico" to the MMS on December 1, 2000, Compl. ¶ 237(a); RICO Case Statement ¶ 5(c)(i), the remaining alleged predicate acts fail to establish the requisite "continuity" to constitute a pattern.  Plaintiffs' allegations of communications with the MMS relating to the Macondo well over a 14-month period clearly do not "extend[] over a substantial period of time" sufficient to constitute a closed-ended pattern.  *Word of Faith*, 90 F.3d at 122; *see also Reuther v. Smith*, No. 01-3625, 2003 WL 1955167, at *10 (E.D. La. Apr. 22, 2003) ("[Seventeen] instances of mail fraud during a 21-month period did not amount to a closed period of continued criminal activity, particularly given the narrow purpose of the alleged scheme and the scheme's focus on a singular victim.") (citing *Efron v. Embassy Suites (P.R.), Inc.*, 223 F.3d 12, 18 (1st Cir. 2000)); *First Capital*, 385 F.3d at 181 ("[T]his Court has never found a closed-ended pattern where the predicate acts spanned fewer than two years."); *Hughes v. Consol-Pa. Coal Co.*, 945 F.2d 594,

611 (3d Cir. 1991) ("We hold that twelve months is not a substantial period of time" sufficient to establish a closed-ended pattern).

The question then becomes whether plaintiffs adequately pleaded a "closed" pattern by simply adding a predicate crime that predates the other predicate crimes by nine years. The answer to that question is no. The outlier predicate crime alleged here arguably may extend the duration of the alleged "pattern" of fraud, but is not sufficiently "related" to the other predicate acts or the alleged RICO "enterprise" to qualify. As the Fifth Circuit has stated, "[t]he relatedness inquiry focuses on the interrelationship of charged RICO predicates, thereby ensuring that a person is not subjected to sanctions for committing … widely separated and isolated criminal offenses." *Heller Fin., Inc. v. Grammco Computer Sales, Inc.*, 71 F.3d 518, 524 (5th Cir. 1996) (internal quotation omitted). Establishing relatedness of predicate acts "require[s] more than an articulable factual nexus"; rather, plaintiffs must plead facts "demonstrating that the alleged predicate acts have the same or similar purposes, results, participants, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 524-25 (internal quotation omitted).

Plaintiffs' allegations cannot establish the requisite relatedness of the alleged 2000 predicate act. Unlike all of the other alleged crimes, this one does not relate to the Macondo well; indeed, BP did not receive a license to drill that well until 2008. *See* Compl. ¶ 57. The most the complaint can say is that BP's 2000 Regional Response Plan "includ[ed] the **area** later drilled by the Deepwater Horizon," Compl. ¶ 237(a) (emphasis added), but that does not mean that the Plan had anything to do with the *Deepwater Horizon* or the Macondo well. In addition, although that crime is alleged to have occurred on December 1, 2000, plaintiffs do not even allege that the relevant "enterprise" through which the "pattern" of predicate crimes was carried

35

out began until 2001, when Transocean purchased R&B Falcon and the *Deepwater Horizon* entered into service. *See* Compl. ¶ 232 ("BP has, **since at least 2001**, used [the BP-Transocean] enterprise to conduct the related acts of mail and wire fraud comprising the pattern of racketeering."); *see also* RICO Case Statement ¶ 8. Because the "pattern" of predicate acts must take place through an "enterprise," the "pattern" by definition cannot predate the "enterprise." *See Banks*, 918 F.2d at 424 (in the absence of any "relationship between [the alleged predicate acts] and the named enterprises ... neither of these [predicate acts] can form part of a pattern of acts underlying the § 1962(c) violation"). Accordingly, plaintiffs may not rely on the alleged 2000 crime to extend the "pattern" time period for "continuity" purposes, and the complaint fails to state a closed pattern of racketeering activity.

