**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| | : | |
| IN RE: OIL SPILL by the OIL RIG | : | MDL NO. 2179 |
| "DEEPWATER HORIZON" in the | : | |
| GULF OF MEXICO, on | : | |
| APRIL 20, 2010 | : | |
| | : | SECTION: J |
| | : | |
| | : | |
| THIS DOCUMENT RELATES TO: | : | JUDGE BARBIER |
| 2:10-cv-04536-CJB-SS | : | MAG. JUDGE SHUSHAN |
| | : | |
| Defendant. | : | |
| | : | |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO**
**SIERRA CLUB, INC.'S MOTION TO INTERVENE**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION.................................................................................................................. 1

BACKGROUND .................................................................................................................. 2

ARGUMENT ....................................................................................................................... 3

I.  SIERRA CLUB CANNOT SATISFY THE REQUIREMENTS OF RULE 24(a) FOR
   INTERVENTION OF RIGHT. ...................................................................................... 3

   A.  Intervention of Right Exists Neither Under CWA Section 311 Nor OPA. ......... 4

   B.  Even If Rule 24(a)(2) Intervention Were Open to the Sierra Club,
       Despite the Confinement of CWA Section 311 and OPA to Government
       Enforcement, It Could Not Make the Requisite Showings to Invoke It. ............ 7

       1.  The Sierra Club Has Not Demonstrated a Direct, Substantial and Legally
           Protectable Interest in the Subject Matter of the Litigation .............................. 7

       2.  The Outcome of This Case Will Not Impair Sierra Club's Interests............. 15

       3.  Sierra Club's Interests Are Adequately Represented by the Government...... 17

II.  PERMISSIVE INTERVENTION IS NOT APPROPRIATE ........................................ 23

CONCLUSION ................................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Bush v. Viterna,*
    740 F.2d 350 (5th Cir. 1984) ........................................................................ 17, 25

*Clark v. Putnam County,*
    168 F.3d 458 (11th Cir. 1999) ...................................................................... 20, 21

*Coalition of Ariz./N.M. Counties for Stable Economic Growth v.  Department of Interior,*
    100 F.3d 845 (10th Cir. 1996) ............................................................................ 19

*Compare Sierra Club v. EPA,*
    995 F.2d 1478 (9th Cir. 1993) ............................................................................ 10

*Edwards v. City of Houston,*
    78 F.3d 983 (5th Cir. 1996) ................................................................................ 18

*Ehlmann v. Kaiser Found. Health Plan of Tex.,*
    198 F.3d 552 (5th Cir. 2000) ................................................................................ 7

*ENSCO Offshore Co. v. Salazar,*
    No. 10-1941 (E.D. La. filed July 9, 2010) ......................................................... 13

*Farouk Systems, Inc. v. Costco Wholesale Corp.,*
    No. 09-cv-3499, 2010 WL 1576690 (S.D. Tex. Apr. 20, 2010) ............................ 24

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,*
    528 U.S. 167 (2000) ...................................................................................... 11, 12

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.,*
    484 U.S. 49 (1987) ............................................................................................... 3

*Haspel & Davis Milling & Planting Co. Ltd. v. Bd. of Levee*
    *Comm'rs of the Orleans Levee Dist.,*
    493 F.3d 570 (5th Cir. 2007) ................................................................... 17, 18, 19

*Hazardous Waste Treatment Council v. South Carolina,*
    945 F.2d 776 (4th Cir. 1991) .............................................................................. 19

*Heaton v. Monogram Credit Card Bank of Ga.,*
    297 F.3d 416 (5th Cir. 2002) ................................................................................ 7

*Holly Ridge Assocs., LLC v. N.C. Dep't of Envt. & Natural Res.,*
    648 S.E.2d 830 (N.C. 2007) ............................................................................... 10

*Hornbeck Offshore Servs., LLC v. Salazar,*
 No. 10-1663 (E.D. La. filed June 7, 2010) .......................................................................... 13

*In re Penn Central Commercial Paper Litig.,*
 62 F.R.D. 341 (S.D.N.Y.1974)
 aff'd, 515 F.2d 505 (2d Cir. 1975) ...................................................................................... 16

*Kleissler v. Forest Service,*
 157 F.3d 964 (3d Cir. 1998) .................................................................................... 22, 23

*Kneeland v. NCAA,*
 806 F.2d 1285 (5th Cir. 1987) ............................................................................................. 23

*League of United Latin Am. Citizens, Council No. 4434 v. Clements,*
 884 F.2d 185 (5th Cir. 1989) ............................................................................................... 24

*Lujan v. Defenders of Wildlife,*
 504 U.S. 555 (1992) ............................................................................................................... 8

*Mausolf v. Babbitt,*
 85 F.3d 1295 (8th Cir. 1996) ......................................................................................... 9, 19

*Nat'l Wildlife Fed. v. U.S. Army Corps of Eng'rs,*
 188 F.R.D. 381 (D. Or. 1999) ............................................................................................. 10

*NRDC v. NRC,*
 578 F.2d 1341 (10th Cir. 1978) .......................................................................................... 12

*Ohio Valley Envtl. Coalition v. U.S. Army Corps of Eng'rs,*
 243 F.R.D. 253, 257 (S.D. W.Va. 2007) ............................................................................... 9

*Pierson v. United States,*
 71 F.R.D. 75 (D. Del. 1976) ............................................................................................... 21

*S.E.C. v. Bear, Stearns & Co., Inc.,*
 No. 03 Civ. 2943 WHP, 2003 WL 22000340 (S.D.N.Y.  Aug. 25, 2003) .............................. 25

*Sagebrush Rebellion, Inc. v. Watt,*
 713 F.2d 525 (9th Cir. 1983) ................................................................................................. 9

*San Juan County, Utah v. United States,*
 503 F.3d 1163 (10th Cir. 2007) ............................................................................................. 9

*Sierra Club .v Morton,*
 405 U.S. 727 (1972) ............................................................................................................... 9

*Sierra Club v. Espy,*
 18 F.3d 1202 (5th Cir. 2004) ................................................................................................. 7

*Sierra Club, Inc. v. Leavitt*,
  488 F.3d 904 (11th Cir. 2007) ........................................................... 21

*Southeast Alaska Conservation Council v. Watson*,
  701 F.2d 186 (Table) (9th Cir. 1983)................................................ 17

*Steel Co. v. Citizens for a Better Environment*,
  523 U.S. 83 (1998)............................................................................ 12

*Stotts v. Memphis Fire Dep't*,
  679 F.2d 579 (6th Cir. 1982) ........................................................... 15

*The Aransas Project v. Shaw*,
  No. C-10-75, 2010 WL 2522415 (S.D. Tex.),
  *aff'd* 2010 WL 5184792 (5th Cir. Dec. 22, 2010) .................................. 24

*United States v. Carpenter*,
  298 F.3d 1122 (9th Cir. 2002) ......................................................... 14

*United States v. City of Niagara Falls*,
  103 F.R.D. 164 (W.D.N.Y. 1984)..................................................... 10

*United States v. Hooker Chems. & Plastics Corp.*,
  749 F.2d 968 (2d Cir. 1984) .................................................... 4, 6, 21

*United States v. Metro. St. Louis Sewer Dist.*,
  569 F.3d 829 (8th Cir. 2009) ....................................................... 4, 5

