UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  OIL SPILL by the OIL RIG | : | |
|     "DEEPWATER HORIZON" in | : | MDL NO. 2179 |
|     the GULF OF MEXICO, on | : | |
|     APRIL 20, 2010 | : | SECTION J |
| | : | MAG. (1) |
| | : | |
| This document relates to:  11-0275 | : | JUDGE BARBIER |
| | : | MAG. JUDGE SHUSHAN |

### ANADARKO E&P COMPANY LP AND ANADARKO PETROLEUM CORPORATION'S UNOPPOSED MOTION FOR LEAVE TO FILE COMPLAINT IN INTERVENTION

Pursuant to Federal Rule of Civil Procedure 24(a)(2), or in the alternative, Federal Rule of Civil Procedure 24(b)(1)(B), Anadarko E&P Company LP ("AE&P") and Anadarko Petroleum Corporation ("APC") (AE&P and APC shall be referred to collectively herein as "Anadarko") respectfully request leave of court to file their Complaint in Intervention in the above-captioned action, and would respectfully show the Court as follows:

### Introduction and the Nature of Anadarko's Interest in this Case

1.    Certain Underwriters at Lloyd's London and various other insurers subscribing to excess insurance policies issued to Transocean Ltd. (collectively referred to herein as the "Transocean Excess Insurers" or the "Insurers") commenced Civil Action No. 4:10-CV-01823 in the United States District Court for the Southern District of Texas (the "Texas Action"), seeking a judicial declaration that no coverage is afforded to the named BP defendants ("BP") as "additional insureds" under those excess policies (the "Policies").

2.    The Texas Action was terminated on February 10, 2011 and was transferred to this Court for consolidation with the ongoing MDL proceedings styled *In re: Oil Spill by the Oil*

*Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010*, MDL No. 2179.  A copy of the transfer order is attached as Exhibit "A."

3. The dispute in the Texas Action arises out of the explosion and fire on the *Deepwater Horizon* on April 20, 2010, her subsequent sinking in the Gulf of Mexico, and the related blow-out of the Macondo well.

4. At the time of the casualty, the *Deepwater Horizon* was conducting activities in Mississippi Canyon Block 252 ("MCB 252") pursuant to a drilling contract between Transocean Ltd. ("Transocean") and BP (the "Drilling Contract").

5. Effective October 1, 2009 to April 1, 2010, AE&P owned a 22.5% interest and APC owned a 2.5% interest in the leasehold covering MCB 252, which includes the Macondo prospect/well.  As of April 20, 2010, APC owned a 25% interest in the leasehold covering MCB 252.  BP and others owned the remaining interest in the MCB 252 leasehold.  At various times on and prior to April 20, 2010, AE&P and/or APC have been parties to an operating agreement with BP concerning the Macondo well.

6. The Transocean Excess Insurers issued or severally subscribed to various layers of excess liability insurance, of which the lowest layer policy attaches excess of the $50 million in limits provided under a policy issued by Ranger Insurance Limited.

7. On information and belief, BP has sought coverage as an "additional insured" under the Policies for losses arising out of the Macondo well blow-out, including but not limited to defense costs and alleged liabilities under state or federal laws and for damage to third parties whose persons or properties allegedly have been or will be impacted by the blow-out.

8. The Transocean Excess Insurers initiated the Texas Action, seeking a declaration that the Insurers were under no obligation to provide coverage to BP with respect to "pollution

claims against BP for oil emanating from BP's well." *See* Texas Action, Complaint for Declaratory Judgment (D.E. 1), ¶ 5.

9. The coverage dispute in the Texas Action centers on whether relevant provisions in the Drilling Contract and Policies establish that BP is an Insured or additional insured on the Policies and, if so, whether the Policies provide coverage for defense costs and alleged liabilities arising from the well blow-out.

10. Section 3 of the Drilling Contract provides that BP and "co-owners … shall be named as additional insureds in each of [Transocean's] policies … for liabilities assumed by [Transocean] under the terms of this Contract."

11. In the Drilling Contract, Transocean agrees to "assume full responsibility for and shall protect, release, defend, indemnify and hold [BP] . . . harmless from and against any loss . . . or liability for pollution or contamination, including control and removal thereof, originating above the surface of the land or water from spills, leaks, or discharges of fuel . . . in the possession and control of [Transocean] . . . ."

12. The types of insurance that Transocean is specifically required to carry under the Drilling Contract include "Comprehensive General Liability insurance, including contractual liability insurance insuring the indemnity agreement as set forth in the Contract … covering bodily injury, sickness, death and damage to property."

13. The Policies provide coverage to the "Insured," defined under the Policies as including "any person or entity to whom [Transocean] is obliged by written 'Insured Contract' entered into before any relevant "Occurrence," to provide insurance such as is afforded by this Policy …." Excess Policies, Section IV. DEFINITIONS, § 13. INSURED (c).

