# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **STATE OF LOUISIANA** *ex rel.* | * | **MDL NO. 2179** |
| **PLAQUEMINES PARISH SCHOOL BOARD** | * | |
| | * | **NO.  2:11-CV-00348** |
| **VERSUS** | * | |
| | * | **SECTION "J"** |
| **BP, PLC** *et al.* | * | |
| | * | **JUDGE BARBIER** |
| | * | |
| | * | **MAG. JUDGE SHUSHAN** |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## MEMORANDUM  IN SUPPORT OF  MOTION FOR REMAND OR  FOR CERTIFICATION UNDER 28 U.S.C §1292(b) AND STAY OF PROCEEDINGS PENDING APPEAL

MAY IT PLEASE THE COURT:

This memorandum is respectfully submitted on behalf of State of Louisiana through the Plaquemines Parish School Board ("PPSB"), in support of its motion to remand or, pursuant to 28 U.S.C. §1292(b), for certification that the order warrants immediate appeal, and for a stay of the proceedings pending appeal.

The instant action is not removable because Defendant Halliburton Energy Services, Inc. actively invoked the state court's jurisdiction, thus waiving its right to remove.  Accordingly, the BP Entities, which effected the removal, cannot provide the requisite unanimous consent of all defendants, and the action must be remanded.

Additionally, BP's invocation of jurisdiction under  the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1349, is improper.  PPSB submits that this Court's ruling  in *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on April 20, 2010,* --- F.Supp.2d ----, 2010 WL 3943451,(E.D.La. Oct.6, 2010), upholding the exercise of removal jurisdiction under OCSLA, was

erroneous.  The Court neglected to draw the proper distinction between *original* jurisdiction, which may well exist under the OCSLA, but which does not give rise to *removal* jurisdiction unless certain additional criteria are met.  Those additional criteria were not even alleged or addressed in BP's filing.

This Court's previous decision regarding removal was incorrect because none of the parties, neither the removing parties such as BP, nor the movants for remand, including the representatives of the State of Louisiana, drew the distinction between *original* jurisdiction under OCSLA and *removal* jurisdiction, although the distinction is well-established in an avalanche of controlling precedent.  However, the Court need not reach this issue here because the waiver of removal rights by a Halliburton defendant barred removal by any other defendant.

## I.      HALLIBURTON'S ACTIVE INVOCATION OF STATE COURT JURISDICTION BARS REMOVAL

On January 12, 2011, PPSB filed this action in the 25th Judicial District Court for the Parish of Plaquemines, No. 54-415 ("B").  It named twenty-six companies and individuals as defendants, including thirteen BP entities and employees, six Transocean entities and employees, three nonmanaging leaseholders, and two Halliburton entities and one employee.  On January 31, 2011, Halliburton Company filed five exceptions, claiming lack of jurisdiction, insufficiency of service, vagueness, inadequate pleading, and prematurity.  On the same date, Halliburton Energy Services, Inc. answered and filed numerous substantive defenses. It also filed five exceptions, claiming vagueness, inadequate pleading, prematurity, no cause of action for "ruin," and no cause of action for punitive damages.

Both Halliburtons filed rules to show cause, and by orders entered on February 2, 2011, their exceptions were set for hearing before the Honorable Joy Lobrano on April 7, 2011.  On February 8, 2011, PPSB filed a memorandum in opposition to the ten exceptions.

28 U.S.C. §1446(b) provides in pertinent part that

The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based.

The Fifth Circuit has interpreted this provision as requiring that all defendants which have been properly served join in or consent to the removal. *Doe v. Kerwood,* 969 F. 2d 165, 169 (5th Cir. 1992); *Getty Oil Corp. v. Insurance Company of N.A.,* 841 F. 2d 1254, 1262 (5th Cir. 1988); *Esparza Rico v. Flores,* 405 F. Supp. 2d 746 (S.D.Tx. 2005).  Consistent with this principle, the removing BP entities stated in Paragraph 21 of their Notice of Removal that "all properly named and served defendants expressly consent to this removal."  (Rec. Doc. 1).  Attached as Document 1-8, at pp. 14 and 28, are statements of consent executed by Halliburton Energy Services, Inc. and Halliburton Company.

Halliburton Energy Services, however, waived its right to consent by filing its exceptions in the 25th Judicial District Court.[1]  "Participating in state court proceedings. . ., when the defendant is not compelled to take the action. . .," commentators recognize, "constitutes a waiver of the defendant's right to remove to federal court."  10 James Moore, *et al.*, Moore's Federal Practice, §107.18 [3][a].  Thus, numerous courts have found waivers by a defendant's taking substantial defensive action in state court before the removal petition is filed. *Aqualon v. MAC Equipment, Inc.,* 149 F. 3d 262, 264 (4th Cir. 1998)(filing of substantive defenses constitutes waiver); *Schmitt v. Insurance Company of N.A.,* 845 F. 2d 1546, 1548 (9th Cir. 1988)(filing of permissive cross-claim

_____

[1] Whether Halliburton Company also waived its right to consent is open to some question for two reasons.  Halliburton Company's exceptions questioned whether it had been properly served and whether the state court could properly exercise personal jurisdiction over it.  Either of these yet-untested claims, if valid, would abrogate the necessity of its consent under Fifth Circuit precedent.  Second, such challenges to service and jurisdiction do not constitute the sort of active participation in state court proceedings that would effect a waiver. *See, e.g., Hill v. State Farm Mutual Automobile Ins. Co.,* 72 F. Supp. 2d 1353, at n. 2 (M.D. Fl. 1999).

constitutes waiver); *Westwood v. Fronk,* 177 F. Supp. 2d 536 (N.D. W.Va. 2001)(filing a permissive cross-claim expressed a "clear and unequivocal" intent to accede to state court jurisdiction); *Scholz v. RDV Sports, Inc.,* 821 F. Supp. 1469 (M.D.Fl. 1993)(filing three motions to dismiss and scheduling a hearing amounted to waiver); *Hill v. Citicorp,* 804 F.Supp.514, 516-517 (S.D.N.Y. 1992)(filing a motion to dismiss was an affirmative use of state court process that waived right of removal); *Zbranek v. Hofheinz,* 727 F. Supp 324, 325 (E.D. Tx. 1989)(litigation of a motion to dismiss on grounds of forum non conveniens actively invoked the state court's jurisdiction and defeated removal); *Heafitz v. Interfirst Bank of Dallas* 711 F. Supp. 92, 96 (S.D.N.Y. 1989)(filing a motion to dismiss amounted to waiver).

