09:23AM

1              UNITED STATES DISTRICT COURT
2              EASTERN DISTRICT OF LOUISIANA

3    *****************************************************************

4    IN RE:  OIL SPILL BY THE
     OIL RIG *DEEPWATER HORIZON*
5    IN THE GULF OF MEXICO ON
     APRIL 20, 2010
6                              CIVIL ACTION NO. 10-MD-2179 "J"
                               NEW ORLEANS, LOUISIANA
7                              FRIDAY, FEBRUARY 25, 2011, 11:00 A.M.

8    THIS DOCUMENT RELATES TO
     ALL ACTIONS
9
     *****************************************************************

10

11                   TRANSCRIPT OF PROCEEDINGS
             HEARD BEFORE THE HONORABLE SALLY SHUSHAN
12                UNITED STATES MAGISTRATE JUDGE

13

14   APPEARANCES:

15

16   PLAINTIFFS'
     LIAISON COUNSEL:         DOMENGEAUX WRIGHT ROY & EDWARDS
17                            BY:  JAMES P. ROY, ESQUIRE
                              P. O. BOX 3668
18                            556 JEFFERSON STREET
                              LAFAYETTE, LA  70502
19

20                            HERMAN HERMAN KATZ & COTLAR
                              BY:  STEPHEN J. HERMAN, ESQUIRE
21                            820 O'KEEFE AVENUE
                              NEW ORLEANS, LA  70113
22

23

24   FOR THE PLAINTIFFS:      CUNNINGHAM BOUNDS
                              BY:  ROBERT T. CUNNINGHAM, ESQUIRE
25                            1601 DAUPHIN STREET
                              MOBILE, AL 36604

```
 1   APPEARANCES CONTINUED:

 2

 3                            LEWIS, KULLMAN, STERBCOW & ABRAMSON
                             BY:  PAUL M. STERBCOW, ESQUIRE
 4                           PAN AMERICAN LIFE BUILDING
                             601 POYDRAS STREET, SUITE 2615
 5                           NEW ORLEANS, LA  70130

 6
                             COLSON, HICKS, EIDSON, COLSON, MATTHEWS,
 7                           MARTÍNEZ, GONZALES, KALBAC & KANE
                             BY:  ERVIN A. GONZALEZ, ESQUIRE
 8                           255 ALHAMBRA CIRCLE, PENTHOUSE
                             CORAL GABLES, FL  33134
 9

10

11   FOR THE UNITED STATES
     OF AMERICA:             ENVIRONMENTAL ENFORCEMENT SECTION
12                           U.S. DEPARTMENT OF JUSTICE
                             BY:  STEVEN O'ROURKE, ESQUIRE
13                           P.O. BOX 7611
                             WASHINGTON, D.C. 20044
14

15

16   FOR STATE INTERESTS:    OFFICE OF THE ATTORNEY GENERAL
                             STATE OF ALABAMA
17                           BY:  COREY L. MAZE, ESQUIRE
                             501 WASHINGTON AVENUE
18                           MONTGOMERY, AL  36130

19

20   FOR THE STATE OF
     LOUISIANA:              KANNER & WHITELEY
21                           BY:  ALLAN KANNER, ESQUIRE
                             701 CAMP STREET
22                           NEW ORLEANS, LA  70130

23
                             HENRY DART
24                           ATTORNEYS AT LAW
                             510 NORTH JEFFERSON STREET
25                           COVINGTON, LA  70433
```

```
 1   APPEARANCES CONTINUED:

 2

 3   FOR BP AMERICA INC.,
     BP AMERICA PRODUCTION
 4   COMPANY, BP COMPANY
     NORTH AMERICA INC.,
 5   BP CORPORATION NORTH
     AMERICA INC.,
 6   BP EXPLORATION &
     PRODUCTION INC.,
 7   BP HOLDINGS NORTH
     AMERICA LIMITED,
 8   BP PRODUCTS NORTH
     AMERICA INC.:            LISKOW & LEWIS
 9                            BY:  DON K. HAYCRAFT, ESQUIRE
                              ONE SHELL SQUARE
10                            701 POYDRAS STREET
                              SUITE 5000
11                            NEW ORLEANS, LA 70139

12
                              KIRKLAND & ELLIS
13                            BY:  J. ANDREW LANGAN, ESQUIRE
                                   MARK J. NOMELLINI, ESQUIRE
14                            300 N. LASALLE
                              CHICAGO, IL 60654
15

16                            COVINGTON & BURLING
                              BY:  DAVID B. GOODWIN, ESQUIRE
17                            ONE FRONT STREET
                              SAN FRANCISCO, CA   04111
18

19
     FOR TRANSOCEAN HOLDINGS
20   LLC, TRANSOCEAN
     OFFSHORE DEEPWATER
21   DRILLING INC., AND
     TRANSOCEAN DEEPWATER
22   INC.:                    FRILOT
                              BY:  KERRY J. MILLER, ESQUIRE
23                            ENERGY CENTRE, 36TH FLOOR
                              1100 POYDRAS STREET
24                            NEW ORLEANS, LA  70163

25
```

```
 1   APPEARANCES CONTINUED:

 2


 3   FOR CAMERON INTERNATIONAL
     CORPORATION:                STONE PIGMAN WALTHER WITTMANN
 4                               BY:  CARMELITE M. BERTAUT, ESQUIRE
                                 546 CARONDELET STREET
 5                               NEW ORLEANS, LA 70130

 6
                                 BECK REDDEN & SECREST
 7                               BY:  DAVID J. BECK, ESQUIRE
                                 ONE HOUSTON CENTER
 8                               1221 MCKINNEY STREET, SUITE 4500
                                 HOUSTON, TX  77010
 9

10

11   FOR HALLIBURTON
     ENERGY SERVICES, INC.:  GODWIN RONQUILLO
12                               BY:  DONALD E. GODWIN, ESQUIRE
                                      STEFANIE K. MAJOR, ESQUIRE
13                                    JENNY L. MARTINEZ, ESQUIRE
                                 1201 ELM STREET, SUITE 1700
14                               DALLAS, TEXAS 75270

15
                                 GODWIN RONQUILLO
16                               BY:  R. ALAN YORK, ESQUIRE
                                 1331 LAMAR, SUITE 1665
17                               HOUSTON, TEXAS 77010

18

19   FOR ANADARKO
     PETROLEUM CORPORATION,
20   ANADARKO E&P COMPANY LP,
     MOEX USA CORPORATION,
21   AND MOEX OFFSHORE 2007
     LLC:                        BINGHAM MCCUTCHEN
22                               BY:  KYLE KIRBY, ESQUIRE
                                 2020 K STREET
23                               WASHINGTON, DC  20006

24

25
```

```
 1  APPEARANCES CONTINUED:

 2

 3  FOR M-I L.L.C.:              MORGAN, LEWIS & BOCKIUS
                                 BY:  DENISE SCOFIELD, ESQUIRE
 4                               1000 LOUISIANA STREET, SUITE 4000
                                 HOUSTON, TX   77002
 5

 6  FOR O'BRIEN'S RESPONSE
    MANAGEMENT, INC.,
 7  SEACOR HOLDINGS, INC.,
    SEACOR OFFSHORE LLC,
 8  SEACOR MARINE, LLC,
    SEACOR WORLDWIDE, INC.,
 9  SEACOR MARINE, INC.,
    SEACOR MARINE
10  INTERNATIONAL, INC.,
    AND SIEMENS FINANCIAL,
11  INC.:                        WEIL GOTSHAL & MANGES
                                 BY:  THEODORE E. TSEKERIDES, ESQUIRE
12                               767 FIFTH AVENUE
                                 NEW YORK, NY   10153
13

14  FOR WEATHERFORD U.S.,
    L.P.:                        JONES WALKER
15                               BY:  GLENN G. GOODIER, ESQUIRE
                                 PLACE ST. CHARLES
16                               201 ST. CHARLES AVENUE
                                 NEW ORLEANS, LA 70170
17

18                               JONES WALKER
                                 MICHAEL G. LEMOINE, ESQUIRE
19                               600 JEFFERSON STREET, SUITE 1600
                                 LAFAYETTE, LA 70501
20

21

22  FOR DRIL-QUIP, INC.:         WARE JACKSON LEE & CHAMBERS
                                 BY:  C. DENNIS BARROW, JR., ESQUIRE
23                               2929 ALLEN PARKWAY, 42ND FLOOR
                                 HOUSTON, TEXAS 77019
24

25
```

```
 1   APPEARANCES CONTINUED:

 2


 3   FOR TRANSOCEAN
     EXCESS UNDERWRITERS:      PHELPS DUNBAR
 4                            BY:   GEORGE M. GILLY, ESQUIRE
                                    EVANS M. MCLEOD, ESQUIRE
 5                            CANAL PLACE
                              365 CANAL STREET, SUITE 2000
 6                            NEW ORLEANS, LA  70130

 7


 8   FOR MARINE SPILL
     RESPONSE CORPORATION:    BLANK ROME
 9                            BY:   ALAN M. WEIGEL, ESQUIRE
                              THE CHRYSLER BUILDING
10                            405 LEXINGTON AVENUE
                              NEW YORK, NY  10174

11


12   FOR NALCO CO.:           LATHAM & WATKINS
                              BY:   MARY ROSE ALEXANDER, ESQUIRE
13                            233 SOUTH WACKER DRIVE, SUITE 5800
                              CHICAGO, IL 60606

14


15   ALSO PRESENT:            METHOFF LAW FIRM
                              BY:   WILLIAM STRADLEY, ESQUIRE
16                            3450 ONE ALLEN CENTER
                              500 DALLAS STREET
17                            HOUSTON, TX  77002

18
                              JOHN MEADE, ESQUIRE
19                            OLIVIA MARTIN, ESQUIRE
                              RACHEL CLINGMAN, ESQUIRE
20                            WILLIAM BONNER, ESQUIRE

21
                              ANTHONY FITCH, ESQUIRE
22                            DAVID CANNON, ESQUIRE
                              KENNETH HOOKS, ESQUIRE
23                            JEREMY RUSH, ESQUIRE

24

25
```

09:53AM

1  APPEARANCES CONTINUED:

2

3  OFFICIAL COURT REPORTER:      CATHY PEPPER, CRR, RMR, CCR
                                 CERTIFIED REALTIME REPORTER
4                                500 POYDRAS STREET, ROOM B406
                                 NEW ORLEANS, LA   70130
5                                (504) 589-7779

6  PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.   TRANSCRIPT
   PRODUCED BY COMPUTER.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                              **I N D E X**

2

3    AGENDA ITEMSS                                        PAGE

4

5    DEADLINE FOR PRODUCTION OF CUSTODIAL FILE DOCUMENTS....   10

6    OUTSTANDING LIST OF PEOPLE.............................   11

7    OTHER TRACKS...........................................   49

8    PLAINTIFF PI DEPONENTS.................................   56

9    30(B)(6) DEPOSITION TRACK..............................   57

10   DEPOSITIONS OF THE UNITED STATES.......................   67

11   HIGHLY CONFIDENTIAL MATERIALS PRODUCED IN MDL 2179 TO    70

12   GOVERNMENTAL INVESTIGATORS.............................

13   ONE-DAY DEPOSITIONS....................................   73

14   INSURANCE ISSUES.......................................   74

15   ESI....................................................   78

16

17

18

19

20

21

22

23

24

25

**P-R-O-C-E-E-D-I-N-G-S**

FRIDAY, FEBRUARY 25, 2011

A F T E R N O O N   S E S S I O N

(COURT CALLED TO ORDER)

11:04AM   THE DEPUTY CLERK:  All rise.

11:04AM   THE COURT:  All right, guys.  I'm wondering why it is

11:04AM   Judge Barbier's conferences go so well, you know, please report

11:04AM   to me; oh, that sounds good.  Then y'all come over here, and I

11:04AM   just think we should keep the same mind-set.  Okay?

11:04AM   MR. MILLER:  It's going to be smooth today.  I have

11:04AM   every confidence in the world.

11:04AM   THE COURT:  Smooth sailing.

11:05AM   Jimmy Roussel, who most of you-all know, asked me

11:05AM   in the hall about the possibility of putting depositions on-line.

11:05AM   Have you-all talked about that, making it available to those who

11:05AM   sign a confidentiality agreement?

11:05AM   MR. GODWIN:  May I, Your Honor?

11:05AM   THE COURT:  Certainly, Don.

11:05AM   MR. GODWIN:  Thank you, Judge.  Don Godwin for

11:05AM   Halliburton.

11:05AM   Your Honor, I had heard mention that Jimmy had

11:05AM   suggested that.  Of course, you know we're all having -- everyone

11:05AM   involved in the depositions are required to sign a

11:05AM  1    confidentiality agreement.

11:05AM  2              THE COURT:  Right.

11:05AM  3              MR. GODWIN:  I wonder what problems would be created if

11:05AM  4    you put -- if we put the depos on-line, then they could be

11:05AM  5    forwarded to other people that, perhaps, would not sign the

11:05AM  6    agreement, and we end up making -- create problems for ourselves

11:06AM  7    and for keeping the depos confidential that you probably would

11:06AM  8    not want to have created, just as a thought.

11:06AM  9              THE COURT:  I just thought it's something we would

11:06AM 10    mention and see what everybody thought, nothing we have to decide

11:06AM 11    today.  It's a good point, Don.  Thank you.

11:06AM 12              We've got a lot of out-of-towners in town, and it

11:06AM 13    looks like they are going to be coming to town regularly.  If

11:06AM 14    anybody wants my list of restaurants and things to do in

11:06AM 15    New Orleans, e-mail me, and I'll pop those out to you.  Maybe

11:06AM 16    we'll put them up on the Internet site, I don't know.  But,

11:06AM 17    seriously, I keep a running list of that kind of stuff.  If you

11:06AM 18    would like it, go ahead and just request it of me.

11:06AM 19              Now, we're ready for Ms. Court Reporter?

11:07AM 20              THE REPORTER:  Yes, ma'am.

11:07AM 21              THE COURT:  I've been thinking about the deadline for

11:07AM 22    production of custodial file documents which has been on our

11:07AM 23    agenda for a couple of weeks now.  What I would like to do is go

11:07AM 24    ahead and start, effective March 14th, which is a Monday, the

11:07AM 25    deadline for production of the custodial file of a witness will

11:07AM 1   be at least 10 days prior to the deposition.  That will be both

11:07AM 2   to provide production to all counsel, not just requesting

11:07AM 3   counsel, and to provide the certification.

11:07AM 4         That applies to everybody, because we're taking

11:07AM 5   other witnesses besides BP at this point, so it applies to all

11:07AM 6   witnesses.

11:08AM 7         Now, next up we've got the outstanding list of

11:08AM 8   people that, at the conclusion of last week's conference, we had

11:08AM 9   question marks as to their availability.

11:08AM 10         Andy, do you want to come tell us about how you

11:08AM 11   stand on that?

11:08AM 12         MR. LANGAN:  Well, looking at the near term --

11:08AM 13         THE COURT:  Hold on.

11:08AM 14         MR. LANGAN:  Andy Langan for BP.

11:08AM 15         On March 10th and 11th, we can confirm that

11:08AM 16   Mr. Ronnie Sepulvado, S-E-P-U-L-V-A-D-O, with his individual

11:08AM 17   counsel, has confirmed that those dates work for him in

11:08AM 18   New Orleans, so that goes from tentative to a confirmed.

11:08AM 19         THE COURT:  Good.  Okay.  Kerry.

11:08AM 20         MR. MILLER:  Well, I just scratched out the question

11:08AM 21   marks.  I think that's the right way to proceed, Your Honor.

11:08AM 22         THE COURT:  Right.

11:08AM 23         MR. MILLER:  I think the other issue that I've received

11:08AM 24   questions about is Mike Williams.  I think the man of the hour on

11:08AM 25   that is Mr. Sterbcow, so he's going to address the status of that

11:09AM 1   deposition.

11:09AM 2          MR. STERBCOW:  I spoke to Don Haycraft, Your Honor.

11:09AM 3   Paul Sterbcow.

11:09AM 4          He's not going to be produced March 3, 4.  I'm

11:09AM 5   waiting to hear back from Ronnie Penton, my co-counsel in the

11:09AM 6   case, but we are going to produce him as quickly as we can.  He's

11:09AM 7   got some medical issues, as well, and I'm trying to work my way

11:09AM 8   through those.

11:09AM 9          THE COURT:  Great.

11:09AM 10         MR. STERBCOW:  I'll stay in touch with Don, and we'll

11:09AM 11  get it set.

11:09AM 12         MR. MILLER:  Your Honor, I think there was one or two

11:09AM 13  more on the next page that had question marks.  Willis and Gray

11:09AM 14  from Halliburton were the only other two that had question marks,

11:09AM 15  some kind of tentative status.

11:09AM 16         THE COURT:  Right.  We had Kelly Gray, April 14 and 15,

11:09AM 17  was a question mark.  Does anybody have any report on that?  That

11:09AM 18  was HESI, right?

11:09AM 19         MR. GODWIN:  May I step up, Judge?

11:09AM 20         THE COURT:  Please.

