# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

300 North LaSalle Street
Chicago, Illinois 60654

J. Andrew Langan, P.C.
To Call Writer Directly:
(312) 862-2064
andrew.langan@kirkland.com

(312) 862-2000

www.kirkland.com

Facsimile:
(312) 862-2200

March 9, 2011

The Honorable Sally Shushan
United States Magistrate Judge
500 Poydras Street, Room B345
Room B345
New Orleans, Louisiana 70130

Re:   *In re Oil Spill by the Oil Rig "Deepwater Horizon," MDL No. 2179*

Dear Magistrate Judge Shushan,

I write in response to Section II of the Plaintiffs' Steering Committee's letter of March 2, 2011 regarding PTO #14, paragraph 2.

PTO #14 relieves the parties from the obligation to produce privilege logs that list post-April 20, 2010 communications with counsel. The Order plainly applies to communications with any "counsel." It makes no distinction between counsel who happen to be employees of BP and counsel who work for law firms retained by BP. The PSC offers no legitimate basis for revisiting this issue or changing the terms of the Order.

The PSC's sole concern appears to be that BP is using PTO #14 to avoid scrutiny of documents improperly withheld as privileged. There is no evidence to support this assertion. BP has produced hundreds, if not thousands, of post-incident documents that reflect communications with counsel that BP is not asserting are privileged. Moreover, any hypothetical fear of abuse by BP of PTO #14 is far outweighed by the very real burden that altering it would place on BP and the pace of document review and production going forward – not to mention the work that would have to be done to supplement the six privilege logs BP has already produced in reliance on the terms of PTO #14 in the almost three months since the order issued (during which plaintiffs raised no objection to its terms).

As discussed below, the PSC's proposal to amend PTO #14 is unwarranted, untimely, prejudicial to BP, and would dramatically slow the production of documents on a going-forward basis. BP respectfully requests that it be rejected.

Hong Kong     London     Los Angeles     Munich     New York     Palo Alto     San Francisco     Shanghai     Washington, D.C.

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
March 9, 2011
Page 2

I.   **There Is No Basis for Excluding Communications with Company Counsel from Paragraph 2 of PTO #14.**

The PSC does not challenge Judge Barbier's decision to relieve parties of the obligation to log privileged communications with counsel that occurred after April 20, 2010. Instead, the PSC seeks to impose a logging obligation with respect to company counsel. There is no justification for any such change.

The law does not distinguish between company lawyers and outside counsel. In *Upjohn Co. v. U.S.*, for instance, the Supreme Court addressed the issue of attorney-client privilege in the corporate context, and whether the scope of privilege afforded to communications involving in-house counsel should be applied more narrowly. 449 U.S. 383 (1981). In determining that it should not, the Supreme Court stressed the importance of the attorney-client privilege in the corporate context, and highlighted that a narrow application of the privilege in that context "not only makes it difficult for corporate attorneys to formulate sound advice when their client is faced with a specific legal problem but also threatens to limit the valuable efforts of corporate counsel to ensure their client's compliance with the law." *Id.* at 392. Subsequent to *Upjohn*, courts in this Circuit have also applied the attorney-client privilege, "whether an attorney works at a law firm or works as in-house counsel for a corporation." *See Long v. Howmedica Osteonics Corp.*, No. 07-3005, 2007 WL 4532215, at *4 (E.D. La. Dec. 19, 2007) (citing *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984) (status as an in-house attorney "does not dilute the privilege.")). The case law does not distinguish between in-house and outside counsel for privilege purposes; neither should PTO #14.

The PSC correctly notes that Paragraph 2 of PTO #14 was intended to eliminate the time and expense of identifying and listing voluminous and privileged communications.[1] Indeed, almost immediately after April 20, 2010, BP had an urgent need for comprehensive legal advice and counsel. This advice and counsel was provided by both BP's company lawyers and those who worked at the law firms BP retained. Nothing has changed since PTO #14 was entered that would support a requirement that post-incident privileged communications be logged.

