

# GODWIN RONQUILLO
A Professional Corporation

*Attorneys and Counselors*

Renaissance Tower
1201 Elm Street, Suite 1700
Dallas, Texas 75270-2041
214.939.4400
800.662.8393
214.760.7332  Fax

GodwinRonquillo.com

DONALD E. GODWIN - SHAREHOLDER
BOARD CERTIFIED - CIVIL TRIAL LAW -
TEXAS BOARD OF LEGAL SPECIALIZATION
DIRECT DIAL:   214.939.4412
DIRECT FAX:    214.939.4803
dgodwin@godwinronquillo.com

March 9, 2011

**VIA E-MAIL**

The Honorable Judge Sally Shushan
U.S. District Court
Eastern District of Louisiana
500 Poydras Street, Room C-151
New Orleans, LA 70130

      Re:    *In re: Oil Spill by the Oil Rig "Deepwater Horizon,"* MDL No. 2179, In the Eastern District of Louisiana

Your Honor:

    This letter is Halliburton Energy Services, Inc.'s ("HESI") response to a March 2, 2011, letter from counsel for the Plaintiffs' Steering Committee ("PSC"), questioning the intent and applicability of Paragraph 2 of Pretrial Order No. 14 ("PTO No. 14"). *See* Corr. from Stephen J. Herman and James P. Roy, dated March 2, 2011; Doc. No. 655, (the "PSC's letter"). HESI requests that this Court hold counsel to their prior agreements on privilege log production issues and allow all parties to continue pretrial discovery in the agreed-upon manner.

    As this Court is aware, PTO No. 14 governs the treatment of privileged and work product materials. PTO No. 14 was issued November 3, 2010, and was based on the negotiated agreement of all counsel. The language of this agreed order is clear and unambiguous. PTO No. 14, Paragraph 1 requires that any document falling within the scope of any request for production or subpoena that is withheld on the basis of a claim of attorney-client privilege, work product, or any other claim of privilege is to be identified in a privilege log. *See* Doc. No. 655 at ¶1. However, Paragraph 2 provides a critical and reasonable exception to the obligations contained in Paragraph 1:

> Privilege log identification is not required for post-April 20, 2010 communications exchanged between the Producing Party and their counsel or among counsel for the Producing Party. In addition, neither communications between or among counsel for Plaintiffs nor communications between or among counsel for Defendants are required to be identified on the Producing Party's privilege log.

D 1633952 v2-24010/0002 PLEADINGS

March 9, 2011
Page 2

*Id.* at ¶2. Thus, identification on a privilege log is not required for any communications by and between a producing party and their counsel or among counsel for a Producing Party. No distinction is made between outside and in-house counsel. Given the size and scope of this litigation, Paragraph 2 has lessened the considerable burden of identifying attorney-client communications, which garner the highest protection under the Federal Rules of Civil Procedure. Plaintiffs and Defendants alike have benefitted from Paragraph 2's exception to the general obligation relative to the provision of privilege logs.

Despite the agreement of the parties, and the unambiguous order, the PSC's letter questions the intent and applicability of Paragraph 2. While the PSC agrees "that Paragraph 2 of PTO #14 was intended to eliminate the time and expense of identifying and listing voluminous and clearly privileged post-litigation[1] communications with outside counsel on privilege logs" it asks this Court to provide "guidance" relative to its application while adding the modifier "outside" to its description of the PTO's intent. In addition, while the PSC focused specifically upon certain communications between BP and its employees, the PSC expands its query to "other Defendants," effectively seeking a complete reversal of Paragraph 2's exception to the privilege log obligations.

The PSC's request will result in a considerable burden upon all parties involved — a burden which substantially outweighs any *de minimus* information the PSC allegedly may obtain from a log identifying communications otherwise protected from disclosure.

The April 20, 2010, incident and the resulting oil spill was unprecedented. All may assume that any communications any party had with counsel, whether outside or in-house, involved legal advice as the potential for legal liability was and is massive and could arise from any front. The logic behind Paragraph 2 is sound.

The attorney-client privilege applies to corporations. *See Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981); *see also In re Vioxx Prods. Liability Litig.*, 501 F. Supp. 2d 789, 796 (E.D. La. 2007) (Hon. Eldon E. Fallon, presiding). Indeed, the attorney-client privilege "protects communications between those employees and corporate legal counsel on matters within the scope of their corporate responsibilities, as well as communications between corporate employees in which prior advice received is being transmitted to those who have a need to know in the scope of their corporate responsibilities." *In re Vioxx*, 501 F. Supp. 2d at 796 (citing Paul R. Rice, 1 ATTORNEY-CLIENT PRIVILEGE IN THE UNITED STATES, §§4:11-14 (Thomson West 2d ed. 1999)). In the context of corporate defendants, the privilege cannot be used to shield every communication from disclosure as legal advice must be the primary purpose of the communication. *See In re Vioxx*, 501 F. Supp. 2d at 796-97, 798. Thus, the test for the application of the attorney-client privilege to communications with legal counsel "is whether counsel was participating in the communications primarily for the

---

[1] Clearly, the PSC did not mean "post-litigation communications" but rather post-incident communications.

