# EXHIBIT "A"

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | ' ' ' ' ' | MDL NO. 2179<br><br>SECTION: J |
| *This document relates to: 2:10-cv-4427*<br>*Kritzer, et al v. Transocean, et al* | ' ' | JUDGE BARBIER<br>MAG. JUDGE SHUSHAN |

## Plaintiffs' Amended Complaint

Subject to Plaintiffs' Motions to Remand, Plaintiffs Joshua Kritzer; Nick Watson; Bill Johnson; Heith Lambert; Coby Richard; Dustin Johnson; Brett Guillory; Stenson Roarke; Denise Arnold, mother of Shane Roshto; Jacquelyn Duncan; Cathleena Willis; and Rhonda Burkeen, individually, and as personal representative for the Estate of Aaron Dale Burkeen and on behalf of all heirs (including Aryn and Timothy Burkeen (minor children)), and as personal representative for her minor son, Timothy Burkeen, Frank Ireland, and Darren Costello (collectively as "Plaintiffs") each and all complain of Defendants Transocean, Ltd. ("Transocean"), Transocean Offshore Deepwater Drilling Inc. ("Transocean"), Transocean Deepwater, Inc. ("Transocean"), BP Products North America Inc. ("BP"), BP Exploration and Production Inc. ("BP"), BP, PLLC ("BP"), BP Corporation North America, Inc. ("BP"), Halliburton Energy Services, Inc. ("Halliburton"), and Cameron International Corporation d/b/a Cameron Systems Corporation ("Cameron") (all defendants collectively as "Defendants"), and would respectfully show the Court that:

## I.

## Jurisdiction and Venue

1.  The Court lacks subject-matter jurisdiction and/or this case was improperly removed to federal court and should be remanded. The purported basis for subject-matter jurisdiction is 28 U.S.C. § 1331 (federal question) because OCSLA[1] is alleged to apply.

2.  Venue is laid in this district pursuant to 28 U.S.C. § 1407 for coordinated pre-trial proceedings. However, Plaintiffs deny that venue is proper here for trial.

## II.

## Parties

3.  Plaintiff Joshua Kritzer is a resident of Louisiana. Mr. Kritzer worked for Offshore Cleaning Systems. Mr. Kritzer was blown over 30 feet in the hallway and the ceiling collapsed on him causing him to blackout. He has suffered a closed head injury, other physical injuries, and post traumatic distress. His claims are maintained under the Jones Act (46 U.S.C. §§ 30104, *et seq.*) and/or the general maritime law of the United States.

4.  Plaintiff Bill Johnson is a resident of Louisiana. Mr. Johnson worked for Transocean as the Deck Pusher. Bill Johnson has worked offshore nearly 35 years. He was Burkeen's direct supervisor on the day in question. Once the power went out, an explosion rocked Johnson. He suffered smoke inhalation and other physical injuries as he rushed to get his crew to the life rafts. Sadly, Burkeen was one of Johnson's best friends and Burkeen was the only man lost from Johnson's crew. Once they pushed off, the company refused to take

---

[1] Plaintiffs (other than Roshto) deny that OCSLA applies. However, if OCSLA does somehow apply, then Mississippi is the "adjacent" state and Mississippi law applies by virtue of OCSLA. Alternatively, Louisiana law would apply.

Johnson and others in for help. Instead, Transocean and BP made the decision to keep these men there for over ten hours alongside the blazing rig as the men stared at the rig knowing their friends were on it. His claims are maintained under the Jones Act (46 U.S.C. §§ 30104, *et seq.*) and/or the general maritime law of the United States.

5.  Plaintiff Rhonda Burkeen is a resident of Mississippi. At the time of the explosion, Rhonda Burkeen was married to Aaron Dale Burkeen. Aaron Dale Burkeen worked for Transocean as a crane operator. He was not even supposed to be on tower when the explosion occurred. Burkeen was relieving another crane operator for dinner when the explosion occurred. He tried to cradle the crane to prevent injury to others and escape down the stairs. The second explosion is believed to have caused his death. He was alive and conscious for a great length of time and suffered immense pain, suffering, mental anguish, and emotional distress. Rhonda Burkeen and Aaron Dale Burkeen have a minor child -- Timothy Burkeen. Additionally, Rhonda Burkeen brings this lawsuit as personal representative on behalf of Aryn Burkeen, who is a minor child of Dale Burkeen from a previous marriage. Mrs. Burkeen has been appointed as administrator/executor of the estate of Dale Burkeen by the proper probate/chancery court in Mississippi. These claims are maintained under the Jones Act (46 U.S.C. §§ 30104, *et seq.*) and/or the general maritime law of the United States.

