# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

IN RE:   OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010

THIS DOCUMENT RELATES TO:

02:10-CV-1196

MDL NUMBER 2179  SECTION: J

JUDGE BARBIER

MAGISTRATE JUDGE SHUSHAN

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### MEMORANDUM IN OPPOSITION TO CAMERON INTERNATIONAL CORPORATION'S MOTION TO DISMISS OR MOTION FOR JUDGMENT ON THE PLEADINGS WITH RESPECT TO THE CASE OF MICHELLE M. JONES

**MAY IT PLEASE THE COURT:**

Plaintiff, **Michelle M. Jones**, individually and as personal representative of her minor sons, **Stafford Hess Jones** and **Maxwell Gordon Jones**, responds to the Motion to Dismiss or Motion for Judgment on the Pleadings with Respect to the Bundle A Pleadings filed by Cameron International Corporation ("Cameron"),[1] and respectfully requests the Court to **DENY** same.

## I.    LEGAL STANDARD

When ruling upon a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must accept as true all well-plead allegations and resolve all doubts in favor of the plaintiff.  *See Tanglewood East Homeowners v. Charles-Thomas, Inc.*, 849 F.2d 1568, 1572 (5th Cir. 1988).  The Court should deny a Rule 12(b)(6) motion unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  Rule 12(b)(6) motions are "viewed with disfavor, and [are] rarely granted." *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981).

---

[1]  See, *e.g.*, Record Document 1154-1 (Filed 02/11/11).

## II.    LEGAL ARGUMENT

Cameron argues that maritime law should not apply to the claims of Plaintiff, a death victim of the explosion and capsizing of the *M/V Deepwater Horizon*, a vessel in navigation for maritime tort purposes.  Instead, Cameron asserts that Louisiana state law, applied as surrogate Federal law via the Outer Continental Shelf Lands Act (OCSLA), should supplant maritime law and govern those claims.  To support its argument, Cameron misstates the holdings of several cases, completely ignores the controlling jurisprudence, and improperly swirls together three separate and unrelated tests — namely, the tests (1) for the application of OCSLA jurisdiction; (2) for state law to apply as surrogate federal law under OCSLA; and (3) for the application of admiralty jurisdiction and substantive maritime law.  Before addressing the numerous deficiencies in Cameron's argument, Plaintiff needs to set forth the proper framework.

## III.    AN ACCURATE ROADMAP:  OCSLA'S KEY PROVISIONS, ADMIRALTY JURISDICTION AND THE *PLT* TEST

The pertinent provisions of OCLSA are contained in 43 U.S.C. § 1349(b)(1) (OCSLA's judicial jurisdictional provision), § 1333(a)(1) (OCSLA's assertion of federal sovereignty), and § 1333(a)(2)(A) (OCSLA's "surrogate federal law" provision).  As this Court indicated in treating another claim arising out of this disaster, the judicial jurisdictional provision is completely independent of, and much broader in scope than, the test used to determine what substantive law applies under OCSLA.  *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on April 20, 2010*, 2010 WL 3943451 at *3 (E.D.La. Oct. 6, 2010).  All that is required for OCSLA judicial jurisdiction (§ 1349(b)(1)) is that the event occurred on the Outer Continental Shelf — defined as all submerged lands bordering the United States that are more than three miles from the coast — and that the event arose out of or related to mineral production.

Given its breadth of coverage, § 1349(b)(1) encompasses a wide range of activities that also fall within the coverage of the Federal Courts' admiralty jurisdiction under 28 U.S.C. § 1333. Indeed, in Outer Continental Shelf (OCS) litigation, § 1349(b)(1) coverage and admiralty coverage frequently overlap and provide concurrent bases for jurisdiction. *See, e.g., Recar v. CNG Prod. Co.,* 853 F.2d 367, 369 (5th Cir. 1988) (noting "[t]he district court may well have both admiralty jurisdiction under the general maritime law and federal question jurisdiction by virtue of OCSLA."); *Tennessee Gas Pipeline v. Houston Cas. Ins. Co.*, 87 F.3d 150, 155 (5th Cir. 1996) (same); *Strong v. B.P. Exploration & Production, Inc.*, 440 F.3d 665 (5th Cir. 2006) (holding that the plaintiff properly pleaded jurisdiction under § 1349(b)(1) but that the case also fell within admiralty jurisdiction and was therefore governed by federal maritime law).

Unlike the broad grant of OCSLA jurisdiction, the test for determining what substantive law applies under OCSLA (set forth in § 1333(a)(2)(A)) is far more restrictive. Under that provision, "federal law [which means, predominantly, federal maritime law] governs . . . to the extent that there is applicable federal law; however, if there is a gap in the federal law, the law of the adjacent state is used as a gap-filler and becomes surrogate federal law." *Bartholomew v. CNG Producing Co.,* 862 F.2d 555, 557 (5th Cir. 1989).

