UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | : : : : | MDL NO. 2179 |
| | : : | SECTION J MAG. (1) |
| This Document Relates to: | : : | JUDGE BARBIER |
| 2:11-cv-00275-CJB-SS | : | MAG. JUDGE SHUSHAN |

**MOEX OFFSHORE 2007 LLC'S REFILED UNOPPOSED
MOTION TO INTERVENE AND BRIEF IN SUPPORT**

Pursuant to Pretrial Order No. 5 [Doc. 17], MOEX Offshore 2007 LLC ("MOEX") hereby refiles its Unopposed Motion to Intervene and Brief in Support that was filed in the Southern District of Texas before the transfer of this action to the MDL was approved by the United States Judicial Panel on Multidistrict Litigation ("JPML") on February 8, 2011. MOEX would respectfully show as follows:

**I.
INTRODUCTION AND SUMMARY OF MOTION**

Underwriters at Lloyd's, London and Various Insurance Companies ("Lloyd's") are the subscribers to certain excess liability insurance policies (the "Lloyd's Policies") issued to Transocean, the rig owner and lessor of the Deepwater Horizon. As Plaintiffs here, Lloyd's seeks a declaration that it has no obligation to BP under the Lloyd's Policies to cover any damages resulting from the April 20, 2010 blow-out of the Macondo Well and the resulting release of oil into the waters of the Gulf of Mexico (hereinafter "Macondo Well Blowout"). MOEX jointly owns a portion of the lease containing the Macondo Prospect along with BP,

Anadarko Petroleum Corporation and Anadarko E&P Company LP.[1]  As such, MOEX is insured under the Lloyd's Policies and should be allowed to intervene in this action so that it may protect its rights to, and interest in, the benefits of coverage under the Lloyd's Policies.  MOEX's Motion to Intervene is timely and proper pursuant to FED. R. CIV. P. 24(a)(2) and/or 24(b)(1)(B).

MOEX is entitled to intervene in this action as a matter of right under Rule 24(a)(2) because, to the extent it is a co-owner of the leasehold containing the Macondo Prospect, it stands equivalent to BP regarding its interest in the Lloyd's Policies and is not adequately represented by existing parties.  Regardless of the Court's determination on coverage, it is very likely that MOEX will be affected by that judicial decision.  If, for example, the Court determines that BP is not entitled to coverage by virtue of its status under the Drilling Contract as an owner of the leasehold containing the Macondo Prospect, then MOEX's coverage claim as a "co-owner" of the leasehold containing the Macondo Prospect is more likely to fail.[2]  On the other hand, if the Court determines, as MOEX believes it should, that coverage exists under the Lloyd's Policies, BP could simply exhaust the policy limits on a first-in-time basis, precluding any recovery by MOEX.  Aside from BP and other putative claimants, Transocean is seeking coverage in its own right as the named insured under the Lloyds' Policies.  Disposing of this case without MOEX's intervention will impair MOEX's insured rights because the Lloyd's Policies will be exhausted by payments to others.

---

[1] For the same reasons MOEX's intervention is necessary, Anadarko Petroleum Corporation and Anadarko E&P Company LP sought and obtained intervention as well.  *See* Doc. # 1503 and 1528.  As those are the only other parties holding an interest as "co-owners" of the leasehold containing the Macondo Prospect, MOEX does not currently expect other parties to seek intervention in this action.

[2] Although BP does not adequately represent or protect MOEX's interests, those two parties share a similar argument for coverage under the Lloyd's Policies due to the language in the Drilling Contract granting coverage to BP and its "co-owners" of the leasehold containing the Macondo Prospect.  To the extent that other issues are raised, differing positions and arguments may apply with respect to BP and MOEX.

Alternatively, the Court should permit MOEX to intervene under Rule 24(b)(1)(B) because the transactions and occurrences that will drive the coverage analysis arise out of a common set of operative facts: the terms of the Drilling Contract and the Lloyd's Policies. Thus, the core legal issues, particularly whether BP and MOEX as "co-owners" of the leasehold containing the Macondo Prospect have additional insured status, share an identity.

Permitting MOEX to intervene at this early moment would efficiently resolve all parties' claims in one forum with no prejudice because the issues have just been joined. The JPML just approved the transfer of this action on February 8, 2011, and no discovery or other substantive progress towards the merits has occurred.

Counsel for MOEX has conferred with counsel for all parties to this action and have been informed that there are no objections to MOEX's intervention.

