IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig § | | MDL NO. 2179 |
| "Deepwater Horizon" in the Gulf § | | |
| of Mexico, on April 20, 2010 § | | |
| § | | SECTION: J |
| § | | |
| This document relates to: § | | JUDGE BARBIER |
| 2:10-CV-3168 § | | MAGISTRATE SHUSHAN |

**MEMORANDUM IN OPPOSITION OF PLAINTIFFS, BILL FRANCIS,
TYRONE BENTON, and CARLOS RAMOS, TO HALLIBURTON ENERGY
SERVICES, INC.'S MOTION TO DISMISS PLAINTIFFS' PETITION
FOR FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6)**

TO THE HONORABLE CARL J. BARBIER, UNITED STATES DISTRICT JUDGE:

Plaintiffs, Bill Francis, Tyrone Benton, and Carlos Ramos, file this Memorandum in Opposition to the Motion to Dismiss Plaintiffs' Petition for Failure to State a Claim under Rule 12(b)(6) filed by Halliburton Energy Services, Inc.'s ["HESI"].

**I.    Plaintiffs' First Amended Complaint moots HESI's Rule 12(b)(6) motion.**

HESI's Rule 12(b)(6) motion is directed to the petition in intervention plaintiffs filed in Texas State Court.  *See* MOTION TO DISMISS (**Document No. 1189**) at p. 1.[1]  However, plaintiffs timely filed their First Amended Complaint (**Document No. 1524**) within 21 days after service of HESI's Rule 12(b)(6) motion.  *See* FED.R.CIV.P. 15(a)(1)(B).[2]  Plaintiffs' Amended Complaint supplants plaintiffs' state-court Petition in Intervention.

---

1   The Court will note that plaintiffs originally filed their Petition in Intervention in Cause No. 2010-25245, *Kleppinger v. Transocean Offshore Deepwater Drilling, Inc., et al.;* in the District Court of Harris County, Texas, 234th Judicial District.  (**Document No. 1-2**, pp. 13-16 in 2:10-CV-3168.  Cameron removed the case without the imely consent of the named defendants.

2   Plaintiffs have alternatively moved for leave to file their First Amended Complaint pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure.  (**Document No. 1553**).  On March 11, 2011, this Court

–1–

Plaintiffs' amendment of their complaint renders HESI's motion moot. *See Williamson v. Wyeth, Inc.*, 2010 WL 3312589 *1 (M.D.La 2010) (concluding amended complaint rendered defendants' motion to dismiss under Rule 12(b)(6) moot).

The Court should deny HESI's motion as moot.[3]

## II.    The "Bundle A" wrongful death/personal injury cases meet the *Twombly/Iqbal* plausibility standard.

Concerned about the rising costs of litigation, and the fairness of requiring parties to expend substantial resources and time on discovery in cases lacking the facial plausibility necessary to ever support a cognizable claim, the Supreme Court attempted to clarify pleading standards under the Federal Rules in *Bell Atlantic Corp v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937 (2009). What the *Twombly/Iqbal* "facial plausibility" standard means has occasioned much debate, and there is no standard answer. As *Iqbal* itself explained, determining plausibility is "a context-specific task" that requires the court to "draw on its judicial experience and common sense." 129 S.Ct. at 1949. In the specific context of these MDL proceedings, this Court may draw on its judicial experience with maritime cases and mass disasters, and its common sense, to rebuff HESI's *Twombly/Iqbal* challenge as unnecessary and counterproductive.

---

granted leave to file. [Document No. 1566].

