## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **IN RE:  OIL SPILL by the OIL RIG** | § | **MDL No. 2179** |
| **"DEEPWATER HORIZON" in the** | § | |
| **GULF OF MEXICO on** | § | **SECTION: J** |
| **APRIL 20, 2010** | § | |
| | § | |
| | § | |
| This pleading applies to: | § | **Judge Carl J. Barbier** |
| | § | **Magistrate Judge Sally Shushan** |
| **All cases in  Pleading Bundle** | § | |
| **Section III.B(1) (the "B1 Bundle")** | § | |
| | § | |
| This pleading applies to: | § | |
| | § | |
| *No. 2:10-CV-2771* | § | |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT M-I L.L.C.'s MOTION TO DISMISS BUNDLE B1 ECONOMIC DAMAGES CLAIMS

**MORGAN, LEWIS & BOCKIUS LLP**

Hugh E. Tanner
htanner@morganlewis.com
Denise Scofield
dscofield@morganlewis.com
Shannon A. Lang
slang@morganlewis.com
James B. Tarter
jtarter@morganlewis.com
1000 Louisiana St., Suite 4000
Houston, TX 77002
Telephone: 713.890.5000
Facsimile: 713.890.5001

**ATTORNEYS FOR DEFENDANT
M-I L.L.C.**

March 11, 2011

## TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................................ 1
STATEMENT OF FACTS............................................................................................................ 3
ARGUMENT .................................................................................................................................. 4

I.   OPA And OCSLA Preempt all Maritime And State Law Claims for Oil Spill-
     Related Damages........................................................................................................... 6

     A.  Plaintiffs Have No Cognizable Maritime Law Claims against M-I. ............................ 6

     B.  Plaintiffs' State Law Claims Are Foreclosed By OCSLA............................................ 9

II.  Pursuant to OPA, M-I Can Not Be Sued Directly By
     Persons Injured by an Oil Spill................................................................................. 12

     A.  This Court Lacks Jurisdiction To Decide The Claims Of Any Plaintiffs That Have
         Not Satisfied OPA's Presentment Provisions............................................................. 12

     B.  Even If Plaintiffs Satisfy The Presentment Requirements Of OPA, Their Sole
         Remedy Lies Against The Responsible Party(ies) Designated Under OPA—Not
         Against M-I................................................................................................................. 14

III. To the Extent Any Maritime Law Claims Survive, the Economic Loss Rule Bars
     These Claims............................................................................................................... 15

IV.  To The Extent Any State Law Claims Survive, The Property Plaintiffs
     Have Failed To Plead Claims For Relief Under Applicable Law............................... 16

     A.  Plaintiffs Fail To State a Claim For Nuisance because the Deepwater Horizon Was
         Not Their "Neighbor."............................................................................................... 18

     B.  Plaintiffs Fail To State A Claim For Trespass. .......................................................... 18

         i.    To recover for trespass, a plaintiff must have suffered a physical invasion..... 19
         ii.   Only property owners may recover for trespass. ............................................. 19

V.   Plaintiffs Have Pled No Claim Entitling Them To Punitive Damages Against M-I. 19

     CONCLUSION ................................................................................................................ 20

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.*,
  51 F.3d 235 (11th Cir. 1995) ....................................................................................13

*Clausen v. M/V New  Carissa*,
  171 F. Supp. 2d 1127 (D. Or. 2001) ..........................................................................6

*EP Operating Ltd. P'ship v. Placid Oil Co.*,
  26 F.3d 563 (5th Cir. 1994) ..................................................................................6, 10

*Gabarick v. Laurin Maritime (Am.) Inc.*,
  623 F. Supp. 2d 741 (E.D. La. 2009)...............................1, 6, 7, 8, 9, 12, 13, 14

*Gabarick v. Lauren Mar. (Am.), Inc.*,
  No. 08-04007, 2008 WL 3560426 (E.D. La. Aug. 11, 2008) ..............................8

*Gov't of the Canal Zone v. Burjan*,
  596 F.2d 690 (5th Cir. 1979) ....................................................................................17

*Gulf Offshore Co. v. Mobile Oil Corp.*,
  453 U.S. 473 (1981).......................................................................................2, 10, 11

*In re Katrina Canal Breaches Consolidated Litigation*
  647 F. Supp. 2d 644 (E.D. La. 2009) .......................................................................18

*In re Settoon Towing LLC*,
  No. 07-1263, 2009 WL 4730969 (E.D. La. Dec. 4, 2009) ...................................9

*In re Settoon Towing LLC*,
  No. 07-1263, 2009 WL 4730971 (E.D. La. Dec. 4, 2009) ...................................9

*In re Taira Lynn Marine Ltd. Number 5, LLC*,
  444 F.3d 371 (5th Cir. 2006) ....................................................................................16

*Johnson v. Colonial Pipeline Co.*,
  830 F. Supp. 309 (E.D. Va. 1993) ...........................................................................12

*LeSassier v. Chevron USA, Inc.*,
  776 F.2d 506 (5th Cir. 1985) ....................................................................................11

*Marathon Pipe Line Co. v. La Roche Indus. Inc.*,
  944 F. Supp. 476 (E.D. La. 1996).............................................................................13

*Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atl. Corp.*,
  924 F. Supp. 1436 (E.D. Va. 1996) ...................................................................7

*Nations v. Morris*,
  483 F.2d 577 (5th Cir. 1973) .........................................................................11

*Nw. Airlines, Inc. v. Transp. Workers Union of Am.*,
  51 U.S. 77 (1981) ...........................................................................................7

*Reserve Mooring Inc. v. Am. Commercial Barge Line, LLC*,
  251 F.3d 1069 (5th Cir. 2001) .......................................................................16

*Rice v. Harken Exploration Co.*,
  89 F. Supp. 2d 820 (N.D. Tex. 1999) ...............................................................7

*Robins Dry Dock & Repair Co. v. Flint*,
  275 U.S. 303 (1927).....................................................................................3, 15

*Rodrigue v. Aetna Cas. & Sur. Co.*,
  395 U.S. 352 (1969).....................................................................................2, 10

*Ronquille v. MMR Offshore Servs., Inc.*,
  353 F. Supp. 2d 680 (E.D. La. 2004) .............................................................17

