UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig | * | MDL No. 2179 |
| "Deepwater Horizon" in the Gulf | * | |
| Of Mexico, on April 20, 2010 | * | SECTION "J" |
| | * | JUDGE BARBIER |
| | * | |
| Relates to Case No. 10-4252 | * | |
| | * | |
| | * | MAGISTRATE SHUSHAN |
| | * | |
| * * * * * * * * * * * * * * * | | |

## FIRST SUPPLEMENTAL AND AMENDING COMPLAINT

Plaintiff DARRELL L. REED (hereinafter "Plaintiff"), respectfully complains of Defendants' BP, PLC, BP PRODUCT NORTH AMERICA, INC., BP AMERICA, INC. (collectively "BP"), HALLIBURTON ENERGY SERVICES, INC., CAMERON INTERNATIONAL CORPORATION f/k/a COOPER-CAMERON CORPORATION, WEATHERFORD INTERNATIONAL, INC. and/or WEATHERFORD INTERNATIONAL, LTD and ART CATERING, INC. and would respectfully show the Court that:

### JURISDICTION AND VENUE

1.

The jurisdiction of this honorable Court is based upon the provisions of 28 U.S.C. § 1333(1) and is being brought pursuant to the provisions of 46 U.S.C. § 688 (the "Jones Act") and the provisions of the general maritime law.  Plaintiff designates this matter as a maritime claim under Rule 9(h) of the Federal Rules of Civil Procedure.  The Defendants are justly and truly indebted unto Plaintiff jointly, severally and *in solido*.

2.

Venue is laid in this district pursuant to 28 U.S.C. § 1407 for coordinated pre-trial proceedings.

## PARTIES

3.

Plaintiff, **DARRELL L. REED**, a person of the full age of majority, and a resident and domiciliary of Lecompte, Rapides Parish, Louisiana, was employed by Art Catering on the DEEPWATER HORIZON at all relevant times.

4.

**BP, PLC** ("BP"), is a foreign corporation authorized to do and doing business in the State of Louisiana.

5.

**BP PRODUCTS NORTH AMERICA, INC.** ("BP Products"), is a foreign corporation authorized to do and doing business in the State of Louisiana.

6.

**BP AMERICA, INC.** ("BP America"), is a foreign corporation authorized to do and doing business in the State of Louisiana.

7.

**HALIBURTON ENERGY SERVICES, INC.** ("Haliburton"), is a foreign corporation doing business in the State of Louisiana and within this district.

8.

**CAMERON INTERNATIONAL CORPORATION f/k/a COOPER-CAMERON CORPORATION** ("Cameron"), is a foreign corporation doing business in the State of Louisiana and within this district.

9.

**WEATHERFORD INTERNATIONAL, INC., AND/OR WEATHERFORD INTERNATIONAL, LTD** ("Weatherford"), is a foreign corporation authorized to do and doing business in this state and judicial district.

10.

**ART CATERING, INC.** ("Art Catering"), is a Louisiana corporation with its principle place of business in Plaquemines Parish, Louisiana.

## NATURE OF THE ACTION

11.

At all material times, Plaintiff was employed by Art Catering as a Jones Act seaman and Plaintiff invokes the "savings to suitors" clause.

12.

Plaintiff was permanently assigned to the DEEPWATER HORIZON offshore drilling vessel as a seaman and member of the crew.

13.

DEEPWATER HORIZON was in navigation in the Gulf of Mexico, using sophisticated propulsor/navigation system, and was owned and/or operated and/or chartered and/or controlled by Transocean and/or BP at all material times herein.

14.

On or about April 20, 2010, Plaintiff was an employee of Art Catering on board the DEEPWATER HORIZON when suddenly and without warning, at approximately 10 p.m. on April 20, 2010, an explosion occurred on DEEPWATER HORIZON.

15.

