UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: DEEPWATER HORIZON | * | MDL 2179 |
| | * | |
| (This Pleading Applies Only To Case Nos. | * | |
| 10-cv-01156 Roshto) | * | SECTION J (JUDGE BARBIER) |
| | * | |
| | * | |
| | * | MAGISTRATE (JUDGE SHUSHAN) |
| | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### MEMORANDUM IN OPPOSITION OF PLAINTIFF, NATALIE ROSHTO, TO DEFENDANT CAMERON INTERNATIONAL CORPORATION'S MOTION TO DISMISS OR JUDGMENT ON THE PLEADINGS

MAY IT PLEASE THE COURT:

Plaintiff, Natalie Roshto, individually and as personal representative of the estate of Shane Roshto and her minor son, Blaine Roshto, submits this Memorandum in Opposition to the Motion to Dismiss/Judgment on the Pleadings filed by Defendant, Cameron International Corporation ("Cameron"). First, the Federal Rules of Civil Procedure make clear that notice pleading is all that is required to sufficiently plead a cause of action in federal court. Plaintiff's claims against Cameron are sufficiently pled to provide Cameron with the requisite notice. Secondly, Plaintiff's product liability claims are proper under the general maritime law, which authorizes products liability claims against Cameron in this case. Accordingly, Cameron's Motions should be DENIED.

1

## I.     OVERVIEW

At the outset, it should be noted that the Federal Rules of Civil Procedure require only notice pleading. Fed. R. Civ. P. 8. Thus, a pleading is sufficient so long as it provides the defendant with notice of the claims being asserted against them. Clearly Plaintiff's pleadings meet this threshold for sufficiency, in that they include the following allegations:

1.

(J) CAMERON INTERNATIONAL CORPORATION D/B/A CAMERON SYSTEMS CORPORATION, hereinafter referred to as "Cameron," is a foreign corporation doing business in the State of Louisiana;

7d.

Defendant herein, CAMERON, was a manufacturer of products and equipment, including, but not limited to, the multiplex control system, single and double preventers and wellhead connector on the DEEPWATER HORIZON vessel and, upon information and belief, improperly and defectively manufactured these products and equipment, which was a cause of the explosion.

12.

These casualties occurred as a result of the negligence of defendants, TRANSOCEAN ENTITIES, BP ENTITIES, WEATHERFORD, CAMERON, HALLIBURTON ENTITIES and MI SWACO. These acts of negligence render the defendants liable to plaintiffs pursuant to the provisions of 46 USC § 30104 and the general maritime law for negligence.

15.

NEGLIGENCE OF CAMERON

a. Failing to manufacture products and equipment free of defects on the vessel, and the component parts thereof; ...

f. Failing to exercise due care and caution;

g. Failing to avoid this accident;

h. Other acts of negligence which will be shown more fully at trial.

*See* Roshto Rec. Doc. 19, Second Amended Complaint, ¶¶ 1(J), 7(d), 12, and 15 respectively, attached as Exhibit 1. These well pled facts are sufficient to meet Rule 8's liberal pleading standards. The foregoing sufficiently put Cameron on notice as to Plaintiff's allegations, and are therefore sufficient to survive a Rule 12(b)(6) Motion. Significantly, Cameron, in its very motion that is opposed herein, acknowledges from the Plaintiff's well-pleaded complaint that it is being sued under a theory of products liability.

Second, Cameron argues that Louisiana Law (LPLA) is applicable through the provisions of OCSLA, and general maritime law is completed displaced. Cameron's argument completely ignores the controlling precedent, instead relying on misstatements of the law and inapplicable cases to support its argument. Cameron attempts to confuse OCSLA's broad judicial jurisdictional test with the much more stringent test for determining the applicable substantive law. Contrary to Cameron's argument, state law only applies as a surrogate to OCSLA if the stringent standards set forth in *Union Text Petroleum Corp. v. PLT Engineering, Inc.,* 895 F.2d 1043 (5th Cir. 1990), are first met. They are not and thus, Plaintiff's claims under proper under the general maritime law. Further, even if Louisiana Law applied to the Plaintiff's claims against Cameron, the Plaintiff has pled a valid

claim for product liability under both the general maritime law and the Louisiana product liability Act. For these reasons, Cameron's Motion to Dismiss/Judgment on the Pleadings must be denied.

