UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| | * | |
| In re: DEEPWATER HORIZON | * | MDL 2179 |
| | * | |
| (This Pleading Applies Only To Case Nos. | * | SECTION J (JUDGE BARBIER) |
| 10-cv-01156 Roshto) | * | |
| | * | |
| | * | MAGISTRATE (JUDGE SHUSHAN) |
| | * | |
| | * | |

**************************************************************************

<u>MEMORANDUM IN OPPOSITION OF PLAINTIFF, NATALIE ROSHTO,
TO DEFENDANTS HALIBURTON ENERGY SERVICES, INC. AND HALIBURTON
COMPANY'S OMNIBUS MOTION TO DISMISS</u>

**MAY IT PLEASE THE COURT:**

Plaintiff, Natalie Roshto, individually and as personal representative of the estate of Shane

Roshto, (deceased) and her minor son, Blaine Roshto, submits this Memorandum in Opposition to

the Motion to Dismiss for Failure to State a Claim filed by Defendant, Halliburton Energy Services

Inc. ("HESI") and Haliburton Company ("HALCO" and sometimes collectively referred to as

"HESI"), for the reasons that: (1) Plaintiff's claim are sufficiently pled under Rule 8; (2) Plaintiff's

claims under the Jones Act, DOSHA and the General Maritime Law are proper; and (3) Defendants'

motions are premature as discovery is in its early stages. Accordingly, HESI's Motion should be

Denied.

Natalie Roshto is the widow of Shane Roshto, a seaman employed by Transocean who was working aboard the *MODU Deepwater Horizon* when the vessel exploded, caught fire, and ultimately sank. Shane Roshto was killed as a result of the disaster, leaving behind his wife, Natalie, and their son, Blaine Roshto. Plaintiff opposes HESI's Motion to Dismiss (Record Document 1179) and will address the issues raised by HESI in the order that they are raised by HESI in their Omnibus Memorandum in Support of Motion to Dismiss (Record Document 1195).

## OVERVIEW OF ARGUMENTS

I.      Law on12(b)(6)

II.     Jones Act Claims for Maintenance and Cure and Unseaworthiness

III.    Sufficiency of Plaintiff's Complaint – Twombly/Iqbal

IV.     Punitive & Non-Pecuniary Damages are Available Under the General Maritime Law

V.      Strict Liability for Ultrahazardous Activities

VI.     *Res Ipsa* is a Rule of Evidence NOT a Claim Capable of Dismissal

VII.    Product Liability

VIII.   Gross Negligence

IX.     Standing Under the General Maritime Law

X.      Claims Against Sperry-Sun Drilling

XI.     Discovery Should Be Allowed Before Determining Personal Jurisdiction

XII.    Conclusion

I.      **LAW ON FRCP 12(b)(6)**

In deciding a motion to dismiss filed under Federal Rule of Civil Procedure ("FRCP") 12(b)(6), the court must accept as true all well-pleaded statements, viewed in the light most favorable to the non-moving party. *Eason v. Holt*, 73 F.3d 600, 601 (5th Cir. 1996). Dismissal is not proper "unless it appears, based solely on the pleadings, that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* A motion to dismiss pursuant to FRCP 12(b)(6) is "viewed with disfavor and is rarely granted." *Lowery v. Texas A&M University System*, 117 F.3d 242, 247 (5th Cir. 1997); *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982).

II.     **Jones Act Claims for Maintenance and Cure and Unseaworthiness**

HESI's motion on this point is somewhat confusing. In none of plaintiff's complaints has a request for maintenance and cure been pled against HESI. Accordingly, HESI's motion on this point is moot.

While plaintiff has asserted a claim for unseaworthiness, that claim is not being brought against HESI. Instead, plaintiff is bringing the claim for unseaworthiness against the owners and operators of the *MODU Deepwater Horizon*. Accordingly, HESI's motion on this point is likewise moot.

III.    **Sufficiency of Plaintiff's Complaint – *Twombly/Iqbal***

In support of their argument, HESI cites the recent United States Supreme Court opinions of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*,129 S.Ct. 1937, 173

L.Ed.2d 868 (2009).  A close reading of the Plaintiff's Complaints show that Plaintiff meets the

pleading standard set forth in *Iqbal* and *Twombly*.

