**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010** | ) | **MDL No. 2179** |
| | ) | **SECTION: J** |
| **This Document Relates to:** *Case No. 2:10-cv-04536-CJB-SS* | ) | **Judge Barbier** **Mag. Judge Shushan** |

**SIERRA CLUB, INC.'S COMBINED REPLY TO OPPOSITIONS TO SIERRA CLUB INC.'S MOTION TO INTERVENE**


Eric E. Huber
La. Bar No. 23790
Sierra Club
1650 38th Street, Suite 102W
Boulder, CO 80301
tel (303) 449-5595
fax (303) 449-6520
eric.huber@sierraclub.org

Devorah Ancel
Ca. Bar No. 261038
Sierra Club
85 Second Street, 2nd Floor
San Francisco, CA 94105
tel (415) 977-5721
fax (415) 977-5793
devorah.ancel@sierraclub.org

## TABLE OF CONTENTS

Table of Authorities……………………………………………………………………………..i

SUMMARY OF REPLY………………………………………………………….............1

ARGUMENT…………………………………………………………………..............3

I. Sierra Club has Satisfied Each Element for Intervention of Right Under Rule 24(a)(2)……………………………………………………………………………3

A. Sierra Club's Application is Timely……………………………………….....3

B. Sierra Club Claims Legally Protectable Interests in the Subject Matter of this Action……………………………………………………….…...3

1. Sierra Club has Identified Several Unrebutted Legally Protectable Interests in this Action………………………………………...……...3

a. The Environmental, Business, Recreational and Scientific Interests of Sierra Club's Members are Protectable…………...…..3

b. Sierra Club's Interests Have Been Established in Other Related Litigation Between It, the U.S. and Defendants……...…..8

c. Sierra Club's Interests in Potential Settlement are Protectable..…..8

2. The Opposition to Intervention is based on Inapplicable Standing and Citizens' Suit Law…………………………………………………….....9

a. Rule 24(a)(2) Intervention into a CWA § 311 Penalty Action Does Not Require Sierra Club to Satisfy the Prerequisites for a Clean Water Act Citizen Suit……………………..……………..9

b. Sierra Club has an Interest in the OPA Claims…………………...14

c. Rule 24(a)(2) Does Not Require Sierra Club to Have an Independent Cause of Action……………………………….…16

d. Because This is a Public Law Case and Sierra Club is Within the Zone of Interest, it Need Not be the Real Party in Interest in the Government's Claims……………………………………...18

C. Disposition of This Action May, as a Practical Matter, Impair or Impede Sierra Club's Interests……………………………………………………21

D. Sierra Club's Interests are Not Adequately Represented by the United States…..23

II. In the Alternative, Sierra Club Should be Granted Permissive Intervention………..…..27

CONCLUSION…………………………………………………………………..…………28

Certificate of Service

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Associated Builders & Contractors v. Perry*, 16 F.3d 688 (6th Cir. 1994)........................... 16

*Chiles v. Thornburgh*, 865 F.2d 1197 (11th Cir. 1989)............................................. 16

*Clarke v. Securities Industry Ass'n*, 479 U.S. 388 (1987)............................................20

*Coalition of Arizona/New Mexico Counties for Stable Economic Growth v. U.S. Dept. of Interior*, 100 F.3d 845 (10th Cir. 1996)............................................... 25

*Diaz v. Southern Drilling Corp*., 427 F.2d 1118 (5th Cir. 1970).................................... 16

*Didrickson v. U.S. Dept. of Interior*, 982 F.2d 1332 (9th Cir. 1992)...................................4

*Edmonds Institute v. Babbitt*, 42 F. Supp. 2d 1 (D.D.C. 1999)...................................... 21

*Ford v. City of Huntsville*, 242 F.3d 235 (5th Cir. 2001)................................................8

*Friends of the Earth, Bluewater Network Div. v. U.S. Dept. of Interior*, 478 F. Supp. 2d 11 (D.D.C. 2007).............................................................21

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs*., 528 U.S. 167 (2000)......................3, 12, 13

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49 (1987)............11

*Heaton v. Monogram Credit Card Bank of Ga*., 297 F.3d 416 (5th Cir. 2002)..................... 18

*Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333 (1977)............................... 4

*In re Acushnet River & New Bedford Harbor Proceedings re Alleged PCB Pollution*, 712 F. Supp. 1019 (D. Mass. 1989).......................................................15, 16

*In the Matter of Lease Oil Antitrust Litig*., 570 F.3d 244 (5th Cir. 2009)..............................8

*Johnson v. San Francisco Unified Sch. Dist*., 500 F.2d 349 (9th Cir. 1974).........................24

*Jones v. Prince George's County*, 348 F.3d 1014 (D.C. Cir. 2003)................................. 17

*Kleissler v. U.S. Forest Serv*., 157 F.3d 964 (3d Cir. 1998).........................................25

*Lacoste v. Crochet*, 751 So. 2d 998 (La. Ct. App. 2000)............................................ 13

*Legal Aid Society v. Dunlop*, 618 F.2d 48 (9th Cir. 1980)........................................... 24

*Louisiana ex. rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418 (5th Cir. 2008)…....................... 21

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)……………………………………………….. 7

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990)……………………………………………... 21

*Massachusetts v. EPA*, 549 U.S. 497 (2007)…………………………………………………….... 6

*Mausolf v. Babbitt*, 85 F.3d 1295 (8th Cir. 1996)………………………………………………..25

*Natural Resources Defense Council, Inc. v. Tennessee Valley Authority*,
340 F. Supp. 400 (S.D.N.Y. 1971)……………………………………………………………….27

*Natural Resources Defense Council, Inc, v. Jamison*, 787 F. Supp. 231 (D.D.C. 1990)……......21

*Newby v. Enron Corp.*, 443 F.3d 416 (5th Cir. 2006)……………………………………………..3

*New Orleans Public Service, Inc. v. United Gas Pipeline Co.*,
732 F.2d 452 (5th Cir. 1984)..……………….……………………………………...….18, 19, 20

*Ruiz v. Estelle*, 161 F.3d 814 (5th Cir. 1998)…………………………………………..……3, 17

*Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525 (9th Cir. 1983)……………………..………24

*San Juan County, Utah v. U.S.*, 420 F.3d 1197, (10th Cir. 2005)…………………………….… 27

*Sanguine, Ltd. v. United States Department of Interior*, 736 F.2d 1416 (10th Cir.1984)………. 26

*Save Ourselves, Inc. v. U.S. Army Corps of Engineers*, 958 F.2d 659 (5th Cir. 1992)…………. 21

*Sec. & Exch. Comm'n v. U.S. Realty & Improvement Co*., 310 U.S. 434 (1940)………………..27

*Sierra Club v. Espy*, 18 F.3d 1202 (5th Cir. 1994)……………………………………………… 24

*Sierra Club v. Hamilton County Bd. of County Com'rs*, 504 F.3d 634 (6th Cir. 2007)…………..9

*Sierra Club v. Morton*, 405 U.S. 727 (1972)……………………………………………….....3, 6

*Sierra Club v. Robertson*, 960 F.3d 83 (8th Cir. 1992)…………………………………..........25

*Trbovich v. United Mine Workers*, 404 U.S. 528 (1972)……………………...2, 16, 17, 18, 24, 25

*United States v. Carpenter*, 298 F.3d 1122 (9th Cir. 2002)……………………………...……..9

*United States v. Carpenter*, 526 F.3d 1237 (9th Cir. 2008)……………………………...……..9

*United States v. Hooker Chemicals & Plastics Corp.*, 749 F.2d 968 (2d Cir. 1984)……11, 23, 26

*United States v. Metropolitan St. Louis Sewer District*, 569 F.3d 829 (8th Cir. 2009)…………12

