UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG | : | MDL NO. 2179 |
|    "DEEPWATER HORIZON" in the | : | |
|    GULF OF MEXICO, on | : | SECTION:  J |
|    APRIL 20, 2010 | : | JUDGE BARBIER |
| | : | MAG. JUDGE SHUSHAN |
| THIS DOCUMENT RELATES TO: | : | |
| | : | JURY TRIAL DEMANDED |
| ALL ACTIONS | : | |

. .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .

**CAMERON'S RESPONSE TO BP'S MOTION FOR ACCESS
TO THE *DEEPWATER HORIZON* BLOWOUT PREVENTER
<u>FOR FURTHER FORENSIC INVESTIGATION</u>**

Cameron International Corporation ("Cameron") hereby responds to BP America Inc. and BP Exploration and Production, Inc.'s (collectively "BP") Motion for Access to the *Deepwater Horizon* Blowout Preventer for Further Forensic Investigation, and in support respectfully shows as follows:

1049743v.1

**ARGUMENT**

A. **Further testing, if any, should be conducted by a neutral party after the parties have submitted briefs regarding the appropriate considerations.**

Since the fall of 2010, the BOEMRE/USCG Joint Investigation Team ("JIT") has been conducting forensic testing on the *Deepwater Horizon* blowout preventer ("BOP"). That investigation has been conducted with input from all parties-in-interest, including BP.

BP now seeks the Court's permission to conduct further testing on the BOP. BP explains that it believes these tests will "add value" to its analysis, but does not explain what that "value" is. (Dkt. No. 1533 at 3). By almost all accounts, the BOP played no role in personal injuries and deaths on the *Deepwater Horizon*. BP itself acknowledged on page 10 of its own *Deepwater Horizon* Accident Investigation Report: "The rig crew did not recognize the influx and did not act to control the well until hydrocarbons had passed through the BOP and into the riser." Page 108 reiterated this point: "No apparent well control actions were taken until hydrocarbons were in the riser. These actions did not succeed in controlling the well. It is estimated that a 1,000 bbl gain had been taken by the time the BOP was activated."

The Chief Counsel's Report from the National Commission on the BP Deepwater Horizon Oil Spill and Offshore Drilling stated clearly and succinctly the implications of the crew's failure to activate the BOP sooner: "Hydrocarbons had entered the riser well before the crew attempted to activate the BOP, and *even a perfectly functioning BOP could not have prevented the explosions that killed 11 men on April 20*." (page 36, emphasis added)

In light of the (at best) attenuated role of the BOP in Limitation of Liability issues, the Court must evaluate whether further testing is worth the delay in experts' work and reports that may be necessitated by additional testing and analysis of the new results, and its

potential effect on the Limitation of Liability trial set for February 12, 2012. This Court, in PTO #27, noted that the Limitation of Liability Trial "refers to the trial of liability, limitation, exoneration and fault allocation and personal injury/wrongful death and Robins Dry-Dock test cases."

Cameron does not object to the prospect of further testing in concept. However, Cameron respectfully requests that if there is to be any such testing, it should be conducted by a neutral party, not by one of the defendants in this litigation. Further, the testing should be conducted only after all parties have the opportunity to provide input and suggestions regarding the scope of—and the procedure that will govern—the tests.

In determining the appropriate scope and procedure that is to govern any additional testing, Cameron respectfully suggests that the parties and the Court should be guided by the following four-factor test:

(1) Whether the proposed testing is reasonable, necessary, and relevant to proving the movant's case;

(2) Whether the non-movant's ability to present evidence at trial will be hindered, or whether the non-movant will be prejudiced in some other way;

(3) Whether there are any less prejudicial alternative methods of obtaining the evidence sought; and

(4) Whether there are adequate safeguards to minimize prejudice to the non-movant, particularly the non-movant's ability to present evidence at trial.

*Mirchandani v. Home Depot, U.S.A., Inc.*, 235 F.R.D. 611, 614 (D. Md. 2006); *see also Spell v. Kendall-Futuro Co.*, 155 F.R.D. 587 (E.D. Tex. 1994).

In *Mirchandani*, the plaintiffs sought damages arising out of a fall from an allegedly defective ladder manufactured by the defendants. In support of their case, the plaintiffs

3

moved to conduct destructive testing on one of two locking bolts contained on the ladder at issue. While the court permitted such destructive testing, it did so only upon imposing what it termed "numerous safeguards," including, most significantly for purposes of the pending case, the right of the defendants to attend and photograph the testing and testing procedures, the right of the defendants to receive a detailed protocol explaining all of the procedures involved with the plaintiffs' testing, and the assurance that any modifications to the evidence would be "kept to a minimum." 235 F.R.D. at 614.

