UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re:  Oil Spill by the Oil Rig "Deep-water Horizon" in the Gulf of Mexico, on April 20, 2010 | MDL NO. 2179 <br><br> SECTION: J |
| This Document Relates Only To: *Rhodes v. Transocean, Ltd., et al* 2:10-CV-01502 | JUDGE BARBIER <br> MAG. JUDGE SHUSHAN |

**Fourth Amended Complaint**

Karl W. Rhodes, appearing through his undersigned counsel, files this Fourth Amended Complaint as follows:

**Negligence**

1.

Petitioner avers that the fire, explosion, and sinking of the *Deepwater Horizon* were caused by, among other things, a failure of the mud-control system.  M-I L.L.C., also known as M-I SWACO, supplied the mud, drilling and completion fluids, additives, and other related components and equipment and personnel (mud engineers) to the rig for the *Deepwater Horizon* at the time of the explosion.  It provided pressure control, rig instrumentation, and drilling waste management products and services.  Its mud engineers performed and otherwise carried out these services on this

job. They set up, calculated, and controlled the mud displacement procedures. Its engineers determined what chemicals and other additives to include in the mud to control the well to prevent loss of circulation. They were responsible for determining the mud's viscosity and weight. They were responsible for periodically testing the mud to ensure the correct viscosity and weight to maintain circulation. When a spacer developed, its mud engineers chose a mud mixture composed of various additives that made up into a heavy grit that. This presented a heavy, viscous mud composition that was pumped into the well and which migrated into the well's piping system. The normal and proper procedure was to put in a spacer to separate the mud and the salt water to prevent their mixing. Consequently, M-I L.L.C.'s employees miscalculated what ingredients to add to the mud to maintain circulation and failed to correctly deal with the spacer that developed in the system, choosing to use the incorrect mud mixture rather than a spacer. In other words, the mud mixture was wrong and not fit for its ordinary purpose. M-I L.L.C. therefore breached its duties to furnish the correct mud mixture(s) to properly maintain circulation.

2.

M-I L.L.C. acted negligently and/or with gross negligence, willful misconduct and reckless disregard for human life by, among other things, using the wrong materials to maintain well circulation. These miscalculations and errors endangered everyone on the rig who depended and relied on M-I L.L.C. to properly and correctly maintain well circulation, which miscalculations and errors were not known by anyone other than M-I L.L.C. It had a duty to train and supervise its employees but failed to do so, who then failed to use the correct mud composition or, alternatively, failed to have a spacer put into the well to help control it. If M-I L.L.C. had safely performed its duties and responsibilities for maintaining well circulation, the factors leading to the explosions, fire,

and sinking of the *Deepwater Horizon* would have been timely detected to take proper preventative actions.

3.

Petitioner avers that this subject incident and his resulting injuries and damages sued upon herein were the direct and proximate result of the negligence and/or gross, willful, and wanton negligence, and fault of M-I L.L.C. This negligence, fault, conduct, and conditions, including those discussed above, are listed more particularly, but not exclusively, as follows:

   A.   Negligent failure to correctly and properly provide the mud mixture for the workers to put into the well to maintain well circulation;

   B.   Negligent failure to put a spacer into the well to separate and otherwise keep the mud and the salt water from their mixing;

   C.   Negligent failure to notify, inform, and advise BP and/or Transocean and/or any other necessary workers on the rig about the correct mud mixture to put into the well to maintain circulation;

   D.   Negligent failure to notify, inform, and advise BP and/or Transocean and/or any other workers of the need to put a spacer into the well to separate and otherwise keep the mud and the salt water from their mixing;

   E.   Mixing the wrong mud materials to put into the well to maintain circulation and which materials tended to migrate and clog into the well's piping system;

   F.   Negligent failure to take all appropriate precautions to avoid an accident and explosion of the kind that occurred;

   G.   Negligent failure to properly train it employees;

H. Negligent violation of government and industry rules, regulations and standards;

I. Placement of heavy drilling mud with seawater at a time when there was no well integrity, underbalancing the well and allowing hydrocarbons under pressure to flow up to the production casing and past the blow out preventer;

J. Negligent failure to have all proper equipment necessary to perform the job being performed at the time of the accident and explosion in a safe manner;

K. Negligently failing to properly and adequately inform, communicate, and warn BP and/or Transocean about what mud, including additives, that its employees had mixed to send into the well to maintain circulation.

L. Negligent failure to have sufficient number of properly trained and qualified personnel to safely undertake the job being performed at the time of the accident and explosion in a safe manner;

M. Ignoring data showing an influx of pressured hydrocarbons and an increase in drill pipe pressure, which were unmistakable signs of an impending blowout or blowout in progress;

N. Having a mud engineering crew that was not properly trained;

O. Violation of statutes and/or regulations and/or applicable Coast Guard, MMS, OSHA, and other rules designed to promote and foster safety which constitutes negligence *per se*;

P. Being vicariously liable for their employees' and agents' negligence, gross negligence, and recklessness;

Q. Creating an unsafe place for petitioner to work in;

R. Other acts of gross, willful, reckless, and wanton conduct that may be shown through discovery or at trial;

S. Generally, its failure to act with the required degree of care commensurate with the existing situation.

## Concluding Statement

4.

To the extent that this Fourth Amended Complaint is consistent and compatible with his Original, First, Second, and Third Amended Complaints, petitioner incorporates those pleadings and prayer as through set forth at length herein.

WHEREFORE, petitioner, Karl W. Rhodes, prays that after due proceedings are had, the Court render judgment in his favor and against the defendants and their respective liability insurers, jointly, severally, and *in solido* for compensatory, punitive, exemplary, and other appropriate damages, together with prejudgment interest from date of loss until paid, post-judgment interest, and for all costs of these proceedings. Finally, petitioner prays for such further orders and relief to which he is entitled, whether at law, in admiralty, or in equity.

Respectfully submitted,

*s/Richard R. Kennedy*
RICHARD R. KENNEDY (#7788), T.A.
RICHARD R. KENNEDY III
309 Polk Street
P.O. Box 3243
Lafayette, LA   70502-3243
Phone:   (337) 232-1934

Fax: (337) 232-9720
E-Mail: ken309@richardkennedy.com
E-Mail: rrk3@richardkennedy.com
*Attorneys for Karl W. Rhodes*

**Certificate of Service**

I hereby certify that the above and foregoing Pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Orer Nol. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179 on this 17th day of March, 2011.

　　　　　　　　　　　　*/s/ Richard R. Kennedy*