# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

300 North LaSalle Street
Chicago, Illinois  60654

Timothy A. Duffy, P.C.
To Call Writer Directly:
(312) 862-2445
tim.duffy@kirkland.com

(312) 862-2000

www.kirkland.com

Facsimile:
(312) 862-2200

March 16, 2011

The Honorable Sally Shushan
United States Magistrate Judge
500 Poydras Street, Room B345
New Orleans, Louisiana 70130

Re:   In re Oil Spill by the Oil Rig "Deepwater Horizon," MDL No. 2179

Dear Magistrate Judge Shushan,

I write in response to Mr. Irpino's letter of March 14, 2011 raising four discovery issues. By way of background, the Court should be aware that Mr. Irpino and I entered into an informal agreement that we would advise the Court of discovery issues we wished to raise at the Friday conferences by sending a letter by close-of-business Monday and responding by close-of-business Wednesday – without prejudice to any party's ability to ask that issues be deferred for a week or two to allow for fuller investigation or briefing (as is the case with one of the issues Mr. Irpino has raised).  In any event, this is the background to Mr. Irpino's letter of Monday, and my letter today, Wednesday, in response.  We would, of course, welcome any suggestion from Your Honor and other parties as to the convenience of this informal process.

1.     **Timing of Document Productions by BP.**

The PSC has served BP with 328 requests for production of documents.  (The latest set of 28 arrived just three days ago.)  The PSC's requests are, of course, in addition to the hundreds of requests that BP has received from a plethora of governmental and regulatory entities, and are separate and apart from the substantial demands upon BP's resources to search, review, process, and produce custodial files in advance of the ongoing depositions.  As the Court is aware, BP has already produced over one million pages of documents, and continues to produce more on a rolling basis.  In the last month, BP has made __ document productions consisting of __ pages , compared to __  productions of __ pages for all other parties combined.  BP's rolling production will continue for some time even if the scope of the PSC's were closed as of today.

Given these facts, it is not surprising that BP's written responses to the PSC's 328 requests must often state that BP "will search for and produce" certain documents in due course as opposed to providing the documents 30 days after receipt of the request.  This has prompted the PSC to ask BP (and now asks the Court to require BP) to provide a date certain by which it

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
March 16, 2011
Page 2

will produce the documents it undertakes to search for and produce in response to the PSC's written requests.  In response, BP has repeatedly told the PSC that it is willing to provide target dates for the production of documents in response to specific requests, but that in order to do so in any meaningful way, plaintiffs must tell BP which requests they want BP to fulfill first.  But the PSC has yet to give BP any indication of the priority it wishes placed on responses to any specific requests.  BP is apparently to produce all documents as soon as possible, while the PSC sits back and decides which to complain have not yet been produced.  The only thing this accomplishes is guaranteeing that BP will fall short in some respect, and that the PSC will be able to complain that BP has not responded to certain requests quickly enough.

This problem is purely a practical one, and can be best addressed if the PSC tells BP the requests it wishes BP to prioritize.  If the PSC identifies a reasonable number of requests (*e.g.*, 10 or 15) it wants responded to first, BP will provide a target date by which it expects productions to be reasonably complete.  The shorter the list, the sooner and more firm the date, and the sooner we can all move on to the next-most-important requests.

 2. **Marketing and Press Release Documents.**

It is ironic that the PSC complains first that BP is not able to provide near-term dates for document productions and then goes on to seek additional document discovery in three different areas that, if undertaken, would substantially expand the volume of work required of BP.  The first area into which the PSC seeks to divert BP's attention is the collection, review, and production of documents and communications "relating to" marketing, public relations, press releases, and "similar activities" related to the oil spill.  Though BP has agreed to produce its voluminous public communications, it has objected to requests to produce all documents "related to" these communications as overbroad, unreasonable, and unduly burdensome.

BP concedes that this material has theoretical relevance to certain aspects of this litigation, but submits that none of it bears directly on the issues that will be litigated in the limitation proceeding.  These documents are, by definition, several steps removed from the events at issue and involve persons whose knowledge of the relevant facts is necessarily derivative of other individuals who are already the subject of intensive discovery efforts.  Please note that to the extent, for instance, any one of the deponents whose files are being searched and produced in anticipation of a deposition had communications with public-relations personnel, for instance, such documents are being produced.  BP is not removing public-relations-related documents from otherwise responsive collections of documents.

Undertaking wholesale discovery into this area at this time would necessitate adding swaths of additional custodians, making several new sweeps for document from files heretofore

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
March 16, 2011
Page 3

not reviewed, and substantially compromise the pace of work on other document requests. BP has told the PSC that it would consider some narrower version of these requests, but plaintiffs have not provided any such suggestions for BP's consideration. Discovery in this area, even if appropriate at some later point in time, demands reasonable limitations on such parameters as time frame, subject matter, and personnel. No discovery should take place now, particularly without any showing of probity, which the PSC has not provided either to BP in conference or to the Court in its request.

### 3. Documents Relating to Damages Analysis.

This issue implicates no fewer than six extensive document requests and several objections by BP as the requests plainly ask BP to expand the frontier of discovery into areas (*e.g.*, the GCCF) that Judge Barbier has already ruled irrelevant for purposes of the limitation proceeding. Mr. Irpino's letter indicates (for the first time) that the PSC may be willing to narrow these requests so as not to implicate GCCF documents and communications. BP submits that the parties may yet be able to resolve or narrow their dispute after further discussion. Even if those discussions are unproductive, BP believes this request raises significant and complex issues that warrant separate and more considered treatment than allowed under the informal two-day schedule described above. BP therefore suggests that this matter be deferred to the March 25th conference. In the meantime, BP proposes that it confer with the PSC and, if necessary, submit its position in writing to the Court by Wednesday, March 23rd.

### 4. Documents Relating to Safety History Beyond the GoM.

This request likewise seeks to expand BP's discovery efforts well beyond their current expansive state. Plaintiffs seek documents related to safety and other incidents worldwide, often without even a limitation to drilling for oil, much less deepwater drilling operations. There are three issues here. First, safety and incident documents the world over of BP-affiliated entities that do not even drill for oil, or operate in the Gulf of Mexico, are of no relevance to this litigation. Second, the limitation to what BP calls the "GoM" is not simply an artifact of geography or convenience; it is reflective of BP's corporate organization and structure. The GoM is the BP business unit that oversaw all aspects of the Macondo Well. Expanding discovery beyond the GoM would not only push past the boundary of what is relevant, it would involve whole new swaths of offices, personnel, and operations in the litigation and discovery processes. Third is the simple practical reality that undertaking to search for and produce these documents will be a high-cost, low-reward effort that is guaranteed to generate disputes and controversy well-removed from the issues in this case. Plaintiffs may wish to make this litigation about past incidents in other parts of the world, but BP respectfully suggests that it is

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
March 16, 2011
Page 4

enough to canvass the business unit that has all the information related to the events at issue in this case.

       I look forward to discussing these issues with Your Honor on Friday.

                                          Respectfully,

                                          /s/  Timothy A. Duffy, P.C.

cc:    James Roy
        Steve Herman
        Mike Underhill
        Corey Maze
        Defense Steering Committee