# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

300 North LaSalle Street
Chicago, Illinois  60654

Timothy A. Duffy, P.C.
To Call Writer Directly:                              (312) 862-2000                                   Facsimile:
(312) 862-2445                                                                                     (312) 862-2200
tim.duffy@kirkland.com                           www.kirkland.com

March 16, 2011

The Honorable Sally Shushan
United States Magistrate Judge
500 Poydras Street, Room B345
New Orleans, Louisiana 70130

>     Re:     *In re Oil Spill by the Oil Rig "Deepwater Horizon," MDL No. 2179*

Dear Magistrate Judge Shushan,

        I write in furtherance of our discussion last Friday of the Plaintiffs' Steering Committee's request to modify paragraph 2 of PTO #14 and the deposition testimony and exhibit (since provided to the Court by Mr. Irpino) that the PSC contends supports its position, and in response to Mr. Irpino's further letter of March 15, 2011 discussing the work of the Incident Investigation Team ("IIT") and reiterating the PSC's request to require additional privilege logs.

        We now have three issues to address:

        1.      Whether the document inadvertently produced by BP and introduced as an exhibit at the deposition of Mr. Lucas is protected by privilege;

        2.      Whether BP is entitled to claim privilege with respect to any communications involving company counsel concerning the work of the IIT; and

        3.      Whether the Court should modify the terms of PTO #14 to require BP (and other parties) to log privileged communications involving company (but not outside) counsel.

## I.      The Lucas Deposition Exhibit Is a Privileged Document.

        The document at issue is a two-page memorandum entitled "Request for Support for an Exception from the Incident Investigation GDP - Deepwater Horizon incident investigation." Appended to the memorandum is a two-page copy of the Terms of Reference for the IIT.

        The memorandum was drafted by a BP attorney, Mr. Mike Nash, who was providing legal advice to the IIT.  Mr. Nash provided advice as to whether it would be appropriate for an exception to be requested from the requirements of BP's Incident Investigation Group Defined Practice ("GDP") 4.4-0002.  Mr. Nash, after speaking with Mr. Bly and Mr. Lucas, drafted the

Hong Kong      London      Los Angeles      Munich      New York      Palo Alto      San Francisco      Shanghai      Washington, D.C.

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
March 16, 2011
Page 2

memorandum, which reflected Mr. Nash's opinion as to the basis for seeking a dispensation from the GDP.  Mr. Nash forwarded the memorandum to Mr. Rupert Bondy, BP's General Counsel, who reviewed, approved and issued it to the client – in this instance Mr. John Baxter, acting Group Head of Safety & Operations.

BP inadvertently produced this document to the PSC on February 14, 2011.  Upon review of the document in preparation for the deposition of Mr. Lucas on February 24th, counsel for BP determined that the document was potentially privileged, and thus ensued the colloquy at pages 352-57 in which counsel for the PSC was first informed of the issue.  Counsel for BP followed up with a "claw back" letter on March 7th, sent pursuant to Paragraph 8 of PTO #14, asserting privilege with regard to the document.  The PSC responded that it disagreed with BP's assertion, but has yet to offer any argument as to why the document is not privileged beyond the comments made at last Friday's conference.

To be fair, not all of the facts outlined above are apparent from the memorandum itself, but in light of them, there can be little question that the memorandum is covered by both the attorney-client and attorney-work-product privileges.  The memorandum was prepared in response to a request for legal advice, and it contains the legal advice and mental impressions of two attorneys on the issue of whether the work of the IIT met the requirements for an exception to the company's Group Defined Practice concerning incident investigations.  *See Upjohn Co. v. U.S.*, 449 U.S. 383 (1981) (stressing the importance of the attorney client privilege with respect to company attorney communications in the corporate context).

## II.     BP Is Entitled to Assert Privilege with Respect to Certain Communications Concerning the Work of the IIT.

The PSC is correct in saying that the work of the IIT was not privileged.  It was a business undertaking, not a legal one.  All the quotations in Mr. Irpino's letter attributed to BP counsel, and to Mr. Lucari and others working on the IIT accurately reflect this fact.  It follows that BP is not entitled to assert – nor has it asserted – any "general" privilege with respect to communications, with counsel or others, concerning the IIT.  It also follows that BP is not entitled to claim – nor has it claimed – that anything close to all documents (or even all documents involving company counsel) concerning the work of the IIT team are privileged.

