FILED
2011 Feb-23  PM 04:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

# **Exhibit F**

# GUARANTY

(1)　　FOR VALUABLE CONSIDERATION, the receipt and sufficiency of which are hereby acknowledged, the undersigned, jointly and severally (hereinafter collectively called "Guarantor") unconditionally guarantees and promises to pay to COASTAL BANK AND TRUST OF FLORIDA, formerly known as BANK OF PENSACOLA (hereinafter called "Bank") or order in lawful money of the United States, all Indebtedness of PLASH ISLAND RESORT, L.L.C., an Alabama limited liability company (hereinafter called "Borrower"), to Bank. The word "Indebtedness" as used herein shall mean all advances, debts, obligations, and liabilities of Borrower to Bank under and in accordance with (i) that certain Renewal Promissory Note of even date herewith made by Borrower in favor of Bank, in the original principal amount of FIVE MILLION TWO HUNDRED FIFTY SEVEN THOUSAND ONE HUNDRED TWENTY NINE AND 16/100 DOLLARS ($5,257,129.16) (the "Note"), which Note is a renewal of that certain Promissory Note dated August 27, 2008 made by Borrower in favor of Bank, in the original principal amount of FIVE MILLION FOUR HUNDRED THOUSAND AND 00/100 DOLLARS ($5,400,000.00) (the "Prior Note"), and (ii) that certain Mortgage, Assignment of Leases and Rents and Security Agreement dated March 15, 2005 made by Borrower in favor of Bank, securing the Note (the "Mortgage"), which Mortgage secured certain real property more particularly described therein (the "Property") (the Note, the Mortgage and all other documents evidencing or securing the Indebtedness are hereinafter referred to collectively as the "Loan Documents"), whether recovery upon such Indebtedness may be or hereafter becomes barred by any statute of limitations or whether such Indebtedness may be now or hereafter becomes otherwise unenforceable. This Guaranty renews and replaces that certain Guaranty dated August 27, 2008 executed by Guarantor in favor of Bank (the "Prior Guaranty"), which Prior Guaranty operated to guaranty the obligations of Borrower under the Prior Note.

(2)　　This is a continuing Guaranty relating to the Indebtedness, including Indebtedness arising under successive advances or transactions which shall either continue Indebtedness or, from time to time, renew Indebtedness. In the event any sums or other things of value that are paid or transferred to or otherwise received by the Bank are rescinded, recovered, required to be returned, set aside, rendered void or otherwise adversely affected in any legal proceeding or for any cause whatsoever, including under any law, rule or regulation relative to bankruptcy, insolvency, fraudulent transfers or other relief of debtors, then this Guaranty shall continue to be effective or shall be revived and reinstated, as necessary, in order to give full effect to the Guarantor's liability hereunder, to the same extent as if such payment, transfer and/or receipt had never occurred. This Guaranty shall not release, modify, revoke or terminate any other guaranty heretofore or hereafter executed by the Guarantor; nor shall any other guaranty heretofore or hereafter executed by Guarantor release, modify, revoke or terminate this Guaranty unless such other guaranty specifically refers to this Guaranty and the release, modification, revocation, or termination (as applicable) is accepted by Bank in writing.

(3)　　The obligations of the Guarantor hereunder are independent of the obligations of Borrower, and a separate action or actions may be brought and prosecuted against the Guarantor whether action is brought against Borrower or any other guarantor of the Indebtedness or whether Borrower or other guarantor are joined in any such action or actions.

(4)　　It is the intent hereof that this obligation of Guarantor shall be and remain unaffected, (a) by the existence or nonexistence, validity or invalidity, of any pledge, assignment, or conveyance given as security; or (b) by any understanding or agreement that any other person, firm, or corporation was or is to execute this or any other guaranty, any of the Loan Documents or other instruments evidencing the Indebtedness, or any part thereof, or any other document or instrument or was or is to provide collateral for any Indebtedness; or (c) or resort on the part of Bank, or failure of Bank to resort, to any other security or remedy for the collection of said Indebtedness; or (d) by the

1

death, bankruptcy, insolvency, dissolution, or incapacitation of the Guarantor, the Borrower, or any other person, and in case of any such death or bankruptcy, the failure of Bank to file a claim against the deceased Guarantor's estate or against such bankrupt's estate, or the failure of Bank to otherwise seek remedies as a consequence of such events.

(5)     The Guarantor authorizes Bank, without notice or demand and without affecting the Guarantor's liability hereunder, from time to time, to (a) renew, compromise, extend, accelerate, restate, consolidate, replace, refinance, or otherwise change the time for payment of, or otherwise change the terms of, the Indebtedness or any part thereof, including increasing or decreasing the rate of interest thereof; (b) take and hold security for the payment of this Guaranty or any of the Indebtedness and/or exchange, modify, enforce, waive, and release any such security; (c) apply such security and direct the order or manner of sale thereof as Bank, in its discretion, may determine; and/or (d) release or substitute the Borrower or other obligor, endorser, or other guarantors of all or any part of the Indebtedness (including, without limitation, the Guarantor.)

(6)     The Guarantor waives any right to require Bank (a) to proceed against the Borrower or any other guarantor of the Indebtedness; (b) to protect, preserve, proceed against, or exhaust any security held from Borrower; or (c) to pursue any other remedy in Bank's power whatsoever. The Guarantor waives any defense arising by reason of any disability or other defense of the Borrower or any other guarantor of the Indebtedness (including any defense based on or arising out of the unenforceability of any part of the Indebtedness for any cause whatsoever) or by reason of the cessation from any cause whatsoever of the liability of the Borrower or any other guarantor of the Indebtedness. Until all Indebtedness shall have been paid in full, even though such Indebtedness is in excess of Guarantor's liability hereunder, Guarantor shall not have any rights of subrogation, reimbursement, contribution, or indemnity or any right of recourse to any assets or properties of the Borrower or any other guarantor of the Indebtedness, and Guarantor waives (i) all such rights, if any, of subrogation, reimbursement, contribution, indemnity and recourse, (ii) any right to enforce any remedy which Bank now has or may hereafter have against the Borrower or any other guarantor of the Indebtedness, and (iii) any benefit of, and any right of recourse to or to participate in, any security now or hereafter held by Bank or otherwise constituting collateral for any Indebtedness. Guarantor waives all presentments, demands for performance, notices of nonperformance, notice of acceleration, notice of intent to accelerate, protests, notices of protest, notices of dishonor, and notices of acceptance of this Guaranty and of the existence, creation, or incurrence of new or additional Indebtedness, and waives any rights or defenses based, in whole or in part, upon an offset by the Borrower or any other guarantor of the Indebtedness against any obligation or indebtedness now or hereafter owed to the Borrower. Guarantor waives the benefit of any statute of limitations or other defenses affecting the Borrower's liability for the Indebtedness or the enforcement thereof or the Guarantor's liability hereunder or the enforcement thereof, and the Guarantor further agrees that any payment by the Borrower or other circumstances that operate to toll any statute of limitations as to the Borrower shall operate to toll the statute of limitations as to the Guarantor. Guarantor waives any rights to exemption under the Constitution of the State of Alabama or any other state as to any Indebtedness or obligation created hereunder.

(7)     In addition to all liens upon, and rights of setoff against, moneys, securities, or other property of the Guarantor given to Bank by law, Bank shall have and hereby is granted a lien upon, security interest in, and a right of setoff against, all moneys, securities, and other property of the Guarantor now or hereafter in the possession of or on deposit with Bank, whether held in a general or special account or deposit, or for safekeeping or otherwise; and every such lien, security interest and right of setoff may be exercised without demand upon or notice to the Guarantor. No lien, security interest, or right of setoff shall be deemed to have been waived by any act or conduct on the part of Bank, or by any failure to exercise such right of setoff, or to enforce such lien or security interest, or by any delay in so doing, and every right of setoff and lien shall continue in full force and effect until such right of setoff or lien specifically is waived or released in a written instrument executed by Bank.

2

(8)     Any indebtedness of Borrower to Guarantor, whether now existing, hereafter arising, secured or unsecured, and if secured, the security for same hereby is subordinated to the Indebtedness; and such subordinated Indebtedness, if Bank so requests, shall be collected, enforced, and received by Guarantor as trustee for Bank and be paid over to Bank on account of the Indebtedness, but without reducing or affecting in any manner the liability of Guarantor under this Guaranty.

(9)     If Borrower or Guarantor is a corporation, partnership, joint venture, trust, limited liability company, business organization, or enterprise, it shall not be necessary for Bank to inquire into the power or authority of Borrower or Guarantor or the officers, directors, partners, trustees, or agents acting or purporting to act on its behalf.

(10)     Guarantor shall pay attorney's fees and all other costs and expenses which are incurred by Bank in the enforcement of this Guaranty.

(11)     No right or power of Bank hereunder shall be deemed to have been waived by any act or conduct or failure or delay to act on the part of Bank or any of its agents, employees or representatives; and the terms and provisions hereof may not be waived, altered, modified, or amended except in writing duly signed by a duly authorized officer of the Bank. In the event that Bank shall waive in writing any provision or requirement hereunder, such waiver shall be effective only for the specific purposes, circumstances and duration stated in said waiver. Bank may, without notice, assign this Guaranty in whole or in part and each reference herein to Bank shall be deemed to include its successors and assigns. The provisions of this Guaranty are binding upon the Guarantor and the heirs, distributees, executors, administrators, legal representatives, personal representatives, successors and assigns thereof, and shall inure to the benefit of the Bank and each of its successors and assigns. THIS GUARANTY AND THE RIGHTS AND OBLIGATIONS OF THE GUARANTOR AND THE BANK HEREUNDER SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF ALABAMA. Guarantor acknowledges that any cause of action arising under this Guaranty will be a cause of action arising from an Alabama transaction, that it is foreseeable that this Guaranty and the performance hereof have and will have significant effects in the State of Alabama, and that Guarantor's execution of this Guaranty will subject Guarantor to judicial jurisdiction in the State of Alabama. If any of the provisions of this Guaranty or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of the provisions of this Guaranty, or the application of such provision or provisions to persons or circumstances other than those as to whom or which it is held invalid or unenforceable, shall not be affected thereby, and every provision of this Guaranty shall be valid and enforceable to the fullest extent permitted by law. Except as expressly set forth in this Guaranty, this Guaranty is the entire agreement of the Guarantor and the Bank with respect to the guarantee of the Indebtedness by the Guarantor, and no representation, understanding, promise or condition concerning the subject matter hereof shall be binding upon the Bank unless expressed herein. Any notice by Guarantor to the Bank shall be effective only upon the actual receipt thereof by an officer of Bank at the address specified below, and in the event no such address is specified, at Bank's principal corporate office in Pensacola, Florida, Attention: President.

(12)     This Guaranty is given under the seal of the Guarantor, and it is intended that this Guaranty is and shall constitute and have the effect of a sealed instrument according to law.

(13)     GUARANTOR HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES THE RIGHT IT MAY HAVE TO TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER, OR IN CONNECTION WITH THIS GUARANTY, THE INDEBTEDNESS, AND ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH OR THEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER WRITTEN OR ORAL) OR ACTIONS OF BANK, BORROWER OR GUARANTOR. THIS PROVISION IS A

3

MATERIAL INDUCEMENT FOR THE BANK ACCEPTING THIS GUARANTY AND MAKING THE CREDIT ACCOMMODATIONS TO THE BORROWER.

(14)   GUARANTOR ACKNOWLEDGES, COVENANTS, AGREES, REPRESENTS AND WARRANTS TO BANK THAT (I) ALL THE LOAN DOCUMENTS ARE IN FULL FORCE AND EFFECT, (II) THE LOAN DOCUMENTS CONSTITUTE THE LEGAL, VALID AND BINDING OBLIGATIONS OF THE BORROWER ENFORCEABLE AGAINST BORROWER IN ACCORDANCE WITH THEIR TERMS, (III) THIS GUARANTY CONSTITUTES THE LEGAL, VALID AND BINDING OBLIGATION OF GUARANTOR, AND IS ENFORCEABLE AGAINST GUARANTOR IN ACCORDANCE WITH ITS TERMS, (IV) GUARANTOR HAS NO DEFENSES, SETOFFS, RIGHTS OF RECOUPMENT, COUNTERCLAIMS, EQUITIES, ACTIONS OR CLAIMS OF ANY NATURE WHATSOEVER, IN FAVOR OF GUARANTOR TO OR AGAINST ENFORCEMENT OF THE PRIOR GUARANTY, THE PRIOR NOTE, THE NOTE OR ANY OTHER DOCUMENTS OR INSTRUMENTS EVIDENCING, SECURING OR OTHERWISE EXECUTED IN CONNECTION WITH ANY INDEBTEDNESS OF BORROWER TO BANK, AND/OR WITH RESPECT TO ANY ACTS OR OMISSIONS OF LENDER ON OR PRIOR TO THE DATE HEREOF, AND TO THE EXTENT ANY SUCH DEFENSES, SETOFFS, RIGHTS OF RECOUPMENT, COUNTERCLAIMS EQUITIES, ACTIONS OR CLAIMS OF ANY NATURE WHATSOEVER MAY EXIST, WHETHER KNOWN OR UNKNOWN, THE SAME ARE HEREBY EXPRESSLY WAIVED, RELEASED AND DISCHARGE, AND (V) GUARANTOR HAS REVIEWED AND APPROVED THE TERMS OF THE NOTE.

IN WITNESS WHEREOF, the undersigned Guarantor has executed this Guaranty effective as of September 28, 2009.

Marcrum Development, L.L.C., an
Alabama limited liability company

By: _Debra M Massey_
Name: Debra M. Massey
Title: Manager _member_

4

# Exhibit G

# GUARANTY

(1)     FOR VALUABLE CONSIDERATION, the receipt and sufficiency of which are hereby acknowledged, the undersigned, jointly and severally (hereinafter collectively called "Guarantor") unconditionally guarantees and promises to pay to COASTAL BANK AND TRUST OF FLORIDA, formerly known as BANK OF PENSACOLA (hereinafter called "Bank") or order in lawful money of the United States, all Indebtedness of PLASH ISLAND RESORT, L.L.C., an Alabama limited liability company (hereinafter called "Borrower"), to Bank. The word "Indebtedness" as used herein shall mean all advances, debts, obligations, and liabilities of Borrower to Bank under and in accordance with (i) that certain Renewal Promissory Note of even date herewith made by Borrower in favor of Bank, in the original principal amount of FIVE MILLION TWO HUNDRED FIFTY SEVEN THOUSAND ONE HUNDRED TWENTY NINE AND 16/100 DOLLARS ($5,257,129.16) (the "Note"), which Note is a renewal of that certain Promissory Note dated August 27, 2008 made by Borrower in favor of Bank, in the original principal amount of FIVE MILLION FOUR HUNDRED THOUSAND AND 00/100 DOLLARS ($5,400,000.00) (the "Prior Note"), and (ii) that certain Mortgage, Assignment of Leases and Rents and Security Agreement dated March 15, 2005 made by Borrower in favor of Bank, securing the Note (the "Mortgage"), which Mortgage secured certain real property more particularly described therein (the "Property") (the Note, the Mortgage and all other documents evidencing or securing the Indebtedness are hereinafter referred to collectively as the "Loan Documents"), whether recovery upon such Indebtedness may be or hereafter becomes barred by any statute of limitations or whether such Indebtedness may be now or hereafter becomes otherwise unenforceable. This Guaranty renews and replaces that certain Guaranty dated August 27, 2008 executed by Guarantor in favor of Bank (the "Prior Guaranty"), which Prior Guaranty operated to guaranty the obligations of Borrower under the Prior Note.

(2)     This is a continuing Guaranty relating to the Indebtedness, including Indebtedness arising under successive advances or transactions which shall either continue Indebtedness or, from time to time, renew Indebtedness. In the event any sums or other things of value that are paid or transferred to or otherwise received by the Bank are rescinded, recovered, required to be returned, set aside, rendered void or otherwise adversely affected in any legal proceeding or for any cause whatsoever, including under any law, rule or regulation relative to bankruptcy, insolvency, fraudulent transfers or other relief of debtors, then this Guaranty shall continue to be effective or shall be revived and reinstated, as necessary, in order to give full effect to the Guarantor's liability hereunder, to the same extent as if such payment, transfer and/or receipt had never occurred. This Guaranty shall not release, modify, revoke or terminate any other guaranty heretofore or hereafter executed by the Guarantor; nor shall any other guaranty heretofore or hereafter executed by Guarantor release, modify, revoke or terminate this Guaranty unless such other guaranty specifically refers to this Guaranty and the release, modification, revocation, or termination (as applicable) is accepted by Bank in writing.

(3)     The obligations of the Guarantor hereunder are independent of the obligations of Borrower, and a separate action or actions may be brought and prosecuted against the Guarantor whether action is brought against Borrower or any other guarantor of the Indebtedness or whether Borrower or other guarantor are joined in any such action or actions.

(4)     It is the intent hereof that this obligation of Guarantor shall be and remain unaffected, (a) by the existence or nonexistence, validity or invalidity, of any pledge, assignment, or conveyance given as security; or (b) by any understanding or agreement that any other person, firm, or corporation was or is to execute this or any other guaranty, any of the Loan Documents or other instruments evidencing the Indebtedness, or any part thereof, or any other document or instrument or was or is to provide collateral for any Indebtedness; or (c) by resort on the part of Bank, or failure of Bank to resort, to any other security or remedy for the collection of said Indebtedness; or (d) by the

1

death, bankruptcy, insolvency, dissolution, or incapacitation of the Guarantor, the Borrower, or any other person, and in case of any such death or bankruptcy, the failure of Bank to file a claim against the deceased Guarantor's estate or against such bankrupt's estate, or the failure of Bank to otherwise seek remedies as a consequence of such events.

(5)     The Guarantor authorizes Bank, without notice or demand and without affecting the Guarantor's liability hereunder, from time to time, to (a) renew, compromise, extend, accelerate, restate, consolidate, replace, refinance, or otherwise change the time for payment of, or otherwise change the terms of, the Indebtedness or any part thereof, including increasing or decreasing the rate of interest thereof; (b) take and hold security for the payment of this Guaranty or any of the Indebtedness and/or exchange, modify, enforce, waive, and release any such security; (c) apply such security and direct the order or manner of sale thereof as Bank, in its discretion, may determine; and/or (d) release or substitute the Borrower or other obligor, endorser, or other guarantors of all or any part of the Indebtedness (including, without limitation, the Guarantor.)

