

IRPINO LAW FIRM

March 23, 2011

**VIA E-MAIL**
Honorable Sally Shushan
United States Magistrate Judge
Eastern District of Louisiana
500 Poydras Street, Room B-345
New Orleans, LA 70130

      Re:    *In re: MDL 2179 Oil Spill by the Oil Rig "Deepwater Horizon"*
                PRIVILEGE CLAIM ISSUES - MOREL MARITAL PRIVILEGE CLAIMS

Dear Judge Shushan,

      Pursuant to this Court's Order of March 7, 2011, the PSC writes this letter brief in opposition to Brian Morel's marital privilege claims. The PSC outlines below why the marital communications privilege does not apply to any of Mr. Morel's claims.

**I.**    **Factual Background**

      Brian Morel was working for BP as a junior drilling engineer on the Macondo well. His wife, Jade Morel, was working as a production engineer at BP. The first set of Morel e-mails which were produced by BP (with no personal e-mail addresses) show that the Morels' e-mails were sent via the BP e-mail system.

      BP provides several different policies and notices to its employees explicitly stating, among other things, that e-mails sent over the BP system are: a) the property of BP, b) not private, c) subject to monitoring or auditing at any time without notice, and d) subject to potential compulsory disclosure. Excerpts from the pertinent BP policies/notices include:

> - "BP p.l.c., its subsidiary and certain associate companies have proprietary rights in this system and data." (Ex. A - Pop-up screen at the start of a session on Mr. Morel's computer).
>
> - "Personal data, information or electronic communications created or stored on company computers or other electronic media such as hand-held devices are not private." (Ex. B - BP's Code of Conduct Policy at p. 24 of the policy).

- "Records of your electronic communications may be made and used for a variety of reasons, and may be subject to monitoring or auditing at any time without notice." *Id.*

- "All electronic files kept on the e-mail system, or even maintained on other systems or storage devices, are subject to potential compulsory disclosure by subpoena or other lawful order of government or regulatory office(s) or discovery proceedings in a lawsuit." (Ex. D - BP's Global E-mail Policy at p. 2).

- "Failure to disclose or produce such electronic files, or the alteration or deletion of electronic files that are subject to compulsory disclosure, may subject the employee and the Company to civil and/or criminal penalties."

The entirety of BP's e-mail related policies have been attached hereto as Exhibits A through D. For ease of reference, the more comprehensive relevant portions of these policies are as follows:

### Initial Pop-up Screen on BP Computers (excerpt)[1]
BP p.l.c., its subsidiary and certain associate companies have proprietary rights in this system and data. Unauthorized access and non-permitted use of BP's system is unlawful and may result in disciplinary action and/or legal proceedings. Within the bounds of law, electronic transmissions through internal and external networks may be monitored to ensure compliance with internal policies and legitimate businesses purposes. In addition, any use of BP's proprietary system is subject to all BP's policies and procedures including but not limited to the Global Internet Access and Use Policy.

### BP's Code of Conduct Policy (excerpt)[2]
Personal data, information or electronic communications created or stored on company computers or other electronic media such as hand-held devices are not private. Records of your electronic communications may be made and used for a variety of reasons, and may be subject to monitoring or auditing at any time without notice. Keep this in mind and exercise care when you use company electronic media.

### BP's Global E-mail Policy (multiple excerpts)[3]
E-mail is an important business tool made available by BP for employees and others to use as appropriate in performing their work for BP....All electronic files kept on the e-mail system, or even maintained on other systems or storage devices, are subject to potential compulsory disclosure by subpoena or other lawful order of government or regulatory office(s) or discovery proceedings in a lawsuit. Failure to

---

[1] Ex. A

[2] Ex. B - BP's Code of Conduct Policy at p. 24 of the policy. (BP-HZN-2179MDL00405613).

[3] Ex. D - BP's Global E-mail Policy at pp. 1-3.

disclose or produce such electronic files, or the alteration or deletion of electronic files that are subject to compulsory disclosure, may subject the employee and the Company to civil and/or criminal penalties....Whilst respecting privacy principles, BP specifically reserves the right, within the bounds of law, to access electronic communications and computer files for technical maintenance purposes; to assure system security; to comply with company policy and/or legal requirements; as part of investigations into allegations of misconduct, fraud or other wrong doing or for any other business reason.  In such cases, notifying users that their electronic communications are being examined is optional at the company's discretion.

**BP's Digital Systems Use Practice (multiple excerpts)**[4]
Digital Systems (IT systems) and digital information, like physical plant and written records, are important BP assets....Employee processing or storage of Secret information of non-BP devices is prohibited.

