

**ZUCKERMAN SPAEDER LLP**

1800 M STREET, NW   SUITE 1000
WASHINGTON, DC 20036-5807
202.778.1800   202.822.8106 fax   www.zuckerman.com

William W. Taylor, III
(202) 778-1810
wtaylor@zuckerman.com

March 25, 2011

**Via Electronic Mail**

The Honorable Sally Shushan
Magistrate - Division 1
U.S. District Court for the
   Eastern District of Louisiana
500 Poydras Street
Room B345
New Orleans, LA  70130

Re:   BP Employee Brian Morel's Assertion of the Marital Privilege

Dear Judge Shushan:

On behalf of BP employee Brian Morel, undersigned counsel respectfully submits this response to the PSC's letter to the Court dated March 23, 2011. The PSC asks the Court to take the dramatic step of making available in this multi-district litigation, involving hundreds of parties and lawyers, dozens of intimate communications between Mr. Morel and his wife. Neither the BP policies that the PSC selectively cites, nor the inapposite case law on which it relies, supports the PSC's overreaching demand for the Morels' marital communications.

**Whether the Morels Had a "Reasonable Expectation of Privacy" Is Not The Correct Framework For Assessing a Marital Communications Privilege Claim.**

We start with the proper standard for the marital privilege analysis, because the PSC misstates it in its memorandum. The question is not whether the Morels had a "reasonable expectation of privacy" in the emails in the Fourth Amendment or tort law sense, as the PSC contends. *See id.* at 3.[1] Rather, the question is whether the PSC has carried its burden of

---

[1] Each of the cases relied upon by the PSC involved the broader question whether the plaintiff had a right to privacy in a workplace computer, under either the Constitution or state law. *O'Connor v. Ortega*, 466 U.S. 170 (1984), addressed whether a state employer was required to obtain a warrant before searching a state employee's office. In *Muick v. Glenayre Elec.*, 280 F.3d 741 (7th Cir. 2002), the question was whether plaintiff's private employer had violated his constitutional rights when, at the request of law enforcement, it had made a warrantless seizure of his work computer that was suspected to contain child pornography.

*Miller v. Blattner*, 676 F. Supp. 2d 485, 497 (E.D. La. 2009), *Tygeson v. U.S. Bancorp*, No. CV-03-467, 2004 WL 2066746, at *18 (D. Or. Sept. 15, 2004), and *Kelleher v. City of Reading*, No. CIV.A.01-3386, 2002 WL 1067442, at *7 (E.D. Pa. May 29, 2002), all involved state-law tort claims for invasion of privacy in which the plaintiffs had to prove that their "solitude" or "seclusion" in work computers had been invaded. *Garrity v. John*

 **ZUCKERMAN SPAEDER LLP**

The Honorable Sally Shushan
March 25, 2011
Page 2

overcoming the presumption that the privilege applies by demonstrating that, "because of [their] nature or the circumstances under which [they were] made, [the Morels' communications were] *obviously* not intended to be confidential." *Wolfle v. United States*, 291 U.S. 7, 14 (1934) (emphasis added); *see also Pereira v. United States*, 347 U.S. 1, 6 (1954) ("presumption may be overcome by proof of facts showing that they were not intended to be private").

The answer to that question is "no."

### The PSC Has Not Offered Proof That Overcomes the Presumption of Privilege.

Before turning to the evidence that the PSC relies upon to pierce the privilege, it is important to point out that the PSC has not shown that the Morels shared the communications at issue with third parties or that they expected anyone else would see or read them. To the contrary, the intimate and personal nature of the emails compellingly demonstrates that the Morels intended their communications to be meant for them, and for them alone. Nor has the PSC shown that the Morels' emails were easily or readily accessible by ordinary BP employees. They were not.

The BP policies that the PSC relies upon do not overcome the presumption that the Morels' communications are privileged. First, contrary to the PSC's assertion, BP has not adopted a policy that makes personal emails the property of BP. BP's "Global Document (including e-Document) Management Policy" provides that "*company documents* are the property of the company and not the author or custodian of those documents." Ex. A (emphasis added). The policy's definition of "document" does not include personal emails. "Document" is defined to mean "any form of recorded information created or maintained for use at a later date, originating in or received by the company *for the conduct of business operations and activities.*" *Id.* at 1-2 (emphasis added). Because the Morels' emails were not made to conduct the business operations or activities of BP, the company's document management policy does not consider them company property.

The "pop-up" screen that the PSC relies upon, *see* PSC Letter at Ex. A, does not compel a contrary result. As a threshold matter, whether the "pop-up" screen is a "policy," as the PSC claims, is doubtful. Whatever the case may be, all the "pop-up" screen says is that BP has "proprietary rights in this system and data." *Id.* It does not specify the proprietary rights; nor

---

*Hancock Mut. Life Ins. Co.*, No. CIV.A. 00-12143, 2002 WL 974676 (D. Mass. May 7, 2002), also involved a state-law claim of invasion of privacy.

