UNITED STATES DISTRICT OF COURT
EASTERN DISTRICT OF LOUISIANA

_____

IN RE: OIL SPILL BY THE OIL     §              MDL No. 2179
RIG "DEEPWATER HORIZON"     §
IN THE GULF OF MEXICO,     §            SECTION:  J
ON APRIL 20, 2010     §
    §            JUDGE BARBIER
This document relates to:     §
*State of Quintana Roo v. BP, PLC, et al.*     §     MAG. JUDGE SHUSHAN
(No. 2:10-cv-04241.)     §
*State of Tamaulipas v. BP, PLC, et al.,*     §
(No. 2:10-cv-04240);     §
*State of Veracruz v. BP, PLC, et al.*     §
(No. 2:10-cv-04239)     §
_____     §

MEMORANDUM IN SUPPORT OF HALLIBURTON ENERGY
SERVICES, INC.'S MOTIONS TO DISMISS AND, ALTERNATIVELY,
FOR A MORE DEFINITE STATEMENT

Defendant Halliburton Energy Services, Inc. ("HESI"), respectfully files this memorandum in support of its motions asking the Court to dismiss all claims in the First Amended Complaints (collectively, the "Complaints")[1] of Plaintiffs State of Quintana Roo, State of Tamaulipas and State of Veracruz, all of the Republic of Mexico (collectively, the "Plaintiffs"), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and, alternatively, to require Plaintiffs to file more definitive statements of their pleadings pursuant to Rule 12(e).

---

[1] The three Complaints are substantially identical.  Therefore, a citation to a paragraph in the Complaints is a citation to each of the Complaints, unless otherwise noted.

## I.     INTRODUCTION AND PROCEDURAL HISTORY

This case arises out of the fire, explosion, and sinking of the DEEPWATER HORIZON, "an ultra-deepwater dynamically positioned semisubmersible oil rig[,]" and a subsequent release of oil into the Gulf of Mexico (hereinafter, the "Incident").  Compl. ¶¶ 33, 34.

On September 16 and 17, 2010, Plaintiffs filed their Complaints in the United States District Court for the Western District of Texas (the "District Court").  HESI was served with the Complaints on September 27.   In their Complaints, Plaintiffs generally assert claims for negligence, gross negligence, negligence *per se*, public nuisance and private nuisance and for alleged violations of the Oil Pollution Act of 1990 ("OPA").  *See generally*, Compl.

Generally, Plaintiffs allege in the Complaints that the acts of various defendants, including HESI, caused the fire and explosion on board the DEEPWATER HORIZON, its sinking, and the subsequent oil spill.  Compl. ¶¶ 34, 42.  Plaintiffs filed this suit alleging "damages incurred to date" in the form of expenses relating to preparations for the *future arrival* of oil onto Mexico's shores and its anticipated impact.  *Id.* ¶ 55.  Plaintiffs also allege future, anticipated harms to the environment and natural resources of the Gulf of Mexico, economic damages in the form of loss of revenues, loss of profits and income, and increased costs of public services. *Id.*

After concluding that these cases arose from the Incident and shared key factual issues with other consolidated cases, the Judicial Panel on Multidistrict Litigation designated them for consolidation in MDL-2179 when it issued Conditional Transfer Order No. 5 ("CTO 5") on November 4, 2010.  The District Court transferred these cases for consolidation in MDL-2179 on November 8.

On October 19, 2010, this Court issued its Pre-trial Order No. 11 ("PTO 11"), the Case Management Order for MDL-2179. In PTO 11, this Court created several pleading bundles. Bundle "C" encompasses "public damage claims," defined as "claims brought by governmental entities for, *inter alia,* loss of resources, loss of tax revenues, response costs and civil penalties[.]" PTO 11 p. 4. The present cases fall squarely within this definition. Although these types of claims may not be pleaded in a Master Complaint,[2] HESI responds to all three Complaints with this single Motion to Dismiss as such Complaints are substantially identical.

## II.   STATEMENT OF FACTS[3]

Defendant BP[4] was the holder of a lease granted by the Minerals Management Service ("MMS") authorizing the exploration, development and production of oil in Mississippi Canyon Block 252 in the Gulf of Mexico. *See* Compl. ¶ 16. BP conducted its relevant activities on the DEEPWATER HORIZON, an "ultra-deepwater dynamic positioned semisubmersible oil rig" designed by defendant Transocean[5] and "owned, manned, possessed, managed, controlled, chartered, and/or operated by Transocean and/or BP." *Id.* ¶¶ 33, 34. HESI's role was limited to cement design and pumping said cement into the well. *See* Compl. ¶ 24.

On April 20, 2010, there was an explosion on board the DEEPWATER HORIZON during completion operations on the exploratory well. *See id.* ¶ 34. Subsequently, the DEEPWATER HORIZON sank into the Gulf of Mexico, which led to the release of oil. *Id.*

---

[2] *See* PTO 11 p. 4 (stating that "public damage claims" asserted by "government entities . . . shall not be included in any other Pleading Bundles or Master Complaints[.]")

[3] The "Statement of Facts" is based on allegations made in the Complaints, and HESI does not stipulate to their veracity by its citation to the facts as alleged in the Complaints.

[4] Plaintiffs identified defendants BP America, Inc., BP Corporation North America, Inc., BP Company North America, Inc., BP Products North America, Inc., BP Exploration and Production, Inc., and BP, PLC collectively as "BP." *See* Compl. ¶15.

[5] Plaintiffs identified defendants Transocean Deepwater, Inc., Transocean Offshore Deepwater Drilling, Inc., and Transocean Ltd. collectively as "Transocean." *See* Compl. ¶20.

D 1605895 v2-24010/0002 PLEADINGS

Plaintiffs allege that the oil, "as well as other substances including chemical dispersants used in an attempt to clean up the oil, will pollute and damage the waters, property, estuaries, seabed, animals, plants, beaches, shorelines, coastlines, marshlands, and other natural and economic resources of the State[s]." *Id.* ¶ 37.

### III.   <u>SUMMARY OF ARGUMENT</u>

The Oil Pollution Act of 1990, 33 U.S.C. §§ 2701-2720, *et seq*. ("OPA") provides the exclusive federal remedy for the categories of oil spill-related damages Plaintiffs allege.  As the exclusive federal remedial scheme for such damages, OPA specifically preempts or displaces maritime tort claims seeking damages caused by oil spills.[6]  Plaintiffs, however, assert common law claims sounding in negligence, gross negligence, negligence *per se,* and public and private nuisance (the "Common Law Claims"),[7] against HESI in an attempt to circumvent OPA's exclusive remedial scheme.  Plaintiffs however, cannot bring state law causes of action against HESI.  Plaintiffs' claims arise, if at all, under maritime law (*not* state law) and are, therefore, preempted or displaced by OPA.

