**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater | * | **MDL NO. 2179** |
| Horizon" in the Gulf of Mexico, on April | * | |
| 20, 2010 | * | **SECTION J** |
| | * | |
| | * | |
| **This document relates to:** | * | |
| *No. 10-1757; No. 10- 1758; No. 10- 1759;* | * | **Honorable CARL J. BARBIER** |
| *No. 10-1760; No. 10- 2087; No. 10- 2731;* | * | |
| *No. 10- 2996; No. 10- 2997;* | * | **Magistrate Judge SHUSHAN** |
| *No. 10- 4185; No. 10-4239; No. 10-4240;* | * | |
| *No. 10-4241* | * | |

---

**MEMORANDUM IN SUPPORT OF BP DEFENDANTS' MOTION TO DISMISS**
**PURSUANT TO FED. R. CIV. P. 12(b)(1) & 12(b)(6) COMPLAINTS FILED BY**
**CERTAIN GOVERNMENTAL ENTITIES IN PLEADING BUNDLE C**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

BACKGROUND AND CLAIMS.............................................................................................3

ARGUMENT ...........................................................................................................................7

I.    Plaintiffs' OPA Claims Are Contrary to the Plain Terms of the Statute and the Facts Alleged Do Not Plausibly State A Right to Relief. ....................................................7

        A.    Plaintiffs' Failure to Allege Compliance with OPA Presentment Requires Dismissal of Their OPA Claims. ..............................................................7

        B.    The Mexican States Have Not Alleged A Treaty or Designation as National Trustees, as Required by OPA. ................................................9

        C.    The Alabama Cities and the Mexican States Are Geographically Remote and Any Alleged Harm Was Not Proximately Caused by an Oil Spill. ...............10

II.    Plaintiffs' Common Law Claims Are Insufficient as A Matter of Law and Should Be Dismissed. ...............................................................................................................14

        A.    Federal Law Is the Exclusive Remedy for Claims Arising from Oil Spills on the Outer Continental Shelf and Preempts Plaintiffs' Common Law Claims. ....................................................................................................14

        B.    Plaintiffs' Common Law Claims for Purely Economic Loss Are Insufficient as A Matter of Law.........................................................................16

III.    The Louisiana District Attorneys' Claims Under the Louisiana Wildlife and Fisheries Statute Are Preempted. ..........................................................................17

        A.    The Louisiana Oil Spill Prevention and Response Act Preempts the Parish District Attorneys' Claims Under the Wildlife and Fisheries Statute...................17

        B.    OPA, OCSLA, and the Clean Water Act Preempt Claims Under the Wildlife Statute for Wildlife Injured by Oil Spills That Occur on the Outer Continental Shelf. ........................................................................................20

CONCLUSION.........................................................................................................................21

## INTRODUCTION

The plaintiffs—governmental entities in Louisiana, Alabama, and Mexico—allege they were harmed by the oil spill following the explosions on the *Deepwater Horizon* on April 20, 2010, and its sinking into the Gulf of Mexico two days later.  (*See*, *e.g.*, *State of Quintana Roo v. BP plc*, *et al.*, E.D. La. No. 2:10-cv-4241, Cmplt. ¶ 3; *City of Greenville, et al. v. BP, plc, et al.*, E.D. La. No. 2:10-cv-4185, Cmplt. ¶ 2.)  Plaintiffs' complaints also allege that the well from which the oil flowed was located on the Outer Continental Shelf, beyond the territorial jurisdiction of the surrounding states.  (*Quintana Roo* Cmplt. ¶ 3; *State of Louisiana v. BP Exploration & Prod. Inc., et al.* (by Terrebonne District Attorney), E.D. La. No. 2:10-cv-1759, Suppl. & Am. Pet. ¶¶ 7, 9.)  Those two facts establish that the law governing each plaintiff's claims is exclusively federal and that the Oil Pollution Act of 1990 ("OPA" or the "Act") provides the exclusive remedy.  *See*, *e.g.*, 33 U.S.C. § 2702(a); 43 U.S.C. § 1333.  As a result, plaintiffs' complaints fail to state any valid claims as a matter of law and should be dismissed.

***First***, four Alabama cities and three Mexican states (the "Alabama Cities" and "Mexican States") assert claims under the Oil Pollution Act, but none of these plaintiffs alleges compliance with the Act's presentment requirements.  As a result, this Court lacks jurisdiction over their OPA claims under Rule 12(b)(1) and those claims fail to state any valid cause of action under Rule 12(b)(6).  The Mexican States' OPA claims fail for the additional reason that they do not allege any treaty or executive agreement between the United States and Mexico authorizing recovery, that the U.S. Secretary of State has certified that Mexico provides reciprocal remedies to U.S. citizens, or that the Mexican president has designated those States as trustees for natural resources—which OPA expressly requires.  *See* 33 U.S.C. § 2706(b)(5).  Independently, the OPA claims alleged by the Mexican States and Alabama Cities are insufficient as a matter of law and subject to dismissal under Rule 12(b)(6) because those plaintiffs do not allege that their

property or natural resources were harmed or allege a connection between any such harm and the economic losses they claim.  These plaintiffs cannot therefore establish that their injuries were proximately caused by the *Deepwater Horizon* incident.

