IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

IN RE: OIL SPILL by the Oil Rig        *    MDL NO. 2179
      "DEEPWATER HORIZON: in the      *
      GULF OF MEXICO, on April 20, 2010    *
                                     *    SECTION: "J"
                                     *
                                     *
                                     *    JUDGE BARBIER
                                     *    MAG. JUDGE SHUSHAN
THIS DOCUMENT RELATES TO:          *
    **Civil Action No. 10-1245**           *
    Darleen Jacobs Levy vs. BP, PLC, et al    *

*******************************************

<u>NINTH SUPPLEMENTAL COMPLAINT FOR DAMAGES</u>

NOW COMES Plaintiff Darleen Jacobs Levy, who supplements her Original, First,

Second, Third , Fourth, Fifth, Sixth, Seventh and Eight Supplemental and Amending Complaint

for Damages to add the following additional Plaintiffs:

Wilfred Gallardo and Willie Mallard

I.

Plaintiffs adopt herein by reference all allegations contained in their Original, First,

Second, Third, Fourth, Fifth, Sixth, Seventh and Eight Supplemental and Amending Complaints

for Damages.  Plaintiffs wish to add the following defendants to their lawsuits:

A.      BP EXPLORATION & PRODUCTION, INC. ("BP Exploration"), Defendant, Cross-

         Defendant in Limitation, and/or Third-Party Defendant in Limitation, is a Delaware

         corporation with its principal place of business in Warrenville, Illinois.  BP Exploration

         was a lease holder and the designated operator in the lease granted by the former Minerals

1

Management Service ("MMS") allowing it to perform oil exploration, drilling, and production-related operations in Mississippi Canyon Block 252, the location known as "Macondo" where the Spill originated.  BP Exploration was designated as a "Responsible Party" by the U. S. Coast Guard under the Oil Pollution ct of 1990, 33 U.S.C § 2714. This court has personal jurisdiction over BP Exploration, because BP Exploration is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.

B.   BP AMERICA PRODUCTION COMPANY ("BP America"), Defendant, Cross-Defendant in Limitation, and/or Third-Party Defendant in Limitation, is a Delaware corporation with its principal place of business in Houston, Texas.  BP America was the party to the Drilling Contract with Transocean Ltd. For the drilling of the Macondo well by the Deepwater Horizon vessel.  This Court has personal jurisdiction over BP America, because BP America is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.

C.   BP, p.l.c, Defendant, Cross-Defendant in Limitation, and/or Third-Party Defendant in Limitation, is a British public limited company with its corporate headquarters in London, England.  BP p.l.c. is the global parent company of the worldwide business operating under the "BP" logo. BP p.l.c. is one of the world's largest energy companies with over 80,000 employees and $239 billion in revenues in 2009.  BP p.l.c. operates its various business divisions, such as the "Exploration and Production" division in which BP Exploration and BP America fall, through vertical business arrangements aligned by product or service groups.  BP p.l.c.'s operations are worldwide, including in the United

States.  Defendants BP Exploration and BP America are wholly-owned subsidiaries of BP p.l.c. and are sufficiently controlled by BP p.l.c. so as to be BP p.l.c's agents in Louisiana and the U.S. more generally.

1.     BP p.l.c. states that it is the leading producer of oil and natural gas in the United States and the largest investor in U.S. energy development.  A sampling of BP p.l.c.'s contacts with the U.S. are as follows: (a) BP p.l.c.'s American Depository Shares are listed on the New York Stock Exchange and BP p.l.c. is the largest non-U.S. company listed on the NYSE; (b) roughly 40% of BP's shares are owned by U.S. individuals and institutions; ( c) BP p.l.c. files annual reports with the U.S. Securities and Exchange Commission; (d) approximately 60% of BP p.l.c.'s fixed assets are located in the U.S.-based employees in non-Exploration & Production, non-Refining & marketing BP entities

2.     This Court has general jurisdiction over BP p.l.c. pursuant to Louisiana's longarm general jurisdiction provision (13 Louisiana Statute § 3201(B), in combination with Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure.  BP p.l.c. does business in Louisiana, has had continuous and systematic contacts with Louisiana (and the U.S. more generally).

