# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re:  Oil Spill by the Oil Rig<br>"Deepwater Horizon" in the Gulf<br>of Mexico, on April 20, 2010<br><br>**This Document Relates to:**<br>*All Cases in Pleading Bundles B1 and B3*<br><br>(This Document also applies to No. 10-2771) | **MDL No. 2179**<br><br>**SECTION: J**<br><br>**JUDGE BARBIER**<br><br>**MAGISTRATE SUSHAN** |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO THE MOEX AND ANADARKO DEFENDANTS' MOTIONS TO
DISMISS PLAINTIFFS' NEGLIGENCE CLAIMS AND MOTIONS TO
<u>DISMISS THE OPA CLAIMS AGAINST ANADARKO E&P</u>**

# TABLE OF CONTENTS

**Page**

I.      STANDARD OF REVIEW ...................................................................... 1

II.     PLAINTIFFS STATE A VALID CLAIM FOR NEGLIGENCE
        AGAINST THE MOEX AND ANADARKO DEFENDANTS.......................... 1

        A.      The MOEX and Anadarko Defendants...................................................... 2

        B.      General Principles of Negligence and Plaintiffs' Complaint..................... 3

        C.      The MOEX and Anadarko Defendants Owed Plaintiffs a Duty of
                Reasonable Care..................................................................................... 5

                1.      The MOEX and Anadarko Defendants Breached their Duty
                        to Plaintiffs.................................................................................. 6

                2.      The MOEX and Anadarko Defendants' Arguments Rely on
                        Inapplicable Law......................................................................... 8

                        a.      The issue of a defendant's control over another
                                party is relevant only when a plaintiff asserts
                                vicarious liability ............................................................ 8

                        b.      The MOEX and Anadarko Defendants
                                misapprehend Plaintiffs' Complaint ............................... 10

        D.      Plaintiffs Have Properly Alleged Proximate Causation........................... 11

III.    PLAINTIFFS' OPA CLAIM AGAINST ANADARKO E&P SHOULD
        NOT BE DISMISSED ......................................................................... 12

# TABLE OF AUTHORITIES

**Page**

## Cases

*Ainsworth v. Shell Offshore, Inc.*,
  829 F.2d 548 (5th Cir. 1987) ................................................................. 2, 9, 10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................................... 1

*Berthelot v. Boh Bros. Constr. Co.*,
  No. 05-4182, 2006 U.S. Dist. LEXIS 57817 (E.D. La. July 19, 2006) .................................. 1

*Canal Barge Co., Inc. v. Torco Oil Co.*,
  220 F.3d 370 (5th Cir. 2000) ............................................................... 3, 5, 6, 7

*Consol. Aluminum Corp. v. C.F. Bean Corp.*,
  833 F.2d 65 (5th Cir. 1987) .......................................................................... 3

*Duplantis v. Shell Offshore, Inc.*,
  948 F.2d 187 (5th Cir. 1991) ........................................................................ 11

*Dupre v. Chevron U.S.A.*,
  20 F.3d 154 (1994) ............................................................................. 6, 7, 9

*Fruge v. Parker Drilling Co.*,
  337 F.3d 558 (5th Cir. 2003) ......................................................................... 9

*Gonzales v. Brazley*,
  No. 09-137, 2009 U.S. Dist. LEXIS 70819 (E.D. La. Aug. 4, 2009) ................................... 10

*Hawkins v. Evans Cooperage Co., Inc.*,
  766 F.2d 904 (5th Cir. 1985) ........................................................................ 10

*Hernandez v. Creative Group, Inc.*,
  No. 09-7514, 2010 U.S. Dist. LEXIS 94650 (E.D. La. Sept. 10, 2010) ............................... 10

*Jones v. Sheraton Operating Corp.*,
  No. 03-0051, 2003 U.S. Dist. LEXIS 8348 (E.D. La. May 15, 2003) ................................... 6

*Kent v. Gulf States Utils. Co.*,
  418 So. 2d 493 (La. 1982) ............................................................................ 9

*Landry v. Huthnance Drilling Co.*,
  889 F.2d 1469 (5th Cir. 1989) ....................................................................... 11

*LeJeune v. Shell Oil Co.*,
  950 F.2d 267 (5th Cir. 1992) ......................................................................... 9

*Oppenheimer v. Prudential Sec., Inc.*,
  94 F.3d 189 (5th Cir. 1996) .......................................................................... 1

*Rogers v. Shell Oil Co.*,
  No. 92-1040, 1993 U.S. Dist. LEXIS 1147 (E.D. La. Feb. 2, 1999) .................................... 9

*Ronquille v. MMR Offshore Servs.*,
  353 F. Supp. 2d 680 (E.D. La. 2004) ................................................................. 10

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Thibodeaux v. Vamos Oil & Gas Co.*,
   No. 03-1883, 2005 U.S. Dist. LEXIS 28697 (W.D. La. Nov. 10, 2005)............................. 11

*Thomas v. Burlington Res. Oil & Gas Co.*,
   No. 99-3904, 2000 U.S. Dist. LEXIS 15577 (E.D. La. Oct. 13, 2000) .................................. 9

**Statutes**

30 C.F.R.
   § 256.62(c)-(d) ..................................................................................................................... 14

In addition to Plaintiffs' OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE FIRST AMENDED B1 MASTER COMPLAINT and Plaintiffs' OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE B3 MASTER COMPLAINT, Plaintiffs respectfully submit the following memorandum of law in opposition to the motions to dismiss filed by the MOEX and Anadarko Defendants[1] with respect to Plaintiffs' negligence claims against them under general maritime law, as well as the potential OPA liability of Anadarko E&P.

