## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **In re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010**<br><br>**This Document Relates to:**<br>***All Cases in Pleading Bundles B1 and B3***<br><br>(This Document also applies to No. 10-2771) | **MDL No. 2179**<br><br>**SECTION: J**<br><br>**JUDGE BARBIER**<br><br>**MAGISTRATE SUSHAN** |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTIONS TO DISMISS PLAINTIFFS' FRAUD CLAIMS

916149.1

# TABLE OF CONTENTS

**Page**

I.      RULE 9(b) STANDARD ................................................................................. 2

II.     BP'S AND TRANSOCEAN'S MOTIONS TO DISMISS PLAINTIFFS'
        FRAUD CLAIMS SHOULD BE DENIED .......................................................... 3

III.    PLAINTIFFS' ALLEGATIONS OF THE CIRCUMSTANCES OF BP'S
        AND TRANSOCEAN'S FRAUDULENT MISREPRESENTATIONS
        AND OMISSIONS MEET THE PARTICULARITY STANDARD OF
        RULE 9(b) ........................................................................................... 4

        A.      BP's Misrepresentations about the Size and Severity of the Spill ............ 4

        B.      BP's Misrepresentations in its Exploration Plan ....................................... 5

        C.      BP's Concealment of Its Knowledge of the Instability of the
                Cement Used to Seal the Macondo Well .................................................. 7

        D.      BP's Misrepresentations about Its Commitment to Safety ....................... 7

        E.      Transocean's Misrepresentations about the Poor Condition and
                Inadequate Maintenance of the Deepwater Horizon................................. 7

        F.      BP's and Transocean's Concealment of Aftermarket Modifications
                Made to the Deepwater Horizon's BOP ................................................... 8

IV.     PLAINTIFFS HAVE SUFFICIENTLY PLED THE ELEMENTS OF
        THEIR FRAUD CLAIMS UNDER THE LAW OF EACH OF THE
        GULF STATES ...................................................................................... 8

        A.      Materiality ......................................................................................... 10

        B.      Intent ................................................................................................ 11

        C.      Reliance ............................................................................................. 12

        D.      Duty to Disclose ................................................................................. 13

V.      PLAINTIFFS HAVE SUFFICIENTLY PLED THE ELEMENTS OF
        MARITIME LAW/COMMON LAW FRAUD ................................................ 15

VI.     CONCLUSION ...................................................................................... 16

# TABLE OF AUTHORITIES

**Page**

## Cases

*Aiken v. Rimkus Consulting Group, Inc.*,
  333 Fed. Appx. 806 (5th Cir. 2009) ............................................................. 9

*Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*,
  No. 3:98-CV-1360, 2001 U.S. Dist. LEXIS 14020 (N.D. Tex. Sept. 7, 2001),
  *adopted* 2001 U.S. Dist. LEXIS 15795 (N.D. Tex. Sept. 28, 2001) ...................................... 13

*Atel Mar. Investors, LP v. Sea Mar Mgmt., L.L.C.*,
  No. 08-1700, 2010 U.S. Dist. LEXIS 47834 (E.D. La. May 14, 2010) ................................ 13

*Bagley v. Promenade Group, L.L.C.*,
  No. 05-0457, 2007 U.S. Dist. LEXIS 53985 (S.D. Ala. July 24, 2007) .............................. 10

*Behrman v. Allstate Ins. Co.*,
  388 F. Supp. 2d 1346 (S.D. Fla. 2005) .................................................................. 10

*Bhayani v. Treeco, Inc.*,
  No. 2:09-cv-672, 2011 U.S. Dist. LEXIS 6942 (M.D. Fla. Jan. 25, 2011) ............................ 9

*Bonvillain v. La. Land & Exploration Co.*,
  702 F. Supp. 2d 667 (E.D. La. 2010) ...................................................................... 3

*Brown v. Bilek*,
  No. 09-20654, 2010 U.S. App. LEXIS 23477 (5th Cir. Nov. 12, 2010) ................................ 2

*Bunge Corp. v. Gatx Corp.*,
  557 So. 2d 1376, 1384 (La. 1990), *superseded on other grounds as stated in*
  *Curtis v. Branton Indus.*, 944 So. 2d 716 (La. App. 3d Cir. 2006) ...................................... 14

*Carroll v. Fort James Corp.*,
  470 F.3d 1171 (5th Cir. 2006) .............................................................................. 2

*Chris Albritton Constr. Co. v. Pitney Bowes Inc.*,
  304 F.3d 527 (5th Cir. 2002) ...................................................................... 9, 10, 12

*Chrysler Credit Corp. v. Whitney Nat'l Bank*,
  824 F. Supp. 587 (E.D. La. 1993) ......................................................................... 2

*City of Clinton v. Pilgrim's Pride Corp.*,
  632 F.3d 148, 2010 U.S. App. LEXIS 25917 (5th Cir. 2010) ............................................ 10

*Dunlap v. Denison Indep. Sch. Dist.*,
  No. 4:09-cv-234, 2010 U.S. Dist. LEXIS 28495 (E.D. Tex. Mar. 24, 2010) ........................ 12

*Experian Info. Solutions, Inc. v. Lexington Allen L.P.*,
  No. 4:10-cv-144, 2010 U.S. Dist. LEXIS 104925 (E.D. Tex. Aug. 27, 2010) ...................... 10

*Foster v. BWHC, LLC*,
  No. 4:04-cv-044, 2004 U.S. Dist. LEXIS 30004 (N.D. Tex. Nov. 1, 2004) .......................... 9

*Godchaux v. Conveying Techniques, Inc.*,
  846 F.2d 306 (5th Cir. 1988) .............................................................................. 10

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Greene v. Gulf Coast Bank,*
 593 So. 2d 630 (La. 1992) ............................................................................... 10

*In re Enron Corp. Secs., Derivative & ERISA Litig.,*
 MDL 1446, 2011 U.S. Dist. LEXIS 1359 (S.D. Tex. Jan. 6, 2011) ..................... 13

*In re Mercer,*
 246 F.3d 391 (5th Cir. 2001) ........................................................................... 15

*Isquith v. Middle S. Util., Inc.,*
 847 F.2d 186 (5th Cir. 1988), *superseded on other grounds as stated in In re
 Harmonic Inc. Secs. Litig.,*
 163 F. Supp. 2d 1079 (N.D. Cal. 2001) .............................................................. 6

