**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater | § | |
| Horizon" in the Gulf of Mexico on April 20, | § | **MDL No. 2179** |
| 2010. | § | **SECTION "J"** |
| | § | |
| | § | **JUDGE BARBIER** |
| **This Document Relates to:** | § | |
| *STATE OF VERACRUZ, REPUB. OF MEXICO v.* | § | **MAGISTRATE SHUSHAN** |
| *BP PLC,* No. 10-4239 | § | |
| *STATE OF TAMAULIPAS, REPUB. OF MEXICO v.* | § | |
| *BP PLC,* No. 10-4240 | § | |
| *STATE OF QUINTANA ROO, REPUB. OF* | § | |
| *MEXICO v. BP PLC*, No. 10-4241 | § | |

**CONSOLIDATED MEMORANDUM IN RESPONSE AND OPPOSITION BY
PLAINTIFFS' STATE OF VERACRUZ, STATE OF TAMAULIPAS, AND STATE OF
QUINTANA ROO TO MOTION OF DEFENDANTS ANADARKO PETROLEUM
CORPORATION AND ANADARKO E &P COMPANY LP TO DISMISS THE FIRST
AMENDED COMPLAINT OF THE STATE OF TAMAULIPAS, REPUBLIC OF MEXICO
PURSUANT TO FED. R. CIV. P. 12(B)(6); MOTION OF DEFENDANTS ANADARKO
PETROLEUM CORPORATION AND ANADARKO E &P COMPANY LP TO DISMISS
THE FIRST AMENDED COMPLAINT OF THE STATE OF QUINTANA ROO,
REPUBLIC OF MEXICO PURSUANT TO FED. R. CIV. P. 12(B)(6); AND MOTION OF
DEFENDANTS ANADARKO PETROLEUM CORPORATION AND ANADARKO E &P
COMPANY LP TO DISMISS THE FIRST AMENDED COMPLAINT OF THE STATE OF
VERACRUZ, REPUBLIC OF MEXICO PURSUANT TO FED. R. CIV. P. 12(B)(6).**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

1.   BACKGROUND ..........................................................................................3

2.   ANADARKO'S MISCHARACTERIZATION OF THE COMPLAINTS......................4

3.   OPA EXPRESSLY PERMITS THE ASSERTION OF STATE CLAIMS....................9

     A.   OPA Does Not Preempt State Claims......................................................10

     B.   Application Of OCSLA Does Not Preempt State Claims........................16

     i.   Anadarko's Argument Hinges On Unresolved Factual Issues And Such
          Arguments Are Not Supports by Competent Evidence.......................17

     ii.  OCSLA Does Not Bar State Claims, Alone or Through OPA .............21

4.   OPA'S PRESENTATION REQUIREMENT IS NOT JURISDICTIONAL..................26

5.   CHALLENGES TO PLAINTIFFS' FOREIGN CLAIMANT STATUS......................33

     A.   Showing That Plaintiffs Have Not Been Compensated..................... 33

     B.   Compliance With Treaty Requirement Under OPA.......................... 34

6.   ANADARKO'S UNMERITORIOUS CHALLENGES TO PLAINTIFFS'
     STATE CLAIMS...........................................................................................35

     A.   Plaintiffs' Allegations Amply Satisfy the Rule 8 "Plausibility" Test......35

     B.   Plaintiffs' Allegations Are Sufficient to Hold Anadarko Liable............37

     C.   Plaintiffs' Negligence Claims................................................................39

     D.   Negligence and Wantoness...................................................................40

     E.   Negligence Per Se.................................................................................41

     F.   Anardarko's "Economic Loss" Rule.......................................................41

     G.   Additional Considerations On Plaintiffs" Nuisance Claims.................44

7.   CONCLUSION...........................................................................................48

## TABLE OF AUTHORITIES

**STATUTES**

U.S. CONST. Article III § 2 ....................................................................................3, 4, 26

Fed. R. Civ. P. 8..........................................................................................................35

Fed. R. Civ. P. 12(B)(6) ....................................................................................1, 2, 35

28 U.S.C. § 1331 .............................................................................................................3

28 U.S.C. § 1332 .......................................................................................................3, 26

28 U.S.C. § 1603(a)........................................................................................................3

33 U.S.C. § 1251 ...........................................................................................................41

33 U.S.C. § 2701.......................................................................................................2, 31

33 U.S.C. § 2707.....................................................................................................33, 34

33. U.S.C. § 2713 ................................................................................... 27, 31

33 U.S.C. § 2717.................................................................15, 16, 27, 29, 30, 31, 40

33. U.S.C. § 2718.............................................................................10, 11, 12, 14, 24

33. U.S.C. § 2719.........................................................................................................11

42. U.S.C. § 9601..........................................................................................................41

43 U.S.C. § 1333(a)(2)(A)...........................................................................................18

43 U.S.C. § 1332(2)......................................................................................................18

§ 7 of the Death on the High Seas Act. ...................................................................23

ALA. Code Sec. 6-11-20 (b)(3)[2010].....................................................................40

FLA. STAT. Sec. 376.011 ............................................................................................41

LA. CIV. Code ANN art 667 (2010)..........................................................................47

LA. R. S. 30:2451...........................................................................................................41

Tex. Nat. Res. Code Ann. § 40.001...................................................................41

**TREATIES**

Agreement of Cooperation Between the United States of America and the United Mexican States Regarding Pollution of the Marine Environment by Discharges of Hydrocarbons and Other Hazardous Substances (signed 1980)................................. 34

MEXUS Plan ("Joint Contingency Plan Between the United Mexican States and the United States of America Regarding Pollution of the Marine Environment By Discharges of Hydrocarbons or Other Hazardous Substances....................................34

MEXUS Plan's Gulf Geographic Annex ("MEXUS GULF ANNEX")(Signed Nov. 7, 2007). Parenthetically, it is noted that the MEXUS GULF ANNEX recognizes the particularly ...........................................................................................................................34

Cartagena Convention (effective June 8, 2000)("Convention for the Protection and Development of the Marine Environment in the Wider Caribbean Region").............35

1992 Civil Liability Convention.........................................................................35

TIAS; 2143 UNTS 405 - Treaty on Maritime Boundaries between the United States of America and the United Mexican States (Signed May 4, 1978; Ratified November 13, 1997)............................................................................................................. 35

**AUTHORITY**

*Aguirre v. Nueces County,* 2007 U. S. App. LEXIS 3028 (5th Cir. 2007)..........................17

*Arbaugh v. Y & H Corp.,* 546 U.S. 500 (2006)............................................................27, 34

*Ashcroft v. Iqbal*, 129 U.S. 1937 (2009).......................................................................35, 39

*Barasich v. Shell Pipeline Co.*, 2006 U.S. Dist. LEXIS 84389 (E.D. La. 2006)................44

*Beam v. Birmingham Slag Co.*, 10 So. 2d 162 (1942).......................................................46

*Boca Ciega Hotel, Inc. v. Brouchard Transportation Co.,* 51 F. 3d 235 (11th Cir. 1995).................................................................................................30

*Brown v. Valmet-Appleton*, 77 F. 3d 860 (5th Cir. 1996)..................................................37

*C.C. Carlton Indus. V. Blanchard,* 311 S.W.3d 654 (Tex. App.—Austin 2010 no pet.).................................................................................................................46

*City of Tyler v. Likes,* 962 S.W.2d 489 (Tex. 1997)..............................................................45

*City of Uvalde v. Crow,* 713 S.W. 2d 154, (Tex. App.—Texarkana 1986).....................45

*Cuvillier v. Taylor*, 503 F. 3d 397 (5th Cir. 2007)..............................................................35

*Eason v. Thaler,* 73 F. 3d 1322 (5th Cir. 1996).................................................................17

*Egorov, Puchinsky, Afanasiev & Juring v. Terriberry, Carroll & Yancey,* 183 F. 3d 453, (5th Cir. 1999)....................................................................................................................20

*Freedman v. Briarcroft Prop. Owners, Inc.,* 776 S.W.2d 212 (Tex. App.—Houston [14[th] Dist.] 1989, writ den..................................................................................................45

*Ft. Worth & Rio Grande Ry v. Glenn,* 80 S.W. 992, (Tex. 1904).......................................45

*Gabarick v. Laurin Mar. (Am.) Inc.,* 623 F. Supp. 2d 741 (E.D. La. 2009).....................12

*Grand Isle Shipyard Inc. v. Seacor Marine, LLC,* 589 F. 3d 778 (5th Cir. 2009).......17, 20

*Hails v. Atlantic Richfield Co.*, 595 F. Supp 948, (W.D. La. 1984).........................................20

*Henderson v. Erick K. Shinseki, Sect'y of Veterans Affairs,* 131 U.S. 1197 (2010).................................................................................................................11, 24, 28, 29

*In re Ballard Shipping Co. v. Beach Shellfish,* 32 F. 3d 623 (1st Cir. 1994)...................15

*Isla Corp. v. Sundown Energy, LP,* 2007 U.S. Dist. LEXIS 31259 (E.D. La. 2007).................................................................................................11, 11, 15, 16, 22, 26

*Jamail v. Stoneledge Condominium Owners Ass'n,* 970 S.W.2d 673 (Tex. App.—Austin 1998)......................................................................................................................... 46

*King v. Columbian Carbon Co.* 152 F. 2d 636 (5th Cir. 1945)....................................... 46

*Leboeuf v. Texaco,* 9 F. Supp. 2d 661 (E.D. La. 1998)..................................................... 31

*Lormand v. U.S. Unwired, Inc., 565 F. 3d 228, (5th Cir. 2009)*...........................................36,39

*Magluta* and *Pro Image Installers, Inc. v. Dillon,* 2009 U.S. Dist. LEXIS 3777 (M. D. Fla. 2009)............................................................................................................36,37

*Magluta v. Samples,* 256 F.3d. 1282 (11th Cir. 2001).......................................................36

*Marathon Pipe Line Co., v. LaRoche Industries, Inc.,* 944 F. Supp. 476 (E.D. La. 1996)................................................................................................................................ 32

v

*Mckee v. City of Mt. Pleasant,* 328 S.W.2d 224 (Tex. App.—Texarkana 1959)............46

*Morris v. Covan Worldwide Moving, Inc.*, 144 F. 3d. 377 (5th Cir. 1998).....................17

*National Shipping Co. of Saudi Arabia v. Moran Mid-Atl. Corp.,* 924 F. Supp. 1436, 1447 (E.D. Va. 1996), *aff'd,* 122 F. 3d 1062 (4th Cir. 1997)..............................12

*Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207 (1986)................................18, 21, 23

*Principality of Monaco v. Mississippi,* 292 U.S. 313 .........................................................3

*Raffray v. Gulf Logistics, LLC,* 2010 U.S. Dist. LEXIS 133912 *15(E.D. La. 2010)..................................................................................................................................18, 20

*Ray v. Tandem Computers, Inc.,* 63 F. 3d 429 (5th Cir. 1995).........................................17

Restatement (Second) of Torts § 821B(1) (1979).....................................................47,48

*Robins Dry Dock & Repair v. Flint*, 275 U.S. 303 (1927)..................................................41

*Rodrigue v. Aetna Casualty & Surety Co.,* 395 U.S. 352 (1969)..............................18, 19

*Sanamo v. Trico Marine Services, Inc.,* 73 Fed. Appx. 79, 2003 WL 21756647 (5th Cir. 2003)...................................................................................................................17

*Schneider Nat'l Carriers, Inc. v. Bates,* 147 S.W.3d 264 (Tex. 2004)............................45

*Smith v. Pan Am Air Corp.,* 684 F. 2d. 1102 (5th Cir. 1982)...........................................20

*Soap Cor. v. Balis,* 223 S. W. 2d 957 (Tex. App.—Ft. Worth 1949, writ ref'd n.r.e.) .......................................................................................................................................46

*Sosa v. Coleman,* 646 F. 2d 991 (5th Cir. 1981)...............................................................35

*S. Port Marine, LLC v. Gulf Oil L.P.*, 234 F. 3d 58 (1st Cir. 2000)...............................12,14

*Steel Co. v. Citizens for Better Environment,* 523 U.S. 83 (1998)..............................27,28

*Tangius v. M/V Westchester,* 153 F. Supp. 2d 859 (E.D. La. 2001).............13, 15, 16, 25

