UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | MDL NO. 2179 |
| | SECTION: J |
| This Document Relates Only To: *Rhodes v. Transocean, Ltd., et al* 2:10-CV-01502 | JUDGE BARBIER MAG. JUDGE SHUSHAN |

**Karl W. Rhodes' Opposition to M-I L.L.C.'s**
**Motion to Dismiss His Second Supplemental**
**And Amended Complaint**

Petitioner, Karl W. Rhodes, files his opposition to M-I L.L.C.'s ("M-I") motion asking that

the Court dismiss it from this litigation because it claims that petitioner's Second Supplemental and

Amended Complaint failed to state a claim upon which relief can be granted (Rec. Doc. 1593).[1]

**1.      Introduction.**

On April 20, 2010, petitioner was a seaman working aboard the vessel the *M/V Deepwater*

*Horizon* when the blowout, fire, explosions, and sinking occurred.  He named M-I as a defendant

---

[1]   To the extent applicable and to avoid repetition, petitioner adopts and quotes from the Omnibus Response Memoranda to the defendants' motions to dismiss the Bundle A and B3 complaints (Rec. Docs. 1613, 1813,  and 1815), the First Amended Master Answer to Complaint, First Amended Master Claim, First Amended Master Complaint, etc. (Rec. Doc. 1128) ("Am. B1 Master Compl."), and the Memorandum of Michelle Jones in opposition to a dismissal motion (Rec. Doc. 1573).

in his Second Amended Complaint (Rec. Doc. 761).  Since M-I filed its dismissal motion, petitioner

has amended his Complaint with the Court's permission as follows, *viz*:

- On March 14, 2011, he filed his Third Amended Complaint (Rec. Docs. 1647 and 1648);

- On March 22, 2011, he filed his Fourth Amended Complaint (Rec. Docs. 1708 and 1709);

- On March 31, 2011, he filed his Fifth Amending Complaint (Rec. Docs. 1833 and 1834).

Unless otherwise stated, petitioner will reference these Amending Complaints as "Complaints" in

the singular for brevity.  The Complaints fully and specifically details the legal and factual bases for

petitioner's claim against M-I, which petitioner submits moots M-I's alleged grounds for dismissal.

In sum, petitioner respectfully submits that his Complaints states plausible relevant facts

from which the Court can conclude that he has a right of action against M-I for, at a minimum,

contributing to this incident.

## 2.      Rule 12(b)(6) Legal Standard or Standard of Review.

When ruling upon a Rule 12(b)(6) motion to dismiss for failure to state a claim, like the one

filed by M-I, the Court must accept as true all well-pled allegations and resolve all doubts in favor

of the plaintiff.[2]  "In other words, a motion to dismiss an action for failure to state a claim 'admits

the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts.'"[3]

---

[2]     *See Oppenheimer v. Prudential Sec., Inc.*, 94 F.3d 189, 194 (5th Cir. 1996); *Tanglewood East Homeowners v. Charles-Thomas, Inc.*, 849 F.2d 1568, 1572 (5th Cir. 1988).

[3]     *Berthelot v. Boh Bros. Constr. Co.*, No. 05-4182, 2006 U.S. Dist. LEXIS 57817, at *77 (E.D. La. July 19, 2006) (quoting *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1137 (5th Cir. 1992)).

To defeat a dismissal motion, a plaintiff need only "plead enough facts 'to state a claim to relief that is plausible on its face.'"[4] This Court has observed that "[a] claim is facially plausible when the plaintiff pleads facts that allow the court to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'"[5]

On March 22, 2011, a unanimous Supreme Court reversed a dismissal order of a 10(b)-5 claim in a decision further clarifying standards set forth in *Iqbal* and *Twombly*.[6] The Court reiterated that all factual allegations in a complaint must be taken as true, that there are no "bright line" pleading requirements under *Twombly/Iqbal*, and that the functional test is whether the complaint, taken as a whole, raises "a reasonable expectation that discovery will reveal evidence" that could enable the ultimate trier of fact, weighing contested evidence and opinions and making the allowable inferences, to decide the case for plaintiffs.[7] Reviewing "all the allegations holistically," as *Matrixx* directs,[8] petitioner Rhodes has stated facially plausible claims that "raise a reasonable expectation that discovery will reveal evidence" to support his claims at trial.[9]

