**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | : : : | MDL No. 2179 |
| | : | SECTION: J |
| This Document Relates To: 2:10-cv-04536-CJB-SS (United States v. BP Exploration & Production Inc., et al.) | : : : : | JUDGE BARBIER MAGISTRATE JUDGE SHUSHAN |
| …………………………………………….. | : | |

### BP EXPLORATION & PRODUCTION INC.'S ANSWER TO THE UNITED STATES OF AMERICA'S COMPLAINT

Defendant BP Exploration & Production Inc. ("BPXP"), by its undersigned Counsel, and, pursuant to Rule 8 of the Federal Rules of Civil Procedure, hereby answers the Complaint filed by Plaintiff the United States of America, as follows:

### NATURE OF THE ACTION

1.      This civil action arises from one of the worst environmental disasters in American history:  the oil spill into the Gulf of Mexico that began on April 20, 2010, when explosions and fires destroyed the Mobile Offshore Drilling Rig ("MODU") *Deepwater Horizon* approximately 50 miles from the Mississippi River delta (the "Deepwater Horizon Spill").  Eleven people aboard the rig lost their lives; many other men and women were injured.  Oil flowed into the Gulf of Mexico unchecked for months.  Ultimately, the "Macondo Well" was finally sealed on September 19, 2010, nearly five months after the blowout began.  By that time, millions of barrels of oil had been discharged into the Gulf and upon adjoining shorelines, causing immense environmental and economic harm to the entire region.

**ANSWER:**

BPXP admits that this action arises from the loss of control of the Macondo well on April 20, 2010, which resulted in one or more explosions or fires on the Mobile Offshore Drilling Unit ("MODU") *Deepwater Horizon* then located approximately 50 miles from the Mississippi River Delta ("the Incident").  BPXP further admits that as a result of the Incident, eleven crew members lost their lives, additional crew members were injured, and that oil flowed into the Gulf

of Mexico from the Macondo well for 87 days.  BPXP lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore denies them.

2.      While the full scope and impact of this disaster are not yet known, the consequences include lost lives, destroyed livelihoods, and grave harm to natural resources across several States and related waters.  The spill necessitated a government response unprecedented in size, duration, and expense.

**ANSWER:**

BPXP admits that the response to the Incident, which was undertaken by BPXP, various government authorities and others, was unprecedented in size and commitment of resources.  BPXP further admits that as a result of the Incident, eleven crew members lost their lives.  BPXP further admits that the full scope and impact of the Incident are not yet known.  BPXP lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore denies them.

3.      As a result, the United States has sustained, and will continue to sustain, significant costs and damages.  The United States thus seeks in this action a declaration that the Defendants are responsible and strictly liable for unlimited removal costs and damages under the Oil Pollution Act of 1990.

**ANSWER:**

BPXP admits that Plaintiff "seeks in this action a declaration that the Defendants are responsible and strictly liable for unlimited removal costs and damages under the Oil Pollution Act of 1990."  BPXP further admits that as a result of the Incident, the United States has expended significant amounts for removal costs, much of which have already been reimbursed by BPXP.  To the extent that the United States alleges that it "has sustained, and will continue to sustain," additional costs and damages, BPXP lacks knowledge or information sufficient to form a belief about the truth of these allegations, and therefore denies them.

4.      Federal law also imposes civil penalties, under the Clean Water Act, against those who unlawfully discharge oil into and upon the navigable waters of the United States and adjoining shorelines, into or upon the waters of the contiguous zone, or in connection with activities under the Outer Continental Shelf Lands Act.  Polluters are strictly liable under this Act, with penalties based in part on the number of barrels of oil discharged.  The United States thus also seeks in this action the imposition of Clean Water Act civil penalties for each barrel of oil that the Defendants discharged into the Gulf of Mexico.

**ANSWER:**

BPXP admits that Plaintiff refers to the Clean Water Act, the full text of which speaks for itself, and that Plaintiff seeks Clean Water Act penalties for each barrel of oil that the Defendants discharged into the Gulf of Mexico.  BPXP denies that penalties must always be based in part on the number of barrels of oil discharged, as the Clean Water Act also contemplates courts assessing penalties based on the number of days of the discharge.  BPXP denies the remaining allegations of this paragraph.

5.      Investigation of other potential claims, ongoing administrative proceedings, assessment of damage amounts, and additional removal actions continue.  Therefore, the United States reserves its rights in full to amend this Complaint by, among other things, adding new claims and new defendants.

**ANSWER:**

BPXP admits that it is aware of certain ongoing clean-up efforts, government investigations, damage assessment efforts, and government agency proceedings arising from the Deepwater Horizon Spill.  As to second sentence, BPXP denies that the United States may reserve the right to add new claims.

6.      This civil action is a case of admiralty and maritime jurisdiction and is brought under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.,* the Clean Water Act, ("CWA"), 33 U.S.C. §§ 1251 *et seq.,* and Section 1017(f)(2) of the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. § 2717(f)(2).

**ANSWER:**

BPXP admits that Plaintiff brings this action pursuant to the indicated statutes, but denies that Plaintiff has stated a valid claim or is entitled to any relief thereunder.  BPXP denies the remaining allegations of this paragraph.

7.      The Defendants named in this action are BP Exploration & Production Inc. ("BP"), Anadarko Exploration & Production LP ("Anadarko Exploration"), Anadarko Petroleum Corporation ("Anadarko Petroleum") (Anadarko Exploration and Anadarko Petroleum, unless stated otherwise, collectively shall be referred to as the "Anadarko Defendants"), MOEX Offshore 2007 LLC ("MOEX"), Triton Asset Leasing GmbH ("Triton"), Transocean Holdings LLC ("Transocean Holdings"), Transocean Offshore Deepwater Drilling Inc. ("Transocean Offshore"), Transocean Deepwater Inc. ("Transocean Deepwater") (Triton, Transocean Holdings, Transocean Offshore, and Transocean Deepwater, unless stated otherwise, collectively shall be referred to as the "Transocean Defendants"), and QBE Underwriting Ltd., Lloyd's Syndicate 1036 ("Lloyd's"), *in personam.*

**ANSWER:**

BPXP admits that Plaintiff has named these entities as defendants.

## JURISDICTION AND VENUE

8.      The United States is authorized to bring this suit and the Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 (Federal question), 1333 (Admiralty), 1345 (United States as plaintiff), 1355 (fine, penalty, or forfeiture); 33 U.S.C. §§ 1321(b)(7)(E) and 1321(n) (CWA); and 33 U.S.C. § 2717(b) (OPA).

**ANSWER:**

BPXP admits that this Court has jurisdiction over this action, but denies that Plaintiff has stated a valid claim or is entitled to any relief thereunder.  BPXP denies the remaining allegations of this paragraph.

9.      Venue is proper in the Eastern District of Louisiana ("this District") pursuant to 28 U.S.C. §§ 98(a) (Louisiana), 1391(b) (venue generally), and 1395(a) (fine, penalty, or forfeiture); 33 U.S.C. § 1321(b)(7)(E) (CWA); and 33 U.S.C. § 2717(b) (OPA).

**ANSWER:**

BPXP admits that venue is proper in this district.  BPXP denies the remaining allegations of this paragraph.

## THE DEEPWATER HORIZON

10.     At all times material herein, the *Deepwater Horizon* was flagged under the laws of the Republic of the Marshall Islands. Hereafter the *Deepwater Horizon* and its engines, gear, tackle, apparel and appurtenances shall be referred to as the *"Deepwater Horizon."*

**ANSWER:**

BPXP admits the allegations of this paragraph.

11.     At all material times prior to the Deepwater Horizon Spill, the MODU *Deepwater Horizon* was a vessel and/or an offshore facility, capable of being used to drill offshore wells.

**ANSWER:**

BPXP admits the allegations of this paragraph.

