UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig | * | MDL No. 2179 |
| "Deepwater Horizon" in the Gulf | * | |
| of Mexico, on April 20, 2010 | * | SECTION: J |
| | * | |
| This Document Relates to: | * | |
| *United States of America v.* | * | |
| *BP Exploration & Production, Inc., et al.,* | * | |
| Civil Action No. 10-04536 | * | |
| | * | JUDGE BARBIER |
| | * | MAGISTRATE SHUSHAN |
| *    *    *    *    *    *    *    *    *    *    *    * | | |

MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANT
ANADARKO E&P COMPANY LP TO DISMISS THE COMPLAINT OF THE
<u>UNITED STATES PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)</u>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND ............................................................................................... 3

    A.    The Macondo Prospect Lease And AE&P's Temporary Interest ........................ 3

    B.    BP is the Designated Operator of the Macondo Prospect Lease ......................... 6

ARGUMENT .................................................................................................................. 7

I.    STANDARD OF REVIEW ............................................................................................ 7

II.    THE UNITED STATES' OPA CLAIM AGAINST AE&P SHOULD BE DISMISSED
BECAUSE IT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED ............... 8

    A.    AE&P is Not a "Lessee" Under OPA ................................................................ 9

    B.    AE&P Is Not A "Permittee" Under OPA ........................................................ 14

III.    THE UNITED STATES' CWA CLAIM AGAINST AE&P SHOULD BE DISMISSED
BECAUSE IT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED ............. 16

    A.    The Complaint Fails to Allege Specific Facts Sufficient to Support Its
CWA Claims. ................................................................................................ 16

    B.    AE&P's Limited and Temporary Leasehold Interest is Insufficient to
Establish "Owner" Liability Under The CWA ............................................... 17

        1.    AE&P did not obtain title to the well, well casing or wellhead, and
therefore was not an "owner" under the CWA ....................................... 18

        2.    An interest in the "lease" is insufficient to constitute "ownership,"
and in any event that interest was transferred prior to the discharge ....... 20

        3.    AE&P had no ownership interest in the Deepwater Horizon ................ 22

    C.    AE&P Was Not an "Operator" or "Person in Charge" of an Offshore
Facility For Purposes of Liability Under The CWA ........................................ 23

        1.    The Complaint fails to allege any facts to support a finding of
"operator" liability under the CWA. ...................................................... 24

        2.    AE&P was not a "Person in Charge" of an offshore facility ................ 26

i

## <u>TABLE OF CONTENTS</u>
(cont.)

IV.    NEITHER CWA NOR OPA LIABILITY IS A "LEASE OBLIGATION" THAT EXTENDS
BEYOND THE EFFECTIVE DATE OF AN ASSIGNMENT ........................................................ 27

CONCLUSION ............................................................................................................................. 28

# **TABLE OF AUTHORITIES**

**CASES**

*Apex Oil Co. v. United States*, 530 F.2d 1291 (8th Cir.),
    *cert. denied*, 429 U.S. 827 (1976)............................................................26, 27

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ...................................................7, 16

*Beartooth Alliance v. Crown Butte Mines*, 904 F. Supp. 1168 (D. Mont. 1995)...............25

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................7, 8

*Bennett v. Islamic Republic of Iran*, 618 F.3d 19 (D.C. Cir. 2010) ..................................11

*Burnett v. Stewart Title, Inc. (In re Burnett)*,
    -- F.3d --, 2011 WL 754152 (5th Cir. 2011) .............................................................11

*Carr v. United States*, 130 S. Ct. 2229 (2010)................................................................11

*Carrieri v. JOBS.COM, Inc.*, 393 F.3d 508 (5th Cir. 2004) ........................................11, 28

*Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285 (5th Cir. 2004) .........................8

*Cinel v. Connick*, 15 F.3d 1338 (5th Cir. 1994).................................................................6

*City of Los Angeles v. San Pedro Boat Works*,
    -- F.3d --, 2011 WL 855858 (9th Cir. 2011) .............................................................21

*City of Waco v. Schouten*, 385 F. Supp. 2d 595 (W.D. Tex. 2005), *clarified on
    denial of reconsideration*, 2005 WL 2757262 (W.D. Tex. Oct. 24, 2005)..................23

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 (5th Cir. 2000).............................8

*Commander Oil Corp. v. Barlo Equipment Corp.*,
    215 F.3d 321 (2d Cir. 2000)......................................................................18, 19, 20, 24

*Edward Hines Lumber Co. v. Vulcan Materials Co.*, 861 F.2d 155 (7th Cir. 1988).........18

*Ferrer v. Chevron Corp.*, 484 F.3d 776 (5th Cir. 2007) ....................................................8

*Financial Acquisition Partners LP v. Blackwell*, 440 F.3d 278 (5th Cir. 2006) ...............8

*Fruge v. Parker Drilling Co.*, 337 F.3d 558 (5th Cir. 2003) ............................................26

# TABLE OF AUTHORITIES
(cont.)

*Geraghty and Miller, Inc. v. Conoco Inc.*, 234 F.3d 917 (5th Cir. 2000) )......................24

*In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201 (5th Cir. 2010)......................7

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*,
    484 U.S. 49 (1987)..................................................................................................11

*Harris v. Oil Reclaiming Co.*, 94 F. Supp. 2d 1210 (D. Kan. 2000) ................................24

*Kane Enterprises v. MacGregor (USA) Inc.*, 322 F.3d 371 (5th Cir. 2003)......................8

*In re Katrina Canal Breaches Litigation*, 495 F.3d 191 (5th Cir. 2007)...........................8

*Landry v. Huthnance Drilling Co.*, 889 F.2d 1469 (5th Cir. 1989).................................26

*Lane v. Capital Acquisitions & Management Co.*, No. 04-60602CIV,
    2006 WL 4590705 (S.D. Fla. Apr. 14, 2006) ...............................................16

*Magluta v. Samples*, 256 F.3d 1282 (11th Cir. 2001)......................................................16

*New York v. Westwood-Squibb Pharmaceutical Co.*,
    138 F. Supp. 2d 372 (W.D.N.Y. 2000) .......................................................19

*Plotkin v. IP Axess Inc.*, 407 F.3d 690 (5th Cir. 2005) ......................................................8

*Pro Image Installers, Inc. v. Dillon*, No. 3:08CV273/MCR/MD,
    2009 WL 112953 (N.D. Fla. Jan. 15, 2009) ...............................................16

*Quaker State Corp. v. U.S. Coast Guard*, 681 F. Supp. 280 (W.D. Pa. 1988)............10, 22

*Service Oil, Inc. v. EPA*, 590 F.3d 545 (8th Cir. 2009) ....................................................22

*In re Settoon Towing LLC*, 722 F. Supp. 2d 710 (E.D. La. 2010) .....................................13

*Shlahtichman v. 1-800 Contacts, Inc.*, 615 F.3d 794 (7th Cir. 2010), *cert. denied*,
    131 S. Ct. 1007 (2011).................................................................................11

*Sierra Club, Inc. v. Tyson Foods, Inc.*, 299 F. Supp. 2d 693 (W.D. Ky. 2003)................27

*Stearns & Foster Bedding Co. v. Franklin Holding Corp.*,
    947 F. Supp. 790 (D. N.J. 1996) ..........................................................24, 26

*Union Petroleum Corp. v. United States*, 651 F.2d 734 (Ct. Cl. 1981)............................10

## TABLE OF AUTHORITIES
(cont.)

*United States v. Bestfoods*, 524 U.S. 51 (1998) ........................................................18, 24

*United States v. Burlington Resources Oil and Gas Co. L.P.*, No. 2:05CV 1395,
    2007 WL 773716 (W.D. La. Mar. 9, 2007) ...................................................................21

*United States v. Mobil Oil Corp.*, 464 F.2d 1124 (5th Cir. 1972) ..............................26, 27

*United States v. Viking Resources, Inc.*, 607 F. Supp. 2d 808 (S.D. Tex. 2009)...............19

*United States v. Warner Brothers Well Drilling, Inc.*, No. 89-5494, 899 F.2d 15,
    1990 WL 37610 (6th Cir. Apr. 3, 1990) .....................................................................25

