EXHIBIT 3

In Support of

Memorandum of Law in Support of Motion of Defendant Anadarko E&P Company LP to
Dismiss the Complaint of the United States Pursuant to Federal Rule of Civil Procedure 12(b)(6)

# LEASE EXCHANGE AGREEMENT

This Lease Exchange Agreement (this "Agreement") is made and entered into the 1st day of October, 2009, by and between the Parties identified below:

**"BP"** BP Exploration & Production Inc.
200 WestLake Park Blvd.
Houston, TX 77079
Contact: Mr. Kemper Howe
Phone: (281) 366-1278
Fax: (281) 366-7569

**"APC"** Anadarko Petroleum Corporation
1201 Lake Robbins Drive
The Woodlands, TX 77380
Contact: Mr. Jim Bryan
Phone: (832) 636-8831
Fax: (832) 636-8059

**"AEP"** Anadarko E&P Company LP
1201 Lake Robbins Drive
The Woodlands, TX 77380
Contact: Mr. Jim Bryan
Phone: (832) 636-8831
Fax: (832) 636-8059

In this Agreement, the entities listed above are sometimes referred to individually as a "Party" and collectively as the "Parties." BP, AEP and APC hereby agree to a conveyance of certain property interests in the federal OCS oil and gas leases described in Exhibit "A-1" according to the following terms and conditions:

1. **DEFINITIONS:** As used in this Agreement, the initially capitalized terms listed below have the following meanings:

   1.1 **Affiliate:** shall have the meaning given to such term in the Macondo Operating Agreement.

   1.2 **Agreement:** means this Lease Exchange Agreement together with the Exhibits attached hereto and defined herein.

   1.3 **Assignment:** means the conveyance of Record Title Interest substantially similar in form to the form of Assignment attached hereto as Exhibit "B" to be executed and delivered between the Parties pursuant to this Agreement along with any "Designation of Operator Forms" and other applicable instruments, documents or forms to be executed by the Parties that are reasonably necessary to carry out the intent and purposes of this Agreement.

*625532*

CONFIDENTIAL

ANA-MDL-000030651

1.4   **BP Property:** means an undivided twenty-five percent (25.00%) of one hundred percent (100%) Record Title Interest in and to Lease OCS-G 32306 (Mississippi Canyon Block 252), excluding the tangible personal property, which includes the tubulars and wellhead for the Mississippi Canyon Block 252 #1 OCS-G 32306 well (API #6081741169).

1.5   **AEP Property:** means an undivided twenty-five percent (25.00%) of one hundred percent (100%) Record Title Interest in and to Lease OCS-G 31855 (Keathley Canyon Block 27); an undivided twenty-five percent (25.00%) of one hundred percent (100%) Record Title Interest in and to Lease OCS-G 32462 (Garden Banks Block 994); and an undivided twenty-five percent (25.00%) of one hundred percent (100%) Record Title Interest in and to Lease OCS-G 32463 (Garden Banks Block 995).

1.6   **APC Property:** means an undivided fifty percent (50.00%) of one hundred percent (100%) Record Title Interest in and to Lease OCS-G 31214 (Keathley Canyon Block 140).

1.7   **Effective Date:** means October 1, 2009, the Effective Date of the Assignments.

1.8   **Exhibits:** means the following exhibits to this Agreement, which are attached hereto and made part hereof for all purposes:

| | |
|---|---|
| Exhibit "A-1" | Description of Assigned Leases |
| Exhibit "A-2" | Interests of the Parties |
| Exhibit "B" | Form of Assignment |
| Exhibit "C" | Dispute Resolution Procedure |

1.9   **MMS:** means the U.S. Department of the Interior, Minerals Management Service, and the records maintained at the New Orleans, Louisiana, Regional Office of that agency, or any successor agency having jurisdiction over either the AEP Property, the APC Property or the BP Property.

1.10   **Record Title Interest:** means, as to all depths, with respect to any federal OCS oil & gas lease, the undivided, fractional or percentage share of all right, title, and interest in such lease granted to the original lessee (or lessees) by the MMS, including, without limitation, an equal undivided fractional or percentage share of the operating rights in such lease.

Lease Exchange Agreement
BP / AEP/ APC

 ANA-MDL-000030652

2. **CONVEYANCE OF PROPERTIES.**   The conveyance of the properties as contemplated herein, and the subsequent disposition thereof, shall be in accordance with the following:

   2.1 **Conveyance of the BP Property, the AEP Property and the APC Property:**   Contemporaneous with the execution of this Agreement, AEP and APC will assign and convey the AEP Property and the APC Property, respectively, to BP in exchange for the BP Property, and BP will assign and convey the BP Property to APC and AEP in exchange for the AEP Property and the APC Property.   The pre-exchange and post-exchange interests of each of the Parties in the AEP Property, the APC Property and the BP Property are set out on Exhibit "A-2" under the headings "Pre-Exchange Interests" and "Post-Exchange Interests (BP, AEP, APC Assignors)".

   2.2 **AEP Assignment to APC:** Immediately following delivery of the Assignment of the BP Property to AEP, AEP will deliver an assignment of all of its rights, title and interest in the BP Property to APC ("Subsequent AEP Assignment").   The post-exchange interests of BP and APC in the BP Property after the Subsequent AEP Assignment are set out on Exhibit "A-2" under the heading "Post-Exchange Interests (AEP Assignor)".

   2.3 **Filing of Assignments with the MMS:** The Parties recognize and agree that, prior to MMS approval of the Assignment of the BP Property into AEP, APC will become the owner of all of the BP Property upon delivery of the Subsequent AEP Assignment.   Subject to the right to rescind in Section 25, the Subsequent AEP Assignment will be recognized by the Parties as valid unless the MMS does not thereafter approve it.   AEP and APC agree to file the Assignments of the BP Property with the MMS within thirty (30) days of the execution of this Agreement ("Initial Filing"), and APC will file the Subsequent AEP Assignment with the MMS within thirty (30) days following MMS approval of the assignment of the BP Property to AEP.

3. **LIMITED WARRANTY.** The Assignments to be made hereunder by the Parties shall be made:

   (a) without warranty of title or any other type of warranty (express or implied); except as to claims by persons claiming the same property, or any part thereof, by, through or under the assigning party, but not otherwise, but with full subrogation and substitution in and to all actions in warranty; and

Lease Exchange Agreement
BP / AEP/ APC

CONFIDENTIAL                                                ANA-MDL-000030653

(b)   free and clear of any overriding royalties, production payments, mortgages, pledges or other burdens, liens or encumbrances on production (including but not limited to dedications of production, production handling agreements, and/or processing agreements) other than the lessor's royalty; and

(c)   subject to the provisions in the oil and gas leases for the BP Property, the AEP Property and the APC Property, as the case may be, this Agreement, the applicable operating agreements referred to in Section 7 hereof and approval by the MMS.

