# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  OIL SPILL by the OIL RIG | § | MDL NO. 2179 |
| "DEEPWATER HORIZON" | § | |
| in the GULF OF MEXICO, | § | |
| on APRIL 20, 2010 | § | SECTION: J |
| | § | |
| THIS PLEADING RELATES TO: | § | |
| | § | JUDGE BARBIER |
| 2:10-CV-02771 | § | MAG. JUDGE SHUSHAN |

---

# THE ST. JOE COMPANY'S *AMICUS CURIAE* MEMORANDUM IN OPPOSITION TO TRANSOCEAN'S MOTION TO DISMISS THE AMENDED B1 MASTER CLAIM IN LIMITATION

---

**BICKEL & BREWER**

William A. Brewer III (Texas, No. 02967035)
James S. Renard (Texas, No. 16768500)
Robert W. Gifford (New York, No. 046231)

4800 Comerica Bank Tower
1717 Main St.
Dallas, Texas  75201
Telephone:  (214) 653-4000
Facsimile:  (214) 653-1015

**ATTORNEYS FOR
THE ST. JOE COMPANY**

April 6, 2011

# TABLE OF CONTENTS

Page

I. PRELIMINARY STATEMENT. ..........................................................................1

II. SUMMARY OF ARGUMENT ..........................................................................2

III. ARGUMENT AND AUTHORITIES ................................................................3

 A. The Oil Pollution Act Expressly Recognizes The Concurrent Application Of State Common Law To Provide Monetary Redress For Sea-To-Shore Oil Pollution.........................................................................................................3

  1. OPA Section 2718(a).. .................................................................................3

  2. Congress intended Section 2718(a) to allow for the concurrent application of OPA and state law to redress injuries resulting from oil pollution.....................................................................................................4

  3. Section 2718(a) extends to state common law claims.. ..............................5

 B. General Federal Maritime Law Does Not Preempt State Common Law Claims For Damages Resulting From Oil Pollution Injuries, Especially In Light Of The Provisions Of The Oil Pollution Act................................................8

  1. The Admiralty Extension Act did not preempt the application of state law with respect to the imposition of liability and the provision of redress for sea-to-shore pollution…...........................................8

  2. The Oil Pollution Act supersedes the Admiralty Extension Act, the Limitation Act, and general federal maritime law with respect to claims for damages resulting from oil pollution – while recognizing the viability of concurrent state law claims ..........................11

  3. In the face of OPA Section 2718(a) and the historical role of the states in redressing injuries caused by sea-to-shore oil pollution, Transocean's preemption arguments defy logic and ignore precedent…....................................................................................................13

IV. CONCLUSION AND REQUEST FOR RELIEF.............................................15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. Dredging Co. v. Miller,*
114 S. Ct. 981 (1994) ..................................................................................................11

*Aramark Unif. and Career Apparel, Inc. v. Easton,*
894 So.2d 20 (Fla. 2005) .............................................................................................8

*Askew v. Amer. Waterways Operators, Inc.,*
93 S. Ct. 1590 (1973) ....................................................................................... *passim*

*Ballard Shipping v. Beach Shellfish,*
32 F.3d 623 (1st Cir. 1994) .....................................................................................9, 10

*Bouchard Transp. Co., Inc. v. Updegraff,*
147 F.3d 1344 (11th Cir. 1998) ...........................................................................12, 13

*Curd v. Mosaic Fertilizer, LLC,*
39 So.3d 1216 (Fla. 2010) ...........................................................................................8

*Gabarick v. Laurin Maritime (America), Inc.*
623 F. Supp. 2d 741 (E.D. La. 2009) ...........................................................11, 12, 14

*Gatlin Oil Co., Inc. v. United States,*
169 F.3d 207 (4th Cir. 1999) .....................................................................................11

*In the Matter of MetLife Capital Corp.,*
132 F.3d 818 (1st Cir. 1997) ...........................................................................6, 12, 13

*In re Alex C Corp.,*
2003 WL 203078 (D. Mass. Jan. 30, 2003) ..........................................................4, 14

*In re Southern Scrap Material Co., LLC,*
541 F.3d 584 (5th Cir. 2008) .....................................................................................13

*In re Spray II K/S,*
1996 WL 451315 (D. N.J. Aug. 5, 1996) ............................................5, 6, 12, 13

*Isla Corp. v. Sundown Energy, LP,*
2007 WL 1240212 (E.D. La. Apr. 27, 2007) ..............................................................6

*Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,*
115 S. Ct. 1043 (1995) .................................................................................................9

*Marastro Compania Naviera, S.A. v. Canadian Maritime Carriers, Ltd.,*
    959 F.2d 49 (5th Cir. 1992) ...............................................................................14, 15

*Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atlantic Corp.,*
    924 F. Supp. 1436 (E.D. Va. 1996) ....................................................................12, 14

*Romero v. Int'l Terminal Operating Co.,*
    79 S. Ct. 468 (1959)....................................................................................................10

*Russo v. M/T Dubai Star,*
    2010 U.S. Dist. LEXIS 50967 (N.D. Cal. Apr. 29, 2010) ........................................5

*So. Pac. Co. v. Jensen,*
    37 S. Ct. 524 (1917)..............................................................................................11, 15

*South Port Marine, LLC v. Gulf Oil Ltd. P'ship,*
    234 F.3d 58 (1st Cir. 2009)...................................................................................4, 8

*State of Louisiana ex. rel. Guste v. M/V Testbank,*
    752 F.2d 1019 (5th Cir. 1985) .................................................................................14

*Tanguis v. M/V Westchester,*
    153 F. Supp. 2d 859 (E.D. La. 2001)............................................................5, 12, 14

