UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | MDL-2179 |
| THIS DOCUMENT RELATES TO: | SECTION J |
| ALL ACTIONS | JUDGE BARBIER<br>MAG. JUDGE SHUSHAN |

**SUPPLEMENTAL NOTICE ON BEHALF OF THE STATE OF MISSISSIPPI REGARDING CONTINUED VIOLATIONS OF OPA BY BP AND ITS AGENTS, KENNETH FEINBERG AND THE GULF COAST CLAIMS FACILITY**

INTRODUCTION

The State of Mississippi, through its Attorney General, Jim Hood, provides the Court with supplemental notice of BP's continued violation of the Oil Pollution Act of 1990 ("OPA") in the processing and payment of interim, short-term damages resulting from the Deepwater Horizon oil spill. Mississippi also renews its request for court intervention and supervision over the claims process administered by BP, through its agents Kenneth Feinberg and the Gulf Coast Claims Facility ("GCCF"). Based on the additional facts and arguments presented herein, the Attorney General of Mississippi respectfully requests that the Court exercise its jurisdiction to order an immediate independent audit of the GCCF claims process, and to conduct a subsequent evidentiary hearing to evaluate the GCCF's compliance with OPA.[1]

---

[1] The Attorney General is not withdrawing his previous requests for relief from this Court, including the appointment of independent monitors to oversee the claims process. However, based on recent events and newly obtained information, the Attorney General urges the Court to take immediate action to provide transparency and fairness to the GCCF claims evaluation procedures.

## I.  SUMMARY

More than a month has passed since the parties and interested States filed extensive briefs in this Court detailing the repeated and extensive violations of OPA by BP in the administration of its OPA-mandated claims process.  However, despite the ample notice that those filings should have provided to BP and Mr. Feinberg, Administrator of the GCCF, BP and the GCCF have continued to violate the requirements of OPA and the rights of claimants.

In particular, BP, through the artifice of the GCCF, continues to delay and deny claimants timely payment of their interim, short-term damages, as mandated by Sections 2705(a) and 2714(b)(2) of OPA.  Further, BP, through the GCCF, continues to use economic duress to manipulate financially desperate claimants into providing BP, and other responsible parties, with an improperly broad Release of claims and legal rights in exchange for inadequate consideration, in violation of Section 2715(b)(2) of OPA, state law, and basic principles of fairness and due process.  BP, through the GCCF, continues to process few interim claims – instead using its resources to extract releases from claimants through the "Quick Payment" final claims process that BP and Mr. Feinberg have contrived.

Despite the obvious and undisputed failure of the GCCF to process interim, short-term claims, BP has chosen to significantly reward Kenneth Feinberg for the manner in which he is administering the GCCF.  On March 25, 2011, BP announced that it was increasing Mr. Feinberg's compensation from $850,000 per month to $1.25 million per month, *retroactive to January 15, 2011*.[2]  It speaks volumes about what services that BP requires Mr. Feinberg to perform, if BP believes that his performance to date merits more than a 47% increase in

---

[2] http://blog.al.com/press-register-business/2011/03/feinberg_gets_a_raise_bps_pay.html

compensation retroactive to January 15.  In the absence of swift, firm and decisive judicial intervention and the imposition of Court-mandated and Court-controlled supervision of the claims process provided by BP, the remedial purposes of OPA will continue to be subverted by BP, through the improper denial or delayed payment of legitimate interim, short-term damage claims.

## II.  UPDATED FACTS

On February 18, 2011, three major events occurred relating to the BP claims process as administered by the GCCF.  First, the parties and interested States filed briefs in this Court detailing how and whether the BP claims process, as administered by the GCCF, fully complied with OPA mandates.  Second, the GCCF claimed that it began implementing its methodology for processing and paying interim and final claims.  And, third, the State of Mississippi initiated action through its consumer protection authority to obtain the information necessary from the GCCF in order to ensure the transparency of the claims process that BP and Kenneth Feinberg had promised but failed to provide.

When the parties filed their briefs on February 18, of the more than fifty thousand interim claims filed since November 23, 2010, then-pending, the GCCF had only paid *one* interim, short-term claim filed by a business and *no* interim, short-term claims filed by individuals.  On that same date, eighty-seven days after stopping the processing of all interim, short-term claims, the GCCF allegedly implemented the final and interim claims processes outlined in the methodologies BP and Kenneth Feinberg contrived, to which the Plaintiffs' Steering Committee ("PSC") and multiple State Attorneys General filed objections in this Court in their February 18th

briefs. Accordingly, Mr. Feinberg claimed that he had begun to process all pending interim and final claims that had been filed since November 23, 2010.

