UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, on APRIL 20, 2010 | * * * * | MDL NO. 2179 |
| | * | SECTION J |
| THIS DOCUMENT RELATES TO: | * * | JUDGE BARBIER |
| 2:11-cv-00263 | * * | MAG. JUDGE SHUSHAN |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO REMAND**

Plaintiff Buddy Trahan files this Memorandum in Support of his Motion to Remand. Plaintiff Buddy Trahan moves this Court for an order remanding the above-styled and numbered cause to the 270th Judicial District Court of Harris County, Texas, from which it was improperly removed.

## I. NATURE AND STAGE OF PROCEEDINGS

1.      Despite the fact that Buddy Trahan ("Plaintiff") brought his personal injury claims pursuant to the general maritime laws of the United States for torts occurring aboard a vessel in navigable waters and did not assert claims under any federal statute, Cameron International Corporation d/b/a Cameron Systems Corporation ("Cameron") removed this case based on 28 U.S.C. § 1331, *et seq.* In particular, Cameron argues that the Court has original subject matter jurisdiction under the Outer Continental Shelf Lands Act ("OCSLA"). 43 U.S.C. § 1349(b)(1)(A). Contrary to Cameron's assertions, federal subject matter jurisdiction is lacking. General maritime law, not OCSLA, governs Plaintiff's claim. Cameron has failed to meet its burden to demonstrate removal is proper. For the reasons that follow, the Court should remand this case to the 270th Judicial District in Harris County, Texas.

2.      Prior to the MDL transfer, Plaintiff previously filed his Motion to Remand and his

Supplement to his Motion to Remand in the Southern District of Texas-Houston Division on September 20 and October 8, 2010 [Doc. #7, #17, in Cause No. 4:10-cv-03198, *Trahan v. BP, PLLC, et. al.*] On or around February 7, 2011, Plaintiff's case was transferred to MDL 2179. Pursuant to Pre-Trial Order #5, Plaintiff is re-filing his Motion to Remand for consideration by this Court. [MDL Doc. #17]

## II. QUESTION PRESENTED

3. Did Cameron properly invoke the Court's removal jurisdiction and meet its burden of establishing federal jurisdiction?

## III. SUMMARY OF ARGUMENT

4. The Court should remand this case for at least the following reasons:

- Plaintiff has not made any claim arising under OCSLA or federal law. Indeed, Plaintiff's Original Petition expressly negates claims arising under any federal statute or falling within the parameters of 28 U.S.C. § 1331.[1]

- Plaintiff's claims are governed by general maritime law and are, therefore, not removable.[2]

- Even if the OCSLA applies (which it does not), Plaintiff's maritime vessel-related tort claims arising on an OCSLA situs are not removable if one of the Defendants is a citizen of the forum state.[3]

- OCSLA exempts vessels such as the *Deepwater Horizon* from its parameters.[4]

## IV. FACTUAL BACKGROUND

---

[1] *See Exhibit A*, Plaintiff's Original Petition, ¶ 1.

[2] *See Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 377-79, 79 S.Ct. 468, 484-85 (1959) (discussing non-removability of "savings to suitors" claims on the grounds that, because maritime claims do not arise under the laws or Constitution of the United Sates they do not present federal questions.)

[3] *See Morris v. TE Marine Corp.*, 344 F.3d 439, 444 (5th Cir. 2003).

[4] *See Walsh v. Seagull Energy Corp.,* 836 F. Supp. 411, 418 (S.D. Tex. 1993) ("In sum, despite the potential and probably intended breadth of the application of federal law under OCSLA to oilfield operations on the shelf, in practice the courts have read *Rodrigue* [*v. Aetna Cas. & Sur. Co.*, 395 U.S. 352 (1969)] to almost strictly limit its operation as to personal injuries to accidents taking place on fixed platforms.); *Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778, 781 (5th Cir. 2009).

