Filed 10 August 19 P12:04
Loren Jackson - District Clerk
Harris County
ED101J015918840
By: Velina Brooks

CAUSE NO. _____

| | | |
|---|---|---|
| **BUDDY TRAHAN** | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | HARRIS COUNTY, TEXAS |
| | § | |
| BP, PLC; et. al | § | |
| | § | |
| Defendants. | § | ____th JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION

Plaintiff Buddy Trahan ("Trahan" or "Plaintiff") files this original petition and asks the Court to enter judgment against BP, Plc, BP America, Inc., BP Corporation North America, Inc., BP Company North America, Inc., BP Products North America, Inc., BP Exploration & Production, Inc., BP America Production Company, Halliburton Energy Services, Inc., Cameron International Corporation, Sperry-Sun Drilling Services, Inc., M-I L.L.C., Weatherford International, Ltd., Anadarko Petroleum Corporation, and Drill-Quip, Inc. (collectively "Defendants").

### I. Nature of Action

1.  This is a personal injury action brought pursuant to general maritime law of the United States for torts occurring onboard a navigable vessel in the Gulf of Mexico. Plaintiff is not asserting any claim under any federal statute. Stated simply, Plaintiff is not asserting any claim that falls within the parameters of 28 U.S.C. §1331. Therefore, this case is not removable on the basis of federal question jurisdiction, or on any other basis.

### II. Discovery Control Plan

2.  Pursuant to Rule 190.4 of the Texas Rules of Civil Procedure, discovery is intended to be conducted under Level III of this Rule.



EXHIBIT A

## III. Parties

3. Plaintiff Buddy Trahan is an individual residing in Katy, Fort Bend County, Texas.

4. Defendant BP, Plc is a British corporation, organized under the laws of the United Kingdom, doing business in the State of Texas and throughout the United States. BP, Plc can be served with process at its regular place of business, 501 Westlake Blvd., Houston, Texas 77079. BP is one of the world's largest oil companies.

5. Defendant BP America, Inc. is a Delaware corporation with its principal place of business in Warrenville, Illinois, but doing business in the State of Texas and throughout the United States. BP America, Inc. may be served with process by serving its registered agent, CT Corporation System, 350 N. St. Paul St., Ste. 2900, Dallas, Texas 75201-4234.

6. Defendant BP Corporation North America, Inc. (formerly BP Amoco Corporation), is an Indiana corporation with its principal place of business in Houston, Texas. BP Corporation North America may be served with process by serving its registered agent, Prentice Hall Corp System, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

7. Defendant BP Company North America, Inc. is a Delaware corporation with its principal place of business in Warrenville, Illinois, but doing business in the State of Texas and throughout the United States. BP Company North America may be served with process pursuant to Texas Civil Practice & Remedies Code 17.044 and 17.045 by serving the Secretary of the State of Texas with process to be forwarded to its headquarters, 401 Winfield Rd., Suite 200, Warrenville, Illinois 60555-3523.

8. BP Products North America, Inc. is a Maryland corporation, with its principal place of business in Houston, Texas. BP Products North America can be served with process by serving its registered agent, Prentice Hall Corp System, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

9. BP Exploration & Production, Inc. is a Delaware corporation with its principal place of business in Warrenville, Illinois, but doing business in the State of Texas and throughout the United States. BP Exploration & Production may be served with process by serving its registered agent, CT Corporation System, 350 N. St. Paul St., Ste. 2900, Dallas, Texas 75201-4234.

10. BP America Production Company is a Delaware corporation with its principal place of business in Warrenville, Illinois, but doing business in the State of Texas and throughout the United States. BP America Production Company may be served with process by serving its registered agent, CT Corporation System, 350 N. St. Paul St., Ste. 2900, Dallas, Texas 75201-4234.

11. Defendants BP America, Inc., BP Corporation North America, Inc., BP Company North America, Inc., BP Products North America, Inc., BP Exploration & Production, and BP America Production Company shall all be referred to herein collectively as "BP".

12. BP holds the lease granted by the U.S. Minerals Management Service ("MMS") that allows BP to drill for oil and perform oil-production-related operations. On April 20, 2010 an explosion occurred at the site where BP was performing oil-production operations—the Mississippi Canyon Block 252— the Macondo prospect lease. BP operated the well being drilled at the time of the explosion and directed, in whole or in part, the operations of the deepwater horizon.

