IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL BY THE OIL RIG DEEPWATER HORIZON IN THE GULF OF MEXICO, ON APRIL 20, 2010 | MDL NO. 2179 |
| IN RE THE COMPLAINT AND PETITION OF TRITON ASSET LEASING GMBH, ET AL., IN A CAUSE FOR EXONERATION FROM OR LIMITATION OF LIABILITY | SECTION: J |
| | JUDGE BARBIER |
| THIS DOCUMENT RELATES TO: 2:10-CV-02771 | MAGISTRATE JUDGE SHUSHAN |

**DEFENDANT DRIL-QUIP, INC.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS TRANSOCEAN'S
THIRD-PARTY COMPLAINT FOR FAILURE TO STATE A CLAIM**

**SUMMARY**

This lawsuit arises out of an incident that occurred while the *Deepwater Horizon*, a mobile offshore drilling unit owned and operated by Transocean entities, was drilling the Macondo No. 1 well for BP Exploration and Production, Inc., the lessee. Dril-Quip, Inc. ("Dril-Quip") manufactured the subsea wellhead and certain related equipment (the "Subsea Wellhead System") used on the Macondo well and provided a service technician onboard the *Deepwater Horizon* to assist with the installation of the Subsea Wellhead System.

On February 18, 2011, the limitation petitioners Triton Asset Leasing Gmbh, Transocean Holdings, LLC, Transocean Offshore Deepwater Drilling, Inc., and Transocean Deepwater, Inc. (collectively "Third-Party Plaintiffs") filed a third-party complaint (the "Third-Party Complaint") against 27 entities, including Dril-Quip, Inc. ("Dril-Quip"). The Third-Party Complaint alleged that the Court "has admiralty and maritime jurisdiction of the Third-Party

Complaint pursuant to Rule 9(h) of the Federal Rules of Civil Procedure and 28 U.S.C. §1333."[1]

The Third-Party Complaint also tenders the third-party defendants, including Dril-Quip, to all plaintiffs-claimants against Third-Party Plaintiffs:

> The Third-Party Plaintiffs demand judgment in the Plaintiffs/Claimants' favor against the tendered Third-Party Defendants pursuant to Rule 14(c)(2).  Accordingly, the tendered Third-Party Defendants must defend against the Plaintiffs/Claimants' claims under Rule 12, and the action proceeds as if the Plaintiffs/Claimants had sued both the tendered Third-Party Defendants and the Third-Party Plaintiffs.  Fed. R. Civ. P. 14(c)(2).  Pursuant to Rules 4, 12 and 14(c) of the Federal Rules of Civil Procedure, the Third-Party Plaintiffs demand that the Plaintiffs/Claimants assert their Claim directly against the tendered Third-Party Defendants and that the tendered Third-Party Defendants file responsive pleadings to the Claims in Limitation.  This Rule 14(c) tender and demand applies to all Limitation claims filed or to be filed in these Limitation proceedings on or prior to April 20, 2011, including Claims in Limitation pursuant to any Short Form Joinder filed in C.A. No. 10-8888.[2]

A successful tender of third-party defendants to plaintiffs requires three elements: (1) plaintiffs' claims must sound in admiralty, a precondition to the use of Rule 14(c); (2) the tender must demand judgment against the third-party defendant in favor of plaintiffs; and (3) defendant/third-party plaintiff must allege a claim or claims that plaintiffs have against the third-party defendant that justifies the demand of judgment in their behalf.  *See Royal Ins. Co. of America v. Southwest Marine,* 194 F.3d 1009, 1018-19 (9th Cir. 1999); *Riverway Co. v. Trumbull River Svcs., Inc.*, 674 F.2d 1146, 1154 (7th Cir. 1982); *Orgulf Transport Co. v. Hill's Marine Enters., Inc.,* 188 F.Supp. 2d 1056, 1063-64 (S.D. Ill. 2002).  In assessing the effectiveness of third-party complaints challenged by motions to dismiss, federal courts routinely apply Rule 8 and the standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and subsequently explained in *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009).  *See, e.g., ADC Rig Svcs., Inc. v. JP Morgan Chase Bank, N.A.,* No. H-08-1640, 2009 WL 1011151,

---

[1] Third-Party Complaint, ¶XXXVI, at 21.
[2] *Id*. at ¶XXXVII, at 22.

