UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, on APRIL 20, 2010 | * * * * | MDL NO. 2179 |
| | * | SECTION J |
| THIS DOCUMENT RELATES TO: | * * | JUDGE BARBIER |
| 2:11-cv-00263 | * * * | MAG. JUDGE SHUSHAN |

**PLAINTIFF BUDDY TRAHAN'S RESPONSE MEMORANDUM
IN OPPOSITION TO M-I L.L.C.'S MOTION TO DISMISS**

Plaintiff Buddy Trahan ("Plaintiff") opposes the Motion to Dismiss [MDL Doc. # 1601] (the "Motion") filed by Defendant M-I L.L.C. ("M-I") and submits for the Court's consideration the following response in opposition. The Federal Rules of Civil Procedure make clear that notice pleading is all that is required to plead a cause of action in federal court. Plaintiff's claims against M-I are sufficiently pled to provide M-I with the requisite notice. Alternatively, should the Court find that Plaintiff's claims are not sufficiently pled, Plaintiff stands ready to amend his complaint and/or to file a more definite statement.

**NATURE AND STAGE OF THE PROCEEDINGS**

Before ruling on M-I's Motion, this Court must first determine the threshold issue of jurisdiction which is lacking in this case. "*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 118 S. Ct. 1103, 140 L.Ed. 2d 210 (1998), clarified that a federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." *See Sinochem Intl. Co., Ltd. v. Malaysia Intl. Shipping Corp.*, 549 U.S. 422, 430-31, 127 S.Ct. 1184, 1191 (2007). As stated in *Steel Co.,* "[w]ithout jurisdiction the court cannot proceed at all in any cause.

1

Jurisdiction is the power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co.*, 523 U.S. at 94 quoting *Ex Parte McCardle*, 74 U.S. 506, 7 Wall. 506, 514, 19 L.Ed. 264 (1869) (internal quotations omitted). In this case, the Court has not yet determined the threshold issue of jurisdiction which is lacking in this case.

On September 20, 2010, Plaintiff filed his Motion to Remand with the Southern District of Texas-Houston Division [Doc. #7 in Cause No. 4:10-cv-03198, *Trahan v. BP, PLLC, et. al*] and pursuant to Pre-Trial Order #5, on April 8, 2011, Plaintiff re-filed his Motion to Remand for consideration from this Court. [MDL Doc. #1900] Within his Motion to Remand, Plaintiff explained that that federal subject matter jurisdiction is lacking for at least four reasons:

(1) Plaintiff has not made any claim arising under OCSLA or federal law.

(2) Plaintiff's claims are governed by general maritime law and are, therefore, not removable.[1]

(3) Even if the OCSLA applies (which it does not), Trahan's maritime vessel-related tort claims arising on an OCSLA situs are not removable if, as is the case here, one of the Defendants is a citizen of the forum state.[2]

(4) OCSLA exempts vessels such as the *Deepwater Horizon* from its parameters.[3]

To date, the Court has not ruled on Plaintiff's Motion to Remand nor has it determined whether federal subject matter jurisdiction exists. Before ruling on M-I's Motion to Dismiss, Plaintiff requests that the Court determine whether it has subject matter jurisdiction over Plaintiff's

---

[1] *See Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 377-79, 79 S.Ct. 468, 484-85 (1959) (discussing non-removability of "savings to suitors" claims on the grounds that, because maritime claims do not arise under the laws or Constitution of the United Sates they do not present federal questions.)

[2] *See Morris v. TE Marine Corp.*, 344 F.3d 439, 444 (5th Cir. 2003).

[3] *See Walsh v. Seagull Energy Corp.,* 836 F. Supp. 411, 418 (S.D. Tex. 1993) ("In sum, despite the potential and probably intended breadth of the application of federal law under OCSLA to oilfield operations on the shelf, in practice the courts have read *Rodrigue* [*v. Aetna Cas. & Sur. Co.*, 395 U.S. 352 (1969)] to almost strictly limit its operation as to personal injuries to accidents taking place on fixed platforms.); *see also Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778, 781 (5th Cir. 2009).

2

claims. Again, "[w]ithout jurisdiction the court cannot proceed at all in any cause." *Steel Co.*, 523 U.S. at 94.

