IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig<br>"Deepwater Horizon" in the Gulf<br>of Mexico, on April 20, 2010<br><br>This document relates to:<br><br>Kleppinger v. Transocean<br>Offshore Deepwater Drilling, Inc., eta al.,<br>No. 2:10-CV-3168<br><br>**Plaintiffs in Intervention**<br>Bill Francis, Tyrone Benton and<br>Carlos Ramos | § § § § § § § § § § § § § § § | MDL NO. 2179<br><br>SECTION: J<br><br>JUDGE BARBIER<br>MAGISTRATE SHUSHAN |

MEMORANDUM IN OPPOSITION OF PLAINTIFFS,
BILL FRANCIS, TYRONE BENTON, and CARLOS RAMOS, TO
M-I L.L.C.'S MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT

TO THE HONORABLE COURT:

Plaintiffs, Bill Francis, Tyrone Benton, and Carlos Ramos, file this Memorandum in Opposition to the Motion to Dismiss Plaintiffs' First Amended Complaint filed by M-I L.L.C. ("M-I") [**Doc. 1645**].

I.   **Plaintiffs' Amended Complaint complies with Rule 10(c).**

M-I says it does not have fair notice of the claims asserted against it for the following reasons: (1) plaintiffs make "wholesale reference" to allegations from pleadings to which plaintiffs are not parties; and (2) M-I is required to "pick through 249 pages of pleadings to attempt to piece together Plaintiffs' claims against it." M-I MEMORANDUM [**Doc. 1645-1**, at pp. 3-4]. As a consequence, M-I argues, plaintiffs' claims should be dismissed. *Id.* at p. 4. There is no merit to M-I's complaints.

Under Federal Rule of Civil Procedure 10(c), a statement in a pleading may be adopted by reference in the same pleading *or in any other pleading*. FED.R.CIV.P. 10(c). "The ability to incorporate matter from other pleadings is especially useful in multiparty litigation when the presence of common questions often results in the pleadings of the parties on the same side of the litigation being virtually identical, which makes employing simple incorporation by reference highly desirable." 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1326.

There is no prescribed procedure for referring to incorporated matter. *Id.* To enable the responding party to ascertain the nature and extent of the incorporation, the references to prior allegations need only be direct and explicit. *Id.*

In this case, plaintiffs' Amended Complaint adopts discrete allegations – identified by paragraph number – from the B1 Bundle Complaint and from the Rule 14(c) Complaint. *See* FIRST AMENDED COMPLAINT [**Doc. 1524**, ¶¶ 13, 19-23].[1] Plaintiffs have properly adopted allegation from other pleadings and M-I's argument to the contrary is unfounded. M-I's motion to dismiss should be denied.

**II.     Plaintiffs' Amended Complaint provides M-I fair notice of plaintiffs' claims.**

There likewise is no merit to M-I's alternative contention that plaintiffs' Amended Complaint is "devoid of factual allegations." M-I MEMORANDUM [**Doc. 1645-1** at p. 4. Plaintiff's Amended Complaint contains numerous, detailed factual allegations concerning M-I's conduct, the theories of liability against M-I, and the injuries and damages plaintiffs sustained. FIRST AMENDED COMPLAINT (**Doc. 1524** ¶¶ 13, 19-23, 28-32 [incorporating by reference

---

[1] The Court will note that of the approximate 770 paragraphs in the B1 Bundle Complaint, plaintiffs adopt 442 paragraphs; of the 52 paragraphs in the Rule 14(c) Complaint, plaintiffs adopt 21 paragraphs.

allegations from B1 Bundle Complaint/**Doc. 1128** and from Rule 14(c) Third-Party Complaint/**Doc. 1320**]).

*M-I's involvement in the accident giving rise to this suit.*[2]

On April 20, 2010, at approximately 9:45 p.m. CST, a well blowout caused explosions on the Deepwater Horizon, an oil vessel in the Gulf of Mexico, igniting a raging, gas-fueled fire on the vessel. After burning for two days, the vessel sank to the ocean floor. **Doc. 1128** ¶ 198. As the Deepwater Horizon tipped into the sea, the long riser pipe connecting the vessel to the wellhead on the seafloor bent and broke, leaving the pipe leaking oil out of its now-open end as well as through two breaks along its length. An emergency valve, installed on the wellhead for just such a disaster, failed to seal the wellhead as it should have, causing the blown-out well to spew oil into the Gulf waters. *Id.* ¶ 199. As even BP has admitted, no one company's single action or inaction caused this disaster, but rather "a complex and interlinked series of mechanical failures, human judgments, engineering design, operational implementation and team interfaces" by "multiple companies, work teams and circumstances" came together to cause the blowout and the spill. *Id.* ¶ 307.

