UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In re:  Oil Spill by the Oil Rig
"Deepwater Horizon" in the Gulf
of Mexico, on April 20, 2010

Applies to: *All Cases*

MDL No. 2179

SECTION J

JUDGE BARBIER
MAGISTRATE SHUSHAN

RESPONSE OF THE GULF COAST CLAIMS FACILITY AS *AMICUS CURIAE*
TO THE SUPPLEMENTAL NOTICE ON BEHALF OF THE
STATE OF MISSISSIPPI FILED ON APRIL 7, 2011

On April 7, 2011, the Attorney General of Mississippi filed in this action a Supplemental Notice on Behalf of the State of Mississippi Regarding Continued Violations of OPA by BP and its Agents, Kenneth Feinberg and the Gulf Coast Claims Facility (hereinafter "the April 7th Brief"). The Attorney General is not a party in this action, but the Gulf Coast Claims Facility ("GCCF") is compelled to respond because of the unsupported and damaging assertions made by the Attorney General in the April 7th Brief.

While the April 7th Brief purports to present to the Court "additional facts" (*see* April 7th Brief at 1), it is constructed out of conclusory allegations without a shred of evidentiary support or basis in fact.[1] The Attorney General states that (i) "BP and the GCCF have continued to violate the requirements of OPA and the rights of claimants" (*id.* at 2); (ii) the GCCF "continues to use economic duress to manipulate financially desperate claimants into providing BP, and

---

[1] Indeed, the Attorney General effectively concedes that the serious, damaging allegations he directs at the GCCF are predicated on nothing more than "anecdotes from claimants" (April 7th Brief at 8), by which he means unproven anecdotes by a fraction of the more than 500,000 claimants who have filed claims with the GCCF.

1

other responsible parties, with an improperly broad Release of claims and legal rights in exchange for inadequate consideration" (*id.*); (iii) the GCCF "continues to process few interim claims – instead using its resources to extract releases from claimants through the 'Quick Payment' final claims process that BP and Mr. Feinberg have contrived" (*id.*); and (4) "[d]espite the obvious and undisputed failure of the GCCF to process interim, short-term claims, BP has chosen to significantly reward Kenneth Feinberg for the manner in which he is administering the GCCF" (*id.*).

The actual ***evidence*** establishes, however, that the GCCF has accomplished an extraordinary amount of work in a short time, even while confronted with an unprecedented challenge. As the United States observed in its February 18, 2011 submission to this Court, "the GCCF ha[d] paid out [as of that time] over $3.3 billion in 6 months to over 168,000 claimants, ***significant numbers by any measure***." Statement of the United States Regarding the Court's February 2, 2011 Order, at 6 (emphasis added). The work of the GCCF has brought much-needed financial relief to individuals and businesses throughout the Gulf states, applying generous protocols that far exceed anything required or even contemplated by the Oil Pollution Act of 1990 ("OPA"). Again to quote the United States, "the GCCF implemented an Emergency Advance Payment program, which is not specifically delineated in the OPA, that provided many individuals and some businesses with much needed funds on an expedited basis, and has made its claims process available for claimants who wish to resolve physical injury claims that are not covered by the OPA." *Id.* at 5-6.

For the reasons stated in the GCCF's February 18, 2011 filing, the GCCF believes that this Court lacks power to regulate the OPA claims process. Nevertheless, in order to correct the misstatements in the April 7th Brief, and to assist the Court in understanding the GCCF's success

to date in processing individual and business claims submitted by all claimants, including those from Mississippi, the GCCF provides the Court with the information set forth herein. These facts establish that the relief sought by the Attorney General of Mississippi not only is unnecessary but would delay the processing of claims of Mississippi residents and all other claimants. The Court should reject the Attorney General's invitation to intervene in a claims process that is providing claimants with an efficient and fair method of receiving compensation arising out of the Deepwater Horizon incident (the "Oil Spill").

### Current Facts Regarding the GCCF's Processing of Claims

The GCCF is not delaying or denying eligible Mississippi claimants timely payment of their claims. To the contrary, the latest statistics clearly demonstrate the true facts:

- Since its establishment on August 23, 2010, the GCCF has received approximately 850,000 claims from more than 502,000 individual and business claimants from all 50 states, primarily Alabama, Florida, Louisiana, Mississippi, and Texas.[2] These numbers continue to increase on a daily basis. ***To date, in just nine months of operation, the GCCF has paid almost $4 billion to over 174,000 claimants in honoring approximately 300,000 claims.*** *Id.* In the face of such overwhelming statistics, the Attorney General's naked claims of malfeasance, "obvious and undisputed failure" (April 7th Brief at 2), and of the GCCF's supposed attempt "to aid BP in evading payment of legitimate claims" (*id.*) must be summarily dismissed.

