IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | * * * * * | MDL No. 2179<br><br>SECTION: J |
| This document applies to:<br>*All Cases.* | * * * | JUDGE BARBIER<br>MAGISTRATE SHUSHAN |

**DECLARATION OF DONALD A. TOENSHOFF, JR. IN SUPPORT OF DEFENDANT MARINE SPILL RESPONSE CORPORATION'S OBJECTION TO PROPOSED TRIAL PLANS**

I, Donald A. Toenshoff, Jr. declare under penalty of perjury as follows:

1. I am the Executive Vice President of Marine Spill Response Corporation ("MSRC"), and my responsibilities include management of MSRC's dispersant program. I submit this declaration in support of MSRC's objection to the proposed trial plans which do not include a determination of claims against MSRC as part of the February 2012 limitation and liability trial.

2. MSRC, MSRC's sub-contractors and MSRC's dispersant supplier have been named as Defendants in the B(3) Master Complaint in this litigation, even though their activities were approved by the United States Coast Guard ("USCG"), and even though the dispersant sprayed was listed on the United States Environmental Protection Agency ("EPA") schedule of

1

dispersants that may be authorized for use by the USCG in accordance with the requirements of National Contingency Plan (33 C.F.R. part 300, subpart J).

3. The responder immunity provisions of Federal and state law have not been adequate in preventing MSRC from being brought into this litigation, and to date have not resulted in the prompt dismissal of the B(3) Master Complaint against MSRC, its sub-contractors or dispersant supplier.

4. As a result, MSRC, MSRC sub-contractors and MSRC's dispersant supplier have incurred and will continue to incur substantial defense costs. Other responders involved in dispersant operations have suffered a similar fate.

5. Delaying a trial for MSRC and the other oil spill responders is prejudicial to them, and will likely undermine the response to any major oil spill occurring in the interim.

6. It is prejudicial as MSRC and the other responders will incur potentially millions of dollars in defense costs in the interim. It is prejudicial, and contrary to the OPA principle of "polluter pays," as the responders' liability will be determined AFTER the liability trial for the responsible parties (RPs). Pursuant to responder immunity, any liability of the responders is transferred to the RP. Therefore, the liability of the responders (if any) must be ascertained BEFORE the trial for the RPs, or at the very least during the same trial.

7. MSRC and other oil spill responders will suffer significant harm if this matter is not expeditiously resolved. For example, we understand that dispersant aircraft providers are unable to obtain appropriate insurance to conduct dispersant operations, given the uncertainty over the litigation. We anticipate similar insurance issues when our policies come up for renewal.

8. The potential and uncertain liability has also created a situation where, if another spill occurs, oil spill response organizations and contractors may be unwilling to spray dispersants. Responders are considering what additional contractual protections, if any, could mitigate the uncertain legal and financial risks that could result from responding to future spill events. But the uncertainty about the level of risk facing oil spill response organizations as a result of the current litigation makes it difficult to craft such protections, and also makes it unlikely that companies will agree to the very onerous indemnification provisions that would be required.

9. Similarly, dispersant suppliers have indicated they will not sell additional dispersants unless they receive significant contractual indemnification protections. But again, uncertainty about the level of risk facing the dispersant manufacturer as a result of the current litigation makes it unlikely that companies will agree to the very onerous indemnification provisions that would be required.

10. Even if these additional indemnifications are provided, MSRC's intention is to seek specific Coast Guard (and possibly EPA) orders before spraying dispersants in the future, and to obtain the Coast Guard's confirmation that MSRC is eligible for appropriate immunities. Without such specific orders, and without these assurances of immunity, MSRC believes the potential liability too great to participate in dispersant operations.

11. Without these additional contractual indemnification protections, and without explicit Coast Guard (and possibly EPA) orders to spray, MSRC and other oil spill responders will likely be unwilling to provide dispersant spill response services for future oil spills, or the delivery of such services could be significantly delayed while liability issues are addressed.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 13, 2011 at Herndon, Virginia.

_____