**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | MDL NO. 2179 |
| | SECTION: J |
| THIS DOCUMENT RELATES TO: | |
| *ALL CASES* | JUDGE BARBIER<br>MAG. JUDGE SHUSHAN |

**O'BRIEN'S RESPONSE MANAGEMENT, INC. AND NATIONAL RESPONSE CORPORATION'S MEMORANDUM CONCERNING FEBRUARY 27, 2012 TRIAL**

O'Brien's Response Management, Inc. ("O'Brien's") and National Response Corporation ("NRC") respectfully submit this Memorandum Concerning February 27, 2012 Trial in response to the Court's April 1, 2011 Order (Rec. Doc. 1832).

## INTRODUCTION

O'Brien's and NRC are defendants in the B3 Bundle Master Complaint (Rec. Doc. 881) and First Amended B3 Bundle Master Complaint (Rec. Doc. 1812), and have filed a Motion to Dismiss (Rec. Doc. 1388) all claims that have been asserted against them in those complaints. In addition, per the Court's March 24, 2011 Order (Rec. Doc. 1730), Transocean's Rule 14(c) Third-Party Complaint tendered to O'Brien's and NRC only the claims contained in the B3 Bundle Master Complaint that have already been asserted against O'Brien's and NRC.

O'Brien's and NRC submit this memorandum (i) to propose an efficient and manageable approach to the February 27, 2012 trial (*i.e.*, one trial with four phases) that will both establish a fair and logical trial structure and maximize its usefulness to all parties (in terms of providing real-world information about the strengths and weaknesses of the claims and defenses that have been asserted), and (ii) to respectfully suggest that, regardless of the contours of the February 27, 2012 trial, basic principles of multidistrict litigation dictate that pretrial discovery concerning issues related to the clean-up operations proceed simultaneously with all other discovery, subject to a separate fact-discovery cut-off date of May 31, 2012.

## TRIAL STRUCTURE PROPOSAL

O'Brien's and NRC respectfully suggest that the February 27, 2012 trial should proceed in four separate phases, as described below. The important conceptual proposal here is that each of two "liability" phases be followed by a "damages" phase wherein the claims of certain "bellwether" plaintiffs would be resolved. Otherwise, the Court runs the dual risk of either

issuing an "advisory" opinion on fault that is binding on no one or impermissibly attempting to bind everyone to the results of a trial in which some may not have participated. As Judge Fallon has forcefully argued, the middle road is the best approach—namely holding "informational" or "nonbinding" bellwether trials of specific plaintiffs' claims that only bind those parties that are involved. *See* Eldon E. Fallon, Jeremy T. Grabill & Robert Pitard Wynne, *Bellwether Trials in Multidistrict Litigation*, 82 TUL. L. REV. 2323, 2337-42 (2008). As a result, O'Brien's and NRC also respectfully suggest that, as soon as practicable, the Court devote at least some attention to the process to be employed to select "bellwether" plaintiffs, such that the selection process itself and plaintiff-specific discovery can be completed in time for the damages phases. In this regard, O'Brien's and NRC believe that dividing the bellwether selections evenly between plaintiffs and defendants makes the most sense, in accordance with the established methodology set forth in Judge Fallon's recent article. *See* Fallon, et al., *supra*, at 2342-65.

With those overarching concepts in mind, O'Brien's and NRC propose the following trial structure:

- <u>Phase I – Casualty & Well Control Liability (to begin February 27, 2012)</u>: Phase I should address (i) the claims of certain Transocean entities seeking exoneration or limitation of liability arising from the marine casualty involving the *Deepwater Horizon* (*e.g.*, explosion, fire, and sinking of the rig),[1] (ii) the responsibility and allocation of fault, if any, of the defendants for the claims asserted by the Bundle A

[1] As the Court is aware, certain "emergency responders" have filed limitation of liability actions in response to the class action complaint that was filed in *Robin v. Seacor Marine LLC, et al.*, No. 2:10-1986. *See* Rec. Doc. 1914 (denying *Robin* plaintiffs' motion for use of short-form joinder in the emergency responder limitation actions). To the extent that any claims are filed against the emergency responders in those separate limitation actions by the April 20, 2011 monition date, and to the extent any such claims are not subsequently dismissed under Rule 12(b)(6), it may also make sense to include the emergency responders' claims seeking exoneration or limitation of liability in Phase I of the February 27, 2012 trial, though separate discovery cut-off dates may need to be established for such claims.

and Bundle B1 plaintiffs (which would include the initiation of an uncontrolled flow of oil as of April 22, 2010 and the efficacy of efforts to control the well following the casualty), and (iv) whether any defendant's conduct as regards their contribution, if any, to any of the above issues amounted to gross negligence, willful misconduct, or reckless disregard such that punitive damages would be appropriate.

