UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | | |
|---|---|---|---|
| In Re: | Oil Spill by the Oil Rig | : | MDL NO. 2179 |
| | "Deepwater Horizon" in the | : | |
| | Gulf of Mexico, on | : | SECTION: J |
| | April 20, 2010 | : | |
| | | : | JUDGE BARBIER |
| This Document Relates to All Cases | | : | MAG. JUDGE SHUSHAN |

. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .

BRIEF OF UNITED STATES REGARDING THE PLAN
FOR THE FEBRUARY 2012 LIABILITY TRIAL

This brief states the position of the United States related to the "Trial Plan" for the trial of "Liability, Limitation, Exoneration and Fault Allocation" set to commence on February 27, 2012 (hereinafter, the "Liability Trial"), pursuant to this Court's Order of April 1, 2011 [Doc. 1832].

As a threshold issue, the United States believes that the Liability Trial (and possibly subsequent trials) should be defined by, and focused on, resolution of factual issues, based on bundles of related evidence, rather than on the particular claims that might be brought by or against particular parties. Such an approach will advance the goal of judicial economy and will result in resolution of critical issues, especially allocation of fault among the parties whose actions or inactions may have caused the Deepwater Horizon tragedy, at the earliest possible time. In contrast, an approach that seeks to litigate all elements of specific claims that parties might have brought or choose to bring (including, for example, issues related to damages incurred as a result of the spill) may be unwieldy and result in delay of the schedule the Court has envisioned. For that reason, the United States proposes the following:

First, the Liability Trial should be conducted in at least two "Trial Segments," generally described below. These Trial Segments are posited solely as a pragmatic way to move in

evidence and are set out by evidence issues; they are not suggested as a means of organizing legal rulings or claims to be determined.

> **Segment 1:** **Blowout, Fire & Explosion.  Evidence relates to:**
>
> • Acts or omissions of the various defendants related to the operations of the Deepwater Horizon or Macondo well;
>
> • Drilling, safety, and other associated experts;
>
> • Who was in charge of the operations, who operated which equipment, and who acted with negligence, gross negligence, or willful misconduct;
>
> • Violations of safety and operating regulations;
>
> • Segment 1 issues stop with the sinking of the *Deepwater Horizon* on April 22.
>
> **Segment 2:** **Stopping and Measuring the Flow out of the Well.  Evidence relates to:**
>
> • The steps that were taken to stop the oil flowing after April 20, 2010, until the well was capped on July 15, 2010;
>
> • Amount of oil discharged from the well until it was capped;
>
> • Other evidence of other response actions (surface booming, in-situ burning, dispersant applications, etc.) is not part of this Segment.[1]

Second, the trial of these two Segments should be separated by an appropriate interim period, and the discovery and expert report deadlines for Segment 2 issues should be extended well past the current deadline for the Segment 1 issues.  Moreover, the United States is likely to be subject to discovery on both of these Segments, and thus may need assistance from

---

[1] Subsequent Segments could include private party damages, other response action efforts, dispersants, or civil penalties, but the United States takes no position at this time on those matters.  The United States also does not take a position in this brief on the July 16, 2012 trial of damages for selected plaintiffs. [Doc. 1506-1 at page 4 of 4].

Magistrate Shushan to limit discovery or otherwise address ways to control burdens and costs to meet any deadlines that the Court imposes for Segment 1 or 2.

Third, the United States intends to appear as a plaintiff at the trial of both of these Segments.

## I.  BACKGROUND

The complaint of the United States as currently filed seeks a declaration of defendants' liability under the Oil Pollution Act ("OPA"), 33 U.S.C. § 2702(a), for both removal costs and damages resulting from the Deepwater Horizon oil spill.[2]  *United States of America v. BP Exploration & Production, Inc., et al.*, No. 2:10-cv-04536 (E.D. La.) ("*U.S. v. BP*").  The complaint also seeks injunctive relief, and an award of civil penalties against each defendant (other than Lloyd's), under the Clean Water Act ("CWA"), 33 U.S.C. § 1321(b)(7), in amounts to be determined at trial.

