UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig | * | MDL No. 2179 |
| "Deepwater Horizon" in the Gulf | * | |
| of Mexico, on April 20, 2010 | * | SECTION "J" |
| | * | |
| This Document Relates to: | * | JUDGE BARBIER |
| *All Cases and Consolidated Actions in* | * | |
| *MDL No. 2179* and *Complaint and Petition* | * | |
| *of Triton Asset Leasing GMBH, et al.*, | * | |
| No. 10-2771 | * | MAGISTRATE NO. 1 |
| | * | MAGISTRATE SHUSHAN |
| *   *   *   *   *   *   *   *   *   *   *   * | | |

MEMORANDUM OF DEFENDANTS ANADARKO PETROLEUM CORPORATION,
ANADARKO E&P COMPANY LP, AND MOEX OFFSHORE 2007
<u>REGARDING STRUCTURE OF THE FEBRUARY 27, 2012 TRIAL</u>

Anadarko Petroleum Corporation, Anadarko E&P Company LP (together "Anadarko"), and MOEX Offshore 2007 LLC ("MOEX Offshore") (collectively the "Non-Operating Defendants") respectfully submit that this Court should adopt a trial structure in the Limitations Action that provides for separate liability determination and fault allocation phases or segments of the trial, each of which will be held after the passage of adequate time allowing for completion of fact and expert discovery and trial preparation regarding the issues to be decided in that phase or segment.  As reflected in the Trial Structure Plan proposed by the Non-Operating Defendants and BP (Exhibit 1), the first phase or segment of the trial, which will begin on February 27, 2012, will determine liability and fault allocation for (1) wrongful death and personal injury claims arising from the explosion and fire aboard the *Deepwater Horizon* on April 20, 2010; (2) claims for damage to the *Deepwater Horizon* and its appurtenances as a result of the fire, explosion, and sinking of the rig; and (3) liability and fault allocation for the <u>initiation</u> of an uncontrolled release of oil (*i.e.*, the release of oil as a result of the blowout on April 20, 2010 up

through the subsequent sinking of the rig on April 22, 2010, as distinguished from the inability to cap and/or contain the release at a date earlier than July 15, 2010).  The Trial Structure Plan contained in Exhibit 1 will best provide for the orderly resolution of the cases before the Court and will ensure ample flexibility to the Court in determining how to allocate fault for the events related to the blowout on April 20, 2010, and the loss of the *Deepwater Horizon* and release of oil from the riser on April 22, 2010, including separate allocations of fault as warranted for the blowout and explosion, the initiation of an uncontrolled release of oil, and the fire aboard and sinking of the rig (for brevity only, the "Initial Incident").

The Non-Operating Defendants also submit that the Court should not enter the overreaching and unworkable Case Management Order they understand will be proposed by the Plaintiffs and Transocean Holdings LLC, Transocean Offshore Deepwater Drilling Inc., and Transocean Deepwater Inc. (collectively the "Transocean Entities") as a guide for the February 2012 Phase I trial (hereafter "Plaintiffs' Trial Plan").   In particular, the Non-Operating Defendants oppose the inclusion of "cap and containment" issues, including efforts to control the flow of oil via junk shot, top hat, relief wells, and the like; total volume of oil released; flow path of oil; and fingerprint of oil in the first phase of the trial beginning in February 2012.  The Plaintiffs' proposed structure derogates from this Court's Pretrial Order No. 11 and Pretrial Order No. 32 and, if entered, would not only unduly complicate the February 2012 trial by introducing issues unrelated to liability and fault for the Initial Incident, but would also significantly prejudice the Non-Operating Defendants by depriving them of a fair opportunity to conduct fact and expert discovery into those issues and prepare their defenses.

I.    **Including Cap and Containment Issues in the February 2012 Trial Would Commingle Issues That Need to Be Adjudicated in Separate Proceedings, Misuse Judicial Resources, and Prejudice the Non-Operating Defendants.**

On October 19, 2010, this Court entered Pretrial Order No. 11, which adopted the first Case Management Order governing this matter.  To efficiently manage the discovery process, the Case Management Order addressed only Phase I discovery.  Such discovery was intended to prepare the parties for the February 2012 "trial of liability, limitation, exoneration and fault allocation . . . ."  Pretrial Order No. 11 at 12, Docket No. 569.

The Case Management Order specifically provides that Phase I discovery "will be focused on the activities and events leading up to and including April 20, 2010 Macondo well incident and resulting explosion, fire and loss of the rig."  *Id.* at 8–9.  In accordance with this Court's direction, thus far the Non-Operating Defendants and all other parties to the litigation have focused their discovery on "the activities and events leading up to and including April 20, 2010" and the "resulting explosion, fire and loss of the rig."  *Id.*  While some parties have recently initiated limited discovery on issues related to efforts to cap the Macondo well, almost no documents have been produced, and no depositions have been scheduled relating to those issues.

