UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **In re: Oil Spill by the Oil Rig** | * | **MDL No. 2179** |
| **"Deepwater Horizon" in the Gulf** | * | |
| **of Mexico, on April 20, 2010** | * | **SECTION "J"** |
| | * | **JUDGE BARBIER** |
| **This Document Relates to:** | * | |
| *All cases in Pleading Bundles B1 and B3*; | * | |
| 10-2771; 10-3815; 10-1540; 10-1502 | * | **MAGISTRATE NO. 1** |
| | * | **MAGISTRATE SHUSHAN** |
| * * * * * * * * * * * * | | |

**MEMORANDUM IN SUPPORT OF JOINT MOTION OF DEFENDANTS ANADARKO PETROLEUM CORPORATION, ANADARKO E&P COMPANY LP, AND MOEX OFFSHORE 2007 LLC TO COMPEL RESPONSE TO DISCOVERY REQUESTS SERVED UPON BP EXPLORATION & PRODUCTION, INC., BP AMERICA, INC., <u>BP AMERICA PRODUCTION COMPANY, AND BP PLC</u>**

### I.   INTRODUCTION

Defendants Anadarko Petroleum Corporation, Anadarko E&P Company LP (together "Anadarko"), and MOEX Offshore 2007 LLC ("MOEX Offshore") (together the "Non-Operating Defendants") respectfully submit this memorandum in support of their joint motion pursuant to Fed. R. Civ. P. 37 for an order compelling BP Exploration & Production, Inc. ("BP Exploration"), BP America Inc., BP American Production Company, and BP p.l.c. (together "BP") to produce documents responsive to Anadarko's and MOEX Offshore's Requests for Production and to respond to Anadarko's and MOEX Offshore's Interrogatories and Requests for Admissions served in connection with this multi-district litigation.  *See* Appendix, Exhibit A.

Notwithstanding its earlier compliance with discovery requests and its own efforts to obtain discovery related to the Non-Operating Defendants, BP has now refused to comply with pending discovery requests from the Non-Operating Defendants.  The sole ground for BP's refusal is its assertion that the discovery somehow violates the dispute resolution provisions of the Macondo Prospect Offshore Deepwater Operating Agreement ("OA") between BP

A/74144441.10

Exploration and the Non-Operating Defendants.[1] But as shown below: (1) the plaintiffs' claims fall far outside the scope of the dispute resolution provisions of the OA; (2) there is not now and may never be an arbitration proceeding between BP and the Non-Operating Defendants; and (3) the evidence sought is directly relevant to the Non-Operating Defendants' defense against plaintiffs' claims and is discoverable regardless of whether any of the requests overlap with issues that may or may not be arbitrated in the future. For these and other reasons discussed below, BP's arguments are meritless, and the Court should compel BP to meet its discovery obligations and promptly respond to the Non-Operating Defendants' discovery requests.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   The Non-Operating Defendants' Need for Discovery

Like other defendants in this action, the Non-Operating Defendants are defending against approximately 40,000 claims brought by various plaintiffs. The claims are based on the alleged role of the Non-Operating Defendants as parties to the OA with BP Exploration concerning the drilling of the Macondo Well in the Gulf of Mexico. As the "Operating Party" under the OA, BP Exploration was charged with the "exclusive right and duty" to conduct all exploration, drilling, and associated activities at the Macondo Prospect. Appendix, Exhibit B, at Article 5.1.

In the scores of claims that the various plaintiffs have asserted against the Non-Operating Defendants, plaintiffs allege essentially that, despite the lack of any operational control on their part, the Non-Operating Defendants bear responsibility for the April 20, 2010 blowout that occurred on the *Deepwater Horizon* (the "Blowout"), the resulting oil spill, and the ensuing containment and remediation efforts. To defend against these claims and prepare for the February 2012 trial, the Non-Operating Defendants—like every other defendant—must obtain discovery concerning the events leading up to and causing the Blowout, the containment efforts, and the relative fault, if any, on the part of the other defendants that may have resulted in the plaintiffs' alleged injuries. Because BP Exploration, as the Operator in control of the *Deepwater*

---

[1] Relevant portions of the OA are attached as Exhibit B.

