# EXHIBIT A



35270990

Jan 7 2011
8:27PM

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "*DEEPWATER HORIZON*" in the GULF OF MEXICO, on APRIL 20, 2010 | ∗ | MDL NO. 2179 |
| | ∗ | SECTION: J |
| | ∗ | JUDGE BARBIER |

**THIS DOCUMENT RELATES TO ALL CASES**

---

### DEFENDANT ANADARKO PETROLEUM CORPORATION'S INTERROGATORIESAND REQUESTS FOR PRODUCTION OF DOCUMENTS TO BP AMERICA INC., BP AMERICA PRODUCTION COMPANY, BP EXPLORATION AND PRODUCTION INC., B.P. P.L.C. (COLLECTIVELY, "BP")

Pursuant to Rules 26, 33 and 34 of the Federal Rules of Civil Procedure, Defendant ANADARKO PETROLEUM CORPORATION ("ANADARKO") through undersigned Counsel, requests that Defendant BP answer the following interrogatories under oath and produce the documents specified hereinafter, in accordance with the following Instructions and Definitions, within thirty (30) days hereof, at the offices of Bingham McCutchen LLP, 355 South Grand Avenue, Suite 4400, Los Angeles, California 90071-3106, or at such other time and place as may be agreed upon by counsel for the aforesaid parties.

### INSTRUCTIONS

(a)    Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, these interrogatories and requests for production are continuing in nature so that if, after answering, YOU acquire additional responsive knowledge or information or determine that an answer YOU provided was false, incomplete, or misleading, YOU are to serve supplemental or amended answers as soon as reasonably possible after acquiring such additional knowledge or

information.    Furthermore, DOCUMENTS or ELECTRONICALLY STORED INFORMATION ("ESI") prepared prior to or subsequent to the period covered by these interrogatories, but which nonetheless RELATE or REFER thereto, are to be included in YOUR response.

(b)    As defined below, YOU are to produce all DOCUMENTS in YOUR possession, custody or CONTROL.    Production of DOCUMENTS shall be in conformance with all procedures and formats set forth by the Court.

(c)    All ESI responses to these discovery requests shall be produced in accordance with Pretrial Order No. 16.

(d)    All produced DOCUMENTS shall have a legible, unique page identifier ("Bates Number") electronically "burned" onto each image at a location that does not obliterate, conceal, or interfere with any information from the source DOCUMENT.  No other legend or stamp will be placed on the DOCUMENT image other than a confidentiality legend (where applicable) redactions (consistent with the Stipulated Protective Order in this matter, or any other protective orders agreed to in the future), and the Bates Number identified above. The confidential legend shall be "burned" onto the DOCUMENT'S image at a location that does not obliterate or obscure any information from the source DOCUMENT.  WITH RESPECT TO the identification of files produced in their native format, the parties shall confer on an appropriate method for applying a unique identifier to each file produced.

(e)    Each page image file shall be named with the unique Bates Number of the page of DOCUMENT, followed by the extension ".TIF."  In the event the Bates Number contains a symbol and/or character that cannot be included in a file name, the symbol and/or character will be omitted from the file name.

(f)    If YOU refuse to respond to any of these interrogatories or requests for

production based on a claim of privilege, YOU shall provide a "Privilege Log" that complies with the provisions of Pretrial Order No. 14.

(g)     If YOU or any of YOUR attorneys, agents, or representatives at any time had possession or CONTROL of a DOCUMENT requested and that DOCUMENT has been lost, destroyed, or purged or is not presently in YOUR possession, custody, or CONTROL, IDENTIFY the DOCUMENT and DESCRIBE the circumstances surrounding the loss, destruction, purge, or separation from YOUR possession, custody, or CONTROL, indicating the dates that those circumstances occurred.

(h)     If YOU allege that any request is in any manner ambiguous, YOU are instructed to DESCRIBE in detail the reasons for YOUR allegations, including but not limited to, each interpretation to which YOU allege the specific request for discovery is subject. Notwithstanding any of the foregoing, YOU are instructed to respond, to the best of YOUR ability, to the request for production and produce the DOCUMENTS requested.

## DEFINITIONS

As used herein, the following terms are defined as follows:

(i)     "*DEEPWATER HORIZON*" means, without limitation, the mobile offshore drilling unit (MODU) of that name involved in the drilling of the MACONDO WELL, or any component thereof, as well as any vessel, vehicle, aircraft, or other equipment used in connection with the process of drilling, developing, exploring for and/or producing oil and gas resources.

(j)     "MACONDO WELL" means, without limitation, the Macondo Prospect (Mississippi Canyon Block 252, abbreviated MC252) an oil and gas prospect in the Gulf of Mexico, off the coast of Louisiana.  The prospect was the site of the *DEEPWATER HORIZON* drilling rig explosion in April 20, 2010.

3

(k)     "DEEPWATER WELL" means, without limitation, a well drilled in excess of 5000' water depth.

(l)     "INCIDENT" means, without limitation, the loss of control of the MACONDO WELL leading to the explosion that occurred on the *DEEPWATER HORIZON* on or around April 20, 2010.

(m)     "BOP" or "BLOWOUT PREVENTER" means, without limitation, the large valve device(s) designed and used to ensure safety through the sealing, controlling, and monitoring of oil and gas wells including the associated, monitoring, warning, electronic, and hydraulic systems.

(n)     "*DEEPWATER HORIZON* BLOWOUT PREVENTER" means, without limitation, the large valve device(s) specifically created by CAMERON to ensure safety through the sealing, controlling, and monitoring of the MACONDO WELL including the associated, monitoring, warning, electronic, and hydraulic systems for the *DEEPWATER HORIZON* rig.

(o)     "YOU," "YOUR," or "BP," means, without limitation, BP EXPLORATION AND PRODUCTION, INC., BP AMERICA, INC., BP AMERICA PRODUCTION COMPANY, and BP, P.L.C., including its predecessors, successors, subsidiaries, departments, divisions, attorneys, accountants, and current and former directors, officers, EMPLOYEES, agents, representatives and PERSONS acting on its behalf.

(p)     "CAMERON" means, without limitation, CAMERON INTERNATIONAL, CAMERON INTERNATIONAL CORPORATION, and COOPER CAMERON CORPORATION, including its predecessors, successors, subsidiaries, departments, divisions, attorneys, accountants, and current and former directors, officers, EMPLOYEES, agents, representatives and PERSONS acting on its behalf.

4

(q)     "WEATHERFORD"     means,     without     limitation,     WEATHERFORD

INTERNATIONAL, LTD., WEATHERFORD U.S., L.P. and any entity names and any

variations thereof of those entities including its predecessors, successors, subsidiaries,

departments, divisions, attorneys, accountants, and current and former directors, officers,

EMPLOYEES, agents, representatives and PERSONS acting on its behalf.

(r)     "TRANSOCEAN" means, without limitation, TRITON ASSET LEASING

GMBH, TRANSOCEAN HOLDINGS LLC, TRANSOCEAN OFFSHORE DEEPWATER

DRILLING INC., and TRANSOCEAN DEEPWATER INC., as owners, managing owners,

owners pro-hac vice, and/or operators of the MODU *DEEPWATER HORIZON*, including its

predecessors, successors, subsidiaries, departments, divisions, attorneys, accountants, and

current and former directors, officers, EMPLOYEES, agents, representatives and PERSONS

acting on its behalf.

(s)     "PERSON" means, without limitation, any and every natural individual, each

and every association, partnership, joint venture, corporation, professional corporation, trust

and any and every other identifiable entity.

(t)     "EMPLOYEE" means, without limitation, any current or former officer,

director, executive, manager, secretary, staff member, messenger or other PERSON who is or

was employed or subcontracted by YOU or has acted on YOUR behalf.

(u)     "GOVERNMENT" means, without limitation, any branch, department, or

agency of federal or state GOVERNMENT, including the United States Coast Guard, Minerals

Management Service, Bureau of Ocean Energy Management, Office of Natural Resources

Revenue, Environmental Protection Agency, Senate Committee on Energy and Natural

Resources and House Committees on Energy and Commerce, Chemical Safety Board, the

Department of the Interior, National Oceanic and Atmospheric Administration, Department of

Energy, and Joint Investigation Team, including any committee, subcommittee, or advisory committee thereof, together with all current or former officials, directors, staff members or other PERSONS employed by the GOVERNMENT, or purporting to act on its behalf.

(v)     "COMMUNICATION" means, without limitation, any writing transmitted between PERSONS or any oral conversation of any kind or character, including, by way of example and without limitation, personal conversations, telephone conversations, letters, MEETINGS, memoranda, telegraphic, telex, COMPUTER and facsimile COMMUNICATIONS or transmittals of DOCUMENTS, ESI (as defined in section (y)) and all DOCUMENTS CONCERNING such writings or oral conversations. "COMMUNICATION" as used herein specifically includes internal writings, oral conversations or MEETINGS among the officers, board members, EMPLOYEES or other representatives of any defendant.

(w)     "MEETING" means, without limitation, any assembly, convocation, encounter or contemporaneous presence of two or more PERSONS for any purpose, whether planned or scheduled in advance, including written exchanges through internet/web based chat, including AOL Instant Messenger, or similar programs, electronic "bulletin board" programs, or internet/web based video chat, including Skype, or similar programs.

(x)     "DOCUMENT" means, without limitation, the original and all non-identical copies of all writings, including any and all drafts, alterations and modifications, changes and amendments of any of the foregoing whether handwritten, typed, printed or otherwise produced in any format including, but not limited to, paper or ESI. This definition also includes, without limitation, books, records, manuals, statements, minutes, letters, correspondence, memoranda, legal pleadings, calendars, diaries, travel records, lists, tax returns, schedules, press releases, directives, agreements, contracts, print-outs, studies,

summaries, records of telephone conversations, telegrams, notes, reports, compilations, notebooks, work papers, graphs, graphics, transcripts, charts, blueprints, timelines, pamphlets, brochures, circulars, manuals, instructions, ledgers, drawings, sketches, photographs, videotapes, film and sound reproductions, COMPUTER discs (including but not limited to, CDs, CD-Rs, DVDs, DVD-Rest, floppy discs, hard discs and hard drives), flash drives, pen drives, thumb drives, programming instructions, sales, advertising and promotional literature, agreements or minutes of MEETINGS, telephone conversations or other conversation or COMMUNICATION in YOUR possession, custody or CONTROL, or in the possession, custody or CONTROL of YOUR predecessors, successors, officers, directors, shareholders, EMPLOYEES, agents, representatives and attorneys. This definition also includes non-printed matter such as voice records and reproductions, film impressions, photographs, videos, negatives, slides, microfilms, microfiches, e-mail, and other things that DOCUMENT or record ideas, words or impressions.  The term "DOCUMENT" further includes all punch cards, tapes, disks, or records used in electronic data processing, together with the programming instructions and other written materials necessary to understand or use such punch cards, tapes, disks or other recordings, and further includes ESI (as defined in section (y)) data or data compilation in electronic or other form that can be printed through proper programming or decoding of the electronic or mechanical data storage facility, including metadata.

(y)    "ELECTRONICALLY STORED INFORMATION" or "ESI" means the original (or identical duplicate when the original is not available), and any non-identical copies whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings and data compilations in any form, and of every kind and description whether inscribed by mechanical, facsimile, electronic, magnetic, digital or other means. ESI includes, by way of example only,

A/73578677.7

COMPUTER programs (whether private, commercial, or work-in progress), programming notes or instructions, activity listings of electronic mail receipts and transmittals, output resulting from the use of any software program, including word processing DOCUMENTS, spreadsheets, database files, charts, graphs and outlines, electronic mail displaying full email aliases (not merely "display names"), electronic calendars, IM logs, PBX logs, DOCUMENT management system data, operating systems, all metadata, source code of all types, peripheral drivers, PIF files, batch files, ASCII files, and any and all miscellaneous files and file fragments, regardless of the media on which they reside and regardless of whether said ESI consists in an active file, deleted file or fragment.  ESI includes any and all items stored on COMPUTER memories, hard disks, floppy disks, CD-ROMs, removable media such as Zip disks, Jaz cartridges, Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, COMPUTER chips, including, EPROM, PROM RAM and ROM, on or in any other vehicle for digital data storage and transmittal. The term ESI also includes the file, folder tabs and containers and labels appended to, or associated with, any physical storage device associated with each original and copy.

(z)     "COMPUTER" means, without limitation, all devices utilizing microchips to facilitate processing, analysis, or storage of data, including micro COMPUTERS (also known as personal COMPUTERS), laptop COMPUTERS, portable COMPUTERS, notebook COMPUTERS, palmtop COMPUTERS (also known as personal digital assistants or PDA's), iPads, mini COMPUTERS and mainframe COMPUTERS.

(aa)     "CONTROL" means, without limitation, the ownership, possession, or custody of the DOCUMENT, or the right to secure the DOCUMENT or copy thereof from any PERSON or public and private entity having physical possession thereof.

(bb)     "RELATING TO," "RELATED TO," "REGARDING," "CONCERNING," or

8

"WITH RESPECT TO" means, without limitation, the following concepts: discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting or otherwise involving, in whole or in part.

(cc)    "IDENTIFY" and "IDENTITY" when used in reference to a PERSON means to STATE the PERSON'S:

(1)    Full name;

(2)    Present or last known employment position, including the employer name;

(3)    Job title and/or description; and

(4)    Contact information.

(dd)    "IDENTIFY" and "IDENTITY" when used in reference to a DOCUMENT or ESI means to STATE:

(1)    The type of DOCUMENT or ESI;

(2)    Its date;

(3)    Its author(s) and author(s) address(es), including every author involved, whether or not such PERSON signed the DOCUMENT;

(4)    Its subject matter or response;

(5)    Its present location or custodian;

(6)    Every PERSON to whom such DOCUMENT or ESI, or any copy thereof, was given or sent;

(7)    Every PERSON known to YOU to have received the DOCUMENT or information, or to have learned the substance of its contents; and

(8)    If any such DOCUMENT or ESI was, but is no longer, in YOUR

9

possession or subject to YOUR CONTROL, STATE what disposition was made of it.

(ee)  "IDENTIFY" and "IDENTITY" when used WITH RESPECT TO a COMMUNICATION other than a writing means to STATE:

(1)  The full name of any PERSON who was a party to the COMMUNICATION;

(2)  The type of COMMUNICATION, e.g., telephone conversation, letter, telegram, teletype, telecopy, written memorandum, face-to-face conversation, or any other form; and The full name of any PERSONS participating therein, along with the date, duration, location(s) and the substance of the COMMUNICATION.

(ff)  "DESCRIBE" means, in the case of an act, event, transaction, relationship, thing or occurrence, to IDENTIFY dates, places, PERSONS involved, and means employed; IDENTIFY YOUR sources of information CONCERNING such act, event, transaction, thing or occurrence, including the date YOU received such information; IDENTIFY each PERSON having knowledge of such act, event, transaction, thing or occurrence; and IDENTIFY each COMMUNICATION and each DOCUMENT RELATING TO such act, event, transaction, thing or occurrence.

(gg)  "STATE" means, without limitation, to set forth in full and complete detail all knowledge and information in YOUR possession, custody or CONTROL RELATING TO the subject matter of the interrogatory, including without limitation the source and basis of YOUR knowledge and information if not otherwise evident from YOUR answer to the interrogatory and the IDENTITY of each DOCUMENT and each COMMUNICATION on which YOU rely to any extent in making YOUR answer.

10

(hh)    When an interrogatory calls for YOUR or any other PERSON'S "basis" or "bases," or "sources," "sources of knowledge," "sources of information," or "source(s) of information or belief," YOU are to STATE when, where, and the IDENTITY of the PERSON from whom the information was learned or received, and if by means of one or more DOCUMENTS or COMMUNICATIONS, the IDENTITY of each such DOCUMENT and COMMUNICATION.

(ii)    "And" as well as "or" should be construed either disjunctively or conjunctively so that each request is given its broadest possible application.  If, for example, a request calls for information about "A" or "B," YOU should produce all information about A and all information about B, as well as all information about collectively A and B.  In other words, both "and" and "or" should be read as "and/or."

(jj)    "Any" should be construed, when possible, to mean "any and all."

(kk)    "Including" is used to emphasize the type of information requested and should not be construed as limiting the interrogatory or requests for production in any way. "Including" should be read as "including, but not limited to."

(ll)    "Each" should be construed to include the word "every," and "every" should be construed to include the word "each."

(mm)    A plural noun or pronoun should be construed as a singular noun, and a singular noun should be construed as a plural noun or pronoun, so that each request should be given its broadest possible application.

(nn)    The use of a verb in any tense should be construed to be the use of a verb in all other tenses so that each request should be given its broadest possible applications.

(oo)    Words of one gender shall be construed to include words of all genders so that each request in the request for production of DOCUMENTS shall be given its broadest

11

possible application.

(pp)    Definitions provided herein apply to any grammatical variance of the term or phrase defined.

## INTERROGATORIES

**INTERROGATORY NO. 1:**

Please IDENTIFY each PERSON to whom YOUR EMPLOYEES communicated or sent COMMUNICATIONS or from whom they received COMMUNICATIONS, on or before April 20, 2010, that any of the alarm systems on the *DEEPWATER HORIZON* were inhibited or bypassed, IDENTIFY all other PERSONS involved in the COMMUNICATION and DESCRIBE in detail the substance of each such COMMUNICATION and any response to or result from such COMMUNICATION.

**INTERROGATORY NO. 2:**

Please IDENTIFY each PERSON with whom YOUR EMPLOYEES communicated, on or before April 20, 2010, REGARDING the functionality of each system on the *DEEPWATER HORIZON*'S BOP and marine riser, including but not limited to the battery packs, solenoid valves and coils, yellow and blue control pods, shear rams, bore rams, test rams, choke/kill lines and valves, and annular preventers; IDENTIFY all other PERSONS involved in those COMMUNICATIONS; and DESCRIBE in detail the substance of each COMMUNICATION.

**INTERROGATORY NO. 3:**

Excluding the MACONDO WELL, please IDENTIFY and DESCRIBE in detail (including, but not limited to, the name and location of the well, the date, and the IDENTITY of YOUR well site leader and well team leader for each well identified) any and all instances in YOUR drilling of DEEPWATER WELLS in the last 10 years in which YOU directed YOUR cement contractor to proceed with a cement job when Opticem or similar modeling showed the

12

well would have a severe gas flow problem.

**INTERROGATORY NO. 4:**

Excluding the MACONDO WELL, please IDENTIFY and DESCRIBE in detail each instance in the last 10 years in which an Opticem or similar modeling report indicated that, with the number of centralizers YOU chose to use (and actually did use) in a well, there was a severe gas flow problem, including but not limited to, the name and location of the well, the date, the names of YOUR well site leader and well team leader for each well identified, the number of centralizers used and the gas flow potential indicated by modeling.

**INTERROGATORY NO. 5:**

Excluding the MACONDO WELL, please IDENTIFY and DESCRIBE in detail (including the name and location of the well, the date, and the IDENTITY of YOUR well site leader and well team leader for each well identified) any and all instances in YOUR drilling of DEEPWATER WELLS or use of MODUs in the last 10 years in which YOU had no onshore real-time monitoring process to assess what was happening in the well on a continuing basis.

**INTERROGATORY NO. 6:**

Excluding the MACONDO WELL, please IDENTIFY and DESCRIBE in detail (including the name and location of the well, the date, and the IDENTITY of YOUR well site leader and well team leader) any and all instances in YOUR drilling of DEEPWATER WELLS or use of MODUs in the last 10 years in which YOU changed YOUR well site leader within one week of the commencement of temporary abandonment procedures.

**INTERROGATORY NO. 7:**

Excluding the MACONDO WELL, please IDENTIFY and DESCRIBE in detail (including the name and location of the well, the date, and the IDENTITY of YOUR well site leader and well team leader) any and all instances in YOUR drilling of DEEPWATER WELLS

or use of MODUs in the last 10 years in which YOU failed to keep track of fluid losses or gains in the well and the riser (including via monitoring of pit levels or of fluids being pumped into the well and flowing out of the well).

**INTERROGATORY NO. 8:**

Excluding the MACONDO WELL, please IDENTIFY and DESCRIBE in detail (including the name and location of the well, the date, and the IDENTITY of YOUR well site leader and well team leader) any and all instances in YOUR drilling of DEEPWATER WELLS or use of MODUs in the last 10 years in which YOU chose to use a long string in lieu of a liner in a deep high-pressure well being installed in formations exhibiting different pore pressures in the open-hole interval.

**INTERROGATORY NO. 9:**

Excluding the MACONDO WELL, please IDENTIFY and DESCRIBE in detail (including the name and location of the well, the date, and the IDENTITY of YOUR well site leader and well team leader) any and all instances in YOUR drilling of DEEPWATER WELLS or use of MODUs in the last 10 years in which YOU did not conduct a full bottoms-up circulation of drilling mud prior to cementing.

**INTERROGATORY NO. 10:**

Excluding the MACONDO WELL, please IDENTIFY and DESCRIBE in detail (including the name and location of the well, the date, and the IDENTITY of YOUR well site leader and well team leader) any and all instances in YOUR drilling of DEEPWATER WELLS or use of MODUs in the last 10 years in which YOU used a pressure greater than 2000 psi to establish sufficient circulation to convert the float collar in preparation for cementing.

**INTERROGATORY NO. 11:**

Excluding the MACONDO WELL, please IDENTIFY and DESCRIBE in detail

14

(including the name and location of the well, the date, and the IDENTITY of YOUR well site leader and well team leader) any and all instances in YOUR drilling of DEEPWATER WELLS or use of MODUs in the last 10 years in which YOU had to attempt more than five (5) times to convert the float collar before it was declared converted prior to cementing.

**INTERROGATORY NO. 12:**

Excluding the MACONDO WELL, please IDENTIFY and DESCRIBE in detail any and all instances in YOUR drilling of DEEPWATER WELLS or use of MODUs in the last 10 years in which YOU used nitrogen foamed cement, including the name and location of the well, the date, the IDENTITY of YOUR well site leader and well team leader for each well identified, and the length of time YOU permitted the cement to set prior to a negative pressure test.

**INTERROGATORY NO. 13:**

Excluding the MACONDO WELL, please IDENTIFY and DESCRIBE in detail (including the name and location of the well, the date, and the IDENTITY of YOUR well site leader and well team leader for each well identified) any and all instances of drilling of DEEPWATER WELLS or use of MODUs in the last 10 years in which YOU performed a temporary abandonment procedure that differed from the one YOU actually submitted to, and that was approved by, the US Minerals Management Service (MMS) or Bureau of Ocean Energy Management (BOEM).

**INTERROGATORY NO. 14:**

Please IDENTIFY and DESCRIBE in detail every instance in which a temporary abandonment procedure substantially like that performed on the MACONDO WELL (including displacement to more than 2000' below mud level before negative testing) on or about April 19-20, 2010 was performed by YOU on any other DEEPWATER WELL,

A/73578677.7

including in YOUR response the name and location of the well, the date(s) the temporary abandonment procedure was performed on such well, and the names of the well site leader and well team leader for each such well identified.

**INTERROGATORY NO. 15:**

Please STATE whether, in YOUR view, the blind shear ram of the *DEEPWATER HORIZON* BLOWOUT PREVENTER failed to operate properly during the INCIDENT and DESCRIBE in detail the basis of YOUR answer.

**INTERROGATORY NO. 16:**

Please STATE the density of the base oil spacer fluid used during the MACONDO WELL cement job performed on April 19 - 20, 2010; whether it was the correct density to prevent inversion, and whether contamination occurred, and DESCRIBE in detail the basis of YOUR answer.

**INTERROGATORY NO. 17:**

Please DESCRIBE in detail why YOUR EMPLOYEES decided not to spot heavy mud (16.5 ppg or higher) in the rat hole prior to the MACONDO WELL cement job performed on April 19-20, 2010, the data upon which they based that decision, and any other basis for their decision, and IDENTIFY each PERSON who made or was involved in that decision.

