# EXHIBIT B

# MACONDO PROSPECT
# OFFSHORE DEEPWATER
# OPERATING AGREEMENT

370266

this Agreement; and all books, records, and inventories relating to the Joint Account (other than those books, records, and inventories maintained by the outgoing Operator as the owner of a Working Interest).  The outgoing Operator shall further use its reasonable efforts to transfer to the successor Operator, as of the effective date of the resignation or removal, its rights as Operator under all contracts exclusively relating to the activities or operations conducted under this Agreement, and the successor Operator shall assume all obligations of the Operator that are assignable under the contracts.  The Parties may audit the Joint Account and conduct an inventory of all property and all Hydrocarbons that are not the separate property of a Party, and the inventory shall be used in the return of, and the accounting by the outgoing Operator of, the property and the Hydrocarbons that are not the separate property of a Party.  The inventory and audit shall be conducted under Exhibit "C."

## ARTICLE 5 – RIGHTS AND DUTIES OF OPERATOR

### 5.1   Exclusive Right to Operate

Except as otherwise provided, the Operator has the exclusive right and duty to conduct (or cause to be conducted) all activities or operations under this Agreement.  In performing services under this Agreement for the Non-Operating Parties, the Operator is an independent contractor, not subject to the control or direction of Non-Operating Parties, except as provided in Article 8.2 *(Voting and Election Procedures)* or Article 8.5 *(Approved by Unanimous Agreement)*.  The Operator is not the agent or fiduciary of the Non-Operating Parties.  With the exception of any Feasibility Team or Project Team formed under this Agreement, the Operator shall select and determine the number of employees, Affiliates, contractors, and/or consultants used in conducting activities or operations under this Agreement and the hours of labor and the compensation for those employees, Affiliates, contractors, and/or consultants.  All of those employees, Affiliates, contractors, and/or consultants shall be the employees, Affiliates, contractors, and/or consultants of the Operator.  The Operator shall contract for and employ any drilling rigs, tools, machinery, equipment, materials, supplies, and personnel reasonably necessary for the Operator to conduct the activities or operations provided for in this Agreement; however, if a substitute Operator is designated to drill a well, the substitute Operator may utilize a rig, which it owns or has under contract, for the drilling of that well.

CONTRACTORS, SUBCONTRACTORS, INVITEES, INSURERS, AND REPRESENTATIVES FROM AND AGAINST ALL CLAIMS, DEMANDS, CAUSES OF ACTION, JUDGMENTS, LIABILITIES, CONTRACTUAL LIABILITIES, AND OTHER COSTS (INCLUDING, WITHOUT LIMITATION, COURT COSTS, INTEREST, PENALTIES, LITIGATION EXPENSES, AND REASONABLE ATTORNEYS' FEES) FOR DAMAGE TO, DESTRUCTION OR LOSS OF PROPERTY, AND FOR PERSONAL INJURY OR DEATH OF PERSONS, AND FOR DAMAGE OR HARM TO THE ENVIRONMENT (INCLUDING WITHOUT LIMITATION, SPILL RESPONSE, ENVIRONMENTAL POLLUTION AND CONTAMINATION AND CLEAN-UP COSTS) ARISING OUT OF OR RELATED IN ANY WAY TO THE NEGLIGENCE, FAULT, OR LIABILITY WITHOUT FAULT OF THE NON-ESSENTIAL PERSONNEL BROUGHT BY OR ON BEHALF OF ANY PARTY WHOMSOEVER (INCLUDING, WITHOUT LIMITATION, ALL THIRD PARTIES AND GOVERNMENTAL AGENCIES), WITHOUT REGARD TO THE CAUSES THEREOF, INCLUDING PRE-EXISTING CONDITIONS, THE UNSEAWORTHINESS OF ANY VESSEL, THE STRICT LIABILITY, NEGLIGENCE, OR OTHER FAULT OF ANY PARTY, REGARDLESS OF WHETHER THE NEGLIGENCE BE SOLE, JOINT, OR CONCURRENT, ACTIVE OR PASSIVE, EXCEPT IF CAUSED BY THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF THE PARTY SO INDEMNIFIED AND PROTECTED.

## 22.9   Dispute Resolution Procedure

Any claim, controversy, or dispute arising out of, relating to, or in connection with this Agreement or an activity or operation conducted under this Agreement shall be resolved under the Dispute Resolution Procedure in Exhibit "H" to this Agreement.

