EXHIBIT C



Feb 22 2011
10:55PM

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | : : : : | MDL No. 2179 SECTION: J |
| This Document Relates To: All Actions | : : : | JUDGE BARBIER MAGISTRATE JUDGE SHUSHAN |
| …………………………………………….... | : | |

## BP P.L.C.'S RESPONSES AND OBJECTIONS TO DEFENDANT ANADARKO PETROLEUM CORPORATION'S INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS

Defendant BP p.l.c., by its undersigned Counsel, and, pursuant to Rules 26, 33, and 34 of the Federal Rules of Civil Procedure, hereby submits the following responses and objections to Anadarko's Interrogatories and Requests for Production.

## SPECIFIC RESPONSES AND OBJECTIONS

BP p.l.c. responds as follows to Anadarko's specific interrogatories and requests for production, subject to and without waiving its general objections, each and every one of which are specifically incorporated into each individual response below.[1]

## INTERROGATORY NO. 1:

Please IDENTIFY each PERSON to whom YOUR EMPLOYEES communicated or sent COMMUNICATIONS or from whom they received COMMUNICATIONS, on or before April 20, 2010, that any of the alarm systems on the *DEEP WATER HORIZON* were inhibited or bypassed, IDENTIFY all other PERSONS involved in the COMMUNICATION and DESCRIBE in detail the substance of each such COMMUNICATION and any response to or result from such COMMUNICATION.

## RESPONSE TO INTERROGATORY NO. 1:

BP p.l.c. asserts its general objections.

---

[1] BP p.l.c.'s general objections are set forth at pages 15 - 27.

**INTERROGATORY NO. 2:**

Please IDENTIFY each PERSON with whom YOUR EMPLOYEES communicated, on or before April 20, 2010, REGARDING the functionality of each system on the *DEEP WATER HORIZON*'S BOP and marine riser, including but not limited to the battery packs, solenoid valves and coils, yellow and blue control pods, shear rams, bore rams, test rams, choke/kill lines and valves, and annular preventers; IDENTIFY all other PERSONS involved in those COMMUNICATIONS; and DESCRIBE in detail the substance of each COMMUNICATION.

**RESPONSE TO INTERROGATORY NO. 2:**

BP p.l.c. asserts its general objections.

**INTERROGATORY NO. 3:**

Excluding the MACONDO WELL, please IDENTIFY and DESCRIBE in detail (including, but not limited to, the name and location of the well, the date, and the IDENTITY of YOUR well site leader and well team leader for each well identified) any and all instances in YOUR drilling of DEEPWATER WELLS in the last 10 years in which YOU directed YOUR cement contractor to proceed with a cement job when Opticem or similar modeling showed the well would have a severe gas flow problem.

**RESPONSE TO INTERROGATORY NO. 3:**

BP p.l.c. asserts its general objections.

**INTERROGATORY NO. 4:**

Excluding the MACONDO WELL, please IDENTIFY and DESCRIBE in detail each instance in the last 10 years in which an Opticem or similar modeling report indicated that, with the number of centralizers YOU chose to use (and actually did use) in a well, there was a severe gas flow problem, including but not limited to, the name and location of the well, the date, the names of YOUR well site leader and well team leader for each well identified, the number of centralizers used and the gas flow potential indicated by modeling.

**RESPONSE TO INTERROGATORY NO. 4:**

BP p.l.c. asserts its general objections.

**INTERROGATORY NO. 5:**

Excluding the MACONDO WELL, please IDENTIFY and DESCRIBE in detail (including the name and location of the well, the date, and the IDENTITY of YOUR well

site leader and well team leader for each well identified) any and all instances in YOUR drilling of DEEPWATER WELLS or use of MODUs in the last 10 years in which YOU had no onshore real-time monitoring process to assess what was happening in the well on a continuing basis.

**RESPONSE TO INTERROGATORY NO. 5:**

BP p.l.c. asserts its general objections.

**INTERROGATORY NO. 6:**

Excluding the MACONDO WELL, please IDENTIFY and DESCRIBE in detail (including the name and location of the well, the date, and the IDENTITY of YOUR well site leader and well team leader) any and all instances in YOUR drilling of DEEPWATER WELLS or use of MODUs in the last 10 years in which YOU changed YOUR well site leader within one week of the commencement of temporary abandonment procedures.

**RESPONSE TO INTERROGATORY NO. 6:**

BP p.l.c. asserts its general objections.

**INTERROGATORY NO. 7:**

Excluding the MACONDO WELL, please IDENTIFY and DESCRIBE in detail (including the name and location of the well, the date, and the IDENTITY of YOUR well site leader and well team leader) any and all instances in YOUR drilling of DEEPWATER WELLS or use of MODUs in the last 10 years in which YOU failed to keep track of fluid losses or gains in the well and the riser (including via monitoring of pit levels or of fluids being pumped into the well and flowing out of the well).

**RESPONSE TO INTERROGATORY NO. 7:**

BP p.l.c. asserts its general objections.

**INTERROGATORY NO. 8:**

Excluding the MACONDO WELL, please IDENTIFY and DESCRIBE in detail (including the name and location of the well, the date, and the IDENTITY of YOUR well site leader and well team leader) any and all instances in YOUR drilling of DEEPWATER WELLS or use of MODUs in the last 10 years in which YOU chose to use a long string in lieu of a liner in a deep high-pressure well being installed in formations exhibiting different pore pressures in the open-hole interval.

**RESPONSE TO INTERROGATORY NO. 8:**

    BP p.l.c. asserts its general objections.


**INTERROGATORY NO. 9:**

    Excluding the MACONDO WELL, please IDENTIFY and DESCRIBE in detail (including the name and location of the well, the date, and the IDENTITY of YOUR well site leader and well team leader) any and all instances in YOUR drilling of DEEPWATER WELLS or use of MODUs in the last 10 years in which YOU did not conduct a full bottoms-up circulation of drilling mud prior to cementing.

**RESPONSE TO INTERROGATORY NO. 9:**

    BP p.l.c. asserts its general objections.


**INTERROGATORY NO. 10:**

    Excluding the MACONDO WELL, please IDENTIFY and DESCRIBE in detail (including the name and location of the well, the date, and the IDENTITY of YOUR well site leader and well team leader) any and all instances in YOUR drilling of DEEPWATER WELLS or use of MODUs in the last 10 years in which YOU used a pressure greater than 2000 psi to establish sufficient circulation to convert the float collar in preparation for cementing.

**RESPONSE TO INTERROGATORY NO. 10:**

    BP p.l.c. asserts its general objections.


**INTERROGATORY NO. 11:**

    Excluding the MACONDO WELL, please IDENTIFY and DESCRIBE in detail 14 (including the name and location of the well, the date, and the IDENTITY of YOUR well site leader and well team leader) any and all instances in YOUR drilling of DEEPWATER WELLS or use of MODUs in the last 10 years in which YOU had to attempt more than five (5) times to convert the float collar before it was declared converted prior to cementing.

**RESPONSE TO INTERROGATORY NO. 11:**

    BP p.l.c. asserts its general objections.

**INTERROGATORY NO. 12:**

Excluding the MACONDO WELL, please IDENTIFY and DESCRIBE in detail any and all instances in YOUR drilling of DEEPWATER WELLS or use of MODUs in the last 10 years in which YOU used nitrogen foamed cement, including the name and location of the well, the date, the IDENTITY of YOUR well site leader and well team leader for each well identified, and the length of time YOU permitted the cement to set prior to a negative pressure test.

**RESPONSE TO INTERROGATORY NO. 12:**

BP p.l.c. asserts its general objections.

**INTERROGATORY NO. 13:**

Excluding the MACONDO WELL, please IDENTIFY and DESCRIBE in detail (including the name and location of the well, the date, and the IDENTITY of YOUR well site leader and well team leader for each well identified) any and all instances of drilling of DEEPWATER WELLS or use of MODUs in the last 10 years in which YOU performed a temporary abandonment procedure that differed from the one YOU actually submitted to, and that was approved by, the US Minerals Management Service (MMS) or Bureau of Ocean Energy Management (BOEM).

**RESPONSE TO INTERROGATORY NO. 13:**

BP p.l.c. asserts its general objections.

**INTERROGATORY NO. 14:**

Please IDENTIFY and DESCRIBE in detail every instance in which a temporary abandonment procedure substantially like that performed on the MACONDO WELL (including displacement to more than 2000' below mud level before negative testing) on or about April 19-20, 2010 was performed by YOU on any other DEEPWATER WELL, including in YOUR response the name and location of the well, the date(s) the temporary abandonment procedure was performed on such well, and the names of the well site leader and well team leader for each such well identified.

**RESPONSE TO INTERROGATORY NO. 14:**

BP p.l.c. asserts its general objections.

**INTERROGATORY NO. 15:**

Please STATE whether, in YOUR view, the blind shear ram of the *DEEP WATER HORIZON* BLOWOUT PREVENTER failed to operate properly during the INCIDENT and DESCRIBE in detail the basis of YOUR answer.

**RESPONSE TO INTERROGATORY NO. 15:**

BP p.l.c. asserts its general objections.

**INTERROGATORY NO. 16:**

Please STATE the density of the base oil spacer fluid used during the MACONDO WELL cement job performed on April 19 - 20, 2010; whether it was the correct density to prevent inversion, and whether contamination occurred, and DESCRIBE in detail the basis of YOUR answer.

**RESPONSE TO INTERROGATORY NO. 16:**

BP p.l.c. asserts its general objections.

**INTERROGATORY NO. 17:**

Please DESCRIBE in detail why YOUR EMPLOYEES decided not to spot heavy mud (16.5 ppg or higher) in the rat hole prior to the MACONDO WELL cement job performed on April 19-20, 2010, the data upon which they based that decision, and any other basis for their decision, and IDENTIFY each PERSON who made or was involved in that decision.

**RESPONSE TO INTERROGATORY NO. 17:**

BP p.l.c. asserts its general objections.

**INTERROGATORY NO. 18:**

Excluding the MACONDO WELL, please IDENTIFY and DESCRIBE in detail (including the name and location of the well, the date, and the IDENTITY of YOUR well site leader and well team leader for each well identified) any and all instances in YOUR drilling of DEEPWATER WELLS or use of MODUs in the last 10 years in which YOU have not spotted heavy mud (16.5 ppg or higher) in the rat hole prior to performing a cement job on a final casing string.

**RESPONSE TO INTERROGATORY NO. 18**:

      BP p.l.c. asserts its general objections.


**INTERROGATORY NO. 19**:

      Please STATE whether the float collar was converted prior to the start of the MACONDO WELL cement job that was performed on April 19 - 20, 2010 and DESCRIBE in detail the reasons and basis for whatever action was taken or not taken in this respect.

**RESPONSE TO INTERROGATORY NO. 19**:

      BP p.l.c. asserts its general objections.


**INTERROGATORY NO. 20**:

      Please STATE whether, following the ninth attempt to convert the float collar, the circulating pressure of the MACONDO WELL was lower than expected, including in YOUR response the expected range of circulating pressure after conversion of the float collar and the actual circulating pressure that was obtained.

**RESPONSE TO INTERROGATORY NO. 20**:

      BP p.l.c. asserts its general objections.


**INTERROGATORY NO. 21**:

      Please STATE whether the annular preventer did or did not seal around the drill pipe, and whether the annular preventer allowed spacer to leak down below the annular preventer during the first negative pressure test of April 20, 2010, and DESCRIBE in detail the basis of YOUR answer.

**RESPONSE TO INTERROGATORY NO. 21**:

      BP p.l.c. asserts its general objections.


**INTERROGATORY NO. 22**:

      IDENTIFY which of YOUR EMPLOYEES communicated or transmitted your audit report to TRANSOCEAN, on what date, and DESCRIBE in detail what TRANSOCEAN did in response to that report, including what maintenance it performed, and any follow up YOU requested.

7

**RESPONSE TO INTERROGATORY NO. 22:**

      BP p.l.c. asserts its general objections.


**INTERROGATORY NO. 23:**

      Please DESCRIBE all systems, procedures, or protocols in place so that BP would be notified or otherwise made aware of any maintenance on, modifications to, or malfunctions with any part of the *DEEP WATER HORIZON* or the BOP.

**RESPONSE TO INTERROGATORY NO. 23:**

      BP p.l.c. asserts its general objections.


**INTERROGATORY NO. 24:**

      Please DESCRIBE all information and instructions provided to Mr. Kaluza regarding the role, purpose of, scope, and nature of his assignment on the *DEEP WATER HORIZON*, who provided such information or instructions, and when such information or instructions were provided.

**RESPONSE TO INTERROGATORY NO. 24:**

      BP p.l.c. asserts its general objections.


**INTERROGATORY NO. 25:**

      Please IDENTIFY any internal reorganizations that occurred within BP in 2009 or 2010 that involved personnel responsible for any activities RELATING TO the MACONDO WELL or the *DEEP WATER HORIZON*. For each reorganization, please IDENTIFY the reason for the reorganization and whose positions, titles, or job responsibilities were changed and how they were changed, including any changes in the supervisor or person to whom the individual reported.

**RESPONSE TO INTERROGATORY NO. 25:**

      BP p.l.c. asserts its general objections.

## REQUEST FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1:**

With regard to activities involving the *DEEPWATER HORIZON* and the MACONDO WELL, please produce all DOCUMENTS and COMMUNICATIONS REGARDING, referencing or RELATING TO all participation, contribution, comment, input, planning, evaluation and roles YOU played in the design and utilization of approximately 400 barrels of lost circulation material spacer fluid "pills" as spacer during the MACONDO WELL activities of April 19 - 20, 2010.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 2:**

Please produce any DOCUMENTS RELATING TO the *DEEPWATER HORIZON* or the MACONDO WELL which were considered by YOU for transmission to but were not in fact sent to the MMS or another GOVERNMENT agency between September 2009 and April 20, 2010.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 3:**

Please produce any test conducted on the casing for the MACONDO WELL that was not sent to the MMS or another GOVERNMENT agency.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 4:**

Please produce Mr. Robert Kaluza's telephone records for April 20 and 21, 2010.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 5:**

Please produce Mr. Donald Vidrine's telephone records for April 20 and 21, 2010.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 6:**

Please produce records of all telephone calls YOU received from anyone on board the *DEEP WATER HORIZON* on April 20, 2010.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 7:**

Please produce all DOCUMENTS YOU prepared following the MACONDO WELL control event of March 8, 2010 to acknowledge or address the response time recorded during that event.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 8:**

Please produce all DOCUMENTS reviewed by YOU in connection with preparation of YOUR responses to each of the Interrogatories set forth above.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 9:**

Please produce any and all diagrams or depictions of the well and/or drilling process of the well that YOU used during the Marine Board of Investigation hearings.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 10:**

Please produce a diagram of the mud pit layout on the *DEEP WATER HORIZON*, indicating the location of the active and reserve pits.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 11:**

Please produce YOUR policies and procedures REGARDING use of the diverter system on the *DEEP WATER HORIZON* and on YOUR other owned, contracted, or leased deepwater drilling rigs.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 12:**

Please produce YOUR policies and procedures for the use of the annular preventer during well control events on the *DEEP WATER HORIZON* and on YOUR other owned, contracted, or leased deepwater drilling rigs.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 13:**

Please produce a copy of the flow diagram of the *DEEP WATER HORIZON* surface mud system.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 14:**

Please produce all post-INCIDENT pictures, video recordings, X-rays, audio recordings, samples, measurements and/or testing results of or for the *DEEP WATER HORIZON* rig or any of its equipment or components, including but not limited to the riser, drill pipe and BOP used in connection with the MACONDO WELL.

11

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 15:**

Please produce all post-INCIDENT pictures, video recordings, X-Rays, audio recordings, samples, measurements and/or testing results of or for the MACONDO WELL or any equipment or component used in connection with the MACONDO WELL, including but not limited to the casing and casing hanger seal assembly.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 16:**

Please produce all raw data, in native format, that was input to produce the final, and any earlier iteration, of the OLGA gas flow model discussed in BP's September 8, 2010 Accident Investigation Report.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 17:**

Please produce all drafts or other iterations of the OLGA gas flow model produced in connection with the investigation that culminated in BP's September 8, 2010 Accident Investigation Report.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 18:**

Please produce all DOCUMENTS, data, notes, tests, modeling studies or other information, including but not limited to drafts of same, reviewed in connection with the investigation conducted by BP that culminated in the September 8, 2010 Accident Investigation Report.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 19:**

Please produce all tests, data, models, measurements, results, logs, COMMUNICATIONS, DOCUMENTS, or work, RELATED TO or done for YOU by CSI since April 20, 2010, REGARDING the MACONDO WELL, including but not limited to tests at actual measured bottom hole temperatures, tests on slurry strength, and numerical models to estimate a bottom hole circulating temperature.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 20:**

Please produce all tests, data, models, measurements, results, logs, COMMUNICATIONS, DOCUMENTS, or work, RELATED TO or done for YOU since April 20, 2010, REGARDING the MACONDO WELL, including but not limited to "Well Cat" numerical model estimations or runs of bottom hole circulating temperature.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 21:**

Please produce all DOCUMENTS RELATING TO the potential use of the *DEEP WATER HORIZON* in connection with activities on the Nile or Kaskida wells.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 22:**

Please produce all COMMUNICATIONS CONCERNING the Kaskida or Nile wells during April 2010.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 22:

BP p.l.c. asserts its general objections.

## REQUEST FOR PRODUCTION NO. 23:

Please produce all DOCUMENTS RELATING TO the type, shipment, delivery and/or return of the centralizers ordered from WEATHERFORD for the MACONDO WELL in April 2010, and to YOUR decision REGARDING return of these centralizers or their use on rigs other than *DEEP WATER HORIZON*.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 23:

BP p.l.c. asserts its general objections.

## REQUEST FOR PRODUCTION NO. 24:

Please produce all DOCUMENTS RELATING TO the use or potential use of Form-aSet, Form-a-Squeeze, or any combination of the two, as a spacer in any well, including DOCUMENTS discussing any benefits or risks associated with such use.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 24:

BP p.l.c. asserts its general objections.

## REQUEST FOR PRODUCTION NO. 25:

Please produce all DOCUMENTS RELATING TO the required method of disposal of unused Form-a-Set or Form-A-Squeeze material.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 25:

BP p.l.c. asserts its general objections.

## REQUEST FOR PRODUCTION NO. 26:

Please produce all DOCUMENTS, COMMUNICATIONS or directions REGARDING the use of the mud-gas separator on any rig operated by YOU in the event of gas flow from a well.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 26:

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 27:**

Please produce all DOCUMENTS or COMMUNICATIONS RELATING TO the potential for cement contamination in the MACONDO WELL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 28:**

Please produce all DOCUMENTS RELATING TO THE COMMUNICATIONS referenced in Interrogatory Nos. 1 and 2.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

BP p.l.c. asserts its general objections.


**GENERAL OBJECTIONS**

BP p.l.c. asserts the following objections to each and every one of Anadarko's interrogatories and requests for production including any definitions or instructions associated therewith (collectively, "Anadarko's Discovery Requests").   These general objections are incorporated by reference into each specific response set forth by BP p.l.c. and are neither waived nor limited by any specific responses.

1.      Defendant BP p.l.c. objects to all of Anadarko's requests.   BP p.l.c. is a corporation organized under the laws of England and Wales, which is publicly traded with its headquarters in London, England.   BP p.l.c. did not own the MC 252 leasehold, had no employees on the *Deepwater Horizon*, and was not a party to the drilling rig contract with Transocean.   BP p.l.c. does not directly conduct exploration and production activities and was not directly involved in the events involving the Macondo Well or the incident.   Accordingly, to the best of its knowledge, with regard to almost all of Anadarko's Discovery Requests, BP p.l.c. does not have any meaningful set of information or documents responsive to plaintiffs' requests

15

not derivative and duplicative of that of BPA, BPAP, and/or BPXP, and BP p.l.c. directs plaintiffs to the responses provided by those defendants.

2.      BP p.l.c. objects to Anadarko's Discovery Requests to the extent they call for information, seek discovery, or attempt to impose any obligations beyond that permitted or authorized by the Federal Rules of Civil Procedure or the Rules and Orders of this Court.

3.      BP p.l.c. objects to Anadarko's Discovery Requests to the extent they call for the production of ESI in any manner other than required under Federal Rule of Civil Procedure 34, the Rules and Orders of the Court, and ongoing negotiations and discussions among counsel.

4.      BP p.l.c. objects to Anadarko's Discovery Requests to the extent they seek information or documents protected by the attorney-client privilege, the work-product doctrine, the joint defense or common interest privilege, or any other applicable privilege, exemption, or immunity.  BP p.l.c. will identify specific documents withheld on these grounds in accordance with the schedule set forth in, and provide the information required by, the Court's Pretrial Order #14, and such further Orders of the Court and ongoing negotiations and discussions among counsel.  BP p.l.c. incorporates its forthcoming privilege logs and all related information into this general objection to the extent necessary to preserve against any waiver of any applicable privilege or immunity from discovery.

5.      BP p.l.c. objects to Anadarko's Discovery Requests to the extent they seek information or documents relating to the settlement or potential settlement of disputes on the grounds that such information is not relevant to any party's claim or defense, is not admissible at trial and not reasonably calculated to lead to the discovery of admissible evidence, is protected from disclosure and dissemination under Federal Rule of Evidence 408, and that discovery of

such information would be prejudicial to the efforts of  BP p.l.c. and any opposing parties to resolve their disputes in a fair and efficient manner.

6.      BP p.l.c. objects to Anadarko's Discovery Requests to the extent they call for information or documents not within BP p.l.c.'s possession, custody, or control.  All responses are made on behalf of BP p.l.c. only, are limited to information and documents within BP p.l.c.'s possession, custody, or control.

7.      BP p.l.c. objects to Anadarko's Discovery Requests to the extent they are unduly burdensome, duplicative, premature, oppressive, and/or overbroad, including, without limitation, as to subject matter and/or time period, and where compliance with specific requests would be unreasonably difficult as well as prohibitively expensive or time-consuming.

8.      BP p.l.c. objects to Anadarko's Discovery Requests to the extent they are not limited to information or documents relevant to any party's claim or defense, or to the extent they seek discovery of information or documents not admissible at trial and not reasonably calculated to lead to the discovery of admissible evidence, including, but not limited to, requests seeking information or documents concerning other incidents, accidents, or other events at BP facilities or locations other than the Macondo Well or that are otherwise unrelated to the *Deepwater Horizon*.

9.      BP p.l.c. objects to Anadarko's Discovery Requests to the extent they seek the disclosure of information or documents that contain or constitute trade secrets, proprietary information, or other confidential business information without appropriate restrictions on disclosure and dissemination that are embodied in a protective order entered by the Court.

10.      BP p.l.c. objects to Anadarko's Discovery Requests to the extent they seek the disclosure of information or documents that would violate the rights of privacy of third parties,

or any similar judicially recognized protection or privilege, including, but not limited to, restrictions imposed in connection with proceedings before the MBI, and the protections of the Health Insurance Portability and Accountability Act ("HIPAA"), or that would result in disclosure of any confidential information or conduct without appropriate restrictions on disclosure and dissemination that are embodied in a protective order entered by the Court.

11.     BP p.l.c. objects to the requests to the extent they seek documents already in the possession of Anadarko or equally available to Anadarko from sources other than BP p.l.c., including publicly available sources.

12.     BP p.l.c. objects to Anadarko's "Definitions" to the extent they seek to impose any meaning or interpretation onto the requests other than that evident from the plain and ordinary meaning of the words used therein.   BP p.l.c. further objects to, and will read and respond to, Anadarko's "Definitions" (labeled to correspond to Anadarko's list) as follows:

(i)     Anadarko's definition of "Deepwater Horizon" is vague and overbroad; it includes any equipment used in connection with the exploration for or production of oil.   BP p.l.c. will read and respond to Anadarko's requests with the understanding that the term "Deepwater Horizon" means the vessel of that name and that, unless expressly otherwise specified, concerns the operation of the *Deepwater Horizon* in connection with the Macondo Well.

(j)     Anadarko's definition of "Macondo Well" is vague and overbroad; it includes a broad geographic area and is not limited to any well, much less the well at issue in this litigation.   BP p.l.c. will read and respond to Anadarko's requests with the understanding that the term "Macondo Well" means the MC 252 #1 Macondo Well.

(k)     Anadarko's definition of "Deepwater Well" is unobjectionable.

(l)     Anadarko's definition of "incident" is overly narrow; it is limited to the explosion that occurred on the *Deepwater Horizon*.  BP p.l.c. will read and respond to Anadarko's requests with the understanding that the term "Incident" means the loss of control of the Macondo Well and the explosions and fire aboard, and resulting sinking of, the *Deepwater Horizon*.

(m)     Anadarko's definitions of "BOP" and "blowout preventer" is vague and overbroad; they include any equipment used to control any well.  BP p.l.c. will read and respond to Anadarko's requests with the understanding that the terms "BOP" and "blowout preventer" means a blowout preventer like the one in use at the Macondo Well at the time of the incident.

(n)     Anadarko's definition of "Deepwater Horizon Blowout Preventer" is unobjectionable.

(o)     Anadarko's definitions of "you," "your," and "BP" are extremely vague and overbroad; they include a vast array of entities that have had no involvement whatsoever in the events giving rise to this litigation, and confusingly and improperly sweep in hundreds of thousands of individuals as opposed to the corporate entities that have been named as defendants in this litigation.  BP p.l.c. will read and respond to Anadarko's requests with the understanding that the terms you," "your," and "BP" means BP p.l.c.

(p, q, r,)     Anadarko's definitions of "Cameron," "Weatherford," and "Transocean," are similarly vague, overbroad, and confusing.  BP p.l.c. will read and respond to Anadarko's requests with the understanding that these terms refer to the respective corporate entities commonly referred to by these names that have been named in this litigation and played some role in the events relevant to this litigation.

(s)     Anadarko's definition of "person" is vague and overbroad; it includes any number of things that are not people in any sense of the word.  BP p.l.c. will read and respond to Anadarko's requests with the understanding that the term "person" means a person.

(t)     Anadarko's definition of "employee" is vague and overbroad; it includes any number of persons who were or are not employees.  BP p.l.c. will read and respond to Anadarko's requests with the understanding that the term "employee" means an employee.

(u)     Anadarko's definition of "government" is vague and overbroad; it includes a bewildering array of entities as well as any number of people who are "the government."  BP p.l.c. will read and respond to Anadarko's requests with the understanding that the term "government" means the U.S. federal government or the government of a U.S. state, including any branch or agency thereof.

(v)     Anadarko's definition of "communication" is vague and overbroad; it includes practically everything written or said by any person, regardless of whether it was actually communicated in any meaningful sense.  BP p.l.c. will read and respond to Anadarko's requests with the understanding that the term "communication" means talking to someone or sending them a message of some sort.

(w)     Anadarko's definition of "meeting" is vague and overbroad; it includes any number of things that no person would reasonably conclude constitute a meeting, such as a casual greeting exchanged in a hallway, sending an e-mail, or posting a message on a bulletin board.  BP p.l.c. will read and respond to Anadarko's requests with the understanding that the term "meeting" refers to a gathering of two or more people.  It does not include electronic communications unless specified.

(x)     Anadarko's definition of "document" is improper to the extent it includes items outside the scope of Federal Rule of Civil Procedures 34(a)(1)(A).  BP p.l.c. will read and respond to Anadarko's requests with the understanding that the term "document" means the items listed in Federal Rule of Civil Procedure 34(a)(1)(A).

(y)     Anadarko's definition of "electronically stored information" or "ESI" is improper to the extent it includes items outside the scope of Federal Rule of Civil Procedures 34(a)(1)(A).  BP p.l.c. will read and respond to Anadarko's requests with the understanding that the term "electronically stored information" or "ESI" means the electronically stored information listed in Federal Rule of Civil Procedure 34(a)(1)(A).

(z)     Anadarko's definition of "computer" is vague and overbroad; it includes every device that processes or stores information, including any number of things that no person would reasonably conclude constitute a computer, such as a clock, voice recorder, camera, or cell phone.  BP p.l.c. will read and respond to Anadarko's requests with the understanding that the term "computer" means a mainframe, desktop, laptop, or tablet computer.

(aa)    Anadarko's definition of "control" is improper to the extent it seeks to impose any obligation on BP p.l.c. beyond that imposed under Federal Rule of Civil Procedure 34(a)(1).  BP p.l.c. will read and respond to Anadarko's requests with the understanding that the term "control" means "possession, custody, or control" as used in Federal Rule of Civil Procedure 34(a)(1).

(bb)    Anadarko's definitions of "relating to," "related to," "regarding," "concerning," and "with respect to," are vague and overbroad; they render these and innumerable other words void of any independent meaning.  BP p.l.c. will read and respond to Anadarko's

requests with the understanding that these terms have their plain and ordinary meaning in standard English usage.

(cc, dd, ee)   Anadarko's definition of "identify" is overbroad; it includes a request for detailed information far beyond whatever may be reasonably necessary to distinguish one individual, one document, or any ESI, from any other.  BP p.l.c. will read and respond to Anadarko's requests with the understanding that the term "identify" means, in the context of an individual, an individual's name, and where the context reasonably requires, his or her employer and title, and in the context of a document or ESI, a Bates number or other available information necessary to isolate the document or ESI.

(ff)   Anadarko's definition of "describe" is overbroad; it includes a request for detailed information far beyond whatever may be reasonably necessary to accurately give a description.  BP p.l.c. will read and respond to Anadarko's requests with the understanding that the term "describe" means to provide a concise description reasonably calculated to allow the identification of a thing or its characteristics relevant for purposes of this litigation as the context requires.

