# EXHIBIT H

# BINGHAM

Tiffany R. Hedgpeth
Direct Phone: 213.680.6442
Direct Fax: 213.830.8642
tiffany.hedgpeth@bingham.com

March 18, 2011

**Via Email and U.S. Mail**

J. Andrew Langan, Esq.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
andrew.langhan@kirkland.com

Re: **BP Parties' Responses to Anadarko Petroleum Corporation's Interrogatories and Requests for Production of Documents/Request for Meet and Confer**

Dear Mr. Langan:

We write in connection with the BP Parties' Responses and Objections to Defendant Anadarko Petroleum Corporation's Interrogatories and Requests for Production of Documents, dated February 22, 2011. As detailed below, many of the BP Parties' responses are incomplete and/or deficient under the Federal Rules of Civil Procedure and applicable case law. As such, Anadarko Petroleum Company ("Anadarko") requests a "meet and confer" with the BP Parties no later than March 25, 2011 to discuss the following issues regarding their responses.

## I. GENERAL OBJECTIONS

It is unclear what documents, if any, were withheld by the BP Parties based on its general objections. Anadarko is concerned with the breadth of these objections and needs to know what information has been withheld due to them. Moreover, certain of the objections are on their face unsupportable. For instance:

General Objection No. 7: The BP Parties object to the extent the requests seek "information or documents concerning other incidents, accidents or other events at BP facilities or locations other than the Macondo Well or that are otherwise unrelated to the *Deepwater Horizon*." Anadarko is entitled to information and documents that are reasonably calculated to lead to the discovery of admissible evidence. Because the BP Parties were operators at the Macondo Well, documents relating to other wells or rigs where the BP Parties are engaged in deepwater drilling may provide insight into the events that that occurred here. *See*

Boston
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Walnut Creek
Washington

Bingham McCutchen LLP
Suite 4400
355 South Grand Avenue
Los Angeles, CA
90071-3106

T 213.680.6400
F 213.680.6499
bingham.com

A/74024728.2

J. Andrew Langan, Esq.
March 18, 2011
Page 2

Section III.A below. As such, this general objection is invalid and must be withdrawn.

General Objection No. 8: The BP Parties object to the extent the requests seek disclosure of "trade secrets, proprietary information, or other confidential business information without appropriate restrictions on disclosure and dissemination that are embodied in a protective order entered by the Court." However, in light of PTO No. 13, please confirm no documents have been withheld on this basis.

## II. INTERROGATORIES

### A. The BP Parties Improperly Invoke Fed.R.Civ.P. 33(d).

In many instances, rather than provide the substantive information called for by Anadarko's Interrogatories, the BP Parties state that "the burden of deriving or ascertaining the answer to this interrogatory is substantially the same for Anadarko as it is for the BP Parties." Based on this statement, and allegedly in reliance upon Fed.R.Civ.P. 33(d) ("Rule 33(d)"), the BP Parties provide the following responses:

1) They indicate they "have produced, or will produce" responsive documents without identifying a single document in their answer or indicating when such documents will be produced (Responses to Int. Nos. 3, 4, 7, 9, 10, 11, 12 and 18);

2) They merely refer Anadarko to previous discovery responses given by the BP Parties, which previous requests called for different and/or much broader categories of information (Responses to Int. Nos. 1 and 2); and

3) They refer Anadarko to ranges of Bates numbered documents that are so large that Anadarko simply cannot ascertain which documents in those ranges are responsive and which are not (Responses to Int. Nos. 8, 14, 17, 19[1] and 22).

---

[1] The BP Parties' response to Interrogatory No. 19 refers to a 760 page Bates range, a portion of which is BP's Internal Investigation Report. However, reference to that Report, which in lieu of providing substantive responses, is improper for several reasons: first, the Report was finalized almost six months ago, making it highly doubtful that it contains all responsive information in the BP Parties' possession, custody or control at present; second, the Report does not specifically address the exact question set forth in the Interrogatories; and third, the Report was not prepared under oath, as an

(Footnote Continued on Next Page.)

