# EXHIBIT I

# BINGHAM

Tiffany R. Hedgpeth
Direct Phone: 213.680.6442
Direct Fax: 213.830. 8642
tiffany.hedgpeth@bingham.com


March 18, 2011


**Via Email and U.S. Mail**

J. Andrew Langan, Esq.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
andrew.langhan@kirkland.com

**Re: BP Parties' Responses to MOEX Offshore 2007 LLC's
Interrogatories and Requests for Production of
Documents/Request for Meet and Confer**

Dear Mr. Langan:

We write in connection with the BP Parties' Responses and Objections to Defendant
MOEX Offshore 2007 LLC's Interrogatories and Requests for Production of
Documents, dated February 22, 2011. As detailed below, many of the BP Parties'
responses are incomplete and/or deficient under the Federal Rules of Civil Procedure
and applicable case law. As such, MOEX Offshore 2007 LLC ("MOEX") requests a
"meet and confer" with the BP Parties no later than March 25, 2011 to discuss the
following issues regarding their responses.

## I.    GENERAL OBJECTIONS

It is unclear what documents, if any, were withheld by the BP Parties based on its
general objections. MOEX is concerned with the breadth of these objections and
needs to know what information has been withheld due to them. Moreover, certain
of the objections are on their face unsupportable. For instance:

General Objection No. 7: The BP Parties object to the extent the requests seek
"information or documents concerning other incidents, accidents or other events at
BP facilities or locations other than the Macondo Well or that are otherwise
unrelated to the *Deepwater Horizon*." MOEX is entitled to information and
documents that are reasonably calculated to lead to the discovery of admissible
evidence. Because the BP Parties were operators at the Macondo Well, documents
relating to other wells or rigs where the BP Parties are engaged in deepwater drilling
may provide insight into the events that that occurred here. *See* Section III.A below.
As such, this general objection is invalid and must be withdrawn.

General Objection No. 8: The BP Parties object to the extent the requests seek
disclosure of "trade secrets, proprietary information or other confidential business

Boston
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Walnut Creek
Washington


Bingham McCutchen LLP
Suite 4400
355 South Grand Avenue
Los Angeles, CA
90071-3106


T 213.680.6400
F 213.680.6499
bingham.com

J. Andrew Langan, Esq.
March 18, 2011
Page 2

information without appropriate restrictions on disclosure and dissemination that are embodied in a protective order entered by the Court." However, in light of PTO No. 13, please confirm no documents have been withheld on this basis.

## II.   INTERROGATORIES

### A.   The BP Parties Improperly Invoke Fed.R.Civ.P. 33(d).

In many instances, rather than provide the substantive information called for by MOEX's Interrogatories, the BP Parties state that "the burden of deriving or ascertaining the answer to this interrogatory is substantially the same for MOEX as it is for the BP Parties." Based on this statement, and allegedly in reliance upon Fed.R.Civ.P. 33(d) ("Rule 33(d)"), the BP Parties provide the following responses:

> 1) They indicate they "have produced, or will produce" responsive documents without identifying a single document in their answer or indicating when such documents will be produced (Responses to Int. Nos. 3, 15, 19 and 20);
>
> 2) They merely refer MOEX to previous discovery responses by the BP Parties to requests that called for different and/or much broader categories of information (Responses to Int. Nos. 4, 14, 16); and
>
> 3) They refer MOEX to ranges of Bates numbered documents that are so large (in some cases, over 61,000 documents) that MOEX simply cannot ascertain which documents in those ranges are responsive and which are not (Responses to Int. Nos. 6, 7, 8 and 11).

Although Rule 33(d) allows a responding party to provide business records in response to an interrogatory, such a response is proper only if the answer can be determined by reviewing a "party's business records" and "the burden of deriving or ascertaining the answer will be substantially the same for either party." Fed.R.Civ.P. 33(d). Moreover, if the responding party chooses to invoke Rule 33(d), it must specify "the records that must be reviewed, in *sufficient detail* to enable the interrogating party to locate and identify them as readily as the responding party could. . . ." *Id.* (emphasis added). "Answering an interrogatory by generally referring to information or documents previously provided does not satisfy the requirement that the answer must be made fully, in writing." *KeyBank Nat. Ass'n v. Perkins Rowe Associates, LLC*, 2011 WL 765925, at *3 (M.D. La. 2011).

