UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL by the OIL RIG<br>"DEEPWATER HORIZON" in the<br>GULF OF MEXICO on<br>APRIL 20, 2010<br><br>Applies to:<br><br>*Rhodes v. Transocean, Ltd., et al.*<br>No. 2:10-CV-1502 | MDL No. 2179<br><br>SECTION: J<br><br>Judge Carl J. Barbier<br>Magistrate Judge Sally Shushan |

**REPLY IN FURTHER SUPPORT OF DEFENDANT M-I L.L.C.'s
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINTS**

Significantly, Plaintiff Karl W. Rhodes agrees with the primary issue raised in M-I's motion to dismiss: that the Second Amended Complaint (the operative complaint at the time the Motion to Dismiss was filed[1]) "fails to allege a 'single relevant fact' that M-I is liable for his [Rhodes's] injuries." Opp. 4.

Since M-I filed its motion to dismiss, Rhodes has filed three amended complaints within an 18-day period.[2] Rhodes argues that while his Second Amended Complaint completely failed to state a viable claim against M-I, his most recent complaint ("Fifth Amending [*sic*] Complaint") states a viable claim. But his Fifth Amended Complaint fares no better, as it fails to even allege the elements required to prove a claim against M-I. Having now taken six bites at the apple, Rhodes has demonstrated that he cannot properly plead a cause of action against M-I.

---

[1] M-I filed its motion to dismiss on March 11, 2011. Rhodes' Second Amended Complaint was filed on November 11, 2010, and was the most recent complaint at the time M-I filed its motion to dismiss. Prior to this, Rhodes' original complaint was filed on May 18, 2010, and his First Amended Complaint was filed on May 27, 2010.

[2] Rhodes's Third Amended Complaint was filed on March 14, 2011, his Fourth Amended Complaint was filed on March 22, 2011, and his Fifth Amended Complaint was filed on March 31, 2011.

Accordingly, Rhodes's claims against M-I should be dismissed with prejudice under Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim for which relief can be granted.

## ANALYSIS

I.  **Rhodes's Allegations Fail to Establish A Cognizable Claim For Negligence.**

As M-I stated in its brief supporting its motion to dismiss, the standards by which a plaintiff must plead a claim are clear.  A plaintiff must demonstrate "more than a sheer possibility that a defendant has acted unlawfully" in order to survive a motion to dismiss. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  This standard is not to be taken lightly—rather, it must be rigorously applied to ensure that defendants are not unnecessarily forced to endure "the potentially enormous expensive of discovery." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007).  The district courts have "the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Id.* at 558 (citation and quotation marks omitted).  Even accepting all the factual allegations in Rhodes's Fifth Amended Complaint as true, they do not state a claim for negligence against M-I.

Rhodes argues that the case of *Matrixx Initiatives, Inc. v. Siracusano*, No. 09-1156, --- S.Ct. ---, 2011 WL 977060 (Mar. 22, 2011), somehow weakens the standards of *Twombly* and *Iqbal*.  Opp. 3.  The case does no such thing. *Matrixx* dealt with the question of whether the allegation that a company failed to disclose adverse incidents for one of its medical products, when those adverse incidents were not statistically significant, was actionable under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b).  2011 WL 977060, at *3.  The specific legal holding of the *Matrixx* Court was that adverse event reports that do not reveal a statistically significant increased risk of adverse events from product use can be material information for the purpose of securities laws. *Id.* at *8.

The second legal issue addressed by the *Matrixx* Court was whether the plaintiffs had adequately pleaded that defendants acted with the required level of scienter. *Id.* at *13. Under the Private Securities Litigation Reform Act of 1995, "a plaintiff must 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Id.* (quoting 15 U.S.C. § 78u-4(b)(2)(A) (Feb. 2011 Supp.)). The *Matrixx* Court's discussion of pleading requirements applies to the congressionally mandated heightened pleading requirement that exists for securities litigation. *Id.* at *13-14. It does not affect the general pleading standards applicable to every other type of pleading that *Twombly* and *Iqbal* govern.

