UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO ON APRIL, 20, 2010 | CIVIL ACTION |
| | MDL 2179 |
| This Order pertains to member cases 11-258 and 11-259. | SECTION: J(1) |

## ORDER AND REASONS

This matter arises out of the Deepwater Horizon casualty that occurred on April 20, 2010. The two member cases 11-258 and 11-259, were originally filed in a Delaware state court on August 4, 2010, removed to the federal district court in Delaware, and then transferred to MDL 2179 on October 27, 2010 as tag-a-longs by the Judicial Panel on Multidistrict Litigation ("JPML"). In each case, the Plaintiff is The St. Joe Company ("St. Joe"), a large real estate development company which owns approximately 577,000 acres of property in Florida's northwest panhandle. St. Joe's claims are virtually indistinguishable from thousands of other private claims for economic damages allegedly caused by the Deepwater Horizon/BP oil spill. Halliburton Energy Services, Inc. is the sole defendant in member case 11-258. M-I L.L.C. is the sole defendant in member case 11-259. A similar third lawsuit was filed by St. Joe against only Transocean as owner of the Deepwater Horizon offshore drilling vessel.[1] That case was originally filed in Delaware state court, removed to federal court, and a Conditional Transfer Order ("CTO") was issued by the JPML. Before that CTO became final, however, the case was remanded to state court over

---

[1] BP was the lease holder for the Macondo Well being drilled in the Gulf of Mexico by the oil rig Deepwater Horizon. BP has been designated as a "Responsible Party" by the U.S. Coast Guard pursuant to the Oil Pollution Act of 1990 ("OPA"). For unexplained reasons, St. Joe filed three separate lawsuits against other involved parties, but has not sued BP and has not made a claim against the Gulf Coast Claims Facility, the special claims facility established by BP to pay claims arising out of the oil spill.

the objection of Transocean. On March 25, 2011, this Court ordered the state court action against Transocean stayed because of the monition previously issued in the Transocean Limitation Action. All claimants have until April 20, 2011 to file answers or claims in the Limitation. A trial of that case is scheduled to commence in February 2012.

On March 27, 2011, two days after this Court issued its order enforcing the monition or stay of St. Joe's state lawsuit against Transocean, St. Joe filed "Notices of Voluntary Dismissal" of member cases 11-258 and 11-259 "without prejudice." St. Joe did not seek either consent of the opposing parties or a court order. Simultaneously, St. Joe filed a new lawsuit in Delaware state court, this time suing both Halliburton and M-I L.L.C., asserting claims identical to those asserted in 11-258 and 11-259. The new state suit has been removed once again to federal district court in Delaware, and the JPML has issued a Conditional Transfer Order to transfer the case to MDL 2179. Meanwhile, St. Joe has filed another motion to remand the case to state court.

Before the Court are Halliburton's **Motion for Permanent Injunction in Aid of This Court's Jurisdiction over the St. Joe Company (Rec. Doc. 1799)**, and M-I LLC's **Motion for Injunction in Aid of This Court's Jurisdiction over the St. Joe Company (Rec. Doc. 1807)**. Both motions are opposed by St. Joe.

## Background Facts and Parties' Arguments

Since being assigned to handle MDL 2179, this Court has issued a series of Pretrial and Case Management Orders for the orderly and efficient conduct of extensive pretrial discovery and the handling of pretrial proceedings in this complex and massive multidistrict litigation. As part of its case management efforts, the Court has appointed Plaintiff and Defense steering committees, Liaison Counsel, and Coordinating Counsel for the state and

federal governments. After much consultation with counsel and evaluation of the nature and scope of the various types of claims, it became obvious that nearly all the different types of claims arising out of the Deepwater Horizon casualty share common fact issues requiring essentially the same discovery with respect to the liability phase of the litigation. As a consequence, the Court has (1) consolidated and organized the relevant claims into "pleading bundles" rather than separate litigation tracks; (2) bifurcated the liability and damages phases of the litigation; (3) established pretrial procedures for common discovery efforts leading to the liability trial; and (4) scheduled a limitation and liability trial for February 2012.

