## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig | * | **MDL No. 2179** |
| "Deepwater Horizon" in the Gulf | * | |
| of Mexico, on April 20, 2010 | * | **SECTION "J"** |
| | * | **JUDGE BARBIER** |
| This Document Relates to: | * | |
| *Roberts v. BP plc, et al.*, No. 10-3815; | * | |
| *Crawford v. BP plc, et al.*, No. 10-1540; | * | |
| *Rhodes v. Transocean, Ltd., et al.*, | * | **MAGISTRATE NO. 1** |
| No. 10-1502 | * | **MAGISTRATE SHUSHAN** |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

**REPLY TO PLAINTIFFS STEERING COMMITTEE'S
OMNIBUS RESPONSE MEMORANDUM TO THE MOTIONS OF
DEFENDANTS ANADARKO PETROLEUM CORPORATION,
ANADARKO E&P COMPANY LP, AND MOEX OFFSHORE 2007 LLC
TO DISMISS PLEADING BUNDLE A CLAIMS**

## I.
## INTRODUCTION

Despite the fact that the Plaintiffs Steering Committee ("the PSC") does not represent any of the plaintiffs in the Pleading Bundle A cases, the PSC has filed an "Omnibus Response" to the Motions to Dismiss filed by Defendants Anadarko Petroleum Corporation, Anadarko E&P Company LP (together "Anadarko"), and MOEX Offshore 2007 LLC ("MOEX Offshore") (together the "Non-Operating Defendants"). The PSC's filing is procedurally unsound and substantively unpersuasive.

The PSC's filing is procedurally improper and threatens to frustrate the filing process crafted by the Court in this multi-district litigation. It does not serve the interests of judicial economy for non-parties like the PSC to file unsolicited legal memoranda, without even seeking leave of court, in a proceeding that is already multi-faceted and complex. The Court should thus

deny the PSC leave to file any response in the Pleading Bundle A proceedings and decline to consider the arguments set forth therein.

Even if the Court elects to consider the PSC's arguments, they offer no succor to the Bundle A Plaintiffs.[1]   The PSC challenges only two aspects of the motions to dismiss filed by Anadarko and MOEX Offshore: the claims for strict liability for ultrahazardous activities and the claims for punitive and other non-pecuniary damages.   As an initial matter, only one Bundle A case against the Non-Operating Defendants, *Crawford*, Case No. 10-1540, continues to implicate any of the issues addressed by the PSC, and the plaintiff in that case failed to oppose Anadarko and MOEX Offshore's Motion to Dismiss his complaint.[2]   Neither argument raised by the PSC is sufficient to prevent the dismissal of any of the Bundle A Complaints against the Non-Operating Defendants.

First, the PSC attempts to convince this court to become the first ever to incorporate into the maritime law the doctrine of strict liability for ultrahazardous activities.   The PSC also asks the Court to accept a novel theory that drilling for oil in the Gulf of Mexico represents an ultrahazardous activity to which strict liability may apply (if it were recognized under maritime

---

[1]   As of the February 11, 2011 filing of the Non-Operating Defendants' Motions to Dismiss in Pleading Bundle A, only six Bundle A cases named Anadarko and MOEX Offshore as defendants.  Of those, two (*Taquino*, No. 10-1921, and *Becnel*, No. 10-3066) have been voluntarily dismissed.  [Rec. Doc. 1888 and 1889].  One (*Reed*, No. 10-4252) amended his complaint in response to the Non-Operating Defendants' Motion to Dismiss to eliminate all claims against Anadarko and MOEX Offshore.  [Rec. Doc. 1611].  Thus the Non-Operating Defendants' Motions to Dismiss the *Becnel*, *Taquino*, and *Reed* complaints are moot.  Two Bundle A plaintiffs (*Roberts*, No. 10-3815, and *Crawford*, No. 10-1540) failed to either amend or oppose the Non-Operating Defendants' Motions to Dismiss.  The sixth Bundle A plaintiff (*Rhodes*, No. 10-1502) substantially amended his Complaint in response to the Non-Operating Defendants' Motion to Dismiss and filed an Opposition [Rec. Doc. 1833 and 1846], to which the Non-Operating Defendants will Reply separately.  For ease of reference, for purposes of this Reply, the Non-Operating Defendants refer to the remaining Bundle A Plaintiffs, *Crawford*, *Rhodes*, and *Roberts*, as the "Bundle A Plaintiffs."

