

LEXISNEXIS® FILE & SERVE
36650576
E-SERVICE
Mar 23 2011
10:56PM

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig | * | MDL No. 2179 |
| "Deepwater Horizon" in the Gulf | * | |
| of Mexico, on April 20, 2010 | * | SECTION: J |
| | * | |
| Applies to: *All Cases.* | * | JUDGE BARBIER |
| | * | |
| *   *   *   *   *   *   *   *   * | * | MAGISTRATE SHUSHAN |

**AGREED 30(b)(6) DEPOSITION NOTICE OF TRANSOCEAN DEFENDANTS
(WITH 30(b)(5) DOCUMENT REQUESTS)**

By agreement of Plaintiffs Liaison Counsel, Defense Liaison Counsel, Coordinating

Counsel for the States, Coordinating Counsel for the U.S., and Counsel for Defendants (and

Petitioners in Limitation), Triton Asset Leasing GmbH, Transocean Holdings, LLC, Transocean

Deepwater, Inc., and Transocean Offshore Deepwater Drilling, Inc., (collectively the

"Transocean Defendants"), the Transocean Defendants shall, pursuant to Rule 30(b)(6) of the

Federal Rules of Civil Procedure and PRE-TRIAL ORDER NO. 17, as supplemented and amended

by PRE-TRIAL ORDER 27, designate and produce one or more officers, managers, agents,

employees, or other representatives of the Transocean Defendants to discuss the Areas of Inquiry

identified below.  The times and locations of the depositions will be scheduled in conjunction

with the fact depositions of the designees in their individual capacities, or otherwise as may be

scheduled with Judge Shushan and the parties.

EXHIBIT

A

**Areas of Inquiry**

1.      The existence, nature, scope and contents of any and all Failure Modes Effects and Critical Analysis, Quantified Risk Assessment ("QRA") and/or Major Accident Risk ("MAR") analysis or evaluation relating to (i) the Deepwater Horizon, and/or (ii) the exploration, development, production and/or drilling of (a) the Macondo Well, and/or (b) deepwater drilling in the Gulf of Mexico, including, but not limited to, the Failure Modes Effects and Critical Analysis of the DIP System in or around June 2009, and/or any cost-benefit or risk-benefit analysis which attempts to quantify or otherwise place a cost on the value of human life.

2.      The existence, nature, scope and/or results of any and all selecting, specifying, testing, examining, evaluating for suitability, certifying and/or recertifying of the Deepwater Horizon BOP, its design, and/or its component parts, including, but not limited to, the blind sheer rams, the variable bore ram, the annular preventers, the Emergency Disconnect System ("EDS"), Emergency Shut-Down ("ESD"), the "dead man" system, the diverter system, the batteries, the pods, and/or the solenoids, from 2000 to April 20, 2010, and all communications with any other defendant concerning such matters.

3.      The existence, nature, scope, analysis and/or evaluation of any actual and/or potential automated or manual alarms and/or algorithms for the detection and warning of kicks and/or other anomalies in terms of flow rate, volume and/or pressure.

4.      The background, facts, casues and/or investigation surrounding, and/or lessons and/or recommendations and/or advisories and powerpoints from, the incident on a Transocean vessel in or around the North Sea in or around December of 2009.

5.      The existence, nature and substance of any discussions with BP, MOEX, Anadarko, Hallibutorn (and/or Sperry), Cameron and/or the Coast Guard regarding the potential costs, risks, benefits and other analyses or evaluations of potential methods to cap, control, contain, shut-in and/or kill the Macondo Well after April 20, 2010.

6.      The existence, nature, scope, contents, and results of discussions, evaluations and/or analysis regarding the decision to use the "long string" as opposed to the "liner" casing, between approximately April 10 and April 20, 2010, at the Macondo Well.

7.      The existence, nature, scope, contents, and results of discussions, evaluations and/or analysis regarding the decision to comply with and/or deviate from the BP standard, guideline, recommendation, requirement and/or protocol that the top of the annular cement be 1,000 feet above the uppermost hydrocarbon zone, between approximately April 10 and April 20, 2010, at the Macondo Well.

Page 2

8.      The existence, nature, scope, substance, and results of discussions, evaluations and/or analyses regarding the decision not to conduct or prepare cement bond logs, on or around April 20, 2010, at the Macondo Well.

9.      Communications or discussions with BP and/or Halliburton, and/or other knowledge, input, participation and/or review of BP's Application for Permit to Modify the temporary abandonment procedure on or around April 16, 2010, including the deviations, if any, between that procedure and the procedure(s) described in (a) the April 12, 2010 Drilling Plan, (b) the April 14, 2010 Morel "Forward Ops" E-Mail, or (c) the April 20, 2010 "Ops Note".

