PHILLIP A. WITTMANN
Direct Dial: (504) 593-0804
Direct Fax:  (504) 596-0804
E-Mail: pwittmann@stonepigman.com

45,600

April 18, 2011

**VIA EMAIL**

Magistrate Judge Sally Shushan
United States District Courthouse
500 Poydras Street, Room 5345
New Orleans, Louisiana 70130

      Re:    MDL No. 2179
            In Re:  Oil Spill by the Oil Rig "Deepwater Horizon"
            In the Gulf of Mexico on April 20, 2010

Dear Judge Shushan:

      We write to advise the Court of Cameron's concerns with the Proposed Protocol and Order for supplemental BOP testing.

      BP and Cameron, along with representatives of other parties, have conferred a number of times this past week and have been able to resolve some differences.  However, there are fundamental differences among the parties that remain which will require court intervention.

      The differences that remain are principally of two types.

      <u>The Protocol as proposed would obligate Cameron to potentially assume the role of "tester", rather than "informant".</u>

      In the protocol which lays out the steps of the actual tests, BP continues to insist that Cameron agree to a level of involvement in the testing by its technicians far beyond what Cameron has agreed to do or believes that it could be required to do.  When BP first moved the Court for permission to conduct this testing, BP told the Court that the tests might require that Cameron "may need to provide engineering drawings and specifications".  Rec. d. 1533-1, p. 4.  This was the factual record on which the Court authorized the testing.

1053440v.1
1053499v.1

2

February 22, 2011

In its initial draft protocol, BP proposed that Cameron provide drawings and documents as requested. In the evening on April 13, however, that initial proposal progressed to include requests that Cameron "advise" and "supervise" DNV in certain testing. Cameron objected to this language putting it in an advisory or supervisory role and expressed its willingness, provided that the parties could agree on a protocol, consistent with BP's motion, to have "[e]xperienced and qualified OEM technical personnel" on site "for purposes of providing information to DNV" regarding various operations. BP rejected this language and changed the protocol to require Cameron technicians to provide "informational support" to DNV. When Cameron again objected to language putting it in a supporting role for BP's proposed testing, BP suggested that Cameron technicians provide "information input into the testing process." Cameron again objected to BP's efforts to place a burden on Cameron employees to supply input into the testing process.

BP's rejection of Cameron's offer – far beyond what could be required under the Federal Rules – to bring "[e]xperienced and qualified OEM technical personnel" to Michoud "for purposes of providing information to DNV" confirms to Cameron that BP or DNV seeks more than information. One or both seek to impose a greater obligation on Cameron to participate in BP's requested testing process.

There is simply *no* authority for one party to demand that another party participate in its testing regime. If parties to the MDL believe there is need for additional testing of the BOP, and wish to conduct such tests through experts, then that testing should be conducted by those experts. Other than providing information held by it as the product manufacturer, Cameron has no further obligation. Cameron respectfully declines to be drawn into tests requested by its potential litigation adversaries, whether in an advisory, supervisory, supporting, process input, or any other role.

The Order as proposed by BP effectively nullifies the Protocol and violates the Order authorizing the tests:

Cameron objects to the Proposed Order because it effectively nullifies the single most important element of the Protocol: who is doing the actual testing? The proposed Order permits BP to hire and subcontract at least five functions of the DNV testing. This subcontracting of functions was not disclosed or mentioned in the Proposed Protocol.

Rather, the Order, as drawn, allows BP to decide that certain functions required to be completed in connection with the testing be conducted by entitles *other than* DNV. The authority for this provision is said to be because "DNV and various [undisclosed] parties … have requested that … BP should arrange for and compensate various support-services providers to assist DNV." Cameron notes that it has made no such request of BP.

1053440v.1
1053499v.1

3

February 22, 2011

When the Court first authorized this supplemental testing, it did so on the assurance that DNV was available in the necessary time frame and was able to perform the tests. Neither BP nor DNV has offered any explanation of what has changed in these regards.

Secondly, Cameron notes that BP has assumed for itself the prerogative of deciding *which* services DNV will not complete and the selection of subcontractors who will assume those functions which DNV was to perform. Despite that prerogative, the Proposed Order insists that BP's retention of subcontractors does not "detract from DNV's independent, complete and unfettered discretion" which is completely inconsistent with the power that BP proposes be provided to it.

Thirdly, the Order does not require that the subcontractors be identified; that the terms of their relationship to BP or other parties in the MDL and/or their Deepwater Horizon work be disclosed; that the terms of their retention be disclosed or negotiated with other parties; or that these subcontractors submit to this Court's jurisdiction. Cameron believes that these disclosures are necessary to achieve the level of transparency that the Court *expressly* required of the testing when it authorized it. ("IT IS FURTHER ORDERED that the BOP testing shall be conduced in a fully transparent manner by Det Norske Veritas or another third-party testing entity...." Rec. d. 1757, p.2).

For all these reasons, Cameron is unable to agree to the terms of the Proposed Protocol or Order, but will look forward to continuing our discussions with the parties and the Court.

With kind regards, I remain,

Sincerely,

*Phil Wittmann*

Phillip A. Wittmann

PAW:cmb
cc: Defense Liaison Counsel
    Plaintiff's Liaison Counsel
    Mr. R. Michael Underhill
    Mr. Luther Strange
    Mr. Corey L. Maze
    Ms. Kat Shea

1053440v.1
1053499v.1

4

February 22, 2011

Mr. Michael O'Keefe