UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL BY THE OIL RIG DEEPWATER HORIZON IN THE GULF OF MEXICO, ON APRIL 20, 2010 | ) ) ) ) MDL NO. 2179 |
| IN RE THE COMPLAINT AND PETITION OF TRITON ASSET LEASING GmbH, ET AL., IN A CAUSE OF EXONERATION FROM OR LIMITATION OF LIABILITY | ) SECTION: J ) ) JUDGE BARBIER ) ) MAGISTRATE SHUSHAN |
| This Document Relates To: 2:10-CV-02771 | ) ) ) |

## CROSS-CLAIMS OF THIRD-PARTY DEFENDANT MOEX OFFSHORE 2007 LLC

Third-Party Defendant and Plaintiff-in-Cross-Claims MOEX Offshore 2007 LLC

hereby states for its cross-claims the following:

## THE PARTIES

### Third-Party Defendant and Plaintiff-in-Cross-Claim

Third-Party Defendant MOEX Offshore 2007 LLC ("MOEX Offshore") is a Delaware

limited liability company with its principal place of business in Houston, Texas.

### The BP Third-Party Defendants and Defendants-in-Cross-Claim

Third-Party Defendant and Defendant-in-Cross-Claim BP Exploration & Production, Inc.

("BP Exploration") is a Delaware corporation with its principal place of business in

Warrenville, Illinois.

1

Third-Party Defendant and Defendant-in-Cross-Claim BP America Production Company
("BP America") is a Delaware corporation with its principal place of business in
Houston, Texas.  BP America is affiliated with BP Exploration.

Third-Party Defendant and Defendant-in-Cross-Claim BP p.l.c. is a British Public
Limited Company with its corporate headquarters in London, England.  (BP Exploration,
BP America and BP p.l.c. collectively are referred to herein as "BP.")

### The Transocean Third-Party Plaintiffs and Defendants-in-Cross-Claim

Third-Party Plaintiff and Defendant-in-Cross-Claim Triton Asset Leasing GmbH
("Triton") is a limited liability company organized and existing under the laws of the
Swiss Confederation with a principal office in Zug, Switzerland.

Third-Party Plaintiff and Defendant-in-Cross-Claim Transocean Holdings LLC is a
limited liability company organized and existing under the laws of the State of Delaware,
with a principal office in Houston, Texas.

Third-Party Plaintiff and Defendant-in-Cross-Claim Transocean Offshore Deepwater
Drilling Inc. is a corporation organized and existing under the laws of the State of
Delaware, with its principal office in Houston, Texas.

Third-Party Plaintiff and Defendant-in-Cross-Claim Transocean Deepwater Inc. is a
corporation organized and existing under the laws of the State of Delaware, with its
principal office in Houston, Texas.  (Triton, Transocean Holdings LLC, Transocean
Offshore Deepwater Drilling Inc., and Transocean Deepwater Inc. are collectively
referred to herein as "Transocean" and the "Transocean Defendants-in-Cross-Claim.")

2

### Third-Party Defendants and Defendants-in-Cross-Claim Halliburton

Third-Party Defendant and Defendant-in-Cross-Claim Halliburton Energy Services, Inc. ("Halliburton") is a Delaware corporation with its principal place of business in Houston, Texas.

Third-Party Defendant and Defendant-in-Cross-Claim Sperry Drilling Services (f/k/a Sperry Sun Drilling Services) ("Sperry") is a division of Halliburton Energy Services, Inc.

### Third-Party Defendant and Defendant-in-Cross-Claim M-I

Third-Party Defendant and Defendant-in-Cross-Claim M-I, LLC ("M-I"), also known as M-I Swaco, is a Delaware limited liability company with its principal place of business in Wilmington, Delaware.

### The Weatherford Third-Party Defendants and Defendants-in-Cross-Claim

Third-Party Defendant and Defendant-in-Cross-Claim Weatherford U.S. L.P. is a Louisiana limited partnership with a principal place of business in Houston, Texas.

Third-Party Defendant and Defendant-in-Cross-Claim Weatherford International, Inc. ("Weatherford International") is a Delaware corporation with its principal place of business in Houston, Texas. (Weatherford U.S. L.P. and Weatherford International, Inc. collectively are referred to herein as "Weatherford.")

### Third-Party Defendant and Defendant-in-Cross-Claim Cameron

Third-Party Defendant and Defendant-in-Cross-Claim Cameron International Corporation f/k/a Cooper-Cameron Corporation ("Cameron") is a Delaware corporation with its principal place of business in Houston, Texas.

3

## SUBJECT MATTER JURISDICTION AND VENUE

The Court has admiralty and maritime jurisdiction, federal jurisdiction, and supplemental

jurisdiction over these Cross-Claims pursuant to Article III, Section 2 of the United States

Constitution, 28 U.S.C. §§ 1333, 1367, 43 U.S.C. § 1349 and 33 U.S.C. § 2717.  These

are claims within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

Venue is proper in this District pursuant to Rule F(9) of the Supplemental Rules for

Admiralty and Maritime Claims.

## PERSONAL JURISDICTION

Pursuant to Fed. R. Civ. P. 10(c), MOEX Offshore respectfully incorporates by reference

the allegations of Petitioners' Rule 14(c) Third-Party Complaint and Plaintiffs' First

Amended Master Complaint, Cross-Claim, and Third-Party Complaint for Private

Economic Losses in Accordance with PTO No. 11 [CMO No.1] Section III(B1) ["B1

Bundle"] with respect to the Court's personal jurisdiction over the Defendants-in-Cross-

Claim herein.

## STATEMENT OF FACTS

On April 20, 2010, a well blowout caused an explosion and fire on the *Deepwater

Horizon*, a semi-submersible mobile offshore drilling unit that was conducting deepwater

offshore drilling and related oil exploration activities in the Gulf of Mexico (the

"Blowout").  The Blowout sank the *Deepwater Horizon* and caused oil to spill into the

Gulf of Mexico (the "Spill").

The Blowout and Spill occurred at the "Macondo Well" located in the  Mississippi

Canyon Block 252 in the Gulf of Mexico.  At the time of the Blowout and ensuing Spill,

BP was performing exploration and drilling operations as the designated Operator under

4

Federal OCS oil & gas lease no. OCS-G 32306 dated June 1, 2008 granted to it by the United States of America (the "Lease").

