```
 1                   UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF LOUISIANA
 2

 3     ******************************************************************

 4     IN RE:  OIL SPILL BY THE
       OIL RIG DEEPWATER HORIZON
 5     IN THE GULF OF MEXICO ON
       APRIL 20, 2010
 6
                                 CIVIL ACTION NO. 10-MD-2179 "J"
 7                               NEW ORLEANS, LOUISIANA
                                 THURSDAY, APRIL 7, 2011, 10:30 A.M.
 8

 9     THIS DOCUMENT RELATES TO:

10     THE ST. JOE COMPANY, V.
       HALLIBURTON ENERGY SERV.
11     INC., NO. 2:11-CV-258

12     THE ST. JOE COMPANY, V.
       M-I, L.L.C.,
13     NO. 2:11-CV-00259

14
       ******************************************************************
15

16                      TRANSCRIPT OF PROCEEDINGS
                HEARD BEFORE THE HONORABLE CARL J. BARBIER
17                    UNITED STATES DISTRICT JUDGE

18     APPEARANCES:

19

20     FOR THE PLAINTIFFS'
       LIAISON COUNSEL:          DOMENGEAUX WRIGHT ROY & EDWARDS
21                               BY:  JAMES P. ROY, ESQUIRE
                                 P. O. BOX 3668
22                               556 JEFFERSON STREET
                                 LAFAYETTE, LA  70502
23

24                               HERMAN HERMAN KATZ & COTLAR
                                 BY:  STEPHEN J. HERMAN, ESQUIRE
25                               820 O'KEEFE AVENUE
                                 NEW ORLEANS, LA  70113
```

```
 1   APPEARANCES CONTINUED:

 2


 3   FOR THE ST. JOE
     COMPANY:                 BICKEL & BREWER
 4                            BY:  JAMES S. RENARD, ESQUIRE
                                   ROBERT W. GIFFORD, ESQUIRE
 5                                 MICHAEL J. COLLINS, ESQUIRE
                              1717 MAIN STREET, SUITE 4800
 6                            DALLAS, TX 75201

 7

 8                            SHER, GARNER CAHILL RICHTER
                              KLEIN & HILBERT
 9                            BY:  JAMES M. GARNER, ESQUIRE
                              909 POYDRAS STREET, 28TH FLOOR
10                            NEW ORLEANS, LA  70112

11

12   FOR HALLIBURTON
     ENERGY SERVICES, INC.:   GODWIN RONQUILLO
13                            BY:  R. ALAN YORK, ESQUIRE
                                   GAVIN HILL, ESQUIRE
14                                 SUSAN HAYS, ESQUIRE
                                   MISTY HATAWAY-CONÉ, ESQUIRE
15                            1331 LAMAR, SUITE 1665
                              HOUSTON, TX  77010
16

17

18   FOR M-I L.L.C.:          MORGAN, LEWIS & BOCKIUS
                              BY:  HUGH E. TANNER, ESQUIRE
19                                 JOHN C. FUNDERBURK, ESQUIRE
                                   JAMES B. TARTER, ESQUIRE
20                            1000 LOUISIANA STREET, SUITE 4000
                              HOUSTON, TX  77002
21

22

23

24

25
```

```
 1   APPEARANCES CONTINUED:

 2


 3   FOR BP AMERICA INC.,
     BP AMERICA PRODUCTION
 4   COMPANY, BP COMPANY
     NORTH AMERICA INC.,
 5   BP CORPORATION NORTH
     AMERICA INC.,
 6   BP EXPLORATION &
     PRODUCTION INC.,
 7   BP HOLDINGS NORTH
     AMERICA LIMITED,
 8   BP PRODUCTS NORTH
     AMERICA INC.:           LISKOW & LEWIS
 9                           BY:  DON K. HAYCRAFT, ESQUIRE
                             ONE SHELL SQUARE
10                           701 POYDRAS STREET
                             SUITE 5000
11                           NEW ORLEANS, LA  70139

12

13   OFFICIAL COURT REPORTER:     CATHY PEPPER, CRR, RMR, CCR
                                  CERTIFIED REALTIME REPORTER
14                                500 POYDRAS STREET, ROOM B406
                                  NEW ORLEANS, LA  70130
15                                (504) 589-7779

16   PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.   TRANSCRIPT
     PRODUCED BY COMPUTER.
17

18

19

20

21

22

23

24

25
```

**I N D E X**

SPEAKERS                                                          PAGE

MR. YORK................................................     6

MR. TANNER..............................................    21

MR. RENARD..............................................    26

MR. YORK................................................    50

MR. HAYCRAFT............................................    56

MR. ROY.................................................    57

THE COURT...............................................    57

MR. TANNER..............................................    58

1                    **P-R-O-C-E-E-D-I-N-G-S**

2                    THURSDAY, APRIL 7, 2011

3                 M O R N I N G   S E S S I O N

4                    (COURT CALLED TO ORDER)

5

10:33AM   6

10:33AM   7          THE DEPUTY CLERK:  All rise.  Court is in session.

10:33AM   8          THE COURT:  Good morning, everyone.  Be seated.

10:33AM   9              All right, Eileen, you can call this case.

10:33AM  10          THE DEPUTY CLERK:  MDL 2179, *In re: Oil Spill by the Oil*

10:33AM  11  *Rig DEEPWATER HORIZON in the Gulf of Mexico on April 20th, 2010.*

10:33AM  12          THE COURT:  Counsel, make your appearances, please.

10:33AM  13          MR. YORK:  Your Honor, Alan York appearing on behalf of

10:33AM  14  Halliburton Energy Services, Inc.

10:33AM  15          MR. TANNER:  Your Honor, Hugh Tanner appearing on behalf

10:33AM  16  of M-I, LLC.

10:33AM  17          MR. RENARD:  Your Honor, Jim Renard appearing on behalf

10:33AM  18  of the St. Joe Company.

10:33AM  19          MR. GARNER:  James Garner, Your Honor, with Mr. Renard.

10:34AM  20          THE COURT:  Okay, fine.

10:34AM  21              This matter is before the Court on, first of all, a

10:34AM  22  Motion by Halliburton for Permanent Injunction in Aid of This

10:34AM  23  Court's Jurisdiction over St. Joe Company, which is Record

10:34AM  24  Document 1799; and, a similar motion filed by M-I, L.L.C., which

10:34AM  25  is Record Document 1807.  Obviously, there has been opposition

10:34AM 1    filed and replies and so forth, all of which I have read.

10:34AM 2              So who wants to go first?  Mr. York?

10:34AM 3         MR. YORK:  Yes, Your Honor.

10:34AM 4              May it please the Court.  Good morning,

10:34AM 5    Judge Barbier.

10:34AM 6         THE COURT:  Good morning.

10:34AM 7         MR. YORK:  Alan York appearing on behalf of Halliburton

10:34AM 8    Energy Services, Inc.

10:35AM 9         THE COURT:  Go ahead.

10:35AM 10        MR. YORK:  Your Honor, you've properly stated,

10:35AM 11   obviously, the motions and pleadings that are on file before the

10:35AM 12   Court.  Without wasting the Court's time, I think the procedural

10:35AM 13   history of this case gives a little bit of context to the matters

10:35AM 14   to be discussed this morning.

10:35AM 15             The procedural history of the case is somewhat

10:35AM 16   reminiscent of the movie *Groundhog Day* because we're back sort of

10:35AM 17   where we started at the beginning.

10:35AM 18             The procedural history of this case began in August

10:35AM 19   of 2010, when St. Joe filed separate claims in Delaware state

10:35AM 20   court against Halliburton and against M-I.  Both M-I and

10:35AM 21   Halliburton removed those cases to federal court, moved to stay

10:35AM 22   them, and immediately sought a transfer of those cases by the

10:35AM 23   JPML to this Court for MDL proceedings.

10:35AM 24             After St. Joe objected to that request for

10:35AM 25   transfer, the JPML ultimately determined that the cases were

10:35AM  1    appropriate for transfer, entered a transfer order and sent the

10:36AM  2    cases to this Court for pretrial proceedings.

10:36AM  3         THE COURT:  Going back to those original two lawsuits,

10:36AM  4    they were filed in Delaware state court and removed to federal

10:36AM  5    court, obviously, right?

10:36AM  6         MR. YORK:  Yes, sir.

10:36AM  7         THE COURT:  St. Joe had objected to the transfer, the

10:36AM  8    MDL transfer?

10:36AM  9         MR. YORK:  Several filings happened in Delaware state

10:36AM 10    court.  St. Joe filed a motion to remand.  Halliburton and M-I

10:36AM 11    both filed motions to stay.

10:36AM 12         THE COURT:  The motions to stay were granted?

10:36AM 13         MR. YORK:  No, Judge Sleet had the cases in Delaware

10:36AM 14    state court once they were removed.

10:36AM 15         THE COURT:  What's his name?

10:36AM 16         MR. YORK:  Sleet, S-L-E-E-T.

10:36AM 17         Judge Sleet did not enter any rulings on the motion

10:36AM 18    to stay or the motions to remand.  He just let the JPML take the

10:36AM 19    proper course, which was to transfer the cases to this MDL

10:36AM 20    proceeding.

10:36AM 21         Ultimately, on February 14th, the cases were fully

10:36AM 22    and finally transferred to this Court under its MDL jurisdiction

10:37AM 23    for pretrial proceedings.

10:37AM 24         On March 27th, the St. Joe Company filed motions to

10:37AM 25    dismiss under Rule 41 seeking to voluntarily dismiss both its

10:37AM  1    claim against Halliburton and against M-I.

10:37AM  2           Within an hour and a half, St. Joe Company refiled

10:37AM  3    an action in Delaware state court, once again, where the whole

10:37AM  4    process had started, this time combining both Halliburton and M-I

10:37AM  5    into the same case.

10:37AM  6           THE COURT:  Were there other parties in either the

10:37AM  7    original two lawsuits or in the newest one?

10:37AM  8           MR. YORK:  No, Your Honor.  Originally, when the St. Joe

10:37AM  9    Company filed in Delaware, there were three actions.  There was

10:37AM 10    one against Transocean, there was one against Halliburton, and

10:37AM 11    there was one against M-I, all three separate suits.

10:37AM 12           This Court dealt with the Transocean issue a week

10:37AM 13    or so ago in terms of enforcing the limitations injunction

10:38AM 14    against further prosecution of that lawsuit.

10:38AM 15           When the refiling occurred in this case, the

10:38AM 16    refiling in Delaware state court on March 27th was a suit against

10:38AM 17    both M-I and Halliburton in the same suit.

10:38AM 18           THE COURT:  BP is not a party in any of those?

10:38AM 19           MR. YORK:  BP has not been named in any of these suits

10:38AM 20    at this point.

10:38AM 21           THE COURT:  No other parties?

10:38AM 22           MR. YORK:  No, Your Honor.  No, Your Honor.

10:38AM 23           THE COURT:  What was the basis for the original removals

10:38AM 24    and the basis for the most recent removal?

10:38AM 25           MR. YORK:  The basis for the removals, Your Honor, were

10:38AM 1    that the Outer Continental Shelf Lands Act provides removal

10:38AM 2    jurisdiction, and that the Oil Pollution Act operates to preempt

10:38AM 3    any state law claims and also provides removal jurisdiction.  So

10:38AM 4    under both of those federal statutes, the case was removed.

10:38AM 5           Now, we have -- since the new filing in Delaware

10:39AM 6    state court, M-I and HESI have filed removals of those actions

10:39AM 7    from Delaware state court, again, taking them up to Delaware

10:39AM 8    federal district court.  As of yesterday, those cases have been

10:39AM 9    assigned, again, to Judge Sleet.  The St. Joe Company has

10:39AM 10   already filed --

10:39AM 11          THE COURT:  I don't know how their rules work.  Our rule

10:39AM 12   would be that it would go back to the same judge because it's the

10:39AM 13   same case.

10:39AM 14          MR. YORK:  That's correct.  We filed a notice of related

10:39AM 15   proceedings when we filed the removal.  The case went back to

10:39AM 16   Judge Sleet.

10:39AM 17          St. Joe Company has already filed a motion to

10:39AM 18   remand in that case.  So, again, we are -- for all intents and

10:39AM 19   purposes, pending some arguments that we will make today --

10:39AM 20          THE COURT:  It's déjà vu all over again.

10:39AM 21          MR. YORK:  Déjà vu all over again.  Exactly, Your Honor.

10:39AM 22          THE COURT:  So the cases were not removed, or maybe

10:39AM 23   they're not removable on the basis of diversity?

10:39AM 24          MR. YORK:  That's correct, Your Honor.  There was no

10:39AM 25   diversity jurisdiction.  It was based on federal question

10:39AM 1    jurisdiction and removal jurisdiction under OCSLA and OPA.

10:40AM 2         THE COURT:  Why is there no diversity?

10:40AM 3         MR. YORK:  Halliburton is a Delaware company, and so the

10:40AM 4    forum defendant rule would operate to --

10:40AM 5         THE COURT:  All these companies are Delaware

10:40AM 6    corporations?  Halliburton and M-I --

10:40AM 7         MR. YORK:  I believe that's correct.

10:40AM 8         MR. TANNER:  Certainly as to M-I, that is correct,

10:40AM 9    Your Honor.

10:40AM 10        MR. YORK:  And Halliburton Energy Services.

10:40AM 11        THE COURT:  You could not remove them based on

10:40AM 12   diversity.

10:40AM 13        MR. YORK:  That's correct.

10:40AM 14        THE COURT:  All right.  Go ahead.

10:40AM 15        MR. YORK:  So, Your Honor, once the --

10:40AM 16        THE COURT:  I'm assuming that's why you were sued there

10:40AM 17   instead of in Florida.

10:40AM 18        MR. YORK:  I believe that to be correct, Your Honor.

10:40AM 19             Once the notice of voluntary dismissal was filed by

10:40AM 20   the St. Joe Company on March 27th, which, by the way, was served

10:40AM 21   on us on March 29th, both Halliburton and M-I filed the current

10:40AM 22   motions that are before the Court seeking injunctive relief, the

10:40AM 23   basic purpose of which was to bring to the Court's attention what

10:40AM 24   was happening, the concern of the parties that allowing something

10:40AM 25   like this to happen would necessarily impact the integrity of the

10:41AM  1    MDL proceedings.

10:41AM  2           The St. Joe Company filed an opposition to the

10:41AM  3    motions for injunctive relief, which raised an issue of whether

10:41AM  4    this Court had jurisdiction, any remaining jurisdiction over the

10:41AM  5    case based on their voluntary dismissal.  Halliburton and M-I

10:41AM  6    filed responses -- or replies to that, and St. Joe has filed

10:41AM  7    sur-replies.

10:41AM  8           But given the developments in the case, it's

10:41AM  9    actually, I believe, more efficient for this Court to start with

10:41AM 10    the jurisdictional question, because I think that jurisdictional

10:41AM 11    question ultimately resolves the issues that are before the Court

10:41AM 12    without ever having to reach, for example, the All Writs Act or

10:41AM 13    the Anti-Suit Injunction Act.

10:41AM 14           As I'm sure the Court is aware, Rule 41 provides

10:41AM 15    that a party has a right to dismiss its claim before an answer or

10:41AM 16    a summary judgment motion has been filed.  The St. Joe Company's

10:41AM 17    position has been that there was no answer filed and no motion

10:41AM 18    for summary judgment filed; therefore, they have an unfettered

10:42AM 19    right to dismiss their claim as they see fit.

10:42AM 20           However, the Fifth Circuit takes a broader view of

10:42AM 21    that language in Rule 41, and specifically in the *Exxon* case,

10:42AM 22    which is cited in our briefing to the Court, the court looks to

10:42AM 23    what the actual purpose of Rule 41's language is, and

10:42AM 24    specifically notes that the purpose of Rule 41 is to allow a

10:42AM 25    plaintiff to dismiss its claim before a defendant has become

10:42AM  1    actively engaged in the defense of the suit.

10:42AM  2         Now, that case does not go on to specifically

10:42AM  3    equate any Rule 12(b) with a motion for summary judgment; but, it

10:42AM  4    is clear that the Fifth Circuit looks at it from a standard of

10:42AM  5    active engagement.  I don't believe that there is anyone in this

10:42AM  6    courtroom today that, with a straight face, could argue that by

10:42AM  7    March 27th, Halliburton had not actively engaged, along with M-I,

10:42AM  8    in the defense of these claims.

10:42AM  9         But, in addition to the *Exxon* case, there is also a

10:43AM 10    specific MDL opinion from the District Court from the

10:43AM 11    Eastern District of Missouri in an MDL case that addresses the

10:43AM 12    application of Rule 41 --

10:43AM 13         THE COURT:  What case is that?

10:43AM 14         MR. YORK:  I'm sorry, that is In Re Genetically Modified

10:43AM 15    Rice Litigation.  The cite is actually a Westlaw cite,

10:43AM 16    Your Honor.  It's 2010 WL 716190.  We did not cite this in our

10:43AM 17    briefings, but I do --

10:43AM 18         THE COURT:  That's what I was going to ask you.  I

10:43AM 19    didn't remember that; but, there were a lot of cases cited and

10:43AM 20    talked about, and I read a number of them.  I can't swear that I

10:43AM 21    read every case cited in every brief.

10:43AM 22         MR. YORK:  This case was not cited, but we did bring

10:43AM 23    copies for the Court and for counsel that we will be happy to

10:43AM 24    pass out as soon as I complete my argument.

10:43AM 25         But in that case, the MDL judge in that case was

10:44AM 1    addressing the issue of the application of Rule 41 and parties'

10:44AM 2    rights in that case to dismiss their federal claims and refile

10:44AM 3    cases in state court.

10:44AM 4            Specifically looking at Rule 41, the Court said,

10:44AM 5    "Because my case management orders have prevented the defendants

10:44AM 6    from filing answers in most of the individual cases, the

10:44AM 7    provisions of Rule 41(a)(1)(A)(i), Federal Rules of Civil

10:44AM 8    Procedure, which normally allow plaintiffs to dismiss without

10:44AM 9    prejudice as of right under certain circumstances do not apply to

10:44AM 10   the cases in this MDL."

10:44AM 11           In other words, because the court's case management

10:44AM 12   orders had affected the normal processes of the case, that judge,

10:44AM 13   in an MDL context, specifically found that the normal procedures

10:44AM 14   under Rule 41 did not apply.

10:44AM 15           Having said all of that, Halliburton's position is

10:44AM 16   that, given the unique context and procedural history of this

10:44AM 17   case, it cannot be said that the parties have not actively

10:45AM 18   engaged in the litigation of this case and were not actively

10:45AM 19   engaged as of the time that the St. Joe Company attempted to

10:45AM 20   voluntarily dismiss its claim.

10:45AM 21           Therefore, under Fifth Circuit precedent and under

10:45AM 22   prior MDL precedent that notices the distinctive nature of an MDL

10:45AM 23   proceeding, this Court has continuing jurisdiction because that

10:45AM 24   dismissal was not effective.

10:45AM 25           But even if this Court were to look at the

10:45AM 1 standards of Rule 41 as promoted by the St. Joe Company in its

10:45AM 2 filings, Halliburton believes that this Court, nonetheless, has

10:45AM 3 continuing jurisdiction because St. Joe failed to properly

10:45AM 4 dismiss its claims.

10:45AM 5 　　　　As we noted before, the wording of Rule 41 says

10:45AM 6 that the plaintiff only has the ability to voluntarily dismiss

10:45AM 7 its claims of its own volition if no answer and no summary

10:45AM 8 judgment motion has been filed.

10:45AM 9 　　　　We've already talked about the failure to file an

10:46AM 10 answer portion of that as addressed by the MDL -- by a prior MDL

10:46AM 11 opinion; but, I would also note for the Court that under this

10:46AM 12 Court's PTO, specifically PTO 11, which is also referred to as

10:46AM 13 Case Management Order 1, the parties are instructed that upon the

10:46AM 14 filing of a 12(b) motion to the Bundle B master complaint, no

10:46AM 15 answer is necessary to those complaints until such time as the

10:46AM 16 Court rules on the pending 12(b) motion.

10:46AM 17 　　　　So we do believe that taking the first portion of

10:46AM 18 Rule 41, the answer portion, that given the MDL context, this

10:46AM 19 Court should find that it has continuing jurisdiction over the

10:46AM 20 improperly dismissed claims of St. Joe.

10:46AM 21 　　　　But, in addition to that, the Fifth Circuit in the

10:46AM 22 *Exxon* case specifically recognized that a 12(b) motion can be

10:46AM 23 converted into a summary judgment motion that would, in turn,

10:46AM 24 deprive a party from its unfettered right to dismiss a case under

10:46AM 25 Rule 41.  We believe that in this case, that is exactly what has

10:47AM  1    happened.

10:47AM  2            If the Court will remember, back in the fall of

10:47AM  3    2010, the Plaintiffs' Steering Committee and the Defense Steering

10:47AM  4    Committee underwent a series of negotiations surrounding the

10:47AM  5    entry of PTO 11, again, also known as Case Management Order 1.

10:47AM  6            In the status conference that occurred before this

10:47AM  7    Court on September 16, 2010, Mr. Herman, on behalf of the

10:47AM  8    Plaintiffs' Steering Committee, specifically said, "I would say

10:47AM  9    the defense counsel have taken the position, or at least some of

10:47AM 10    them have, that they need to have specific pleadings to tee up

10:47AM 11    legal issues.  And one of the compromises that we proposed was,

10:47AM 12    well, look, we understand that you want to have a Rule 12 motion

10:47AM 13    on jurisdiction over OPA claims.  Right off the bat, that seems

10:47AM 14    to be a touchstone issue.  That's a legal issue.  It seems to us,

10:47AM 15    it doesn't need to be tethered to any specific pleadings.  Why

10:48AM 16    don't you guys brief the issue, and we'll brief the issue, and

10:48AM 17    have the Court decide.  So that might be one possibility."

10:48AM 18            In response to that representation, and in response

10:48AM 19    to the agreement of all counsel, this Court entered PTO 11,

10:48AM 20    CMO 1.  And by the entry of PTO 11, CMO 1, this Court, we

10:48AM 21    believe, converted the 12(b) process to a summary judgment

10:48AM 22    process by saying that was the mechanism that the Court was going

10:48AM 23    to use to address the legal issues between the parties that

10:48AM 24    needed to be addressed before the factual portions of the case

10:48AM 25    were decided.

10:48AM 1          That was not done in secret.  It was not done

10:48AM 2   quietly.  It was done in open court.  It was done by an order

10:48AM 3   that was specifically made applicable to subsequently transferred

10:48AM 4   cases into the MDL.

10:48AM 5          So, to the extent that Rule 41 says that the filing

10:48AM 6   of a motion for summary judgment divests a party of its

10:49AM 7   unfettered right to file a notice of dismissal, Halliburton's

10:49AM 8   position would be that the filing of its 12(b) motion in response

10:49AM 9   to the B1 master complaint, which is the bundle into which

10:49AM 10  St. Joe's claim would have been designated or would have been

10:49AM 11  included, effectively operated as a summary judgment motion that

10:49AM 12  divested St. Joe of its right to voluntarily dismiss its claim.

10:49AM 13         Now, St. Joe has cited in its briefings a case

10:49AM 14  called *New Orleans Flooring*.  I do want to address that opinion

10:49AM 15  just very quickly because *New Orleans Flooring* does have language

10:49AM 16  in it that says that a court is required to give notice to the

10:49AM 17  parties that a 12(b) motion is being converted into a summary

10:49AM 18  judgment motion.  However, the immediately following section of

10:49AM 19  that Fifth Circuit opinion then analyzes whether the failure of

10:49AM 20  the court to do so operates as harmless error.

10:49AM 21         In this case, given the timing of the Court's entry

10:49AM 22  of PTO 11, which was not after a 12(b) motion had been filed, but

10:50AM 23  was, in fact, in preparation for the filing of the 12(b) motions,

10:50AM 24  and in order to give the parties an accurate timeline of when to

10:50AM 25  file those motions, any alleged failure of this Court to give

10:50AM 1   notice of conversion of the 12(b) motions to summary judgment

10:50AM 2   motions is harmless because the defendants have had,

10:50AM 3   subsequently, an opportunity to file their 12(b) motions, and the

10:50AM 4   plaintiffs have had an opportunity to fully respond to those

10:50AM 5   12(b) motions under the specific dictates of this Court's order.

