UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig | * | MDL NO. 2179 |
| "Deepwater Horizon" in the Gulf | * | |
| Of Mexico, on April 20, 2010 | * | SECTION: J |
| | * | |
| Applies to: All Cases | * | JUDGE: BARBIER |
| | * | MAG. JUDGE: SHUSHAN |

**************************************************************************

## DYNAMIC AVIATION GROUP'S MEMORANDUM REGARDING THE PROPOSED FEBRUARY 2012 TRIAL PLANS

MAY IT PLEASE THE COURT:

In connection with the upcoming February 2012 trial, the Court has ordered the parties to submit proposals regarding a trial plan. BP, Transocean, the Plaintiffs' Steering Committee, Halliburton, Anadarko, MSRC, DRC, the United States, the State of Louisiana, Cameron and other parties have submitted proposed trial plans and/or Memoranda supporting or objecting to the trial plans of other parties. Dynamic Aviation Group, Inc., ("Dynamic") now submits its response to the plans submitted, as well as its position on how the use of representative plaintiffs against the Responder Defendants[1] is not practical.

I. **TRIAL PLANS SUBMITTED BY OTHER PARTIES**

Dynamic has reviewed the trial plans and accompanying memoranda submitted by many of the parties to this litigation. Obviously, there are varying views on what issues should be resolved at the trial that is scheduled to commence on February 27, 2012. Most of the plans submitted suggest that the trial should be completed in phases, but the scope and timing of those phases is generally an issue in dispute. However, the trial plans submitted by the parties are

---

[1] Dynamic is one of approximately a dozen defendants that have been identified as either "Responder Defendants" or the "Dispersant Defendants". These entities had different levels of involvement in the response to the spill.

consistent on one point, i.e., that the February 27, 2012 trial should <u>not</u> include claims against the Responder Defendants. Dynamic, as one of the Responder Defendants, suggests that parts of certain plans are appropriate.

MSRC, another Responder Defendant, has objected to the trial plans that suggest that the trial of issues and claims related to the Responder Defendants be delayed until some undetermined time in the future. MSRC goes on to ask the Court to issue a trial plan that provides for a prompt resolution of the B(3) claims against the Responder Defendants. Dynamic agrees with MSRC on both points. Dynamic also agrees with some portions of the trial plans submitted by other parties to the litigation. Those parties, BP, Transocean and the PSC among others, have stated that the issues germane to the cause(s) of the April 20, 2010 explosion and the resulting personal injuries, death and property damage are not relevant to the Responder Defendants. In fact most, if not all, parties have admitted that the Responder Defendants are not liable for the events of April 20, 2010. Therefore, it would be inappropriate for the Responder Defendants to be required to attend the trial, which by some accounts is expected to last three months. This is particularly true because that time could be used more efficiently conducting discovery germane to the claims against the Responder Defendants, a proposal for which is more fully set further below.

At least one suggested trial plan, BP's, appears to ask the Court to make one liability determination that would be applied to all phases of the trial. As is more fully set forth in the Halliburton memorandum, this would be unfair to all defendants, including the Responder Defendants. Dynamic suggests that the trial plan suggested by another Responder Defendant, DRC, is the most logical and efficient way to proceed with the litigation and determination of the numerous issues that are before this Court in this matter. Additionally Dynamic has set forth

below its suggestion to the Court for proceeding with discovery on the claims and issues pertaining to the Responder Defendants in a manner consistent with the DRC trial plan.

## II. THE CLAIMS AGAINST THE RESPONDER DEFENDANTS

No particular plaintiff alleging an act or omission by any Responder Defendant(s) has been identified. On or about February 11, 2011 Plaintiffs' Liaison Counsel circulated an "MDL Case List with Bundles". That list included 12 cases that are alleged to be included in the B(3) Bundle. However what injuries are being claimed, and the source of those injuries, has yet to be identified. More recently, during status conferences with the Magistrate Judge and this Court, Plaintiffs' Liaison Counsel have suggested that there are more than 30,000 plaintiffs, either individuals or juridical entities that have submitted short form claims or otherwise submitted claims. It is likewise unknown who among of those plaintiffs are pursuing claims against the Responder Defendants, or other defendants in this litigation. Not a single B(3) Bundle plaintiff in the B(3) Bundle Master Complaint has been identified. Instead, the plaintiffs are described in general categories, to wit:

> Citizens of Florida, Alabama, Mississippi, Louisiana and Texas that fall into five basic categories:
>
> a. Boat Captains and crew involved in Vessels of Opportunity (VoO) Program;
> b. Workers on decontaminating vessels;
> c. Vessel captains and crew not in the VoO Program but who were exposed;
> d. Cleanup workers and beach personnel involved in cleanup activities; and
> e. Residents who live and work in close proximity to coastal waters."

