# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

IN RE: OIL SPIL by the Oil Rig      MDL No. 2179
"DEEPWATER HORIZON" in the GULF OF
MEXICO on April 20, 2010      SECTION J

IN RE: TRITON ASSET LEASING      JUDGE BARBIER
GmbH, et al      MAG. JUDGE SHUSHAN

THIS DOCUMENT RELATES TO:
Civil Action No. 10-2771

**ANSWER TO COMPLAINT AND PETITION OF TRITON ASSET LEASING GmbH, et al FOR EXONERATION FROM OR LIMITATION OF LIABILITY AND CLAIMS**

**AND**

**COUNTERCLAIM, CROSS-CLAIM, AND THIRD PARTY COMPLAINT**

**Complaint in Admiralty – Rule 9(h)**

**I.    ANSWER TO COMPLAINT AND PETITION OF TRITON ASSET LEASING GmbH, et al FOR EXONERATION FROM OR LIMITATION OF LIABILITY AND CLAIMS**

**NOW INTO COURT**, through undersigned counsel, come respondents: Gary and Deborah Sellno, Kerry and Sandra Lauricella, William and Georgia Gibson, Dale and Denise LeBrun, Larry and Kelly Tapp, E.P. and M.B. Geghardt, Michael L. and Dawn Dawson, Michael L. Dawson Construction, Ned and Ginger Naquin, Gordon R. Cordes, James Agent, Clark Barrios, Rose Baudoin, Rex and Beverly Rambo, Vincent and Marlene Lobue, Mark and Carol Dawson, Henry J. Becnel, Jr., Anthony Caramonta, Paul Leone, Brian Reuther, Peter and Karen Casbarian, Gerard Cormeaux, Keith and Boksoon Fabre, Kevin and Kelly Poteet, Quality Metal Works, Inc., Kirk Fabre, Denise and Sean Migliore, Casbarian Engineering Associates, L.L.C., Jody and Tammy Sellno, Carolyn Campo, Robin Campo and Richard A. Campo III, Buddy and Luanna Cambas, Buddy and David Cambas, Cambas Electric, Inc., Doug and Mary Moore, Juro

Bezmalinovic, Bez Fabrication, Inc. and Caleb H. Didriksen and Sondra Brown, hereinafter "Respondents" and/or Claimants, who in answer to the Complaint in Limitation filed herein respectfully respond as follows:

## FIRST DEFENSE

Respondents object to Petitioners invoking the jurisdiction of this Court in any manner other than that which is granted to the Court under the Limitation of Liability Act, 46 U.S.C.A. 30501 *et seq.*

## SECOND DEFENSE

Respondents specifically reserve their rights pursuant to the Oil Pollution Act, 33 U.S.C.A. 2701 *et seq* to file damage suits elsewhere and include in their suits the issues of liability, damages, and the interpretation of any applicable insurance policies available to Petitioners herein.

## THIRD DEFENSE

Petitioners are not entitled to limit their liability because at all times relevant the MODU Deepwater Horizon was operated in a willful, wanton, and reckless manner.  The conduct that resulted in Respondents' damages occurred with the privity or knowledge of the Petitioners and bars the limitation of liability.

## FOURTH DEFENSE

The protections of the Limitation of Liability Act are unavailable to the insurers of the Petitioners under the circumstances herein.  No *prima facie* case has been made establishing that they are entitled to avail themselves of the Limitation of Liability Act.

**FIFTH DEFENSE**

Respondents' damages resulted from the negligence, fault, or want of due care on the part of the Petitioners and/or those for whom Petitioners are responsible, and/or the unseaworthiness of the MODU Deepwater Horizon, all of which was within the privity and knowledge of Petitioners and bars the limitation of liability.

**SIXTH DEFENSE**

Respondents are free from fault and have mitigated the damages that resulted from the acts and omissions of the Petitioners.

**SEVENTH DEFENSE**

Respondents reserve the right to contest the appraisal value of the MODU Deepwater Horizon, its engines, apparel, appurtenances, pending freight and the adequacy of the security.

**EIGHTH DEFENSE**

The limitation fund is inadequate and should be increased and/or the limitation action should be dismissed because the limitation fund does not properly account for the value of the minerals and other appurtenances, attachments, freight and/or cargo aboard the vessel, subject to the control of the vessel, and/or owned by Petitioners including but not limited to the value of contract for its lease and/or operation.

**NINTH DEFENSE**

The limitation action should be dismissed because the MODU Deepwater Horizon is not a vessel for the purposes of the Limitation Act.

**AND NOW**, answering the particular allegations of the Complaint for Limitation, Respondents aver upon information and belief:

1.

The allegations of Paragraph 1 are denied.

2.

The allegations of Paragraphs 2, 3, 4, and 5 are denied for lack of sufficient information to justify a belief therein.

3.

The allegations of Paragraph 6 are denied for lack of sufficient information to justify a belief therein.

4.

