IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL by the OIL RIG "*DEEPWATER HORIZON*" in the GULF OF MEXICO, on April 20, 2010 | MDL NO. 2179<br><br>SECTION: J |
| **THIS DOCUMENT APPLIES TO THE *TRANSOCEAN* LIMITATION ACTION, NO. 10-2771** | JUDGE BARBIER<br><br>MAGISTRATE JUDGE SHUSHAN |

**MEMORANDUM OF DEFENDANT, DRIL-QUIP, INC.
CONCERNING PLANNING FOR TRIAL OF THE LIMITATION ACTION**

Dril-Quip, Inc. ("Dril-Quip"), currently a "tendered" Third-Party Defendant in the maritime limitation action initiated by four Transocean Petitioners ("Transocean"), No. 10-2771, but which has moved to dismiss the Third-Party Complaint as to itself, respectfully submits this brief to discuss the plan for trial in the limitation action beginning February 2012. Dril-Quip's recommendations generally resemble those of Cameron International Corporation ("Cameron") but depart therefrom in certain respects.

**I.      Summary of Dril-Quip's Position**

In summary, Dril-Quip's position on the trial scheduled for February 2012, informed by its understanding of governing law, is as follows:

(a)     The Court may and should join in this initial trial phase: (1) the claims of the limitation petitioners ("Transocean") under the maritime limitation statute, 46 U.S.C. §§ 30505, 30506; and (2) selected wrongful death claims and/or personal injury or property damage claims asserted in the limitation action that are ***not*** alleged to be based on oil spill damage ***and*** that were filed originally in this Court and designated as maritime claims under Rule 9(h) or qualify as such because they are maritime as a matter of law;

(b)     The Court may and should join in this initial trial phase the tendered claims against *properly* impleaded defendants arising out of the claims selected for trial as described in (a)(2), and any claims or cross-claims for indemnity, or allocation of fault arising out of the selected (a)(2) claims;

(c) As a consequence of the Oil Pollution Act of 1990 ("OPA"), the Court may not and should not join in this initial trial phase any economic loss claims or other claims that *are* alleged to be based on oil spill damage;

(d) As a consequence of Admiralty Rule F, each selected claimant must prosecute his or her claims against Transocean and impleaded defendants individually;

(e) With the exception of the Transocean claims for limitation of liability under the maritime limitation statute, and unless the claims described under (a)(2) hereof are limited to pure maritime claims as Dril-Quip suggests, the claims in this initial phase should be tried by a jury to preserve the Seventh Amendment rights of all parties; and

(f) Like every trial conducted in this Court, each and every trial and phase of a trial, including the February 2012 trial, must be conducted to adjudicate claims leading to the entry of judgment, and may not be conducted to address abstract factual or legal issues.

Dril-Quip respectfully notes its position, asserted in its Motion to Dismiss Third-Party Complaint, that no party has yet stated against it a claim upon which relief may be granted. Accordingly, it submits this Memorandum to preserve its positions in the event it is put to trial in a cause from which it contends it should be dismissed.

## II. Applicable Law

Once claims are properly tried to judgment, federal law may (or may not) prevent the re-litigation of certain issues underlying those resolved claims under the principle of collateral estoppel or issue preclusion. But the scheduled trial in the limitation action must adjudicate claims, not abstract issues. In order to plan an appropriate trial, therefore, it is necessary first to identify the claims that are properly raised in the limitation action and that may be tried in February 2012 and to determine what law governs those claims. Only by resolving *what* legal issues are to be tried in order to adjudicate those claims may the Court properly resolve *how* to try those claims.

