## UNITED STATES DISTRICT OF COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **IN RE: OIL SPILL BY THE OIL** | § | **MDL No. 2179** |
| **RIG "DEEPWATER HORIZON"** | § | |
| **IN THE GULF OF MEXICO,** | § | **CIVIL ACTION NO. 10-2771** |
| **ON APRIL 20, 2010** | § | |
| | § | |
| **This Document Applies to:  ALL CASES** | § | |
| **AND CAUSE NO. 2:10-CV-02771** | § | |
| **(IN RE THE COMPLAINT AND** | § | **SECTION: J** |
| **PETITION OF TRITON ASSET** | § | |
| **LEASING GMBH, ET AL. IN A** | § | |
| **CAUSE FOR EXONERATION FROM** | § | **JUDGE BARBIER** |
| **OR LIMITATION OF LIABILITY)** | § | |
| | § | **MAG. JUDGE SHUSHAN** |

## ORIGINAL CROSS-CLAIMS OF DEFENDANT
## HALLIBURTON ENERGY SERVICES INC.

NOW COMES Defendant Halliburton Energy Services, Inc. ("HESI") acting as cross-plaintiff, and makes and files this, its Original Cross-Claims, and in support thereof, would respectfully show this Court as follows:[1]

## I.
## BACKGROUND

1.      On April 20, 2010, there was a blowout and explosion on board the MODU DEEPWATER HORIZON, ("DEEPWATER HORIZON"), during efforts to temporarily abandon a well in Mississippi Canyon, Block 252, the location known as "Macondo" (the "Macondo Well"). Subsequently, the DEEPWATER HORIZON sank into the Gulf of Mexico and oil was released.  Numerous individual and class action lawsuits have been filed in state and

---

[1] While HESI has not included any of the Transocean Entities in this particular pleading, HESI has asserted its claims against the Transcoean Entities in Halliburton Energy Services Inc.'s Answer to Petitioner's Complaint and Petition for Exoneration From or Limitation of Liability and Original Claim in Limitation (Cross Claim) Against Petitioners, ("HESI's Cross Claim against the Transocean Entities"), a separate pleading filed with this Court.  HESI incorporates herein, as if set out in full, the allegations contained within HESI's Cross Claim against the Transocean Entities.

**ORIGINAL CROSS-CLAIMS OF HALLIBURTON**
**ENERGY SERVICES, INC.**                                                    **Page 1**

federal courts for alleged injuries and damages resulting from the blowout and subsequent remediation and response efforts.  Additional claims are expected.  Many of these lawsuits have been transferred to this Court for pretrial proceedings.

2.      Claimants/Plaintiffs have filed a number of claims against HESI and others under maritime law and state common law.  Generally, Claimants/Plaintiffs allege damages resulting from the acts of various defendants, including HESI, that allegedly caused the fire and explosion on board the DEEPWATER HORIZON, its sinking, and the subsequent oil spill.  These claims were tendered to HESI by the Transocean Entities' Rule 14(c) Tender, in Civil Action No. 10-2771, (the "Rule 14(c) Tender").  HESI denies that it is liable and/or responsible for any of the alleged injuries and/or damages claimed by Claimants/Plaintiffs.

## II.
## JURISDICTION AND VENUE

3.      This Court has admiralty and maritime jurisdiction of this Cross Action pursuant to Rule 9(h) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1333.

4.      Venue is proper in this District pursuant to the Order transferring this case to the Eastern District of Louisiana, dated August 16, 2010.

## III.
## THE PARTIES

5.      HESI is a Delaware corporation with its principal place of business in Houston, Texas.

6.      Cross-Defendant BP Exploration & Production, Inc., ("BP Exploration"), is a Delaware corporation with its principal place of business in Warrenville, Illinois.  BP Exploration was the lessee and the designated operator of the Oil and Gas Lease of Submerged Lands Under the Outer Continental Shelf Act, Serial No. OCS-G 37306 (the "Lease"), granted by the former Mineral Management Services ("MMS"), now re-organized as the Bureau of

Ocean Energy Management Regulation & Enforcement ("BOEMRE"). The Lease allowed BP to perform oil exploration, drilling, and production-related operations in Mississippi Canyon, Block 252, where the Macondo Well was located. This Court has personal jurisdiction over BP Exploration because it is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana. Cross-Defendant BP Exploration has previously been served with various complaints and summonses as well as the Rule 14(c) Tender.

7.      Cross-Defendant BP America Production Company ("BP America") is a Delaware corporation with its principal place of business in Houston, Texas. This Court has personal jurisdiction over BP America because it is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana. Cross-Defendant BP America has previously been served with various complaints and summonses as well as the Rule 14(c) Tender.

