# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **KNOTTY GIRL FISHING L.L.C.** | * | **CIVIL ACTION NO. 11-cv-00649** |
| | * | |
| **VERSUS** | * | **JUDGE BARBIER** |
| | * | |
| **WORLEY CATASTROPHE SERVICES** | * | **MAGISTRATE JUDGE SHUSHAN** |
| **LLC AND BP EXPLORATION AND** | * | |
| **PRODUCTION INC.** | * | |
| | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## THE PLAINTIFFS' MEMORANDUM
## IN SUPPORT OF THEIR MOTION TO REMAND

## TABLE OF CONTENTS

**Section:**                                                                 **Page(s)**

**TABLE OF AUTHORITIES**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii -vi

**LOCAL RULE 7.4 CONCISE STATEMENT OF**
  **REASONS SUPPORTING REMAND**.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-2

**INTRODUCTION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-3

**ARGUMENT AND AUTHORITIES**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-

    **A. The Standard For Removal**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-9

    **B. The grant of "original jurisdiction" in OCSLA § 1349(b)(1)**
        **does not establish a basis for removal**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-12

    **C. Plaintiffs' contract and  maritime claims**
        **do not "arise under" federal law**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-22

    **D. The Court should award attorney fees and costs**. . . . . . . . . . . . . . . . . . . . . 22-23

**CONCLUSION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

**CERTIFICATE OF SERVICE**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

**TABLE OF AUTHORITIES**

**Cases:**                                                                                 **Page(s)**

**U.S. Supreme Court:**

*Beneficial Nat 'I Bank v. Anderson*,
  539 U.S. 1 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Caterpillar Inc. v. Williams*,
  482 U.S. 386 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 6

*Cochran v. Montgomery County*,
  199 U.S. 260 (1905). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Empire HealthChoice Assurance, Inc v. McVeigh*,
  547 U.S. 677 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8, 9

*Franchise Tax Bd. v. Constr. Laborers*,
  463 U.S. 1 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Grable & Sons Metal Products, Inc v. Darue Engineering & Manufacturing*,
  545 U.S. 308 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Gulf Offshore Co. v. Mobil Oil Corp.*,
  453 U.S. 473 (1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-11, 12

*Merrell Dow Pharm. Inc. v. Thompson*,
  478 U.S. 804 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7

**U.S. Fifth Circuit:**

*Acuna v. Brown & Root, Inc.*,
  200 F.3d 335 (5th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Amoco Prod. Co. v. Sea Robin Pipeline Co.*,
  844 F.2d 1202 (5th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Bernhard v. Whitney Nat'l Bank*,
  523 F.3d 546 (5th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Elam v. Kan. City S. Ry.*,
   2011 U.S. App. LEXIS 5100 (5th. Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Garcia v. Amfels, Inc.*,
   254 F.3d 585 (5th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Grand Isle Shipyard Inc. v. Seacor Marine, LLC*,
   589 F.3d 778 (5th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20, 21

*Gutierrez v. Flores*,
   543 F.3d 248 (5th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Hufnagel v. Omega Serv. Ind., Inc.*,
   182 F.3d 340 (5th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Laredo Offshore Constructors, Inc. v. Hunt Oil Co.*,
   754 F.2d 1223 (5th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Louisiana ex rel Guste v. M/V Testbank*,
   752 F.2d 1019 (5th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Manguno v. Prudential Prop. & Cas. Ins. Co.*,
   276 F.3d 720 (5th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 6

*Mills v. Director, Office of Workers' Comp.*,
   877 F.2d 356 (5th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Miranti v. Lee*,
   3 F.3d 925 (5th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Taylor County Sand v. Seaboard C.L.R. Co.*,
   446 F.2d 853 (5Th Cir. 1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Tenn. Gas Pipeline v. Houston Cas. Ins. Co.*,
   87 F.3d 150 (5th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**Other Circuit Courts:**

*Adventure Outdoors Inc. V. Bloomberg*,
   552 F.3d 1290 (11th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Dunlap v. G&L Holding Group, Inc.*,
   381 F.3d 1285 (11th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Moore v. Hampton Roads Sanitation*,
   557 F2d 1030 (4th Cir. 1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Univ. of S. Ala. v. Am. Tobacco*,
   168 F.3d 405 (11th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Westmoreland Hosp. Ass 'n v. Blue Cross of W Pa.*,
   605 F.2d 119 (3d Cir.1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**District Courts (Fifth Circuit):**

*Bolua v. BP Exploration and Production, Inc.*,
   2008 U.S. Dist. LEXIS 84200 (S.D. Tex. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20 n.3

*Brooklyn Union Exploration Co. v. Tejas Power Corp.*,
   930 F. Supp. 289 (S.D. Tex. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Bulen v. Hall-Houston Oil Co.*,
   953 F. Supp. 141 (E.D. La. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Cantwell v. Deutsche Bank Sec., Inc.*,
   2005 U.S. Dist. LEXIS 20597 (N.D. Tex. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Coody v. Exxon Corp.*,
   630 F. Supp. 202 (M.D. La. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Dominion Exploration & Production, Inc. v. Ameron Int'l Corp.*,
   2007 U.S. Dist. LEXIS 87476 (E.D. La. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14-15

*Gulf Island, L.L.C. v. J Ray McDermott, Inc.*,
   2005 U.S. Dist. LEXIS 1117 (E.D. La. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Hood v. AstraZeneca Pharmaceuticals, LP*,
   2010 U.S. Dist. LEXIS 107411 (N.D. Miss. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Jambon v. State Farm Fire and Cas. Co.*,
   2006 U.S. Dist. LEXIS 72661 (E.D. La. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Kostmayer Constr., L.L.C. v. M.R. Pittman Group, L.L.C.*,
   2007 U.S. Dist. Lexis 97177 (E.D. La. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

iv

*Landry v. State Farm Fire and Cas. Co.*,
    428 F. Supp. 2d 531 (E.D. La. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*LLOG Exploration Co. v. Certain Underwriters at Lloyd's of London*,
    2007 U.S. Dist. LEXIS 90716 (E.D. La. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-16

