IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: OIL SPILL by the OIL RIG        MDL NO.  2179
"*DEEPWATER HORIZON*" in the
GULF OF MEXICO, on April 20, 2010     SECTION:  J

**THIS PLEADING APPLIES TO ALL**      JUDGE BARBIER
**CASES IN PLEADING BUNDLE B1**       MAGISTRATE JUDGE SHUSHAN

**THIS PLEADING APPLIES TO:**
**No. 10-2771; All Cases in Pleading Bundle B1**

**MEMORANDUM IN SUPPORT OF MOTION OF DRIL-QUIP, INC. TO
DISMISS THE FIRST AMENDED MASTER COMPLAINT, CROSS-CLAIM,
AND THIRD-PARTY COMPLAINT FOR PRIVATE ECONOMIC LOSSES
("B1 BUNDLE") FOR FAILURE TO STATE A CLAIM**

Defendant Dril-Quip, Inc. ("Dril-Quip") respectfully submits this memorandum in support of its Motion to Dismiss the First Amended Master Complaint, Cross-Claim, and Third-Party Complaint for Private Economic Losses ("B1 Amended Master Complaint") for Failure to State a Claim.

**SUMMARY**

The B1 Amended Master Complaint does not name Dril-Quip as a party against which relief is sought nor make any allegations specifically against Dril-Quip.  Therefore, Dril-Quip is required to defend against the allegations in the B-1 Master Complaint only because of the procedural effect of the Rule 14(c) tender in the Transocean Parties' Third-Party Complaint.  Dril-Quip's references herein to "Plaintiffs'/Claimants' claims against" it must be read in light of the anomalous situation in which it is placed by Rule 14(c): to defend against complaints in which it is not named, in which no paragraphs directly address its role in the Macondo project, and in which the allegations and claims that are made are patently irrelevant to it.  Accordingly, each such reference to "Plaintiffs'/Claimants' claims

against Dril-Quip" should be read as if it contained the qualifier "by operation of law."[1]  The Court should dismiss the B1 Bundle Amended Master Complaint against Dril-Quip under Rule 12(b)(6) because the B1 Amended Master Complaint fails to plead any facts against Dril-Quip and/or that could reasonably be assumed to apply to Dril-Quip, and thus fails to satisfy the standard set forth in *Ashcroft v. Iqbal*, 556 U.S. __, 129 S. Ct. 1937, 1949 (2009) and *Bell Atlantic. Corp. v. Twombly*, 550 U.S. 544, 570, (2007).

Even if the Court denies Dril-Quip's motion to dismiss the allegations of Transocean's Third-Party Complaint against Dril-Quip and overlooks the pleading insufficiencies of the B1 Amended Master Complaint as to Dril-Quip, the motion should be granted because Plaintiffs'/Claimants' Maritime claims have been displaced by the Oil Pollution Act ("OPA") or, in the alternative, they lack viability under the *Robins Dry Dock* Rule.  Moreover, Plaintiffs'/Claimants' OPA claims must be presented to a Responsible Party or its representative before suit may be brought on them; many of the claims have not been so presented, and in any event, Dril-Quip is not a Responsible Party under the OPA.  Finally, Plaintiffs/Claimants assert no valid state law claims against Dril-Quip.  Either those claims have been preempted by statutes under which Plaintiffs/Claimants may not sue, or they are defective as stated, or both.

---

[1] This memorandum and the Motion it supports are filed subject to Dril-Quip's Motion to Dismiss Third-Party Complaint.

**BACKGROUND**

Dril-Quip allegedly "was involved with providing wellhead systems to the *Deepwater Horizon* …"[2]  Dril-Quip is not alleged to have had any other role on the *Deepwater Horizon*.

**ARGUMENT**

**I.     The B1 Amended Master Complaint Fails to State a Claim Against Dril-Quip Because it Fails to Allege Facts Sufficient to Establish Any Cause of Action**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. __, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). The "complaint must contain sufficient factual material accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 570); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007); *see also Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009)(allegations must push claim past "conceivable" to "plausible").    These "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555-56.  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Jacobs v. Tempur-Pedic Int'l, Inc.*, ___ F.3d ___, 2010 WL 4880864, *2 (11th Cir. Dec. 2, 2010)(quoting *Iqbal*, 556 U.S. at ___, 129 S. Ct. at 1949).  Under the standard set forth in *Twombly*, a complaint must plead "enough fact[s] to raise a reasonable expectation" that a plaintiff has a right to relief.  *See* 550 U.S. at 557.

---

[2] Third-Party Complaint at ¶19.   Because Plaintiffs/Claimants had not sued Dril-Quip at the time of Transocean's 14(c) tender, there are actually no allegations of any kind against Dril-Quip in their complaint.  Dril-Quip borrows this sentence from that tender as a point of origin for this Memorandum.

The Complaint pleads no facts tending to show liability, causation or damage that implicate Dril-Quip.  Indeed, the Complaint fails to even mention Dril-Quip and does not assert any causes of action directly against Dril-Quip; the only reason Dril-Quip is required to respond to the allegations in the Complaint is because it has been joined to the allegations in the Complaint by operation of Transocean's Third-Party Complaint pursuant to Rule 14(c).

The majority of the Complaint's allegations related to the Defendants are directed at "Defendants" or "Drilling Defendants".[3]  In other paragraphs, the Complaint alleges that certain Defendants committed specific acts but never alleges that Dril-Quip committed any specific act or identifies the wellhead as a source of problems.  Thus, even in these collective allegations, the Complaint does not allege a single fact that would tend to show that Dril-Quip did anything or failed to do anything that led to Plaintiffs'/Claimants' alleged injuries.

Allegations that lump multiple defendants together without specifying which defendant did what do not satisfy the federal pleading standards.  *Cruz v. Cinram Int'l, Inc.*, 574 F. Supp. 2d 1227, 1233 (N.D. Florida 2008); *see also Kester v. Zimmer Holdings, Inc.*, 2010 WL 2696467, at *12 (W.D. Pa. June 16, 2010) (collectively referring to "Defendants" insufficient under *Twombly*).  The Eleventh Circuit has stated "[t]his court has addressed the topic of shotgun pleadings on numerous occasions in the past, often at great length and always with great dismay."  *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1296 n. 9 (11th Cir. 2002).

This case is no different.  Plaintiffs'/Claimants' complaint fails to plead any facts specific to Dril-Quip.  It is thus impossible to ascertain what Dril-Quip did or failed to do that caused Plaintiffs'/Claimants' injuries.  The Court should therefore dismiss the Complaint against Dril-Quip for failure to state a claim.

---

[3]*Id.* at ¶¶288-90, 294-97, 301-04 ("Drilling Defendants"); 473, 577-586 ("Defendants").

