1                    UNITED STATES DISTRICT COURT

2                   EASTERN DISTRICT OF LOUISIANA

3

4

5    IN RE:  OIL SPILL BY THE OIL RIG    *   10-MD-2179-CJB-SS
             *DEEPWATER HORIZON* IN THE     *
6            GULF OF MEXICO ON              *
             APRIL 20, 2010                 *   April 8, 2011
7                                           *
                                            *
8    This Document Relates to All Cases  *   9:30 a.m.
     *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

9

10

11              DISCOVERY CONFERENCE BEFORE THE
                   HONORABLE SALLY SHUSHAN
12             UNITED STATES MAGISTRATE JUDGE

13

     Appearances:
14

15   For the Plaintiffs:          Domengeaux Wright Roy
                                     & Edwards, LLC
16                                BY:  JAMES P. ROY, ESQ.
                                  556 Jefferson Street, Suite 500
17                                Post Office Box 3668
                                  Lafayette, Louisiana 70502
18

19   For the Plaintiffs:          Herman, Herman, Katz & Cotlar, LLP
                                  BY:  STEPHEN J. HERMAN, ESQ.
20                                820 O'Keefe Avenue
                                  New Orleans, Louisiana 70113
21

22   For the Defendants:          Frilot, LLC
                                  BY:  PAUL C. THIBODEAUX, ESQ.
23                                1100 Poydras Street, Suite 3700
                                  New Orleans, Louisiana 70163
24

25

1    <u>Appearances</u>:

2

3    For the Defendants:              Liskow & Lewis, APLC
                                      BY:  DON K. HAYCRAFT, ESQ.
                                      701 Poydras Street, Suite 5000
4                                     New Orleans, Louisiana 70139

5

6    For the Defendants:              Kirkland & Ellis, LLP
                                      BY:  J. ANDREW LANGAN, ESQ.
                                      300 N. Lasalle
7                                     Chicago, Illinois 60654

8

9    For the Defendants:              Godwin Ronquillo, PC
                                      BY:  DONALD E. GODWIN, ESQ.
                                      1201 Elm Street, Suite 1700
10                                    Dallas, Texas 75270

11

12   For the Defendants:              Godwin Ronquillo, PC
                                      BY:  R. ALAN YORK, ESQ.
                                      1331 Lamar, Suite 1665
13                                    Houston, Texas 77010

14

15   For the Defendants:              Stone Pigman Walther Wittmann, LLC
                                      BY:  CARMELITE M. BERTAUT, ESQ.
                                      546 Carondelet Street
16                                    New Orleans, Louisiana 70130

17

18   For the Federal                  U.S. Department of Justice
     Government Interests:            BY:  R. MICHAEL UNDERHILL, ESQ.
                                      450 Golden Gate Avenue, Rm. 7-5395
19                                    San Francisco, California 94102

20

21   Also Participating:             Robert T. Cunningham, Esq.
                                      Corey L. Maze, Esq.
                                      Anthony W. Fitch, Esq.
22                                    Glenn G. Goodier, Esq.
                                      Hugh E. Tanner, Esq.
23                                    Anthony Irpino, Esq.
                                      Melinda A. Nicholson, Esq.

24

25

1    Official Court Reporter:      Toni Doyle Tusa, CCR, FCRR
                                   500 Poydras Street, Room HB-406
2                                  New Orleans, Louisiana 70130
                                   (504) 589-7778
3

4

5
     Proceedings recorded by mechanical stenography; transcript
6    produced by computer.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**PROCEEDINGS**

**(April 8, 2011)**

1
2
3          **THE DEPUTY CLERK:**  All rise.

4          **THE COURT:**  Everybody have a seat.  Good morning,

5   phone participants.  How are you today?  Good morning, everyone

6   else.

7                 The first thing I wanted to cover this morning

8   is we got some calls with regard to the deadlines for document

9   production.  There was some confusion about that last order

10   that we put out.  Let me tell you what my intent was and let's

11   see if it causes any problems.  My intent for the deadlines was

12   as follows:

13                 The deadline to serve what I call cleanup

14   requests for production of documents was April 29.  The

15   deadline for production of documents responsive to all prior

16   requests was May 27.  I didn't intend by the July 1 date to

17   extend all deadlines for production of documents.  I intended

18   the July 1 date to be the date by which document production

19   responsive to those cleanup requests would be made.  That's the

20   default deadline for that cleanup discovery and for those

21   requests that have been objected to.

22                 So we are going to need to resolve those

23   objections.  If the order is go ahead and produce, July 1 is

24   the very last date.  But relative to prior requests for

25   production, if they haven't been objected to, objections are

1    waived; documents should be produced.  I did not intend to

2    extend the deadline for production.  If we have got rolling

3    production going, that should be going on.

4                    Does anybody disagree with that read of the

5    order?  Alan York is standing.

6              **MR. YORK:**  Alan York for Halliburton.  Your Honor, I

7    don't --

8              **THE COURT:**  Hold on just a second.

9                    Phone participants, if you could put your phones

10   on mute, that would be helpful.  Thank you.

11             **MR. YORK:**  We don't disagree, Your Honor, but just a

12   point of clarification and an idea:  If we perhaps used the

13   date of your order, April 4, as the distinguishing point

14   between those two dates.  In other words, any requests that

15   were served before the order are due by May 27.  Any requests

16   served between that date and April 29, the responses would be

17   due July 1.

18                    In other words, we are trying to figure out

19   which date is the deadline for which requests because, not

20   surprisingly, the cutoff date has caused many new discovery

21   requests to start coming out.  So trying to figure out what our

22   drop-dead date is, I think we need some kind of a delineation.

23             **THE COURT:**  So what you are saying is that anything

24   after April 4 you want the July 1 date?

25             **MR. YORK:**  (NODS HEAD)

1      **THE COURT:**  My take on it would be as follows:

2           If it's unobjectionable, start producing;

3  drop-dead date July 1 if it's going to be a rolling production,

4  but start producing.  If it's objectionable, try to get your

5  objections in ASAP, expedited request.  We will take it up, get

6  a ruling out to you.

7           I'm hoping that nobody is still producing July 1

8  because we are trying to get all our discovery done.  Does that

9  clarify?

10     **MR. YORK:**  It does, Your Honor.  Just to clarify,

11  from our standpoint, it's not a situation where we are holding

12  everything back until those dates.  We are doing a rolling

13  production.  It's just in terms of prioritizing at this point,

14  with the custodial files and everything else, I think it's

15  helpful just to know what those deadlines would be.

16     **THE COURT:**  Has there been a flood of new requests?

17     **MR. YORK:**  I wouldn't represent it as a flood.

18     **THE COURT:**  I'm hoping it's just cleanup requests.

19     **MR. YORK:**  I think what I have seen is more

20  cross-defendant discovery.  I don't know that we have seen

21  anything new from the plaintiffs.  I will tell you we are in

22  the same boat.  We are preparing discovery against other

23  defendants to meet the deadline as well.

24     **THE COURT:**  Good, but I wanted to make sure.

25           Hi, Andy.  Good morning.

1      **MR. LANGAN:**  Andy Langan for BP, Your Honor.  I just

2  want to reiterate what I said, I think, a week ago at this

3  podium, which was we understand that we are talking about

4  discovery requests that relate to the February 12 trial.  Of

5  course, what that trial is is a little bit in issue.  We know

6  that, but again I believe -- and I could be wrong -- that the

7  PSC, of course, has served discovery on us that relates to a

8  broad range of topics, including things that may go beyond

9  what's in the 2012 trial.  So, again, listening to you very

10  literally, you said something like "all documents to all prior

11  pending requests," and I don't think you meant that.

12      **THE COURT:**  No.  All of my comments are directed to

13  the February trial.  I can't think beyond that, so I apologize.

14  But, yes, that's my focus.  So when I say "all documents," I

15  mean all documents directed to the February trial, whatever

16  that might end up being.

17      **MR. LANGAN:**  Thank you.

18      **MR. HERMAN:**  Good morning, Your Honor.  Steve Herman

19  for the plaintiffs.  I know the record has gotten very confused

20  because I have been going over all the transcripts getting

21  ready for our brief that is due Wednesday.  Just so the record

22  is clear, from the plaintiffs' point of view, Andy is correct,

23  and we talked about this last week.

24      Maybe we shouldn't have, but we served very

25  broad requests.  It includes stuff that's clearly not going to

1    be included in the February 2012 trial.  We agree with BP that

2    they should not be wasting time on that because we have other

3    priorities, as does the Court.

4            **THE COURT:**  Right.

