UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG | : | MDL NO. 2179 |
| "DEEPWATER HORIZON" in the | : | |
| GULF OF MEXICO, on | : | SECTION:  J |
| APRIL 20, 2010 | : | |
| | : | JUDGE BARBIER |
| **THIS DOCUMENT RELATES TO** | : | MAG. JUDGE SHUSHAN |
| **THE** *TRANSOCEAN* **LIMITATION** | : | |
| **ACTION, NO. 10-2771** | : | |

. .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .

### SUPPLEMENTAL BRIEF OF DEFENDANT CAMERON INTERNATIONAL CORPORATION EXPRESSING CONCERNS ABOUT FEATURES OF PROPOSED TRIAL PLANS

Cameron International Corporation ("Cameron") respectfully submits this supplemental brief to demonstrate why key features of the proposed trial plans submitted (1) jointly by the Plaintiffs' Steering Committee and Transocean (Doc. 1951-1: hereafter "PSC/TO Plan") and (2) by BP (Doc. 1943-1: hereafter "BP Plan") contravene applicable law and procedure.  In particular, Cameron is concerned that

- the proposals to try oil spill economic loss claims in the limitation action are flawed because with respect to those oil spill claims, OPA supplants maritime jurisdiction, the maritime Limitation Act, and the procedures of Admiralty Rule F for limitations actions;

- the failure of these plans to accommodate jury trials is inconsistent with the BP and Transocean cross-claims for contribution under OPA with respect to oil spill claims;

- the proposals in each plan for resolution of fault allocation[s] on a "global" basis not only would contravene Admiralty Rule F, but also would in effect allow a class action in violation of FED. R. CIV. P. 23; and

- BP's proposal for separate trials on succeeding chronological sub-issues leading to a single fault allocation determination would be improper for several additional reasons, particularly in light of BP's assertion of oil spill fault allocation claims under the contribution provision of OPA.

**1. With Respect to Oil Spill Claims, OPA Supplants Maritime Law, Admiralty Jurisdiction, the Limitation Act, and Admiralty Rule F**

Oil spill claims do not belong in the limitation action and therefore should not be addressed in the limitation trial in February 2012.

OPA specifically limits the application of other laws, including maritime law, admiralty jurisdiction, and the Limitation Act.  First and foremost, "***[n]otwithstanding any other provision or rule of law, and subject to the provisions of this Act***," section 2702(a) imposes liability on defined "responsible parties," for a broad range of "removal costs and damages specified in subsection (b)."  33 U.S.C. § 2702(a) (emphasis added).  The recoveries specified in subsection (b) are recoveries based on oil spills.  33 U.S.C. § 2702(b).   In addition, OPA provides that "***[e]xcept as provided in this chapter,*** this chapter does not affect . . . (1) admiralty or maritime law or (2) . . . admiralty or maritime jurisdiction."  33 U.S.C. § 2751(e).  By parity of reasoning, the opening qualifying phrase section 2751(e) necessarily means that if OPA does "provide" for a certain substantive or procedural matter, then admiralty or maritime law or admiralty or maritime law is supplanted by OPA.  And that is precisely how the authoritative decisions have interpreted OPA.

As the First Circuit held in the leading decision on the subject, the "very specific treatment of oil pollution in the OPA . . . supplanted general admiralty and maritime law" relating to recovery of damages for oil spills.  *South Port Marine, LLC v. Gulf Oil Ltd. P'ship*, 234 F.3d 58, 65 (1st Cir. 2000) ("Congress intended the OPA to be the exclusive law governing

1054276v.1

oil spills"). *Accord, Gabarick v. Laurin Maritime (America) Inc.*, 623 F.Supp.2d 741, 746 (E.D. La. 2009); *Clausen v. M/V New Carissa*, 171 F.Supp.2d 1127, 1133 (D. Or. 2001); *Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atlantic Corp*, 924 F.Supp. 1436, 1447 (E.D. Va.), *aff'd w/o published opinion*, 122 F.3d 1064 (4th Cir. 1997), *cert. denied*, 523 U.S. 1021 (1998). The First Circuit reasoned that this result was largely resolved by the Supreme Court's admonition that in an "area covered by statute," it would not be "appropriate" under maritime law "to prescribe a different measure of damage." *Miles v. Apex Marine*, 489 U.S. 19, 31 (1990) (further citation omitted), quoted in *South Port Marine*, 234 F.3d at 66.

