UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **In re: Oil Spill by the Oil Rig** | * | MDL No. 2179 |
| **"Deepwater Horizon" in the Gulf** | * | |
| **of Mexico, on April 20, 2010** | * | SECTION "J" |
| | * | |
| **This Document Relates to:** | * | JUDGE BARBIER |
| *All Cases and Consolidated Actions in* | * | |
| *MDL No. 2179* and *Complaint and Petition* | * | |
| *of Triton Asset Leasing GMBH, et al.,* | * | |
| **No. 10-2771** | * | MAGISTRATE NO. 1 |
| | * | MAGISTRATE SHUSHAN |
| * * * * * * * * * * * * | | |

REPLY MEMORANDUM OF DEFENDANTS ANADARKO PETROLEUM
CORPORATION, ANADARKO E&P COMPANY LP, AND
MOEX OFFSHORE 2007 LLC REGARDING PROPOSED TRIAL STRUCTURE

## I. INTRODUCTION

Anadarko Petroleum Corporation, Anadarko E&P Company LP (together "Anadarko"), and MOEX Offshore 2007 LLC ("MOEX Offshore") (collectively the "Non-Operating Defendants") respectfully submit this Reply Memorandum regarding the proposed structure of the February 2012 trial. The Non-Operating Defendants suggest the trial include the parties set forth in Non-Operating Defendants' proposed trial plan [Rec. Doc. 1955-1], propose a three segment trial structure with four-month breaks between segments, and ask that the Court make interim findings of fact, allocations of fault, and to the extent necessary conclusions of law, during the trial to both streamline subsequent trial segments and facilitate settlement.

The Non-Operating Defendants understand Judge Barbier's goals for the structure of the February 27, 2012 trial to be as follows:

(1) the trial should be manageable;

(2) the trial will be a bench trial;

(3) all issues relating to Pleading Bundles A, B1, and B3 that can be tried in a bench trial must be tried;

(4) there must be adequate discovery on all issues that will be tried; and

(5) to avoid delay in litigation, the trial plan should be structured to avoid interlocutory appeals, where possible.

Under the April 20 Trial Structure Proposal, the Court would hold a <u>single trial</u> that would be divided into segments separated by recesses, with each separate segment addressing discrete sets of factual issues. The Court would hold the evidence open during each recess between segments and would not close the evidence until the final trial segment has been completed. The Court would decide how many and which allocations of fault among the defendants are appropriate. The Court would not try any test or "bellwether" cases and would try only issues of fact common to many claims in the litigation. The Court would not try the quantum of damages owed by

2

defendants found at fault and would not try any issues relating to natural resource damages. Finally, the Court would not try any issues concerning the alleged health or environmental impacts associated with the use of dispersants or burning of oil as part of BP's oil spill response efforts.

Judge Shushan and Special Master McGovern asked counsel for the parties to use their reply Briefs to discuss and make recommendations on specific aspects of the April 20 Trial Structure Proposal. The Non-Operating Defendants do so below.

### B. Non-Operating Defendants' Proposed Trial Structure Vocabulary.

It is essential, first, to be precise about the meaning of terms repeatedly used during discussions of the proposed February 2012 trial structure in order to ensure that all parties and the Court are talking about the same thing. The Non-Operating Defendants propose that the Court adopt the following definitions of the terms commonly used to refer to the various sets of distinct factual issues that will be tried before the Court:

a) The phrase **Source Control** refers to those efforts by BP and others to stop the flow of hydrocarbons and prevent the further release of hydrocarbons into the Gulf of Mexico, by, for example, capping cracked riser sections, siphoning, using a capping stack, and/or killing the well.

b) The phrase **Volume of Discharge** refers to the estimated amount of hydrocarbons released to the Gulf of Mexico as a result of the *Deepwater Horizon* incident.

c) The term **Containment** refers to efforts to contain or mitigate the migration of hydrocarbons after their release into the Gulf of Mexico, by, for example, controlled burning, application of dispersants,[1] use of booms, vacuuming, and skimming.

d) The phrase **Fate and Transport** refers the migration paths and end locations of hydrocarbons released as a result of the *Deepwater Horizon*

---

[1] Issues related to controlled burning and application of dispersants will be tried during Trial Segment 3 <u>solely</u> with respect to their use in containment efforts, and no issues related to potential heath or environmental impacts of the use of dispersants or controlled burning will be addressed at this stage.

