**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG § <br> "DEEPWATER HORIZON" in the § <br> GULF OF MEXICO, on § <br> APRIL 20, 2010 § <br> § <br> THIS DOCUMENT RELATES TO: § <br> § <br> *10-cv-3059 and 11-cv-0516* § | | MDL-2179 <br> <br> <br> SECTION "J" <br> <br> JUDGE BARBIER <br> MAG. JUDGE SHUSHAN |

*******************************************************************************

**LOUISIANA'S**
**TRIAL PLAN REPLY**

**NOW INTO COURT**, through undersigned counsel, comes the Plaintiff, the State of Louisiana through its Attorney General James D. "Buddy" Caldwell, who respectfully requests the opportunity to participate in the impending trial planning process. As this Court has stated, "[e]ach state that files a claim in this litigation has a right to its own representation, and to advance its own claims." (See 1/28/11 Hearing Transcript, p. 12). The Court's ultimate decisions regarding trial plans inescapably impact Louisiana's right to advance its own claims. Since Louisiana, Alabama and the Federal government are not aligned on many trial issues, Louisiana believes it makes sense for each sovereign to participate so as to ensure a final trial sequencing plan of optimal efficiency.

**BACKGROUND**

The events of April 20, 2010 reflect two very different tragedies. First there was the explosion that killed and injured so many workers. These individuals and their families deserve prompt justice in an admiralty limitations trial.[1] At the same time, the uncontrolled release of oil

---

[1] Louisiana respectfully asks that this Court consider Judge Ellison's prior recognition of this fundamental and well-settled distinction, which made clear that the Transocean Limitation action cannot compromise governmental oil

that began that day, and the despoliation of the environment that continues to the present in many forms, including ongoing oiling of Louisiana's coast, is a very different disaster, governed by a different set of rules under OPA and various penalty statutes and state law. Louisiana's interest is in working with the Court to develop a plan for expeditiously litigating that environmental disaster---including the associated drilling moratorium---and the economic and environmental losses resulting therefrom.

Accordingly, Louisiana has opted not to participate in what it thought was to be a traditional Limitation trial, or first phase trial. The PSC's own "Claimant FAQs" for prospective plaintiffs likewise describes a narrow Limitation trial:

> **What is the limitation trial about?**
>
> Transocean, the owner of the Deepwater Horizon oil rig, wants to limit what it has to pay claimants under Maritime law. The Limitation Trial forces all people who have claims resulting from the oil spill to make any claims against Transocean in one proceeding (the trial). In that proceeding, the Court is asked to decide whether Transocean can limit its liability (or what it is responsible to pay) under the law. Transocean is trying to limit damages to $27 million.
>
> The Court will also determine other issues, such as the liability (if any) of Transocean, BP, and the other Defendants, whether they are liable for gross negligence, and the amount of fault between and among all of the Defendants. Gross negligence involves a reckless disregard for the safety of others, and may form the basis of a punitive damage award.

Because the PSC has focused on the admiralty claims to the exclusion of other claims, the OPA issues would appear to an outsider to have been ignored, or relegated to an unacceptably inconsequential place in the Limitation case. Further muddying the picture now is the potential

---

spill claims. (See Judge Ellison's Order of June 14, 2010, 4:10-cv-1721, S.D. Tex., Rec. Doc. 131). [1] This Court's own Order Continuing Limitation Trial (Doc 473) suggested a traditional trial, stating that "[o]nly the issues of liability and limitation will be tried, with issues relating to damages to be severed and tried separately."

addition of unspecified triable issues impacting OPA and penalty claims to what was thought to have been a simple Limitation case.  Nevertheless, Louisiana would like to work with other parties to help develop a sequence of triable issues for the Court going forward.

## **POSITION**

Louisiana's interest should not be affected by a traditional Limitation trial.  However, it is important to note that the Court had set the Limitation cut-off date prior to the articulation of a trial plan.  Since the trial plan is unclear and remains unresolved, Louisiana reserves its right to participate in aspects of the trial to the extent it contains factual and legal issues which potentially affect its interest.  Louisiana remains open to participating in the development of an efficient adjudicatory process so as to address "evidence" or "fact clusters," such as barrels of oil released,[2] rather than a process that is based on resolving legal claims made by parties.

Louisiana has no objection to the Court going forward on February 27, 2012, with a wrongful death/personal injury Limitation trial.  Louisiana agrees with the United States, BP, Cameron and Halliburton on this point.  In particular, Louisiana generally supports the United States' position that the trial phases should be based solely upon "evidence" and should proceed with the intent of establishing evidence, rather than as a means of "organizing legal rulings or conclusions."

Moreover, if all defendants have no objection to trying admiralty allocation issues among themselves at that time, Louisiana does not object to the extent that only the defendants are bound.  If all defendants (including those demanding a jury trial) agree to base their distinct OPA contribution allocations on that same basis, Louisiana has no objection.

---

[2] Louisiana civil penalties turn on days the oil remains in the Gulf and the ongoing re-oiling, and Louisiana believes this issue could be tried in tandem with the United States' efforts on barrels released.

The State does object, however, to the extent the PSC and others wish to make the trial about either OPA liability fault apportionment, or about "issues" that may not exist as a matter of law, or that will confuse or prejudice the State's adjudication of substantive OPA claims later.[3] The trial should not be used to try a relatively weak *Robins Dry Dock* claim and subsequently extrapolate conclusions on OPA liability and allocation.  At this point, the trial court has yet to rule on whether the so-called *Robins Dry Dock* claims survived the passage of OPA, and replies to the Motions to Dismiss have yet to be filed.  At the very least, Congress passed OPA to address the shortcomings of *Robins Dry Dock*.  In the alternative, there are other ways to try these relevant facts.

