# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "*DEEPWATER HORIZON*" in the GULF OF MEXICO, on APRIL 20, 2010 | * * * | MDL NO. 2179 SECTION : J JUDGE BARBIER |
| THIS DOCUMENT RELATES TO ALL CASES AND CONSOLIDATED ACTIONS IN MDL NO. 2179 AND *COMPLAINT AND PETITION OF TRITON ASSET LEASING GMBH, ET AL*, NO. 10-2771 | * * * * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## REPLY MEMORANDUM IN SUPPORT OF TRIAL PLAN PROPOSED BY PSC, TRANSOCEAN LIMITATION PETITIONERS AND THE STATE OF ALABAMA

The Plaintiffs Steering Committee, joined by the Transocean Petitioners in the Limitation Action, and the State of Alabama, who have jointly submitted a proposed trial plan (the "Joint Trial Plan"), respectfully submit this reply to the various trial plans and supporting memoranda submitted by the BP Defendants ("BP"),[1] Anadarko, Halliburton Energy Services Inc. ("HESI"), Cameron International Corporation ("Cameron"), and the State of Louisiana (collectively, the "Competing Plans").

The Competing Plans generally advocate for a multiple "phase" trial (or trials) with the first phase confined to a so-called pure limitation action, with liability issues restricted to personal injury, wrongful death claims, and "property damage claims asserted in the limitation

---

[1] Weatherford U.S., L.P. joins in BP's proposed Trial Plan (Rec. Doc. 1952).

action that are not alleged to be based on oil spill damage."[2]  These plans seek to drive an imaginary and arbitrary wedge between so-called "casualty" events that contributed to the blow-out and explosion of April 20, 2010 and those events occurring both before and after April 20 which relate to the extent and duration of the oil spill, due to lack of preparation before the blow-out and source control issues following the spill. These Competing Plans suggest, along these lines, that the Court "may not and should not" include economic loss claims in the February 2012 trial.[3]

The Competing Plans' effort to completely divorce consideration of economic damages claims from the February 2012 trial ignores the true complexion of the MDL and Limitation action—a single set of static facts common to all parties and claims that are relative to both (1) the blow-out, explosion and fire (the "Casualty") and (2) the uncontrolled flow of oil (the "Spill").   Contrary to the Competing Plans' assertions, this static set of facts implicate overlapping risks, witnesses, events, and other facts, which should be tried only once in February 2012.

Attached to this Reply are a "trial issues" outline, which identifies the key issues to be tried.  (Exhibit "A")  Also attached is "trial and discovery timeline", which depicts the logistics of accomplishing the fact and expert discovery attendant to the proposed trial plan.  (Exhibit "B")  The outline and timeline are consistent with the recent discussions among the parties and Special Master McGovern regarding the issues to be tried and the timing and sequencing of discovery in relation to the issues that are to be tried beginning February 27, 2012.

---

[2] Cameron's Trial Plan Brief, p.1 of 13 (Rec. Doc. 1940).
[3] *Id.*

1. **THE JOINT TRIAL PLAN IS A COLLABORATIVE EFFORT, DESIGNED TO MAXIMIZE JUDICIAL EFFICIENCY, MINIMIZE COMPLEXITY, AND HASTEN JUST RESULTS**

The Joint Trial Plan is a collaborative effort, and is the only plan prepared and submitted jointly by stakeholders in the Limitation Action and MDL.  While the interests of the parties to the Joint Trial Plan are divergent on the merits of the litigation, they are aligned in their position that:  (1) justice and equity are best served by conducting a single trial on the main liability issues, made from a single note of evidence and (2) the District Court has vast discretion to structure the trial to meet that end.

The Joint Trial Plan is best for the MDL because a "single note" of related evidence which cuts across almost all types of actions and claims asserted within the Limitation (and otherwise within the MDL), including both the personal injury and wrongful death claims subject to the proposed first allocation of fault, as well as the anticipated 100,000 or so economic loss and property damage claims that will be the subject of the second fault allocation.  Despite BP's claims to the contrary, because the second fault allocation will include consideration of the same facts and evidence related to the first fault allocation, settled legal principles of causation are preserved, (and not ignored, as BP claims).