**B.    The Complaint Fails Adequately To Plead An Open "Pattern."**

Nor does the complaint adequately plead an ***open*** "pattern." Although the complaint duly recites boilerplate language that the alleged predicate crimes "illustrate a threat of continued racketeering activity," Compl. ¶ 241, that statement does not cross "the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *see also International Bhd. of Teamsters v. Carey*, 297 F. Supp. 2d 706, 716 (S.D.N.Y. 2004) (holding that plaintiff's "factual allegations … cannot support a reasonable inference that the enterprise would have continued … or that it posed a ***specific*** threat of future criminal activity") (emphasis added); *Purchase Real Estate Group Inc. v. Jones*, No. 05-10859, 2010 WL 1837809, at *11 (S.D.N.Y. Apr. 30, 2010) (holding that plaintiffs' "conclusory assertions" that the predicate acts were the defendants' "regular way of conducting business" were insufficient because plaintiffs did not allege "either that Defendants had attempted to continue perpetuating the scheme against Plaintiffs or that Defendants had attempted to defraud others using a similar scheme"); *Amos v. AAA Mid-Atl., Inc.*, No. 97-1105, 1997 WL 33427089, at *8 (D. Md. Nov. 26, 1997) ("Plaintiffs' conclusory allegations of a threat

of future criminal activity is nothing more than a bald assertion that if the Defendants are not stopped, they are likely to sin again.").

Given that the events at issue here spawned intense scrutiny of the safety of offshore drilling operations, and an entire revamping of the federal regulatory scheme governing such operations, it is simply not plausible for plaintiffs to assert that the past wrongdoing alleged in the complaint presents a "*specific* threat of repetition extending indefinitely into the future." *Word of Faith*, 90 F.3d at 122 (emphasis added; internal quotation omitted); *see generally* RICO Case Statement ¶ 3 ("The MMS was reorganized as the Bureau of Ocean Energy Management, Regulation and Enforcement (BOEMRE) on June 18, 2010."); U.S. Dep't of Interior, *Press Release: Salazar Launches Safety & Environmental Protection Reforms to Toughen Oversight of Offshore Oil and Gas Operations* (May 11, 2010), available at *http://www.doi.gov/news/pressreleases/Salazar-Launches-Safety-and-Environmental-Protection-Reforms-to-Toughen-Oversight-of-Offshore-Oil-and-Gas-Operations.cfm*; U.S. Dep't of Interior, *Press Release: Salazar Divides MMS's Three Conflicting Missions* (May 19, 2010), available at *http://www.doi.gov/news/pressreleases/Salazar-Divides-MMSs-Three-Conflicting-Missions.cfm*; U.S. Dep't of Interior, *Press Release: Salazar Announces Regulations to Strengthen Drilling Safety, Reduce Risk of Human Error on Offshore Oil and Gas Operations* (Sept. 30, 2010), available at *http://www.doi.gov/news/pressreleases/Salazar-Announces-Regulations-to-Strengthen-Drilling-Safety-Reduce-Risk-of-Human-Error-on-Offshore-Oil-and-Gas-Operations.cfm*.

Nor can plaintiffs establish an open-ended pattern by making vague and conclusory allegations that "BP has a history of cutting corners on safety to reduce operating costs."  Compl. ¶ 177; *see also id.* ¶¶ 176, 178-88, 241.  Without specific facts demonstrating how the alleged

Case 2:10-md-02179-CJB-DPC   Document 1437-1   Filed 02/28/11   Page 50 of 62

predicate crimes of mail and wire fraud are part of BP's "regular way of doing business," such allegations are legally insufficient to state a continuous pattern of racketeering activity under well-established case law.  *See, e.g.*, *Word of Faith*, 90 F.3d at 123-24 (holding that plaintiff had failed to establish that fraudulent conduct was part of the defendant's "regular pattern of conducting business" because plaintiff had not "plead[ed] … facts that demonstrate ***predicate illegal acts*** as the defendant's regular way of doing business") (emphasis added).

## V.        The RICO Claims Fail For Lack Of Injury.

The complaint also must be dismissed to the extent plaintiffs allege unrealized diminution in property value and/or unspecified injuries.  RICO does not grant a cause of action to any plaintiff injured in any way by an alleged pattern of racketeering activity.  Instead, RICO's private right of action extends to only those persons injured in their "business or property" by reason of a RICO violation.  18 U.S.C. § 1964(c); *see also Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) ("[T]he plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the [RICO] violation.").[4]