*United States v. Oregon*,
  839 F.2d 635 (9th Cir. 1988) ...................................................... 15, 16

*United States v. Thorson*,
  219 F.R.D. 623 (W.D. Wisc. 2003) .................................................. 10

*Utah Association of Counties v. Clinton*,
  255 F.3d 1246 (10th Cir. 2001) .................................................... 9, 19

**Statutes**

28 C.F.R. § 50.7 ....................................................................................... 15

33 U.S.C. § 1321(b)(7) ............................................................................... 2

33 U.S.C. § 1364 ....................................................................................... 6

33 U.S.C. § 1365(b)(1)(B) .......................................................................... 4

33 U.S.C. § 1365(f).................................................................................... 11

33 U.S.C. § 2702(a) ........................................................................................................ 2

**Other Authorities**

Fed. R. Civ. P. 24 ........................................................................................................ 14

Fed. R. Civ. P. 24(a) ................................................................................................ 3, 6, 7

Fed. R. Civ. P. 24(a)(1) ............................................................................................ 3, 24

Fed. R. Civ. P. 24(a)(2) ........................................................................................... passim

Fed. R. Civ. P. 24(b) ..................................................................................................... 23

Fed. R. Civ. P. 24(b)(1)(B) ............................................................................... 23, 24, 25

Fed. R. Civ. P. 24(b)(2) ................................................................................................. 25

Fed. R. Civ. P. 24(b)(3) ................................................................................................. 24

S. Rep. No. 92-414, at 66 (1971),
    *reprinted in* 1972 U.S.C.C.A.N. 3668 ...................................................................... 5

## INTRODUCTION

Sierra Club's Motion to Intervene is fatally flawed because it ignores two fundamental elements of the underlying claims.  **First**, Section 311 of the Clean Water Act ("CWA") allows the **United States**, and only the United States, to seek civil penalties for discharges of oil to waters of the United States; Section 311 claims encompass no "citizen interests" that require or justify intervention.  **Second**, the Oil Pollution Act ("OPA") is essentially a compensation statute under which any party with a cognizable injury may bring an individualized action for damages. If Sierra Club somehow had a claim of its own for OPA damages against Defendant BP Exploration & Production Inc. ("BP"), it would be empowered to assert such a claim consistent with OPA's presentment requirement (as many others are attempting to do), and it need not be seeking to intervene in a damages action brought and owned exclusively by the United States.

Even if the Section 311 and OPA claims of the United States were susceptible to intervention under the Federal Rules of Civil Procedure, Sierra Club has failed to satisfy the requirements for either intervention of right or permissive intervention.  Among other defects, the Sierra Club can claim no direct, substantial, or legally protectable interest in the subject matter of the litigation and it is clear that the United States adequately represents any indirect interests the Sierra Club might have here.

Critical to the Court's assessment of this intervention motion should be that allowing intervention would unduly complicate and needlessly delay the resolution of this already extraordinarily complex multidistrict litigation, among the most complex such proceedings ever undertaken.  There is no well-founded fear here that the litigation initiated by the federal government will not be conducted fairly, transparently, and in a manner that is fully protective of the public interest.  Hence, Sierra Club's requested intervention is unnecessary to protect the

1

public interest.   In addition, allowing intervention on the amorphous Sierra Club theories presented, permissive or otherwise, threaten to open a veritable flood gate of requests to intervene from an untold number of organizations or individuals based on similarly tenuous grounds.  With such added complexity and judicial burden hanging in the balance, there is no upside in the intervention analysis that could tip the calculus in favor of the Sierra Club.

Accordingly, BP opposes the Sierra Club's Motion to Intervene and, for the reasons set forth below, this Court should deny its Motion.

## BACKGROUND

The United States commenced this action on December 15, 2010 against BP Exploration & Production Inc., Anadarko Exploration & Production LP, Anadarko Petroleum Corporation, MOEX Offshore 2007 LLC, Triton Asset Leasing GMBH, Transocean Holdings LLC, Transocean Offshore Deepwater Drilling Inc., Transocean Deepwater Inc., and QBE Underwriting Ltd., Lloyd's Syndicate 1036 (collectively ("Defendants")).   The United States seeks: (1) civil penalties from Defendants of up to $1,100 per barrel of oil discharged as a result of the Deepwater Horizon spill in the Gulf of Mexico (or as much as $4,300 per barrel, if gross negligence or willful misconduct can be demonstrated in relation to particular Defendants), *see* CWA Section 311(b)(7), 33 U.S.C. § 1321(b)(7); and (2) a declaration that Defendants are jointly and severally liable without limitation under Section 1002(a) of OPA, 33 U.S.C. § 2702(a), for all removal costs and damages arising from the spill.  *See* Compl. at 26 (Prayer for Relief ¶¶ 1-2.)  Answers to the United States' Complaint have not yet been filed.

This action is part of MDL 2179, which principally encompasses: (i) claims for private economic losses by 44,972 plaintiffs within the B1 bundle established by PTO No. 11; (ii) claims related to post-explosion clean-up efforts; (iii) claims by state and local entities in Louisiana,

Alabama, and Mexico within the C bundle; and (iv) citizen suit claims within the D1 bundle by a number of organizations and individuals seeking injunctive relief related to the incident.  Under the Court's present schedule, motions to dismiss with respect to these other claims are being filed simultaneously with this opposition to the Sierra Club's intervention motion.  A Limitation Act trial in MDL 2179 also embracing certain other issues is scheduled for February 2012.

On February 7, 2011, Sierra Club filed a Motion to Intervene and Memorandum of Legal Authority in Support of the Motion, seeking intervention of right pursuant to Federal Rule of Civil Procedure 24(a)(2) or permissive intervention pursuant to Rule 24(b).  On February 18, 2011, the Court issued an order setting a deadline for this opposition of February 28, 2011.

## ARGUMENT

## I.    SIERRA CLUB CANNOT SATISFY THE REQUIREMENTS OF RULE 24(a) FOR INTERVENTION OF RIGHT.

Pursuant to Federal Rule of Civil Procedure 24(a), a court must permit a party to intervene where: (1) a federal statute provides an unconditional right to intervene, *see* Fed. R. Civ. P. 24(a)(1); or (2) where the party claims an interest "relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest," *see* Fed. R. Civ. P. 24(a)(2).  Sierra Club plainly lacks an unconditional statutory right to intervene pursuant to Rule 24(a)(1), and it does not seek intervention under that part of the rule.[1]  Rather, relying on, among other things, a generalized

---

[1] Sierra Club acknowledges in a footnote that it cannot bring a citizen suit claim under Section 505(a)(1) of the CWA because the discharge has stopped, and citizen suit action is therefore precluded by the Supreme Court's holding in *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49 (1987).  *See* Sierra Club's Mem. in Support of Mot. to Intervene at 4 n.3, hereinafter "Sierra Club Br."

interest of its members in the use and protection of the Gulf of Mexico region, convoluted theories regarding alleged conflicts of interest within the federal government, and a generic interest in holding the Defendants accountable, Sierra Club argues that it is entitled to intervene as a matter of right pursuant to the Rule 24(a)(2) requirements.  But the Sierra Club does not come close to meeting those requirements.