14.     The Policies define an "Insured Contract" as "any written contract or agreement entered into by [Transocean] and pertaining to business under which [Transocean] assumes the tort liability of another party to pay for "Bodily Injury," "Property Damage," "Personal Injury" or "Advertising Injury" to a "Third Party" or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement." Excess Policies, Section IV. DEFINITIONS, § 14. INSURED CONTRACT.

15.     On information and belief, BP contends that the foregoing establishes BP's rights as an Insured or additional insured on the Excess Policies because the Drilling Contract qualifies under the Policies as an "Insured Contract" pursuant to which Transocean is obliged to provide insurance to BP as is afforded by the Policies, and the scope of that coverage is determined by reference to the terms of the Policies and not the Drilling Contract. *See Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.,* 256 S.W.3d 660 (Tex. 2008) (scope of additional insured coverage determined by terms of policies, not by terms of underlying indemnity contract). The Transocean Excess Insurers argue that under the Drilling Contract Transocean assumed liability only for above land/water surface pollution, and because the pollution emanating from the Macondo well originated below the surface, there is no coverage available to BP under the Policies for these liabilities resulting from such pollution.

16.     Anadarko is incurring defense costs and faces potential liability arising out of the Macondo well blow-out. Because, as detailed in paragraph 5, above, AE&P and/or APC owned a share in the leasehold covering MCB 252 at various times prior to the blow-out, AE&P and APC each is a "co-owner" under the Drilling Contract that Transocean is required to name as additional insured on the Transocean Excess Policies, pursuant to Section 3 of the Drilling Contract. As such, Anadarko has an interest in this action with regards to asserting and

preserving any rights it has to insurance coverage under the Policies, with respect to the determination of the scope of such coverage, and with respect to the appropriate distribution of Policy proceeds as among the various parties claiming an interest in such proceeds.

17. Anadarko's ability to establish its right to coverage as an Insured or additional insured on the Excess Policies pursuant to the Drilling Contract may be directly impacted by a ruling in the instant action with respect to whether BP is deemed an Insured or additional insured on the Excess Policies by virtue of the Drilling Contract. Anadarko's claim to potential rights to coverage under the Policies is based on the same Drilling Contract asserted as giving coverage rights to BP.

18. Should the Court rule that the Drilling Contract and Excess Policies do not obligate the Excess Insurers to provide coverage to BP for the well blow-out, such ruling could potentially impact Anadarko's ability to obtain similar coverage. Alternatively, should this Court rule that BP is entitled to coverage under the Excess Policies, BP may be entitled to a recovery that could reduce or exhaust the limits of the Excess Policies before Anadarko is able to claim its rightful share of the Policy proceeds. Anadarko thus has a strong interest in intervening in this action to ensure that its rights to coverage under the Policies are adequately protected and/or that it receives its rightful share of Policy proceeds.

19. Anadarko understands that neither the Insurers nor BP object to Anadarko's intervention in this action. In the Joint Report of the Meeting and Joint Discovery/Case Management Plan entered in the Texas Action on November 22, 2010, the Insurers were asked to "List anticipated additional parties that should be included [in the instant suit]." In response, the Insurers stated that Anadarko "may be added" as an additional party. Thus, the Excess Insurers recognize that Anadarko's interests are at stake in the instant litigation. In addition, counsel for

BP and counsel for the Insurers have advised that they have no objection to Anadarko's intervention.

## Argument

**A.  Anadarko should be allowed to intervene as a matter of right.**

20. Intervention as of right under Rule 24(a)(2) is based on "four requirements: (1) the applicant must file a timely application; (2) the applicant must claim an interest in the subject matter of the action; (3) the applicant must show that disposition of the action may impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by existing parties to the litigation."  *United States v. Franklin Parish Sch. Bd.*, 47 F.3d 755, 765 (5th Cir. 1995).  Generally, "[f]ederal courts should allow intervention where no one would be hurt and greater justice could be attained."  *John Doe No. 1 v. Glickman*, 256 F.3d 371, 375 (5th Cir. 2001).  The Fifth Circuit has recognized that Rule 24 is to be construed liberally, and that doubts should be resolved in favor of the proposed intervenor.  See *In re Lease Oil Antitrust Litig*. 570 F.3d 244, 248 (5th Cir. 2009) (citing 6 MOORE ET AL., § 24.03[1][a], at 24-22).  Anadarko meets all four requirements to intervene as a matter of right.