In *Somoano v. Ryder Systems, Inc.,* 985 F. Supp 1476 (S.D.FL. 1998), the court found that a defendant did not waive its right to remove by filing a motion to dismiss without setting it for hearing or taking any affirmative action displaying an intent to participate in state court process. By contrast here, Halliburton filed an answer asserting affirmative defenses, filed five separate exceptions, two of which sought the dismissal of substantive claims, briefed all five exceptions, and set the matter for hearing before the state court judge.  By these actions, it expressed a clear intention to avail itself of state court remedies in state court.  PPSB filed an opposition brief, and issue was fully joined in state court.  Consequently, Halliburton Energy Services waived its right of removal.

Because the Fifth Circuit follows the rule of unanimity, Halliburton's waiver of its right to remove prevents removal by any other defendant.  *See, Doe v. Kerwood, supra* at 167*; Hewitt v. City of Stanton*, 798 F. 2d 1230, 1232 (9th Cir. 1986); *Westwood v. Fronk, supra.*   Therefore, PPSB is entitled to a remand

## II.   REGARDLESS OF WHETHER THERE IS ORIGINAL JURISDICTION UNDER OSCLA, THERE IS NO REMOVAL JURISDICTION IN THIS CASE.

BP's removal papers in this matter bear quoting, to demonstrate that there is grave confusion between *original* and *removal* jurisdiction, which are not synonymous under OSCLA and which do not give rise to each other:

17.

This Court therefore has **origina**l subject matter jurisdiction under 43 U.S.C. § 1349(b)(1)(a).

18.

Thus Court also has **origina**l subject matter jurisdiction under 28 U.S.C. § 1331, in that the claims asserted arise under federal statutes, namely, the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331 *et seq*.

19.

This matter is removable under 28 U.S.C. § 1441, in that it is a civil action over which the United States District Court for the Eastern District of Louisiana has **original** subject matter jurisdiction under 43 U.S.C. § 1349 and 28 U.S.C. § 1331.

BP's Notice of Removal. Rec. Doc.1-1, at 14-15 (emphasis added). It is obvious from the allegations that BP believes the possible existence of original jurisdiction necessarily confers removal jurisdiction as well. But under Title 28, removal jurisdiction does not flow from the fact that the State of Louisiana through the school board might have elected to sue in federal court.

In its earlier ruling in Docket No. No 10-CV-1156, this Court held that "original jurisdiction rests with this Court pursuant to §1349(b)(1)" because the injury at issue arose out of operations con-ducted on the Outer Continental Shelf. Rec. Doc.470, at 8. This court also stated that "[g]enerally, a defendant may remove a civil action filed in state court if a federal court would have original juris-diction over the action. *See* 28 U.S.C. § 1441." *Id.*, at 4. With all due respect, these observations explain where this Court was led into error in its earlier ruling; because BP and the

plaintiffs a*ssumed* that if original jurisdiction existed under 1349(b)(1), the case was removable[2].

Nobody briefed the issue; and this Court did not expressly rule on the statutory distinction between

original and removal jurisdiction.

With respect to this Court and due respect for its ruling, the analysis was flawed by the

position taken by the parties.  Whether original jurisdiction over a claim may exist under 43 U.S.C.

§1349 is *not* the appropriate ultimate consideration in determining whether removal is proper and

sustainable. There are instances where, under 28 U.S.C. §1441, "the removal jurisdiction of the

federal court is narrower than its original jurisdiction."  *Monroe v. United Carbon Co.*, 196 F.2d

455, 456 (5th Cir.1952).

28 U.S.C. § 1441 provides in part:

(a) Except as otherwise expressly provided by Act of Congress, any civil action
brought in a State court of which the district courts of the United States have original
jurisdiction, may be removed by the defendant or the defendants, to the district court
of the United States for the district and division embracing the place where such
action is pending. For purposes of removal under this chapter, the citizenship of
defendants sued under fictitious names shall be disregarded.

(b) Any civil action of which the district courts have original jurisdiction founded on
a claim or right arising under the Constitution, treaties or laws of the United States
shall be removable without regard to the citizenship or residence of the parties. Any
other such action shall be removable only if none of the parties in interest properly
joined and served as defendants is a citizen of the State in which such action is
brought.

Section 1441(a) provides, generally, that removal jurisdiction exists if there is original

jurisdiction. But, 1441(a) and 1441(b) do not operate independently.  "In order for an action to be

properly removed to federal court, the requirements of *both* 1441(a) and 1441(b) must be satis-fied."