11:09AM 21         MR. GODWIN:  Thank you, Your Honor.  Don Godwin for

11:10AM 22  Halliburton, Judge.

11:10AM 23         I think Kelly Gray is confirmed, and my notes show

11:10AM 24  that that depo is set for April 14 and 15.

11:10AM 25         THE COURT:  Right.  Good.

11:10AM 1          MR. GODWIN:  So we're okay there.

11:10AM 2          THE COURT:  So we can take that question mark off.

11:10AM 3          MR. GODWIN:  Yes, Your Honor.

11:10AM 4          MR. MILLER:  Willis was, maybe, the bigger question mark

11:10AM 5   in my notes, and Gagliano.

11:10AM 6          MR. GODWIN:  Yes.  We have Mr. Gagliano confirmed for

11:10AM 7   April 4 and 5.

11:10AM 8          THE COURT:  Great.  That's what we had him down for with

11:10AM 9   a question mark.  So 4 and 5, that's good.

11:10AM 10          MR. GODWIN:  He's confirmed here in New Orleans,

11:10AM 11   Your Honor.

11:10AM 12          Now, Ms. Cathleenia Willis, she's represented by

11:10AM 13   individual counsel, and that is Kurt Arnold with the

11:10AM 14   Arnold & Itkin law firm in Houston.

11:10AM 15          THE COURT:  Right.

11:10AM 16          MR. GODWIN:  I spoke with Mr. Arnold this week about

11:10AM 17   making her available on the date that was suggested -- or dates

11:10AM 18   that were suggested, April 6 and 7, and he told me that she is

11:10AM 19   not physically and/or mentally up to giving a deposition, and

11:11AM 20   didn't want to give one, and didn't feel well enough to give one.

11:11AM 21          I said, "Well, has she been instructed by a doctor

11:11AM 22   not to give one?"  He said not so far as he knew.  I said, "Well,

11:11AM 23   the Court has asked me to provide dates."  And he said, "Well,

11:11AM 24   you can report to the Court that we're not going to voluntarily

11:11AM 25   produce her, and she's not up to being there, and that's where we

11:11AM 1    are." So I said, "Okay, I'll report that to Judge Shushan." I

11:11AM 2    sent him an e-mail confirming that. He wrote back, said fine.

11:11AM 3              So that's where we are, Judge. She does continue

11:11AM 4    to work for Halliburton.

11:11AM 5         THE COURT: None of these employees, whether it's

11:11AM 6    Halliburton's employees or BP's or anyone else's, want to give

11:11AM 7    their depositions. I understand that. But I don't think it's

11:11AM 8    sufficient for these witnesses to say, I don't feel like it.

11:11AM 9              It seems to me that they need to come forward with

11:12AM 10   a showing that they are unable for some reason to submit to

11:12AM 11   depositions, rather than saying, I don't feel like it. I mean, I

11:12AM 12   don't feel like being here today.

11:12AM 13             So I don't want to put you in the middle, Don; but,

11:12AM 14   perhaps you could ask Mr. Arnold to call me, and I can explain it

11:12AM 15   directly to him. But I want everybody to understand, as far as

11:12AM 16   I'm concerned, that's not a sufficient excuse for this witness to

11:12AM 17   say, I don't feel like it.

11:12AM 18             Andy, do you want to say something?

11:12AM 19        MR. LANGAN: Well, there are other people standing, too,

11:12AM 20   and I don't think I get to go to the front of the line, but I do

11:12AM 21   have something to say when it's my turn.

11:12AM 22        THE COURT: Don, if you would like, why don't you tell

11:12AM 23   Mr. Arnold that I'd like to speak to him, to please contact me.

11:12AM 24        MR. GODWIN: I will, Judge.

11:12AM 25        THE COURT: I will tell him that directly. I don't

11:12AM  1   think that's a sufficient excuse for him to not make her

11:13AM  2   available.  She's a witness who works for Halliburton, and we've

11:13AM  3   had an agreement that witnesses who are working for the parties

11:13AM  4   will be made available, and that's my position.

11:13AM  5        MR. GODWIN:  I'll call him later today, or certainly get

11:13AM  6   him no later than Monday, and report, Your Honor.

11:13AM  7        I am pleased to say that all other Halliburton

11:13AM  8   witnesses that have been requested, we have made available and

11:13AM  9   they are on the calendar.

11:13AM 10        THE COURT:  We're pleased by that, too, Don.  Thank you

11:13AM 11   for working so hard to do that.

11:13AM 12        MR. MILLER:  Judge, on the issue that Mr. Godwin rose, I

11:13AM 13   think I would like to supplement that issue.

11:13AM 14        One of the Transocean witnesses who were on your

11:13AM 15   short wish list, because I think they were on a lot of the

11:13AM 16   parties' short wish list last week, was Andrea Fleytas.  Her

11:13AM 17   status, I think, is very similar.  Her status is very similar to

11:13AM 18   that of Ms. Willis, and the contact person is Mr. Arnold for her,

11:14AM 19   too.  So when the call is made, she needs to be added to the mix.

11:14AM 20        THE COURT:  What's her first name?

11:14AM 21        MR. MILLER:  Andrea.

11:14AM 22        THE COURT:  All right.  Good.  Thank you for pointing

11:14AM 23   that out.

11:14AM 24        MR. STERBCOW:  Your Honor, Paul Sterbcow.

11:14AM 25        I had a message on my phone this morning from

11:14AM 1    Mr. Arnold telling me, basically, in no uncertain terms, that

11:14AM 2    Ms. Fleytas would not be produced for a deposition; and, if I had

11:14AM 3    a problem with it to call him, but I'm very happy to hear that

11:14AM 4    you will speak to him in my stead.

11:14AM 5          THE COURT:  I'm not sure of in your stead.  If you want

11:14AM 6    to speak to him, feel free.

11:14AM 7          MR. STERBCOW:  I'd rather not, Judge.

11:14AM 8          MR. LANGAN:  Your Honor, just a couple comments from our

11:14AM 9    perspective.

11:14AM 10         I appreciate very much Mr. Godwin's efforts here

11:14AM 11   and the Court's.  Of course, we do have the ability to serve

11:14AM 12   subpoenas.  So I just, I think as I mentioned the last time, want

11:14AM 13   to say that I believe that BP was one of the parties that asked

11:15AM 14   to front-load Cathleenia Willis.

11:15AM 15         THE COURT:  Yes, you did.

11:15AM 16         MR. LANGAN:  We're happy, to move things, to issue a

11:15AM 17   subpoena.  Now, that may not get the witness to New Orleans, but

11:15AM 18   I think we can -- but I don't want to get ahead of Your Honor on

11:15AM 19   these things.

11:15AM 20         THE COURT:  No, I have no problem with you going ahead

11:15AM 21   and issuing a subpoena for a deposition in -- these people are in

11:15AM 22   Houston?

11:15AM 23         MR. LANGAN:  I think so.

11:15AM 24         MR. GODWIN:  She is, Your Honor.

11:15AM 25         THE COURT:  -- in Houston.

11:15AM 1         How does everybody feel, if we can't get the

11:15AM 2 cooperation of Mr. Arnold, about going over and trying to get

11:15AM 3 Ms. Willis and Ms. Fleytas in Houston on the 4th and the 5th?  I

11:15AM 4 guess we can't do both of them on the 4th and the 5th, right?

11:15AM 5         MR. CUNNINGHAM:  [Inaudible].

11:16AM 6         MR. LANGAN:  We were looking at Willis for the 6th and

11:16AM 7 7th of April.

11:16AM 8         THE COURT:  Thank you, Mr. Cunningham.  You're right.

11:16AM 9         MR. STERBCOW:  Your Honor, Paul Sterbcow.

11:16AM 10         I think Ms. Fleytas, we're going to check, but I

11:16AM 11 think she's in California, so that may be a little problematic.

11:16AM 12 I don't think she's in Houston.  I think she worked for

11:16AM 13 Transocean in the Gulf, but I think her home is in -- am I right

11:16AM 14 about that?

11:16AM 15         MR. MILLER:  Your Honor, a point to think about.  These

11:16AM 16 folks -- well, Ms. Fleytas for sure -- may be a claimant in

11:16AM 17 Transocean's limitation, so she may be becoming, as of

11:16AM 18 April 20th, a party to this action, and maybe that might be one

11:16AM 19 way to deal with her situation.

11:16AM 20         I don't know about Ms. Willis.  I suspect she may

11:16AM 21 be in the same category.

11:16AM 22         THE COURT:  All right.  Well, I don't have any

11:16AM 23 objection, Andy, to your issuing a subpoena for Ms. Willis.  Belt

11:16AM 24 and suspenders; if the belt didn't work, your suspenders will.

11:16AM 25         MR. LANGAN:  We appreciate that, Your Honor.  Thank you.

11:17AM  1          The other related point I was going to raise is,
11:17AM  2  separate and apart from the witness' willingness to show up, we
11:17AM  3  have the custodial file issue.  I think the documents related to
11:17AM  4  the witness, presumably, are within the control of Halliburton or
11:17AM  5  Transocean.
11:17AM  6          Of course, we would respectfully request that that
11:17AM  7  custodial file production happen as if the deposition dates we've
11:17AM  8  agreed on were going to go forward, which, I guess, with the
11:17AM  9  14 or the 10-day rule applying.  So that's important to us, too.
11:17AM  10          THE COURT:  It would.  Ms. Fleytas, did we have a
11:17AM  11  tentative date for her?
11:17AM  12          MR. MILLER:  No, we never had a date.  You gave me four
11:17AM  13  or five, I think, at the end of the last conference for the next
11:17AM  14  shift.  She was in that next order.  So we didn't have a date.
11:17AM  15          What you did do last week was ask me to make that
11:17AM  16  my priority for this week, so what I found out was what we
11:17AM  17  reported about Mr. Arnold.
11:17AM  18          THE COURT:  Well, let's agree that we'll issue a
11:17AM  19  subpoena for Ms. Willis, and Halliburton will treat that date as
11:18AM  20  the date no later than 10 days before -- obviously, if you can do
11:18AM  21  it earlier, that's great -- that her custodial file will be
11:18AM  22  produced.
11:18AM  23          With Transocean, if you'll just get going on the
11:18AM  24  custodial file for Ms. Fleytas, we'll be in gear on that one.  We
11:18AM  25  can just schedule her.

11:18AM 1        Now, we also had talked about some 30(b)(6)'s, and

11:18AM 2   I think they were still tentative as of last week.  One is

11:18AM 3   Kongsberg.  Can we confirm the 4th and the 5th for them?

11:18AM 4        UNIDENTIFIED SPEAKER:  Those have been confirmed.

11:18AM 5        MR. STERBCOW:  We can, Your Honor.

11:19AM 6        THE COURT:  Cobalt, I know, is on for April 11th; is

11:19AM 7   that correct?  That's confirmed?

11:19AM 8        MR. HERMAN:  I'm not sure about that, Your Honor.

11:19AM 9        THE COURT:  You're not?

11:19AM 10       MR. HERMAN:  Steve Herman for the plaintiffs.

11:19AM 11       I think there is three 30(b)(6)'s, Wild West,

11:19AM 12  Oceaneering and Cobalt --

11:19AM 13       THE COURT:  Yes.

11:19AM 14       MR. HERMAN:  -- and we kind of just picked April 11th

11:19AM 15  out of the hat and sent them certified letters saying, we'll work

11:19AM 16  with you, and the defendants may have some more topics.

11:19AM 17       So we haven't heard back, I don't believe, unless

11:19AM 18  Bobo has, but I don't think we've heard back from any of these

11:19AM 19  entities.  They may be dodging us, but we'll try to follow up

11:19AM 20  with them.

11:19AM 21       THE COURT:  So we'll keep that on the list as

11:19AM 22  unconfirmed and come back to them.

11:19AM 23       MR. MILLER:  Yes, they are going to receive a question

11:19AM 24  mark on the next iteration.

11:19AM 25       MS. KIRBY:  Can we just get an understanding of whether

11:19AM 1   you're treating this as a one or two-day deposition for each of

11:19AM 2   these 30(b)(6)'s?

11:19AM 3            THE COURT:  Sure would like a one-day for a change.

11:20AM 4            MR. HERMAN:  Well, I think the plaintiffs can certainly

11:20AM 5   finish in one day, but it depends on how many more topics you

11:20AM 6   guys are going to add, etcetera.

11:20AM 7               I think we had sent those around last week, and,

11:20AM 8   unlike some of the other 30(b)(6) lists, I don't think we had any

11:20AM 9   suggestions or additions for those three.

11:20AM 10           THE COURT:  I didn't see any additions.  They came just

11:20AM 11  as you had prepared them originally.

11:20AM 12           MR. HERMAN:  I mean, I think, you know, from the

11:20AM 13  plaintiffs' point of view, should they take us more than

11:20AM 14  four hours?  I think we could try to do them under the old

11:20AM 15  17 schedule, if possible.

11:20AM 16           THE COURT:  That would be wonderful.

11:20AM 17           MR. LANGAN:  I didn't get the impression --

11:20AM 18  Andy Langan -- that those 30(b)(6)'s were being sent around for

11:20AM 19  comment.  I thought those were as served on the parties, right?

11:20AM 20           THE COURT:  I think you can comment, and then what we'll

11:20AM 21  do is supplement those 30(b)(6)'s to those companies if you've

11:20AM 22  got something you want to add.

11:20AM 23           MR. LANGAN:  That's great.  But just to make sure I'm

11:21AM 24  clear, those were sort of as served, right?

11:21AM 25           THE COURT:  They were served.  Yes, they were served.

11:21AM 1   As I understand it, Mr. Herman has notified them that there could

11:21AM 2   be other designated areas added to what he has already served.

11:21AM 3           MR. LANGAN:  Very good.

11:21AM 4           THE COURT:  So that, I'm not encouraging it, but if any

11:21AM 5   of the defendants want to add to those notices, please do so

11:21AM 6   promptly, and Mr. Herman will let those companies know that these

11:21AM 7   were additional.

11:21AM 8           MR. LANGAN:  Very good.  Thank you, Your Honor.

11:21AM 9           THE COURT:  All right.  Kerry, do you want to talk about

11:21AM 10  the other witnesses that were on our list that have been

11:21AM 11  contacted?  We've got a bunch of dates that are still open,

11:21AM 12  February and March, which I was hoping to fill.

11:21AM 13          MR. MILLER:  Yes, I know I have some additional dates,

11:22AM 14  Your Honor, so I'll go ahead and get started filling in some

11:22AM 15  additional dates.

11:22AM 16          THE COURT:  You don't mind?

11:22AM 17          MR. MILLER:  No, not at all.

11:22AM 18          THE COURT:  That would be great.

11:22AM 19          MR. MILLER:  Your Honor, the first one I would like to

11:22AM 20  fill in, because it's the only dates this particular witness has

11:22AM 21  available and he was on the short list, it's Don Winslow.  He's

11:22AM 22  now in Malaysia, so we're going to have to bring him to the

11:22AM 23  United States, and his only available time during March and April

11:22AM 24  was April 20 and 21.  So I'd like to lock in those dates for him,

11:22AM 25  first and foremost.

11:22AM 1          THE COURT:  All right.  Now, 21, we had two depositions

11:22AM 2     already booked, but I take it that's not a problem.

11:22AM 3          MR. MILLER:  We will do what we have to do because of

11:22AM 4     this witness' --

11:22AM 5          THE COURT:  I think that's right.

11:22AM 6          MR. GODWIN:  I show we have Michael Burgess and

11:22AM 7     Greg Walz on that day already, Judge.

11:22AM 8          THE COURT:  Correct.  So this will be number three for

11:23AM 9     that one day.

11:23AM 10         MR. GODWIN:  Okay.

11:23AM 11         MR. MILLER:  Let me see what I have next.  Paul Johnson,

11:23AM 12    I think, was a witness that was requested.  Just looking at the

11:23AM 13    schedule, I think he has availability this week.  We're only

11:23AM 14    single tracking, so maybe it makes the most sense to plug him in

11:23AM 15    here.

11:23AM 16         MR. GODWIN:  This coming week?

11:23AM 17         MR. MILLER:  No, no, no, no.  The week -- he's not

11:23AM 18    available until March 21, and so what I'm saying is that week

11:23AM 19    we're double tracking pretty good, but the following week we're

11:23AM 20    not.  So maybe we can plug him in 28 and 29.

11:23AM 21         THE COURT:  His name, again?

11:23AM 22         MR. MILLER:  Paul Johnson.

11:23AM 23         THE COURT:  Paul Johnson is going to go on March 28, 29.

11:24AM 24         MR. GODWIN:  Kerry, you already have Joe Keith on those

11:24AM 25    days, which is fine with me.

11:24AM 1          MR. MILLER:  Right.  I'm just looking at a bunch of

11:24AM 2   notes here, I apologize.

11:24AM 3          MR. CUNNINGHAM:  That's the 28th and 29th of April?

11:24AM 4          MR. MILLER:  March.  What I'm trying to do is plug in

11:24AM 5   the nondouble track dates in March first.

11:24AM 6          THE COURT:  That's what I'm trying to do.