The PSC wrongly suggests that under PTO #14, "potentially critical ***non-privileged*** communications regarding the investigation . . .may be completely excluded from any type of production or privilege analysis." PSC March 2, 2011 Ltr., 3 (Emphasis added). Not so. Whether post-incident communications are privileged depends on whether the communications

---

[1]   The PSC's letter incorrectly states that the provision was intended to apply to "post-litigation" communications. PTO #14, paragraph 2, plainly refers to "post-April 20, 2010 communications."

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
March 9, 2011
Page 3

related to legal advice, not whether the lawyer was an employee of BP or a law firm. BP has engaged -- and continues to do so – in a rigorous review of a massive quantity of documents for production to the PSC. Just as with external counsel communications, BP in-house counsel's communications are reviewed for privilege and, if determined to be non-privileged, they are produced. In fact, BP has already produced hundreds of non-privileged documents that happen to include the name of an attorney. PTO #14 should not now be amended to require BP to log post-incident *privileged* documents that include the name of one or more of BP's in-house attorneys.

## II.     The PSC's Delay In Raising This Issue Has Prejudiced BP.

The Court entered PTO #14 on November 3, 2010 after receiving competing proposed orders on this subject. In the negotiations leading to that Order, the PSC requested that communications involving all counsel be logged. But BP disagreed, requesting instead that no post-incident communications involving counsel go on the privilege log. Judge Barbier agreed with BP. If the PSC objected to the terms of this order, the time to do so was in November, not now. Since the entry of PTO #14, BP has produced six privilege logs.[2] In reliance on PTO #14, BP has not logged post-incident privileged communications involving either outside counsel or company counsel. As described below, if PTO #14 is now amended as requested by the PSC, the burden to BP to re-generate the first six privilege logs, in addition to the burden with respect to future logs, would be substantial.

## III.    The PSC's Position Would Result In A Substantial Waste Of Resources And Would Significantly Delay The Smooth Production Of Documents.

The practical implications of the PSC's proposed amendment to PTO #14 weigh heavily against it. The PSC's position would create even more (and unnecessary) work for BP during an already demanding and burdensome fact discovery period. Since the entry of PTO # 14, dozens of BP attorneys have worked thousands of hours to review and analyze tens of thousands of documents for possible privilege.

Currently, BP's attorneys and vendors use every one of the allotted twenty business days to process, review and code the necessary documents in order to create each privilege log. But under the current protocol, this team has not been devoting time to logging post-incident privileged communications involving company lawyers. Because the quantity of post-incident privileged communications involving BP's company lawyers is substantial, adding a requirement

---

[2]    BP Privilege Log No. 7 is due March 10.

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
March 9, 2011
Page 4


that these communications also be logged would slow the process even more.  If the PSC's position is adopted, there will undoubtedly be a several-fold increase in the number of privileged communications that will be included in the logs.  And adding more entries to the log is not just a ministerial act.  Every entry and every document on these logs are now reviewed by a team of senior attorneys to insure the appropriateness of the privilege determination.  The inevitable result of multiplying the number of entries and documents these senior attorneys would be forced to review would be to decelerate the pace significantly.

The volume of additional log entries the PSC has requested is substantial due to the high level of attorney involvement post-incident.  After the incident, attorneys played a significant role in providing legal advice to BP, including with respect to the myriad issues relating to anticipated litigation.  The attorneys involved in this collaborative effort included company lawyers and outside counsel.  Often the team of lawyers worked seamlessly, so much so that there are a significant number of communications involving both company and outside counsel.  If BP were now required to produce a log of all post-incident privileged communications involving company lawyers, then much of Paragraph 2 of PTO #14 would be eviscerated.  After all, many of the communications with company counsel also include outside counsel.  The point of Paragraph 2 of PTO #14 was to avoid the need to log precisely these types of communications.

Your Honor's time and attention to this mater is appreciated.


Respectfully appreciated,

/s/ J. Andrew Langan, P.C.


cc:    James Roy
       Steve Herman
       Mike Underhill
       Corey Maze
       Defense Steering Committee