D 1633952 v2-24010/0002 PLEADINGS

March 9, 2011
Page 3

purpose of rendering legal advice or assistance." *Id.* at 798. But applying these principles to this extraordinary incident and litigation arising out of the April 20 incident, there is little doubt that all communication by and among counsel, including in-house counsel, and HESI is rife with legal advice. Thus, there is no need to add additional pretrial burden by way of the empty exercise of producing massive privilege logs.

In addition, the PSC raises this issue too late. The parties have been operating under PTO No. 14 for several months. Counsel negotiated and agreed to the terms of PTO No. 14 in early November, and have since worked, cooperatively, in the ambitious goals of completing fact discovery in this action by the end of this summer. Millions of documents have been produced by parties in this litigation and over one hundred depositions have been scheduled in order to properly prepare the liability issues for trial in February 2012. Given the actions of the PSC in operating under the terms of PTO No. 14 since the inception of discovery in this matter, it should be estopped from changing course mid-way through the discovery process. Throwing such an enormous amount of additional and unnecessary workload onto the parties at this stage puts an additional strain on the February 2012 trial date.

Judicial estoppel may be invoked to prevent a party from taking inconsistent positions in the same litigation. *Superior Crewboats, Inc. v. Primary P & I Underwriters*, 374 F.3d 330, 334 (5th Cir. 2004). The doctrine is not intended to stop all inconsistencies; instead, "[t]he purpose of the doctrine is to protect the integrity of the judicial process by preventing parties from playing fast and loose with the courts to suit the exigencies of self interest." *Superior Crewboats*, 374 F.3d at 334 (citing *Browning Mfg. v. Mims*, 179 F.3d 197, 205 (5th Cir. 1999)). "Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L. Ed. 2d 968 (2001); *accord Mangaroo v. Nelson*, 864 F.2d 1202, 1205-06 (5th Cir. 1989) (holding parties to their in-court agreement under estoppel principles).

Similarly, the integrity of the discovery process should be favored and protected as it clearly outweighs any *de minimus* benefit the PSC may obtain from the identification of the thousands of communications by and between counsel and the parties in this suit. Juxtaposing PTO No. 14 with the PSC's most recent correspondence on the issue, the inconsistencies are glaringly apparent. The parties should not have to undertake an overwhelming burden because the PSC has changed its mind and now regrets its prior agreement.

Moreover, should this Court now adopt the PSC's position, and require counsel for all parties to go back and identify and document each of the communications by and between each party and its in-house counsel and between outside counsel and in-house counsel, since April 20, 2010, an incredible burden would be imposed upon HESI and other corporate defendants. Based upon a rough estimate, there are in excess of twenty-five thousand emails alone between HESI's

March 9, 2011
Page 4

in-house and outside counsel concerning privileged information relative to this litigation since April 20, 2010.

Counsel have also operated with the understanding that under PTO No. 14, communications with its client regarding the subject litigation would be privileged and such communications would need not be disclosed or identified. To now change course, effectively changing the operating procedure for the remaining five months of discovery will impose an incredible burden upon HESI and other defendants alike.

Should this Court adopt the PSC's new position, HESI and the other parties would have to go back and review each of the thousands of communications clearly protected from disclosure and identify such communications on a privilege log. This task would take hundreds of hours and result in a considerable, unnecessary expense, a difficult if not impossible task in light of the ambitious discovery schedule in the coming months. Any *de minimus* benefit to the PSC is outweighed by the substantial expense and detriment to HESI.

Rewriting PTO No. 14 is unnecessary. The plain language, spirit, and intent of PTO No. 14 can and should be maintained.

Thank you for your time and consideration of this most important matter.

Respectfully submitted,

Donald E. Godwin

cc: Defense Liaison Counsel [Via Email]
Mike Underhill, Esq. [Via Email]
Hon. Attorney General Luther Strange [Via Email]
William W. Taylor, III, Esq. [Via Email]
Amit Mehta, Esq. [Via Email]
James Parker Roy, Esq. [Via Email]
Stephen J. Herman, Esq. [Via Email]
Plaintiffs' Steering Committee [Via Email]