6.  Nick Watson is a resident of Louisiana. Mr. Watson worked for Transocean for three years as a roustabout. He worked with Burkeen on the day of the incident. He was on deck when suddenly the mud came out of the hole at alarming speeds. The power went out and then the explosions occurred. Watson inhaled significant smoke, suffered physical

3

injuries, and suffers from post traumatic stress from watching many of his friends get severely injured and die as a result of the negligence of Defendants. His claims are maintained under the Jones Act (46 U.S.C. §§ 30104, *et seq.*) and/or the general maritime law of the United States.

7. Heith Lambert is a resident of Louisiana. Mr. Lambert worked for Offshore Cleaning Systems and suffered smoke inhalations, hearing loss, physical injury, and suffers from post traumatic stress from watching many of his coworkers get severely injured and die as a result of the negligence of Defendants. His claims are maintained under the Jones Act (46 U.S.C. §§ 30104, *et seq.*) and/or the general maritime law of the United States.

8. Coby Richard is a resident of Louisiana. Mr. Richard worked for Offshore Cleaning Systems and uffered smoke inhalations, hearing loss, physical injury, and suffers from post traumatic stress from watching many of his coworkers get severely injured and die as a result of the negligence of Defendants. His claims are maintained under the Jones Act (46 U.S.C. §§ 30104, *et seq.*) and/or the general maritime law of the United States.

9. Brett Guillory is a resident of Louisiana. Mr. Guillory a back injury, neck injury, shoulder injury, suffered smoke inhalations, hearing loss, other physical injury, and suffers from post traumatic stress from the events that unfolded. The ceiling collapsed on him in his room causing him severe injury. His claims are maintained under the Jones Act (46 U.S.C. §§ 30104, *et seq.*) and/or the general maritime law of the United States.

10. Dustin Johnson is a resident of Louisiana. Mr. Johnson worked for Transocean for as a roustabout. He was on tower at the time of the incident. He was knocked to the ground multiple times and suffered physical injuries to his back, shoulder,

and neck. Johnson inhaled significant smoke, suffered physical injuries, and suffers from post traumatic stress from watching many of his friends get severely injured and die as a result of the negligence of Defendants. His claims are maintained under the Jones Act (46 U.S.C. §§ 30104, *et seq.*) and/or the general maritime law of the United States.

      11.    Stenson Roarke is a resident of Mississippi. Mr. Roarke worked for Transocean. Roarke inhaled significant smoke, suffered physical injuries, and suffers from post traumatic stress from watching many of his friends get severely injured and die as a result of the negligence of Defendants. His claims are maintained under the Jones Act (46 U.S.C. §§ 30104, *et seq.*) and/or the general maritime law of the United States.

      12.    Denise Arnold is mother of Shane Roshto. She tragically lost her son in this accident. Her son was employed by Transocean. She was financially dependent on her son current and in to the future. He contributed, and would continue contributing, to her support. Her claim against Transocean is maintained under the Jones Act (46 U.S.C. §§ 30104, *et seq.*) and/or the general maritime law of the United States. BP, Cameron, and Halliburton have all judicially admitted that the claims against them brought by employees of Transocean are governed by OCSLA. Under OCSLA, the adjacent state is Mississippi and Mississippi law (including the Mississippi Wrongful Death Statute, MISS. CODE ANN. § 11-7-13) would apply to the claims brought against them by Denise Roshto. Under Mississippi law, Denise Roshto, the mother of Shane Roshto, is a named wrongful death beneficiary and/or "listed relative" and an "interested party." As such, she is allowed to maintain a wrongful death claim against BP, Halliburton, and Cameron separately and independently from any other wrongful death beneficiary and/or personal representative. *Long v. McKinney*, 897 So.2d

5

160 (Miss. 2004).[2]

13. Jacquelyn Duncan is a resident of Mississippi. Upon hearing the news of the explosion, she rushed to the Transocean Offices to check on the status of her brother, Wyatt Kemp, who was working aboard the Deepwater Horizon. Despite knowing her brother was already dead, Transocean told her that her brother was alive and well. Ms. Duncan's relief that her brother was alive and safe was short lived. She later learned that Mr. Kemp had died in the explosion and that Transocean had lied about his well-being. She has suffered severe emotional distress ever since. Her claim is maintained under Texas law and/or Mississippi law.