It is well settled in the Fifth Circuit that for state law to apply as surrogate Federal law under OCSLA (§1333(a)(2)(A)), the three conditions established in *Union Texas Petroleum Corp. v. PLT Engineering, Inc.,* 895 F.2d 1043 (5th Cir. 1990), must be met. The three *PLT* conditions are: "(1) The controversy must arise on a situs covered by OCSLA (i.e. the subsoil, seabed, or artificial structures permanently or temporarily attached thereto), (2) federal maritime law must not apply of its own force, and (3) the state law must not be inconsistent with Federal law." *PLT Engineering,*

K:\Public\JWD.JONES.GORDON\Pleadings\USDC-ED (LA) — CA No 10-MD-02179 & 10-2771-- AFTER transfer by JPML\Memo in Opp to Motion to Dismiss - Cameron.wpd

Page 3 of 17

895 F.2d at 1047.  All three of these conditions must be met in order for adjacent-state law to apply

as surrogate Federal law under OCSLA.  *See Grand Isle Shipyard, Inc. v. Seacor Marine, LLC,* 589

F.3d 778, 783 (5th Cir. 2009) (*en banc*).  Otherwise, maritime law applies.

## IV.    CAMERON CANNOT SATISFY THE *PLT* TEST

### A.    *PLT Factor # 1:  The M/V Deepwater Horizon Was Not an OCSLA "Situs"*

The Supreme Court and the Fifth Circuit have held that 43 U.S.C. § 1333(a) creates a "situs"

requirement for the application of surrogate state law under OCSLA.  *Offshore Logistics, Inc. v.*

*Tallentire,* 477 U.S. 207, 219 (1986); *Demette v. Falcon Drilling Co.,* 280 F.3d 492, 496 (5th Cir.

2002).[2]  The Fifth Circuit has conclusively stated that the "situs" required to trigger OCSLA refers

to the location of the injury.  *See, e.g., Demette,* 280 F.3d at 496 ("First, we must determine whether

the injury occurred on an OCSLA situs . . ."); *Mills v. Director, Office of Workers' Compensation*

*Programs,* 877 F.2d 356 (5th Cir.1989) (*en banc*) (holding that the applicability of § 1333(b) is

limited to the "situs" of injury).  In its most recent en banc decision addressing OCSLA, the Fifth

Circuit summarized the governing law as follows:

> [I]n a tort action, *Rodrigues* [*v. Aetna Cas. & Sur. Co., 395 U.S. 352 (1969)*]
> illustrates that the OCSLA situs requirement is met if the tort occurs on a platform
> or other OCSLA covered situs as provided in § 1333(a)(2)(A). ... The converse is
> also equally clear.  In a tort action, if the tort occurs on navigable water instead of
> a fixed platform (or other structure attached to the seabed), the OCSLA situs
> requirement is not met [citing *Tallentire*].

*Grand Isle Shipyard*, 589 F.3d at 784 (and holding further that although a tort action arising

from an injury to a platform worker aboard a vessel that was only a few yards from — but not yet

in contact with — the platform was a maritime law and not an OCSLA case, a different analysis

---

[2]  *Demette* was overruled in part on other grounds in *Grand Isle Shipyard v. Seacor Marine, Inc.*, 589 F.3d 778, 788-89 (5th Cir. 2009) (*en banc*).

K:\Public\JWD.JONES.GORDON\Pleadings\USDC-ED (LA) — CA No 10-MD-02179 & 10-2771— AFTER transfer by JPML\Memo in Opp to Motion to Dismiss - Cameron.wpd

Page 4 of 17

applied to a contractual indemnity action arising from the tort).

Cameron's effort to characterize the *Deepwater Horizon* as an OCS situs for purposes of *PLT* Factor #1; thus, ignores a dispositive line of Fifth Circuit jurisprudence.  It is indisputable that the *Deepwater Horizon* was a *vessel* for all maritime-law purposes.[3]  It is also clear that during its operations in connection with the Macondo well, the *Deepwater Horizon* was never attached to the ocean floor; instead, it stabilized itself by using complex "thruster" technology and was connected to nothing at all except — via a 5,000-foot long riser pipe — the wellhead.  Fifth Circuit cases make clear that the *Deepwater Horizon* was thus well outside the scope of 43 U.S.C. § 1333(a)(2)(A), which limits the applicability of adjacent-state law to events occurring on "the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon."[4]  See *Sanamo v. Trico Marine Services, Inc.,* 73 Fed.Appx. 79, 2003 WL 21756647 at *3 (5th Cir. 2003) ("A jack-up rig that is not jacked up . . . does not necessarily constitute an OCS situs. . . . [A] jack-up