## II.
### NATURE AND STAGE OF THE PROCEEDINGS

This insurance coverage dispute arises out of the Macondo Well Blowout.[3] On December 9, 1998, Transocean entered into an agreement ("Drilling Contract") with BP America Production Company ("BP")[4] in which Transocean agreed to commission the Deepwater Horizon semi-submersible drilling rig and lease it to BP "for drilling, completing, testing, and remedial operations and support operations on a well . . . in the federal waters of the Gulf of Mexico."[5] The Drilling Contract also required Transocean to obtain liability insurance and mandated that "[BP], its subsidiaries and affiliated companies, co-owners, and joint venturers, if any, and their employees, officers, and agents shall be named as additional insureds in each of

---

[3] For a more complete recitation of relevant facts, please see MOEX's proposed Complaint in Intervention, attached hereto as Exhibit A and incorporated by reference pursuant to FED. R. CIV. P. 10(c).

[4] For the purposes of this Motion, "BP" shall refer to the currently named Defendants in this action.

[5] The original parties to the Drilling Contract were Vastar Resources, Inc. and R&B Falcon Drilling Co. Subsequent to the lease signing, BP purchased all outstanding shares of Vastar Resources, Inc., and Transocean merged with R&B Falcon Drilling Co.

[Transocean's] policies . . . for liabilities assumed by [Transocean] under the terms of this Contract."

Pursuant to the Drilling Contract, Transocean obtained certain insurance policies, including the Lloyd's Policies, listing Transocean as the Named Insured and adding as an additional insured "any person or entity to whom [Transocean] is obliged by any oral or written 'Insured Contract'[6] . . . entered into before any relevant 'Occurrence'[7], to provide insurance such as is afforded by this Policy[.]"[8]

Effective October 1, 2009, BP[9] and MOEX entered into a Lease Exchange Agreement whereby MOEX acquired a 10% interest in Lease OCS-G 32306 covering Mississippi Canyon Block 252, which includes the Macondo Prospect. Through this agreement, MOEX became one of BP's "co-owners" of the leasehold containing the Macondo Prospect as that term is used in the Drilling Contract. BP and MOEX also entered into an agreement entitled Macondo Prospect Offshore Deepwater Operating Agreement "to explore, appraise, develop, and operate [the Macondo Prospect] for the production of Hydrocarbons."

As a result of the Macondo Well Blowout, BP and MOEX have incurred – and will continue to incur – significant liabilities. Although MOEX holds a non-operating interest in the Macondo Prospect and has reserved all of its rights and defenses concerning the Macondo Well Blowout, it has been named as a defendant or responsible party in numerous claims, and could be

---

[6] An "Insured Contract" is defined as any agreement entered into by Transocean and pertaining to business under which Transocean assumes the tort liability of another party to pay for "Bodily Injury", "Property Damage", "Personal Injury" or "Advertising Injury" to a "Third Party" or organization. "Tort Liability" means "liability that would be imposed by law in the absence of any contract or agreement."

[7] An "Occurrence" is defined as "an accident, including continuous and repeated exposure to substantially the same general harmful conditions which result in 'Bodily Injury', 'Property Damage', 'Personal Injury', or 'Advertising Injury', none of which was expected nor intended by the 'Insured' other than for the purpose of protecting persons or property from harm.

[8] All references to the Lloyd's Policies are to the first layer of several layers of excess insurance. On information and belief, the language in the higher-level excess policies is substantively the same.

[9] The BP entity that entered into the Macondo Prospect Offshore Deepwater Operating Agreement was BP Exploration & Production Inc.

4

held liable for, *inter alia*, bodily injury, property damage, well control expenses, environmental remediation expenses, and natural resource damages under various statutory or common law liability schemes, in addition to potential liability for contribution or indemnity to the operator of the well.  BP recently demanded that MOEX shoulder a portion of those costs.  MOEX asserted its rights to coverage to Lloyd's on October 26, 2010.

On May 21, 2010, Lloyd's commenced this action to determine whether BP is an Insured under the Lloyd's Policies with respect to the Macondo Well Blowout [Doc. # 1].  This action was effectively stayed pending a determination on venue by the JPML.  As a result, no dispositive motions, substantive discovery or other meaningful progress towards resolution on the merits has occurred at this time.

Because the Lloyd's Policies have finite limits (at least on their face), the claims for coverage asserted by Transocean, BP, MOEX and others will effectively "compete" for a limited fund.  Absent intervention, Transocean, BP and others could prejudice MOEX's rights by exhausting the available limits of the Lloyd's Policies.