3   In any event, the Texas pleading standards are more lenient than the federal pleadings-sufficiency standards and, thus the *Twombly/Iqbal* standard does not apply to determine the sufficiency of Plaintiffs' state-court intervention. *CF. Edwea, Inc. v. Allstate Ins. Co.*, 2010 WL 5099607 *6 (S.D.Tex.2010)(holding that the *twombly/Iqubal* sufficiency standard does not apply to the improper-joinder analysis [which is conducted pursuant to Rule 12(b)(a)-type analysis] when the state-court pleadings are more lenient). *See also Warren v. State Farm Mut. Auto Ins. Co.,* 2008 WL 41333377 *4 (N.D.Tex.2008)("Because state court plaintiffs should not be required to anticipate removal to federal court, the court assesses the sufficiency of the factual allegations of [the plaintiff's] complaint under Texas' notice-pleading standard.") HESI makes no attempt to apply the Texas pleading standards to the allegations in plaintiffs' intervention.

### A.     The basics.

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 547.  A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, *id*.  As the Fifth Circuit recently reiterated, "[A] complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. 544, 555).

The Fifth Circuit, in applying and interpreting the *Twombly/Iqbal* standard, has held that when faced with a Rule 12(b)(6) motion to dismiss, that is, a motion to dismiss for failure to plead a claim on which relief can be granted, "courts must . . . accept all factual allegations in the complaint as true." *Lormand v. U.S Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009), *citing Tellabs, Inc. v. Makor Issues and Rights, Ltd.*, 551 U.S. 308 (2007); *Leatherman v. Tarrant County Narcotics Intelligence and Coordination United*, 507 U.S. 163, 164 (1993).  As *Lormand* reminds, "We must also draw all reasonable inferences in the plaintiff's favor."  565 F.3d at 232.

### B.     The rationale.

The fundamental point of the *Twombly/Iqbal* standard is to conserve judicial and party resources for the pleading, discovery, and ultimate proof of contested issues in facially plausible cases, leaving implausible or frivolous suits behind.

According to the Supreme Court's opinion, the *Twombly* complaint alleged that major telecommunications providers had engaged in anticompetitive parallel conduct; the complaint,

–3–

however, lacked any "factual context suggesting agreement, as distinct from identical, independent action." 550 U.S. at 548, 549. In such an antitrust action, "the crucial question" was whether the challenged conduct stemmed "from independent decisions or from an agreement, tacit or express." *Id.* at 553. This was so because "conscious parallelism" "is not in itself unlawful." *Id.* at 554. In *Twombly*, the Supreme Court viewed potential liability as a close call, moreover, it found no allegations in the complaint suggesting that direct or circumstantial evidence would ever make the prospect of liability plausible.

As the *Twombly* court noted, "asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for a reasonable expectation that discovery will reveal evidence of illegal agreement." *Id.* at 556. Thus, "[S]ome threshold of plausibility must be crossed at the outset before a[n] antitrust case should be permitted to go into its inevitably costly and protracted discovery phase." *Id.* at 558, *quoting Asahi Glass Co. v. Pentech Pharmaceuticals, Inc.*, 289 F. Supp. 2d 986, 995 (N.D. Ill. 2003).

In *Twombly*, the Supreme Court empowered district courts to "retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed," because "the costs of modern federal antitrust litigation and the increasing caseload of the federal courts counsel against sending the parties into discovery when there is no reasonable likelihood that the plaintiffs can construct a claim from the events related in the complaint." 550 U.S. at 558. The Supreme Court thus articulated and imposed a facial probability standard because "it is only by taking care to require [such] allegations . . . that we can hope to avoid the potentially enormous expensive discovery in cases with no 'reasonably founded hope that the [discovery] process will

reveal relevant evidence.'"  550 U.S. at 560, *quoting Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 347 (2005).

### C. The plausibility of Deepwater Horizon claims is in the public domain.

Here, it is beyond peradventure that a catastrophic explosion and fire occurred on the Deepwater Horizon, resulting directly in injuries and death among those aboard.  HESI's role, in its broad outlines, and in ever-emerging detail, is likewise known.  It cannot be said that substantial discovery, now ongoing, into the events leading up to the explosion and fire in general, and into HESI's role therein, is not justified in terms of time or expense.  The *Twombly/Iqbal* problem does not exist in this case.  Accordingly, the level of specificity and detail required in the antitrust context of *Twombly*, and the invidious discrimination context of *Iqbal*, should not be required here.