*S. Port Marine, LLC v. Gulf Oil Ltd. P'ship*,
  234 F.3d 58 (1st Cir. 2000)...............................................................5, 6, 11, 20

*Snyder Oil Corp. v. Samedan Oil Corp.*,
  208 F.3d 521 (5th Cir. 2000) .........................................................................17

*Tanguis v. M/V Westchester*,
  153 F. Supp. 2d 859 (E.D. La. 2001) ...............................................................7

*Tenn. Gas Pipeline v. Houston Cas. Ins. Co.*,
  87 F.3d 150 (5th Cir. 1996) .........................................................................4, 10

*Texaco Exploration & Prod. Inc. v. AmClyde Engineered Prods. Co.*,
  448 F.3d 760 (5th Cir. 2006) ..........................................................................10

*TS&C Invs. LLC v. Beusa Energy Inc.*,
  344 F. App'x 907, 908-09 (5th Cir. 2009) ......................................................18

*United States v. California*,
  332 U.S. 19 (1947)..........................................................................................10

*United States v. M/V Big Sam*,
   681 F.2d 432 (5th Cir. 1982) ........................................................................8

*United States v. Oswego Barge Corp.*,
   664 F.2d 327 (2d Cir. 1981)..........................................................................8

*W. Oil & Gas Ass'n v. Sonoma Cnty.*,
   905 F.2d 1287 (9th Cir. 1990) .....................................................................10

## STATE CASES

*Bourquard v. L.O. Ausauma Enters., Inc.*,
   52 So. 3d 248, 251 (La. Ct. App. 2010).....................................................19

*Borland v. Sanders Lead Co.*,
   369 So. 2d 523 (Ala. 1979) .........................................................................19

*City of Arlington v. City of Fort Worth*,
   873 S.W.2d 765 (Tex. App. 1994) ..............................................................19

*Donald v. Amoco Prod. Co.*,
   735 So. 2d 161 (Miss. 1999) .......................................................................19

*Gregg v. Delhi-Taylor Oil Corp.*,
   344 S.W.2d 411 (Tex. 1961) .......................................................................19

*Holubec v. Brandenberger*,
   214 S.W.3d 650 (Tex. App. 2006)...............................................................20

*LaRue v. Crown Zellerbach Corp.*,
   512 So. 2d 862 (La. Ct. App. 1987).............................................................19

*Monty v. Hayward*,
   451 So. 2d 938 (Fla. Dist. Ct. App. 1984) ..................................................20

*Petroleum Prods. Corp. v. Clark*,
   248 So. 2d 196 (Fla. Dist. Ct. App. 1971) ..................................................19

*Rice v. Merritt*,
   549 So. 2d 508 (Ala. Civ. App. 1989) .........................................................20

*Ross v. Conoco, Inc.*,
   828 So. 2d 546 (La. 2002) ...........................................................................20

*Seale v. Pearson,*
    736 So. 2d 1108 (Ala. Civ. App. 1999) ...........................................................................20

*Southland Co. v. Aaron,*
    80 So. 2d 823 (Miss. 1955) .................................................................................................20

## FEDERAL STATUTES

33 U.S.C. § 2701 ...................................................................................................... *passim*

33 U.S.C. § 2702 ......................................................................................2, 5, 6, 15, 16

33 U.S.C. § 2709 ..............................................................................................2, 6, 15

33 U.S.C. § 2710 .........................................................................................................15

33 U.S.C. § 2713 .............................................................................................2, 12, 14

33 U.S.C. § 2718(a)(1)(A) .........................................................................................11

43 U.S.C. § 1331 ...................................................................................................... *passim*

43 U.S.C. § 1333 ........................................................................................1, 10, 11, 17

43 U.S.C. § 1349(b)(1) ..............................................................................................10

43 U.S.C. § 1802 ....................................................................................................5, 10

Fed. R. Civ. P. 9(h)(1)..................................................................................................4

Fed. R. Civ. P. 12(b)(1)..........................................................................................1, 13

Fed. R. Civ. P. 12(b)(6)..........................................................................................1, 19

## STATE STATUTES

La. Civ. Code Ann. art. 667 .......................................................................................18

## OTHER AUTHORITIES

135 Cong. Rec. 7965 (1989) ....................................................................................5, 14

S. Rep. No. 101-94 (1989) ........................................................................................7, 13

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs allege wide-ranging injuries against Defendant M-I L.L.C. ("M-I") and others related to M-I's role on the *Deepwater Horizon*.  Though M-I was merely a service provider without authority to direct drilling operations on the *Deepwater Horizon*, and even though M-I is not a "Responsible Party" under relevant law, Plaintiffs contend that M-I is fully liable for alleged injuries suffered following the blowout and oil spill.  But Plaintiffs' four claims fail to state a claim on which relief can be granted and must be dismissed.  *See* FED. R. CIV. P. 12(b)(6).  Plaintiffs' claims also fail for lack of subject-matter jurisdiction and must be dismissed on this basis as well.  *See* FED. R. CIV. P. 12(b)(1).

Two federal statutes govern the resolution of Plaintiffs' claims:  the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. § 2701 *et seq.*, and the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1331 *et seq.*  These statutes provide Plaintiffs with sweeping remedies for their alleged harms and foreclose the general maritime and state law claims asserted against M-I.

***First***, OPA was created to provide a comprehensive statutory framework to address economic harms caused by an oil spill.  It provides the sole remedy for Plaintiffs' economic loss and property damage claims as OPA preempts and displaces general maritime law claims for damages recoverable under its provisions.  *Gabarick v. Laurin Mar. (Am.) Inc.*, 623 F. Supp. 2d 741, 750 (E.D. La. 2009).  Because Plaintiffs seek to recover damages specifically provided for by OPA, their general maritime law claims must be dismissed.

OPA, through its interaction with OCSLA, forecloses Plaintiffs' state law claims as well.  Through OCSLA, Congress made clear its intention that oil and gas exploration and development on the Outer Continental Shelf be subject to exclusive federal jurisdiction and that, with few exceptions not applicable here, federal law alone governs conduct and liability related to such activities.  43 U.S.C. § 1333(a).  Under OCSLA, it is only the law of an adjacent state—

in this case, Louisiana—that may potentially be borrowed as surrogate federal law, but only where necessary to fill a "substantial gap[]" or "void[]" in federal law on "artificial islands and fixed structures" on the Outer Continental Shelf.  *Gulf Offshore Co. v. Mobile Oil Corp.*, 453 U.S. 473, 480 (1981) (internal quotations omitted); *see also Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352, 358 (1969).  There is no such gap or void here.  Accordingly, Plaintiffs' state law claims must be dismissed.