The explosion violently threw the Plaintiff approximately sixteen feet down a hall on a second floor walkway. Plaintiff was unconscious for a few moments before an unidentified crewman helped him up. With debris in his eyes, Plaintiff was then forced to evacuate the burning vessel, traversing smoke-filled galley-ways, various compartments and/or decks aboard the vessel until he reached the evacuation craft. Chaos reigned during this evacuation as flames continued to bellow, personnel feared for their lives, crying, and threats to jump into the dark waters below to escape the burning inferno. Plaintiff witnessed, observed, participated, and felt this. He was traumatized by it. Plaintiff was able to evacuated to the vessel DAMON B. BANKSTON.

16.

As a result of said occurrences and actions, Plaintiff sustained the following injuries:

A. Cuts and bruises on his body;

B. Severe trauma and shock;

C. Aggravation of pre-existing psychiatric condition;

D. Post traumatic stress disorder; and

E. General soreness throughout the body.

17.

As a result of the trauma of the foregoing events, Plaintiff is also suffering from serious emotional and/or psychological problems, including, but not limited to, the following:

A.   Anxiety;

B.   Restlessness;

C.   Nightmares;

D.   Post-traumatic stress;

E.   Depression; and

F.   Aggravation of pre-existing psychiatric condition.

18.

Plaintiff was at all times pertinent hereto ordered to be and performing his duties and functions as instructed and obliged to perform pursuant to directives of defendants, Art Catering and/or BP.

19.

The accident was caused by no fault of Plaintiff and was caused solely by the negligence and wanton recklessness of Defendants, as more particularly set forth herein.

20.

At all times pertinent hereto, the vessel DEEPWATER HORIZON on which the explosion occurred was navigated in navigable waters, manned, possessed, managed, controlled, chartered and/or operated by defendant, BP.

21.

The explosion which caused Plaintiff's injuries occurred as a result of the negligence and wanton recklessness of Defendants. These acts of negligence render the Defendants liable to

Plaintiff pursuant to the provisions of 46 U.S.C. § 688 and/or the general maritime law for negligence.

22.

BP, BP Products and BP America (hereinafter collectively "BP") are the holders of a lease granted by the Minerals Management Service that allows BP to drill for oil and perform oil-production-related operations at the site of the and oil spill, and on April 20, 2010, operated the oil exploratory platform that is the source of the oil spill.

23.

Upon information and belief, Cameron manufactured and/or supplied the DEEPWATER HORIZON's blow-out-preventer ("BOP") that failed to operate upon the explosion, which should have prevented the oil spill. The BOP was defective because it failed to operate as intended. As such, Cameron is liable to Plaintiff pursuant to the Louisiana Products Liability Act in addition to being liable for its defective products and negligence. The DEEPWATER HORIZON tragedy was caused by, among other things, a failure of the rig's well control system. Cameron supplied much of the rig's inadequate, defective blow-out prevention equipment. For instance, Cameron designed, manufactured, and supplied the rig's BOP and component parts for the BOP. The BOP was unreasonably dangerous when it left Cameron's control. Cameron expressly represented, in writing and orally, that the BOP was effective for preventing blowouts. Cameron anticipated, and indeed was informed by Transocean, that the BOP would be used in deepwater conditions. These warranties were breached because the BOP was not effective in preventing blowouts (and did not prevent the blowout on April 20, 2010). In short, the BOP failed to operate on April 20, 2010, and was not fit for its ordinary intended purpose. This occurred because, in designing, constructing, composing, and manufacturing the BOP (and its

component parts), Cameron relied on calculations to determine the needed strength of its component parts in deepwater conditions, as opposed to actually testing the components in deepwater conditions. The calculations were improper and resulted in a BOP that would not be effective in deepwater conditions like those that existed for the incident in question. This is because Cameron used shear forces lower than required or desired for the BOP in question. Additionally, the rubber gaskets, or "packers," on the BOP were too small and too weak to prevent the blowout. This made the BOP unreasonably dangerous. This defect existed when the BOP left Cameron's control. These defects also resulted in a nonconformity to express warranties made by Cameron for the BOP in question. Moreover, this made the BOP unreasonably dangerous in construction, composition, and design. Cameron failed to warn anyone that the BOP would likely not prevent blowouts in deepwater even though it knew, or should have known, this to be the case. Cameron also failed to warn of the defectively designed and/or manufactured packers. These defects existed when the BOP left Cameron's control. The defects caused a danger to everyone on the rig who depended and relied on the BOP to prevent blowouts. These design and construction defects were not known by anyone other than Cameron and no one else had any reason to know about the defects.