**II.     LAW ON FRCP 12(b)(6) AND 12( c )**

In deciding a motion to dismiss filed under Federal Rule of Civil Procedure ("FRCP") 12(b)(6), the court must accept as true all well-pleaded statements, viewed in the light most favorable to the non-moving party. *Eason v. Holt*, 73 F.3d 600, 601 (5th Cir. 1996). Dismissal is not proper "unless it appears, based solely on the pleadings, that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* A motion to dismiss pursuant to FRCP 12(b)(6) is "viewed with disfavor and is rarely granted." *Lowery v. Texas A&M University System*, 117 F.3d 242, 247 (5th Cir. 1997); *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982). "The standard for dismissal under Rule 12(c) is the same as the standard for dismissal for failure to state a claim under Rule 12(b)(6)." *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004).

**III.    PLAINTIFF'S COMPLAINT SURVIVES *IQBAL* CHALLENGE**

Regardless of whether General Maritime Products Liability Law or the Louisiana Products Liability Act is applied, Cameron's motion still fails, as Plaintiff's complaint sufficiently pleads a cause of action under the general maritime law or LPLA. In support of their argument, defendants rely on the recent United States Supreme Court opinion of *Ashcroft v. Iqbal*,129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). A close reading of the Plaintiff's Complaint and Amended Complaints shows that Plaintiff meets the pleading standard set forth in *Iqbal*.

Under FRCP 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The Unites States Supreme Court in *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929, stated that the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555, 127 S.Ct. 1955 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). The Supreme Court stated that a pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Iqbal,* 129 S.Ct. 1937*, 1949, citing Twombly* 550 U.S., at 555, 127 S.Ct. 1955.

The Supreme Court in *Iqbal* described the *Twombly* decision as follows:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. I*d*., at 555, 127 S.Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we *1950 "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556, 127 S.Ct. 1955. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

*Iqbal,* 129 S.Ct. 1937, 1949.  Obviously, the Supreme Court in *Iqbal* and in *Twombly* has stated that the-defendant-unlawfully-harmed-me accusations and conclusory statements will not survive a Motion to Dismiss under FRCP 12.  In the instant case, however, the Complaint contains pages and pages of factual allegations that go well beyond conclusory statements.

The instant pleadings contains far more than mere accusations and conclusory statements, including:

- Shane Roshto was aboard the *MODU Deepwater Horizon* on April 20, 2010;  (See Roshto Rec. Doc. 19, Second Amended Complaint, ¶ 7)
- The Vessel unexpectedly exploded throwing Shane Roshto overboard to his death; (See Roshto Rec. Doc. 19, Second Amended Complaint, ¶ 7)
- The specific equipment manufactured by Cameron, the multiplex control system, single and double preventers and wellhead connector, is alleged to be in use onboard and in connection with the *MODU Deepwater Horizon* and is claimed to be defective; (See Roshto Rec. Doc. 19, Second Amended Complaint, ¶ 7(d))
- The specific equipment manufactured by Cameron was alleged to be defective; (See Roshto Rec. Doc. 19, Second Amended Complaint, ¶ 15(a))

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal,* 129 S.Ct. 1937, 1949, *citing Twombly* 550 U.S., at 557.  In the instant case, the Court must assume the veracity of the facts pled in plaintiff's complaint.  The facts pled in the complaint, if proven, entitle the Plaintiff to the relief sought in the Complaint.  Thus, the Motion to Dismiss should be denied.

"The clear purpose of [FRCP 8] rule is to give notice to the other party and not to formulate issues or fully summarize the facts involved."  *Clausen & Sons, Inc. v. Theo. Hamm Brewing Co.*, C.A.8 (Minn.) 1968, 395 F.2d 388, *citing Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).  FRCP 8 requires only " a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds

upon which it rests." *Twombly* 550 U.S., at 555 *citing Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

In the instant case, Defendants have fair notice of the claims against them. Despite the alleged deficiencies in plaintiff's complaint, Cameron's own opposition succinctly states the claim asserted against it, "the Bundle A Pleadings [including those of Plaintiff] seek to impose liability on Cameron in its capacity as manufacturer of the *Deepwater Horizon* blowout preventer." Cameron's Omnibus Memorandum in Support at p 18 [Record Document 1154-1]. Clearly, Cameron understands the claims alleged, but seeks dismissal based on inapplicable case law and its self-serving theories regarding what must be pled and to what extent.