Under FRCP 8(a)(2), a pleading must contain a "short and plain statement of the claim

showing that the pleader is entitled to relief."  The Unites States Supreme Court in *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929, stated that the pleading standard

Rule 8 announces does not require "detailed factual allegations," but it demands more than an

unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555, 127 S.Ct. 1955 (citing

*Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). The Supreme Court

stated that a pleading that offers "labels and conclusions" or "a formulaic recitation of the elements

of a cause of action will not do." *Iqbal,* 129 S.Ct. 1937*, 1949, citing Twombly* 550 U.S., at 555, 127

S.Ct. 1955.

The Supreme Court in *Iqbal* described the *Twombly* decision as follows:

Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. I*d*., at 555, 127 S.Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we *1950  "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556, 127 S.Ct. 1955. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

*Iqbal*, 129 S.Ct. 1937, 1949.  Obviously, the Supreme Court in *Iqbal* and in *Twombly* has stated that

the-defendant-unlawfully-harmed-me accusations and conclusory statements will not survive a

Motion to Dismiss under FRCP 12.

As the *Twombly* court noted, "asking for plausible grounds to infer an agreement does not

impose a probability requirement at the pleading stage; it simply calls for a reasonable expectation

that discovery will reveal evidence of illegal agreement." *Twombly*, 550 US at 556.  Thus, the

standards announced in *Iqbal* and *Twombly* do not impose a requirement that plaintiff have a high

probability of success, but rather requires that a plaintiff's complaint be plausible.  A complaint is

plausible if there is a reasonable chance that plaintiff will be able to support their claim after

conducting discovery.  In the instant case, however, the Complaint contains pages and pages of

factual allegations that go well beyond conclusory statements.

The instant pleadings contains far more than mere accusations and conclusory statements,

including:

1.

(G)     HALLIBURTON ENERGY SERVICES, INC., (HALIBURTON ENTITY),
        hereinafter referred to as "Halliburton," is a foreign corporation doing
        business in the State of Louisiana;

7b.

Defendant herein, HALLIBURTON INTERESTS, prior to the explosion,

were engaged in cementing operations of the well and well cap and, upon

information and belief, improperly and negligently performed these duties, which

was a cause of the explosion.  Defendant herein, SPERRY, prior to the explosion,

was engaged in monitoring gas levels and other "measurement while drilling" and

"surface data logging" and, upon information and belief, improperly and negligently performed these duties, which was a cause of the explosion.

7e.

Defendant herein, MI SWACO, was contracted to provide drilling fluid services to the rig DEEPWATER HORIZON, owned by Transocean and leased to BP.  MI Swaco, in conjunction with Halliburton failed to maintain appropriate drilling fluid weight before and during the cement operation, thus allowing gas to escape and ignite, ultimately resulting in a deadly explosion.

12.

These casualties occurred as a result of the negligence of defendants, TRANSOCEAN ENTITIES, BP ENTITIES, WEATHERFORD, CAMERON, HALLIBURTON ENTITIES and MI SWACO.  These acts of negligence render the defendants liable to plaintiffs pursuant to the provisions of 46 USC § 30104 and the general maritime law for negligence.

15.

The above-described incidents were caused solely by the negligence of defendants, TRANSOCEAN ENTITIES, BP ENTITIES, WEATHERFORD, CAMERON, HALLIBURTON ENTITIES, and MI SWACO through their agents, servants and employees, which are more particularly described as follows:

### NEGLIGENCE OF HALLIBURTON ENTITIES

(a)     Failing to sufficiently and competently perform cementing operations aboard the vessel;

(b)     Failing to properly supervise its employees;

( c )    Failing to properly train and/or supervise plaintiff decedent  and other employees;

(d)    Failing to provide plaintiff with a safe place to work, and requiring plaintiff to work in unsafe conditions;

(e)    Failing to provide sufficient personnel to perform operations aboard the vessel;

(f)    Failing to exercise due care and caution;

(g)    Failing to avoid this accident;

(h)    Other acts of negligence which will be shown more fully at trial.