*United States v. South Water Mgmt. District*, 922 F.2d 704 (11th Cir. 1991)…………………...17

*United States v. Telluride Co.*, 146 F.3d 1241 (10th Cir. 1998)………………………………20

*Utah ex rel. Utah State Dept. of Health v. Kennecott Corp.*, 232 F.R.D. 392 (D. Utah 2005)……………………………………………………….....27

*Wesson v. United States*, 48 F.3d 894 (5th Cir. 1995)……………………………………...13

*WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192 (10th Cir. 2010)…………………....1, 3

*Yniguez v. State of Arizona*, 939 F.2d 727 (9th Cir. 1991)…………………………………… 16

**FEDERAL STATUTES**

33 U.S.C. § 1251(a)…………………………………………………………….……. 20

33 U.S.C. § 1321(b)(1)……………………………………………………………….. 21

33 U.S.C. § 1321(b)(8)……………………………………………………………….. 22

33 U.S.C. § 1321(b)(11)…………………………………………………………..….. 1, 10

33 U.S.C. § 1321(s)…………………………………………………………………... 13

33 U.S.C. § 1365…………………………………………………………………………9, 10

33 U.S.C. § 1365(a)………………………………………………………………....9, 10

33 U.S.C. § 1365(b)…………………………………………………………………...14

33 U.S.C. § 1365(b)(1)……………………………………………………………….. 12

33 U.S.C. § 1365(b)(1)(B)…………………………………………………………........9

33 U.S.C. § 1365(f)…………………………………………………………………... 10

**FEDERAL RULES**

Fed. R. Civ. P. 17(a)……………………………………………………………………..… 2, 18

Fed. R. Civ. P. 24(a)(1)………………………………………………………………...…….10, 11

Fed. R. Civ. P. 24(a)(2)………………………………………1, 2, 7, 8, 9, 10, 11, 12, 16, 18, 28

Fed. R. Civ. P. 24(b)(1)(B)…..……………………………………………………………..2, 28

**MISCELLANEOUS**

Environmental and Toxic Tort Issues, SC 84 ALI-ABA 713, 717-719 (1998)………………….20

Shapiro, David L. *Some Thoughts on Intervention Before Courts, Agencies, and Arbitrators*, 81 Harv. L. Rev. 721 (1968)…………………………………………...………… 17

Lopez, Alberto B. *Laidlaw and the Clean Water Act: Standing in the Bermuda Triangle of Injury in Fact, Environmental Harm, and "Mere" Permit Exceedances*, 69 U. Cin. L. Rev. 159 (2000)………………………………………………………...…… 20

## SUMMARY OF REPLY

In our opening brief Sierra Club established the presence of each element required for intervention of right under Rule 24(a)(2). Because all of these elements are present, intervention "must" be granted under Fed. R. Civ. P. 24(a)(2):

a) It is undisputed that Sierra Club's motion is timely.

b) Sierra Club claims legally protectable interests in the subject matter of the action. It is "indisputable that a prospective intervenor's environmental concern is a legally protectable interest." *WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1198 (10th Cir. 2010). Sierra Club submitted seven declarations setting forth the environmental, business, recreational and scientific interests of its members. In addition, Sierra Club set forth its interests in maximizing civil penalties against these Defendants to deter similar future conduct; its interests in the effects of this action on Sierra Club's related actions; and its interests in potential settlement.

c) Disposition of this action may impair or impede Sierra Club's ability to protect its interests. The imposition and amount of civil penalties impacts Sierra Club's interests since they deter similar future conduct by these Defendants and others. In addition, there are numerous overlapping issues between this suit and Sierra Club's other related legal actions, including ones where Sierra Club and the United States are adverse. The United States will not raise all of Sierra Club's arguments in support of maximizing penalties or raise Sierra Club's arguments that are contrary to the United States in the other actions. Also, under Clean Water Act §311(b)(11), 33 U.S.C. § 1321(b)(11), the assessment of civil penalties in this action will preclude the imposition of civil penalties under the Clean Water Act citizens' suit provision. If Sierra Club is not allowed to intervene in this action, no environmental organization will be a party to the imposition of civil penalties against BP.

d) Sierra Club's interests are not adequately represented by the existing parties. The United States represents a broader constituency than Sierra Club's particular environmental interests. The United States will not make many of Sierra Club's arguments because they implicate the United States in the wrongful approval of the deficient Oil Spill Response Plan and over-use of dispersants; the United States has on-going contractual relationships with BP; and it continues to permit additional deepwater drilling contrary to Sierra Club's interests.

There are three briefs in opposition to Sierra Club's motion, by the United States [doc. 1411], "Defendants" (BP and the Transocean group) [doc. 1438], and Anadarko and Moex [doc. 1428]. However, they utterly failed to rebut the elements set forth above. Instead, they present a slew of inapplicable defenses based on standing law (which does not apply to intervention in the Fifth Circuit); the Clean Water Act citizens' suit statute (which does not apply since Sierra Club is not bringing claims covered by that statute or seeking intervention under it); and the real party in interest requirement of Fed. R. Civ. P. 17(a) (which does not apply since this is a *public law* case and Sierra Club is within the zone of interests of the Clean Water Act). Overall, their opposition is based on the erroneous assertion that Sierra Club must have an independent right of action against the Defendants under Clean Water Act § 311 and the Oil Pollution Act in order to intervene, but no such requirement exists for intervention under Rule 24(a)(2). *Trbovich v. United Mine Workers*, 404 U.S. 528 (1972).

In the alternative, Sierra Club requests permissive intervention under Rule 24(b)(1)(B). There has been no showing that allowing Sierra Club to intervene would create any delay or prejudice to the parties. Allowing intervention, on the other hand, would assist the Court by adding Sierra Club's knowledge and expertise to the proceedings, and the Sierra Club will add critical evidence and arguments in support of maximizing civil penalties against Defendants.

## ARGUMENT

### I. Sierra Club has Satisfied Each Element for Intervention of Right Under Rule 24(a)(2)

#### A. Sierra Club's Application is Timely

The United States and BP concede that Sierra Club's motion is timely. U.S. Br. at 3; Defendants' (hereafter "BP") Br. at 7.

#### B. Sierra Club Claims Legally Protectable Interests in the Subject Matter of this Action

##### 1. Sierra Club has Identified Several Unrebutted Legally Protectable Interests in this Action

###### a. The Environmental, Business, Recreational and Scientific Interests of Sierra Club's Members are Protectable

It is "indisputable that a prospective intervenor's environmental concern is a legally protectable interest." *WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1198 (10th Cir. 2010) (quotation marks and citation omitted). As the Supreme Court has held, "environmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 183 (2000) (*quoting* *Sierra Club v. Morton*, 405 U.S. 727, 735 (1972)).

Nevertheless, the United States and BP argue that Sierra Club lacks any legally protectable interest because, they say, Sierra Club's interests are "generalized" or "non-specific." They are at heart arguing that Sierra Club must demonstrate Article III standing, which fails as a threshold matter because standing is not required for intervention in the Fifth Circuit. *See* *Newby v. Enron Corp.*, 443 F.3d 416, 422 (5th Cir. 2006) ("In contrast, there is no Article III requirement that intervenors have standing in a *pending* case … In *Ruiz v. Estelle*, 161 F.3d 814

(5th Cir. 1998), we held 'that Article III does not require intervenors to independently possess standing where the intervention is into a *subsisting and continuing* Article III case or controversy and the ultimate relief sought by the intervenors is also being sought by at least one subsisting party with standing to do so.'" Id. at 830 (emphasis added).[1]

Their arguments are also contrary to the undisputed facts. Conspicuous by its absence in the United States, BP and Anadarko briefs is *any* mention of Sierra Club's seven declarations that demonstrate specific, direct injury in fact of the oil spill disaster to Sierra Club members, their interests in avoiding future events of this type, and their ongoing interests in other litigation, administrative proceedings and public participation related to this lawsuit.