Cameron respectfully submits that, should the Court permit further testing of the BOP, it should direct the parties (including BP) to identify:

(1) the tests that should be conducted;

(2) the proposed entity or person to conduct the tests;

(3) the reasons the parties believes the testing is either necessary or relevant;

(4) the effect of the testing on the parties' ability to present evidence at trial; and

(5) proposed safeguards for the testing, or less invasive procedures that could be conducted.

Once the interested parties have been heard on these issues, this Court can resolve any issues left unresolved by the briefing, and then determine if further testing is appropriate— and, if so, which tests and which procedures are appropriate.

**B.  The order sought by BP is ambiguous.**

As a final point, Cameron objects to the form of the order BP seeks. In its prayer for relief in the pending motion, BP asks for an order providing that all parties "shall cooperate with BP in carrying [forensic activities] out, including that Cameron and Transocean shall supply

engineering drawings and specifications as required for the inspection." Cameron objects to such an ambiguous, open-ended mandate. Cameron has already produced many engineering drawings and specifications in the course of discovery. Of course, if it becomes appropriate for Cameron to produce further information that may be of assistance for any BOP testing, Cameron will do so. However, Cameron cannot predict what BP may claim is "required for the inspection" of the BOP, and so must object to an order containing such language.

Respectfully submitted,

| | |
|---|---|
| David J. Beck, T.A.<br>dbeck@brsfirm.com<br>Joe W. Redden, Jr.<br>jredden@brsfirm.com<br>David W. Jones<br>djones@brsfirm.com<br>Geoffrey Gannaway<br>ggannaway@brsfirm.com<br><br>BECK, REDDEN & SECREST, L.L.P.<br>One Houston Center<br>1221 Mckinney, Suite 4500<br>Houston, TX 77010-2010<br>713-951-3700<br>713-951-3720 (fax)<br><br>Howard L. Murphy, 9844<br>hmurphy@dkslaw.com<br>DEUTSCH, KERRIGAN & STILES<br>755 Magazine Street<br>New Orleans, Louisiana 70130<br>504-581-5141<br>504-566-4039 | /s/ Phillip A. Wittmann<br>Phillip A. Wittmann, 13625<br>pwittman@stonepigman.com<br>Carmelite M. Bertaut, 3054<br>cbertaut@stonepigman.com<br>Keith B. Hall, 24444<br>khall@stonepigman.com<br>Jared A. Davidson, 32419<br>jdavidson@stonepigman.com<br><br>STONE PIGMAN WALTHER WITTMANN L.L.C.<br>546 Carondelet Street<br>New Orleans, Louisiana 70130<br>504-581-3200<br>504-581-3361 (fax)<br><br>**ATTORNEYS FOR CAMERON INTERNATIONAL CORPORATION** |

5

1049743v.1

engineering drawings and specifications as required for the inspection." Cameron objects to such an ambiguous, open-ended mandate. Cameron has already produced many engineering drawings and specifications in the course of discovery. Of course, if it becomes appropriate for Cameron to produce further information that may be of assistance for any BOP testing, Cameron will do so. However, Cameron cannot predict what BP may claim is "required for the inspection" of the BOP, and so must object to an order containing such language.

Respectfully submitted,

| | |
|---|---|
| David J. Beck, T.A.<br>dbeck@brsfirm.com<br>Joe W. Redden, Jr.<br>jredden@brsfirm.com<br>David W. Jones<br>djones@brsfirm.com<br>Geoffrey Gannaway<br>ggannaway@brsfirm.com<br><br>BECK, REDDEN & SECREST, L.L.P.<br>One Houston Center<br>1221 Mckinney, Suite 4500<br>Houston, TX 77010-2010<br>713-951-3700<br>713-951-3720 (fax)<br><br>Howard L. Murphy, 9844<br>hmurphy@dkslaw.com<br>DEUTSCH, KERRIGAN & STILES<br>755 Magazine Street<br>New Orleans, Louisiana 70130<br>504-581-5141<br>504-566-4039 | /s/ Phillip A. Wittmann<br>Phillip A. Wittmann, 13625<br>pwittman@stonepigman.com<br>Carmelite M. Bertaut, 3054<br>cbertaut@stonepigman.com<br>Keith B. Hall, 24444<br>khall@stonepigman.com<br>Jared A. Davidson, 32419<br>jdavidson@stonepigman.com<br><br>STONE PIGMAN WALTHER WITTMANN L.L.C.<br>546 Carondelet Street<br>New Orleans, Louisiana 70130<br>504-581-3200<br>504-581-3361 (fax)<br><br>**ATTORNEYS FOR CAMERON INTERNATIONAL CORPORATION** |

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Cameron's Response to BP's Motion For Access to the Deepwater horizon Blowout Preventer For Further Forensic Investigation has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 16th day of March, 2011.

*/s/ Phillip A. Wittmann*

1049743v.1