*It does not follow*, however, that BP is not entitled to claim any privilege with respect to any document that concerns the IIT or its work.  As with any other non-privileged, business undertaking, there were occasions where members of the IIT (or others at BP providing oversight, support, or other assistance to the IIT) sought and/or received the advice of counsel concerning the work of the IIT – with regard, for example, to the appropriate scope of the

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
March 16, 2011
Page 3

project, compliance with regulations, reporting requirements, company policies, and the like.  It is utterly unremarkable that company counsel was involved in privileged discussions or communications concerning a project, even though the substance of that project was not privileged.

The David Sims interview memo attached to Mr. Irpino's March 15 letter is a good examples of BP's observation of the distinction between the substantive work of the IIT, none of which was privileged, on the one hand, and privileged communications with counsel (as to the appropriate scope of the project and its compliance with company protocols, for example, in the memorandum discussed above) on the other.  The Sims interview memo reflects the involvement of several IIT members, including Mr. Lucari, counsel to the IIT.  Despite the direct involvement of a company lawyer, ***BP has never asserted any privilege with respect to it or hundreds of other documents like it.***  That BP produced this document is hardly grounds for arguing it has improperly withheld documents under cover of the excuse that company counsel was involved.

## III.	The PSC Has Presented No Justification for Modifying PTO #14.

Neither of the documents discussed above provides support for the PSC's request to modify Paragraph 2 of PTO #14 and require BP (and other parties) to log post-Incident communications with company counsel.

The Nash/Bondy memorandum should never have been produced and cannot be used for any purpose.  Putting it and other documents like it on a privilege log would serve no purpose whatsoever.  But even assuming the memorandum were not privileged, the fact that it could have been withheld and not logged still does not justify modifying PTO #14.

Indeed, the transcript of the deposition of Mr. Lucas indicates that the PSC would be in no different position today had it never seen the memorandum (or seen it on a privilege log).  Mr. Lucas answered several questions concerning the exception separate and apart from the questions he was asked concerning the memorandum.  Even without the document, he would have provided the core information with respect to the exception and its approval by Mr. Baxter, who will undoubtedly provide additional testimony on the subject when he is deposed on June 21st and 22nd.

It is also likely that the PSC would also have learned of the memorandum from Mr. Lucas.  Note that Mr. Baxter was identified by Mr. Lucas in response to general questions about the exception and *before* he was confronted with the privileged memorandum.  This strongly suggests that even if the memorandum had never been produced, the PSC would still have learned of the exception, the existence of a privileged memo concerning it, and of Mr. Baxter's

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
March 16, 2011
Page 4


role in approving the exception.   Even without an entry on a privilege log, the PSC would have
had ample ability to inquire of BP as to the status of the memorandum.  BP would then have
explained that the memorandum was privileged, and the PSC would have been free to dispute
that claim, just as it has done today.

The Sims interview notes likewise demonstrate that BP is not using PTO #14 to withhold
non-privileged documents concerning the work of the IIT, even where company counsel are
involved.  In sum, nothing the PSC has brought to the Court's attention provides any justification
for changing PTO #14 to require BP to log additional communications with company counsel.
Moreover, it demonstrates that any significant issue with regard to assertions of privilege over
post-Incident communications with company counsel are likely to come to the attention of the
PSC despite the absence of a privilege log.  Indeed, their examples confirm that any benefit to
requiring additional privilege logging is hypothetical at best, and would be far outweighed by the
demonstrable burden that changing the terms of PTO # 14 would impose on BP and other
parties.

I look forward to discussing this issue with Your Honor at the Court's convenience.


Respectfully,

/s/  Timothy A. Duffy, P.C.



cc:     James Roy
        Steve Herman
        Mike Underhill
        Corey Maze
        Defense Steering Committee