(6)     The Guarantor waives any right to require Bank (a) to proceed against the Borrower or any other guarantor of the Indebtedness; (b) to protect, preserve, proceed against, or exhaust any security held from Borrower; or (c) to pursue any other remedy in Bank's power whatsoever. The Guarantor waives any defense arising by reason of any disability or other defense of the Borrower or any other guarantor of the Indebtedness (including any defense based on or arising out of the unenforceability of any part of the Indebtedness for any cause whatsoever) or by reason of the cessation from any cause whatsoever of the liability of the Borrower or any other guarantor of the Indebtedness. Until all Indebtedness shall have been paid in full, even though such Indebtedness is in excess of Guarantor's liability hereunder, Guarantor shall not have any rights of subrogation, reimbursement, contribution, or indemnity or any right of recourse to any assets or properties of the Borrower or any other guarantor of the Indebtedness, and Guarantor waives (i) all such rights, if any, of subrogation, reimbursement, contribution, indemnity and recourse, (ii) any right to enforce any remedy which Bank now has or may hereafter have against the Borrower or any other guarantor of the Indebtedness, and (iii) any benefit of, and any right of recourse to or to participate in, any security now or hereafter held by Bank or otherwise constituting collateral for any Indebtedness. Guarantor waives all presentments, demands for performance, notices of nonperformance, notice of acceleration, notice of intent to accelerate, protests, notices of protest, notices of dishonor, and notices of acceptance of this Guaranty and of the existence, creation, or incurrence of new or additional Indebtedness, and waives any rights or defenses based, in whole or in part, upon an offset by the Borrower or any other guarantor of the Indebtedness against any obligation or indebtedness now or hereafter owed to the Borrower. Guarantor waives the benefit of any statute of limitations or other defenses affecting the Borrower's liability for the Indebtedness or the enforcement thereof or the Guarantor's liability hereunder or the enforcement thereof, and the Guarantor further agrees that any payment by the Borrower or other circumstances that operate to toll any statute of limitations as to the Borrower shall operate to toll the statute of limitations as to the Guarantor. Guarantor waives any rights to exemption under the Constitution of the State of Alabama or any other state as to any Indebtedness or obligation created hereunder.

(7)     In addition to all liens upon, and rights of setoff against, moneys, securities, or other property of the Guarantor given to Bank by law, Bank shall have and hereby is granted a lien upon, security interest in, and a right of setoff against, all moneys, securities, and other property of the Guarantor now or hereafter in the possession of or on deposit with Bank, whether held in a general or special account or deposit, or for safekeeping or otherwise; and every such lien, security interest and right of setoff may be exercised without demand upon or notice to the Guarantor. No lien, security interest, or right of setoff shall be deemed to have been waived by any act or conduct on the part of Bank, or by any failure to exercise such right of setoff, or to enforce such lien or security interest, or by any delay in so doing, and every right of setoff and lien shall continue in full force and effect until such right of setoff or lien specifically is waived or released in a written instrument executed by Bank.

2

(8)     Any indebtedness of Borrower to Guarantor, whether now existing, hereafter arising, secured or unsecured, and if secured, the security for same hereby is subordinated to the Indebtedness; and such subordinated Indebtedness, if Bank so requests, shall be collected, enforced, and received by Guarantor as trustee for Bank and be paid over to Bank on account of the Indebtedness, but without reducing or affecting in any manner the liability of Guarantor under this Guaranty.

(9)     If Borrower or Guarantor is a corporation, partnership, joint venture, trust, limited liability company, business organization, or enterprise, it shall not be necessary for Bank to inquire into the power or authority of Borrower or Guarantor or the officers, directors, partners, trustees, or agents acting or purporting to act on its behalf.

(10)     Guarantor shall pay attorney's fees and all other costs and expenses which are incurred by Bank in the enforcement of this Guaranty.

(11)     No right or power of Bank hereunder shall be deemed to have been waived by any act or conduct or failure or delay to act on the part of Bank or any of its agents, employees or representatives; and the terms and provisions hereof may not be waived, altered, modified, or amended except in writing duly signed by a duly authorized officer of the Bank. In the event that Bank shall waive in writing any provision or requirement hereunder, such waiver shall be effective only for the specific purposes, circumstances and duration stated in said waiver. Bank may, without notice, assign this Guaranty in whole or in part and each reference herein to Bank shall be deemed to include its successors and assigns. The provisions of this Guaranty are binding upon the Guarantor and the heirs, distributees, executors, administrators, legal representatives, personal representatives, successors and assigns thereof, and shall inure to the benefit of the Bank and each of its successors and assigns. THIS GUARANTY AND THE RIGHTS AND OBLIGATIONS OF THE GUARANTOR AND THE BANK HEREUNDER SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF ALABAMA. Guarantor acknowledges that any cause of action arising under this Guaranty will be a cause of action arising from an Alabama transaction, that it is foreseeable that this Guaranty and the performance hereof have and will have significant effects in the State of Alabama, and that Guarantor's execution of this Guaranty will subject Guarantor to judicial jurisdiction in the State of Alabama. If any of the provisions of this Guaranty or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of the provisions of this Guaranty, or the application of such provision or provisions to persons or circumstances other than those as to whom or which it is held invalid or unenforceable, shall not be affected thereby, and every provision of this Guaranty shall be valid and enforceable to the fullest extent permitted by law. Except as expressly set forth in this Guaranty, this Guaranty is the entire agreement of the Guarantor and the Bank with respect to the guarantee of the Indebtedness by the Guarantor, and no representation, understanding, promise or condition concerning the subject matter hereof shall be binding upon the Bank unless expressed herein. Any notice by Guarantor to the Bank shall be effective only upon the actual receipt thereof by an officer of Bank at the address specified below, and in the event no such address is specified, at Bank's principal corporate office in Pensacola, Florida, Attention: President.

(12)     This Guaranty is given under the seal of the Guarantor, and it is intended that this Guaranty is and shall constitute and have the effect of a sealed instrument according to law.

(13)     GUARANTOR HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES THE RIGHT IT MAY HAVE TO TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER, OR IN CONNECTION WITH THIS GUARANTY, THE INDEBTEDNESS, AND ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH OR THEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER WRITTEN OR ORAL) OR ACTIONS OF BANK, BORROWER OR GUARANTOR. THIS PROVISION IS A

3

MATERIAL INDUCEMENT FOR THE BANK ACCEPTING THIS GUARANTY AND MAKING THE CREDIT ACCOMMODATIONS TO THE BORROWER.

(14)   GUARANTOR ACKNOWLEDGES, COVENANTS, AGREES, REPRESENTS AND WARRANTS TO BANK THAT (I) ALL THE LOAN DOCUMENTS ARE IN FULL FORCE AND EFFECT, (II) THE LOAN DOCUMENTS CONSTITUTE THE LEGAL, VALID AND BINDING OBLIGATIONS OF THE BORROWER ENFORCEABLE AGAINST BORROWER IN ACCORDANCE WITH THEIR TERMS, (III) THIS GUARANTY CONSTITUTES THE LEGAL, VALID AND BINDING OBLIGATION OF GUARANTOR, AND IS ENFORCEABLE AGAINST GUARANTOR IN ACCORDANCE WITH ITS TERMS, (IV) GUARANTOR HAS NO DEFENSES, SETOFFS, RIGHTS OF RECOUPMENT, COUNTERCLAIMS, EQUITIES, ACTIONS OR CLAIMS OF ANY NATURE WHATSOEVER, IN FAVOR OF GUARANTOR TO OR AGAINST ENFORCEMENT OF THE PRIOR GUARANTY, THE PRIOR NOTE, THE NOTE OR ANY OTHER DOCUMENTS OR INSTRUMENTS EVIDENCING, SECURING OR OTHERWISE EXECUTED IN CONNECTION WITH ANY INDEBTEDNESS OF BORROWER TO BANK, AND/OR WITH RESPECT TO ANY ACTS OR OMISSIONS OF LENDER ON OR PRIOR TO THE DATE HEREOF, AND TO THE EXTENT ANY SUCH DEFENSES, SETOFFS, RIGHTS OF RECOUPMENT, COUNTERCLAIMS EQUITIES, ACTIONS OR CLAIMS OF ANY NATURE WHATSOEVER MAY EXIST, WHETHER KNOWN OR UNKNOWN, THE SAME ARE HEREBY EXPRESSLY WAIVED, RELEASED AND DISCHARGE, AND (V) GUARANTOR HAS REVIEWED AND APPROVED THE TERMS OF THE NOTE.

IN WITNESS WHEREOF, the undersigned Guarantor has executed this Guaranty effective as of September 28, 2009.

NIKOLAOS MANAKIDES

4

Case 2:10-md-02179-CJB-DPC   Document 1718-8   Filed 03/23/11   Page 11 of 82

# Exhibit H

# GUARANTY

(1)     FOR VALUABLE CONSIDERATION, the receipt and sufficiency of which are hereby acknowledged, the undersigned, jointly and severally (hereinafter collectively called "Guarantor") unconditionally guarantees and promises to pay to COASTAL BANK AND TRUST OF FLORIDA, formerly known as BANK OF PENSACOLA (hereinafter called "Bank") or order in lawful money of the United States, all Indebtedness of PLASH ISLAND RESORT, L.L.C., an Alabama limited liability company (hereinafter called "Borrower"), to Bank. The word "Indebtedness" as used herein shall mean all advances, debts, obligations, and liabilities of Borrower to Bank under and in accordance with (i) that certain Renewal Promissory Note of even date herewith made by Borrower in favor of Bank, in the original principal amount of FIVE MILLION TWO HUNDRED FIFTY SEVEN THOUSAND ONE HUNDRED TWENTY NINE AND 16/100 DOLLARS ($5,257,129.16) (the "Note"), which Note is a renewal of that certain Promissory Note dated August 27, 2008 made by Borrower in favor of Bank, in the original principal amount of FIVE MILLION FOUR HUNDRED THOUSAND AND 00/100 DOLLARS ($5,400,000.00) (the "Prior Note"), and (ii) that certain Mortgage, Assignment of Leases and Rents and Security Agreement dated March 15, 2005 made by Borrower in favor of Bank, securing the Note (the "Mortgage"), which Mortgage secured certain real property more particularly described therein (the "Property") (the Note, the Mortgage and all other documents evidencing or securing the Indebtedness are hereinafter referred to collectively as the "Loan Documents"), whether recovery upon such Indebtedness may be or hereafter becomes barred by any statute of limitations or whether such Indebtedness may be now or hereafter becomes otherwise unenforceable.   This Guaranty renews and replaces that certain Guaranty dated August 27, 2008 executed by Guarantor in favor of Bank (the "Prior Guaranty"), which Prior Guaranty operated to guaranty the obligations of Borrower under the Prior Note.

(2)     This is a continuing Guaranty relating to the Indebtedness, including Indebtedness arising under successive advances or transactions which shall either continue Indebtedness or, from time to time, renew Indebtedness. In the event any sums or other things of value that are paid or transferred to or otherwise received by the Bank are rescinded, recovered, required to be returned, set aside, rendered void or otherwise adversely affected in any legal proceeding or for any cause whatsoever, including under any law, rule or regulation relative to bankruptcy, insolvency, fraudulent transfers or other relief of debtors, then this Guaranty shall continue to be effective or shall be revived and reinstated, as necessary, in order to give full effect to the Guarantor's liability hereunder, to the same extent as if such payment, transfer and/or receipt had never occurred.  This Guaranty shall not release, modify, revoke or terminate any other guaranty heretofore or hereafter executed by the Guarantor; nor shall any other guaranty heretofore or hereafter executed by Guarantor release, modify, revoke or terminate this Guaranty unless such other guaranty specifically refers to this Guaranty and the release, modification, revocation, or termination (as applicable) is accepted by Bank in writing.

(3)     The obligations of the Guarantor hereunder are independent of the obligations of Borrower, and a separate action or actions may be brought and prosecuted against the Guarantor whether action is brought against Borrower or any other guarantor of the Indebtedness or whether Borrower or other guarantor are joined in any such action or actions.

(4)     It is the intent hereof that this obligation of Guarantor shall be and remain unaffected, (a) by the existence or nonexistence, validity or invalidity, of any pledge, assignment, or conveyance given as security; or (b) by any understanding or agreement that any other person, firm, or corporation was or is to execute this or any other guaranty, any of the Loan Documents or other instruments evidencing the Indebtedness, or any part thereof, or any other document or instrument or was or is to provide collateral for any Indebtedness; or (c) by resort on the part of Bank, or failure of Bank to resort, to any other security or remedy for the collection of said Indebtedness; or (d) by the

1

death, bankruptcy, insolvency, dissolution, or incapacitation of the Guarantor, the Borrower, or any other person, and in case of any such death or bankruptcy, the failure of Bank to file a claim against the deceased Guarantor's estate or against such bankrupt's estate, or the failure of Bank to otherwise seek remedies as a consequence of such events.

(5)      The Guarantor authorizes Bank, without notice or demand and without affecting the Guarantor's liability hereunder, from time to time, to (a) renew, compromise, extend, accelerate, restate, consolidate, replace, refinance, or otherwise change the time for payment of, or otherwise change the terms of, the Indebtedness or any part thereof, including increasing or decreasing the rate of interest thereof; (b) take and hold security for the payment of this Guaranty or any of the Indebtedness and/or exchange, modify, enforce, waive, and release any such security; (c) apply such security and direct the order or manner of sale thereof as Bank, *in its discretion, may determine; and/or (d)* release or substitute the Borrower or other obligor, endorser, or other guarantors of all or any part of the Indebtedness (including, without limitation, the Guarantor.)

(6)      The Guarantor waives any right to require Bank (a) to proceed against the Borrower or any other guarantor of the Indebtedness; *(b) to protect, preserve, proceed against, or exhaust any security held from Borrower;* or (c) to pursue any other remedy in Bank's power whatsoever. The Guarantor waives any defense arising by reason of any disability or other defense of the Borrower or any other guarantor of the Indebtedness (including any defense based on or arising out of the unenforceability of any part of the Indebtedness for any cause whatsoever) or by reason of the cessation from any cause whatsoever of the liability of the Borrower or any other guarantor of the Indebtedness. *Until all Indebtedness shall have been paid in full, even though such Indebtedness is in excess of Guarantor's liability hereunder,* Guarantor shall not have any rights of subrogation, reimbursement, contribution, or indemnity or any right of recourse to any assets or properties of the Borrower or any other guarantor of the Indebtedness, and Guarantor waives (i) all such rights, if any, of subrogation, reimbursement, *contribution, indemnity and recourse,* (ii) any right to enforce any remedy which Bank now has or may hereafter have against the Borrower or any other guarantor of the Indebtedness, and (iii) any benefit of, and any right of recourse to or to participate in, any security now or hereafter held by Bank or otherwise constituting collateral for any Indebtedness. Guarantor waives all presentments, demands for performance, notices of nonperformance, notice of acceleration, notice of intent to accelerate, protests, notices of protest, notices of dishonor, and notices of acceptance of this Guaranty and of the existence, creation, or incurrence of new or additional Indebtedness, and waives any rights or defenses based, in whole or in part, upon an offset by the Borrower or any other guarantor of the Indebtedness against any obligation or indebtedness now or hereafter owed to the Borrower. Guarantor waives the benefit of any statute of limitations or other defenses affecting the Borrower's liability for the Indebtedness or the enforcement thereof or the Guarantor's liability hereunder or the enforcement thereof, and the Guarantor further agrees that any payment by the Borrower or other circumstances that operate to toll any statute of limitations as to the Borrower shall operate to toll the statute of limitations as to the Guarantor. Guarantor waives any rights to exemption under the Constitution of the State of Alabama or any other state as to any Indebtedness or obligation created hereunder.

(7)      In addition to all liens upon, and rights of setoff against, moneys, securities, or other property of the Guarantor given to Bank by law, Bank shall have and hereby is granted a lien upon, security interest in, and a right of setoff against, all moneys, securities, and other property of the Guarantor now or hereafter in the possession of or on deposit with Bank, whether held in a general or special account or deposit, or for safekeeping or otherwise; and every such lien, security interest and right of setoff may be exercised without demand upon or notice to the Guarantor. No lien, security interest, or right of setoff shall be deemed to have been waived by any act or conduct on the part of Bank, or by any failure to exercise such right of setoff, or to enforce such lien or security interest, or by any delay in so doing, and every right of setoff and lien shall continue in full force and effect until such right of setoff or lien specifically is waived or released in a written instrument executed by Bank.

2

(8)    Any indebtedness of Borrower to Guarantor, whether now existing, hereafter arising, secured or unsecured, and if secured, the security for same hereby is subordinated to the Indebtedness; and such subordinated Indebtedness, if Bank so requests, shall be collected, enforced, and received by Guarantor as trustee for Bank and be paid over to Bank on account of the Indebtedness, but without reducing or affecting in any manner the liability of Guarantor under this Guaranty.

(9)    If Borrower or Guarantor is a corporation, partnership, joint venture, trust, limited liability company, business organization, or enterprise, it shall not be necessary for Bank to inquire into the power or authority of Borrower or Guarantor or the officers, directors, partners, trustees, or agents acting or purporting to act on its behalf.

(10)    Guarantor shall pay attorney's fees and all other costs and expenses which are incurred by Bank in the enforcement of this Guaranty.

(11)    No right or power of Bank hereunder shall be deemed to have been waived by any act or conduct or failure or delay to act on the part of Bank or any of its agents, employees or representatives; and the terms and provisions hereof may not be waived, altered, modified, or amended except in writing duly signed by a duly authorized officer of the Bank. In the event that Bank shall waive in writing any provision or requirement hereunder, such waiver shall be effective only for the specific purposes, circumstances and duration stated in said waiver. Bank may, without notice, assign this Guaranty in whole or in part and each reference herein to Bank shall be deemed to include its successors and assigns. The provisions of this Guaranty are binding upon the Guarantor and the heirs, distributees, executors, administrators, legal representatives, personal representatives, successors and assigns thereof, and shall inure to the benefit of the Bank and each of its successors and assigns. THIS GUARANTY AND THE RIGHTS AND OBLIGATIONS OF THE GUARANTOR AND THE BANK HEREUNDER SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF ALABAMA. Guarantor acknowledges that any cause of action arising under this Guaranty will be a cause of action arising from an Alabama transaction, that it is foreseeable that this Guaranty and the performance hereof have and will have significant effects in the State of Alabama, and that Guarantor's execution of this Guaranty will subject Guarantor to judicial jurisdiction in the State of Alabama. If any of the provisions of this Guaranty or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of the provisions of this Guaranty, or the application of such provision or provisions to persons or circumstances other than those as to whom or which it is held invalid or unenforceable, shall not be affected thereby, and every provision of this Guaranty shall be valid and enforceable to the fullest extent permitted by law. Except as expressly set forth in this Guaranty, this Guaranty is the entire agreement of the Guarantor and the Bank with respect to the guarantee of the Indebtedness by the Guarantor, and no representation, understanding, promise or condition concerning the subject matter hereof shall be binding upon the Bank unless expressed herein. Any notice by Guarantor to the Bank shall be effective only upon the actual receipt thereof by an officer of Bank at the address specified below, and in the event no such address is specified, at Bank's principal corporate office in Pensacola, Florida, Attention: President.