It is against the above factual backdrop where we should analyze whether or not Mr. Morel's marital privilege claims are valid, and moreover, whether or not he has waived any such claims.

## II.     Law and Argument

### A.     Legal Standard

The PSC in no way disputes that a marital privilege can exist over written (or electronic) communications between spouses. The question is whether one has a reasonable expectation of privacy in communicating over a work e-mail system. "As with the expectation of privacy in one's home, such an expectation in one's place of work is 'based upon societal expectations that have deep roots in the history of the [Fourth] Amendment.'" *O'Connor v. Ortega*, 480 U.S. 709, 716, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987) (*quoting Oliver v. United States*, 466 U.S. 170, 178 at n. 8, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984). However, an employee's expectation of privacy in the content of offices, desks, and files may be reduced by an employer's practices, procedures, and legitimate regulation over the use of the employer's property. *O'Connor*, 480 U.S. at 717, 107 S.Ct. 1492. Whether an employee has a reasonable expectation of privacy is a matter which much be considered on a case by case basis. *O'Connor*, 480 U.S. at 718, 107 S.Ct. 1492.

Courts have routinely found that employees have no reasonable expectation of privacy in their workplace computers, where the employer has a policy which informs employees that the company owns the computer/e-mail system and the company computers may be monitored. *Muick v. Glenayre Electronics,* 280 F.3d 741 (7th Cir. 2002) (no reasonable expectation of privacy for employee exists where employer gave notice it could inspect laptops it furnished to employees); *See also Thygeson v. U.S. Bancorp,* No. CV-03-467, 2004 WL 2066746, at *20 (D.Or. Sept. 15, 2004) (no reasonable expectation of privacy in computer files and e-mail where employee handbook explicitly warned of employer's right to monitor files and e-mail); *Kelleher v. City of Reading,* No.

---

[4] Ex. D at pp. 1 & 3.

Civ. A. 01-3386, 2002 WL 1067442, at *8 (E.D.Pa. May 29, 2002)(no reasonable expectation of privacy in workplace e-mail where employer's guidelines "explicitly informed employees that there was no such expectation of privacy"); *Garrity v. John Hancock Mutual Life Ins. Co.,* No. Civ. A. 00-12143, 2002 WL 974676, at *1-2 (D.Mass. May 7, 2002) (no reasonable expectation of privacy where, despite the fact that the employee created a password to limit access, the company periodically reminded employees that the company e-mail policy prohibited certain uses, the e-mail system belonged to the company, although the company did not intentionally inspect e-mail usage, it might do so where there were business or legal reasons for same).

Judge Fallon's decision in *Miller v. Blattner*, 676 F. Supp. 2d 485 (E.D. La. 2009), is consistent with the aforementioned jurisprudence, and held in pertinent part that:

> In this case, Allpax had an express policy which provided that all emails, personal or professional, that were contained on Allpax computers were the property of Allpax. Thus, Miller could not have had a reasonable expectation over these documents.

Counsel for Mr. Morel also cites to the *Miller* case, however, they seem to skip over the fact that *Miller* first determined that the employee could not have a reasonable expectation of privacy over e-mails where the company policy stated that the company owned the e-mails. Just like the employer in Miller, BP had a policy stating that it owned the employee's e-mails.[5]

### B. Waiver of Marital Privilege

BP provides to its employees at least four (4) different e-mail related polices and/or notifications which eliminate any reasonable expectation of privacy that a BP employee could have relative to company e-mails. Based on these policies and notices, as well as the fact that both spouses used the BP e-mail system, there are multiple reasons why no reasonable of expectation of privacy existed, and consequently, why Mr. Morel's marital privilege claims have been waived. These reasons are set forth below.

#### 1. The e-mails are the property of BP.

BP unequivocally states that e-mails sent by employees (on BP equipment or over BP servers) are the property of BP. This fact is stated in the pop-up notification on Mr. Morel's computer and in multiple BP policies.[6] Logically, it is very difficult to reason that one should have an expectation of privacy over something one does not own. This may be why some courts have

---

[5] Ex. A (Pop-up screen that appeared at the start of a session on Mr. Morel's computer containing the following pertinent language: "BP p.l.c., its subsidiary and certain associate companies have proprietary rights in this system and data."); *See also* Ex. D at p. 1 "Digital Systems (IT systems) and digital information, like physical plant and written records, are important BP assets.").