In our letter brief, we cited to Judge Fallon's decision in *Miller*, 676 F. Supp. 2d at 497, not to suggest that Louisiana law on invasion of privacy should be imported into the marital communications privilege analysis, but to illustrate factually the type of company policy that might support a finding that confidentiality did not attach to marital communications over work email.



The Honorable Sally Shushan
March 25, 2011
Page 3

does it explain to what data such rights pertain. Written policy statements, like the Global Document Management Policy, address those issues. More importantly, there is nothing about the "pop-up" screen that unambiguously gives notice to BP employees, like the Morels, that the company claims ownership over personal emails between spouses.[2] If anything, by warning against unauthorized access and use, the "pop-screen" screen confirms that it is reasonable for BP employees to expect that their personal emails are confidential.

Second, the BP internal policies which provide (1) that emails stored on company servers and other media are "not private," and (2) that emails may be searched, does not automatically render a marital communication unprivileged. Such policy statements are consistent with the uncontroversial notion that employers have the right to monitor employees' use of their systems to ensure compliance with the law and company policies. By the PSC's logic, however, any time a company merely reserves the right to monitor employees' use of email, no reasonable expectation of confidentiality can attach to an otherwise privileged communication. Courts have rejected such an extreme rule, because it does not comport with the realities of the modern workplace, where personal use of work email has become commonplace (including at BP). Thus, courts consider not just the policies as written, but the policies as implemented in determining whether a communication over work email is stripped of protections. *See e.g., In re Asia Global Crossing, Ltd.*, 322 B.R. 247, 257 (Bankr. S.D.N.Y. 2005); *Sprenger v. Rector and Bd. of Visitors of Va. Tech*, Civ. No. 7:07cv502, 2008 WL 2465236, at *3 (W.D. Va. June 17, 2008) (considering as a factor whether the company actually monitors its employees' computers or email). Here, the PSC has offered no evidence that BP actually conducted screenings of its employees' computer use, let alone the Morels', such that employees would have known that personal emails were not confidential because they were routinely monitored by the company.

Finally, the PSC completely ignores perhaps the most important factor that courts consider in determining whether an employee's use of work email compromises a privileged communication, namely, that BP expressly permits its employees to use its systems for personal use. *See* PSC Letter Ex. C ("Reasonable personal use" of company email "is permitted . . .").[3] BP's permissive use policy itself creates a reasonable expectation among its employees that the company will respect personal use of company systems.

---

[2] *Compare Sims v. Lakeside Sch.*, 2007 WL 2745367, at *2 (E.D. Wash. Sept. 20, 2007) (no marital privilege where public school district's policy stated that "[u]ser accounts are the property of Lakeside School"); *compare also Miller*, 676 F. Supp. 2d at 497 (company had an "express policy" that stated "all emails" were company property); *Thygeson*, 2004 WL 2066746, at *5 (company policy provided that "email is the exclusive property of [employer] and is not intended for personal use").

[3] The cases relied on by the PSC are distinguishable from BP's email use policy in this fundamental respect. *See, e.g., Miller*, 676 F. Supp. 2d at 497 (employer had a rule prohibiting personal computer use); *Thygeson*, 2004 WL 2066746, at *5 (policy provided "[d]o not use U.S. Bancorp computer resources for personal business"); *Kelleher*, 2002 WL 1067442, at *8 (policy provided that "E-mail system is strictly for official City of Reading messaging").



**ZUCKERMAN SPAEDER LLP**

The Honorable Sally Shushan
March 25, 2011
Page 4

      The marital communications at issue here are a far cry from sexually explicit or offensive material transmitted or stored by an employee who, because he knows his use is violating company policy, cannot reasonably expect confidentiality in such material. Indeed, it is entirely reasonable for an employee like Mr. Morel to expect that his private communications with his wife on the computer system, which his employer permitted him and his wife to use for that very purpose, would be confidential. His communications did not violate company policy. The subject matter of the emails related to personal matters. And, at the time, Mr. Morel had no reason to suspect that his emails would some day be the subject of a document subpoena in a multi-district litigation.[4] In such circumstances, the Morels' marital communications privilege was not waived by their use of company email. Accordingly, after applying the correct analytical framework to the factual record, the PSC has failed to meet its burden of demonstrating that the Morels' communications were obviously not intended to be confidential.

      Finally, we wish for the record to be clear that, contrary to the PSC's assertion, BP has not "initiated these marital privilege claims on behalf of Mr. Morel." PSC Letter at 6. Mr. Morel seeks here to protect his own rights and privileges. The decision to litigate to protect his marital privilege is his own, and not the company's.

                        Sincerely,

                        *William W. Taylor, III /APM*

                        William W. Taylor, III
                        Amit P. Mehta

WWT:gbh

---

[4] BP's email use policy places the burden on its individual employees to retain or delete emails in conformity with company document retention policies. *See* PSC Letter Ex. C at 2 ("Each user of the e-mail system is individually responsible for retaining or deleting his/her email in accordance with BP's record retention policy, including the need to retain e-mails that are relevant to pending or *foreseeable* litigation or government, regulatory or official investigations.") (emphasis added).