Because of the applicability of OPA, this Court lacks subject matter jurisdiction to proceed over this matter due to Plaintiffs' failure to plead and/or comply with the statute's

---

[6] The doctrine of "preemption" generally pertains to the effect of federal law on state law, where there are concerns associated with federalism and balancing states' rights.  However, the discussion herein regarding OPA's effect on federal common law (*i.e.*, maritime law) pertains to the effect of a federal statute on a body of federal law, not state law.  In such instances, the federal statute more accurately "displaces" the federal common law, and there are no corresponding federalism issues.  Nevertheless, in discussing OPA's effect on federal maritime law, certain courts have referred to this issue as one of "preemption," and other courts seem to use "preemption" and "displacement" interchangeably.  *See, e.g., Gabarick v. Laurin Mar. (Am.) Inc.,* 623 F. Supp. 2d 741, 750-51 (E.D. La. 2009) (holding that "all [general maritime law] claims that are recoverable under OPA, specifically those covered damages enumerated in 33 U.S.C. § 2702, are preempted by OPA").  To avoid confusion with supporting case law, HESI's discussion of OPA asserts that the statute "preempts or displaces" federal maritime law.

[7] While Plaintiffs do not specify under what state's law their Common Law Claims are asserted, they assert that their claims arise under an unspecified state's law by operation of 43 U.S.C. 1333(a)(2), which is the "adjacent state law" provision of the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. §§ 1331 – 1356a.  Compl. ¶ 28.  However, Plaintiffs do not identify which state's law, if any, applies as the "adjacent state's law."

mandatory claims presentment procedure.   This failure provides both an independent and additional basis requiring dismissal of Plaintiffs' claims.

Importantly, OPA only allows for claims to be asserted against a "responsible party," as defined by OPA."[8]   The Coast Guard has designated BP and certain other defendants, not including HESI, as "responsible parties" under OPA.[9]   Because HESI is not a designated "responsible party" under OPA, Plaintiffs' claims must be dismissed.  Further, Plaintiffs have not alleged, as required by OPA, that their "recovery is authorized by a treaty or executive agreement between the United States and the claimant's country, or [that] the Secretary of State, in consultation with the Attorney General and other appropriate officials, has certified that the claimant's country provides a comparable remedy for United States claimants."  33 U.S.C. § 2707(a)(1)(B).

---

[8] *See* 33 U.S.C. §§ 2701(32) (defining "responsible party" of "vessels" and "offshore facilities") and 2702 (describing the liability of "responsible parties").  For limitation of liability purposes, under OPA, a MODU such as the DEEPWATER HORIZON may be treated as a "vessel" or an "offshore facility" depending on the nature of an oil spill and/or the extent of damages caused by a spill.  *See* 33 U.S.C. § 2704(b).  To the extent the DEEPWATER HORIZON is treated as a "vessel," OPA defines a "responsible party" as "any person owning, operating, or demise chartering the vessel."  *Id.* § 2701(32)(A).  To the extent the DEEPWATER HORIZON is treated as an "offshore facility," OPA defines a "responsible party," in relevant part, as "the lessee or permittee of the area in which the facility is located[.]"  *Id.* § 2701(32)(C).  Regardless of the limitation of liability treatment afforded the DEEPWATER HORIZON under the Act, HESI was a third-party contractor on the vessel and, therefore, satisfies neither definition of "responsible party."

[9] In the days following the DEEPWATER HORIZON incident, the Coast Guard designated BP as a responsible party under OPA.  *See* http://www.uscg.mil/foia/docs/DWH/2094.pdf (including the Coast Guard's correspondence to BP, designating it as a responsible party under OPA and BP's acknowledgment of that designation); *see also* http://www.uscg.mil/foia/docs/DWH/2886.pdf (including the Coast Guard's designation of Transocean Holding, LLC, as a responsible party); OIL SPILL COST AND REIMBURSEMENT FACT SHEET, http://www.restorethegulf.gov/release/2011/01/11/oil-spill-cost-and-reimbursement-fact-sheet (noting that Anadarko and MOEX have also been designated as responsible parties).  Copies of these documents are attached as Exhibit A.

Courts may consider facts not specifically alleged in the Complaints when considering a 12(b)(6) motion.  *See Universal Express, Inc. v. SEC*, 177 F. App'x 52, 53-54 (11th Cir. 2006); *Brown v. S. Fla. Fishing Extreme, Inc.*, No. 08-CV-20678, 2008 U.S. Dist. Lexis 49452, at * 3-4 (S.D. Fla. June 27, 2008); *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007) ("materials that are part of a public record or do not contradict the Complaints may be considered by a court in deciding a Rule 12(b)(6) motion"); *accord Cinel v. Connick*, 15 F.3d 1338, 1343 n. 6 (5th Cir. 1994); *see also Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (internal citations omitted) (noting that in deciding a motion to dismiss, courts may consider matters of public record).

Even assuming, *arguendo*, that Plaintiffs' Common Law Claims are properly asserted against HESI, such claims require dismissal under Rule 12(b)(6) because to the extent they seek economic damages without alleging physical injury to a proprietary interest, they are barred by the "economic loss" rule established under maritime law.

In addition, Plaintiffs' claims should be dismissed because they are deficient under the Supreme Court's pleading requirements articulated in *Twombly* and *Iqbal*.[10]  Plaintiffs' request for punitive damages must also be dismissed as such damages are not recoverable under OPA, which provides the exclusive remedy for the damages Plaintiffs seek.

Finally, Plaintiffs' claims are not ripe because they seek to recover, in large part, future damages that are speculative and conjectural and lack the imminence required for any such recovery.

HESI respectfully moves the Court to dismiss all claims asserted against it pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  In the event that Plaintiffs' claims are not otherwise barred by OPA, HESI requests, in the alternative, that Plaintiffs be required to file more definitive statements of their pleadings pursuant to Rule 12(e).

## IV. <u>ARGUMENT AND AUTHORITY</u>

### A. This Court Lacks Subject Matter Jurisdiction.

#### *1. Applicable Law*

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of an action where the court lacks subject matter jurisdiction.  A motion to dismiss filed pursuant to Rule 12(b)(1) allows a party to challenge the subject matter jurisdiction of the district court to hear a case. *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001); *see also McElmurray v. Consol. Gov't. of Augusta Richmond County*, 501 F.3d 1244, 1251 (11th Cir. 2007).  A court may decide

---

[10] *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007); *see also Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009).

such a motion on one of three bases: (1) the Complaints alone; (2) the Complaints and the undisputed facts in the record; or (3) the Complaints, the undisputed facts in the record, and the court's own resolution of disputed facts. *McElmurray*, 501 F.3d at 1251; *Ynclan v. Dep't of the Air Force,* 943 F.2d 1388, 1390 (5th Cir. 1991) (citing *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir. 1981)). In a Rule 12(b)(1) motion, the burden of proving that jurisdiction exists falls to the party asserting jurisdiction. *Ramming,* 281 F.3d at 161; *Eaton v. Dorchester Dev., Inc.,* 692 F.2d 727, 732 n.9 (11th Cir. 1982).