*Second*, federal law preempts the common law claims alleged by the Alabama Cities and Mexican States and those claims must be dismissed as a matter of law.  Under the Outer Continental Shelf Lands Act, federal law is exclusive for claims arising from drilling for oil and other mineral exploration and development activities on the Outer Continental Shelf.  *See* 43 U.S.C. § 1333.  For oil spills, the Oil Pollution Act establishes a comprehensive remedial scheme, including claims for natural resource damages and lost tax and other revenue.  *See* 33 U.S.C.§ 2702(b)(2)(D).  Furthermore, according to the Supreme Court, a state has no authority, under common law or otherwise, to regulate pollution that originated from a source outside its territory, even if the effects of the pollution are felt within the state.  *Int'l Paper Co. v. Ouellette*, 479 U.S. 481 (1987).  In such cases, water pollution is instead governed by federal law, including the Oil Pollution Act and the Clean Water Act. (*See also* Doc. No. 1440, BP's Motion to Dismiss the First Amended Master Complaint for the B1 Bundle, § III.C.)[1]  Plaintiffs' common law claims also fail for the independent reason that a party may not recover in tort for purely economic losses with no accompanying physical impact.

*Finally*¸ certain Louisiana parish district attorneys, expressly denying reliance on any federal law, seek to recover under the Louisiana Wildlife and Fisheries Statute the value of wildlife lost or injured by the oil spill.  But the Louisiana Oil Spill Prevention and Response Act preempts all state claims relating to oil spills, except wildlife claims brought by the Department

---

[1] For purposes of this motion, and consistent with the Court's instructions, BP incorporates and relies upon certain arguments more fully presented in Doc. No. 1440, BP's Motion to Dismiss the First Amended Master Complaint for the B1 Bundle ("BP's B1 Bundle Mot.").

of Wildlife and Fisheries.  La. Rev. Stat. § 30:2491 (a), (b).  And even if the wildlife claims were

not barred by Louisiana's oil spill statute, the claims (like the common law claims of the

Alabama Cities and Mexican States) are barred by federal law, which is exclusive for claims

arising from oil spills that originated on the Outer Continental Shelf.

In sum, the governmental plaintiffs do not allege proper facts that support this Court's

jurisdiction or their right to relief under the Oil Pollution Act; nor do they allege facts supporting

a right to relief under state law.  Their claims are legally insufficient and the complaints should

be dismissed in their entirety under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## BACKGROUND AND CLAIMS

In Case Management Order No. 1 (PTO No. 11), the Court assigned complaints pending

in MDL 2179 to various "pleading bundles" for purposes of "filing … complaints, answers and

any Rule 12 motions."  Bundle C includes claims brought by certain governmental entities for

"public damages," including injury to natural resources, loss of tax revenues, response costs, and

civil penalties.  (*Id.* ¶ III.C; *see also* PTO 25 ¶ 2 & Ex. 2 (listing the Bundle C cases).)  The cases

in this category filed against BP[2] are as follows (grouped geographically for convenience):

**1.  Alabama.**

Four Alabama municipalities, Greenville, Evergreen, Georgiana, and McKenzie (the

"Alabama Cities"), filed a single action against BP and other defendants in the Middle District of

Alabama on September 9, 2010.  (*City of Greenville, et al., v. BP plc*, E.D. La. Dkt. No. 2:10-cv-

---

[2]  The Bundle C complaints addressed in this motion name as defendants some or all of the following:  BP
Exploration & Production Inc., BP Products North America Inc., BP Corporation North America Inc., BP Company
North America Inc**.**, BP America Inc. and/or BP p.l.c.  The BP defendants are referred to collectively as "BP."

The court has established later response dates for other Bundle C complaints.  *See* PTO 25 ¶ 7 (ordering that, absent
agreement by the parties to a different date, the time to respond to Bundle C complaints will not commence until the
later of service of the complaint or its classification into a pleading bundle); Feb. 16, 2011 Order, Doc. No. 1272
(response to Alabama's complaint due thirty days after amended complaint is served); March 24, 2011 Order, Doc.
No. 1730 (response to Local Government Entity Master Complaint due April 30, 2011).

4185.)  The Alabama Cities' complaint was transferred to this Court by an order of the Judicial

Panel on Multidistrict Litigation entered in this Court on November 4, 2010.  (Nov. 4, 2010

Order, Doc. No. 680.)  The Alabama Cities allege that "gas stations, truck stops, restaurants,

hotels, stores and other transportation services" located in each city serve traffic along major

routes between the Gulf Coast and various locations as far away as northern Michigan.  (*Id.* ¶¶ 5-

16.)  According to their complaint, the Alabama Cities "derive a significant amount of their tax

revenue from the Gulf of Mexico's tourism industry and its tourist traffic to and from the Gulf,"

and have allegedly suffered a decline in tax revenues because of a decrease in travelers to the

Gulf Coast after the *Deepwater Horizon* incident.  (*Id.* ¶¶ 9, 17.)  In particular, the Cities allege

damages including 1) lost revenue from taxes and other sources; 2) costs for providing increased

or additional public services to address the oil spill's purported economic effects; and

3) damages associated with the long-term "stigma" from the oil spill.  (*Id.* ¶ 40.)  Plaintiffs allege

only economic damages; they do not allege a physical injury to a proprietary interest.  The

Alabama Cities' Complaint includes causes of action for 1) negligence and/or wantonness;

2) negligence per se; and 3) damages under the Oil Pollution Act.  Plaintiffs do not allege that

they have complied with OPA's presentment requirement.

###    2.   Mexico.

Six states of the United Mexican States (Mexico) border the Gulf of Mexico.  Three of

these—Veracruz, Tamaulipas, and Quintana Roo ("the Mexican States")—filed separate, nearly

identical complaints against BP and other defendants in the district court for the Western District

of Texas on September 15, 2010.[3]  These three cases were transferred to this Court by an order of

the Judicial Panel on Multidistrict Litigation entered in this Court on November 4, 2010.  (Nov.

---

[3]  Tamaulipas and Veracruz are south of Texas; Quintana Roo is on the Yucatán peninsula and includes Cancún and
Cozumel.