3.     Alternatively, if BP p.l.c. contests that it is subject to jurisdiction under Louisiana's long-arm jurisdiction statute, then this Court may exercise personal jurisdiction over BP p.l.c. pursuant to Rule 4(k)(2) of the Federal Rules of Civil Procedure, the federal long-arm jurisdiction provision, because claims in this action arise under federal law, the exercise of jurisdiction over BP p.l.c. is

3

consistent with the United States Constitution and laws."

4.     This Court also has specific jurisdiction over BP p.l.c. pursuant to Louisiana's long-arm specific jurisdiction provision (13 Louisiana Statute § 3201(B), in combination with Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure. Plaintiffs' causes of action arise out of wrongful conduct committed by BP p.l.c., directly or indirectly by its agents, that caused injury or damage in Louisiana by an offense or quasi offense committed through an act or omission outside of Louisiana, and BP, p.l.c. regularly does or solicits business, or engages in any other persistent course of conduct, or derives revenue from goods used or consumed or services rendered in Louisiana.  These acts or omissions took place both before the blowout resulting in the oil spill and in the negligent conduct of BP, p.l.c. after the blowout in attempting to contain the catastrophic damage caused by the oil spill.

5.     In addition, this Court also has personal jurisdiction over BP p.l.c. under agency principles, because BP p.l.c.'s agents, BP America and BP Exploration, do business in Louisiana.  BP America and BP Exploration are both wholly-owned subsidiaries of BP p.l.c.  In BP p.l.c.'s Annual Report for 2009, in which it presents a consolidated financial statement that includes BP America and BP Exploration, BP p.l.c. states that it "controls" both BP America and BP Exploration, among other subsidiaries, meaning that it has "the power of govern the financial and operating policies of the [subsidiary] so as to obtain benefit from its activities . . . ." 194.  BP p.l.c.'s direct, joint and/or assumed responsibility

4

and/or liability for safety and well control, both before and/or after the explosions
and blowout on April 20, 2010, is further evidenced by the announcement of the
Macondo Project on the BP website hosted and copyrighted by BP p.l.c., the
publication of information concerning the casualty and spill on the BP website
hosted and copyrighted by BP, the express and/or implied acceptance of
responsibility for the safety of BP operations in North America and the Gulf of
Mexico in statements by officers of BP p.l.c., the presence (upon information and
belief) of a BP p.l.c. officer or employee on the Deepwater Horizon for the
celebration that occurred shortly before the explosions and fire, the direct
participation of BP p.l.c. officers and employees in the Governmental post-
casualty investigations, the direct participation of BP p.l.c. officers and employees
in the post-casualty well-control efforts, and the direct participation of BP p.l.c. in
the establishment and/or funding of the Escrow Fund and/or Gulf Coast Claims
Facility.

BP Exploration, BP America, and BP p.l.c. are generally referred to herein collectively as
"BP."  As lease operator of the Macondo prospect site, BP was responsible for assessing the
geology of the prospect site, engineering the well design, obtaining regulatory approvals for well
operations, and relating and overseeing the contractors working on the various aspects of the well
and the drilling operations.

       D.      TRANSOCEAN, LTD. ("Transocean Ltd.") is a Swiss corporation that maintains
              substantial U.S. offices in Houston, Texas, and that all pertinent times was doing
              business in the State of Louisiana and within this district.  According to its

Complaint and Petition for Exoneration from or Limitation of Liability,

Transocean Ltd .was an owner, managing owner, owner pro hac vice, and/or

operator of the Deepwater Horizon.

E.    TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INC. ("Transocean

Offshore") is a Delaware corporation with its principal place of business in

Houston, Texas, and that at all pertinent times was doing business in the State of

Louisiana and within this district.  Transocean Offshore is affiliated with

Transocean Ltd. And was an owner, managing owner, owner pro hac vice, and/or

operator of the Deepwater Horizon.