## I.    STANDARD OF REVIEW

When considering a motion to dismiss, the allegations contained in a plaintiff's complaint are to be taken as true.  *Oppenheimer v. Prudential Sec., Inc.*, 94 F.3d 189, 194 (5th Cir. 1996). At this stage of litigation, a court determines only whether Plaintiffs are entitled to offer evidence in support of their claims.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  "In other words, a motion to dismiss an action for failure to state a claim 'admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts.'"  *Berthelot v. Boh Bros. Constr. Co.*, No. 05-4182, 2006 U.S. Dist. LEXIS 57817, at *77 (E.D. La. July 19, 2006) (quoting *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1137 (5th Cir. 1992)).

## II.    PLAINTIFFS STATE A VALID CLAIM FOR NEGLIGENCE AGAINST THE MOEX AND ANADARKO DEFENDANTS

The first question before the Court is a straightforward one—whether the owner of a leasehold interest to "perform oil exploration, drilling, and production-related operations" has a

---

[1] The "MOEX and Anadarko Defendants" are:   MOEX Offshore 2007 LLC ("MOEX Offshore"), MOEX USA Corporation ("MOEX USA"), Anadarko Petroleum Corporation ("Anadarko Petroleum"), and Anadarko E&P Company, LP ("Anadarko E&P").   These defendants filed two motions to dismiss.  (*See* Doc. 1414 ( "MOEX/Anadarko Mot. to Dismiss B1"); Doc 1416 ("MOEX/Anadarko Mot. to Dismiss B3").)

duty to prevent those operations from wreaking economic havoc on hundreds of thousands of individuals when the owner has the ability to so prevent.  (Doc. 1128 ("Am. B1 Master Compl.") ¶¶ 210, 233-37.)  The MOEX and Anadarko Defendants never confront this question in their motions to dismiss; rather, they direct the Court's attention to a line of personal injury cases holding that those who employ independent contractors are not vicariously liable when the independent contractor creates an unsafe work environment.  *See, e.g., Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548, 549 (5th Cir. 1987).  The MOEX and Anadarko Defendants, however, have misapprehended these cases, which have no applicability to claims about a defendant's own negligence.  In short, because this Court should conclude that an owner of a leasehold interest to "perform oil exploration, drilling, and production-related operations" has a duty to prevent those operations from harming others when the owner has knowledge of impending harm and the ability to prevent it, the MOEX and Anadarko Defendants' motions to dismiss should be denied.

A.      **The MOEX and Anadarko Defendants**

As of December 17, 2009, the MOEX and Anadarko Defendants held leasehold interests in the Macondo Prospect, on which the Macondo Well was eventually located.  MOEX Offshore and the Anadarko Defendants acquired this interest from BP Exploration & Production, Inc. ("BP E&P").[2]  The parties to the Macondo Prospect Offshore Deepwater Operating Agreement

---

[2] BP E&P acquired the initial interest in the Macondo Prospect on June 1, 2008, when it entered into a lease agreement for Block 252, Mississippi Canyon (the "Lease") with the United States (represented by the Regional Director, Gulf of Mexico OCS Region, Minerals Management Service ("MMS")).  On or about October 1, 2009, BP E&P and MOEX Offshore entered into the Macondo Prospect Offshore Deepwater Operating Agreement ("Operating Agreement").  On or about November 23, 2009, BP E&P sought MMS approval to assign a 10% record title interest in the Lease to MOEX Offshore, to be effective October 1, 2009.  The MMS approved the assignment on February 23, 2010, effective October 1, 2009.  On or about December 17, 2009, BP E&P, MOEX Offshore, Anadarko Petroleum, and Anadarko E&P executed a "joinder" of the
*Footnote continued on next page*

("Operating Agreement") held the following working ownership interests in the lease of the Macondo Prospect: BP E&P, 65%; MOEX Offshore, 10%; Anadarko E&P, 22.5%; and Anadarko Petroleum, 2.5%.[3]

### B.    General Principles of Negligence and Plaintiffs' Complaint

While Plaintiffs' allegation of negligence is brought under the general maritime law, "[t]he analysis of a maritime tort is guided by general principles of negligence law." *Consol. Aluminum Corp. v. C.F. Bean Corp.*, 833 F.2d 65, 67 (5th Cir. 1987). To sustain a claim, then, Plaintiffs must plead that the MOEX and Anadarko Defendants had a duty to Plaintiffs, that the duty was breached, and that the breach was a proximate cause of Plaintiffs' injury. *See, e.g.*, *Canal Barge Co., Inc. v. Torco Oil Co*., 220 F.3d 370, 376 (5th Cir. 2000); *In re Cooper/T. Smith*, 929 F.2d 1073, 1077 (5th Cir. 1991). Accordingly, Plaintiffs allege that the MOEX and Anadarko Defendants:

> had access to Halliburton/Sperry Sun INSITE real time feed data that was transmitted from the Deepwater Horizon on April 20, 2010. As such, they knew or should have known of the presence of hydrocarbons in the well on the evening of April 20, 2010, and they owed a duty to Plaintiffs to warn of the impending disaster in sufficient time to avert it. Anadarko, Anadarko E&P, and MOEX Offshore breached their duty to Plaintiffs by failing to warn the

---

*Footnote continued from previous page*
Operating Agreement. On or about February 11, 2010, Anadarko E&P and BP E&P sought MMS approval to assign a 22.5% interest in the Lease to Anadarko E&P, to be effective October 1, 2009. The MMS approved the assignment on February 23, 2010, effective October 1, 2009. On or about February 11, 2010, Anadarko Petroleum and BP E&P sought the MMS' approval to assign a 2.5% interest in the Lease to Anadarko Petroleum, to be effective October 1, 2009. The MMS approved the assignment on February 23, 2010, effective October 1, 2009.

[3] On or about April 20, 2011, Anadarko E&P sought approval from the MMS to assign its 22.5% interest in the Lease to Anadarko Petroleum (the request was received by the MMS on April 21, 2010). The MMS approved the assignment on April 28, 2010, but accepted the assignment as effective April 1, 2010. The MOEX and Anadarko Defendants have moved to dismiss Plaintiffs' OPA claim against Anadarko E&P on the ground that Anadarko E&P held no interest in the Lease on April 20, 2011. Plaintiffs' OPA claims against Anadarko E&P should not be denied, for the reasons stated *infra* in Section II.

drilling vessel crew of the imminent blowout so that they could take evasive action.

. . . . [They had] actual or constructive notice of the potentially disastrous conditions at the well site.  Further, having been on actual or constructive notice of those conditions and having negotiated for and obtained the right to be privy to [Health, Safety, and Environmental ("HSE")] information, conduct HSE inspections, and call HSE meetings, it was incumbent on Anadarko, Anadarko E&P, and MOEX Offshore to perform the important check and balance role that they had carved out for themselves in the both the Operating Agreement and the Lease Exchange Agreement. Failure to exercise this role given the known history of specific problems at the wellsite was negligence.

(Am. B1 Master Compl. ¶¶ 573-574 (alleging that because these defendants had access to "real time feed data that was transmitted from the Deepwater Horizon on April 20, 2010," they "knew or should have known of the presence of hydrocarbons in the well on the evening of April 20, 2010, and they owed a duty to Plaintiffs to warn of the impending disaster in sufficient time to avert it.").)[4]  Plaintiffs also allege:

Engineers knowledgeable about blowout responses told BP how to kill the well as early as June 2010, but BP, after conferring with its Macondo lease partners Anadarko and MOEX, chose to ignore the engineers' well-kill procedure because BP did not want to damage the well – or its chance to make a profit as Macondo.  Because BP, along with Anadarko and MOEX, hoped to retap the Macondo Well and the large, valuable reservoirs beneath it, they ignored

---

[4] Plaintiffs have also brought a maritime negligence claim against Mitsui Oil Exploration Co., Ltd. ("MOECO"), which is the parent of MOEX USA, itself the parent of MOEX Offshore. Plaintiffs allege that MOECO is liable because "at all relevant times it dominated and controlled the activities of MOEX Offshore and MOEX USA" or, in the alternative, because "MOEX Offshore and MOEX USA acted at all relevant times as agents of MOECO . . . ." (Am. B1 Master Compl. ¶ 237.)  MOECO has not waived service via the Hague Convention process; Plaintiffs are currently working to effectuate such service properly.  As indicated below, documents produced during discovery reveal that personnel from MOECO were monitoring the Macondo Well in the days leading up to April 20, 2010.  For this reason, it may be necessary for Plaintiffs to seek leave to amend their pleadings against MOECO to allege direct liability in addition to, or in place of, vicarious liability.

> expert well-kill information that could [have] stopped the Spill
> many weeks earlier.

(*Id*. ¶ 486.)

For purposes of this motion, the MOEX and Anadarko Defendants dispute primarily the notion that Plaintiffs' pleadings properly allege any duty owed by those defendants to Plaintiffs. (*See* MOEX/Anadarko Mot. to Dismiss B1 at 18-20; MOEX/Anadarko Mot. to Dismiss B3 at 13-16.)   The MOEX and Anadarko Defendants can only prevail if this Court reaches the conclusion that an owner need not prevent his property from causing harm to others, even when that owner has the ability to do so.   For the reasons stated below, the Court should reject that argument and the MOEX and Anadarko Defendants' motions to dismiss Plaintiffs' maritime negligence claim against the MOEX and Anadarko Defendants should be denied.

### C.     The MOEX and Anadarko Defendants Owed Plaintiffs a Duty of Reasonable Care

Whether one party owes a duty to another is generally a question of forseeability.   *Canal Barge Co.*, 220 F.3d at 377.   The Fifth Circuit explained:

> We perceive a harm to be the foreseeable consequence of an act or
> omission if harm of a general sort to person of a general class
> might have been anticipated by a reasonably thoughtful person, as
> a probable result of the act or omission, considering the interplay
> of natural forces and likely human intervention.