*J.C. Hawkins v. Upjohn Co.,*
 890 F. Supp. 609 (E.D. Tex. 1994) ................................................................... 13

*Kadlec Med. Ctr. v. Lakeview Anesthesia Assoc.,*
 527 F.3d 412 (5th Cir. 2008) .................................................................. 9, 13, 14

*Klein v. O'Neal, Inc.,*
 No. 7:03-CV-102, 2008 U.S. Dist. LEXIS 41762 (N.D. Tex. May 22, 2008) ..................... 13

*Learjet Corp. v. Spenlinhauer,*
 901 F.2d 198 (1st Cir. 1990) ........................................................................... 13

*Levine v. Wyeth, Inc.,*
 684 F. Supp. 2d 1338 (M.D. Fla. 2010) ............................................................. 14

*Lexington Ins. Co. v. S.H.R.M. Catering Servs.,*
 567 F.3d 182 (5th Cir. 2009) ........................................................................... 15

*Matrixx Initiatives, Inc. v. Siracusano,*
 No. 09-1156, 2011 U.S. LEXIS 2416 (U.S. Mar. 22, 2011) ........................................ passim

*Michael v. Shiley,*
 46 F.3d 1316 (3d Cir. 1995) ............................................................................. 13

*Nazareth Int'l, Inc. v. J.C. Penney Corp., Inc.,*
 No. 3:04-cv-1265, 2005 U.S. Dist. LEXIS 14473 (N.D. Tex. July 19, 2005) ................ 12, 13

*Oxford Furniture Cos. v. Drexel Heritage Furnishings, Inc.,*
 984 F.2d 1118 (11th Cir. 1993) .............................................................. 10, 13, 14

*Pelster v. Ray,*
 987 F.2d 514 (8th Cir. 1992) ........................................................................... 13

*PGP Invs., LLC v. Regions Bank,*
 No. 3:09-cv-42, 2011 U.S. Dist. LEXIS 10037 (N.D. Miss. Feb. 1, 2011) ...................... 9

*Rubke v. Capitol Bancorp Ltd.,*
 551 F.3d 1156 (9th Cir. 2009) ............................................................................. 5

*Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.,*
 365 F.3d 353 (5th Cir. 2004) ............................................................................. 6

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Sweetwater Investors, LLC v. Sweetwater Apts. Loan LLC*,
  No. 1:10-cv-223, 2010 U.S. Dist. LEXIS 124923 (M.D. Ala. Nov. 24, 2010) ...................... 9

*Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*,
  975 F.2d 1134 (5th Cir. 1992) ................................................................................... 11

*Tuchman v. DSC Comm'ns Corp.*, 14 F.3d 1061 (5th Cir. 1994) ..................................... 6, 11, 12

*United States ex rel. Grubbs v. Ravikumar Kanneganti*,
  565 F.3d 180 (5th Cir. 2009) ............................................................................. 2, 8, 12

*Wagoner v. Exxon Mobil Corp.*,
  2010 U.S. Dist. LEXIS 91023 (E.D. La. 2010) .............................................................. 2, 8

*Williams v. WMX Techs., Inc.*,
  112 F.3d 175 (5th Cir. 1997) .................................................................................. 3, 5

### Rules

Fed R. Civ. P. 9(b) ................................................................................................. 2, 8, 11

### Treatises

10B Charles A. Wright, Arthur R. Miller, Mary K. Kane, *Federal Practice and
  Procedure* § 9.03[1][e] (3d ed. 2010) .......................................................................... 2

Restatement (Second) of Torts
  § 525 (1977) ....................................................................................................... 15
  § 529 (1977) ....................................................................................................... 15

In addition to Plaintiffs' Omnibus Memorandum of Law in Opposition to Defendants' Motions to Dismiss Bundle B1 First Amended Master Complaint and Plaintiffs' Omnibus Memorandum of Law in Opposition to Defendants' Motions to Dismiss Bundle B3 Master Complaint, Plaintiffs respectfully submit the following memorandum in opposition to the motions to dismiss filed by BP Exploration & Production Inc., BP America Production Company, and BP p.l.c. (collectively, "BP") [Doc 1440 ("BP Mot. to Dismiss B1")], and Transocean Offshore Deepwater Drilling, Inc., Transocean Holdings LLC, Transocean Deepwater, Inc., and Triton Asset Leasing GmbH (collectively, "Transocean") [Doc 1390 ("Tr. Mot. to Dismiss B1")], with respect to Plaintiffs' fraud claims against them:

MAY IT PLEASE THE COURT:

Plaintiffs state valid claims for fraud against BP, Transocean, and Halliburton Energy Services, Inc. ("Halliburton").[1]   The Amended B1 Master Complaint contains numerous allegations directed at each of these defendants that plead with particularity the circumstances constituting their fraudulent misrepresentations and omissions.[2]   For this reason, as explained more fully below, the Court should deny BP's and Transocean's motions to dismiss Plaintiffs' fraud claims.

---

[1] Halliburton has not challenged the sufficiency of the fraud allegations against it, although Halliburton did assert that it is not subject to any state law claims (Doc. 1439 ("Hal. Mot. to Dismiss") at 4, 17), an argument addressed Plaintiffs' Omnibus Memorandum of Law in Opposition to Defendants' Motions to Dismiss the Bundle B1 First Amended Master Complaint, which is being filed concurrently with this memorandum of law.

[2] While the heading above this claim of relief in the First Amended B1 Master Complaint styles this claim as one for fraudulent concealment, Plaintiffs allege both misrepresentations and omissions on the part of BP and Transocean in the text of their complaint. (Am. B1 Compl. ¶¶ 278-90, 337, 344-45, 348-49, 420, 424-41, 450-55, 469-72, 474-75, 480-83, 714-721, 724-731.) Accordingly, both BP and Transocean treat Plaintiffs' fraud claim for relief as one for fraudulent misrepresentation as well as concealment. (*See* BP Mot. to Dismiss B1 at 40; Tr. Mot. to Dismiss B1 at 28.)

## I.      RULE 9(b) STANDARD

When a complaint asserts a claim for fraud, the Federal Rules of Civil Procedure require plaintiffs to plead the circumstances comprising that fraud with particularity.  Fed R. Civ. P. 9(b); 10B Charles A. Wright, Arthur R. Miller, Mary K. Kane, *Federal Practice and Procedure* § 9.03[1][e] (3d ed. 2010).  This requirement extends only to "circumstances constituting fraud or mistake," however; "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed R. Civ. P. 9(b).