*Tanglewood East Homeowners v. Charles-Thomas, Inc.,* 849 F. 2d 1568, 1572 (5th Cir. 1988)..................................................................................................................35

*Tellabs, Inc. v. Makor Issues and Rights, Ltd,* 551 U.S. 308 (2007)...............................36

*Terrell v. Ala. Water Service Co.*, 15 So. 2d 727, 245 Ala. 68 (1943).............................46

*The St. Joe Co. v. Transocean Offshore Deepwater Drilling, Inc.,* 2011 U.S. Dist. LEXIS 26391 (D. Del. 2011)..............................................................................................13

*Turner v. Murphy Oil USA, Inc.,* 2005 U.S. Dist. LEXIS 45123 (E.D. La. 2005)........32, 33

*Union Pacific R. Co. v. Locomotive Engineers and Trainmen Gen. Comm. Of Adjustment, Central Region,* 130 S. Ct. 584 (2009)......................................27, 28, 29, 32

*U.S. v. Locke*, 529 U.S 89 (2000)......................................................................…..........13, 14, 15

*U.S. v. M/V Cosco Busan,* 557 F. Supp. 1058, (N.D. Ca. 2008)............4, 22, 23, 30, 31, 32

*U.S. v. Pickett*, 598 F.3d 231 (5th Cir. 2010)......................................…..............................17

*Vann v. Bowie Sewerage Co.,* 90 S.W.2d 561 (Tex. 1936)................................................45

*Vestal v. Gulf Oil Corp.,* 235 S.W.2d 440 (Tex. 1951)..........................................…..............45

*Vicksburg Towing Co v. Miss. Marine Trans. Co.*, 609 F. 2d 176 (5th Cir. 1980)............42

*Williams v. Potomac Elec. Power Co.,* 115 F. Supp. 2d 561 (D. Md. 2000).....................14, 15, 16, 22, 23.

*Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385 (1982)......................................28, 29, 32

**CONSOLIDATED MEMORANDUM**

COME NOW STATE OF VERACRUZ, REPUBLIC OF MEXICO; STATE OF TAMAULIPAS, REPUBLIC OF MEXICO; AND STATE OF QUINTANA ROO, REPUBLIC OF MEXICO (hereinafter referred to as "Plaintiffs" or "Mexican States") and hereby file their Consolidated Memorandum in Response and Opposition to the Motion of Defendants Anadarko Petroleum Corporation And Anadarko E &P Company LP To Dismiss The First Amended Complaint of The State of Tamaulipas, Republic of Mexico Pursuant To Fed. R. Civ. P. 12(B)(6); Motion of Defendants Anadarko Petroleum Corporation And Anadarko E &P Company LP To Dismiss The First Amended Complaint of The State Of Quintana Roo, Republic of Mexico Pursuant To Fed. R. Civ. P. 12(B)(6); And Motion of Defendants Anadarko Petroleum Corporation And Anadarko E &P Company LP To Dismiss The First Amended Complaint of The State Of Veracruz, Republic of Mexico Pursuant To Fed. R. Civ. P. 12(B) (6) (hereinafter "Anadarko's Motions"), and in support thereof, Plaintiffs would show the Court as follows:

Plaintiffs oppose Anadarko's Motions and the arguments raised by Anadarko in Consolidated Memorandum of Law in Support of Motions of Defendants Anadarko Petroleum Corporation, Anadarko E &P Company LP, and Moex Offshore 2007 LLC [Said Defendants being hereinafter referred to as "Anadarko"] to Dismiss the Complaints of the Alabama Cities and the Mexican States ["Pleading Bundle C"] and respectfully submit that said Anadarko's Motions should be denied.

Anadarko seeks dismissal of all of Plaintiffs' allegations. In so doing, Anadarko argues that notwithstanding judicial and statutory authority to the

1

contrary, only the Oil Pollution Act, 33 U.S.C. § 2701 *et seq.* ("OPA") applies herein and that this Court should ignore the application of state law. Anadarko's Motions rely on its misconstruction of OPA and the Outer Continental Shelf Lands Act ("OCSLA"), as well as distortions of the allegations in Plaintiffs' Amended Complaints. Anadarko's Motions also ignore Plaintiffs' additional underpinnings for this Court's jurisdiction over Plaintiffs' claims. Therefore, regardless of the outcome of the Court's determinations regarding other issues herein, **Plaintiffs are entitled to maintain their claims herein under diversity jurisdiction and the U.S. Constitution**. Additionally, Anadarko's contentions, in large part, hinge on "factual" assertions on issues which have yet to be determined through evidence, discovery, or otherwise. As demonstrated below, Anadarko's arguments are without foundation and, therefore, Anadarko's Motions should be denied.

## 1. BACKGROUND.

In addition to asserting federal question jurisdiction under 28 U.S.C. § 1331 by virtue of Plaintiff's claims under the Oil Pollution Act ("OPA"), Plaintiffs have asserted jurisdiction under several other provisions. For example, they assert jurisdiction under 28 U.S.C. Section 1331 and the federally adopted state laws under the Outer Continental Shelf Lands Act. 43 U.S.C. §§ 1331(f) (1) and 1333(a) (2). Additionally, jurisdiction is vested and conferred by Article III, § 2 of the United States Constitution inasmuch as this case between a foreign state and the citizens of a State of the United States. (Par. 29, Plaintiffs' Amended Complaints). *E.g., Principality of Monaco v. Mississippi,* 292 U.S. 313, 323 n. 2 ("There is no question but that foreign States may sue private parties in the federal courts."). Plaintiffs further

assert jurisdiction pursuant to 28 U.S.C. Section 1332 based on diversity of citizenship and the amount in controversy. (Par. 29, Plaintiffs' Amended Complaints). This Court has jurisdiction pursuant to 28 U.S.C. Section 1332(a)(4), because this matter in controversy vastly exceeds the minimum jurisdictional amount of $75,000, exclusive of interest and costs, and this case is between Plaintiff (a foreign state, as defined in 28 U.S.C. § 1603(a)) and citizens of a State or of different States.

Although Anadarko has challenged the maintainability of state law claims under OPA and has otherwise asserted that they cannot be maintained through either OPA or OCSLA (which Plaintiffs dispute), Andadarko's Motions do not challenge Plaintiffs' rights to maintain these state claims under the alternative jurisdictional vehicles, *i.e.*, diversity jurisdiction and/or Art. III, § 2 of the U.S. Constitution. Although Plaintiffs submit that Anadarko's Motions are completely without merit and should be denied in their entirety, Plaintiffs also note that regardless of this Court's determination based on OPA and/or OCSLA, Plaintiffs' claims remain viable under this Court's alternate diversity and constitutional jurisdiction.

### 2. ANADARKO'S MISCHARACTERIZATION OF THE COMPLAINTS.

At the outset, it is important to note that Anadarko attempts to minimize and distort the nature of the allegations against it and the nature of the damages incurred by Plaintiffs. The sufficiency of Plaintiffs' allegations to state claims for relief will be addressed in Part 6 below and only Anadarko's mischaracterization of Plaintiffs' claims for damages will be addressed in this section.

Plaintiffs are states comprising part of the Republic of Mexico. (Par. 1 and 7, Plaintiffs' Amended Complaints). All Plaintiffs have shorelines and waters as to which they possess governmental and proprietary interests in that they own, manage, control, maintain, use, develop, govern, and protect these natural resources and their related environments. (Par. 2, 5, 6, Plaintiffs' Amended Complaints). Significantly, as acknowledged by treaties between the United States and Mexico, Mexico's waters extend deeply into the Gulf of Mexico up to and contiguous with the United States' territorial waters. (Treaty on Maritime Boundaries between the United States of America and the United Mexican States, May 4, 1978, Entered into force November 13, 1997). Within these Mexican-controlled waters which border and are contiguous with the areas covered by the oil spill herein, Mexico has an Exclusive Economic Zone in which Mexico and the Mexican States have exclusive rights, including the exclusive rights to control, regulate, and economical development, among others. Oil spills and dispersants do not respect international (or state) boundaries and consequently, the devastating effects of the oil spill have already been felt in Plaintiffs' waters and shorelines. (*E.g.,* Par. 2, 3, and 41 of Plaintiffs' Amended Complaints). Since the filing of Plaintiffs' First Amended Complaints, the negative effects and damages resulting from the oil spill and dispersants have been aggravated by winds, tides and weather—allegations which Plaintiffs intend to add to a Second Amended Complaint with the Court's permission or adopt allegations from the Pleading Bundle "C" Master Complaint as previously permitted by PTO No. 33.

Nevertheless, the allegations in the current Amended Complaints demonstrate the erroneous nature of Anadarko's characterization that "The Mexican States acknowledge that the oil spill has not impacted their territories but claim that the consequences of the spill eventually will flow westward and cause them harm." (P. 4, Consolidated  Memorandum). Plaintiffs do *not* acknowledge this. Anadarko's mischaracterization ignores significant portions of Plaintiffs' Amended Complaints. The Mexican waters that were adversely affected by the oil spill are not limited to those immediately adjacent to the shores of Plaintiffs. Rather under the Treaty on Maritime Boundaries between the United States of America and the United Mexican States, May 4, 1978 (Entered into force November 13, 1997) and other applicable laws, Mexican waters extend to and adjoin the U.S. territorial waters. Mexican shorelines and waters have already been severely impacted. Contrary to Anadarko's mischaracterization of Plaintiffs' Amended Complaints, Plaintiffs *do* allege that damages have *already* occurred and *do* assert claims for *past*, current, and future damages. A few examples follow:[1]

- [Plaintiff] brings this [action] against Defendants for losses, injuries, and damages arising out of the catastrophic and avoidable oil spill in the Gulf of Mexico ....". **(** Par. 2, Plaintiffs' Complaints);

- As a direct and proximate result of the mismanagement, omissions, and negligence which permeated Defendants' operations and activities on and related to the Deepwater Horizon which led to the disastrous explosion and oil spill, Plaintiff **has suffered** and in the future will suffer severe economic, environmental, and other damages as further set forth below. (Par. 3 of Plaintiffs' Complaints);

---

[1] In the interests of brevity, all three of Plaintiffs' Amended Complaints are sometimes referred to collectively as "Plaintiffs' Complaints").

- With the wellhead's prolonged gushing of tens of thousands of gallons of oil per day into the waters of the Gulf of Mexico and/or the Caribbean, Plaintiff **has suffered, is suffering**, and will continue to suffer serious financial losses and damages, including, but not limited to, lost profits, incurred present and future expenses related to preventive measures and scientific studies, lost business, diminution of the tourist and related industries, and other damages and injuries. (Par. 6, of Plaintiffs' Complaints);

- [Plaintiffs] rel[y] on the natural resources found in the Gulf of Mexico and Caribbean waters and such natural resources are **now damaged** and further endangered by the wrongful acts of Defendants. (Par. 7, of Plaintiffs' Complaints);

- As a result of the events described herein, Plaintiff **has suffered** and will continue to suffer injuries, losses, and damages. . .". (Par. 8, of all Plaintiffs' Complaints);

- Fishing operations in the Gulf of Mexico and/or the Caribbean **have been** and will be **injured and damaged** by the contaminating and destructive oil that has killed and tainted fish and other marine life, thus significantly reducing the quantities of fish and other marine life that can be harvested for safe human consumption. The toxic oil **has** and will continue to cause severe financial losses to Plaintiff[s]. Additionally, the actual effects of the oil, along with reports of same, have **adversely affected** commerce and tourism. Plaintiff[s'] residents rely on a clean Gulf of Mexico and Caribbean, sea life, clean beaches and safe navigable waters for their livelihoods. The State[s] and its [their] citizens also rely heavily on tourism which is centered around its beautiful beaches, coral reefs, marine life, fishing, water sports, and other on-shore and offshore activities. All of this has been **jeopardized, damaged**, and severely **impacted** by Defendants' actions. (Par. 41 of Quintana Roo's Amended Complaint; See also, Par. 41 of Veracruz and Tamaulipas' Amended Complaints alleging, "Plaintiff, itself, **has had** its fishing operations **injured** and **damaged** by the contaminating and destructive oil . . .");

- Defendants knew or should have known that their negligent, grossly negligent, willful, wanton, and/or reckless conduct would result in the oil disaster, causing **past**, present, and future damages to all of the shorelines and waters adjacent to the Gulf of Mexico. (Par. 45, Plaintiffs' Complaints);

- The **past, present**, and future injuries to the State were also **caused** by or **aggravated** by the fact that Defendants failed to take necessary actions to mitigate the dangers associated with their operations. (Par. 46, Plaintiffs' Complaints).