---

[4]   *Wright v. Shell Offshore, Inc.*, No. 10-2108, 2011 U.S. Dist. LEXIS 16290, at *5-6 (E.D. La. Feb. 17, 2011) (quoting *Ashcroft v. Iqbal*, __U.S.__, 129 S.Ct. 1937, 1949 (2009) ).

[5]   Wright, 2011 U.S. Dist. LEXIS 16290 at *6 (quoting *Iqbal*, 129 S.Ct. at 1949).

[6]    *See Matrixx Initiatives, Inc. v. Siracusano*, No. 09-1156, __U.S.__, 2011 U.S. LEXIS 2416 (2011).

[7]   *Matrixx*, 2011 U.S. LEXIS 2416, at *38 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

[8]   *Matrix*, *Id.* at *38.

[9]   *Id.* at *34 (quoting *Twombly*, 550 U.S. at 556).

3.      **Petitioner' Complaints pleads sufficient facts to state a claim for relief against M-I.**

A.      **Introduction.**

M-I correctly states that Petitioner' Second Amended Complaint fails to allege a "single relevant fact" that M-I is liable for his injuries (Rec. Doc. 1593-1, p. 2).  But Petitioner submits that his Complaints satisfies the *Twombly/Iqbal* plausible standard, which transformed the Complaints into a "plausible" cause of action against M-I.[10]

B.      **The Complaints meets the *Twombly/Iqbal* standards by which the district court determines if a complaint states a cause of action.**

The following principles now determine whether a claimant satisfies Fed. R. Civ. P. 8 as now interpreted by the Supreme Court in these two decisions, *viz*:

- •      The Rule 8 pleading standard does not require detailed factual allegations.[11]

- •      "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[12]  In other words, "a claimant need only state a plausible complaint that states a plausible claim for relief survives a motion to dismiss."[13]

- •      "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[14]

---

[10]    *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937 (2009).

[11]    *Iqbal*, 129 S.Ct. at 1949; *Twombly,* 550 U.S. at 547.

[12]    *Iqbal* at 1949.

[13]    *Id.* at 1950.

[14]    *Id.*

Recently the Fifth Circuit reiterated that, "[A] complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'"[15]

Relying on the *Twombly/Iqbal* standard, the Fifth Circuit ruled that, when faced with a Rule 12(b)(6) motion to dismiss—that is, a motion to dismiss for failure to plead a claim on which relief can be granted—that "courts must . . . accept all factual allegations in the complaint as true."[16] As *Lormand* reminds, "[w]e must also draw all reasonable inferences in the plaintiff's favor."[17]

The Court will readily see that petitioner's Complaints satisfies these guidelines as he alleges specific factual wrongdoings by M-I's mud engineers that he says contributed to this incident.

## C. The Supreme Court's rationale for determining if a complaint states a cause of action is couched in terms of judicial and litigants' economy.

The fundamental point of the *Twombly/Iqbal* standard is to conserve judicial and party resources for the pleading, discovery and ultimate proof of contested issues in facially plausible cases, leaving implausible or frivolous suits behind.

According to the Supreme Court, the *Twombly* complaint alleged that major telecommunications providers had engaged in anti-competitive parallel conduct; the complaint, however, lacked any "factual context suggesting agreement, as distinct from identical, independent action."[18] In an

---

[15] *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. 544, 555).

[16] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (internal citations omitted).

[17] *Id.* at 232 (internal citations omitted).