12.     At all times material herein, the *Deepwater Horizon* had as part of its operating equipment and appurtenances a Blowout Preventer ("BOP") and a Lower Marine Riser Package ("LMRP") (together the "BOP stack"), a marine riser and associated piping, and other equipment, all of which constitute, *inter alia,* "appurtenances" under Admiralty law.

**ANSWER:**

BPXP admits that the *Deepwater Horizon* had a Blowout Preventer ("BOP"), a Lower Marine Riser Package ("LMRP"), a marine riser and associated piping, and other equipment, and that all of these constituted appurtenances under Admiralty law.  BPXP denies the remaining allegations of this paragraph.

13.     Since approximately April 22, 2010, the wrecked hulk of *Deepwater Horizon* has rested on the seafloor of the Gulf of Mexico and Outer Continental Shelf of the United States offshore Louisiana, and in the Exclusive Economic Zone of the United States.

**ANSWER:**

BPXP admits that the *Deepwater Horizon* sank on April 22, 2010, and as of the date of this Answer remains on the seafloor of the Gulf of Mexico and Outer Continental Shelf of the United States offshore Louisiana, and in the Exclusive Economic Zone of the United States. BPXP denies the remaining allegations of this paragraph.

14.     Certain appurtenances of *Deepwater Horizon,* including the BOP stack and portions of the marine riser, have been recovered and are stored ashore within the jurisdictional boundaries of this Court.

**ANSWER:**

BPXP admits that a BOP and an LMRP and certain portions of the marine riser of the *Deepwater Horizon* have been recovered, are currently in the possession of the United States Government's Michoud, LA facility, and are within the jurisdictional boundaries of this Court. BPXP lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore denies them.

**THE DEFENDANTS**

15.     At all times material herein, Defendant BP is believed to have been incorporated in the State of Delaware and to have had a place of business and/or to have been doing business within this District and within the jurisdiction of this Court with respect to the matters sued upon herein.  Furthermore, actions of BP have had direct impacts within the State of Louisiana and within this District, including, but not limited to, direct impacts resulting from the fire, explosion, sinking, and oil spill associated with the *Deepwater Horizon.*

**ANSWER:**

BPXP admits that it is a Delaware corporation with its principal place of business in Houston, Texas.  BPXP further admits that it has been doing business within this District and within the jurisdiction of this Court with respect to the matters sued upon herein.  BPXP denies the remaining allegations of this paragraph.

16.     At all times material herein, Defendant Anadarko Exploration is believed to have been incorporated in the State of Delaware and to have had a place of business and/or to have been doing business within this District and within the jurisdiction of this Court with respect to the matters sued upon herein.  Furthermore, actions of Anadarko Exploration have had direct impacts within the State of Louisiana and within this District, including, but not limited to, direct impacts resulting from the fire, explosion, sinking, and oil spill associated with the *Deepwater Horizon.*

**ANSWER:**

BPXP lacks knowledge or information sufficient to form a belief about the truth of the

allegations of this paragraph, and therefore denies them.

17.    At all times material herein, Defendant Anadarko Petroleum is believed to have been incorporated in the State of Delaware and to have had a place of business and/or to have been doing business within this District and within the jurisdiction of this Court with respect to the matters sued upon herein.  Furthermore, actions of Anadarko Petroleum have had direct impacts within the State of Louisiana and within this District, including, but not limited to, direct impacts resulting from the fire, explosion, sinking, and oil spill associated with the *Deepwater Horizon.*

**ANSWER:**

BPXP lacks knowledge or information sufficient to form a belief about the truth of the

allegations of this paragraph, and therefore denies them.

18.    At all times material herein, Defendant MOEX is believed to have been incorporated in the State of Delaware and to have had a place of business and/or to have been doing business within this District and within the jurisdiction of this Court with respect to the matters sued upon herein.  Furthermore, actions of MOEX have had direct impacts within the State of Louisiana and within this District, including, but not limited to, direct impacts resulting from the fire, explosion, sinking, and oil spill associated with the *Deepwater Horizon.*

**ANSWER:**

BPXP lacks knowledge or information sufficient to form a belief about the truth of the

allegations of this paragraph, and therefore denies them.

19.    At all times material herein, Defendant Triton is believed to have been a foreign corporation and/or entity headquartered in Switzerland and to have had a place of business and/or to have been doing business within this District and within the jurisdiction of this Court with respect to the matters sued upon herein, including, but not limited to, through its ownership and/or operation and/or demise charter of the *Deepwater Horizon.*  Furthermore, actions of Triton have had direct impacts within the State of Louisiana and within this District, including, but not limited to, direct impacts resulting from the fire, explosion, sinking, and oil spill associated with the *Deepwater Horizon.*

**ANSWER:**

BPXP lacks knowledge or information sufficient to form a belief about the truth of the

allegations of this paragraph, and therefore denies them.

20.     At all times material herein, Defendant Transocean Holdings is believed to have been incorporated in the State of Delaware and to have had a place of business and/or to have been doing business within this District and within the jurisdiction of this Court with respect to the matters sued upon herein, including, but not limited to, through its ownership and/or operation and/or demise charter of the *Deepwater Horizon.*  Furthermore, actions of Transocean Holdings have had direct impacts within the State of Louisiana and within this District, including, but not limited to, direct impacts resulting from the fire, explosion, sinking, and oil spill associated with the *Deepwater Horizon.*

**ANSWER:**

BPXP lacks knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore denies them.

21.     At all times material herein, Defendant Transocean Offshore is believed to have been incorporated in the State of Delaware and to have had a place of business and/or to have been doing business within this District and within the jurisdiction of this Court with respect to the matters sued upon herein, including, but not limited to, through its ownership and/or operation and/or demise charter of the *Deepwater Horizon.*  Furthermore, actions of Transocean Offshore have had direct impacts within the State of Louisiana and within this District, including, but not limited to, direct impacts resulting from the fire, explosion, sinking, and oil spill associated with the *Deepwater Horizon.*

**ANSWER:**

BPXP lacks knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore denies them.

22.     At all times material herein, Defendant Transocean Deepwater is believed to have been incorporated in the State of Delaware and to have had a place of business and/or to have been doing business within this District and within the jurisdiction of this Court with respect to the matters sued upon herein, including, but not limited to, through its ownership and/or operation and/or demise charter of the *Deepwater Horizon.*  Furthermore, actions of Transocean Deepwater have had direct impacts within the State of Louisiana and within this District, including, but not limited to, direct impacts resulting from the fire, explosion, sinking, and oil spill associated with the *Deepwater Horizon.*

**ANSWER:**

BPXP lacks knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore denies them.

23.     At all times material herein, Defendant Lloyd's is believed to have been doing business within the United States of America and within this District and within the jurisdiction

of this Court, including, but not limited to, by insuring and/or providing a Certificate of Financial Responsibility ("COFR") and certain guarantees pertaining to liabilities incurred by or pertaining to the *Deepwater Horizon.*

**ANSWER:**

BPXP lacks knowledge or information sufficient to form a belief about the truth of the

allegations of this paragraph, and therefore denies them.

### GENERAL ALLEGATIONS

### *Agreements Between or Among the Lessees and the Transocean Defendants*

24.    On or about May 8, 2008, BP, as lessee, executed the document known as the "Oil and Gas Lease of Submerged Lands under the Outer Continental Shelf Lands Act," "Serial number OCS-G 32306" (hereinafter the "Lease"), pertaining to "All of Block 252, Mississippi Canyon, OCS Official Protraction Diagram, NH 16-10."

**ANSWER:**

BPXP admits the allegations of this paragraph.

25.    On or about May 14, 2008, the United States, by and through the Minerals Management Service (hereinafter "MMS"), as lessor, executed the Lease, which became effective on June 1, 2008.

**ANSWER:**

BPXP admits the allegations of this paragraph.