*Zayler v. Dep't of Agric. (In re Supreme Beef Processors, Inc.)*,
    468 F.3d 248 (5th Cir. 2006) ......................................................................................11

### STATUTES

33 U.S.C. §1319(g) ..................................................................................................22

33 U.S.C. §1321(a)(3) ..............................................................................................22

33 U.S.C. §1321(a)(6) ..............................................................................................18

33 U.S.C. §1321(a)(11) .............................................................................................20, 22

33 U.S.C. §1321(f) ...................................................................................................25

33 U.S.C. §2701(9) ..................................................................................................20

33 U.S.C. §2701(16) ................................................................................................10

33 U.S.C. §2701(22) ................................................................................................20

33 U.S.C. §2701(28) ................................................................................................14

33 U.S.C. §2701(32) .................................................................................9, 11, 20, 28

33 U.S.C. §2702 ........................................................................................................9

33 U.S.C. §2702(a) ...............................................................................................8, 10

33 U.S.C. §2702(b) ...................................................................................................8

**TABLE OF AUTHORITIES**
(cont.)

42 U.S.C. §6972(a)(1)(B) ...................................................................................11

42 U.S.C. §9601(9) ...........................................................................................20

42 U.S.C. §9607(a)(2) .......................................................................................11

43 U.S.C. §1331(a) ...........................................................................................21

43 U.S.C. §1334(a)(3) .......................................................................................12

43 U.S.C. §1340 ................................................................................................15

43 U.S.C. §1340(a)(1) .......................................................................................14

43 U.S.C. §1340(a)(2) .......................................................................................14

Fed. R. Civ. P. 8(d)(2) ......................................................................................17

Fed. R. Civ. P. 12(b)(6) ......................................................................................1

Fed. R. Civ. P. 12(d) ..........................................................................................8

**ADMINISTRATIVE MATERIALS**

30 C.F.R. §251.1 ...............................................................................................15

30 C.F.R. §251.2 ...............................................................................................15

30 C.F.R. §251.3(a) ...........................................................................................15

30 C.F.R. §254.6 ...............................................................................................20

30 C.F.R. Part 256, Subpart J .............................................................................5

30 C.F.R. §256.62 .............................................................................................12

30 C.F.R. § 256.62(c) ............................................................................12, 13, 28

30 C.F.R. §256.62(d) .........................................................................................28

EPA Mem., *Final Guidance on the Issuance of Administrative Orders Under
    Section 311(c) and (e) of the Clean Water Act*, (July 1, 1997) ..............26, 27

**INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Anadarko E&P

Company LP ("AE&P")[1] respectfully moves to dismiss the Complaint of the United States of

America ("United States") against it in its entirety.  The Complaint seeks a declaratory judgment

of liability under the Oil Pollution Act of 1990 ("OPA") and alleges violations of and seeks civil

penalties under the Clean Water Act ("CWA") related to the Deepwater Horizon incident of

April 20, 2010 and the resulting discharge of oil.  The Complaint makes numerous general and

conclusory allegations with respect to the liability of one or more of the named Defendants,

which taken as a whole are insufficient to support liability against AE&P as a matter of law.

The only specific allegations against AE&P reflect that the apparent basis of the United

States' claim under OPA relates to AE&P's temporary interest in the oil and gas lease issued to

BP Exploration & Production Inc. ("BP") pertaining to Block 252, Mississippi Canyon, known

as the Macondo Prospect.  But, as a matter of law, AE&P did not have any interest in that lease

at the time of the Deepwater Horizon incident.  Although AE&P obtained a temporary record

title interest percentage in such lease pursuant to an assignment executed December 17, 2009

(effective October 1, 2009), it assigned this interest to Anadarko Petroleum Corporation ("APC")

pursuant to an assignment executed April 15, 2010 (effective April 1, 2010).  Applicable

regulations of the Bureau of Ocean Energy, Management, Regulation and Enforcement

---

[1]  The United States' Complaint erroneously named Anadarko Exploration & Production LP as a
defendant in this action.  The parties have stipulated and agreed to a substitution of parties with
Anadarko E&P Company LP replacing Anadarko Exploration & Production LP
(Document 1582, filed March 11, 2011).

("BOEMRE")[2] allow parties to lease exchanges and assignments to specify an effective date, if approved by BOEMRE, and in this case the agency approved the effective dates in both instances.  Moreover, AE&P was never a permittee with respect to an offshore facility in the Macondo Prospect area.  Because AE&P was neither a lessee nor a permittee at the time of the incident, the threshold allegations asserted in the Complaint fail to state a claim against AE&P.  Therefore, the United States' OPA claim against AE&P must be dismissed.[3]

Similarly, although the Complaint generally alleges that the well, well casing and wellhead that were being installed on the Macondo Prospect are an "offshore facility" for purposes of CWA liability, AE&P never had any interest at all in the well, well casing or wellhead, and was therefore not an "owner" of the alleged facility.  Moreover, because, as a matter of law, AE&P held no interest in the Macondo Prospect lease at the time of the discharge and never had any right to control oil and gas activities, it cannot be an "operator" or "person in charge" of an offshore facility to support liability under the CWA.[4]

AE&P was a Non-Operating Investor with no indicia of ownership over and no right to control any possible "offshore facility" relating to the Macondo Prospect.  Indeed, the United States is not only aware of the termination of AE&P's leasehold interests as of April 1, 2010, it

---

[2]  In June of 2010, the Minerals Management Service ("MMS") was renamed BOEMRE by Secretary Salazar through Secretarial Order No. 3302 (*available at* http://www.doi.gov/deepwaterhorizon/loader.cfm?csModule=security/getfile&PageID=35872).

[3]  AE&P reserves the right to argue that this Court lacks subject matter jurisdiction over the United States' declaratory judgment claim.

[4]  The United States does not allege specifically that AE&P was an owner, operator, or person in charge of the Deepwater Horizon, nor can it credibly do so.

in fact approved the transfer of those interests with that effective date.[5]  The United States has officially acknowledged the transfer of these interests as of April 1, 2010, and it cannot now allege that AE&P retained leasehold interests in the Macondo Prospect beyond that date. Therefore, the United States' CWA claim against AE&P fails as a matter of law, and also must be dismissed.

## FACTUAL BACKGROUND

### A.  The Macondo Prospect Lease And AE&P's Temporary Interest

In May of 2008, BP obtained Lease OCS-G 32306 from the Minerals Management Service ("MMS"),[6] pertaining to Block 252, Mississippi Canyon, located in the Gulf of Mexico. Compl. ¶¶24-25 (Case No. 10-4536, Docket No. 1) (hereinafter "Compl.").  This lease became effective June 1, 2008, and the leased area is referred to as the Macondo Prospect.  *Id.*  The lease grants BP "the exclusive right and privilege to drill for, develop, and produce oil and gas resources," which includes the non-exclusive right to conduct geological and geophysical explorations.  Lease OCS-G 32306, at 1-2.[7]

The United States, however, retained the remainder of the rights in the Macondo Prospect area:  "All rights in the leased area not expressly granted to the Lessee by the [Outer Continental Shelf Lands Act ("OCSLA")], the regulations, or this lease are hereby reserved to the Lessor."

---

[5]  *See* BOEMRE, *Serial Register Page*, Lease No. G32306 ("BOEMRE Lease Search Results"), *available at* http://www.gomr.boemre.gov/homepg/fastfacts/serialregister/srmaster.asp (enter G32306 into text box next to "Lease Number;" click "Submit Query" button).  A printout of the website is attached as Exhibit 1, and constitutes a public record.  *See infra* n.10.

[6]  Although MMS was renamed BOEMRE, since the actions at issue herein were taken at the time by the MMS, for convenience we refer to the agency by its former name.

[7]  The Lease is incorporated by reference in the United States' Complaint and relied on as support for its claims.  *See* Compl. ¶¶24-25.  It is attached hereto as Exhibit 2.