4.   **LIKE KIND EXCHANGE:**   AEP, APC and BP expect and intend that the Assignments to be made pursuant to Section 2.1 hereunder shall be characterized for tax purposes as a "like-kind exchange" pursuant to Section 1031 of the Internal Revenue Code of 1986, as amended, or similar provisions, with no resulting gain or loss by either Party.   However, should any Party recognize any gain or loss as a result of this exchange, such Party shall bear one-hundred percent (100%) of any such gain or loss, including any tax consequences associated with such gain or loss, without contribution from the other Parties to this Agreement.

5.   **DATA AND INFORMATION NOT INCLUDED.**   The interests in the AEP Property, the APC Property and the BP Property to be conveyed hereunder do not include any rights and/or interests in any data or information not specifically described as being included in this Agreement.

6.   **CONSENTS AND PREFERENTIAL RIGHTS.**   BP represents that there are no consents to assign affecting the BP Property as of the date of execution of this Agreement, but the Macondo Operating Agreement (defined in Section 7) does contain a preferential right to purchase.   Accordingly, BP has agreed and has obtained the agreement of the other party to the Macondo Operating Agreement, being MOEX Offshore 2007 LLC ("MOEX"), who is the holder of such preferential right to purchase, that the Assignments of the BP Property to each AEP and APC shall not be subject to such preferential right to purchase. BP has agreed and has also obtained the agreement of MOEX that the Assignment of the BP Property to APC will not be subject to Section 24.1.3 (*Minimum Transfer of Interest*) of the Macondo Operating Agreement. Prior to the execution of this Agreement, BP shall provide APC with written documentation confirming the above agreements of BP and MOEX.   APC represents that there are no consents to assign but there is a preferential right to purchase affecting the APC Property. APC has obtained a waiver of (i) the right to receive notice of the proposed transaction and (ii) the related preferential right to purchase from the holder of such preferential right to purchase. AEP represents that there are no consents to assign but there is a preferential right

Lease Exchange Agreement
BP / AEP/ APC

CONFIDENTIAL                                                                 ANA-MDL-000030654

to purchase affecting the AEP Property.  AEP has obtained a waiver of (i) the right to receive notice of the proposed transaction and (ii) the related preferential right to purchase from the holder of such preferential right to purchase.

7.    **OPERATING AGREEMENTS:**   The BP Property is subject to that certain Macondo Operating Agreement dated October 1, 2009, by and between BP and MOEX, covering BP's Macondo Prospect ("Macondo Operating Agreement"). BP is designated operator under the Macondo Operating Agreement. Contemporaneous with the execution and delivery of the Assignments of the BP Property from BP to AEP and APC, APC and AEP will adopt, ratify, and execute the Macondo Operating Agreement.

The APC Property is subject to an existing operating agreement between APC and Nexen Petroleum Offshore U.S.A. Inc. ("Nexen") covering the APC Property.  Nexen is designated operator and the operating agreement is dated effective November 1, 2007.  If, subject to Section 6 of this Agreement, APC assigns BP the APC Property, then, contemporaneous with the execution of such assignment, BP will adopt, ratify, and execute the existing operating agreement covering Keathley Canyon Block 140.

The AEP Property is subject to a yet to be executed offshore operating agreement covering the AEP Property and having the same terms, *mutatis mutandi*, of that certain Offshore Joint Operating Agreement dated March 23, 2005, as amended, covering the Kaskida Prospect, as described in that certain Area of Mutual Interest Agreement between BP, APC and Devon Energy Production Company L.P., dated effective July 2, 2007, as amended.

8.    **ACCOUNTING FOR THE AEP PROPERTY AND THE APC PROPERTY.**  All operating and capital expenses (including lease rental and maintenance expenses) associated with any part of the AEP Property and the APC Property and relating to the period prior to the Effective Date shall be borne by APC.

9.    **ACCOUNTING FOR THE BP PROPERTY.**  All operating and capital expenses (including lease rental and maintenance expenses) associated with any part of the BP Property and relating to the period prior to the Effective Date shall be borne by BP.

10.   **THE AEP PROPERTY AND APC PROPERTY INDEMNITY.**  With respect to the AEP Property and the APC Property, subject to Sections 3 and 13, AEP and APC shall indemnify, defend, and hold BP harmless from:

Lease Exchange Agreement
BP / AEP/ APC

   ANA-MDL-000030655

(a) all liabilities, penalties, claims, causes of action, demands, lawsuits (including environmental liabilities, fines and penalties), and expenses (including attorney's fees and court costs) relating to AEP's and APC's ownership or operatorship of the AEP Property and/or the APC Property, respectively, prior to the Effective Date; and

(b) any claims, causes of action, and lawsuits that are asserted by APC's stockholders or other parties that in any way challenge APC's right to complete the transaction contemplated hereunder; and

(c) any claims, causes of action, and lawsuits that are asserted by AEP's managing partner or limited partners or other parties that in any way challenge AEP's right to complete the transaction contemplated hereunder.

**11.**   **THE BP PROPERTY INDEMNITY.**   With respect to the BP Property, subject to Sections 3 and 14, BP shall indemnify, defend, and hold AEP and APC harmless from:

(a) all liabilities, penalties, claims, causes of action, demands, lawsuits (including environmental liabilities, fines and penalties), and expenses (including attorney's fees and court costs) relating to BP's ownership or operatorship of the BP Property prior to the Effective Date; and

(b) any claims, causes of action, and lawsuits that are asserted by BP's stockholders or other parties that in any way challenge BP's right to complete the transaction contemplated.

APC's, AEP's and BP's respective rights and obligations regarding the BP Property after the Effective Date shall be determined in accordance with and governed by the Macondo Operating Agreement, except as may be expressly modified by that certain Well Participation Agreement dated effective October 1, 2009, by and between BP, APC and Kerr-McGee Oil & Gas Corporation.

**12.**   **DELIVERY OF DOCUMENTS:**   The Parties shall deliver the following documents contemporaneous with the execution of this Agreement:

**12.1**   **Instruments to be Duly Executed and Delivered by AEP and APC to BP:**

(a) four (4) duplicate originals of Assignments, in the form of the assignment set forth in Exhibit "B," prepared to vest BP with the Post Exchange Interest set forth opposite BP's name in Exhibit "A-2" for each of the following leases: OCS-G 31855 (Keathley Canyon Block 27), OCS-G 31214 (Keathley Canyon Block 140), OCS-G 32462 (Garden Banks Block 994), and OCS-G 32463 (Garden Banks Block 995); and

Lease Exchange Agreement
BP / AEP/ APC

CONFIDENTIAL

ANA-MDL-000030656

(b) four (4) Designation of Operator Forms designating BP as Operator of lease OCS-G 32306 (Mississippi Canyon Block 252), along with any necessary OSFR forms; and

(c) three (3) duplicate ratification instruments covering the Keathley Canyon 140 operating agreement.

**12.2 Instruments to be Duly Executed and Delivered by BP to AEP and APC:**

(a) four (4) duplicate originals of an Assignment, in the form of the assignment set forth in Exhibit "B," prepared to vest APC with the Post Exchange Interest (BP, AEP, APC Assignors) set forth opposite APC's name in Exhibit "A-2" for lease OCS-G 32306 (Mississippi Canyon Block 252); and

(b) four (4) duplicate originals of an Assignment, in the form of the assignment set forth in Exhibit "B," prepared to vest AEP with the Post Exchange Interest (BP, AEP, APC Assignors) set forth opposite AEP's name in Exhibit "A-2" for lease OCS-G 32306 (Mississippi Canyon Block 252); and

(c) three (3) duplicate ratification instruments covering the Macondo Operating Agreement.