*The St. Joe Co. v. Transocean Offshore Deepwater Drilling, Inc.,*
    ___ F. Supp. 2d ____, 2011 WL 915300 (D. Del. March 15, 2011) .............................. *passim*

*United States v. Locke,*
    120 S. Ct. 1135 (2000)............................................................................................4, 10

*Williams v. Potomac Elec. Power Co.,*
    115 F. Supp. 2d 561 (D. Md. 2000)...........................................................................6

*Yamaha Motor Corp. v. Calhoun,*
    116 S. Ct. 619 (1996) ................................................................................................10

**STATUTES**

33 U.S.C. § 2717(c) ..........................................................................................................5

33 U.S.C. § 2718(a)(1).................................................................................................6, 7

33 U.S.C. § 2718(a)(2).................................................................................................3, 7

33 U.S.C. § 2751(c)(1)....................................................................................................12

42 U.S.C. § 6901..............................................................................................................7

43 U.S.C. § 1820..............................................................................................................4

46 U.S.C. § 30101 ...................................................................................................9

Pub. L. No. 101-380 § 2004, 104 Stat. 507 .........................................................4

Fla. Stat. § 376.011 ................................................................................................7

Fla. Stat. § 376.021(1), (2) and (5) .....................................................................9

Fla. Stat. § 376.041 ................................................................................................8

Fla. Stat. § 376.205 ................................................................................................8

**OTHER AUTHORITIES**

Thomas J. Schoenbaum, *Admiralty and Maritime Law* (4th ed. 2004) ...................................6, 11

2 Thomas J. Schoenbaum, *Admiralty and Maritime Law* (2d ed. 1994) .........................................6

Steven Swanson, *Federalism, The Admiralty, and Oil Spills*, 27 J. of Mar. L. & Com. 379 (1996)...................................................................................................5

Cynthia Wilkinson, et al., *Slick Work:  An Analysis of the Oil Pollution Act of 1990,* 12 J. Energy Nat. Resources & Envtl. L. 1818 (1992) ........................................5

Ernest A. Young, *Preemption at Sea*, 67 Geo. Wash. L. Rev. 273 (1999)....................................5

H.R. Rep. No. 101-653 (1990) (Conf. Rep.).................................................................4

S. Rep. No. 101-94 (1989) .................................................................................4

The St. Joe Company ("St. Joe") files this *Amicus Curiae* Memorandum in Opposition to the Motion of Transocean Offshore Deepwater Drilling, Inc., Transocean Holdings L.L.C., Transocean Deepwater Inc., and Triton Asset Leasing GmbH (collectively, "Transocean") to Dismiss the First Amended B1 Master Claim in Limitation in the above-captioned action (the "Motion to Dismiss") and, specifically, to address the arguments and authorities set forth in Section III of Transocean's Brief in Support of that Motion[1] regarding the alleged preemption by federal maritime law of state common law claims arising from the *Deepwater Horizon* incident, as follows:

## I.

## PRELIMINARY STATEMENT

This Court has enjoined the prosecution of St. Joe's state common law claims against Transocean in Delaware Superior Court pending disposition of Transocean's Motion to Dismiss plaintiffs' claims in this limitation proceeding.[2]  Because the Motion to Dismiss raises issues relating to the application *vel non* of the Monition Order to the pursuit of St. Joe's claims in the

---

[1] *See* Brief in Support of Transocean's Rule 12(b)(6) Motion to Dismiss the First Amended B1 Master Claim in Limitation and First Amended B1 Master Complaint ("Transocean's Brief"), filed February 28, 2011.  *See also id.* at 7-27, § III, entitled "Transocean is entitled to dismissal of all the Claimants' and the Plaintiffs' state common law claims on the basis of preemption."

[2] *See* Order dated March 25, 2011 (D.I. #1765) ("[T]he continued prosecution by the St. Joe Company of its lawsuit against Transocean originally filed in the Superior Court for the State of Delaware, in and for New Castle County, Case No. 10 C-10099, is hereby ENJOINED, STAYED, and RESTRAINED until further order of this Court."); *see also* Transocean's *Ex Parte* Motion for Enforcement of the Limitation of Liability Monition Against St. Joe*,* filed March 22, 2011 (D.I. #1714) at 7 (request for Court order "to enjoin St. Joe's prosecution of the St. Joe lawsuit against Transocean until such time as this Honorable Court resolves the scope of OPA's savings provision incidental to a ruling on Transocean's pending motions to dismiss").

Delaware Action, St. Joe submits this *Amicus Curiae* Memorandum.[3]  As demonstrated herein, Section 2718(a) of the Oil Pollution Act ("OPA") permits the pursuit of state common law claims seeking damages for injuries caused by sea-to-shore oil pollution and, as a matter of law, such claims are not preempted.

## II.

## SUMMARY OF ARGUMENT

In support of its Motion to Dismiss, Transocean asserts that OPA Section 2718(a) does not extend to state common law claims and that, in any event, such claims are preempted by OPA and general federal maritime law.[4]  Those arguments are without merit for two reasons. First, pursuant to its express terms, its legislative history, and the substantial body of judicial decisions construing and applying it, OPA Section 2718(a) permits the pursuit of state common law claims for damages arising from sea-to-shore oil pollution.

Second, general federal maritime law does not preempt state common law claims for damages resulting from its oil pollution injuries, especially in light of OPA.  Sea-to-shore injuries were historically outside the admiralty jurisdiction, and the enactment of the Admiralty Extension Act in 1948 in no way preempted the concurrent application of state law to oil pollution injuries.  More importantly, in 1990, OPA became the exclusive source of federal law with respect to claims for damages resulting from oil pollution – thereby superseding general federal maritime law, the Maritime Extension Act, and even the Limitation Act as to such claims.