On March 3, Mr. Feinberg met with and promised the Governor and Attorney General of Florida that the GCCF would "process" 25% of all pending interim and final claims by March 31.[3] On March 4, Mr. Feinberg similarly met with and promised the Governor and Attorney General of Alabama that the GCCF would "process" 25% of all pending claims by March 31.[4] Meanwhile, on March 1, Mr. Feinberg was quoted in the foreign press claiming that more than 80% of pending claims have inadequate documentation, and inferring that all such allegedly deficient claims would be denied any payment.[5] The GCCF website's homepage also contains a claim that "less than 20% of claimants have submitted complete 2010 supporting documentation."[6]

Predictably, on March 14, Mr. Feinberg and the GCCF issued a press release claiming that 54% of all pending claims had been "processed" by the GCCF.[7] The GCCF website's homepage now has a notice claiming that "the GCCF has processed over 65% of all Interim and Final Claims Received."[8] Mr. Feinberg has achieved this inflated number of "processed" claims by counting the "Quick Payment" final claims in his total of "processed" claims, even though

---

[3] http://www.postonpolitics.com/2011/03/scott-bondi-persuade-bp-claims-czar-to-improve-florida-cases/

[4] http://blog.al.com/live/2011/03/ken_feinberg_promises_to_impro.html

[5] http://www.guardian.co.uk/environment/2011/mar/01/bp-lawyer-gulf-spill-disaster-claims ("Upwards of 100,000 claims arising from the BP oil disaster in the Gulf of Mexico may never be paid, the beleaguered administrator of the oil company's compensation fund has acknowledged.").

[6] http://www.gulfcoastclaimsfacility.com/index

[7] http://www.gulfcoastclaimsfacility.com/press18.php

[8] http://www.gulfcoastclaimsfacility.com/index

most of those "Quick Payment" claims had already been processed before February 18. Further, the "Quick Payment" claims require little more processing than verifying that a prior payment was received during the "Emergency Advance Payment" period and cutting a check. This distortion of the truth is emblematic of the media campaign launched by Mr. Feinberg, acting on BP's behalf, to mislead the public regarding the GCCF and to conceal the repeated violations of OPA by BP, through the GCCF claims process.[9]

In response, on March 29 and 30, 2011, the Office of the Mississippi Attorney General, in coordination with the Mississippi Center for Justice, hosted a series of town hall meetings along Mississippi's Gulf Coast, to hear concerns from oil spill claimants regarding their experiences with the BP/GCCF claims process. On March 29, town hall meetings were held in Waveland and Gulfport, Mississippi. On March 30, town hall meetings were held in Biloxi and Pascagoula, Mississippi. Staff from the Mississippi Attorney General's Office were on hand to gather information from claimants whose claims were denied and to hear their experiences with the GCCF process. Those claimants were asked to bring copies of their paperwork if at all possible. Attorneys from the Mississippi Center for Justice were on hand to answer claimants' questions regarding the claims process and to assist with individual claim issues.

The town hall meetings revealed that a breaking point in the health and economic viability of our coastal citizens and communities has now been reached as a result of the failure of the claims process to timely and fully compensate claimants with legitimate claims for the

---

[9] Similarly, on November 19, 2010, Deputy Attorney General Thomas Perrelli of the United States Department of Justice admonished Mr. Feinberg that all pending Emergency Payment claims should be "processed" by December 15, 2010. (Exhibit A). In response, Mr. Feinberg wrote Mr. Perrelli assuring him that the GCCF would meet this goal. (Exhibit B). Then, in the succeeding ten days, the GCCF denied more than 100,000 claims for interim relief – most for alleged "lack of documentation." *See* http://blog.al.com/live/2010/12/more_than_100000_emergency_oil.html

losses resulting from the Deepwater Horizon Incident.  Indeed, the claims process is getting *worse* without independent supervision and continues to lose credibility.  Claimants perceive the GCCF claims process as little more than a mechanism for BP to extract Releases from claimants so that BP can avoid paying the damages that they owe or will owe for oil spill related injuries.

The GCCF appears to be attempting to aid BP in evading payment of legitimate claims by imposing unreasonable requests for unnecessary documentation and then using the lack of such documentation as grounds for denial of provable, legitimate claims.  To this end, GCCF adjusters have issued repeated document requests, sometimes for forms not apparently relevant to a specific employment field or claim.  Claimants also reported blatant inconsistencies in the evaluation and payment of claims, including the categorical denial of certain groups of claims (such as casino employees' claims), and the disparate treatment of claims submitted by workers performing the same job at the same place of employment.

Town hall meeting attendees repeatedly complained that the GCCF keeps "restarting the clock" on the ninety-day period provided under OPA for the responsible party to evaluate and pay a claim before a claimant may seek redress through the Oil Spill Liability Trust Fund or the courts.  33 U.S.C. § 2713(c)(2).  Due to inconsistencies in the information they receive from GCCF representatives, claimants are understandably confused about when the ninety-day period begins to run – whether from the date of filing a claim, the date of submitting supporting documentation, or some other triggering event.  They also do not understand whether the responsible party is allowed to take the full ninety days each time a claimant is required to file another claim – from the "Emergency Claim" period to the "Interim and Final Claim" process, and each quarterly interim claim period established by the GCCF.  Court guidance on this issue is

necessary to establish some consistency in the claims process and to bring the GCCF into compliance with OPA.

In addition, the GCCF's unwarranted delay in paying legitimate claims is compounding the harm to claimants who are being forced by financial hardship to make difficult decisions to support themselves and their families. Claimants have resorted to selling essential business equipment, running up credit card debt, and other desperate means to make up for the deficit in their incomes caused by the oil spill and BP's failure to promptly and adequately compensate victims for their losses.