2

5.   Plaintiff is an Operations Asset Manager for Transocean Offshore Deepwater Drilling, Inc.[5]

6.   On or about January 30, 2010, the *Deepwater Horizon* vessel commenced a voyage in the Gulf of Mexico in the vicinity of Mississippi Canyon Block 727 to the vicinity of Mississippi Canyon Block 252 for the purposes of conducting contract drilling in the Gulf of Mexico for BP.[6] On April 20, 2010, Plaintiff was onboard the *Deepwater Horizon* vessel in furtherance of maritime activities.[7] An explosion occurred on the *Deepwater Horizon* and it caught fire, causing injuries and death to many workers.[8] The fire burned for two days before the *Deepwater Horizon* finally sank on April 22, 2010, thus ending the vessel's ill-fated voyage.[9] Plaintiff was on the *Deepwater Horizon* at the time of the explosion and was seriously injured.[10]

7.   On August 19, 2010, Plaintiff filed his Original Petition in Harris County, Texas in the 270th Judicial District Court. On August 30, 2010, BP America, Inc, BP Corporation North America, Inc., BP Company North America, Inc., BP Products North America, Inc., BP Exploration & Production, Inc., and BP America Production Company filed their Original Answer.[11] On September 3, 2010, Cameron filed its Original Answer and Notice of Removal.[12]

---

[5] *See Exhibit A,* ¶ 23.

[6] *See Exhibit A,* ¶ 24.

[7] *See Exhibit A,* ¶ 25.

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *See Exhibit B, BP Entities' Original Answer.*

[12] *See Exhibit C, Cameron's Original Answer.*

## V. ARGUMENT & AUTHORITY

### A. Removal in General

8. Removal from state court to federal court is only proper if the action is one over which the federal court possesses subject matter jurisdiction. 28 U.S.C. § 1441(a). Because federal courts are courts of limited jurisdiction, the removing party bears the burden of showing federal jurisdiction exists and removal was proper. *See De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995). The exercise of removal jurisdiction raises significant federalism concerns; therefore, courts must construe removal statutes strictly. *See Eastus v. Blue Bell Creameries, L.P.*, 97 F.3d 100, 106 (5th Cir. 1996). Uncertainties about whether an action may be removed should be construed against removal and in favor of remand. *See Manguno v. Prudential Prop. and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002); *Crossroads of Texas, LLC v. Great-West Life & Annuity Ins. Co.*, 467 F. Supp. 2d 705, 708 (S.D. Tex. 2006).

### B. Plaintiff Has Not Made Any Claims Arising Under Federal Law

9. Plaintiff brought claims in Harris County, Texas pursuant to the general maritime laws of the United States for torts occurring on a vessel in navigable waters in the Gulf of Mexico. Plaintiff confirms in his petition that he is not asserting any claims under any federal statute. Likewise, Plaintiff does not assert claims falling within the parameters of 28 U.S.C. § 1331.[13] Accordingly, Plaintiff's case was not removable on the basis of federal question jurisdiction, and the Court should remand this case to the 270th Judicial District Court of Harris County, Texas.

---

[13] *See Exhibit A, ¶ 1.*

4

### C. Cameron Fails to Demonstrate Removal is Proper

10. The general removal statute 28 U.S.C. § 1441 has two requirements for removal. <u>First</u>, only civil actions "of which the district courts . . . have original jurisdiction, may be removed." 28 U.S.C. § 1441(a). <u>Second</u>, "civil actions founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties." 28 U.S.C. § 1441(b). The removal of other actions depends on the citizenship of defendants. *Id*. Cameron argues removal is proper under 28 U.S.C. § 1441(b) which permits removal if the Court has original jurisdiction, "'without regard to the citizenship or residence of the parties.'" [Docket #1 in Case No. 4:10-cv-0138, ¶ 15] Here, Cameron fails to establish that the Court has "original subject matter jurisdiction" over Plaintiff's claims. [Docket #1 in Case No. 4:10-cv-0138, ¶ 9]