13. Defendant Halliburton Energy Services, Inc. ("Halliburton") is a Delaware corporation with its US headquarters in Houston, Texas. Founded in 1919, Halliburton is one of the world's largest providers of products and services to the energy industry. Aboard the Deepwater Horizon, Halliburton was engaged in the cementing operations of the well and the well cap. Halliburton was also involved in pressure and integrity testing of the well. Halliburton may be served with process by serving its registered agent, CT Corporation System, 350 N. St. Paul St., Ste. 2900, Dallas, Texas 75201-4234.

14. Defendant Cameron International Corporation f/k/a Cooper Cameron Corporation and d/b/a Cameron Systems Corporation ("Cameron") is a Delaware corporation with its principal place of business in Houston, Texas. Cameron is a global provider of pressure control, processing, flow control and compression systems as well as project management and aftermarket services for the oil & gas and process industries. Cameron manufactured, designed, marketed and/or supplied the Deepwater Horizon blowout preventer that failed to activate at the time of the explosion; its valves and shearing rams are the last line of defense against a blowout. Cameron may be served with process by serving its registered agent, CT Corporation System, 350 N. St. Paul St., Ste. 2900, Dallas, Texas 75201-4234.

15. Defendant M-I L.L.C. d/b/a M-I Swaco ("M-I") is a Delaware limited liability company that conducts business in the State of Texas and throughout the United States. M-I was the drilling fluid specialist for the Deepwater Horizon. M-I may be served with process at its world headquarters, 5950 North Course Drive, Houston, TX 77072.

16. Weatherford International, LTd. ("Weatherford") is a Swiss based multi-national corporation, doing business in the State of Texas and throughout the United States. Weatherford was in charge of installing the well casing and other tools inside the well. Weatherford may be served with process at its headquarters, 515 Post Oak Boulevard # 600, Houston, TX 77027-9408.

17. Anadarko Petroleum Corporation ("Anadarko") is a Delaware corporation with its principal place of business in Houston, Texas. Anadarko is an oil and gas exploration and production company that was a part owner in the Macondo prospect lease and well. Anadarko may be served with process by serving its registered agent, CT Corporation System, 350 N. St. Paul St., Ste. 2900, Dallas, Texas 75201-4234.

18. Defendant Sperry-Sun Drilling Services, Inc. ("Sperry") is a foreign corporation with its principal place of business in Texas. Sperry was responsible for real time monitoring of the well.

4

Sperry-Sun Drilling Services, Inc. may be served with process at CT Corporation System, 350 North St. Paul Street, Dallas, Texas 75201.

19. Drill-Quip, Inc. ("Drill-Quip") is a Delaware corporation with its world headquarters in Houston, Texas. Drill-Quip built the well head that connects to the blowout preventer at the sea floor and the lock down seal assembly. Drill-Quip may be served with process by serving its registered agent, Jerry M. Brooks, 13550 Hempstead Highway, Houston, Texas 77040.

20. BP, Halliburton, Cameron, M-I, Weatherford, Anadarko, Sperry and Drill-Quip all have their principal places of business in Texas. Therefore, this case is not removable pursuant to 28 U.S.C. § 1441(b), or on any other basis.

### IV. Jurisdiction and Venue

21. In this Petition, Plaintiff has only asserted claims under general maritime law, and that body of law permits a plaintiff to file suit in state court. Therefore, this Court has jurisdiction over Plaintiff's maritime claims, and the damages sought are within the jurisdictional limits of this Court. Venue is proper in Harris County, Texas, pursuant to CPRC § 15.002(a)(3) because Harris County, Texas is the county of several of Defendants' principal offices in this state. Venue for this action is also proper in Harris County, Texas because it is the county where all or a substantial part of the events giving rise to the claim occurred. TEX. CIV. PRAC. & REM. CODE §15.002(a)(1).

22. Pursuant to CPRC §15.005, venue for all defendants is proper in Harris County, Texas because venue is proper in Harris County against one or more defendants.

### V. Background

23. Buddy Trahan is an Operations Asset Manager for Transocean Offshore Deepwater Drilling, Inc. Triton Asset Leasing GmbH ("Triton"), Transocean Holdings LLC ("Transocean Holdings"), and Transocean Deepwater, Inc. ("Transocean Deepwater") were owners and/or operators of the mobile offshore drilling unit ("MODU") vessel known as the Deepwater Horizon.

5

The Deepwater Horizon is a vessel. The Deepwater Horizon vessel was leased to BP through September 2013.