\*1 (S.D. Tex., April 15, 2009); *United States v. M/V COSCO BUSAN*, No. 7-6045 SC, 2008 WL 4938106, \*2 (N.D. Cal., Nov. 17, 2008). More generally,

> … the pleading standards set forth in *Twombly* and *Iqbal* apply with equal force to crossclaims, counterclaims, and third-party complaints. *See, e.g., Travelers Indem. Co. v. Dammann & Co., Inc.,* 594 F.3d 238, 256 n. 13 (3d Cir. 2010) (applying *Iqbal* to crossclaims); *Tes Franchising, LLC v. Dombach*, 2010 U.S. Dist. LEXIS 124751 at \*6 (E.D.Pa. November 24, 2010) (applying *Iqbal* to counterclaims); *Simon Prop. Gr. v. Palombaro,* 682 F.Supp.2d 508, 511 (W.D.Pa.2010) (same).

*Schmolz+Bickenback USA, Inc. v. Dauble*, No. 09-751, 2011 WL 285123, \*3 (E.D.Pa., Jan. 28, 2011); *see also Reishus v. Almaraz,* No. CV-10-01760-PHX-LOA, 2011 WL 42679, \*3 (D. Ariz., Jan. 06, 2011); *West v. American Electric Power Co.*, No. 2:09-cv-00985, 2010 WL 3910189, \*4 (S.D.W.Va., Oct. 4, 2010); *Miami Valley Fair Housing Ctr. v. Steiner & Assocs., Inc.,* No. 08-00150, 2010 WL 2631110, at \*7 (May 13, 2010) (applying *Twombly* and *Iqbal* to third-party complaint); *Colon v. Blades*, 268 F.R.D. 143, 2010 WL 1731666, at \*2 (D.P.R. Apr. 29, 2010) (same). Under these standards, even assuming the first two elements of *Southwest Marine* were satisfied,[3] the tender remains ineffective because the third element is not in place: Third-Party Plaintiffs failed to plead an effective predicate for the tender.

As to Dril-Quip, Third-Party Plaintiffs plead only:

> As to Dril-Quip, the following allegations, among others, have been made by the Plaintiffs/Claimants:
>
> 1. Dril-Quip participated in drilling operations related to the Macondo Well and failed to exercise reasonable care while participating in these drilling operations;
>
> 2. Dril-Quip failed to exercise reasonable care to ensure that adequate safeguards, protocols, procedures and resources were available to prevent and/or mitigate the effects of an oil spill; and

---

[3] Dril-Quip's review of Plaintiffs/Claimants' complaints suggests that most assert admiralty claims, but some assert mixed claims that may jeopardize the use of Rule 14(c) to effect direct joinder. For purposes of this Motion, Dril-Quip will assume *arguendo* that all claims are in admiralty. Dril-Quip acknowledges that Third-Party Plaintiffs have satisfied the second element as a matter of form.

      3.      Dril-Quip provided wellhead systems for the Macondo Well which suffered the blow-out which subsequently led to the BP Oil Spill which failed to operate, were improperly designed, or possessed product defects.