Alternatively, Plaintiff submits the following response in opposition to M-I's Motion.

## **OVERVIEW**

When ruling upon a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must accept as true all well-pled allegations and resolve all doubts in favor of the plaintiff. *See Tanglewood East Homeowner v. Charles-Thomas, Inc*., 849 F.2d 1568, 1572 (5th Cir. 1988).The Court should deny a Rule 12(b)(6) motion unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id*., quoting *Conley v Gibson*, 355 U.S. 41, 45-46 (1957). Rule 12(b)(6) motions are "viewed with disfavor, and [are] rarely granted." *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981). It should also be noted that the Federal Rules of Civil Procedure require only notice pleading. Fed. R. Civ. P. 8. Thus, a pleading is sufficient so long as it provides the defendant with notice of the claims being asserted against it.

Here, Plaintiff's complaint meets this threshold of sufficiency because his complaint pleads a set of facts that would entitle him to relief and provides M-I with notice of the claims being asserted against it. Therefore, the Court should deny M-I's Motion to Dismiss in its entirety.

## **PLAINTIFF'S ALLEGATIONS AGAINST M-I**

On August 19, 2010, Plaintiff filed his Original Petition in Harris County, Texas in the 270th Judicial District Court. Despite the fact that Plaintiff brought his personal injury claims pursuant to the general maritime laws of the United States for torts occurring aboard a vessel in navigable waters and did not assert claims under any federal statute, Cameron International

Corporation d/b/a Cameron Systems Corporation ("Cameron") removed this case based on 28 U.S.C. § 1331, *et seq.* On or around, February 7, 2011, Plaintiff's case was transferred to MDL 2179. Plaintiff's complaint alleges that M-I was the drilling fluid specialist on the *Deepwater Horizon*. Therefore, Plaintiff sued M-I for negligence and products liability.

## LEGAL STANDARD

### A. *Twombly* and *Iqbal Standard*

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 547. A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, *id*. As the Fifth Circuit recently reiterated, "[A] complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief— including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397 at 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a "sheer possibility." *Id*. It is not, however, a "probability requirement." *Id*. Thus, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556. A complaint states a plausible claim for relief if its "factual content ... allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. The court must take the plaintiff's factual allegations as true. *Id*. at 1949-50.  And, the complaint should be read as a whole, not parsed

4

piece by piece to determine whether each allegation, in isolation, is plausible. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

The Fifth Circuit, in applying and interpreting the *Twombly/Iqbal* standard, has held that when faced with a Rule 12(b)(6) motion to dismiss, that is, a motion to dismiss for failure to plead a claim on which relief can be granted, "courts must . . . accept all factual allegations in the complaint as true." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009), *citing Tellabs, Inc. v. Makor Issues and Rights, Ltd.*, 551 U.S. 308 (2007); *Leatherman v. Tarrant County Narcotics Intelligence and Coordination United*, 507 U.S. 163, 164 (1993). As *Lormand* reminds, "[w]e must also draw all reasonable inferences in the plaintiff's favor." 565 F.3d at 232.

## ARGUMENT

### A. The Plausibility of Plaintiff's Claims Against M-I

Here, it is beyond doubt that a catastrophic explosion and fire occurred on the *Deepwater Horizon*, resulting directly in injuries and death. *See Exhibit A, ¶ 25*. M-I's role as the drilling fluid specialist is likewise known. The substantial discovery, now ongoing, into the events leading up to the explosion and fire in general, and into M-I's role therein, is justified in terms of time and expense. The *Twombly/Iqbal* problem does not exist in this case. Accordingly, the level of specificity and detail required in the antitrust context of *Twombly* should not be required here. Again, *Twombly* requires "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Plaintiff's pleading meets this standard in the factual and legal context of the *Deepwater Horizon* litigation.