On the Deepwater Horizon, M-I provided mud products, including drilling fluids and spacers, engineering services, and mud supervisory personnel, such as mud engineers and drilling fluid specialists, to manage the properties of those fluids in the Macondo Well. M-I employed, planned and/or supervised key fluid activities concerning the Macondo Well, such as the mud displacement that was occurring at the time of the April 20, 2010 Macondo Well blow-out. **Doc.**

---

[2] The Court will note that M-I is defined as a "Drilling Defendant" in the B1 Bundle Complaint because it is among those defendants involved in the drilling, cementing, and other temporary well abandonment activities of the Deepwater Horizon. **Doc. No. 1128** ¶ 229.

1320 ¶ X. In addition, M-I provided the drilling fluids or "mud" for the drilling operations onboard the Deepwater Horizon and was responsible for mud drilling, composition and monitoring, and for the provision of "spacer" solution. **Doc. 1128 ¶ 600.**[3/]

The following is a summary of plaintiffs' allegations concerning M-I's conduct leading up to and resulting in the explosions, fire, and sinking of the vessel:

- Emphasizing speed and thrift over safety, leading to errors and omissions, which, in turn, caused and/or contributed to the blowout and subsequent sinking of the well. *Id.* ¶¶ 291 through 301;

- Engaging in reckless decision-making in the rush to complete the well. *Id.* ¶¶ 303 through 307;

- Cutting corners on well design. *Id.* ¶¶ 308 through 322;

- The use of too few centralizers. *Id.* ¶¶ 323 through 326;

- Skipping the critical "bottoms up" mud-circulation method (the failure to fully circulate the drilling mud through the entire length of the well before beginning the cementing job). *Id.* ¶¶ 327 through 332;

- The use of the incorrect cement mixture and a failed seal. *Id.* ¶¶ 333 through 354;

- The failure to use the crucial "bond log" tests of cement integrity, or to otherwise stop the work or insist that BP run the test. *Id.* ¶¶ 355 through 361;

- Continuing the well completion plan after the well failed key pressure tests; engaging in grossly negligent conduct by ignoring the pressure test results and not insisting that a remedial cement job be done right away to correct the imperfections in the cement. *Id.* ¶¶ 369 through 380;

- Using an unorthodox spacer fluid mixture and volume, which potentially interfered with pressure tests and BOP functionality. *Id.* ¶¶ 381 through 386;

---

[3/] Drilling mud is a thick mixture of barite, water, clay, and chemicals that cools and lubricates the drill bit and suspends and carries rock fragments and other drilling debris to the surface as the mud circulates. *Id.* ¶ 268. The drilling mud is pumped down the center of drill pipe as the drilling apparatus moves downward drilling out the well bore hole. *Id.*

- Ignoring and overlooking warning signs of the imminent blowout. *Id.* ¶¶ 387 through 402;

- Inattention to proper well monitoring during the mud displacement process and the use of woefully inadequate policies and instructions regarding well control procedures for vessel workers. *Id.* ¶¶ 403 through 410;

- Ignoring Transocean's infrequent and inadequate maintenance; failing to address leaks in the hydraulic system of the Macondo well's BOP; failing to update the BOP's schematic design to reflect aftermarket changes, failing to address problems with the faulty solenoid valve, poor battery maintenance, hydraulic fluid leaks, and aftermarket modifications on the BOP before the April 20, 2010, incident; failing to install backup BOP activation systems, backup BOPs or other secondary redundant precautionary measures available to protect the vessel, its workers, plaintiffs, and the environment from the catastrophic results of a well blowout; and failing to ensure that the BOP present on the Deepwater Horizon possessed reasonably safe, adequate, functional technology to prevent blowouts. *Id.* ¶¶ 415 through 448;

- Failing to report to the Minerals Management Service Transocean's poor maintenance of the Deepwater Horizon and its practice of disabling or bypassing vital safety systems and alarms. *Id.* ¶¶ 450 through 460;

- Failing and refusing to take serious risks seriously enough and failing to identify risks that proved to be fatal because of a culture of complacency; violating regulatory mandates, causing and/or contributing to the well blowout and subsequent explosions, fire, and sinking; engaging in a history of foolhardy, irresponsible behavior across its operations on land and at sea; all of which contributed to the failure of safety mechanisms, exacerbated the disaster, and likely caused unnecessary deaths and injuries of vessel workers, and the destruction of the Deepwater Horizon. *Id.* ¶¶ 461 through 477.

As the foregoing summary of the factual allegations reveals, plaintiffs' Amended Complaint goes far beyond the *Twombly/Iqbal* standards, especially since "detailed factual allegations" are not even required. *See Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir.2007).[4/]

---

[4/] On March 14, 2011, Plaintiffs Steering Committee filed an Omnibus Response Memorandum to Halliburton's Motions to Dismiss Bundle "A" Claims. (**Doc. 1610**). That Memorandum provides the Court with the applicable law governing the merits of Rule 12(b)(6) motions. **Doc. 1610** at pp. 1, 3-10. Plaintiffs respectfully direct the Court's attention to those pages of the Omnibus Response for the law governing the merits of M-I's motion to dismiss.