- In just a 90-day period from August 23 to November 23, 2010, the GCCF paid over 169,000 claimants a total of $2.6 billion in emergency compensation through its Emergency Advance Payment program. In Mississippi alone, over 15,100 claimants received emergency

---

[2]   *See* GCCF Overall Program Statistics (Status Report as of April 11, 2011) (available at www.gulfcoastclaimsfacility.com/GCCF_Overall_Status_Report.pdf) (last visited April 11, 2011).

compensation totaling $231 million.  *Id.*  These payments of emergency compensation were made without requiring any release whatsoever – a process far more generous than any envisioned by OPA, which contemplates neither emergency payments nor payments without any release of a claimant's rights.

- One of the dominant legislative purposes underlying OPA is to expedite the process whereby those injured by oil spills receive compensation, which in the past has taken years, if not decades, to accomplish.  While the Mississippi Attorney General submits that the GCCF has "subverted" the remedial purposes of OPA (April 7th Brief at 3), we submit that the payment of $2.6 billion of emergency compensation *within six months of the Oil Spill* and the payment to date in just nine months of operation of almost $4 billion to over 174,500 claimants conclusively proves otherwise.

- In addition to the Emergency Payment requests, the GCCF has received 274,174 claims requesting Final Payments, Interim Payments or Quick Payments.  Just since February 18, 2011 – the date the GCCF implemented its Final Rules Governing Payment Options, Eligibility and Substantiation Criteria, and Final Payment Methodology – the GCCF has processed over two-thirds of all such claims, and has paid eligible claimants $1.154 billion in additional compensation.  *Id.*

The breakdown of GCCF payments made in the past seven weeks demonstrates the true state of affairs in Mississippi and elsewhere:

- Approximately *108,000* individuals and business have accepted a Quick Payment in return for a total release.  *Id.*  The Quick Payment program provides eligible claimants with the opportunity to obtain $5,000 (for individuals) or $25,000 (for businesses) in full satisfaction of their remaining claims, even if the claimant cannot substantiate further losses, or **did not even**

*incur further losses*. We submit that it is unsurprising that more than 100,000 claimants have jumped at the opportunity to take advantage of this generous program. By contrast, the Attorney General's assertion that claimants have accepted such payments and released their claims as a result of "economic duress to manipulate financially desperate claimants" (April 7th Brief at 2) is made ***without any supporting evidence whatsoever***. Moreover, the Quick Payment program is nothing more than an option made available to claimants for whom it makes sense, and they are freely able to reject the option. The Attorney General's argument that the citizens of Mississippi (and elsewhere) are incapable of evaluating their options and making an informed decision to accept or reject the Quick Payment option is patronizing at best and at worst insulting to Mississippi claimants.

- Since February 18, 2011, the GCCF has also offered approximately 28,000 claimants a Final Payment, accompanied by a Release and Covenant Not to Sue, and has provided each claimant with a 90-day deadline to make a decision. *Id.* In just the first seven weeks since February 18th, 14,180 individuals and businesses have accepted this option. *Id.* The Attorney General states that these numbers are insignificant; the GCCF disagrees. The fact that 14,180 claimants have, in just seven weeks, accepted the GCCF's Final Payment Offer to resolve their claims, even though the 90 day window is still open, speaks for itself.

- Similarly, 5,495 claimants since February 18, 2011 have pursued, and been paid pursuant to, the GCCF's Interim Payment Option, which requires no release whatsoever. *Id.* Each of these claimants has the option of returning to the GCCF on a quarterly basis (or earlier) and receiving an Interim Payment if the claimant can document past quarterly damage. This number also speaks for itself; it is hardly insignificant that thousands of claimants in the Gulf region, including Mississippi, have opted for this Interim Payment approach in just seven weeks.