- Phase II – Damages for Casualty & Well Control (to begin one week after the conclusion of Phase I): Phase II should determine the damages, if any, for the claims of various bellwether plaintiffs in Pleading Bundles A and B1 (*e.g.*, Bundle A personal injury plaintiffs, Bundle A wrongful death plaintiffs, Bundle B1 property damage plaintiffs, and Bundle B1 economic loss plaintiffs). O'Brien's and NRC suggest that the claims of at least two bellwether plaintiffs from each of these categories should be either jointly tried in Phase II or tried separately in sub-phases of Phase II.[2]

- Phase III – Clean Up Liability (to begin November 2012): Phase III should address the responsibility and allocation of fault, if any, of the defendants for the clean-up related claims asserted by the Bundle B3 plaintiffs.

- Phase IV – Damages for Clean Up (to begin one week after the conclusion of Phase III): Phase IV should determine the damages, if any, for the claims of various bellwether plaintiffs in Pleading Bundle B3 (*e.g.*, Bundle B3 personal injury plaintiffs and Bundle B3 medical monitoring plaintiffs).[3]

[2] Pursuant to this approach, the bellwether plaintiffs from Bundles A and B1 should be present during Phase I because it is their claims that are being tried. Similarly, because this would be one trial with multiple phases, *all* defendants should have the right to attend *all* phases to protect their rights, even if some defendants' participation is limited in certain phases.

[3] O'Brien's and NRC suggest that the bellwether plaintiffs for Phase IV should be selected in the same

O'Brien's and NRC have proposed including both "casualty" and "well control" issues in Phase I because those issues appear to be so closely related to one another and to allow both Bundle A and Bundle B1 bellwether plaintiffs to be part of the initial phases. Ultimately, it seems as though a key central issue in this litigation is why, and how much, oil reached the Gulf shore, such that segregating "casualty" and "well control" issues would be largely an academic division (recognizing that "well control" issues are likely irrelevant for Bundle A plaintiffs). For example, the defendants facing "well control" allegations may point back to the "casualty" defendants as the true cause of the oil spill, while "casualty" defendants may suggest that any alleged damages could have been minimized and/or prevented by effective "well control" efforts.

O'Brien's and NRC recognize, however, that the realities of discovery may not allow for "well control" issues to be part of the initial phase in February 2012. Accordingly, an alternative would be to limit Phase I to the casualty (*e.g.*, explosion, fire, and sinking of the rig) and only resolve (i) the claims of certain Transocean entities seeking exoneration or limitation of liability arising from the marine casualty involving the *Deepwater Horizon* (*e.g.*, explosion, fire, and sinking of the rig), and (ii) the responsibility and allocation of fault, if any, of the defendants for the claims asserted by the Bundle A plaintiffs. Subsequent phases could then address well control issues, fault and damages for Bundle B1 bellwether plaintiffs, clean-up issues, and finally fault and damages for Bundle B3 bellwether plaintiffs.

**DISCOVERY RELATED TO CLEAN-UP ISSUES MUST PROCEED**

An immediate concern for O'Brien's and NRC is that, regardless of how the February 27, 2012 trial is ultimately structured, discovery on issues related to the clean-up operations (*e.g.*, Pleading Bundle B3 claims) proceed simultaneously with all other discovery, subject to a

---

manner as those for Phase II.

separate fact-discovery cut-off date, which we propose be set at May 31, 2012. As Judge Fallon recently explained in describing his experiences with "bellwether trials" in multidistrict litigation, "the MDL process has traditionally been limited to establishing a centralized forum where related cases are consolidated so that coordinated pretrial discovery can proceed in an efficient and effective manner." Fallon, et al., *supra*, at 2323. Therefore, although innovative courts (particularly in this District) have successfully expanded upon the "traditional" function of multidistrict litigation, to do so at the expense of delaying pretrial discovery in this case would be an unfortunate and perverse result. Indeed, this MDL Court's primary responsibility, imposed by 28 U.S.C. § 1407, is to ensure the "just and efficient conduct" of "pretrial proceedings." But, as described above, there is no reason why that statutory responsibility cannot be faithfully executed in tandem with the Court's desire to begin trial in February 2012. Accordingly, O'Brien's and NRC respectfully request that the Court establish a deadline of May 31, 2012 for completion of fact discovery regarding the clean-up operations and related issues (such that those issues can be tried in Phase III in November 2012, as set forth above).

Dated: April 13, 2011.

Respectfully submitted,

/s/ Michael J. Lyle

Michael J. Lyle (DC Bar #475078, IL Bar #6199227)
Eric C. Lyttle (DC Bar #482856)
WEIL, GOTSHAL & MANGES LLP
1300 Eye Street, NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 682-7157
Facsimile: (202) 857-0940

Theodore E. Tsekerides (NY Bar #2609642)
Jeremy T. Grabill (NY Bar #4501755)
Sylvia E. Simson (NY Bar #4803342)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8218
Facsimile: (212) 310-8007

*Attorneys for O'Brien's Response Management, Inc. and National Response Corporation*

Patrick E. O'Keefe
Philip S. Brooks, Jr.
MONTGOMERY BARNETT
3300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-3300
Telephone: (504) 585-3200
Facsimile: (504) 585-7688

*Attorneys for O'Brien's Response Management, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Memorandum Concerning February 27, 2012 Trial has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 13th day of April, 2011.

/s/ Michael J. Lyle
Michael J. Lyle