While the United States could, by right, have waited years to file its complaint, the United States instead filed its complaint on December 15, 2010, because the hundreds of related civil actions filed by others (both private parties and states) that have been consolidated into this Court's Multi-District Litigation ("MDL") were already well along.

On September 13, 2010, the United States filed its "Statement of Interest of the United States Related to Initial Pretrial Conference," [Doc 222].  In that Statement, the United States apprised the Court as follows:

---

[2] At some later date, the United States would use the declaratory judgment to recover specified removal costs or damages, in amounts to be determined at a later date, either at a later date in this case, or in a subsequent civil action.  33 U.S.C. § 2717(f)(2).  The complaint does not necessarily reflect the universe of potential claims or defendants liable to the United States for damages, penalties, or other claims.  *See* Complaint in *U.S. v. BP*, ¶ 92.

> Discovery and motion practice relevant to liability claims of the United States and to private-party claims may overlap substantially. It would be appropriate to coordinate discovery among the various governmental and private parties, to ensure a just, speedy, and thorough resolution of liability issues and, where possible, to reduce the possibility of duplication of effort. But, as discussed above, some of the categories of remedy, such as removal costs expended by the Oil Spill Liability Trust Fund and certain damages under OPA [and civil penalties], are available only to governmental entities. Issues concerning these uniquely governmental categories therefore may differ from issues arising from the private-party actions in this MDL.

*Id.* at 3. Thereafter, in light of the Court's deadline for filing of master and amended complaints (inapplicable as regards the United States, but important for other parties), the United States filed a complaint on December 15, 2010.

In keeping with the Statement of Interest, where there is overlap between the evidence that supports (or defeats) the claims of the United States and the evidence that supports (or defeats) the claims of the private plaintiffs in the MDL (represented by the Plaintiffs Steering Committee or "PSC"), the trial should proceed in tandem with an eye towards reducing duplication and cost. But where the evidence relates to the claims of the United States and does *not* substantially overlap with the evidence supporting the claims of the private plaintiffs in the MDL, the matters should be tried separately. A prime example of the latter types of claims would be the Natural Resource Damage claims of the United States, States, and Indian Tribes. Importantly, in all cases, the United States must represent itself. Thus, where there is mixed overlap of factual issues, reasonable accommodations should be made by all parties, to ensure that the United States has an adequate opportunity to represent itself, with its own attorneys, on issues that – as a matter of law or merely *de facto* – will have substantial impact on the claims and interests of the United States.

## II. THE UNITED STATES INTENDS TO PARTICIPATE AS A PLAINTIFF IN ANY TRIAL THAT DIRECTLY RELATES TO THE FACTS UNDERLYING THE CLAIMS OF THE UNITED STATES.

The United States intends to participate as a plaintiff in any trial that raises factual issues, or presents evidence on key elements of claims of the United States.[3] Thus, for example, to the extent that the Liability Trial includes findings of fact related to negligence, gross negligence, willful misconduct, or violations of operating or safety regulations by the defendants, the United States intends to appear as a plaintiff at the trial. Similarly, the United States plans to appear to represent itself at any trial related to the volume of oil discharged from the well to the ocean.

## III. THE LIABILITY TRIAL SHOULD BE CONDUCTED IN TRIAL SEGMENTS.

In light of the foregoing concerns, the United States proposes that the Liability Trial should be conducted in at least two "Trial Segments":  Segment 1 would comprise evidence about facts occurring up to April 22; Segment 2 would comprise evidence about facts occurring during the first 87 days after April 22 with respect to capping the well (source control) and estimating the volume of oil discharged. There should be a hiatus between the two Segments, and the second Segment must be carefully circumscribed to limit the discovery to specific enumerated issues without opening the door to staggering discovery of all response actions and other federal activities associated with the response. As set forth above, the United States will ask the Court to exercise its inherent power to manage and limit discovery to those issues that

---

[3] As of the date of this memorandum, the United States is a Rule 14(c) third-party defendant, and will be participating as a party at the Liability Trial. The Court should expect that the United States may file Motions to Dismiss.   But, the United States expects to appear as plaintiff, even if the motions are successful and the United States is no longer a third-party defendant in the Liability Trial.