There are multitudinous issues relating to the activities and events leading up to and including the April 20, 2010 blowout and the April 22, 2010 sinking of the rig that have consumed the parties' discovery to date.  As a consequence, the parties have just begun to discuss with Judge Shushan commencement of discovery on issues broadly described as "Source Control."  Source Control includes efforts to cap the Macondo Well (*e.g.*, junk shot, top hat, etc.) or kill the Macondo Well via the relief well efforts, but does <u>not</u> include issues relating to the efforts of Vessels of Opportunity ("VoOs"), booming, use of dispersants, volume of oil, flow

3

path of oil, or fingerprint of oil.  The parties are scheduled to circulate their priority deponent lists for Source Control issues on April 15, 2011.  It is anticipated that those depositions will be the subject of scheduling efforts with Judge Shushan over the next several weeks.  Given that depositions pertaining to the events leading up to the Deepwater Horizon explosion, fire, blowout, and sinking are <u>still</u> in the process of being scheduled; that the deposition calendar through June 2011 is already extremely heavy; and that many additional depositions relating to liability, limitation, exoneration, and fault allocation remain to be scheduled, it appears highly unlikely that many, if any, Source Control depositions will be—or can be—scheduled before July 31, 2011.  Moreover, there is presently no plan for scheduling depositions relating to the volume of oil released, the flow path of oil, or the fingerprint of the oil that was allegedly found on beaches and other property.

Under the current governing schedule, fact depositions are to conclude on July 31, 2011. Thereafter, on August 15 and October 5, 2011, pursuant to a schedule that has already been revised and expedited once before, the Limitations case parties must serve their expert reports, so that expert depositions may begin on October 31, 2011, which is also a revised and expedited date.  All expert depositions are required to be finished within 45 days, by December 16, 2011, even though there are likely to be 25 to 50 multiple-day expert witness depositions.  As written discovery related to the equally highly technical, complex, and multi-faceted Source Control issues is just beginning, it is not possible for the parties to adequately conduct fact and expert discovery between now and February 27, 2012 into Source Control, let alone into issues like total volume of oil released, flow path, and fingerprint.

Expanding the February 2012 trial to include issues arising after April 22, 2010 would deprive the Non-Operating Defendants of a meaningful opportunity to defend against the claims

based on those issues and also would complicate the February 2012 trial exponentially. For those claimants asserting wrongful death and personal injury on April, 20, 2010, and property damage stemming from the fire, explosion, and sinking of the rig on April 22, 2010, the Court faces the already complex—and time-consuming—issues of who is liable, and to what extent (*i.e.*, negligence, gross negligence, etc.) for the blowout, explosion, fire, uncontrolled release of oil, and sinking of the rig. The Non-Operating Defendants understand the proposed Trial Structure Plan contained in Exhibit 1 as providing ample flexibility to the Court to conduct separate allocations of fault for the events leading to the blowout on April 20, 2010, and those leading to the sinking of the *Deepwater Horizon* on April 22, 2010, if the evidence warrants such an approach, or even for additional allocations of fault if the evidence suggests that other events during that time period warrant a separate fault analysis. Indeed, the Non-Operating Defendants believe separate allocations of fault for the events leading to the blowout on April 20, 2010, and the sinking of the rig on April 22, 2010, may be warranted.[1]

Once these critical questions related to the blowout on April 20, 2010, and the loss of the *Deepwater Horizon* on April 22, 2010, have been addressed, the parties will have the guidance that bellwether or test cases are intended to provide for purposes of deciding their future course. *See generally* Eldon E. Fallon, et al., *Bellwether Trials in Multidistrict Litigation*, 82 TUL. L. REV. 2323 (2008). After the initial phase or segment of trial has been completed, the next phases or segments can reasonably include issues like the quality and speed of BP's and the federal government's spill response, the options for containing the flow, the volume of oil released, the decision-making process for the events subsequent to April 22, 2010, complex, scientific modeling related to the fate and transport of released hydrocarbons, the impact of dispersants,

---

[1] To the extent BP argues that the proposed Trial Structure Plan permits only one allocation of fault based on the sinking of the *Deepwater Horizon* on April 22, 2010, the Non-Operating Defendants disagree with that interpretation.

other possible sources of oil and contaminants (natural and anthropogenic), and the locations where hydrocarbons came ashore or otherwise caused injuries.

While the events prior to and including April 22, 2010 are apt for simultaneous consideration, the events prior to and following April 22, 2010 should not be considered together.  The Court will have an enormous task in resolving liability for the events leading up to the blowout on April 20, 2010, and the loss of the *Deepwater Horizon* on April 22, 2010, and the parties have an equally enormous task of garnering and sifting through the huge amounts of information pertaining to those issues and of organizing and adducing that evidence at trial in a manner that is both comprehensive and efficient.  These largely unprecedented tasks already facing the Court and the parties should not be further complicated between now and the February 2012 trial with the equally complex and daunting post-incident events.  Those issues warrant full exploration and consideration in their own right and at the appropriate time.  The insertion of the cap and containment issues into the February 2012 trial of the casualty issues would impair the fair and accurate presentation, consideration, and resolution of both groups of issues and thereby imperil the fact-finding process and unduly prejudice the parties.