*Horizon's* drilling efforts, is the largest single repository of evidence concerning how the Blowout occurred, the discovery requests served by the Non-Operating Defendants necessarily have included requests to the BP parties for evidence in their exclusive custody.

### B.     BP's Actions in Discovery

BP has implicitly conceded by its own discovery program that discovery by and between the parties to the OA is relevant to defending against the plaintiffs' claims.  BP responded to discovery requests served on it by the Non-Operating Defendants as recently as February 22, 2011, serving responses and objections to the Non-Operating Defendants' Interrogatories and Requests for Production of Documents.  Appendix, Exhibit C.  Further, BP has not raised any objection when the Non-Operating Defendants participated in the questioning of BP witnesses who have been deposed in the case, including witnesses such as Mark Bly, BP's Executive Vice President, Safety & Operational Risk; David Sims, BP's Wells Operations Manager for the Gulf of Mexico; Ronald Sepulvado, former BP Well Site Leader for the Deepwater Horizon; John LeBleu, a BP Fluids Specialist; and Shane Albers, a BP Subsea Engineer, to name just a few.

In addition, BP has served its own discovery requests seeking evidence about the alleged conduct of the Non-Operating Defendants in connection with the Blowout.  For example, the BP Parties' List of Potential Priority Deponents distributed on or about February 16, 2011, included six employees or representatives of the Non-Operating Defendants or their affiliates:  (1) Darrell Hollek, Anadarko Vice President, Operations; (2) Paul Chandler, Anadarko's Project Geological Advisor; (3) Nick Huch, Anadarko's Land/Drilling Engineer; (4) Robert Quitzau, Anadarko Contract Drilling Engineer; (5) Shinjiro Naito, Senior Manager, Geologist/Unit General Manager, Mitsui Oil Exploration Co., Ltd. ("MOECO"); and (6) Kyoko Yamamoto, an administrative assistant, MOECO.  Appendix, Exhibit D, at 14, 17.

BP also has served discovery requests on other parties seeking evidence about the Non-Operating Defendants.  For example, BP's Second Request for Production of Documents to Halliburton included the following document requests:

3

>42. Please produce all documents discussing, reflecting or relating to communications between Halliburton and Anadarko discussing, reflecting or relating to the Macondo well.
>
>43. Please produce all documents discussing, reflecting or relating to communications between Halliburton and Mitsui Offshore Exploration or MOEX discussing, reflecting or relating to the Macondo well.

Appendix, Exhibit E.  *See also* Appendix, Exhibit F, The BP Parties' First Request For Production Of Documents To The Transocean Parties (March 11, 2011) (seeking "All documents relating to the Transocean Command Center initially set up in response to the Deepwater Horizon incident, including but not limited to documents relating to communications between the Transocean Command Center and the United States Coast Guard, the BP Command Center, or any other third party") (emphasis added).

### C. BP's Refusal to Comply with the Non-Operating Defendants' Discovery Requests

Despite pursuing its own discovery against the Non-Operating Defendants, and despite the undisputed possession by BP of evidence that is crucial to the ability of the Non-Operating Defendants to defend against the plaintiffs' claims, BP has abruptly changed course over the past three weeks. On March 24, 2011, BP asked that the meet and confer conference requested by the Non-Operating Defendants to discuss outstanding discovery issues be held no earlier than the week of April 4, 2011. Appendix, Exhibit G (March 24, 2011 email from Timothy A. Duffy). BP subsequently contended that the discovery sought by the Non-Operating Defendants was impermissible in light of the arbitration provisions of the OA.