**INTERROGATORY NO. 18:**

Excluding the MACONDO WELL, please IDENTIFY and DESCRIBE in detail (including the name and location of the well, the date, and the IDENTITY of YOUR well site leader and well team leader for each well identified) any and all instances in YOUR drilling of DEEPWATER WELLS or use of MODUs in the last 10 years in which YOU have not spotted heavy mud (16.5 ppg or higher) in the rat hole prior to performing a cement job on a final casing string.

16

**INTERROGATORY NO. 19:**

Please STATE whether the float collar was converted prior to the start of the MACONDO WELL cement job that was performed on April 19 - 20, 2010 and DESCRIBE in detail the reasons and basis for whatever action was taken or not taken in this respect.

**INTERROGATORY NO. 20:**

Please STATE whether, following the ninth attempt to convert the float collar, the circulating pressure of the MACONDO WELL was lower than expected, including in YOUR response the expected range of circulating pressure after conversion of the float collar and the actual circulating pressure that was obtained.

**INTERROGATORY NO. 21:**

Please STATE whether the annular preventer did or did not seal around the drill pipe, and whether the annular preventer allowed spacer to leak down below the annular preventer during the first negative pressure test of April 20, 2010, and DESCRIBE in detail the basis of YOUR answer.

**INTERROGATORY NO. 22:**

IDENTIFY which of YOUR EMPLOYEES communicated or transmitted your audit report to TRANSOCEAN, on what date, and DESCRIBE in detail what TRANSOCEAN did in response to that report, including what maintenance it performed, and any follow up YOU requested.

**INTERROGATORY NO. 23:**

Please DESCRIBE all systems, procedures, or protocols in place so that BP would be notified or otherwise made aware of any maintenance on, modifications to, or malfunctions with any part of the *DEEPWATER HORIZON* or the BOP.

**INTERROGATORY NO. 24:**

Please DESCRIBE all information and instructions provided to Mr. Kaluza regarding the role, purpose of, scope, and nature of his assignment on the *DEEPWATER HORIZON*, who provided such information or instructions, and when such information or instructions were provided.

**INTERROGATORY NO. 25**

Please IDENTIFY any internal reorganizations that occurred within BP in 2009 or 2010 that involved personnel responsible for any activities RELATING TO the MACONDO WELL or the *DEEPWATER HORIZON*.  For each reorganization, please IDENTIFY the reason for the reorganization and whose positions, titles, or job responsibilities were changed and how they were changed, including any changes in the supervisor or person to whom the individual reported.

### REQUEST FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1:**

With regard to activities involving the *DEEPWATER HORIZON* and the MACONDO WELL, please produce all DOCUMENTS and COMMUNICATIONS REGARDING, referencing or RELATING TO all participation, contribution, comment, input, planning, evaluation and roles YOU played in the design and utilization of approximately 400 barrels of lost circulation material spacer fluid "pills" as spacer during the MACONDO WELL activities of April 19 - 20, 2010.

**REQUEST FOR PRODUCTION NO. 2:**

Please produce any DOCUMENTS RELATING TO the *DEEPWATER HORIZON* or the MACONDO WELL which were considered by YOU for transmission to but were not in fact sent to the MMS or another GOVERNMENT agency between September 2009 and April

18

20, 2010.

**REQUEST FOR PRODUCTION NO. 3:**

Please produce any test conducted on the casing for the MACONDO WELL that was not sent to the MMS or another GOVERNMENT agency.

**REQUEST FOR PRODUCTION NO. 4:**

Please produce Mr. Robert Kaluza's telephone records for April 20 and 21, 2010.

**REQUEST FOR PRODUCTION NO. 5:**

Please produce Mr. Donald Vidrine's telephone records for April 20 and 21, 2010.

**REQUEST FOR PRODUCTION NO. 6:**

Please produce records of all telephone calls YOU received from anyone on board the *DEEPWATER HORIZON* on April 20, 2010.

**REQUEST FOR PRODUCTION NO. 7:**

Please produce all DOCUMENTS YOU prepared following the MACONDO WELL control event of March 8, 2010 to acknowledge or address the response time recorded during that event.

**REQUEST FOR PRODUCTION NO. 8:**

Please produce all DOCUMENTS reviewed by YOU in connection with preparation of YOUR responses to each of the Interrogatories set forth above.

**REQUEST FOR PRODUCTION NO. 9:**

Please produce any and all diagrams or depictions of the well and/or drilling process of the well that YOU used during the Marine Board of Investigation hearings.

**REQUEST FOR PRODUCTION NO. 10:**

Please produce a diagram of the mud pit layout on the *DEEPWATER HORIZON*, indicating the location of the active and reserve pits.

**REQUEST FOR PRODUCTION NO. 11:**

Please produce YOUR policies and procedures REGARDING use of the diverter system on the *DEEPWATER HORIZON* and on YOUR other owned, contracted, or leased deepwater drilling rigs.

**REQUEST FOR PRODUCTION NO. 12:**

Please produce YOUR policies and procedures for the use of the annular preventer during well control events on the *DEEPWATER HORIZON* and on YOUR other owned, contracted, or leased deepwater drilling rigs.

**REQUEST FOR PRODUCTION NO. 13:**

Please produce a copy of the flow diagram of the *DEEPWATER HORIZON* surface mud system.

**REQUEST FOR PRODUCTION NO. 14:**

Please produce all post-INCIDENT pictures, video recordings, X-rays, audio recordings, samples, measurements and/or testing results of or for the *DEEPWATER HORIZON* rig or any of its equipment or components, including but not limited to the riser, drill pipe and BOP used in connection with the MACONDO WELL.

**REQUEST FOR PRODUCTION NO. 15:**

Please produce all post-INCIDENT pictures, video recordings, X-Rays, audio recordings, samples, measurements and/or testing results of or for the MACONDO WELL or any equipment or component used in connection with the MACONDO WELL, including but not limited to the casing and casing hanger seal assembly.

**REQUEST FOR PRODUCTION NO. 16:**

Please produce all raw data, in native format, that was input to produce the final, and any earlier iteration, of the OLGA gas flow model discussed in BP's September 8, 2010

20

Accident Investigation Report.

**REQUEST FOR PRODUCTION NO. 17:**

Please produce all drafts or other iterations of the OLGA gas flow model produced in connection with the investigation that culminated in BP's September 8, 2010 Accident Investigation Report.

**REQUEST FOR PRODUCTION NO. 18:**

Please produce all DOCUMENTS, data, notes, tests, modeling studies or other information, including but not limited to drafts of same, reviewed in connection with the investigation conducted by BP that culminated in the September 8, 2010 Accident Investigation Report.

**REQUEST FOR PRODUCTION NO. 19:**

Please produce all tests, data, models, measurements, results, logs, COMMUNICATIONS, DOCUMENTS, or work, RELATED TO or done for YOU by CSI since April 20, 2010, REGARDING the MACONDO WELL, including but not limited to tests at actual measured bottom hole temperatures, tests on slurry strength, and numerical models to estimate a bottom hole circulating temperature.

**REQUEST FOR PRODUCTION NO. 20:**

Please produce all tests, data, models, measurements, results, logs, COMMUNICATIONS, DOCUMENTS, or work, RELATED TO or done for YOU since April 20, 2010, REGARDING the MACONDO WELL, including but not limited to "Well Cat" numerical model estimations or runs of bottom hole circulating temperature.

**REQUEST FOR PRODUCTION NO. 21:**

Please produce all DOCUMENTS RELATING TO the potential use of the *DEEPWATER HORIZON* in connection with activities on the Nile or Kaskida wells.

**REQUEST FOR PRODUCTION NO. 22:**

Please produce all COMMUNICATIONS CONCERNING the Kaskida or Nile wells during April 2010.

**REQUEST FOR PRODUCTION NO. 23:**

Please produce all DOCUMENTS RELATING TO the type, shipment, delivery and/or return of the centralizers ordered from WEATHERFORD for the MACONDO WELL in April 2010, and to YOUR decision REGARDING return of these centralizers or their use on rigs other than *DEEPWATER HORIZON*.

**REQUEST FOR PRODUCTION NO. 24:**

Please produce all DOCUMENTS RELATING TO the use or potential use of Form-a-Set, Form-a-Squeeze, or any combination of the two, as a spacer in any well, including DOCUMENTS discussing any benefits or risks associated with such use.

**REQUEST FOR PRODUCTION NO. 25:**

Please produce all DOCUMENTS RELATING TO the required method of disposal of unused Form-a-Set or Form-A-Squeeze material.

**REQUEST FOR PRODUCTION NO. 26:**

Please produce all DOCUMENTS, COMMUNICATIONS or directions REGARDING the use of the mud-gas separator on any rig operated by YOU in the event of gas flow from a well.

**REQUEST FOR PRODUCTION NO. 27:**

Please produce all DOCUMENTS or COMMUNICATIONS RELATING TO the potential for cement contamination in the MACONDO WELL.

**REQUEST FOR PRODUCTION NO. 28:**

Please produce all DOCUMENTS RELATING TO THE COMMUNICATIONS referenced in Interrogatory Nos. 1 and 2.

Dated:  January 7, 2011

Respectfully submitted,

_____ /s/ Ky E. Kirby_____

Ky E. Kirby
Ky.Kirby@bingham.com
Warren Anthony Fitch
Tony.Fitch@bingham.com
Michael B. Wigmore
Michael.Wigmore@bingham.com
BINGHAM MCCUTCHEN LLP
2020 K Street, NW
Washington, DC 20006-1806
Telephone (202) 373-6000
Facsimile (202) 373-6001

James J. Dragna
Jim.Dragna@bingham.com
BINGHAM MCCUTCHEN LLP
355 South Grand Avenue
Suite 4400
Los Angeles, California 90071-3106
Telephone (213) 680-6436
Facsimile (213) 680-8636

Deborah D. Kuchler, T.A. (La. Bar No. 17013)
Janika Polk (La. Bar No. 27608)
Robert Guidry (La. Bar No. 28064)
KUCHLER POLK SCHELL
WEINER & RICHESON, LLC
1615 Poydras Street, Suite 1300
New Orleans, LA  70112

**ATTORNEYS FOR ANADARKO
PETROLEUM CORPORATION**

A/73578677.7

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Defendant ANADARKO PETROLEUM CORPORATION'S Interrogatories and Requests for Production of Documents to Defendants BP AMERICA INC., BP AMERICA PRODUCTION COMPANY, BP EXPLORATION & PRODUCTION INC., and B.P., P.L.C., have been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, on this 7th day of January, 2011.

_____/s/  Ky E. Kirby_____

24



35270990

Jan 7 2011
8:27PM

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "*DEEPWATER HORIZON*" in the GULF OF MEXICO, on APRIL 20, 2010 | * | **MDL NO. 2179** |
| | * | **SECTION: J** |
| | * | **JUDGE BARBIER** |

**THIS DOCUMENT RELATES TO ALL CASES**

---

**DEFENDANT MOEX OFFSHORE 2007 LLC'S INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS TO BP AMERICA INC., BP AMERICA PRODUCTION COMPANY, BP EXPLORATION AND PRODUCTION INC., AND B.P. P.L.C. (COLLECTIVELY, "BP")**

Pursuant to Rules 26, 33 and 34 of the Federal Rules of Civil Procedure, Defendant MOEX OFFSHORE 2007 LLC ("MOEX OFFSHORE"), through undersigned Counsel, requests that Defendant BP answer the following interrogatories under oath and produce the documents specified hereinafter, in accordance with the following Instructions and Definitions, within thirty (30) days hereof, at the offices of Bingham McCutchen LLP, 355 South Grand Avenue, Suite 4400, Los Angeles, California 90071-3106, or at such other time and place as may be agreed upon by counsel for the aforesaid parties.

**INSTRUCTIONS**

(a) Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, these interrogatories and requests for production are continuing in nature so that if, after answering, YOU acquire additional responsive knowledge or information or determine that an answer YOU provided was false, incomplete, or misleading, YOU are to serve supplemental or amended answers as soon as reasonably possible after acquiring such additional knowledge or

information.    Furthermore, DOCUMENTS or ELECTRONICALLY STORED INFORMATION ("ESI") prepared prior to or subsequent to the period covered by these interrogatories, but which nonetheless RELATE or REFER thereto, are to be included in YOUR response.

(b)    As defined below, YOU are to produce all DOCUMENTS in YOUR possession, custody or CONTROL.    Production of DOCUMENTS shall be in conformance with all procedures and formats set forth by the Court.

(c)    All ESI responses to these discovery requests shall be produced in accordance with Pretrial Order No. 16.

(d)    All produced DOCUMENTS shall have a legible, unique page identifier ("Bates Number") electronically "burned" onto each image at a location that does not obliterate, conceal, or interfere with any information from the source DOCUMENT.  No other legend or stamp will be placed on the DOCUMENT image other than a confidentiality legend (where applicable) redactions (consistent with the Stipulated Protective Order in this matter, or any other protective orders agreed to in the future), and the Bates Number identified above. The confidential legend shall be "burned" onto the DOCUMENT'S image at a location that does not obliterate or obscure any information from the source DOCUMENT.  WITH RESPECT TO the identification of files produced in their native format, the parties shall confer on an appropriate method for applying a unique identifier to each file produced.

(e)    Each page image file shall be named with the unique Bates Number of the page of DOCUMENT, followed by the extension ".TIF."  In the event the Bates Number contains a symbol and/or character that cannot be included in a file name, the symbol and/or character will be omitted from the file name.

(f)    If YOU refuse to respond to any of these interrogatories or requests for

2

production based on a claim of privilege, YOU shall provide a "Privilege Log" that complies with the provisions of Pretrial Order No. 14.

(g)     If YOU or any of YOUR attorneys, agents, or representatives at any time had possession or CONTROL of a DOCUMENT requested and that DOCUMENT has been lost, destroyed, or purged or is not presently in YOUR possession, custody, or CONTROL, IDENTIFY the DOCUMENT and DESCRIBE the circumstances surrounding the loss, destruction, purge, or separation from YOUR possession, custody, or CONTROL, indicating the dates that those circumstances occurred.

(h)     If YOU allege that any request is in any manner ambiguous, YOU are instructed to DESCRIBE in detail the reasons for YOUR allegations, including but not limited to, each interpretation to which YOU allege the specific request for discovery is subject. Notwithstanding any of the foregoing, YOU are instructed to respond, to the best of YOUR ability, to the request for production and produce the DOCUMENTS requested.

## **DEFINITIONS**

As used herein, the following terms are defined as follows:

(i)     "*DEEPWATER HORIZON*" means, without limitation, the mobile offshore drilling unit (MODU) of that name involved in the drilling of the MACONDO WELL, or any component thereof, as well as any vessel, vehicle, aircraft, or other equipment used in connection with the process of drilling, developing, exploring for and/or producing oil and gas resources.

(j)     "MACONDO WELL" means, without limitation, the Macondo Prospect (Mississippi Canyon Block 252, abbreviated MC252) an oil and gas prospect in the Gulf of Mexico, off the coast of Louisiana. The prospect was the site of the *DEEPWATER HORIZON* drilling rig explosion in April 20, 2010.

3

(k)     "DEEPWATER WELL" means, without limitation, a well drilled in excess of 5000' water depth.

(l)     "INCIDENT" means, without limitation, the loss of control of the MACONDO WELL leading to the explosion that occurred on the *DEEPWATER HORIZON* on or around April 20, 2010.

(m)     "BOP" or "BLOWOUT PREVENTER" means, without limitation, the large valve device(s) designed and used to ensure safety through the sealing, controlling, and monitoring of oil and gas wells including the associated, monitoring, warning, electronic, and hydraulic systems.

(n)     "*DEEPWATER HORIZON* BLOWOUT PREVENTER" means, without limitation, the large valve device(s) specifically created by CAMERON to ensure safety through the sealing, controlling, and monitoring of the MACONDO WELL including the associated, monitoring, warning, electronic, and hydraulic systems for the *DEEPWATER HORIZON* rig.

(o)     "YOU," "YOUR," or "BP," means, without limitation, BP EXPLORATION AND PRODUCTION, INC., BP AMERICA, INC., BP AMERICA PRODUCTION COMPANY, and BP, P.L.C., including its predecessors, successors, subsidiaries, departments, divisions, attorneys, accountants, and current and former directors, officers, EMPLOYEES, agents, representatives and PERSONS acting on its behalf.

(p)     "ANADARKO" means, without limitation, ANADARKO PETROLEUM CORPORATION and ANADARKO E&P COMPANY, including its predecessors, successors, subsidiaries, departments, divisions, attorneys, accountants, and current and former directors, officers, EMPLOYEES, agents, representatives and PERSONS acting on its behalf.

(q)     "TRANSOCEAN" means, without limitation, TRITON ASSET LEASING

4

GMBH, TRANSOCEAN HOLDINGS LLC, TRANSOCEAN OFFSHORE DEEPWATER DRILLING INC., and TRANSOCEAN DEEPWATER INC., as owners, managing owners, owners pro-hac vice, and/or operators of the MODU *DEEPWATER HORIZON*, including its predecessors, successors, subsidiaries, departments, divisions, attorneys, accountants, and current and former directors, officers, EMPLOYEES, agents, representatives and PERSONS acting on its behalf.

(r)　　"CAMERON" means, without limitation, CAMERON INTERNATIONAL, CAMERON INTERNATIONAL CORPORATION, and COOPER CAMERON CORPORATION, including its predecessors, successors, subsidiaries, departments, divisions, attorneys, accountants, and current and former directors, officers, EMPLOYEES, agents, representatives and PERSONS acting on its behalf.

(s)　　"MOEX OFFSHORE" means, without limitation, MOEX OFFSHORE 2007, LLC including its predecessors, successors, subsidiaries, departments, divisions, attorneys, accountants, and current and former directors, officers, EMPLOYEES, agents, representatives and PERSONS acting on its behalf.

(t)　　"MOEX USA" means, without limitation, MOEX USA CORPORATION including its predecessors, successors, subsidiaries, departments, divisions, attorneys, accountants, and current and former directors, officers, EMPLOYEES, agents, representatives and PERSONS acting on its behalf.

(u)　　"HALLIBURTON" means, without limitation, HALLIBURTON ENERGY SERVICES, including its predecessors, successor, subsidiaries, departments, divisions, attorneys, accountants, and current and former directors, officers, EMPLOYEES, agents, representative and PERSON acting on its behalf.

(v)　　"PLAINTIFFS" include all "PERSONS" as defined herein who have filed or

5

will file a claim in the Multi-District Litigation entitled "In Re: Oil Spill by the Oil Rig "*DEEPWATER HORIZON*" in the Gulf of Mexico, on April 20, 2010" bearing Civil Action No. MDL No. 2179 pending in the Eastern District of Louisiana, as well as any "PERSON" who has or may file a claim in the Limitation of Liability action filed in the Southern District of Texas bearing Civil Action No. 1001721 and subsequently transferred to the Eastern District of Louisiana.

(w)     "PERSON" means, without limitation, any and every natural individual, each and every association, partnership, joint venture, corporation, professional corporation, trust and any and every other identifiable entity.

(x)     "EMPLOYEE" means, without limitation, any current or former officer, director, executive, manager, secretary, staff member, messenger or other PERSON who is or was employed or subcontracted by YOU or has acted on YOUR behalf.

(y)     "COMMUNICATION" means, without limitation, any writing transmitted between PERSONS or any oral conversation of any kind or character, including, by way of example and without limitation, personal conversations, telephone conversations, letters, MEETINGS, memoranda, telegraphic, telex, COMPUTER and facsimile COMMUNICATIONS or transmittals of DOCUMENTS, ESI (as defined in section (bb)) and all DOCUMENTS CONCERNING such writings or oral conversations. "COMMUNICATION" as used herein specifically includes internal writings, oral conversations or MEETINGS among the officers, board members, EMPLOYEES or other representatives of any defendant.

(z)     "MEETING" means, without limitation, any assembly, convocation, encounter or contemporaneous presence of two or more PERSONS for any purpose, whether planned or scheduled in advance, including written exchanges through internet/web based chat, including

6

AOL Instant Messenger, or similar programs, electronic "bulletin board" programs, or internet/web based video chat, including Skype, or similar programs.

(aa)    "DOCUMENT" means, without limitation, the original and all non-identical copies of all writings, including any and all drafts, alterations and modifications, changes and amendments of any of the foregoing whether handwritten, typed, printed or otherwise produced in any format including, but not limited to, paper or ESI. This definition also includes, without limitation, books, records, manuals, statements, minutes, letters, correspondence, memoranda, legal pleadings, calendars, diaries, travel records, lists, tax returns, schedules, press releases, directives, agreements, contracts, print-outs, studies, summaries, records of telephone conversations, telegrams, notes, reports, compilations, notebooks, work papers, graphs, graphics, transcripts, charts, blueprints, timelines, pamphlets, brochures, circulars, manuals, instructions, ledgers, drawings, sketches, photographs, videotapes, film and sound reproductions, COMPUTER discs (including but not limited to, CDs, CD-Rs, DVDs, DVD-Rest, floppy discs, hard discs and hard drives), flash drives, pen drives, thumb drives, programming instructions, sales, advertising and promotional literature, agreements or minutes of MEETINGS, telephone conversations or other conversation or COMMUNICATION in YOUR possession, custody or CONTROL, or in the possession, custody or CONTROL of YOUR predecessors, successors, officers, directors, shareholders, EMPLOYEES, agents, representatives and attorneys. This definition also includes non-printed matter such as voice records and reproductions, film impressions, photographs, videos, negatives, slides, microfilms, microfiches, e-mail, and other things that DOCUMENT or record ideas, words or impressions.  The term "DOCUMENT" further includes all punch cards, tapes, disks, or records used in electronic data processing, together with the programming instructions and other written materials necessary to understand or use such punch cards, tapes, disks or

7

other recordings, and further includes ESI (as defined in section (bb)) data or data compilation in electronic or other form that can be printed through proper programming or decoding of the electronic or mechanical data storage facility, including metadata.

(bb)  "ELECTRONICALLY STORED INFORMATION" or "ESI" means the original (or identical duplicate when the original is not available), and any non-identical copies whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings and data compilations in any form, and of every kind and description whether inscribed by mechanical, facsimile, electronic, magnetic, digital or other means. ESI includes, by way of example only, COMPUTER programs (whether private, commercial, or work-in progress), programming notes or instructions, activity listings of electronic mail receipts and transmittals, output resulting from the use of any software program, including word processing DOCUMENTS, spreadsheets, database files, charts, graphs and outlines, electronic mail displaying full email aliases (not merely "display names"), electronic calendars, IM logs, PBX logs, DOCUMENT management system data, operating systems, all metadata, source code of all types, peripheral drivers, PIF files, batch files, ASCII files, and any and all miscellaneous files and file fragments, regardless of the media on which they reside and regardless of whether said ESI consists in an active file, deleted file or fragment.  ESI includes any and all items stored on COMPUTER memories, hard disks, floppy disks, CD-ROMs, removable media such as Zip disks, Jaz cartridges, Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, COMPUTER chips, including, EPROM, PROM RAM and ROM, on or in any other vehicle for digital data storage and transmittal. The term ESI also includes the file, folder tabs and containers and labels appended to, or associated with, any physical storage device associated with each original and copy.

8

(cc)     "COMPUTER" means, without limitation, all devices utilizing microchips to facilitate processing, analysis, or storage of data, including micro COMPUTERS (also known as personal COMPUTERS), laptop COMPUTERS, portable COMPUTERS, notebook COMPUTERS, palmtop COMPUTERS (also known as personal digital assistants or PDA's), iPads, mini COMPUTERS and mainframe COMPUTERS.

(dd)     "CONTROL" means, without limitation, the ownership, possession, or custody of the DOCUMENT, or the right to secure the DOCUMENT or copy thereof from any PERSON or public and private entity having physical possession thereof.