# ARTICLE 23 – CONTRIBUTIONS

## 23.1   Contributions from Third Parties

A "Contribution" means a bottom hole cash contribution, dry hole cash contribution, or acreage contribution from third parties as consideration for data from wells or well operations on the Contract Area.  This Article 23 does not apply to the following:

EXHIBIT "H"

## DISPUTE RESOLUTION PROCEDURE

Attached to and made a part of that certain Operating Agreement dated October 1, 2009 by and between BP Exploration & Production Inc., as Operator, and MOEX Offshore 2007 LLC, as Non-Operator

## I.    OVERVIEW

A.    *Description and Goals*.   Arbitration as used in this statement is a procedure whereby an Arbitrator resolves any claim(s), controversy(ies) or dispute(s) (the "Dispute") between BP Exploration & Production Inc. and MOEX Offshore 2007 LLC (hereinafter referred to singularly as "Party" and collectively as "Parties"), involving more than $500,000.00, arising out of, relating to, or in connection with that certain Operating Agreement effective October 1, 2009, by and between the Parties (hereinafter "Agreement")  including the interpretation, validity, termination or breach thereof.

(i)    *Binding*.  The arbitration process is binding on the Parties and this arbitration is intended to be a final resolution of any Dispute between the Parties as described above, to the same extent as a final judgment of a court of competent jurisdiction.  Each Party hereby expressly covenants that it shall not resort to court remedies except as provided for herein, and for preliminary relief in aid of arbitration.

(ii)    *Violation.*  A Party shall pay all legal and court costs incurred by the other Party in connection with the enforcement of the final resolution of any Dispute under this Dispute Resolution Procedure, if such other Party is successful in its enforcement efforts.  Suits, actions or proceedings in connection with such enforcement shall be instituted in a federal court of proper jurisdiction and pursuant to Title IX of the United States Code.  Each Party waives any option or objection which it may now or thereafter have to the laying of the venue in any such suit, action or proceeding and irrevocably submits to the jurisdiction of such court in any such suit, action or proceeding.  If such court after the

institution of an action hereunder should decline jurisdiction, then the action may be commenced in any court, including state courts having jurisdiction.

B.     *Duty to Negotiate*.     The Parties shall inform one another promptly following the occurrence or discovery of any item or event, which might reasonably be expected to result in a Dispute in connection with the Agreement.   The Parties will attempt to resolve satisfactorily any such matters.

C.     *Notice of Unresolved Dispute*.   Should a Dispute arise which the Parties cannot resolve satisfactorily, either Party may deliver to the other Party a written notice of the Dispute with supporting documentation as to the circumstances leading to the Dispute (the "Notice of Dispute").   Unless otherwise provided herein, all such notices shall be served in accordance with the provisions of the Agreement. The Parties, within ten (10) Business Days from delivery of a Notice of Dispute, shall then each appoint a management representative ("Management Representative") who has no prior direct involvement with the subject matter of the Notice of Dispute and who is duly authorized to investigate, negotiate and settle the Dispute.   For a period not to exceed ninety (90) days following the appointment of the Management Representatives, the Management Representatives for each Party shall meet and confer as often as they deem reasonably necessary, in good faith negotiations, to try to resolve the Dispute amicably.

## II.     ARBITRATION PROCESS

A.     *Arbitration*.     If the Parties are unable to resolve the Dispute within ninety (90) days following the end of the negotiation period between the Management Representatives described in I.C., or such additional time as may be mutually agreed upon, the matter shall be submitted to arbitration in accordance with the procedures set forth below.

B.     *Initiation of Arbitration*.     Either Party may initiate the arbitration by delivering to the other a Notice of Intention to Arbitrate.

C.     *Governing Procedures*.     Except as expressly provided herein, the arbitration shall be conducted in accordance with procedures that are mutually

acceptable to the Parties, including limited depositionless discovery and the presentation of live witness testimony, subject to cross examination, at the arbitration hearing.

      (i)    *Governing Law.*   The Arbitrator shall apply the governing substantive law of the state chosen by the Parties to the Agreement.

      (ii)    *Location.*  The arbitration hearing shall be conducted in a location mutually agreeable to the Parties to the arbitration.