(gg)   Anadarko's definition of "state" is overbroad; it includes a request for detailed information far beyond whatever may be reasonably necessary to accurately make a statement.  BP p.l.c. will read and respond to Anadarko's requests with the understanding that the term "state" means to truthfully and accurately provide Anadarko with knowledge or information.

(hh)   Anadarko's definitions of "basis," "bases," "sources," "sources of knowledge," "sources of information," or "source(s) of information or belief" are overbroad; it includes a request for detailed information far beyond whatever may be reasonably necessary to

accurately identify the source or basis of a statement.  BP p.l.c. will read and respond to Anadarko's requests with the understanding that the terms "basis," "bases," "sources," "sources of knowledge," "sources of information," or "source(s) of information or belief" mean to identify, when possible and appropriate, the person(s) with direct knowledge about the provided information and the identity of a corresponding document.

(ii)    Anadarko's definitions of "and" and "or" is vague, overbroad, and confusing; they render the words equivalent and therefore deprive them of independent meaning and inconsistent with standard English usage.  BP p.l.c. will read and respond to Anadarko's requests with the understanding that the term "and" means and, and the term "or" means or.

(jj)    Anadarko's definition of "any" is vague, overbroad, and confusing; it renders the word unnecessarily ambiguous and necessarily converts many of Anadarko's requests into nonsensical requests for duplicative information.  BP p.l.c. will read and respond to Anadarko's requests with the understanding that the term "any" means any.

(kk)    Anadarko's definition of "including" is unobjectionable.

(ll)    Anadarko's definitions of "each" and "every" is vague, overbroad, and confusing; they render the words equivalent and therefore deprive them of independent meaning and inconsistent with standard English usage.  BP p.l.c. will read and respond to Anadarko's requests with the understanding that the term "each" means each and the term "every" means every.

(mm)  Anadarko's instruction to treat all nouns and pronouns as plural nouns and pronouns is vague, overbroad, and confusing; it renders many of Anadarko's requests unnecessarily nonsensical, contorted, and duplicative.  BP p.l.c. will read and respond to Anadarko's requests as written, not as imagined to give the "broadest possible application."

(nn)     Anadarko's instruction to treat all verbs as possessing all possible tenses is vague, overbroad, and confusing; it renders many of Anadarko's requests unnecessarily nonsensical, contorted, and duplicative.  BP p.l.c. will read and respond to Anadarko's requests as written, not as imagined to give the "broadest possible application."

(oo)     Anadarko's instruction to treat all terms of a specific gender as referring to all genders is vague, overbroad, and confusing; it renders many of Anadarko's requests unnecessarily nonsensical, contorted, and duplicative.  BP p.l.c. will read and respond to Anadarko's requests as written, not as imagined to give the "broadest possible application."

(pp)     Anadarko's instruction to treat all terms as if they encompass all grammatical variations of the term is vague, overbroad, and confusing; it renders many of Anadarko's requests unnecessarily nonsensical, contorted, and duplicative.  BP p.l.c. will read and respond to Anadarko's requests as written, not as imagined under instructions to set aside standard English usage.

13.     These responses are made without waiving, in any manner, BP p.l.c.'s right to object to the use of any information or documents provided in response to these requests at any trial or evidentiary hearing on grounds of privilege, relevance, materiality, authenticity, hearsay, or any other ground permitted by any applicable law or rule.

14.     To the extent BP p.l.c. states it will produce documents in response to the requests, BP p.l.c. will produce such documents on a rolling basis with such reasonable speed as BP p.l.c. can locate and process them, without sacrificing a meaningful review for responsiveness, privilege, and confidentiality, as this is the only feasible and physically possible method given the scope and breadth of the requests.

15.     To the extent that BP p.l.c. responds that it will search for and produce responsive documents, BP p.l.c. is only undertaking to make a good faith effort to conduct a reasonable search of non-privileged documents of the files and records of those individuals likely to have meaningful information responsive to a requests as maintained in the ordinary course of business, and/or to apply a reasonable set of search terms to similar available collections of ESI as maintained in the ordinary course of business reasonably likely to yield a meaningful amount of information responsive to a request.  BP p.l.c. is not offering or promising to search for and produce every document or piece of information that may exist in the possession, custody, or control of any of its tens of thousands of employees and agents where any such items are not included within the results of a reasonable search as described above.

16.     BP p.l.c. objects to Anadarko's requests to the extent that they are not limited to a reasonable time period as unreasonable, overbroad, and calling for the production of documents with little or no relevance to this litigation or any respect for the practicalities of resolving it.  BP p.l.c. will read and respond to Anadarko's requests with the understanding that the term "relevant time period" means January 1, 2009 through April 20, 2010, unless:  (i) the request clearly seeks specific, available, relevant information that pre-dates January 1, 2009 (*e.g.*, rig audits of the *Deepwater Horizon*); and (ii) the request clearly seeks relevant information or documents that post-date the incident, in which case and to which extent, the time period is, or includes as the context requires, April 20, 2010 through November 8, 2010, or November 30, 2010, with regard to certain requests seeking information related to environmental issues.  In addition, when used in reference to the operation of the *Deepwater Horizon*, the *Transocean Marianas*, the blowout preventer, or any other equipment that was used in connection with work that did not involve the Macondo Well, BP p.l.c. will read and respond to Anadarko's requests with the understanding

that the term "relevant time period" means the period of time during which the rig or equipment referred to was used at the site of the Macondo Well, prior to and including April 20, 2010 as stated above.  Notwithstanding the above, however, BP p.l.c. may respond to Anadarko's requests that seek specific, relevant, identifiable documents generated prior to the time frames set forth above, but in no event will BP p.l.c. undertake to search for or produce documents generated prior to January 1, 2006.

17.     BP p.l.c.'s decision, now or in the future, to provide information or documents notwithstanding the objectionable nature of any of the definitions or instructions, or the document requests themselves, should not be construed as:  (a) a stipulation that the material is relevant or admissible, (b) a waiver of BP p.l.c.'s general objections or the objections asserted in response to specific requests, or (c) an agreement that requests for similar information will be treated in a similar manner.

18.     BP p.l.c. reserves the right to modify, amend, or supplement its responses, which are made based on the current status of its knowledge, understanding, belief, and searches for documents.  The investigation of facts and information relating to these requests is continuing, and, therefore, these responses are not intended as an admission or a representation that additional information or documents do not exist.

Dated:  February 22, 2011                          Respectfully submitted,

                                                   By:  /s/ J. Andrew Langan, P.C.

                                                   Richard C. Godfrey, P.C.
                                                   J. Andrew Langan, P.C.
                                                   Wendy Bloom, P.C.
                                                   Timothy A. Duffy, P.C.
                                                   Kirkland & Ellis LLP
                                                   300 North LaSalle Street
                                                   Chicago, IL 60654
                                                   312-862-2000 (Tel)

312-862-2200 (Fax)

and

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

and

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
202-662-5985

*Attorneys for BP p.l.c.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing response has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, which will send a notice in accordance with the procedures established in MDL 2179, on this 22nd day of February, 2011.

<u>/s/   J. Andrew Langan, P.C.___</u>

36086782

Feb 22 2011
10:55PM

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | : : : : | MDL No. 2179 SECTION: J |
| This Document Relates To: All Actions | : : | JUDGE BARBIER MAGISTRATE JUDGE SHUSHAN |
| …………………………………………….. | : | |

## BP P.L.C.'S RESPONSES AND OBJECTIONS TO DEFENDANT MOEX OFFSHORE 2007 LLC'S INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS

Defendant BP p.l.c., by its undersigned Counsel, and, pursuant to Rules 26, 33, and 34 of the Federal Rules of Civil Procedure, hereby submits the following responses and objections to MOEX's Interrogatories and Requests for Production.

## SPECIFIC RESPONSES AND OBJECTIONS

BP p.l.c. responds as follows to MOEX's specific interrogatories and requests for production, subject to and without waiving their general objections, each and every one of which are specifically incorporated into each individual response below.[1]

## INTERROGATORY NO. 1:

Please IDENTIFY every BP EMPLOYEE or other PERSON associated with BP who concluded that the second, or any subsequent, negative pressure test at the MACONDO WELL on April 20, 2010, was "successful" and DESCRIBE in detail each and every reason for such conclusion.

## RESPONSE TO INTERROGATORY NO. 1:

BP p.l.c. asserts its general objections.

---

[1] BP p.l.c.'s general objections are set forth at pages 14 - 26.

**INTERROGATORY NO. 2:**

Please IDENTIFY every BP EMPLOYEE or other PERSON associated with BP who concluded that the difference in pressure of 1400 psi between the drill pipe and the *DEEP WATER HORIZON*'*S* BLOWOUT PREVENTER'S kill line during the second negative pressure test on April 20, 2010 was the result of "bladder effect."

**RESPONSE TO INTERROGATORY NO. 2:**

BP p.l.c. asserts its general objections.

**INTERROGATORY NO. 3:**

Please IDENTIFY and DESCRIBE every policy or standard practice existing at BP prior to April 21, 2010 that ensured that any and all of BP's decisions about drilling operations or temporary abandonment of deep sea wells did not favor cost or schedule considerations over potential risks to safety.

**RESPONSE TO INTERROGATORY NO. 3:**

BP p.l.c. asserts its general objections.

**INTERROGATORY NO. 4:**

Please IDENTIFY who at BP made the decision to displace to seawater at 3,367' below mud level prior to performing a negative pressure test on the MACONDO WELL, and DESCRIBE in detail the basis of his/her/their decision.

**RESPONSE TO INTERROGATORY NO. 4:**

BP p.l.c. asserts its general objections.

**INTERROGATORY NO. 5:**

Please IDENTIFY all PERSONS with whom Robert Kaluza or Donald Vidrine spoke by telephone on April 20 and 21, 2010 REGARDING conditions on the *DEEP WATER HORIZON* and DESCRIBE in detail the time and the substance of each such conversation.

**RESPONSE TO INTERROGATORY NO. 5:**

BP p.l.c. asserts its general objections.

**INTERROGATORY NO. 6:**

Please STATE whether YOU believe that the initial flow of hydrocarbons into the MACONDO WELL on April 20, 2010 did or did not come through the shoe track barrier and DESCRIBE in detail the basis for YOUR belief.

**RESPONSE TO INTERROGATORY NO. 6:**

BP p.l.c. asserts its general objections.

**INTERROGATORY NO. 7:**

Please STATE whether YOU believe there was hydrocarbon flow through the seal assembly during the INCIDENT on April 20, 2010, and DESCRIBE in detail the basis for YOUR belief.

**RESPONSE TO INTERROGATORY NO. 7:**

BP p.l.c. asserts its general objections.

**INTERROGATORY NO. 8:**

Please STATE why YOU did not perform a float collar test after cementing to determine or understand whether there was a barrier, to hydrocarbons flow up the wellbore, and DESCRIBE what procedure YOU were following (if CFR 250.404-5, please STATE what part of this regulation YOU feel YOU fulfilled and how).

**RESPONSE TO INTERROGATORY NO. 8:**

BP p.l.c. asserts its general objections.

**INTERROGATORY NO. 9:**

Please DESCRIBE in detail why there was no monitoring of the mud pits on the *DEEP WATER HORIZON* on April 20, 2010 during all or any part of the period of time from 13:28 hours (when the offloading to the supply vessel *M/V Damon Bankston* began) to 21:10 hours (when the returns were routed overboard), and specifically IDENTIFY the period of time during which monitoring did not occur.

**RESPONSE TO INTERROGATORY NO. 9:**

BP p.l.c. asserts its general objections.

3

**INTERROGATORY NO. 10:**

Please DESCRIBE each and every step taken to control or shut in the MACONDO WELL on April 20, 2010, giving the time of day each such step was taken and by whom.

**RESPONSE TO INTERROGATORY NO. 10:**

BP p.l.c. asserts its general objections.

**INTERROGATORY NO. 11:**

Please IDENTIFY and DESCRIBE in detail YOUR well control and well shut-in protocols and DESCRIBE in detail what those protocols state REGARDING how to respond to loss of well control.

**RESPONSE TO INTERROGATORY NO. 11:**

BP p.l.c. asserts its general objections.

**INTERROGATORY NO. 12:**

Please IDENTIFY every PERSON who made the decision on April 20, 2010 to divert flow from the MACONDO WELL through the mud gas separator rather than the starboard diverter and DESCRIBE in detail the basis for that decision.

**RESPONSE TO INTERROGATORY NO. 12:**

BP p.l.c. asserts its general objections.

**INTERROGATORY NO. 13:**

Please IDENTIFY who, if anyone, attempted to operate the emergency disconnect system on April 20, 2010, prior to the first explosion on the *DEEP WATER HORIZON,* or after, and DESCRIBE in detail the reasons for doing so or not doing so.

**RESPONSE TO INTERROGATORY NO. 13:**

BP p.l.c. asserts its general objections.

**INTERROGATORY NO. 14:**

Please IDENTIFY which of YOUR EMPLOYEES were informed of or involved with planning for temporary-well abandonment procedures for the MACONDO WELL from March 1 through April 20, 2010, DESCRIBE in detail their roles in the planning, and DESCRIBE in

detail any changes, recommendations or misgivings about those procedures that were communicated by or to YOUR EMPLOYEES, and by and to whom.

**RESPONSE TO INTERROGATORY NO. 14:**

BP p.l.c. asserts its general objections.

**INTERROGATORY NO. 15:**

Beginning with the MACONDO WELL temporary abandonment procedures, plan and/or steps discussed by YOUR EMPLOYEES by email or otherwise on April 12, 2010, DESCRIBE in detail each temporary abandonment procedure, plan and/or step YOU decided upon or changed between April 12 and the April 20th explosion on the *DEEP WATER HORIZON,* and the specific reasons for and basis on which YOU changed or revised each such procedure, plan and/or step.

**RESPONSE TO INTERROGATORY NO. 15:**

BP p.l.c. asserts its general objections.

**INTERROGATORY NO. 16:**

Please DESCRIBE in detail all "kicks" experienced on the *DEEP WATER HORIZON* or with the MACONDO WELL from February 1, 2010 through April 20, 2010; IDENTIFY each PERSON who experienced, monitored and/or reported such kicks; and DESCRIBE in detail all actions taken in response to such kicks.

**RESPONSE TO INTERROGATORY NO. 16:**

BP p.l.c. asserts its general objections.

**INTERROGATORY NO. 17:**

Please STATE whether it has been YOUR policy or standard procedure since 2000 that closing the annular preventer should be the first step taken during well control events on the *DEEPWATER HORIZON* and on the other deepwater drilling rigs leased, contracted, or used by YOU and, if so, DESCRIBE in detail the basis for the policy and/or procedure.

**RESPONSE TO INTERROGATORY NO. 17:**

BP p.l.c. asserts its general objections.

**INTERROGATORY NO. 18:**

Please DESCRIBE in detail all follow-up steps that YOU took following YOUR 2009 audit of the *DEEP WATER HORIZON* (including the *DEEP WATER HORIZON* BLOWOUT PREVENTER), that showed TRANSOCEAN was behind on maintenance of certain items on the *DEEP WATER HORIZON* and that the BOP had not been inspected or certified for a number of years, to ensure that the *DEEP WATER HORIZON* BLOWOUT PREVENTER maintenance had been brought up-to-date and was appropriate.

**RESPONSE TO INTERROGATORY NO. 18:**

BP p.l.c. asserts its general objections.


**INTERROGATORY NO. 19:**

Please IDENTIFY the companies that provided service for any COMMUNICATIONS devices, including but not limited to telephones, cellular phones, smart phones, and Blackberries, that were in the possession of any PERSONS aboard the *DEEP WATER HORIZON* or the *M/V Damon Bankston* on April 20 and 21, 2010, and the telephone numbers for each such device.

**RESPONSE TO INTERROGATORY NO. 19:**

BP p.l.c. asserts its general objections.


**INTERROGATORY NO. 20:**

Please IDENTIFY, for the month of April 2010, the type of device by which any of YOUR EMPLOYEES on the *DEEP WATER HORIZON* communicated with anyone on shore (wireless phone, satellite phone, Blackberries, or any similar devices), the telephone number of that device, and the COMMUNICATIONS provider for that telephone number, and the PERSON to whom that device belonged or was assigned.

**RESPONSE TO INTERROGATORY NO. 20:**

BP p.l.c. asserts its general objections.


**INTERROGATORY NO. 21:**

Did YOU confirm that all relevant lab test results had been obtained and considered by the HALLIBURTON in-house cementing engineer before cement placement proceeded at the MACONDO WELL, and if so, DESCRIBE in detail how you performed that confirmation including the IDENTITY of all COMMUNICATIONS or DOCUMENTS RELATED TO such confirmation.

6

**RESPONSE TO INTERROGATORY NO. 21:**

    BP p.l.c. asserts its general objections.

**INTERROGATORY NO. 22:**

    DESCRIBE in detail what quality assurance YOU did to ensure that potential flaws and weaknesses in the cement slurry design for the MACONDO WELL were identified.

**RESPONSE TO INTERROGATORY NO. 22:**

    BP p.l.c. asserts its general objections.

**INTERROGATORY NO. 23:**

    DESCRIBE in detail what lab tests of the cement YOU reviewed and relied upon for the MACONDO WELL, and DESCRIBE in detail why you did not ask for further tests.

**RESPONSE TO INTERROGATORY NO. 23:**

    BP p.l.c. asserts its general objections.

**INTERROGATORY NO. 24:**

    DESCRIBE in detail why YOUR MACONDO WELL team allowed the cement placement to proceed on April 19 and 20, 2010 after your review of lab tests and results.

**RESPONSE TO INTERROGATORY NO. 24:**

    BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION OF DOCUMENTS**

**REQUEST FOR PRODUCTION NO. 1:**

    Please produce all DOCUMENTS reviewed by YOU in connection with preparation of YOUR responses to each of the Interrogatories set forth above.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

    BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 2:**

Please produce all DOCUMENTS RELATING TO required or recommended practices to prevent or minimize pollution during the course of drilling or operating a well.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 3:**

Please produce all DOCUMENTS RELATING TO planned activities, and activities undertaken, on the *DEEP WATER HORIZON* during the period from April 14 through April 25, 2010.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 4:**

Please produce all DOCUMENTS reflecting, or considered by YOU in connection with, pre-cement job evaluation of the design and volume of cement to be used for the final production casing string.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 5:**

Please produce all DOCUMENTS reflecting, or considered by YOU in connection with, pre-cement job evaluation of the potential for contamination of the cement job for the final production casing string.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 6:**

Please produce all DOCUMENTS reflecting, or considered by YOU in connection with, pre-cement job evaluation of the amount of time that should elapse in order to permit the cement

job on the final casing string to strengthen before commencing further operations on the MACONDO WELL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 7:**

Please produce all DOCUMENTS reflecting policies, practices or procedures for when (and under what circumstances) and how a float collar should be tested to determine whether it has converted properly or has been damaged during conversion attempts.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 8:**

WITH RESPECT TO the MACONDO WELL, please produce all DOCUMENTS reflecting discussion, or evaluation, of whether there was, or would be, sufficient differential pressure between the cement in the final casing string and the fluid in the annulus to determine whether the float collar was properly converted.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 9:**

Please produce all DOCUMENTS reflecting policies, practices or procedures REGARDING displacement of kill weight mud to seawater before a well has successfully passed a negative test.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 10:**

Please produce all DOCUMENTS reflecting policies, practices or procedures in connection with, or concerns or issues REGARDING, the conduct of simultaneous activities on a

rig, MODU or platform that might interfere with or prevent monitoring of fluid gains or losses in a well.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 11:**

Please produce all of YOUR temporary abandonment plans, and drafts of such plans, for any DEEPWATER WELL in the Gulf of Mexico during the last ten years.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 12:**

Please produce all DOCUMENTS discussing, or reflecting, evaluation by YOU of a change from a long string design to a tie-back with liner during the course of drilling any DEEPWATER WELL in the Gulf of Mexico during the last ten years.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 13:**

Please produce all DOCUMENTS discussing, reflecting or RELATING TO YOUR decision not to conduct a cement bond log for the MACONDO WELL and DOCUMENTS RELATING TO or IDENTIFYING any PERSONS involved in that decision

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 14:**

Please produce all DOCUMENTS evidencing or RELATING TO YOUR internal rules and procedures for deepwater drilling of wells.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 15:**

Please produce all DOCUMENTS, including invoices, RELATING TO YOUR response activities RELATED TO the spill resulting from the INCIDENT.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 16:**

Please produce all DOCUMENTS RELATING TO training of YOUR engineers who design DEEPWATER WELLS, including but not limited to training required before being hired by BP as well as training given by or at BP after hire.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 17:**

Please produce all DOCUMENTS RELATING TO training of YOUR personnel who act as well site leaders on DEEPWATER WELLS, including but not limited to training required before being hired by BP as well as training given by or at BP after hire.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 18:**

Please produce all DOCUMENTS RELATING TO training of YOUR personnel who act as well team leaders on DEEPWATER WELLS, including but not limited to training required before being hired by BP as well as training given by or at BP after hire.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 19:**

Please produce all DOCUMENTS RELATING TO the qualifications of YOUR personnel who designed the MACONDO WELL or modified its design during drilling, or acted as well site leaders or well team leaders.

11

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

      BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 20:**

      Please produce all DOCUMENTS RELATING TO the specific training of YOUR personnel, before or after hire by BP, who designed the MACONDO WELL or modified its design during drilling, or acted as well site leaders or well team leaders.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

      BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 21:**

      Please produce all telephone logs or records that YOU have, or have obtained from the companies that provided service, for the month of April 2010 that relate to any COMMUNICATIONS devices used by any of YOUR EMPLOYEE on the *DEEP WATER HORIZON* to communicate with anyone on shore (wireless phone, satellite phone, Blackberries, or any similar devices).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

      BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 22:**

      Please produce all DOCUMENTS that are or RELATE TO internal discussions (including emails) about what YOU would be or would not be telling MOEX OFFSHORE, MOEX USA or ANADARKO about the drilling process, conditions, changes, progress, or problems at the MACONDO WELL, prior to May 1, 2010.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

      BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 23:**

      Please produce all DOCUMENTS that are or RELATE TO "stop the job" incidents called for by BP EMPLOYEES or by other workers on MODU rigs used, leased, or contracted by BP that RELATED TO well kicks, to movement of mud on the rig (either between pits or overboard).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 24:**

WITH RESPECT TO YOUR December 8, 2010 response to PLAINTIFFS' Interrogatory No. 29, please produce all DOCUMENTS that are or RELATE TO internal discussions (including emails) YOU had REGARDING "BLOWOUT PREVENTER[s] that did not seal a well as intended" (whether RELATING TO the Ixtoc I well, the Silvertip well, the AC 901 well, the WR 543 well, or any other well that had issues with BLOWOUT PREVENTERS).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 25:**

Please produce all DOCUMENTS that RELATE TO other DEEPWATER WELLS drilled by YOU in the last 10 years in which YOU displaced to seawater before locking down the hanger.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 26:**

Please produce all DOCUMENTS that are or RELATE TO approval YOU obtained from MMS to displace to seawater and set a cement plug at about 8367 feet (+/-3300' BML) WITH RESPECT TO the MACONDO WELL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 27:**

Please produce all DOCUMENTS that are or RELATE TO requests YOU have made to MMS to displace to seawater and set a cement plug at +/-3300 feet BML WITH RESPECT TO any DEEPWATER WELL YOU have drilled other than the MACONDO WELL, including but not limited to any denials of such requests.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 28:**

Please produce all DOCUMENTS pertaining to who has authority on YOUR MODU operations to deviate from YOUR written drilling plans or procedures.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 29:**

Please produce any and all interview notes reflecting statements by Mark Hafle following the INCIDENT, including but not limited to interviews conducted by or on behalf of the BP investigation team.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 30:**

To the extent not previously produced, please produce any DOCUMENTS RELATING TO any activities at or affecting the MACONDO WELL, including but not limited to, any investigations; observations; instructions; assessments; development of protocols, procedures, or "lessons learned" analyses; audits; self-evaluations; summaries of activities, logs, and guidance documents.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

BP p.l.c. asserts its general objections.

**GENERAL OBJECTIONS**

BP p.l.c. asserts the following objections to each and every one of MOEX's

interrogatories and requests for production including any definitions or instructions associated

therewith (collectively, "MOEX's Discovery Requests").   These general objections are

14

incorporated by reference into each specific response set forth by BP p.l.c. and are neither waived nor limited by any specific responses.

1.      Defendant BP p.l.c. objects to all of MOEX's requests.  BP p.l.c. is a corporation organized under the laws of England and Wales, which is publicly traded with its headquarters in London, England.  BP p.l.c. did not own the MC 252 leasehold, had no employees on the *Deepwater Horizon*, and was not a party to the drilling rig contract with Transocean.  BP p.l.c. does not directly conduct exploration and production activities and was not directly involved in the events involving the Macondo Well or the incident.  Accordingly, to the best of its knowledge, with regard to almost all of MOEX's Discovery Requests, BP p.l.c. does not have any meaningful set of information or documents responsive to plaintiffs' requests not derivative and duplicative of that of BPA, BPAP, and/or BPXP, and BP p.l.c. directs plaintiffs to the responses provided by those defendants.

2.      BP p.l.c. objects to MOEX's Discovery Requests to the extent they call for information, seek discovery, or attempt to impose any obligations beyond that permitted or authorized by the Federal Rules of Civil Procedure or the Rules and Orders of this Court.

3.      BP p.l.c. objects to MOEX's Discovery Requests to the extent they call for the production of ESI in any manner other than required under Federal Rule of Civil Procedure 34, the Rules and Orders of the Court, and ongoing negotiations and discussions among counsel.

4.      BP p.l.c. objects to MOEX's Discovery Requests to the extent they seek information or documents protected by the attorney-client privilege, the work-product doctrine, the joint defense or common interest privilege, or any other applicable privilege, exemption, or immunity.  BP p.l.c. will identify specific documents withheld on these grounds in accordance with the schedule set forth in, and provide the information required by, the Court's Pretrial Order

#14, and such further Orders of the Court and ongoing negotiations and discussions among counsel.  BP p.l.c. incorporates its forthcoming privilege logs and all related information into this general objection to the extent necessary to preserve against any waiver of any applicable privilege or immunity from discovery.

5.      BP p.l.c. objects to MOEX's Discovery Requests to the extent they seek information or documents relating to the settlement or potential settlement of disputes on the grounds that such information is not relevant to any party's claim or defense, is not admissible at trial and not reasonably calculated to lead to the discovery of admissible evidence, is protected from disclosure and dissemination under Federal Rule of Evidence 408, and that discovery of such information would be prejudicial to the efforts of  BP p.l.c. and any opposing parties to resolve their disputes in a fair and efficient manner.

6.      BP p.l.c. objects to MOEX's Discovery Requests to the extent they call for information or documents not within BP p.l.c.'s possession, custody, or control.  All responses are made on behalf of BP p.l.c. only, are limited to information and documents within BP p.l.c.'s possession, custody, or control.

7.      BP p.l.c. objects to MOEX's Discovery Requests to the extent they are unduly burdensome, duplicative, premature, oppressive, and/or overbroad, including, without limitation, as to subject matter and/or time period, and where compliance with specific requests would be unreasonably difficult as well as prohibitively expensive or time-consuming.

8.      BP p.l.c. objects to MOEX's Discovery Requests to the extent they are not limited to information or documents relevant to any party's claim or defense, or to the extent they seek discovery of information or documents not admissible at trial and not reasonably calculated to lead to the discovery of admissible evidence, including, but not limited to, requests seeking

16

information or documents concerning other incidents, accidents, or other events at BP facilities or locations other than the Macondo Well or that are otherwise unrelated to the *Deepwater Horizon*.

9.      BP p.l.c. objects to MOEX's Discovery Requests to the extent they seek the disclosure of information or documents that contain or constitute trade secrets, proprietary information, or other confidential business information without appropriate restrictions on disclosure and dissemination that are embodied in a protective order entered by the Court.

10.      BP p.l.c. objects to MOEX's Discovery Requests to the extent they seek the disclosure of information or documents that would violate the rights of privacy of third parties, or any similar judicially recognized protection or privilege, including, but not limited to, restrictions imposed in connection with proceedings before the MBI, and the protections of the Health Insurance Portability and Accountability Act ("HIPAA"), or that would result in disclosure of any confidential information or conduct without appropriate restrictions on disclosure and dissemination that are embodied in a protective order entered by the Court.

11.      BP p.l.c. objects to the requests to the extent they seek documents already in the possession of MOEX or equally available to MOEX from sources other than BP p.l.c., including publicly available sources.

12.      BP p.l.c. objects to MOEX's "Definitions" to the extent they seek to impose any meaning or interpretation onto the requests other than that evident from the plain and ordinary meaning of the words used therein.  BP p.l.c. further objects to, and will read and respond to, MOEX's "Definitions" (labeled to correspond to MOEX's list) as follows:

(i)      MOEX's definition of "Deepwater Horizon" is vague and overbroad; it includes any equipment used in connection with the exploration for or production of oil.  BP

17

p.l.c. will read and respond to MOEX's requests with the understanding that the term "Deepwater Horizon" means the vessel of that name and that, unless expressly otherwise specified, concerns the operation of the *Deepwater Horizon* in connection with the Macondo Well.