J. Andrew Langan, Esq.
March 18, 2011
Page 3

Although Rule 33(d) does allow a responding party to provide business records in response to an interrogatory, such response is only proper if the answer can be determined by reviewing a "party's business records" and "the burden of deriving or ascertaining the answer will be substantially the same for either party." Fed.R. Civ.P. 33(d) (emphasis added). However, if the responding party chooses to invoke Rule 33(d), they must specify "the records that must be reviewed, in *sufficient detail* to enable the interrogating party to locate and indentify them as readily as the responding party could . . . ." *Id.* (emphasis added). "Answering an interrogatory by generally referring to information or documents previously provided does not satisfy the requirement that the answer must be made fully, in writing." *KeyBank Nat. Ass'n v. Perkins Rowe Associates, LLC*, 2011 WL 765925, at *3 (M.D. La. 2011).

None of the BP Parties' responses listed above meet the requirements of Rule 33(d), because each of those responses fails to provide sufficient detail to enable Anadarko to ascertain the answers without having a substantially greater burden than the BP Parties would.

First, merely stating that the BP Parties "have produced or will produce" responsive documents, without identifying those documents, is insufficient under Rule 33(d). *See KeyBank Nat. Ass'n*, 2011 WL 765925, at *3.

Second, in those instances where the BP Parties "refer" Anadarko to the BP Parties' other discovery responses, these responses are improper as well, as they do not adequately identify responsive information or documents:

- Interrogatory Response No. 1: The BP Parties refer Anadarko to their response to Interrogatory No. 22, which interrogatory calls for the identification of employees that communicated or transmitted the September 2009 Audit Report. Interrogatory No. 1, on the other hand, asks the BP Parties to identify its employees who communicated with others about inhibited or bypassed alarm systems. Moreover, as described on pages 4-5 of this letter, the BP Parties' response to Interrogatory No. 22 does not provide the requested information.

---

(Footnote continued from Previous Page.)

Interrogatory response must be. As such, a substantive and complete answer to this Interrogatory must be provided.

J. Andrew Langan, Esq.
March 18, 2011
Page 4

- Interrogatory Response No. 2: The BP Parties refer Anadarko to their responses to Plaintiffs' Interrogatory No. 31 and RFP No. 131, which requests relate to surveys, inspections and similar reports. However, Interrogatory No. 2 calls for the names of the BP Parties' employees who communicated about the functionality of the BOP. Thus, the BP Parties' answer is non-responsive.

Third, merely referring Anadarko to a huge range of documents does not provide Anadarko with sufficient detail to ascertain the answer as readily as the BP Parties. *See KeyBank Nat. Ass'n*, 2011 WL 765925, at *3.

Accordingly, Anadarko requests that the BP Parties promptly revise and supplement the foregoing responses and provide either substantive answers or references to specific documents (or, at most, narrow ranges of documents) from which the answers may be ascertained without undue burden.

### B. The BP Parties Fail to Provide Responsive Answers.

In many instances, the BP Parties have simply chosen not to answer a significant portion of the Interrogatories as written. For example, Interrogatory No. 3 calls for the identity of all deepwater wells, excluding the Macondo Well, that the BP Parties drilled in the "last 10 years" and "directed [its] cement contractor to proceed with a cement job when Opticem or similar modeling showed the well would have a severe gas flow problem." In response, the BP Parties merely state that they will search for "Halliburton Opticem reports for cement jobs in the Gulf of Mexico." This answer is clearly not responsive to the interrogatory, as it does not address wells drilled outside the Gulf of Mexico or reports other than those created by Halliburton. Rather, this appears to be a deliberate attempt to side-step the inquiry, and provide only a partial and evasive answer, which is wholly improper under the Federal Rules. *See Dollar v. Long Mfg., N.C., Inc.*, 561 F. 2d 613, 616-17 (5th Cir. 1977).