None of the BP Parties' responses listed above meet the requirements of Rule 33(d), because each of those responses fail to provide sufficient detail to enable MOEX to ascertain the answers without having a substantially greater burden than the BP Parties would.

A/74024668.3/3002623-0000350346

J. Andrew Langan, Esq.
March 18, 2011
Page 3

<u>First</u>, merely stating that the BP Parties "have produced or will produce" responsive documents, without identifying those documents, is insufficient under Rule 33(d). *See KeyBank Nat. Ass'n*, 2011 WL 765925, at \*3.

<u>Second</u>, in those instances where the BP Parties "refer" MOEX to the BP Parties' other discovery responses, these responses are improper as well, as they do not adequately identify responsive information or documents:

- <u>Interrogatory Response Nos. 4 and 14</u>:  The BP Parties refer MOEX to a previous response by the BP Parties that encompasses nearly 50,000 pages of production;

- <u>Interrogatory Response No. 5</u>:  The BP Parties refers MOEX to logs that do not contain the specific information called for; and

- <u>Interrogatory Response No. 16</u>:  The BP Parties refers MOEX to a previous response by the BP Parties relating to operations and drilling activities on deepwater rigs, a far broader request than Interrogatory No. 16, which narrowly calls for information regarding "kicks" experienced on the *Deepwater Horizon* from February 1, 2010 through April 20, 2010.

<u>Third</u>, merely referring MOEX to a huge range of documents does not provide MOEX with sufficient detail to enable MOEX to ascertain the answer as readily as the BP Parties. *See KeyBank Nat. Ass'n*, 2011 WL 765925, at \*3.

Accordingly, MOEX requests that the BP Parties promptly revise and supplement the foregoing responses and provide either substantive answers or references to specific documents (or, at most, narrow ranges of documents) from which the answers may be ascertained without undue burden.

## B.    The BP Parties Fail to Provide Responsive Answers.

In many instances, the BP Parties have simply chosen not to answer a significant portion of the Interrogatories as written.  For example, Interrogatory No. 1 calls for the identity of those "BP employees. . . who concluded that the second, or any subsequent, negative pressure test at the Macondo Well on April 20, 2010 was 'successful'. . ."  The only information the BP Parties provide in response regarding BP employees -- "The BP well site leaders involved in the negative pressure tests were Don Vidrine and Robert Kaluza" -- clearly does not answer the question as to who reached the referenced conclusion.  Rather, this appears to be a deliberate attempt to side-step the inquiry and provide only a partial and evasive answer, which is wholly improper under the Federal Rules. *See Dollar v. Long Mfg., N.C., Inc.*, 561 F. 2d 613, 616-17 (5th Cir. 1977).

A/74024668.3/3002623-0000350346

J. Andrew Langan, Esq.
March 18, 2011
Page 4

Other responses that suffer from the same deficiency are:

- Interrogatory Response No. 2: The BP Parties fail to identify the BP employees who concluded that the reading of 1400 psi on the drill pipe during the negative pressure test was a result of "bladder effect" and the basis for such conclusion;

- Interrogatory Response No. 3: The BP Parties have improperly limited their response to drilling operations in the Gulf of Mexico, though the interrogatory specifically requests information for *all* of the BP Parties' deepwater drilling operations, without geographical limitation;

- Interrogatory Response No. 9: The BP Parties fail to specifically state whether there was monitoring of mud pits and the period of time during which monitoring did not occur;

- Interrogatory Response No. 10: The BP Parties fail to describe steps taken to control or shut in the Macondo Well on April 20, 2010, instead referring MOEX to BP's Internal Investigation Report[1] without citation even to a chapter or page; and

- Interrogatory Response No. 12: The BP Parties fail to identify the persons who made the decision on April 20, 2010 to divert flow from the Macondo Well through the mud gas separator, instead referring MOEX to BP's Internal Investigation Report.