The only way in which *Matrixx* interacts with *Iqbal* and *Twombly* is that *Matrixx* quotes those cases for the rule that allegations in the complaint are presumed true for the purposes of a motion to dismiss. *See* 2011 WL 977060, at *4. The *Matrixx* Court also recites all the very specific pleading that occurred in that case and states that those were adequately specific under the *Twombly* and *Iqbal* standards. *Id.* at *12. But *Matrixx* does nothing to alter the standards of *Twombly* and *Iqbal*. *Matrixx* does not save Rhodes's failure to comply with *Twombly* and *Iqbal*. Other courts to have considered *Matrixx* have come to the same conclusion that *Matrixx* does not alter the normal pleading standards. *See Teamsters Local 617 Pension & Welfare Funds v. Apollo Group, Inc.*, No. CIV 06-02674-PHX-RCB, 2011 WL 1253250, at *37 n.30 (D. Ariz. Mar. 31, 2011).

Rhodes also implies that *Twombly* and *Iqbal* standards apply only in the context in which those two cases arise: discrimination and antitrust actions. Opp. 7. There is absolutely no support for this proposition. *Twombly* and *Iqbal* are not limited to their subject matter, but rather, state a general rule regarding pleading standards and evaluating a motion to dismiss under Rule 12(b).

Rhodes maintains that because M-I has been associated with the *Deepwater Horizon* (without providing citation for this assertion), he should be relieved of his obligations to allege facts at "the level of specificity and detail required [by *Twombly*]." Opp. 7. But Rhodes cannot escape his obligation to satisfy the pleading requirements by asserting that something is "known." After trying six times—and with the benefit of substantial discovery in this case—Rhodes has still failed to plead a cognizable claim for negligence under any theory of relief. Accordingly, his negligence claims should be dismissed.

> A. **Rhodes's Inconsistent And Conclusory Factual Allegations Concerning M-I Are Insufficient To Establish His Entitlement To Relief.**

Rhodes admits that his Second Amended Complaint "fails to allege a 'single relevant fact' that M-I is liable for his injuries." Opp. 4. His Fifth Amended Complaint fares no better. Indeed, Rhodes himself acknowledges that the viability of his claims are a close call: his opposition presents the Fifth Amended Complaint as having only "nudged" the claims into the realm of plausibility. Opp. 7.

Rhodes alleges only that M-I provided certain services to BP and that those services were flawed. However, he does not—and, indeed, cannot—allege facts demonstrating that M-I's alleged failures were the cause of his injuries. Rhodes alleges, for example, that M-I provided improper mud, but does not allege that the accident was caused by improper mud. 5th Am. Compl. ¶ 22(A). He alleges that the spacer did not properly separate mud and seawater, but alleges no facts demonstrating that the mixing of drilling mud and seawater caused the explosion. *Id.* ¶ 22(B). He alleges that mud clogged the well's piping system, but alleges no facts suggesting that his injuries were the result. *Id.* ¶ 22(E). Rhodes's allegations are comprised of nothing more than "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129

S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557).  Even accepting all the facts as true, they do not establish an entitlement to relief against M-I.

"To establish maritime negligence, a plaintiff must demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by [the] plaintiff, and a causal connection between the defendant's conduct and the plaintiff's injury."  *Canal Barge Co. v. Torco Oil Co.*, 220 F.3d 370, 376 (5th Cir. 2000) (alteration in original) (internal citation and quotations omitted).  Rhodes maintains that he "need not cite" for the Court "the jurisprudence applicable to duty, breach of duty, causation, and damages." Opp. 8.  But the law does require that he, at a bare minimum, allege that all these elements of his cause of action are satisfied.  Contrary to his position that his complaint survives "if the fact-finder determines that M-I" is liable for negligence, his complaint survives only if this Court finds as a matter of law that Rhodes has alleged sufficient facts to demonstrate his entitlement to relief.  *Id*.  Having failed to do so, Rhodes's negligence claim must be dismissed.  Because Rhodes's allegations against M-I do not meet these threshold requirements, the negligence claims against M-I fail as a matter of law.