On October 19, 2010, the Court issued Pretrial Order No. 11 (Case Management Order No. 1) (Rec. Doc. 569), which created pleading bundle B1 to include all claims for private or "non-governmental economic loss and property damages", whether asserted under maritime law, OPA, or state law. St. Joe's claims, which purport to assert state law claims for economic loss and property damage, fit precisely within pleading bundle B1. Pretrial Order ("PTO") No. 11 applies to all existing BP oil spill related cases filed in, removed to, or transferred to, this Court. That Order also required the filing of a Master Complaint for B1 claims. Defendants were required to file responses to the Master Complaint. If a defendant has filed a motion to dismiss under Rule 12 (b) or (c), no answer is required until thirty days after the Court has ruled on such motion. The PSC filed the B1 Master Complaint on December 15, 2010 (Rec. Doc. 879) and an Amended B1 Master Complaint on February 9, 2011 (Rec. Doc. 1128). Halliburton and M-I L.L.C. filed motions to dismiss the B1 Master Complaint (Rec. Docs. 1429 and 1597).

On January 12, 2011, the Court issued PTO No. 25 (Rec. Doc. 983), in order to

clarify "the scope and effect" of the B1 bundle Master Complaint. Any individual plaintiff who is a named plaintiff in a case that falls within pleading bundle B1 "is deemed to be a plaintiff in the applicable Master Complaint." Also, for the procedural and administrative purpose of answering or otherwise responding to the complaints in pleading bundle B1, as to any Defendant named in the Master Complaint, "the allegations, claims, theories of recovery and/or prayers for relief contained within the pre-existing petition or complaint are deemed to be amended, restated, and superseded by the allegations, claims, theories of recovery, and/or prayers for relief in the respective Master Complaint(s) in which the Defendant is named." (Rec. Doc. 983 at 3.) And, of particular note, <u>all individual petitions or complaints that fall within pleading Bundle B1</u>, whether pre-existing or filed hereafter, <u>are stayed until further order of the Court</u>. (<u>Id.</u> at 4.) Accordingly, defendants are precluded from filing answers or other responsive pleadings in the individual member cases.

Finally, the Court notes that PTO No. 11 (Case Management Order No. 1) requires that all motions or other pretrial proceedings with respect to plaintiffs shall be initiated by and/or coordinated through the PSC. If the PSC does not support the motion or other requested action, the moving or requesting party is permitted to file a motion or request, but must include a certificate of non-support. (Rec. Doc. 569 at 13.)

The essence of the two pending motions is that Halliburton and M-I L.L.C. both wish to have the Court enjoin St. Joe from pursuing pretrial proceedings and discovery related to the Deepwater Horizon casualty other than in MDL 2179. The Defendants argue the Court has inherent authority to enjoin St. Joe under the All Writs Act, 28 U.S.C. § 1651, in order to "protect its jurisdiction" as the MDL transferee court. St. Joe argues that the Court was deprived of jurisdiction once it filed the Rule 41 notices of voluntary dismissal.

Alternatively, Defendants contest the validity of St. Joe's Rule 41(a)(1)(A)(I) dismissals. Halliburton contends that the procedural posture of this case precludes an automatic voluntary dismissal under Rule 41(a)(1)(A)(I), which generally allows voluntary dismissal without order of the Court so long as Defendants have not filed an answer or motion for summary judgment. Defendant Halliburton argues that because it had already filed a motion to dismiss in lieu of an answer to the B1 Master Complaint, St. Joe cannot voluntarily dismiss under Rule 41(a)(1)(A)(I). Halliburton cites Exxon Corp. v. Maryland Cas. Co., 599 F.2d 659 (5th Cir. 1979) to support its argument that because its pending motion to dismiss the B1 Master Complaint (Rec. Doc. 1429) included matters outside the pleadings, it was effectively converted to a motion for summary judgment and prevents a Rule 41 dismissal without either consent of the defendants or an order of the Court.

Defendants insist that the Court possesses the authority to act to prevent what they consider "blatant forum shopping" and "abuse of process" intended as an "improper end run" around the JPML's orders and this Court's pretrial management orders. Defendants explain that a district court has ancillary jurisdiction "to secure or preserve the fruits and advantages of a judgment or decree rendered" by that court. Local Loan Co. v. Hunt, 292 U.S. 234 (1934). For additional support, Defendants rely upon Qureshi v. United States, 600 F.3d 523 (5th Cir. 2010), in which the Fifth Circuit held that a district court retained supervisory powers after the plaintiff issued a notice of voluntary dismissal under Rule 41. Defendants also cite to Newby v. Enron Corp., 302 F.3d 295 (5th Cir. 2002), where the MDL district court enjoined a law firm from filing any state court actions without first obtaining leave of court. The Fifth Circuit affirmed, holding that "the district court had the authority to compel lawyers properly before it from engaging in vexatious and needlessly harassing

5

maneuvers that challenged judicial efforts to maintain the cooperative approach essential to preserving fair processes in the complex suit in federal court." Id. at 301.