[2]   Only *Crawford* asserts a strict liability claim for ultrahazardous activities against the Non-Operating Defendants.  The two cases that asserted claims for non-pecuniary damages in the context of a wrongful death action, *Becnel* and *Taquino*, have been voluntarily dismissed.

law).  These arguments have been squarely rejected for decades by other courts, and for good reason: deepwater drilling takes place in an appropriate location, provides a valuable resource to society, and can be done in a safe manner.  It therefore lacks several attributes that are required by law before strict liability may be imposed.  *See Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548 (1987).[3]

Second, the PSC argues that punitive damages are permitted under DOHSA.  This claim is misplaced.  In the Fifth Circuit, a Jones Act seaman's remedies against non-employer third parties such as the Non-Operating Defendants do not include punitive damages or damages for emotional distress or mental anguish.  *Scarborough v. Clemco Indus.*, 391 F.3d 660, 666–68 (5th Cir. 2004), *cert. denied*, 544 U.S. 999 (2005).  The PSC fails even to mention, let alone distinguish, the controlling Circuit precedent on this question.  Furthermore, the Court need not even reach the issue of the availability of non-pecuniary damages in evaluating the Non-Operating Defendants' pending Motions to Dismiss; even if the PSC's arguments were somehow accepted as a general matter, the Bundle A Plaintiffs fail to state any viable negligence or gross negligence claims against the Non-Operating Defendants in the first instance—a point that remains uncontested by either the PSC or the Bundle A Plaintiffs.

For these reasons, the Court should grant the motions filed by the Non-Operating Defendants to dismiss the Pleading Bundle A Complaints.

---

[3]      The PSC's emphasis on strict liability, moreover, only emphasizes that Anadarko and MOEX Offshore, as mere non-operating investors with no operational control over the well or the *Deepwater Horizon*, cannot be held liable under the traditional principles of negligence required under the general maritime law.

## II.
## ARGUMENT

### A.      The Plaintiffs Steering Committee's Filing is Improper.

The PSC does not represent any of the Pleading Bundle A Plaintiffs asserting claims against the Non-Operating Defendants.  There is no indication that the Bundle A Plaintiffs at issue have requested, adopted, or otherwise endorsed the PSC's "Omnibus Response Memorandum."  The PSC has neither sought nor been granted leave to file any oppositions in these Bundle A cases.  Thus, the PSC's unsolicited filing is unauthorized, wastes judicial and litigant resources, and frustrates the briefing program adopted by this Court to manage this complex multi-district litigation proceeding.  The Court should therefore decline to consider any of the arguments raised by the PSC in its Omnibus Response.

The PSC's unsolicited filing unnecessarily complicates the detailed procedure crafted by this Court for adjudicating the large number of cases and issues encompassed in this matter.  The PSC's role and authority to act on behalf of the disparate groups of plaintiffs is strictly delineated.  The Court's pretrial orders set forth the terms for filing various claims and answers and for filing motions under Rule 12.  *See* PTO Nos. 11, 31.  Nowhere in those orders has the Court authorized the PSC to freely file oppositions in any case or on any matter that it unilaterally chooses.  The PSC's authorization to file pleadings is expressly limited to "motions, requests for discovery or other pre-trial proceedings" initiated by plaintiffs.  *See* PTO No. 11, at 13. Although the PSC has been granted the authority to "oppose when necessary any motions submitted by the defendant or other parties which involve matters within the sphere of the responsibilities of the PSC," that sphere is expressly limited to matters of discovery and other specific administrative tasks.  *See* PTO No. 8, at 3–4.  It does not extend to Rule 12(b)(6) motions in individual Bundle A cases.