10.     Communications or discussions with BP and/or Halliburton, and/or other knowledge, evaluation and/or analyses of a so-called "bladder effect".

11      Any and all communications or discussions between or among You, BP and/or Halliburton, and/or any other knowledge or experience You have regarding the estimated, budgeted, expected and/or actual time and/or cost savings realized by:
        1.      Number and Nature of Centralizers Utilized
        2.      Foregoing Substantiated Foam Stability Test Results
        3.      Not Running Cement Bond or other Evaluation Log
        4.      Using Spacer Made from Combined Lost Circulation Materials to Avoid Disposal Issues
        5.      Displacing Mud from Riser Before Setting Surface Cement Plug
        6.      Setting Surface Cement Plug 3,000 Feet Below Mud Line in Seawater
        7.      Not Installing Additional Barriers During Temporary Abandonment Procedure
        8.      Not Performing Further Well Integrity Diagnostics in Light of Troubling and Unexpected Negative Pressure Test Results
        9.      Bypassing Pits and Conducting Other Simultaneous Operations During Displacement

12.     The presence, participation, supervision or other involvement of officers, directors or other employees of BP plc: (i) in the exploration, development, drilling and/or production of the Macondo Well, from January 1, 2010 thru April 20, 2010; (ii) in the advertising and/or public relations effort directed to and/or conducted within the United States from April 20, 2010, thru the present; (iii) in responding to Federal, State and/or Local executive, legislative and/or regulatory officers, bodies and/or agencies within the United States from April 20, 2010, thru the present; (iv) in the well-control, containment, capping and/or kill efforts regarding the Macondo Well, from April 20, 2010 thru August of 2010; and/or (v) in the establishment, maintenance, staffing, funding and/or administration of the BP Claims Facility and/or Gulf Coast Claims Facility.

13.     The presence, participation, supervision or other involvement of officers, directors or other employees of Transocean Ltd: (i) in the exploration, development, drilling and/or

production of the Macondo Well, from January 1, 2010 thru April 20, 2010; (ii) in responding to Federal, State and/or Local executive, legislative and/or regulatory officers, bodies and/or agencies within the United States from April 20, 2010, thru the present; (iii) in the well-control, containment, capping and/or kill efforts regarding the Macondo Well, from April 20, 2010 thru August of 2010.

14. The reasons for, and the scope, recommendations, and findings of, any audits or rig assessments conducted on the Deepwater Horizon since 2005, including any actions that were taken in response to any audit findings.

15. Communications or discussions with BP and/or other knowledge, input, participation, and review regarding the planning, conducting, and interpreting of the negative pressure test(s) conducted by BP and/or Transocean on board the Deepwater Horizon on April 20, 2010.

16. Transocean's training and arrangements for training of its employees in the management of complex systems on the Deepwater Horizon.

17. Your communications with BP re your or its evaluations of, and changes to operations at the Macondo Well in response to, well control events (including but not limited to the March 8 "kick") between February 1, 2010 and April 20, 2010.

18. Discussions, decisions, rational, analysis, or evaluation regarding the use and/or suitability of Loss Control Materials as a spacer when performing the negative pressure test.

19. Communications or discussions with APC, AEP, MOEX Offshore, MOEX USA and MOECO regarding the Macondo well operations or the Deepwater Horizon.

20. Communications, discussions, or other knowledge of the compensation for BP and/or Transocean employees working on the Deepwater Horizon or with regard to the Macondo well, including performance incentives which take into consideration the length of time to complete the well and the number of safety-related incidents encountered while drilling and completing the well.

21. The existence, nature, scope, contents, substance, and results of discussions, evaluations, analyses and/or correspondence relating to the March 8th well control event at the Macondo Well.

22. With respect to the Macondo well, the existence, nature, contents, and results of any evaluations and/or analyses between, among or with any party relating to foam stability, cement testing, the nature or number of centralizers, the nature or number of float valves and/or float collars, the nature and/or detection of kicks, or other well control efforts

and/or events on or before April 20, 2010.

23     The existence, nature, scope, and substance of any Transocean policy or procedure relating to conducting, interpreting and/or approving negative tests.

24.    Any estimates, predictions, and/or analyses of anticipated pressures – both static pressure and/or dynamic pressure – within the formations of the Macondo Prospect and/or the Macondo Well, (including, but not limited to, the last 1000 feet of hole), including, but not limited to, the information provided to Transocean and the manner in which such information was utilized in selection of or approval of the BOP assembly used by the Deepwater Horizon for the Macondo Well.