The Blowout occurred because of the failure to seal off, or isolate, the well from hydrocarbons in the geologic formation beneath the ocean floor.

As the designated Operator under the Lease, BP was responsible for assessing the geology of the prospect site, engineering the well design, obtaining regulatory approvals for well operations, and retaining and overseeing the contractors working on the various aspects of the well and the drilling operations.

BP was also the designated "Operating Party" (also referred to as "Operator") under the Macondo Prospect Offshore Deepwater Operating Agreement (the "OA"), effective October 1, 2009.  MOEX Offshore, Anadarko Petroleum Corporation and Anadarko E&P Company LP (Anadarko Petroleum Corporation and Anadarko E&P Company LP are referred to collectively herein as "Anadarko") were the other non-operating parties to this OA, which governs BP's operations and activities as the Operator at the Macondo Well site and the relations among BP, MOEX Offshore and Anadarko pertaining to the Macondo well.[1]  (MOEX Offshore and Anadarko are sometimes referred to herein as "Non-Operating Investors.")

The OA in Article 5.2 explicitly provided that BP, as the Operating Party, had the "exclusive right and duty to conduct (or cause to be conducted) all activities or operations" under the OA for the Macondo Well.  In performing such services under the OA, the Operator (BP) was an independent contractor, not subject to the control or

---

[1]  As of December 17, 2009 or thereabouts, BP Exploration and the Non-Operating Investors had the following interest percentages in the Lease held by BP in the Macondo Well site:  BP Exploration:  65%; APC:  2.5%; Anadarko E&P:  22.5%; and MOEX Offshore:  10%.  Effective as of April 1, 2010, Anadarko E&P transferred its interest in the Lease to APC.

A/74159531.2/2013882-0000350694

direction of the Non-Operating Investors (MOEX Offshore and Anadarko).  The OA

further provides that the Operator is not the agent or fiduciary of the Non-Operating

Investors.  From time to time, BP America acted on behalf of BP Exploration in

operations and activities under the OA.

The Non-Operating Investors have no rights to conduct operations or activities to develop

the Lease.

BP selected, supervised, and controlled the drilling rig used at the Macondo Well site as

well as other contractors it employed in connection with the Macondo Well and other

activities and operations under the OA.  At all relevant times, BP exercised operational

control over the *Deepwater Horizon*, other BP contractors, and the activities and

operations conducted under the OA.

### BP's Duties to the Non-Operating Investors

As the designated Operator under the Lease and the OA, BP assumed responsibility for

all aspects of drilling the Macondo Well and related undertakings.

Under the OA, BP owed to the Non-Operating Investors the duties to "conduct all

activities or operations" in connection with the Macondo Well "in a good and

workmanlike manner, as would a prudent operator under the same or similar

circumstances," and to take actions "in compliance with all applicable laws and

regulations, including avoiding significant and unintended impact on (i) the health or

safety of people, (ii) property, or (iii) the environment . . . ."

BP also owed duties to the Non-Operating Investors arising out of BP's status as the

designated Operator under the Lease, and as Operator under the OA, with the exclusive

rights and duty to conduct all activities and operations for the Macondo Well.

6

**BP's Breach Under the OA**

On April 20, 2010, the Macondo well blew out during the final stages of drilling operations.  The Blowout occurred because of the failure to seal off, or isolate, the well from hydrocarbons in the geologic formation beneath the ocean floor.  BP failed to take the steps a reasonably prudent operator would have taken under similar circumstances to avoid the Blowout and avoid the Spill and massive damages that followed as a result. BP's failures to conduct all operations and activities in a good and workmanlike manner as required under Article 5.2 and other pertinent provisions of the OA and other duties to MOEX Offshore included at least the following:

    a)    Failure to control the well and prevent the Blowout and the ensuing Spill and to have procedures in place to control the Spill;

    b)    Proceeding with the temporary abandonment procedure despite the results of negative pressure tests, the results of efforts to convert the float collar and potential problems with the "spacer" material;

    c)    Permitting simultaneous operations on the rig on April 20, 2010;

    d)    Ignoring reports indicating equipment on the rig was in need of maintenance or replacement;

    e)    Failing to properly and adequately supervise and manage its subcontractors;

    f)    Failing to follow its own procedures and protocols, industry standards and plans filed with government agencies related to the Macondo Well and to train and supervise it employees on the Macondo Well team; and

7

g)      Failing to perform risk assessments for decisions regarding well operations and failing to consider the cumulative impacts of the risks associated with such decisions.

The foregoing acts and omissions were breaches of the duties BP owed to the Non-Operating Investors under the OA and otherwise.  BP is responsible to MOEX Offshore under the OA for any misconduct or wrongdoing of its subcontractors in connection with the Blowout of the Macondo Well.

BP's breaches of its duties as described above were and are the direct and proximate cause of damages to MOEX Offshore that MOEX Offshore has incurred and will continue to incur, including attorneys fees and costs.

## COUNT I

## BREACH OF CONTRACT AGAINST BP

MOEX Offshore repeats and realleges ¶ ¶ 1-31 above.

BP has breached its obligations under the OA to MOEX Offshore by failing to conduct all activities or operations in connection with the Macondo Well in a good and workmanlike manner, as would a prudent operator under the same or similar circumstances, failing to achieve safe and reliable activities and operations in compliance with all applicable laws and regulations as required under the OA, and failing to avoid significant harm to (i) the health or safety of people, (ii) property, or (iii) the environment as required under the OA.

MOEX Offshore has suffered damages and continues to incur damages as a direct and proximate result of BP's breach of contract, including attorneys' fees and costs.

8

WHEREFORE, MOEX Offshore respectfully prays that judgment be entered in its favor and that it be awarded its damages including economic losses as a result of BP's breach of its contractual obligations, including, *inter alia*, the damage to the reservoir, the loss of its investments, lost profits, and defense costs, including attorneys' fees and costs, against BP.

**COUNT II**

**DECLARATORY JUDGMENT AGAINST BP**

MOEX Offshore repeats and realleges ¶ ¶ 1-34 above.

Article 22.5 of the OA sets forth the obligations of the parties with regard to:

> …liability for losses, damages, Costs, expenses, or Claims involving activities or operations under this Agreement or affecting the Leases or the Contract Area which are not covered by or in excess of the insurance carried for the Joint Account….