10:50AM 6           THE COURT:  I guess the question there is, is whether

10:50AM 7   the Rule 12 motion which references or has attached to it matters

10:50AM 8   outside the pleadings is considered to convert it to a Rule 56

10:51AM 9   motion unless and until the Court says it's going to exclude

10:51AM 10  those matters outside the pleadings, or whether it remains a

10:51AM 11  Rule 12 motion until the Court says it becomes a Rule 56 motion.

10:51AM 12          MR. YORK:  Our response to that, Your Honor, would be

10:51AM 13  that --

10:51AM 14          THE COURT:  There is language in the Fifth Circuit cases

10:51AM 15  that they cite, and I'm trying to find the exact case now.

10:51AM 16          They cite two cases.  They cite the *New Orleans*

10:52AM 17  *Flooring* case that you mentioned, a Fifth Circuit 1995 case, for

10:52AM 18  the proposition that said it rejected the contention that mere

10:52AM 19  attachment of affidavits to a motion to dismiss automatically

10:52AM 20  converts that motion to a motion for summary judgment, explaining

10:52AM 21  that the district court had discretion to consider the attached

10:52AM 22  affidavits converting the motion or not depending on whether it

10:52AM 23  considered the extra pleadings matters.

10:52AM 24          And they also cite a Third Circuit case, *In Re Bath*

10:52AM 25  *and Kitchen Fixtures Antitrust Litigation*.  They quote from that

10:52AM 1    case, "Only when a motion filed under 12(b)(6) is converted by

10:52AM 2    the district court into a motion for summary judgment does it bar

10:52AM 3    voluntary dismissal."

10:52AM 4          MR. YORK:  Your Honor, two responses.  First is, the

10:52AM 5    Third Circuit, we believe, does have a different standard for

10:52AM 6    application of Rule 41, but the Third Circuit's standard is not

10:53AM 7    applicable here.  The MDL proceedings are occurring in the

10:53AM 8    Fifth Circuit's jurisdiction, so it's the Fifth Circuit's law

10:53AM 9    that we should look at.

10:53AM 10         The *New Orleans Flooring* case does have language,

10:53AM 11   and there is some language in those Fifth Circuit cases that talk

10:53AM 12   about the Court's consideration of the outside evidence, that

10:53AM 13   talk about things such as that.  But, for example, the *Exxon* case

10:53AM 14   talks about that in the context of looking at whether there has

10:53AM 15   been active engagement, to the purpose behind the rule.

10:53AM 16         But even if an affirmative act by the Court is

10:53AM 17   necessary to convert the 12(b) motions to summary judgment

10:53AM 18   motions to satisfy the standard that the St. Joe Company is

10:53AM 19   espousing, we believe this Court has taken that affirmative act.

10:53AM 20         By the entry of PTO 11, CMO 1, this Court gave

10:53AM 21   public notice as to how it was going to resolve these legal

10:53AM 22   issues that the parties were raising.  It was not through the

10:53AM 23   summary judgment context; it was through the Rule 12(b) process.

10:54AM 24         Moreover, in that order, this Court took no actions

10:54AM 25   to try to limit the evidence that would be presented by the

10:54AM 1   parties in attachment to the Rule 12 motions.  For example, on

10:54AM 2   Halliburton's Rule 12 motion, we did attach documents outside the

10:54AM 3   record.  I believe, and Plaintiffs' Steering Committee can

10:54AM 4   confirm, that when the Plaintiffs' Steering Committee filed their

10:54AM 5   omnibus response to that 12(b) motion to the Bundle B-1 master

10:54AM 6   complaint, there was no objection to the inclusion of additional

10:54AM 7   evidence outside the pleadings.

10:54AM 8          So the parties here, the plaintiffs represented by

10:54AM 9   the Plaintiffs' Steering Committee and the defendants and anyone

10:54AM 10  who was listening and paying attention to what was happening in

10:54AM 11  the MDL proceedings, understood that the 12(b) process was the

10:54AM 12  mechanism by which this Court was going to consider these legal

10:54AM 13  issues.

10:54AM 14         Given the unique MDL context and the specific

10:54AM 15  procedural history of this case, we believe that even if the

10:54AM 16  Court reaches the standards that are espoused by the St. Joe

10:55AM 17  Company, this Court's actions and the parties' actions in

10:55AM 18  conformity with the Court's orders operate to convert those 12(b)

10:55AM 19  motions to summary judgments, which divests the St. Joe Company

10:55AM 20  of its right to an unfettered dismissal.

10:55AM 21         Because of that -- I'm sorry, were you --

10:55AM 22         THE COURT:  No, I'm not cutting you off.  If you have

10:55AM 23  something else you would like to say on that issue, I'll listen

10:55AM 24  to it.  But if I disagree with you on the Rule 41 issue, assuming

10:55AM 25  that they were entitled to voluntarily dismiss their case without

10:55AM 1    prejudice under Rule 41, where does your argument go from there?
10:55AM 2    Does it rely on the All Writs Act?
10:55AM 3         MR. YORK:  Your Honor, we believe, number one, this
10:55AM 4    Court has ancillary jurisdiction in order to protect the
10:56AM 5    integrity of its previously existing orders.
10:56AM 6              Honestly, in order to preserve the efficiency of
10:56AM 7    the Court, we had divided the argument such that M-I was going to
10:56AM 8    address that ancillary jurisdiction.  But I will say that
10:56AM 9    Halliburton believes that this Court would have ancillary
10:56AM 10   jurisdiction, and, despite St. Joe's protestations to the
10:56AM 11   contrary, its dismissal of its claims and refiling of those
10:56AM 12   claims in state court of Delaware again, starting all over again,
10:56AM 13   does attack the integrity of this Court's prior orders because
10:56AM 14   this Court is given the authority to decide issues on remand.
10:56AM 15             What St. Joe Company is attempting to do is
10:56AM 16   dismiss, refile to avoid this Court's jurisdiction, to try to get
10:56AM 17   a ruling from a court that has already allowed the case to be --
10:56AM 18   that it was removed from, and then the district court allowed it
10:56AM 19   to be transferred into the MDL proceedings.
10:56AM 20             Again, like the Court said, it's déjà vu all over
10:56AM 21   again.  This is exactly the type of situation that calls upon
10:56AM 22   this Court to exercise its ancillary jurisdiction to prohibit the
10:57AM 23   activities that are being undertaken by the St. Joe Company.
10:57AM 24             Because the fear of the defendants, and I believe
10:57AM 25   that it is a fear that is shared by the plaintiffs as well, is

10:57AM 1   that if the St. Joe Company is allowed to prevail on this type of

10:57AM 2   a situation, there will be others that follow or attempt to

10:57AM 3   follow the same road map.  Ultimately, we will end up in a

10:57AM 4   situation where the effective administration of this case under

10:57AM 5   the MDL proceedings will be directly attacked.

10:57AM 6           So on all of those bases, Halliburton believes that

10:57AM 7   this Court has the authority to act and should act to prohibit

10:57AM 8   St. Joe from proceeding with pretrial proceedings or discovery in

10:57AM 9   any court other than this MDL court.

10:57AM 10          At this point, I'll turn it over to M-I to discuss

10:57AM 11  further the --

10:57AM 12          THE COURT:  Thank you.

10:57AM 13          Mr. Tanner.

10:57AM 14      MR. TANNER:  Your Honor, Hugh Tanner, if it please the

10:57AM 15  Court.

10:57AM 16          To the extent the Court does want to take

10:57AM 17  additional points on the All Writs Act, we did brief this, as did

10:58AM 18  Halliburton.  I want to make clear, of course, as a starting that

10:58AM 19  we do support and adopt the points that Halliburton, Mr. York,

10:58AM 20  made prior to this point.

10:58AM 21          The All Writs Act is one, of course, we often had

10:58AM 22  that opportunity to study in law school and wondered, quite

10:58AM 23  honestly, the applications we're going to see.  But, I think,

10:58AM 24  quite frankly, if there were ever a matter in which the All Writs

10:58AM 25  Act, a case where it cried out for application thereunder, I

10:58AM  1    think that, indeed, is the one that we find here.

10:58AM  2            As articulated by Mr. York, and as this Court

10:58AM  3    noted, it is the déjà vu all over again.  We do find ourselves

10:58AM  4    here, indeed, as we checked this morning, we were once again back

10:58AM  5    in front -- this case has been back in front of the JPML, and a

10:58AM  6    conditional transfer order has been issued by the JPML.  So we're

10:58AM  7    finding ourselves one step away from being back where we were

10:59AM  8    just a few days ago.

10:59AM  9            I think the cases are very clear, cases within the

10:59AM 10    Southern District of Texas, particularly the *Qureshi* case, it's

10:59AM 11    Q-U-R-E-S-H-I, *Qureshi v. United States*, where the Fifth Circuit

10:59AM 12    made clear that, indeed, even after a voluntary dismissal, if,

10:59AM 13    indeed, the Court views the dismissal here as proper under

10:59AM 14    Rule 41, that the Court does retain jurisdiction to protect its

10:59AM 15    order on ancillary, on collateral issues, and can issue such

10:59AM 16    orders as necessary as sanctioned -- in the line of sanctions

10:59AM 17    motions as a collateral issue to protect its previous rulings.

10:59AM 18            So we think that it's clear that the Fifth Circuit

10:59AM 19    has recognized that ability, even where there was what appeared

11:00AM 20    to be a voluntary dismissal.

11:00AM 21        THE COURT:  I think you're probably right on that.  The

11:00AM 22    more difficult issue is whether all this maneuvering that the

11:00AM 23    St. Joe Company has done -- and one of two things are going to

11:00AM 24    happen.  The case has now been re-removed to federal court,

11:00AM 25    right?

11:00AM 1      MR. TANNER:  That's correct.  And then transferred --

11:00AM 2      THE COURT:  So either it will be ultimately transferred

11:00AM 3 here again, and we'll be right back where we started, or it's

11:00AM 4 going to be remanded to state court.  Your concern would be if it

11:00AM 5 gets remanded back to state court, correct?

11:00AM 6      MR. TANNER:  Absolutely, Your Honor.

11:00AM 7      THE COURT:  I know that Mr. York expressed concern that

11:00AM 8 if St. Joe Company can, quote, get away with this, then other

11:01AM 9 people may follow suit, but we do have state court cases that are

11:01AM 10 pending that are related to this BP oil spill.  They are not all

11:01AM 11 in federal court.  That occurs in these cases sometimes.  For

11:01AM 12 various reasons, some cases don't end up in federal court, and we

11:01AM 13 have to coordinate things.

11:01AM 14      Putting aside the issue of whether this might

11:01AM 15 prompt other people to try to imitate what St. Joe is doing in

11:01AM 16 this case, what is it specifically that is the concern that might

11:01AM 17 happen in state court that would interfere with what we're doing

11:01AM 18 here in this case?

11:01AM 19      MR. TANNER:  Well, Your Honor, of course, understanding

11:01AM 20 the very basic purpose of an MDL, and recognizing that, indeed,

11:01AM 21 sometimes there are issues that are properly treated or are in a

11:02AM 22 state court, I think the issue here is that we keep going back to

11:02AM 23 the point of déjà vu over again, and I think we need to recognize

11:02AM 24 that.

11:02AM 25      There has been rulings within the federal system

11:02AM 1   that this case is properly here.  In the construct of this MDL,
11:02AM 2   it was made very clear that this Court, this MDL was put in place
11:02AM 3   because of the common issues, because of the efficient
11:02AM 4   administration of discovery and other related topics, that we
11:02AM 5   should, indeed, have an MDL, and it should be here in
11:02AM 6   New Orleans.
11:02AM 7           The Court made illusions to why they filed in
11:02AM 8   Delaware, and that's another interesting point here.  For the
11:02AM 9   parties to be forced to go to New Castle, Delaware, to try to
11:02AM 10  relitigate as a sideline a case that has already been ruled upon
11:02AM 11  by the JPML as properly before this MDL would be an extraordinary
11:03AM 12  waste.
11:03AM 13          These are Florida issues.  It's 300 miles from
11:03AM 14  St. Joe's headquarters to New Orleans and 1200 to the court in
11:03AM 15  New Castle, Delaware.
11:03AM 16          I think the real point here, as talked about by
11:03AM 17  Mr. York, we've spent millions of dollars, the parties have, in
11:03AM 18  discovery.  We are in a very mature case at this point in terms
11:03AM 19  of where we are and what has been accomplished.
11:03AM 20          THE COURT:  Does Delaware have some form of forum non
11:03AM 21  conveniens that you can bring in?
11:03AM 22          MR. TANNER:  Not that I'm specifically aware of,
11:03AM 23  Your Honor.
11:03AM 24          But getting to the point, it's going to be -- we
11:03AM 25  have in here -- this case -- another interesting point, this MDL

11:03AM 1  was -- the order entering the MDL was entered on August 10th, I

11:04AM 2  believe it was.  This case was filed, the individual cases

11:04AM 3  against Transocean, Halliburton and M-I were filed in the latter

11:04AM 4  part of August.  So it's interesting both in its timing when it

11:04AM 5  was filed and the manner in which it was filed.

11:04AM 6          The particular harm, as well, in addition to where

11:04AM 7  we find ourselves in this mature case is, I think the Court needs

11:04AM 8  to look to what can happen with respect to that.  There are --

11:04AM 9  the MDL, particularly -- the JPML, particularly when it issued

11:04AM 10 its order transferring this case on February 7th, recognized the

11:04AM 11 common issues with those here before this Court and in the MDL.

11:04AM 12 In particular, the issues of remand were specifically dealt with

11:04AM 13 by the Court, and it said that those could be brought here.

11:04AM 14         So, in terms of protecting the integrity and the

11:04AM 15 respect of the orders of both the JPML and this MDL, we feel that

11:04AM 16 that brings in the All Writs Act, that this Court should

11:05AM 17 enjoin -- that those issues are, indeed, properly before this

11:05AM 18 Court, and this is the Court that the JPML has designated to hear

11:05AM 19 those, including the issue, the pretrial issue of remand.

11:05AM 20         We think, in order to effectuate and to give

11:05AM 21 respect to those orders, the Court has, indeed, the authority to

11:05AM 22 issue an injunction under the All Writs Act to do so.

11:05AM 23         THE COURT:  Anything else?

11:05AM 24         MR. TANNER:  That's it, Your Honor.

11:05AM 25         THE COURT:  Thank you.

| | | |
|---|---|---|
| 11:05AM | 1 | Mr. Renard, right? |
| 11:05AM | 2 | MR. RENARD:  Yes, Your Honor.  May it please the Court. |
| 11:05AM | 3 | THE COURT:  Why don't you want to be in New Orleans? |
| 11:05AM | 4 | It's a great city. |
| 11:05AM | 5 | MR. RENARD:  Your Honor, it is a great city. |
| 11:05AM | 6 | THE COURT:  I'm sure it's better than New Castle, |
| 11:06AM | 7 | Delaware, even though I'm never been to New Castle.  It's got to |
| 11:06AM | 8 | be better than New Castle. |
| 11:06AM | 9 | MR. RENARD:  Your Honor, in an overwhelming number of |
| 11:06AM | 10 | respects, New Orleans is definitely better than New Castle. |
| 11:06AM | 11 | THE COURT:  Why are you fighting so hard to stay out of |
| 11:06AM | 12 | here?  We're a very friendly place. |
| 11:06AM | 13 | MR. RENARD:  Undoubtedly so, Your Honor. |
| 11:06AM | 14 | As the Court well appreciates, we have a duty to |
| 11:06AM | 15 | represent our clients and pursue its claims and select the claims |
| 11:06AM | 16 | to be pursued as best we can and in what we believe are our |
| 11:06AM | 17 | clients' best interests. |
| 11:06AM | 18 | Your Honor, we selected and elected to bring state |
| 11:06AM | 19 | law claims in a state court against defendants who included a |
| 11:06AM | 20 | resident of the forum state.  That case was removed, Your Honor, |
| 11:06AM | 21 | and now we're in a -- |
| 11:06AM | 22 | THE COURT:  You've got to admit it's pretty strange |
| 11:06AM | 23 | background to this thing.  You've got a Florida corporation, |
| 11:07AM | 24 | right, St. Joe -- |
| 11:07AM | 25 | MR. RENARD:  Based in Florida, Your Honor, incorporated |

11:07AM 1    in Delaware.

11:07AM 2           THE COURT:  Well, all the property is in Florida.

11:07AM 3           MR. RENARD:  Most of its properties are located in

11:07AM 4    Florida.

11:07AM 5           THE COURT:  The panhandle, northwest Florida.

11:07AM 6           MR. RENARD:  Yes, sir.

11:07AM 7           THE COURT:  -- alleging damage to its property in

11:07AM 8    Florida.  You are alleging claims solely under Florida state law,

11:07AM 9    right?

11:07AM 10           MR. RENARD:  Yes, Your Honor.

11:07AM 11           THE COURT:  You filed suit in state court in Delaware.

11:07AM 12           MR. RENARD:  Yes, Your Honor.

11:07AM 13           THE COURT:  You filed three separate lawsuits instead of

11:07AM 14    one suit.  Maybe you had some good reason for that.  I don't

11:07AM 15    understand a lot of this, but I'm sure there was some tactical

11:07AM 16    reason that you were pursuing there.

11:07AM 17           Then we have gone through all of these removals and

11:07AM 18    remand motions and transfers and now attempts at voluntary

11:07AM 19    dismissal.  It's just a lot of legal maneuvering, forum shopping,

11:07AM 20    which maybe you have a right to do, I don't know, but it's

11:08AM 21    really -- it's distasteful, let me just put it that way.  It

11:08AM 22    really is.  This is the kind of stuff that gives lawyers a bad

11:08AM 23    name, I think, all of this maneuvering.  I don't know why you

11:08AM 24    just can't -- you know, let's just move on and get this case

11:08AM 25    moving.

11:08AM 1          You know what, I wonder how much time and money and

11:08AM 2    effort your client has spent on all of this maneuvering, rather

11:08AM 3    than just proceeding with the case wherever it is.

11:08AM 4          I say all of that.  I'm not saying I'm going to

11:08AM 5    rule against you here because I haven't decided that yet.  Maybe

11:08AM 6    you have a perfect right to do it.  But it looks awful.  It looks

11:08AM 7    bad --

11:08AM 8          MR. RENARD:  Your Honor, we --

11:08AM 9          THE COURT:  -- to me.

11:08AM 10          MR. RENARD:  Yes, Your Honor.

11:08AM 11          Your Honor, we chose at the outset, as the Court

11:08AM 12    noted, to bring state law claims in Delaware state court.  We

11:08AM 13    believe that those claims --

11:08AM 14          THE COURT:  Why didn't you sue them in Florida?  That

11:08AM 15    would be the natural place to sue, if you have Florida land,

11:08AM 16    Florida corporation, suing them in Florida.  You could have sued

11:08AM 17    them in Florida, couldn't you?

11:08AM 18          MR. RENARD:  Your Honor, that was an option.  It was

11:08AM 19    also an option, I suppose, to bring claims under the

11:09AM 20    Oil Pollution Act, OPA, which we chose not to do.

11:09AM 21          What we did, Your Honor, is, again, select claims,

11:09AM 22    select a forum that we believed would provide the most expedient

11:09AM 23    way to relief in this case.

11:09AM 24          THE COURT:  You may outsmart yourself if it turns out

11:09AM 25    you don't have any claim there.  I don't know if you do or not.

11:09AM 1   The argument being made by the defendants in the case, I believe,

11:09AM 2   is that there are no viable claims under Florida law here in the

11:09AM 3   circumstances of this case.

11:09AM 4           MR. RENARD:  Yes, Your Honor.  As the Court well

11:09AM 5   knows --

11:09AM 6           THE COURT:  If you don't have any claims under Florida

11:09AM 7   law, what do you have, if you haven't brought any other claims?

11:09AM 8           MR. RENARD:  No, Your Honor.  We have elected to bring

11:09AM 9   claims only under Florida law.  As the Court knows --

11:09AM 10          THE COURT:  Pretty risky, it seems to me.

11:09AM 11          MR. RENARD:  -- in the Transocean case, Your Honor,

11:09AM 12  yesterday we filed a brief in which we attempted to point out to

11:09AM 13  the Court why there are viable state law claims under Florida

11:09AM 14  law.

11:09AM 15          THE COURT:  You filed a brief in what court?

11:09AM 16          MR. RENARD:  In the Transocean matter, Your Honor.

11:09AM 17          THE COURT:  In what court?  In Delaware?

11:09AM 18          MR. RENARD:  In the limitations matter in this Court.

11:09AM 19          THE COURT:  Wait, I thought you weren't a party to this

11:10AM 20  case any longer.

11:10AM 21          MR. RENARD:  Your Honor, it was an amicus curiae brief.

11:10AM 22  We had talked about that --

11:10AM 23          THE COURT:  But that was when you were still a party to

11:10AM 24  the case.  Now you say you're not a party, you don't want to be

11:10AM 25  here, but you want to participate.  I'm having a hard time

11:10AM 1   understanding that.

11:10AM 2           MR. RENARD:  Your Honor, we understood, at least from

11:10AM 3   the conference with the Court where we participated by phone --

11:10AM 4           THE COURT:  That was when you were still a party here in

11:10AM 5   these other cases, and the next day you dismiss your cases here

11:10AM 6   and say you don't want to be here.

11:10AM 7           MR. RENARD:  Your Honor, we were subject to a --

11:10AM 8           THE COURT:  So you want to be here or you don't want to

11:10AM 9   be here?

11:10AM 10          MR. RENARD:  Your Honor, we were subject to a

11:10AM 11  monitions-related injunction motion that we had to appear for

11:10AM 12  that.  True, we weren't a party to the --

11:10AM 13          THE COURT:  No, you were a party in the MDL at that

11:10AM 14  time.  You were a party --

11:10AM 15          MR. RENARD:  Yes, Your Honor.

11:10AM 16          THE COURT:  -- or your clients were parties.  You were

11:10AM 17  of record in the limitation, right?  I mean, in the MDL?

11:10AM 18          MR. RENARD:  Yes, Your Honor, with respect to

11:10AM 19  Halliburton.

11:10AM 20          THE COURT:  The next day, you dismiss the case and go

11:10AM 21  back to Delaware.

11:11AM 22          MR. RENARD:  With respect to Halliburton, yes,

11:11AM 23  Your Honor, and M-I.

11:11AM 24          THE COURT:  I've got to tell you, all of this

11:11AM 25  maneuvering is just troublesome to me.  It's troubling to me.  It

11:11AM 1    really is.

11:11AM 2            MR. RENARD:  Your Honor, if I may, because I believe

11:11AM 3    that this motion --

11:11AM 4            THE COURT:  What do you intend to do?  Let me ask you

11:11AM 5    this, because this is the fundamental thing, gets to the heart of

11:11AM 6    it, what do you intend to do when you get back to -- now, if the

11:11AM 7    judge in Delaware, the federal judge, sends it back here, which I

11:11AM 8    hope he does and which he should do, but if he doesn't, he

11:11AM 9    remands that case back to state court in Delaware, what do you

11:11AM 10   intend to do when you get to state court in Delaware in terms of

11:11AM 11   pursuing that case?

11:11AM 12           MR. RENARD:  Pursue it, Your Honor, as promptly as

11:11AM 13   possible.

11:11AM 14           THE COURT:  How are you going to pursue that?  You have

11:11AM 15   to take discovery?

11:11AM 16           MR. RENARD:  Your Honor --

11:11AM 17           THE COURT:  You're going to be taking discovery outside

11:11AM 18   of what we're doing here?  That's one of my major concerns.

11:11AM 19           MR. RENARD:  Your Honor, I'm not sure any

11:11AM 20   liability-related discovery will even be necessary in Delaware.

11:11AM 21   I think at that point --

11:11AM 22           THE COURT:  No discovery will be necessary in this case,

11:12AM 23   for you to prove your case?

11:12AM 24           MR. RENARD:  Your Honor, what I'm saying is I don't

11:12AM 25   foresee presently the need to take any additional discovery.

11:12AM 1  That's not -- I'm not attempting to waive my right to do so.

11:12AM 2          THE COURT:  Any additional discovery.  What discovery

11:12AM 3  have you taken so far?