The B(3) Master Complaint also makes broad generalizations about the types of damages being sought, but no details of the types or amounts of damages claimed by any plaintiff has been set forth. Likewise, no discovery on the identity, injuries and/or damages of any plaintiff(s) has been indicated and no initial disclosures on those issues have been provided. Upon information and belief there has been no written or oral discovery directed to or from the Responder

Defendants. (One possible exception is the recent Omnibus Discovery Request from plaintiffs regarding the various defendants' insurance arrangements.) In short, the Responder Defendants have no substantive information about the claims being made against them in this matter.

### III. LISTING AND PARTICIPATION OF RESPONDER DEFENDANTS

Although, because of the bundling of the Complaints by the Court in this matter, the Responder Defendants have been grouped together, the activities of the various responders in responding to the BP spill differ amongst the defendants. The following is a representative listing of the Responder Defendants that have been sued in the B(3) Bundle, as well as a brief description of what activity or activities the particular Responder(s) performed:

| Responder | Activity |
|---|---|
| MSRC | Contracted with BP to provide aircraft and vessels to respond to the spill |
| NRC | Contracted with BP to provide aircraft and vessels to respond to the spill |
| Lynden Air | Provided C-130 aircraft to apply dispersants in the Gulf of Mexico, greater than 15 miles from the coast, at request of MSRC |
| DRC Emergency Services, LLC | Provided vessels for the VoO program pursuant to contract with BP |
| O'Brien's Response Management, Inc. | Particular response activities presently unknown |
| Dynamic Aviation Group, Inc. | Provided spotter and dispersant aircraft pursuant to Agreement between BP and MSRC, all dispersant activities |
| Lane Aviation, Inc. | Provided aerial applications of dispersants pursuant to an agreement with NRC, all applications done between 3 and 15 miles of the coast |
| International Air Response | Provided C-130 Aircraft to apply dispersants |

| | |
|---|---|
| Airborne Support, Inc. | Provided aircraft to apply dispersants |
| Gulf Offshore Logistics, Inc. | Provided response vessels to assist in cleanup |
| Island Ventures II, LLC | Provided response vessels to assist in cleanup |
| Nalco | Provided dispersants used by Responders |

In addition to providing different types of services, different responders were assigned to different locations. With regard to aerial applications of dispersants some aircraft were assigned spraying duties, others were only spotter aircraft. Single engine aircraft could only fly within 15 miles of the coast, while multi-engine aircraft only applied dispersant beyond 15 miles from the coast. Some aircraft were based in Mississippi, others in Louisiana. Some aircraft only applied dispersant east of the Mississippi River, others only West, and still others on both sides. Additional Responder Defendants include vessel owners or vessels that, upon information and belief, did not apply dispersants, but accomplished other tasks. Finally, the last of the above listed Responder Defendants, Nalco, did nothing more than manufacture the dispersant. As the Court can see from the foregoing, although bundled for the purposes of the litigation, the claims against the Responder Defendants vary greatly.

## IV. HYPOTHETICAL FACT SCENARIOS

In order to present examples of how the issues germane to a particular plaintiff (once the plaintiffs have been identified) will not be germane to all the Responder Defendants, and indeed will not be germane to all of the B(3) Bundle plaintiffs, Dynamic submits the following hypothetical factual scenarios. The scenarios presented below are only a small portion of the potential scenarios that might arise.

A. On May 25, 2010 Tom Thibodaux and his neighbor Joe Smith left Venice, LA on Tom's 25 foot center console fishing boat. When they left Venice they were forced to navigate

5

through an oil slick that had not yet been contained or dispersed. These gentlemen eventually got to the fishing grounds in the Main Pass Area of the Gulf of Mexico. While fishing approximately 35 miles off the Louisiana coast, Tom observed a King Air aircraft flying in the area. Joe subsequently observed a C-130 aircraft flying overhead. After their fishing trip both Tom and Joe began to feel ill. Tom and Joe now believe that one of the aircraft flying in the area was applying dispersants, and that the dispersants made them ill. However, Tom believes that the smaller King Air aircraft was the offending aircraft, while Joe is certain that the C-130 aircraft's dispersants caused his problems. Joe also believes that his exposure to fumes from the oil slick contributed to his illness. Finally Tom is asserting a claim for damage to his boat caused by the oil slick that was not contained prior to May 25, 2010. Therefore, the potentially appropriate defendants to Tom's claims would differ from the potentially appropriate defendants to Joe's claims.