The allegations contained in the first two sentences of Paragraph 7 are denied for lack of sufficient information to justify a belief therein.  The remaining allegations of Paragraph 7 are denied.

5.

Respondents admit that portions of the MODU Deepwater Horizon now lay sunken in deepwater in the Gulf of Mexico but deny the remaining allegations of Paragraph 8 for lack of sufficient information to justify a belief therein.

6.

Respondents admit that on or about April 20, 2010, one or more fires and explosions occurred on the MODU Deepwater Horizon causing damage to it as well as loss of life and injury to persons and further admit that on or about April 22, 2010, the MODU Deepwater Horizon sank.  The remaining allegations of Paragraph 9 are denied for lack of sufficient information to justify a belief therein.

7.

The allegations of Paragraph 10 are denied.

8.

The allegations of Paragraph 11 are denied.

9.

The allegations of Paragraph 12 are denied.

10.

The allegations of Paragraph 13 are denied for lack of sufficient information to justify a belief therein.

11.

Respondents admit that claims and demands have been made against Petitioners. Respondents deny the remaining allegations of Paragraph 14 for lack of sufficient information to justify a belief therein.

12.

The allegations of Paragraph 15 are denied for lack of sufficient information to justify a belief therein.

13.

The allegations of Paragraph 16 are denied for lack of sufficient information to justify a belief therein.

14.

The allegations of Paragraph 17 are denied for lack of sufficient information to justify a belief therein.

15.

The allegations of Paragraph 18 are denied for lack of sufficient information to justify a belief therein.

16.

The allegations of Paragraph 19 are denied for lack of sufficient information to justify a belief therein.

17.

The allegations of Paragraph 20 are denied.

18.

The allegations of Paragraph 21 are denied for lack of sufficient information to justify a belief therein.

19.

The allegations of Paragraph 22 are denied for lack of sufficient information to justify a belief therein.

20.

The allegations of Paragraph 23 are denied for lack of sufficient information to justify a belief therein.

21.

The allegations of Paragraph 24 are denied for lack of sufficient information to justify a belief therein.

## II.      COUNTERCLAIM, CROSS-CLAIM, AND THIRD PARTY COMPLAINT

### Rule 9(h)

**NOW INTO COURT**, through undersigned counsel, come Petitioners, Gary and
Deborah Sellno, Kerry and Sandra Lauricella, William and Georgia Gibson, Dale and Denise
LeBrun, Larry and Kelly Tapp, E.P. and M.B. Gebhardt, Michael L. and Dawn Dawson, Michael
L. Dawson Construction, Ned and Ginger Naquin, Gordon R. Cordes, James Agent, Clark
Barrios, Rose Baudoin, Rex and Beverly Rambo, Vincent and Marlene Lobue, Mark and Carol
Dawson, Henry J. Becnel, Jr., Anthony Caramonta, Paul Leone, Brian Reuther, Peter and Karen
Casbarian, Gerard Cormeaux, Keith and Boksoon Fabre, Kevin and Kelly Poteet, Quality Metal
Works, Inc., Kirk Fabre, Denise and Sean Migliore, Casbarian Engineering Associates, L.L.C.,
Jody and Tammy Sellno, Carolyn Campo, Robin Campo and Richard A. Campo III, Buddy and
Luanna Cambas, Buddy and David Cambas, Cambas Electric, Inc., Doug and Mary Moore, Juro
Bezmalinovic, Bez Fabrication, Inc. and Caleb H. Didriksen and Sondra Brown, hereinafter
"Plaintiffs," who allege as follows:

1.

Plaintiffs are natural and juridical persons who have suffered property loss, economic
damages, other costs, and general damages such as emotional distress and mental anguish, as a
result of the Spill.

2.

Gary and Cathy Sellno, husband and wife, domiciled and own residential and
unimproved real property in Orleans.  As a result of the intentional, willful, wanton, reckless,
negligent and grossly negligent acts and omissions of the Defendants, they have sustained

damages consisting of diminution of value, loss of use and emotional damages for injury to their residence.

3.

Kerry and Sandra Lauricella, husband and wife, are domiciled and own residential and unimproved real property in Barataria, Louisiana in Jefferson Parish. As a result of the intentional, willful, wanton, reckless, negligent and grossly negligent acts and omissions of the Defendants, they have sustained damages consisting of diminution of value, loss of use and emotional damages for injury to their residence, plus loss of value and use of their unimproved lots.

4.

William and Georgia Gibson, husband and wife, are domiciled and own residential real property in Barataria, Louisiana in Jefferson Parish. As a result of the intentional, willful, wanton, reckless, negligent and grossly negligent acts and omissions of the Defendants, they have sustained damages consisting of diminution of value, loss of use and emotional damages for injury to their residence.

5.

Dale and Denise Lebrun, husband and wife, are domiciled and own residential real property in Barataria, Louisiana in Jefferson Parish. As a result of the intentional, willful, wanton, reckless, negligent and grossly negligent acts and omissions of the Defendants, they have sustained damages consisting of diminution of value, loss of use and emotional damages for injury to their residence.