### A. Transocean's Limitation Claims

As Cameron notes, if the trial is limited to trial of the claims raised by the Transocean petition under the maritime limitation statute, the law and procedure would be agreed and

uncontroversial. There would be a bench trial among Transocean and the proper limitation claimants to determine whether under the limitation statute Transocean may be relieved of liability or whether Transocean is entitled to limit its liability for the event at issue. *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438 (2001). The governing law, of course, would be the limitation statute itself. 46 U.S.C. §§ 30505, 30506. Here, the situation is complicated by the referral to this Court by the JPML of many claims – maritime and otherwise – filed in other jurisdictions. Both limitation law and MDL law grant the Court considerable discretion in case management, but neither grants authority to try all causes brought before it. *See Lewis*, 531 U.S. at 447-51; *In re Mississippi Limestone Corp.,* No. 4:09-cv-00036-SA-DAS, 2010 WL 4174631, *2-3 (N.D. Miss., Oct. 7, 2010) (limitation); *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach,* 523 U.S. 26, 34 (1998) (MDL).

    **B.**    **The Personal Injury, Wrongful Death and Property Damage Claims Not Based on the Oil Spill**

There are strong arguments for conducting the trial in strict phases and for resolving the core limitation claims of Transocean before proceeding to trial of any other claims. Trying additional claims with the core limitation claims will add legal and procedural complexities that the Court must address and resolve in order to conduct a proper trial addressing the claims of Transocean and other parties.

    **1.**    **Claims <u>Not</u> Based on the Oil Spill.**

One subset of claims for which the legal issues are less controversial than others are the personal injury and wrongful death claims, and any property damage claims asserted in the limitation action that are not based on damage occasioned by the oil spill to the extent the claims are maritime in nature. Dril-Quip believes that these claims may be tried in the limitation action under the terms of 46 U.S.C. §§ 30506 (personal injury and wrongful death) and 30505 (property damage)

and could therefore be tried as part of the limitation trial in February 2012. The draft trial plan orders submitted by the Plaintiffs' Steering Committee and Transocean on the one hand and from BP on the other both contemplate that these claims will be part of the February 2012 trial, although they do not contain the "maritime" condition suggested here. In addition, trying those claims along with the core limitation claims may make practical sense because of the similarities of the underlying issues of fault.

Also, claims properly tendered by Transocean and any cross-claims for contribution, indemnity or allocation of fault *with respect to that precise type of claim not based on the oil spill* can also be tried at the same time as the underlying claims. Once again, trying claims against defending parties other than Transocean and "claims over" for allocation of fault at the same time as the underlying claims and the Transocean claims under the limitation statute may make practical sense because they all involve related issues of fault. However, an exception should be made for claims, whether by a plaintiff or among defendants, that are, by preexisting agreement, subject to arbitration. No such claims should be tried in this Court.

**2. What Law Applies?**

The non-oil-spill claims, the tendered non-oil-spill claims, and the related "claims over" for allocation of fault raise important issues of choice of law that the Court should resolve as expeditiously as possible. Many parties claim that these claims are governed by maritime law. Cameron, however, disagrees. It has argued in its dismissal briefs (Doc. Nos. 1154-1, pp. 9-16, and 1395-1, pp. 14-21), that the underlying non-oil-spill claims and non-contractual "claims over" with respect to those underlying claims – all of which are based on allegations of a "loss of well control" – are governed by Louisiana law as surrogate federal law under the terms of the Outer Continental Shelf Lands Act, 43 U.S.C. § 1333(a) ("OCSLA"). *See Texaco Exploration and Production, Inc. v.*

*AmClyde Engineered Products Co., Inc.*, 448 F.3d 760, 771-75 (5th Cir.), *cert. denied*, 549 U.S. 1053 (2006).  To the extent this position rests on a theory that the equipment supplied by Cameron was affixed to the sea floor, Dril-Quip respectfully notes that the equipment *it* supplied was embedded in the sea floor below Cameron's and reserves its position on the choice of law issue.