8.      Cross-Defendant BP p.l.c. is a British Limited Company with its corporate headquarters in London, England. BP p.l.c. is the global parent company of the world-wide business operating under the "BP" logo. BP p.l.c. operates its various business divisions, such as the "Exploration & Production" division that includes BP Exploration and BP America, through vertical business arrangements. Cross-Defendants BP Exploration and BP America are wholly owned subsidiaries of BP p.l.c. and are sufficiently controlled by BP p.l.c. so as to be BP p.l.c.'s agents in Louisiana and the US more generally. This Court has general jurisdiction over BP p.l.c. pursuant to Louisiana's Long-Arm General Jurisdiction Provision (13 Louisiana Statute §3201 (B)), in combination with Rule 4(k)(l)(A) of the Federal Rules of Civil Procedure. This Court has specific jurisdiction over BP p.l.c. pursuant to Louisiana's Long-Arm Specific Jurisdiction Provision (13 Louisiana Statute §3201(B)), in combination with Rule 4(k)(l)(A) of

**ORIGINAL CROSS-CLAIMS OF HALLIBURTON
ENERGY SERVICES, INC.**                                                **Page 3**

the Federal Rules of Civil Procedure.  HESI's cross-claims arise out of the conduct committed by the direct or indirect actions of BP p.l.c.'s agents that caused injury or damage in Louisiana by an offense or quasi-offense committed through acts and/or omissions outside of Louisiana.  BP p.l.c. regularly does or solicits business, or engages in other persistent courses of conduct, or derives revenue from goods used or consumed or services rendered in Louisiana.  These acts and/or omissions occurred prior to and after the blowout that occurred on the DEEPWATER HORIZON.  Cross-Defendant BP p.l.c. has previously been served with various complaints and summonses as well as the Rule 14(c) Tender.  The BP Defendants identified in paragraphs 6-8 are collectively referred to as "BP".

9.      Cross-Defendant M-I, LLC a/k/a M-I Swaco ("M-I") is a Delaware limited liability company with its principal place of business in Wilmington, Delaware.  M-I was, at all relevant times, registered to do, and was doing, business in Louisiana and within this district.  M-I supplies drilling and completion fluids and additives, as well as pressure control, vessel instrumentation, and drilling waste management products and services to oil and gas companies in Louisiana and elsewhere.  On the DEEPWATER HORIZON, M-I provided mud products, including drilling fluids and spacers, engineering services, and mud supervisory personnel, such as mud engineers and drilling fluid specialists, to manage the properties of those fluids in the Macondo Well.  M-I employed, planned and/or supervised key fluid activities concerning the Macondo Well, such as the mud displacement that was occurring at the time of the April 20, 2010 Macondo Well blowout.  This Court has personal jurisdiction over M-I because it is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.  Cross-Defendant M-I has previously been served with various complaints and summonses as well as the Rule 14(c) Tender.

10.     Cross-Defendant Cameron International Corporation f/k/a Cooper-Cameron Corporation ("Cameron") is a Delaware corporation with its principal place of business in Houston, Texas.   Cameron is registered to do and does business in the State of Louisiana. Cameron manufactured, designed, supplied, installed, maintained and/or modified the sub-sea emergency well-closure device known as a blowout-preventer ("BOP") on the DEEPWATER HORIZON, and at all pertinent times, contracted with Cross-Defendant Transocean Deepwater Drilling, Inc. for the provision of the BOP which was installed at the Macondo wellhead.  This Court has personal jurisdiction over Cameron because it is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.  Cameron has previously been served with various complaints and summonses as well as the Rule 14(c) Tender.

11.     Cross-Defendant Anadarko Exploration & Production Company LP ("Anadarko E&P") is a Delaware limited partnership with its principal place of business in The Woodlands, Texas.  Anadarko E&P is an oil and gas exploration and production company.  Through various agreements, Anadarko E&P became a co-lessee under the terms the Lease.  As of April 20, 2010, and continuing until at least April 28, 2010, Anadarko E&P held a 22.5% interest in the Lease. This Court has personal jurisdiction over Anadarko E&P because it is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.  Cross-Defendant Anadarko E&P has previously been served with various complaints and summonses as well as the Rule 14(c) Tender.

12.     Cross-Defendant Anadarko Petroleum Corporation, or ("Anadarko Petroleum") is a Delaware corporation with its principal place of business in The Woodlands, Texas.  Anadarko Petroleum is registered to do and does business in the State of Louisiana.  Anadarko Petroleum is an oil and gas exploration and production company.  Through various agreements, Anadarko

Petroleum became a co-lessee under the terms of the Lease.  As of April 20, 2010, and continuing until at least April 28, 2010, Anadarko Petroleum held a 2.5% interest in the Lease. This Court has personal jurisdiction over Anadarko Petroleum because it is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana. Cross-Defendant Anadarko Petroleum has previously been served with various complaints and summonses as well as the Rule 14(c) Tender.