*Monk v. Performance Contractors, Inc.*,
    2010 U.S. Dist. LEXIS 128467 (W.D. La. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Nase v. Teco Energy, Inc.*,
    347 F. Supp. 2d 313 (E.D. La. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*NCX Co., L.L.C. v. Samedan Oil Corp.*,
    2004 U.S. Dist. LEXIS 1338 (E.D. La. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Omes v. Texaco, Inc.*,
    1990 U.S. Dist. LEXIS 2523 (E.D. La. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Partners in Funding, Inc. v. Quest Capital Res., LLC*,
    2007 U.S. Dist. LEXIS  9483 (S.D. Tex. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Petroleum Corp. v. Transcontinental Gas Pipe Line Corp.*,
    681 F. Supp. 400 (S.D. Tex. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-14

*Pogo Prod. Co. v. Southern Nat. Gas Co.*,
    599 F. Supp. 720 (W.D. La. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Roof Tech. Servs. v. Hill*,
    679 F. Supp. 2d 749 (N.D. Tex. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Seruntine v. State Farm Fire & Cas. Co.*,
    444 F. Supp. 2d 698 (E.D. La. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Smith v. Shred-it USA*,
    2010 U.S. Dist. LEXIS 100949 (N.D. Tex. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Walsh v. Seagull Energy Corp.*,
    836 F. Supp. 411 (E.D. La. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

**District Courts (Non-Fifth Circuit):**

*ANR Pipeline Co. v. Conoco, Inc.*,
    646 F. Supp. 439 (W.D. Mich. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Certified Enterprises, LLC v. Dauphin Creek Apartments, LLC*,
  2009 U.S. Dist. LEXIS 80306 (S.D. Fla. June 24, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Gross v. Deberardinis*,
  722 F. Supp. 2d 532 (D. Del. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*The St. Joe Company v. Transocean Offshore Deepwater Drilling Inc.*,
  2011 U.S. Dist. LEXIS 26391 (Del. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 12

**Statutes:**

43 U.S.C. § 1331. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 21

43 U.S.C. § 1349. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12

28 U.S.C. § 1441. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

28 U.S.C. § 1441(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

28 U.S.C. § 1447(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 22

33 U.S.C. § 1331. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**MAY IT PLEASE THE COURT:**

Pursuant to 28 U.S.C. § 1447(c), the Plaintiffs Knotty Girl Fishing, L.L.C. ("Knotty Girl") and Tonya Y. Peterson and James Ray Peterson ("the Petersons"), through the undersigned counsel of record, submit this memorandum in support of their Motion to Remand, and for the following reasons, respectfully request this Honorable Court remand this action to the Twenty-First Judicial District Court for the State of Louisiana from which it was improperly removed by the Defendants.

<u>**LOCAL RULE 7.4 CONCISE STATEMENT OF REASONS SUPPORTING REMAND**</u>

The Plaintiffs' motion to remand is appropriate because federal question jurisdiction is lacking.[1]  The Defendants erroneously assert this action is governed by the Outer Continental Shelf Lands Act (33 U.S.C. § 1331, *et seq.*).  (Doc. 1, ¶ 25).  In fact, the Plaintiffs' claims do not "arise under" federal law, but are derived from state law (including obligations, fraud and Unfair Trade Practices law) and maritime law.  The Plaintiffs are engaged in commercial fishing–a maritime activity.

They sustained losses when they were unable to perform their most basic maritime functions upon the waterways of the State of Louisiana–fishing.  Nothing in the Plaintiffs' Petitions implicate federal law, especially the Outer Continental Shelf Lands Act.  Consistent with well-settled Fifth Circuit case law, the Plaintiffs claims are *not* related to the production, development or exploration of minerals on the Outer Continental Shelf.  Equally important, the Defendants have failed to carry their burden of proving that the Plaintiffs claims impair the exploitation of minerals on the Outer

---

[1]   There is no issue of diversity jurisdiction in this matter.  The Defendant BP Exploration and Production Inc.'s *Notice of Removal* (Doc. 1) makes no claim of diversity jurisdiction; the Defendant Worley Catastrophe Services LLC is an uncontested  non-diverse defendant.  (Doc. 1, Exh. #8).

1

Continental Shelf.  Therefore, this action should be remanded, as more fully explained herein.

## **INTRODUCTION**

This action was initiated by the Plaintiff Knotty Girl in the Twenty-First Judicial District Court for the State of Louisiana on February 14, 2011.  The original petition was amended by the Plaintiff Knotty Girl on February 16, 2011, to add the Petersons as additional plaintiffs. (The Petitions are attached to the *Notice of Removal* as Exhibit #1).  The Defendant BP Exploration and Production Inc. ("BP") removed the Plaintiffs' state court action to this Court on March 23, 2011. (Doc. 1).  The Defendant Worley Catastrophe Services LLC ("Worley") consented to the remand. (Doc. 1, Exh. #8).

As stated in the preamble of their Petitions, the Plaintiffs "initate[d] this action pursuant to state law only."  (Doc. 1, Exh. #1).  The Plaintiff Knotty Girl is a Louisiana commercial maritime fishing venture.  *Plaintiffs' Amended Petition*, Doc. 1, Exh. #1, at ¶ 3.  It operates a charter fishing service on navigable and commercial waterways of Louisiana. *Id.* at ¶¶ 4-5.  The Plaintiffs Petersons are members and operators of the Plaintiff Knotty Girl.

The Plaintiffs entered into a non-judicial Release with BP following the April 20, 2010, explosion and capsizing of the Deepwater Horizon in the Gulf of Mexico.  The crux of the Plaintiffs' action is the allegations of abuse, misrepresentation, and impropriety which should vitiate the Plaintiffs' consent to the Release and Covenant Not to Sue.  These improper actions include alleged violations of the Louisiana Rules of Professional Conduct governing certain actors in this matter and their actions.  The Release signed by the parties was not done pursuant to any federal mandate or federal law.  It is void of any stated connection with the Outer Continental Shelf, and is void of any requirement by any party to the Release to perform services on the Outer Continental Shelf.  *See*

*generally* Doc. 1, Exh.1, attached as Exhibit "A" to Plaintiffs' *Petition*.

Moreover, the Plaintiffs' Petitions make no claims relative to the Outer Continental Shelf. The Plaintiffs clearly claim damages from the closure of commercial and navigable waterways of the State of Louisiana, not federal waters. *Amended Petition*, Doc. 1, Exh.#1, ¶ 10-11. Even though the closure of these waterways by the State of Louisiana may have been the result of the Defendant BP's actions in the Gulf of Mexico, the ensuing losses suffered by the Plaintiffs and their state law claim are in no way transformed into a federal action. Hence, the location of the Defendant BP's operations on the Outer Continental Shelf are irrelevant to this action.