## II.     Plaintiffs/Claimants Have No Valid Maritime Claims Against Dril-Quip

### A.  OPA Displaces Plaintiffs'/Claimants' Maritime Claims Against Dril-Quip.

Count I alleges claims under general maritime law for negligence, gross negligence, and willful misconduct. These maritime claims must be dismissed because there is a federal statute directly on point – the Oil Pollution Act.  Federal common law claims subsist only where there is no applicable federal statute. Here, OPA applies and provides a remedy for Plaintiffs/Claimants. Accordingly, as federal courts, including courts in this District, have repeatedly held, OPA displaces all of Plaintiffs'/Claimants'[4] federal-common-law claims against Dril-Quip arising out of discharge incidents.

Federal common law is "subject to the paramount authority of Congress." *New Jersey v. New York,* 283 U.S. 336, 348 (1931).  Thus, "when Congress addresses a question previously governed by … federal common law the need for such an unusual exercise of lawmaking by federal courts disappears." *City of Milwaukee v. Illinois and Michigan,* 451 U.S. 304, 314 (1981) *(Milwaukee II).*  When Congress acts comprehensively, it displaces preexisting federal common law. *See, e.g., Middlesex Cnty. Sewerage Auth* v. *Nat'l Sea Clammers Ass'n;* 453 lLS. 1; 21-22 (1981) (Clean Water Act displaced federal common law of nuisance as to ocean pollution). Moreover, in *Milwaukee II,* to ensure that federal courts properly defer to Congress, the Supreme Court held that there is a *presumption in favor of displacement of common law claims* when a new federal statute is adopted to control a particular subject area. *See* 451 U.S. at 317.

Therefore, judge-created admiralty doctrines – a form of federal common law – must give way to the will of Congress reflected in a federal statute.  "Even in admiralty, ... where the federal judiciary's lawmaking power may well be at its strongest, it is our duty to respect the will

---

[4] Dril-Quip reserves all rights to challenge the underlying individual complaints of Bundle B1 Plaintiffs/Claimants.

of Congress." *Nw. Airlines, Inc. v. Transp. Workers Union of Am., AFL-CIO,* 451 U.S. 77, 96 (1981).  Maritime claims are no exceptions to the rule that "once Congress addresses a subject ... the task of the federal courts is to interpret and apply statutory law, not to create common law." *Id.* at 95 n.34.  As Justice O'Connor noted in *Miles v. Apex Marine Corp*., 498 U.S. 19, 36 (1990), "Maritime tort law is now dominated by federal statute."  Federal courts have found maritime law to be displaced by such statutes as the Death on the High Seas Act, *see Mobil Oil Corp. v. Higginbotham,* 436 U.S. 618, 625 (1978), the Equal Pay Act and Title VII of the Civil Rights Act of 1964, *see Nw. Airlines,* 451 U.S. at 95-97, and the Clean Water Act, *see United States v. Dixie Carriers, Inc.,* 627 F.2d 736, 738 (5th Cir. 1980).

In OPA, Congress acted to provide a comprehensive set of remedies for all cognizable forms of economic loss arising from oil spills.  As Plaintiffs/Claimants *can* recover from responsible parties their economic damages under OPA, they *must* do so, as those remedies are exclusive.  Plaintiffs/Claimants cannot use maritime law to evade or add to the remedies chosen by Congress.  *See Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atlantic Corp.,* 924 F. Supp. 1436, 1447 (E.D. Va. 1996), *aff'd,* 122 F.3d 1062 (4th Cir. 1997), *cert. denied,* 523 U.S. 1021 (1998) (OPA provides NSCSA with a remedy against Moran, therefore preempts the general maritime law as to recovery of cleanup expenses and the cost of compensating third parties).  Similarly, the First Circuit recognized in *S. Port Marine,* displacement by OPA embraces the specific " 'area covered by statute ....' "  *See Miles v. Apex Marine Corp.,* 498 U.S. 19, 31 (1990)] (quoting *Mobil Oil Corp. v. Higginbotham,* 436 U.S. 618, 625 (1978))," and held that "Congress did so intend" for OPA "to supplant the existing general admiralty and maritime law." 234 F.3d at 65-66.

Thus, OPA displaces all maritime claims alleged in the B1 Amended Master Complaint and provides the sole federal remedy for any claimant seeking recovery for damages and/or cleanup costs resulting from an oil spill. *See* 33 U.S.C. § 2702(a) (establishes damages and cleanup cost remedies "[n]otwithstanding any other provision or rule of law"). The scope of the remedies OPA authorizes is set out in 33 U.S.C. § 2702(b), which provides "a comprehensive list of recoverable damages, including: [1] removal costs; damage to [2] natural resources and [3] real or personal property; [4] loss of subsistence use of natural resources; [5] loss of government revenues, [6] lost profits and earning capacity; and [7] costs of increased or additional public services occasioned by the unlawful act." *S. Port Marine,* 234 F.3d at 64. The remedies recoverable under OPA are exclusive. Any maritime remedy or theory of recovery not authorized by OPA is foreclosed. *See id.* at 65.

Every federal court addressing the issue has held that OPA displaces preexisting, judge-made maritime claims of the sort Plaintiffs/Claimants bring in the B1 Complaint. In *Tanguis v. M/V Westchester,* this Court held that "[t]his new scheme [OPA] includes new remedies, which, in many respects, preempt traditional maritime remedies." 153 F. Supp. 859, 867 (E.D. La. 2009). In *Gabarick v. Laurin Maritime (America) Inc.,* this Court held that *"all* claims that are recoverable under OPA," specifically those covered damages enumerated in § 2702, "are preempted by OPA." 623 F. Supp. 2d 741, 750-51 (E.D. La. 2009) (emphasis added). Courts in other jurisdictions agree.[5]   OPA is an expansive and inclusive system of liability regulation:

---

[5] In *S. Port Marine,* the First Circuit held that the "scheme is comprehensive" in oil discharge cases, and, thus, that OPA is "the sole federal law applicable in this area of maritime pollution." 234 F.3d at 65; *see also Seaboats, Inc. v. Alex C Corp.,* Nos. 01-12184-DPW, 01-12186-DPW, 00-12500-DPW, 2003 WL 203078, at *11 (D. Mass. Jan. 30,2003) (dismissing claims under maritime contribution and indemnity where OPA had provided for recovery of those damages); *Nat'l Shipping Co. a/Saudi Arabia,* 924 F. Supp. at 1447 ("OPA clearly preempts maritime law as to recovery of cleanup expenses and the cost of compensating injured persons.").

"OPA 'represents Congress' attempt to provide a comprehensive framework in the area of marine oil pollution." *Tanguis,* 153 F. Supp. 2d at 867.[6] Congress also has observed that OPA "creates a single federal law providing clean up authority, penalties, and liability for oil pollution." S. Rep. No. 101-94, at 9 (1990), *reprinted in* 1990 U.S.C.C.A.N. 722, 730.

Plaintiffs'/Claimants' maritime claims alleged in Count I fall squarely within the scope of OPA. Plaintiffs/Claimants can point to no gap in OPA that would rebut the presumption in favor of displacement that exists in these circumstances.   Therefore, as a matter of federal law, Plaintiffs'/Claimants' federal common-law maritime claims are displaced by OPA and must be dismissed.