5            **MR. HERMAN:**  From our point of view, you have stuff

6    that's related to the casualty.  You have stuff that's related

7    to Your Honor's term from last week, *well control*.  Then there

8    is perhaps a whole host of other issues including boom,

9    dispersants, *in situ* burning, etc., which the plaintiffs at

10   this point agree, propose, etc., is not part of the 2012 trial,

11   should not be a priority in terms of discovery responses.

12           However, with respect to the discovery requests

13   that are outstanding, we just want to reiterate again that our

14   top priority right now -- we obviously need to worry about the

15   custodial files for the deponents as they come up.  As I think,

16   after going back through the transcripts, Mr. Roy said over a

17   month ago, our top priority right now is to get the critical

18   documents on the well control issues.  We have a lot of

19   documents on the casualty and we need to get the well control

20   issues.  That's our top priority.

21           I'm going to send an e-mail or a letter or

22   something to Andy later today or tomorrow reiterating that and

23   perhaps trying to define better.  I know the third omnibus

24   request addressed those issues.  I believe, off the top of my

25   head, there are original requests on BP.  I think 26, 27, 28,

1   or 27, 28, 29.  That's our top priority other than the

2   custodial file for the depositions.

3           THE COURT:  So if we had to prioritize, it's going to

4   be custodial files for the deponents that are currently

5   scheduled, and then you want to get to work on your well

6   control issues.

7           MR. ROY:  Yes, ma'am.  Jim Roy.  Just to clarify on

8   well control, we are talking about capping after April 20 as

9   well as well control prior to that.

10          THE COURT:  Okay.  See, we'll have to define our

11  language a little more carefully because I call anything

12  leading up to the 20th the event phase and anything after

13  April 20 or 22 through capping the well control phase.

14          MR. ROY:  We are okay with either semantics,

15  Your Honor.  We just want to be absolutely crystal clear on the

16  record that what we are calling our priority regarding capping

17  involves efforts, decision-making process, and steps taken

18  toward analyses, etc., addressing how to stop the flow of the

19  well.

20          THE COURT:  I'm with you.

21              Andy, are you with them?

22          MR. LANGAN:  Well, I know what he is talking about.

23          THE COURT:  That's all we want.

24          MR. LANGAN:  I'm very much not with them in very many

25  different respects.

1          **THE COURT:**  I understand, but we have our semantics

2    straight?

3          **MR. LANGAN:**  Yes.

4          **THE COURT:**  Okay.  Next up, I wanted to cover the

5    PSC's request for logging in-house counsel communications and

6    give you an update of what we have done.

7          With your permission, I met with people from BP

8    and I requested that they pull a random selection of 100

9    documents that had been withheld from production.  They

10   produced approximately 50 documents that had been redacted in

11   part and produced in part, and they produced approximately 50

12   documents that had been withheld entirely.  These documents

13   were selected at random by BP's vendor.

14         I was very impressed at the surgical redaction

15   of the documents.  I didn't find anything that had been

16   redacted that I thought was not privileged, so I was really

17   pleased with that.  On the documents that had been withheld, I

18   didn't find any documents that I found were privileged and

19   should have been produced.

20         There was a minor glitch in two e-mails that

21   transmitted final contracts with BP's contractors that were not

22   produced as part of these e-mail productions, but I understand

23   that you all have the final contracts from different

24   productions.

25         So I have to tell you guys that I found

1   absolutely nothing from this random pull that caused me any

2   concern.  Again, as I said, the redactions were just excellent.

3   So as a result of the random review, I am not going to order

4   that they go back and log all of these communications for

5   purposes of privilege review.  I find that their privilege

6   review was really excellent and so that will be the end of that

7   issue.  I think you can take a lot of comfort from my review.

8          **MR. HERMAN:**  Thank you, Your Honor.

9          **THE COURT:**  Both Mike and I went through every single

10  document.

11          **MR. LANGAN:**  Thank you, Your Honor.  It's much

12  appreciated.

13          **THE COURT:**  All right.  Next up, we went ahead and

14  ruled on the request for extra time with BP.  I think that's

15  taken care of.  You-all are starting those depos on Monday,

16  right?

17          **MR. LANGAN:**  Yes.  One footnote, if I may,

18  Your Honor.

19          **THE COURT:**  Sure.

20          **MR. LANGAN:**  First of all, I appreciate Your Honor's

21  prompt attention and accommodation to BP on that.  One positive

22  development since Your Honor's ruling --

23          **THE COURT:**  You have another three minutes from

24  somebody.

25          **MR. LANGAN:**  40.  So here are the facts.  I believe

1  yesterday we found out that Weatherford would yield 40 minutes

2  to BP for Stringfellow and Kuchta and reserved on the others,

3  and they will get back to us on the others.

4        **THE COURT:**  Correct.

5        **MR. LANGAN:**  So my thought was the extra 20 minutes

6  to extend the deposition for Stringfellow and Kuchta, first of

7  all, is no longer necessary, would be one approach.

8        **THE COURT:**  Gone.

9        **MR. LANGAN:**  We are not asking for more than what we

10 asked for, so I guess we have a few minutes to give back

11 somehow.  I leave that to Your Honor, of course.

12       **THE COURT:**  Why don't you-all just discuss it.  If

13 you-all can work it out, you have 40 minutes plus 10 minutes.

14 You have 50 minutes ceded to you.

15       **MR. LANGAN:**  Yes.  It was 15, 15, 15 plus an extra

16 20, I think.

17       **THE COURT:**  No, no, no.  I'm talking about originally

18 somebody had given you 10 or 15 minutes.

19       **MR. HAYGOOD:**  MI.

20       **MR. LANGAN:**  MI had given us 10 minutes.

21       **THE COURT:**  10 minutes and now you have 40 minutes.

22       **MR. LANGAN:**  Correct.

23       **THE COURT:**  So you have 50 minutes extra.

24       **MR. LANGAN:**  Correct.

25       **THE COURT:**  That leaves you with a deficit of --

1           **MR. LANGAN:**  15, 20 minutes or so.

2           **THE COURT:**  -- 15, 20 minutes.  The additional time

3      why don't you just give back proportionately to those people I

4      took from.

5           **MR. LANGAN:**  Okay.  That will be our working

6      assumption, and I will make sure our troops get that word,

7      Your Honor.

8           **THE COURT:**  Good.  Okay.

9           **MR. GODWIN:**  May I, Your Honor?

10          **THE COURT:**  Sure.  Good morning, Don.

11          **MR. GODWIN:**  Don Godwin for Halliburton.  Judge, with

12     respect to Captain Kuchta, I received a letter yesterday from

13     Kyle Schonekas, a New Orleans based attorney who represents

14     Captain Kuchta.  He sent the letter to me with a copy to Paul

15     Sterbcow, and I would like to read the letter as it relates to

16     his deposition.  I know Kyle from the MBI hearings, where he

17     represented Captain Kuchta.

18               "Dear Don:

19               "I write to advise that at this time Captain

20     Curt Kuchta's intentions are to invoke his Fifth Amendment

21     rights.  I request that his deposition set for April 18 and 19,

22     2011, be canceled.  Please let me know immediately if a formal

23     motion to quash is necessary.

24               "With best regards, I am

25               "Sincerely, Kyle Schonekas."

1       There's a copy to Paul Sterbcow.  Would
2  Your Honor like to look?
3       **THE COURT:**  We'll make it an attachment to today's
4  transcript.  I appreciate that.
5       **MR. GODWIN:**  You're welcome.
6       **THE COURT:**  I assume that the consensus of the group
7  is that you want to go ahead and take a deposition of the
8  captain and let him invoke his Fifth; is that correct?  We are
9  going to let Mr. Cunningham address this.
10      **MR. GODWIN:**  Whenever we decide on that, then I will
11 respond to Kyle, if that's okay, Your Honor.
12      **THE COURT:**  That will be great.
13      **MR. GODWIN:**  Thank you, Judge.
14      **MR. CUNNINGHAM:**  Good morning, Your Honor.  Robert
15 Cunningham.  Actually, this witness is a little different from
16 a few of the others that we have taken the position just
17 outlined on.  We understand that by July the witness and his
18 lawyer will know whether or not, in fact, he is going to take
19 the Fifth, needs to take the Fifth.  So if we can get a firm,
20 confirmed date for July, we are fine with waiting until then
21 rather than doing it twice.  I don't know how other folks feel
22 because this just came down yesterday.
23      **MR. HAYCRAFT:**  My only question, Mr. Cunningham,
24 would be does the same hold true with certain other BP
25 witnesses, where we have set aside time for examinations for