These principles apply in full measure to any allocation of fault. As noted above, defined "responsible parties" under OPA have already asserted contribution claims under OPA. Unquestionably, OPA provides a cause of action for contribution with respect to oil spill claims. 33 U.S.C. § 2709. Under the terms of the preamble of OPA § 2751(e), therefore, OPA supplants any maritime law allocation of fault. In the words of the Supreme Court in *Miles*, because the issue of allocation of fault is covered by OPA, it would not be appropriate to resort to maritime law "to prescribe" an allocation of fault.

These OPA provisions also have application to the question of jurisdiction. OPA provides separately for "exclusive original" federal jurisdiction "over all controversies arising under" OPA. 33 U.S.C. § 2717(b). There is an exception to this exclusivity, but that is a grant of authority to state courts to adjudicate oil spill claims under OPA or state law. 33 U.S.C. §§ 2717(c). There is **no** exception to the exclusivity of OPA jurisdiction for admiralty jurisdiction. These express jurisdictional provisions in OPA, therefore, supplant admiralty or maritime jurisdiction over oil spill claims. Accordingly, numerous private oil spill claimants in the

1054276v.1

3

limitation action have objected to the assertion of jurisdiction over oil spill claims on the ground "that the Oil Pollution Act supersedes the general Limitation of Liability Act."  Documents (in 10-2771) 287, p. 2; 290, p. 2; 313, p. 2; 371, p. 2; 373, p. 2.

In any event, it is largely settled that OPA supplants the Limitation Act with respect to oil spill claims.  After a careful analysis of OPA's treatment of issues addressed in the Limitation Act, the First Circuit concluded "that the OPA has repealed the Limitation Act as to oil spill pollution claims arising under OPA."  *In re Metlife Capital Corp.*, 132 F.3d 818, 822 (1st Cir. 1997), cert. denied, 524 U.S. 952 (1998).  Furthermore, the First Circuit closely examined the question whether the concursus of Admiralty Rule F survived the inapplicability of the Limitation Act to oil spill claims.  132 F.3d at 823-24.  The panel concluded that the venue, limitations, and claims procedure provisions all conflicted with Admiralty Rule F.  *Id.*  Inasmuch as OPA provides a claims procedure for recovery of oil spill response costs and damages, it supplants the claims procedure of Admiralty Rule F under the "except as provided" preamble to OPA § 2751(e).  The First Circuit definitively held "that Rule F concursus even if independent of the Limitation Act is inapplicable to OPA claims."  132 F.3d at 824.

Many claimants in the limitation action take this same position.  For example, Plaquemines Parish contends that the Limitation Act "is not applicable and is preempted by the Oil Pollution Act."  Document 314 (in 10-2771), p. 4.  Similarly, Baldwin County, Alabama "asserts that the Oil Pollution Act supersedes and preempts" the Limitation Act.  Document 320 (in 10-2771), p. 2.

It is inescapable that any plan for trial *of oil spill claims* or an allocation of fault *for oil spill claims* in the limitation action will necessarily run afoul of OPA and the authoritative precedent cited in this section.

Other claims do not pose this issue.  The First Circuit noted in *MetLife* that because of OPA § 1751(e), some "claims arising from an incident in which oil pollution occurs do not escape the Limitations Act."  132 F.3d at 822.  Those claims include "tort actions for harms to persons or vessels."  *Id.*   Accordingly, those personal injury and property damage claims rightfully may be tried in the limitation action, as the trial plans of Cameron and *all* other parties contemplate.