3

     incident as carried by wind, currents or other vectors and as affected by Containment efforts.

 e) The phrase **Oil Fingerprint** refers to the particular characteristics of the oil released as a result of the *Deepwater Horizon* incident that distinguish it from other oil present in the Gulf as a result of natural seepage, run-off, or other natural or man-made sources.

Agreement on the definition of these terms will eliminate any confusion among the parties and the Court as to which issues should be tried and when, and help to delimit the scope and content of the discovery that must be undertaken with respect to each set of factual issues.

 **C.** **Proposed Trial Segment Subjects and Timeline**

The Non-Operating Defendants agree with the April 20 Trial Structure Proposal in principle, though with one caveat discussed below. The Non-Operating Defendants believe that a segmented trial structure with discrete issues tried at different stages will be manageable and efficient. Judge Shushan and Special Master McGovern asked the parties to propose a schedule of subjects to be covered in each Segment of the trial, and to recommend appropriate lengths of recess periods between each Segment. The Non-Operating Defendants propose that the Court adopt a trial structure and schedule as summarized in the following table:

| Trial Segment | Issues Covered | Estimated Segment Length | Recess Period Length |
|---|---|---|---|
| 1 | Liability for Events Through April 22 | 4 Months | 4 Months |
| 2 | Source Control/ Volume of Discharge | 2-3 Months | 4 Months |
| 3 | Containment/ Fate and Transport/ Oil Fingerprint | 2-3 Months | n/a |

4

### D. Segment 1 Should Cover Liability for Events Through April 22, 2010.

In addition to issues related to Transocean's Petition for Limitation/Exoneration, Segment 1 of the trial should cover all issues related to liability and allocation of fault for events leading to the loss of well control, the blowout, the explosion and fire on the *Deepwater Horizon*, and the sinking of the *Deepwater Horizon* on April 22, 2010.  The Non-Operating Defendants submit that the events leading to the loss of well control, blowout, explosion and fire on the *Deepwater Horizon* on April 20, 2010 constitute an interrelated series of events for which the Court should allocate fault among the defendants, if any.  The events after the April 20, 2010 explosion through to the sinking of the *Deepwater Horizon* entail a separate group of issues for which the Court should render another, distinct allocation of fault among the defendants.

Whereas the events up through the April 20, 2010 explosion and fire aboard the *Deepwater Horizon* are best characterized as a failure to maintain well control, the events subsequent to the April 20, 2010 explosion are best characterized as a failure to staunch a blow-out and fire and to and keep the *Deepwater Horizon* afloat.  These are at the very least two, if not more, distinct failures, involving different players, with different levels of control, information and responsibility for resulting injuries and damages.  The Court should allocate fault among the defendants for these events separately in accordance with their relative responsibility, if any.

Nevertheless, the Non-Operating Defendants submit that Trial Segment 1 should cover both the loss of well control, blowout, and explosion <u>and</u> the subsequent fire and sinking of the *Deepwater Horizon*.  Due to the close temporal and causal relationships between the two distinct events, there are critical trial witnesses with personal knowledge of both events, and they should be called to testify only once if possible.  Not only are the two events well suited to be tried together both conceptually and as a practical matter, but discovery associated with both events is presently ongoing and will be completed before the February 27, 2012 trial date.

### E. The Court Should Render Interim Findings of Fact and Allocations of Fault After Segment 1.

Considering the complex legal and factual issues before the Court, and in the interest of fairness to all parties, the Non-Operating Defendants urge that the Court should, and must, have the flexibility to undertake as many allocations of fault as are warranted by the evidence adduced in each segment of the trial. Multiple allocations of fault will be far more manageable with the segmented approach to trial. Thus, the Non-Operating Defendants further submit that the Court should not defer <u>all</u> findings of fact until the end of the final Segment of trial. Rather, following Segment 1 of the trial, the Court should hold open the evidence only on those issues that also pertain to or are intertwined with the evidence and issues to be addressed in the subsequent trial segments. The Court should close the evidence on issues for which no additional evidence will be necessary and render <u>interim</u> findings of fact (including findings of negligence and/or gross negligence), allocations of fault, and to extent necessary conclusions of law, with respect to those issues on which all necessary evidence has been submitted.[2] Interim findings of fact and allocations of fault of this nature are authorized by the federal rules but do not trigger any right to interlocutory appeal, will streamline the subsequent trial segments, and will provide the parties with information critical for consideration of settlement.