A more efficient process would have been for all stakeholders to confer in the first instance about how to handle OPA and state penalty claims, and then look to economies.  This was not done here, and the result is the missed opportunity to try individual or state OPA claims for economic loss before *Robins Dry Dock.*  A great deal of inefficiency has been generated as the parties argue about a highly speculative matter, i.e., the impact of the Limitation trial on other non-limitation matters.

The PSC has cited no authority to allow this Court to turn over the trial of the State's issues to the PSC.[4]  The PSC-Transocean plan effectively excludes Louisiana.  (See "Transocean's Opposition to State of Louisiana's Memorandum Regarding The Relevance of

---

[3] Louisiana also objects on due process grounds both to its exclusion from various in Chambers meetings to discuss the trial plan, and to the apparent effort to simultaneously try so many issues at once, which creates serious risks to the parties' due process rights.  "Due process mandates that a judicial proceeding give all parties an opportunity to be heard on the critical and decisive allegations which go to the core of the parties' claim or defense and to present evidence on the contested facts."  *Columbus-America Discovery Group v. Arlantic Mut. Ins. Co.*, 974 F.2d 450, (4th Cir. 1992).

[4] The PSC's approach, for example, is unclear on the potential impact of the Limitation case on state and federal penalty claims.  It is not clear if fact-finding regarding the gross negligence and/or willful misconduct of the defendants as well as the total number of barrels of oil actually discharged are to be definitively resolved as part of the Limitation proceeding.

Deposition Testimony of Witnesses" (Rec. Doc. 1992) (stating that "Importantly, the SOL is not even a party to the Limitation proceeding. Nor is the SOL contemplated as a party to the February 2012 trial in any of the parties' proposed trial plans")). But as this Court and the Fifth Circuit has recognized, Louisiana has a right to manage and try its own case. (See Fifth Circuit Order in *In re State of Louisiana, No. 11-30178*). Louisiana assumes this means that nothing in the Limitation trial will be binding on the State in any way if it does not participate. Thus, Louisiana will be allowed to try its own case even if it requires the re-calling of witnesses in multiple trials to provide testimony on facts already determined. On the other hand, the State is willing to try to find common ground to promote overall efficiency.

The United States' recommendation that the trial focus on the adjudication of "facts" or "evidence" instead of the PSC's "issues" makes more sense as a vehicle to move this litigation forward, though it should be emphasized that Louisiana does not advocate an approach that will result in an impermissible piecemeal adjudication of claims.

## **CONCLUSION**

In short, the Court's admiralty jurisdiction cannot be expanded in the manner proposed by the PSC, Transocean and Alabama. There is an environmental case here that can and should be coordinated, but not ignored. Capping, controlling and containing the leaking well, as proposed by the PSC for its second fault allocation trial, are environmental facts, not traditional admiralty facts. The admiralty liability and damages issues for the wrongful death and personal injury cases have nothing to do with Louisiana's OPA claims, and it likewise follows that admiralty *allocation* issues are not common, nor are BP's OPA contribution claims common, to Louisiana's claims.

Dated this 26th day of April, 2011.

Respectfully submitted,

| | |
|---|---|
| JAMES D. "BUDDY" CALDWELL<br>LOUISIANA ATTORNEY GENERAL<br><br>James Trey Phillips<br>First Assistant Attorney General<br>Megan K. Terrell<br>Assistant Attorney General<br>Section Chief –Environmental<br>State of Louisiana<br>P.O. Box 94005<br>Baton Rouge, LA 70804-9005<br>Telephone: (225) 326-6708 | KANNER & WHITELEY, LLC<br><br>/s/ Allan Kanner<br>Allan Kanner<br>Elizabeth B. Petersen<br>David A. Pote<br>701 Camp Street<br>New Orleans, LA 70130<br>Telephone: (504) 524-5777<br>**Special Counsel for Plaintiff**<br>**Attorney General, State of Louisiana** |
| HENRY DART,<br>ATTORNEYS AT LAW P.C.<br><br>/s/ Henry T. Dart<br>Henry T. Dart<br>Grady J. Flattmann<br>510 N. Jefferson St.<br>Covington, LA 70433<br>Telephone: (985) 809-8093<br>**Special Counsel for Plaintiff**<br>**Attorney General, State of Louisiana** | USRY, WEEKS, &<br>MATTHEWS, APLC<br><br>/s/ T. Allen Usry<br>T. Allen Usry<br>1615 Poydras St.<br>Suite 12<br>New Orleans, LA 70112<br>Telephone: (504) 592-4641<br>**Special Counsel for Plaintiff**<br>**Attorney General, State of Louisiana** |
| SHOWS, CALI, BERTHELOT &<br>WALSH, LLP<br><br>/s/ E. Wade Shows<br>E. Wade Shows<br>628 St. Louis Street<br>Baton Rouge, LA 70802<br>Telephone: (225) 346-1461<br>**Special Counsel for Plaintiff**<br>**Attorney General, State of Louisiana** | MARTEN LAW, PLLC<br><br>/s/ Bradley M. Marten<br>Bradley M. Marten<br>Linda R. Larson<br>1191 Second Avenue<br>Suite 2200<br>Seattle, WA 98101<br>(206) 292-2600<br>**Special Counsel for Plaintiff**<br>**Attorney General, State of Louisiana** |

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Louisiana's Trial Plan Reply has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 26th day of April, 2011.

        Kanner & Whiteley, L.L.C.

        /s/ Allan Kanner
        Allan Kanner
        a.kanner@kanner-law.com