Moreover, the February, 2012 trial *cannot* be conveniently isolated to the events prior to and including April 22, 2010.   Because economic loss claims constitute 99% of the claims at issue, to be of significance, the February 2012 trial must address the failures on preparing for the spill, source control issues, and evidence related to the volume of the discharge.  Phasing out liability and the allocation of fault, and imposing artificial temporal barriers to the claims and evidence, as the Competing Plans suggest, will result in delay, complicate and confuse the

3

presentation of evidence, and unnecessarily result in the inefficient adjudication of multiple trials on common facts and issues.

The Joint Trial Plan's second fault allocation is the only proposal that provides for the immediate ability to proceed to damages test trials on a range of issues and varying test cases. While the PSC is prepared to name "test" plaintiffs, based on the Gulf Coast Claims Facility's aggressiveness in settling claims, including personal injury and wrongful death claims,[4] the selection of test or "bellwether" issues for future specific causation and damage trials may be a viable alternative to picking individual plaintiffs who may settle before trial.    In fact, pursuant to the Joint Trial Plan, the February 2012 trial could proceed on certain main liability issues, with the naming of specific plaintiffs reserved until after trial.   Nevertheless, and in any event, it is clear that a justiciable controversy exists between and among the 100,000 or so Limitation claims, as well as the claims between and among the 14(c) Defendants, which can be tried on the salient issues in accordance with the Court's admiralty jurisdiction and Rule 42.   In particular, the February 2012 trial should address the issues identified on the trial outline attached as Exhibit "A":

## 2.   THE NATURE OF THE CLAIMS IN LIMITATION ACTION

By seeking to restrict the February 2012 trial to limitation and Rule 9(h) wrongful death and personal injury claims, the Competing Plans simply ignore the overwhelming majority of the individual limitation claims—economic loss damages.   As of April 18, 2010, approximately **100,000 economic loss claims** have been filed in the Limitation.   Conversely, the current universe of wrongful death and personal injury claims in the Limitation is approximately **70**.   Of these 70 cases, most are expected to settle in the coming months, and therefore it is likely that

---

[4] For example, in a March 20, 2011 Wall Street Journal article, it was reported that the GCCF was in "advanced negotiations" on two wrongful death claims and evaluating another.

only a handful, if any, will be around in February 2012.[5]   Therefore, the Competing Plans are a recipe for disaster because, at best, this matter will proceed to trial on a mere fraction (less than 1%) of the claims at issue, with 99% of the remaining Limitation claims (most of which are economic loss claims) to be tried at some undetermined future date.   And, the few personal injury or wrongful death claims which might be left will have little to no relevance in terms of the Court's ability to effectively move forward with the economic loss claims.   Whereas the issues relevant to the economic loss claims, in terms of the causes and duration of the oil spill itself, will likely lay some of the groundwork with respect to the penalty claims of the United States and perhaps elements of other state, local government and/or private claims.

Considering the common issues of fact and evidence that bind the personal injury, wrongful death and economic loss claims, a trial limited to the blow-out and explosion of April 20, 2010 would be a vast waste of judicial resources that would devalue the thousands of hours and tens of millions of dollars spent by the parties to date, without reducing the complexity of the case or improving the overall quality of the trial.   In this regard, it is BP and the Competing Plans that "ignore[] the limitation claims".[6]

### 3.  BP IS ALONE IN ARGUING FOR A SINGLE ALLOCATION OF FAULT

The United States, HESI, Cameron, and Anadarko all agree with the PSC, Transocean, and the State of Alabama that multiple allocations of fault are warranted if in fact economic loss claims are part of the February 2012 trial.[7]   While the Joint Trial Plan calls for a second

---

[5] Kenneth Feinberg recently reported that it was the goal of the Gulf Coast Claims Facility to settle the claims of 90% of oil spill victims, therefore keeping them out of court, and that this goal was attainable.  David Hammer, *"Oil spill claims czar Kenneth Feinberg is 'bloodied, but unbowed'"*, Times-Picayune, April 17, 2011.