Because the words "business or property" in RICO are the words of a federal statute, their meaning is a matter of federal law to be decided by reference to RICO's text, structure, and purpose.  *See, e.g.*, *Anza*, 547 U.S. at 456 (noting the "'unlikelihood that Congress meant to allow all factually injured plaintiffs to recover'" under RICO) (quoting *Holmes*, 503 U.S. at 266); *DeMauro v. DeMauro*, 115 F.3d 94, 96 (1st Cir. 1997) ("[O]ne might expect federal law to

---

[4] Many courts, including the Fifth Circuit, have described RICO's injury requirement—like RICO's causation requirement—as an element of "standing," explaining that a plaintiff lacks "standing" to sue under RICO without the requisite injury to "business or property."  *See, e.g.*, *Price*, 138 F.3d at 606; *see also Canyon County*, 519 F.3d at 975; *Evans v. City of Chicago*, 434 F.3d 916, 924-25 (7th Cir. 2006).  Again, as noted above in note 1, "standing" in this statutory sense is best viewed as a substantive requirement of the statute, not a limitation on a court's subject-matter jurisdiction, so dismissal is warranted under Rule 12(b)(6), not Rule 12(b)(1).

decide whether a given interest, recognized by state law, rises to the level of 'business or property'" and noting that "[w]here to set the 'business or property' threshold depends on federal statutory purpose."); *see also Patterson*, 335 F.3d at 492 n.16 (citing *DeMauro* with approval on this point). The words "business or property" have "a restrictive significance which helps to assure that RICO is not expanded to provide a federal cause of action and treble damages to every tort plaintiff." *Steele v. Hospital Corp. of Am.*, 36 F.3d 69, 70 (9th Cir. 1994) (internal quotation and citation omitted). Thus, although property interests are generally defined by state law, not every property interest that may be recognized by state law gives rise to a "business or property" interest protected by RICO. "[E]ven though courts may look to state law to determine, for RICO purposes, whether a property interest exists, it does not follow that any injury for which a plaintiff might assert a state law claim is necessarily sufficient to establish a claim under RICO." *Price*, 138 F.3d at 607. In other words, a "business or property" interest protected by state law is ***necessary***, but not ***sufficient***, to establish a "business or property" interest protected by RICO.

In particular, amorphous or unrealized injuries, such as "[i]njury to mere expectancy interests or to an intangible property interest," are not cognizable under RICO, ***regardless*** of whether they are otherwise cognizable under other sources of law. *Price*, 138 F.3d at 607 (internal quotation omitted). Instead, a RICO plaintiff must allege a "concrete" and "conclusive" injury to "business or property," such as "present, actual damages," including "out-of-pocket expenditures." *Taxable Mun. Bond*, 51 F.3d at 523 (internal quotation omitted); *see also Canyon County*, 519 F.3d at 975 ("Our circuit requires that a plaintiff asserting injury to property allege ***concrete*** financial loss.") (emphasis added; internal quotation omitted); *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006) ("A RICO plaintiff only has standing if, and can only

recover to the extent that, he has been injured in his business or property by the conduct constituting the RICO violation, and only when his or her actual loss becomes *clear and definite*.") (emphasis added; internal quotation omitted); *Regions Bank v. J.R. Oil Co.*, 387 F.3d 721, 728 (8th Cir. 2004) ("[A] showing of injury requires proof of *concrete* financial loss, and not mere injury to a valuable intangible property interest.") (emphasis added; internal quotation omitted); *Patterson*, 335 F.3d at 492 n.16 ("A plaintiff may not sue under RICO unless he can show *concrete* financial loss.") (emphasis added).

The complaint here fails adequately to plead, at least in part, the injury to "business or property" required by RICO.  That point is perhaps most obvious with respect to named plaintiff Rinke, who owns a penthouse condominium in Pensacola Beach, Florida, and alleges that "[d]ue to the Spill," he "has suffered the loss, damage and diminution in value of his condominium property abutting the Gulf of Mexico."   Compl. ¶ 8; *see also* RICO Case Statement ¶ 4. Conspicuously, the complaint does *not* allege that Rinke was either forced to sell his condominium at a lower price than he otherwise could have obtained, or has any desire to sell the condominium now or in the future.   Thus, Rinke at most alleges an *unrealized* diminution in property value.  But, as the Fifth Circuit and other courts have recognized, such an unrealized injury does not qualify as an injury to "business or property" under RICO.  *See*, *e.g.*, *Taxable Mun. Bond*, 51 F.3d at 523 (noting that the "financial loss necessary for RICO standing" does not exist where "[t]he only injury [the plaintiff] has alleged is a decrease in the value of her property, and not any out-of-pocket expenditures as a direct or indirect result of the RICO scheme") (internal quotation omitted); *In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 155 F. Supp. 2d 1069, 1091 (S.D. Ind. 2001) ("As numerous appellate and district courts have held ... RICO affords a monetary remedy only to plaintiffs who have *actually* realized the diminished

value [of their property] ... and not to those who allege a risk (or even a probability) or such loss.") (emphasis added).