### A.      Intervention of Right Exists Neither Under CWA Section 311 Nor OPA.

OPA does not include any provision under which a citizen may participate as an intervenor.  And while the CWA does contemplate intervention of right for some cases,[2] the Act does so only in a limited set of circumstances not applicable here.  The Sierra Club will not be able to dispute that Congress provided for citizen suit and citizen intervention as of right only where there is a violation of one of the seven effluent standards or limitations set forth in CWA Section 505(f)[3] or an order to enforce one of those seven specific types of effluent standards or limitations.  *See* BP D1 Mot. to Dismiss at Section I.A.  Intervention as of right cannot be expanded by the courts to the situations in which Congress did not provide for such intervention. *See United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968, 979 (2d Cir. 1984) (finding that the language of Section 505 "clearly refers only to" enforcement of "effluent standards and limitations"); *United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 837 (8th Cir. 2009)

---

[2] *See* Clean Water Act Section 505(b)(1)(B), 33 U.S.C. § 1365(b)(1)(B) (intervention of right where the government has "commenced and is diligently prosecuting" an enforcement action "to require compliance with [a] standard, limitation, or order" of an enumerated type); *see id.* § 1365(f) (enumerating the relevant types of actions that citizens can bring themselves or where they have intervention status of right where government enforcement is occurring).

[3] These are: (1) beginning July 1, 1973, an unlawful act under Section 301(a) (general prohibition against discharging pollutants without a permit); (2) an effluent limitation or other limitation promulgated under Sections 301 and 302 (technology-based and water quality-based effluent limitations); (3) a standard of performance under Section 306 (national standards of performance for new sources); (4) a prohibition, effluent standard or pretreatment standard under Section 307 (effluent standards for toxic pollutants); (5) certification under Section 401; (6) a permit or condition thereof issued under Section 402 (the National Pollutant Discharge Elimination System ("NPDES") permits); and/or (7) a regulation under Section 405 (disposal or use of sewage sludge).  *See* 33 U.S.C. § 1365(f).

4

(noting that a citizen is only able to join a government action to enforce a provision if it would be able to bring that action itself under Section 505(a)).

The best reading of the statute is that the fact that Section 505 provides for intervention of right only in certain enumerated instances indicates that Congress did not intend such a right to exist in other instances. The legislative history makes this clear. For example, the Senate Report for the Federal Water Pollution Control Act Amendments of 1971 (where the citizen suit provision was established) states:

> The Committee has established a provision in the bill that would provide citizen participation in the enforcement of control requirements and regulations established under this Act modeled on the provision enacted in the Clean Air Amendments of 1970. *As in that Act the provision in this bill is carefully restricted to actions where violations of standards and regulations or a failure on the part of officials to act are alleged.*
>
> . . . .
>
> Authority granted to citizens to bring enforcement actions under [Section 505] is *limited to effluent standards or limitations established administratively under the Act*. Such standards or limitation are defined in subsection (f) of Section 505.

S. Rep. No. 92-414, at 66 (1971), *reprinted in* 1972 U.S.C.C.A.N. 3668, 3745, 3747 (emphasis added). Courts have also adopted this view. *See, e.g.*, *Metro. St. Louis Sewer Dist.*, 569 F.3d at 837-38 ("The right to intervene is conferred in the same sentence that limits the rights of citizens who would otherwise bring private enforcement actions, *which suggests that Congress intended to confer that right only on those particular citizens*.") (emphasis added).

Moreover, even if the Court decides not to go so far as to read CWA as entirely eliminating the possibility of intervention of right under Federal Rule of Civil Procedure 24(a)(2) in Clean Water Act situations not involving enforcement of the seven enumerated types of effluent standards or limitations, it must recognize that CWA Section 505(b)(1)(B) sharply

5

constrains the ability to intervene pursuant to Rule 24(a)(2).  For example, in *Hooker Chemicals & Plastics Corp.*, the Second Circuit denied an environmental groups' motion to intervene as of right in a CWA Section 504, 33 U.S.C. § 1364, enforcement action brought by the United States.[4]  749 F.2d at 987-88.  In reaching its decision, the court explained:

> We need not and do not go so far as to hold that Congress impliedly repealed Rule 24(a)(2) for such suits in order to conclude, as we do, that ***intervention as of right in such actions is to be narrowly limited and requires a particularly strong showing of inadequate representation by the applicant for intervention***.  As has been shown above, Congress "carefully restricted" the rights of private persons to bring or to intervene in actions of this sort. . . .  Congress[] felt [the] need to limit citizen participation to enforcement of administratively established standards of liability.  Congress did not intend for private individuals to be able to use the federal courts to substitute a common law or court-developed definition of water quality outside of the elaborate administrative process provided for by these acts.

*Id.* at 987-88 (emphasis added) (citations and internal quotation marks omitted).  The Sierra Club cannot make even a basic showing that the United States is inadequately representing its interests, let alone a heightened showing of that nature.  *See* Section I.B.3., *infra*.

In this case, the United States has not alleged that Defendants violated one of the seven enumerated effluent standards or limitations.  Rather, the United States alleges that Defendants were owners, operators and/or persons in charge of certain facilities and, pursuant to Section 311(b)(7), are liable for civil penalties for discharges of oil to the Gulf of Mexico.  *See* Compl. ¶¶ 64, 70-76.  Section 311 is not enforceable by citizen suit and Congress thus deemed it to be an area for exclusive enforcement by the United States.  *See* BP D1 Mot. to Dismiss at Section I.A. Intervention of right is contrary to that regime.  Accordingly, the Sierra Club is not entitled to intervention of right under Section 505(b)(1)(B) and intervention under Rule 24(a) should

---

[4] Section 504 sets forth the emergency powers of the EPA Administrator, who may, "upon receipt of evidence that a pollution source . . . is presenting an imminent and substantial endangerment . . . bring suit on behalf of the United States . . . to immediately restrain any person causing or contributing to the alleged pollution . . . or to take such other action as may be necessary."  33 U.S.C. § 1364.

similarly be denied.  CWA Section 505(b)(1)(B)'s restrictions are a specific set of intervention rules that control over the general intervention rules of Fed. R. Civ. P. 24(a).  *See, e.g., Ehlmann v. Kaiser Found. Health Plan of Tex.*, 198 F.3d 552, 555 (5th Cir. 2000) ("specific language in a statute rules the general" is a key canon of statutory interpretation).

### B.   Even If Rule 24(a)(2) Intervention Were Open to the Sierra Club, Despite the Confinement of CWA Section 311 and OPA to Government Enforcement, It Could Not Make the Requisite Showings to Invoke It.

Sierra Club's failure to meet the standards Congress specifically established for intervention in CWA enforcement actions is a sufficient basis for denying intervention as of right.  However, even if Rule 24(a)(2) remains potentially available to Sierra Club as a means of intervening in circumstances beyond those expressly provided for by Congress in the CWA, Sierra Club has failed to meet its burden to justify such intervention.  While the Sierra Club correctly cites the Fifth Circuit's four-part test for intervention of right under Rule 24(a)(2),[5] *see* Sierra Club Br. at 6, the Sierra Club's concededly timely motion fails to satisfy the other three of the four elements.  Because failure to satisfy ***any one*** of the four requirements precludes intervention of right, *see Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 2004), this Court must deny the Sierra Club's motion.

### 1.   The Sierra Club Has Not Demonstrated a Direct, Substantial and Legally Protectable Interest in the Subject Matter of the Litigation

The "subject matter" of this case is twofold, *i.e.*, whether Defendants are liable as a result of the *Deepwater Horizon* spill, which ceased in July 2010, for (i) civil penalties to the United States pursuant to CWA Section 311 and (ii) certain damages to the United States under OPA.