### 1.  Anadarko's motion to intervene is timely.

21. Courts consider four factors in determining whether a motion to intervene is timely:  "(1) the length of time during which the would-be intervenor actually knew or reasonably should have known of its interest in the case before it sought to intervene; (2) the prejudice that existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as it knew or reasonably should have known of its interest in the case; (3) the prejudice that the would-be intervenor may suffer if intervention is denied; and (4) whether unusual circumstances militate for or against a determination that the

application is timely." *Heaton v. Monogram Credit Card Bank of Georgia,* 297 F.3d 416 (5th Cir. 2002). "There are no absolute measures of timeliness; it is determined from all the circumstances." *Id.* In addition, "[t]he requirement of timeliness is not a tool of retribution to punish the tardy would-be intervenor, but rather a guard against prejudicing the original parties by the failure to apply sooner." *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994).

22. After the Texas Action was filed, Anadarko conferred with BP and other affected parties to obtain information regarding the Policies and to determine whether intervention was appropriate and in the best interests of all affected parties. Anadarko has been advised by counsel for BP and by counsel for the Insurers that they have no objection to Anadarko's intervention in this action at this time.

23. Notably, the Transocean Insurers stated in their Joint Discovery/Case Management Plan filed in the Texas Action on November 22, 2010 that Anadarko may be added as an additional party to that suit. *See* Joint Discovery/Case Management Plan (D.E. 46). Thus, for some time the relevant parties have contemplated Anadarko's involvement in the litigation related to these issues. Further, MOEX Offshore 2007 LLC (another "co-owner" of the leasehold including the Macondo well) has filed an unopposed motion seeking to intervene in the Texas Action, and also was listed by the Insurers in their Joint Discovery/Case Management Plan as a potential additional party to this suit.

24. Anadarko is not aware of any prejudice that will result to the existing parties to the litigation in allowing Anadarko to join the litigation at this point in the lawsuit, as the order transferring the Texas Action to the Eastern District of Louisiana for inclusion in the coordinated or consolidated pretrial proceedings pending in this docket pursuant to U.S.C. § 1407 was just entered on February 8, 2011.

25. Conversely, as discussed in detail below, if Anadarko's intervention is denied, Anadarko will be unable adequately to protect its potential rights at issue in this litigation. Anadarko is unaware of any unusual circumstances which militate against a determination that its application is timely. Accordingly, Anadarko requests that this Court find that its Motion was timely filed.

### 2. Anadarko has direct, substantial and legally protected interests relating to the matters at issue in this action.

26. The Fifth Circuit requires that an applicant have an interest in the proceedings that is "direct, substantial and legally protectable." *Epsy*, 18 F.3d at 1207 (internal quotations omitted). The "interest test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Id.* Anadarko's interests in this proceeding satisfy this test.

27. As set forth above, Anadarko faces defense costs and alleged liabilities arising out of the *Deepwater Horizon* incident, and its ability to obtain insurance coverage from the Policies for such liabilities is directly at issue in this proceeding. A determination in this proceeding with respect to whether the Drilling Contract establishes BP's status as an Insured or additional insured on the Excess Policies may directly impact Anadarko's ability likewise to establish itself as an Insured or additional insured and obtain reimbursement under the Excess Policies. Similarly, a determination that the Drilling Contract does not mandate Insured or additional insured status for BP's co-owners may foreclose Anadarko's ability to obtain coverage for its liabilities from the policies at issue. The potential impact this litigation would have on Anadarko reveals the strong interest Anadarko maintains relating to the matters at issue in this action.

28. Further, the Excess Insurers have stated their intention to seek to litigate in this coverage action certain issues related to BP's conduct that could have implications in the various

third-party liability actions in which BP and Anadarko are defendants. *See* Joint Discovery/Case Management Plan (D.E. 46). Anadarko's intervention in this action is necessary and appropriate to permit Anadarko to assert its position as to the proper scope of issues addressed in this matter.

### 3. Anadarko's interests may be impaired by the disposition of this case.

29. The third requirement of rule 24(a) is that the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect his interest." *Espy*, 18 F.3d at 1207.

30. The relief the Transocean Insurers seek in this action, if granted, could impair Anadarko's ability to obtain insurance coverage for liabilities it faces arising out of the *Deepwater Horizon* incident. Conversely, a disposition of this action favoring BP may also impair Anadarko's rights under the Policies because such disposition may entitle BP to impair or exhaust the limits of the Excess Policies before Anadarko establishes its entitlement to any share of the Policies' proceeds. Courts have held that intervention is available as of right to a party having an interest in insurance funds as to which parties to the pending action also claim an interest. *See Mountain Top Condominium Assoc. v. Dave Stabert Master Builder, Inc.*, 72 F.3d 361, 368-9 (3d Cir. 1995); *Security Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1380-81 (7th Cir. 1995).

### 4. Anadarko's interests are not adequately protected by the existing parties to the suit.

31. The burden to demonstrate inadequate representation is "minimal" and the Fifth Circuit has held that the applicant need only show that the representation "may be" inadequate. *Epsy*, 18 F.3d at 1207.