*Hodges v. Shell Oil Co.*, 1997 WL 473809, *2 (E.D.La. Aug 19, 1997). Chief Judge Sear's

---

[2] Indeed, it is questionable whether this Court has original jurisdiction under Section 1349, given
OPA's preemption of OCSLA as discussed below.  However, PPSB will not ask this Court to revisit
its October 6, 2010 ruling except to the extent that it has not considered the distinction between
original and removal jurisdiction.

observation is well grounded in Fifth Circuit law. *See Hufnagel v. Omega Service Industries, Inc.*, 182 F.3d 340, 348 (5th Cir.1999) ("Removal must be proper under 28 U.S.C. § 1441, which authorizes removal of cases "of which the district courts of the United States have original jurisdiction," 28 U.S.C. § 1441(a), provided that, apart from cases "of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States," removal is not proper unless "none of the ... defendants is a citizen of the State in which such action is brought."); *Tennessee Gas Pipeline v. Houston Cas. Ins. Co.*, 87 F.3d 150, 155 (5th Cir.1996), rehearing and suggestion for rehearing en banc denied, 95 F.3d 1151 (5th Cir. 1996) ("Our conclusion that OCSLA vests the federal courts with original subject matter jurisdiction over this case establishes that removal is proper under 28 U.S.C. § 1441(a). We go to § 1441(b) and encounter a problem in deciding whether we have removal jurisdiction under the first sentence."); *Lopez v. Air Logistics, LLC*, 2002 WL 356305. *3 (E.D.La. 2002) ("In order to remove plaintiff's state court action, defendants must not only demonstrate that this Court had original jurisdiction over their claims, satisfying 28 U.S.C. § 1441(a), but they must also show that plaintiff's case is based on claims "arising under" federal law pursuant to 28 U.S.C. § 1441(b)."); *Stokes v. Petroleum Helicopters*, 1997 WL 695557, *3 (E.D.La. 1997) ("In order to remove plaintiffs' state court actions, defendants must not only demonstrate that this Court had original jurisdiction over their claims, but they must also show that plaintiffs' cases are based on claims arising under federal law. 28 U.S.C. § 1441(b)."); *LaRousse v. Murphy Exploration & Production Co.*, 1998 WL 283304, *1 (E.D.La. 1998) ("[T]his court has original jurisdiction over this action under the OCSLA, 43 U.S.C. § 1349(b)(1), and the case may be removed to federal court under 28 U.S.C. § 1441(a). The next step in the analysis is whether this court has removal jurisdiction under § 1441(b)."); *Newman v. Superior Well Services, Inc.*, 1997 WL 208920, *2 (E.D.La. 1997) ("In Tennessee Gas Pipeline, the Fifth Circuit held that a case with original jurisdiction under § 1441(a) cannot be removed unless

subsection (b) of § 1441 is also satisfied. *Tennessee Gas Pipeline*, 87 F.3d at 155; *Bulen v. Hall-Houston Oil Company*, 953 F.Supp. 141, 144 (E.D.La.1997); *Courts v. Accu-Coat Services, Inc*., 948 F.Supp. 592, 594 (W.D.La.1996); Fogelman v. Tidewater Barges, Inc., 747 F.Supp. 355 (E.D.La.1990) (quoting C. Wright and A. Miller, E. Copper, *Federal Practice and Procedure*, § 2674 at 466 (1985))."); *Bulen v. Hall-Houston Oil Co.*, 953 F.Supp. 141, 144 (E.D.La.1997; ("OCSLA jurisdiction pro-vides an alternative basis for original jurisdiction under § 1441(a), but that fact does not resolve the issue of removal jurisdiction. A case with original jurisdiction under § 1441(a) cannot be removed unless it also satisfies one of the two requirements for removal under § 1441(b): 1) original jurisdiction "founded on a claim or right arising under the Constitution, treaties or laws of the United States" (also known as "federal question jurisdiction"); or 2) diversity jurisdiction where "none of the parties in interest properly joined and served as defendants  is a citizen of the State in which the action is brought." *See Tennessee Gas Pipeline*, 87 F.3d at 155-156 (notwithstanding OCSLA original jurisdiction, both § 1441(a) and (b) must be satisfied for removal jurisdiction); *Courts v. Accu-Coat Serv., Inc*., 948 F.Supp. 592, 594 (W.D.La.1996) (remanding suit with original jurisdiction under the OCSLA because the substantive claims brought under maritime and state laws did not satisfy § 1441(b)); *Fogleman*, 747 F.Supp. at 355 (quoting C. Wright and A. Miller, E. Cooper, *Federal Practice and Procedure*, § 3674 at 466 (1985)); Schoenbaum, Thomas J., *Admiralty and Maritime Law*, Vol. 1, § 4-3 at 139-40 (1994)); *Calloway v. CNG Producing Co.,* 1997 WL 469964, *2 (E.D.La. 1997); ("The Fifth Circuit in Tennessee Gas Pipeline found that when OCSLA vests the federal courts with original subject matter jurisdiction, removal is proper under 28 U.S.C. § 1441(a). 87 F.3d at 155. The court is then to go to § 1441(b) to determine whether there is removal jurisdiction."); *Estay v. Archer-Daniels Midland Co.*, 1995 WL 83698, *1 (E.D.La. 1995) ("Subsection (a) permits removal of actions where "the district courts of the United States have original jurisdiction ..." 28 U.S.C. § 1441(a). However, §1441(a) is prefaced by the language,

"Except as otherwise expressly pro-vided by Act of Congress...." Section 1441(b) is one of these express provisions and, therefore, trumps § 1441(a)."); *Cedillo v. Valcar Enterprises & Darling Delaware Co., Inc.*, 773 F.Supp. 932, 936 n.5 (N.D.Tex. 1991 ("Section 1441(b) should be understood not as providing a removal right but rather as imposing a limitation on the removal. right set out in § 1441(a). *See Thomas*, 740 F.2d at 482 (§ 1441(a) allows removal subject to limitations in § 1441(b)).").

Had this Court considered whether the requirements of 1441(a) *and* (b) were met, it would have concluded that removal jurisdiction did not exist: The first sentence of 1441(b) cannot apply because there is no claim alleged that arises under federal law.  The second sentence of 1442(b) cannot apply because there are Louisiana defendants, properly joined.

### A.    This Case Does Not Arise under Federal Law.

This action does not arise under the laws of the United States,  for two reasons.  First, the Oil Pollution Act preempts all federal law with regard to damages for oil spills on the Outer Continental Shelf or elsewhere, although it does expressly preserve state law claims.  Therefore, this oil-spill damage claim does not arise out of or in connection with any operation conducted on the outer Continental Shelf.   Second, 43 U.S.C. 1333(a)(2)(A), which borrows state law on the Shelf, has a situs requirement, which requires that the injury occur on the shelf.