11:24AM 7          MR. MILLER:  The next person who was requested from

11:24AM 8   Transocean that I have dates for is Randy Ezell, and he's

11:24AM 9   available March 30 and 31, where we're not already double

11:24AM 10  tracking.

11:24AM 11         MR. GODWIN:  Randy Ezell.

11:24AM 12         THE COURT:  Randy Ezell, E-Z-E-L-L.

11:25AM 13         MR. MILLER:  The next one that I had was Stringfellow,

11:25AM 14  the next Transocean witness that you had on the short list.

11:25AM 15         THE COURT:  Right.

11:25AM 16         MR. MILLER:  I'm looking here.  He has some availability

11:25AM 17  in April.

11:25AM 18         THE COURT:  None in March, right?

11:25AM 19         MR. MILLER:  No, none in March, according to what I

11:25AM 20  have.

11:25AM 21         So I'm looking.  I don't know if it's -- would it

11:25AM 22  make sense to put him on a 30(b)(6) date, one of these dates,

11:25AM 23  start plugging those in?

11:25AM 24         THE COURT:  Sure.

11:25AM 25         MR. MILLER:  Well, let's do April 11 and 12.

11:26AM  1        THE COURT:  April 11 and 12.

11:26AM  2        UNIDENTIFIED SPEAKER:  Who is that?

11:26AM  3        MR. LANGAN:  Stringfellow.

11:26AM  4        MR. MILLER:  Your Honor, that's all I have.

11:26AM  5        The only other development I have to report back to

11:26AM  6 the Court on was with Jimmy Harrell.  I am in contact with his

11:26AM  7 personal attorney, Pat Fanning, but I haven't gotten dates yet.

11:26AM  8        I think there was some discussion last week that

11:26AM  9 perhaps he was in the same situation as Shaun Clarke's client.

11:26AM 10 So I think -- I'm going to be talking to Mr. Fanning about it,

11:26AM 11 but, in all likelihood, that's probably a May issue, given some

11:26AM 12 of the issues that are happening.

11:26AM 13        THE COURT:  Okay, good.  Thank you.

11:26AM 14        Who else has --

11:27AM 15        MR. STERBCOW:  Your Honor, Paul Sterbcow.

11:27AM 16        I just got an e-mail from Ken Gordon, who is

11:27AM 17 New York counsel for ModuSpec.  We took their 30(b)(6).  They can

11:27AM 18 produce surveyor Victor Martinez, who is one of their two lead

11:27AM 19 guys, on Thursday, April 14, and Friday, April 15, in

11:27AM 20 New Orleans.  That's confirmed from their counsel, so we can plug

11:27AM 21 in him.

11:27AM 22        MR. MILLER:  That's a continuation, or that's an

11:27AM 23 individual?

11:27AM 24        MR. STERBCOW:  That's an individual.  He's one of the

11:27AM 25 surveyors who was on the HORIZON --

11:27AM 1          MR. MILLER:  What's the name?

11:27AM 2          MR. STERBCOW:  Victor Martinez.

11:27AM 3              And he gave me two other names.  Both of these are

11:27AM 4 in May, so I don't know if you want to deal with them now.

11:27AM 5          THE COURT:  I'm perfectly willing to go to May.  I think

11:27AM 6 we need to just start slotting people in.  We have a May calendar

11:27AM 7 out there for Kerry to work with.

11:27AM 8              Kerry, I think it's on the projector right behind

11:27AM 9 your April one.

11:28AM 10         MR. MILLER:  I see it.

11:28AM 11         THE COURT:  When in May?

11:28AM 12         MR. STERBCOW:  This is Kris, K-R-I-S, Millsap,

11:28AM 13 M-I-L-L-S-A-P, on May 12 and 13.

11:28AM 14         THE COURT:  Also a surveyor?

11:28AM 15         MR. STERBCOW:  A surveyor.  All three of these.

11:28AM 16             Then the last one is Alan Schneider, May 26, 27.

11:28AM 17 I'll confirm with Ken that those will go forward.

11:28AM 18         THE COURT:  Thank him.  Tell him his text message was at

11:28AM 19 a very good time.

11:28AM 20         MR. STERBCOW:  I will.

11:28AM 21         THE COURT:  Who else needs to report?

11:28AM 22             Kerry, I'm going to keep you up there.  You're very

11:28AM 23 good at the ELMO.

11:29AM 24         MR. MILLER:  I'm going to bring my iPad.  One of these

11:29AM 25 days, I'm going to do it.

11:29AM 1          THE COURT:  The Court won't get me one, and I'm too

11:29AM 2    cheap to buy one, so.

11:29AM 3          MR. LANGAN:  Your Honor, we have a couple of additional

11:29AM 4    BP folks.

11:29AM 5          THE COURT:  That would be great.

11:29AM 6          MR. LANGAN:  We started talking about April, so I guess

11:29AM 7    that's okay.

11:29AM 8          THE COURT:  I'm getting worried about March.  We'll have

11:29AM 9    to talk about those March open dates.

11:29AM 10          MR. LANGAN:  But there is a BP employee, Bodek,

11:29AM 11    B-O-D-E-K, who is on the list.  Both the weeks of April 11th and

11:29AM 12    April 18th look okay, so we have flexibility to slot in Bodek two

11:29AM 13    days either of those two weeks.

11:29AM 14          THE COURT:  Does anybody have any preference?

11:29AM 15          MR. GODWIN:  11 and 12, Judge.

11:29AM 16          THE COURT:  Bodek.

11:29AM 17          MR. MILLER:  What's the first name?

11:29AM 18          MR. LANGAN:  I don't know.  I can look it up.

11:29AM 19          THE COURT:  Mr., Mr. Bodek.

11:30AM 20          MR. MILLER:  That's B-O-D-E-K?

11:30AM 21          MR. LANGAN:  Yes.

11:30AM 22          THE COURT:  He'll be on the master list.

11:30AM 23          MR. LANGAN:  So that's the 11th and 12th for Bodek for

11:30AM 24    BP.

11:30AM 25          LeBleu, we can do earlier in April, maybe like the

11:30AM 1   5th and 6th.

11:30AM 2           MR. GODWIN:  We've got Sims and Cathleenia Willis on

11:30AM 3   those.

11:30AM 4           MR. LANGAN:  That's right.

11:30AM 5           THE COURT:  That would be a triple track, which I'm not

11:30AM 6   opposed to.

11:30AM 7           MR. LANGAN:  LeBleu could also do the next week and the

11:30AM 8   following week.  I was just trying to front-end things, but

11:30AM 9   LeBleu has flexibility.

11:30AM 10          THE COURT:  Then let's look at the 4th and the 5th.

11:30AM 11  Let's look at the week of the 4th and see if anybody has a

11:30AM 12  problem with maybe putting LeBleu in that week.

11:30AM 13          MR. GODWIN:  Your Honor, if I might.

11:30AM 14              As far as the week of the 4th -- Don Godwin for

11:31AM 15  Halliburton -- I would recommend the 4th and 5th for Mr. LeBleu,

11:31AM 16  if he's available.  That would be the 4th and 5th.

11:31AM 17          MR. LANGAN:  Yes.

11:31AM 18          THE COURT:  Does anybody object to that, to Mr. LeBleu

11:31AM 19  on the 4th and the 5th?

11:31AM 20          MR. MILLER:  What's the first name?

11:31AM 21          THE CLERK:  John.

11:31AM 22          THE COURT:  Okay.

11:31AM 23          MR. LANGAN:  Later in the month, Crammond,

11:31AM 24  C-R-A-M-M-O-N-D.  For instance, we could do Crammond on the 25th

11:31AM 25  and 26th, along with Mr. Rose from TO, and maybe double track

11:31AM 1    those two days.

11:31AM 2            MR. MILLER:  His first name?

11:31AM 3            THE CLERK:  Neil, N-E-I-L.

11:31AM 4            MR. MILLER:  E-I-L?

11:31AM 5            THE CLERK:  E-I-L.

11:31AM 6            THE COURT:  Mr. Crammond will be on the 24th and 25th.

11:31AM 7            MR. LANGAN:  I'm sorry, the 25th and 26th, the 25th

11:32AM 8    being a Monday.

11:32AM 9            THE COURT:  I'm sorry, 25 and 26.

11:32AM 10           MR. LANGAN:  Those are three.

11:32AM 11           I can also report that on the priority list was

11:32AM 12   Mr. O'Bryan and Mr. Dupree, Mr. Wells and Mr. Suttles, all of

11:32AM 13   whom have individual counsel, all of whom have been alerted,

11:32AM 14   between last Friday and now, that we do need dates, and we need

11:32AM 15   to work on it.

11:32AM 16           I think when we're back together a week from now;

11:32AM 17   but, we are taking that serious, so we know we need to get dates

11:32AM 18   for those people.

11:32AM 19           Further, just in terms of an informational report,

11:32AM 20   the PSC reached out to us and said, thinking about the London

11:32AM 21   track --

11:32AM 22           THE COURT:  That's on my list.

11:32AM 23           MR. LANGAN:  -- they have suggested that -- I think it's

11:32AM 24   June 6th --

11:32AM 25           UNIDENTIFIED SPEAKER:  6th and 13th.

11:32AM 1        MR. LANGAN:  -- 6th and 13th, those two weeks, thinking

11:32AM 2   about trying to do as much as we can with London-based witnesses.

11:33AM 3        THE COURT:  We've got five London-based witnesses.

11:33AM 4        MR. LANGAN:  At least.  There might be more.

11:33AM 5        THE COURT:  There might be?  I've only seen five, but

11:33AM 6   okay.

11:33AM 7        MR. LANGAN:  Several of whom have individual counsel,

11:33AM 8   and we have alerted all the individual counsel about it,

11:33AM 9   Mr. Inglis, Mr. Hayward's individual counsel, and others, that

11:33AM 10  we're looking for June depositions for those folks.

11:33AM 11       I did want to mention that that sounds like a lot

11:33AM 12  of time, ten working days in those two weeks of June --

11:33AM 13       THE COURT:  Not if you're going to make the park.

11:33AM 14       MR. LANGAN:  What I was going to say is if we're going

11:33AM 15  to do two days for each of those, it's aspirational to think

11:33AM 16  we'll get them all done in those two weeks.  I don't want to

11:33AM 17  promise that every single London-based witness that anybody wants

11:33AM 18  to depose will be done; but, I think substantial progress can be

11:33AM 19  made, and we're working towards those dates.

11:33AM 20       THE COURT:  I think that's great.  Do you want, in an

11:33AM 21  abundance of caution, to go into the week of the 20th?

11:34AM 22       MR. LANGAN:  I'm sure that BP would say that's fine.  I

11:34AM 23  mean, we were starting with the PSC's suggestion.

11:34AM 24       THE COURT:  It seems to me, guys, you may want to go

11:34AM 25  once and only once, and so maybe you should go with the weeks of

11:34AM 1    the 6th, the 13th, and the 20th, just to be safe.

11:34AM 2         MR. LANGAN:  Further to this, I know it's looking ahead,

11:34AM 3    but we know already that Mr. Wall and Mr. Cowlam are available

11:34AM 4    during that June time frame.  They are IIT, internal

11:34AM 5    investigation team members.  I know they are available.  We

11:34AM 6    believe Mr. Cowie is.  Those people don't have individual

11:34AM 7    counsel, so we can kind of work with them.  The others do, and

11:34AM 8    we're checking.

11:34AM 9         So I don't know if you want to put down dates in

11:34AM 10   June for any of these.

11:34AM 11        THE COURT:  I would go ahead and block out those three

11:34AM 12   weeks for that track, for that track -- hold on just a second --

11:35AM 13   for that track, that being the UK track.  We'll have tracks going

11:35AM 14   on here, but the UK attorneys can hopefully, by next week or so,

11:35AM 15   know whether we've got things booked.

11:35AM 16        MR. LANGAN:  So perhaps I'll make it as a to-do for me

11:35AM 17   to come with specific dates, to the extent I can next Friday,

11:35AM 18   during that three-week period in London.

11:35AM 19        THE COURT:  That will be perfect.

11:35AM 20        Hank, come on forward.

11:35AM 21        MR. DART:  Good morning, Your Honor.

11:35AM 22        I have a severe personal problem.  My daughter is

11:35AM 23   getting married on June 18th, and I would really like to try and

11:35AM 24   schedule these London things in July, if it's at all possible.

11:35AM 25        THE COURT:  You're going to have to get Mr. Kanner to

11:35AM   1    cover for you.

11:35AM   2            MR. DART:  Okay.

11:35AM   3            THE COURT:  You're just going to have to.  We've got too

11:35AM   4    many other moving parts, Hank.  And I'm very sympathetic, but

11:35AM   5    congratulations on the wedding.

11:35AM   6            But, you know, we've got too many people we need to

11:36AM   7    coordinate with in the UK and too many people here.

11:36AM   8            MR. DART:  I understand.  I thought this was in the

11:36AM   9    scheduling process, so I thought there was maybe an --

11:36AM  10            THE COURT:  Andy has already contacted the witnesses,

11:36AM  11    who have indicated availability, and so I would like to go ahead.

11:36AM  12    These are important witnesses.  These are the investigative --

11:36AM  13            MR. DART:  Of course, that's why I'm speaking.

11:36AM  14            THE COURT:  But you've got Allan to cover for you.

11:36AM  15            MR. DART:  Thank you.

11:36AM  16            THE COURT:  Good morning.

11:36AM  17            MR. MEADE:  Good morning, Your Honor.  John Alden Meade

11:36AM  18    for the derivative plaintiffs in 2185 in Houston.

11:36AM  19            With respect to the deponents in the London track,

11:36AM  20    a lot of these are defendants in our case.  This is, I know,

11:36AM  21    becoming a familiar refrain.  But, in order for us to have any

11:36AM  22    chance of participating meaningfully, we need to see how far back

11:37AM  23    in the schedule we can put these people; and, in addition, even

11:37AM  24    assuming they can be put at the very end, we would need an entire

11:37AM  25    day for ourselves, so that would probably push things to

11:37AM 1    three days.

11:37AM 2             Now, to the extent that's not workable, I think

11:37AM 3    what would really help this situation out a lot is, based on our

11:37AM 4    stipulation with BP that it has allowed us to come participate,

11:37AM 5    if BP would actually agree that these scheduling difficulties do

11:37AM 6    constitute the reasonable cause that we would need to later

11:37AM 7    renotice these people in our case, then that kind of, with one

11:37AM 8    fell swoop, can solve the problem.

11:37AM 9             But it's not our prerogative.  That's what we've

11:37AM 10   asked for.  Our obligations under the Pretrial Order 27 in this

11:37AM 11   case, and in the stipulation we've entered in our own case,

11:37AM 12   require us to make all efforts, so that's what we're here doing.

11:38AM 13        THE COURT:  I appreciate that.  Do you believe that you

11:38AM 14   need a full day with all five of the witnesses that I'm aware of?

11:38AM 15   That's Mr. Flynn, who was an event witness.  I know you want a

11:38AM 16   full day with Mr. Hayward.  I'm aware of that one.  Andy Inglis

11:38AM 17   was a response witness.

11:38AM 18        MR. MEADE:  He's a defendant in our case, Your Honor.

11:38AM 19        THE COURT:  Mr. Thierens?

11:38AM 20        MR. MEADE:  I believe Glenn and Thierens are not --

11:38AM 21        THE COURT:  He's an event witness.  And Paul Tooms also

11:38AM 22   is an event witness.

11:38AM 23             So the only two that I know for sure, based on your

11:38AM 24   response, that you're going to want a full day with is Inglis and

11:38AM 25   Hayward.

11:38AM 1          But it sounds like we might have some other UK

11:39AM 2   witnesses, right, Andy?

11:39AM 3          MR. LANGAN:  Your Honor, a couple of points.  Here is

11:39AM 4   the list that I have:  Castell, Sir William Castell --

11:39AM 5          THE COURT:  Sir William.

11:39AM 6          MR. LANGAN:  -- Cowie, Cowlam, Flynn, Hayward, Inglis,

11:39AM 7   Thierens, Tooms, Wall and Wong.

11:39AM 8          Of those, Hayward, Inglis and Castell and maybe

11:39AM 9   Thierens are sort of -- and maybe Tooms are sort of at the top of

11:39AM 10  the house and might be defendants in their case.

11:39AM 11         We're not agreeing -- I think what counsel just

11:39AM 12  said is, well, this is an easy problem to solve if BP just agrees

11:39AM 13  right now to reproduce them later.  Make no mistake, we're not

11:39AM 14  agreeing.  We're not agreeing to that.  Why would we?

11:39AM 15         We have a July 30th cutoff for fact discovery here.

11:40AM 16  We're taking these depositions in June.  It's plenty of time for

11:40AM 17  counsel to read the documents and get up to speed and do this all

11:40AM 18  at once.  For them to suggest that we should agree now that we're

11:40AM 19  going to reproduce them later, it's preposterous.  We're not

11:40AM 20  going to do it.

11:40AM 21         THE COURT:  I hear you.  Andy, let me ask you, who is,

11:40AM 22  involvement wise, Wall and Wong?  Do you have any feel for --

11:40AM 23         MR. LANGAN:  I can look it up.