14. Cathleena Willis is a resident of Harris County, Texas. Ms. Willis was working aboard the Deepwater Horizon on the date in question. Ms. Willis now suffers from severe ankle pain, back pain, and hearing loss as a result of the explosion. Ms. Willis' claims are maintained against all Defendants except Halliburton. Her claims are maintained under the general maritime law of the United States.

15. Intervenor Frank Ireland is a resident of Clear Lake, Texas. Mr. Ireland was working aboard the Deepwater Horizon on the date in question. After the explosion, Mr. Ireland attempted to evacuate the vessel. However, the electricity was out and Mr. Ireland fell as the vessel was exploding around him. Mr. Ireland suffered severe injury to his leg, left shoulder, and other parts of his body. Additionally, Mr. Ireland now suffers the effects of having inhaled the smoke that ensued from the explosion. Moreover, Mr. Ireland suffered substantial emotional injuries as the result of seeing his friends and coworkers burned alive.

---

[2] This result is not preempted by DOHSA's "personal representative" requirement. *Rodrigue v. Aetna Casualty & Surety Co.*, 395 U.S. 352, 89 S.Ct 1835 (1965).

His claims are maintained under the general maritime law.

16. Intervenor Darren Costello is a resident of Florida. Like Mr. Ireland, Mr. Costello was working aboard the Deepwater Horizon the day it exploded. When the blast occurred, Mr. Costello thought he would be killed. When he gathered his wits, he attempted to evacuate the vessel. However, a second blast blew him though a fire and up against a wall where he lost consciousness. When he came to, Mr. Costello, ran into the crew quarters and began helping other workers who had been injured evacuate. Mr. Costello even carried out a coworker on a stretcher. Before evacuating the vessel himself, Mr. Costello witnessed the last moments of Plaintiff, Aaron Dale Burkeen's life. That image was burned into his memory and he lives with it on a daily basis. As a result of the explosion, Mr. Costello has suffered severe injury to body as a result of being thrown into the wall, now suffers as a result of being knocked unconscious, and suffers emotionally from having seen his friends and coworkers being burned alive. His claims are maintained under the general maritime law.

17. Defendant Transocean, Ltd. is a foreign entity with its principal place of business in Texas.

18. Defendant Transocean Offshore Deepwater Drilling Inc. is a foreign entity with its principal place of business in Texas.

19. Defendant Transocean Deepwater, Inc. is a foreign entity with its principal place of business in Texas.

20. Defendant BP Products North America Inc. is a foreign entity with its principal place of business in Texas.

21. Defendant BP Exploration and Production Inc. is a foreign entity with its principal place of business in Texas.

22. Defendant BP, LLC is a foreign entity with its principal place of business in Texas.

23. Defendant BP Corporation North America, Inc. is a foreign entity with its principal place of business in Texas.

24. Defendant Halliburton Energy Services, Inc. is a foreign entity with its principal place of business in Texas.

25. Defendant Cameron International Corporation d/b/a Cameron Systems Corporation is a foreign corporation with its principal place of business in Texas.

### III.

### Nature of the Action

26. Plaintiffs suffered severe injuries and had family members killed as a result of the senseless DEEPWATER HORIZON explosion on April 20, 2010. At the time, Plaintiffs were seamen, borrowed or otherwise, employed by Defendants. While the DEEPWATER HORIZON was deployed on navigable waters, and while Plaintiffs were each contributing to and aiding such vessel to accomplish its mission, Plaintiffs were critically injured as a result of the explosion. Plaintiffs suffered smoke inhalation, physical injuries, hearing loss and other damages. Tragically, Aaron Dale Burkeen and Shane Roshto lost their lives in the explosion. Aside from the human losses, the explosion has caused what is expected to be the worst man-made environmental disaster in U.S. history – far eclipsing the EXXON VALDEZ oil spill in 1989.