---

[3]  *See Stewart v. Dutra Const. Co.*, 543 U.S. 481, 489-90 (2005) (holding that 1 U.S.C. § 3 "suppl[ies] the default definition of *vessel* throughout the U.S. Code . . . [and] codifie[s] the meaning that the term *vessel* [has] acquired in general maritime law."); 1 U.S.C. § 3 ("The term *vessel* includes every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water."); *Demette*, 280 F.3d at 498 n. 18 (stating that it "is beyond dispute . . . that special-purpose movable drilling rigs . . . are vessels within the meaning of admiralty law").

[4]  Cameron tries to get around the language of 1333(a)(2)(A) by an overly-selective use of legislative history.  At p. 7 of its Memo in Support, Cameron presents two short quotations from 1978 USCCAN at p. 1534 (Cameron mistakenly cites p. 1679 for one of the quotations) that seem potentially misleading.  In actuality, until 1978, §§ 1333(a)(1) and 1333(a)(2)(A) had identical coverages.  *See* Christopher, *The Outer Continental Shelf Lands Act: Key to a New Frontier*, 6 Stan. L. Rev. 23, 62 (1953) (appendix setting forth original (1953) OCSLA and showing that §§ 1333(a)(1) and 1333(a)(2)(A) were both confined to "subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon").  The 1978 Congress broadened § 1333(a)(1) to add "all installations and other devices permanently or temporarily attached to the seabed," but Congress did not change § 1333(a)(2)(A).

Cameron wants the Court to read the two passages it quotes from USCCAN to mean that the 1978 Congress effectively broadened both provisions.  But on the same page of USCCAN Congress (via the House Committee Report) said just the opposite: "The Committee . . . has left [§ 1333(a)(2)(A)] ***untouched.***"  1978 USCCAN at 1534 (emphasis supplied).  Among the reasons for leaving the provision untouched was a lobbying effort by the Association of Trial Lawyers of America, who feared that changing § 1333(a)(2)(A) to conform to the newly-broadened § 1333(a)(1) "would jeopardize the seaman status of workers on jack-up, submersible, and semi-submersible rigs."  Robertson & Sturley, *Recent Developments in Admiralty and Maritime Law at the National Level and in the Fifth and Eleventh Circuits*, 27 Tul. Mar. L.J. 495, 575 n. 759 (2003).

K:\Public\JWD.JONES.GORDON\Pleadings\USDC-ED (LA) — CA No 10-MD-02179 & 10-2771 – AFTER transfer by JPML\Memo in Opp to Motion to Dismiss - Cameron.wpd

Page 5 of 17

rig is a floating rig that can be towed to a particular site.  Until it is attached to the seabed and erected, it cannot be considered an OCSLA situs."); *United States v. Pickett*, 598 F.3d 231, 236 (5th Cir. 2010) (Clement, J., concurring) ("for a rig or platform to be [covered by OCSLA] it must be 'erected' upon the Outer Continental Shelf. . . ; OCSLA does not apply to vessels that float on the water."); *Id.* (stating that a pipelay barge that "drops eight large anchors to stabilize its position . . . is not erected on the OCS" so as to be covered by § 1333(a)(1)); *Demette*, 280 F.3d at 499-500 (stating that a drilling rig tender, "attached to the OCS only by an anchor," was not an OCSLA situs).  Accordingly, Cameron cannot meet the first *PLT* factor.

      **B.**     ***PLT Factor # 2:  Maritime Law Applies "Of Its Own Force"***

          **1.**     ***If there is admiralty jurisdiction over an OCS event, maritime law applies of its own force.***

Generally speaking, "with admiralty jurisdiction comes the application of substantive admiralty law." *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 865 (1986).  In OCSLA litigation, this generalization is invariably true.  *See Strong,* 440 F.3d at 668-670 (addressing *PLT* Factor #2 by conducting an admiralty jurisdiction inquiry and concluding: "[b]ecause Strong has alleged a traditional maritime tort, federal maritime law applies of its own force, precluding incorporation of state law under OCSLA"); *Hodgen v. Forest Oil Corp.,* 87 F.3d 1512, 1524-25 (5th Cir. 1996) (stating that "whether a contract is maritime [for admiralty jurisdiction purposes] and whether maritime law applies of its force [for purposes of *PLT* Factor #2] [are] identical . . . inquiries."); *Laredo Offshore Constructors, Inc. v. Hunt Oil Co.*, 754 F.2d 1223, 1229 (5th Cir. 1985) (noting that "where admiralty and OCSLA jurisdiction overlap, the case is governed by maritime law"); *Hufnagel v. Omega Service Industries, Inc.*, 182 F.3d 340, 350 (5th Cir. 1999) ("Because OCSLA does not displace general maritime law, substantive maritime law continues to