### III.
#### ARGUMENTS AND AUTHORITIES

**A.      Intervention as a Matter of Right Under Rule 24(a)(2)**

Upon timely motion, "the court must permit anyone to intervene who claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." *In re Lease Oil Antitrust Litig.*, 570 F.3d 244, 247 (5th Cir. 2009) (quoting FED. R. CIV. P. 24(a)).  Rule 24 is designed to prevent multiple lawsuits when common questions of law or fact are involved. *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 525 (5th Cir. 1994).

5

In the Fifth Circuit, a motion to intervene will be granted when (1) the motion is timely, (2) the proposed intervenor demonstrates an interest relating to the action, (3) that would be impaired or impeded by the case, and (4) that is not adequately represented by existing parties. *See id*; *Sierra Club v. Espy*, 18 F.3d 1202, 1204-05 (5th Cir. 1994). MOEX amply satisfies the light tests presented here because "[R]ule 24 is to be construed liberally, and doubts resolved in favor of the proposed intervenor." *In re Lease Oil Antitrust Litig.*, 570 F.3d at 248. Courts in this District allow intervention "where no one would be hurt and the greater justice could be attained." *Chaisson v. Hornbeck Offshore Servs., Inc.*, No. H-09-0506, 2009 U.S. Dist. LEXIS 64043, at *3 (S.D. Tex. Jul. 23, 2009) (quoting *John Doe No. 1 v. Glickman*, 256 F.3d 371, 375 (5th Cir. 2001)).

### 1. MOEX's Motion to Intervene is Timely

After the filing of the initial pleadings in this action, no meaningful activity has occurred while it was effectively stayed pending a determination on venue. By any measure adopted in the Circuit,[10] MOEX's motion – filed before any substantive discovery, dispositive motions or other progress towards a decision on the merits has occurred – comes well within a reasonable period of time.

### 2. MOEX has a Strong Interest in the Lloyd's Suit

To demonstrate that it has a strong interest in the suit in question, a proposed intervenor must demonstrate that it has "a direct, substantial, legally protectable interest in the action,

---

[10] Timeliness of a motion to intervene is determined by examining (1) the length of time between the would-be intervenor's learning of his interest and his petition to intervene, (2) the extent of prejudice to existing parties from allowing late intervention, (3) the extent of prejudice to the would-be intervenor if the petition is denied, and (4) any unusual circumstances. *See In re Lease Oil Antitrust Litig.*, 570 F.3d at 247-48 (granting post-judgment motion to intervene despite two-year delay between notice of interest and motion to intervene); *Bradley v. Phillips Chem. Co.*, No. 08-20052, 2006 U.S. Dist. LEXIS 87063, at *7 (S.D. Tex. Dec. 1, 2006) (granting motion to intervene even though motion was filed "eleven months after the case was filed, more than six years after the explosion in issue, five months after expiration of the discovery period . . . and four months after Defendants' summary judgment motions" were filed).

6

meaning that the interest be one which the substantive law recognizes as belonging to or being owned by the applicant." *In re Lease Oil Antitrust Litig.*, 570 F.3d at 250; *see also Sierra Club*, 18 F.3d at 1207. The "interest" test is "primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Sierra Club*, 18 F.3d at 1207. MOEX's contractual rights amply demonstrate its legally protectable interest.

The Fifth Circuit recognizes that a right bestowed by contract is a "legally protectable property interest" for the purposes of intervention of right. *See Sierra Club*, 18 F.3d at 1207. Among other contracts, MOEX has a legally protectable interest in the Lloyd's Policies. Further, an interest in a specific fund – in this case, the available limits of the Lloyd's Policies – is a sufficient interest in a case affecting that fund. *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995); *Gaines v. Dixie Carriers, Inc.*, 434 F.2d 52, 54 (5th Cir. 1970). Therefore the second prong of the intervention of right test is satisfied because MOEX has a direct, substantial, legally protectable interest in this action.

### 3. The Disposition of This Case Could Impair MOEX's Interest

As already described, the Lloyd's Policies extend coverage to individuals or entities to whom Transocean is obliged by contract to add as additional insureds. The Drilling Contract between Transocean and BP requires Transocean to add BP and any co-owners as insureds. Because MOEX stands on equal footing with BP with respect to a coverage determination based on the operation of these clauses, a decision adverse to BP's additional insured status may effectively impair MOEX's right to coverage. Alternatively, if the Court determines BP is entitled to coverage but MOEX is delayed in receiving a similar adjudication, BP may exhaust all proceeds of the Lloyd's Policies, including MOEX's proportional share.