### D. HESI has fair notice of the claims against it.

In addition to establishing a facial plausibility threshold, the purpose of the *Twombly/Iqbal* pleading standard is to give the defendant "fair notice of the claims against it." *Wright v. Shell Offshore, Inc.*, 2001 U.S. Dist. LEXIS 16290, *6 (E.D. La. 2011).  In *Wright*, this Court recently addressed and applied the *Twombly/Iqbal* standards in a maritime context.  The claim arose from exposure to benzene-containing chemicals and solvents while plaintiff worked for various employers aboard various vessels.  Mr. Wright asserted a Jones Act claim of unseaworthiness and maintenance and care against his former employers, and products liability claims against an array of "Manufacturer Defendants."  After Mr. Wright died of acute myelogenous leukemia, wrongful death and survivor claims were added to the suit.  In denying the Rule 12(b)(6) motion, this Court held in *Wright* that plaintiffs had "sufficiently pled enough facts to give defendant 3M Company fair notice of the claims against it in order to survive dismissal under Rule 12(b)(6).", and that "plaintiffs' lack

of certain specific factual allegations as to defendant 3M Company does not necessitate a dismissal of those claims. The court finds that plaintiffs have pled enough facts to state a claim for relief that is plausible on its face and to give defendant 3M Company fair notice of those claims." *Wright*, *id.* at **6-7.

Comparing the disposition in the *Wright* action (denial of the dismissal motion) to the factual and procedural context here, it is reasonable to expect that HESI's motion will be similarly denied. Mr. Wright's exposure to benzene was long term (from 1976 to 2009), and occurred in the employ of various defendants at various locations. In stark contrast, the claims for personal injury and wrongful death against HESI arose from one incident, at one time and place, in a catastrophic incident that indisputably implicated the products and conduct of HESI and others. The causal connection between benzene exposure and leukemia remains controversial; indeed, defendants might argue the connection is implausible. There can be no such implausibility argument with respect to the causal connection between the Deepwater Horizon explosion and fire, and the deaths and injuries alleged in the complaints coordinated in this MDL litigation.

HESI's precise percentage of fault and/or liability is disputed, true; but at this point, given ongoing inquiries, discovery, and governmental reports, much is known factually about HESI's role. While this was not known to plaintiffs when they filed their initial complaints, it is known to HESI now, and it is matter of both ongoing discovery under the auspices of this Court, and of other public inquiries. HESI cannot claim it is not on fair notice to defend itself; indeed, HESI's counsel have been ably doing just that.

The question that must be asked is whether at this stage of the litigation, requiring plaintiffs to amend their complaints to provide further factual detail will "expose the facts, ventilate the

competing positions or further adjudication on the merits." Arthur R. Miller, *Conley to Twombly to Iqbal: A Double Play on the Federal Rules of Civil Procedure*, 60 Duke L.J. 1, 3 (October, 2010). If it does not, no purpose is served by invoking *Twombly/Iqbal* after HESI has been put on fair notice of the legal claims and factual theories it faces from the plaintiffs in these cases.

   **E.     Contextual plausibility, judicial experience and common sense.**

*Twombly* requires "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The concise complaints challenged by HESI meet this standard in the factual and legal context of the *Deepwater Horizon* litigation. With respect to the wrongful death and personal injury claims of those on board the rig, the claim does not turn on the arcane choice between "conscious parallelism" and a *sub rosa* antitrust conspiracy, as it did in *Twombly*. The Deepwater Horizon's demise is more akin to *res ipsa loquitur*, and no more need be pleaded than the facts that the Bundle A Complaints allege: that HESI was engaged in cementing operations and cement supply for the rig.