*Second*, until and unless Plaintiffs satisfy OPA's presentment requirement, this Court cannot exercise jurisdiction over Plaintiffs' claims.  OPA is the exclusive law governing claims for oil spill-related damages.  Through OPA, Congress created a mandatory condition precedent that all claims for oil spill-related damages be presented to the Responsible Party before filing suit.  33 U.S.C. § 2713.  To the extent that any Plaintiff has failed to satisfy this mandatory presentment requirement under OPA, this Court lacks jurisdiction to hear that Plaintiff's claim, and the claim should be dismissed.

Moreover, even if a Plaintiff subsequently satisfies OPA's presentment requirement and can invoke this Court's jurisdiction, Plaintiffs may only seek relief from the Responsible Party(ies).  By its plain language, OPA provides for recovery of oil spill-related damages directly and exclusively from the Responsible Party(ies), who can in turn seek contribution against any other person believed to be liable or potentially liable for causing the damages.  *See* 33 U.S.C. §§ 2702, 2709.  Consistent with Congress's goal to provide a streamlined process for injured persons to recover oil spill-related damages, OPA does not permit direct actions against non-responsible third parties such as M-I.  Thus, even if Plaintiffs properly present their claims under OPA, they do not have a direct right of action against M-I for oil spill-related damages.  All claims seeking such damages must be dismissed.

*Third*, notwithstanding OPA preemption, Plaintiffs' maritime law claims are additionally barred under the Economic Loss Rule, which precludes recovery for pure economic losses in the absence of physical injury to a proprietary interest. *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303 (1927). Certain Plaintiffs allege no such physical injury, which is fatal to their claims.

*Fourth*, to the extent state claims are not preempted by federal law, Plaintiffs have failed to plead cognizable claims for relief under applicable state law.

*Finally*, to the extent Plaintiffs are seeking punitive damages from M-I, their claim is foreclosed under applicable law.

## STATEMENT OF FACTS

In June 2008, Defendant BP Exploration & Production ("BP") acquired a lease from the U.S. government to explore and develop hydrocarbon reserves on a site in the Gulf of Mexico, 48 miles south of Louisiana on the Outer Continental Shelf. Plaintiffs' Amended B1 Master Complaint ("Compl.") ¶¶ 210, 272. BP contracted with a number of oilfield service providers to drill the "Macondo" well at this site, among them, Defendant Transocean, which owned and operated the *Deepwater Horizon* drilling rig. *Id.* ¶ 225. BP also contracted with other service providers, including M-I, which provided drilling fluids on the rig. M-I, as a service provider for BP, did not and is nowhere alleged to have exercised responsibility for drilling operations on the rig.

On April 20, 2010, an explosion and fire occurred aboard the *Deepwater Horizon* while it was in the final stages of drilling the Macondo well. The rig subsequently sank, severing a pipe connecting the vessel to the wellhead on the ocean floor and leading to the release of oil. *Id.* ¶ 198–99. In the aftermath of the accident, the Coast Guard designated Defendant BP

Exploration & Production the "Responsible Party" for the subsea release of oil under the Oil Pollution Act ("OPA").[1]  *Id*. ¶ 680.

Despite the U.S. government's designation of BP as the Responsible Party for the subsea release of oil from the Macondo well, within days of the accident on the rig, the first of hundreds of lawsuits were filed in courts throughout the country, with some plaintiffs alleging that M-I is liable for their injuries.  Following the creation of this multi-district litigation, Plaintiffs filed their Master Complaint for Pleading Bundle B1 on behalf of private individuals and entities alleging economic loss or property damage stemming from the oil spill.  Plaintiffs designated their Complaint as an admiralty or maritime case under Federal Rule of Civil Procedure 9(h)(1). *Id*. ¶ 253.  On January 12, 2011, the Court issued Pre-Trial Order 25, which provided Defendants thirty days from the date of the Order to file their responsive pleadings.  Plaintiffs' Steering Committee subsequently granted M-I a thirty-day extension to respond.

Plaintiffs allege four causes of action against M-I: (i) negligence under general maritime law; (ii) gross negligence under general maritime law; (iii) state law claims for nuisance; and (iv) state law claims for trespass.

## ARGUMENT

A comprehensive federal regulatory and liability scheme, set forth in OCSLA and OPA, governs oil exploration and development on the Outer Continental Shelf.[2]  The Outer Continental Shelf has long been subject to special congressional attention and oversight.  OCSLA establishes "national authority over the Outer Continental Shelf at the expense of both foreign governments and the governments of the individual states."  *Tenn. Gas Pipeline v. Houston Cas. Ins. Co.*, 87

---

[1] Transocean was designated a Responsible Party for the release of oil on the surface of the water.  Compl. ¶ 680.

[2] In their memoranda of law in support of their motions to dismiss Plaintiffs' Amended B1 Master Complaint, Co-Defendants BP, Transocean, Halliburton, Weatherford, and Cameron provide a thorough explanation of the history

F.3d 150, 153 (5th Cir. 1996).  In enacting OCSLA and assuming such broad authority over subsea lands adjacent to, but outside of, the territorial control of the states, Congress sought to address the country's energy needs while protecting the environment and the public and private interests impacted by oil and gas development on the Outer Continental Shelf.  *See* 43 U.S.C. § 1802.