24.

Halliburton was engaged in cementing operations of the well and well cap and, upon information and belief, improperly and negligently performed these duties, increasing the pressure at the well and contributing to the fire, explosion and resulting oil spill. Halliburton was in charge of cementing the well, but failed to safely do its job. Halliburton knew or, based on its experience in the industry, should have known that poor cementing significantly increases the risk of a blowout. Halliburton's cementing job should have filled the annulus between the casing

7

and the well bore and sealed off the hydrocarbon filled formations. It also should have plugged the bottom of the casing pipe to prevent an influx. However, the cement slurry Halliburton designed and created on this job failed to perform these function. Halliburton's light nitrified foam cement slurry failed in its function and allowed hydrocarbons to enter the wellbore annulus. The cement design and testing was improper and fell far below the standard of care. In fact, the slurry failed multiple stability tests prior to the blowout. Halliburton ignored these failed tests. Halliburton's account representative/engineer on the rig knew about these problems and complained that there was a "high probability" of explosive gas flowing through the cement unless changes were made. Further, the Macondo well was located in brittle, variable rock formations laced with volatile, high temperature, high pressure, and gaseous hydrocarbon reserves. Given this environment, Halliburton's improper and inadequate cement mixture was a recipe for disaster. This conduct was willful, wanton, reckless and grossly negligent. Halliburton was aware of these deficiencies, authorized them, and ratified them. Moreover, BP complained that Halliburton's account representative/engineer was not competent to perform his cement-related job responsibilities. Halliburton had a duty to train and supervise him, but failed to do so adequately. Moreover, Halliburton was charged with real time gas monitoring, but failed in its duty to notice the dangerous pressure readings (or noticed, but failed to inform the proper persons or take appropriate action). Had Halliburton safely performed this function, the factors leading to the blowout could have been detected in time to take proper preventative actions.

25.

Weatherford International, Inc., and/or Weatherford International, Inc., LTD, was engaged in the casing operations of the well and, upon information and belief, improperly and negligently performed these duties, contributing to the fire, explosion, and resulting oil spill.

26.

At all relevant times, the DEEPWATER HORIZON was unseaworthy.

27.

Plaintiff further adopts and incorporates, as if copied herein *in extenso*, the allegations made in Case 2:10-md-02179; Record Doc. No. 879 at ¶¶ 27-101, 122-134, 144-149, 170-172, 177- 179, 225-439, 562-601 and Record Doc. No. 1128 at ¶¶ 258-477, 570-572, 594-599, 603-613, 629-656, 660-675.

28.

Plaintiff seeks recovery against the Defendants, Cameron, Halliburton and Weatherford, for their wrongful conduct, including gross, reckless, and wanton conduct, under the general maritime law.

29.

Plaintiff, Darrell L. Reed, seeks recovery against the Art Catering and BP for their wrongful conduct, including gross, reckless, and wanton conduct, under the general maritime law and as a Jones Act seaman and member of the crew of the DEEPWATER HORIZON vessel and demands that defendant, Art Catering, provide him with maintenance and cure benefits until such time as he reaches "maximum medical cure," as determined by his treating physician. Plaintiff demands that maintenance be instituted in the amount of $60.00 per day from the date of his injury notwithstanding any and all additional compensation and recovery he is owed.

30.