Further, Cameron blatantly misstates the applicable law, citing instead to cases dealing with the pleading standards applicable in a summary judgment situation rather than those applicable to Rule 12(b)(6), thereby attempting to impose a heightened standard of pleading on the plaintiff that is inapplicable. Specifically, Cameron cites *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254 (5th Cir. 2002) and *Broussard v. Procter & Gamble Co.*, 463 F.Supp.2d 596 (W.D. La. 2006), both of which concern the summary judgment standard, which is inapplicable.

The two cases that do apply the appropriate standard, *Jefferson v. Lead Indus. Assc., Inc.*, 930 F.Supp. 241, 245 (E.D. La. 1996) and *In re Air Bag Products Liability Litigation*, 7 F.Supp.2d 792, 800 (E.D. La. 1998), are both factually dissimilar and therefore equally inapplicable. For example, in *Jefferson*, the plaintiff failed to even identify the manufacturer of the product she alleged to have caused her injury. *Id.* Clearly failing to state the manufacturer of the alleged defective product amounts to a deficient pleading. However, there is no such deficiency in plaintiff's pleading. Instead, plaintiff has alleged both the manufacturer and the specific products alleged to be defective.

In *re Air Bag Products Liability Litigation,* the plaintiff explicitly disclaimed pursuing a cause of action under the LPLA. There are no such disclaimers in plaintiff's complaint and thus, *In re Air Bag Products Liability Litigation* serves no precedential value.

Additionally, this Court should consider the allegations of a defective blowout preventer contained in First Amended B1 Master Complaint directed at Cameron. (First Amended B1 Master Complaint at ¶¶ 230, 416, 423, 435, 440, 442, 443-51, 572, 603-606, 629-33, 636-58, 693, 694, 697-99 [Record Document 1128]). Although filed after Bundle A, the specific allegations of product liability are applicable to the Bundle A cases. The end result of the foregoing is that Cameron is fully aware of the basis for the lawsuits that have been filed and acknowledges the nature of the claims filed against it, satisfying the notice requirement.

In the alternative, should this Court find that plaintiff's pleadings are deficient, plaintiff should be granted leave to amend to cure whatever defect that may exist. Indeed, this would be easily accomplished in light of the detailed factual pleadings contained in B1 Master Complaint.

Lastly, even if this Court were to find the LPLA applicable, the exclusivity provisions in the LPLA do not preclude claims for negligence outside the scope of manufacturing. That is, a plaintiff may maintain claims against a manufacturer outside the LPLA where the claim does not stem from the party's role as a manufacturer. *See* Lavergne v. America's Pizza Co., 838 So.2d 845 (La.App. 3 Cir.2003); *Colbert v. Sonic Restaurants, Inc.,* ___ F.Supp. 2d ___, 2010 WL 3769131 (W.D. La. 2010); *Crawford v. Dehl*, 2008 WL 4186863 (W.D. La. 2008).

Upon information and belief, Cameron had a continuing role in the maintenance and operation of the blowout preventer long after the initial installation of the blowout preventer. Based on foregoing cases, any negligence committed by Cameron in such a role outside of manufacturer falls outside the exclusivity provisions of the LPLA. Nevertheless, as discussed below, the LPLA does not apply to the Plaintiff's claims against Cameron; rather, the Plaintiff's claims are proper

8

under the general maritime law.

**IV.     OCSLA's JURISDICTIONAL TEST VS. SUBSTANTIVE LAW TEST**

This Court has already indicated in other cases relating to the *MODU Deepwater Horizon* disaster that the judicial jurisdictional provision is completely independent of, and much broader in scope than, the test used to determine what substantive law applies under OCSLA. *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on April 20, 2010*, 2010 WL 3943451 at *3 (E.D.La. Oct. 6, 2010). Judicial Jurisdiction (§ 1349(b)(1)) requires only that the event occurred on the Outer Continental Shelf, defined as all submerged lands bordering the United States that are more than three miles from the coast, and that the event arose out of or related to mineral production.