*See* Roshto Rec. Doc. 19, Second Amended Complaint, ¶¶ 1(G), 1(H), 7(b), 7(e), 12 and 15, respectively, attached as Exhibit 1.  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal,* 129 S.Ct. 1937, 1949, *citing Twombly* 550 U.S., at 557.  In the instant case, the Court must assume the veracity of the facts pled in plaintiff's complaint.

Additionally, in the instant case there is no question that there was a catastrophic explosion and fire onboard the *MODU Deepwater Horizon* that directly caused injures and deaths to many onboard, including Shane Roshto.  HESI's role in the disaster has already been established and will continue to become more defined through discovery.  This is not an instance where a defendant may or may not have played a part in an accident.  It is hard to imagine a more "plausible" claim than those stemming from the *MODU Deepwater Horizon.*

The facts pled in the complaint, if proven, entitle the Plaintiff to the relief sought in the complaint.  Therefore, HESI's motion should be DENIED.

**A.      Fair Notice**

In addition to the facial plausibility requirement discussed above, *Iqbal* and *Twombly* also require that a plaintiff's complaint provide a defendant with "fair notice of the claims against it." *Wright v. Shell Offshore, Inc.,* 2011 WL 690530 (E.D. La. Feb. 17, 2011) (Barbier, J.).  In *Wright*, this Court addressed the *Iqbal/Twombly* standard in a maritime setting.  Mr. Wright asserted claims under the Jones Act for products liability for his exposure to benzene containing chemicals against both his employer and product manufacturers.  *Id.* at *1.  After Mr. Wright died, his survivors were added to the suit.  *Id.*  This Court denied a 12(b)(6) filed by 3M Company, finding that the plaintiff had "sufficiently pled enough facts to give defendant 3M Company fair notice of the claims against it in order to survive dismissal under Rule 12(b)(6)" and that any lack of detail did not warrant dismissal.  *Id.* at *2.  This Court found that Mr. Wright had stated a plausible claim and had provided fair notice of the claims; the sum of what *Iqbal/Twombly* requires.  *Id.*

In *Wright*, plaintiff alleged damages occurring over a span of thirty years, against a multitude of employers and manufactures.  In comparison, Plaintiff's claims arise from a single tragic occurrence where there is no question as to the time and place.  Further in *Wright* the connection between benzene exposure and leukemia was highly disputed; in the instant case no such question of plausibility exists.  Based on the holding in *Wright* there is no question that plaintiff has stated both a plausible theory of recovery and sufficiently put HESI on notice.

And in fact, HESI's own opposition succinctly states the claims asserted against it, acknowledging that the plaintiff alleges that HESI was negligent while engaged in cementing operations.  See HESI's Omnibus Memorandum in Support at pgs. 3, 15-16 [Record Document 1154-1]. Given the time frame during which this suit was filed, the days following this incident, and

the information that has now come to light regarding HESI's role in this incident, it is clear that

HESI is on notice as to why plaintiffs in so many cases concerning this incident have named HESI

as a defendant. *See* Presidential Oil Spill Commission, http://www.oilspillcommission.gov, (stating

HESI's negligence in its cementing activities is indeed implicated in the blowout).  Clearly, HESI

understands the claims alleged but seeks dismissal based on inapplicable case law and its self-

serving theories regarding what must be pled and to what extent.  The foregoing sufficiently put

HESI on notice as to Plaintiff's allegations, and it understands the claims quite well as evidenced

in its motion to dismiss, which satisfy the Rule 12  notice requirement.  Therefore, HESI's argument

on this issue must be denied.

**IV.     Punitive & Non-Pecuniary Damages are Available Under the GML**

Natalie Roshto, as the personal representative of the estate of Shane Roshto, a Jones Act

Seaman, is entitled to pursue a number of maritime actions, including negligence against Mr.

Roshto's employer/employers; the vessel owner/owners for unseaworthiness under the general

maritime law; products liability under the general maritime law; negligence under the general

maritime law; claims pursuant to Death on the High Seas Act ("DOHSA"); and a death action under

the Jones Act.  The multitude of actions available to plaintiff is important because they demonstrate

the oversimplification and confusion of standards employed by HESI's motion.