For example, many Sierra Club members' continued recreational use, boating, fishing and swimming in the Gulf of Mexico have been severely impacted by the spill and are threatened by inadequate deterrence of future spills. *See, e.g., Sierra Club Motion to Intervene*, Ex. G, Decl. of Dean Wilson ¶ 6-7 (describing how his swimming has been severely impacted by the oil spill); Ex. B, Decl. of David Underhill ¶ 5-11 (describing his reluctance to participate in once frequent canoeing and kayaking); Ex. D, Decl. of Devin Martin ¶ 6-9 (noting that he has lived the majority of his life near the Gulf of Mexico and, due to the spill and dispersants, he can no longer swim or fish); and Ex. E, Decl. of Linda St. Martin ¶ 5-8 ("Before the spill, I took boating trips to the Mississippi Barrier Islands several times a year and I would consume seafood almost

---

[1] Standing requires a greater interest than intervention. *Didrickson v. U.S. Dept. of Interior*, 982 F.2d 1332, 1337 (9th Cir. 1992). Even if Art. III standing was required, Sierra Club satisfies that here. *See* *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977) ("An association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right, (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.").

every day. However, … I have not engaged in either activity since the spill because there is still oil in the water and covering the Mississippi Barrier Islands.”).

Sierra Club members’ enjoyment and consumption of seafood has also been dramatically reduced due to concerns over oil persistence and the application of chemical dispersants. *See, e.g.*, Ex. G, Decl. of Dean Wilson ¶ 6-7 (describing how his consumption of Gulf seafood has decreased since the oil spill); Ex. D, Decl. of Devin Martin ¶ 6-9 (noting his discomfort with consuming Gulf seafood because of inadequate testing for spill related toxins and concerns over the bioaccumulation of the toxins in seafood); Ex. F, Decl. of Colleen Morgan ¶ 4-10 (noting that prior to the spill, “I consumed seafood approximately two to three times per week … Although seafood availability in the Gulf has returned to pre-spill levels, I have lingering concerns about the safety of consuming it.”).

Sierra Club members’ health has also been impacted. *See, e.g.*, Ex. B, Decl. of David Underhill ¶ 5-11 (“I also suffer from recurring respiratory infections and congestions … Fear of aggravating these conditions steers me away from waters that might contain some of BP’s oil that is tainting the adjacent air.”); Ex. E, Decl. of Linda St. Martin ¶ 5-8 (noting ongoing concerns about her health in connection with the oil spill).

The oil spill disaster and the threat of future spills also directly impacts the livelihoods of Sierra Club members, including their long-time efforts to study, protect and restore the Gulf of Mexico ecosystems. *See, e.g.*, Ex. G, Decl. of Dean Wilson ¶ 6-7 (noting his extensive efforts to protect and monitor environmental quality in the Gulf); Ex. B, Decl. of David Underhill ¶ 5-11 (“I have participated in efforts to protect natural resources [of the Gulf] before and after the spill by working to stop hazardous offshore oil and gas drilling activities … I also monitored oil washing ashore … to establish a baseline for coastal conditions and to document how the oil

altered the ecological communities."); Ex. D, Decl. of Devin Martin ¶ 6-9 ("I am working with individuals living on Grand Isle to return a portion of the land to native forest habitat for migrating tropical birds … and raise awareness about coastal erosion issues in the marshes and bays of the Gulf. These issues have been greatly exacerbated by the oil spill disaster."); Ex. E, Decl. of Linda St. Martin ¶ 5-8 (noting her involvement in public health surveys and public meetings on seafood consumption and exposure to chemical dispersants); Ex. F, Decl. of Colleen Morgan ¶ 4-10 ("I have organized satellite nurseries around the city of New Orleans to engage the public and local communities in wetland restoration," and further noting that her organization Bayou Rebirth has encountered obstacles, such as oil inundation at restoration sites and increased liabilities, that have made it nearly impossible to carry out its mission); Ex. C, Decl. of Robert Hastings ¶ 6-8 (describing his long-time experience as a biologist with expertise on the ecology of the Gulf coast, "since the oil spill, I have contacted public officials to convey the importance of focusing on the cleanup efforts. I also have made presentations to various groups about the impacts of the oil spill … and how to best facilitate the Gulf's recovery … I have ongoing concerns about the cleanup efforts based on statements made by various government agencies that minimize the severity of the spill and that also diminish the overall ramifications of certain types of cleanup efforts.").

In sum, Sierra Club's exhaustive declarations establish far more than a "generalized" interest in this matter. Contrary to the arguments of the United States and BP, whether members of the broader public have an interest in this case does not diminish or divest Sierra Club's interests. "[T]he fact that particular environmental interests are shared by the many rather than the few does not make them less deserving of legal protection through the judicial process." *Sierra Club v. Morton*, 405 U.S. 727, 734 (1972). *See also* *Massachusetts v. EPA*, 549 U.S. 497,

517 (2007) (rejecting EPA's argument that "because greenhouse gas emissions inflict widespread harm, the doctrine of standing presents an insuperable jurisdictional obstacle"). "[I]t does not matter how many persons have been injured by the challenged action" as long as the "party bringing suit ... show[s] that the action injures him in a concrete and personal way." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 581 (1992). It is not true, as BP says, that if Sierra Club can intervene "everyone" can intervene, BP Br. at 2, 11, since Sierra Club has demonstrated specific interests beyond the public at large. Their hyperbole is also unwarranted since although this action has been pending three months there have been no other applications to intervene (and if there were later they would arguably be untimely). Regardless of the interests of others, Sierra Club has a legally protectable interest in this lawsuit, which is all that Rule 24(a)(2) requires.

Finally, neither the United States nor BP addressed the United States' request for injunctive relief in its Prayer for Relief. That could include requiring BP to carry out necessary testing, corrective actions and removal of the pollution contamination. It could also include continued removal of oil even after the government decides the mission will be complete, such as skimming of waters where new oil surfaces, cleaning of beaches and wetlands as oil continues to wash ashore, ongoing monitoring of ecosystem damages and testing for the persistence of toxic chemicals in waters and in future generations of fish and wildlife. The Sierra Club's members' direct interests in seeing that this injunctive relief is adequate is described in the declarations. *See, e.g.*, Ex. A, Decl. of Jill Mastrototaro ¶ 6-7; Ex. C, Decl. of Robert Hastings ¶ 4-7; Ex. F, Decl. of Colleen Morgan ¶ 7, 9-10 (noting concerns over harmful impacts of ongoing cleanup efforts and the extent of long-term clean up and restoration). Thus, Sierra Club has a direct, concrete interest in the potential injunctive relief in this action that stands un-rebutted.

**b. Sierra Club's Interests Have Been Established in Other Related Litigation Between It, the U.S. and Defendants**

Sierra Club's interests are not remote concerns. Rather, Sierra Club has vigorously sought to vindicate its interests in numerous administrative and judicial proceedings. Sierra Club's opening memorandum at 9-11 sets forth three categories of pending Sierra Club actions related to the instant case, involving the United States' approval of BP's Oil Spill Response Plan, the moratorium on offshore drilling, and the categorical exclusion used by the government to circumvent environmental review when permitting drilling. In addition, Sierra Club's memorandum identifies its petition for rulemaking on dispersants and notice of intent to sue the U.S. regarding the unsafe use of dispersants.