(12)    This Guaranty is given under the seal of the Guarantor, and it is intended that this Guaranty is and shall constitute and have the effect of a sealed instrument according to law.

(13)    GUARANTOR HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES THE RIGHT IT MAY HAVE TO TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER, OR IN CONNECTION WITH THIS GUARANTY, THE INDEBTEDNESS, AND ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH OR THEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER WRITTEN OR ORAL) OR ACTIONS OF BANK, BORROWER OR GUARANTOR. THIS PROVISION IS A

3

MATERIAL INDUCEMENT FOR THE BANK ACCEPTING THIS GUARANTY AND MAKING THE CREDIT ACCOMMODATIONS TO THE BORROWER.

(14) GUARANTOR ACKNOWLEDGES, COVENANTS, AGREES, REPRESENTS AND WARRANTS TO BANK THAT (I) ALL THE LOAN DOCUMENTS ARE IN FULL FORCE AND EFFECT, (II) THE LOAN DOCUMENTS CONSTITUTE THE LEGAL, VALID AND BINDING OBLIGATIONS OF THE BORROWER ENFORCEABLE AGAINST BORROWER IN ACCORDANCE WITH THEIR TERMS, (III) THIS GUARANTY CONSTITUTES THE LEGAL, VALID AND BINDING OBLIGATION OF GUARANTOR, AND IS ENFORCEABLE AGAINST GUARANTOR IN ACCORDANCE WITH ITS TERMS, (IV) GUARANTOR HAS NO DEFENSES, SETOFFS, RIGHTS OF RECOUPMENT, COUNTERCLAIMS, EQUITIES, ACTIONS OR CLAIMS OF ANY NATURE WHATSOEVER, IN FAVOR OF GUARANTOR TO OR AGAINST ENFORCEMENT OF THE PRIOR GUARANTY, THE PRIOR NOTE, THE NOTE OR ANY OTHER DOCUMENTS OR INSTRUMENTS EVIDENCING, SECURING OR OTHERWISE EXECUTED IN CONNECTION WITH ANY INDEBTEDNESS OF BORROWER TO BANK, AND/OR WITH RESPECT TO ANY ACTS OR OMISSIONS OF LENDER ON OR PRIOR TO THE DATE HEREOF, AND TO THE EXTENT ANY SUCH DEFENSES, SETOFFS, RIGHTS OF RECOUPMENT, COUNTERCLAIMS EQUITIES, ACTIONS OR CLAIMS OF ANY NATURE WHATSOEVER MAY EXIST, WHETHER KNOWN OR UNKNOWN, THE SAME ARE HEREBY EXPRESSLY WAIVED, RELEASED AND DISCHARGE, AND (V) GUARANTOR HAS *REVIEWED AND APPROVED THE TERMS OF THE NOTE.*

IN WITNESS WHEREOF, the undersigned Guarantor has executed this Guaranty effective as of September 28, 2009.

BELVIN C. HARPER, JR.

4

# Exhibit I

# GUARANTY

(1)    FOR VALUABLE CONSIDERATION, the receipt and sufficiency of which are hereby acknowledged, the undersigned, jointly and severally (hereinafter *collectively called "Guarantor"*) unconditionally guarantees and promises to pay to COASTAL BANK AND TRUST OF FLORIDA, formerly known as BANK OF PENSACOLA (hereinafter called "Bank") or order in lawful money of the United States, all Indebtedness of PLASH ISLAND RESORT, L.L.C., an Alabama limited liability company (hereinafter called "Borrower"), to Bank.  The word "Indebtedness" as used herein shall mean all advances, debts, obligations, and liabilities of Borrower to Bank under and in accordance with (i) that certain Renewal Promissory Note of even date herewith made by Borrower in favor of Bank, in the original principal amount of FIVE MILLION TWO HUNDRED FIFTY SEVEN THOUSAND ONE HUNDRED TWENTY NINE AND 16/100 DOLLARS ($5,257,129.16) (the "Note"), which Note is a renewal of that certain Promissory Note dated August 27, 2008 made by Borrower in favor of Bank, in the original principal amount of FIVE MILLION FOUR HUNDRED THOUSAND AND 00/100 DOLLARS ($5,400,000.00) (the "Prior Note"), and (ii) that certain Mortgage, Assignment of Leases and Rents and Security Agreement dated March 15, 2005 made by Borrower in favor of Bank, securing the Note (the "Mortgage"), which Mortgage secured certain real property more particularly described therein (the "Property") (the Note, the Mortgage and all other documents evidencing or securing the Indebtedness are hereinafter referred to collectively as the "Loan Documents"), whether recovery upon such Indebtedness may be or hereafter becomes barred by any statute of limitations or whether such Indebtedness may be now or hereafter becomes otherwise unenforceable.  This Guaranty renews and *replaces that certain Guaranty dated August 27, 2008 executed by Guarantor in favor of Bank (the "Prior Guaranty"), which Prior Guaranty operated to guaranty the obligations of Borrower under the Prior Note.*

(2)    This is a continuing Guaranty relating to the Indebtedness, including Indebtedness arising under successive advances or transactions which shall either continue Indebtedness or, from time to time, renew Indebtedness. In the event any sums or other things of value that are paid or transferred to or otherwise received by the Bank are rescinded, recovered, required to be returned, set aside, rendered void or otherwise adversely affected in any legal proceeding or for any cause whatsoever, including under any law, rule or regulation relative to bankruptcy, insolvency, fraudulent transfers or other relief of debtors, then this Guaranty shall continue to be effective or shall be revived and reinstated, as necessary, in order to give full effect to the Guarantor's liability hereunder, to the same extent as if such payment, transfer and/or receipt had never occurred. This Guaranty shall not release, modify, revoke or terminate any other guaranty heretofore or hereafter executed by the Guarantor; nor shall any other guaranty heretofore or hereafter executed by Guarantor release, modify, revoke or terminate this Guaranty unless such other *guaranty specifically refers to this Guaranty and the release, modification, revocation, or termination (as applicable) is accepted by Bank in writing.*

(3)    The obligations of the Guarantor hereunder are independent of the obligations of Borrower, and a separate action or actions may be brought and prosecuted against the Guarantor whether action is brought against Borrower or any other guarantor of the Indebtedness or whether Borrower or any other guarantor are joined in any such action or actions.

(4)    It is the intent hereof that this obligation of Guarantor shall be and remain unaffected, (a) by the existence or nonexistence, validity or invalidity, *of any pledge, assignment, or conveyance given as security;* or (b) by any understanding or agreement that any other person, firm, or corporation was or is to execute this or any other guaranty, any of the Loan Documents or other instruments evidencing the Indebtedness, or any part thereof, or any other document or instrument or was or is to provide collateral for any Indebtedness; *or (c) by resort on the part of* Bank, or failure of Bank to resort, to any other security or remedy for the collection of said Indebtedness; or (d) by the

1

death, bankruptcy, insolvency, dissolution, or incapacitation of the Guarantor, the Borrower, or any other person, and in case of any such death or bankruptcy, the failure of Bank to file a claim against the deceased Guarantor's estate or against such bankrupt's estate, or the failure of Bank to otherwise seek remedies as a consequence of such events.

(5)     The Guarantor authorizes Bank, without notice or demand and without affecting the Guarantor's liability hereunder, from time to time, to (a) renew, compromise, extend, accelerate, restate, consolidate, replace, refinance, or otherwise change the time for payment of, or otherwise change the terms of, the Indebtedness or any part thereof, including increasing or decreasing the rate of interest thereof; (b) take and hold security for the payment of this Guaranty or any of the Indebtedness and/or exchange, modify, enforce, waive, and release any such security; (c) apply such security and direct the order or manner of sale thereof as Bank, in its discretion, may determine; and/or (d) release or substitute the Borrower or other obligor, endorser, or other guarantors of all or any part of the Indebtedness (including, without limitation, the Guarantor.)

(6)     The Guarantor waives any right to require Bank (a) to proceed against the Borrower or any other guarantor of the Indebtedness; (b) to protect, preserve, proceed against, or exhaust any security held from Borrower; or (c) to pursue any other remedy in Bank's power whatsoever. The Guarantor waives any defense arising by reason of any disability or other defense of the Borrower or any other guarantor of the Indebtedness (including any defense based on or arising out of the unenforceability of any part of the Indebtedness for any cause whatsoever) or by reason of the cessation from any cause whatsoever of the liability of the Borrower or any other guarantor of the Indebtedness. Until all Indebtedness shall have been paid in full, even though such Indebtedness is in excess of Guarantor's liability hereunder, Guarantor shall not have any rights of subrogation, reimbursement, contribution, or indemnity or any right of recourse to any assets or properties of the Borrower or any other guarantor of the Indebtedness, and Guarantor waives (i) all such rights, if any, of subrogation, reimbursement, contribution, indemnity and recourse, (ii) any right to enforce any remedy which Bank now has or may hereafter have against the Borrower or any other guarantor of the Indebtedness, and (iii) any benefit of, and any right of recourse to or to participate in, any security now or hereafter held by Bank or otherwise constituting collateral for any Indebtedness. Guarantor waives all presentments, demands for performance, notices of nonperformance, notice of acceleration, notice of intent to accelerate, protests, notices of protest, notices of dishonor, and notices of acceptance of this Guaranty and of the existence, creation, or incurrence of new or additional Indebtedness, and waives any rights or defenses based, in whole or in part, upon an offset by the Borrower or any other guarantor of the Indebtedness against any obligation or indebtedness now or hereafter owed to the Borrower. Guarantor waives the benefit of any statute of limitations or other defenses affecting the Borrower's liability for the Indebtedness or the enforcement thereof or the Guarantor's liability hereunder or the enforcement thereof, and the Guarantor further agrees that any payment by the Borrower or other circumstances that operate to toll any statute of limitations as to the Borrower shall operate to toll the statute of limitations as to the Guarantor. Guarantor waives any rights to exemption under the Constitution of the State of Alabama or any other state as to any Indebtedness or obligation created hereunder.

(7)     In addition to all liens upon, and rights of setoff against, moneys, securities, or other property of the Guarantor given to Bank by law, Bank shall have and hereby is granted a lien upon, security interest in, and a right of setoff against, all moneys, securities, and other property of the Guarantor now or hereafter in the possession of or on deposit with Bank, whether held in a general or special account or deposit, or for safekeeping or otherwise; and every such lien, security interest and right of setoff may be exercised without demand upon or notice to the Guarantor. No lien, security interest, or right of setoff shall be deemed to have been waived by any act or conduct on the part of Bank, or by any failure to exercise such right of setoff, or to enforce such lien or security interest, or by any delay in so doing, and every right of setoff and lien shall continue in full force and effect until such right of setoff or lien specifically is waived or released in a written instrument executed by Bank.

2

Case 2:11-cv-02170-CJB-SDP Document 1718-6 Filed 03/23/11 Page 19 of 82

(8)     Any indebtedness of Borrower to Guarantor, whether now existing, hereafter arising, secured or unsecured, and if secured, the security for same hereby is subordinated to the Indebtedness; and such subordinated Indebtedness, if Bank so requests, shall be collected, enforced, and received by Guarantor as trustee for Bank and be paid over to Bank on account of the Indebtedness, but without reducing or affecting in any manner the liability of Guarantor under this Guaranty.

(9)     If Borrower or Guarantor is a corporation, partnership, joint venture, trust, limited liability company, business organization, or enterprise, it shall not be necessary for Bank to inquire into the power or authority of Borrower or Guarantor or the officers, directors, partners, trustees, or agents acting or purporting to act on its behalf.

(10)    Guarantor shall pay attorney's fees and all other costs and expenses which are incurred by Bank in the enforcement of this Guaranty.

(11)    No right or power of Bank hereunder shall be deemed to have been waived by any act or conduct or failure or delay to act on the part of Bank or any of its agents, employees or representatives; *and the terms and provisions hereof may not be waived, altered, modified, or amended except in writing duly signed by a duly authorized officer of the Bank. In the event that Bank shall waive in writing any provision or requirement hereunder, such waiver shall be effective only for the specific purposes, circumstances and duration stated in said waiver.* Bank may, without notice, assign this Guaranty in whole or in part and each reference herein to Bank shall be deemed to include its successors and assigns. The provisions of this Guaranty are binding upon the Guarantor and the heirs, distributees, executors, administrators, legal representatives, personal representatives, successors and assigns thereof, and shall inure to the benefit of the Bank and each of its successors and assigns. THIS GUARANTY AND THE RIGHTS AND OBLIGATIONS OF THE GUARANTOR AND THE BANK HEREUNDER SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF ALABAMA. Guarantor acknowledges that any cause of action arising under this Guaranty will be a cause of action arising from an Alabama transaction, that it is foreseeable that this Guaranty and the performance hereof have and will have significant effects in the State of Alabama, and that Guarantor's execution of this Guaranty will subject Guarantor to judicial jurisdiction in the State of Alabama. If any of the provisions of this Guaranty or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of the provisions of this Guaranty, or the application of such provision or provisions to persons or circumstances other than those as to whom or which it is held invalid or unenforceable, shall not be affected thereby, and every provision of this Guaranty shall be valid and enforceable to the fullest extent permitted by law. Except as expressly set forth in this Guaranty, this Guaranty is the entire agreement of the Guarantor and the Bank with respect to the guarantee of the Indebtedness by the Guarantor, and no representation, understanding, promise or condition concerning the subject matter hereof shall be binding upon the Bank unless expressed herein. Any notice by Guarantor to the Bank shall be effective only upon the actual receipt thereof by an officer of Bank at the address specified below, and in the event no such address is specified, at Bank's principal corporate office in Pensacola, Florida, Attention: President.

(12)    This Guaranty is given under the seal of the Guarantor, and it is intended that this Guaranty is and shall constitute and have the effect of a sealed instrument according to law.

(13)    GUARANTOR HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES THE RIGHT IT MAY HAVE TO TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER, OR IN CONNECTION WITH THIS GUARANTY, THE INDEBTEDNESS, AND ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH OR THEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER WRITTEN OR ORAL) OR ACTIONS OF BANK, BORROWER OR GUARANTOR. THIS PROVISION IS A

MATERIAL INDUCEMENT FOR THE BANK ACCEPTING THIS GUARANTY AND MAKING THE CREDIT ACCOMMODATIONS TO THE BORROWER.

(14) GUARANTOR ACKNOWLEDGES, COVENANTS, AGREES, REPRESENTS AND WARRANTS TO BANK THAT (I) ALL THE LOAN DOCUMENTS ARE IN FULL FORCE AND EFFECT, (II) THE LOAN DOCUMENTS CONSTITUTE THE LEGAL, VALID AND BINDING OBLIGATIONS OF THE BORROWER ENFORCEABLE AGAINST BORROWER IN ACCORDANCE WITH THEIR TERMS, (III) THIS GUARANTY CONSTITUTES THE LEGAL, VALID AND BINDING OBLIGATION OF GUARANTOR, AND IS ENFORCEABLE AGAINST GUARANTOR IN ACCORDANCE WITH ITS TERMS, (IV) GUARANTOR HAS NO DEFENSES, SETOFFS, RIGHTS OF RECOUPMENT, COUNTERCLAIMS, EQUITIES, ACTIONS OR CLAIMS OF ANY NATURE WHATSOEVER, IN FAVOR OF GUARANTOR TO OR AGAINST ENFORCEMENT OF THE PRIOR GUARANTY, THE PRIOR NOTE, THE NOTE OR ANY OTHER DOCUMENTS OR INSTRUMENTS EVIDENCING, SECURING OR OTHERWISE EXECUTED IN CONNECTION WITH ANY INDEBTEDNESS OF BORROWER TO BANK, AND/OR WITH RESPECT TO ANY ACTS OR OMISSIONS OF LENDER ON OR PRIOR TO THE DATE HEREOF, AND TO THE EXTENT ANY SUCH DEFENSES, SETOFFS, RIGHTS OF RECOUPMENT, COUNTERCLAIMS, EQUITIES, ACTIONS OR CLAIMS OF ANY NATURE WHATSOEVER MAY EXIST, WHETHER KNOWN OR UNKNOWN, THE SAME ARE HEREBY EXPRESSLY WAIVED, RELEASED AND DISCHARGE, AND (V) GUARANTOR HAS REVIEWED AND APPROVED THE TERMS OF THE NOTE.

IN WITNESS WHEREOF, the undersigned Guarantor has executed this Guaranty effective as of September 28, 2009.

RICKEY L. LOCKHART

4

# Exhibit J

# GUARANTY

(1)     FOR VALUABLE CONSIDERATION, the receipt and sufficiency of which are hereby acknowledged, the undersigned, jointly and severally (hereinafter collectively called "Guarantor") unconditionally guarantees and promises to pay to COASTAL BANK AND TRUST OF FLORIDA, formerly known as BANK OF PENSACOLA (hereinafter called "Bank") or order in lawful money of the United States, all Indebtedness of PLASH ISLAND RESORT, L.L.C., an Alabama limited liability company (hereinafter called "Borrower"), to Bank. The word "Indebtedness" as used herein shall mean all advances, debts, obligations, and liabilities of Borrower to Bank under and in accordance with (i) that certain Renewal Promissory Note of even date herewith made by Borrower in favor of Bank, in the original principal amount of FIVE MILLION TWO HUNDRED FIFTY SEVEN THOUSAND ONE HUNDRED TWENTY NINE AND 16/100 DOLLARS ($5,257,129.16) (the "Note"), which Note is a renewal of that certain Promissory Note dated August 27, 2008 made by Borrower in favor of Bank, in the original principal amount of FIVE MILLION FOUR HUNDRED THOUSAND AND 00/100 DOLLARS ($5,400,000.00) (the "Prior Note"), and (ii) that certain Mortgage, Assignment of Leases and Rents and Security Agreement dated March 15, 2005 made by Borrower in favor of Bank, securing the Note (the "Mortgage"), which Mortgage secured certain real property more particularly described therein (the "Property") (the Note, the Mortgage and all other documents evidencing or securing the Indebtedness are hereinafter referred to collectively as the "Loan Documents"), whether recovery upon such Indebtedness may be or hereafter becomes barred by any statute of limitations or whether such Indebtedness may be now or hereafter becomes otherwise unenforceable.  This Guaranty renews and replaces that certain Guaranty dated August 27, 2008 executed by Guarantor in favor of Bank (the "Prior Guaranty"), which Prior Guaranty operated to guaranty the obligations of Borrower under the Prior Note.