[6] *See* Ex. A; Ex. B at p. 24, Ex. C at p. 1, Ex. D at p. 1.

relied on "lack of ownership" as a primary basis for disallowing marital privilege and/or privacy claims.[7]

### 2. The e-mails were "not private."

BP's Code of Conduct policy states that "[p]ersonal data, information or **electronic communications** created or stored on company computers or other electronic media such as hand-held devices **are not private**." (Emphasis added).[8] In the context of Mr. Morel's marital privilege claims, this BP policy begs the question: How can one have a reasonable expectation of privacy when sending an e-mail over a system which has a stated rule that the e-mail is not private? The answer is that one cannot have any expectation of privacy, let along a reasonable one.

### 3. The e-mails were "subject to monitoring or auditing at any time without notice."

BP's Code of Conduct policy also states that "[r]ecords of your electronic communications may be made and used for a variety of reasons, and **may be subject to monitoring or auditing at any time without notice.**"[9] There can be little if any reasonable expectation of privacy where your employer states that company e-mails are subject to such oversight. This is another fact which courts rely upon as a primary basis for disallowing marital privilege and/or privacy claims.[10]

### 4. The e-mails were "subject to potential compulsory disclosure."

This policy has particular relevance to the matters herein. BP specifically told and warned its employees that "**[a]ll electronic files kept on the e-mail system**, or even maintained on other systems or storage devices, **are subject to potential compulsory disclosure** by subpoena or other lawful order of government or regulatory office(s) **or discovery proceedings in a lawsuit**."[11] Knowing that its business is highly regulated and litigation, BP made special efforts to notify its employees of the fact that their e-mails may have to be produced for various regulatory and/or legal reasons. Thus, not only was Mr. Morel on notice that his e-mails were not private and could be monitored or audited by BP, but he was also on notice that his e-mails could be disclosed to others for reasons outside of BP's control.

---

[7] *United States v. Etkin*, 2008 WL 482281, No. 07-CR-913 at *3 (S.D.N.Y. Feb. 20, 2008); *Muick v. Glenayre Electronics*, 280 F.3d 741 (7th Cir. 2002); *See also Thygeson v. U.S. Bancorp*, No. CV-03-467, 2004 WL 2066746, at *20 (D.Or. Sept. 15, 2004).

[8] Ex. B - BP's Code of Conduct Policy at p. 24 of the policy. (BP-HZN-2179MDL00405613).

[9] *Id.*

[10] *Id.*

[11] Ex. D - BP's Global E-mail Policy at p. 2.

**5.    The e-mails were sent over BP's system by <u>both</u> Brian Morel and by Jade Morel.**

Because Brian Morel and Jade Morel each worked for BP and each used their company e-mail systems, there is a lessened expectation of privacy. As opposed to a situation where an employee sends an e-mail his/her spouse's private e-mail account (e.g., yahoo, hotmail, gmail, etc.), here, both employees'/spouses' e-mails are subject to BP policies. Thus, with respect to the e-mails in question: 1) neither Brian or Jade owned the e-mail, rather, BP owned both, 2) neither Brian or Jade had any privacy with their e-mail, 3) both Brian's and Jade's e-mails were "subject to monitoring or auditing at any time without notice," and 4) both Brian's and Jade's e-mails were "subject to potential compulsory disclosure." Consequently, there was "twice the reason" to have a lessened expectation of privacy.

The above listed facts each individually support the PSC's waiver argument. Each BP policy/notification sends the message that BP employee e-mails are not private. Certainly, when taken as a whole, BP's e-mail policies eliminate any reasonable expectation of privacy which BP employees couldhave.

Finally, the PSC disputes the claim that "the references to Mr. Morel's work on the Macondo well have limited, if any, probative value to the issues in these proceedings."[12] The PSC respectfully suggests that the information contained therein is highly relevant to BP's liability in this matter. In fact, the relevance to BP's liability is likely the true reason why BP initiated these marital privilege claims on Mr. Morel's behalf. To the extent that Mr. Morel is concerned with anything other than topics relating to BP's liability, he need not have any concern. The PSC will agree not to challenge any Morel e-mails which are unrelated to the facts of this case. The PSC is not seeking Mr. Morel's e-mails about lunch plans, the weather, etc. Otherwise, the PSC requests that this Court find that the Mr. Morels has waived any marital privilege claims relative to e-mails which he sent over the BP company system.

Respectfully submitted,

Anthony D. Irpino

Attachments

cc:   William W. Taylor, III, Esq. (via E-Mail)
      Amit Mehta, Esq. (via E-Mail)

---

[12] *See* March 16, 2011 letter brief from W. Taylor at p. 4, ¶4.