## 2. *Plaintiffs' Claims, if Any, Arise Under this Court's Admiralty Jurisdiction.*

A threshold question in this litigation is the issue of whether Plaintiffs' claims, if any, arise under admiralty jurisdiction. Plaintiffs' claims cannot arise under both state law and admiralty law, as admiralty jurisdiction normally ousts state law from its own application.[11] *See E. River S.S. Corp. v. Transamerica Delaval*, 476 U.S. 858, 864 (1986) ("With admiralty jurisdiction comes the application of substantive admiralty law"). Moreover, admiralty jurisdiction attaches regardless of whether it is asserted in the Complaint. *See* Fed. R. Civ. P. 9(h)(1) ("A claim cognizable only in the admiralty or maritime jurisdiction is an admiralty or maritime claim for those purposes, whether or not so designated."). The Supreme Court's decision in *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.* provides the Court with the proper analytical framework to make this determination. *See* 513 U.S. 527 (1995). As shown below, applying *Grubart*, Plaintiffs' claims clearly arise under admiralty jurisdiction. Thus, Plaintiffs' claims are governed by maritime law, not state law.

In *Grubart*, the Supreme Court reiterated the current test for admiralty tort jurisdiction, stating that "a party seeking to invoke federal admiralty jurisdiction . . . over a tort claim must

---

[11] If maritime law applies to Plaintiffs' claims (and it does), Plaintiffs lack state law claims. Moreover, Plaintiffs' maritime claims would be preempted or displaced by OPA.

satisfy conditions of both [i] location and [ii] connection with maritime activity." *Id*. at 534.  To satisfy the location test, the Court must determine only "whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water." *Id.*  The DEEPWATER HORIZON qualifies as a "vessel" on navigable water.[12]

The *Grubart* Court explained that the "connection with maritime activity" test raises two "*Sisson* inquiries."[13]  Under the first *Sisson* inquiry, the Court must "assess the general features of the type of incident involved . . . to determine whether the incident has a potentially disruptive

---

[12] *See* 1 U.S.C. § 3 (defining "vessel" as "every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water"); *see also Stewart v. Dutra*, 543 U.S. 481, 490 (2005) (standardizing the meaning of the word "vessel" as that supplied in 1 U.S.C. § 3 and noting that "[s]ection 3 merely codified the meaning that the term "vessel" had acquired in general maritime law").  Plaintiffs' description of the DEEPWATER HORIZON indicates that it was mobile and in navigable water.  *See* Compl. ¶¶ 33, 34 (acknowledging that the DEEPWATER HORIZON was "an ultra-deepwater dynamic positioned semisubmersible oil rig" operated by Transocean and BP in the Gulf of Mexico).  Further, courts have consistently held that mobile, semi-submersible rigs, like the DEEPWATER HORIZON, are vessels.  *See, e.g., Manuel v. P.A.W. Drilling & Well Serv., Inc.*, 135 F.3d 344, 351-52 (5th Cir. 1998) (holding that drilling craft was a vessel because it was a "highly mobile unit"); *Domingue v. Ocean Drilling and Exploration Co.*, 923 F.2d 393, 394 n.1 (5th Cir. 1991) ("We have consistently applied general maritime law [in Jones Act cases] . . . to accidents aboard special-purpose watercraft such as submersible, semi-submersible, jack-up, and other similar rigs."); *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1214 n.5 (5th Cir. 1986) (finding semi-submersible drilling rig to be "indisputably a vessel"); *Colomb v. Texaco, Inc.*, 736 F.2d 218, 221 (5th Cir. 1984) (finding submersible drilling barge to be a "vessel" because it was "highly mobile" due to routine relocation); *Case v. Omega Natchiq, Inc.*, No. H-08-0835, 2008 U.S. Dist. LEXIS 52931, at *16, (S.D. Tex. July 10, 2008) ("In contrast to production platforms, semisubmersible drilling rigs are generally considered vessels under the Jones Act.").

The determination that the DEEPWATER HORIZON was a "vessel in navigation" is further supported by facts alleged in the public record.  For example, certain Transocean employees and/or representatives of deceased persons who were aboard the DEEPWATER HORIZON on April 20, 2010, have filed Jones Act suits asserting damages for injuries sustained in their capacity as "seamen" under the Jones Act.  In doing so, these Plaintiffs have asserted admiralty jurisdiction and the application of maritime law, claiming that their injuries or damages were sustained as members of the crew on board DEEPWATER HORIZON, "a vessel within the meaning of the Jones Act, 46 U.S.C. §§ 30104, *et seq*."  *See, e.g.*, Plfs. Stephen and Sara Stones' Pet. in Interv. at ¶¶ 9-10, 12, *Kleppinger v. Transocean Deepwater Offshore Drilling, Inc.*, Case No. 4:10-cv-01851 (S.D. Tex.).

Additionally, Transocean, the owner of the DEEPWATER HORIZON, and related entities have filed a Petition, now pending before this Court, under the Limitation of Liability Act, 46 U.S.C. §§ 30501 *et seq.*, seeking to have their liability limited to an amount equal to the value of the "vessel" and pending freight.  *See* Case No. 10-2771 [Doc. No. 1].  These Transocean entities have filed such Petition in their capacities as the "owner of the vessel."  *See* 46 U.S.C. §§ 30505(a), 30506(a)-(b); *see also* 46 U.S.C. § 30511(a) ("The *owner of a vessel* may bring a civil action in a district court of the United States for limitation of liability under this chapter." (emphasis added)).

[13] "*Sisson* inquiries" refer to inquiries developed by the Supreme Court in the case of *Sisson v. Ruby*, 497 U.S. 358 (1990), which also addressed the issue of federal admiralty jurisdiction.  The Supreme Court advanced this analysis further in *Grubart*, but retained the *Sisson* inquiries as part of the admiralty jurisdiction analysis.  *See Grubart*, 513 U.S. at 533-34.

D  1605895 v2-24010/0002 PLEADINGS

impact on maritime commerce."  513 U.S. at 534 (quotations and citations omitted).  The Court further stressed that this inquiry focuses "*not on the specific facts* at hand but on whether the '*general features*' of the incident were 'likely to disrupt commercial activity.'"  *Id.* at 538 (citations omitted) (emphasis added).  Applying these principles, the *Grubart* Court found that the general features of that case—namely "damage by a vessel in navigable water to an underwater structure"—plainly constituted "the kind of incident that has a potentially disruptive impact on maritime commerce."  *Id.*  (citations omitted).

The facts alleged by Plaintiffs likewise are potentially disruptive of commercial maritime activity.  Plaintiffs allege, among other things, that defendants were negligent with respect to their operation of and activities aboard the vessel, the DEEPWATER HORIZON,[14] and allege future economic damages predominantly to the Gulf of Mexico,[15] a body of water "teeming with maritime activity."  *Broughton Offshore Drilling, Inc. v. S. Cent. Mach., Inc.*, 911 F.2d 1050, 1052 n.1 (5th Cir. 1990).  Accordingly, this *Sisson* prong of the maritime nexus inquiry is satisfied.

Under the second *Sisson* inquiry, the Court must determine "whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity."  *Grubart*, 513 U.S. at 539.  Thus, the appropriate analysis focuses on the general nature of the incident.  For example, in *Grubart*, the Supreme Court described the general character of the activity as "repair or maintenance work on a navigable waterway performed from a vessel."  *Id.* at 540.  The Court further noted that "[n]avigation of boats in navigable waters clearly falls within the substantial [maritime] relationship[.]"  *Id.*  Likewise,

---

[14] *See, e.g.*, Compl. ¶ 51.