4, 2010 Order, Doc. No. 680) (E.D. La. Dkt. Nos. 2:10-cv-4239 (Veracruz), 2:10-cv-4240 (Tamaulipas), and 2:10-cv-4241 (Quintana Roo).)   The Mexican States allege claims for common law negligence, gross negligence, and negligence per se; public and private nuisance; and claims under the Oil Pollution Act of 1990.   Plaintiffs seek allegedly-incurred as well as future economic, environmental, and other damages, including lost profits, revenues, and income; present and future expenses related to preventative measures and scientific studies; lost business and developmental opportunities; and remediation, rehabilitation, and response costs. (*See, e.g.*, *Quintana Roo* Cmplt. ¶ 55.)   Plaintiffs also seek punitive damages.   (*Id.* ¶ 84.)

The Mexican States do not allege that they have complied with OPA's presentment requirement.   The States also do not allege that the U.S. Secretary of State has certified that Mexico provides a "comparable remedy" to U.S. citizens, nor that they have been designated by the Government of Mexico as natural resource trustees under the terms of OPA.   In fact, they do not allege that any oil from the *Deepwater Horizon* spill reached their shores.   Although the Mexican States allege that oceanographers predicted the oil would reach their shores in October or November of last year, none of these States has filed an amended petition making that claim.

### 3.  Louisiana.

The district attorneys for eight Louisiana parishes (Lafourche, New Iberia, Orleans, Plaquemines, St. Bernard, St. Mary, St. Tammany, and Terrebonne) filed separate petitions on behalf of the State of Louisiana in the district courts for their respective parishes.   The petitions, which were filed in May, June, or July 2010, are substantially similar and allege that BP has "killed, caught, taken, possessed or injured fish, wild birds, wild quadrupeds, and other wildlife and aquatic life" in the state, including in the eight parishes, in violation of the Louisiana Fish and Wildlife Statute, La. Rev. Stat. Title 56, regulations established under that statute, or other Louisiana law or regulation.   (*See, e.g., State of Louisiana v. BP Exploration & Production Inc.*,

*et al.* (by New Iberia Parish), E.D. La. Dkt. No. 2:10-cv-2996, Cmplt. ¶ 13.)   The district attorneys seek restitution under La. Rev. Stat. 56:40.1 for the value of the fish or wildlife, plus attorneys' fees and costs.  (*Id.* ¶ 14.)

The Terrebonne district attorney, joined by the district attorneys for the parishes of St. Tammany and St. Mary (whose separate petitions are still pending in MDL 2179), filed an amended petition on June 9, 2010, alleging that the violations under La. Rev. Stat. 56:40.1 occurred within each of eleven parishes bordering the Gulf, specifically: (1) the parishes of those three district attorneys, (2) Lafourche, Iberia, Orleans, Plaquemines, and St. Bernard parishes (whose separate petitions are still pending), and (3) Jefferson, Vermillion, and Cameron parishes. (Supp. & Am. Pet., No. 160769, 32nd Judicial District Court for the Parish of Terrebonne, Louisiana.)  Attached to the amended petition are statements by the secretary and the general counsel of the Louisiana Department of Wildlife and Fisheries purporting to "approve and consent to the annexed Petition."  The certifications also purport to "approve and consent" to jurisdiction and venue in the Terrebonne district court of "all related proceedings" under the Wildlife and Fisheries Statute arising from the explosion of the *Deepwater Horizon* and resulting oil spill.  (*Certification By The State Of Louisiana For The Benefit Of The Louisiana Department Of Wildlife And Fisheries*, No. 160769, 32nd Judicial District Court for the Parish of Terrebonne, Louisiana.)

Defendants removed the eight filed cases to this Court, which denied the district attorneys' motions for remand on October 6, 2010.  (Oct. 6, 2010 Orders, Doce. Nos. 470, 471.) These cases are MDL Dkt. Nos. 2:10-cv-1759 (Terrebonne); 2:10-cv-1760 (St. Tammany); 2:10-cv-2996 (Iberia); 2:10-cv-2997 (St. Mary); 2:10-cv-1758 (Plaquemines); 2:10-cv-1757 (LaFourche); 2:10-cv-2087 (St. Bernard); 2:10-cv-2731 (Orleans).

**ARGUMENT**

Plaintiffs' claims are legally insufficient and should be dismissed under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Under either Rule, the standard is the same:  a claim must be dismissed unless the plaintiff's complaint alleges "a plausible set of facts to support [its] claim."  *Hensley v. Redi-Med of Mandeville*, Civ. A. No. 09-47, 2009 WL 2408319, at *2 (E.D. La. Aug. 4, 2009) (Barbier, J.) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). According to the Supreme Court and the Fifth Circuit, conclusory allegations are not presumed true and to survive dismissal, the required elements of the claim must instead be supported by proper factual allegations that make plaintiffs' entitlement to relief not merely conceivable, but plausible.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950-51 (2009); *Sanford v. Louisiana*, 228 Fed.Appx. 492, 492-93 (5th Cir. 2007); *Hensley*, 2009 WL 2408319, at *2.

I.     **PLAINTIFFS' OPA CLAIMS ARE CONTRARY TO THE PLAIN TERMS OF THE STATUTE AND THE FACTS ALLEGED DO NOT PLAUSIBLY STATE A RIGHT TO RELIEF.**

   A.     **Plaintiffs' Failure to Allege Compliance with OPA Presentment Requires Dismissal of Their OPA Claims.**

Plaintiffs do not even attempt to establish the jurisdictional facts necessary for their claims under the Oil Pollution Act.  The Act, which establishes a comprehensive system to address oil pollution, requires certain designated "responsible parties" to pay specified cleanup costs and damages "that result from" the incident.  33 U.S.C. §§ 2702(a), (b).  The purpose of the Act is to encourage out of court resolution of claims.  33 U.S.C. § 2713(a); *see* 135 Cong. Rec. H7965 (daily ed. Nov. 2, 1989) ("The system of liability and compensation provided for in the bill . . . is intended to allow for quick and complete payment of reasonable claims without resort to cumbersome litigation.").  Accordingly, OPA requires claimants to first "present" all their claims to the responsible party or guarantor.  33 U.S.C. §2713(c).  A suit may be initiated only

after a claim is "presented" in accordance with §2713(a), and the responsible party denies all liability for the claim or the claim is not settled by payment within 90 days.  33 U.S.C. §2713(c); (*see also* BP's B1 Mot. § II.A).