F.    TRANSOCEAN DEEPWATER, INC. ("Transocean Deepwater"), Defendant,

Cross-Defendant in Limitation, and/or Third-Party Defendant in Limitation, is a

Delaware corporation with its principal place of business in Houston, Texas, and

that at all pertinent times was doing business in the State of Louisiana and within

this district.  Transocean Deepwater is affiliated with Transocean Ltd. and was an

owner, managing owner, owner pro hac vice, and/or operator of the Deepwater

Horizon.

G.    TRANSOCEAN HOLDING, L.L.C. ("Transocean Holdings"), Defendant, Cross-

Defendant in Limitation, and/or Third-Party Defendant in Limitation, is a

Delaware corporation with its principal place of business in Houston, Texas, and

that at all pertinent times was doing business in the State of Louisiana and within

this district.  Transocean Holdings is affiliated with Transocean Ltd. And is a

wholly-owned subsidiary of Transocean Offshore.  Transocean Holdings is an

owner, managing owner, owner pro hac vice, and/or operator of the Deepwater Horizon and participated in the Deepwater Horizon's offshore oil drilling operations at the Macondo prospect, where the Spill originated. More specifically, Transocean Holdings is party to the contract with BP regarding the lease of the Deepwater Horizon for drilling operations in the Gulf of Mexico. On April 28, 2010, the U.S. Coast Guard named Transocean Holdings as a "Responsible Party" under the Oil Pollution Act for the surface oil spill resulting from the blowout by the Deepwater Horizon.

H.     TRITON ASSET LEASING GMBH ("Triton"), Defendant, Cross-Defendant in Limitation, and/or Third-Party Defendant in Limitation, is a Swiss limited liability company with its principal place of business in Zug, Switzerland. Triton is affiliated with Transocean Ltd. And is an owner, managing owner, owner pro hac vice, and/or operator of the Deepwater Horizon.

Transocean Ltd., Transocean Deepwater, Transocean Offshore, Transocean Holdings, and Triton are hereinafter referred to collectively as "Transocean." At the Macondo site, Transocean provided the Deepwater Horizon vessel and personnel to operate it. At all times relevant to the Spill, Transocean, subject to BP's inspection and approval, was responsible for maintaining well control equipment, such as the blowout preventer and its control systems. Transocean also provided operational support for drilling-related activities on board the Deepwater Horizon, as well as onshore supervision and support for those drilling activities at all times relevant to the Spill.

I.     HALLIBURTON ENERGY SERVICES, INC. ("Halliburton"), Defendant, Cross-

Defendant in Limitation, and/or Third-Party Defendant in Limitation, is a Delaware corporation with its principal place of business in Houston, Texas. Halliburton is registered to do and does business in the State of Louisiana. Halliburton provided engineering services, materials, testing, mixing, and pumping for cementing operations on board the Deepwater Horizon, as well as onshore engineering support for those operations. Halliburton was responsible for the provision of technical advice about the design, modeling, placement, and testing of the cement that was used in the Macondo well. At and before the time of the blowout, Halliburton was engaged in cementing operations to isolate the hydrocarbon reservoirs and seal the bottom of the well against the influx of hydrocarbons like gas and oil. Halliburton division Sperry Drilling Services (formerly Sperry Sun Drilling Services) was responsible for mudlogging personnel and equipment on the Deepwater Horizon, including downhole drilling tools. Sperry mudlogging personnel were partially responsible for monitoring the well, including mud pit fluid levels, mud flow in and out of the well, mud gas levels, and pressure fluctuations. Throughout this Complaint "Halliburton" shall refer to both Halliburton Energy Services, Inc. and its Sperry division.

BP, Transocean and Halliburton are collectively referred to herein as the "Drilling Defendants," as they were all involved in the drilling, cementing, and other temporary well abandonment activities of the Deepwater Horizon, and thus their actions caused and/or contributed to the Spill.