*Id*. (citation omitted).   This question in this case, then, is whether a "reasonably thoughtful" owner of a leasehold interest to "perform oil exploration, drilling, and production-related operations" would have thought that its failure to alert BP to dangerous levels of hydrocarbons in the well could lead directly to Plaintiffs' injuries.   *See id*.; (Am. B1 Master Compl. ¶ 573 ("[The MOEX and Anadarko Defendants] knew or should have known of the presence of hydrocarbons in the well on the evening of April 20, 2010, and they owed a duty to Plaintiffs to warn of the impending disaster in sufficient time to avert it.").)   Additionally, the MOEX and Anadarko

Defendants must be found to have owed Plaintiffs a duty if the "reasonably thoughtful" party with the "right to be privy to HSE information, conduct HSE inspections, and call HSE meetings" would have realized that the failure to exercise this right given the specific history of problems in the Macondo Well could lead directly to the Plaintiffs' injuries, or if the "reasonably thoughtful" party with access to "expert well-kill information" would have considered that information in order to prevent substantial economic harm to others.  (Am. B1 Master Compl. ¶ 574.)[5]  In each case, the Court should conclude that Plaintiffs have properly alleged that the MOEX and Anadarko Defendants owe Plaintiffs a duty of reasonable care.

### 1.    The MOEX and Anadarko Defendants Breached their Duty to Plaintiffs

Because the Spill and its resulting damage is exactly the type of harm that one would expect to result from the MOEX and Anadarko Defendants' failure to alert BP to the presence of hydrocarbons in the well, the MOEX and Anadarko Defendants owed a duty to Plaintiffs to have alerted BP in time to prevent the Spill, even though they designated BP as the "operating party" and themselves as "non-operators".  *See Canal Barge*, 220 F.3d at 377; *Dupre v. Chevron U.S.A.*, 20 F.3d 154, 157 (1994); *cf. Jones v. Sheraton Operating Corp.*, No. 03-0051, 2003 U.S.

---

[5] The MOEX and Anadarko Defendants appear to have contemplated specifically that negligence on the part of an owner of a leasehold interest to "perform oil exploration, drilling, and production-related operations" could harm third parties.  In particular, the Operating Agreement provides that BP E&P does not indemnify the MOEX and Anadarko Defendants from liability for such harm absent BP E&P's gross negligence.  (MOEX/Anadarko Mot. to Dismiss B1, Exhibit A, Doc. 1414-2 at § 5.2.)  This very same section of the Operating Agreement provides that BP E&P shall "consult with" the MOEX and Anadarko Defendants and "keep them informed," presumably because the MOEX and Anadarko Defendants foresaw that the failure to monitor their leasehold properly could lead to the exact type of disaster that actually occurred.  (*Id.*)  Similarly, the Operating Agreement provides that damage caused to third parties would generally be split among the MOEX and Anadarko Defendants and BP E&P in proportion to their respective leasehold interests.  (MOEX/Anadarko Mot. to Dismiss B1, Exhibit B, Doc. 1414-3, at § 22.5.)  It thus seems that the MOEX and Anadarko Defendants understood their duty to Plaintiffs even prior to the Spill.

Dist. LEXIS 8348, at *11 (E.D. La. May 15, 2003) (explaining that non-operating hotel owners must protect guests from the tortious acts of third parties when they are aware of impending harm and are "in a position to reasonably protect against it").[6]  Similarly, because the foreseeable consequence of failing to consider "expert well-kill information" was additional damage to Plaintiffs' economic interests, the MOEX and Anadarko Defendants owed a duty to Plaintiffs to have considered such information.

The Court's analysis at this stage of litigation, then, should begin and end with a straightforward application of the basic principle that one has a duty to prevent the foreseeable harms resulting from of one's own negligence.  *Canal Barge*, 220 F.3d at 377; *Dupre*, 20 F.3d at 157.  A "reasonably thoughtful" owner of a leasehold interest to "perform oil exploration, drilling, and production-related operations", alerted to the possibility of a lethal explosion and resulting oil spill causing many billions of dollars in damages, would take action to prevent such a disaster and would not simply assume that its independent contractor was handling the danger.  So, too, the "reasonably thoughtful" owner of a leasehold interest to "perform oil exploration, drilling, and production-related operations" would focus on containing an oil spill once it occurred to prevent additional harm to others, rather than on preserving its own economic interest.  In short, Plaintiffs have properly alleged that the MOEX and Anadarko Defendants are liable for their action or inaction as owners of a leasehold interest to "perform oil exploration, drilling, and production-related operations"; these defendants cannot escape liability here merely

---

[6] Additionally, given the history of problems with the Macondo Well, the Spill and its resulting damage is the type of harm that one would expect to result from the MOEX and Anadarko Defendants' failure to exercise their right "to be privy to HSE information, conduct HSE inspections, and call HSE meetings."  (Am. B1 Master Compl. ¶ 574.)

because they chose BP E&P to manage that leasehold.[7]

### 2. The MOEX and Anadarko Defendants' Arguments Rely on Inapplicable Law

The MOEX and Anadarko Defendants make two substantive arguments in order to try to evade their duty to Plaintiffs, both of which are predicated on the same inapplicable line of cases concerning vicarious liability for personal injury claims.[8]  First, the MOEX and Anadarko Defendants argue that the owner of a leasehold interest in an oil well is immune from liability that accrues to others as a result of the operation of that well, so long as the owner does not control the specific means by which oil is extracted.  (*See* MOEX/Andarko Mot. to Dismiss B1 at 18-20.)  Second, they argue that neither the "right[] to conduct safety inspections" nor "access to information about BP's operations" is sufficient to create a duty to Plaintiffs.  (*Id.* at 21, 23.)  For the reasons that follow, the Court should decline to adopt these arguments.

#### a. The issue of a defendant's control over another party is relevant only when a plaintiff asserts vicarious liability

The MOEX and Anadarko Defendants claim that they did not owe a duty to Plaintiffs because they did not control the specific means by which oil was extracted from the well.  (*See*

---

[7] The MOEX and Anadarko Defendants assert that Plaintiffs' claims for nuisance and battery fail because Plaintiffs' claims for negligence and gross negligence fail.  (*See* MOEX/Anadarko Mot. to Dismiss B3 at 16.)  This argument is misplaced because, as explained above, Plaintiffs have stated a valid claim for negligence.

[8] In their brief, Defendants present their arguments under four subheadings: (1) The MOEX and Anadarko Defendants had no "operational control over any of the activities that allegedly caused" Plaintiffs' harm; (2) "BP is an independent contractor with sole authority to conduct operations on the leased property"; (3) the "right[] to conduct safety inspections is insufficient as a matter of law to establish liability"; (4) "access to information" is "insufficient as a matter of law to establish liability."  (MOEX/Anadarko Mot. to Dismiss B1 at 18, 20, 21, 23.)

Their headings aside, however, the MOEX and Anadarko Defendants are only actually making two distinct substantive arguments: (1) that the owner of a leasehold interest in an oil well is immune from liability that accrues to others as a result of the operation of that well so long as the owner does not control the specific means by which oil is extracted; and (2) that no right reserved by the MOEX and Anadarko Defendants was sufficient to create a duty running from the MOEX and Anadarko Defendants to Plaintiffs.

*id*. at 18-20.)  This argument is misguided because the issue of control would be relevant only if the Plaintiffs were alleging vicarious liability (i.e., that the MOEX and Anadarko Defendants were liable for BP's negligence).  *See, e.g.*, *Fruge v. Parker Drilling Co.*, 337 F.3d 558, 561 (5th Cir. 2003) ("[A] principal is not liable for the actions of its independent contractor unless the principal retained 'operational control' over the contractor's work . . . or expressly or impliedly approved its unsafe work practice that led to an injury."); *LeJeune v. Shell Oil Co.*, 950 F.2d 267, 270 (5th Cir. 1992).  In contrast, the question before the Court is whether the "probable result" of the MOEX and Anadarko Defendants' *own* action or inaction was harm to Plaintiffs.  *See Dupre*, 20 F.3d at 157 ("[The] owner or operator of a facility has the duty of exercising reasonable care . . . ."); *Rogers v. Shell Oil Co.*, No. 92-1040, 1993 U.S. Dist. LEXIS 1147, at *4 (E.D. La. Feb. 2, 1999) ("[A] principal is still liable for its own acts of negligence despite the independent contractor relationship").[9]  As explained above, the Court should conclude that it was.

Instead of addressing the question before the Court, the MOEX and Anadarko Defendants cite an entirely different line of cases that decline to impose *vicarious liability* on the owners of oil rigs for the unsafe work environments created by their independent contractors.  *See Ainsworth* , 829 F.2d at 549 ("Under Louisiana law, a principal generally is not liable for the offenses an independent contractor commits in the course of performing its contractual duties."); *Thomas v. Burlington Res. Oil & Gas Co.*, No. 99-3904, 2000 U.S. Dist. LEXIS 15577, at *4 (E.D. La. Oct. 13, 2000) (Barbier, J.) (same) (citing same); *cf. id*. at *6 (explaining that an owner has no duty to "intervene in and correct the work practices selected by an independent

---

[9] To the extent that Judge McNamara's reasoning, that "[a] principal has no duty, however, to intercede when an independent contractor's actions have created a dangerous situation," *Rogers*, 1993 U.S. Dist. LEXIS 1147, at *4 (citing *Ainsworth*, 829 F.2d 548; *Kent v. Gulf States Utils. Co.*, 418 So. 2d 493 (La. 1982)), could be read to apply outside a worker's claim for personal injury due to unsafe work conditions created by his employer, the below discussion of *Ainsworth* explains that such a reading would be inconsistent with Fifth Circuit precedent.

contractor" to prevent injury to one of the independent contractor's employees).[10]   While *Ainsworth* involved the injury of a worker on an oil rig and therefore is frequently cited in other cases involving the injury of a worker on an oil rig, it is fundamentally a case about vicarious liability for an unsafe worksite, with no applicability in a case about a party's own negligence. *See, e.g.*, *Hernandez v. Creative Group, Inc.*, No. 09-7514, 2010 U.S. Dist. LEXIS 94650, at *7 (E.D. La. Sept. 10, 2010) (citing *Ainsworth* to explain that a conference planner is not liable for the torts of the bus company hired to transport people to and from the conference); *Gonzales v. Brazley*, No. 09-137, 2009 U.S. Dist. LEXIS 70819, at *21 (E.D. La. Aug. 4, 2009) (citing *Ainsworth* to explain that a bank was not liable for the torts of an independent contractor hired to provide security).   Accordingly, this Court should not apply the cases cited by the MOEX and Anadarko Defendants to the facts of this case.

### b. The MOEX and Anadarko Defendants misapprehend Plaintiffs' Complaint

The MOEX and Anadarko Defendants also contend that they had no duty to prevent the Spill merely because they had the ability to access information about the Macondo Well and to conduct safety inspections of the Deepwater Horizon.  (MOEX/Andarko Mot. to Dismiss B1 at 20-23.)   While Plaintiffs agree that this proposition is true, it also misapprehends Plaintiffs' allegations.  Plaintiffs allege the MOEX and Anadarko Defendants knew or should have known about the buildup in hydrocarbons that led to the Spill, failed to exercise their right to conduct

---

[10] The MOEX and Anadarko Defendants cite a case in which Judge Lemmon used meaningfully more sweeping language.  *See Ronquille v. MMR Offshore Servs.*, 353 F. Supp. 2d 680, 682 (E.D. La. 2004) ("[A] principal who exercises no operational control has no duty to ensure that the independent contractor performs its contractual duties in a reasonably safe manner."  (citing *Hawkins v. Evans Cooperage Co., Inc.*, 766 F.2d 904, 908 (5th Cir. 1985)).  To the extent that Judge Lemmon intended to apply *Hawkins* to a case about direct liability, rather than vicarious liability, Plaintiffs respectfully submit that she was mistaken.  *See Hawkins*, 766 F.2d at 906 ("[T]he general rule is that a principal is not liable for the offenses of an independent contractor committed in the course of performing its duties under the contract.").

HSE inspections notwithstanding the specific history of problems at the Macondo Well, and chose to ignore expert well-kill information that would have mitigated damage from the Spill. (Am. B1 Master Compl. ¶¶ 573-74.)

Again Defendants cite only cases in which workers suffered personal injuries due to unsafe practices by their employer—cases with no relevance here for the reasons explained above.  *See Landry v. Huthnance Drilling Co.*, 889 F.2d 1469 (5th Cir. 1989); *Thibodeaux v. Vamos Oil & Gas Co.*, No. 03-1883, 2005 U.S. Dist. LEXIS 28697, at *4-5 (W.D. La. Nov. 10, 2005) (unopposed motion).  In those cases, an independent contractor created unsafe working conditions for its employees, and no other party was held to owe a duty to create safe working conditions.[11]   In contrast, here, Plaintiffs ask this Court to conclude that the Spill was the foreseeable result of the MOEX and Anadarko Defendants' *own* negligence as owners of a leasehold interest to "perform oil exploration, drilling, and production-related operations," and, consequently, that these Defendants owed a duty to Plaintiffs.

### D.    Plaintiffs Have Properly Alleged Proximate Causation

Although the MOEX and Anadarko Defendants' motions to dismiss focus on the duty element of negligence, their briefs also question whether Plaintiffs have pled proximate causation appropriately.  (*See* MOEX/Anadarko Mot. to Dismiss B1 at 34; MOEX/Anadarko Mot. to Dismiss B3 at 15-16.)  Out of an abundance of caution, Plaintiffs emphasize that they have properly alleged proximate cause—that the MOEX and Anadarko Defendants knew or should have known information that, if disclosed, would have led to the avoidance of the Spill, and that the MOEX and Anadarko Defendants "ignored expert well-kill information that could

---

[11] In one of the MOEX and Anadarko Defendants' other cited personal injury cases, there simply was no evidence presented on summary judgment indicating that the defendant had done anything wrong.  *See Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190-91 (5th Cir. 1991).

[have] stopped the Spill many weeks earlier."  (*See* Am. B1 Master Compl. ¶¶ 486, 573 (alleging that the MOEX and Anadarko Defendants failed "to warn the drilling vessel crew of the imminent blowout so that they could take evasive action.").)

The MOEX and Anadarko Defendants appear to assert that Plaintiffs' pleadings are deficient because they do not specifically allege that the drilling crew would have responded to a warning that the well was about to experience a blowout.  (*See* MOEX/Anadarko Mot. to Dismiss B1 at 34.)  That surely elevates form over substance—if the MOEX and Anadarko Defendants had alerted BP to the possibility of a lethal explosion and provided sound advice for avoiding that possibility, it is "common sense" that BP would have followed that guidance. *Iqbal*, 129 S. Ct. at 1950 ("[D]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." (citation omitted).)[12]  In this case, the element of proximate cause has not been, and cannot be, disputed seriously.[13]

---

[12] Similarly, this Court should reject the MOEX and Anadarko Defendants' contention that Plaintiffs have not properly alleged that the MOEX and Anadarko Defendants "took any position" (MOEX/Anadarko Mot. to Dismiss B1 at 34) on expert advice explaining how to kill the well in light of Plaintiffs' allegation that "[b]ecause BP, *along with Anadarko and MOEX*, hoped to retap the Macondo Well and the large, valuable reservoirs beneath it, *they* ignored expert well-kill information that could [have] stopped the Spill many weeks earlier" (Am. B1 Master Compl. ¶ 486) (emphasis added).

[13] The MOEX and Anadarko Defendants also argue: "Plaintiffs do not allege, because they cannot, that the MOEX and Anadarko Defendants were monitoring the data or had any obligation to do so." (MOEX/Anadarko Mot. to Dismiss B1 at 34.)  This argument is troubling because an early review of documents produced by the MOEX and Anadarko Defendants shows that Anadarko and MOEX USA's parent company, MOECO, were closely monitoring well activity at Macondo in the days leading up to and including April 20, 2010.  In particular, employees of these defendants were reviewing Macondo Well data on INSITE and Wellspace and downloading that data.  As much to the point, Plaintiffs *do* allege that the MOEX and Anadarko Defendants "knew or should have known" about the conditions in the Macondo Well.

### III.   PLAINTIFFS' OPA CLAIM AGAINST ANADARKO E&P SHOULD NOT BE DISMISSED

Finally, the MOEX and Anadarko Defendants argue that Plaintiffs' OPA claims against Anadarko E&P must be dismissed because, they allege, Anadarko E&P did not hold a lease interest in the Macondo Prospect at the time of the blowout and discharge of pollutants on April 20, 2010.   (*See* MOEX/Anadarko Mot. to Dismiss B1 at 15-16; MOEX/Anadarko Mot. to Dismiss B3 at 23-24.)  In support of this statement, the Anadarko and MOEX Defendants attach as Exhibit C to their memorandum a document that was filed with the MMS on or about April 20, 2010, indicating that assignment of the Macondo lease interest from Anadarko E&P to Anadarko Petroleum.  (MOEX/Anadarko Mot. to Dismiss B1, Exh. C, Doc. 1414-4, Assignment of Record Title Interest in Federal OCS Oil and Gas Lease.)

Plaintiffs, on the other hand, allege that Anadarko E&P held a 22.5% ownership interest in the lease of the Macondo Prospect at all relevant times, including at the time of the blowout and discharge, and that Anadarko E&P is liable as a "responsible party" under the OPA.  (Am. B1 Master Compl. ¶ 234, 681; B3 Master Compl. ¶ 196.)[14]  Determining whether Plaintiffs' allegations are factually accurate for the purposes of their OPA claim against Anadarko E&P is something that is to be explored during fact discovery.   At this stage, however, Plaintiffs' allegations about Anadarko E&P's ownership interest in the lease and status as a "responsible party" should be taken as true.

Even though a factual determination of whether Anadarko E&P's interest in the Macondo lease actually was transferred to Anadarko Petroleum on April 1, 2010 would be premature at this stage, a consideration of the Anadarko and MOEX Defendants' argument does not suggest

---

[14] Plaintiffs mistakenly refer to Anadarko E&P as "Anadarko LP" in this section of the B3 complaint.  (*Compare* B3 Master Compl. ¶ 38 *and* B3 Master Compl. ¶ 196.)

that Anadarko E&P will prevail on this issue.  Although Exhibit C to the Anadarko and MOEX Defendants' Memorandum indicates that Anadarko E&P's interest in the Macondo lease was assigned to Anadarko Petroleum effective April 1, the document itself is dated April 20, 2010, and stamped as received by the MMS on April 21, 2010.[15]  (MOEX/Andarko Mot. to Dismiss B1, Exh. C.)  The assignment was approved by the MMS on April 28, 2010.  (*Id.*)  While federal regulations deem the effective date of any approved assignment to be the first of the month following the filing of the assignment, the assignor remains liable for all obligations that accrue under the lease before the date that the MMS approves the request for assignment of the record title in the lease.  30 C.F.R. § 256.62(c)-(d).  Thus Anadarko E&P is liable for all obligations accruing under the Macondo Lease before April 28, 2010, the date the MMS approved the assignment of Anadarko E&P's interest to Anadarko Petroleum.

Moreover, under the Operating Agreement, "No Transfer of Interest shall release a Party from its obligations and liabilities under this Agreement, which are incurred prior to the effective date of that Transfer of Interest," with the effective date defined as "at least sixty (60) days, but not more than one hundred eighty (180) days, after the date of the receipt of the transfer notice." (MOEX/Andarko Mot. to Dismiss B1, Exh. A, Doc. 1414-2, Macondo Prospect Offshore Deepwater Operating Agreement, Article 24.1.)

Plaintiffs have not yet seen any document pre-dating the April 20, 2010 blowout that indicates Anadarko E&P's interest actually was assigned to Anadarko Petroleum prior to the blowout, nor any document indicating when "transfer notice" was received by the other parties to the Operating Agreement.  Therefore Plaintiffs have seen no indication that Anadarko E&P did not still have an interest in the Macondo lease at the time of the blowout, nor that Anadarko E&P

---

[15] As discovery progresses, Plaintiffs will explore the reasons behind this transfer, including why it seemingly occurred on or just after the Deepwater Horizon blowout on April 20, 2010.

was not still subject to its obligations and liabilities under the MMS regulations and the Operating Agreement at the time of the blowout and discharge on April 20, 2010.

Finally, as indicated in Plaintiffs' OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE FIRST AMENDED B1 MASTER COMPLAINT, the Court should not, at this time, fully and finally dismiss, with prejudice, OPA claims against any party which may be found "responsible" after a judicial determination of negligence or other fault that would render a party responsible for some or all of the damages under the OPA.

## Conclusion

For these reasons, and for the reasons set forth in Plaintiffs' OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE FIRST AMENDED B1 MASTER COMPLAINT and Plaintiffs' OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE B3 MASTER COMPLAINT, the Moex and Anadarko Motions to Dismiss should be denied.

Dated:  March 29, 2011.

Respectfully submitted,


|  |  |
|---|---|
| _____/s/ Stephen J. Herman_____ | _____/s/ James Parkerson Roy_____ |
| Stephen J. Herman, La. Bar No. 23129 | James Parkerson Roy, La. Bar No. 11511 |
| HERMAN HERMAN KATZ & COTLAR LLP | DOMENGEAUX WRIGHT ROY & EDWARDS LLC |
| 820 O'Keefe Avenue | 556 Jefferson Street, Suite 500 |
| New Orleans, Louisiana 70113 | Lafayette, Louisiana 70501 |
| Telephone: (504) 581-4892 | Telephone: (337) 233-3033 |
| Fax No. (504) 569-6024 | Fax No. (337) 233-2796 |
| E-Mail: sherman@hhkc.com | E-Mail: jimr@wrightroy.com |
| *Plaintiffs Liaison Counsel MDL 2179* | *Plaintiffs Liaison Counsel MDL 2179* |

## PLAINTIFFS' STEERING COMMITTEE

Brian H. Barr
LEVIN, PAPANTONIO, THOMAS,
MITCHELL, ECHSNER & PROCTOR, PA
316 South Baylen St., Suite 600
Pensacola, FL 32502-5996
Office:  (850) 435-7045
Telefax: (850) 436-6187
E-Mail: bbarr@levinlaw.com

Jeffrey A. Breit
BREIT DRESCHER IMPREVENTO &
   WALKER, P.C.
999 Waterside Drive, Suite 1000
Norfolk, VA 23510
Office:  (757) 670-3888
Telefax: (757) 670-3895
E-Mail: jbreit@bdbmail.com

Elizabeth J. Cabraser
LIEFF, CABRASER, HEIMANN &
   BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Office:  (415) 956-1000
Telefax: (415) 956-1008
E-Mail:  ecabraser@lchb.com

Philip F. Cossich, Jr.
COSSICH, SUMICH, PARSIOLA &
   TAYLOR
8397 Highway 23, Suite 100
Belle Chasse, LA  70037
Office:  (504) 394-9000
Telefax: (504) 394-9110
E-Mail:  pcossich@cossichlaw.com

Robin L. Greenwald
WEITZ & LUXENBERG, PC
700 Broadway
New York, NY  10003
Office:  (212) 558-5802
Telefax: (212) 344-5461
E-Mail:  rgreenwald@weitzlux.com

Rhon E. Jones
BEASLEY, ALLEN, CROW, METHVIN,
   PORTIS & MILES, P. C.
218 Commerce St., P.O. Box 4160
Montgomery, AL 36104
Office:  (334) 269-2343
Telefax: (334) 954-7555
E-Mail:  rhon.jones@beasleyallen.com

Matthew E. Lundy
LUNDY, LUNDY, SOILEAU & SOUTH,
LLP
501 Broad Street
Lake Charles, LA  70601
Office:  (337) 439-0707
Telefax: (337) 439-1029
E-Mail:  mlundy@lundylawllp.com

Michael C. Palmintier
deGRAVELLES, PALMINTIER,
   HOLTHAUS & FRUGE'
618 Main Street
Baton Rouge, LA  70801-1910
Office:  (225) 344-3735
Telefax: (225) 344-0522
E-Mail:  mpalmintier@dphf-law.com

Robert T. Cunningham
CUNNINGHAM BOUNDS, LLC
1601 Dauphin Street, P. O. Box 66705
Mobile, AL  36660
Office:  (251) 471-6191
Telefax: (251) 479-1031
E-Mail:  rtc@cunninghambounds.com

Alphonso Michael "Mike" Espy
MORGAN & MORGAN, P.A.
188 East Capitol Street, Suite 777
Jackson, MS 39201
Office: (601) 949-3388
Telefax: (601) 949-3399
E-Mail:  mike@mikespy.com

Calvin C. Fayard, Jr.
FAYARD & HONEYCUTT
519 Florida Avenue, SW
Denham Springs, LA  70726
Office:  (225) 664-4193
Telefax: (225) 664-6925
E-Mail:  calvinfayard@fayardlaw.com

Ervin A. Gonzalez
COLSON HICKS EIDSON
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Office: (305) 476-7400
Telefax: (305) 476-7444
E-Mail:  ervin@colson.com

Paul M. Sterbcow
LEWIS, KULLMAN, STERBCOW &
  ABRAMSON
601 Poydras Street, Suite 2615
New Orleans, LA  70130
Office:  (504) 588-1500
Telefax:  (504) 588-1514
E-Mail:  sterbcow@lksalaw.com

Scott Summy
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX  75219
Office:  (214) 521-3605
Telefax: (214) 599-1172
E-Mail:  ssummy@baronbudd.com

Mikal C. Watts (PSC)
WATTS GUERRA CRAFT, LLP
Four Dominion Drive, Building 3, Suite 100
San Antonio, TX 78257
Office: (210) 447-0500
Telefax: (210) 447-0501
E-Mail:  mcwatts@wgclawfirm.com

STEVEN E. FINEMAN
ANNIKA K. MARTIN
JASON L. LICHTMAN
On Brief.

## <u>CERTIFICATE OF SERVICE</u>

WE HEREBY CERTIFY that the above and foregoing has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, this <u>29th</u> day of <u>March</u>, <u>2011</u>.

_____ /s/ Stephen J Herman and James Parkerson Roy