Generally, "the Rule 9(b) standards require specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation why they are fraudulent."  *Brown v. Bilek*, No. 09-20654, 2010 U.S. App. LEXIS 23477, at *14 (5th Cir. Nov. 12, 2010) (unpublished) (citing *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).  When a plaintiff alleges fraud by omission, "Rule 9(b) typically requires the claimant to plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the representations misleading."  *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1174 (5th Cir. 2006) (citation omitted).  However, as noted in *Chrysler Credit Corp. v. Whitney Nat'l Bank*, 824 F. Supp. 587 (E.D. La. 1993), "Fraud by silence … is by its very nature, difficult to plead with particularity."  *Id.* at 598.

Thus, the "'time, place, contents, and identity' standard is not a straitjacket for Rule 9(b)."  *See United States ex rel. Grubbs v. Ravikumar Kanneganti*, 565 F.3d 180, 188 (5th Cir. 2009).  The rule is "context specific and flexible . . . ."  *Id.*  In particular, the requirements of Rule 9(b) are relaxed when the facts relating to alleged fraud are "peculiarly within the perpetrator's knowledge."  *Wagoner v. Exxon Mobil Corp.*, 2010 U.S. Dist. LEXIS 91023, at *6-7 (E.D. La. 2010) (citing *United States ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 330 (5th

Cir. 2003)); *see also Bonvillain v. La. Land & Exploration Co.*, 702 F. Supp. 2d 667, 678 (E.D. La. 2010) (*citing Tuchman v. DSC Comm'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)).

Rule 9(b), moreover, does not operate in isolation.  Instead, it should be read "as part of the entire set of rules, including Rule 8(a)'s insistence upon 'simple, concise, and direct' allegations."  *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997).  When the requirements of Rule 8, Rule 9, *Twombly*, and *Iqbal* are construed together, they require "simple, concise, and direct" allegations of the facts and circumstances constituting fraud, which make relief plausible.  *See Bonvillain*, 702 F. Supp. 2d at 678 (citation omitted).

BP and Transocean do not contest the fact that Plaintiffs have satisfied the "simple, concise, direct" standard of Rule 8, and, indeed, these allegations are plausible, as required by *Twombly* and *Iqbal*, because they suffice to "raise a reasonable expectation that discovery will reveal evidence" to support Plaintiffs' fraud claims during the fact-finding phase.  *See Matrixx Initiatives, Inc. v. Siracusano*, No. 09-1156, 2011 U.S. LEXIS 2416, at *34 (U.S. Mar. 22, 2011).[3]  As explained below, Plaintiffs' allegations of fraud meet the particularity requirements of Rule 9(b).

## II.   BP'S AND TRANSOCEAN'S MOTIONS TO DISMISS PLAINTIFFS' FRAUD CLAIMS SHOULD BE DENIED

BP and Transocean argue that Plaintiffs' fraud claims do not contain the requisite specificity required by Rule 9(b).  (BP Mot. to Dismiss at 40; Tr. Mot. to Dismiss at 28.)  BP and

---

[3]  In *Matrixx*, the Supreme Court clarified pleading standards in the fraud context, unanimously affirming the Court of Appeals' reversal of an order of dismissal in a case alleging material nondisclosures in a securities fraud case.  The Court found that the complaint's allegations must be taken as true and the question of whether a plaintiff can prove facts sufficient to satisfy the elements of a fraud claim is to be determined by the fact finder at trial.  *Matrixx*, 2011 U.S. LEXIS 2416, at *35-36, *39.  Plaintiffs' pleadings here, as the following discussion demonstrates, plead their fraud-related allegations more fulsomely than the complaint held sufficient by the *Matrixx* Court.

Transocean also argue that Plaintiffs have not alleged facts sufficient to meet the elements of a fraud claim under Louisiana law.  (BP Mot. to Dismiss at 41-42; Tr. Mot. to Dismiss at 29-30.) Transocean further argues that Plaintiffs fail to meet the elements of a fraud claim under the laws of Alabama, Florida, Mississippi, and Texas. (Tr. Mot. to Dismiss at 30-33.)  The Court should reject these arguments.

**III.   PLAINTIFFS' ALLEGATIONS OF THE CIRCUMSTANCES OF BP'S AND TRANSOCEAN'S FRAUDULENT MISREPRESENTATIONS AND OMISSIONS MEET THE PARTICULARITY STANDARD OF RULE 9(b)**

Plaintiffs' First Amended B1 Master Complaint contains detailed allegations with respect to both BP's and Transocean's fraudulent statements and omissions.  As explained below, Plaintiffs allege that BP misrepresented and concealed facts about: (1) the size and severity of the Spill; (2) the likelihood of an oil spill and its ability to respond to one; (3) its knowledge of the stability of the cement used to seal the Macondo well; and (4) its commitment to safety. Transocean, for its part, misrepresented the poor condition and inadequate maintenance of the Deepwater Horizon drilling vessel.  Finally, both BP and Transocean concealed aftermarket modifications made to the Deepwater Horizon's blowout preventer ("BOP").  Each of these misrepresentations and omissions is independently sufficient to state a valid claim for fraud against BP and Transocean:  as required by the Federal Rules, Plaintiffs' allegations include information about the sources of the fraudulent statements, when and why the statements were made, and assert the reasons that each misrepresentation or omission was fraudulent.

**A.      BP's Misrepresentations about the Size and Severity of the Spill**

Plaintiffs allege that BP misrepresented the size and severity of the Spill in its statements to the public, press, scientists, and response teams.  (Am. B1 Master Compl. ¶¶ 480-81, 714-15.) Plaintiffs contrast BP's public estimate that 1,000 barrels per day were gushing into the Gulf with an internal BP document, released on or about June 20, 2010, showing an estimated rate as

high as 100,000 barrels per day.  (*Id.* ¶¶ 480-81.)  Plaintiffs allege further that pollution-related

fines against BP will be calculated based on the volume of oil and other pollutants spilled, which

gave BP a motivation to downplay the Spill size.  (*Id.* ¶¶ 480-81.)[4]  Finally, Plaintiffs aver that

BP made a number of specific misrepresentations to scientists who were attempting to measure

and respond effectively to the Spill, and quote a May 16, 2010 newspaper article in support of

these assertions.  (*Id.* ¶ 481.)[5]