- As a direct and proximate result of the combining and concurring negligence and

wantonness of all Defendants, the State **has** and will continue to be **damaged**, including, but not limited to, in the manners delineated herein. There are many other potential effects from the oil spill that have not yet become known, and Plaintiff reserves the right to amend this Complaint once additional information becomes available. (Par. 48, Plaintiffs' Complaints);

- Additionally, the injuries to Plaintiff also **were caused** by or **aggravated** by the fact that Defendants failed to take necessary actions to mitigate the danger associated with their operations. Defendants' initial response to the disaster was ineffective and only intensified the damage. (Par. 52, Plaintiffs' Complaints);

- ... the damages **incurred to date** for which Defendants are jointly and severally liable to Plaintiff include, but are not limited, to: [listing a specification of damages] (Par. 55, Plaintiffs' Complaints);

- As a direct and proximate result of Defendants wanton or reckless conduct, Plaintiff **has suffered** legal injury and damages, in an amount to be proven at trial, including, but not limited to, loss of profits, revenues, loss of income, and other economic loss. (Par. 61, Plaintiffs' Complaints);

- Defendants' violations of these statutory standards proximately **caused** Plaintiff's injuries, warranting compensatory and punitive damages. (Par. 67, Plaintiffs' Complaints);

- As a result of the disaster and Defendants' gross negligence or willful misconduct with respect to the acts and omissions alleged herein, all responsible parties **have caused** and are liable for the following **past, present,** and future expenses and damages Plaintiff **has suffered**, which damages are the type of damages that may be recovered pursuant to the Oil Pollution Act. Plaintiff demands compensation from Defendants in amounts to be determined by the trier of fact, said amounts to include: [listing damages]. (Par. 72, Plaintiffs' Complaints);

- As a direct and proximate result of Defendants' nuisance generating conduct and nuisance continuation conduct, Plaintiff **has suffered** loss of income and other damages. (Par. 76, Plaintiffs' Complaints);

- The conduct of Defendants unreasonably **interfered** with the public health and safety. (Par. 79, Plaintiffs' Complaints);

- Defendants' acts and omissions with respect to the release of oil, dispersants, and other materials and substances will cause and continue to cause a material, substantial and unreasonable interference with the use and enjoyment of the waters, property, estuaries, seabed, animals, plants, beaches, shorelines, coral reefs, coastlines, marshlands, and other natural and economic resources of the State . . . Furthermore, Defendants have **caused** damage and injury to same and

to Plaintiff. (Par. 80, Plaintiffs' Complaints);

- The conduct of Defendants **caused** Plaintiff to suffer particular damages distinct from the general public. As a direct and proximate result of Defendants' nuisance generating conduct and nuisance continuation conduct, Plaintiff and its citizens **have suffered** past, present, and future losses, by way of example, loss of income; loss of revenue for the State; expenditures of substantial amounts to combat, abate, and prepare for the oil spill; and other damages. (Par. 81, Plaintiffs' Complaints).

- As a direct and proximate result of Defendants' nuisance generating conduct, Plaintiff **has suffered** loss of income and other damages. (Par. 83, Plaintiffs' Complaints);

- Furthermore, the Prayer for Relief lists **past, present**, and future damages among the relief sought. ((Paragraph VII, Plaintiffs' Complaint).

(emphasis added)

Indisputably, the "past tense" of the verbs utilized in the foregoing allegations clearly demonstrate that Plaintiffs allege damages that have already occurred, although other portions of the Complaints do assert claims for future damages. Therefore, Anadarko's efforts to mischaracterize Plaintiffs' claims as aimed solely at future unrealized damages or damages unrelated to Plaintiffs' property interests are clearly fallacious. However, should the Court determine otherwise, Plaintiffs would be more than willing to clarify their allegations through the submission of an amended complaint to cure whatever issue remains. Accordingly, although Plaintiffs submit that their allegations are more than sufficient to withstand Anadarko's challenges, Plaintiffs respectfully request that if the Court should determine otherwise, that Plaintiffs be granted an opportunity to amend their respective complaints to cure any deficiencies found by the Court.

Plaintiffs may also be adopting allegations in the Pleading Bundle "C" Master Complaint as permitted by PTO # 33.

### 3. OPA EXPRESSLY PERMITS THE ASSERTION OF STATE CLAIMS.

Reduced to its essence, Anadarko's argument is that OPA—and no other law—applies in this litigation. Anadarko seeks to completely eradicate the applicability of state law and supplant it entirely with OPA, notwithstanding the explicit language in OPA and the OCSLA to the contrary. Thus, Anadarko argues that *all* state law is eviscerated and rendered inapplicable herein and that Plaintiffs' state claims must be dismissed. Understandably, Anadarko does not cite any case specifically holding this, but relies only on tangentially related and generalized judicial pronouncements, which are inapposite and do not counter the statutory and judicial precedent to the contrary.

Anadarko argues that federal law alone applies herein and even though federal law sometimes borrows state law as a surrogate federal law, it does not borrow the state laws relied upon by Plaintiffs because, according to Anadarko "OPA applies and leaves no gaps for state law to fill." (p. 5, Anadarko's Memorandum). Anadarko proceeds to claim that regardless of where the injury to Plaintiffs took place, federal law preempts the law of the affected states. *Id.* Continuing its argument, Anadarko claims that the federal law is OPA and all state claims must be dismissed. Anadarko's argument rests heavily on two untenable propositions: 1) that OPA preempts all state law claims [which it does not]; and 2) that OCSLA is the only applicable federal jurisdictional basis herein [which it is not].  As seen below,

both of Anadarko's underpinnings collapse from the lack of any statutory or precedential support.

### A.    OPA Does Not Preempt State Claims.

Plaintiffs acknowledge the broad scope of OPA with respect to oil spills and resultant pollution, but it is not as broad as Anadarko contends. Regardless of whether OPA is relied upon as a "stand alone" federal claim or applied through OCSLA, OPA is not so all-encompassing that it preempts or otherwise affects state law. The language in OPA clearly provides that it does not affect or preempt state law and that such state claims may be maintained independently or along with OPA claims. Congress specifically provided for the contemporaneous application of state law in Section 2718:

§ 2718. Relationship to other law

(a) **Preservation of State authorities**; Solid Waste Disposal Act.

**Nothing** in this Act or the Act of March 3, 1851 shall—

(1) affect, or be construed or interpreted as **preempting**, the authority of any State or political subdivision thereof from imposing any **additional liability or requirements** with respect to—

(A) the discharge of oil or other pollution by oil within such State; or (B) any removal activities in connection with such a discharge; **or**

(2) **affect, or be construed or interpreted to affect or modify in any way the obligations or liabilities of any person under** the Solid Waste Disposal Act (42 U.S.C. 6901 et seq.) **or State law, including common law.** (emphasis added).

The title of a statutory provision is instructive. *Henderson v. Erick K. Shinseki, Sect'y of Veterans Affairs,* 131 S.CT. 1197 (2010). Section 2718's title clearly declares

its purpose, *i.e.*, the "*preservation* of state authorities."  As the statute further provides in clear, unambiguous language, "nothing" in it shall "affect" or "preempt" the authority of states to impose additional state law liabilities or requirements. Section 2718(a). Moreover, nothing in OPA "affects" or "modifies" "***in any way***" obligations or "liabilities" under "State law, ***including common law***." (emphasis added). Section 2719(a) (2). A more resounding rejection of Anadarko's argument would be difficult to imagine. Other language in OPA reverberates with the statutory declaration that State laws, including common law, are preserved and do apply:

> **(c) Additional requirements and liabilities; penalties.** *Nothing* in this Act … shall in any way affect, or be construed to affect, the authority of the United States or **any State** or political subdivision thereof—

> (1) **to impose additional liability** or additional requirements; or

> (2) to impose, or to determine the amount of, any fine or penalty (**whether criminal or civil in nature**) for any violation of law; relating to the discharge, or substantial threat of a discharge, of oil.

§ 2718 (c).

Again, OPA clearly and unambiguously provides that states may impose "additional" state law liabilities, requirements, fines, and penalties, regardless of whether criminal or civil in nature. *Id.* Moreover, as seen below, the foregoing savings clauses in OPA have been judicially determined to allow state claims to be maintained, regardless of whether they were filed independently or with OPA claims.

Anadarko's preemption argument is identical to the contention rejected by this court in *Isla Corp. v. Sundown Energy, LP,* 2007 U.S. Dist. LEXIS 31259 (E.D. La. 2007). As herein, the defendant in that case argued that plaintiff's state common-law claims were precluded and contended that OPA provided the exclusive remedy. Noting the above-cited language in § 2718(a) providing that state law and additional

11

state liabilities or requirements are unaffected by OPA, the Court held, "Therefore, OPA does not preempt Plaintiff's state law claims." *Id.* at *5.   In reaching this result, the Court pointed out that the cases relied upon by defendant therein (which are among those relied upon by Anadarko herein)[2], did not address the applicability of *state* law. Rather, as noted by the Court, those cases established only that OPA is the exclusive *federal* remedy and that these cases did not address additional *state* law remedies.

Similarly, the propositions of the other cases cited by Anadarko demonstrate that they addressed OPA's relationship with *federal* law (*e.g.*, maritime law), not state law. For example, on page 9 of Anadarko's Memorandum, it cites: *Gabarick v. Laurin Mar. (Am.) Inc.,* 623 F. Supp. 2d 741, 750-51 (E.D. La. 2009)(**general maritime law claims** are displaced by OPA); *National Shipping Co. of Saudi Arabia v. Moran Mid-Atl. Corp.,* 924 F. Supp. 1436, 1447 (E.D. Va. 1996), *aff'd,* 122 F. 3d 1062

---

[2] For example, Anadarko cites *South Port Marine, LLC v. Gulf Oil Ltd. P'ship,* 234 F. 3d 58 (1st Cir. 2000).(See, p. 9 of Consolidated Memorandum of Law). Anadarko, however, misconstrues its holding. As noted by the Court, itself, no *state* claims were at issue on appeal and only OPA and general admiralty and maritime law claims were before the Court. *Id.* at 64. In focusing on the specific issues before the court, the Fifth Circuit noted the misnomer of "preemption" used by the parties:

> First, we note that, although the parties have referred to this issue as one of "preemption," it does not present any of the federalism concerns normally associated with that word, because we are concerned *only* with the OPA's effect on preexisting *federal* law. The question, therefore, is not complicated by any 'presumption against preemption,' [citations omitted] but is rather a straightforward inquiry into whether Congress intended the enactment of the OPA to supplant the existing *general admiralty and maritime law* ....

(emphasis added). *Id.* at 65.

(4th Cir. 1997)("OPA clearly preempts **maritime law** as to recovery of cleanup expenses and the cost of compensating injured persons."). (emphasis added).

Anadarko's preemption argument was actually rejected by another case that Anadarko cites. *Tangius v. M/V Westchester,* 153 F. Supp. 2d 859  (E.D. La. 2001). Although Anadarko reads this case as supporting its preemption argument, the court's holding and reasoning clearly rejects Anadarko's contention. In considering whether removal from state court was appropriate, the Court in *Tangius* specifically held that OPA does not preempt state claims:

> The structure of OPA does not suggest otherwise, since the creation of concurrent state court jurisdiction complements OPA's non-preemption principles. As one group of commentators has observed, 'jurisdiction under the OPA . . . to hear claims for removal costs and damages is not surprising, as the ***OPA does not preempt state law*** in the area of oil spill liability and compensation.' [citations omitted]. (emphasis added).