[18] *Twombly*, 550 U.S. at 548, 549.

antitrust action, "the crucial question" is whether the challenged conduct stemmed "from independent decisions or from an agreement, tacit or express."[19] This is so because "conscious parallelism" "is not in itself unlawful."[20] The *Twombly* Court viewed potential liability as a close call. Still it found no allegations in the complaint suggesting that direct or circumstantial evidence would ever make the prospect of liability plausible.

As the *Twombly* Court noted, "asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for a reasonable expectation that discovery will reveal evidence of illegal agreement."[21] Thus, "some threshold of plausibility must be crossed at the outset before a[n] antitrust case should be permitted to go into its inevitably costly and protracted discovery phase."[22]

In *Twombly*, the Court empowered district courts to "retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed " because "the costs of modern federal antitrust litigation and the increasing caseload of the federal courts counsel against sending the parties into discovery when there is no reasonable likelihood that the plaintiffs can construct a claim from the events related in the complaint."[23] The Supreme Court thus articulated and imposed a facial probability standard because "it is only by taking care to require [such] allegations . . . that we can hope to avoid the potentially enormous expensive

---

[19]   *Id.* at 553.

[20]   *Id.* at 554.

[21]   *Id.* at 556.

[22]   *Id.* at 558 (internal quotation omitted).

[23]   550 U.S. at 558.

discovery in cases with no 'reasonably founded hope that the [discovery] process will reveal relevant evidence.'"[24]   The *Twombly* Court concluded its decision, saying that:

> [W]e do not require heightened fact pleadings of specifics, but only enough facts to state a claim to relief that is plausible on its fact."[25]

When evaluated by this standard, the *Twombly* Court simply found that, in this anti-trust action, "nothing in the complaint invests either the action or inaction alleged with a plausible suggestion of conspiracy."[26]   In sum, the claimants failed to state plausible facts that supported its conspiracy contention.   In contrast, petitioner's Complaints states plausible facts from which the Court can conclude that he has a right of action against M-I.   His Complaints has "nudged" his claims against M-I across the line from conceivable to plausible.[27]

D.       **The "plausibility" of the *Deepwater Horizon* claims is in the public domain.**

The catastrophic explosions and fire that occurred on the *Deepwater Horizon* resulted in injuries and death among those aboard.   M-I's role, in its broad outlines, and in ever-emerging detail, is likewise known.   It must be said that the substantial on-going court-approved discovery into the events leading up to the explosion and fire in general, and into M-I's role therein, is justified in terms of time or expense.   The *Twombly/Iqbal* problem does not exist in this case.   Accordingly, the level of specificity and detail required in *Twombly*'s antitrust context and that the invidious discrimination context of *Iqbal* should not be required here.

---

[24]   550 U.S. at 560 (internal citation omitted).

[25]   *Id.* at 570.

[26]   *Id.* at 566.

[27]   *Iqbal*, 129 S.Ct. at 1951-52.

**4.      The general maritime law applies to the Complaints against M-I.**

**A.      The Complaints states a plausible claim against M-I under the general maritime law.**

M-I correctly notes that petitioner's Second Amended Complaint fails to state a single fact concerning its involvement with the ongoing operations aboard the *Deepwater Horizon* (Rec. Doc. Doc. 1593-1, pp. 3-4).   But his Complaints states plausible facts to support his claim against M-I.

 "To establish maritime negligence, a plaintiff must demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by [the] plaintiff, and a causal connection between the defendant's conduct and the plaintiff's injury."[28]  (Rec. Doc. 1593-1, p. 4).  Counsel need not cite for this Honorable Court the jurisprudence applicable to duty, breach of duty, causation, and damages.  Petitioner's Complaints survives this dismissal motion if the fact-finder determines that M-I has a duty to perform its mud operations in a reasonably prudent manner, that its negligence played a part in causing this incident, that it breached its duty to Petitioner, and that he was thereby injured.