26.    On various dates, BP, the Anadarko Defendants, and MOEX entered into various agreements whereby BP, the Anadarko Defendants, and MOEX became co-lessees under the terms of the Lease and, further, whereby said Defendants assumed the obligations of the Lease.

**ANSWER:**

BPXP admits that, on various dates, BPXP entered into various agreements with MOEX,

Anadarko Petroleum, and Anadarko E&P Company LP, whereby BPXP, MOEX, Anadarko

Petroleum, and Anadarko E&P Company LP became co-lessees under the terms of the Lease

and, further, whereby MOEX, Anadarko Petroleum, and Anadarko E&P Company LP assumed

the obligations of the Lease.  BPXP states that the Lease and the various agreements speak for

themselves and BPXP refers to them for their full terms.  BPXP denies the remaining allegations

of this paragraph.

27.     Effective October 1, 2009, BP and MOEX entered into the "Macondo Prospect Offshore Deepwater Operating Agreement" (hereinafter a "Joint Operating Agreement" ("JOA")), pursuant to which BP assigned to MOEX an undivided 10% record title leasehold interest, also known as a "working interest," in the Lease.

**ANSWER:**

BPXP admits that, effective October 1, 2009, BPXP and MOEX entered into a Lease

Exchange Agreement, pursuant to which BPXP assigned to MOEX an undivided 10% Record

Title Interest in the Lease.  The Lease Exchange Agreement speaks for itself and BPXP refers to

it for its full terms. BPXP denies the remaining allegations of this paragraph.

28.     On February 23, 2010, the "Assignment of Record Title Interest in Federal OCS Oil and Gas Lease" pertaining to Lease No. OCS-G 32306, filed by BP and MOEX, was approved by the MMS, whereby BP assigned to MOEX a 10% record title/working interest in Lease No. OCS-G 32306.

**ANSWER:**

BPXP admits the allegations of this paragraph.

29.     On December 17, 2009, the Anadarko Defendants and BP entered into a Lease Exchange Agreement, Ratification, and Joinder of the JOA, all of which were identified as effective as of October 1, 2009.  Pursuant to the Lease Exchange Agreement, BP assigned to the Anadarko Defendants a 25% record title/working interest in Lease No. OCS-G 32306.

**ANSWER:**

BPXP admits that, on December 17, 2009, BPXP entered into a Lease Exchange

Agreement with Anadarko Petroleum and Anadarko E&P Company LP effective October 1,

2009.  The Lease Exchange Agreement speaks for itself and BPXP refers to it for its full terms.

BPXP further admits that, on December 17, 2009, BPXP entered into a Ratification and Joinder

of Operating Agreement with MOEX, Anadarko Petroleum, and Anadarko E&P Company LP

effective October 1, 2009.   BPXP further admits that, pursuant to the Lease Exchange

Agreement between it, Anadarko Petroleum, and Anadarko E&P Company LP, BPXP assigned

to Anadarko Petroleum a 2.50% Record Title Interest in Lease No. OCS-G 32306, and assigned

to Anadarko E&P Company LP a 22.50% Record Title Interest in Lease No. OCS-G 32306.

BPXP states that the various agreements speak for themselves and BPXP refers to them for their

full terms.  BPXP denies the remaining allegations of this paragraph.

30.     On February 23, 2010, the "Assignment of Record Title Interest in Federal OCS Oil and Gas Lease" pertaining to Lease No. OCS-G 32306, filed by BP and Anadarko Exploration, was approved by the MMS, whereby BP assigned to Anadarko Exploration a 22.5% record title/working interest in Lease No. OCS-G 32306.

**ANSWER:**

BPXP admits that, on February 23, 2010, an "Assignment of Record Title Interest in

Federal OCS Oil and Gas Lease" pertaining to Lease No. OCS-G 32306 was approved by the

MMS, whereby BPXP assigned to Anadarko E&P Company LP a 22.50% interest in Lease No.

OCS-G 32306.  BPXP denies the remaining allegations of this paragraph.

31.     On February 23, 2010, the "Assignment of Record Title Interest in Federal OCS Oil and Gas Lease" pertaining to Lease No. OCS-G 32306, filed by BP and Anadarko Petroleum, was approved by the MMS, whereby BP assigned to Anadarko Petroleum a 2.5% record title/working interest in Lease No. OCS-G 32306.

**ANSWER:**

BPXP admits the allegations of this paragraph.

32.     As a result of the foregoing agreements between BP, the Anadarko Defendants, and MOEX, each of said Defendants became co-lessees under the terms of the Lease, whereby BP held a 65% interest in the Lease, Anadarko Exploration held a 22.5% interest in the Lease, Anadarko Petroleum held a 2.5% interest in the Lease, and MOEX held a 10% interest in the Lease.

**ANSWER:**

BPXP refers to and incorporates by reference as though fully set forth herein its answers

to paragraphs 26 through 31.  BPXP denies the remaining allegations of this paragraph.

33.    As of April 20, 2010, and continuing until at least April 28, 2010, BP held a 65% interest in the Lease, Anadarko Exploration held a 22.5% interest in the Lease, Anadarko Petroleum held a 2.5% interest in the Lease, and MOEX held a 10% interest in the Lease.

**ANSWER:**

BPXP admits that as of April 20, 2010 and continuing until at least April 28, 2010, BPXP held a 65% interest in the Lease and MOEX held a 10% interest in the Lease.  BPXP denies the remaining allegations of this paragraph.

34.    As of April 28, 2010, a change to the foregoing percentages of interests in the Lease was made, such that BP currently holds a 65% interest in the Lease, Anadarko Petroleum holds a 25% interest in the Lease, and MOEX holds a 10% interest in the Lease.

**ANSWER:**

BPXP admits that as of April 28, 2010, BPXP held a 65% interest in the Lease, Anadarko Petroleum held a 25% interest in the Lease, and MOEX held a 10% interest in the Lease.  BPXP denies the remaining allegations of this paragraph.

35.    At all times material herein, the JOA required that BP obtain the approval of the Anadarko Defendants and MOEX to proceed with nondiscretionary operations in connection with the Lease by, *inter alia,* seeking their authorization for the expenditure of funds and/or by seeking their election or vote to participate in the next stage of operations.  The JOA also provided for the sharing, in amounts proportionate to the working interest of each party, of any oil and gas discovered in connection with the Lease and of losses resulting from the approved activities.

**ANSWER:**

BPXP admits that the JOA required BPXP to obtain approval from MOEX, Anadarko E&P Company LP, and/or Anadarko Petroleum in certain instances in connection with operations pursuant to the Lease as provided for in the JOA, but denies that the JOA required BPXP to obtain the approval of MOEX, Anadarko E&P Company LP, and/or Anadarko Petroleum for all "nondiscretionary operations" in connection with the Lease as BPXP understands that term.  BPXP further admits that the JOA provided for the sharing of the costs, risks, losses, and benefits of the Lease, including hydrocarbons.  BPXP states that the JOA

speaks for itself and BPXP refers to the JOA for its full terms.  BPXP denies the remaining allegations of this paragraph.

36.    The JOA required BP to provide the Anadarko Defendants and MOEX with detailed technical information regarding exploration and other operations performed in connection with the Lease, including applications for and modifications of permits to drill, mud logs, mud checks, and other information.  The Anadarko Defendants and MOEX had the right to obtain "real time" data as set forth in Section 5.7 of the JOA.  Pursuant to the JOA, the Anadarko Defendants and MOEX received detailed technical information regarding operations conducted in connection with the Lease and the JOA, including daily reports, access to a secure website containing sampling and other data, and access to real time data from the rig.