Lease OCS-G 32306 at 3 (Ex. 2).  The United States, in particular, retained the right to issue

permits to non-lessees, so long as it did not interfere with the lessee's activities, and to cancel the

lease.  *Id.*

Upon obtaining the lease, BP moved forward with its exploration activities on the

Macondo Prospect.  Compl. ¶41.  This included BP (and its affiliates) contracting with the

Transocean Defendants to begin drilling an exploratory well at and within the Macondo

Prospect.  *Id.* ¶¶40, 43.

On December 17, 2009, APC, AE&P, and BP entered into a Lease Exchange Agreement,

effective as of October 1, 2009, whereby the parties conveyed certain property interests in certain

leases on the Outer Continental Shelf ("OCS"), including the Macondo Prospect lease.  Compl.

¶29.  Pursuant to Section 2.1 of the Lease Exchange Agreement, BP transferred record title

interest in the "BP Property" to APC and AE&P.  LEA, §2.1.[8]  The "BP Property" is defined as

"an undivided twenty-five percent (25.00%) of one hundred percent (100%) Record Title Interest

in and to Lease OCS-G 32306 (Mississippi Canyon Block 252), *excluding the tangible personal*

*property, which includes the tubulars and wellhead for the Mississippi Canyon Block 252 #1*

*OCS-G 32306 well (API #6081741169)*."  *Id.* §1.4 (emphasis added).  Under the LEA, "Record

Title Interest means, as to all depths, with respect to any federal OCS oil & gas lease, the

undivided, fractional or percentage share of all right, title, and interest in such lease granted to

the original lessee (or lessees) by the MMS, including, without limitation, an equal undivided

fractional or percentage share of the operating rights in such lease."  *Id.* §1.10.

---

[8]  The Lease Exchange Agreement is incorporated by reference in the United States' Complaint
and relied on as support for its claims.  *See* Compl. ¶¶29, 83.  The Lease Exchange Agreement
and relevant exhibits are attached hereto as Exhibit 3.

Under the Lease Exchange Agreement, BP would transfer a 22.5 percent interest to AE&P and a 2.5 percent interest to APC.  LEA, §2.1, A-2 (Ex. 3).  The Lease Exchange Agreement also provided that AE&P would immediately assign its 22.5 percent interest to APC upon the transfer from BP.  *Id.* §2.2, A-2.  The Agreement is clear that the parties contemplated APC alone would ultimately hold the entire 25 percent interest in the Macondo Prospect lease, although certain AE&P lease interests were among those included in the Lease Exchange Agreement and exchanged among the parties thereto as part of a "like-kind exchange."  *Id.* at §§2.3, 4.

BP initially assigned AE&P 22.5 percent record title interest in the Macondo Prospect lease as provided in the Lease Exchange Agreement.  Compl. ¶30.  Pursuant to MMS regulations at 30 C.F.R. Part 256, Subpart J, BP filed with MMS an "Assignment of Record Title Interest in Federal OCS Oil and Gas Lease," Form MMS-150, for the transfer to AE&P, which MMS approved on February 23, 2010, and which was made effective October 1, 2009.  *Id.*[9]  On February 23, 2010, MMS also approved BP's assignment to APC of 2.5 percent record title interest in the Macondo Prospect lease, which was also made effective October 1, 2009.  *Id.* ¶31.  With the assignments to AE&P and APC complete, the Lease Exchange Agreement provided that AE&P's 22.5 percent interest would then be transferred to APC, and APC would then have a full 25 percent interest in the Macondo Prospect lease.  LEA, §2.2, A-2 (Ex. 3).

As a result, on April 15, 2010, AE&P executed an assignment of its interest in the lease to APC for approval by MMS.  *See* Assignment of Record Title Interest in Federal OCS Oil and

---

[9]  The Assignment of Record Title Interest in Federal OCS Oil and Gas Lease assigning 22.5 percent of BP's interest in the lease to AE&P is incorporated by reference in the United States' Complaint, and is relied on as support for its claims.  *See* Compl. ¶¶30, 83.  It is attached as Exhibit 4.

Gas Lease, dated Apr. 15, 2010 (referred to as "AE&P Assignment").[10]  The AE&P Assignment provided that the transfer of interest was effective April 1, 2010.  *Id.*  MMS approved this transfer of interest, including the effective date of the transfer, on April 28, 2010.  *Id.*  MMS has recognized and acknowledged in public records that AE&P no longer held any interest in the Macondo Prospect Lease, as of April 1, 2010.  *See* BOEMRE Lease Search Results, *supra* n.5 (Ex. 1).

The tragic events onboard the Deepwater Horizon occurred late in the evening of April 20, 2010.  Compl. ¶1.

## B.    BP is the Designated Operator of the Macondo Prospect Lease

The Lease Exchange Agreement also required the parties to enter into the Macondo Prospect Offshore Deepwater Operating Agreement ("Operating Agreement"), also effective as of October 1, 2009.[11]  The Operating Agreement governs the operations of the contracted area, and designated BP as the operator:

> Except as otherwise provided, the Operator has the exclusive right and duty to conduct (or cause to be conducted) all activities or operations under this Agreement.  In performing services under this Agreement for the Non-Operating Parties, the Operator is an independent contractor, not subject to the control or direction of Non-Operating Parties, except as provided in Article 8.2 *(Voting and Election Procedures)* or Article 8.5 *(Approved by Unanimous Agreement)*.

---

[10]  The AE&P Assignment is attached as Exhibit 5, and is a matter of public record.  *See Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994) ("In deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record.") (citation omitted).  In addition, the United States' Complaint references the Assignments.  Compl. ¶83.

[11]  The Operating Agreement was an exhibit to the Lease Exchange Agreement and was also incorporated by reference in the United States' Complaint and is relied on as support for its claims.  *See* Compl. ¶¶27, 35-37.  The relevant sections of the Operating Agreement are attached as Exhibit 6.

Operating Agreement, Arts. 5.1, 2.49, 4.1 (Ex. 6).  Non-Operating Parties are those parties other than the Operator.  *Id.* Art. 2.43.  Although the Complaint alleges that BP was required to obtain approval from the Non-Operating Parties for authorization of expenditure of funds and for participation in the next stage of operations, there is no allegation that BP required approval from the Non-Operating Parties to the Operating Agreement for day-to-day operations or the operations occurring onboard the Deepwater Horizon that led to the explosion and resulting spill. Compl. ¶35.  In fact, such was not the case.

The Complaint recognizes that the Non-Operating Parties had no control over, or authority to control, the drilling operations that resulted in the Deepwater Horizon incident.  The Complaint alleges that "BP contracted with one or more of the Transocean Defendants for operation and use of a MODU for, *inter alia*, the purpose of drilling wells in the federal waters of the Gulf of Mexico."  Compl. ¶ 40.  The Complaint further alleges that:  "Under this contract and its amendments, one or more of the Transocean Defendants drilled an exploratory well at and within Block 252, Mississippi Canyon, OCS Official Protection Diagram, NH 16-10."  *Id.*  There are no allegations that AE&P owned, operated or was a person in charge of the Deepwater Horizon, nor can any be credibly made.

## ARGUMENT

## I.   STANDARD OF REVIEW

"To avoid dismissal [under Rule 12(b)(6)], 'a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts, however, "do not accept as true 'conclusory allegations, unwarranted factual inferences,

or legal conclusions.'" *Id.* (quoting *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007)

(quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

In resolving a motion to dismiss, the court is generally limited to considering only those

allegations appearing on the face of the complaint.  Fed. R. Civ. P. 12(d).  However, matters of

public record, orders, items appearing in the record of the case, and exhibits attached to the

complaint may be taken into account.  *See Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d

278, 286 (5th Cir. 2006).  "Documents that a defendant attaches to a motion to dismiss are

considered part of the pleadings if they are referred to in the plaintiff's complaint and are central

to [the] claim."  *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004)

(citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)); *see also*

*In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) ("[B]ecause the

defendants attached the contracts to their motion to dismiss, the contracts were referred to in the

complaints, and the contracts are central to plaintiffs' claims, we may consider the terms of the

contracts in assessing the motions to dismiss"); *Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d

371, 374 (5th Cir. 2003) ("[T]he court may review the documents attached to the motion to

dismiss, e.g., the contracts in issue here, where the complaint refers to the documents and they

are central to the claim").