**13. REPRESENTATIONS AND WARRANTIES OF AEP AND APC.** With respect to the AEP Property and the APC Property, respectively, AEP and APC represent and warrant to BP only that, as of the date of execution of this Agreement:

(a) APC has the corporate power and authority to execute and deliver this Agreement, the Assignments of the APC Property to BP, and to consummate the exchange contemplated hereunder.

(b) AEP has the power and authority to legally bind AEP, execute and deliver this Agreement, and the Assignments of the AEP Property to BP, as well as to consummate the exchange contemplated hereunder on behalf of AEP.

(c) This Agreement constitutes the valid and binding obligation of AEP and APC, respectively, enforceable against AEP and APC in accordance with the terms hereof, and no other corporate act, corporate approval, or proceeding on the part of AEP and/or APC is required to authorize the execution and delivery of this Agreement and the Assignments by AEP and APC or the consummation of the exchange contemplated hereunder.

(d) Neither AEP nor APC has incurred any liability, contingent or otherwise, for broker's or finder's fees relating to the exchange contemplated hereunder for which BP could or will bear any responsibility.

(e) To AEP's and APC's actual knowledge, there are no pending or threatened claims, lawsuits, administrative proceedings, or governmental

Lease Exchange Agreement
BP / AEP / APC

CONFIDENTIAL

ANA-MDL-000030657

investigations or inquiries involving the AEP Property or the APC Property, except those claims, lawsuits, administrative proceedings, and governmental investigations and inquiries that AEP and/or APC have disclosed to BP in writing prior to the date of execution of this Agreement.

(f)  There exists no material contract or agreement to which AEP or APC is a party relating to hydrocarbon production, including oil production, gas production, natural gas liquids, or oil and gas production from any part of the AEP Property or the APC Property in which any third party is granted a call on AEP's or APC's interest in such production or the right to purchase such production for a period in excess of thirty (30) days, except as may be provided by the United States government under law or the terms of the oil and gas leases.

(g)  Neither the AEP Property nor the APC Property is held in a tax partnership.

(h)  APC has paid to the operator of the APC Property, as the designated payee, all rentals or other lease maintence payments affecting the APC Property that are or become due on or before the date of execution of this Agreement.

14.  **REPRESENTATIONS AND WARRANTIES OF BP**.  With respect to the BP Property, BP represents and warrants to AEP and APC, respectively, only that as of the date of execution of this Agreement:

(a)  BP has the corporate power and authority to execute and deliver this Agreement, the Assignments and to consummate the exchange contemplated hereunder.  This Agreement constitutes the valid and binding obligation of BP, enforceable against BP in accordance with the terms hereof, and no other corporate act, corporate approval, or proceeding on the part of BP is required to authorize the execution and delivery of this Agreement and the Assignments by BP or the consummation of the exchange contemplated hereunder.

(b)  BP has not incurred any liability, contingent or otherwise, for broker's or finder's fees relating to the exchange contemplated hereunder for which AEP or APC could or will bear any responsibility.

(c)  To BP's actual knowledge, there are no pending or threatened claims, lawsuits, administrative proceedings, or governmental investigations or inquiries involving the BP Property, except those claims, lawsuits, administrative proceedings, and governmental investigations and inquiries that BP has disclosed to AEP and APC in writing prior to the date of execution of this Agreement.

(d)  There exists no material contract or agreement to which BP is a party relating to hydrocarbon production, including oil production, gas

Page 8 of 13

Lease Exchange Agreement
BP / AEP/ APC

ANA-MDL-000030658

production, natural gas liquids, or oil and gas production from any part of the BP Property, in which any third party is granted a call on any of BP's interest in such production or the right to purchase such production for a period in excess of thirty (30) days, except as may be provided by the United States government under law or the terms of the oil and gas leases.

(e)    The BP Property is not held in a tax partnership.

(f)    BP has paid or caused to have been paid all rentals or other lease maintence payments affecting the BP Property that are or become due on or before the date of execution of this Agreement.

**15.**   **RESPONSIBILITY FOR TAXES AND RECORDING FEES.**   Any sales taxes, transfer taxes, documentary taxes and recording fees relating to an assignment hereunder shall be paid by the assignee. Each Party shall be legally responsible for paying its own local, state and federal income tax reporting, recognition of gain or loss, if any, and the taxes, if any, payable with respect to the transaction.

**16.**   **NOTICES.**   All notices and communications required or permitted under this Agreement, shall be made in writing and delivered to the designated representative listed in the preamble to this Agreement either in person or by facsimile transmission, U.S. mail (postage pre-paid), electronic mail (e-mail) with printed read receipt confirmation retained, overnight express or courier.

**17.**   **CONSTRUCTION AND INTERPRETATION OF THIS AGREEMENT.**   The interpretation and construction of the terms of this Agreement will be governed by the following conventions:

**17.1**   **Headings for Convenience:** Except for the definition headings contained in Section 1, all captions, numbering sequences and headings used in this Agreement are inserted for convenience only and shall in no way define, limit or describe the scope or intent of this Agreement or any part thereof; nor have any legal effect.

**17.2**   **Gender and Number:** The use of pronouns in whatever gender or number shall be deemed to be a proper reference to the Parties to this Agreement though the Parties may be individuals, business entities, or groups thereof. Any necessary grammatical changes required to make the provisions of this Agreement refer to the correct gender or number shall in all instances be assumed as though each case was fully expressed.

**17.3**   **Independent Representation:** Each Party has had the benefit of independent legal representation with respect to the subject matter of this Agreement. This Agreement, though drawn by one Party, shall be

Lease Exchange Agreement
BP / AEP/ APC

CONFIDENTIAL                                                            ANA-MDL-000030659

construed fairly and reasonably and not more strictly against one Party than another.

**17.4**   **Severance of Invalid Provisions:**  If, for any reason and for so long as, any clause or provision of this Agreement is held by a court of competent jurisdiction to be illegal, invalid, unenforceable or unconscionable under any present or future law (or interpretation thereof), the remainder of this Agreement shall not be affected by such illegality or invalidity.  Any such invalid provision shall be deemed severed from this Agreement as if this Agreement had been executed with the invalid provisions eliminated. The surviving provisions of this Agreement shall remain in full force and effect unless the removal of the invalid provisions destroys the legitimate purposes of this Agreement; in which event this Agreement shall be null and void.  The Parties shall use reasonable efforts to attempt to negotiate any required modifications to this Agreement.

**17.5**   **Applicable Law:**   **The provisions of this Agreement and the relationship of the Parties shall be governed and interpreted according to the laws of the State of Texas without regard to choice or conflict of laws that would refer the matter to the laws of another jurisdiction, except to the extent that the laws of another jurisdiction mandatorily apply under the Outer Continental Shelf Lands Act**.