---

[3] *See* Transcript of Proceedings, held March 25, 2011, in No. 10-2179, at 39 ("The Court: I don't know what Transocean's position is going to be, but I don't envision any problem with you all filing some sort of – whether you call it an *amicus* brief or whatever you want to do.  Mr. Miller?  Mr. Miller [Transocean's counsel]:  We don't have any problem with that.").

[4] *See* Transocean's Brief at 7-18, 23-27.

Pursuant to Section 2718(a), however, OPA expressly recognized and approved of the concurrent application of state common law to redress sea-to-shore oil pollution.

In sum, federal maritime law does not preempt Section 2718(a) state law claims. Instead, OPA supersedes federal maritime law regarding claims for damages arising from oil pollution while expressly allowing the concurrent prosecution of state law claims – such as those St. Joe asserts against Transocean in the Delaware Superior Court.

**III.**

**ARGUMENT AND AUTHORITIES**

**A.     The Oil Pollution Act Expressly Recognizes The Concurrent Application Of State Common Law To Provide Monetary Redress For Sea-To-Shore Oil Pollution.**

  **1.     OPA Section 2718(a)**

Section 2718(a) of OPA identifies and describes the obligations and liabilities arising under state law that are <u>not</u> preempted, modified, or otherwise affected by the statutory rights and claims created by OPA. Specifically, Section 2718(a) provides:

> Nothing in this Act, or the [Limitation] Act of March 3, 1851 shall –
>
>  (1) affect, or be construed or interpreted as preempting, the authority of any State or political subdivision thereof from imposing any additional liability or requirements with respect to –
>
>   (A) the discharge of oil or other pollution by oil within such State; or
>
>   (B) any removal activities in connection with such a discharge; or
>
>  (2) affect, or be construed or interpreted to affect or modify in any way the obligations or liabilities of any person under The Solid Waste Disposal Act (42 U.S.C. 6901, et seq.) or State law, including common law.[5]

---

[5] *See* 33 U.S.C. § 2718(a)(1) and (2).

3

As demonstrated below, Section 2718 encompasses state law claims in general, and state common law (as well as statutory) claims in particular.

### 2. Congress intended Section 2718(a) to allow for the concurrent application of OPA and state law to redress injuries resulting from oil pollution.

The obvious purpose of Section 2718(a) was to permit the concurrent application of state law, along with OPA, to redress injuries and provide damages for victims of oil pollution. That is clear not only from the statutory language itself,[6] but also from its legislative history,[7] the numerous decisions construing and applying Section 2718(a);[8] and the many articles and

---

[6] *Id.*

[7] S. Rep. No. 101-94, at *2 (1989) ("What the Nation needs is a package of complementary international, national, and State laws that will adequately compensate victims of oil spills"); *id.* at *6 ("To date, Federal legislation has affirmed the rights of States to protect their own air, water, and land resources by permitting them to establish State standards which are more restrictive than Federal standards . . . [OPA] would permit such State laws to continue . . . Any State wishing to impose a greater degree of protection for its own resources and citizens is entitled to do so . . . In any event, the Committee chose not to impose, arbitrarily, the constraints of the Federal regime on the States while at the same time preempting their rights to their own laws."); *id.* at *17 ("Preemption has been discussed by members of the Committee more than any other issue. [OPA] does not embrace any preemption of State oil spill liability laws[.]"). *See also* H.R. Rep. No. 101-653, at 21 (1990) (Conf. Rep.) ("[OPA] states explicitly that nothing . . . shall affect in any way the authority of a State or local government to impose additional liability or other requirements with respect to oil pollution."). In addition, the oil pollution provisions of the Outer Continental Shelf Lands Act ("OCSLA"), which provisions were repealed by the later enactment of OPA, recognized the concurrent application of state law. *See* 43 U.S.C. § 1820 ("Except as otherwise provided in this subchapter, this subchapter shall not be interpreted to preempt the field of liability or to preclude any State from imposing additional requirements or liability for any discharge of oil resulting in damages or removal costs within the jurisdiction of such State.") (repealed by OPA, *see* Pub. L. No. 101-380 § 2004, 104 Stat. 507).

[8] *See United States v. Locke*, 120 S. Ct. 1135, 1146 (2000) ("The evident purpose of the saving clauses [of OPA] is to preserve state laws which . . . establish liability rules . . . relating to oil spills."); *id.* at 1147 ("Our view of OPA's saving clauses preserves this important role for the States"); *South Port Marine, LLC v. Gulf Oil Ltd. P'ship*, 234 F.3d 58, 65 (1st Cir. 2009) ("Congress did not intend the OPA to bar the imposition of additional liability by the States."); *In re Alex C Corp.,* 2003 WL 203078, *4 (D. Mass. Jan. 30, 2003) (*citing* Section 2718(a) and (c), court states that "the OPA expressly preserves state authority to impose additional liability and requirements 'with respect to . . . the discharge of oil or other pollution by oil' within its boundaries, regardless of liability limits under the OPA or, for example, the 1851 Limitation

commentaries on the subject.[9]  In addition, to make clear that such state law can be pursued in state court, OPA Section 2717 provides that a "State trial court of competent jurisdiction over claims for removal costs or damages, as defined under this Act, may consider claims under this Act or State law."[10]

### 3.   Section 2718(a) extends to state common law claims.

Courts that have addressed the issue have *uniformly* held that OPA Section 2718(a) encompasses state common law claims for damages brought by victims of oil pollution seeking compensation for injuries resulting therefrom.[11]  In addition, a leading commentator on admiralty

---

Act."); *Tanguis v. M/V Westchester*, 153 F. Supp. 2d 859, 863 (E.D. La. 2001) ("[T]he OPA explicitly does not preempt state law in the area of oil spill liability and compensation.") (*citing* Cynthia Wilkinson, et al., *Slick Work: An Analysis of the Oil Pollution Act of 1990*, 12 J. Energy Nat. Resources & Envtl. L. 181, 221 (1992)).