As of April 6, 2011, according to the GCCF's own statistics,[10] only about 7.5% of the total pending interim claims have been paid. In fact, barely 3% of interim business claims and 9% of individual interim, short-term claims have been paid by the GCCF. As of April 6, the GCCF has made offers to only a fourth of the total pending Full Final claims submitted to the GCCF. The average amount offered to individuals is less than $8,200 and to businesses is less than $56,000 for all current and future damages resulting from the Deepwater Horizon spill and its aftermath.

When the $10 million payment to BP's unidentified business partner is subtracted from the full final payments offered by the GCCF to business claimants, the average amount *offered* to business claimants for all current and future damages resulting from the Deepwater Horizon spill is less than $52,000. Not surprisingly, not counting the unidentified BP business partner that received the $10 million payment from the GCCF trust fund at BP's request, fewer than a fourth of business claimants that have been offered a "Full Final" payment have accepted the offer.

---

[10] Attached as Exhibit C is the GCCF's Report of Overall Statistics for April 6, 2011.

### III.  AUDIT AND EVIDENTIARY HEARING

The history of BP's conduct with respect to its implementation of the OPA-mandated claims process, including the actions of the GCCF since February 18, demonstrates that unless and until this Court exerts its jurisdiction over the BP claims process to compel BP and its agents to process and pay claims in good faith, BP and it agents, Mr. Feinberg and the GCCF, will continue to subvert the remedial purposes of OPA.  As a result, the people of the Gulf region will continue to be denied the compensation they are owed for their damages resulting from the Deepwater Horizon Incident.

Due to the lack of cooperation by BP and Mr. Feinberg in making the claims process transparent, this Court can only rely on anecdotes from claimants to the press and to State consumer protection officials, including the staffs of the Gulf State Attorneys General, to form the basis for any challenge to the adequacy of the current BP claims process or to fashion a remedial order to cure alleged violations of OPA by BP and the GCCF.  While such anecdotal evidence paints a disturbing picture and has generated grave concerns by many public officials regarding the apparent violations of OPA, a reliable picture of how and whether the GCCF is operating in accordance with OPA mandates (as BP and Mr. Feinberg insist is the case) can only be obtained through an objective assessment of case files.

To date, the GCCF has refused to comply with efforts by the State Attorneys General for access to the information needed to perform an independent audit of the claims process. Accordingly, the Attorney General of Mississippi respectfully requests that the Court immediately order an audit at BP's expense by an independent auditor, appointed by and under the direction of the Court, followed by an evidentiary hearing to present the auditor's findings

regarding the GCCF claims process.  The auditor could conduct a review of a representative, random, significant sample of files.  The Court could direct that GCCF staff be made available to the auditor to explain the GCCF process, adjusting practices, calculations, methodologies, protocols, and other procedures as needed.  Also, the GCCF should provide the Court's auditor, the PSC and the interested Gulf State Attorneys General with copies of all GCCF manuals, procedures, protocols, directives, guidance and exemplars of all GCCF communications to claimants.

The results of the Court-appointed auditor's evaluation could be provided to the parties and public at an evidentiary hearing.  Further, the findings of such an audit could form the basis of any remedial order the Court determines is appropriate to bring the GCCF claims process into compliance will OPA mandates.

## **CONCLUSION**

For the foregoing reasons and pursuant to the authorities and exhibits previously provided to the Court and incorporated herein, the Attorney General for the State of Mississippi respectfully submits that the BP claims process, as administered by the GCCF and Kenneth Feinberg on behalf of BP, is in continuing violation of OPA, state law, and basic principles of fairness and due process.  Accordingly, the Attorney General respectfully requests that the Court intervene and take all necessary steps to bring the BP claims process, as administered by the GCCF, into compliance with all legal requirements.

Respectfully submitted, this the 7th day of April, 2011.

_____
JIM HOOD, ATTORNEY GENERAL FOR THE STATE OF
MISSISSIPPI, *EX REL*. THE STATE OF MISSISSIPPI

_____
MARY JO WOODS, MSB NO. 10468
SPECIAL ASSISTANT ATTORNEY GENERAL

Office of the Attorney General
Post Office Box 220
Jackson, Mississippi 39205
Telephone No. (601) 359-3680
Facsimile: (601) 359-2003
E-mail: mwood@ago.state.ms.us

## CERTIFICATE OF SERVICE

I, Mary Jo Woods, Special Assistant Attorney General of the State of Mississippi, do hereby certify that on this date, I filed the foregoing document using the Court's ECF system which will send notification of such filing to all counsel of record in this proceeding.

THIS the 7th day of April, 2011.

/s Mary Jo Woods
MARY JO WOODS, MS BAR NO. 10468
SPECIAL ASSISTANT ATTORNEY GENERAL

Office of the Attorney General
Post Office Box 220
Jackson, Mississippi 39205
Telephone:  (601) 359-3680
Facsimile:  (601) 359-2003
E-mail:  mwood@ago.state.ms.us