#### 1. Plaintiff's Claims are Governed by General Maritime Law and Not Removable

11. General maritime claims saved to suitors are, of themselves, not removable. *See Romero*, 358 U.S. at 377-79; *In re Dutile*, 935 F.2d 61, 63 (5th Cir. 1991). It is well settled that general maritime claims do not "arise under the Constitution, treaties or laws of the United States" for purposes of original federal question jurisdiction under 28 U.S.C. § 1331. *See Tennessee Gas Pipeline v. Houston Cas. Ins. Co.*, 87 F.3d 150, 153 (5th Cir. 1996); *Romero*, 358 U.S. at 377-79 (discussing non-removability of "savings to suitors" claims on the grounds that, because maritime claims do not arise under the laws or Constitution of the United Sates they do not present federal questions); *In re Dutile*, 935 F.2d at 63 (holding that savings clause claims cannot be removed under 28 U.S.C. § 1441(b) on the sole basis that the maritime claim presents a federal question); *Morris v. TE Marine*, 344 F.3d 439, 444 (5th Cir. 2003) (recognizing that

5

maritime claims are not removable). Accordingly, Plaintiff's general maritime claims are not removable under the first sentence of 28 U.S.C. § 1441(b) by virtue of falling under the admiralty jurisdiction of the federal courts.

12. Since Plaintiff's claims are not removable under 28 U.S.C. § 1441(b), Cameron must have an independent basis for removal. Cameron does not. So, Cameron argues the Court has original jurisdiction under 43 U.S.C. § 1349(b)(1)(A) or OCSLA. Nonetheless, Cameron still fails to meet its burden to demonstrate that removal was proper. Before turning to this inquiry, however, Plaintiff's claims are governed by general maritime law.

### i. General Maritime Law Governs Plaintiff's Claims

13. To the extent Cameron may dispute the applicability of maritime law to Plaintiff's claims, Cameron is simply wrong. Maritime law applies to tort claims that involve (1) a maritime location; and (2) a connection to traditional maritime activity. *See Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock,* 513 U.S. 527, 534, 115 S.Ct. 1043, 1048 (1995). A maritime location exists if the injury occurred on navigable waters. *Id.* at 533-34. The maritime connection exists when the incident has a potentially disruptive impact on maritime commerce and when "'the general character'" of the "'activity giving rise to the incident'" shows a "'substantial relationship to traditional maritime activity.' " *Id.* at 534, quoting *Sisson v. Ruby,* 497 U.S. 358, 364 and n. 2 (1990). Undoubtedly and as demonstrated below, this case is one governed by maritime law.

### ii. A Maritime Location Exists

14. A semi-submersible drilling rig such as the *Deepwater Horizon* is a vessel under the maritime law. *See Dominique v. Ocean Drilling and Exploration Co.*, 923 F.2d 393, 394 n.1 (5th Cir. 1991); *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1214 n. 5 (5th Cir. 1986) (a

6

semi-submersible drilling unit is "indisputably a vessel.") Additionally, at the time of the April 20, 2010 explosion and fire, the *Deepwater Horizon* was afloat in navigable waters in the Gulf of Mexico. Therefore, the Court should find that a maritime location exists.

### iii. A Maritime Connection Exists

15. With regard to the second prong, connection to a traditional maritime activity, a two part inquiry evaluates (1) the disruptive impact on maritime commerce; and (2) whether the activity giving rise to the incident bears a substantial relationship to traditional maritime activity. *See Grubart*, 513 U.S. at 534.

16. In *Coats v. Penrod*, the Fifth Circuit recognized that offshore drilling incidents give rise to general maritime tort claims. *See Coats v. Penrod Drilling Corp.*, 61 F.3d 1113, 1119 (5th Cir. 1995) (en banc). In *Coats*, the plaintiff suffered an injury while repairing and maintaining a jack-up oil rig in navigable waters. *See Coats*, 61 F.3d at 1119. Specifically, the jack-up rig's bullplug failed during pressure testing. *Id*. In *Coats*, the Fifth Circuit found that injuries to workers can have a potentially disruptive impact on maritime commerce. *Id.*

17. In a separate Supreme Court case, a fire aboard a private yacht in navigable waters was held to have a disruptive impact on maritime commerce. *See Sisson*, 497 U.S. at 362, 110 S.Ct. at 2896. One of the traditional rules of admiralty law is to provide compensation for injuries which occur upon a vessel. *Id. at* 497 U.S. at 366-75 (Scalia, J. concurring) (arguing that all vessel-related torts fall within admiralty jurisdiction). Certainly, the explosion and fire aboard the *Deepwater Horizon* not only disrupted drilling operations but also disrupted maritime commerce from the resultant oil that gushed from the well. Accordingly, the Court should find that the explosion and fire aboard the *Deepwater Horizon* satisfies the "disruptive impact" element.