24. On or about January 30, 2010, the Deepwater Horizon vessel commenced a voyage in the Gulf of Mexico in the vicinity of Mississippi Canyon Block 727 to the vicinity of Mississippi Canyon Block 252 for the purposes of conducting contract drilling in the Gulf of Mexico for BP. Buddy Trahan was onboard the Deepwater Horizon vessel on April 20, 2010 in furtherance of maritime activities. In fact, on that day, Buddy Trahan had met with certain BP representatives. BP was the de facto charterer of the Deepwater Horizon vessel and directed activities on the vessel. On April 20, 2010, the Deepwater Horizon was in the final phases of drilling. Despite being an exploratory well, BP had run long string or production casing and had cemented the bottom of the well as part of the process of turning it from an exploratory well into a production well.

25. Without setting a second cement plug, however, BP chose to replace the mud with seawater. BP took this action even though it had failed to perform a bond log to determine the efficacy of the cement job downhole. According to published post-explosion reports, Halliburton warned BP two days before the explosion that it could have a severe problem with natural gas escaping from its well if it stuck with its existing well plan. During the course of replacing the mud, an explosion occurred on the Deepwater Horizon and it caught fire, causing injuries and death to many workers on the vessel. The fire burned for two days, and the vessel began to list progressively more until it finally sank on April 22, 2010. Buddy Trahan was on the vessel at the time of the explosion working in furtherance of his employer's maritime activities and was seriously injured as a result of the explosion and fire.

## VI. Negligence

26. The general maritime law recognizes a cause of action for negligence. On the occasion in question, Defendants, by and through their agents, servants and/or employees, committed

various acts and/or omissions each of which was negligent and a proximate and/or producing cause of the occurrence and injuries in question, including, but not limited to, the following:

a. Failing to properly design and follow an adequate well site plan;
b. Failing to install or utilize adequate barriers to prevent a blowout;
c. Failing to install or utilize the proper number of cement plugs or barriers;
d. Failing to perform a cement bond log or other test to verify the integrity of the cement;
e. Failing to design the well such that dangerous hydrocarbons and gases could escape from formations into and/or around the casing;
f. Failing to adequately activate the lockdown seal assembly;
g. Failing to use adequate casing (*i.e.*, use of long string or production casing instead of tieback casing);
h. Failing to properly monitor or respond to well pressures, data, readings, and meters;
i. Failing to follow advice of consultants;
j. Failing to place cement above the float collar;
k. Failing to use adequate cement (*i.e.*, use of nitrogen containing cement a/k/a "foam cement" at the applicable depths and pressure levels);
l. Failing to provide adequate centralizers;
m. Failing to properly supervise their crew;
n. Failing to properly train employees and/or contractors;
o. Failing to prevent hydrocarbons from escaping from the well;
p. Negligent retention and training of workers;
q. Failing to maintain adequate safety programs;
r. Failing to properly and safely supervise the activities on the rig;
s. Failing to inspect and maintain suitable equipment so that its workers may carry on their work with reasonable safety;
t. Violating applicable regulations;
u. Failing to exercise due care and caution;
v. Failing to follow proper and safe drilling protocols and operations;
w. Failing to warn workers of known operational dangers;
x. Failing to avoid the explosion;
y. Failing to properly operate, equip, man, supervise, or direct the Deepwater Horizon; and
z. Such other and further acts and/or omissions of negligence as may be shown by the evidence at the trial of this cause.

27. Furthermore, the disaster would not have occurred had Defendants exercised the high degree of care required for such dangerous operations. Plaintiff, therefore, pleads the doctrine of *res ipsa loquitor*.

28. Plaintiff is entitled to a judgment finding Defendants liable to Plaintiff for damages

suffered as a result of Defendants acts and omissions.

### VII. Products Liability

29. Products liability, including strict liability, is a recognized liability theory under the general maritime law. Plaintiff will show that the products designed, manufactured, marketed, assembled, sold or otherwise placed in the stream of commerce by Defendants Cameron, Weatherford, Sperry, Halliburton, M-I, and Drill-Quip were defective. Cameron designed, manufactured, marketed, assembled, sold or otherwise placed in the stream of commerce the blowout preventer used on the rig; Weatherford designed, manufactured, marketed, assembled, sold or otherwise placed in the stream of commerce the well casing and other tools used in the well; Sperry designed, manufactured, marketed, assembled, sold or otherwise placed in the stream of commerce the real-time monitoring equipment used on the rig; Halliburton designed, manufactured, marketed, assembled, sold or otherwise placed in the stream of commerce the cement used to seal the well; M-I designed, manufactured, marketed, assembled, sold or otherwise placed in the stream of commerce the drilling fluid used to drill the well; and Drill-Quip designed, manufactured, marketed, assembled, sold or otherwise placed in the stream of commerce the well head that connects to the blowout preventer and the lock down seal assembly.