In addition to the above, the allegations, contentions and causes of action which have been asserted against Dril-Quip by the various Plaintiffs/Claimants in the B1 Master Claim/Master Complaint, the First Amended B1 Master Claim/Master Complaint, or other Complaints, filed as a result of the Incident of April 20, 2010 and/or the BP Oil Spill are incorporated herein for more particular reference, as if set forth herein.[4]

Thus, the Third-Party Complaint (the "Complaint") makes no allegations against Dril-Quip in its own behalf and only three allegations against Dril-Quip on behalf of the Plaintiffs/Claimants; these claims are admittedly borrowed from others and stated in conclusory terms, unaccompanied by any facts. Because the Complaint fails to plead any facts against Dril-Quip and thus fails to satisfy the standard set forth in *Ashcroft v. Iqbal*, 556 U.S. __, 129 S. Ct. 1937, 1949 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, (2007), the Court should dismiss the Third-Party Complaint against Dril-Quip under Federal Rule 12(b)(6). Even if the pleading insufficiencies are overlooked, the Third-Party Complaint fails as a matter of law to state a claim for negligence under the general maritime law against Dril-Quip because its own allegations conclusively establish that Dril-Quip owed no legal duty to Plaintiffs/Claimants. These insufficiencies mandate dismissal of all of Third-Party Plaintiffs' assertions of Plaintiffs/Claimants' claims against Dril-Quip. Accordingly, the tender is ineffective, and the Third-Party Complaint should be dismissed as to Dril-Quip, which should be relieved of any responsibility to defend the claims of Plaintiffs/Claimants by operation of Rule 14(c).

---

[4] Third-Party Complaint, ¶XLVIII, at 31.

ARGUMENT AND AUTHORITIES

**The Third-Party Complaint Fails to State a Claim Against Dril-Quip**

A.   **The Third-Party Complaint/14(c) Tender Must Meet Federal Pleading Standards.**

The concern for efficiency and economy embodied in Rule 14(c) does not excuse Third-Party Plaintiffs from the responsibility to satisfy the pleading standards for complaints established by Rules 8 and 12(b)(6).  Whatever else Third-Party Plaintiffs' February 18 filing is, it is a third-party complaint and has been designated as such by Third-Party Plaintiffs themselves.[5]  As noted, *supra* at 2-3, courts that have considered the issue have repeatedly held that the *Twombly-Iqbal* plausibility standards apply not only to plaintiffs' complaints, but to claims of all types among defendants as well.  *See Schmolz+Bickenbach*, 2011 WL 285123 at *3.  Federal courts sitting in this state have followed suit.  In *Martco Ltd. Partnership v. Bruks-Klockner, Inc.*, No. 2:07 CV 2002, 2010 WL 2265145 (W.D.La., Jan. 1, 2010) the court applied *Twombly* to dismiss a third-party complaint:

> Merely alleging possible liability on the face of a complaint is not sufficient.  As provided in the United States Supreme Court case of *Bell Atlantic v. Twombly*, to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face."  *Bell Atlantic v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Id. at 555-56.  Bruks' Third-Party Complaint provides no basis on which derivative liability could arguably be supported.  Bruks has failed to meet the threshold requirements of pleading a viable legal indemnity claim.

*Id*. at *6.  And, in *Cashman Equip. Corp. v. Rozel Operating Co*., No. 08-363-C-M2, 2010 WL 3385117 (M.D.La., Apr. 30, 2010), the court ordered repleading of a third party complaint

---

[5] *See* Third-Party Complaint at 1.

5

against a marine surveyor that had alleged fraud, negligent misrepresentation and breach of contract in general language tracking the elements of the causes of action. *Id.* at *4. The Court noted:

> While those facts may be set forth generally in the Third Party Complaint, [Third Party Plaintiff] does not allege…how those facts satisfy the required elements of causes of action in contract, tort, or fraud under general maritime law. To conclude that such facts satisfy the elements…without more specific allegations in that regard would be speculative under the *Twombly* standard…. Moreover, without more specific allegations…, it will be difficult for [Third Party Defendant] to frame a responsive pleading.

*Id.* at n.2.