Moreover, the MDL proceedings not only include the Bundle A Claimants, but comprehensive B1 Master Complaints that describe the events leading up to, constituting and following the Deepwater Horizon explosion and spill, including detailed allegations regarding

5

the conduct of M-I and others. Given the procedural nature of the MDL, status of discovery, the existence of the detailed allegations against M-I in other parties' complaints, and the United States Supreme Court's logic in *Ashcroft v. Iqbal* in which it instructed a reviewing court to draw on its experience and common sense—entertaining M-I's basis for dismissing Plaintiff's complaint would be counterproductive and judicially inefficient. Alternatively, should the Court adopt M-I's position regarding Plaintiff's pleading, Plaintiff requests an opportunity to amend his pleadings to cure the alleged deficiencies.

### B. M-I's Complaints with Plaintiff's Petition

M-I criticizes Plaintiff's pleading for "alleging that **all Defendants** share equally in responsibility and blame for his injuries". *Motion, p. 3*. M-I also complains that "[a] plaintiff 'cannot simply 'lump' all the defendants together and allege that **the purported acts of every defendant can be imputed to every other defendant.**'" *Motion, p. 3,* quoting *Lippe v. Bairnco Corp.,* 225 B.R. 846, 860 (S.D. N.Y. 1998) (emphasis added). In doing so, M-I misrepresents the applicable case law, citing instead to a heightened-pleading standard in the context of a RICO claim rather than the standard applicable to negligence and product liability claims.

Specifically, M-I cites *Lippe v. Bairnco Corp*, 225 B.R. 846 (S.D. N.Y. 1998). In *Lippe*, the defendants filed a motion to dismiss claiming the complaint did not apprise them of the factual basis of the plaintiffs' RICO claims. The court noted that to allege a RICO claim, the plaintiff must establish a pattern of racketeering activity and that "each defendant committed two predicate racketeering acts". *Lippe*, 225 B.R. at 860 (emphasis added). Rather than plead these predicate acts against each defendant, the plaintiff lumped all the defendants together. *Id*. at 860-61 (emphasis added). Accordingly, the court dismissed the plaintiff's RICO allegations because they did not meet the pleading standards.

6

In comparison, Plaintiff's complaint contains no RICO or fraud allegations and is not subject to a heightened pleading standard. Moreover, Plaintiff's complaint informs M-I that it is suing it in connection with its negligence in providing drilling fluids and/or services to the *Deepwater Horizon* and for product defects existing with those drilling fluids. Therefore, *Lippe* is inapplicable to the facts of Plaintiff's case and the Court should reject M-I's attempt to subject Plaintiff to a higher pleading standard.

M-I also cites *Lane Cap. Acquisitions & Mgmt. Co.*, No. 04-60602, 2006 WL 4590705 (S.D. Fla. Apr. 14, 2006) and *Athuane v. City of Hartford*, 10 Fed. Appx. 33 (2nd Cir. 2001). These cases are also inapplicable to the facts of this case.

In *Lane*, the court held that the plaintiff's "complaint failed to differentiate among the defendants, alleging instead violations by a collective 'defendant'. *Lane*, 2006 WL 4590705 at * 5. Accordingly, the court ordered the plaintiffs to file an amended complaint. *Id*. Again, Plaintiff's complaint makes clear that it is suing M-I connection with its negligence in providing drilling fluids to the *Deepwater Horizon* and for product defects existing with those drilling fluids.

*Athuane* is likewise inapplicable to this case. In *Athuane*, the court dismissed the plaintiff's complaint for failing to give each defendant fair notice of the claim and ground upon which it rested. *Athuane*, 10 Fed. Appx. at 34. Here, Plaintiff provided M-I with fair notice of his claims. Moreover, unlike this case, prior to dismissing plaintiff's complaint in *Athuane*, the court had "graciously accorded [the plaintiff] several opportunities to correct [the complaint's] manifest flaws." *Id*. In contrast, Plaintiff has not yet amended his complaint to correct the alleged flaws; therefore, before any dismissal is granted, Plaintiff requests an opportunity to amend his complaint against M-I.

*Twombly* and *Iqbal* have their justification in the legitimate quest to reduce cost and delay in civil litigation, and to conserve the resources of the courts and of the parties. These goals, however, are not promoted by requiring Plaintiff to amend his complaint to include the detail now becoming available in discovery about M-I's conduct. While some additional information is certainly possible at this juncture, and will be done promptly should this Court so order, Plaintiff respectfully submits it is unnecessary and should not be required at this time. Plaintiff's allegations, accepted as true and viewed in the light most favorable to Plaintiff, are sufficient to support a claim against M-I, place M-I on notice that such a claim has been alleged, and to defeat M-I's motion to dismiss.