The Court should reject M-I's contention that plaintiffs' allegations are mere "naked assertions ... devoid of further factual enhancement." **Doc. 1645-1** at p. 6. Similarly, the foregoing allegations provide the necessary factual bases for a negligence per se claim against M-I and, thus, state a claim to relief that is plausible on its face. *See Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009).

### *Plaintiffs' claims and causes of action against M-I.*

Plaintiffs pleaded the following claims and causes of action against M-I:

- M-I owed duties of care to Plaintiffs to, *inter alia*, exercise reasonable care in providing, controlling and monitoring the mud and spacer solutions used on the Deepwater Horizon. **Doc. 1128** ¶ 601;

- M-I breached its duties to Plaintiffs by, *inter alia*, failing to provide, control, and monitor the mud and spacer solutions used on the Deepwater Horizon in a reasonably safe manner, proximately causing and/or contributing to Plaintiffs' injuries and damages. *Id.* ¶ 602; and

- M-I owed and breached duties of ordinary and reasonable care in connection with the drilling operations owed and breached duties to the plaintiffs to guard against and/or prevent the risk of an oil spill. **Doc. 1320** ¶ XLVII.

*See* FIRST AMENDED COMPLAINT ¶¶ 22-23. *See also* **Doc. 1128** ¶¶ 569-571, 578-87, 629-31, 767-69 (incorporated by reference into plaintiffs' First Amended Complaint in paragraph 22). Finally, plaintiffs have pleaded in detail the nature of the injuries and damages they sustained. **Doc. 1567** ¶¶ 28-32.

In sum, plaintiffs' detailed allegations of the underlying theories of recovery against M-I constitute much more than the "conclusory claims of fault" that M-I asserts in its Memorandum. *See* **Doc. 1645-1** at p. 4. Because plaintiffs have pleaded enough facts to state a claim for relief

that is plausible on its face and to give M-I fair notice of those claims, M-I's motion to dismiss should be denied. *See Wright v. Shell Offshore, Inc.*, 2011 WL 690530 *1-2 (E.D.La.2011).

### III.  *Res ipsa loquitur* is an evidentiary doctrine that is not subject to dismissal.

M-I argues that the Court should find the doctrine of *res ipsa loquitur* inapplicable to plaintiffs' claims in this case. M-I MEMORANDUM at p. 7. But, as M-I recognizes, the doctrine is an evidentiary principle. *Id.* A Rule 12(b)(6) motion to dismiss is not intended to address this type of evidentiary issue. In this regard, plaintiffs respectfully direct the Court's attention to the legal argument and authorities on this issue in the PSC's Omnibus Response Memorandum to Halliburton's Motions to Dismiss (**Doc. 1610**) ¶ IV, at pp. 21-23. The Court should reject M-I's invitation to find that plaintiffs' allegation regarding *res ipsa loquitur* is inapplicable in this case.

### IV.  Punitive damages are available.

M-I argues that because plaintiffs "have each invoked their Jones Act status[,]" their claim for punitive damages "are foreclosed under controlling law and should be dismissed." M-I MEMORANDUM ¶ III, at p. 8. However, an analysis of the law does not support M-I's contention. In that regard, plaintiffs respectfully direct the Court's attention to the legal argument and authorities on this issue in the PSC's Omnibus Response Memorandum to Halliburton's Motions to Dismiss (**Doc. 1610**) ¶ II, at pp. 10-16. M-I's motion to dismiss plaintiffs' claim for punitive damages should be denied.

### CONCLUSION

For the reasons stated, plaintiffs respectfully request that M-I's Motion to Dismiss Plaintiffs' First Amended Complaint be in all things denied.

SCHECHTER, MCELWEE, SHAFFER, & HARRIS, L.L.P.

_____
MATTHEW D. SHAFFER
State Bar No. 18085600
Fed I.D. No. 8877
DENNIS M. MCELWEE
State Bar No. 13587820
Fed I.D. No. 7490
ARTHUR L. SCHECHTER
State Bar No. 17735000
Fed I.D. No. 1454
3200 Travis, 3rd Floor
Houston, Texas 77006
Tel: 713-524-3500
Fax: 713-751-0412
mshaffer@smslegal.com
dmcelwee@smslegal.com
arthurschechter@gmail.com

and

PAUL M. STERBCOW (#17817)
Lewis, Kullman, Sterbcow & Abramson
601 Poydras Street, Suite 2615
New Orleans, Louisiana 70130
Tel: (504) 588-1500
Fax: (504) 588-1514
sterbcow@lksalaw.com
ATTORNEYS FOR PLAINTIFFS, BILL FRANCIS, TYRONE BENTON, and CARLOS RAMOS

## CERTIFICATE OF SERVICE

I certify that the above and foregoing Memorandum in Opposition of Plaintiffs, Bill Francis, Tyrone Benton, and Carlos Ramos, to M-I L.L.C.'s Motion to Dismiss Plaintiffs' First Amended Complaint will be served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in Accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System which will send a notice of electronic filing in accordance with the procedures established in MDL 217, on this 8th day of April 2011.

_____
MATTHEW D. SHAFFER