However, the GCCF has declined to pay approximately 44,000 claimants who have submitted claims that lack the necessary proof to document their eligibility and damages attributable to the Oil Spill.  *Id.*  The GCCF does not pay unsubstantiated claims that lack the proof necessary to demonstrate a link between alleged damage and the Oil Spill.  This approach is entirely consistent with OPA.  Courts have recognized that the purpose of OPA's presentment requirement is to "promote settlement and avoid litigation." *Johnson v. Colonial Pipeline Co.*, 830 F. Supp. 309, 311 (E.D. Va. 1993).  Using this central legislative purpose as a guide, courts have held that, to satisfy the OPA presentment requirement, a claimant must provide the responsible party with "enough information to accept the claim and make a payment that will settle the matter" or at least enough information for the responsible party "to formulate an offer of its own that might lead to settlement." *Id.*; *see also Abundiz v. Explorer Pipeline Co.*, No. 00-CV-2029, 2002 WL 2030880, at *2 (N.D. Tex. 2002).  Accordingly, courts have found that to "present" a claim, a claimant must provide information to the responsible party that shows, with some specificity: (a) "the amount of monetary damages claimed"; and (b) "the nature and extent of the damages alleged." *Johnson*, 830 F. Supp. at 311; *see also Abundiz*, 2002 WL 2030880, at *3-4.  As one court explained, without such detailed information, "the responsible party will be unable to make an informed offer on its own, unable to engage in meaningful substantive negotiations, and thus unable to settle the matter by agreeing to a final amount." *Johnson*, 830 F. Supp. at 311.

The Attorney General of Mississippi's indictment of the GCCF's requirement of substantiation of claimant injuries is literally baseless.  He writes that "[t]he GCCF **appears** to be attempting to aid BP in evading payment of legitimate claims by imposing **unreasonable** requests for unnecessary documentation and then using the lack of such documentation as

6

grounds for denial of provable, legitimate claims." April 7th Brief at 6 (emphasis added). This argument – such as it is – effectively defeats itself. The Attorney General does not allege that the GCCF *is* demanding unnecessary documentation – only that it "appears to be" doing so, and without any indication of the basis on which the Attorney General believes the GCCF's substantiation requirements have been unreasonable. There is no basis for this damaging and irresponsible charge that undermines the credibility of the GCCF.

The Attorney General also fails to acknowledge the simple fact that, under OPA, any claimant dissatisfied with the determination of the GCCF pertaining to eligibility and calculation of damage has the right to seek the independent review of the United States Coast Guard. At the request of dissatisfied claimants, the Coast Guard has already reviewed almost 500 GCCF determinations and, in each instance, the Coast Guard has concurred with the ultimate determination by the GCCF.

### Conduct of the Attorney General of Mississippi

In stark contrast to the strong record of the GCCF to date in processing claims, the involvement by the Mississippi Attorney General has been, if anything, threatening to the rights and interests of claimants.

For example, in the April 7th Brief, the Attorney General touts the fact that on February 18, 2011, his office "initiated action through its consumer protection authority to obtain the information necessary from the GCCF in order to ensure the transparency of the claims process that BP and Kenneth Feinberg had promised but failed to provide." April 7th Brief at 3. The Attorney General refers to the issuance by his office, on February 18th, of a patently overbroad and obstructionist Administrative Subpoena *Duces Tecum* on the GCCF, purportedly under the authority conferred upon his office by the Mississippi Consumer Protection Act (the "MCPA");

however, the subpoena plainly exceeds the statutory authority of the Attorney General under the MCPA because the GCCF is not engaged in commerce with consumers involving the purchase or sale of goods or services.

Notwithstanding the unlawfulness of the subpoena, the GCCF has sought to engage the Attorney General in discussions to determine whether the GCCF can provide information to his office without improperly disclosing the confidential personal and financial information of claimants. Unfortunately, on the same day that a representative of the GCCF scheduled a meeting with the Attorney General's Office to further these discussions, believing that the Attorney General also wished to pursue these discussions in good faith, the Attorney General filed his baseless, counterproductive brief with this Court, without any forewarning to the GCCF, or even the courtesy of a service copy.

The Mississippi Attorney General has for several months been demanding that the GCCF provide his office with direct access to Mississippi claim files. The GCCF has consistently declined, citing its obligation to maintain the confidentiality of the personal and financial information submitted by claimants to the GCCF. In an effort to be constructive, however, almost six months ago, on October 18, 2010, Mr. Feinberg told the Attorney General that he would provide the Attorney General with access to unredacted claimant files, if the Attorney General obtained the consent of the claimant. The Attorney General failed to act on this offer until March 10, 2011, after having to be reminded of it by Mr. Feinberg in a letter dated February 18, 2011. The Attorney General then requested only five claim files of Mississippi claimants who agreed to the disclosure of their files. The GCCF promptly provided unredacted files of these five claimants to the Attorney General on March 15, 2011. On March 25, 2011, however, it was reported in the *Mobile Press-Register* that "Hood said that the claims operation has

recently given his office access to claims files of people who have given Hood signed waivers. ***His office has not yet had a chance to review them, Hood said.***" (Emphasis added).