5

are *both* factually and legally relevant.[4] A segmentation of this nature falls within the Court's powers under Fed. R. Civ. P. 42, as well as the broad discretion to schedule the MDL. *In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*, 549 F.2d 1006, 1012-16 (5th Cir. 1977).

### A. Segment 1 Should Cover Rig and Drilling Operations, and the Evidence Should Relate Only to Events Prior to April 23, 2010.

Segment 1 is the "Blowout, Fire & Explosion" Segment. The witnesses and exhibits should relate to:

- Acts or omissions of the various defendants related to the operations of the Deepwater Horizon or Macondo well;
- Drilling, safety, and other associated experts;
- Who was in charge of the operations, who operated which equipment, and who acted with negligence, gross negligence, or willful misconduct;
- Violations of safety and operating regulations;
- Segment 1 issues stop with the sinking of the *Deepwater Horizon* on April 22.

Based on the Segment 1 evidence, the determinations that the Court would likely be called upon to decide would include (but not necessarily be limited to), the following, as to each defendant:

- Negligence of any defendants (PSC claims);
- Gross negligence or willful misconduct of any defendants (PSC claims; OPA, CWA);
- The violation of an applicable Federal safety, construction, or operating regulation by, the any responsible party, an agent or employee of the responsible party, or a person acting pursuant to a contractual relationship with the responsible party (PSC claims; OPA, CWA);
- Unseaworthiness of *Deepwater Horizon* (Limitation Act);
- Privity of Transocean (Limitation Act);
- Allocation of fault among defendants (an equitable allocation for contribution claims, rather than any apportionment of causation of environmental harms).

The Defendants should be:

- BP          (PSC & USA)
- MOEX        (PSC & USA)
- Anadarko    (PSC & USA)

---

[4] With respect to relevancy, see, *e.g.*, CWA, 33 U.S.C. 1321(c)(4), (5), and (6).

6

- Transocean (PSC & USA)
- Halliburton (PSC)
- Cameron (PSC)
- Weatherford (PSC)
- MI Swaco (PSC)
- The "responder" defendants should not be parties at the Liability Trial.

Other parties may insist that Segment 1 should include damages for one or more specified personal injury or death plaintiffs. The United States takes no position on this issue.

Prior to April 20, 2010, the United States' involvement with respect to the Macondo well was limited to relatively few agencies charged with direct responsibility for permitting of the well and inspecting and regulating the activities occurring on the Deepwater Horizon. Discovery is likely to be largely focused on the U.S. Department of the Interior's Bureau of Ocean Energy Management, Regulation, and Enforcement. Current rough estimates of the volume of information related to these issues suggest that discovery would include organizing and searching at least a dozen terabytes of information. S*ee* Declaration of Anthony Irish (Exhibit 1). Discovery with respect to these issues will require substantial commitment of resources to identify responsive documents, and to process, and produce information in a timely manner. With appropriate limitations, however, this discovery can likely be handled.

**B.    Segment 2 of the Liability Trial Should Be Held (1) To Examine Post-Explosion Attempts to Cap and Contain the Well ("Source Control"), and (2) To Determine the Volume of Oil Discharged From the Well. Segment 2 Should be Held Sufficiently After Segment 1 to Allow for Discovery and Preparation of Expert Reports.**

Segment 2 should relate to (1) capping the well (source control) and (2) quantifying the volume of oil discharged.

As to capping the well, the private plaintiffs and PSC believe that the trial should relate, *inter alia*, to aggravating effects of negligence, gross negligence, willful misconduct, and

7

reckless behavior of defendants after the April 20 blowout/explosion in failing to cap and contain the well. Thus, the first issue is what steps the defendants took to stop the oil following April 20, 2010, until the well was capped on July 15, 2010. The United States does not advocate for but is willing to acquiesce to a trial on these issues, as long as the topic is limited in scope to solely sub-sea efforts to cap or contain the well. We stress that the main concern will relate to production of documents and other discovery against the government, as discussed below.