Furthermore, if this Court were to include issues related to the events subsequent to April 22, 2010 in the February 2012 trial, the trial would, of necessity, include the Dispersant Defendants.  If the Court is to consider issues related to the volume, flow path, and fingerprint of oil released, the Court must also consider evidence of the effect and utility of the application of dispersants to the flow path and fingerprint.  The addition of the Dispersant Defendants to the February 2012 trial would swell the proceeding past its bursting point.[2]

---

[2] Moreover, to the extent that the flow path and ultimate spread of oil resulting from the incident is addressed, issues concerning other possible sources of oil, both natural and anthropogenic, are also necessarily implicated.

Thus, the Non-Operating Defendants respectfully submit that distinct, focused segments or phases of trial would most efficiently resolve this matter, with the first segment or phase focusing on the events leading up to the blowout and subsequent loss of the *Deepwater Horizon* and the cause of the injuries associated with those events.  The cap and containment issues would be best resolved in a separate proceeding, subsequent to the February 2012 trial.

II.    **Given the Vast Amount of Impending Discovery as to the Events Leading Up to and Including April 22, 2010, This Court Should Not Intensify the Discovery Burden for the First Phase of the February 2012 Trial.**

Neither the Non-Operating Defendants nor the other parties to the litigation have really begun to delve into the issues related to cap and containment.  As this Court well knows, even with the temporal focus on events leading up to and including April 22, 2010, the sheer volume of necessary discovery to date and over the next four months is extraordinary.

The currently scheduled depositions continue to focus on the events leading up to and including April 22, 2010.  As of April 11, 2011, 113 depositions, the majority of which last two days each, have been taken or are scheduled to be taken through July 31, 2011, and Judge Shushan and the parties continue to schedule depositions at each weekly Working Group (discovery) Conference.

The Non-Operating Defendants thus respectfully submit that, given the unprecedented demands of the current deposition schedule, this Court should not expand the February 2012 trial to include cap and containment issues.  The cap and containment issues are highly complex and will require a great deal of focused attention.  While this Court is correct to shepherd these proceedings to an expedient resolution, "expedition should not be pursued at the cost of the quality of justice."  *United States v. Blount*, 479 F.2d 650, 652 (6th Cir. 1973); *see also Fuentes v. Shevin*, 407 U.S. 67, 90 n.22 (1972) (stating that "'the Constitution recognizes higher values

than speed and efficiency.  Indeed, one might fairly say of the Bill of Rights in general, and the Due Process Clause in particular, that they were designed to protect the fragile values of a vulnerable citizenry from the overbearing concern for efficiency and efficacy that may characterize praiseworthy government officials no less, and perhaps more, than mediocre ones'") (quoting *Stanley v. Illinois*, 405 U.S. 645, 656 (1972)); *In re Interest of E.A.R.*, 201 S.W.3d 813, 815 (Tex. App. 2006) (stating that "speed at the expense of due process warrants examination"). As the Northern District of Mississippi recently recognized, "the sudden rush to trial speaks of too much concern for speed and not enough for justice and due process."  *Salts v. Epps*, 696 F. Supp. 2d 639, 654 (N.D. Miss. 2010).

A just resolution of this matter requires that the cap and containment issues be thoroughly explored.  The Non-Operating Defendants respectfully submit that the parties simply will not be able to adequately explore these additional concerns prior to the February 2012 trial.

### CONCLUSION

For the foregoing reasons, the Non-Operating Defendants respectfully submit that this Court should adopt the proposed structure for the February 2012 trial, advanced here as Exhibit 1, and should not enter the Trial Plan proposed by the Plaintiffs and Transocean Entities as a guide for the February 2012 Phase I trial.

Respectfully submitted,

DATED: April 13, 2011                    BINGHAM McCUTCHEN, LLP


/s/ *Ky E. Kirby*_____
Ky E. Kirby
ky.kirby@bingham.com
David B. Salmons
david.salmons@bingham.com
Michael B. Wigmore
michael.wigmore@bingham.com

Warren Anthony Fitch
tony.fitch@bingham.com
Randall M. Levine
randall.levine@bingham.com
2020 K Street, NW
Washington, DC 20006-1806
Telephone (202) 373-6000
Facsimile (202) 373-6001

James J. Dragna
jim.dragna@bingham.com
Bingham McCutchen LLP
355 South Grand Avenue
Suite 4400
Los Angeles, California 90071-3106
Telephone (213) 680-6436
Facsimile (213) 680-8636

KUCHLER POLK SCHELL
WEINER & RICHESON, LLC

Deborah D. Kuchler, T.A. (La. Bar No. 17013)
dkuchler@kuchlerpolk.com
Janika Polk (La. Bar No. 27608)
jpolk@kuchlerpolk.com
Robert Guidry (La. Bar No. 28064)
rguidry@kuchlerpolk.com
1615 Poydras Street, Suite 1300
New Orleans, LA  70112
Tel:  (504) 592-0691
Fax:  (504) 592-0696

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that, pursuant to Pre-trial Order No. 12, I have caused the foregoing to be served on all counsel via the Lexis Nexis File & Serve system, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, who will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on April 13, 2011.


_____/s/ *Ky E. Kirby*_____
Ky E. Kirby