Notably, BP has not claimed that the discovery served by the Non-Operating Defendants sought evidence that is irrelevant or otherwise objectionable under the Federal Rules of Civil Procedure. Instead, BP sweepingly asserted that the arbitration provisions effectively block all discovery that the Non-Operating Defendants had sought or might seek from BP. Appendix, Exhibit G (April 4, 2011 email from R. Chris Heck).[2]

---

[2] BP re-asserted this position at the meet and confer held on April 5, 2011.

Thus, BP seeks to prohibit the Non-Operating Defendants from taking *any* discovery from BP about responsibility for the Blowout—<u>no matter how relevant and indispensable such evidence is to the defenses raised by the Non-Operating Defendants to the plaintiffs' claims</u>.  BP has made this extraordinary claim purportedly based on arbitration provisions in the OA even though:  (1) the agreement to arbitrate expressly is limited to claims "between" BP Exploration and the Non-Operating Defendants, and thus does not apply to the 40,000 claims brought by plaintiffs against the Non-Operating Defendants; (2) there is <u>no pending arbitration proceeding</u> between the parties to the OA; (3) even if an arbitration proceeding were pending, BP would have no right to prevent the Non-Operating Defendants from taking discovery directly relevant to their defenses in these proceedings against third parties simply because the same evidence might also be admissible in an arbitration between the parties to the OA; and (4) in these very proceedings in which BP seeks to preclude the Non-Operating Defendants from pursuing relevant discovery from BP, BP itself has pursued and continues to pursue discovery from and related to the Non-Operating Defendants notwithstanding the OA.

### III.   ARGUMENT

    **A.**   **Separate and Apart from Any Dispute Under the OA, Anadarko and MOEX Offshore Are Entitled to Discovery on Issues Essential to Their Defense in this MDL Proceeding.**

Under Rule 26 of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).  A party may "move for an order compelling disclosure or discovery" for disclosures required by Rule 26(a) or in response to requests propounded under Rules 30, 31, 33 or 34.  Fed. R. Civ. P. 37(a)(1), (3)(A)-(B).

BP, as the party opposing discovery, bears the burden of "show[ing] specifically how . . . each [request] is <u>not</u> relevant or how each [request] is overly broad, burdensome or oppressive." *McLeod, Alexander, Powel and Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990) (quoting *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982) (emphasis added)); *see also Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005) ("As the party resisting discovery, the burden is on Plaintiffs to clarify and explain their objections and to provide support for those objections") (citation omitted).

The discovery requests that Anadarko and MOEX Offshore recently served upon the BP Defendants are directly relevant to the central issues in this case: what happened on the Deepwater Horizon at the Macondo Prospect site, which parties were responsible for the Blowout, and the degree and nature of each defendant's fault. This discovery is essential to contesting the claims asserted in the MDL against the Non-Operating Defendants. For example, the plaintiffs in the Pleading Bundle B1 First Amended Master Complaint, Doc. No. 1128, allege that:

- Anadarko and MOEX Offshore "were to receive significant information from BP regarding [health, safety and environment ("HSE")] issues and had the right to demand further information, as well as to call for meetings on those subjects and conduct their own inspections of the Deepwater Horizon vessel." *Id.* ¶ 282;

- Anadarko and MOEX Offshore were "on notice of the following relevant provisions of that well plan: (a) location; (b) the anticipated time necessary to conclude the operation; (c) total depth and target zones; (d) the proposed drilling and completion plans, including the casing program and directional details; (e) details of all coring, logging, and other evaluation operations conducted; (f) information about the drilling rig to be used." *Id.* ¶ 283;

- Anadarko and MOEX Offshore "had access to Halliburton/Sperry Sun INSITE real time feed data that was transmitted from the Deepwater Horizon on April 20, 2010[,] they knew or should have known of the presence of hydrocarbons in the well on the evening of April 20, 2010, and they owed a duty to Plaintiffs to warn of the impending disaster in sufficient time to avert it." *Id.* ¶ 573;