(ee)     "RELATING TO," "RELATED TO," "REGARDING," "CONCERNING," or "WITH RESPECT TO" means, without limitation, the following concepts: discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting or otherwise involving, in whole or in part.

(ff)     "IDENTIFY" and "IDENTITY" when used in reference to a PERSON means to STATE the PERSON'S:

    (1)     Full name;

    (2)     Present or last known employment position, including the employer name;

    (3)     Job title and/or description; and

    (4)     Contact information.

(gg)     "IDENTIFY" and "IDENTITY" when used in reference to a DOCUMENT or ESI means to STATE:

    (1)     The type of DOCUMENT or ESI;

    (2)     Its date;

(3)      Its author(s) and author(s) address(es), including every author involved, whether or not such PERSON signed the DOCUMENT;

(4)      Its subject matter or response;

(5)      Its present location or custodian;

(6)      Every PERSON to whom such DOCUMENT or ESI, or any copy thereof, was given or sent;

(7)      Every PERSON known to YOU to have received the DOCUMENT or information, or to have learned the substance of its contents; and

(8)      If any such DOCUMENT or ESI was, but is no longer, in YOUR possession or subject to YOUR CONTROL, STATE what disposition was made of it.

(hh)      "IDENTIFY" and "IDENTITY" when used WITH RESPECT TO a COMMUNICATION other than a writing means to STATE:

(1)      The full name of any PERSON who was a party to the COMMUNICATION;

(2)      The type of COMMUNICATION, e.g., telephone conversation, letter, telegram, teletype, telecopy, written memorandum, face-to-face conversation, or any other form; and The full name of any PERSONS participating therein, along with the date, duration, location(s) and the substance of the COMMUNICATION.

(ii)      "DESCRIBE" means, in the case of an act, event, transaction, relationship, thing or occurrence, to IDENTIFY dates, places, PERSONS involved, and means employed; IDENTIFY YOUR sources of information CONCERNING such act, event, transaction, thing or occurrence, including the date YOU received such information; IDENTIFY each PERSON

10

having knowledge of such act, event, transaction, thing or occurrence; and IDENTIFY each COMMUNICATION and each DOCUMENT RELATING TO such act, event, transaction, thing or occurrence.

(jj)     "STATE" means, without limitation, to set forth in full and complete detail all knowledge and information in YOUR possession, custody or CONTROL RELATING TO the subject matter of the interrogatory, including without limitation the source and basis of YOUR knowledge and information if not otherwise evident from YOUR answer to the interrogatory and the IDENTITY of each DOCUMENT and each COMMUNICATION on which YOU rely to any extent in making YOUR answer.

(kk)    When an interrogatory calls for YOUR or any other PERSON'S "basis" or "bases," or "sources," "sources of knowledge," "sources of information," or "source(s) of information or belief," YOU are to STATE when, where, and the IDENTITY of the PERSON from whom the information was learned or received, and if by means of one or more DOCUMENTS or COMMUNICATIONS, the IDENTITY of each such DOCUMENT and COMMUNICATION.

(ll)     "And" as well as "or" should be construed either disjunctively or conjunctively so that each request is given its broadest possible application.  If, for example, a request calls for information about "A" or "B," YOU should produce all information about A and all information about B, as well as all information about collectively A and B.  In other words, both "and" and "or" should be read as "and/or."

(mm)  "Any" should be construed, when possible, to mean "any and all."

(nn)    "Including" is used to emphasize the type of information requested and should not be construed as limiting the interrogatory or requests for production in any way. "Including" should be read as "including, but not limited to."

11

(oo)   "Each" should be construed to include the word "every," and "every" should be construed to include the word "each."

(pp)   A plural noun or pronoun should be construed as a singular noun, and a singular noun should be construed as a plural noun or pronoun, so that each request should be given its broadest possible application.

(qq)   The use of a verb in any tense should be construed to be the use of a verb in all other tenses so that each request should be given its broadest possible applications.

(rr)   Words of one gender shall be construed to include words of all genders so that each request in the request for production of DOCUMENTS shall be given its broadest possible application.

(ss)   Definitions provided herein apply to any grammatical variance of the term or phrase defined.

## INTERROGATORIES

**INTERROGATORY NO. 1:**

Please IDENTIFY every BP EMPLOYEE or other PERSON associated with BP who concluded that the second, or any subsequent, negative pressure test at the MACONDO WELL on April 20, 2010, was "successful" and DESCRIBE in detail each and every reason for such conclusion.

**INTERROGATORY NO. 2:**

Please IDENTIFY every BP EMPLOYEE or other PERSON associated with BP who concluded that the difference in pressure of 1400 psi between the drill pipe and the *DEEPWATER HORIZON'S* BLOWOUT PREVENTER'S kill line during the second negative pressure test on April 20, 2010 was the result of "bladder effect."

**INTERROGATORY NO. 3:**

Please IDENTIFY and DESCRIBE every policy or standard practice existing at BP prior to April 21, 2010 that ensured that any and all of BP's decisions about drilling operations or temporary abandonment of deep sea wells did not favor cost or schedule considerations over potential risks to safety.

**INTERROGATORY NO. 4:**

Please IDENTIFY who at BP made the decision to displace to seawater at 3,367' below mud level prior to performing a negative pressure test on the MACONDO WELL, and DESCRIBE in detail the basis of his/her/their decision.

**INTERROGATORY NO.  5:**

Please IDENTIFY all PERSONS with whom Robert Kaluza or Donald Vidrine spoke by telephone on April 20 and 21, 2010 REGARDING conditions on the *DEEPWATER HORIZON* and DESCRIBE in detail the time and the substance of each such conversation.

**INTERROGATORY NO. 6:**

Please STATE whether YOU believe that the initial flow of hydrocarbons into the MACONDO WELL on April 20, 2010 did or did not come through the shoe track barrier and DESCRIBE in detail the basis for YOUR belief.

**INTERROGATORY NO. 7:**

Please STATE whether YOU believe there was hydrocarbon flow through the seal assembly during the INCIDENT on April 20, 2010, and DESCRIBE in detail the basis for YOUR belief.

**INTERROGATORY NO. 8:**

Please STATE why YOU did not perform a float collar test after cementing to determine or understand whether there was a barrier, to hydrocarbons flow up the wellbore,

13

and DESCRIBE what procedure YOU were following (if CFR 250.404-5, please STATE what part of this regulation YOU feel YOU fulfilled and how).

**INTERROGATORY NO. 9:**

Please DESCRIBE in detail why there was no monitoring of the mud pits on the *DEEPWATER HORIZON* on April 20, 2010 during all or any part of the period of time from 13:28 hours (when the offloading to the supply vessel *M/V Damon Bankston* began) to 21:10 hours (when the returns were routed overboard), and specifically IDENTIFY the period of time during which monitoring did not occur.

**INTERROGATORY NO. 10:**

Please DESCRIBE each and every step taken to control or shut in the MACONDO WELL on April 20, 2010, giving the time of day each such step was taken and by whom.

**INTERROGATORY NO. 11:**

Please IDENTIFY and DESCRIBE in detail YOUR well control and well shut-in protocols and DESCRIBE in detail what those protocols state REGARDING how to respond to loss of well control.

**INTERROGATORY NO. 12:**

Please IDENTIFY every PERSON who made the decision on April 20, 2010 to divert flow from the MACONDO WELL through the mud gas separator rather than the starboard diverter and DESCRIBE in detail the basis for that decision.

**INTERROGATORY NO. 13:**

Please IDENTIFY who, if anyone, attempted to operate the emergency disconnect system on April 20, 2010, prior to the first explosion on the *DEEPWATER HORIZON*, or after, and DESCRIBE in detail the reasons for doing so or not doing so.

**INTERROGATORY NO. 14:**

Please IDENTIFY which of YOUR EMPLOYEES were informed of or involved with planning for temporary-well abandonment procedures for the MACONDO WELL from March 1 through April 20, 2010, DESCRIBE in detail their roles in the planning, and DESCRIBE in detail any changes, recommendations or misgivings about those procedures that were communicated by or to YOUR EMPLOYEES, and by and to whom.

**INTERROGATORY NO. 15:**

Beginning with the MACONDO WELL temporary abandonment procedures, plan and/or steps discussed by YOUR EMPLOYEES by email or otherwise on April 12, 2010, DESCRIBE in detail each temporary abandonment procedure, plan and/or step YOU decided upon or changed between April 12 and the April 20th explosion on the *DEEPWATER HORIZON*, and the specific reasons for and basis on which YOU changed or revised each such procedure, plan and/or step.

**INTERROGATORY NO. 16:**

Please DESCRIBE in detail all "kicks" experienced on the *DEEPWATER HORIZON* or with the MACONDO WELL from February 1, 2010 through April 20, 2010; IDENTIFY each PERSON who experienced, monitored and/or reported such kicks; and DESCRIBE in detail all actions taken in response to such kicks.

**INTERROGATORY NO. 17:**

Please STATE whether it has been YOUR policy or standard procedure since 2000 that closing the annular preventer should be the first step taken during well control events on the *DEEPWATER HORIZON* and on the other deepwater drilling rigs leased, contracted, or used by YOU and, if so, DESCRIBE in detail the basis for the policy and/or procedure.

**INTERROGATORY NO. 18:**

Please DESCRIBE in detail all follow-up steps that YOU took following YOUR 2009 audit of the *DEEPWATER HORIZON* (including the *DEEPWATER HORIZON* BLOWOUT PREVENTER), that showed TRANSOCEAN was behind on maintenance of certain items on the *DEEPWATER HORIZON* and that the BOP had not been inspected or certified for a number of years, to ensure that the *DEEPWATER HORIZON* BLOWOUT PREVENTER maintenance had been brought up-to-date and was appropriate.

**INTERROGATORY NO. 19:**

Please IDENTIFY the companies that provided service for any COMMUNICATIONS devices, including but not limited to telephones, cellular phones, smart phones, and Blackberries, that were in the possession of any PERSONS aboard the *DEEPWATER HORIZON* or the *M/V Damon Bankston* on April 20 and 21, 2010, and the telephone numbers for each such device.

**INTERROGATORY NO. 20:**

Please IDENTIFY, for the month of April 2010, the type of device by which any of YOUR EMPLOYEES on the *DEEPWATER HORIZON* communicated with anyone on shore (wireless phone, satellite phone, Blackberries, or any similar devices), the telephone number of that device, and the COMMUNICATIONS provider for that telephone number, and the PERSON to whom that device belonged or was assigned.

**INTERROGATORY NO. 21:**

Did YOU confirm that all relevant lab test results had been obtained and considered by the HALLIBURTON in-house cementing engineer before cement placement proceeded at the MACONDO WELL, and if so, DESCRIBE in detail how you performed that confirmation in-

cluding the IDENTITY of all COMMUNICATIONS or DOCUMENTS RELATED TO such confirmation.

**INTERROGATORY NO. 22:**

DESCRIBE in detail what quality assurance YOU did to ensure that potential flaws and weaknesses in the cement slurry design for the MACONDO WELL were identified.

**INTERROGATORY NO. 23:**

DESCRIBE in detail what lab tests of the cement YOU reviewed and relied upon for the MACONDO WELL, and DESCRIBE in detail why you did not ask for further tests.

**INTERROGATORY NO. 24:**

DESCRIBE in detail why YOUR MACONDO WELL team allowed the cement placement to proceed on April 19 and 20, 2010 after your review of lab tests and results.

**REQUEST FOR PRODUCTION OF DOCUMENTS**

**REQUEST FOR PRODUCTION NO. 1:**

Please produce all DOCUMENTS reviewed by YOU in connection with preparation of YOUR responses to each of the Interrogatories set forth above.

**REQUEST FOR PRODUCTION NO. 2:**

Please produce all DOCUMENTS RELATING TO required or recommended practices to prevent or minimize pollution during the course of drilling or operating a well.

**REQUEST FOR PRODUCTION NO. 3:**

Please produce all DOCUMENTS RELATING TO planned activities, and activities undertaken, on the *DEEPWATER HORIZON* during the period from April 14 through April 25, 2010.

**REQUEST FOR PRODUCTION NO. 4:**

Please produce all DOCUMENTS reflecting, or considered by YOU in connection

17

with, pre-cement job evaluation of the design and volume of cement to be used for the final production casing string.

**REQUEST FOR PRODUCTION NO. 5:**

Please produce all DOCUMENTS reflecting, or considered by YOU in connection with, pre-cement job evaluation of the potential for contamination of the cement job for the final production casing string.

**REQUEST FOR PRODUCTION NO. 6:**

Please produce all DOCUMENTS reflecting, or considered by YOU in connection with, pre-cement job evaluation of the amount of time that should elapse in order to permit the cement job on the final casing string to strengthen before commencing further operations on the MACONDO WELL.

**REQUEST FOR PRODUCTION NO. 7:**

Please produce all DOCUMENTS reflecting policies, practices or procedures for when (and under what circumstances) and how a float collar should be tested to determine whether it has converted properly or has been damaged during conversion attempts.

**REQUEST FOR PRODUCTION NO. 8:**

WITH RESPECT TO the MACONDO WELL, please produce all DOCUMENTS reflecting discussion, or evaluation, of whether there was, or would be, sufficient differential pressure between the cement in the final casing string and the fluid in the annulus to determine whether the float collar was properly converted.

**REQUEST FOR PRODUCTION NO. 9:**

Please produce all DOCUMENTS reflecting policies, practices or procedures REGARDING displacement of kill weight mud to seawater before a well has successfully passed a negative test.

**REQUEST FOR PRODUCTION NO. 10:**

Please produce all DOCUMENTS reflecting policies, practices or procedures in connection with, or concerns or issues REGARDING, the conduct of simultaneous activities on a rig, MODU or platform that might interfere with or prevent monitoring of fluid gains or losses in a well.

**REQUEST FOR PRODUCTION NO. 11:**

Please produce all of YOUR temporary abandonment plans, and drafts of such plans, for any DEEPWATER WELL in the Gulf of Mexico during the last ten years.

**REQUEST FOR PRODUCTION NO. 12:**

Please produce all DOCUMENTS discussing, or reflecting, evaluation by YOU of a change from a long string design to a tie-back with liner during the course of drilling any DEEPWATER WELL in the Gulf of Mexico during the last ten years.

**REQUEST FOR PRODUCTION NO. 13:**

Please produce all DOCUMENTS discussing, reflecting or RELATING TO YOUR decision not to conduct a cement bond log for the MACONDO WELL and DOCUMENTS RELATING TO or IDENTIFYING any PERSONS involved in that decision

**REQUEST FOR PRODUCTION NO. 14:**

Please produce all DOCUMENTS evidencing or RELATING TO YOUR internal rules and procedures for deepwater drilling of wells.

**REQUEST FOR PRODUCTION NO. 15:**

Please produce all DOCUMENTS, including invoices, RELATING TO YOUR response activities RELATED TO the spill resulting from the INCIDENT.

**REQUEST FOR PRODUCTION NO. 16:**

Please produce all DOCUMENTS RELATING TO training of YOUR engineers who design DEEPWATER WELLS, including but not limited to training required <u>before</u> being hired by BP as well as training given by or at BP after hire.

**REQUEST FOR PRODUCTION NO. 17:**

Please produce all DOCUMENTS RELATING TO training of YOUR personnel who act as well site leaders on DEEPWATER WELLS, including but not limited to training required before being hired by BP as well as training given by or at BP after hire.

**REQUEST FOR PRODUCTION NO. 18:**

Please produce all DOCUMENTS RELATING TO training of YOUR personnel who act as well team leaders on DEEPWATER WELLS, including but not limited to training required before being hired by BP as well as training given by or at BP after hire.

**REQUEST FOR PRODUCTION NO. 19:**

Please produce all DOCUMENTS RELATING TO the qualifications of YOUR personnel who designed the MACONDO WELL or modified its design during drilling, or acted as well site leaders or well team leaders.

**REQUEST FOR PRODUCTION NO. 20:**

Please produce all DOCUMENTS RELATING TO the specific training of YOUR personnel, before or after hire by BP, who designed the MACONDO WELL or modified its design during drilling, or acted as well site leaders or well team leaders.

**REQUEST FOR PRODUCTION NO. 21:**

Please produce all telephone logs or records that YOU have, or have obtained from the companies that provided service, for the month of April 2010 that relate to any COMMUNICATIONS devices used by any of YOUR EMPLOYEE on the *DEEPWATER*

20

*HORIZON* to communicate with anyone on shore (wireless phone, satellite phone, Blackberries, or any similar devices).

**REQUEST FOR PRODUCTION NO. 22:**

Please produce all DOCUMENTS that are or RELATE TO internal discussions (including emails) about what YOU would be or would not be telling MOEX OFFSHORE, MOEX USA or ANADARKO about the drilling process, conditions, changes, progress, or problems at the MACONDO WELL, prior to May 1, 2010.

**REQUEST FOR PRODUCTION NO. 23:**

Please produce all DOCUMENTS that are or RELATE TO "stop the job" incidents called for by BP EMPLOYEES or by other workers on MODU rigs used, leased, or contracted by BP that RELATED TO well kicks, to movement of mud on the rig (either between pits or overboard).

**REQUEST FOR PRODUCTION NO. 24:**

WITH RESPECT TO YOUR December 8, 2010 response to PLAINTIFFS' Interrogatory No. 29, please produce all DOCUMENTS that are or RELATE TO internal discussions (including emails) YOU had REGARDING "BLOWOUT PREVENTER[s] that did not seal a well as intended" (whether RELATING TO the Ixtoc I well, the Silvertip well, the AC 901 well, the WR 543 well, or any other well that had issues with BLOWOUT PREVENTERS).

**REQUEST FOR PRODUCTION NO. 25:**

Please produce all DOCUMENTS that RELATE TO other DEEPWATER WELLS drilled by YOU in the last 10 years in which YOU displaced to seawater before locking down the hanger.

21

**REQUEST FOR PRODUCTION NO. 26:**

Please produce all DOCUMENTS that are or RELATE TO approval YOU obtained from MMS to displace to seawater and set a cement plug at about 8367 feet (+/-3300' BML) WITH RESPECT TO the MACONDO WELL.

**REQUEST FOR PRODUCTION NO. 27:**

Please produce all DOCUMENTS that are or RELATE TO requests YOU have made to MMS to displace to seawater and set a cement plug at +/-3300 feet BML WITH RESPECT TO any DEEPWATER WELL YOU have drilled other than the MACONDO WELL, including but not limited to any denials of such requests.

**REQUEST FOR PRODUCTION NO. 28:**

Please produce all DOCUMENTS pertaining to who has authority on YOUR MODU operations to deviate from YOUR written drilling plans or procedures.

**REQUEST FOR PRODUCTION NO. 29:**

Please produce any and all interview notes reflecting statements by Mark Hafle following the INCIDENT, including but not limited to interviews conducted by or on behalf of the BP investigation team.

///

///

///

///

///

///

///

///

**REQUEST FOR PRODUCTION NO. 30:**

To the extent not previously produced, please produce any DOCUMENTS RELATING TO any activities at or affecting the MACONDO WELL, including but not limited to, any investigations; observations; instructions;  assessments; development of protocols, procedures, or "lessons learned" analyses; audits; self-evaluations; summaries of activities, logs, and guidance documents.

Dated:  January 7, 2011

Respectfully submitted,


_____/s/ Ky E. Kirby_____

Ky E. Kirby
Ky.Kirby@bingham.com
Warren Anthony Fitch
Tony.Fitch@bingham.com
Michael B. Wigmore
Michael.Wigmore@bingham.com
BINGHAM MCCUTCHEN LLP
2020 K Street, NW
Washington, DC 20006-1806
Telephone (202) 373-6000
Facsimile (202) 373-6001

James J. Dragna
Jim.Dragna@bingham.com
BINGHAM MCCUTCHEN LLP
355 South Grand Avenue
Suite 4400
Los Angeles, California 90071-3106
Telephone (213) 680-6436
Facsimile (213) 680-8636

23

Deborah D. Kuchler, T.A. (La. Bar No. 17013)
Janika Polk (La. Bar No. 27608)
Robert Guidry (La. Bar No. 28064)
KUCHLER POLK SCHELL
WEINER & RICHESON, LLC
1615 Poydras Street, Suite 1300
New Orleans, LA  70112

**ATTORNEYS FOR MOEX
OFFSHORE 2007 LLC**

24

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Defendant MOEX OFFSHORE 2007 LLC'S Interrogatories and Requests for Production of Documents to Defendants BP AMERICA INC., BP AMERICA PRODUCTION COMPANY, BP EXPLORATION & PRODUCTION INC., and B.P., P.L.C., have been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, on this 7th day of January, 2011.

_____/s/  Ky E. Kirby_____

A/73621580.2

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE:  OIL SPILL by the OIL RIG "*DEEPWATER HORIZON*" in the GULF OF MEXICO, on APRIL 20, 2010 | MDL NO. 2179 |
| | SECTION: J |
| | JUDGE BARBIER |
| | MAG. JUDGE SHUSHAN |

**THIS DOCUMENT RELATES TO ALL CASES**

---

**DEFENDANT ANADARKO E&P COMPANY LP'S FIRST REQUESTS FOR
ADMISSIONS TO BP AMERICA INC., BP AMERICA PRODUCTION COMPANY,
BP EXPLORATION AND PRODUCTION INC., B.P. P.L.C.
(COLLECTIVELY, "BP")**

Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure, Defendant Anadarko E&P Company LP ("AE&P") through undersigned Counsel, requests that Defendant BP answer the following Requests for Admission completely and under oath, within thirty (30) days hereof, at the offices of Bingham McCutchen LLP, 355 South Grand Avenue, Suite 4400, Los Angeles, California 90071-3106, or at such other time and place as may be agreed upon by counsel for the aforesaid parties.

**<u>DEFINITIONS</u>**

(a)     "MACONDO WELL" means that exploratory well being drilled within the MACONDO PROSPECT pursuant to Lease OCS-G 32306.

(b)     "MACONDO PROSPECT" means the oil and gas prospect located within Mississippi Canyon Block 252, abbreviated MC252 in the Gulf of Mexico, off the coast of Louisiana, subject to Lease OCS-G 32306.

(c)      "YOU," "YOUR," or "BP," means, without limitation, BP Exploration and Production, Inc., BP America, Inc., BP America Production Company, and  BP, P.L.C., including its predecessors, successors, subsidiaries, departments, divisions, attorneys, accountants, and current and former directors, officers, EMPLOYEES, agents, representatives and PERSONS acting on its behalf.

(d)      "PERSON" means, without limitation, any and every natural individual, each and every association, partnership, joint venture, corporation, professional corporation, trust and any and every other identifiable entity.

(e)      "EMPLOYEE" means, without limitation, any current or former officer, director, executive, manager, secretary, staff member, messenger or other PERSON who is or was employed or subcontracted by YOU or has acted on YOUR behalf.

(f)      "REGARDING," or "CONCERNING," means, without limitation, the following concepts: discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting or otherwise involving, in whole or in part.

(g)      "COMMUNICATION" means, without limitation, any writing transmitted between PERSONS or any oral conversation of any kind or character, including, by way of example and without limitation, personal conversations, telephone conversations, letters, MEETINGS, memoranda, telegraphic, telex, COMPUTER and facsimile COMMUNICATIONS or transmittals of DOCUMENTS, ESI (as defined in section (j)) and all DOCUMENTS CONCERNING such writings or oral conversations. "COMMUNICATION" as used herein specifically includes internal writings, oral conversations or MEETINGS among the officers, board members, EMPLOYEES or other representatives of any defendant.