D.    *Arbitrator.*  There shall be a panel of three (3) Arbitrators, each of whom must be experienced in the oil and gas industry and knowledgeable about or specializing in the subject matter involved in the Dispute the ("Panel"). The Panel shall be chosen as follows: within thirty (30) days after the delivery of a Notice of Intention to Arbitrate, each Party shall select one person to act as one of the three arbitrators. The two arbitrators selected by the Parties shall select a third arbitrator within thirty (30) days of their appointment. If the arbitrators selected by the Parties are unable or fail to agree on a third arbitrator within the second thirty (30) day period, or any mutually agreed upon extended period, then the Parties shall, within three (3) business days after expiration of the second thirty (30) day period or extended period, apply to the American Arbitration Association for the appointment of a third Arbitrator for or on behalf of the Parties. In such case the Arbitrator appointed by the American Arbitration Association shall meet the criteria set forth in this Section II.D. The Parties intend the involvement of the American Arbitration Association to be limited to appointing a third arbitrator in the event the arbitrators selected by the Parties are unable to do so; the Parties do not intend for the American Arbitration Association to manage the arbitration or to participate further in the arbitration process, unless the Parties mutually agree to further participation by the Association.

      (i)    *Conflicts.*  Any Arbitrator, prior to his or her appointment, shall disclose to the Parties all actual or perceived conflicts of interest and business relationships involving the Dispute or the Parties, including but not limited to, any professional or social relationships, present or past, with any Party (or its

affiliates), including any Party's (or its affiliates) directors, officers, and supervisory personnel and counsel.    If an Arbitrator is appointed by the American Arbitration Association pursuant to Section II.D, any Party may challenge in writing the appointment of the Arbitrator for lack of independence, partiality, or any other cause likely to impair such Arbitrator's ability to effectively participate in the proceedings or render a fair and equitable decision.   Where such challenge is made, the American Arbitration Association shall uphold or dismiss the challenge.  In the event a challenge is upheld, the Arbitrator shall be replaced, and the replacement will be selected in the same manner as the original Arbitrator was selected.  If an Arbitrator resigns or becomes unable or unwilling to continue to serve as an Arbitrator for any reason, a replacement shall be selected in the same manner as that Arbitrator was chosen.

(ii)    *Multi-Party Arbitrations*.    When more than two Parties are involved in the Dispute ("Multi-Party Arbitration"), all Parties identifying as "Claimants" (those delivering a Notice of Intention to Arbitration under Section II.B.) shall select a single Arbitrator and all those Parties identifying as "Respondents" (those responding to a Notice of Intention to Arbitration delivered under Section II.B.) shall select a single Arbitrator.  The Arbitrator selected by the Claimant(s) and the Arbitrator selected by the Respondent(s) shall select the third Arbitrator pursuant to Section II.D. If Claimants or Respondents cannot agree as to the choice of their Arbitrator within the said thirty (30) days, they may, within three (3) business days after written notice to the other Parties, apply to the American Arbitration Association for the appointment of an Arbitrator as provided in Section II.D.

(iii)    *Management of the Arbitration*.  The Panel shall actively manage the proceedings so as to make the proceedings expeditious, economical, and less burdensome and adversarial than litigation.

E.    *Confidentiality.*    All documents, briefs, testimony, transcripts, as well as all Arbitrator decisions shall be confidential. Likewise, the views, suggestions,

admissions, proposals, and other information exchanged in the arbitration are confidential and are inadmissible in any other proceeding.

F.   *Costs and Expenses.*   The Parties shall each pay all costs, fees and expenses incurred by their Party-selected Arbitrator and shall share equally all costs, fees and expenses incurred by the third Arbitrator and any other incidental costs incurred in connection with the arbitration proceeding. Each Party is solely responsible for its own attorneys' fees and expenses incurred in the Arbitration.

G.   *Submissions.*Within thirty (30) days after the selection of the Panel, each Party shall provide the Panel with a short and plain submission defining the issues to be decided and the nature of the relief that the Panel may award (the "Submission"). This Submission shall explicitly authorize the Panel to decide these issues. If the Parties are unable to reach consensus as to the issues involved, the Panel in its sole discretion shall frame the issues through a reasonable procedure. The Panel will render decisions on the specific issues established and shall fashion any remedy that the Panel deems appropriate so long as that remedy is consistent with the Parties' Submissions hereunder. Any money judgment entered by the Panel shall be payable in U.S. dollars.

H.   *Transcriptions.*   The presentations and argument at the arbitration hearing will be transcribed for the benefit of the Panel and the Parties.

I.   *Discovery.*   Commencing thirty (30) days after the receipt of the opposing Party's Submission, each Party may serve upon the other Party up to ten (10) requests for the production of documents, including sub-parts. The requests shall be made in good faith and not be served for the purpose of delay or harassment. Each request shall describe the type of document(s) sought and each request shall be limited to documents that are relevant to a claim or defense in the Arbitration proceeding, or reasonably calculated to lead to the discovery of admissible evidence. The requests need not be served all at once but may be served in stages.