    (j) MOEX's definition of "Macondo Well" is vague and overbroad; it includes a broad geographic area and is not limited to any well, much less the well at issue in this litigation.  BP p.l.c. will read and respond to MOEX's requests with the understanding that the term "Macondo Well" means the MC 252 #1 Macondo Well.

    (l) MOEX's definition of "incident" is overly narrow; it is limited to the explosion that occurred on the *Deepwater Horizon*.  BP p.l.c. will read and respond to MOEX's requests with the understanding that the term "Incident" means the loss of control of the Macondo Well and the explosions and fire aboard, and resulting sinking of, the *Deepwater Horizon*.

    (m) MOEX's definitions of "BOP" and "blowout preventer" is vague and overbroad; they include any equipment used to control any well.  BP p.l.c. will read and respond to MOEX's requests with the understanding that the terms "BOP" and "blowout preventer" means a blowout preventer like the one in use at the Macondo Well at the time of the incident.

    (n) MOEX's definition of "Deepwater Horizon Blowout Preventer" is unobjectionable.

    (o) MOEX's definitions of "you," "your," and "BP" are extremely vague and overbroad; they include a vast array of entities that have had no involvement whatsoever in the events giving rise to this litigation, and confusingly and improperly sweep in hundreds of thousands of individuals as opposed to the corporate entities that have been named as defendants

in this litigation.  BP p.l.c. will read and respond to MOEX's requests with the understanding that the terms you," "your," and "BP" means BP p.l.c.

(p, q, r,)        MOEX's definitions of "Cameron," "Weatherford," and "Transocean," are similarly vague, overbroad, and confusing.  BP p.l.c. will read and respond to MOEX's requests with the understanding that these terms refer to the respective corporate entities commonly referred to by these names that have been named in this litigation and played some role in the events relevant to this litigation.

(s)        MOEX's definition of "person" is vague and overbroad; it includes any number of things that are not people in any sense of the word.  BP p.l.c. will read and respond to MOEX's requests with the understanding that the term "person" means a person.

(t)        MOEX's definition of "employee" is vague and overbroad; it includes any number of persons who were or are not employees.  BP p.l.c. will read and respond to MOEX's requests with the understanding that the term "employee" means an employee.

(u)        MOEX's definition of "government" is vague and overbroad; it includes a bewildering array of entities as well as any number of people who are "the government."  BP p.l.c. will read and respond to MOEX's requests with the understanding that the term "government" means the U.S. federal government or the government of a U.S. state, including any branch or agency thereof.

(v)        MOEX's definition of "communication" is vague and overbroad; it includes practically everything written or said by any person, regardless of whether it was actually communicated in any meaningful sense.  BP p.l.c. will read and respond to MOEX's requests with the understanding that the term "communication" means talking to someone or sending them a message of some sort.

(w)     MOEX's definition of "meeting" is vague and overbroad; it includes any number of things that no person would reasonably conclude constitute a meeting, such as a casual greeting exchanged in a hallway, sending an e-mail, or posting a message on a bulletin board.  BP p.l.c. will read and respond to MOEX's requests with the understanding that the term "meeting" refers to a gathering of two or more people.   It does not include electronic communications unless specified.

(x)     MOEX's definition of "document" is improper to the extent it includes items outside the scope of Federal Rule of Civil Procedures 34(a)(1)(A).  BP p.l.c. will read and respond to MOEX's requests with the understanding that the term "document" means the items listed in Federal Rule of Civil Procedure 34(a)(1)(A).

(y)     MOEX's definition of "electronically stored information" or "ESI" is improper to the extent it includes items outside the scope of Federal Rule of Civil Procedures 34(a)(1)(A).  BP p.l.c. will read and respond to MOEX's requests with the understanding that the term "electronically stored information" or "ESI" means the electronically stored information listed in Federal Rule of Civil Procedure 34(a)(1)(A).

(z)     MOEX's definition of "computer" is vague and overbroad; it includes every device that processes or stores information, including any number of things that no person would reasonably conclude constitute a computer, such as a clock, voice recorder, camera, or cell phone.  BP p.l.c. will read and respond to MOEX's requests with the understanding that the term "computer" means a mainframe, desktop, laptop, or tablet computer.

(aa)     MOEX's definition of "control" is improper to the extent it seeks to impose any obligation on BP p.l.c. beyond that imposed under Federal Rule of Civil Procedure 34(a)(1).  BP p.l.c. will read and respond to MOEX's requests with the understanding that the

term "control" means "possession, custody, or control" as used in Federal Rule of Civil Procedure 34(a)(1).

(bb)    MOEX's definitions of "relating to," "related to," "regarding," "concerning," and "with respect to," are vague and overbroad; they render these and innumerable other words void of any independent meaning.  BP p.l.c. will read and respond to MOEX's requests with the understanding that these terms have their plain and ordinary meaning in standard English usage.

(cc, dd, ee)    MOEX's definition of "identify" is overbroad; it includes a request for detailed information far beyond whatever may be reasonably necessary to distinguish one individual, one document, or any ESI, from any other.  BP p.l.c. will read and respond to MOEX's requests with the understanding that the term "identify" means, in the context of an individual, an individual's name, and where the context reasonably requires, his or her employer and title, and in the context of a document or ESI, a Bates number or other available information necessary to isolate the document or ESI.

(ff)    MOEX's definition of "describe" is overbroad; it includes a request for detailed information far beyond whatever may be reasonably necessary to accurately give a description.  BP p.l.c. will read and respond to MOEX's requests with the understanding that the term "describe" means to provide a concise description reasonably calculated to allow the identification of a thing or its characteristics relevant for purposes of this litigation as the context requires.

(gg)    MOEX's definition of "state" is overbroad; it includes a request for detailed information far beyond whatever may be reasonably necessary to accurately make a

statement.  BP p.l.c. will read and respond to MOEX's requests with the understanding that the term "state" means to truthfully and accurately provide MOEX with knowledge or information.

(hh)    MOEX's definitions of "basis," "bases," "sources," "sources of knowledge," "sources of information," or "source(s) of information or belief" are overbroad; it includes a request for detailed information far beyond whatever may be reasonably necessary to accurately identify the source or basis of a statement.  BP p.l.c. will read and respond to MOEX's requests with the understanding that the terms "basis," "bases," "sources," "sources of knowledge," "sources of information," or "source(s) of information or belief" mean to identify, when possible and appropriate, the person(s) with direct knowledge about the provided information and the identity of a corresponding document.

(ii)    MOEX's definitions of "and" and "or" is vague, overbroad, and confusing; they render the words equivalent and therefore deprive them of independent meaning and inconsistent with standard English usage.  BP p.l.c. will read and respond to MOEX's requests with the understanding that the term "and" means and, and the term "or" means or.

(jj)    MOEX's definition of "any" is vague, overbroad, and confusing; it renders the word unnecessarily ambiguous and necessarily converts many of MOEX's requests into nonsensical requests for duplicative information.  BP p.l.c. will read and respond to MOEX's requests with the understanding that the term "any" means any.

(kk)    MOEX's definition of "including" is unobjectionable.

(ll)    MOEX's definitions of "each" and "every" is vague, overbroad, and confusing; they render the words equivalent and therefore deprive them of independent meaning and inconsistent with standard English usage.  BP p.l.c. will read and respond to MOEX's

requests with the understanding that the term "each" means each and the term "every" means every.

(mm)   MOEX's instruction to treat all nouns and pronouns as plural nouns and pronouns is vague, overbroad, and confusing; it renders many of MOEX's requests unnecessarily nonsensical, contorted, and duplicative.  BP p.l.c. will read and respond to MOEX's requests as written, not as imagined to give the "broadest possible application."

(nn)   MOEX's instruction to treat all verbs as possessing all possible tenses is vague, overbroad, and confusing; it renders many of MOEX's requests unnecessarily nonsensical, contorted, and duplicative.  BP p.l.c. will read and respond to MOEX's requests as written, not as imagined to give the "broadest possible application."

(oo)   MOEX's instruction to treat all terms of a specific gender as referring to all genders is vague, overbroad, and confusing; it renders many of MOEX's requests unnecessarily nonsensical, contorted, and duplicative.  BP p.l.c. will read and respond to MOEX's requests as written, not as imagined to give the "broadest possible application."

(pp)   MOEX's instruction to treat all terms as if they encompass all grammatical variations of the term is vague, overbroad, and confusing; it renders many of MOEX's requests unnecessarily nonsensical, contorted, and duplicative.  BP p.l.c. will read and respond to MOEX's requests as written, not as imagined under instructions to set aside standard English usage.

13.   These responses are made without waiving, in any manner, BP p.l.c.'s right to object to the use of any information or documents provided in response to these requests at any trial or evidentiary hearing on grounds of privilege, relevance, materiality, authenticity, hearsay, or any other ground permitted by any applicable law or rule.

14.     To the extent BP p.l.c. states it will produce documents in response to the requests, BP p.l.c. will produce such documents on a rolling basis with such reasonable speed as BP p.l.c. can locate and process them, without sacrificing a meaningful review for responsiveness, privilege, and confidentiality, as this is the only feasible and physically possible method given the scope and breadth of the requests.

15.     To the extent that BP p.l.c. responds that it will search for and produce responsive documents, BP p.l.c. is only undertaking to make a good faith effort to conduct a reasonable search of non-privileged documents of the files and records of those individuals likely to have meaningful information responsive to a requests as maintained in the ordinary course of business, and/or to apply a reasonable set of search terms to similar available collections of ESI as maintained in the ordinary course of business reasonably likely to yield a meaningful amount of information responsive to a request.  BP p.l.c. is not offering or promising to search for and produce every document or piece of information that may exist in the possession, custody, or control of any of its tens of thousands of employees and agents where any such items are not included within the results of a reasonable search as described above.

16.     BP p.l.c. objects to MOEX's requests to the extent that they are not limited to a reasonable time period as unreasonable, overbroad, and calling for the production of documents with little or no relevance to this litigation or any respect for the practicalities of resolving it.  BP p.l.c. will read and respond to MOEX's requests with the understanding that the term "relevant time period" means January 1, 2009 through April 20, 2010, unless:  (i) the request clearly seeks specific, available, relevant information that pre-dates January 1, 2009 (*e.g.*, rig audits of the *Deepwater Horizon*); and (ii) the request clearly seeks relevant information or documents that post-date the incident, in which case and to which extent, the time period is, or includes as the

context requires, April 20, 2010 through November 8, 2010, or November 30, 2010, with regard to certain requests seeking information related to environmental issues.  In addition, when used in reference to the operation of the *Deepwater Horizon*, the *Transocean Marianas*, the blowout preventer, or any other equipment that was used in connection with work that did not involve the Macondo Well, BP p.l.c. will read and respond to MOEX's requests with the understanding that the term "relevant time period" means the period of time during which the rig or equipment referred to was used at the site of the Macondo Well, prior to and including April 20, 2010 as stated above.  Notwithstanding the above, however, BP p.l.c. may respond to MOEX's requests that seek specific, relevant, identifiable documents generated prior to the time frames set forth above, but in no event will BP p.l.c. undertake to search for or produce documents generated prior to January 1, 2006.

17.     BP p.l.c.'s decision, now or in the future, to provide information or documents notwithstanding the objectionable nature of any of the definitions or instructions, or the document requests themselves, should not be construed as:  (a) a stipulation that the material is relevant or admissible, (b) a waiver of BP p.l.c.'s general objections or the objections asserted in response to specific requests, or (c) an agreement that requests for similar information will be treated in a similar manner.

18.     BP p.l.c. reserves the right to modify, amend, or supplement its responses, which are made based on the current status of its knowledge, understanding, belief, and searches for documents.  The investigation of facts and information relating to these requests is continuing, and, therefore, these responses are not intended as an admission or a representation that additional information or documents do not exist.

Dated:  February 22, 2011     Respectfully submitted,

           By:  /s/ J. Andrew Langan, P.C.

           Richard C. Godfrey, P.C.
           J. Andrew Langan, P.C.
           Wendy Bloom, P.C.
           Timothy A. Duffy, P.C.
           Kirkland & Ellis LLP
           300 North LaSalle Street
           Chicago, IL 60654
           312-862-2000 (Tel)
           312-862-2200 (Fax)

           and

           Don K. Haycraft (Bar #14361)
           R. Keith Jarrett (Bar #16984)
           LISKOW & LEWIS
           701 Poydras Street, Suite 5000
           New Orleans, Louisiana 70139-5099
           Telephone: (504) 581-7979
           Facsimile: (504) 556-4108

           and

           Robert C. "Mike" Brock
           Covington & Burling LLP
           1201 Pennsylvania Avenue, NW
           Washington, DC 20004-2401
           202-662-5985

           *Attorneys for BP p.l.c.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing response has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, which will send a notice in accordance with the procedures established in MDL 2179, on this 22nd day of February, 2011.

/s/   J. Andrew Langan, P.C.____

36086788

Feb 22 2011
10:55PM

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | : : : : | MDL No. 2179 SECTION: J |
| This Document Relates To: All Actions | : : | JUDGE BARBIER MAGISTRATE JUDGE SHUSHAN |
| …………………………………………….... | : | |

### THE BP PARTIES' RESPONSES AND OBJECTIONS TO DEFENDANT ANADARKO PETROLEUM CORPORATION'S INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS

Defendants BP America Inc. ("BPA"), BP America Production Company ("BPAP"), and BP Exploration & Production Inc. ("BPXP") (collectively, "the BP Parties"), by their undersigned Counsel, and, pursuant to Rules 26, 33, and 34 of the Federal Rules of Civil Procedure, hereby submit the following responses and objections to Anadarko's Interrogatories and Requests for Production.

### SPECIFIC RESPONSES AND OBJECTIONS

The BP Parties respond as follows to Anadarko's specific interrogatories and requests for production, subject to and without waiving their general objections, each and every one of which are specifically incorporated into each individual response below.[1]

### INTERROGATORY NO. 1:

Please IDENTIFY each PERSON to whom YOUR EMPLOYEES communicated or sent COMMUNICATIONS or from whom they received COMMUNICATIONS, on or before April 20, 2010, that any of the alarm systems on the *DEEP WATER HORIZON* were inhibited or bypassed, IDENTIFY all other PERSONS involved in the COMMUNICATION and DESCRIBE in detail the substance of each such COMMUNICATION and any response to or result from such COMMUNICATION.

---

[1] The BP Parties' general objections are set forth at pages 48 - 59.

## RESPONSE TO INTERROGATORY NO. 1:

The BP Parties object to this interrogatory because it is overbroad and unduly burdensome to the extent it seeks every single communication that any of the alarm systems on the *Deepwater Horizon* were inhibited or bypassed without regard to the relevance of such communications to the claims or defenses of any party.  Further, the BP Parties object to this interrogatory because it is overbroad and unduly burdensome to the extent it seeks information about the alarm systems that is likely more readily available from other parties in the litigation, such as Transocean Deepwater, Inc., Transocean Holdings, LLC, and Transocean Offshore Deepwater Drilling, Inc. (collectively, "the Transocean Defendants"), who owned and operated the *Deepwater Horizon*.  The BP Parties also object because the terms "alarm systems," "inhibited," and "bypassed" are vague, ambiguous and undefined and could be read to call for irrelevant information unrelated to the Macondo Well or the Incident.

Subject to their specific and general objections, the BP Parties state that the report entitled "Follow Up Rig Audit, Marine Assurance Audit and Out of Service Period" ("BP September 2009 Audit Report") disclosed that the ESD fault and inhibit alarm conditions were indicated on the bridge fire and gas panel, and that control of alarms, defeats, and bypasses was not well managed.  Individuals who sent or received the September 2009 Audit Report on or before April 20, 2010, may have been aware of these findings.  In addition, the burden of deriving or ascertaining the identities of the individuals who sent or received the September 2009 Audit Report is substantially the same for Anadarko as it is for the BP Parties, and the BP Parties therefore refer Anadarko to their response to Interrogatory

No. 22 and to the September 2009 Audit Report produced in accordance with Federal Rule of Civil Procedure 33(d).

To the extent Anadarko's interrogatory seeks additional information, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**INTERROGATORY NO. 2:**

Please IDENTIFY each PERSON with whom YOUR EMPLOYEES communicated, on or before April 20, 2010, REGARDING the functionality of each system on the *DEEP WATER HORIZON*'S BOP and marine riser, including but not limited to the battery packs, solenoid valves and coils, yellow and blue control pods, shear rams, bore rams, test rams, choke/kill lines and valves, and annular preventers; IDENTIFY all other PERSONS involved in those COMMUNICATIONS; and DESCRIBE in detail the substance of each COMMUNICATION.

**RESPONSE TO INTERROGATORY NO. 2:**

The BP Parties object to this interrogatory on the grounds that it is overbroad and unduly burdensome because, among other things, it seeks identification of "each person" with whom  employees of the BP Parties communicated, and all other persons involved in such communications, "regarding the functionality of the BOP and marine riser" for the *Deepwater Horizon* and all "other [people] involved in [such] communications" without limitation as to when such communication occurred and whether such communication was relevant and reasonably calculated to the discovery of admissible evidence.  The BP Parties further object to this interrogatory as overbroad and unduly burdensome to the extent it requests that the BP Parties "describe in detail the substance of each communication."

Subject to their specific and general objections, and in accordance with Federal Rule of Civil Procedure 33(d) the BP Parties refer Anadarko to their responses to Interrogatory No. 31 and Requests for Production No. 131, in The BP Parties Responses and Objections to

Plaintiffs' Interrogatories, Requests for Production, and Requests for Admission, served on All Counsel on December 8, 2010, as the burden of deriving or ascertaining the answer to this interrogatory is substantially the same for Anadarko as it is for the BP Parties.

To the extent Anadarko's interrogatory seeks additional information, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**INTERROGATORY NO. 3:**

Excluding the MACONDO WELL, please IDENTIFY and DESCRIBE in detail (including, but not limited to, the name and location of the well, the date, and the IDENTITY of YOUR well site leader and well team leader for each well identified) any and all instances in YOUR drilling of DEEPWATER WELLS in the last 10 years in which YOU directed YOUR cement contractor to proceed with a cement job when Opticem or similar modeling showed the well would have a severe gas flow problem.

**RESPONSE TO INTERROGATORY NO. 3:**

The BP Parties object to this interrogatory on the grounds that (i) Anadarko's use of the phrases "deepwater wells," "similar modeling" and "severe gas flow problem" is vague, ambiguous, and undefined; and (ii) it is overbroad, unreasonable, and unduly burdensome.

Subject to their specific and general objections, the BP Parties will conduct a search of non-privileged documents for Halliburton Opticem reports for cement jobs on the production of wells in the Gulf of Mexico that show a calculation of the gas flow potential ("GFP") value that correlates to a "severe" rating on Halliburton's scale where that cement job was executed as described, and will produce responsive documents identified as a result of that search. Accordingly, the burden of deriving or ascertaining the answer to this interrogatory is substantially the same for Anadarko as it is for the BP Parties, and the BP Parties therefore refer Anadarko to these documents in accordance with Federal Rule of Civil Procedure 33(d).

4

To the extent Anadarko's interrogatory seeks additional information, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**INTERROGATORY NO. 4:**

Excluding the MACONDO WELL, please IDENTIFY and DESCRIBE in detail each instance in the last 10 years in which an Opticem or similar modeling report indicated that, with the number of centralizers YOU chose to use (and actually did use) in a well, there was a severe gas flow problem, including but not limited to, the name and location of the well, the date, the names of YOUR well site leader and well team leader for each well identified, the number of centralizers used and the gas flow potential indicated by modeling.

**RESPONSE TO INTERROGATORY NO. 4:**

The BP Parties object to this interrogatory on the grounds that (i) Anadarko's use of the phrases "similar modeling report" and "severe gas flow problem" is vague, ambiguous, and undefined; and (ii) it is overbroad, unreasonable, and unduly burdensome.

Subject to their specific and general objections, the BP Parties will conduct a search of non-privileged documents for Halliburton Opticem reports for cement jobs on the production interval of wells in the Gulf of Mexico that show a calculation of the gas flow potential ("GFP") value that correlates to a "severe" rating on Halliburton's scale where that cement job was executed as described, and will produce responsive documents identified as a result of that search.  Accordingly, the burden of deriving or ascertaining the answer to this interrogatory is substantially the same for Anadarko as it is for the BP Parties, and the BP Parties therefore refer Anadarko to these documents in accordance with Federal Rule of Civil Procedure 33(d).

To the extent Anadarko's interrogatory seeks additional information, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**INTERROGATORY NO. 5:**

Excluding the MACONDO WELL, please IDENTIFY and DESCRIBE in detail (including the name and location of the well, the date, and the IDENTITY of YOUR well site leader and well team leader for each well identified) any and all instances in YOUR drilling of DEEPWATER WELLS or use of MODUs in the last 10 years in which YOU had no onshore real-time monitoring process to assess what was happening in the well on a continuing basis.

**RESPONSE TO INTERROGATORY NO. 5:**

The BP Parties object on the grounds that this interrogatory is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.  The BP Parties further object to this interrogatory on the grounds that the term "assess" and the phrases "real-time monitoring process" and "on a continuing basis" are vague and ambiguous.

**INTERROGATORY NO. 6:**

Excluding the MACONDO WELL, please IDENTIFY and DESCRIBE in detail (including the name and location of the well, the date, and the IDENTITY of YOUR well site leader and well team leader) any and all instances in YOUR drilling of DEEPWATER WELLS or use of MODUs in the last 10 years in which YOU changed YOUR well site leader within one week of the commencement of temporary abandonment procedures.

**RESPONSE TO INTERROGATORY NO. 6:**

The BP Parties object on the grounds that this interrogatory is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**INTERROGATORY NO. 7:**

Excluding the MACONDO WELL, please IDENTIFY and DESCRIBE in detail (including the name and location of the well, the date, and the IDENTITY of YOUR well site leader and well team leader) any and all instances in YOUR drilling of DEEPWATER WELLS or use of MODUs in the last 10 years in which YOU failed to keep track of fluid losses or gains in the well and the riser (including via monitoring of pit levels or of fluids being pumped into the well and flowing out of the well).

**RESPONSE TO INTERROGATORY NO. 7:**

The BP Parties object on the grounds that this interrogatory is overbroad, unreasonable, unduly burdensome, not reasonably likely to lead to the discovery of admissible evidence, and seeks information not relevant to the claims or defenses of any party. The BP Parties further object to this request to the extent that it purports to mischaracterize the conduct of various activities on the well as being conducted primarily by BP or BP personnel, when in fact those activities are conducted by employees of the rig owner and/or other specialized third party personnel. The BP Parties also object that this interrogatory calls for information outside of BP's possession, custody, or control and/or requires BP to ascertain information that is equally available (or unavailable) to Anadarko because such information is in the hands of third parties. In addition, the BP Parties object to this interrogatory as argumentative to the extent that it assumes BP had a non-delegable responsibility to monitor at every moment the flow of fluids into and out of the well and/or assumes BP has not properly delegated such a responsibility, if any, and/or assumes that third parties, including the rig operator or persons providing mud logging services, did not properly assume the responsibility to monitor the inflow and outflow of fluids from the well.

Subject to their specific and general objections, the BP Parties will conduct a reasonable search of non-privileged documents related to the lack of monitoring fluid losses or gains in the well and the riser, and will produce responsive documents identified as a result of that search pursuant to Federal Rule of Civil Procedure 33 on the grounds that whether BP "failed to keep track of fluid losses or gains in the well" will be as easily ascertainable to the requesting party as the BP Parties.

To the extent Anadarko's interrogatory seeks additional information, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**INTERROGATORY NO. 8:**

Excluding the MACONDO WELL, please IDENTIFY and DESCRIBE in detail (including the name and location of the well, the date, and the IDENTITY of YOUR well site leader and well team leader) any and all instances in YOUR drilling of DEEPWATER WELLS or use of MODUs in the last 10 years in which YOU chose to use a long string in lieu of a liner in a deep high-pressure well being installed in formations exhibiting different pore pressures in the open-hole interval.

**RESPONSE TO INTERROGATORY NO. 8:**

The BP Parties object to identifying and describing in detail any and all instances of drilling deepwater wells or use of MODUs in the last 10 years in which BP chose to use a long string liner in a deep high-pressure well being installed in formations exhibiting different pore pressures in the open-hole interval without regard to the location of the well. The BP Parties object to this interrogatory as vague and ambiguous to the extent that it implies there is a choice to use a long string "in lieu" of a liner. The BP Parties further object to this interrogatory to the extent that "installed in formations exhibiting different pore pressures in the open-hole interval" is vague and ambiguous.

Subject to their specific and general objections, the BP Parties state that they are analyzing available information and will identify deepwater wells drilled in the Gulf of Mexico in the last five years where the production casing used in the well was a long string or production casing. In addition, the burden of deriving or ascertaining the answer to portions of this interrogatory is substantially the same for Anadarko as it is for the BP Parties as information related to well designs in the Gulf of Mexico is publicly available

8

through the BOEMRE; further the BP Parties refer Anadarko to documents previously produced at BP-HZN-BLY00000001 to BP-HZN-BLY00000372.

To the extent that Anadarko's interrogatory seeks additional information, the BP Parties object on the grounds that it is overbroad, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**INTERROGATORY NO. 9:**

Excluding the MACONDO WELL, please IDENTIFY and DESCRIBE in detail (including the name and location of the well, the date, and the IDENTITY of YOUR well site leader and well team leader) any and all instances in YOUR drilling of DEEPWATER WELLS or use of MODUs in the last 10 years in which YOU did not conduct a full bottoms-up circulation of drilling mud prior to cementing.

**RESPONSE TO INTERROGATORY NO. 9:**

The BP Parties object to this interrogatory on the grounds that (i) Anadarko's use of the phrases "deepwater wells" and "use of MODUs" is vague, ambiguous, and undefined; and (ii) it is overbroad, unreasonable, and unduly burdensome.

Subject to their specific and general objections, the BP Parties will conduct a search of non-privileged documents for post-job reports for cement jobs on the production interval of wells in the Gulf of Mexico since January 1, 2009 where a full bottoms-up circulation of drilling mud was not conducted before cementing, and will produce responsive documents identified as a result of that search.  Accordingly, the burden of deriving or ascertaining the answer to this interrogatory is substantially the same for Anadarko as it is for the BP Parties, and the BP Parties therefore refer Anadarko to these documents in accordance with Federal Rule of Civil Procedure 33(d).

To the extent Anadarko's interrogatory seeks additional information, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**INTERROGATORY NO. 10:**

Excluding the MACONDO WELL, please IDENTIFY and DESCRIBE in detail (including the name and location of the well, the date, and the IDENTITY of YOUR well site leader and well team leader) any and all instances in YOUR drilling of DEEPWATER WELLS or use of MODUs in the last 10 years in which YOU used a pressure greater than 2000 psi to establish sufficient circulation to convert the float collar in preparation for cementing.

**RESPONSE TO INTERROGATORY NO. 10:**

The BP Parties object on the grounds that (i) Anadarko's use of the phrases "deepwater wells," "use of MODUs" and "used a pressure greater than 2000 psi to establish sufficient circulation to convert the float collar" is vague, ambiguous, and undefined; and (ii) it is overbroad, unreasonable, and unduly burdensome.

Subject to their specific and general objections, the BP Parties will conduct a search of non-privileged documents for post-job reports for cement jobs on the production interval of wells in the Gulf of Mexico since January 1, 2009 where the float equipment was converted at a pressure greater than 2000 psi, and will produce responsive documents identified as a result of that search. Accordingly, the burden of deriving or ascertaining the answer to this interrogatory is substantially the same for Anadarko as it is for the BP Parties, and the BP Parties therefore refer Anadarko to these documents in accordance with Federal Rule of Civil Procedure 33(d).

To the extent Anadarko's interrogatory seeks additional information, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**INTERROGATORY NO. 11:**

Excluding the MACONDO WELL, please IDENTIFY and DESCRIBE in detail (including the name and location of the well, the date, and the IDENTITY of YOUR well site leader and well team leader) any and all instances in YOUR drilling of DEEPWATER WELLS or use of MODUs in the last 10 years in which YOU had to attempt more than five (5) times to convert the float collar before it was declared converted prior to cementing.

**RESPONSE TO INTERROGATORY NO. 11:**

The BP Parties object on the grounds that (i) Anadarko's use of the phrases "deepwater wells," "use of MODUs" and "attempt more than five (5) times to convert the float collar before it was declared converted" is vague, ambiguous, and undefined; and (ii) it is overbroad, unreasonable, and unduly burdensome.

Subject to their specific and general objections, the BP Parties will conduct a search of non-privileged documents for post-job reports for cement jobs on the production interval of wells in the Gulf of Mexico since January 1, 2009 where the pressure was increased more than five times in an attempt to convert the float collar, and will produce responsive documents identified as a result of that search.  Accordingly, the burden of deriving or ascertaining the answer to this interrogatory is substantially the same for Anadarko as it is for the BP Parties, and the BP Parties therefore refer Anadarko to these documents in accordance with Federal Rule of Civil Procedure 33(d).

To the extent Anadarko's interrogatory seeks additional information, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**INTERROGATORY NO. 12:**

Excluding the MACONDO WELL, please IDENTIFY and DESCRIBE in detail any and all instances in YOUR drilling of DEEPWATER WELLS or use of MODUs in the last 10 years in which YOU used nitrogen foamed cement, including the name and location of the well, the date, the IDENTITY of YOUR well site leader and well team leader for each

11

well identified, and the length of time YOU permitted the cement to set prior to a negative pressure test.