Other responses that suffer from the same deficiency are:

- Interrogatory Response No. 1: The BP Parties fail to identify the BP Parties' employees who communicated on or before April 20, 2010 about alarm systems that were inhibited or bypassed, instead referring to the 2009 Audit Report;

- Interrogatory Response No. 2: The BP Parties fail to identify the BP Parties' employees who communicated on or before April 20, 2010 regarding the functionality of the BOP;

J. Andrew Langan, Esq.
March 18, 2011
Page 5

- Interrogatory Response No. 4: The BP Parties have improperly limited their response to drilling operations in the Gulf of Mexico and ignored the portion of the question about "the number of centralizers" the BP Parties chose to use (and actually did use) in a well;

- Interrogatory Responses No. 8, 9, 10, 11, 12, 18: The BP Parties have improperly limited (1) its response to drilling operations in the Gulf of Mexico, and (2) the relevant time period; and

- Interrogatory Response No. 22: The BP Parties fail to identify the BP Parties' employees who communicated or transmitted the September 2009 Audit Report to Transocean, instead referring to the Audit Report itself and a long string of bates ranges.

Anadarko requests that the BP Parties immediately provide responses to these yet unanswered Interrogatories.

### C. The BP Parties' Boilerplate Objections are Improper.

In response to each Interrogatory, the BP Parties assert the following boilerplate objection:

> To the extent Anadarko's interrogatory seeks additional information, the BP Parties object on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.[2]

Moreover, the BP Parties fail to provide any response, other than boilerplate objections, to Interrogatory Nos. 5, 6, and 13.

Courts have made clear that conclusory statements and boilerplate objections simply asserting that a request is, for example, "overbroad" are improper. *See McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F. 2d 1482, 1485 (5th Cir. 1990) (citing *Joseph v. Harris Corp.*, 677 F. 2d 985, 991-92 (3d Cir. 1982). Thus, the 'party resisting discovery "must show specifically how…each interrogatory is not relevant or how each question is overly broad, burdensome or

---

[2] The BP Parties have included the same boilerplate objections to 22 of Anadarko's 28 RFPs. This is also improper for the reasons set forth above in Section II.C.

J. Andrew Langan, Esq.
March 18, 2011
Page 6

oppressive.'" *Id.* at 992; *see also Nagele v. Electronic Data Systems Corp.*, 193 F.R.D. 94, 109 (W.D. N.Y. 2000) ("It is settled law that to support an objection based upon burdensomeness the objecting party must particularize the basis for the objection *as generalized assertions are inadequate*.") (emphasis added).

Here, the BP Parties' boilerplate objections to each Interrogatory are improper because they does not particularize the bases for the objections, nor do they provide sufficient information for Anadarko to ascertain what, if any, information the BP Parties are withholding as a result. The BP Parties must either withdraw or clarify these objections immediately, in particular, answers to Interrogatory Nos. 5, 6, and 13.

### III. DOCUMENT REQUESTS

#### A. The BP Parties' Unilateral Narrowing of Anadarko's Requests for Production is Improper.

1. Several of Anadarko's Requests for Production of Documents ("RFPs") seek documents regarding the BP Parties' background, knowledge, experience, protocols and procedures in various aspects of deepwater drilling. However, in response, the BP Parties unilaterally assert that they will only provide a subset of the documents called for by the RFP. For example, in RFP No. 24, Anadarko calls for the production of documents "relating to the use or potential use of FormaSet, Form-a-Squeeze, or any combination of the two, as a spacer in any well . . . ." In response, the BP Parties state that they "will conduct a reasonable search . . . for documents relating to the use or potential use of Form-A-Set, Form-a-Squeeze, or any combination of the two, as a spacer *at the Macondo Well on April 20, 2010*." Clearly, the RFP was not limited to the Macondo Well or to April 20, 2010, nor is there any basis on which it should be so limited. Procedures regarding drilling or operating a well, generally, are entirely relevant to the issue of the BP Parties' corporate knowledge and whether that knowledge was adequately shared with and implemented by the BP Parties' employees working on the Macondo Well, in particular. In addition to RFP No. 24, the BP Parties' responses to RFPs that have been improperly limited to the Macondo Well, activities in connection with the Macondo Well or to the Gulf of Mexico are as follows: RFP Nos. 25 and 26.