MOEX requests that the BP Parties immediately provide responses to these unanswered Interrogatories.

---

[1]     The BP Parties reference to its Internal Investigation Report (the "Report") in lieu of providing substantive responses to Interrogatories is improper for several reasons: first, the Report was finalized almost six months ago, making it highly doubtful that it contains all responsive information in BP's possession, custody or control at present; second, the Report does not specifically address the exact question set forth in the Interrogatories; and third, the Report was not prepared under oath, as an Interrogatory response must be. Substantive and complete answers to the relevant requests (Interrogatory Nos. 1, 2, 10, 12 and RFP No. 30) must be provided.

Bingham McCutchen LLP
bingham.com

J. Andrew Langan, Esq.
March 18, 2011
Page 5

### C.     The BP Parties' Boilerplate Objections are Improper.

In response to each Interrogatory, the BP Parties assert the following boilerplate
objections:

> To the extent MOEX's interrogatory seeks additional information,
> the BP Parties object on the grounds that it is overbroad,
> unreasonable, unduly burdensome, and seeks information not
> relevant to the claims or defenses of any party.[2]

Courts have made clear that conclusory statements and boilerplate objections simply
asserting that a request is, for example, "overbroad" are improper. *See McLeod,
Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F. 2d 1482, 1485 (5th Cir. 1990)
(citing *Joseph v. Harris Corp.*, 677 F. 2d 985, 991-92 (3d Cir. 1982). Thus, the
'party resisting discovery "must show specifically how...each interrogatory is not
relevant or how each question is overly broad, burdensome or oppressive."' *Id.* at
992; *see also Nagele v. Electronic Data Systems Corp.*, 193 F.R.D. 94, 109 (W.D.
N.Y. 2000) ("It is settled law that to support an objection based upon
burdensomeness the objecting party must particularize the basis for the objection *as
generalized assertions are inadequate*.") (emphasis added).

Here, the BP Parties' boilerplate objections to each Interrogatory are improper
because they do not particularize the bases for the objections, nor do they provide
sufficient information for MOEX to ascertain what, if any, information the BP
Parties are withholding as a result.  The BP Parties must either withdraw or clarify
these objections immediately.

### III.    DOCUMENT REQUESTS

### A.     The BP Parties' Unilateral Narrowing of MOEX's Requests for
Production is Improper.

1.  Several of MOEX's Requests for Production of Documents ("RFPs") seek
documents regarding the BP Parties' background, knowledge, experience, protocols
and procedures in various aspects of deepwater drilling. In response, the BP Parties
unilaterally assert that they will provide only a subset of the documents called for by
the RFP.  For example, in RFP No. 2, MOEX calls for the production of documents
"relating to required or recommended practices to prevent or minimize pollution

---

[2]     The BP Parties have included the same boilerplate objections to 28 of MOEX's 30
RFPs.  This is also improper for the reasons set forth above in Section II.C.

Bingham McCutchen LLP
bingham.com

J. Andrew Langan, Esq.
March 18, 2011
Page 6

during the course of drilling or operating a well." In response, the BP Parties state that it "will conduct a reasonable search . . . for documents relating to required or recommended practices to prevent or minimize pollution that were applicable to the drilling and operation *of the Macondo Well.*" The RFP was clearly not limited to the Macondo Well, nor is there any basis on which the BP Parties' response should be so limited. The BP Parties' practices or procedures regarding drilling or operating a well, generally, are entirely relevant to the issue of the BP Parties' corporate knowledge and whether that knowledge was adequately shared with and implemented by the BP Parties' employees working on the Macondo Well, in particular. In addition to RFP No. 2, the BP Parties' responses to RFPs that have been improperly limited to the Macondo Well, activities in connection with the Macondo Well or to the Gulf of Mexico are as follows: Nos. 2, 4, 5, 12, 14, 16, 17, 18, and 28.