**B.     Rhodes's Own Complaint Defeats His Claim Of *Res Ipsa Loquitur*.**

Rhodes's Fifth Amended Complaint alleges that all defendants are liable under the doctrine of *res ipsa loquitur*.  5th Am. Compl ¶ 23.  To plead a claim for *res ipsa*, the Plaintiff must allege that the instrumentality alleged to have caused the plaintiff's injury was "under the exclusive control of the defendant." *Michaels v. Avitech, Inc.*, 202 F.3d 746, 753 (5th Cir. 2000).  Further, the Plaintiff must establish the absence of other equally probable explanations for what caused the Plaintiff's injury.  *Brown v. Olin Chem. Corp.*, 231 F.3d 197, 200 (5th Cir. 2000).

Rhodes's Fifth Amended Complaint is fatal to his own claim of *res ipsa loquitur*. First, as a fundamental matter, Rhodes fails to allege that M-I was in the exclusive control of any item or aspect of the ship. Rather, Rhodes alleges that BP was responsible for overseeing contractors on the rig (such as M-I) and for drilling operations. He alleges that Transocean was the owner and operator of the rig and "[a]t all times relevant to the Spill, . . . was responsible for maintaining well control equipment" and "provided operational support for drilling-related activities . . . ." 5th Am. Compl ¶ 3(H). As a matter of logic, it is impossible for any aspect of the drilling mud to be in the "exclusive control" of M-I when Rhodes's own pleading (which must be taken as true for the purposes of a motion to dismiss) provides that BP was responsible for all contractors and Transocean was responsible for drilling-related activities.

Moreover, to the extent Rhodes has alleged that drilling fluids somehow contributed to the accident, he states that BP and Transocean—not M-I—"us[ed] an untested, abnormally large volume of mixed spacer solutions to avoid having to properly dispose of the two separate spacer substances as hazardous wastes." *Id*. ¶ 11. He similarly alleges that Transocean—not M-I—made decisions about drilling fluid operations. *Id.* ¶ 10 (incorporating ¶ 521). These allegations fail to demonstrate that M-I was in exclusive control of any instrumentality at the time of any alleged negligent act giving rise to Rhodes's injuries.

In support of his position that *res ipsa loquitur* is appropriately applied in this case, Rhodes relies entirely on the decision of the Fifth Circuit in *Bradshaw v. Freightliner Corp.*, 937 F.2d 197 (5th Cir. 1991). Nothing in *Bradshaw* alters the standards for applicability of *res ipsa loquitur*, which requires that the "plaintiff show the defendant was in *exclusive control of the instrumentality* at the time the negligence occurred . . . ." *Id.* at 201 (emphasis added). In *Bradshaw*, the plaintiff sought recovery for injuries suffered when the driver's seat in his vehicle

collapsed while he was driving. *Id.* at 199. The plaintiff alleged that the seat was negligently manufactured *exclusively* by the defendant and that the defective seat was the cause of his injuries. *Id.* at 199-200. Here, Transocean and BP, by Rhodes's own pleading, had final control over operations on the rig.

Rhodes's claim for *res ipsa loquitur* fails for a second reason, too. Even if Rhodes had alleged that M-I was in exclusive control of the drilling mud (which he explicitly alleges otherwise), Rhodes's complaint alleges that a number of other actions by other defendants caused his injuries. All these allegations, which must be taken as true at the stage of evaluating a Rule 12(b) motion to dismiss, show that there is not the "absence of other equally probable explanations" for the cause of the accident, defeating as a matter of law the application of *res ipsa loquitur*. *Brown*, 231 F.3d at 200.

Rhodes has alleged a litany of potential, compounding, and contributing causes of the *Deepwater Horizon* accident for which he seeks recovery. Among numerous other causes he alleges that the negligent acts that led to the accident include:

- failure of certain Defendants to adequately monitor the well and warn crewmembers of the potential accident;
- Transocean's improper maintenance of equipment on the rig;
- Halliburton's improper cementing; and
- Cameron's and Weatherford's faulty design and manufacture of certain well equipment.