St. Joe responds that its Rule 41(a)(1)(A)(I) dismissals were appropriate and argues that the facts in Exxon Corp. v. Maryland Cas. Co., 599 F.2d 659 (5th Cir. 1979) are distinguishable. In Exxon, the court converted the motion to dismiss into a motion for summary judgment. St. Joe points to Rule 12(d), which permits a Rule(b)(6) motion to dismiss to "be treated as one for summary judgment under Rule 56" only if matters outside the pleading are not "excluded by the court" and the parties are "given a reasonable opportunity to present all the material that is pertinent to" a motion for summary judgment. St. Joe cites to New Orleans Flooring Supply, Inc. v. Hennessey, 53 F.3d 1280, at *1 (5th Cir. 1995), which rejected the contention that the attachment of affidavits to a motion to dismiss automatically converts that motion into a motion for summary judgment, explaining that "the district court had discretion to consider the affidavits, converting a motion or not, depending on whether it considered the extra-pleadings matters."

St. Joe further argues that the language in Exxon actually supports St. Joe's position rather than Defendants' position. St. Joe points out that the Fifth Circuit wrote, "As we have noted the purpose of [Rule 41(a)] is to permit a plaintiff to take the case out of the court at an early stage if no other party will be prejudiced. The filing of an answer or a motion for summary judgment is a bright-line way to determine when that early stage has ended. The rule operates peremptorily without regard to the amount of effort expended in a particular case." 599 F.2d at 662.

St. Joe insists that it has simply exercised its "absolute right" to dismiss under Rule 41, citing Carter v. United States, 547 F.2d 258, 259 (5th Cir. 1977). Moreover, St. Joe

explains that the Fifth Circuit has put its stamp of approval on parties using Rule 41 to "secure their preferred forum." Harvey Specialty & Supply, Inc. v. Anson Flowline Equip. Inc., 434 F.3d 320, 324 n. 15 (5th Cir. 2005).

Lastly, St. Joe argues that Qureshi v. United States, 600 F.3d 523 (5th Cir. 2010) is inapposite. There, although the Fifth Circuit upheld the district court's jurisdiction over a case after the plaintiff voluntarily dismissed his lawsuit, the Circuit reversed the district court's sua sponte injunction enjoining the plaintiff from filing future lawsuits without written permission from the district court (on the grounds that the court did not afford the plaintiff due process in failing to allow him to object).

## Discussion

The Court obviously has jurisdiction to review the validity of St. Joe's attempted Rule 41 dismissals. District courts have ancillary jurisdiction "to secure or preserve the fruits and advantages of a judgment or decree rendered" by their courts. Local Loan Co. v. Hunt, 292 U.S. 234 (1934). See also Qureshi v. United States, 600 F.3d 523 (5th Cir. 2010) (explaining that a district court retained supervisory powers after the plaintiff issued a notice of voluntary dismissal under Rule 41). This is particularly true in the context of acting as the transferee court in MDL 2179.

This Court has recently issued Pretrial Order No. 34 (Rec. Doc. 1918), which explains the scope of an MDL transferee court's authority to put limits on Rule 41 dismissals. In pertinent part, the Court explained:

> Rule 41 (a)(1)(A) expressly provides that the right of a plaintiff to voluntarily dismiss an action without a court order may be accomplished simply by filing a notice of dismissal. But, this right is "subject to . . . any [other] applicable statute." Other MDL courts, acting pursuant to statutory authority granted to transferee courts by 28 U.S.C. § 1407, have recognized that it is sometimes

7

necessary to put certain restrictions on the exercise of Rule 41 dismissals in order to effectively and fairly manage complex, consolidated MDL litigation. See In re Genetically Modified Rice Litig., 2010 WL 716190, at *8 (E.D. Mo. 2010) (explaining that the MDL court's "managerial authority over the cases" allowed it to restrict the plaintiffs' ability to dismiss); In re Zicam Cold Remedy Marketing Sales Practices and Products Liability Litig., 2010 WL 3402490, at *2 (D. Ariz. 2010) (explaining that Rule 41(a)(1)(A) is subject to the federal statute authorizing multidistrict litigation, 28 U.S.C. § 1407, and that "[w]ere it otherwise, the entire MDL process could be jeopardized by the unilateral action of the parties.")