Furthermore, the PSC has no actual interest in the outcome of the Non-Operating Defendants' Motions to Dismiss in Pleading Bundle A because the questions of law raised in the PSC's filing do not pertain to any of the claims actually advanced by the PSC in the multi-district litigation.  The PSC does not assert a claim against Anadarko, MOEX Offshore, or any other defendant for strict liability for ultrahazardous activities in either the B1 or B3 Master Complaints and does not assert any claims for non-pecuniary damages in the context of a seaman's personal injury or wrongful death.

Simply put, the Court should not permit the PSC (or any other participant in this MDL) to submit oppositions or other filings in response to motions that do not directly concern them without leave of Court.  Otherwise, the Court and litigants will be inundated with repetitive and unnecessary briefing.

Furthermore, as noted above, only one of the six Bundle A Plaintiffs asserting claims against the Non-Operating Defendants has opposed the Non-Operating Defendants' Motion to Dismiss. In those cases where a plaintiff has elected to respond to a Motion to Dismiss by amending its compliant, *see* Nos. 10-1502 and 10-4252, or declined to oppose the Motions to Dismiss, *see* Nos. 10-1540 and 10-3815, the unauthorized response from the PSC cannot be used to preserve claims or arguments abandoned by the actual plaintiffs involved.

In sum, the PSC's response exceeds its court-appointed authority and threatens to unnecessarily complicate the Court's briefing procedures and increase the burden and expense on all involved in this MDL.  Because the PSC has neither sought nor been granted leave to file an opposition to the Non-Operating Defendants' Pleading Bundle A Motions to Dismiss, and because such leave would be inappropriate, the Court should decline to consider the PSC's

Omnibus Response to the Non-Operating Defendants' pending Motions to Dismiss in Pleading Bundle A.

      **B.**      **The PSC's Arguments Do Not Alter the Conclusion that the *Crawford* Plaintiff Fails to State a Claim of Strict Liability for Ultrahazardous Activity.**

            **1.**      **Maritime Law Does Not Recognize a Strict Liability Claim for Ultrahazardous Activities.**

The PSC encourages this Court to inject the doctrine of strict liability for ultrahazardous activities into the general maritime law, despite nearly a century of uniform contrary maritime authority rejecting the doctrine.  The PSC does not deny the existence of this authority, but instead tries to undermine it by pointing to an alleged "trend" toward acceptance of the concept of strict liability for ultrahazardous activities in the general maritime law.  There is no such trend.[4]  This Court should decline the PSC's invitation to forge a radical new theory of liability in the general maritime law.

The PSC's claim of a "trend" toward acceptance of the doctrine of strict liability is based upon an expansive misreading of the Supreme Court's decision in *East River Steamship Corp. v. TransAmerica Delaval, Inc.*, 476 U.S. 858 (1986).  There, the Supreme Court was asked to incorporate products liability into maritime law at a point when "[t]he Courts of Appeals sitting in admiralty overwhelmingly ha[d] adopted concepts of products liability, based both on negligence, and on strict liability," and "the question whether principles of strict products liability are part of maritime law [wa]s no longer seriously contested."  *Id.* at 865 (internal citations and quotation marks omitted).

The legal landscape governing strict products liability in general maritime law at the time

---

[4]      If anything, the trend over time among courts is <u>against</u> extension of strict liability for ultrahazardous activities into new areas.  *See* Gerald W. Boston, *Strict Liability for Abnormally Dangerous Activity: The Negligence Barrier*, 36 SAN DIEGO L. REV. 597, 598 (1999) ("[S]trict liability for abnormally dangerous activity . . . has evolved to the point of near extinction . . . .").

of *East River* thus stands in marked contrast to that of strict liability for ultrahazards.  The PSC fails to cite a single maritime case, let alone an "overwhelming" majority of them, that have adopted the ultrahazard doctrine.  This is because courts sitting in admiralty have steadfastly rejected the theory.  *See In re Complaint of Weeks Marine, Inc.*, No. 04-494, 2005 WL 2290283, at *3, *4 n.2 (D.N.J. Sept. 20, 2005) ("[T]here is no strict liability cause of action pursuant to federal maritime law," and therefore, "even if New Jersey were to recognize pile driving as an abnormally dangerous activity, such a claim would likely be preempted by federal maritime law" (citation omitted)), *aff'd*, 270 Fed. Appx. 97 (3d Cir. 2008); *Great Lakes Dredge & Dock Co. v. City of Chicago*, No. 92 C 6754, 1996 WL 210081, at *5 (N.D. Ill. Apr. 26, 1996) ("federal maritime law, which governs the present admiralty proceeding, does not recognize the doctrine of strict liability for abnormally dangerous or ultrahazardous activity"); *see also EAC Timberlane v. Pisces, Ltd.*, 745 F.2d 715, 721–22 (1st Cir. 1984) (imposing a rule of strict liability for the carriage of ultrahazardous materials would "be inconsistent with established principles of general maritime law"); *Actiesselskabet Ingrid v. Cent. R.R. Co.*, 216 F. 72, 78 (2d Cir. 1914) (rejecting applicability of strict liability principles in case of vessel that exploded while transporting dynamite).

In fact, courts have rejected the precise argument that the PSC makes here.  They have instead recognized that *East River* created only a narrow exception for strict products liability to the general rule that "there is no strict liability cause of action pursuant to federal maritime law." *In re Complaint of Weeks Marine*, 2005 WL 2290283, at *3 n.1 ("Strict liability has been incorporated into federal maritime law solely in the context of products liability" (citing *East River*, 476 U.S. at 865) (emphasis added)); *see also EAC Timberlane*, 745 F.2d at 722 n.13 (rejecting plaintiffs' claim that strict liability has been incorporated into admiralty law, noting

that "only . . . the doctrine of strict <u>products</u> liability has been uniformly adopted by all of the states and . . . incorporated into admiralty law" (emphasis in original)).

It thus remains fundamental that the maritime law of tort requires "'a finding of fault that contributed to the damage incurred.  From earliest times, this rule has been consistently applied.'"  *Maryland Dep't of Natural Res. v. Kellum*, 51 F.3d 1220, 1224 (4th Cir. 1995) (quoting THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW 444 (1987)).  There is simply no supporting authority or any other basis on which the Court might break from this well-established principle.  *See Terre Aux Boeufs Land Co., Inc. v. J.R. Gray Barge Co.*, 803 So.2d 86, 96 (La. Ct. App. 2001) (application of state strict liability law was preempted and "would have been inconsistent with the traditional requirement in maritime law that any finding of liability be based on fault").  Any such ruling would dramatically alter the substantive maritime law and thus deprive Anadarko and MOEX Offshore of their "substantial admiralty rights." *Kellum*, 51 F.3d at 1228 (citation and quotation marks omitted).

## 2.    Deepwater Oil Drilling Would Not Be An Ultrahazardous Activity.

Even if the general maritime law were, for the first time, to recognize ultrahazard liability, the PSC's argument that such liability would apply in this case is groundless.  The PSC's recitation of the factors in Section 520 of the Restatement (Second) of Torts fails to substantiate its claim that offshore oil drilling is an ultrahazardous activity as a matter of law, particularly in light of the Fifth Circuit's prior rejection of ultrahazard liability for underwater drilling on the Outer-Continental Shelf.  *See Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548, 550 (1987).

The PSC relies heavily on the Final Report of the National Commission on the BP Deepwater Horizon Oil Spill and Offshore Drilling ("Final Report"), even though neither the

Final Report nor any of its findings are incorporated into or even mentioned in the only Bundle A Complaint that includes an ultrahazardous activity claim (*Crawford*, No. 10-1540).  The PSC's reference to a document outside the pleadings cannot save the *Crawford* complaint from dismissal.  *See Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) ("Generally, a court ruling on a motion to dismiss may rely on only the complaint and its proper attachments . . . Because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint . . . ." (citations omitted)).  Even if the Court considers the Final Report, however, it does not support the PSC's argument.

Citing the Final Report, the PSC claims that the "special and different challenges" posed by deepwater drilling make it abnormally dangerous.  The uniqueness of the risk, however, is not an element of the legal standard.  As explained by the Restatement, "when safety <u>cannot be attained</u> by the exercise of due care there is reason to regard the danger as an abnormal one." RESTATEMENT (SECOND) OF TORTS § 520, cmt. h (1977) (emphasis added).  Indeed, the very report relied upon by the PSC refutes the argument that the activity cannot be conducted in a safe manner:  "Drilling in deepwater . . . can be done safely.  That is one of the central messages of this report."  Final Report at 293.  Indeed, the Final Report recognizes that "[c]urrent technology enables drilling in water <u>twice as deep</u> as Macondo."  *Id.* at 299 (emphasis in original).  The National Commission's determination that deepwater drilling may be done safely also comports with the conclusion of the court in *Ainsworth* that "drilling operations are not ultrahazardous" because they do not "present a risk of harm that cannot be eliminated through the exercise of due care."  829 F.2d at 550 (internal quotations omitted).<u>[5]</u>

---

[5]      The PSC brusquely dismisses *Ainsworth* as irrelevant because it was decided under Louisiana law, and because of the advances made in deepwater drilling technology.  Omnibus Response at 5–6. *Ainsworth*, however, has repeatedly been cited in cases applying maritime law.  *See, e.g.*, *Gremillion v. Gulf Coast Catering Co*., No. 88-4544, 1989 WL 104100, at *6 (E.D. La. Sept. 5, 1989), *aff'd*, 904 F.2d

The PSC also argues that it was inappropriate to conduct deepwater drilling at the Macondo site.  According to the Restatement itself, however, "[o]il wells can be located only where there is oil."  RESTATEMENT (SECOND) OF TORTS § 520, cmt. j (1977).  If drilling an oil well is "of sufficient value to the community," it "may not be regarded as abnormally dangerous when [it is] so located, since the only place where the activity can be carried on must necessarily be regarded as an appropriate one." *Id.*

The tremendous value to the community of offshore oil and gas is indisputable.  Again, in the words of the Final Report so heavily relied on by the PSC:

> Offshore oil and gas will continue to be an important part of the nation's domestic energy supply for many decades.  Offshore wells yield one-third of current U.S. oil production, and in recent decades helped offset declines in production elsewhere in the United States (U.S. production peaked in 1970).  That already-crucial role is likely to increase.  The area of federal jurisdiction, the outer continental shelf, contains an estimated 85 billion barrels of oil in technically recoverable resources—more than all onshore resources and those in the shallower state waters combined.  The future of domestic oil production will rely to a substantial extent on current outer continental shelf sources and further development of deposits there—in progressively deeper, more distant waters, and perhaps in such challenging environs as the Alaskan Arctic.

Final Report at 294 (footnotes omitted).   As the National Commission concluded, the "risk in the petroleum sector can be kept at a level society is willing to accept" in exchange for necessary resources.  *Id.* at 218.  Thus, even considering the final report, deepwater drilling cannot be considered an abnormally dangerous activity under the very test that the PSC urges this Court to adopt.

In sum, the PSC's arguments fail to alter the conclusion that the *Crawford* plaintiff fails to state a claim for strict liability under the general maritime law.  *See In re Complaint of Weeks*

---

290 (5th Cir. 1990) (citing *Ainsworth* in tort case under maritime law); *Fontenot v. Southwestern Offshore Corp.*, 787 So.2d 588, 594 (La. Ct. App. 2001) (tort case under maritime law).  The PSC fails to explain why the *Ainsworth* decision would come out differently if analyzed in a maritime case.  Indeed, the reason that there are no federal maritime cases addressing this topic is precisely because admiralty courts have refused to recognize the entire doctrine of strict liability for ultrahazardous activity.

*Marine, Inc.*, 2005 WL 2290283, at \*10 (granting defendant's motion to dismiss plaintiff's strict liability claim based upon pile driving activity alleged to be abnormally dangerous); *Great Lakes*, 1996 WL 210081, at \*5 (granting defendant's motion for judgment on the pleadings "as to any claims founded upon abnormally dangerous or ultrahazardous activity").

> **C.      Plaintiffs' Claims for Non-Pecuniary Damages Must Be Dismissed.**

The PSC also attempts to convince the Court that the availability of punitive and other nonpecuniary damages under the Death On the High Seas Act ("DOHSA") is an open question of law for this Court.[6]  Despite its lengthy submission, the PSC fails to cite the current law of the Fifth Circuit, which is that a "Jones Act seaman, injured outside of territorial waters," may not "recover nonpecuniary damages from a non-employer third party."  *Scarborough v. Clemco Indus.*, 391 F.3d 660, 666–68 (5th Cir. 2004), *cert. denied*, 544 U.S. 999 (2005). "Punitive damages are nonpecuniary."  *Neal v. Barisich, Inc.*, 707 F. Supp. 862, 873 (E.D. La. 1989); *Motts v. M/V Green Wave*, 210 F.3d 565, 572 (5th Cir. 2000) (claimant "can recover punitive and other non-pecuniary damages only if DOHSA is inapplicable").  *Scarborough* is directly on point, binds this Court, and confirms that the Pleading Bundle A Plaintiffs cannot state a claim for punitive damages or other non-pecuniary damages against the Non-Operating Defendants.

The PSC argues that because punitive damages are measured in money, they are "pecuniary" and therefore recoverable under DOHSA, but this semantic exercise misses the point.  PSC Response at 10.  DOHSA permits recovery only of "fair compensation for pecuniary

---

[6]      It should be noted that the PSC either confuses or misrepresents the arguments made by the Non-Operating Defendants with respect to the Bundle A Complaints.  Although the PSC contends that the Non-Operating Defendants "draw[] no distinction between seamen and non-seamen plaintiffs on the one hand or employers and third party defendants on the other," *see* Omnibus Response at 8–9, the Pleading Bundle A motions to dismiss all involve claims by Jones Act seamen against third-party non-employers. The PSC also incorrectly suggests that, for the purposes of these motions, Non-Operating Defendants have argued that loss of economic support is a non-pecuniary damage unavailable under the Jones Act. *See* Omnibus Response at 9.

loss sustained . . . ."  46 U.S.C. § 30303.  Punitive damages are not pecuniary damages because they do not compensate for pecuniary losses.  *Northwestern Nat'l Cas. Co. v. McNulty*, 307 F.2d 432, 434 n. 2 (5th Cir. 1962) (punitive damages are "'damages other than compensatory or nominal damages awarded against a person to punish him for his outrageous conduct'" (quoting RESTATEMENT (SECOND) OF TORTS § 903 (1977)).  In *Anderson v. Texaco, Inc*., Judge Feldman explained that "[t]here can be little doubt that punitive damages are nonpecuniary in character. Pecuniary damages are awards designed to restore 'material loss which is susceptible of a pecuniary valuation.'  Punitive damages, on the other hand, do not compensate for a loss, but rather, are imposed to punish and deter by virtue of the gravity of the offense."  797 F. Supp. 531, 534 (E.D. La. 1992) (internal citations omitted).[7]  The PSC describes the conclusion that punitive damages are not pecuniary damages as "untested" and "unsupported," but Judge Feldman also noted in *Anderson* that "the post- *Miles* district court cases, in this district and in others, speak with one voice in concluding that punitive damages are nonpecuniary and, therefore, are not recoverable . . . ."  *Id.* (collecting cases).  In stark contrast, the PSC cites no authority in support of its argument.

Moreover, the Non-Operating Defendants cannot be held liable for punitive damages or other non-pecuniary damages in any event because they owed no legal duty to any of the Pleading Bundle A Plaintiffs.  As argued in the Non-Operating Defendants' Motions to Dismiss,

---

[7]     As the Non-Operating Defendants have noted (and the PSC has not disputed), the Supreme Court's decision in *Atl. Sounding Co. v. Townsend*, 129 S. Ct. 2561 (2009), offers the Pleading Bundle A plaintiffs no relief.  There, the Court recognized a punitive damages remedy only for wrongful failure to pay maintenance and cure, and it reiterated that Congress has limited Jones Act remedies to pecuniary losses.  *Id.* at 2564.  Although the PSC notes that the Supreme Court declined to address the meaning of "pecuniary loss" for purposes of the Jones Act, this only means that the Fifth Circuit's prior holdings that such losses do not include punitive damages remain good law.  *See, e.g.*, *Motts v. M/V Green Wave*, 210 F.3d 565, 572 (5th Cir. 2000).

a duty to prevent harm resulting from oil and gas operations arises only as a consequence of operational control over the operations.  *See, e.g.*, *Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548, 550 (5th Cir. 1987), *cert. denied*, 485 U.S. 1034 (1988).  Further, it is settled that where a principal retains an independent contractor to conduct oil and gas operations but does not retain control over or participate in the actions of the contractor, the principal owes no duty to the contractor's employees.  *Thomas v. Burlington Res. Oil & Gas Co.*, No. 99-3904, 2000 WL 1528082, at *2 (E.D. La. Oct. 13, 2000) (Barbier, J.).

Neither Anadarko nor MOEX Offshore is plausibly alleged to have owned or possessed a charterer interest in the *Deepwater Horizon* or to have had any operational control or involvement over the rig or the well.  Such interest or control is a prerequisite to legal liability for the harms alleged by the Bundle A Plaintiffs, and it is lacking.  *Ainsworth*, 829 F.2d at 550. Neither the PSC nor the Bundle A Plaintiffs contest this.  Without viable claims for any violation of a legal duty by the Non-Operating Defendants (or a viable claim for strict liability, *see supra*) it follows that the Pleading Bundle A plaintiffs cannot recover any damages from the Non-Operating Defendants, let alone punitive damages or other non-pecuniary damages. *See Gaia Techs. Inc. v. Recycled Prods. Corp.*, 175 F.3d 365, 373 (5th Cir. 1999) (holding that because "individual defendants are not liable for any state law causes of action, there is no basis for awarding punitive damages").

Accordingly, for the reasons set forth above and in the Non-Operating Defendants' Motions to Dismiss, the Court should dismiss the Bundle A Plaintiffs' Complaints against the Non-Operating Defendants.

Respectfully submitted,

DATED: April 15, 2011                    BINGHAM McCUTCHEN LLP


/s/ *Ky E. Kirby*
Ky E. Kirby
ky.kirby@bingham.com
David B. Salmons
david.salmons@bingham.com
Michael B. Wigmore
michael.wigmore@bingham.com
Warren Anthony Fitch
tony.fitch@bingham.com
Randall M. Levine
randall.levine@bingham.com
2020 K Street, NW
Washington, DC 20006-1806
Telephone (202) 373-6000
Facsimile (202) 373-6001

James J. Dragna
jim.dragna@bingham.com
Bingham McCutchen LLP
355 South Grand Avenue
Suite 4400
Los Angeles, California 90071-3106
Telephone (213) 680-6436
Facsimile (213) 680-8636

KUCHLER POLK SCHELL
WEINER & RICHESON, LLC

Deborah D. Kuchler, T.A. (La. Bar No. 17013)
dkuchler@kuchlerpolk.com
Janika Polk (La. Bar No. 27608)
jpolk@kuchlerpolk.com
Robert Guidry (La. Bar No. 28064)
rguidry@kuchlerpolk.com
1615 Poydras Street, Suite 1300
New Orleans, LA  70112
Tel:  (504) 592-0691
Fax:  (504) 592-0696

14

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, pursuant to Pre-trial Order No. 12, I have caused the foregoing to be served on all counsel via the Lexis Nexis File & Serve system, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, who will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on April 15, 2011.


_____/s/ *Ky E. Kirby*_____
Ky E. Kirby