25.    Knowledge, discussions and/or communications with Cameron and/or BP and/or others prior to April 20, 2010, regarding the considerations, factors and/or decisions to purchase and/or utilize the particular BOP stack design/configuration, equipment and/or components utilized with the Deepwater Horizon, either regarding the drilling and/or temporary abandonment of the Macondo Well, or otherwise.

26.    The Pressure Rating for each component of the Macondo BOP assembly, as manufactured, and/or as such existed on April 20, 2010.

27.    The manufacturer of each component of the BOP assembly on the Macondo well on April 20,2010, including:
       A.      Date of manufacture of each component of BOP assembly on Macondo well as such existed on April 20, 2010?
       B       Date of sale by manufacturer of each component of BOP assembly?
       C.      All technical manuals, operating instructions, capability and operational limits warnings, and other warnings if any furnished or given by anyone to You, and from whom received and date?

28.    Any knowledge, information, evaluation and/or testing or study by anyone or any entity prior to April 20, 2010 on any component of the BOP Assembly that any component or component type or model substantially similar to the BOP Assembly would may or would have difficulty performing as designed for its intended purpose with a dynamic flow pressure of:
       A.      Less that the rated pressure of the BOP Assembly component in question that existed at any time on April 20, 2010 with the Macondo;
       B.      Equal to the rated pressure of the BOP Assembly component in question that existed at any time on April 20, 2010 with the Macondo;
       C.      That may exceed to the rated pressure of the BOP Assembly component in question that existed at any time on April 20, 2010 with the Macondo.

29.     Knowledge or awareness, prior to April 20, 2010, of any device or equipment, or design for same, that would ave had a better chance (than the BOP Assembly) functionally of controlling (stopping the uncontrolled release of high pressure oil and gas from) the Macondo Well on April 20, 2010.

30.     Pre-April 20, 2010 and/or Post-April 20, 2010 investigation, evaluation, analysis and/or conclusions regarding: (a) The availability, desirability and/or feasibility of an alarm system that automatically tells the operator that there is mud or gas in the BOP stack; (b) The availability, desirability and/or feasibility of an alarm system that automatically tells the owner or operator when the batteries are weak; (c) The propsensity for gasket failure; (d) The anticipated longevity or use of rubber gaskets within the BOP assembly; (e) The availability, desirability and/or feasibility of a fail-safe in the event of failure at one or more of the rubber gaskets.

31.     Your policies, practices, requirements, standards, training, maintenance, testing and/or procedure of personnel regarding well control training and training for potential catastrophic events.

32.     The nature and substance of information you conveyed or made available prior to April 21, 2010 to Anadarko Petroleum Corp., Anadarko E&P L.P., MOEX Offshore 2007 LLC, MOEX USA, or Mitsui Oil Exploration Co. regarding the design of, or drilling or other operations at, the Macondo Well.


**Document Requests**

The Transocean Defendants are further requested, in accordance with Rule 30(b)(5) of the

Federal Rules of Civil Procedure,1 as well as Rule 26, Rule 34, and PRE-TRIAL ORDERS NOS. 16,

17 and 27, to produce, or identify by specific Bates Number(s) (if already produced), the

following documents, at least ten (10) days prior to the time of the relevant designee's

deposition:


**First Set of Requests**

For each Area of Inquiry identified above, please produce all documents provided to, reviewed with, utilized by, and/or relied upon by the deponent to prepare for his or her deposition testimony.

**Second Set of Requests**

For each Area of Inquiry identified above, please produce all documents which relate, pertain, evidence and/or reflect the issues, topics and/or events described therein or associated therewith.

**Third Set of Requests**

For each corporate designee, a copy of his or her current resume or CV, as well as a copy of any and all prior testimony, whether provided in an individual or representative capacity, including any and all deposition testimony, trial testimony, sworn statements, affidavits, declarations, expert reports, and/or testimony before a legislative, regulatory or investigative body or agency.


This 23rd day of March, 2011.


Respectfully submitted,


| /s/   Stephen J. Herman | /s/ James Parkerson Roy |
|---|---|
| Stephen J. Herman, La. Bar No. 23129 | James Parkerson Roy, La. Bar No. 11511 |
| HERMAN HERMAN KATZ & COTLAR LLP | DOMENGEAUX WRIGHT ROY & EDWARDS LLC |
| 820 O'Keefe Avenue | 556 Jefferson Street, Suite 500 |
| New Orleans, Louisiana 70113 | Lafayette, Louisiana 70501 |
| Telephone: (504) 581-4892 | Telephone: (337) 233-3033 |
| Fax No. (504) 569-6024 | Fax No. (337) 233-2796 |
| E-Mail: sherman@hhkc.com | E-Mail: jimr@wrightroy.com |
| *Plaintiffs Liaison Counsel* | *Plaintiffs Liaison Counsel* |


### PLAINTIFFS' STEERING COMMITTEE

| | |
|---|---|
| Brian H. Barr<br>LEVIN, PAPANTONIO, THOMAS, MITCHELL, ECHSNER & PROCTOR, PA<br>316 South Baylen St., Suite 600<br>Pensacola, FL 32502-5996<br>Office: (850) 435-7045<br>Telefax: (850) 436-6187<br>E-Mail: bbarr@levinlaw.com | Robin L. Greenwald<br>WEITZ & LUXENBERG, PC<br>700 Broadway<br>New York, NY 10003<br>Office: (212) 558-5802<br>Telefax: (212) 344-5461<br>E-Mail: rgreenwald@weitzlux.com |
| Jeffrey A. Breit<br>BREIT DRESCHER & IMPREVENTO | Rhon E. Jones<br>BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P. C. |

999 Waterside Drive, Suite 1000
Norfolk, VA 23510
Office:  (757) 670-3888
Telefax: (757) 670-3895
E-Mail: jbreit@bdbmail.com

Elizabeth J. Cabraser
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Office:  (415) 956-1000
Telefax: (415) 956-1008
E-Mail:  ecabraser@lchb.com

Philip F. Cossich, Jr.
COSSICH, SUMICH, PARSIOLA & TAYLOR
8397 Highway 23, Suite 100
Belle Chasse, LA  70037
Office:  (504) 394-9000
Telefax: (504) 394-9110
E-Mail:  pcossich@cossichlaw.com

Robert T. Cunningham
CUNNINGHAM BOUNDS, LLC
1601 Dauphin Street, P. O. Box 66705
Mobile, AL  36660
Office:  (251) 471-6191
Telefax: (251) 479-1031
E-Mail:  rtc@cunninghambounds.com

Alphonso Michael "Mike" Espy
MORGAN & MORGAN, P.A.
188 East Capitol Street, Suite 777
Jackson, MS 39201
Office: (601) 949-3388
Telefax: (601) 949-3399
E-Mail:  mike@mikespy.com

Calvin C. Fayard, Jr.
FAYARD & HONEYCUTT
519 Florida Avenue, SW
Denham Springs, LA  70726
Office: (225) 664-4193
Telefax: (225) 664-6925
E-Mail:  calvinfayard@fayardlaw.com

Ervin A. Gonzalez
COLSON HICKS EIDSON
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Office: (305) 476-7400

218 Commerce St., P.O. Box 4160
Montgomery, AL 36104
Office:  (334) 269-2343
Telefax: (334) 954-7555
E-Mail:  rhon.jones@beasleyallen.com

Matthew E. Lundy
LUNDY, LUNDY, SOILEAU & SOUTH, LLP
501 Broad Street
Lake Charles, LA  70601
Office:  (337) 439-0707
Telefax: (337) 439-1029
E-Mail:  mlundy@lundylawllp.com

Michael C. Palmintier
deGRAVELLES, PALMINTIER,
HOLTHAUS & FRUGE'
618 Main Street
Baton Rouge, LA  70801-1910
Office:  (225) 344-3735
Telefax: (225) 344-0522
E-Mail:  mpalmintier@dphf-law.com

Paul M. Sterbcow
LEWIS, KULLMAN, STERBCOW & ABRAMSON
601 Poydras Street, Suite 2615
New Orleans, LA  70130
Office:  (504) 588-1500
Telefax:  (504) 588-1514
E-Mail:  sterbcow@lksalaw.com

Scott Summy
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX  75219
Office:  (214) 521-3605
Telefax: (214) 599-1172
E-Mail:  ssummy@baronbudd.com

Mikal C. Watts (PSC)
WATTS GUERRA CRAFT, LLP
Four Dominion Drive, Building 3, Suite 100
San Antonio, TX 78257
Office: (210) 447-0500
Telefax: (210) 447-0501
E-Mail:  mcwatts@wgclawfirm.com

| Telefax: (305) 476-7444 E-Mail: ervin@colson.com | |

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that the above and foregoing Deposition Notice and Document Requests have been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, this 23rd day of March, 2011.


/s/  James Parkerson Roy and Stephen J. Herman