There exists an actual controversy between BP and MOEX Offshore as to whether BP's conduct relieves MOEX Offshore of any liability to BP for BP's charges to the Joint Account arising from BP's conduct in connection with the Blowout and Spill. This Court has the power under 28 U.S.C. § 2201 to declare the rights and obligations of the parties with respect to this controversy.

WHEREFORE, MOEX Offshore respectfully prays that the Court issue a declaratory judgment determining that BP's conduct as alleged above excuses MOEX Offshore from payment of BP's charges and billing arising out of the Blowout and the subsequent Spill.

**COUNT III**

**NEGLIGENCE AGAINST BP - STATE LAW**

MOEX Offshore repeats and realleges ¶ ¶ 1-38 above.

9

In the event the Court rules that claims asserted in this action under state law are not preempted by federal law, MOEX Offshore hereby alleges the following state law claim. BP owed MOEX Offshore a duty to act with reasonable care in connection with all activities and operations relating to the deepwater offshore drilling and related activities at the Macondo Well site and containment of any oil spill.

BP's duties included an obligation to refrain from acts of negligence and other misconduct.

BP breached its duties to MOEX Offshore by its failure to act with reasonable care in disregard of the rights and safety of others.

BP's conduct was the proximate cause of foreseeable damage suffered by MOEX Offshore, including claims made against it for liability for death, personal injury, clean-up costs, economic loss, loss of investment, lost profits, and any damages or fines assessed in pending or future proceedings involving the Spill. In addition, MOEX Offshore has suffered economic losses as a result of BP's negligence, including, *inter alia*, the loss to the reservoir, the loss of its investments, lost profits, and defense costs, including attorneys' fees.

WHEREFORE, MOEX Offshore respectfully prays that judgment enter in its favor and that it be awarded its damages against BP.

## COUNT IV

### NEGLIGENCE AGAINST BP - MARITIME LAW

MOEX Offshore repeats and realleges ¶ ¶ 1-44 above.

BP owed MOEX Offshore a duty to act with reasonable care in connection with executing the design, planning, implementation, and conduct of the deepwater offshore drilling and related activities at the Macondo Well site.

10

BP breached its duties to MOEX Offshore by committing acts of negligence, as alleged more specifically above.

BP's conduct was the proximate cause of foreseeable damage suffered by MOEX Offshore, including claims made against it for liability for death, personal injury, clean-up costs, economic loss, loss of investment, lost profits, and any damages or fines assessed in pending or future proceedings involving the Spill.  In addition, MOEX Offshore has suffered economic losses as a result of BP's negligence, including, *inter alia*, the loss of the reservoir, the loss of their investments, lost profits, and defense costs, including attorneys' fees.

WHEREFORE, MOEX Offshore respectfully prays that judgment enter in its favor and that it be awarded its damages against BP.

## ALLEGATIONS AS TO TRANSOCEAN

MOEX Offshore repeats and realleges ¶ ¶ 1-48 above.

At all times material hereto the *Deepwater Horizon* was owned, navigated, manned, possessed, managed, and controlled by Transocean subject to BP's rights of inspection, approval and control.

Transocean provided the *Deepwater Horizon* vessel and personnel to operate it at the Macondo site and, subject to BP's rights of inspection, approval and control, also was responsible for maintaining well control equipment, such as the BOP and its control systems.

As the owner and manager of the *Deepwater Horizon*, Transocean owed duties to MOEX Offshore to, *inter alia*, man, possess, manage, control, navigate, maintain, and operate the *Deepwater Horizon* with reasonable and ordinary care.

11

The duties owed by Transocean to MOEX Offshore arose out of Transocean's status and duties as the Owner, Managing Owner, Owner *Pro Hac Vice*, and/or Operator or Co-Owner of the *Deepwater Horizon* used at the Macondo Well site, its undertaking of responsibility for the complex, technical process of deepwater offshore drilling, its contractual obligations under its Drilling Contract with BP Exploration, its knowledge of the risks to life and property inherent in deepwater offshore drilling, federal and state regulations, and industry custom and practice.

Transocean breached its duties to MOEX Offshore.

Transocean's conduct in breaching its duties to MOEX Offshore constituted gross negligence in reckless disregard of the rights and safety of others and all such blameworthy conduct was within the privity or knowledge of Transocean's managers.

Transocean's gross negligence and reckless disregard of the rights and safety of others was committed in connection with operations that, if performed incorrectly, were known by Transocean as foreseeable causes of blowouts and oil spills.

Transocean's breaches of its duties included, but were not limited to, the following:

a)  Failing to properly manage, control, maintain and operate the *Deepwater Horizon* and its safety equipment;

b)  Disabling vital alarm systems on the *Deepwater Horizon;*

c)  Acquiescing to and/or not providing cautionary advice in the face of a series of reckless decisions;

d)      Violating the International Safety and Management Code ("ISM"), as adopted by the International Convention for the Safety of Life at Sea ("SOLAS");

e)      Failing to take reasonable steps in response to its knowledge of significant problems related to the *Deepwater Horizon's* equipment and maintenance;

f)      Misinterpreting and contributing to BP's misinterpretation of the negative pressure test results;

g)      Permitting simultaneous operations during displacement after the negative pressure tests and failing to undertake any risk analysis or to establish mitigation plans regarding the performance of such simultaneous operations;

h)      Acquiescing in conducting premature mud displacement before sufficient evidence that the cement job had sealed the well properly and in the use of an abnormally large quantity of mixed and untested spacer fluid;

i)      Failing to ensure that a BOP with sufficient strength and reliability for deepwater drilling and the related equipment needed for reliable operation was present and available on the *Deepwater Horizon*;

j)      Failing to monitor and control the Macondo Well and protect the personnel on the rig when it knew hydrocarbons were coming up the riser and failing to take proper precautions to avoid oil spills and damage to life, limb, property and the environment; and

13

k)      Failing to provide adequate training for its employees on the rig in well

control procedures and in responding to 'kicks' and emergencies.

**COUNT V**

<u>**GROSS NEGLIGENCE AGAINST TRANSOCEAN - STATE LAW**</u>

MOEX Offshore repeats and realleges ¶ ¶ 1-57 above.

In the event the Court rules that claims asserted in this action under state law are not

preempted by federal law, MOEX Offshore hereby alleges the following state law claim.

Transocean owed duties to MOEX Offshore to, *inter alia*, man, possess, manage, control,

navigate, maintain, and operate the *Deepwater Horizon* with reasonable and ordinary care

and to refrain from gross negligence or wanton or willful misconduct.

Transocean breached its duties to MOEX Offshore by committing acts of gross

negligence and intentional misconduct in reckless disregard for the rights and safety of

others as alleged more specifically above and all such blameworthy conduct was within

the privity or knowledge of Transocean's managers.

Transocean's conduct was the proximate cause of foreseeable damage suffered by

MOEX Offshore, including claims made against it for liability for death, personal injury,

clean-up costs, economic loss, loss of investment, lost profits, and any damages or fines

assessed in pending or future proceedings involving the Spill.  In addition, MOEX

Offshore has suffered economic losses as a result of Transocean's negligence, including,

*inter alia*, the loss of the reservoir, the loss of its investments, lost profits, and defense

costs, including attorneys' fees.

WHEREFORE, MOEX Offshore respectfully prays that judgment enter in its

favor and that it be awarded its damages against Transocean.

14

**COUNT VI**

**NEGLIGENCE AGAINST TRANSOCEAN - STATE LAW**

MOEX Offshore repeats and realleges ¶ ¶ 1-62 above.

In the event the Court rules that claims asserted in this action under state law are not preempted by federal law, MOEX Offshore hereby alleges the following state law claim.

Transocean owed duties to MOEX Offshore to, *inter alia*, man, possess, manage, control, navigate, maintain, and operate the *Deepwater Horizon* with reasonable and ordinary care.

Transocean breached its duties to MOEX Offshore by committing acts of negligence, as alleged more specifically above, and all such blameworthy conduct was within the privity or knowledge of Transocean's managers.

Transocean's conduct was the proximate cause of foreseeable damage suffered by MOEX Offshore, including claims made against it for liability for death, personal injury, clean-up costs, economic loss, loss of investment, lost profits, and any damages or fines assessed in pending or future proceedings involving the Spill.  In addition, MOEX Offshore has suffered economic losses as a result of Transocean's negligence, including, *inter alia*, the loss of the reservoir, the loss of its investments, lost profits, and defense costs, including attorneys' fees.

WHEREFORE, MOEX Offshore respectfully prays that judgment enter in its favor and that it be awarded its damages against Transocean.

**COUNT VII**

**GROSS NEGLIGENCE AND WILLFUL MISCONDUCT AGAINST TRANSOCEAN - MARITIME LAW**

MOEX Offshore repeats and realleges ¶ ¶ 1-67 above.

15

Transocean owed duties to MOEX Offshore to, *inter alia*, man, possess, manage, control, navigate, maintain, and operate the *Deepwater Horizon* with reasonable and ordinary care.

Transocean's duties included an obligation to refrain from acts of gross negligence or wanton and willful misconduct.

Transocean breached its duties to MOEX Offshore by committing acts of gross negligence and wanton and willful misconduct in reckless disregard of the rights and safety of others and all such blameworthy conduct was within the privity or knowledge of Transocean's managers, as alleged more specifically above and in the B1 Bundle Complaint.

Transocean's conduct was the proximate cause of foreseeable damage suffered by MOEX Offshore, including claims made against it for liability for death, personal injury, clean-up costs, economic loss, loss of investment, lost profits, and any damages or fines assessed in pending or future proceedings involving the Spill.  In addition, MOEX Offshore has suffered economic losses as a result of Transocean's gross negligence, including, *inter alia*, the loss of the reservoir, the loss of their investments, lost profits, and defense costs, including attorneys' fees.

WHEREFORE, MOEX Offshore respectfully prays that judgment enter in its favor and that it be awarded its damages, doubled, against Transocean.

## COUNT VIII

## <u>NEGLIGENCE AGAINST TRANSOCEAN - MARITIME LAW</u>

MOEX Offshore repeats and realleges ¶ ¶ 1-72 above.

Transocean owed duties to MOEX Offshore to, *inter alia*, man, possess, manage, control, navigate, maintain, and operate the *Deepwater Horizon* with reasonable and ordinary care.

Transocean breached its duties to MOEX Offshore by committing acts of negligence and all such blameworthy conduct was within the privity or knowledge of Transocean's managers, as alleged more specifically above and in the B1 Bundle Complaint.

Transocean's conduct was the proximate cause of foreseeable damage suffered by MOEX Offshore, including claims made against it for liability for death, personal injury, clean-up costs, economic loss, loss of investment, lost profits, and any damages or fines assessed in pending or future proceedings involving the Spill.  In addition, MOEX Offshore has suffered economic losses as a result of Transocean's negligence, including, *inter alia*, the loss of the reservoir, the loss of its investments, lost profits, and defense costs, including attorneys' fees.

WHEREFORE, MOEX Offshore respectfully prays that judgment enter in its favor and that it be awarded its damages against Transocean.

## COUNT IX

## INDEMNITY IN TORT AGAINST TRANSOCEAN - MARITIME LAW

MOEX Offshore repeats and realleges ¶ ¶ 1-76 above.

The Blowout, the Spill, and the resulting damages were caused by the gross negligence, willful misconduct and/or negligence of Transocean and all such blameworthy conduct was within the privity or knowledge of Transocean's managers.

17

MOEX Offshore is without fault with respect to the Blowout and the Spill.  If MOEX

Offshore is found liable at all for damages in connection with the Blowout or the Spill,

such liability will be purely vicarious, strict, and passive.

Any and all damages assessed against MOEX Offshore, whether vicariously or by

operation of law, including without limitation any liability imposed in excess of the cap

on liability provided for in the OPA, 33 U.S.C. § 2704, should be repaid by Transocean

as a wrongdoer who owes indemnity to parties who are without fault.

WHEREFORE, MOEX Offshore respectfully prays that judgment enter in its

favor and that it be awarded its damages against Transocean.


## COUNT X

### CONTRIBUTION AGAINST TRANSOCEAN - MARITIME LAW

MOEX Offshore repeats and realleges ¶ ¶ 1-80 above.

If MOEX Offshore is found  to have contributed to any damages suffered by Plaintiffs or

the Third-Party Plaintiffs, it is entitled to contribution from Transocean who bears a

significantly greater proportional degree of fault for any such damages.

WHEREFORE, MOEX Offshore respectfully prays that judgment enter in its

favor and that it be awarded its damages against Transocean.


## COUNT XI

### CONTRIBUTION AGAINST TRANSOCEAN - OIL POLLUTION ACT

MOEX Offshore repeats and realleges ¶ ¶ 1-82 above.

The claims asserted in these proceedings require the Court to assess and allocate proportional responsibility (if any) among all defendants for the damages claimed by the plaintiffs.

MOEX Offshore has the right to appear before and be heard by the Court with respect to whether it bears any proportional responsibility for the damages claimed by the plaintiffs (which MOEX Offshore denies) and, if so, in what amount.

MOEX Offshore also has the right and obligation to appear before and be heard by the Court to establish the proportional responsibility of Transocean in relation to the proportional responsibility (if any) of MOEX Offshore.

In the event MOEX Offshore is found liable in any respect under the OPA, it is entitled under § 2709 of the OPA to contribution from Transocean in the amount of Transocean's proportional degree of responsibility for any damages assessed against them.

WHEREFORE, MOEX Offshore respectfully prays that judgment enter in its favor and that it be awarded its damages against Transocean.

## COUNT XII

## **INDEMNITY IN TORT AGAINST TRANSOCEAN - STATE LAW**

MOEX Offshore repeats and realleges ¶ ¶ 1-87 above.

In the event the Court rules that claims asserted in this action under state law are not preempted by federal law, MOEX Offshore hereby alleges the following state law claim.

The Blowout, the Spill and the resulting damages were caused by the gross negligence, willful misconduct and/or negligence of Transocean.

MOEX Offshore is without fault with respect to the Blowout and the Spill. If MOEX Offshore is found liable at all for damages in connection with the Blowout or the Spill, such liability will be purely vicarious, strict, and passive.

Any and all damages assessed against MOEX Offshore, whether vicariously or by operation of law, including without limitation any liability imposed in excess of the cap on liability provided for in the OPA, 33 U.S.C. § 2704, should be repaid by Transocean as a wrongdoer who owes indemnity to parties who are without fault.

WHEREFORE, MOEX Offshore respectfully prays that judgment enter in its favor and that it be awarded its damages against Transocean.


## ALLEGATIONS AS TO HALLIBURTON AND SPERRY

MOEX Offshore repeats and realleges ¶ ¶ 1-92 above.

Halliburton provided engineering services, materials, testing, mixing, and pumping for cementing operations onboard the *Deepwater Horizon*, as well as onshore engineering support for those operations, which are critical to preventing well failures and blowouts. Halliburton also provided technical advice about the design, modeling, placement, and testing of the cement that was used in the Macondo Well at and before the time of the Blowout.

Sperry was responsible for mud logging personnel and equipment on the *Deepwater Horizon*. Sperry's mud logging personnel were partially responsible for monitoring the well, including mud pit fluid levels, mud float in and out of the well, mud gas levels, and pressure fluctuations.

Halliburton and Sperry owed MOEX Offshore the duty of reasonable and ordinary care in the performance of these responsibilities, including the duty to exercise reasonable care in conducting cementing, testing, analysis, and monitoring of the Macondo Well. Halliburton and Sperry's duty of care arose from their assuming responsibility for the complex, technical process of deepwater offshore drilling and related activities, their contractual obligations to BP, their knowledge of the risks to life and property inherent in deepwater offshore drilling, federal and state regulations, and industry custom and practice.

Halliburton's breaches of its duties included, but were not limited to, the following:

a)      Failing to properly test and advise BP regarding the cement slurry used in the Macondo Well;

b)      Acquiescing in BP's use of an unstable and otherwise unsuitable cement that it prepared in connection with the critical bottom of well cement job;

c)      Failing to recommend, require, or perform a full "bottoms-up" circulation of mud between the running of the casing and the beginning of the cement job in violation of industry standards;

d)      Failing to properly monitor the pits and other matters and/or failing to advise BP and/or Transocean that it was unable to properly monitor the pits and other matters and issue a stop work; and

e)      Acquiescing in conducting premature mud displacement before sufficient evidence that the cement job properly had sealed the well and the cancellation of the cement bond log test.

A/74159531.2/2013882-0000350694

## COUNT XIII

## NEGLIGENCE AGAINST HALLIBURTON AND SPERRY - STATE LAW

MOEX Offshore repeats and realleges ¶ ¶ 1-98 above.

In the event the Court rules that claims asserted in this action under state law are not

preempted by federal law, MOEX Offshore hereby alleges the following state law claim.

Halliburton and Sperry owed MOEX Offshore a duty of reasonable and ordinary care in

the performance of their responsibilities, including the duty to exercise reasonable care in

conducting its cementing, testing, analysis, and monitoring of the Macondo Well.

Halliburton and Sperry breached their duties to MOEX Offshore by committing acts of

negligence, as alleged more specifically above, in the B1 Bundle Complaint and in

Transocean's Third-Party Complaint.

Halliburton and Sperry's conduct was the proximate cause of foreseeable damage

suffered by MOEX Offshore, including claims made against it for liability for death,

personal injury, clean-up costs, loss of investment, lost profits, and any damages or fines

assessed in pending or future proceedings involving the Spill.  In addition, MOEX

Offshore has suffered economic losses as a result of Halliburton and Sperry's negligence,

including, *inter alia*, the loss of the reservoir, the loss of its investments, lost profits, and

defense costs, including attorneys' fees.

WHEREFORE, MOEX Offshore respectfully prays that judgment enter in its

favor and that it be awarded its damages against Halliburton and Sperry.

## COUNT XIV

## NEGLIGENCE AGAINST HALLIBURTON AND SPERRY - MARITIME LAW

MOEX Offshore repeats and realleges ¶ ¶ 1-103 above.

A/74159531.2/2013882-0000350694

Halliburton and Sperry owed MOEX Offshore a duty of reasonable and ordinary care in the performance of their responsibilities, including the duty to exercise reasonable care in conducting its cementing, testing, analysis, and monitoring of the Macondo Well.

Halliburton and Sperry breached their duties to MOEX Offshore by committing acts of negligence, as alleged more specifically above and in the B1 Bundle Complaint.

Halliburton and Sperry's conduct was the proximate cause of foreseeable damage suffered by MOEX Offshore, including claims made against it for liability for death, personal injury, clean-up costs, loss of investment, lost profits, and any damages or fines assessed in pending or future proceedings involving the Spill.  In addition, MOEX Offshore has suffered economic losses as a result of Halliburton and Sperry's negligence, including, *inter alia*, the loss of the reservoir, the loss of its investments, lost profits, and defense costs, including attorneys' fees

WHEREFORE, MOEX Offshore respectfully prays that judgment enter in its favor and that it be awarded its damages against Halliburton and Sperry.

## COUNT XV

### CONTRIBUTION AGAINST TRANSOCEAN - STATE LAW

MOEX Offshore repeats and realleges ¶ ¶ 1-106 above.

The claims asserted in these proceedings require the Court to assess and allocate proportional responsibility among all defendants (if any) for the damages claimed by the plaintiffs.

23

MOEX Offshore has the right to appear before and be heard by the Court with respect to whether it bears any proportional responsibility for the damages claimed by the plaintiffs (which MOEX Offshore denies) and, if so, in what amount.

MOEX Offshore also has the right and obligation to appear before and be heard by the Court to establish the proportional responsibility of Transocean in relation to the proportional responsibility (if any) of MOEX Offshore.

33 U.S.C. § 2709 provides in relevant part that a person may bring a civil action for contribution against any other person who is liable or potentially liable under either the OPA "or another law."

In the event MOEX Offshore is found liable in any respect under the OPA, it is entitled under state law pursuant to § 2709 of the OPA to contribution from Transocean in the amount of Transocean's proportional degree of responsibility for any damages assessed against them.

WHEREFORE, MOEX Offshore respectfully prays that judgment enter in its favor and that it be awarded its damages against Transocean.

## ALLEGATIONS AS TO M-I

MOEX Offshore repeats and realleges ¶ ¶ 1-112 above.

M-I provided the *Deepwater Horizon* with the mud products essential to safe deepwater offshore drilling, including drilling fluids and spacers, engineering services, and mud supervisory personnel, such as mud engineers and drilling fluid specialists, to manage the properties of those fluids in the Macondo Well.  M-I employed, planned and/or supervised key fluid activities concerning the Macondo Well, such as the mud

A/74159531.2/2013882-0000350694

displacement that was occurring at the time of the Blowout and the provision of "spacer" solution.

M-I owed MOEX Offshore a duty of reasonable and ordinary care in the performance of the foregoing duties, including but not limited to, providing, controlling, and monitoring the mud and spacer solutions used on the *Deepwater Horizon*.

M-I's duty of care arose from its assuming responsibility for the complex, technical process of deepwater offshore drilling mud products, mud placement and related activities, its contractual obligations to BP, its knowledge of the essential role that mud products and displacement play in protecting against the risks to life and property inherent in deepwater offshore drilling, federal and state regulations, and industry custom and practice.

M-I breached its duties to MOEX Offshore by, *inter alia*:

a) failing to provide, control, and monitor the mud and spacer solutions used on the Deepwater Horizon in a reasonably safe manner, including failing to object to the use of lost circulation material ("LCM") fluids as spacer, proximately causing and/or contributing to the damages incurred by the Non-Operating Investors;

b) using an unconventional (and an unusually large volume of) fluid mixture as "spacer" fluid.  This  unusual composition and amount of fluid may have interfered with the negative pressure test results and/or caused damage or clogging in the BOP or the related lines connected thereto; and

c) failing to assess or communicate that fluid and pressure levels indicated hydrocarbons were coming up the well.

25

## COUNT XVI

## NEGLIGENCE AGAINST M-I - STATE LAW

MOEX Offshore repeats and realleges ¶ ¶ 1-117 above.

In the event the Court rules that claims asserted in this action under state law are not preempted by federal law, MOEX Offshore hereby alleges the following state law claim.

M-I owed MOEX Offshore a duty of reasonable and ordinary care in the performance of its responsibilities, including but not limited to, providing, controlling, and monitoring the mud and spacer solutions used on the *Deepwater Horizon*.

M-I breached its duties to MOEX Offshore by committing acts of negligence, as alleged more specifically above, in the B1 Bundle Complaint and in Transocean's Third-Party Complaint.

M-I's conduct was the proximate cause of foreseeable damage suffered by MOEX Offshore, including claims made against it for liability for death, personal injury, clean-up costs, loss of investment, lost profits, and any damages or fines assessed in pending or future proceedings involving the Spill.  In addition, MOEX Offshore has suffered economic losses as a result of M-I's negligence, including, *inter alia*, the loss of the reservoir, the loss of its investments, lost profits, and defense costs, including attorneys' fees.

WHEREFORE, MOEX Offshore respectfully prays that judgment enter in its favor and that it be awarded its damages against M-I.

## COUNT XVII

## NEGLIGENCE AGAINST M-I - MARITIME LAW

MOEX Offshore repeats and realleges ¶ ¶ 1-122 above.

A/74159531.2/2013882-0000350694

M-I owed MOEX Offshore a duty of reasonable and ordinary care in the performance of its responsibilities, including but not limited to, providing, controlling and monitoring the mud and spacer solutions used on the *Deepwater Horizon*.

M-I breached its duties to MOEX Offshore by committing acts of negligence, as alleged more specifically above, in the B1 Bundle Complaint and in Transocean's Third-Party Complaint.

M-I's conduct was the proximate cause of foreseeable damage suffered by MOEX Offshore, including claims made against it for liability for death, personal injury, clean-up costs, loss of investment, lost profits, and any damages or fines assessed in pending or future proceedings involving the Spill.  In addition, MOEX Offshore has suffered economic losses as a result of M-I's gross negligence, including, *inter alia*, the loss of the reservoir, the loss of its investments, lost profits, and defense costs, including attorneys' fees.

WHEREFORE, MOEX Offshore respectfully prays that judgment enter in its favor and that it be awarded its damages against M-I.

## ALLEGATIONS AS TO WEATHERFORD

MOEX Offshore repeats and realleges ¶ ¶ 1-126 above.

Weatherford designed the casing components used by the *Deepwater Horizon*, such as the float collar, shoe, and centralizers, and provided the personnel and equipment for running the casing and casing components into the wellbore.

Weatherford owed duties of care to MOEX Offshore to, *inter alia*, exercise reasonable and ordinary care in the design and manufacture of the float collar.

27

Weatherford's duties to MOEX Offshore arose from undertaking to design and provide casing components and to provide personnel and equipment for the utilization of the casing components in deepwater offshore drilling operations known to be inherently dangerous to life and property, Weatherford's contractual relationship with BP, federal and state law, and industry custom and practice.

If it is finally determined that BP is not responsible for the failure to convert the float collar then Weatherford breached its duties to MOEX Offshore in designing, manufacturing, and supplying a float collar that failed to seal properly and which allowed hydrocarbon backflow into the casing, which proximately caused and/or contributed to the Blowout, explosions, fire, and Spill, resulting in damage to MOEX Offshore.

On April 20, 2010, the Weatherford-manufactured float collar did not seal properly, which allowed well bore fluids, including cement, mud, and formation fluids to leak into the casing, contributing to the Blowout, explosions, fire, and Spill.

Weatherford's float collar failed to operate properly or at all, at the time of or following the Blowout, and this failure caused or contributed to the Blowout, explosions, fire, and Spill.

Weatherford's float collar was defective because it failed to operate as intended.

The failure of Weatherford's float collar to operate as intended, if at all, proximately caused and contributed to the Blowout, explosions, fire, and Spill.

Weatherford's float collar was defectively designed and/or manufactured such that it did not operate as intended to prevent well bore fluids, including cement, mud, and formation fluids to leak into the well bore, which caused and/or contributed to the Blowout, explosions, fire, and Spill.

28

Weatherford's float collar was in a defective condition and unreasonably dangerous to MOEX Offshore and others when it left Weatherford's control.

At the time the float collar used at the *Deepwater Horizon* site left Weatherford's control, Weatherford knew, or in light of reasonably available knowledge or in the exercise of reasonable care should have known, about the aforementioned unreasonably dangerous conditions.

At the time the float collar used at the *Deepwater Horizon* site left Weatherford's control, feasible design alternatives existed which would have, to a reasonable probability, prevented the harm suffered by MOEX Offshore without impairing the utility, usefulness, practicality, or desirability of the float collar.

MOEX Offshore was a foreseeable victim of the manifestation of the defects in the *Deepwater Horizon's* float collar.

Weatherford had actual and/or constructive knowledge of the facts and circumstances relative to the float collar that caused or contributed to the Blowout, which in turn caused MOEX Offshore to incur damages, and Weatherford's actions and inactions were grossly negligent, reckless, and/or willful.

As a result of manufacturing and/or defects in the Weatherford float collar, MOEX Offshore has suffered damage to and/or diminution of the value of their other property, loss of income, loss of business, inconvenience and/or loss of valuable resources, for which they are entitled to actual, compensatory, and punitive damages.

## COUNT XVIII

## **PRODUCTS LIABILITY AGAINST WEATHERFORD - MARITIME LAW**

MOEX Offshore repeats and realleges ¶ ¶ 1-142 above.

At all times relevant hereto, Weatherford was in the business of designing, manufacturing, marketing, selling, and/or distributing the float collar appurtenant to the vessel and used in connection with the drilling operations by the *Deepwater Horizon*. MOEX Offshore was a foreseeable victim of the manifestation of the defects in the *Deepwater Horizon's* float collar.

Weatherford had actual and/or constructive knowledge of the facts and circumstances relative to the float collar which caused or contributed to this incident, which in turn caused MOEX Offshore to incur damages, and its actions and/or inactions were grossly negligent, negligent, reckless, and/or willful.  In the alternative, Weatherford is strictly liable for such damages.

If, as alleged above, BP is not responsible for the failure to convert the float collar then, as a result of the defective design and/or manufacture of the float collar, MOEX Offshore has suffered damage to or diminution of the value of its other property, loss of income, loss of business, inconvenience and/or loss of valuable resources, for which it is entitled to actual and compensatory damages.

WHEREFORE, MOEX Offshore respectfully prays that judgment enter in its favor and that it be awarded its damages against Weatherford.

### COUNT XIX

### PRODUCTS LIABILITY AGAINST WEATHERFORD - STATE LAW

MOEX Offshore repeats and realleges ¶ ¶ 1-147 above.

In the event the Court rules that claims asserted in this action under state law are not preempted by federal law, MOEX Offshore hereby alleges the following state law claim.

30

At all times relevant hereto, Weatherford was in the business of designing, manufacturing, marketing, selling, and/or distributing the float collar appurtenant to the vessel and used in connection with the drilling operations by the *Deepwater Horizon*. MOEX Offshore was a foreseeable victim of the manifestation of the defects in the *Deepwater Horizon's* float collar.

Weatherford had actual and/or constructive knowledge of the facts and circumstances relative to the float collar which caused or contributed to this incident, which in turn caused MOEX Offshore to incur damages, and its actions and/or inactions were grossly negligent, reckless, and/or willful.

If, as alleged above, BP is not responsible for the failure to convert the float collar then as a result of the defective design and/or manufacture of the float collar, MOEX Offshore has suffered damage to or diminution of the value of their other property, loss of income, loss of business, inconvenience and/or loss of valuable resources, for which it is entitled to actual and compensatory damages.

WHEREFORE, MOEX Offshore respectfully prays that judgment enter in its favor and that it be awarded its damages against Weatherford.

### ALLEGATIONS AS TO CAMERON

MOEX Offshore repeats and realleges ¶ ¶ 1-153 above.

At all times relevant hereto, Cameron was in the business of designing, manufacturing, marketing, selling, and/or distributing the BOP used in connection with the drilling operations onboard the *Deepwater Horizon*.

Upon information and belief, if operating as intended on the night of the disaster, the BOP could have been manually or automatically activated before or immediately after the

31

Blowout, cutting off the flow of oil at the wellhead, and limiting the Spill to a minute fraction of its ultimate severity and thereby sparing the Non-Operating Investors millions of dollars in losses and damage.

Cameron manufactured the BOP in use at the Macondo Well on April 20, 2010.

Upon information and belief, Cameron's BOP failed to operate properly or at all, at the time of or following the Blowout, and this failure caused and/or contributed to the Blowout, explosions, fire, and Spill.

Upon information and belief, Cameron's BOP was in a defective condition and unreasonably dangerous to MOEX Offshore and others when it left Cameron's control.

Upon information and belief, at all times, Cameron's BOP was used in the manner intended, or in a manner reasonably foreseeable and/or actually disclosed to Cameron prior to April 20, 2010.

Upon information and belief, at the time the BOP left Cameron's control, it was in a defective condition unreasonably dangerous to MOEX Offshore and others in that it was designed and manufactured with over 260 known defects and failure modes, including but not limited to:

        (a) inadequate, faulty, nonfunctioning, and defective battery systems;

        (b) inadequate, faulty, nonfunctioning, and defective dead man switches and related wiring;

        (c) the absence of acoustic triggers;

        (d) inadequate, faulty, nonfunctioning, and defective EDS;

        (e) improperly sealed, leaky hydraulic systems;

        (f) improperly designed, manufactured, and installed annular seals;

32

(g) insufficiently robust blind shear rams and insufficient emergency methods for closing the BOP;

(h) excessive reliance on an operational control pod as an emergency method of operating the BOP;

(i) excessive vulnerability of the blind shear rams to the failure of a single shuttle valve;

(j) insufficient warnings, instructions, and guidelines on permissible and foreseeable uses and modifications to the BOP and its component parts;

(k) insufficient testing and design verification of the BOP and its component parts to ensure the shearing capability of the ram and other functioning of the BOP during reasonably foreseeable uses; and

(l) in such other particulars as the evidence may show.

Upon information and belief, at the time the BOP appurtenant to the *Deepwater Horizon* left Cameron's control, and at such times as Cameron modified the BOP, Cameron knew, or in light of reasonably available knowledge or in the exercise of reasonable care should have known, about the aforementioned unreasonably dangerous conditions.

## COUNT XX

### <u>PRODUCTS LIABILITY AGAINST CAMERON - MARITIME LAW</u>

MOEX Offshore repeats and realleges ¶ ¶ 1-162 above.

At all relevant times, the BOP appurtenant to the *Deepwater Horizon* was used in an intended and/or reasonably foreseeable manner.

33

MOEX Offshore was a foreseeable victim of the manifestation of the defects in the *Deepwater Horizon's* BOP.

Cameron had actual and/or constructive knowledge of the facts and circumstances relative to the BOP which caused or contributed to this incident, which in turn caused MOEX Offshore to incur damages, and its actions and/or inactions were grossly negligent, negligent, reckless, and/or willful.  In the alternative,  Cameron is strictly liable for such damages.

If, as alleged in above, BP and/or Transocean are not responsible for the failure of the BOP then, pursuant to Fed. R. Civ. P. 8(d)(3), as a result of the defective design and/or manufacture of the BOP, MOEX Offshore has suffered damage to or diminution of the value of its other property, loss of income, loss of business, inconvenience and/or loss of valuable resources, for which it is entitled to actual and compensatory damages.

WHEREFORE, MOEX Offshore respectfully prays that judgment enter in its favor and that it be awarded its damages against Cameron.

## COUNT XXI

## PRODUCTS LIABILITY AGAINST CAMERON - STATE LAW

MOEX Offshore repeats and realleges ¶ ¶ 1-167 above.

In the event the Court rules that claims asserted in this action under state law are not preempted by federal law, MOEX Offshore hereby alleges the following state law claim.

At all relevant times, the BOP appurtenant to the *Deepwater Horizon* was used in an intended and/or reasonably foreseeable manner.

MOEX Offshore was a foreseeable victim of the manifestation of the defects in the *Deepwater Horizon's* BOP.

34

Cameron had actual and/or constructive knowledge of the facts and circumstances relative to the BOP which caused or contributed to this incident, which in turn caused MOEX Offshore to incur damages, and its actions and/or inactions were grossly negligent, reckless, and/or willful.

If, as alleged in above, BP and/or Transocean are not responsible for the failure of the BOP then, pursuant to Fed. R. Civ. P. 8(d)(3), as a result of the defective design and/or manufacture of the BOP, MOEX Offshore has suffered damage to or diminution of the value of its other property, loss of income, loss of business, inconvenience and/or loss of valuable resources, for which it is entitled to actual and compensatory damages.

WHEREFORE, MOEX Offshore respectfully prays that judgment enter in its favor and that it be awarded its damages against Cameron.

## PRAYER FOR RELIEF

WHEREFORE, Third-Party Defendant and Plaintiff-in-Cross-Claims MOEX Offshore 2007 LLC respectfully prays that, after due proceedings, the Court enter judgment in its favor as set forth herein, grant its requests for general, equitable and legal relief, and enter such other relief as the Court deems just and proper.

DATED: April 19, 2011

Respectfully submitted,
BINGHAM McCUTCHEN, LLP

/s/ David M. Balabanian
David M. Balabanian
david.balabanian@bingham.com
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone (415) 393-2170
Facsimile (415) 393-2286

A/74159531.2/2013882-0000350694

James J. Dragna
jim.dragna@bingham.com
Bingham McCutchen LLP
355 South Grand Avenue, Suite 4400
Los Angeles, California 90071-3106
Telephone (213) 680-6436
Facsimile (213) 680-8636

Ky E. Kirby
ky.kirby@bingham.com
Michael B. Wigmore
michael.wigmore@bingham.com
Warren Anthony Fitch
tony.fitch@bingham.com
2020 K Street, NW
Washington, DC 20006-1806
Telephone (202) 373-6000
Facsimile (202) 373-6001

KUCHLER POLK SCHELL
WEINER & RICHESON, LLC
Deborah D. Kuchler, T.A. (La. Bar No. 17013)
Janika Polk (La. Bar No. 27608)
Robert Guidry (La. Bar No. 28064)
1615 Poydras Street, Suite 1300
New Orleans, LA  70112
Tel:  (504) 592-0691
Fax:  (504) 592-0696

A/74159531.2/2013882-0000350694

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, pursuant to Pre-trial Order No. 12, I have caused the foregoing to be served on all counsel via the Lexis Nexis File & Serve system, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, who will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on April 19, 2011.


/s/ David M. Balabanian
David M. Balabanian

A/74159531.2/2013882-0000350694