11:12AM 4          MR. RENARD:  None, Your Honor, but there is certainly

11:12AM 5  discovery that has been taken that can be used with respect to

11:12AM 6  establishing liability against Halliburton and M-I.

11:12AM 7          THE COURT:  What discovery is that?

11:12AM 8          MR. RENARD:  Discovery, Your Honor, that has taken place

11:12AM 9  in this action.

11:12AM 10         THE COURT:  So you want to use the discovery that's been

11:12AM 11 taken by the parties in this case to go try your case in

11:12AM 12 Delaware?

11:12AM 13         MR. RENARD:  In part, Your Honor.  The Coast Guard

11:12AM 14 proceeding, in which the parties had an opportunity to

11:12AM 15 participate, and that testimony and that evidence could be used,

11:12AM 16 would be used against M-I and Halliburton.

11:12AM 17         Your Honor, I foresee that the trial in the

11:12AM 18 Delaware action would consist mostly -- the issues relating to

11:12AM 19 St. Joe's damages in that case.

11:12AM 20         THE COURT:  Is your client going to file a claim in the

11:12AM 21 limitation, claim or answer in the limitation?

11:13AM 22         MR. RENARD:  No, Your Honor.

11:13AM 23         THE COURT:  You may be barred, then, from your claim

11:13AM 24 against -- I'm not telling you how to practice law, but you're

11:13AM 25 making some very risky maneuvers there, it seems to me, on behalf

11:13AM 1   of your clients.

11:13AM 2           Once the monition period has ended, you may not be able

11:13AM 3   to file any claim against Transocean.  You understand that?

11:13AM 4           MR. RENARD:  Your Honor, we understand that.  We've also

11:13AM 5   elected, as the Court well knows and has pointed out, that we've

11:13AM 6   elected not to pursue claims either under the Florida Pollution

11:13AM 7   Act, which exists -- coexists with the Oil Pollution Act, OPA.

11:13AM 8   We've elected instead to pursue the state law claims, which we

11:13AM 9   believe, number one, are viable and, number two, provide the

11:13AM 10  greatest possible remedy.

11:13AM 11          Of course, OPA acknowledges the fact --

11:13AM 12          THE COURT:  What are the nature of your claims, your

11:13AM 13  state law claims?  They are not under some Florida so-called mini

11:13AM 14  OPA?

11:13AM 15          MR. RENARD:  No, Your Honor, they are common-law claims

11:13AM 16  that the State of Florida has recognized coexist with the, as the

11:14AM 17  Court puts it, the Florida version of OPA, the Oil Pollutant Act,

11:14AM 18  common-law claims for negligence, gross negligence, and strict

11:14AM 19  liability for --

11:14AM 20          THE COURT:  But what are you claiming?  Are you claiming

11:14AM 21  physical damage to your property?

11:14AM 22          MR. RENARD:  Your Honor, there was some physical damage.

11:14AM 23  The greatest part of our damages, quite clearly, are economic in

11:14AM 24  nature.  The State of Florida Supreme Court has recognized that

11:14AM 25  the economic loss rule does not apply in negligence cases, except

11:14AM 1  in a strict liability, products liability sense, or when there's

11:14AM 2  privy of contract.  In other words, there would be no economic

11:14AM 3  loss rule applicable to our common-law claims against Halliburton

11:14AM 4  and against M-I in the Delaware action.

11:14AM 5       Your Honor, if I may, and I believe -- I understand

11:14AM 6  the Court's observations, and I do accept what the Court has said

11:15AM 7  with respect to Your Honor's take on what has happened

11:15AM 8  procedurally.

11:15AM 9       But, Your Honor, most respectfully, as a matter of

11:15AM 10  law, we believe that the injunction that's been asked for cannot

11:15AM 11  and should not be granted.  If I may, if you look at the title of

11:15AM 12  the motions, motions in aid of this Court's jurisdiction over

11:15AM 13  St. Joe seeking an All Writs Act injunction.  More precisely,

11:15AM 14  it's purported to be in aid of this Court's jurisdiction over

11:15AM 15  St. Joe's claims against Halliburton and against M-I.

11:15AM 16       THE COURT:  Or over the MDL.

11:15AM 17       MR. RENARD:  I'm sorry, Your Honor?

11:15AM 18       THE COURT:  Or over this MDL.

11:15AM 19       MR. RENARD:  Yes, Your Honor, but that's not how they

11:15AM 20  styled -- that's not the approach that they are taking.  It has

11:15AM 21  to do with over St. Joe, in other words, and St. Joe's claims

11:15AM 22  against them.

11:15AM 23       Your Honor, as any Article III court has to do as a

11:15AM 24  threshold inquiry is to examine whether or not there is a basis

11:16AM 25  for the subject matter, the federal jurisdiction that's sought to

11:16AM 1   be protected.  In other words, Your Honor, is there subject

11:16AM 2   matter jurisdiction over St. Joe's claims against Halliburton and

11:16AM 3   M-I?

11:16AM 4           If I may, Your Honor, deal with the arguments that

11:16AM 5   were presented in the order in which they were made.  We would

11:16AM 6   respectfully submit, Your Honor, that we believe that there is no

11:16AM 7   subject matter jurisdiction here for two reasons.

11:16AM 8           The first of which is an obvious one, and that is

11:16AM 9   that those claims are presently pending in the district court of

11:16AM 10  Delaware, and not before this Court, albeit, and we'll get to the

11:16AM 11  dismissal issue, the use of Rule 41.

11:16AM 12          Number two, Your Honor, those claims, as I

11:16AM 13  mentioned, were first asserted in Delaware superior court.  They

11:16AM 14  were improperly removed, we say, and there is presently a remand

11:16AM 15  motion pending in the Delaware district court.

11:17AM 16          Against that, Your Honor, we have Halliburton's

11:17AM 17  argument that -- and by the way, as the Court well knows, this

11:17AM 18  argument was not made in their motion.  It was made in a reply.

11:17AM 19  Now, we have even new arguments made on top of what they put in

11:17AM 20  reply that we're hearing for the first time here at oral argument

11:17AM 21  today.  That is, the Court's PTO 11, somehow, even though it

11:17AM 22  didn't expressly do it, converted Halliburton's Rule 12(b)(6)

11:17AM 23  motion to a summary judgment motion.

11:17AM 24          Your Honor, that's not what PTO 11 says at all.  As

11:17AM 25  the Court well pointed out, the Fifth Circuit and virtually every

11:17AM 1    other circuit has recognized, it takes an overt act from a

11:17AM 2    district court in order to convert.

11:17AM 3                It's not a matter of circuit versus circuit,

11:17AM 4    Your Honor.  Rule 12(d) itself talks about this conversion

11:17AM 5    process, and it says, "If on a motion under Rule 12(b)(6) matters

11:17AM 6    outside the pleadings are presented to and not excluded by the

11:18AM 7    court, the motion must be treated as one for summary judgment."

11:18AM 8                Your Honor, the responses to Halliburton's motion

11:18AM 9    hadn't even been on file at the time that we exercised our right

11:18AM 10   under Rule 41(a)(1)(A) to dismiss voluntarily our cases, separate

11:18AM 11   cases against Halliburton and M-I, without prejudice.  There was

11:18AM 12   no conversion.  As a result of that, Your Honor, then there was

11:18AM 13   the free exercise of Rule 41(a), which I'll get to in a minute.

11:18AM 14               The second argument that we hear for the first time

11:18AM 15   is a citation to an unpublished Missouri MDL case that said,

11:18AM 16   well, because the Court there prohibited -- or allowed 12(b)(6)

11:18AM 17   motions to substitute in place of answers, the MDL thought that

11:18AM 18   it would bypass the express provisions of Rule 41 and deem that

11:19AM 19   the Rule 12(b)(6) motions apparently -- because counsel said that

11:19AM 20   this case was provided to us, I haven't seen it yet -- apparently

11:19AM 21   deemed that, in essence, an answer had been filed, or, in other

11:19AM 22   words, that Rule 41(a) would not be applied as written, and

11:19AM 23   therefore that the plaintiffs there could not dismiss.

11:19AM 24               Your Honor, that's not Fifth Circuit law.  I think

11:19AM 25   what we need to look at, Your Honor -- because I think this

11:19AM 1   really goes to whether or not there is a legal basis here and

11:19AM 2   legal jurisdiction here to issue an All Writs Act injunction.

11:19AM 3          The sole basis, when we get down to it, whether we

11:19AM 4   call it distasteful forum shopping or appropriate selection and

11:19AM 5   strategy in pursuing a client's rights, the sole basis for the

11:19AM 6   motions here is that St. Joe exercised its rights under

11:19AM 7   Rule 41(a) to voluntarily dismiss the prior actions, separate

11:20AM 8   actions, and file a new consolidated case in the superior court

11:20AM 9   of Delaware.

11:20AM 10         Your Honor, the Fifth Circuit has addressed this

11:20AM 11  issue and, frankly, is the strongest circuit among the circuits

11:20AM 12  in the United States in recognizing the inherent propriety of a

11:20AM 13  plaintiff utilizing this one-time right to dismiss a case without

11:20AM 14  prejudice when there has been no answer or motion for summary

11:20AM 15  judgment filed.

11:20AM 16         If I may, Your Honor, because these cases are

11:20AM 17  compelling in the language that they use, *American Cyanamid* in

11:20AM 18  1963, the Fifth Circuit said, "Rule 41(a)(1) is the shortest and

11:20AM 19  surest route to abort a complaint.  The plaintiff need do no more

11:20AM 20  than file a notice of dismissal.  The document itself closes the

11:20AM 21  file.  There is nothing the defendant can do to fan the ashes of

11:21AM 22  that action into life, and the court has no role to play.  This

11:21AM 23  is a matter of right running to the plaintiff and may not be

11:21AM 24  extinguished or circumvented by an adversary or a court.  He

11:21AM 25  suffers no impairment," he being the plaintiff who exercises this

11:21AM 1    right, "but this quick and ready tool may be used once and only

11:21AM 2    once," as we did here.

11:21AM 3            Your Honor, that was carried forward by the

11:21AM 4    Fifth Circuit in the *Carter* case in 1977.  The Court there said,

11:21AM 5    and this was the first time it used this language, "A plaintiff

11:21AM 6    has an absolute right to dismiss a lawsuit before the defendant

11:21AM 7    has filed an answer or motion for summary judgment.  Rule 41

11:21AM 8    sanctions no case-by-case analysis of the amount of effort

11:21AM 9    expended by the defendants."

11:21AM 10           In other words, this argument that there was effort

11:21AM 11   expended by the defendants, that the Court did, in fact, issue

11:22AM 12   some pretrial rulings that at the time were applicable to St. Joe

11:22AM 13   and all the other plaintiffs in the MDL, that's not a factor to

11:22AM 14   take into consideration in determining the propriety and

11:22AM 15   effectiveness of a Rule 41(a)(1) dismissal.

11:22AM 16           Your Honor, that was carried forward in the *Ford*

11:22AM 17   case in the Fifth Circuit in 1985, which said, "If a plaintiff

11:22AM 18   voluntarily dismisses an action without prejudice, it is

11:22AM 19   considered that the suit had never been filed," and referenced

11:22AM 20   other Fifth Circuit law.

11:22AM 21           This culminated, Your Honor, in the Fifth Circuit's

11:22AM 22   case and decision in *Harvey* in 2005 that cited all the decisions

11:22AM 23   that I just pointed out for the Court, but said the following:

11:22AM 24   "The plaintiff has an absolute right" --

11:22AM 25           THE COURT:  Is that the *Harvey Specialty* case?

11:22AM 1          MR. RENARD:  Your Honor?

11:22AM 2          THE COURT:  Which *Harvey* case is that?

11:22AM 3          MR. RENARD:  It's *Harvey Specialty v. Anson*, yes, 2005.

11:22AM 4          THE COURT:  That was my case.  I'm very familiar with

11:22AM 5 it.  It came out of this Court.

11:23AM 6          MR. RENARD:  Yes, Your Honor.

11:23AM 7          THE COURT:  That was another round of very distasteful

11:23AM 8 maneuvering; but, you're right, they prevailed.

11:23AM 9          MR. RENARD:  Your Honor, and, in fact, the Fifth Circuit

11:23AM 10 addressed that very point.

11:23AM 11          THE COURT:  I'm very familiar with that case.  I know

11:23AM 12 exactly what happened.  There was a motion for an injunction

11:23AM 13 filed in state court, and the case was removed to my court.  I

11:23AM 14 had a hearing on a motion for preliminary injunction and decided

11:23AM 15 that, on the venue issue, that they were in the wrong venue here.

11:23AM 16          Instead of dismissing the case for improper venue,

11:23AM 17 which I could have done -- this is a typical case of no good deed

11:23AM 18 goes unpunished -- I thought I was doing the plaintiff a favor by

11:23AM 19 simply transferring that case to the proper venue in the Southern

11:23AM 20 District of Texas, to save them a refiling fee and all of that.

11:24AM 21 When they got to the Southern District of Texas, they used

11:24AM 22 Rule 41 to dismiss the case without prejudice, and then there was

11:24AM 23 a question of whether they should be enjoined from all of that

11:24AM 24 maneuvering.

11:24AM 25          I've got to tell you, all of this stuff is very

11:24AM 1    distasteful to me.  As I said, this is the kind of stuff -- you

11:24AM 2    may be entirely right legally, but this is the kind of stuff that

11:24AM 3    makes the public go crazy.  It drives the public crazy.

11:24AM 4         They really ought to fix this rule, I think.  I

11:24AM 5    think this rule causes abuse of the legal process, and that's

11:24AM 6    what this is.  But, anyway, go ahead.

11:24AM 7         MR. RENARD:  Your Honor, if I may distinguish that,

11:24AM 8    because in *Harvey*, the Court did mention, as Your Honor pointed

11:24AM 9    out, that --

11:24AM 10        THE COURT:  I had had a hearing, an evidentiary hearing,

11:24AM 11   in effect, a trial that went all day, made a ruling, transferred

11:24AM 12   the case on venue, and they get over there and they dismiss it.

11:24AM 13        They go back to a different state court.  This

11:24AM 14   time, they are smart enough to add a nondiverse defendant so it

11:25AM 15   couldn't be removed.  Therefore, some other court had to go

11:25AM 16   through the whole thing again of the injunctive relief issue and

11:25AM 17   everything for hearing and all of that.

11:25AM 18        Complete waste of time, money, resources, and

11:25AM 19   everything for courts, for lawyers, for the clients.

11:25AM 20        That's what troubles me about this case.  You are

11:25AM 21   wasting money for your client, for these folks' clients, for the

11:25AM 22   courts.  How many different courts and judges now are going on

11:25AM 23   this merry-go-round just to decide where this case is going to

11:25AM 24   end up.  It gets to be absurd at some point.

11:25AM 25        MR. RENARD:  Your Honor, if I could address that.

11:25AM 1     THE COURT:  Go ahead.

11:25AM 2     MR. RENARD:  You're correct, the Fifth Circuit in *Harvey*

11:25AM 3 did mention the fact that frequently dismissals and refilings in

11:25AM 4 state courts to avoid removals is labeled forum shopping by many

11:25AM 5 litigants and by some courts, but that doesn't mean it's improper

11:25AM 6 or not allowed by the rule.

11:25AM 7     THE COURT:  I said it's distasteful.  I didn't say it

11:26AM 8 was necessarily -- you may be right.  Rules sometimes can be

11:26AM 9 abused.

11:26AM 10     MR. RENARD:  There is a big difference here, Your Honor,

11:26AM 11 and that is, the original filings and this second filing should

11:26AM 12 never have been removed.

11:26AM 13     THE COURT:  Well, that's your position; and, maybe

11:26AM 14 you're right, but you could file a motion to remand here, but you

11:26AM 15 didn't do that.

11:26AM 16     MR. RENARD:  But, Your Honor, the Delaware superior

11:26AM 17 court --

11:26AM 18     THE COURT:  You filed motions to remand in Delaware

11:26AM 19 originally.

11:26AM 20     MR. RENARD:  Yes, Your Honor, and we had a ruling with

11:26AM 21 respect to --

11:26AM 22     THE COURT:  You were successful on one, you weren't

11:26AM 23 successful on two.  You could file a motion to remand.  It

11:26AM 24 doesn't --

11:26AM 25     MR. RENARD:  Your Honor --

11:26AM 1      THE COURT:  It doesn't lead necessarily to you having to

11:26AM 2  do what you did, all this maneuvering.

11:26AM 3      MR. RENARD:  Your Honor, if I could, I find it

11:26AM 4  distasteful that in light of a ruling that will be a published

11:26AM 5  decision out of the district of Delaware that addressed this OPA

11:27AM 6  removal ground, this Outer Continental Shelf Lands Act removal

11:27AM 7  ground rejected the identical arguments.

11:27AM 8      I find it distasteful that when we would bring the

11:27AM 9  suit, the consolidated action against Halliburton and M-I in

11:27AM 10 Delaware superior court, that they would remove on the very

11:27AM 11 grounds that the district of Delaware addressed the identical

11:27AM 12 issues and found it to be an improper removal and that the court

11:27AM 13 did not have jurisdiction.

11:27AM 14      Now, that's our take on it.  I believe that's -- to

11:27AM 15 hope, again, that the district of Delaware would do something

11:27AM 16 different than what it just did, and then come before this Court

11:27AM 17 that now, respectfully, Your Honor, does not have the dispute now

11:27AM 18 because we did exercise our right under Rule 41(a), and come to

11:27AM 19 this Court and say that there is something improper with having

11:27AM 20 gone back to a state court, which we believe the district of

11:27AM 21 Delaware has essentially said that's where these kinds of claims

11:27AM 22 belong.

11:27AM 23     THE COURT:  I understand all of that, but you could have

11:28AM 24 simply filed the motion to remand here, and if you're right,

11:28AM 25 maybe you would have ended up back there.

11:28AM 1        Anyway, move on with your argument because I've

11:28AM 2    said what I can say about how I feel about all of this, but

11:28AM 3    that's not necessarily my legal ruling.

11:28AM 4        MR. RENARD:  Your Honor, again, we appreciate the

11:28AM 5    Court's comments and understand the Court's comments in that

11:28AM 6    respect.

11:28AM 7        Against the exercise of Rule 41(a) and everything

11:28AM 8    the Fifth Circuit has said about that, and addressing forum

11:28AM 9    shopping and addressing arguments, oh, look how much work was

11:28AM 10   done in the case before that absolute right was exercised, the

11:28AM 11   defendants have cited two cases to this Court.

11:28AM 12       In their opening memoranda, they essentially cite

11:28AM 13   one case that in any way deals with this issue.  It's the *Newby*,

11:28AM 14   N-E-W-B-Y, case out of the Fifth Circuit, 2002, which these

11:28AM 15   parties say applied in circumstances similar to this case.

11:29AM 16       Your Honor, as the Court probably recalls, *Newby*

11:29AM 17   involved lawyers, plaintiffs' lawyers who filed numerous state

11:29AM 18   court cases, albeit on behalf of clients different than clients

11:29AM 19   represented in the MDL proceeding, seeking ex parte -- seeking

11:29AM 20   and obtaining ex parte temporary restraining orders without

11:29AM 21   giving notice to the very lawyers -- the very parties that these

11:29AM 22   lawyers were dealing with on a day-to-day basis.

11:29AM 23       That's a case, that was the sole case in their

11:29AM 24   motions, that they said warranted the relief that they seek here,

11:29AM 25   saying it was similar circumstances.

11:29AM  1          Your Honor, there, the Court issued an injunction

11:29AM  2   against future state court filings because of, quote, rude

11:29AM  3   refusals to afford opposing counsel the common courtesy of

11:29AM  4   notice, noting that there were duplicative requests for ex parte

11:29AM  5   temporary restraining orders without notice to lawyers already

11:29AM  6   across the counsel table from the law firm here and engaged in

11:30AM  7   the prosecution and defense of virtually identical claims in

11:30AM  8   federal suits.  That was the sole authority that they cited,

11:30AM  9   Your Honor, in terms of cases.  That is nowhere near, most

11:30AM 10   respectfully, the facts of this case.

11:30AM 11          Then, and counsel mentioned it for M-I in his

11:30AM 12   presentation to the Court, both of them, in their replies, which

11:30AM 13   were filed just a few hours after we put in our response, which

11:30AM 14   happened to be longer than their initial motions and cited a

11:30AM 15   wealth of authority that they hadn't cited, cite *Qureshi*, 2010

11:30AM 16   case out of the Fifth Circuit, saying, Your Honor, that was an

11:30AM 17   analogous case.  That's the verbiage that was used by the parties

11:30AM 18   here.

11:30AM 19          *Qureshi*, Your Honor, involved a --

11:30AM 20      THE COURT:  Well, I'm familiar with the case.  I think

11:30AM 21   that case was cited for the proposition that the Court would have

11:30AM 22   continuing jurisdiction over collateral issues, which could

11:30AM 23   include a situation where someone has exercised its right to

11:31AM 24   voluntarily dismiss a case under Rule 41(a), but is otherwise

11:31AM 25   engaging in what's called persistent abuse of the judicial

11:31AM 1    process.  And that the Court has -- there are many instances

11:31AM 2    where cases are dismissed and we have continuing or collateral

11:31AM 3    jurisdiction, for example, to impose sanctions, to award

11:31AM 4    attorney's fees, things like that.  That's very common.

11:31AM 5            The Court in *Qureshi*, seems to me, was analogizing

11:31AM 6    this situation to that, to those kinds of cases, and that's what

11:31AM 7    it stands for.

11:31AM 8            MR. RENARD:  Yes, Your Honor.  Where there are -- in

11:31AM 9    that case there were five lawsuits that were dismissed without

11:31AM 10   prejudice.  Now, I'm not sure how that happened under Rule 41(a)

11:31AM 11   because you're allowed only a single exercise of that right.  And

11:31AM 12   upon the fifth case that was dismissed with prejudice, the Court

11:32AM 13   said, as so often happens, as Your Honor noted, in prisoners

11:32AM 14   cases, in *pro se* plaintiffs' cases where there are abusive

11:32AM 15   sequential filings, that the Court will say, hey, you need to

11:32AM 16   come to me next time before you file because you're abusing the

11:32AM 17   system.

11:32AM 18           Your Honor, that was also called an analogous case

11:32AM 19   by the plaintiffs because they believe that that was very much

11:32AM 20   akin to the conduct that they cite here with all the *ad hominem*

11:32AM 21   labels that they give it, Your Honor, that, as I believe we've

11:32AM 22   established through this Fifth Circuit precedent, is not only an

11:32AM 23   absolute right, but it's an unconditional right, at least as

11:32AM 24   presently written -- I understand the Court's concerns in that

11:32AM 25   regard -- as presently written, an absolute right, the exercise

11:32AM 1 of which is not to be met by any sanction or reprimand by a court
11:32AM 2 because it's as if the case never existed.
11:32AM 3          Your Honor, there was a fix to this problem, and
11:32AM 4 the Fifth Circuit noted that in *Harvey*.  These are very good
11:33AM 5 lawyers representing very sophisticated clients.  The
11:33AM 6 Fifth Circuit said, if you want to prevent the application of the
11:33AM 7 automatic dismissal right under Rule 41(a)(1), you may do so by
11:33AM 8 the filing of an answer.
11:33AM 9          Now, as I understand the order that counsel
11:33AM 10 referenced to the Court, although answers were not necessary upon
11:33AM 11 the filing of Rule 12(b)(6) motions, they weren't prohibited
11:33AM 12 either.
11:33AM 13          Your Honor, this was a dismissal that was
11:33AM 14 appropriately taken.  The Fifth Circuit has recognized in *Harvey*
11:33AM 15 that it's often used in order to go to a state court and prevent
11:33AM 16 removal.
11:33AM 17          Your Honor, I respectfully submit that there is
11:33AM 18 certainly nothing wrong with choosing claims and choosing forums
11:33AM 19 to ensure that we have a state court adjudication and that your
11:34AM 20 client's issues are best protected.
11:34AM 21          One might question the wisdom of that strategy,
11:34AM 22 whether or not other claims should or could be brought, whether
11:34AM 23 or not other forums could or should have been selected,
11:34AM 24 Your Honor, but we chose that strategy in our discharge of our
11:34AM 25 professional responsibilities, and given the fact, Your Honor,

11:34AM  1   that we believed there was no underlying federal court

11:34AM  2   jurisdiction to protect.

11:34AM  3            In any event, that question is appropriately before

11:34AM  4   the Delaware district court, and not before this Court, that the

11:34AM  5   issuance of an All Writs Act injunction, which does require an

11:34AM  6   underlying federal jurisdictional basis in order to issue, should

11:34AM  7   not issue.

11:34AM  8            The conduct in question was conduct that the

11:34AM  9   Fifth Circuit has acknowledged not once but many times over is

11:35AM 10   entirely appropriate and should not be met with the kind of

11:35AM 11   sanctions or the kind of equitable extraordinary relief that

11:35AM 12   Halliburton and M-I request in this case, Your Honor.

11:35AM 13            I will say this, as well.  Two days after filing

11:35AM 14   their -- what clearly were intended to be emergency motions for

11:35AM 15   All Writs Act relief, two days later they filed in the district

11:35AM 16   court a motion, Your Honor, to transfer that --

11:35AM 17            THE COURT:  Which district court?

11:35AM 18            MR. RENARD:  I'm sorry, Your Honor.  The district court

11:35AM 19   of Delaware in the removed case, the removed consolidated case, a

11:35AM 20   motion to transfer that case to this Court, or, in the

11:35AM 21   alternative, to stay any further proceedings in that case pending

11:35AM 22   the MDL panel's deposition of a final transfer order.  That's

11:36AM 23   subject to briefed, Your Honor, in the next couple of weeks.

11:36AM 24            I mention that because even in the cases that are

11:36AM 25   cited by Halliburton and M-I, courts look at whether there is

11:36AM 1   other relief other than All Writs Act injunctions such as those

11:36AM 2   sought here, where they can obtain the very relief that they are

11:36AM 3   asking for.

11:36AM 4              Your Honor, I'm not saying that the Delaware court

11:36AM 5   should -- obviously, we believe that it should not -- issue the

11:36AM 6   relief that they sought in Delaware district court two days after

11:36AM 7   filing these emergency motions, but that's certainly an option

11:36AM 8   that they believe they had and are, in fact, pursuing,

11:36AM 9   simultaneously with this motion that we're all gathered around

11:36AM 10  today arguing.

11:36AM 11             So they are trying to go in two tracts, the

11:36AM 12  Delaware district court and the Eastern District of Louisiana in

11:36AM 13  this MDL proceeding before Your Honor, seeking the identical

11:37AM 14  relief.

11:37AM 15             Your Honor, I don't believe that there is any

11:37AM 16  prejudice here.  They are obviously pursuing the same relief in

11:37AM 17  the court that has St. Joe's claims against Halliburton and M-I,

11:37AM 18  and the Court that, at least presently, has before it a motion to

11:37AM 19  remand that will be briefed and resolved in due course.

11:37AM 20             Your Honor, given the fact that Judge Stark's

11:37AM 21  opinion, which might necessarily not be binding on Judge Sleet,

11:37AM 22  the other district of Delaware court, is certainly not binding on

11:37AM 23  Your Honor, but, Your Honor, when we say the threshold inquiry

11:37AM 24  here is whether there is a federal court jurisdiction to protect,

11:37AM 25  they haven't even attempted to demonstrate why this Court has

11:37AM 1    ultimately subject matter jurisdiction over these claims.

11:37AM 2             Against that, we have Judge Stark's very

11:37AM 3    comprehensive opinion that, Your Honor, addresses the same issues

11:38AM 4    upon which they removed the consolidated Delaware superior court

11:38AM 5    case.  If nothing else, Your Honor, that opinion at least

11:38AM 6    presumptively establishes the absence of federal court

11:38AM 7    jurisdiction.  Even though it's not our burden to disprove

11:38AM 8    federal court jurisdiction, it's their burden to establish it.

11:38AM 9    We have the Judge Stark opinion out there which addresses the

11:38AM 10   identical issues.

11:38AM 11            Against that, Your Honor, and against the fact that

11:38AM 12   Rule 41(a) is absolute in the words of the Fifth Circuit,

11:38AM 13   Your Honor, the relief that's being requested here is

11:38AM 14   unprecedented.  The reason it's unprecedented is because there is

11:38AM 15   no legal basis for it.

11:38AM 16            Whatever the Court's observations may be with

11:38AM 17   respect to the strategy being employed here, there is no legal

11:38AM 18   basis for an All Writs Act extraordinary injunction requiring us

11:39AM 19   to litigate our claims against Halliburton and M-I, in their

11:39AM 20   words, to prohibit us from doing so in any forum, that would

11:39AM 21   include the district court of Delaware and the superior court of

11:39AM 22   Delaware, in any forum other than this Court in which we

11:39AM 23   dismissed our claims, appropriately so.

11:39AM 24            Your Honor, we would request that the relief be

11:39AM 25   denied.

11:39AM 1          THE COURT:  Have you sued BP?

11:39AM 2          MR. RENARD:  No, Your Honor, we have not.

11:39AM 3          THE COURT:  Interesting.

11:39AM 4          MR. RENARD:  Thank you.

11:39AM 5          THE COURT:  I guess I could ask you why, but you don't

11:39AM 6 have to answer that.  There are some strange things going on in

11:39AM 7 this case, I've got to tell you, Mr. Renard.

11:39AM 8          MR. RENARD:  Your Honor, frankly --

11:39AM 9          THE COURT:  You haven't sued the company that is named

11:39AM 10 as the responsible party for this entire oil spill.

11:39AM 11          MR. RENARD:  Your Honor, at present, no decision has

11:40AM 12 been made to pursue claims other than, obviously, the three

11:40AM 13 parties -- I should say three groups of parties, because

11:40AM 14 Transocean is actually four -- other than the three groups of

11:40AM 15 defendants that have already been sued.  Thank you.

11:40AM 16          THE COURT:  All right.

11:40AM 17          MR. YORK:  Your Honor, if I may.

11:40AM 18          THE COURT:  Yes, Mr. York.

11:40AM 19          MR. YORK:  I assure you I will not take much of the

11:40AM 20 Court's time.

11:40AM 21          I would like to rise to speak to the fact that I

11:40AM 22 believe it is the height of disingenuity for the St. Joe Company

11:40AM 23 to criticize Halliburton for attempting to fight on two tracks,

11:40AM 24 when those two tracks have been created by the St. Joe Company's

11:40AM 25 actions.

11:40AM 1          I would also note for the Court that it appears

11:40AM 2   that much of what St. Joe argues is based upon an altered sense

11:40AM 3   of reality because when they stand before this Court and say that

11:40AM 4   Halliburton is attempting to have them litigate their claim

11:40AM 5   against Halliburton in this Court and cite to the injunctive

11:40AM 6   motion that we filed, I don't know what motion they are talking

11:40AM 7   about because the title of our motion was that we were seeking

11:41AM 8   injunctive relief in aid of this Court's pretrial jurisdiction.

11:41AM 9          The relief that we requested in that motion was

11:41AM 10  nothing more than that HESI respectfully prayed that this Court

11:41AM 11  issue an injunction against St. Joe pursuing pretrial proceedings

11:41AM 12  and/or discovery against HESI in any forum other than MDL 2179.

11:41AM 13         Halliburton's position is not and has never been

11:41AM 14  that the ultimate resolution of this claim is subject to this

11:41AM 15  Court's jurisdiction under the MDL process, because the MDL

11:41AM 16  process makes clear itself that the consolidation is for pretrial

11:41AM 17  proceedings, so that, we believe, is simply a misrepresentation.

11:41AM 18         Regarding the new case, again, I want to be clear,

11:41AM 19  I thought I was clear in my initial argument, that I made clear

11:41AM 20  to the Court that we had not cited that opinion in our briefing,

11:41AM 21  but that I had copies, and I do.  I did not represent that those

11:42AM 22  copies had already been provided to counsel.

11:42AM 23         Finally, the line of Fifth Circuit cases that

11:42AM 24  St. Joe cites, not a single one of those cases is in the MDL

11:42AM 25  context.  St. Joe Company completely ignores the *Exxon* opinion

11:42AM  1  where the Fifth Circuit's language says, with regard to this

11:42AM  2  unfettered right of a plaintiff to dismiss, that a unilateral

11:42AM  3  motion to dismiss an action is permissible only before the

11:42AM  4  defendant has filed an answer or motion for summary judgment.

11:42AM  5  The theory underlying this limitation is that after the defendant

11:42AM  6  has become actively engaged in the defense of a suit, he is

11:42AM  7  entitled to have the case adjudicated, and it cannot, therefore,

11:42AM  8  be terminated without either his consent, permission of the

11:42AM  9  court, or a dismissal with prejudice that assures him against the

11:42AM 10  renewal of hostilities.

11:43AM 11       If this Court needs any evidence of the fact that

11:43AM 12  the MDL nature of this case makes it a different animal, it need

11:43AM 13  only refer to St. Joe's argument in which St. Joe says, we

11:43AM 14  wouldn't need discovery in the Delaware court because we're going

11:43AM 15  to rely on the discovery that's happening in the MDL proceeding.

11:43AM 16  We don't want to be in the MDL proceeding, but we want to

11:43AM 17  preserve our right to have a voice in the decisions of this Court

11:43AM 18  on 12(b)(6) motions by filing amicus briefs.

11:43AM 19       This is nothing more than St. Joe wanting to have

11:43AM 20  its cake and eat it, too.  It is directly in violation of the

11:43AM 21  principles that underlie an MDL proceeding, it is a direct

11:43AM 22  affront to this Court's MDL jurisdiction, and Halliburton asks

11:43AM 23  this Court to act accordingly.

11:43AM 24       THE COURT:  Let me ask you this.  Mr. Renard said your

11:43AM 25  client has filed a 1404 transfer motion also in the district

11:44AM 1     court in Delaware.

11:44AM 2          MR. YORK:  What we did, Your Honor, was we filed a

11:44AM 3     motion to stay pending the JPML decision, which reflected the

11:44AM 4     motion that we had filed in the original Delaware removal; but,

11:44AM 5     in addition to that, we did ask for transfer on the basis that we

11:44AM 6     wanted to let the Delaware court know the procedure of what was

11:44AM 7     happening.

11:44AM 8          I don't have that motion sitting here in front of

11:44AM 9     me, and I don't remember whether it was specifically based on

11:44AM 10    1404 or whether we were simply asking as an equitable issue that

11:44AM 11    based on the fact that it had already been transferred once by

11:44AM 12    the JPML, that it should be transferred for pretrial proceedings

11:44AM 13    here again.

11:44AM 14         THE COURT:  That would be similar to what Judge Ellison

11:44AM 15    did in Houston when he transferred the limitation here.

11:44AM 16         MR. YORK:  That's correct.

11:44AM 17         THE COURT:  My thought -- I'm thinking out loud on this

11:44AM 18    thing -- what we have, the situation now, it's been removed to

11:45AM 19    federal court in Delaware.  I was going to say one of two things

11:45AM 20    would happen, but, actually, now, one of three things could

11:45AM 21    happen.  Judge Sleet?

11:45AM 22         MR. YORK:  Judge Sleet.

11:45AM 23         THE COURT:  Judge Sleet could decide to do just what he

11:45AM 24    did last time, which is just do nothing and wait -- I guess maybe

11:45AM 25    four things could happen -- do nothing and wait for the MDL panel

11:45AM  1   to act.

11:45AM  2            MR. YORK:  Which, by the way, not to interrupt,

11:45AM  3   Your Honor, but I do want to note for the Court that, unlike any

11:45AM  4   of the other cases upon which we have filed a request for a

11:45AM  5   conditional transfer order, I believe it was a matter of 48 hours

11:45AM  6   within which we filed the request for transfer that the JPML

11:45AM  7   included this case on its CTO, which we think is a pretty clear

11:45AM  8   indication of what the JPML thinks.

11:45AM  9            THE COURT:  So that's one option.

11:45AM 10            The other option would be that -- so, getting back

11:45AM 11   to my original thoughts, either the case will be ultimately

11:46AM 12   transferred back here by the Multidistrict Litigation Panel, or

11:46AM 13   the other alternatives are that the case gets remanded by the

11:46AM 14   Delaware district court to Delaware state court.  Or the third

11:46AM 15   option is that -- now, you've created a third option is that the

11:46AM 16   Delaware district judge could exercise discretion to transfer it

11:46AM 17   here under 1404.

11:46AM 18            If two of those three things happen, they are right

11:46AM 19   back here, right?

11:46AM 20            MR. YORK:  That's correct.

11:46AM 21            THE COURT:  It's only if the other thing happens where

11:46AM 22   Judge Sleet decides to act on it before the MDL panel transfers

11:46AM 23   it here, and when he decides to act, he acts to remand.

11:46AM 24            MR. YORK:  If he were to act to remand, the Court will

11:46AM 25   note that in our original filing we included not only the

11:46AM  1   All Writs Act, but the Anti-Suit Injunction Act, as well.

11:47AM  2          THE COURT:  That's where I'm going here.  It seems to me

11:47AM  3   that perhaps right now it's premature for me to make any ruling

11:47AM  4   on this because there is nothing that could interfere with what

11:47AM  5   we're doing unless and until a case gets remanded to Delaware

11:47AM  6   court, right?

11:47AM  7          MR. YORK:  Left of its own devices, I believe that -- I

11:47AM  8   project that St. Joe will file an opposition to the transfer,

11:47AM  9   will brief that transfer.

11:47AM 10          THE COURT:  I'm sure they will, and you all are going to

11:47AM 11   litigate what you've litigated before.  They now have some new

11:47AM 12   ammunition to use against you, that being Judge Stark's opinion,

11:47AM 13   which may make a difference, may not, I don't know.

11:47AM 14          But my point is, it seems to me that perhaps the

11:47AM 15   best course for me to take at this time is to not act on this and

11:47AM 16   wait to see if the case is transferred here or remanded to state

11:48AM 17   court.  If it's remanded to state court, that's when, really,

11:48AM 18   your concerns kick in.

11:48AM 19          There would be nothing to prevent me, if I

11:48AM 20   decide -- I'm not ruling right now, but if I were to decide that

11:48AM 21   your arguments are valid and your concerns are valid, and that I

11:48AM 22   needed to take some action, it seems to me that would be the

11:48AM 23   appropriate time for you to reraise those issues, that the case

11:48AM 24   is back in state court and something is happening there or about

11:48AM 25   to happen there that in some way is going to interfere with what

11:48AM  1   we're doing.  It seems like I would certainly have the ability to

11:48AM  2   consider those arguments and those issues at that time.

11:48AM  3           So it seems to me there is no emergency here for me

11:48AM  4   to act on today.  That's where I'm going with this.

11:48AM  5       MR. YORK:  Your Honor, obviously our only concern is one

11:48AM  6   that the Court has already put its finger on, which is, as the

11:48AM  7   Court is aware, it's not as if we don't already have enough to

11:49AM  8   do.

11:49AM  9       THE COURT:  Oh, I understand that.

11:49AM 10       MR. YORK:  There is so much going on.  Opening up

11:49AM 11   another front in which we will likely have to file a response to

11:49AM 12   their new motion to remand, we will likely have to file yet

11:49AM 13   another Rule 12(b) motion to their current Delaware state court

11:49AM 14   claim, it's -- the thing that is so frustrating from our side is

11:49AM 15   that we have done this.

11:49AM 16       THE COURT:  I understand.

11:49AM 17       MR. YORK:  We'd achieved the rulings that achieved

11:49AM 18   judicial economy and efficiency.  With the JPML's full authority,

11:49AM 19   the case was transferred here, and it just -- it's frustrating,

11:49AM 20   as I know it is for the Court.  It's frustrating to us that we

11:49AM 21   will have to fight on another front that has already been fought.

11:49AM 22       THE COURT:  I understand.

11:49AM 23           Does anybody want to say anything else on this?

11:49AM 24       MR. HAYCRAFT:  Your Honor, I take the podium,

11:49AM 25   Don Haycraft for BP, simply to observe and express that St. Joe

11:50AM 1   Company has not presented a claim to the responsible party, to

11:50AM 2   one of the responsible parties that's been named by the

11:50AM 3   United States.  I did check and learn that the St. Joe Company

11:50AM 4   has not made a claim either on BP or on the Gulf Coast Claims

11:50AM 5   Facility.

11:50AM 6           THE COURT:  They have not made a claim with Mr. Feinberg

11:50AM 7   either?

11:50AM 8           MR. HAYCRAFT:  No, that's correct.

11:50AM 9           THE COURT:  Very interesting.

11:50AM 10          MR. ROY:  Your Honor --

11:50AM 11          THE COURT:  Yes.

11:50AM 12          MR. ROY:  -- Jim Roy on behalf of the PSC.

11:50AM 13          Very briefly, the PSC does support the position of

11:50AM 14  M-I and Halliburton in this matter.

11:50AM 15          THE COURT:  This is what I'm going to do for today.  I'm

11:50AM 16  going to take this matter under advisement.  I'm not going to

11:50AM 17  issue a ruling today.

11:50AM 18          I've told you all what my current thinking is, that

11:50AM 19  perhaps it's wise for me not to take any action until I see what

11:51AM 20  happens up in Delaware because it could be that the case either

11:51AM 21  gets transferred back here pursuant to the transfer order from

11:51AM 22  the Multidistrict Litigation Panel, or perhaps Judge Sleet will

11:51AM 23  take up the motion to transfer and transfer it here, which is

11:51AM 24  possible.  It's been done before in the context of this same MDL.

11:51AM 25          Judge Ellison, for example, in Houston, did that,

11:51AM  1   decided that was the wise thing to do with the Transocean

11:51AM  2   limitation action, which he transferred here separate from the

11:51AM  3   MDL.  In other words, it did not come here as a tag-along from

11:51AM  4   the MDL.  I don't know if that's what's going to happen here or

11:51AM  5   not, but that's a possibility is all I'm pointing out.

11:51AM  6           If either of those two things happen, then we're

11:51AM  7   right back where we were, and obviously St. Joe would have the

11:51AM  8   ability to file whatever motions, motion to remand or otherwise,

11:52AM  9   here in this Court.  If the court in Delaware instead decides to

11:52AM 10   act on the motion to remand, then we can take this matter up

11:52AM 11   again.

11:52AM 12           I'm not going to deny your motions today.  I think

11:52AM 13   it doesn't matter if I deny them; but, for the time being, I

11:52AM 14   think I'm just going to hold them in abeyance.  I'm going to take

11:52AM 15   them under advisement but not act on it, okay.

11:52AM 16           MR. TANNER:  Your Honor, may I make one point?

11:52AM 17           THE COURT:  Yes.

11:52AM 18           MR. TANNER:  Hugh Tanner for M-I.

11:52AM 19           I would encourage the Court -- and we would

11:52AM 20   respect, of course, whatever decision is made.  I would encourage

11:52AM 21   the Court to think about its powers under the All Writs Act and

11:52AM 22   consider putting in place an injunction, even if the Court is not

11:53AM 23   inclined to do so, with respect to St. Joe until these other

11:53AM 24   actions have a chance to come to maturity, consider an order in

11:53AM 25   this Court that would require the permission of the Court before

11:53AM  1    any further voluntary dismissals.

11:53AM  2                    It is our concern, and I think, perhaps, a concern

11:53AM  3    of many on both sides of the V in this case, that this becomes a

11:53AM  4    pattern by which others might try to exit this very orderly and

11:53AM  5    well-run MDL.

11:53AM  6                    So we would encourage the Court to consider, as was

11:53AM  7    done in the *Newby* case, in the *Enron* MDL and others, to require

11:53AM  8    the permission of the Court before any voluntary dismissals, and

11:53AM  9    that that would be one that would be in aid of its jurisdiction

11:53AM 10    given to it vis-a-vis the JPML's formation of the MDL, that

11:53AM 11    perhaps the Court may not want to delay in that regard.

11:53AM 12                THE COURT:  Does anybody need to say anything else?

11:53AM 13    All right.  Have a good day, Gentlemen.

11:54AM 14                VOICES:  Thank you, Judge.

        15                (WHEREUPON, at 11:54 a.m.  the proceedings were

        16    concluded.)

        17                                *    *    *

        18

        19

        20

        21

        22

        23

        24

        25

REPORTER'S CERTIFICATE

I, Cathy Pepper, Certified Realtime Reporter, Registered
Merit Reporter, Registered Professional Reporter, Certified Court
Reporter of the State of Louisiana, Official Court Reporter for
the United States District Court, Eastern District of Louisiana,
do hereby certify that the foregoing is a true and correct
transcript, to the best of my ability and understanding, from the
record of the proceedings in the above-entitled and numbered
matter.


                              *s/Cathy Pepper*_____

                              Cathy Pepper, CRR, RMR, CCR

                              Certified Realtime Reporter

                              Official Court Reporter

                              United States District Court

# 1

**1** [5] - 14:13, 15:5,
  15:20, 18:20
**10-MD-2179** [1] - 1:6
**1000** [1] - 2:20
**10:30** [1] - 1:7
**10th** [1] - 25:1
**11** [8] - 14:12, 15:5,
  15:19, 15:20, 16:22,
  18:20, 35:21, 35:24
**11:54** [1] - 59:15
**12** [5] - 15:12, 17:7,
  17:11, 19:1, 19:2
**12(b** [18] - 12:3, 14:14,
  14:16, 14:22, 15:21,
  16:8, 16:17, 16:22,
  16:23, 17:1, 17:3,
  17:5, 18:17, 18:23,
  19:5, 19:11, 19:18,
  56:13
**12(b)(6** [7] - 18:1,
  35:22, 36:5, 36:16,
  36:19, 46:11, 52:18
**12(d** [1] - 36:4
**1200** [1] - 24:14
**1331** [1] - 2:15
**1404** [3] - 52:25,
  53:10, 54:17
**14th** [1] - 7:21
**16** [1] - 15:7
**1665** [1] - 2:15
**1717** [1] - 2:5
**1799** [1] - 5:24
**1807** [1] - 5:25
**1963** [1] - 37:18
**1977** [1] - 38:4
**1985** [1] - 38:17
**1995** [1] - 17:17

# 2

**20** [1] - 1:5
**2002** [1] - 43:14
**2005** [2] - 38:22, 39:3
**2010** [7] - 1:5, 5:11,
  6:19, 12:16, 15:3,
  15:7, 44:15
**2011** [2] - 1:7, 5:2
**20th** [1] - 5:11
**21** [1] - 4:6
**2179** [2] - 5:10, 51:12
**26** [1] - 4:7
**27th** [4] - 7:24, 8:16,
  10:20, 12:7
**28TH** [1] - 2:9
**29th** [1] - 10:21
**2:11-CV-00259** [1] -

**1:13**
**2:11-CV-258** [1] - 1:11

# 3

**300** [1] - 24:13
**3668** [1] - 1:21

# 4

**4000** [1] - 2:20
**41** [21] - 7:25, 11:14,
  11:21, 11:24, 12:12,
  13:1, 13:4, 13:14,
  14:1, 14:5, 14:18,
  14:25, 16:5, 18:6,
  19:24, 20:1, 22:14,
  35:11, 36:18, 38:7,
  39:22
**41's** [1] - 11:23
**41(a** [8] - 36:13, 36:22,
  37:7, 42:18, 43:7,
  44:24, 45:10, 49:12
**41(a)(1** [3] - 37:18,
  38:15, 46:7
**41(a)(1)(A** [1] - 36:10
**41(a)(1)(A)(i** [1] - 13:7
**48** [1] - 54:5
**4800** [1] - 2:5

# 5

**50** [1] - 4:8
**500** [1] - 3:14
**5000** [1] - 3:10
**504** [1] - 3:15
**556** [1] - 1:22
**56** [3] - 4:9, 17:8,
  17:11
**57** [2] - 4:10, 4:11
**58** [1] - 4:12
**589-7779** [1] - 3:15

# 6

**6** [1] - 4:5

# 7

**7** [2] - 1:7, 5:2
**701** [1] - 3:10
**70112** [1] - 2:10
**70113** [1] - 1:25
**70130** [1] - 3:14
**70139** [1] - 3:11
**70502** [1] - 1:22

**716190** [1] - 12:16
**75201** [1] - 2:6
**77002** [1] - 2:20
**77010** [1] - 2:15
**7th** [1] - 25:10

# 8

**820** [1] - 1:25

# 9

**909** [1] - 2:9

# A

**A.M** [1] - 1:7
**a.m** [1] - 59:15
**abeyance** [1] - 58:14
**ability** [5] - 14:6,
  22:19, 56:1, 58:8,
  60:8
**able** [1] - 33:2
**abort** [1] - 37:19
**above-entitled** [1] -
  60:9
**absence** [1] - 49:6
**absolute** [6] - 38:6,
  38:24, 43:10, 45:23,
  45:25, 49:12
**absolutely** [1] - 23:6
**absurd** [1] - 40:24
**abuse** [2] - 40:5, 44:25
**abused** [1] - 41:9
**abusing** [1] - 45:16
**abusive** [1] - 45:16
**accept** [1] - 34:6
**accomplished** [1] -
  24:19
**accordingly** [1] -
  52:23
**accurate** [1] - 16:24
**achieved** [2] - 56:17
**acknowledged** [1] -
  47:9
**acknowledges** [1] -
  33:11
**act** [14] - 18:16, 18:19,
  21:7, 36:1, 52:23,
  54:1, 54:22, 54:23,
  54:24, 55:15, 56:4,
  58:10, 58:15
**Act** [24] - 9:1, 9:2,
  11:12, 11:13, 20:2,
  21:17, 21:21, 21:25,
  25:16, 25:2, 28:20,
  33:7, 33:17, 34:13,
  37:2, 42:6, 47:5,

**47:15, 48:1, 49:18,**
  55:1, 58:21
**ACTION** [1] - 1:6
**action** [11] - 8:3, 32:9,
  32:18, 34:4, 37:22,
  38:18, 42:9, 52:3,
  55:22, 57:19, 58:2
**actions** [9] - 8:9, 9:6,
  18:24, 19:17, 37:7,
  37:8, 50:25, 58:24
**active** [2] - 12:5, 18:15
**actively** [5] - 12:1,
  12:7, 13:17, 13:18,
  52:6
**activities** [1] - 20:23
**acts** [1] - 54:23
**actual** [1] - 11:23
**ad** [1] - 45:20
**add** [1] - 40:14
**addition** [4] - 12:9,
  14:21, 25:6, 53:5
**additional** [4] - 19:6,
  21:17, 31:25, 32:2
**address** [5] - 15:23,
  16:14, 20:8, 40:25
**addressed** [6] - 14:10,
  15:24, 37:10, 39:10,
  42:5, 42:11
**addresses** [3] - 12:11,
  49:3, 49:9
**addressing** [3] - 13:1,
  43:8, 43:9
**adjudicated** [1] - 52:7
**adjudication** [1] -
  46:19
**administration** [2] -
  21:4, 24:4
**admit** [1] - 26:22
**adopt** [1] - 21:19
**adversary** [1] - 37:24
**advisement** [2] -
  57:16, 58:15
**affected** [1] - 13:12
**affidavits** [2] - 17:19,
  17:22
**afford** [1] - 44:3
**affront** [1] - 52:22
**ago** [2] - 8:13, 22:8
**agreement** [1] - 15:19
**ahead** [4] - 6:9, 10:14,
  40:6, 41:1
**aid** [4] - 34:12, 34:14,
  51:8, 59:9
**Aid** [1] - 5:22
**akin** [1] - 45:20
**ALAN** [1] - 2:13
**Alan** [2] - 5:13, 6:7
**albeit** [2] - 35:10,
  43:18
**alleged** [1] - 16:25

**alleging** [2] - 27:7,
  27:8
**allow** [2] - 11:24, 13:8
**allowed** [6] - 20:17,
  20:18, 21:1, 36:16,
  41:6, 45:11
**allowing** [1] - 10:24
**altered** [1] - 51:2
**alternative** [1] - 47:21
**alternatives** [1] -
  54:13
**AMERICA** [6] - 3:3,
  3:3, 3:4, 3:5, 3:7, 3:8
**American** [1] - 37:17
**amicus** [2] - 29:21,
  52:18
**ammunition** [1] -
  55:12
**amount** [1] - 38:8
**analogizing** [1] - 45:5
**analogous** [2] - 44:17,
  45:18
**analysis** [1] - 38:8
**analyzes** [1] - 16:19
**ancillary** [5] - 20:4,
  20:8, 20:9, 20:22,
  22:15
**animal** [1] - 52:12
**Anson** [1] - 39:3
**answer** [13] - 11:15,
  11:17, 14:7, 14:10,
  14:15, 14:18, 32:21,
  36:21, 37:14, 38:7,
  46:8, 50:6, 52:4
**answers** [3] - 13:6,
  36:17, 46:10
**Anti** [2] - 11:13, 55:1
**Anti-Suit** [2] - 11:13,
  55:1
**Antitrust** [1] - 17:25
**anyway** [2] - 40:6,
  43:1
**appear** [1] - 30:11
**appearances** [1] -
  5:12
**APPEARANCES** [3] -
  1:18, 2:1, 3:1
**appeared** [1] - 22:19
**appearing** [4] - 5:13,
  5:15, 5:17, 6:7
**applicable** [4] - 16:3,
  18:7, 34:3, 38:12
**application** [5] -
  12:12, 13:1, 18:6,
  21:25, 46:6
**applications** [1] -
  21:23
**applied** [2] - 36:22,
  43:15
**apply** [3] - 13:9, 13:14,

33:25
**appreciate** [1] - 43:4
**appreciates** [1] - 26:14
**approach** [1] - 34:20
**appropriate** [4] - 7:1, 37:4, 47:10, 55:23
**appropriately** [3] - 46:14, 47:3, 49:23
**April** [1] - 5:11
**APRIL** [3] - 1:5, 1:7, 5:2
**argue** [1] - 12:6
**argues** [1] - 51:2
**arguing** [1] - 48:10
**argument** [12] - 12:24, 20:1, 20:7, 29:1, 35:17, 35:18, 50:7, 36:14, 38:10, 43:1, 51:19, 52:13
**arguments** [7] - 9:19, 35:4, 35:19, 42:7, 43:9, 55:21, 56:2
**Article** [1] - 34:23
**articulated** [1] - 22:2
**ashes** [1] - 37:21
**aside** [1] - 23:14
**asserted** [1] - 35:13
**assigned** [1] - 9:9
**assuming** [2] - 10:16, 19:24
**assure** [1] - 50:19
**assures** [1] - 52:9
**attach** [1] - 19:2
**attached** [2] - 17:7, 17:21
**attachment** [2] - 17:19, 19:1
**attack** [1] - 20:13
**attacked** [1] - 21:5
**attempt** [1] - 21:2
**attempted** [3] - 13:19, 29:12, 48:25
**attempting** [4] - 20:15, 32:1, 50:23, 51:4
**attempts** [1] - 27:18
**attention** [2] - 10:23, 19:10
**attorney's** [1] - 45:4
**August** [3] - 6:18, 25:1, 25:4
**authority** [6] - 20:14, 21:7, 25:21, 44:8, 44:15, 56:18
**automatic** [1] - 46:7
**automatically** [1] - 17:19
**AVENUE** [1] - 1:25
**avoid** [2] - 20:16, 41:4
**award** [1] - 45:3

**aware** [3] - 11:14, 24:22, 56:7
**awful** [1] - 28:6

**B**

**B-1** [1] - 19:5
**B1** [1] - 16:9
**B406** [1] - 3:14
**background** [1] - 26:23
**bad** [2] - 27:22, 28:7
**bar** [1] - 18:2
**Barbier** [1] - 6:5
**BARBIER** [1] - 1:16
**barred** [1] - 32:23
**based** [7] - 9:25, 10:11, 11:5, 26:25, 51:2, 53:9, 53:11
**bases** [1] - 21:6
**basic** [2] - 10:23, 23:20
**basis** [13] - 8:23, 8:24, 8:25, 9:23, 34:24, 37:1, 37:3, 37:5, 43:22, 47:6, 49:15, 49:18, 53:5
**bat** [1] - 15:13
**Bath** [1] - 17:24
**become** [2] - 11:25, 52:6
**becomes** [2] - 17:11, 59:3
**BEFORE** [1] - 1:16
**began** [1] - 6:18
**beginning** [1] - 6:17
**behalf** [5] - 5:13, 5:15, 5:17, 6:7, 15:7, 32:25, 43:18, 57:12
**behind** [1] - 18:15
**believes** [3] - 14:2, 20:9, 21:6
**belong** [1] - 42:22
**best** [5] - 26:16, 26:17, 46:20, 55:15, 60:8
**better** [3] - 26:6, 26:8, 26:10
**between** [1] - 15:23
**BICKEL** [1] - 2:3
**big** [1] - 41:10
**binding** [2] - 48:21, 48:22
**bit** [1] - 6:13
**BOCKIUS** [1] - 2:18
**BOX** [1] - 1:21
**BP** [13] - 3:3, 3:3, 3:4, 3:5, 3:6, 3:7, 3:8, 8:18, 8:19, 23:10, 50:1, 56:25, 57:4

**BREWER** [1] - 2:3
**brief** [8] - 12:21, 15:16, 21:17, 29:12, 29:15, 29:21, 55:9
**briefed** [2] - 47:23, 48:19
**briefing** [2] - 11:22, 51:20
**briefings** [2] - 12:17, 16:13
**briefly** [1] - 57:13
**briefs** [1] - 52:18
**bring** [8] - 10:23, 12:22, 24:21, 26:18, 28:12, 28:19, 29:8, 42:8
**brings** [1] - 25:16
**broader** [1] - 11:20
**brought** [3] - 25:13, 29:7, 46:22
**Bundle** [1] - 14:14, 19:5
**bundle** [1] - 16:9
**burden** [2] - 49:7, 49:8
**BY** [10] - 1:4, 1:21, 1:24, 2:4, 2:9, 2:13, 2:18, 3:9, 3:16, 3:16
**bypass** [1] - 36:18

**C**

**CAHILL** [1] - 2:8
**cake** [1] - 52:20
**CALLED** [1] - 5:4
**cannot** [3] - 13:17, 34:10, 52:7
**CARL** [1] - 1:16
**carried** [2] - 38:3, 38:16
**Carter** [1] - 38:4
**case** [131] - 5:9, 6:13, 6:15, 6:18, 8:5, 8:15, 9:4, 9:13, 9:15, 9:18, 11:5, 11:8, 11:21, 12:2, 12:9, 12:11, 12:13, 12:21, 12:22, 12:25, 13:2, 13:5, 13:11, 13:12, 13:17, 13:18, 14:22, 14:24, 14:25, 15:24, 16:13, 16:21, 17:15, 17:17, 17:24, 18:1, 18:10, 18:13, 19:15, 19:25, 20:17, 21:4, 21:25, 22:5, 22:10, 22:24, 23:16, 23:18, 24:1, 24:10, 24:18, 24:25, 25:2, 25:7, 25:10, 26:20, 27:24, 28:3,

28:23, 29:1, 29:3, 29:11, 29:20, 29:24, 30:20, 31:9, 31:11, 31:22, 31:23, 32:11, 32:19, 36:15, 36:20, 37:8, 37:13, 38:4, 38:8, 38:17, 38:22, 38:25, 39:2, 39:4, 39:11, 39:13, 39:16, 39:17, 39:19, 39:22, 40:12, 40:20, 40:23, 43:10, 43:13, 43:14, 43:15, 43:23, 44:10, 44:16, 44:17, 44:20, 44:21, 44:24, 45:9, 45:12, 45:18, 46:2, 47:12, 47:19, 47:20, 47:21, 49:5, 50:7, 51:18, 52:7, 52:12, 54:7, 54:11, 54:13, 55:5, 55:16, 55:23, 56:19, 57:20, 59:3, 59:7
**Case** [2] - 14:13, 15:5
**case-by-case** [1] - 38:8
**cases** [40] - 6:21, 6:22, 6:25, 7:2, 7:13, 7:19, 7:21, 9:8, 9:22, 12:19, 13:3, 13:6, 13:10, 16:4, 17:14, 17:16, 18:11, 22:9, 23:9, 23:11, 23:12, 25:2, 30:5, 33:25, 36:10, 36:11, 37:16, 43:11, 43:18, 44:9, 45:2, 45:6, 45:14, 47:24, 51:23, 51:24, 54:4
**Castle** [5] - 24:9, 24:15, 26:6, 26:7, 26:8, 26:10
**CATHY** [1] - 3:13
**Cathy** [2] - 60:3, 60:14
**causes** [1] - 40:5
**CCR** [2] - 3:13, 60:14
**certain** [1] - 13:9
**certainly** [6] - 10:8, 32:4, 46:18, 48:7, 48:22, 56:1
**CERTIFICATE** [1] - 60:1
**CERTIFIED** [1] - 3:13
**Certified** [3] - 60:3, 60:4, 60:15
**certify** [1] - 60:7
**chance** [1] - 58:24
**check** [1] - 57:3
**checked** [1] - 22:4
**choosing** [2] - 46:18

**chose** [3] - 28:11, 28:20, 46:24
**circuit** [4] - 36:1, 36:3, 37:11
**Circuit** [11] - 11:20, 12:4, 13:21, 14:21, 16:19, 17:14, 17:17, 17:24, 18:5, 18:11, 22:11, 22:18, 35:25, 36:24, 37:10, 37:18, 38:4, 38:17, 38:20, 39:9, 41:2, 43:8, 43:14, 44:16, 45:22, 46:4, 46:6, 46:14, 47:9, 49:12, 51:23
**Circuit's** [5] - 18:6, 18:8, 38:21, 52:1
**circuits** [1] - 37:11
**circumstances** [4] - 13:9, 29:3, 43:15, 43:25
**circumvented** [1] - 37:24
**citation** [1] - 36:15
**cite** [11] - 12:15, 12:16, 17:15, 17:16, 17:24, 43:12, 44:15, 45:20, 51:5
**cited** [13] - 11:22, 12:19, 12:21, 12:22, 16:13, 38:22, 43:11, 44:8, 44:14, 44:15, 44:21, 47:25, 51:20
**cites** [1] - 51:24
**city** [2] - 26:4, 26:5
**CIVIL** [1] - 1:6
**Civil** [1] - 13:7
**claim** [18] - 8:1, 11:15, 11:19, 11:25, 13:20, 16:10, 16:12, 28:25, 32:20, 32:21, 32:23, 33:3, 51:4, 51:14, 56:14, 57:1, 57:4, 57:6
**claiming** [1] - 33:20
**claims** [44] - 6:19, 9:3, 12:8, 13:2, 14:4, 14:7, 14:20, 15:13, 20:11, 20:12, 26:15, 26:19, 27:8, 28:12, 28:13, 28:19, 28:21, 29:2, 29:6, 29:7, 29:9, 29:13, 33:6, 33:8, 33:12, 33:13, 33:15, 33:18, 34:3, 34:15, 34:21, 35:2, 35:9, 35:12, 42:21, 44:7, 46:18, 46:22, 48:17, 49:1, 49:19, 49:23, 50:12

**Claims** [1] - 57:4
**clear** [11] - 12:4, 21:18, 22:9, 22:12, 22:18, 24:2, 51:16, 51:18, 51:19, 54:7
**clearly** [2] - 33:23, 47:14
**CLERK** [2] - 5:7, 5:10
**client** [4] - 28:2, 32:20, 40:21, 52:25
**client's** [2] - 37:5, 46:20
**clients** [8] - 26:15, 30:16, 33:1, 40:19, 40:21, 43:18, 46:5
**clients'** [1] - 26:17
**closes** [1] - 37:20
**CMO** [3] - 15:20, 18:20
**Coast** [2] - 32:13, 57:4
**coexist** [1] - 33:16
**coexists** [1] - 33:7
**collateral** [4] - 22:15, 22:17, 44:22, 45:2
**COLLINS** [1] - 2:5
**combining** [1] - 8:4
**comments** [2] - 43:5
**Committee** [6] - 15:3, 15:4, 15:8, 19:3, 19:4, 19:9
**common** [7] - 24:3, 25:11, 33:15, 33:18, 34:3, 44:3, 45:4
**common-law** [3] - 33:15, 33:18, 34:3
**companies** [1] - 10:5
**Company** [23] - 5:18, 5:23, 7:24, 8:2, 8:9, 9:9, 9:17, 10:20, 11:2, 13:19, 14:1, 18:18, 19:17, 19:19, 20:15, 20:23, 21:1, 22:23, 23:8, 50:22, 51:25, 57:1, 57:3
**company** [2] - 10:3, 50:9
**COMPANY** [5] - 1:10, 1:12, 2:3, 3:4
**Company's** [2] - 11:16, 50:24
**compelling** [1] - 37:17
**complaint** [4] - 14:14, 16:9, 19:6, 37:19
**complaints** [1] - 14:15
**complete** [2] - 12:24, 40:18
**completely** [1] - 51:25
**comprehensive** [1] - 49:3
**compromises** [1] - 15:11

**COMPUTER** [1] - 3:16
**concern** [7] - 10:24, 23:4, 23:7, 23:16, 56:5, 59:2
**concerns** [4] - 31:18, 45:24, 55:18, 55:21
**concluded** [1] - 59:16
**conditional** [2] - 22:6, 54:5
**conduct** [3] - 45:20, 47:8
**conference** [2] - 15:6, 30:3
**confirm** [1] - 19:4
**conformity** [1] - 19:18
**consent** [1] - 52:8
**consider** [6] - 17:21, 19:12, 56:2, 58:22, 58:24, 59:6
**consideration** [2] - 18:12, 38:14
**considered** [3] - 17:8, 17:23, 38:19
**consist** [1] - 32:18
**consolidated** [4] - 37:8, 42:9, 47:19, 49:4
**consolidation** [1] - 51:16
**construct** [1] - 24:1
**contention** [1] - 17:18
**context** [9] - 6:13, 13:13, 13:16, 14:18, 18:14, 18:23, 19:14, 51:25, 57:24
**Continental** [2] - 9:1, 42:6
**CONTINUED** [2] - 2:1, 3:1
**continuing** [5] - 13:23, 14:3, 14:19, 44:22, 45:2
**contract** [1] - 34:2
**contrary** [1] - 20:11
**conveniens** [1] - 24:21
**conversion** [3] - 17:1, 36:4, 36:12
**convert** [4] - 17:8, 18:17, 19:18, 36:2
**converted** [5] - 14:23, 15:21, 16:17, 18:1, 35:22
**converting** [1] - 17:22
**converts** [1] - 17:20
**CONÉ** [1] - 2:14
**coordinate** [1] - 23:13
**copies** [3] - 12:23, 51:21, 51:22
**corporation** [2] -

26:23, 28:16
**CORPORATION** [1] - 3:5
**corporations** [1] - 10:6
**correct** [13] - 9:14, 9:24, 10:7, 10:8, 10:13, 10:18, 23:1, 23:5, 41:2, 53:16, 54:20, 57:8, 60:7
**COTLAR** [1] - 1:24
**COUNSEL** [1] - 1:20
**counsel** [10] - 5:12, 12:23, 15:9, 15:19, 36:19, 44:3, 44:6, 44:11, 46:9, 51:22
**couple** [1] - 47:23
**course** [8] - 7:19, 21:18, 21:21, 23:19, 33:11, 48:19, 55:15, 58:20
**COURT** [111] - 1:1, 3:13, 5:4, 5:8, 5:12, 5:20, 6:6, 6:9, 7:3, 7:7, 7:12, 7:15, 8:6, 8:18, 8:21, 8:23, 9:11, 9:20, 9:22, 10:2, 10:5, 10:11, 10:14, 10:16, 12:13, 12:18, 17:6, 17:14, 19:22, 21:12, 22:21, 23:2, 23:7, 24:20, 25:23, 25:25, 26:3, 26:6, 26:11, 26:22, 27:2, 27:5, 27:7, 27:11, 27:13, 28:9, 28:14, 28:24, 29:6, 29:10, 29:15, 29:17, 29:19, 29:23, 30:4, 30:8, 30:13, 30:16, 30:20, 30:24, 31:4, 31:14, 31:17, 31:22, 32:2, 32:7, 32:10, 32:20, 32:23, 33:12, 33:20, 34:16, 34:18, 38:25, 39:2, 39:4, 39:7, 39:11, 40:10, 41:1, 41:7, 41:13, 41:18, 41:22, 42:1, 42:23, 44:20, 47:17, 50:1, 50:3, 50:5, 50:9, 50:16, 50:18, 52:24, 53:14, 53:17, 53:23, 54:9, 54:21, 55:2, 55:10, 56:9, 56:16, 56:22, 57:6, 57:9, 57:11, 57:15, 58:17, 59:12
**court** [91] - 5:7, 6:20, 6:21, 7:4, 7:5, 7:10,

7:14, 8:3, 8:16, 9:6, 9:7, 9:8, 11:22, 13:3, 16:2, 16:16, 16:20, 17:21, 18:2, 20:12, 20:17, 20:18, 21:9, 22:24, 23:4, 23:5, 23:9, 23:11, 23:12, 23:17, 23:22, 24:14, 26:19, 27:11, 28:12, 29:15, 29:17, 31:9, 31:10, 34:23, 35:9, 35:13, 35:15, 36:2, 36:7, 37:8, 37:22, 37:24, 39:13, 40:13, 40:15, 41:17, 42:10, 42:12, 42:20, 43:18, 44:2, 46:1, 46:15, 46:19, 47:1, 47:4, 47:16, 47:17, 47:18, 48:4, 48:6, 48:12, 48:17, 48:22, 48:24, 49:4, 49:6, 49:8, 49:21, 52:9, 52:14, 53:1, 53:6, 53:19, 54:14, 55:6, 55:17, 55:24, 56:13, 58:9
**Court** [123] - 5:21, 6:4, 6:12, 6:23, 7:2, 7:22, 8:12, 10:22, 11:4, 11:9, 11:11, 11:14, 11:22, 12:10, 12:23, 13:4, 13:23, 13:25, 14:2, 14:11, 14:16, 14:19, 15:2, 15:7, 15:17, 15:19, 15:20, 15:22, 16:25, 17:9, 17:11, 18:16, 18:19, 18:20, 18:24, 19:12, 19:16, 20:4, 20:7, 20:9, 20:14, 20:20, 20:22, 21:7, 21:15, 21:16, 22:2, 22:13, 22:14, 24:2, 24:7, 25:7, 25:11, 25:13, 25:16, 25:18, 25:21, 26:2, 26:14, 28:11, 29:4, 29:9, 29:13, 29:18, 30:3, 33:5, 33:17, 33:24, 34:6, 35:10, 35:17, 35:25, 36:16, 38:4, 38:11, 38:23, 39:5, 40:8, 42:16, 42:19, 43:11, 43:16, 44:1, 44:12, 44:21, 45:1, 45:5, 45:12, 45:15, 46:10, 47:4, 47:20, 48:18, 48:25, 49:22, 51:1, 51:3, 51:5, 51:10, 51:20, 52:11, 52:17, 52:23, 54:3, 54:24,

56:6, 56:7, 56:20, 58:9, 58:19, 58:21, 58:22, 58:25, 59:6, 59:8, 59:11, 60:4, 60:5, 60:6, 60:16, 60:17
**court's** [1] - 13:11
**Court's** [23] - 5:23, 6:12, 10:23, 14:12, 16:21, 17:5, 18:12, 19:17, 19:18, 20:13, 20:16, 34:6, 34:12, 34:14, 35:21, 43:5, 45:24, 49:16, 50:20, 51:8, 51:15, 52:22
**COURT**........................
........................ [1] -
4:11
**courtesy** [1] - 44:3
**courtroom** [1] - 12:6
**courts** [6] - 40:19, 40:22, 41:4, 41:5, 47:25
**crazy** [2] - 40:3
**created** [2] - 50:24, 54:15
**cried** [1] - 21:25
**criticize** [1] - 50:23
**CRR** [2] - 3:13, 60:14
**CTO** [1] - 54:7
**culminated** [1] - 38:21
**curiae** [1] - 29:21
**current** [2] - 10:21, 56:13, 57:18
**cutting** [1] - 19:22
**Cyanamid** [1] - 37:17

**D**

**DALLAS** [1] - 2:6
**damage** [3] - 27:7, 33:21, 33:22
**damages** [2] - 32:19, 33:23
**day-to-day** [1] - 43:22
**days** [4] - 22:8, 47:13, 47:15, 48:6
**deal** [1] - 35:4
**dealing** [1] - 43:22
**deals** [1] - 43:13
**dealt** [2] - 8:12, 25:12
**decide** [6] - 15:17, 20:14, 40:23, 53:23, 55:20
**decided** [4] - 15:25, 28:5, 39:14, 58:1
**decides** [3] - 54:22, 54:23, 58:9
**decision** [5] - 38:22,

42:5, 50:11, 53:3, 58:20
**decisions** [2] - 38:22, 52:17
**deed** [1] - 39:17
**deem** [1] - 36:18
**deemed** [1] - 36:21
**DEEPWATER** [2] - 1:4, 5:11
**defendant** [7] - 10:4, 11:25, 37:21, 38:6, 40:14, 52:4, 52:5
**defendants** [10] - 13:5, 17:2, 19:9, 20:24, 26:19, 29:1, 38:9, 38:11, 43:11, 50:15
**defense** [5] - 12:1, 12:8, 15:9, 44:7, 52:6
**Defense** [1] - 15:3
**definitely** [1] - 26:10
**Delaware** [62] - 6:19, 7:4, 7:9, 7:13, 8:3, 8:9, 8:16, 9:5, 9:7, 10:3, 10:5, 20:12, 24:8, 24:9, 24:15, 24:20, 26:7, 27:1, 27:11, 28:12, 29:17, 30:21, 31:7, 31:9, 31:10, 31:20, 32:12, 32:18, 34:4, 35:10, 35:13, 35:15, 37:9, 41:16, 41:18, 42:5, 42:10, 42:11, 42:15, 42:21, 47:4, 47:19, 48:4, 48:6, 48:12, 48:22, 49:4, 49:21, 49:22, 52:14, 53:1, 53:4, 53:6, 53:19, 54:14, 54:16, 55:5, 56:13, 57:20, 58:9
**delay** [1] - 59:11
**demonstrate** [1] - 48:25
**denied** [1] - 49:25
**deny** [2] - 58:12, 58:13
**deposition** [1] - 47:22
**deprive** [1] - 14:24
**DEPUTY** [2] - 5:7, 5:10
**designated** [2] - 16:10, 25:18
**despite** [1] - 20:10
**determined** [1] - 6:25
**determining** [1] - 38:14
**developments** [1] - 11:8
**devices** [1] - 55:7
**dictates** [1] - 17:5

**difference** [2] - 41:10, 55:13
**different** [6] - 18:5, 40:13, 40:22, 42:16, 43:18, 52:12
**difficult** [1] - 22:22
**direct** [1] - 52:21
**directly** [2] - 21:5, 52:20
**disagree** [1] - 19:24
**discharge** [1] - 46:24
**discovery** [17] - 21:8, 24:4, 24:18, 31:15, 31:17, 31:20, 31:22, 31:25, 32:2, 32:5, 32:7, 32:8, 32:10, 51:12, 52:14, 52:15
**discretion** [2] - 17:21, 34:16
**discuss** [1] - 21:10
**discussed** [1] - 6:14
**disingenuity** [1] - 50:22
**dismiss** [27] - 7:25, 11:15, 11:19, 11:25, 13:2, 13:8, 13:20, 14:4, 14:6, 14:24, 16:12, 17:19, 19:25, 20:16, 30:5, 30:20, 36:10, 36:23, 37:7, 37:13, 38:6, 39:22, 40:12, 44:24, 52:2, 52:3
**dismissal** [17] - 10:19, 11:5, 13:24, 16:7, 18:3, 19:20, 20:11, 22:12, 22:13, 22:20, 27:19, 35:11, 37:20, 38:15, 46:7, 46:13, 52:9
**dismissals** [3] - 41:3, 59:1, 59:8
**dismissed** [5] - 14:20, 45:2, 45:9, 45:12, 49:23
**dismisses** [1] - 38:18
**dismissing** [1] - 39:16
**disprove** [1] - 49:7
**dispute** [1] - 42:17
**distasteful** [7] - 27:21, 37:4, 39:7, 40:1, 41:7, 42:4, 42:8
**distinctive** [1] - 13:22
**distinguish** [1] - 40:7
**DISTRICT** [3] - 1:1, 1:1, 1:17
**District** [9] - 12:10, 12:11, 22:10, 39:20, 39:21, 48:12, 60:6, 60:17

**district** [22] - 9:8, 17:21, 18:2, 20:18, 35:9, 35:15, 36:2, 42:5, 42:11, 42:15, 42:20, 47:4, 47:15, 47:17, 47:18, 48:6, 48:12, 48:22, 49:21, 52:25, 54:14, 54:16
**diversity** [4] - 9:23, 9:25, 10:2, 10:12
**divested** [1] - 16:12
**divests** [2] - 16:6, 19:19
**divided** [1] - 20:7
**Document** [2] - 5:24, 5:25
**document** [1] - 37:20
**DOCUMENT** [1] - 1:9
**documents** [1] - 19:2
**dollars** [1] - 24:17
**DOMENGEAUX** [1] - 1:20
**Don** [1] - 56:25
**DON** [1] - 3:9
**done** [10] - 16:1, 16:2, 22:23, 39:17, 43:10, 56:15, 57:24, 59:7
**down** [1] - 37:3
**drives** [1] - 40:3
**due** [1] - 48:19
**duplicative** [1] - 44:4
**duty** [1] - 26:14
**déjà** [5] - 9:20, 9:21, 20:20, 22:3, 23:23

**E**

**EASTERN** [1] - 1:1
**Eastern** [3] - 12:11, 48:12, 60:6
**eat** [1] - 52:20
**economic** [3] - 33:23, 33:25, 34:2
**economy** [1] - 56:18
**EDWARDS** [1] - 1:20
**effect** [1] - 40:11
**effective** [2] - 13:24, 21:4
**effectively** [1] - 16:11
**effectiveness** [1] - 38:15
**effectuate** [1] - 25:20
**efficiency** [2] - 20:6, 56:18
**efficient** [2] - 11:9, 24:3
**effort** [3] - 28:2, 38:8, 38:10
**Eileen** [1] - 5:9

**either** [10] - 8:6, 23:2, 33:6, 46:12, 52:8, 54:11, 57:4, 57:7, 57:20, 58:6
**elected** [5] - 26:18, 29:8, 33:5, 33:6, 33:8
**Ellison** [2] - 53:14, 57:25
**emergency** [3] - 47:14, 48:7, 56:3
**employed** [1] - 49:17
**encourage** [3] - 58:19, 58:20, 59:6
**end** [3] - 21:3, 23:12, 40:24
**ended** [2] - 33:2, 42:25
**Energy** [3] - 5:14, 6:8, 10:10
**ENERGY** [2] - 1:10, 2:12
**enforcing** [1] - 8:13
**engaged** [6] - 12:1, 12:7, 13:18, 13:19, 44:6, 52:6
**engagement** [2] - 12:5, 18:15
**engaging** [1] - 44:25
**enjoin** [1] - 25:17
**enjoined** [1] - 39:23
**Enron** [1] - 59:7
**ensure** [1] - 46:19
**enter** [1] - 7:17
**entered** [3] - 7:1, 15:19, 25:1
**entering** [1] - 25:1
**entire** [1] - 50:10
**entirely** [2] - 40:2, 47:10
**entitled** [3] - 19:25, 52:7, 60:9
**entry** [4] - 15:5, 15:20, 16:21, 18:20
**equate** [1] - 12:3
**equitable** [2] - 47:11, 53:10
**error** [1] - 16:20
**espoused** [1] - 19:16
**espousing** [1] - 18:19
**ESQUIRE** [14] - 1:21, 1:24, 2:4, 2:4, 2:5, 2:9, 2:13, 2:13, 2:14, 2:14, 2:18, 2:19, 2:19, 3:9
**essence** [1] - 36:21
**essentially** [2] - 42:21, 43:12
**establish** [1] - 49:8
**established** [1] -

45:22
**establishes** [1] - 49:6
**establishing** [1] - 32:6
**event** [1] - 47:3
**evidence** [5] - 18:12, 18:25, 19:7, 32:15, 52:11
**evidentiary** [1] - 40:10
**ex** [3] - 43:19, 43:20, 44:4
**exact** [1] - 17:15
**exactly** [4] - 9:21, 14:25, 20:21, 39:12
**examine** [1] - 34:24
**example** [5] - 11:12, 18:13, 19:1, 45:3, 57:25
**except** [1] - 33:25
**exclude** [1] - 17:9
**excluded** [1] - 36:6
**exercise** [7] - 20:22, 36:13, 42:18, 43:7, 45:11, 45:25, 54:16
**exercised** [4] - 36:9, 37:6, 43:10, 44:23
**exercises** [1] - 37:25
**existed** [1] - 46:2
**existing** [1] - 20:5
**exists** [1] - 33:7
**exit** [1] - 59:4
**expedient** [1] - 28:22
**expended** [2] - 38:9, 38:11
**explaining** [1] - 17:20
**EXPLORATION** [1] - 3:6
**express** [2] - 36:18, 56:25
**expressed** [1] - 23:7
**expressly** [1] - 35:22
**extent** [2] - 16:5, 21:16
**extinguished** [1] - 37:24
**extra** [1] - 17:23
**extraordinary** [3] - 24:11, 47:11, 49:18
**Exxon** [5] - 11:21, 12:4, 14:22, 18:13, 51:25

**F**

**face** [1] - 12:6
**Facility** [1] - 57:5
**fact** [12] - 16:23, 33:11, 38:11, 39:9, 41:3, 46:25, 48:8, 48:20, 49:11, 50:21,

52:11, 53:11
**factor** [1] - 38:13
**facts** [1] - 44:10
**factual** [1] - 15:24
**failed** [1] - 14:3
**failure** [3] - 14:9, 16:19, 16:25
**fall** [1] - 15:2
**familiar** [3] - 39:4, 39:11, 44:20
**fan** [1] - 37:21
**far** [1] - 32:3
**favor** [1] - 39:18
**fear** [2] - 20:24, 20:25
**February** [2] - 7:21, 25:10
**federal** [19] - 6:21, 7:4, 9:4, 9:8, 9:25, 13:2, 22:24, 23:11, 23:12, 23:25, 31:7, 34:25, 44:8, 47:1, 47:6, 48:24, 49:6, 49:8, 53:19
**Federal** [1] - 13:7
**fee** [1] - 39:20
**fees** [1] - 45:4
**Feinberg** [1] - 57:6
**few** [2] - 22:8, 44:13
**Fifth** [33] - 11:20, 12:4, 13:21, 14:21, 16:19, 17:14, 17:17, 18:8, 18:11, 22:11, 22:18, 35:25, 36:24, 37:10, 37:18, 38:4, 38:17, 38:20, 38:21, 39:9, 41:2, 43:8, 43:14, 44:16, 45:22, 46:4, 46:6, 46:14, 47:9, 49:12, 51:23, 52:1
**fifth** [1] - 45:12
**fight** [2] - 50:23, 56:21
**fighting** [1] - 26:11
**file** [18] - 6:11, 14:9, 16:7, 16:25, 17:3, 32:20, 33:3, 36:9, 37:8, 37:20, 37:21, 41:14, 41:23, 45:16, 55:8, 56:11, 56:12, 58:8
**filed** [51] - 5:24, 6:1, 6:19, 7:4, 7:10, 7:11, 7:24, 8:9, 9:6, 9:10, 9:14, 9:15, 9:17, 10:19, 10:21, 11:2, 11:6, 11:16, 11:17, 11:18, 14:8, 16:22, 18:1, 19:4, 24:7, 25:2, 25:3, 25:5, 27:11, 27:13, 29:12, 29:15, 36:21, 37:15,

38:7, 38:19, 39:13, 41:18, 42:24, 43:17, 44:13, 47:15, 51:6, 52:4, 52:25, 53:2, 53:4, 54:4, 54:6
**filing** [13] - 9:5, 13:6, 14:14, 16:5, 16:8, 16:23, 41:11, 46:8, 46:11, 47:13, 48:7, 52:18, 54:25
**filings** [5] - 7:9, 14:2, 41:11, 44:2, 45:15
**final** [1] - 47:22
**finally** [2] - 7:22, 51:23
**fine** [1] - 5:20
**finger** [1] - 56:6
**firm** [1] - 44:6
**first** [9] - 5:21, 6:2, 14:17, 18:4, 35:8, 35:13, 35:20, 36:14, 38:5
**fit** [1] - 11:19
**five** [1] - 45:9
**fix** [2] - 40:4, 46:3
**Fixtures** [1] - 17:25
**FLOOR** [1] - 2:9
**Flooring** [4] - 16:14, 16:15, 17:17, 18:10
**Florida** [23] - 10:17, 24:13, 26:23, 26:25, 27:2, 27:4, 27:5, 27:8, 28:14, 28:15, 28:16, 28:17, 29:2, 29:6, 29:9, 29:13, 33:6, 33:13, 33:16, 33:17, 33:24
**folks'** [1] - 40:21
**follow** [3] - 21:2, 21:3, 23:9
**following** [2] - 16:18, 38:23
**FOR** [5] - 1:20, 2:3, 2:12, 2:18, 3:3
**forced** [1] - 24:9
**Ford** [1] - 38:16
**foregoing** [1] - 60:7
**foresee** [2] - 31:25, 32:17
**form** [1] - 24:20
**formation** [1] - 59:10
**forth** [1] - 6:1
**forum** [11] - 10:4, 24:20, 26:20, 27:19, 28:22, 37:4, 41:4, 43:8, 49:20, 49:22, 51:12
**forums** [2] - 46:18, 46:23
**forward** [2] - 38:3, 38:16

fought [1] - 56:21
**four** [2] - 50:14, 53:25
**frankly** [3] - 21:24, 37:11, 50:8
**free** [1] - 36:13
**frequently** [1] - 41:3
**friendly** [1] - 26:12
**front** [5] - 22:5, 53:8, 56:11, 56:21
**frustrating** [3] - 56:14, 56:19, 56:20
**full** [1] - 56:18
**fully** [2] - 7:21, 17:4
**fundamental** [1] - 31:5
**FUNDERBURK** [1] - 2:19
**future** [1] - 44:2

## G

**Garner** [1] - 5:19
**GARNER** [2] - 2:8, 2:9, 5:19
**gathered** [1] - 48:9
**GAVIN** [1] - 2:13
**Genetically** [1] - 12:14
**Gentlemen** [1] - 59:13
**GIFFORD** [1] - 2:4
**given** [9] - 11:8, 13:16, 14:18, 16:21, 19:14, 20:14, 46:25, 48:20, 59:10
**GODWIN** [1] - 2:12
**granted** [2] - 7:12, 34:11
**great** [2] - 26:4, 26:5
**greatest** [2] - 33:10, 33:23
**gross** [1] - 33:18
**ground** [2] - 42:6, 42:7
**Groundhog** [1] - 6:16
**grounds** [1] - 42:11
**groups** [2] - 50:13, 50:14
**Guard** [1] - 32:13
**guess** [3] - 17:6, 50:5, 53:24
**Gulf** [2] - 5:11, 57:4
**GULF** [1] - 1:5
**guys** [1] - 15:16

## H

**half** [1] - 8:2
**Halliburton** [40] - 5:14, 5:22, 6:7, 6:20, 6:21, 7:10, 8:1, 8:4, 8:10, 8:17, 10:3,

10:6, 10:10, 10:21, 11:5, 12:7, 14:2, 20:9, 21:6, 21:18, 21:19, 25:3, 30:19, 30:22, 32:6, 32:16, 34:3, 34:15, 35:2, 36:11, 42:9, 47:12, 47:25, 48:17, 49:19, 50:23, 51:4, 51:5, 52:22, 57:14
**HALLIBURTON** [2] - 1:10, 2:12
**Halliburton's** [7] - 13:15, 16:7, 19:2, 35:16, 35:22, 36:8, 51:13
**happy** [1] - 12:23
**hard** [2] - 26:11, 29:25
**harm** [1] - 25:6
**harmless** [2] - 16:20, 17:2
**Harvey** [8] - 38:22, 38:25, 39:2, 39:3, 40:8, 41:2, 46:4, 46:14
**HATAWAY** [1] - 2:14
**HATAWAY-CONÉ** [1] - 2:14
**Haycraft** [1] - 56:25
**HAYCRAFT** [3] - 3:9, 56:24, 57:8
**HAYCRAFT.............
..........................** [1] - 4:9
**HAYS** [1] - 2:14
**headquarters** [1] - 24:14
**hear** [2] - 25:18, 36:14
**HEARD** [1] - 1:16
**hearing** [5] - 35:20, 39:14, 40:10, 40:17
**heart** [1] - 31:5
**height** [1] - 50:22
**hereby** [1] - 60:7
**Herman** [1] - 15:7
**HERMAN** [3] - 1:24, 1:24
**HESI** [3] - 9:6, 51:10, 51:12
**HILBERT** [1] - 2:8
**HILL** [1] - 2:13
**history** [5] - 6:13, 6:15, 6:18, 13:16, 19:15
**hold** [1] - 58:14
**HOLDINGS** [1] - 3:7
**hominem** [1] - 45:20
**honestly** [2] - 20:6, 21:23
**Honor** [135] - 5:13,

5:15, 5:17, 5:19, 6:3, 6:10, 8:8, 8:22, 8:25, 9:21, 9:24, 10:9, 10:15, 10:18, 12:16, 17:12, 18:4, 20:3, 21:14, 23:6, 23:19, 24:23, 25:24, 26:2, 26:5, 26:9, 26:13, 26:18, 26:20, 26:25, 27:10, 27:12, 28:8, 28:10, 28:11, 28:18, 28:21, 29:4, 29:8, 29:11, 29:16, 29:21, 30:2, 30:7, 30:10, 30:15, 30:18, 30:23, 31:2, 31:12, 31:16, 31:19, 31:24, 32:4, 32:8, 32:13, 32:17, 32:22, 33:4, 33:15, 33:22, 34:5, 34:9, 34:17, 34:19, 34:23, 35:1, 35:4, 35:6, 35:12, 35:16, 35:24, 36:4, 36:8, 36:12, 36:24, 36:25, 37:10, 37:16, 38:3, 38:16, 38:21, 39:1, 39:6, 39:9, 40:7, 40:8, 40:25, 41:10, 41:16, 41:20, 41:25, 42:3, 42:17, 43:4, 43:16, 44:1, 44:9, 44:16, 44:19, 45:8, 45:13, 45:18, 45:21, 46:3, 46:13, 46:17, 46:24, 46:25, 47:12, 47:16, 47:18, 47:23, 48:4, 48:13, 48:15, 48:20, 48:23, 49:3, 49:5, 49:11, 49:13, 49:24, 50:2, 50:8, 50:11, 50:17, 53:2, 54:3, 56:5, 56:24, 57:10, 58:16
**Honor's** [1] - 34:7
**HONORABLE** [1] - 1:16
**hope** [2] - 31:8, 42:15
**HORIZON** [2] - 1:4, 5:11
**hostilities** [1] - 52:10
**hour** [1] - 8:2
**hours** [2] - 44:13, 54:5
**HOUSTON** [2] - 2:15, 2:20
**Houston** [2] - 53:15, 57:25
**HUGH** [1] - 2:18
**Hugh** [3] - 5:15, 21:14, 58:18

## I

**identical** [5] - 42:7, 42:11, 44:7, 48:13, 49:10
**ignores** [1] - 51:25
**III** [1] - 34:23
**illusions** [1] - 24:7
**imitate** [1] - 23:15
**immediately** [2] - 6:22, 16:18
**impact** [1] - 10:25
**impairment** [1] - 37:25
**impose** [1] - 45:3
**improper** [4] - 39:16, 41:5, 42:12, 42:19
**improperly** [2] - 14:20, 35:14
**IN** [2] - 1:4, 1:5
**Inc** [2] - 5:14, 6:8
**INC** [7] - 1:11, 2:12, 3:3, 3:4, 3:5, 3:6, 3:8
**inclined** [1] - 58:23
**include** [2] - 44:23, 49:21
**included** [4] - 16:11, 26:19, 54:7, 54:25
**including** [1] - 25:19
**inclusion** [1] - 19:6
**incorporated** [1] - 26:25
**indeed** [8] - 22:1, 22:4, 22:12, 22:13, 23:20, 24:5, 25:17, 25:21
**indication** [1] - 54:8
**individual** [2] - 13:6, 25:2
**inherent** [1] - 37:12
**initial** [2] - 44:14, 51:19
**Injunction** [3] - 5:22, 11:13, 55:1
**injunction** [13] - 8:13, 25:22, 30:11, 34:10, 34:13, 37:2, 39:12, 39:14, 44:1, 47:5, 49:18, 51:11, 58:22
**injunctions** [1] - 48:1
**injunctive** [5] - 10:22, 11:3, 40:16, 51:5, 51:8
**inquiry** [2] - 34:24, 48:23
**instances** [1] - 45:1
**instead** [5] - 10:17, 27:13, 33:8, 39:16, 58:9
**instructed** [1] - 14:13

**integrity** [4] - 10:25, 20:5, 20:13, 25:14
**intend** [3] - 31:4, 31:6, 31:10
**intended** [1] - 47:14
**intents** [1] - 9:18
**interesting** [5] - 24:8, 24:25, 25:4, 50:3, 57:9
**interests** [1] - 26:17
**interfere** [3] - 23:17, 55:4, 55:25
**interrupt** [1] - 54:2
**involved** [2] - 43:17, 44:19
**issuance** [1] - 47:5
**issue** [30] - 8:12, 11:3, 13:1, 15:14, 15:16, 16:23, 19:24, 22:15, 22:17, 22:22, 23:14, 23:22, 25:19, 25:22, 35:11, 37:2, 37:11, 38:11, 39:15, 40:16, 43:13, 47:6, 47:7, 48:5, 51:11, 53:10, 57:17
**issued** [3] - 22:6, 25:9, 44:1
**issues** [21] - 11:11, 15:11, 15:23, 18:22, 19:13, 20:14, 22:15, 23:21, 24:3, 24:13, 25:11, 25:12, 25:17, 32:18, 42:12, 44:22, 46:20, 49:3, 49:10, 55:23, 56:2
**itself** [5] - 36:4, 37:20, 51:16

## J

**JAMES** [4] - 1:21, 2:4, 2:9, 2:19
**James** [1] - 5:19
**JEFFERSON** [1] - 1:22
**Jim** [2] - 5:17, 57:12
**JOE** [3] - 1:10, 1:12, 2:3
**Joe** [49] - 5:18, 5:23, 6:19, 6:24, 7:7, 7:10, 7:24, 8:2, 8:8, 9:9, 9:17, 10:20, 11:2, 11:6, 11:16, 13:19, 14:1, 14:3, 14:20, 16:12, 16:13, 18:18, 19:16, 19:19, 20:15, 20:23, 21:1, 21:8, 22:23, 23:8, 23:15,

26:24, 34:13, 34:21, 37:6, 38:12, 50:22, 50:24, 51:2, 51:11, 51:24, 51:25, 52:13, 52:19, 55:8, 56:25, 57:3, 58:7, 58:23
**Joe's** [9] - 16:10, 20:10, 24:14, 32:19, 34:15, 34:21, 35:2, 48:17, 52:13
**JOHN** [1] - 2:19
**JPML** [13] - 6:23, 6:25, 7:18, 22:5, 22:6, 24:11, 25:9, 25:15, 25:18, 53:3, 53:12, 54:6, 54:8
**JPML's** [2] - 56:18, 59:10
**JUDGE** [1] - 1:17
**Judge** [17] - 6:5, 7:13, 9:9, 9:16, 48:20, 48:21, 49:2, 49:9, 53:14, 53:21, 53:22, 53:23, 54:22, 55:12, 57:22, 57:25, 59:14
**judge** [7] - 7:17, 9:12, 12:25, 13:12, 31:7, 54:16
**judges** [1] - 40:22
**judgment** [19] - 11:16, 11:18, 12:3, 14:8, 14:23, 15:21, 16:6, 16:11, 16:18, 17:1, 17:20, 18:2, 18:17, 18:23, 35:23, 36:7, 37:15, 38:7, 52:4
**judgments** [1] - 19:19
**judicial** [2] - 44:25, 56:18
**Jurisdiction** [1] - 5:23
**jurisdiction** [37] - 7:22, 9:2, 9:3, 9:25, 10:1, 11:4, 13:23, 14:3, 14:19, 15:13, 18:8, 20:4, 20:8, 20:10, 20:16, 20:22, 22:14, 34:12, 34:14, 34:25, 35:2, 35:7, 37:2, 42:13, 44:22, 45:3, 47:2, 48:24, 49:1, 49:7, 49:8, 51:8, 51:15, 52:22, 59:9
**jurisdictional** [3] - 11:10, 47:6

## K

**KATZ** [1] - 1:24
**keep** [1] - 23:22

**kick** [1] - 55:18
**kind** [5] - 27:22, 40:1, 40:2, 47:10, 47:11
**kinds** [2] - 42:21, 45:6
**Kitchen** [1] - 17:25
**KLEIN** [1] - 2:8
**known** [1] - 15:5
**knows** [4] - 29:5, 29:9, 33:5, 35:17

## L

**L.L.C** [3] - 1:12, 2:18, 5:24
**LA** [5] - 1:22, 1:25, 2:10, 3:11, 3:14
**labeled** [1] - 41:4
**labels** [1] - 45:21
**LAFAYETTE** [1] - 1:22
**LAMAR** [1] - 2:15
**land** [1] - 28:15
**Lands** [2] - 9:1, 42:6
**language** [9] - 11:21, 11:23, 16:15, 17:14, 18:10, 18:11, 37:17, 38:5, 52:1
**last** [1] - 53:24
**latter** [1] - 25:3
**law** [21] - 9:3, 18:8, 21:22, 26:19, 27:8, 28:12, 29:2, 29:7, 29:9, 29:13, 29:14, 32:24, 33:8, 33:13, 33:15, 33:18, 34:3, 34:10, 36:24, 38:20, 44:6
**lawsuit** [2] - 8:14, 38:6
**lawsuits** [4] - 7:3, 8:7, 27:13, 45:9
**lawyers** [8] - 27:22, 40:19, 43:17, 43:21, 43:22, 44:5, 46:5
**lead** [1] - 42:1
**learn** [1] - 57:3
**least** [5] - 15:9, 30:2, 45:23, 48:18, 49:5
**left** [1] - 55:7
**legal** [12] - 15:11, 15:14, 15:23, 18:21, 19:12, 27:19, 37:1, 37:2, 40:5, 43:3, 49:15, 49:17
**legally** [1] - 40:2
**LEWIS** [2] - 2:18, 3:8
**liability** [5] - 31:20, 32:6, 33:19, 34:1
**liability-related** [1] - 31:20
**LIAISON** [1] - 1:20

**life** [1] - 37:22
**light** [1] - 42:4
**likely** [2] - 56:11, 56:12
**limit** [1] - 18:25
**limitation** [6] - 30:17, 32:21, 52:5, 53:15, 58:2
**limitations** [2] - 8:13, 29:18
**LIMITED** [1] - 3:7
**line** [2] - 22:16, 51:23
**LISKOW** [1] - 3:8
**listen** [1] - 19:23
**listening** [1] - 19:10
**litigants** [1] - 41:5
**litigate** [3] - 49:19, 51:4, 55:11
**litigated** [1] - 55:11
**Litigation** [4] - 12:15, 17:25, 54:12, 57:22
**litigation** [1] - 13:18
**LLC** [1] - 5:16
**located** [1] - 27:3
**look** [8] - 13:25, 15:12, 18:9, 25:8, 34:11, 36:25, 43:9, 47:25
**looking** [2] - 13:4, 18:14
**looks** [4] - 11:22, 12:4, 28:6
**loss** [2] - 33:25, 34:3
**loud** [1] - 53:17
**LOUISIANA** [3] - 1:1, 1:7, 2:20
**Louisiana** [3] - 48:12, 60:5, 60:6

## M

**M-I** [6] - 6:20, 8:1, 30:23, 32:6, 34:15, 58:18
**MAIN** [1] - 2:5
**major** [1] - 31:18
**Management** [2] - 14:13, 15:5
**management** [2] - 13:5, 13:11
**maneuvering** [8] - 22:22, 27:19, 27:23, 28:2, 30:25, 39:8, 39:24, 42:2
**maneuvers** [1] - 32:25
**manner** [1] - 25:5
**map** [1] - 21:3
**March** [5] - 7:24, 8:16, 10:20, 10:21, 12:7
**master** [3] - 14:14,

16:9, 19:5
**matter** [17] - 5:21,
21:24, 29:16, 29:18,
34:9, 34:25, 35:2,
35:7, 36:3, 37:23,
49:1, 54:5, 57:14,
57:16, 58:10, 58:13,
60:10
**matters** [5] - 6:13,
17:7, 17:10, 17:23,
36:5
**mature** [2] - 24:18,
25:7
**maturity** [1] - 58:24
**MDL** [60] - 5:10, 6:23,
7:8, 7:19, 7:22, 11:1,
12:10, 12:11, 12:25,
13:10, 13:13, 13:22,
14:10, 14:18, 16:4,
18:7, 19:11, 19:14,
20:19, 21:5, 21:9,
23:20, 24:1, 24:2,
24:5, 24:11, 24:25,
25:1, 25:9, 25:11,
25:15, 30:13, 30:17,
34:16, 34:18, 36:15,
36:17, 38:13, 43:19,
47:22, 48:13, 51:12,
51:15, 51:24, 52:12,
52:15, 52:16, 52:21,
52:22, 53:25, 54:22,
57:24, 58:3, 58:4,
59:5, 59:7, 59:10
**mean** [2] - 30:17, 41:5
**MECHANICAL** [1] -
3:16
**mechanism** [2] -
15:22, 19:12
**memoranda** [1] -
43:12
**mention** [3] - 40:8,
41:3, 47:24
**mentioned** [3] - 17:17,
35:13, 44:11
**mere** [1] - 17:18
**Merit** [1] - 60:4
**merry** [1] - 40:23
**merry-go-round** [1] -
40:23
**met** [2] - 46:1, 47:10
**MEXICO** [1] - 1:5
**Mexico** [1] - 5:11
**MI** [29] - 1:12, 2:18,
5:16, 5:24, 6:20,
7:10, 8:4, 8:11, 8:17,
9:6, 10:6, 10:8,
10:21, 11:5, 12:7,
20:7, 21:10, 25:3,
32:16, 34:4, 35:3,
36:11, 42:9, 44:11,

47:12, 47:25, 48:17,
49:19, 57:14
**MICHAEL** [1] - 2:5
**might** [6] - 15:17,
23:14, 23:16, 46:21,
48:21, 59:4
**miles** [1] - 24:13
**millions** [1] - 24:17
**mini** [1] - 33:13
**minute** [1] - 36:13
**misrepresentation** [1]
- 51:17
**Missouri** [2] - 12:11,
36:15
**MISTY** [1] - 2:14
**Modified** [1] - 12:14
**money** [3] - 28:1,
40:18, 40:21
**monition** [1] - 33:2
**monitions** [1] - 30:11
**monitions-related** [1]
- 30:11
**moreover** [1] - 18:24
**MORGAN** [1] - 2:18
**morning** [5] - 5:8, 6:4,
6:6, 6:14, 22:4
**most** [6] - 8:24, 13:6,
27:3, 28:22, 34:9,
44:9
**mostly** [1] - 32:18
**Motion** [1] - 5:22
**motion** [66] - 5:24,
7:10, 7:17, 9:17,
11:16, 11:17, 12:3,
14:8, 14:14, 14:16,
14:22, 14:23, 15:12,
16:6, 16:8, 16:11,
16:17, 16:18, 16:22,
17:7, 17:9, 17:11,
17:19, 17:20, 17:22,
18:1, 18:2, 19:2,
19:5, 30:11, 31:3,
35:15, 35:18, 35:23,
36:5, 36:7, 36:8,
37:14, 38:7, 39:12,
39:14, 41:14, 41:23,
42:24, 47:16, 47:20,
48:9, 48:18, 51:6,
51:7, 51:9, 52:3,
52:4, 52:25, 53:3,
53:4, 53:8, 56:12,
56:13, 57:23, 58:8,
58:10
**motions** [33] - 6:11,
7:11, 7:12, 7:18,
7:24, 10:22, 11:3,
16:23, 16:25, 17:1,
17:2, 17:3, 17:5,
18:17, 18:18, 19:1,
19:19, 22:17, 27:18,

34:12, 36:17, 36:19,
37:6, 41:18, 43:24,
44:14, 46:11, 47:14,
48:7, 52:18, 58:8,
58:12
**move** [2] - 27:24, 43:1
**moved** [1] - 6:21
**movie** [1] - 6:16
**moving** [1] - 27:25
**MR** [118] - 4:5, 4:6,
4:7, 4:8, 4:9, 4:10,
4:12, 5:13, 5:15,
5:17, 5:19, 6:3, 6:7,
6:10, 7:6, 7:9, 7:13,
7:16, 8:8, 8:19, 8:22,
8:25, 9:14, 9:21,
9:24, 10:3, 10:7,
10:8, 10:10, 10:13,
10:15, 10:18, 12:14,
12:22, 17:12, 18:4,
20:3, 21:14, 23:1,
23:6, 23:19, 24:22,
25:24, 26:2, 26:5,
26:9, 26:13, 26:25,
27:3, 27:6, 27:10,
27:12, 28:8, 28:10,
28:18, 29:4, 29:8,
29:11, 29:16, 29:18,
29:21, 30:2, 30:7,
30:10, 30:15, 30:18,
30:22, 31:2, 31:12,
31:16, 31:19, 31:24,
32:4, 32:8, 32:13,
32:22, 33:4, 33:15,
33:22, 34:17, 34:19,
39:1, 39:3, 39:6,
39:9, 40:7, 40:25,
41:2, 41:10, 41:16,
41:20, 41:25, 42:3,
43:4, 45:8, 47:18,
50:2, 50:4, 50:8,
50:11, 50:17, 50:19,
53:2, 53:16, 53:22,
54:2, 54:20, 54:24,
55:7, 56:5, 56:10,
56:17, 56:24, 57:8,
57:10, 57:12, 58:16,
58:18
**Multidistrict** [2] -
54:12, 57:22
**must** [1] - 36:7

**N**

**name** [2] - 7:15, 27:23
**named** [3] - 8:19,
50:9, 57:2
**natural** [1] - 28:15
**nature** [4] - 13:22,
33:12, 33:24, 52:12

**near** [1] - 44:9
**necessarily** [5] -
10:25, 41:8, 42:1,
43:3, 48:21
**necessary** [6] - 14:15,
18:17, 22:16, 31:20,
31:22, 46:10
**need** [10] - 15:10,
15:15, 23:23, 31:25,
36:25, 37:19, 45:15,
52:12, 52:14, 59:12
**needed** [2] - 15:24,
55:22
**needs** [2] - 25:7, 52:11
**negligence** [3] -
33:18, 33:25
**negotiations** [1] - 15:4
**never** [5] - 26:7, 38:19,
41:12, 46:2, 51:13
**New** [14] - 16:14,
16:15, 17:16, 18:10,
24:6, 24:9, 24:14,
24:15, 26:3, 26:6,
26:7, 26:8, 26:10
**new** [6] - 9:5, 35:19,
37:8, 51:18, 55:11,
56:12
**NEW** [5] - 1:7, 1:25,
2:10, 3:11, 3:14
**Newby** [3] - 43:13,
43:16, 59:7
**NEWBY** [1] - 43:14
**newest** [1] - 8:7
**next** [4] - 30:5, 30:20,
45:16, 47:23
**NO** [3] - 1:6, 1:11, 1:13
**non** [1] - 24:20
**nondiverse** [1] - 40:14
**none** [1] - 32:4
**nonetheless** [1] - 14:2
**normal** [2] - 13:12,
13:13
**normally** [1] - 13:8
**NORTH** [4] - 3:4, 3:5,
3:7, 3:8
**northwest** [1] - 27:5
**note** [4] - 14:11, 51:1,
54:3, 54:25
**noted** [4] - 14:5, 22:3,
28:12, 45:13, 46:4
**notes** [1] - 11:24
**nothing** [9] - 37:21,
46:18, 49:5, 51:10,
52:19, 53:24, 53:25,
55:4, 55:19
**notice** [10] - 9:14,
10:19, 16:7, 16:16,
17:1, 18:21, 37:20,
43:21, 44:4, 44:5
**notices** [1] - 13:22

**noting** [1] - 44:4
**nowhere** [1] - 44:9
**number** [5] - 12:20,
20:3, 26:9, 33:9
**Number** [1] - 35:12
**numbered** [1] - 60:9
**numerous** [1] - 43:17

**O**

**O'KEEFE** [1] - 1:25
**objected** [2] - 6:24,
7:7
**objection** [1] - 19:6
**observations** [2] -
34:6, 49:16
**observe** [1] - 56:25
**obtain** [1] - 48:2
**obtaining** [1] - 43:20
**obvious** [1] - 35:8
**obviously** [8] - 5:25,
6:11, 7:5, 48:5,
48:16, 50:12, 56:5,
58:7
**occurred** [2] - 8:15,
15:6
**occurring** [1] - 18:7
**occurs** [1] - 23:11
**OCSLA** [1] - 10:1
**OF** [3] - 1:1, 1:5, 1:16
**Official** [2] - 60:5,
60:16
**OFFICIAL** [1] - 3:13
**often** [3] - 21:21,
45:13, 46:15
**Oil** [6] - 5:10, 9:2,
28:20, 33:7, 33:17
**OIL** [2] - 1:4, 1:4
**oil** [2] - 23:10, 50:10
**omnibus** [1] - 19:5
**ON** [1] - 1:5
**once** [10] - 7:14, 8:3,
10:15, 10:19, 22:4,
33:2, 38:1, 38:2,
47:9, 53:11
**ONE** [1] - 3:9
**one** [28] - 8:7, 8:10,
8:11, 15:11, 15:17,
20:3, 21:21, 22:1,
22:7, 22:23, 27:14,
31:18, 33:9, 35:8,
36:7, 37:13, 41:22,
43:13, 46:21, 51:24,
53:19, 53:20, 54:9,
56:5, 57:2, 58:16,
59:9
**one-time** [1] - 37:13
**OPA** [8] - 10:1, 15:13,
28:20, 33:7, 33:11,

33:14, 33:17, 42:5
**open** [1] - 16:2
**opening** [2] - 43:12, 56:10
**operate** [2] - 10:4, 19:18
**operated** [1] - 16:11
**operates** [2] - 9:2, 16:20
**opinion** [11] - 12:10, 14:11, 16:14, 16:19, 48:21, 49:3, 49:5, 49:9, 51:20, 51:25, 55:12
**opportunity** [4] - 17:3, 17:4, 21:22, 32:14
**opposing** [1] - 44:3
**opposition** [3] - 5:25, 11:2, 55:8
**option** [7] - 28:18, 28:19, 48:7, 54:9, 54:10, 54:15
**oral** [1] - 35:20
**Order** [2] - 14:13, 15:5
**order** [21] - 7:1, 16:2, 16:24, 17:5, 18:24, 20:4, 20:6, 22:6, 22:15, 25:1, 25:10, 25:20, 35:5, 36:2, 46:9, 46:15, 47:6, 47:22, 54:5, 57:21, 58:24
**ORDER** [1] - 5:4
**orderly** [1] - 59:4
**orders** [10] - 13:5, 13:12, 19:18, 20:5, 20:13, 22:16, 25:15, 25:21, 43:20, 44:5
**original** [7] - 7:3, 8:7, 8:23, 41:11, 53:4, 54:11, 54:25
**originally** [2] - 8:8, 41:19
**Orleans** [8] - 16:14, 16:15, 17:16, 18:10, 24:6, 24:14, 26:3, 26:10
**ORLEANS** [5] - 1:7, 1:25, 2:10, 3:11, 3:14
**otherwise** [2] - 44:24, 58:8
**ought** [1] - 40:4
**ourselves** [3] - 22:3, 22:7, 25:7
**Outer** [2] - 9:1, 42:6
**outset** [1] - 28:11
**outside** [7] - 17:8, 17:10, 18:12, 19:2, 19:7, 31:17, 36:6

**outsmart** [1] - 28:24
**overt** [1] - 36:1
**overwhelming** [1] - 26:9
**own** [2] - 14:7, 55:7

## P

**PAGE** [1] - 4:3
**panel** [2] - 53:25, 54:22
**Panel** [2] - 54:12, 57:22
**panel's** [1] - 47:22
**panhandle** [1] - 27:5
**part** [3] - 25:4, 32:13, 32:16
**parte** [3] - 43:19, 43:20, 44:4
**participate** [2] - 29:25, 32:15
**participated** [1] - 30:3
**particular** [2] - 25:6, 25:12
**particularly** [3] - 22:10, 25:9
**parties** [22] - 8:6, 8:21, 10:24, 13:17, 14:13, 15:23, 16:17, 16:24, 18:22, 19:1, 19:8, 24:9, 24:17, 30:16, 32:11, 32:14, 43:15, 43:21, 44:17, 50:13, 57:2
**parties'** [2] - 13:1, 19:17
**party** [13] - 8:18, 11:15, 14:24, 16:6, 29:19, 29:23, 29:24, 30:4, 30:12, 30:13, 30:14, 50:10, 57:1
**pass** [1] - 12:24
**pattern** [1] - 59:4
**paying** [1] - 19:10
**pending** [7] - 9:19, 14:16, 23:10, 35:9, 35:15, 47:21, 53:3
**people** [2] - 23:9, 23:15
**Pepper** [3] - 60:3, 60:13, 60:14
**PEPPER** [1] - 3:13
**perfect** [1] - 28:6
**perhaps** [6] - 55:3, 55:14, 57:19, 57:22, 59:2, 59:11
**period** [1] - 33:2
**Permanent** [1] - 5:22
**permissible** [1] - 52:3

**permission** [3] - 52:8, 58:25, 59:8
**persistent** [1] - 44:25
**phone** [1] - 30:3
**physical** [2] - 33:21, 33:22
**place** [6] - 24:2, 26:12, 28:15, 32:8, 36:17, 58:22
**plaintiff** [11] - 11:25, 14:6, 37:13, 37:19, 37:23, 37:25, 38:5, 38:17, 38:24, 39:18, 52:2
**plaintiffs** [7] - 13:8, 17:4, 19:8, 20:25, 36:23, 38:13, 45:19
**PLAINTIFFS'** [1] - 1:20
**Plaintiffs'** [5] - 15:3, 15:8, 19:3, 19:4, 19:9
**plaintiffs'** [2] - 43:17, 45:14
**play** [1] - 37:22
**pleadings** [8] - 6:11, 15:10, 15:15, 17:8, 17:10, 17:23, 19:7, 36:6
**podium** [1] - 56:24
**point** [15] - 8:20, 21:10, 21:20, 23:23, 24:8, 24:16, 24:18, 24:24, 24:25, 29:12, 31:21, 39:10, 40:24, 55:14, 58:16
**pointed** [4] - 33:5, 35:25, 38:23, 40:8
**pointing** [1] - 58:5
**points** [2] - 21:17, 21:19
**Pollutant** [1] - 33:17
**Pollution** [4] - 9:2, 28:20, 33:6, 33:7
**portion** [3] - 14:10, 14:17, 14:18
**portions** [1] - 15:24
**position** [7] - 11:17, 13:15, 15:9, 16:8, 41:13, 51:13, 57:13
**possibility** [2] - 15:17, 58:5
**possible** [3] - 31:13, 33:10, 57:24
**powers** [1] - 58:21
**POYDRAS** [2] - 2:9, 3:10, 3:14
**practice** [1] - 32:24
**prayed** [1] - 51:10
**precedent** [2] - 13:21,

13:22, 45:22
**precisely** [1] - 34:13
**preempt** [1] - 9:2
**prejudice** [10] - 13:9, 20:1, 36:11, 37:14, 38:18, 39:22, 45:10, 45:12, 48:16, 52:9
**preliminary** [1] - 39:14
**premature** [1] - 55:3
**preparation** [1] - 16:23
**present** [1] - 50:11
**presentation** [1] - 44:12
**presented** [4] - 18:25, 35:5, 36:6, 57:1
**presently** [5] - 31:25, 35:9, 35:14, 45:24, 45:25, 48:18
**preserve** [2] - 20:6, 52:17
**presumptively** [1] - 49:6
**pretrial** [9] - 7:2, 7:23, 21:8, 25:19, 38:12, 51:8, 51:11, 51:16, 53:12
**pretty** [6] - 26:22, 29:10, 54:7
**prevail** [1] - 21:1
**prevailed** [1] - 39:8
**prevent** [3] - 46:6, 46:15, 55:19
**prevented** [1] - 13:5
**previous** [1] - 22:17
**previously** [1] - 20:5
**principles** [1] - 52:21
**prisoners** [1] - 45:13
**privy** [1] - 34:2
**pro** [1] - 45:14
**problem** [1] - 46:3
**procedural** [5] - 6:12, 6:15, 6:18, 13:16, 19:15
**procedurally** [1] - 34:8
**procedure** [1] - 53:6
**Procedure** [1] - 13:8
**procedures** [1] - 13:13
**proceeding** [10] - 7:20, 13:23, 21:8, 28:3, 32:14, 43:19, 48:13, 52:15, 52:16, 52:21
**proceedings** [16] - 6:23, 7:2, 7:23, 9:15, 11:1, 18:7, 19:11, 20:19, 21:5, 21:8, 47:21, 51:11, 51:17, 53:12, 59:15, 60:9
**PROCEEDINGS** [3] -

1:16, 3:16, 5:1
**process** [10] - 8:4, 15:21, 15:22, 18:23, 19:11, 36:5, 40:5, 45:1, 51:15, 51:16
**processes** [1] - 13:12
**PRODUCED** [1] - 3:16
**PRODUCTION** [2] - 3:3, 3:6
**products** [1] - 34:1
**PRODUCTS** [1] - 3:8
**professional** [1] - 46:25
**Professional** [1] - 60:4
**prohibit** [3] - 20:22, 21:7, 49:20
**prohibited** [2] - 36:16, 46:11
**project** [1] - 55:8
**promoted** [1] - 14:1
**prompt** [1] - 23:15
**promptly** [1] - 31:12
**proper** [3] - 7:19, 22:13, 39:19
**properly** [6] - 6:10, 14:3, 23:21, 24:1, 24:11, 25:17
**properties** [1] - 27:3
**property** [3] - 27:2, 27:7, 33:21
**proposed** [1] - 15:11
**proposition** [2] - 17:18, 44:21
**propriety** [2] - 37:12, 38:14
**prosecution** [2] - 8:14, 44:7
**protect** [5] - 20:4, 22:14, 22:17, 47:2, 48:24
**protected** [2] - 35:1, 46:20
**protecting** [1] - 25:14
**protestations** [1] - 20:10
**prove** [1] - 31:23
**provide** [2] - 28:22, 33:9
**provided** [2] - 36:20, 51:22
**provides** [3] - 9:1, 9:3, 11:14
**provisions** [2] - 13:7, 36:18
**PSC** [2] - 57:12, 57:13
**PTO** [9] - 14:12, 15:5, 15:19, 15:20, 16:22, 18:20, 35:21, 35:24
**public** [3] - 18:21,

40:3
**published** [1] - 42:4
**purported** [1] - 34:14
**purpose** [5] - 10:23,
11:23, 11:24, 18:15,
23:20
**purposes** [1] - 9:19
**pursuant** [1] - 57:21
**pursue** [6] - 26:15,
31:12, 31:14, 33:6,
33:8, 50:12
**pursued** [1] - 26:16
**pursuing** [6] - 27:16,
31:11, 37:5, 48:8,
48:16, 51:11
**put** [5] - 24:2, 27:21,
35:19, 44:13, 56:6
**puts** [1] - 33:17
**putting** [2] - 23:14,
58:22

## Q

**quick** [1] - 38:1
**quickly** [1] - 16:15
**quietly** [1] - 16:2
**quite** [3] - 21:22,
21:24, 33:23
**quote** [3] - 17:25,
23:8, 44:2
**Qureshi** [5] - 22:10,
22:11, 44:15, 44:19,
45:5
**QURESHI** [1] - 22:11

## R

**raised** [1] - 11:3
**raising** [1] - 18:22
**rather** [1] - 28:2
**Re** [2] - 12:14, 17:24
**RE** [1] - 1:4
**re** [2] - 5:10, 22:24
**re-removed** [1] - 22:24
**reach** [1] - 11:12
**reaches** [1] - 19:16
**read** [3] - 6:1, 12:20,
12:21
**ready** [1] - 38:1
**real** [1] - 24:16
**reality** [1] - 51:3
**really** [6] - 27:21,
27:22, 31:1, 37:1,
40:4, 55:17
**REALTIME** [1] - 3:13
**Realtime** [2] - 60:3,
60:15
**reason** [3] - 27:14,

27:16, 49:14
**reasons** [2] - 23:12,
35:7
**recent** [1] - 8:24
**recognize** [1] - 23:23
**recognized** [7] -
14:22, 22:19, 25:10,
33:16, 33:24, 36:1,
46:14
**recognizing** [2] -
23:20, 37:12
**Record** [2] - 5:23, 5:25
**record** [3] - 19:3,
30:17, 60:9
**RECORDED** [1] - 3:16
**refer** [1] - 52:13
**referenced** [2] - 38:19,
46:10
**references** [1] - 17:7
**referred** [1] - 14:12
**refile** [2] - 13:2, 20:16
**refiled** [1] - 8:2
**refiling** [4] - 8:15,
8:16, 20:11, 39:20
**refilings** [1] - 41:3
**reflected** [1] - 53:3
**refusals** [1] - 44:3
**regard** [3] - 45:25,
52:1, 59:11
**regarding** [1] - 51:18
**Registered** [2] - 60:3,
60:4
**rejected** [2] - 17:18,
42:7
**related** [5] - 9:14,
23:10, 24:4, 30:11,
31:20
**RELATES** [1] - 1:9
**relating** [1] - 32:18
**relief** [16] - 10:22,
11:3, 28:23, 40:16,
43:24, 47:11, 47:15,
48:1, 48:2, 48:6,
48:14, 48:16, 49:13,
49:24, 51:8, 51:9
**relitigate** [1] - 24:10
**rely** [2] - 20:2, 52:15
**remaining** [1] - 11:4
**remains** [1] - 17:10
**remand** [18] - 7:10,
7:18, 9:18, 20:14,
25:12, 25:19, 27:18,
35:14, 41:14, 41:18,
41:23, 42:24, 48:19,
54:23, 54:24, 56:12,
58:8, 58:10
**remanded** [6] - 23:4,
23:5, 54:13, 55:5,
55:16, 55:17
**remands** [1] - 31:9

**remedy** [1] - 33:10
**remember** [3] - 12:19,
15:2, 53:9
**reminiscent** [1] - 6:16
**removable** [1] - 9:23
**removal** [10] - 8:24,
9:1, 9:3, 9:15, 10:1,
42:6, 42:12, 46:16,
53:4
**removals** [3] - 8:23,
8:25, 9:6, 27:17,
41:4
**remove** [2] - 10:11,
42:10
**removed** [16] - 6:21,
7:4, 7:14, 9:4, 9:22,
20:18, 22:24, 26:20,
35:14, 39:13, 40:15,
41:12, 47:19, 49:4,
53:18
**RENARD** [59] - 2:4,
5:17, 26:2, 26:5,
26:9, 26:13, 26:25,
27:3, 27:6, 27:10,
27:12, 28:8, 28:10,
28:18, 29:4, 29:8,
29:11, 29:16, 29:18,
29:21, 30:2, 30:7,
30:10, 30:15, 30:18,
30:22, 31:2, 31:12,
31:16, 31:19, 31:24,
32:4, 32:8, 32:13,
32:22, 33:4, 33:15,
33:22, 34:17, 34:19,
39:1, 39:3, 39:6,
39:9, 40:7, 40:25,
41:2, 41:10, 41:16,
41:20, 41:25, 42:3,
43:4, 45:8, 47:18,
50:2, 50:4, 50:8,
50:11
**Renard** [5] - 5:17,
5:19, 26:1, 50:7,
52:24
**RENARD**..................
.......................... [1] -
4:7
**renewal** [1] - 52:10
**replies** [4] - 6:1, 11:6,
11:7, 44:12
**reply** [2] - 35:18, 35:20
**REPORTER** [2] - 3:13,
3:13
**Reporter** [7] - 60:3,
60:4, 60:5, 60:15,
60:16
**REPORTER'S** [1] -
60:1
**represent** [2] - 26:15,
51:21

**representation** [1] -
15:18
**represented** [2] - 19:8,
43:19
**representing** [1] -
46:5
**reprimand** [1] - 46:1
**request** [5] - 6:24,
47:12, 49:24, 54:4,
54:6
**requested** [2] - 49:13,
51:9
**requests** [1] - 44:4
**require** [3] - 47:5,
58:25, 59:7
**required** [1] - 16:16
**requiring** [1] - 49:18
**reraise** [1] - 55:23
**resident** [1] - 26:20
**resolution** [1] - 51:14
**resolve** [1] - 18:21
**resolved** [1] - 48:19
**resolves** [1] - 11:11
**resources** [1] - 40:18
**respect** [12] - 25:8,
25:15, 25:21, 30:18,
30:22, 32:5, 34:7,
41:21, 43:6, 49:17,
58:20, 58:23
**respectfully** [6] - 34:9,
35:6, 42:17, 44:10,
46:17, 51:10
**respects** [1] - 26:10
**respond** [1] - 17:4
**response** [7] - 15:18,
16:8, 17:12, 19:5,
44:13, 56:11
**responses** [3] - 11:6,
18:4, 36:8
**responsibilities** [1] -
46:25
**responsible** [3] -
50:10, 57:1, 57:2
**restraining** [2] -
43:20, 44:5
**result** [1] - 36:12
**retain** [1] - 22:14
**Rice** [1] - 12:15
**RICHTER** [1] - 2:8
**RIG** [1] - 1:4
**Rig** [1] - 5:11
**rights** [3] - 13:2, 37:5,
37:6
**rise** [2] - 5:7, 50:21
**risky** [2] - 29:10, 32:25
**RMR** [2] - 3:13, 60:14
**road** [1] - 21:3
**ROBERT** [1] - 2:4
**role** [1] - 37:22
**RONQUILLO** [1] -

2:12
**ROOM** [1] - 3:14
**round** [2] - 39:7, 40:23
**route** [1] - 37:19
**Roy** [1] - 57:12
**ROY** [4] - 1:20, 1:21,
57:10, 57:12
**ROY**............................
................... [1] -
4:10
**rude** [1] - 44:2
**Rule** [49] - 7:25, 11:14,
11:21, 11:23, 11:24,
12:3, 12:12, 13:1,
13:4, 13:7, 13:14,
14:1, 14:5, 14:18,
14:25, 15:12, 16:5,
17:7, 17:8, 17:11,
18:6, 18:23, 19:1,
19:2, 19:24, 20:1,
22:14, 35:11, 35:22,
36:4, 36:5, 36:10,
36:13, 36:18, 36:19,
36:22, 37:7, 37:18,
38:15, 39:22, 42:18,
43:7, 44:24, 45:10,
46:7, 46:11, 49:12,
56:13
**rule** [10] - 9:11, 10:4,
18:15, 28:5, 33:25,
34:3, 38:7, 40:4,
40:5, 41:6
**ruled** [1] - 24:10
**Rules** [1] - 13:7
**rules** [3] - 9:11, 14:16,
41:8
**ruling** [8] - 20:17,
40:11, 41:20, 42:4,
43:3, 55:3, 55:20,
57:17
**rulings** [5] - 7:17,
22:17, 23:25, 38:12,
56:17
**run** [1] - 59:5
**running** [1] - 37:23

## S

**S-L-E-E-T** [1] - 7:16
**s/Cathy** [1] - 60:13
**sanction** [1] - 46:1
**sanctioned** [1] - 22:16
**sanctions** [4] - 22:16,
38:8, 45:3, 47:11
**satisfy** [1] - 18:18
**save** [1] - 39:20
**school** [1] - 21:22
**se** [1] - 45:14
**seated** [1] - 5:8

**second** [2] - 36:14, 41:11
**secret** [1] - 16:1
**section** [1] - 16:18
**see** [4] - 11:19, 21:23, 55:16, 57:19
**seek** [1] - 43:24
**seeking** [7] - 7:25, 10:22, 34:13, 43:19, 48:13, 51:7
**select** [3] - 26:15, 28:21, 28:22
**selected** [2] - 26:18, 46:23
**selection** [1] - 37:4
**sends** [1] - 31:7
**sense** [2] - 34:1, 51:2
**sent** [1] - 7:1
**separate** [6] - 6:19, 8:11, 27:13, 36:10, 37:7, 58:2
**September** [1] - 15:7
**sequential** [1] - 45:15
**series** [1] - 15:4
**SERV** [1] - 1:10
**served** [1] - 10:20
**Services** [3] - 5:14, 6:8, 10:10
**SERVICES** [1] - 2:12
**session** [1] - 5:7
**several** [1] - 7:9
**shared** [1] - 20:25
**Shelf** [2] - 9:1, 42:6
**SHELL** [1] - 3:9
**SHER** [1] - 2:8
**shopping** [4] - 27:19, 37:4, 41:4, 43:9
**shortest** [1] - 37:18
**side** [1] - 56:14
**sideline** [1] - 24:10
**sides** [1] - 59:3
**similar** [5] - 5:24, 43:15, 43:25, 53:14
**simply** [5] - 39:19, 42:24, 51:17, 53:10, 56:25
**simultaneously** [1] - 48:9
**single** [2] - 45:11, 51:24
**sitting** [1] - 53:8
**situation** [6] - 20:21, 21:2, 21:4, 44:23, 45:6, 53:18
**Sleet** [10] - 7:13, 7:17, 9:9, 9:16, 48:21, 53:21, 53:22, 53:23, 54:22, 57:22
**sleet** [1] - 7:16
**smart** [1] - 40:14

**so-called** [1] - 33:13
**sole** [4] - 37:3, 37:5, 43:23, 44:8
**solely** [1] - 27:8
**someone** [1] - 44:23
**sometimes** [3] - 23:11, 23:21, 41:8
**somewhat** [1] - 6:15
**soon** [1] - 12:24
**sophisticated** [1] - 46:5
**sorry** [4] - 12:14, 19:21, 34:17, 47:18
**sort** [1] - 6:16
**sought** [4] - 6:22, 34:25, 48:2, 48:6
**Southern** [3] - 22:10, 39:19, 39:21
**SPEAKERS** [1] - 4:3
**Specialty** [2] - 38:25, 39:3
**specific** [5] - 12:10, 15:10, 15:15, 17:5, 19:14
**specifically** [13] - 11:21, 11:24, 12:2, 13:4, 13:13, 14:12, 14:22, 15:8, 16:3, 23:16, 24:22, 25:12, 53:9
**spent** [2] - 24:17, 28:2
**SPILL** [1] - 1:4
**Spill** [1] - 5:10
**spill** [2] - 23:10, 50:10
**SQUARE** [1] - 3:9
**ST** [3] - 1:10, 1:12, 2:3
**St** [58] - 5:18, 5:23, 6:19, 6:24, 7:7, 7:10, 7:24, 8:2, 8:8, 9:9, 9:17, 10:20, 11:2, 11:6, 11:16, 13:19, 14:1, 14:3, 14:20, 16:10, 16:12, 16:13, 18:18, 19:16, 19:19, 20:10, 20:15, 20:23, 21:1, 21:8, 22:23, 23:8, 23:15, 24:14, 26:24, 32:19, 34:13, 34:15, 34:21, 35:2, 37:6, 38:12, 48:17, 50:22, 50:24, 51:2, 51:11, 51:24, 51:25, 52:13, 52:19, 55:8, 56:25, 57:3, 58:7, 58:23
**stand** [1] - 51:3
**standard** [4] - 12:4, 18:5, 18:6, 18:18
**standards** [2] - 14:1, 19:16

**stands** [1] - 45:7
**Stark** [1] - 49:9
**Stark's** [3] - 48:20, 49:2, 55:12
**start** [1] - 11:9
**started** [3] - 6:17, 8:4, 23:3
**starting** [2] - 20:12, 21:18
**state** [41] - 6:19, 7:4, 7:9, 7:14, 8:3, 8:16, 9:3, 9:6, 9:7, 13:3, 20:12, 23:4, 23:5, 23:9, 23:17, 23:22, 26:18, 26:19, 26:20, 27:8, 27:11, 28:12, 29:13, 31:9, 31:10, 33:8, 33:13, 39:13, 40:13, 41:4, 42:20, 43:17, 44:2, 46:15, 46:19, 54:14, 55:16, 55:17, 55:24, 56:13
**State** [3] - 33:16, 33:24, 60:5
**STATES** [2] - 1:1, 1:17
**States** [5] - 22:11, 37:12, 57:3, 60:6, 60:17
**status** [1] - 15:6
**statutes** [1] - 9:4
**stay** [7] - 6:21, 7:11, 7:12, 7:18, 26:11, 47:21, 53:3
**Steering** [6] - 15:3, 15:8, 19:3, 19:4, 19:9
**STENOGRAPHY** [1] - 3:16
**step** [1] - 22:7
**STEPHEN** [1] - 1:24
**still** [2] - 29:23, 30:4
**straight** [1] - 12:6
**strange** [2] - 26:22, 50:6
**strategy** [4] - 37:5, 46:21, 46:24, 49:17
**STREET** [6] - 1:22, 2:5, 2:9, 2:20, 3:10, 3:14
**strict** [2] - 33:18, 34:1
**strongest** [1] - 37:11
**study** [1] - 21:22
**stuff** [4] - 27:22, 39:25, 40:1, 40:2
**styled** [1] - 34:20
**subject** [8] - 30:7, 30:10, 34:25, 35:1, 35:7, 47:23, 49:1, 51:14
**submit** [2] - 35:6,

46:17
**subsequently** [2] - 16:3, 17:3
**substitute** [1] - 36:17
**successful** [2] - 41:22, 41:23
**sue** [2] - 28:14, 28:15
**sued** [5] - 10:16, 28:16, 50:1, 50:9, 50:15
**suffers** [1] - 37:25
**suing** [1] - 28:16
**Suit** [2] - 11:13, 55:1
**suit** [9] - 8:16, 8:17, 12:1, 23:9, 27:11, 27:14, 38:19, 42:9, 52:6
**SUITE** [4] - 2:5, 2:15, 2:20, 3:10
**suits** [3] - 8:11, 8:19, 44:8
**summary** [20] - 11:16, 11:18, 12:3, 14:7, 14:23, 15:21, 16:6, 16:11, 16:17, 17:1, 17:20, 18:2, 18:17, 18:23, 19:19, 35:23, 36:7, 37:14, 38:7, 52:4
**superior** [6] - 35:13, 37:8, 41:16, 42:10, 49:4, 49:21
**support** [2] - 21:19, 57:13
**suppose** [1] - 28:19
**Supreme** [1] - 33:24
**sur** [1] - 11:7
**sur-replies** [1] - 11:7
**surest** [1] - 37:19
**surrounding** [1] - 15:4
**SUSAN** [1] - 2:14
**swear** [1] - 12:20
**system** [2] - 23:25, 45:17

## T

**table** [1] - 44:6
**tactical** [1] - 27:15
**tag** [1] - 58:3
**tag-along** [1] - 58:3
**talks** [2] - 18:14, 36:4
**Tanner** [4] - 5:15, 21:13, 21:14, 58:18
**TANNER** [11] - 2:18, 5:15, 10:8, 21:14, 23:1, 23:6, 23:19, 24:22, 25:24, 58:16, 58:18

**TANNER.................. ..................... [2] - 4:6, 4:12
**TARTER** [1] - 2:19
**tee** [1] - 15:10
**temporary** [2] - 43:20, 44:5
**terminated** [1] - 52:8
**terms** [5] - 8:13, 24:18, 25:14, 31:10, 44:9
**testimony** [1] - 32:15
**tethered** [1] - 15:15
**Texas** [3] - 22:10, 39:20, 39:21
**THE** [118] - 1:4, 1:5, 1:10, 1:12, 1:16, 1:20, 2:3, 4:11, 5:7, 5:8, 5:10, 5:12, 5:20, 6:6, 6:9, 7:3, 7:7, 7:12, 7:15, 8:6, 8:18, 8:21, 8:23, 9:11, 9:20, 9:22, 10:2, 10:5, 10:11, 10:14, 10:16, 12:13, 12:18, 17:6, 17:14, 19:22, 21:12, 22:21, 23:2, 23:7, 24:20, 25:23, 25:25, 26:3, 26:6, 26:11, 26:22, 27:2, 27:5, 27:7, 27:11, 27:13, 28:9, 28:14, 28:24, 29:6, 29:10, 29:15, 29:17, 29:19, 29:23, 30:4, 30:8, 30:13, 30:16, 30:20, 30:24, 31:4, 31:14, 31:17, 31:22, 32:2, 32:7, 32:10, 32:20, 32:23, 33:12, 33:20, 34:16, 34:18, 38:25, 39:2, 39:4, 39:7, 39:11, 40:10, 41:1, 41:7, 41:13, 41:18, 41:22, 42:1, 42:23, 44:20, 47:17, 50:1, 50:3, 50:5, 50:9, 50:16, 50:18, 52:24, 53:14, 53:17, 53:23, 54:9, 54:21, 55:2, 55:10, 56:9, 56:16, 56:22, 57:6, 57:9, 57:11, 57:15, 58:17, 59:12
**theory** [1] - 52:5
**therefore** [5] - 11:18, 13:21, 36:23, 40:15, 52:7
**thereunder** [1] - 21:25
**thinking** [2] - 53:17,

57:18

**thinks** [1] - 54:8

**Third** [3] - 17:24, 18:5, 18:6

**third** [2] - 54:14, 54:15

**THIS** [1] - 1:9

**thoughts** [1] - 54:11

**three** [8] - 8:9, 8:11, 27:13, 50:12, 50:13, 50:14, 53:20, 54:18

**threshold** [2] - 34:24, 48:23

**THURSDAY** [1] - 1:7, 5:2

**timeline** [1] - 16:24

**timing** [1] - 16:21, 25:4

**title** [2] - 34:11, 51:7

**TO** [2] - 1:9, 5:4

**today** [8] - 9:19, 12:6, 35:21, 48:10, 56:4, 57:15, 57:17, 58:12

**took** [1] - 18:24

**tool** [1] - 38:1

**top** [1] - 35:19

**topics** [1] - 24:4

**touchstone** [1] - 15:14

**tracks** [2] - 50:23, 50:24

**tracts** [1] - 48:11

**transcript** [1] - 60:8

**TRANSCRIPT** [2] - 1:16, 3:16

**transfer** [21] - 6:22, 6:25, 7:1, 7:7, 7:8, 7:19, 22:6, 47:16, 47:20, 47:22, 52:25, 53:5, 54:5, 54:6, 54:16, 55:8, 55:9, 57:21, 57:23

**transferred** [14] - 7:22, 16:3, 20:19, 23:1, 23:2, 40:11, 53:11, 53:12, 53:15, 54:12, 55:16, 56:19, 57:21, 58:2

**transferring** [2] - 25:10, 39:19

**transfers** [2] - 27:18, 54:22

**Transocean** [8] - 8:10, 8:12, 25:3, 29:11, 29:16, 33:3, 50:14, 58:1

**treated** [2] - 23:21, 36:7

**trial** [2] - 32:17, 40:11

**troubles** [1] - 40:20

**troublesome** [1] - 30:25

**troubling** [1] - 30:25

**true** [2] - 30:12, 60:7

**try** [6] - 18:25, 20:16, 23:15, 24:9, 32:11, 59:4

**trying** [2] - 17:15, 48:11

**turn** [2] - 14:23, 21:10

**turns** [1] - 28:24

**two** [19] - 7:3, 8:7, 17:16, 18:4, 22:23, 33:9, 35:7, 35:12, 41:23, 43:11, 47:13, 47:15, 48:6, 48:11, 50:23, 50:24, 53:19, 54:18, 58:6

**TX** [3] - 2:6, 2:15, 2:20

**type** [2] - 20:21, 21:1

**typical** [1] - 39:17

## U

**ultimate** [1] - 51:14

**ultimately** [7] - 6:25, 7:21, 11:11, 21:3, 23:2, 49:1, 54:11

**unconditional** [1] - 45:23

**under** [36] - 7:22, 7:25, 9:4, 10:1, 13:9, 13:14, 13:21, 14:11, 14:24, 17:5, 18:1, 20:1, 21:4, 22:13, 25:22, 27:8, 28:19, 29:2, 29:6, 29:9, 29:13, 33:6, 33:13, 36:5, 36:10, 37:6, 42:18, 44:24, 45:10, 46:7, 51:15, 54:17, 57:16, 58:15, 58:21

**underlie** [1] - 52:21

**underlying** [3] - 47:1, 47:6, 52:5

**understood** [2] - 19:11, 30:2

**undertaken** [1] - 20:23

**underwent** [1] - 15:4

**undoubtedly** [1] - 26:13

**unfettered** [5] - 11:18, 14:24, 16:7, 19:20, 52:2

**unilateral** [1] - 52:2

**unique** [2] - 13:16, 19:14

**United** [5] - 22:11, 37:12, 57:3, 60:6, 60:17

**UNITED** [2] - 1:1, 1:17

**unless** [2] - 17:9, 55:5

**unlike** [1] - 54:3

**unprecedented** [2] - 49:14

**unpublished** [1] - 36:15

**unpunished** [1] - 39:18

**up** [10] - 9:7, 15:10, 21:3, 23:12, 40:24, 42:25, 56:10, 57:20, 57:23, 58:10

**utilizing** [1] - 37:13

## V

**valid** [2] - 55:21

**various** [1] - 23:12

**venue** [5] - 39:15, 39:16, 39:19, 40:12

**verbiage** [1] - 44:17

**version** [1] - 33:17

**versus** [1] - 36:3

**viable** [3] - 29:2, 29:13, 33:9

**view** [1] - 11:20

**views** [1] - 22:13

**violation** [1] - 52:20

**virtually** [2] - 35:25, 44:7

**vis** [1] - 59:10

**vis-a-vis** [1] - 59:10

**voice** [1] - 52:17

**VOICES** [1] - 59:14

**volition** [1] - 14:7

**voluntarily** [9] - 7:25, 13:20, 14:6, 16:12, 19:25, 36:10, 37:7, 38:18, 44:24

**voluntary** [8] - 10:19, 11:5, 18:3, 22:12, 22:20, 27:18, 59:1, 59:8

**vu** [5] - 9:20, 9:21, 20:20, 22:3, 23:23

## W

**wait** [4] - 29:19, 53:24, 53:25, 55:16

**waive** [1] - 32:1

**wants** [1] - 6:2

**warranted** [1] - 43:24

**waste** [2] - 24:12, 40:18

**wasting** [2] - 6:12, 40:21

**wealth** [1] - 44:15

**week** [1] - 8:12

**weeks** [1] - 47:23

**well-run** [1] - 59:5

**Westlaw** [1] - 12:15

**WHEREUPON** [1] - 59:15

**whole** [2] - 8:3, 40:16

**wisdom** [1] - 46:21

**wise** [2] - 57:19, 58:1

**WL** [1] - 12:16

**wonder** [1] - 28:1

**wondered** [1] - 21:22

**wording** [1] - 14:5

**words** [9] - 13:11, 34:2, 34:21, 35:1, 36:22, 38:10, 49:12, 49:20, 58:3

**WRIGHT** [1] - 1:20

**Writs** [15] - 11:12, 20:2, 21:17, 21:21, 21:24, 25:16, 25:22, 34:13, 37:2, 47:5, 47:15, 48:1, 49:18, 55:1, 58:21

**written** [3] - 36:22, 45:24, 45:25

## Y

**yesterday** [2] - 9:8, 29:12

**York** [8] - 5:13, 6:2, 6:7, 21:19, 22:2, 23:7, 24:17, 50:18

**YORK** [39] - 2:13, 5:13, 6:3, 6:7, 6:10, 7:6, 7:9, 7:13, 7:16, 8:8, 8:19, 8:22, 8:25, 9:14, 9:21, 9:24, 10:3, 10:7, 10:10, 10:13, 10:15, 10:18, 12:14, 12:22, 17:12, 18:4, 20:3, 50:17, 50:19, 53:2, 53:16, 53:22, 54:2, 54:20, 54:24, 55:7, 56:5, 56:10, 56:17

**YORK**....................... .................... [2] - 4:5, 4:8

**yourself** [1] - 28:24