        B.     Also on May 25, 2010 Sonny Daze and Charlie Cleanup were working as cleanup workers on the shores of Destin, FL. Both Sonny and Charlie believe that they have suffered personal injuries as a result of exposure to oil and dispersants, but they do not know who applied the dispersants, or when or where the dispersants that made them ill were applied. Both are asserting claims for personal injury, neither is asserting a property damage claim. Although Sonny and Charlie may pursue the same defendants for their injuries, it is undisputed that not all Responder Defendants would be liable to both. Only those Responder Defendants that applied dispersants in Florida's coastal waters would potentially be liable to these two plaintiffs. Conversely Responder Defendants that did not apply dispersants would not be appropriate defendants.

        C.     Three weeks later, on June 15, 2010 Ken Cowboy and Jerry Jones were at Ken's shore side camp near Galveston, Texas. While sitting on the pier fishing, Ken noted that oil had washed up on his pier. Jerry's experience in the oil business let him know that not only was there oil in those waters, but dispersants as well. All dispersants applied in the area were applied between 3 and 15 miles from the Texas coast. Both men became ill and have filed suit. Ken is seeking damages for personal injury and property damages, Jerry is only seeking damages for his personal injuries and medical expenses. Again, the appropriate defendants to the claims of Ken and Jerry would differ. Likewise, Responder Defendants that conducted operations outside Texas waters or beyond would not be appropriate defendants.

## V.   HOW THE RESPONDER/DISPERSANT OPERATIONS WORKED AND WHY THE HYPOTHETICAL CLAIMS DESCRIBED ABOVE WOULD NOT APPLY TO ALL RESPONDER DEFENDANTS

The testimony that will be presented in this case will be that certain Responder Defendants were given certain tasks, and were assigned certain geographic regions to perform those tasks. Applying the geographic boundaries and other limitations on the activities of particular defendants to the fact scenarios detailed above will demonstrate why using

representative plaintiffs against the Responder Defendants is not feasible. As an example, without commenting on the viability of any claims against it, Responder Lane Aviation used a single engine AT 802 aircraft, which aircraft had previously been used for crop dusting activities, when applying dispersants. As a result Lane was required to make all of its applications between 3 and 15 miles of the coast. No dispersants were applied within three miles of the coast of any state, and Lane was not allowed to spray beyond 15 miles from the coast because it used a single engine aircraft. Lane also never made any applications east of the Pearl River.

Based on the foregoing, any personal injury claims asserted against Lane by Thibodaux and Smith (Section IV A above) would not have merit because Lane never made applications in the area where Thibodaux and Smith say they were sprayed, 35 miles off the Louisiana coast. Additionally Lane did not fly either type of aircraft that Thibodaux and Smith recalled seeing when they were allegedly sprayed. However, because Lane did make applications in the area of the oil slick that Thibodaux was forced to navigate through, Thibodaux may well have a property damage claim against Lane for an alleged failure to properly disperse the oil in that area. Thibodaux and Smith would also likely have causes of actions against the various entities that were flying the King Air and the C-130 aircraft while they were fishing 35 miles off the coast.

The personal injury claims asserted by Daze and Cleanup against Lane (Section IV B above) would also not pass muster, because Lane never made any applications east of the Pearl River, which is more than 100 miles from where Daze and Cleanup were working on the beaches of Destin, FL. Counsel for Daze and Cleanup would therefore have to determine which Responder Defendant(s) applied dispersants in that area and pursue those defendants.

Ken Cowboy and Jerry Jones may in fact have personal injury claims against Lane Aviation (Section IV C above), if in fact Lane applied dispersants in the area near Cowboy's

7

shore side camp. However they would not have viable claims against the Responder Defendants who applied dispersants 35 miles off the coast of Louisiana, or off the coasts of Mississippi, Alabama or Florida. Nor would they have viable claims against those defendants that only provided spotter flights in those areas. Likewise some Responder Defendants only provided vessels and did not apply dispersants. Thus Cowboy and Jones could not sustain claims against them for their injuries or damages. Cowboy might have a claim for damage to his property for damage associated with the oil that washed up on the pier. It is undisputed that none of the Responder Defendants are in anyway responsible for the April 20, 2010 explosion, the resulting spill or any alleged failure to contain the spill. Thus any such claims that might be asserted for property damage caused by oil would have to be asserted against the entities that caused the foregoing.

## VI. WHY REPRESENTATIVE PLAINTIFFS WOULD NOT BE BENEFICIAL OR EFFICIENT

The discussion set forth in Sections IV and V above demonstrates why the use of Representative Plaintiffs to assert claims against the Responder Defendants is not feasible. There is simply no plaintiff who has a claim against all Responder Defendants, there is absolutely no chance that all Responder Defendants would be liable or even potentially liable to any one plaintiff. Thus any designation of "representative plaintiff(s)" would not be effective because no two plaintiffs will have identical claims, and therefore proceeding to trial with only a few representative plaintiffs will not be efficient or effective.

## VII. DISCOVERY TO EACH PLAINTIFF THAT WOULD BE REQUIRED

Because of the fact specific nature of each plaintiff's claims, examples of which are described above, written discovery directed to and to be answered by each specific plaintiff will be required. The Responder Defendants would propound discovery to every plaintiff, who

would then be required to identify how they were injured, their location when injured, the date(s) that they were exposed to oil or dispersants, the party or parties they believe caused the exposure, and, if they suffered property damage, similar information relative to their property damage claims. (Alternatively the Court could establish a deadline for each plaintiff to be identified and order each plaintiff to make Rule 26 Initial Disclosures and produce seminal information and documentation within 30 days of being identified.) After the Responder Defendants have received and reviewed this information, they could determine if they in fact are potential defendants to each particular plaintiff's claims. At that point the oral depositions of the various plaintiffs could be scheduled and completed. With the issues and the parties streamlined by the initial information received from the plaintiffs, the depositions could likely be completed in one hour or less, because only those parties who potentially caused a particular plaintiff's injuries and damages would need to attend. Of course none of the above could occur until particular plaintiffs with particular claims are identified.

## VIII. PROPOSED PROCEDURE GOING FORWARD

Dynamic suggests that there is insufficient time for the discovery pertaining to B(3) Bundle Complaint plaintiffs to be completed in time for the February, 2012 trial date. Dynamic requests that the Court consider establishing a discovery schedule for the B(3) Bundle plaintiffs and the Responder Defendants. Within that schedule the B(3) Bundle plaintiffs would be identified and, after their initial disclosures are considered, they could be deposed in short order. It is anticipated that the Court will eventually determine that a trial in phases will occur. The above referenced discovery relative to claims against the Responder Defendants could be conducted and ongoing when earlier phases of the trial are occurring. This would allow the Court to maintain its desire to keep the case moving to conclusion, yet at the same time allow all

parties complete and full disclosure of information relative to claims being asserted against the Responder Defendants. At the same time the liability aspects of the claims against the Responder Defendants could be asserted, investigated and discovered.

### IX.  CONCLUSION

Dynamic Aviation Group, Inc. is anxious to have its day in Court and defend itself against the claims being made by those B(3) Bundle plaintiffs who have factual support for claims against Dynamic, none of whom have been identified. However Dynamic is not willing to go forward to trial without first having the opportunity to discover the substance of the claims being asserted, or whether Dynamic should even be a defendant against particular plaintiffs. Dynamic respectfully submits that the procedure described above, or some form thereof, is an appropriate way of satisfying the interests of the Court to keep the case moving forward, as well as to satisfy the interests of the parties seeking to defend themselves in this matter.

Respectfully submitted,

_____
LEO R. McALOON, III (NO. 19044)
EMAIL ADDRESS: lmcaloon@glllaw.com
MICHAEL D. CANGELOSI (NO. 30427)
EMAIL ADDRESS: mcangelosi@glllaw.com
GIEGER, LABORDE & LAPEROUSE, L.L.C.
One Shell Square
701 Poydras Street, Suite 4800
New Orleans, Louisiana  70139-4800
Telephone:  (504) 561-0400
Facsimile:  (504) 561-1011
*Attorneys for Dynamic Aviation Group, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Notice of Appearance has been served on All Counsel by electronically uploading the same to Lexis/Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 20th day of April, 2011.

_____
Leo R. McAloon, III