6.

Larry and Kelly Tapp, husband and wife, are domiciled and own residential real property and unimproved real property in Barataria, Louisiana in Jefferson Parish.  As a result of the intentional, willful, wanton, reckless, negligent and grossly negligent acts and omissions of the Defendants, they have sustained damages consisting of diminution of value, loss of use and emotional damages for injury to their residence, plus loss of value and use of their unimproved lots.

7.

E.P. and M.B. Gebhardt, husband and wife, are domiciled in Orleans Parish and own residential real property in Barataria, Louisiana in Jefferson Parish.  As a result of the intentional, willful, wanton, reckless, negligent and grossly negligent acts and omissions of the Defendants, they have sustained damages consisting of diminution of value, loss of use and emotional damages for injury to their residence.

8.

Michael L. and Dawn Dawson, husband and wife, are domiciled in St. Charles Parish and own residential real property in Barataria, Louisiana in Jefferson Parish.  As a result of the intentional, willful, wanton, reckless, negligent and grossly negligent acts and omissions of the Defendants, they have sustained damages consisting of diminution of value, loss of use and emotional damages for injury to their residence.

9.

Michael L. Dawson, d/b/a Michael L. Dawson Construction, is a sole proprietorship domiciled in St. Charles Parish and doing business in Jefferson Parish.  As a result of the intentional, willful, wanton, reckless, negligent and grossly negligent acts and omissions of the

Defendants, they have sustained damages consisting of diminution of value, loss of use and emotional damages for injury to their business. It also sustained damages consisting of loss project contracts and income.

10.

Ned and Ginger Naquin, husband and wife, are domiciled in and own residential real property in Barataria, Louisiana in Jefferson Parish. As a result of the intentional, willful, wanton, reckless, negligent and grossly negligent acts and omissions of the Defendants, they have sustained damages consisting of diminution of value, loss of use and emotional damages for injury to their residence.

11.

Gordon R. Cordes is domiciled in and owns residential real property in Barataria, Louisiana in Jefferson Parish. As a result of the intentional, willful, wanton, reckless, negligent and grossly negligent acts and omissions of the Defendants, they have sustained damages consisting of diminution of value, loss of use and emotional damages for injury to their residence.

12.

James Agent is domiciled in and owns residential real property in Barataria, Louisiana in Jefferson Parish. As a result of the intentional, willful, wanton, reckless, negligent and grossly negligent acts and omissions of the Defendants, he has sustained damages consisting of diminution of value, loss of use, loss of rents, and emotional damages for injury to his properties.

13.

Clark Barrios and Rosalie Baudoin are domiciled in and own residential real property and unimproved real property in Barataria, Louisiana in Jefferson Parish. As a result of the

intentional, willful, wanton, reckless, negligent and grossly negligent acts and omissions of the Defendants, they have sustained damages consisting of diminution of value, loss of use and emotional damages for injury to their residence, plus loss of value and use of their unimproved lots.

14.

Buddy and Luanna Cambas, husband and wife, are domiciled in Jefferson Parish and own residential and unimproved real property in Handcock County, Mississippi.  As a result of the intentional, willful, wanton, reckless, negligent and grossly negligent acts and omissions of the Defendants, they have sustained damages consisting of diminution of value, loss of use and emotional damages for injury to their residence, plus loss of value and use of their unimproved lots.

15.

Rex and Beverly Rambo, husband and wife, are domiciled in and own residential real property and a large boat in Barataria, Louisiana in Jefferson Parish.  As a result of the intentional, willful, wanton, reckless, negligent and grossly negligent acts and omissions of the Defendants, they have sustained damages consisting of loss of use, diminution of value, loss of rents, loss of income and earning capacity, property damage to their boat, and emotional damage claims.

16.

Vincent and Marlene Lobue, husband and wife, are domiciled in and own residential real property in Barataria, Louisiana in Jefferson Parish.  As a result of the intentional, willful, wanton, reckless, negligent and grossly negligent acts and omissions of the Defendants, they

have sustained damages consisting of loss of use, diminution of value, property damage to their boat, and emotional damage claims.

17.

Mark and Carol Dawson, husband and wife, are domiciled in and own residential real property in Barataria, Louisiana in Jefferson Parish.  As a result of the intentional, willful, wanton, reckless, negligent and grossly negligent acts and omissions of the Defendants, they have sustained damages consisting of loss of use, diminution of value, loss of rents, and emotional damage claims.  Further, as a result of the intentional, willful, wanton, reckless, negligent and grossly negligent acts and omissions of the Defendants, Mark Dawson Construction has sustained damages consisting of lost profits and loss of business opportunities.

18.

Henry J. Becnel, Jr. is domiciled in and owns residential real property in Barataria, Louisiana in Jefferson Parish.  As a result of the intentional, willful, wanton, reckless, negligent and grossly negligent acts and omissions of the Defendants, he has sustained damages consisting of diminution of value, loss of use and emotional damages for injury to his residence.

19.

Anthony Caramonta, Jr. is domiciled in and owns residential real property in Barataria, Louisiana in Jefferson Parish.  As a result of the intentional, willful, wanton, reckless, negligent and grossly negligent acts and omissions of the Defendants, he has sustained damages consisting of diminution of value, loss of use and emotional damages for injury to his residence.

20.

Paul Leone is domiciled in and owns residential real property in Barataria, Louisiana in Jefferson Parish.  As a result of the intentional, willful, wanton, reckless, negligent and grossly

negligent acts and omissions of the Defendants, he has sustained damages consisting of diminution of value, loss of use and emotional damages for injury to his residence.

21.

Buddy Cambas, d/b/a Cambas Electric, Inc., is a corporation domiciled and doing business in Jefferson Parish.  As a result of the intentional, willful, wanton, reckless, negligent and grossly negligent acts and omissions of the Defendants, they have sustained damages consisting of diminution of value, loss of use and emotional damages for injury to their business. It also sustained damages consisting of loss project contracts and income.

22.

Brian Reuther is domiciled in and owns residential real property in Barataria, Louisiana in Jefferson Parish.  As a result of the intentional, willful, wanton, reckless, negligent and grossly negligent acts and omissions of the Defendants, he has sustained damages consisting of diminution of value, loss of use and emotional damages for injury to his residence, plus loss of value and use of his unimproved lots.

23.

Peter and Karen Casbarian, husband and wife, are domiciled and own residential real property in Barataria, Louisiana in Jefferson Parish.  As a result of the intentional, willful, wanton, reckless, negligent and grossly negligent acts and omissions of the Defendants, they have sustained damages consisting of loss of use, diminution of value, loss of rents, and emotional damage claims and loss of income for his job.  Casberian Engineering Inc. is a business located in Orleans Parish that provided and does provide professional engineering services to offshore companies, individuals, oil companies and contractors and has suffered a significant loss in business volume.

24.

Gerard Cormeaux is domiciled and owns residential real property in Barataria, Louisiana in Jefferson Parish.  As a result of the intentional, willful, wanton, reckless, negligent and grossly negligent acts and omissions of the Defendants, he has sustained damages consisting of diminution of value, loss of use and emotional damages for injury to his residence.

25.

Jody and Tammy Sellno, husband and wife, are domiciled in and own residential real property in Barataria, Louisiana in Jefferson Parish.  As a result of the intentional, willful, wanton, reckless, negligent and grossly negligent acts and omissions of the Defendants, they have sustained damages consisting of loss of use, diminution of value, loss of rents, and emotional damage claims.

26.

Keith and Boksoon Fabre, husband and wife, are domiciled and own residential real property in Barataria, Louisiana in Jefferson Parish.  As a result of the intentional, willful, wanton, reckless, negligent and grossly negligent acts and omissions of the Defendants, they have sustained damages consisting of diminution of value, loss of use and emotional damages for injury to their residence.

27.

Kevin and Kelly Poteet, husband and wife, are domiciled and own residential real property in Barataria, Louisiana in Jefferson Parish.  As a result of the intentional, willful, wanton, reckless, negligent and grossly negligent acts and omissions of the Defendants, they have sustained damages consisting of diminution of value, loss of use and emotional damages for injury to their residence.

28.

Quality Metal Works, Inc. is a Louisiana domestic corporation whose domicile address is in Jefferson Parish, Louisiana.  Quality Metal Works, Inc. provided equipment for the outfitting of offshore platforms and other offshore facilities.  As a result of the intentional, willful, wanton, reckless, negligent and grossly negligent acts and omissions of the Defendants, Quality Metal Works, Inc. has sustained damages consisting of lost profits and loss of business opportunities.

29.

Carolyn Campo, Robin Campo and Richard A. Campo, III, are domiciled in and own residential real property in St. Tammany Parish.  As a result of the intentional, willful, wanton, reckless, negligent and grossly negligent acts and omissions of the Defendants, they have sustained damages consisting of loss of use, diminution of value, loss of rents, and emotional damage claims.

30.

Juro Bezmalinovic is domiciled and owns residential real property in Myrtle Grove, Louisiana in Plaquemines Parish.  As a result of the intentional, willful, wanton, reckless, negligent and grossly negligent acts and omissions of the Defendants, he has sustained damages consisting of diminution of value, loss of use and emotional damages for injury to his residence.

31.

Bez Fabrication, Inc. is a Louisiana domestic corporation whose domicile address is in Plaquemines Parish, Louisiana. Bez Fabrication, Inc. provided equipment for the outfitting of offshore platforms and other offshore facilities.  As a result of the intentional, willful, wanton, reckless, negligent and grossly negligent acts and omissions of the Defendants, Bez Fabrication, Inc.  has sustained damages consisting of lost profits and loss of business opportunities.

32.

Doug and Mary Moore husband and wife, whose domicile address is in Orleans Parish and own residential real property St. Tammany Parish.  As a result of the intentional, willful, wanton, reckless, negligent and grossly negligent acts and omissions of the Defendants, they have sustained damages consisting of diminution of value, loss of use and emotional damages for injury to their residence.

33.

Kirk Fabre is domiciled and owns residential real property in Jefferson Parish.  As a result of the intentional, willful, wanton, reckless, negligent and grossly negligent acts and omissions of the Defendants, they have sustained damages consisting of diminution of value, loss of use and emotional damages for injury to their residence.

34.

Denise and Sean Migliore, husband and wife, are domiciles in Jefferson Parish.  Mr. Migliore made his living fishing in the Gulf of Mexico and associated waters.  As a result of the intentional, willful, wanton, reckless, negligent and grossly negligent acts and omissions of the Defendants, Mr. and Mrs. Migliore have sustained damages consisting of loss of earning capacity and loss of business opportunities.

35.

Casbarian Engineering Associates, L.L.C., is a Louisiana limited liability company, whose domicile address is in Orleans Parish.  Casbarian Engineering Associates, L.L.C. provided engineering services in the design of offshore platforms and other offshore facilities.  As a result of the intentional, willful, wanton, reckless, negligent and grossly negligent acts and omissions

of the Defendants, Casbarian Engineering Associates, L.L.C. has sustained damages consisting of lost profits and loss of business opportunities.

36.

Buddy and David Cambas, siblings, are domiciled in Jefferson Parish, Louisiana, and own residential real property in St. Tammany Parish.  As a result of the intentional, willful, wanton, reckless, negligent and grossly negligent acts and omissions of the Defendants, they have sustained damages consisting of loss of use, diminution of value, and emotional damage claims.

37.

Caleb H. Didriksen and Sondra Brown, husband and wife, are domiciled in Jefferson Parish, Louisiana, and own residential real property in Lake Catherine, Louisiana in Orleans Parish.  As a result of the intentional, willful, wanton, reckless, negligent and grossly negligent acts and omissions of the Defendants, they have sustained damages consisting of loss of use, diminution of value, and emotional damage claims.

38.

Made defendants, cross-defendants and/or third-party defendants herein are:

A.	BP Exploration & Production, Inc. (BP Exploration), a Delaware corporation with its principal place of business in Warrenville, Illinois, and

B.	BP America Production Company (BP America), a Delaware corporation with its principal place of business in Houston, Texas, and

C.	BP p.l.c., a British public limited company with its corporate headquarters in London, England,

All three of which are referred to collectively hereinafter as "BP."

17

D.      Transocean Ltd., a Swiss corporation with offices in Houston, Texas.

E.      Transocean Offshore Deepwater Drilling, Inc., a Delaware corporation with its principal place of business in Houston, Texas.

F.      Transocean Deepwater, Inc., a Delaware corporation with its principal place of business in Houston, Texas.

G.      Transocean Holdings, L.L.C., a Delaware corporation with its principal place of business in Houston, Texas.

H.      Triton Asset Leasing, GmbH, a Swiss limited liability company with its principal place of business in Zug, Switzerland,

All five of which are referred to collectively hereinafter as "Transocean."

I.      Halliburton Energy Services, Inc. is a Delaware corporation with its principal place of business in Houston, Texas and operated through its Sperry Drilling Services division.

J.      M-I L.L.C. also known as M-I SWACO is a Delaware limited liability company with its principal place of business in Wilmington, Delaware.

All ten of the preceding defendants are hereinafter collectively referred to as the "Drilling Defendants."

K.      Cameron International Corporation f/k/a Cooper-Cameron Corporation is a Delaware corporation with its principal place of business in Houston, Texas.

L.      Weatherford U.S. L.P. is a Louisiana limited partnership with its principal place of business in Hosuton, Texas.

M.      Anadarko Petroleum Corporation Co. is a Delaware corporation with its principal place of business in The Woodlands, Texas.

N.     Anadarko E&P Company L.P. is a Delaware limited partnership with its principal place of business in The Woodlands, Texas.

O.     MOEX Offshore 2007 L.L.C. is a Delaware corporation with its principal place of business in Houston, Texas.

P.     MOEX USA Corporation is a Delaware corporation and has its principal place of business in Houston, Texas.

Q.     Mitsui Oil Exploration Co., Ltd. is a Japanese corporation with its principal place of business in Tokyo, Japan.

39.

This Court has subject matter jurisdiction pursuant to:

A.     The Oil Pollution Act, 33 U.S.C. Section 2717(b) (the "OPA").

B.     In addition, this Court has supplemental jurisdiction over Petitioners' state law claims pursuant to 28 U.S.C. 1367.

C.     Article III, Section 2 of the United States Constitution empowers the federal judiciary to hear all cases of admiralty and maritime jurisdiction.

40.

Venue is proper in this Court under 28 U.S.C. 1391 because the acts and omissions giving rise to the claims asserted herein occurred in this District.  Venue is otherwise appropriate in this district consistent with 28 U.S.C. Section 1407 and the 2010 Transfer Order of the Judicial Panel on Multidistrict Litigation.  Venue is also proper pursuant to the OPA, 33 U.S.C. 2717(b) as the discharge occurred in this District.  In addition, venue is proper pursuant to this Court's Pretrial Order No. 20, which allows petitioners to directly file their complaints arising out of the Spill in this District.

41.

As more fully set forth below, all of the defendants,  cross-defendants and/or third-party defendants are liable to the petitioners jointly, severally, and solidarily under the Oil Pollution Act and various principles of State and Federal law.

42.

On or about April 20, 2010, the MODU Deepwater Horizon was located 50 miles southeast of Venice, Louisiana, adjacent to the Louisiana shore when, while performing drilling operations for crude oil, it caught fire and exploded, eventually sinking to the floor of the Gulf of Mexico.

43.

The accident was caused by no fault of the Petitioners and was caused solely by the intentional, willful, wanton, reckless, negligent, and grossly negligent acts and omissions of the Defendants herein all of whom, acting through their officers, employees, servants, and agents participated in MODU Deepwater Horizon's offshore oil drilling operations in Mississippi Canyon Block 252, the location known as "Macondo," in the Gulf of Mexico and/or supplied equipment and/or appurtenances that due to defects therein failed to prevent the accident or mitigate the damage that resulted from it.

44.

Defendants' intentional, willful, wanton, reckless, negligent, and grossly negligent acts and omissions include but are not limited to:

a.      Failing to supervise their employees;

b.      Failing to properly train and supervise employees and subcontractors working on the vessel;

c.      Failing to properly inspect the MODU Deepwater Horizon to assure that its equipment and personnel were fit for their intended purposes;

d.      Failing to provide sufficient personnel to perform operations on the Deepwater Horizon;

e.      Failing to properly assess the risk of failure of key safety and emergency equipment;

f.      Failing to properly follow drilling protocols and policies, proper well monitoring and control practices;

g.      Failing to take appropriate steps to mitigate the damages caused by the fire and explosion and the release of oil;

h.      Failing to bring the oil release under control in a timely fashion;

i.      Failing to heed warnings and warning signs that, if heeded, would have prevented the fire, explosion and release of oil or minimized the damages resulting from them;

j.      Other intentional, willful, wanton, reckless, negligent and grossly negligent acts and omissions as set out below and to be shown at the trial of this matter.

45.

The Drilling Defendants owed and breached duties of ordinary and reasonable care to Petitioners in connection with the drilling operations of the MODU Deepwater Horizon and its maintenance and repair as well as that of its appurtenances and equipment, and additionally owed and breached duties to Petitioners to guard against and/or prevent the risk of an oil spill.

46.

Transocean Ltd., Transocean Offshore Deepwater Drilling, Inc., Transocean Deepwater, Inc.,  and Transocean Holdings, L.L.C. ,  and Triton Asset Leasing, GmbH (hereinafter collectively Transocean) owned, navigated, manned, possessed, managed and controlled the MODU Deepwater Horizon at all times material hereto.

47.

In those capacities, Transocean owed Plaintiffs duties of care to man, possess, manage, control, navigate, maintain and operate the MODU Deepwater Horizon with reasonable and ordinary care.

48.

Transocean breached its duties to Plaintiffs by:

A.     Failing to properly man, manage, control, maintain and operate the MODU Deepwater Horizon and its safety equipment before the blow out;

B.     Making or acquiescing to a series of reckless decisions concerning well design, the use of centralizers, mudding operations, cementing, integrity testing, deployment of the casing hanger lockdown sleeve, spacer material, and simultaneous operations causing worker confusion and loss of focus;

C.     Failing to properly maintain the MODU Deepwater Horizon, train personnel, and perform appropriate risk assessment analyses.

49.

BP leased and operated the MODU Deepwater Horizon.  Together, Transocean and BP were responsible for design and well control.

50.

BP owed duties to Plaintiffs to exercise reasonable care to design, create, manage, and control the well and the flow of hydrocarbons therefrom in a safe and prudent manner and to conduct its drilling operations with reasonable and ordinary care.

51.

BP breached its duties to Plaintiffs by:

22

A.      Choosing and implementing a less expensive and less time-consuming long string well design, which had few barriers against a gas blow-out, instead of a safer liner/tieback design which would have provided additional barriers to gas blowout, despite its knowledge that the liner-tieback design was a safer option;

B.      Using pipe material that it knew and recognized before the blowout might collapse under high pressure;

C.      Using too few centralizers to ensure that the casing was centered into the wellbore;

D.      Failing to implement a full bottoms up circulation of mud between the running of the casing and the beginning of the cement job in violation of industry standards;

E.      Failing to require comprehensive lab testing to ensure the density of the cement and failing to heed the ominous results of negative pressure testing which indicated that the cement job was defective;

F.      Cancelling the cement bond log test that would have determined the integrity of the cement job;

G.      Failing to deploy the casing hanger lockdown sleeve to prevent the wellhead seal from being blown out by pressure from below;

H.      Using an abnormally large quantity of mixed and untested spacer fluid;

I.      Failing to train drilling workers and/or onshore employees, and to hire personnel qualified in risk assessment and management of complex systems like that found on the MODU Deepwater Horizon; and

J.      Requiring simultaneous operations in an effort to expedite the project making it difficult for workers to track fluid volumes in the wellbore.

52.

All of the foregoing acts and omissions by BP proximately caused and/or contributed to Plaintiffs' injuries and damages.

53.

At all times material hereto, Halliburton was responsible for cementing the well that was the subject of the spill, and further was engaged in testing, analysis and monitoring of the Deepwater Horizon's well.

54.

At all times material hereto, Halliburton owed duties to Plaintiffs to exercise reasonable care in conducting the cementing, testing, analysis and monitoring of the well.

55.

Halliburton breached its duties by Plaintiffs by:

A.     Failing to exercise reasonable care in conducting its cementing, testing, analysis and monitoring of the Deepwater Horizon's well;

B.     Failing to use a full bottoms up circulation of mud between the running of the casing and the and the beginning of the cement job in violation of industry standards; failing to require comprehensive lab testing to ensure the density of the cement, and failing to heed the ominous results of negative pressure testing, which indicated that the cement job was defective;

C.     Cancelling or acquiescing in the cancellation of the cement bond log test that would have determined the integrity of the cement job;

D.     Failing to deploy, or acquiescing in the decision not to deploy, the casing hanger lockdown sleeve to prevent the wellhead seal from being blown out by pressure from below.

E.     Other acts of negligence to be shown at the trial of this matter.

56.

All of the foregoing acts and omissions by Halliburton proximately caused and/or contributed to Plaintiffs' injuries and damages.

57.

At all times material hereto, M-I was providing the drilling fluids or "mud" for the drilling operations on the MODU Deepwater Horizon and was responsible for mud drilling, composition and monitoring, and for the provision of "spacer" solution.

58.

At all times material hereto, M-I owed duties of care to Plaintiffs to exercise reasonable care in providing, controlling and monitoring the mud and spacer solutions used on the MODU Deepwater Horizon.

59.

M-I breached its duties to Plaintiffs by:

A.      Failing to provide, control, and monitor the mud and spacer solutions used on the MODU Deepwater Horizon in a reasonably safe manner.

B.      Other acts of negligence to be shown at the trial of this matter.

60.

All of the foregoing acts and omissions by M-I proximately caused and/or contributed to Plaintiffs' injuries and damages.

61.

At all relevant times hereto, Cameron designed, manufactured and supplied the BOP that was, at all relevant times, appurtenant to and a part of the MODU Deepwater Horizon's equipment.

62.

At all times relevant hereto, Cameron owed duties to Plaintiffs to exercise reasonable and ordinary care in the design and manufacture and supply of the BOP for the MODU Deepwater Horizon.

63.

Cameron breached its duties to Plaintiffs by:

A.      Failing to exercise reasonable care in the design, manufacture, and supply of the BOP such that it failed to operate to prevent the blowout;

B.      Failing to ensure and verify that the BOP it designed and manufactured was suitable for the types of drill pipe and casing assembly design which would foreseeably be used during the MODU Deepwater Horizon's drilling and exploration activities;

C.      Designing the BOP such that it was vulnerable to a single point failure;

D.      Failing to install a backup activation system for the BOP; and

E.      Failing to provide adequate warnings, instructions and guidelines on the permissible uses, modifications, and applications of the BOP.

F.      Other acts of negligence to be shown at the trial of this matter.

64.

All of the foregoing acts and omissions by Cameron proximately caused and/or contributed to Plaintiffs' injuries and damages.

65.

At all times relevant hereto, Weatherford designed, manufactured, and supplied the float collar used in the Macondo well.

66.

At all times relevant hereto, Weatherford owed duties to Plaintiffs to exercise reasonable and ordinary care in the design and manufacture and supply of the float collar in the long string casing.

67.

Weatherford breached its duties to Plaintiffs by:

A.    Designing and manufacturing a float collar that failed to seal properly and which allowed hydrocarbon backflow into the casing.

B.    Other acts of negligence to be shown at the trial of this matter.

68.

All of the foregoing acts and omissions by Weatherford proximately caused and/or contributed to Plaintiffs' injuries and damages.

69.

Anadarko Petroleum Corporation Co., Anadarko E&P Company L.P., and MOEX Offshore 2007, L.L.C. had access to Halliburton/Sperry Sun INSITE real time data that was transmitted from the MODU Deepwater Horizon on April 20, 2010.  They had the right to conduct HSE inspections and call HSE meetings and had assumed certain duties with respect to health and safety when they acquired these rights.  They knew or should have known of the presence of the impending disaster and should have warned the drilling vessel crew so that it could have taken steps to prevent it.  Anadarko Petroleum Corporation Co., Anadarko E&P Company L.P., and MOEX Offshore 2007, L.L.C. breached their duties to Plaintiffs by failing to warn the drilling crew of the imminent blowout so that they could take evasive action.

70.

Mitsui Oil Exploration Co., Ltd. (MOECO) controlled the business, operations, policies, and actions of its subsidiaries MOEX Offshore 2007, L.L.C. and MOEX USA Corporation to such an extent that they were agents and/or alter egos of MOECO.  All activities of MOEX Offshore 2007, L.L.C. and MOEX USA Corporation should be imputed to MOECO, rendering MOECO liable to Petitioners for the intentional, willful, grossly negligent and negligent acts and omissions of MOEX Offshore 2007, L.L.C. and MOEX USA Corporation.

71.

The existence and breach of these legal duties are established under the general maritime and state law as deemed applicable herein.

72.

In addition to the intentional, willful, wanton, reckless, negligent and grossly negligent acts and omissions described herein, and in the alternative thereto, the damages suffered by Petitioners were caused by acts or omissions of the Defendants that are beyond proof by the Petitioners but were within the knowledge and control of the Defendants, there being no other possible conclusion that the blowout, explosions, fire, sinking, and spill resulted from the negligence of Defendants.  The blowout, explosions, fire, sinking, and the resulting spill would not have occurred had the Defendants satisfied the duty of care imposed on them.  Petitioners therefore plead the doctrine of *res ipsa loquitor*.

73.

As a result of this explosion, oil, chemical dispersants, and petroleum fumes soiled the coast of Louisiana damaging and threatening to damage natural resources including air, land, water, and marine life and personal and real property.

74.

Defendants' intentional, willful, wanton, reckless, negligent and grossly negligent acts and omissions caused Petitioners' damages which consist of the oiling and contamination of their real and personal property, devaluation of their property, stigma resulting from the taint of their property caused by the spill, lost business opportunities, loss of goodwill, lost profits, lost rents, loss of earning capacity, loss of use, inconvenience, mental anguish, and emotional distress.

75.

Petitioners seek exemplary damages including attorney's fees, litigation expenses, court costs, and expert witness fees.

76.

Petitioners seek punitive damages due to the willful, wanton, reckless, and grossly negligent acts and omissions of the Petitioners.

77.

Due to the intentional, willful, wanton, reckless, and grossly negligent character of the acts and omissions that caused Petitioners' damages, Defendants are liable to Petitioners for all their claimed damages, whether reasonably foreseeable or not.

78.

Petitioners seek prejudgment interest.

WHEREFORE, Respondents, Claimants, and Petitioners, Gary and Deborah Sellno, Kerry and Sandra Lauricella, William and Georgia Gibson, Dale and Denise LeBrun, Larry and Kelly Tapp, E.P. and M.B. Geghardt, Michael L. and Dawn Dawson, Michael L. Dawson Construction, Ned and Ginger Naquin, Gordon R. Cordes, James Agent, Clark Barrios, Rose Baudoin, Rex and Beverly Rambo, Vincent and Marlene Lobue, Mark and Carol Dawson, Henry

J. Becnel, Jr., Anthony Caramonta, Paul Leone, Brian Reuther, Peter and Karen Casbarian, Gerard Cormeaux, Keith and Brooksoon Fabre, Kevin and Kelly Poteet, Quality Metal Works, Inc., Kirk Fabre, Denise and Sean Migliore, Casbarian Engineering Associates, L.L.C., Jody and Tammy Sellno, Carolyn Campo, Robin Campo and Richard A. Campo III, Buddy and Luanna Cambas, Buddy and David Cambas, Cambas Electric, Inc., Doug and Mary Moore, Juro Bezmalinovic, Bez Fabrication, Inc. and Caleb H. Didriksen and Sondra Brown, demand judgment against Petitioners, Counterclaim Defendants, and Third Party Defendants jointly, severally, and solidarily, for:

(a)     Economic and compensatory damages, including general damages, in amounts to be determined at trial;

(b)     Exemplary and punitive damages;

(c)     Attorneys' fees, expert witness fees, and all costs of litigation;

(d)     Pre-judgment and post-judgment interest at the maximum rate allowable by law;

(e)     Such other and further relief available under all applicable state and federal laws and any relief the Court deems just and appropriate.

Respectfully submitted,

**DIDRIKSEN LAW FIRM**
*/s/ Caleb H. Didriksen*
**CALEB H. DIDRIKSEN**, La. Bar No. 1334
**RICHARD J. GARVEY**, La. Bar No. 20822
**RICHARD TRAINA**, La. Bar No. 22170
**DIANE R. COSENZA**, La. Bar No. 4419
3114 Canal Street
New Orleans, LA 70119
Telephone:  (504) 586-1600
Facsimile:  (504) 822-3119
Email: caleb@didriksenlaw.com
          garvey@didriksenlaw.com
          diane@didriksenlaw.com
          rtraina@didriksenlaw.com