Dril-Quip agrees that neither the possibility that certain claims arising from an event may be governed by general maritime law nor the existence of admiralty jurisdiction means that ***all*** claims arising from that event are governed by general maritime law.  Instead, claims against certain defendants may be governed by OCSLA even if the claims against a vessel owner are governed by maritime law.  *See Henson v. Odyssea Vessels, Inc.*, 2008 WL 544184 (E.D. La.) (Barbier, J.); *accord, Debellefeuille v. Vastar Offshore, Inc.*, 139 F. Supp. 821 (S.D. Tex. 2001).  Dril-Quip also agrees that the Court should resolve this fundamental choice of law issue with respect to all the non-oil-spill claims as expeditiously as possible.

    **C.**    **No Oil Spill Claim of Any Nature Should Be Tried in the Limitation Action**

Some parties would include economic loss claims based on the oil spill or other issues related to the oil spill in the February 2012 trial.  Dril-Quip disagrees.  The addition of claims for economic loss allegedly caused by the release of oil from the Macondo well would add unnecessary complexity to an already complex trial, and in any event, as a consequence of OPA, those claims do not belong in the limitation action.

At the very least, the oil spill economic loss claims raise serious disputes over jurisdiction, pre-emption, governing law, and procedure and would inject highly complex factual disputes involving events ***after*** the initial explosion and fires on April 20, 2010 that cannot be the subject of appropriate discovery in time for a trial in February 2012.  Dril-Quip therefore agrees with Cameron that expanding the trial in February 2012 beyond the non-oil-spill claims and allocation of

5

fault for the non-oil-spill claims would be ill-advised. Authoritative case law holds that OPA pre-empts both the maritime limitation statute and the procedures of Admiralty Rule F with respect to claims for economic loss allegedly caused by an oil spill. *In re Metlife Capital Corp.*, 132 F.3d 818, 820-24 (1st Cir. 1997), *cert. denied*, 524 U.S. 952 (1998). Accordingly, the outstanding injunction in this limitation action "does not apply" either "to any claims asserted against Petitioners under" OPA or to claims by the United States under other federal statutes. Document 131 (in 10-2771), p. 4.

Choice of law with respect to the oil spill economic loss claims is complicated to an extraordinary degree by the positions taken by the economic loss claimants. The economic loss claimants argue that general maritime law and the statutory and non-statutory laws of **all** the coastal states apply simultaneously to oil spill economic loss claims. With respect to general maritime law, their contentions contradict authoritative circuit court authority. *South Port Marine, LLC v. Gulf Oil Ltd. P'ship*, 234 F.3d 58, 65-66 (1st Cir. 2000) ("Congress intended the OPA to be the exclusive law governing oil spills"). With respect to state law, their contentions contradict OCSLA, OPA, and Supreme Court decisions consistently rejecting the application of multiple state laws to multistate pollution. *Illinois v. Milwaukee*, 406 U.S. 91 (1972); *accord*, *International Paper Co. v. Ouellette*, 479 U.S. 481 (1987). As explained in several parties' dismissal briefing, by reason of OCSLA and OPA, the oil spill economic loss claims in this proceeding are instead governed exclusively by OPA, its claims procedure, and its provisions for federal court litigation, "[n]otwithstanding any other provision or rule of law." 33 U.S.C. § 2702(a); *see id.* §§ 2702(b); 2713(a); *see also* 43 U.S.C. § 1333(a) (federal law exclusively governs oil and gas production from the Outer Continental Shelf).

Claims based on the oil spill, moreover, will interject complex fact issues concerning events ***after*** the explosions and fires of April 20, 2010. The qualitative difference between explosion issues and containment issues and the considerable discontinuity between parties interested in the

former phase and those interested in the latter phase strongly suggest that discovery into those factual issues cannot be reasonably completed in time for trial in February 2012.

Dril-Quip agrees with Cameron that the oil spill economic loss claims are governed by OPA (in part by reason of OCSLA) and cannot legitimately be tried in the limitation action. Likewise, any contribution "claims over" or allocation of fault with respect to the economic loss oil spill claims cannot legitimately be tried in the limitation action.

### III. How to Conduct the February 2012 Trial in the Limitation Action

There are two overarching issues to address in determining how to conduct a trial in the limitation action in February 2012. First, what claims must be resolved by a jury under the Seventh Amendment? Second, to what extent may a claimant "represent" or "bind" other claimants?

Dril-Quip does not believe, as Cameron contends, that the answers to these questions are straightforward. It is as yet unclear whether claims against Cameron, and perhaps others, must be resolved under Louisiana law pursuant to the terms of OCSLA. Dril-Quip does agree, however, that some of the liability claims and allocation of fault related to the *Deepwater Horizon* event on April 20, 2010 must be conducted before a jury, and that no claimant in a limitation action can act as a "representative" of any other claimant, but that each claim in a limitation action must be prosecuted individually. Correspondingly, the effect of any judgment on any individual claim or any allocation of fault with respect to that claim must be left to resolution under the federal law of issue preclusion after judgment resolving one or more individual claims and allocating fault with respect to each individual claim.

Thus, Dril-Quip contends that the February 2012 trial be limited to pure maritime claims. If, however, the Court selects a mixed menu of cases, then they should be tried to a jury except for the limitation issues addressed in subsection D., *infra*.

7

### A.   Jury Trial

It is well settled that jury trials are permissible in admiralty proceedings. *Fitzgerald v. U.S. Lines Co.*, 374 U.S. 16, 20 (1963). The issue is governing law. If a non-oilspill claim against a defendant arises under Louisiana law as surrogate federal law by reason of OCSLA, then that defendant is entitled to have a jury resolve the factual issues raised by the claims against it. *Henson v. Odyssea Vessels, Inc.*, 2008 WL 544184 at *4 (E.D. La.) (Barbier, J.); *accord, Debellefeuille v. Vastar Offshore, Inc.*, 139 F. Supp. 821 (S.D. Tex. 2001). To the extent that underlying non-oil spill claims are governed by OCSLA, allocation of fault would likewise be subject to trial by jury. This Court wisely determined in a prior case that all interconnected OCSLA (Louisiana law) and maritime issues in an admiralty trial should be resolved by a jury. *Odyssea Vessels* at *4.

The limitation action does not justify a different result. In analogous circumstances, the Supreme Court has required a jury trial to resolve legal issues raised by counterclaim in a lawsuit initiated in equity. *Beacon Theatres Inc. v. Westover*, 359 U.S. 500 (1959). Accordingly, jury trials have been conducted in limitation action proceedings. *See Newton v. Shipman*, 718 F.2d 959 (9th Cir. 1983); *Red Star Towing & Transp. v. The Ming Giant*, 552 F. Supp. 367 (S.D.N.Y. 1982). As an authoritative commentator has observed, "combining the admiralty action with a jury action within the same case is more consistent with the idea of a concursus of claims in admiralty, and more efficient, . . .." 29 MOORE'S FED. PRAC. 3rd § 708,05 at 708-71 (2011).

### B.   Individual Claims

There has been some suggestion that selected limitation claimants "represent" other claimants, or that findings for one claimant "bind" the resolution of claims related to another claimant. Cameron disagrees, and Dril-Quip joins that disagreement. It is well settled that Admiralty Rule F, which governs the procedure for the limitation action, is incompatible with a class

action. *In re Lloyd's Leasing, Ltd.*, 902 F.2d 368, 370 (5th Cir. 1990). As the Fifth Circuit explained, "the entire thrust of Supplemental Rule F is that each claimant must appear individually and this is obviously inconsistent with the class action." *Id.* Furthermore, Federal Rule 23(a) explicitly states that one party may act "as representative" of other parties "***only if***" a class is certified pursuant to the procedures of Rule 23. There has been no resolution of class action issues in this proceeding.

For these reasons, class action features cannot be slipped into this limitation action through the back door. No claimant can represent another claimant in a limitation trial. The Court should therefore resist any attempt in a trial plan to appoint "representative" plaintiffs for the February 2012 trial.

### C. Trying Claims, Not Issues

Other parties would have the Court address freestanding issues at the February trial. Some would even have the Court make "determinations" on particular issues rather than adjudicate claims. This would be improper. Court resolutions are binding in only the circumstances prescribed by the law of collateral estoppel or issue preclusion. *See Financial Acquisition Partners, L.P. v. Blackwell*, 440 F.3d 278, 284 (5th Cir. 2006). Issue preclusion must be based on a "prior federal decision" that "resulted in a judgment on the merits." *Id.* Because issue preclusion involves analysis of a "prior federal decision," the binding nature of any trial cannot be resolved by the first court, only by the latter court(s). Most important, because issue preclusion requires a judgment on the merits, issue preclusion cannot operate in a vacuum; there must be a judgment on the merits of a claim, not merely a "determination" of "issues."

Therefore, the February 2012 trial must be a trial that adjudicates a party's claim or claims, not a hearing on freestanding issues, and the Court should not issue an order purporting to make any resolution "binding" in advance.

### D. Trial of the Limitation Act Claims

If the February trial were limited to the claims of Transocean under the maritime limitation statute, the procedure would be relatively simple and straightforward. There would be a bench trial involving Petitioners and all persons who timely filed individual claims ("claimants"). The claimants would bear the burden of establishing a prima facie case of the fault of Petitioners. *See In re Brasea, Inc.*, 583 F.2d 736, 738 (5th Cir. 1978). Once the Court is satisfied that claimants have carried this burden, the burden would shift to the Transocean Petitioners either to prove that others are entirely at fault or to show under the terms of the limitation act that they are entitled to limit their liability. *Id.* & n.2. The order of proof should be tailored to present those issues first. In the event a jury is empaneled, it will do no harm to Transocean's rights to allow the jury to hear this evidence in the interest of efficiency. The Court should pause the trial, decide the limitation issues, and proceed thereafter to other claims and defenses.

### E. Trial of Non-Oil-Spill Claims and "Claims Over"/Allocation of Fault

Dril-Quip agrees that individual personal injury, wrongful death and property damage claims based on the events of April 20, 2010, and the "claims over" to establish allocation of fault with respect to such individual claims can be tried in the February 2012 trial, and with its proposal that a manageable set of up to five (5) non-oil-spill claims be selected to be tried as part of the February 2012 trial along with the limitation act issues and the "claims over" to allocate fault with respect to the selected claims. As noted, these are not representative claimants, but claimants willing to have their individual claims against properly impleaded Third-Party Defendants tried as part of the February 2012 trial.

### F. Causation

Dril-Quip agrees with Cameron that to serve as a proper basis for liability and/or an

allocation of fault, all elements of proximate cause must be established with respect to all defendants subject to that liability determination and fault allocation.

### G. Details of Trial

Dril-Quip does not believe that additional details about the February 2012 trial should be included in any court order with respect to the trial plan *at this time*.

## IV. Conclusion

Dril-Quip respectfully concurs in the trial plan proposed by Cameron for the Court's Consideration, except as explained herein.

Date:   April 20, 2011

Respectfully submitted,

**WARE, JACKSON, LEE & CHAMBERS, LLP**

BY:  /s/ C. Dennis Barrow, Jr.
    Don Jackson
    Texas Bar No. 10476000
    Fed ID No. 6915
    C. Dennis Barrow, Jr.
    Texas Bar No. 00796169
    Fed ID No. 20624
    2929 Allen Parkway, 42nd Floor
    Houston, TX 77019
    Phone :  (713) 659-6400
    Fax    :  (713) 659-6262
    Counsel for Defendant, Dril-Quip, Inc.

**CERTIFICATE OF SERVICE**

      I certify that the above and foregoing document will be served on all counsel by electronically uploading the same to LexisNexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 20th day of April, 2011.

      /s/ C. Dennis Barrow, Jr._____
      C. Dennis Barrow, Jr.