13.     Cross-Defendant MOEX Offshore 2007 LLC ("MOEX Offshore") is a Delaware corporation with its principal place of business in Houston, Texas.  Through various agreements, MOEX Offshore became a co-lessee under the terms of the Lease.  As of April 20, 2010, and continuing until at least April 28, 2010, MOEX Offshore held a 10% interest in the Lease.  This Court has personal jurisdiction over MOEX Offshore because it is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.  Cross-Defendant MOEX Offshore has previously been served with various complaints and  summonses as well as the Rule 14(c) Tender.

14.     Cross-Defendant MOEX USA Corporation ("MOEX USA") is a Delaware corporation with its principal place of business in Houston, Texas.  MOEX USA is the parent company of MOEX Offshore 2007 LLC.  This Court has general jurisdiction over MOEX USA pursuant to Louisiana's Long-Arm Specific Jurisdiction Provision (13 Louisiana Statute §3201 (B)), in combination with Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure.  MOEX USA does business in Louisiana, has continuous and systematic contacts with Louisiana (and the U.S. more generally) and has been served with a Summons and individual Complaints that are the subject of the Master Claim in Limitation.  This Court has specific jurisdiction over MOEX USA pursuant to Louisiana's Long-Arm Specific Jurisdiction Provision (13 Louisiana Statute

§3201(B)), in combination with Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure.  These cross-claims arise out of the conduct committed by the direct or indirect actions of MOEX USA's agents, that caused damage in Louisiana by an offense or quasi-offense  committed through an act or omission outside of Louisiana.  MOEX USA regularly does or solicits business, or engages in other persistent course of conduct, or derives revenue from goods used or consumed or services rendered in Louisiana.  These acts or omissions took place before and after the blowout.  Cross-Defendant MOEX USA has previously been served with various complaints and summonses as well as the Rule 14(c) Tender.

15.     Cross-Defendant Mitsui Oil Exploration Company, Ltd., ("MOECO") is a Japanese corporation with its principal place of business in Tokyo, Japan.  Upon information and belief, MOECO is a corporate parent and/or alter ego of MOEX Offshore, which holds a 10% stake in the Lease.   Cross-Defendant MOECO has previously been served with various complaints and summonses as well as the Rule 14(c) Tender.

16.     Cross-Defendant Weatherford U.S. L.P., ("Weatherford"), is a Louisiana limited partnership that maintains its principal place of business in Houston, Texas.  At all pertinent times, Weatherford was registered to do, and was doing business, in Louisiana and within this District.   Weatherford designed, manufactured, marketed, sold, and/or distributed the casing components for the Macondo Well, including the float equipment and centralizers, and provided the personnel and equipment for running the casing and casing components into the well bore. This Court has personal jurisdiction over Weatherford because it is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.  Cross-Defendant Weatherford has previously been served with various complaints and summonses as well as the Rule 14(c) Tender.

17.     Cross-Defendant Weatherford International, Inc., ("Weatherford International") is a Delaware corporation with its principal place of business in Houston, Texas.  Weatherford International designed, manufactured, marketed, sold and/or distributed the casing components for the Macondo Well, including the float collar, shoes, and centralizers, and provided the personnel and equipment for running the casing and casing components into the well bore.  This Court has personal jurisdiction over Weatherford International because it is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.  Cross-Defendant Weatherford International has previously been served with various complaints and summonses as well as the Rule 14(c) Tender.

18.     Cross-Defendant Dril-Quip, Inc., ("Dril-Quip") is a Delaware corporation which maintains its principal place of business in Houston, Texas.  Dril-Quip was involved in providing wellhead systems to the DEEPWATER HORIZON, including the Macondo Well.  This Court has personal jurisdiction over Dril-Quip because Dril-Quip is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.  Cross-Defendant Dril-Quip has previously been served with various complaints and summonses as well as the Rule 14(c) Tender.

19.     Cross-Defendant Marine Spill Response Corporation ("MSRC") is a Tennessee non-profit corporation with its principal place of business in Herndon, Virginia.  At all pertinent times, MSRC was doing business in the State of Louisiana.  MSRC participated in the post-blowout remediation and response efforts.  Cross-Defendant MSRC has previously been served with various complaints and summonses as well as the Rule 14(c) Tender.

20.     Cross-Defendant Airborne Support, Inc., ("ASI"), is a Florida corporation with its principal place of business in Houma, Louisiana.  At all pertinent times, ASI was doing business

in the State of Louisiana.  ASI participated in the post-blowout remediation and response efforts. Cross-Defendant ASI has previously been served with various complaints and summonses as well as the Rule 14(c) Tender.

21.     Cross-Defendant Airborne Support International, Inc., ("ASI International"), is a Florida corporation with its principal place of business in Houma, Louisiana.  At all pertinent times, ASI International was doing business in the State of Louisiana.  ASI International participated in the post-blowout remediation and response efforts. Cross-Defendant ASI International has previously been served with various complaints  and summonses as well as the Rule 14(c) Tender.

22.     Cross-Defendant Lynden, Inc. is a Washington corporation with its principal place of business in Seattle, Washington.  At all pertinent times, Lynden was doing business in the State of Louisiana by virtue of its one hundred percent ownership interest in Lynden Air Cargo, LLC, an Alaskan limited liability company with its principal place of business in Seattle, Washington.  At all pertinent times, Lynden Air Cargo, LLC, (together with Lynden, Inc., "Lynden") was doing business in the State of Louisiana.  Lynden participated in the post-blowout remediation and response efforts.  Cross-Defendant Lynden has previously been served with various complaints and summonses as well as the Rule 14(c) Tender.

23.     Cross-Defendant Dynamic Aviation Group, Inc., ("Dynamic"), is a Virginia corporation with its principal place of business in Bridgewater, Virginia.  At all pertinent times, Dynamic was doing business in the State of Louisiana.  Dynamic participated in the post-blowout remediation and response efforts.  Cross-Defendant Dynamic has previously been served with various complaints and summonses as well as the Rule 14(c) Tender.

24.     Cross-Defendant International Air Response, Inc., ("IAR") is an Arizona

corporation with its principal place of business in Coolidge, Arizona.  At all pertinent times, IAR was doing business in the State of Louisiana.  IAR participated in the post-blowout remediation and response efforts.  Cross-Defendant IAR has previously been served with various complaints and summonses as well as the Rule 14(c) Tender.

25.     Cross-Defendant Lane Aviation, ("Lane") is a Texas corporation with its principal place of business in Rosenberg, Texas.  At all pertinent times, Lane was doing business in the State of Louisiana.  Lane participated in the post-blowout remediation and response efforts.  Cross-Defendant Lane has previously been served with various complaints and summonses as well as the Rule 14(c) Tender.

26.     Cross-Defendant National Response Corporation, ("NRC"), is a Delaware corporation with its principal place of business in Great River, New York.  At all pertinent times, NRC, along with SEACOR Holding, Inc., a Delaware corporation with its principal place of business in Delaware, of which NRC is a wholly-owned subsidiary, was doing business in the State of Louisiana.  NRC participated in the post-blowout remediation and response efforts. Cross-Defendant NRC has previously been served with various complaints and summonses as well as the Rule 14(c) Tender.

27.     Cross-Defendant O'Brien Response Management, Inc., ("O'Brien") is a Louisiana corporation with its principal place of business in the Parish of St. Tammany, State of Louisiana. At all pertinent times, O'Brien was doing business in the State of Louisiana.  O'Brien participated in the post-blowout remediation and response efforts.  Cross-Defendant O'Brien has previously been served with various complaints and summonses as well as the Rule 14(c) Tender.

28.     Cross-Defendant Tiger Safety, LLC, ("Tiger"), is a Louisiana limited liability company with its principal place of business in the Parish of East Baton Rouge, State of

Louisiana. Tiger participated in the post-blowout remediation and response efforts. Cross-Defendant Tiger has previously been served with various complaints and summonses as well as the Rule 14(c) Tender.

29.     Cross-Defendant DRC Emergency Services, LLC, ("DRC"), is an Alabama limited liability company. At all pertinent times, DRC was doing business in the State of Louisiana. DRC participated in the post-blowout remediation and response efforts. Cross-Defendant DRC has previously been served with various complaints and summonses as well as the Rule 14(c) Tender.

30.     Cross-Defendant Nalco Company is a Delaware corporation wholly owned by Nalco Holdings LLC, a Delaware limited liability company. Cross-Defendant Nalco Holdings LLC is wholly owned by Cross-Defendant Nalco Finance Holdings LLC, a Delaware limited liability company. Cross-Defendant Nalco Finance Holdings LLC is wholly owned by Cross-Defendant Nalco Holding Company, a Delaware corporation. Cross-Defendants Nalco Company, Nalco Holdings LLC, Nalco Finance Holdings LLC, and Nalco Holding Company are collectively referred to as "Nalco" or the "Nalco Defendants." At all pertinent times, Nalco was doing business in the State of Louisiana. Nalco is the manufacturer of the chemical dispersants purchased by the BP Defendants for use in connection with the clean-up efforts in response to the blowout. Cross-Defendant Nalco has previously been named and served as a Third-Party Defendant in the Rule 14(c) Tender.

31.     The parties identified in paragraphs 6-30 are collectively referred to as Cross-Defendants.

## VI.
## CAUSES OF ACTION

32.     Pursuant to Rule 13(g), Defendant/Third Party Plaintiff HESI alleges the

following causes of action against Cross-Defendants:[2]

## COUNT I
## (CONTRIBUTION AND INDEMNITY)

33.     Paragraphs 1 through 32 are incorporated by reference as if fully set forth herein.

34.     Third Party Plaintiff is entitled to contribution and indemnity from Cross-Defendants BP Exploration, BP America, BP p.l.c. (collectively "BP"), M-I, Cameron, Anadarko E&P, Anadarko Petroleum, MOEX Offshore, MOEX USA, MOECO, Weatherford, Weatherford International, Dril-Quip, MSRC, ASI, ASI International, Lynden, Dynamic, IAR, Lane, NRC, O'Brien, Tiger, DRC, and the Nalco Defendants[3] for any and all sums it may be compelled to pay Claimants/Plaintiffs as a result of the incident made the basis of this proceeding.

35.     Any alleged injuries or damages claimed by Claimants/Plaintiffs were proximately caused by the actions and/or omissions of Cross-Defendants and not by any conduct on the part of HESI. Accordingly, HESI is entitled to a determination of proportionate responsibility and allocation of fault, pursuant to general maritime law, or other applicable law.

36.     HESI reserves its right to amend the allegations against these Cross-Defendants as additional discovery and evidence warrants.

## COUNT II
## (CONTRACTUAL INDEMNITY)

37.     Paragraphs 1 through 36 are incorporated by reference as if fully set forth herein.

38.     HESI is entitled to contractual indemnity as a third party beneficiary from Cross-Defendants M-I, Weatherford, and Weatherford International, for any and all sums it may be

---

[2] Presently, there are several motions pending before this Court seeking clarification regarding the applicable law in this matter. HESI alleges its claims herein, generally, without reference to any specific jurisdiction's law. HESI reserves its right to amend its pleadings as necessary after this Court determines the applicable law. In the meantime, each claim and cause of action should be read as if arising under maritime law and/or the law of any state under which Claimants/Plaintiffs have made a claim.

[3] As referenced collectively herein, the Responder Defendants include: MSRC, NRC, IAR, ASI, ASI International, Lane, Lynden, Dynamic, O'Brien, Tiger, DRC and the Nalco Defendants.

**ORIGINAL CROSS-CLAIMS OF HALLIBURTON**
**ENERGY SERVICES, INC.**                                              **Page 12**

compelled to pay Claimants/Plaintiffs relating to certain claims made as a result of the incident made the basis of this proceeding.

39.     Certain alleged injuries or damages claimed by Claimants/Plaintiffs were proximately caused by the actions and/or omissions of these Cross-Defendants and not by any conduct on the part of HESI. Accordingly, pursuant to the parties' contractual agreements, to which HESI is a third party beneficiary, HESI is entitled to a indemnification for any damages, sums, and/or settlements HESI may be compelled to pay and/or incur relating to certain claims.

40.     HESI reserves its right to amend the allegations against these Cross-Defendants as additional discovery and evidence warrants.

## COUNT III
### (NEGLIGENCE/GROSS NEGLIGENCE/WILLFUL MISCONDUCT)

41.     Paragraphs 1 through 40 are incorporated by reference as if fully set forth herein.

42.     The damages and injuries alleged by Plaintiffs/Claimants occurred as a result of the negligence of BP, Anadarko E&P, Anadarko Petroleum, MOEX Offshore, MOEX USA, MOECO, Cameron, Weatherford, Weatherford International, M-I, Dril-Quip, and the Responder Defendants.  These acts of negligence render these Cross-Defendants liable pursuant to the provisions of 46 USC §30104 and the general maritime law, or other applicable law for negligence.

### **The BP Defendants**

43.     BP was the primary owner of the Lease and was the sole Operator at the Macondo Well.  In this dual role, BP controlled most, if not all, of the actions of BP's sub-contractors.  BP decided on the well design.  BP decided when to conduct rig activities.  BP decided what products and services to use, and whether to accept or reject its contractors recommendations regarding those products and services.  BP decided whether critical well integrity tests were

properly conducted and whether it was safe to proceed to the next scheduled rig activity. BP decided how many rig activities to conduct simultaneously. BP decided the speed at which the well was drilled and the steps to be taken, or not taken, in order to ensure that the rig stayed as close as possible to its drilling schedule, with every day of delay costing BP at least $500,000.

44.     BP utterly failed to meet its duties and obligations, and knew so at the time. BP recklessly sacrificed safety for monetary savings and gain. BP carelessly ignored failed well integrity test results to move forward with procedures that put the well into an underbalanced condition that led to the blowout. BP ignored and disregarded HESI's recommendation regarding the necessary number of centralizers and ignored and disregarded HESI's warning that using an inadequate number of centralizers would result in the well having a severe gas flow problem. BP proceeded in an irresponsible manner with its temporary abandonment plan despite repeated warning signs that there were serious issues with the well. BP allowed multiple rig activities to be conducted simultaneously that masked subtle indicators of a well control issue. This callous and grossly irresponsible conduct by BP, whether acting alone or in concert with the actions and inactions of other Cross-Defendants, represents the absolute and undeniable cause of the horrific explosion and blowout that occurred on April 20, 2010, taking the lives of 11 men and injuring many others, as well as the tragic events that have occurred since that never-to-be forgotten night. BP knew that its greed and reckless disregard for its responsibilities as the Operator of the Macondo Well might have such tragic consequences. It should now be held fully accountable for its conduct.

45.     BP was negligent, grossly negligent, and/or acted with willful misconduct in at least the following ways:

> (a)     Failing to exercise ordinary and reasonable care in connection with its drilling design and operations;

(b)     Failing to exercise reasonable care while conducting drilling operations to ensure that a blowout did not occur;

(c)     Failing to exercise reasonable care after blowout to ensure that an oil spill did not occur;

(d)     Failing to exercise reasonable care to ensure that oil would expeditiously and adequately be contained within the immediate vicinity of the DEEPWATER HORIZON in the event of an oil spill;

(e)     Failing to exercise reasonable care to ensure that adequate safeguard, protocols, procedures and resources would be readily available to prevent and/or mitigate the effects of an uncontrolled oil spill into the waters of the Gulf of Mexico;

(f)     Choosing and implementing a long string well design instead of a liner/tie back design;

(g)     Using pipe material that it knew, and which it recognized before the blowout, might collapse under high pressure;

(h)     Using too few centralizers to ensure that the casing was centered into the well bore;

(i)     Failing to implement a full "bottoms up" circulation of mud between the running of the casing and the beginning of the cement job;

(j)     Cancelling the cement bond log test that would have confirmed the integrity of the cement job;

(k)     Failing to deploy a casing hanger lock down sleeve to prevent the wellhead seal from being blown out by pressure from below;

(l)     Failing to properly interpret pressure test results relating to well control and well integrity;

(m)     Failing to train its employees in the management of complex systems like those found on the DEEPWATER HORIZON;

(n)     Requiring simultaneous operations in an effort to expedite the project, making it difficult to track fluid volumes in the wellbore;

(o)     Failing to take appropriate action to avoid or mitigate the release of oil into the Gulf of Mexico;

(p)     Failing to timely bring the oil release under control;

(q)   Failing to exercise reasonable care in the operation, maintenance, handling, design, implementation, and execution of the relief and recovery efforts following the oil spill;

(r)   Violating statutory and regulatory standards set forth in the Clean Water Act, the Oil Pollution Act, and other applicable statutes, regulations, and industry standards; and

(s)   Failing to warn others on the rig of an influx of hydrocarbons in the wellbore.

## The Anadarko/MOEX Defendants

46.    At all times material herein, the Joint Operating Agreement ("JOA") entered into by and between the Anadarko E&P, Anadarko Petroleum, MOEX Offshore, MOEX USA, and MOECO (collectively the "Non-Operating Cross-Defendants") and BP required BP to obtain the approval of the Non-Operating Cross-Defendants to proceed with nondiscretionary operations in connection with the Lease by, *inter alia*, seeking their authorization for the expenditure of funds and/or by seeking their election or vote to participate in the next stage of operations. The JOA also provided for the sharing, in amounts proportionate to the working interest of each party, of any oil and gas discovered in connection with the Lease and of losses resulting from the approved activities.

47.    The JOA further required BP to provide the Non-Operating Cross-Defendants with detailed technical information regarding exploration and other operations performed in connection with the Lease, including applications for and modifications of permits to drill, mud logs, mud checks, and other information.  The Non-Operating Cross-Defendants had the right to and did obtain "real time" data as set forth in Section 5.7 of the JOA.  The Non-Operating Cross Defendants received detailed technical information regarding operations conducted in connection with the Lease and the JOA, including daily reports, access to a secure website containing sampling and other data, and access to real time data from the rig.

48.     The JOA provided for the prompt invoicing by BP of costs incurred under the JOA and prompt payment of their agreed-upon share by the Non-Operating Cross-Defendants, including, based upon information and belief, the costs of the well casing and wellhead and other materials purchased by BP. The JOA provided the Non-Operating Cross-Defendants with a mechanism to object to, prevent, control, address, and/or abate discharges or health and safety issues in connection with the Lease.

49.     On various dates, the Non-Operating Cross-Defendants each designated BP as their operator and local agent, with full authority to act on their behalf in complying with the terms of the Lease and applicable regulations.

50.     The Non-Operating Cross-Defendants are liable for the acts and omissions of their agent, BP.[4]     The Non-Operating Cross-Defendants were further negligent, grossly negligent, and/or acted with willful misconduct because they approved, authorized, and participated in BP's grossly negligent design and operations of the well.   The Non-Operating Cross-Defendants were further negligent, grossly negligent, and/or acted with willful misconduct because they knew, or should have known, of the presence of hydrocarbons in the well on the evening of April 20, 2010 and failed to warn the drilling vessel crew of the imminent blowout so that the drilling vessel crew could take action.   Alternatively, the Non-Operating Cross-Defendants were negligent, grossly negligent, and/or acted with willful misconduct by entrusting BP to make decisions relative to the Lease and to the DEEPWATER HORIZON'S drilling operations.

## Cameron

51.     Cameron was negligent in at least the following ways:

---

[4] There are factual differences regarding the involvement of MOEX Offshore, Anadarko E&P, and Anadarko Petroleum.  Based on these differences, HESI's allegation of gross negligence and willful misconduct regarding the Non-Operating Cross-Defendants go only to Anadarko E&P and Anadarko Petroleum.

(a)     Failing to properly maintain the blowout preventer on the DEEPWATER HORIZON;

(b)     Failing to exercise reasonable care in the design, manufacture, supply, and modification of the blowout preventer on the DEEPWATER HORIZON;

(c)     Failing to ensure and verify that the blowout preventer it designed and manufactured was suitable for the types of drill pipe and casing assembly design which would reasonably be used during the DEEPWATER HORIZON's drilling and explorations operations;

(d)     Designing the blowout preventer in a dangerous and/or unsafe manner by subjecting it to a single-point failure;

(e)     Failing to install a backup activation system for the blowout preventer;

(f)     Failing to provide adequate warnings, instructions, and guidelines on the permissible uses, modifications, and applications of the blowout preventer; and

(g)     Failing to effectively design the blowout preventer with a backup activation system, or provide adequate warnings, instructions and/or guidelines on the permissible uses, modifications, and applications of the blowout preventer.

### **The Weatherford Defendants**

52.     Weatherford and Weatherford International were negligent, grossly negligent, and/or committed willful misconduct in at least the following ways:

(a)     Failing to exercise ordinary and reasonable care in the design, manufacture, and supply of the DEEPWATER HORIZON's float equipment; and

(b)     Designing and manufacturing a float equipment that failed to seal properly and which allowed hydrocarbon back-flow into the casing.

### **M-I**

53.     M-I was negligent in at least the following ways:

(a)     Failing to provide, control and monitor the mud and spacer solutions utilized in the drilling operations of the DEEPWATER HORIZON;

(b)     Breaching its duties of ordinary and reasonable care in connection with the drilling operations;

(c)   Failing to guard against and/or preventing the risk of an oil spill; and

(d)   Failing to warn those on the DEEPWATER HORIZON of an influx of hydrocarbons in the wellbore.

## Dril-Quip

54.   Dril-Quip was negligent in at least the following ways:

(a)   Failing to exercise reasonable care while participating in the drilling operations related to the Macondo Well;

(b)   Failing to exercise reasonable care to ensure that adequate safeguards, protocols, procedures, and resources were available to prevent and/or mitigate the effects of an oil spill; and

(c)   Providing wellhead systems for the Macondo Well which failed to operate, were improperly designed, and/or possessed product defects.

## The Responder Defendants

55.   The Responder Defendants were negligent in at least the following ways:

(a)   Failing to exercise reasonable care in the operation, maintenance, handling, design, implementation, and execution of the response and recovery efforts, including, but not limited to, efforts to control and extinguish the fire aboard the rig, efforts to stop the flow of oil, and efforts to control the flow of oil;

(b)   Failing to warn of the harmful effects of crude oil, chemical dispersants, and hazardous substances to be encountered in connection with the response efforts;

(c)   Failing to train regarding the harmful effects of crude oil, chemical dispersants, and hazardous substances to be encountered in connection with the response efforts;

(d)   Failing to equip and protect against the harmful effects of crude oil, chemical dispersants, and hazardous substances to be encountered in connection with the response efforts;

(e)   Failing to coordinate and conduct aerial spraying sorties in a manner so as to eliminate the risk to vessels and crewmembers being exposed to aerial chemical dispersants;

(f)   Failing to abide by the provisions of the National Contingency Plan relating to the use of aerial chemical dispersants in the proximity of vessels and in shallow waters;

(g)    Violating statutory and regulatory standards set forth in the Clean Water Act and the Oil Pollution Act;

(h)    The Nalco Defendants knew or should have known that its Corexit dispersant was unreasonably dangerous to the public;

(i)    The Corexit dispersant was improperly designed and contained defects in that the Corexit was toxic to humans and could cause physical injury, health hazards, and damage to property; and

(j)    The Corexit was defectively inspected, tested, marketed, and sold.

HESI reserves its right to amend the allegations against these Cross-Defendants as additional discovery and evidence warrants.

## COUNT III
## (STRICT PRODUCTS LIABILITY)

56.    Paragraphs 1 through 55 are incorporated by reference as if fully set forth herein.

57.    Cameron is liable for strict products liability for its actions in defectively designing, manufacturing, marketing, maintaining and/or modifying the blowout preventer on the DEEPWATER HORIZON.  Specifically:

(a)    Cameron's blowout preventer was defective in design because its emergency modes of system operation did not provide a fully-independent means of closing the blowout preventer which rendered the blowout preventer abnormally dangerous;

(b)    Cameron's blowout preventer was defectively designed and/or manufactured because its blind shear rams were vulnerable to the failure of a single shuttle valve carrying hydraulic fluid to the ram blades;

(c)    Cameron's blowout preventer was defectively designed and/or manufactured because it failed to operate as intended, if at all;

(d)    Cameron's blowout preventer was defectively designed and/or manufactured such that it did not operate as intended to prevent or minimize blowouts;

(e)    Cameron's blowout preventer was in a defective condition and unreasonably dangerous;

(f)    The blowout preventer left Cameron's control in a defective condition; and

(g)   The blowout preventer left Cameron's control with over two hundred and sixty (260) known defects and failure modes.

58.   Weatherford and Weatherford International, (collectively "Weatherford"), are liable for strict products liability for their actions in defectively designing, manufacturing, and/or marketing the float equipment on the DEEPWATER HORIZON.  Specifically:

(a)   Weatherford designed and manufactured the float equipment that failed to seal properly and that allowed hydrocarbon back-flow into the casing;

(b)   Weatherford's float equipment did not seal properly;

(c)   Weatherford's float equipment failed to operate properly or at all;

(d)   Weatherford's float equipment was defective because it failed to operate as intended;

(e)   Weatherford's float equipment was in a defective condition and unreasonably dangerous.

59.   Dril-Quip, Inc., is liable for strict products liability for its actions in defectively designing, manufacturing, and/or marketing the wellhead system for the DEEPWATER HORIZON.  Specifically:

(a)   Dril-Quip designed and manufactured the wellhead system that failed to prevent the escape of hydrocarbons;

(b)   Dril-Quip 's wellhead system did not act as a barrier to hydrocarbon flow;

(c)   Dril-Quip 's wellhead system failed to operate properly or at all;

(d)   Dril-Quip 's wellhead system was defective because it failed to operate as intended;

(e)   Dril-Quip's wellhead system was in a defective condition and unreasonably dangerous.

60.   HESI reserves its right to amend the allegations against these Cross-Defendants as additional discovery and evidence warrants.

WHEREFORE, PREMISES CONSIDERED, Defendant Halliburton Energy Services, Inc. prays that upon the trial of this cause that Claimants/Plaintiffs take nothing by reason of

their pleadings and that HESI be entitled to contribution and/or indemnity from Cross-Defendants as to the claims of Claimants/Plaintiffs, and that HESI be dismissed and have such other and further relief to which it may show itself justly entitled.

Dated April 20, 2011.

Respectfully submitted

**GODWIN RONQUILLO PC**

/s/ Donald E. Godwin
Donald E. Godwin
*Attorney-in-charge*
State Bar No. 08056500
dgodwin@GodwinRonquillo.com
Bruce W. Bowman, Jr.
State Bar No. 02752000
bbowman@GodwinRonquillo.com
Jenny L. Martinez
State Bar No. 24013109
jmartinez@GodwinRonquillo.com
Floyd R. Hartley, Jr.
State Bar No. 00798242
fhartley@GodwinRonquillo.com
Gavin E. Hill
State Bar No.  00796756
ghill@GodwinRonquillo.com

Renaissance Tower
1201 Elm, Suite 1700
Dallas, Texas 75270-2041
Telephone: (214) 939-4400
Facsimile: (214) 760-7332

and

R. Alan York
ayork@GodwinRonquillo.com
1331 Lamar, Suite 1665
Houston, Texas 77010
Telephone: 713.595.8300
Facsimile: 713.425.7594

**ATTORNEYS FOR DEFENDANT
HALLIBURTON ENERGY SERVICES, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on April 20, 2011 a copy of the foregoing Original Cross-Claims of Halliburton Energy Services, Inc. was filed electronically with the Clerk of the Court using the CM/ECF system, and that an electronic version of this document was forwarded by e-mail to all liaison counsel.

/s/ Donald E. Godwin _____
Donald E. Godwin