Further, the *Howe Declaration* (Doc. 1, Exh. # 9) submitted by the Defendants should be disregarded in its entirety as it fails to set forth any basis for how the Release and Covenant Not to Sue and the Plaintiffs' action have any implication upon the Defendant BP's operations and production, development and exploration of minerals on the Outer Continental Shelf. The only possible and plausible connection is the fact that the Defendant BP may be required to pay the Plaintiffs some of the profits they obtain from their operations on the Outer Continental Shelf, rather than placing them in its coffers. This has never been held to be sufficient to create the requisite nexus to establish federal jurisdiction under the Outer Continental Shelf Lands Act.

As more fully set forth below, the Defendants have failed to meet their burden of establishing federal question jurisdiction, and thus, this action should be remanded to state court.

## ARGUMENT AND AUTHORITIES

### A. The Standard For Removal

As the removing party, the Defendant BP bears the burden of establishing that removal is proper pursuant to 28 U.S.C. § 1441. The defendant must prove the jurisdictional requirements for

3

removal. *Manguno v. Prudential Prop. & Cas. Ins. Co.,* 276 F.3d 720, 723 (5th Cir. 2002). A suit is removable only if it is within the original jurisdiction of the federal courts. *Cochran v. Montgomery County,* 199 U.S. 260, 269 (1905). The Court must remand this case if "at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). "The statute is strictly construed, requiring remand to state court if any doubt exists over whether removal was proper." *Gross v. Deberardinis,* 722 F. Supp. 2d 532, 533 (D. Del. 2010) *(citing Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108, 61 St. Ct. 868, 85 L. Ed. 1214 (1941).

The issue of removal jurisdiction must be "determined by reference to the well-pleaded complaint rule." *Merrell Dow Pharm. Inc. v. Thompson,* 478 U.S. 804, 808 (1986). That rule "provides that federal jurisdiction exists only when a federal question is present on the face of the plaintiffs properly pleaded complaint." *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392 (1987); *see also Westmoreland Hosp. Ass'n v. Blue Cross of W Pa.,* 605 F.2d 119, 122 (3d Cir.1979) ("[A] 'right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiffs cause of action' and . . . 'the controversy must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal.'") (*quoting Gully v. First Nat'l Bank,* 299 U.S. 109, 113 (1936)). Consequently, "the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court." *Caterpillar,* 482 U.S. at 399; *The St. Joe Company v. Transocean Offshore Deepwater Drilling Inc.,* 2011 U.S. Dist. LEXIS 26391 (Del. 2011). Thus, the Plaintiffs' claims of losses on state waters may not be transformed by the Defendants into claims upon federal waters.

Furthermore, a federal defense, or the anticipation of such defense in a petition, is irrelevant in the well-pleaded complaint analysis. *See Beneficial Nat 'I Bank v. Anderson*, 539 U.S. 1, 6 (2003) ("To determine whether the claim arises under federal law, we examine the 'well pleaded' allegations of the complaint and ignore potential defenses."). "[A] federal court does not have original jurisdiction over a case in which the complaint presents a state-law cause of action, but also asserts that federal law deprives the defendant of a defense he may raise . . . or that a federal defense the defendant may raise is not sufficient to defeat the claim." *Franchise Tax Bd. v. Constr. Laborers*, 463 U.S. 1, 10 (1983). No federal question is created by asserting that the state law on which a complaint is based has been preempted by federal law, i.e., a federal preemption defense. *See Beneficial Nat'l Bank*, 539 U.S. at 6 ("[A] defense that relies on . . . the pre-emptive effect of a federal statute . . . will not provide a basis for removal."). It is "settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar*, 482 U.S. at 393. It is for this very reason that the Plaintiffs respectfully suggest this Court should totally disregard the *Howe Declaration*. (Doc.1, Exh. #9). No amount of artful pleading or self-serving statements by the Defendants can transform the Plaintiffs' state law claims into a federal action.

The Fifth Circuit has directed the removal statute to be strictly construed in favor of remand. *Manguno*, 276 F.3d at 723. Doubts about jurisdiction should be resolved in favor of remand; a strong presumption in favor of remand to state courts underlies a court's analysis of the propriety of removal and jurisdiction. *Id.*; *and Acuna v. Brown & Root, Inc.,* 200 F.3d 335, 339 (5th Cir. 2000); *see also Smith v. Shred-it USA,* 2010 U.S. Dist. LEXIS 100949, *15-16 (N.D. Tex. 2010); *Partners*

5

*in Funding, Inc. v. Quest Capital Res., LLC,* 2007 U.S. Dist. LEXIS 9483, *6 (S.D. Tex. 2007); *and also Univ. of S. Ala. v. Am. Tobacco*, 168 F.3d 405, 411 (11th Cir. 1999).  As the removing party, the Defendant BP "bear[s] the burden of proving" that federal jurisdiction over this purely state-claim suit exists, and that it existed at the time of removal.  *Manguno*, 276 F.3d at 723.   BP has failed to do that very thing which the law requires it to do. Again, if this Court has any doubts about the "propriety of federal jurisdiction," those doubts "should be resolved in favor of remand to the state court." *Id*.  As discussed further herein, the Plaintiffs respectfully suggest the scales weigh overwhelmingly in their favor on any questionable issue of jurisdiction presented in this matter.

Moreover, if federal jurisdiction does exist in this case, the basis for it must be present on the face of the complaint.  *Elam v. Kan. City S. Ry.*, 2011 U.S. App. LEXIS 5100, *5-6 (5th. Cir. 2011). The plaintiff is always the master of his own claim, "even where a federal remedy is also available." *Bernhard v. Whitney Nat'l Bank*, 523 F.3d 546, 551 (5ᵗʰ Cir. 2008); *and Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).  As such, in the case at bar, the question of removal turns on a consideration of the allegations of the Plaintiffs' Petitions to determine if the Plaintiffs' right to relief "necessarily depends on resolution of a substantial question of federal law," and not a self-serving affidavit of a removing party.  *Empire HealthChoice Assurance, Inc v. McVeigh*, 547 U.S. 677, 690 (2006).  In this case, there is no "substantial question of federal law." *Id.*

Every claim alleged in the Plaintiffs' Petition arises under state, not federal, law and there are only a "special and small category" of state law allegations which could ever possibly raise the "substantial question of federal law" necessary to justify removal on federal question grounds–none of which exist in this case. *See Empire HealthChoice*, at 547 U.S. 699.  It remains important under the removal case law that the Plaintiffs have not alleged, and have no interest in alleging, a federal

claim. They have only plead state law claims "arising" solely from losses incurred as a result of their inability to fish upon state waters. "There is no federal [question] jurisdiction if the plaintiff properly pleads only a state law cause of action." *Gutierrez v. Flores*, 543 F.3d 248, 252 (5th Cir. 2008) (*quoting Bernhard*, 523 F.3d at 551). Further, even if federal law might provide a defense to a state law cause of action, no federal question jurisdiction is created. *Merrell Dow Pharm., Inc.,* 478 U.S. at 808.

Most notably, the district courts of the Fifth Circuit have consistently found removal improper absent a "stated federal issue" which is "actually disputed and substantial." *See e.g. Kostmayer Constr., L.L.C. v. M.R. Pittman Group, L.L.C.*, 2007 U.S. Dist. Lexis 97177, at *11-12 (E.D. La. 2007) (*quoting Grable*, 545 U.S. at 314); *see also Cantwell v. Deutsche Bank Sec., Inc.*, 2005 U.S. Dist. LEXIS 20597, at *8-9 (N.D. Tex. 2005); *Seruntine v. State Farm Fire & Cas. Co.,* 444 F. Supp. 2d 698, 702-3 (E.D. La. 2006); *Hood v. AstraZeneca Pharmaceuticals, LP*, 2010 U.S. Dist. LEXIS 107411, at *19-20 (N.D. Miss. 2010); *Monk v. Performance Contractors, Inc.*, 2010 U.S. Dist. LEXIS 128467, at *4-6 (W.D. La. 2010); *Jambon v. State Farm Fire and Cas. Co.*, 2006 U.S. Dist. LEXIS 72661, at *5 (E.D. La. 2006); *and Landry v. State Farm Fire and Cas. Co.*, 428 F. Supp. 2d 531, 535 n.1 (E.D. La. 2006). Further, in a breach of contract or misrepresentation state law claim, removal is only proper if a federal statute's consideration is necessary for fair and complete adjudication of the removed state law claim. *See e.g. Taylor County Sand v. Seaboard C.L.R. Co.*, 446 F.2d 853, 855 (5Th Cir. 1971) (breach of contract claims involved determination of discrimination violations under the Interstate Commerce Act). Other courts have equally found state law complaints are particularly unsuitable for removal where the disputed federal issue is "between private parties" and "will not be dispositive of all of plaintiffs' claims, which are 'fact-bound and

situation-specific.'" *Certified Enterprises, LLC v. Dauphin Creek Apartments, LLC*, 2009 U.S. Dist. LEXIS 80306 at *15 (S.D. Fla. 2009) (*quoting from Empire HealthChoice*, 547 U.S. at 700-701); *see also Adventure Outdoors*, 552 F.3d at 1299 (similarly viewing a fact-specific dispute between private parties that merely raised a contested federal issue as insufficient to support federal question removal); *Dunlap v. G&L Holding Group, Inc.*, 381 F.3d 1285, 1290 (11th Cir. 2004) (noting that the mere presence of a federal issue in a state cause of action will not ordinarily suffice for removal).

In *Empire HealthChoice*, *supra*, the Supreme Court was careful to note, in distinguishing its holding from that of *Grable & Sons Metal Products, Inc v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005), that removal in state cases which raise federal issues between non-diverse parties is seldom justified-- particularly where permitting removal would disturb a "congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314.  As the Supreme Court remarked in *Empire HealthChoice*:  "In sum, *Grable* emphasized that it takes more than a federal element 'to open the 'arising under' door' . . . This case cannot be squeezed into the slim category *Grable* exemplifies." *Id.* 547 U.S. at 701.  In short, the Plaintiffs' Petitions, which merely refer to federal law (OCSLA) as a standard of conduct under which the Defendants BP, Worley and their agents repeatedly claim they operated, cannot be squeezed into the "slim category" of cases eligible for removal on federal question grounds.  Congress has clearly recognized a balance between federal and state interests upon navigable waterways.  The latter, as presented in the Plaintiffs' action, clearly remains separate and apart from OCSLA jurisdiction and must proceed under state law in state court.

As stated, a state petition that refers to a federal act only as the necessary standard of care does not, as a matter of law, frame a substantial federal question.  A petition that presents only a

8

"fact-specific application of rules that come from both federal and state law rather than a context-free inquiry into the meaning of a federal law," does not present a federal issue that must be resolved in federal court. *Adventure Outdoors Inc. V. Bloomberg*, 552 F.3d 1290, 1299 (11ᵗʰ Cir. 2008) (internal quotations omitted); *See also Empire HealthChoice*, 547 U.S. at 700; *Grable*, 545 U.S. at 315; *and Roof Tech. Servs. v. Hill,* 679 F. Supp. 2d 749, 753-4 (N.D. Tex. 2010) (discussing *Empire HealthChoice* and *Grable* analysis). The case at bar is such a case, and hence, this Court should find jurisdiction is lacking.

The established case law makes it clear that removal of state law claims that incidentally involve federal issues are seldom removable unless they present discrete questions of federal law that are substantial and important – questions that a "federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Adventure Outdoors*, 552 F.3d at 1295, *quoting from Grable*, 545 U.S. at 314. Plaintiffs' Petitions do not present such a substantial federal question, let alone one that involves a "nearly 'pure issue of law,'" *Empire HealthChoice*, 547 U.S. at 700, a "crucial factor" to removal. *Adventure Outdoors*, 552 F.3d at 1299.

Accordingly, the Defendant BP has failed to satisfy the most fundamental requirements of removal, and hence, this action should be remanded to state court.[2]

---

[2]

The Plaintiffs would respectfully suggest that the Court consider, *sua sponte*, whether this action should randomly allotted as an unrelated action pursuant to the Local Rules of this District. The Plaintiffs believe the Clerk of Court inadvertently allotted this action to this Court believing it to be related to MDL 2179; however, the allegations involved in the underlying state court action were not presented to the Judicial Panel in establishing MDL 2179 before this Court. The Plaintiffs' action raises individual issues of breach of contract and lack of consent under state law which are not appropriate for mass consolidation with claims of damages arising from the April 20, 2011, Deepwater Horizon explosion. The Plaintiffs' action should be permitted to proceed in a randomly

**B.  The grant of "original jurisdiction" in OCSLA § 1349(b)(1) does not establish a basis for removal.**

OCSLA does not create federal question removal jurisdiction because even though 43 U.S.C. § 1349 provides the district courts with subject-matter jurisdiction of a case or controversy "arising out of, or in connection with . . . any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf," that Section's grant of original jurisdiction to the district courts does not implicate a federal question for the type of claims that Plaintiffs are asserting against Defendants in the case at bar.  *See e.g. Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 479, 484 (1981).  The Supreme Court made this patently clear in *Gulf Offshore Co. v. Mobil Oil Corp.*, where it permitted a plaintiff to assert tort claims in state court for injuries sustained on the Outer Continental Shelf because "nothing in the language, structure, legislative history, or underlying policies of OCSLA suggests that Congress intended federal courts to exercise exclusive jurisdiction" over all claims arising on the Outer Continental Shelf. *Id.* at 479, 484 (discussing claims for personal injury); *see also Id.* at 479, n.6 (making clear that 43 U.S.C. § 1333(a)(2) likewise does not confer exclusive jurisdiction to federal courts).

The *Gulf Offshore Co.* Court was careful to draw the distinction between sovereignty--which for the Outer Continental Shelf rests exclusively with the federal government-- and each state's power to adjudicate its citizens' claims even when those claims arise from conduct that occurred within the area of federal sovereignty.  *Gulf Offshore Co.*, 453 U.S. at 481.  The fact "[t]hat the

---

allotted Section of this District.  The Plaintiffs reserve the right to assert a request for random allotment should the Court not act, *sua sponte*, and find that these proceedings were properly removed.

location of the event giving rise to the suit is an area of exclusive federal jurisdiction rather than another State, does not introduce any new limitation on the forum State's subject-matter jurisdiction." *Id.* at 481-82. Thus, there is no doubt that Plaintiffs may assert solely state law causes of action, even if events or conduct occurred on the Outer Continental Shelf (e.g., the explosion and capsizing of the Deepwater Horizon). And hence, the only remaining question is whether such state court actions are removable as presenting federal questions pursuant to 28 U.S.C. § 1441(b) solely because they "arise out of or [are] in connection with" OCSLA. *Id.* In this case they certainly are not.

It is clear that federal question jurisdiction does not exist "by virtue of jurisdiction under [OCSLA]." *Tenn. Gas Pipeline v. Houston Cas. Ins. Co.*, 87 F.3d 150, 156 (5th Cir. 1996); *see also Hufnagel v. Omega Serv. Ind., Inc.*, 182 F.3d 340, 351 (5th Cir. 1999). The fact that the Plaintiffs' losses may have originated from the Deepwater Horizon's explosion does not create federal jurisdiction for the alleged bad acts and impairment of maritime rights in Plaintiffs' Petitions. Courts have repeatedly held that removal is impermissible whenever plaintiff's well-pleaded complaint presents no claim "arising under the Constitution, treaties or laws of the United States," 28 U.S.C. § 1441(b), notwithstanding that the location of the initial incident falls within OCSLA's jurisdictional scope. *Bulen v. Hall-Houston Oil Co.*, 953 F. Supp. 141, 145 (E.D. La. 1997)(OCSLA does not create removal jurisdiction over claims not otherwise presenting a federal question). Indeed, "where the plaintiff has decided not to assert a federal claim [under OCSLA], although such a claim may be available to him . . . a defendant cannot use the unasserted federal claim as the basis for removing [the] case to federal court. *Coody v. Exxon Corp.*, 630 F. Supp. 202, 205 (M.D. La. 1986). And, hence, the Defendant BP's efforts to do this very thing must fail.

11

Again, in analyzing Section 1349(b)(1) of OCSLA, the Supreme Court has stated that "the mere grant of jurisdiction to a federal court does not operate to oust a state court from concurrent jurisdiction over the cause of action." *Gulf Offshore Co*., 453 US at 479.  The Supreme Court noted that in 43 U.S.C. § 1333(a)(1), "OCSLA declares the Outer Continental Shelf to be an area of 'exclusive federal jurisdiction,'" but this provision grants only exclusive political jurisdiction, not exclusive judicial jurisdiction. *Id.* at 479-80. It follows that state courts are not prohibited from hearing controversies falling within OCSLA jurisdiction.  *The St. Joe Company v. Transocean*, *supra*.  Accordingly, 43 U.S.C. § 1349 does not create a federal question and does not justify Defendant BP's removal of this action.  This matter should be remanded.

**C.  Plaintiffs' contract and  maritime claims do not "arise under" federal law.**

The Defendant BP erroneously attempts to redefine the nature of Plaintiffs' rights as derived from federal rather than contract or general maritime law.  Moreover, the Plaintiffs' allegations of impropriety in the perfection of the Release and Covenant Not to Sue do not "arise under" OCSLA. As previously stated, the plaintiff, rather than the defendant, is master of his or her complaint.  A plaintiff may choose which law to bring a claim under, and a defendant cannot redefine the plaintiff's theory of the case through removal.  The law could not be clearer on this issue.

The Defendants mistakenly assert that federal question jurisdiction exists under OCSLA. OCSLA, provides in part:

> [T]he district courts of the United States shall have jurisdiction of cases and controversies arising out of, or in connection with any operation conducted on the outer Continental shelf which involves exploration, development, or production of the minerals [including natural gas], of the subsoil and seabed of the outer Continental Shelf.

43 U.S.C. § 1349(b)(1)

12

Thus, based on the plain language of OCSLA, no subject matter jurisdiction exists as the facts underlying this dispute do not even remotely concern the operation, exploration, development or production of oil on the Outer Continental Shelf.  This dispute involves claims arising from the Defendants' improper conduct in procuring the Plaintiffs' consent to the alleged invalid Release and Covenant Not to Sue.  All of the Defendants' complained of actions and breaches took place on land, not on the Outer Continental Shelf.  Again, the Plaintiffs are a commercial fishing venture and commercial fishermen.  As one court ably stated, "[OCSLA] is relevant only to those direct and indirect controversies surrounding *the direct exploration, development or production* of minerals of the subsoil and seabed of the OCS."  *ANR Pipeline Co. v. Conoco, Inc.*, 646 F. Supp. 439, 444 (W.D. Mich. 1986) (emphasis in original).

Further, OCSLA defines "exploration" as "the process of searching for minerals, including (1) geophysical surveys . . . and (2) any drilling."  43 U.S.C. § 1331(k).  The term "development" is defined as "activities that take place following discovery of minerals in paying quantities, including geophysical activity, drilling, platform construction, and operation of all onshore support facilities, and which are for the purpose of ultimately producing the minerals discovered."  43 U.S.C. § 1331(1).  Next, OCSLA defines "production" as "activities which take place after the successful completion of any means for removal of minerals, including such removal, field operations, transfer of minerals to shore, operation, monitoring, maintenance, and work-over drilling."  43 U.S.C. § 1331(m).

As the foregoing definitions make clear, the Plaintiffs' allegations regarding misrepresentation and lack of consent to the Release and Covenant Not to Sue cannot be viewed as involving the direct or indirect exploration, development or production of minerals. *See Petroleum*

13

*Corp. v. Transcontinental Gas Pipe Line Corp.*, 681 F. Supp. 400, 401-2 (S.D. Tex. 1988). "[W]hile Congress clearly intended federal courts to have jurisdiction over private contractual disputes involving the Outer Continental Shelf minerals, Congress drew the line at the production stage," and the "contractual dispute in the case at hand falls beyond these three stages and therefore invokes neither federal interest nor federal court jurisdiction." *Id.* at pp. 401-2 (referencing contract dispute regarding a "take or pay" provision of a gas purchase contract).

Several courts of this District have addressed the issue of jurisdiction under OCSLA with regard to contract disputes, and have remanded those actions to state court. In *Dominion Exploration & Production, Inc. v. Ameron Int'l Corp.*, 2007 U.S. Dist. LEXIS 87476 (E.D. La. 2007), Judge Berrigan was presented with a motion to remand in an action involving a breach of contract claim. In particular, the plaintiffs sued a defendant company hired to paint structures associated with what would eventually become part of an offshore production facility–a spar. *Id.* at *2-3. The plaintiffs sought damages under a number of state law theories of recovery, including consequential damages "increased costs and delayed and deferred production damages sustained as a consequence of [the defendant's] alleged fault." *Id.* at *3. The defendant removed the case alleging federal jurisdiction under OCSLA. The court stated "[t]he issue in this case is whether the paint agreement and its subsequent breach arises out of an 'operation' involving the 'exploration, development, or production' of materials of the outer Continental Shelf." *Id.* at *5.

The court found that the question of jurisdiction turned upon established Fifth Circuit precedence defining the terms "operation," development," and "production." *Id.* at 5-11. Judge Berrigan found the facts presented to be distinct from the Fifth Circuit precedence which involved situations in which "an OCSLA operation existed prior to the accident causing the lost production."

14

*Id.* at *9 (*citing Tennessee Gas Pipeline v. Houston Casualty Insurance* Co., 87 F.3d 150, 154 (5th

Cir. 1996).  The court states:

> This is not the case with the spar in the instant dispute. The spar was on land at all times relevant to the contract performance and breach. Simply because the spar would eventually be placed on the OCS does not give it the required operation to fall under the OCLSA jurisdiction. . . .
>
> This must be distinguished from the instant case, where the spar was still on land when the paint agreement was breached. The spar had not been used for any activity related to exploration, development or production, and had not yet even been placed on the OCS. Without any activities linking the spar to exploration, development or production on the OCS, a finding that an "operation" according to the language of the OCSLA cannot be made.

*Id.* at *9-10.

The court further stated "[i]f the contract-in-dispute lacks a sufficient nexus to the exploration,

development, and production of minerals, then the OCSLA jurisdiction does not apply. *Id.* at *10-

11. Judge Berrigan eventually held OCSLA did not apply. *Id.* at *18. Even though the breaches

may have delayed the commencement of operations and production, the court found "[t]he breached

paint agreement [did] not alter the flow of production or otherwise affect the efficient exploitation

of natural resources on the OCS." *Id.* at *17-18. Thus, the plaintiffs' motion to remand was granted.

Additionally, in *LLOG Exploration Co. v. Certain Underwriters at Lloyd's of London*, 2007

U.S. Dist. LEXIS 90716 (E.D. La. 2007), Judge Livaudais considered OCSLA in an insurance

coverage dispute arising from property damage and business losses at several production facilities

in the Gulf of Mexico. The plaintiff argued that the insurance coverage dispute did not "threaten or

affect the efficient exploration, development, or production of minerals on the outer Continental

Shelf," and thus, the dispute did not have "a sufficient nexus with exploration, development or

production" as required by OCSLA. *Id.* at *5. Of utmost importance, the plaintiff also asserted that

15

any breaches of the insurance contract "occurred on dry land, in various offices in the United States and abroad, and not on the outer Continental Shelf." *Id.*

The court conducted a thorough and reasoned analysis of the Fifth Circuit's decisions in *Laredo Offshore Constructors, Inc. v. Hunt Oil Co.*, 754 F.2d 1223 (5th Cir. 1985) and *Amoco Prod. Co. v. Sea Robin Pipeline Co.,* 844 F.2d 1202 (5th Cir. 1988). *Id.* at *8-15. The court highlighted the relevant discussions in these two cases, and recognized a dispute must either alter the progress of production of minerals or threaten to impair the recovery of minerals to create jurisdiction under OCSLA. *Id.* at 11-12. Judge Livaudais concluded that the insurance coverage dispute and the insurance contract did not "affect or alter the progress of production activities" on the outer Continental Shelf, nor did those disputes "threaten to impair the total recovery of federally owned minerals" from the Outer Continental Shelf. *Id.* at 15. In finding the contracts failed to meet the jurisdictional test, the court stated:

> The Insureds have not identified for the court any terms or conditions in the insurance contract at issue that directly affect the rate or manner of production of oil and/or gas on the covered facilities, as the *Sea Robin* contract did. It is simply a property insurance contract to protect the insured from incurring losses as a result of damages to the facilities and loss of production capacity.

*Id.* at 12-13.

As a result, the court held the claims did not arise under OCSLA, and hence, remanded the case to state court. *Id.* at 15; *see also Gulf Island, L.L.C. v. J Ray McDermott, Inc*., 2005 U.S. Dist. LEXIS 1117, *8 (E.D. La. 2005) (remanding a case and finding that the breach of contract issue "will neither affect work on the OCS nor threaten recovery of resources from OCS"); *NCX Co., L.L.C. v. Samedan Oil Corp.,* 2004 U.S. Dist. LEXIS 1338, *8 (E.D. La. 2004) (remanding the case because the litigation involved "contractual provisions regarding the payment/price of services which

16

have been already rendered, not provisions governing production or development"); *Brooklyn Union Exploration Co. v. Tejas Power Corp.,* 930 F. Supp. 289 (S.D. Tex. 1986) (holding there was no federal jurisdiction under OCSLA over a dispute concerning contractual provisions governing the price of gas, not provisions governing the production or development of gas); *and Pogo Prod. Co. v. Southern Nat. Gas Co.*, 599 F. Supp. 720 (W.D. La. 1984) (holding there was no federal jurisdiction under OCSLA over a dispute regarding payment or purchase of gas pursuant to a private contract between a mineral lessee and a production purchaser).   Once again, there is nothing in the Plaintiffs' Petitions that even remotely affects production, development or exploration of minerals on the Outer Continental Shelf.

Of equal importance, the Plaintiffs' petitions in the case at bar fail the "situs" test employed by the Fifth Circuit primarily in injury-based OCSLA jurisdictional disputes.  In *Mills v. Director, Office of Workers' Comp.*, 877 F.2d 356 (5th Cir. 1989), the court issued a decision *en banc* addressing the question of whether OCSLA included a "situs" requirement for an injury to be covered.  *Id.*  Of critical importance, the court acknowledged Congressional intent to limit the scope of OCSLA's applicability.  *Id.* at 359.   Moreover, the court held the "situs" of the injury was essential to the determination of whether OCSLA applied.  *Id.* at 361-2.  Most relevant to the case at bar, the court noted the injury occurred on land, lacked any connection with th Outer Continental Shelf, and was indistinguishable from other similar injuries–actions–which could not even arguably be associated with OCSLA, but could be virtually identical.  *Id.* at 362 ("Under such a scheme, an employee injured while working on equipment destined for the OCS receives more generous benefits than the employee next to him who suffers an injury building similar equipment destined for land-

based uses."). In so holding, the court stated the purpose of OCSLA was "filling voids in the law governing mineral extraction on the OCS." *Id.* at 362.

Certainly, there is no void in the regulation of contracts entered into by parties to avoid the expense and delay of litigation. Further, there is certainly no void in the law governing the performance of parties to contracts, the requirements for valid consent, and rules governing candor and fair-dealings in the practice of law and adjusting. The law of fraud, deceit and misrepresentation are well-established.

It is undisputed the Plaintiffs entered into the Release and Covenant Not to Sue on land. It is further beyond rational reasoning that the Release and Covenant Not to Sue bears no connection to the production, development or exploration of minerals on the Outer Continental Shelf.

Most notably, the only impairment of mineral production involved in the entire saga surrounding the Defendant BP's actions in connection with the Deepwater Horizon explosion and capsizing is of BP and the other responsible parties making. The only other source of impairment has been the Executive Branch of the United States Government in ordering a moratorium. The Plaintiffs' maritime activities have certainly not impaired BP's mineral development or exploration anywhere.

Hence, regardless of whether the Plaintiffs ever sought compensation from the Defendant BP, executed the Release and Covenant Not to Sue, or initiated this action, the production, development and/or exploration of minerals on the Outer Continental Shelf would have proceeded or not without any consideration of these Plaintiffs' actions or the filing of this case. There is simply no other rational conclusion that may be made.

Of equal significance, nothing in the Release and Covenant Not to Sue requires or ever contemplated the Plaintiffs would perform any activities on the Outer Continental Shelf. The Outer Continental Shelf and OCSLA are not even mentioned in the Release and Covenant Not to Sue. (Doc. 1, Exh. #1, Exhibit "A" to Plaintiffs' Petition). Again, there is no nexus between the Plaintiffs' action and OCSLA.

Of utmost importance, this conclusion is wholly consistent with the case law set forth above, and the Fifth Circuit's decision in *Grand Isle Shipyard Inc. v. Seacor Marine, LLC*, 589 F.3d 778 (5th Cir. 2009). In that case, the court examined the role of the "situs" in resolving contractual disputes in resolving OCSLA jurisdictional questions. *Id.* at 781. After acknowledging the "situs" test in tort claims, the court stated:

> We hold that the focus-of-the-contract test is the appropriate test to apply in determining the situs of the controversy in contract cases, and we adopt that rule for the circuit.

*Id.* The court then found the contract at issue contemplated a majority of the work to be performed on the Outer Continental Shelf, and hence, the relevant "situs" was governed by OCSLA. *Id.* The court also noted other cases have properly looked to the "situs of the underlying tort" which gave rise to the contract claim. *Id.* at 785. Regardless of which test this Court finds appropriate to the Plaintiffs' claims at bar, both tests support remanding this action to state court.

In order to find OCSLA jurisdiction under the "focus-of-the-contract test," the Plaintiffs suggest this Court would need to find that the Release and Covenant Not to Sue mandated performance on a stationary platform or some other OCSLA situs. Again, there is no obligation to perform relative to production, development or exploration under OCSLA under the questioned Release.

19

Likewise, the "tort analysis" fails to establish a basis for OCSLA jurisdiction too. The primary offenses or quasi-offenses alleged in the Plaintiffs' action are the tortious acts of fraud, deceit and misrepresentation by the Defendants in obtaining the Plaintiffs' signature on the Release and Covenant Not to Sue.[3]  *See generally* Doc. 1, Exh. #1. The only other tortious activity complained of by the Plaintiffs arises from their status as fishermen and maritime law. *Compare with discussion at Grand Isle Shipyard Inc.*, 589 F.3d at 787-88.

And, the Plaintiffs' "status" as fishermen in this action bears no relationship to OCSLA or the policies sought to be controlled by OCSLA. The Plaintiffs have undoubtedly alleged that their rights in this action are derived from their "status" as commercial fishermen engaged in the maritime practice of fishing. They further allege a basis for their claims in the inability to conduct such basic maritime activities upon the navigable waterways of the State of Louisiana. The Plaintiffs make no claim of any inability to fish upon the Outer Continental Shelf.

The Fifth Circuit has expressly found fishing and the use of waterways to be "primary maritime activities." *Louisiana ex rel Guste v. M/V Testbank*, 752 F.2d 1019, 1049 (5th Cir. 1985) ("to the extent that the accident prevents the business from engaging in *primary maritime activities,*

---

[3]

The Plaintiffs expect the Defendants to argue *Bolua v. BP Exploration and Production, Inc.*, 2008 U.S. Dist. LEXIS 84200 (S.D. Tex. 2008), supports federal jurisdiction in this matter. In *Bolua*, the plaintiff was injured on a fixed platform on the Outer Continental Shelf. *Id.* at *2-3. The plaintiff later settled his claims with the Defendants in the case, including the Defendant BP. *Id.* at 4-5. Subsequently, the plaintiff initiated suit claiming he was deceived or misled into signing the release. *Id.* at 5-6. The court found OCSLA governed the action because the "situs" was the location of the injury the plaintiff sustained which was a platform in the Gulf of Mexico. *Id.* at *12-13. In contrast, the Plaintiffs in this action allege they were wronged by the Defendants' improper actions which all took place on land. Moreover, the Plaintiffs' asserted injury is an injury to their inability to conduct maritime activities on the waterways of the State of Louisiana, and not the waters of the outer Continental shelf. Doc. 1, Exh. #1, ¶¶ 10-11. As such the *Bolua* case is inapplicable to the matter at hand.

*such as fishing or use of the waterways*, or supplying commodities or services vital to primary maritime activities, such as those of bait and tackle shops, drydocks, marinas, and seafood wholesalers or processors") (emphasis added); *and Omes v. Texaco, Inc.*, 1990 U.S. Dist. LEXIS 2523, at *5 (E.D. La. 1990), *quoting Moore v. Hampton Roads Sanitation*, 557 F2d 1030, 1034 (4th Cir. 1976) ("Harvesting oysters and clams, *like fishing*, . . . and comes within the admiralty and maritime jurisdiction.") (emphasis added).  Thus, it is maritime law and not OCSLA which forms the underlying origin of the Plaintiffs' claims.

The Plaintiffs have freely chosen to exercise their rights by pleading their action against the Defendants in contract and maritime state law.  *See Grand Isle Shipyard Inc.,* 589 F.3d at 789 n.9.  The Defendants can do nothing to change this reality.  Nor can removal alter the Plaintiffs' choice of law or theory of the case.

Furthermore, a maritime claim does not "arise under" the laws of the United States for removal purposes under 28 U.S.C. § 1331.  *Walsh v. Seagull Energy Corp.,* 836 F. Supp. 411, 413 (E.D. La. 1993).  "Maritime claims do not qualify for federal question removal simply because they are not claims 'arising under' the laws of the United States." *Id.* at 414.  As the *Walsh* court stated: "[m]aritime law applies where an accident occurs on the high seas and in furtherance of an activity bearing a significant relationship to a traditional maritime activity." *Id.* at 416.  Of greater importance, the court noted the real question was not whether a court "could" exercise jurisdiction, but whether a court had the "right" to exercise jurisdiction. *Id.* at 417.  In a maritime case, the court found the "right" did not exist. *Id.* at 418.  *See also Nase v. Teco Energy, Inc.*, 347 F. Supp. 2d 313, 319 (E.D. La. 2004) ("[OCSLA] does not displace general maritime law if general maritime law is

21

also applicable).  The Plaintiffs respectfully suggest this Court does not have the "right" to exercise jurisdiction in this case.

Accordingly, there was no justification supporting removal under law governing this action. The facts are equally clear and weigh against removal.  Therefore, this Court should remand this matter to state court.

**D.  The Court should award attorney fees and costs.**

It is clear that the Defendant BP improperly removed this action, and the Defendant Worley improperly consented to BP's removal.  As such, the Plaintiffs request an award of attorney's fees and costs.  Pursuant to 29 U.S.C. § 1447(c), an award of attorney's fees, costs and expenses of this remand are appropriate.

The Plaintiffs' petitions, together with the established law and facts cited and discussed in this memorandum, make it clear the removal of this action was improper.  *Miranti v. Lee,* 3 F.3d 925, 928-9 (5th Cir. 1993).  The impropriety of removal was apparent on the face of the pleadings and at the time of the removal.  The well-established law of this Circuit, and cases from districts within this Circuit, cautioned against removal of this action.  In fact, the Defendants' removal was frivolous under the established case law.  *See Garcia v. Amfels, Inc.*, 254 F.3d 585, 587 (5th Cir. 2001).  The decision to award fees and cost lies within the sound discretion of this Court.  *Id.*

Too much time has passed and too much suffering and loss has taken place.  The Plaintiffs should not be compelled to endure any further losses.  The underlying cause of this action is the Defendants' bad acts and outright intentional scheme and misrepresentation to obtain an unfair advantage over the Plaintiffs.  For the same reasons their actions should not be tolerated, the Defendants' continued efforts to circumvent their legal obligations and responsibilities by creating

protracted litigation should not be tolerated nor rewarded. A reasonable, non-punitive, award of fees and costs is hence warranted. As such, the Plaintiffs respectfully request this Court exercise its discretion and award fees and costs in this matter.

## **CONCLUSION**

For the foregoing reason, the Plaintiffs respectfully request this Honorable Court remand their state court action. The action was improperly removed, and federal question jurisdiction is lacking. Additionally, the Plaintiffs request this Court make an award of reasonable fees, cost and expenses against the Defendants for their improvident removal.

Respectfully submitted,

*/s/Frank C. Dudenhefer, Jr.*
Frank C. Dudenhefer, Jr., T.A. (La Bar No. 5117)
THE DUDENHEFER LAW FIRM, LLC
601 Poydras Street, Suite 2655
New Orleans, LA 70130
Telephone: (504) 525-2553
Facsimile: (504) 523-2508
Email: fcdlaw@aol.com

AND

*/s/John B. Edwards*
John B. Edwards (La Bar No. 26274)
EDWARDS & ASSOCIATES LAW FIRM, LLC
208 East Oak Street
P.O. Box 974
Amite, LA 70422
Telephone: (985) 747-1088
Facsimile: (985) 747-1086
Email: john@edwardslaw.org

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this <u>21st</u> day of April 2011, a copy of the above and foregoing has been electronically filed with the Clerk of Court using the CM/ECF system, which then sent notification of such filing to all counsel of record.

<u>/s/Frank C. Dudenhefer, Jr.</u>
Frank C. Dudenhefer, Jr. (La Bar No. 5117)

24