> **B.   Even If Plaintiffs'/Claimants' Maritime Claims Were Not Displaced By OPA, They Must Be Dismissed Pursuant To The *Robins Dry Dock* Rule.**

Even if Plaintiffs'/Claimants' maritime claims were not displaced by OPA, they should still be dismissed.  These claims are barred by *Robins Dry Dock* & *Repair Co. v. Flint,* 275 U.S. 303, 309 (1927), which prohibits general maritime law tort recovery of economic losses absent physical injury to a proprietary interest.  *See In re Taira Lynn Marine Ltd. No.5, LLC,* 444 F.3d 371, 377 (5th Cir. 2006) ("… the law of this circuit does not allow recovery of purely economic claims absent physical injury to a proprietary interest in a maritime negligence suit.")

To avoid the *Robins Dry Dock* rule, a maritime plaintiff must demonstrate that (1) it possesses a sufficient and cognizable interest in the property allegedly damaged; and (2) the

---

[6] *See also Targa Midstream Servs. Ltd. P'ship v. K-Sea Transp. Partners, LP,* No. G-05-629, 2006 WL 2520914, *2 (S.D. Tex. Apr. 20, 2006) ("OPA created a stricter and more comprehensive liability scheme for oil spill pollution than had existed under prior legislation ...."); *Rice* v. *Harken Exploration Co.,* 89 F. Supp. 2d 820, 822 (N.D. Tex. 1999) ("[OPA] represents Congress's attempt to provide a comprehensive framework in the area of marine oil pollution."); *cf Gatlin Oil Co., Inc.* v. *United States,* 169 F.3d 207,209 (4th Cir. 1999) (Congress enacted OPA to provide a "prompt, federally-coordinated response to oil spills in navigable waters of the United States and to compensate innocent victims.").

property suffered physical injury such that the situation is not one involving mere economic injury to the property interest holder.  Plaintiffs'/Claimants' claims fail both prongs of the *Robins Dry Dock* test. *See, e.g., G&G Steel, Inc. v. Sea Wolf Marine Transp., LLC,* 380 Fed. Appx. 103, 104-05 (2d Cir. 2010) (charterer of a barge's duty to maintain it in good condition and pay a $50,000 insurance deductible did not give it a sufficient proprietary interest in the barge to meet the *Robins Dry Dock* test); *Louisiana ex reI. Guste v. M/V Testbank,* 752 F.2d 1019, 1031-32 (5th Cir 1985) (en banc) (summary judgment for defendants pursuant to *Robins Dry Dock* proper where boat operators, seafood enterprises, bait shops, and recreational fishermen brought general maritime claims seeking purely economic damages resulting from chemical spill).[7]

Nowhere do Plaintiffs/Claimants allege they suffered physical injury to a proprietary interest.  (B1 Compl. ¶¶ 569-677.)[8]  The "Commercial Fishermen Plaintiffs" and "Processing and Distributing Plaintiffs" meet neither prong of *Robins Dry Dock* – they do not own the seafood and their injuries are economic.  (*Id*. ¶¶ 209(a)-(b), 614-15.)  "Commercial Business Plaintiffs," "Recreational Business Plaintiffs," "Recreation Plaintiffs," and "Plant and Dock

---

[7]  *See also Kingston Shipping Co. v. Roberts,* 667 F.2d 34,35 (11th Cir. 1982) (applying *Robins Dry Dock* to affirm dismissal of negligence claims alleging pure economic damages, and rejecting attempts to question the rule's validity); *In re Settoon Towing LLC,* No. 07-1263, 2009 WL 4730969, at *3 (E.D. La. Dec. 4, 2009) *(Robins Dry Dock* bars recovery for pure economic damages from oil well owner's inability to access the oil platform due to a spill); *Blue Gulf Seafood, Inc.* v. *TransTexas Gas Corp.,* 24 F. Supp. 2d 732, 734-35 (S.D. Tex. 1998) (dismissing claims of unlicensed oyster farmers who alleged pure economic losses as a result of defendants' negligent acts).

[8]  While Plaintiffs/Claimants do allege that "Real Property Plaintiffs" and "Real Property/Tourism Plaintiffs" have "suffered, *inter alia,* damage to their real and personal property," (*see* B 1 Compl. ¶ 621-622), they have not specified that such "damage" was a "physical injury" or that the injury was to a "proprietary interest." Moreover, in the "Real Property/Tourism Plaintiffs" the Plaintiffs are mixing in claimants who might be able to meet the ownership prong of the *Robins Dry Dock* test *(e.g.,* hotel owners) with "all those who earn their living from the tourism industry" (*Id. ¶* 209(i).) Obviously, many of those earning their living from the tourism industry would not be even remotely eligible to claim an ownership interest in property damaged by oil. Similarly, "VoO Plaintiffs" *(Id. ¶* 620) (Vessel of Opportunity operators who did not experience boat damage) improperly are lumped together with those that did.

Worker Plaintiffs" do not allege any ownership interest, and only consequential economic losses. (*Id.* ¶¶ 309(c)-(f), 616-619.)   The same is true for "Banking/Retail Business Plaintiffs," "Subsistence Plaintiffs," "Dealer Plaintiffs," and "Moratorium Plaintiffs."   (*Id.* ¶¶ 209(j)-(m), 623-626.)

Count l.A.-B. must therefore be dismissed for the additional reason that Plaintiffs/Claimants do not satisfy the *Robins Dry Dock* rule that purely economic claims absent physical injury to a proprietary interest are not recoverable in admiralty.

### III.    Pursuant to OPA, Dril-Quip Cannot Be Sued Directly By Persons Injured by an Oil Spill.

#### A. This Court Lacks Jurisdiction to Decide The Claims of Any Plaintiffs/Claimants That Have Not Satisfied OPA's Presentment Provisions.

Because OPA provides the exclusive remedy for Plaintiffs'/Claimants' alleged oil spill-related damages, the Bundle B1 Plaintiffs/Claimants – who seek recovery of such damages – must comply with the presentment requirements of the OPA before filing suit. To the extent that any Plaintiff/Claimant has failed to satisfy this requirement, this Court lacks jurisdiction to decide that Plaintiff's/Claimant's claims.

OPA's remedial scheme rests on two concepts: the "Responsible Party" and a strict liability compensation procedure intended to provide prompt, complete resolution of claims outside of litigation.  Both are key to the remedy.  "All claims for removal costs or damages" covered by OPA "shall" be presented to the Responsible Party. 33 U.S.C. § 2713(a). The claims must sufficiently detail the nature and extent of the claimant's alleged injury to allow for genuine settlement negotiations between the claimant and the Responsible Party. *See, e.g., Johnson v. Colonial Pipeline Co.,* 830 F. Supp. 309, 311 (E.D. Va. 1993). Only if the Responsible Party

denies liability for the claim or a sufficiently presented claim is not settled within 90 days by the Responsible Party may the claimant elect to commence an action in court "against the responsible party." 33 U.S.C. § 2713(c).

"The clear text of § 2713 creates a mandatory condition precedent barring all OPA claims unless and until a claimant has presented [its] claims" to the Responsible Party and had them denied. *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.,* 51 F.3d 235, 240 (11th Cir. 1995) (emphasis added); *see also Gabarick,* 623 F. Supp. 2d at 750-51 (dismissing for lack of subject matter jurisdiction all non-OPA claims seeking damages of the type covered by OPA for failure to present such claims to the designated responsible party); *Marathon Pipe Line Co. v. La Roche Indus. Inc.,* 944 F. Supp. 476, 477 (E.D. La. 1996) ("The Court agrees that § 2713's presentation requirement is jurisdictional and mandates dismissal when that provision is applicable and not complied with by the claimant."); S. Rep. No. 101-94, at 10 (1989), *reprinted in* 1990 U.S.C.C.A.N. 722, 732 (noting that "the bill requires claims to be presented in the first instance to the discharger, where known."). Thus, until OPA's presentment requirements have been met, litigation for oil spill-related claims is foreclosed. Allowing Plaintiffs/Claimants to bypass the presentment requirement would frustrate Congress's intent to provide, through OPA, a prompt, comprehensive and orderly remedial scheme.

In this case, Plaintiffs/Claimants allege only that they "have satisfied, or will have satisfied" – at some unspecified time – OPA's presentment requirements. Compl. ¶ 689. Having admitted that they have not presented their claims to a Responsible Party and had them denied, Plaintiffs'/Claimants' lawsuits are untimely and this Court lacks jurisdiction to adjudicate them. Therefore, any claim against Dril-Quip asserted, or to be asserted, by any Plaintiff/Claimant who

has not satisfied OPA's presentment requirements must be dismissed. *See* FED. R. CIV. P. 12(b)(1).

**B.      Even If Plaintiffs/Claimants Satisfy the Presentment Requirements of OPA, Their Sole Remedy Lies Against the Responsible Party(ies) Designated Under OPA – Not Against Dril-Quip.**

Even if Plaintiffs/Claimants satisfy the presentment requirements of OPA and properly invoke the jurisdiction of this Court, their present or future claims for oil spill-related damages against Dril-Quip must be dismissed because Dril-Quip has not been named an OPA "Responsible Party."

Plaintiffs'/Claimants' sole remedy for oil spill-related damages under OPA lies against the Responsible Party(ies) under OPA. 33 U.S.C. § 2713 (If a claim properly presented to the Responsible Party is denied, "the claimant may elect to commence an action in court against the responsible party ...."). This plain language reading of the statute is fully supported by and consistent with clearly stated congressional intent that "[t]he system of liability and compensation provided for in the bill ... is intended to allow for quick and complete payment of reasonable claims without resort to cumbersome litigation." 135 CONG. REC. 7965 (1989).  As this Court has explained, "[i]n light of Congress's intent to minimize piecemeal lawsuits and the mandatory language of OPA … Claimants should pursue claims covered under OPA only against the responsible party and in accordance with the procedures established by OPA." *Gabarick,* 623 F. Supp.2d at 750. "Then, the responsible party can take action to recover against third parties." *Id.  See 3*3 U.S.C. § 2702(d)(1)(B); *see also id.* at § 2709 (providing for rights of contribution); § 2710 (permitting indemnity agreements among potentially responsible parties). This language makes clear Congress's intent that persons allegedly injured by an oil spill receive prompt, non-judicial resolution of their claims by an identified party. Should litigation be necessary, claimants are directed to present their case only and entirely against that Responsible

Party. Complex multi-party litigation – with all of its attendant costs and burdens – is shifted away from claimants to subrogation, contribution, and indemnity actions among those potentially liable for the spill. *See* 33 U.S.C. §§ 2702(d), 2709.

Plaintiffs/Claimants may not sue Dril-Quip for oil spill-related damages because Dril-Quip is not a designated Responsible Party under OPA. Accordingly, if Plaintiffs/Claimants have brought claims against Dril-Quip under OPA, or bring future direct claims against Dril-Quip for oil spill-related damages covered by OPA, these claims should be dismissed as well, because they are viable only against the Responsible Party(ies).

### IV.    Plaintiffs/Claimants Have No Valid State Law Claims Against Dril-Quip

Count III appears to assert trespass, nuisance and fraudulent concealment claims under the law of every Gulf Coast State and perhaps beyond.  Plaintiffs/Claimants also assert a Florida Pollutant Discharge Prevention and Control Act (PDPCA) claim, yet conspicuously omit to bring a Louisiana Oil Spill Prevention and Response Act (LOSPRA) claim. These state law claims are not valid and must be dismissed:

- *First, under OCSLA, Louisiana, as the "adjacent State," is the only State whose laws could conceivably be applied as borrowed surrogate federal law* to claims arising out of the Deepwater Horizon *oil spill.  The laws of Alabama, Florida, Mississippi, and Texas (or beyond) are preempted by OCSLA and can have no application to the incident.*

- *Second, there is no role here for Louisiana law as borrowed surrogate federal law pursuant to OCSLA because the comprehensive and OPA regime leaves no gap in federal law as to claims against Dril-Quip, hence there is no gap needing to be filled by the law of the adjacent State.*

- *Third, even if there was a "gap" in federal law such that Louisiana law was applicable to claims against Dril-Quip as borrowed surrogate federal law, Plaintiffs/Claimants have no valid claims under Louisiana law: (a) LOSPRA would provide the exclusive remedy, and Plaintiffs/Claimants do not assert a LOSPRA claim; and (b) even absent LOSPRA, Plaintiffs/Claimants do not allege the Louisiana law prerequisites for nuisance, trespass and fraudulent concealment claims.*

• *Finally, even if Florida law was not preempted by OCSLA and the CWA, Plaintiffs'/Claimants' claims under the PDPCA must be dismissed because it is inapplicable here.*

A. **Pursuant to OCSLA, The Laws of Non-Adjacent States, Such As Alabama, Florida, Mississippi and Texas, Are Preempted and Cannot Apply Here.**

To the extent Plaintiffs/Claimants assert non-Louisiana state law claims under Count III, they must be dismissed.  The Outer Continental Shelf Lands Act (OCSLA) specifies that federal law must apply to operations on the Shelf, and dictates that only the laws of a single "adjacent State" may be borrowed as surrogate federal law in the event of a gap in actual federal law. Plaintiffs'/Claimants' alleged damages stem from operations on the Shelf, namely the discharge of oil from MC252, and Louisiana is the "adjacent State." Thus, the laws of non-adjacent States have no application here.

OCSLA establishes the Shelf as a "federal enclave" such that federal law applies to operations there. *See* 43 U.S.C. § 1332(1).  Under OCSLA:

> The Constitution and laws and civil and political jurisdiction of the United States are extended to the subsoil and seabed of the outer Continental Shelf and to all artificial islands; and all installations and other devices permanently or temporarily attached to the seabed, which may be erected thereon for the purpose of exploring for, developing, or producing resources therefrom, or any such installation or other device (other than a ship or vessel) for the purpose of transporting such resources, to the same extent as if the outer Continental Shelf were *an area of exclusive Federal jurisdiction located within a State* ....

*Id.* § 1333(a)(1) (emphasis added). The Supreme Court has explained that "[t]he intent behind OCSLA was to treat the artificial structures covered by the Act as upland islands or as *federal enclaves* within a landlocked State."  *Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 217 (1986) (emphasis added).

14

State law does not apply to actions stemming from operations on the Shelf unless it applies under OCSLA. And OCSLA makes clear that only the law of the "adjacent state" applies as borrowed federal law to fill in gaps in actual federal law:

> *To the extent that they are applicable and not inconsistent with this subchapter or with other Federal laws and regulations of the* Secretary now in effect or hereafter adopted, the civil and criminal *laws of each adjacent State,* now in effect or hereafter adopted, amended, or repealed *are declared to be the law of the United States* for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf ….

43 U.S.C. §1333(a)(2)(A) (emphasis added).  *Cf.* Assimilative Crimes Act, 18 U.S.C. § 13 (incorporating the law of the State in which a federal enclave is situated to act as surrogate federal law).  The provision thus must be read as a mandatory directive by Congress as to what law controls Shelf territory and activities.  The law of the "adjacent state" is applied only "to fill in the gaps in the federal law." *Union Tex. Petroleum Corp.* v. *PLT Eng'g, Inc.,* 895 F.2d 1043, 1052 (5th Cir. 1990).

Louisiana is the "adjacent state" for application of OCSLA to the *Deepwater Horizon* incident and resulting discharge of oil from MC252.[9]  *See In re Oil Spill,* 2010 WL 3943451 at

---

[9] "[F]our types of evidence" are considered by a district court to determine which State is adjacent to an OCS location: "(1) geographic proximity; (2) which coast federal agencies consider the subject platform to be 'off of; (3) prior court determinations; and (4) projected boundaries." *Snyder Oil Corp.* v. *Samedan Oil Corp.,* 208 F.3d 521, 524 (5th Cir. 2000). With regard to MC252, where the incident occurred, Louisiana is geographically closer than any other Gulf Coast State.  Courts have concluded that OCS locations within the Mississippi Canyon field are adjacent to the State of Louisiana and have applied Louisiana law as surrogate federal law. *See, e.g., Ronquille* v. *MMR Offshore Servs., Inc.,* 353 F. Supp. 2d 680 (E.D. La. 2004) (Mississippi Canyon Block 809); *Dennis* v. *Bud's Boat Rental, Inc.,* 987 F. Supp. 948 (E.D. La. 1997) (Mississippi Canyon Block 20).  The "projected boundary" results are less clear but do not outweigh the other factors.

15

*3 ("Defendants were exploring and producing minerals, namely oil, from the outer Continental Shelf. It is these activities that allegedly caused the April 20, 2010 explosion and the resulting oil spill"). The structure of OCSLA and the very idea of a federal enclave would be nullified if multiple state laws could impose on rig owners, lessees, and operators a hodgepodge of duties governing the same project or set of operations. Thus, Plaintiffs'/Claimants' non-Louisiana state law claims must be dismissed.

### B. There Is No "Gap" In Federal Law Permitting Application Of Surrogate Federal Law Under OCSLA

OCSLA applies the law of "the" adjacent state as borrowed surrogate *federal law* to fill substantial "gaps" or "voids" in actual federal law.  See 43 U.S.C. §1333(a)(2)(A).  Hence, to avoid preemption by OCSLA and  OPA, *two conditions must both be met:* (i) a plaintiff must attempt to apply the law of the adjacent state; and (ii) a plaintiff must identify a substantial gap or void in federal law. As to Dril-Quip, Plaintiffs'/Claimants' state law claims do not meet either test.  First, as shown, pages 13-15, *supra*, Plaintiffs/Claimants have not confined themselves to claims under Louisiana law.  Second, OPA establishes a federal compensatory regime for those affected by an oil spill, and that regime fully applies here.

LOSPRA cannot serve as a gap-filling statute, because it is not intended to fill a "significant void," but to serve as a complement to federal law.  The Louisiana Legislature tailored LOSPRA to OPA's comprehensive nature.[10]

---

[10] *See Nations* v. *Morris,* 483 F.2d 577, 585 (5th Cir. 1973) (explains "significant void" requirement; holds employee's claim that "the Louisiana Workmen's Compensation Act with its freedom to sue fellow employees is 'applicable' as surrogate federal law is too frail a craft to venture to the Outer Continental Shelf."), *cert. denied, 414* U.S. 1071 (1973). "The [Louisiana] legislature declares that it is the intent of [LOSPRA] to *support and complement the Oil Pollution Act of 1990 . .. and other federal law,* specifically those provisions relating to the national contingency plan for cleanup of oil spills and discharges, including provisions relating to the responsibilities of state agencies designated as natural resources

### C.   Even If Louisiana Law Applied Here, Plaintiffs/Claimants Have No Valid Claims Under Louisiana Law

Even if a "gap" existed that would permit the borrowing of Louisiana law ("adjacent state") as surrogate federal law, Plaintiffs'/Claimants' nuisance, trespass and fraudulent concealment claims fail.  LOSPRA would be Plaintiffs'/Claimants' exclusive remedy.  But even if there were no LOSPRA, Plaintiffs'/Claimants' state law claims would have to be dismissed for failure to allege prerequisites for asserting such claims under Louisiana law.

### 1.   LOSPRA Would Be Plaintiffs'/Claimants' Exclusive Remedy if Louisiana Law Applied, and Plaintiffs/Claimants Do Not Assert a LOSPRA Claim

LOSPRA is the exclusive authority for oil spill response, natural resource damage assessment, and liability under Louisiana law.  It was enacted in 1991 "to assist the legislature in fulfilling its duties to protect, conserve, and replenish the natural resources of this state in accordance with ... the Constitution of Louisiana." La. R.S. § 30:2453(A).   Yet Plaintiffs/Claimants do not assert a LOSPRA claim.  Thus, Plaintiffs'/Claimants' claims against Dril-Quip for nuisance, trespass and fraudulent concealment must be dismissed because they are barred by LOSPRA.

By its terms, LOSPRA is "the *exclusive authority* on oil spill prevention, response, removal, and the limitations of liability" under Louisiana law, and its provisions broadly apply to any "responsible party" as well as "potentially responsible party" for an oil spill. *Id.* §§ 30:2496, 30:2454(22)  (emphasis  added), § 30:2480(G); *see  also* La. Admin. Code, Title 43, Part

---

trustees. The legislature intends [LOSPRA] to be interpreted and implemented in a manner consistent with federal law." La. R.S. § 30:2453(B) (emphasis added); *see also* La. Admin. Code, Title 43, Part XXIX § 101(B) ("These rules shall be interpreted and implemented in a manner consistent with federal law. Any conflict between a provision of these rules and the National Oil and Hazardous Substances Pollution Contingency Plan ... and/or the Oil Spill Prevention and Response Act ... should be resolved in favor of the cited authorities.").

XXIX § 115(A). LOSPRA expressly supersedes other causes of action conflicting with it. *See* La. R.S. § 30:2491(A) ("When applicable, the limitations of liability and immunities provided in [LOSPRA] shall be exclusive and shall supersede any other liability provisions provided by any other applicable state law."). Plaintiffs'/Claimants' claims for nuisance, trespass, and fraudulent concealment damages are all based on alleged losses from property contamination. (Bl Compl. ¶¶ 691-731) Because LOSPRA applies to "damages for injury to, or economic loss resulting from destruction of, immovable or corporeal movable property," Plaintiffs/Claimants state law claims are inconsistent with LOSPRA. *see* La. R.S. § 30:2454(5). Without the liability limitations and caps, LOSPRA could not operate properly. *See id.* § 30:2479 (establishes detailed caps on damages and removal costs attributable to responsible parties).

LOSPRA provides that "[t]he provisions of this Chapter shall supersede ... any conflicting laws of this state." La. R.S. § 30:2491(A); *see also id.* § 30:2496. LOSPRA's exclusive remedies bar fully applies to the state law claims being pursued here by Plaintiffs/Claimants against Dril-Quip. Accordingly, Plaintiffs'/Claimants' state law claims are preempted by LOSPRA as a matter of Louisiana law.

## 2. The B1 Amended Master Complaint Fails to State a Negligence Claim Against Dril-Quip

Even if the B1 Amended Master Complaint claims were not deficient under the *Twombly-Iqbal* pleading standard and preempted by OPA, they would not state a claim under maritime or state negligence law against Dril-Quip because the alleged harm to Plaintiffs/Claimants was too thinly connected to Dril-Quip's activities to create a duty to them. *See In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 211-13 (5th Cir. 2010)(connection between river dredging and collapse of New Orleans levees too attenuated to be foreseeable);

18

*Lloyd's Leasing Ltd. v. Conoco*, 868 F.2d 1417, 1448-49 (5th Cir. 1989)(type of onshore damage from oil spill 70 miles away alleged by plaintiff not reasonably foreseeable as matter of law); *Consolidated Aluminum Corp. v. C.F. Bean Corp.*, 833 F.2d 65, 67 (5th Cir. 1987)(insufficient connection between dredging that ruptured gas pipeline and damages at aluminum processing plan from gas supply interruption to extend duty from dredging company to plant)(maritime law); *see also Jennings v. BIC Corp.*, 181 F.3d 1250, 1257 (11th Cir. 1999)(child's *purchase* and misuse of cigarette lighter beyond reasonable scope of risk to create duty on part of manufacturer)(Alabama law). The *Lloyd's Leasing* case especially militates against the existence of a duty here because it reviewed the foreseeable consequences of an oil spill, which did not extend to losses suffered by businesses and homes. *See* 868 F.2d at 1449.

### 3. The B1 Amended Master Complaint Fails To State A Viable Claim Against Dril-Quip As A Product Manufacturer

Under the applicable Louisiana law of product liability, the B1 claims are not viable; and, in any event, the overwhelming majority of the B1 Plaintiffs/Claimants would not be entitled to recover against Dri-Quip under the "economic loss" rule applied under Louisiana law. The B1 Complaint asserts four "common law" theories of liabilities other than manufacturers' liability: negligence, gross negligence, nuisance, and trespass. *Id.* §§ 572, 604, 629, 636, 699, 711. But Louisiana law does not subject product manufacturers to liability on these grounds. The Louisiana Products Liability Act provides that "[t]his Chapter establishes the exclusive theories of liability for manufacturers for damage caused by their products." LA. REV. STAT. § 2800.52. The Act further enjoins, "[a] claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in this Chapter." *Id.* The Act does not set forth theories of liability sounding in negligence, trespass, public nuisance, or private nuisance. Under applicable Louisiana law, therefore, B1

Plaintiffs/Claimants may not recover from Dril-Quip under any of those four theories of liability. *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 260 (5th Cir. 2002) (noting district court's dismissal of negligence claims); *In re Air Bag Products Liability Litigation*, 7 F. Supp.2d 792, 802 (E.D. La. 1998)(dismissing Louisiana tort claims not based on Louisiana Act).

The B1 Complaint does attempt to state claims under general maritime law for recovery based on manufacturing defect, design defect, or inadequate warnings.   See B1 Complaint ¶¶ 638, 644.   Section 2800.54.B(1)-(3) of the Louisiana Act recognizes product liability claims based on these theories.   However, under subsection 2800.54.D., Plaintiffs/Claimants bear the burden of showing that, with respect to any such theory, "a characteristic of the product" is "unreasonably dangerous" as set out in sections 2800.55, 2800.56, and 2800.57 of the Act. *Jefferson v. Lead Indus. Ass'n*, 930 F. Supp. 241, 244-45 (E.D. La. 1996).   The B1 Complaint does not make sufficient allegations to carry that burden.   The B1 Complaint therefore fails to state a claim against Dril-Quip under Louisiana law for which relief can be granted.

     *a.   Construction or Composition*

Under section 2800.55, a claimant may obtain relief for damage caused by a product that was "unreasonably dangerous in construction or composition" only "if at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer." *Broussard v. Procter Gamble Co.,* 463 F. Supp. 2d 596, 610 (W.D. La. 2006).

As noted, the B1 Amended Master Complaint makes no allegations at all against Dril-Quip.   On the assumption, however, that under the Rule 14(c) tender, Dril-Quip is expected to respond generally to assertions of product liability, the nearest analogue is to the claims against

Cameron concerning the blowout preventer (BOP).  The B1 Complaint makes repeated but vague and unsubstantiated references to the alleged "defective manufacture" of Cameron's BOP. B1 Complaint ¶¶ 638, 646-48, 651, 657.  However, the B1 Amended Master Complaint does not address Cameron's specifications or performance standards in any respect.  In fact, the B1 Master Complaint does not even allege that the Cameron BOP was constructed in accordance with Cameron's own specifications.  This is important, because Cameron would be expressly excluded from liability under Louisiana law if it built the BOP in accordance with a design specified by BP or Transocean.  La. R.S. § 9:2771.  In addition, the B1 Complaint does not allege that the BOP deviated at all, let alone in a material way, from Cameron's specifications or performance standards.  Precisely the same arguments apply in favor of Dril-Quip and its wellhead.  The B-1 Amended Master Complaint does not allege who supplied the specifications for the wellhead or whether the delivered wellhead departed from them in any way.  These lapses are fatal to the B1 Plaintiffs'/Claimants' effort to allege a "construction or composition" theory of liability under section 2800.55.  *See Broussard*, 463 F. Supp. 2d at 610.

      *b.  Design*

      Under section 2800.56 of the Louisiana Act, a claimant may obtain relief for a product that was "unreasonably dangerous in design" only "if at the time the product left its manufacturer's control" (1) there was "an alternative design for the product that was capable of preventing the claimant's damage" and (2) the "likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product."  *Morgan v. Gaylord Container Corp.*, 30 F.3d 586, 590 (5th Cir. 1994).  The B1 Amended Master Complaint obliquely discusses what appear to

21

be alternative designs and, in an offhand manner, refers to the elements of section 2800.56.  B1 Complaint ¶¶ 643,644.  But the B1 Complaint does not make any factual allegation specifying any alternative wellhead design that was capable of preventing the B1 Plaintiffs'/Claimants damages.

The B1 Complaint's offhand reference to or recitation of the elements of section 2800.56 does not suffice under the Federal Rules.  "A pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 500 (2007). Moreover, the complaint's attempt to invoke section 2800.56 is directly contradicted by its own specific factual allegations concerning how the accident occurred.  Considered in its entirety, the B1 Complaint fails to allege sufficient facts to support a finding that any B1 Plaintiff/Claimant is entitled to relief against Dril-Quip for unreasonably dangerous design under section 2800.56. *See Morgan*, 30 F.3d at 590-91; *Broussard*, 4463 F. Supp.2d at 610-11.

### c.  Inadequate Warning

Under section 2800.57 of the Louisiana Act, a B1 Plaintiff/Claimant may obtain relief for a product that is "[u]nreasonably dangerous because of inadequate warning," but only if the product contained a potentially damaging "characteristic" about which the manufacturer did not provide a warning.  *Stahl*, 283 F.3d at 261.   Subsection B(2) of this section, however, provides that a "manufacturer is not required to provide an adequate warning about his product when" the "user or handler of the product already knows or reasonably should be expected to know of the characteristic of the product that may cause damage and the danger of such characteristic." *Morgan*, 30 F.3d at 591.

The B1 Amended Master Complaint refers obliquely to insufficient warnings. B1 Complaint ¶¶ 643, 651(h). But it does not specify any potentially problematic characteristics of the wellhead that were the subject of inadequate warnings. *See Morgan*, 30 F.3d at 591-92.

### 4. Plaintiffs/Claimants Fail to Allege Necessary Prerequisites For Asserting A Nuisance Claim Under Louisiana Law

Plaintiffs'/Claimants' nuisance claim (Count III.A) must be dismissed for failure to satisfy the "neighbor" requirement of Louisiana Civil Code Article 667, and for failure to allege physical injury to a proprietary interest which is necessary to overcome the economic loss rule.

*First,* Plaintiffs/Claimants do not allege that they own property that adjoins any defendants' property, *(see* B1 Compl., ¶¶ 209(h)-(i), 691-99), nor could they, yet such allegations are a prerequisite for asserting a nuisance claim under Louisiana law. Nuisance, defined in Louisiana Civil Code Articles 667-69, *"is limited to the obligations proprietors owe to their neighbors,"* and a Plaintiff/Claimant thus cannot "be a party whose property is physically remote and not adjacent to Defendants' property." *Barasich* v. *Shell Pipeline Co.,* Nos. 05-4180, 05-4197, 05-4199, 05-4212, 06-5102, 2006 WL 3913403, at *8 (E.D. La. Nov. 20, 2006) (Barbier, J.) (emphasis added). Liability under Article 667 arises only "when activity by one party holding a right to immovable property has caused damages to a party holding a right to a neighboring property." *Inabnet* v. *Exxon Corp.,* 642 So. 2d 1243, 1251-52 (La. 9/6/94). Here, the *Deepwater Horizon* lies approximately 47 miles offshore, and is the undisputed origin of the "contaminants and noxious odors" (B 1 Compl., ¶ 696) of which Plaintiffs/Claimants complain. Plaintiffs/Claimants themselves point out that the damage occurred as a result of "the migration" of those substances, not a direct intrusion from one property onto another. (*Id.*) Plaintiffs/Claimants cannot demonstrate that they are "neighbors" in

any sense of the term. Thus, Plaintiffs/Claimants cannot state a claim for nuisance under Louisiana law.

*Second,* the economic loss rule applies to nuisance claims brought under Louisiana law, and prohibits recovery for economic losses where there is no physical injury to a proprietary interest. *See TS&C Invs., LLC* v. *BEUSA Energy, Inc.,* 637 F. Supp. 2d 370, 376 (W.D. La. 2009) (economic loss rule applies where plaintiffs asserted Article 667 claim; complaint dismissed on grounds that plaintiff property owners located miles away from oil well blowout site "do not have a proprietary interest in any property that was damaged and have not alleged injuries either to themselves or their properties.") Here, Plaintiffs'/Claimants' nuisance claim is likewise barred by the economic loss rule because they do not allege physical injury to a proprietary interest. *(See* B1 Compl. ¶¶ 209(h)-(i), 692-93.)[11]

### 5. Plaintiffs'/Claimants' Trespass Claim Is Brought by Individuals and Businesses Who Do Not Meet The Prerequisites For Asserting Such a Claim

Plaintiffs'/Claimants' trespass claim (Count III.B) must be dismissed because it is overbroad; the claim is brought on behalf of Plaintiffs/Claimants who are not owners of a

---

[11] While Plaintiffs/Claimants do not appear to assert state law claims for negligence or gross negligence, *(see* B 1 Compl. Count III.A-D), they do make passing reference in nuisance and trespass counts to alleged "negligence" and "gross negligence" by Drilling Defendants. *(See id.* ¶¶ 693, 705.) To the extent Plaintiffs/Claimants are asserting state law claims for negligence, gross negligence and willful misconduct, such claims are also barred under Louisiana law pursuant to the economic loss rule because Plaintiffs/Claimants have not alleged any physical injury to a proprietary interest. *(See id.* ¶ 209(h)-(i).) *See, e.g., Phillips* v. *G&H Seed Co.,* 2008-934 (La. App. 3 Cir. 4/8/09); 10 So. 3d 339, 441-44 (dismissing negligence claim on grounds economic loss rule barred purely economic claims by buyers and processors of crawfish who had contracts with a commercial crawfish farm whose crop was damaged by defective rice seed); *La. Crawfish Producers Ass 'n-West* v. *Amerada Hess Corp.,* 2005-1156 (La. App. 3 Cir. 7112/06); 935 So. 2d 380, 385 (dismissing state tort claims as barred by economic loss rule where commercial crawfishermen alleged that oil and gas exploration activities had damaged their fishing grounds); *Dempster* v. *Louis Eymard Towing Co.,* 503 So. 2d 99, 100-02 (La. Ct. App. 1987) (dismissing negligence claim pursuant to economic loss rule on grounds fishermen had no proprietary interest in unharvested fish in state waters); *PPG Indus., Inc.* v. *Bean Dredging,* 447 So. 2d 1058, 1062 (La. 1984) (dismissing negligence claim on grounds economic loss rule barred recovery of pure economic losses of downstream users of gas from a damaged pipeline); *Barasich,* 2006 WL 3913403 at *7 (holding commercial fisherman alleging negligence and strict liability claims "who did not sustain physical damages to their property lack standing to sue under either federal or state law").

property that has been physically invaded as a result of the Spill. Under Louisiana law, "[a] trespass occurs when there is an unlawful *physical invasion* of the property of possession of another." *Richard* v. *Richard,* 2009-539 (La. App. 3 Cir. *1114/09); 24* So. 3d 292, 296 (emphasis added). Also, the Plaintiff/Claimant must be an owner or in legal possession of land to bring a suit under trespass. *See LaRue* v. *Crown Zellerbach Corp.,* 512 So. 2d 862 (La. App. 1 Cir.), *writ denied,* 514 So. 2d 1176 (La. 1987).[12] Here, the Plaintiffs/Claimants who purport to assert a trespass claim, "Real Property Plaintiffs" and "Real Property/Tourism Plaintiffs," (*see* B1 Compl., ¶¶ 693, 706, 708, 711), include Plaintiffs/Claimants who are *not* property owners and Plaintiffs/Claimants who own property but do *not* allege any physical invasion of their property as a result of the Spill.

### D. Even If Florida Law Was Not Preempted, The Florida Pollutant Discharge Prevention Control Act Does Not Apply Here And Must Be Dismissed

Even if Florida law is not preempted by OCSLA, Plaintiffs'/Claimants' Florida Pollutant Discharge Prevention And Control Act (PDPCA) claim (Count III.D) would still lack merit. Plaintiffs'/Claimants' PDPCA claim is based upon alleged damages from the flow of pollution into Florida's territory. Plaintiffs/Claimants admit that "[t]he immediate discharge from the Spill occurred into waters *outside* the territorial limits of Florida," but maintain that "lands and waters within the territorial limits of Florida have been directly affected by the discharge and are reasonably expected to continue to be so affected." (B1 Compl., ¶742 (emphasis added).) This indirect effect is insufficient to ground the claim on the Florida PDPCA.

---

[12] *See also Britt Builders, Inc.* v. *Brister,* 618 So. 2d 899, 903 (La. Ct. App. 1993) ("The tort of trespass has long been recognized by courts throughout this state as a means to correct the damage caused when an *owner* is unjustly deprived of the use and enjoyment of his immovable") (emphasis added). Holding a lease is insufficient to sustain an action under trespass. *Richard,* 24 So. 3d at 298-99 (a son, as tenant or lessee at his mother's residence, could not sue for trespass because "he did not have a legal usufruct of, or [a] real right in, [] property").

*First,* the *Deepwater Horizon situs* lies far outside Florida's territorial waters and is not subject to the State's jurisdiction.   *United States* v. *Florida,* 425 U.S. 791, 792 (1976) (per curiam); *United States* v. *Louisiana,* 363 U.S. 121, 129 (1960). The United States, not Florida, holds jurisdiction over the MC252 *situs.*

*Second,* applying the PDPCA to an incident outside of Florida's territorial waters would be an unconstitutional extraterritorial application of state law to regulate interstate commerce. Interstate commerce, including the discovery, production, and transportation of oil in federal waters, is governed by Congress. *See* U.S. Const. art. I, § 8, cI. 3. "[T]he Commerce Clause ... precludes the application of a state statute to commerce that takes place wholly outside of the state's borders, whether or not the commerce has effects within the state." *Healy* v. *Beer Inst., Inc.,* 491 U.S. 324, 336 (1989). The PDPCA is intended to regulate "[t]he transfer of pollutants between vessels, ... between offshore facilities and vessels" because it "is a hazardous undertaking," Fla. Stat. § 376.021 (3)(a) (expressing legislative intent), and uses the state's police power to empower the state Department of Environmental Protection to "[ d]eal with the hazards and threats of danger." *Id.* § 376.021(4)(a).   By contrast, the manner in which Plaintiffs/Claimants seek to apply the PDPCA aims precisely to regulate interstate commerce that takes place outside Florida's borders based solely on an effect felt within its borders. Plaintiffs/Claimants admit the Macondo well is located and the discharge occurred "outside the territorial limits of Florida" but attempt to invoke Florida law on the basis of effects within Florida's boundaries. (Bl Compl., ¶742) Applying the PDPCA in this manner would have the practical effect of regulating commerce outside Florida because it would permit the regulation of

and imposition of liability for pollution taking place wholly outside the state's waters. This "practical effect" violates the Commerce Clause. *Healy,* 491 U.S. at 336.[13]

*Third,* by its own terms, the PDPCA does not apply.  A responsible party is "liable to any affected person for all damages as defined in s. 376.031." Fla. Stat. § 376.12(5). In turn, "damages" are defined as "the documented extent of any destruction to or loss of any real or personal property ... *as the direct result of the discharge* of a pollutant." *Id.* § 376.031(5) (emphasis added). Plaintiffs/Claimants themselves recognize that their damages must be limited only to damages that occur as a direct result of the discharge. *(See* BI Compl. , ¶ 744.) But the only allegation concerning that damage states that "certain Plaintiffs and Florida Subclass Members have sustained damage to their personal property *as a result of the post-Spill cleanup activity"* (Bl Compl. ¶ 743) (emphasis added), not the discharge itself.  Under the parallel OPA statute, a claimant cannot recover unless the property damage is a direct result of the discharge. *In re Taira Lynn,* 444 F.3d at 380.[31] Whether or not Plaintiffs/Claimants have a separate cause of action for alleged damage from the cleanup, it is not the proper subject of Florida's PDPCA. Applying the Florida PDPCA would require this Court to "go beyond the first step" of the chain of causation. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,* 459 U.S. 519, 534 (1983).  By its terms, the PDPCA only remedies damage arising as the direct result of a discharge; the damage Plaintiffs/Claimants claim is too attenuated to be remediable.

---

[13] If the Court holds that OCSLA and/or OPA preemption bar Plaintiffs'/Claimants' PDPCA claim, it is unnecessary to reach the issue of whether Plaintiffs'/Claimants' application of the PDPCA would violate the Commerce Clause. "The Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of." *Ashwander v. TVA,* 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) (quoted in *United States v. Underwood,* 597 F.3d 661,665 (5th Cir. 2010)).

Moreover, as noted above, only "responsible parties" as defined by the FPDCA are liable to injured parties for damages. Fla. Stat. Ann. §376.125. The FPDCA limits "responsible parties" to parties that own, lease, or operate drilling or transport vessels, facilities, or pipelines. Fla. Stat. Ann. §376.031(20). The Complaint does not allege that Dril-Quip owned, leased, or operated a drilling vessel, facility, or pipeline. The Court should therefore dismiss Plaintiffs'/Claimants' FPDCA claim.

## CONCLUSION

For the foregoing reasons, the B1 Amended Master Complaint should be dismissed in its entirety as to Dril-Quip, Inc.

Date:   April  22, 2011

Respectfully submitted,

WARE, JACKSON, LEE & CHAMBERS, LLP

BY:  /s/ C. Dennis Barrow, Jr.                    
        Don Jackson
        Texas Bar No. 10476000
        Fed ID No. 6915
        C. Dennis Barrow, Jr.
        Texas Bar No. 00796169
        Fed ID No. 20624
        2929 Allen Parkway, 42nd Floor
        Houston, TX 77019
        Phone :  (713) 659-6400
        Fax    :  (713) 659-6262
        Counsel for Defendant, Dril-Quip, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I certify that the above and foregoing document will be served on all counsel by electronically uploading the same to LexisNexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 22nd day of April, 2011.

/s/ C. Dennis Barrow, Jr.
C. Dennis Barrow, Jr.