1    those witnesses who have taken the Fifth?  In other words, if
2    we are going to wait until July for Captain Kuchta, why
3    wouldn't we wait until July for Mr. Morel or Mr. Vidrine --
4    excuse me.  Excuse me.  Not Mr. Vidrine.  Mr. Kaluza.
5          **MR. CUNNINGHAM:**  The answer to that is we see this
6    differently because we have our doubts about whether it's going
7    to change as to some of those folks.  We think it may change as
8    to Captain Kuchta, based on what we know, and we are willing to
9    take that risk.  We are not willing to take that with the other
10   witnesses.
11         **THE COURT:**  Okay.  Don, if you wouldn't mind, would
12   you contact Kyle and ask him for firm dates in July that he can
13   confirm with the captain.  If the captain invokes the Fifth, we
14   will take one day with him.  If he doesn't invoke the Fifth,
15   we'll take two days with him.
16         **MR. GODWIN:**  I will, Judge.  Thank you.
17         **THE COURT:**  Then Corey will go ahead and take Kuchta
18   off April 18 and 19.  I sure would like to fill those days up.
19         Don, you're up next.  I wanted to ask you about
20   Fred Sabins and whether or not you have taken care of the need
21   for additional time as to that deposition.
22         **MR. GODWIN:**  Okay, Your Honor.  Don Godwin for
23   Halliburton.  I am visiting with some folks, Your Honor, about
24   that.  45 minutes is what I've asked for, as I stated last
25   week.  We have an hour and 15 otherwise.  Some different ones

1   have indicated they are talking with others and may work with

2   me on that.  I don't envision that I'm going to have to seek

3   your help on it, Your Honor.  Hopefully, next Friday we will be

4   able to announce that we have additional time.

5           **THE COURT:**  Good.  Thank you.

6           **MR. GODWIN:**  Thank you, Judge.

7           **THE COURT:**  Okay.  Now, next Friday, we want to know

8   if there are any requests for additional time for the May

9   depositions.  Then looking into April, the same thing by

10  April 29.  If you-all can look ahead before that, we'll take it

11  up.  If you can't, we have got those deadlines coming.

12          Who would like to give me an update on the

13  status of the Marine Board hearing?  Mr. Cunningham.

14          **MR. CUNNINGHAM:**  Robert Cunningham, Your Honor.  I

15  would like to give an update, but the e-mail I was hoping to

16  get this morning before we started I didn't get.  We had one

17  person who was there part of the time but not all of the time.

18  I suspect that some of the defendants had folks there through

19  the entirety of the hearings.  I know that we did see a request

20  for Ian Little.  Had Halliburton not requested Mr. Little, we

21  would have.

22          **THE COURT:**  We have got him down to cover.

23          **MR. CUNNINGHAM:**  That was based on his MBI testimony.

24          **THE COURT:**  How much longer do they project the

25  hearing is going to go?

 1          **MR. GODWIN:**  It's supposed to be over today, I think,

 2   Judge.

 3          **THE COURT:**  Over today?  Okay.  Great.

 4          **MR. CUNNINGHAM:**  Can you give a report?

 5          **MR. GODWIN:**  I can briefly.  Your Honor, Don Godwin

 6   for Halliburton.  We do have some folks over there.  They have

 7   had hearings this week for Monday through today.  They will be

 8   done today, as I understand it.  I'm not aware of any

 9   additional hearings that are scheduled at this time.  They have

10   held open the possibility that they might have other hearings

11   once the cement testing is done.

12          I did want to report, Your Honor, that

13   Cathleenia Willis that we have talked about -- I think she's

14   represented by Kurt Arnold over in Houston -- she did not show

15   this week.  We were wondering if she was going to show.  I know

16   Your Honor was as well.  She did not appear this week.  From

17   what we were told by the attorneys representing the MBI there,

18   the joint investigative team, they were unable to get any

19   cooperation from Mr. Arnold.  They were unable to subpoena her,

20   so she did not appear.

21          **THE COURT:**  I was shocked that the Marine Board does

22   not have nationwide subpoena power.  Okay.

23          **MR. GODWIN:**  Thank you, Judge.

24          **THE COURT:**  Thank you.  I appreciate it, Don.

25          **MR. GODWIN:**  You're welcome.

1          **THE COURT:**  I guess, Steve, you're up next.  We want

2     to get a couple of reports on a few things from you guys.

3     First up would be Kongsberg.  That all is over with.  Done.

4          **MR. HERMAN:**  Yes.  I understand that the document

5     issues are resolved as well.

6          **THE COURT:**  Great.

7          **MR. HERMAN:**  Cobalt I think is off still.

8          **THE COURT:**  Good.

9          **MR. HERMAN:**  Oceaneering I think is tentatively off

10    while we collect and review the documents.

11          What's Wild Well?

12          **MR. CUNNINGHAM:**  I'll tell you what's going on with

13    Wild Well.  I guess I better come up there.

14          **THE COURT:**  Wild Well.

15          **MR. CUNNINGHAM:**  Robert Cunningham, Your Honor.  Next

16    week we are to expect dates from Wild Well when they will be

17    producing documents.  They have told us that.  Their

18    involvement we thought until this week was all postspill.  As

19    it turns out, in testimony Monday and Tuesday, they were

20    involved prespill and at the time of the spill as a third party

21    consultant on well control, which changes the significance of

22    their document production and testimony a whole lot.

23          There's been a discussion since the depositions

24    about that document discovery, which hadn't been mentioned

25    before.  They're taking that under advisement.  They are

1   supposed to advise us next week whether we are going to have a

2   problem.  If there is, we expect to be back before Your Honor

3   addressing that.

4           **THE COURT:**  Good.  Let's take it up expedited because

5   we want to make sure that we have disposed of all the document

6   production in a timely manner.

7           **MR. CUNNINGHAM:**  Sure.

8           **THE COURT:**  Thank you.

9               Andy, do you want to come on up.

10          **MR. LANGAN:**  Yes, Your Honor.

11          **THE COURT:**  Let's see.  I've got "Johnson, Dennis,"

12  but I assume it's Dennis Johnson.

13          **MR. LANGAN:**  It is Dennis Johnson, yes.  I don't have

14  a date for him yet.  Should I tell you what I do have?

15          **THE COURT:**  Let's go and see what you do have.

16          **MR. LANGAN:**  All right.  Additional 30(b)(6) topics

17  that I can provide --

18          **THE COURT:**  Good.

19          **MR. LANGAN:**  -- there's a witness that's already on

20  the schedule by the name of Thierens.  Mr. Thierens, in

21  addition to his fact testimony, can cover portions of Topics 4

22  and 5.  Mr. Richard Lynch can also cover portions of 4 and 5 in

23  addition to his already scheduled fact deposition, which I

24  believe is in the UK.  I think Mr. Thierens is in the UK.

25          **THE COURT:**  Right.

1      **MR. LANGAN:**  Finally, Mr. John Baxter, also in the

2   UK, will be our designee for Topic 20.

3      **THE COURT:**  Good.

4      **MR. LANGAN:**  He is also on the schedule in the UK as

5   well --

6      **THE COURT:**  Right.

7      **MR. LANGAN:**  -- John Baxter.  Then, Your Honor, I can

8   give a date for Ms. Liu, L-I-U.  We could look at a date in the

9   latter part of May -- and I think she's Houston -- for her

10   30(b)(6) on Topic 2.  I, frankly, think with one topic, maybe

11   one day would be enough.  I'm looking at the PSC and counsel.

12   I would propose one day, and Mr. Cunningham or counsel --

13      **MR. ROY:**  Which topic, Andy?

14      **MR. LANGAN:**  Topic 2.

15      **MR. ROY:**  I realize that.  I don't have it in front

16   of me.

17      **THE COURT:**  You don't have it memorized?

18      **MR. ROY:**  Maybe I should.

19      **MR. LANGAN:**  I can dig it out, I think, probably.

20      **THE COURT:**  Let's take a break and look at Topic 2.

21      **MR. ROY:**  While we are at it, Your Honor.

22      Andy, we still have not gotten -- and I'm not

23   fussing, just we need a written response designating on one

24   sheet of paper --

25      **MR. LANGAN:**  We will.  I would like to be done first.

 1          MR. ROY:  I gotcha, but it would be nice to have a
 2    sheet on a rolling basis.
 3          MR. LANGAN:  We can discuss my fee in that regard,
 4    Mr. Roy.
 5          MR. ROY:  Other defendants have provided same.
 6          THE COURT:  For a reasonable hourly fee, Andy.
 7          MR. LANGAN:  Potential income revenue and profit
 8    anticipated from the Macondo Prospect.
 9          THE COURT:  One day, guys?
10          MR. HERMAN:  Yes, Your Honor.
11          THE COURT:  That will be a yes.  What was the date,
12    Andy?
13          MR. LANGAN:  She has availability in May.  I'm trying
14    to think about what would be good in terms of the overall
15    schedule.
16          THE COURT:  You know, we just got the cancellation of
17    the captain in April.  Do you think maybe we could catch her on
18    one of those two days?
19          MR. LANGAN:  Well, that's like next week, isn't it?
20          THE COURT:  No, it was not.  It was into April.
21          MR. MAZE:  It's a week from Monday.
22          MR. LANGAN:  I think we might need a little more time
23    than that for her.
24          MR. FITCH:  Judge, Tony Fitch.  I have an April 18
25    and 19 date for you.

1       **THE COURT:**  Oh, good.  Thank you, Tony.  We'll come

2  back to you.  Let's go back to May.

3       **MR. MAZE:**  I think 23, 24, 30, and 31 are all pretty

4  open.

5       **MR. LANGAN:**  May 23?  Yes, that's fine.  We will mark

6  that down.  The first name is X-U-E-M-E-I, last name Liu,

7  L-I-U.

8       **THE COURT:**  Andy, you said Houston.  Is she unwilling

9  to come over?

10       **MR. LANGAN:**  No.  I'm sorry.  I'm sure New Orleans is

11  fine.  I meant stateside.

12       **THE COURT:**  Good.  Thank you.

13       **MR. LANGAN:**  Your Honor, I know we are looking for

14  dates for Kennelly, Mazilla.  I think we gave you dates for

15  Wardlaw.  There are a couple more topics we need to close out

16  as well, so the work continues.

17       **THE COURT:**  All right.

18       **MR. LANGAN:**  Your Honor, as long as I'm up, can I

19  flag?  We have -- and I hate to do this -- a Passover-related

20  issue or two.

21       **THE COURT:**  Oh, my.  Yes, but let's finish on

22  Kellingray.

23       **MR. LANGAN:**  No, I do not.  The man travels a lot.

24  We are after Mr. Kellingray through e-mail and phone calls.  I

25  just haven't connected with him.

1      **THE COURT:**  Why don't you tell us when Passover is,

2  which I guess is something I should know, but I don't.

3      **MR. LANGAN:**  The 18th of April, I believe.  I have

4  two issues I could highlight.  Number one, Mr. Kent Wells is

5  set for the 19th and 20th.  His personal counsel observes

6  Passover, and so therefore I am told that if possible, if

7  counsel can accommodate this, we would like to start Mr. Wells'

8  deposition at 11:00 a.m. on the 19th and work late so the

9  observer of Passover can come in on the morning of 19th.  My

10  apologies, but --

11      **MR. CUNNINGHAM:**  We'll work it out.

12      **THE COURT:**  Good.  Thank you.

13      **MR. LANGAN:**  We understand that's going to be a late

14  evening.  We get it.  So Mr. Wells would start 11:00 on the

15  19th.

16      **THE COURT:**  Okay.

17      **MR. LANGAN:**  The second issue is Mr. Cocales, who is

18  set for the 18th and 19th, again personal counsel observes

19  Passover.  I have a solution.  The 25th and 26th of April, we

20  can slot Cocales in, and again with apologies.  I'm sort of the

21  messenger here.

22      **THE COURT:**  Not much we can do.  Mr. Cunningham, does

23  that work?

24      **MR. CUNNINGHAM:**  We are going to just add him to the

25  25th, Andy?

1       **MR. LANGAN:**  Yes, the 25th and 26th instead of the

2  18th and 19th to solve counsel's Passover observance issue.

3  Guys, I am sorry.  I can't move everything around.  This is the

4  switch I can make.  Sorry.

5       **MR. GODWIN:**  That's fine with Halliburton,

6  Your Honor.

7       **MR. LANGAN:**  I could make inquiries about whether or

8  not Cramond could be moved up, but I'm not optimistic.  I'm

9  happy to check for counsel.

10       **THE COURT:**  Why don't we check.  If we can, that

11  would be great.  If not, we really have some filling in to do

12  on the 18th and 19th.  Tony, we will come to you in a minute.

13            Let's see.  We wanted to talk about whether or

14  not the scope of Topic 5 on the CSI Technologies notice has

15  been worked out.  I think that's Mr. Godwin, who always seems

16  to be talking when I'm directing questions to him.

17       **MR. LANGAN:**  I think Mr. Godwin and we should talk

18  offline about that, if that's okay.

19       **THE COURT:**  Okay.  I just have it down as something

20  that we wanted to cover to make sure we are good on.

21       **MR. GODWIN:**  We will, Your Honor.  Thank you.

22       **THE COURT:**  How about Stress Engineering, Andy?

23       **MR. LANGAN:**  I do.  Here's the situation with Stress

24  Engineering, Your Honor.  There are apparently, I guess, as I

25  understand it, three different reports.  Stress has identified

1    three different witnesses to cover these.  My proposal would

2    be -- and we have some dates and names, and this is all

3    tentative -- perhaps over two days cover the three reports with

4    the two witnesses or something, and the first early part of

5    June is apparently an available time slot for that.

6              THE COURT:  Let's take a look.

7              MR. LANGAN:  June 1 and 2, something like that, or it

8    could be June 2 and 3 if people think that works better.

9              THE COURT:  Mr. Cunningham, do you think you can

10   cover three witnesses for the three reports in two days?

11             MR. CUNNINGHAM:  I would hope so, Your Honor.

12             THE COURT:  I would hope so, too, but I don't know.

13   How do you feel about adding somebody to June 2?  What about if

14   we --

15             MR. MAZE:  Your Honor, I may be behind, but is

16   Judge Barbier having a hearing on the 3rd still?  On his

17   calendar online, it still has him having that for the 3rd.

18             THE COURT:  I believe that's right.

19             MR. HAYCRAFT:  Instead of May 29, it's June 3.

20             MR. GODWIN:  I think that was the one -- Don Godwin

21   for Halliburton -- you had indicated you might be willing to

22   consider speaking with Judge Barbier about rescheduling for

23   that on the preceding Friday --

24             THE COURT:  Except I forgot.

25             MR. GODWIN:  -- so that those of us who are going to

```
 1    London wouldn't have to be there.
 2           THE COURT:  I apologize, Don.  I will take care of
 3    that today.
 4           MR. GODWIN:  Thank you, Judge.
 5           THE COURT:  So I assume that if he is going to be
 6    around and available, he will accommodate you.  If that's the
 7    case and we don't have a status conference with Judge Barbier
 8    on the 1st, how do you feel about that, Mr. Cunningham?
 9           MR. CUNNINGHAM:  Doing it the 2nd and the 3rd,
10    Your Honor?  I think we can do that.
11           MR. LANGAN:  So I guess what we are saying is CSI
12    30(b)(6), June 2 and 3.
13           MS. BERTAUT:  No, Stress Engineering.
14           MR. LANGAN:  Stress Engineering.  I'm sorry.
15    Stress Engineering.  I can, just for the record, give you what
16    I believe the names will be.
17           THE COURT:  Great.
18           MR. LANGAN:  There's a Mr. Bhalla, B-H-A-L-L-A,
19    Kenneth Bhalla.  There's a Ken Young.  Then finally -- and this
20    is the tricky one -- Andreas, first name Andreas, and it's like
21    Katsounar, K-A-T-S-O-U-N-A-R, I believe, something like that.
22           MR. MAZE:  I'll write it on the back of this and put
23    it up on the ELMO.
24           MR. LANGAN:  It's K-A-T-S-O-U-N-A-R, but please don't
25    hold me to that, Andreas.
```

1           THE COURT:  They each correspond to one of the

2   reports?

3           MR. LANGAN:  That is my understanding for Stress

4   Engineering.

5           THE COURT:  Great.  Great.  I think we should keep

6   that tentative, Andy, subject to confirmation.

7           MR. LANGAN:  Yes, please.

8           THE COURT:  Next up is Vector.

9           MR. LANGAN:  Yes.  We have made progress with Vector.

10  They have spoken to their president and they now have outside

11  counsel.  I don't have updates, but I'm optimistic that we will

12  be able to -- and Mr. York was kind enough to provide the

13  30(b)(6) notice, and I'm sure we will be able to nail Vector

14  down and get a date for them.

15          THE COURT:  Good.  Then we have got Mr. John Mogford,

16  M-O-G-F-O-R-D.

17          MR. LANGAN:  Yes, Your Honor.  I had an offline

18  conversation with counsel on this.  We don't have a date for

19  Mr. Mogford yet.  We still need to work through the

20  compensation issues.  I'm, frankly, struggling with the best

21  way to do this.  It may be that something on the record with

22  Your Honor in a hearing like this about what the arrangement

23  is, to have it transparent and open, is appropriate.  Frankly,

24  we thought about should we propose an order to deal with these

25  situations, but then I thought to myself an order might be --

1              **THE COURT:**   Inviting.

2              **MR. LANGAN:**   Yes.   Thank you.   So I'm not sure that's

3    a great idea.   I guess what I would like to do is if there's --

4    and I believe there is -- embracing by the parties of the

5    concept that a witness that can demonstrate lost earnings that

6    are reasonable and demonstrable and subject to your approval,

7    that we are willing to work with them on that.   If that's the

8    principle, I think we could work with Mr. Mogford and he won't

9    insist on Hague service and all that.   I think he can be worked

10   with.

11             **THE COURT:**   Good.   If he could give us dates and some

12   itemization of what he is looking for, we certainly will take

13   it up.

14             **MR. LANGAN:**   Great.

15             **THE COURT:**   Tell him that we are open to the concept.

16             **MR. LANGAN:**   Thank you, Your Honor.   As long as we

17   are talking about this on the record, we have looked -- and I

18   know other counsel have too -- at the ABA ethics opinion on the

19   issue, and we are very cognizant of the kind of ethical issues

20   about witnesses being paid.   Of course, he would not be being

21   paid for his testimony.

22             **THE COURT:**   He is being paid for his loss of earnings

23   while he is coming here to respond to our request.

24             **MR. LANGAN:**   Exactly.   Correct.   That distinction is

25   important to us, and so we would want that to be abundantly

1    clear on the record.

2              **THE COURT:**  It is.  Okay.  I think that does it for

3    you, Andy.

4              **MR. LANGAN:**  Well, did you want to talk about Haynie

5    and McKay as long as I'm up here?

6              **THE LAW CLERK:**  And Skidmore.

7              **MR. LANGAN:**  I think he is still tentative, but I

8    don't have any reason to believe Skidmore is not going to

9    happen on the 12th.

10             **THE COURT:**  Okay.

11             **MR. LANGAN:**  Will happen.  I have no reason to think

12   that it won't.

13             **THE COURT:**  That it will not happen, right.

14             **MR. LANGAN:**  Haynie, the always popular June 27 and

15   28.

16             **THE COURT:**  Oh, boy.

17             **MR. LANGAN:**  Maybe that's a one-day deposition.  I

18   don't know.  I think he is in the states.  I think it's

19   New Orleans.

20             **THE COURT:**  Mr. Cunningham, how are you feeling?

21             **MR. CUNNINGHAM:**  I'm not allowed to say, Your Honor.

22   We are fine with going ahead and adding him.

23             **THE COURT:**  Do you have any feel for whether he is a

24   one-day witness?  Do you want to risk that or not?

25             **MR. CUNNINGHAM:**  I do not have any feel.  I don't

1   know that he is one that we requested.

2          THE COURT:  You're right.

3          MR. CUNNINGHAM:  I would say whoever requested him

4   may have a good idea about that.

5          THE COURT:  Who requested Haynie?  I don't have my

6   master list in front of me.

7              BP requested it.  Do you feel comfortable, Andy,

8   on a one-day?

9          MR. LANGAN:  Do we get to go first?

10         THE COURT:  Do they get to go first?

11         MR. CUNNINGHAM:  We can talk about it.

12         THE COURT:  I think that is probably a yes.

13         MR. LANGAN:  He is a surveyor.  You know what I'm

14  thinking, Your Honor -- and I'm not trying to backtrack here --

15  since the gentleman offered the 27th and 28th --

16         THE COURT:  Put him down for two.

17         MR. LANGAN:  That's kind of what I'm thinking.

18         THE COURT:  If you can do him in one day, great.

19         MR. LANGAN:  Mr. McKay, back to May, maybe the 11th

20  and 12th or 12th and 13th for David McKay.  He is a DNV person.

21         MS. BERTAUT:  Your Honor, I think he was listed.  He

22  is scheduled in June.

23         THE COURT:  He is scheduled in June.  If we can go

24  earlier, I think it's better.  June looks like all get-out.  He

25  was scheduled for the 27th and 28th.  If we can go in May, I

 1  would prefer it.
 2          **MR. LANGAN:**  I have a note to myself that we can.
 3  I'm almost --
 4          **THE COURT:**  What were the May dates, Andy?
 5          **MR. LANGAN:**  11, 12, and 13.
 6          **MR. MAZE:**  11 and 12 are open.
 7          **THE COURT:**  Why don't we do 11 and 12 and free up
 8  June 27 and 28.
 9          **MR. LANGAN:**  Hopefully, I'm not messing us up.
10          **THE COURT:**  Well, don't cancel the 27th and 28th,
11  just confirm the May dates.
12          **MR. LANGAN:**  Very good.
13          **THE COURT:**  How about that?
14          **MR. LANGAN:**  Okay.
15          **THE COURT:**  If he confirms the May dates, then you
16  can say, "Fine.  You're off the hook for June."
17          **MR. LANGAN:**  All right.
18          **THE COURT:**  Great.  May 11 and 12, if we can confirm
19  those dates, that would be really good.
20                  Now, I know, Andy, you saw the request for
21  Ian Little, so just --
22          **MR. LANGAN:**  That's a UK tract, by the way.
23          **THE COURT:**  That's a UK tract, if you would just add
24  that to your list of people to contact.
25          **MR. LANGAN:**  By the way, down here for us is

1    Pat Campbell of Wild Well Control.

2            **THE COURT:**  Yes.

3            **MR. LANGAN:**  The 12th and 13th of July, apparently we

4    can scratch the tentative.

5            **THE COURT:**  Good.  We had asked if they had any

6    earlier dates.

7            **MR. LANGAN:**  We pushed hard, and apparently we didn't

8    get very far.  I don't know if Mr. Campbell is their 30(b)(6).

9    I don't know.

10           **MR. HAYCRAFT:**  No.

11           **THE COURT:**  He is not?

12           **MR. HAYCRAFT:**  He is not.

13           **THE COURT:**  So Mr. Campbell will be confirmed on the

14   12th and 13th.  Now, BP had five witnesses that it declared it

15   wanted to take off the master list.  Does anybody have any

16   problem with those witnesses being removed from the list?  We

17   all thought that was a good idea.

18           **MR. CUNNINGHAM:**  We do not.

19           **THE COURT:**  The PSC has no objection.

20           **MR. GODWIN:**  No objection, Judge.

21           **THE COURT:**  Great.  Five witnesses are gone.

22           **MR. UNDERHILL:**  The US is good as well.

23           **THE COURT:**  Thank you.  I appreciate it.

24               Mark Cargol of Subsea.

25           **MR. LANGAN:**  I think that's associated with Wild Well

1    Control as well, I believe.  The word we got back -- and it
2    might have been from Mr. Rousseau -- is that he has now left
3    the company, is an ex-employee, but the company is trying to
4    find him, if they can still produce him.  I think I have that
5    right.
6              THE COURT:  Do you have anything else on your list?
7              MR. LANGAN:  I do not.  Your Honor, the laptop issue,
8    we submitted a written report.  Does that satisfy that?
9              THE COURT:  I'm happy.  It does.  Thank you.
10             MR. LANGAN:  Thank you.
11             THE COURT:  Who is here for Transocean today?
12             MR. THIBODEAUX:  That's me, Your Honor.  Good
13   morning, Your Honor.  Paul Thibodeaux for Transocean.
14             THE COURT:  Good morning, Paul.
15             MR. THIBODEAUX:  Kerry is out of the city.
16             THE COURT:  Not on anything that's other than
17   work-related, we hope.
18             MR. THIBODEAUX:  No way, Your Honor.  He only works.
19             THE COURT:  Okay.
20             MR. THIBODEAUX:  We have a brief report on a few
21   Transocean witnesses or Transocean employees.  Mr. Eddy Redd,
22   we have conferred with the PSC on him.  He is somebody that is
23   out of the country.  We understand that he is a very important
24   witness to the PSC with respect to cap and contain issues.  We
25   have informed them that we are going to do our best to get a

1   date for him.  If we cannot by next week's conference, we may

2   have to let them try their hand.  We'll work with them and give

3   them as much information as we can.

4               **THE COURT:**  Great.

5               **MR. THIBODEAUX:**  With respect to the other witnesses

6   in Your Honor's report from last week, I believe those all have

7   individual counsel.  As I believe Kerry has stated before,

8   those witnesses have PI claims against Transocean.  We are as

9   interested as any other party in deposing those witnesses, but

10  we think it's best if we wait to see if they file claims in the

11  limitation and then go forward with their depositions.

12              **THE COURT:**  The only one I had a question about was

13  McWhorter.  Does he fall into that category, Jim McWhorter?

14              **MR. THIBODEAUX:**  Yes, Your Honor.  He has individual

15  counsel, Mike Walsh.

16              **THE COURT:**  Gotcha.  Thank you.

17              **MR. THIBODEAUX:**  Then I understand that we got from

18  BP on Wednesday a request for five additional witnesses.  Those

19  are Jeff Boughton, David Hackney, John Keeton, James Mansfield,

20  and Ray Odenwald.  Many of those also have individual counsel.

21  We are looking into reaching out to them right now and getting

22  dates from them, but we would like some more time and get back

23  and report next week on those witnesses.

24              **THE COURT:**  That would be good.  Thank you.

25              **MR. THIBODEAUX:**  That's all I have.

1      THE COURT:  Okay.  Andy.

2      MR. LANGAN:  Your Honor, I wish Kerry was here, no

3  disrespect to counsel.  I guess I would ask to see a little

4  more progress on the Transocean deponent front.  Week after

5  week, we have been asking for many of these depositions, and we

6  don't seem to be making very much progress.  I think there

7  ought to be a little more of a level playing field on this.

8           I get the limitation action thing.  A lot of our

9  witnesses have personal counsel too.  I think fair is fair, and

10  we have to get these dates set.  Anyway, that's all I'm going

11  to say.  I don't know if Your Honor agrees with me, but there

12  doesn't seem to be reciprocity here in terms of getting some of

13  these things scheduled.

14      THE COURT:  I think that's a valid concern.  Let's

15  see if we can make some progress on some of these for next

16  week.  If Kerry needs me to work with him, tell him I will be

17  glad to.

18      MR. THIBODEAUX:  Yes, Your Honor.  I will pass that

19  along.

20      THE COURT:  Thank you.  All right.  Halliburton is up

21  next.

22      MR. GODWIN:  Yes, Your Honor.

23      THE COURT:  Don, we are looking to make sure that we

24  took care of the issue of the Sperry 30(b)(6) contractual

25  duties.

1    **MR. GODWIN:**  Yes, Your Honor.  Don Godwin for

2 Halliburton.  Mr. Tim Probert, P-R-O-B-E-R-T, will be the

3 person designated to testify about that issue.  He is already

4 scheduled to give his deposition on May 9 and 10, Your Honor,

5 and I would suggest we cover that issue at that time.

6    **THE COURT:**  Good.  Next up is Dril-Quip.

7    **MR. GODWIN:**  Dril-Quip, Your Honor?

8    **THE COURT:**  Yes, sir.

9    **MR. GODWIN:**  We are continuing to work with them on

10 that.

11    **MR. MAZE:**  Which was the issue that we talked about

12 on the first witness?

13    **MR. GODWIN:**  Contractual duties.

14    **THE COURT:**  Sperry's contractual duties.  So

15 Tim Probert will be designated to cover that area.

16    **MR. GODWIN:**  As far as Dril-Quip, Your Honor, we are

17 continuing to visit with their attorney about that and expect

18 to reach an agreement in the next few days.

19    **THE COURT:**  Good.  Did you-all work out the issue of

20 Neal Adams?

21    **MR. GODWIN:**  Andy and I are still talking about that.

22 We don't have anything to report as of yet, but we expect we

23 will work that out, Judge, and hopefully can report on it next

24 Friday.

25    **THE COURT:**  Next is Paul Anderson.

1        **MR. GODWIN:**  He is open, Your Honor.  It's just
2   whenever you guys feel that we can slot him in.
3        **THE COURT:**  Is the third week in April too soon?
4        **MR. GODWIN:**  Well, we will make him available, Judge.
5   He is open.
6        **MR. YORK:**  It is only for the production of the
7   custodial files because we would have to run the search terms
8   against the custodial files to do the presentation.  With a
9   10-day lead time, I'm not sure that that third week in April is
10  going to give us --
11       **THE COURT:**  How about towards the end of the fourth
12  week in April?
13       **MR. GODWIN:**  We ought to be able to do that, Judge.
14  I was told he was open, so --
15       **MR. YORK:**  I'm sorry.
16       **MR. GODWIN:**  Fourth week of April going forward,
17  Your Honor.
18       **THE COURT:**  Why don't we do --
19       **MR. MAZE:**  27 and 28.
20       **THE COURT:**  -- 27 and 28.
21       **MR. CUNNINGHAM:**  Works for us.
22       **THE COURT:**  Paul Anderson.
23            Mike Serio.
24       **MR. GODWIN:**  Yes, Your Honor.  Mike Serio, I'm going
25  to give you the dates that he is not available.  Then other

```
 1    than that, we can slot him in when it works for everyone's
 2    schedule.  He is not available on May 2 --
 3             THE COURT:  Let's stop.  Could we take him on the
 4    28th, 29th --
 5             MR. GODWIN:  Of April, Your Honor?
 6             THE COURT:  -- of April and go ahead and fill those
 7    slots?
 8             MR. GODWIN:  It's fine with us.
 9             THE COURT:  Mr. Cunningham.
10             MR. CUNNINGHAM:  It works for us.
11             MR. GODWIN:  It works for us, Judge.
12             THE COURT:  April 28 and 29.  Okay.
13             MR. GODWIN:  The next one is Mr. Ron Faul.
14             THE COURT:  Right.
15             MR. GODWIN:  Mr. Faul, we propose making him
16    available after June 28 but not the period July 11 through 15;
17    any time after June 28 but not that week of July 11 through 15.
18             THE COURT:  Do you-all want to take him June 29 and
19    30, Mr. Cunningham?
20             MR. CUNNINGHAM:  I was going to suggest those dates.
21             MR. GODWIN:  Ron Faul, F-A-U-L.  June 29 and 30,
22    Judge?
23             THE COURT:  Yes, sir.
24             MR. GODWIN:  That's acceptable.
25             THE COURT:  I think that's it for you, Don.  Any
```

1    other notes that I missed?

2              **MR. GODWIN:**  I think that's all, Judge.

3              **THE COURT:**  Thank you.

4              **MR. LANGAN:**  You know, Your Honor, I know this wasn't

5    deliberate, but you skipped over our obligation to provide you

6    with a schedule for custodial file productions in London, which

7    is a subject of a fair amount of --

8              **THE COURT:**  That's because I'm in a hurry to get

9    finished with this meeting, but you're right.  Let's go back.

10             **MR. LANGAN:**  Having prepared this, I didn't want to

11   forget.

12             **THE COURT:**  No, I don't want to skip it, and I do

13   want you to be prepared --

14             **MR. LANGAN:**  Certainly.  I know it's important.  You

15   have raised it a couple times.  Anyway, what we are going to

16   try to do is try to honor a 14-day custodial file production

17   for our UK deponents.  So just to take an example, for

18   Mr. Hayward, we are going to try to get it done by May 23; and

19   Ms. Cowlam, C-O-W-L-A-M, by May 23.  They are both set to start

20   on June 6.  We understand and so, in general, our aspiration is

21   a 14-day custodial file production for our UK deponents.

22   That's kind of where we are.

23             **THE COURT:**  Anybody from PSC want to comment?

24             **MR. CUNNINGHAM:**  Robert Cunningham, Your Honor.  We

25   obviously would like it a lot sooner than that for everybody.

1  There are going to be a lot of logistical issues about how we

2  deal with all of this between here and England.  We are

3  talking -- we have April and May -- 60 days.  I, frankly, don't

4  understand why there could not be some prioritization where we

5  could have all of these folks' custodial files by the end of

6  May or May 23.  That's what we had urged the Court to do.

7          **THE COURT:**  Andy, why don't you do this for me.

8  Could you give me an e-mail or a letter explaining why it is

9  you can't do it before you leave for London --

10          **MR. LANGAN:**  Okay.

11          **THE COURT:**  -- and let me think about it.  Okay?

12          **MR. LANGAN:**  Yep, we will do that.  We kind of

13  explained it before, but we will go back.  Thank you.

14          **THE COURT:**  Well, I know you have all these

15  priorities and they are all number one.

16          **MR. LANGAN:**  Absolutely.  That's part of it.  Thank

17  you.  That's going to be the first point in our letter.

18          **THE COURT:**  Thank you.  That's what I figured.  This

19  will be Priority 1-A.

20          **MR. LANGAN:**  By the way, I knew I should have stayed

21  silent.

22          **THE COURT:**  No, because Mike was going to come up and

23  tell me I skipped that agenda item, so you weren't going to

24  miss it.

25          I have Anadarko up next.

1          **MR. FITCH:**  Good morning, Judge.  Tony Fitch.

2          **THE COURT:**  Good morning, Tony.  How are you?

3          **MR. FITCH:**  I'm just fine.  I trust you are.

4          **THE COURT:**  I am.  I am.  Thank you.  You know, it's

5    French Quarter Festival weekend, so how could I not be okay.

6                Okay.  Let's see.  We had started with seeing if

7    we could get Mr. Byrd, B-Y-R-D, on an earlier day.

8          **MR. FITCH:**  Well, this is getting me off to a slow

9    start, but I don't have anything yet to report to you.  I'm

10   still working on it.

11         **THE COURT:**  Great.  Thank you.  Next up, we wanted to

12   talk about whether we have got a clearer picture about

13   Mr. Guidry and his cost issues.

14         **MR. FITCH:**  No.  No, I don't.  They have now retained

15   counsel, a Kevin Merchant, and he and I spoke earlier this

16   week.  The date is still fine, but I don't have any further

17   report on their costs.

18         **THE COURT:**  Good enough.  Now, let's see.  You also

19   have the Nexen 30(b)(6) procurement department issue.

20         **MR. FITCH:**  That's right.  That's another deposition

21   that we do have a definite date for.  I distributed the Nexen,

22   as well as a number of other draft deposition notices, and I'm

23   prepared to send that out.  I still don't have the name of the

24   procurement department fellow.  If that's important, I will get

25   that for next week.

1          **THE COURT:**  But you will have somebody lined up for

2     that.  That was just an outstanding issue.

3          **MR. FITCH:**  They say they are ready to go and will

4     let me know who they will be going with.

5          **THE COURT:**  Good, good, good, good.  I assume

6     Kate Paine is the one you're going to give me a date for.

7          **MR. FITCH:**  You are correct.  We did find her and

8     she's available.  She's on some rig at the present time.  She's

9     definitely available Monday, April 18 and 19, but I really

10    think she's probably one day.  She, basically, is involved in

11    the March 8 kick and well control issue.

12               She is not represented by counsel.  I think that

13    she is a person who should be compensated at least for her

14    travel and lodging, and probably for her lost time as well.

15    She is amenable to accepting service.  I'm prepared to send

16    out, with your authorization today, a deposition notice to her

17    this afternoon.

18          **THE COURT:**  Great.  You have the authorization.  No

19    problem.  We'll put her down for the 18th and 19th with the

20    hope it will be a one-day deposition.  It's P-A-I-N-E.

21          **MS. BERTAUT:**  Judge, who is she employed by?

22          **THE COURT:**  She's with Quadril Energy.

23          **MR. FITCH:**  That's what I represented to you, Judge.

24    She's really an independent consultant.  She has relationships

25    with several companies, some of which in turn are

1   subcontractors with BP and other companies.  It happened to be

2   through some company called Quadril that she ended up working

3   on Macondo for a period of time.

4            **THE COURT:**  Then we were going to have the PSC and

5   the United States contact DNV with regard to their 30(b)(6).

6   Anything updating on that?

7            **MR. UNDERHILL:**  Mike Underhill for the U.S.  I talked

8   to Mr. Cohen, who represents them, and I told him that it would

9   be greatly appreciated by the Court if they agreed only to try

10  to be reimbursed for their travel and subsistence, and he told

11  me that they had agreed to that.

12           **THE COURT:**  That they --

13           **MR. UNDERHILL:**  Had agreed to it.

14           **THE COURT:**  Oh, great.  Thank you.

15           **MR. UNDERHILL:**  I think he might have confirmed that

16  in an e-mail to some of the parties.  I'm not sure.

17           **THE COURT:**  That's great.  Thank you, Mike.

18           **MS. BERTAUT:**  Your Honor, can we step back a minute

19  to the DNV?  I understand it's going to be a 30(b)(6).  It

20  appears as though the Court has it resolved for a June date.  I

21  raise the question of:  What is the scope of the 30(b)(6)?  I

22  have not seen any drafts.  I know nothing has been circulated.

23  I raise that issue because, as we well know, DNV is in some

24  capacity an expert here.  So I would like to have a better

25  understanding of what is the scope of the projected 30(b)(6).

1              Mike, you may not know.

2              **MR. UNDERHILL:**  I didn't seek the deposition, so

3    whomever is the sponsor, I turn over the time.

4              **THE COURT:**  Great.  Thank you, Mike.  I sure

5    appreciate that.

6              **MR. FITCH:**  Judge, Tony Fitch.  I couldn't hear all

7    of that.

8              **THE COURT:**  That was Carmelite Bertaut asking what

9    the scope of the DNV 30(b)(6) deposition will be because they

10   will be both fact witnesses and expert witnesses and we haven't

11   seen a draft of the DNV 30(b)(6) notice yet.

12             **MR. FITCH:**  I distributed one in mid March to Andy

13   and Steve and Jim, and I can distribute it to others, of

14   course.

15             **THE COURT:**  Why don't you do that.  Why don't you go

16   ahead and recirculate to everyone so that everybody can have

17   input on it, and hopefully we'll put that on the agenda to see

18   if we have got agreement.

19             **MR. FITCH:**  I also missed Mike's recitations about

20   DNV dates.

21             **THE COURT:**  DNV is confirmed for June 21 and 22, and

22   they have confirmed that their expenses of travel/lodging will

23   be all that they are seeking.

24             **MS. BERTAUT:**  Your Honor, can I ask, the draft that

25   apparently was circulated last month, whether or not Mr. Fitch

1    has proposed expert testimony that would be postexplosion
2    testimony in the 30(b)(6)?
3            THE COURT:  Mike, did you hear that?  I'm sorry.
4    Tony, did you hear that?
5            MR. FITCH:  I'm afraid I did not.
6            THE COURT:  There's something wrong with that mic.
7    Ms. Bertaut wants to know whether you have postexplosion expert
8    testimony designated.  I don't know whether you know offhand
9    whether that's something you have covered.
10            MR. FITCH:  I don't recall.  I don't have it in front
11    of me.
12            THE COURT:  Okay.  Well, go ahead and circulate to
13    all and everybody can put their eyeballs to it.  Okay?
14            MR. FITCH:  That sounds fine.
15            THE COURT:  Thank you.  We have M-I Swaco up next.
16    We were only looking to see if we could get Mr. Smith scheduled
17    for June 15, 16, or 17.
18            MR. LANGAN:  Mr. Tanner and I have had discussions.
19    I believe BP was the one asking for Mr. Smith.  We don't see a
20    need to depose Mr. Smith.  So unless anybody else does, I think
21    maybe that's one that could potentially, at least, be dropped.
22    I told counsel that after court last week and it remains the
23    case.
24            MR. GODWIN:  Halliburton would like to depose the
25    witness Mr. Smith, Your Honor.

1    THE COURT:  Okay.  So now the issue comes up whether
2  we can move him earlier or not.
3    MR. TANNER:  Hugh Tanner for MI, Your Honor.  Now
4  that I know that, I'm going to have to see because we were
5  taking him off the calendar.  So I will have to get with
6  Mr. Smith and see if he can do it or not.
7    THE COURT:  That would be great.  We were looking for
8  June 15, 16, or 17.
9    MR. TANNER:  Okay.  That's what we had down before,
10  that's right.
11    THE COURT:  Exactly.  So that would be very helpful
12  if he can do it.  Great.
13    MR. TANNER:  All right.
14    THE COURT:  Thank you much.
15    MR. TANNER:  I think you also wanted us to report on
16  the 30(b)(6) for Brad Billon.  Mr. Herman and I have been
17  trying our best to get together this week, so we are just
18  working through some points on the 30(b)(6).  He is currently
19  scheduled for the 23rd and 24th of June.
20    THE COURT:  Is Mr. Herman cooperating with you?
21    MR. TANNER:  Marvelously.
22    MR. HERMAN:  Thank you.
23    THE COURT:  Weatherford.  I want an update on whether
24  or not we have been able to agree to a notice.
25    MR. GOODIER:  Glenn Goodier.  We are very close to

1    working out all of the problems.  My partner, Dirk Wegmann, has

2    been working closely with Alan York and Paul Sterbcow.  There

3    are about 17 or so topics that we have no information on, so

4    those are going to be just "no information."

5              The two witnesses we have right now are Clawson

6    and Lirette.  We have given those names before.  We should be

7    able to provide a list of the topics with each of those

8    gentleman's names.  Assuming the rest get worked out, we may

9    not need any other witness.  If we do, we'll provide them.

10             **THE COURT:**  Great.

11             **MR. GOODIER:**  Mr. Oldfather is still not back to

12   work.  As soon as we hear about Mr. Oldfather, we will report.

13             **THE COURT:**  Great.  I appreciate that very much.

14             **MR. GOODIER:**  Anything else?

15             **THE COURT:**  Are you getting cooperation from the

16   people you are working?

17             **MR. GOODIER:**  Unbelievable.

18             **MR. FITCH:**  Judge, Tony Fitch.  On the Weatherford

19   deposition, both Mr. Lirette and Mr. Clawson, as I understand

20   it, are scheduled for the same days, June 6 and 7.  Am I

21   correct in understanding that they will be taken seriatim, so

22   that one attorney can cover both of their depositions, and not

23   be taken contemporaneously?

24             **THE COURT:**  That was my understanding.

25             Glenn, is that your understanding?

1      **MR. GOODIER:**  I'm sorry.  I didn't hear all that he
2   said.

3      **THE COURT:**  Come on back up and we'll discuss it.  We
4   have got both of those witnesses scheduled for June 6 and
5   June 7.

6      **MR. GOODIER:**  The 30(b)(6) representatives, but
7   Mr. Clawson also is named as a fact witness.  So the last time
8   we discussed that we would ask him the fact questions.

9      **THE COURT:**  Correct.  So Tony's question is this:  Do
10  we plan on taking them serially, that, is we will take
11  Mr. Clawson fact and designee, and then move on to Mr. Lirette
12  as a 30(b)(6) deponent so that everybody can participate?  Is
13  that your concept?

14     **MR. GOODIER:**  We are willing to do it any way anybody
15  wants to do it.

16     **THE COURT:**  I think the answer, Tony, is yes.

17     **MR. FITCH:**  I do too.  I much appreciate it.

18     **MR. GOODIER:**  Okay.

19     **THE COURT:**  What we will do is we will take
20  Mr. Clawson first and we'll move on to Mr. Lirette or vice
21  versa.  We don't care, but it will be serially, not at the same
22  time.

23     **MR. GOODIER:**  We'll make sure that all the topics
24  that Mr. Lirette is designated for can be covered, and then
25  we'll move on to Mr. Clawson or vice-versa.

1          THE COURT:  Perfect.  Is that okay with you,

2   Mr. Cunningham?

3          MR. CUNNINGHAM:  Yes, ma'am.

4          MR. GOODIER:  There aren't that many topics that are

5   going to be left because we don't know anything about the vast

6   majority of the topics.

7          THE COURT:  That's what you say.

8          MR. GOODIER:  Correct.  Thank you.

9          THE COURT:  Mr. Dart, we got your memorandum with

10  regard to the additional witnesses you want to take.

11          Anybody who wants to file an opposition to that,

12  would you please get it to me no later than next Monday.  Not

13  this Monday, next Monday.  If there's no opposition, we'll take

14  it from there.

15          I think, unless Mike tells me I skipped

16  something --

17          THE LAW CLERK:  No, I think that covers it.

18          THE COURT:  That's it for today's meeting.  Does

19  anybody have anything new to add to our list of discussions?

20          MR. IRPINO:  Anthony Irpino, Your Honor.  Not

21  necessarily new, but just some questions or clarifications

22  relative to your April 4 order regarding the Morel marital

23  privilege claims.

24          One of the things that the procedures that we

25  have outlined -- Paul Sterbcow and I have met with counsel for

1    Mr. Morel.  The concern that everybody has is that we do not

2    needlessly have information out there that is highly personal.

3    There's no reason to have "I love you," "How is the baby

4    feeling," whatever, in a produced document.  So what we want to

5    report on that process, number one, is that we have received

6    some proposed redactions from Mr. Morel's attorneys, Mr. Taylor

7    and Mr. Mehta.

8                    There are a couple issues with some, but most we

9    feel like we can have agreement.  Based on the order and the

10   procedure, though, we are not the only people calling the ball

11   on a strike.  Whether or not the PSC can agree with Mr. Morel's

12   attorneys or not is I don't think the entirety of the analysis.

13   So in the order it seems like that Mr. Morel or his counsel

14   will provide their proposed redactions to designated

15   representatives of the parties.

16                   I thought it might be a good idea to get some

17   understanding from the parties or a deadline for those parties

18   to propose their designees.  Maybe some of them will just say,

19   "Look, I'm sure the PSC has taken care of it.  We don't need to

20   do it.  We can allow them to do it."

21                   It's just for this kind of proposed redactions.

22   It's our understanding that relative to the nonproposed

23   redactions, meaning the material in the e-mails where they do

24   not propose redactions, how we are treating that is we are

25   currently redacting everything that they have proposed and

1    moving forward that way.  Meaning that we read your order to
2    say:  If you haven't proposed a redaction to anything, then
3    that's good.  It's fair game.  Let's move forward.
4                  To be safe and secure, we are going to black out
5    currently everything that is proposed and then debate those
6    issues -- it's not many -- of the stuff that is proposed.
7                  **THE COURT:**  Okay.
8                  **MR. IRPINO:**  Is that fair?
9                  **THE COURT:**  Let me ask the group.  Does anybody want
10   to individually review this or do you trust the PSC to take
11   care of this issue?  I've looked at the e-mails.  The things
12   that I think are going to be redacted are things that I think
13   nobody is interested in.  I think you-all probably can trust
14   the PSC to take the lead on this.  Unless you tell me
15   otherwise, we are going to let the PSC deal with it.  Anybody
16   want their chance at it?  Sold to the lowest bidder.
17                 **MR. IRPINO:**  If anybody has a question -- and I don't
18   know if this is considered entrapment -- they can send me an
19   e-mail tomorrow, and we can meet at the lounge and they can buy
20   drinks.
21                 **THE COURT:**  We do have to take that issue up, don't
22   we?  We had a couple of violations.
23                 **MR. IRPINO:**  I was on that list.
24                 **THE COURT:**  Mr. Roy, come on up.
25                 **MR. ROY:**  First, I'm pleading the Fifth on

1   violations.  I don't want to go there.  Mr. Haycraft and --

2           **MR. GODWIN:**  Schedule his deposition in July,

3   Your Honor.

4           **MR. ROY:**  You're not going to use aggressive tactics

5   on me, are you?

6           **MR. GODWIN:**  We wouldn't do that to you.

7           **MR. ROY:**  People would buy many tickets for that

8   opportunity.

9           Mr. Haycraft and the PSC have been talking about

10  a recent inquiry I believe your office initiated regarding

11  whether or not we should put forth a preliminary exhibit list

12  and witness list.  Both sides have no problems with a

13  preliminary witness list.  But when we talk about the exhibit

14  list, in order to have something manageable, what I believe we

15  jointly agreed is to put forth basically the running index of

16  exhibits to the depositions, which total about 1,200 now, I

17  think.  It's as good a place to start as any --

18          **THE COURT:**  Absolutely.

19          **MR. ROY:**  -- and be meaningful.

20          **THE COURT:**  I think that's great.  No problem.  Thank

21  you.

22          **MS. NICHOLSON:**  Good morning, Your Honor.  Melinda

23  Nicholson for the 2185 derivative plaintiffs.  I will be brief

24  so everybody can get out of here.

25          I just want to clarify on our end.  There's been

1    some questioning with both you and Judge Barbier over the last

2    couple weeks on when exactly the derivative plaintiffs have

3    been getting BP's document production and whether or not we

4    have been getting it at the same time as the other parties in

5    2179.

6                    I can confirm that we were not getting the

7    document disks at the same time.  We were getting those days

8    later.  BP has set up an FTP site recently so that everyone

9    could get access at the same time.  We finally got log-in

10   information on Wednesday afternoon.  So as of Wednesday

11   afternoon, April 6, we do have access to the FTP site.  So we

12   can, from here on out, be getting the documents at the same

13   time as everybody else.

14           **THE COURT:**  Great.  Hopefully, that will advance the

15   cause and let you keep up with what's going on.  If there's a

16   hitch, let us know, but we would like you to keep up with it,

17   to the extent that you-all are in a position to do so.

18           **MS. BLOOM:**  We are definitely trying.  Hopefully,

19   between this progress and our meeting with Judge Ellison on

20   this coming Wednesday, we can get these issues worked out.

21   Hopefully, we will have good stuff to report to you next

22   Friday.

23           **THE COURT:**  Great.  Looking forward to it.  Thank

24   you.  I appreciate it.

25                    Okay.  Anything else?  It's a quarter of 11:00.

1   All right.  We will see you guys next week, same time, same

2   place.  Thanks very much.  Anybody who is staying in town, go

3   on out to the French Quarter Fest.  Thanks guys on the phone.

4   See you later.

5           **THE DEPUTY CLERK:**  All rise.

6           (WHEREUPON the Court was in recess.)

7                           * * *

8                       **CERTIFICATE**

9           I, Toni Doyle Tusa, CCR, FCRR, Official Court

10  Reporter for the United States District Court, Eastern District

11  of Louisiana, do hereby certify that the foregoing is a true

12  and correct transcript, to the best of my ability and

13  understanding, from the record of the proceedings in the

14  above-entitled and numbered matter.

15

16

17                           s/ Toni Doyle Tusa
                             Toni Doyle Tusa, CCR, FCRR
18                           Official Court Reporter

19

20

21

22

23

24

25