### 2. The Legal Bases Asserted for Oil Spill Fault Allocation Require Jury Trial[s]

The proposed trial plans contemplate a bench trial.  However, as the legal basis for allocation of fault for oil spill claims, BP and Transocean have asserted contribution causes of action against Cameron under OPA § 2709.  *See* Document 2064, Count V, ¶¶ 88-92 (BP); Document 2068, Count 5, ¶¶ 84-85 (Transocean). Under section 2709, any recovery in contribution requires a determination that Cameron is "liable" under OPA or some "other law." 33 U.S.C. § 2709.  It is settled that the Seventh Amendment right to a jury trial extends to such "causes of action created by Congress."  *Chauffers Local No. 391 v. Terry*, 494 U.S. 558, 564-65 (1990).  It should be beyond reasonable dispute that claims for allocation of fault are subject to trial by jury.  *See Foster v. National Fuel Gas Co.*, 316 F.3d 424 (3rd Cir. 2003); *Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d 549 (D.C. Cir. 1993).  Moreover, any underlying liability of Cameron for an oil spill from a deepwater well in the subsoil of the Gulf of Mexico is necessarily governed by Louisiana law as surrogate federal law adopted by OCSLA, and resolution of its

1054276v.1

underlying liability would require a jury trial or trials.  *See Texaco Exploration and Production, Inc. v. AmClyde Engineered Products Co., Inc.*, 448 F.3d 760, 770-76 (5th Cir.), cert. denied, 549 U.S. 1053 (2006).  For this reason as well, the plans to conduct a bench trial of oil spill fault allocation in the  limitation action are procedurally flawed.

### 3. Fault Allocation Cannot Be Adjudicated on a Global or Multi-Claim Basis

The PSC/TO Plan contemplates two separate fault allocations – the first to allocate fault for the explosions and fires on the *Deepwater Horizon* drilling unit on April 20, 2010, and the second to allocate fault for the oil spill occurring after the explosions and fires. Doc. 1951, p. 1.  The PSC/TO Plan nevertheless contemplates "a single trial, which would allow for one adjudication of a single note of evidence ***common to all defendants and plaintiffs.***"  *Id.* p. 22.

The BP Plan contemplates a single fault allocation to be resolved by a series of separate trials addressing allocation of fault in successive chronological periods. Doc. 1943-1 ¶ 9.[1]  The BP Plan also contemplates a selection of "***representative***" limitation claimants whose claims would be tried in order to support the proposed single fault allocation.  *Id.* ¶¶ 4, 5.

Cameron submits that each of these plans improperly prejudges the facts. Although the PSC/TO idea for two separate fault allocations more closely conforms to the facts disclosed in discovery, the complexity of the chain of causation revealed by the evidence

---

[1] BP's proposal for a single fault allocation simply cannot be reconciled with its contribution claims for oil spill liability under OPA.  *See, e.g.,* Document 2064, Count V, ¶¶ 88-92.  OPA unquestionably does not govern fault allocation for personal injury or death cases or for property damage cases not based on an oil spill.  This difference in the legal basis for different claims requires more than one allocation of fault for those two types of claims.  The bottom line is that, at least initially, liability and allocation of fault must be adjudicated on a claim by claim basis.  Only then is it possible that issue preclusion may operate to obviate relitigation of certain issues.

1054276v.1

adduced at trial may well justify the need *for more than two separate allocations of fault* for differently situated claimants, particularly differently situated oil spill claimants.   The BP proposal for a single fault allocation prejudges the facts, and does so incorrectly.   Any such determination of fault allocation must be left to the fact-finder at trial, and necessarily depends on the resolution of underlying fault on an individual claim basis.

Each of these plans for a fault allocation trial unmoored from the individual claims asserted in the limitation action also violates a central tenet of Admiralty Rule F governing limitation actions.   The Supreme Court has reconfirmed that a core purpose of the limitation proceeding under Admiralty Rule F is to "marshal[] claims" and then "adjudicate[]" those marshaled "claims."   *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 448 (2001).   In that context, the Fifth Circuit has explained that "the entire thrust of Supplemental Rule F is that each claimant must appear individually."   *In re Lloyd's Leasing, Ltd.*, 902 F.2d 368, 370 (9th Cir. 1990).   Each claim must be prosecuted "individually" and liability correspondingly resolved on the basis of individual claims.   Recovery in contribution is then premised on an adjudication that multiple parties are jointly "responsible for the same tort."   *United States v. Atlantic Research Corp.*, 127 S. Ct. 2331, 2337-38 (2007) (citation omitted).   Therefore, allocation of fault in the Rule F context requires a predicate determination of multiple defending parties' joint tort liability to each individual claimant.   No party has cited any authority that this central feature of Admiralty Rule F can be jettisoned.

Furthermore, the global fault allocation determinations proposed by the plans submitted by PSC/TO and BP would necessarily allocate fault on a multi-claimant basis. Although the PSC/TO plan and supporting brief are less than clear on this issue, the notion of a

1054276v.1

trial for "adjudication of a note of evidence **common to all** defendants and **plaintiffs**" is essentially a class action trial.  The provision for "representative" claimants in the plan proposed by BP reveals even more transparently that the fault allocation trial proposed by BP would resolve allocation of fault (if not liability) on a class-wide basis applicable to all claims in limitation.  Accordingly, adoption of either of these proposals for a broad fault allocation trial would necessarily violate Federal Rule 23(a), which provides unequivocally that parties may sue "on behalf of" other parties "**only if**" the specified requirements of class certification are met. Such a fault allocation on a multi-claim basis would also contravene Admiralty Rule F, which "is obviously inconsistent with" proceeding on such a class action basis. *Lloyd's Leasing*, 902 F.2d at 370.

As Cameron explained in its initial brief on trial planning (Doc. 1940, p. 10), under principles of issue preclusion, resolution of fault allocation with respect to individual claims may ultimately preclude relitigation of fault allocation with respect to other identically situated claims.  But it is clear that issue preclusion cannot be resolved in advance or wished away by trying fault allocation in a vacuum on a no-claim or representative claim basis.  *Id.* Under Admiralty Rule F and Rule 23, and as a matter of due process, there must be a trial of individual claims, including fault allocation for individual claims, letting issue preclusion chips fall where they may.  Ignoring these rules governing all federal court trials and limitation actions runs the serious risk of reversible error.

### 4. Separate Trials on Sub-Issues Are Not Proper

BP's proposal to accumulate determinations to a single fault allocation through separate trials on allocation of fault for successive chronological periods would exacerbate the

impropriety of the BP proposal.  To be sure, FED. R. CIV. P. 42(b) permits separate trials on separate issues in certain circumstances.  But Rule 42(b) does not permit the unprecedented trial plan proposed by BP.

The limitation action involves successive stages for resolution of separate issues under Admiralty Rule F.  *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 448 (2001).   The trial judge first "marshals claims;" second, "adjudicates [the marshaled] claims;" third, resolves the liability issues under the statute issues; fourth, "determines the validity of the claims: and then, "if liability is limited, distributes the limited fund among the claimants." *Id.*  In that context, the Rule 14(c) concursus permits the petitioners to implead defendants to defend the claims that have been marshaled into the proceeding as well as defend claims over by the petitioners.  The beginning and end of the limitation action is the resolution and payment of individual claims, and in a concursus, the resolution of liability of the petitioners and impleaded defendants for those individual claims.   In that context, the resolution of allocation of fault among the impleaded defendants may likewise proceed, but because it is ultimately governed by Admiralty Rule F, that fault allocation must be premised on joint liability for an individual claim. *See Atlantic Research*, 127 S. Ct. at 2337-38.

The BP plan, by contrast, is to have separate trials on sub-issues accumulating to a purportedly single allocation of fault for all claims.  Nothing in the Federal Rules or Admiralty Rule F permits this approach.  The Fifth Circuit's view of Rule 42(b) has a bearing on the BP plan.  "There is an important limitation on ordering a separate trial of issues under Rule 42(b): the issue to be tried must be so distinct and separate from the others that a trial of it alone may be had without injustice . . .." *McDaniel v. Anheuser-Busch, Inc.,* 987 F.2d 298, 305 (5th Cir. 1993).

1054276v.1

BP, however, argues that separate trials may be had on sub-issues leading to a single fault allocation precisely because all the sub-issues are inter-related in the resolution of a single issue, not because they are separate and distinct issues.

Furthermore, Rule 42(b) itself cautions that separate trials "must preserve any federal right to a jury trial."  As noted above, BP's assertion of contribution rights under OPA for oil spill claims calls for resolution by jury trial.  BP's proposal, however, ignores the need for jury trials required by its own cross-claims.

The BP plan for successive fault allocation determinations leading to a single fault allocation raises grave risks of procedural error on many levels that this Court should avoid. Surely no party would want to repeat the lengthy trial beginning in April 2012 because of procedural error.

### 5. Remaining Concerns

The infirmities of the plans proposed by PSC/TO and BP that were identified in Cameron's initial brief (Doc. 1940) are additional reasons not to adopt either of those plans.

Most importantly, both plans presume that maritime law governs the underlying claims of claimants, the liability of Petitioners and the tendered defendants to those claimants, and any resulting allocation of fault for those claims.  Cameron disagrees, because the claims are all quintessential OCSLA claims based on oil and gas development from an OCSLA situs – a deepwater well in the Gulf of Mexico.  *See* Documents 1154-1, pp. 6-13; 1395-1, pp. 6-21; 1980, pp. 9-12.  Furthermore, OPA governs the claims based on an oil spill in navigable waters and supplants maritime law in the process.  Taken together, OCSLA and OPA pre-empt the application of maritime law to any issue other than the claims of Transocean under the maritime

Limitation Act.  Plaintiffs consider Cameron's argument to be so forceful on this point that they have sought leave to supplement their opposition to Cameron's dismissal motion.  *See* Document 2121.  **Resolution of these choice of law disputes is a necessary predicate to the adoption of any trial plan.**

### 6. Conclusion

The trial plan that Cameron has submitted (Doc. 1940-1) is the only plan that is supported in important particulars by all the parties and the only proposed plan that does not suffer from any legal or procedural infirmity.  It is no objection that the Cameron plan does not "go far enough."  What counts is that the Cameron trial plan observes applicable legal and procedural boundaries.   Under this (potentially non-jury) plan, the Court could try (1) the Transocean petitioners' claims under the Limitation Act; (2) personal injury and death claims; and (3) property damage claims not based on the oil spill.

Respectfully submitted,

<table>
<tr><td>David J. Beck, T.A.</td><td>/s/ Phillip A. Wittmann</td></tr>
<tr><td>dbeck@brsfirm.com</td><td>Phillip A. Wittmann, 13625</td></tr>
<tr><td>Joe W. Redden, Jr.</td><td>pwittman@stonepigman.com</td></tr>
<tr><td>jredden@brsfirm.com</td><td>Carmelite S. Bertaut, 3054</td></tr>
<tr><td>David W. Jones</td><td>cbertaut@stonepigman.com</td></tr>
<tr><td>djones@brsfirm.com</td><td>Keith B. Hall, 24444</td></tr>
<tr><td>Geoffrey Gannaway</td><td>khall@stonepigman.com</td></tr>
<tr><td>ggannaway@brsfirm.com</td><td>Jared Davidson, 32419</td></tr>
<tr><td></td><td>jdavidson@stonepigman.com</td></tr>
<tr><td>BECK, REDDEN & SECREST, L.L.P.</td><td>STONE PIGMAN WALTHER WITTMANN L.L.C.</td></tr>
<tr><td>One Houston Center</td><td>546 Carondelet Street</td></tr>
<tr><td>1221 Mckinney, Suite 4500</td><td>New Orleans, Louisiana  70130</td></tr>
<tr><td>Houston, TX  77010-2010</td><td>504-581-3200</td></tr>
<tr><td>713-951-3700</td><td>504-581-3361 (fax)</td></tr>
<tr><td>713-951-3720 (fax)</td><td></td></tr>
</table>

**ATTORNEYS FOR CAMERON INTERNATIONAL CORPORATION**

1054276v.1

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Supplemental Brief of Defendant Cameron International Corporation Expressing Concerns About Features of Proposed Trial Plans has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 26th day of April, 2011.

*/s/ Phillip A. Wittmann*

1054276v.1