#### 1. Interim findings of fact, allocation, and degree of fault following Segment 1 of the trial will streamline subsequent trial segments.

After the Court hears the evidence on all issues related to liability for the blowout, explosion and sinking of the *Deepwater Horizon*, the Court should close the evidence and render

---

[2] The Non-Operating Defendants, BP, Transocean, the Plaintiffs Steering Committee, the State of Alabama and Halliburton all agree that the Court should make findings of negligence and/or gross negligence in the first trial stage. *See* Memorandum in Support of Motion to Adopt Plan Proposed by PSC, Transocean Limitation Petitioners and the State of Alabama [Rec. Doc. 1951] at 4; BP Defendants' Memorandum in Support of their Proposed February 2012 Trial Plan [Rec. Doc. 1943] at 2; Halliburton Energy Services Inc.'s Brief In Support of a Proposed Trial Plan [Rec. Doc. 1953] at n.1 (adopting BP/Non-Operating Defendants' Trial Plan with certain inapplicable exceptions).

interim findings on both the degree of fault (i.e., fault and/or gross fault), if any, and the allocation of fault, on the part of each of the defendants for the events that occurred through April 22, 2010. The Court should not wait until the end of all trial segments to render these findings; otherwise, in the subsequent segments of the trial, there is a risk that witnesses will try to "clean up" testimony or evidence from prior segments, diverting time and judicial resources from the issues before the Court in that Segment. Moreover, such interim findings with respect to Segment 1 will enable the parties to tailor more finely the evidence submitted in later segments, because all issues with respect to earlier discrete issues will be closed, and the Court's findings on those issues crystallized.

### 2. Interim findings of fact, degree of fault and allocation of fault will facilitate settlement negotiations.

Interim findings of fact and findings as to the degree and allocation of fault for the events through April 22, 2010 will also help mitigate the substantial uncertainty that can act as a stumbling block in settlement negotiations. *See generally* Eldon E. Fallon *et al.*, *Bellwether Trials in Multidistrict Litigation*, 82 TUL. L. REV. 2323 (2008). If the Court renders such interim findings of fact and allocations of fault among the defendants immediately after Segment 1, the parties will have the option to use the recess period between segments to undertake meaningful settlement negotiations with the benefit of the Court's view of each party's relative share of and degree of fault relating to the loss of well control, blowout, and explosion, and for each party's relative share of and degree of fault relating to the fire aboard and sinking of the *Deepwater Horizon*. This information will assist the parties in evaluating their legal claims, defenses and potential exposure, and thus encourage out-of-court resolution of claims.

      **3.**    **The Federal Rules authorize interim findings of fact, allocation and degree of fault, and do not permit appeal as of right from such findings.**

A district court sitting without a jury may render findings of fact and conclusions of law. Fed. R. Civ. P. 52(a)-(c). In consolidated cases such as this one involving multiple claims and multiple parties, a judgment that does not dispose of <u>all claims</u> of <u>all parties</u> is appealable only if certified as the rule requires. Fed. R. Civ. P. 54(b); *see also Ringwald v. Harris,* 675 F.2d 768, 771 (5th Cir. 1982); *Trinity Broadcasting Corp. v. Eller*, 827 F.2d 673 (10th Cir. 1987), *cert. denied* 487 U.S. 1223 (invoking bright-line rule that partial judgment in consolidated action does not operate as final appealable judgment without Rule 54(b) certification). Because, under the April 20 Trial Structure Proposal, the Court would not adjudicate the actual claims of any individual plaintiff, the Court would not decide such issues as degree of injury or quantum of damages. Findings of fact solely on issues common to <u>all</u> claims will not *dispose* of <u>any</u> claims. Accordingly, the Court is authorized to enter interim findings of fact and findings as to the degree and allocation of fault among the defendants without triggering any right to appeal absent certification by the Court.

    **F.**    **Segment 2 of the Trial Should Include Both Source Control and Volume of Discharge.**

The Non-Operating Defendants propose that Segment 2 of the trial should cover all events and issues related to Source Control and Volume of Discharge, as those terms are defined above. First, discovery with respect to these complicated issues has not yet begun in earnest, and the parties will require the additional time afforded by the recess between trial segments to complete extensive and highly technical fact and expert discovery and prepare for Segment 2 of the trial. Second, for the Court to try Source Control and Volume of Discharge it will be necessary to hear and evaluate evidence regarding the United States' direction of Source Control

efforts, an area into which discovery has not yet truly commenced. Third, the issues of Source Control and Volume of Discharge are causally and factually interconnected, because the length of the period of time that the discharge continued is, at least in part, determinative of the ultimate volume of the discharge.

### G. Segment 3 of the Trial Should Cover Containment, Fate and Transport, and Oil Fingerprint.

The Court should try in the final segment all issues related to Containment, Fate and Transport, and Oil Fingerprint, as those terms are defined above. These three categories of issues are distinct and will require entirely different types of evidence, but are nonetheless logically interrelated. In order to try the efficacy of post-spill containment efforts, it will be necessary to hear evidence and determine, to the extent possible, the full extent of the migration, condition and end locations of the hydrocarbons released as a result of the *Deepwater Horizon* incident. In turn, in order to determine the migration paths, condition and end locations of the hydrocarbons, the Court must try issues related to the Oil Fingerprint, so that there can be a meaningful determination of where the specific hydrocarbons released as a result of the incident actually impacted. Neither fact nor expert discovery has begun yet on any of these issues. These three issues are also potentially the most scientifically challenging and complex of the issues to be tried and will involve the analysis of such experts as oceanographers, chemists, physicists, engineers, and geologists, just to name a few examples. Accordingly, these three issues will require the longest period of time in which to conduct expert discovery, which will remain ongoing throughout all trial segments.

### H. Four-Month Recess Periods to Conduct Additional Discovery and Prepare for Trial on the Next Segment are Reasonable Under the Circumstances.

The Non-Operating Defendants submit that a four-month recess between each trial segment is a reasonable period of time for the parties to expeditiously complete fact and expert

9

discovery on issues related to the next segment of the trial and make necessary trial preparations for the next segment. Indeed, four months is probably the least amount of time in which it will be possible for the parties to meaningfully complete these activities and be ready for the next trial segment. Additionally, as noted, after each segment of the trial it is possible the various parties will want to engage in at least exploratory settlement negotiations, efforts that the Court should encourage by affording the parties enough time to investigate settlement options while also preparing for trial.

## II.     CONCLUSION

For the foregoing reasons, the Non-Operating Defendants respectfully submit that the Court should adopt the April 20 Trial Structure Proposal with the modifications and clarifications set forth herein, including interim findings of fact, findings as to the degree and allocations of fault, and to the extent necessary conclusions of law, immediately following the first and second segments of the trial.

Respectfully submitted,

DATED: April 26, 2011                    BINGHAM McCUTCHEN, LLP

/s/ *Ky E. Kirby*_____
Ky E. Kirby
ky.kirby@bingham.com
David B. Salmons
david.salmons@bingham.com
Michael B. Wigmore
michael.wigmore@bingham.com
Warren Anthony Fitch
tony.fitch@bingham.com
Randall M. Levine
randall.levine@bingham.com
2020 K Street, NW
Washington, DC 20006-1806
Telephone (202) 373-6000

Facsimile (202) 373-6001

James J. Dragna
jim.dragna@bingham.com
Bingham McCutchen LLP
355 South Grand Avenue
Suite 4400
Los Angeles, California 90071-3106
Telephone (213) 680-6436
Facsimile (213) 680-8636

KUCHLER POLK SCHELL
WEINER & RICHESON, LLC

Deborah D. Kuchler, T.A. (La. Bar No. 17013)
dkuchler@kuchlerpolk.com
Janika Polk (La. Bar No. 27608)
jpolk@kuchlerpolk.com
Robert Guidry (La. Bar No. 28064)
rguidry@kuchlerpolk.com
1615 Poydras Street, Suite 1300
New Orleans, LA  70112
Tel:  (504) 592-0691
Fax:  (504) 592-0696

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, pursuant to Pre-trial Order No. 12, I have caused the foregoing to be served on all counsel via the Lexis Nexis File & Serve system, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, who will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on April 26, 2011.



_____/s/ *Ky E. Kirby*_____
Ky E. Kirby