[6] In fact, BP proposes to hold the 100,000 economic loss claims in abeyance until "Phase" 3 of the trial, when the parties "would begin the process of trying the various source control and spill response issues." *BP Defendants' Memorandum in Support of Their Proposed February 2012 Trial Plan*, p. 22 of 25 (Rec.Doc. 1943).

[7] *See* Rec.Doc. 1946, at p. 1 of 15 (U.S.); Rec.Doc. 1953, p.2 of 7 (HESI); Rec. Doc. 1940, 11 of 13 (Cameron); Rec.Doc. 1955, p. 1 of 10(Anadarko)

allocation of fault for the economic loss claims, the United States, HESI, Cameron, and Anadarko propose reserving the economic loss fault allocation for a later "Phase" or "Segment" of trial, in which the Court will consider "cumulative evidence" on issues of source control and other post-spill efforts.[8]

BP stands alone in advocating for a single allocation of fault.[9]   BP claims that any potential liability and fault allocated in the First Allocation of Fault (per BP "the phase one Casualty phase") would be erased by the Joint Trial Plan's proposed Second (economic loss) Fault Allocation.   BP's argument is that the proposed Second Fault Allocation will require the District Court to determine, "without evidence, that damages occurring after April 20, 2010 were not (and could not have been) proximately caused by the explosions and fire that occurred on April 20, 2010, as well as actions and omissions that caused or contributed to the uncontrolled flow of oil following the loss of the rig on April 22, 2010".[10]   This is pure fiction.

To the contrary, the Joint Trial Plan's proposed two allocations will not be "determined in isolation" nor decided without evidence, but will be based on a single note of evidence.  Stated differently, pursuant to the Joint Trial Plan, the evidence before the Court for the Second Fault Allocation will be cumulative and incorporate the evidence of the First Fault Allocation:

> The Second Fault Allocation **will include evidence related to the First Fault Allocation**, but would also take into account any aggravating effects of negligence, gross negligence an/or willful misconduct of Defendants before or after April 20 related to the post-April 20 efforts to cap the well (i.e. "source control"), which affected the duration of the spill.[11]

In fact, the Joint Trial Plan acknowledges that, as a general precept of tort law, whoever caused or contributed to the "Casualty" (the proposed First Fault Allocation) may also be, as a matter of

---

[8] *See e.g.* Rec.Doc. 1953, p. 3 of 7.
[9] *BP Defendants' Memorandum in Support of Their Proposed February 2012 Trial Plan*, p. 3 of 25 (Rec.Doc. 1943).
[10] *Id.,* at  8 of 25 (Rec.Doc. 1943).
[11] Joint Trial Plan, ¶ 4(b) (Rec. Doc. 1951-1) (emphasis added).

causation, legally responsible for the economic damages caused by the spill (the proposed Second Fault Allocation).  The Second Fault Allocation will not "excuse" any negligence or other fault of the parties (as BP suggests), rather it will specifically account for that liability as it relates to well source control and the volume of oil spilled.

A second fault allocation for Rule 9(h) claims for economic loss is necessary because the fault allocation among the parties may change based on additional acts or omissions (occurring both before and after the "casualty") that may have further caused or contributed to the alleged economic loss.  Curiously, BP attacks the Joint Trial Plan for impermissibly "allocating fault separately for later consequences,"[12] but proposes a single fault allocation decided in the first "Phase" of trial, which will in turn apply to a minimum six additional "phases" of trial.  BP stands alone in its argument, and its proposal should be denied.

### 4. EXCLUDING ECONOMIC LOSS CLAIMS FROM THE LIMITATION TRIAL WILL RESULT IN STAGGERING INEFFICIENCIES AND WASTE OF JUDICIAL RESOURCES

BP's proposal for a single allocation of fault, addressing less than 1% of the claims at issue, will result in a tremendous waste of resources, time, and money.  BP recognizes that its first "phase" of trial (on limitation and the 70 personal injury and wrongful death claims) likely involves

> …thousands of exhibits and well over 100 to 200 fact and expert witnesses, each of whom will be subject to examination by 10 different parties ….[13]

But, BP suggests that adding issues related to economic damages will require significantly more fact and expert witnesses, more exhibits and more parties, and render the Limitation trial "entirely unmanageable."[14]  BP's claims are not grounded in fact.

---

[12] *Id.* at 10 of 25.
[13] *Id.* at 15 of 25.

Rather, many of the "100 to 200" witnesses that will testify on issues related to the "casualty" will also be the witnesses that will testify regarding well source control and other aspects of the single note of evidence as it relates to the 100,000 or so economic loss claims. Likewise, much of the documentary evidence is common to all claims. There is a significant amount of overlap in the evidence related to the Joint Trial Plan's two allocations of fault. BP's claim that the Joint Trial Plan's two allocations of fault require some compartmentalized division of testimony and evidence is a red herring.

Pursuant to BP's claims, separating the trial into distinct phases will necessarily require the Court to consider and rule on the same evidence a minimum of two times. Such a result would be wasteful, and BP's position is ostensibly based on its desire to delay, at all costs, a meaningful allocation of fault for the 100,000 or so economic loss claims. As a result, the Joint Trial Plan "is clearly superior" to BP's proposed "alternative of repeating, hundreds of times over, the litigation of [the same issues] with … days of the same witnesses, exhibits and issues from trial to trial." *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 473 (5th Cir. 1986).

## 5. "RESPONDER" AND "DISPERSANT" DEFENDANTS ARE NOT NECESSARY FOR THE SECOND ALLOCATION OF FAULT

Anadarko and HESI suggest that economic damages claim (and therefore the second allocation of fault) cannot be included in the February 2012 trial because they are "significantly different" from the personal injury and wrongful death claims, and "clearly" implicate the "Responder" and "Dispersant" Defendants.[15] However, at this time, no party has alleged that the "Responder" or "Dispersant" Defendants are legally at fault or otherwise responsible for any of the Limitation Claimants' economic losses. Thus, as the case currently stands, there is no basis to include those defendants at trial.

---

[14] *Id.*
[15] *See, e.g.*, Rec. Doc. 1953 (pp.2-3 of 7)(HESI).

**6.   THE JOINT TRIAL PLAN PROPOSES A TRIAL OF CLAIMS, NOT ABSTRACT ISSUES**

As pointed out in the principal Memorandum in Support of the Joint Trial Plan (Rec. Doc. 1951), the claims to be tried in the Limitation arise from and can be litigated on common evidence and issues of law.   The Limitation claimants are ***not*** class representatives, as all parties who have filed claims in the Limitation are before the court.  Nor are the Test Plaintiffs (if any) purporting to represent other claimants in Limitation or absent "classmembers".  That a general liability determination and allocation of fault relative to the Limitation claimants' claims, whether for personal injury, wrongful death, or economic damages, can be made in a single trial on all common issues and based on a single note of common evidence does not mean the Limitation claims are being tried in the abstract.  The common issues of liability and fault are tethered to the actual claims because the underlying acts and omissions that give rise to general liability are the same for each claimant.  Simply put, the basic facts relative to the blow-out and well source control are static.  Under the Joint Trial Plan, the static common facts will be tried once.  Specific issues of causation and damages will be tried in subsequent trials, once the court has adjudicated the static aspects of the litigation, which necessarily impact and shape every claim.

All parties falling within the Court's admiralty jurisdiction—or, at the very least all parties who have filed claims in the Limitation—are before the Court, with claims that can be consolidated and bi-furcated under Rule 42 and/or under the inherent power and authority of the Court.  Thus, the February 2012 trial is a trial that adjudicates the parties' claims, and is not a "hearing on freestanding issues" as Cameron contends.[16]  Therefore, Cameron's arguments about "trying claims, not issues" are without merit.

---

[16] Rec. Doc. 1940, p. 10 of 13.

### 7.  A JURY TRIAL IS NOT REQUIRED OR APPROPRIATE IN THIS LIMITATION ACTION

Cameron contends that the Limitation trial should be by jury.  The Seventh Amendment preserves the right to trial by jury "[i]n Suits at common law, where the value in controversy ... exceed[s] twenty dollars." U.S. CONST. AMEND. VII.  As the Supreme Court stated long ago, "the phrase 'common law,' found in this clause, is used in contradistinction to equity, and admiralty, and maritime jurisprudence." *Parsons v. Bedford, Breedlove & Robeson,* 28 U.S. 433, 446 (1830).  The Seventh Amendment has thus been understood not to extend the right to a jury trial to cases in admiralty, which have historically been tried without juries. *See Fitzgerald v. U.S. Lines Co.,* 374 U.S. 16, 20 (1963); *see also Waring v. Clarke,* 46 U.S. 441, 460,(1847).  This long-standing principle is, of course, recognized in this Circuit. *See Rachal v. Ingram Corp.,* 795 F.2d 1210, 1216 (5th Cir.1986) (noting that "it is uncontested that admiralty jurisdiction gives no right to a jury trial").   Moreover, this general principle is preserved in Rule 38(e) of the Federal Rules of Civil Procedure:

> These rules shall not be construed to create a right to trial by jury of the issues in an admiralty or maritime claim within the meaning of Rule 9(h).

Fed. R. Civ. P. 38(e).  Furthermore, even when the Court has concurrent jurisdiction under admiralty and some other source, (*e.g.*, pursuant to the Outer Continental Shelf Lands Act, or based on Federal Question under the Oil Pollution Act), Rule 9(h) of the Federal Rules of Civil Procedure grants *the plaintiff* the right to elect how to proceed:

> If a claim for relief is within the admiralty or maritime jurisdiction and also within the court's subject-matter jurisdiction on some other ground, the pleading may designate the claim as an admiralty or maritime claim for purposes of Rules 14(c), 38(e), and 82 and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. A claim cognizable only in the admiralty or maritime jurisdiction is an admiralty or maritime claim for those purposes, whether or not so designated.

Fed. R. Civ. P. 9(h).  Federal Rule of Civil Procedure 9(h) was adopted in order to "preserv[e] the present power *of the pleader* to determine whether the [ ] historically maritime procedures," such as the non-jury trial, would be "applicable to his claim or not." Fed. R. Civ. P. 9(h), ADVISORY COMMITTEE'S NOTE, 39 F.R.D. 69, 75 (1966) (emphasis added).[17]

As this Court has held, the fact that an alternative basis for subject-matter jurisdiction may exist is inconsequential, as "[t]he Fifth Circuit has made clear that whenever there are two or more possible bases of federal jurisdiction, including Admiralty, a plaintiff can elect to proceed on the Admiralty side of the Court." *In re Graham Offshore*, 2000 WL 1263225, * 2 (E.D.La. 2000) (citing *T.N.T. Marine Serv., Inc. v. Weaver Shipyards & Dry Docks, Inc.,* 702 F.2d 585 (5th Cir.1983)); *see also, Romero,* 515 F.2d 1249, 1252 (5th Cir. 1975) (holding that Rule 9(h) is the "device by which the [plaintiff] may claim the special benefits of admiralty procedures and remedies, including a nonjury trial, when the [complaint] show[s] that both admiralty and some other basis for federal jurisdiction exist"); *Durden v. Exxon Corp.,* 803 F.2d 845, 849 n. 10 (5th Cir. 1986) (noting that Rule 9(h) "preserv[es] ... the *plaintiff's* right to choose the procedural consequences of a civil or admiralty action, by choosing the jurisdictional basis of the action and designating that basis in the complaint") (emphasis added).

While a limitation action is pending, "there is no right to a jury trial."  *In re Mississippi Limestone Corp.*, No. 4:09-CV-00036, 2010 WL 4174631 (N.D. Miss 10/7/2010) citing Fed. R.

---

[17] The adoption and advancement of the proposed Joint Trial Plan by the Plaintiffs' Steering Committee and the State of Alabama should not be construed as a waiver of the right (if any) of any plaintiff to invoke a jury trial with respect to some or all of that plaintiff's claims arising from the Spill.  The State of Alabama, in particular, has demanded a jury trial against the Defendants, including the Limitation Petitioners, in the transferor court, in both their original and amended complaints.  Because the State of Alabama has claims against the Limitation Petitioners, it intends to appear as a limitation claimant in the February 2012 trial. While the question of whether the issues and claims not decided in the February 2012 trial can be tried before a jury in subsequent proceedings is likely premature, as is the potential application of res judicata and/or offensive or defensive collateral estoppel to some or all issues, actions and/or claims in subsequent trials, the Plaintiffs' goal is to preserve and protect the State of Alabama's right (and that of other plaintiffs, where properly invoked) to seek a trial by jury on all claims not decided in the Rule 9(h) limitation and liability trial.

Civ. P. 38(e) (providing that there is no right to a jury of issues in an admiralty or maritime action).   A District Court presiding over a Limitation action may elect to order a common issue trial on issues such as privity and seaworthiness, liability, and allocation of fault.   Accordingly, because the claims subject to the first liability and fault allocation are Rule 9(h) personal injury/wrongful death claims, and the claims making up the second liability and fault allocation are Rule 9(h) claims for economic losses, the fact that an alternative basis for subject-matter jurisdiction may exist is inconsequential. Under the law of this Circuit, "whenever there are two or more possible bases of federal jurisdiction, including Admiralty, a plaintiff can elect to proceed on the Admiralty side of the Court." *In re Graham Offshore*, 2000 WL 1263225, * 2 (E.D.La. 2000).   Here, the claims in the limitation action are designated Rule 9(h) admiralty claims, and as a result, the Limitation should be tried without a jury, despite the possibility that federal jurisdiction under OSCLA may also exist.   *See, Romero,* 515 F.2d at 1252 (5th Cir. 1975).[18]   And, Cameron's claim is without merit.

Accordingly, for the reasons stated above, and in the original memorandum in support of the Joint Trial Plan, the Court should adopt the Joint Trial Plan submitted by Plaintiffs Steering Committee, joined by the Transocean Petitioners in the Limitation Action, and the State of Alabama.

Dated:   April 26, 2011

Respectfully submitted,


/s/ Stephen J. Herman                               /s/ James Parkerson Roy
**STEPHEN J. HERMAN** (La. Bar #23129)     **JAMES PARKERSON ROY** (La. Bar #11511)

---

[18] In the alternative, should the Court determine that Cameron is entitled to a jury on its OSCLA claims, an advisory jury could be impaneled, but used only in an advisory capacity with respect to the Limitation Action. *See Solet v. CN Producing Corp.,* 908 F.Supp. 375, 378 (E.D.La.1995)(holding that a hybrid trail on maritime and at law claims would take place before a jury, but with respect to the claims against the vessel owner and the vessel operator, the jury would be used in an advisory capacity pursuant to Rule 39(c).)

**HERMAN HERMAN KATZ & COTLAR, LLP**
820 O'Keefe Avenue
New Orleans, LA 70113
Office: (504) 581-4892
Telefax: (504) 569-6024
E-Mail: sherman@hhkc.com
*Plaintiffs' Liaison Counsel*

**DOMENGEAUX WRIGHT ROY & EDWARDS LLC**
556 Jefferson Street, Suite 500
Lafayette, LA 70501
Office: (337) 233-3033
Telefax: (337) 233-2796
E-Mail: jimr@wrightroy.com
*Plaintiffs' Liaison Counsel*

## PLAINTIFFS' STEERING COMMITTEE

| | |
|---|---|
| Brian H. Barr<br>LEVIN, PAPANTONIO, THOMAS,<br>MITHCELL, ECHSNER & PROCTOR, PA<br>316 South Baylen Street, Suite 600<br>Pensacola, FL 32502-5996<br>Office: (850) 435-7045<br>Telefax: (850) 436-6187<br>E-Mail: bbarr@levinlaw.com | Robin L. Greenwald<br>WEITZ & LUXENBERG, PC<br>700 Broadway<br>New York, NY 10003<br>Office: (212) 558-5802<br>Telefax: (212) 344-5461<br>E-Mail: rgeeenwald@weitzlux.com |
| Jeffrey A. Breit<br>BREIT DRESCHER & IMPREVENTO<br>999 Waterside Drive, Suite 1000<br>Norfolk, VA 23510<br>Office: (757) 670-3888<br>Telefax: (757) 670-3895<br>E-Mail: jbreit@bdbmail.com | Rhon E. Jones<br>BEASLEY, ALLEN, CROW, METHVIN,<br>PORTIS & MILES, P.C.<br>218 Commerce Street, P.O. Box 4160<br>Montgomery, AL 36104<br>Office: (334) 269-2343<br>Telefax: (334) 954-7555<br>E-Mail: rhon.jones@beasleyallen.com |
| Elizabeth J. Cabraser<br>LIEFF, CABRASER, HEIMANN &<br>BERNSTEIN, LLP<br>275 Battery Street, 29th Floor<br>San Francisco, CA 94111-3339<br>Office: (415) 956-1000<br>Telefax: (415) 956-1008<br>E-Mail: ecabraser@lchb.com | Matthew E. Lundy<br>LUNDY, LUNDY, SOILEAU & SOUTH, LLP<br>501 Broad Street<br>Lake Charles, LA 70601<br>Office: (337) 439-0707<br>Telefax: (337) 439-1029<br>E-Mail: mlundy@lundylawllp.com |
| Philip F. Cossich, Jr.<br>COSSICH, SUMICH, PARSIOLA &<br>TAYLOR<br>8397 Highway 23, Suite 100 | Michael C. Palmintier<br>deGRAVELLES, PALMINTIER,<br>HOLTHAUS & FRUGÉ<br>618 Main Street |

| | |
|---|---|
| Belle Chasse, LA  70037<br>Office:  (504) 394-9000<br>Telefax:  (504) 394-9110<br>E-Mail:  pcossich@cossichlaw.com<br><br>Robert T. Cunningham<br>CUNNINGHAM BOUNDS, LLC<br>1601 Dauphin Street, P.O. Box 66705<br>Mobile, AL  36660<br>Office:  (251) 471-6191<br>Telefax:  (251) 479-1031<br>E-Mail:  rtc@cunninghambounds.com<br><br>Alphonso Michael "Mike" Espy<br>MORGAN & MORGAN, P.A.<br>188 East Capitol Street, Suite 777<br>Jackson, MS  39201<br>Office:  (601) 949-3388<br>Telefax:  (601) 949-3399<br>E-mail:  mike@mikespy.com<br><br><br>Calvin C. Fayard, Jr.<br>FAYARD & HONEYCUTT<br>519 Florida Avenue, SW<br>Denham Springs, LA  70726<br>Office:  (225) 664-4193<br>Telefax:  (225) 664-6925<br>E-Mail:  calvinfayard@fayardlaw.com<br><br>Ervin A. Gonzalez<br>COLSON HICKS EIDSON<br>255 Alhambra Circle, Penthouse<br>Coral Gables, FL  33134<br>Office:  (305) 476-7400<br>Telefax:  (305) 476-7444<br>E-Mail:  Ervin@colson.com | Baton Rouge, LA  70801-1910<br>Office:  (225) 344-3735<br>Telefax:  (225) 344-0522<br>E-Mail:  mpalmintier@dphf-law.com<br><br>Paul M. Sterbcow<br>LEWIS, KULLMAN, STERBCOW &<br>ABRAMSON<br>601 Poydras Street, Suite 2615<br>New Orleans, LA  70130<br>Office:  (504) 588-1500<br>Telefax:  (504) 588-1514<br>E-Mail:  psterbcow@lksalaw.com<br><br>Scott Summy<br>BARON & BUDD, P.C.<br>3102 Oak Lawn Avenue, Suite 1100<br>Dallas, TX  75219<br>Office:  (214) 521-3605<br>Telefax:  (214) 599-1172<br>E-Mail:  ssummy@baronbudd.com<br><br><br>Mikal C. Watts (PSC)<br>WATTS GUERRA CRAFT, LLP<br>Four Dominion Drive, Building 3, Suite 100<br>San Antonio, TX  78257<br>Office:  (210) 447-0500<br>Telefax:  (210) 447-0501<br>E-Mail:  mcwatts@wgclawfirm.com |

## COUNSEL FOR TRANSOCEAN DEFENDANTS

| | | |
|---|---|---|
| By: | /s/ Steven L. Roberts<br>Steven L. Roberts (Texas, No. 17019300)<br>Rachel Giesber Clingman (Texas, No. 00784125) | /s/ Kerry J. Miller<br>Kerry J. Miller (Louisiana, No. 24562)<br>Frilot L.L.C.<br>1100 Poydras Street, Suite 3700 |

| | |
|---|---|
| Kent C. Sullivan (Texas, No. 19487300)<br>Teri L. Donaldson (Florida, No. 784310)<br>Sutherland Asbill & Brennan LLP<br>1001 Fannin Street, Suite 3700<br>Houston, TX  77002<br>Telephone: (713) 470-6100<br>Facsimile: (713) 654-1301<br>E-Mail: steven.roberts@sutherland.com,<br>rachel.clingman@sutherland.com,<br>kent.sullivan@sutherland.com,<br>teri.donaldson@sutherland.com | New Orleans, LA 70163<br>Telephone: (504) 599-8169<br>Facsimile: (504) 599-8154<br>E-Mail: kmiller@frilot.com<br><br>-and-<br><br>/s/ Edwin G. Preis, Jr.<br>Edwin G. Preis, Jr. (Louisiana, No. 10703)<br>Edward F. Kohnke, IV (Louisiana, No. 07824)<br>Preis & Roy PLC<br>102 Versailles Boulevard, Suite 400<br>Lafayette, LA 70501<br>Telephone: (337) 237-6062<br>Facsimile: (337) 237-9129<br><br>-and-<br><br>601 Poydras Street, Suite 1700<br>New Orleans, LA 70130<br>Telephone: (504) 581-6062<br>Facsimile: (504) 522-9129<br>E-Mail:  egp@preisroy.com, efk@preisroy.com |

Of Counsel:

Daniel O. Goforth (Texas, No. 08064000)
Goforth Geren Easterling LLP
4900 Woodway, Suite 750
Houston, TX 77056
Office:  (713) 650-0022
Telefax:  (713) 650-1669
E-Mail:  dangoforth@goforthlaw.com

John M. Elsley (Texas, No. 0591950)
Royston, Rayzor, Vickery & Williams LLP
711 Louisiana Street, Suite 500
Houston, TX 77002
Office:  (713) 224-8380
Telefax:  (713) 225-9945
E-Mail:  john.elsley@roystonlaw.com

Brad D. Brian (California, No. 79001)
Allen M. Katz (California, No. 054933)
Munger Tolles & Olson LLP

355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071
Office:  (213) 683-9100
Telefax:  (213) 683-5180, (213) 683-4018
E-Mail:  brad.brian@mto.com, allen.katz@mto.com

### COUNSEL FOR THE STATE OF ALABAMA

LUTHER STRANGE (ASB-0036-G42L)
Attorney General of the State of Alabama Office of the Attorney General
501 Washington Avenue
Montgomery, Alabama 36130
Telephone: (334) 242-7300
E-Mail: luther.strange@ago.state.al.us

*Counsel for the State of Alabama*
*Coordinating Counsel for the States*