Similarly, the alleged loss of *future* earnings is not a "concrete" injury cognizable under RICO.  *See, e.g.*, *Taxable Mun. Bond*, 51 F.3d at 523 (noting that "injury in the form of lost business commissions" was "too speculative to confer standing, because [plaintiff] only allege[d] that he would have lost commissions *in the future*, and not that he ha[d] lost any yet") (emphasis added; internal quotation omitted).  By definition, such an alleged loss is nothing more than the loss of an expectancy interest—namely, the expectation that one will be able to make money in the future.  *See, e.g.*, *Price*, 138 F.3d at 607 ("Injury to mere expectancy interests ... is not sufficient to confer RICO standing."); *Fisher v. Halliburton*, No. 05-1731, 2009 WL 5170280, at *5 (S.D. Tex. Dec. 17, 2009) (claim for "lost future compensation" is injury to "an expectancy interest" that "does not constitute an 'injury to business or property' under 18 U.S.C. § 1964(c)").

Plaintiffs' failure to come to grips with RICO's injury to "business or property" requirement is equally clear with respect to the putative class.  Although the issue of class certification is not presently before the Court, the complaint proposes a class that includes, *inter alia*, a category of "Recreation Plaintiffs" ("Recreational sports fishermen, recreational divers, beachgoers, and recreational boaters"), and a category of "Subsistence Plaintiffs" ("Persons who utilize natural resources for subsistence").  RICO Case Statement ¶ 4.  Needless to say, such persons have suffered no injury to their "business or property" by virtue of the RICO violations alleged here.

In addition, the complaint must be dismissed to the extent plaintiffs allege unspecified "loss" of, or "damage" to, their property.  Thus, for example, the complaint alleges that plaintiff

Rinke suffered the "loss" and "damage" of his penthouse condominium, Compl. ¶ 8; *see also* RICO Case Statement ¶ 4, but provides no clue as to what such "loss" or "damage" might be. Similarly, plaintiffs Roland and Barbara Hingle, commercial shrimpers, allege that they lost "property," as well as "earnings," Compl. ¶ 10; *see also* RICO Case Statement ¶ 4, but do not further develop the nature and circumstances of that alleged "loss" to "property." Such conclusory allegations of injury, which simply parrot the language of the statute without any factual specificity, do not satisfy bedrock federal pleading requirements. *See Iqbal*, 129 S. Ct. at 1949 ("[U]nadorned, the-defendant-unlawfully-harmed-me accusation[s]" fail federal pleading requirements); *Price*, 138 F.3d at 606 ("[P]laintiffs' conclusional allegations, unaccompanied by assertions of even general facts to show injury, fail to satisfy the RICO standing requirement."). To be sure, the complaint generally alleges that "oil and other contaminants," "pieces of the destroyed Deepwater Horizon vessel," and oil-spill-response activities have caused damage to "private properties throughout the Coastal Zone." Compl. ¶ 212. But the complaint fails to link such generalized allegations of injury to any of the named plaintiffs, and thus these allegations do nothing to establish the named plaintiffs' injury.

## VI.  The RICO Claims Fail For Lack Of A Conspiracy.

Just as plaintiffs' substantive claim under 18 U.S.C. § 1962(c) fails as a matter of law, so too do plaintiffs' claims of conspiracies under § 1962(d) to violate both § 1962(c) and § 1962(a). *See* Compl. ¶¶ 243-47 (alleging conspiracy to violate § 1962(c)); *id.* ¶¶ 248-51 (alleging conspiracy to violate § 1962(a)). These conspiracy counts fail for two separate and independent reasons. *First*, the complaint fails to plead any facts regarding the alleged agreements that form the basis for the alleged conspiracies. And *second*, the conspiracy allegations necessarily fall along with the substantive violations that are the object of the alleged conspiracies. Each of these reasons is discussed in turn below.

42

## A. The Complaint Fails Adequately To Plead Any Agreement Among Conspirators.

As a threshold matter, the complaint fails adequately to plead facts relating to any unlawful agreement among the alleged conspirators, BP and Transocean.  Rather, the complaint pleads in conclusory fashion that "BP … conspir[ed] with Transocean to engage in the predicate acts alleged to form the violation of 18 U.S.C. § 1962(*c*)," that "BP … conspir[ed] with Transocean to engage in the predicate acts alleged to form the violation of 18 U.S.C. § 1962(*a*)," and that "BP and Transocean both agreed to the objective" of these conspiracies.  Compl. ¶¶ 245, 249 (emphasis added); *see also* RICO Case Statement ¶ 3 (Transocean entities "participated and conspired to participate in overt acts in furtherance of the pattern of racketeering alleged below").  Such bare-bones recitation of the legal elements of a conspiracy claim, unsupported by any *factual* allegations, does not satisfy bedrock federal pleading requirements.  *See Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 570.

After all, an agreement to commit an unlawful act is the crux of a conspiracy.  *See, e.g.*, *United States v. Dillman*, 15 F.3d 384, 391-92 (5th Cir. 1994).  Thus, to prove a RICO conspiracy, the plaintiff "must demonstrate (1) that two or more people *agreed* to commit a substantive RICO offense and (2) that [the defendant] knew of and *agreed* to the overall objective of the RICO offense."  *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 239 (5th Cir. 2010) (emphasis added; internal quotation omitted).  While such an agreement may be established by circumstantial evidence, *see, e.g.*, *id.* at 240 n.19, it must be pleaded by reference to some plausible facts, *see*, *e.g.*, *Iqbal*, 129 S. Ct. at 1950-51; *Twombly*, 550 U.S. at 557; *see generally American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1295-96 (11th Cir. 2010) (affirming dismissal of RICO conspiracy claim on the pleadings for failure to allege sufficient

43

facts regarding an agreement); *Crowe*, 43 F.3d at 206 (same); *Tel-Phonic*, 975 F.2d at 1140-41 (same).

Here, the complaint fails to allege a single fact to support the existence of an unlawful agreement between BP and Transocean.  To the extent the complaint merely parrots the legal standard, it accomplishes nothing.  "In analyzing the conspiracy claim under the plausibility standard, *Iqbal* instructs us that our first task is to eliminate any allegations in Plaintiffs' complaint that are merely legal conclusions."  *American Dental*, 605 F.3d at 1295 (citing *Iqbal*, 129 S. Ct. at 1950); *see also Twombly*, 550 U.S. at 557 ("[A] conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."); *Crowe*, 43 F.3d at 206 ("While [the plaintiff] has pled the conclusory allegation that the defendants herein 'conspired,' nowhere does he allege facts implying any agreement to commit predicate acts of racketeering.").

Beyond such conclusory allegations of "conspiracy," the complaint alleges that BP was listed as Transocean's "significant customer," and that the parties had a series of contracts for operating oil rigs in the Gulf of Mexico.  *See* Compl. ¶¶ 65, 184-85.  But parallel conduct among putative conspirators, absent a plausibly alleged "meeting of the minds," does not establish a conspiratorial agreement.  *Twombly*, 550 U.S. at 557 ("[W]hen allegations of parallel conduct are set out ... they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action."); *American Dental*, 605 F.3d at 1294 ("*Twombly* forecloses any possibility that Plaintiffs' allegations of parallel conduct plausibly suggest a conspiracy.").  Here, the alleged conduct of BP and Transocean is at least as indicative of independent action as a conspiracy, and thus the conspiracy allegations do not cross "'the line from conceivable to plausible.'"  *Id.* at 1296 (quoting *Twombly*, 550 U.S. at 557).

### B.     The Conspiracy Counts Fall Along With The Substantive Counts.

In any event, the complaint fails adequately to plead a RICO conspiracy claim for the simple reason that the complaint fails to state a claim under either of the two substantive RICO provisions, § 1962(c) and § 1962(a), that are the object of the alleged conspiracies.   As the Supreme Court has explained, "[a] conspirator must intend to further an endeavor *which, if completed, would satisfy all of the elements of a substantive criminal offense*."  *Salinas v. United States*, 522 U.S. 52, 65 (1997) (emphasis added).   Accordingly, if plaintiffs cannot adequately plead the elements of a substantive RICO offense, it follows that they cannot adequately plead a RICO conspiracy.   A "failure to plead the requisite elements of either a § 1962(a) or a § 1962(c) violation implicitly means that [the plaintiffs] cannot plead a conspiracy to violate either section."  *Nolen*, 293 F.3d at 929 (internal quotation omitted); *see also Abraham v. Singh*, 480 F.3d 351, 357 (5th Cir. 2007) (allowing conspiracy claim to proceed as to § 1962(c) claim, which survived a motion to dismiss, but not § 1962(a) or (b) claims, which did not); Gregory P. Joseph, *Civil RICO: A Definitive Guide* 168 (3d ed. 2010) ("[T]he conspiracy claim is only as valid as the claim of underlying violation of § 1962(a), (b), or (c).").

The foregoing sections of this brief have already explained why the complaint fails adequately to plead a violation of § 1962(c).   The complaint also fails adequately to plead a violation of § 1962(a).   Indeed, the complaint does not even *purport* to plead a violation of § 1962(a).   That omission is no oversight: plaintiffs cannot state a claim under § 1962(a) as a matter of law.   And because plaintiffs cannot plead a substantive claim under § 1962(a), they cannot plead a conspiracy under § 1962(d) to violate § 1962(a).

"Reduced to plain English," subsection (a) states "'a person who has received income from a pattern of racketeering cannot invest that income in an enterprise.'"  *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 228 n.2 (5th Cir. 2003) (quoting *Burzynski*, 989 F.2d at

45

741).  The crux of the violation, thus, is the ***investment*** of the unlawfully obtained income in the enterprise, and a § 1962(a) plaintiff accordingly must allege injury "flow[ing] from the use or investment of racketeering income," as opposed to injury "flow[ing] from the predicate acts themselves."  *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 441, 443 (5th Cir. 2000); *see also Abraham*, 480 F.3d at 356-57; *Nolen*, 293 F.3d at 929-30; *Crowe*, 43 F.3d at 205; *Parker*, 972 F.2d at 584.

Here, plaintiffs do not allege that BP "received any income" from the alleged racketeering or "invest[ed]" any such income in the "enterprise," 18 U.S.C. § 1962(a); rather, they allege that BP ***saved itself*** time and money, *see* Compl. ¶¶ 4-5, 33, 78-80, 88-89, 98, 104-05, 181, 188, 237(d).  Nor, for that matter, do plaintiffs allege that their injuries flow from the "investment" of any "income" in an "enterprise"; rather, they allege that their injuries flow from the oil spill.  *See Id.* ¶¶ 8-12.  Accordingly, plaintiffs fail to state a claim under § 1962(a) as a matter of law—which may explain why the complaint pleads no such claim.  Plaintiffs accomplish nothing by alleging that "BP received income, directly or indirectly from the pattern of racketeering activity previously described, and has used or invested such income, directly or indirectly, in the establishment or operation of its association-in-fact enterprise with Transocean." *Id.* ¶ 249.  That boilerplate allegation simply parrots the legal standard, and fails to provide any factual basis for a legally cognizable claim under § 1962(a).  *See*, *e.g.*, *Iqbal*, 129 S. Ct. at 1949-51; *Twombly*, 550 U.S. at 557; *Abraham*, 480 F.3d at 356-57; *Nolen*, 293 F.3d at 928.

## VII.        The Florida RICO Claims Fail.

Finally, plaintiffs' claims under the Florida RICO statute, Fla. Stat. §§ 895.03 *et seq.*, fail as a matter of law for the same reasons as do their claims under the federal RICO statute.  "Given the similarity of the state and federal [RICO] statutes, Florida courts have looked to the federal

46

courts for guidance in construing RICO provisions." *Gross v. State*, 765 So. 2d 39, 42 (Fla. 2000) (*per curiam*).   In particular, the Florida courts have interpreted their RICO statute's proximate causation, enterprise, and pattern requirements by reference to federal law. *See, e.g.*, *Bortell v. White Mountains Ins. Group, Ltd.*, 2 So. 3d 1041, 1047 (Fla. Dist. Ct. App. 2009) (proximate causation) (citing, *inter alia*, *Anza*, 547 U.S. at 458, and *Holmes*, 503 U.S. at 268); *Palmas y Bambu, S.A. v. E.I. Dupont de Nemours & Co.*, 881 So. 2d 565, 574-78 (Fla. Dist. Ct. App. 2004) (enterprise); *Shimek v. State*, 610 So. 2d 632, 635 (Fla. Dist. Ct. App. 1992) (pattern) (citing, *inter alia*, *H.J.*, 492 U.S. 229).   Thus, plaintiffs' Florida RICO claims should be dismissed along with their federal RICO claims. *See, e.g.*, *Johnson Enters.*, 162 F.3d at 1319 ("perceiving no reason for applying a different rationale" to Florida RICO claims than federal RICO claims, and dismissing them all); *All Care Nursing Servs., Inc. v. High Tech Staffing Servs., Inc.*, 135 F.3d 740, 745 (11th Cir. 1998) ("No reason has been presented to us to justify [a different result] under state and federal RICO statutes."); *Florida Evergreen Foliage v. E.I. Dupont de Nemours & Co.*, 336 F. Supp. 2d 1239, 1258-68 (S.D. Fla. 2004) (denying as futile plaintiffs' motion to amend their complaint to add Florida RICO claims in light of the failure of their federal RICO claims).

In addition, the Florida RICO claims must be dismissed to the extent that plaintiffs claim to have been injured outside of Florida.   Only two of the named plaintiffs, Rinke and Sheen, claim to have been injured in Florida. *See* Compl. ¶¶ 8, 11.   None of the other named plaintiffs—much less the entire putative class of "[a]ll individuals and entities residing or owning property in the United States," ¶ 216—allege any connection whatsoever to Florida.   The Florida RICO statute simply does not apply to such persons.   As an initial matter, Florida law applies a strong presumption against extraterritoriality, *see, e.g.*, *Ford Motor Credit Co. v.*

*Sheehan*, 373 So. 2d 956, 958 (Fla. Dist. Ct. App.), *cert. dismissed*, 379 So. 2d 204 (Fla. 1979); *Rolls v. Bliss & Nyitray, Inc.*, 408 So. 2d 229, 235-36 (Fla. Dist. Ct. App. 1981); *Burns v. Rozen*, 201 So. 2d 629, 630-31 (Fla. Dist. Ct. App. 1967); *Jackson Lumber Co. v. Walton County*, 116 So. 771, 786 (Fla.), *appeal dismissed*, 296 U.S. 667 (1928), and there is nothing in the Florida RICO statute to overcome that presumption.  In any event, the Florida RICO statute could not constitutionally be applied to claims with no relationship to Florida.  *See, e.g.*, *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 818 (1985); *Edgar v. MITE Corp.*, 457 U.S. 624, 643 (1982); *Home Ins. Co. v. Dick*, 281 U.S. 397, 410 (1930); *cf. Doe v. O'Connell*, 146 S.W.3d 1, 4 (Mo. Ct. App. 2004) ("Florida's RICO law cannot be applied extraterritorially").

## CONCLUSION

Precisely because civil RICO, which authorizes treble damages and attorneys' fees, is such a potent weapon, it is sharply limited in scope.  Not every fraud case is a RICO case, and certainly not every tort case is a RICO case.  The complaint in this case represents a transparent effort to dress up a tort case as a RICO case.  As explained above, that effort fails on numerous independent legal grounds.  Accordingly, the consolidated RICO complaint should be dismissed on the pleadings as a matter of law.

February 28, 2011

Respectfully submitted,

By: /s/ Don K. Haycraft
Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, LA   70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

and

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL   60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Christopher Landau, P.C.
Jennifer K. Hardy
Peter A. Farrell
Mark E. Champoux
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, DC   20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

Robert C. "Mike" Brock
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC   20004-2401
Telephone: (202) 662-6000
Facsimile: (202) 662-6291

**Attorneys for BP p.l.c., BP America
Production Company and BP Exploration &
Production Inc.**

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 28th day of February, 2011.

*/s/ Don K. Haycraft*
Don K. Haycraft