---

[5]  These are: (1) the applicant must file a timely application; (2) the applicant must claim an interest in the subject matter of the action; (3) the applicant must show that disposition of the action may impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by existing parties to the litigation.  *See, e.g., Heaton v. Monogram Credit Card Bank of Ga.*, 297 F.3d 416, 422 (5th Cir. 2002).

*See* Gov't Compl. ¶¶ 75-76, 85-86, 91.  Sierra Club argues it possesses four general categories of "interest" in the United States suit: (1) aesthetic and environmental interests; (2) an interest in holding responsible parties accountable; (3) interrelationship of this case to other Sierra Club litigation; and (4) an interest in the disposition of settlement funds.  Sierra Club's asserted "interests" are generalized and diffuse, relating to protection of the Gulf of Mexico area in a non-specific way.  Accordingly, such interests do not directly, substantially, or legally relate to the subject matter of the underlying litigation.

a.  <u>Aesthetic and environmental interests</u>

Sierra Club claims a "legally protectable interest" in the use, protection and enjoyment of the areas impacted by the Gulf spill, but does not establish that this equates in any way to an interest in the Government's collection of penalties under Section 311.  The same is true of the declaratory judgment under OPA that the Government is seeking.   Indeed, Sierra Club acknowledges the subject matter of the Government's claims only insofar as claiming that they have "an interest in ensuring that the responsible parties are held fully accountable for the damages to . . . natural resources and assessing maximum penalties that will deter future acts by . . . Defendants."  Sierra Club Br. at 8.  In support of its argument, the Sierra Club cites cases for the proposition that environmental interests are "legally protectable."  The BP Defendants do not disagree with this premise.  However, the cited cases do not extend legal protection of an interest in the environment to a sufficient Rule 24(a)(2) interest in the United States' potential collection of penalties for past conduct.  In fact, of the six cases cited by Sierra Club, only four involve a Rule 24 motion at all, and none is a CWA or OPA case.[6]  Indeed, we are aware of no case in

---

[6] The cases relied on by Sierra Club are: (1) *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) (challenge to regulation interpreting section 7(a)(2) of the Engendered Species Act to require agencies to consult with the
Footnote continued on next page

which a court has granted a Rule 24(a)(2) motion where the underlying claim arose under OPA.

Moreover, the four Rule 24 cases identified by the Sierra Club are distinguishable from this one in that the "subject matter of the litigation" was prospective or ongoing conduct that bore directly on the intervenors' interest, *i.e.,* the environmental area in question.  Here, the United States has not alleged that Defendants are currently discharging pollutants into the Gulf of Mexico in violation of a permit.  A case involving a current discharge is the only sort of case in which Sierra Club could conceivably have a Rule 24(a)(2) right to intervene.  But no basis at all exists where the United States is seeking penalties and damages for past discharges.

Where courts have granted intervention in CWA cases pursuant to Rule 24(a)(2), the intervenors had established a substantial interest in the specific subject matter of the litigation. *See, e.g.*, *Ohio Valley Envtl. Coalition v. U.S. Army Corps of Eng'rs*, 243 F.R.D. 253, 257 (S.D. W.Va. 2007) (Rule 24(a)(2) interest satisfied where intervenors were potential users of the subject matter of the underlying action — CWA permits associated with mountaintop removal coal mining contested by environmental group); *United States v. Thorson*, 219 F.R.D. 623, 626

---

Footnote continued from previous page

Secretary of the Interior only when agency actions are within the United States or on the high seas, and not for agency actions taken in foreign nations); (2) *Sierra Club .v Morton*, 405 U.S. 727 (1972) (Administrative Procedure Act case in which Sierra Club sought declaratory judgment that a recreational development approved by the Forest Service contravened federal law regarding the preservation of national parks, refuges and game preserves); (3) *San Juan County, Utah v. United States*, 503 F.3d 1163 (10th Cir. 2007) (Federal Land Policy and Management Act case in which county sued to quiet title to a right-of-way, ***but the court denied conservation groups' motion intervene of right***); (4) *Utah Association of Counties v. Clinton*, 255 F.3d 1246 (10th Cir. 2001) (court reversed district court's denial of motion to intervene in challenge to establishment of the Grand Staircase Escalante National Monument and accompanying reservation of 1.7 million acres of federal land pursuant to Antiquities Act, National Environmental Policy Act, the Federal Land Management Act and the Administrative Procedure Act); (5) *Mausolf v. Babbitt*, 85 F.3d 1295 (8th Cir. 1996) (court reversed district court's denial of motion to intervene in Endangered Species Act case challenging Secretary of the Interior's restrictions on snowmobiling in Voyageurs National Park); and (6) *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525 (9th Cir. 1983) (court granted wildlife organization's motion to intervene in challenge to Secretary of the Interior's environmental impact statement regarding the creation of the Snake Birds of Prey National Conservation Area and the Secretary's withdrawal of nearly 500,000 acres from selection under the Desert Lands Act and the Carey Act).  *See* Sierra Club Br. at 7-8.

(W.D. Wisc. 2003) (insurer had Rule 24(a)(2) interest where subject matter of underlying litigation — insured's alleged liability for failure to obtain Section 404 permit — would impact its duty to defend); *Nat'l Wildlife Fed. v. U.S. Army Corps of Eng'rs*, 188 F.R.D. 381, 385 (D. Or. 1999) (intervenors had interest sufficient for Rule 24(a)(2) where relief sought by plaintiffs — declaration that defendant's operation of dam violated the CWA and injunction directing Corps to comply with state water quality standards — would jeopardize intervenors' ability to meet water quality standards).  Sierra Club cites no case — much less a CWA Section 311 or OPA case — in which a court has held that because a party has an interest in the environment generally, it has an interest sufficient to intervene in a penalty action.[7]  *Compare Sierra Club v. EPA*, 995 F.2d 1478 (9th Cir. 1993) (City of Phoenix as permittee was entitled to intervene as of right where plaintiff sought ***promulgation of new water quality standards*** for final pollutant discharge permits); *United States v. City of Niagara Falls*, 103 F.R.D. 164 (W.D.N.Y. 1984) (users of plant charged with discharge violations under CWA satisfied Rule 24(a)(2) because consent decree under negotiation would ***"lock in"*** amounts of pollutants that user could send to the plant for treatment in the future) (emphasis added) (brackets omitted).

b.    Holding responsible parties accountable

Sierra Club also points to its interest in "ensuring that the responsible parties are held fully accountable for the damages to . . . natural resources and assessing maximum penalties that will deter future acts by these Defendants" as amounting to an interest in the subject matter of

---

[7]  The lone case we have found that addressed a prospective intervenor's argument for intervention into a retrospective penalties case premised on a similarly a non-specific, diffuse interest in environmental protection is a state case.  But it fully supports the conclusion that Rule 24(a)(2) does not provide a right of intervention in penalty cases of that nature.  *See Holly Ridge Assocs., LLC v. N.C. Dep't of Envt. & Natural Res.*, 648 S.E.2d 830, 836 (N.C. 2007) (finding that coastal resources association's vague interest in protecting shellfish population from contamination under the state Sedimentation Pollution Control Act did not amount to a "direct interest" in the "property or transaction" at issue in a claim for civil penalties by the state environmental agency).

the litigation. Sierra Club Br. at 8. This argument would allow any person with an interest in the environment (read: "everyone") to intervene in any environmental penalty action and the limited authorization for such intervention in Section 505 of the CWA would be meaningless.

The only legal authority cited by Sierra Club in support of its assertion that an interest in generalized accountability is sufficient to justify intervention, *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167 (2000), did not involve Rule 24, CWA Section 311, or OPA. Rather, environmental groups brought a citizen suit pursuant to Section 505(a)(1), alleging noncompliance by defendant with a NPDES permit.[8] *See id.* at 174-75. Such a claim falls squarely under the definition of "effluent standard or limitation" (a "permit or condition thereof issued under Section 402," and hence is enforceable via CWA citizen suit, *see* 33 U.S.C. § 1365(f)). While the *Laidlaw* Court acknowledged a citizen plaintiff's interest in penalties against a violator, the Court did so in the context of redressability as part of its evaluation of whether plaintiff had standing to seek civil penalties. *See* 528 U.S. at 185. Moreover, the Court noted that the penalties functioned not only to "deter[] future violations, but also to "***abat[e] current violations***." *Id.* at 187.

For a number of reasons, *Laidlaw* is not relevant here. **First**, *Laidlaw* involved the issue of whether citizen suit claims could be brought by an organization when the Government had not acted, not whether an organization could intervene when the Government had already acted. **Second**, as Sierra Club acknowledges, *see* Sierra Club Br. at 4 n.3, there is no current discharge, so any penalties assessed under the CWA, or liability determined under OPA, will not serve to abate a current violation. **Third**, and more fundamentally, an interest in ensuring that future

---

[8] National Pollutant Discharge Elimination System ("NPDES") permits are used to control water pollution by regulating discharge into the waters of the United States. *See generally* BP's B1 Motion to Dismiss.

accidents be deterred is hardly unique to the Sierra Club. *See, e.g.*, *NRDC v. NRC*, 578 F.2d 1341 (10th Cir. 1978) (to qualify for intervention, the asserted interest must be specific, and not merely one shared by the public generally). Indeed, the United States, which brought this action, has precisely the same interest. ***Finally***, *Laidlaw* reaffirmed the Supreme Court's earlier holding in *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 106-07 (1998): "*Steel Co.* established that citizen suitors lack standing to seek civil penalties for violations that have abated by the time of suit." *Laidlaw*, 528 U.S. at 187. That is this case, and the Sierra Club similarly lacks standing to intervene in a suit seeking retrospective penalties to be awarded to the federal Oil Spill Liability Trust Fund. *See Steel Co.*, 523 U.S. at 107 ("[A]lthough a suitor may derive great comfort and joy from the fact that the United States Treasury is not cheated, that a wrongdoer gets his just deserts, or that the Nation's laws are faithfully enforced, that psychic satisfaction is not an acceptable Article III remedy because it does not redress a cognizable Article III injury."). In *Laidlaw*, standing was found to exist where the violation had a risk to recur and the violator had repeatedly exceeded the limits on the permit. Here, the Macondo well is dead. With the Government's cooperation, it was "top killed" and two relief wells were drilled to doubly ensure the well would no longer spill oil. *See* BP D1 Mot. to Dismiss at Section III.

c.    Relation to other Sierra Club litigation

Sierra Club also endeavors to satisfy the "direct and substantial interest" prong of the Rule 24(a)(2) test by arguing that the Government's claims for civil penalties are "related to" other Sierra Club litigation arising out of the *Deepwater Horizon* spill. But to the extent Sierra Club's role in those other actions is appropriate, it is because it holds a direct and substantial interest in those actions. What it cannot do is to bootstrap its interest in those actions into a interest in any and every action arising from the *Deepwater Horizon* incident. It must show a

12

direct interest in any action in which it seeks to become a party, and it has failed to do so here.

For example, Sierra Club identifies two cases, *Hornbeck Offshore Servs., LLC v. Salazar*, No. 10-1663 (E.D. La. filed June 7, 2010) and *ENSCO Offshore Co. v. Salazar*, No. 10-1941 (E.D. La. filed July 9, 2010) in which it intervened as a defendant in support of the federal government in industry challenges to the drilling moratorium issued by the government after the Gulf spill.  *See id.* at 11.  Yet Sierra Club does not articulate why the fact that Rule 24(a)(2) intervention was granted in those cases warrants intervention here.  In any case, neither action is a CWA or OPA case; both assert claims for declaratory and injunctive relief under the APA and OCSLA and are readily distinguishable from the amorphous Rule 24(a)(2) interest claimed here. A declaration that the moratorium is invalid and an injunction against enforcing the moratorium would enable the subject matter of that litigation — offshore drilling — ***to continue***. The United States' civil enforcement action here is retrospective in nature will be unaffected by any outcome in that litigation, whereas resolution of this action has no bearing on the moratorium.

The issues raised in Sierra Club's various challenges to agency action and in support of the drilling moratorium are broadly focused on the regulatory scheme surrounding offshore drilling.  This is not sufficient to create a "direct and substantial" interest in whether BP or the other Defendants may be subject to penalties under the CWA or liable for OPA damages.

d.   <u>Interest in potential settlement</u>

Sierra Club's final claim with respect to the second prong of the Rule 24(a)(2) test is that it has a "substantial interest in any settlement that may result" from the Government's claim. Sierra Club Br. at 12.  Specifically, Sierra Club claims an interest in ensuring that Supplemental Environmental Projects ("SEPs") that theoretically could be established as part of a settlement "address comprehensive restoration of the damaged coastal and marine ecosystems and the

13

future protection of these sensitive resources," and that Sierra Club is "uniquely qualified and situated" to identify appropriate SEPs.  *Id.* at 12-13.[9]  Sierra Club cites no case, nor are we aware of any, that supports the strained proposition that an interest in the disposition of settlement proceeds justifies intervention under Rule 24(a)(2).  Indeed, such a rule would swallow the limitations on intervention in Fed. R. Civ. P. 24.  There are hundreds, if not thousands, of individuals and groups who might contend that they have a keen interest in determining where a SEP might be directed.  Under Sierra Club's unconstrained interpretation of Rule 24(a)(2), they could all intervene, ballooning a manageable action into an unmanageable one.

A SEP is a project not otherwise required by law that a defendant agrees to undertake in settlement so as to mitigate the amount of the penalty.  Sierra Club does not explain how allowing it to intervene in the ***litigation*** would facilitate its interests in connection with SEPs that might be agreed to between the United States and defendants in ***settlement***.  Most importantly, Sierra Club makes no argument that the claimed interest a third party might have to advocate for particular SEPs is a ***legally protectable interest***.

Even without intervenor status, Sierra Club will have ample opportunity to make known its interests with respect to any SEPs.  First off, nothing precludes it from communicating its interests in this regard directly to the United States.  Moreover, any settlement would be subject to a public comment period and a court approval process, which would afford the Sierra Club

---

[9]  In support of this argument, Sierra Club cites *United States v. Carpenter*, 298 F.3d 1122 (9th Cir. 2002), a timeliness case that is inapposite here.  *Carpenter* involved a claim by the Forest Service for declaratory and injunctive relief to stop defendants from trespassing on federal land.  *Id.* at 1124.  The intervenors filed their motion after they learned that the government had ceded a property interest in the land at issue as part of the settlement, thereby signifying to the intervenors that the government did not, in fact, represent their interests.  *See id.* at 1125. The Ninth Circuit reversed the district court's denial of the environmental groups' motion to intervene based on lack of timeliness, finding that parties are entitled to rely on the presumption that the government is representing their interests until they have notice otherwise.  *See id.*

14

and other similarly situated parties ample opportunity to make their views known, before any settlement were approved by the Court.   *See* 28 C.F.R. § 50.7.   Courts have held that the comment period is sufficient to protect the interests of would-be intervenors in any settlement. *See, e.g.*, *Stotts v. Memphis Fire Dep't*, 679 F.2d 579, 584 (6th Cir. 1982) (finding that proposed intervenors were afforded an adequate opportunity to "air their objections" during public comment period).   There is no need for intervention.

### 2.   The Outcome of This Case Will Not Impair Sierra Club's Interests

In support of its claim that the "disposition of the action may impair or impede" its ability to protect its interests, Sierra Club argues that "[i]ntervening as a plaintiff in the instant lawsuit will enable Sierra Club to coordinate this litigation with other cases, and ensure that conflicting or inconsistent results are not reached in this litigation."   Sierra Club Br. at 13.   Sierra Club's brief is entirely lacking is details as to how the outcome in this action could impact the outcome in its various challenges to agency action.   Sierra Club then goes on to argue that "[b]ecause of the adverse interests of Sierra Club, the United States and Defendants, Sierra' Club's interests may be impaired by this litigation."   *Id.*

Some courts have found practical impairment in pursuing a subsequent lawsuit where the finality of an earlier decision, in an action interpreting a statute against an applicant's contentions, would limit the legal theories which could be ruled upon in later litigation   *See United States v. Oregon*, 839 F.2d 635, 638 (9th Cir. 1988).   However, Sierra Club does not claim that its current cases include CWA or OPA claims, much less an interpretation of either of those statutes.   In *United States v. Oregon*, the court noted that "the pivotal issue" in determining whether the applicant's interest will be impaired "is whether the disposition of [the instant] action, as a practical matter, may impair or impede the intervenors' ability to protect their

interests." *Id.* Sierra Club cites no case in support of granting a Rule 24(a)(2) motion because of the mere possibility of inconsistent results, nor does it provide any insight as to what those inconsistencies might be. The potential results in this case are quite limited: either the Defendants are liable for civil penalties under the CWA for discharges, or they are not; and either Defendants are liable to pay damages to the United States under OPA, or they are not. None of these results conflicts with the Sierra Club's current agency litigation.

Sierra Club next argues that if the Defendants prevail on the issue of whether the discharge resulted from gross negligence, the number of gallons discharged, or on "other grounds that led the Court to assess a lesser amount of penalties under Section 311" their interests would be impaired, because fewer "penalty funds would be available in the Oil Spill Liability Trust Fund for remedial projects." Sierra Club Br. at 13-14. Yet we are aware of no case in which a court has held that a private party's interest in the potential ***amount*** of a penalty constitutes impairment, nor has Sierra Club cited any. Impaired interests involve damage to ***cognizable rights*** that parties possess, not the disappointment of mere desires to partake more directly in a process that will already be open to public participation anyway. *See, e.g., In re Penn Central Commercial Paper Litig.*, 62 F.R.D. 341, 346 (S.D.N.Y.1974) (mere expectancies cannot be impaired within meaning of intervention rules), *aff'd*, 515 F.2d 505 (2d Cir. 1975).

Sierra Club also protests that its "ability to bring its particular knowledge and expertise to bear on the statutory issue" may be impaired if its motion is not granted. *Id.* at 14. Specifically, Sierra Club claims that its "decades of knowledge and experience in working to enforce [the CWA] and legal limitations related to unlawful discharges" place it in a "special position" to contribute to the disposition of the case. *Id.* In support of its argument that this rises to the level of Rule 24(a)(2) impairment, the Sierra Club cites an American Law Reports compendium on an

16

unpublished Ninth Circuit case, *Southeast Alaska Conservation Council v. Watson*, 701 F.2d 186 (Table) (9th Cir. 1983).  In that case, however, the court did not base its impairment finding on the rationale that a particular proposed intervenor had "unique experience"; rather, the court found traditional impairment while noting that ***in addition***, denial of the motion would make such experience unavailable to the litigation.[10]  The Rule 24(a)(2) standard is impairment of an interest, not helpfulness to the court or the parties.

To be clear, it may well be that many interest groups and other organizations and persons have "particular knowledge and expertise" from which this case would benefit.  To the extent organizations wish to apprise the court of this knowledge, they can do so by moving to file an *amicus curiae* brief.  *See Bush v. Viterna*, 740 F.2d 350, 359 (5th Cir. 1984) ("Where he presents no new questions, a third party can contribute usually most effectively and always most expeditiously by a brief amicus curiae and not by intervention.").  Helpfulness is the touchstone of *amicus* practice, not intervention of right.

     3.     <u>Sierra Club's Interests Are Adequately Represented by the Government.</u>

(A) *Presumptions Applicable to Sierra Club*:    Sierra Club bears the burden of establishing "inadequate representation" under the final prong of the Rule 24(a)(2) test.  Sierra Club Br. at 15;  *See, e.g.*, *Haspel & Davis Milling & Planting Co. Ltd. v. Bd. of Levee Comm'rs of the Orleans Levee Dist.*, 493 F.3d 570, 578 (5th Cir. 2007).  While the applicant's burden is

---

[10]  According to the ALR summary, the court in *Southeast Alaska Conservation Council* held that the district court abused its discretion in denying the Rule 24(a)(2) motion in a lawsuit over whether provisions regarding the gathering of baseline environmental data had been violated, where the proposed intervenors "had met all the requirements . . . including the practical impairment requirement."  The court apparently went on to state that "there was no question that the outcome of the lawsuit would substantially affect the strong interest of the proposed intervenors in the quality of the environment, and, the court continued, if they were not allowed to intervene, the proposed intervenors would be unable to bring their particular knowledge and expertise to bear on the statutory issue."  76 A.L.R. 762, § 5(a) (citing *Southeast Alaska Conservation Council*, 701 F.2d at 186 (Table)).

"minimal" and is "satisfied if the applicant shows that representation of his interest may be inadequate," the burden "cannot be treated as so minimal as to write the requirement completely out of the rule." *Id.* at 578-79 (citations omitted).  Accordingly, the Fifth Circuit has established two presumptions of adequate representation:

> First, when the putative representative is a governmental body or officer charged by law with representing the interests of the absentee, a presumption of adequate representation arises whether the would-be intervenor is a citizen or subdivision of the governmental entity.  To overcome this presumption, the applicant must show that its interest is in fact different from that of the governmental entity and that the interest will not be represented by it.  This presumption, and the heightened showing required to overcome it, is restricted, however, to those suits involving matters of sovereign interest.
>
> . . . .
>
> The second presumption of adequate representation arises when the would-be intervenor has the same ultimate objective as a party to the lawsuit.  In such cases, the applicant for intervention must show adversity of interest, collusion, or nonfeasance on the part of the existing party to overcome the presumption.

*Edwards v. City of Houston*, 78 F.3d 983, 1005 (5th Cir. 1996).

Because this is an action brought by the United States involving a matter of sovereign interest, Sierra Club must show that its interests are different from those of the United States. Further, because Sierra Club and the United States share the same ultimate objective — holding Defendants responsible pursuant to the CWA and OPA for their alleged conduct — Sierra Club must also show adversity of interest, collusion or nonfeasance on the part of the United States.

Sierra Club's arguments in this regard do not withstand careful scrutiny.  In support of its claims of inadequate representation, Sierra Club first points to the different overall interests of the United States and those of an environmental group.  Sierra Club Br. at 15-18.  Sierra Club argues that, although the Government and Sierra Club "both seek enforcement of" the CWA, their interests are "inherently different" because Sierra Club's members "have localized and

focused interests," whereas the Government "represents all of the interests of the country."  *Id.* at 16.  Even accepting that this dubious premise of the Sierra Club (itself a national organization) is sufficient to overcome the first presumption, this at best indicates that the parties have different operational approaches (i.e., "big picture" versus "little picture"), not that they have different ultimate objectives for the outcome of the lawsuit.  Indeed, the Fifth Circuit in *Haspel* rejected this "big picture/little picture" argument.  There, the intervenors argued that the plaintiff did not adequately represent their interests because their objective was "more expansive" than what plaintiffs sought.  493 F.3d at 579.  The court found that, even assuming a broader intervenor interest, the more narrow issue was the only matter currently before the Court.  *See id.*  Thus, the court held, the parties had the same "ultimate objective."  *See id.*  Similarly here, the "ultimate objective" of the United States is a determination that defendants must pay penalties under the CWA, and are liable under OPA.[11]  Sierra Club is clearly seeking the same outcome.  Indeed, Sierra Club asserts repeatedly in its brief that it has an interest in ensuring that responsible parties are subject to penalties.  *See, e.g.*, Sierra Club Br. at 8, 14, 22-23.

Sierra Club also argues that the Government's "continuing support for offshore drilling" is "incompatible" with Sierra Club's goal of "end[ing] United States' dependence on oil," *id.* at 21-22, but does not indicate how this "incompatible" interest is implicated by an enforcement action for penalties or a declaration of OPA liability.  The future of offshore drilling will not be

---

[11]  In contrast, the cases cited by Sierra Club in support of the proposition that government does not adequately represent the interests of an advocacy group are distinguishable.  *See Mausolf*, 85 F.3d at 1303 (in finding that the government did not adequately represent the interests of the interest group, the court noted that "[i]t is unquestioned that, in the past, the Government has waived and failed to enforce regulations against snowmobile use in the Park"); *Utah Ass'n of Counties*, 255 F.3d at 1255 (applying different standard than Fifth Circuit); *Coalition of Ariz./N.M. Counties for Stable Economic Growth v.  Department of Interior*, 100 F.3d 845 (10th Cir. 1996) (same); *Hazardous Waste Treatment Council v. South Carolina*, 945 F.2d 776, 780 (4th Cir. 1991) (plaintiff and intervenor had divergent interests with respect to whether portions of the regulation at issue violated the Commerce Clause).

decided in this enforcement action, with or without the participation of Sierra Club.

Sierra Club asserts that it has different interests from the United States in the OPA Natural Resource Damages Assessment process. *See id.* at 17. Sierra Club gives no indication, however, of how its interests differ. The federal and state trustees (the latter obviously interested in the particular resources of their respective State and arguably more focused than the national Sierra Club organization) are conducting a wide-ranging and thorough assessment of the natural resource damages caused by the spill, and that process is continuing outside of this litigation. Moreover, the United States has not yet sought natural resource damages in this action. Assuming that Sierra Club's argument in this regard relates to a desire to have a voice in the selection of restoration projects that will ultimately result from the NRD process, the selection will involve input from numerous entities, including but not limited to Sierra Club.

Finally, Sierra Club asserts, again without specificity, that its interests are not adequately represented by the Government because "the United States *may* be more open to settling the suit or less likely to appeal any decision than would Sierra Club." *Id.* at 17 (emphasis added). Even if that were true, the claims at issue are those of the United States, which is in the best position to determine whether and under what conditions settlement is appropriate, and if and when that settlement is reached, any settlement will be subject to public comment and court approval.

In support of its argument, Sierra Club cites *Clark v. Putnam County*, 168 F.3d 458 (11th Cir. 1999), a zero-sum case in which white voters sued the county over its single-member district system. Black voters moved to intervene, in part on the basis that the county was on the record as saying that they represented the interests of *all* county residents, including the plaintiffs. *Id.* at 462. The court noted that, in view of that statement, "[i]t would be in the commissioners' interest, for example, to agree on a plan that would preserve their seats, while compromising the

proposed intervenors' voting power. *Id.* Moreover, the court found that the defendants' willingness to settle was indicative of divergence of interest sufficient to satisfy Rule 24(a)(2) based on a "***discussion of settlement that was mentioned on the record***." *Id.* (emphasis added).[12] Sierra Club has identified no such evidence here; their argument is purely speculative. Sierra Club cannot premise its claim of inadequate representation on a perceived willingness to settle that ***may*** come to pass: "[T]he adequacy of representation issue is to be determined by a litigation's condition at the time of the application to intervene." *Pierson v. United States*, 71 F.R.D. 75, 80 (D. Del. 1976) (internal quotation marks omitted).[13]

In sum, even if the interests cited by Sierra Club were in fact "different," Sierra Club entirely fails to make the requisite showing that its different interests will not be represented by the Government, i.e., that Sierra Club does not seek the very "same ultimate objective."

(B) *Sierra Club's Strained Argument That Its Interests Are Adverse to the United States*: In support of its argument that the Government's interests in this case are adverse to its own, Sierra Club references the lawsuits described in Section I.B.2., which it categorizes as "overlapping." Sierra Club Br. at 18. But none of the referenced lawsuits "overlap" with this one insofar as the potential outcomes are concerned. They are brought under different statutes and concern different issues; the outcome of this case in no way affects them.

Sierra Club argues that the Government will be disincentivized to maximize penalties

---

[12] Other Eleventh Circuit cases have clearly distinguished *Clark*, where there was "***evidence***" that the government was more likely to settle, from cases in which the intervenors' simply "hypothesize[] that [the government] might have an increased incentive to compromise," without any showing in the record. *Sierra Club, Inc. v. Leavitt*, 488 F.3d 904, 911 (11th Cir. 2007) (emphasis added).

[13] Moreover, to the extent that the Sierra Club can present arguments against settlement to which the Government would find a need to respond, so can an *amicus. See, e.g., Hooker Chems. & Plastics Corp.*, 749 F.2d at 992-93.

against Defendants because of its "conflicts of interest," namely, that the Department of Defense "procures petroleum-based mobility fuels" through contracts with BP, and the U.S. Coast Guard benefits from offshore drilling contracts by "supplying fuel to BP's air and vessel fleets." *Id.* at 21. This argument is not credible. Any penalties imposed against the Defendents will go to the federal Oil Spill Liability Trust Fund and a declaration of liability under OPA will make the Defendants responsible for federal, state, and local response costs and lost royalties (paid to the Treasury). It is simply unsound to suggest that the United States Attorney General would forego these penalties and damages to protect Department of Defense contracts or Coast Guard benefits.

Sierra Club further claims that the Government's interests are "adverse" to their own because the United States and the Department of Justice are "subject to changes inherent in 'electoral politics,' from which Sierra Club is immune." *Id.* at 22. This argument is nothing more than a naked attack on Congress's considered decision not to allow citizen enforcement in the oil pollution arena, *see* BP's D1 Mot. to Dismiss at Section I.A., but instead to allow only governmental enforcement. Congress's decision to impose a model of exclusive government enforcement is that body's prerogative. And the Sierra Club's strong preference for a regime Congress did not enact is certainly no basis for granting intervention.

Moreover, the fact that the United States is accountable to the electorate and the Sierra Club is not would perhaps be relevant if there were a multi-factor agency "policy" at issue in this case, rather than a straightforward action to recover penalties. For this reason, Sierra Club's citation to *Kleissler v. Forest Service*, 157 F.3d 964 (3d Cir. 1998), is unavailing. *Kleissler* involved whether a decision to allow a particular tree-harvesting project in the National Forest violated NEPA without preparation of an environmental impact statement. *Id.* at 967-68. The court found that the government's position was more susceptible to policy change in contrast to

the "straightforward business interests asserted by intervenors." *Id.* at 973-74. The issues in this case are not the kind of issues that are normally impacted by "electoral politics." Instead, Defendants have been sued under two environmental enforcement regimes for penalties, cleanup costs, and damages. This sort of workaday law enforcement activity does not shift with the political winds or policy preferences concerning the exploitation of federal forest resources.

Finally, Sierra Club argues that its interests are adverse to those of the Government because, were the Motion granted, it would raise arguments in support of penalties that the Government would not, including violations of the prohibition on discharges without a permit and violations of the "EPA Region 6 NPDES general permit." Sierra Club Br. at 23. But even if it were granted intervention as of right, Sierra Club would not be allowed to assert claims that the United States has not raised, especially where the discharge has stopped. *See Gwaltney, supra.* Sierra Club cannot justify its bid for intervention of right with respect to the limited claims the United States **has** brought, let alone support its novel notion that it has the right to assert claims the United States **has not** brought. The Sierra Club's intention to bring new claims also reinforces the reasons to deny permissive intervention, which are taken up next, since the new matters the Sierra Club would interject into this case would only make an already complex multidistrict litigation case even more difficult to manage.

## II.    PERMISSIVE INTERVENTION IS NOT APPROPRIATE

Federal Rule of Civil Procedure 24(b)(1)(B) empowers a court to permit a party to intervene who "has a claim or defense that shares with the main action a common question of law or fact." "Permissive intervention is wholly discretionary with the court . . . even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied." *Kneeland v. NCAA*, 806 F.2d 1285, 1289 (5th Cir. 1987) (citation and quotation

marks omitted). Rule 24(b)(3) states: "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Permissive intervention is appropriate only when: "(1) timely application is made by the intervenor, (2) the intervenor's claim or defense and the main action have a question of law or fact in common, and (3) intervention will not unduly delay or prejudice the adjudication of the rights of the original parties." *The Aransas Project v. Shaw*, No. C-10-75, 2010 WL 2522415, at *13 (S.D. Tex.), *aff'd* 2010 WL 5184792 (5th Cir. Dec. 22, 2010) (quoting *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 884 F.2d 185, 189 n.2 (5th Cir. 1989)).

> When acting on a request for permissive intervention, a district court should consider, among other factors, whether the intervenors are adequately represented by other parties and whether they are likely to contribute significantly to the development of the underlying factual issues. When a proposed intervenor possesses the same ultimate objectives as an existing litigant, the intervenor's interests are presumed to be adequately represented absent a showing of adversity of interest, collusion, or nonfeasance.

*Clements*, 884 F.2d at 189 (internal citations omitted).

Thus, the analysis of the Sierra Club's claimed intervention of right pursuant to Rule 24(a)(1) and 24(a)(2) must weigh against a finding that they should be allowed to permissively intervene under Rule 24(b)(1)(B). *See The Aransas Project*, 2010 WL 2522415, at *14. Because, for the reasons set forth in Section B.3., the Sierra Club's interests will be adequately represented by the Government, there is no need for intervention.

Moreover, granting the Sierra Club's motion would further complicate this case without any added benefit, since the United States is actively and vigorously pursuing the statutory claims. *See id.* (citing *Farouk Systems, Inc. v. Costco Wholesale Corp.*, No. 09-cv-3499, 2010 WL 1576690, at *3 (S.D. Tex. Apr. 20, 2010) (rejecting permissive intervention because it "could add considerable complication and delay to this case"). As part of its role in managing

24

this extraordinary litigation, the Court should prevent an overflow of additional attempted interventions, which would be a likely consequence of allowing Sierra Club to intervene under Rule 24(b)(1)(B).    There are so many parties bringing their own claims, the last thing this litigation needs is to open the doors for intervention to advocate on other parties' claims.   Were the Court to grant Sierra Club's motion based on the tenuous grounds set forth in its Brief — e.g., an interest in enjoyment of environment, accountability of responsible parties, and nonexistent potential for impact on other litigation — potentially dozens of parties with similarly unwieldy bases for intervention would seek to join the case.  *See, e.g.*, *S.E.C. v. Bear, Stearns & Co., Inc.*, No. 03 Civ. 2943 WHP, 2003 WL 22000340, at *4 (S.D.N.Y.   Aug. 25, 2003) (rejecting permissive intervention by investors, and explaining "[w]ere this Court to grant this motion to intervene, it would be logic-bound to allow all investors and interested members of the public with differing viewpoints to intervene in the underlying actions").   To the extent Sierra Club has sought to intervene to influence any settlement that is reached, many other organizations and persons could feel the need to intervene so they too would have a "seat at the table."  This would make reaching a settlement dramatically more cumbersome and would make the conduct of the litigation and the preparation for and conduct of trial far more difficult.

For these reasons, the Court should exercise its discretion to deny Sierra Club's motion to intervene pursuant to Rule 24(b)(2).  As stated in Section I.B.2., to the extent organizations such as the Sierra Club wish to make their voices heard in this case, they can do so by (i) moving to file an *amicus curiae* brief, *see Viterna*, 740 F.2d at 359, (ii) communicating their interests and concerns directly to the United States, and/or (iii) commenting on the public docket.

## CONCLUSION

For the reasons stated herein, Sierra Club's Motion to Intervene should be denied.

Dated:  February 28, 2011          Respectfully submitted,

By: /s/ Don K. Haycraft

Don K. Haycraft (Bar #14361)
(dkhaycraft@liskow.com)
R. Keith Jarrett (Bar #16984)
(rkeithjarrett@liskow.com)
LISKOW & LEWIS
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana  70139-5099
Telephone:  (504) 581-7979
Facsimile:  (504) 556-4108

and

Richard C. Godfrey, P.C.
(richard.godfrey@kirkland.com)
J. Andrew Langan, P.C.
(andrew.langan@kirkland.com)
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, Illinois  60654
Telephone: (312) 862-2000

Robert R. Gasaway
(robert.gasaway@kirkland.com)
Jeffrey Bossert Clark
(jeffrey.clark@kirkland.com)
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W., Suite 1200
Washington, D.C. 20005
Telephone:  (202) 879-5000

Joel M. Gross
(joel.gross@aporter.com)
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004
Telephone: (202) 942-5705

*Attorneys for BP Exploration & Production Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 28th day of February, 2011.

*/s/ Don K. Haycraft*
Don K. Haycraft