32. Here, Anadarko's interests are not adequately represented by BP. As noted above, a disposition of this case in favor of BP does not protect Anadarko's ability to actually

collect from the Policies' proceeds because the limits of the Excess Policies may be reduced or exhausted by BP before Anadarko ever has a chance to obtain its rightful share of those proceeds.

33. Accordingly, because Anadarko has satisfied all the requirements of Rule 24(a), it should be allowed to intervene in this suit as a matter of right.

**B.  Alternatively, Anadarko should be allowed permission to intervene.**

34. Anadarko is entitled to intervene as a matter of right pursuant to Rule 24(a)(2). If, for any reason, this Court determines otherwise, Anadarko requests that it be permitted to intervene pursuant to Rule 24(b)(1)(B).

35. Under Rule 24(b), permissive intervention is appropriate where "an applicant's claim or defense and the main action have a question of law or fact in common." FED. R. CIV. P. 24(b)(1)(B). *Trans Chemical Ltd. v. China Nat'l. Machinery Import and Export Corp.*, 332 F.3d 815, 824 (5th Cir. 2003). In exercising its discretion, Rule 24 directs the Court to "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." FED. R. CIV. P. 24(b)(3).

36. Anadarko's rights to coverage under the Excess Policies largely are subject to the same questions of law and fact that are at issue in this suit concerning the nature and scope of coverage afforded by the terms and conditions of the Drilling Contract and the Excess Policies. Resolution of these issues in this suit may directly impact Anadarko's ability to obtain coverage under the Excess Policies.

37. In addition, because the parties' disputes regarding the central issues in this case are still in their nascent stages, Anadarko's intervention will not unduly delay or prejudice the adjudication of the original parties' rights. On the contrary, Anadarko's involvement in this case

will promote judicial economy by reducing the risk of further litigation resulting from the disposition of this case, such as any independent action Anadarko would bring to preserve or clarify its rights under the Policies. Intervention will allow Anadarko to be a part of and contribute to any resolution or compromise the parties may reach and may offer solutions that may not be possible without Anadarko's presence.

38.     Finally, Federal Rule of Civil Procedure 24(c) requires that a motion to intervene "be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Courts have held that this requirement may be satisfied by a motion to intervene which clearly spells outs that intervenor's position on the subject matter litigation. FED R. CIV. P. 24(c). *See e.g., Piambino v. Bailey,* 757 F.2d 1112, 1121 (11th Cir. 1985); *Howse v. S/V Canada Goose I*, 641 F.2d 317, 319 & n.3 (5th Cir. 1981). The present motion sets out the interests Anadarko seeks to protect and indicates that Anadarko will oppose the relief the Insurers seek. In addition, Anadarko has attached as Exhibit B hereto its proposed Complaint in Intervention.

**WHEREFORE, PREMISES CONSIDERED**, Anadarko respectfully requests that this Court enter an order granting Anadarko leave to intervene as of right pursuant to Federal Rule of Civil Procedure 24(a) and accordingly permit Anadarko to file the Complaint in Intervention, attached as Exhibit B hereto. In the alternative, Anadarko respectfully requests that the Court grant Anadarko permissive intervention pursuant to Federal Rule of Civil Procedure 24(b)(1)(B), and accordingly permit Anadarko to file the Complaint attached at Exhibit B.

Respectfully submitted,

KUCHLER POLK SCHELL
WEINER & RICHESON, LLC


*s*/ Monique M. Weiner
Deborah D. Kuchler, T.A. (La. No. 17013)
Monique M. Weiner, (La. No. 23233)
Robert E. Guidry (La. No. 28064)
1615 Poydras Street, Suite 1300
New Orleans, Louisiana 70112
Telephone (504) 592-0691
Facsimile: 504-592-0696
dkuchler@kuchlerpolk.com
mweiner@kuchlerpolk.com
rguidry@kuchlerpolk.com

Of Counsel:

REED SMITH LLP

John D. Shugrue
Yisroel I. Hiller
Reed Smith LLP
10 South Wacker Drive
Chicago, IL  60606
(312) 207-1000
jshugrue@reedsmith.com
yhiller@reedsmith.com

***ATTORNEYS FOR DEFENDANTS,
ANADARKO PETROLEUM CORPORATION,
AND ANADARKO E&P COMPANY, L.P.***

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule 7.6, I hereby certify that counsel for the movants has conferred with counsel for all parties with an interest in opposing this motion and they do not oppose the relief sought in this motion.

*s/* Monique M. Weiner

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on March 3, 2011, a copy of the foregoing pleading was filed electronically with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record registered to receive electronic service by operation of the court's electronic filing system. I also certify that I have mailed this filing by United States Postal Service to all counsel of record who are not registered to receive electronic service by operation of the court's electronic filing system.

*s/* Monique M. Weiner