### 1.    OPA Preempts All Federal Law on the Outer Continental Shelf as it Relates to Oil Spills, and Opa Express Preserves State Remedies and State Concurrent Jurisdiction.

In *Altria Group, Inc. v. Good,* 129 S. Ct. 538, 543 (2008), the High Court noted that "Congress may indicate preemptive intent through a statute's express language or through its

structure and purpose." The Court also determined that preemptive intent may be inferred. *Id.* The "ultimate touchstone in every preemption case," said the court, is the intent of Congress.

The Oil Pollution Act, 28 U.S.C. §§2702 *et seq.*, enacted in response to the Exxon Valdez oil spill in Prince William Sound, Alaska**,** declares that:

> *Notwithstanding any other provision or rule of law,* and subject to the provisions of this Act, each responsible party for a vessel or facility from which oil is discharged, or which poses the substantial threat of a discharge of oil, into or upon the navigable waters or adjoining shorelines or the exclusive economic zone is liable for the removal costs and damages specified in subsection (b) that result from such incident.

33 U.S.C. §2702(a) (Emphasis supplied). Congress intended by this measure to "streamline federal law" and to "provide *quick and efficient cleanup of oil spills,* compensate victims of such spills, and internalize the costs of spills with the petroleum industry." *Rice v. Harken Exploration Co.,* 250 F. 3d 264, 266 (5th Cir. 2001)(citing Senate Report No. 101-94, *reprinted* in U.S.C. C.A.N. 772, 723)(emphasis supplied); *In the Matter of Settoon Towing LLC,* 2009 WL 4730971 (E.D.La.2009). In view of the comprehensive scope and legislative history of the act, several courts have decided that OPA preempts or otherwise supplants preexisting federal law. *South Port Marine LLC v. Gulf Oil Limited Partnership,* 234 F. 3d 58, 65 (1st Cir. 2000); *Settoon Towing, LLC, supra; Gabarick v. Laurin Maritime, Inc.,* 623 F. Supp. 2d 741, 750 (E.D.La. 2009); *Tanguis v. M/V Westchester,* 153 F. Supp. 2d 859, 867 (E.D.La. 2001). None of these cases was called upon to address nor did address OPA's impact on OCSLA. However, they found that it displaced general maritime law, whose constitutional underpinnings establish a much higher bar to displacement that OCSLA, which is merely another statute. *See Gabarick,* 623 F. Supp 2d at 746-747. In so holding, these courts hearkened to reminders by the United States Supreme Court that "[w]here a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it," *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 19, 100 S. Ct. 242 (1990), and "when Congress does speak directly to a question, the courts are not free to 'supplement' Congress's

answer so thoroughly that the act becomes meaningless," *Miles v. Apex marine Corp.,* 498 U.S. 19, 32, 111 S.Ct. 317 (1990).

The *Gabarick* analysis strongly suggests that OPA preempts many of the general maritime and admiralty claims which various and sundry plaintiffs have asserted against BP under OCSLA.[3] The Fifth Circuit considers four factors to be considered when analyzing statutory preemption of general maritime claims : 1) legislative history; 2) the scope of the legislation; 3) whether judge-made law would fill a gap left by Congress's silence or rewrite rules Congress enacted, and 4) the likelihood that Congress intended to preempt "long-established and familiar principles of the common law or the general maritime law."  *United States v. M/V Big Sun,* 681 F. 2d 432, 442 (5th Cir. 1982).  The same factors are instructive in considering OPA's preemption of the constitutionally unprotected OCSLA.

### a)    OPA Legislative History Supports Preemption.

*Gabarick*  found from the following statements that Congress intended, in enacting OPA, to create a *single* federal law regarding liability and damages for oil pollution:

> It is important to note that following the enactment of this Act, liability and compensation for petroleum oil pollution damages caused by a discharge from a vessel or facility will be determined in accordance with this Act.

> H.R. Conf. Rpt., p. 802.

> OPA "create[s] a single Federal law providing clean-up authority, penalties, and liability for oil pollution."

Senate Rpt., p. 730.  Accordingly, there was a clear intention to supercede OCSLA with respect to

---

[3] OPA preemption would not bar those claims which are not encompassed by its structure of remedies.  For example, OPA does not address damages for personal injury or death.  This lacuna is consistent with the statute's objective of regulating remedies for and damages arising out of oil pollution.  *See,* 33 U.S.C. §2751, and *Gabarick,* 623 F. Supp. at 748 ("Preemption by OPA of the claims covered by OPA still allows the claimant to pursue claims not covered by OPA under general maritime and admiralty law.")

oil pollution, wherever the spill may originate.  This gives rise to preemption of any federal law that otherwise might apply under the OSCLA. *See Altria Group, Inc. v. Good, supra*.

### b)      The Scope of OPA supports preemption.

*Gabarick* found that the text of OPA implies its mandatory and exclusive nature.  623 F. Supp. 2d at 745.  As noted above, Section 2702 (a) mandates the strict liability for the damages enumerated in section (b), "notwithstanding any other provision or rule of law, and subject to the provisions of this Act."  Section 2713(a) uses the absolute words "all" and "shall," directing the course of action for "all claims," and mandating that they "shall" first be presented to the responsible party.

Prior to the enactment of OPA, OCSLA contained provision for an "Offshore Oil Spill Pollution Fund" whose purpose was "to pay for the prompt removal of any oil spilled or discharged as a result of activities on the Outer Continental Shelf and for any damages to public or private interests caused by those discharges." 43 U.S.C. §1802(8).  The provisions for OCSLA pollution fund were repealed in 1990.   The drafters of OPA explained that this was done because the OPA fund would "assume all liabilities of the former OCSLA fund:"

> Section 405 of the Senate amendments provides that the remaining balance of the Offshore Oil Pollution Fund established under the Outer Continental Shelf Lands Act of 1978 (OCSLA) is transferred to the Oil Spill Liability Trust Fund [created under OPA] and that the Fund will assume all liabilities of the former fund.  Title III of that law (Public Law 95-372), which established the Offshore Oil Pollution Compensation Fund is repealed in its entirety.

House Conf. Rep. No. 101-653, reprinted at 1990 U.S.C.C.A.A.N., p. 803.  The shift in the compensation fund from OCSLA to OPA is consistent with and indicative of the intention to establish OPA as the exclusive federal remedy.

### c)       OCSLA Is Preempted Because Judge-made Law Would Not Fill a Gap Left by Congress's Silence or its Application Would Require the Rewriting of Rules That Congress Enacted.

In its savings clause, OPA expressly leaves claims not addressed by the act to general maritime and admiralty law.  33 U.S.C. §2751.  This means that this Court cannot, by establishing OCSLA as a companion to OPA, fill a gap that OPA has left open, for OPA specifically invokes the application of other laws to areas beyond its express reach.  The establishment of OCSLA as a complementary law would instead simply override Congress's intent that OPA provide the exclusive federal remedy for the covered acts and damages.

### d)      The Likelihood That Congress's Intent to Preempt OCSLA Is High

*Altria* found that the Federal Cigarette Labeling and Advertising Act did not preempt a claim of deceptive advertising under a state unfair trade practices act.  The federal act's purpose of informing the public concerning the risks of smoking, the court reasoned, would not be served by limiting the states' authority to prohibit deceptive statements in cigarette advertising.   The "tangential relationship" between the statutes under consideration in *Altria*, *Gabarick* observed, "is quite distinct from claims that are explicitly covered by OPA rather than tangentially related."  623 F. Supp. at 749.  The intent of Congress,  *Gabarick* concluded, was to enact comprehensive federal legislation that provides "cleanup authority, penalties, and liability for oil pollution."  *Id.,* at 750, citing Senate Rpt., p. 730.

The abolition of OCSLA's compensation fund and assumption of its functions, liabilities, and assets by the newly-created OPA fund further signifies the Congressional intent to substitute OPA as the exclusive federal remedy for covered damages from oil spills, regardless of origin on the outer Continental Shelf.

### e)      OPA Expressly Preserves State Law Rights and Remedies, Which Would Be Utterly Inconsistent with a Finding That a Spill on the Shell Gives Rise to Federal Removal Jurisdiction.

Unlike OCSLA, which adopts applicable state law *as federal law*, OPA preserves the states' rights to create and enforce state law *as state law*.   OPA expressly states that its provisions shall

not be construed as "preempting the authority of any State or political subdivision thereof from imposing any additional liability," 33 U.S.C. §2718(a), nor to affect the authority of the United States or any State or political subdivision thereof 1) to impose additional liability or additional requirements; or 2) to impose, or to determine the amount of, any fine or penalty (whether criminal or civil in nature) for any violation of law," *Id.* at §2718 (c).

Notably, the savings clause appears in Title I, which regulates oil spill liability, but does not regulate the design, equipment, or operation of vessels or rigs.  Thus, States' freedom to impose additional fines and liability is limited to the compensation of damages, and would not encompass the regulation of oil transportation or drilling operations, as to which a greater federal interest arguably obtains.  OPA appears to exercise exclusive authority over the latter subjects, while affording the states the right to prescribe liability only for damages "relating to the discharge, or substantial threat of discharge, of oil."  33 U.S.C. §2718 ©; *see, United States v. Locke,* 529 U.S. 89, 105, 120 S. Ct. 1135 (2000).

That Congress meant precisely what it said about preserving state-law damage claims is clarified by the Senate Report of the legislation:

> Section 106 of the reported bill explicitly preserves the authority of any State to impose its own requirements or standards with respect to discharges of oil within such State.  Also explicitly preserved is States' authority to establish or maintain funds for cleanup or compensation purposes and collect such fees or penalties as they may establish.

Senate Rep. No. 101-94, reprinted at 1990 U.S.C.C.A.A.N., p. 739.

These conclusions, the report explains, derived from an in-depth discussion of preemption. "The issue of Federal preemption of State laws," the Senate Report observed, "is one that often arises during the formulation of legislation which imposes Federal environmental controls."  *Id.,* at 727.  Prior federal legislation "has affirmed the rights of States to protect their own air, water, and land resources by permitting them to establish State standards which are more restrictive than

Federal standards." *Id.*   Ultimately, Congress reserved to the States the right "to determine for

themselves the best way in which to protect their citizens:"

> Preemption has been discussed by the members of the Committee more than any other single issue.  S. 686 does not embrace any preemption of State oil spill liability laws, State oil spill funds, or State fees, taxes, or penalties used to contribute to such funds.  The long-standing policy in environmental laws of not preempting State authority and recognizing the rights of States to determine for themselves the best way in which to protect their citizens, is clearly affirmed in S. 686.

*Id.* at 739.

Congress envisioned a system under which parties would have a choice whether to pro-ceed

under state or federal law.   At the time OPA was enacted, twenty-four states already had oil spill

and compensation laws on the books, and twelve states had oil spill funds.  Seventeen of the states'

laws had liability without specified limits.  The oil companies lobbied hard for federal preemption,

arguing that they could not afford reasonably-priced insurance coverage under such regimes and

even suggesting that "they would not operate in an atmosphere of 'unlimited' risk."  *Id.,* at 728.

Congress found their arguments "totally unfounded," noting that no oil shipping or producing

companies were avoiding the seventeen states without liability limits.  *Id.*  In choosing to expose oil

producers to state laws of potentially unlimited risk, Congress affirmed two "widely accepted" core

principles: "a polluter should pay in full for the costs of oil pollution paid by that polluter; and, a

victim should be fully compensated."  *Id.*

OPA was "designed to provide basic protection for the environment and victims damaged

by spills of oil." *Id.,* at 728.  A State "wishing to impose a greater degree of protection for its own

resources and citizens is entitled to do so."  *Id.*  On the other hand, a State which considered itself

adequately protected by OPA could choose not to enact additional state law.  "In any event," the

Committee said, it chose "not to impose, arbitrarily, the constraints of the Federal regime on the

States while at the same time preempting their rights to their own laws."  *Id.* The acknowledged

federalism concerns that underlie OPA's decision against preemption have counseled courts to take an equally skeptical view of preempting state law, including state law not specifically regulating liability for oil releases. *South Port Marine, LLC v. Gulf Oil Limited Partnership,* 234 F. 3d 58, 65 (1st Cir. 2000) ("Where as here the state remedy is aimed at a matter of great and legitimate state concern, a court must act with caution"); *Russo v. M/T Dubai Star,* 2010 WL 1753187 (N.D. Ca. 2010); *Isla Corp. V. Sundown Energy LP*, 2007 WL 1240212, at 2 (E.D.La.. 2007); *Williams v. Potomac Elec. Power Co.,* 115 F. Supp. 2d 561, 565 & n. 3 (D. Md. 2000).

This Court's ruling does violence to the scheme established by OPA. In effect, this Court justified removal on a theory of complete preemption by OCSLA; this theory holds that oil spill claims, although asserted under state law are "necessarily federal" by virtue of the initiating explosion on the Continental shelf. *See,* Wright and Miller, *Federal Practice and Procedure,* §3722.2. The fundamental error in the Court's decision is that it overlooks OPA's preemption of OCSLA, and Congress's explicit intention to preserve Louisiana's right to establish its own remedies, completely independent of federal law, for damages relating to oil pollution. This Court's ruling undermined the very right Congress meant to affirm, "of States to protect their own air, water, and land resources."

> **2.   State Law Is Borrowed as Federal Law Only If Not Otherwise Inconsistent with Federal Law, like OPA, and Only If the Situs of the Injury Is on the Shelf.**

28 U.S.C. § 1333, entitled "Laws and regulations governing lands," provides in pertinent part:

> (2)(A) To the extent that they are applicable and **not inconsistent with this subchapter or with other Federal laws and regulations** of the Secretary now in effect or hereafter adopted, **the civil and criminal laws of each adjacent State, now in effect or hereafter adopted, amended, or repealed are declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon**, which would be within the area of the State if its boundaries were extended seaward

to the outer margin of the outer Continental Shelf, and the President shall determine and publish in the Federal Register such projected lines extending seaward and defining each such area. All of such applicable laws shall be administered and enforced by the appropriate officers and courts of the United States. State taxation laws shall not apply to the outer Continental Shelf.

(emphasis supplied).

*In Landry, et al. v. Island Operating Company Inc.*, 2009 WL 3241560 (W.D.La.), Judge

Melancon observed that

[t]he Fifth Circuit has conclusively stated in tort cases the "situs" required to trigger OCSLA refers to the location of the injury. *See, e.g., Golden v. Omni Energy Services Corp.*, 242 Fed. Appx. 965, 967 (5th Cir.2007) ("OCSLA ... compel[s] the district court to take into account the location of incidents giving rise to the lawsuit"); *Demette v. Falcon Drilling Co., Inc.*, 280 F.3d 492, 496 (5th Cir.2002) ("First, we must determine whether the injury occurred on an OCSLA situs ..."); *Mills v. Director, Office of Workers' Compensation Programs, U.S. Dept. of Labor*, 877 F.2d 356 (5th Cir.1989) (en banc) (holding that applicability of § 1333(b) limited to "situs" of injury).

He further extensively analyzed the concept of when a cause of action in tort accrues, and noted that

until injury ensues, no action claim has arisen. *See Landry, supra*, at 3. Finally, he convincingly

discussed all cases that bear upon the subject, and noted that "defendants' numerous cited cases do

not reveal a single instance where an actual injury suffered on land has been construed to be covered

by the Outer Continental Shelf Lands Act." *Id*. [4]

Judge Melancon's decision has even greater force in a case such as this, where there is an

express body of federal law that preempts OCSLA, bu also expressly preserves all state law

remedies and state concurrent jurisdiction.   Surely, if OCSLA does not give rise to removal

---

[4] The Fifth Circuit recently distinguished tort from contractual disputes, and held that in the latter class of cases, which are governed by 43 U.S.C. 1333(b), instead of 1333(a)(2)(A), the focus-of-the-contract test determines the situs of the controversy in contract cases under the Outer Continental Shelf Lands Act. *See Grand Isle Shipyard, Inc. v. Seacor Marine*, LLC, 589 F.3d 778 (5th Cir2009), *cert. denied, Seacor Marine LLC v. Grand Isle Shipyard, Inc.*, 130 S.Ct. 3386, 177 L.Ed.2d 302, (U.S.  2010).   In so holding, the Court distinguished tort cases, and left undisturbed its previous "cases that had determined OCSLA situs using tort principles" in tort claims. *Id*, at 786-77.

jurisdiction for personal injury damages occurring on land, even though they would not occurred "but for" operations on the shelf, OSCLA cannot apply where that injury is damage from an oil spill. The situs requirement, as interpreted by the preceding cases, is entirely consistent with OPA's tactical decision to reserve to the States the right to establish liability and compensation for oil spill *injuries,* while reserving to federal jurisdiction the regulation of *operations* on rigs and vessels. *See, United States v. Locke,* 529 U.S. 89, 105, 120 S. Ct. 1135 (2000), and discussion at pp.14-15 *supra.*

In its earlier decision denying remand, this Court stated that it need not consider the "situs" test because it was clear that the Fifth Circuit used the "but for" test to determine the scope of the grant of original jurisdiction under 43 U.S.C. § 1349:

> Plaintiff's arguments related to OCSLA § 1333 is not applicable to whether this Court has jurisdiction in this matter. "The Supreme Court and the Fifth Circuit have held that § 1333 creates a situs requirement for the application of other sections of the OCSLA." *Landry v. Island Operating Co. Inc.*, Civ. A. No. 09-1051, 2009 WL 3241560, *2-3 (W.D.La. Sept. 30, 2009) (citing *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 219, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986); Demette v. Falcon Drilling Co., Inc., 280 F.3d 492, 496 (5th Cir.2002)). However, although the Fifth Circuit has discussed § 1333 and its situs requirement in relation to § 1349, *See Golden v. Omni Energy Services Corp*., 242 Fed.Appx. 965, 967 (5th Cir.2007), **neither the Supreme Court nor the Fifth Circuit has held that the situs requirement has to be satisfied for jurisdiction to be proper under § 1349.** As stated above, the Fifth Circuit generally focuses on the "operation" and the "but-for" test to determine if jurisdiction exists under § 1349.

*In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, supra,* at 5 n.1 (emphasis added).

With all due respect, this sidestep falls prey to the same error as discussed above – the erroneous assumption that if original jurisdiction exists under 1349, then the question of whether federal law (in the form of borrowed state law) is not relevant. While the quotation above embraces Judge Melancon's view that there is a "situs" requirement for determining whether state law is borrowed and becomes federal law under Section 1333, it falters in its conclusion that the borrowing issue is not relevant to determine *removal* jurisdiction. While situs may be irrelevant to the question

of original jurisdiction under Section 1339, *removal* jurisdiction only exists in this nondiverse action if there is a federal question as mandated by 28 U.S.C. 1442(b). A federal question does not exist under OCSLA unless state law is borrowed as federal law under 43 U.S.C. § 1333 (if it could be borrowed at all given OPA preemption).

In sum, this Court's ruling overturns a carefully-crafted Congressional determination that OPA should provide the exclusive federal remedy for oil spill cases, and that States have an incontrovertible interest in establishing, enforcing, and exercising jurisdiction over laws designed to compensate their citizens for injuries within their borders.

**B.    The Action Is Not Be Removable Because There Are Louisiana Defendants Who Are Properly Joined.**

As noted above,  in order for an action to be removable, both 1441(a) and 1442(b) must be satisfied.  In the absence of a claim arising under federal law Section 1442(b) will apply "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."

> As explained in *Monroe v. United Carbon Co.*, 196 F.2d 455, 456-457 (5th Cir.1952), § 1441(a) and (b) must be read together. Section 1441(a) provides that a case may be removed if the federal court would have had original jurisdiction of the matter, "[e]xcept as otherwise expressly provided by Act of Congress." But, **1441(b), the next paragraph, expressly provides that the action shall be removable only if no defendant is a resident of the state in which the action is brought**. The statute thus "expressly makes a distinction between the original jurisdiction and the [narrower] removal jurisdiction" of the district court. Ibid.

*Alexander v. Metropolitan Life Ins. Co.,* 1994 WL 202350, *2 (E.D.La. May 16, 1994). This is commonly referred as to the "forum defendant rule."

PPSB properly named as defendants two Louisiana residents, Ronald Sepulvado and Donald Vidrine.  The petition alleges that both of these men were grossly negligent in the performance of their duties in executive positions for BP, which directly led to the explosion on the rig, and the resulting spill.  See Petition, at par. 8.

If these allegations are proved, there is no doubt that Louisiana would impose liability. "[A]n injury suffered by a third party which is due to the breach of a legal obligation which the corporate officer or officers owed to the third party, whether it also involved the breach of a duty due to the corporation, would give rise to a cause of action against the corporate officers for the breach of such legal obligation. It would matter not whether the breach of a legal obligation due and owing by a corporate officer to a third party. . . was the result of misfeasance, malfeasance, or nonfeasance." *See Strickland v. Transamerica Ins. Co.*, 481 F.2d 138, 143  (5th Cir.1973), quoting *Adams v. Fidelity and Casualty Company of New York*, 107 So.2d 496 (La.App.4th Cir. 1958).   That corporate officers or employees owe duties to third parties, and not merely to their  employers, was resolved definitively in the landmark Louisiana case of *Canter v. Koehring Co.*, 283 So.2d 716 (La. Sep 24, 1973).[5] As the Fifth Circuit stated: "The court recognized that such individuals, like all persons, have a general duty to exercise due care so as to avoid injuries to third persons." *Ford v. Elsbury*, 32 F.3d 931 (5th Cir.1994), citing *Canter* at 722 & n. 7.   Removal in *Ford* was based on the claim that Elsbury (and another not in issue on appeal) had been fraudulently joined. After noting the circumstances under which Louisiana law held that a corporate officer or employee could be held liable for injuries to third parties, the Fifth Circuit stated that Elsbury's liability turned on factual issues such as whether he or others delegated with due care the responsibility of safe maintenance and operation of the reactor, and whether he was aware, or should have been aware, of a risk of harm and failed to respond to that risk in the manner in which a reasonably prudent plant manager would respond in similar circumstances. 32 F.3d at 935-36. The Court held that remand was required

---

[5]One of the holdings of *Canter*, that an employee could sue executive officers in tort without the bar of workmen's compensation law, was superceded by statute: "with Act No. 147, the 1976 legislature amended La. R.S. 23:1032 to extend the employer's tort immunity to persons previously considered third parties under the Act." *Walls v. American Optical Corp.*, 1998-0455, *3 (La. 9/8/99), 740 So.2d 1262, 1265.  This statutory amendment, however, left undisturbed the liability of corporate employees to third parties.

because the defendant did not carry the burden of proving fraudulent joinder. Despite affidavits stating that Elsbury had no duty for public safety, the Court found competing evidence whether the defendant, through Elsbury, intentionally ignored known risks in order to prevent plant shutdown. *Id*., at 939.

BP's suggestion that the Louisiana defendants were improperly joined, and thus that their citizenship can be ignored, is wrong.  In *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir.2004), *cert. denied*,  544 U.S. 992, 125 S.Ct. 1825, 161 L.Ed.2d 755 (2005), the Fifth Circuit stated that: we have recognized two ways to establish improper joinder: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *See also Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278 (5th Cir. 2007). Absent proof that the non-foreign defendant's domicile is actually outside the jurisdiction, the only possible avenue for establishing fraudulent joinder is (2) inability to establish claim.  *See, Smith v. Petsmart Inc*., 278 Fed.Appx. 377, 379  (5th Cir.2008) ("The defendants do not dispute that both the Smiths and Murry are Mississippi residents. Therefore, we focus on the second method of establishing improper joinder.")  The second prong can be evaluated by either a "Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant," or the court may "in its discretion, pierce the pleadings and conduct a summary inquiry," that can involve summary judgment-type evidence "but must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff." *Id.* Prong one has no been alleged; *Elsbury* makes clear that prong two cannot be satisfied.   Accordingly, there are forum defendants, which prevents removal from being based upon 1442(b).

## III.    REQUEST FOR SECTION 1292(b) CERTIFICATION AND A STAY

An order denying remand of a case removed to federal court is not a final order within the

meaning of 28 U.S.C. §1291. *PCI Transportation, Inc. v. Fort Worth & Western Railroad Company,* 418 F. 3d 535, 539; *Melancon v. Texaco, Inc.,* 659 F. 2d 551, 552-553. Thus, such an interlocutory order cannot be appealed unless certified by the district court in accordance with 28 U.S.C. §1292(b), which provides that a district court may certify an otherwise non-appealable order for immediate appeal if he "shall be of the opinion that such an order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation. . . ."

Even should this Court decide, upon consideration of the arguments raised herein, to maintain its October 6th ruling denying remand, it should also recognize that the jurisdictional issues are serious and warrant a definitive resolution at the outset of the litigation. A question of subject matter jurisdiction necessarily affects the ultimate termination of litigation, at least in the forum court." *Ex parte Tokio Marine & Fire Ins. Co.*, 322 F.2d 113, 114 (5th Cir. 1963). ("[T]he 'litigation' is here the Louisiana libel against the tug's underwriters. If the underwriters are correct- and we may assume without deciding the if is a big one- then the Constitution forbids the further prosecution of the case against them in Louisiana. An authoritative decision would not only 'materially advance' the ultimate disposition of 'the litigation,' it would terminate it altogether. On that hypothesis, to require the parties to go through a trial before a court lacking jurisdiction would be both expensive and senseless for no matter what facts were developed on the trial, the Constitution would forbid the adjudication there. Nothing in the legislative history requires any such artificial result.")

Here, not only is there an issue the resolution of which affects the progress of litigation, but there is a controlling issue of law – whether OCSLA is preempted by OPA. *See e.g., Miara v. First Allmerica Financial Life Ins. Co.,* 379 F.Supp.2d 20 (D.Mass.2005) (Controlling question of law would be certified to the Court of Appeals for the First Circuit as to whether ERISA preempted state

law claims against an insurer, an insurance agency, and an insurance agent stemming from misrepresentations and assurances made by the insurance agent in connection with the establishment of an employee benefit plan; there was substantial ground for difference of opinion and an immediate appeal from court's non-preemption ruling could materially advance the ultimate termination of the litigation.).  Moreover, the resolution of this issue affects other cases, some of which have already been filed in this MDL, and others undoubtedly yet to be filed.  *See e.g., Freedman v. Philadelphia Terminals Auction Co*., 197 F.Supp. 849 (D.C. Pa. 1961), *aff'd,* 301 F.2d 830, (3rd Cir), *cert. denied* 83 S.Ct. 40, 371 U.S. 829, 9 L.Ed.2d 67  (1962) (Court, upon denying alternative motion for judgment notwithstanding adverse verdict or for new trial of certain plaintiffs in Robinson-Patman Act case, would certify that order of denial involved controlling questions of law as to which there was substantial ground for difference of opinion and that immediate appeal might materially advance ultimate termination of litigation, in view of pending claims of many other plaintiffs and another holding in district under statute. ).  Also, the issue herein is one of  first impression and of significant legal significance, as it involves the State of Louisiana's right to prosecute claims for civil penalties for violation of laws that are eepressly exempt from OPA preemption  in its own courts.  *See e.g., Republic of Colombia v. Diageo North America Inc*, 619 F.Supp.2d 7 (D.C. .N.Y. 2007) (dismissal of Colombian RICO claims, which involved questions of first impression and significant legal policy concerns that had not been considered in other revenue rule and penal law rule decisions, gave rise to a substantial ground for disagreement subject to interlocutory appeal .)

With regard to a stay of the proceedings pending appeal, Section 1292(b) further states: "Provided, however, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order."  For all the reasons militating in favor of a Section 1292(b) certification, the action should be stayed

under Rule 62(h) pending appeal.

Respectfully submitted,


/s/ Robert E. Arceneaux                          /s/ Margaret E. Woodward
_____                  _____
ROBERT E. ARCENEAUX, ESQ. (No.                   MARGARET E. WOODWARD, ESQ.(No.
1199)                                            13677)
Robert E. Arceneaux, LLC                         3701 Canal Street, Suite C
47 Beverly Garden Drive                          New Orleans, Louisiana 70119
Metairie, LA 70001                               Telephone: 504.301.4333
Telephone: 504.833.7533                          Facsimile:  504.301.4365
Facsimile: 504.833.7612                          Email:  mewno@aol.com
Email: rea7001@cox.net

**Attorneys for State of Louisiana through the Plaquemines Parish School Board**


**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Memorandum in Support of Motion for Remand and

for Certification under 28 U.s.c §1292(b) and Stay of Proceedings Pending Appeal has been served

on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with

Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the

United States District Court for the Eastern District of Louisiana by using the CM/ECF System,

which will send a notice of electronic filing in accordance with the procedures established in

MDL 2179, on this 3rd day of March, 2011.



/s/ Robert E. Arceneaux
_____