11:40AM 24         THE COURT:  Let's come back to that next week.

11:40AM 25         But we will broaden the scope of our UK depositions

11:40AM 1   to include those additional witnesses, and now for sure we need

11:40AM 2   three weeks, guys.

11:40AM 3            MR. LANGAN:  One other comment I would make is that if

11:40AM 4   you talk about Mr. Hayward, there is going to be, for any CEO or

11:40AM 5   former CEO, there will be issues that will be relevant to the

11:40AM 6   2185 cases.

11:40AM 7            THE COURT:  No question.

11:40AM 8            MR. LANGAN:  At the same time -- so they'll need more

11:40AM 9   time.  At the same time, it will be a fact that Mr. Hayward is

11:40AM 10  going to have very limited personal knowledge about the day of

11:41AM 11  the event.  So there ought to be a way, over the course of two

11:41AM 12  days, to make everybody happy.

11:41AM 13           THE COURT:  Well, what I'm going to do is I'm going to

11:41AM 14  ask the 2185 plaintiffs to review that list of UK witnesses and

11:41AM 15  provide me with those witnesses who you believe you need

11:41AM 16  additional time on, whether it's because they are defendants in

11:41AM 17  your case or they have particular knowledge.

11:41AM 18                Some of these guys are event witnesses.  I don't

11:41AM 19  think you're going to have a whole lot to add to what the PSC is

11:41AM 20  going to be asking.  But for those witnesses that you believe you

11:41AM 21  need additional time on, please make a submission and tell me why

11:41AM 22  you need additional time, who they are, and how much additional

11:41AM 23  time you anticipate you will need.  Then, Andy, you may reply to

11:41AM 24  that.

11:41AM 25           MR. LANGAN:  Very good.

11:41AM 1          THE COURT:  We'll get it straight well before going to

11:42AM 2     the UK.  By the way, I may offer to come with you.

11:42AM 3          MR. LANGAN:  I think that would be great.  It's a great

11:42AM 4     idea.

11:42AM 5               Maybe counsel wants to show it to us in advance,

11:42AM 6     and maybe we can reach an agreement.

11:42AM 7          THE COURT:  That would be fine, guys.  To the extent

11:42AM 8     that you-all can work it out, I'm happy happy.

11:42AM 9               But look it over before you say, I need an

11:42AM 10    additional day with all these guys, because I don't think you do.

11:42AM 11         MR. MEADE:  Thank you, Your Honor.

11:42AM 12              A few points on that.  As it stands right now,

11:42AM 13    we're not being brought into the loop at the early stages of when

11:42AM 14    these names are being proposed.  We're kind of learning it

11:42AM 15    through the grapevine.  You know, I'm coming and showing up at

11:42AM 16    depositions that I'm not taking just to see who I can chat with,

11:42AM 17    and that's how we're finding out about things.  So if this

11:42AM 18    scheduling process is going to work, we have to be brought into

11:42AM 19    the loop much sooner.

11:42AM 20              After last Friday's scheduling conference, I wrote

11:42AM 21    down several names of people that, I believe, may yet be

11:42AM 22    scheduled this afternoon that we noticed were higher up the food

11:43AM 23    chain, so to speak, people with BP, the senior VPs and titles

11:43AM 24    like that, and now we're even including defendants.

11:43AM 25              We sent that list to both counsel for BP and for

11:43AM 1   the PSC, and, right now, we -- there really are no negotiations.

11:43AM 2   We're not really getting any response.  We've had discussions,

11:43AM 3   and maybe the parties would like to respond to that; but, we're

11:43AM 4   trying to do everything we can, but I don't think right now we're

11:43AM 5   being given a place at the table in setting these things up, so

11:43AM 6   that's got us particularly concerned.

11:43AM 7           When you started talking about defendants, I didn't

11:43AM 8   know that they were even going to be on the schedule today; but,

11:43AM 9   I can tell you that we haven't obviously served discovery in our

11:43AM 10  own case.

11:43AM 11          We are happy to accommodate BP, but we have not

11:43AM 12  only a separate case, it's a separate MDL for a reason.  The

11:43AM 13  number of efficiencies that can be achieved, I think the fact

11:43AM 14  that there is a separate MDL speaks to that.  If they can't

11:44AM 15  accommodate us, and we understand that that may be necessary, but

11:44AM 16  I don't think it's -- I don't think it comes very well to say

11:44AM 17  they are just not going to reproduce them.

11:44AM 18          THE COURT:  Not by agreement.

11:44AM 19          MR. MEADE:  Not by agreement.

11:44AM 20          THE COURT:  Did I get that right, Andy?

11:44AM 21          MR. LANGAN:  I'd put a finer point on it.  I wasn't

11:44AM 22  agreeing to counsel's suggestion today that we, here today,

11:44AM 23  agree, without condition and without reservation, to reproduce

11:44AM 24  them later so can he go leave and go back home, whatever it is.

11:44AM 25  We're not agreeing to that today.  That one was easy.

11:44AM 1        MR. MEADE:  Maybe we can get a dialogue started in that

11:44AM 2    regard.

11:44AM 3        THE COURT:  I think that's right.  I think some of these

11:44AM 4    witnesses you're going to have a larger witness interest in than

11:44AM 5    others.  Take a look at the list and chat with Andy about who

11:44AM 6    those people are and how much more time you need.  If you can't

11:44AM 7    work it out, I'm happy to work it out.

11:44AM 8        MR. MEADE:  Thank you, Your Honor.

11:45AM 9        THE COURT:  Okay.

11:45AM 10        MR. STRADLEY:  Your Honor, I'm Bill Stradley with the

11:45AM 11    MDL 2185, and I would like to just go to some degree into what

11:45AM 12    counsel has said.

11:45AM 13             We have the same concerns.  We have not seen the

11:45AM 14    list, and we haven't had time to react to it; but, I was unaware

11:45AM 15    that this was going to come up today.  We certainly can address

11:45AM 16    it more -- in a fuller capacity next week.

11:45AM 17        THE COURT:  Great.  Well, let's be prepared to address

11:45AM 18    it more fully next week.

11:45AM 19             Andy, if there are any other UK people that we need

11:45AM 20    to turn our attention to, if you wouldn't mind being prepared to

11:45AM 21    add them to the list next week.  You-all may spend June in

11:45AM 22    London, who knows.

11:45AM 23        MR. LANGAN:  Your Honor, I think the list that I gave

11:45AM 24    you is --

11:45AM 25        THE COURT:  Complete.

11:45AM 1          MR. LANGAN:  -- fairly complete based upon the 190 or

11:46AM 2   200 priority lists that we're dealing with.  I believe I'm right

11:46AM 3   about that.

11:46AM 4          THE COURT:  I think it's probably right, too.

11:46AM 5          MR. STRADLEY:  We just haven't seen the list, so --

11:46AM 6          THE COURT:  Have you not been provided with a master

11:46AM 7   list of the requested deponents?

11:46AM 8          MR. STRADLEY:  I don't believe so.

11:46AM 9          THE COURT:  That's easy.  We can cure that for you.

11:46AM 10          MR. STRADLEY:  I would like to have that.

11:46AM 11          THE COURT:  Would you, before you leave today, go back

11:46AM 12   to my office and ask Marie to print out for you the master list

11:46AM 13   of potential deponents.

11:46AM 14          MR. STRADLEY:  Very good.

11:46AM 15          THE COURT:  We'll be glad to provide it to you.  I

11:46AM 16   thought everybody had it, and I apologize that you didn't get it.

11:46AM 17          Guys, we just need to remember to include the 2185

11:46AM 18   lead counsel on our communications with regard to proposed

11:46AM 19   deponents and scheduling.

11:46AM 20          MR. STRADLEY:  Thank you, Your Honor.

11:46AM 21          THE COURT:  You're very welcome.

11:46AM 22          MR. HERMAN:  Steve Herman for the plaintiffs.

11:46AM 23          I'm not sure if we need to belabor the point, but

11:47AM 24   we'll apologize and announce for everybody's benefit that we have

11:47AM 25   established a web site, I believe it's the BPMDL2179.com, but

11:47AM 1   I'll find out.  It's hosted by the PSC to provide, among other

11:47AM 2   things, the deposition calendar so that plaintiff attorneys who

11:47AM 3   may be interested, from our own MDL as well as 2185, as well as

11:47AM 4   anyone else, will be able to see the calendar.

11:47AM 5           As to the lists that are circulated, first of all,

11:47AM 6   I don't want to beat a dead horse, but I had suggested, I think,

11:47AM 7   several weeks ago that BP is the party seeking the advantage,

11:47AM 8   they are trying to avoid reproducing their witnesses, they've

11:47AM 9   invited these other people to the dance, so to speak, and we've

11:47AM 10  taken the position that it should be their problem.

11:47AM 11          Nevertheless, to try to accommodate all the

11:47AM 12  different factions, we've asked for them to provide us with one

11:48AM 13  communication e-mail address that would go to all of the

11:48AM 14  different -- because there is, as far as I know, four, maybe five

11:48AM 15  different factions of plaintiffs' counsel in MDL 2185, whatever

11:48AM 16  the number is, that don't necessarily seem to be on the same

11:48AM 17  page.  So we get a lot of ad hoc requests from different sets of

11:48AM 18  people.  Then you have other plaintiffs' counsel in other

11:48AM 19  derivative cases and state cases.

11:48AM 20          We are endeavoring, with cooperation from BP, who

11:48AM 21  gave us a list, although it didn't have e-mail addresses, to

11:48AM 22  create our own single e-mail address so that we can try to

11:48AM 23  circulate things a little bit better to all these other

11:48AM 24  plaintiffs' counsel that are out there.

11:48AM 25          But I would humbly suggest that Jim and I have our

11:48AM 1    hands full just managing the 2179 plaintiffs, and this, we

11:48AM 2    believe, should really be BP's responsibility.  Nevertheless, to

11:48AM 3    try to accommodate the Court and everyone else, we're doing our

11:48AM 4    best.  Thank you.

11:48AM 5          THE COURT:  So the 2185 guys, please check out the PSC

11:49AM 6    web site and take a look at what's posted there.  You can get a

11:49AM 7    copy of the master list from my office.  I've just requested that

11:49AM 8    my secretary print copies of that out.

11:49AM 9          Don Godwin is the guy who prepared that list, so if

11:49AM 10   up want it in Word or Word Perfect format, please contact him.

11:49AM 11   He'll be glad to get it to you.  Not a problem.  But that should

11:49AM 12   clean up that issue.

11:49AM 13         MR. MEADE:  Your Honor, if I may.  This is John Meade

11:49AM 14   for the 2185 derivative plaintiffs.

11:49AM 15         I know that there are three principal groups,

11:49AM 16   perhaps four.  There's three different cases.  I know the ERISA

11:49AM 17   case, I don't think lead counsel has been established yet, so

11:49AM 18   that may account for some of the communication difficulties.

11:50AM 19   That will be resolved somewhat soon.

11:50AM 20         THE COURT:  Would you undertake to let all liaison and

11:50AM 21   coordinating counsel know who you know, e-mail addresses, who

11:50AM 22   they represent, etcetera, so that they can try to include you.

11:50AM 23         Then, I do ask that you-all undertake to see what

11:50AM 24   the PSC has on their web site and regularly update yourself on

11:50AM 25   that.

11:50AM  1        MR. MEADE:  We will, Your Honor.  I think we can, as

11:50AM  2  Mr. Herman suggested, establish a single e-mail that will

11:50AM  3  distribute to the various parties once we know who the lead of

11:50AM  4  the ERISA is.

11:50AM  5        THE COURT:  Good.  Thank you very much.

11:50AM  6          Now, the next thing, guys, that bothers me is that

11:50AM  7  we've got lots of slots still in March not filled.  Does anybody

11:51AM  8  want to comment on that?

11:51AM  9         I might also add that Mike O'Keefe, when he was

11:51AM 10  pulling all of this together for today, went back to see what had

11:51AM 11  been taken, and, you know, not that you-all haven't been working

11:51AM 12  hard, but the number is 12.

11:51AM 13        MR. LANGAN:  If we're talking about March, and this

11:51AM 14  gentleman was not requested by very many people, but Albers, week

11:51AM 15  of March 28th, so would could slot in Albers.

11:51AM 16        THE COURT:  Great.  The week of March 28th.

11:51AM 17        UNIDENTIFIED SPEAKER:  That's Shane Albers.

11:51AM 18        MR. LANGAN:  28 and 29?

11:51AM 19        MR. GODWIN:  What's his first name?

11:51AM 20        MR. LANGAN:  Shane.

11:51AM 21        UNIDENTIFIED SPEAKER:  He wasn't on our list.

11:51AM 22        MR. LANGAN:  He was on somebody's list.

11:51AM 23        THE COURT:  Mike, what number is he?

11:51AM 24        THE CLERK:  He's number 93 on the master list, and he's

11:51AM 25  requested by Halliburton and no one else.  He's a BP employee.

11:52AM 1        THE COURT:  Good.  We're going to give Don Godwin a

11:52AM 2   witness.

11:52AM 3        MR. GODWIN:  Thank you, Your Honor.

11:52AM 4        THE COURT:  28 and 29.

11:52AM 5        MR. MILLER:  A-L-B-E-R-S?

11:52AM 6        MR. LANGAN:  Yes.

11:52AM 7        THE COURT:  Any other ideas, guys, for -- let me give

11:52AM 8   them to you -- March 1st, March 2nd, March 3rd, March 10th,

11:52AM 9   March 11th, 16, 17, 18, April 1st, which is kind of standing out

11:52AM 10  there by itself.  Have we got any one-day witnesses we can put

11:52AM 11  in?

11:52AM 12       MR. LANGAN:  Your Honor, I know -- I don't have dates

11:52AM 13  for you, but I know, just to acknowledge, that we are still

11:52AM 14  working on Guide, Vidrine and Lambert.  They are on our list.

11:52AM 15       The issue with them is they are now parties to this

11:52AM 16  case and will be represented separately, and so I can't give you

11:53AM 17  dates because I don't have dates.

11:53AM 18       But, I mean, it's definitely on our list.

11:53AM 19  Mr. Godwin has raised it to me, it's a legitimate question, what

11:53AM 20  about Guide, Vidrine and Lambert.  And Vidrine has medical issues

11:53AM 21  and everything.  But I just don't have dates for them today.

11:53AM 22       THE COURT:  All right.

11:53AM 23       MR. MILLER:  Your Honor, one of the dates that maybe we

11:53AM 24  could -- individual dates such as April 1st, I'm working with

11:53AM 25  Don Godwin, I mentioned last week, Sperry Sun.  That was a

11:53AM 1 30(b)(6), but only a records custodian-type deposition.

11:53AM 2 I circulated some topics. I sent it to Steve and

11:53AM 3 to the other parties. But if we can sign off on those topics,

11:53AM 4 that could be -- I know he's got to get a witness designated, but

11:53AM 5 that could be a one-dayer, maybe, on April 1st or something like

11:53AM 6 that.

11:53AM 7 THE COURT: I think that's great.

11:53AM 8 MR. GODWIN: I'll be back to Kerry on that the first of

11:53AM 9 the week, Your Honor.

11:53AM 10 THE COURT: Any other ideas about the remaining March

11:53AM 11 dates and how we can fill them?

11:54AM 12 Don, you have no bright ideas?

11:54AM 13 MR. HAYCRAFT: None whatsoever, Your Honor.

11:54AM 14 MR. STERBCOW: Your Honor, one name we haven't

11:54AM 15 mentioned, and I know he -- I think he's got separate counsel, is

11:54AM 16 Bob Kaluza, the other company man on the rig. I don't know where

11:54AM 17 we are with that, but we clearly want him. He's not been named,

11:54AM 18 I don't think, personally.

11:54AM 19 THE COURT: Is he on your radar, Andy?

11:54AM 20 MR. LANGAN: I'm sorry?

11:54AM 21 MR. STERBCOW: Kaluza.

11:54AM 22 THE COURT: Bob Kaluza.

11:54AM 23 MR. LANGAN: Yes, he's on our radar.

11:54AM 24 MR. HAYCRAFT: I'll just remind the Court that last week

11:54AM 25 Shaun Clarke was here representing Mr. Kaluza and made a

11:54AM 1    particular request regarding him.

11:54AM 2         THE COURT: Yes. Now, let's talk about that, guys. He

11:54AM 3    did.

11:54AM 4         What we called the Fifth Amendment track people

11:54AM 5    have asked that they be toward the end of the schedule in hopes

11:55AM 6    that they will not have to invoke the Fifth. What is the

11:55AM 7    consensus on that? Do you want to see if they can get past that,

11:55AM 8    or do you want to just go ahead and take the Fifth now?

11:55AM 9         MR. MILLER: Your Honor, the compromise may be that we

11:55AM 10   focus those folks in April -- I mean, in May. That is, if they

11:55AM 11   are not past whatever issues are confronting them, that we get

11:55AM 12   those Fifth Amendment depositions done in May.

11:55AM 13         MR. STERBCOW: Early May.

11:55AM 14         MR. MILLER: Early May.

11:55AM 15         MR. STERBCOW: We would rather do them sooner than

11:55AM 16   later.

11:55AM 17         THE COURT: Would you be so kind as to contact the

11:55AM 18   attorneys for those four guys and give them proposed dates in

11:55AM 19   May --

11:55AM 20         MR. STERBCOW: Okay.

11:55AM 21         THE COURT: -- and let them confirm the dates that

11:55AM 22   you've proposed, and we'll put them on the calendar.

11:55AM 23         MR. MILLER: I say maybe because I've heard from some of

11:55AM 24   the individual counsel that April may be a watershed month. So I

11:55AM 25   say that May is the right time to get to them, one way or the

11:56AM 1   other.

11:56AM 2           THE COURT:  Why don't we go for mid May, and see if we

11:56AM 3   can go ahead and get them booked.

11:56AM 4           Well, I'm really concerned about those March dates

11:56AM 5   slipping, guys.  Let's see.  Next week is the 4th, we're getting

11:56AM 6   back together on the 4th, so we're letting -- we've got eight

11:56AM 7   slots that are slipping next week.  That's bad.

11:56AM 8           We need to be prepared next Friday to fill up the

11:56AM 9   slots in March.  Let me give them to you.  Thursday and Friday,

11:56AM 10  March 10 and 11, we've got one slot.  If y'all want to triple

11:56AM 11  track, I'm fine with that.

11:56AM 12          Wednesday, March 16th, and Thursday, March 17th, at

11:57AM 13  least one slot is available.  Friday, March 18, two slots are

11:57AM 14  available.

11:57AM 15          Friday, March 25th, we've got a conference with

11:57AM 16  Judge Barbier, but I'm not sure that should foreclose depositions

11:57AM 17  that day.  Do you-all think it should?  I don't think it should.

11:57AM 18          MR. STERBCOW:  No.

11:57AM 19          THE COURT:  Friday, March 25th.

11:57AM 20          Friday, April 1, we're going to try to get a

11:57AM 21  custodian's deposition done then, but we still have that date, so

11:57AM 22  any other ideas for one-day depositions for that?  Friday,

11:57AM 23  April 8th, another one-day deposition or two.  Wednesday,

11:58AM 24  April 13th; Friday, April 22nd.  Those are one slot.  Wednesday,

11:58AM 25  Thursday, and Friday, April 27, 28, and 29, two slots those

11:58AM  1   dates.

11:58AM  2              We can't continue to allow these dates to slip.

11:59AM  3         MR. ROBERTS:  Judge, in April -- Steve Roberts for

11:59AM  4   Transocean -- I just want to make the Court aware, there's not

11:59AM  5   much I can do at this point other than to make you aware that --

11:59AM  6         THE COURT:  You have a daughter getting married.

11:59AM  7         MR. ROBERTS:  I have a daughter that just had a baby.

11:59AM  8   Does that --

11:59AM  9              The first and/or second week of April, the

11:59AM 10   Coast Guard has advised us tentatively that the JIT intends to

11:59AM 11   resume its hearing, which will occupy at least the Transocean,

11:59AM 12   Halliburton, BP folks, and a lot of the other lawyers in this

11:59AM 13   room.  They don't give us any more advanced notice than that.

11:59AM 14              The other reason or the other factor to consider

11:59AM 15   about April 20 is that a lot of the people that we are all

11:59AM 16   concerned about, Transocean employees and some of the BP and

11:59AM 17   Halliburton folks, they will all be claimants, my guess is, by

11:59AM 18   April 20th.

11:59AM 19         THE COURT:  My guess is, too.

12:00PM 20         MR. ROBERTS:  Then scheduling will be a lot easier

12:00PM 21   because you will have control, rather than us trying to force the

12:00PM 22   issue.

12:00PM 23         THE COURT:  I appreciate that.  I don't know what to do

12:00PM 24   about the hearings, guys.  Let me think about it.  I just don't

12:00PM 25   know what to do.

12:00PM 1          I know they do what they want to do on short

12:00PM 2    notice, but we're going to try to get our calendar set, and we

12:00PM 3    are going to try to work through it.

12:00PM 4          We'll try to stay away from the Transocean

12:00PM 5    witnesses during those weeks and, I guess, Halliburton witnesses

12:00PM 6    during those weeks.

12:00PM 7          MR. ROBERTS:  I think it's primarily Transocean and

12:00PM 8    Halliburton, but, again, that can change.

12:00PM 9          MR. STERBCOW:  I think the subject is BOP and cement,

12:00PM 10   right?

12:00PM 11         MR. ROBERTS:  Yes, BOP and cement.

12:00PM 12         MR. CUNNINGHAM:  Robert Cunningham, Your Honor.

12:00PM 13         I just wanted to put another issue on your radar.

12:00PM 14   I don't think it's anything that needs to be decided.  It's

12:01PM 15   something I think that needs to be a matter of the parties

12:01PM 16   talking at a meet and confer on this issue, and, that is, who is

12:01PM 17   going to be the, quote, noticing party on these variety of

12:01PM 18   witnesses, and who is going to go first and do the initial

12:01PM 19   examination, and how much time do they get, and who is going to

12:01PM 20   do the follow-up examination.

12:01PM 21         In other words, a lot of these witnesses we want,

12:01PM 22   and I think we would be the noticing party.  A lot of them, we

12:01PM 23   don't really care about, and others may be the noticing party.

12:01PM 24         THE COURT:  Exactly.  We intended it that way.  We tried

12:01PM 25   to accommodate PSC and BP particularly in that last round.  So I

12:01PM  1   think it should shake out that you-all know who you want to

12:01PM  2   notice.  Andy, you know who your witnesses are that we've

12:01PM  3   scheduled.

12:01PM  4           MR. LANGAN:  Yes.  Mr. Cunningham has raised this issue

12:01PM  5   with us.  We're greatly appreciative of that.  We agree that a

12:02PM  6   conversation like this needs to happen.  We're more than willing

12:02PM  7   to go first on witnesses that are of primary interest to us and

12:02PM  8   not so much to the PSC.

12:02PM  9           MR. CUNNINGHAM:  We're prepared to share time as needed.

12:02PM 10           THE COURT:  Good.  I do think that will shake out, and

12:02PM 11   it is a conversation you-all should be having.

12:02PM 12           MR. MILLER:  Yes, I think we talked about it last week.

12:02PM 13   I think that's going to streamline things when you can shift the

12:02PM 14   resources and the labor around for these depositions.  It makes a

12:02PM 15   lot of sense to do it.  Maybe we ought to get it on the calendar

12:02PM 16   for next Friday or something.  Is that the day we're meeting with

12:02PM 17   you super early?

12:02PM 18           THE COURT:  Yes.

12:02PM 19           MR. MILLER:  Maybe we can do it after or something.

12:02PM 20           THE COURT:  You-all may bring coffee into the courtroom.

12:02PM 21   You just may not spill it.

12:02PM 22               Okay, guys.  Serious, next week, we've got to fill

12:02PM 23   in those dates.

12:02PM 24               Now, let's just work our way through the -- I think

12:02PM 25   we've taken care of UK.  We've sort of taken care of Fifth

12:03PM   1   Amendment people, and I would like to talk to about that next

12:03PM   2   week.

12:03PM   3              Then we talked about other tracks.  Do you want to,

12:03PM   4   Kerry, talk about tracks and contacting witnesses by tracks at

12:03PM   5   this point?

12:03PM   6              MR. GODWIN:  Your Honor, regarding next Friday, I seem

12:03PM   7   to recall that when you set that, we were thinking there was

12:03PM   8   going to be a witness that day, so we would start early at 7:30.

12:03PM   9   I'm fine starting at 7:30; and, talking with the others, they are

12:03PM  10   as well.  We don't have a witness that day.

12:03PM  11              THE COURT:  I wish you did.

12:03PM  12              MR. GODWIN:  We do, as well.  If you want to start a

12:03PM  13   little later, fine; if you want to start at 7:30.

12:03PM  14              THE COURT:  That's fine.  I'm not trying to kill

12:03PM  15   anybody.

12:03PM  16              MR. GODWIN:  Whatever you want to do.

12:03PM  17              THE COURT:  Do y'all want to start at 9:00?

12:03PM  18              MR. MILLER:  That would be better.

12:04PM  19              MR. GODWIN:  9 o'clock is fine.

12:04PM  20              THE COURT:  Unless you find a witness.

12:04PM  21              MR. GODWIN:  We're trying.

12:04PM  22              THE COURT:  I would love for you to find a witness and

12:04PM  23   call me and tell me it has to be at 7:30, but 9 o'clock unless

12:04PM  24   you find a witness.

12:04PM  25              MR. GODWIN:  Thank you, Judge.

12:04PM 1          MR. MILLER:  Your Honor, this was the outline that I had

12:04PM 2     come up with last week that we talked about setting forth some

12:04PM 3     different tracks.  Of course, we didn't have London on here, and

12:04PM 4     that's going to, it looks like, take route.

12:04PM 5               I also didn't have a jurisdictional track, and I

12:04PM 6     think that's taking route separately with different teams.

12:04PM 7          THE COURT:  Right.  It seems to me, guys, that you-all

12:04PM 8     want to get your investigation track taken care of, right?  Is

12:04PM 9     that the consensus?

12:04PM 10         MR. MILLER:  That would be this one.

12:04PM 11         THE COURT:  All right.

12:04PM 12         MR. MILLER:  Maybe, Your Honor -- I think that's where

12:04PM 13    the focus of the depositions have been.  Maybe the folks can take

12:05PM 14    a look at who's left on that track and see if that can be

12:05PM 15    finalized.

12:05PM 16         THE COURT:  Yes.  I mean, it seems to me, guys, that we

12:05PM 17    have got to take the dates remaining in March --

12:05PM 18               Maybe what we do is this.  I've got your track in

12:05PM 19    front of me.  Kerry, do you want to go through your

12:05PM 20    investigation, and let's check off those that we've taken care

12:05PM 21    of?

12:05PM 22               Well, I've got a better way to do it.  These are

12:05PM 23    the people that I show that have not been taken care of in the

12:05PM 24    investigation track.  John Wright, that's Boots & Coots.  I think

12:06PM 25    we talked about him last time.  Who can contact --

12:06PM 1          MR. CUNNINGHAM:  Boots & Coots is owned by Halliburton,

12:06PM 2     as I understand it, so I suspect that Don probably has it.

12:06PM 3          THE COURT:  We had Abbassion.  That's a BP witness.  We

12:06PM 4     had deFranco.  We had David Wall.  David Brown, CSI Technologies.

12:06PM 5          MR. GODWIN:  I would think there that Andy will probably

12:06PM 6     be able to help there because he was -- Mr. Brown was one of the

12:06PM 7     team working for CSI on the cementing issues for the expert

12:07PM 8     company, CSI.

12:07PM 9          THE COURT:  Andy, we spoke about Cowie, didn't we?

12:07PM 10          MR. LANGAN:  Cowie is London, as is Mr. Wall.  And they

12:07PM 11     are on our radar screen for the London in June track, as is

12:07PM 12     Mr. Cowie and Cowlam.

12:07PM 13          THE COURT:  Cowlam, also.

12:07PM 14          MR. LANGAN:  Yes.

12:07PM 15          THE COURT:  John McCarrol is BP.  Fred Sabins is

12:07PM 16     CSI Technologies.  Presumably, he will be designated as a

12:07PM 17     30(b)(6) witness, as well, for CSI.  We don't know that, but I'm

12:07PM 18     guessing.

12:07PM 19          So those are the people that are left for the

12:07PM 20     investigation track, and I would like, as much as we possibly

12:08PM 21     can, to find out their availability, for the end of March and

12:08PM 22     into April, next week to get them slotted in and ready to roll,

12:08PM 23     so we don't lose any more days.

12:08PM 24          Then, after the investigation track, does everybody

12:08PM 25     agree that the next track that we should try to tackle is finish

12:08PM  1    the event track?

12:08PM  2            MR. MILLER:  I think that makes the most sense.

12:09PM  3            THE COURT:  The event track witnesses that we want to

12:09PM  4    try to contact, and this is -- Andy, you're going to think I'm

12:09PM  5    picking on you again -- Jonathan Bellow, Robert Bodek --

12:09PM  6            THE CLERK:  We set him.

12:09PM  7            MR. MILLER:  We got him.

12:09PM  8            THE COURT:  Good.  Take him out.

12:09PM  9                Have we gotten Cocales yet?

12:09PM  10           THE CLERK:  Yes.

12:09PM  11           THE COURT:  I thought so.  Crammond, we discussed.

12:09PM  12           MR. MILLER:  He's on.

12:10PM  13           THE COURT:  James Dupree.

12:10PM  14           MR. LANGAN:  Individual counsel, and we're looking for

12:10PM  15   dates.

12:10PM  16           THE COURT:  John Guide, we've discussed him before.

12:10PM  17   LeBleu, we've discussed.

12:10PM  18           MR. MILLER:  We've got dates for him.

12:10PM  19           THE COURT:  Oh, we do.  Good.

12:10PM  20               Richard Lynch, let's see if we can find him.

12:10PM  21   John Mogford, and I know we've discussed him, so let's see where

12:10PM  22   we stand with him.

12:10PM  23               Patrick O'Bryan.

12:10PM  24           THE CLERK:  He has individual counsel.

12:10PM  25           MR. LANGAN:  He has individual counsel, but we're

12:10PM 1   looking for dates.

12:10PM 2               THE COURT:  David Rainey, R-A-I-N-E-Y.

12:10PM 3               MR. LANGAN:  We're working with his individual counsel.

12:10PM 4               THE COURT:  David Rich.

12:11PM 5               MR. LANGAN:  Is he scheduled?

12:11PM 6               THE COURT:  I don't believe he's scheduled.

12:11PM 7               MR. LANGAN:  I don't have a date for David Rich.

12:11PM 8               THE COURT:  No, I'm asking you to look forward this week

12:11PM 9   and hopefully having dates for these witnesses a week from today,

12:11PM 10  hopefully in March.

12:11PM 11              Cindy Skelton.

12:11PM 12              MR. LANGAN:  Yes.  We think we'll be able to get an

12:11PM 13  April date for her.

12:11PM 14              THE COURT:  No March dates, right?

12:11PM 15              MR. LANGAN:  That's not the information that I have.

12:11PM 16  She has individual counsel we need to work through.

12:11PM 17              THE COURT:  All right.  Have we covered Mr. Suttles'

12:12PM 18  availability?

12:12PM 19              MR. LANGAN:  Mr. who?

12:12PM 20              THE COURT:  Mr. Suttles.  Remember him?

12:12PM 21              MR. LANGAN:  We did talk about that.  Individual

12:12PM 22  counsel, we're working on dates.

12:12PM 23              THE COURT:  We've talked about Mr. Wells, right?

12:12PM 24              MR. LANGAN:  Yes.  Just like Suttles.

12:12PM 25              THE COURT:  Halliburton.  Keith, Joseph Keith?

12:12PM  1          MR. GODWIN:  He's scheduled, Judge.

12:12PM  2          THE COURT:  You're right.

12:12PM  3              We've spoken about Victor Martinez today.

12:12PM  4              Alan Schneider.

12:12PM  5          MR. MILLER:  He's on.

12:12PM  6          MR. GODWIN:  He's scheduled.

12:12PM  7          MR. MILLER:  We've got him on the calendar.

12:12PM  8          THE COURT:  Kevin Lacy, former BP.  What are we going to

12:12PM  9  do about him?

12:12PM 10          MR. LANGAN:  He may have counsel, Mr. Lacy, and we are

12:13PM 11  attempting to reach out to him.

12:13PM 12          THE COURT:  All right.  The next ones on my list we've

12:13PM 13  taken care of.

12:13PM 14              Halliburton, have we taken care of

12:13PM 15  Christopher Haire?  I know we talked about him.

12:13PM 16          MR. GODWIN:  Bryan Haire, Your Honor -- would you like

12:13PM 17  me to report on him?  Thank you, Judge.

12:13PM 18              Judge, we do not have him scheduled -- Don Godwin,

12:13PM 19  Halliburton -- we don't have him scheduled.  You had asked me to

12:13PM 20  ascertain a date.  He is represented by Tony Buzbee in Houston.

12:13PM 21              I've tried a number of times this week to contact

12:13PM 22  Mr. Buzbee by phone, as well as e-mail, leaving specific messages

12:13PM 23  that we're trying to get a deposition date for Mr. Haire.  He has

12:13PM 24  not returned a call, nor has anyone from his office, nor have I

12:14PM 25  heard from him.

12:14PM  1          THE COURT:  I would like the PSC to go on and pick

12:14PM  2     dates, let everybody know what those dates are, issue a subpoena.

12:14PM  3          MR. STERBCOW:  That's for Haire?

12:14PM  4          THE COURT:  That's for Mr. Haire.  Of course, I don't

12:14PM  5     know if you requested him, so hold on, I'm not going to make you

12:14PM  6     do it if you didn't request him.

12:14PM  7          MR. GODWIN:  I didn't see that he was on the priority

12:14PM  8     list, Your Honor, from anybody.  He's not on the list.

12:14PM  9          MR. CUNNINGHAM:  Not on my list.

12:14PM 10          THE CLERK:  He was requested by BP.

12:14PM 11          MR. LANGAN:  I think we requested him.

12:14PM 12          THE COURT:  BP and Transocean requested him.  So does BP

12:14PM 13     or Transocean want to issue a subpoena for him?

12:14PM 14          MR. LANGAN:  I think we would.  I want to make sure.  I

12:14PM 15     think we requested him.

12:14PM 16          MR. GODWIN:  You did.

12:14PM 17          THE COURT:  You did.  I'm looking at the list.  You

12:14PM 18     requested him, and Transocean requested him.

12:14PM 19          MR. LANGAN:  Yes, we'll do that.

12:14PM 20          THE COURT:  You-all just coordinate dates and issue a

12:14PM 21     subpoena for his deposition.

12:15PM 22          MR. GODWIN:  Thank you, Your Honor.

12:15PM 23          THE COURT:  Thank you.  I appreciate it, Don.

12:15PM 24               That gets us substantially well along in the event

12:15PM 25     track.  If we can contact those witnesses in the coming weeks,

12:15PM 1  please fill up the March dates, if you can, and then go into

12:15PM 2  April, May, June.  I don't care, but let's get those guys done.

12:15PM 3  The earlier for the event tracks, the better.  Does everybody

12:15PM 4  agree?  Okay.

12:15PM 5          All right.  Let's turn our attention next to

12:16PM 6  plaintiff PI deponents.

12:16PM 7          Kerry, do you want to give us an update?

12:16PM 8          MR. MILLER:  Sure.  I think that track really starts

12:16PM 9  after April 20th.  That's when we're going to know who filed the

12:16PM 10 claims in limitation, and you'll have the power to move forward

12:16PM 11 with those.

12:16PM 12         THE COURT:  Then we'll defer that until April 20th.

12:16PM 13         MR. LANGAN:  Your Honor, on that one, I mean, it

12:16PM 14 generally sounds okay, but can I reserve?  If there are open

12:16PM 15 dates and witnesses that were, like, TO hands, that we're very

12:16PM 16 interested in their testimony, I suppose we could come to you and

12:16PM 17 try to invoke the subpoena power without waiting for April 20th.

12:16PM 18 I just don't want there to be some momentum that we're precluded

12:16PM 19 from doing that.  I don't think that would be fair.

12:16PM 20         THE COURT:  Kerry, I assume your point being that it

12:16PM 21 will be easier to gain their cooperation as witnesses?

12:16PM 22         MR. MILLER:  I don't want to preclude anybody with

12:17PM 23 subpoena power on them.  I'm just trying to coordinate the

12:17PM 24 schedule.

12:17PM 25         I think, in the main, the Court or a court order is

12:17PM 1   going to have to get these folks to give a deposition anyway.

12:17PM 2   I'm just saying that once they become a party, it may be -- it's

12:17PM 3   almost March 1st now, and once they become a party to this

12:17PM 4   litigation it may be easier to do it that way.

12:17PM 5          But, certainly, I don't want to preclude BP or

12:17PM 6   anybody else's rights to serve a subpoena on someone.

12:17PM 7          THE COURT:  Good.  No, Andy, I think that's right.

12:17PM 8          Let's move to the 30(b)(6) deposition track.

12:17PM 9   MR. MILLER:  We have two issues on that, Your Honor.  We

12:17PM 10  have the custodian ESI side of it, and then we have the

12:17PM 11  substantive side of it.

12:17PM 12         I think that Alan York has made a request.  We have

12:17PM 13  been circulating this week draft 30(b)(6) deposition notices

12:17PM 14  amongst the major players.  I think there has been a lot of

12:18PM 15  signoff and input, but I think Alan needs until Monday.  Maybe

12:18PM 16  that could be an issue top of the list on our agenda for next

12:18PM 17  Friday.

12:18PM 18         THE COURT:  Let me suggest to you guys that if you've

12:18PM 19  got 30(b)(6)'s that are custodial kinds of things, put them in.

12:18PM 20  Let's put March with that, because you need the documents.  It

12:18PM 21  will help you in the remainder of the course of discovery.  It

12:18PM 22  just makes sense to do that.

12:18PM 23         I have not looked closely at the notices, but it

12:18PM 24  should be pretty apparent which ones you can just go ahead and

12:18PM 25  see if you can't get your custodial production done in March.

12:18PM 1   That shouldn't take you off any other tracks, it seems to me,

12:18PM 2   right?

12:18PM 3              As to the others, what I would like to do by next

12:18PM 4   Friday is have each of the defendants designate the witnesses who

12:18PM 5   will testify with regard to each area, so that we will be able to

12:19PM 6   schedule them witness by witness.  We might have to break up

12:19PM 7   30(b)(6) depositions, but we'll take a witness from BP and

12:19PM 8   perhaps move on to a witness from Cameron.

12:19PM 9              MR. MILLER:  What if a designee is already on the

12:19PM 10  calendar in an individual capacity?

12:19PM 11             THE COURT:  If designees are already on the calendar, I

12:19PM 12  would like to combine it.

12:19PM 13             MR. LANGAN:  Your Honor, I was going to ask that precise

12:19PM 14  question.  Just hypothetically, David Sims, he's set for

12:19PM 15  April 4th and 6th for a fact witness deposition.  If it turns out

12:19PM 16  that he's the right guy for two or three topics, does the 15-hour

12:19PM 17  rule apply?  I mean, I would like to work it out so he's only

12:19PM 18  produced once.

12:19PM 19             THE COURT:  My gut is it will because I think a lot of

12:19PM 20  the designated areas will overlap with what, for instance, the

12:20PM 21  PSC wants to ask, anyway.  His testimony will be both for his

12:20PM 22  individual deposition, as well as his 30(b)(6) deposition.

12:20PM 23             If there is an area designated that goes well

12:20PM 24  beyond the scope of what the PSC, for instance, wants to do, we

12:20PM 25  may consider adding time, but I just don't see that as likely.

12:20PM  1        MR. LANGAN:  We've all done this before.  The counsel at

12:20PM  2   the deposition said, starting now, this is the 30(b)(6) portion

12:20PM  3   of this, because then the witness is testifying on behalf of the

12:20PM  4   defendant or whatever, right?  So there has got to be a way to

12:20PM  5   work that out.

12:20PM  6        THE COURT:  There has to be, guys.  I think what you do

12:20PM  7   is, before you start the deposition, it seems to me, stipulate

12:20PM  8   that this witness' testimony is binding on him individually, and

12:20PM  9   as to the areas designated is also binding on the corporation.

12:21PM 10        MR. LANGAN:  That sounds fine.  I had a slightly

12:21PM 11   different view, like there would come a time at 11 o'clock on the

12:21PM 12   first day that, okay, now, counsel for the PSC is going to take

12:21PM 13   up their topics applicable to Mr. Sims.

12:21PM 14        THE COURT:  As long as it's not repetitive, I don't

12:21PM 15   care.

12:21PM 16        MR. LANGAN:  I'm open to talking to Paul and Bobo about

12:21PM 17   how this works.

12:21PM 18        MR. CUNNINGHAM:  We'll talk about that.  I don't think

12:21PM 19   we can agree to that suggestion.

12:21PM 20        MR. MILLER:  Another idea, Your Honor, the way that I've

12:21PM 21   done it is it's for both capacities unless otherwise specified.

12:21PM 22        THE COURT:  Exactly.  So, for your example, Andy, you

12:21PM 23   will attach the 30(b)(6) notice and check off the areas that that

12:21PM 24   witness is designated for.  Then, it seems to me you-all work it

12:21PM 25   out, which the easiest way to do it is that for those areas

12:21PM 1    designated, his testimony is binding on the corporation and is

12:21PM 2    binding on him individually.

12:22PM 3         MR. DART:  Your Honor, I would like to say something

12:22PM 4    about this working out part.  I heard Mr. Langan say he would

12:22PM 5    work with the PSC.  We have court-appointed coordinating counsel

12:22PM 6    for the United States and for the states, and I would really like

12:22PM 7    to have them included.

12:22PM 8         THE COURT:  Oh, no.  I think they understand that.

12:22PM 9         MR. DART:  I'm not sure.

12:22PM 10        MR. LANGAN:  That was implicit.

12:22PM 11        MR. DART:  I'm not sure because London was set up

12:22PM 12   without the U.S. Attorney's knowledge or the State of Alabama's

12:22PM 13   knowledge.

12:22PM 14        THE COURT:  Everybody understands that when we say

12:22PM 15   coordinate, that includes coordinating counsel and liaison

12:22PM 16   counsel.

12:22PM 17        MR. DART:  Can we revisit this London trip?  Because, as

12:22PM 18   I understood it, Mr. Langan has not actually set up -- he's

12:22PM 19   getting ready to go to set up these depositions in London, but he

12:22PM 20   hasn't done it yet.  Can't we be consulted and do this in July

12:22PM 21   instead of June, please?

12:22PM 22        THE COURT:  Andy, you had confirmed availability of some

12:22PM 23   of these witnesses for those weeks, had you not?

12:23PM 24        MR. LANGAN:  Here are the facts.  Mr. Dart has got a bit

12:23PM 25   of a point.  Let me just explain the facts.

12:23PM  1          I believe that I was contacted by the PSC earlier

12:23PM  2     this week just floating the idea of, hey, we have been talking,

12:23PM  3     would the weeks of June 6 and 13 work for you; and, I said,

12:23PM  4     that's an idea, let's talk about it.  It's really gone no further

12:23PM  5     than that.

12:23PM  6          I mean, if this is a showstopper for --

12:23PM  7          MR. DART:  It is for me.

12:23PM  8          MR. LANGAN:  -- for the coordinating counsel for the

12:23PM  9     State of Alabama or the Department of Justice, then we can talk.

12:23PM 10          THE COURT:  Let me hear from Mr. Cunningham.

12:23PM 11          MR. CUNNINGHAM:  Your Honor, our rationale for June and

12:23PM 12     for suggesting that we discuss that was that the end of the game

12:23PM 13     is July.  We did not want to wait until the last month to take

12:23PM 14     the London depositions.  We did want to wait, because these are

12:23PM 15     the higher-ups, Mr. Hayward and the others, until we had a body

12:23PM 16     of evidence that we could then use for the cross-examinations of

12:24PM 17     all these witnesses, and June was the most logical month.

12:24PM 18          Now, I can't represent to the Court that I did, but

12:24PM 19     I thought I copied both Corey and Mike Underhill.  I'll have to

12:24PM 20     go back, there are so many e-mails flying around, and look, but I

12:24PM 21     thought I did.

12:24PM 22          THE COURT:  Mr. Maze, do you want to comment?

12:24PM 23          MR. MAZE:  Corey Maze for the State of Alabama.

12:24PM 24          I don't have anything other to say, Judge, than

12:24PM 25     we're going to work, together with the PSC and BP and whoever, to

12:24PM 1    get whatever date is necessary.  If June is what's necessary, I

12:24PM 2    probably feel as bad or worse for Mr. Dart than anybody, but if

12:24PM 3    that's when we have to be there, then that's when we're going to

12:24PM 4    be there.  Other than that, if that's the way it's going to have

12:24PM 5    to work, then that's what we'll do.

12:24PM 6            THE COURT:  I understand the PSC's desire to get these

12:25PM 7    depositions before the final discovery in July is done.  I think

12:25PM 8    that is a very valid concern.

12:25PM 9            Hank, when is your daughter's wedding?

12:25PM 10           MR. DART:  June 18th, Your Honor, and there are some

12:25PM 11   preceding events that go ahead of that.

12:25PM 12           THE COURT:  Because that's really going to squeeze the

12:25PM 13   PSC.  We're talking three weeks now, and possibly four, in

12:25PM 14   London.

12:25PM 15           MR. DART:  The last week of June?  Anytime after the

12:25PM 16   18th?

12:25PM 17           THE COURT:  But, Hank, that takes up all of July at that

12:25PM 18   point, and they want to get that discovery done before the

12:25PM 19   conclusion of --

12:25PM 20           MR. DART:  Oh, I understand, but there is another week

12:25PM 21   in June, or two, maybe, plus the first two weeks of July.  I

12:25PM 22   mean, Judge, I'm not trying to shuck work.

12:25PM 23           MR. CUNNINGHAM:  If we can accommodate Mr. Dart, we're

12:25PM 24   happy to do it, but the concerns here and the -- you know, the

12:25PM 25   case we're dealing with is not your typical case.  We would love

12:26PM 1   to be able to -- I think everybody on our team has personal

12:26PM 2   conflicts between now and the end of July that are having to be

12:26PM 3   put aside.  We all do.  We would like to avoid inconveniencing

12:26PM 4   everybody, but it just is not going to work to get the case

12:26PM 5   prepared.

12:26PM 6              Now, if there is some way that we can accommodate

12:26PM 7   Hank, that's great.

12:26PM 8         MR. MAZE:  Is it possible, Your Honor, if we just got on

12:26PM 9   the phone together, all of us, on Monday, including myself and

12:26PM 10  Mr. Dart and Andy and Bobo and whoever else is necessary, that we

12:26PM 11  just talk and see if is there a way to work it out?

12:26PM 12        THE COURT:  That would be fine.

12:26PM 13        MR. MAZE:  If we can, I mean, that -- I'm looking out

12:26PM 14  for Mr. Dart, as well, but we're going to do whatever it takes to

12:26PM 15  make sure this gets done.

12:26PM 16        THE COURT:  Keep in mind, no matter what we agree, we

12:26PM 17  have got to accommodate the witnesses, and we don't know their

12:26PM 18  availability.  So any agreement you-all reach is subject to

12:26PM 19  Andy's confirmation of their availability.

12:27PM 20        MR. MAZE:  Andy, when would you rather talk?

12:27PM 21        MR. LANGAN:  There are a couple of parts.  I'm happy to

12:27PM 22  talk to Mr. Maze or anybody else.  I don't need a phone call to

12:27PM 23  know that there won't be a date for anybody that works for

12:27PM 24  everybody.  It's never going to happen.

12:27PM 25        THE COURT:  Totally agree.

12:27PM  1          MR. LANGAN:  Mr. Cunningham is totally correct.  So I

12:27PM  2     know right now that someone is going to be unhappy.  We know.  We

12:27PM  3     know that.

12:27PM  4               But if the answer is should we have a call on

12:27PM  5     Monday to talk about which are the best weeks for London, sure,

12:27PM  6     I'm happy to be on such a call.

12:27PM  7          THE COURT:  I do think it make senses to go on.

12:27PM  8               All right.  So everybody will be prepared to

12:27PM  9     identify their witnesses by designated area of testimony next

12:27PM 10     week and, please, have the availability of those individuals

12:27PM 11     written down on your yellow pads because we're going to schedule

12:27PM 12     it.

12:28PM 13          MR. UNDERHILL:  Magistrate Shushan, could I speak up

12:28PM 14     just for a second?  Mike Underhill.

12:28PM 15          THE COURT:  Hey, Mike, how are you?

12:28PM 16          MR. UNDERHILL:  You know, Judge, you knew you couldn't

12:28PM 17     get through this without me saying at least one thing.

12:28PM 18          THE COURT:  Well, Mike, I did have a comment for you,

12:28PM 19     which is when I saw why you're not here today, I wanted to say

12:28PM 20     la de da.  Very fancy, right?

12:28PM 21          MR. UNDERHILL:  Well, you know, we live the high life

12:28PM 22     out here on the West Coast.  It's all cocktail parties and

12:28PM 23     chardonnay.

12:28PM 24          THE COURT:  Is it a black tie event?

12:28PM 25          MR. UNDERHILL:  No, no, no, we're not that fancy.  I'm a

12:28PM 1  government worker, so I can't afford that kind of garb.  Like

12:28PM 2  you, Judge, I might be laid off next week when we shut down the

12:28PM 3  government, so I'm saving up my dollars.

12:28PM 4        THE COURT:  Well, certainly our salaries are frozen.  We

12:28PM 5  know that.

12:28PM 6        MR. UNDERHILL:  The only comment I wanted to make, I

12:28PM 7  don't know who the speaker was, but insofar as coordination of

12:28PM 8  depos, I feel, on behalf of our client, the United States, that

12:28PM 9  we have been coordinating with the PSC and with the defendants

12:29PM 10 working very closely.

12:29PM 11        Our attitude has been, if people can agree on a

12:29PM 12 schedule, we'll show up.  We may not like the schedule, and it

12:29PM 13 may impose hardships on a lot of us, just like it's doing to

12:29PM 14 everybody in your courtroom today; but, if they are scheduled,

12:29PM 15 we'll show up.  You're not going to find us griping about a

12:29PM 16 particular time or a particular place.  We'll do what the parties

12:29PM 17 need to do with the oversight of the Court.  So I want to make

12:29PM 18 that clear.

12:29PM 19        THE COURT:  I appreciate that, Mike, very much.  I think

12:29PM 20 it's a correct attitude toward getting this done, so thank you.

12:29PM 21        Mr. Herman, you want to say something?

12:29PM 22        MR. HERMAN:  I just wanted to point out for the Court

12:29PM 23 briefly, since I was the cutter and paster for the 30(b)(6) list.

12:29PM 24 One thing -- well, first of all, we're happy to include --

12:29PM 25 Steve Herman for the plaintiffs -- we're happy to include

12:29PM  1   Mr. York's stuff on Monday and assimilate that in and recirculate
12:30PM  2   everything.
12:30PM  3              The two things I just wanted to note are, while I
12:30PM  4   think I had the opportunity to copy and paste everything in, I
12:30PM  5   didn't get a chance to go through and try to eliminate
12:30PM  6   duplicative issues or combine issues that arguably should be
12:30PM  7   combined, so there might be some cleaning up that needs to be
12:30PM  8   done before the final notices get served.
12:30PM  9              There was also one set of areas that one of the
12:30PM 10   parties, I don't even remember who it was, wanted to include, I
12:30PM 11   think in BP's notice, that involved some questions about natural
12:30PM 12   resource damage assessments and negotiations and things of that
12:30PM 13   nature, restoration issues.
12:30PM 14              While we anticipate having 30(b)(6) depositions on
12:30PM 15   those issues at some point, we were kind of limiting our areas of
12:30PM 16   inquiry to what we thought was specifically pertinent for the
12:30PM 17   2012 February trial.  So we would like to kind of, at the very
12:31PM 18   least, reserve our rights on all of those issues and topics for
12:31PM 19   some later date.
12:31PM 20         THE COURT:  Andy?
12:31PM 21         MR. LANGAN:  Mr. Herman makes a good point.  We're happy
12:31PM 22   to talk to him about it, and that may certainly be something we
12:31PM 23   can work through.
12:31PM 24              Can I make one more point about the London track
12:31PM 25   before I forget?  I probably should have mentioned it before.

12:31PM  1    That is, we have personal counsel issues about some of these

12:31PM  2    witnesses, and I don't want to lose sight of the fact that there

12:31PM  3    may be jurisdictional Hague Convention kinds of issues.  That is,

12:31PM  4    if somebody is a UK citizen, not a party to the case, or maybe

12:31PM  5    even if they are a party to the case, and they want to insist --

12:31PM  6    I think Pretrial Order 17 contemplates this -- if they want to

12:31PM  7    insist on a Hague Convention kind of dep notice, there are some

12:31PM  8    hoops to jump through there.

12:31PM  9              I'm certainly in no position to waive that kind of

12:31PM 10    thing on behalf of somebody I don't represent, nor do I want it

12:31PM 11    forgotten that that's an issue.

12:31PM 12         THE COURT:  No question.  I appreciate that.

12:31PM 13              Paul Sterbcow knows how to comply with the

12:32PM 14    Hague Convention, so that won't be a problem.

12:32PM 15         MR. STERBCOW:  Thanks for volunteering me, Judge.

12:32PM 16         THE COURT:  That wasn't a volunteer.

12:32PM 17              So are we clear on the 30(b)(6) things that we need

12:32PM 18    to accomplish next week?

12:32PM 19              Okay, Mr. Underhill, do you want to talk about

12:32PM 20    depositions of the United States?

12:32PM 21         MR. UNDERHILL:  Of course not.

12:32PM 22         THE COURT:  I didn't think so.

12:32PM 23              I think that you and Andy, this coming week, should

12:32PM 24    confer on the depositions; not that I'm excluding anybody, but,

12:32PM 25    as I understand it, BP is the main requester of the United States

12:32PM 1   witnesses.

12:32PM 2           So I'm not excluding anybody else.  Coordinating

12:32PM 3   counsel, please participate.  But, BP, you're the main requestor,

12:32PM 4   and it seems to me, you and Mike need to talk about whether he

12:32PM 5   can substitute witnesses for the Secretary of the Interior.

12:33PM 6           MR. LANGAN:  Happy to have those conversations.

12:33PM 7           MR. UNDERHILL:  I am, too, Your Honor.  Just I'd make

12:33PM 8   one point, and this goes, really, to the scope, because this

12:33PM 9   defines the conversation that Andy and I have.

12:33PM 10          I don't have the list before me, but I went through

12:33PM 11  it.  It looks like about 98, 99 percent of all those witnesses

12:33PM 12  dealt with post-incident response issues, and I'm not clear how

12:33PM 13  that fits into the scope of this trial.  Perhaps Andy can explain

12:33PM 14  it to me when we meet, but I'm not getting how that fits into

12:33PM 15  what we're doing to try to get these depositions set up for a

12:33PM 16  trial next February and March.

12:33PM 17          MR. LANGAN:  Your Honor, if I may comment on that.  I

12:33PM 18  think it's like groundhog day, because last Friday we talked

12:33PM 19  about this, and Mr. Roy had some comments.

12:33PM 20          Again, happy to have a conversation, and I know

12:33PM 21  Judge Barbier wants us too soon, about how the trial is going to

12:34PM 22  look, what the structure is going to be, what issues are going to

12:34PM 23  be tried, and we need to have that conversation.

12:34PM 24          I think there is at least substantial doubt, and I

12:34PM 25  think Mr. Roy would say there is no doubt, about whether or not

12:34PM  1   we're going to try the issues of where did the oil go, why wasn't

12:34PM  2   it capped sooner, how could it have been capped sooner, what took

12:34PM  3   so long, those kinds of things.  I think there's a school of

12:34PM  4   thought here that says that's very much part of this trial.

12:34PM  5          If that's very much part of this trial, BP is going

12:34PM  6   to be in the middle of that and needs to defend itself.  There

12:34PM  7   are other players and actors that were involved in those kinds of

12:34PM  8   decisions as part of the unified command; and, if we have to

12:34PM  9   defend ourselves, that means taking evidence.

12:34PM 10          Some of the -- all of the people on our list were

12:34PM 11   put there in good faith because we think they have evidence about

12:34PM 12   that, up to the secretary level.

12:34PM 13          So, yes, we want to have this conversation, but it

12:34PM 14   was done in good faith, understanding that many people believe

12:34PM 15   the scope of the trial is going to include those very issues.

12:35PM 16       THE COURT:  So you-all will chat next week and go

12:35PM 17   through the list and see what you can agree to.  What you can't

12:35PM 18   agree to, why don't you be prepared to report to me so that we'll

12:35PM 19   know where the areas of disagreement are.

12:35PM 20          Mr. Roy.

12:35PM 21       MR. ROY:  Yes, ma'am.  Jim Roy.

12:35PM 22          Reiterating the points made earlier, and Andy

12:35PM 23   articulated it is our position, it's been our position ever since

12:35PM 24   the CMO came out saying that there is going to be *Robins Dry Dock*

12:35PM 25   type plaintiffs.  To have *Robins Dry Dock* type plaintiffs, you

12:35PM  1   have to talk cap and contain, nature and extent of oil.

12:35PM  2                On multiple occasions, going back months with the

12:35PM  3   Court, these discussions have taken place.  There is no surprise.

12:35PM  4   In our list, there are witnesses.  In our experts, there will be

12:35PM  5   experts.

12:35PM  6                We've contended from day one, and it seems to have

12:35PM  7   been reflected and acknowledged by the Court in the scheduling

12:35PM  8   order, that there need to be two separate fault determinations at

12:36PM  9   the February trial, and the second one very much is geared toward

12:36PM 10   the well's failure to be capped sooner.

12:36PM 11          THE COURT:  Thank you.  All right.  Mr. Roy, while --

12:36PM 12                Kerry, I'm sorry, did you have something you wanted

12:36PM 13   to say?

12:36PM 14          MR. MILLER:  Not on this topic, if you're continuing on.

12:36PM 15   Completely separate topic.

12:36PM 16          THE COURT:  Let's get your separate topic, and then I

12:36PM 17   want to ask Mr. Roy something.

12:36PM 18          MR. MILLER:  Yeah, I think for next week, Your Honor, if

12:36PM 19   we can put on the agenda, Steve Roberts, my co-counsel, and I

12:36PM 20   talked to Andy about it, there is some lack of clarity in the

12:36PM 21   pretrial order on confidentiality that pertains to the production

12:36PM 22   of confidential -- actually, that one is clear -- highly

12:36PM 23   confidential materials produced in MDL 2179 to governmental

12:36PM 24   investigators.

12:36PM 25                So we all need, I think, some cover on that issue,

12:36PM 1    and would like to point it out to the Court.  If you want, I

12:37PM 2    could point it out to you now.

12:37PM 3              THE COURT:  Yes, I'd like that, please.

12:37PM 4              MR. MILLER:  Someone absconded with my folder here.

12:37PM 5    Maybe you thought this was a wedding present.

12:37PM 6              The issue, Your Honor, is paragraph 7, and it talks

12:37PM 7    about confidential information and highly confidential

12:37PM 8    information must be used only in this MDL proceeding,

12:38PM 9    interrelated litigation as defined in paragraph 5(k), or in any

12:38PM 10   government investigation into the DEEPWATER HORIZON incident or

12:38PM 11   resulting oil spill, so long as its use is permitted herein.

12:38PM 12             Now, it talks about both confidential and highly

12:38PM 13   confidential.  So I think it's clear.  I think there is just a

12:38PM 14   little bit of a gap.

12:38PM 15             Again, I'm happy to talk to Andy during the week

12:38PM 16   off, but we are receiving subpoenas from governmental entities

12:38PM 17   regarding information produced in MDL 2179.

12:38PM 18             Paragraph seven, reference five, which is

12:38PM 19   confidential, so we're good.

12:38PM 20             Six is highly confidential.  It doesn't reference

12:38PM 21   subparagraphs in six, but you will see that it references

12:39PM 22   confidential and highly confidential in seven.

12:39PM 23             But we just don't want to be in default of the

12:39PM 24   confidentiality provision here, so we're looking for cover to

12:39PM 25   make sure that -- Steve, is that right that we can produce the

12:39PM  1  information that's been subpoenaed, both stamped confidential and

12:39PM  2  highly confidential?

12:39PM  3          MR. ROBERTS:  Your Honor, Steve Roberts for Transocean.

12:39PM  4          I think most of the parties in here are operating

12:39PM  5  under any number of subpoenas by any number of governmental

12:39PM  6  agencies, and we just need to know for Transocean whether we are

12:39PM  7  free to produce to those agencies that have requested documents

12:39PM  8  and statements, which depositions are, produce the materials that

12:39PM  9  we receive by virtue of the MDL process.  One way or the other,

12:39PM 10  we just need to know.

12:39PM 11          THE COURT:  Okay.

12:39PM 12          MR. MILLER:  That would include materials stamped both

12:39PM 13  confidential and highly confidential.

12:39PM 14          THE COURT:  Got it.

12:39PM 15          Mr. Roy, while we were on the subject of post-spill

12:39PM 16  well control, you listed some unidentified deponents on that

12:40PM 17  issue.

12:40PM 18          MR. ROY:  Is that a statement or question?

12:40PM 19          THE COURT:  You have.

12:40PM 20          MR. ROY:  Yes, we have, Your Honor.  As a matter of

12:40PM 21  fact, we received a voluminous discovery response from Transocean

12:40PM 22  and have been working very busily to analyze it, and had already

12:40PM 23  culled an additional name, which we have provided to our

12:40PM 24  deposition team, which will, in turn, liaise with Kerry and the

12:40PM 25  Transocean people.

12:40PM 1          Apparently, two of the people, in addition to that,

12:40PM 2    already, coincidentally, because of knowledge in other areas,

12:40PM 3    were already scheduled and on the list, or at least on the list.

12:40PM 4          So we'll have at least three names, I believe, to

12:41PM 5    address that area, possibly more.  It's moving right along.

12:41PM 6          THE COURT:  Good.  I just wanted to make sure that you

12:41PM 7    were identifying people you needed.

12:41PM 8          MR. ROY:  Oh, absolutely.

12:41PM 9          While we're talking about the magic number three, I

12:41PM 10   just want the Court to understand that the plaintiff steering

12:41PM 11   committee is prepared, if necessary, to triple track, quadruple

12:41PM 12   track, whatever it takes to cover the turf to be prepared for

12:41PM 13   trial in February.

12:41PM 14         THE COURT:  Well, I hear you, and that brings up that

12:41PM 15   point.  With more days slipping, guys, it seems to me, by the

12:41PM 16   time we get to May, we've got to be triple tracking, if not more,

12:41PM 17   in May, June and July.

12:41PM 18         So let me give you the bad news now, because as we

12:41PM 19   keep letting time slip, I just don't see any alternative.  So

12:41PM 20   that's why it's so important next week that y'all come in

12:42PM 21   prepared to start booking people, getting them on the calendar.

12:42PM 22         Let me talk about the idea of taking depositions

12:42PM 23   that are going to be one-day depositions.  We've got a lot of

12:42PM 24   dates that we've got single dates, so please look to see if there

12:42PM 25   aren't witnesses that are somewhat limited that we could slot in,

12:42PM 1   somebody that, for instance, only BP and Halliburton asked for,

12:42PM 2   and maybe the rest of you guys aren't particularly interested in.

12:42PM 3   If it's just BP and Halliburton that are asking the questions,

12:42PM 4   they should be able to do it in the one-day time period.  So, if

12:42PM 5   you wouldn't mind, try to focus on that.

12:42PM 6            Let's talk about insurance issues.  Judge Barbier

12:42PM 7   spoke this morning about making sure that we know who the cast of

12:43PM 8   characters are, producing the policies, if we know who will be

12:43PM 9   representing them, let's go ahead and circulate that to all

12:43PM 10  liaison and coordinating counsel.  I'm looking specifically at

12:43PM 11  Mr. Kelly and Mr. McLeod.

12:43PM 12           I think that's true for all parties.  All

12:43PM 13  defendants need to produce their insuring agreements, their

12:43PM 14  indemnity agreements, and list of counsel, if there is separate

12:43PM 15  coverage counsel.

12:43PM 16           Do y'all want to agree to a date by which that will

12:43PM 17  happen?  Mr. McLeod.

12:43PM 18           MR. MCLEOD:  Good afternoon, Your Honor.  Marty McLeod

12:43PM 19  for the Transocean underwriters.

12:43PM 20           My understanding is that in the MDL process, that

12:43PM 21  Transocean has already produced copies of its entire layer of

12:44PM 22  insurance policies.  Now, I know there may be some questions

12:44PM 23  about whether that production is complete, but I believe that

12:44PM 24  that has been done.  I can't speak for Halliburton and Cameron or

12:44PM 25  any of the other parties.

12:44PM 1          So I think that has been done.  I will circulate a

12:44PM 2  list of all of the coverage counsel that I'm aware of next week,

12:44PM 3  so hopefully that will be taken care of, as well.

12:44PM 4          THE COURT:  Kerry, do you know whether all of those

12:44PM 5  policies have been produced?

12:44PM 6          MR. MILLER:  I have been told that they have been

12:44PM 7  produced, and I think I even have circulated Bates number ranges

12:44PM 8  of those policies.

12:44PM 9          MR. LANGAN:  Your Honor, Andy Langan for BP.

12:44PM 10         We produced all of our policies.  When the inquiry

12:44PM 11 came up in the PSC the other day, we gave them the Bates numbers.

12:44PM 12         I think the policies were part of the initial

12:44PM 13 omnibus request back in October.

12:44PM 14         THE COURT:  They were.

12:44PM 15         MR. LANGAN:  So we produced them then, back in November.

12:44PM 16         THE COURT:  Don.

12:44PM 17         MR. GODWIN:  Don Godwin for Halliburton.

12:44PM 18         We've also produced our policies, Judge.

12:44PM 19         THE COURT:  Would everybody please circulate the Bates

12:44PM 20 numbers of their document production that corresponds to the

12:44PM 21 insuring agreements, the indemnity agreements, and then follow up

12:45PM 22 with a list of counsel, separate counsel.

12:45PM 23         How long do you-all want, ten days?

12:45PM 24         MR. MCLEOD:  A week is fine.

12:45PM 25         THE COURT:  A week is fine.  A week from today.

12:45PM 1        MR. ROY:  Two points of clarification, Your Honor.  When

12:45PM 2   you talk about counsel, hopefully we're talking about

12:45PM 3   identification of counsel of every separate layer policy,

12:45PM 4   indemnity agreement, club, whatever they are going to call it --

12:45PM 5        THE COURT:  If they have separate counsel.

12:45PM 6        MR. ROY:  -- and contact information -- well,

12:45PM 7   regardless.  Identify who is the lawyer for each layer at every

12:45PM 8   level.  That's really what I think we need.  Whether it's

12:45PM 9   separate or not, just who is it and what is the contact

12:45PM 10  information.

12:45PM 11       The final thing, Your Honor, is I don't know that

12:45PM 12  the reinsurance agreements or retrocessionary agreements were

12:45PM 13  actually produced early on.  I'm, frankly, not even sure that

12:45PM 14  they were asked for, without going back and looking at it, but,

12:46PM 15  because of the complexity of the litigation, you know, that and

12:46PM 16  reservation of right situations, I'd submit to the Court, perhaps

12:46PM 17  ought to also be produced by all defendants and their insurers.

12:46PM 18       THE COURT:  Carmelite.

12:46PM 19       MS. BERTAUT:  Yes, Your Honor.  Carmelite Bertaut for

12:46PM 20  Cameron.

12:46PM 21       Your Honor, we have produced insurance policies.

12:46PM 22  We have responded to written requests relative to reservation of

12:46PM 23  rights and coverage issues.  We have, because -- and that's

12:46PM 24  nothing new, Your Honor.  That's a couple of months old.  I do

12:46PM 25  think that was done back in the fall.

12:46PM 1         But I know plaintiffs have asked for a list of

12:46PM 2    counsel representing these insurers, and I will tell you what

12:46PM 3    Cameron has encountered, which is they have -- we don't represent

12:46PM 4    these folks, and we have gone to these insurers and asked, tell

12:46PM 5    us who it is you want us to identify as the counsel to be

12:46PM 6    disclosed to the Court, and we are waiting for requests back.

12:46PM 7    That may or may not be the same individuals that the clients are

12:47PM 8    directly addressing insurance issues with.  I just want to point

12:47PM 9    that out to the Court.

12:47PM 10        So, to ask -- you know, we are working with due

12:47PM 11   deliberate speed, but that is somebody outside of our control,

12:47PM 12   and whether we will have that information in the next week I'm

12:47PM 13   not exactly certain.  We're doing the very best we can.  But,

12:47PM 14   keep in mind, these are not parties; and, while we know

12:47PM 15   individuals we've -- the clients have been communicating with,

12:47PM 16   that may or may not be the ones that they want identified to the

12:47PM 17   Court.

12:47PM 18        THE COURT:  Well, let's go ahead and get Bates stamp

12:47PM 19   identification of the insuring agreements, the indemnity

12:47PM 20   agreements.

12:47PM 21        What else are we asking for, Jim?

12:47PM 22        MR. ROY:  Each layer of excess insurance, reinsurance,

12:47PM 23   retrocessionary agreements, reservation of rights letter and

12:47PM 24   agreements and the like --

12:47PM 25        THE COURT:  And the like.

12:47PM 1          MR. ROY:  -- and who is representing each level.

12:47PM 2          THE COURT:  And as soon as you possibly can, a listing

12:47PM 3    of who is representing each of these entities and their contact

12:48PM 4    information.

12:48PM 5          MR. MCLEOD:  Your Honor, again, Marty McLeod for

12:48PM 6    Transocean excess underwriters.

12:48PM 7              We don't have a problem with the policies.  We

12:48PM 8    don't have a problem with producing the drilling contract.

12:48PM 9              Reinsurance agreements at this point is completely

12:48PM 10   irrelevant.  We would object to that.  And if they would like to

12:48PM 11   seek that information, I think that should be an issue that the

12:48PM 12   Court should take up.

12:48PM 13         THE COURT:  Okay.

12:48PM 14         MR. MCLEOD:  I'll be happy to address that issue.  We've

12:48PM 15   addressed it in the past in many other cases.

12:48PM 16             The other point I should mention is at this point

12:48PM 17   the underwriters are parties to two DJ actions to which the PSC

12:48PM 18   is not a part of, so there is no direct action suit against the

12:48PM 19   underwriters.  So I'd point that out.

12:48PM 20         THE COURT:  It sounds like there may be.

12:48PM 21         MR. MCLEOD:  Well, that's fine.  But, again, to the

12:48PM 22   extent that happens, we still disagree on the reinsurance issue.

12:48PM 23         THE COURT:  Thank you.

12:48PM 24             Anything to report on ESI?  Is all well?  Please

12:48PM 25   say yes.

12:48PM 1          MR. HERMAN:  I think things are well on ESI --

12:49PM 2          THE COURT:  Thank you.

12:49PM 3          MR. HERMAN:  -- at least for the time being.  There is a

12:49PM 4   meet and confer scheduled between Mr. Gonzales and some others

12:49PM 5   representing the PSC and BP for right after this conference, and

12:49PM 6   I don't know the full expanse of issues they are going to

12:49PM 7   address.

12:49PM 8          But just to put it on the record, again, to reserve

12:49PM 9   our rights, etcetera, this issue came up with a few unidentified

12:49PM 10  as of yet cap and contain witnesses, for lack of a better word.

12:49PM 11         Your Honor may recall, you know, last week, we had

12:49PM 12  talked about the outstanding omnibus requests from BP for who was

12:49PM 13  involved in all these projects.  We got an answer from them which

12:49PM 14  just said, we will produce, after however many months.

12:49PM 15         Andy and I communicated about that over the

12:49PM 16  weekend, and, I think, on -- my understanding is on Wednesday, we

12:49PM 17  got about 3,500 pages of org charts.  So we have the information,

12:49PM 18  thank you very much, we appreciate it, but it's not very helpful.

12:49PM 19         At the same time, in response to our third omnibus

12:50PM 20  requests, which were specifically interrogatory-type things to

12:50PM 21  identify cap and containment type witnesses, we got responses

12:50PM 22  from many of the parties.  BP's response, again, was about

12:50PM 23  16 pages of objections, and the response is, we will give them to

12:50PM 24  you, or we will produce, or we will search.  You know, if it

12:50PM 25  takes time, it takes time.  We will work through those issues

12:50PM  1    and -- Mr. Gonzalez will, etcetera.

12:50PM  2              But, just in terms of reserving our rights on

12:50PM  3    identifying witnesses and putting them on a priority list, there

12:50PM  4    are probably going to be some more cap and containment people

12:50PM  5    that we don't know about or we haven't found the best witness

12:50PM  6    for.

12:50PM  7              THE COURT:  We're aware of that.

12:50PM  8              MR. NOMELLINI:  Your Honor.  Mark Nomellini, on behalf

12:50PM  9    of BP.

12:50PM 10              I'm pleased to report that on the date range and

12:50PM 11    custodian issues, we met and conferred through the week.  There

12:50PM 12    are some date range issues that we'll have to present to

12:50PM 13    Your Honor to resolve.  Then, we got a custodian list from the

12:50PM 14    PSC today, so we're going to work on that as hard as we can.

12:51PM 15              Mr. Roy mentioned the response effort.  I just want

12:51PM 16    to reiterate, to the extent that's a part of things, that is a

12:51PM 17    vast universe there.  I think in our submission we talked about,

12:51PM 18    you know, a petabyte of data, which is like 200,000 discs full of

12:51PM 19    data.  So it really reinforces the importance of, one, the

12:51PM 20    productions are going to be rolling productions in this case;

12:51PM 21    and, number two is it underscores the importance of focusing on

12:51PM 22    what's important.

12:51PM 23              Finally, on the org charts, the 13,000 pages of org

12:51PM 24    charts, that's true, there are 13,000 pages of org charts, but it

12:51PM 25    is just because the response effort is such a massive effort.

12:51PM  1          THE COURT:  Okay.

12:51PM  2          MR. NOMELLINI:  That's just the reality.

12:51PM  3          THE COURT:  I'm glad you made progress on those other

12:51PM  4  issues, though.  Thank you.

12:51PM  5          MR. ROY:  Your Honor, Jim Roy, for the phone folks.

12:52PM  6          We can cut to the chase here.  It's no great

12:52PM  7  mystery.  I mean, we're interested in the immediate

12:52PM  8  identification of the people that have knowledge that is material

12:52PM  9  knowledge about the decisions that were made to cap and contain

12:52PM 10  this well, people that can tell us at what point those decisions

12:52PM 11  were made and what was considered prior to those decisions and

12:52PM 12  either not acted on or rejected and the reasons therefor.

12:52PM 13          This is not mystery.  We may have petabytes, but I

12:52PM 14  suspect a huge hunk of the petabytes is dealing with high

12:52PM 15  definition video, perhaps, of the well spewing oil and gas.  I

12:52PM 16  don't know, I'm speculating.  But I suspect that BP knows who was

12:52PM 17  in that decision tree, and it's not 900 people.

12:52PM 18          THE COURT:  Jim, isn't that covered in your 30(b)(6)?

12:52PM 19          MR. ROY:  Part of it is, yes, ma'am.

12:53PM 20          THE COURT:  Part of it, or is it substantially?

12:53PM 21          MR. ROY:  I don't know what draft we ended up

12:53PM 22  submitting, that's why I said.  I was covering that.  It should

12:53PM 23  be covered.

12:53PM 24          MR. HERMAN:  I think there are a few 30(b)(6) topics on

12:53PM 25  that, and that would helpful if they identified, perhaps --

12:53PM 1          THE COURT:  So by next week you're going to have

12:53PM 2    identification of witnesses on the 30(b)(6).  Look at it, make

12:53PM 3    sure you've got yourself covered on that issue.

12:53PM 4          MR. ROY:  Will do.

12:53PM 5          THE COURT:  By next week, we'll have answers to that

12:53PM 6    question.

12:53PM 7          MR ROY:  Yes, ma'am.

12:53PM 8          MR. KANNER:  Your Honor, just briefly, Allan Kanner for

12:53PM 9    the State of Louisiana.

12:53PM 10          We intend to cooperate as much as possible in

12:53PM 11    making discovery happen.  We echo Mr. Underhill's statement.  We

12:53PM 12    in no way want to limit discovery.

12:53PM 13          I thought I heard Judge Barbier say today that he

12:53PM 14    had not decided on a trial plan yet, that that would be decided.

12:53PM 15    For the first time today, I'm hearing that the PSC believes that

12:53PM 16    we'll be trying some of the ecological impact associated with the

12:54PM 17    DEEPWATER HORIZON, which does get into potentially NRDA type

12:54PM 18    claims.

12:54PM 19          As I understand it, that's going to be decided by

12:54PM 20    Judge Barbier, and we're not going to try to slow up any

12:54PM 21    discovery into those issues now, but I just want to note that we

12:54PM 22    have a different position on that.  Thank you.

12:54PM 23          THE COURT:  Thank you.

12:54PM 24          MR. ROY:  Your Honor, as the PSC appreciates it, the

12:54PM 25    February trial is a liability trial on two different discrete

12:54PM 1    sets of plaintiffs, the PI and the wrongful death plaintiffs and

12:54PM 2    then what can be described as *Robins Dry Dock* slash OPA, whatever

12:54PM 3    they are, separate set of plaintiffs.

12:54PM 4            That second group of plaintiffs, the issue of the

12:54PM 5    extent and duration of the oil is relevant, okay, but it is not

12:54PM 6    necessarily, and we do not believe it will address, an

12:55PM 7    ecological, environmental, scientific, biological aspect in order

12:55PM 8    to be able to establish what needs to be established for the

12:55PM 9    February trial.

12:55PM 10           So, to that extent, we do not envision that

12:55PM 11   overlap.

12:55PM 12       MR. KANNER:  Maybe there is a way to work it out, but I

12:55PM 13   just want to be clear.  If there is going to be any conclusive

12:55PM 14   findings on how much oil got out, where it went, that will

12:55PM 15   implicate both penalties and NRD damages.  Any trial on NRD

12:55PM 16   damages will obviously include a predicate of what got out, when

12:55PM 17   and where did it go.

12:55PM 18           I really did not understand from the original order

12:55PM 19   that *Robins Dry Dock* meant we were going to get into all of those

12:55PM 20   issues in this case, and that's just something we're going to

12:55PM 21   have to deal with.

12:55PM 22       THE COURT:  I think it is, and I think it's something

12:56PM 23   that we have got to put on the front burner with Judge Barbier.

12:56PM 24       MR. O'ROURKE:  Good morning, Your Honor.  This is

12:56PM 25   Steve O'Rourke for the United States.

12:56PM 1        We're with Louisiana on that question.  The fate

12:56PM 2   and transport of oil, we don't think it should be a part of that

12:56PM 3   trial.  We're just on record for that.

12:56PM 4        THE COURT:  Thank you.

12:56PM 5        If we're going to continue to have Friday status

12:56PM 6   conferences, which I think, for the foreseeable future, we

12:56PM 7   should, let's add May 6th, May 13th, May 20th, and May 27th.

12:56PM 8   Hopefully, by then, you will be tired enough of me that we think

12:56PM 9   we don't need to meet on a weekly basis.

12:56PM 10       MR. KANNER:  What times, Your Honor?

12:56PM 11       THE COURT:  Except for those days that we're meeting

12:56PM 12  with Judge Barbier -- I don't think any of those dates are

12:56PM 13  Barbier dates -- 9:30.

12:56PM 14       MR. GODWIN:  9:30, Judge.

12:57PM 15       THE COURT:  9:30.

12:57PM 16       MR. MILLER:  Would the Court enter a minute entry as to

12:57PM 17  that?

12:57PM 18       MS. BERTAUT:  But next week is 9:00.

12:57PM 19       THE COURT:  Do you-all want to do 9:30 next week?  Would

12:57PM 20  that make anybody happy or unhappy?  The out-of-towners, I know,

12:57PM 21  want to get out of town.  9:30.  Sold to the lowest bidder.

12:57PM 22       MR. TSEKERIDES:  Your Honor, Ted Tsekerides.

12:57PM 23       We're liaison for the responders, and some of them

12:57PM 24  were here but they left.  On the issue on the insurance

12:57PM 25  indemnity, I heard a week being thrown around.  Some of them are

12:57PM 1  new to the case.  Is there any concession you can make for those

12:57PM 2  guys, that they don't have to do everything a week from today?

12:57PM 3           THE COURT:  Yes.  If they are new guys, let's give

12:57PM 4  them -- what do you think they'd want, three weeks?

12:57PM 5           MR. TSEKERIDES:  Three weeks would be good, I think.

12:57PM 6  Then, if there is a problem, they could come to you.

12:57PM 7           THE COURT:  Exactly.  I think that's fine.  If they have

12:57PM 8  not been in but for a short time, that's fine.

12:58PM 9           MR. TSEKERIDES:  Thank you.

12:58PM 10          THE COURT:  Does anybody have anything else?

12:58PM 11          MR. GONZALEZ:  Good afternoon, Your Honor,

12:58PM 12  Ervin Gonzalez for the PSC.

12:58PM 13          Your Honor, we heard for the first time today that

12:58PM 14  Hague issues on depositions of foreign individuals --

12:58PM 15          THE COURT:  Possible Hague issues.

12:58PM 16          MR. GONZALEZ:  -- may be an issue; but, as we know, that

12:58PM 17  would create a tremendous amount of delay.  So if that issue is

12:58PM 18  going to be teed up, it should be teed up quickly.

12:58PM 19          We would like to advise the Court that the

12:58PM 20  depositions should be designated as Federal Rules of Civil

12:58PM 21  Procedure depositions; whereas, we would not have to worry as

12:58PM 22  much about Hague issues if individuals were being presented by

12:58PM 23  the responsible parties as representatives, 30(b)(6) issues, or

12:58PM 24  identified parties solely for purposes of the litigation as to

12:58PM 25  defined parties.

12:58PM 1          Obviously, it's not ripe for today, but, given the

12:58PM 2 deadlines and the timelines that we have, if it's going to be

12:58PM 3 raised, we would like it teed up sooner rather than later.

12:58PM 4          THE COURT:  I agree with that.

12:59PM 5          MR. GONZALEZ:  Thank you, Your Honor.

12:59PM 6          THE COURT:  Thank you.

12:59PM 7          MR. LANGAN:  Your Honor, if Mr. Gonzales thinks this

12:59PM 8 issue is being raised for the first time, then he hasn't read

12:59PM 9 Pretrial Order 17.  That is just absolutely not true.

12:59PM 10          THE COURT:  Andy, could you get a feel for us on whether

12:59PM 11 these witnesses intend to invoke that and just give us the

12:59PM 12 heads-up, please?

12:59PM 13          MR. LANGAN:  It will be a nonparty individual counsel

12:59PM 14 type issue, but, yes.

12:59PM 15          THE COURT:  Exactly.

12:59PM 16          MR. GONZALEZ:  To clarify, Your Honor, I mean, no

12:59PM 17 individual person has said, I am here to raise Hague, yet.  We

12:59PM 18 haven't heard it yet.  If I wasn't clear, that was my intent.

12:59PM 19          THE COURT:  No, I understand that.

12:59PM 20          MR. GONZALEZ:  Thank you, Your Honor.

12:59PM 21          THE COURT:  All right.  Anything else?  Thank you very

12:59PM 22 much.  Everybody have a good afternoon and week.

23          (WHEREUPON, at 12:59 a.m.  the proceedings were

24 concluded.)

25                    *    *    *

1                          REPORTER'S CERTIFICATE

2

3        I, Cathy Pepper, Certified Realtime Reporter, Registered

4    Merit Reporter, Registered Professional Reporter, Certified Court

5    Reporter of the State of Louisiana, Official Court Reporter for

6    the United States District Court, Eastern District of Louisiana,

7    do hereby certify that the foregoing is a true and correct

8    transcript, to the best of my ability and understanding, from the

9    record of the proceedings in the above-entitled and numbered

10   matter.

11

12

13                            *s/Cathy Pepper*

14                            Cathy Pepper, CRR, RMR, CCR

15                            Official Court Reporter

16                            United States District Court

17

18

19

20

21

22

23

24

25