27. The DEEPWATER HORIZON was a floating semi-submersible drilling rig owned by Transocean. It was built in 2001, utilized dynamic positioning technology, and was designed to move from location to location as necessary. BP leased the drilling rig from Transcocean for $500,000 per day. The total lease contract was worth more than $544 million. Prior to the April 20th explosion, the DEEPWATER HORIZON had suffered other fires, collisions, and oil spills.

28. As a result of the tragedy, U.S. Attorney General Eric Holder is considering bringing criminal charges against BP. This would not be the first time BP has faced criminal charges in relation to its activities in and around the Gulf of Mexico. In 2007, BP pled guilty to felony charges arising out of the March 2005 explosion at its Texas City refinery which killed 15 workers and injured hundreds more. After that explosion, BP was fined more than $21 million by OSHA – the largest penalty ever issued at that time. BP was also required to fix the deficiencies which led to the Texas City disaster. However, BP refused to comply with its obligations and failed to make the required safety upgrades. As a result, in 2009, BP was fined an additional $87 million by OSHA – by far the largest fine in OSHA history. BP's reckless safety culture is systemic.

29. The DEEPWATER HORIZON tragedy was caused by, among other things, a failure of the rig's well control system. Cameron supplied much of the rig's inadequate, defective blow out prevention equipment. For instance, Cameron designed, manufactured, and supplied the rig's blowout preventer ("BOP") and component parts for the BOP. The BOP was unreasonably dangerous when it left Cameron's control. Cameron expressly represented, in writing and orally, that the BOP was effective for preventing blowouts.

Cameron anticipated, and indeed was informed by Transocean, that the BOP would be used in deepwater conditions. These warranties were breached because the BOP was not effective in preventing blowouts (and did not prevent the blowout on April 20, 2010). In short, the BOP failed to operate on April 20, 2010 and was not fit for its ordinary purpose. This occurred because, in designing, constructing, composing, and manufacturing the BOP (and its component parts), Cameron relied on calculations to determine the needed strength of its component parts in deepwater conditions, as opposed to actually testing the components in deepwater conditions. The calculations were improper and resulted in a BOP that would not be effective in deepwater conditions like those that existed for the incident in question. This is because Cameron used shear forces lower than required or desired for the BOP in question. Additionally, the rubber gaskets or "packers" on the BOP were too small and too weak to prevent the blowout. This made the BOP unreasonably dangerous. This defect existed when the BOP left Cameron's control. These defects also resulted in a nonconformity to express warranties given by Cameron for the BOP in question. Moreover, this made the BOP unreasonably dangerous in construction, composition, and design. Cameron failed to warn anyone that the BOP would likely not prevent blowouts in deepwater even though it knew this to be the case. Cameron also failed to warn of the defectively designed and/or manufactured packers. These defects existed when the BOP left Cameron's control. The defects caused a danger to everyone on the rig who depended and relied on the BOP to prevent blowouts. These defects was not known by anyone other than Cameron and no one else had any reason to know about the defects.

30.     Halliburton was in charge of cementing the well, but failed to safely do its job. Halliburton knew or, based on its experience in the industry, should have known that poor cementing significantly increases the risk of a blowout. Halliburton's cementing job should have filled the annulus between the casing and the well bore and sealed off the hydrocarbon-filled formations. It also should have plugged the bottom of the casing pipe to prevent an influx. However, the cement slurry Halliburton designed and created on this job failed to perform these function. Halliburton's light nitrified foam cement slurry failed in its function and allowed hydrocarbons to enter the wellbore annulus. The cement design and testing was improper and fell far below the standard of care. In fact, the slurry failed multiple stability tests prior to the blowout. Halliburton ignored these failed tests. Halliburton's account representative/engineer on the rig knew about these problems and complained that there was a "high probability" of explosive gas flowing through the cement unless changes were made. Further, the Macondo well was located in brittle, variable rock formations laced with volatile high temperature, high pressure, and gaseous hydrocarbon reserves. Given this environment, Halliburton's improper cement mixture was a recipe for disaster. This conduct was willful, wanton, reckless and grossly negligent. Halliburton was aware of this conduct, authorized it, and ratified it. Moreover, BP complained that Halliburton's account representative/engineer was not competent to perform his cement-related job responsibilities. Halliburton had a duty to train and supervise him, but failed. Moreover, Halliburton was charged with real time gas monitoring, but failed to notice the dangerous pressure readings (or noticed, but failed to inform anyone or take any action). Had Halliburton safely performed this function, the

factors leading to the blowout would have been detected in time to take proper preventative actions.

31. Halliburton's faulty cementing work has been linked to other major offshore disasters, including nearly half of all Gulf of Mexico blowouts since 1992. Halliburton's cementing work also caused a massive blowout in August 2009 on another rig off the coast of Australia.

32. Defendants are negligent, negligent per se, grossly negligent, and reckless for the following reasons:

  a. failure to properly supervise their crew;

  b. failure to properly train their employees;

  c. failure to provide adequate safety equipment;

  d. failure to provide adequate medical treatment;

  e. operating the vessel with an inadequate crew;

  f. failure to maintain the vessel;

  g. failure to conduct a proper search and rescue mission;

  h. vicariously liable for their employees' and agents' negligence, gross negligence, and recklessness;

  i. violating applicable Coast Guard, MMS, and/or OSHA regulations;

  j. failure to provide plaintiff with a safe place to work, and requiring plaintiff to work in unsafe conditions;

  k. failure to provide sufficient personnel to perform operations aboard the vessel;

  l. failure to exercise due care and caution;

  m. failure to avoid this accident; and

      n.      other acts deemed negligent.

33.     At all relevant times, the DEEPWATER HORIZON was unseaworthy.

34.     Plaintiffs further adopt and incorporate the allegations made in Case 2:10-md-02179; Doc. # 879 at ¶¶ 27-101; 122-132; 145-149; 170-172; 177- 179; 225-439; 563-582 and Doc. # 1320 at ¶¶ XLII; XLIV; XLVI.

35.     As a result of said occurrences, Plaintiffs collectively sustained the following damages:

      a.      Pre-death physical pain and suffering;

      b.      Pre-death mental pain, suffering, and anguish;

      c.      Past, present, and future physical pain and suffering;

      d.      Past, present, and future mental pain, suffering, and anguish;

      e.      Past, present, and future medical expenses;

      f.      Past lost wages;

      g.      Loss of future earning capacity;

      h.      Loss of fringe benefits;

      i.      Loss of services and support;

      j.      Loss of nurture, guidance, care, and instruction;

      k.      Loss of funeral expenses;

      l.      Loss of inheritance;

      m.      Disfigurement, disability, and/or death;

      n.      Loss of enjoyment of life;

      o.      All survival damages recognized under the general maritime law; and

   p. All other damages recoverable under law.

 36. Plaintiffs are also entitled to punitive damages because the aforementioned actions of Defendants were grossly negligent and reckless. Defendants' conduct was willful, wanton, arbitrary, and capricious. They acted with flagrant and malicious disregard of Plaintiffs' health and safety and the health and safety of Plaintiffs' co-workers. Defendants were subjectively aware of the extreme risk posed by the conditions which caused Plaintiffs' injuries, but did nothing to rectify them. Instead, Defendants had Plaintiffs and other crew members continue working despite the dangerous conditions that were posed to them and the faulty, defective equipment provided to them. Defendants did so knowing that the conditions posed dangerous and grave safety concerns. Defendants' acts and omissions involved an extreme degree of risk considering the probability and magnitude of potential harm to Plaintiffs and others. Defendants had actual, subjective awareness of the risk, and consciously disregarded such risk by allowing Plaintiffs to work under such dangerous conditions. Moreover, Plaintiffs may recover punitive damages under the general maritime law following the United States Supreme Court's ruling in *Atlantic Sounding* and *Exxon Shipping Company*.

 37. As a result of said occurrences, Plaintiffs sustained severe injuries to their bodies. Plaintiffs suffered injuries to their ankles, hips, knees, backs, necks, and other body parts, which resulted in physical pain, suffering, mental anguish, fear, and discomfort. Plaintiffs continue to suffer following their injuries. They are owed maintenance and cure for the past and the future. To the extent Defendants have refused and will refuse to pay Plaintiffs maintenance and cure, their refusal is willful, intentional, arbitrary, and capricious,

entitling Plaintiffs to an award of attorneys' fees and punitive damages. Plaintiffs have sustained a loss of earnings in the past and earning capacity in the future. Plaintiffs have been damaged in a sum far in excess of the minimum jurisdictional limits of this Honorable Court, for which they now sue.

## IV.

## Intentional Infliction of Emotional Distress Claim by Jacquelyn Duncan against the Transocean Defendants.

38. Plaintiff Jacquelyn Duncan brings this claim individually against the Transocean Defendants.

39. Upon hearing of the disaster, Ms. Duncan went to the Transocean offices to inquire about her brother, Wyatt Kemp, because he was working aboard the Deepwater Horizon at the time of the explosion. By the time she spoke to Transocean employees about her brother, Transocean already had knowledge that her brother was dead. Despite this knowledge, Transocean lied to Ms. Duncan, stating that her brother was alive and well and that he would be returning safely to shore. Ms. Duncan was overjoyed at the news her brother was still alive and safe. However, she later learned that her brother was one the workers killed in the explosion.

40. In Texas, a cause of action for intentional infliction of emotional distress exists where: (1) the plaintiff is a person; (2) the defendant acted intentionally or recklessly; (3) the emotional distress suffered by plaintiff was severe; (4) the defendant's conduct was extreme and outrageous; (5) the defendant's conduct proximately caused the plaintiff's emotional distress. Here, Ms. Duncan is a person. Transocean acted intentionally as it knew Ms. Duncan's brother was dead but lied to her. Ms. Duncan suffered severe distress as a result of

15

Transocean's lie about her brother. Specifically, she is now an emotional wreck and has trouble performing basic day-to-day tasks. Transocean's conduct was also extreme and outrageous. Transocean knew the families of the rig workers would be looking to them for guidance and honesty. However, they lied to Ms. Duncan's face.

41. As a result of the emotional distress Transocean has inflicted upon Ms. Duncan she seeks actual damages, medical expenses in the past and future, loss of earning capacity in the past and future, and exemplary damages.

## V.

## Jury Trial

42. Plaintiffs hereby request a trial by jury on all claims.

## VI.

## Prayer

Plaintiffs pray that this citation issue and be served upon Defendants in a form and manner prescribed by law, requiring that the Defendants appear and answer, and that upon final hearing, Plaintiffs have judgment against Defendants, both jointly and severally, in a total sum in excess of the minimum jurisdictional limits of this Court, plus pre-judgment and post-judgment interests, all costs of Court, attorneys' fees, punitive damages, and all such other and further relief, to which they may show themselves justly entitled.

Respectfully submitted,

ARNOLD & ITKIN LLP

*/s/ Kurt B. Arnold*
_____
Kurt B. Arnold, Texas Bar No. 24036150
Robert P. Wynne, # 30123
Jason A. Itkin, Texas Bar No. 24032461
Cory D. Itkin, Texas Bar No. 24050808
M. Paul Skrabanek, Texas Bar No. 24063005
1401 McKinney Street, Suite 2550
Houston, Texas 77010
Telephone: (713) 222-3800
Facsimile: (713) 222-3850

Jay M. Kilpatrick
YOUNGWILLIAMS P.A.
210 E. Capitol Street, Suite 2000
Jackson, Mississippi
Telephone:     (601) 948-6100
Telefax:       (601) 355-6136

**CO-COUNSEL FOR RHONDA BURKEEN, INDIVIDUALLY, AND AS PERSONAL REPRESENTATIVE FOR THE ESTATE OF AARON DALE BURKEEN AND ON BEHALF OF ALL HEIRS, AND AS PERSONAL REPRESENTATIVE FOR HER MINOR SON, TIMOTHY BURKEEN**

Ryan Zehl
Texas Bar No. 24047166
Bryant Fitts
Texas Bar No. 24040904
FITTS ZEHL LLP
Galleria Tower 1
2700 Post Oak Blvd., Suite 1120
Houston, Texas 77056
Telephone:     (713) 491-6064
Telefax:       (713) 583-1492

**CO-COUNSEL FOR NICKALUS WATSON**

## **CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on March 11, 2011.

      */s/ Kurt B. Arnold*
      _____
      Kurt B. Arnold