K:\Public\JWD.JONES.GORDON\Pleadings\USDC-ED (LA) -- CA No 10-MD-02179 & 10-2771-- AFTER transfer by JPML\Memo in Opp to Motion to Dismiss - Cameron.wpd

Page 6 of 17

govern where both OCSLA and general maritime law could apply."); *Tennessee Gas Pipeline*, 87 F.3d at 154 ("where OCSLA and general maritime law both could apply, the case is to be governed by maritime law"); *Smith v. Penrod Drilling Co.*, 960 F.2d 456, 459 (5th Cir. 1992) ("When an event occurs on an OCSLA situs but also is governed by maritime law, maritime law controls.").[5]  It follows that a showing of admiralty jurisdiction by the Bundle A claimants, including Michelle Jones, is dispositive of Cameron's motion.

> **2.      *On the basis of the Supreme Court's Grubart decision, admiralty jurisdiction is incontestable here.***

The admiralty tort jurisdiction formula laid out in *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995) (citation and internal quotation marks omitted) (emphasis supplied) is as follows:

> [A] party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity.  A court applying ***the location test*** must determine whether the tort occurred on navigable water. . . . the connect test raises two issues.  A court, first, must assess the general features of the type of incident involved to determine whether the incident has a ***potentially disruptive impact on maritime commerce***.  Second, a court must determine whether the general character of the activity giving rise of the incident shows a ***substantial relationship to traditional maritime activity***.

> a.      The location requirement

The location test, which is satisfied when the tort occurs on navigable water, is readily satisfied in this case.  It is undisputed that the deaths and injuries at issue all occurred aboard the *M/V Deepwater Horizon* while it was located in the Gulf of Mexico, afloat on almost mile-deep water and more than forty miles from the nearest coastline.  Certainly, the *M/V Deepwater Horizon* was a vessel in navigation.  *See, e.g., Demette,* 280 F.3d at 498 ("This circuit has repeatedly held

---

[5]  *Hodgen* and *Smith* were overruled in part on other grounds in *Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 689 F.3d 778, 788-789 (5th Cir. 2009) (*en banc*).

K:\Public\JWD.JONES.GORDON\Pleadings\USDC-ED (LA) — CA No 10-MD-02179 & 10-2771— AFTER transfer by JPML\Memo in Opp to Motion to Dismiss - Cameron.wpd

Page 7 of 17

that special-purpose movable drilling rigs, including jack-up rigs, are vessels within the meaning of admiralty law.").

> b.      *The "potential disruption" requirement*

The second *Grubart* requirement is that the incident (accident) involved must have been of a sort with the potential to disrupt maritime commerce.  Cameron concedes that this factor is satisfied.  Presumably Cameron does not contest the matter because the actual disruption of maritime commerce has been so overwhelming and is virtually unprecedented.

> c.      *The "substantial relationship" requirement*

The inquiry here is whether any of the tortfeasors was involved in traditional maritime activity.  *Grubart* spells this out as follows, 513 U.S. at 541 (emphasis supplied):

> [W]e need to look only to whether **one** of the arguably proximate causes of the incident originated in the maritime activity of a tortfeasor:  as long as **one** of the putative tortfeasors was engaged in traditional maritime activity the allegedly wrongful activity will "involve" such traditional activity and will meet the second nexus prong.

*See also Scarborough v. Clemco Industries*, 391 F.3d 660, 665 (5th Cir. 2004) (same, quoting *Grubart*); *Raffray v. Gulf Logistics, LLC*, 2010 WL 5055849 at * 3 (E.D. La. 2010) (same); Maraist, Galligan & Maraist, *Admiralty in a Nutshell* 43 (6th Ed. 2010) (same).

The *Grubart* ruling that *one maritime tortfeasor is enough* puts an end to all sensible debate about the existence of admiralty jurisdiction here:  it is irrefutable that Transocean was engaged in a traditional maritime activity when operating the *Deepwater Horizon*.  Courts in the Fifth Circuit have repeatedly held that drilling and exploring by vessels such as the *M/V Deepwater Horizon* constitute traditional maritime activity.  The courts have drawn a distinction between oil and gas drilling conducted from vessels versus those same activities performed from fixed platforms,

recognizing that when those activities are performed from vessels such as the *Deepwater Horizon*, they are traditional maritime activities sufficient to invoke the application of maritime law (whereas when performed from a fixed platform, they are not).  *See e.g., Hufnagel,* 182 F.3d at 352-353 (noting the distinction between tort claims arising on fixed platforms in which admiralty law does not apply and claims arising on drilling vessels in which admiralty law does apply); *Theriot v. Bay Drilling Corp.,* 783 F.2d 527, 538-39 (5th Cir.1986) ("oil and gas drilling on navigable waters aboard a vessel is recognized to be maritime commerce."); *Strong*, 440 F.3d at 669 (holding that a liftboat, although jacked up and not "under sail," qualifies as a vessel on navigable waters thereby satisfying the location requirement of *Grubart*); *Demette* (same); *Pippen v. Shell Oil Co.,* 661 F.2d 378, 384 (5th Cir. 1981) (recognizing that offshore drilling of oil and natural gas from the sea bottom is maritime commerce when performed from a vessel).

Turning for the sake of thoroughness to Cameron's own activities, it seems plain enough that assuming, *arguendo,* those activities were themselves not traditionally maritime, they certainly (in the language of *Grubart*) bore a "substantial relationship to traditional maritime activity."  513 U.S. at 539.  In maritime oil and gas exploration, a blowout preventer, such as the one manufactured by Cameron and in use at the time of this tragedy, is not just some generic piece of oil field equipment; it is a crucial component to all maritime oilfield exploration.[6]  MODUs (Mobile Offshore Drilling Units) have been central to admiralty jurisdiction and maritime law at least since *Offshore Co. v. Robison*, 266 F.2d 769 (5th Cir. 1959).  *Stewart v. Dutra Const. Co.*, 543 U.S. 481 (2005) (see *supra* note 2), confirms that they still are central.  To its credit, Cameron does not seem to claim that the

---

[6] In an internal document describing the challenges of manufacturing BOPs for offshore drilling, Cameron engineer Mel Whitby wrote:  "[w]hen the BOP is called on to function in an emergency situation, it is the main barrier protecting human life, capital equipment and the environment.  Therefore, it must function without fail."  Melvyn F (Mel) Whitby, *Design evolution of a subsea BOP,* Drilling Contractor magazine, p. 36 (May/June 2007).

K:\Public\JWD.JONES.GORDON\Pleadings\USDC-ED (LA) — CA No 10-MD-02179 & 10-2771— AFTER transfer from JPML\Memo in Opp to Motion to Dismiss - Cameron.wpd

Page 9 of 17

*Deepwater Horizon* was not a MODU or that the BOP was not a key component to the accomplishment of the *Deepwater Horizon's* mission.[7]

The cases Cameron centrally relies upon for its (somewhat subtle) argument against admiralty jurisdiction cannot bear the weight.  *See Herb's Welding, Inc. v. Gray,* 470 U.S. 414 (1985); *Rodrigue v. Aetna Casualty & Surety Co.,* 395 U.S. 352 (1969); and *Texaco Exploration and Production, Inc. v. AmClyde Engineered Products Co., Inc.,* 448 F.3d 760 (5th Cir.), *cert. denied,* 549 U.S. 1053 (2006).  Both *Rodrigue* and *Herb's Welding* involved personal injuries that occurred on fixed platforms, not on vessels in navigation, thereby failing to satisfy the location test.  In *Texaco*, the plaintiffs did not make claims against any party that was engaged in traditional maritime activity.  Instead, the case involved a suit by the lessees of an offshore federal lease against a land-based company that designed and manufactured a crane that failed during the construction of a fixed platform (causing a deck module to fall into the sea), as well as the company that was charged with designing and constructing the platform.  If the claimant in *Texaco* had sued the owner or operator of a vessel, as the claimants have in this case, admiralty jurisdiction would have applied.[8]

---

[7]  Cameron also deserves credit for eschewing reliance on *Sohyde Drilling & Marine Co. v. Coastal States Gas Producing Co.*, 644 F.2d 1132 (5th Cir. 1981), which has sometimes been misleadingly cited for the (facially ridiculous) proposition that blowout preventers are generically outside the reach of admiralty and maritime law.  *Sohyde* dealt with property damage from an accident involving a "submersible drilling barge . . . resting on the bottom of a dead-end dredged canal slip in Louisiana."  *Id.* at 1134.  In finding no admiralty jurisdiction, the court relied on a case that the Supreme Court has subsequently disapproved.  *See Id.* at 1136 (citing *Kelly v. Smith*, 485 F.2d 520 (5th Cir. 1973)); see *Grubart*, 513 U.S. at 544 (abrogating *Kelly*).  The Fifth Circuit itself has repeatedly criticized or narrowly limited *Sohyde*.  See *Domingue v. Ocean Drilling and Exp. Co.*, 923 F.2d 393, 397 n. 9 (5th Cir. 1991); *Broughton Offshore Drilling, Inc. v. South Central Machine, Inc.*, 911 F.2d 1050, 1053 (5th Cir. 1990); *Houston Oil and Minerals Corp. v. American Int'l Tool Co.*, 827 F.2d 1049, 1054 (5th Cir. 1987).  Most importantly, the *Sohyde* court said that the restrictive view it took of admiralty jurisdiction would not be appropriate in actions "for personal injuries under the Jones Act or maritime law."  *Sohyde*, 644 F.2d at 1136.

[8]  It bears repeating that OCSLA's surrogate federal law provision, 43 U.S.C. § 1333(a)(2)(A), is not applicable here.  Accordingly, the demonstration above that (a) state law cannot apply to an OCSLA case falling within admiralty jurisdiction and (b) admiralty jurisdiction is present here means that the restrictions on Plaintiff's rights that Cameron purports to find in Louisiana law are irrelevant.

If the court were to decide that an "adjacent" state law applies, a significant question would then arise — which state

## V.   THE PLAINTIFFS HAVE PROPERLY ALLEGED A VIABLE PRODUCTS LIABILITY CAUSE OF ACTION UNDER MARITIME LAW

As is argued above, Cameron's allegations that OCSLA mandates the application of Louisiana law to Plaintiff's claims is patently erroneous.  In Section C of its Memorandum, Cameron argues that any claim not brought against it pursuant to the Louisiana Products Liability Act, La. R.S. 9: 2800.51-59, is invalid.  To the contrary, Plaintiff's claims against Cameron are clearly governed by maritime law and, specifically to this issue, the maritime law as it concerns products liability.  The Louisiana Products Liability Act is wholly inapplicable.

In *East River S.S. Corp. v. Transamerica Delaval, Inc*., 476 U.S. 858 (1986), the United States Supreme Court recognized a strict products liability cause of action arising under the general maritime law.  In that case, the Supreme Court wrote that "... the question whether principles of strict products liability are part of maritime law 'is no longer seriously contested.'"  *Id.* (citing *Ocean Barge Trans. Co. v. Hess Oil*, 726 F.2d 121 (3rd Cir. 1984)).  *East River*, citing with favor *Pan-Alaska Fisheries Inc. v. Marine Const. & Design Co.*, 565 F.2d 1129 (9th Cir. 1977) and other federal jurisprudence; see, *e.g., Szollosy v. Hyatt Corp.*, 396 F.Supp.2d 159 (D.Conn. 2005); *see also In re Skipper Liner Industries, Inc.*, 00-0730, 2002 WL 32348827 (W.D.Wis. January 31, 2002); has established that Section 402A of the Restatement (Second) of Torts is the governing and applicable

---

is the "adjacent" one for § 1333(a)(2)(A) purposes.  Cameron's assumption that the "adjacent" state is Louisiana is somewhat blithe.  *Snyder Oil Corp. v. Samedan Oil Corp.*, 208 F.3d 521, 524 (5th Cir. 2000), treated the "adjacency" inquiry as follows:

> [In *Reeves v. B & S Welding, Inc.*, 897 F.2d 178 (1990)] we ... considered four types of evidence in the "adjacency" analysis:  (1) geographic proximity; (2) which coast federal agencies consider the subject platform to be "off of"; (3) prior court determinations; and (4) projected boundaries.

Obviously, three of the four *Snyder/Reeves* factors are questions of fact.  Equally obvious, none of them is ripe for consideration at the complaint-dismissal stage.

K:\Public\JWD\JONES.GORDON\Pleadings\USDC-ED (LA) — CA No 10-MD-02179 & 10-2771– AFTER transfer by JPML\Memo in Opp to Motion to Dismiss - Cameron.wpd

Page 11 of 17

set of rules for a maritime products liability cause of action.  Thus, Cameron's pages-long discussion

of the LPLA is without relevance to the matter *sub judice.*

**VI.    ASSUMING ARGUENDO THAT LOUISIANA LAW APPLIES, THE PLAINTIFF
HAS SUFFICIENTLY PLED CLAIMS AGAINST CAMERON**

   **A.    Plaintiff has satisfied Rule 8 and has pled sufficient grounds to assert claims
against Cameron.**

First, and again, the LPLA is simply not applicable to the products liability claims brought

by Plaintiff against Cameron.  The general maritime law rules on the subject are applicable.  Out of

an abundance of caution, however, and assuming only for the sake of argument that the LPLA

applies, Plaintiff has still sufficiently pled claims against Cameron.

Cameron's efforts to dismiss Plaintiff's claims against it are misplaced and have no basis in

the law.  Under the standard to be applied to a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the

district court must take the factual allegations of the complaint as true and resolve any ambiguities

or doubts regarding the sufficiency of the claim in favor of the plaintiff.  *See Jefferson v. Lead Indus.*

*Assc., Inc.*, 930 F.Supp. 241, 244 (E.D. La. 1996) (citing *Fernandez-Montes v. Allied Pilots Ass'n.*,

987 F.2d 278, 284 (5th Cir.1993)).  The complaint should not be dismissed for failure to state a

claim unless it appears beyond doubt that Plaintiff cannot prove any set of facts in support of her

claim that would entitle her to relief.  *Id.* (citing *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 524

(5th Cir.1994)).

The United State Supreme Court recently explained that reviewing a motion to dismiss is a

context-specific task, one in which the court should draw from its common sense and judicial

experience:

> [A] complaint that states a plausible claim for relief survives a motion to dismiss.
> Determining whether a complaint states a plausible claim for relief will, as the Court

of Appeals observed, be a context-specific task that requires the reviewing court to
draw on its judicial experience and common sense.

*Ashcroft v. Iqbal*, 556 U.S. ___, 129 S.Ct. 1937, 1950 (2009) (internal citations omitted) (citing *Bell*
*Atlantic Corp. v. Twombly*, 550 U.S. 554, 556, 127 S.Ct. 1955, ___ (2007); *Iqbal v. Hasty*, 490 F.3d
143, 157-158 (C.A. 2 2007)).  As explained below, the Supreme Court's plain words are especially
applicable to the circumstances and procedural posture of Plaintiff's pleadings.

Plaintiff's pleadings sufficiently state a claim under the Louisiana Products Liability Act
("LPLA") such that Cameron's own opposition succinctly states the claim lodged against it:  "the
Bundle A Pleadings [including those of Plaintiff] seek to impose liability on Cameron in its capacity
as manufacturer of the *Deepwater Horizon* blowout preventer."  Cameron's Omnibus Memorandum
in Support at p 18 [Record Document 1154-1].  Clearly, Cameron understands the claims alleged
but seeks dismissal based on inapplicable case law and its self-serving theories regarding what must
be pled and to what extent.  Ultimately, Cameron's arguments fail and Plaintiff's pleadings have
sufficiently plead claims under the LPLA.

At the outset, Cameron seeks to impose a more heightened pleading requirement on Plaintiff
than what is actually called for by law.  In so doing, Cameron relies on case law that has no
application to the facts and procedural status here.  Two of the primary LPLA cases upon which
Cameron relies are wholly dissimilar in that they involve the dismissal of claims through summary
judgment and not 12(b)(6).  *See generally Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254
(5th Cir. 2002); *Broussard v. Procter & Gamble Co.*, 463 F.Supp.2d 596.  Cameron utilizes these
summary judgment decisions as a means to impose a greater burden on Plaintiff than is proper under
12(b)(6).  The evidentiary proof requirements and analysis inherent in the summary judgment

K:\Public\JWD.JONES.GORDON\Pleadings\USDC-ED (LA) -- CA No 10-MD-02179 & 10-2771-- AFTER transfer by JPML\Memo in Opp to Motion to Dismiss - Cameron.wpd

Page 13 of 17

standard cannot be applied to a motion to dismiss and Cameron's reliance on these cases is misplaced.

The only two relevant cases cited by Cameron that do involve a 12(b)(6) motion to dismiss are factually dissimilar.  In *Jefferson*, 930 F.Supp. at 245, this Court dismissed the plaintiff's LPLA claims because the plaintiff did not identify the manufacturer whose product caused her injury – a mandatory requirement under the LPLA.  *Id.*  Here, Plaintiff has identified Cameron as the manufacturer of the defective product, the BOP.  Then in *In re Air Bag Products Liability Litigation*, 7 F.Supp.2d 792, 800 (E.D. La. 1998), this Court again dismissed claims for very specific reasons that do not exist in the present case.  *In re Air Bag Products Liability Litigation*, the plaintiffs stated unequivocally in their pleadings that "they press no claims under the" LPLA.  This statement, or anything like it, does not exist anywhere in Plaintiff's pleadings.

Instead, Plaintiff cites Cameron as the manufacturer and supplier of the defective BOP and allege that Cameron is responsible for the catastrophe due to its defective equipment.  These allegations, accepted as true and viewed in the light most favorable to Plaintiff, are more than sufficient to support a claim under the LPLA, place Cameron on notice that such a claim has been alleged and defeat Cameron's motion to dismiss.

Even to the extent that the Complaints do not contain such specific allegations, should this Court determine such detailed pleading is required, as is briefed *infra*, Plaintiff should be granted leave to amend where such amendments can cure any perceived pleading deficiencies.

Plaintiff also refers the Court to the numbered allegations in the First Amended B1 Master Complaint directed at Cameron, its defective product (the BOP), and the damages suffered by the plaintiffs as a result.  *See* First Amended B1 Master Complaint at ¶¶ 230, 416, 423, 435, 440, 442,

K:\Public\JWD.JONES.GORDON\Pleadings\USDC-ED (LA) — CA No 10-MD-02179 & 10-2771-- AFTER transfer by JPML\Memo in Opp to Motion to Dismiss - Cameron.wpd

Page 14 of 17

443-51, 572, 603-606, 629-33, 636-58, 693, 694, 697-99 [Record Document 1128].  While the B1

Master Complaint was filed after the Bundle A, the allegations therein (particularly ¶¶ 637-658) set

forth detailed and fact specific claims under the general maritime law products liability cause of

action and are applicable in each of the Bundle A cases.  Given the procedural nature of the MDL,

the specific context of Plaintiff's pleadings and those of the related Bundles, and the United States

Supreme Court's logic in *Ashcroft v. Iqbal* — in which it instructs a reviewing court to draw on its

experience and common sense, *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S.Ct. 1937, 1950 (2009)

(internal citations omitted) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 556, 127 S.Ct.

1955 (2007); *Iqbal v. Hasty*, 490 F.3d 143, 157-158 (C.A. 2 2007)) — entertaining Cameron's basis

for dismissing Plaintiff's claims would be counterproductive and judicially inefficient when the

necessary factual allegations are proven to exist as seen in the B1Master Complaint.

      Nevertheless, if the Court should accept Cameron's position regarding Plaintiff's pleadings,

she should be granted the opportunity to amend her pleadings to cure the alleged omissions.  This

will be easily accomplished given that the factual allegations and associated claims are

comprehensively contained in B1 Master Complaint.

      Finally, Plaintiff has alleged liability on the part of Cameron that is not subject to the LPLA's

exclusivity provisions.  As numerous courts have made clear, the LPLA's exclusivity provisions do

not preclude claims against a tortfeasor who has been negligent in the handling of a product simply

because it was the manufacturer of that product.  *Lavergne v. America's Pizza Co.,* 838 So.2d 845

(La.App. 3 Cir.2003); *Colbert v. Sonic Restaurants, Inc.,* ___ F.Supp. 2d ___, 2010 WL 3769131

(W.D. La. 2010); *Crawford v. Dehl*, 2008 WL 4186863 (W.D. La. 2008).  Upon information and

belief, Cameron had continuing dealings with Transocean and BP with respect to maintenance and

K:\Public\JWD.JONES.GORDON\Pleadings\USDC-ED (LA) — CA No 10-MD-02179 & 10-2771– AFTER transfer by JPML\Memo in Opp to Motion to Dismiss - Cameron.wpd

Page 15 of 17

operation of the BOP long after the BOP was delivered.  To the extent Cameron was negligent in the conduct of these activities involving the BOP, which conduct included providing inspection and operation instruction and consultation and design services with respect to modifications, Cameron is liable to Plaintiff in negligence regardless of whether the LPLA applies (which it absolutely does not) to claims arising from Cameron's role as a manufacturer of the product.

**VII.**   **CONCLUSION**

For the foregoing reasons, Cameron International Corporation's Motion to Dismiss or Motion for Judgment on the Pleadings with Respect to the Bundle A Pleadings regarding Michelle M. Jones should be **DENIED.**

By attorneys:

*s/John W. deGravelles*

**JOHN W. deGRAVELLES** (#04808)
RANDOLPH W. HUNTER (#7084)
J. NEALE deGRAVELLES (#29143)
deGravelles, Palmintier, Holthaus & Frugé, L.L.P.
618 Main Street
Baton Rouge, Louisiana  70801-1910
Telephone:  225/344-3735
Facsimile:  225/336-1146
jdegravelles@dphf-law.com
rhunter@dphf-law.com
ndegravelles@dphf-law.com

## <u>CERTIFICATE OF SERVICE</u>

     I HEREBY CERTIFY that on this 11th day of March, 2011, the foregoing document was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to Don K. Haycraft, James P. Roy and Stephen J. Herman by operation of the court's electronic filing system and to all counsel of record through the Lexis Nexis File & Serve.

                           *s/John W. deGravelles*
                          **JOHN W. deGRAVELLES**