### 4. MOEX's Interest in the Lloyd's Suit is Not Adequately Represented by Existing Parties

A would-be intervenor bears only a minimal burden to show inadequate representation of its interests by existing parties. *Sierra Club*, 18 F.3d at 1207. A showing that representation "'may be' inadequate" is satisfactory. *Id.*; *see also Ross v. Marshall*, 426 F.3d 745, 761 (5th Cir. 2005). A common, but competing, interest in a right of recovery suffices for this purpose. *See, e.g.*, *Chaisson*, 2009 U.S. Dist. LEXIS at \*3 (in wrongful death suit, decedent's child may not adequately represent interests of decedent's other children because they are all heirs to decedent's estate and decedent left no will).

MOEX and BP have competing claims to the limits of the Lloyd's Policies. Recovery by either is limited due to the available policy limits; the resulting allocation of such proceeds is therefore likely to be a point of contention. MOEX has incurred and will incur its own defense costs and may be found liable for third party losses. Given BP's self-interest in using any policy proceeds for its own benefit, MOEX cannot rely on BP adequately to protect the interests of MOEX.

### B. Permissive Intervention Under Rule 24(b)(1)(B)

In the unlikely event the Court finds that MOEX may not intervene of right, the Court should allow MOEX to permissively intervene under FED. R. CIV. P. 24(b)(1)(B). Courts in the Fifth Circuit permit intervention under Rule 24(b)(1)(B) when the movant's "claim or defense and the main action have a question of law or fact in common." *Chaisson*, 2009 U.S. Dist. LEXIS at \*4 n.2. Here, as to the coverage issues raised by Lloyd's Complaint, the questions of law and fact are aligned. MOEX, as one of BP's co-owners of the leasehold containing the Macondo Prospect, will likely confront the same contractual interpretation issues BP will address in connection with the Lloyd's Policies. Further, MOEX's claim and BP's claim arise out of the

same set of facts: the Drilling Contract and the Lloyd's Policies. Thus, the Court should permit MOEX's claim to be heard with the dispute between Lloyd's and BP.

## IV.
### CONCLUSION AND PRAYER

For the foregoing reasons, MOEX respectfully requests that the Court issue an Order allowing it to intervene in the Lloyd's suit and directing the Clerk of the Court to file the attached proposed Complaint in Intervention.

Respectfully submitted,

PILLSBURY WINTHROP SHAW PITTMAN LLP

*/s/ Vincent E. Morgan*
Vincent E. Morgan
Texas Bar No. 24027529
Southern District of Texas ID 30181
Amy P. Mohan
Texas Bar No. 24051070
909 Fannin, Suite 2000
Houston, Texas  77010
Telephone:     713.276.7600
Facsimile:      713.276.7676
vince.morgan@pillsburylaw.com
amy.mohan@pillsburylaw.com

Peter M. Gillon
District of Columbia Bar No. 384995
Geoffrey J. Greeves, T.A.
District of Columbia Bar No. 463035
James P. Bobotek
District of Columbia Bar No. 458375
PILLSBURY WINTHROP SHAW PITTMAN LLP
2300 N Street, NW
Washington, DC 20037-1122
Telephone:     202.663.8000
Facsimile:      202.663.8007
peter.gillon@pillsburylaw.com
geoffrey.greeves@pillsburylaw.com
james.bobotek@pillsburylaw.com

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule 7.6, I hereby certify that counsel for the movant has conferred with counsel for all parties having an interest in opposing this motion and they do not oppose the relief sought in this motion.

                                            */s/ Vincent E. Morgan*
                                            Vincent E. Morgan

**CERTIFICATE OF SERVICE**

I certify that on March 11, 2011, a copy of the above and foregoing **MOEX OFFSHORE 2007 LLC'S REFILED UNOPPOSED MOTION TO INTERVENE AND BRIEF IN SUPPORT** has been filed electronically with the Clerk of the Court using the CM/ECF System. Notice of this filing will be sent to all counsel of record registered to receive electronic service by operation of the court's electronic filing system. I also certify that I have mailed this filing by United States Postal Service to all counsel of record who are not registered to receive electronic service by operation of the court's electronic filing system.

                                            */s/ Vince E. Morgan*
                                            Vincent E. Morgan