HESI criticizes complaints such as the *Jones* Complaint for alleging in "conclusory fashion" that HESI was negligent "in the cementing of the well and well cap" and "in performing other operations" on the rig.[4] However, as the Presidential Oil Spill Commission reported recently, on February 17, 2011, HESI's negligence in its cementing activities is indeed implicated in the blowout. The "root technical cause" of the blowout and spill was a failure of "the cement that BP and HESI pumped to the bottom of the well." *See, e.g.*, Jennifer A. Dlouhy (*Houston Chronicle*, *Washington Bureau*) "Spill Panel Blames Lax Oversight Of Well Cementing," February 11, 2011.

---

4     HESI Omnibus Memorandum at p. 6, citing Jones Complaint at ¶ 10.

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 129 S. Ct. at 1949. Here, that factual content, concise as it is (and it was concise of necessity, since these complaints were originally filed in the immediate wake of the explosion and spill) are now echoed in the exact language of official investigative reports. Contrary to HESI's arguments, Plaintiffs' "assertions of negligence and other torts" are more than "dressed-up legal conclusions" and they are indeed "entitled to the assumption of truth" for purposes of going forward, via discovery, to trial.[5]

The transformation of the familiar Fed. R. Civ. P. 8 "short and plain statement of the claim" requirement to the more nuanced and subjective *Twombly/Iqbal* standards, places "plausibility in the eye of the beholder." *See* Miller, 60 Duke L.J. at 18. The Supreme Court intended it to be so. The judicial beholder is now called upon to draw from his or her wisdom and discretion in enabling cases to advance from pleading, to discovery, to trial. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." 129 S. Ct. at 1949.

In this case, the parties are fortunate. This Court's judicial experience and common sense embodies not only years of experience with maritime and admiralty cases, how they are pleaded, how they are discovered, and how they are tried and proved, but also includes mastery of the unfolding facts and procedural context of the coordinated MDL 2179 proceedings over which it presides. These proceedings include not only the Bundle A Complaints, but comprehensive B1 and B3 Master Complaints that describe the events leading up to, constituting, and following the Deepwater Horizon explosion and spill, and the conduct of HESI and others, in abundant detail. In

---

5  *See* HESI's Omnibus Memorandum at p. 13.

this "context-specific" frame, the personal injury and wrongful death complaints cannot be consigned, consistent with judicial experience or common sense, to the realm of implausibility. They are entitled to proceed.

*Twombly* and *Iqbal* have their justification in the legitimate quest to reduce cost and delay in civil litigation, and to conserve the resources of the courts and of the parties. These goals are not promoted by requiring the Bundle A plaintiffs to amend their complaints to include the voluminous detail now available about HESI's conduct and its cement product, and their roles in causing and/or exacerbating the explosion and fire, and resulting injuries and deaths. While such amendment is certainly possible at this juncture, and will be done promptly should this Court so order, plaintiffs respectfully submit it is unnecessary and should not be required.

In sum, HESI has fair notice of the facts underlying plaintiffs' claims and of the claims against it. Accordingly, HESI's motion should be denied.

## III.    Plaintiffs' Amended Complaint cures all of HESI's complaints.

In the further alternative to the foregoing arguments, plaintiffs' amended complaint cures HESI's Rule 12(b)(6) complaints.

### A.    Plaintiffs do not allege that HESI is a Jones-Act defendant.

HESI seeks dismissal of plaintiffs' Jones Act claims against it on the ground that HESI was not plaintiffs' employer. HESI'S MOTION TO DISMISS (**Doc. No. 1189**) ¶ 1 at p. 1. However, plaintiffs do not allege that HESI is a Jones-Act defendant.

In their Amended Complaint, plaintiffs Bill Francis and Carlos Ramos assert that they were employed as Jones-Act seamen by Transocean Offshore Deepwater Drilling, Inc.; plaintiff Tyrone

Benton asserts he was employed as a Jones-Act seaman by Oceaneering International Inc. (**Document No. 1567**¶¶ 14, 15). Plaintiff Benton further alleges that he was a borrowed servant of defendants, the Transocean Entities and the facts underlying that allegation. *Id.* ¶¶ 16-18.

Because plaintiffs assert no Jones Act claims against HESI, there are no such claims to dismiss.[6]

### B.     Plaintiffs' Amended Complaint survives dismissal under Rule 12(b)(6).

Plaintiffs' Amended Complaint cures HESI's assertion that plaintiffs "do not plead *any* facts supporting their claims against HESI or *any* facts as to their purported personal injuries." HESI's OMNIBUS MEMORANDUM (**Doc. No. 1195**) ¶ 3 at p. 11 (emphasis in original). Plaintiffs' Amended Complaint contains numerous, detailed factual allegations concerning HESI's conduct, the theories of liability against HESI, and the injuries and damages plaintiffs sustained. (**Document No. 1567**, ¶¶ 19-23, 28-32 [incorporating by reference allegations from B1 Bundle Complaint/**Document No. 1128** and from Rule 14(c) Third-Party Complaint/**Document No. 1320**]). Plaintiffs briefly summarize those facts and claims below.

### *HESI's involvement in the accident giving rise to this suit.*

HESI provided engineering services, materials, testing, mixing, and pumping for cementing operations on board the Deepwater Horizon, as well as onshore engineering support for those operations. **Doc. No. 1128** ¶ 226. HESI was responsible for the provision of technical advice about the design, modeling, placement, and testing of the cement that was used in the well. *Id.* At and

---

[6]     HESI also contends that any claims for unseaworthiness, and for maintenance and cure, should likewise be dismissed. HESI's OMNIBUS MEMORANDUM ¶¶ 1(B), 2 at pp. 8-11. However, plaintiffs do not assert claims for maintenance and cure against HESI. (**Document No. 1567** ¶¶ 25-27.) Plaintiffs do not make any unseaworthiness complaint against HESI, nor do they incorporated into their Amended Complaint any unseaworthiness allegations against HESI from the B1 Bundle Complaint or from the Rule 14(c) Complaint.

–10–

before the time of the blowout, HESI was engaged in cementing operations to isolate the hydrocarbon reservoirs and seal the bottom of the well against the influx of hydrocarbons like gas and oil. *Id.*

On April 20, 2010, HESI's workers on the Deepwater Horizon vessel were among those persons who lost control of the subsea oil well that had been nearly completed. *Id.* ¶ 258.[7] When highly pressurized hydrocarbons leaked into the well, the vessel's emergency equipment failed to stop the oil and gas from blowing out of the well, which led to explosions and a fire on the Deepwater Horizon, and ultimately the sinking of the vessel. *Id.*

Prior to the explosions, fire, and sinking of the vessel, HESI had actual and/or constructive knowledge that its safety performance during offshore drilling operations was poor. *Id.* ¶ 288. Also prior to the explosions, fire, and sinking of the vessel, HESI had actual and/or constructive knowledge of significant problems related to the Deepwater Horizon's equipment and maintenance, including problems with the vessel's BOP, electronic alarm systems, ballast systems used to stabilize the vessel in the water, and other significant deficiencies that could "lead to loss of life, serious injury or environmental damage as a result of inadequate use and/or failure of equipment." *Id.* ¶ 289.

The following is a summary of the allegations concerning HESI's conduct leading up to and resulting in the explosions, fire, and sinking of the vessel:

- Emphasizing speed and thrift over safety, leading to errors and omissions, which, in turn, caused and/or contributed to the blowout and subsequent sinking of the well. *Id.* ¶¶ 291 through 301;

---

7   The Court will note that HESI is defined as a "Drilling Defendant" in the B1 Bundle Complaint because it is among those defendants involved in the drilling, cementing, and other temporary well abandonment activities of the Deepwater Horizon. **Doc No. 1128** ¶ 229.

–11–

- Engaging in reckless decision-making in the rush to complete the well. *Id.* ¶¶ 303 through 307;

- Cutting corners on well design. *Id.* ¶¶ 308 through 322;

- The use of too few centralizers. *Id.* ¶¶ 323 through 326;

- Skipping the critical "bottoms up" mud-circulation method (the failure to fully circulate the drilling mud through the entire length of the well before beginning the cementing job). *Id.* ¶¶ 327 through 332;

- The use of the incorrect cement mixture and a failed seal. *Id.* ¶¶ 333 through 354;

- The failure to use the crucial "bond log" tests of cement integrity, or to otherwise stop the work or insist that BP run the test. *Id.* ¶¶ 355 through 361;

- Permitting BP to begin mud displacement before HESI's cement job had successfully isolated the hydrocarbon reservoirs and sealed the well. *Id.* ¶ 365;

- Continuing the well completion plan after the well failed key pressure tests; engaging in grossly negligent conduct by ignoring the pressure test results and not insisting that a remedial cement job be done right away to correct the imperfections in the cement. *Id.* ¶¶ 369 through 380;

- Using an unorthodox spacer fluid mixture and volume, which potentially interfered with pressure tests and BOP functionality. *Id.* ¶¶ 381 through 386;

- Ignoring and overlooking warning signs of the imminent blowout. *Id.* ¶¶ 387 through 402;

- Inattention to proper well monitoring during the mud displacement process and the use of woefully inadequate policies and instructions regarding well control procedures for vessel workers. *Id.* ¶¶ 403 through 410;

- Ignoring Transocean's infrequent and inadequate maintenance; failing to address leaks in the hydraulic system of the Macondo well's BOP; failing to update the BOP's schematic design to reflect aftermarket changes, failing to address problems with the faulty solenoid valve, poor battery maintenance, hydraulic fluid leaks, and aftermarket modifications on the BOP before the April 20, 2010, incident; failing to install backup BOP activation systems, backup BOPs or other secondary redundant precautionary measures available to protect the vessel, its workers, plaintiffs, and the environment from the catastrophic results of a well blowout; and failing to ensure that the BOP present on the Deepwater Horizon possessed reasonably safe, adequate, functional technology to prevent blowouts. *Id.* ¶¶ 415 through 448;

- Failing to report to the Minerals Management Service Transocean's poor maintenance of the Deepwater Horizon and its practice of disabling or bypassing vital safety systems and alarms. *Id.* ¶¶ 450 through 460;

- Failing and refusing to take serious risks seriously enough and failing to identify risks that proved to be fatal because of a culture of complacency; violating regulatory mandates, causing and/or contributing to the well blowout and subsequent explosions, fire, and sinking; engaging in a history of foolhardy, irresponsible behavior across its operations on land and at sea; all of which contributed to the failure of safety mechanisms, exacerbated the disaster, and likely caused unnecessary deaths and injuries of vessel workers, and the destruction of the Deepwater Horizon. *Id.* ¶¶ 461 through 477.

As the foregoing summary of the factual allegations reveals, plaintiffs' Amended Complaint goes far beyond the *Twombly/Iqbal* standards, especially since "detailed factual allegations" are not even required. *See Cuvillier v. Taylor*, 503 F.3d at 401.

### *Plaintiffs' claims and causes of action against HESI.*

Plaintiffs also incorporated from the Rule 14(c) Complaint the following claims and causes of action against HESI:

- HESI owed and breached duties of ordinary and reasonable care in connection with the drilling operations owed and breached duties to the plaintiffs to guard against and/or prevent the risk of an oil spill;

- HESI failed to exercise reasonable care in conducting its cementing, testing, analysis, and monitoring of the Macondo Well;

- HESI was negligent by failing to use a full "bottoms-up" circulation of mud between the running of the casing and the beginning of the cement job;

- HESI failed to properly monitor the Macondo Well, including mud pit fluid levels, mud flow in and out of the well, mud gas levels, and pressure fluctuations;

- HESI was negligent in failing to require comprehensive lab testing to ensure the density of the cement;

- HESI was negligent in failing to heed the results of negative pressure testing;

–13–

- HESI was negligent in cancelling, or acquiesced in the cancellation of, the cement bond log test;

- HESI failed to deploy, or acquiesced in the decision not to deploy, the casing hanger lock-down sleeve to prevent the wellhead and seal from being blown out by pressure from below.

*See* Rule 14(c) Complaint (**Doc. No. 1320**), ¶ XLVI [incorporated by reference into plaintiffs' First Amended Complaint in paragraph 23]. *See also* B1 Bundle Complaint (**Doc. No. 1128**) ¶¶ 141 through 153, 168 through 173, 194 through 196, 570 through 613, 629 through 656, 658 through 675, and 749 through 769 [incorporated by reference into plaintiffs' First Amended Complaint in paragraph 22]. Finally, plaintiffs have pleaded in detail the nature of the injuries and damages they sustained. **Doc. No. 1567** ¶¶ 28 through 32.

### *Punitive Damages are Available.*

*Exxon Shipping Co. v. Baker,* 554 U.S. 471, 128 S. Ct. 2605 (U.S. 2008) established a punitive damages under general maritime law. While it was in the context of a non-personal injury case, it should be applied here considering it recognized that "'it better comes the humane and liberal character of proceeding in admiralty to give than to withhold the remedy, when not required to withhold it by established and inflexible rules.'" *Id.* at 523 (Scalia, J., concurring).

*Alt. Sounding Co., Inc. v. Townsend*, 129 S. Ct. 2561 (2009) also identifies a trend that punitive damages are available in maritime cases.

In sum, plaintiffs' detailed allegations of the underlying theories of recovery against HESI constitute much more than the "dressed-up legal conclusions" HESI asserts in its Omnibus Memorandum. *See* **Doc. No. 1195** ¶ 3 at p. 13. Because plaintiffs have pleaded enough facts to state a claim for relief that is plausible on its face and to give HESI fair notice of those claims, HESI's motion to dismiss should be denied. *See Wright v. Shell Offshore, Inc.*, 2011 WL 690530 at *1-2.

For the reasons stated here, and in the accompanying Memorandum, plaintiffs respectfully request that Defendant Halliburton Energy Services, Inc.'s Motion to Dismiss Plaintiffs' Petition for Failure to State a Claim Under Rule 12(b)(6) be in all things denied.

                        SCHECHTER, MCELWEE, SHAFFER, & HARRIS, L.L.P.

                        */s/Matthew D. Shaffer*
                        MATTHEW D. SHAFFER
                        State Bar No. 18085600
                        Fed I.D. No. 8877
                        DENNIS M. MCELWEE
                        State Bar No. 13587820
                        Fed I.D. No. 7490
                        ARTHUR L. SCHECHTER
                        State Bar No. 17735000
                        Fed I.D. No. 1454
                        3200 Travis, 3rd Floor
                        Houston, Texas  77006
                        Tel:  713-524-3500
                        Fax:  713-751-0412
                        mshaffer@smslegal.com
                        dmcelwee@smslegal.com
                        arthurschechter@gmail.com

                        and

                        PAUL M. STERBCOW (#17817)
                        Lewis, Kullman, Sterbcow & Abramson
                        601 Poydras Street, Suite 2615
                        New Orleans, Louisiana  70130
                        Tel:  (504) 588-1500
                        Fax: (504) 588-1514
                        sterbcow@lksalaw.com
                        ATTORNEYS FOR PLAINTIFFS, BILL FRANCIS,
                        TYRONE BENTON, and CARLOS RAMOS

**CERTIFICATE OF SERVICE**

       I certify that the above and foregoing Memorandum in Opposition of Plaintiffs, Bill Francis, Tyrone Benton, and Carlos Ramos, to Halliburton Energy Services, Inc.'s Motion to Dismiss Plaintiffs' Petition for Failure to State a Claim Under Rule 12(b)(6) will be served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in Accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System which will send a notice of electronic filing in accordance with the procedures established in MDL 217, on this 11th day of March, 2011.

                              */s/Matthew D. Shaffer*
                              MATTHEW D. SHAFFER