Following the Exxon Valdez oil spill in Alaskan territorial waters in 1989, Congress revisited its approach to compensating parties injured as a result of an oil spill.  Passed in 1990, OPA is "a comprehensive federal scheme for oil pollution liability."  *S. Port Marine, LLC v. Gulf Oil Ltd. P'ship*, 234 F.3d 58, 64 (1st Cir. 2000).  Under Congress's scheme, persons damaged as a result of an oil spill are entitled to wide-ranging recovery from a "Responsible Party" under strict liability provisions intended to quickly compensate injured parties "without resort to cumbersome litigation."  135 CONG. REC. 7965 (1989).  Injured private parties are entitled to prompt payment from the Responsible Party for, *inter alia*:  (a) ***removal costs***—"costs incurred by any person for acts taken by the person which are consistent with the National Contingency Plan"; (b) ***real or personal property damage***—"[d]amages for injury to, or economic losses resulting from destruction of, real or personal property"; (c) ***subsistence use damages***— "[d]amages for loss of subsistence use of natural resources, which shall be recoverable by any claimant who so uses natural resources which have been injured, destroyed, or lost, without regard to the ownership or management of the resources"; and (d) ***profits and earning capacity***—"[d]amages equal to the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources."[3]  33 U.S.C. § 2702(b).  Litigation, where necessary, is designed to take place among potentially liable

---

of OCSLA and OPA and describe in detail OPA's compensatory scheme.  In the interest of preserving judicial resources, M-I does not repeat that history here, but instead refers the Court to Co-Defendants' Memoranda.

companies via indemnity, subrogation, and contribution actions brought by the Responsible Party.  *See* 33 U.S.C. § 2709; *Gabarick*, 623 F. Supp. 2d at 750.

OPA provides the sole and exclusive federal remedy for persons harmed by an oil spill anywhere within the federal government's jurisdiction.  However, where injuries occur as a result of alleged wrongdoing on the Outer Continental Shelf, OCSLA's "broad substantive net" operates in conjunction with OPA to ensure that injured parties are compensated without upsetting Congress's intent that OCSLA "govern the full range of potential legal problems that might arise in connection with operations on the Outer Continental Shelf."  *EP Operating Ltd. P'ship v. Placid Oil Co.*, 26 F.3d 563, 569 (5th Cir. 1994) (internal citation omitted).

As set forth below, Plaintiffs' maritime and state common law claims against M-I are not cognizable under governing law.  Recognition of such claims would disrupt Congress's carefully considered compensatory regime and frustrate clearly stated congressional intent with respect to operations on the Outer Continental Shelf.  Each of Plaintiffs' claims against M-I must therefore be dismissed.

**I.      OPA And OCSLA Preempt all Maritime And State Law Claims for Oil Spill-Related Damages.**

**A.      Plaintiffs Have No Cognizable Maritime Law Claims against M-I.**

Claims I(A) and I(B) of Plaintiffs' Amended B1 Master Complaint seek damages from M-I under "general maritime law" for both "negligence" and "gross negligence and willful misconduct."  *See* Compl. ¶¶ 569–636.  However, these claims must be dismissed because they are foreclosed by well-settled, unanimous recognition by courts across the country that OPA provides the exclusive federal remedy for economic damage caused by an oil spill.  *See S. Port Marine, LLC*, 234 F.3d at 64–66; *Gabarick*, 623 F. Supp. 2d at 746; *Clausen v. M/V New*

---

[3] Additional remedies are available to federal, state, and local governments.  *See* 33 U.S.C. § 2702(b).

*Carissa*, 171 F. Supp. 2d 1127, 1134 (D. Or. 2001); *Tanguis v. M/V Westchester*, 153 F. Supp. 2d 859, 867–68 (E.D. La. 2001); *Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atl. Corp.*, 924 F. Supp. 1436, 1447 (E.D. Va. 1996), *aff'd*, 122 F.3d 1062 (4th Cir. 1997) (table).

It is well-recognized that federal common law must cede to congressional enactments. "[O]nce Congress addresses a subject, even a subject previously governed by federal common law, . . . the task of the federal courts is to interpret and apply statutory law, not to create common law." *Nw. Airlines, Inc. v. Transp. Workers Union of Am.*, 451 U.S. 77, 95 n.34 (1981). Here, "[b]ecause OPA provides a comprehensive scheme for the recovery of oil spill cleanup costs and the compensation of those injured by oil spills, the general maritime law does not apply to recovery of these types of damages." *Nat'l Shipping Co. of Saudi Arabia*, 924 F. Supp. at 1447.

Indeed, this Court has at least twice addressed this very issue, and both times it has expressly held that OPA preempts general maritime law. A decade ago, in *Tanguis v. M/V Westchester*, this Court first considered the preemptive effect of OPA, noting that the plain language of the statute—consistent with and confirmed by legislative history—made clear Congress's intent to fully occupy the field and displace "traditional maritime remedies for oil spills." 153 F. Supp. 2d at 867–68 (citing *Rice v. Harken Exploration Co.*, 89 F. Supp. 2d 820, 822 (N.D. Tex. 1999)); S. REP. NO. 101-94, at 9 (1989), *reprinted in* 1990 U.S.C.C.A.N. 722, 730.

More recently, in *Gabarick v. Laurin Maritime (Am.) Inc.*, the Court considered the exact question presented here and concluded that "the plain language of the statute indicates its mandatory and exclusive nature with respect to its covered damages." 623 F. Supp. 2d at 746. In *Gabarick*, a collision between a barge and a tow boat led to the release of approximately

500,000 gallons of fuel oil into the Mississippi River.  *Gabarick v. Lauren Mar. (Am.), Inc.*, No. 08-04007, 2008 WL 3560426, at *1 (E.D. La. Aug. 11, 2008).  Plaintiffs alleged that the oil contaminated the shoreline and drinking water and that they suffered business losses as a result of the spill.  *Id.*

In reaching its holding that the plaintiffs' claims were preempted by OPA, the Court conducted a detailed and thorough analysis of the four "*Oswego*" preemption factors:

> (1)  legislative history;
> (2)  the scope of the legislation;
> (3)  whether judge made law would fill a gap left by Congress's silence or rewrite rules that Congress enacted; and
> (4)  likeliness of Congress's intent to preempt "long established and familiar principles of the common law or the general maritime law."

*Gabarick*, 623 F. Supp. 2d at 747 (quoting *United States v. Oswego Barge Corp.*, 664 F.2d 327, 344 (2d Cir. 1981)).[4]

As to the first *Oswego* factor, the Court reviewed OPA's legislative history and concluded that "Congress's intent in enacting OPA [was] the creation of a single Federal law regarding liability for oil pollution."  *Id.* at 748.  On the second factor, the Court found the scope of OPA all-encompassing: "It defines what damages are covered and the process for pursuing a claim, and allows suit in federal court should that process be unsuccessful."  *Id.*  As to the third factor, the Court held that because of the comprehensiveness of OPA, "there is no gap" that needed to be filled by judge-made law.  *Id.*  Finally, under the fourth factor, the Court held "the intent of Congress . . . articulated in both the express language of the statute and the legislative history, was to encourage settlement and reduce litigation in oil spill cases through the enactment

---

[4] The Fifth Circuit adopted the *Oswego* analysis in *United States v. M/V Big Sam*, 681 F.2d 432, 441-42 (5th Cir. 1982).

of a comprehensive federal legislation that provides cleanup authority, penalties, and liability for oil pollution." *Id.* at 750 (internal quotation omitted).

Accordingly, the Court held that OPA preempted the *Gabarick* plaintiffs' maritime law claims seeking "supplemental" remedies against an alleged oil polluter—a holding that has since been repeated without question in other cases before this Court.  *See In re Settoon Towing LLC*, No. 07-1263, 2009 WL 4730969, at *3 (E.D. La. Dec. 4, 2009) ("[T]he OPA damages provision preempts the general maritime law.") (citing *Gabarick*, 623 F. Supp. 2d at 746); *In re Settoon Towing LLC*, No. 07-1263, 2009 WL 4730971, at **3–4 (E.D. La. Dec. 4, 2009) (granting summary judgment in favor of the vessel owner on a general maritime claim seeking recovery for oil spill-related claims because OPA preempted the general maritime law for the damages sought).

In this case, just as in *Gabarick*, the B1 Plaintiffs have alleged general maritime causes of action and seek damages for removal costs, property damage, and lost profits and earning capacity.  *See* Compl. ¶¶ 614–26. No matter how Plaintiffs caption or present their claims, because these damages sought by Plaintiffs under the general maritime law are identical to those recoverable under OPA, they are preempted and must be dismissed.

**B.     Plaintiffs' State Law Claims Are Foreclosed By OCSLA.**

The "Property Plaintiffs" allege that M-I is liable for nuisance and trespass under unspecified state law or laws.  Compl. ¶¶ 691–711.  Congress has made clear that state law claims cannot be brought for oil spill-related injuries stemming from oil exploration and development activities on a rig such as the *Deepwater Horizon* that is engaged in activities on the Outer Continental Shelf.

This Court has already held that OCSLA governs this dispute, and the Property Plaintiffs' allegations confirm the applicability of the statute.  Order (Oct. 16, 2010) [Dkt. No. 470], at 6–8.

Courts, including this Court, have had no trouble finding that claims arising out of or in connection with the operation of oil exploration activities on the Outer Continental Shelf—such as the claims alleged by the Bundle B1 plaintiffs—are governed by OCSLA.  *See Tenn. Gas Pipeline*, 87 F.3d at 154; *EP Operating Ltd. P'ship*, 26 F.3d at 569.

Congress has long asserted plenary control over operations on the Outer Continental Shelf.  *See generally Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473 (1981); *United States v. California*, 332 U.S. 19 (1947).  Congress's aims with respect to the Outer Continental Shelf are many, and require careful balance of competing goals, such as protection of the environment and encouragement of energy production.  *See* 43 U.S.C. § 1802; *see also W. Oil & Gas Ass'n v. Sonoma Cnty.*, 905 F.2d 1287, 1289 (9th Cir. 1990).  Through OCSLA, Congress has extended an "expansive substantive reach" over "a wide range of activity occurring beyond the territorial waters of the States."  *Texaco Exploration & Prod. Inc. v. AmClyde Engineered Prods. Co.*, 448 F.3d 760, 768 (5th Cir. 2006); *EP Operating Ltd. P'ship*, 26 F.3d at 569.  To that end, Congress has declared federal law "exclusive" with respect to activities on the Outer Continental Shelf.  *See Tenn. Gas Pipeline*, 87 F.3d at 153; *see also* 43 U.S.C. § 1349(b)(1).

Only in certain narrow circumstances has Congress permitted state law to have any force on the Outer Continental Shelf:  With respect to "artificial islands" or "fixed structures" erected on the seabed, where a "substantial gap[]" or "void[]" exists in the federal law, the law of the adjacent state may be adopted as surrogate federal law.  *Gulf Offshore Co.*, 453 U.S. at 480 (internal quotations omitted); *see also Rodrigue*, 395 U.S. at 358; 43 U.S.C. § 1333.  The *Deepwater Horizon* is not alleged to be—and indeed, is not—an artificial island or fixed structure, rendering state law inapplicable in this case.

Nonetheless, to the extent the door is even open to state law on the facts presented in this case, it can only apply to the extent it is "applicable and not inconsistent with" federal law.  The Fifth Circuit "has consistently held that 'applicable' must be read in terms of necessity—necessity to fill a significant void or gap." *LeSassier v. Chevron USA, Inc.*, 776 F.2d 506, 509 (5th Cir. 1985) (quoting *Nations v. Morris*, 483 F.2d 577, 585 (5th Cir. 1973)); *see also Gulf Offshore Co.*, 453 U.S. at 480 (state law may be adopted only to fill a "substantial gap[] in the coverage of federal law" citing 43 U.S.C. § 1333(a)(2) (internal quotation omitted)).  Because the Property Plaintiffs claim economic loss as a result of an oil spill, they can—and indeed, must—seek relief through OPA, leaving no significant gap or void for state law to fill under OCSLA.  *See S. Port Marine, LLC*, 234 F.3d at 64 (holding that OPA is intended to be the sole and exclusive federal law governing action for oil spill-related losses).  Thus, the Property Plaintiffs cannot pursue their state law claims.

Nothing in OPA changes this result.  While OPA provides that states may impose additional liability for "the discharge of oil or other pollution by oil within such State," 33 U.S.C. § 2718(a)(1)(A), nothing in OPA or its legislative history evinces an intent to displace OCSLA or decades of well-settled law about the limited applicability of state law to activities on the Outer Continental Shelf.  OPA's so-called "savings clause" instead operates where it is needed most:  in state territorial waters where state interests are high, congressional involvement lower, and where there is little risk of multiple inconsistent laws and legal regimes being applied to the same conduct.

Congress, through OCSLA, has deemed federal law exclusive on the Outer Continental Shelf, and permits the adoption of state law only on a defined subset of *situses* on the Outer Continental Shelf in limited situations where there is a significant gap or void in federal law.

Through OPA, Congress has provided a complete and comprehensive federal regime governing and providing recovery for damages stemming from oil spills occurring on the Outer Continental Shelf. *See Gabarick*, 623 F. Supp. 2d at 746. The Property Plaintiffs' alleged injuries are compensable through OPA; therefore, there is no gap or void in the federal law and their state law claims against M-I should be dismissed.

II.   **Pursuant to OPA, M-I Can Not Be Sued Directly By Persons Injured by an Oil Spill.**

   A.   **This Court Lacks Jurisdiction To Decide The Claims Of Any Plaintiffs That Have Not Satisfied OPA's Presentment Provisions.**

Because OPA provides the exclusive remedy for Plaintiffs' alleged oil spill-related damages, the Bundle B1 Plaintiffs—who are seeking recovery of such damages—must comply with the presentment requirements of the OPA before filing suit. To the extent that any Plaintiff has failed to satisfy this requirement, this Court lacks jurisdiction to decide that Plaintiff's claims.

OPA's remedial scheme depends on the concept of the "Responsible Party" and the creation of a strict liability compensation procedure intended to provide prompt, complete resolution of claims outside of litigation. OPA's mandatory presentment requirement is key to this procedure: First, "all claims for removal costs or damages" covered by OPA "shall" be presented to the Responsible Party. 33 U.S.C. § 2713(a). The claims must be sufficiently detailed about the nature and extent of the claimant's alleged injury so as to allow for genuine settlement negotiations between the claimant and the Responsible Party. *See, e.g.*, *Johnson v. Colonial Pipeline Co.*, 830 F. Supp. 309, 311 (E.D. Va. 1993). Only if the Responsible Party denies liability for the claim or a sufficiently presented claim is not settled within 90 days by the Responsible Party may the claimant elect to commence an action in court "against the responsible party." 33 U.S.C. § 2713(c).

"The clear text of § 2713 creates a **mandatory condition precedent barring all OPA claims** unless and until a claimant has presented [its] claims" to the Responsible Party and had them denied.  *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.*, 51 F.3d 235, 240 (11th Cir. 1995) (emphasis added); *see also Gabarick*, 623 F. Supp. 2d at 750–51 (dismissing for lack of subject matter jurisdiction all non-OPA claims seeking damages of the type covered by OPA for failure to present such claims to the designated responsible party); *Marathon Pipe Line Co. v. La Roche Indus. Inc.*, 944 F. Supp. 476, 477 (E.D. La. 1996) ("The Court agrees that § 2713's presentation requirement is jurisdictional and mandates dismissal when that provision is applicable and not complied with by the claimant."); S. Rep. No. 101-94, at 10 (1989), *reprinted in* 1990 U.S.C.C.A.N. 722, 732 (noting that "the bill requires claims to be presented in the first instance to the discharger, where known.").  Regardless whether an OPA claim has been alleged against a Responsible Party or a non-responsible third party, until OPA's presentment requirements have been met, litigation for oil spill-related claims is foreclosed.  Allowing plaintiffs to bypass the presentment requirement and immediately sue non-responsible third parties would frustrate Congress's intent to provide, through OPA, a prompt, comprehensive remedial scheme that avoids complicated, piecemeal litigation.

In this case, Plaintiffs allege only that they "have satisfied, or will have satisfied"—at some unspecified time—OPA's presentment requirements.  Compl. ¶ 689.  Having admitted that they have not presented their claims to BP—the Responsible Party in this case—and have had them denied, Plaintiffs' lawsuits are untimely and this Court lacks jurisdiction to adjudicate them.  Therefore, any claim against M-I asserted by any Plaintiff who has not satisfied OPA's presentment requirements must be dismissed.  *See* FED. R. CIV. P. 12(b)(1).

**B.** **Even If Plaintiffs Satisfy The Presentment Requirements Of OPA, Their Sole Remedy Lies Against The Responsible Party(ies) Designated Under OPA— Not Against M-I.**

Even if Plaintiffs satisfy the presentment requirements of OPA and properly invoke the jurisdiction of this Court, their claims for oil spill-related damages against M-I must nonetheless be dismissed because M-I has not been named an OPA "Responsible Party."

Plaintiffs' sole remedy for oil spill-related damages lies against the Responsible Party(ies) under OPA.  33 U.S.C. § 2713 (If a claim properly presented to the Responsible Party is denied, "the claimant may elect to commence an action in court against the responsible party . . . .").  This plain language reading of the statute is fully supported by and consistent with clearly stated congressional intent that "[t]he system of liability and compensation provided for in the bill . . . is intended to allow for quick and complete payment of reasonable claims without resort to cumbersome litigation."  135 CONG. REC. 7965 (1989).  Indeed, as this Court has explained, "[i]n light of Congress's intent to minimize piecemeal lawsuits and the mandatory language of OPA . . . Claimants should pursue claims covered under OPA only against the responsible party and in accordance with the procedures established by OPA."  *Gabarick*, 623 F. Supp. 2d at 750.  "Then, the responsible party can take action to recover against third parties," *id.*, as provided for by OPA:

> If the responsible party alleges that the discharge . . . was caused solely by an act or omission of a third party, the responsible party—
>
> (i)      . . . shall pay removal costs and damages to any claimant; and
>
> (ii)     shall be entitled by subrogation to all rights of the . . . claimant to recover removal costs and damages from the third party . . . paid under this subsection.

14

33 U.S.C. § 2702(d)(1)(B); *see also* 33 U.S.C. § 2709 (providing for rights of contribution); 33 U.S.C. § 2710 (permitting indemnity agreements among potentially responsible parties).

The language of the statute makes clear Congress's intent that persons allegedly injured by an oil spill not be additionally inconvenienced by cumbersome and time-consuming litigation. Claimants are entitled to prompt, non-judicial resolution of their claims by an identified party. Should litigation be necessary, claimants are benefited by the need to present their case only and entirely against that Responsible Party.  Complex multi-party litigation—with all of its attendant costs and burdens—is shifted instead to subrogation, contribution, and indemnity actions among those potentially liable for the spill.  *See* 33 U.S.C. §§ 2702(d), 2709.

Plaintiffs' claims for oil spill-related damages are not cognizable against M-I because M-I is not a designated Responsible Party under OPA.  Accordingly, to the extent Plaintiffs have brought claims against M-I under OPA,[5] such claims should be dismissed as a matter of law because M-I is not a designated Responsible Party.  To the extent Plaintiffs bring direct claims against M-I for oil spill-related damages covered by OPA, these claims should be dismissed because they are viable only against the Responsible Party(ies) under OPA.

**III.    To the Extent Any Maritime Law Claims Survive, the Economic Loss Rule Bars These Claims.**

Assuming *arguendo* that Plaintiffs' claims under general maritime law are not precluded by OPA, their claims must nonetheless be dismissed to the extent damages sought are not recoverable under the long-standing "Economic Loss Rule."  *See Robins Dry Dock & Repair v. Flint*, 275 U.S. 303 (1927).  Under the rule, which has been consistently reaffirmed by the Fifth Circuit, "physical injury to a proprietary interest is a prerequisite to recovery of economic

---

[5] M-I was sued under OPA in individual complaints.

damages in cases of unintentional maritime tort[s].”[6]  *Reserve Mooring Inc. v. Am. Commercial Barge Line, LLC*, 251 F.3d 1069, 1071 (5th Cir. 2001); *see also In re Taira Lynn Marine Ltd. No. 5, LLC*, 444 F.3d 371, 377 (5th Cir. 2006) (“It is unmistakable that the law of this circuit does not allow recovery of purely economic claims absent physical injury to a proprietary interest in a maritime negligence suit.”).  The rule is a “pragmatic limitation on the doctrine of foreseeability.”  *Reserve Mooring Inc.*, 251 F.3d at 1071 (internal quotation omitted).

Here, Plaintiffs have not alleged physical damage to a property interest.  Indeed, many Plaintiffs such as the auto and boat “Dealer Plaintiffs” cannot plausibly assert that they have had any property damage whatsoever; in fact, those plaintiffs concede that they are seeking recovery for pure economic losses.  *See* Compl. ¶ 209(m) (seeking “damages, including loss of business, loss of income and lost profits, as a result of the Spill”); *see also, e.g.*, *id.* ¶ 209(c) (seeking recovery for “Recreational Business Plaintiffs” for losses related to their “use of the Gulf of Mexico for businesses”); *id.* ¶ 209(e) (seeking damages for “recreational” use of waters and beaches); *id.* ¶ 209(g) (seeking recovery for “inadequate compensation” from BP’s Vessels of Opportunity program); *id.* ¶ 209(i) (seeking recovery for declines in tourism); *id.* ¶ 209(l) (alleging claims on behalf of the Moratorium Plaintiffs for “lost income, profits and/or earning capacity”).  Liability to entities such as these is squarely foreclosed by the Economic Loss Rule.  To the extent Plaintiffs have failed to allege property damage to a proprietary interest, their claims must be dismissed.

## IV.    To The Extent Any State Law Claims Survive, The Property Plaintiffs Have Failed To Plead Claims For Relief Under Applicable Law.

The “Property Plaintiffs” plead causes of action for nuisance and trespass under

---

[6] Congress, apparently recognizing the limitation of the Economic Loss Rule, has expressly permitted more expansive remedies for parties under OPA.  *See, e.g.*, 33 U.S.C. § 2702(b)(2)(C) (allowing the recovery for subsistence use of natural resources “without regard to the ownership or management of the resources”).

unspecified state law.  Notwithstanding that Plaintiffs' state law claims are foreclosed under OCSLA, assuming *arguendo* that they can bring such claims, the claims can only arise under the law of state adjacent to the Outer Continental Shelf *situs*—here, Louisiana.  *See* 43 U.S.C. § 1333.  And the Property Plaintiffs' Louisiana claims fail as a matter of law.

Courts are to consider "[f]our types of evidence" when determining which State is adjacent to a *situs* on the Outer Continental Shelf:  "(1) geographic proximity; (2) which coast federal agencies consider the subject platform to be 'off of'; (3) prior court determinations; and (4) projected boundaries."  *Snyder Oil Corp. v. Samedan Oil Corp.*, 208 F.3d 521, 524 (5th Cir. 2000).  Plaintiffs have alleged that the Deepwater Horizon was located "off the coast of Louisiana."  Compl. ¶ 30; *see also id.* ¶ 272 (alleging that the Macondo well was located "in Mississippi Canyon Block 252, 48 miles off the coast of Louisiana").  This court has concluded that sites in the Mississippi Canyon Block, even further off the coast of the State, are adjacent to Louisiana.  *See Ronquille v. MMR Offshore Servs., Inc.*, 353 F. Supp. 2d 680, 681 n.3 (E.D. La. 2004) (applying Louisiana law under OCSLA with respect to an alleged injury occurring in Mississippi Canyon block 809, approximately 140 miles southeast of New Orleans).  Further, the Court can take judicial notice that if the boundaries of the State of Louisiana were extended seaward, the location of the Deepwater Horizon would fall within its borders.  *See Gov't of the Canal Zone v. Burjan*, 596 F.2d 690, 694 (5th Cir. 1979) ("[O]fficial government maps have long been held proper subjects of judicial notice.").  Thus, to the extent that any state law might apply under OCSLA, it is the only the law of Louisiana.  Claims brought under any other state law must be dismissed and as set forth below, so too must the Property Plaintiffs' Louisiana claims.

### A.    Plaintiffs Fail To State a Claim For Nuisance because the *Deepwater Horizon* Was Not Their "Neighbor."

The Property Plaintiffs allege that M-I, as a result of its allegedly negligent conduct on the rig, created a nuisance.  Compl. ¶¶ 691–99.  Under Louisiana law, only a "neighbor" can bring a suit for nuisance.  LA. CIV. CODE ANN. art. 667.   By the Property Plaintiffs' own admission, M-I and the *Deepwater Horizon* were at least 48 miles away from the closest possible plaintiff.  Compl. ¶¶ 210, 272.  Under Louisiana law, this is insufficient to permit recovery for nuisance.  In *In re Katrina Canal Breaches Consolidated Litigation*, this Court, applying Louisiana law, held that a distance of three miles between the plaintiffs and defendants was "too attenuated" to support a claim for nuisance.  647 F. Supp. 2d 644, 734 (E.D. La. 2009).  Because a distance of three miles from the alleged source of the nuisance is too great to support relief for nuisance, this Court can hold as a matter of law that M-I—located **at best** 48 miles from a Property Plaintiff—cannot be liable for nuisance.  *See TS&C Invs. LLC v. Beusa Energy Inc.*, 344 F. App'x 907, 908–09 (5th Cir. 2009) (affirming dismissal of a Louisiana nuisance claim on the grounds that the plaintiffs were 20 miles away from the defendant-oil producer).  Accordingly, the Property Plaintiffs' nuisance claim should be dismissed.

### B.    Plaintiffs Fail To State A Claim For Trespass.

The Property Plaintiffs next allege that M-I discharged oil knowing that it would "invade" their property and that M-I allowed contaminants and noxious odors to migrate onto their property.  Compl. ¶¶ 701–02, 708.  The Property Plaintiffs allege further that M-I engaged in this behavior "outrageously and maliciously" with "willful, wanton and reckless indifference" to their rights.  *Id.* ¶ 705.  The Property Plaintiffs seek compensatory and punitive damages.  However, they have failed to allege a cognizable claim for the former and the latter are unavailable under Louisiana law.

### i.    *To recover for trespass, a plaintiff must have suffered a physical invasion.*

In Louisiana, "[a] trespass occurs when there is an unlawful physical invasion of the property or possession of another."  *Bourquard v. L.O. Ausauma Enters., Inc.*, 52 So. 3d 248, 251 (La. Ct. App. 2010) (internal quotation omitted).[7]  The Property Plaintiffs who bring this claim against M-I allege that they have been "damaged, harmed, or impacted, **physically or economically**."  Compl. ¶ 209(h) (emphasis added).   To the extent any of these plaintiffs did not suffer a physical invasion of their property, they have not pled a cognizable trespass claim against M-I and their claims should be dismissed.

### ii.    *Only property owners may recover for trespass.*

Only property owners may recover for trespass in Louisiana.  *See, e.g.*, *LaRue v. Crown Zellerbach Corp.*, 512 So. 2d 862, 863 (La. Ct. App. 1987).  However, the Property Plaintiffs include "owners, lessors, **and lessees** of real property."  Compl. ¶ 692 (emphasis added).  To the extent any of these plaintiffs do not own the property they allege was trespassed, they have failed to state a claim for relief, and their claims must be dismissed.

## V.    <u>Plaintiffs Have Pled No Claim Entitling Them To Punitive Damages Against M-I</u>.

It is unclear from Plaintiffs' Master Complaint whether and to what extent they are seeking punitive damages against M-I.  *See* Compl. ¶ 749 (limiting their demand for punitive damages on "all claims" to BP, Transocean, and Halliburton).[8]  Regardless, and notwithstanding that Plaintiffs have failed to plead cognizable claims against M-I, punitive damages are not

---

[7] Indeed, this is the case in each of the Gulf Coast states.  *See Donald v. Amoco Prod. Co.*, 735 So. 2d 161, 169 (Miss. 1999); *Borland v. Sanders Lead Co.*, 369 So. 2d 523, 527 (Ala. 1979); *Petroleum Prods. Corp. v. Clark*, 248 So. 2d 196 (Fla. Dist. Ct. App. 1971); *City of Arlington v. City of Fort Worth*, 873 S.W.2d 765, 769 (Tex. App.—Fort Worth 1994) (citing *Gregg v. Delhi-Taylor Oil Corp.*, 344 S.W.2d 411, 416 (Tex. 1961)).

[8] M-I disputes—and discovery since Plaintiffs' suit was filed has demonstrated—that M-I is not properly classified a "Drilling Defendant," Compl. ¶ 229; while the Court must accept Plaintiffs' allegations as true in considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the notable exclusion of M-I from Plaintiffs'

available under OPA or the general maritime law.  *See, e.g., S. Port Marine, LLC*, 234 F.3d at 64–66.

Additionally, even if Louisiana law applies, which it does not, punitive damages would not be recoverable for trespass or nuisance.  "In Louisiana, there is a general public policy against punitive damages; thus, a fundamental tenet of our law is that punitive or other penalty damages are not allowable unless expressly authorized by statute."  *Ross v. Conoco, Inc.*, 828 So. 2d 546, 555 (La. 2002).[9]  There is no statute in Louisiana allowing for the recovery of punitive damages for nuisance or trespass.  To the extent Plaintiffs are seeking punitive damages from M-I, their claim must be dismissed.

## CONCLUSION

For the foregoing reasons, M-I respectfully requests that this Court dismiss all claims asserted against M-I in Plaintiffs' Amended B1 Master Complaint and the Bundle B1 complaints encompassed therein.[10]

---

claim for punitive damages suggests Plaintiffs' recognition that M-I's role on the *Deepwater Horizon* was far different from the true Drilling Defendants:  Transocean, BP, and Halliburton.

[9] For that matter, punitive damages are not available under the claim of nuisance for laws of the other four Gulf Coast states.  Mississippi, Alabama, Florida, and Texas all require a heightened mental state for punitive damages to be available in a nuisance action.  *See Southland Co. v. Aaron*, 80 So. 2d 823, 826 (Miss. 1955); *Seale v. Pearson*, 736 So. 2d 1108, 1113 (Ala. Civ. App. 1999); *Rice v. Merritt*, 549 So. 2d 508, 511 (Ala. Civ. App. 1989); *Monty v. Hayward*, 451 So. 2d 938, 938 (Fla. Dist. Ct. App. 1984); *Holubec v. Brandenberger*, 214 S.W.3d 650, 659 (Tex. App.—Austin, 2006).  To the extent Plaintiffs seek punitive damages from M-I for nuisance, they have failed to plead facts establishing M-I's heightened mental state and such claims must be dismissed.

[10] In accordance with Pre-Trial Order No. 25, M-I expressly reserves its right to move to dismiss any individual claim within the B1 bundle on grounds specific to that complaint.

Respectfully submitted,


**MORGAN, LEWIS & BOCKIUS LLP**

/s/ Hugh E. Tanner_____
Hugh E. Tanner
htanner@morganlewis.com
Denise Scofield
dscofield@morganlewis.com
Shannon A. Lang
slang@morganlewis.com
James B. Tarter
jtarter@morganlewis.com
1000 Louisiana St., Suite 4000
Houston, TX 77002
Telephone: 713.890.5000
Facsimile: 713.890.5001

**ATTORNEYS FOR DEFENDANT
M-I L.L.C.**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Memorandum of Law In Support Of M-I's Motion To Dismiss Bundle B1 Economic Damages Claims has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 11th day of March, 2011.

*/s/ Hugh E. Tanner*
Hugh E. Tanner