The above-described incidents were caused solely by the negligence and wanton recklessness of Defendants through their agents, servants and employees, which are more particularly described as follows:

A. Negligent failure to properly perform the operation ongoing at the time of the accident/explosion in question;

B. Negligent failure to take all appropriate precautions to avoid an accident and explosion of the kind which occurred;

C. Negligent failure to have all proper equipment and gear necessary to perform the job being performed at the time of the accident and explosion in a safe manner;

D. Negligent failure to keep the equipment on board the vessel in proper condition and repair;

E. Negligent failure to properly inspect the rig and all of its equipment and gear;

F. Negligent failure to have sufficient number of properly trained and qualified personnel to perform the job in a safe manner being performed at the time of the accident and explosion;

G. Failing to follow the recommendations of employees to avoid possible blowout;

H. Negligent violation of government and industry rules, regulations and standards;

I. Acting in a grossly negligent, reckless, willful and wanton manner with respect to the ownership and operation of the rig, the operation which was ongoing at the time of the accident and explosion with respect to Darrell L. Reed;

J. Other acts of negligence and fault which may be shown through discovery or at trial; and

K. Generally, the failure to act with the required degree of care commensurate with the existing situation.

31.

In the further alternative, Plaintiff reiterating and re-alleging each and every allegation set forth above as though set forth herein *in extenso*, avers the applicability of the doctrine of *Res Ipsa Loquitur*.

32.

As a result of the above-described negligence, Plaintiff is entitled to recover the following damages:

A. Physical and mental injury, pain and suffering, mental anguish and distress and fright;

B. Loss of earnings, past and future;

C. Loss of earning capacity;

D. Loss of enjoyment of life;

E. Mental anguish, grief, profound depression, anxiety and suffering;

F. Medical and related expenses, past and future;

G. Punitive or exemplary damages;

H. Other items of damage which may be shown through discovery or at trial;

I. All appropriate general and equitable relief;

J. Prejudgment interest on all sums awarded from date of loss until paid;

K. Post-judgment on all sums awarded from date of judgment until paid; and

L. All court costs and litigation costs allowed by law.

33.

The Defendants' conduct was reckless and egregious in complete disregard of the safety of Plaintiff and are therefore liable for punitive damages.

## PRAYER FOR RELIEF

Plaintiff, DARRELL L. REED, prays that citation issue and be served upon Defendants in a form and manner prescribed by law, requiring Defendants to appear and answer, and that after due proceedings are had, there be judgment in his favor and against the defendants, BP, PLC, BP PRODUCT NORTH AMERICA, INC, BP AMERICA, INC., HALLIBURTON ENERGY SERVICES, INC., CAMERON INTERNATIONAL CORPORATION f/k/a COOPER-CAMERON CORPORATION, WEATHERFORD INTERNATIONAL, INC. and/or WEATHERFORD INTERNATIONAL, LTD and ART CATERING, INC., jointly, severally and

*in solido*, for compensatory, punitive, exemplary and other appropriate damages, with legal interest thereon from date of loss until paid, for all costs of this proceeding.  Plaintiff also prays for all other relief as may be just and equitable in the premises.

        Dated: March 14, 2011

        Respectfully submitted,

          /s/   Soren E. Gisleson
        Soren E. Gisleson, La. Bar No. 26302
        James C. Klick, La. Bar No. 7451
        Stephen J. Herman, La. Bar No. 23129
        Joseph E. Cain, La. Bar No. 29785
        HERMAN HERMAN KATZ & COTLAR LLP
        820 O'Keefe Avenue
        New Orleans, Louisiana 70113
        Telephone: (504) 581-4892
        Fax No. (504) 569-6024

        Jerold Edward Knoll, La. Bar No. 2214
        Jerold Edward Knoll, Jr., La. Bar No. 26956
        Edmond H. Knoll, La. Bar No. 29046
        THE KNOLL LAW FIRM, LLC
        P.O. Box 426
        233 South Main Street
        Marksville, Louisiana 71351
        Telephone: (318) 253-6200
        Fax No. (318) 253-4044

        *Counsel for Darrell L. Reed*

## Certificate of Service

I hereby certify that the above and foregoing FIRST SUPPLEMENTAL AND AMENDING COMPLAINT has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 14th day of March, 2011.

        /s/   Soren E. Gisleson
        Soren E. Gisleson, Esq.