Given the broad sweeping jurisdictional language of § 1349(b)(1) and the Federal Court's broad jurisdictional grant under 28 U.S.C. § 1333, there is often overlap between maritime and OCSLA jurisdiction. Case law clearly holds that there is *concurrent* jurisdiction between the two grants of jurisdiction. See, e.g., *Recar v. CNG Prod. Co.*, 853 F.2d 367, 369 (5th Cir. 1988) (noting "[t]he district court may well have both admiralty jurisdiction under the general maritime law and federal question jurisdiction by virtue of OCSLA."); *Tennessee Gas Pipeline v. Houston Cas. Ins. Co.*, 87 F.3d 150, 155 (5th Cir. 1996) (same); *Strong v. B.P. Exploration & Production, Inc.*, 440 F.3d 665 (5th Cir. 2006) (holding that the plaintiff properly pleaded jurisdiction under § 1349(b)(1) but that the case also fell within admiralty jurisdiction and was therefore governed by federal maritime law).

Unlike the broad Judicial Jurisdiction granted by OCSLA, the test for what substantive law applies is far more restrictive, having been interpreted to mean "federal law [meaning maritime law] governs . . . to the extent that there is applicable federal law; however, if there is a gap in the federal law, the law of the adjacent state is used as a gap-filler and becomes surrogate federal law." *Bartholomew v. CNG Producing Co.,* 862 F.2d 555, 557 (5th Cir. 1989).

In the Fifth Circuit, state law will only apply as a surrogate to Federal Law under OCSLA if it can pass the stringent test set forth in *Union Text Petroleum Corp. v. PLT Engineering, Inc.,* 895 F.2d 1043 (5th Cir. 1990). The *PLT* test requires that three preconditions be met: "(1) The controversy must arise on a situs covered by OCSLA (i.e. the subsoil, seabed, or artificial structures permanently or temporarily attached thereto), (2) federal maritime law must not apply of its own force, and (3) the state law must not be inconsistent with Federal law." *Id.* at 1047. The law of the adjacent state will only apply upon meeting all three prerequisites. *See Grand Isle Shipyard, Inc. v. Seacor Marine*, LLC, 589 F.3d 778, 783 (5th Cir. 2009) (*en banc*).

### A.  *MODU Deepwater Horizon Fails PLT Factor #1:"Situs"*

In its most recent en banc decision addressing OCSLA, the Fifth Circuit summarized the governing law as follows:

> [I]n a tort action, *Rodrigues* [*v. Aetna Cas. & Sur. Co., 395 U.S. 352 (1969)*] illustrates that the OCSLA situs requirement is met if the tort occurs on a platform or other OCSLA covered situs as provided in § 1333(a)(2)(A). ... The converse is also equally clear. In a tort action, if the tort occurs on navigable water instead of a fixed platform (or other structure attached to the seabed), the OCSLA situs requirement is not met [citing *Tallentire*].

*Grand Isle Shipyard*, 589 F.3d at 784. The Fifth Circuit's recent holding in *Grand Isle Shipyard* echoes previous holdings by the Supreme Court and the Fifth Circuit finding that 43 U.S.C. § 1333(a) creates a "situs" requirement for the application of surrogate state law under OCSLA. *Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 219 (1986); *Demette v. Falcon Drilling Co.,* 280 F.3d 492, 496 (5th Cir.2002). The Fifth Circuit has conclusively stated that the "situs" required to trigger OCSLA refers to the location of the injury. *See, e.g., Demette,* 280 F.3d at 496 ("First, we must determine whether the injury occurred on an OCSLA situs . . ."); *Mills v. Director, Office of Workers' Compensation Programs,* 877 F.2d 356 (5th Cir.1989) (*en banc*) (holding that the applicability of § 1333(b) is limited to the "situs" of injury).

Clearly the *MODU Deepwater Horizon* does not meet the *PLT* "situs" test. Cameron's argument ignores the foregoing case law that demonstrates that the *MODU Deepwater Horizon* is a vessel under maritime law. Further, the *MODU Deepwater Horizon* was never attached or physically secured to the seabed. Instead, the vessel relied on a complex series of thrusters to keep the vessel stabilized and centered over its wellhead and 5,000-foot long riser pipe. Cameron's argument presents a very selective recital of the legislative history, while ignoring controlling Fifth Circuit caselaw that demonstrates that the *MODU Deepwater Horizon* was not within the narrow confines that allow for application of adjacent state law. See *Sanamo v. Trico Marine Services, Inc.*, 73 Fed.Appx. 79, 2003 WL 21756647 at *3 (5th Cir. 2003) ("A jack-up rig that is not jacked up . . . does not necessarily constitute an OCS situs. . . . [A] jack-up rig is a floating rig that can be towed to a particular site. Until it is attached to the seabed and erected, it cannot be considered an OCSLA situs."); *United States v. Pickett*, 598 F.3d 231, 236 (5th Cir. 2010) (Clement, J., concurring) ("for a rig or platform to be [covered by OCSLA] it must be 'erected' upon the Outer Continental Shelf. . . . ; OCSLA does not apply to vessels that float on the water."); *Id.* (stating that a pipelay barge that "drops eight large anchors to stabilize its position . . . is not erected on the OCS" so as to be covered by § 1333(a)(1)); *Demette*, 280 F.3d at 499-500 (stating that a drilling rig tender, "attached to the OCS only by an anchor," was not an OCSLA situs). Based on the foregoing, Cameron cannot meet the first *PLT* factor, thereby failing one of the three mandatory prerequisites and necessarily precluding the application of adjacent state law.

B.  *PLT Factor #2: Maritime Law Applies "Of Its Own Force"*

A showing that admiralty jurisdiction exists over Plaintiff's claims likewise precludes Cameron's argument that adjacent state law applies through OCSLA. This stems from the long-standing jurisprudence that "with admiralty jurisdiction comes the application of substantive admiralty law." *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 865 (1986). Not

11

surprisingly, the same holds true in OCSLA litigation. *See Strong,* 440 F.3d at 668-670 (addressing *PLT* Factor #2 by conducting an admiralty jurisdiction inquiry and concluding: "[b]ecause Strong has alleged a traditional maritime tort, federal maritime law applies of its own force, precluding incorporation of state law under OCSLA"); *Hodgen v. Forest Oil Corp.,* 87 F.3d1512, 1524-25 (5th Cir. 1996) (stating that "whether a contract is maritime [for admiralty jurisdiction purposes] and whether maritime law applies of its force [for purposes of *PLT* Factor #2] [are]identical . . . inquiries."); *Laredo Offshore Constructors, Inc. v. Hunt Oil Co.*, 754 F.2d 1223, 1229 (5th Cir. 1985) (noting that "where admiralty and OCSLA jurisdiction overlap, the case is governed by maritime law"); *Hufnagel v. Omega Service Industries, Inc.*, 182 F.3d 340, 350 (5th Cir. 1999) ("Because OCSLA does not displace general maritime law, substantive maritime law continues to govern where both OCSLA and general maritime law could apply.").

The Supreme Court's pronouncement of admiralty tort jurisdiction in *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995), makes admiralty jurisdiction irrefutable in the instant matter. According to the *Grubart* Court:

> [A] party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity. A court applying *the location test* must determine whether the tort occurred on navigable water. . . . the connect test raises two issues. A court, first, must assess the general features of the type of incident involved to determine whether the incident has a *potentially disruptive impact on maritime commerce.* Second, a court must determine whether the general character of the activity giving rise of the incident shows a *substantial relationship to traditional maritime activity.*

The "location" test requires only that the tort occur on navigable waters. The injuries and death in the instant case occurred in the Gulf of Mexico, which is unquestionably a navigable waterway. Next, the incident must have had the potential to disrupt maritime commerce, a fact that Cameron has readily conceded. Lastly, there must be a "substantial relationship" between the tort and traditional maritime activities.

> The *Grubart* Court explains this factor as:
>
> [W]e need to look only to whether *one* of the arguably proximate causes of the incident originated in the maritime activity of a tortfeasor: as long as *one* of the putative tortfeasors was engaged in traditional maritime activity the allegedly wrongful activity will "involve" such traditional activity and will meet the second nexus prong.

*See also Scarborough v. Clemco Industries*, 391 F.3d 660, 665 (5th Cir. 2004) (same, quoting *Grubart*); *Raffray v. Gulf Logistics, LLC,* 2010 WL 5055849 at * 3 (E.D. La. 2010) (same); Maraist, Galligan & Maraist, *Admiralty in a Nutshell* 43 (6th Ed. 2010) (same). Therefore, a finding that even one joint tortfeasor was involved in a traditional maritime activity supports a finding of admiralty jurisdiction.

The Fifth Circuit has consistently held that the operation of drilling and exploration vessels such as the *MODU Deepwater Horizon* constitutes "traditional maritime activity." Therefore, the *Grubart* test is satisfied, and admiralty jurisdiction exists.

Further, even if Cameron's activities - the manufacture of blow out preventers - does not constitute a "traditional maritime activity," it certainly bears a "substantial relationship to traditional maritime activity," as required by *Grubart*. The blowout preventer, manufactured by Cameron, is a crucial component to successful maritime oil and gas exploration. Therefore, Cameron's manufacture of a crucial component to a traditional maritime activity bears a "substantial" relation, and accordingly supports admiralty jurisdiction.

Lastly, the cases relied on by Cameron, *Herb's Welding, Inc. v. Gray,* 470 U.S. 414 (1985); *Rodrigue v. Aetna Casualty & Surety Co.,* 395 U.S. 352 (1969); and *Texaco Exploration and Production, Inc. v. AmClyde Engineered Products Co., Inc.,* 448 F.3d 760 (5th Cir.), *cert. denied,* 549 U.S. 1053 (2006), are distinguishable from the facts of the instant case. Both *Herb's Welding* and *Rodrigue* are distinguishable because both involved injuries that occurred on *fixed* platforms.

Accordingly, both failed the location test. Since the instant case deals with a vessel in navigation rather than a fixed platform, these cases are inapplicable.

*Texaco* is likewise distinguishable, albeit on a slightly different basis. First, the plaintiff in *Texaco* did not sue a vessel owner or operator as the plaintiff has in the instant case. Further, the plaintiff in *Texaco* did not sue any defendant that was engaged in a traditional maritime activity. Based on these differences, the holding in *Texaco* is distinguishable from the instant case.

Therefore, Cameron cannot demonstrate Part #1 or Part #2 of the *PLT* test. Since a failure to meet even one part of the *PLT* test is fatal, there is no basis for the application of Louisiana Law.

### V.     PLAINTIFF'S ACTION UNDER MARITIME PRODUCT LIABILITY IS VIABLE

In *East River S.S. Corp. v. Transamerica Delaval, Inc*., 476 U.S. 858 (1986), the United States Supreme Court recognized a strict products liability cause of action arising under the general maritime law. In that case, the Supreme Court wrote that ". . . the question whether principles of strict products liability are part of maritime law 'is no longer seriously contested.'" *Id.* (citing *Ocean Barge Trans. Co. v. Hess Oil*, 726 F.2d 121 (3rd Cir. 1984)). *East River*, citing with favor *Pan-Alaska Fisheries Inc. v. Marine Const. & Design Co*., 565 F.2d 1129 (9th Cir. 1977). Since maritime products liability jurisdiction depends on a finding of general maritime jurisdiction, where there is general maritime jurisdiction, there is also jurisdiction for a maritime products liability claim.

Considering the above analysis demonstrating the existence of admiralty jurisdiction, there can be no question that plaintiff's stated claims for general maritime product liability are proper. The existence of admiralty jurisdiction precludes the application of the LPLA, and therefore, the LPLA's exclusivity provision does not displace a valid claim for product liability under the general maritime law.

## VI. CONCLUSION

Accordingly, Cameron's Motion to Dismiss/Judgment on the Pleadings regarding Bundle A, and specifically concerning the complaints filed by Natalie Roshto, should be DENIED.

Respectfully submitted,

**MARTZELL & BICKFORD, A.P.C.**

/s/ Scott R. Bickford
**SCOTT R. BICKFORD T. A., (#1165)**
**NEIL F. NAZARETH (#28969)**
338 Lafayette Street
New Orleans, LA  70130
504/581-9065 (Telephone)
504/581-7635 (FAX)
usdcedla@mbfirm.com

and

RONNIE G. PENTON (#10462)
Law Offices of Ronnie G. Penton
209 Hoppen Place
Bogalusa, LA 70427
(985) 732-5651
(985) 735-5579
rgp@rgplaw.com

### Certificate of Service

I hereby certify that the above and foregoing pleading was electronically filed through the CM/ECF System and/or LexisNexis File & Serve, in accordance with Pretrial Order No. 12, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179 too all counsel of record on this the 14th day of March, 2011.

/s/ Scott R. Bickford
SCOTT R. BICKFORD