First, it is clear that under both the Jones Act and DOHSA, a survivor can recover for lost

economic support resulting from the worker's death.  *See DeCenteno v. Gulf Fleet Crews,* Inc., 798

F.2d 138, 141, (5th Cir. 1986) (loss of support recoverable under Jones Act); *Bergen v. F/V St.*

*Patrick, supra* (loss of support recoverable under DOHSA).

Likewise, HESI's mistakenly argues that punitive damages are not available under DOHSA. In *Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008), the Supreme Court affirmed maritime law's long-standing recognition of punitive damages as an item which may be recovered when defendant's conduct justifies such an award. In *Atlantic Sounding Co. v. Townsend*, 129 S.Ct. 2561 (2009), the Court affirmed the right of a seaman to recover punitive damages from employer/shipowners when the seaman's settled maritime-law rights were egregiously violated. As an action based on the general maritime law, these holdings demonstrate that punitive damages are available under DOHSA.

Further, the Supreme Court has never ruled that punitive damages are not recoverable under DOHSA. Instead, 46 U.S.C. § 30303 allows the successful plaintiff to recover "fair compensation for the pecuniary loss sustained." Simply put, there is no controlling precedent that punitive damages are not available under DOHSA. In light of caselaw indicating that punitive damages are available, and the absence of a definitive holding that such damages are not available, it would be improper to dismiss such claims at this early juncture.

HESI also challenges the recoverability of non-pecuniary damages under the Jones Act death remedy. This argument is misplaced. Initially, it is clear that under the Jones Act, damages for the seaman's conscious pain and suffering before death are allowed. 45 U.S.C. § 59; *Snyder v. Whittaker Corp.*, 839 F.2d 1085,1092-1094 (5th Cir. 1988); *DeCenteno v. Gulf Fleet Crews, Inc.*, 798 F.2d 138, 142 (5th Cir. 1986).

HESI also challenges the availability of punitive damages under the Jones Act. HESI bases this assertion on *Guevara v. Maritime Overseas Corp.*, 59 F.3d 1496, 1512, (5th Cir. 1995) (en banc). In *Guevara* the Fifth Circuit held that a seaman was not entitled to seek punitive damages

from an employer who blatantly violated its maintenance and cure obligation to the seamen.  In dicta

the court said " the Jones Act does not provide for punitive damages."  *Id.*  However, any minimal

weight that the statement my have carried was lifted when *Guevara* was  "abrogat[ed]" by *Atlantic*

*Sounding Co. v. Townsend*, 129 S.Ct. 2561 (2009) (The Court held that a seaman was entitled, as

a matter of general maritime law, to seek punitive damages for his employer's alleged willful and

wanton disregard of its maintenance and cure obligation).

In fact, the Supreme Court has gone out of its way to flag the availability of punitive damages

in Jones Act cases.  In *Townsend*, the Court stated:

> Because we hold that *Miles [v. Apex Marine Corp.* 498 U.S. 19] does not render the
> Jones Act's damages provision determinative of respondent's remedies, we do not
> address the dissent's argument that the Jones Act, by incorporating the provisions of
> the Federal Employer's Liability Act, see *46 U.S.C. § 20104(a)*, prohibits the
> recovery of punitive damages in actions under the statute.

*Townsend*, 129 S.Ct. at 2575, n.12 (citation omitted).  Thus, in *Townsend* the Court makes clear that

neither that opnion, nor its previous holding in *Miles*, preclude the award of punitive damages under

the Jones Act.  Instead, *Townsend* and *Miles* dealt with the *kinds* of compensatory damages available

in maritime death cases.

Further, support for the proposition that seamen can recover punitive damages under the Jones

Act is seen in the Supreme Court's holding in *Exxon Shipping v. Baker*.  In *Baker,* the Court allowed

"commercial fishermen, native Alaskans and landowners" whose livelihoods were directly impacted

by the oil spill to recover punitive damages under maritime law.  128 S.Ct. at 2613.  While certainly

these claimants were entitled to recovery, they have not been traditionally viewed as a "favored

class."  In contrast the Supreme Court has repeatedly held that Jones Act seamen are a "favored

class," and found that the Jones Act does not eliminate or restrict other causes of action. *Bainbridge v. Merchs. & Miners Transp. Co.*, 287 U.S. 278, 282 (1932) ("favored class"); See *Garrett v. Moore-McCormack Co.*, 317 U.S. 239, 248 (1942); *Arizona v. Anelich*, 298 U.S. 110,1231 (1936); *Bainbridge v. Merchs and Miners' Trans. Co.*, 287 U.S. 278, 282 (1932) (Jones Act does not eliminate other rights of action available to seamen).  In fact, seamen had the right to recover punitive damages before the enactment of the Jones Act. See, e.g., *Swift v. Happy Return*, 23 F.Cas 560 (D. Pa. 1799); *Gould v. Christianson*, 10 F.Cas. 857 (S.D.N.Y. 1836); *The Rolph*, 293 F. 269, 270 (N.D. Cal. 1925); *The Margharita*, 140 F. 820, 821, 825 (5th Cir. 1905); *The Scotland*, 42 F. 925 (S.D.N.Y. 1890).

Withholding punitive damages from Jones Act Seamen, a "favored class," while allowing land owners to recover punitive damages, would run counter to the long standing tennants of maritime law.  There is nothing in the language or history of the Jones Act that indicates that punitive damages are not recoverable, nor has any court so held.  Accordingly, Jones Act Seamen and their representatives can recover punitive damages, and HESI's motion on this point should be denied.

**V.      Strict Liability for Ultrahazardous Activities**

HESI argues that maritime law does not recognize the "ultrahazardous activity" doctrine and attendant strict liability.  While some courts have found this to be the case, the Fifth Circuit has not directly answered this question.  Therefore, it would be imprudent to dismiss a cause of action that has been neither directly recognized nor foreclosed in the Fifth Cirucit, especially in light of the growing trend towards recognition.

In explicitly recognizing strict product liability under maritime law, the Court in *East*

*RiverSteamship Corp. v. TransAmerica Delaval, Inc.,* 476 U.S. 858, 864-66 (1986), noted that where admiralty jurisdiction exists, substantive admiralty law is applicable, and substantive admiralty law is "drawn from state and federal sources, the general maritime law is an amalgam of traditional common law rules, modifications of those rules, and newly created rules." Id. at 864.   The Court noted that the strict product liability had long been a part of the common law and further noted that the Court had long been headed towards strict product liability to protect seamen. *Seas Shipping Co. v. Sieracki,* 328 U.S. 85, 94 (1946) (strict liability for unseaworthiness); and *Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co.,* 376 U.S. 315, 322 (1964) (strict liability for breach of implied warranty of workmanlike service).

It has long been recognized that mineral exploration is an inherently dangerous task, a fact that has become even more true as the depth of the drilling continues to deepen and the price of minerals increases.  In recognition of the ultrahazardous nature of deepwater drilling, and the various other areas of the law where strict liability is already imposed, it is crucial that strict liability be imposed under maritime law.  Therefore, this Court should find that the maritime law recognizes the tort of strict liability.

**VI.     *Res Ipsa loquitur* is a Rule of Evidence, not a Claim Capable of Dismissal**

*Res ipsa loquitur* is an evidentiary doctrine, not a cause of action. *See Kerns v. Sealy*, 496 F.Supp. 2d 1306, 1315 n. 13 (S.D. Ala. 2007).  *Res Ipsa* is not a theory of recovery, but rather a way of proving plaintiff's other theories of recovery.  Additionally, motions to dismiss *Res ipsa loquitur* under Rule 12(b)(6) are not intended to address issues of evidence.  In order to be dismissed under Rule 12(b)(6) there must be some cause of action at which the motion is directed.  Therefore, HESI's motion should be denied.

Moreover, Plaintiff's pleadings support the imposition of *res ipsa loquitur*. In the Fifth Circuit, *res ipsa loquitur* will apply where: 1) the injured party was without fault; 2) the instrumentality causing the injury was under the exclusive control of the defendant; and 3) the accident is of a type that ordinarily does not occur in the absence of negligence. *See, U.S. v. Nassau Marine Corp.*, 778 F.2d 1111, 1115. In the instant case, HESI does not dispute the presence of elements #1 and #3. Therefore, the only remaining question is whether HESI exercised control over the *MODU Deepwater Horizon.*

HESI attempts to avoid imposition of *Res Ipsa* by overstating the amount of control required by the doctrine. The doctrine does not require that the party have exclusive control over the entire chain of events. Instead, the party need only have controlled an instrument as a possible source. *Bradshaw v. Freightliner Corp.*, 937 F.3d 197, 201 (5th Cir. 1991). In *Bradshaw*, for example, the court found that although the designer of a truck seat was not in control of the truck at the time of the accident, this finding did not prevent the application of *res ipsa loquitur*. *Id.* As in *Bradshaw*, the doctrine will apply even where the instrument so controlled was merely a component of a larger device. *Id.*

Therefore, the lack of HESI's absolute control at the time of the incident is irrelevant and is not dispositive and was precisely the argument that was rejected by the Fifth Circuit in *Bradshaw*. Therefore, HESI's motion on this point should be denied.

## VII.    Product Liability

In this section, HESI appears to be arguing that cement is not a "product" under general maritime product liability law. This argument is nonsensical. Cement is a product - it is a tangible good that is bought and sold - it is without question that cement is a product under the general

maritime law. *See Boyett v. Keene Corp.,* 815 F.Supp. 204 (E.D. Tex. 1993) (seamen suing under general maritime law; asbestos containing cement deemed "product"). Further, Plaintiff's claim sounds in Products Liability under the General Maritime Law.

In *East River S.S. Corp. v. Transamerica Delaval, Inc*., 476 U.S. 858 (1986), the United States Supreme Court recognized a strict products liability cause of action arising under the general maritime law. In that case, the Supreme Court wrote that ". . . the question whether principles of strict products liability are part of maritime law 'is no longer seriously contested.'" *Id.* (citing *Ocean Barge Trans. Co. v. Hess Oil*, 726 F.2d 121 (3rd Cir. 1984)). *East River*, citing with favor *Pan-Alaska Fisheries Inc. v. Marine Const. & Design Co.*, 565 F.2d 1129 (9th Cir. 1977). The Court also noted that "with admiralty jurisdiction comes the application of substantive admiralty law." *East River,* 476 U.S. at 865. Since maritime products liability jurisdiction depends on a finding of general maritime jurisdiction, where there is general maritime jurisdiction, there is also jurisdiction for a maritime products liability claim.

The Supreme Court's pronouncement of admiralty tort jurisdiction in *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995), makes admiralty jurisdiction irrefutable in the instant matter. According to the *Grubart* Court:

> [A] party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity. A court applying *the location test* must determine whether the tort occurred on navigable water. . . . the connect test raises two issues. A court, first, must assess the general features of the type of incident involved to determine whether the incident has a *potentially disruptive impact on maritime commerce*. Second, a court must determine whether the general character of the activity giving rise of the incident shows a *substantial relationship to traditional maritime activity*.

The "location" test requires only that the tort occur on navigable waters. The injuries and death in the instant case occurred in the Gulf of Mexico, which is unquestionably a navigable

waterway.  Next, the incident must have had the potential to disrupt maritime commerce, a question that can already be answered in the affirmative.  Lastly, there must be a "substantial relationship" between the tort and traditional maritime activities.

This test can be met by showing that any single joint tortfeasor was engaged in a "traditional maritime activity." *Scarborough v. Clemco Industries*, 391 F.3d 660, 665 (5th Cir. 2004) .  The Fifth Circuit has repeatedly recognized oil and gas exploration such as that which Transocean and BP were engaged as "traditional maritime activity." See e.g., *Hufnagel v. Omega Service Industries, Inc.*, 182 F.3d 340, 352-53 (5th Cir. 1999)(noting the distinction between tort claims arising on fixed platforms in which admiralty law does not apply and claims arising on drilling vessels in which admiralty law does apply); *Theriot v. Bay Drilling Corp.,* 783 F.2d 527, 538-39 (5th Cir.1986) ("oil and gas drilling on navigable waters aboard a vessel is recognized to be maritime commerce."). Regardless, HESI's actions have "significant relation" to a maritime activity, thereby supporting maritime jurisdiction and maritime products liability.

Regardless of which theory of Products Liability is applied, HESI's motion still fails and the Plaintiff's complaint sufficiently pleads a viable cause of action under the general maritime law.

However, if this Court finds that plaintiff's claim is not adequately pled, Plaintiff requests leave to amend and correct any deficiencies.

## VIII.   Gross Negligence

Plaintiff believes that she has adequately pled gross negligence and reckless behavior by HESI.  Further, as to sufficiency, *see Iqbal/Twombly* discussion above.  However, should this Court find otherwise, plaintiff requests leave to amend and correct any deficiencies.

## IX.   Standing Under the General Maritime Law

Natalie Roshto, as the widow and personal representative of the estate of Shane Roshto, and mother and personal representive of their son Blaine Roshto, is undeniably the proper party to bring

suit in the name of Shane Roshto.  Ms. Roshto's role as personal represenaive has been adequately

pled, and her relationship adequately demonstrated.  Further, as to sufficiency, *see Iqbal/Twombly*

discussion above.  However, should this Court find otherwise, plaintiff requests leave to amend and

correct any deficiencies.

## X.      Claims Against Sperry-Sun Drilling

Federal Rule of Civil Procedure 17(a)(3), expressly rejects the dismisal sought by HESI.

Specifically, Fed. R. Civ. P. 17(a)(3) provides:

> (3) Joinder of the Real Party in Interest.
> The court may not dismiss an action for failure to prosecute in the name of
> the real party in interest until, after an objection, a reasonable time has
> been allowed for the real party in interest to ratify, join, or be substituted
> into the action. After ratification, joinder, or substitution, the
> actionproceeds as if it had been originally commenced by the real party in
> interest**.**

The express language of the Rule provides plaintiff with a reasonable time in which to substitute the

real party in interest.  As HESI has admitted that Sperry Sun is a division within HESI, plaintiff

should be afforded reasonable time to substitute HESI in the stead of Sperry-Sun.

## XI.     Discovery Should Be Allowed Before Determining Personal Jurisdiction

In short, HALCO's motion is premature and misplaced.  A determination of personal

jurisdiction is a very factually intensive inquiry.  Therefore, a determination of personal jurisdiction

depends in large part on facts learned through discovery.  In the instant case, discovery remains in

its early stages, making a determination of personal jurisdiction premature at this juncture.

Personal jurisdiction in Louisiana is limited only by the confines of due process.  In analyzing

due process safeguards, courts require that: (1) the defendant purposefully availed itself of the

benefits and protections of forum state by establishing "minimum contacts" with that state; and (2)

that the exercise of personal jurisdiction not offend "traditional notions of fair play and substantial

justice."  *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999).  The touchstone of a "minimum contacts" analysis is whether the defendant "reasonably anticipates being haled into court" in Louisiana."  *Luv N'care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 470 (5th Cir. 2006).  No single factor is determinative; rather the fact intensive inquiry turns on the totality of the facts.  *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) *cert. denied,* 131 S. Ct. 68, 178 L. Ed. 2d 23 (U.S. 2010).

As discovery in the instant case remains in its early stages, a determination of minimum contacts is premature.  At a minimum, plaintiff should be allowed to conduct jurisdictional discovery prior to any ruling on HALCO's minimum contacts with Louisiana.  Specifically, before any ruling on the personal contacts of HALCO to Louisiana, plaintiff should be allowed to conduct limited jurisdictional discovery to determine the company's contacts with, and availment to Louisiana.

**XII.    Conclusion**

Based on the foregoing, HESI's omnibus motion to dismiss should be DENIED.

Respectfully submitted,
**MARTZELL & BICKFORD, A.P.C.**

/s/ Scott R. Bickford
**SCOTT R. BICKFORD T. A., (#1165)**
**NEIL F. NAZARETH (#28969)**
338 Lafayette Street
New Orleans, LA  70130
504/581-9065 (Telephone)
504/581-7635 (FAX)
usdcedla@mbfirm.com

and

18

RONNIE G. PENTON (#10462)

Law Offices of Ronnie G. Penton

209 Hoppen Place

Bogalusa, LA 70427

(985) 732-5651

(985) 735-5579

rgp@rgplaw.com


**Certificate of Service**

I hereby certify that the above and foregoing pleading was electronically filed through the CM/ECF System and/or LexisNexis File & Serve, in accordance with Pretrial Order No. 12, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179 too all counsel of record on this the 14ᵗʰ day of March, 2011.


/s/ Scott R. Bickford

SCOTT R. BICKFORD