Magistrate Judge Wilkinson held that Sierra Club was entitled to intervention of right under rule 24(a)(2) in the moratorium cases because Sierra Club has a legally protectable interest and it is not adequately represented by the United States. Those orders are Exhibits I and J to Sierra Club's motion. These were not mentioned, much less distinguished, by the United States or BP. The fact is, the issues in the litigation are related, and Sierra Club's interests in these other cases are also present in this one. If Sierra Club is prohibited from intervening in this case based on the threshold interest requirement, Sierra Club's ability to protect its interests in these other matters would be impaired.

**c. Sierra Club's Interests in Potential Settlement are Protectable**

Sierra Club also has claimed an interest in potential settlement of this case, including any Supplemental Environmental Projects. An interest solely related to the terms of a settlement can support intervention. *In the Matter of Lease Oil Antitrust Litig.*, 570 F.3d 244, 250 (5th Cir. 2009); and *see Ford v. City of Huntsville*, 242 F.3d 235, 239-41 (5th Cir. 2001) (deciding that newspaper may intervene to challenge confidentiality agreement between settling parties). Sierra

Club's opening memorandum cites *United States v. Carpenter*, 298 F.3d 1122 (9th Cir. 2002) for the proposition that an interest in settlement by the government supports intervention as a plaintiff under Rule 24(a)(2). BP attempts to restrict that holding to the timeliness of intervention, but that is wrong since the Ninth Circuit emphasized in a later opinion that its holding was not limited to timing, and that the environmental groups' interests supported intervention of right. *United States v. Carpenter*, 526 F.3d 1237, 1240 (9th Cir. 2008).

**2. The Opposition to Intervention is based on Inapplicable Standing and Citizens' Suit Law**

**a. Rule 24(a)(2) Intervention into a CWA § 311 Penalty Action Does Not Require Sierra Club to Satisfy the Prerequisites for a Clean Water Act Citizen Suit**

The United States, BP and Anadarko take defenses that exclusively apply to actions brought under the citizens' suit provision of the Clean Water Act, 33 U.S.C. § 1365, and weave them into a crazy quilt of opposition to intervention under Rule 24(a)(2). Their arguments all fail since Sierra Club's motion is *not* an attempt to bring claims covered by the citizen suit provision or to intervene under that provision.

By way of background, the Clean Water Act (CWA) citizens' suit provision authorizes a citizen to initiate a lawsuit against a person who is in violation of an "effluent standard or limitation under this chapter." 33 U.S.C. § 1365(a). If the government is diligently prosecuting the violation a citizen suit for that same violation may not be commenced, but the citizen is given a statutory right to intervene in that government action. 33 U.S.C. § 1365(b)(1)(B). This statutory right to intervene "provide[s] a second level of enforcement and can serve as a check to ensure that the state and federal governments are diligent in prosecuting Clean Water Act violations." *Sierra Club v. Hamilton County Bd. of County Com'rs*, 504 F.3d 634, 637 (6th Cir. 2007).

The citizens' suit provision is inapplicable here because it only covers enumerated "effluent standards or limitations," which are defined in 33 U.S.C. § 1365(f), and which do not include CWA § 311 or Oil Pollution Act (OPA) violations. As a result, Sierra Club has not initiated a citizen suit and does *not* bring this intervention motion pursuant to 33 U.S.C. § 1365. The United States acknowledges this in its brief. U.S. Br. at 4-7. But, the United States and BP stand this distinction on its head and argue that because Sierra Club is not bringing a citizens' suit it is prohibited from intervening in the instant case. To the contrary, it is precisely because Sierra Club cannot bring a citizen suit for penalties under CWA § 311 that it is moving for intervention under Rule 24(a)(2), in order to protect its interests in the imposition of civil penalties against BP.

Sierra Club's intervention in this CWA § 311 action is critical because the imposition of penalties under CWA § 311 *precludes* the imposition of penalties under the citizens' suit provision.[2] That means the environmental groups' claims for penalties under the citizens' suit provision, which are covered by the Master Complaint for the D-1 bundle in the MDL litigation [doc. 880], are all precluded by the United States' action in this case. The upshot of denying Sierra Club intervention would be that no environmental group would be a party to the assessment of civil penalties against BP. That was not Congress' intent in passing the citizens' suit statute and the United States and BP have no authority indicating that it was.

The United States' and BP's arguments also are contrary to the plain language of Rule 24(a). In essence they are attempting to require that an intervention under Rule 24(a)(2), which provides for intervention based on an "interest," to satisfy the requirements of Rule 24(a)(1),

---

[2] The citizens suit provision provides for "appropriate civil penalties under section 1319(d) of this title," *see* 33 U.S.C. § 1365(a). However, CWA § 311(b)(11) provides that "[c]ivil penalties shall not be assessed under both this section and section 1319 of this Title for the same discharge." 33 U.S.C. § 1321(b)(11).

which provides for intervention based on a statute, *i.e.*, a congressional authorization of intervention. They deliberately muddy these two distinct bases for intervention by arguing that because Congress did not provide for intervention in CWA § 311 or in OPA as it did for an action enforcing an "effluent standard or limitation," the Sierra Club fails to satisfy the requirements for intervention as of right. U.S. Br. at 7-8; BP Br. at 4-7. That misses the mark; if Sierra Club was required to have a congressionally granted statutory right to intervene, then Rule 24(a)(2) would be superfluous, since both Rule 24(a)(1) and (a)(2) would require a congressional grant of intervention. According to their view, the only right to intervene would be a statutory one, which is flatly contrary to Rule 24.

In that regard, *United States v. Hooker Chemicals & Plastics Corp.*, 749 F.2d 968 (2d Cir. 1984) was wrongly decided. By finding that a congressional grant for intervention was determinative of whether an applicant can intervene of right, that Court had Rule 24(a)(1) swallow Rule 24(a)(2) whole. (In addition, *Hooker* is easily distinguished from this case since it applied a standard of review that differs from the Fifth Circuit standard, there were no adversarial interests or related litigation between the plaintiffs and the government, and the government did not have ongoing business relations with the defendants as in this case. *See* sections I.C and I.D *infra*.)

BP's contention that Sierra Club's interests are not "legally protectable" is further based on the erroneous application of the law on statutory citizens' suits requiring ongoing or current violations. BP Br. at 8-12. Ongoing or current violations are a *statutory* prerequisite to filing a citizens' suit since the statute requires the defendant "to be in violation." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 59 (1987). Because this is not a citizens' suit, and, for that matter, is not an enforcement action by the United States of one of the "effluent

standards or limitations" covered by the citizens' suit statute, the on-going violation requirement has no application here. Rule 24(a)(2) provides for intervention for an "interest," and is not constrained by the statutory language of the citizens' suit provision that requires the defendant "to be in violation."

*United States v. Metropolitan St. Louis Sewer District*, 569 F.3d 829, 838 (8th Cir. 2009) is distinguishable for the same reason. It held a citizen must be able to bring a citizens' suit of its own before it can intervene of right under the citizens' suit provision, 33 U.S.C. § 1365(b)(1). But that was based on the statutory language and is irrelevant since Sierra Club is not bringing claims covered by the citizens suit provision or moving to intervene under that provision.

BP's discussion of *Laidlaw* is also inapposite. BP Br. at 11-12. The issue in *Laidlaw* was whether civil penalties constitute an adequate form of redress sufficient to establish Article III standing. Standing need not be shown in the Fifth Circuit, so BP's arguments that *Laidlaw* required an ongoing violation at the time of filing are irrelevant. *Laidlaw* is, however, significant here for a different reason. The Supreme Court held that an environmental group does have an interest in civil penalties and that they redress the injuries even though the penalties go to the U.S. Treasury for general use. *Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC), Inc.*, 528 U.S. 167, 185-88, (2000) (holding that the deterrent effect of civil penalties provides a form of redress by preventing the recurrence of illegal activity causing injury to plaintiffs). That was so even though the violations had stopped in *Laidlaw* and could not recur -- in fact the facility there had "shutdown." *Id.* at 189. Here, there is future conduct to deter inasmuch as the United States continues to issue permits for offshore deepwater drilling.

The interest in penalties in the instant case is even stronger than in *Laidlaw* since the civil penalties here go not into the general Treasury but to the federal Oil Spill Liability Trust Fund,

which is dedicated to respond to this and future oil pollution disasters. 33 U.S.C. § 1321(s). Therefore, the imposition and amount of civil penalties in this action will impact Sierra Club's interests.

*Laidlaw* further supports recognizing Sierra Club's interest because it emphasized that civil penalties under the Clean Water Act are similar to punitive damages. 528 U.S. at 197 (Stevens concurring). Punitive damages punish the actor not just for past conduct, they have a deterrent effect on its future conduct as well as a general deterrent effect on similar conduct by others. *Wesson v. United States*, 48 F.3d 894, 899 (5th Cir. 1995); *see also* *Lacoste v. Crochet*, 751 So. 2d 998, 1007 (La. Ct. App. 2000) (concurring opinion).

BP argues that deterrence is irrelevant since this particular spill has been capped, but 18 more permit applications for deepwater drilling are pending approval with the government.[3] Another such well, in which BP holds the largest share (46.5%), was recently approved by the United States.[4] As Judge Wilkinson recognized, this ongoing deepwater drilling threatens the interests of Sierra Club's members, provides the basis for intervention of right, and is an interest not represented by the government. Exhibits I and J. And, *see, e.g.*, Ex. A, Decl. of Jill Mastrototaro at 2-4; Ex. B, Decl. of David Underhill at 2; Ex. B, Decl. of Linda St. Martin at 2 (discussing efforts to stop offshore oil drilling that threatens Sierra Club member interests in the Gulf of Mexico). Therefore, Sierra Club has a substantial and direct interest in the imposition of civil penalties against Defendants to deter future misconduct involving these wells. As the Court stated in *Laidlaw*: "A would-be polluter may or may not be dissuaded by the existence of a

---

[3] *See* http://www.gomr.boemre.gov/homepg/offshore/safety/well_permits.html.

[4] *See* http://www.mysanantonio.com/business/article/Commentary-BP-is-back-in-Gulf-1040769.php.

remedy on the books, but a defendant once hit in its pocketbook will surely think twice before polluting again." 528 U.S. at 186.

Finally, Anadarko and Moex completely misconstrue the nature of this action in arguing that Sierra Club cannot intervene against them since Sierra Club did not give notice of its intent to sue them. Sierra Club is only required to give notice if it intends to initiate an action pursuant to the CWA's citizens' suit provision, 33 U.S.C. § 1365(b). Because this is not a citizens' suit, or an attempt to intervene under the statutory provisions of the citizens' suit, the notice requirements of that statute are plainly inapplicable.

**b. Sierra Club has an Interest in the OPA Claims**

The United States and BP also argue that Sierra Club has no protectable interest in the United States' Second Claim for Relief, *i.e.* its OPA claim. However, Sierra Club has a special interest in that claim because it may be tried first, separate from the CWA § 311 claim. *See* Pre-trial Order No. 11 at 11 [doc. 569], indicating the Court's intent to schedule one or more OPA test cases for trial by June 2011 and the recent Order at Doc. 986, directing the Liaison Counsel to meet and confer on the test case. The "gross negligence" determination that will be made in the OPA case, at least in regards to the defendants who are contesting it, will have a direct effect on the "gross negligence" determination in the later CWA § 311 trial. Thus, to protect its interests in the penalty assessment under CWA § 311 for establishing the Defendants' gross negligence, it is necessary for Sierra Club to be a party to the trial of that issue under OPA.

Further, there is precedent for public interest groups to intervene in natural resource damages cases under statutes like OPA in which the government, as the trustee for the natural resources, has enforcement authority. In *In re Acushnet River & New Bedford Harbor Proceedings re Alleged PCB Pollution*, the National Wildlife Federation was permitted to

intervene in the natural resource damages litigation between the natural resource trustees and the responsible parties on the following basis:

> the substantial divergence of views on *the proper measure of damages* between the sovereigns and the Federation necessarily renders the formers' representation of the latter inadequate …Further, *the cleanup and natural resource damages issues remain unresolved* and thus another view of the law will merely sharpen the debate, not reopen or delay matters … One further reason exists to allow intervention. Without intending any criticism of the sovereigns' advocacy, such intervention permits another voice and set of concerns to participate in the resolution of an extremely complex matter, both factually and legally-that necessarily is taking this Court and these parties into the heretofore largely uncharted waters of a relatively new statute. The further guidance of an additional entity, especially one with some expertise in the subject at hand, is therefore not lightly to be shunned. Indeed, as the balance of this opinion will reveal, the Federation's impact in shaping this litigation cannot be denied.

*In re Acushnet River & New Bedford Harbor Proceedings re Alleged PCB Pollution*, 712 F. Supp. 1019, 1024-1025 (D. Mass. 1989)(emphasis added). [5]

Similarly, the Sierra Club has demonstrated a stark difference between the organization's and the government's evaluation of the extent of the damages to the natural resources. As set forth in Sierra Club's declarations, its members and affiliated experts embody a wealth of independent knowledge and expertise that have, on multiple occasions since the disaster began, rebutted the findings of the government in its assessment of the magnitude of the spill and evaluation of the natural resource damages. In addition, the Sierra Club pressed the government

---

[5] In *In re Acushnet River & New Bedford Harbor Proceedings re Alleged PCB Pollution*, 712 F. Supp. 1019 (D. Mass. 1989), the natural resources damages claims were brought under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), which provides authority for assessment and restoration of natural resources that have been injured by a hazardous substance release or response. Similarly, OPA, which was enacted in reaction to the *Exxon Valdez* oil spill, provides authority for oil pollution liability and compensation as well as for the Federal government to direct and manage oil spill cleanups. Like CERCLA, OPA authorizes the assessment and restoration of natural resources that have been contaminated by the discharge, or threatened discharge, of oil.

to halt the use of toxic dispersants due to concerns over their unknown long-term impacts. The government's continued approval of these chemicals has raised concern over the extent to which the government is willing to assess the full scope of natural resource damages from dispersants pursuant to OPA. Like *In re Acushnet River*, there is a "substantial divergence of views on the proper measure of damages" and "the cleanup and natural resource damages issues remain unresolved." Therefore, the United States' position that an intervenor must have its own claim under the statute is unwarranted, and intervention should be allowed.

**c. Rule 24(a)(2) Does Not Require Sierra Club to Have an Independent Cause of Action**

The United States argues that Sierra Club has no legally protectable interest because Sierra Club alleges "claims that it cannot bring," CWA § 311 enforcement "can only be brought by the United States," and the United States is the "sole enforcer" of CWA § 311 and OPA. U.S. Br. at 1, 6, 9. The United States' argument is misguided because Rule 24(a)(2) intervention does *not* require an intervenor to have an independent cause of action against the defendant or have a right to sue under the law on which the principle plaintiff is suing the defendant.

In determining the interest for intervention it is not necessary that "the interest has to be of a legal nature identical to that of the claims asserted in the main action." *Diaz v. Southern Drilling Corp.*, 427 F.2d 1118, 1124 (5th Cir. 1970). *See also* *Chiles v. Thornburgh, 865 F.2d 1197, 1213* (11th Cir. 1989) (standing to initiate a lawsuit is not required in order to intervene into a pending suit); *Associated Builders & Contractors v. Perry*, 16 F.3d 688, 690 (6th Cir. 1994) ("An intervenor need not have the same standing necessary to initiate a lawsuit in order to intervene in an existing district court suit where the plaintiff has standing," *citing* *Trbovich v. United Mine Workers*, 404 U.S. 528 (1972)); *Yniguez v. State of Arizona*, 939 F.2d 727, 731 (9th

Cir. 1991) (requiring Article III standing only where intervenor sought to pursue appeal on his own).

As set forth in Sierra Club's opening memorandum at 8, the Fifth Circuit follows the rule that an intervenor need not have its own cause of action against the defendant. *Ruiz v. Estelle*, 161 F.3d 814, 830 (5th Cir. 1998), quoting David L. Shapiro, *Some Thoughts on Intervention Before Courts, Agencies, and Arbitrators,* 81 Harv. L. Rev. 721, 726 (1968). Sierra Club set forth numerous additional cases in its opening memorandum on this point, *see* Sierra Club opening memorandum at 9 n.5, including *Jones v. Prince George's County*, 348 F.3d 1014, 1018 (D.C. Cir. 2003) ("As the Rule's plain text indicates, intervenors of right need only an 'interest' in the litigation – not a 'cause of action' or 'permission to sue.'"). Neither the United States, BP nor Anadarko addressed or distinguished this law. [6]

Nor did they mention, much less distinguish, the seminal U.S. Supreme Court case that supports Sierra Club's intervention. In *Trbovich*, the Supreme Court concluded that the lack of a cause of action does not bar a party from intervening. 404 U.S. at 537. The Court permitted a union member to intervene in a Labor-Management Reporting and Disclosure Act suit brought by the Secretary of Labor to set aside a union election even though that statute expressly prohibited union members from initiating such actions on their own. *Id.* at 530-31. According to the Court, the statute's "bare language," which makes suit by the Secretary the "exclusive ... remedy," did not defeat the union member's right to participate in the pending case. *Id.* at 531-

[6] The United States cited *United States v. South Water Mgmt. District*, 922 F.2d 704, 707 n.3 (11th Cir. 1991) for the proposition that a nonparty's interests cannot be impaired if the nonparty has no legal protections for those interests, but failed to note the plaintiffs were allowed intervention of right since setting water quality standards in that case could effect their interests in other administrative proceedings. *Id.* at 708. Similarly, Sierra Club is a party to litigation and administrative proceedings related to the instant case. Moreover, Sierra Club's interests are legally protectable and impacted by this litigation. *See* section I.B.1 *supra*.

32. That is analogous to the instant case. Like the intervenor-plaintiff in *Trbovich*, Sierra Club cannot bring its own action under the statute the government is suing under. Contrary to the United States' argument, *Trbovich* demonstrates that intervention of right exists in this situation because it is the only means by which to protect the applicant's interests in the action.

**d. Because This is a Public Law Case and Sierra Club is Within the Zone of Interest, it Need Not be the Real Party in Interest in the Government's Claims**

The United States recasts its argument that Sierra Club must have its own right of action under the rubric of the "real party in interest" requirement of Fed. R. Civ. P. 17(a). U.S. Br. at 8-10. But the real party in interest requirement ensures that the party that possesses the right sought to be enforced must be a named plaintiff. Here that is satisfied since the United States is the named plaintiff. Rule 24(a)(2) on the other hand requires the applicant to "*claim an interest* in the subject matter of the action." *Heaton v. Monogram Credit Card Bank of Ga.*, 297 F.3d 416, 422 (5th Cir. 2002) (emphasis added). Sierra Club is the real party in interest regarding *its* claims because it is asserting its interests in protecting and restoring the natural resources of the Gulf of Mexico, not the interests of another party not before the court.

The United States' relies on *New Orleans Public Service, Inc. v. United Gas Pipeline Co.*, 732 F.2d 452 (5th Cir.) (*en banc*), *cert. denied*, 469 U.S. 1019 (1984) [hereinafter *NOPSI*] to argue Sierra Club must be the real party in interest for the government's claims, but that is misplaced. Properly applied, *NOPSI* actually supports Sierra Club's intervention because, unlike *NOPSI*, the instant case is a public law case and Sierra Club is within the zone of interests to be protected by the Clean Water Act generally and CWA § 311 in particular.

*NOPSI* involved a utility company suing a gas supplier over the validity of contracts between them. Consumers and certain city officials claimed an interest because *inter alia* they

were purchasers of electricity subject to increased rates. *NOPSI*, 732 F.2d at 460. They were denied intervention of right because they did not have legally protectable interests; in particular, "something more than an economic interest is necessary." *Id.* at 464. Thus, *NOPSI* is distinguishable because Sierra Club is not relying on economic interests. Rather, it is asserting environmental interests, which are well recognized to support intervention. *See* section I.B.1 *supra*. Sierra Club also claims an interest based on the other litigation involving these same parties, and the overlapping and potentially preclusive effect of the findings in this case on those other matters. *See* section I.B.2 *supra*. There were no other claims or lawsuits involved in *NOPSI,* so Sierra Club is in a very different position that the putative intervenors in that case.

Nevertheless, the United States seizes upon language in *NOPSI* that the interest required for intervention "is reflected by the requirement that the claim the applicant seeks intervention in order to assert be a claim as to which the applicant is the real party in interest." *Id.* at 464. The United States fails to note that the *NOPSI* court was careful to distinguish the contract dispute before it from "public law cases," such as the case *sub judice*. *Id.* at 465. The NOPSI Court explained:

> In public law cases where statutory or constitutional violations are asserted as a basis for recovery, it has been said that standing is present when the complainant suffers injury and 'the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.' [cit. omitted] As a recognized text has observed, this zone of interest standing test in public law cases 'is somewhat analogous to the Rule 17(a) standard that the party possess a substantive right under the applicable law....' Wright & Miller, *Federal Practice and Procedure: Civil* § 1542 at 642. In a sense, a party within the zone of interests protected by a statute may possess a type of substantive right not to have the statute violated.

*NOPSI*, 732 F.2d at 464-465.

Thus, the "real party in interest" requirement does not apply to intervention in a public law case. And this is a public law case because violations of the Clean Water Act are the basis for recovery.

A public law is one that addresses injury to public resources, and in which a sanction or punishment in the form of a penalty may be imposed that goes beyond compensation for the injury caused by the violation. *United States v. Telluride Co.*, 146 F.3d 1241 (10th Cir. 1998). "Public law litigation enforces broadly held values whose importance is reflected in legislation enacted by democratically elected individuals." Alberto B. Lopez, *Laidlaw and the Clean Water Act: Standing in the Bermuda Triangle of Injury in Fact, Environmental Harm, and "Mere" Permit Exceedances*, 69 U. Cin. L. Rev. 159, 194 (2000). Environmental laws, such as the Clean Water Act and Oil Pollution Act, are public laws because they "regulate conduct … that may be enforced by government or private parties. ... Public environmental laws generally deal with ongoing operations of cleanup. [Under public laws,] operating facilities must get permits, keep records and file reports … public laws also deal with compensation." Environmental and Toxic Tort Issues, SC 84 ALI-ABA 713, 717-719 (1998). By contrast, private law "deals with the traditional orderings and morality among people, such as contract law, property law and tort law." *Id.*

Because the Clean Water Act and Oil Pollution Act unequivocally fall within the body of public law, the proper inquiry under *NOPSI* is whether Sierra Club is "within the zone of interests protected by [the] statute." *NOPSI*, 732 F.2d at 465. The zone of interests test is not meant to be "especially demanding." *Clarke v. Securities Industry Ass'n*, 479 U.S. 388, 399 (1987). Inasmuch as the purpose of the Clean Water Act is to "restore and maintain the chemical, physical and biological integrity of the Nation's waters," 33 U.S.C. § 1251(a), and the purpose of

CWA § 311 in particular is to protect the waters of the United States from pollution from oil spills, 33 U.S.C. § 1321(b)(1), Sierra Club's interests fall within the zone of interests covered by these statutes.[7] Sierra Club is in an analogous position to the plaintiffs in *Save Ourselves, Inc. v. U.S. Army Corps of Engineers*, 958 F.2d 659 (5th Cir. 1992), where the Court found: "Plaintiffs state that they are organizations 'interested in protecting and preserving the clean water and public health in Ascension Parish, Louisiana, the State of Louisiana, and the United States. It is undisputed that this interest falls within the 'zone of interests' protected by the relevant provisions of the Clean Water Act.'" *Id.* at 661. Therefore, unlike the putative intervenors in *NOPSI*, who attempted to intervene in a private contract dispute, Sierra Club *does* have a legally protectable interest in intervention.[8]

### C. Disposition of This Action May, as a Practical Matter, Impair or Impede Sierra Club's Interests

As established in Sierra Club's opening memorandum, the assessment of anything less than the maximum amount of penalties in this case would adversely affect the interests of the Sierra Club and its members because it would fail to deter BP and others from engaging in

[7] The broad zone of interest of public environmental laws has been recognized in numerous cases. *See, e.g.*, *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 872 (1990) ("'recreational use and aesthetic enjoyment' are among the sorts of interests that the FLPMA and NEPA are designed to protect") (emphasis in original); *Natural Resources Def. Council, Inc. v. Jamison*, 787 F. Supp. 231, 243 (D.D.C. 1990) (environmental, recreational, and aesthetic interests are "[c]ertainly ... within the zone of interests to be protected by FLPMA"); *Friends of the Earth, Bluewater Network Div. v. U.S. Dept. of Interior*, 478 F. Supp. 2d 11, 16 n.5 (D.D.C. 2007) (no dispute that environmental interests asserted by plaintiff conservation groups fell within zone of interests to be protected in case involving challenges under the National Park Service Organic Act); *Edmonds Institute v. Babbitt*, 42 F. Supp. 2d 1, 15-16 (D.D.C. 1999) (discussing district court and appellate court cases finding environmental organizations had standing under National Park Service Organic Act to protect wildlife).

[8] The United States' reliance on *Louisiana ex. rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418, 428 (5th Cir. 2008) is also inapposite. While noting the general *parens patriae* role of the State, the court held that the policy holders, not the State, were the real party in interest in that antitrust case. That was not a public law case and intervention was not an issue.

similar future conduct. In its opposition brief, the United States did not deny such an effect could occur. Nor did it state an intent to seek maximum penalties against Defendants. Nor did it deny that it would not make all of Sierra Club's arguments that could lead the court to assess maximum penalties, such as those pertaining to the overuse of dispersants. Therefore, Sierra Club's absence from this litigation could impair or impede its interests in seeing the maximum amount of penalties assessed.

In addition, the determination of issues in this litigation would have direct consequences on Sierra Club's other legal actions, but neither the United States nor BP rebutted this point. The U.S. argues that the "role of the agencies" in approving the Oil Spill Response Plan is "not relevant," and that compliance with the plan is not a defense in the OPA action. U.S. Br. at 17-18. However, it pointedly ignored its relevance in the CWA § 311 action. CWA § 311 provides for penalties based on "the degree of culpability involved, … any history of prior violations, the nature, extent, and degree of success of any efforts of the violator to minimize or mitigate the effects of the discharge, the economic impact of the penalty on the violator, and any other matters as justice may require." 33 U.S.C. § 1321(b)(8). This clearly brings the adequacy of the Oil Spill Response Plan into issue as an aggravating factor in the CWA § 311 claims, and BP did not deny that it would raise the United States' approval of the plan or its compliance with it as a mitigating factor in its defense. It is telling that the United States argues its approval of the Oil Spill Response Plan is "not relevant" since that betrays its intent to not argue the inadequacy of the Oil Spill Response Plan in this case. Findings of fact supporting that plan would, however, impair Sierra Club's pending lawsuit on that issue.

In that same vein, the United States discounts the relevance of the application of dispersants. U.S. Br. at 19. In its petition for rulemaking and in its CWA notice of intent to sue

the U.S. Environmental Protection Agency, the Sierra Club discusses the harmful impacts of dispersants that were known or should have been known by the government and BP prior to their unprecedented use in this case. This is relevant as an aggravating factor in support of greater penalties, but the United States is not likely to develop these facts because it approved the use of dispersants. The United States' response does not deny this. Again factual or legal determinations on these issues could have a preclusive effect on Sierra Club's actions on dispersants; hence, this action could impair or impede Sierra Club's interests.

Furthermore, the Sierra Club is engaged in other litigation challenging the United States' approval of Exploration Plan drilling permits in the Gulf of Mexico without conducting the legally required National Environmental Policy Act analyses. Like the Oil Spill Response Plan lawsuit, this litigation pits the Sierra Club against the United States on offshore drilling issues. Because the United States is forced to defend its actions against the Sierra Club on issues related to defendants' culpability in this litigation, Sierra Club's absence in this litigation could, as a practical matter, impair or impede its interests on this issue as well.

Finally, the United States accuses the Sierra Club of trying to avoid the order severing the above described cases from the MDL. U.S. Br. at 19-20. This is unfounded. The fact that these lawsuits were severed for administrative purposes does not diminish the preclusive impacts of issues decided in this litigation on parallel and subsequent litigation. This case cannot be tried in a vacuum, and Sierra Club's participation is necessary to protect its interest in these other, clearly related matters.

**D. Sierra Club's Interests are Not Adequately Represented by the United States**

The United States urges this Court to apply the Second Circuit standard in *Hooker, supra*, which found that an applicant must make a "strong showing" of inadequate representation when

the purported representative is the government. However, that conflicts with U.S. Supreme Court and Fifth Circuit authority. As stated in *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972), where the government was the plaintiff, "[T]he requirement of inadequacy of representation is satisfied if the applicant shows that representation of its interests 'may be' inadequate and ... the burden of making that showing is minimal." *See also* *Sierra Club v. Espy*, 18 F.3d 1202 (5th Cir. 1994), stating: "The government must represent the broad public interest, not just the economic concerns of the timber industry. *Given the minimal burden on the movants to satisfy this requirement*, we conclude that the government's representation of the intervenors' interest is inadequate." *Id.* at 1207-08 (emphasis added). [9]

In any event, Sierra Club has made a strong showing of inadequate representation. Because Sierra Club is making claims against the United States in related litigation, and expects to make arguments that the United States and BP were complicit in events leading up to the spill and the deficient remediation afterwards, its interests are adverse to those of the government. Moreover, the United States ignores the conflict of interest established by its numerous contracts with oil companies, including BP, as set forth in Sierra Club's opening memorandum at 21. This business relationship, worth billions of dollars, along with the government's continued approval

[9] Other circuits have held that this minimal standard applies equally when the government is an existing party. *See, e.g.*, *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528-529 (9th Cir. 1983) ("In assessing the adequacy of the Interior Secretary's representation, we consider several factors, including whether the Secretary will undoubtedly make all of the intervenor's arguments, whether the Secretary is capable of and willing to make such arguments, and whether the intervenor offers a necessary element to the proceedings that would be neglected … there is no indication in this record of collusion or of any other conduct detrimental to the applicant's interest. Nevertheless, such a showing is not required."); *see also* *Legal Aid Society v. Dunlop*, 618 F.2d 48, 50 (9th Cir. 1980) (noting that intervention was warranted because government was taking positions on important issues in the litigation that were adverse to applicant's interests); *Johnson v. San Francisco Unified Sch. Dist.*, 500 F.2d 349, 353-54 (9th Cir. 1974).

of additional offshore deepwater drilling, provide a disincentive for the United States to seek the maximum punitive civil penalties against BP, which are concerns not shared by Sierra Club.

The United States and BP also argue that the United States represents the interests of all people in this case. U.S. Br. at 15; BP Br. at 18-21. That may be so as a generality, but it does not change the fact that the United States exhibited a pattern, practice and policy of indifference to regulating BP's offshore oil drilling that contributed to this disaster, and that undermines its credibility to now diligently prosecute the party it was charged with regulating. Moreover, the government's representation of all the people means that it does *not* represent Sierra Club's unique interests. See the several cases cited in Sierra Club's opening memorandum at 15-16, including *Mausolf v. Babbitt*, 85 F.3d 1295, 1303 (8th Cir. 1996) (finding intervention of right for environmental group where "the Government must inevitably favor some uses over others."); *Coalition of Arizona/New Mexico Counties for Stable Economic Growth v. U.S. Dept. of Interior*, 100 F.3d 845 (10th Cir. 1996) (United States' representation of the public interest generally may differ from intervenor's particular interest in endangered species). *See also* *Sierra Club v. Robertson*, 960 F.3d 83, 86 (8th Cir. 1992) (government did not represent Sierra Club since it represents all citizens, has an interest in promoting the economy, and "protecting its tax revenues."). In addition, neither the United States nor BP rebutted the inarguable point that Sierra Club, unlike the government and the U.S. Department of Justice, is not subject to shifting politics and policies, which further supports the finding that the government does not represent Sierra Club's interests. Sierra Club opening memorandum at 22 (*citing, inter alia*, *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 967 (3d Cir. 1998)).

The fact that the goals of the United States and Sierra Club are similar does not mean that approaches to litigation will be the same. *Trbovich*, 404 U.S. at 539. Sierra Club expects to take

different positions and make different arguments than that of the government. Whether or not the federal plaintiffs are characterized as suing in *parens patriae*, the fact remains that they oppose certain arguments that Sierra Club seeks to assert. Therefore, this case is clearly distinguishable from *Hooker*, in which there was no evidence that the applicant had interests adverse to those of the plaintiff government.

Given the divergence between Sierra Club and the United States, and its adversarial posture in related actions, it is virtually certain that Sierra Club's arguments will not be prosecuted as vigorously as they would be if Sierra Club is granted leave to intervene. First, by engaging in independent discovery Sierra Club might uncover facts that would affect the amount of penalties or injunctive relief in a manner favorable to it or that would materially influence any settlement. Secondly, the United States and Defendants may each be reluctant to advance an argument that would support a finding of fault against its opponent, but might, at the same time, expose that party to increased culpability. Finally, since Sierra Club is pressing claims against both the United States and Defendants in other ongoing litigation, there exists a genuine possibility that, in the absence of intervention, the existing parties will "bargain away" Sierra Club's interests rather than vigorously represent those interests at the possible expense of their own.

In conclusion, when a party possesses interests adverse to those of a prospective intervenor, that party cannot adequately represent the intervenor's interests. *See Sanguine, Ltd. v. United States Department of Interior*, 736 F.2d 1416, 1419 (10th Cir.1984) (an applicant may meet the burden of showing inadequate representation by showing that the representative has an interest adverse to the applicant); 7A Wright & Miller, *supra*, § 1909 at 524-25 (absentee cannot be required to look for adequate representation from an opponent; if all existing parties are

adverse, then absentee is not adequately represented). That succinctly describes the situation in this case, and Sierra Club has more than met its burden of demonstrating that the United States will not fully or adequately represent its interests in the instant litigation.

## II. In the Alternative, Sierra Club Should be Granted Permissive Intervention

The United States' argument that Sierra Club must have its own "claim" for permissive intervention is nothing more than a restatement of its failed argument that an independent cause of action is required to intervene. Moreover, unlike intervention of right, Rule 24(b) "dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation." *San Juan County, Utah v. U.S.*, 420 F.3d 1197, 1206 n.4 (10th Cir. 2005) (*citing Sec. & Exch. Comm'n v. U.S. Realty & Improvement Co*., 310 U.S. 434, 459 (1940)). Rather, courts consider whether intervention will likely contribute to developing the factual issues and to reaching a just and equitable adjudication of the legal issues presented. *Utah ex rel. Utah State Dept. of Health v. Kennecott Corp*., 232 F.R.D. 392, 398 (D. Utah 2005); *see also Natural Res. Def. Council, Inc. v. Tennessee Valley Auth*., 340 F. Supp. 400, 408-09 (S.D.N.Y. 1971) (granting permissive intervention in action alleging failure to comply with the National Environmental Policy Act where applicant for intervention had a "long-standing interest in and familiarity with strip-mining [the activity alleged to violate NEPA], expertise that may be helpful in clarifying the facts and issues in this case"), *rev'd on other grounds*, 459 F.2d 255 (2d Cir. 1972).

Here, all of Sierra Club's claimed interests are factually intertwined with the United States' claims. Additionally, Sierra Club can add its knowledge and expertise to help develop and clarify the factual and legal issues in this lawsuit, and will add to the proceedings by asserting arguments in support of civil penalties that the United States will not make.

Sierra Club would not delay or multiply this litigation. Sierra Club has moved expeditiously to intervene and has made clear its intention not to prolong this litigation, *e.g.*, by not duplicating discovery and to abide by the same schedule as the existing parties. The United States is concerned that it would lose "control" of the litigation if intervention were granted; however, Sierra Club would gladly confer with the United States prior to filings, discovery and argument to avoid conflict and redundancy, and defer to the United States as the lead plaintiff when appropriate.

Finally, *amicus* participation would be wholly insufficient given Sierra Club's substantial interests in protecting the interests of its thousands of members connected to the natural resources that are the subject of this action and its interests in the related actions. *Amicae* status would deny Sierra Club any discovery, and allow Sierra Club only one chance at briefing and no right to participate at any other stage of the litigation, much less any right to appeal. Sierra Club's potential ability to submit public comments is also wholly inadequate and no substitute for intervention. Only intervention, with party status, would enable Sierra Club to fully develop and present its case in support of maximum civil penalties against Defendants.

**CONCLUSION**

For the reasons set forth above, in addition to those in Sierra Club's opening memorandum, Sierra Club should be granted intervention of right under Rule 24(a)(2). In the alternative, Sierra Club should be granted permissive intervention under Rule 24(b)(1)(B).

Respectfully submitted,

**s/ Eric E. Huber**
Eric E. Huber
La. Bar No. 23790
Sierra Club
1650 38th St., Suite 102W
Boulder, CO 80301
tel (303) 449-5595
fax (303) 449-6520
eric.huber@sierraclub.org

**s/ Devorah Ancel**
Devorah Ancel
Ca. Bar No. 261038
Sierra Club
85 Second Street, 2nd Floor
San Francisco, CA 94105
tel (415) 977-5721
fax (415) 977-5793
devorah.ancel@sierraclub.org

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the above and foregoing has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and the foregoing was also electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 14th day of March, 2011.

I HEREBY CERTIFY that the above and foregoing was served on Defendant QBE Underwriting Ltd., Lloyds Syndicate 1036 via first class U.S. Mail, postage prepaid, on this 14th day of March, 2011, to George Gilly and Marty McLeod at Phelps Dunbar LLP Canal Place
365 Canal Street, Suite 2000 New Orleans, Louisiana 70130-6534.

**s/ Eric E. Huber**
Eric E. Huber