(2)     This is a continuing Guaranty relating to the Indebtedness, including Indebtedness arising under successive advances or transactions which shall either continue Indebtedness or, from time to time, renew Indebtedness. In the event any sums or other things of value that are paid or transferred to or otherwise received by the Bank are rescinded, recovered, required to be returned, set aside, rendered void or otherwise adversely affected in any legal proceeding or for any cause whatsoever, including under any law, rule or regulation relative to bankruptcy, insolvency, fraudulent transfers or other relief of debtors, then this Guaranty shall continue to be effective or shall be revived and reinstated, as necessary, in order to give full effect to the Guarantor's liability hereunder, to the same extent as if such payment, transfer and/or receipt had never occurred. This Guaranty shall not release, modify, revoke or terminate any other guaranty heretofore or hereafter executed by the Guarantor; nor shall any other guaranty heretofore or hereafter executed by Guarantor release, modify, revoke or terminate this Guaranty unless such other guaranty specifically refers to this Guaranty and the release, modification, revocation, or termination (as applicable) is accepted by Bank in writing.

(3)     The obligations of the Guarantor hereunder are independent of the obligations of Borrower, and a separate action or actions may be brought and prosecuted against the Guarantor whether action is brought against Borrower or any other guarantor of the Indebtedness or whether Borrower or other guarantor are joined in any such action or actions.

(4)     It is the intent hereof that this obligation of Guarantor shall be and remain unaffected, (a) by the existence or nonexistence, validity or invalidity, of any pledge, assignment, or conveyance given as security; or (b) by any understanding or agreement that any other person, firm, or corporation was or is to execute this or any other guaranty, any of the Loan Documents or other instruments evidencing the Indebtedness, or any part thereof, or any other document or instrument or was or is to provide collateral for any Indebtedness; or (c) by resort on the part of Bank, or failure of Bank to resort, to any other security or remedy for the collection of said Indebtedness; or (d) by the

1

death, bankruptcy, insolvency, dissolution, or incapacitation of the Guarantor, the Borrower, or any other person, and in case of any such death or bankruptcy, the failure of Bank to file a claim against the deceased Guarantor's estate or against such bankrupt's estate, or the failure of Bank to otherwise seek remedies as a consequence of such events.

(5)     The Guarantor authorizes Bank, without notice or demand and without affecting the Guarantor's liability hereunder, from time to time, to (a) renew, compromise, extend, accelerate, restate, consolidate, replace, refinance, or otherwise change the time for payment of, or otherwise change the terms of, the Indebtedness or any part thereof, including increasing or decreasing the rate of interest thereof; (b) take and hold security for the payment of this Guaranty or any of the Indebtedness and/or exchange, modify, enforce, waive, and release any such security; (c) apply such security and direct the order or manner of sale thereof as Bank, in its discretion, may determine; and/or (d) release or substitute the Borrower or other obligor, endorser, or other guarantors of all or any part of the Indebtedness (including, without limitation, the Guarantor.)

(6)     The Guarantor waives any right to require Bank (a) to proceed against the Borrower or any other guarantor of the Indebtedness; (b) to protect, preserve, proceed against, or exhaust any security held from Borrower; or (c) to pursue any other remedy in Bank's power whatsoever. The Guarantor waives any defense arising by reason of any disability or other defense of the Borrower or any other guarantor of the Indebtedness (including any defense based on or arising out of the unenforceability of any part of the Indebtedness for any cause whatsoever) or by reason of the cessation from any cause whatsoever of the liability of the Borrower or any other guarantor of the Indebtedness. Until all Indebtedness shall have been paid in full, even though such Indebtedness is in excess of Guarantor's liability hereunder, Guarantor shall not have any rights of subrogation, reimbursement, contribution, or indemnity or any right of recourse to any assets or properties of the Borrower or any other guarantor of the Indebtedness, and Guarantor waives (i) all such rights, if any, of subrogation, reimbursement, contribution, indemnity and recourse, (ii) any right to enforce any remedy which Bank now has or may hereafter have against the Borrower or any other guarantor of the Indebtedness, and (iii) any benefit of, and any right of recourse to or to participate in, any security now or hereafter held by Bank or otherwise constituting collateral for any Indebtedness. Guarantor waives all presentments, demands for performance, notices of nonperformance, notice of acceleration, notice of intent to accelerate, protests, notices of protest, notices of dishonor, and notices of acceptance of this Guaranty and of the existence, creation, or incurrence of new or additional Indebtedness, and waives any rights or defenses based, in whole or in part, upon an offset by the Borrower or any other guarantor of the Indebtedness against any obligation or indebtedness now or hereafter owed to the Borrower. Guarantor waives the benefit of any statute of limitations or other defenses affecting the Borrower's liability for the Indebtedness or the enforcement thereof or the Guarantor's liability hereunder or the enforcement thereof, and the Guarantor further agrees that any payment by the Borrower or other circumstances that operate to toll any statute of limitations as to the Borrower shall operate to toll the statute of limitations as to the Guarantor. Guarantor waives any rights to exemption under the Constitution of the State of Alabama or any other state as to any Indebtedness or obligation created hereunder.

(7)     In addition to all liens upon, and rights of setoff against, moneys, securities, or other property of the Guarantor given to Bank by law, Bank shall have and hereby is granted a lien upon, security interest in, and a right of setoff against, all moneys, securities, and other property of the Guarantor now or hereafter in the possession of or on deposit with Bank, whether held in a general or special account or deposit, or for safekeeping or otherwise; and every such lien, security interest and right of setoff may be exercised without demand upon or notice to the Guarantor. No lien, security interest, or right of setoff shall be deemed to have been waived by any act or conduct on the part of Bank, or by any failure to exercise such right of setoff, or to enforce such lien or security interest, or by any delay in so doing, and every right of setoff and lien shall continue in full force and effect until such right of setoff or lien specifically is waived or released in a written instrument executed by Bank.

2

(8)     Any indebtedness of Borrower to Guarantor, whether now existing, hereafter arising, secured or unsecured, and if secured, the security for same hereby is subordinated to the Indebtedness; and such subordinated Indebtedness, if Bank so requests, shall be collected, enforced, and received by Guarantor as trustee for Bank and be paid over to Bank on account of the Indebtedness, but without reducing or affecting in any manner the liability of Guarantor under this Guaranty.

(9)     If Borrower or Guarantor is a corporation, partnership, joint venture, trust, limited liability company, business organization, or enterprise, it shall not be necessary for Bank to inquire into the power or authority of Borrower or Guarantor or the officers, directors, partners, trustees, or agents acting or purporting to act on its behalf.

(10)     Guarantor shall pay attorney's fees and all other costs and expenses which are incurred by Bank in the enforcement of this Guaranty.

(11)     No right or power of Bank hereunder shall be deemed to have been waived by any act or conduct or failure or delay to act on the part of Bank or any of its agents, employees or representatives; and the terms and provisions hereof may not be waived, altered, modified, or amended except in writing duly signed by a duly authorized officer of the Bank. In the event that Bank shall waive in writing any provision or requirement hereunder, such waiver shall be effective only for the specific purposes, circumstances and duration stated in said waiver. Bank may, without notice, assign this Guaranty in whole or in part and each reference herein to Bank shall be deemed to include its successors and assigns. The provisions of this Guaranty are binding upon the Guarantor and the heirs, distributees, executors, administrators, legal representatives, personal representatives, successors and assigns thereof, and shall inure to the benefit of the Bank and each of its successors and assigns. THIS GUARANTY AND THE RIGHTS AND OBLIGATIONS OF THE GUARANTOR AND THE BANK HEREUNDER SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF ALABAMA. Guarantor acknowledges that any cause of action arising under this Guaranty will be a cause of action arising from an Alabama transaction, that it is foreseeable that this Guaranty and the performance hereof have and will have significant effects in the State of Alabama, and that Guarantor's execution of this Guaranty will subject Guarantor to judicial jurisdiction in the State of Alabama. If any of the provisions of this Guaranty or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of the provisions of this Guaranty, or the application of such provision or provisions to persons or circumstances other than those as to whom or which it is held invalid or unenforceable, shall not be affected thereby, and every provision of this Guaranty shall be valid and enforceable to the fullest extent permitted by law. Except as expressly set forth in this Guaranty, this Guaranty is the entire agreement of the Guarantor and the Bank with respect to the guarantee of the Indebtedness by the Guarantor, and no representation, understanding, promise or condition concerning the subject matter hereof shall be binding upon the Bank unless expressed herein. Any notice by Guarantor to the Bank shall be effective only upon the actual receipt thereof by an officer of Bank at the address specified below, and in the event no such address is specified, at Bank's principal corporate office in Pensacola, Florida, Attention: President.

(12)     This Guaranty is given under the seal of the Guarantor, and it is intended that this Guaranty is and shall constitute and have the effect of a sealed instrument according to law.

(13)     GUARANTOR HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES THE RIGHT IT MAY HAVE TO TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER, OR IN CONNECTION WITH THIS GUARANTY, THE INDEBTEDNESS, AND ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH OR THEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER WRITTEN OR ORAL) OR ACTIONS OF BANK, BORROWER OR GUARANTOR. THIS PROVISION IS A

3

MATERIAL INDUCEMENT FOR THE BANK ACCEPTING THIS GUARANTY AND MAKING THE CREDIT ACCOMMODATIONS TO THE BORROWER.

(14) GUARANTOR ACKNOWLEDGES, COVENANTS, AGREES, REPRESENTS AND WARRANTS TO BANK THAT (I) ALL THE LOAN DOCUMENTS ARE IN FULL FORCE AND EFFECT, (II) THE LOAN DOCUMENTS CONSTITUTE THE LEGAL, VALID AND BINDING OBLIGATIONS OF THE BORROWER ENFORCEABLE AGAINST BORROWER IN ACCORDANCE WITH THEIR TERMS, (III) THIS GUARANTY CONSTITUTES THE LEGAL, VALID AND BINDING OBLIGATION OF GUARANTOR, AND IS ENFORCEABLE AGAINST GUARANTOR IN ACCORDANCE WITH ITS TERMS, (IV) GUARANTOR HAS NO DEFENSES, SETOFFS, RIGHTS OF RECOUPMENT, COUNTERCLAIMS, EQUITIES, ACTIONS OR CLAIMS OF ANY NATURE WHATSOEVER, IN FAVOR OF GUARANTOR TO OR AGAINST ENFORCEMENT OF THE PRIOR GUARANTY, THE PRIOR NOTE, THE NOTE OR ANY OTHER DOCUMENTS OR INSTRUMENTS EVIDENCING, SECURING OR OTHERWISE EXECUTED IN CONNECTION WITH ANY INDEBTEDNESS OF BORROWER TO BANK, AND/OR WITH RESPECT TO ANY ACTS OR OMISSIONS OF LENDER ON OR PRIOR TO THE DATE HEREOF, AND TO THE EXTENT ANY SUCH DEFENSES, SETOFFS, RIGHTS OF RECOUPMENT, COUNTERCLAIMS EQUITIES, ACTIONS OR CLAIMS OF ANY NATURE WHATSOEVER MAY EXIST, WHETHER KNOWN OR UNKNOWN, THE SAME ARE HEREBY EXPRESSLY WAIVED, RELEASED AND DISCHARGE, AND (V) GUARANTOR HAS REVIEWED AND APPROVED THE TERMS OF THE NOTE.

IN WITNESS WHEREOF, the undersigned Guarantor has executed this Guaranty effective as of September 28, 2009.

LEWIS M. LOCKHART

4

# Exhibit K

# GUARANTY

(1)     FOR VALUABLE CONSIDERATION, the receipt and sufficiency of which are hereby acknowledged, the undersigned, jointly and severally (hereinafter collectively called "Guarantor") unconditionally guarantees and promises to pay to COASTAL BANK AND TRUST OF FLORIDA, formerly known as BANK OF PENSACOLA (hereinafter called "Bank") or order in lawful money of the United States, all Indebtedness of PLASH ISLAND RESORT, L.L.C., an Alabama limited liability company (hereinafter called "Borrower"), to Bank. The word "Indebtedness" as used herein shall mean all advances, debts, obligations, and liabilities of Borrower to Bank under and in accordance with (i) that certain Renewal Promissory Note of even date herewith made by Borrower in favor of Bank, in the original principal amount of FIVE MILLION TWO HUNDRED FIFTY SEVEN THOUSAND ONE HUNDRED TWENTY NINE AND 16/100 DOLLARS ($5,257,129.16) (the "Note"), which Note is a renewal of that certain Promissory Note dated August 27, 2008 made by Borrower in favor of Bank, in the original principal amount of FIVE MILLION FOUR HUNDRED THOUSAND AND 00/100 DOLLARS ($5,400,000.00) (the "Prior Note"), and (ii) that certain Mortgage, Assignment of Leases and Rents and Security Agreement dated March 15, 2005 made by Borrower in favor of Bank, securing the Note (the "Mortgage"), which Mortgage secured certain real property more particularly described therein (the "Property") (the Note, the Mortgage and all other documents evidencing or securing the Indebtedness are hereinafter referred to collectively as the "Loan Documents"), whether recovery upon such Indebtedness may be or hereafter becomes barred by any statute of limitations or whether such Indebtedness may be now or hereafter becomes otherwise unenforceable.   This Guaranty renews and replaces that certain Guaranty dated August 27, 2008 executed by Guarantor in favor of Bank (the "Prior Guaranty"), which Prior Guaranty operated to guaranty the obligations of Borrower under the Prior Note.

(2)     This is a continuing Guaranty relating to the Indebtedness, including Indebtedness arising under successive advances or transactions which shall either continue Indebtedness or, from time to time, renew Indebtedness. In the event any sums or other things of value that are paid or transferred to or otherwise received by the Bank are rescinded, recovered, required to be returned, set aside, rendered void or otherwise adversely affected in any legal proceeding or for any cause whatsoever, including under any law, rule or regulation relative to bankruptcy, insolvency, fraudulent transfers or other relief of debtors, then this Guaranty shall continue to be effective or shall be revived and reinstated, as necessary, in order to give full effect to the Guarantor's liability hereunder, to the same extent as if such payment, transfer and/or receipt had never occurred. This Guaranty shall not release, modify, revoke or terminate any other guaranty heretofore or hereafter executed by the Guarantor; nor shall any other guaranty heretofore or hereafter executed by Guarantor release, modify, revoke or terminate this Guaranty unless such other guaranty specifically refers to this Guaranty and the release, modification, revocation, or termination (as applicable) is accepted by Bank in writing.

(3)     The obligations of the Guarantor hereunder are independent of the obligations of Borrower, and a separate action or actions may be brought and prosecuted against the Guarantor whether action is brought against Borrower or any other guarantor of the Indebtedness or whether Borrower or other guarantor are joined in any such action or actions.

(4)     It is the intent hereof that this obligation of Guarantor shall be and remain unaffected, (a) by the existence or nonexistence, validity or invalidity, of any pledge, assignment, or conveyance given as security; or (b) by any understanding or agreement that any other person, firm, or corporation was or is to execute this or any other guaranty, any of the Loan Documents or other instruments evidencing the Indebtedness, or any part thereof, or any other document or instrument or was or is to provide collateral for any Indebtedness; or (c) by resort on the part of Bank, or failure of Bank to resort, to any other security or remedy for the collection of said Indebtedness; or (d) by the

1

death, bankruptcy, insolvency, dissolution, or incapacitation of the Guarantor, the Borrower, or any other person, and in case of any such death or bankruptcy, the failure of Bank to file a claim against the deceased Guarantor's estate or against such bankrupt's estate, or the failure of Bank to otherwise seek remedies as a consequence of such events.

(5)     The Guarantor authorizes Bank, without notice or demand and without affecting the Guarantor's liability hereunder, from time to time, to (a) renew, compromise, extend, accelerate, restate, consolidate, replace, refinance, or otherwise change the time for payment of, or otherwise change the terms of, the Indebtedness or any part thereof, including increasing or decreasing the rate of interest thereof; (b) take and hold security for the payment of this Guaranty or any of the Indebtedness and/or exchange, modify, enforce, waive, and release any such security; (c) apply such security and direct the order or manner of sale thereof as Bank, in its discretion, may determine; and/or (d) release or substitute the Borrower or other obligor, endorser, or other guarantors of all or any part of the Indebtedness (including, without limitation, the Guarantor.)

(6)     The Guarantor waives any right to require Bank (a) to proceed against the Borrower or any other guarantor of the Indebtedness; (b) to protect, preserve, proceed against, or exhaust any security held from Borrower; or (c) to pursue any other remedy in Bank's power whatsoever. The Guarantor waives any defense arising by reason of any disability or other defense of the Borrower or any other guarantor of the Indebtedness (including any defense based on or arising out of the unenforceability of any part of the Indebtedness for any cause whatsoever) or by reason of the cessation from any cause whatsoever of the liability of the Borrower or any other guarantor of the Indebtedness. Until all Indebtedness shall have been paid in full, even though such Indebtedness is in excess of Guarantor's liability hereunder, Guarantor shall not have any rights of subrogation, reimbursement, contribution, or indemnity or any right of recourse to any assets or properties of the Borrower or any other guarantor of the Indebtedness, and Guarantor waives (i) all such rights, if any, of subrogation, reimbursement, contribution, indemnity and recourse, (ii) any right to enforce any remedy which Bank now has or may hereafter have against the Borrower or any other guarantor of the Indebtedness, and (iii) any benefit of, and any right of recourse to or to participate in, any security now or hereafter held by Bank or otherwise constituting collateral for any Indebtedness. Guarantor waives all presentments, demands for performance, notices of nonperformance, notice of acceleration, notice of intent to accelerate, protests, notices of protest, notices of dishonor, and notices of acceptance of this Guaranty and of the existence, creation, or incurrence of new or additional Indebtedness, and waives any rights or defenses based, in whole or in part, upon an offset by the Borrower or any other guarantor of the Indebtedness against any obligation or indebtedness now or hereafter owed to the Borrower. Guarantor waives the benefit of any statute of limitations or other defenses affecting the Borrower's liability for the Indebtedness or the enforcement thereof or the Guarantor's liability hereunder or the enforcement thereof, and the Guarantor further agrees that any payment by the Borrower or other instrument that operate to toll any statute of limitations as to the Borrower shall operate to toll the statute of limitations as to the Guarantor. Guarantor waives any rights to exemption under the Constitution of the State of Alabama or any other state as to any Indebtedness or obligation created hereunder.

(7)     In addition to all liens upon, and rights of setoff against, moneys, securities, or other property of the Guarantor given to Bank by law, Bank shall have and hereby is granted a lien upon, security interest in, and a right of setoff against, all moneys, securities, and other property of the Guarantor now or hereafter: in the possession of or on deposit with Bank, whether held in a general or special account or deposit, or for safekeeping or otherwise; and every such lien, security interest and right of setoff may be exercised without demand upon or notice to the Guarantor. No lien, security interest, or right of setoff shall be deemed to have been waived by any act or conduct on the part of Bank, or by any failure to exercise such right of setoff, or to enforce such lien or security interest, or by any delay in so doing, and every right of setoff and lien shall continue in full force and effect until such right of setoff or lien specifically is waived or released in a written instrument executed by Bank.

2

(8)     Any indebtedness of Borrower to Guarantor, whether now existing, hereafter arising, secured or unsecured, and if secured, the security for same hereby is subordinated to the Indebtedness; and such subordinated Indebtedness, if Bank so requests, shall be collected, enforced, and received by Guarantor as trustee for Bank and be paid over to Bank on account of the Indebtedness, but without reducing or affecting in any manner the liability of Guarantor under this Guaranty.

(9)     If Borrower or Guarantor is a corporation, partnership, joint venture, trust, limited liability company, business organization, or enterprise, it shall not be necessary for Bank to inquire into the power or authority of Borrower or Guarantor or the officers, directors, partners, trustees, or agents acting or purporting to act on its behalf.

(10)     . Guarantor shall pay attorney's fees and all other costs and expenses which are incurred by Bank in the enforcement of this Guaranty.

(11)     No right or power of Bank hereunder shall be deemed to have been waived by any act or conduct or failure or delay to act on the part of Bank or any of its agents, employees or representatives; and the terms and provisions hereof may not be waived, altered, modified, or amended except in writing duly signed by a duly authorized officer of the Bank. In the event that Bank shall waive in writing any provision or requirement hereunder, such waiver shall be effective only for the specific purposes, circumstances and duration stated in said waiver. Bank may, without notice, assign this Guaranty in whole or in part and each reference herein to Bank shall be deemed to include its successors and assigns. The provisions of this Guaranty are binding upon the Guarantor and the heirs, distributees, executors, administrators, legal representatives, personal representatives, successors and assigns thereof, and shall inure to the benefit of the Bank and each of its successors and assigns. THIS GUARANTY AND THE RIGHTS AND OBLIGATIONS OF THE GUARANTOR AND THE BANK HEREUNDER SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF ALABAMA. Guarantor acknowledges that any cause of action arising under this Guaranty will be a cause of action arising from an Alabama transaction, that it is foreseeable  that this Guaranty and the performance hereof have and will have significant effects in the State of Alabama, and that Guarantor's execution of this Guaranty will subject Guarantor to judicial jurisdiction in the State of Alabama. If any of the provisions of this Guaranty or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of the  provisions of this Guaranty, or the application of such provision or provisions to persons or circumstances other than those as to whom or which it is held invalid or unenforceable, shall not be affected thereby, and every provision of this Guaranty shall be valid and enforceable to the fullest extent permitted by law. Except as expressly set forth in this Guaranty, this Guaranty is the entire agreement of the Guarantor and the Bank with respect to the guarantee of the Indebtedness by the Guarantor, and no representation, understanding, promise or condition concerning the subject matter hereof shall be binding upon the Bank unless expressed herein. Any notice by Guarantor to the Bank shall be effective only upon the actual receipt thereof by an officer of Bank at the address specified below, and in the event no such address is specified, at Bank's principal corporate office in Pensacola, Florida, Attention: President.

(12)     This Guaranty is given under the seal of the Guarantor, and it is intended that this Guaranty is and shall constitute and have the effect of a sealed instrument according to law.

(13)     GUARANTOR HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES THE RIGHT IT MAY HAVE TO TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER, OR IN CONNECTION WITH THIS GUARANTY, THE INDEBTEDNESS, AND ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH OR THEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER WRITTEN OR ORAL) OR ACTIONS OF BANK, BORROWER OR GUARANTOR.  THIS PROVISION IS A

3

MATERIAL INDUCEMENT FOR THE BANK ACCEPTING THIS GUARANTY AND MAKING THE CREDIT ACCOMMODATIONS TO THE BORROWER.

(14) GUARANTOR ACKNOWLEDGES, COVENANTS, AGREES, REPRESENTS AND WARRANTS TO BANK THAT (I) ALL THE LOAN DOCUMENTS ARE IN FULL FORCE AND EFFECT, (II) THE LOAN DOCUMENTS CONSTITUTE THE LEGAL, VALID AND BINDING OBLIGATIONS OF THE BORROWER ENFORCEABLE AGAINST BORROWER IN ACCORDANCE WITH THEIR TERMS, (III) THIS GUARANTY CONSTITUTES THE LEGAL, VALID AND BINDING OBLIGATION OF GUARANTOR, AND IS ENFORCEABLE AGAINST GUARANTOR IN ACCORDANCE WITH ITS TERMS, (IV) GUARANTOR HAS NO DEFENSES, SETOFFS, RIGHTS OF RECOUPMENT, COUNTERCLAIMS, EQUITIES, ACTIONS OR CLAIMS OF ANY NATURE WHATSOEVER, IN FAVOR OF GUARANTOR TO OR AGAINST ENFORCEMENT OF THE PRIOR GUARANTY, THE PRIOR NOTE, THE NOTE OR ANY OTHER DOCUMENTS OR INSTRUMENTS EVIDENCING, SECURING OR OTHERWISE EXECUTED IN CONNECTION WITH ANY INDEBTEDNESS OF BORROWER TO BANK, AND/OR WITH RESPECT TO ANY ACTS OR OMISSIONS OF LENDER ON OR PRIOR TO THE DATE HEREOF, AND TO THE EXTENT ANY SUCH DEFENSES, SETOFFS, RIGHTS OF RECOUPMENT, COUNTERCLAIMS EQUITIES, ACTIONS OR CLAIMS OF ANY NATURE WHATSOEVER MAY EXIST, WHETHER KNOWN OR UNKNOWN, THE SAME ARE HEREBY EXPRESSLY WAIVED, RELEASED AND DISCHARGE, AND (V) GUARANTOR HAS REVIEWED AND APPROVED THE TERMS OF THE NOTE.

IN WITNESS WHEREOF, the undersigned Guarantor has executed this Guaranty effective as of September 28, 2009.

KEITH ROTENBERRY

4

# Exhibit L

# GUARANTY

(1)     FOR VALUABLE CONSIDERATION, the receipt and sufficiency of which are hereby acknowledged, the undersigned, jointly and severally (hereinafter collectively called "Guarantor") unconditionally guarantees and promises to pay to COASTAL BANK AND TRUST OF FLORIDA, formerly known as BANK OF PENSACOLA (hereinafter called "Bank") or order in lawful money of the United States, all Indebtedness of PLASH ISLAND RESORT, L.L.C., an Alabama limited liability company (hereinafter called "Borrower"), to Bank. The word "Indebtedness" as used herein shall mean all advances, debts, obligations, and liabilities of Borrower to Bank under and in accordance with (i) that certain Renewal Promissory Note of even date herewith made by Borrower in favor of Bank, in the original principal amount of FIVE MILLION TWO HUNDRED FIFTY SEVEN THOUSAND ONE HUNDRED TWENTY NINE AND 16/100 DOLLARS ($5,257,129.16) (the "Note"), which Note is a renewal of that certain Promissory Note dated August 27, 2008 made by Borrower in favor of Bank, in the original principal amount of FIVE MILLION FOUR HUNDRED THOUSAND AND 00/100 DOLLARS ($5,400,000.00) (the "Prior Note"), and (ii) that certain Mortgage, Assignment of Leases and Rents and Security Agreement dated March 15, 2005 made by Borrower in favor of Bank, securing the Note (the "Mortgage"), which Mortgage secured certain real property more particularly described therein (the "Property") (the Note, the Mortgage and all other documents evidencing or securing the Indebtedness are hereinafter referred to collectively as the "Loan Documents"), whether recovery upon such Indebtedness may be or hereafter becomes barred by any statute of limitations or whether such Indebtedness may be now or hereafter becomes otherwise unenforceable. This Guaranty renews and replaces that certain Guaranty dated August 27, 2008 executed by Guarantor in favor of Bank (the "Prior Guaranty"), which Prior Guaranty operated to guaranty the obligations of Borrower under the Prior Note.

(2)     This is a continuing Guaranty relating to the Indebtedness, including Indebtedness arising under successive advances or transactions which shall either continue Indebtedness or, from time to time, renew Indebtedness. In the event any sums or other things of value that are paid or transferred to or otherwise received by the Bank are rescinded, recovered, required to be returned, set aside, rendered void or otherwise adversely affected in any legal proceeding or for any cause whatsoever, including under any law, rule or regulation relative to bankruptcy, insolvency, fraudulent transfers or other relief of debtors, then this Guaranty shall continue to be effective or shall be revived and reinstated, as necessary, in order to give full effect to the Guarantor's liability hereunder, to the same extent as if such payment, transfer and/or receipt had never occurred. This Guaranty shall not release, modify, revoke or terminate any other guaranty heretofore or hereafter executed by the Guarantor; nor shall any other guaranty heretofore or hereafter executed by Guarantor release, modify, revoke or terminate this Guaranty unless such other guaranty specifically refers to this Guaranty and the release, modification, revocation, or termination (as applicable) is accepted by Bank in writing.

(3)     The obligations of the Guarantor hereunder are independent of the obligations of Borrower, and a separate action or actions may be brought and prosecuted against the Guarantor whether action is brought against Borrower or any other guarantor of the Indebtedness or whether Borrower or other guarantor are joined in any such action or actions.

(4)     It is the intent hereof that this obligation of Guarantor shall be and remain unaffected, (a) by the existence or nonexistence, validity or invalidity, of any pledge, assignment, or conveyance given as security; or (b) by any understanding or agreement that any other person, firm, or corporation was or is to execute this or any other guaranty, any of the Loan Documents or other instruments evidencing the Indebtedness, or any part thereof, or any other document or instrument or was or is to provide collateral for any Indebtedness; or (c) by resort on the part of Bank, or failure of Bank to resort, to any other security or remedy for the collection of said Indebtedness; or (d) by the

1

death, bankruptcy, insolvency, dissolution, or incapacitation of the Guarantor, the Borrower, or any other person, and in case of any such death or bankruptcy, the failure of Bank to file a claim against the deceased Guarantor's estate or against such bankrupt's estate, or the failure of Bank to otherwise seek remedies as a consequence of such events.

(5)     The Guarantor authorizes Bank, without notice or demand and without affecting the Guarantor's liability hereunder, from time to time, to (a) renew, compromise, extend, accelerate, restate, consolidate, replace, refinance, or otherwise change the time for payment of, or otherwise change the terms of, the Indebtedness or any part thereof, including increasing or decreasing the rate of interest thereof; (b) take and hold security for the payment of this Guaranty or any of the Indebtedness and/or exchange, modify, enforce, waive, and release any such security; (c) apply such security and direct the order or manner of sale thereof as Bank, in its discretion, may determine; and/or (d) release or substitute the Borrower or other obligor, endorser, or other guarantors of all or any part of the Indebtedness (including, without limitation, the Guarantor.)

(6)     The Guarantor waives any right to require Bank (a) to proceed against the Borrower or any other guarantor of the Indebtedness; (b) to protect, preserve, proceed against, or exhaust any security held from Borrower; or (c) to pursue any other remedy in Bank's power whatsoever. The Guarantor waives any defense arising by reason of any disability or other defense of the Borrower or any other guarantor of the Indebtedness (including any defense based on or arising out of the unenforceability of any part of the Indebtedness for any cause whatsoever) or by reason of the cessation from any cause whatsoever of the liability of the Borrower or any other guarantor of the Indebtedness. Until all Indebtedness shall have been paid in full, even though such Indebtedness is in excess of Guarantor's liability hereunder, Guarantor shall not have any rights of subrogation, reimbursement, contribution, or indemnity or any right of recourse to any assets or properties of the Borrower or any other guarantor of the Indebtedness, and Guarantor waives (i) all such rights, if any, of subrogation, reimbursement, contribution, indemnity and recourse, (ii) any right to enforce any remedy which Bank now has or may hereafter have against the Borrower or any other guarantor of the Indebtedness, and (iii) any benefit of, and any right of recourse to or to participate in, any security now or hereafter held by Bank or otherwise constituting collateral for any Indebtedness. Guarantor waives all presentments, demands for performance, notices of nonperformance, notice of acceleration, notice of intent to accelerate, protests, notices of protest, notices of dishonor, and notices of acceptance of this Guaranty and of the existence, creation, or incurrence of new or additional Indebtedness, and waives any rights or defenses based, in whole or in part, upon an offset by the Borrower or any other guarantor of the Indebtedness against any obligation or indebtedness now or hereafter owed to the Borrower. Guarantor waives the benefit of any statute of limitations or other defenses affecting the Borrower's liability for the Indebtedness or the enforcement thereof or the Guarantor's liability hereunder or the enforcement thereof, and the Guarantor further agrees that any payment by the Borrower or other circumstances that operate to toll any statute of limitations as to the Borrower shall operate to toll the statute of limitations as to the Guarantor. Guarantor waives any rights to exemption under the Constitution of the State of Alabama or any other state as to any Indebtedness or obligation created hereunder.

(7)     In addition to all liens upon, and rights of setoff against, moneys, securities, or other property of the Guarantor given to Bank by law, Bank shall have and hereby is granted a lien upon, security interest in, and a right of setoff against, all moneys, securities, and other property of the Guarantor now or hereafter in the possession of or on deposit with Bank, whether held in a general or special account or deposit, or for safekeeping or otherwise; and every such lien, security interest and right of setoff may be exercised without demand upon or notice to the Guarantor. No lien, security interest, or right of setoff shall be deemed to have been waived by any act or conduct on the part of Bank, or by any failure to exercise such right of setoff, or to enforce such lien or security interest, or by any delay in so doing, and every right of setoff and lien shall continue in full force and effect until such right of setoff or lien specifically is waived or released in a written instrument executed by Bank.

2

(8)    Any indebtedness of Borrower to Guarantor, whether now existing, hereafter arising, secured or unsecured, and if secured, the security for same hereby is subordinated to the Indebtedness; and such subordinated Indebtedness, if Bank so requests, shall be collected, enforced, and received by Guarantor as trustee for Bank and be paid over to Bank on account of the Indebtedness, but without reducing or affecting in any manner the liability of Guarantor under this Guaranty.

(9)    If Borrower or Guarantor is a corporation, partnership, joint venture, trust, limited liability company, business organization, or enterprise, it shall not be necessary for Bank to inquire into the power or authority of Borrower or Guarantor or the officers, directors, partners, trustees, or agents acting or purporting to act on its behalf.

(10)    Guarantor shall pay attorney's fees and all other costs and expenses which are incurred by Bank in the enforcement of this Guaranty.

(11)    No right or power of Bank hereunder shall be deemed to have been waived by any act or conduct or failure or delay to act on the part of Bank or any of its agents, employees or representatives; and the terms and provisions hereof may not be waived, altered, modified, or amended except in writing duly signed by a duly authorized officer of the Bank. In the event that Bank shall waive in writing any provision or requirement hereunder, such waiver shall be effective only for the specific purposes, circumstances and duration stated in said waiver. Bank may, without notice, assign this Guaranty in whole or in part and each reference herein to Bank shall be deemed to include its successors and assigns. The provisions of this Guaranty are binding upon the Guarantor and the heirs, distributees, executors, administrators, legal representatives, personal representatives, successors and assigns thereof, and shall inure to the benefit of the Bank and each of its successors and assigns. THIS GUARANTY AND THE RIGHTS AND OBLIGATIONS OF THE GUARANTOR AND THE BANK HEREUNDER SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF ALABAMA. Guarantor acknowledges that any cause of action arising under this Guaranty will be a cause of action arising from an Alabama transaction, that it is foreseeable  that this Guaranty and the performance hereof have and will have significant effects in the State of Alabama, and that Guarantor's execution of this Guaranty will subject Guarantor to judicial jurisdiction in the State of Alabama. If any of the provisions of this Guaranty or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of the  provisions of this Guaranty, or the application of such provision or provisions to persons or circumstances other than those as to whom or which it is held invalid or unenforceable, shall not be affected thereby, and every provision of this Guaranty shall be valid and enforceable to the fullest extent permitted by law.  Except as expressly set forth in this Guaranty, this Guaranty is the entire agreement of the Guarantor and the Bank with respect to the guarantee of the Indebtedness by the Guarantor, and no representation, understanding, promise or condition concerning the subject matter hereof shall be binding upon the Bank unless expressed herein. Any notice by Guarantor to the Bank shall be effective only upon the actual receipt thereof by an officer of Bank at the address specified below, and in the event no such address is specified, at Bank's principal corporate office in Pensacola, Florida, Attention: President.

(12)    This Guaranty is given under the seal of the Guarantor, and it is intended that this Guaranty is and shall constitute and have the effect of a sealed instrument according to law.

(13)    GUARANTOR HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES THE RIGHT IT MAY HAVE TO TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER, OR IN CONNECTION WITH THIS GUARANTY, THE INDEBTEDNESS, AND ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH OR THEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER WRITTEN OR ORAL) OR ACTIONS OF BANK, BORROWER OR GUARANTOR.  THIS PROVISION IS A

3

MATERIAL INDUCEMENT FOR THE BANK ACCEPTING THIS GUARANTY AND MAKING THE CREDIT ACCOMMODATIONS TO THE BORROWER.

(14) GUARANTOR ACKNOWLEDGES, COVENANTS, AGREES, REPRESENTS AND WARRANTS TO BANK THAT (I) ALL THE LOAN DOCUMENTS ARE IN FULL FORCE AND EFFECT, (II) THE LOAN DOCUMENTS CONSTITUTE THE LEGAL, VALID AND BINDING OBLIGATIONS OF THE BORROWER ENFORCEABLE AGAINST BORROWER IN ACCORDANCE WITH THEIR TERMS, (III) THIS GUARANTY CONSTITUTES THE LEGAL, VALID AND BINDING OBLIGATION OF GUARANTOR, AND IS ENFORCEABLE AGAINST GUARANTOR IN ACCORDANCE WITH ITS TERMS, (IV) GUARANTOR HAS NO DEFENSES, SETOFFS, RIGHTS OF RECOUPMENT, COUNTERCLAIMS, EQUITIES, ACTIONS OR CLAIMS OF ANY NATURE WHATSOEVER, IN FAVOR OF GUARANTOR TO OR AGAINST ENFORCEMENT OF THE PRIOR GUARANTY, THE PRIOR NOTE, THE NOTE OR ANY OTHER DOCUMENTS OR INSTRUMENTS EVIDENCING, SECURING OR OTHERWISE EXECUTED IN CONNECTION WITH ANY INDEBTEDNESS OF BORROWER TO BANK, AND/OR WITH RESPECT TO ANY ACTS OR OMISSIONS OF LENDER ON OR PRIOR TO THE DATE HEREOF, AND TO THE EXTENT ANY SUCH DEFENSES, SETOFFS, RIGHTS OF RECOUPMENT, COUNTERCLAIMS EQUITIES, ACTIONS OR CLAIMS OF ANY NATURE WHATSOEVER MAY EXIST, WHETHER KNOWN OR UNKNOWN, THE SAME ARE HEREBY EXPRESSLY WAIVED, RELEASED AND DISCHARGE, AND (V) GUARANTOR HAS REVIEWED AND APPROVED THE TERMS OF THE NOTE.

IN WITNESS WHEREOF, the undersigned Guarantor has executed this Guaranty effective as of September 28, 2009.

ALAN C. HOWARD

4

# Exhibit M

# GUARANTY

(1)     FOR VALUABLE CONSIDERATION, the receipt and sufficiency of which are hereby acknowledged, the undersigned, jointly and severally (hereinafter collectively called "Guarantor") unconditionally guarantees and promises to pay to COASTAL BANK AND TRUST OF FLORIDA, formerly known as BANK OF PENSACOLA (hereinafter called "Bank") or order in lawful money of the United States, all Indebtedness of PLASH ISLAND RESORT, L.L.C., an Alabama limited liability company (hereinafter called "Borrower"), to Bank. The word "Indebtedness" as used herein shall mean all advances, debts, obligations, and liabilities of Borrower to Bank under and in accordance with (i) that certain Renewal Promissory Note of even date herewith made by Borrower in favor of Bank, in the original principal amount of FIVE MILLION TWO HUNDRED FIFTY SEVEN THOUSAND ONE HUNDRED TWENTY NINE AND 16/100 DOLLARS ($5,257,129.16) (the "Note"), which Note is a renewal of that certain Promissory Note dated August 27, 2008 made by Borrower in favor of Bank, in the original principal amount of FIVE MILLION FOUR HUNDRED THOUSAND AND 00/100 DOLLARS ($5,400,000.00) (the "Prior Note"), and (ii) that certain Mortgage, Assignment of Leases and Rents and Security Agreement dated March 15, 2005 made by Borrower in favor of Bank, securing the Note (the "Mortgage"), which Mortgage secured certain real property more particularly described therein (the "Property") (the Note, the Mortgage and all other documents evidencing or securing the Indebtedness are hereinafter referred to collectively as the "Loan Documents"), whether recovery upon such Indebtedness may be or hereafter becomes barred by any statute of limitations or whether such Indebtedness may be now or hereafter becomes otherwise unenforceable.   This Guaranty renews and replaces that certain Guaranty dated August 27, 2008 executed by Guarantor in favor of Bank (the "Prior Guaranty"), which Prior Guaranty operated to guaranty the obligations of Borrower under the Prior Note.

(2)     This is a continuing Guaranty relating to the Indebtedness, including Indebtedness arising under successive advances or transactions which shall either continue Indebtedness or, from time to time, renew Indebtedness. In the event any sums or other things of value that are paid or transferred to or otherwise received by the Bank are rescinded, recovered, required to be returned, set aside, rendered void or otherwise adversely affected in any legal proceeding or for any cause whatsoever, including under any law, rule or regulation relative to bankruptcy, insolvency, fraudulent transfers or other relief of debtors, then this Guaranty shall continue to be effective or shall be revived and reinstated, as necessary, in order to give full effect to the Guarantor's liability hereunder, to the same extent as if such payment, transfer and/or receipt had never occurred. This Guaranty shall not release, modify, revoke or terminate any other guaranty heretofore or hereafter executed by the Guarantor; nor shall any other guaranty heretofore or hereafter executed by Guarantor release, modify, revoke or terminate this Guaranty unless such other guaranty specifically refers to this Guaranty and the release, modification, revocation, or termination (as applicable) is accepted by Bank in writing.

(3)     The obligations of the Guarantor hereunder are independent of the obligations of Borrower, and a separate action or actions may be brought and prosecuted against the Guarantor whether action is brought against Borrower or any other guarantor of the Indebtedness or whether Borrower or other guarantor are joined in any such action or actions.

(4)     It is the intent hereof that this obligation of Guarantor shall be and remain unaffected, (a) by the existence or nonexistence, validity or invalidity, of any pledge, assignment, or conveyance given as security; or (b) by any understanding or agreement that any other person, firm, or corporation was or is to execute this or any other guaranty, any of the Loan Documents or other instruments evidencing the Indebtedness, or any part thereof, or any other document or instrument or was or is to provide collateral for any Indebtedness; or (c) by resort on the part of Bank, or failure of Bank to resort, to any other security or remedy for the collection of said Indebtedness; or (d) by the

1

death, bankruptcy, insolvency, dissolution, or incapacitation of the Guarantor, the Borrower, or any other person, and in case of any such death or bankruptcy, the failure of Bank to file a claim against the deceased Guarantor's estate or against such bankrupt's estate, or the failure of Bank to otherwise seek remedies as a consequence of such events.

(5)    The Guarantor authorizes Bank, without notice or demand and without affecting the Guarantor's liability hereunder, from time to time, to (a) renew, compromise, extend, accelerate, restate, consolidate, replace, refinance, or otherwise change the time for payment of, or otherwise change the terms of, the Indebtedness or any part thereof, including increasing or decreasing the rate of interest thereof; (b) take and hold security for the payment of this Guaranty or any of the Indebtedness and/or exchange, modify, enforce, waive, and release any such security; (c) apply such security and direct the order or manner of sale thereof as Bank, in its discretion, may determine; and/or (d) release or substitute the Borrower or other obligor, endorser, or other guarantors of all or any part of the Indebtedness (including, without limitation, the Guarantor.)

(6)    The Guarantor waives any right to require Bank (a) to proceed against the Borrower or any other guarantor of the Indebtedness; (b) to protect, preserve, proceed against, or exhaust any security held from Borrower; or (c) to pursue any other remedy in Bank's power whatsoever.  The Guarantor waives any defense arising by reason of any disability or other defense of the Borrower or any other guarantor of the Indebtedness (including any defense based on or arising out of the unenforceability of any part of the Indebtedness for any cause whatsoever) or by reason of the cessation from any cause whatsoever of the liability of the Borrower or any other guarantor of the Indebtedness. Until all Indebtedness shall have been paid in full, even though such Indebtedness is in excess of Guarantor's liability hereunder, Guarantor shall not have any rights of subrogation, reimbursement, contribution, or indemnity or any right of recourse to any assets or properties of the Borrower or any other guarantor of the Indebtedness, and Guarantor waives (i) all such rights, if any, of subrogation, reimbursement, contribution, indemnity and recourse, (ii) any right to enforce any remedy which Bank now has or may hereafter have against the Borrower or any other guarantor of the Indebtedness, and (iii) any benefit of, and any right of recourse to or to participate in, any security now or hereafter held by Bank or otherwise constituting collateral for any Indebtedness. Guarantor waives all presentments, demands for performance, notices of nonperformance, notice of acceleration, notice of intent to accelerate, protests, notices of protest, notices of dishonor, and notices of acceptance of this Guaranty and of the existence, creation, or incurrence of new or additional Indebtedness, and waives any rights or defenses based, in whole or in part, upon an offset by the Borrower or any other guarantor of the Indebtedness against any obligation or indebtedness now or hereafter owed to the Borrower.  Guarantor waives the benefit of any statute of limitations or other defenses affecting the Borrower's liability for the Indebtedness or the enforcement thereof or the Guarantor's liability hereunder or the enforcement thereof, and the Guarantor further agrees that any payment by the Borrower or other circumstances that operate to toll any statute of limitations as to the Borrower shall operate to toll the statute of limitations as to the Guarantor. Guarantor waives any rights to exemption under the Constitution of the State of Alabama or any other state as to any Indebtedness or obligation created hereunder.

(7)    In addition to all liens upon, and rights of setoff against, moneys, securities, or other property of the Guarantor given to Bank by law, Bank shall have and hereby is granted a lien upon, security interest in, and a right of setoff against, all moneys, securities, and other property of the Guarantor now or hereafter in the possession of or on deposit with Bank, whether held in a general or special account or deposit, or for safekeeping or otherwise; and every such lien, security interest and right of setoff may be exercised without demand upon or notice to the Guarantor. No lien, security interest, or right of setoff shall be deemed to have been waived by any act or conduct on the part of Bank, or by any failure to exercise such right of setoff, or to enforce such lien or security interest, or by any delay in so doing, and every right of setoff and lien shall continue in full force and effect until such right of setoff or lien specifically is waived or released in a written instrument executed by Bank.

2

(8) Any indebtedness of Borrower to Guarantor, whether now existing, hereafter arising, secured or unsecured, and if secured, the security for same hereby is subordinated to the Indebtedness; and such subordinated Indebtedness, if Bank so requests, shall be collected, enforced, and received by Guarantor as trustee for Bank and be paid over to Bank on account of the Indebtedness, but without reducing or affecting in any manner the liability of Guarantor under this Guaranty.

(9) If Borrower or Guarantor is a corporation, partnership, joint venture, trust, limited liability company, business organization, or enterprise, it shall not be necessary for Bank to inquire into the power or authority of Borrower or Guarantor or the officers, directors, partners, trustees, or agents acting or purporting to act on its behalf.

(10) Guarantor shall pay attorney's fees and all other costs and expenses which are incurred by Bank in the enforcement of this Guaranty.

(11) No right or power of Bank hereunder shall be deemed to have been waived by any act or conduct or failure or delay to act on the part of Bank or any of its agents, employees or representatives; and the terms and provisions hereof may not be waived, altered, modified, or amended except in writing duly signed by a duly authorized officer of the Bank. In the event that Bank shall waive in writing any provision or requirement hereunder, such waiver shall be effective only for the specific purposes, circumstances and duration stated in said waiver. Bank may, without notice, assign this Guaranty in whole or in part and each reference herein to Bank shall be deemed to include its successors and assigns. The provisions of this Guaranty are binding upon the Guarantor and the heirs, distributees, executors, administrators, legal representatives, personal representatives, successors and assigns thereof, and shall inure to the benefit of the Bank and each of its successors and assigns. THIS GUARANTY AND THE RIGHTS AND OBLIGATIONS OF THE GUARANTOR AND THE BANK HEREUNDER SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF ALABAMA. Guarantor acknowledges that any cause of action arising under this Guaranty will be a cause of action arising from an Alabama transaction, that it is foreseeable that this Guaranty and the performance hereof have and will have significant effects in the State of Alabama, and that Guarantor's execution of this Guaranty will subject Guarantor to judicial jurisdiction in the State of Alabama. If any of the provisions of this Guaranty or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of the provisions of this Guaranty, or the application of such provision or provisions to persons or circumstances other than those as to whom or which it is held invalid or unenforceable, shall not be affected thereby, and every provision of this Guaranty shall be valid and enforceable to the fullest extent permitted by law. Except as expressly set forth in this Guaranty, this Guaranty is the entire agreement of the Guarantor and the Bank with respect to the guarantee of the Indebtedness by the Guarantor, and no representation, understanding, promise or condition concerning the subject matter hereof shall be binding upon the Bank unless expressed herein. Any notice by Guarantor to the Bank shall be effective only upon the actual receipt thereof by an officer of Bank at the address specified below, and in the event no such address is specified, at Bank's principal corporate office in Pensacola, Florida, Attention: President.

(12) This Guaranty is given under the seal of the Guarantor, and it is intended that this Guaranty is and shall constitute and have the effect of a sealed instrument according to law.

(13) GUARANTOR HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES THE RIGHT IT MAY HAVE TO TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER, OR IN CONNECTION WITH THIS GUARANTY, THE INDEBTEDNESS, AND ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH OR THEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER WRITTEN OR ORAL) OR ACTIONS OF BANK, BORROWER OR GUARANTOR. THIS PROVISION IS A

3

MATERIAL INDUCEMENT FOR THE BANK ACCEPTING THIS GUARANTY AND MAKING THE CREDIT ACCOMMODATIONS TO THE BORROWER.

(14) GUARANTOR ACKNOWLEDGES, COVENANTS, AGREES, REPRESENTS AND WARRANTS TO BANK THAT (I) ALL THE LOAN DOCUMENTS ARE IN FULL FORCE AND EFFECT, (II) THE LOAN DOCUMENTS CONSTITUTE THE LEGAL, VALID AND BINDING OBLIGATIONS OF THE BORROWER ENFORCEABLE AGAINST BORROWER IN ACCORDANCE WITH THEIR TERMS, (III) THIS GUARANTY CONSTITUTES THE LEGAL, VALID AND BINDING OBLIGATION OF GUARANTOR, AND IS ENFORCEABLE AGAINST GUARANTOR IN ACCORDANCE WITH ITS TERMS, (IV) GUARANTOR HAS NO DEFENSES, SETOFFS, RIGHTS OF RECOUPMENT, COUNTERCLAIMS, EQUITIES, ACTIONS OR CLAIMS OF ANY NATURE WHATSOEVER, IN FAVOR OF GUARANTOR TO OR AGAINST ENFORCEMENT OF THE PRIOR GUARANTY, THE PRIOR NOTE, THE NOTE OR ANY OTHER DOCUMENTS OR INSTRUMENTS EVIDENCING, SECURING OR OTHERWISE EXECUTED IN CONNECTION WITH ANY INDEBTEDNESS OF BORROWER TO BANK, AND/OR WITH RESPECT TO ANY ACTS OR OMISSIONS OF LENDER ON OR PRIOR TO THE DATE HEREOF, AND TO THE EXTENT ANY SUCH DEFENSES, SETOFFS, RIGHTS OF RECOUPMENT, COUNTERCLAIMS EQUITIES, ACTIONS OR CLAIMS OF ANY NATURE WHATSOEVER MAY EXIST, WHETHER KNOWN OR UNKNOWN, THE SAME ARE HEREBY EXPRESSLY WAIVED, RELEASED AND DISCHARGE, AND (V) GUARANTOR HAS REVIEWED AND APPROVED THE TERMS OF THE NOTE.

IN WITNESS WHEREOF, the undersigned Guarantor has executed this Guaranty effective as of September 28, 2009.

MICHAEL W. MCCAIN

4

# Exhibit N

# GUARANTY

(1)     FOR VALUABLE CONSIDERATION, the receipt and sufficiency of which are hereby acknowledged, the undersigned, jointly and severally (hereinafter collectively called "Guarantor") unconditionally guarantees and promises to pay to BANK OF PENSACOLA (hereinafter called "Bank") or order in lawful money of the United States, all Indebtedness of PLASH ISLAND RESORT, L.L.C., an Alabama limited liability company (hereinafter called "Borrower"), to Bank. The word "Indebtedness" as used herein shall mean all advances, debts, obligations, and liabilities of Borrower to Bank under and in accordance with (i) that certain Renewal Promissory Note of even date herewith made by Borrower in favor of Bank, in the original principal amount of FIVE MILLION FOUR HUNDRED THOUSAND AND 00/100 DOLLARS ($5,400,000.00) (the "Note"), which Note is a renewal of that certain Promissory Note dated April 27, 2008 made by Borrower in favor of Bank, in the original principal amount of FIVE MILLION FOUR HUNDRED THOUSAND AND 00/100 DOLLARS ($5,400,000.00) (the "Prior Note"), and (ii) that certain Mortgage, Assignment of Leases and Rents and Security Agreement dated March 15, 2005 made by Borrower in favor of Bank, securing the Note (the "Mortgage"), which Mortgage secured certain real property more particularly described therein (the "Property") (the Note, the Mortgage and all other documents evidencing or securing the Indebtedness are hereinafter referred to collectively as the "Loan Documents"), whether recovery upon such Indebtedness may be or hereafter becomes barred by any statute of limitations or whether such Indebtedness may be now or hereafter becomes otherwise unenforceable.  This Guaranty renews and replaces that certain Guaranty dated April 27, 2008 executed by Guarantor in favor of Bank (the "Prior Guaranty"), which Prior Guaranty operated to guaranty the obligations of Borrower under the Prior Note.

(2)     This is a continuing Guaranty relating to the Indebtedness, including Indebtedness arising under successive advances or transactions which shall either continue Indebtedness or, from time to time, renew Indebtedness. In the event any sums or other things of value that are paid or transferred to or otherwise received by the Bank are rescinded, recovered, required to be returned, set aside, rendered void or otherwise adversely affected in any legal proceeding or for any cause whatsoever, including under any law, rule or regulation relative to bankruptcy, insolvency, fraudulent transfers or other relief of debtors, then this Guaranty shall continue to be effective or shall be revived and reinstated, as necessary, in order to give full effect to the Guarantor's liability hereunder, to the same extent as if such payment, transfer and/or receipt had never occurred. This Guaranty shall not release, modify, revoke or terminate any other guaranty heretofore or hereafter executed by the Guarantor; nor shall any other guaranty heretofore or hereafter executed by Guarantor release, modify, revoke or terminate this Guaranty unless such other guaranty specifically refers to this Guaranty and the release, modification, revocation, or termination (as applicable) is accepted by Bank in writing.

(3)     The obligations of the Guarantor hereunder are independent of the obligations of Borrower, and a separate action or actions may be brought and prosecuted against the Guarantor whether action is brought against Borrower or any other guarantor of the Indebtedness or whether Borrower or other guarantor are joined in any such action or actions.

(4)     It is the intent hereof that this obligation of Guarantor shall be and remain unaffected, (a) by the existence or nonexistence, validity or invalidity, of any pledge, assignment, or conveyance given as security; or (b) by any understanding or agreement that any other person, firm, or corporation was or is to execute this or any other guaranty, any of the Loan Documents or other instruments evidencing the Indebtedness, or any part thereof, or any other document or instrument or was or is to provide collateral for any Indebtedness; or (c) by resort on the part of Bank, or failure of Bank to resort, to any other security or remedy for the collection of said Indebtedness; or (d) by the death, bankruptcy, insolvency, dissolution, or incapacitation of the Guarantor, the Borrower, or any other person, and

-1-

in case of any such death or bankruptcy, the failure of Bank to file a claim against the deceased Guarantor's estate or against such bankrupt's estate, or the failure of Bank to otherwise seek remedies as a consequence of such events.

(5)      The Guarantor authorizes Bank, without notice or demand and without affecting the Guarantor's liability hereunder, from time to time, to (a) renew, compromise, extend, accelerate, restate, consolidate, replace, refinance, or otherwise change the time for payment of, or otherwise change the terms of, the Indebtedness or any part thereof, including increasing or decreasing the rate of interest thereof; (b) take and hold security for the payment of this Guaranty or any of the Indebtedness and/or exchange, modify, enforce, waive, and release any such security; (c) apply such security and direct the order or manner of sale thereof as Bank, in its discretion, may determine; and/or (d) release or substitute the Borrower or other obligor, endorser, or other guarantors of all or any part of the Indebtedness (including, without limitation, the Guarantor.)

(6)      The Guarantor waives any right to require Bank (a) to proceed against the Borrower or any other guarantor of the Indebtedness; (b) to protect, preserve, proceed against, or exhaust any security held from Borrower; or (c) to pursue any other remedy in Bank's power whatsoever. The Guarantor waives any defense arising by reason of any disability or other defense of the Borrower or any other guarantor of the Indebtedness (including any defense based on or arising out of the unenforceability of any part of the Indebtedness for any cause whatsoever) or by reason of the cessation from any cause whatsoever of the liability of the Borrower or any other guarantor of the Indebtedness. Until all Indebtedness shall have been paid in full, even though such Indebtedness is in excess of Guarantor's liability hereunder, Guarantor shall not have any rights of subrogation, reimbursement, contribution, or indemnity or any right of recourse to any assets or properties of the Borrower or any other guarantor of the Indebtedness, and Guarantor waives (i) all such rights, if any, of subrogation, reimbursement, contribution, indemnity and recourse, (ii) any right to enforce any remedy which Bank now has or may hereafter have against the Borrower or any other guarantor of the Indebtedness, and (iii) any benefit of, and any right of recourse to or to participate in, any security now or hereafter held by Bank or otherwise constituting collateral for any Indebtedness. Guarantor waives all presentments, demands for performance, notices of nonperformance, notice of acceleration, notice of intent to accelerate, protests, notices of protest, notices of dishonor, and notices of acceptance of this Guaranty and of the existence, creation, or incurrence of new or additional Indebtedness, and waives any rights or defenses based, in whole or in part, upon an offset by the Borrower or any other guarantor of the Indebtedness against any obligation or indebtedness now or hereafter owed to the Borrower. Guarantor waives the benefit of any statute of limitations or other defenses affecting the Borrower's liability for the Indebtedness or the enforcement thereof or the Guarantor's liability hereunder or the enforcement thereof, and the Guarantor further agrees that any payment by the Borrower or other circumstances that operate to toll any statute of limitations as to the Borrower shall operate to toll the statute of limitations as to the Guarantor. Guarantor waives any rights to exemption under the Constitution of the State of Alabama or any other state as to any Indebtedness or obligation created hereunder.

(7)      In addition to all liens upon, and rights of setoff against, moneys, securities, or other property of the Guarantor given to Bank by law, Bank shall have and hereby is granted a lien upon, security interest in, and a right of setoff against, all moneys, securities, and other property of the Guarantor now or hereafter in the possession of or on deposit with Bank, whether held in a general or special account or deposit, or for safekeeping or otherwise; and every such lien, security interest and right of setoff may be exercised without demand upon or notice to the Guarantor. No lien, security interest, or right of setoff shall be deemed to have been waived by any act or conduct on the part of Bank, or by any failure to exercise such right of setoff, or to enforce such lien or security interest, or by any delay in so doing, and every right of setoff and lien shall continue in full force and effect until such right of setoff or lien specifically is waived or released in a written instrument executed by Bank.

(8)      Any indebtedness of Borrower to Guarantor, whether now existing, hereafter arising, secured or unsecured, and if secured, the security for same hereby is subordinated to the Indebtedness; and such subordinated

-2-

Indebtedness, if Bank so requests, shall be collected, enforced, and received by Guarantor as trustee for Bank and be paid over to Bank on account of the Indebtedness, but without reducing or affecting in any manner the liability of Guarantor under this Guaranty.

(9)     If Borrower or Guarantor is a corporation, partnership, joint venture, trust, limited liability company, business organization, or enterprise, it shall not be necessary for Bank to inquire into the power or authority of Borrower or Guarantor or the officers, directors, partners, trustees, or agents acting or purporting to act on its behalf.

(10)     Guarantor shall pay attorney's fees and all other costs and expenses which are incurred by Bank in the enforcement of this Guaranty.

(11)     No right or power of Bank hereunder shall be deemed to have been waived by any act or conduct or failure or delay to act on the part of Bank or any of its agents, employees or representatives; and the terms and provisions hereof may not be waived, altered, modified, or amended except in writing duly signed by a duly authorized officer of the Bank. In the event that Bank shall waive in writing any provision or requirement hereunder, such waiver shall be effective only for the specific purposes, circumstances and duration stated in said waiver. Bank may, without notice, assign this Guaranty in whole or in part and each reference herein to Bank shall be deemed to include its successors and assigns. The provisions of this Guaranty are binding upon the Guarantor and the heirs, distributees, executors, administrators, legal representatives, personal representatives, successors and assigns thereof, and shall inure to the benefit of the Bank and each of its successors and assigns. THIS GUARANTY AND THE RIGHTS AND OBLIGATIONS OF THE GUARANTOR AND THE BANK HEREUNDER SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF ALABAMA. Guarantor acknowledges that any cause of action arising under this Guaranty will be a cause of action arising from an Alabama transaction, that it is foreseeable that this Guaranty and the performance hereof have and will have significant effects in the State of Alabama, and that Guarantor's execution of this Guaranty will subject Guarantor to judicial jurisdiction in the State of Alabama. If any of the provisions of this Guaranty or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of the provisions of this Guaranty, or the application of such provision or provisions to persons or circumstances other than those as to whom or which it is held invalid or unenforceable, shall not be affected thereby, and every provision of this Guaranty shall be valid and enforceable to the fullest extent permitted by law. Except as expressly set forth in this Guaranty, this Guaranty is the entire agreement of the Guarantor and the Bank with respect to the guarantee of the Indebtedness by the Guarantor, and no representation, understanding, promise or condition concerning the subject matter hereof shall be binding upon the Bank unless expressed herein. Any notice by Guarantor to the Bank shall be effective only upon the actual receipt thereof by an officer of Bank at the address specified below, and in the event no such address is specified, at Bank's principal corporate office in Pensacola, Florida, Attention: President.

(12)     This Guaranty is given under the seal of the Guarantor, and it is intended that this Guaranty is and shall constitute and have the effect of a sealed instrument according to law.

(13)     GUARANTOR HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES THE RIGHT IT MAY HAVE TO TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER, OR IN CONNECTION WITH THIS GUARANTY, THE INDEBTEDNESS, AND ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH OR THEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER WRITTEN OR ORAL) OR ACTIONS OF BANK, BORROWER OR GUARANTOR. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE BANK ACCEPTING THIS GUARANTY AND MAKING THE CREDIT ACCOMMODATIONS TO THE BORROWER.

-3-

(14)    Guarantor represents and warrants to Bank that (i) Guarantor has no counterclaims, setoffs or defenses to the rights of Bank under the Prior Guaranty, the Prior Note, the Note, or any other documents or instrument evidencing, securing or otherwise executed in connection with any indebtedness of Borrower to Bank, and (ii) Guarantor has reviewed and approved the terms of the Note.

**IN WITNESS WHEREOF**, the undersigned Guarantor has executed this Guaranty effective as of August 27, 2008.

CHRISTOPHER ANDREW YARBOROUGH

-4-

# Exhibit 2

IN THE CIRCUIT COURT FOR JEFFERSON COUNTY, ALABAMA

SYNOVUS BANK                             )
                                         )
      Plaintiff,                         )
                                         )
v.                                       )        Case No. 2010-902180, previously
                                         )        consolidated with CV-2010-902186-GWN
PLASH ISLAND RESORT, LLC, et al.         )
                                         )
      Defendants.                        )
                                         )

## AFFIDAVIT OF ATTORNEY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

STATE OF ALABAMA     )
                     )
JEFFERSON COUNTY     )

      Before me, this undersigned authority, personally appeared Clifton C. Mosteller, who, being known to me and being by me duly sworn, deposes and says as follows:

      1.     I am Clifton C. Mosteller, an attorney at the law firm of Burr & Forman LLP. I am over twenty-one (21) years of age. I make this affidavit in support of the *Motion for Summary Judgment and Brief in Support Thereof* filed by the Plaintiff in the above-styled civil action.

      2.     I am admitted to practice law in the State of Alabama. I am familiar with the fees charged by Burr & Forman LLP to its clients, and I am familiar with the fees that are being charged to the Plaintiff by Burr & Forman LLP in connection with this action.

      3.     Burr & Forman LLP is currently representing Synovus in this action against the Defendants (with the exception of Defendants Howard, Harper, and Parker) and I have first-hand knowledge of all services rendered by Burr & Forman on behalf of Synovus. The following services have been provided to Synovus: review of loan and related documents; conferences and

1880253 v1

discussions with officers and employees of the Plaintiff; correspondence with officers and employees of the Plaintiff; conferences and discussion, both in person, via email, and via telephone, with opposing counsel regarding this action; legal research; preparation and filing of several pleadings and responsive motions on behalf of the Plaintiff, including, but not limited to, Plaintiff's Answers, motions for default judgment, motions to consolidate related cases, motion summary judgment and related pleadings; coordination and preparation of extensive discovery responses served upon Plaintiff by multiple defendants; the advisement of the Plaintiff regarding the status of this action from time to time; and other services.

4.     The Loan Documents[1] at issue in this matter provide that Plaintiff is entitled to recover its attorneys' fees and expenses in connection with enforcement of its rights under those documents and in connection with collection of any outstanding sums owed by the Defendants in this matter to Plaintiff. Specifically, the Note at issue provide that the "Borrower agrees to pay reasonable attorneys' fees and costs actually incurred by the holder hereof in collecting or attempting to collect this Note, whether by suit of otherwise." *See* The Affidavit of Joel Bodiford, *Exhibits A*, filed contemporaneously herewith. Similarly, the relevant Guaranty Agreements state, "[g]uarantor shall pay attorneys' fees and all other costs and expenses which are incurred by Bank in the enforcement of the Guaranty." *See* The Affidavit of Joel Bodiford, Exhibits B through N, filed contemporaneously herewith.

5.     As of December 31, 2010, the fees and expenses incurred by Synovus for legal services performed by Burr & Forman LLP in connection with this action total $46,880.62 Further, Plaintiff is expected to incur additional fees and expenses in connection with the filing of its Motion for Summary Judgment.

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Plaintiff's Motion for Summary Judgment.

6.      Based on the services rendered to Plaintiff in this action, the time expended, expertise required, amount of indebtedness being collected and rates customarily charged, I am of the opinion that Burr & Forman LLP's fees and expenses for services rendered in connection with this action, and estimated future fees and expenses, are reasonable.

[Remainder of Page intentionally left blank]

FURTHER AFFIANT SAYETH NAUGHT.

_____

CLIFTON C. MOSTELLER

STATE OF ALABAMA          )

JEFFERSON COUNTY          )

I, the undersigned, a Notary Public in and for said State and County, hereby certify that Clifton C. Mosteller, is signed to the foregoing, and who is known to me, acknowledged before me on this day that being informed of the contents of this document, he, executed this document voluntarily on the day the same bears date.

Given under my hand and official seal this the 14th day of ~~December, 2010~~ January 2011.

_____

Notary Public

My commission expires: 7/2/11

(SEAL)

**Exhibit 3**

IN THE CIRCUIT COURT FOR JEFFERSON COUNTY, ALABAMA

SYNOVUS BANK )
)
    Plaintiff, )
)
v. )    **Case No. 2010-902180, previously**
)   **consolidated with CV-2010-902186-GWN**
PLASH ISLAND RESORT, LLC, et al. )
)
    Defendants. )
)

## AFFIDAVIT OF ATTORNEY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

STATE OF ALABAMA )
)
JEFFERSON COUNTY )

    Before me, this undersigned authority, personally appeared Brian Walding, who, being known to me and being by me duly sworn, deposes and says as follows:

    1.    I am Brian Walding, an attorney at the law firm of Walding LLC. I am over twenty-one (21) years of age. I make this affidavit in support of the *Motion for Summary Judgment and Brief in Support Thereof* filed by the Plaintiff in the above-styled civil action.

    2.    I am admitted to practice law in the State of Alabama. I am familiar with the fees charged by Walding, LLC to its clients, and I am familiar with the fees that are being charged to the Plaintiff by Walding, LLC in connection with this action.

    3.    Walding, LLC is currently representing the Plaintiff in this action against Defendants Harper, Howard, and Parker (collectively the "Defendants") and I have first-hand knowledge of all services rendered by Walding, LLC on behalf of the Plaintiff. The following services have been provided to Plaintiff: review of loan and related documents; conferences and discussions with officers and employees of the Plaintiff; correspondence with officers and

{00014482.DOC . 2}

employees of the Plaintiff; conferences and discussion, both in person, via email, and via telephone, with opposing counsel regarding this action; legal research; preparation and filing of several pleadings and responsive motions on behalf of the Plaintiff, including, but not limited to, Plaintiff's Answers, motions for default judgment, motions to consolidate related cases, motion summary judgment and related pleadings; coordination and preparation of extensive discovery responses served upon Plaintiff by multiple defendants; the advisement of the Plaintiff regarding the status of this action from time to time; and other services.

4.     The Loan Documents[1] at issue in this matter provide that Plaintiff is entitled to recover its attorneys' fees and expenses in connection with enforcement of its rights under those documents and in connection with collection of any outstanding sums owed by the Defendants in this matter to Plaintiff. Specifically, the Note at issue provide that the "Borrower agrees to pay reasonable attorneys' fees and costs actually incurred by the holder hereof in collecting or attempting to collect this Note, whether by suit of otherwise." *See* The Affidavit of Joel Bodiford, Exhibits A, filed contemporaneously herewith. Similarly, the Defendants' Guaranty Agreements state, "[g]uarantor shall pay attorneys' fees and all other costs and expenses which are incurred by Bank in the enforcement of the Guaranty." *See* The Affidavit of Joel Bodiford, Exhibits B through O, filed contemporaneously herewith.

5.     As of December 31, 2010, the fees and expenses incurred by Synovus for legal services performed by Walding, LLC in connection with this action total $3,235.83 (which consist of $3,234.13 in fees, and $1.70 in expenses). Further, Plaintiff is expected to incur additional fees and expenses in connection with the filing of its Motion for Summary Judgment.

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Plaintiff's Motion for Summary Judgment.

6.    Based on the services rendered to Plaintiff in this action, the time expended, expertise required, amount of indebtedness being collected and rates customarily charged, I am of the opinion that Walding, LLC's fees and expenses for services rendered in connection with this action, and estimated future fees and expenses, are reasonable.

[Remainder of Page intentionally left blank]

FURTHER AFFIANT SAYETH NAUGHT.

BRIAN WALDING


STATE OF ALABAMA            )

JEFFERSON COUNTY            )

I, the undersigned, a Notary Public in and for said State and County, hereby certify that Brian Walding, is signed to the foregoing, and who is known to me, acknowledged before me on this day that being informed of the contents of this document, he, executed this document voluntarily on the day the same bears date.

Given under my hand and official seal this the 13 day of January, 2011.

Notary Public

My commission expires:



AlaFile E-Notice

01-CV-2010-902180.00

Judge: COMPLEX LITIGATION DOCKET

To: CLIFTON C. MOSTELLER
clifton.mosteller@burr.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

SYNOVUS BANK v. PLASH ISLAND RESORT LLC ET AL
01-CV-2010-902180.00

*The following matter was FILED on 1/14/2011 4:38:57 PM*

**C001 SYNOVUS BANK**

MOTION FOR DEFAULT JUDGMENT

[Attorney: MOSTELLER CLIFTON CHARLES]

Notice Date:      1/14/2011 4:38:57 PM

*ANNE-MARIE ADAMS*
*CIRCUIT COURT CLERK*
*JEFFERSON COUNTY, ALABAMA*
*JEFFERSON COUNTY, ALABAMA*
*BIRMINGHAM, AL 35203*

205-325-5355
anne-marie.adams@alacourt.gov



AlaFile E-Notice

01-CV-2010-902180.00

Judge: COMPLEX LITIGATION DOCKET

To:  DENNEY DAMON PATRICK
     420 20TH ST N STE 3400
     BIRMINGHAM, AL 35203

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

SYNOVUS BANK v. PLASH ISLAND RESORT LLC ET AL
01-CV-2010-902180.00

The following matter was FILED on 1/14/2011 4:38:57 PM

**C001 SYNOVUS BANK**
MOTION FOR DEFAULT JUDGMENT
[Attorney: MOSTELLER CLIFTON CHARLES]

Notice Date:      1/14/2011 4:38:57 PM

ANNE-MARIE ADAMS
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
BIRMINGHAM, AL 35203

205-325-5355
anne-marie.adams@alacourt.gov



AlaFile E-Notice

01-CV-2010-902180.00

Judge: COMPLEX LITIGATION DOCKET

To: PLASH ISLAND RESORT LLC (PRO SE)
C/O JOSEPH F YARBOROUGH
374 WEST CANAL DRIVE
GULF SHORES, AL 36542

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

SYNOVUS BANK v. PLASH ISLAND RESORT LLC ET AL
01-CV-2010-902180.00

The following matter was FILED on 1/14/2011 4:38:57 PM

**C001 SYNOVUS BANK**

MOTION FOR DEFAULT JUDGMENT

[Attorney: MOSTELLER CLIFTON CHARLES]

Notice Date:     1/14/2011 4:38:57 PM

ANNE-MARIE ADAMS
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
BIRMINGHAM, AL 35203

205-325-5355
anne-marie.adams@alacourt.gov



AlaFile E-Notice

01-CV-2010-902180.00

Judge: COMPLEX LITIGATION DOCKET

To:   JOSEPH JOE ALAN
      jjoseph@burr.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

SYNOVUS BANK v. PLASH ISLAND RESORT LLC ET AL
01-CV-2010-902180.00

*The following matter was FILED on 1/14/2011 4:38:57 PM*

**C001 SYNOVUS BANK**

MOTION FOR DEFAULT JUDGMENT

[Attorney: MOSTELLER CLIFTON CHARLES]

Notice Date:     1/14/2011 4:38:57 PM

ANNE-MARIE ADAMS
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
BIRMINGHAM, AL 35203

205-325-5355
anne-marie.adams@alacourt.gov



AlaFile E-Notice

01-CV-2010-902180.00

Judge: COMPLEX LITIGATION DOCKET

To: MOSTELLER CLIFTON CHARLES
clifton.mosteller@burr.com

# NOTICE OF ELECTRONIC FILING

*IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA*

SYNOVUS BANK v. PLASH ISLAND RESORT LLC ET AL
01-CV-2010-902180.00

The following matter was FILED on 1/14/2011 4:38:57 PM

*C001 SYNOVUS BANK*
MOTION FOR DEFAULT JUDGMENT
[Attorney: MOSTELLER CLIFTON CHARLES]

Notice Date: 1/14/2011 4:38:57 PM

ANNE-MARIE ADAMS
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
*JEFFERSON COUNTY, ALABAMA*
BIRMINGHAM, AL 35203

205-325-5355
anne-marie.adams@alacourt.gov



AlaFile E-Notice

01-CV-2010-902180.00

Judge: COMPLEX LITIGATION DOCKET

To: BENTON LEE RIMES
lbenton@bcattys.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

SYNOVUS BANK v. PLASH ISLAND RESORT LLC ET AL
01-CV-2010-902180.00

The following matter was FILED on 1/14/2011 4:38:57 PM

**C001 SYNOVUS BANK**

MOTION FOR DEFAULT JUDGMENT

[Attorney: MOSTELLER CLIFTON CHARLES]

Notice Date:     1/14/2011 4:38:57 PM

ANNE-MARIE ADAMS
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
BIRMINGHAM, AL 35203

205-325-5355
anne-marie.adams@alacourt.gov



AlaFile E-Notice

01-CV-2010-902180.00

Judge: COMPLEX LITIGATION DOCKET

To:  HAZELTON AMY MAY
     ahazelton@bcattys.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

SYNOVUS BANK v. PLASH ISLAND RESORT LLC ET AL
01-CV-2010-902180.00

The following matter was FILED on 1/14/2011 4:38:57 PM

**C001 SYNOVUS BANK**
MOTION FOR DEFAULT JUDGMENT
[Attorney: MOSTELLER CLIFTON CHARLES]

Notice Date:     1/14/2011 4:38:57 PM

ANNE-MARIE ADAMS
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
BIRMINGHAM, AL 35203

205-325-5355
anne-marie.adams@alacourt.gov



AlaFile E-Notice

01-CV-2010-902180.00

Judge: COMPLEX LITIGATION DOCKET

To: BARZE RONALD BRUCE JR
bbarze@balch.com

# NOTICE OF ELECTRONIC FILING

*IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA*

SYNOVUS BANK v. PLASH ISLAND RESORT LLC ET AL
01-CV-2010-902180.00

The following matter was FILED on 1/14/2011 4:38:57 PM

**C001 SYNOVUS BANK**
MOTION FOR DEFAULT JUDGMENT
[Attorney: MOSTELLER CLIFTON CHARLES]

Notice Date:     1/14/2011 4:38:57 PM

ANNE-MARIE ADAMS
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
BIRMINGHAM, AL 35203

205-325-5355
anne-marie.adams@alacourt.gov



AlaFile E-Notice

01-CV-2010-902180.00

Judge: COMPLEX LITIGATION DOCKET

To: ADAMS AMY DAVIS
aadams@balch.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

SYNOVUS BANK v. PLASH ISLAND RESORT LLC ET AL
01-CV-2010-902180.00

The following matter was FILED on 1/14/2011 4:38:57 PM

**C001 SYNOVUS BANK**

MOTION FOR DEFAULT JUDGMENT

[Attorney: MOSTELLER CLIFTON CHARLES]

Notice Date:     1/14/2011 4:38:57 PM

ANNE-MARIE ADAMS
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
BIRMINGHAM, AL 35203

205-325-5355
anne-marie.adams@alacourt.gov



AlaFile E-Notice

01-CV-2010-902180.00

Judge: COMPLEX LITIGATION DOCKET

To:  CLIFTON C. MOSTELLER
     clifton.mosteller@burr.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

SYNOVUS BANK v. PLASH ISLAND RESORT LLC ET AL
01-CV-2010-902180.00

The following matter was FILED on 1/14/2011 4:56:54 PM

**C001 SYNOVUS BANK**

MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 56

[Attorney: MOSTELLER CLIFTON CHARLES]

Notice Date:    1/14/2011 4:56:54 PM

ANNE-MARIE ADAMS
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
BIRMINGHAM, AL 35203

*205-325-5355*
anne-marie.adams@alacourt.gov



AlaFile E-Notice

01-CV-2010-902180.00

Judge: COMPLEX LITIGATION DOCKET

To: DENNEY DAMON PATRICK
420 20TH ST N STE 3400
BIRMINGHAM, AL 35203

---

# NOTICE OF ELECTRONIC FILING

---

*IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA*

SYNOVUS BANK v. PLASH ISLAND RESORT LLC ET AL
01-CV-2010-902180.00

The following matter was FILED on 1/14/2011 4:56:54 PM

**C001 SYNOVUS BANK**

MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 56

[Attorney: MOSTELLER CLIFTON CHARLES]

Notice Date:     1/14/2011 4:56:54 PM

ANNE-MARIE ADAMS
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
BIRMINGHAM, AL 35203

205-325-5355
anne-marie.adams@alacourt.gov



AlaFile E-Notice

01-CV-2010-902180.00

Judge: COMPLEX LITIGATION DOCKET

To: PLASH ISLAND RESORT LLC (PRO SE)
C/O JOSEPH F YARBOROUGH
374 WEST CANAL DRIVE
GULF SHORES, AL 36542

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

SYNOVUS BANK v. PLASH ISLAND RESORT LLC ET AL
01-CV-2010-902180.00

The following matter was FILED on 1/14/2011 4:56:54 PM

**C001 SYNOVUS BANK**

MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 56

[Attorney: MOSTELLER CLIFTON CHARLES]

Notice Date:     1/14/2011 4:56:54 PM

ANNE-MARIE ADAMS
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
BIRMINGHAM, AL 35203

205-325-5355
anne-marie.adams@alacourt.gov



**AlaFile E-Notice**

01-CV-2010-902180.00

Judge: COMPLEX LITIGATION DOCKET

To:  JOSEPH JOE ALAN
     jjoseph@burr.com

# NOTICE OF ELECTRONIC FILING

*IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA*

SYNOVUS BANK v. PLASH ISLAND RESORT LLC ET AL
01-CV-2010-902180.00

The following matter was FILED on 1/14/2011 4:56:54 PM

**C001 SYNOVUS BANK**

MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 56

[Attorney: MOSTELLER CLIFTON CHARLES]

Notice Date:     1/14/2011 4:56:54 PM

ANNE-MARIE ADAMS
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
BIRMINGHAM, AL 35203

205-325-5355
anne-marie.adams@alacourt.gov



*AlaFile E-Notice*

01-CV-2010-902180.00

Judge: COMPLEX LITIGATION DOCKET

To: MOSTELLER CLIFTON CHARLES
clifton.mosteller@burr.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

SYNOVUS BANK v. PLASH ISLAND RESORT LLC ET AL
01-CV-2010-902180.00

The following matter was FILED on 1/14/2011 4:56:54 PM

**C001 SYNOVUS BANK**

MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 56

[Attorney: MOSTELLER CLIFTON CHARLES]

Notice Date:     1/14/2011 4:56:54 PM

ANNE-MARIE ADAMS
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
BIRMINGHAM, AL 35203

205-325-5355
anne-marie.adams@alacourt.gov



AlaFile E-Notice

01-CV-2010-902180.00

Judge: COMPLEX LITIGATION DOCKET

To:   BENTON LEE RIMES
      lbenton@bcattys.com

---

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

SYNOVUS BANK v. PLASH ISLAND RESORT LLC ET AL
01-CV-2010-902180.00

The following matter was FILED on 1/14/2011 4:56:54 PM

**C001 SYNOVUS BANK**

MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 56

[Attorney: MOSTELLER CLIFTON CHARLES]

Notice Date:     1/14/2011 4:56:54 PM

ANNE-MARIE ADAMS
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
BIRMINGHAM, AL 35203

205-325-5355
anne-marie.adams@alacourt.gov



AlaFile E-Notice

01-CV-2010-902180.00

Judge: COMPLEX LITIGATION DOCKET

To:  HAZELTON AMY MAY
      ahazelton@bcattys.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

SYNOVUS BANK v. PLASH ISLAND RESORT LLC ET AL
01-CV-2010-902180.00

The following matter was FILED on 1/14/2011 4:56:54 PM

**C001 SYNOVUS BANK**

MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 56

[Attorney: MOSTELLER CLIFTON CHARLES]

Notice Date:      1/14/2011 4:56:54 PM

ANNE-MARIE ADAMS
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
BIRMINGHAM, AL 35203

205-325-5355
anne-marie.adams@alacourt.gov



AlaFile E-Notice

01-CV-2010-902180.00

Judge: COMPLEX LITIGATION DOCKET

To:  BARZE RONALD BRUCE JR
     bbarze@balch.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

SYNOVUS BANK v. PLASH ISLAND RESORT LLC ET AL
01-CV-2010-902180.00

The following matter was FILED on 1/14/2011 4:56:54 PM

**C001 SYNOVUS BANK**

MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 56

[Attorney: MOSTELLER CLIFTON CHARLES]

Notice Date:    1/14/2011 4:56:54 PM

ANNE-MARIE ADAMS
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
BIRMINGHAM, AL 35203

205-325-5355
anne-marie.adams@alacourt.gov



AlaFile E-Notice

01-CV-2010-902180.00

Judge: COMPLEX LITIGATION DOCKET

To:  ADAMS AMY DAVIS
     aadams@balch.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

SYNOVUS BANK v. PLASH ISLAND RESORT LLC ET AL
01-CV-2010-902180.00

The following matter was FILED on 1/14/2011 4:56:54 PM

**C001 SYNOVUS BANK**

MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 56

[Attorney: MOSTELLER CLIFTON CHARLES]

Notice Date:     1/14/2011 4:56:54 PM

ANNE-MARIE ADAMS
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
BIRMINGHAM, AL 35203

205-325-5355
anne-marie.adams@alacourt.gov



AlaFile E-Notice

01-CV-2010-902180.00

Judge: COMPLEX LITIGATION DOCKET

To: CLIFTON C. MOSTELLER
clifton.mosteller@burr.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

SYNOVUS BANK v. PLASH ISLAND RESORT LLC ET AL
01-CV-2010-902180.00

The following matter was FILED on 1/14/2011 4:42:17 PM

**C001 SYNOVUS BANK**

APPLICATION FOR ENTRY OF DEFAULT AGAINST PLASH ISLAND RESORT, LLC

[Attorney: MOSTELLER CLIFTON CHARLES]

Notice Date:     1/14/2011 4:42:17 PM

ANNE-MARIE ADAMS
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
BIRMINGHAM, AL 35203

205-325-5355
anne-marie.adams@alacourt.gov



AlaFile E-Notice

01-CV-2010-902180.00

Judge: COMPLEX LITIGATION DOCKET

To:  DENNEY DAMON PATRICK
     420 20TH ST N STE 3400
     BIRMINGHAM, AL 35203

---

# NOTICE OF ELECTRONIC FILING

---

*IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA*

SYNOVUS BANK v. PLASH ISLAND RESORT LLC ET AL
01-CV-2010-902180.00

The following matter was FILED on 1/14/2011 4:42:17 PM

**C001 SYNOVUS BANK**

APPLICATION FOR ENTRY OF DEFAULT AGAINST PLASH ISLAND RESORT, LLC

[Attorney: MOSTELLER CLIFTON CHARLES]

Notice Date:     1/14/2011 4:42:17 PM

ANNE-MARIE ADAMS
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
BIRMINGHAM, AL 35203

205-325-5355
anne-marie.adams@alacourt.gov



AlaFile E-Notice

01-CV-2010-902180.00

Judge: COMPLEX LITIGATION DOCKET

To: PLASH ISLAND RESORT LLC (PRO SE)
C/O JOSEPH F YARBOROUGH
374 WEST CANAL DRIVE
GULF SHORES, AL 36542

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

SYNOVUS BANK v. PLASH ISLAND RESORT LLC ET AL
01-CV-2010-902180.00

The following matter was FILED on 1/14/2011 4:42:17 PM

**C001 SYNOVUS BANK**

APPLICATION FOR ENTRY OF DEFAULT AGAINST PLASH ISLAND RESORT, LLC

[Attorney: MOSTELLER CLIFTON CHARLES]

Notice Date:     1/14/2011 4:42:17 PM

ANNE-MARIE ADAMS
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
BIRMINGHAM, AL 35203

205-325-5355
anne-marie.adams@alacourt.gov



**AlaFile E-Notice**

01-CV-2010-902180.00

*Judge:* COMPLEX LITIGATION DOCKET

To: JOSEPH JOE ALAN
jjoseph@burr.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

SYNOVUS BANK v. PLASH ISLAND RESORT LLC ET AL
01-CV-2010-902180.00

The following matter was FILED on 1/14/2011 4:42:17 PM

**C001 SYNOVUS BANK**

APPLICATION FOR ENTRY OF DEFAULT AGAINST PLASH ISLAND RESORT, LLC

[Attorney: MOSTELLER CLIFTON CHARLES]

Notice Date:     1/14/2011 4:42:17 PM

ANNE-MARIE ADAMS
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
BIRMINGHAM, AL 35203

205-325-5355
anne-marie.adams@alacourt.gov



AlaFile E-Notice

01-CV-2010-902180.00

Judge: COMPLEX LITIGATION DOCKET

To:  MOSTELLER CLIFTON CHARLES
clifton.mosteller@burr.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

SYNOVUS BANK v. PLASH ISLAND RESORT LLC ET AL
01-CV-2010-902180.00

The following matter was FILED on 1/14/2011 4:42:17 PM

**C001 SYNOVUS BANK**

APPLICATION FOR ENTRY OF DEFAULT AGAINST PLASH ISLAND RESORT, LLC

[Attorney: MOSTELLER CLIFTON CHARLES]

Notice Date:     1/14/2011 4:42:17 PM

ANNE-MARIE ADAMS
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
BIRMINGHAM, AL 35203

205-325-5355
anne-marie.adams@alacourt.gov



AlaFile E-Notice

01-CV-2010-902180.00

*Judge:* COMPLEX LITIGATION DOCKET

To: BENTON LEE RIMES
lbenton@bcattys.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

SYNOVUS BANK v. PLASH ISLAND RESORT LLC ET AL
01-CV-2010-902180.00

The following matter was FILED on 1/14/2011 4:42:17 PM

**C001 SYNOVUS BANK**

APPLICATION FOR ENTRY OF DEFAULT AGAINST PLASH ISLAND RESORT, LLC

[Attorney: MOSTELLER CLIFTON CHARLES]

Notice Date:     1/14/2011 4:42:17 PM

ANNE-MARIE ADAMS
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
BIRMINGHAM, AL 35203

205-325-5355
anne-marie.adams@alacourt.gov



*AlaFile E-Notice*

01-CV-2010-902180.00

Judge: COMPLEX LITIGATION DOCKET

To:  HAZELTON AMY MAY
     ahazelton@bcattys.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

SYNOVUS BANK v. PLASH ISLAND RESORT LLC ET AL
01-CV-2010-902180.00

The following matter was FILED on 1/14/2011 4:42:17 PM

**C001 SYNOVUS BANK**

APPLICATION FOR ENTRY OF DEFAULT AGAINST PLASH ISLAND RESORT, LLC

[Attorney: MOSTELLER CLIFTON CHARLES]

Notice Date:     1/14/2011 4:42:17 PM

ANNE-MARIE ADAMS
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
BIRMINGHAM, AL 35203

205-325-5355
anne-marie.adams@alacourt.gov



AlaFile E-Notice

01-CV-2010-902180.00

Judge: COMPLEX LITIGATION DOCKET

To:  BARZE RONALD BRUCE JR
     bbarze@balch.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

SYNOVUS BANK v. PLASH ISLAND RESORT LLC ET AL
01-CV-2010-902180.00

The following matter was FILED on 1/14/2011 4:42:17 PM

**C001 SYNOVUS BANK**

APPLICATION FOR ENTRY OF DEFAULT AGAINST PLASH ISLAND RESORT, LLC

[Attorney: MOSTELLER CLIFTON CHARLES]

Notice Date:    1/14/2011 4:42:17 PM

ANNE-MARIE ADAMS
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
BIRMINGHAM, AL 35203

205-325-5355
anne-marie.adams@alacourt.gov



AlaFile E-Notice

01-CV-2010-902180.00

Judge: COMPLEX LITIGATION DOCKET

To:  ADAMS AMY DAVIS
     aadams@balch.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

SYNOVUS BANK v. PLASH ISLAND RESORT LLC ET AL
01-CV-2010-902180.00

The following matter was FILED on 1/14/2011 4:42:17 PM

**C001 SYNOVUS BANK**

APPLICATION FOR ENTRY OF DEFAULT AGAINST PLASH ISLAND RESORT, LLC

[Attorney: MOSTELLER CLIFTON CHARLES]

Notice Date:     1/14/2011 4:42:17 PM

ANNE-MARIE ADAMS
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
BIRMINGHAM, AL 35203

205-325-5355
anne-marie.adams@alacourt.gov