[15] *See, e.g., id.* ¶¶ 37, 39, 41 (alleging that "[a]fter creating havoc and destruction along the shores of the United States, the oil that spewed from the well . . . will migrate westward across the Gulf of Mexico and the Caribbean, devastating, killing, and contaminating marine life as it sweeps toward the shores of Plaintiffs' State[s]").

9

here, the general character of the Incident could be described as *oil and gas well drilling from a vessel on a navigable waterway*.   Clearly, the general character of the Incident shows a substantial relationship to general maritime activity.

Moreover, even if some defendants were engaged in traditionally maritime activities and some were not, the "substantial relationship to maritime activity" test is satisfied "when at least one alleged tortfeasor was engag[ed] in activity substantially related to traditional maritime activity and such activity is claimed to have been a proximate cause of the incident."   *Grubart,* 513 U.S. at 541.   Plaintiffs allege that certain parties, named as defendants in the Complaints, were engaged in traditional maritime activity aboard the DEEPWATER HORIZON—operating a vessel in navigable waters—and such activity is claimed to have been a proximate cause of the Incident.   Compl. ¶¶ 3; 51(A)-(B), (E), (G), (T), (X), (cc).   Thus, admiralty jurisdiction governs Plaintiffs' claims.

Furthermore, the admiralty jurisdiction test set forth in *Grubart* is unaffected by Plaintiffs' status as land-based claimants or by the allegations that some or all of their damages were incurred on land.   First, Plaintiffs' asserted damages—predicated on allegations of harm to the Gulf of Mexico—are themselves intensely maritime.   Second, even assuming Plaintiffs demonstrate direct injury to property within the territory of the States (something the Complaints do not even allege), admiralty jurisdiction over their claims would still apply maritime law in lieu of substantive state law by virtue of the Admiralty Extension Act, 46 U.S.C. § 30101.[16]   As the Supreme Court has explained, "[t]he purpose of the [Admiralty Extension Act] was to end concern over the sometimes confusing line between land and water, by investing admiralty with

---

[16] The Admiralty Extension Act, originally codified at 46 U.S.C. § 740, has now been recodified at 46 U.S.C. § 30101.

D  1605895 v2-24010/0002 PLEADINGS

jurisdiction over 'all cases' where the injury was caused by a ship or other vessel on navigable water, even if such injury occurred on land." *Grubart*, 513 U.S. at 532.

Admiralty jurisdiction clearly attaches to any claims Plaintiffs may have arising out of the Incident. Such claims are fundamentally maritime in nature and, therefore, arise under maritime law, not state law.

### 3. *The Outer Continental Shelf Lands Act Does Not Require the Application of "Adjacent State Law" to Plaintiffs' Claims.*

The only other basis on which state law could theoretically apply to Plaintiffs' claims is the "adjacent state law" provision of OCSLA. *See Demette v. Falcon Drilling Co.,* 280 F.3d 492, 499 (5th Cir. 2002) ("Since the incident occurred on the [outer continental shelf] beyond the territorial waters of Louisiana, the only way state law could apply was by incorporation into federal law under OCSLA"), *overruled in part on other grounds by Grand Isle Shipyard, Inc. v. Seacor Marine, LLC,* 589 F.3d 778, 782-83 (5th Cir. 2009). OCSLA's adjacent state law provision applies, as a proxy for federal law, the law of the adjacent state in *certain situations* on the Outer Continental Shelf ("OCS"). *See* 43 U.S.C. § 1333(a)(2)(A) (emphasis added). The "adjacent state law" provision of OCSLA does not apply in this case because the DEEPWATER HORIZON was neither an "artificial island" nor a "fixed structure" erected on the subsoil or seabed of the OCS.

As a threshold matter, if maritime law applies to Plaintiffs' claims of its own force (and it does, as demonstrated above), OCSLA's adjacent state law provision does not apply. *See Tennessee Gas Pipeline v. Houston Cas. Ins. Co.,* 87 F.3d 150, 154 (5th Cir. 1996) (noting that "where OCSLA and general maritime law both could apply, the case is to be governed by maritime law").

This conclusion is reinforced by the statutory text of OCSLA, which contains two relevant but significantly different provisions implicating jurisdictional issues—Sections 1333(a)(1) and 1333(a)(2)(A).  Section 1333(a)(1) contains a very broad exertion of federal control and authority over virtually all activities occurring on the OCS involving the exploration, development, production, and transportation of resources.  This exertion of federal control is extended to "the subsoil and seabed of the outer Continental Shelf and to all artificial islands, and *all installations and other devices permanently or temporarily attached to the seabed*[.]"  43 U.S.C. § 1333(a)(1) (emphasis added).  The DEEPWATER HORIZON, a vessel, squarely falls within the language of a "device . . . temporarily attached to the seabed[.]"  Thus, the vessel and its operations were subject to federal control and authority.

In stark contrast, § 1333(a)(2)(A) of OCSLA separately applies the "laws of each adjacent state" on the outer continental shelf ("OCS") in a much narrower set of circumstances.  That provision provides, in relevant part, that the law of the adjacent state applies "to that portion of the subsoil and seabed of the outer Continental Shelf, and *artificial islands* and *fixed structures* erected thereon[.]" (emphasis added).  Conspicuously absent is the language contained in § 1333(a)(1) pertaining to "all installations and other devices permanently or temporarily attached to the seabed."  Rather, § 1333(a)(2)(A) has a far narrower reach, applying adjacent state law only to "artificial islands" and "fixed structures," not to vessels like the DEEPWATER HORIZON.[17]  As the DEEPWATER HORIZON was neither an artificial island nor a fixed

---

[17] It is not surprising that §§ 1333(a)(1) and 1333(a)(2)(A) differ in scope.  The very broad exertion of federal authority under § 1333(a)(1) necessarily encompasses all mineral exploration and production activities on the OCS, whether performed by "fixed platforms" or "vessels," in order to maximize federal control over vital national resources.  However, maritime law has historically governed claims arising on or in connection to a vessel, *see Sisson*, 497 U.S. at 360-61, and so § 1333(a)(2)(A)'s application of adjacent state law is only needed to fill the gap where claims arise on or in connection with a non-vessel—*i.e.*, an artificial island or fixed structure—such as a fixed platform.  Consequently, claims arising out of mineral exploration on the OCS may broadly arise under OCSLA, but such claims may be governed either by maritime law (as in this case) or, to the extent they fall within

D 1605895 v2-24010/0002 PLEADINGS

structure, but rather was a vessel,[18] § 1333(a)(2)(A) does not apply "adjacent state law" in this case.[19]

> **4.     *Plaintiffs' Alleged Damages Demonstrate that OPA Is Their Exclusive Remedy.***

Because Plaintiffs' claims are governed by maritime law, *see supra*, they are preempted or displaced by OPA as they seek oil spill-related damages of the type recoverable under the statute.   OPA is the exclusive federal remedy for the types of damages alleged.   *See S. Port Marine, LLC v. Gulf Oil Ltd. P'ship*, 234 F.3d 58, 65-66 (1st Cir. 2000) (citations omitted) (noting that Congress has established a "comprehensive" scheme that outlines with particularity the types of damages recoverable under OPA and that this is a "strong indication that Congress intended the OPA to be the sole federal law applicable in this area of maritime pollution"). Plaintiffs cannot circumvent OPA with common law allegations arising under this Court's admiralty jurisdiction.

---

§1333(a)(2)(A)'s narrower "adjacent state law" provision (applicable to non-vessels), state law as a proxy for federal law.

[18] *See supra* fn. 10.

[19] Plaintiffs do not identify what state's law they seek to apply to their claims by operation of OCSLA's adjacent state law provision, codified at 43 U.S.C. § 1333(a)(2)(A).  Even if that provision were to apply in this case, Louisiana law likely would apply as adjacent state law.  In *Snyder Oil Corp. v. Samedan Oil Corp.*, the court considered four kinds of evidence to determine which state was considered "adjacent" to an OCSLA situs:  (1) geographic proximity; (2) which coast federal agencies consider the subject platform to be "off of"; (3) prior court determinations; and (4) projected boundaries.  208 F.3d 521, 524 (5th Cir. 2000).  Louisiana is closer to the situs of the DEEPWATER HORIZON incident than any other state, including Alabama, and the Minerals Management Service (MMS) (n/k/a Bureau of Ocean Energy Management, Regulation, and Enforcement (BOEMRE)) has described the *Deepwater Horizon* incident as occurring "approximately 41 miles offshore Louisiana" on its official website linking a webpage describing the DEEPWATER HORIZON incident, http://www.restorethegulf.gov/release/2010/04/21/bp-offers-full-support-transocean-after-drilling-rig-fire, a copy of which is attached hereto as Exhibit B.  Similarly, in a notice entitled "*Information to Lessees and Operators on Federal Oil and Gas Leases on the Outer Continental Shelf, Gulf Mexico Region*," dated April 28, 2010, MMS notified lessees and operators in the Gulf of Mexico about its intention to initiate controlled burns to abate the oil spill and described the oil spill as being "located offshore Louisiana." *See* http://www.gomr.boemre.gov/homepg/regulate/regs/itls/100428.pdf, a copy of which is attached hereto as Exhibit C.  In addition, federal district courts have noted that other locations in the Mississippi Canyon are adjacent to the State of Louisiana and have applied Louisiana law as surrogate federal law. *See, e.g., Ronquille v. MMR Offshore Servs., Inc.*, 353 F. Supp. 2d 680, 682 n.4 (E.D. La. 2004); *Dennis v. Bud's Boat Rental, Inc.*, 987 F. Supp. 948, 949-954 (E.D. La. 1997).  Therefore, even if OCSLA were to apply adjacent state law in this case, it likely would apply Louisiana law.

13

OPA was enacted by Congress in the wake of the *Exxon Valdez* oil spill to provide a prompt, federally-coordinated response to oil spills in the navigable waters of the United States and to compensate innocent victims.  *Gatlin Oil Co. v. United States*, 169 F.3d 207, 209 (4th Cir. 1999).  OPA provides a comprehensive statutory framework for parties injured by oil spills in navigable waters to make claims to a designated responsible party for recovery of costs and damages.  *See* 33 U.S.C. §§ 2701, *et seq.*  OPA "represents Congress's attempt to provide a comprehensive framework in the area of marine oil pollution."  *Tanguis v. M/V Westchester*, 153 F. Supp. 2d 859, 867 (E.D. La. 2001) (citations omitted).  Its purpose is "to promote settlement and avoid litigation."  *Johnson v. Colonial Pipeline Co.*, 830 F. Supp. 309, 310 (E.D. Va. 1993).

Plaintiffs' claims, including their purported state law claims, which are maritime claims no matter how artfully pleaded, seek relief for precisely the types of damages Congress intended to be recovered exclusively under OPA.  *See S. Port Marine*, 234 F.3d at 65-66; *see also In re Jahre Spray II K/S*, 1996 U.S. Dist. LEXIS 11594, at * 11 (D. N.J. Aug. 5, 1996) (noting that in the wake of the *Exxon Valdez* incident, OPA was developed as a comprehensive statutory scheme that would deal with all issues surrounding an oil spill, including liability levels for the respective responsible parties."); *Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atl. Corp.*, 924 F. Supp. 1436, 1447 (E.D. Va. 1996) ("OPA clearly preempts maritime law as to recovery of cleanup expenses and the cost of compensating injured persons.").

Pursuant to OPA, injured parties may recover a broad range of damages from a responsible party, including:

> Natural resources
>
>> Damages for injury to, destruction of, loss of, or loss of use of, natural resources, including the reasonable costs of assessing the damage, which shall be recoverable by a United States trustee, a State trustee, an Indian tribe trustee, or a foreign trustee.

14

Real or personal property

> Damages for injury to, or economic losses resulting from destruction of, real or personal property, which shall be recoverable by a claimant who owns or leases that property.

Subsistence use

> Damages for loss of subsistence use of natural resources, which shall be recoverable by any claimant who so uses natural resources which have been injured, destroyed, or lost, without regard to the ownership or management of the resources.

Revenues

> Damages equal to the net loss of taxes, royalties, rents, fees, or net profit shares due to the injury, destruction, or loss of real property, personal property, or natural resources, which shall be recoverable by the Government of the United States, a State, or a political subdivision thereof.

Profits and earning capacity

> Damages equal to the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources, which shall be recoverable by any claimant.

Public services

> Damages for net costs of providing increased or additional public services during or after removal activities, including protection from fire, safety, or health hazards, caused by a discharge of oil, which shall be recoverable by a State, or a political subdivision of a State.

33 U.S.C. § 2702(b)(2).

OPA provides the exclusive federal remedy for recovery of oil spill-related damages, preempting or displacing non-OPA-based claims for recovery of those damages.  *See S. Port Marine*, 234 F.3d at 65 ("Congress intended the OPA to be the exclusive federal law governing oil spills."); *Gabarick v. Laurin Mar. (Am.) Inc.*, 623 F. Supp. 2d 741, 750-51 (E.D. La. 2009) ("This Court finds that an evaluation of the *Oswego* factors indicates that OPA preempts general maritime law claims that are recoverable under OPA.").  Regarding the preemptive effect of

OPA, it has been held that "all [general maritime law] claims that are recoverable under OPA, specifically those covered damages enumerated in 33 U.S.C. § 2702, are preempted by OPA." *Gabarick*, 623 F. Supp. 2d at 750-51.

Consequently, Plaintiffs' attempt to recover oil spill-related damages covered by OPA under common law theories of negligence, gross negligence, negligence *per se,* and nuisance must fail. Plaintiffs contend that: (1) they will suffer damages to their natural resources and property (Complaints ¶ 55(L)(i)-(iii), (xx)) and (2) they will suffer economic losses in the form of lost "profits, income, taxes, fees, and revenues" and resulting from "injury to, impairment of, or destruction of State property" and from the "increased or additional public services to address the oil disaster and protect human health and the environment." *Id.* ¶ 55(L)(iv)-(xi). Clearly, these damage categories are encompassed by § 2702(b) of OPA. Because "Congress intended OPA to be the exclusive federal law governing oil spills," *S. Port Marine*, 234 F.3d at 65-66, Plaintiffs' claims for recovery of oil spill-related damages, which are governed by maritime law, fail as a matter of law, demanding dismissal under 12(b)(6).

### 5. This Court Cannot Exercise Subject Matter Jurisdiction Over Plaintiffs' Claims As Plaintiffs Failed To Present Their Claims Through the OPA-Mandated Claims Process.

Although OPA provides the exclusive remedy for its alleged oil spill-related damages, Plaintiffs failed to follow the Congressionally-mandated claims presentment process in OPA. Accordingly, this Court's subject matter jurisdiction has not been properly invoked and Plaintiffs' Complaints should be dismissed.

Parties claiming to have suffered damages from oil releases are required to first present their claims to the responsible party before filing a lawsuit claiming damages: "[A]ll claims for removal costs or damages *shall be presented first to the responsible party* or guarantor

designated under [§] 2714(a) of this title."  33 U.S.C. § 2713(a) (emphasis added).  Claimants

may only initiate suit after a claim is presented in accordance with § 2713(a) and the responsible

party denies all liability for the claim or the claim is not settled by payment within ninety days

after the date upon which the claim was presented.  33 U.S.C. § 2713(c).  Pre-suit presentment is

mandatory:

> The clear text of § 2713 creates a *mandatory condition precedent* barring all OPA
> claims unless and until a claimant has presented [its] claims in compliance with §
> 2713(a) and either: (1) all responsible parties deny all liability; or (2) the claim is
> not settled by payment within 90 days after (A) the claim was presented, or (B)
> advertising was begun under [§] 2714(b) of the Act, whichever is later.

*Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.*, 51 F.3d 235, 240 (11th Cir. 1995) (emphasis

added); *see also Gabarick*, 623 F. Supp. 2d at 750-51 (dismissing for lack of subject matter

jurisdiction all non-OPA claims seeking damages of the type covered by OPA for failure to

present such claims to the designated responsible party); *Marathon Pipe Line Co. v. LaRoche

Indus. Inc.*, 944 F. Supp. 476, 477 (E.D. La. 1996) ("The Court agrees that § 2713's presentation

requirement is jurisdictional and mandates dismissal when that provision is applicable and not

complied with by the claimant."); S. Rep. No. 101-94 (1989), reprinted in 1990 U.S.C.C.A.N.

722, 732 (hereinafter "Senate Report") (noting that "the bill requires claims to be presented in

the first instance to the discharger, where known.").

In this case, Plaintiffs do not allege that they have presented pre-suit claims to any

responsible party in accordance with OPA.  As a result, this Court lacks jurisdiction to hear any

of Plaintiffs' claims related to the oil spill, and such claims should be dismissed.

### 6. *Plaintiffs' Sole Remedy For Their Alleged Damages, if Any, Lies Against a Responsible Party Designated Under OPA, Not Against HESI.*

Plaintiffs' failure to present their claims as required under OPA warrants dismissal of this

case in its entirety.  However, even if Plaintiffs were to satisfy OPA's claims presentment

process, their sole remedy, if any, lies only against the designated responsible party or parties, not against HESI.[20]  Under OPA, the responsible party for the vessel or facility from which an oil release emanates is liable for all associated damages and removal costs:

> Notwithstanding any other provision or rule of law, and subject to the provisions of this Act, each responsible party for a vessel or facility from which oil is discharged  . . .  is liable for the removal costs and damages specified in subsection (b) that result from such incident.

33 U.S.C. § 2702(a) (emphasis added).  In the case of an oil release originating from an offshore vessel or facility, OPA defines the responsible party, respectively, as "any person owning, operating, or demise chartering the vessel" or the "lessee or permittee of the area in which the facility is located."  33 U.S.C. § 2701(32).  The Coast Guard designates the responsible party, which is strictly liable for recovery costs and damages.  *See* 33 C.F.R. § 136.305; *see also Gabarick*, 623 F. Supp. 2d at 744 ("When an oil spill occurs on U.S. navigable waters, the Coast Guard determines the source of the discharge and notifies a responsible party for that source."); Senate Report, at 723 (noting that "wherever possible, the burden is to be on the discharger to first bear the costs of removal and provide compensation for any damages.").

Recourse against the responsible party is the sole remedy for those injured by an oil release.   Recovery, if any, against non-responsible third parties is limited to an action for contribution by the responsible party or parties, *and is not permitted through direct claims against non-responsible third parties by those alleging injury resulting from an oil release.  See* 33 U.S.C. § 2709 (emphasis added).  As the Court in *Gabarick* explained:

> In light of Congress's intent to minimize piecemeal lawsuits and the mandatory language of OPA discussed earlier, it appears that Claimants should pursue claims covered under OPA only against the responsible party and in accordance with the

---

[20] Plaintiffs acknowledge in the Complaints that only BP and Transocean have been named "Responsible Parties" for OPA purposes by the U.S. Coast Guard.  (Complaints ¶ 70).

D  1605895 v2-24010/0002 PLEADINGS

procedures established by OPA.  Then, the responsible party can take action to recover against third parties.

623 F. Supp. 2d at 750.  Plaintiffs, therefore, can only state viable claims against the designated responsible party or parties, and only in compliance with OPA's mandatory prerequisites.  Here, Plaintiffs' claims against HESI are not cognizable because HESI is not a designated responsible party.  Accordingly, HESI is not, as a matter of law, liable to Plaintiffs for their alleged damages resulting from the Incident.  The Court should dismiss all claims with prejudice because Plaintiffs have failed to state proper claims against HESI.

   **7.    Plaintiffs' OPA Claims Are Barred by Their Failure to Comply With 33 U.S.C. § 2707(a).**

   Subsection 2707(a)(1)(B) of OPA propounds a "required showing for foreign claimants", such as Plaintiffs,[21] who seek removal costs or damages as a result of an oil spill.  Namely, such claimants are required to demonstrate that:

> (B) recovery is authorized by a treaty or executive agreement between the United States and the claimant's country, or the Secretary of State, in consultation with the Attorney General and other appropriate officials, has certified that the claimant's country provides a comparable remedy for United States claimants.

33 U.S.C. § 2707(a)(1)(B).  Here, Plaintiffs have neither alleged that their recovery is authorized by a treaty or executive agreement between the United States and Mexico or that the United States Secretary of State has certified that Mexico provides a comparable remedy for claimants from the United States.  This failure presents yet another basis for dismissing Plaintiffs' claims against HESI.

---

[21] *See* 33 U.S.C. § 2707(c)(3) (defining a "foreign claimant" as "an agency or political subdivision of a foreign country").

    **8.**    *Plaintiffs' Claims Are Not Ripe and/or Plaintiffs Lack Standing Because Their Alleged Future Injuries Are Speculative and Lack the Requisite Imminence.*

"A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'"  *Tex. v. United States*, 523 U.S. 296, 300 (U.S. 1998) (quoting *Thomas v. Union Carbide Agricultural Products Co*., 473 U.S. 568, 581 (1985)).  Further, "the irreducible constitutional minimum of standing" requires an "injury in fact -- an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, *not conjectural or hypothetical*."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (emphasis added).  Further, "[a]llegations of possible future injury do not satisfy the requirements of [United States Constitution] Art. III."  *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990).  Instead, "[a] threatened injury must be 'certainly impending' to constitute injury in fact." *Id*. (quoting *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979)).  "[A]llegations of future injury [must] be particular and concrete."  *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 109 (1998).

The vast majority of Plaintiffs' asserted claims and damages are dependent upon the future spread of the oil and dispersants to Plaintiffs' territory and/or territorial waters.  *See* Compl. ¶ 37 ("the oil . . . **will** also cause harm to one of [Plaintiffs'] sources of potable and non-potable water"); ¶ 39 (the oil "**will** migrate westward across the Gulf of Mexico and the Caribbean, devastating, killing, and contaminating marine life" and "**will** cause severe damage and injury to the eco-system"); ¶ 40 (the oil spill "**will** also strike at the source of the livelihoods of Plaintiff[s'] residents"); ¶ 41 ("[f]ishing operations in the Gulf of Mexico and/o the Caribbean have been and **will** be injured and damaged by the contaminating and destructive oil"); ¶ 55 referring to the "oil, dispersants, and other materials and substances discharged into the Gulf waters that **will** damage the waters, property, estuaries, seabed, animals, plants, beaches,

shorelines, coastlines, marshlands, and other natural and economic resources of [Plaintiffs]"; ))
(emphasis added); *see also Id.* ¶ 4 (alleging that "[s]cientific studies by oceanographers from the
Universidad Nacional Autonoma de Mexico demonstrate and establish that the oil slick and the
underwater plume of oil released into the Gulf **will** also spread westward with the wind and
currents towards the coastline of [the States] in approximately October and November of
[2010]") (emphasis added).   More than three months have passed since the expected arrival of oil
on Plaintiffs' coastlines, yet Plaintiffs have not amended their pleadings to allege that they have
incurred any of these expected damages.   Accordingly, Plaintiffs' asserted future damages, which
are wholly contingent on the vicissitudes of the winds and currents of the Gulf of Mexico, do not
satisfy the "certainly impending" standard.[22]   Consequently, Plaintiffs' claims are not ripe.
Lacking Article III standing, Plaintiffs claims should be dismissed.

**B.      Plaintiffs Fail to State a Claim.**

> **1.      *Plaintiffs' Claims Are Barred by the Economic Loss Rule to the Extent that
> Plaintiffs Do not Allege Physical Damage to a Proprietary Interest.***

Assuming, *arguendo,* that Plaintiffs' claims against HESI are not otherwise barred by
OPA (*see supra* § IV.A) or constitutional standing requirements, such claims would nonetheless
fail under the federal maritime law economic loss rule as they seek recovery for economic losses
absent physical injury to a proprietary interest.   *See Robins Dry Dock & Repair Co. v. Flint,* 275
U.S. 303, 309 (1927).   "It is unmistakable that the law . . . does not allow recovery of purely
economic claims absent physical injury to a proprietary interest in a maritime negligence suit."
*In re Taira Lynn Marine Ltd. No. 5, LLC*, 444 F.3d 371, 377 (5th Cir. 2006); *see also Reserve
Mooring, Inc. v. Am. Commercial Barge Line, LLC*, 251 F.3d 1069, 1072 (5th Cir. 2001)

---

[22] *See Friends of the Earth v. Crown Cent. Petroleum Corp.,* 95 F.3d 358, 362 (5th Cir. 1996) (finding, on summary judgment, that plaintiff lacked standing where it alleged that its pollution damages were "fairly traceable" to defendant's discharges "solely on the basis of the observation that water runs downstream").

D  1605895 v2-24010/0002 PLEADINGS

("[P]hysical injury to a proprietary interest is a prerequisite to recovery of economic damages in cases of unintentional maritime tort."); *State of Louisiana v. M/V Testbank*, 752 F.2d 1019, 1022 (5th Cir. 1985); *Kingston Shipping Co. v. Roberts,* 667 F.2d 34 (11th Cir. 1983).   The rule's purpose is to prevent limitless liability for negligence and the filing of lawsuits of a highly speculative nature.  *Akron Corp. v. M/T Cantigny*, 706 F.2d 151, 153 (5th Cir. 1983).

In the Complaints, Plaintiffs allege, among other things, future damages in the form of lost "taxes, royalties, rents, fees, or net profit shares;" "costs expended by the State for providing increased or additional public services;" "damages associated with the long-term stigma of the oil disaster[;]" and "[d]amages arising from diminished tourism." Compl. ¶ 55(L)(v)-(xi).  Plaintiffs further allege that they have already suffered certain economic damages consisting wholly of expenses incurred in preparing for the possible contamination from the oil spill.  *Id.* ¶ 55(A)-(H).  Such allegations for purely economic losses, some of which may never be incurred, are the kinds of speculative claims that the economic loss rule was created to preclude.  *See Akron Corp.,* 706 F.2d at 153.  Moreover, Plaintiffs do not allege physical damage to any proprietary interest associated with these claims for future damages.  Accordingly, Plaintiffs' claims should be dismissed to the extent that they seek these purely economic damages unrelated to any alleged physical injury to a proprietary interest of Plaintiffs.

**2.    *The Complaints Should be Dismissed Because They Fail to Satisfy the Twombly/Iqbal Pleading Standard.***

Independent of the OPA displacement and jurisdictional requirements, due to the fatal pleading deficiencies, Plaintiffs have failed to state a claim for relief.  Thus dismissal pursuant to Fed. R. Civ. P. 12(b)(6) is proper.

It is not enough for Plaintiffs to simply aver that HESI was "negligent" or "grossly negligent" without alleging sufficient facts to support the plausibility of these legal conclusions.

A Rule 12(b)(6) motion tests the sufficiency of the pleadings.  Although the court accepts well-pleaded facts as true, the Supreme Court has rejected the formerly-applicable principle that a dismissal for failure to state a claim was improper "unless it appears beyond doubt that the Plaintiffs can prove no set of facts in support of his claim."  *Twombly*, 550 U.S. at 561-62.  Rather, to survive a Rule 12(b)(6) challenge, the "Complaint must contain sufficient factual material, accepted as true, to state a claim to relief that is plausible on its face."  *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 570).  This standard "does not require 'detailed factual allegations,' *but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation*."  *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 570) (emphasis added).

The courts' application of *Twombly* and *Iqbal* proceeds in two steps.  First, the court determines which allegations in the Complaints are not entitled to the assumption of truth.  *Id.* at 1950.  Courts reject attempts by Plaintiffs to simply recite the elements of a cause of action or to "dress up" legal conclusions as factual allegations in determining whether a Complaints contains sufficient factual information to "state a claim to relief that is plausible on its face."  *See Twombly*, 550 U.S. at 555-56 ("[A] formulaic recitation of the elements of a cause of action will not do."); *Am. Dental Assoc. v. Cigna Corp.*, No. 09-12033, 2010 U.S. App. LEXIS 9928, at *11-12 (11th Cir. May 14, 2010) (quoting *Twombly*, 550 U.S. at 555).

Second, the court considers the remaining factual allegations that are entitled to the assumption of truth to determine whether they plausibly suggest an entitlement to relief.  *Iqbal*, 129 S. Ct. at 1951.

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a Complaint pleads facts that are "merely consistent with" a defendant's liability, it stops short of the line between possibility and plausibility of "entitlement to relief."

*Id.* at 1949 (citing *Twombly*, 550 U.S. at 557).  A claim only has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id.*  It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the Complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Id.*; *see also Am. Dental Assoc.*, No. 09-12033, 2010 U.S. App. LEXIS 9928, at *14.  In such cases, the claims should be dismissed pursuant to Rule 12(b)(6).

Here, Plaintiffs do not aver sufficient facts in support of their claims against HESI.  Indeed, other than the allegations for jurisdictional purposes in Paragraph 24, the Complaints are devoid of specific references to HESI and any alleged wrongdoing on HESI's part.  Although Plaintiffs make other conclusory allegations about the risks associated with cementing operations generally (Complaints ¶ 34), nowhere do Plaintiffs assert facts supporting the conclusion that HESI did anything improper in its provision of cementing services or that the blowout of the well at issue was caused by any act or omission of HESI.  The other allegations relating to cementing work on the DEEPWATER HORIZON are nothing more than legal conclusions.  Compl. ¶ 55(R), (V), (kk),[23] (mm) (alleging that defendants "institut[ed] risky cementing and drilling procedures" and "[n]egligent[ly] . . . pump[ed] [ ] the cement and/or cement seal")."

Further, Plaintiffs allege, albeit vaguely, that the defendants' conduct caused the oil spill (*Id.* ¶¶ 34, 37) and that the defendants were "negligent and wanton in their attempts and omissions in trying to plug the oil well, contain the oil, and clean-up the oil disaster[.]"  Compl. ¶ 44.  These allegations do not set forth any alleged action or omission by HESI.  Moreover, the entirety of paragraphs 50-55, 57-62, 64-67, 72-73, 75-77, and 79-84 are legal conclusions that

---

[23] Plaintiff State of Tamaulipas did not include in its First Amended Complaints subparagraphs (kk) and (mm).  Otherwise, Plaintiffs' Complaints are substantially identical.

are not entitled to any assumption of truth. These paragraphs are simply conclusions drawn by the drafter of the Complaints. They are not factual averments entitled to an assumption of truth.

Applying this pleading standard to Plaintiffs' claims against HESI requires dismissal of all such claims. First, Plaintiffs' assertions of each claim, at best dressed-up legal conclusions, are not entitled to the assumption of truth. Second, the only remaining factual allegations entitled to an assumption of truth relevant to HESI are its corporate status and the allegations that HESI was engaged in cementing operations. Plaintiffs' factual allegations do not plausibly suggest an entitlement to relief and are not sufficient for the Court to draw any reasonable inference that HESI is liable for the sinking of the DEEPWATER HORIZON and the subsequent oil spill. *See Iqbal*, 129 S. Ct. at 1951. Thus, under *Twombly*, *Iqbal* and their progeny, the Court should dismiss Plaintiffs' claims against HESI in their entirety under Rule 12(b)(6).

### 3.     *Plaintiffs Cannot, as a Matter of Law, Recover Punitive Damages from HESI.*

In addition to the other damage claims discussed *supra*, Plaintiffs seek punitive damages. Compl. ¶ 84. As a matter of law, however, Plaintiffs cannot recover punitive damages. Punitive damages are not a separate cause of action. *Sulzer Carbomedics v. Or. Cardio-Devices, Inc.,* 257 F.3d 449, 461 (5th Cir. 2001); *see also Byrne v. Nezhat,* 261 F.3d 1075, 1087 (11th Cir. 2001) (noting that plaintiff's claim for punitive damages was not a separate cause of action). Instead, they "must relate to some separate cause of action which permits recovery of punitive damages." *S. Port Marine,* 234 F.3d at 64.

Moreover, OPA, which provides Plaintiffs' exclusive remedy for damages resulting from the oil spill, does not permit the recovery of punitive damages. *S. Port Marine*, 234 F.3d at 65-66. The statute's comprehensive list of recoverable damages is exclusive as "Congress intended the OPA to be the sole federal law applicable in this area of maritime pollution." *Id.* at 65.

Thus, as a matter of law, Plaintiffs cannot recover punitive damages, even if their claims are construed as maritime tort claims. *See Clausen v. M/V New Carissa*, 171 F. Supp. 2d. 1127, 1133 (D. Or. 2001) (holding that OPA precludes recovery of punitive damages under any general maritime law theory for which OPA could provide relief). Plaintiffs' demand for the recovery of punitive damages, therefore, must be dismissed.

### 4. *Alternatively, Plaintiffs Should Be Required to File a More Definitive Statement Detailing the Facts, if Any, Supporting Their Claims Against HESI.*

In the alternative, Plaintiffs should be required to file more definitive statements of their pleadings pursuant to Fed. R. Civ. P. 12(e), given the vague and ambiguous allegations against HESI. The Complaints fail to aver any factual statements demonstrating a plausible entitlement to relief against HESI. Moreover, in September 2010 Plaintiffs asserted that their alleged future damages were imminent and would come to fruition in October and November of 2010. Compl. ¶¶ 4, 5. October and November have come to pass and yet Plaintiffs have not amended their pleadings. Thus, at a minimum, and in order to permit HESI to reasonably prepare a response to Plaintiffs' claims, Plaintiffs should be required to file more definitive statements of their pleading pursuant to Rule 12(e), including an update of Plaintiffs' asserted damages.

## V.   CONCLUSION

For the reasons set forth above, subject matter jurisdiction has yet to attach for Plaintiffs' claims and, separately, they have failed to plead viable claims against HESI as a matter of law. Pursuant to Rule 12(b)(1) and Rule 12(b)(6), the Court, therefore, should dismiss Plaintiffs' claims against HESI in their entirety. Alternatively, Plaintiffs should be required to file more definitive statements detailing the facts, if any, supporting their claims against HESI.

Dated: March 28, 2011

Respectfully Submitted,

**GODWIN RONQUILLO PC**

**By:** /s/ *Donald E. Godwin, T.A.*
Donald E. Godwin, T.A.
dgodwin@godwinronquillo.com
Bruce W. Bowman, Jr.
bbowman@godwinronquillo.com
Jenny L. Martinez
jmartinez@godwinronquillo.com
Floyd R. Hartley, Jr.
fhartley@godwinronquillo.com
Gavin Hill
ghill@godwinronquillo.com
1201 Elm Street, Suite 1700
Dallas, Texas 75270-2041
Telephone: 214.939.4400
Facsimile: 214.760.7332

and

R. Alan York
State Bar No. 22167500
ayork@godwinronquillo.com
Jerry C. von Sternberg
State Bar No. 20618150
jvonsternberg@godwinronquillo.com

1331 Lamar, Suite 1665
Houston, Texas 77010
Telephone:  713.595.8300
Facsimile:  713.425.7594

**ATTORNEYS FOR DEFENDANT
HALLIBURTON ENERGY SERVICES, INC.**

27

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing Motion to Dismiss has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12 on this 28th day of March, 2011.

  /s/  Donald E. Godwin
Donald E. Godwin

28