Plaintiffs' failure to comply with OPA's statutory "presentment" requirement is a jurisdictional defect that may not be excused by a court and, independently, defeats the claim on the merits; a district court may not entertain damages claims "unless and until a claimant has presented her claims in compliance with §2713(a)."  *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co., Inc.*, 51 F.3d 235, 240 (11th Cir. 1995).  Thus, courts in this district and elsewhere routinely dismiss OPA claims under both Fed. R. Civ. P. 12(b)(1) and 12(b)(6) if the plaintiffs have not complied with Section 2713's presentment requirements.  *See Boca Ciega*, 51 F.3d at 240 (holding that "the district court was correct when it granted [defendant's] motions to dismiss for lack of subject matter jurisdiction"); *Berthelot v. Boh Bros. Constr. Co., L.L.C.*, Civ. A. No. 05-4182, 2006 WL 2256995, at *6 (E.D. La. July 19, 2006) (finding that OPA allegations could not provide a basis for federal jurisdiction because plaintiffs had failed to follow the OPA presentment requirement); *Marathon Pipe Line Co. v. LaRoche Indus., In*c., 944 F. Supp. 476, 477 (E.D. La. 1996) ("The Court agrees that § 2713's presentation requirement is jurisdictional and mandates dismissal when that provision is applicable and not complied with by the claimant"); *Johnson v. Colonial Pipeline Co.*, 830 F. Supp. 309, 311 (E.D. Va. 1993) (dismissing OPA claims for failure to meet the jurisdictional requirements of federal question jurisdiction); *cf. Turner v. Murphy Oil USA, Inc.*, Civ. A. No. 05-4206, 2007 WL 4208986, at *2 (E.D. La. Nov. 21, 2007) (granting a 12(b)(6) motion to dismiss OPA claims because plaintiffs failed to follow the presentment requirement).

None of the Bundle C complaints makes the necessary factual allegations to state any claim under OPA.  OPA claims are alleged by the Mexican States and the Alabama Cities, but their complaints contain no facts or allegations (1) showing compliance with OPA's presentment requirement and (2) that any such claim was rejected or not settled within 90 days.  Because their OPA claims are legally insufficient as a matter of law and the Court lacks jurisdiction over such claims, they must be dismissed.

### B.  The Mexican States Have Not Alleged A Treaty or Designation as National Trustees, as Required by OPA.

Foreign claimants must establish, in addition to the other requirements of OPA, that "recovery is authorized by a treaty or executive agreement between the United States and the claimant's country, or that the Secretary of State, in consultation with the Attorney General and other appropriate officials, has certified that the claimant's country provides a comparable remedy for United States claimants."  33 U.S.C. § 2707.  The Mexican States do not allege that any such treaty or certification authorizes their claim for damages and/or removal costs, rendering their OPA claims legally insufficient for this reason alone.

Additionally, under OPA, liability for natural resource damages is to the foreign country itself, not a political subdivision, 33 U.S.C. § 2706(a)(4), and natural resource damages can only be requested by a "foreign trustee."  33 U.S.C. § 2702(b)(2)(A).  Although "[t]he head of any foreign government may designate the trustee who shall act on behalf of that government as trustee for natural resources under this Act," 33 U.S.C. § 2706(b)(5), the Mexican States do not allege that they were so designated by the president of Mexico.  This defect independently defeats the Mexican States' OPA claims.

C.     **The Alabama Cities and the Mexican States Are Geographically Remote and Any Alleged Harm Was Not Proximately Caused by an Oil Spill.**

The well-established common-law requirement of proximate cause requires "some direct relation between the injury asserted and the injurious conduct alleged. . . . A link that is 'too remote,' 'purely contingent,' or 'indirec[t]' is insufficient." *Hemi Grp., LLC v. City of New York*, ___ U.S.___, 130 S. Ct. 983, 989 (2010) (citations omitted). As the Supreme Court explained:

> "At bottom, the notion of proximate cause reflects 'ideas of what justice demands, or of what is administratively possible and convenient.' Accordingly, among the many shapes this concept took at common law, was a demand for some direct relation between the injury asserted and the injurious conduct alleged. Thus, ***a plaintiff who complained of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts was generally said to stand at too remote a distance to recover***."

*Holmes v. Sec. Investor Protection Corp.*, 503 U.S. 258, 268-69 (1992) (internal citations omitted). Thus, "'[t]he general tendency of the law, in regard to damages at least, is not to go beyond the first step.'" *Id.* at 271-72 (quoting *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 534 (1983), citing *S. Pac. Co. v. Darnell-Taenzer Lumber Co.*, 245 U.S. 531, 533 (1918)); *see also Hemi Grp.*, 130 S. Ct. at 989. Given this common law background, statutes are properly construed to include a proximate cause requirement, absent express language to the contrary: "it has always been the practice of common-law courts (and probably of all courts, under all legal systems) to require as a condition of recovery, unless the legislature specifically prescribes otherwise, that the injury have been proximately caused by the offending conduct." *See, e.g.*, *Holmes*, 503 U.S. at 287 (Scalia, J., concurring); *Assoc. Gen. Contractors*, 459 U.S. at 531-34; *Shaw v. R.R. Co.*, 101 U.S. 557, 565 (1879).

Like the statutes the Supreme Court construed in cases such as *Hemi* and *Holmes*, the Oil Pollution Act similarly incorporates a proximate cause requirement.  The statute imposes two causal limitations on recovery of economic losses and government revenues.  First, claimants must show that their damages "***result from***" the discharge of oil.  33 U.S.C. § 2702(a) (emphasis added).  Second, in order to recover lost governmental revenue or lost profits, claimants must show not only that their damages "result from" an oil spill but, in addition, must show that such losses are "***due to the injury, destruction, or loss of real property, personal property, or natural resources***." *Id*.; 33 U.S.C. § 2702(b)(2)(D) & (E) (emphasis added).  These causal requirements, both individually and in tandem, establish a proximate cause requirement that bars recovery for remote economic damages claims.

Case law confirms this construction of the Oil Pollution Act.  For example, the Ninth Circuit has held that virtually identical "results from" language in the Trans-Atlantic Pipeline Authorization Act of 1973 established a proximate cause requirement.  According to the Ninth Circuit, a provision imposing liability upon a vessel owner for damages "sustained . . . as the result of discharges of oil from such vessel" included proximate cause as an element of the claim.  *See Benefiel v. Exxon Corp.*, 959 F.2d 805, 807 (9th Cir. 1992) (dismissing, for lack of proximate causation, claims of geographically remote claimants alleging high gas prices); *see also Ballard Shipping Co. v. Beach Shellfish*, 32 F.3d 623, 630 (1st Cir. 1994) (concluding that the Rhode Island Environmental Injury and Compensation Act's extension of liability to "loss of income or diminution of profit . . . as a result of damage to the natural resources of the state of Rhode Island caused by the violation of [pilot and pollution laws]" incorporated "familiar tort limitations of foreseeability and proximate cause") (internal citations omitted).  Similarly, courts construe the term "due to" to impose a proximate cause requirement.  *See, e.g., M Conley Co. v.*

*Anderson*, 842 N.E.2d 1037, 1039 (Ohio 2006); *Holscher v. Valley Queen Cheese Factory*, 713 N.W.2d 555, 567 (S.D. 2006) (proximate cause required under a workers' compensation statute, citing case law "equating 'due to' with 'proximate cause under negligence law'").[4]  The "due to" language in § 2702(b)(2) of the Oil Pollution Act directly links economic losses to physical damage to property or natural resources, and is a further limitation on damages beyond the § 2702(a) requirement that the damages "result from" the spill.  Individually and together, these OPA provisions require claimants to establish proximate causation.

The damages alleged by the Alabama Cities and the Mexican States do not satisfy the proximate cause requirement under OPA (or the common law).  The Mexican States do not allege, for example, any damages that "result from" the oil spill or that are "due to the injury, destruction, or loss of real property, personal property, or natural resources."  Nor can they, because they do not (and cannot) allege that oil has reached their shores.  Given that no oil came anywhere near Mexico, the Deepwater Horizon oil spill could not have injured or destroyed property or a natural resource upon which the Mexican States rely for revenue.  Under these circumstances, any loss of revenue cannot be said to be "due to" or "result[ing] from" the oil spill.

The Alabama Cities are located more than 100 miles from the Alabama coast—and their alleged damages are likewise geographically too remote to establish proximate cause.  Plaintiffs have not alleged, and cannot show, that they lost revenues as a "result" of the oil spill or "due to the injury, destruction, or loss of real property, personal property, or natural resources."  They

---

[4] The Supreme Court has construed similar broad causal language in other statutes as including a proximate cause requirement barring remote, indirect claims.  *See, e.g., Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or.*, 515 U.S. 687 (1995) (Endangered Species Act); *Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 536 (1995) (Admiralty Extension Act)*; Holmes v. SIPC*, 503 U.S. at 268 (Federal RICO statute); *Assoc. Gen. Contractors*, 459 U.S. at 536-46 (Clayton Act).

cannot and do not explain how such an "injury, destruction, or loss" directly and proximately caused lost revenues over 100 miles away. Instead, the losses alleged by the Alabama Cities are indirect and entirely derivative of losses allegedly suffered by local businesses as a result of allegedly declining road traffic, which in turn is allegedly caused by consumer perception and declining travel to the Gulf, which in yet another turn is occasioned by oil that might have affected natural resources at least 110 miles away. The Alabama Cities' claims are not subject to any limiting principle: they would be indistinguishable, for example, from similar claims filed by cities another 100 miles away, and another 100 miles after that. Moreover, each of these steps introduces a myriad of possible alternative causes, such as higher fuel prices, the economic recession, and other factors.

Thus, the injuries alleged in the Alabama Cities' complaint are remote and speculative, and would violate the Supreme Court's injunction in *Holmes* that courts should "not . . . go beyond the first step." 503 U.S. at 271-72 (citations omitted); *see also In re Exxon Valdez*, 270 F.3d 1215, 1253 (9th Cir. 2001) (holding that, as a matter of law, claims of "area businesses," "commercial fishermen outside the closed areas," and "persons claiming 'stigma' damages," were too remote to satisfy proximate cause); *Adkins v. Trans-Alaska Pipeline Liab. Fund*, 101 F.3d 86, 89 (9th Cir. 1996) (upholding dismissal, for lack of proximate cause, of claims under the Trans Atlantic Pipeline Authorization Act of 1973 brought by boat repair and recreational fishing companies "located outside of the geographic limits of the oil spill"); *Benefiel v. Exxon Corp.*, 959 F.2d at 807 (dismissing for lack of proximate cause a purported class action filed by California consumers alleging that the *Exxon Valdez* spill had caused the price of gas to increase).[5]

---

[5] Courts regularly dismissed complaints for failure to allege proximate causation even before the Supreme Court established more rigorous pleading standards in *Iqbal* and *Twombly*. *See, e.g., Holmes, supra; Assoc. Gen.*

In sum, plaintiffs' claims under the Oil Pollution Act fail as a matter of law and should be dismissed because plaintiffs fail to allege compliance with the statute's presentment requirement or (for the Mexican States) its foreign-claimant requirements.  Plaintiffs' OPA claims also fail because plaintiffs do not allege damages proximately caused by the oil spill.

## II.    PLAINTIFFS' COMMON LAW CLAIMS ARE INSUFFICIENT AS A MATTER OF LAW AND SHOULD BE DISMISSED.

### A.    Federal Law Is the Exclusive Remedy for Claims Arising from Oil Spills on the Outer Continental Shelf and Preempts Plaintiffs' Common Law Claims.

Although the Alabama Cities and the Mexican States bring various claims under the common law, none alleges what law applies to those claims.[6]  But the choice of law analysis here is simple because Congress has already directed what law must apply to oil spills on the Outer Continental Shelf:  under the Outer Continental Shelf Lands Act ("OCSLA"), federal law is the exclusive remedy for claims arising from drilling for oil or other mineral-exploration or development activities on the Outer Continental Shelf.  *See* 43 U.S.C. § 1333.[7]  State law is expressly preempted; it never applies of its own force to claims arising from such activities.  *Id.*; *see also Tenn. Gas Pipeline v. Houston Cas. Ins. Co.*,, 87 F.3d 150, 153 (5th Cir. 1992)

---

*Contractors, supra; Adkins*, 101 F.3d at 89; *Benefiel*, 959 F.2d at 807.  Under the current, more rigorous standard, the proximate cause deficiency is even more apparent.  As this defect cannot be remedied, amendment would be futile and dismissal with prejudice is appropriate.  If, however, the Court concludes otherwise, then BP submits that the issue of proximate cause should be addressed on summary judgment.

[6] None of the Pleading Bundle C plaintiffs alleges that maritime law applies to its claims or designates an admiralty claim under Fed. R. Civ. P. 9(h).  To the extent any of these plaintiffs are nonetheless alleging claims under maritime law, such claims are displaced by OPA for the reasons discussed in Part I.A of BP's Motion to Dismiss the First Amended Master Complaint for the B1 Bundle.

[7] *See also Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 217 (1986) ("The intent behind OCSLA was to treat the artificial structures covered by the Act as upland islands or as federal enclaves within a landlocked State."); *Demette v. Falcon Drilling Co.*, 280 F.3d 492, 498 (5th Cir. 2002) (holding that "a device temporarily attached to the seabed, which was erected on the Outer Continental Shelf for the purpose of drilling for oil" fell within the scope of section 1333(a)(1)), *overruled in irrelevant part by Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778 (5th Cir. 2009) (en banc); *Tennessee Gas Pipeline v. Houston Cas. Ins. Co.*, 87 F.3d 150, 153 (5th Cir. 1996) (OCSLA establishes "makes federal law exclusive in its regulation of the [Shelf]…."); *see generally* BP's B1 Bundle Mot. at 7-9.

(explaining that OCSLA establishes "national authority over the [Outer Continental Shelf] at the expense of both foreign governments and the governments of the individual states."). Instead, OCSLA provides that the law of the nearest adjacent state (here, Louisiana) may apply (if at all) only indirectly as surrogate federal law and only if necessary to fill a gap in federal law. *See Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 480-81 (1981).[8]

Here, there are no gaps to fill because Congress provides comprehensive federal remedies. The Oil Pollution Act, for example, provides an expansive, comprehensive, and inclusive system to address oil pollution. (*See* B1 Bundle Mot. at 9-11, § III.C.)[9] Congress enacted OPA "to create a single Federal law providing cleanup authority, penalties, and liability for oil pollution." S. Rep. 101-94 (1990), *reprinted in* 1990 U.S.C.C.A.N. 722, 730.[10] Hence, under the Outer Continental Shelf Lands Act, there is no need for surrogate federal law and no role, even indirectly, for the law of Louisiana (or any state). *Id.* Because the Oil Pollution Act and Outer Continental Shelf Lands Act preempt plaintiffs' common law claims for negligence, wantonness, negligence per se, gross negligence, and public and private nuisance, those claims must be dismissed.

---

[8] *See also Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 349 (5th Cir. 1999); *EP Operating Ltd. P'ship v. Placid Oil Co.*, 26 F.3d 563, 566 (5th Cir. 1994); *Union Tex. Petroleum Corp. v. PLT Eng'g, Inc.*, 895 F.2d 1043, 1052 (5th Cir. 1990) ("Any other result here would frustrate the Congressional purpose that the [Outer Continental Shelf] be treated as an area of exclusive federal jurisdiction within the state where state law will apply to fill in the gaps in the federal law.").

[9] Even if Louisiana law applied (and it does not), plaintiffs' common law claims would be preempted by the Louisiana Oil Spill Prevention and Response Act, the exclusive state remedy for oil spills. La. Rev. Stat. § 30:2491(a) (the Oil Spill Act "shall supersede any other liability provisions provided by any other applicable state law.").

[10] *See also Tanguis v. M/V Westchester*, 153 F. Supp. 2d 859, 867 (E.D. La. 2001) ("OPA 'represents Congress' attempt to provide a comprehensive framework in the area of marine oil pollution.'"); *Targa Midstream Servs. Ltd. P'ship v. K-Sea Transp. Partners, L.P.*, No. Civ.A. G-05-629, 2006 WL 2520914, *2 (S.D. Tex. Apr. 20, 2006) ("OPA created a stricter and more comprehensive liability scheme for oil spill pollution than had existed under prior legislation…"); *Rice v. Harken Exploration Co*., 89 F. Supp. 2d 820, 822 (N.D. Tex. 1999) (similar); *cf. Gatlin Oil Co., Inc. v. United State*s, 169 F.3d 207, 209 (4th Cir. 1999) (Congress enacted OPA to provide a "prompt, federally-coordinated response to oil spills in navigable waters of the United States and to compensate innocent victims").

Furthermore, a state's common law liability for pollution may not be imposed when the source of the oil spill is outside its territorial boundaries.  According to the Supreme Court, a state has no authority to regulate—through its common law or otherwise—pollution whose source is outside its territory, even if the effects of the pollution are felt within the state.  *See Int'l Paper Co. v. Ouellette*, 479 U.S. 481 (1987).[11]  In such cases, pollution control is a matter of federal law, including the Clean Water Act and OPA.  Liability rules imposed by the impacted state impermissibly interfere with the federal scheme, "upsetting the balance of public and private interests so carefully addressed by the [Clean Water] Act."  *Ouellette*, 479 U.S. at 494. (*See* B1 Bundle Mot. § III.B for further discussion of preemption and the Clean Water Act.)[12]

**B.     Plaintiffs' Common Law Claims for Purely Economic Loss Are Insufficient as A Matter of Law.**

The Alabama Cities and Mexican States cannot maintain their claims for negligence, gross negligence, wantonness, negligence per se, and public and private nuisance for the additional independent reason that the claims are barred by the economic loss rule.  Under both maritime and common law, the economic loss rule bars recovery in tort where, as here, plaintiffs allege only economic losses with no accompanying physical injury to a proprietary interest.  (*See* B1 Bundle Mot. §§ I.B & III.D.2.)  Because the losses alleged by the Alabama Cities and

---

[11] *See also id.* ("After examining the [Clean Water Act] as a whole, its purposes and its history, we are convinced that if affected States were allowed to impose separate discharge standards on a single point source, the inevitable result would be a serious interference with the achievement of the 'full purposes and objectives of Congress.'") (quoting *Hillsborough County v. Automated Med. Labs., Inc.,* 471 U.S. 707, 713 (1985)); *Arkansas v. Oklahoma,* 503 U.S. 91, 100 n.6 (1992) ("The affected State may try to persuade the federal government or the source state to increase effluent requirements, but *ultimately possesses no statutory authority to compel that result, even when its waters are adversely affected by out-of-state pollution*.") (emphasis in original) (approvingly quoting Brief of the United States as Amicus Curiae, October Term 198, No. 85-1233, p. 19).

[12] To the extent the Mexican States are attempting to assert a freestanding claim for punitive damages (*e.g., Quintana Roo* Cmplt. ¶ 84), such a claim is patently meritless.  There can be no independent claim for punitive damages.  *Byrne v. Nezhat*, 261 F.3d 1075, 1093 n.34 (11th Cir., 2001) ("We note that a prayer for punitive damages is not an independent cause of action."); *Allen v. R & H Oil and Gas Co.*, 63 F.3d 1326, 1333 (5th Cir. 1995) ("In other words, a claim for punitive damages is not by itself an independent tort.").

Mexican States are purely economic, their common law claims are legally insufficient and should be dismissed.

## III. THE LOUISIANA DISTRICT ATTORNEYS' CLAIMS UNDER THE LOUISIANA WILDLIFE AND FISHERIES STATUTE ARE PREEMPTED.

### A. The Louisiana Oil Spill Prevention and Response Act Preempts the Parish District Attorneys' Claims Under the Wildlife and Fisheries Statute.

The exclusive remedy for oil spills under Louisiana law is the Louisiana Oil Spill Prevention and Response Act ("Louisiana Oil Spill Act"). La. Rev. Stat. § 30:2491(a) (the Oil Spill Act "supersede[s] any other liability provisions provided by any other applicable state law."). The preemptive effect is comprehensive, barring all state law claims with one exception: under § 30:2491(b) of the Oil Spill Act, wildlife claims may be brought by the Louisiana Department of Wildlife and Fisheries ("Department") itself. La. Rev. Stat. § 30:2491(b) ("[N]othing herein shall be construed to preclude the Department of Wildlife and Fisheries from bringing a civil suit to recover penalties for the value of each fish, wild bird, wild quadruped, and other wildlife and aquatic life unlawfully killed, caught, taken, possessed, or injured pursuant to" the Wildlife Statute). Thus, regardless of the district attorneys' authority to bring civil actions under other circumstances, if the alleged harm is from an oil spill, as in this case, the Louisiana Oil Spill Act vests the Department with sole responsibility for bringing civil actions under the wildlife statute. La. Rev. Stat. § 30:2491(b). The district attorneys' claims—under the wildlife statute or "any other applicable state law"—are plainly outside this narrow exception for Department wildlife claims in § 30:2491(b), and are therefore expressly preempted by § 30:2491(a) of the Louisiana Oil Spill Act.

The decision by the Louisiana legislature, expressed in the Oil Spill Act, to assign enforcement responsibility to a single state-level entity is consistent with a principal purpose of that Act: to protect the state's interests in its abundant fish and wildlife and the economic

opportunities they provide.  *E.g.*, *id.* § 30.2452 (finding that Louisiana is at greater risk from potential oil spills than any other state in part because Louisiana "has twenty-six percent of the nation's commercial fisheries, has the nation's highest marine recreational fishery catches, leads the nation in fur production and the world in alligator production, and has more overwintering waterfowl than any other state").  Limiting civil enforcement to the Department of Wildlife and Fisheries is also consistent with the Department's important role in oil spill responses under both Louisiana and federal law.  The Department is specifically designated as one of the State Natural Resource Trustees, who are central under OPA and Louisiana Oil Spill Act, 25:3 La. Reg. 500 § 109, and is an important participant in the natural resource damage assessment process.  La. Rev. Stat. § 30:2460 & 2480; *see also id.* § 30:2453 (noting that intent of the Louisiana Oil Spill Act is "to support and complement [OPA] and other federal law … including provisions relating to the responsibilities of state agencies designated as natural resources trustees").[13]  In contrast, parish district attorneys have no such role or responsibility.

Furthermore, under the state wildlife statute, if a district attorney rather than the Department initiates a civil action for wildlife violations, forty percent of any recovery—measured by the value of the affected fish and wildlife—is diverted to that district attorney's office.  *Id.* § 56:40.9.  The legislature was free to conclude that, in the case of an oil spill, the state's interests are better served by entrusting civil enforcement of the wildlife statute to the Department (with recoveries deposited in Department's Conservation Fund) rather than by numerous overlapping actions by parish district attorneys having competing claims to forty percent of the recoveries.

---

[13] Under the Louisiana Oil Spill Act, the Department is also a member of the Oil Spill Interagency Council, *id.* § 30:2458, and is involved with grants to universities related to oil spills and wildlife.  *Id.* § 30:2495.

In fact, diverting any portion of the recoveries to the district attorneys is inconsistent with (and unlawful under) OPA, which establishes a comprehensive procedure for assessing damages and restoring natural resources injured by an oil spill.  *See* 33 U.S.C. § 2706.  Specifically, any natural resource damages recovered "shall be retained by the [state natural resource] trustee in a revolving trust account, without further appropriation, for use only to reimburse or pay costs incurred by the trustee … with respect to the damaged natural resources."  33 U.S.C. § 2706.  According to the Louisiana legislature, for oil spill incidents, "conflicting applicable federal law shall take precedence."  La. Rev. Stat. § 30:2491(a); *see also* § 30:2453 (the Louisiana Oil Spill Act is intended "to support and complement [OPA] and other federal law, specifically those provisions relating to the national contingency plan for cleanup of oil spills and discharges, including provisions relating to the responsibilities of state agencies designated as natural resources trustees.").  Permitting the district attorneys to retain forty percent of the monetary recoveries for damage to Louisiana's natural resources conflicts with OPA's express requirement that such damages be used only for natural resource restoration and similar efforts.

Finally, neither the district attorneys nor the Department have authority to negate the Louisiana legislature's decision to assign sole responsibility for enforcement to the Department, and the district attorneys' attempts to do so must fail.  For example, apparently recognizing that the Louisiana Oil Spill Act preempts the district attorneys' wildlife and fisheries claims, the St. Tammany district attorney listed the Department as plaintiff in the caption of his petition (the only reference to the Department), but otherwise specified that the "plaintiff" was "the State of Louisiana."  (Petition at 1, 2:10-cv-1760 (St. Tammany); *see also* Motion and Order to Seal, ¶ 2, 2:10-cv-1760 (referring to "this matter…as a confidential filing by the State of Louisiana by and through St. Tammany Parish…").)  The inconsistency is unsurprising:  the wildlife statute

authorizes the district attorneys to initiate action on behalf of the State, not on behalf of the Department of Wildlife and Fisheries, La. Rev. Stat. § 56:40.4.[14]  Similarly, the amended petition brought by the Terrebonne district attorney (joined by two other district attorneys) attaches a statement by the Department's secretary and legal counsel purporting to "approve and consent to the annexed Petition."  But the Department did not join as plaintiff or sign the petition, and is not mentioned anywhere in the petition.  Regardless, the Department has no authority to "approve" claims preempted by the Oil Spill Act.  In an appropriate oil spill case, the Department may bring its own action under the Wildlife statute but it cannot negate the legislature's decision that the Department is the sole entity with enforcement authority for wildlife claims involving oil spills, nor revive preempted claims (and the district attorneys' forty-percent fee).

### B. OPA, OCSLA, and the Clean Water Act Preempt Claims Under the Wildlife Statute for Wildlife Injured by Oil Spills That Occur on the Outer Continental Shelf.

OPA, OCSLA, and the Clean Water Act preempt all state claims, including the district attorneys' attempts to recover under the Louisiana Wildlife Statute. BP's liability for the *Deepwater Horizon* incident is fully governed by OPA, which, as previously described, creates a comprehensive remedial scheme to address oil pollution, including damages to wildlife and aquatic life.  (*See supra* Part II.A.)  Thus, there is no gap in federal law related to oil pollution arising on the Outer Continental Shelf and no need to borrow Louisiana law as surrogate federal law.  (*Id.*, *see also* B1 Bundle Mot. § III.C.)

---

[14] The district attorneys do not have free-standing authority to institute civil actions on behalf of a state agency.  *Cf. In re Louisiana Riverboat Gaming Comm'n*, 659 So.2d 775 (La. App. 1995) ("the district attorney's authority is limited to 'representation,' while the Attorney General is specifically authorized to 'institute, prosecute or intervene'.").

Because the district attorneys' claims under the wildlife statute are preempted by Louisiana Oil Spill Act, as well as by OCSLA, OPA, and the Clean Water Act, they should be dismissed with prejudice.

## **CONCLUSION**

For the foregoing reasons, the Bundle C complaints against BP filed by the Alabama Cities, the Louisiana district attorneys (on behalf of the State), and the Mexican States should be dismissed in their entirety.

Respectfully submitted,


/s/ Don K. Haycraft
Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

and

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Andrew B. Bloomer, P.C.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

**Attorneys for BP**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 28th day of March, 2011.

/s/ Don K. Haycraft
Don K. Haycraft