J.    CAMERON INTERNATIONAL CORPORATION f/k/a COOPER-CAMERON

8

CORPORATION ("Cameron"), Defendant, Cross-Defendant in Limitation, and/or Third-Party Defendant in Limitation, is a Delaware corporation with its principal place of business in Houston, Texas.  Cameron is registered to do and does business in the State of Louisiana.  Cameron manufactured, designed, supplied, and/or installed the Deepwater Horizon's sub-sea emergency well-closure device known as a blowout-preventer ("BOP"), which is, and was at all material times, an appurtenance of the vessel and a part of the vessel's equipment.  The Cameron-made BOP that was installed at the Macondo wellhead failed to operate as intended at the time of the blowout on April 20, 2010, was improperly designed, was inappropriate for the intended environment or use, and/or possessed product defects.

K.     WEATHERFORD U.S.L.P. ("Weatherford"), Defendant, Cross-Defendant in Limitation, and/or Third-Party Defendant in Limitation, is a Louisiana limited partnership that maintains its principal place of business in Houston, Texas, and that at all pertinent times was registered to do, and was doing business in Louisiana and within this district.  Weatherford designed and manufactured, marketed, sold, and/or distributed the casing components such as the float collar, shoe, and centralizers appurtenant to the vessel, and provided the personnel and equipment for running the casing and casing components into the wellbore.

L.     ANADARKO PETROLEUM CORPORATION CO. ("Anadarko"), Defendant, Cross-Defendant in Limitation, and/or Third-Party Defendant in Limitation, is a Delaware corporation with its principal place of business in the Woodlands,

Texas.  Anadarko is registered to do and does business in the State of Louisiana.
Andarko is an oil and gas exploration and production company.

M. ANADARKO E&P COMPANY LP ("Andrko E&P"), Defendant, Cross-Defendant in Limitation, and/or Third-Party Defendant in Limitation, is a Delaware limited partnership with its principal place of business in the Woodlands, Texas.  Anadarko E&P is registered to do and does business in the State of Louisiana.  Anadarko E&P is an oil and gas exploration and production company.

N. MOEX OFFSHORE 2007 LLC ("MOEX Offshore"), Defendant, Cross-Defendant in Limitation, and/or Third-Party Defendant in Limitation, is a Delaware corporation with its principal place of business in Houston, Texas.  MOEX Offshore does business in the State of Louisiana and/or in state and/or federal waters off the coast of Louisiana.  MOEX Offshore is a wholly-owned subsidiary of MOEX USA Corporation.

O. MOEX USA CORPORATION ("MOEX USA"), Defendant, Cross-Defendant in Limitation, and/or Third-Party Defendant in Limitation, is incorporated in Delaware and has its principal place of business in Houston, Texas.  MOEX USA is the parent company of MOEX Offshore.  According to Texas Secretary of State records, the stated business purposes of MOEX USA include the direct or indirect engagement in the business of "exploration, development and production of hydrocarbons and any business related to the exploration, development and production of hydrocarbons," and the acquisition of "Hydrocarbon Interests by

purchase, lease, farm-in, license, exchange or other means or methods . . . ."

P.     MITSUI OIL EXPLORATION CO., LTD. ("MOECO"), Defendant, Cross-

Defendant in Limitation, and/or Third-Party Defendant in Limitation, is

incorporated in Japan and has its principal place of business in Tokyo, Japan.  As

of June 30, 2010, MOECO identified itself as having the following U.S.

subsidiaries or affiliates: MitEnergy Upstream LLC, MOEX USA Corporation,

MOEX Offshore 2007 LLC, MOEX Gulf of Mexico Corporation, MOEX Oil &

Gas Texas LLC, and Mitsui E&P USA LLC.  Each of these subsidiaries of

MOECO share the same Houston, Texas address.  MOECO states on its website

as follows: "MOEX USA Corporation, a wholly owned subsidiary of MOECO,

has a 10% interest in ultra-deepwater Mississippi Canyon 252, located in the U.S.

Gulf of Mexico, through its 100% owned subsidiary, MOEX Offshore 2007

LLC."  In a press release dated July 24, 2007, MOECO announced that it had

entered into an "Acquisition and Participation Agreement with BP Exploration

and Production, Inc. .... on the 29th of June 2007 to participate in an ultra-deep gas

exploration project in the Gulf of Mexico ... which is being actively pursued by

BP."  According to the release, "MOECO decided to participate in the project

based upon its evaluation of the prospect which BP's [Gulf of Mexico] technical

team has conducted extensive study and research [sic]."  The release also indicates

that "Japan Oil, Gas and Metals National Corporation . . . has agreed to provide

equity capital finance for MOECO's share of the drilling costs payable under the

Acquisition and Participation Agreement.  An exploratory well is scheduled to be

drilled from September 2007 by BP as the operator and as a result of the

participation and such well interests in the project will be BP (75%), MOECO

(15%) AND OTHER (10%)."  The release concludes with MOECO indicating

that its participation in the project "provides an excellent opportunity to further

expand its business in the U.S."

See www.MOECO.co.jp/english/topics/070724.html.

Defendant MOEX Offshore, MOEX USA, and MOECO are referred to

collectively herein as "MOEX."

While BP was the sole lease operator of the Deepwater Horizon, Anadako, Anadarko

E&P, and MOEX were considered non-operational leaseholders.  On October 1, 2009, BP

Exploration, as operator, and MOEX Offshore, as non-operator, entered into the Macondo

Prospect Offshore Deepwater Operating Agreement.  On December 17, 2009, BP Exploration,

MOEX Offshore, Andarko E&P, and Andarko executed a "Joinder" of the Operating Agreement.

Subsequently, the parties to the Operating Agreement held the following ownership percentages

in the Macondo Prospect: BP Exploration, 65%, MOEX Offshore, 10%; Anadarko E&P, 22.5%;

and, Anadarko, 2.5%.  According to the MMS's website, effective April 1, 2010, record title

interest in the Macondo prospect was held as follows: BP Exploration, 65%; MOEX Offshore,

10%; and, Anadarko, 25%.  As joint holders of a leasehold interest in an oil or gas lease on land

beneath navigable waters, Defendants Anadarko, Anadarko E&P, and MOEX are jointly,

severally, and in solidarily liable with their codefendants BP pursuant to the Oil Pollution Act.

Anadarko, Anadarko E&P, and MOEX also had access to Halliburton/Sperry Sun INSITE

realtime data that was transmitted from the Deepwater Horizon on April 20, 2010, and therefore

knew or should have know of the red flags indicating a leak in the well in sufficient time to avert the disaster.

<p style="text-align:center">Ia.</p>

Plaintiffs wish to add the following allegations to their petition:

<p style="text-align:center">a.</p>

BP and Transocean acted with gross negligence, willful misconduct and reckless disregard for human life by, among other things, using an untested, abnormally large volume of mixed spacer solutions to avoid having to properly dispose of two separate spacer substances as hazardous wastes.

<p style="text-align:center">b.</p>

Plaintiffs show that the accident and resulting injuries and damages sued upon were the direct and proximate result of the gross, willful, and wanton negligence and fault of the Transocean defendants, and unseaworthy conditions caused, created or allowed to exist by virtue of these defendants' gross, willful and wanton conduct.  Said negligence, fault, conduct and conditions are listed more particularly but not exclusively, as follows:

A.    Negligent failure to properly perform the operation ongoing at the time of the accident in question;

B.    Negligent failure to take all appropriate precautions to avoid an accident and explosion of the kind which occurred;

C.    Negligent failure to have all proper equipment and gear necessary to perform the job being performed at the time of the accident and explosion in a safe manner;

<p style="text-align:center">13</p>

D.      Negligent failure to keep the equipment on board the vessel in proper condition and repair;

E.      Negligent failure to properly inspect the rig and all of its equipment and gear;

F.      Negligent failure to have sufficient number of properly trained and qualified personnel to perform the job being performed at the time of the accident and explosion in a safe manner;

G.      Negligent failure to properly train and/or instruct and/or warn Gordon Lewis Jones and those similarly situated;

H.      Negligent violation of government and industry rules, regulations and standards;

I.      Proceeding with the operation ongoing prior to the accident in the face of negative pressure and other testing which showed that well integrity had not been established and that there was an extreme risk of a blowout, explosion and fire;

J.      Placement of heavy drilling mud with seawater at the time when there was no well integrity, underbalancing the well and allowing hydrocarbons under pressure to flow up to the production casing and past the blow out preventer;

K.      Ignoring data showing an influx of pressured hydrocarbons and an increase in drill pipe pressure which were unmistakble signs of an impending blowout or blowout in progress;

L.      Failing to take steps to prevent the impending blowout or blowout in progress in the face of test data which called for immediate protective measures to control well;

M.    Closing the blow out preventer and diverter, routing the fluids exiting the riser to the vessel's mud gas separator system rather than to the overboard diverter line;

N.    Following the diversion of hydrocarbons to the mud gas separator, venting the hydrocarbons directly onto the rig through a 12 inch gooseneck vent and other flowlines which allowed the hydrocarbons onto the rig floor to be exposed to ignition sources;

O.    Failing to properly inspect, maintain and repair a blowout preventer, which blowout preventer was in disrepair and was unseaworthy and which failed to seal the well;

P.    Having a fire and gas system which allowed for the dispersion of hydrocarbons and, ultimately, their ignition and which rendered the vessel unseaworthy;

Q.    Having a crew which was not properly trained and overly worked which rendered the vessel unseaworthy;

R.    Violation of statutes and/or regulations and/or rules designed to promote and foster safety which constitutes negligence *per se*;

S.    Other items of unseaworthiness which may be shown from discovery or trial;

T.    Other acts of gross, willful, reckless, and wanton conduct which may be shown through discovery or at trial; and

U.    Generally, the failure of these defendants to act with required degree of care commensurate with the existing situation.

II.

Plaintiff supplements her Original, First, Second, Third, Fourth, Fifth, Sixth, Seventh and Eight Supplemental and Amending Complaints for Damages by adding the following to Paragraph 4 thereof:

1)   Wilfred Gallardo - oil contamination of a 66 x 90 lot owned by him in Plaquemines Parish

2)   Willie Mallard - mental anguish, fear and fright, lost wages and loss of earning capacity, fear and fright for being in the "zone of danger" when the Deepwater Horizon ignited.

III.

Plaintiffs, who are owners of property which was damaged, wish to add the following elements of damages to their petition as XII(L.)

Any required cleanup and costs indicated by a Phase II Environmental assessment of their property.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, reiterating and reavering each and every allegation of their Original, First, Second, Third, Fourth, Fifth, Sixth, Seventh and Eight Supplemental and Amending Complaints pray that the additional plaintiffs be added and pray for a judgment against Defendants as follows:

1.   For all economic and compensatory damages sustained;

2.   For punitive damages as permitted by law;

3.   For all attorney's fees and cost of litigation;

16

4.      For legal interest from the date of judicial demand until paid in full;

5.      For class action certification and trial by jury;

6.      For mental anguish, pain and suffering, fear and fright, lost wages, loss of earning

capacity, medical expenses, loss of enjoyment of life;

7.      For any required cleanup indicated by a Phase II Environmental assessment of property;

8.      For costs of an environmental assessment of property; and

9.      For all other further relief to which Plaintiffs may be entitled in law and/or equity.

<div style="margin-left:40%">

Respectfully submitted:

*S/Darleen M. Jacobs*
DARLEEN M. JACOBS, ESQ. (#7208)
RICHARD MARTIN, ESQ.
KENNETH CHARBONNET, ESQ.
823 St. Louis Street
New Orleans, LA 70112
(504) 522-0155
Attorneys for Plaintiffs

</div>

<div style="text-align:center">

CERTIFICATE OF SERVICE

</div>

I HEREBY CERTIFY that the above the above and foregoing Ninth Supplemental and Amending Complaint has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 24th day of March, 2011.

<div style="margin-left:40%">

*S/Darleen M. Jacobs*
DARLEEN M. JACOBS

</div>

<div style="text-align:center">

17

</div>