### B.    BP's Misrepresentations in its Exploration Plan

Plaintiffs allege that BP lied to the MMS in its Exploration Plan; specifically, that BP

concealed information about the likelihood of an oil spill and its ability to respond to one.  (*Id.*

¶ 278, 482-84.)  In particular, Plaintiffs explain that in BP's February 2009 Exploration Plan, BP

told the MMS that its proposed activities would be unlikely to cause an oil spill, and that, if a

spill did occur, the worst case discharge scenario would be 162,000 gallons of oil per day.  (*Id.*

¶ 278.)  BP also assured the MMS that it was prepared to respond to such a spill with "proven

equipment and technology."  (*Id.*)  Plaintiffs aver that, in reality, BP was severely underprepared

to respond to the Spill, and no response plan or "proven equipment and technology" actually

---

[4] A plaintiff may show the defendant's statement was false and misleading by "pointing to inconsistent contemporaneous statements or information (such as internal reports) which were made by or available to the defendants."  *Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1161 (9th Cir. 2009) (internal quotes omitted).

[5] BP cites a case in which the Fifth Circuit explained that *unattributed* newspaper excerpts, "standing alone," do not satisfy the requirements of Rule 9(b) when "no attempt [was] made to isolate statements and particularize their falsity."  *Williams*, 112 F.3d at 179.  In this case, however, Plaintiffs do not rely simply upon media excerpts "standing alone," but include them along with other sources and allegations as specific examples of fraudulent statements and omissions.  The quoted articles, moreover, contain multiple quotes attributed to BP's officers.  *See id.*  (explaining that *Williams* is not inconsistent with the Second Circuit's holding that "unattributed newspaper statements are actionable where the article contained numerous other attributed quotes") (citing *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Co.*, 75 F.3d 801, 810 (2d Cir. 1996)).

existed.  (*Id.* ¶ 482-84.)  In support of this allegation, the First Amended B1 Master Complaint includes dated and attributed quotes from BP officers admitting that they were not prepared to handle the Spill and that BP did not actually have a response plan in place.  (*Id.* ¶ 483.)[6]

In its Exploration Plan, moreover, BP claimed the well's distance from the nearest shoreline would preclude any significant adverse impacts from a spill.  (*Id.* ¶ 278.)  Plaintiffs allege that, in reality, the well's distance from the nearest shoreline had no mitigating effect on the significant damage the Spill caused to the Gulf of Mexico's fish populations, and the businesses and livelihoods of Plaintiffs who relied on them.  (*Id.* ¶¶ 487, 491-504.)

By alleging that these misrepresentations and omissions were made in BP's Exploration Plan (submitted in February 2009 to the MMS), Plaintiffs have identified the time, place, and contents of BP's false representations.[7]  Plaintiffs have also properly identified BP as the source of the fraudulent representations in its Exploration Plan.  *See Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004) ("[T]he corporation itself may be treated as making press releases and public statements issued by authorized officers on its behalf, and statements made by its authorized officers to further the interests of the corporation.").

---

[6] BP argues that BP's statements in its Exploration Plan are predictions, and therefore cannot be the basis of a fraud claim.  (BP Mot. To Dismiss at 41 n.28.)  However, statements that are predictive in nature are actionable if they were false when made.  *See Isquith v. Middle S. Util., Inc.,* 847 F.2d 186, 203 (5th Cir. 1988), *superseded on other grounds as stated in In re Harmonic Inc. Secs. Litig.,* 163 F. Supp. 2d 1079, 1093 n.12 (N.D. Cal. 2001).  Here, Plaintiffs have alleged that BP's predictive statements about its readiness to respond to an oil spill were false when made, since Plaintiffs' Complaint quotes BP officers who admitted that BP did not have an adequate contingency plan necessary to respond to a spill, nor a response plan with "proven equipment and technology," as it had assured the MMS in its Exploration Plan.  (Am. B1 Compl. ¶ 483.)

[7] Because much of the detail about BP's omission of information from the Exploration Plan is information particularly within BP's knowledge, Plaintiffs' allegations on those omissions issues may be based on information and belief.  *See Tuchman,* 14 F.3d at 1068.

### C.      BP's Concealment of Its Knowledge of the Instability of the Cement Used to Seal the Macondo Well

Plaintiffs allege that BP knew about the instability of the foam cement slurry Halliburton had prepared for sealing the Macondo well because of cement slurry test results provided to BP in February and April 2010.  (Am. B1 Compl. ¶¶ 337, 344-45, 348-49, 724.)  Plaintiffs allege, however, that BP concealed that knowledge and pressed forward with operations so as not to incur any further costly delays.  (*Id*.)

### D.      BP's Misrepresentations about Its Commitment to Safety

Plaintiffs allege that Tony Hayward, in a 2007 speech as he took over as CEO of BP p.l.c., pledged to change BP's culture with a renewed commitment to safety.  (*Id*. ¶¶ 469-72.)  Plaintiffs allege with particularity that, in contrast to Hayward's representations in his 2007 speech, BP instead continued with its traditional profits-over-safety behavior under Hayward's leadership, resulting in numerous safety violations, fines, spills, and injuries.  (*Id*.)

### E.      Transocean's Misrepresentations about the Poor Condition and Inadequate Maintenance of the Deepwater Horizon

Plaintiffs allege that Transocean concealed the poor condition and inadequate maintenance of the Deepwater Horizon drilling vessel, including significant problems with the vessel's BOP, electronic alarm systems, stability systems, and other crucial safety features.  (Am. B1 Compl. ¶¶ 288-90, 450-455, 474-75, 725-731.)  Plaintiffs further allege that Transocean concealed its deficient maintenance of the BOP, including its failure to replace the dead batteries and faulty valves that ultimately prevented the BOP's automatic mode function from stopping the blowout and Spill.  (*Id.* at ¶¶ 420, 424-41, 450-55, 459, 474-75, 725-31.)

F.     **BP's and Transocean's Concealment of Aftermarket Modifications Made to the Deepwater Horizon's BOP**

Plaintiffs allege that both BP and Transocean concealed aftermarket modifications they made to the Deepwater Horizon's BOP, which ultimately hindered and delayed response teams attempting to close the BOP after the blowout. (*Id.* ¶¶ 431-32.)  BP and Transocean switched out one of the Deepwater Horizon's variable bore rams with a non-functional test ram, but had not updated the BOP's schematic diagram to reflect the change.  (*Id.*)  After the blowout, emergency responders spent a day futilely trying to close the missing variable bore ram, not knowing it had been replaced with a useless test part.  (*Id.*)

*                    *                    *

Each of Plaintiffs' allegations described above has been made with the degree of particularity required by Rule 9(b).  *See* Fed. R. Civ. P. 9(b); *Grubbs*, 565 F.3d at 188; *Wagoner*, 2010 U.S. Dist. LEXIS 91023, at *6-7.  For this reason, the Court should conclude that BP's and Transocean's arguments to the contrary are not well-taken.

## IV.   PLAINTIFFS HAVE SUFFICIENTLY PLED THE ELEMENTS OF THEIR FRAUD CLAIMS UNDER THE LAW OF EACH OF THE GULF STATES

In addition to pleading their fraud allegations with the requisite particularity required by Rule 9(b), Plaintiffs have also sufficiently plead the elements of their claims for fraud under the law of each of the Gulf states.  As explained above, Plaintiffs' fraud claim should survive a motion to dismiss if Plaintiffs' allegations "suffice to 'raise a reasonable expectation that discovery will reveal evidence' satisfying" [the elements of the claim], and to 'allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Matrixx*, 2011 U.S. LEXIS 2416, at *34 (internal citations omitted).  Whether Plaintiffs can ultimately prove their allegations is an altogether different question, and one that is ultimately to be decided by the fact-finder at a later stage.  *See id.* at *40.

In all of the Gulf state jurisdictions, a plaintiff must show the same basic elements: (1) the materiality of the fraudulent statement; (2) the defendant's intent to deceive; (3) the plaintiff's reliance and; (4) that injury resulted from that reliance. *See, e.g., Kadlec Med. Ctr. v. Lakeview Anesthesia Assoc.,* 527 F.3d 412, 418 (5th Cir. 2008) (Louisiana law); *PGP Invs., LLC v. Regions Bank*, No. 3:09-cv-42, 2011 U.S. Dist. LEXIS 10037, at *9 (N.D. Miss. Feb. 1, 2011) (Mississippi law); *Bhayani v. Treeco, Inc.*, No. 2:09-cv-672, 2011 U.S. Dist. LEXIS 6942, at *10-11 (M.D. Fla. Jan. 25, 2011) (citing *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010)) (Florida law); *Sweetwater Investors, LLC v. Sweetwater Apts. Loan LLC*, No. 1:10-cv-223, 2010 U.S. Dist. LEXIS 124923, at *11 (M.D. Ala. Nov. 24, 2010) (citing *Bethel v. Thorn*, 757 So. 2d 1154, 1162 (Ala. 1999)) (Alabama law); *Foster v. BWHC, LLC*, No. 4:04-cv-044, 2004 U.S. Dist. LEXIS 30004, at *10 (N.D. Tex. Nov. 1, 2004) (citing *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 222 (Tex. 1992)) (Texas law).[8]

Each jurisdiction, moreover, recognizes a cause of action for fraud by omission. *See, e.g.*, *Chris Albritton Constr. Co. v. Pitney Bowes Inc.*, 304 F.3d 527, 531 (5th Cir. 2002) (Mississippi law); *Sweetwater Investors*, 2010 U.S. Dist. LEXIS 124923, at *11 (Alabama law); *Experian Info. Solutions, Inc. v. Lexington Allen L.P.*, No. 4:10-cv-144, 2010 U.S. Dist. LEXIS

---

[8] Two issues should be noted for completeness. First, Florida, Mississippi, and Texas refer to the need for a defendant to know of the falsity of his statement as a separate element. *See, e.g., Bhayani*, 2011 U.S. Dist. LEXIS 6942, at *10-11; *PGP*, 2011 U.S. Dist. LEXIS 10037, at *9; *Foster*, 2004 U.S. Dist. LEXIS 30004, at *10. As a practical matter, however, it is not possible for a defendant to intend to mislead a plaintiff unless the defendant is aware that his statement is false. Second, Mississippi, while imposing the same basic requirements as the other jurisdictions, simply expresses the elements of fraud with a higher level of granularity. *See, e.g.*, *Aiken v. Rimkus Consulting Group, Inc.*, 333 Fed. Appx. 806, 811-812 (5th Cir. 2009) (unpublished) (citing *McCord v. Healthcare Recoveries, Inc.*, 960 So. 2d 399, 406 (Miss. 2007)) ("Under Mississippi law, a claim for fraudulent misrepresentation has nine elements: (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury.").

104925, at *9 (E.D. Tex. Aug. 27, 2010) (Texas law); *Behrman v. Allstate Ins. Co.*, 388 F. Supp. 2d 1346 (S.D. Fla. 2005) (Florida law); *Greene v. Gulf Coast Bank*, 593 So. 2d 630, 632 (La. 1992) (Louisiana law).  A cause of action for fraud by omission includes an additional element: a plaintiff must allege that the defendant owed a duty to disclose the concealed information.  *See, e.g.*, *Oxford Furniture Cos. v. Drexel Heritage Furnishings, Inc.*, 984 F.2d 1118, 1124 (11th Cir. 1993) (citing *Bank of Red Bay v. King*, 482 So. 2d 274, 285 (Ala. 1985)).[9]

As explained below, Plaintiffs have pled each of these elements sufficiently.

**A.    Materiality**

A statement or omission is material "if a reasonable person would attach importance to and be induced to act on the information."  *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, --, 2010 U.S. App. LEXIS 25917, *9 (5th Cir. 2010) (citing *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1033 (5th Cir. 2010)); *see also Bagley v. Promenade Group, L.L.C.*, No. 05-0457, 2007 U.S. Dist. LEXIS 53985, at *16 (S.D. Ala. July 24, 2007); *Godchaux v. Conveying Techniques, Inc.,* 846 F.2d 306, 317 (5th Cir. 1988). Plaintiffs allege that BP's and Transocean's misrepresentations and omissions described above were important and action-inducing, and hence "material", because truthful disclosure of this information would have influenced Plaintiffs to act to protect their businesses and properties; the MMS to act to prevent BP and Transocean from conducting operations at Macondo;[10] response

---

[9] Mississippi is the lone jurisdiction whose law does not include this element of fraudulent concealment.  In Mississippi, however, a plaintiff must plead that "defendant took some affirmative action with design or intent to prevent discovery of facts giving rise to fraud claim." *Albritton*, 304 F.3d at 531 (citing *Davidson v. Rogers*, 431 So. 2d 483, 484-85 (Miss. 1988)).  As noted below, Plaintiffs satisfy this requirement.

[10] Indeed, the United States recently filed a Statement of Interest in this litigation, noting that "until BP obtains the necessary permits and approvals, it does not have the right to drill for or produce the oil covered by [its OCS] lease," and that if BP made false claims in its applications to drill for, or produce, oil, it would be falsely obtaining the opportunity to drill for
*Footnote continued on next page*

teams to effectively evaluate the BOP during closure attempts; and scientists and investigators to measure and respond to the Spill more effectively.  (*Id.* ¶¶ 431-32, 721, 728-29.)  These "allegations suffice to 'raise a reasonable expectation that discovery will reveal evidence' satisfying . . . materiality . . . ."  *Matrixx*, 2011 U.S. LEXIS 2416, at *34 (quoting *Twombly*, 550 U.S. at 556).

### B.    Intent

Because facts about a defendant's intent are necessarily unknown to plaintiffs at the outset of litigation, intent may be pled based on a plaintiff's information and belief.  Fed. R. Civ. P. 9(b); *see also Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.,* 975 F.2d 1134, 1139 (5th Cir. 1992) ("Allegations about conditions of the mind, such as defendant's knowledge of the truth and intent to deceive, however, may be pleaded generally.").[11]  It is appropriate, moreover, for a complaint to infer intent when a defendant has the motivation to commit fraud.  *See Tuchman*, 14 F.3d at 1068.  Plaintiffs have alleged that BP's and Transocean's misrepresentations and omissions, described above, were motivated by the desire for substantial financial gain—that BP needed to make those misrepresentations so that its Exploration Plan would be approved, that BP did not disclose its knowledge about the instability of the cement used to seal the Macondo well to avoid expensive delays, that BP concealed the size and severity of the Spill in an effort to limit its per-gallon pollution fines, that Transocean misrepresented and concealed its lax maintenance of the Deepwater Horizon to save money and avoid drilling delays.  (*Id.* ¶¶ 278-79, 298-301,

---

*Footnote continued from previous page*

or produce oil.  (Statement of Interest of the United States of America in Resp. to BP Defs' Mot. to Dismiss, at 10-12 (filed Mar. 28, 2011).)

[11]  BP cites three cases to support its contention that Plaintiffs' Amended B1 Master Complaint "is devoid of any factual allegations regarding an 'intent to deceive.'"  (BP Mot. to Dismiss at 41 n.29.)  However, all three are from intermediate state courts of appeals, and all predate by several decades the Fifth Circuit cases cited above.

426, 469-74, 480-81, 724.)  These allegations of intent are sufficient to meet Plaintiffs' burden

for survival of a motion to dismiss.  *See Tuchman*, 14 F.3d 1061 at 1068.[12]

     **C.**     **Reliance**

     The element of reliance is "intertwined with the misrepresentation" itself.  *Grubbs,* 565

F.3d at 189.  To plead reliance properly, a plaintiff must allege only that he/she would have acted

differently if he/she had been aware of the facts that were not disclosed.  *See Dunlap v. Denison

Indep. Sch. Dist.*, No. 4:09-cv-234, 2010 U.S. Dist. LEXIS 28495, at *17 (E.D. Tex. Mar. 24,

2010); *see also Nazareth Int'l, Inc. v. J.C. Penney Corp., Inc.*, No. 3:04-cv-1265, 2005 U.S. Dist.

LEXIS 14473, at *20-21 (N.D. Tex. July 19, 2005) at *20-21.   Indeed, a single sentence

containing such an allegation is sufficient to meet a plaintiff's obligations under Rule 9(b) so

long as it is plausible in light of the specifically alleged misrepresentations and omissions.  *See

Dunlap*, 2010 U.S. Dist. LEXIS 28495, at *17; *Nazareth*, 2005 U.S. Dist. LEXIS 14473, at *20-

21; *see also Grubbs*, 565 F.3d at 189.

     In this case, after enumerating the material facts misrepresented and concealed by BP and

Transocean, Plaintiffs pled:

> Defendants Halliburton, BP, and Transocean failed to disclose or
> concealed the foregoing material facts, and their failure to do so
> induced Plaintiffs to act or to refrain from acting to protect their
> property, businesses, livelihoods and income.

(Am. B1 Master Compl. ¶ 729.)  Such an assertion of reliance is sufficient to meet the pleading

requirements.  *See Grubbs*, 565 F.3d at 189; *Dunlap*, 2010 U.S. Dist. LEXIS 28495 at *17;

---

[12] These allegations are also sufficient to meet Plaintiffs' burden under Mississippi law to
assert that "defendant took some affirmative action with design or intent to prevent discovery of
facts giving rise to fraud claim" to sustain such a cause of action."  *Albritton*, 304 F.3d at 531
(explaining that this additional element is necessary to state a claim for fraud by omission in
Mississippi).

     

*Nazareth*, 2005 U.S. Dist. LEXIS 14473, at *20-21.[13]

> **D.    Duty to Disclose**

As explained above, claims of fraud by omission contain an element that claims of fraud by commission do not—a plaintiff must allege facts showing that the defendant had a duty to disclose the concealed information.[14]  Whether or not a defendant had "a duty to communicate is generally for the jury to decide."  *Oxford Furniture*, 984 F.2d at 1124 (citation omitted).

While the question of whether BP and Transocean had a duty to disclose is a question for the fact-finder, Plaintiffs' allegations are sufficient to show that BP and Transocean had a duty to disclose.  It is true that "a party may keep absolute silence and violate no rule of law or equity, . . . [but] if he volunteers to speak and to convey information which may influence the conduct of the other party, he is bound to [disclose] the whole truth."  *Kadlec*, 527 F.3d at 419 (citation omitted); *see also In re Enron Corp. Secs., Derivative & ERISA Litig.*, MDL 1446, 2011 U.S. Dist. LEXIS 1359, at *98-99 (S.D. Tex. Jan. 6, 2011) ("[D]eceptive half-truths or technically correct partial disclosures that convey a false impression are actionable.").  As the

---

[13] That some of BP's and Transocean's fraudulent omissions were made to the MMS, the press, response teams, scientists, and investigators does not allow BP and Transocean to escape liability simply because they did not contact Plaintiffs directly.  *See Atel Mar. Investors, LP v. Sea Mar Mgmt., L.L.C.*, No. 08-1700, 2010 U.S. Dist. LEXIS 47834, at *10 (E.D. La. May 14, 2010) (*citing Blachly v. United States*, 380 F.2d 665, 673-74 (5th Cir. 1967)).  Courts have held repeatedly that indirect reliance is sufficient to support a fraud claim.  *See, e.g., Klein v. O'Neal, Inc.*, No. 7:03-CV-102, 2008 U.S. Dist. LEXIS 41762, at *17 (N.D. Tex. May 22, 2008) (rejecting defendants' contention that, because their misrepresentations were made to third parties, plaintiffs could not establish their "reliance" on these statements); *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, No. 3:98-CV-1360, 2001 U.S. Dist. LEXIS 14020, at *17 (N.D. Tex. Sept. 7, 2001), *adopted* 2001 U.S. Dist. LEXIS 15795 (N.D. Tex. Sept. 28, 2001); *J.C. Hawkins v. Upjohn Co.*, 890 F. Supp. 609, 612 (E.D. Tex. 1994); *see also, e.g., Michael v. Shiley*, 46 F.3d 1316, 1335 (3d Cir. 1995); *Learjet Corp. v. Spenlinhauer*, 901 F.2d 198, 203 (1st Cir. 1990) ("Fraudulent misrepresentation does not necessarily require conveyance to plaintiff of the terms of the actual misrepresentation."); *Pelster v. Ray*, 987 F.2d 514, 523 (8th Cir. 1992).

[14] As explained above, (*infra*, note 9), duty is not an additional element of a fraudulent concealment claim in Mississippi.

Supreme Court of Louisiana has explained, "courts have tended to impose a duty when the circumstances are such that the failure to disclose would violate a standard requiring conformity to what the ordinary ethical person would have disclosed." *Bunge Corp. v. Gatx Corp.*, 557 So. 2d 1376, 1384 (La. 1990), *superseded on other grounds as stated in Curtis v. Branton Indus.*, 944 So. 2d 716, 724 (La. App. 3d Cir. 2006); *see also Oxford Furniture*, 984 F.2d at 1124 ("In determining whether a duty arises . . . the relation of the parties, the value of the particular fact suppressed, the relative knowledge of the parties, and other circumstances are to be weighed." (citing *Red Bay*, 482 So. 2d at 285)).[15]  For example, courts have imposed a duty to disclose in situations where the defendant has material facts that are not within the reach of the diligent attention, observation, and judgment of a plaintiff.  *See Oxford Furniture*, 984 F.2d at 1124; *Bunge*, 557 So. 2d at 1384.[16]

Plaintiffs have alleged facts showing that BP and Transocean had superior and more sophisticated knowledge than Plaintiffs, the MMS, response teams, scientists, and investigators about the information it failed to disclose.  (Am. B1 Compl. ¶¶ 278-90, 337, 344-45, 348-49,

---

[15]  In Louisiana, "before a duty to disclose is imposed the defendant must have had a pecuniary interest in the transaction."  *Kadlec*, 527 F.3d at 419 (citing *Barrie v. V.P. Exterminators*, 625 So. 2d 1007, 1017 (La. 1993)).  The fact that information is given or omitted in the course of the defendant's business is a sufficient indication of pecuniary interest even if the defendant receives no consideration for it at the time.  *Id.* at 421 n.14, n.15 (citing *Dousson v. S. Cent. Bell*, 429 So. 2d 466, 468 (La. Ct. App. 1983) and *Anderson v. Heck*, 554 So. 2d 695, 705 (La. Ct. App. 1989) (also holding that the "pecuniary interest" necessary to establish a duty "need not be direct or immediate")).  It is also clear from Plaintiffs' pleadings that all of BP's and Transocean's concealments were made during the course of their business, as required to show the necessary pecuniary interest.  (*Id.* ¶¶ 278-90, 337, 344-45, 348-49, 420, 424-41, 450-55, 469-72, 474-75, 480-83, 714-721, 724-731.)

[16]  To the extent that courts within some jurisdictions continue to refer to "a fiduciary or other relation of trust or confidence between the parties," *see, e.g., Levine v. Wyeth, Inc.*, 684 F. Supp. 2d 1338, 1348 (M.D. Fla. 2010), Plaintiffs respectfully submit that even those jurisdictions would find a relation of trust or confidence is created: (1) by BP's public filings with the MMS; and/or (2) by any entity, such as BP and Transocean, that conceals a material fact from the public at large.

420, 424-41, 450-55, 469-72, 474-75, 480-83, 714-721, 724-731.)   This is, moreover, information an ordinary ethical company would have disclosed.  (*Id.* ¶ 724.)

## V.   PLAINTIFFS HAVE SUFFICIENTLY PLED THE ELEMENTS OF MARITIME LAW/COMMON LAW FRAUD

Neither BP nor Transocean has challenged the sufficiency of Plaintiffs' pleading of the elements of their maritime fraud claims against BP or Transocean.  Out of an abundance of caution, however, Plaintiffs wish to confirm the sufficiency of these claims.

Courts applying maritime law look to the federal common law for guidance when specific maritime authority does not exist.  *Lexington Ins. Co. v. S.H.R.M. Catering Servs.*, 567 F.3d 182, 185 (5th Cir. 2009).  The most widely accepted distillation of the common law of torts is the Restatement (Second) of Torts.  *See In re Mercer*, 246 F.3d 391, 402-403 (5th Cir. 2001) (citing *Field v. Mans*, 516 U.S. 59, 70 (1995)).  To state a claim for fraudulent misrepresentation, then, Plaintiffs must show: (1) a fraudulent misrepresentation "of fact, opinion, intention or law"; (2) made "for the purpose of inducing another to act or to refrain from action in reliance upon it"; (3) "justifiable reliance"; (4) causation; and (5) "pecuniary loss." Restatement (Second) of Torts § 525 (1977).  In addition, Plaintiffs may sustain a claim for fraudulent misrepresentation by asserting that BP and Transocean made statements that were "materially misleading because of [their] failure to state additional or qualifying matter …." *Id.* § 529.

Again, as explained above, Plaintiffs' fraud claims should survive a motion to dismiss because Plaintiffs' allegations "suffice to 'raise a reasonable expectation that discovery will reveal evidence' satisfying" [the elements of the fraud claim], and 'allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matrixx*, 2011 U.S. LEXIS 2416, at *34 (citations omitted); proof of these allegations is for the fact-finder to

consider at a later stage.  *See id.* at *40.  This Court should conclude that Plaintiffs have adequately pled facts showing the elements of fraudulent misrepresentation and fraudulent concealment under federal common law for the same reasons that Plaintiffs' claims are sufficient under state law.

## VI.    CONCLUSION

Plaintiffs have alleged the circumstances surrounding BP's and Transocean's fraud with the particularity required by Rule 9(b), and Plaintiffs have alleged facts sufficient to show each of the elements required to support their claims for fraudulent misrepresentation and fraudulent concealment under the laws of Louisiana, Alabama, Florida, Mississippi, Texas, and under federal common law.  Accordingly, and for the reasons stated in the plaintiffs' Omnibus Responses to the B1 and B3 Motions to Dismiss, BP's and Transocean's motions to dismiss Plaintiffs' fraud claims should be denied.

Dated:  March 29, 2011

Respectfully submitted,

| | |
|---|---|
| _/s/ Stephen J. Herman_ | _/s/ James Parkerson Roy_ |
| Stephen J. Herman, La. Bar No. 23129 | James Parkerson Roy, La. Bar No. 11511 |
| HERMAN HERMAN KATZ & | DOMENGEAUX WRIGHT ROY |
|   COTLAR LLP |   & EDWARDS LLC |
| 820 O'Keefe Avenue | 556 Jefferson Street, Suite 500 |
| New Orleans, Louisiana 70113 | Lafayette, Louisiana 70501 |
| Telephone: (504) 581-4892 | Telephone: (337) 233-3033 |
| Fax No. (504) 569-6024 | Fax No. (337) 233-2796 |
| E-Mail: sherman@hhkc.com | E-Mail: jimr@wrightroy.com |
| *Plaintiffs' Liaison Counsel MDL 2179* | *Plaintiffs' Liaison Counsel MDL 2179* |

# PLAINTIFFS' STEERING COMMITTEE

Brian H. Barr
LEVIN, PAPANTONIO, THOMAS,
  MITCHELL, ECHSNER & PROCTOR, PA
316 South Baylen St., Suite 600
Pensacola, FL 32502-5996
Office:  (850) 435-7045
Telefax: (850) 436-6187
E-Mail: bbarr@levinlaw.com

Jeffrey A. Breit
BREIT DRESCHER IMPREVENTO &
  WALKER, P.C.
999 Waterside Drive, Suite 1000
Norfolk, VA 23510
Office:  (757) 670-3888
Telefax: (757) 670-3895
E-Mail: jbreit@bdbmail.com

Elizabeth J. Cabraser
LIEFF, CABRASER, HEIMANN &
  BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Office:  (415) 956-1000
Telefax: (415) 956-1008
E-Mail:  ecabraser@lchb.com

Philip F. Cossich, Jr.
COSSICH, SUMICH, PARSIOLA &
  TAYLOR
8397 Highway 23, Suite 100
Belle Chasse, LA  70037
Office:  (504) 394-9000
Telefax: (504) 394-9110
E-Mail:  pcossich@cossichlaw.com

Robin L. Greenwald
WEITZ & LUXENBERG, PC
700 Broadway
New York, NY  10003
Office:  (212) 558-5802
Telefax: (212) 344-5461
E-Mail:  rgreenwald@weitzlux.com

Rhon E. Jones
BEASLEY, ALLEN, CROW, METHVIN,
  PORTIS & MILES, P. C.
218 Commerce St., P.O. Box 4160
Montgomery, AL 36104
Office:  (334) 269-2343
Telefax: (334) 954-7555
E-Mail:  rhon.jones@beasleyallen.com

Matthew E. Lundy
LUNDY, LUNDY, SOILEAU & SOUTH, LLP
501 Broad Street
Lake Charles, LA  70601
Office:  (337) 439-0707
Telefax: (337) 439-1029
E-Mail:  mlundy@lundylawllp.com

Michael C. Palmintier
deGRAVELLES, PALMINTIER,
  HOLTHAUS & FRUGE'
618 Main Street
Baton Rouge, LA  70801-1910
Office:  (225) 344-3735
Telefax: (225) 344-0522
E-Mail:  mpalmintier@dphf-law.com

Robert T. Cunningham
CUNNINGHAM BOUNDS, LLC
1601 Dauphin Street, P. O. Box 66705
Mobile, AL  36660
Office:  (251) 471-6191
Telefax: (251) 479-1031
E-Mail:  rtc@cunninghambounds.com

Alphonso Michael "Mike" Espy
MORGAN & MORGAN, P.A.
188 East Capitol Street, Suite 777
Jackson, MS 39201
Office: (601) 949-3388
Telefax: (601) 949-3399
E-Mail:  mike@mikespy.com

Calvin C. Fayard, Jr.
FAYARD & HONEYCUTT
519 Florida Avenue, SW
Denham Springs, LA  70726
Office:  (225) 664-4193
Telefax: (225) 664-6925
E-Mail:  calvinfayard@fayardlaw.com

Ervin A. Gonzalez
COLSON HICKS EIDSON
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Office: (305) 476-7400
Telefax: (305) 476-7444
E-Mail:  ervin@colson.com

Paul M. Sterbcow
LEWIS, KULLMAN, STERBCOW &
  ABRAMSON
601 Poydras Street, Suite 2615
New Orleans, LA  70130
Office:  (504) 588-1500
Telefax:  (504) 588-1514
E-Mail:  sterbcow@lksalaw.com

Scott Summy
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX  75219
Office:  (214) 521-3605
Telefax: (214) 599-1172
E-Mail:  ssummy@baronbudd.com

Mikal C. Watts (PSC)
WATTS GUERRA CRAFT, LLP
Four Dominion Drive, Building 3, Suite 100
San Antonio, TX 78257
Office: (210) 447-0500
Telefax: (210) 447-0501
E-Mail:  mcwatts@wgclawfirm.com

STEVEN E. FINEMAN
ANNIKA K. MARTIN
JASON L. LICHTMAN
*On Brief.*

## <u>CERTIFICATE OF SERVICE</u>

WE HEREBY CERTIFY that the above and foregoing has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, this <u>29th</u> day of <u>March</u>, <u>2011</u>.

_____ /s/ Stephen J Herman and James Parkerson Roy