153 F. Supp. at 863.

Additionally, the contemporaneous availability of state common-law claims and OPA claims was soundly confirmed by a recent decision arising out of the same BP oil spill at issue in this MDL. *The St. Joe Co. v. Transocean Offshore Deepwater Drilling, Inc.,* 2011 U.S. Dist. LEXIS 26391 (D. Del. 2011) (". . . prior to OPA, state law was applicable to sea-to-shore pollution. OPA's saving clauses preserve this conclusion even following enactment of OPA."). The plaintiff in that case had filed state court claims based on Florida law. Defendant Transocean sought to remove the case by arguing that OPA displaced the state claims and that OPA provided the exclusive remedies. The Court rejected Transocean's preemption arguments and held that OPA does not preclude the application of state law providing for additional liability. In so ruling, the Court relied on well-established judicial authority demonstrating the absence of preemption. *U.S. v. Locke*, 529 U.S 89, 106 (2000) ("We have upheld state laws imposing liability for pollution caused by oil spills . . . Our view of OPA's saving clauses preserves this important role for the states."); *S. Port*

*Marine, LLC v. Gulf Oil L.P.*, 234 F. 3d 58, 65 (1st Cir. 2000) ("We have indeed acknowledged that congress did not intend the OPA to bar the imposition of additional liability by the states."). The *St. Joe Co.* Court also rejected Transocean's attempt to limit the savings clause to state claims within a state's territorial waters and held that the states have authority to impose additional liability through its common laws even if the oil pollution occurs in federal waters.

Similarly, in *Williams v. Potomac Elec. Power Co.,* 115 F. Supp. 2d 561 (D. Md. 2000), the court held that OPA did not preempt state claims similar to those alleged by Plaintiffs herein. In that case, the plaintiffs filed a state court action alleging negligence, trespass, strict liability, and nuisance. The defendant sought to remove the action to federal court, arguing that the state claims were actually OPA claims preempted by OPA. The Court held that OPA does not preempt state claims:

> The Supreme Court [*U.S. v. Locke*, 529 U.S. 89, 120 (2000)] has thus effectively foreclosed any argument as to pre-emption in this case. OPA does not preempt 'state laws of a scope similar to the matters contained in Title I of OPA' such as the state common law actions pleaded here. There is no basis for removal jurisdiction predicated on OPA.

115 F. Supp. 2d at 565.

Other cases have also clearly etched the rule that OPA does not preempt or otherwise preclude the assertion of state claims. *In re Ballard Shipping Co. v. Beach Shellfish,* 32 F. 3d 623, 631 (1st Cir. 1994) ("The act [OPA] also expressly provides that it does not preempt state imposition of additional liability requirements."); *U.S. v. M/V Cosco Busan,* 557 F. Supp. 1058, (N.D. Ca. 2008) ("OPA contains an unambiguous savings clause that expressly preserves the authority of the United States [and states] to impose liability pursuant to statutes other than OPA."[citing § 27180]).

Therefore, Anadarko's arguments confuse OPA's interrelationship with *federal* causes of action with the true issue herein—the preservation of state claims.

14

As the language of OPA unequivocally declares, state claims can be brought independently or simultaneously with OPA claims. *E.g., U.S. v. Locke*, 529 U.S. 89, 120 (2000); *Tangius v. M/V Westchester*, 153 F. Supp. 2d at 864-5; *Isla Corp. v. Sundown Energy, LP,* 2007 U.S. Dist. LEXIS 31259 (E.D. La. 2007). Additionally, state claims are not subject to any requirement of presentment, even in the context of additional OPA claims. *Id.* [3] *Williams v. Potomac Elec. Power Co.*, 115 F. Supp. at 565, n. 3. As the cases clearly demonstrate, the preservation of state laws, state remedies, and state common law is unequivocal regardless of whether they may constitute the basis for the imposition of additional remedies such as punitive damages. *See, Williams v. Potomac Elec. Power Co.,* 115 F. Supp. 2d 561 (D. Md. 2000) (no preemption of negligence, trespass, strict liability, and nuisance); Section 2718.

Furthermore, acceptance of Anadarko's contention that OPA completely preempts state claims would create an anomalous result under OPA's provisions conferring jurisdiction to state courts. 33 U.S.C. § 2717(c). Reduced to its essence, Anadarko's contention is that federal courts, because of OPA, do not have the power or statutory authority to hear state claims, along with OPA claims. Yet, under Section 2717(c), state courts are given jurisdiction over claims for removal costs or damages as defined under OPA and "may consider claims under this chapter or **State** law . . . ". (emphasis added). *Id.; Tangius v. M/V Westchester*, 153 F. Supp. 2d at 864-5. Since state courts clearly have jurisdiction to maintain *state* law claims, along

---

[3] In any event, if there would be any dismissal for failure to make a presentment of OPA claims, such dismissal would be without prejudice. *E.g., Russo v. M/T Dubai Star,* 2010 U.S. LEXIS 50967 (N.D. Ca. 2010); *See, Boca Ciega Hotel Hotel, Inc. v. Brouchard Transportation Co.,* 51 F. 3d 235, 240 (11th Cir. 1995)(plaintiffs remain free to refile "if and when" they comply with presentation requirement).

with OPA claims, without any preemption of state claims, an anomalous result would arise if federal courts' authority were diminished as Anadarko argues. Section 2717(c) is a broad grant of authority to state courts without any limitation on the types of remedies available in state court (*e.g.*, punitive damages) and without any condition of presentation. *Isla Corp. v. Sundown Energy, LP,* 2007 U.S. Dist. LEXIS 31259 (E.D. La. 2007); *Williams v. Potomac Elec. Power Co.*, 115 F. Supp. at 565, n. 3. Anadarko's argument that OPA preempts state law claims in federal courts, therefore, would diminish the jurisdiction (or statutory authority) of federal courts and give state courts broader jurisdiction to handle state claims and remedies (along with OPA claims) than if those same claims had been brought in federal court. There is no indication in OPA that Congress intended state courts to have broader powers than federal courts when addressing state claims brought along with OPA claims or that in any manner strips their authority to apply state law. Clearly, Anadarko's contention would create inconsistent, conflicting, and illogical results under § 2717(c)—an absurd result not intended by Congress.

**B.    Application Of OCSLA Does Not Preempt State Claims.**

The foregoing authorities clearly establish that OPA does not preempt or otherwise preclude the application of state law claims, either with or without OPA. Yet, Anadarko contends that when OPA is applied through OCSLA, OPA does not allow Plaintiffs to maintain their state claims. In other words, while attempting to fit OPA into the OCSLA statutory framework, Anadarko must necessarily jettison OPA's crucial savings provisions to make its untenable and overbroad argument fit.

**i.    Anadarko's Argument Hinges On Unresolved Factual Issues And Such Arguments Are Not Supported By Competent Evidence.**

Initially, it must be noted that Anadarko's arguments based on OCSLA presume that OCSLA applies in the first instance. Thus, Anadarko assumes that the *Deepwater Horizon* was an OCSLA situs. (p. 8 Anadarko's Memorandum).[4] Yet, whether the *Deepwater Horizon* was a "vessel" or an artificial island "attached" to the seabed is a matter in sharp dispute herein. The filings of many parties indicate positions that *Deepwater Hoizon* was a vessel rather than an OCSLA situs. Its status is one to be determined by facts, not argument in memoranda. *See, Eason v. Thaler,* 73 F. 3d 1322, 1325 (5th Cir. 1996); *Aguirre v. Nueces County,* 2007 U. S. App. LEXIS 3028 (5th Cir. 2007); *Ray v. Tandem Computers, Inc.,* 63 F. 3d 429 (5th Cir. 1995). *Morris v. Covan Worldwide Moving, Inc.*, 144 F. 3d. 377, 380 (5th Cir. 1998).

Contrary to the cases cited by Anadarko, the status of *Deepwater Horizon* is not established as a matter of law. *Sanamo v. Trico Marine Services, Inc.,* 73 Fed. Appx. 79, 2003 WL 21756647 at *3 (5th Cir. 2003) (noting that a jack-up rig that is not jacked up does not necessarily constitute an OCS *situs* since it can still be towed to other sites); *U.S. v. Pickett*, 598 F.3d 231, 236 (5th Cir. 2010) (to be an OCS site, a rig or platform must be "erected" upon the OCS; OCSLA does not apply to vessels that float on the water even if anchored.). Since the status of *Deepwater Horizon* under OCSLA is still in dispute and yet to be determined, Anadarko's motion is premature since it depends on unresolved facts that are not before the Court.

---

[4] Application of state law under OCSLA requires satisfaction of three factors: 1) the controversy must arise on a situs covered by OCSLA; 2) federal maritime law must not apply of its own force; and 3) the state law must not be inconsistent with federal law. *Union Texas Petroleum Corp. v. PLT Engineering, Inc.,* 895 F. 2d 1043, 1047 (5th Cir. 1990); *Grand Isle Shipyard Inc. v. Seacor Marine, LLC,* 589 F. 3d at 782-3.

Even assuming, *arguendo*, that the *Deepwater Horizon* was an OCSLA situs, still to be determined through discovery is the extent and scope of the issues that arose away from that *situs*. Certainly, the oil spill *originated* at such a site. However, Anadarko engaged in actions and omissions away from the site that had effects away from the site, as well as on such site. Discovery is required to explore the relationship of any such activities to the situs, if at all. Discovery will demonstrate whether *all* of Plaintiffs' claims arise in an OCSLA setting and, therefore, Plaintiffs respectfully submit that any ruling in this regard is premature.

Plaintiffs note that while they do allege jurisdiction under OCSLA, not all of their allegations fall into the purview of OCSLA and many will be determined based on "straight" application of state law under diversity principles. Although OCSLA applies to *many* of Plaintiffs' allegations, the breadth of the statute is not so extensive as to sweep all of the allegations into its scope. OCSLA controls only on the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon. *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 217 (1986); 43 U.S.C. Sec. 1333(a) (2) (A). OCSLA must be construed in such a manner that the character of the waters above the outer Continental Shelf as high seas shall not be affected. *Id.;* Sec. 1332(2). Thus, the purpose of the OCSLA was to define a body of law applicable to the *seabed, the subsoil, and the fixed structures* defined therein on the Continental Shelf. *Rodrigue v. Aetna Casualty & Surety Co.,* 395 U.S. 352, 355 (1969). Spraying of dispersants does not easily find a connection to the seabed until they settle onto it. Moreover, the failures to take appropriate measures for months after the oil eruption does not lend itself easily to an OCSLA situs

18

because the *Deepwater Horizon* had sunk. Many of Defendants' actions, including, but not limited to, the choice and use of dispersants clearly occurred away from the well, for example, on the "high seas," on land (*e.g.,* at Anadarko's headquarters), and along coastal waterways. (Plaintiffs' allegations in Par. 44, 47, 51M, N, O, and bb). Decisions regarding the design of the well and its components, as well as the choice of its equipment and personnel undoubtedly occurred away from the well, although those are matters to be determined through discovery at a later date.

Moreover, a finding that the *Deepwater Horizon* was an OCSLA situs would begin, not end the analysis. In many of the cases determining whether or not OCSLA applies, the analysis is curtailed by the fact that the injury occurred at the same time and place as the accident that gave rise to the injury—at the OCSLA situs. In other words, the injury or death was the immediate consequence of the accident on the OCSLA situs such that it was actually one event and the locus of that event was easy to determine. *See, Rodrigue v. Aetna Casualty & Surety Co.* 395 U.S. 352 (1969) (where both plaintiffs suffered their injuries and were killed on the offshore drilling platform, OCSLA applied and case was governed by Louisiana law rather than DOHSA); *Raffray v. Gulf Logistics, LLC,* 2010 U.S. Dist. LEXIS 133912 *15(E.D. La. 2010) (OCSLA inapplicable where locus of negligence [operation of crane] occurred on oil platform, but injury occurred on a ship tied to the platform). Therefore, under OCSLA, courts distinguish between the location of the actions or omissions that give rise to the tort and "where the alleged wrong took effect." *Egorov, Puchinsky, Afanasiev & Juring v. Terriberry, Carroll & Yancey,* 183 F. 3d 453, 456 (5th Cir. 1999); *Raffray v. Gulf Logistics, LLC,* 2010 U.S. Dist. LEXIS 133912 at *7; *Smith v. Pan Am Air*

19

*Corp.,* 684 F. 2d. 1102 (5th Cir. 1982) (OCSLA did not apply where helicopter taking off from platform hit platform equipment, but crashed into the sea. [Presumably, the workers died when they hit the sea, not when the helicopter hit the platform]); *Hails v. Atlantic Richfield Co.*, 595 F. Supp 948, (W.D. La. 1984) (For jurisdictional purposes, 'a tort occurs where the *impact* of the act or omission produces injury."[citations omitted]).

Anadarko's proffered "geographic center of gravity" analysis (P. 14 Anadarko's Memorandum) has not been adopted (or even considered) by *any* court in a tort situation such as this case. Plaintiffs acknowledge that *Grand Isle Shipyard Inc. v. Seacor Marine, LLC,* 589 F. 3d 778 (5th Cir. 2009) applied a "focus-of-the-contract" test. 589 F. 3d at 781. However, that case was a *contract* dispute, *not* a tort case. Significantly, the Court did not disturb the "clear" legal principles that where the tort and injury arise on an OCSLA situs, OCSLA applies, but when the tort arises on the high seas, OCLSA does not apply. 589 F. 3d at 781. Nothing in the Court's opinion suggests that it intended to apply any such test to tort cases such as this one. *See, Raffray v. Gulf Logistics, LLC,* 2010 U.S. Dist. LEXIS 133912 *15(E.D. La. 2010)(The analysis that must be undertaken to determine whether admiralty jurisdiction [as opposed to OCSLA jurisdiction] extends to a contractual claim is different from that which applies to a tort claim.). Given the breadth of the scope of the actions and omissions alleged by Plaintiffs in this case, it is indeed likely that many of Anadarko's activities, as well as the effects of same, occurred in places other than an OCS site. As such, state law would be the applicable law under traditional diversity principles.

### ii.     OCSLA Does Not Bar State Claims, Alone Or Through OPA.

Notwithstanding the unsettled question of whether OCSLA applies to Anadarko's actions and omissions to the extent and scope Anadarko contends herein, Plaintiffs will address Anadarko's unmeritorious arguments. Despite OPA's unequivocal preservation of state laws, Anadarko argues that OCSLA renders state causes of action and state law inoperative because OPA so provides. Again, the statutory language and judicial interpretations fail to support Anadarko's argument. In fact, acceptance of Anadarko's arguments would again create serious "inconsistent" results Anadarko claims it is seeking to avoid.

After spending considerable effort arguing that OPA, alone, applies in this legal framework, Anadarko presents a fallacious argument that a significant portion of OPA does not apply, *i.e.*, the unambiguous savings provisions in Section 2718. In other words, Anadarko's argument succeeds only if OPA is dissected and injected into OCSLA without the crucial provisions that negate Anadarko's argument. Clearly, such a disjointed application of any statute would be inappropriate. *See, Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 221 (1986) ("In expounding a statute, [courts] must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy.").

As noted above, the savings clause in OPA clearly provides for the application of state claims—without any reservation, limitation, or conditions. Any other construction would distort OPA beyond reason and defeat Congress' clearly expressed intent. Anadarko argues that only OPA should be applied since state law would be inconsistent with OPA, arguing that OPA requires a presentation (which

21

state claims do not) and that OPA does not allow punitive damages (which state law does allow). First, these elements do not render the application of state law "inconsistent." OPA does not require that state causes of action be subject to any presentation requirement. § 2718; *Isla Corp. v. Sundown Energy, LP,* 2007 U.S. Dist. LEXIS 31259 (E.D. La. 2007); *Williams v. Potomac Elec. Power Co.*, 115 F. Supp. at 565, n. 3. Since there is nothing in OPA that would require state claims to be subject to a presentation, there is no "inconsistency" between OPA and state law—OPA itself contemplates that result. With respect to the availability of punitive damages under state law, such damages are only a supplementation or the filling in of a remedial gap that does not negate or interfere with any provision in OPA. In any event, by including an "unambiguous" savings clause in OPA which expressly allows "additional" remedies and liabilities, the application of the "common law of states," and civil and criminal penalties, Congress surely intended to allow states, as well as the United States, to impose additional remedies such as punitive damages. *E.g., U.S. v. M/V Cosco Busan*, 557 F. Supp. 2d 1058, 1063 (N.D. Ca. 2008). Therefore, the application of state law, including any elements of damages provided by state claims, is entirely consistent with, contemplated by, and expressly provided by OPA itself. *Id.*

Seeking to avoid the application of OPA's savings clause, Anadarko argues, "OPA's savings clause, which precludes the preemptive effect of OPA itself, does not allow state law to be applied in this case." (p. 10, Memorandum of Law). First, the savings clause in OPA *does* allow the application of state law. *E.g., Isla Corp. v. Sundown Energy, LP,* 2007 U.S. Dist. LEXIS 31259 (E.D. La. 2007); *Williams v.*

*Potomac Elec. Power Co.*, 115 F. Supp. at 565. Secondly, Anadarko inappropriately compares the savings provisions in OPA to entirely dissimilar language in § 7 of the Death on the High Seas Act. Although § 7 in DOHSA was held to only preserve state court jurisdiction for claims under DOHSA and accidents arising in territorial waters, the Supreme Court's reasoning was based on that section's unique legislative history, the congressional purposes, the importance of uniformity of admiralty law, and the language of the Act as a whole. *Offshore Logistics*, *Inc., 477 U.S. at 221.* Significantly, the Court characterized Section 7 as "ambiguous" in its choice of words in that it only provided that state law 'remedies' or 'rights of action' would not be 'affected' and that it made no provisions for reconciling potentially conflicting state and federal measures of recovery. *Id.* at 222. Significantly, the Court contrasted DOHSA's Section 4 of DOHSA, which it noted clearly preserved the right to recover under the law of a foreign sovereign.[5]

Unlike Section 7 of DOHSA, the savings provisions in OPA are clear and unambiguous in their mandate that state law applies. *E.g., U.S. v. M/V Cosco Busan*, 557 F. Supp. 2d 1058, 1063 (N.D. Ca. 2008). As such, OPA's savings clause is even more emphatic than Section 4 of DOHSA, which the Supreme Court determined expressed a clear intent to apply the substantive laws of sovereignty. By way of example, the title of § 2718, *i.e.*, "Relationship to other law" unambiguously describes the purpose of the section. *See, Henderson v. Erick K. Shinseki, Sect'y of*

_____

[5] Section 4, DOHSA provides: "Whenever a right of action is granted by the law of any foreign State on account of death by wrongful act, neglect, or default occurring upon the high seas, such right may be maintained in an appropriate action in admiralty in the courts of the United States without abatement in respect to the amount for which recovery is authorized, any statute of the United States to the contrary notwithstanding."

*Veterans Affairs,* 131 U.S. 1197 (2010) (noting that a statute's title is a significant aid in its interpretation). The intent and purpose of saving state law is further emphasized by the title of subsection (a) – " **Preservation of State** authorities." *Id.* Subsection (a) goes on to unequivocally delineate in repetitive terms that OPA does not affect or **preempt** the authority of states from imposing any **additional liability or requirements** with respect to the discharge of oil or other pollution by oil within such State; or any removal activities in connection with such a discharge. In Section 2718(a) (2), OPA echoes even more resoundingly that OPA should not be interpreted **to affect or modify in any way the obligations or liabilities of any person under … State law, including common law."** Without any doubt, the above-referenced language of OPA specifically provides that the obligations and liabilities "State law, *including common law*" will **not** be affected or modified "in any way." (emphasis added) *Id.* Other language in OPA further echoes the resounding declaration that state laws may impose additional requirements and liabilities, regardless of whether they are criminal or civil, and regardless of whether they impose penalties. § 2718(c). Significantly, as noted above, "nothing in this Act shall **in any way"** affect such state remedies as common-law.

Therefore, unlike Section 7 of DOHSA which the Supreme Court found too ambiguous to preserve state claims in the context of DOHSA's complicated legislative history and historical basis, OPA's savings clauses do not speak meekly on the subject of their preservation of state remedies—including those under "common-law" and those which constitute penalties. Accordingly, if OPA is to be

brought into play through OCSLA, *all* of it should be applied, including the unambiguous savings clauses.

Additionally, Anadarko's argument would necessarily result in a conflict and inconsistent interpretations of OPA that would depend on whether the claims were brought in state or federal court and whether claims were brought under OPA or in the context of OCSLA. Already noted above, is the inconsistent and unreasonable result that would ensue from Anadarko's argument as applied to the respective powers of state courts and federal courts. Nothing in OPA suggests that federal courts can maintain state claims to any lesser extent than state courts. *See, Tangius v. M/V Westchester*, 153 F. Supp. 2d at 864-5(noting the broad authority remaining in state courts). Anadarko's argument also presents still another inconsistent and conflicting result that would depend on whether OPA claims arose in an OCSLA context or in a non-OCSLA context. For example, in a "stand alone" context, OPA clearly allows for state claims to be presented without limitation on the causes of actions or remedies asserted. However, if one accepts Anadarko's argument, when applied in the context of OCSLA, OPA would preclude the same state claims from being maintained in federal court. Under Anadarko's argument, state claims (without presentation and with punitive damages) would be available in non-OCSLA situations, as well as in state courts, but not available in where OCSLA is applying OPA to the case. Therefore, Anadarko's argument would result in the identical statutory language having two separate and conflicting meanings depending on whether OCSLA was in the picture. There is nothing in OPA or in the OCSLA supporting such a conflicting and inconsistent result. Therefore, state law

"unaffected," "unpreempted," and "unmodified" by OPA is applicable, even in the context of OCSLA.

In this regard, it is again noted that the Mexican States do not depend solely on either OPA or OCSLA for jurisdiction herein. The U.S. Constitution through Article III, Sec. 2 and 28 U.S.C. §1332 provide alternative grounds for the assertion of the claims herein. Anadarko does not dispute jurisdiction under these provisions or the Mexican States' rights to pursue their state claims under these independent provisions. Therefore, regardless of the judicial result on Anadarko's arguments, Plaintiffs' claims remain unaffected.

### 4.  OPA'S PRESENTATION REQUIREMENT IS NOT JURISDICTIONAL.

Anadarko does not assert that it would pay any claim that would be presented to it by Plaintiffs. Anadarko does not claim that but for any failure to make a presentation, these cases would have been settled. Furthermore, Anadarko does not allege or even claim that it has established any fund for handling claims or that it has contributed any funds to the existing BP fund. It does not claim that it has set aside any funds for purposes of settlement or that it has settled any claims that have been presented to it. Rather, its actions can only be characterized as demonstrating that notwithstanding its contention that a presentation of claims should have been made, it has never intended to settle any claims in the first place. In short, Anadarko does not even pretend that it has been prejudiced (or even inconvenienced) in any manner by any failure to make a presentation. In reality, it has not suffered any prejudice. Courts should not require a plaintiff to undertake futile actions. Plaintiffs acknowledge that some of the foregoing contentions raise

"factual" issues that have not been presented herein through appropriate "evidence." However, these are issues that should be allowed to be developed through discovery rather than a premature resolution of this issue. *See, Arbaugh v. Y & H Corp.,* 546 U.S. 500, 514 (2006) (where jurisdiction depends on contested issues of fact, the court is required to review them).

Plaintiffs also acknowledge that some district courts have used the word "jurisdictional" to characterize the presentation requirement in § 2713. However, as noted by the Supreme Court, "jurisdiction" "is a word of many, too many, meanings." *Union Pacific R. Co. v. Locomotive Engineers and Trainmen Gen. Comm. Of Adjustment, Central Region,* 130 S. Ct. 584, 175 (2009); *Arbaugh v. Y & H Corp.,* 546 U.S. at 510; *Steel Co. v. Citizens for Better Environment,* 523 U.S. 83, 90 (1998). Thus, the Court has cautioned against relying on such "unrefined dispositions as 'drive-by jurisdictional rulings' that should be accorded no precedential effect on the question whether the federal court had authority to adjudicate the claim in the suit." 546 U.S. at 511; *Steel Co.,* 523 U.S. at 91.

Several paramount principles of statutory construction and policy demonstrate that the presentation requirement is not jurisdictional. First, OPA's presentation requirement is clearly one aimed at processing claims. As very recently noted by the U.S. Supreme Court, such "claim-processing rules" should **not** be described as jurisdictional. *Union Pacific R. Co. v. Locomotive Engineers and Trainmen Gen. Comm. Of Adjustment, Central Region,* 130 S.Ct. 584, 175 (2009); *Henderson v. Eric Shinsekie, Secretary of Veterans Affairs,* 131 S. Ct. 1197 (2011).

Additionally, in considering whether a particular requirement is a "jurisdictional" prerequisite, courts typically examine the structure and organization of the statute, particularly its provisions granting federal jurisdiction. *E.g., Arbaugh v. Y & H Corp.*, 546 U.S. at 514-16; *Union Pacific R. Co. v. Locomotive Engineers and Trainmen Gen. Comm. Of Adjustment, Central Region,* 130 S.Ct. 584, 175 (2009). Thus, in determining that Title VII's requirement that an employer have fifteen employees was not a jurisdictional prerequisite, the court noted that the requirement was not contained in the statute's provisions granting federal jurisdiction, but contained in a separate section that did not reference jurisdiction. *Id.* Therefore, the court reasoned, "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." 546 U.S. at 516. Other cases emphasize that Congress' decision to place a requirement in a section of the act separate from the statutory framework granting jurisdiction demonstrates that the requirement is not jurisdictional. *Henderson v. Eric Shinsekie, Secretary of Veterans Affairs,* 131 S. Ct. 1197 (2010) (placement of appeal deadline in section other than the subchapter entitled "Organization and Jurisdiction" demonstrated the requirement was not jurisdictional.); *Union Pacific R. Co. v. Locomotive Engineers and Trainmen Gen. Comm. Of Adjustment, Central Region,* 130 S.Ct. 584, 175 (2009); *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393-4 (1982).

Furthermore, compliance with a statutory requirement is not jurisdictional where, as herein, the statute does not describe it as such. *Id.; Zipes v. Transworld Airlines, Inc.,* 455 U.S. at 394; *Union Pacific R. Co. v. Locomotive Engineers and*

28

*Trainmen Gen. Comm. Of Adjustment, Central Region,* 130 S.Ct. 584, 175 (2009).

Furthermore, even though a requirement is cast in mandatory terms, the Supreme

Court has rejected the notion that 'all mandatory prescriptions, however emphatic,

are . . . properly typed jurisdictional." *Henderson v. Eric Shinsekie, Secretary of*

*Veterans Affairs,* 131 S. Ct. 1197 (2011); *Union Pacific R. Co. v. Locomotive Engineers*

*and Trainmen Gen. Comm. Of Adjustment, Central Region,* 130 S.Ct. 584, 175 (2009).

Therefore, even when a statutory scheme has an overriding policy of peacefully

settling disputes, a statutory requirement aimed at promoting settlement of

disputes does not transform the requirement into a jurisdictional one. *Union Pacific*

*R. Co. v. Locomotive Engineers and Trainmen Gen. Comm. Of Adjustment, Central*

*Region,* 130 S.Ct. at 175.

      Application of the foregoing principles to OPA's presentation requirement

results in the inescapable conclusion that it is not jurisdictional. Significantly, OPA's

sections creating federal "jurisdiction" do not contain any presentment obligations.

33 U.S.C. § 2717(a)-(f). In fact, the title of § 2717, as well as its subject matter, is

"Litigation, **Jurisdiction**, and Venue." (emphasis added). *Id.* Of course, if Congress

had intended to elevate a presentation requirement to a jurisdictional level, § 2717

would have been the place to create such a jurisdictional bar. It is significant that

Congress did not do so. *See*, *Zipes,* 455 U.S. at 394; *Union Pacific R. Co.,* 130 S.Ct. at

175. In fact, §2717(b) creates exceptions in subparagraphs (a) and (c), but does not

create any other exceptions to the Court's jurisdiction. In other words, the

jurisdictional provisions do not indicate that the Court's jurisdiction is in any

manner affected by a failure to present. The absence of such an exception to

jurisdiction, especially when other exceptions have been carved out, strongly evidences that presentation is not a jurisdictional requirement.

Further negating that such a requirement is jurisdictional, is the language in §2717(f)(2) which specifically dispenses with any need to make a presentation (or any other requirement): "Except as otherwise provided in this paragraph, an action may be commenced under this title for recovery of removal costs **at any time** after such costs have been incurred." (emphasis added). "At any time" means that a presentation is not a prerequisite for filing a suit directly against a responsible party. *U.S. v. M/V Cosco Busan,* 557 F. Supp. 2d at 1062 (also holding that claims for damages under OPA could proceed without a prior presentation to further the goals of OPA.). Although the foregoing reasoning and holding applied to a claim by the United States, there is no practical or policy reason why it should not also apply to foreign states such as Plaintiffs herein.

Keeping into consideration the Supreme Court's admonition about undue reliance on cases with "drive-by" jurisdictional determinations, the cases relied upon by Anadarko deserve special scrutiny. Anadarko overreaches in its interpretation of the Eleventh Circuit's interpretation of the presentation requirements in *Boca Ciega Hotel, Inc. v. Brouchard Transportation Co.,* 51 F. 3d 235 (11th Cir. 1995). The Court therein framed the issue as, "In this case, we must decide whether the claims presentation procedure of the Oil Pollution Act of 1990 (OPA or the Act), 33 U.S.C. A. §§ 2701-2761 (West Supp. 1994), constitutes a mandatory **condition precedent** to the filing of **private** lawsuits under the Act." (emphasis added). 51 F. 3d at 236. Significantly, the word "jurisdictional" is absent from the

framing of the issue. In fact, *Boca Ciega* used language demonstrating that the presentation requirement is nonjurisdictional and that a failure to present can be fixed—"[plaintiffs] remain free to refile this action, if and when they comply . . ." 51 F. 3d at 240. Moreover, crucial factors distinguish *Boca Ciega* from the facts at hand. As noted by the Court, the plaintiffs were "private" landowners—not public entities or sovereign entities as herein. In such circumstances, § 2717(f) renders presentation unnecessary. *U.S. v. M/V Cosco Busan*, 557 F. Supp. at 1062. It is also crucial to note that *Boca Cienega* is distinguished from Anadarko's situation by the fact that in that case, unlike Anadarko, the defendants had established a claims clearinghouse pursuant to OPA to identify, process, and settle claims arising from the spill. *Id.* As noted above, Anadarko has not even attempted to claim that it established or participated in any such claims process. In other words, Anadarko attempts to create a barrier to its liability when it has not even complied with any corresponding obligations it has under OPA.

 In *Leboeuf v. Texaco*, 9 F. Supp. 2d 661 (E.D. La. 1998), the Court astutely analyzed *Boca Ciega* and noted that decision had been too broadly applied. As the Court pointed out, the Eleventh Circuit's language characterized the presentation requirement as a "mandatory conditions precedent" and that the Court had avoided the use of the word "jurisdictional":

> Nowhere in the *Boca Ciega* opinion does this Court find the Eleventh Circuit concluding the requirements of § 2713 as being jurisdictional. Rather, the Eleventh Circuit found the presentment requirements a mandatory condition precedent. The reasoning of the Eleventh Circuit is more in accord with an exhaustion of administrative process. This Court respectfully disagrees with Judge Clement's conclusion [in *Marathon Pipe Line Co., v. LaRoche Industries, Inc.*, 944 F. Supp. 476 (E.D. La. 1996)] that compliance with § 2713 is jurisdictional.

9 F. Supp. at 664.

Significantly, both *Boca Ciega* and *Marathon* failed to even address Section 2717(f)'s leeway to file a suit for recovery costs "at any time." *U.S. v. M/V Cosco Busan*, 557 F. Supp. at 1062. In short, the requirement is permeated with significant exceptions further indicating it is not a jurisdictional bulwark against claims. Additionally, both *Boca Ciega* and *Marathon* omitted any analysis of the statute in accordance with the interpretative rules applied by the Supreme Court. *Union Pacific R. Co. v. Locomotive Engineers and Trainmen Gen. Comm. Of Adjustment, Central Region,* 130 S.Ct. 584, 175 (2009); *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393-4 (1982).

Also, in *Turner v. Murphy Oil USA, Inc.,* 2005 U.S. Dist. LEXIS 45123 (E.D. La. 2005), the court declined to characterize the presentation requirement as "jurisdictional," noting that it was a "condition precedent" which in the Court's words, it declined to waive. *Id.* at *19. Since jurisdictional requirements cannot be waived, the Court's language referencing waiver strongly suggests it was the Court's view that it was not jurisdictional. The non-jurisdictional characterization is further borne out by the Court's characterization of the suit as "premature." *Id.* Again, the Court's language suggests its view that presentation can be cured, allowing refiling of OPA claims after the presentation has been made.

In a related case, *Turner v. Murphy Oil USA, Inc.*, 2007 U.S. Dist. LEXIS 94304 (E.D. La. 2007), the court noted that its dismissal for failure to make the necessary presentment was without prejudice to refiling: "This dismissal, however, will be

treated as a dismissal without prejudice and [plaintiff] remains free to refile this action if and when it complies with the OPA procedure. [Citing *Boca Ciega*]." *Id*. at *6.

Therefore, it is respectfully submitted that even though the presentation requirement has been described as "jurisdictional" a careful scrutiny of the statute and cases interpreting same, along with application of sound interpretative principles demonstrates that it is not of that character. Moreover, Plaintiffs respectfully submit that if this Court should decide otherwise, the appropriate course would be to abate or stay the OPA claims until such time as Plaintiffs have made their presentation. In this regard, Plaintiffs note that they intend to submit such a presentation in the near future.

### 5.    CHALLENGES TO PLAINTIFFS' FOREIGN CLAIMANT STATUS.

### A.    Showing That Plaintiffs Have Not Been Compensated.

Anadarko takes issue with Plaintiffs' complaints in that they fail to allege that Plaintiffs have "not been otherwise compensated for the removal costs or damages" as stated in. § 2707(a) of OPA. Significantly, Anadarko does not claim or allege that it or any other defendant herein has paid Plaintiffs for the removal costs or damages they assert herein. Of course, Plaintiffs have not been compensated for their removal costs or damages—otherwise they would not have filed the instant actions. Plaintiffs respectfully submit that this is an issue to be demonstrated by evidence at the trial of this matter, rather than a pleading or jurisdictional requirement. *See, Arbaugh v. Y & H Corp.,* 546 U.S. 500, 514 (2006) (statutory requirement is part of plaintiff's case to be established at trial). In any event, if this Court determines that satisfaction of this element is a pleading requirement, this element can be easily

pleaded in an amendment to the Complaints and Plaintiffs respectfully request permission to amend their Complaints to allege that they have not otherwise been compensated for their removal costs and damages.  Plaintiffs may also be adopting allegations in the Pleading Bundle "C" Master Complaint as permitted by PTO No. 33.

**B.    Compliance With Treaty Requirement Under OPA.**

Section 2707 of OPA provides that a foreign claimant "shall demonstrate" that recovery is "authorized" by a treaty or executive agreement between the United States and the claimant's country." (§2707(a) (1) (B). The United States and Mexico, as well as other foreign entities, have entered into various treaties and executive agreements providing for the protection of the environment, including safeguarding marine and coastal environments against pollution and other hazards. Plaintiffs respectfully submit that the following treaties, conventions, and executive agreements (among others) "authorize" their claims herein:

- Agreement of Cooperation Between the United States of America and the United Mexican States Regarding Pollution of the Marine Environment by Discharges of Hydrocarbons and Other Hazardous Substances (signed 1980); MEXUS Plan ("Joint Contingency Plan Between the United Mexican States, Mexican Sovereign States and the United States of America and some States of the United States Regarding Pollution of the Marine Environment By Discharges of Hydrocarbons or Other Hazardous Substances"; MEXUS Plan's Gulf Geographic Annex ("MEXUS GULF ANNEX")(Signed Nov. 7, 2007). Parenthetically, it is noted that the MEXUS GULF ANNEX recognizes the particularly environmentally and economically sensitive regions along Plaintiffs' coastlines and the paramount need to protect these. (§G406.1.2.1 andG406.1.3.1);
- Cartagena Convention (effective June 8, 2000) ("Convention for the Protection and Development of the Marine Environment in the Wider Caribbean Region"), as supplemented by its Protocols.
- 1992 Civil Liability Convention;
- Treaty on Maritime Boundaries between the United States of America and the United Mexican States (ratified October 23, 1997);

With the Court's permission, Plaintiffs will amend their Complaints to specify the treaties authorizing them to maintain this suit.

### 6.   ANADARKO'S UNMERITORIOUS CHALLENGES TO PLAINTIFFS' STATE CLAIMS.

As noted above, Plaintiffs' state claims are viable causes of action in addition to its claims under OPA.  Yet, Anadarko distorts and omits allegations in a manner that seriously mischaracterizes Plaintiffs' allegations.

### A.   Plaintiffs' Allegations Amply Satisfy the Rule 8 "Plausibility" Test.

Rule 8, Fed. R. Civ. P. requires only a "short and plain statement of the claim showing that the pleader is entitled to relief. Rule 8 (a) (2). Therefore, when ruling on a Rule 12(b) (6) motion to dismiss, the Court must accept as true all well-plead allegations and resolve all doubts in favor of the plaintiff. *See, Tanglewood East Homeowners v. Charles-Thomas, Inc.,* 849 F. 2d 1568, 1572 (5th Cir. 1988). Since all doubts are to be resolved in the plaintiffs' favor, courts should deny a Rule 12(b) (6) motion unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* Rule 12(b) (6) motions are viewed with disfavor and are rarely granted. *Sosa v. Coleman,* 646 F. 2d 991 (5th Cir. 1981).

To state a claim under Rule 8, the complaint does not have to allege "detailed factual allegations." *Ashcroft v. Iqbal*, 129 U.S. 1937, 1949 (2009); *Cuvillier v. Taylor*, 503 F. 3d 397, 401 (5th Cir. 2007). Rather, the complaint need only state a claim that is plausible on its face. *Id.;* A claim is plausible on its face when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*  As the Fifth Circuit has noted,

courts must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Lormand v. U.S. Unwired, Inc., 565 F. 3d 228, 232 (5th Cir. 2009), citing Tellabs, Inc. v. Makor Issues and Rights, Ltd,* 551 U.S. 308 (2007).

In support of its erroneous contention regarding insufficiency under Rule 8, Anadarko relies primarily on the inapposite holding in *Magluta v. Samples,* 256 F.3d. 1282 (11th Cir. 2001). However, Anadarko's reliance on that case is greatly misplaced because that case was that case was a § 1883 civil rights case against public officials—a category of cases which at that time required a "heightened specificity" in pleadings. 256 F. 3d at 1284. Since Plaintiffs' allegations are not civil rights allegations against public officials, the "heightened scrutiny" and holding in *Magluta* are inapplicable. Moreover, the Plaintiffs' complaints herein are markedly different than the complaint therein which the court described as having the allegations "buried beneath innumerable pages of rambling irrelevancies." 256 F. 3d at 1284.

Plaintiffs respectfully submit that the discussion below amply demonstrates that they have complied with the requirements of Rule 8. In any event, Plaintiffs note that even *Magluta* and *Pro Image Installers, Inc. v. Dillon,* 2009 U.S. Dist. LEXIS 3777 (M. D. Fla. 2009) [another case relied upon by Anadarko] granted the plaintiffs the opportunity to amend their complaints. Therefore, should the Court determine that additional specificity is required; Plaintiffs respectfully request that they be given the opportunity to amend their complaints accordingly.

### B.     Plaintiffs' Allegations Are Sufficient to Hold Anadarko Liable.

Plaintiffs' allegations are more than plausible, especially when all reasonable inferences are resolved in Plaintiffs' favor, to meet the Rule 8 test. With respect to Anadarko's challenge that Plaintiffs' allegations of "Defendants" do not give it fair notice, the Fifth Circuit has rejected such a contention. *Brown v. Valmet-Appleton*, 77 F. 3d 860, 863 n. 10 (5th Cir. 1996) ("That plaintiff's allegations embrace [defendants] *in globo* does not detract from their specificity. An acceptable reading of the pleadings alleges that *each* defendant engaged in the tortious conduct therein described.").

Plaintiffs' allegations negate Anadarko's contention that Plaintiffs' Complaints lack specificity. Thus, Plaintiffs allege not just that Anadarko held an interest in the well, but that, "[Anadarko], in whole or in part, owned, *controlled, managed, supervised, and/or oversaw Deepwater Horizon* and the well that is the subject of this suit." (emphasis added)(Par. 21 of Plaintiffs' Complaints). Furthermore, Plaintiffs have alleged, "As a direct and proximate result of the mismanagement, omissions, and negligence which permeated Defendants' operations and activities on and related to the *Deepwater Horizon* which led to the disastrous explosion and oil spill, Plaintiff[s] [have] suffered and in the future will suffer severe economic, environmental, and other damages as further set forth below." (Par. 3, Plaintiffs' Amended Complaints). The Complaint provides very specific detailed factual allegations regarding Anadarko's and the other defendants' actions and omissions leading up to and after the explosion of the *Deepwater Horizon*. (*E.g.*, Par. 34, 35, 36, 38, 40, 41, 43, 46). Anadarko is alleged to be jointly and severally liable with the other Defendants. (Par. 42, 50, 51). Contrary to

Anadarko's contention, Plaintiffs' Complaints are replete with specific factual allegations pointing out Anadarko's culpable acts and omissions. In addition to the examples already cited, Plaintiffs' Complaints contain specific factual allegations related to Anadarko's and the other Defendants' negligence and wrongful actions regarding the containment and clean up process. (Par. 44(A)-(D); see also, Par. 52). In fact, in Paragraph 51 of their Complaints, Plaintiffs have listed **fifty-six** detailed, fact-specific omissions, violations of duties, negligent actions and other liability creating matters. These, as well as other allegations are incorporated by reference into Plaintiffs' statements of their claims. Furthermore, Anadarko's contentions that Plaintiffs have not alleged that Anadarko had any management or operating roles or that its employees were on board the *Deepwater Horizon* are clearly negated by Plaintiffs' allegations. For example, Plaintiffs specifically allege, "Whenever it is alleged herein that a corporate or business defendant engaged in tortious conduct, omissions, or actions, it did so through its authorized agents, officers, employees, representatives, and others acting on its behalf." (Par. 32). Since this allegation is carried over into all of the other allegations, Plaintiffs' Complaints do allege that Anadarko's employees, agents, *etc.* engaged in the omissions and actions giving rise to Plaintiffs' claims.

Although Plaintiffs' complaints need not allege 'detailed factual allegations." *Ashcroft v. Iqbal*, 129 U.S. at 1949, Plaintiffs have amply done so. Additionally, Plaintiffs have stated a claim that is plausible on its face since the factual content in their complaints would readily allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* This is especially true

38

since the factual allegations in the complaint must be accepted as true and all reasonable inferences drawn in the plaintiffs' favor. *Lormand v. U.S. Unwired, Inc.,* 565 F. 3d at 232. Accordingly, Anadarko's motion to dismiss must be denied. In the alternative, should the Court determine there are deficiencies in the Complaint, Plaintiffs request leave to amend to cure same.

### C.      Plaintiffs' Negligence Claims.

Anadarko distorts Plaintiffs' allegations by claiming they do not allege a violation of any duty to them, any control or management by Anadarko, or that Anadarko took any actions that actually or proximately caused Plaintiffs' harm. (p. 29-30, Andarko's Memorandum). The discussion above, demonstrates the existence of specific, factual allegations that Anadarko acted through its employees, agents, *etc.*; that Anadarko controlled, managed, supervised, or oversaw the incidents at issue herein; and that Anadarko and the other defendants engaged in over fifty-six detailed factual allegations of culpable behavior. These allegations readily negate Anadarko's contention. Plaintiffs submit that a duty not to participate in and aggravate oil spill that spewed millions of barrels of oil into the Gulf and along the entire Gulf shores is easily and reasonably inferred. In any event, Plaintiffs make specific references to alternative duties in their Complaints, for example, in Paragraphs 57, 58, and 59 of their Complaints. Accordingly, Anadarko's arguments are again without substantiation.

### D.      Negligence and Wantoness.

Anadarko asserts that Plaintiffs' have not asserted claims for simple negligence and therefore cannot assert claims for gross negligence. (p. 31,

Anadarko's Memorandum). Apparently, Anadarko has overlooked significant portions of Plaintiffs' Complaints. Plaintiffs' First Cause of Action is specifically entitled "NEGLIGENCE." (p. 15, Plaintiffs' Amended Complaints). This negligence claim is hard to overlook since the statement of this claim extends for almost seven pages of the Complaints. (Par. 49-55, of Amended Complaint). Other allegations in the Complaints repeatedly refer to Defendants' "negligence." (*E.g.*, Par. 3, 42, 44, 45, and 48). Additionally, Plaintiffs' Amended Complaints clearly allege violations of duties Anadarko owed to them. (*E.g.*, Par. 57-60 of Plaintiffs' Amended Complaints).

Therefore, although Plaintiffs dispute Anadarko's contention that they could not allege gross negligence without alleging negligence, their Complaints indisputably demonstrate Plaintiffs *have* asserted claims for negligence, as well as gross negligence.

Plaintiffs do not read Defendant's Memorandum as contesting the adequacy of these Plaintiffs' allegations concerning wantoness. Nevertheless, Plaintiffs submit that their allegations are more than sufficient to establish a claim that "Anadarko acted with reckless or conscious disregard of the rights or safety of others. See, ALA. Code §6-11-20(b) (3) (2010). Thus, Plaintiffs' allegations include such allegations in Paragraphs 38, 41, 44, 45, and 51 of their Amended Complaints. See, also Par. 50.

### E. Negligence Per Se.

Anadarko takes issue with Plaintiffs' failure to specify the statutes it violated that would give rise to negligence per se claims. Plaintiffs submit that since discovery is still on-going, requiring Plaintiffs to identify these particular statutes,

standards, and regulations would be premature. Nevertheless, Plaintiffs would amend their Amended Complaints to allege violations of the following:

- The Texas Oil Spill Prevention And Response
  Act of 1991, Tex. Nat. Res. Code Ann. § 40.001, *et seq.*
- Oil Pollution Act ("OPA") 33U.S.C. §2701, *et seq.*
- Clean Water Act 33 U.S.C. §1251 *et seq.*
- National Oil and Hazardous Substances Pollution Contingency Plan 42 U.S.C. 9601, *et seq.*
- Florida Pollutant Discharge Prevention And Control Act, Fla. Stat. §376.011, *et seq.*
- The Louisiana Oil Spill Prevention and Response Act, La.R.S. 30:2451, *et seq.*

Of course, there are also numerous Coast Guard, EPA, and OSHA regulations and standards that are applicable herein, and Plaintiffs reserve the right to add these and any other provisions violated by Anadarko and others as discovery progresses. Plaintiffs may also be adopting allegations in the Pleading Bundle "C" Master Complaint as permitted by PTO No. 33.

### F.      Anardarko's "Economic Loss" Rule.

Anadarko contends that Plaintiffs have not alleged damage to property and, therefore, it asserts that Plaintiffs cannot maintain their causes of action for damages. (P. 36-7, Anadarko's Memorandum). In support of their argument, Plaintiffs rely on the rule expressed in a contract case in *Robins Dry Dock & Repair v. Flint*, 275 U.S. 303 (1927). However, reliance on this principle is misplaced since it has no applicability herein.   In *Robbins,* a third party attempted to sue under a contract between the dry dock and a ship owner after the dry dock had damaged the ship, preventing the third party from using it. The ship owner had settled its claims with the negligent dry dock owner. With respect to the tort claim, the Court held that the defendant's tort was only against the ship and since the third party did not

41

own the ship, the third party could not sue for tort. In other words, if a tort existed, it belonged to the owner of the ship, not the third party. However, where the plaintiff has an interest in the damaged property, the rule of *Robins* does not apply. *Vicksburg Towing Co v. Miss. Marine Trans. Co.*, 609 F. 2d 176 (5th Cir. 1980) (owner of damaged property could sue).  Although Anadarko seeks to extend this holding to Plaintiffs' nuisance claims, it is distinguishable, factually and legally.

First, contrary to Anadarko's mischaracterization of their claims, Plaintiffs' do allege, among other things, that their governmental and proprietary interests in their property, lands, shores and adjoining waters, wildlife, and natural resources have been damaged:

- Defendants' acts and omissions with respect to the release of oil, dispersants, and other materials and substances will cause and continue to cause a **material, substantial and unreasonable interference with the use and enjoyment of the waters, property, estuaries, seabed, animals, plants, beaches, shorelines, coral reefs, coastlines, marshlands, and other natural and economic resources of the State** . ... *Furthermore, Defendants have **caused** damage and injury to same and to Plaintiff.* (Par. 80, Plaintiffs' Complaints);

- Fishing operations in the Gulf of Mexico and/or the Caribbean **have been** and will be **injured and damaged** by the contaminating and destructive oil that has killed and tainted fish and other marine life, thus significantly reducing the quantities of fish and other marine life that can be harvested for safe human consumption. The toxic oil **has** and will continue to cause severe financial losses to Plaintiff[s]. Additionally, **the actual effects** of the oil, along with reports of same, have **adversely affected** commerce and tourism. Plaintiff[s'] residents rely on a clean Gulf of Mexico and Caribbean, sea life, clean **beaches** and safe navigable waters for their livelihoods. The State[s] and its [their] citizens also rely heavily on tourism which is centered around **its** [the Plaintiffs'] beautiful **beaches, coral reefs,** marine life, fishing, water sports, and other on-shore and offshore activities. All of this has been **jeopardized, damaged**, and severely **impacted** by Defendants' actions. (Par. 41 of Quintana Roo's Amended Complaint; See also, Par. 41 of Veracruz and Tamaulipas' Amended Complaints alleging, "Plaintiff, itself, **has had** its fishing operations **injured** and **damaged** by the contaminating and destructive oil . . .");

- Defendants knew or should have known that their negligent, grossly negligent, willful, wanton, and/or reckless conduct would result in the oil disaster, causing **past,** present, and future damages **to all of the shorelines and waters adjacent** to the Gulf of Mexico. (Par. 45, Plaintiffs' Complaints);

- [Plaintiffs] rel[y] on the natural resources found in the Gulf of Mexico and Caribbean waters and such natural resources are **now damaged** and further endangered by the wrongful acts of Defendants. (Par. 7, of Plaintiffs' Complaints);

- The conduct of Defendants **caused** Plaintiff to suffer particular damages distinct from the general public. As a direct and proximate result of Defendants' nuisance generating conduct and nuisance continuation conduct, Plaintiff and its citizens **have suffered** past, present, and future losses, by way of example, loss of income; loss of revenue for the State; expenditures of substantial amounts to combat, abate, and prepare for the oil spill; and other damages. (Par. 81, Plaintiffs' Complaints).

- See, also, Par. 3, 6, 8, 46, 55, 61, 72, 76, and 79 of Plaintiffs' Complaints alleging past and actual damage to Plaintiffs' proprietary and governmental interests. (emphasis added)

Therefore, contrary to Anadarko's contention that no loss or damage to Plaintiffs' interests in land or other physical assets or resources has been alleged, the Amended Complaints show otherwise. Therefore, the *Robins* rule is clearly inapplicable. Additionally, it should not be forgotten that the Plaintiffs herein share and have an interest in Mexico's Exclusive Economic Zone, a large expanse of the Gulf of Mexico that adjoins U.S. territorial waters. (Treaty on Maritime Boundaries between the United States of America and the United Mexican States, May 4, 1978). Therefore, these "neighbors to the South" possess vital interests in and to Mexico's Exclusive Economic Zone and all the marine life in it, as well as their shores, beaches, coral reefs, and other natural resources and physical aspects and features

of their coastline. As Plaintiffs have clearly alleged, these have already been damaged by the oil spill and subsequent actions of Defendants.

### G.     Additional Considerations On Plaintiffs' Nuisance Claims.

Anadarko challenges Plaintiffs' nuisance claims, arguing they do not allege damage to property. Already noted above, are the numerous allegations in Plaintiffs' Complaints asserting actual and past damage to its physical property, natural resources, and other interests. Therefore, Anadarko's argument fails. Furthermore, Mexican waters extend right up to and touch United States' waters. Mexico possesses what is referred to as an "Exclusive Economic Zone" across a large expanse of Gulf waters which touches and borders U.S. territorial waters. Clearly, Plaintiffs are "neighbors"—if that is a requirement of a private nuisance claim, which it is not.

Anadarko's reliance on *Barasich v. Shell Pipeline Co.*, 2006 U.S. Dist. LEXIS 84389 (E.D. La. 2006) is misplaced. In that case, plaintiffs were commercial fishermen who sued after a pipeline on land (extending across a levee) ruptured during Hurricane Katrina, spilling crude oil into the flood waters engulfing the surrounding area. With respect to plaintiffs' nuisance claims, the court noted that plaintiffs did not assert *any* damages to *any* property they owned that was adjacent to the defendant's property. In short, the plaintiffs were not alleging any damages to any property they owned, much less that it was adjacent or a "neighbor" of defendant's facilities. Here, the Plaintiffs do allege proprietary and governmental interests in their physical property (*e.g.*, beaches, coral reefs, land, *etc.*). Moreover, they do allege control, management rights, and other interests in the Gulf waters

adjacent to the *Deepwater Horizon* that extend uninterrupted to the very shores of the States of Mexico.

Furthermore, Anadarko misconstrues the interests that can support a nuisance claim, as well as the damages recoverable under such a claim. Anyone who owns, occupies, or otherwise has an interest in property can maintain a claim for private nuisance. *Ft. Worth & Rio Grande Ry v. Glenn,* 80 S.W. 992, 993-4 (Tex. 1904); *Schneider Nat'l Carriers, Inc. v. Bates,* 147 S.W.3d 264, 268 n. 2 (Tex. 2004) (allowing tenant to assert claim); *Freedman v. Briarcroft Prop. Owners, Inc.,* 776 S.W.2d 212, 215-16 (Tex. App.—Houston [14th Dist.] 1989, writ den.)(property owners' association could maintain claim). Moreover, recovery for nuisance may be obtained regardless of whether the plaintiff owns the land involved and regardless of the absence of injury to the land. *Vann v. Bowie Sewerage Co.,* 90 S.W.2d 561, 563 (Tex. 1936) (allowing recovery for personal injuries arising from foul orders from polluted creek). Nuisance actions are not limited to recovery of damage to realty, but may also recover for loss of personal property and personal injury. *Vestal v. Gulf Oil Corp.,* 235 S.W.2d 440, 441-2 (Tex. 1951) (nuisance claims can recover for loss of enjoyment and use of property, as well as for damages to health or personal comfort); *City of Uvalde v. Crow,* 713 S.W. 2d 154, 158-9 (Tex. App.—Texarkana 1986).

Contrary to one of the arguments made by Anadarko, a showing that Anadarko "intended" to interfere with Plaintiffs' rights is not necessary. *City of Tyler v. Likes,* 962 S.W.2d 489, 503 (Tex. 1997) (a nuisance can be created by negligence, intentional actions, or other conduct that is abnormal and out of place); *C.C. Carlton*

45

*Indus. V. Blanchard,* 311 S.W.3d 654, 659 (Tex. App.—Austin 2010 no pet.). Thus, a defendant can be liable for a nuisance even though its conduct was not negligent and not intentional if the conduct was abnormal and out of place in its surroundings. *City of Tyler,* 962 S.W.2d at 504; *Soap Cor. v. Balis,* 223 S. W. 2d 957, 960 (Tex. App.— Ft. Worth 1949, writ ref'd n.r.e.)(not necessary for plaintiff to prove negligence where noxious odors from a plant entered home); *Terrell v. Ala. Water Service Co.,* 15 So. 2d 727, 245 Ala. 68 (1943) (a claim for nuisance exists without the necessity of showing negligence); *Beam v. Birmingham Slag Co.*, 10 So. 2d 162 (1942) (negligence is not a necessary element of a nuisance claim).

Additionally, "A public nuisance is a *condition* that amounts to an 'unreasonable interference with a right common to the general public.'" Restatement (Second) of Torts § 821B (1) (1979); *Jamail v. Stoneledge Condominium Owners Ass'n,* 970 S.W.2d 673 (Tex. App.—Austin 1998) (upholding claim arising from blocking of public street). As further described, a public nuisance is "*Anything* that worketh hurt inconvenience, or damage to the subjects of the Crown." (emphasis added) *Mckee v. City of Mt. Pleasant,* 328 S.W.2d 224, 229 (Tex. App.— Texarkana 1959(citing *King v. Columbian Carbon Co.* 152 F. 2d 636, 638 (5th Cir. 1945)). A private nuisance is "*Anything* done to the ands, tenements, or hereditaments of another that produces damage to but one or a few persons and cannot be said to be public. (emphasis added). *Id.* However, a nuisance may be public and private at the same time; it may injure the public generally and at the same time cause special injury to one or more persons. 328 S. W. 2d at 229. Plaintiffs' allegations are clearly sufficient to establish toxic or deleterious

conditions arising from the oil spill and dispersants that damaged and unreasonably interfered with their physical property, rights of usage, and other proprietary rights; the general public's rights, among others, to be free from interference in their use of Plaintiffs' lands, shores, and resources; damage from Defendants' wrongful actions; the environment, health, economic well-being; and numerous other rights and interests herein. The allegations are also sufficient to establish that they are entitled to pursue their own proprietary and other interests through a cause of action for private and public nuisance claims.

Anadarko expresses doubt that the word "neighbor" in  LA. CIV. Code ANN art 667 (2010) applies to the Mexican states. Plaintiffs do not agree that this statute is the law to be applied herein, but in any event, the concept of "neighbor" under Louisiana law should be given a definition coextensive with the scope of those who are injured by the defendants' actions or omissions. There is no indication that "neighbor" is to be determined by a comparison of addresses, zip codes, or by any geographic limitation. For example, if a nuclear cloud were to be let loose by a facility and float harmlessly over the homes next to the facility, but enshroud those a few miles away, Anadarko's interpretation would deny relief to those engulfed by it. Clearly, such an interpretation is not a reasonable one to apply herein.  As noted above, the crux of a nuisance is a harmful *condition. E.g.,* Restatement (Second) of Torts § 821B (1) (1979).  In any event, the Plaintiffs are "neighbors" inasmuch as their waters and interests adjoin, border, and are contiguous with those of the United States.

### 7.    CONCLUSION.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request that Anadarko's Motions be denied in all respects. Alternatively, Plaintiffs respectfully request that if any of their allegations are found by this Court to be deficient, that they be given permission to amend to cure same.

Dated: March 30, 2011

Respectfully submitted,

**SERNA & ASSOCIATES PLLC**

/s/ Enrique G. Serna
Enrique G. Serna
enrique@serna-associates.com
20985 IH 10 W
San Antonio, Texas
Telephone: 210.472.2222
Facsimile: 210.228.0839

## CERTIFICATE OF SERVICE

I hereby Certify that the above and foregoing pleading, CONSOLIDATED MEMORANDUM IN RESPONSE AND OPPOSITION BY PLAINTIFFS' STATE OF VERACRUZ, STATE OF TAMAULIPAS, AND STATE OF QUINTANA ROO TO MOTION OF DEFENDANTS ANADARKO PETROLEUM CORPORATION AND ANADARKO E &P COMPANY LP TO DISMISS THE FIRST AMENDED COMPLAINT OF THE STATE OF TAMAULIPAS, REPUBLIC OF MEXICO PURSUANT TO FED. R. CIV. P. 12(B)(6); MOTION OF DEFENDANTS ANADARKO PETROLEUM CORPORATION AND ANADARKO E &P COMPANY LP TO DISMISS THE FIRST AMENDED COMPLAINT OF THE STATE OF QUINTANA ROO, REPUBLIC OF MEXICO PURSUANT TO FED. R. CIV. P. 12(B)(6); AND MOTION OF DEFENDANTS ANADARKO PETROLEUM CORPORATION AND ANADARKO E &P COMPANY LP TO DISMISS THE FIRST AMENDED COMPLAINT OF THE STATE OF VERACRUZ, REPUBLIC OF MEXICO PURSUANT TO FED. R. CIV. P. 12(B) (6), has been served on All Counsel by electronically uploading the same to LexisNexis File & Serve in accordance with Pretrial Order No.12, and that the foregoing was electronically filed by using the CM/ECF System which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, this the 30th day of March, 2011.

/s/ Enrique G. Serna
Enrique G. Serna