**B.      The *res ipsa loquitur* doctrine applies here.**

M-I notes that this is an evidentiary doctrine that applies where the injured party was not a fault, the instrumentality of the injury was under the defendant's exclusive control, and the accident is of a type that ordinarily does not occur in the absence of negligence (Rec. Doc. 1593-1, pp. 4-5).[29] Petitioner was off tower and asleep in his bunk when the explosions and fire happened.  As such,

---

[28]   *Canal Barge Co. v. Torco Oil Co.*, 220 F.3d 370, 376 (5th Cir. 2000) (alteration in original) (internal quotation omitted).

[29]   *United States v. Nassau Marine Corp.*, 778 F.2d 111, 1115 (5th Cir. 1985).

he did nothing that caused these events to occur.  He does not know what  M-I's mud engineers where doing or the composition of its mud mixture that it was sending or was having sent into the wellbore to control well pressure and permit drilling to continue.  M-I's engineers know the answers to the questions.

But M-I's argument fails to recognize other applicable legal doctrines.  In order to establish an inference of negligence under *res ipsa loquitur*, the plaintiff need not demonstrate that the defendant exercised exclusive control over the entire chain of events that ultimately resulted in the accident.  Rather, the plaintiff need only establish that the defendant controlled the particular instrument that is a possible source of the accident, even where that instrument is but a component of a larger device.[30]  Moreover, to successfully invoke *res ipsa loquitur*, the plaintiff must only establish that the defendant was in exclusive control of the instrumentality at the time the negligence occurred.[31]  It is immaterial that the defendant did not exercise any control at the time of the accident that caused the injury.[32]

In *Bradshaw*, the plaintiff was injured while riding in a truck. The plaintiff alleged that his injury was caused by the defective design of the seat he was riding in when the accident occurred. The plaintiff sued both the truck and the seat manufacturers. The evidence produced at trial suggested that the seat's improper design was a "possible" cause of the accident.  The seat manufacturer asserted that a jury instruction regarding *res ipsa loquitur* was improper because the

---

[30]   *Bradshaw v. Freightliner Corp*., 937 F.3d 197, 201 (5th Cir. 1991).

[31]   *Id.*

[32]   *Id.*

defendant did not have control of the seat at the time the accident occurred and because there were intervening causes of the accident.  In rejecting this argument, the Court held that the evidence regarding the seat's possible design defect was sufficient to submit the issue of *res ipsa loquitur* to the jury.

Plaintiff's allegations against M-I are no different than the evidence submitted in *Bradshaw*. M-I is therefore incorrect to assert that its alleged lack of control of the *Deepwater Horizon* is dispositive, as that is precisely the argument that the Fifth Circuit rejected in *Bradshaw*.  Petitioner' allegations therefore regarding *res ipsa loquitur* should be preserved.

**C.      Petitioner does not assert a claim against M-I for unseaworthiness.**

Next, M-I contends that since it did not own or operate the vessel the *Deepwater Horizon*, that Petitioner has no claim against it for unseaworthiness (Rec. Doc. 1593-1, pp. 5-6).  Petitioner does not contend otherwise.

**D.      Petitioner has a products liability claim against M-I as the mud and other fluids that it provided were a product.**

M-I agrees that products liability is part of the general maritime law (Rec. Doc. 1593, p. 6). Petitioner' Complaints identifies the drilling fluids and other additives—more commonly known as "mud"—that M-I furnished for this job.  Unquestionably M-I's drilling mud and other related fluids were an integral, absolutely necessary part of the drilling and exploration process.

M-I does not contend that its drilling fluids are not a product that therefore are governed by the general maritime law, which has adopted Section 402A of the Restatement (Second) of Torts. They are products like any other and, as such, are subject to these rules.  For example in *Boyett v.*

*Keene Corp.*,[33] the plaintiff was a seaman suing under the general maritime law claiming injury from defective products manufactured by the defendants, including cement, that contained asbestos.  No issue or argument was raised even suggesting that the cement was not a product.  The drilling fluids and its related products are indistinguishable from cement: both are integral to the drilling process.

To conclude, petitioner submits that his Complaints adequately set forth a products liability claim against M-I and satisfies the *Twombly/Iqbal* requirements discussed above.

**E.     Petitioner' claims against M-I for punitive and non-pecuniary damages are recognized and viable under the general maritime law.**

M-I argues that Petitioner' recovery, if any against it, would be limited to pecuniary damages because he is a Jones Act seaman (Rec. Doc. 1593-1, p. 7).[34]   He was a seaman aboard the *Deepwater Horizon* working for Transocean when the explosions, fire, and sinking of the vessel happened and, as a result of these events, he suffered great fear, bodily injury, pain and suffering, and mental anguish and distress (Rec. Doc. 1, Docket No. 10-cv-5102).

While M-I cites *Miles v. Apex Marine Corp.*[35] to support its argument, it should be noted that *Miles* did not involve any punitive damage issue.  Rather, it concerned the recoverability of loss of society damages under the general maritime wrongful death action.  While *Miles* did not involve a punitive damage issue, lower courts use its rational to disallow punitive damages in Jones Act

---

[33]   *Boyett v. Keene Corp.*, 815 F.Supp. 204 (E.D. Tex. 1993).

[34]   Pecuniary damages are "those which can be measured with reasonable accuracy in terms of money." Howard L. Oleck, DAMAGES TO PERSONS AND PROPERTY § 48, p. 32 (1961).

[35]   *Miles v. Apex Marine Corp.*, 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275, 1991 AMC 1 (1990).

cases.[36]  While citing *Scarborough v. Clemco Industries* to support its position,[37] that court chose not to draw a distinction between a seaman's case against his employer and that brought against others.

"Regardless of one's view of *Miles*' reasoning in eliminating loss of society damages for seamen, there is no principled justification for the use of *Miles* to eliminate punitive damages. 'Miles then becomes relevant to punitive damages issues only by virtue of unexamined lower court assumptions that punitive damages are non-pecuniary and that all non-pecuniary damages issues in seamen's Jones Act and unseaworthiness cases demand like treatment.'"[38]

But punitive damages have long been a part of American maritime law.[39]  In 1818, the Supreme Court recognized the recoverability of punitive damages in admiralty.[40] More recently, the Supreme Court in *Exxon Shipping Co. v. Baker*[41] affirmed maritime law's long-standing recognition of punitive damages as an item that may be recovered when defendant's conduct justifies such an award.  In *Atlantic Sounding Co. v. Townsend*,[42] the Court affirmed the right of a seaman to recover

---

[36]  *See*  M-I's memorandum (Rec. Doc. 1593, p. 7).

[37]  *Scarborough v. Clemco Industries*, 391 F.3d 660 (5th Cir. 2004).

[38]  This language comes from an unpublished article by John W. deGravelles entitled *Exxon Shipping Co. V. Baker: Maritime Punitive Damages and the Search for a Silver Lining,* p. 17, citing David W. Robertson, "Punitive Damages in American Maritime Law," 28 J. MAR.LAW & COM. 73, 163 (1997).

[39]  For an outstanding and detailed treatment of this subject, see David W. Robertson, "Punitive Damages in American Maritime Law," 28 J. MAR.LAW & COM. 73 (1997).

[40]  *The Amiable Nancy*, 16 U.S. 546 (1818).

[41]  *Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008).

[42]  *Atlantic Sounding Co. v. Townsend*, 129 S.Ct. 2561 (2009).

punitive damages from employer/shipowners when the seaman's settled maritime-law rights were flouted or abused through serious misconduct.

The assumption or argument that punitive damages are not pecuniary is wrong. The common definitions of "pecuniary" are "1. relating to money, as in pecuniary affairs; and 2. *Involving a money penalty, or fine, as pecuniary offense.*"[43]   Black's Law Dictionary defines "pecuniary damages" as "damages that can be estimated and monetarily compensated"[44] and "non-pecuniary damages" as "damages that cannot be measured in money."[45]

Whichever of these definitions one chooses, punitive damages are pecuniary. They are awarded as money, can be estimated and, as recently stated by the Supreme Court in *Exxon Shipping Co. v. Baker*, punitive damages are awarded as "measured retribution."[46]   Approximately one year before writing the opinion in *Miles*, Justice O'Connor repeatedly referred to punitive damages as "pecuniary punishment."[47]   The case most often cited for the proposition that punitive damages are "non-pecuniary" cites no authority and conducts no analysis to support this declaration.[48]

---

[43]   Webster's New Universal Unabridged Dictionary (2d ed. 1983) (emphasis added).

[44]   Black's Law Dictionary 418 (8th ed. 2004).

[45]   *Id.*

[46]   *Baker*, 128 S.Ct. at 2633 (emphasis added)

[47]   *Browning Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 295-297 (1989) (O'Connor, J., concurring in part and dissenting in part). See also, Austin v. United States, 509 U.S. 602, 614 n. 7 (1993), in which the Court's opinion, joined by Justice O'Connor, characterized a civil forfeiture as "pecuniary punishment."

[48]   *Kopczynski v. The Jaqueline*, 742 F.2d 555, 561 (9th Cir. 1984).

The *Exxon Shipping*[49] presented three questions: (1) whether maritime punitive damages are barred by federal statutory law; (2) whether maritime law permits corporate liability for punitive damages based on the conduct of its managerial employees; and (3) whether the $2.5 billion award against Exxon was excessive under maritime law.[50]

The Court (1) confirmed that maritime law allows punitive damages, (2) held that the jury's award was not barred by federal statutory law, specifically, the Clean Water Act,[51] and (3) held that the $2.5 billion punitive damage award was excessive and, under the rule-making authority given it by Art III, § 2 of the United States Constitution, imposed a maximum punitive damage cap of no more than the amount awarded for compensatory damages.

Because the Court was equally divided on the issue of the punitive damage liability of corporations for the acts of their managerial agents, it left the Ninth Circuit's opinion—holding Exxon accountable for the reckless acts of the EXXON VALDEZ's captain—undisturbed.  It stressed, however, that this holding was, under these circumstances, not precedential.

The Supreme Court in *Townsend* went out of its way to flag the availability of punitive damages in Jones Act actions as an open question, stating:

> Because we hold that *Miles [v. Apex Marine Corp.*, 498 U.S. 19] does not render the Jones Act's damages provision determinative of respondent's remedies, we do not address the dissent's argument that the Jones Act, by incorporating the provisions of the Federal Employer's Liability Act, see *46 U.S.C. § 20104(a)*, prohibits the recovery of punitive damages in actions under the statute.[52]

---

[49]   *Id*. n. 1 *supra*.

[50]   *See* n. 33 (the next three paragraphs are taken from Mr. deGravelles unpublished article).

[51]   33 U.S.C. § 1321, hereinafter "CWA."

[52]   *Townsend*, 129 S.Ct. at 2575, n.12 (citation omitted).

Seaman had the right to sue for punitive damages before the passage of the Jones Act.[53]  The language of the Jones Act does not purport to affect this long standing right.  The Supreme Court has repeatedly held that the Jones Act does not eliminate or restrict causes of action and remedies that were available to seaman before its passage.[54]

Further support for the right of a seaman to recover punitive damages can be found in the long standing tradition in admiralty to treat seamen as a "favored class" of litigants[55] enjoying "heightened legal protections [that are] unavailable to other maritime workers."[56]  The Supreme Court in *Exxon Shipping Co. v. Baker* allowed "commercial fishermen, native Alaskans and landowners,"[57] whose livelihoods were impacted by the oil pollution flowing from the grounding of the Exxon Valdez, to recover punitive damages under maritime law.  In doing so, the Court looked to the Ninth Circuit's decision in *Union Oil v. Oppen*,[58] where that Court created for commercial fishermen an exception to the general rule requiring that a plaintiff have a proprietary interest in the polluted property in order to recover for damages flowing from the pollution.  The

---

[53]   *See, e.g., Swift v. Happy Return*, 23 F.Cas 560 (D. Pa. 1799); *Gould v. Christianson*, 10 F.Cas. 857 (S.D.N.Y. 1836); *The Rolph*, 293 F. 269, 270 (N.D. Cal. 1925); *The Margharita*, 140 F. 820, 821, 825 (5th Cir. 1905); *The Scotland*, 42 F. 925 (S.D.N.Y. 1890).  For discussion of this issue, *see also* David W. Robertson, *Punitive Damages in U.S. Maritime Law: Miles, Baker and Townsend*, 70 LA. L. Rev. 463, 478-83 (2010).

[54]   *See, e.g., Garrett v. Moore-McCormack Co.*, 317 U.S. 239, 248 (1942); *Arizona v. Anelich*, 298 U.S. 110,1231 (1936); *Bainbridge v. Merchs and Miners' Trans. Co.*, 287 U.S. 278, 282 (1932).

[55]   *Bainbridge,* 287 U.S. at 282.

[56]   *Chandris, Inc. v. Latsis*, 515 U.S. 347, 354 (1995).

[57]   *Baker*, 128 S.Ct. at 2613.

[58]   *Union Oil v. Oppen*, 510 F.2d 558 (9th Cir. 1974).

Page 15 of 17

Court justified this special treatment given to commercial fishermen by likening them to seamen, traditional wards of the admiralty.[59]

Surely it would turn the law on its head to allow "commercial fishermen, native Alaskans and landowners" to recover punitive damages under the maritime law but deny these damages to the "favored class" of seamen. There is nothing in the language or history of the Jones Act which justifies granting this remedy to such plaintiffs but withholding it from seamen.

Withholding the punitive damages remedy from seamen is further contrary to established tenets of maritime law when one considers that ". . . it is settled cannon of maritime jurisprudence that 'it better becomes the humane and liberal character of proceedings in admiralty to give than to withhold the remedy, when not required to withhold it by established and inflexible rule.'"[60]

**5.     Alternatively, petitioner asks that the Court allow him to amend his Complaint if it finds that his factual allegations fail to meet the *Twombly/Iqbal* standard.**

If the Court determines that petitioner's Complaint, as amended, fails to meet the *Twombly/Iqbal* standard, it allow him reasonable time to amend his complaint to state more facts that show, to a plausible degree, that M-I's negligence contributed to this *Deepwater Horizon* incident and contributed to his injuries and damages.[61]

---

[59]    *Id.* at 567.

[60]    *American Export Lines, Inc. v. Alvez*, 160 S.Ct. 1673, 1678 (quoting *Moragne v. States Marine Lines*, 90 S.Ct. 1772, 1781).

[61]    Under Fed. R. Civ. P. 15(a)(2), "the court should freely give leave [to amend] when justice so requires."  In *Dissouy v. Gulf Coast Investment Corp.*, 660 F.2d 594 (5th Cir. 1983), the court held that ". . . rule 15(a) severely restricts the judge's freedom" to deny leave to amend. *Id.* at 597. Rule 15(a) "evinces a bias in favor of granting leave to amend." *Id.* "Unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Id.* at 598.

**Conclusion**

For the reasons discussed above, Karl W. Rhodes respectfully submits that the Court should

deny M-I L.L.C.'s motion to dismiss his claims against it.

>*/s/ Richard R. Kennedy*
>RICHARD R. KENNEDY (#7788), T.A.
>RICHARD R. KENNEDY (#26951)
>309 Polk Street
>P.O. Box 3243
>Lafayette, LA  70502-3243
>Phone:    (337) 232-1934
>Fax:       (337) 232-9720
>E-Mail:   ken309@richardkennedy.com
>E-Mail:   rrk3@richardkennedy.com
>*Attorneys for Karl W. Rhodes*

---

**Certificate of Service**

I hereby certify that the above and foregoing Pleading has been served on all Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179 on this 3th day of April, 2011.

>*/s/ Richard R. Kennedy*

---