**ANSWER:**

BPXP admits that the terms of the JOA indicated that BPXP would provide MOEX as well as Anadarko E&P Company LP and/or Anadarko Petroleum with certain specified information regarding operations performed in connection with the Lease.  BPXP further admits that the JOA provided MOEX as well as Anadarko E&P Company LP and/or Anadarko Petroleum the right to obtain certain "real time" data under specified circumstances, and that MOEX as well as Anadarko E&P Company LP and/or Anadarko Petroleum were provided secure access to detailed technical information, including daily reports and real-time data.  BPXP states that the JOA speaks for itself and BPXP refers to the JOA for its full terms.  BPXP denies the remaining allegations of this paragraph.

37.    The JOA provided for the prompt invoicing by BP of costs incurred under the JOA and prompt payment of their agreed-upon share by the Anadarko Defendants and MOEX, including, on information and belief, the costs of the well casing and wellhead and other materials purchased by BP.  The JOA was and is an enforceable contract, and provided the Anadarko Defendants and MOEX with a mechanism to object to, prevent, control, address, and/or abate discharges or health and safety issues in connection with the Lease.

**ANSWER:**

BPXP admits that the JOA was and is an enforceable contract subject to applicable law, the terms of which speak for themselves.  BPXP further admits that the JOA provided for the submission of bills to MOEX as well as Anadarko E&P Company LP and/or Anadarko

13

Petroleum "on or before the last day of the month for their proportionate share of the Joint Account for the preceding month."  BPXP further admits that the JOA provided for MOEX as well as Anadarko E&P Company LP and/or Anadarko Petroleum to "pay its proportionate share of all bills in full within thirty (30) days of receipt date."  BPXP further admits that the JOA provided MOEX as well as Anadarko E&P Company LP and/or Anadarko Petroleum rights to participate in health and safety and other issues in connection with the Lease.  BPXP states that the JOA speaks for itself and BPXP refers to the JOA for its full terms.  BPXP denies the remaining allegations of this paragraph.

38.    On various dates, the Anadarko Defendants and MOEX each designated BP as the operator and local agent for the Anadarko Defendants and MOEX, with full authority to act on said co-lessees' behalf in complying with the terms of the Lease and applicable regulations.

**ANSWER:**

BPXP admits that MOEX, Anadarko E&P Company LP, and Anadarko Petroleum each "designate[d] [BPXP] as the operator and local agent (designated operator) with full authority to act in the lessee's behalf in complying with the terms of the lease and applicable regulations."  BPXP denies the remaining allegations of this paragraph.

39.    As co-lessees of the Lease, BP, the Anadarko Defendants, and MOEX, and each of them, at all material times were subject to, *inter alia,* the requirements of 30 C.F.R. § 250.400 and the regulations specified therein.

**ANSWER:**

BPXP admits that BPXP, MOEX, Anadarko E&P Company LP, and Anadarko Petroleum were subject to certain requirements imposed by regulations, including 30 C.F.R. § 250.400, the text of which speak for themselves.  BPXP denies the remaining allegations of this paragraph.

40.    On December 12, 1998, and through subsequent amendments, BP contracted with one or more of the Transocean Defendants for operation and use of a MODU for, *inter alia,* the purpose of drilling wells in the federal waters of the Gulf of Mexico.  Under this contract and its

14

amendments, one or more of the Transocean Defendants drilled an exploratory well at and within Block 252, Mississippi Canyon, OCS Official Protraction Diagram, NH 16-10.

**ANSWER:**

BPXP admits that a contract was executed by Vastar Resources, Inc. and R&B Falcon Drilling Co. on December 9, 1998 for the services of the *Deepwater Horizon* MODU to be operated by R&B Falcon Drilling Co. that was primarily engaged in exploration and drilling activities offshore in the Gulf of Mexico; that Vastar Resources, Inc. was the predecessor in interest to BP America Production Company, and R&B Falcon Drilling Co. was the predecessor in interest to Transocean Holdings, LLC through subsequent acquisitions and/or assignments; and that pursuant to this December 9, 1998 contract and its amendments one or more of the Transocean Defendants used the *Deepwater Horizon* MODU to drill an exploratory well at and within Block 252, Mississippi Canyon, OCS Official Protraction Diagram, NH 16-10.  BPXP further admits that a contract was executed by BP America Production Company and Transocean Offshore Deepwater Drilling Inc. on February 3, 2006 for the services of the *Transocean Marianas* MODU to be operated by Transocean Offshore Deepwater Drilling Inc. that was primarily engaged in exploration and drilling activities offshore in the Gulf of Mexico, and that pursuant to this February 3, 2006 contract and its amendments that one or more of the Transocean Defendants used the *Transocean Marianas* MODU to drill an exploratory well at and within Block 252, Mississippi Canyon, OCS Official Protraction Diagram, NH 16-10. BPXP denies the remaining allegations of this paragraph.

### ***Drilling the Macondo Well***

41.     On information and belief, on or about October 2009, drilling began of an exploratory well pursuant to the Lease at and within Block 252, Mississippi Canyon, OCS Official Protraction Diagram, NH 16-10. The well hereinafter shall be referred to as the "Macondo Well."

**ANSWER:**

BPXP admits the allegations of this paragraph.

42.    At all times material herein, the Macondo Well was an "offshore facility" within the meaning of OPA, 33 U.S.C. § 2701, *et seq.,* and the CWA, 33 U.S.C. § 1321(b)(7).

**ANSWER:**

BPXP admits that the Macondo well was an "offshore facility" within the meaning of the

Clean Water Act, 33 U.S.C. §1321(b)(7), but denies the remaining allegations of this paragraph.

43.    On information and belief, from at least October 1, 2009, the MODU *Transocean Marianas* was owned and/or operated by the Transocean Defendants. In or about October 2009, the *Transocean Marianas* began to be used for drilling of the Macondo Well.

**ANSWER:**

BPXP admits the allegations of this paragraph.

44.    Beginning in or about February 2010, the MODU *Deepwater Horizon* replaced the *Transocean Marianas* for the purpose of continuing the drilling of the Macondo Well. Drilling of the Macondo Well using the *Deepwater Horizon* continued in February 2010 and through March and a portion of April 2010.

**ANSWER:**

BPXP admits the allegations of this paragraph.

45.    As of April 20, 2010, various sub-sea equipment and components of the Macondo Well had been installed on or below the seafloor of the Outer Continental Shelf, including, but not limited to, the well casing and the well head.

**ANSWER:**

BPXP admits the allegations of this paragraph.

46.    As of April 20, 2010, *Deepwater Horizon* and various appurtenances of the *Deepwater Horizon,* including, but not limited to, the BOP stack and marine riser, were installed on and/or attached to the seafloor of the Outer Continental Shelf, purportedly for purposes of, *inter alia,* operation of the Macondo Well, including well control.

**ANSWER:**

BPXP admits the allegations of this paragraph.

### *The Defendants' Failure to Maintain Control of the Well*

47.     On April 20, 2010, the Macondo Well experienced an uncontrolled well event and an uncontrolled blowout of, *inter alia,* oil and methane gas.

**ANSWER:**

BPXP admits that on April 20, 2010 a well control event allowed hydrocarbons to escape from the Macondo well.  BPXP denies the remaining allegations of this paragraph.

48.     On information and belief, the April 20, 2010 uncontrolled well event and uncontrolled blowout of oil and methane gas was not prevented by Defendants, or any of them, or by the *Deepwater Horizon* or its equipment and appurtenances, including, but not limited to, the BOP stack.

**ANSWER:**

BPXP admits that on April 20, 2010 a well control event allowed hydrocarbons to escape from the Macondo well, and that the well control event was not prevented by any Defendants or by the *Deepwater Horizon*, its equipment, or appurtenances.  BPXP denies the remaining allegations of this paragraph.

49.     On information and belief, in violation of federal regulations, including, but not limited to, 30 C.F.R. § 250.401, each Defendant (other than Lloyd's) failed, *inter alia,* to take necessary precautions to keep the Macondo Well under control, including, but not limited to, on April 20, 2010.

**ANSWER:**

BPXP denies the allegations of this paragraph to the extent they are directed at BPXP. BPXP lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore denies them.

50.     On information and belief, in violation of federal regulations, including, but not limited to, 30 C.F.R. § 250.401, each Defendant (other than Lloyd's) failed, *inter alia,* to use the best available and safest drilling technology to monitor and evaluate the Macondo Well's conditions and to minimize the potential for the Macondo Well to flow or kick.

**ANSWER:**

BPXP denies the allegations of this paragraph to the extent they are directed at BPXP.

BPXP lacks knowledge or information sufficient to form a belief about the truth of the remaining

allegations of this paragraph, and therefore denies them.

51.     On information and belief, in violation of federal regulations, including, but not limited to, 30 C.F.R. § 250.401, each Defendant (other than Lloyd's) failed, *inter alia,* to fulfill its respective responsibilities to maintain well control of the Macondo Well.

**ANSWER:**

BPXP denies the allegations of this paragraph to the extent they are directed at BPXP.

BPXP lacks knowledge or information sufficient to form a belief about the truth of the remaining

allegations of this paragraph, and therefore denies them.

52.     On information and belief, in violation of federal regulations, including, but not limited to, 30 C.F.R. § 250.401, each Defendant (other than Lloyd's) failed, *inter alia,* at times relevant herein to maintain continuous surveillance on the rig floor.

**ANSWER:**

BPXP denies the allegations of this paragraph to the extent they are directed at BPXP.

BPXP lacks knowledge or information sufficient to form a belief about the truth of the remaining

allegations of this paragraph, and therefore denies them.

53.     On information and belief, in violation of federal regulations, including, but not limited to, 30 C.F.R. § 250.401, each Defendant (other than Lloyd's) failed, *inter alia,* to maintain equipment and materials, including, but not limited to, the BOP stack, that were available and necessary to ensure the safety and protection of personnel, equipment, natural resources, and the environment.

**ANSWER:**

BPXP denies the allegations of this paragraph to the extent they are directed at BPXP.

BPXP lacks knowledge or information sufficient to form a belief about the truth of the remaining

allegations of this paragraph, and therefore denies them.

54.     On information and belief, each Defendant (other than Lloyd's) failed, *inter alia,* to comply with applicable federal regulations at 30 C.F.R. Part 250, including, but not limited to, 30 C.F.R. §§ 250.107, 250.198 (and industry standards expressly incorporated therein), 250.300, 250.401, 250.420, 250.440, 250.442, 250.446, and 250.451.

**<u>ANSWER:</u>**

BPXP denies the allegations of this paragraph to the extent they are directed at BPXP.

BPXP lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore denies them.

55.     On information and belief, each Defendant (other than Lloyd's) caused and/or contributed to the Deepwater Horizon Spill by failing to assure well control of the Macondo Well through, *inter alia:* actions, corporate actions, and/or corporate practices of disregarding federal regulations, as evidenced by various safety and other audits of *Deepwater Horizon,* reflecting the known failure, prior to the Deepwater Horizon Spill, to properly design, install, maintain, repair, and operate equipment intended to prevent personal injury, loss of life, harm to the environment, and disasters like the Deepwater Horizon Spill.

**<u>ANSWER:</u>**

BPXP denies the allegations of this paragraph to the extent they are directed at BPXP.

BPXP lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore denies them.

56.     On information and belief, each Defendant (other than Lloyd's) caused and/or contributed to the Deepwater Horizon Spill by failing to assure well control of the Macondo Well through, *inter alia:*

(a)     Failing to assure that well control was maintained by proper and adequate cementing of the Macondo Well;

(b)     Failing to assure that well control was maintained by mechanical barriers, including, but not limited to, the BOP stack;

(c)     Failing to assure that well control was maintained by proper and adequate inspection and maintenance of the BOP stack;

(d)     Failing to assure that well control was maintained by proper and adequate pressure testing;

(e)     Failing to assure that well control was maintained by the use of appropriate fluids to maintain hydrostatic pressure on the wellbore;

(f)    Failing to assure that well control was maintained by proper and adequate well monitoring;

(g)    Failing to assure that, once well control initially was lost, well control was regained by proper and adequate well control response;

(h)    Failing to assure that, once well control initially was lost, well control was regained by proper and adequate surface containment and overboard discharge and diversion of hydrocarbons; and

(i)    Failing to assure that, once well control initially was lost, well control was regained by proper and adequate BOP stack emergency operations.

**ANSWER:**

BPXP denies the allegations of this paragraph to the extent they are directed at BPXP.

BPXP lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore denies them.

### *The Deepwater Horizon Spill*

57.    As a result of the April 20, 2010 uncontrolled well event and uncontrolled blowout, multiple explosions and fires occurred aboard the *Deepwater Horizon.*

**ANSWER:**

BPXP admits that on April 20, 2010 a well control event allowed hydrocarbons to escape from the Macondo well onto the *Deepwater Horizon*, resulting in explosions and fire on the rig. BPXP denies the remaining allegations of this paragraph.

58.    As a result of the discharge of oil and methane gas, and the resulting multiple explosions and fires that occurred aboard the *Deepwater Horizon,* eleven persons aboard *Deepwater Horizon* lost their lives and other people sustained personal injuries.

**ANSWER:**

BPXP admits that on April 20, 2010 a well control event allowed hydrocarbons to escape from the Macondo well onto the *Deepwater Horizon*, resulting in explosions and fire on the rig. BPXP further admits that eleven people lost their lives, and others were injured.  BPXP denies the remaining allegations of this paragraph.

59.     As a result of the discharge of oil and methane gas, and the resulting multiple explosions and fires that occurred aboard the *Deepwater Horizon,* equipment was damaged and/or destroyed, which equipment, on information and belief, could have prevented and/or limited further damage and injury, including the prevention and/or limitation of discharge of oil into and upon waters of the Gulf of Mexico and adjoining shorelines of the United States.

**ANSWER:**

BPXP admits that on April 20, 2010 a well control event allowed hydrocarbons to escape from the Macondo well onto the *Deepwater Horizon*, resulting in explosions and fire on the rig. BPXP lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore denies them.

60.     As a result of the uncontrolled well event, uncontrolled blowout, multiple explosions, and fires, millions of barrels of oil were discharged into and upon waters of the Gulf of Mexico and adjoining shorelines of the United States.

**ANSWER:**

BPXP admits that on April 20, 2010 a well control event allowed hydrocarbons to escape from the Macondo well onto the *Deepwater Horizon*, resulting in explosions and fire on the rig. BPXP further admits that a still undetermined amount of oil was discharged into and upon waters of the Gulf of Mexico.  BPXP denies the remaining allegations of this paragraph.

61.     On and after April 20, 2010, oil flowed from the Macondo Well, associated equipment, the BOP stack, the marine riser, and the *Deepwater Horizon,* and into and upon waters of the Gulf of Mexico and adjoining shorelines of the United States.

**ANSWER:**

BPXP admits that on and for a period of time after April 20, 2010, oil flowed from the Macondo well, some of which flowed into and upon waters of the Gulf of Mexico and some of which reached the shoreline of the United States.  BPXP further admits that at certain times on or after April 20, 2010, oil flowed, *inter alia*, through the BOP stack, the marine riser, and/or other equipment.  BPXP denies the remaining allegations of this paragraph.

62.     Within the meaning of the CWA, oil discharges in "such quantities as may be harmful" include oil spills that cause "a film or sheen upon or discoloration of the surface of the water or adjoining shorelines or cause a sludge or emulsion to be deposited beneath the surface of the water or upon adjoining shorelines."  40 C.F.R. § 110.3(b).

**ANSWER:**

BPXP admits that the Clean Water Act and the referenced regulatory provision define discharges of oil that may be harmful, the full texts of which speaks for themselves.  BPXP denies the remaining allegations of this paragraph.

63.     The Deepwater Horizon Spill caused large quantities of oil to coat the surface of and flow through the waters of the Gulf of Mexico and be deposited upon shorelines of the United States. Oil from the spill remains in the waters of the Gulf of Mexico and upon the adjoining shorelines of the United States.

**ANSWER:**

BPXP admits that some of the oil from the Macondo well reached the surface of and flowed through the waters of the Gulf of Mexico.  BPXP further admits that some of the oil reached the shoreline of the United States.  BPXP lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore denies them.

64.     The Deepwater Horizon Spill was a discharge of oil "in such quantities as may be harmful," within the meaning of the CWA, 33 U.S.C. § 1321(b)(3).

**ANSWER:**

BPXP admits the allegations of this paragraph.

65.     As a result of the Deepwater Horizon Spill, "natural resources," as that term is defined in OPA, 33 U.S.C. § 2701(20), have been injured, destroyed, or lost.

**ANSWER:**

BPXP admits that there have been impacts to natural resources from the *Deepwater Horizon* incident, the full extent of which is not currently known.  BPXP lacks knowledge or

information sufficient to form a belief about the truth of the remaining allegations of this

paragraph, and therefore denies them.

66.     Natural resources under the trusteeship of the United States and other sovereigns have been injured, destroyed, or lost as a result of discharged oil and associated removal efforts. The discharged oil is harmful to natural resources exposed to the oil, including aquatic organisms, birds, wildlife, vegetation, and habitats.  Discharged oil and some of the response activities to address the discharges of oil have resulted in injury to, loss of, loss of use of or destruction of natural resources in and around the Gulf of Mexico and along adjoining shorelines of the United States, and also have impaired or caused the loss of services that those resources provide.  The full extent of potential injuries, destruction, loss and loss of services is not yet fully known and may not be fully known for many years.  On information and belief, resources and resource services that have been injured, destroyed, or lost include, but are not limited to, hundreds of miles of coastal habitats, including salt marshes, sandy beaches, and mangroves; a variety of wildlife, including birds, sea turtles, and marine mammals; lost human-use opportunities associated with various natural resources in the Gulf region, including but, not limited to fishing, swimming, beach-going, and viewing of birds and wildlife; and waters of the Gulf of Mexico, including various biota, benthic communities, marine organisms, coral, fish, and water-column habitat.

**ANSWER:**

BPXP admits that there have been impacts to natural resources from the *Deepwater*

*Horizon* incident, the full extent of which is not currently known.  BPXP lacks knowledge or

information sufficient to form a belief about the truth of the remaining allegations of this

paragraph, and therefore denies them.

67.     The amount of damages and the extent of injuries sustained by the United States as a result of the Deepwater Horizon Spill are not yet fully known, but far exceed $75,000,000.

**ANSWER:**

BPXP lacks knowledge or information sufficient to form a belief about the truth of the

allegations of this paragraph, and therefore denies them.

68.     As a result of the Deepwater Horizon Spill, the United States has expended and/or sustained and/or will expend or sustain, *inter alia,* "removal costs" and "damages," within the meaning of OPA, 33 U.S.C. § 2702(b).

**ANSWER:**

BPXP admits that as a result of the oil spill, the United States has expended certain amounts for removal costs within the meaning of OPA, much of which has already been reimbursed by BPXP.  BPXP lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore denies them.

69.    On information and belief, the Deepwater Horizon Spill was proximately caused by one or more of the following: acts, joint acts, omissions, fault, negligence, gross negligence, willful misconduct, and/or breach of federal safety and/or operating and/or construction regulations by Defendants BP, Anadarko Exploration, Anadarko Petroleum, MOEX, one or more of the Transocean Defendants, and/or their respective agents, servants, employees, crew, contractors and/or subcontractors with whom said Defendants had contractual relationships.

**ANSWER:**

BPXP admits that the Deepwater Horizon Spill was the result of a complex and interlinked series of factors that came together to allow its initiation and escalation and that multiple companies including BPXP were involved.  BPXP denies that the Deepwater Horizon Spill was "proximately caused" by the acts, joint acts, omissions, fault, negligence, gross negligence, willful misconduct, and/or breach of federal safety and/or operating and/or construction regulations by BPXP, Anadarko Petroleum, Anadarko E&P Company LP, and MOEX and/or their respective agents, servants, employees, crew, contractors, and/or subcontractors.  BPXP lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore denies them.

## FIRST CLAIM FOR RELIEF

### (Civil Penalties Under Section 311(b) of the Clean Water Act)

70.    Plaintiff, the United States of America, refers to and incorporates by reference as though fully set forth herein each and every foregoing paragraph of this Complaint.

**ANSWER:**

BPXP refers to and incorporates by reference as though fully set forth herein its answer

to each and every foregoing paragraph of this complaint.

71.    At all times material herein, Defendant BP was an owner, an operator, and/or a person in charge of, *inter alia,* the well, the well casing, the well head, and the *Deepwater Horizon,* including the BOP stack, the marine riser and associated piping, and other equipment, with respect to the matters sued upon herein. BP was an owner, operator, and/or person in charge of an offshore facility and, additionally, an operator and/or person in charge of a vessel within the meaning of the CWA, 33 U.S.C. § 1321(b)(7).

**ANSWER:**

BPXP denies the allegations of this paragraph.

72.    At all times material herein, the Anadarko Defendants were each an owner, operator, and/or a person in charge of, *inter alia,* the well, the well casing, and the well head, with respect to the matters sued upon herein. The Anadarko Defendants were each an owner, operator, and/or person in charge of an offshore facility within the meaning of the CWA, 33 U.S.C. § 1321(b)(7).

**ANSWER:**

BPXP lacks knowledge or information sufficient to form a belief about the truth of the

allegations of this paragraph, and therefore denies them.

73.    At all times material herein, defendant MOEX was an owner, operator, and/or a person in charge of, *inter alia,* the well, the well casing, and the well head, with respect to the matters sued upon herein. Defendant MOEX was an owner, operator and/or person in charge of an offshore facility within the meaning of the CWA, 33 U.S.C. § 1321(b)(7).

**ANSWER:**

BPXP lacks knowledge or information sufficient to form a belief about the truth of the

allegations of this paragraph, and therefore denies them.

74.    At all times material herein, the Transocean Defendants were each an owner, operator, and/or person in charge of the *Deepwater Horizon,* including the BOP stack, the marine riser and associated piping, and other equipment, with respect to the matters sued upon herein. The Transocean Defendants were each an owner, operator, and/or person in charge of a vessel and/or an offshore facility within the meaning of the CWA, 33 U.S.C. § 1321(b)(7).

**ANSWER:**

BPXP lacks knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore denies them.

75.    Pursuant to 33 U.S.C. § 1321(b)(7) and 40 C.F.R. § 19.4, Defendants BP, Anadarko Exploration, Anadarko Petroleum, MOEX, Triton, Transocean Holdings, Transocean Offshore, and Transocean Deepwater are each subject to a judicially assessed civil penalty of up to $1,100 per barrel of oil that has been discharged or up to $4,300 per barrel of oil that has been discharged, to the extent that the discharge of oil was the result of gross negligence or willful misconduct by such Defendant.

**ANSWER:**

BPXP denies the allegations of this paragraph to the extent they are directed at BPXP. BPXP also denies that the applicable statutory and regulatory provisions provide for penalties in the amounts stated, as those provisions also contemplate courts assessing penalties based on the number of days of a violation.  BPXP lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore denies them.

76.    Pursuant to 33 U.S.C. § 1321(b)(7), Defendants BP, Anadarko Exploration, Anadarko Petroleum, MOEX, Triton, Transocean Holdings, Transocean Offshore, and Transocean Deepwater are each liable to the United States for a judicially assessed civil penalty in an amount to be determined at trial.

**ANSWER:**

BPXP denies the allegations of this paragraph to the extent they are directed at BPXP. BPXP lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore denies them.

**SECOND CLAIM FOR RELIEF**

**<ins>(Declaratory Judgment That All Defendants Are Liable<br>Under the Oil Pollution Act)</ins>**

77.    Plaintiff, the United States of America, refers to and incorporates by reference as though fully set forth herein each and every foregoing paragraph of this Complaint.

**ANSWER:**

BPXP refers to and incorporates by reference as though fully set forth herein its answer

to each and every foregoing paragraph of this complaint.

78.     At all times material herein, Defendant BP was and is a lessee or permittee with

respect to the leased area known as "All of Block 252, Mississippi Canyon, OCS Official

Protraction Diagram, NH 16-10." In addition, BP was an operator of the *Deepwater Horizon*

with respect to the matters sued upon herein.

**ANSWER:**

BPXP admits that at all material times, it was and is a lessee or permittee with the respect

to the leased area known as "All of Block 252, Mississippi Canyon, OCS Official Protraction

Diagram, NH 16-10."  BPXP denies the remaining allegations of this paragraph.

79.     At all times material herein, Defendant Anadarko Petroleum was and is a lessee or

permittee with respect to the leased area known as "All of Block 252, Mississippi Canyon, OCS

Official Protraction Diagram, NH 16-10."

**ANSWER:**

BPXP admits the allegations of this paragraph.

80.     At all times material herein, at least until April 28, 2010, Defendant Anadarko

Exploration was a lessee or permittee with respect to the leased area known as "All of Block 252,

Mississippi Canyon, OCS Official Protraction Diagram, NH 16-10."

**ANSWER:**

BPXP denies the allegations of this paragraph.

81.     At all times material herein, Defendant MOEX was and is a lessee or permittee

with respect to the leased area known as "All of Block 252, Mississippi Canyon, OCS Official

Protraction Diagram, NH 16-10."

**ANSWER:**

BPXP admits the allegations of this paragraph.

82.     As a result of the various agreements alleged herein and the foregoing

"Assignment(s) of Record Title Interest in Federal OCS Oil and Gas Lease" pertaining to Lease

No. OCS-G 32306, BP became and remains a "responsible party" for an "offshore facility"

within the meaning of OPA, 33 U.S.C. §§ 2701 *et seq.*, and BP has admitted that it is a "responsible party" within the meaning of OPA.

**ANSWER:**

BPXP admits the allegations of this paragraph.

83. As a result of the various agreements alleged herein and the foregoing "Assignment(s) of Record Title Interest in Federal OCS Oil and Gas Lease" pertaining to Lease No. OCS-G 32306, the Anadarko Defendants became and remain "responsible parties" for an "offshore facility" within the meaning of OPA, 33 U.S.C. §§ 2701 *et seq.*

**ANSWER:**

BPXP admits that as of April 20, 2010, Anadarko Petroleum was a "responsible party" for an "offshore facility" within the meaning of OPA. BPXP lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore denies them.

84. As a result of the various agreements alleged herein and the foregoing "Assignment(s) of Record Title Interest in Federal OCS Oil and Gas Lease" pertaining to Lease No. OCS-G 32306, MOEX became and remains a "responsible party" for an "offshore facility" within the meaning of OPA, 33 U.S.C. §§ 2701 *et seq.*

**ANSWER:**

BPXP admits the allegations of this paragraph.

85. At all times material herein, the Transocean Defendants were the owners and/or operators and/or owners *pro hac vice* and/or demise charterers of the *Deepwater Horizon,* and have been and remain "responsible parties" for a "vessel" and/or "offshore facility" within the meaning of OPA, 33 U.S.C. §§ 2701 *et seq.*

**ANSWER:**

BPXP admits the allegations of this paragraph.

86. The United States has sustained "damages," as that term is defined in 33 U.S.C. § 2702(b)(2), for, *inter alia,* injuries to, destruction of, loss of, or loss of use of natural resources and net loss of taxes, royalties, rents, fees, and net profit shares due to the injury to, destruction of, and loss of real property, personal property, and natural resources, said damages far exceeding $75,000,000.

**ANSWER:**

BPXP lacks knowledge or information sufficient to form a belief about the truth of the

allegations of this paragraph, and therefore denies them.

87.     An actual controversy exists between the United States and Defendants BP, Anadarko Exploration, Anadarko Petroleum, MOEX, Triton, Transocean Holdings, Transocean Offshore, and Transocean Deepwater.

**ANSWER:**

BPXP admits the allegations of this paragraph.

88.     Lloyd's has provided evidence of financial responsibility and certain guarantees pertaining to one or more of the Transocean Defendants and *Deepwater Horizon.*

**ANSWER:**

BPXP lacks knowledge or information sufficient to form a belief about the truth of the

allegations of this paragraph, and therefore denies them.

89.     Pursuant to Section 1016(f) of OPA, 33 U.S.C. § 2716(f), the United States may bring this action directly against Lloyd's, in its capacity as a guarantor providing evidence of financial responsibility for one or more of the Transocean Defendants, for removal costs and damages available under OPA, 33 U.S.C. § 2702.

**ANSWER:**

BPXP lacks knowledge or information sufficient to form a belief about the truth of the

allegations of this paragraph, and therefore denies them.

90.     While denying that it acted improperly, through its filings with the Court and other public statements by its high-ranking officers, BP has, through binding waivers, estoppels, admissions, and judicial admissions, waived any potential limit of its strict liability that it otherwise may have attempted to assert pursuant to, *inter alia,* Section 1004 of OPA, including 33 U.S.C. § 2704.

**ANSWER:**

BPXP admits that in October 2010 it filed a document with this Court in which it stated,

among other things, that "BP has chosen to waive the statutory limitation on liability under OPA;

however, by making this statement, BP and its affiliates are not admitting anything about their

conduct and, indeed, specifically deny that they have engaged in any gross negligence in connection with the *Deepwater Horizon* incident and the resulting oil spill;" and that "BP reserves the right to seek reimbursement or contribution from other Responsible Parties and third parties for claims, costs, expenses, and liabilities arising out of the *Deepwater Horizon* incident and the resulting oil spill." BPXP further admits that it has made other statements to the public and others addressing similar issues. BPXP denies the remaining allegations of this paragraph.

91.     Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, and OPA, 33 U.S.C. § 2717(f)(2), the United States is entitled to, and hereby seeks, a declaratory judgment that is binding in this action and any subsequent action or actions against Defendants BP, Anadarko Exploration, Anadarko Petroleum, MOEX, Triton, Transocean Holdings, Transocean Offshore, and Transocean Deepwater, jointly and severally and without any limitation, and Lloyd's, the latter up to the amount of its COFR guarantee, that said Defendants are liable for removal costs and damages in this action and in any such subsequent action or actions.

**ANSWER:**

BPXP admits that Plaintiff refers to the Declaratory Judgment Act and OPA, the full texts of which speak for themselves, and that Plaintiff seeks a declaratory judgment that Defendants are liable for removal costs and damages in this action and in any such subsequent action or actions. BPXP denies the allegations of this paragraph concerning Plaintiff's entitlement to relief to the extent they are directed at BPXP. BPXP lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore denies them.

### RESERVATION OF RIGHTS AND NOTICE

92.     The United States reserves the right to amend this Complaint and/or file additional complaints under statutory law, common law, and/or general maritime law, to assert claims for penalties, damages, and any other legal and equitable remedies authorized by law and regulation, including, but not limited to, claims under the CWA, OPA, the Outer Continental Shelf Lands Act, 43 U.S.C. §§ 1301 *et seq.,* the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.,* the Endangered Species Act of 1973, 16 U.S.C. §§ 1531 *et seq.,* the Marine Mammal Protection Act, 16 U.S.C. §§ 1361 *et seq.,* the National Marine Sanctuaries Act, 16 U.S.C. §§ 1431 *et seq.,* and the Park System Resource Protection Act, 16 U.S.C. §§ 19jj *et seq.,* against the present Defendants and/or against any additional parties. The United States further expressly

reserves the right to conduct administrative proceedings as warranted against the present Defendants and/or additional parties under federal statutes, including but not limited to the Outer Continental Shelf Lands Act, 43 U.S.C. §§ 1301 *et seq.,* and the Federal Oil and Gas Royalty Management Act, 30 U.S.C. §§ 1701 *et seq.*

**ANSWER:**

BPXP admits that Plaintiff asserts that "it reserves the right to amend this complaint and/or file additional complaints under statutory law, common law, and/or general maritime law, to assert claims for penalties, damages, and any other legal and equitable remedies authorized by law and regulation" and "to conduct administrative proceedings as warranted against the present Defendants and/or additional parties," and BPXP denies that Plaintiff can do so.

**PRAYER FOR RELIEF**

WHEREFORE, the United States of America prays that the Court:

1.      Assess a civil penalty, under Section 311(b)(7) of the Clean Water Act, 33 U.S.C. § 1321(b)(7), against each Defendant (except Lloyd's) in an amount to be determined by the Court;

2.      Enter a declaratory judgment that all Defendants are jointly and severally liable without limitation under Section 1002(a) of OPA, 33 U.S.C. § 2702(a), for all removal costs and damages resulting from the Deepwater Horizon Spill (except that Lloyd's be declared liable only to the limit of its COFR), which will be binding on this action and on any subsequent action or actions to recover removal costs or damages;

3.      Award injunctive relief against the Defendants as appropriate; and

4.      Grant such other relief as the Court deems just and proper.

**ANSWER:**

BPXP denies that the United States is entitled to the relief it seeks with respect to BPXP.

**AFFIRMATIVE DEFENSES**

**FIRST AFFIRMATIVE DEFENSE**

1.      Plaintiff's request for a declaratory judgment regarding alleged damages under OPA constitutes improper claim splitting and is barred by res judicata, and BPXP reserves the right to object to any attempt to amend or supplement the Complaint to add any such claims for

damages, other than in accordance with a schedule to be agreed upon by the parties that ensures that all claims of the Plaintiff are asserted in a timely and appropriate manner.  To the extent any such claims are allowed by amendment or supplement in the future, BPXP reserves the right to amend or supplement this Answer, including any potential affirmative defenses and counterclaims, in response to any claim for damages under OPA.

### SECOND AFFIRMATIVE DEFENSE

2.     There are superseding causes of the relevant discharges of oil beyond any events proximately caused by BPXP, including, but not limited to, defective design and/or manufacture of the BOP and/or negligent operation of the BOP.

### THIRD AFFIRMATIVE DEFENSE

3.     To the extent any civil penalty is assessed against BPXP under 33 U.S.C. § 1321(b)(7), the amount of such penalty: should be reduced to the extent acts or omissions by Plaintiff and/or other third parties resulted in an increase in the total amount of oil discharged; and should be reduced to the extent that BPXP incurred additional costs or liability as a result of action or inaction by the Plaintiff.

### FOURTH AFFIRMATIVE DEFENSE

4.     Under the doctrine of divisibility, BPXP should not be liable jointly and severally for the full extent of removal costs or damages, but instead any potential removal costs or damages assessed against BPXP should be apportioned based on a determination of BPXP's actual contribution to the harm.

### FIFTH AFFIRMATIVE DEFENSE

5.     Certain sums have been paid by BPXP in connection with expenses incurred and efforts undertaken by Plaintiff and its agencies as a result of the Incident.  In addition, certain sums have been paid or are the subject of proceedings initiated by state governments.

Accordingly, set off is pled as a bar, in whole or in part, to Plaintiff's claims to the extent that such payment has occurred.

## SIXTH AFFIRMATIVE DEFENSE

6.      Plaintiff is not entitled to recover any costs or purported damages to the extent that those costs or alleged damages were incurred as a result of Plaintiffs' acts or omissions determined to be wrongful.

## SEVENTH AFFIRMATIVE DEFENSE

7.      Injunctive relief should not be awarded to the extent that Plaintiff's own conduct bars such injunctive relief.

## EIGHTH AFFIRMATIVE DEFENSE

8.      No recovery may be had to the extent that actions of BP were undertaken pursuant to government mandate, direction, supervision, or with government approval.

## NINTH AFFIRMATIVE DEFENSE

9.      To the extent any civil penalty is assessed against BPXP under 33 U.S.C. § 1321(b)(7), and even if gross negligence or willful misconduct were proven by Plaintiff at trial, the maximum penalty is $4,000 per barrel, not $4,300 per barrel.  The Coast Guard's and EPA's current inflation adjustments under Clean Water Act Section 311(b)(7) disagree with one another (*compare* 33 C.F.R. § 27.3 ($4,000/barrel) *with* 40 C.F.R. § 19.4 ($4,300/barrel)) and pursuant to due process fair notice principles, only the lesser inflation-adjusted penalty number could ever be applied.

## TENTH AFFIRMATIVE DEFENSE

10.     Plaintiff is not entitled to any penalty or damages recovery to the extent that such penalties and damages sought, and the alleged means of determining them are so speculative, uncertain, arbitrary, and/or excessive that a judgment awarding Plaintiff such damages and/or

penalties would not conform with due process of law and/or the requirements of the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.  Plaintiff also is not entitled to any relief that is otherwise in contravention of the Constitution of the United States.

## ELEVENTH AFFIRMATIVE DEFENSE

11.     This answering defendant will rely on any and all further defenses that become available or appear during any subsequent proceedings in this action and specifically reserves its right to amend this Answer for purposes of asserting additional defenses, and specifically anticipates making such amendments in response to any amendments to the Complaint and any complaint or claim filed against this answering defendant by any other defendant or party relating to the matters set forth in the Complaint.

## TWELFTH AFFIRMATIVE DEFENSE

12.     BPXP reserves the right to rely on any affirmative defenses pleaded by the other Defendants and not pleaded by BPXP, to the extent such defenses are legally sufficient and do not conflict with BPXP's affirmative defenses.

BPXP denies liability consistent with the statements herein.

Dated:  April 4, 2011                    Respectfully submitted,


                                         By:  /s/ Don K. Haycraft
                                         Don K. Haycraft (Bar #14361)
                                         (dkhaycraft@liskow.com)
                                         R. Keith Jarrett (Bar #16984)
                                         (rkeithjarrett@liskow.com)
                                         LISKOW & LEWIS
                                         One Shell Square
                                         701 Poydras Street, Suite 5000
                                         New Orleans, Louisiana  70139-5099
                                         Telephone:  (504) 581-7979
                                         Facsimile:  (504) 556-4108

                                         Richard C. Godfrey, P.C.
                                         (richard.godfrey@kirkland.com)
                                         J. Andrew Langan, P.C.
                                         (andrew.langan@kirkland.com)
                                         Kirkland & Ellis LLP
                                         300 North LaSalle Street
                                         Chicago, Illinois  60654
                                         Telephone: (312) 862-2000

                                         Robert R. Gasaway
                                         (robert.gasaway@kirkland.com)
                                         Joseph A. Eisert
                                         (joseph.eisert@kirkland.com)
                                         KIRKLAND & ELLIS LLP
                                         655 Fifteenth Street, N.W., Suite 1200
                                         Washington, D.C. 20005
                                         Telephone:  (202) 879-5000

                                         — and —

                                         Joel M. Gross
                                         (joel.gross@aporter.com)
                                         ARNOLD & PORTER LLP
                                         555 Twelfth Street, N.W.
                                         Washington, D.C. 20004
                                         Telephone: (202) 942-5705


                                         *Attorneys for BP Exploration & Production Inc.*


35

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice in accordance with the procedures established in MDL 2179, on this 4th day of April, 2011.

/s/  Don K. Haycraft
Don K. Haycraft