## II.   THE UNITED STATES' OPA CLAIM AGAINST AE&P SHOULD BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Pursuant to OPA, "each responsible party for a vessel or a facility from which oil is

discharged . . ." is liable for the removal costs and damages specified in subsection (b) of that

Section, which include natural resource damages, economic losses, and other enumerated

damages.  33 U.S.C. § 2702(a), (b).  The definition of "responsible party" for an offshore facility

includes "the lessee or permittee of the area in which the facility is located . . .."[12]  33 U.S.C. §2701(32).

The United States alleges that "[a]t all times material herein, at least until April 28, 2010, Defendant Anadarko Exploration was a lessee or permittee with respect to the leased area known as 'All of Block 252, Mississippi Canyon, OCS Official Protraction Diagram, NH 16-10,'" and "[a]s a result of the various agreements alleged herein and the foregoing 'Assignment(s) of Record Title Interest in Federal OCS Oil and Gas Lease' pertaining to Lease No. OCS-G 32306, the Anadarko Defendants became and remain 'responsible parties' for an 'offshore facility' within the meaning of OPA, 33 U.S.C. §§2701 *et seq.*"[13]  Compl. ¶¶80, 83.

At all times material for purposes of determining liability under OPA, however, (that is, the times when a discharge occurred) AE&P was not a leaseholder of the Macondo Prospect. Moreover, the Complaint wholly fails to make *any* factual allegations to support the conclusory statement that AE&P was a "permittee" for purposes of potential OPA liability.  As such, the Complaint fails to state a claim against AE&P under OPA, and the OPA claim must be dismissed.

### A.  AE&P is Not a "Lessee" Under OPA.

The Complaint alleges that AE&P is a "responsible party" for an "offshore facility" based on its status as a lessee with respect to the Macondo Prospect.  Compl. ¶80.[14]  The United

---

[12]  The Complaint alleges that AE&P is a responsible party with respect to an "offshore facility." Under Rule 12(b)(6), the allegations of the Complaint are taken as true, and therefore it is assumed for purposes of this motion that there is an "offshore facility" "from which oil is discharged" for purposes of OPA liability.  *See* Compl. ¶83; 33 U.S.C. §2702.

[13]  The Complaint refers to APC and AE&P as the "Anadarko Defendants."  Compl. ¶7.

[14]  Although the Complaint asserts that the Deepwater Horizon is "a vessel and/or offshore facility," the United States does not allege that AE&P is a responsible party for the Deepwater

(Continued …)

9

States approved, and in public records still acknowledges, however, that AE&P no longer held a leasehold interest in the Macondo Prospect as of April 1, 2010.  BOEMRE Lease Search Results (Ex. 1).

Under OPA, "Lessee" is defined as "a person *holding* a leasehold interest in an oil or gas lease . . . on submerged lands of the Outer Continental Shelf, granted or maintained under applicable State law or the Outer Continental Shelf Lands Act (43 U.S.C. 1331 et seq.)." 33 U.S.C. §2701(16) (emphasis added).  OPA liability stems from the discharge of oil from a vessel or facility, and thus, the relevant time frame for purposes of liability with respect to the Deepwater Horizon incident starts the evening of April 20, 2010.  *See* 33 U.S.C. §2702(a) (basing liability on connection to facility "from which oil is discharged"); *see also Quaker State Corp. v. U.S. Coast Guard*, 681 F. Supp. 280, 285 (W.D. Pa. 1988) (finding present tense under CWA indicated that relevant time frame for purposes of establishing liability was time of discovery of discharge); *Union Petroleum Corp. v. United States*, 651 F.2d 734, 744-45 (Ct. Cl. 1981) (addressing pre-OPA cleanup of oil discharges under CWA and finding liability based on "time of the discharge").  Because AE&P was not a lessee at the time of the Deepwater Horizon incident and the resulting oil discharge, it is not a responsible party under OPA.

OPA does not confer liability on former lessees, such as AE&P, where the relevant facility has not been abandoned.  The statute does not extend liability to lessees prior to the

---

(Continued …)

Horizon.  Compl. ¶¶11-12.  *Compare* Compl. ¶83 *with* ¶85.  Nor can that allegation credibly be made.  AE&P was never an owner, operator or demise charterer of the Deepwater Horizon or any of its appurtenances.  33 U.S.C. §2701(32)(A).  While the Complaint generally alleges that the well, among other things, was an offshore facility, with respect to which the United States claims AE&P is a "responsible party," AE&P does not concede there is an offshore facility for which it could be liable.  The Court, however, need not make this determination for purposes of this motion to dismiss.

discharge, or to any past holders of a leasehold interest.  *See Carr v. United States*, 130 S. Ct. 2229, 2236 (2010) ("Consistent with normal usage, we have frequently looked to Congress' choice of verb tense to ascertain a statute's temporal reach.") (citations omitted).[15]  Rather, pursuant to OPA, former lessees can only be responsible parties under limited circumstances in "the case of an abandoned . . . offshore facility," which is not the case here.  33 U.S.C. §2701(32)(F).  If former lessees who transferred their interests prior to the discharge were also liable as responsible parties, this provision would be superfluous.  *See Burnett v. Stewart Title, Inc. (In re Burnett),* -- F.3d ---, 2011 WL 754152, at *2 (5th Cir. 2011) ("[W]hen interpreting a statute, 'it is a cardinal rule that a statute is to be read as a whole, in order not to render portions of it inconsistent or devoid of meaning.'") (quoting *Zayler v. Dept' of Agric. (In re Supreme Beef Processors, Inc.)*, 468 F.3d 248, 253 (5th Cir. 2006)) (internal quotations and citation omitted); *Carrieri v. JOBS.COM, Inc.*, 393 F.3d 508, 520 n.11 (5th Cir. 2004) ("A couple of canons of construction state that a statute should be construed such that none of its terms are redundant and should be read to avoid internal inconsistency.") (citations omitted).

---

[15]  Where Congress seeks to impose liability based on a party's status as a former owner or operator, for example, Congress expressly does so.  *See* 42 U.S.C. §9607(a)(2) (imposing liability under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") on persons who "owned or operated" facility at time of a disposal); 42 U.S.C. §6972(a)(1)(B) (extending certain liability under the Resource Conservation and Recovery Act to, among others, "past or present owner or operator").  Congress did not do so under OPA.  *See Bennett v. Islamic Republic of Iran,* 618 F.3d 19, 25 (D.C. Cir. 2010) ("Where 'Congress could have phrased its requirement in language that looked to the past . . . but . . . did not choose this readily available option,' the 'most natural reading' is to construe the statute in the present (or present and future) tense.") (quoting *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 57 (1987)) (Garland, concurring); *Shlahtichman v. 1-800 Contacts, Inc.*, 615 F.3d 794, 802 (7th Cir. 2010), *cert. denied*, 131 S. Ct. 1007 (2011) (declining to extend liability under Fair and Accurate Credit Transactions Act beyond "unambiguous language of the statute").

Although the Complaint erroneously asserts that AE&P held an interest in the Macondo Prospect Lease until April 28, 2010, Compl. ¶34, MMS's approval of the lease assignment explicitly provided that AE&P owned no interest in the lease at the Macondo Prospect as of April 1, 2010.  Under the Lease Exchange Agreement, the interest transferred to APC and AE&P in the Macondo Prospect lease was to be consolidated with APC.  LEA, §2.2, A-2 (Ex. 3).  Accordingly, AE&P prepared a Form MMS-150 to assign the 22.5 percent interest it received from BP in the Macondo Prospect lease to APC, which was executed April 15, 2010.  AE&P Assignment (Ex. 5).  The assignment sent to the MMS Adjudication Unit stated:  "This assignment of Record Title Interest will be made effective between the parties hereto *as of April 1, 2010*, upon approval by the Minerals Management Service, United States Department of the Interior."  *Id.* (emphasis added).  The MMS Adjudication Unit approved it on April 28, 2010. *Id.*  Notwithstanding the date on which MMS approved the assignment, MMS' OCSLA regulations provide that AE&P's lessee status at the Macondo Prospect terminated as of April 1, 2010:  "Any approved assignment shall be deemed to be effective on the first day of the lease month following its filing in the appropriate office of the MMS, *unless at the request of the parties, an earlier date is specified in the approval*."  30 C.F.R. § 256.62(c) (emphasis added).[16] Such assignor/assignee requests and agency approvals of earlier effective dates are authorized by the regulations, and are common.  Indeed, as described above, BP utilized an earlier effective date when it first transferred partial lease interests to APC and AE&P, which similarly were approved by MMS.

---

[16]  With respect to the OCS, OCSLA directs the Secretary of the Interior to administer leasing and adopt regulations, among other things, "for the assignment . . . of a lease."  43 U.S.C. §1334(a)(3).  These regulations are found at 30 C.F.R. §256.62, and define who "holds" lease interests when there is an assignment.

In addition, while the United States in its Complaint now tries to allege otherwise, MMS continues to publicly acknowledge that AE&P's lessee status at the Macondo Prospect ended April 1, 2010.  Consistent with the provisions of 30 C.F.R. §256.62(c) and its approval of the assignment, public records maintained by MMS (attached as Exhibit 1) regarding lessee information for Lease OCS-G32306 (MC 252) confirm that AE&P no longer had any interest in the lease as of April 1, 2010, stating:

> Record title interest is *now held as follows, effective 04/01/2010*:

|  |  |
|---|---|
| BP Exploration & Production Inc. | 65.00000 % |
| Anadarko Petroleum Corporation | 25.00000 % |
| MOEX Offshore 2007 LLC | 10.00000 % |

(Emphasis added.)  Thus, MMS approved and recorded the April 1, 2010 effective date of the assignment to APC, and the United States cannot now pretend the transfer of interest did not occur until April 28, 2010.  By operation of law under the plain terms of MMS's assignment regulations, and as reflected in MMS's official records, AE&P terminated its lease interests on April 1, 2010, before the April 20, 2010 date of the Deepwater Horizon incident.  AE&P, therefore, was not a lessee "at all times material herein."

As such, this case is distinguishable from *In re Settoon Towing LLC*, 722 F. Supp. 2d 710 (E.D. La. 2010), in which this Court found a sole leaseholder at the time of incident could not transfer its OPA liability via a retroactive effective date of an assignment of interests in the applicable State Lease.  *Id.* at 714.  That case involved a barge striking a well on the leased area occurring on January 20, 2007, which resulted in an oil discharge.  *Id.* at 711-12.  The sole leaseholder executed an assignment of its interests almost eight months *after* the discharge on September 9, 2007, retroactive to August 1, 2006, which was subsequently approved by the Louisiana Mineral Board.  *Id.* at 712.  Unlike in *Settoon Towing*, however, AE&P assigned its

13

interest on April 15, 2010, which was consistent with the December 2009 Lease Exchange

Agreement, *prior* to the incident potentially giving rise to OPA liability. Thus, AE&P never had

any OPA liability for the Deepwater Horizon incident, and the OPA claim against AE&P fails as

a matter of law.

###### B.      AE&P Is Not A "Permittee" Under OPA.

OPA defines the term "permittee" as "a person holding an authorization, license or permit

for geological exploration issued under section 11 of the Outer Continental Shelf Lands Act

(43 U.S.C. 1340) or applicable State law . . .."[17]  33 U.S.C. §2701(28).  Although the Complaint

makes the unsupported allegation that AE&P is liable as a lessee *or permittee*, the Complaint

fails to allege *any* facts concerning geological exploration activities taking place on the Macondo

Prospect pursuant to a Section 11 OCSLA permit, much less that AE&P held such permit.  And

again, the United States cannot do so.

Rather, the Complaint alleges that the relevant activities occurred pursuant to *a lease.*

Compl. ¶¶24-27, 41.  While the Complaint alleges that AE&P is a lessee or a permittee, these are

mutually exclusive terms because lessees cannot also be permittees.  Section 11 of OCSLA

allows for the authorization of "geological and geophysical explorations in the outer Continental

Shelf, which do not interfere with or endanger actual operations under any lease maintained or

granted pursuant to this Act, and which are not unduly harmful to aquatic life in such area."

43 U.S.C. §1340(a)(1).  OCSLA Section 11 also states that the permit provisions under this

paragraph (a)(1) do "not apply to any person conducting explorations pursuant to an exploration

plan on any area under lease to such person pursuant to the provisions of this subchapter."  *Id.*

---

[17]  The "or applicable State law" language in OPA is inapplicable here because the Macondo
Prospect is on the federally managed OCS.

§1340(a)(2).  As a result, none of the lessees associated with the Macondo Prospect lease were required to obtain a Section 11 OCSLA permit and, therefore, none, including AE&P, could be a "permittee" for purposes of OPA liability.

MMS regulations implementing the geological and geophysical ("G&G") exploration authority in 43 U.S.C. §1340 confirm that lessees cannot be permittees under OSCLA Section 11.  First, 30 C.F.R. § 251.2 states that the purpose of this part is "[t]o allow you to conduct G&G activities in the OCS related to oil, gas, and sulphur *on unleased lands or on lands under lease to a third party*."  (Emphasis added.)  Second, the term "permit" specifically excludes authorization to conduct geological exploration under a lease.  30 C.F.R. §251.1 (defining "permit" as "the contract or agreement, *other than a lease*, issued pursuant to this part, under which a person acquires the right to conduct on the OCS, in accordance with appropriate statutes, regulations, and stipulations: (1) Geological exploration for mineral resources . . ..") (emphasis added).  Finally, "permittee" means "the person authorized by a permit issued pursuant to this part to conduct activities on the OCS."  *Id.*; *see also* 30 C.F.R. §251.3(a) ("This part does not apply to G&G exploration conducted by or on behalf of the lessee on a lease in the OCS.").  Therefore, once the Macondo Prospect lease was issued, the leaseholders could not become permittees for purposes of conducting geological exploration under OCSLA and the MMS regulations.  Thus, as a matter of law, AE&P could not be a "permittee" under the OPA definition because it was ineligible to obtain a permit under OCSLA, 43 U.S.C. §1340, for the area covered by the Macondo Prospect lease.

Although AE&P ceased being a lessee as of April 1, 2010, the Complaint does not allege that AE&P ever held such a permit either before or after this time.  Indeed, AE&P never itself

conducted any exploration activities on the Macondo Prospect, and no such activities could have

occurred after the Deepwater Horizon incident.

Because AE&P was not a "lessee" at the time of the discharge, and could not be a

"permittee," the Complaint fails to state a claim under OPA and must be dismissed.

## III.   THE UNITED STATES' CWA CLAIM AGAINST AE&P SHOULD BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

### A.   The Complaint Fails to Allege Specific Facts Sufficient to Support Its CWA Claims.

To state a claim for relief, a plaintiff must "plead[] factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*,

129 S. Ct. at 1949.  General, undifferentiated allegations fail to satisfy the notice pleading

requirement of Rule 8, and require dismissal for that reason alone.  *See Magluta v. Samples*,

256 F.3d 1282, 1284 (11th Cir. 2001) (dismissing complaint where there was no differentiation

between defendants, geographic and temporal realities made complaint factually impossible, and

all defendants were named in each count); *Pro Image Installers, Inc. v. Dillon*,

No. 3:08CV273/MCR/MD, 2009 WL 112953, at *2 (N.D. Fla. Jan. 15, 2009) (dismissing

complaint where claims were alleged against multiple defendants with very little in each count to

distinguish between the separate defendants); *Lane v. Capital Acquisitions & Mgmt. Co.*, No. 04-

60602CIV, 2006 WL 4590705, at *5 (S.D. Fla. Apr. 14, 2006) ("By lumping all the defendants

together in each claim and providing no factual basis to distinguish their conduct, the Lane's

Complaint fails to satisfy the minimum standard of Rule 8.").  The United States' Complaint in

this case is replete with conclusory allegations against each "Defendant" without referring to any

particular entity or alleging any facts.  *See* Compl. ¶¶48-56, 69.  That lack of notice is

particularly apparent here because, as discussed further below, the Complaint's allegations that

do relate specifically to AE&P do not allege any particular conduct that establishes AE&P is liable under the CWA.

Although Federal Rule of Civil Procedure 8(d)(2) allows a party to set out a claim alternatively, the United States' Complaint fails to specify what allegations support its claims that AE&P is an "owner, operator, and/or person in charge of an offshore facility" for purposes of CWA liability.  Compl. ¶72.  The Complaint also asserts that such was the case "[a]t all times material herein."  *Id.*  Because CWA extends liability to *discharges*, the only material times with respect to the CWA claim are after the April 20, 2010 incident, when the United States alleges oil was discharged from (a) the Macondo Well and its associated equipment and (b) the Deepwater Horizon and its appurtenances.[18]  *Id.* ¶61.  The specific allegations regarding AE&P's connection to the Macondo Well and its equipment, however, relate to AE&P's alleged leasehold interest in the Macondo Prospect.  *Id.* ¶¶26, 29-30, 32-33.  But, as explained above, as a matter of law AE&P no longer held any leasehold interest at the time of the discharge.  The Complaint makes no allegations that connect AE&P to the Deepwater Horizon or its operations for purposes of CWA liability, nor can it.

The Complaint then makes no allegations that purportedly support a finding that AE&P is an owner, operator or person in charge under the CWA.  As such, the CWA claim against AE&P must also be dismissed.

**B.     AE&P's Limited and Temporary Leasehold Interest is Insufficient to Establish "Owner" Liability Under The CWA.**

Because, as explained above, AE&P transferred its interest in the Macondo Prospect lease as of April 1, 2010, it also is not an "owner" for purposes of the CWA.  But, even if it

---

[18]  For purposes of this motion, these factual allegations are taken as true.

retained such an interest, that alone would not be sufficient to constitute "owner" liability under the Act.

> **1.      AE&P did not obtain title to the well, well casing or wellhead, and therefore was not an "owner" under the CWA.**

The United States alleges:  "At all times material herein, the Anadarko Defendants were each an owner, operator, and/or a person in charge of, *inter alia*, the well, the well casing, and the well head, with respect to the matters sued upon herein.  The Anadarko Defendants were each an owner, operator, and/or person in charge of an offshore facility within the meaning of the CWA, 33 U.S.C. § 1321(b)(7)."  Compl. ¶72.  With respect to AE&P's potential liability under the CWA, therefore, the United States appears to contend that the well, well casing or wellhead is the applicable "offshore facility."  Even assuming the Complaint adequately alleges a relevant "offshore facility" for CWA liability purposes, however, because AE&P never obtained an "ownership" interest in the well, well casing or wellhead, it was never an "owner" of an "offshore facility" under the CWA.

The CWA defines "owner or operator" of an offshore facility as "any person owning or operating such . . . offshore facility."  33 U.S.C. §1321(a)(6).  This definition is circular, and courts have looked to the plain meaning of the terms in the context of other environmental statutes using the same or similar definitions, such as the CERCLA.  *See United States v. Bestfoods*, 524 U.S. 51 (1998); *Commander Oil Corp. v. Barlo Equip. Corp.*, 215 F.3d 321 (2d Cir. 2000); *Edward Hines Lumber Co. v. Vulcan Materials Co.*, 861 F.2d 155 (7th Cir. 1988).  In the CERCLA context, owner has been defined as "one that has the legal or rightful title whether the possessor or not."  *Commander Oil Corp.*, 215 F.3d at 327 (quoting Webster's Third New

International Dictionary of the English Language Unabridged 1612 (1981))[19]; *New York v. Westwood-Squibb Pharm. Co.*, 138 F. Supp. 2d 372, 387 (W.D.N.Y. 2000) ("[T]his court finds that if the term 'owner' is to mean anything at all, its meaning must extend to those parties holding legal title to property.") (citations omitted).  Here, AE&P never obtained any "legal or rightful title" to the well, well casing or wellhead.

The Lease Exchange Agreement between BP, APC and AE&P transferred "Record Title Interest" in BP Property.  LEA, §2.1, A-2 (Ex. 3).  The Agreement defined the BP Property, however, to only include a 25 percent interest in the lease, *excluding* "the tangible personal property, which includes the tubulars and wellhead for the Mississippi Canyon Block 252 #1 OCS-G 32306 well (API #6081741169)."[20]  *Id.*, §1.4.  No property interest in the well, well casing and wellhead, therefore, was transferred to AE&P.  Thus, to the extent that the United States contends the well, well casing and wellhead are an "offshore facility," AE&P did not receive any interest in the "offshore facility," and is therefore not an "owner" under the CWA.

---

[19]  The Second Circuit also referenced the definition in Black's Law Dictionary, which it found "equivocates between titular and possessory owner, defining an owner variously as '[o]ne who has the right to possess, use, and convey something,' and as '[o]ne who has the primary or residuary title to property.'"  *Commander Oil Corp.*, 215 F.3d at 327 (quoting Black's Law Dictionary 1130 (7th ed. 1999)).

[20]  The Lease Exchange Agreement provides it is governed by Texas law, subject to choice of law under OCSLA.  LEA, §17.5 (Ex. 3).  Texas property law indicates that "surface equipment used for the production, exploration, and production of oil and gas is considered personal property," and looks to the contract assigning the rights to determine ownership.  *United States v. Viking Res., Inc.*, 607 F. Supp. 2d 808, 819 (S.D. Tex. 2009) (citations omitted).  The Lease Exchange Agreement exempted personal property from any conveyance as part of the BP Property.  LEA §§1.4, 2.1 (Ex. 3).  With respect to AE&P, the Lease Exchange Agreement trumps any exhibits and other relevant agreements, including the Operating Agreement and the assignment to AE&P.  *Id.* §§21, 24.  The BP Assignment to AE&P recognizes that the Lease Exchange Agreement controls "[s]hould any terms of this Assignment conflict with the terms" of that Agreement (Ex. 4).

> ## 2. An interest in the "lease" is insufficient to constitute "ownership," and in any event that interest was transferred prior to the discharge.

As explained above, BP initially assigned a 22.5 percent interest in the Macondo Prospect lease to AE&P.  But AE&P transferred its leasehold interest prior to the Deepwater Horizon incident.  Although some courts have looked beyond legal title and have considered ownership as "represent[ing] a priority of rights and claims and not a concrete status," *e.g., Commander Oil Corp.*, 215 F.3d at 329, the CWA does not extend liability to "lessees" of the offshore areas, only to "owners" of offshore facilities.  Thus, even if AE&P had held a leasehold interest on the Macondo Prospect on April 20, 2010, which it did not, such an interest standing alone is insufficient to support "owner" liability under the CWA.  Therefore, AE&P's temporary leasehold interest in the Macondo Prospect area did not convey an ownership interest in the well, well casing or wellhead for purposes of imposing "owner" liability under the CWA.

The CWA imposes liability on, *inter alia*, the owner of an "offshore facility."  OPA defines "offshore facility" in the same manner as the CWA.  *Compare* 33 U.S.C. §1321(a)(11), *with* 33 U.S.C. §2701(22).  Although "facility" is not defined under the CWA, the Macondo Prospect area itself cannot be the "offshore facility" in this case.[21]  As an initial matter, the "owner" of the Macondo Prospect area is the United States.  And while OPA extends liability to the "lessee" of the area in which the offshore facility is located, 33 U.S.C. §2701(32)(C), liability under the CWA focuses instead on the "owner" of the "facility."  Thus, a leasehold interest in the geographic area of a discharge is not a basis for establishing liability under the CWA.  Rather,

---

[21]  OPA defines "facility" as "any structure, group of structures, equipment, or device (other than a vessel) which is used for one or more of the following purposes:  exploring for, drilling for, producing, storing, handling, transferring, processing, or transporting oil."  33 U.S.C. §2701(9); *see also* 30 C.F.R. §254.6.  *Cf.* 42 U.S.C. §9601(9) (defining "facility" for purposes of CERCLA liability to include, among other things, "any site or area where a hazardous substance has . . . otherwise come to be located").

CWA liability is based on ownership interests in an "offshore facility," which, as explained above, AE&P never obtained.

Even if the Macondo Prospect area could be considered a "facility," any leasehold interest obtained by AE&P in the Macondo Prospect area is insufficient to consider it an "owner" of an offshore facility, because it did not obtain any indicia of ownership.  Under OCSLA, the subsoil and seabed of the OCS appertain to the United States.  43 U.S.C. §1331(a).  The United States issued a lease with respect to the Macondo Prospect area, but the lease only provided exclusive rights to conduct oil and gas exploration and production activities.  *See United States v. Burlington Resources Oil and Gas Co. L.P.*, No. 2:05CV 1395, 2007 WL 773716, at *4 (W.D. La. Mar. 9, 2007) ("'Ownership is the right that confers on a person direct, immediate, and exclusive authority over a thing.  The owner of a thing may use, enjoy, and dispose of it within the limits and under the conditions established by law.'") (quoting La.C.C. art. 477); *see also City of Los Angeles v. San Pedro Boat Works*, --F.3d ---, 2011 WL 855858, at *6-9, n.10 (9th Cir. 2011) (finding holder of revocable permit to use real property was not "owner" under CERCLA and suggesting, "without deciding, that Congress intended to limit 'owner' liability to those individuals possessing all of the proverbial 'sticks in the bundle of rights,' including fee title to the real property.").  Here the United States, as the lessor, retains authority over the leased area, must approve transfers of interests under the lease, and can cancel the lease.  The lease extended only limited rights to oil and gas exploration and production activities, and BP was the designated operator for any such activities occurring in the area.  Any interest in the lease, therefore, did not extend an indicia of ownership over the Macondo Prospect or any arguable offshore facility located thereon to AE&P.

Regardless, the Court need not resolve this issue to grant AE&P's motion to dismiss, as any limited rights under the Macondo Prospect lease that may have been transferred to AE&P were transferred prior to the alleged discharges.  *See, supra* Section II.A.  Courts have construed the CWA as defining liable parties based on the time of the discharge or discovery of the discharge.  *See Quaker State Corp.*, 681 F. Supp. at 285; *see also Service Oil, Inc. v. EPA*, 590 F.3d 545, 551 (8th Cir. 2009) (finding EPA's authority to issue administrative penalties under 33 U.S.C. §1319(g) based on *discharges*).  Because AE&P's assignment was both executed and made effective before the Deepwater Horizon incident, AE&P did not hold any leasehold interest at the time of the discharge, which the Complaint alleges occurred on April 20, 2010.  Compl. ¶1.  Thus, AE&P was not a lessee at the time of the discharge, and it cannot be an "owner" under the CWA.

### 3.    AE&P had no ownership interest in the Deepwater Horizon.

The Complaint does not allege that AE&P has liability associated with the Deepwater Horizon and its appurtenances.  *See, supra* n.14.  Nor can it.

It is unclear whether the United States alleges that the Deepwater Horizon, including its appurtenances, is a "vessel" or an "offshore facility" under the CWA.  *See* Compl. ¶¶11, 71, 74. Under the plain language of the CWA, it cannot be both.  "Vessel" under the CWA is defined as "*every description* of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water, other than a public vessel."  33 U.S.C. §1321(a)(3) (emphasis added).  The definition of offshore facility, on the other hand, excludes all "vessels."  *Id.* §1321(a)(11).  The Deepwater Horizon, including its appurtenances, therefore, is a "vessel" for purposes of the CWA, and the Complaint makes no allegations that AE&P is an owner, operator or person in charge of any vessel.

Even if the Deepwater Horizon could be considered an "offshore facility" under the CWA, the Complaint appropriately recognizes that "[a]t all times material herein, the Transocean Defendants were each an owner, operator, and/or person in charge of the *Deepwater Horizon*, including the BOP stack, the marine riser and associated piping, and other equipment . . .." Compl. ¶74; *see also id.* ¶85. "The Transocean Defendants admit that one or more of the Transocean Defendants were the managing owners, owners *pro hac vice*, and/or operators of the *Deepwater Horizon*." Transocean Defendants' Answer to the United States of America's Compl. ¶¶19-22, 74, 85 (Docket No. 1420). AE&P had no ownership interest in the Deepwater Horizon or any of its appurtenances, and the Complaint makes no such allegation.

Thus, the Complaint identifies no "vessel" or "facility" for which AE&P was an "owner" under the CWA. The United States' CWA claim against AE&P cannot be maintained based on alleged ownership liability.

### C.     AE&P Was Not an "Operator" or "Person in Charge" of an Offshore Facility For Purposes of Liability Under The CWA.

While the Complaint alleges undifferentiated liability seemingly under all possible bases of the CWA, the only connection AE&P had to the Macondo Prospect was the temporary leasehold interest in the Macondo Prospect lease. Having had no control over the Deepwater Horizon and having terminated its leasehold interest as of April 1, 2010, AE&P had no connection to the drilling operations occurring on the Macondo Prospect that resulted in the discharge of oil and, therefore, also cannot be an "operator" or a "person in charge" under the CWA. *See City of Waco v. Schouten*, 385 F. Supp. 2d 595, 600 (W.D. Tex. 2005), *clarified on denial of reconsideration*, 2005 WL 2757262 (W.D. Tex. Oct. 24, 2005) (finding, under CERCLA, that operator liability "only attaches if the defendant had authority to control the cause of the contamination *at the time the hazardous substances were released into the environment*")

(quoting *Geraghty and Miller, Inc. v. Conoco Inc.*, 234 F.3d 917, 928 (5th Cir. 2000)) (emphasis

added, internal citations omitted).  As such, the Complaint fails to state a claim for "operator" or

"person in charge" liability under the CWA.

> **1.  The Complaint fails to allege any facts to support a finding of "operator" liability under the CWA.**

At the time of the incident, an exploratory well was being drilled on the Macondo

Prospect and was undergoing operations for temporary abandonment.  Compl. ¶¶41-46.  The

Complaint alleges that the Deepwater Horizon was "installed on and/or attached to the seafloor

of the Outer Continental Shelf, purportedly for purposes of, *inter alia*, operation of the Macondo

Well, including well control."  *Id*. ¶46.  Putting aside the issue that AE&P terminated its lease

interest prior to the Deepwater Horizon incident, the Complaint nonetheless fails to state a claim

for "operator" liability because it wholly fails to make any factual allegations that AE&P

participated in the operations of the Deepwater Horizon or the drilling activities occurring on the

Macondo Prospect, nor can it credibly do so.  As such, the United States' Complaint fails to state

a claim for operator liability under the CWA.

For purposes of CWA liability associated with the Deepwater Horizon spill, the relevant

operations were the drilling activities being conducted on the Deepwater Horizon at the

Macondo Prospect area that resulted in the oil discharge.  *See Bestfoods,* 524 U.S. at 66 (finding,

under CERCLA, "an operator must manage, direct, or conduct operations specifically related to

pollution"); *Commander Oil Corp.*, 215 F.3d at 328 (same); *Harris v. Oil Reclaiming Co.*, 94 F.

Supp. 2d 1210, 1213 (D. Kan. 2000) (following *Bestfoods* to find defendant was not operator

under OPA where "plaintiffs have failed to make any showing with respect to [defendant's]

active control of the facility's environmental operations"); *Stearns & Foster Bedding Co. v.*

*Franklin Holding Corp.*, 947 F. Supp. 790, 806-07 (D. N.J. 1996) (finding day-to-day

management over operations of facility required to establish "operator" liability under

CERCLA); *Beartooth Alliance v. Crown Butte Mines*, 904 F. Supp. 1168, 1175 (D. Mont. 1995)

(finding, under CWA, "[a]n entity is an operator of a facility where it has the power or capacity

to (i) make timely discovery of discharges, (ii) direct the activities of persons who control the

mechanisms causing the pollution, and (iii) prevent and abate damage").  The Complaint wholly

fails to allege that AE&P had any involvement or control over the drilling operations and,

therefore, the well, well casing or wellhead.

Rather, the Complaint, taking its allegations as true, makes clear that BP and the

Transocean defendants are the "operators" of the offshore facility.  The Complaint alleges that

BP and the Transocean defendants conducted the operations aboard the Deepwater Horizon.

Compl. ¶¶40, 43-45.  It also recognizes that the Operating Agreement "designated BP as the

operator and local agent" under the lease.  *Id*. ¶38.  *See United States v. Warner Bros. Well

Drilling, Inc.*, No. 89-5494, 899 F.2d 15, 1990 WL 37610, at *4 (6th Cir. Apr. 3, 1990) (finding,

based on "ordinary sense" of term "operator," drilling company performing deepening of well

that resulted in oil spill was "operator" under CWA and liable for response costs under 33 U.S.C.

§1321(f)).

In fact, the Operating Agreement cited by the Complaint provides that the non-operating

investors have no right to control BP's activities, and BP is considered an "independent

contractor."  Operating Agreement, Art. 5.1 (Ex. 6).  Similarly, Article 22.1 provides that the

"obligations, duties and liabilities of the Parties under this Agreement are several and not joint or

collective, and . . . *nothing in this Agreement shall be construed to create a partnership, joint

venture, association, or other form of business entity* recognizable in law for any purpose."  *Id*. at

130 (emphasis added).  As such, AE&P, a non-operating investor, had no control over the

general operations conducted by BP or the ability to direct BP personnel.  *See Fruge v. Parker Drilling Co.*, 337 F.3d 558, 564 (5th Cir. 2003) ("Operational control exists only if the principal has direct supervision over the step-by-step process of accomplishing the work, such that the contractor is not entirely free to do the work in his own way.") (citations omitted); *Landry v. Huthnance Drilling Co.*, 889 F.2d 1469, 1472 (5th Cir. 1989) (finding no "operational control" where contractor was free to conduct activity "in its own way"); *Stearns & Foster Bedding Co.*, 947 F. Supp. at 808 (finding secured creditor that does not take management role in facility is not "operator" under CERCLA).  Put simply, under the Operating Agreement AE&P never had authority to manage, direct or conduct operations aboard the Deepwater Horizon that resulted in the discharge, and the Complaint does not allege AE&P actually did so.  Nor can it.  Thus, even disregarding for purposes of this argument that AE&P's leasehold interest terminated April 1, 2010, AE&P had no control over the drilling operations and, therefore, cannot be an operator under the CWA.

### 2.  AE&P was not a "Person in Charge" of an offshore facility.

The United States' Complaint also makes the legal assertion, again without any factual support whatsoever, that AE&P was a "person in charge" of an offshore facility.  Although the CWA does not define "person in charge," the U.S. Environmental Protection Agency has indicated that:  "case law under § 311 suggests that the term 'person in charge' includes natural persons who occupy positions of responsibility and power at a facility (as opposed to 'mere employees') or who are responsible for the operation of a facility."  EPA Mem., *Final Guidance on the Issuance of Administrative Orders Under Section 311(c) and (e) of the Clean Water Act*, at 12 n.19 (July 1, 1997), *available at* http://www.epa.gov/compliance/resources/policies/cleanup/oil/cwaguide.pdf (citing *United States v. Mobil Oil Corp.*, 464 F.2d 1124, 1128 (5th Cir. 1972); *Apex Oil Co. v. United States*,

530 F. 2d 1291, 1294 (8th Cir.), *cert. denied*, 429 U.S. 827 (1976)).  Although courts have found

that "person in charge" also includes a corporation, *id.*, as described further above, AE&P did

not hold a position of "responsibility and power" and was not "responsible for the operation" of

the Deepwater Horizon's drilling operations.

Courts have noted the substantial overlap between persons in charge and owners/

operators.  *See Mobil Oil Corp.*, 464 F.2d at 1127 (finding owner/operator of plant from which

oil had been discharged into nearby creek was a "person in charge"); *see also Sierra Club, Inc. v.

Tyson Foods, Inc.*, 299 F. Supp. 2d 693, 716 (W.D. Ky. 2003) (acknowledging that "in most

cases an owner or operator will quality as a 'person in charge,' this determination will depend on

the nature and degree of control the person has over the facility in question").  Although it is

impossible from the threadbare Complaint to determine which factual allegations the United

States purports are sufficient to establish "person in charge" liability, none of the allegations with

respect to AE&P alleges that AE&P was a "person in charge" of the operations at the Macondo

Prospect.  In fact, AE&P (1) transferred its rights under the lease prior to the Deepwater Horizon

incident, (2) in any event never had any rights to control oil and gas activities on the Macondo

Prospect, and (3) was not the designated operator.  Hence, the United States likewise fails to

state a claim for purposes of CWA liability under a "person in charge" theory.

## IV.   NEITHER CWA NOR OPA LIABILITY IS A "LEASE OBLIGATION" THAT EXTENDS BEYOND THE EFFECTIVE DATE OF AN ASSIGNMENT.

The Complaint also alleges, as co-lessee, AE&P was subject to the requirements of 30

C.F.R. Part 250, Subpart D.  Compl. ¶39 (citing 30 C.F.R. §250.400 and regulations specified

therein).  Again, these requirements were inapplicable to AE&P at the time of the Deepwater

Horizon incident, because it ceased being a co-lessee, as of April 1, 2010.

As described above, MMS regulations expressly allow parties to a lease assignment to determine the date by which a party ceases being a co-lessee -- that is, the effective date of the assignment approved by MMS.  30 C.F.R. §256.62(c).  While the MMS assignment regulations further provide that the assignor remains liable for "all obligations that *accrue under your lease* before the date that the Regional Director approves your request for assignment of the record title in the lease," this relates only to obligations *under the lease*, and does not extend to liability that may arise under other statutes.  30 C.F.R. §256.62(d) (emphasis added).  Any such accured lease obligations must be consistent with the scope of MMS's leasing authority, and MMS has no authority to impose upon assignors additional obligations or liability under other statutes administered by other agencies, and not MMS.

Therefore, by its terms, 30 C.F.R. §256.62(d) does not extend to any responsibilities or potential liability beyond those accruing under an OCSLA lease.  Moreover, this provision has no effect on the operation of 30 C.F.R. §256.62(c), terminating AE&P's interest in the Macondo Prospect lease effective April 1, 2010.

The CWA does not extend liability to "lessees," much less former lessees.  OPA liability extends to former lessees only with respect to certain abandoned facilities, which is not the case here.  33 U.S.C. §2701(32)(F).  In fact, extending OPA liability to prior lessees in this case, as the United States attempts to do, would render the specific provisions in OPA relating to former lessees superfluous, *see Carrieri*, 393 F.3d at 520 n.11, and would be an impermissible reading of the statute.  Thus, the claims against AE&P under the CWA and OPA must be dismissed.

## <u>CONCLUSION</u>

Because AE&P no longer held any interests in the Macondo Prospect lease and did not otherwise have any control over the drilling operations that resulted in the Deepwater Horizon incident and resulting spill, it cannot be a responsible party under OPA, nor an owner, operator

or person in charge of any offshore facility under the CWA.  Thus, the United States' Complaint as to AE&P must be dismissed.

Respectfully submitted,

BINGHAM McCUTCHEN LLP

_____/s/ James J. Dragna_____
James J. Dragna
jim.dragna@bingham.com
Bingham McCutchen LLP
355 South Grand Avenue
Suite 4400
Los Angeles, California 90071-3106
Telephone (213) 680-6436
Facsimile (213) 680-8636

Ky E. Kirby
ky.kirby@bingham.com
Michael B. Wigmore
michael.wigmore@bingham.com
Sandra P. Franco
s.franco@bingham.com
Randall M. Levine
randall.levine@bingham.com
2020 K Street, NW
Washington, DC 20006-1806
Telephone (202) 373-6000
Facsimile (202) 373-6001

KUCHLER POLK SCHELL
WEINER & RICHESON, LLC

Deborah D. Kuchler, T.A. (La. Bar No. 17013)
dkuchler@kuchlerpolk.com
Janika Polk (La. Bar No. 27608)
jpolk@kuchlerpolk.com
Robert Guidry (La. Bar No. 28064)
rguidry@kuchlerpolk.com
1615 Poydras Street, Suite 1300
New Orleans, LA  70112
Tel:  (504) 592-0691
Fax:  (504) 592-0696

Dated:  April 4, 2011

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that the above and foregoing has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and the foregoing was also electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 4th day of April, 2011.

/s/ James J. Dragna
James J. Dragna

A/74022945.3