**18.**   **FURTHER ASSURANCES.**  To the extent each other Party complies with its obligations under this Agreement, AEP, APC and BP, whichever applies, agree to execute, acknowledge, and deliver or cause to be executed, acknowledged, and delivered any instrument, or take any action necessary or appropriate to effectuate the terms of this Agreement.

**19.**   **REPRESENTATIONS SURVIVE FINAL CLOSING.**   All representations, warranties, covenants, indemnities or agreements contained in this Agreement or in any Exhibit shall be effective until the date of execution of this Agreement, but shall terminate upon delivery of the Assignments except for those contained in Sections 6, 10 and 11, and any other provisions that by their express terms, are intended to survive beyond the date of execution of this Agreement; provided that such survival shall not extend or expand such representations, warranties, covenants, indemnities or agreements beyond their respective express provisions or reasonable intent.

**20.**   **BINDING EFFECT.**  This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and assigns.   This Agreement does not benefit or create any rights in any person or entity not a Party to this Agreement.

CONFIDENTIAL                              ANA-MDL-000030660

**21.** **INTEGRATED AGREEMENT.** This Agreement, and the Exhibits attached and incorporated herein, contain the final and entire agreement of the Parties with respect to the subject matter of this Agreement. If there is a conflict between the body of this Agreement (excluding the Exhibits) and any Exhibit, the provisions in the body of this Agreement (excluding the Exhibits) shall prevail. There are no representations, warranties or promises, oral or written between the Parties other than those included in this Agreement. This Agreement shall supersede and replace all previous agreements, negotiations, understandings or promises, whether written or oral, relative to the subject of this Agreement. Each of the Parties acknowledges that no other Party has made any promise, representation or warranty that is not expressly stated in this Agreement. This Agreement shall not be modified or changed except by a written amendment signed by all the Parties.

**22.** **COUNTERPART EXECUTION.** This Agreement may be executed by signing the original or a duplicate counterpart thereof. If this Agreement is executed in multiple duplicate counterparts, each such counterpart shall be deemed an original and all of which when taken together shall constitute but one and the same agreement with the same effect as if all Parties had signed the same instrument.

**23.** **ASSIGNMENT.** This Agreement shall not be assigned by a Party without the prior written consent of the other Parties. Any assignment made without the prior written consent of the other Parties shall be null and void, *ab initio.*

**24.** **CONFLICT.** In the event of a conflict between the terms of this Agreement and the applicable operating agreement, this Agreement shall prevail.

**25.** **TERM OF AGREEMENT.** This Agreement shall be binding upon execution by all of the Parties as of the Effective Date; provided that if any of the Assignments made in connection with this Agreement are not approved by the MMS, the other Party(ies) shall have the right to rescind this Agreement.

**26.** **ACCURACY OF INFORMATION.** Subject to Sections 3, 13 and 14, the Parties do not make any representation or warranty, either express or implied, as to the accuracy, completeness or materiality of any data, information, records or materials made available in connection with this Agreement. **WITHOUT LIMITATION TO THE GENERALITY OF THE FOREGOING, BUT SUBJECT TO SECTIONS 3, 13 and 14, AND EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS AGREEMENT, THE PARTIES DISCLAIM AND NEGATE ANY WARRANTY, EXPRESS, STATUTORY OR IMPLIED AS TO: (1) MERCHANTABILITY, (2) FITNESS FOR A PARTICULAR PURPOSE, (3) CONFORMITY OF THE DATA TO SAMPLES OR MODELS, (4) ANY**

CONFIDENTIAL                                                    ANA-MDL-000030661

STATEMENT OR INFORMATION MADE OR COMMUNICATED (ORALLY OR IN WRITING) TO THE OTHER PARTY OR ANY OF ITS AFFILIATES, EMPLOYEES, AGENTS, CONSULTANTS OR REPRESENTATIVES (INCLUDING, WITHOUT LIMITATION, ANY OPINION, INFORMATION, PROJECTION OR ADVICE THAT MAY HAVE BEEN PROVIDED TO THE ASSIGNEE PARTY BY ANY OFFICER, DIRECTOR, EMPLOYEE, AGENT, CONSULTANT, REPRESENTATIVE OR ADVISOR OF THE ASSIGNOR PARTY OR ANY OF ITS AFFILIATES), (5) THE QUANTITY, QUALITY OR RECOVERABILITY OF PETROLEUM SUBSTANCES, (6) ANY ESTIMATES OF THE VALUE OF THE PROPERTY OR FUTURE REVENUES GENERATED BY THE PROPERTY, AND (7) THE PRODUCTION OF PETROLEUM SUBSTANCES FROM THE PROPERTY. IT BEING EXPRESSLY UNDERSTOOD AND AGREED BY THE PARTIES HERETO THAT THE ASSIGNEE PARTY SHALL BE DEEMED TO BE OBTAINING THE PROPERTY IN ITS PRESENT STATUS, CONDITION AND STATE OF REPAIR, "AS IS" AND "WHERE IS" WITH ALL FAULTS.

27.  **DISPUTE RESOLUTION PROCEDURE.**  On or after the Effective Date, any claim, controversy, or dispute arising out of, relating to, or in connection with this Agreement shall be resolved under the Dispute Resolution Procedure attached hereto as Exhibit "C".

**THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK**

Lease Exchange Agreement
BP / AEP/ APC

CONFIDENTIAL

ANA-MDL-000030662

**EXECUTION PAGE FOR THE LEASE EXCHANGE AGREEMENT DATED OCTOBER 1, 2009, BY AND BETWEEN BP EXPLORATION & PRODUCTION INC., ANADARKO E&P COMPANY LP AND ANADARKO PETROLEUM CORPORATION**

**IN WITNESS WHEREOF**, each Party, through its duly authorized agent or representative, has executed this Agreement on date set forth below.

**BP EXPLORATION & PRODUCTION INC.**

_____
Signature

____Kemper Howe_____
Printed Name

____Attorney-in-Fact_____
Title

____12/17/09_____
Date

**ANADARKO E&P COMPANY LP**

_____
Signature

Steve Wallace
Printed Name

Attorney-in-Fact
Title

December 17, 2009
Date

**ANADARKO PETROLEUM CORPORATION**

_____
Signature

Steve Wallace
Printed Name

Agent and Attorney-in-Fact
Title

December 17, 2009
Date

Page 13 of 13

CONFIDENTIAL                                                           ANA-MDL-000030663

**Exhibit "A-1" - Description of Assigned Leases**
Attached to and made a part of that certain Lease Exchange Agreement dated
October 1, 2009, by and between BP Exploration & Production Inc.,
Anadarko E&P Company LP and Anadarko Petroleum Corporation

***The BP Property***
**Lease Description:**    Federal OCS oil & gas lease serial number OCS-G 32306, dated June 1, 2008, between the United States of America and BP Exploration & Production Inc., covering all of Mississippi Canyon Block 252, OCS Official Protraction Diagram NH 16-10, covering 5,760 acres as to all depths and bearing a royalty rate of 18.75% percent. (Record Title Interest).

***The AEP Property***
**Lease Descriptions:**    Federal OCS oil & gas lease serial number OCS-G 31855, dated March 1, 2008, between the United States of America and BP Exploration & Production Inc., covering all of Keathley Canyon Block 27, OCS Official Protraction Diagram NG 15-05, covering 5,760 acres as to all depths and bearing a royalty rate of 16.67% percent. (Record Title Interest).

Federal OCS oil & gas lease serial number OCS-G 32462, dated August 1, 2008, between the United States of America and BP Exploration & Production Inc., covering all of Garden Banks Block 994, OCS Official Protraction Diagram NG 15-02, covering 5,760 acres as to all depths and bearing a royalty rate of 18.75% percent. (Record Title Interest).

Federal OCS oil & gas lease serial number OCS-G 32463, dated August 1, 2008, between the United States of America and BP Exploration & Production Inc., covering all of Garden Banks Block 995, OCS Official Protraction Diagram NG 15-02, covering 5,760 acres as to all depths and bearing a royalty rate of 18.75% percent. (Record Title Interest).

***The APC Property***
**Lease Description:**

Federal OCS oil & gas lease serial number OCS-G 31214, dated November 1, 2007, between the United States of America, Anadarko Petroleum Corporation, and Nexen Petroleum Offshore U.S.A. Inc., covering all of Keathley Canyon Block 140, OCS Official Protraction Diagram NG 15-05, covering 5,760 acres as to all depths and bearing a royalty rate of 16.67% percent. (Record Title Interest).

Exhibit "A-1" to Lease Exchange Agreement
BP / AEP / APC

CONFIDENTIAL                                    ANA-MDL-000030664

**Exhibit "A-2" – Interests of the Parties**
Attached to and made a part of that certain Lease Exchange Agreement dated
October 1, 2009, by and between BP Exploration & Production Inc.,
Anadarko E&P Company LP and Anadarko Petroleum Corporation

**Pre-Exchange Interests:**

**AEP Property**

| Company | Record Title Interest | Net Revenue Interest |
|---------|----------------------|----------------------|
| AEP | 25.00% | 20.833% (Keathley Canyon 27) |
| AEP | 25.00% | 20.3125% (Garden Banks 994) |
| AEP | 25.00% | 20.3125% (Garden Banks 995) |

**APC Property**

| Company | Record Title Interest | Net Revenue Interest |
|---------|----------------------|----------------------|
| APC | 50.00% | 41.66% (Keathley Canyon 140) |

**BP Property**

| Company | Record Title Interest | Net Revenue Interest |
|---------|----------------------|----------------------|
| BP | 90.00% | 73.125% (Mississippi Canyon 252) |

**Post-Exchange Interests (BP, AEP, APC Assignors):**

**OCS-G 31855    Keathley Canyon Block 27**

| Company | Record Title Interest | Net Revenue Interest |
|---------|----------------------|----------------------|
| BP | 80.00% | 66.67% |

**OCS-G 31214    Keathley Canyon Block 140**

| Company | Record Title Interest | Net Revenue Interest |
|---------|----------------------|----------------------|
| BP | 50.00% | 41.66% |

**OCS-G 32462    Garden Banks Block 994**

| Company | Record Title Interest | Net Revenue Interest |
|---------|----------------------|----------------------|
| BP | 80.00% | 65.00% |

**OCS-G 32463    Garden Banks Block 995**

| Company | Record Title Interest | Net Revenue Interest |
|---------|----------------------|----------------------|
| BP | 80.00% | 65.00% |

Exhibit "A-2" to Lease Exchange Agreement
BP / AEP / APC

CONFIDENTIAL                                    ANA-MDL-000030665

### Exhibit "A-2" Continued – Interests of the Parties

**OCS-G 32306      Mississippi Canyon Block 252**

| Company | Record Title Interest | Net Revenue Interest |
|---|---|---|
| BP | 65.00% | 52.81250% |
| AEP | 22.50% | 18.28125% |
| APC | 2.50% | 2.03125% |

### Post-Exchange Interests (AEP Assignor):

**OCS-G 32306      Mississippi Canyon Block 252**

| Company | Record Title Interest | Net Revenue Interest |
|---|---|---|
| BP | 65.00% | 52.8125% |
| APC | 25.00% | 20.3125% |

Exhibit "A-2" to Lease Exchange Agreement
BP / AEP / APC

CONFIDENTIAL

ANA-MDL-000030666

**Exhibit "B" – Form of Assignment**
Attached to and made a part of that certain Lease Exchange Agreement dated
October 1, 2009, by and between BP Exploration & Production Inc,
Anadarko E&P Company LP and Anadarko Petroleum Corporation

# FORM OF ASSIGNMENT

Exhibit "B" to Lease Exchange Agreement
BP / AEP / APC

CONFIDENTIAL

ANA-MDL-000030667

U. S. Department of the Interior          OMB Control Number: 1010-0006
Minerals Management Service

OMB Approval Expires: March 31, 2007

ASSIGNMENT   OF   RECORD   TITLE   INTEREST   IN
FEDERAL OCS OIL AND GAS LEASE

Lease No. _____

Lease Effective Date _____

New Lease No. (MMS Use Only) _____

Part A: Assignment

Legal description of land/area being assigned:

Assignor(s) does hereby sell, assign, transfer and convey unto Assignee(s) the following undivided right, title and interest:

Insert name and Company number of each Assignor and Assignee.

Assignor(s):                                                    Percentage Interest Conveyed

Assignee(s):                                                   Percentage Interest Received

The approval of this assignment is restricted to record title interest only.

☐ Exhibit "A," which sets forth other provisions between Assignor(s) and Assignee(s), is attached to and made a part of this assignment.

For MMS Use only - Do Not Type Below This Line

This Assignment of Record Title Interest has been filed as of the date stamped on this document and hereby approved by the Minerals Management Service on the date below.

By _____
        Authorized Official for MMS                    Title                              Approval Date

Paperwork Reduction Act of 1995 (PRA) Statement: The PRA (44 U.S.C. 3501 et seq.) requires us to inform you that we collect this information to use in the adjudication process involved in leasing and lease operations. The MMS uses the information to track ownership of leases in the Federal OCS. Responses are mandatory (43 U.S.C. 1334). Proprietary data are covered under 30 CFR 250.196. An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid OMB Control Number. Public reporting burden of this form is estimated to average 30 minutes per response, including the time for reviewing instructions, gathering and maintaining data, and completing and reviewing the form. Direct comments regarding the burden estimate or any other aspect of the this form to the Information Collection Clearance Officer, Mail Stop 4230, Minerals Management Service, 1849 C Street, NW, Washington, DC 20240.

MMS FORM MMS-150      (June 2006)                                      Page 1 of 2

Part B - Certification and Acceptance

1. Assignor(s) certifies it is the owner of the record title interest in the above-described lease that is hereby assigned to the Assignee(s)
   specified above.

2. DEBARMENT COMPLIANCE: Assignee shall comply with the Department of the Interior's nonprocurement debarment and
   suspension regulations as required by Subpart C of 43 CFR Part 42 and shall communicate the requirement to comply with these
   regulations to persons with whom it does business related to this record title interest assignment by including this term in its contracts and
   transactions.

3. EQUAL OPPORTUNITY AND AFFIRMATIVE ACTION COMPLIANCE CERTIFICATION: Assignor(s) and Assignee(s)
   certify that they are in full compliance with Equal Opportunity Executive Order 11246, as amended, and the implementing regulations at
   41 CFR 60-01 - Obligations of Contractors and Subcontractors; and 41 CFR 60-2 - Affirmative Action Programs. These requirements
   are for the purpose of preventing discrimination against persons on the basis of race, color, religion, sex, or national origin.
   These regulations have specific performance requirements.

4. Assignee's execution of this assignment constitutes acceptance of all applicable terms, conditions, stipulations and restrictions pertaining
   to the lease described herein. Applicable terms and conditions include, but are not limited to, an obligation to conduct all operations on
   the leasehold in accordance with the terms and conditions of the lease, to condition all wells for proper abandonment, to restore the leased
   lands upon completion of any operations as described in the lease, and to furnish and maintain bond(s) pursuant to regulations
   at 30 CFR 256. This assignment is subject to the Outer Continental Shelf Lands Act of August 7, 1953, 67 Stat. 462; 43 U.S.C.
   1331 et seq., as amended (the "Act"), and Assignee(s) is subject to, and shall fully comply with, all applicable regulations now or
   to be issued under the Act. Notwithstanding any agreement between the Assignor(s) and Assignee(s), the parties' liability to the
   Minerals Management Service is governed by 30 CFR 256.

This Assignment of Record Title Interest will be made effective between the parties hereto as of _____, upon approval by the Minerals Management Service, United States Department of the Interior.

This instrument may be executed in any number of counterparts, each of which will be deemed an original instrument, but all of which together shall constitute but one and the same instrument provided, however, this instrument and any other counterpart hereof, will not be binding unless and until executed by all of the parties, and will not be accepted by the Minerals Management Service unless all counterparts are filed simultaneously.

I certify that the statements made herein by the undersigned are true, complete and correct to the best of my knowledge and belief and are made in good faith.

Title 18 U.S.C. Sec. 1001 makes it a crime for any person knowingly and willfully to make to any Department or agency of the United States any false, fictitious or fraudulent statements or representations as to any matter within its jurisdiction.

ASSIGNOR                                            ASSIGNOR

By:_____                          By:_____
Name:                                               Name:
Title:                                              Title:

       Execution Date                                      Execution Date

ASSIGNEE                                            ASSIGNEE

By:_____                          By:_____
Name:                                               Name:
Title:                                              Title:

       Execution Date                                      Execution Date

Attach Notary Acknowledgement (not mandatory)

                                     ANA-MDL-000030669

MMS FORM MMS-150      (June 2006)      Page 2 of 2

Exhibit "B" to Lease Exchange Agreement
BP / AEP / APC

CONFIDENTIAL

ANA-MDL-000030670

**EXHIBIT "A"**

**ATTACHED TO AND MADE A PART OF THAT CERTAIN ASSIGNMENT OF
RECORD TITLE INTEREST
IN FEDERAL OCS OIL & GAS LEASE FOR OCS-G XXXXX**

**ASSIGNOR:**

**ASSIGNEE:**

To have and to hold the percentage of record title interest conveyed in Federal OCS Oil & Gas Lease OCS-G _____ covering _____ block _____ ("Assigned Lease") (and all appurtenant property, if any [in the case of Mississippi Canyon 252 into APC, including the wellbore and other personal property associated with the Mississippi Canyon 252 #1  OCS-G 32306 well (API #6081741169)]) unto the Assignee forever, subject to and in accordance with all the terms and provisions of the Assigned Lease and subject to the limitations, exceptions, reservations, and conditions set forth below.

**Assignment Subject to Prior Contracts**
The record title interest conveyed in the Assigned Lease is subject to Assignee's assumption of the express and implied terms and conditions of the Assigned Lease and the following agreement(s), collectively the "Agreements":
1.   That certain **Lease Exchange Agreement** dated October 1, 2009, by and between BP Exploration and Production Inc., Anadarko E&P Company LP and Anadarko Petroleum Corporation.
2.   That certain **Well Participation Agreement** dated effective October 1, 2009, by and between BP Exploration and Production Inc., Anadarko Petroleum Corporation and Kerr-McGee Oil & Gas Corporation.
3.   **Applicable OA**

Should any terms of this Assignment conflict with the terms of the Agreements listed above, the terms of the Agreements shall control.

**Limited Warranty of Title**
The Assignment is delivered and accepted:

(a)  without warranty of title or any other type of warranty (express or implied); except as to claims by persons claiming the same property, or any part thereof, by, through or under the assigning party, but not otherwise, but with full subrogation and substitution in and to all actions in warranty; and

(b)  free and clear of any overriding royalties, production payments, mortgages, pledges or other burdens, liens or encumbrances on production (including but not limited to dedications of production, production handling agreements, and/or processing agreements) other than the lessor's royalty; and

Page 5 of 6

Exhibit "B" to Lease Exchange Agreement
BP / AEP / APC

CONFIDENTIAL                                              ANA-MDL-000030671

(c)  subject to approval by the MMS.

**Binding Effect**
This **Assignment** and the rights, titles, interests, and obligations assigned, reserved, excepted, or retained in this **Assignment**, shall inure to the benefit of, and shall be binding upon, the successors and assigns of the Assignor and Assignee.   The covenants, obligations and agreements contained in this **Assignment** shall be construed as covenants running with the land and the Assigned Lease.

Exhibit "B" to Lease Exchange Agreement
BP / AEP / APC

CONFIDENTIAL

ANA-MDL-000030672

**Exhibit "C" – Dispute Resolution Procedure**
Attached to and made a part of that certain Lease Exchange Agreement dated
October 1, 2009, by and between BP Exploration & Production Inc.,
Anadarko E&P Company LP and Anadarko Petroleum Corporation

I.    **OVERVIEW**

A.    *Description and Goals.*   Arbitration as used in this statement is a
procedure whereby an Arbitrator resolves any claim(s), controversy(ies) or dispute(s)
(the "Dispute") between BP Exploration & Production Inc., Anadarko E&P Company LP
and Anadarko Petroleum Corporation (hereinafter referred to singularly as "Party" and
collectively as "Parties"), involving more than $500,000.00, arising out of, relating to, or
in connection with that certain Lease Exchange Agreement dated October 1, 2009, by
and between the Parties (hereinafter "Agreement")  including the interpretation, validity,
termination or breach thereof.

(i)    *Binding.*  The arbitration process is binding on the Parties and this
arbitration is intended to be a final resolution of any Dispute between the Parties
as described above, to the same extent as a final judgment of a court of
competent jurisdiction.  Each Party hereby expressly covenants that it shall not
resort to court remedies except as provided for herein, and for preliminary relief
in aid of arbitration.

(ii)    *Violation.*  A Party shall pay all legal and court costs incurred by the
other Party in connection with the enforcement of the final resolution of any
Dispute under this Dispute Resolution Procedure, if such other Party is
successful in its enforcement efforts.  Suits, actions or proceedings in connection
with such enforcement shall be instituted in a federal court of proper jurisdiction
in Harris County, Houston, Texas, and pursuant to Title IX of the United States
Code.  Each Party waives any option or objection which it may now or thereafter
have to the laying of the venue in any such suit, action or proceeding and
irrevocably submits to the jurisdiction of such court in any such suit, action or
proceeding.  If such court after the institution of an action hereunder should

Page 1 of 9

CONFIDENTIAL                                                    ANA-MDL-000030673

decline jurisdiction, then the action may be commenced in any court, including state courts having jurisdiction.

B.   *Duty to Negotiate*.   The Parties shall inform one another promptly following the occurrence or discovery of any item or event, which might reasonably be expected to result in a Dispute in connection with the Agreement.  The Parties will attempt to resolve satisfactorily any such matters.

C.   *Notice of Unresolved Dispute*.  Should a Dispute arise which the Parties cannot resolve satisfactorily, either Party may deliver to the other Party a written notice of the Dispute with supporting documentation as to the circumstances leading to the Dispute (the "Notice of Dispute").   Unless otherwise provided herein, all such notices shall be served in accordance with the provisions of the Agreement. The Parties, within ten (10) Business Days from delivery of a Notice of Dispute, shall then each appoint a management representative ("Management Representative") who has no prior direct involvement with the subject matter of the Notice of Dispute and who is duly authorized to investigate, negotiate and settle the Dispute.  For a period not to exceed thirty (30) days following the appointment of the Management Representatives, the Management Representatives for each Party shall meet and confer as often as they deem reasonably necessary, in good faith negotiations, to try to resolve the Dispute amicably.

II.   **ARBITRATION PROCESS**

A.   *Arbitration*.  If the Parties are unable to resolve the Dispute within thirty (30) days following the end of the negotiation period between the Management Representatives described in I.C., or such additional time as may be mutually agreed upon, the matter shall be submitted to arbitration in accordance with the procedures set forth below.

B.   *Initiation of Arbitration*.   Either Party may initiate the arbitration by delivering to the other a Notice of Intention to Arbitrate.

Page 2 of 9

Exhibit "C" to Lease Exchange Agreement
BP / APC / AEP

CONFIDENTIAL                                            ANA-MDL-000030674

C.    *Governing Procedures.*   Except as expressly provided herein, the arbitration shall be conducted in accordance with procedures that are mutually acceptable to the Parties, including limited depositionless discovery and the presentation of live witness testimony, subject to cross examination, at the arbitration hearing.

> (i)    *Governing Law.*   The Arbitrator shall apply the governing substantive law of the state chosen by the Parties to the Agreement.
>
> (ii)   *Location.*   The arbitration hearing shall be conducted in Houston, Texas.

D.    *Arbitrator(s).*   For a Dispute involving US $10,000,000 or less in controversy, there shall be one (1) Arbitrator, who must be experienced in the oil and gas industry and knowledgeable about or specializing in the subject matter involved in the Dispute.   The Parties shall apply to the American Arbitration Association for the appointment of the Arbitrator for or on behalf of the Parties.   The Arbitrator appointed by the American Arbitration Association shall meet the criteria set forth in this Section II.D.   The Parties intend the involvement of the American Arbitration Association to be limited to appointing the Arbitrator; the Parties do not intend for the American Arbitration Association to manage the arbitration or to participate further in the arbitration process, unless the Parties mutually agree to further participation by the Association.

For a Dispute involving more than US $10,000,000 in controversy, there shall be a panel of three (3) Arbitrators, each of whom must be experienced in the oil and gas industry and knowledgeable about or specializing in the subject matter involved in the Dispute the ("Panel").   The Panel shall be chosen as follows:  within thirty (30) days after the delivery of a Notice of Intention to Arbitrate, each Party shall select one person to act as one of the three Arbitrators.   The two Arbitrators selected by the Parties shall select a third Arbitrator within thirty (30) days of their appointment.   If the Arbitrators selected by the Parties are unable or fail to agree on a third Arbitrator within the second thirty (30) day period, or any mutually agreed upon extended period, then the Parties

Page 3 of 9

CONFIDENTIAL                                                      ANA-MDL-000030675

shall, within three (3) business days after expiration of the second thirty (30) day period or extended period, follow the procedure set forth above for selection of a single Arbitrator.

(i)     *Conflicts*.  The Arbitrator, prior to his or her appointment, shall disclose to the Parties all actual or perceived conflicts of interest and business relationships involving the Dispute or the Parties, including but not limited to, any professional or social relationships, present or past, with any Party (or its Affiliates), including any Party's (or its Affiliates) directors, officers, and supervisory personnel and counsel.   If an Arbitrator is appointed by the American Arbitration Association pursuant to Section II.D, any Party may challenge in writing the appointment of the Arbitrator for lack of independence, partiality, or any other cause likely to impair such Arbitrator's ability to effectively participate in the proceedings or render a fair and equitable decision.   Where such challenge is made, the American Arbitration Association shall uphold or dismiss the challenge.  In the event a challenge is upheld, the Arbitrator shall be replaced, and the replacement will be selected in the same manner as the original Arbitrator was selected.  If an Arbitrator resigns or becomes unable or unwilling to continue to serve as an Arbitrator for any reason, a replacement shall be selected in the same manner as that Arbitrator was chosen.

(ii)    *Multi-Party Arbitrations*.   When more than two Parties are involved in the Dispute ("Multi-Party Arbitration"), all Parties identifying as "Claimants" (those delivering a Notice of Intention to Arbitration under Section II.B.) shall select a single Arbitrator and all those Parties identifying as "Respondents" (those responding to a Notice of Intention to Arbitration delivered under Section II.B.) shall select a single Arbitrator.  The Arbitrator selected by the Claimant(s) and the Arbitrator selected by the Respondent(s) shall select the third Arbitrator pursuant to Section II.D. If Claimants or Respondents cannot agree as to the choice of their Arbitrator within the said thirty (30) days, they may, within three (3) business days after written notice to the other Parties, apply to the American

Page 4 of 9

CONFIDENTIAL                                                ANA-MDL-000030676

Arbitration Association for the appointment of an Arbitrator as provided in Section II.D.

(iii)   *Management of the Arbitration.*   The Arbitrator(s) shall actively manage the proceedings so as to make the proceedings expeditious, economical, and less burdensome and adversarial than litigation.

E.   *Confidentiality.*   All documents, briefs, testimony, transcripts, as well as all Arbitrator decisions shall be confidential. Likewise, the views, suggestions, admissions, proposals, and other information exchanged in the arbitration are confidential and are inadmissible in any other proceeding.

F.   *Costs and Expenses.*   If only one Arbitrator is used, the Parties shall share equally all costs, fees and expenses incurred by the Arbitrator and any other incidental costs incurred in connection with the arbitration proceeding. If three Arbitrators are used, the Parties shall each pay all costs, fees and expenses incurred by their Party-selected Arbitrator and shall share equally all costs, fees and expenses incurred by the third Arbitrator and any other incidental costs incurred in connection with the arbitration proceeding. Each Party is solely responsible for its own attorneys' fees and expenses incurred in the arbitration.

G.   *Submissions.*   Within thirty (30) days after the selection of the Arbitrator(s), each Party shall provide the Arbitrator(s) with a short and plain submission defining the issues to be decided and the nature of the relief that the Arbitrator(s) may award (the "Submission"). This Submission shall explicitly authorize the Arbitrator(s) to decide these issues. If the Parties are unable to reach consensus as to the issues involved, the Arbitrator(s) in its/their sole discretion shall frame the issues through a reasonable procedure. The Arbitrator(s) will render decisions on the specific issues established and shall fashion any remedy that the Arbitrator(s) deem(s) appropriate so long as that remedy is consistent with the Parties' Submissions hereunder. Any money judgment entered by the Arbitrator(s) shall be payable in U.S. dollars.

Page 5 of 9

CONFIDENTIAL                                          ANA-MDL-000030677

H.    *Transcriptions.*    The presentations and argument at the arbitration hearing will be transcribed for the benefit of the Arbitrator(s) and the Parties.

I.    *Discovery.*    Commencing thirty (30) days after the receipt of the opposing Party's Submission, each Party may serve upon the other Party up to ten (10) requests for the production of documents, including sub-parts.  The requests shall be made in good faith and not be served for the purpose of delay or harassment.  Each request shall describe the type of document(s) sought and each request shall be limited to documents that are relevant to a claim or defense in the arbitration proceeding, or reasonably calculated to lead to the discovery of admissible evidence.  The requests need not be served all at once but may be served in stages.

(i)    The Party served with a request under this provision shall provide the adverse Party with copies of the requested documents, and identify the request to which each document is responsive, within twenty (20) business days of the receipt of the request, or such longer time as may be agreed to by the Parties or set by the Arbitrator(s).  If the Party served with a request objects to the production of any of the requested documents, it shall nevertheless produce within the permitted time all documents responsive to any request that is not objected to by that Party.

(ii)    A Party that is served with a request may challenge the propriety of the request within the time permitted for response by a short written objection, which shall be forwarded to the adverse Party and to the Arbitrator(s). The adverse Party shall submit its response, if any, to the objecting Party and the Arbitrator(s) within five (5) business days of receipt of the objection.   The Arbitrator(s) shall consider the request, the objection, and the response, if any, and decide whether the production shall be allowed or denied or whether the request should be modified within ten (10) days after the submission of the adverse Party's response.

Exhibit "C" to Lease Exchange Agreement
BP / APC / AEP

CONFIDENTIAL                                                    ANA-MDL-000030678

J.    *Presentations.*        No later than twenty-five (25) days prior to the date that the arbitration hearing is to begin, each Party will submit to the Arbitrator(s) and serve on the other Party a written position statement.  The original statement of each Party shall not exceed thirty-five (35) typewritten letter-size pages.  Each Party shall have the right to submit reply statements no later than fifteen (15) days prior to the date of the arbitration hearing.   Such reply statements shall not exceed twenty (20) typewritten letter-size pages.

(i)     All documents and affidavits that a Party intends to use during its presentation at the arbitration hearing shall be submitted to the Arbitrator(s) and served on the other Party with the position and reply statements.   All demonstrative exhibits and a list of the witnesses a Party anticipates calling to present live testimony at the arbitration hearing, along with a brief summary of the witnesses expected testimony,  shall be exchanged  no later than ten (10) days in advance of the presentations.

(ii)    The Arbitrator(s) shall determine a reasonable time and location for the presentations.

(iii)    Each Party shall make an oral and/or documentary presentation of its position at the arbitration hearing in such order and in accordance with the time schedule established by the Arbitrator(s).  The Arbitrator(s) may question each of the presenters and/or witnesses during or following any and all presentations.

K.    *Decision and Award.*        The Arbitrator(s) shall promptly (within thirty (30) days of conclusion of the presentations at the arbitration hearing or such longer period as the Parties may mutually agree) determine the claims of the Parties and render a final decision in writing.  The decision shall state with specificity the findings of fact and conclusions of law on which it rests.  The decision rendered by the Arbitrator(s) may be enforced in accordance with Section I.A.(ii), above, and may only be appealed

Page 7 of 9

Exhibit "C" to Lease Exchange Agreement
BP / AEP / APC

CONFIDENTIAL                                                                ANA-MDL-000030679

pursuant to Section II. L. below.  The decision shall be served upon each of the Parties by facsimile transmission and by overnight mail.

(i)     If applicable law allows pre-award interest, the Arbitrator(s) may, in its discretion, grant pre-award interest and, if so, such interest may be at commercial rates in the state chosen by the Parties pursuant to Section II.C.(i) during the relevant period.  The Arbitrator(s) shall not award consequential, punitive, indirect or other non-compensatory damages.

(ii)    Within ten (10) days of receipt of the award either Party may submit a Motion to Modify the award.  A response to the Motion to Modify shall be due within fifteen (15) days thereafter, and the Arbitrator(s) shall rule thereon within fifteen (15) days after receipt of the response.

(iii)   Judgment on the award may be entered in the United States District Court for the federal district within which the arbitration hearing was held at any time within one year after the decision is made.  If such court after the institution of an action hereunder should decline jurisdiction, then the action may be commenced in any court, including state courts having jurisdiction.

L.     *Vacation of Award and Appeal.*   The Parties agree that an award made by the Arbitrator(s) may only be vacated or confirmed by a federal court of proper jurisdiction as established above.  If such court after the institution of an action hereunder should decline jurisdiction, then the action may be commenced in any court, including state courts having jurisdiction. The Parties agree that an award made by the Arbitrator(s) may be vacated by a court only if the award was procured by or through fraud or corruption.  An appeal from an order or judgment pursuant to this Section II.L. shall be instituted in a federal court of proper jurisdiction.  If such court after the institution of an action hereunder should decline jurisdiction, then the action may be commenced in any court, including state courts having jurisdiction.  Each Party waives any option or objection which it may now or thereafter have to the laying of the venue of any such suit, action or proceeding and irrevocably submits to the jurisdiction of the

Exhibit "C" to Lease Exchange Agreement
BP / APC / AEP

CONFIDENTIAL                                      ANA-MDL-000030680

court in any such suit, action or proceeding.  Each Party agrees that a remedy at law for a violation of this Section II.L. may not be adequate and therefore agrees that the remedies of specific performance and injunctive relief shall be available in the event of any violation in addition to any other right or remedy at law or in equity to which any Party may be entitled.

M.    *Res Judicata*.        To the extent permitted by law, any decision of the Arbitrator(s) shall not be *res judicata* or have any binding effect in any unrelated litigation or arbitration where any Party to this Agreement may also be a party.

Exhibit "C" to Lease Exchange Agreement
BP / AEP / APC

CONFIDENTIAL

ANA-MDL-000030681