[9] *See* Ernest A. Young, *Preemption at Sea*, 67 Geo. Wash. L. Rev. 273, 331 n.384 (1999) ("[T]he OPA's nonpreemption provisions rather clearly ratify *Askew's* recognition that issues of marine pollution fall within the traditional police power concerns of state governments."); Steven R. Swanson, *Federalism, The Admiralty, and Oil Spills*, 27 J. of Mar. L. & Com. 379, 406 (1996) ("Although the [Oil Pollution] Act provides a comprehensive scheme, its language allows the states to supplement the federal rules . . . Thus, Congress chose to allow the states to continue the development of separate laws relating to maritime oil spills"); Wilkinson, *Slick Work*, *supra* note 8, at 220-21 ("The jurisdiction under the OPA of state courts to hear claims for removal costs and damages is not surprising, as the OPA explicitly does not preempt state law in the area of oil spill liability and compensation.").

[10] *See* 33 U.S.C. § 2717(c).

[11] *See The St. Joe Co. v. Transocean Offshore Deepwater Drilling, Inc.*, ___ F. Supp. 2d ____, 2011 WL 915300, *6 (D. Del. March 15, 2011) ("OPA contains extensive saving clauses . . . OPA's § 2718(a)(1)(A) explicitly prevents preemption of state law liability for 'the discharge of oil or other pollution by oil,' a proposition confirmed by the legislative history and judicial decisions . . . St. Joe's Florida tort law claims [for negligence, gross negligence, and strict liability for abnormally dangerous activity] are, therefore, not preempted."); *Russo v. M/T Dubai Star*, 2010 U.S. Dist. LEXIS 50967, *9 n. 4 (N.D. Cal. Apr. 29, 2010) ("OPA does not preempt state laws governing liability and compensation relating to oil spills, such as the claims alleged by plaintiffs in this case," *i.e.*, state law claims for strict liability, negligence, negligence *per se*, public nuisance, and various California statutory claims); *In re Spray II K/S*, 1996 WL 451315, *6 (D. N.J. Aug. 5, 1996) ("As the Court has found that it does not have authority under the Limited Liability Act to enjoin claims pursuant to the OPA, it similarly finds

and maritime law observes that "OPA specifically preserves state law liability and remedies whether by statute or *common law*."[12]  St. Joe is unaware of – and Transocean has failed to cite – *any* decision to the contrary.  In fact, the District of Delaware has rejected the three arguments Transocean asserts in support of its narrow interpretation of OPA's savings provisions, by holding that:  (1) Section 2718(a) applies to state common law as well as claims under state statutory regimes;[13] (2) Section 2718(a) applies not only to discharges of oil within the territory of a state, but also to discharges occurring "in federal waters that cause pollution within that

---

[12] that it lacks authority in this limitation proceeding to enjoin the federal, state and common law claims raised by the claimants related to the oil spill."); *In the Matter of MetLife Capital Corp.*, 132 F.3d 818, 821 (1st Cir. 1997) ("OPA broadly supersedes the Limitation of Liability Act with respect to damages and removal costs under both federal and state law, including common law," quoting with approval from 2 Thomas J. Schoenbaum, *Admiralty and Maritime Law* (2d ed. 1994), at 376).  *See also Isla Corp. v. Sundown Energy, LP,* 2007 WL 1240212, *2 (E.D. La. Apr. 27, 2007) ("OPA does not preempt Plaintiff's state law claims [for negligence and strict liability].")*; Williams v. Potomac Elect. Power Co.*, 115 F. Supp. 2d 561, 564-65 (D. Md. 2000) ("Plaintiffs in this case have clearly pleaded what on their face are purely state law causes of action [for common law negligence, trespass, strict liability, and nuisance] . . . The Supreme Court has . . . effectively foreclosed any argument as to pre-emption in this case.  OPA does not preempt state laws similar to the matters contained in Title I of OPA, such as the state common law actions pleaded here.").

[12] *See* Thomas J. Schoenbaum, *Admiralty and Maritime Law* (4th ed. 2004) § 16.2, at 897 (emphasis added).  *See also id.*  ("State law thus applies free of the OPA limits to liability.  Since most states provide extensive remedies both for removal costs and damages, the net effect is virtually unlimited liability.").

[13] *See St. Joe,* 2011 WL 915300, at *8 ("The first clause preserves 'the authority of any State or political subdivision thereof' to impose 'any additional liability or requirements with respect to' 'the discharge of oil or other pollution by oil within such state; or . . . any removal activities in connection with such discharge.'  33 U.S.C. § 2718(a)(1).  This clause draws no distinction between a State exercising this authority via state common law or a state statutory regime."  The court, therefore, rejected Transocean's argument that § 2718(a)(1) "applies only to state statutory regimes.").

state;"[14] and (3) Section 2718(a)'s reference to "common law" is not limited to state common law relating to solid waste disposal.[15]

Several states utilize a combination of statutes and common law to redress oil pollution injuries.  For example, Florida has enacted legislation providing for a statutory cause of action for damages resulting from oil pollution – namely, the Pollutant Discharge Prevention and Control Act, Fla. Stat. §§ 376.011-376.17, 376.19-376.21 (the "Florida Act").[16]  The Florida Act not only prohibits and provides redress for oil spills occurring within the State's territorial limits, but it also extends to spills taking place outside those limits that cause injury to lands and waters within  the State.[17]  Significantly, the Florida Act – unlike the pollution statutes of some other

---

[14] *See id.* at *7 ("Transocean argues that the saving provisions apply only to state claims for oil discharges within a state's territory, not discharges (like those involved here) occurring in federal waters . . . The Court . . . rejects Transocean's narrow reading of the saving clauses.  By specifying that States can impose additional liability for 'other pollution by oil within such State' (§ 2718(a)(1)(A)), the statute contemplates penalization of more than merely discharges occurring within the state's territory.").

[15] *Id.* at *8 ("The second clause provides in pertinent part:  '[n]othing in this Act . . . shall . . . affect or be construed to affect or modify in any way obligations or liabilities of any person under the Solid Waste Disposal Act (42 U.S.C. 6901 *et seq.*) or State law, including common law.'  33 U.S.C. § 2718(a)(2).  This provision, therefore, makes clear that, in addition to the preservation of state authority to impose liability above and beyond OPA, any liability existing prior to OPA under state law, including common law, is not altered either."  Accordingly, the court rejected Transocean's argument that § 2718(a)(2) "is limited to State law (including common law) relating to waste disposal.").

[16] *See* Fla. Stat. § 376.011 (stating that such sections constitute the "Pollutant Discharge Prevention and Control Act").

[17] Fla. Stat. § 376.041 ("The discharge of pollutants into or upon any coastal waters, estuaries, tidal flats, beaches, and lands adjoining the seacoast of the state . . . is prohibited."); *id.* at § 376.031(7) ("'Discharge' includes, but is not limited to, any spilling [or] leaking . . . which occurs within the territorial limits of the state or outside the territorial limits of the state and affects lands and waters within the territorial limits of the state."); *id.* at § 376.031(16) ("'Pollutants' includes oil of any kind . . . and derivatives thereof[.]").

states[18] – recognizes the concurrent application of state common law to redress such sea-to-shore oil pollution.[19]

In sum, any argument that OPA Section 2718(a) does not extend to state common law claims is foreclosed by the very language of the provision. Section 2718(a) makes clear that OPA does not "affect or modify in any way the obligations or liabilities of any person" under "State law, including common law."[20]

**B.** **General Federal Maritime Law Does Not Preempt State Common Law Claims For Damages Resulting From Oil Pollution Injuries, Especially In Light Of The Provisions Of The Oil Pollution Act.**

   **1.** **The Admiralty Extension Act did not preempt the application of state law with respect to the imposition of liability and the provision of redress for sea-to-shore pollution.**

Federal courts have consistently recognized the special interests of the states in redressing shoreside injuries caused by the effects of oil pollution occurring within, or migrating into, their

---

[18] *South Port Marine,* 234 F.3d at 61 (plaintiff asserted state common law claims of strict liability, negligence, private nuisance, and trespass; however, those claims were barred because Maine's Oil Pollution statute displaced common law claims).

[19] Fla. Stat. § 376.205 ("The remedies in this Act shall be deemed to be cumulative and not exclusive."); *Aramark Unif. and Career Apparel, Inc. v. Easton,* 894 So.2d 20, 25 (Fla. 2005) (Florida Supreme Court holds that provision in state water pollution act that statutory remedies "shall be deemed to be cumulative and not exclusive . . . evidences an intent . . . to create an entirely new cause of action cumulative to the common law."); *Curd v. Mosaic Fertilizer, LLC,* 39 So.3d 1216, 1221-28 (Fla. 2010) (In light of provision of Florida Oil Spill Prevention and Pollution Control Act providing for "[n]onexclusiveness of remedies," plaintiffs were permitted to assert "traditional negligence and strict liability claims" under the common law of Florida, in addition to statutory claims, for injuries resulting from water pollution.). *See also St. Joe,* 2011 WL 915300 at *7 (Section 2718(a) permits state law claims involving discharges of oil in federal waters that cause pollution-related injuries within the territory of the state, and not "merely discharges occurring within the state's territory.").

[20] *See* 33 U.S.C. § 2718(a)(2) (emphasis added).

navigable waters – *i.e.* "sea-to-shore" pollution.[21]   For example, the Florida Legislature has written into law its unique interest in protecting its coastline and the interests of owners of property adjacent thereto.[22]

Shoreside injuries caused by accidents occurring in navigable waters were not historically within admiralty jurisdiction; rather, they were matters of state law.[23]   The passage of the Admiralty Extension Act in 1948[24] in no way diminished or affected the historic power of the

---

[21] *Askew v. Amer. Waterways Operators, Inc.*, 93 S. Ct. 1590, 1597 (1973) ("The damage to state interests already caused by oil spills [and] the increase in the number of oil spills . . . underlie the concern of coastal States."); *Ballard Shipping v. Beach Shellfish*, 32 F.3d 623, 629 (1st Cir. 1994) (noting the importance of "the state's interest in avoiding pollution in its navigable waters and on its shores, and in redressing injury to its citizens from such pollution," and "the state's interest in providing remedies for vessel-caused oil pollution damage").

[22] Fla. Stat. § 376.021(1), (2) and (5) ("The Legislature finds and declares that the highest and best use of the seacoast of the state is as a source of public and private recreation.  The Legislature further finds and declares that the preservation of this use is a matter of the highest urgency and priority, and that such use can only be served effectively by maintaining the coastal waters, estuaries, tidal flats, beaches, and public lands adjoining the seacoast in as close to a pristine condition as possible, taking into account multiple use accommodations necessary to provide the broadest possible promotion of public and private interests . . . The Legislature further finds and declares that the preservation of the public uses referred to herein is of grave public interest and concern to the state in promoting its general welfare . . .").

[23] *Askew*, 93 S. Ct. at 1599 ("Historically, damages to the shore or to shore facilities were not cognizable in admiralty.").

[24] *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 115 S. Ct. 1043, 1047-48 (1995) (Congress enacted the Admiralty Extension Act to change preexisting law that deprived admiralty courts of jurisdiction over accidents occurring on navigable waters but resulting in land-based injuries).  The current version of the Admiralty Extension Act is found in 46 U.S.C. § 30101.  Subsection (a) of that section provides:  "The admiralty and maritime jurisdiction of the United States extends to and includes cases of injury or damage, to person or property, caused by a vessel in navigable waters, even though the injury or damage is done or consummated on land."

states to provide remedies for sea-to-shore oil pollution.[25]   In fact, federal courts have always

recognized the concurrent application of state law to provide redress for such pollution.[26]

Thus, contrary to Transocean's attempt to convince the Court that maritime law preempts

the existence of state common law claims under Section 2718(a) of OPA, there is <u>no</u> absolute

rule of federal maritime preemption of state common law claims.[27]   Indeed, there can be no

preemption if federal law recognizes a concurrent interest of the states in the subject matter in

---

[25] *Askew*, 93 S. Ct. at 1601 ("[S]ea-to-shore pollution," which is "historically within the reach" of state law, "is not silently taken away from the States by the Admiralty Extension Act, which does not purport to supply the exclusive remedy." *St. Joe*, 2011 WL 915300 at *9 ("[P]re-OPA, the Admiralty Extension Act did not preclude concurrent state law claims for sea-to-shore pollution.").

[26] *Locke*, 120 S. Ct. at 1147 (noting that "state laws imposing liability for pollution caused by oil spills" maintain "the established federal-state balance in matters of maritime commerce between subjects as to which the States retain concurrent powers and those over which the federal authority displaces state control," and that "[w]e have upheld state laws imposing liability for pollution caused by oil spills"); *St. Joe,* 2011 WL 915300 at *9 ("OPA explicitly allows concurrent state law claims regarding liability . . . OPA, through its saving clauses, preserves the state law claims which St. Joe asserts, and such claims were recognized prior to OPA.").

[27] *Askew*, 93 S. Ct. at 1600 ("Even though Congress has acted in the admiralty area, state regulation is permissible, absent a clear conflict with the federal law."); *Romero v. Int'l Terminal Operating Co.*, 79 S. Ct. 468, 480 n.32 (1959) ("This court has said that a state, having concurrent jurisdiction, is free to adopt such remedies, and attach to them such incidents, as it sees fit so long as it does not attempt to make changes in the substantive maritime law.") (internal citations omitted); *id.* at 480 ("It is true that state law must yield to the needs of the uniform federal maritime law when this Court finds inroads on a harmonious system.  But this limitation still leaves the States a wide scope."); *Locke*, 120 S. Ct. at 1148 ("It is fundamental in our federal structure that States have vast residual powers.  Those powers, unless constrained or displaced by the existence of federal authority or by proper federal enactments, are often exercised in concurrence with those of the National Government."); *Yamaha Motor Corp. v. Calhoun*, 116 S. Ct. 619, 623 (1996) ("With admiralty jurisdiction, we have often said, comes the application of substantive admiralty law.  The exercise of admiralty jurisdiction, however, does not result in automatic displacement of state law.") (internal citations and quotations omitted); *Ballard*, 32 F.3d at 626 ("[A]n injured party may have claims arising from a single accident both under federal maritime law and under state law, whether legislation or common law.") (*citing* Gilmore*, The Law of Admiralty*, §§ 1-13, at 37 (2d ed. 1975)).

question and permits concurrent application of state law with respect thereto.[28]  As the United States Supreme Court has stated:  "We decline to move the *Jensen* line of [maritime preemption] cases shoreward to oust state law from any situations involving shoreside injuries by ships on navigable waters."[29]

In sum, even before the enactment of the OPA, parties aggrieved by sea-to-shore oil pollution could avail themselves of causes of action and remedies created by state law.  As discussed below, OPA made even clearer the availability of such claims to victims of oil spills.

      **2.**      <u>**The Oil Pollution Act supersedes the Admiralty Extension Act, the Limitation Act, and general federal maritime law with respect to claims for damages resulting from oil pollution – while recognizing the viability of concurrent state law claims.**</u>

In two major respects, Congress's enactment of OPA eliminated any doubt regarding the availability of state common law claims to redress shoreside injuries caused by oil pollution. <u>First</u>, OPA became the exclusive source of federal law concerning claims and damages for injuries caused by oil pollution.[30]  As such, OPA preempts federal maritime law with respect to such claims[31] and, thus, preempts the Admiralty Extension Act.[32]

---

[28] Thomas J. Schoenbaum, *Admiralty and Maritime Law* (4th ed. 2004) § 2.3 at 96-97 ("The admiralty preemption analysis considers several factors:  First, is the state law supplementary to federal law or does it materially alter rights and duties under the maritime legal system?  State law is allowed to fill gaps and supplement federal law, but it cannot defeat or narrow a fundamental tenet of admiralty law.  Second, state law will not be preempted if the state has a strong interest in the subject matter and there is correspondingly little need for uniformity; if, however, there is a strong federal interest, state law will not be allowed to impair the essential uniformity of maritime law.").  *See also Am. Dredging Co. v. Miller*, 114 S. Ct. 981, 987 (1994); *Askew*, 93 S. Ct. at 1598-1601; *So. Pac. Co. v. Jensen*, 37 S. Ct. 524, 529 (1917).

[29] *See Askew*, 93 S. Ct. at 1601.

[30] *Gabarick v. Laurin Maritime (America), Inc.* 623 F. Supp. 2d 741, 748 (E.D. La. 2009) ("Congress's intent in enacting OPA" was "the creation of a single Federal law regarding liability for oil pollution."); *Gatlin Oil Co.*, *Inc. v. United States*, 169 F.3d 207, 209 (4th Cir. 1999) ("Congress enacted the Oil Pollution Act . . . in the wake of the Exxon Valdez oil spill to

  Second, OPA superseded the application of the Limitation Act to state law claims within

the ambit of Section 2718(a)[33] and, thus, removed those claims from the scope of monition-

---

provide a prompt, federally-coordinated response to oil spills in navigable waters of the United States and to compensate innocent victims.").

  [31] *Gabarick,* 623 F. Supp. 2d at 750 ("OPA preempts general maritime law claims that are recoverable under OPA."); *Tanguis,* 153 F. Supp. 2d at 867 ("The Court finds that OPA establishes an entirely new, federal cause of action for oil spills . . . This new scheme includes new remedies, which, in many respects, preempt traditional maritime remedies."); *Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atlantic Corp.*, 924 F. Supp. 1436, 1447 (E.D. Va. 1996) ("OPA clearly preempts maritime law as to recovery of cleanup expenses and the costs of compensating injured persons . . . Because OPA provides a comprehensive scheme for the recovery of oil spill cleanup costs and the compensation of those injured by oil spills, the general maritime law does not apply to recovery of these types of damages."). Significantly, Courts have rejected the argument that the admiralty and maritime law "savings provision" within OPA – 33 U.S.C. § 2751(c)(1) – provides for concurrent application of maritime law and OPA with respect to claims for oil pollution damages. *See Tanguis,* 153 F. Supp. 2d at 866-67 ("[T]he first subsection of the Admiralty and Maritime Savings Clause recognizes that certain maritime remedies are preempted by OPA, while others survive," such as claims for *in rem* remedies).

  [32] *St. Joe,* 2011 WL 915300 at *9 (D. Del. 2011) ("[P]re-OPA, the Admiralty Extension Act did not preclude concurrent state law claims for sea-to-shore pollution; OPA has since trumped the Admiralty Extension Act with regards to oil pollution liability"); *Askew v. Amer. Waterways Operators, Inc.*, 93 S. Ct. 1590, 1601 (1973) ("[S]ea-to-shore pollution . . . is not silently taken away from the States by the Admiralty Extension Act, which does not purport to supply the exclusive remedy.").

  [33] *Bouchard Transp. Co., Inc. v. Updegraff,* 147 F.3d 1344, 1347 (11th Cir. 1998) ("OPA . . . explicitly supersedes the Limitation Act's liability limits with respect to claims for cleanup costs and damages resulting from a discharge of oil."); *In re Spray II K/S,* 1996 WL 451315 at **4-5 (Plaintiff asserted claims under OPA, state statutes, general maritime law, and state common law. "The legislative history of the OPA confirms the Court's interpretation that the Limited Liability Act should not be applied to claims stemming from oil spills . . . According to the Senate report accompanying the Oil Pollution Act . . . 'this bill completely supersedes the 1851 statute with respect to oil pollution.' . . . In discussing the relatively new Oil Pollution Act, one commentator has concluded that the 'OPA broadly supersedes the Limitation of Liability Act with respect to damages and removal costs under both federal and state law, including common law.' [*citing* Schoenbaum, *Admiralty and Maritime Law* 2 (2d ed. 1994) at 376] . . . Based on the plain meaning of the Oil Pollution Act and its legislative history, the Court concludes that the Limited Liability Act does not apply to claims relating to an oil spill."); *In the Matter of MetLife Capital Corp.*, 132 F.3d at 821 (1st Cir. 1997) (referring to Section 2718(a) as "repealing the Limitation Act as to state and local statutory remedies" and Section 2718(c)(1) as "repealing the Limitation Act as to additional liability imposed by . . . any state"); *id.* at 820, 824 (First Circuit affirmed district court's order allowing "any claims for oil spill removal costs or

related injunctions.[34]  In fact, OPA has been held to supersede the application of the Limitation Act to the Florida Pollutant Discharge Prevention and Control Act[35] – which, as discussed above, specifically allows for the concurrent prosecution of common law claims.[36]

In sum, federal maritime law has *never* preempted the application of state law to redress shoreside injuries caused by sea-to-shore oil pollution.  Of equal importance, OPA expressly recognizes the concurrent application of state law (including state common law) in redressing such harms, while effectively preempting federal maritime law on the subject.

**3.** **In the face of OPA Section 2718(a) and the historical role of the states in redressing injuries caused by sea-to-shore oil pollution, Transocean's preemption arguments defy logic and ignore precedent.**

Transocean asserts that "OPA displaces the general maritime law, and the general maritime law preempts state common law. . . where OPA provides a remedy."[37]  The end product of that circular "logic" is the flawed conclusion that OPA displaces and preempts state common

---

damages resulting from or in any way connected with [the maritime oil pollution incident] to be asserted independently of the limitation of liability proceedings."); *id.* at 821 ("[A] plain reading . . . suggests that the OPA repealed the Limitation Act with respect to removal costs and damages claims against responsible parties."); *In re Southern Scrap Material Co., LLC*, 541 F.3d 584, 594 n.16 (5th Cir. 2008) (*citing MetLife*, among other decisions, for the proposition that "courts have found that other later-enacted statutes impliedly repealed the Limitation Act for cases arising under those statutes").

[34] *In re Spray II K/S*, 1996 WL 451315 at *6 ("As the Court has found that it does not have authority under the Limited Liability Act to enjoin claims pursuant to the OPA, it similarly finds that it lacks authority in this limitation proceeding to enjoin the federal, state and common law claims raised by the claimants related to the oil spill.").

[35] *Bouchard*, 147 F.3d at 1352 ("OPA . . . authorizes states to adopt liability laws for oil spills and exempts those laws from provisions of the Liability Act.  33 U.S.C. § 2718. Accordingly, the Florida Act is neither subject to the Limitation Act's provisions nor otherwise preempted.").

[36] *See supra* note 19 and accompanying text.

[37] *See* Transocean's Brief at 12.

13

law causes of action and damages for injuries caused by sea-to-shore oil pollution.  However, OPA's explicit recognition in Section 2718(a) of the concurrent application of "State law, including common law," undermines Transocean's argument at the outset.

Because, as Transocean acknowledges, OPA "displaces" general maritime law, any preemptive effect that federal maritime law might otherwise have had with regard to claims for oil pollution damages is also necessarily "displaced" in favor of OPA.  Thus, one must look to the provisions of OPA itself for guidance on the availability and viability of concurrent state law claim and remedies.  Of course, as previously established,[38] OPA Section 2718(a) expressly permits – rather than implicitly preempts – the prosecution of state common law causes of action for such damages.[39]

Juxtaposed against the plain language of Section 2718(a) and the body of case law uniformly recognizing the viability of state common law claims to redress sea-to-shore oil pollution, Transocean relies on the Fifth Circuit's decisions in *Testbank* and *Marastro* in support of its preemption theory.[40]  Tellingly, neither of those cases involved claims for damages caused by sea-to-shore oil pollution – for which the application of state common law is expressly permitted by OPA Section 2718(a).  Indeed, no court that has considered the availability of state

---

[38] *See supra* § III.A.

[39] The cases cited by Transocean do not hold to the contrary.  *See Tanguis*, 153 F. Supp. 2d at 867 (plaintiffs asserted state common law claims together with OPA claim); *Gabarick*, 623 F. Supp. 2d at 750-51 (plaintiffs asserted only OPA claims and maritime claims that were held to be preempted by OPA); *In re Alex C Corp.*, 2003 WL 203078, at *11 (OPA preempted maritime claims); *Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atlantic Corp.*, 924 F. Supp. 1436, 1447 (E.D. Va. 1996) (OPA preempted maritime claims).

[40] *See State of Louisiana ex. rel. Guste v. M/V Testbank*, 752 F.2d 1019 (5th Cir. 1985); and *Marastro Compania Naviera, S.A. v. Canadian Maritime Carriers, Ltd.*, 959 F.2d 49 (5th Cir. 1992).

common law claims for oil spill damages after the enactment of OPA in 1990 has ever extended *Testbank* or *Marastro* to preempt such state law claims.

There can be no preemption where, as here, the applicable federal statutory scheme – which constitutes the exclusive source of federal law on the subject – expressly permits the concurrent application of state law that imposes greater liability on wrongdoers and responsible parties than does the federal statute.   Because OPA approves of, rather than prohibits, the prosecution of claims for damages resulting from oil pollution under state statutes and state common law, there can be no preemption based upon any alleged:   (a) contravention of an essential purpose expressed by an act of Congress; (b) material prejudice to the characteristic features of the general maritime law; or (c) interference with the proper harmony and uniformity of maritime law in interstate relations.[41]   Far from mandating uniformity, OPA permits diversity and variation among concurrent state law claims and remedies for sea-to-shore oil pollution.

## IV.

## CONCLUSION AND REQUEST FOR RELIEF

For all the foregoing reasons, St. Joe respectfully requests that this Court enter an order: (1) denying Transocean's Motion to Dismiss plaintiffs' state common law claims seeking damages for injuries caused by sea-to-shore pollution; and (2) declaring that OPA Section 2718(a) encompasses state common law claims, and that such claims are not preempted by general federal maritime law or by OPA.

---

[41] The three-prong preemption test set forth above was first articulated by the Supreme Court nearly a century ago.  *See Jensen*, 37 S. Ct. at 529 (1917).

Dated:  April 6, 2011                                    Respectfully submitted,


                                                          By:   /s/ James S. Renard
                                                              William A. Brewer III (Texas, No. 02967035)
                                                              wab@bickelbrewer.com
                                                              James S. Renard (Texas, No. 16768500)
                                                              jsr@bickelbrewer.com
                                                              Robert W. Gifford (New York, No. 046231)
                                                              rzg@bickelbrewer.com

                                                          **BICKEL & BREWER**
                                                          4800 Comerica Bank Tower
                                                          1717 Main Street
                                                          Dallas, Texas  75201
                                                          Telephone:  (214) 653-4000
                                                          Facsimile:  (214) 653-1015

                                                          **ATTORNEYS FOR**
                                                          **THE ST. JOE COMPANY**


16

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing The St. Joe Company's *Amicus Curiae* Memorandum in Opposition to Transcoean's Motion to Dismiss the First Amended B1 Master Claim in Limitation has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 6th day of April, 2011.

      /s/ Robert W. Gifford
Robert W. Gifford

17