18.     In relation to whether the activity bears a substantial relationship to traditional maritime activity, "[o]il and gas drilling on navigable waters aboard a vessel is recognized as maritime commerce." *See Theriot v. Bay Drilling Corp.*, 783 F.2d 527, 538-39 (5th Cir. 1986) (citing *Pippen v. Shell Oil Co.*, 661 F.2d 378, 384 (5th. Cir. 1981) (In a maritime tort action aboard a vessel, the court found that "offshore drilling the discovery, recovery and sale of oil and natural gas from the sea bottom is maritime commerce.") At the time of the explosion and fire, the *Deepwater Horizon* vessel was "conducting contract drilling in the Gulf of Mexico for BP."[14] Moreover, "[p]roviding compensation for shipboard injuries is a traditional function of the admiralty laws." *See Coats*, 61 F.3d at 1119. Here, Plaintiff sustained serious injuries as a result of the explosion and fire aboard the *Deepwater Horizon*. Thus, the activity in this case is closely related to activity traditionally subject to maritime law and the Court should find that maritime law governs Plaintiff's claims.

### 2. Even if the Accident Occurred on an OCSLA Situs, Plaintiff Asserts Maritime Vessel Related Tort Claims Only and Removal is Improper Because Cameron and Other Defendants are Citizens of Texas

19.     Even where both OCSLA and general maritime law could apply, "the case is to be governed by general maritime law." *See Tennessee Gas*, 87 F.3d at 154. Accordingly, **district courts have found that removal under OCSLA is not proper when maritime law governs the plaintiff's claims and one of the defendants is from the state of suit--**that is precisely the case here. In *Nase v. Tesco Energy, Inc.*, the Court found that remand was proper where the plaintiff's claims were "maritime", [did] "not 'arise under' federal law," and the defendant resided in Louisiana—the state of suit. 347 F. Supp. 2d 313, 318, 319-22 (E.D. La. 2004) (remanding a case removed under the OCSLA to state court because maritime law governed the plaintiff's claims and one of the defendants resided in Louisiana). Other district courts have

---

[14] *See Exhibit A,* ¶ 24.

8

reached the same conclusion. *Patlan v. Apache Corp.*, Civil Action No. 1:09-CV-926, 2010 WL 2293272, * 6 (E.D. Tex. May 11, 2010) (remanding a case removed under the OCSLA because the plaintiff's claims were governed by maritime law and at least one defendant resided in Texas); *Bulen v. Hall-Houston Oil Co.*, 953 F. Supp. 141, 145, (E.D. La. 1997) (remanding because the OCSLA did not provide removal jurisdiction over maritime claims).

20.     Significantly, the Fifth Circuit also recognizes that removal of maritime claims is proper "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." *See Morris*, 344 F.3d at 444. In particular, *Morris* recognized the additional requirement for removal when original jurisdiction is not present, *i.e.*, the citizenship of defendants. *Id.*, quoting *Dahlen v. Gulf Crews, Inc.*, 281 F.3d 487, 492 (5th Cir. 2002). Cameron, however, fails to consider or address this controlling precedent in its Notice of Removal.

21.     In the instant case, Cameron, BP Products North America, Inc., BP Corporation North America, Inc., Halliburton Energy Services, Inc., M-I L.L.C. d/b/a M-I Swaco, Anadarko Petroleum Corporation, and Dril-Quip, Inc. are citizens of Texas. Notably, Cameron did not dispute the citizenship of Defendants in its Notice of Removal.

- Cameron's maintains its corporate offices at 1333 West Loop South, Suite 1700, Houston, Texas, 77027.[15]

- BP Products North America, Inc. and BP Corporation North America maintain their principal places of business in Houston, Texas.[16]

- Halliburton Energy Services, Inc.'s corporate offices are located at 3000 North Sam Houston Parkway East, Houston, Texas, 77032.[17]

---

[15] *See* Cameron's website at www.c-a-m.com.

[16] *See* BP's website at www.bp.com/contacts.do?categoryId=488&contentId=2000552.

[17] *See* Halliburton's website at www.halliburton.com.

9

- Anadarko Petroleum Corporation's corporate headquarters are located at 1201 Lake Robbins Drive, The Woodlands, Texas, 77380.[18]

- M-I L.L.C. d/b/a M-I Swaco's world headquarters are located at 5950 North Course Drive, Houston, Texas 77072.[19]

- Dril-Quip, Inc.'s world headquarters are located at 13550 Hempstead Hwy, Houston, Texas 77040.[20]

22. This case was filed on August 19, 2010. On August 30, 2010, certain BP entities answered Plaintiff's Original Petition, including BP Products North America and BP Corporation North America. Likewise, on September 3, 2010, Cameron filed its Original Answer. Under Texas Rule of Civil Procedure 121, an answer constitutes an appearance "so as to dispense with the necessity for the issuance of service of citation upon him." Tex. R. Civ. P. 121.

23. Based on the foregoing, it is more than clear that many of the properly joined Defendants maintain their principal places of business in Texas and are citizens of Texas. Therefore, even if the OCSLA applied to Plaintiff's claims (a fact Plaintiff denies), removal is improper because at least five Defendants, including Cameron, BP Products North America and BP Corporation North America who have appeared in this case, maintain citizenship in Texas. Thus, the Court should remand this case to the 270th Judicial District Court of Harris County, Texas.

24. As further grounds supporting Plaintiff's Motion to Remand, Plaintiff submits for the Court's consideration an opinion recently issued by this Court.[21] On October 6, 2010, this Court denied the State of Louisiana's Motion for Remand. Although the State of Louisiana's

---

[18] *See* Anadarko's website at www.anadarko.com.

[19] *See* MI-Swaco's website at www.miswaco.com.

[20] *See* Dril-Quip's website at www.dril-quip.com.

[21] *See Exhibit F,* MDL Doc. # 470, 10/06/10 Order, at p. 9-10.

10

motion was denied, this Court's analysis and reasoning in that case supports remand here.

25. Similar to this case, the defendants argued that the court had original jurisdiction under the Outer Continental Shelf Lands Act ("OCSLA"). 43 U.S.C. § 1349(b)(1). Also, like this case, the State of Louisiana argued that even if the court had jurisdiction under OCSLA, "maritime law requires this case to be remanded" under 28 U.S.C. § 1441(b).[22] According to the Court,

> It is well settled that maritime law claims do not arise under the laws of the United States. **It is therefore true that unless a defendant is not a citizen of the state in which the action was brought, § 1441(b) does not allow maritime law claims to be removed to federal court. This is true even if the court has both OCSLA and admiralty jurisdiction because the Fifth Circuit has not determined that finding that a court has OCSLA jurisdiction is synonymous with finding that a plaintiff's claim arises under the laws of the United States**. Ten. Gas Pipeline, 87 F.3d at 156; Walsh v. Seagull Energy Corporation, 836 F. Supp 411, 417-18 (S.D. Tex. 1993); Rivas v. Energy Partners of Delaware, No. Civ. A. 99-2742, 2000 WL 127290, *5 (E.D. La. Feb. 1, 2000) (stating "the Fifth Circuit has never held that where OCSLA and general maritime law overlap, the case is removable without regard to citizenship"; 28 U.S.C. § 1441(b).[23]

26. Notably, the Court denied the State of Louisiana's motion to remand based upon an important distinction from Plaintiff's case. There the defendants were "not citizens of Louisiana (the state in which the action was brought)."[24] Here, however, Plaintiff brought his lawsuit in Texas and, at least, six (6) of the Defendants are citizens of Texas. Therefore, Plaintiff's claims belong in the 270th Judicial District of Harris County, Texas. Accordingly, in the interests of judicial economy, Plaintiff requests that the Court grant Plaintiff's Motion to Remand.

---

[22] *Id.*

[23] *Id.* (emphasis added).

[24] *Id.*

11

### D. Plaintiff's Maritime Tort Claims Relating to the Explosion, Fire and Sinking of the *Deepwater Horizon* Vessel are Exempt from OCSLA

27.     Although the *Deepwater Horizon* was a vessel and OCSLA does not apply to maritime torts that occur aboard vessels, Cameron removed this case based upon OCSLA. 43 U.S.C. § 1333(a). Cameron argues that Plaintiff's claims "stem from an accident aboard an installation or device that was temporarily attached to the seabed floor of the outer continental shelf for the purpose of exploring for, developing, or producing resources therefrom"; and therefore, original subject matter jurisdiction exists pursuant to 43 U.S.C. § 1333(a). [Docket #1, ¶¶ 9, 10]

28.     The law is settled, however, "that when a tort occurs on navigable water on the OCS [on a vessel], as opposed to, for example, a stationary platform, maritime law applies to the ensuing tort action by that worker against third parties." *See Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778, 781 (5th Cir. 2009); *Parks v. Dowell Division of Dow Chemical Corp.*, 712 F.2d 154, 157 (5th Cir. 1983) (holding that injured worker's claim was governed by general maritime law not the OCSLA); *U.S. v. Pickett*, 598 F.3d 231, 236 (5th Cir. 2010) (The OCSLA does not apply to vessels that float on water).

29.     Here, there is no dispute the *Deepwater Horizon* is a vessel. "[A] 'vessel' is any watercraft practically capable of maritime transportation, regardless of its primary purpose or state of transit at a particular moment." *See Stewart v. Dutra Const. Co.*, 543 U.S. 481, 497 (2005) (quoting 1 U.S.C. § 3). The *Deepwater Horizon* was a semi-submersible drilling rig, or technically speaking, a dynamically positioned, mobile offshore drilling unit floating in the Gulf of Mexico. Semi-submersible drilling rigs are considered vessels as a matter of law. *Dominique*, 923 F.2d at 394 n.1; *Fontenot*, 791 F.2d at 1214 n. 5 (a semi-submersible drilling unit is "indisputably a vessel"). In fact, Cameron previously admitted that the *Deepwater Horizon* is a

vessel. To this end, on two occasions, Cameron has conceded that "[t]he *Deepwater Horizon* was a mobile offshore drilling unit . . . that undoubtedly was capable of movement across navigable waters." *See Kleppinger v. Transocean, et. al.,* Civil Action No. 4:10-cv-01851, [Document #41, at p. 11]; *see also Kritzer v. Transocean, et. al.*, Civil Action No. 4:10-cv-01854, [Document #27, at p. 13]

30. Additionally, the *Deepwater Horizon's* captain, Curt Kuchta, testified that the *Deepwater Horizon* was a vessel before it sank[25] and agreed that when the *Deepwater Horizon* was "latched up", it was still under way, *i.e.*, "not at anchor or made fast to shore or ground."[26][27]

31. Fifth Circuit precedent also recognizes that general maritime law applies to torts occurring on vessels floating in navigable waters above the OCS. In *Demette*, the Fifth Circuit held that maritime law applied to a dispute arising from an incident that occurred on a jack-up rig located on the OCS outside of Louisiana's territorial waters. *Demette v. Falcon Drilling Co., Inc.*, 280 F.3d 492, 501 (5th Cir. 2002), *overruled on other grounds, Grand Isle*, 589 F.3d 778 (5th Cir. 2009). In *Demette* the rig was jacked-up on the OCS at the time of the underlying incident. Nonetheless, the Fifth Circuit was clear that the rig did not lose its vessel status. *Id*. at 498 n. 18. In fact, the Fifth Circuit characterized the jack-up rig's vessel status as "beyond dispute" and specifically stated that "[t]his circuit has repeatedly held that special purpose movable drilling rigs, including jack-up rigs are vessels within the meaning of admiralty law."

---

[25] *See Exhibit D, Excerpts from Captain Kuchta's Testimony in the Joint U.S. Coast Guard/MMS Investigation, at p. 232.*

[26] *See Exhibit E, Excerpts from Captain Kuchta's Testimony in the Joint U.S. Coast Guard/MMS Investigation, at p. pp. 150-151, 155, and 206-07.*

[27] It is clear that during its operations in connection with the Macondo well the *Deepwater Horizon* was never attached to the ocean floor; instead, it stabilized itself by using complex "thruster" technology and was connected to nothing at all except –via a 5,000-foot long rise pipe- the wellhead.

*Id*. Further, the majority conducted a choice-of-law analysis and concluded that the Longshore and Harborworkers' Compensation Act applied to the indemnity agreement at issue. *Id*. at 501. In relation to this result, the Court stated, "In reaching this conclusion we acknowledge the dissent's puzzlement at the conclusion that a jack-up rig is a vessel and that the maritime law can apply on an OCSLA situs." *Id*. at 503. Accordingly, *Demette* stands for two propositions important to Plaintiff's Motion to Remand: (1) a vessel retains its vessel status, even when secured to the seabed of the OCS, and (2) maritime law can apply when a vessel is within OCSLA jurisdiction.

32. In 2006, another Fifth Circuit panel applied the two propositions from *Demette* in *Strong v. B.P Exploration & Prod., Inc.* The panel considered whether a liftboat jacked up on the OCS outside of Louisiana's territorial waters was a vessel. *Strong*, 440 F.3d 665, 669 (5th Cir. 2006). This issue arose from BP's argument that the maritime law governed the tort claim of Strong, a wireline worker, who was injured aboard the liftboat. *Id*. at 668. The liftboat was positioned next to BP's fixed platform and served as additional workspace for the various operations performed at the well. *Id*. at 667. Relying on *Demette*, the unanimous panel resolved the issue of vessel status in one sentence. "The liftboat, although jacked up and not 'under sail,' qualifies as a vessel on navigable waters." *Id*. at 669 (citing *Demette*, 280 F.3d at 498 n. 18). Additionally, the Fifth Circuit concluded that the maritime law applied to the plaintiff's tort claim. *Id*. at 669-670.

33. Thus, *Demette* and *Strong* confirm that a vessel, jacked up on the OCS and not "under sail," remains a vessel, and the maritime law applies to a claim arising on that vessel. As such, even if the *Deepwater Horizon* was "temporarily attached to the seabed" at the time of the explosion (an issue in dispute), the *Deepwater Horizon* was still a floating vessel and Plaintiff's

14

maritime tort claims are not precluded, preempted by, or removable pursuant to OCSLA; therefore, remand to the 270th Judicial District Court of Harris County, Texas is proper.

## VI. CONCLUSION

Based on the foregoing authority and analysis, Plaintiff Buddy Trahan respectfully requests that the Court remand this case to the 270th Judicial District of Harris County, Texas and for all other relief the Court deems appropriate.

Respectfully submitted,

**Lubel Voyles LLP**

By: /s/ Lance H. Lubel
    Lance H. Lubel
    Texas State Bar No.: 12651125
    Adam Q. Voyles
    Texas State Bar No.: 24003121
    McKenna Harper
    Texas State Bar No.: 24041056
    5020 Montrose Blvd., Suite 800
    Houston, Texas 77006
    Telephone No.: (713) 284-5200
    Facsimile No.: (713) 284-5250
    Email: lance@lubelvoyles.com
           adam@lubelvoyles.com
           mckenna@lubelvoyles.com
    **ATTORNEYS FOR PLAINTIFF**

## **CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that the above and foregoing *Plaintiff Buddy Trahan's Memorandum In Support of Motion to Remand* has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this the 8th day of April, 2011.

      /s/ Lance H. Lubel
      Lance H. Lubel