30. The products manufactured by Defendants Cameron, Weatherford, Sperry, Halliburton, M-I, and Drill-Quip were defectively defectively designed, manufactured, marketed, assembled, sold or otherwise placed in the stream of commerce in the following non-exclusive particulars, including, but not limited to:

   a. Failing to conform to the product design and specifications of other similar products;
   b. The products were negligently designed;
   c. Failing to adequately test and inspect the products prior to their release;
   d. Failing to provide adequate technologically and economically feasible safeguards;
   e. Failing to provide adequate warning or instructions, which were

8

          communicated to the user as to the proper manner of use of such products or dangers associated with the use of such products;

f.    Failing to exercise their duty to adequately warn of such dangers or to modify the products to eliminate and/or guard against hazards;

g.    Violating generally recognized and accepted industry standards in the design and/or manufacture of the products;

h.    Failing to provide a safer alternative design that would have prevented or significantly reduced the risk of Plaintiff's injuries, without substantially impairing the products' utility. A safer alternative design was economically and technologically feasible at the time the vehicle left the control of Defendants Cameron, Weatherford, Sperry, Halliburton, MI, and Drill-Quip by the application of existing or reasonably achievable scientific knowledge;

k.    Failing to adequately design the products in question; and

l.    Such other acts or omissions that may be learned in discovery or at trial.

31.    For the above reasons, Defendants' respective products were unreasonably dangerous beyond the contemplation of the average user. The above described defects were the proximate and/or producing cause of the injuries suffered by Plaintiff.

### VIII. Willful, Wanton and Outrageous Conduct

32.    Plaintiff realleges each and every allegation set forth above.

33.    General maritime law has long recognized availability of punitive damages. Defendants owed a duty to Plaintiff to exercise reasonable care in the maintenance and operation of the Deepwater Horizon and associated drilling operations.

34.    Defendants had a heightened duty of care to Plaintiff because of the great danger associated with deep water drilling from a vessel, and the especially high risk of blowouts during the cementing work and mud removal that the Deepwater Horizon was performing at the time of the explosion.

35.    Defendants breached their legal duty to Plaintiff, failed to exercise reasonable care, and acted with reckless, willful, and wanton disregard for the business and livelihood of others, including Plaintiff, in the negligent maintenance and operation of the Deepwater Horizon.

36.    Defendants knew or should have known that their wanton or reckless conduct would

foreseeably result in a disastrous blowout and explosion, causing death and severe personal injury.

37    Defendants' wanton or reckless conduct, as described herein, entitles Plaintiff to punitive damages.

### IX. Damages

38.    Plaintiff seeks all damages allowed under general maritime law, in the past and future, for his severe and permanent injuries including, but not limited to physical impairment, medical expenses and care, hospital expenses and care, disfigurement, mental and emotional anguish, pain and suffering, loss of ability to perform household services, and lost earning capacity.

### X. Vicarious Liability

39.    Plaintiff realleges each and every allegation set forth above.

40.    Vicarious liability is a recognized theory under the general maritime law. All actions Plaintiff alleges were performed by Defendants and/or by their agents and/or employees, acting with the actual, implied, or apparent authority of Defendants. Defendants are vicariously liable for the actions of their agents and/or employees.

### XI. Request for Jury Trial

41.    Plaintiff in the above styled and numbered cause hereby respectfully request a trial by jury and have tendered the jury fee.

### XII. Initial Disclosures

42.    Defendants are requested to disclose, within 50 days of service of this request, the information or material described in Rule 194 of the Texas Rules of Civil Procedure.

### XIII. Request for Relief

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff demands judgment against Defendants, jointly and severally, as follows:

    a.    Actual, general and special damages in the amounts to be determined at trial;

b. Punitive or exemplary damages;
c. Pre-judgment and post-judgment interest at the maximum rate allowable by law;
d. Court costs;
e. Such other and further relief available under all applicable laws and any relief the Court deems just and appropriate; and
f. A trial by jury as to all Defendants.

Respectfully submitted,

**Lubel Voyles LLP**

By: _____
Lance H. Lubel
Texas State Bar No.: 12651125
Adam Q. Voyles
Texas State Bar No.: 24003121
McKenna Harper
Texas State Bar No.: 24041056
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056
Telephone No.: (713) 986-7263
Facsimile No.: (713) 986-7100
Email: lance@lubelvoyles.com
       adam@lubelvoyles.com
       mckenna@lubelvoyles.com

**ATTORNEYS FOR PLAINTIFF**