These cases recognize, as did the Supreme Court in *Twombly* and *Iqbal*, *see* 550 U.S. at 558 and 556 U.S. at ___, 129 S.Ct. at 1953, that requiring a person, natural or legal, to come into court and defend an action "exacts heavy costs in terms of efficiency and expenditure of valuable time and resources…." *Id.*; *see also Twombly*, 550 U.S. at 557-58 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, at 233-34) (claim should be tested for basic deficiency at "point of minimum expenditure of time and money by the parties and the court"). That is certainly the case here, where the effect of the tender on Dril-Quip, if allowed, will be to expose Dril-Quip to hundreds, perhaps thousands, of lawsuits by means of requiring a response to the master complaints, when in a year's time, marked by repeated public investigation of the facts leading to and away from the *Deepwater Horizon* incident, barely a score of suits have directly named Dril-Quip.[6]

---

[6] Those suits are no better pled than the Third-Party Complaint, and Dril-Quip has filed or will file motions to dismiss each of them. So far, Dril-Quip submits, no plaintiff anywhere has alleged a claim against it on which relief may be granted. Even after the February 18, 2011, Third-Party Complaint, which explicitly named Dril-Quip, only two groups of plaintiffs amended their complaints to name Dril-Quip, and one group has since recanted and dismissed as to Dril-Quip. *See* Docts. 1669 & 1713. The other names Dril-Quip only by incorporating language from the Third-Party Complaint. See Doct. 1524, ¶8 at 3 (Dril-Quip is named in Paragraph XIX of the Third-Party Complaint).

Admiralty Rule 56, the predecessor to Rule 14(c)(2), contained terms that protected third-party defendants from some of the burdens of litigation.[7] Upon unification of the Federal civil, equity, and admiralty rules in 1966, however, these provisions were not carried over into the consolidated rules. *See* Fed.R.Civ.P. 14(c). Accordingly, the principal remaining protection for a defendant – particularly a defendant like Dril-Quip, which has been sued in only a handful of cases and only on the sketchiest of grounds – is the vigilance of the district court in performing the gatekeeping function assigned to it by Rules 8 and 12.

Moreover, the policies that led the Federal Rules Advisory Committee to adopt Rule 14(c) cast only a faint shadow here. Those policies, according to Wright & Miller, are:

> … avoiding the possibility of inconsistent results in separate actions, the alternative of conducting two actions involving substantially the same evidence, and the possibility of the third party disappearing if jurisdiction and the necessary physical control over the third party were not established [, often resulting] in the loss of control over assets that might be subject to claims arising from the occurrence in the suit as well as the absence of valuable evidence and testimony.

6 C. Wright, A. Miller, & M. Kane, Federal Practice & Procedure § 1465, at 561 (2010). Inconsistent results and duplicative evidence are irrelevant to a party, as Dril-Quip contends it is, that should not be required to defend in *any* action. Moreover, the Court need not rely on the Third-Party Complaint to secure Dril-Quip's presence and participation in the limitation proceeding; it will be there if it is sued directly by a Plaintiff/Claimant. Finally, this is not a case in which a vessel or its crew members can flee the jurisdiction; the vessel is already lost, and most of the crew members are in the case by their own choice. Thus, there is no special reason why the marshalling power afforded the Court by Rule 14(c) should trump the right of a

---

[7] "…[E]very such petitioner shall, upon filing his petition, give a stipulation, with sufficient sureties, or an approved corporate surety to pay … and any new party brought in by virtue of such process, all such costs, damages, and expenses as shall be awarded against the petitioner by the court or the final decree, whether rendered in the original or appellate court …." Former Admiralty Rule 56, *quoted in* 6 C. Wright, A. Miller & M. Kane, Federal Practice & Procedure § 1465, at 563-64 n. 8 (2010).

7

defendant to escape claims "shy of a plausible entitlement to relief," *Twombly*, 550 U.S. at 559, at its earliest opportunity.

While a review of Rule 14(c) cases reveals no case sustaining a motion to strike or dismiss a tender on pleading sufficiency grounds, but instead a near-automatic assumption of defense to plaintiffs' claims by tendered parties, two factors readily explain that history. First, previous 14(c) cases have involved only a handful of parties; thus, plaintiffs' allegations and defendants' responsibilities were relatively clear and simple. By contrast, the 14(c) tender here requires Dril-Quip to defend against hundreds of cases based on allegations not tailored to state a claim against it drawn by parties who, in many cases, knowingly declined to sue it. Second, until 2007, the quality of pleading in third-party complaints was judged under the extremely forgiving "no set of facts" standard of *Conley v. Gibson*, 335 U.S. 41 (1957), a standard that one respected commentator described as having turned Rule 8 on its head. *See* Geoffrey C. Hazard, Jr., *From Whom No Secrets Are Hid*, 76 Tex. L. Rev. 1665, 1685 (1998). No doubt the combination of minimal consequences from a Rule 14(c) tender with the great difficulty of winning a threshold challenge to it dissuaded parties from mounting such challenges, until it came to appear that the mere invocation of Rule 14(c) juxtaposed plaintiffs and third-party defendants.

As Dril-Quip has shown, however, the rule no longer operates that way. Even parties like Third-Party Plaintiff, which merely introduce plaintiffs to parties it claims "may be wholly or partially liable…to the plaintiff…," Fed.R.Civ.P. 14(c)(1), is still a plaintiff, with something to gain by laying off all or part of *its* liability on those parties. As a plaintiff, it must supply "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). And in its Third-Party Complaint, Third-Party Plaintiffs did not do so.

### B. The Complaint Fails to Allege Facts Sufficient to Establish Any Cause of Action

Today, to survive a motion to dismiss under Rules 8 and 12(b)(6), a complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. __, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). The "complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 570)); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007); *see also Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009)(allegations must push claim past "conceivable" to "plausible"). These "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555-56, *quoted in In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010). "We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Gentilello v. Rege*, 627 F.3d 540, 544 (2010)(quoting *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at *4. *See also Great Lakes,* 624 F.3d at 210 (quoting *Iqbal* to effect that "legal conclusions can provide the complaint's framework, [but] must be supported by factual allegations"); *Jacobs v. Tempur-Pedic Int'l, Inc.,* 626 F.3d 127, 1333 (11th Cir. 2010)(quoting *Iqbal,* 556 U.S. at ___, 129 S.Ct. at 1949). Under the standard set forth in *Twombly*, a complaint must plead "enough fact[s] to raise a reasonable expectation" that a plaintiff has a right to relief. *See* 550 U.S. at 557.

The Third-Party Complaint alleges only that certain allegations "have been made [against Dril-Quip] by the Plaintiffs/Claimants:"[8] that it "participated in drilling operations related to the Macondo wells and failed to exercise reasonable care …,"[9] that it failed to exercise reasonable care that adequate measures were in place "to prevent or mitigate the effects of an oil spill,"[10] and that it "provided wellhead systems…which failed to operate, were improperly designed, or possessed product defects."[11] In the past, such summary allegations might have effectively tendered a third-party defendant to a plaintiff, *see, e.g. Orgulf*, 128 F.Supp. 2d at 1063 (commenting that allegations were sufficient for "federal notice pleading rule"), but *Twombly* and *Iqbal* have raised the bar. Third-Party Plaintiffs' allegations, borrowed from unspecified Plaintiffs/Claimants, contain no facts that make it "plausible" that Dril-Quip is liable to Plaintiffs/Claimants. Specifically, the Third-Party Complaint fails to allege any facts that would establish any elements of Plaintiffs/Claimants' causes of action; instead, only innocent facts[12] and legal elements[13] are set forth. The assertions set forth in paragraph XLVIII, subparagraph 3, constitute a summary of ways a product may be defective. But, as noted in *Gentilello* and *Plotkin*, *supra* at 9, such makeweight assertions do not help to establish the plausibility of claims that *Twombly* and *Iqbal* require. Finally, the incorporation of the B1 Master Complaints and "other complaints"[14] does not help because, contrary to Third-Party Plaintiffs' assertion, the

---

[8] *Id.*, ¶XLVIII, at 31.
[9] *Id.*
[10] *See id.*
[11] *See id.*
[12] *E.g.,* "…Dril-Quip provided wellhead systems …" *Id.*
[13] *E.g.,* "…[the systems] failed to operate, were improperly designed, or possessed product defects …." *Id.*
[14] *See id.*

Master Complaints do *not* sue Dril-Quip[15] and, to date, no "other complaint" has been filed that alleges theories and facts adequate to state a claim against Dril-Quip under *Twombly* and *Iqbal*. It is thus impossible to ascertain what Dril-Quip did or failed to do that caused Plaintiff's/Claimant's injuries. The Court should therefore dismiss the Third-Party Complaint against Dril-Quip for failure to state a claim.

    **C.    The Complaint Alleges Facts that Negate Liability For Negligence on the Part of Dril-Quip.**

Further, the Third-Party Complaint contains no facts that, if true, would render Dril-Quip directly liable for maritime negligence; instead, its allegations negate any such liability. As a matter of law, Dril-Quip did not owe Plaintiffs/Claimants any duty of care. "To establish maritime negligence, a plaintiff must 'demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by [the] plaintiff, and a causal connection between the defendant's conduct and the plaintiff's injury.' " *Canal Barge Co. v. Torco Oil Co.*, 220 F.3d 370, 376 (5th Cir. 2000)(quoting *In re Cooper/T. Smith*, 929 F.2d 1073, 1077 (5th Cir. 1991)).

The Third-Party Complaint alleges no facts from which the Court could infer that Dril-Quip owed Plaintiffs/Claimants any legal duty because it does not allege that Dril-Quip controlled or had any right to control any of the operations of the *Deepwater Horizon*. It is fundamental that a duty to prevent harm resulting from oil and gas operations arises as a consequence of control over the operations. *See, e.g., Ainsworth v. Shell Offshore, Inc.,* 829 F.2d 548, 550 (5th Cir. 1987), *cert. denied*, 485 U.S. 1034 (1988). Further, it is settled that where a principal retains an independent contractor to conduct oil and gas operations but does not retain

---

[15] Third-Party Plaintiffs' suggestion in Paragraph XLVIII that Dril-Quip was named in the B1 Complaints is simply incorrect. *See* B1 Master Claim/Master Complaint [Doct. 879]; First Amended B1 Master Claim/Master Complaint [Doct. 1128].

11

control over or participate in the actions of the contractor, the principal neither assumes nor owes any duty to the contractor's employees. *Thomas v. Burlington Res. Oil & Gas Co.,* No. Civ. A. 99-3904, 2000 WL 1528082, at *2 (E.D. La. Oct. 13, 2000) (Barbier, J.). Even when a principal without control over, or participation in, the operation has actual knowledge of dangerous conditions on an oil rig, the principal has no legal duty to intercede. *See id.; Ronquille v. MMR Offshore Servs., Inc.*, 353 F. Supp. 2d 680, 682 (E.D. La. 2004) (the presence of a company representative on an oil platform with knowledge of the rig's operations "is insufficient to create a duty; therefore, the law does not support the imposition of liability for any failure to intercede").

*Ainsworth* is cited by courts applying both Louisiana law and the general maritime law. *See, e.g., Gremillion v. Gulf Coast Catering Co.*, No. 88-4544, 1989 WL 104100, at *6 (E.D. La. Sept. 5, 1989), *aff'd*, 904 F.2d 290 (5th Cir. 1990) (citing *Ainsworth* in tort case under maritime law); *Fontenot v. Southwestern Offshore Corp.*, 787 So.2d 588, 594 (La. Ct. App. 2001) (tort case under maritime law). In *Ainsworth*, Shell hired an independent contractor, Hercules, to erect an offshore drilling rig. 829 F.2d at 549. Hercules worked its crews around the clock, with no lights in the work area, and a worker fell as a result. *Id*. Shell had a "company man" on the rig who was aware of the hazardous conditions, but Shell retained no control over and did not participate in the operation of the rig. The Fifth Circuit rejected the plaintiff's argument that Shell's knowledge of the danger made it directly liable for the injury and held instead that because Shell lacked control over the operation, it had no duty to intervene. *Id.* at 551.

Third-Party Plaintiffs' allegations fall far short of even the *Ainsworth* facts. Third-Party Plaintiffs plead that the Transocean entities were owners and operators of the *Deepwater Horizon*, which was leased to BP, which was "the de facto charterer of the … vessel and directed

12

activities on the vessel."[16]  By contrast, Dril-Quip "was involved with providing wellhead systems."[17]  Furnishing equipment for use in a drilling project owned and operated by others cannot plausibly create a duty to someone else's employee working onboard someone else's vessel.  *Cf. In re Graham Offshore, Inc.*, 287 F.3d 352, 359 (5th Cir. 2002) (no duty owed by rig operator to transportation contractor hired by third party).  The Third-Party Complaint lacks any facts alleging conduct by Dril-Quip in breach of any duty, or that any of Plaintiffs' injuries resulted from any act by Dril-Quip; the conclusory assertion that Dril-Quip "participated in drilling operations," *supra* at 3, is not a fact but an unwarranted inference and carries no weight in claiming liability on Dril-Quip's part. *See Gentilello,* 677 F.3d at 544.  To the contrary, the express allegations that BP and Transocean owned the lease and the rig, respectively, and made the operating decisions that led to the blowout and explosion, *see e.g.,* Third-Party Complaint at ¶¶23-25, negate any inference that Dril-Quip conducted any of the *operations* on the *Deepwater Horizon* that allegedly led to any Plaintiff/Claimant's injuries and establish that such Plaintiff/Claimant is not entitled to relief.  *See Jones v. Bock*, 549 U.S. 199, 215 (2007) ("if the allegations, taken as true, show the plaintiff is not entitled to relief," then the "complaint is subject to dismissal").

If in *Ainsworth* a company man on the rig with actual knowledge of a dangerous situation had no duty to intercede because he lacked control over the operations on the rig, it necessarily follows that Dril-Quip had no duty to Plaintiffs/Claimants.  It possessed no contractual rights to control rig operations and is not alleged to have had any actual knowledge of a dangerous situation.

---

[16] *See id.* at ¶ V at 3, VII at 4-5, XLII at 24-25.
[17] *Id.* at ¶14.

## CONCLUSION

Dril-Quip respectfully requests that the Court dismiss Third-Party Plaintiffs' Third-Party Complaint as to Dril-Quip pursuant to Federal Rules of Civil Procedure 12(b)(6).

Date:   April 8, 2011

Respectfully submitted,

**WARE, JACKSON, LEE & CHAMBERS, LLP**

BY:   /s/ C. Dennis Barrow, Jr.
     Don Jackson
     Texas Bar No. 10476000
     Fed ID No. 6915
     C. Dennis Barrow, Jr.
     Texas Bar No. 00796169
     Fed ID No. 20624
     2929 Allen Parkway, 42nd Floor
     Houston, TX 77019
     Phone :  (713) 659-6400
     Fax     :  (713) 659-6262
     Counsel for Defendant, Dril-Quip, Inc.

## CERTIFICATE OF SERVICE

I certify that the above and foregoing document will be served on all counsel by electronically uploading the same to LexisNexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 8th day of April, 2011.

/s/ C. Dennis Barrow, Jr.
C. Dennis Barrow, Jr.