### C. M-I Has Fair Notice of Plaintiff's Claims

In addition to establishing a facial plausibility threshold, the purpose of the *Twombly/Iqbal* pleading standard is to give the defendant "fair notice of the claims against it." *Wright v. Shell Offshore, Inc.*, 2011 Westlaw 690530, *1 (E.D. La. Feb. 17, 2011). In *Wright*, this Court recently addressed and applied the *Twombly/Iqbal* standards in a maritime context. The claim arose from exposure to benzene-containing chemicals and solvents while plaintiff worked for various employers aboard various vessels. Mr. Wright asserted a Jones Act claim of unseaworthiness and maintenance and cure against his former employers, and products liability claims against an array of "Manufacturer Defendants." After Mr. Wright died of acute myelogenous leukemia, wrongful death and survivor claims were added to the suit. In denying the Rule 12(b)(6) motion, this Court held in *Wright* that plaintiffs had "sufficiently pled enough facts to give defendant 3M Company fair notice of the claims against it in order to survive dismissal under Rule 12(b)(6)," and that "plaintiffs' lack of certain specific factual allegations as to defendant 3M Company does not necessitate a dismissal of those claims. The court finds that

8

plaintiffs have pled enough facts to state a claim for relief that is plausible on its face and to give defendant 3M Company fair notice of those claims." *Wright*, 2011 Westlaw 690530, at **1-2.

Comparing the disposition in the *Wright* action (denial of the dismissal motion) to the factual and procedural context here, it is reasonable to expect that M-I's motion will be similarly denied. Mr. Wright's exposure to benzene was long term (from 1976 to 2009), and occurred in the employ of various defendants at various locations. In stark contrast, Plaintiff's claim for personal injury against M-I arose from one incident, at one time and place, in a catastrophic incident that indisputably implicated the products and conduct of M-I and others. There can be no such implausibility argument with respect to the causal connection between the *Deepwater Horizon* explosion and fire, and the injuries alleged in Plaintiff's complaint.

### D. M-I Relies on Inapplicable Case Law to Evade Liability on Plaintiff's Negligence Claims

In the context of Plaintiff's maritime negligence claims, M-I again seeks dismissal based on inapplicable case law. For example, M-I cites cases concerning the existence of a legal duty in a summary judgment context as opposed to the pleadings stage or standards applicable to a Rule 12(b)(6) motion. In particular, M-I argues that to establish maritime negligence, a plaintiff must demonstrate that M-I owed him a legal duty of care. *Motion, p. 5*. To this end, M-I argues that Plaintiff "alleges no facts from which the Court could infer that M-I owed him any legal duty because Plaintiff does not allege that M-I controlled or had any right to control any of the operations of the *Deepwater Horizon*." *Motion, p. 5*. Stated otherwise, M-I claims that it did not owe a duty to Plaintiff because it did not control any operation on the *Deepwater Horizon*. This argument is mistaken because the issue of control is only relevant if Plaintiff is alleging vicarious liability (*i.e.*, that M-I were liable for BP's negligence). *See, e.g.¸ Fruge v. Parker Drilling Co.*, 337 F.3d 558, 561 (5th Cir. 2003). ("[A] principal is not liable for the actions of its independent

9

contractor unless the principal retained 'operational control' over the contractor's work . . . or expressly or impliedly approved its unsafe work practices that led to an injury."); *LeJeune v. Shell Oil Co.*, 950 F.2d 267, 270 (5th Cir. 1992). Here, the issue is whether M-I's *own* action or inaction was harm to Plaintiff. *Rogers v. Shell Oil Co.*, No. 92-1040, 1993 WL 30052, at *2 (E.D. La. Feb. 3. 1993) ("[A] principal is still liable for its own acts of negligence").

In attempting to dismiss Plaintiff's negligence claims, M-I relies on a line of cases that decline to impose vicarious liability on the owners of oil rigs for unsafe work environments created by their independent contractors. *See Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548 (5th Cir. 1987) ("Under Louisiana law, a principal generally is not liable for the offenses an independent contractor commits in the course of performing its contractual duties"); *Thomas v. Burlington Res. Oil & Gas Co.*, No 99-3904, 2000 WL 1528082, at *2 (E.D. La. Oct. 13, 2000). In *Ainsworth*, the employee of an independent contractor that was hired to erect a drilling rig on an offshore platform brought an action against the platform owner for damages. On appeal from a summary judgment in favor of the owner, the Fifth Circuit held that the owner retained no control over the independent contractor's activity and did not participate in the operation of the rig. *Ainsworth*, 829 F.2d at 551. While *Ainsworth* involved the injury of a worker on an oil rig and is frequently cited in cases involving the injury of a worker on an oil rig, it is a case about vicarious liability for an unsafe worksite, with no applicability in a case about a party's own negligence or product liability. *See*, *Hernandez v. Creative Group, Inc.,* No. 09-7514, 2010 WL 3720533, at *3 (ED. La. Sept. 10, 2010) (citing *Ainsworth* to explain that a conference planner is not liable for the torts of the bus company hired to transport people to and from the conference); *Gonzales v. Brazley*, No. 09-137, 2009 WL 2411800, at *7 (E.D. La. Aug. 4, 2007) (citing *Ainsworth* to explain that a bank was not liable for the torts of an independent contractor hired to

provide security). Accordingly, the Court should decline to apply the cases cited by M-I to the facts of this case and deny M-I's motion to dismiss.

Nevertheless, at this stage in the proceedings, however, the Court is not tasked with determining whether or not M-I owed Plaintiff a legal duty nor is it tasked with determining whether Plaintiff has brought forth evidence, as it would do in the summary judgment context, to demonstrate the duty owed by M-I. Instead, the issue before the Court is whether Plaintiff has pled a set of facts that would entitle him to relief and provided M-I with notice of the claims being asserted against it. Undoubtedly, Plaintiff's pleading survives the dismissal motion if the fact-finder determines that M-I has a duty to perform its operations in a reasonably prudent manner, that its negligence played a part in causing this incident, that it breached his duty to Plaintiff, and that he was thereby injured.

### E. The Application of *Res Ipsa Loquitor*

M-I moves this Court to dismiss Plaintiff's claim for "*res ipsa loquitor*" on the ground that his allegations foreclose the applicability of the doctrine. *See Motion, p. 4*. In asserting this argument, M-I misconstrues Plaintiff's claims. The relevant claim Plaintiff makes is for negligence, not *res ipsa loquitor*. Indeed, the *res ipsa* allegation cited by M-I are contained in the section of Plaintiff's complaint that pleads a cause of action for negligence. *Exhibit A, ¶ 27*.

Simply put, *res ipsa loquitor* is an evidentiary doctrine, not a cause of action. *See Kerns v. Sealy*, 496 F. Supp.2d 1306, 1315 n. 13 (S.D. Ala. 2007). Stated otherwise, the doctrine is simply one way by which a plaintiff may prove negligence, it is not a cause of action that is separate and apart from negligence. Motions to dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) are not intended to address such evidentiary issues. Therefore, M-I's

challenge to Plaintiff's *res ipsa* allegations should be denied because there is no cause of action that is subject to dismissal.[4]

Moreover, M-I is wrong to assert that Plaintiff's pleading does not support the imposition of *res ipsa loquitor*. In the Fifth Circuit, *res ipsa loquitor* will apply where: 1) the injured party was without fault; 2) the instrumentality causing the injury was under the exclusive control of the defendant; and 3) the accident is of a type that ordinarily does not occur in the absence of negligence. *See United States v. Nassau Marine Corp.*, 778 F.2d 1111, 1115 (5th Cir. 1985). M-I asserts that the second element is absent because M-I did not exercise exclusive control over the *Deepwater Horizon*. This argument, however, misrepresents the nature of the second element.

In order to establish an inference of negligence under *res ipsa loquitur*, the plaintiff need not demonstrate that the defendant exercised exclusive control over the entire chain of events that ultimately resulted in the accident. Rather, the plaintiff need only establish that the defendant controlled the particular instrument that is a *possible* source of the accident, even where that instrument is but a component of a larger device. *See Bradshaw v. Freightliner Corp.*, 937 F.3d 197, 201 (5th Cir. 1991). Moreover, to successfully invoke *res ipsa loquitur*, the plaintiff must only establish that the defendant was in exclusive control of the instrumentality at the time the negligence occurred. *Id*. It is immaterial that the defendant did not exercise any control at the time of the accident that caused the injury. *Id*.

In *Bradshaw*, the plaintiff was injured while riding in a truck. The plaintiff alleged that his injury was caused by the defective design of the seat he was riding in when the accident occurred. The plaintiff sued both the truck and the seat manufacturer. The evidence produced at

---

[4] The cases relied upon by M-I do not concern the legal sufficiency of a plaintiff's pleading. *See Brown v. Olin Chem Corp*, 231 F.3d 197, 100 (5th Cir. 2000); *Michaels v. Avitech, Inc.*, 202 F.3d 746, 753 (5th Cir. 2000); *United States v. Nassau Marine Corp.*, 778 F.2d 1111, 1115 (5th Cir. 1985); *Toney v. United States*, 273 F. App'x 384, 386 (5th Cir. 2008). Instead, the courts were concerned with whether the evidence adduced at trial or in response to a summary judgment supported an inference of negligence.

12

trial suggested that the seat's improper design was a "possible" cause of the accident. *Id*. The seat manufacturer asserted that a jury instruction regarding *res ipsa loquitur* was improper because the defendant did not have control of the seat at the time the accident occurred and because there were intervening causes of the accident. *Id*. The Fifth Circuit disagreed and held that the evidence regarding the seat's possible design defect was sufficient to submit the issue of *res ipsa loquitur* to the jury. *Id*.

Plaintiff's allegations against M-I are no different than the evidence submitted in *Bradshaw*. M-I is therefore incorrect to assert that its alleged lack of control of the *Deepwater Horizon* is dispositive, as that is precisely the argument that was rejected by the Fifth Circuit in *Bradshaw*.

Similarly, M-I's relies on *Michaels v. Avitech, Inc.* Relying on *Michaels,* M-I makes the sweeping assertion that *res ipsa loquitor* only applies when "'causes other than the defendant are ruled out'" *Motion, p. 5* (quoting *Michaels*, 202 F.3d at 754). In *Michaels*, in affirming a summary judgment as to the issue of negligence, the court found that the plaintiff's expert had made no attempt to rule out other sources of contamination. The current stage of Plaintiff's case is distinct from the scenario presented in *Michaels.* Again, the issue is whether Plaintiff has sufficiently pled his claims against M-I not whether Plaintiff has presented evidence at trial or in response to a summary judgment. Therefore, the fact that Plaintiff has sued multiple Defendants for playing a role in the *Deepwater Horizon* explosion, should not bar Plaintiff from asserting a *res ipsa loquitor* claim. It is widely accepted in law that there can be more than one proximate or producing cause to an event or injury. Thus, Plaintiff's allegations regarding *res ipsa loquitur* should be preserved.

### F. Plaintiff Adequately Pled a Products Liability Claim

Next, M-I suggests that Plaintiff has not adequately plead his claim for products liability and strict products under the general maritime law because he has not alleged "with specificity the M-I product at issue, how it might have been defective, how the defect was introduced, or how that defect caused his injuries." *Motion, p. 6*. M-I's argument fails. Again, the rationale of *Iqbal/Twombly* makes M-I's argument inapplicable because Plaintiff has provided M-I with fair notice of its claims. Moreover, M-I's drilling fluids and other related fluids were an integral and necessary part of the drilling and exploration process. Undoubtedly, Plaintiff's allegations, accepted as true and viewed in the light most favorable to Plaintiff, are sufficient to support a claim against M-I and place

M-I on notice that such a claim has been alleged. Nonetheless, M-I's drilling fluid failed and a massive environmental disaster resulted. Plaintiff has therefore set forth a proper claim for products and strict products liability under the general maritime law. Accordingly, M-I's motion to dismiss should be denied.

### G. Trahan's Claim for Punitive Damages

Lastly, M-I argues that Plaintiff's claim for punitive damages fails as a matter of law. In this regard, M-I asserts that a party "'who has invoked his Jones Act seaman status nor his survivors may recover non-pecuniary damages from non-employer third parties.'" *Motion, p. 6,* quoting *Scarborough v. Clemco Indus.*, 391 F.3d 660, 668 (5th Cir. 2004). M-I goes on to conclude that because Trahan was employed by Transocean Offshore Deepwater Drilling, Inc. and was aboard the *Deepwater Horizon* when he suffered his injuries, he is a Jones Act seamen. Contrary to this assertion, Plaintiff's current petition makes clear that he is suing under the general maritime law. In fact, nowhere in his Petition does Plaintiff allege that he was a Jones

Act seaman. Nonetheless, like previous cases cited by M-I neither *Miles* nor *Scarborough* concern the legal sufficiency of Plaintiff's pleading and are also inapplicable on other grounds.

First, unlike both *Scarborough* and *Miles*, Plaintiff's pleading does not involve a wrongful death claim. Second, *Miles* did not deal in any way with the issue of punitive damages. Rather, it concerned the recoverability of loss of society damages under the general maritime wrongful death action. *Miles*, 498 U.S. 19, 32-33 (1990). And, in *Scarborough*, unlike this case, the court had judicially determined the decedent to be a Jones Act seamen, holding that his survivors could not recover nonpecuniary damages against a non-employer third party because the suit was analogous to one brought under the Jones Act. *Scarborough*, 391 F.3d at 667, 668. Plaintiff's claims, however, do not involve a wrongful death allegation.

Nevertheless, Plaintiff brought his claims pursuant to the general maritime law where punitive damages have long been recognized. In 1818, the Supreme Court recognized the recoverability of punitive damages in admiralty. *The Amiable Nancy*, 16 U.S. 546 (1818). More recently, the Supreme Court in *Exxon Shipping Co. v. Baker*, affirmed maritime law's long standing recognition of punitive damages as an item that may be recovered when defendant's conduct justifies such an award. *Exxon*, 554 U.S. 471 (2008).[5]

As such, Plaintiff is entitled to recover punitive damages and M-I's Motion should be denied.

### H. Alternatively, Plaintiff Asks The Court To Allow Him to Amend His Complaint

If the Court determines that Plaintiff's pleading, fails to meet the *Twombly/Iqbal* standard, Plaintiff requests that it allow him reasonable time to amend his complaint to state more facts that show, to a plausible degree, that M-I's negligence contributed to this incident and

---

[5] Additionally, contrary to M-I's assertions, ample support exists for a seaman's right to recover punitive damages under the Jones Act. To avoid repetition, Plaintiff references arguments and cases cited in the Omnibus Response Memorandum to Halliburton's Motion to Dismiss the Bundle A Claims. [MDL Doc. #1610, at Section II]

contributed to his injuries and damages. Under Federal Rule of Civil Procedure 15(a)(2), "the court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2).

## REQUEST FOR RELIEF

For the foregoing reasons, M-I's Motion to Dismiss should be denied in its entirety. However, in the event the Court believes otherwise, and would like additional factual details as to the nature and description of the claims or otherwise, Plaintiff requests leave to amend and for all other relief the Court deems appropriate.

Respectfully submitted,

**Lubel Voyles LLP**

By: /s/ Lance H. Lubel
Lance H. Lubel
Texas State Bar No.: 12651125
Adam Q. Voyles
Texas State Bar No.: 24003121
5020 Montrose Blvd., Suite 800
Houston, Texas 77006
Telephone No.: (713) 284-5200
Facsimile No.: (713) 284-5250
Email: lance@lubelvoyles.com
Email: adam@lubelvoyles.com
**ATTORNEY FOR PLAINTIFF BUDDY TRAHAN**

## **CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that the above and foregoing ***Plaintiff Buddy Trahan's Response Memorandum in Opposition to M-I L.L.C.'s Motion to Dismiss*** has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this the 8th day of April, 2011.

    /s/ Lance H. Lubel
    Lance H. Lubel