On March 23, 2011, still without commenting on his review of the initial five claimant files, the Attorney General, with appropriate claimant authorizations, requested an additional 11 files from the GCCF. These unredacted files were sent to the Attorney General on April 5, 2011. Again, the GCCF has heard nothing from the Attorney General concerning these files. On April 7, 2011, the Attorney General requested an additional 75 files after securing appropriate claimant authorizations. These additional unredacted files are currently being compiled and will be forwarded to the Attorney General's Office by the GCCF.[3]

In his April 7th Brief, the Attorney General of Mississippi requests that this Court intervene to "order an audit at BP's expense by an independent auditor ... followed by an evidentiary hearing to present the auditor's findings regarding the GCCF claims process." April 7th Brief at 8-9. As set forth in our earlier submission to the Court, the Court does not have the power under OPA to impose upon the GCCF the monitoring sought by the Attorney General. Even if it did, however, such monitoring would be unnecessary since the GCCF has already sought to work collaboratively with the Attorney General to provide access to the files he seeks, based upon the consent of the aggrieved claimant. Moreover, imposing such monitoring on the GCCF would only harm claimants because it would require the GCCF to divert critically important resources to these tasks, and chill the ability of GCCF personnel to work expeditiously without fear of running afoul of an independent auditor and a court-imposed evidentiary hearing.

---

[3] If the Attorney General's Office were to review just the first two tranches of files provided by the GCCF – totaling just 16 files –it would become apparent that about half of these claims have been held in abeyance for possible fraud. Months before these claimants signed authorizations for the Attorney General to obtain access to their files the GCCF determined that sufficient cause existed to referthe files to fraud investigators.

In the past few months, the GCCF has undertaken important steps in local claims offices throughout the Gulf, to add additional resources to improve claims processing. Not only has the GCCF supplemented its staff by hiring local personnel, with credibility in the region, to assist claimants in all aspects of the claims process, it has also provided a list of local accountants, not retained by the GCCF, to assist claimants seeking accounting advice. In addition, the GCCF has arranged for the Mississippi Center for Justice to administer a legal services program to provide claimants with free legal assistance. Confronting the sheer magnitude of claims, the GCCF has responded both quantitatively and qualitatively to make the claims process easier and swifter.

The Attorney General's inflammatory allegations that the GCCF claims process is uninviting, inaccessible and a barrier to claimants seeking prompt compensation for their damage are belied by the record of GCCF performance over the past nine months. Claims continue to be filed with the GCCF in record numbers, almost one year after the Oil Spill. In just the past month, the GCCF has received 47,230 claims from 41,665 claimants, with hundreds being filed each week. The success of the GCCF program is a direct result of its fair, accelerated, voluntary and generous process for reviewing claims and providing compensation.

In the April 7th Brief, the Attorney General of Mississippi also takes a gratuitous swipe at the compensation being received by Mr. Feinberg and his firm for their work in connection with the GCCF. The Attorney General's ominous statement that the compensation "speaks volumes about what services that BP requires Mr. Feinberg to perform" (April 7th Brief at 2) almost rises to the level of defamation. However, to promote the very transparency urged by the Attorney General, the Administrator of the GCCF asked the former Attorney General of the United States, Michael A. Mukasey, independently to opine on the reasonableness of the compensation criticized by the Attorney General of Mississippi. A copy of Attorney General Mukasey's

10

Memorandum is attached as Exhibit A hereto, and it effectively and objectively answers the criticisms in all respects.

## Conclusion

For all of the foregoing reasons, the GCCF urges this Court not to intervene in the ongoing procedures governing the processing of individual and business claims by the GCCF. The process is working effectively to bring efficient, fair compensation to eligible claimants. The grant by this Court of the Attorney General of Mississippi's requests, in part or in full, would undermine the effectiveness of the GCCF and its ability to compensate eligible claimants.

Respectfully submitted,

_____
David B. Pitofsky
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 813-8800

William F. Sheehan
GOODWIN PROCTER LLP
901 New York Avenue, NW
Washington, DC 20001-4432
(202) 346-4000

*Counsel for Kenneth R. Feinberg as Claims Administrator of the Gulf Coast Claims Facility*

April 12, 2011

## CERTIFICATE OF SERVICE

    I hereby certify that the above and foregoing pleading was electronically filed on this 12th day of April, 2011 with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179.

                                          /s/ David B. Pitofsky
                                          David B. Pitofsky

April 12, 2011