The second topic for Segment 2 – the total amount of oil discharged from the well – is relevant for several reasons. For purposes of the CWA civil penalty explained above, civil penalties rise to a maximum amount based on the number of barrels of oil discharged. 33 U.S.C. § 1321(b)(7). The Court will need to establish the amount of oil discharged. The amount of oil released also relates to some other issues not yet before the Court such as the royalties or taxes owed to the United States, and a determination of where the oil went (and thus what harm it caused to the environment). Plaintiffs also hope to prove issues related to the amount of oil released in order to establish punitive damages and *Robins Dry Dock* issues. Whenever this issue is tried, the United States intends to participate, and the determination of the amount could be expert-intensive.[5]

The timing of Segment 2 is a crucial issue. The United States' main concern on the timing of Segment 2 is the enormous burdens that the United States will face in the production of large quantities of documents or witnesses on the two issues outlined for the Segment 2 trial. Accordingly, the United States requests that the Court allow sufficient time for document production, and that the Court not divert the parties from their preparations on Segment 1 by

---

[5] Although, these and other issues could be appropriate for summary judgment or other disposition based on legal arguments such as deference to administrative decision-making.

setting an unrealistic schedule for Segment 2.  Further, the United States will request from Magistrate Shushan circumscribed limits on production, such as search terms, as appropriate.  A related concern is that the parties may also have expert reports, containing highly technical and complex engineering and other scientific issues.  The reports on the Segment 2 issues should be staged well after the extant deadline for expert reports (currently August 2011 for plaintiffs) from CMO # 1 [Doc. 569].  Those deadlines should be considered to apply only to Segment 1 issues.

Segment 2 should not include evidence beyond the point of discharge; such "fate and transport" analyses related to proving harm to natural resources, which are not the subject of either Segment.  Oil removal and other response efforts that took place on the ocean surface and along the shoreline likewise would not be included in Segment 2 of the trial.

### C. Neither Segment Should Broadly Include All Evidence Related to Response Actions, Because Such a Trial Would Place Undue Discovery Burdens on the United States.

The scope of the upcoming trial has unique implications for the United States when compared to the other parties in the litigation. With respect to discovery related to liability for post-April 20, 2010, information, the United States faces unique and daunting challenges. Though several of the defendants had significant involvement in the response activities, the United States is the only party who had numerous separate entities participating in the response. As indicated in Pre-Trial Order 22, the United States' response included participation by the Departments of Agriculture, Commerce, Defense, Energy, Health & Human Services, Homeland Security, Interior, Justice, Labor, State, Transportation, and the U.S. Environmental Protection Agency.  Thus, discovery with respect to post-April 20, 2010 response activities could implicate twelve federal government agencies.  Each of these agencies has its own office structure and

9

information technology infrastructure.  Many of these agencies have distinct sub-components with distinct infrastructure. Thus, expanding the scope of the trial from pre-April 20, 2010 to post-April 22, 2010 issues will expand the United States' discovery obligations from one agency to approximately twelve agencies, and one or two information technology infrastructures to over twenty separate structures, making a trial on such topics infeasible for early 2012.

The volume of information subject to discovery would also increase exponentially were the trial to include issues related to post-April 20, 2010 response activities. The post-spill information was generated in the course of a fast-paced, intensive response and was housed largely on an information technology infrastructure established within weeks of the oil spill so as to meet immediate and urgent needs.  Similarly, hard copy documents were managed in file rooms and document units that needed to be set up within days and involved records generated by literally thousands of individuals.  Despite best efforts at ensuring organization of information and standardized practices, production of information from these records will still require substantial organizational work. Though the United States has commenced and is diligently proceeding to scan, organize, and prepare these records in preparation for discovery, current estimates for the Coast Guard *alone* indicate that the process of putting these records in a condition for searching and production will take months.  Other responding agencies face similar challenges.

Including all post-April 20, 2010, response action issues in the upcoming trial, therefore, would place the United States in serious jeopardy of being unable to respond to discovery in a timely and effective manner.  Despite significant efforts to institute reasonable limits on discovery and to leverage electronic search tools, the United States believes it would take months to be ready to respond generally to the discovery it anticipates will be required to try

issues related to the post-April 20, 2010, response activities.[6]

### D. How the Issues Raised in the Currently-filed Complaint of the United States Fit Into the Segments.

The following summarizes the most significant issues to be resolved for the complaint of the United States as currently filed, and where they fit into the Segments.

#### 1. CWA Civil Penalties.

##### a. Liability: Segment 1.

The CWA establishes strict liability for a civil penalty against "the owner, operator, or person in charge of any vessel . . . or offshore facility from which oil or a hazardous substance is discharged." 33 U.S.C. § 1321(b)(7)(A). The key factual issues here relate to which entities were "operators" "owners," or "persons in charge" of the vessel and/or offshore facility.

##### b. Strict Liability or Gross Negligence or Willful Misconduct: Segment 1.

If the discharge of oil was "the result of gross negligence or willful misconduct of [any person who is the owner, operator, or person in charge of any vessel or offshore facility]," the penalty rises to a maximum of $4,300[7] per barrel of oil discharged. 33 U.S.C. § 1321(b)(7)(D).

##### c. Number of Barrels of oil Discharged: Segment 2.

Civil penalties rise to a maximum amount based on the number of barrels of oil discharged. 33 U.S.C. § 1321(b)(7)(A) and (8). The Court will need to establish the amount of oil discharged.

---

[6] For purposes of this discussion, the United States excludes information related to natural resource damages, which could open up an even more enormous world of potential discovery. *See* discussion below.

[7] The dollar amounts identified in this memorandum are the statutory penalty amounts adjusted for inflation. 31 U.S.C. § 3701; 40 C.F.R. § 19.4.

        **d.**      **Court's Determination of Penalty Amount Based on Factors: Not Yet Scheduled.**

The penalty amounts – $1,100 per barrel, or, in the event of gross negligence, $4,300 per barrel – are statutory maximums; the CWA specifies several penalty factors that the court shall consider in determining the penalty amount, as follows:  the seriousness of the violation or violations; the economic benefit to the violator, if any, resulting from the violation; the degree of culpability involved; any other penalty for the same incident; any history of prior violations; the nature, extent, and degree of success of any efforts of the violator to minimize or mitigate the effects of the discharge; the economic impact of the penalty on the violator, and any other matters as justice may require.  33 U.S.C. § 1321(b)(8).  The Court must take evidence on these factors, and determine an actual award of civil penalties.  As of today, no trial on these factors has been set.

        **2.**      **OPA**

        **a.**      **Liability & Limitation:  Segment 1.**

OPA establishes a federal framework to address oil spill liability and compensation. OPA provides that "each responsible party for a vessel or a facility from which oil is discharged . . . is liable" for removal costs and damages.  33 U.S.C. § 2702(a).  OPA establishes limits on the amount of damages that responsible parties must pay, according to vessel or facility type.  33 U.S.C. § 2704.  However, no damages cap applies "if the incident was proximately caused by (A) gross negligence or willful misconduct of, or (B) the violation of an applicable Federal safety, construction, or operating regulation by, the responsible party, an agent or employee of the responsible party, or a person acting pursuant to a contractual relationship with the responsible party."  33 U.S.C. § 2704(c).  As the Court is aware, BP has waived this limitation;

however, the other defendants have not. These issues should be tried in Segment 1.

### b. OPA Damages for the United States: Not yet Filed or Scheduled.

As to costs and damages, some of the categories of costs and damages under OPA are uniquely governmental. Under OPA, such categories include, *inter alia*: removal costs incurred by the United States, a State, or an Indian tribe, under § 2702(b)(1)(A); costs, damages and/or disbursements made by the National Pollution Funds Center on behalf of the Oil Spill Liability Trust Fund, under 33 U.S.C. §§ 2712(f) and 2715; damages for injury to, destruction of, loss of, or loss of use of, natural resources, under § 2702(b)(2)(A); and damages equal to the net loss of taxes, royalties, rents, fees, or net profit shares due to the injury, destruction, or loss of real property, personal property, or natural resources, under § 2702(b)(2)(D).

Because the statute specifically limits these categories to governmental entities, they are unique to the Federal and State governments and will not arise in the other private-party civil actions consolidated before this Court. Moreover, given the nature of these claims, they may involve complex scientific and economic expert testimony not required for quantification of private-party damages. For example, claims for damages for injury to natural resources under 33 U.S.C. § 2702(b)(2)(A) may be assessed under the OPA damages regulations at 15 C.F.R. Part 990, which provide for a multi-step assessment of injuries and damages, planning of restoration, and public comment.

It appears that no party believes that the OPA damages of the United States are properly part of any of the trials scheduled in 2012. The United States agrees that its damages are not to be scheduled at this time.

## IV. OTHER MATTERS REMAIN TO BE SCHEDULED AT A LATER TIME.

Some time later, the United States will seek to hold a trial on other issues currently at issue in the complaint in *U.S. v. BP*. These include, for example, the CWA penalty factors (such as history of prior violations, the economic benefit, ability to pay) that are not to be tried in either Segment 1 or 2.

Similarly, at a later time the United States will seek a trial on OPA damages for governments such as lost taxes or royalties. Also, there could eventually be trials on natural resources damages (commonly called "NRD") cases after completion of OPA's NRD assessment process, which could take several years to complete. None of these issues is or should be the subject of the Liability Trial, none of these claims is currently filed, and none should be scheduled at this time.

Finally, the United States is conducting a thorough investigation of the causes of the spill and the extent to which companies that performed services involving the Macondo well may have contributed to those causes. Depending upon the fruits of this ongoing investigation, the United States may need to insert additional allegations, additional civil claims for relief, or claims for relief against additional defendants. *See*, Complaint ¶ 92, in *U.S. v. BP*, No. 10-4536. Given the complexity and magnitude of this matter, and given that the phased resolution proposed above focuses on resolution of issues and not of claims, it is not necessary for the Court to set a deadline for asserting additional claims at this time. A deadline that is too early could deprive the United States of making the type of reasoned, educated decision regarding the scope of civil liability in this matter that both the public and the defendants deserve.

In the event that the United States asserts any such additional causes of action or wishes to name additional defendants, the United States respectfully reserves the right to conduct

additional discovery relevant to such claims, and will discuss with the Court and the parties what issues related to those claims should be tried in Segment 1, Segment 2, or in some other proceeding yet to be identified or scheduled.

                    Respectfully submitted,

| | |
|---|---|
| IGNACIA S. MORENO<br>Assistant Attorney General<br>Environment & Natural Resources<br>   Division | MICHAEL F. HERTZ<br>Deputy Assistant Attorney General<br>Civil Division |
| /s/ Steven O'Rourke<br>STEVEN O'ROURKE<br>Senior Attorney<br>Environmental Enforcement Section<br>U.S. Department of Justice<br>P.O. Box 7611<br>Washington, D.C. 20044<br>Telephone: 202-514-2779<br>Facsimile: 202-514-2583<br>E-mail: steve.o'rourke@usdoj.gov | /s/ R. Michael Underhill<br>R. MICHAEL UNDERHILL<br>Attorney in Charge, West Coast Office<br>Torts Branch, Civil Division<br>U.S. Department of Justice<br>7-5395 Federal Bldg., Box 36028<br>450 Golden Gate Avenue<br>San Francisco, CA 94102-3463<br>Telephone: 415-436-6648<br>Facsimile: 415-436-6632<br>E-mail: mike.underhill@usdoj.gov |
| JIM LETTEN<br>United States Attorney<br>SHARON D. SMITH<br>Assistant United States Attorney<br>Eastern District of Louisiana<br>Hale Boggs Federal Building<br>500 Poydras Street, Ste. B-210<br>New Orleans, LA 70130 | |

**CERTIFICATE OF SERVICE**

     I hereby certify that the above and foregoing document has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on April 13, 2011.

                                                        /s/ Steven O'Rourke