- Anadarko and MOEX Offshore "were not . . . passive and unknowing investors" but in fact were "on actual or constructive notice of the potentially disastrous conditions at the well site;" and the "[f]ailure to exercise this role given the known history of specific problems at the wellsite was negligence." *Id.* ¶ 574; and

- Anadarko and MOEX Offshore's negligence renders them "jointly, severally, and solidarily liable to Plaintiffs." *Id.* ¶ 578.[3]

Likewise, Anadarko and MOEX's Answers to the Complaint filed by the United States of America include affirmative defenses that the violations or damages were "proximately caused by the acts or omissions of [other] persons," that Anadarko and MOEX Offshore are "not jointly and severally liable for the damages alleged in the Complaint based on divisibility of the harms alleged," and that the "damages alleged by Plaintiff were the result of the comparative fault or negligence of the Plaintiff or of other parties[.]" *See United States of America v. BP Exploration & Production, Inc., et al.*, No. 10-04536, Doc No. 1859, at 14–15 (Answer of MOEX Offshore) and Doc No. 1860, at 14–15 (Answer of Anadarko Petroleum Corporation).

In order to respond to the plaintiffs' allegations and support their defenses, it is imperative that the Non-Operating Defendants obtain evidence from BP, the entity that in fact <u>was</u> the Operator and in control of the drilling operations. Toward that end, the Non-Operating Defendants have served discovery requests on BP Exploration that seek, *inter alia*, the following information:

> REQUEST FOR ADMISSION NO. 1:
>
> Please admit that [the Non-Operating Defendants'] personnel never visited the Marianas or Deepwater Horizon rigs during the drilling of the MACONDO WELL.
>
> REQUEST FOR ADMISSION NO. 2:
>
> Please admit that [the Non-Operating Defendants] did not participate in developing the cement design for the MACONDO WELL production casing.[4]

---

[3] *See also* Pleading Bundle B3 First Amended Master Complaint, Doc. No. 1812, ¶¶ 79, 219–20, 242–44, 251–57, 262; State of Alabama First Amended Complaint, Doc. No. 1872, ¶¶ 98–105; 129; 145–47; 210; *Rhodes v. Transocean et al.*, No. 2:10-cv-1502, Fifth Amending Complaint, Doc. No. 1834, ¶¶ 3.P, 9–12 (incorporating by reference allegations from the Pleading Bundle B1 First Amended Master Complaint).

[4] *See* Non-Operating Defendants' First Requests for Admissions to BP America Inc., BP America Production Company, BP Exploration And Production Inc., B.P. P.L.C. (collectively, "BP") (April 4, 2011).   Appendix, Exhibit A.   These Requests for Admissions were accompanied by standard

7

Interrogatories served by the Non-Operating Defendants similarly asked what information in fact was provided to the Non-Operating Defendants by BP Exploration—evidence that only can be obtained from BP Exploration itself.[5]  BP nevertheless contends that it is free to ignore these requests.

Likewise, BP now asserts that it does not have any obligation to supplement the prior responses it did submit in response to discovery requests—notwithstanding the fact that its prior responses are incomplete or inadequate.  For example:

- In response to Requests for Production Nos. 14 and 15, calling for post-incident "pictures, video recordings, X-rays, audio recordings, samples, measurements and/or testing results" of or for the Deepwater Horizon or any of its equipment or components, and of or for the Macondo Well, BP stated that it would search for "results and supporting date of any post-Incident physical testing performed by [BP] . . . ." By limiting the response to only results and data and, further, only to results and data from BP's testing, BP failed to fully respond to the request.

- In response to Interrogatory No. 1, BP failed to identify the BP employees who communicated on or before April 20, 2010 about alarm systems that were inhibited or bypassed, instead referring to the 2009 Audit Report.

- In response to Interrogatory No. 2, BP failed to identify the BP employees who communicated on or before April 20, 2010 regarding the functionality of the BOP.

- In response to Interrogatory No. 4, BP limited its answer to drilling operations in the Gulf of Mexico and ignored the portion of the question about "the number of centralizers" the BP Parties chose to use (and actually did use) in a well.[6]

Because the allegations raised against and the defenses asserted by the Non-Operating Defendants depend upon the relative knowledge, culpability, and joint and several liability of the

---

interrogatories asking that, for each of the First Requests for Admissions that BP Exploration did not unqualifiedly admit, all facts which support the response; all persons having knowledge of such facts; and all documents reflecting such facts be identified.   Appendix, Exhibit A.

[5] *See, e.g.*, Non-Operating Defendants' Second Set of Interrogatories and Requests for Production of Documents to BP America Inc., BP America Production Company, BP Exploration And Production Inc., B.P. P.L.C. (collectively, "BP") (April 4, 2011), Interrogatories 26–29.  Appendix, Exhibit A.

[6] Attached as Exhibits H and I to the Appendix are copies of letters that Anadarko and MOEX, respectively, sent to BP detailing the inadequacies of its discovery responses.

various defendants, Anadarko and MOEX Offshore must be permitted to gather relevant, discoverable information from BP.  The discovery requests served upon BP are intended to yield documents and information about these very issues.[7]  Without them, Anadarko and MOEX Offshore will be precluded improperly from the right to mount a full and fair defense in this MDL action.

### B. The OA's Arbitration Provisions Provide No Justification for BP's Refusal to Comply with Its Discovery Obligations.

Although BP has responded to a number of prior discovery requests from Anadarko and MOEX Offshore, and in fact has sought its own discovery from and regarding its co-defendants, BP now flatly refuses to respond to any discovery requests from Anadarko and MOEX Offshore.  Its only asserted reason for this abrupt reversal is its claim that these discovery requests are impermissible under the arbitration provisions of the OA.  This argument fails for several reasons.  First, the discovery sought by Anadarko and MOEX Offshore is critical to their defenses to the claims asserted against them by the multitude of plaintiffs in the MDL.  Even BP must agree that there is discovery needed of it in these cases that is entirely outside of even BP's interpretation of the scope of the OA.   Second, the Non-Operating Defendants did not institute the MDL litigation and the discovery sought does not arise from any dispute that may exist "between" the Non-Operating Defendants and BP Exploration.  The overlap of some of the issues in the non-arbitrable claims in this litigation with issues in potential future claims between BP and the Non-Operating Defendants does not provide a legal basis for cutting off the right of Anadarko and MOEX Offshore to obtain relevant information essential to their defenses in this case.  Third, BP's own actions demonstrate that discovery among the co-defendants who are parties to the OA is appropriate and central to the defense of the MDL claims.  BP's novel, self-serving, and expansive construction of the OA's arbitration provision must be rejected.

---

[7] *See, e.g.*, Appendix, Exhibit A (Non-Operating Defendants' Interrogatories and Requests For Production Of Documents To BP America Inc., BP America Production Company, BP Exploration and Production Inc., and B.P. P.L.C. (collectively, "BP"), Interrogatory 13, Requests 3, 22 (January 7, 2010)).

1.   **BP Cannot Preclude Discovery Relevant to Litigation Between the Non-Operating Defendants and Third Parties.**

BP's refusal to respond to the discovery requests based on the arbitration provisions of the OA is misplaced. The OA's dispute resolution provisions plainly do not apply to the claims and defenses asserted in the MDL. Specifically, Article 22.9 of the OA provides that any "claim, controversy, or dispute arising out of, relating to, or in connection with this Agreement or an activity or operation conducted under this Agreement shall be resolved under the Dispute Resolution Procedure in Exhibit 'H' to this Agreement." Exhibit H, in turn, provides for the arbitration of a certain category of "claim(s), controversy(ies) or dispute(s) . . . between BP Exploration & Production Inc. and [the Non-Operating Defendants]."[8] Appendix, Exhibit B (emphasis added).[9]

The discovery sought by Anadarko and MOEX Offshore is relevant to claims asserted against them by approximately 40,000 plaintiffs in the MDL and is fundamental to Anadarko and MOEX Offshore's defenses against those claims. The claims of these 40,000 plaintiffs are plainly not subject to arbitration under the OA.

There also is no dispute that BP has chosen not to commence an arbitration, despite now claiming that it has had the right to do so since May of 2010, when it first attempted to force the Non-Operating Defendants to pay part of the costs caused by BP's conduct. BP thus has no basis to claim that discovery in these matters constitutes a violation of the arbitration provisions.

2.   **BP Cannot Avoid Its Discovery Obligations Simply Because Some of the Information Sought in the MDL Might Be Relevant in Any Future Arbitration.**

Because the arbitration agreement at issue here plainly does not apply to the third-party claims that have been asserted in the MDL, BP is really claiming that it may ignore any

---

[8] Exhibit H to the OA refers only to MOEX Offshore 2007, LLC, as non-operator. Anadarko, however, later ratified the agreement.

[9] For purposes of this motion only, the Non-Operating Defendants are assuming that the arbitration provisions of the OA are enforceable. Although the Court need not reach the issue to decide this motion, the Non-Operating Defendants reserve the right to contest the enforceability and applicability of the arbitration provisions at the appropriate time.

discovery request so long as the request calls for any information that BP says might also be relevant in a future arbitration. This expansive and unprecedented assertion is refuted by the relevant case law and common sense.

First, BP must concede that many of the discovery requests are not even arguably relevant to any possible future arbitration proceeding (should one ever be initiated by the parties). For example, evidence that (contrary to the plaintiffs' allegations) the Non-Operating Defendants did not exercise control over the Deepwater Horizon's operations is irrelevant to any possible future arbitration between BP and the Non-Operating Defendants and, in any event, can hardly be disputed by BP in an arbitration or otherwise. Such evidence is, however, critical to the Non-Operating Defendants' defense against the claims asserted by the plaintiffs against them in these proceedings.

Moreover, the possible relevance of some of the evidence sought in discovery by the Non-Operating Defendants to an as-yet non-existent arbitration under the OA does not provide BP a shield against discovery relevant to this case. Discovery responses that are relevant to a pending litigation simply cannot be withheld merely because they may also prove relevant in a contemplated arbitration. For example, in *Major, Lindsey & Africa, LLC v. Mahn*, No. 10 Civ. 4239, 2010 WL 3959609 (S.D.N.Y. Sept. 7, 2010), an employer filed an action against its employee for divulging confidential information to competitors. The employer sought both monetary and injunctive relief. The parties previously had agreed to arbitrate all claims by the employer for monetary damages, but the arbitration agreement specifically exempted claims for injunctive relief relating to the issue of "confidentiality." *Id.* at *1. The court denied the employee's motion to dismiss or stay the action in favor of an arbitration, even though the claims were "substantially duplicative of various claims for money damages that are subject to arbitration," because the action fell within the terms of the express carve-out to the arbitration clause. *Id.* at *4. With respect to discovery, the court made clear that the parties' agreement did not "preempt the Federal Rules of Civil Procedure with respect to discovery in connection with this lawsuit. The fact that discovery in this action may prove useful in connection with the

11

arbitration, which is subject to its own special discovery rules, is of no moment." *Id.* (emphasis added).

Likewise, in *Fleet Business Credit, LLC v. Solarcom, LLC*, No. Civ. AMD 05-901, 2005 WL 1025799 (D. Md. May 2, 2005), the court declined to quash a subpoena simply because the discovery sought could be used in a separate arbitration proceeding. There, an employee was alleged to have executed a guaranty on behalf of his employer without any authorization to do so. When the borrower defaulted, the creditors sought to enforce the guaranty, eventually filing suit in federal court. Meanwhile, litigation between the employer and employee in state court was stayed pending arbitration. While that arbitration was pending, the employer served document requests on the employee for use in its defense to the creditors' claims in federal court. The employee argued that the employer's "attempt to obtain documents relevant to the issues in the state court litigation constitute[d] an 'end run' around the stay of that action." *Id.* at *1. The federal court flatly rejected this claim: "That one or more documents called for here might also be relevant to the issues in the (stayed) state court litigation between [the employer and employee] is not a sufficient basis for non-production of such documents in the federal litigation." *Id.* at *2 (emphasis added).[10]

The logic underlying the decisions in *Major, Lindsey & Africa* and *Fleet Business Credit* supports an order granting this motion to compel. As in those cases, Anadarko and MOEX Offshore are seeking discovery that is essential to defending against the claims being asserted by the thousands of plaintiffs who are part of the MDL. As in those cases, BP contends that permitting such discovery would frustrate the rules and limits that apply to separate arbitration

---

[10] *Cf. Texas Trading & Transp. Inc. v. Laine Constr. Co.*, No. Civ. A. 98-1473, 1998 WL 814615, at *2 (E.D. La. Nov. 18, 1998) (holding that even if, on appeal of denial of motion to compel arbitration, the Fifth Circuit ordered plaintiff Texaco Trading's claims against defendants to be arbitrated, a stay of the district court proceedings pending appeal "would prejudice the rights of [defendants] to defend the claims asserted by [plaintiff's affiliates] Texaco Pipeline and Texaco Inc. (both with respect to discovery and filing claims against potentially liable third parties)") (emphasis added).

12

proceedings.[11]  Just as the courts in *Major, Lindsey & Africa* and *Fleet Business Credit* declined to restrict discovery in the independent federal disputes despite the potential relevance of the responses to the arbitration, so too should this Court reject BP's attempt to use the OA's arbitration provisions to frustrate the defense efforts of Anadarko and MOEX Offshore in the MDL.  *See also Texas Trading & Transp. Inc. v. Laine Constr. Co.*, No. Civ. A. 98-1473, 1998 WL 814615, at *2 (E.D. La. Nov. 18, 1998) (denying stay of litigation pending appeal of denial of motion to compel arbitration to avoid prejudice to defendants' rights to defend even though, if arbitration is compelled on appeal, "any discovery undertaken by the parties while the appeal is pending could be used in connection with any future arbitration proceeding"); *Cornell v. Dean Witter Reynolds Inc.*, No. 95 Civ. 3050 (LMM), 1996 WL 76131, at *1 (S.D.N.Y. Feb. 21, 1996) (denying motion by third party to quash deposition subpoena on grounds of arbitration agreement because "the fact of the pending arbitration is not reason to deny plaintiff discovery she is entitled to in the present case").

Indeed, BP's logic is not restricted to cases like this one, where the parties to the arbitration agreement are named as co-defendants.  BP's argument would likewise prohibit discovery by Anadarko and MOEX Offshore even if BP had not been named as a defendant in any of the MDL proceedings and was served with discovery only in its capacity as a non-party witness.  No reasonable reading of the OA's arbitration provisions would support such a result.  If the parties had intended to forfeit their right to seek discovery and mount a full and fair defense to claims asserted by non-parties to the OA, they would not have limited arbitrations to disputes "between" the parties to the OA.  Far more expansive and definitive language would have been required.  *Cf. In re Garlock*, 463 F. Supp. 2d 478, 480–81 (S.D.N.Y. 2006) (rejecting an attempt by Ernst & Young to assert an arbitration agreement as a basis for resisting the taking of a non-party deposition because, *inter alia*, "it would have been a very simple matter for E & Y

---

[11]  Moreover, in this case, unlike *Major, Lindsey & Africa* and *Fleet Business Credit,* arbitration has not yet commenced—a point that further strengthens Anadarko and MOEX Offshore's argument that BP be required to respond to the discovery requests.

to have sought an agreement in which the plaintiffs would have waived any right to obtain discovery against E & Y in any action or proceeding of any kind except in an arbitration against E & Y and even there only as the arbitrator might allow.  Evidently it sought no such agreement—in any case, it did not obtain one—and there is no reason for the Court to rewrite the bargain that it did make").

### 3. BP's Own Discovery Efforts Undermine Its Claim that Anadarko and MOEX Offshore Have Sought Information Beyond the Proper Scope of Discovery.

One might assume that, if BP truly believed that the OA prohibited the parties bound by its arbitration provisions from pursuing any discovery, it would not have made any discovery requests on Anadarko and MOEX Offshore in the MDL proceedings.  BP's actions, however, demonstrate that it held no such belief.  From the beginning of the MDL discovery process, BP has been diligent to arm itself with as much information as possible regarding Anadarko and MOEX Offshore.  It has served notice of its intention to depose at least six employees or representatives of the Non-Operating Defendants or their affiliates.  Appendix, Exhibit D.  And it has served discovery requests on other parties seeking evidence about the Non-Operating Defendants.  Appendix, Exhibits E & F.

The extensive efforts by BP to, on one hand, collect as much discovery as possible in the MDL regarding the Non-Operating Defendants and, on the other hand, to resist and deny those same parties the ability to seek similar information regarding BP, suggests that BP's newfound position is a product of strategy, rather than any reasonable reading of the OA's arbitration provisions.  If BP has its way, once the discovery record is closed and to its liking, it will then have the option to use that one-sided discovery against the Non-Operating Defendants, fully expecting that they will not be able to obtain comparable discovery under the OA.  This Court should not reward BP's tactics or credit its attempt to use the arbitration provisions in the OA as a shield against any discovery by Anadarko and MOEX Offshore in the MDL—particularly where BP possesses information that is relevant and critical to defending the claims made against

Anadarko and MOEX Offshore by the 40,000 plaintiffs in the MDL.

In sum, the Court should grant the Non-Operating Defendants' joint motion to compel discovery. The Non-Operating Defendants must remain free to fully litigate and defend against the claims raised by the plaintiffs, which clearly fall outside the scope of any arbitration agreement, regardless of any potential overlap with potentially arbitrable claims.

## CONCLUSION

For the foregoing reasons, the Joint Motion of Defendants Anadarko and MOEX Offshore To Compel Response To Discovery Requests Served Upon BP Exploration & Production, Inc., BP America Inc., BP America Production Company, and BP p.l.c. should be granted.

Respectfully submitted,

DATED: April 15, 2011            BINGHAM McCUTCHEN, LLP

/s/ *Ky E. Kirby*_____
Ky E. Kirby
ky.kirby@bingham.com
David B. Salmons
david.salmons@bingham.com
Michael B. Wigmore
michael.wigmore@bingham.com
Warren Anthony Fitch
tony.fitch@bingham.com
Randall M. Levine
randall.levine@bingham.com
2020 K Street, NW
Washington, DC 20006-1806
Telephone (202) 373-6000
Facsimile (202) 373-6001

James J. Dragna
jim.dragna@bingham.com
Bingham McCutchen LLP
355 South Grand Avenue
Suite 4400
Los Angeles, California 90071-3106
Telephone (213) 680-6436

Facsimile (213) 680-8636

KUCHLER POLK SCHELL
WEINER & RICHESON, LLC

Deborah D. Kuchler, T.A. (La. Bar No. 17013)
dkuchler@kuchlerpolk.com
Janika Polk (La. Bar No. 27608)
jpolk@kuchlerpolk.com
Robert Guidry (La. Bar No. 28064)
rguidry@kuchlerpolk.com
1615 Poydras Street, Suite 1300
New Orleans, LA  70112
Tel:  (504) 592-0691
Fax:  (504) 592-0696

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, pursuant to Pre-trial Order No. 12, I have caused the foregoing to be served on all counsel via the Lexis Nexis File & Serve system, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, who will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on April 15, 2011.

                                                       /s/ *Ky E. Kirby*
                                                         Ky E. Kirby