2

(h)      "DOCUMENT" means, without limitation, the original and all non-identical copies of all writings, including any and all drafts, alterations and modifications, changes and amendments of any of the foregoing whether handwritten, typed, printed or otherwise produced in any format including, but not limited to, paper or ESI. This definition also includes, without limitation, books, records, manuals, statements, minutes, letters, correspondence, memoranda, legal pleadings, calendars, diaries, travel records, lists, tax returns, schedules, press releases, directives, agreements, contracts, print-outs, studies, summaries, records of telephone conversations, telegrams, notes, reports, compilations, notebooks, work papers, graphs, graphics, transcripts, charts, blueprints, timelines, pamphlets, brochures, circulars, manuals, instructions, ledgers, drawings, sketches, photographs, videotapes, film and sound reproductions, COMPUTER discs (including but not limited to, CDs, CD-Rs, DVDs, DVD-Rest, floppy discs, hard discs and hard drives), flash drives, pen drives, thumb drives, programming instructions, sales, advertising and promotional literature, agreements or minutes of MEETINGS, telephone conversations or other conversation or COMMUNICATION in YOUR possession, custody or CONTROL, or in the possession, custody or CONTROL of YOUR predecessors, successors, officers, directors, shareholders, EMPLOYEES, agents, representatives and attorneys. This definition also includes non-printed matter such as voice records and reproductions, film impressions, photographs, videos, negatives, slides, microfilms, microfiches, e-mail, and other things that DOCUMENT or record ideas, words or impressions. The term "DOCUMENT" further includes all punch cards, tapes, disks, or records used in electronic data processing, together with the programming instructions and other written materials necessary to understand or use such punch cards, tapes, disks or other recordings, and further includes ESI (as defined in section (j)) data or data compilation in

3

electronic or other form that can be printed through proper programming or decoding of the electronic or mechanical data storage facility, including metadata.

(i)     "MEETING" means, without limitation, any assembly, convocation, encounter or contemporaneous presence of two or more PERSONS for any purpose, whether planned or scheduled in advance, including written exchanges through internet/web based chat, including AOL Instant Messenger, or similar programs, electronic "bulletin board" programs, or internet/web based video chat, including Skype, or similar programs.

(j)     "ELECTRONICALLY STORED INFORMATION" or "ESI" means the original (or identical duplicate when the original is not available), and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings and data compilations in any form, and of every kind and description whether inscribed by mechanical, facsimile, electronic, magnetic, digital or other means.   ESI includes, by way of example only, COMPUTER programs (whether private, commercial, or work-in progress), programming notes or instructions, activity listings of electronic mail receipts and transmittals, output resulting from the use of any software program, including word processing DOCUMENTS, spreadsheets, database files, charts, graphs and outlines, electronic mail displaying full email aliases (not merely "display names"), electronic calendars, IM logs, PBX logs, DOCUMENT management system data, operating systems, all metadata, source code of all types, peripheral drivers, PIF files, batch files, ASCII files, and any and all miscellaneous files and file fragments, regardless of the media on which they reside and regardless of whether said ESI consists in an active file, deleted file or fragment.   ESI includes any and all items stored on COMPUTER memories, hard disks, floppy disks, CD-ROMs, removable media such as Zip disks, Jaz cartridges, Bernoulli Boxes and their equivalent, magnetic tapes of all types disks,

4

microfiche, punched cards, punched tape, COMPUTER chips, including, EPROM, PROM RAM and ROM, on or in any other vehicle for digital data storage and transmittal.  The term ESI also includes the file, folder tabs and containers and labels appended to, or associated with, any physical storage device associated with each original and copy.

(k)     "COMPUTER" means, without limitation, all devices utilizing microchips to facilitate processing, analysis, or storage of data, including micro COMPUTERS (also known as personal COMPUTERS), laptop COMPUTERS, portable COMPUTERS, notebook COMPUTERS, palmtop COMPUTERS (also known as personal digital assistants or PDA's), iPads, mini COMPUTERS and mainframe COMPUTERS.

(l)     "CONTROL" means, without limitation, the ownership, possession, or custody of the DOCUMENT, or the right to secure the DOCUMENT or copy thereof from any PERSON or public and private entity having physical possession thereof.

(m)     "And" as well as "or" should be construed either disjunctively or conjunctively so that each request is given its broadest possible application.  If, for example, a request calls for information about "A" or "B," YOU should produce all information about A and all information about B, as well as all information about collectively A and B.  In other words, both "and" and "or" should be read as "and/or."

(n)     "Any" should be construed, when possible, to mean "any and all."

(o)     "Including" is used to emphasize the type of information requested and should not be construed as limiting the interrogatory or requests for production in any way. "Including" should be read as "including, but not limited to."

(p)     "Each" should be construed to include the word "every," and "every" should be construed to include the word "each."

(q)     A plural noun or pronoun should be construed as a singular noun, and a singular noun should be construed as a plural noun or pronoun, so that each request should be given its broadest possible application.

(r)     The use of a verb in any tense should be construed to be the use of a verb in all other tenses so that each request should be given its broadest possible applications.

(s)     Words of one gender shall be construed to include words of all genders so that each request in the request for production of DOCUMENTS shall be given its broadest possible application.

(t)     Definitions provided herein apply to any grammatical variance of the term or phrase defined.

## REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1:**

Please admit that AE&P personnel never visited the *Marianas* or *Deepwater Horizon* rigs during the drilling of the MACONDO WELL.

**REQUEST FOR ADMISSION NO. 2:**

Please admit that AE&P did not participate in developing the cement design for the MACONDO WELL production casing.

**REQUEST FOR ADMISSION NO. 3:**

Please admit that AE&P did not participate in approving the cement design for the MACONDO WELL production casing.

**REQUEST FOR ADMISSION NO. 4:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform AE&P that in Halliburton's April 15, 2010 MACONDO WELL production casing

6

OptiCem report, Halliburton advised using twenty-one (21) centralizers on the production casing at the MACONDO WELL.

**REQUEST FOR ADMISSION NO. 5:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform AE&P that Halliburton had run an OptiCem model for the MACONDO WELL production casing cement job that concluded the use of seven (7) centralizers would lead to a severe gas flow problem.

**REQUEST FOR ADMISSION NO. 6:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform AE&P of the results of any of the tests run by Halliburton in connection with the MACONDO WELL production casing cement job.

**REQUEST FOR ADMISSION NO. 7:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform AE&P that any stability tests run by Halliburton in connection the MACONDO WELL production casing cement job had failed.

**REQUEST FOR ADMISSION NO. 8:**

Please admit that prior to pumping cement for the production casing at the MACONDO WELL YOU did not review any cement lab test reports that showed the cement used would be stable.

**REQUEST FOR ADMISSION NO. 9:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform AE&P of YOUR decision not to spot heavy mud in the rat hole prior to pumping the cement for the MACONDO WELL production casing.

7

**REQUEST FOR ADMISSION NO. 10:**

Please admit that YOU did not inform AE&P of YOUR planned procedure for cementing the MACONDO WELL production casing in advance of the pumping of the cement for the MACONDO WELL production casing.

**REQUEST FOR ADMISSION NO. 11:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform AE&P of YOUR decision to violate YOUR own internal guidance policy that requires pumping annular cement 1,000 feet above the pay zone unless a cement evaluation is performed.

**REQUEST FOR ADMISSION NO. 12:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform AE&P that a Cement Bond Log was not run on the MACONDO WELL production casing cement.

**REQUEST FOR ADMISSION NO. 13:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform AE&P of YOUR decision to pump the MACONDO WELL production casing cement without reviewing any cement lab results to verify foam stability.

**REQUEST FOR ADMISSION NO. 14:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform AE&P of YOUR decision to resume well operations within sixteen (16) hours of pumping the cement for the MACONDO WELL production casing.

**REQUEST FOR ADMISSION NO. 15:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform AE&P that 450 barrels of 16 ppg lost circulation material pill consisting of Form-a-

A/74044467.1

Set and Form-a Squeeze was used as a spacer material during the temporary abandonment process at the MACONDO WELL.

**REQUEST FOR ADMISSION NO. 16:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform AE&P of the decision to set the surface cement plug in seawater at approximately 3,300 feet below the mudline.

**REQUEST FOR ADMISSION NO. 17:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform AE&P about the decision to set the Lockdown Sleeve after displacing approximately 3,300 feet of mud with seawater below the mud line.

**REQUEST FOR ADMISSION NO. 18:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform AE&P of any of YOUR planned operational procedures for temporary abandonment of the MACONDO WELL between April 12, 2010 and April 20, 2010.

**REQUEST FOR ADMISSION NO. 19:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform AE&P of any changes YOU made to the planned operational procedures for temporary abandonment of the MACONDO WELL between April 12, 2010 and April 20, 2010.

**REQUEST FOR ADMISSION NO. 20:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform AE&P that YOU did not intend to follow the April 16, 2010 MMS approved APM for temporary abandonment of the MACONDO WELL.

**REQUEST FOR ADMISSION NO. 21:**

Please admit that AE&P was not involved in developing any of the temporary abandonment plans for the MACONDO WELL which existed between April 12, 2010 and April 20, 2010.

**REQUEST FOR ADMISSION NO. 22:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not provide AE&P with any of the temporary abandonment operational procedures for the MACONDO WELL which existed between April 12, 2010 and April 20, 2010.

**REQUEST FOR ADMISSION NO. 23:**

Please admit that YOU did not include AE&P in any COMMUNICATIONS REGARDING the procedure for performing the negative pressure tests that were performed on April 20, 2010 on the *Deepwater Horizon.*

**REQUEST FOR ADMISSION NO. 24:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform AE&P of any results of the negative pressure tests performed during the temporary abandonment procedures at the MACONDO WELL.

**REQUEST FOR ADMISSION NO. 25:**

Please admit that AE&P was not involved in the daily operations at the MACONDO WELL.

**REQUEST FOR ADMISSION NO. 26:**

Please admit that AE&P did not make operational decisions REGARDING the MACONDO WELL.

**REQUEST FOR ADMISSION NO. 27:**

Please admit that during the period of January 1, 2010 to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform AE&P of changes to YOUR personnel involved with the MACONDO WELL.

10

**REQUEST FOR ADMISSION NO. 28:**

Please admit that YOU had sole responsibility to determine BP personnel issues with respect to

MACONDO WELL design and operations.

**REQUEST FOR ADMISSION NO. 29:**

Please admit that AE&P had no obligation to monitor well activity on INSITE Anywhere,

including on April 20, 2010.

**REQUEST FOR ADMISSION NO. 30:**

Please admit that YOU had no requirement that AE&P monitor well activity on INSITE

Anywhere, including on April 20, 2010.

**REQUEST FOR ADMISSION NO. 31:**

Please admit that, per YOUR Guidance for Sharing of Drilling, Completion and Interventions

Information with Co-Owners [BP-HZN-2179MDL00315197-315206], YOU could not share

certain technical work with AE&P as set forth therein.


Dated:  April 4, 2011


        Respectfully submitted,

         /s/  Ky E. Kirby     

        Ky E. Kirby
        Ky.Kirby@bingham.com
        Warren Anthony Fitch
        Tony.Fitch@bingham.com
        BINGHAM MCCUTCHEN LLP
        2020 K Street, NW
        Washington, DC 20006-1806
        Telephone (202) 373-6000
        Facsimile (202) 373-6001

        James J. Dragna
        Jim.Dragna@bingham.com

A/74044467.1

BINGHAM MCCUTCHEN LLP
355 South Grand Avenue
Suite 4400
Los Angeles, California 90071-3106
Telephone (213) 680-6436
Facsimile (213) 680-8636

Deborah D. Kuchler, T.A. (La. Bar No. 17013)
Janika Polk (La. Bar No. 27608)
Robert Guidry (La. Bar No. 28064)
KUCHLER POLK SCHELL
WEINER & RICHESON, LLC
1615 Poydras Street, Suite 1300
New Orleans, LA  70112

**ATTORNEYS FOR ANADARKO
E&P COMPANY LP**

12

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Defendant Anadarko E&P Company LP's First

Requests for Admissions to Defendants BP America Inc., BP America Production

Company, BP Exploration & Production Inc., and B.P., P.L.C., have been served on All

Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with

Pretrial Order No. 12, on this 4th day of April, 2011.

    /s/  Ky E. Kirby_____

A/74044467.1

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE:  OIL SPILL by the | MDL NO. 2179 |
| OIL RIG "*DEEPWATER* | |
| *HORIZON*" in the GULF OF | SECTION: J |
| MEXICO, on | |
| APRIL 20, 2010 | JUDGE BARBIER |
| | MAG. JUDGE SHUSHAN |

---

**THIS DOCUMENT RELATES TO ALL CASES**

**DEFENDANT ANADARKO E&P COMPANY LP'S INTERROGATORIES AND
REQUESTS FOR PRODUCTION OF DOCUMENTS TO BP AMERICA INC., BP
AMERICA PRODUCTION COMPANY, BP EXPLORATION AND PRODUCTION
INC., B.P. P.L.C. (COLLECTIVELY, "BP")**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant
Anadarko E&P Company LP ("AE&P") through undersigned Counsel, requests that Defendant
BP answer the following interrogatory and request for production of documents (collectively
"Requests") under oath in accordance with the following Instructions and Definitions, within
thirty (30) days hereof, at the offices of Bingham McCutchen LLP, 355 South Grand Avenue,
Suite 4400, Los Angeles, California 90071-3106, or at such other time and place as may be
agreed upon by counsel for the aforesaid parties.

<u>**INSTRUCTIONS**</u>

(a)      Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, these requests
are continuing in nature so that if, after answering, YOU acquire additional responsive
knowledge or information or determine that an answer YOU provided was false, incomplete, or
misleading, YOU are to serve supplemental or amended answers as soon as reasonably

possible after acquiring such additional knowledge or information. Furthermore, DOCUMENTS or ELECTRONICALLY STORED INFORMATION ("ESI") prepared prior to or subsequent to the period covered by these requests, but which nonetheless relate or refer thereto, are to be included in YOUR response.

(b)     If YOU allege that any Request is in any manner ambiguous, YOU are instructed to DESCRIBE in detail the reasons for YOUR allegations, including but not limited to, each interpretation to which YOU allege the specific request for discovery is subject.

## DEFINITIONS

As used herein, the following terms are defined as follows:

(c)     "YOU," "YOUR," or "BP," means, without limitation, BP Exploration and Production, Inc., BP America, Inc., BP America Production Company, and BP, P.L.C., including its predecessors, successors, subsidiaries, departments, divisions, attorneys, accountants, and current and former directors, officers, EMPLOYEES, agents, representatives and PERSONS acting on its behalf.

(d)     "PERSON" means, without limitation, any and every natural individual, each and every association, partnership, joint venture, corporation, professional corporation, trust and any and every other identifiable entity.

(e)     "EMPLOYEE" means, without limitation, any current or former officer, director, executive, manager, secretary, staff member, messenger or other PERSON who is or was employed or subcontracted by YOU or has acted on YOUR behalf.

(f)     "COMMUNICATION" means, without limitation, any writing transmitted between PERSONS or any oral conversation of any kind or character, including, by way of example and without limitation, personal conversations, telephone conversations, letters, MEETINGS,     memoranda,     telegraphic,     telex,     COMPUTER     and     facsimile

2

COMMUNICATIONS or transmittals of DOCUMENTS, ESI (as defined in section (i)) and all DOCUMENTS CONCERNING such writings or oral conversations.  "COMMUNICATION" as used herein specifically includes internal writings, oral conversations or MEETINGS among the officers, board members, EMPLOYEES or other representatives of any defendant.

(g)     "DOCUMENT" means, without limitation, the original and all non-identical copies of all writings, including any and all drafts, alterations and modifications, changes and amendments of any of the foregoing whether handwritten, typed, printed or otherwise produced in any format including, but not limited to, paper or ESI.  This definition also includes, without limitation, books, records, manuals, statements, minutes, letters, correspondence, memoranda, legal pleadings, calendars, diaries, travel records, lists, tax returns, schedules, press releases, directives, agreements, contracts, print-outs, studies, summaries, records of telephone conversations, telegrams, notes, reports, compilations, notebooks, work papers, graphs, graphics, transcripts, charts, blueprints, timelines, pamphlets, brochures, circulars, manuals, instructions, ledgers, drawings, sketches, photographs, videotapes, film and sound reproductions, COMPUTER discs (including but not limited to, CDs, CD-Rs, DVDs, DVD-Rest, floppy discs, hard discs and hard drives), flash drives, pen drives, thumb drives, programming instructions, sales, advertising and promotional literature, agreements or minutes of MEETINGS, telephone conversations or other conversation or COMMUNICATION in YOUR possession, custody or CONTROL, or in the possession, custody or CONTROL of YOUR predecessors, successors, officers, directors, shareholders, EMPLOYEES, agents, representatives and attorneys.  This definition also includes non-printed matter such as voice records and reproductions, film impressions, photographs, videos, negatives, slides, microfilms, microfiches, e-mail, and other things that DOCUMENT or record ideas, words or impressions.  The term "DOCUMENT" further includes all punch cards, tapes,

3

disks, or records used in electronic data processing, together with the programming instructions and other written materials necessary to understand or use such punch cards, tapes, disks or other recordings, and further includes ESI (as defined in section (i)) data or data compilation in electronic or other form that can be printed through proper programming or decoding of the electronic or mechanical data storage facility, including metadata.

(h)      "MEETING" means, without limitation, any assembly, convocation, encounter or contemporaneous presence of two or more PERSONS for any purpose, whether planned or scheduled in advance, including written exchanges through internet/web based chat, including AOL Instant Messenger, or similar programs, electronic "bulletin board" programs, or internet/web based video chat, including Skype, or similar programs.

(i)      "ELECTRONICALLY STORED INFORMATION" or "ESI" means the original (or identical duplicate when the original is not available), and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings and data compilations in any form, and of every kind and description whether inscribed by mechanical, facsimile, electronic, magnetic, digital or other means. ESI includes, by way of example only, COMPUTER programs (whether private, commercial, or work-in progress), programming notes or instructions, activity listings of electronic mail receipts and transmittals, output resulting from the use of any software program, including word processing DOCUMENTS, spreadsheets, database files, charts, graphs and outlines, electronic mail displaying full email aliases (not merely "display names"), electronic calendars, IM logs, PBX logs, DOCUMENT management system data, operating systems, all metadata, source code of all types, peripheral drivers, PIF files, batch files, ASCII files, and any and all miscellaneous files and file fragments, regardless of the media on which they reside and regardless of whether said ESI

4

consists in an active file, deleted file or fragment. ESI includes any and all items stored on COMPUTER memories, hard disks, floppy disks, CD-ROMs, removable media such as Zip disks, Jaz cartridges, Bernoulli Boxes and their equivalent, magnetic tapes of all types disks, microfiche, punched cards, punched tape, COMPUTER chips, including, EPROM, PROM RAM and ROM, on or in any other vehicle for digital data storage and transmittal. The term ESI also includes the file, folder tabs and containers and labels appended to, or associated with, any physical storage device associated with each original and copy.

(j)      "COMPUTER" means, without limitation, all devices utilizing microchips to facilitate processing, analysis, or storage of data, including micro COMPUTERS (also known as personal COMPUTERS), laptop COMPUTERS, portable COMPUTERS, notebook COMPUTERS, palmtop COMPUTERS (also known as personal digital assistants or PDA's), iPads, mini COMPUTERS and mainframe COMPUTERS.

(k)      "CONTROL" means, without limitation, the ownership, possession, or custody of the DOCUMENT, or the right to secure the DOCUMENT or copy thereof from any PERSON or public and private entity having physical possession thereof.

(l)      "RELATING TO," or "CONCERNING," means, without limitation, the following concepts: discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting or otherwise involving, in whole or in part.

(m)      "IDENTIFY" and "IDENTITY" when used in reference to a PERSON means to STATE the PERSON'S: (1) Full name; (2) Present or last known employment position, including the employer name; (3) Job title and/or description; and (4) Contact information.

(n)      "STATE" means, without limitation, to set forth in full and complete detail all knowledge and information in YOUR possession, custody or control RELATING TO the

A/74046907.1

subject matter of the interrogatory, including without limitation the source and basis of YOUR knowledge and information if not otherwise evident from YOUR answer to the interrogatory and the IDENTITY of each DOCUMENT and each COMMUNICATION on which YOU rely to any extent in making YOUR answer.

(o)      "And" as well as "or" should be construed either disjunctively or conjunctively so that each request is given its broadest possible application.  If, for example, a request calls for information about "A" or "B," YOU should produce all information about A and all information about B, as well as all information about collectively A and B.  In other words, both "and" and "or" should be read as "and/or."

(p)      "Each" should be construed to include the word "every," and "every" should be construed to include the word "each."

(q)      A plural noun or pronoun should be construed as a singular noun, and a singular noun should be construed as a plural noun or pronoun, so that each request should be given its broadest possible application.

(r)      The use of a verb in any tense should be construed to be the use of a verb in all other tenses so that each request should be given its broadest possible applications.

(s)      Words of one gender shall be construed to include words of all genders so that each request in the request for production of DOCUMENTS shall be given its broadest possible application.

(t)      Definitions provided herein apply to any grammatical variance of the term or phrase defined.

6

## INTERROGATORIES

**INTERROGATORY NO. 1:**

For each of AE&P's First Requests for Admissions served on April 4, 2011 that YOU do not unqualifiedly admit, STATE with particularity all facts which support YOUR response; IDENTIFY all PERSONS having knowledge of such facts; and IDENTIFY all DOCUMENTS reflecting such facts.

## REQUEST FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1:**

Please produce all DOCUMENTS IDENTIFIED in YOUR response to Interrogatory No. 1.

Dated:  April 4, 2011                      Respectfully submitted,

/s/  Ky E. Kirby

Ky E. Kirby
Ky.Kirby@bingham.com
Warren Anthony Fitch
Tony.Fitch@bingham.com
BINGHAM MCCUTCHEN LLP
2020 K Street, NW
Washington, DC 20006-1806
Telephone (202) 373-6000
Facsimile (202) 373-6001

James J. Dragna
Jim.Dragna@bingham.com
BINGHAM MCCUTCHEN LLP
355 South Grand Avenue
Suite 4400
Los Angeles, California 90071-3106
Telephone (213) 680-6436
Facsimile (213) 680-8636

Deborah D. Kuchler, T.A. (La. Bar No. 17013)
Janika Polk (La. Bar No. 27608)
Robert Guidry (La. Bar No. 28064)

7

KUCHLER POLK SCHELL
WEINER & RICHESON, LLC
1615 Poydras Street, Suite 1300
New Orleans, LA  70112

**ATTORNEYS FOR ANADARKO
E&P COMPANY LP**

8

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing Defendant Anadarko E&P Company LP's Interrogatories and Requests for Production of Documents to Defendants BP America Inc., BP America Production Company, BP Exploration & Production Inc., and B.P., P.L.C., have been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, on this 4th day of April, 2011.

_____/s/  Ky E. Kirby_____

A/74046907.1

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL by the OIL RIG "*DEEPWATER HORIZON*" in the GULF OF MEXICO, on APRIL 20, 2010 | MDL NO. 2179<br><br>SECTION: J<br><br>JUDGE BARBIER<br>MAG. JUDGE SHUSHAN |

---

**THIS DOCUMENT RELATES TO ALL CASES**

### DEFENDANT ANADARKO PETROLEUM CORPORATION'S SECOND SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS TO BP AMERICA INC., BP AMERICA PRODUCTION COMPANY, BP EXPLORATION AND PRODUCTION INC., B.P. P.L.C. (COLLECTIVELY, "BP")

Pursuant to Rules 26, 33 and 34 of the Federal Rules of Civil Procedure, Defendant Anadarko Petroleum Corporation ("Anadarko") through undersigned Counsel, requests that Defendant BP answer the following Interrogatories and Requests for Production of Documents (collectively "Requests") under oath and produce the documents specified hereinafter, in accordance with the following Instructions and Definitions, within thirty (30) days hereof, at the offices of Bingham McCutchen LLP, 355 South Grand Avenue, Suite 4400, Los Angeles, California 90071-3106, or at such other time and place as may be agreed upon by counsel for the aforesaid parties.

### <u>INSTRUCTIONS</u>

(a)     Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, these Requests for production are continuing in nature so that if, after answering, YOU acquire additional responsive knowledge or information or determine that an answer YOU provided was false,

incomplete, or misleading, YOU are to serve supplemental or amended answers as soon as reasonably possible after acquiring such additional knowledge or information. Furthermore, DOCUMENTS or ELECTRONICALLY STORED INFORMATION ("ESI") prepared prior to or subsequent to the period covered by these interrogatories, but which nonetheless relate or refer thereto, are to be included in YOUR response.

(b) As defined below, YOU are to produce all DOCUMENTS in YOUR possession, custody or CONTROL. Production of DOCUMENTS shall be in conformance with all procedures and formats set forth by the Court.

(c) All ESI responses to these discovery requests shall be produced in accordance with Pretrial Order No. 16.

(d) All produced DOCUMENTS shall have a legible, unique page identifier ("Bates Number") electronically "burned" onto each image at a location that does not obliterate, conceal, or interfere with any information from the source DOCUMENT. No other legend or stamp will be placed on the DOCUMENT image other than a confidentiality legend (where applicable) redactions (consistent with the Stipulated Protective Order in this matter, or any other protective orders agreed to in the future), and the Bates Number identified above. The confidential legend shall be "burned" onto the DOCUMENT'S image at a location that does not obliterate or obscure any information from the source DOCUMENT. WITH RESPECT TO the identification of files produced in their native format, the parties shall confer on an appropriate method for applying a unique identifier to each file produced.

(e) Each page image file shall be named with the unique Bates Number of the page of DOCUMENT, followed by the extension ".TIF." In the event the Bates Number contains a symbol and/or character that cannot be included in a file name, the symbol and/or character will be omitted from the file name.

A/74024401.3

(f)      If YOU refuse to respond to any of these Requests based on a claim of privilege, YOU shall provide a "Privilege Log" that complies with the provisions of Pretrial Order No. 14.

(g)      If YOU or any of YOUR attorneys, agents, or representatives at any time had possession or CONTROL of a DOCUMENT requested and that DOCUMENT has been lost, destroyed, or purged or is not presently in YOUR possession, custody, or CONTROL, IDENTIFY the DOCUMENT and DESCRIBE the circumstances surrounding the loss, destruction, purge, or separation from YOUR possession, custody, or CONTROL, indicating the dates that those circumstances occurred.

(h)      If YOU allege that any request is in any manner ambiguous, YOU are instructed to DESCRIBE in detail the reasons for YOUR allegations, including but not limited to, each interpretation to which YOU allege the specific request for discovery is subject. Notwithstanding any of the foregoing, YOU are instructed to respond, to the best of YOUR ability, to the request for production and produce the DOCUMENTS requested.

## **DEFINITIONS**

As used herein, the following terms are defined as follows:

(i)       "MACONDO WELL" means that exploratory well being drilled within the MACONDO PROSPECT pursuant to Lease OCS-G 32306.

(j)       "MACONDO PROSPECT" means the oil and gas prospect located within Mississippi Canyon Block 252, abbreviated MC252 in the Gulf of Mexico, off the coast of Louisiana, subject to Lease OCS-G 32306.

(k)      "BOP" or "BLOWOUT PREVENTER" means, without limitation, the large valve device(s) designed and used to ensure safety through the sealing, controlling, and

monitoring of oil and gas wells including the associated, monitoring, warning, electronic, and hydraulic systems.

(l)     "YOU," "YOUR," or "BP," means, without limitation, BP Exploration and Production, Inc., BP America, Inc., BP America Production Company, and BP, P.L.C., including its predecessors, successors, subsidiaries, departments, divisions, attorneys, accountants, and current and former directors, officers, EMPLOYEES, agents, representatives and PERSONS acting on its behalf.

(m)     "ANADARKO" means, without limitation, Anadarko Petroleum Corporation and Anadarko E&P Company, including its predecessors, successors, subsidiaries, departments, divisions, attorneys, accountants, and current and former directors, officers, EMPLOYEES, agents, representatives and PERSONS acting on its behalf.

(n)     "PERSON" means, without limitation, any and every natural individual, each and every association, partnership, joint venture, corporation, professional corporation, trust and any and every other identifiable entity.

(o)     "EMPLOYEE" means, without limitation, any current or former officer, director, executive, manager, secretary, staff member, messenger or other PERSON who is or was employed or subcontracted by YOU or has acted on YOUR behalf.

(p)     "COMMUNICATION" means, without limitation, any writing transmitted between PERSONS or any oral conversation of any kind or character, including, by way of example and without limitation, personal conversations, telephone conversations, letters, MEETINGS, memoranda, telegraphic, telex, COMPUTER and facsimile COMMUNICATIONS or transmittals of DOCUMENTS, ESI (as defined in section (s)) and all DOCUMENTS CONCERNING such writings or oral conversations.  "COMMUNICATION"

4

as used herein specifically includes internal writings, oral conversations or MEETINGS among the officers, board members, EMPLOYEES or other representatives of any defendant.

(q)    "DOCUMENT" means, without limitation, the original and all non-identical copies of all writings, including any and all drafts, alterations and modifications, changes and amendments of any of the foregoing whether handwritten, typed, printed or otherwise produced in any format including, but not limited to, paper or ESI.  This definition also includes, without limitation, books, records, manuals, statements, minutes, letters, correspondence, memoranda, legal pleadings, calendars, diaries, travel records, lists, tax returns, schedules, press releases, directives, agreements, contracts, print-outs, studies, summaries, records of telephone conversations, telegrams, notes, reports, compilations, notebooks, work papers, graphs, graphics, transcripts, charts, blueprints, timelines, pamphlets, brochures, circulars, manuals, instructions, ledgers, drawings, sketches, photographs, videotapes, film and sound reproductions, COMPUTER discs (including but not limited to, CDs, CD-Rs, DVDs, DVD-Rest, floppy discs, hard discs and hard drives), flash drives, pen drives, thumb drives, programming instructions, sales, advertising and promotional literature, agreements or minutes of MEETINGS, telephone conversations or other conversation or COMMUNICATION in YOUR possession, custody or CONTROL, or in the possession, custody or CONTROL of YOUR predecessors, successors, officers, directors, shareholders, EMPLOYEES, agents, representatives and attorneys.  This definition also includes non-printed matter such as voice records and reproductions, film impressions, photographs, videos, negatives, slides, microfilms, microfiches, e-mail, and other things that DOCUMENT or record ideas, words or impressions.  The term "DOCUMENT" further includes all punch cards, tapes, disks, or records used in electronic data processing, together with the programming instructions and other written materials necessary to understand or use such punch cards, tapes, disks or

5

other recordings, and further includes ESI (as defined in section (s)) data or data compilation in electronic or other form that can be printed through proper programming or decoding of the electronic or mechanical data storage facility, including metadata.

(r)      "MEETING" means, without limitation, any assembly, convocation, encounter or contemporaneous presence of two or more PERSONS for any purpose, whether planned or scheduled in advance, including written exchanges through internet/web based chat, including AOL Instant Messenger, or similar programs, electronic "bulletin board" programs, or internet/web based video chat, including Skype, or similar programs.

(s)      "ELECTRONICALLY STORED INFORMATION" or "ESI" means the original (or identical duplicate when the original is not available), and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings and data compilations in any form, and of every kind and description whether inscribed by mechanical, facsimile, electronic, magnetic, digital or other means. ESI includes, by way of example only, COMPUTER programs (whether private, commercial, or work-in progress), programming notes or instructions, activity listings of electronic mail receipts and transmittals, output resulting from the use of any software program, including word processing DOCUMENTS, spreadsheets, database files, charts, graphs and outlines, electronic mail displaying full email aliases (not merely "display names"), electronic calendars, IM logs, PBX logs, DOCUMENT management system data, operating systems, all metadata, source code of all types, peripheral drivers, PIF files, batch files, ASCII files, and any and all miscellaneous files and file fragments, regardless of the media on which they reside and regardless of whether said ESI consists in an active file, deleted file or fragment. ESI includes any and all items stored on COMPUTER memories, hard disks, floppy disks, CD-ROMs, removable media such as Zip

A/74024401.3

disks, Jaz cartridges, Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, COMPUTER chips, including, EPROM, PROM RAM and ROM, on or in any other vehicle for digital data storage and transmittal. The term ESI also includes the file, folder tabs and containers and labels appended to, or associated with, any physical storage device associated with each original and copy.

(t)       "COMPUTER" means, without limitation, all devices utilizing microchips to facilitate processing, analysis, or storage of data, including micro COMPUTERS (also known as personal COMPUTERS), laptop COMPUTERS, portable COMPUTERS, notebook COMPUTERS, palmtop COMPUTERS (also known as personal digital assistants or PDA's), iPads, mini COMPUTERS and mainframe COMPUTERS.

(u)       "CONTROL" means, without limitation, the ownership, possession, or custody of the DOCUMENT, or the right to secure the DOCUMENT or copy thereof from any PERSON or public and private entity having physical possession thereof.

(v)       "RELATING TO," "REGARDING," "CONCERNING," or "WITH RESPECT TO" means, without limitation, the following concepts: discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting or otherwise involving, in whole or in part.

(w)       "IDENTIFY" and "IDENTITY" when used in reference to a PERSON means to STATE the PERSON'S: (1) Full name; (2) Present or last known employment position, including the employer name; (3) Job title and/or description; and (4) Contact information.

(x)       "IDENTIFY" and "IDENTITY" when used WITH RESPECT TO a COMMUNICATION other than a writing means to STATE: (1) The full name of any PERSON who was a party to the COMMUNICATION; (2) The type of COMMUNICATION,

7

e.g., telephone conversation, letter, telegram, teletype, telecopy, written memorandum, face-to-face conversation, or any other form; and the full name of any PERSONS participating therein, along with the date, duration, location(s) and the substance of the COMMUNICATION.

(y)      "DESCRIBE" means, in the case of an act, event, transaction, relationship, thing or occurrence, to IDENTIFY dates, places, PERSONS involved, and means employed; IDENTIFY YOUR sources of information CONCERNING such act, event, transaction, thing or occurrence, including the date YOU received such information; IDENTIFY each PERSON having knowledge of such act, event, transaction, thing or occurrence; and IDENTIFY each COMMUNICATION and each DOCUMENT RELATING TO such act, event, transaction, thing or occurrence.

(z)      "STATE" means, without limitation, to set forth in full and complete detail all knowledge and information in YOUR possession, custody or CONTROL RELATING TO the subject matter of the interrogatory, including without limitation the source and basis of YOUR knowledge and information if not otherwise evident from YOUR answer to the interrogatory and the IDENTITY of each DOCUMENT and each COMMUNICATION on which YOU rely to any extent in making YOUR answer.

(aa)      "And" as well as "or" should be construed either disjunctively or conjunctively so that each request is given its broadest possible application.  If, for example, a request calls for information about "A" or "B," YOU should produce all information about A and all information about B, as well as all information about collectively A and B.  In other words, both "and" and "or" should be read as "and/or."

(bb)      "Any" should be construed, when possible, to mean "any and all."

(cc)    "Including" is used to emphasize the type of information requested and should not be construed as limiting the interrogatory or requests for production in any way. "Including" should be read as "including, but not limited to."

(dd)    "Each" should be construed to include the word "every," and "every" should be construed to include the word "each."

(ee)    A plural noun or pronoun should be construed as a singular noun, and a singular noun should be construed as a plural noun or pronoun, so that each request should be given its broadest possible application.

(ff)    The use of a verb in any tense should be construed to be the use of a verb in all other tenses so that each request should be given its broadest possible applications.

(gg)    Words of one gender shall be construed to include words of all genders so that each request in the request for production of DOCUMENTS shall be given its broadest possible application.

(hh)    Definitions provided herein apply to any grammatical variance of the term or phrase defined.

## **INTERROGATORIES**

## **INTERROGATORY NO. 26**

Please IDENTIFY each COMMUNICATION YOUR EMPLOYEES had with ANADARKO, on or before April 21, 2010, RELATING TO operations on or at the *Deepwater Horizon* in connection with the MACONDO WELL.  Such operations include, but are not limited to, design, drilling, cementing, temporary abandonment, rig and BOP maintenance, audits, float collar conversion, addressing lost circulation, bottoms up procedures, evaluating cement composition and integrity, well monitoring, and performing and interpreting negative and positive pressure tests; IDENTIFY all PERSONS involved in such COMMUNICATIONS and

9

DESCRIBE in detail the substance of each such COMMUNICATION and any response to or result from such COMMUNICATION.

**INTERROGATORY NO. 27:**

DESCRIBE in detail any and all information provided either orally or in writing by YOUR EMPLOYEES to ANADARKO, on or before April 21, 2010, REGARDING operations on or at the *Deepwater Horizon* in connection with the MACONDO WELL.  Such operations include, but are not limited to, design, drilling, cementing, temporary abandonment, rig and BOP maintenance, audits, float collar conversion, addressing lost circulation, bottoms up procedures, evaluating cement composition and integrity, well monitoring, and performing and interpreting negative and positive pressure; IDENTIFY each of YOUR EMPLOYEES who provided such information and the IDENTITY of the PERSON at ANADARKO to whom such information was provided.

**INTERROGATORY NO. 28:**

Please describe how YOU decided what information YOU would provide to ANADARKO RELATING TO the *Deepwater Horizon* or the MACONDO WELL prior to April 21, 2010. IDENTIFY all EMPLOYEES involved in decisions RELATING TO the sharing of information with ANADARKO.

**INTERROGATORY NO. 29:**

Please IDENTIFY any written or unwritten guidelines, procedures, or protocols YOU used to determine what information CONCERNING activities RELATING TO the *Deepwater Horizon* or the MACONDO WELL YOU would provide to ANADARKO.  IDENTIFY who developed these guidelines, procedures, or protocols and who was responsible for carrying them out.

10

**INTERROGATORY NO. 30:**

For each of Anadarko Petroleum Corporation's First Request for Admission served on April 4, 2011 that YOU do not unqualifiedly admit, STATE with particularity all facts which support YOUR response; IDENTIFY all PERSONS having knowledge of such facts; and IDENTIFY all DOCUMENTS reflecting such facts.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 29**:

Please produce all DOCUMENTS provided by YOUR EMPLOYEES to ANADARKO prior to April 21, 2010 RELATING TO operations on or at the *Deepwater Horizon* in connection with the MACONDO WELL.  Such operations include, but are not limited to, design, drilling, cementing, temporary abandonment, rig and BOP maintenance, audits, float collar conversion, addressing lost circulation, bottoms up procedures, evaluating cement composition and integrity, well monitoring, and performing and interpreting negative and positive pressure tests.

**REQUEST FOR PRODUCTION NO. 30**:

Please produce all DOCUMENTS provided by ANADARKO to YOUR EMPLOYEES prior to April 21, 2010 RELATING TO operations on or at the *Deepwater Horizon* in connection with the MACONDO WELL.  Such operations include, but are not limited to, design, drilling, cementing, temporary abandonment, rig and BOP maintenance, audits, float collar conversion, addressing lost circulation, bottoms up procedures, evaluating cement composition and integrity, well monitoring, and performing and interpreting negative and positive pressure.

**REQUEST FOR PRODUCTION NO. 31**:

Please produce all DOCUMENTS RELATING TO COMMUNICATIONS between YOUR EMPLOYEES and ANADARKO prior to April 21, 2010 REGARDING operations on or at the *Deepwater Horizon* in connection with the MACONDO WELL.  Such operations include, but

are not limited to, design, drilling, cementing, temporary abandonment, rig and BOP maintenance, audits, float collar conversion, addressing lost circulation, bottoms up procedures, evaluating cement composition and integrity, well monitoring, and performing and interpreting negative and positive pressure tests.

**REQUEST FOR PRODUCTION NO. 32**:

Please produce all DOCUMENTS evidencing or RELATING TO information provided by YOUR EMPLOYEES to ANADARKO prior to April 21, 2010 REGARDING operations on or at the *Deepwater Horizon* in connection with the MACONDO WELL.  Such operations include, but are not limited to, design, drilling, cementing, temporary abandonment, rig and BOP maintenance, audits, float collar conversion, addressing lost circulation, bottoms up procedures, evaluating cement composition and integrity, well monitoring, and performing and interpreting negative and positive pressure tests.

**REQUEST FOR PRODUCTION NO. 33**:

Please produce any DOCUMENTS RELATING TO YOUR decisions CONCERNING whether to provide information REGARDING the *Deepwater Horizon* or MACONDO WELL to ANADARKO.

**REQUEST FOR PRODUCTION NO. 34:**

Please produce all DOCUMENTS IDENTIFIED in YOUR response to Interrogatory No. 30.


Dated:  April 4, 2011

                                                  Respectfully submitted,

                                                  /s/  Ky E. Kirby_____

                                                  Ky E. Kirby
                                                  Ky.Kirby@bingham.com
                                                  Warren Anthony Fitch
                                                  Tony.Fitch@bingham.com
                                                  BINGHAM MCCUTCHEN LLP

2020 K Street, NW
Washington, DC 20006-1806
Telephone (202) 373-6000
Facsimile (202) 373-6001

James J. Dragna
Jim.Dragna@bingham.com
BINGHAM MCCUTCHEN LLP
355 South Grand Avenue
Suite 4400
Los Angeles, California 90071-3106
Telephone (213) 680-6436
Facsimile (213) 680-8636

Deborah D. Kuchler, T.A. (La. Bar No. 17013)
Janika Polk (La. Bar No. 27608)
Robert Guidry (La. Bar No. 28064)
KUCHLER POLK SCHELL
WEINER & RICHESON, LLC
1615 Poydras Street, Suite 1300
New Orleans, LA  70112

**ATTORNEYS FOR ANADARKO PETROLEUM CORPORATION**

13

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing Defendant Anadarko Petroleum Corporation's Second Set of Interrogatories and Requests for Production of Documents to Defendants BP America Inc., BP America Production Company, BP Exploration & Production Inc., and B.P., P.L.C., have been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, on this 4th day of April, 2011.

<u>     /s/  Ky E. Kirby          </u>

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE:  OIL SPILL by the OIL RIG "*DEEPWATER HORIZON*" in the GULF OF MEXICO, on APRIL 20, 2010 | MDL NO. 2179 SECTION: J JUDGE BARBIER MAG. JUDGE SHUSHAN |

THIS DOCUMENT RELATES TO ALL CASES

---

**DEFENDANT ANADARKO PETROLEUM CORPORATION'S FIRST REQUESTS FOR ADMISSIONS TO BP AMERICA INC., BP AMERICA PRODUCTION COMPANY, BP EXPLORATION AND PRODUCTION INC., B.P. P.L.C. (COLLECTIVELY, "BP")**

Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure, Defendant Anadarko Petroleum Corporation ("APC") through undersigned Counsel, requests that Defendant BP answer the following Requests for Admission completely and under oath, within thirty (30) days hereof, at the offices of Bingham McCutchen LLP, 355 South Grand Avenue, Suite 4400, Los Angeles, California 90071-3106, or at such other time and place as may be agreed upon by counsel for the aforesaid parties.

<u>**DEFINITIONS**</u>

(a)    "MACONDO WELL" means that exploratory well being drilled within the MACONDO PROSPECT pursuant to Lease OCS-G 32306.

(b)    "MACONDO PROSPECT" means the oil and gas prospect located within Mississippi Canyon Block 252, abbreviated MC252 in the Gulf of Mexico, off the coast of Louisiana, subject to Lease OCS-G 32306.

(c)      "YOU," "YOUR," or "BP," means, without limitation, BP Exploration and Production, Inc., BP America, Inc., BP America Production Company, and BP, P.L.C., including its predecessors, successors, subsidiaries, departments, divisions, attorneys, accountants, and current and former directors, officers, EMPLOYEES, agents, representatives and PERSONS acting on its behalf.

(d)      "PERSON" means, without limitation, any and every natural individual, each and every association, partnership, joint venture, corporation, professional corporation, trust and any and every other identifiable entity.

(e)      "EMPLOYEE" means, without limitation, any current or former officer, director, executive, manager, secretary, staff member, messenger or other PERSON who is or was employed or subcontracted by YOU or has acted on YOUR behalf.

(f)      "REGARDING," or "CONCERNING," means, without limitation, the following concepts: discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting or otherwise involving, in whole or in part.

(g)      "COMMUNICATION" means, without limitation, any writing transmitted between PERSONS or any oral conversation of any kind or character, including, by way of example and without limitation, personal conversations, telephone conversations, letters, MEETINGS, memoranda, telegraphic, telex, COMPUTER and facsimile COMMUNICATIONS or transmittals of DOCUMENTS, ESI (as defined in section (j)) and all DOCUMENTS CONCERNING such writings or oral conversations. "COMMUNICATION" as used herein specifically includes internal writings, oral conversations or MEETINGS among the officers, board members, EMPLOYEES or other representatives of any defendant.

2

(h)      "DOCUMENT" means, without limitation, the original and all non-identical copies of all writings, including any and all drafts, alterations and modifications, changes and amendments of any of the foregoing whether handwritten, typed, printed or otherwise produced in any format including, but not limited to, paper or ESI. This definition also includes, without limitation, books, records, manuals, statements, minutes, letters, correspondence, memoranda, legal pleadings, calendars, diaries, travel records, lists, tax returns, schedules, press releases, directives, agreements, contracts, print-outs, studies, summaries, records of telephone conversations, telegrams, notes, reports, compilations, notebooks, work papers, graphs, graphics, transcripts, charts, blueprints, timelines, pamphlets, brochures, circulars, manuals, instructions, ledgers, drawings, sketches, photographs, videotapes, film and sound reproductions, COMPUTER discs (including but not limited to, CDs, CD-Rs, DVDs, DVD-Rest, floppy discs, hard discs and hard drives), flash drives, pen drives, thumb drives, programming instructions, sales, advertising and promotional literature, agreements or minutes of MEETINGS, telephone conversations or other conversation or COMMUNICATION in YOUR possession, custody or CONTROL, or in the possession, custody or CONTROL of YOUR predecessors, successors, officers, directors, shareholders, EMPLOYEES, agents, representatives and attorneys. This definition also includes non-printed matter such as voice records and reproductions, film impressions, photographs, videos, negatives, slides, microfilms, microfiches, e-mail, and other things that DOCUMENT or record ideas, words or impressions. The term "DOCUMENT" further includes all punch cards, tapes, disks, or records used in electronic data processing, together with the programming instructions and other written materials necessary to understand or use such punch cards, tapes, disks or other recordings, and further includes ESI (as defined in section (j)) data or data compilation in

3

electronic or other form that can be printed through proper programming or decoding of the electronic or mechanical data storage facility, including metadata.

(i)     "MEETING" means, without limitation, any assembly, convocation, encounter or contemporaneous presence of two or more PERSONS for any purpose, whether planned or scheduled in advance, including written exchanges through internet/web based chat, including AOL Instant Messenger, or similar programs, electronic "bulletin board" programs, or internet/web based video chat, including Skype, or similar programs.

(j)     "ELECTRONICALLY STORED INFORMATION" or "ESI" means the original (or identical duplicate when the original is not available), and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings and data compilations in any form, and of every kind and description whether inscribed by mechanical, facsimile, electronic, magnetic, digital or other means.  ESI includes, by way of example only, COMPUTER programs (whether private, commercial, or work-in progress), programming notes or instructions, activity listings of electronic mail receipts and transmittals, output resulting from the use of any software program, including word processing DOCUMENTS, spreadsheets, database files, charts, graphs and outlines, electronic mail displaying full email aliases (not merely "display names"), electronic calendars, IM logs, PBX logs, DOCUMENT management system data, operating systems, all metadata, source code of all types, peripheral drivers, PIF files, batch files, ASCII files, and any and all miscellaneous files and file fragments, regardless of the media on which they reside and regardless of whether said ESI consists in an active file, deleted file or fragment.  ESI includes any and all items stored on COMPUTER memories, hard disks, floppy disks, CD-ROMs, removable media such as Zip disks, Jaz cartridges, Bernoulli Boxes and their equivalent, magnetic tapes of all types disks,

4

microfiche, punched cards, punched tape, COMPUTER chips, including, EPROM, PROM RAM and ROM, on or in any other vehicle for digital data storage and transmittal. The term ESI also includes the file, folder tabs and containers and labels appended to, or associated with, any physical storage device associated with each original and copy.

(k)     "COMPUTER" means, without limitation, all devices utilizing microchips to facilitate processing, analysis, or storage of data, including micro COMPUTERS (also known as personal COMPUTERS), laptop COMPUTERS, portable COMPUTERS, notebook COMPUTERS, palmtop COMPUTERS (also known as personal digital assistants or PDA's), iPads, mini COMPUTERS and mainframe COMPUTERS.

(l)     "CONTROL" means, without limitation, the ownership, possession, or custody of the DOCUMENT, or the right to secure the DOCUMENT or copy thereof from any PERSON or public and private entity having physical possession thereof.

(m)     "And" as well as "or" should be construed either disjunctively or conjunctively so that each request is given its broadest possible application. If, for example, a request calls for information about "A" or "B," YOU should produce all information about A and all information about B, as well as all information about collectively A and B. In other words, both "and" and "or" should be read as "and/or."

(n)     "Any" should be construed, when possible, to mean "any and all."

(o)     "Including" is used to emphasize the type of information requested and should not be construed as limiting the interrogatory or requests for production in any way. "Including" should be read as "including, but not limited to."

(p)     "Each" should be construed to include the word "every," and "every" should be construed to include the word "each."

(q)    A plural noun or pronoun should be construed as a singular noun, and a singular noun should be construed as a plural noun or pronoun, so that each request should be given its broadest possible application.

(r)    The use of a verb in any tense should be construed to be the use of a verb in all other tenses so that each request should be given its broadest possible applications.

(s)    Words of one gender shall be construed to include words of all genders so that each request in the request for production of DOCUMENTS shall be given its broadest possible application.

(t)    Definitions provided herein apply to any grammatical variance of the term or phrase defined.

## REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1:**

Please admit that APC personnel never visited the *Marinas* or *Deepwater Horizon* rigs during the drilling of the MACONDO WELL.

**REQUEST FOR ADMISSION NO. 2:**

Please admit that APC did not participate in developing the cement design for the MACONDO WELL production casing.

**REQUEST FOR ADMISSION NO. 3:**

Please admit that APC did not participate in approving the cement design for the MACONDO WELL production casing.

**REQUEST FOR ADMISSION NO. 4:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform APC that in Halliburton's April 15, 2010 MACONDO WELL production casing

6

OptiCem report, Halliburton advised using twenty-one (21) centralizers on the production casing at the MACONDO WELL.

**REQUEST FOR ADMISSION NO. 5:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform APC that Halliburton had run an OptiCem model for the MACONDO WELL production casing cement job that concluded the use of seven (7) centralizers would lead to a severe gas flow problem.

**REQUEST FOR ADMISSION NO. 6:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform APC of the results of any of the tests run by Halliburton in connection with the MACONDO WELL production casing cement job.

**REQUEST FOR ADMISSION NO. 7:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform APC that any stability tests run by Halliburton in connection the MACONDO WELL production casing cement job had failed.

**REQUEST FOR ADMISSION NO. 8:**

Please admit that prior to pumping cement for the production casing at the MACONDO WELL YOU did not review any cement lab test reports that showed the cement used would be stable.

**REQUEST FOR ADMISSION NO. 9:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform APC of YOUR decision not to spot heavy mud in the rat hole prior to pumping the cement for the MACONDO WELL production casing.

**REQUEST FOR ADMISSION NO. 10:**

Please admit that YOU did not inform APC of YOUR planned procedure for cementing the MACONDO WELL production casing in advance of the pumping of the cement for the MACONDO WELL production casing.

**REQUEST FOR ADMISSION NO. 11:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform APC of YOUR decision to violate YOUR own internal guidance policy that requires pumping annular cement 1,000 feet above the pay zone unless a cement evaluation is performed.

**REQUEST FOR ADMISSION NO. 12:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform APC that a Cement Bond Log was not run on the MACONDO WELL production casing cement.

**REQUEST FOR ADMISSION NO. 13:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform APC of YOUR decision to pump the MACONDO WELL production casing cement without reviewing any cement lab results to verify foam stability.

**REQUEST FOR ADMISSION NO. 14:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform APC of YOUR decision to resume well operations within sixteen (16) hours of pumping the cement for the MACONDO WELL production casing.

**REQUEST FOR ADMISSION NO. 15:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform APC that 450 barrels of 16 ppg lost circulation material pill consisting of Form-a-

A/74027735.2

Set and Form-a Squeeze was used as a spacer material during the temporary abandonment process at the MACONDO WELL.

**REQUEST FOR ADMISSION NO. 16:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform APC of the decision to set the surface cement plug in seawater at approximately 3,300 feet below the mudline.

**REQUEST FOR ADMISSION NO. 17:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform APC about the decision to set the Lockdown Sleeve after displacing approximately 3,300 feet of mud with seawater below the mud line.

**REQUEST FOR ADMISSION NO. 18:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform APC of any of YOUR planned operational procedures for temporary abandonment of the MACONDO WELL between April 12, 2010 and April 20, 2010.

**REQUEST FOR ADMISSION NO. 19:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform APC of any changes YOU made to the planned operational procedures for temporary abandonment of the MACONDO WELL between April 12, 2010 and April 20, 2010.

**REQUEST FOR ADMISSION NO. 20:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform APC that YOU did not intend to follow the April 16, 2010 MMS approved APM for temporary abandonment of the MACONDO WELL.

A/74027735.2

**REQUEST FOR ADMISSION NO. 21:**

Please admit that APC was not involved in developing any of the temporary abandonment plans for the MACONDO WELL which existed between April 12, 2010 and April 20, 2010.

**REQUEST FOR ADMISSION NO. 22:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not provide APC with any of the temporary abandonment operational procedures for the MACONDO WELL which existed between April 12, 2010 and April 20, 2010.

**REQUEST FOR ADMISSION NO. 23:**

Please admit that YOU did not include APC in any COMMUNICATIONS REGARDING the procedure for performing the negative pressure tests that were performed on April 20, 2010 on the *Deepwater Horizon.*

**REQUEST FOR ADMISSION NO. 24:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform APC of any results of the negative pressure tests performed during the temporary abandonment procedures at the MACONDO WELL.

**REQUEST FOR ADMISSION NO. 25:**

Please admit that APC was not involved in the daily operations at the MACONDO WELL.

**REQUEST FOR ADMISSION NO. 25:**

Please admit that APC did not make operational decisions REGARDING the MACONDO WELL.

**REQUEST FOR ADMISSION NO. 27:**

Please admit that during the period of January 1, 2010 to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform APC of changes to YOUR personnel involved with the MACONDO WELL.

10

**REQUEST FOR ADMISSION NO. 28:**

Please admit that YOU had sole responsibility to determine BP personnel issues with respect to

MACONDO WELL design and operations.

**REQUEST FOR ADMISSION NO. 29:**

Please admit that APC had no obligation to monitor well activity on INSITE Anywhere,

including on April 20, 2010.

**REQUEST FOR ADMISSION NO. 30:**

Please admit that YOU had no requirement that APC monitor well activity on INSITE

Anywhere, including on April 20, 2010.

**REQUEST FOR ADMISSION NO. 31:**

Please admit that, per YOUR Guidance for Sharing of Drilling, Completion and Interventions

Information with Co-Owners [BP-HZN-2179MDL00315197-315206], YOU could not share

certain technical work with APC as set forth therein.


Dated:  April 4, 2011


                                       Respectfully submitted,

                                          /s/  Ky E. Kirby

                                       Ky E. Kirby
                                       Ky.Kirby@bingham.com
                                       Warren Anthony Fitch
                                       Tony.Fitch@bingham.com
                                       BINGHAM MCCUTCHEN LLP
                                       2020 K Street, NW
                                       Washington, DC 20006-1806
                                       Telephone (202) 373-6000
                                       Facsimile (202) 373-6001

                                       James J. Dragna
                                       Jim.Dragna@bingham.com

A/74027735.2

BINGHAM MCCUTCHEN LLP
355 South Grand Avenue
Suite 4400
Los Angeles, California 90071-3106
Telephone (213) 680-6436
Facsimile (213) 680-8636

Deborah D. Kuchler, T.A. (La. Bar No. 17013)
Janika Polk (La. Bar No. 27608)
Robert Guidry (La. Bar No. 28064)
KUCHLER POLK SCHELL
WEINER & RICHESON, LLC
1615 Poydras Street, Suite 1300
New Orleans, LA  70112

**ATTORNEYS FOR ANADARKO
PETROLEUM CORPORATION**

12

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Defendant Anadarko Petroleum Corporation's First Requests for Admissions to Defendants BP America Inc., BP America Production Company, BP Exploration & Production Inc., and B.P., P.L.C., have been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, on this 4th day of April, 2011.

/s/ Ky E. Kirby

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

IN RE: OIL SPILL by the              MDL NO. 2179
OIL RIG "*DEEPWATER*
*HORIZON*" in the GULF OF         SECTION: J
MEXICO, on
APRIL 20, 2010                    JUDGE BARBIER
                                  MAG. JUDGE SHUSHAN


THIS DOCUMENT RELATES TO ALL CASES

---

**DEFENDANT MOEX OFFSHORE 2007 LLC'S SECOND SET OF
INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS
TO BP AMERICA INC., BP AMERICA PRODUCTION COMPANY, BP
EXPLORATION AND PRODUCTION INC., B.P. P.L.C. (COLLECTIVELY, "BP")**

Pursuant to Rules 26, 33 and 34 of the Federal Rules of Civil Procedure, Defendant MOEX Offshore 2007 LLC through undersigned Counsel, requests that Defendant BP answer the following Interrogatories and Requests for Production of Documents (collectively "Requests") under oath and produce the documents specified hereinafter, in accordance with the following Instructions and Definitions, within thirty (30) days hereof, at the offices of Bingham McCutchen LLP, 355 South Grand Avenue, Suite 4400, Los Angeles, California 90071-3106, or at such other time and place as may be agreed upon by counsel for the aforesaid parties.

**<u>INSTRUCTIONS</u>**

(a)      Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, these Requests are continuing in nature so that if, after answering, YOU acquire additional responsive knowledge or information or determine that an answer YOU provided was false, incomplete, or misleading, YOU are to serve supplemental or amended answers as soon as reasonably possible after acquiring such additional knowledge or information.      Furthermore,

DOCUMENTS or ELECTRONICALLY STORED INFORMATION ("ESI") prepared prior to or subsequent to the period covered by these Requests, but which nonetheless relate or refer thereto, are to be included in YOUR response.

(b)     As defined below, YOU are to produce all DOCUMENTS in YOUR possession, custody or CONTROL.   Production of DOCUMENTS shall be in conformance with all procedures and formats set forth by the Court.

(c)     All ESI responses to these discovery requests shall be produced in accordance with Pretrial Order No. 16.

(d)     All produced DOCUMENTS shall have a legible, unique page identifier ("Bates Number") electronically "burned" onto each image at a location that does not obliterate, conceal, or interfere with any information from the source DOCUMENT.  No other legend or stamp will be placed on the DOCUMENT image other than a confidentiality legend (where applicable) redactions (consistent with the Stipulated Protective Order in this matter, or any other protective orders agreed to in the future), and the Bates Number identified above.  The confidential legend shall be "burned" onto the DOCUMENT'S image at a location that does not obliterate or obscure any information from the source DOCUMENT.  WITH RESPECT TO the identification of files produced in their native format, the parties shall confer on an appropriate method for applying a unique identifier to each file produced.

(e)     Each page image file shall be named with the unique Bates Number of the page of DOCUMENT, followed by the extension ".TIF."  In the event the Bates Number contains a symbol and/or character that cannot be included in a file name, the symbol and/or character will be omitted from the file name.

A/74040204.1

(f)      If YOU refuse to respond to any of these Requests based on a claim of privilege, YOU shall provide a "Privilege Log" that complies with the provisions of Pretrial Order No. 14.

(g)      If YOU or any of YOUR attorneys, agents, or representatives at any time had possession or CONTROL of a DOCUMENT requested and that DOCUMENT has been lost, destroyed, or purged or is not presently in YOUR possession, custody, or CONTROL, IDENTIFY the DOCUMENT and DESCRIBE the circumstances surrounding the loss, destruction, purge, or separation from YOUR possession, custody, or CONTROL, indicating the dates that those circumstances occurred.

(h)      If YOU allege that any request is in any manner ambiguous, YOU are instructed to DESCRIBE in detail the reasons for YOUR allegations, including but not limited to, each interpretation to which YOU allege the specific request for discovery is subject. Notwithstanding any of the foregoing, YOU are instructed to respond, to the best of YOUR ability, to the request for production and produce the DOCUMENTS requested.

## **DEFINITIONS**

As used herein, the following terms are defined as follows:

(i)       "MACONDO WELL" means that exploratory well being drilled within the MACONDO PROSPECT pursuant to Lease OCS-G 32306.

(j)       "MACONDO PROSPECT" means the oil and gas prospect located within Mississippi Canyon Block 252, abbreviated MC252 in the Gulf of Mexico, off the coast of Louisiana, subject to Lease OCS-G 32306.

(k)      "BOP" or "BLOWOUT PREVENTER" means, without limitation, the large valve device(s) designed and used to ensure safety through the sealing, controlling, and

A/74040204.1

monitoring of oil and gas wells including the associated, monitoring, warning, electronic, and hydraulic systems.

(l)       "YOU," "YOUR," or "BP," means, without limitation, BP Exploration and Production, Inc., BP America, Inc., BP America Production Company, and BP, P.L.C., including its predecessors, successors, subsidiaries, departments, divisions, attorneys, accountants, and current and former directors, officers, EMPLOYEES, agents, representatives and PERSONS acting on its behalf.

(m)       "PERSON" means, without limitation, any and every natural individual, each and every association, partnership, joint venture, corporation, professional corporation, trust and any and every other identifiable entity.

(n)       "EMPLOYEE" means, without limitation, any current or former officer, director, executive, manager, secretary, staff member, messenger or other PERSON who is or was employed or subcontracted by YOU or has acted on YOUR behalf.

(o)       "COMMUNICATION" means, without limitation, any writing transmitted between PERSONS or any oral conversation of any kind or character, including, by way of example and without limitation, personal conversations, telephone conversations, letters, MEETINGS,        memoranda,        telegraphic,        telex,        COMPUTER        and        facsimile COMMUNICATIONS or transmittals of DOCUMENTS, ESI (as defined in section (r)) and all DOCUMENTS CONCERNING such writings or oral conversations.  "COMMUNICATION" as used herein specifically includes internal writings, oral conversations or MEETINGS among the officers, board members, EMPLOYEES or other representatives of any defendant.

(p)       "DOCUMENT" means, without limitation, the original and all non-identical copies of all writings, including any and all drafts, alterations and modifications, changes and amendments of any of the foregoing whether handwritten, typed, printed or otherwise

produced in any format including, but not limited to, paper or ESI.  This definition also includes, without limitation, books, records, manuals, statements, minutes, letters, correspondence, memoranda, legal pleadings, calendars, diaries, travel records, lists, tax returns, schedules, press releases, directives, agreements, contracts, print-outs, studies, summaries, records of telephone conversations, telegrams, notes, reports, compilations, notebooks, work papers, graphs, graphics, transcripts, charts, blueprints, timelines, pamphlets, brochures, circulars, manuals, instructions, ledgers, drawings, sketches, photographs, videotapes, film and sound reproductions, COMPUTER discs (including but not limited to, CDs, CD-Rs, DVDs, DVD-Rest, floppy discs, hard discs and hard drives), flash drives, pen drives, thumb drives, programming instructions, sales, advertising and promotional literature, agreements or minutes of MEETINGS, telephone conversations or other conversation or COMMUNICATION in YOUR possession, custody or CONTROL, or in the possession, custody or CONTROL of YOUR predecessors, successors, officers, directors, shareholders, EMPLOYEES, agents, representatives and attorneys.  This definition also includes non-printed matter such as voice records and reproductions, film impressions, photographs, videos, negatives, slides, microfilms, microfiches, e-mail, and other things that DOCUMENT or record ideas, words or impressions.  The term "DOCUMENT" further includes all punch cards, tapes, disks, or records used in electronic data processing, together with the programming instructions and other written materials necessary to understand or use such punch cards, tapes, disks or other recordings, and further includes ESI (as defined in section (r)) data or data compilation in electronic or other form that can be printed through proper programming or decoding of the electronic or mechanical data storage facility, including metadata.

(q)    "MEETING" means, without limitation, any assembly, convocation, encounter or contemporaneous presence of two or more PERSONS for any purpose, whether planned or

5

scheduled in advance, including written exchanges through internet/web based chat, including AOL Instant Messenger, or similar programs, electronic "bulletin board" programs, or internet/web based video chat, including Skype, or similar programs.

(r) "ELECTRONICALLY STORED INFORMATION" or "ESI" means the original (or identical duplicate when the original is not available), and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings and data compilations in any form, and of every kind and description whether inscribed by mechanical, facsimile, electronic, magnetic, digital or other means. ESI includes, by way of example only, COMPUTER programs (whether private, commercial, or work-in progress), programming notes or instructions, activity listings of electronic mail receipts and transmittals, output resulting from the use of any software program, including word processing DOCUMENTS, spreadsheets, database files, charts, graphs and outlines, electronic mail displaying full email aliases (not merely "display names"), electronic calendars, IM logs, PBX logs, DOCUMENT management system data, operating systems, all metadata, source code of all types, peripheral drivers, PIF files, batch files, ASCII files, and any and all miscellaneous files and file fragments, regardless of the media on which they reside and regardless of whether said ESI consists in an active file, deleted file or fragment. ESI includes any and all items stored on COMPUTER memories, hard disks, floppy disks, CD-ROMs, removable media such as Zip disks, Jaz cartridges, Bernoulli Boxes and their equivalent, magnetic tapes of all types disks, microfiche, punched cards, punched tape, COMPUTER chips, including, EPROM, PROM RAM and ROM, on or in any other vehicle for digital data storage and transmittal. The term ESI also includes the file, folder tabs and containers and labels appended to, or associated with, any physical storage device associated with each original and copy.

6

(s)      "COMPUTER" means, without limitation, all devices utilizing microchips to facilitate processing, analysis, or storage of data, including micro COMPUTERS (also known as personal COMPUTERS), laptop COMPUTERS, portable COMPUTERS, notebook COMPUTERS, palmtop COMPUTERS (also known as personal digital assistants or PDA's), iPads, mini COMPUTERS and mainframe COMPUTERS.

(t)      "CONTROL" means, without limitation, the ownership, possession, or custody of the DOCUMENT, or the right to secure the DOCUMENT or copy thereof from any PERSON or public and private entity having physical possession thereof.

(s)      "MOEX OFFSHORE" means, without limitation, MOEX Offshore 2007, LLC including its predecessors, successors, subsidiaries, departments, divisions, attorneys, accountants, and current and former directors, officers, EMPLOYEES, agents, representatives and PERSONS acting on its behalf.

(t)      "MOEX USA" means, without limitation, MOEX USA Corporation including its predecessors, successors, subsidiaries, departments, divisions, attorneys, accountants, and current and former directors, officers, EMPLOYEES, agents, representatives and PERSONS acting on its behalf.

(u)      "RELATING TO," "REGARDING," "CONCERNING," or "WITH RESPECT TO" means, without limitation, the following concepts: discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting or otherwise involving, in whole or in part.

(v)      "IDENTIFY" and "IDENTITY" when used in reference to a PERSON means to STATE the PERSON'S: (1) Full name; (2) Present or last known employment position, including the employer name; (3) Job title and/or description; and (4) Contact information.

7

(w)    "IDENTIFY" and "IDENTITY" when used WITH RESPECT TO a COMMUNICATION other than a writing means to STATE: (1) The full name of any PERSON who was a party to the COMMUNICATION; (2) The type of COMMUNICATION, e.g., telephone conversation, letter, telegram, teletype, telecopy, written memorandum, face-to-face conversation, or any other form; and the full name of any PERSONS participating therein, along with the date, duration, location(s) and the substance of the COMMUNICATION.

(x)    "DESCRIBE" means, in the case of an act, event, transaction, relationship, thing or occurrence, to IDENTIFY dates, places, PERSONS involved, and means employed; IDENTIFY YOUR sources of information CONCERNING such act, event, transaction, thing or occurrence, including the date YOU received such information; IDENTIFY each PERSON having knowledge of such act, event, transaction, thing or occurrence; and IDENTIFY each COMMUNICATION and each DOCUMENT RELATING TO such act, event, transaction, thing or occurrence.

(y)    "STATE" means, without limitation, to set forth in full and complete detail all knowledge and information in YOUR possession, custody or CONTROL RELATING TO the subject matter of the interrogatory, including without limitation the source and basis of YOUR knowledge and information if not otherwise evident from YOUR answer to the interrogatory and the IDENTITY of each DOCUMENT and each COMMUNICATION on which YOU rely to any extent in making YOUR answer.

(z)    "And" as well as "or" should be construed either disjunctively or conjunctively so that each request is given its broadest possible application.  If, for example, a request calls for information about "A" or "B," YOU should produce all information about A and all information about B, as well as all information about collectively A and B.  In other words, both "and" and "or" should be read as "and/or."

8

(aa)     "Any" should be construed, when possible, to mean "any and all."

(bb)     "Including" is used to emphasize the type of information requested and should not be construed as limiting the interrogatory or requests for production in any way. "Including" should be read as "including, but not limited to."

(cc)     "Each" should be construed to include the word "every," and "every" should be construed to include the word "each."

(dd)     A plural noun or pronoun should be construed as a singular noun, and a singular noun should be construed as a plural noun or pronoun, so that each request should be given its broadest possible application.

(ee)     The use of a verb in any tense should be construed to be the use of a verb in all other tenses so that each request should be given its broadest possible applications.

(ff)     Words of one gender shall be construed to include words of all genders so that each request in the request for production of DOCUMENTS shall be given its broadest possible application.

(gg)     Definitions provided herein apply to any grammatical variance of the term or phrase defined.

## INTERROGATORIES

## INTERROGATORY NO. 26

Please IDENTIFY each COMMUNICATION YOUR EMPLOYEES had with MOEX OFFSHORE or MOEX USA, on or before April 21, 2010, RELATING TO operations on or at the *Deepwater Horizon* in connection with the MACONDO WELL.  Such operations include, but are not limited to, design, drilling, cementing, temporary abandonment, rig and BOP maintenance, audits, float collar conversion, addressing lost circulation, bottoms up procedures, evaluating cement composition and integrity, well monitoring, and performing and

9

interpreting negative and positive pressure tests; IDENTIFY all PERSONS involved in such COMMUNICATIONS and DESCRIBE in detail the substance of each such COMMUNICATION and any response to or result from such COMMUNICATION.

**INTERROGATORY NO. 27:**

DESCRIBE in detail any and all information provided either orally or in writing by YOUR EMPLOYEES to MOEX OFFSHORE or MOEX USA, on or before April 21, 2010, REGARDING operations on or at the *Deepwater Horizon* in connection with the MACONDO WELL.  Such operations include, but are not limited to, design, drilling, cementing, temporary abandonment, rig and BOP maintenance, audits, float collar conversion, addressing lost circulation, bottoms up procedures, evaluating cement composition and integrity, well monitoring, and performing and interpreting negative and positive pressure; IDENTIFY each of YOUR EMPLOYEES who provided such information and the IDENTITY of the PERSON at MOEX OFFSHORE or MOEX USA to whom such information was provided.

**INTERROGATORY NO. 28:**

Please describe how YOU decided what information YOU would provide to MOEX OFFSHORE or MOEX USA RELATING TO the *Deepwater Horizon* or the MACONDO WELL.  IDENTIFY all EMPLOYEES involved in decisions RELATING TO the sharing of information with MOEX OFFSHORE or MOEX USA.

**INTERROGATORY NO. 29:**

Please IDENTIFY any written or unwritten guidelines, procedures, or protocols YOU used to determine what information CONCERNING activities RELATING TO the *Deepwater Horizon* or the MACONDO WELL YOU would provide to MOEX OFFSHORE or MOEX USA.  IDENTIFY who developed these guidelines, procedures, or protocols and who was responsible for carrying them out.

A/74040204.1

**INTERROGATORY NO. 30:**

For each of MOEX OFFSHORE 2007 LLC's First Request for Admissions served on April 4, 2011, that YOU do not unqualifiedly admit, STATE with particularity all facts which support YOUR response; IDENTIFY all PERSONS having knowledge of such facts; and IDENTIFY all DOCUMENTS reflecting such facts.

<strong>REQUESTS FOR PRODUCTION OF DOCUMENTS</strong>

**REQUEST FOR PRODUCTION NO. 29**:

Please produce all DOCUMENTS provided by YOUR EMPLOYEES to MOEX OFFSHORE or MOEX USA prior to April 21, 2010 RELATING TO operations on or at the *Deepwater Horizon* in connection with the MACONDO WELL.  Such operations include, but are not limited to, design, drilling, cementing, temporary abandonment, rig and BOP maintenance, audits, float collar conversion, addressing lost circulation, bottoms up procedures, evaluating cement composition and integrity, well monitoring, and performing and interpreting negative and positive pressure tests

**REQUEST FOR PRODUCTION NO. 30**:

Please produce all DOCUMENTS provided by MOEX OFFSHORE or MOEX USA to YOUR EMPLOYEES prior to April 21, 2010 RELATING TO operations on or at the *Deepwater Horizon* in connection with the MACONDO WELL.  Such operations include, but are not limited to, design, drilling, cementing, temporary abandonment, rig and BOP maintenance, audits, float collar conversion, addressing lost circulation, bottoms up procedures, evaluating cement composition and integrity, well monitoring, and performing and interpreting negative and positive pressure.

**REQUEST FOR PRODUCTION NO. 31**:

Please produce all DOCUMENTS RELATING TO COMMUNICATIONS between YOUR

11

EMPLOYEES and MOEX OFFSHORE or MOEX USA prior to April 21, 2010 REGARDING operations on or at the *Deepwater Horizon* in connection with the MACONDO WELL.  Such operations include, but are not limited to, design, drilling, cementing, temporary abandonment, rig and BOP maintenance, audits, float collar conversion, addressing lost circulation, bottoms up procedures, evaluating cement composition and integrity, well monitoring, and performing and interpreting negative and positive pressure tests.

**REQUEST FOR PRODUCTION NO. 32**:

Please produce all DOCUMENTS evidencing or RELATING TO information provided by YOUR EMPLOYEES to MOEX OFFSHORE or MOEX USA prior to April 21, 2010 REGARDING operations on or at the *Deepwater Horizon* in connection with the MACONDO WELL.  Such operations include, but are not limited to, design, drilling, cementing, temporary abandonment, rig and BOP maintenance, audits, float collar conversion, addressing lost circulation, bottoms up procedures, evaluating cement composition and integrity, well monitoring, and performing and interpreting negative and positive pressure tests.

**REQUEST FOR PRODUCTION NO. 33**:

Please produce any DOCUMENTS RELATING TO YOUR decisions CONCERNING whether to provide information REGARDING the *Deepwater Horizon* or MACONDO WELL to MOEX OFFSHORE or MOEX USA.

**REQUEST FOR PRODUCTION NO. 34:**

Please produce all DOCUMENTS IDENTIFIED in YOUR response to Interrogatory No. 30.


Dated:  April 4, 2011

Respectfully submitted,

/s/  Ky E. Kirby_____

Ky E. Kirby

12

Ky.Kirby@bingham.com
Warren Anthony Fitch
Tony.Fitch@bingham.com
BINGHAM MCCUTCHEN LLP
2020 K Street, NW
Washington, DC 20006-1806
Telephone (202) 373-6000
Facsimile (202) 373-6001

James J. Dragna
Jim.Dragna@bingham.com
BINGHAM MCCUTCHEN LLP
355 South Grand Avenue
Suite 4400
Los Angeles, California 90071-3106
Telephone (213) 680-6436
Facsimile (213) 680-8636

Deborah D. Kuchler, T.A. (La. Bar No.
17013)
Janika Polk (La. Bar No. 27608)
Robert Guidry (La. Bar No. 28064)
KUCHLER POLK SCHELL
WEINER & RICHESON, LLC
1615 Poydras Street, Suite 1300
New Orleans, LA  70112

**ATTORNEYS FOR MOEX
OFFSHORE 2007 LLC**

13

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing Defendant MOEX Offshore 2007 LLC's Second

Set of Interrogatories and Requests for Production of Documents to Defendants BP America

Inc., BP America Production Company, BP Exploration & Production Inc., and B.P.,

P.L.C., have been served on All Counsel by electronically uploading the same to Lexis Nexis

File & Serve in accordance with Pretrial Order No. 12, on this 4th day of April, 2011.


/s/  Ky E. Kirby


14

A/74040204.1

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: OIL SPILL by the OIL RIG "*DEEPWATER HORIZON*" in the GULF OF MEXICO, on APRIL 20, 2010 | MDL NO. 2179<br><br>SECTION: J<br><br>JUDGE BARBIER<br>MAG. JUDGE SHUSHAN |

**THIS DOCUMENT RELATES TO ALL CASES**

---

**DEFENDANT MOEX OFFSHORE 2007 LLC'S FIRST REQUESTS FOR ADMISSIONS TO BP AMERICA INC., BP AMERICA PRODUCTION COMPANY, BP EXPLORATION AND PRODUCTION INC., B.P. P.L.C. (COLLECTIVELY, "BP")**

Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure, Defendant MOEX Offshore 2007 LLC ("MOEX OFFSHORE") through undersigned Counsel, requests that Defendant BP answer the following Requests for Admission completely and under oath, within thirty (30) days hereof, at the offices of Bingham McCutchen LLP, 355 South Grand Avenue, Suite 4400, Los Angeles, California 90071-3106, or at such other time and place as may be agreed upon by counsel for the aforesaid parties.

## DEFINITIONS

(a)     "MACONDO WELL" means that exploratory well being drilled within the MACONDO PROSPECT pursuant to Lease OCS-G 32306.

(b)     "MACONDO PROSPECT" means the oil and gas prospect located within Mississippi Canyon Block 252, abbreviated MC252 in the Gulf of Mexico, off the coast of Louisiana, subject to Lease OCS-G 32306.

(c)     "YOU," "YOUR," or "BP," means, without limitation, BP Exploration and Production, Inc., BP America, Inc., BP America Production Company, and BP, P.L.C.,

including its predecessors, successors, subsidiaries, departments, divisions, attorneys, accountants, and current and former directors, officers, EMPLOYEES, agents, representatives and PERSONS acting on its behalf.

(d)    "PERSON" means, without limitation, any and every natural individual, each and every association, partnership, joint venture, corporation, professional corporation, trust and any and every other identifiable entity.

(e)    "EMPLOYEE" means, without limitation, any current or former officer, director, executive, manager, secretary, staff member, messenger or other PERSON who is or was employed or subcontracted by YOU or has acted on YOUR behalf.

(f)    "REGARDING," or "CONCERNING," means, without limitation, the following concepts: discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting or otherwise involving, in whole or in part.

(g)    "COMMUNICATION" means, without limitation, any writing transmitted between PERSONS or any oral conversation of any kind or character, including, by way of example and without limitation, personal conversations, telephone conversations, letters, MEETINGS, memoranda, telegraphic, telex, COMPUTER and facsimile COMMUNICATIONS or transmittals of DOCUMENTS, ESI (as defined in section (j)) and all DOCUMENTS CONCERNING such writings or oral conversations. "COMMUNICATION" as used herein specifically includes internal writings, oral conversations or MEETINGS among the officers, board members, EMPLOYEES or other representatives of any defendant.

(h)    "DOCUMENT" means, without limitation, the original and all non-identical copies of all writings, including any and all drafts, alterations and modifications, changes and amendments of any of the foregoing whether handwritten, typed, printed or otherwise

2

produced in any format including, but not limited to, paper or ESI. This definition also includes, without limitation, books, records, manuals, statements, minutes, letters, correspondence, memoranda, legal pleadings, calendars, diaries, travel records, lists, tax returns, schedules, press releases, directives, agreements, contracts, print-outs, studies, summaries, records of telephone conversations, telegrams, notes, reports, compilations, notebooks, work papers, graphs, graphics, transcripts, charts, blueprints, timelines, pamphlets, brochures, circulars, manuals, instructions, ledgers, drawings, sketches, photographs, videotapes, film and sound reproductions, COMPUTER discs (including but not limited to, CDs, CD-Rs, DVDs, DVD-Rest, floppy discs, hard discs and hard drives), flash drives, pen drives, thumb drives, programming instructions, sales, advertising and promotional literature, agreements or minutes of MEETINGS, telephone conversations or other conversation or COMMUNICATION in YOUR possession, custody or CONTROL, or in the possession, custody or CONTROL of YOUR predecessors, successors, officers, directors, shareholders, EMPLOYEES, agents, representatives and attorneys. This definition also includes non-printed matter such as voice records and reproductions, film impressions, photographs, videos, negatives, slides, microfilms, microfiches, e-mail, and other things that DOCUMENT or record ideas, words or impressions. The term "DOCUMENT" further includes all punch cards, tapes, disks, or records used in electronic data processing, together with the programming instructions and other written materials necessary to understand or use such punch cards, tapes, disks or other recordings, and further includes ESI (as defined in section (j)) data or data compilation in electronic or other form that can be printed through proper programming or decoding of the electronic or mechanical data storage facility, including metadata.

(i)      "MEETING" means, without limitation, any assembly, convocation, encounter or contemporaneous presence of two or more PERSONS for any purpose, whether planned or

3

scheduled in advance, including written exchanges through internet/web based chat, including

AOL Instant Messenger, or similar programs, electronic "bulletin board" programs, or

internet/web based video chat, including Skype, or similar programs.

(j)     "ELECTRONICALLY STORED INFORMATION" or "ESI" means the

original (or identical duplicate when the original is not available), and any non-identical copies

(whether non-identical because of notes made on copies or attached comments, annotations,

marks, transmission notations, or highlighting of any kind) of writings and data compilations in

any form, and of every kind and description whether inscribed by mechanical, facsimile,

electronic, magnetic, digital or other means.   ESI includes, by way of example only,

COMPUTER programs (whether private, commercial, or work-in progress), programming

notes or instructions, activity listings of electronic mail receipts and transmittals, output

resulting from the use of any software program, including word processing DOCUMENTS,

spreadsheets, database files, charts, graphs and outlines, electronic mail displaying full email

aliases (not merely "display names"), electronic calendars, IM logs, PBX logs, DOCUMENT

management system data, operating systems, all metadata, source code of all types, peripheral

drivers, PIF files, batch files, ASCII files, and any and all miscellaneous files and file

fragments, regardless of the media on which they reside and regardless of whether said ESI

consists in an active file, deleted file or fragment.   ESI includes any and all items stored on

COMPUTER memories, hard disks, floppy disks, CD-ROMs, removable media such as Zip

disks, Jaz cartridges, Bernoulli Boxes and their equivalent, magnetic tapes of all types disks,

microfiche, punched cards, punched tape, COMPUTER chips, including, EPROM, PROM

RAM and ROM, on or in any other vehicle for digital data storage and transmittal.   The term

ESI also includes the file, folder tabs and containers and labels appended to, or associated with,

any physical storage device associated with each original and copy.

4

(k)     "COMPUTER" means, without limitation, all devices utilizing microchips to facilitate processing, analysis, or storage of data, including micro COMPUTERS (also known as personal COMPUTERS), laptop COMPUTERS, portable COMPUTERS, notebook COMPUTERS, palmtop COMPUTERS (also known as personal digital assistants or PDA's), iPads, mini COMPUTERS and mainframe COMPUTERS.

(l)     "CONTROL" means, without limitation, the ownership, possession, or custody of the DOCUMENT, or the right to secure the DOCUMENT or copy thereof from any PERSON or public and private entity having physical possession thereof.

(m)     "And" as well as "or" should be construed either disjunctively or conjunctively so that each request is given its broadest possible application.  If, for example, a request calls for information about "A" or "B," YOU should produce all information about A and all information about B, as well as all information about collectively A and B.  In other words, both "and" and "or" should be read as "and/or."

(n)     "Any" should be construed, when possible, to mean "any and all."

(o)     "Including" is used to emphasize the type of information requested and should not be construed as limiting the interrogatory or requests for production in any way. "Including" should be read as "including, but not limited to."

(p)     "Each" should be construed to include the word "every," and "every" should be construed to include the word "each."

(q)     A plural noun or pronoun should be construed as a singular noun, and a singular noun should be construed as a plural noun or pronoun, so that each request should be given its broadest possible application.

(r)     The use of a verb in any tense should be construed to be the use of a verb in all other tenses so that each request should be given its broadest possible applications.

5

(s)      Words of one gender shall be construed to include words of all genders so that each request in the request for production of DOCUMENTS shall be given its broadest possible application.

(t)      Definitions provided herein apply to any grammatical variance of the term or phrase defined.

## REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1:**

Please admit that MOEX OFFSHORE personnel never visited the *Marianas* or *Deepwater Horizon* rigs during the drilling of the MACONDO WELL.

**REQUEST FOR ADMISSION NO. 2:**

Please admit that MOEX OFFSHORE did not participate in developing the cement design for the MACONDO WELL production casing.

**REQUEST FOR ADMISSION NO. 3:**

Please admit that MOEX OFFSHORE did not participate in approving the cement design for the MACONDO WELL production casing.

**REQUEST FOR ADMISSION NO. 4:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform MOEX OFFSHORE that in Halliburton's April 15, 2010 MACONDO WELL production casing OptiCem report, Halliburton advised using twenty-one (21) centralizers on the production casing at the MACONDO WELL.

**REQUEST FOR ADMISSION NO. 5:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform MOEX OFFSHORE that Halliburton had run an OptiCem model for the

A/74040296.1

MACONDO WELL production casing cement job that concluded the use of seven (7) centralizers would lead to a severe gas flow problem.

**REQUEST FOR ADMISSION NO. 6:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform MOEX OFFSHORE of the results of any of the tests run by Halliburton in connection with the MACONDO WELL production casing cement job.

**REQUEST FOR ADMISSION NO. 7:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform MOEX OFFSHORE that any stability tests run by Halliburton in connection the MACONDO WELL production casing cement job had failed.

**REQUEST FOR ADMISSION NO. 8:**

Please admit that prior to pumping cement for the production casing at the MACONDO WELL YOU did not review any cement lab test reports that showed the cement used would be stable.

**REQUEST FOR ADMISSION NO. 9:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform MOEX OFFSHORE of YOUR decision not to spot heavy mud in the rat hole prior to pumping the cement for the MACONDO WELL production casing.

**REQUEST FOR ADMISSION NO. 10:**

Please admit that YOU did not inform MOEX OFFSHORE of YOUR planned procedure for cementing the MACONDO WELL production casing in advance of the pumping of the cement for the MACONDO WELL production casing.

**REQUEST FOR ADMISSION NO. 11:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform MOEX OFFSHORE of YOUR decision to violate YOUR own internal guidance

A/74040296.1

policy that requires pumping annular cement 1,000 feet above the pay zone unless a cement evaluation is performed.

**REQUEST FOR ADMISSION NO. 12:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform MOEX OFFSHORE that a Cement Bond Log was not run on the MACONDO WELL production casing cement.

**REQUEST FOR ADMISSION NO. 13:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform MOEX OFFSHORE of YOUR decision to pump the MACONDO WELL production casing cement without reviewing any cement lab results to verify foam stability.

**REQUEST FOR ADMISSION NO. 14:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform MOEX OFFSHORE of YOUR decision to resume well operations within sixteen (16) hours of pumping the cement for the MACONDO WELL production casing.

**REQUEST FOR ADMISSION NO. 15:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform MOEX OFFSHORE that 450 barrels of 16 ppg lost circulation material pill consisting of Form-a-Set and Form-a Squeeze was used as a spacer material during the temporary abandonment process at the MACONDO WELL.

**REQUEST FOR ADMISSION NO. 16:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform MOEX OFFSHORE of the decision to set the surface cement plug in seawater at approximately 3,300 feet below the mudline.

**REQUEST FOR ADMISSION NO. 17:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform MOEX OFFSHORE about the decision to set the Lockdown Sleeve after displacing approximately 3,300 feet of mud with seawater below the mud line.

**REQUEST FOR ADMISSION NO. 18:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform MOEX OFFSHORE of any of YOUR planned operational procedures for temporary abandonment of the MACONDO WELL between April 12, 2010 and April 20, 2010.

**REQUEST FOR ADMISSION NO. 19:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform MOEX OFFSHORE of any changes YOU made to the planned operational procedures for temporary abandonment of the MACONDO WELL between April 12, 2010 and April 20, 2010.

**REQUEST FOR ADMISSION NO. 20:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform MOEX OFFSHORE that YOU did not intend to follow the April 16, 2010 MMS approved APM for temporary abandonment of the MACONDO WELL.

**REQUEST FOR ADMISSION NO. 21:**

Please admit that MOEX OFFSHORE was not involved in developing any of the temporary abandonment plans for the MACONDO WELL which existed between April 12, 2010 and April 20, 2010.

A/74040296.1

**REQUEST FOR ADMISSION NO. 22:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not provide MOEX OFFSHORE with any of the temporary abandonment operational procedures for the MACONDO WELL which existed between April 12, 2010 and April 20, 2010.

**REQUEST FOR ADMISSION NO. 23:**

Please admit that YOU did not include MOEX OFFSHORE in any COMMUNICATIONS REGARDING the procedure for performing the negative pressure tests that were performed on April 20, 2010 on the *Deepwater Horizon.*

**REQUEST FOR ADMISSION NO. 24:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform MOEX OFFSHORE of any results of the negative pressure tests performed during the temporary abandonment procedures at the MACONDO WELL.

**REQUEST FOR ADMISSION NO. 25:**

Please admit that MOEX OFFSHORE was not involved in the daily operations at the MACONDO WELL.

**REQUEST FOR ADMISSION NO. 26:**

Please admit that MOEX OFFSHORE did not make operational decisions REGARDING the MACONDO WELL.

**REQUEST FOR ADMISSION NO. 25:**

Please admit that during the period of January 1, 2010 to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform MOEX OFFSHORE of changes to YOUR personnel involved with the MACONDO WELL.

A/74040296.1

**REQUEST FOR ADMISSION NO. 28:**

Please admit that YOU had sole responsibility to determine BP personnel issues with respect to

MACONDO WELL design and operations.

**REQUEST FOR ADMISSION NO. 29:**

Please admit that MOEX OFFSHORE had no obligation to monitor well activity on INSITE

Anywhere, including on April 20, 2010.

**REQUEST FOR ADMISSION NO. 30:**

Please admit that YOU had no requirement that MOEX OFFSHORE monitor well activity on

INSITE Anywhere, including on April 20, 2010.

**REQUEST FOR ADMISSION NO. 31:**

Please admit that, per YOUR Guidance for Sharing of Drilling, Completion and Interventions

Information with Co-Owners [BP-HZN-2179MDL00315197-315206], YOU could not share

certain technical work with MOEX OFFSHORE as set forth therein.


Dated:  April 4, 2011


                                        Respectfully submitted,


                                         /s/  Ky E. Kirby_____

                                        Ky E. Kirby
                                        Ky.Kirby@bingham.com
                                        Warren Anthony Fitch
                                        Tony.Fitch@bingham.com
                                        BINGHAM MCCUTCHEN LLP
                                        2020 K Street, NW
                                        Washington, DC 20006-1806
                                        Telephone (202) 373-6000
                                        Facsimile (202) 373-6001

                                        James J. Dragna
                                        Jim.Dragna@bingham.com

BINGHAM MCCUTCHEN LLP
355 South Grand Avenue
Suite 4400
Los Angeles, California 90071-3106
Telephone (213) 680-6436
Facsimile (213) 680-8636

Deborah D. Kuchler, T.A. (La. Bar No. 17013)
Janika Polk (La. Bar No. 27608)
Robert Guidry (La. Bar No. 28064)
KUCHLER POLK SCHELL
WEINER & RICHESON, LLC
1615 Poydras Street, Suite 1300
New Orleans, LA  70112

**ATTORNEYS FOR MOEX OFFSHORE 2007 LLC**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Defendant MOEX Offshore 2007 LLC'S First Set

of Requests for Admissions to Defendants BP America Inc., BP America Production Com-

pany, BP Exploration & Production Inc., and B.P., P.L.C., have been served on All Counsel

12

by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial

Order No. 12, on this 4th day of April, 2011.

_/s/_ Ky E. Kirby_____

13

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: OIL SPILL by the OIL RIG "*DEEPWATER HORIZON*" in the GULF OF MEXICO, on APRIL 20, 2010 | MDL NO. 2179<br><br>SECTION: J<br><br>JUDGE BARBIER<br>MAG. JUDGE SHUSHAN |

**THIS DOCUMENT RELATES TO ALL CASES**

---

**DEFENDANT MOEX USA CORPORATION'S FIRST REQUESTS FOR ADMISSIONS TO BP AMERICA INC., BP AMERICA PRODUCTION COMPANY, BP EXPLORATION AND PRODUCTION INC., B.P. P.L.C. (COLLECTIVELY, "BP")**

Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure, Defendant MOEX USA Corporation ("MOEX USA") through undersigned Counsel, requests that Defendant BP answer the following Requests for Admission completely and under oath, within thirty (30) days hereof, at the offices of Bingham McCutchen LLP, 355 South Grand Avenue, Suite 4400, Los Angeles, California 90071-3106, or at such other time and place as may be agreed upon by counsel for the aforesaid parties.

## DEFINITIONS

(a)    "MACONDO WELL" means that exploratory well being drilled within the MACONDO PROSPECT pursuant to Lease OCS-G 32306.

(b)    "MACONDO PROSPECT" means the oil and gas prospect located within Mississippi Canyon Block 252, abbreviated MC252 in the Gulf of Mexico, off the coast of Louisiana, subject to Lease OCS-G 32306.

(c)    "YOU," "YOUR," or "BP," means, without limitation, BP Exploration and Production, Inc., BP America, Inc., BP America Production Company, and BP, P.L.C.,

including its predecessors, successors, subsidiaries, departments, divisions, attorneys, accountants, and current and former directors, officers, EMPLOYEES, agents, representatives and PERSONS acting on its behalf.

(d)     "PERSON" means, without limitation, any and every natural individual, each and every association, partnership, joint venture, corporation, professional corporation, trust and any and every other identifiable entity.

(e)     "EMPLOYEE" means, without limitation, any current or former officer, director, executive, manager, secretary, staff member, messenger or other PERSON who is or was employed or subcontracted by YOU or has acted on YOUR behalf.

(f)     "REGARDING," or "CONCERNING," means, without limitation, the following concepts: discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting or otherwise involving, in whole or in part.

(g)     "COMMUNICATION" means, without limitation, any writing transmitted between PERSONS or any oral conversation of any kind or character, including, by way of example and without limitation, personal conversations, telephone conversations, letters, MEETINGS, memoranda, telegraphic, telex, COMPUTER and facsimile COMMUNICATIONS or transmittals of DOCUMENTS, ESI (as defined in section (j)) and all DOCUMENTS CONCERNING such writings or oral conversations. "COMMUNICATION" as used herein specifically includes internal writings, oral conversations or MEETINGS among the officers, board members, EMPLOYEES or other representatives of any defendant.

(h)     "DOCUMENT" means, without limitation, the original and all non-identical copies of all writings, including any and all drafts, alterations and modifications, changes and amendments of any of the foregoing whether handwritten, typed, printed or otherwise

2

produced in any format including, but not limited to, paper or ESI. This definition also includes, without limitation, books, records, manuals, statements, minutes, letters, correspondence, memoranda, legal pleadings, calendars, diaries, travel records, lists, tax returns, schedules, press releases, directives, agreements, contracts, print-outs, studies, summaries, records of telephone conversations, telegrams, notes, reports, compilations, notebooks, work papers, graphs, graphics, transcripts, charts, blueprints, timelines, pamphlets, brochures, circulars, manuals, instructions, ledgers, drawings, sketches, photographs, videotapes, film and sound reproductions, COMPUTER discs (including but not limited to, CDs, CD-Rs, DVDs, DVD-Rest, floppy discs, hard discs and hard drives), flash drives, pen drives, thumb drives, programming instructions, sales, advertising and promotional literature, agreements or minutes of MEETINGS, telephone conversations or other conversation or COMMUNICATION in YOUR possession, custody or CONTROL, or in the possession, custody or CONTROL of YOUR predecessors, successors, officers, directors, shareholders, EMPLOYEES, agents, representatives and attorneys. This definition also includes non-printed matter such as voice records and reproductions, film impressions, photographs, videos, negatives, slides, microfilms, microfiches, e-mail, and other things that DOCUMENT or record ideas, words or impressions. The term "DOCUMENT" further includes all punch cards, tapes, disks, or records used in electronic data processing, together with the programming instructions and other written materials necessary to understand or use such punch cards, tapes, disks or other recordings, and further includes ESI (as defined in section (j)) data or data compilation in electronic or other form that can be printed through proper programming or decoding of the electronic or mechanical data storage facility, including metadata.

(i)      "MEETING" means, without limitation, any assembly, convocation, encounter or contemporaneous presence of two or more PERSONS for any purpose, whether planned or

scheduled in advance, including written exchanges through internet/web based chat, including AOL Instant Messenger, or similar programs, electronic "bulletin board" programs, or internet/web based video chat, including Skype, or similar programs.

(j)     "ELECTRONICALLY STORED INFORMATION" or "ESI" means the original (or identical duplicate when the original is not available), and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings and data compilations in any form, and of every kind and description whether inscribed by mechanical, facsimile, electronic, magnetic, digital or other means.  ESI includes, by way of example only, COMPUTER programs (whether private, commercial, or work-in progress), programming notes or instructions, activity listings of electronic mail receipts and transmittals, output resulting from the use of any software program, including word processing DOCUMENTS, spreadsheets, database files, charts, graphs and outlines, electronic mail displaying full email aliases (not merely "display names"), electronic calendars, IM logs, PBX logs, DOCUMENT management system data, operating systems, all metadata, source code of all types, peripheral drivers, PIF files, batch files, ASCII files, and any and all miscellaneous files and file fragments, regardless of the media on which they reside and regardless of whether said ESI consists in an active file, deleted file or fragment.  ESI includes any and all items stored on COMPUTER memories, hard disks, floppy disks, CD-ROMs, removable media such as Zip disks, Jaz cartridges, Bernoulli Boxes and their equivalent, magnetic tapes of all types disks, microfiche, punched cards, punched tape, COMPUTER chips, including, EPROM, PROM RAM and ROM, on or in any other vehicle for digital data storage and transmittal.  The term ESI also includes the file, folder tabs and containers and labels appended to, or associated with, any physical storage device associated with each original and copy.

4

(k)      "COMPUTER" means, without limitation, all devices utilizing microchips to facilitate processing, analysis, or storage of data, including micro COMPUTERS (also known as personal COMPUTERS), laptop COMPUTERS, portable COMPUTERS, notebook COMPUTERS, palmtop COMPUTERS (also known as personal digital assistants or PDA's), iPads, mini COMPUTERS and mainframe COMPUTERS.

(l)      "CONTROL" means, without limitation, the ownership, possession, or custody of the DOCUMENT, or the right to secure the DOCUMENT or copy thereof from any PERSON or public and private entity having physical possession thereof.

(m)      "And" as well as "or" should be construed either disjunctively or conjunctively so that each request is given its broadest possible application.  If, for example, a request calls for information about "A" or "B," YOU should produce all information about A and all information about B, as well as all information about collectively A and B.  In other words, both "and" and "or" should be read as "and/or."

(n)      "Any" should be construed, when possible, to mean "any and all."

(o)      "Including" is used to emphasize the type of information requested and should not be construed as limiting the interrogatory or requests for production in any way. "Including" should be read as "including, but not limited to."

(p)      "Each" should be construed to include the word "every," and "every" should be construed to include the word "each."

(q)      A plural noun or pronoun should be construed as a singular noun, and a singular noun should be construed as a plural noun or pronoun, so that each request should be given its broadest possible application.

(r)      The use of a verb in any tense should be construed to be the use of a verb in all other tenses so that each request should be given its broadest possible applications.

5

(s)      Words of one gender shall be construed to include words of all genders so that each request in the request for production of DOCUMENTS shall be given its broadest possible application.

(t)      Definitions provided herein apply to any grammatical variance of the term or phrase defined.

**REQUESTS FOR ADMISSION**

**REQUEST FOR ADMISSION NO. 1:**

Please admit that MOEX USA personnel never visited the *Marianas* or *Deepwater Horizon* rigs during the drilling of the MACONDO WELL.

**REQUEST FOR ADMISSION NO. 2:**

Please admit that MOEX USA did not participate in developing the cement design for the MACONDO WELL production casing.

**REQUEST FOR ADMISSION NO. 3:**

Please admit that MOEX USA did not participate in approving the cement design for the MACONDO WELL production casing.

**REQUEST FOR ADMISSION NO. 4:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform MOEX USA that in Halliburton's April 15, 2010 MACONDO WELL production casing OptiCem report, Halliburton advised using twenty-one (21) centralizers on the production casing at the MACONDO WELL.

**REQUEST FOR ADMISSION NO. 5:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform MOEX USA that Halliburton had run an OptiCem model for the MACONDO

6

WELL production casing cement job that concluded the use of seven (7) centralizers would lead to a severe gas flow problem.

**REQUEST FOR ADMISSION NO. 6:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform MOEX USA of the results of any of the tests run by Halliburton in connection with the MACONDO WELL production casing cement job.

**REQUEST FOR ADMISSION NO. 7:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform MOEX USA that any stability tests run by Halliburton in connection the MACONDO WELL production casing cement job had failed.

**REQUEST FOR ADMISSION NO. 8:**

Please admit that prior to pumping cement for the production casing at the MACONDO WELL YOU did not review any cement lab test reports that showed the cement used would be stable.

**REQUEST FOR ADMISSION NO. 9:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform MOEX USA of YOUR decision not to spot heavy mud in the rat hole prior to pumping the cement for the MACONDO WELL production casing.

**REQUEST FOR ADMISSION NO. 10:**

Please admit that YOU did not inform MOEX USA of YOUR planned procedure for cementing the MACONDO WELL production casing in advance of the pumping of the cement for the MACONDO WELL production casing.

**REQUEST FOR ADMISSION NO. 11:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform MOEX USA of YOUR decision to violate YOUR own internal guidance policy that

7

requires pumping annular cement 1,000 feet above the pay zone unless a cement evaluation is performed.

**REQUEST FOR ADMISSION NO. 12:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform MOEX USA that a Cement Bond Log was not run on the MACONDO WELL production casing cement.

**REQUEST FOR ADMISSION NO. 13:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform MOEX USA of YOUR decision to pump the MACONDO WELL production casing cement without reviewing any cement lab results to verify foam stability.

**REQUEST FOR ADMISSION NO. 14:**

Please admit that prior to the explosion on the Deepwater Horizon on April 20, 2010, YOU did not inform MOEX USA of YOUR decision to resume well operations within sixteen (16) hours of pumping the cement for the MACONDO WELL production casing.

**REQUEST FOR ADMISSION NO. 15:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform MOEX USA that 450 barrels of 16 ppg lost circulation material pill consisting of Form-a-Set and Form-a Squeeze was used as a spacer material during the temporary abandonment process at the MACONDO WELL.

**REQUEST FOR ADMISSION NO. 16:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform MOEX USA of the decision to set the surface cement plug in seawater at approximately 3,300 feet below the mudline.

A/74047046.1

**REQUEST FOR ADMISSION NO. 17:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform MOEX USA about the decision to set the Lockdown Sleeve after displacing approximately 3,300 feet of mud with seawater below the mud line.

**REQUEST FOR ADMISSION NO. 18:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform MOEX USA of any of YOUR planned operational procedures for temporary abandonment of the MACONDO WELL between April 12, 2010 and April 20, 2010.

**REQUEST FOR ADMISSION NO. 19:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform MOEX USA of any changes YOU made to the planned operational procedures for temporary abandonment of the MACONDO WELL between April 12, 2010 and April 20, 2010.

**REQUEST FOR ADMISSION NO. 20:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform MOEX USA that YOU did not intend to follow the April 16, 2010 MMS approved APM for temporary abandonment of the MACONDO WELL.

**REQUEST FOR ADMISSION NO. 21:**

Please admit that MOEX USA was not involved in developing any of the temporary abandonment plans for the MACONDO WELL which existed between April 12, 2010 and April 20, 2010.

A/74047046.1

**REQUEST FOR ADMISSION NO. 22:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not provide MOEX USA with any of the temporary abandonment operational procedures for the MACONDO WELL which existed between April 12, 2010 and April 20, 2010.

**REQUEST FOR ADMISSION NO. 23:**

Please admit that YOU did not include MOEX USA in any COMMUNICATIONS REGARDING the procedure for performing the negative pressure tests that were performed on April 20, 2010 on the *Deepwater Horizon.*

**REQUEST FOR ADMISSION NO. 24:**

Please admit that prior to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform MOEX USA of any results of the negative pressure tests performed during the temporary abandonment procedures at the MACONDO WELL.

**REQUEST FOR ADMISSION NO. 25:**

Please admit that MOEX USA was not involved in the daily operations at the MACONDO WELL.

**REQUEST FOR ADMISSION NO. 26:**

Please admit that MOEX USA did not make operational decisions REGARDING the MACONDO WELL.

**REQUEST FOR ADMISSION NO. 27:**

Please admit that during the period of January 1, 2010 to the explosion on the *Deepwater Horizon* on April 20, 2010, YOU did not inform MOEX USA of changes to YOUR personnel involved with the MACONDO WELL.

A/74047046.1

**REQUEST FOR ADMISSION NO. 28:**

Please admit that YOU had sole responsibility to determine BP personnel issues with respect to

MACONDO WELL design and operations.

**REQUEST FOR ADMISSION NO. 29:**

Please admit that MOEX USA had no obligation to monitor well activity on INSITE

Anywhere, including on April 20, 2010.

**REQUEST FOR ADMISSION NO. 30:**

Please admit that YOU had no requirement that MOEX USA monitor well activity on INSITE

Anywhere, including on April 20, 2010.

**REQUEST FOR ADMISSION NO. 31:**

Please admit that, per YOUR Guidance for Sharing of Drilling, Completion and Interventions

Information with Co-Owners [BP-HZN-2179MDL00315197-315206], YOU could not share

certain technical work with MOEX USA as set forth therein.


Dated:  April 4, 2011


Respectfully submitted,


 /s/  Ky E. Kirby

Ky E. Kirby
Ky.Kirby@bingham.com
Warren Anthony Fitch
Tony.Fitch@bingham.com
BINGHAM MCCUTCHEN LLP
2020 K Street, NW
Washington, DC 20006-1806
Telephone (202) 373-6000
Facsimile (202) 373-6001

James J. Dragna
Jim.Dragna@bingham.com

11

BINGHAM MCCUTCHEN LLP
355 South Grand Avenue
Suite 4400
Los Angeles, California 90071-3106
Telephone (213) 680-6436
Facsimile (213) 680-8636

Deborah D. Kuchler, T.A. (La. Bar No. 17013)
Janika Polk (La. Bar No. 27608)
Robert Guidry (La. Bar No. 28064)
KUCHLER POLK SCHELL
WEINER & RICHESON, LLC
1615 Poydras Street, Suite 1300
New Orleans, LA  70112

**ATTORNEYS FOR MOEX
USA CORPORATION**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that the above and foregoing Defendant MOEX USA Corporation's First Set of

Requests for Admissions to Defendants BP America Inc., BP America Production Com-

pany, BP Exploration & Production Inc., and B.P., P.L.C., have been served on All Counsel

12

by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial

Order No. 12, on this 4th day of April, 2011.

_____/s/_ Ky E. Kirby_____

A/74047046.1

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE:  OIL SPILL by the | MDL NO. 2179 |
| OIL RIG "*DEEPWATER* | |
| *HORIZON*" in the GULF OF | SECTION: J |
| MEXICO, on | |
| APRIL 20, 2010 | JUDGE BARBIER |
| | MAG. JUDGE SHUSHAN |

**THIS DOCUMENT RELATES TO ALL CASES**

---

**DEFENDANT MOEX USA CORPORATION'S INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS TO BP AMERICA INC., BP AMERICA PRODUCTION COMPANY, BP EXPLORATION AND PRODUCTION INC., B.P. P.L.C. (COLLECTIVELY, "BP")**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant MOEX USA Corporation ("MOEX USA") through undersigned Counsel, requests that Defendant BP answer the following interrogatory and request for production of documents ("Requests") under oath in accordance with the following Instructions and Definitions, within thirty (30) days hereof, at the offices of Bingham McCutchen LLP, 355 South Grand Avenue, Suite 4400, Los Angeles, California 90071-3106, or at such other time and place as may be agreed upon by counsel for the aforesaid parties.

## INSTRUCTIONS

(a)     Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, these Requests are continuing in nature so that if, after answering, YOU acquire additional responsive knowledge or information or determine that an answer YOU provided was false, incomplete, or misleading, YOU are to serve supplemental or amended answers as soon as reasonably possible after acquiring such additional knowledge or information.     Furthermore,

DOCUMENTS or ELECTRONICALLY STORED INFORMATION ("ESI") prepared prior to or subsequent to the period covered by these Requests, but which nonetheless relate or refer thereto, are to be included in YOUR response.

(b)     If YOU allege that any Request is in any manner ambiguous, YOU are instructed to DESCRIBE in detail the reasons for YOUR allegations, including but not limited to, each interpretation to which YOU allege the specific request for discovery is subject.

## **DEFINITIONS**

As used herein, the following terms are defined as follows:

(c)     "YOU," "YOUR," or "BP," means, without limitation, BP Exploration and Production, Inc., BP America, Inc., BP America Production Company, and BP, P.L.C., including its predecessors, successors, subsidiaries, departments, divisions, attorneys, accountants, and current and former directors, officers, EMPLOYEES, agents, representatives and PERSONS acting on its behalf.

(d)     "PERSON" means, without limitation, any and every natural individual, each and every association, partnership, joint venture, corporation, professional corporation, trust and any and every other identifiable entity.

(e)     "EMPLOYEE" means, without limitation, any current or former officer, director, executive, manager, secretary, staff member, messenger or other PERSON who is or was employed or subcontracted by YOU or has acted on YOUR behalf.

(f)     "COMMUNICATION" means, without limitation, any writing transmitted between PERSONS or any oral conversation of any kind or character, including, by way of example and without limitation, personal conversations, telephone conversations, letters, MEETINGS, memoranda, telegraphic, telex, COMPUTER and facsimile COMMUNICATIONS or transmittals of DOCUMENTS, ESI (as defined in section (i)) and all

2

DOCUMENTS CONCERNING such writings or oral conversations.  "COMMUNICATION" as used herein specifically includes internal writings, oral conversations or MEETINGS among the officers, board members, EMPLOYEES or other representatives of any defendant.

(g)     "DOCUMENT" means, without limitation, the original and all non-identical copies of all writings, including any and all drafts, alterations and modifications, changes and amendments of any of the foregoing whether handwritten, typed, printed or otherwise produced in any format including, but not limited to, paper or ESI.  This definition also includes, without limitation, books, records, manuals, statements, minutes, letters, correspondence, memoranda, legal pleadings, calendars, diaries, travel records, lists, tax returns, schedules, press releases, directives, agreements, contracts, print-outs, studies, summaries, records of telephone conversations, telegrams, notes, reports, compilations, notebooks, work papers, graphs, graphics, transcripts, charts, blueprints, timelines, pamphlets, brochures, circulars, manuals, instructions, ledgers, drawings, sketches, photographs, videotapes, film and sound reproductions, COMPUTER discs (including but not limited to, CDs, CD-Rs, DVDs, DVD-Rest, floppy discs, hard discs and hard drives), flash drives, pen drives, thumb drives, programming instructions, sales, advertising and promotional literature, agreements or minutes of MEETINGS, telephone conversations or other conversation or COMMUNICATION in YOUR possession, custody or CONTROL, or in the possession, custody or CONTROL of YOUR predecessors, successors, officers, directors, shareholders, EMPLOYEES, agents, representatives and attorneys.  This definition also includes non-printed matter such as voice records and reproductions, film impressions, photographs, videos, negatives, slides, microfilms, microfiches, e-mail, and other things that DOCUMENT or record ideas, words or impressions.  The term "DOCUMENT" further includes all punch cards, tapes, disks, or records used in electronic data processing, together with the programming instructions

3

and other written materials necessary to understand or use such punch cards, tapes, disks or other recordings, and further includes ESI (as defined in section (i)) data or data compilation in electronic or other form that can be printed through proper programming or decoding of the electronic or mechanical data storage facility, including metadata.

(h)     "MEETING" means, without limitation, any assembly, convocation, encounter or contemporaneous presence of two or more PERSONS for any purpose, whether planned or scheduled in advance, including written exchanges through internet/web based chat, including AOL Instant Messenger, or similar programs, electronic "bulletin board" programs, or internet/web based video chat, including Skype, or similar programs.

(i)     "ELECTRONICALLY STORED INFORMATION" or "ESI" means the original (or identical duplicate when the original is not available), and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings and data compilations in any form, and of every kind and description whether inscribed by mechanical, facsimile, electronic, magnetic, digital or other means. ESI includes, by way of example only, COMPUTER programs (whether private, commercial, or work-in progress), programming notes or instructions, activity listings of electronic mail receipts and transmittals, output resulting from the use of any software program, including word processing DOCUMENTS, spreadsheets, database files, charts, graphs and outlines, electronic mail displaying full email aliases (not merely "display names"), electronic calendars, IM logs, PBX logs, DOCUMENT management system data, operating systems, all metadata, source code of all types, peripheral drivers, PIF files, batch files, ASCII files, and any and all miscellaneous files and file fragments, regardless of the media on which they reside and regardless of whether said ESI consists in an active file, deleted file or fragment. ESI includes any and all items stored on

4

COMPUTER memories, hard disks, floppy disks, CD-ROMs, removable media such as Zip disks, Jaz cartridges, Bernoulli Boxes and their equivalent, magnetic tapes of all types disks, microfiche, punched cards, punched tape, COMPUTER chips, including, EPROM, PROM RAM and ROM, on or in any other vehicle for digital data storage and transmittal. The term ESI also includes the file, folder tabs and containers and labels appended to, or associated with, any physical storage device associated with each original and copy.

(j)     "COMPUTER" means, without limitation, all devices utilizing microchips to facilitate processing, analysis, or storage of data, including micro COMPUTERS (also known as personal COMPUTERS), laptop COMPUTERS, portable COMPUTERS, notebook COMPUTERS, palmtop COMPUTERS (also known as personal digital assistants or PDA's), iPads, mini COMPUTERS and mainframe COMPUTERS.

(k)     "CONTROL" means, without limitation, the ownership, possession, or custody of the DOCUMENT, or the right to secure the DOCUMENT or copy thereof from any PERSON or public and private entity having physical possession thereof.

(l)     "RELATING TO," or "CONCERNING" means, without limitation, the following concepts: discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting or otherwise involving, in whole or in part.

(m)     "IDENTIFY" and "IDENTITY" when used in reference to a PERSON means to STATE the PERSON'S: (1) Full name; (2) Present or last known employment position, including the employer name; (3) Job title and/or description; and (4) Contact information.

(n)     "STATE" means, without limitation, to set forth in full and complete detail all knowledge and information in YOUR possession, custody or control RELATING TO the subject matter of the interrogatory, including without limitation the source and basis of YOUR

5

knowledge and information if not otherwise evident from YOUR answer to the interrogatory and the IDENTITY of each DOCUMENT and each COMMUNICATION on which YOU rely to any extent in making YOUR answer.

(o)     "And" as well as "or" should be construed either disjunctively or conjunctively so that each request is given its broadest possible application.  If, for example, a request calls for information about "A" or "B," YOU should produce all information about A and all information about B, as well as all information about collectively A and B.  In other words, both "and" and "or" should be read as "and/or."

(p)     "Each" should be construed to include the word "every," and "every" should be construed to include the word "each."

(q)     A plural noun or pronoun should be construed as a singular noun, and a singular noun should be construed as a plural noun or pronoun, so that each request should be given its broadest possible application.

(r)     The use of a verb in any tense should be construed to be the use of a verb in all other tenses so that each request should be given its broadest possible applications.

(s)     Words of one gender shall be construed to include words of all genders so that each request in the request for production of DOCUMENTS shall be given its broadest possible application.

(t)     Definitions provided herein apply to any grammatical variance of the term or phrase defined.

## INTERROGATORIES

6

**INTERROGATORY NO. 1:**

For each of MOEX USA's First Requests for Admissions served on April 4, 2011 that YOU do not unqualifiedly admit, STATE with particularity all facts which support YOUR response; IDENTIFY all PERSONS having knowledge of such facts; and IDENTIFY all DOCUMENTS reflecting such facts.

**REQUEST FOR PRODUCTION OF DOCUMENTS**

**REQUEST FOR PRODUCTION NO. 1:**

Please produce all DOCUMENTS IDENTIFIED in YOUR response to Interrogatory No. 1.

Dated:  April 4, 2011

    Respectfully submitted,

     /s/  Ky E. Kirby

    Ky E. Kirby
    Ky.Kirby@bingham.com
    Warren Anthony Fitch
    Tony.Fitch@bingham.com
    BINGHAM MCCUTCHEN LLP
    2020 K Street, NW
    Washington, DC 20006-1806
    Telephone (202) 373-6000
    Facsimile (202) 373-6001

    James J. Dragna
    Jim.Dragna@bingham.com
    BINGHAM MCCUTCHEN LLP
    355 South Grand Avenue
    Suite 4400
    Los Angeles, California 90071-3106
    Telephone (213) 680-6436
    Facsimile (213) 680-8636

    Deborah D. Kuchler, T.A. (La. Bar No. 17013)
    Janika Polk (La. Bar No. 27608)
    Robert Guidry (La. Bar No. 28064)

7

KUCHLER POLK SCHELL
WEINER & RICHESON, LLC
1615 Poydras Street, Suite 1300
New Orleans, LA  70112

**ATTORNEYS FOR MOEX USA
CORPORATION**

## <u>CERTIFICATE OF SERVICE</u>

A/74046877.1

I hereby certify that the above and foregoing Defendant MOEX USA Corporation's Interrogatories and Requests for Production of Documents to Defendants BP America Inc., BP America Production Company, BP Exploration & Production Inc., and B.P., P.L.C., have been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, on this 4th day of April, 2011.

            /s/  Ky E. Kirby