(i)      The Party served with a request under this provision shall provide the adverse Party with copies of the requested documents, and identify the request to which each document is responsive, within twenty (20) business days of the receipt of the request, or such longer time as may be agreed to by the Parties or set by the Panel.  If the Party served with a request objects to the production of any of the requested documents, it shall nevertheless produce within the permitted time all documents responsive to any request that is not objected to by that Party.

(ii)     A Party that is served with a request may challenge the propriety of the request within the time permitted for response by a short written objection, which shall be forwarded to the adverse Party and to the Panel. The adverse Party shall submit its response, if any, to the objecting Party and the Panel within five (5) business days of receipt of the objection.  The Panel shall consider the request, the objection, and the response, if any, and decide whether the production shall be allowed or denied or whether the request should be modified within ten (10) days after the submission of the adverse Party's response.

J.    *Presentations.*      No later than twenty-five (25) days prior to the date that the arbitration hearing is to begin, each Party will submit to the Panel and serve on the other Party a written position statement.  The original statement of each Party shall not exceed thirty-five (35) typewritten letter-size pages.  Each Party shall have the right to submit reply statements no later than fifteen (15) days prior to the date of the arbitration hearing.  Such reply statements shall not exceed twenty (20) typewritten letter-size pages.

(i)      All documents and affidavits that a Party intends to use during its presentation at the arbitration hearing shall be submitted to the Panel and served on the other Party with the position and reply statements. All demonstrative exhibits and a list of the witnesses a Party anticipates calling to present live testimony at the arbitration hearing, along with a brief summary of the witnesses expected

testimony, shall be exchanged no later than ten (10) days in advance of the presentations.

(ii)    The Panel shall determine a reasonable time and location for the presentations.

(iii)    Each Party shall make an oral and/or documentary presentation of its position at the arbitration hearing in such order and in accordance with the time schedule established by the Panel. The Panel may question each of the presenters and/or witnesses during or following any and all presentations.

K.    *Decision and Award.*    The Panel shall promptly (within sixty (60) days of conclusion of the presentations at the arbitration hearing or such longer period as the Parties may mutually agree) determine the claims of the Parties and render a final decision in writing. The decision shall state with specificity the findings of fact and conclusions of law on which it rests. The decision rendered by the Panel may be enforced in accordance with Section I.A.(ii), above, and may only be appealed pursuant to Section II. L. below. The decision shall be served upon each of the Parties by facsimile transmission and by overnight mail.

(i)    If applicable law allows pre-award interest, the Panel may, in its discretion, grant pre-award interest and, if so, such interest may be at commercial rates in the state chosen by the Parties pursuant to Section II.C.(i) during the relevant period. The Panel shall not award consequential, punitive, indirect or other non-compensatory damages.

(ii)    Within ten (10) days of receipt of the award either Party may submit a Motion to Modify the award. A response to the Motion to Modify shall be due within fifteen (15) days thereafter, and the Panel shall rule thereon within fifteen (15) days after receipt of the response.

(iii)    Judgment on the award may be entered in the United States District Court for the federal district within which the arbitration hearing was held

at any time within one year after the decision is made.  If such court after the institution of an action hereunder should decline jurisdiction, then the action may be commenced in any court, including state courts having jurisdiction.

L.    *Vacation of Award and Appeal*.    The Parties agree that an award made by the Panel may only be vacated or confirmed by a federal court of proper jurisdiction as established above.  If such court after the institution of an action hereunder should decline jurisdiction, then the action may be commenced in any court, including state courts having jurisdiction. The Parties agree that an award made by the Panel may be vacated by a court only if the award was procured by or through fraud or corruption.  An appeal from an order or judgment pursuant to this Section II.L. shall be instituted in a federal court of proper jurisdiction.   If such court after the institution of an action hereunder should decline jurisdiction, then the action may be commenced in any court, including state courts having jurisdiction.   Each Party waives any option or objection which it may now or thereafter have to the laying of the venue of any such suit, action or proceeding and irrevocably submits to the jurisdiction of the court in any such suit, action or proceeding.  Each Party agrees that a remedy at law for a violation of this Section II.L. may not be adequate and therefore agrees that the remedies of specific performance and injunctive relief shall be available in the event of any violation in addition to any other right or remedy at law or in equity to which any Party may be entitled.

M.    *Res Judicata*.       To the extent permitted by law, any decision of the Panel shall not be *res judicata* or have any binding effect in any unrelated litigation or arbitration where any Party to this Agreement may also be a party.