## RESPONSE TO INTERROGATORY NO. 12:

The BP Parties object to this interrogatory on the grounds that it is overbroad, unreasonable, and unduly burdensome.

Subject to their specific and general objections, the BP Parties will conduct a search of non-privileged documents for post-job reports for cement jobs on the production interval of wells in the Gulf of Mexico since January 1, 2009 where nitrogen foamed cement was used, and will produce responsive documents identified as a result of that search.  Accordingly, the burden of deriving or ascertaining the answer to this interrogatory is substantially the same for Anadarko as it is for the BP Parties, and the BP Parties therefore refer Anadarko to these documents in accordance with Federal Rule of Civil Procedure 33(d).

To the extent Anadarko's interrogatory seeks additional information, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

## INTERROGATORY NO. 13:

Excluding the MACONDO WELL, please IDENTIFY and DESCRIBE in detail (including the name and location of the well, the date, and the IDENTITY of YOUR well site leader and well team leader for each well identified) any and all instances of drilling of DEEPWATER WELLS or use of MODUs in the last 10 years in which YOU performed a temporary abandonment procedure that differed from the one YOU actually submitted to, and that was approved by, the US Minerals Management Service (MMS) or Bureau of Ocean Energy Management (BOEM).

## RESPONSE TO INTERROGATORY NO. 13:

The BP Parties object on the grounds that this interrogatory is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

12

**INTERROGATORY NO. 14:**

Please IDENTIFY and DESCRIBE in detail every instance in which a temporary abandonment procedure substantially like that performed on the MACONDO WELL (including displacement to more than 2000' below mud level before negative testing) on or about April 19-20, 2010 was performed by YOU on any other DEEPWATER WELL, including in YOUR response the name and location of the well, the date(s) the temporary abandonment procedure was performed on such well, and the names of the well site leader and well team leader for each such well identified.

**RESPONSE TO INTERROGATORY NO. 14:**

The BP Parties object to this request as vague and ambiguous in seeking procedures "substantially like" that performed at the Macondo Well.

Subject to their specific and general objections, the BP Parties will produce temporary abandonment procedures which BP has previously produced to the National Commission on the Deepwater Horizon Oil Spill and Offshore Drilling, namely those temporary abandonment procedures filed with the Bureau of Ocean Energy Management, Regulation and Enforcement (BOEM) from 2005 through 2010 for deepwater wells in the Gulf of Mexico (BP-HZN-OSC-00005668 - BP-HZN-OSC-00006249).

To the extent Anadarko's interrogatory seeks additional information, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**INTERROGATORY NO. 15:**

Please STATE whether, in YOUR view, the blind shear ram of the *DEEP WATER HORIZON* BLOWOUT PREVENTER failed to operate properly during the INCIDENT and DESCRIBE in detail the basis of YOUR answer.

**RESPONSE TO INTERROGATORY NO. 15:**

The BP Parties object to this interrogatory on the grounds that Anadarko's use of the phrase "failed to operate properly" in this interrogatory is vague, ambiguous, and undefined,

13

and could call for more than one interpretation.  Furthermore, the BP Parties object to this interrogatory as premature to the extent it seeks opinions and information that are the subject of expert testimony and to the extent it seeks opinions and information regarding the *Deepwater Horizon* before the inspection of the blowout preventer by the Joint Investigation Team is complete and while inspection and analysis is continuing.

Subject to their specific and general objections, the BP Parties state as follows: Based on presently available information, it is understood that the blind shear ram of the *Deepwater Horizon* blowout preventer did not seal the Macondo well on or after April 20, 2010.  At this time, given the ongoing BOP Forensic Inspection and the unavailability of the BOP to the BP Parties for inspection outside of the BOP Forensic Inspection process, it would be premature for the BP Parties to express a view regarding whether and to what extent the blind shear ram operated properly.  The BP Parties reserve the right under Fed. R. Civ. P. 26(e) to supplement, amend, or change this response after sufficient time for discovery of additional bases or supporting facts.

To the extent Anadarko's interrogatory seeks additional information, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

## INTERROGATORY NO. 16:

Please STATE the density of the base oil spacer fluid used during the MACONDO WELL cement job performed on April 19 - 20, 2010; whether it was the correct density to prevent inversion, and whether contamination occurred, and DESCRIBE in detail the basis of YOUR answer.

## RESPONSE TO INTERROGATORY NO. 16:

The BP Parties object to this interrogatory on the grounds that it is comprised of multiple discrete subparts that count as individual interrogatories under Fed. R. Civ. P. 33.  The BP

14

Parties object to this interrogatory because Anadarko's use of the phrases "correct density to prevent inversion" and "whether contamination occurred" is vague, ambiguous, and undefined. The BP Parties further object that this information is in the possession, custody and control of Halliburton.

Subject to their specific and general objections, the BP Parties state that in accordance with its April 18, 2010 job recommendation, Halliburton pumped 6.7 pound per gallon base oil as a spacer. The BP Parties will supplement their response to this interrogatory after they have an opportunity to seek discovery from Halliburton on the modeling that it performed on use of 6.7 pound per gallon base oil as a spacer.

To the extent Anadarko's interrogatory seeks additional information, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**INTERROGATORY NO. 17:**

Please DESCRIBE in detail why YOUR EMPLOYEES decided not to spot heavy mud (16.5 ppg or higher) in the rat hole prior to the MACONDO WELL cement job performed on April 19-20, 2010, the data upon which they based that decision, and any other basis for their decision, and IDENTIFY each PERSON who made or was involved in that decision.

**RESPONSE TO INTERROGATORY NO. 17:**

The BP Parties object to this interrogatory because Anadarko's use of the phrase "spot heavy mud" is vague, ambiguous, and undefined.

Subject to their specific and general objections, on information and belief, the BP Parties state that the BP wells team decided not to spot heavy mud (16.5 ppg or higher) based on, among other things, the measured pressure profile of the Macondo well and the difficulty of placing a small pill of heavy mud in the rathole. The BP Parties state that they have produced the well

15

data at Bates Nos. BP-HZN-MBI00021177; BP-HZN-MBI00021179; BP-HZN-MBI00019413; BP-HZN-MBI00019414; BP-HZN-MBI0019415; BP-HZN-MBI00139647 - BP-HZN-MBI00139651; BP-HZN-MBI00193578 - BP-HZN-MBI00193587; BP-HZN-MBI00190522 - 00192367; BP-HZN-MBI00193200 - 00193440; BP-HZN-2179MDL00001784 - BP-HZN-2179MDL00048887; BP-HZN-2179MDL00057851 - BP-HZN-2179MDL00059941; and BP-HZN-2179MDL00060032 - BPHZN-2179MDL00060047; BP-HZN-BLY00000202; BP-HZN-BLY00000203.  Accordingly, the burden of deriving or ascertaining the answer to this interrogatory is substantially the same for Anadarko as it is for the BP Parties, and the BP Parties therefore refer Anadarko to these documents in accordance with Federal Rule of Civil Procedure 33(d).

To the extent Anadarko's interrogatory seeks additional information, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**INTERROGATORY NO. 18:**

Excluding the MACONDO WELL, please IDENTIFY and DESCRIBE in detail (including the name and location of the well, the date, and the IDENTITY of YOUR well site leader and well team leader for each well identified) any and all instances in YOUR drilling of DEEPWATER WELLS or use of MODUs in the last 10 years in which YOU have not spotted heavy mud (16.5 ppg or higher) in the rat hole prior to performing a cement job on a final casing string.

**RESPONSE TO INTERROGATORY NO. 18:**

The BP Parties object on the grounds that (i) Anadarko's use of the phrases "spotted heavy mud," "deepwater well" and "use of MODUs" is vague, ambiguous, and undefined; and (ii) it is overbroad, unreasonable, and unduly burdensome.

Subject to their specific and general objections, the BP Parties will conduct a search of non-privileged documents for drilling programs for production intervals of wells in the Gulf of

Mexico since January 1, 2009, where heavy mud (16.5 ppg or higher) was not placed in the rat hole before performing a cement job, and will produce responsive documents identified as a result of that search.  Accordingly, the burden of deriving or ascertaining the answer to this interrogatory is substantially the same for Anadarko as it is for the BP Parties, and the BP Parties therefore refer Anadarko to these documents in accordance with Federal Rule of Civil Procedure 33(d).

To the extent Anadarko's interrogatory seeks additional information, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**INTERROGATORY NO. 19:**

Please STATE whether the float collar was converted prior to the start of the MACONDO WELL cement job that was performed on April 19 - 20, 2010 and DESCRIBE in detail the reasons and basis for whatever action was taken or not taken in this respect.

**RESPONSE TO INTERROGATORY NO. 19:**

The BP Parties object to this interrogatory on the grounds that it is comprised of multiple discrete subparts that count as individual interrogatories under Fed. R. Civ. P. 33.  The BP Parties object on the grounds that (i) Anadarko's use of the phrase "the reasons and basis for whatever action was taken or not taken in this respect" is vague, ambiguous, and undefined; and (ii) it is overbroad, unreasonable, and unduly burdensome.

Subject to their specific and general objections, the BP Parties state that they have produced documents at Bates Nos. BP-HZN-BLY00000001 - BP-HZN-BLY00000760; BP-HZN-2179MDL00321876 describing the actions taken and the conversion of the float collar.  Accordingly, the burden of deriving or ascertaining the answer to this interrogatory is

substantially the same for Anadarko as it is for the BP Parties, and the BP Parties therefore refer Anadarko to these documents in accordance with Federal Rule of Civil Procedure 33(d).

To the extent Anadarko's interrogatory seeks additional information, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**INTERROGATORY NO. 20:**

Please STATE whether, following the ninth attempt to convert the float collar, the circulating pressure of the MACONDO WELL was lower than expected, including in YOUR response the expected range of circulating pressure after conversion of the float collar and the actual circulating pressure that was obtained.

**RESPONSE TO INTERROGATORY NO. 20:**

The BP Parties object to this interrogatory on the grounds that it is comprised of multiple discrete subparts that count as individual interrogatories under Fed. R. Civ. P. 33. The BP Parties object to this interrogatory on the grounds that (i) Anadarko's' use of the phrase "expected range of circulating pressure" is vague, ambiguous, and undefined; and (ii) it is overbroad, unreasonable, and unduly burdensome.

Subject to their specific and general objections, the BP Parties state that following the ninth attempt to convert the float equipment on April 19, 2010, at 16:20, the circulation pressure of 340 psi did not match modeling results of 570 psi at a pump rate of four barrels per minute.

To the extent Anadarko's interrogatory seeks additional information, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**INTERROGATORY NO. 21:**

Please STATE whether the annular preventer did or did not seal around the drill pipe, and whether the annular preventer allowed spacer to leak down below the annular preventer

18

during the first negative pressure test of April 20, 2010, and DESCRIBE in detail the basis of YOUR answer.

**RESPONSE TO INTERROGATORY NO. 21:**

The BP Parties object to this interrogatory as calling for a conclusive answer to a request for which no definitive answer can be known.  The BP Parties further object to the extent that this interrogatory calls for information likely in the possession of other parties, *e.g.*, the Transocean personnel that worked to set up and monitor the negative pressure test on April 20, 2010.

Subject to their specific and general objections, the BP Parties state as follows: In preparation for the negative test, mud in the boost line, choke line, kill line, drill pipe and upper part of the production casing was displaced to seawater.  To provide separation between the mud and the seawater in the casing, a spacer was pumped down the drill pipe ahead of the seawater.  The annular preventer was then closed to isolate the hydrostatic head of the fluids in the riser from the well.  Based on real-time data and pump volumes, it is possible that the annular preventer may not have sealed around the drill pipe, and may have resulted in heavy spacer leaking down past the annular preventer.

To the extent Anadarko's interrogatory seeks additional information, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**INTERROGATORY NO. 22:**

IDENTIFY which of YOUR EMPLOYEES communicated or transmitted your audit report to TRANSOCEAN, on what date, and DESCRIBE in detail what TRANSOCEAN did in response to that report, including what maintenance it performed, and any follow up YOU requested.

**<u>RESPONSE TO INTERROGATORY NO. 22</u>:**

The BP Parties object to this interrogatory because the terms "your audit report" and "follow up" as used in this interrogatory are vague, ambiguous and undefined because, among other things, the terms are not limited to any particular audits or any subject matter. The BP Parties also object to this interrogatory as overbroad and unduly burdensome to the extent it seeks information beyond the BP Parties' control or knowledge and that is more readily available from other parties to this litigation, including information relating to actions taken by employees of other entities including the Transocean Defendants.

Subject to their specific and general objections, the BP Parties state that the identities of the BP employees who communicated or transmitted the BP September 2009 Audit Report to Transocean, the date on which such communication or transmittal occurred, and the follow up requested by BP on the audit findings are recorded in electronic communications.  Detailed information about the actions taken by Transocean employees in response to the report is likely more readily available from the Transocean Defendants. Nonetheless, to the extent this information is recorded in electronic communications, the BP Parties have produced or will produce such communications in their possession.  In addition, the burden of deriving or ascertaining the answer to this interrogatory is substantially the same for Anadarko as it is for the BP Parties, and the BP Parties therefore refer Anadarko to the following documents in accordance with Federal Rule of Civil Procedure 33(d):

BP-HZN-2179MDL00095246-BP-HZN-2179MDL00095247

BP-HZN-2179MDL00095248-BP-HZN-2179MDL00095307

BP-HZN-2179MDL00095308-BP-HZN-2179MDL00095366

BP-HZN-2179MDL00095367-BP-HZN-2179MDL00095425

BP-HZN-2179MDL00340713

BP-HZN-2179MDL00340714

BP-HZN-2179MDL00340255

BP-HZN-2179MDL00340256

BP-HZN-2179MDL00349001

BP-HZN-2179MDL00349002

BP-HZN-2179MDL00357339

BP-HZN-2179MDL00357340

BP-HZN-2179MDL00028728

BP-HZN-2179MDL00028729

BP-HZN-2179MDL00028730

BP-HZN-2179MDL00028731

BP-HZN-2179MDL00096163

BP-HZN-2179MDL00096164

BP-HZN-2179MDL00096165

BP-HZN-2179MDL00096235

BP-HZN-2179MDL00096236

BP-HZN-2179MDL00096237

BP-HZN-2179MDL00033637

BP-HZN-2179MDL00033638

BP-HZN-2179MDL00372058

BP-HZN-2179MDL00372059-BP-HZN-2179MDL00372060.

The BP Parties further state that BP's efforts to verify Transocean's progress on closing out the recommendations from BP's September 2009 Audit include, but are not limited to, the following:

- Angel Rodriguez, a Marine Advisor with BP's Gulf of Mexico Marine Group, followed-up with Transocean to verify Transocean's progress on closing out the marine findings from the September 2009 Audit by: (i) visiting the *Deepwater Horizon* in October 2009 and March 2010; (ii) attending numerous daily morning meetings with Transocean's Rig Manager Paul Johnson and BP's Wells Team Leader Alexander John Guide to discuss the audit findings; and (iii) contacting the *Deepwater Horizon*'s Captain on a bi-weekly basis to get an update on Transocean's progress towards closing out the audit findings.

- In December 2009, BP's Marine Advisor Angel Rodriguez, BP's Wells Team Leader Alexander John Guide, and BP's Drilling Engineer Brett Cocales met with Transocean's Rig Manager Paul Johnson to further discuss Transocean's progress on closing out audit items.

- BP's Wells Manager Alexander John Guide spoke with Transocean's Rig Manager Paul Johnson approximately once every week to ten days about the progress Transocean was making on the audit findings.

- BP's Wells Manager Alexander John Guide visited the *Deepwater Horizon* once a month with Transocean's Rig Manager Paul Johnson to assess Transocean's progress with closeout of the September 2009 Audit recommendations.

To the extent Anadarko's interrogatory seeks additional information, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**INTERROGATORY NO. 23:**

Please DESCRIBE all systems, procedures, or protocols in place so that BP would be notified or otherwise made aware of any maintenance on, modifications to, or malfunctions with any part of the *DEEP WATER HORIZON* or the BOP.

**RESPONSE TO INTERROGATORY NO. 23:**

The BP Parties object to this interrogatory because it is overbroad and unduly burdensome to the extent it seeks a description of all systems, procedures, or protocols at any time without regard to whether information about such systems, procedures, or protocols is reasonable calculated to lead to the discovery of admissible evidence.  The BP Parties also object to this interrogatory as overbroad and unduly burdensome to the extent it seeks information more readily available from other parties in this litigation, such as Transocean, who owned, operated and performed most maintenance on the *Deepwater Horizon* and its blowout preventer.  Further, the BP Parties object to this interrogatory because the terms "systems," "procedures," or "protocols" are vague, ambiguous, and undefined and could be read to call for irrelevant information unrelated to the Macondo Well or the Incident.

**INTERROGATORY NO. 24:**

Please DESCRIBE all information and instructions provided to Mr. Kaluza regarding the role, purpose of, scope, and nature of his assignment on the *DEEP WATER HORIZON*, who provided such information or instructions, and when such information or instructions were provided.

**RESPONSE TO INTERROGATORY NO. 24:**

The BP Parties object to this interrogatory on the grounds that it is vague, ambiguous, and overbroad.

Subject to and without waiving their specific and general objections, the BP Parties state that based on a review of documents, Mr. Kaluza received information and instructions regarding the role, purpose, scope, and nature of his assignment on the *Deepwater Horizon* through emails from, among others, Alexander John Guide (including BP-HZN-MBI00171854 and BP-HZN-2179MDL00317359), Don Vidrine (including BP-HZN-MBI00255306-7, BP-HZN-MBI00255314-15, BP-HZN-2179MDL00048841, BP-HZN-MBI00255316, BP-HZN-MBI00255327 and BP-HZN-MBI00089411), Ronnie Sepulvado (including BP-HZN-MBI00199336, BP-HZN-MBI00088756, BP-HZN-MBI00127163, BP-HZN-MBI00171864 and BP-HZN-MBI00171869) and Brian Morel (including BP-HZN-MBI00255049, BP-HZN-MBI00171861, BP-HZN-MBI00088857, BP-HZN-MBI00089416 and BP-HZN-MBI00128690).  He also received information regarding the state of the rig and progress on the well from morning meetings with rig personnel.

To the extent Anadarko's interrogatory seeks additional information, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**INTERROGATORY NO. 25:**

Please IDENTIFY any internal reorganizations that occurred within BP in 2009 or 2010 that involved personnel responsible for any activities RELATING TO the MACONDO WELL or the *DEEP WATER HORIZON*. For each reorganization, please IDENTIFY the reason for the reorganization and whose positions, titles, or job responsibilities were changed and how they were changed, including any changes in the supervisor or person to whom the individual reported.

**RESPONSE TO INTERROGATORY NO. 25:**

Subject to their specific and general objections, the BP Parties will conduct a reasonable search of non-privileged documents for: 1) organizational charts that describe the structure of the engineering and operations personnel assigned to the Drilling and Completions (D&C) function in the Gulf of Mexico (GOM) Strategic Performance Unit (SPU) in 2009; 2) organizational charts that describe the structure of the engineering and operations personnel assigned to the D&C function in the GOM SPU as of April 2010; 3) the November 2009 GOM D&C Operating Plan and Local OMS manual, which includes a RACI chart describing the roles and responsibilities of GOM D&C personnel; and 4) the GOM Exploration and Appraisal Communication Plan dated September 2009 (Rev. 3), which addresses project organization and accountability for the Macondo Well, and will produce responsive documents identified as a result of that search.

To the extent Anadarko's interrogatory seeks additional information, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

## REQUEST FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1:**

With regard to activities involving the *DEEPWATER HORIZON* and the MACONDO WELL, please produce all DOCUMENTS and COMMUNICATIONS REGARDING, referencing or RELATING TO all participation, contribution, comment, input, planning, evaluation and roles YOU played in the design and utilization of approximately 400 barrels of lost circulation material spacer fluid "pills" as spacer during the MACONDO WELL activities of April 19 - 20, 2010.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

The BP Parties object to this request on the grounds that it seeks documents likely more readily available from other parties in the litigation, such as M-I Swaco or the

Transocean Defendants, and it purports to call for information beyond the BP Parties' control or knowledge.  The BP Parties object to this request that it is overbroad and unduly burdensome to the extent that it seeks the production of "all" documents and communications when a subset would suffice.  The BP Parties object to this request to the extent that "lost circulation material spacer fluid 'pills' as spacer" is vague and ambiguous.

Subject to their specific and general objections, the BP Parties will conduct a reasonable search of non-privileged documents regarding, referencing or relating to the approximately 400 barrels of lost circulation material spacer fluid pills as spacer during the Macondo Well activities of April 19-20, 2010 and will produce responsive documents identified as a result of that search, including documents already produced in response to Request for Production Nos. 65, 73, 122, 143, and 201 in The BP Parties' Responses and Objections to Plaintiffs' Interrogatories, Requests for Production, and Requests for Admission, served on All Counsel on December 8, 2010.

To the extent Anadarko's request seeks additional documents, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome and seeks information not relevant to the claims or defenses of any party.

**REQUEST FOR PRODUCTION NO. 2:**

Please produce any DOCUMENTS RELATING TO the *DEEPWATER HORIZON* or the MACONDO WELL which were considered by YOU for transmission to but were not in fact sent to the MMS or another GOVERNMENT agency between September 2009 and April 20, 2010.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

The BP Parties object to this request to the extent that it purports to call for the production of documents subject to attorney-client privilege.  The BP Parties further object to this request as vague as to the meaning of "considered by you for transmission" and

burdensome as the documents sought by way of this request would not be kept in the way described and are likely difficult to identify.

Subject to their specific and general objections, the BP Parties will conduct a reasonable search of non-privileged documents for draft MMS submissions that were not ultimately submitted to the MMS, and will produce responsive documents identified as a result of that search.

To the extent Anadarko's request seeks additional documents, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**REQUEST FOR PRODUCTION NO. 3:**

Please produce any test conducted on the casing for the MACONDO WELL that was not sent to the MMS or another GOVERNMENT agency.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

The BP Parties object to this request on the grounds that it is overbroad and unduly burdensome to the extent it seeks documents related to "any test" conducted on the casing for the Macondo Well that was not sent to the MMS or any other government agent.

Subject to their specific and general objections, the BP Parties will conduct a reasonable search of non-privileged documents for any test conducted on the casing for the Macondo Well that was not sent to the MMS or any other government agency, and will produce responsive documents identified as a result of that search, if any.

To the extent Anadarko's request seeks additional documents, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**REQUEST FOR PRODUCTION NO. 4:**

Please produce Mr. Robert Kaluza's telephone records for April 20 and 21, 2010.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

The BP Parties object to this request to the extent it calls for the BP Parties to produce documents outside of its possession, custody, or control. The BP Parties object to this request as ambiguous as to "Mr. Robert Kaluza's telephone records."

Subject to their specific and general objections, the BP Parties will conduct a search of non-privileged documents for records of Mr. Kaluza's telephone calls made to or from the BP telephone lines aboard the *Deepwater Horizon*, and will produce responsive documents identified as a result of that search.

To the extent Anadarko's request seeks additional documents, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**REQUEST FOR PRODUCTION NO. 5:**

Please produce Mr. Donald Vidrine's telephone records for April 20 and 21, 2010.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

The BP Parties object to this request to the extent it calls for the BP Parties to produce documents outside of its possession, custody, or control. The BP Parties object to this request as ambiguous as to "Mr. Donald Vidrine's telephone records."

Subject to their specific and general objections, the BP Parties will conduct a search of non-privileged documents for records of Mr. Vidrine's telephone calls made to or from the BP telephone lines aboard the *Deepwater Horizon*, and will produce responsive documents identified as a result of that search.

To the extent Anadarko's request seeks additional documents, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

## REQUEST FOR PRODUCTION NO. 6:

Please produce records of all telephone calls YOU received from anyone on board the *DEEP WATER HORIZON* on April 20, 2010.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 6:

The BP Parties object to this request as overbroad and unduly burdensome to the extent it seeks documents beyond the possession or control of the BP Parties, and to the extent it seeks documents likely more readily available from other entities.

Subject to their specific and general objections, the BP Parties refer Plaintiffs to: (1) a log of all calls made to or from the BP-managed telephone lines on the *Deepwater Horizon* on April 20 and 21, 2010, previously produced at BP-HZN-MBI00170830;[2] and (2) a log of all the calls to or from the BP Satellite Handheld telephones on the *Deepwater Horizon* on April 20 and 21, 2010, previously produced at BP-HZN-MBI00143375.  The BP Parties do not have access to records for telephone lines that are not managed by the BP Parties.

To the extent Anadarko's request seeks additional documents, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

---

[2] The BP Parties understand that the time stamps on the phone log spreadsheet are represented as GMT minus 1 hour.  Because Daylight Saving Time was in effect on this date/time in United States, subtracting four hours from the time stamps provides the equivalent Central Time.  Due to a small variance in clock settings on the telecommunication provider's equipment, we understand that the actual conversion may be minus 3 hours, 55 minutes to align with BP's system clocks, but the BP Parties makes no representation as to the exact accuracy of the time entries.

**REQUEST FOR PRODUCTION NO. 7:**

Please produce all DOCUMENTS YOU prepared following the MACONDO WELL control event of March 8, 2010 to acknowledge or address the response time recorded during that event.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

The BP Parties object to this request on the grounds that it is overbroad and unduly burdensome to the extent it seeks "all" documents prepared following the Macondo well control event of March 8, 2010.

Subject to their specific and general objections, the BP Parties will conduct a reasonable search of non-privileged documents for any documents prepared relating to the response timing following the Macondo well control event of March 8, 2010, and will produce responsive documents identified as a result of that search, including documents already produced at BP-HZN-BLY00000001 to BP-HZN-BLY00000192, BP-HZN-2179MDL00015694 to BP-HZN-2179MDL00015698 and documents produced in response to Request for Production Nos. 142 and 231 in The BP Parties' Responses and Objections to Plaintiffs' Interrogatories, Requests for Production, and Requests for Admission, served on All Counsel on December 8, 2010.

To the extent Anadarko's request seeks additional documents, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**REQUEST FOR PRODUCTION NO. 8:**

Please produce all DOCUMENTS reviewed by YOU in connection with preparation of YOUR responses to each of the Interrogatories set forth above.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 8:

The BP parties object to this request on the grounds that it is unreasonable, vague, overbroad, and unduly burdensome in that it seeks the production of every document identified in connection with the BP Parties extensive efforts to preserve, collect, and review information regardless of the content of such documents, and that it seeks documents that are either being produced in response to other specific requests or documents that are necessarily irrelevant, not responsive to any specific request, and/or for which the BP Parties have stated objections to producing in either their general objections or in response to specific requests.

## REQUEST FOR PRODUCTION NO. 9:

Please produce any and all diagrams or depictions of the well and/or drilling process of the well that YOU used during the Marine Board of Investigation hearings.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 9:

Subject to their specific and general objections, the BP Parties will conduct a reasonable search of non-privileged documents for diagrams or depictions of the well and/or drilling process of the well that BP used during the Marine Board of Investigation hearings, and will produce responsive documents identified as a result of that search.

To the extent Anadarko's request seeks additional documents, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

## REQUEST FOR PRODUCTION NO. 10:

Please produce a diagram of the mud pit layout on the *DEEP WATER HORIZON*, indicating the location of the active and reserve pits.

31

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

The BP Parties object to this request to the extent that it is vague and ambiguous for the relevant time period as the "location of active and reserve pits" is controlled by rig personnel and fluctuates at various times.  The BP Parties object to this request on the grounds that it seeks documents likely more readily available from other parties in the litigation, such as the Transocean Defendants or M-I Swaco, and it purports to call for information beyond the BP Parties' control or knowledge.

**REQUEST FOR PRODUCTION NO. 11:**

Please produce YOUR policies and procedures REGARDING use of the diverter system on the *DEEP WATER HORIZON* and on YOUR other owned, contracted, or leased deepwater drilling rigs.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

The BP Parties object to this request on the grounds that it seeks documents likely more readily available from other parties in this litigation, such as the Transocean Defendants as the party whose Well Control Handbook governed the well control actions on the *Deepwater Horizon* and whose personnel was primarily responsible for monitoring and undertaking well control actions on board the *Deepwater Horizon*.

**REQUEST FOR PRODUCTION NO. 12:**

Please produce YOUR policies and procedures for the use of the annular preventer during well control events on the *DEEP WATER HORIZON* and on YOUR other owned, contracted, or leased deepwater drilling rigs.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

The BP Parties object to this request on the grounds that Anadarko's use of the words "policies," "procedures," and "well control events" in this request is vague, ambiguous, and undefined, and could call for more than one interpretation.  The BP Parties further object to

this request as overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks production of policies and procedures for other "deepwater drilling rigs" that the BP Parties own, contract or lease.  The BP Parties further object to this interrogatory to the extent it implies that the policies and procedures of the BP Parties govern the use of the annular preventer during a well control event for the *Deepwater Horizon* and all other deepwater drilling rigs that they contract or lease.

Subject to their specific and general objections, the BP Parties will conduct a reasonable search of non-privileged documents for policies and procedures relating to the use of the annular preventer during well control events generally, and specifically on the *Deepwater Horizon,* and will produce responsive documents identified as a result of that search.

To the extent Anadarko's request seeks additional documents, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**REQUEST FOR PRODUCTION NO. 13:**

Please produce a copy of the flow diagram of the *DEEP WATER HORIZON* surface mud system.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

The BP Parties object to this request on the grounds that it seeks documents likely more readily available from other parties in the litigation, such as the Transocean Defendants or M-I Swaco, and it purports to call for information beyond the BP Parties' control or knowledge.  The BP Parties object to this request to the extent that it is vague and ambiguous for the relevant time period as the flow of the surface mud system is controlled by rig personnel and fluctuates at various times.

33

**REQUEST FOR PRODUCTION NO. 14:**

Please produce all post-INCIDENT pictures, video recordings, X-rays, audio recordings, samples, measurements and/or testing results of or for the *DEEP WATER HORIZON* rig or any of its equipment or components, including but not limited to the riser, drill pipe and BOP used in connection with the MACONDO WELL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

The BP Parties object that the definition of *Deepwater Horizon* is vague, ambiguous, unreasonable and unduly burdensome, in part because it includes "any vessel, vehicle, aircraft, or other equipment used in connection with the process of drilling, developing, exploring and/or producing oil and gas resources."  The BP Parties further object that the request for *all* "pictures, video recordings, x-rays, audio recordings, samples, measurements, and/or testing results *of or for*" is overbroad and unduly burdensome because the use of "all" in conjunction with "of or for" makes the category of items requested unbounded.  The BP Parties have already substantially produced the requested material to Anadarko on November 15, 2010 in the BP Parties' responses to Request for Production No. 1 and Request for Production No. 11 in the Plaintiffs' Omnibus Discovery Requests on All Defendants, along with the documents and/or ESI produced by the BP Parties in conjunction therewith, and the BP Parties' production of documents and/or ESI on December 23, 2010 in Volume 4 ("BPMDL2179VOL000004").  Anadarko's request fails to define clearly what additional or unique pictures, video recordings, x-rays, audio recordings, samples, measurements, and/or testing results they seek beyond those already produced.

To the extent Anadarko's request seeks additional documents or other materials beyond what the BP Parties have already produced, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party, nor likely to lead to the discovery of relevant

34

information.  For example, with respect to "all pictures," this request is so broad that the BP Parties first would have to search the files of several thousand custodians identified thus far to identify if any pictures and other electronic picture files exist and then follow-up with these custodians to determine whether any of the pictures initially located are potentially responsive to this request.  Similarly, with respect to "all video recordings," the BP Parties to date have collected approximately 4,300 pieces of remotely operated vehicle (ROV) media representing 112 terabytes of data.  This request is so broad that the BP Parties cannot determine which, if any, of these pieces of media are potentially responsive to this request without a detailed review of each item to determine what it contains.  Such review without further detailed guidance from Anadarko regarding what should be produced is unduly burdensome.

The BP Parties further object that this request is unreasonable and could subject the BP Parties to inconsistent legal obligations to the extent it can be read to require the production of equipment or other items that were produced to the U.S. government pursuant to one or more subpoenas, this Court's Orders, or other obligations.  The BP Parties also object that this request could be interpreted to require the production of equipment or other items that are subject to this Court's Orders authorizing BP to reuse, recycle, or otherwise dispose of such equipment and other items.  The BP Parties further object that this request could be interpreted to require the production of samples of drilling mud, cement resin (powdered cement), oil, and other items collected post-Incident that exist in limited quantities and are subject to this Court's preservation orders and other preservation requirements, including letters from government entities asking one or more BP Parties to confirm that they have preserved and will continue to preserve tangible objects relevant to

the Incident. BP is willing to make samples available for inspection and testing by parties to this litigation, but only after such parties agree to appropriate test protocols and/or data sharing arrangements developed through multi-party discussions or other means.  The BP Parties also object that this request seeks information or documents protected by the attorney-client privilege or the work product doctrine and therefore protected from discovery.

Subject to their specific and general objections, the BP Parties will conduct a reasonable search for non-privileged results and supporting data of any post-Incident physical testing performed by the BP Parties on the *Deepwater Horizon* rig, its riser, its drill pipe, and its BOP, and will produce responsive documents identified as a result of that search.

To the extent Anadarko's request seeks additional documents, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

## REQUEST FOR PRODUCTION NO. 15:

Please produce all post-INCIDENT pictures, video recordings, X-Rays, audio recordings, samples, measurements and/or testing results of or for the MACONDO WELL or any equipment or component used in connection with the MACONDO WELL, including but not limited to the casing and casing hanger seal assembly.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 15:

The BP Parties object that the request for *all* "pictures, video recordings, x-rays, audio recordings, samples, measurements, and/or testing results *of or for*" is overbroad and unduly burdensome because the use of "all" in conjunction with "of or for" makes the category of items requested unbounded.  The BP Parties have already substantially produced the requested material to Anadarko on November 15, 2010 in the BP Parties' responses to

Request for Production No. 1 and Request for Production No. 11 in Plaintiffs' Omnibus Discovery Requests on All Defendants, along with the documents and/or ESI produced by the BP Parties in conjunction therewith, and the BP Parties' production of documents and/or ESI on December 23, 2010 in Volume 4 ("BPMDL2179VOL000004").  Anadarko's request fails to define clearly what additional or unique pictures, video recordings, x-rays, audio recordings samples, measurements, and/or testing results they seek beyond those already produced.

To the extent Anadarko's request seeks additional documents or other materials beyond what BP has already produced, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party, nor likely to lead to the discovery of relevant information. To the extent Anadarko's request seeks additional documents or other materials beyond what BP has already produced, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party, nor likely to lead to the discovery of relevant information.  For example, with respect to "all pictures," this request is so broad that the BP Parties first would have to search the files of several thousand custodians identified thus far to identify if any pictures and other electronic picture files exist and then follow-up with these custodians to determine whether any of the pictures initially located are potentially responsive to this request.  Similarly, with respect to "all video recordings," the BP Parties to date have collected approximately 4,300 pieces of remotely operated vehicle (ROV) media representing 112 terabytes of data.  This request is so broad that the BP Parties cannot determine which, if any, of these pieces of media are potentially responsive to this request

without a detailed review of each item to determine what it contains. Such review without further detailed guidance from Anadarko regarding what should be produced is unduly burdensome.

The BP Parties further object that this request is unreasonable and could subject the BP Parties to inconsistent legal obligations to the extent it can be read to require the production of equipment or other items that were produced to the U.S. government pursuant to one or more subpoenas, this Court's Orders, or other obligations.  The BP Parties also object that this request could be interpreted to require the production of equipment or other items that are subject to this Court's Orders authorizing BP to reuse, recycle, or otherwise dispose of such equipment and other items.  The BP Parties further object that this request could be interpreted to require the production of samples of drilling mud, cement resin (powdered cement), oil, and other items collected post-Incident that exist in limited quantities and are subject to this Court's preservation orders and other preservation requirements, including letters from government entities asking one or more BP Parties to confirm that they have preserved and will continue to preserve tangible objects relevant to the Incident. BP is willing to make samples available for inspection and testing by parties to this litigation, but only after such parties agree to appropriate test protocols and/or data sharing arrangements developed through multi-party discussions or other means.  The BP Parties also object that this request seeks information or documents protected by the attorney-client privilege or the work product doctrine and therefore protected from discovery.

Subject to their specific and general objections, the BP Parties will conduct a reasonable search for non-privileged results and supporting data of any post-Incident

physical testing performed by the BP Parties on the Macondo Well, its casing, and its casing

hanger seal assembly, and will produce responsive documents identified as a result of that

search.

To the extent Anadarko requests seeks additional documents, the BP Parties object

on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks

information not relevant to the claims or defenses of any party.

## REQUEST FOR PRODUCTION NO. 16:

Please produce all raw data, in native format, that was input to produce the final, and
any earlier iteration, of the OLGA gas flow model discussed in BP's September 8, 2010
Accident Investigation Report.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 16:

The BP Parties object to this request to the extent it calls for documents not in the BP

Parties' possession, custody, or control.  The BP Parties further object to this request to the

extent it purports to require the BP Parties to produce documents in a form not consistent

with Pre-Trial Order No. 16.

## REQUEST FOR PRODUCTION NO. 17:

Please produce all drafts or other iterations of the OLGA gas flow model produced in
connection with the investigation that culminated in BP's September 8, 2010 Accident
Investigation Report.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 17:

Subject to their general objections, the BP Parties will conduct a search of non-

privileged documents for documents responsive to this request, and will produce responsive

documents identified as a result of that search.

**REQUEST FOR PRODUCTION NO. 18:**

Please produce all DOCUMENTS, data, notes, tests, modeling studies or other information, including but not limited to drafts of same, reviewed in connection with the investigation conducted by BP that culminated in the September 8, 2010 Accident Investigation Report.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

The BP Parties object to this request to the extent it calls for documents protected by the Attorney-Client privilege, Work Product doctrine, or any other applicable privilege. The BP Parties further object to this request to the extent it calls for the BP Parties to collect information from persons outside of BP or identify documents not in the BP Parties' possession, custody, or control.

Subject to their specific and general objections, the BP Parties will produce non-privileged documents reviewed by the BP members of its internal investigation team in connection with their work in preparing the September 8, 2010  Accident Investigation Report, consistent with the parties correspondence and discussions concerning the production of internal investigation team documents.

To the extent Anadarko's request seeks additional documents, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**REQUEST FOR PRODUCTION NO. 19:**

Please produce all tests, data, models, measurements, results, logs, COMMUNICATIONS, DOCUMENTS, or work, RELATED TO or done for YOU by CSI since April 20, 2010, REGARDING the MACONDO WELL, including but not limited to tests at actual measured bottom hole temperatures, tests on slurry strength, and numerical models to estimate a bottom hole circulating temperature.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

The BP Parties object to this request because Anadarko's use of the phrases "all tests, data, models, measurements, results, logs, communications, documents, or work," "tests at actual measured bottom hole temperatures," "tests on slurry strength" and "numerical models to estimate a bottom hole circulating temperature" is vague, ambiguous, and undefined.

Subject to their specific and general objections, the BP Parties will conduct a search of non-privileged documents for documents relating to CSI Technologies' work for BP's Internal Investigation Team since April 20, 2010, and will produce responsive documents identified as a result of that search.

To the extent Anadarko's request seeks additional documents, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**REQUEST FOR PRODUCTION NO. 20:**

Please produce all tests, data, models, measurements, results, logs, COMMUNICATIONS, DOCUMENTS, or work, RELATED TO or done for YOU since April 20, 2010, REGARDING the MACONDO WELL, including but not limited to "Well Cat" numerical model estimations or runs of bottom hole circulating temperature.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

The BP Parties object to this request because Anadarko's use of the phrases "all tests, data, models, measurements, results, logs, communications, documents, or work" and "'Well Cat' numerical model estimations or runs of bottom hole circulating temperature" is vague, ambiguous, and undefined.  The BP Parties further object to this request on the grounds that it is overbroad and unduly burdensome to the extent that it seeks "all" documents related to or done for BP since April 20, 2010 regarding the Macondo Well.

41

Subject to their specific and general objections, the BP Parties will conduct a reasonable search of non-privileged documents for tests, data, models, measurements, results, logs, communications, documents or work related to or done for BP since April 20, 2010 regarding the Macondo well and will produce responsive documents identified as a result of that search, including documents already produced at BP-HZN-BLY00000001 to BP-HZN-BLY00167315.

To the extent Anadarko's requests seeks additional documents, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**REQUEST FOR PRODUCTION NO. 21:**

Please produce all DOCUMENTS RELATING TO the potential use of the *DEEP WATER HORIZON* in connection with activities on the Nile or Kaskida wells.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

The BP Parties object to this request on the grounds that it is overbroad in purporting to request "all documents" relating to the "potential use" of the *Deepwater Horizon* in connection the Nile or Kaskida wells.

Subject to their specific and general objections, the BP Parties will conduct a search of non-privileged documents for documents sufficient to show their plans with respect to the use of the *Deepwater Horizon* in connection with the Nile or Kaskida wells at the time of the April 20, 2010 incident, and will produce responsive documents identified as a result of that search.

To the extent Anadarko's request seeks additional documents, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

42

**REQUEST FOR PRODUCTION NO. 22:**

Please produce all COMMUNICATIONS CONCERNING the Kaskida or Nile wells during April 2010.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

The BP Parties object to this request on the grounds that it is overbroad in purporting to request "all communications" concerning the Nile or Kaskida wells during April 2010.

Subject to their specific and general objections, the BP Parties will conduct a search of non-privileged documents for documents sufficient to show their plans with respect to the use of the *Deepwater Horizon* in connection with the Nile or Kaskida wells at the time of the April 20, 2010 incident, and will produce responsive documents identified as a result of that search.

To the extent Anadarko's request seeks additional documents, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**REQUEST FOR PRODUCTION NO. 23:**

Please produce all DOCUMENTS RELATING TO the type, shipment, delivery and/or return of the centralizers ordered from WEATHERFORD for the MACONDO WELL in April 2010, and to YOUR decision REGARDING return of these centralizers or their use on rigs other than *DEEP WATER HORIZON*.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

The BP Parties object to this request because Anadarko's use of the phrases "type, shipment, delivery and/or return of the centralizers" and "decision regarding return of these centralizers or their use on rigs other than *Deepwater Horizon*" is vague, ambiguous, and undefined.

Subject to their specific and general objections, the BP Parties will conduct a search of non-privileged documents for documents relating to the fifteen centralizers ordered from Weatherford for the Macondo Well in April 2010, and will produce responsive documents identified as a result of that search.

To the extent Anadarko's request seeks additional documents, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party..

## REQUEST FOR PRODUCTION NO. 24:

Please produce all DOCUMENTS RELATING TO the use or potential use of Form-aSet, Form-a-Squeeze, or any combination of the two, as a spacer in any well, including DOCUMENTS discussing any benefits or risks associated with such use.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 24:

The BP Parties object to this request on the grounds that it seeks documents likely more readily available from other parties in the litigation, such as M-I Swaco or the Transocean Defendants, and it purports to call for information beyond the BP Parties' control or knowledge.  The BP Parties object to this request as overbroad and unduly burdensome to the extent it seeks "all" documents relating to the use or potential use of Form-A-Set, Form-A-Squeeze or any combination of the two as a spacer in any well, regardless of location, time or well conditions.

Subject to their specific and general objections, the BP Parties will conduct a reasonable search of non-privileged documents for documents relating to the use or potential use of Form-A-Set, Form-A-Squeeze or any combination of the two as a spacer at the Macondo Well on April 20, 2010 and will produce responsive documents identified as a result of that search, including documents previously produced in response to Request for

Production Nos. 65, 73, 122, 143, 201 in The BP Parties' Responses and Objections to Plaintiffs' Interrogatories, Requests for Production, and Requests for Admission, served on All Counsel on December 8, 2010.

To the extent Anadarko's Request for Production seeks additional documents, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**REQUEST FOR PRODUCTION NO. 25:**

Please produce all DOCUMENTS RELATING TO the required method of disposal of unused Form-a-Set or Form-A-Squeeze material.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

The BP Parties object to this request to the extent it seeks documents already in the possession of Anadarko or equally available to Anadarko from sources other than the BP Parties, including publicly available sources.  The BP Parties further object to this request on the grounds that it is overbroad and unduly burdensome in seeking "all documents relating to" disposal of unused Form-a-Set or Form-A-Squeeze, as this request calls for documents without limitation as to time period or location.

Subject to their specific and general objections, the BP Parties will conduct a search of non-privileged documents for documents relating to the required method of disposal of unused Form-a-Set or Form-A-Squeeze in the Gulf of Mexico, and will produce responsive documents identified as a result of that search.

To the extent Anadarko's Request for Production seeks additional documents, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

45

**REQUEST FOR PRODUCTION NO. 26:**

Please produce all DOCUMENTS, COMMUNICATIONS or directions REGARDING the use of the mud-gas separator on any rig operated by YOU in the event of gas flow from a well.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

The BP Parties object to this request on the grounds that it is overbroad and unduly burdensome in seeking "all documents, communications or directions" regarding the use of the mud-gas separator on any rig, as this request would call for the production of documents throughout the entire company, without limitation as to time period, custodian or business unit.

Subject to their specific and general objections, the BP Parties will conduct a reasonable search of non-privileged documents from the GoM business unit regarding the use of the mud-gas separator on rigs operated by BP in the event of gas flow from a well, and will produce responsive documents identified as a result of that search.

To the extent Anadarko's Request for Production seeks additional documents, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**REQUEST FOR PRODUCTION NO. 27:**

Please produce all DOCUMENTS or COMMUNICATIONS RELATING TO the potential for cement contamination in the MACONDO WELL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

The BP Parties object to this request because Anadarko's use of the phrase "potential for cement contamination" is vague, ambiguous, and undefined.

Subject to their specific and general objections, the BP Parties will conduct a search of non-privileged documents for documents relating to the potential for contamination of the

46

cement slurry for the production interval of the Macondo Well, and will produce responsive documents identified as a result of that search.

To the extent Anadarko's request seeks additional documents, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**REQUEST FOR PRODUCTION NO. 28:**

Please produce all DOCUMENTS RELATING TO THE COMMUNICATIONS referenced in Interrogatory Nos. 1 and 2.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

The BP Parties object to this request as overbroad and unduly burdensome to the extent it seeks all communications regarding whether any alarm systems on the *Deepwater Horizon* were inhibited or bypassed, as well as communications regarding the functionality of the *Deepwater* The BP Parties further object to this request to the extent the phrase "any of the alarm systems on the DEEPWATER HORIZON" as used in this request is vague and ambiguous and is subject to more than one interpretation.

Subject to their specific and general objections, and in accordance with Federal Rule of Civil Procedure 33(d) the BP Parties refer Anadarko to their responses to Interrogatory No. 31 and Requests for Production No. 131, in The BP Parties Responses and Objections to Plaintiffs' Interrogatories, Requests for Production, and Requests for Admission, served on All Counsel on December 8, 2010, as the burden of deriving or ascertaining the answer to this interrogatory is substantially the same for Anadarko as it is for the BP Parties. Additionally, subject to their specific and general objections, the BP Parties will conduct a reasonable search of non-privileged documents that are, or are related to, communications with BP personnel regarding inhibiting or bypassing of the alarm systems for the blowout

preventer, the fire and gas detection system or general alarm for *the Deepwater Horizon*, and will produce responsive documents identified as a result of that search.

To the extent Anadarko's request seeks additional documents, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

## **GENERAL OBJECTIONS**

The BP Parties assert the following objections to each and every one of Anadarko's interrogatories and requests for production including any definitions or instructions associated therewith (collectively, "Anadarko's Discovery Requests"). These general objections are incorporated by reference into each specific response set forth by the BP Parties and are neither waived nor limited by any specific responses.

1.      The BP Parties object to Anadarko's Discovery Requests to the extent they call for information, seek discovery, or attempt to impose any obligations beyond that permitted or authorized by the Federal Rules of Civil Procedure or the Rules and Orders of this Court.

2.      The BP Parties object to Anadarko's Discovery Requests to the extent they call for the production of ESI in any manner other than required under Federal Rule of Civil Procedure 34, the Rules and Orders of the Court, and ongoing negotiations and discussions among counsel.

3.      The BP Parties object to Anadarko's Discovery Requests to the extent they seek information or documents protected by the attorney-client privilege, the work-product doctrine, the joint defense or common interest privilege, or any other applicable privilege, exemption, or immunity. The BP Parties will identify specific documents withheld on these grounds in accordance with the schedule set forth in, and provide the information required by, the Court's

Pretrial Order #14, and such further Orders of the Court and ongoing negotiations and discussions among counsel.  The BP Parties incorporate their forthcoming privilege logs and all related information into this general objection to the extent necessary to preserve against any waiver of any applicable privilege or immunity from discovery.

4.      The BP Parties object to Anadarko's Discovery Requests to the extent they seek information or documents relating to the settlement or potential settlement of disputes on the grounds that such information is not relevant to any party's claim or defense, is not admissible at trial and not reasonably calculated to lead to the discovery of admissible evidence, is protected from disclosure and dissemination under Federal Rule of Evidence 408, and that discovery of such information would be prejudicial to the efforts of the BP Parties and any opposing parties to resolve their disputes in a fair and efficient manner.

5.      The BP Parties object to Anadarko's Discovery Requests to the extent they call for information or documents not within the BP Parties' possession, custody, or control.  All responses are made on behalf of the BP Parties only, are limited to information and documents within the BP Parties' possession, custody, or control.

6.      The BP Parties object to Anadarko's Discovery Requests to the extent they are unduly burdensome, duplicative, premature, oppressive, and/or overbroad, including, without limitation, as to subject matter and/or time period, and where compliance with specific requests would be unreasonably difficult as well as prohibitively expensive or time-consuming.

7.      The BP Parties object to Anadarko's Discovery Requests to the extent they are not limited to information or documents relevant to any party's claim or defense, or to the extent they seek discovery of information or documents not admissible at trial and not reasonably calculated to lead to the discovery of admissible evidence, including, but not limited to, requests

49

seeking information or documents concerning other incidents, accidents, or other events at BP facilities or locations other than the Macondo Well or that are otherwise unrelated to the *Deepwater Horizon*.

8.      The BP Parties object to Anadarko's Discovery Requests to the extent they seek the disclosure of information or documents that contain or constitute trade secrets, proprietary information, or other confidential business information without appropriate restrictions on disclosure and dissemination that are embodied in a protective order entered by the Court.

9.      The BP Parties object to Anadarko's Discovery Requests to the extent they seek the disclosure of information or documents that would violate the rights of privacy of third parties, or any similar judicially recognized protection or privilege, including, but not limited to, restrictions imposed in connection with proceedings before the MBI, and the protections of the Health Insurance Portability and Accountability Act ("HIPAA"), or that would result in disclosure of any confidential information or conduct without appropriate restrictions on disclosure and dissemination that are embodied in a protective order entered by the Court.

10.      The BP Parties object to the requests to the extent they seek documents already in the possession of Anadarko or equally available to Anadarko from sources other than the BP Parties, including publicly available sources.

11.      The BP Parties object to Anadarko's "Definitions" to the extent they seek to impose any meaning or interpretation onto the requests other than that evident from the plain and ordinary meaning of the words used therein.  The BP Parties further object to, and will read and respond to, Anadarko's "Definitions" (labeled to correspond to Anadarko's list) as follows:

(i)      Anadarko's definition of "Deepwater Horizon" is vague and overbroad; it includes any equipment used in connection with the exploration for or production of oil.  The BP

Parties will read and respond to Anadarko's requests with the understanding that the term "Deepwater Horizon" means the vessel of that name and that, unless expressly otherwise specified, concerns the operation of the *Deepwater Horizon* in connection with the Macondo Well.

(j)     Anadarko's definition of "Macondo Well" is vague and overbroad; it includes a broad geographic area and is not limited to any well, much less the well at issue in this litigation.  The BP Parties will read and respond to Anadarko's requests with the understanding that the term "Macondo Well" means the MC 252 #1 Macondo Well.

(l)     Anadarko's definition of "incident" is overly narrow; it is limited to the explosion that occurred on the *Deepwater Horizon*.  The BP Parties will read and respond to Anadarko's requests with the understanding that the term "Incident" means the loss of control of the Macondo Well and the explosions and fire aboard, and resulting sinking of, the *Deepwater Horizon*.

(m)     Anadarko's definitions of "BOP" and "blowout preventer" is vague and overbroad; they include any equipment used to control any well.  The BP Parties will read and respond to Anadarko's requests with the understanding that the terms "BOP" and "blowout preventer" means a blowout preventer like the one in use at the Macondo Well at the time of the incident.

(n)     Anadarko's definition of "Deepwater Horizon Blowout Preventer" is unobjectionable.

(o)     Anadarko's definitions of "you," "your," and "BP" are extremely vague and overbroad; they include a vast array of entities that have had no involvement whatsoever in the events giving rise to this litigation, and confusingly and improperly sweep in hundreds of

51

thousands of individuals as opposed to the corporate entities that have been named as defendants in this litigation.   The BP Parties will read and respond to Anadarko's requests with the understanding that the terms you," "your," and "BP" mean one or more of the BP Parties, as the context requires.

(p, q, r,)   Anadarko's   definitions   of   "Cameron,"   "Weatherford,"   and "Transocean," are similarly vague, overbroad, and confusing.   The BP Parties will read and respond to Anadarko's requests with the understanding that these terms refer to the respective corporate entities commonly referred to by these names that have been named in this litigation and played some role in the events relevant to this litigation.

(s)   Anadarko's definition of "person" is vague and overbroad; it includes any number of things that are not people in any sense of the word.   The BP Parties will read and respond to Anadarko's requests with the understanding that the term "person" means a person.

(t)   Anadarko's definition of "employee" is vague and overbroad; it includes any number of persons who were or are not employees.   The BP Parties will read and respond to Anadarko's requests with the understanding that the term "employee" means an employee.

(u)   Anadarko's definition of "government" is vague and overbroad; it includes a bewildering array of entities as well as any number of people who are "the government."   The BP Parties will read and respond to Anadarko's requests with the understanding that the term "government" means the U.S. federal government or the government of a U.S. state, including any branch or agency thereof.

(v)   Anadarko's definition of "communication" is vague and overbroad; it includes practically everything written or said by any person, regardless of whether it was actually communicated in any meaningful sense.   The BP Parties will read and respond to

52

Anadarko's requests with the understanding that the term "communication" means talking to someone or sending them a message of some sort.

(w)    Anadarko's definition of "meeting" is vague and overbroad; it includes any number of things that no person would reasonably conclude constitute a meeting, such as a casual greeting exchanged in a hallway, sending an e-mail, or posting a message on a bulletin board.  The BP Parties will read and respond to Anadarko's requests with the understanding that the term "meeting" refers to a gathering of two or more people.  It does not include electronic communications unless specified.

(x)    Anadarko's definition of "document" is improper to the extent it includes items outside the scope of Federal Rule of Civil Procedures 34(a)(1)(A).  The BP Parties will read and respond to Anadarko's requests with the understanding that the term "document" means the items listed in Federal Rule of Civil Procedure 34(a)(1)(A).

(y)    Anadarko's definition of "electronically stored information" or "ESI" is improper to the extent it includes items outside the scope of Federal Rule of Civil Procedures 34(a)(1)(A).   The BP Parties will read and respond to Anadarko's requests with the understanding that the term "electronically stored information" or "ESI" means the electronically stored information listed in Federal Rule of Civil Procedure 34(a)(1)(A).

(z)    Anadarko's definition of "computer" is vague and overbroad; it includes every device that processes or stores information, including any number of things that no person would reasonably conclude constitute a computer, such as a clock, voice recorder, camera, or cell phone.  The BP Parties will read and respond to Anadarko's requests with the understanding that the term "computer" means a mainframe, desktop, laptop, or tablet computer.

(aa)   Anadarko's definition of "control" is improper to the extent it seeks to impose any obligation on the BP Parties beyond that imposed under Federal Rule of Civil Procedure 34(a)(1).   The BP Parties will read and respond to Anadarko's requests with the understanding that the term "control" means "possession, custody, or control" as used in Federal Rule of Civil Procedure 34(a)(1).

(bb)   Anadarko's definitions of "relating to," "related to," "regarding," "concerning," and "with respect to," are vague and overbroad; they render these and innumerable other words void of any independent meaning.   The BP Parties will read and respond to Anadarko's requests with the understanding that these terms have their plain and ordinary meaning in standard English usage.

(cc, dd, ee)   Anadarko's definition of "identify" is overbroad; it includes a request for detailed information far beyond whatever may be reasonably necessary to distinguish one individual, one document, or any ESI, from any other.   The BP Parties will read and respond to Anadarko's requests with the understanding that the term "identify" means, in the context of an individual, an individual's name, and where the context reasonably requires, his or her employer and title, and in the context of a document or ESI, a Bates number or other available information necessary to isolate the document or ESI.

(ff)   Anadarko's definition of "describe" is overbroad; it includes a request for detailed information far beyond whatever may be reasonably necessary to accurately give a description.   The BP Parties will read and respond to Anadarko's requests with the understanding that the term "describe" means to provide a concise description reasonably calculated to allow the identification of a thing or its characteristics relevant for purposes of this litigation as the context requires.

54

(gg)   Anadarko's definition of "state" is overbroad; it includes a request for detailed information far beyond whatever may be reasonably necessary to accurately make a statement.  The BP Parties will read and respond to Anadarko's requests with the understanding that the term "state" means to truthfully and accurately provide Anadarko with knowledge or information.

(hh)   Anadarko's definitions of "basis," "bases," "sources," "sources of knowledge," "sources of information," or "source(s) of information or belief" are overbroad; it includes a request for detailed information far beyond whatever may be reasonably necessary to accurately identify the source or basis of a statement.  The BP Parties will read and respond to Anadarko's requests with the understanding that the terms "basis," "bases," "sources," "sources of knowledge," "sources of information," or "source(s) of information or belief" mean to identify, when possible and appropriate, the person(s) with direct knowledge about the provided information and the identity of a corresponding document.

(ii)   Anadarko's definitions of "and" and "or" is vague, overbroad, and confusing; they render the words equivalent and therefore deprive them of independent meaning and inconsistent with standard English usage.   The BP Parties will read and respond to Anadarko's requests with the understanding that the term "and" means and, and the term "or" means or.

(jj)   Anadarko's definition of "any" is vague, overbroad, and confusing; it renders the word unnecessarily ambiguous and necessarily converts many of Anadarko's requests into nonsensical requests for duplicative information.  The BP Parties will read and respond to Anadarko's requests with the understanding that the term "any" means any.

(kk)   Anadarko's definition of "including" is unobjectionable.

(ll)     Anadarko's definitions of "each" and "every" is vague, overbroad, and confusing; they render the words equivalent and therefore deprive them of independent meaning and inconsistent with standard English usage.   The BP Parties will read and respond to Anadarko's requests with the understanding that the term "each" means each and the term "every" means every.

(mm)   Anadarko's instruction to treat all nouns and pronouns as plural nouns and pronouns is vague, overbroad, and confusing; it renders many of Anadarko's requests unnecessarily nonsensical, contorted, and duplicative.  The BP Parties will read and respond to Anadarko's requests as written, not as imagined to give the "broadest possible application."

(nn)     Anadarko's instruction to treat all verbs as possessing all possible tenses is vague, overbroad, and confusing; it renders many of Anadarko's requests unnecessarily nonsensical, contorted, and duplicative.  The BP Parties will read and respond to Anadarko's requests as written, not as imagined to give the "broadest possible application."

(oo)     Anadarko's instruction to treat all terms of a specific gender as referring to all genders is vague, overbroad, and confusing; it renders many of Anadarko's requests unnecessarily nonsensical, contorted, and duplicative.  The BP Parties will read and respond to Anadarko's requests as written, not as imagined to give the "broadest possible application."

(pp)     Anadarko's instruction to treat all terms as if they encompass all grammatical variations of the term is vague, overbroad, and confusing; it renders many of Anadarko's requests unnecessarily nonsensical, contorted, and duplicative.  The BP Parties will read and respond to Anadarko's requests as written, not as imagined under instructions to set aside standard English usage.

12.     These responses are made without waiving, in any manner, the BP Parties' right to object to the use of any information or documents provided in response to these requests at any trial or evidentiary hearing on grounds of privilege, relevance, materiality, authenticity, hearsay, or any other ground permitted by any applicable law or rule.

13.     To the extent the BP Parties state they will produce documents in response to the requests, the BP Parties will produce such documents on a rolling basis with such reasonable speed as the BP Parties can locate and process them, without sacrificing a meaningful review for responsiveness, privilege, and confidentiality, as this is the only feasible and physically possible method given the scope and breadth of the requests.

14.     To the extent that the BP Parties respond that they will search for and produce responsive documents, the BP Parties are only undertaking to make a good faith effort to conduct a reasonable search of non-privileged documents of the files and records of those individuals likely to have meaningful information responsive to a requests as maintained in the ordinary course of business, and/or to apply a reasonable set of search terms to similar available collections of ESI as maintained in the ordinary course of business reasonably likely to yield a meaningful amount of information responsive to a request.  The BP Parties are not offering or promising to search for and produce every document or piece of information that may exist in the possession, custody, or control of any of their tens of thousands of employees and agents where any such items are not included within the results of a reasonable search as described above.

15.     The BP Parties object to Anadarko's requests to the extent that they are not limited to a reasonable time period as unreasonable, overbroad, and calling for the production of documents with little or no relevance to this litigation or any respect for the practicalities of resolving it.   The BP Parties will read and respond to Anadarko's requests with the

57

understanding that the term "relevant time period" means January 1, 2009 through April 20, 2010, unless: (i) the request clearly seeks specific, available, relevant information that pre-dates January 1, 2009 (*e.g.*, rig audits of the *Deepwater Horizon*); and (ii) the request clearly seeks relevant information or documents that post-date the incident, in which case and to which extent, the time period is, or includes as the context requires, April 20, 2010 through November 8, 2010, or November 30, 2010, with regard to certain requests seeking information related to environmental issues. In addition, when used in reference to the operation of the *Deepwater Horizon*, the *Transocean Marianas*, the blowout preventer, or any other equipment that was used in connection with work that did not involve the Macondo Well, the BP Parties will read and respond to Anadarko's requests with the understanding that the term "relevant time period" means the period of time during which the rig or equipment referred to was used at the site of the Macondo Well, prior to and including April 20, 2010 as stated above. Notwithstanding the above, however, the BP Parties have responded to Anadarko's requests that seek specific, relevant, identifiable documents generated prior to the time frames set forth above, but in no event will the BP Parties undertake to search for or produce documents generated prior to January 1, 2006.

16.     The BP Parties' decision, now or in the future, to provide information or documents notwithstanding the objectionable nature of any of the definitions or instructions, or the document requests themselves, should not be construed as: (a) a stipulation that the material is relevant or admissible, (b) a waiver of the BP Parties' general objections or the objections asserted in response to specific requests, or (c) an agreement that requests for similar information will be treated in a similar manner.

17.     The BP Parties reserve the right to modify, amend, or supplement their responses, which are made based on the current status of their knowledge, understanding, belief, and searches for documents.  The investigation of facts and information relating to these requests is continuing, and, therefore, these responses are not intended as an admission or a representation that additional information or documents do not exist.

## **VERIFICATION**

I, Bill Kirton, an officer of BP America Inc., BP America Production Company, and BP Exploration & Production Inc., having undertaken a reasonable inquiry under the circumstances into the process by which the foregoing responses to interrogatories were compiled, hereby certify, under penalty of perjury, that, to the best of my knowledge, information, and belief, the foregoing responses to interrogatories accurately reflect the information available to BP America Inc., BP America Production Company, and BP Exploration & Production Inc. as specified therein.

State of Texas         :
                       :         ss.
County of Harris       :
Sworn and ascribed to before me
this ___ day of _____ 2011

Notary Public

DEENAY L. CARLSTRAND
MY COMMISSION EXPIRES
February 21, 2013

Dated:  February 22, 2011                    Respectfully submitted,

                                             **AS TO RESPONSES TO INTERROGATORIES**

                                             By: /s/ Bill Kirton_____
                                             BP America Inc.
                                             501 Westlake Park Blvd.
                                             Houston, Texas 77079

                                             *BP America Inc., BP America Production*
                                             *Company, and BP Exploration & Production Inc.*

                                             **AS TO OBJECTIONS AND TO RESPONSES**
                                             **TO REQUESTS FOR DOCUMENTS**

                                             By:  /s/ J. Andrew Langan, P.C.
                                             Richard C. Godfrey, P.C.
                                             J. Andrew Langan, P.C.
                                             Wendy Bloom, P.C.
                                             Timothy A. Duffy, P.C.
                                             Kirkland & Ellis LLP
                                             300 North LaSalle Street
                                             Chicago, IL 60654
                                             312-862-2000 (Tel)
                                             312-862-2200 (Fax)

                                             and

                                             Don K. Haycraft (Bar #14361)
                                             R. Keith Jarrett (Bar #16984)
                                             LISKOW & LEWIS
                                             701 Poydras Street, Suite 5000
                                             New Orleans, Louisiana 70139-5099
                                             Telephone: (504) 581-7979
                                             Facsimile: (504) 556-4108

                                             and

                                             Robert C. "Mike" Brock
                                             Covington & Burling LLP
                                             1201 Pennsylvania Avenue, NW
                                             Washington, DC 20004-2401
                                             202-662-5985

                                             *Attorneys for BP America Inc., BP America*
                                             *Production Company, BP Exploration &*
                                             *Production Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing response has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, which will send a notice in accordance with the procedures established in MDL 2179, on this 22nd day of February, 2011.

<u>/s/   J. Andrew Langan, P.C.   </u>

LEXISNEXIS® FILE & SERVE
36086798
E-SERVICE
Feb 22 2011
10:56PM

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:   Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | : : : : | MDL No. 2179<br><br>SECTION: J |
| This Document Relates To: All Actions | : : : | JUDGE BARBIER<br>MAGISTRATE JUDGE SHUSHAN |
| …………………………………………….... | : | |

## THE BP PARTIES' RESPONSES AND OBJECTIONS TO DEFENDANT MOEX OFFSHORE 2007 LLC'S INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS

Defendants BP America Inc. ("BPA"), BP America Production Company ("BPAP"), and BP Exploration & Production Inc. ("BPXP") (collectively, "the BP Parties"), by their undersigned Counsel, and, pursuant to Rules 26, 33, and 34 of the Federal Rules of Civil Procedure, hereby submit the following responses and objections to MOEX's Interrogatories and Requests for Production.

## SPECIFIC RESPONSES AND OBJECTIONS

The BP Parties respond as follows to MOEX's specific interrogatories and requests for production, subject to and without waiving their general objections, each and every one of which are specifically incorporated into each individual response below.[1]

## INTERROGATORY NO. 1:

Please IDENTIFY every BP EMPLOYEE or other PERSON associated with BP who concluded that the second, or any subsequent, negative pressure test at the MACONDO WELL on April 20, 2010, was "successful" and DESCRIBE in detail each and every reason for such conclusion.

---

[1] The BP Parties' general objections are set forth at pages 46 - 57.

**RESPONSE TO INTERROGATORY NO. 1:**

The BP Parties object to this interrogatory to the extent that it purports to characterize the BP employees involved with the negative pressure test at MC 252 #1 on April 20, 2010 as making the ultimate decision on those tests.

Subject to their specific and general objections, the BP Parties state that, as reported in BP September 8, 2010 Internal Investigation Report, "[t]he Transocean rig crew and BP well site leaders reached the incorrect view that the test was successful and that well integrity had been established." The Transocean rig crew involved in the decision on the negative pressure tests included Transocean Toolpusher Jason Anderson, Transocean Driller Dewey Revette, and Transocean OIM Jimmy Harrell. The BP well site leaders involved in the negative pressure tests were Don Vidrine and Robert Kaluza.

To the extent MOEX's interrogatory seeks additional information, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**INTERROGATORY NO. 2:**

Please IDENTIFY every BP EMPLOYEE or other PERSON associated with BP who concluded that the difference in pressure of 1400 psi between the drill pipe and the *DEEP WATER HORIZON'S* BLOWOUT PREVENTER'S kill line during the second negative pressure test on April 20, 2010 was the result of "bladder effect."

**RESPONSE TO INTERROGATORY NO. 2:**

The BP Parties object to this interrogatory to the extent that it purports to characterize the BP employees involved with the negative pressure tests at MC 252 #1 on April 20, 2010 as decision makers with respect to the negative tests because personnel from Transocean and others were involved with preparing the well and rig equipment and data for those negative tests, manipulated rig equipment during the tests, bled fluid during the tests, monitored rig equipment

2

during the tests, made decisions about those tests, and also had the ability to, and did express, their opinions regarding the results of those tests.  In addition, Transocean personnel and others had the ability and authority to stop the job in the event they were uncomfortable with or concerned about any aspects of those tests, including the test results.  The BP Parties further object to this interrogatory as vague, ambiguous, and potentially misleading in its phrasing in terms of seeking the identification of BP employees or personnel "who concluded that the difference in pressure . . . was the result of 'bladder effect.'"

Subject to their specific and general objections, the BP Parties state that, as reported in BP's September 8, 2010 Internal Investigation Report, "[t]he Transocean rig crew and BP well site leaders reached the incorrect view that the test was successful and that well integrity had been established."   The Transocean rig crew involved in the negative pressure tests included Transocean toolpushers Jason Anderson, Randy Ezell and Wyman Wheeler, Transocean driller Dewey Revette, and Transocean OIM Jimmy Harrell.  To the best of BP's knowledge, the term "bladder effect" was articulated by Transocean toolpusher Jason Anderson as an explanation of the pressure seen on the drill pipe during the negative tests.  The BP well site leaders involved in the negative pressure tests were Don Vidrine and Robert Kaluza, and well site leader trainee Lee Lambert.

To the extent MOEX's interrogatory seeks additional information, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**INTERROGATORY NO. 3:**

Please IDENTIFY and DESCRIBE every policy or standard practice existing at BP prior to April 21, 2010 that ensured that any and all of BP's decisions about drilling operations or temporary abandonment of deep sea wells did not favor cost or schedule considerations over potential risks to safety.

**RESPONSE TO INTERROGATORY NO. 3:**

The BP Parties object to this interrogatory on the grounds that MOEX's use of the phrase "ensured that any and all of BP's decisions about drilling operations or temporary abandonment of deep sea wells did not favor cost or schedule considerations over potential risks to safety" is vague, undefined, and overbroad, especially in light of the fact that it is not limited to any subject matter or relevant inquiry; it is argumentative; and it is duplicative and cumulative of several other discovery requests.

Subject to their specific and general objections, the BP Parties state that they have produced, or will produce, their defined and recommended practices relating to drilling operations in the Gulf of Mexico.  Accordingly, the burden of deriving or ascertaining the answer to this interrogatory is substantially the same for MOEX as it is for the BP Parties, and the BP Parties therefore refer MOEX to these documents in accordance with Federal Rule of Civil Procedure 33(d).

To the extent MOEX's interrogatory seeks additional information, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**INTERROGATORY NO. 4:**

Please IDENTIFY who at BP made the decision to displace to seawater at 3,367' below mud level prior to performing a negative pressure test on the MACONDO WELL, and DESCRIBE in detail the basis of his/her/their decision.

**RESPONSE TO INTERROGATORY NO. 4:**

The BP Parties object to this interrogatory as vague and ambiguous as to "decision to displace to seawater at 3,367' below mud level."

Subject to their specific and general objections, the BP Parties refer MOEX to their response to Request for Production No. 7 in The BP Defendants' Responses and Objections to Plaintiffs' Omnibus Discovery Requests on All Defendants, served to All Counsel on November 15, 2010, and the documents produced in connection with that response.  Accordingly, the burden of deriving or ascertaining the answer to this interrogatory is substantially the same for MOEX as it is for the BP Parties, and the BP Parties therefore refer MOEX to these documents in accordance with Federal Rule of Civil Procedure 33(d).

To the extent MOEX's interrogatory seeks additional information, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**INTERROGATORY NO. 5:**

Please IDENTIFY all PERSONS with whom Robert Kaluza or Donald Vidrine spoke by telephone on April 20 and 21, 2010 REGARDING conditions on the *DEEP WATER HORIZON* and DESCRIBE in detail the time and the substance of each such conversation.

**RESPONSE TO INTERROGATORY NO. 5:**

The BP Parties object to this interrogatory on the grounds that it is comprised of multiple discrete subparts that count as individual interrogatories under Fed. R. Civ. P. 33.  The BP Parties further object on the grounds that this interrogatory is overbroad and unduly burdensome to the extent it requires the BP Parties to "describe in detail the time and substance of each such conversation."  In addition, the BP Parties object to this interrogatory on the grounds that the phrase "conditions on the *DEEPWATER HORIZON*" is vague and ambiguous.  The BP Parties also object to this request to the extent it calls for information not in the possession, custody or control of the BP Parties.

Subject to their specific and general objections, the BP Parties refer MOEX to the documents identified in response to Anadarko Request for Production No. 6.  To the extent that Mssrs. Vidrine or Kaluza used any of the BP-managed phone lines on board the *Deepwater Horizon* on April 20, 2010, the information identified in response to Anadarko Request for Production No. 6 will be sufficient to identify the numbers called from the BP managed phone lines on board the *Deepwater Horizon*.  The BP Parties do not have access to records for telephone lines that are not managed by the BP Parties.

To the extent MOEX's interrogatory seeks additional information, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.


**INTERROGATORY NO. 6:**

Please STATE whether YOU believe that the initial flow of hydrocarbons into the MACONDO WELL on April 20, 2010 did or did not come through the shoe track barrier and DESCRIBE in detail the basis for YOUR belief.

**RESPONSE TO INTERROGATORY NO. 6:**

The BP Parties object to this interrogatory on the grounds that it is comprised of multiple discrete subparts that count as individual interrogatories under Fed. R. Civ. P. 33.  The BP Parties object to this interrogatory because the phrase "initial flow of hydrocarbons" is vague, ambiguous, and undefined.

Subject to their specific and general objections, the BP Parties state that they have previously produced documents detailing their contention on the flow path for the hydrocarbons at the Macondo well at Bates Nos. BP-HZN-BLY00000001 - BP-HZN-BLY00000760; *see also* BP-HZN-BLY00000001 - BP-HZN-BLY00061858.  Accordingly, the burden of deriving or ascertaining the answer to this interrogatory is substantially the same for MOEX as it is for the

BP Parties, and the BP Parties therefore refer MOEX to these documents in accordance with Federal Rule of Civil Procedure 33(d).

To the extent MOEX's interrogatory seeks additional information, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**INTERROGATORY NO. 7:**

Please STATE whether YOU believe there was hydrocarbon flow through the seal assembly during the INCIDENT on April 20, 2010, and DESCRIBE in detail the basis for YOUR belief.

**RESPONSE TO INTERROGATORY NO. 7:**

The BP Parties object to this interrogatory on the grounds that it is comprised of multiple discrete subparts that count as individual interrogatories under Fed. R. Civ. P. 33.  The BP Parties object to this interrogatory because it is vague, ambiguous, and undefined.

Subject to their specific and general objections, the BP Parties state that they have produced documents detailing their contention on the flow path for the hydrocarbons at the Macondo well at Bates Nos. BP-HZN-BLY00000001 - BP-HZN-BLY00000760; *see also* BP-HZN-BLY00000001 - BP-HZN-BLY00061858.   Accordingly, the burden of deriving or ascertaining the answer to this interrogatory is substantially the same for MOEX as it is for the BP Parties, and the BP Parties therefore refer MOEX to these documents in accordance with Federal Rule of Civil Procedure 33(d).

To the extent MOEX's interrogatory seeks additional information, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**INTERROGATORY NO. 8:**

Please STATE why YOU did not perform a float collar test after cementing to determine or understand whether there was a barrier, to hydrocarbons flow up the wellbore, and DESCRIBE what procedure YOU were following (if CFR 250.404-5, please STATE what part of this regulation YOU feel YOU fulfilled and how).

**RESPONSE TO INTERROGATORY NO. 8:**

The BP Parties object to this interrogatory on the grounds that it is comprised of multiple discrete subparts that count as individual interrogatories under Fed. R. Civ. P. 33. The BP Parties object to this interrogatory on the grounds that MOEX's use of the phrases "float collar test" and "CFR 250.404-5" is vague, ambiguous, and undefined.

Subject to their specific and general objections, the BP Parties state that the *Deepwater Horizon* rig team did perform a test of the float collar after cementing the production casing. That procedure is described in documents produced at Bates Nos. BP-HZN-BLY00000001 - BP-HZN-BLY00000760; *see also* BP-HZN-BLY00000001 - BP-HZN-BLY00061858. Accordingly, the burden of deriving or ascertaining the answer to this interrogatory is substantially the same for MOEX as it is for the BP Parties, and the BP Parties therefore refer MOEX to these documents in accordance with Federal Rule of Civil Procedure 33(d).

To the extent MOEX's interrogatory seeks additional information, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**INTERROGATORY NO. 9:**

Please DESCRIBE in detail why there was no monitoring of the mud pits on the *DEEP WATER HORIZON* on April 20, 2010 during all or any part of the period of time from 13:28 hours (when the offloading to the supply vessel *M/V Damon Bankston* began) to 21:10 hours (when the returns were routed overboard), and specifically IDENTIFY the period of time during which monitoring did not occur.

**RESPONSE TO INTERROGATORY NO. 9:**

The BP Parties object to this interrogatory to the extent that it purports to suggest that BP either decided that there would not be monitoring of the mud pits or was aware that such monitoring was not occurring.

Subject to their specific and general objections, the BP Parties state that this interrogatory is more appropriately suited to other parties in this litigation with primary responsibility for such monitoring, including Halliburton/Sperry Sun and Transocean.  The BP Parties further state as to why there was no monitoring of the mud pits during the specified time period, to the extent that was the case, that they were not aware of their personnel having been notified prior to the incident by anyone on the rig with responsibility for monitoring the mud pits that such individuals either were not monitoring the mud pits or were not able to monitor the mud pits at the time.

To the extent MOEX's interrogatory seeks additional information, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**INTERROGATORY NO. 10:**

Please DESCRIBE each and every step taken to control or shut in the MACONDO WELL on April 20, 2010, giving the time of day each such step was taken and by whom.

**RESPONSE TO INTERROGATORY NO. 10:**

The BP Parties object to this interrogatory to the extent that it purports to call for information that would not have been in the possession or first-hand knowledge of BP employees at the time, as the well control and/or shut in procedures undertaken on April 20, 2010 would have been undertaken by Transocean employees in the drillers' cabin at the time that a well control event was recognized.

Subject to their specific and general objections, the BP Parties state that as reported in BP's September 8, 2010 Internal Investigation Report: "No apparent well control actions were taken until hydrocarbons were in the riser.  The actions that were taken after that did not control the well."  The BP Parties refer MOEX to BP's September 8, 2010 Internal Investigation Report for additional information with respect to the steps taken in an effort to shut in the well.

To the extent MOEX's interrogatory seeks additional information, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**INTERROGATORY NO. 11:**

Please IDENTIFY and DESCRIBE in detail YOUR well control and well shut-in protocols and DESCRIBE in detail what those protocols state REGARDING how to respond to loss of well control.

**RESPONSE TO INTERROGATORY NO. 11:**

The BP Parties object to this interrogatory as vague and ambiguous in requesting BP's "well control and well shut-in protocols" when the BP policy documents on those topics would not have been the operative documents on the rig setting the protocols for well control and well shut-in at the time of the April 20, 2010 incident.

Subject to their specific and general objections, the BP Parties refer MOEX to the Transocean Well Control Handbook, previously produced at BP-HZN-MBI00023265 through BP-HZN-MBI00023660, and the Transocean *Deepwater Horizon* Emergency Response Manuals Volume 1 and 2, previously produced at BP-HZN-MBI00000943 through BP-HZN-MBI00001577, as the operative documents on the *Deepwater Horizon* on April 20, 2010, at the time of the incident.  As to BP's internal policies regarding well control and well shut-in protocols, the BP Parties further refer MOEX to BP's Well Control Manuals Volume 1-3,

10

previously produced at, *inter alia* BP-HZN-MBI00000001 through BP-HZN-MBI00000942, the BP GoM Deepwater SPU Well Control Response Guide, previously produced at BP-HZN-2179MDL00352704 through BP-HZN-2179MDL00352830, as well as the BP Group Engineering Technical Practices regarding Well Control, previously produced at BP-HZN-2179MDL00132031 through BP-HZN-2179MDL00132052.

To the extent MOEX's interrogatory seeks additional information, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**INTERROGATORY NO. 12:**

Please IDENTIFY every PERSON who made the decision on April 20, 2010 to divert flow from the MACONDO WELL through the mud gas separator rather than the starboard diverter and DESCRIBE in detail the basis for that decision.

**RESPONSE TO INTERROGATORY NO. 12:**

The BP Parties object to this interrogatory to the extent that it purports to call for information that would not have been in the possession or first-hand knowledge of BP employees at the time, as the decision undertaken on April 20, 2010 to divert flow from the Macondo Well through the mud gas separator rather than the starboard diverter would have been undertaken by Transocean employees in the drillers' cabin at the time that a well control event was recognized.

Subject to their specific and general objections, the BP Parties state that as reported in BP's September 8, 2010 Internal Investigation Report, "at approximately 21:41 hours, the [Transocean] rig crew diverted the flow of hydrocarbons to the MGS [mud gas separator]." The Internal Investigation Report describes the "rig crew" as "Transocean's rig crew leaders who were aboard the *Deepwater Horizon* (senior toolpusher, toolpushers, drillers and assistant drillers) collectively, or to the individuals in one or more of these roles, and includes personnel

11

acting at their direction."  The BP Parties refer MOEX to BP's September 8, 2010 Internal Investigation Report for additional information with respect to the decision to divert to the mud gas separator.

To the extent MOEX's interrogatory seeks additional information, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**INTERROGATORY NO. 13:**

Please IDENTIFY who, if anyone, attempted to operate the emergency disconnect system on April 20, 2010, prior to the first explosion on the *DEEP WATER HORIZON,* or after, and DESCRIBE in detail the reasons for doing so or not doing so.

**RESPONSE TO INTERROGATORY NO. 13:**

The BP Parties object to this interrogatory on the grounds that MOEX's use of the phrase "attempted to operate" as used in this interrogatory is vague, ambiguous, and undefined.  Further, the BP Parties object to this interrogatory as unduly burdensome to the extent it seeks a response likely more available from other parties in the litigation, such as the Transocean Defendants, particularly regarding the "reasons for [activating] or not [activating the EDS]."

Subject to their specific and general objections, the BP Parties state that Christopher Pleasant, Transocean Subsea Engineer, has testified that he pushed the EDS button on the BOP panel ***after*** the first explosion on the *Deepwater Horizon* on April 20, 2010, and are presently unaware of any attempt by anyone to function the EDS on April 20, 2010, prior to such first explosion.  The BP Parties do not presently know and cannot presume or infer the reasons that any person had for not activating the EDS prior to the first explosion.

To the extent MOEX's interrogatory seeks additional information, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**INTERROGATORY NO. 14:**

Please IDENTIFY which of YOUR EMPLOYEES were informed of or involved with planning for temporary-well abandonment procedures for the MACONDO WELL from March 1 through April 20, 2010, DESCRIBE in detail their roles in the planning, and DESCRIBE in detail any changes, recommendations or misgivings about those procedures that were communicated by or to YOUR EMPLOYEES, and by and to whom.

**RESPONSE TO INTERROGATORY NO. 14:**

The BP Parties objects to this interrogatory as vague, ambiguous, overbroad and unduly burdensome to the extent that it purports to seek the identification of all employees that were "involved with" planning for temporary abandonment procedures for the Macondo Well, and to the extent that the requests seeks the identification of "misgivings" on the part of their employees or others relating to those procedures.

Subject to their specific and general objections, the BP Parties refer MOEX to their response to Request for Production No. 7 in The BP Defendants' Responses and Objections to Plaintiffs' Omnibus Discovery Requests on All Defendants, served to All Counsel on November 15, 2010, and the documents produced in connection with that response.  Accordingly, the burden of deriving or ascertaining the answer to this interrogatory is substantially the same for MOEX as it is for the BP Parties, and the BP Parties therefore refer MOEX to these documents in accordance with Federal Rule of Civil Procedure 33(d).

To the extent MOEX's interrogatory seeks additional information, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

13

**INTERROGATORY NO. 15:**

Beginning with the MACONDO WELL temporary abandonment procedures, plan and/or steps discussed by YOUR EMPLOYEES by email or otherwise on April 12, 2010, DESCRIBE in detail each temporary abandonment procedure, plan and/or step YOU decided upon or changed between April 12 and the April 20th explosion on the *DEEP WATER HORIZON,* and the specific reasons for and basis on which YOU changed or revised each such procedure, plan and/or step.

**RESPONSE TO INTERROGATORY NO. 15:**

The BP Parties object to this interrogatory as vague, ambiguous and potentially misleading to the extent that is suggests that the temporary abandonment procedure was changed subsequent to the submission on April 16, 2010 of their Form MMS-124 to the MMS, which set forth the plan for the temporary abandonment procedure.

Subject to their specific and general objections, the BP Parties will conduct a search of non-privileged documents for additional documents relating to the details as to how that temporary abandonment plan was implemented, and will produce responsive documents indentified as a result of that search.

To the extent MOEX's interrogatory seeks additional information, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**INTERROGATORY NO. 16:**

Please DESCRIBE in detail all "kicks" experienced on the *DEEP WATER HORIZON* or with the MACONDO WELL from February 1, 2010 through April 20, 2010; IDENTIFY each PERSON who experienced, monitored and/or reported such kicks; and DESCRIBE in detail all actions taken in response to such kicks.

**RESPONSE TO INTERROGATORY NO. 16:**

The BP Parties object to this interrogatory as calling for information outside the reasonable custody, possession and/or control of the BP Parties in purporting to call for the

identification of "each person who experienced, monitored and/or reported" kicks occurring between February 1, 2010 through April 20, 2010, as that group of individuals would almost certainly include numerous non-BP employees.

Subject to their specific and general objections, the BP Parties state that the burden of deriving or ascertaining information responsive to this interrogatory is substantially the same for MOEX as it is for the BP Parties.  In accordance with Federal Rule of Civil Procedure 33(d), the BP Parties therefore refer MOEX to their response to Request for Production Nos. 7 and 8 in The BP Defendants' Responses and Objections to Plaintiffs' Interrogatories, Requests for Production, and Requests for Admission, served to All Counsel on December 8, 2010, and the documents produced in connection with that response.

To the extent MOEX's interrogatory seeks additional information, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**INTERROGATORY NO. 17:**

Please STATE whether it has been YOUR policy or standard procedure since 2000 that closing the annular preventer should be the first step taken during well control events on the *DEEPWATER HORIZON* and on the other deepwater drilling rigs leased, contracted, or used by YOU and, if so, DESCRIBE in detail the basis for the policy and/or procedure.

**RESPONSE TO INTERROGATORY NO. 17:**

The BP Parties object to this interrogatory on the grounds that MOEX's use of the words "policy," "standard procedure," "procedure," and "well control events" as used in this interrogatory is vague, ambiguous, and undefined.  Furthermore, the BP Parties object to this interrogatory as overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence because, among other things, it seeks the identification of "all other rigs" where closing the annual preventer is the first step taken during well control events.

15

Subject to their specific and general objections, the BP Parties state that, under the BP Parties' Well Control Manual, depending on the activity occurring on the rig at the time of a well control event, other BOP and LMRP functions may be activated before the annular preventer is closed.   *See*   BP-HZN-2179MDL00336101   -   BP-HZN-2179MDL00336104.

To the extent MOEX's interrogatory seeks additional information, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

## INTERROGATORY NO. 18:

Please DESCRIBE in detail all follow-up steps that YOU took following YOUR 2009 audit of the *DEEP WATER HORIZON* (including the *DEEP WATER HORIZON* BLOWOUT PREVENTER), that showed TRANSOCEAN was behind on maintenance of certain items on the *DEEP WATER HORIZON* and that the BOP had not been inspected or certified for a number of years, to ensure that the *DEEP WATER HORIZON* BLOWOUT PREVENTER maintenance had been brought up-to-date and was appropriate.

## RESPONSE TO INTERROGATORY NO. 18:

The BP Parties object to this interrogatory to the extent it purports to define, interpret, or characterize the scope, findings, conclusions or recommendations of BP's September 2009 audit entitled "Follow Up Rig Audit, Marine Assurance Audit and Out of Service Period" ("BP September 2009 Audit Report").  The BP Parties also object to this interrogatory to the extent it purports to attribute certain responsibilities or obligations to the BP Parties including any relating to inspection, certification, or maintenance of the BOP.  Further, the BP Parties object to this interrogatory because the terms "brought up-to-date," "appropriate," "behind on maintenance," and "a number of years" as used in this interrogatory are vague, ambiguous and undefined.  BP further objects to this request on the grounds that it is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence because, among other

things, it seeks "all follow-up steps [that BP took] to ensure that the DEEPWATER HORIZON BLOWOUT PREVENTER maintenance had been brought up-to-date and was appropriate."

Subject to their specific and general objections, the BP Parties state that, as the owner and operator of the *Deepwater Horizon*, Transocean was responsible for inspecting, surveying, testing, maintaining, modifying, and altering the blowout preventer. In addition, Cameron, as manufacturer of the blowout preventer, performed certain maintenance and repair activities on the *Deepwater Horizon* blowout preventer, including changing the batteries on the control pods. The BP Parties therefore direct MOEX to the Transocean Defendants and Cameron, who will have additional records and information regarding this subject.

The BP Parties are aware that Transocean conducted extensive BOP maintenance during the out-of-service period in September 2009 and during the *Deepwater Horizon*'s move to the Macondo well in January 2010. The BP Parties are also aware that the BOP successfully completed function and pressure tests after the September 2009 Audit and before the April 20 incident. With regard to inspections, surveys, testing, maintenance, modifications, or alterations performed on the blowout preventer of the Macondo Well prior to the incident, the BP Parties also refer MOEX to their response to MDL Interrogatory No. 31.

The BP Parties also state that follow-up steps taken by BP following the September 2009 Audit are recorded in electronic communications. In addition, the burden of deriving or ascertaining the answer to this interrogatory is substantially the same for MOEX as it is for the BP Parties, and the BP Parties therefore refer MOEX to the following documents in accordance with Federal Rule of Civil Procedure 33(d): BP-HZN-2179MDL00095246-BP-HZN-2179MDL00095247; BP-HZN-2179MDL00095248-BP-HZN-2179MDL00095307; BP-HZN-2179MDL00095308-BP-HZN-2179MDL00095366; BP-HZN-2179MDL00095367-BP-HZN-

2179MDL00095425;  BP-HZN-2179MDL00340713;  BP-HZN-2179MDL00340714;  BP-HZN-

2179MDL00340255;  BP-HZN-2179MDL00340256;  BP-HZN-2179MDL00349001;  BP-HZN-

2179MDL00349002;  BP-HZN-2179MDL00357339;  BP-HZN-2179MDL00357340;  BP-HZN-

2179MDL00028728;  BP-HZN-2179MDL00028729;  BP-HZN-2179MDL00028730;  BP-HZN-

2179MDL00028731;  BP-HZN-2179MDL00096163;  BP-HZN-2179MDL00096164;  BP-HZN-

2179MDL00096165;  BP-HZN-2179MDL00096235;  BP-HZN-2179MDL00096236;  BP-HZN-

2179MDL00096237;  BP-HZN-2179MDL00033637;  BP-HZN-2179MDL00033638;  BP-HZN-

2179MDL00372059-BP-HZN-2179MDL00372060.

To the extent MOEX's interrogatory seeks additional information, the BP Parties object

on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not

relevant to the claims or defenses of any party.


**INTERROGATORY NO. 19:**

Please IDENTIFY the companies that provided service for any COMMUNICATIONS
devices, including but not limited to telephones, cellular phones, smart phones, and Blackberries,
that were in the possession of any PERSONS aboard the *DEEP WATER HORIZON* or the *M/V
Damon Bankston* on April 20 and 21, 2010, and the telephone numbers for each such device.

**RESPONSE TO INTERROGATORY NO. 19:**

The BP Parties object to this interrogatory as overbroad to the extent that it calls for the

production of information outside the knowledge, custody or control of the BP Parties in seeking

information relating to the service companies and telephone numbers for all telephones, cellular

phones, smart phones, and Blackberries that were in the possession of all persons aboard the

*Deepwater Horizon* or the M/V *Damon Bankston* on April 20 and 21, 2010.

Subject to their specific and general objections, the BP Parties will produce information,

to the extent it is available, relating to the service companies and phone numbers for all

telephone numbers for all telephones, cellular phones, smart phones, and Blackberries of which

BP is or was aware for any BP employees on the rig on April 20 and 21, 2010.  The burden of deriving or ascertaining the answer to this interrogatory is substantially the same for MOEX as it is for the BP Parties, and the BP Parties therefore refer MOEX to these documents in accordance with Federal Rule of Civil Procedure 33(d).

To the extent MOEX's interrogatory seeks additional information, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**INTERROGATORY NO. 20:**

Please IDENTIFY, for the month of April 2010, the type of device by which any of YOUR EMPLOYEES on the *DEEP WATER HORIZON* communicated with anyone on shore (wireless phone, satellite phone, Blackberries, or any similar devices), the telephone number of that device, and the COMMUNICATIONS provider for that telephone number, and the PERSON to whom that device belonged or was assigned.

**RESPONSE TO INTERROGATORY NO. 20:**

The BP Parties object to this interrogatory to the extent that it calls for the production of information outside the knowledge, custody or control of the BP Parties.

Subject to their specific and general objections, the BP Parties will produce information to the extent it is available, relating to the service providers, telephone numbers, and identifying information (to the extent known) for all for all telephones, cellular phones, smart phones, and Blackberries of which BP is or was aware for any BP employees on the rig during the month of April 2010.

To the extent MOEX's interrogatory seeks additional information, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**INTERROGATORY NO. 21:**

Did YOU confirm that all relevant lab test results had been obtained and considered by the HALLIBURTON in-house cementing engineer before cement placement proceeded at the MACONDO WELL, and if so, DESCRIBE in detail how you performed that confirmation including the IDENTITY of all COMMUNICATIONS or DOCUMENTS RELATED TO such confirmation.

**RESPONSE TO INTERROGATORY NO. 21:**

The BP Parties object to this interrogatory on the grounds that it is comprised of multiple discrete subparts that count as individual interrogatories under Fed. R. Civ. P. 33.  The BP Parties object to this interrogatory on the grounds that (i) MOEX's use of the phrases "all relevant lab test results" and "obtained and considered" is vague, ambiguous, and undefined; and (ii) it seeks information more readily available from other parties in the litigation, such as the Halliburton Defendants.

Subject to their specific and general objections, the BP Parties state that they contracted with Halliburton for it to provide cementing services for the Macondo Well.  Before the cement job on the production interval on April 19-20, 2010, the BP Parties communicated with and met with Halliburton on numerous occasions in March and April 2010 regarding the status of Halliburton's laboratory testing on the cement slurry.  Halliburton, however, did not raise any issues with the results of its testing with the BP Parties.  Further, Halliburton did not provide the BP Parties with all of its testing results.  As a result, BP relied on Halliburton to provide a suitable cement slurry and did not request additional cement testing beyond the testing recommended by Halliburton.  The March and April 2010 communications are produced, among other places, at Bates Nos. BP-HZN-2179MDL00243096; BP-HZN-2179MDL00247602; BP-HZN-2179MDL00247590; BP-HZN-2179MDL00249820; BP-HZN-2179MDL00250018; BP-HZN-2179MDL00250113; BP-HZN-2179MDL00250539; BP-HZN-2179MDL00250613; BP-HZN-2179MDL00250624; BP-HZN-2179MDL00250637; BP-HZN-2179MDL00250690; BP-

HZN-2179MDL00250719; BP-HZN-2179MDL00250722; BP-HZN-2179MDL00250724; BP-HZN-2179MDL00250740; BP-HZN-2179MDL00250777; BP-HZN-2179MDL00250778; BP-HZN-2179MDL00041325; BP-HZN-2179MDL00004274; BP-HZN-2179MDL00022599; BP-HZN-MBI00171149; BP-HZN-MBI00171150; BP-HZN-MBI00171151.   Accordingly, the burden of deriving or ascertaining the answer to this interrogatory is substantially the same for MOEX as it is for the BP Parties, and the BP Parties therefore refer MOEX to these documents in accordance with Federal Rule of Civil Procedure 33(d).

To the extent MOEX's interrogatory seeks additional information, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**INTERROGATORY NO. 22:**

DESCRIBE in detail what quality assurance YOU did to ensure that potential flaws and weaknesses in the cement slurry design for the MACONDO WELL were identified.

**RESPONSE TO INTERROGATORY NO. 22:**

The BP Parties object to this interrogatory because the MOEX's use of the phrases "quality assurance" and "potential flaws and weaknesses in the cement slurry design" is vague, ambiguous, and undefined.

Subject to their specific and general objections, the BP Parties state that they contracted with Halliburton for it to provide cementing services for the Macondo well.  Before the cement job on the production interval on April 19-20, 2010, the BP Parties communicated with and met with Halliburton on numerous occasions in March and April 2010 regarding Halliburton's cement slurry design on the cement slurry.  Halliburton, however, did not raise any issues with the results of its testing with the BP Parties.  Further, Halliburton did not provide the BP Parties with all of its testing results.  As a result, BP relied on Halliburton to provide a suitable cement

slurry and did not request additional cement testing beyond the testing recommended by Halliburton. The March and April 2010 communications are produced, among other places, at Bates Nos. BP-HZN-2179MDL00243096; BP-HZN-2179MDL00247602; BP-HZN-2179MDL00247590; BP-HZN-2179MDL00249820; BP-HZN-2179MDL00250018; BP-HZN-2179MDL00250113; BP-HZN-2179MDL00250539; BP-HZN-2179MDL00250613; BP-HZN-2179MDL00250624; BP-HZN-2179MDL00250637; BP-HZN-2179MDL00250690; BP-HZN-2179MDL00250719; BP-HZN-2179MDL00250722; BP-HZN-2179MDL00250724; BP-HZN-2179MDL00250740; BP-HZN-2179MDL00250777; BP-HZN-2179MDL00250778; BP-HZN-2179MDL00041325; BP-HZN-2179MDL00004274; BP-HZN-2179MDL00022599; BP-HZN-MBI00171149; BP-HZN-MBI00171150; BP-HZN-MBI00171151. Accordingly, the burden of deriving or ascertaining the answer to this interrogatory is substantially the same for MOEX as it is for the BP Parties, and the BP Parties therefore refer MOEX to these documents in accordance with Federal Rule of Civil Procedure 33(d).

To the extent MOEX's interrogatory seeks additional information, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**INTERROGATORY NO. 23:**

DESCRIBE in detail what lab tests of the cement YOU reviewed and relied upon for the MACONDO WELL, and DESCRIBE in detail why you did not ask for further tests.

**RESPONSE TO INTERROGATORY NO. 23:**

The BP Parties object to this interrogatory on the grounds that it is comprised of multiple discrete subparts that count as individual interrogatories under Fed. R. Civ. P. 33. The BP Parties object to this interrogatory because MOEX's use of the phrase "reviewed and relied upon" is vague, ambiguous, and undefined.

22

Subject to their specific and general objections, the BP Parties state that they contracted with Halliburton for it to provide cementing services for the Macondo well.  Before the cement job on the production interval on April 19-20, 2010, the BP Parties received laboratory reports summarizing some of the testing performed by Halliburton on March 8th, April 1st, and April 15th-19th.  These laboratory reports are produced at Bates Nos. BP-HZN-2179MDL00243101; BP-HZN-2179MDL00247592;  BP-HZN-2179MDL00249842;  BP-HZN-2179MDL00250616; BP-HZN-2179MDL00250691 - BP-HZN-2179MDL00250695;  BP-HZN-2179MDL00250726; BP-HZN-2179MDL00250742;  BP-HZN-2179MDL00041372;  BP-HZN-2179MDL00041326. The BP Parties reviewed and relied on at least the pump time and compressive strength testing results communicated by Halliburton.  Halliburton, however, did not raise any issues with the results of its testing with the BP Parties.  Further, Halliburton did not provide the BP Parties with all of its testing results.  As a result, BP relied on Halliburton to provide a suitable cement slurry and did not request additional cement testing beyond the testing recommended by Halliburton. The March and April 2010 communications are produced, among other places, at Bates Nos. BP-HZN-2179MDL00243096;  BP-HZN-2179MDL00247602;  BP-HZN-2179MDL00247590;  BP-HZN-2179MDL00249820;  BP-HZN-2179MDL00250018;  BP-HZN-2179MDL00250113;  BP-HZN-2179MDL00250539;  BP-HZN-2179MDL00250613;  BP-HZN-2179MDL00250624;  BP-HZN-2179MDL00250637;  BP-HZN-2179MDL00250690;  BP-HZN-2179MDL00250719;  BP-HZN-2179MDL00250722;  BP-HZN-2179MDL00250724;  BP-HZN-2179MDL00250740;  BP-HZN-2179MDL00250777;  BP-HZN-2179MDL00250778;  BP-HZN-2179MDL00041325;  BP-HZN-2179MDL00004274;  BP-HZN-2179MDL00022599;  BP-HZN-MBI00171149;  BP-HZN-MBI00171150; BP-HZN-MBI00171151.  Accordingly, the burden of deriving or ascertaining the answer to this interrogatory is substantially the same for MOEX as it is for the BP Parties,

and the BP Parties therefore refer MOEX to these documents in accordance with Federal Rule of Civil Procedure 33(d).

To the extent MOEX's interrogatory seeks additional information, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**INTERROGATORY NO. 24:**

DESCRIBE in detail why YOUR MACONDO WELL team allowed the cement placement to proceed on April 19 and 20, 2010 after your review of lab tests and results.

**RESPONSE TO INTERROGATORY NO. 24:**

The BP Parties object to this interrogatory because MOEX's use of the phrases "allowed the cement placement to proceed" and "after your review of lab tests and results" is vague, ambiguous, and undefined.

Subject to their specific and general objections, the BP Parties state that they contracted with Halliburton for it to provide cementing services for the Macondo Well.  Before the cement job on the production interval on April 19-20, 2010, the BP Parties received laboratory reports summarizing some of the testing performed by Halliburton on March 8th, April 1st, and April 15th-19th.  These laboratory reports are produced at Bates Nos. BP-HZN-2179MDL00243101; BP-HZN-2179MDL00247592;  BP-HZN-2179MDL00249842;  BP-HZN-2179MDL00250616; BP-HZN-2179MDL00250691 - BP-HZN-2179MDL00250695;  BP-HZN-2179MDL00250726; BP-HZN-2179MDL00250742;  BP-HZN-2179MDL00041372;  BP-HZN-2179MDL00041326. The BP Parties reviewed and relied on at least the pump time and compressive strength testing results communicated by Halliburton.  Halliburton, however, did not raise any issues with the results of its testing with the BP Parties.  Further, Halliburton did not provide the BP Parties with all of its testing results and the BP Parties were not able to review all of the laboratory tests and

results.  As a result, BP relied on Halliburton to provide a suitable cement slurry and did not request additional cement testing beyond the testing recommended by Halliburton.  The March and April 2010 communications are produced, among other places, at Bates Nos. BP-HZN-2179MDL00243096;  BP-HZN-2179MDL00247602;  BP-HZN-2179MDL00247590;  BP-HZN-2179MDL00249820;  BP-HZN-2179MDL00250018;  BP-HZN-2179MDL00250113;  BP-HZN-2179MDL00250539;  BP-HZN-2179MDL00250613;  BP-HZN-2179MDL00250624;  BP-HZN-2179MDL00250637;  BP-HZN-2179MDL00250690;  BP-HZN-2179MDL00250719;  BP-HZN-2179MDL00250722;  BP-HZN-2179MDL00250724;  BP-HZN-2179MDL00250740;  BP-HZN-2179MDL00250777;  BP-HZN-2179MDL00250778;  BP-HZN-2179MDL00041325;  BP-HZN-2179MDL00004274;   BP-HZN-2179MDL00022599;   BP-HZN-MBI00171149;   BP-HZN-MBI00171150; BP-HZN-MBI00171151.  Accordingly, the burden of deriving or ascertaining the answer to this interrogatory is substantially the same for MOEX as it is for the BP Parties, and the BP Parties therefore refer MOEX to these documents in accordance with Federal Rule of Civil Procedure 33(d).

To the extent MOEX's interrogatory seeks additional information, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

## REQUEST FOR PRODUCTION OF DOCUMENTS

### REQUEST FOR PRODUCTION NO. 1:

Please produce all DOCUMENTS reviewed by YOU in connection with preparation of YOUR responses to each of the Interrogatories set forth above.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 1:

The BP parties object to this request on the grounds that it is unreasonable, vague, overbroad, and unduly burdensome in that it seeks the production of every document identified

in connection with the BP Parties extensive efforts to preserve, collect, and review information regardless of the content of such documents, and that it seeks documents that are either being produced in response to other specific requests or documents that are necessarily irrelevant, not responsive to any specific request, and/or for which the BP Parties have stated objections to producing in either their general objections on in response to specific requests.

**REQUEST FOR PRODUCTION NO. 2:**

Please produce all DOCUMENTS RELATING TO required or recommended practices to prevent or minimize pollution during the course of drilling or operating a well.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

The BP Parties object to this request on the grounds that it is overbroad and unduly burdensome to the extent that it seeks the production of "all" documents related to recommended practices to prevent or minimize pollution during the course of drilling or operating a well.  The BP Parties object to this request as overbroad and unduly burdensome to the extent that it seeks documents without limitation to the location of the well, time the well was drilled or well conditions.

Subject to their specific and general objections, the BP Parties will conduct a reasonable search of non-privileged documents for documents relating to required or recommended practices to prevent or minimize pollution that were applicable to the drilling and operation of the Macondo Well, and will produce responsive documents identified as a result of that search, including documents previously produced in response to Request for Production Nos. 54, 142, 153, and 166 in The BP Parties' Responses and Objections to Plaintiffs' Interrogatories, Requests for Production, and Requests for Admission, served on All Counsel on December 8, 2010.

To the extent MOEX's request seeks additional documents, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**REQUEST FOR PRODUCTION NO. 3:**

Please produce all DOCUMENTS RELATING TO planned activities, and activities undertaken, on the *DEEP WATER HORIZON* during the period from April 14 through April 25, 2010.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

The BP Parties object to this request to the extent that it purports to call for documents in the possession of other parties.

Subject to their specific and general objections, the BP Parties will conduct a search of non-privileged documents for documents relating to planned drilling and operation activities, and drilling and operation activities undertaken, on the *Deepwater Horizon* during the period from April 14, 2010, through April 25, 2010, and will produce responsive documents identified as a result of that search.

To the extent MOEX's request seeks additional documents, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**REQUEST FOR PRODUCTION NO. 4:**

Please produce all DOCUMENTS reflecting, or considered by YOU in connection with, pre-cement job evaluation of the design and volume of cement to be used for the final production casing string.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 4:

The BP Parties object to this request on the grounds that MOEX's use of the phrases "pre-cement job evaluation" and "design and volume of cement" is vague, ambiguous, and undefined.

Subject to their specific and general objections, the BP Parties will conduct a search of non-privileged documents for documents reflecting Halliburton cement recommendations, Opticem reports, laboratory reports and correspondence for the production interval of the Macondo Well, and will produce responsive documents identified as a result of that search.

To the extent MOEX's request seeks additional documents, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.


## REQUEST FOR PRODUCTION NO. 5:

Please produce all DOCUMENTS reflecting, or considered by YOU in connection with, pre-cement job evaluation of the potential for contamination of the cement job for the final production casing string.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 5:

The BP Parties object to this request on the grounds that MOEX's use of the phrases "pre-cement job evaluation" and "potential for contamination of the cement job" is vague, ambiguous, and undefined.

Subject to their specific and general objections, the BP Parties will conduct a search of non-privileged documents for documents reflecting Halliburton cement recommendations, Opticem reports, laboratory reports and correspondence for the production interval of the Macondo Well, and will produce responsive documents identified as a result of that search.

28

To the extent MOEX's request seeks additional documents, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**REQUEST FOR PRODUCTION NO. 6:**

Please produce all DOCUMENTS reflecting, or considered by YOU in connection with, pre-cement job evaluation of the amount of time that should elapse in order to permit the cement job on the final casing string to strengthen before commencing further operations on the MACONDO WELL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

The BP Parties object to this request on the grounds that MOEX's use of the phrases "pre-cement job evaluation" and "permit the cement job on the final casing string to strengthen" is vague, ambiguous, and undefined.

Subject to their specific and general objections, the BP Parties will conduct a search of non-privileged documents for documents reflecting Halliburton cement recommendations, Opticem reports, laboratory reports and correspondence for the production interval of the Macondo Well, and will produce responsive documents identified as a result of that search.

To the extent MOEX's request seeks additional documents, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**REQUEST FOR PRODUCTION NO. 7:**

Please produce all DOCUMENTS reflecting policies, practices or procedures for when (and under what circumstances) and how a float collar should be tested to determine whether it has converted properly or has been damaged during conversion attempts.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

The BP Parties object to this request on the grounds that MOEX's use of the phrases "policies, practices or procedures" and "how a float collar should be tested to determine whether it has converted properly or has been damaged during conversion attempts" is vague, ambiguous, and undefined.

Subject to their specific and general objections, the BP Parties will conduct a search of non-privileged documents for BP defined or recommended practices relating to float equipment, and will produce responsive documents identified as a result of that search.

To the extent MOEX's request seeks additional documents, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**REQUEST FOR PRODUCTION NO. 8:**

WITH RESPECT TO the MACONDO WELL, please produce all DOCUMENTS reflecting discussion, or evaluation, of whether there was, or would be, sufficient differential pressure between the cement in the final casing string and the fluid in the annulus to determine whether the float collar was properly converted.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

The BP Parties object to this request on the grounds that MOEX's use of the phrase "sufficient differential pressure between the cement in the final casing string and the fluid in the annulus" is vague, ambiguous, and undefined.

Subject to their specific and general objections, the BP Parties will conduct a search of non-privileged documents for documents reflecting Halliburton cement recommendations, Opticem reports, laboratory reports and correspondence, and will produce responsive documents identified as a result of that search.

30

To the extent MOEX's request seeks additional documents, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**REQUEST FOR PRODUCTION NO. 9:**

Please produce all DOCUMENTS reflecting policies, practices or procedures REGARDING displacement of kill weight mud to seawater before a well has successfully passed a negative test.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

The BP Parties object to this request to the extent that it purports to call for documents in the possession of other parties.

Subject to their specific and general objections, the BP Parties will conduct a search of non-privileged documents for documents reflecting policies, practices or procedures regarding displacement of mud to seawater, and will produce responsive documents identified as a result of that search.

To the extent MOEX's request seeks additional documents, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**REQUEST FOR PRODUCTION NO. 10:**

Please produce all DOCUMENTS reflecting policies, practices or procedures in connection with, or concerns or issues REGARDING, the conduct of simultaneous activities on a rig, MODU or platform that might interfere with or prevent monitoring of fluid gains or losses in a well.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

The BP Parties object to this request to the extent that it purports to call for documents in the possession of other parties.  The BP Parties further object to this request as vague and

31

ambiguous in calling for the production of information reflecting "concerns or issues regarding" these topics.

Subject to their specific and general objections, the BP Parties will conduct a search of non-privileged documents for documents reflecting policies, practices or procedures in connection with the conduct of simultaneous activities on a rig, MODU platform, including where those activities might interfere with or prevent monitoring of fluid gains or losses in a well, and will produce responsive documents identified as a result of that search.

To the extent MOEX's request seeks additional documents, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**REQUEST FOR PRODUCTION NO. 11:**

Please produce all of YOUR temporary abandonment plans, and drafts of such plans, for any DEEPWATER WELL in the Gulf of Mexico during the last ten years.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

The BP Parties object to this request on the grounds that it is overbroad and unduly burdensome in calling for the production of drafts of all temporary abandonment plans for any deepwater well in the Gulf of Mexico during the last ten years.

Subject to their specific and general objections, the BP Parties will produce those temporary abandonment procedures filed with the Bureau of Ocean Energy Management, Regulation and Enforcement (BOEM) from 2005 through 2010 for deepwater wells in the Gulf of Mexico (BP-HZN-OSC-00005668 - BP-HZN-OSC-00006249).

To the extent MOEX's request seeks additional documents, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**REQUEST FOR PRODUCTION NO. 12:**

Please produce all DOCUMENTS discussing, or reflecting, evaluation by YOU of a change from a long string design to a tie-back with liner during the course of drilling any DEEPWATER WELL in the Gulf of Mexico during the last ten years.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

The BP Parties object to this request on the grounds that it is overbroad and unduly burdensome to the extent that it seeks the production of "all" documents discussing or reflecting evaluation of a change from a long string design to a tie-back with liner during the course of drilling any Deepwater Well in the Gulf of Mexico during the last ten years.

Subject to their specific and general objections, the BP Parties will conduct a reasonable search of non-privileged documents related the evaluation of casing design options during the course of drilling the Macondo Well, and will produce documents identified as a result of that search, including documents previously identified in response to Anadarko Petroleum Corporation's Interrogatories and Requests for Production of Documents ("Anadarko's Discovery requests") Interrogatory No. 8.

To the extent MOEX's request seeks additional documents, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**REQUEST FOR PRODUCTION NO. 13:**

Please produce all DOCUMENTS discussing, reflecting or RELATING TO YOUR decision not to conduct a cement bond log for the MACONDO WELL and DOCUMENTS RELATING TO or IDENTIFYING any PERSONS involved in that decision

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

The BP Parties object to the extent that this request for production attempts to ask them to identify persons, a request that is only proper in the form of an interrogatory under Fed. R. Civ. P. 33.

Subject to their specific and general objections, the BP Parties will conduct a search of non-privileged documents for documents addressing whether to conduct a cement bond log for the production interval of the Macondo Well, and will produce responsive documents identified as a result of that search.

To the extent MOEX's request seeks additional documents, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**REQUEST FOR PRODUCTION NO. 14:**

Please produce all DOCUMENTS evidencing or RELATING TO YOUR internal rules and procedures for deepwater drilling of wells.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

The BP Parties object to this request on the grounds that MOEX's use of the phrase "internal rules and procedures for deepwater drilling of wells" is vague, undefined, and overbroad, especially in light of the fact that it is not limited to any subject matter or relevant inquiry; it is argumentative; and it is duplicative and cumulative of several other discovery requests.

Subject to their specific and general objections, the BP Parties state that they have produced, or will produce, their defined and/or recommended practices for drilling operations in the Gulf of Mexico.

To the extent MOEX's request seeks additional documents, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**REQUEST FOR PRODUCTION NO. 15:**

Please produce all DOCUMENTS, including invoices, RELATING TO YOUR response activities RELATED TO the spill resulting from the INCIDENT.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

The BP Parties object to this request on the grounds that it is unreasonable and unduly burdensome to the extent it can be read to request "all documents" that were generated in any way "related to" the spill response.

Subject to their specific and general objections, the BP Parties will conduct a reasonable search of non-privileged documents for documents sufficient to show the costs incurred for response activities, and will produce responsive documents identified as a result of that search.

To the extent MOEX's request seeks additional documents, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**REQUEST FOR PRODUCTION NO. 16:**

Please produce all DOCUMENTS RELATING TO training of YOUR engineers who design DEEPWATER WELLS, including but not limited to training required before being hired by BP as well as training given by or at BP after hire.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

The BP Parties object to this request on the grounds that it is overbroad and unduly burdensome to the extent that it seeks the production of "all" documents relating to training of

BP engineers who design Deepwater Wells without any limit as to location, time or well condition.

Subject to their specific and general objections, the BP Parties will conduct a reasonable search of non-privileged documents relating to training of BP engineers who were involved in the design of the Macondo Well and will produce responsive documents identified as a result of that search, including documents previously produced in response to Request for Production Nos. 18, 142, 144, and 160 in The BP Parties' Responses and Objections to Plaintiffs' Interrogatories, Requests for Production, and Requests for Admission, served on All Counsel on December 8, 2010.

To the extent MOEX's request seeks additional documents, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**REQUEST FOR PRODUCTION NO. 17:**

Please produce all DOCUMENTS RELATING TO training of YOUR personnel who act as well site leaders on DEEPWATER WELLS, including but not limited to training required before being hired by BP as well as training given by or at BP after hire.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

The BP Parties object to this request on the grounds that it is overbroad and unduly burdensome to the extent that it seeks the production of "all" documents relating to training of well site leaders on Deepwater Wells without any limit as to location, time or well condition.

Subject to their specific and general objections, the BP Parties will conduct a reasonable search of non-privileged documents relating to training of BP well site leaders who were involved in the design of the Macondo Well and will produce responsive documents identified as a result of that search, including documents previously produced in response to Request for

Production Nos 18, 142, 144 and 160 in The BP Parties' Responses and Objections to Plaintiffs' Interrogatories, Requests for Production, and Requests for Admission, served on All Counsel on December 8, 2010.

To the extent MOEX's request seeks additional documents, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**REQUEST FOR PRODUCTION NO. 18:**

Please produce all DOCUMENTS RELATING TO training of YOUR personnel who act as well team leaders on DEEPWATER WELLS, including but not limited to training required before being hired by BP as well as training given by or at BP after hire.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

The BP Parties object to this request on the grounds that it is overbroad and unduly burdensome to the extent that it seeks the production of "all" documents relating to training of well team leaders on Deepwater Wells without any limit as to location, time or well condition.

Subject to their specific and general objections, the BP Parties will conduct a reasonable search of non-privileged documents relating to training of BP well team leaders who were involved in the design of the Macondo Well and will produce responsive documents identified as a result of that search, including documents previously produced in response to Request for Production Nos. 18, 142, 144 and 160 in The BP Parties' Responses and Objections to Plaintiffs' Interrogatories, Requests for Production, and Requests for Admission, served on All Counsel on December 8, 2010.

To the extent MOEX's request seeks additional documents, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**REQUEST FOR PRODUCTION NO. 19:**

Please produce all DOCUMENTS RELATING TO the qualifications of YOUR personnel who designed the MACONDO WELL or modified its design during drilling, or acted as well site leaders or well team leaders.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

The BP Parties object to this request on the grounds that it is overbroad and unduly burdensome to the extent that it seeks the production of "all" documents relating to qualifications of personnel who designed the Macondo Well, modified its design during drilling or acted as well site leaders or well team leaders.

Subject to their specific and general objections, the BP Parties will conduct a reasonable search of non-privileged documents relating to qualifications of BP personnel who designed the Macondo Well, modified its design during drilling or acted as well site leaders or well team leaders and will produce responsive documents identified as a result of that search, including documents previously produced in response to Request for Production Nos. 18, 142, 144 and 160 in The BP Parties' Responses and Objections to Plaintiffs' Interrogatories, Requests for Production, and Requests for Admission, served on All Counsel on December 8, 2010.

To the extent MOEX's request seeks additional documents, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**REQUEST FOR PRODUCTION NO. 20:**

Please produce all DOCUMENTS RELATING TO the specific training of YOUR personnel, before or after hire by BP, who designed the MACONDO WELL or modified its design during drilling, or acted as well site leaders or well team leaders.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

The BP Parties object to this request on the grounds that it is overbroad and unduly burdensome to the extent that it seeks the production of "all" documents relating to the training of the personnel who designed the Macondo Well, modified its design during drilling or acted as well site leaders or well team leaders.  The BP Parties object to this request to the extent it is duplicative of Request for Production Nos. 16, 17 and 18.

Subject to their specific and general objections, the BP Parties will conduct a reasonable search of non-privileged documents relating to the training of BP personnel who designed the Macondo Well, modified its design during drilling or acted as well site leaders or well team leaders and will produce responsive documents identified as a result of that search, including documents previously produced in response to Request for Production Nos. 18, 142, 144 and 160 in The BP Parties' Responses and Objections to Plaintiffs' Interrogatories, Requests for Production, and Requests for Admission, served on All Counsel on December 8, 2010.

To the extent MOEX's request seeks additional documents, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**REQUEST FOR PRODUCTION NO. 21:**

Please produce all telephone logs or records that YOU have, or have obtained from the companies that provided service, for the month of April 2010 that relate to any COMMUNICATIONS devices used by any of YOUR EMPLOYEE on the *DEEP WATER HORIZON* to communicate with anyone on shore (wireless phone, satellite phone, Blackberries, or any similar devices).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

Subject to their specific and general objections, the BP Parties will conduct a search of non-privileged documents for communications made to or from the *Deepwater Horizon* from

April 1, 2010 to April 20, 2010, and will produce responsive documents identified as a result of that search.  Further, the BP Parties refer MOEX to the documents identified in response to Anadarko Request for Production No. 6.

To the extent MOEX's request seeks additional documents, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**REQUEST FOR PRODUCTION NO. 22:**

Please produce all DOCUMENTS that are or RELATE TO internal discussions (including emails) about what YOU would be or would not be telling MOEX OFFSHORE, MOEX USA or ANADARKO about the drilling process, conditions, changes, progress, or problems at the MACONDO WELL, prior to May 1, 2010.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

The BP Parties object on the grounds that this request is overbroad, unduly burdensome, vague, and ambiguous, especially with respect to the phrases "RELATE TO" and "drilling process."  The BP Parties also object that this request is argumentative especially with respect to the phrase "what YOU would or would not be telling MOEX OFFSHORE, MOEX USA or ANADARKO."

**REQUEST FOR PRODUCTION NO. 23:**

Please produce all DOCUMENTS that are or RELATE TO "stop the job" incidents called for by BP EMPLOYEES or by other workers on MODU rigs used, leased, or contracted by BP that RELATED TO well kicks, to movement of mud on the rig (either between pits or overboard).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

The BP Parties object to this request on the grounds that it is vague, ambiguous, overbroad, and unduly burdensome in that it calls for the production of all documents relating to

"stop the job" incidents called for by BP employees or by other workers on MODU rigs used, leased, or contracted by BP.

Subject to their specific and general objections, the BP Parties will conduct a search of non-privileged documents for documents relating to instances in which individuals onboard a rig exercised their ability to stop the job in connection with simultaneous activities on the rig, including the movement of mud on the rig, and will produce responsive documents identified as a result of that search.

To the extent MOEX's request seeks additional documents, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**REQUEST FOR PRODUCTION NO. 24:**

WITH RESPECT TO YOUR December 8, 2010 response to PLAINTIFFS' Interrogatory No. 29, please produce all DOCUMENTS that are or RELATE TO internal discussions (including emails) YOU had REGARDING "BLOWOUT PREVENTER[s] that did not seal a well as intended" (whether RELATING TO the Ixtoc I well, the Silvertip well, the AC 901 well, the WR 543 well, or any other well that had issues with BLOWOUT PREVENTERS).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

The BP Parties object to this request as vague and ambiguous to the extent it references Plaintiffs' Interrogatory No. 29, which relates to cementing, not blowout preventers.   For purposes of this response, the BP Parties infer that this request refers to Plaintiffs' Interrogatory No. 30.

The BP Parties also object to this request as overbroad, unduly burdensome and not likely to lead to the discovery of admissible evidence to the extent it seeks all correspondence or documents relating to such correspondence regarding a blowout preventer that failed to seal a well as intended regardless of whether such incident was related to a blowout that resulted in a

loss-of-well-control event.   The BP Parties further object to this request because the phrase "issues with blowout preventers" as used in this request is vague, ambiguous, and undefined, and could call for many different interpretations.

Subject to their specific and general objections, the BP Parties will conduct a reasonable search of non-privileged documents for documents relating to the failure of the blowout preventer to work as intended for the Ixtoc I exploratory well, the Silvertip well, the AC 901 well, and the WR 543 well, and will produce documents as a result of that search.   BP, however, notes that it was not the operator for any of these wells.

To the extent MOEX's request seeks additional documents, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**REQUEST FOR PRODUCTION NO. 25:**

Please produce all DOCUMENTS that RELATE TO other DEEPWATER WELLS drilled by YOU in the last 10 years in which YOU displaced to seawater before locking down the hanger.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

The BP Parties object to this request on the grounds that it is overbroad to the extent that it purports to call for the production of information from worldwide operations for the last ten years.

Subject to their specific and general objections, the BP Parties will produce temporary abandonment procedures which BP has previously produced to the National Commission on the BP Deepwater Horizon Oil Spill and Offshore Drilling, namely those temporary abandonment procedures filed with the Bureau of Ocean Energy Management, Regulation and Enforcement

(BOEM) from 2005 through 2010 for deepwater wells in the Gulf of Mexico (BP-HZN-OSC-00005668 through BP-HZN-OSC-00006249).

To the extent MOEX's request seeks additional documents, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**REQUEST FOR PRODUCTION NO. 26:**

Please produce all DOCUMENTS that are or RELATE TO approval YOU obtained from MMS to displace to seawater and set a cement plug at about 8367 feet (+/-3300' BML) WITH RESPECT TO the MACONDO WELL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

Subject to their specific and general objections, the BP Parties will produce their temporary abandonment application to the MMS and the approval from the MMS thereof.

To the extent MOEX's request seeks additional documents, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**REQUEST FOR PRODUCTION NO. 27:**

Please produce all DOCUMENTS that are or RELATE TO requests YOU have made to MMS to displace to seawater and set a cement plug at +/-3300 feet BML WITH RESPECT TO any DEEPWATER WELL YOU have drilled other than the MACONDO WELL, including but not limited to any denials of such requests.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

The BP Parties object to this request on the grounds that it is overbroad to the extent that it purports to call for the production of information from worldwide operations for the last ten years.

43

Subject to their specific and general objections, the BP Parties will produce temporary abandonment procedures which BP has previously produced to the National Commission on the Deepwater Horizon Oil Spill and Offshore Drilling, namely those temporary abandonment procedures filed with the Bureau of Ocean Energy Management, Regulation and Enforcement (BOEM) from 2005 through 2010 for deepwater wells in the Gulf of Mexico (BP-HZN-OSC-00005668 through BP-HZN-OSC-00006249).

To the extent MOEX's request seeks additional documents, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**REQUEST FOR PRODUCTION NO. 28:**

Please produce all DOCUMENTS pertaining to who has authority on YOUR MODU operations to deviate from YOUR written drilling plans or procedures.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

The BP Parties object to this request on the grounds that MOEX's use of the terms "authority," "deviate" and "written drilling plans or procedures" is vague, ambiguous and undefined as no particular drilling plan or procedure is identified in the request and on the grounds that the request is overbroad and unduly burdensome to the extent it could be read to include the documents generated or maintained by, one or more third parties, such as the Transocean Defendants, the owner and operator of the *Deepwater Horizon*.

Subject to their specific and general objections, the BP Parties will conduct a reasonable search of non-privileged documents for documents setting forth guidelines, processes and/or procedures relating to Memorandum of Change "MOC" and/or dispensation protocols that apply to MODU drilling operations in the Gulf of Mexico, and will produce responsive documents identified as a result of that search.  The BP Parties will also conduct a reasonable search of non-

44

privileged documents for documents maintained through an electronic MOC system known as BizFlow reflecting any BP approved significant change(s) from one or more of the BP Parties' standard procedures or established plans generated on or for the *Deepwater Horizon* or the Macondo well related to drilling operations at the Macondo well, and will produce responsive documents identified as a result of that search.

To the extent MOEX's request seeks additional documents, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.


**REQUEST FOR PRODUCTION NO. 29:**

Please produce any and all interview notes reflecting statements by Mark Hafle following the INCIDENT, including but not limited to interviews conducted by or on behalf of the BP investigation team.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

The BP Parties object to this request to the extent it seeks documents protected by the Attorney-Client privilege or Work Product doctrine.  The BP Parties further object to the extent this request seeks documents not in the BP Parties' possession, custody, or control.

Subject to their specific and general objections, the BP Parties will conduct a search of non-privileged documents for notes of interviews of Mr. Mark Hafle, and will produce responsive documents identified as a result of that search.

To the extent MOEX's request seeks additional documents, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**REQUEST FOR PRODUCTION NO. 30:**

To the extent not previously produced, please produce any DOCUMENTS RELATING TO any activities at or affecting the MACONDO WELL, including but not limited to, any investigations; observations; instructions; assessments; development of protocols, procedures, or "lessons learned" analyses; audits; self-evaluations; summaries of activities, logs, and guidance documents.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

The BP Parties object to this request to the extent it seeks documents protected by the attorney-client privilege or work-product doctrine.  The BP Parties further object to this request as overly broad, unduly burdensome, and lacking particularity in that it calls for the production of all documents relating to any "activities" at or affecting the Macondo well without any reasonable limitation, and regardless of whether conducted by the BP Parties.  The BP Parties further object to this request as lacking particularity to the extent it calls for the BP Parties to make a determination that a particular activity has "affected" the Macondo well.

Subject to their specific and general objections, the BP Parties have previously produced their September 8, 2010 Accident Investigation report and related materials at Bates ranges BP-HZN-MBI00172348 through BP-HZN-MBI 00172394.

To the extent MOEX's request seeks additional documents, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**GENERAL OBJECTIONS**

The BP Parties assert the following objections to each and every one of MOEX's interrogatories and requests for production including any definitions or instructions associated therewith (collectively, "MOEX's Discovery Requests").   These general objections are

46

incorporated by reference into each specific response set forth by the BP Parties and are neither waived nor limited by any specific responses.

1.      The BP Parties object to MOEX's Discovery Requests to the extent they call for information, seek discovery, or attempt to impose any obligations beyond that permitted or authorized by the Federal Rules of Civil Procedure or the Rules and Orders of this Court.

2.      The BP Parties object to MOEX's Discovery Requests to the extent they call for the production of ESI in any manner other than required under Federal Rule of Civil Procedure 34, the Rules and Orders of the Court, and ongoing negotiations and discussions among counsel.

3.      The BP Parties object to MOEX's Discovery Requests to the extent they seek information or documents protected by the attorney-client privilege, the work-product doctrine, the joint defense or common interest privilege, or any other applicable privilege, exemption, or immunity.   The BP Parties will identify specific documents withheld on these grounds in accordance with the schedule set forth in, and provide the information required by, the Court's Pretrial Order #14, and such further Orders of the Court and ongoing negotiations and discussions among counsel.  The BP Parties incorporate their forthcoming privilege logs and all related information into this general objection to the extent necessary to preserve against any waiver of any applicable privilege or immunity from discovery.

4.      The BP Parties object to MOEX's Discovery Requests to the extent they seek information or documents relating to the settlement or potential settlement of disputes on the grounds that such information is not relevant to any party's claim or defense, is not admissible at trial and not reasonably calculated to lead to the discovery of admissible evidence, is protected from disclosure and dissemination under Federal Rule of Evidence 408, and that discovery of

such information would be prejudicial to the efforts of the BP Parties and any opposing parties to resolve their disputes in a fair and efficient manner.

5.      The BP Parties object to MOEX's Discovery Requests to the extent they call for information or documents not within the BP Parties' possession, custody, or control.  All responses are made on behalf of the BP Parties only, are limited to information and documents within the BP Parties' possession, custody, or control.

6.      The BP Parties object to MOEX's Discovery Requests to the extent they are unduly burdensome, duplicative, premature, oppressive, and/or overbroad, including, without limitation, as to subject matter and/or time period, and where compliance with specific requests would be unreasonably difficult as well as prohibitively expensive or time-consuming.

7.      The BP Parties object to MOEX's Discovery Requests to the extent they are not limited to information or documents relevant to any party's claim or defense, or to the extent they seek discovery of information or documents not admissible at trial and not reasonably calculated to lead to the discovery of admissible evidence, including, but not limited to, requests seeking information or documents concerning other incidents, accidents, or other events at BP facilities or locations other than the Macondo well or that are otherwise unrelated to the *Deepwater Horizon*.

8.      The BP Parties object to MOEX's Discovery Requests to the extent they seek the disclosure of information or documents that contain or constitute trade secrets, proprietary information, or other confidential business information without appropriate restrictions on disclosure and dissemination that are embodied in a protective order entered by the Court.

9.      The BP Parties object to MOEX's Discovery Requests to the extent they seek the disclosure of information or documents that would violate the rights of privacy of third parties,

48

or any similar judicially recognized protection or privilege, including, but not limited to, restrictions imposed in connection with proceedings before the MBI, and the protections of the Health Insurance Portability and Accountability Act ("HIPAA"), or that would result in disclosure of any confidential information or conduct without appropriate restrictions on disclosure and dissemination that are embodied in a protective order entered by the Court.

10.     The BP Parties object to the requests to the extent they seek documents already in the possession of MOEX or equally available to MOEX from sources other than the BP Parties, including publicly available sources.

11.     The BP Parties object to MOEX's "Definitions" to the extent they seek to impose any meaning or interpretation onto the requests other than that evident from the plain and ordinary meaning of the words used therein.  The BP Parties further object to, and will read and respond to, MOEX's "Definitions" (labeled to correspond to MOEX's list) as follows:

(i)     MOEX's definition of "Deepwater Horizon" is vague and overbroad; it includes any equipment used in connection with the exploration for or production of oil.  The BP Parties will read and respond to MOEX's requests with the understanding that the term "Deepwater Horizon" means the vessel of that name and that, unless expressly otherwise specified, concerns the operation of the *Deepwater Horizon* in connection with the Macondo well.

(j)     MOEX's definition of "Macondo well" is vague and overbroad; it includes a broad geographic area and is not limited to any well, much less the well at issue in this litigation.  The BP Parties will read and respond to MOEX's requests with the understanding that the term "Macondo well" means the MC 252 #1 Macondo well.

(k)     MOEX'S definition of "Deepwater Well" is unobjectionable.

49

(l)      MOEX's definition of "incident" is overly narrow; it is limited to the explosion that occurred on the *Deepwater Horizon*.  The BP Parties will read and respond to MOEX's requests with the understanding that the term "Incident" means the loss of control of the Macondo well and the explosions and fire aboard, and resulting sinking of, the *Deepwater Horizon*.

(m)      MOEX's definitions of "BOP" and "blowout preventer" is vague and overbroad; they include any equipment used to control any well  The BP Parties will read and respond to MOEX's requests with the understanding that the terms "BOP" and "blowout preventer" means a blowout preventer like the one in use at the Macondo well at the time of the incident.

(n)      MOEX's definition of "Deepwater Horizon Blowout Preventer" is unobjectionable.

(o)      MOEX's definitions of "you," "your," and "BP" are extremely vague and overbroad; they include a vast array of entities that have had no involvement whatsoever in the events giving rise to this litigation, and confusingly and improperly sweep in hundreds of thousands of individuals as opposed to the corporate entities that have been named as defendants in this litigation.   The BP Parties will read and respond to MOEX's requests with the understanding that the terms you," "your," and "BP" mean one or more of the BP Parties, as the context requires.

(p, q, r, s, t, u)      MOEX's definitions of "Anadarko," "Transocean," "Cameron," "MOEX Offshore," "MOEX USA," and "Halliburton," are similarly vague, overbroad, and confusing.  The BP Parties will read and respond to MOEX's requests with the understanding that these terms refer to the respective corporate entities commonly referred to by

these names that have been named in this litigation and played some role in the events relevant to this litigation.

(v)      MOEX's definition of "Plaintiffs" is unobjectionable.

(w)      MOEX's definition of "person" is vague and overbroad; it includes any number of things that are not people in any sense of the word.  The BP Parties will read and respond to MOEX's requests with the understanding that the term "person" means a person.

(x)      MOEX's definition of "employee" is vague and overbroad; it includes any number of persons who were or are not employees.  The BP Parties will read and respond to MOEX's requests with the understanding that the term "employee" means an employee.

(y)      MOEX's definition of "communication" is vague and overbroad; it includes practically everything written or said by any person, regardless of whether it was actually communicated in any meaningful sense.  The BP Parties will read and respond to MOEX's requests with the understanding that the term "communication" means talking to someone or sending them a message of some sort.

(z)      MOEX's definition of "meeting" is vague and overbroad; it includes any number of things that no person would reasonably conclude constitute a meeting, such as a casual greeting exchanged in a hallway, sending an e-mail, or posting a message on a bulletin board.  The BP Parties will read and respond to MOEX's requests with the understanding that the term "meeting" refers to a gathering of two or more people.  It does not include electronic communications unless specified.

(aa)      MOEX's definition of "document" is improper to the extent it includes items outside the scope of Federal Rule of Civil Procedures 34(a)(1)(A).  The BP Parties will

read and respond to MOEX's requests with the understanding that the term "document" means the items listed in Federal Rule of Civil Procedure 34(a)(1)(A).

(bb)   MOEX's definition of "electronically stored information" or "ESI" is improper to the extent it includes items outside the scope of Federal Rule of Civil Procedures 34(a)(1)(A).  The BP Parties will read and respond to MOEX's requests with the understanding that the term "electronically stored information" or "ESI" means the electronically stored information listed in Federal Rule of Civil Procedure 34(a)(1)(A).

(cc)   MOEX's definition of "computer" is vague and overbroad; it includes every device that processes or stores information, including any number of things that no person would reasonably conclude constitute a computer, such as a clock, voice recorder, camera, or cell phone.  The BP Parties will read and respond to MOEX's requests with the understanding that the term "computer" means a mainframe, desktop, laptop, or tablet computer.

(dd)   MOEX's definition of "control" is improper to the extent it seeks to impose any obligation on the BP Parties beyond that imposed under Federal Rule of Civil Procedure 34(a)(1).  The BP Parties will read and respond to MOEX's requests with the understanding that the term "control" means "possession, custody, or control" as used in Federal Rule of Civil Procedure 34(a)(1).

(ee)   MOEX's definitions of "relating to," "related to," "regarding," "concerning," and "with respect to," are vague and overbroad; they render these and innumerable other words void of any independent meaning.  The BP Parties will read and respond to MOEX's requests with the understanding that these terms have their plain and ordinary meaning in standard English usage.

(ff, gg, hh)      MOEX's definition of "identify" is overbroad; it includes a request for detailed information far beyond whatever may be reasonably necessary to distinguish one individual, one document, or any ESI, from any other.  The BP Parties will read and respond to MOEX's requests with the understanding that the term "identify" means, in the context of an individual, an individual's name, and where the context reasonably requires, his or her employer and title, and in the context of a document or ESI, a Bates number or other available information necessary to isolate the document or ESI.

(ii)      MOEX's definition of "describe" is overbroad; it includes a request for detailed information far beyond whatever may be reasonably necessary to accurately give a description.  The BP Parties will read and respond to MOEX's requests with the understanding that the term "describe" means to provide a concise description reasonably calculated to allow the identification of a thing or its characteristics relevant for purposes of this litigation as the context requires.

(jj)      MOEX's definition of "state" is overbroad; it includes a request for detailed information far beyond whatever may be reasonably necessary to accurately make a statement.  The BP Parties will read and respond to MOEX's requests with the understanding that the term "state" means to truthfully and accurately provide MOEX with knowledge or information.

(kk)      MOEX's definitions of "basis," "bases," "sources," "sources of knowledge," "sources of information," or "source(s) of information or belief" are overbroad; it includes a request for detailed information far beyond whatever may be reasonably necessary to accurately identify the source or basis of a statement.  The BP Parties will read and respond to MOEX's requests with the understanding that the terms "basis," "bases," "sources," "sources of

53

knowledge," "sources of information," or "source(s) of information or belief" mean to identify, when possible and appropriate, the person(s) with direct knowledge about the provided information and the identity of a corresponding document.

(ll)     MOEX's definitions of "and" and "or" is vague, overbroad, and confusing; they render the words equivalent and therefore deprive them of independent meaning and inconsistent with standard English usage.  The BP Parties will read and respond to MOEX's requests with the understanding that the term "and" means and, and the term "or" means or.

(mm)   MOEX's definition of "any" is vague, overbroad, and confusing; it renders the word unnecessarily ambiguous and necessarily converts many of MOEX's requests into nonsensical requests for duplicative information.   The BP Parties will read and respond to MOEX's requests with the understanding that the term "any" means any.

(nn)     MOEX's definition of "including" is unobjectionable.

(oo)     MOEX's definitions of "each" and "every" is vague, overbroad, and confusing; they render the words equivalent and therefore deprive them of independent meaning and inconsistent with standard English usage.  The BP Parties will read and respond to MOEX's requests with the understanding that the term "each" means each and the term "every" means every.

(pp)     MOEX's instruction to treat all nouns and pronouns as plural nouns and pronouns is vague, overbroad, and confusing; it renders many of MOEX's requests unnecessarily nonsensical, contorted, and duplicative.  The BP Parties will read and respond to MOEX's requests as written, not as imagined to give the "broadest possible application."

(qq)     MOEX's instruction to treat all verbs as possessing all possible tenses is vague, overbroad, and confusing; it renders many of MOEX's requests unnecessarily

54

nonsensical, contorted, and duplicative.  The BP Parties will read and respond to MOEX's requests as written, not as imagined to give the "broadest possible application."

       (rr)    MOEX's instruction to treat all terms of a specific gender as referring to all genders is vague, overbroad, and confusing; it renders many of MOEX's requests unnecessarily nonsensical, contorted, and duplicative.  The BP Parties will read and respond to MOEX's requests as written, not as imagined to give the "broadest possible application."

       (ss)    MOEX's instruction to treat all terms as if they encompass all grammatical variations of the term is vague, overbroad, and confusing; it renders many of MOEX's requests unnecessarily nonsensical, contorted, and duplicative.  The BP Parties will read and respond to MOEX's requests as written, not as imagined under instructions to set aside standard English usage.

12.    These responses are made without waiving, in any manner, the BP Parties' right to object to the use of any information or documents provided in response to these requests at any trial or evidentiary hearing on grounds of privilege, relevance, materiality, authenticity, hearsay, or any other ground permitted by any applicable law or rule.

13.    To the extent the BP Parties state they will produce documents in response to the requests, the BP Parties will produce such documents on a rolling basis with such reasonable speed as the BP Parties can locate and process them, without sacrificing a meaningful review for responsiveness, privilege, and confidentiality, as this is the only feasible and physically possible method given the scope and breadth of the requests.

14.    To the extent that the BP Parties respond that they will search for and produce responsive documents, the BP Parties are only undertaking to make a good faith effort to conduct a reasonable search of non-privileged documents of the files and records of those individuals

likely to have meaningful information responsive to a requests as maintained in the ordinary course of business, and/or to apply a reasonable set of search terms to similar available collections of ESI as maintained in the ordinary course of business reasonably likely to yield a meaningful amount of information responsive to a request.  The BP Parties are not offering or promising to search for and produce every document or piece of information that may exist in the possession, custody, or control of any of their tens of thousands of employees and agents where any such items are not included within the results of a reasonable search as described above.

15.     The BP Parties object to MOEX's requests to the extent that they are not limited to a reasonable time period as unreasonable, overbroad, and calling for the production of documents with little or no relevance to this litigation or any respect for the practicalities of resolving it.  The BP Parties will read and respond to MOEX's requests with the understanding that the term "relevant time period" means January 1, 2009 through April 20, 2010, unless:  (i) the request clearly seeks specific, available, relevant information that pre-dates January 1, 2009 (*e.g.*, rig audits of the *Deepwater Horizon*); and (ii) the request clearly seeks relevant information or documents that post-date the incident, in which case and to which extent, the time period is, or includes as the context requires, April 20, 2010 through November 8, 2010, or November 30, 2010, with regard to certain requests seeking information related to environmental issues.  In addition, when used in reference to the operation of the *Deepwater Horizon*, the *Transocean Marianas*, the blowout preventer, or any other equipment that was used in connection with work that did not involve the Macondo Well, the BP Parties will read and respond to MOEX's requests with the understanding that the term "relevant time period" means the period of time during which the rig or equipment referred to was used at the site of the Macondo Well, prior to and including April 20, 2010 as stated above.  Notwithstanding the above, however, the BP

Parties have responded to MOEX's requests that seek specific, relevant, identifiable documents generated prior to the time frames set forth above, but in no event will the BP Parties undertake to search for or produce documents generated prior to January 1, 2006.

16.     The BP Parties' decision, now or in the future, to provide information or documents notwithstanding the objectionable nature of any of the definitions or instructions, or the document requests themselves, should not be construed as:  (a) a stipulation that the material is relevant or admissible, (b) a waiver of the BP Parties' general objections or the objections asserted in response to specific requests, or (c) an agreement that requests for similar information will be treated in a similar manner.

17.     The BP Parties reserve the right to modify, amend, or supplement their responses, which are made based on the current status of their knowledge, understanding, belief, and searches for documents.  The investigation of facts and information relating to these requests is continuing, and, therefore, these responses are not intended as an admission or a representation that additional information or documents do not exist.

## **VERIFICATION**

I, Bill Kirton, an officer of BP America Inc., BP America Production Company, and BP Exploration & Production Inc., having undertaken a reasonable inquiry under the circumstances into the process by which the foregoing responses to interrogatories were compiled, hereby certify, under penalty of perjury, that, to the best of my knowledge, information, and belief, the foregoing responses to interrogatories accurately reflect the information available to BP America Inc., BP America Production Company, and BP Exploration & Production Inc. as specified therein.

State of Texas        :
                      :        ss.
County of Harris      :
Sworn and ascribed to before me
this ___ day of _____ 2011

Notary Public

DEENAY L. CARLSTRAND
MY COMMISSION EXPIRES
February 21, 2013

Dated:  February 22, 2011             Respectfully submitted,

**AS TO RESPONSES TO INTERROGATORIES**

By:  /s/ Bill Kirton_____
BP America Inc.
501 Westlake Park Blvd.
Houston, Texas 77079

*BP America Inc., BP America Production
Company, and BP Exploration & Production Inc.*

**AS TO OBJECTIONS AND TO RESPONSES
TO REQUESTS FOR DOCUMENTS**

By:  /s/ J. Andrew Langan, P.C.
Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Wendy Bloom, P.C.
Timothy A. Duffy, P.C.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
312-862-2000 (Tel)
312-862-2200 (Fax)

and

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

and

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
202-662-5985

*Attorneys for BP America Inc., BP America
Production Company, BP Exploration &
Production Inc.*

59

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing response has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, which will send a notice in accordance with the procedures established in MDL 2179, on this 22nd day of February, 2011.

/s/   J. Andrew Langan, P.C.___