2. RFP No. 22 calls for the production of "all communications concerning the Kaskida or Nile wells during April 2010." In response, the BP Parties state that they "will conduct a search . . . for documents sufficient to show their *plans with respect to* the use of the *Deepwater Horizon* in connection with the Nile or Kaskida wells at the time of the April 20, 2010 incident. . . ." The BP Parties

J. Andrew Langan, Esq.
March 18, 2011
Page 7

have improperly limited the scope of this request, as communications relating to the BP Parties' intended use of the *Deepwater Horizon* in connection with the Nile or Kaskida wells are relevant to the issue of whether the BP Parties were under time and money pressures during the temporary abandonment procedure at the Macondo Well.

3. In response to RFP Nos. 14 and 15, calling for post-incident "pictures, video recordings, X-rays, audio recordings, samples, measurements and/or testing results" of or for the *Deepwater Horizon* or any of its equipment or components, and of or for the Macondo Well, the BP Parties state that they will search for "results and supporting date of any post-Incident physical testing performed by the BP Parties. . . ." To the extent that this response is intended to limit the RFPs to only results and data and, further, only to results and data from the BP Parties' testing, these limitations are improper. As requested, Anadarko is entitled to all evidence of any testing, whether conducted by the BP Parties or by any other person or entity.

As noted, the BP Parties' limitations are improper and must be rectified.

### B.  The BP Parties' Refusal to Respond to Certain RFPs Is Without Justification.

1. The BP Parties refuse to respond to RFP No. 8, which seeks the production of all documents reviewed by the BP Parties in connection with their preparation of responses to each Interrogatory propounded by Anadarko. Although Anadarko asserts that this is an appropriate request, Anadarko is willing to meet and confer with the BP Parties in an effort to agree upon narrowing its scope.

2. The BP Parties refuse to provide responses to RFP Nos. 10 and 13, based only on their boilerplate objections. As noted above, these objections are improper, and responsive documents must be produced.

3. In response to RFP No. 11, seeking the BP Parties' "policies and procedures regarding use of the diverter system on the *Deepwater Horizon*" as well as on deepwater drilling rigs it owns, contracts or leases, the BP Parties refuse to provide a response and instead instruct Anadarko to obtain the Well Control Handbook from the Transocean Defendants. Clearly, this response is improper, as the request call for the BP Parties' policies, not Transocean's.

4. The BP Parties refuse to provide a response to RFP No. 16, which seeks raw data, in native format, that was input to produce the OLGA gas flow model discussed in BP's September 8, 2010 Accident Investigation Report. In addition

J. Andrew Langan, Esq.
March 18, 2011
Page 8

to the normal boilerplate objections, which are improper, the BP Parties assert that this request is inconsistent with Pre-Trial Order No. 16. Anadarko requests the BP Parties provide a detailed explanation as to how such request is allegedly inconsistent with Pre-Trial Order No. 16.

### IV. ADDITIONAL ISSUES

1. With respect to each statement that the BP Parties "will produce documents," when will such production be made and how will the BP Parties make clear which production is responsive to Anadarko's Interrogatories and RFPs?

2. With respect to the boilerplate objections set forth at the end of each response to an RFP (identical to the one included in each Interrogatory response, and improper for the same reasons as set forth below in Section II.C), what categories of documents are the BP Parties withholding on the basis of these objections?

3. What is the basis for the BP Parties' unilateral assertion that the "relevant time period" means January 1, 2009 through April 20, 2010? What categories of documents are the BP Parties withholding on the basis of this objection?

4. In light of the twelve (12) pages of objections posed by the BP Parties to Anadarko's Definitions and Instructions, what categories of documents are the BP Parties withholding on the basis of these objections?

In light of the foregoing, we propose that the parties meet and confer no later than March 25, 2011 to discuss the BP Parties' responses and document production. This letter shall serve as Anadarko's attempt to meet and confer with the BP Parties pursuant to Rule 37(a)(1).

Sincerely yours,

*for T. Hedgpeth*

Tiffany R. Hedgpeth

cc: Ky E. Kirby, Esq.
    Warren Anthony Fitch, Esq.
    Peter C. Neger, Esq.
    Diane C. Hertz, Esq.