2. The BP Parties similarly attempt to limit RFP Nos. 11 and 25, which call for the BP Parties' temporary abandonment plans in the Gulf of Mexico and documents related to drilling of deepwater wells over the past 10 years, respectively, to those temporary abandonment plans filed with the Bureau of Ocean Energy Management ("BOEM") from 2005 through 2010. Again, this limitation is baseless, as MOEX is entitled to inquire as to the BP Parties' corporate knowledge and experience with all deepwater drilling and temporary abandonment plans, not just with respect to those plans filed with BOEM since 2005. The requested documents, including those that were *not* filed with BOEM, are particularly relevant, as it appears that later versions of the temporary abandonment plans for the Macondo Well were never filed with the BOEM/MMS.

3. The BP Parties also attempt to limit RFP Nos. 26 and 27 by asserting that they will only produce temporary abandonment applications and approvals already received from MMS/BOEM, instead of *all* documents that *relate to* certain requests and approval. This limitation is without justification, and MOEX is entitled to all responsive documents.

4. The BP Parties similarly attempt to limit RFP No. 24 by only providing documents concerning the Ixtoc I exploratory well, the Silvertip well, the AC 901 well, and the WR 543 well. However, this RFP specifically requests information concerning those wells *and* any other well that had issues with blowout preventers. There is no basis for this limitation.

5. To the extent the BP Parties' response to RFP No. 13 is meant to exclude the identity of all persons involved in the decision not to run a cement bond log at the Macondo Well, that response has been improperly limited.

A/74024668.3/3002623-0000350346

Bingham McCutchen LLP
bingham.com

J. Andrew Langan, Esq.
March 18, 2011
Page 7

6. To the extent the BP Parties' response to RFP No. 15 is meant to exclude any documents evidencing specific response activities, that response has been improperly limited.

### B. The BP Parties' Refusal to Respond to Certain RFPs Is Without Justification.

1. RFP No. 1 seeks the production of all documents reviewed by the BP Parties in connection with their preparation of responses to each Interrogatory propounded by MOEX. The BP Parties refuse to provide a response. Although MOEX asserts that this is an appropriate request, MOEX is willing to meet and confer with the BP Parties in an effort to agree upon narrowing its scope.

2. RFP No. 22 calls for documents "that are or relate to internal discussions (including emails)" about what the BP Parties "would be or would not be telling MOEX Offshore, MOEX USA or Anadarko about the drilling process, conditions, changes, progress, or problems at the Macondo Well, prior to May 1, 2010." In response, the BP Parties object on various vague grounds and refuse to respond.

In addressing this very issue during a conference on March 11, 2011, and in the face of objections from the other parties, Magistrate Shushan encouraged MOEX and Anadarko to pursue the topic of what information was and was not supposed to be provided to MOEX (and Anadarko), and what information was and was not actually provided to them, through interrogatories and document requests. As such, this RFP is entirely proper and responsive documents must be produced.

## IV. ADDITIONAL ISSUES

In addition to the above, MOEX has the following issues to resolve with the BP Parties:

1. With respect to each statement that the BP Parties "will produce documents," when will such production be made and how will the BP Parties make clear which production is responsive to MOEX's Interrogatories and RFPs?

2. With respect to the boilerplate objections set forth at the end of each response to an RFP (identical to the one included in each Interrogatory response, and improper for the same reasons as set forth below in Section II C), what categories of documents are the BP Parties withholding on the basis of these objections?

3. What is the basis for the BP Parties' unilateral assertion that the "relevant time period" means January 1, 2009 through April 20, 2010? What categories of documents are the BP Parties withholding on the basis of this objection?

J. Andrew Langan, Esq.
March 18, 2011
Page 8


In light of the twelve (12) pages of objections posed by the BP Parties to MOEX's Definitions and Instructions, what categories of documents are the BP Parties withholding on the basis of these objections?

In light of the foregoing, we propose that the parties meet and confer no later than March 25, 2011 to discuss the BP Parties' responses and document production. This letter shall serve as MOEX's attempt to meet and confer with the BP Parties pursuant to Rule 37(a)(1).


Sincerely yours,

*for T. Hedgpeth*

Tiffany R. Hedgpeth

cc: Ky E. Kirby, Esq.
    Warren Anthony Fitch, Esq.
    Peter C. Neger, Esq.
    Diane C. Hertz, Esq.

A/74024668.3/3002623-0000350346