5th Am. Compl. ¶¶ 13-19. Because Rhodes specifically pleads that causes other than actions by M-I caused his injuries, the doctrine of *res ipsa loquitur* is not available for this reason too.

### C. Rhodes Has Failed To Plead A Claim For Negligence *Per Se*.

In his Fifth Amended Complaint, Rhodes adds a new cause of action (not present in his Second Amended Complaint) that alleges that M-I is liable for his injuries under the doctrine of negligence *per se*.[3] 5th Am. Compl. ¶ 22(O). Aside from being completely new, this assertion of negligence *per se* is wholly devoid of factual or legal support.

To state a claim for negligence *per se*, the plaintiff must identify the statute allegedly violated and that there is "a causal connection between the injury alleged and the violation." *Fla. Marine Transporters, Inc. v. Sanford*, 255 F. App'x 885, 888 (5th Cir. 2007). Rhodes's new claim for negligence *per se* fails to identify which statutes or regulations M-I purportedly violated, and therefore falls far short of the causal connection requirement.

First, Rhodes fails to identify any statute or regulation that M-I violated. *See* Fifth Am. Comp. ¶ 22(O) (alleging solely that M-I violated "statutes and/or regulations and/or applicable Coast Guard, MMS, OSHA, and other rules designed to promote and foster safety which constitutes negligence *per se*"). Under the common-law doctrine of negligence *per se*, rather than just stating that the doctrine applies, Rhodes must specify which *specific* statutes or regulations he alleges were violated. He cannot simply name a category of law and force M-I and this Court to guess at the entire range of laws that could be applicable to his claims. *See, e.g., Green v. Denver & Rio Grande W. R.R. Co.*, 59 F.3d 1029, 1034 (10th Cir. 1995) ("[A]n alleged violation of a *specific, objective safety rule* could warrant an instruction on negligence per se.") (emphasis added); *Hanson v. Rudnick & Wolfe*, 992 F.2d 1216 (Table), 1993 WL 100084, at *3 (6th Cir. Apr. 5, 1993) ("[T]he negligence *per se* claim was dismissed because

---

[3] Because this claim was not presented until now, M-I was unable to include its argument as to this claim in its motion to dismiss, and brings up this new argument only because Rhodes has added a new claim on his sixth complaint.

Appellants failed to state a specific statutory violation upon which to base their claim.") (internal quotation omitted); *Lorbeer v. Am. Tel. & Tel. Co.*, 958 F.2d 377 (Table), 1992 WL 52740, at *2 (9th Cir. Mar. 20, 1992) ("Lorbeer's negligence *per se* claim also fails because he has not identified a specific, relevant statutory violation, or shown that he was a member of the protected class."); *Dougherty v. Santa Fe Marine, Inc.*, 698 F.2d 232, 234 (5th Cir. 1983) ("When the doctrine of negligence per se applies, the general standard of care of a reasonable man is replaced by *a specific rule of conduct* established in a statute or regulation.") (emphasis added); *Cook's Pest Control, Inc. v. Rebar*, 28 So. 3d 716, 726 (Ala. 2009) (holding that judgment as a matter of law should have been granted to defendants on negligence *per se* claim because, in part, plaintiffs "do not identify any *specific provision* of Rule 80-10-9 that were violated.") (emphasis added); *Chambers v. St. Mary's Sch.*, 697 N.E.2d 198, 201 (Ohio 1998) (negligence *per se* is "a violation of a *specific* requirement of law or ordinance.") (emphasis added).

Second, *Rhodes* must allege a casual connection between the statutory violation and his alleged injuries. *See Fla. Marine Transporters*, 255 F. App'x at 888. Because Rhodes fails to even identify which statutes were violated, he cannot allege that the purported statutory violations caused his injuries.

And third, Rhodes must prove that "the statute is intended to protect against the specific type of harm sustained by the plaintiff." *Schmitz v. Canadian Pac. Ry. Co.*, 454 F.3d 678, 682 (7th Cir. 2006); *see also Ellis v. Chase Comm'ns, Inc.*, 63 F.3d 473, 477 (6th Cir. 1995) ("[A] breach of OSHA's specific duty clause is negligence *per se* only if the party injured is a member of the class of persons OSHA was intended to protect."). Because Rhodes has not identified any specific statute or regulation he alleges M-I violated, nor has he alleged how his injuries were the result of that alleged statutory violation, he cannot properly plead that the statute was designed to

protect against the specific injury he suffered. Each of these three flaws is independently fatal to Rhodes's one-sentence allegation of negligence *per se*.

## II. Rhodes Abandons His Products Liability Claim Against M-I.

In his Original Complaint, Rhodes alleged that his injuries were "caused by defective equipment that was manufactured or in the care, custody, and control of one or more of the defendants." Compl. ¶ 12. As explained in M-I's motion to dismiss, this cursory allegation is woefully insufficient to plead a claim for products liability.

In his Fifth Amended Complaint, Rhodes clarifies the claims he attempts to bring against each Defendant in this action. The potential products liability claim against M-I does not appear. Inexplicably, Rhodes's opposition argues that he has a claim against M-I for products liability, when the operative complaint specifically does not allege a products liability claim against M-I (while alleging products liability against other defendants). Because the Fifth Amended Complaint is the operative complaint, and because Rhodes has chosen to not plead a claim of products liability against M-I in the amended complaint, that claim no longer exists.[4]

---

[4] Even if the Original Complaint were the operative complaint, dismissal would be required because, as Rhodes concedes, that Complaint fails to satisfy the *Twombly/Iqbal* pleading standard. To the extent that Rhodes wants to have two operative complaints (to somehow claim relief under both the Original and Fifth Amended Complaints), which he cannot do, even combining the factual allegations of the Fifth Complaint with the legal claims of the Original Complaint fails to allege a viable claim of products liability against M-I.

It is not enough to state a cognizable claim for products liability to merely allege that a defendant provided a product that had some connection to an accident leading to an alleged injury. Products liability claims may be alleged under a variety of theories, including design defect or failure to warn, and may be based on negligence or strict liability. *See Horton v. Buhrke*, 926 F.2d 456 (5th Cir. 1991) (explaining the different ways to bring a products liability suit). Each such theory requires proof of various elements. Here, even combining Rhodes's various Complaints together, he has failed to plead *any* facts bearing on *any* theory of products liability and has not even provided a formulaic allegation that the elements of a products liability claim sufficient to put M-I on notice of the claim being made against it. Even if Rhodes had not dismissed his products liability claim against M-I, it still would fail as a matter of law.

### III. Punitive Damages Are Non-Pecuniary and Unavailable To Jones Act Claimants Seeking Recovery for Personal Injuries.

Finally, Rhodes asks this Court to hold for the first time ever (and contrary to Supreme Court precedent and its progeny) that punitive damages are available to him in this action.

Fifth Circuit law establishes that a Jones Act seaman is limited to seeking recovery of pecuniary damages in a suit for personal injury, even against non-employer third parties. *Scarborough v. Clemco Indus.*, 391 F.3d 660, 668 (5th Cir. 2004). After considering arguments nearly identical to those Rhodes raises here, the Fifth Circuit in *Scarborough* held that "neither one who has invoked his Jones Act seaman status nor his survivors may recovery nonpecuniary damages from non-employer third parties." *Id*. This forecloses Rhodes's argument.

Further, and contrary to Rhodes's citation to dictionaries, the Supreme Court has recognized that "'[p]unitive damages' is a legal term of art that has a widely accepted common-law meaning." *Molzof v. United States*, 502 U.S. 301, 306 (1992). "As a general rule, the common law recognizes that damages intended to compensate the plaintiff are different in kind from 'punitive damages.'" *Id.* at 307. Indeed, "[t]here can be little doubt that punitive damages are nonpecuniary in character." *Anderson v. Texaco, Inc.*, 797 F. Supp. 531, 534 (E.D. La. 1992) (collecting cases); *see also Kopczynski v. The Jacqueline*, 742 F.2d 555, 561 (9th Cir 1984) ("Punitive damages are nonpecuniary."); *Wagner v. Kona Blue Water Farms, LLC,* Civil No. 09-00600 JMS/BMK, 2010 WL 3566730, at *6-8 (D. Haw. Sept. 13, 2010).

Rhodes has brought suit as a Jones Act seaman for personal injuries and therefore is limited to recovery of pecuniary loss only. *Id.* (citing *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990)); *see also Guevara v. Maritime Overseas Corp.*, 34 F.3d 1279, 1283 n.7 (5th Cir. 1994) ("*Miles* bars recovery of nonpecuniary losses in general maritime actions alleging personal injury."); *Wilson v. Noble Drilling Corp.*, Civil Action No. 08-4940, 2009 U.S. Dist. LEXIS

124302, at *6 (E.D. La. Aug. 12, 2009) The fact that punitive damages may be available in other contexts does not weaken the clear precedent that Rhodes, as a Jones Act seaman, is unable to recover punitive damages in a suit for personal injury.

The only authority Rhodes offers for his interpretation of the case law is an unpublished, unreviewed manuscript. Opp. 12 n.38. This is far from adequate authority to refute the binding precedent from the Supreme Court and the Fifth Circuit.

## IV. After Filing Six Complaints That Fail To State A Claim Against M-I, Dismissal With Prejudice Is Warranted.

Rhodes has the benefit of extensive discovery, and has filed six different complaints, but still has been unable to plead a cognizable claim against M-I. Yet he asks that, if his sixth complaint is insufficient, he be allowed leave to file yet another amended complaint. Opp. 16. M-I has already spent much time and effort responding to Rhodes's complaints to point out the legal and factual deficiencies, and would be prejudiced if Rhodes were allowed to continue to amend his complaints without end. If Rhodes had a valid claim against M-I, he should have already alleged it. Because Rhodes has already had six bites at the apple, and the parties have already engaged in all briefing related to a motion to dismiss, the proper result is the dismissal of Rhodes's claims against M-I with prejudice, without granting leave to file any further amended complaint.[5]

---

[5] In the alternative that this Court does allow Rhodes to file a seventh complaint, M-I requests the opportunity to re-brief its motion to dismiss as to the operative complaint.

**CONCLUSION**

For the foregoing reasons, as well as for the reasons set forth in M-I's Memorandum of Law in Support of its Motion to Dismiss, M-I respectfully requests that this Court dismiss with prejudice all claims asserted against it in Rhodes's Amended Complaints.[6]

April 15, 2011  Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

**OF COUNSEL:**
MORGAN, LEWIS & BOCKIUS LLP

By: /s/ Hugh E. Tanner

Derek E. Leon  Hugh E. Tanner
Texas Bar No. 24002463  Texas Bar No. 19637400
5300 Wachovia Financial Center  1000 Louisiana, Suite 4000
200 South Biscayne Boulevard  Houston, Texas  77002
Miami, Florida  33131  Telephone:   (713) 890-5000
Telephone: 305.415.3000  Facsimile:    (713) 890-5001
Facsimile: 305.415.3001

Denise Scofield  **ATTORNEYS FOR DEFENDANT**
Texas Bar No. 00784934  **M-I L.L.C.**
James B. Tarter
Texas Bar No. 24070719
1000 Louisiana, Suite 4000
Houston, Texas  77002
Telephone:   (713) 890-5000
Facsimile:    (713) 890-5001

**ATTORNEYS FOR DEFENDANT**
**M-I L.L.C.**

---

[6] In his Opposition, Rhodes concedes that he has no claim against M-I for unseaworthiness (Opp. 10), and he does not dispute that he lacks the ability to bring a Jones Act claim against M-I, so neither of those claims survives.

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing Reply in Further Support of M-I's Motion To Dismiss Plaintiff's Amended Complaints has been served on all Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the Court's CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL No. 2179, on this 15th day of April, 2011.

      /s/ *Hugh E. Tanner*
      Hugh E. Tanner