This Court's rationale is consistent with the theory underlying Rule 41 as explained by the Fifth Circuit–the theory behind the limitation on a plaintiff freely dismissing an action is that after the defendant becomes "actively engaged" in the suit's defense, the defendant is entitled to have the case adjudicated; thus, the case cannot be terminated without either the Defendant's consent, permission of the Court, or a dismissal with prejudice to assure the Defendant against the "renewal of hostilities." Exxon Corp. v. Maryland Cas. Co., 599 F.2d 659, 661 (5th Cir. 1979).

It is true, as St. Joe contends, that ordinarily a party may use Rule 41(a)(1)(A)(i) to voluntarily dismiss a lawsuit without consent of the opposing party or court order if there has been no answer or motion for summary judgment filed. But, management of an MDL often requires procedures and limitations on the parties that do not exist in ordinary cases. For example, an MDL court commonly appoints steering committees and lead or liaison counsel to handle the litigation on behalf of numerous parties that are not necessarily represented by the same counsel. Common factual and legal issues are often litigated by using Master or Consolidated Complaints in lieu of dealing with numerous individual complaints. Many of the pretrial orders and case management orders issued by this Court have put in place special procedures and requirements that would not be necessary in the

ordinary, non-MDL case setting.

The Court finds that St. Joe's attempted "Notice of Voluntary Dismissal" pursuant to Rule 41 (a)(1)(A)(i) was filed in violation of several provisions of the Court's pretrial orders and case management orders in MDL 2179.

All member cases, including 11-258 and 11-259 were automatically stayed as soon as they were transferred to MDL 2179. (Rec. Doc. 983 at 4.) St. Joe did not seek to lift the stay before filing its attempted Rule 41 dismissals.

St. Joe also failed to confer with or act through the PSC or seek PSC consent before filing its notices of dismissals. If the PSC does not support St. Joe's actions, St. Joe is permitted to file on its own, but must include a certificate of non-support. (Rec. Doc. 569 at 13.)

Also, since the individual member cases are stayed, Defendants Halliburton and M-I L.L.C. are precluded from filing answers or other responsive pleadings in 11-258 and 11-259. It would be patently unfair to allow St. Joe to use a Rule 41(a)(1)(A)(i) dismissal without prejudice under this circumstance.

Once St. Joe's cases were transferred to this Court, not only were the individual cases stayed, but St. Joe's claims were deemed "amended, restated, and superseded" by the allegations and claims of the Master Complaint in pleading bundle B1, in which both Halliburton and M-I, L.L.C. are named. Defendants have filed Rule 12(b) motions to dismiss the Master Complaint. Halliburton's motion includes matters outside the pleadings, and therefore may be considered by the Court as a motion for summary judgment. Defendants are not required to file answers until thirty days after the Court rules on the motions to dismiss.

St. Joe has the right, as does any other litigant, to file appropriate motions or seek relief from the Court's pretrial or case management orders. But, St. Joe has no right to unilaterally disregard those orders. The Court will vacate and set aside the attempted Rule 41(a)(1)(A)(i) notices of voluntary dismissal. Any dismissal sought by St. Joe must comply with Pretrial Order No. 34.

Accordingly,

**IT IS ORDERED** that Halliburton's **Motion for Permanent Injunction in Aid of This Court's Jurisdiction over the St. Joe Company (Rec. Doc. 1799)**, and M-I LLC's **Motion for Injunction in Aid of This Court's Jurisdiction over the St. Joe Company (Rec. Doc. 1807)** are **GRANTED IN PART** and that Plaintiff St. Joe's Notices of Voluntary Dismissal against Defendant Halliburton and Defendant M-I (Rec. Docs. 1772 and 1773) are hereby **VACATED AND SET ASIDE.**

**IT IS FURTHER ORDERED** that member cases 11-258 and 11-259 are hereby **REINSTATED** to the docket of the Court as part of MDL 2179.

**IT IS FURTHER ORDERED** that Halliburton's **Motion for Permanent Injunction in Aid of This Court's Jurisdiction over the St. Joe Company (Rec. Doc. 1799)**, and M-I LLC's **Motion for Injunction in Aid of This Court's Jurisdiction over the St. Joe Company (Rec. Doc. 1807)** are **DENIED AS MOOT** with respect to the requested injunctive relief.

New Orleans, Louisiana this 15th day of April, 2011.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE