**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater | § | |
| Horizon" in the Gulf of Mexico on April 20, | § | MDL No. 2179 |
| 2010. | § | SECTION "J" |
| | § | |
| | § | JUDGE BARBIER |
| This Document Relates to: | § | |
| *STATE OF VERACRUZ, REPUB. OF MEXICO v.* | § | MAGISTRATE SHUSHAN |
| *BP PLC,* No. 10-4239 | § | |
| *STATE OF TAMAULIPAS, REPUB. OF MEXICO v.* | § | |
| *BP PLC,* No. 10-4240 | § | |
| *STATE OF QUINTANA ROO, REPUB. OF* | § | |
| *MEXICO v. BP PLC*, No. 10-4241 | § | |

**CONSOLIDATED MEMORANDUM IN RESPONSE AND OPPOSITION BY
PLAINTIFFS' STATE OF VERACRUZ, STATE OF TAMAULIPAS, AND STATE OF
QUINTANA ROO TO BP DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED.
R. CIV. P. 12(B)(1)& 12(B)(6) COMPLAINTS FILED BY CERTAIN
GOVERNMENTAL ENTITIES IN PLEADING BUNDLE C AND THE ARGUMENTS
AND CONTENTIONS ASSERTED BY BP DEFENDANTS IN MEMORANDUM IN
SUPPORT OF BP DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R.
CIV. P. 12(B)(1)& 12(B)(6) COMPLAINTS FILED BY CERTAIN GOVERNMENTAL
ENTITIES IN PLEADING BUNDLE C**

TABLE OF CONTENTS

1. PRELIMINARY.................................................................................................1

2. CONCEPTUAL FRAMEWORK........................................................................2

3. PLAINTIFFS CAN MAINTAIN THEIR STATE CLAIMS BASED
   ON OTHER JURISDICTIONAL BASIS.............................................................5

4. BP'S MISCHARACTERIZATION OF THE COMPLAINTS............................6
   A. Plaintiffs' Allegations Ignored by BP........................................................6
   B. The Alleged Absence of Proximate Cause................................................11
   C. BP's Inapplicable Economic Loss Rule....................................................15

5. OPA EXPRESSLY PERMITS THE ASSERTION OF STATE CLAIMS..........17

   A.   OPA Does Not Preempt State Claims.........................................................18

   B.   Application Of OCSLA Does Not Preempt State Claims.............................25

        i.     BP's Argument Hinges On Unresolved Factual
               Issues And Such Arguments Are Not Supports
               by Competent Evidence...............................................................25

        ii.    BP Distorts the Holdings of the Cases Upon Which
               it relies .........................................................................................30

        iii.   OCSLA Does Not Bar State Claims, Alone or
               Through OPA................................................................................34

6. OPA's PRESENTATION REQUIREMENT IS NOT JURISDICTIONAL........39

7. CHALLENGES TO PLAINTIFFS' FOREIGN CLAIMANT STATUS.............45

   A.   Compliance With Treaty Requirements Under OPA.............................45
   B.   BP's Trustee for Natural Resources Argument.....................................46

8. CONCLUSION..............................................................................................48

## TABLE OF AUTHORITIES

**STATUTES**

U.S. CONST. Article III § 2...........................................................................................5,6,39

Fed. R. Civ.P.12 (B) (1)..................................................................................................1

Fed. R. Civ. P. 12(B)(6).............................................................................................1,2,35

28 U.S.C. § 1331............................................................................................................5

28 U.S.C. § 1332.........................................................................................................5,39

28 U.S.C. § 1603(a).......................................................................................................5

33 U.S.C. § 2707.....................................................................................................14,45,46

33 U.S.C. § 2707 (c)(3)..............................................................................................14,46

33. U.S.C. § 2713..........................................................................................................44

33 U.S.C. § 2717.................................................................................................24,25,42,43

33. U.S.C. § 2718...........................................................................18, 19, 20,23,24,36,37

33. U.S.C. § 2719 (a)(2)................................................................................................19

42. U.S.C. § 6901..........................................................................................................19

43 U.S.C. §§ 1331(f).....................................................................................................5,33

43 U.S.C. § 1332(2).......................................................................................................27

43 U.S.C. § 1333(a)....................................................................................................5, 27,33

§ 7 of the Death on the High Seas Act. .....................................................................35,36,37

**TREATIES**

Agreement of Cooperation Between the United States of America and the United Mexican States Regarding Pollution of the Marine Environment by Discharges of Hydrocarbons and Other Hazardous Substances (signed 1980)........................... 34,46

MEXUS Plan ("Joint Contingency Plan Between the United Mexican States and the United States of America Regarding Pollution of the Marine Environment By Discharges of Hydrocarbons or Other Hazardous Substances....................…........34,46

MEXUS Plan's Gulf Geographic Annex ("MEXUS GULF ANNEX")(Signed Nov. 7, 2007). MEXUS GULF ANNEX......................................................................…..................14,46

Cartagena Convention (effective June 8, 2000)("Convention for the Protection and Development of the Marine Environment in the Wider Caribbean Region")...........................................................................................................35,46

1992 Civil Liability Convention...............................................................35,46

TIAS; 2143 UNTS 405 - Treaty on Maritime Boundaries between the United States of America and the United Mexican States (Signed May 4, 1978; Ratified November 13, 1997)...........................................................................................…........7,16,46

## AUTHORITY

*Aguirre v. Nueces County,* 2007 U. S. App. LEXIS 3028 (5th Cir. 2007).............................30

*Arbaugh v. Y & H Corp.,* 546 U.S. 500 (2006)...............................................…....39,40

*Boca Ciega Hotel, Inc. v. Brouchard Transportation Co.,* 51 F. 3d 235 (11th Cir. 1995)..........................................................................23,43,44,45

*City of Uvalde v. Crow,* 713 S.W. 2d 154, (Tex. App.—Texarkana 1986)......................17

*Eason v. Thaler,* 73 F. 3d 1322 (5th Cir. 1996)...................................................30

*Egorov, Puchinsky, Afanasiev & Juring v. Terriberry, Carroll & Yancey,* 183 F. 3d 453, (5th Cir. 1999)...........................................................................................27

*Freedman v. Briarcroft Prop. Owners, Inc.,* 776 S.W.2d 212 (Tex. App.—Houston [14th Dist.] 1989, writ den...........................................................................16

*Ft. Worth & Rio Grande Ry v. Glenn,* 80 S.W. 992, (Tex. 1904)................................16

*Grand Isle Shipyard Inc. v. Seacor Marine, LLC,* 589 F. 3d 778 (5th Cir. 2009)...............25

*Hails v. Atlantic Richfield Co.,* 595 F. Supp 948, (W.D. La. 1984).........................28

*Hemi Group, LLC v. City of New York,* ___ U.S. ___, 130 S. Ct. 983 (2010)...........................12

*Henderson v. Erick K. Shinseki, Sect'y of Veterans Affairs,* 131 U.S. 1197 (2010)...........................................................................................19,36,41

*Int'l Paper Co. v. Ouellete,* 479 U.S. 481 (1987)................................................................30, 31, 32

*In re Ballard Shipping Co. v. Beach Shellfish,* 32 F. 3d 623 (1st Cir. 1994)........................23

*Isla Corp. v. Sundown Energy, LP,* 2007 U.S. Dist. LEXIS 31259 (E.D. La. 2007)...........................................................................................................................20,23,24,35

*Leboeuf v. Texaco,* 9 F. Supp. 2d 661 (E.D. La. 1998).......................................................43

*Marathon Pipe Line Co., v. LaRoche Industries, Inc.,* 944 F. Supp. 476 (E.D. La. 1996)......................................................................................................................................44

*Morris v. Covan Worldwide Moving, Inc.,* 144 F. 3d. 377 (5th Cir. 1998)........................30

*Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207 (1986)...............................27,34,35,36

*Principality of Monaco v. Mississippi,* 292 U.S. 313..........................................................5

*Raffray v. Gulf Logistics, LLC,* 2010 U.S. Dist. LEXIS 133912 *15(E.D. La. 2010)...............................................................................................................................27,28

*Ray v. Tandem Computers, Inc.,* 63 F. 3d 429 (5th Cir. 1995)...........................................30

*Rice v. Harken Exploration Co.,* 89 f. Supp. 2d 820(N.D. Tex. 1999)................................33

*Robins Dry Dock & Repair v. Flint,* 275 U.S. 303 (1927)...................................................15

*Rodrigue v. Aetna Casualty & Surety Co.,* 395 U.S. 352 (1969)........................................27

*Russo v. M/T Dubai Star,* 2010 U.S. LEXIS 50967 (N.D. Ca. 2010).......................................23

*Sanamo v. Trico Marine Services, Inc.,* 73 Fed. Appx. 79, 2003 WL 21756647 (5th Cir. 2003)..................................................................................................................28

*Schneider Nat'l Carriers, Inc. v. Bates,* 147 S.W.3d 264 (Tex. 2004)................................16

*Smith v. Pan Am Air Corp.,* 684 F. 2d. 1102 (5th Cir. 1982)..............................................28

*S. Port Marine, LLC v. Gulf Oil L.P.,* 234 F. 3d 58 (1st Cir. 2000)..................................20,22

*Steel Co. v. Citizens for Better Environment,* 523 U.S. 83 (1998).....................................40

*Tangius v. M/V Westchester,* 153 F. Supp. 2d 859 (E.D. La. 2001)..................21,23,24,38

*Tenn. Gas Pipeline v. Houston Cas. Ins. Co.,* 87 F. 3d 150 (5th Cir. 1992)....................32,33

*The St. Joe Co. v. Transocean Offshore Deepwater Drilling, Inc.,* 2011 U.S. Dist. LEXIS 26391 (D. Del. 2011)...........................................................................21,24,32

*Turner v. Murphy Oil USA, Inc.,* 2005 U.S. Dist. LEXIS 45123 (E.D. La. 2005)..........44,45

*Union Pacific R. Co. v. Locomotive Engineers and Trainmen Gen. Comm. Of Adjustment, Central Region,* 130 S. Ct. 584 (2009)......................................39,40,41,42,44

*Union Texas Petroleum Corp. v. PLT Engineering, Inc.,* 895 F. 2d 1043, 1047 (5th Cir. 1990)....................................................................................................................................25

*U.S. v. M/V Cosco Busan*, 557 F. Supp. 2d 1058, 1063 (N.D. Ca. 2008)...........35,36,42,43

*U.S. v. Locke*, 529 U.S 89 (2000)........................................................................22,23

*U.S. v. M/V Cosco Busan,* 557 F. Supp. 1058, (N.D. Ca. 2008)...............................22

*U.S. v. Pickett*, 598 F.3d 231 (5th Cir. 2010).........................................................28

*Vann v. Bowie Sewerage Co.,* 90 S.W.2d 561 (Tex. 1936).....................................17

*Vestal v. Gulf Oil Corp.,* 235 S.W.2d 440 (Tex. 1951)........................................... 17

*Vicksburg Towing Co v. Miss. Marine Trans. Co.*, 609 F. 2d 176 (5th Cir. 1980).............15

*Williams v. Potomac Elec. Power Co.,* 115 F. Supp. 2d 561 (D. Md. 2000).....22,23,24,35

*Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385 (1982)......................................41,42,44

**MISCELLANEOUS**

*Oxford American Dictionary & Thesaurus,* p. 1017 (2003)......................................19

COME NOW STATE OF VERACRUZ, REPUBLIC OF MEXICO; STATE OF TAMAULIPAS, REPUBLIC OF MEXICO; AND STATE OF QUINTANA ROO, REPUBLIC OF MEXICO (hereinafter referred to as "Plaintiffs" or "Mexican States") and hereby file their Consolidated Memorandum in Response and Opposition to the BP Defendants' Motion To Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) & 12(b)(6) Complaints Filed By Certain Governmental Entities in Pleading Bundle C, and in support thereof, would respectfully show the following:

### 1.    PRELIMINARY.

Plaintiffs oppose BP Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)& 12(b)(6) Complaints Filed By Certain Governmental Entities in Pleading Bundle C and the arguments and contentions asserted by BP Defendants in Memorandum in Support of BP Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)& 12(b)(6) Complaints Filed By Certain Governmental Entities in Pleading Bundle C (hereinafter "BP's Memorandum."). Accordingly, Plaintiffs respectfully submit that said BP's Motion should be denied.

Moreover, Plaintiffs note that they are in the process of seeking leave to amend their First Amended Complaints through the filing of a Motion seeking leave to file their Second Amended Complaints. Said Motion will be filed on or near the date of the filing of this Consolidated Memorandum. Accordingly, many, if not all, of BP's challenges to the allegations herein will be mooted by such Second Amended Complaint. Nevertheless, Plaintiffs will address herein the misapplication of legal precedent, BP's distortions of Plaintiffs' allegations in their First Amended Complaint, and other unmerited contentions raised by BP.

1

## 2.      CONCEPTUAL FRAMEWORK.

Manifesting a reluctance to be judged under the laws of the U.S. states BP and others have despoiled, BP urges dismissal of all of Plaintiffs' state claims, arguing that the Oil Pollution Act, 33 U.S.C. § 2701 *et seq.* ("OPA") —and nothing but OPA— applies. BP's miscomprehension of the applicable statutory framework and pertinent case law is addressed below. However, it is instructive to note herein that BP's recently filed pleadings against other co-Defendants, asserts BP's own **state** law claims, although purportedly brought as OPA or admiralty claims. Thus, while expending considerable resources of this Court with its arguments herein that state claims cannot be maintained, BP has filed claims almost identical to some of those alleged by Plaintiffs. For example, in it's BP's Cross-Complaint and Third-Party Complaint Against Halliburton (Doc. No. 2082), BP alleges that Halliburton engaged in the following:

- Fraudulent Conduct (Count I--Par. 117, *etc.*);
- Fraudulent Concealment (Count II—Par. 125, *etc.*);
- Negligence and Fault (Count III—Par. 132, *etc.*).

Additionally, BP raises numerous state claims (also couched as OPA and/or maritime claims) against another co-defendant, Cameron. BP thus asserts the following state law claims:

- Negligence in design and maintenance of the blow out preventer. (Section J, Par. 57, *etc.*);
- Negligence in the Maintenance of the Blowout Preventer (Section K. Par. 71, etc.);
- Negligent Modification of the Blow Out Preventer (Section L. Par. 77 *etc.*).

(BP Exploration & Production Inc.'s Third-Party Complaint Against Cameron International Corp., (Doc. No. 2065).

Similarly, Halliburton (while also contending that Plaintiffs cannot maintain their state law claims or even maritime claims), judicially abandons these contentions and asserts state law claims against BP, also couched as maritime claims. In its Original Cross-Claims of Defendant Halliburton Energy Services, Inc. (Doc. No. 2085), Halliburton alleges the following state law claims:

### Count III—NEGLIGENCE/GROSS NEGLIGENCE/WILLFUL MISCONDUCT

42. The damages and injuries alleged by Plaintiffs/Claimants occurred as a result of the negligence of BP, Anadarko E&P, [continuing with additional parties]. These acts of negligence render these Cross-Defendants liable pursuant to the provisions of 46 USC § 30104 and the general maritime law, **or other applicable law for negligence**. (emphasis added).

43. BP was negligent, grossly negligent, and/or acted with willful misconduct in at least the following ways . . .[listing many of the same negligent actions asserted by Plaintiffs herein].

Halliburton proceeds to allege negligence against Cameron (Par. 51); negligence, gross negligence, and willful misconduct against Weatherford (Par. 52); Negligence against M-1, Dril-Quip, and others (Par. 53, 54, 55, respectively). It also alleges claims of strict products liability against Cameron in Count III (Par. 57-60).

Transocean, too, has filed claims based on state law seeking affirmative relief thereunder. (See, Transocean's Rule 13 Cross-Claims/Counter-Claims (Doc. No. 2068). Thus, Transocean alleges that it was not at fault, but that the spill and explosion were caused "in whole or in part by negligent acts, omissions or culpable conduct of the Cross-Defendants . . ." (*Id.* at Par. 65 and Par. 129). Transocean continues: "Each of the Cross-Defendants named herein is jointly, severally, and/or solidarily liable under various principles of general maritime law *and/or applicable state and/or applicable federal tort law."* (emphasis added). *Id.* at Par. 66).

Clearly, BP, as well as the other Defendants herein, is quick to abandon its own preemption arguments when *its* interests and claims are being presented to the Court. Thus, while arguing that Plaintiffs cannot assert their state law claims, BP unabashedly files its own state claims, calling them "admiralty" or "OPA" claims. Plaintiffs' comments in this regard should not be misconstrued as arguing that BP cannot maintain these state claims. It can—just like Plaintiffs herein can do so as well. Plaintiffs do note, however, that there is nothing in OPA, the Outer Continental Shelf Act, or any other principle of law that would give BP preferential treatment allowing it to assert state tort claims, while denying Plaintiffs the same right to do so. This is particularly true since BP's efforts to eradicate the application of state law claims ignore both statutory language and well-settled judicial principles.

Apart from the glaring inconsistencies in BP's position noted above, BP's Motion distorts not only OPA and the Outer Continental Shelf Lands Act ("OCSLA"), but also the allegations in Plaintiffs' Amended Complaints. BP's Motion also ignores Plaintiffs' additional underpinnings for this Court's jurisdiction over Plaintiffs' claims. Therefore, regardless of the outcome of the Court's determinations regarding other issues herein, **Plaintiffs are entitled to maintain their claims herein under diversity jurisdiction and the U.S. Constitution**. Additionally, BP's contentions, in large part, hinge on "factual" assertions on issues which have yet to be determined through evidence, discovery, or otherwise. As demonstrated below, BP's arguments are without foundation and, therefore, BP's Motion to Dismiss should be denied in its entirety.

### 3.    PLAINTIFFS CAN MAINTAIN THEIR STATE CLAIMS BASED ON OTHER JURISDICTIONAL BASES.

In addition to asserting federal question jurisdiction under 28 U.S.C. § 1331 by virtue of Plaintiff's claims under the Oil Pollution Act ("OPA"), Plaintiffs have asserted jurisdiction under several other provisions. For example, they assert jurisdiction under 28 U.S.C. Section 1331 and the federally adopted state laws under the Outer Continental Shelf Lands Act. 43 U.S.C. §§ 1331(f) (1) and 1333(a) (2). Additionally, jurisdiction is vested and conferred by Article III, § 2 of the United States Constitution inasmuch as this case between a foreign state and the citizens of a State of the United States. (Par. 29, Plaintiffs' First Amended Complaints). *E.g., Principality of Monaco v. Mississippi,* 292 U.S. 313, 323 n. 2 ("There is no question but that foreign States may sue private parties in the federal courts."). Plaintiffs further assert jurisdiction pursuant to 28 U.S.C. Section 1332 based on diversity of citizenship and the amount in controversy. (Par. 29, Plaintiffs' First Amended Complaints). This Court has jurisdiction pursuant to 28 U.S.C. Section 1332(a)(4), because this matter in controversy vastly exceeds the minimum jurisdictional amount of $75,000, exclusive of interest and costs, and this case is between Plaintiff (a foreign state, as defined in 28 U.S.C. § 1603(a)) and citizens of a State or of different States.

Although BP seeks dismissal of Plaintiffs' state law claims and has otherwise asserted that they cannot be maintained through either OPA or OCSLA (which Plaintiffs dispute), BP's Motion does not challenge Plaintiffs' rights to maintain these state claims under the alternative jurisdictional vehicles, *i.e.*, diversity jurisdiction and/or Art. III, § 2 of the U.S. Constitution. While Plaintiffs submit that BP's Motion is completely without merit and that it should be denied in its entirety, Plaintiffs

also note that regardless of this Court's determination based on OPA and/or OCSLA, Plaintiffs' state claims remain viable under this Court's alternate diversity and constitutional jurisdiction.

## 4.      BP'S MISCHARACTERIZATION OF THE COMPLAINTS.

### A.      Plaintiffs' Allegations Ignored by BP.

At the outset, it is important to note that BP attempts to minimize, ignore, avoid, and distort the nature of the allegations against it and the nature of the damages incurred by Plaintiffs. BP, overlooking or consciously ignoring a multitude of allegations by Plaintiffs, presents such unmeritorious arguments as follows:

> 1) that Plaintiffs have not sufficiently pled "proximate cause" because they "do not allege, for example, any damages that 'result from' the oil spill or that are 'due to the injury, destruction or loss of real property, personal property, or natural resources." (P. 12, BP's Memorandum); and

> 2) In the absence of allegations of an injury to property, the "Economic Loss" rule precludes recovery of damages (p. 16, BP's Memorandum).

However, even a cursory review of Plaintiffs' allegations demonstrates BP's contentions are not grounded on a fair and complete reading of Plaintiffs' allegations.[1] For example, Plaintiffs have presented numerous allegations that Defendants' (including BP's) actions and omissions proximately caused, caused, resulted in, or otherwise led to damages of its property, waters, natural resources and other interests.

---

[1] Since the filing of Plaintiffs' First Amended Complaints, the negative effects and damages resulting from the oil spill and dispersants have been aggravated by winds, tides and weather—allegations which Plaintiffs are in the process of seeking leave to file a Second Amended Complaint with the Court's permission. Accordingly, many of BP's arguments herein will be mooted by such Second Amended Complaint.

At the outset of their Amended Complaints, Plaintiffs asserted that Plaintiffs are states comprising part of the Republic of Mexico. (Par. 1 and 7, Plaintiffs' Amended Complaints). *All Plaintiffs have shorelines and waters as to which they possess governmental and proprietary interests in that they own, manage, control, maintain, use, develop, govern, and protect these natural resources and their related environments.* (emphasis added) (Par. 2, 5, 6, Plaintiffs' Amended Complaints). Significantly, as acknowledged by treaties between the United States and Mexico, Mexico's waters extend deeply into the Gulf of Mexico up to and touching the United States' territorial waters. (Treaty on Maritime Boundaries between the United States of America and the United Mexican States, May 4, 1978, Entered into force November 13, 1997). Within these Mexican-controlled waters which border and are contiguous with the U.S. waters covered by the oil spill herein, Mexico has an Exclusive Economic Zone as to which Mexico and the *Mexican States have exclusive rights, including the exclusive rights to control, regulate, and economically develop, among others.* Oil spills and dispersants do not respect international (or state) boundaries and consequently, *the devastating effects of the oil spill have already been felt in Plaintiffs' waters and shorelines.* (*E.g.,* Par. 2, 3, and 41 of Plaintiffs' Amended Complaints). Contrary to BP's mischaracterization of Plaintiffs' Amended Complaints, Plaintiffs *do* allege that damages have *already* occurred and *do* assert claims for *past*, current, and future damages that "were caused" by BP's actions and omissions, as well as those of the other Defendants. A few examples follow:[2]

---

[2] In the interests of brevity, all three of Plaintiffs' Amended Complaints are sometimes referred to collectively as "Plaintiffs' Complaints").

- [Plaintiff] brings this [action] against Defendants for losses, injuries, and damages **arising out of** the catastrophic and avoidable oil spill in the Gulf of Mexico ....". **(** Par. 2, Plaintiffs' Complaints);

- As a **direct and proximate result** of the mismanagement, omissions, and negligence which permeated Defendants' operations and activities on and related to the Deepwater Horizon which led to the disastrous explosion and oil spill, Plaintiff **has suffered** and in the future will suffer severe economic, environmental, and other damages as further set forth below. (Par. 3 of Plaintiffs' Complaints);

- With the wellhead's prolonged gushing of tens of thousands of gallons of oil per day into the waters of the Gulf of Mexico and/or the Caribbean, Plaintiff **has suffered, is suffering**, and will continue to suffer **serious financial losses and damages,** including, but not limited to, lost profits, incurred present and future expenses related to preventive measures and scientific studies, lost business, diminution of the tourist and related industries, and other damages and injuries. (Par. 6, of Plaintiffs' Complaints);

- [Plaintiffs] rel[y] on the natural resources found in the Gulf of Mexico and Caribbean waters and such natural resources are **now damaged** and further endange**red by the wrongful acts** of Defendants. (Par. 7, of Plaintiffs' Complaints);

- **As a result of** the events described herein, Plaintiff **has suffered** and will continue to suffer injuries, losses, and damages. . .". (Par. 8, of all Plaintiffs' Complaints);

- Fishing operations in the Gulf of Mexico and/or the Caribbean **have been** and will be **injured and damaged by the contaminating and destructive oil** that has killed and tainted fish and other marine life, thus significantly reducing the quantities of fish and other marine life that can be harvested for safe human consumption. The toxic oil **has** and will continue **to cause** severe financial losses to Plaintiff[s]. Additionally, **the actual effects** of the oil, along with reports of same, have **adversely affected** commerce and tourism. Plaintiff[s'] residents rely on a clean Gulf of Mexico and Caribbean, sea life, clean beaches and safe navigable waters for their livelihoods. The State[s] and its [their] citizens also rely heavily on tourism which is centered around its beautiful beaches, coral reefs, marine life, fishing, water sports, and other on-shore and offshore activities. All of this has been **jeopardized, damaged**, and severely **impacted by** Defendants' actions. (Par. 41 of Quintana Roo's Amended Complaint; See also, Par. 41 of Veracruz and Tamaulipas' Amended Complaints alleging, "Plaintiff, itself, **has had** its fishing operations **injured** and **damaged by** the contaminating and destructive oil . . .");

- Defendants knew or should have known that their negligent, grossly negligent,

willful, wanton, and/or reckless conduct **would result** in the oil disaster, **causing past,** present, and future damages to all of the shorelines and waters adjacent to the Gulf of Mexico. (Par. 45, Plaintiffs' Complaints);

- The **past, present**, and future injuries to the State were also **caused by** or **aggravated** by the fact that Defendants failed to take necessary actions to mitigate the dangers associated with their operations. (Par. 46, Plaintiffs' Complaints).

- **As a direct and proximate result** of the combining and concurring negligence and wantonness of all Defendants, the State **has** and will continue to be **damaged**, including, but not limited to, in the manners delineated herein. There are many other potential effects from the oil spill that have not yet become known, and Plaintiff reserves the right to amend this Complaint once additional information becomes available. (Par. 48, Plaintiffs' Complaints);

- Additionally, the injuries to Plaintiff also **were caused** by or **aggravated** by the fact that Defendants failed to take necessary actions to mitigate the danger associated with their operations. Defendants' initial response to the disaster was ineffective and only intensified the damage. (Par. 52, Plaintiffs' Complaints);

- ... the damages **incurred to date** for which Defendants are jointly and severally liable to Plaintiff include, but are not limited, to: [listing a specification of damages] (Par. 55, Plaintiffs' Complaints);

- **As a direct and proximate result of** Defendants wanton or reckless conduct, Plaintiff **has suffered** legal injury and damages, in an amount to be proven at trial, including, but not limited to, loss of profits, revenues, loss of income, and other economic loss. (Par. 61, Plaintiffs' Complaints);

- Defendants' violations of these statutory standards **proximately caused** Plaintiff's injuries, warranting compensatory and punitive damages. (Par. 67, Plaintiffs' Complaints);

- **As a result of** the disaster and Defendants' gross negligence or willful misconduct with respect to the acts and omissions alleged herein, all responsible parties **have caused** and are liable for the following **past, present,** and future expenses and damages Plaintiff **has suffered**, which damages are the type of damages that may be recovered pursuant to the Oil Pollution Act. Plaintiff demands compensation from Defendants in amounts to be determined by the trier of fact, said amounts to include: [listing damages]. (Par. 72, Plaintiffs' Complaints);

- As a **direct and proximate result of** Defendants' nuisance generating conduct and nuisance continuation conduct, Plaintiff **has suffered** loss of income and other damages. (Par. 76, Plaintiffs' Complaints);

- The conduct of Defendants unreasonably **interfered** with the public health and safety. (Par. 79, Plaintiffs' Complaints);

- Defendants' acts and omissions with respect to the release of oil, dispersants, and other materials and substances will cause and continue to cause a material, substantial and unreasonable interference with the use and enjoyment of the waters, property, estuaries, seabed, animals, plants, beaches, shorelines, coral reefs, coastlines, marshlands, and other natural and economic resources of the State . . . Furthermore, **Defendants have caused** damage and injury **to same and to Plaintiff**. (Par. 80, Plaintiffs' Complaints);

- The conduct of Defendants **caused** Plaintiff to suffer particular damages distinct from the general public. As a **direct and proximate result** of Defendants' nuisance generating conduct and nuisance continuation conduct, Plaintiff and its citizens **have suffered** past, present, and future losses, by way of example, loss of income; loss of revenue for the State; expenditures of substantial amounts to combat, abate, and prepare for the oil spill; and other damages. (Par. 81, Plaintiffs' Complaints).

- **As a direct and proximate result of** Defendants' nuisance generating conduct, Plaintiff **has suffered** loss of income and other damages. (Par. 83, Plaintiffs' Complaints);

- Furthermore, the Prayer for Relief lists **past, present**, and future damages among the relief sought. ((Paragraph VII, Plaintiffs' Complaint).

(emphasis added)

The allegation that Plaintiffs' injuries and damages were "proximately caused" by Defendant's actions and omissions appears no fewer than seven times in the above allegations. Moreover, as even a cursory review shows, the allegations are replete with other assertions that Plaintiffs' damages were "caused by," "resulted from," "arise out of" or were caused "by" BP's actions and omissions, as well as those of others. Moreover, the "past tense" of the verbs utilized in the foregoing allegations clearly demonstrate that Plaintiffs allege damages that *have already occurred,* although other portions of the Complaints do assert claims for future damages.

Similarly, BP's efforts to mischaracterize Plaintiffs' claims as aimed solely at future unrealized damages or damages unrelated to the damage to Plaintiffs' property interests, natural resources, and other interests are clearly fallacious. Plaintiffs' do allege, among other things, that their governmental and proprietary interests in their property, lands, shores and adjoining waters, wildlife, and natural resources have been damaged by the Spill:

- Par. 80, Plaintiffs' Complaints, *supra*;

- Par. 41 of Quintana Roo's Amended Complaint, *supra*; See also, Par. 41 of Veracruz and Tamaulipas' Amended Complaints, *supra,* alleging, "Plaintiff, itself, **has had** its fishing operations **injured** and **damaged** by the contaminating and destructive oil . . .");

- Par. 45, Plaintiffs' Complaints, *supra*;

- Par. 7, of Plaintiffs' Complaints, *supra*;

- Par. 81, Plaintiffs' Complaints, *supra*;

- See, also, Par. 3, 6, 8, 46, 55, 61, 72, 76, and 79 of Plaintiffs' Complaints, *supra,* alleging **past and actual** damage to Plaintiffs' proprietary and governmental interests. (emphasis added).

## B.    The Alleged Absence of Proximate Cause.

In view of the foregoing clear and unambiguous allegations, BP's contention that Plaintiffs have not alleged their damages were proximately caused by BP's actions and omissions is patently incorrect and must be rejected as devoid of any merit.   Plaintiffs' allegations can only be construed as alleging actual harm and damages caused directly and proximately by BP and others. These are clearly allegations asserting a "direct link" between BP's conduct and Plaintiffs' injuries, not a contingent or indirect one. In simple terms, there was a huge catastrophic oil spill and that oil and dispersants directly and proximately harmed Plaintiffs. These are

not allegations such as those considered in the RICO case cited by BP. *Hemi Group, LLC v. City of New York,* ___ U.S. ___, 130 S. Ct. 983 (2010). That Court addressed the relationship between the misconduct and alleged harm under RICO's "direct relationship" requirement. 130 S. Ct. at 985. Unless BP is admitting its conduct violates RICO, this case has no bearing herein. In any event, that case is clearly distinguishable because the harm alleged therein required a three or four step process to connect it to the misconduct. The City alleged that the defendant (an out-of-state seller of cigarettes) had sold cigarettes to New York City residents, that it did not report the sales to the State, and that the State, therefore, did not advise the City of the identity of the customers. As a result of the lack of information, the City argued, it could not collect the appropriate taxes from its residents who had purchased the cigarettes and decided (on their own) not to pay the taxes. In finding that the City's causation argument was too remote, the Court noted that its case depended not only on separate actions, but separate actions by separate parties. Thus, while the defendant had defrauded the state, the actual harm to the City was by a fourth party—the taxpayers who had decided not to pay taxes. *Id.* at 947.   The Court, however, showed no hesitation in finding that the State had been directly harmed by the defendant. Plaintiffs' allegations herein do not depend on such a convoluted, indirect harm by a fourth party who (after a chain of disjointed events) exercised discretion on whether or not to comply with its duties.   As noted above, Plaintiffs herein assert damages as a result of and as a direct and proximate cause of the Oil Spill. Accordingly, BP's cases are inapposite.

BP's additional element to its "proximate cause" argument attempts to inject an "amendment" to OPA by adding a geographical limitation to its scope. Thus, although apparently aimed at the claims of the Alabama cities, BP insinuates that distance precludes proximate cause.[3] BP cites no authority for the proposition that geographical distance is an element of proximate cause or that OPA has a geographical limitation. As even a casual glance at a map would reveal, Plaintiffs are in the same "bathtub" that BP and others polluted. Just as Florida and Alabama occupy the eastern borders of the Gulf and Louisiana the north, Plaintiffs occupy the western and southern edges of these same waters. In fact, even the name of the body of water at issue herein, the "Gulf of _Mexico_" gives unmistakable notice that Mexico was in close proximity and that the Plaintiff States of Mexico were located in an area that would be directly and inexorably affected by Defendants' actions and omissions.

By way of example only, discovery will demonstrate that since the Deepwater Horizon used its stabilizing thrusters to ward off the effects of cross-currents and maintain its position over the well, Defendants were aware that the Gulf is not a "static" body of water, but characterized by numerous flows, currents, and eddies. The direction of the Gulf's currents change with the season, temperature, and other climactic conditions. It is an inescapable conclusion that these currents would take an oil spill to Mexico's Exclusive Economic Zone and the waters and shores of the Plaintiff Mexican states, as well as to Louisiana and the other U.S. coastal states.

---

[3] Although this argument appears to be directed solely at the claims of the Alabama cities, Plaintiffs address this contention solely out of an abundance of caution to obviate the possibility that this spurious contention would be extended to them.

There is no physical barrier between the U.S. waters and Mexican waters—only a line on a map that Defendants' oil spill was free to ignore and did transgress. Certainly, these are factual issues to be developed through discovery or at trial, making a determination of proximate cause inappropriate at this stage. Nevertheless, these factors are "common-sense" elements that cannot be ignored. As Plaintiffs' allegations demonstrate, Mexican shorelines and waters have already been severely impacted.

Furthermore, the scope and language of OPA clearly demonstrates that Congress was concerned with addressing the effects of oil spills without regard to distances or the foreign status of claimants. Thus, Section 2707 specifically included "foreign claimants" as those who can recover under OPA and defines them as including "an agency or political subdivision of a foreign country." § 2707(c)(3). Plaintiffs clearly meet the foregoing definition and OPA itself indicates that damages to foreign claimants is readily foreseeable and recoverable under OPA. Moreover, since OPA imposes liability on "vessels" that criss-cross navigable waters, it is apparent that Congress was not concerned about limiting liability for spills in constricted geographic areas. Moreover, the foreseeability is clearly emphasized by the MEXUS Treaty between the United States and Mexico recognizing the particular dangers involved in inter-country oil spills. In particular, the MEXUSGULF ANNEX acknowledged the environmentally and economically sensitive areas along the Mexican Gulf coast, many of which are located within the boundaries of the Plaintiff State of Tamaulipas.

Therefore, proximate cause is clearly evident in Plaintiffs' allegations and BP's arguments to the contrary should be rejected.

## C.      BP's Inapplicable "Economic Loss" Rule.

As clearly demonstrated above, Plaintiffs allege in clear and uncertain terms that their property, proprietary interests, and other interests and rights have been despoiled, damaged, and polluted by the Oil Spill. Yet, BP contends that Plaintiffs have not alleged damage to property and that, consequently, Plaintiffs cannot maintain their state causes of action for negligence, gross negligence, wantonness, negligence *per se*, and public and private nuisance. (P. 16, BP's Memorandum). To support of its argument, BP overlooks Plaintiffs' allegations to the contrary and relies on an overly broad application of the rule expressed in *Robins Dry Dock & Repair v. Flint*, 275 U.S. 303 (1927).

In *Robins,* a third party attempted to sue under a contract between the dry dock and a ship owner after the dry dock had damaged the ship, preventing the third party from using it. The ship owner had settled its claims with the negligent dry dock owner. With respect to the tort claim, the Court held that the defendant's tort was only against the ship and that since the third party did not own the ship, the third party could not sue for tort. In other words, if a tort existed, it belonged to the owner of the ship, not the third party. However, where the plaintiff has an interest in the damaged property, the rule of *Robins* does not apply. *Vicksburg Towing Co v. Miss. Marine Trans. Co.*, 609 F. 2d 176 (5th Cir. 1980) (owner of damaged property could sue).  Although BP seeks to extend this holding to bar Plaintiffs' state claims the economic loss rule is inapplicable, factually and legally. As amply noted in Part

4A, above, Plaintiffs have clearly alleged actual damages to their property (real and personal), as well as other proprietary interests, as exemplified by the following:

- Par. 80, Plaintiffs' Complaints);

- Par. 41 of Quintana Roo's Amended Complaint; See also, Par. 41 of Veracruz and Tamaulipas' Amended Complaints alleging, "Plaintiff, itself, **has had** its fishing operations **injured** and **damaged** by the contaminating and destructive oil . . .");
- Par. 45, Plaintiffs' Complaints;

- Par. 7, of Plaintiffs' Complaints;

- Par. 81, Plaintiffs' Complaints;

- Par. 3, 6, 8, 46, 55, 61, 72, 76, and 79 of Plaintiffs' Complaints alleging **past and actual** damage to Plaintiffs' proprietary and governmental interests. (emphasis added).

Moreover, under the Treaty on Maritime Boundaries between the United States of America and the United Mexican States, May 4, 1978, Plaintiffs have and share an interest in Mexico's Exclusive Economic Zone, a large expanse of the Gulf of Mexico that adjoins U.S. territorial waters. As Plaintiffs have clearly alleged, these interests and rights have already been damaged by the oil spill and subsequent actions of Defendants.

Furthermore, to bring a tort action, the plaintiffs' interests need not be one based on strict "ownership" in a traditional sense since anyone who owns, occupies, or otherwise has an interest in property can maintain a claim for private nuisance. *Ft. Worth & Rio Grande Ry v. Glenn,* 80 S.W. 992, 993-4 (Tex. 1904); *Schneider Nat'l Carriers, Inc. v. Bates,* 147 S.W.3d 264, 268 n. 2 (Tex. 2004) (allowing tenant to assert claim); *Freedman v. Briarcroft Prop. Owners, Inc.,* 776 S.W.2d 212, 215-16 (Tex. App.—Houston [14th Dist.] 1989, writ den.)(property owners' association could maintain claim). Moreover, recovery for nuisance may be obtained regardless

of whether the plaintiff owns the land involved and regardless of the absence of injury to the land. *Vann v. Bowie Sewerage Co.,* 90 S.W.2d 561, 563 (Tex. 1936) (allowing recovery for personal injuries arising from foul orders from polluted creek). Nuisance actions are not limited to recovery of damage to realty, but may also recover for loss of personal property and personal injury. *Vestal v. Gulf Oil Corp.,* 235 S.W.2d 440, 441-2 (Tex. 1951) (nuisance claims can recover for loss of enjoyment and use of property, as well as for damages to health or personal comfort); *City of Uvalde v. Crow,* 713 S.W. 2d 154, 158-9 (Tex. App.—Texarkana 1986).

Here, the Plaintiffs do allege proprietary and governmental interests (*e.g.*, beaches, coral reefs, land, *etc.*). Moreover, they do allege ownership, control, management rights, and other interests in the Gulf waters adjacent to the *Deepwater Horizon* that extend uninterrupted to the very shores of the States of Mexico. In short, BP's argument is devoid of either factual or legal support.

5. **OPA EXPRESSLY PERMITS THE ASSERTION OF STATE CLAIMS.**

Reduced to its essence, BP's argument is that OPA—and no other law—applies in this litigation. (*E.g.*, Part IIA of BP's Memorandum). Thus, BP seeks dismissal of Plaintiffs' state law claims, seeking to completely eradicate the applicability of state law and supplant it entirely with OPA, notwithstanding the explicit language in OPA and the OCSLA to the contrary. Understandably, BP does not cite any case specifically holding that **state** claims are preempted, but relies only on inapposite, generalized judicial pronouncements regarding **maritime law**. Moreover, as noted above, BP and other Defendants have alleged their own state

law claims against each other, thus implicitly (and even explicitly) admitting that their arguments are fallacious. Curiously, BP does not explain how its own state court claims (*e.g.*, negligence, fraudulent conduct and concealment, *etc.*) would be saved by OPA while Plaintiffs' claims (*e.g.,* negligence, gross negligence, nuisance, *etc.*) are swept away.

BP's argument rests heavily on two untenable propositions: 1) that OPA preempts all state law claims [which it does not]; and 2) that OCSLA is the only applicable federal jurisdictional basis herein [which it is not].  As seen below, both of BP's underpinnings lack of any statutory or precedential support.

### A.      OPA Does Not Preempt State Claims.

Regardless of whether OPA is relied upon as a "stand alone" federal claim or applied through OCSLA, OPA is not so all-encompassing that it preempts or otherwise affects state law. Rather, as amply demonstrated below, OPA clearly provides that it does not affect or preempt state law and that such state claims may be maintained independently or along with OPA claims. Congress specifically provided for the contemporaneous application of state law in Section 2718:

§ 2718. Relationship to other law

(a) **Preservation of State authorities**; Solid Waste Disposal Act.

**Nothing** in this Act or the Act of March 3, 1851 shall—

(1)  affect, or be construed or interpreted as **preempting**, the authority of any State or political subdivision thereof from imposing any **additional liability or requirements** with respect to—

(A) the discharge of oil or other pollution by oil within such State; or
(B) any removal activities in connection with such a discharge; **or**

> **(2) affect, or be construed or interpreted to affect or modify in any
> way the obligations or liabilities of any person under** the Solid
> Waste Disposal Act (42 U.S.C. 6901 et seq.) **or State law, including
> common law.** (emphasis added).

The title of a statutory provision is instructive. *Henderson v. Erick K. Shinseki,
Sect'y of Veterans Affairs,* 131 S.CT. 1197 (2010). Section 2718's title clearly declares
its purpose, *i.e.*, the "*Preservation* of State authorities."  In addition to its title, the
other language of this provision clearly pronounces its intent and purpose.
Unambiguous language declares that "nothing" in OPA shall "affect" or "preempt"
the authority of states to impose additional state law liabilities or requirements.
Section 2718(a). In case it was not clear the first time, OPA's language repeats the
absence of preemption in even clearer and more emphatic terms: "*Nothing*" in OPA
"affects" or "modifies" "***in any way***" obligations or "liabilities" under "State law,
***including common law*.**" (emphasis added). Section 2719(a) (2). A more
resounding rejection of BP's argument would be difficult to imagine. "*Nothing*" must
be given its plain and ordinary meaning—it means "not anything;" "no thing." *Oxford
American Dictionary & Thesaurus,* p. 1017 (2003). Additional language in OPA
reverberates with the statutory declaration that State laws, including common law,
are preserved and do apply:

> **(c) Additional requirements and liabilities; penalties.** *Nothing* in this Act
> … shall in any way affect, or be construed to affect, the authority of the
> United States or **any State** or political subdivision thereof—
>
> (1) **to impose additional liability** or additional requirements; or
>
> (2) to impose, or to determine the amount of, any fine or penalty
> (**whether criminal or civil in nature**) for any violation of law;
> relating to the discharge, or substantial threat of a discharge, of oil.

§ 2718 (c).

Again, OPA clearly and unambiguously recognizes that states may impose "additional" state law liabilities, requirements, fines, and penalties, regardless of whether criminal or civil in nature. *Id.*  As seen below, OPA's savings clauses have been judicially determined to allow state claims to be maintained, regardless of whether they were filed independently or with OPA claims.

BP's preemption argument is identical to the contention rejected by this court in *Isla Corp. v. Sundown Energy, LP,* 2007 U.S. Dist. LEXIS 31259 (E.D. La. 2007). As herein, the defendant in that case argued that plaintiff's state common-law claims were precluded and contended that OPA provided the exclusive remedy. Noting the above-cited language in § 2718(a) providing that state law and additional state liabilities or requirements are unaffected by OPA, the Court held, "Therefore, OPA does not preempt Plaintiff's state law claims." *Id.* at \*5.   In reaching this result, the Court pointed out that cases that *appeared* to reach a contrary result,[4] actually did not even address the applicability of *state* law. As noted by the Court, those cases

---

[4] For example, *South Port Marine, LLC v. Gulf Oil Ltd. P'ship,* 234 F. 3d 58 (1st Cir. 2000). As noted by the Court, itself, no *state* claims were at issue on appeal and only OPA and general admiralty and maritime law claims were before the Court. *Id.* at 64. In focusing on the specific issues before it, the Circuit Court noted the misnomer of "preemption" used by the parties:

> First, we note that, although the parties have referred to this issue as one of "preemption," it does not present any of the federalism concerns normally associated with that word, because we are concerned *only* with the OPA's effect on preexisting *federal* law. The question, therefore, is not complicated by any 'presumption against preemption,' [citations omitted] but is rather a straightforward inquiry into whether Congress intended the enactment of the OPA to supplant the existing *general admiralty and maritime law* ....

(emphasis added). *Id.* at 65.

established only that OPA is the exclusive *federal* remedy and that they did not address, much less limit, additional *state* law remedies.

BP's preemption argument was actually rejected by one of the cases that BP cites. *Tangius v. M/V Westchester,* 153 F. Supp. 2d 859  (E.D. La. 2001). Although BP cites this case (fn. 10, p. 15 of BP Memorandum) as supporting its preemption argument, the court's holding and reasoning is the opposite of what BP contends. In considering whether removal from state court was appropriate, the Court in *Tangius* specifically held that OPA does **not** preempt state claims:

> The structure of OPA does not suggest otherwise, since the creation of concurrent state court jurisdiction complements OPA's non-preemption principles. As one group of commentators has observed, 'jurisdiction under the OPA . . . to hear claims for removal costs and damages is not surprising, as the ***OPA does not preempt state law*** in the area of oil spill liability and compensation.' [citations omitted]. (emphasis added).

153 F. Supp. at 863.

Additionally, the contemporaneous availability of state common-law claims and OPA claims was soundly confirmed by a recent decision arising out of the same BP oil spill at issue in this MDL. *The St. Joe Co. v. Transocean Offshore Deepwater Drilling, Inc.,* 2011 U.S. Dist. LEXIS 26391 (D. Del. 2011) (". . . prior to OPA, state law was applicable to sea-to-shore pollution. OPA's saving clauses preserve this conclusion even following enactment of OPA."). The plaintiff in that case had filed state court claims based on Florida law. Defendant Transocean sought to remove the case by arguing that OPA displaced the state claims and that OPA provided the exclusive remedies. The Court rejected Transocean's preemption arguments and held that OPA does not preclude the application of state law providing for additional liability. In so ruling, the Court relied on well-established judicial authority

demonstrating the absence of preemption. *U.S. v. Locke*, 529 U.S 89, 106 (2000) ("We have upheld state laws imposing liability for pollution caused by oil spills . . . Our view of OPA's saving clauses preserves this important role for the states."); *S. Port Marine, LLC v. Gulf Oil L.P.*, 234 F. 3d 58, 65 (1st Cir. 2000) ("We have indeed acknowledged that congress did not intend the OPA to bar the imposition of additional liability by the states."). The *St. Joe Co.* Court also rejected Transocean's attempt to limit the savings clause to state claims within a state's territorial waters and held that the states have authority to impose additional liability through its common laws even if the oil pollution occurs in federal waters.

Similarly, in *Williams v. Potomac Elec. Power Co.,* 115 F. Supp. 2d 561 (D. Md. 2000), the court held that OPA did not preempt state claims similar to those alleged by Plaintiffs herein. In that case, the plaintiffs filed a state court action alleging negligence, trespass, strict liability, and nuisance. The defendant sought to remove the action to federal court, arguing that the state claims were actually OPA claims preempted by OPA. The Court held that OPA does not preempt state claims:

> The Supreme Court [*U.S. v. Locke*, 529 U.S. 89, 120 (2000)] has thus effectively foreclosed any argument as to pre-emption in this case. OPA does not preempt 'state laws of a scope similar to the matters contained in Title I of OPA' such as the state common law actions pleaded here. There is no basis for removal jurisdiction predicated on OPA.

115 F. Supp. 2d at 565.

Other cases have also clearly etched the rule that OPA does not preempt or otherwise preclude the assertion of state claims. *In re Ballard Shipping Co. v. Beach Shellfish,* 32 F. 3d 623, 631 (1st Cir. 1994) ("The act [OPA] also expressly provides that it does not preempt state imposition of additional liability requirements."); *U.S.*

*v. M/V Cosco Busan,* 557 F. Supp. 1058, (N.D. Ca. 2008) ("OPA contains an unambiguous savings clause that expressly preserves the authority of the United States [and states] to impose liability pursuant to statutes other than OPA."[citing § 27180]).

Therefore, BP's arguments confuse OPA's interrelationship with *federal* causes of action with the true issue herein—the preservation of state claims. As the language of OPA unequivocally declares, state claims can be brought independently or simultaneously with OPA claims. *E.g., U.S. v. Locke*, 529 U.S. 89, 120 (2000); *Tangius v. M/V Westchester*, 153 F. Supp. 2d at 864-5; *Isla Corp. v. Sundown Energy, LP,* 2007 U.S. Dist. LEXIS 31259 (E.D. La. 2007). Additionally, state claims are not subject to any requirement of presentment, even in the context of additional OPA claims. *Id.* [5] *Williams v. Potomac Elec. Power Co.*, 115 F. Supp. at 565, n. 3. As the cases clearly demonstrate, the preservation of state laws, state remedies, and state common law is unequivocal regardless of whether they may constitute the basis for the imposition of additional remedies such as punitive damages. *See, Williams v. Potomac Elec. Power Co.,* 115 F. Supp. 2d 561 (D. Md. 2000) (no preemption of negligence, trespass, strict liability, and nuisance); Section 2718.

Furthermore, acceptance of BP's contention that OPA completely preempts state claims would create an anomalous result under OPA's provisions conferring jurisdiction to state courts. 33 U.S.C. § 2717(c). Reduced to its essence, BP's

---

[5] In any event, if there would be any dismissal for failure to make a presentment of OPA claims, such dismissal would be without prejudice. *E.g., Russo v. M/T Dubai Star,* 2010 U.S. LEXIS 50967 (N.D. Ca. 2010); *See, Boca Ciega Hotel Hotel, Inc. v. Brouchard Transportation Co.,* 51 F. 3d 235, 240 (11th Cir. 1995)(plaintiffs remain free to refile "if and when" they comply with presentation requirement).

contention is that federal courts, because of OPA, do not have the power or statutory authority to hear state claims, along with OPA claims. Yet, under Section 2717(c), state courts are given jurisdiction over claims for removal costs or damages as defined under OPA and "may consider claims under this chapter or **State** law . . . ". (emphasis added). *Id.; Tangius v. M/V Westchester*, 153 F. Supp. 2d at 864-5. Since state courts clearly have jurisdiction to maintain *state* law claims, along with OPA claims, without any preemption of state claims, an anomalous result would arise if federal courts' authority were diminished as BP argues. Section 2717(c) is a broad grant of authority to state courts without any limitation on the types of remedies available in state court (*e.g.*, punitive damages) and without any condition of presentation. *The St. Joe Co. v. Transocean Offshore Deepwater Drilling, Inc.,* 2011 U.S. Dist. LEXIS 26391 (D. Del. 2011); *Isla Corp. v. Sundown Energy, LP,* 2007 U.S. Dist. LEXIS 31259 (E.D. La. 2007); *Williams v. Potomac Elec. Power Co.*, 115 F. Supp.2d at 565, n. 3. BP's argument that OPA preempts state law claims in federal courts, therefore, would diminish the jurisdiction (or statutory authority) of federal courts and give state courts broader jurisdiction to handle state claims and remedies (along with OPA claims) than if those same claims had been brought in federal court. There is no indication in OPA that Congress intended state courts to have broader powers than federal courts when addressing state claims brought along with OPA claims or that in any manner strips their authority to apply state law. Clearly, BP's contention would create inconsistent, conflicting, and illogical results under § 2717(c)—an absurd result not intended by Congress.

      **B.**      **Application Of OCSLA Does Not Preempt State Claims.**

The foregoing authorities clearly establish that OPA does not preempt or otherwise preclude the application of state law claims, either with or without OPA. Yet, BP contends that when OPA is applied through OCSLA, OPA does not allow Plaintiffs to maintain their state claims. In other words, while attempting to fit OPA into the OCSLA statutory framework, BP must necessarily jettison OPA's crucial savings provisions to make its untenable and overbroad argument fit.

### i.   BP's Argument Hinges On Unresolved Factual Issues And Such Arguments Are Not Supported By Competent Evidence.

Initially, it must be noted that BP's arguments based on OCSLA only presume that OCSLA applies in the first instance.[6]  However, the arguments as to the status of the *Deepwater Horizon* and the applicable legal analysis are as fluid as the currents of the Gulf. Some parties allege that the *Deepwater Horizon* was a "vessel" and that maritime law applies exclusively. (See, e.g., Mem. in Opp. Of Plaintiffs, Bill Francis, *et al.* to Cameron Int'l Motion to Dismiss [Doc. No. 1587] ("It is indisputable that the Deepwater Horizon was a *vessel* for all maritime-law purposes." *Id.* at p. 4); Omnibus Response to Mem. Of Cameron's Motions to Dismiss Bundle A Claims, (same at p. 5; Others allege that it was a situs "attached" to the seabed of continental shelf and therefore OCSLA is determinative. (See, Consolidated Mem. Of Law in Support of Motions of Defendants Anadarko (Doc. No. 1426 (arguing for situs under OCSLA). Plaintiffs respectfully suggest that overly broad and unduly simplified

---

[6] Application of state law under OCSLA requires satisfaction of three factors: 1) the controversy must arise on a situs covered by OCSLA; 2) federal maritime law must not apply of its own force; and 3) the state law must not be inconsistent with federal law. *Union Texas Petroleum Corp. v. PLT Engineering, Inc.,* 895 F. 2d 1043, 1047 (5th Cir. 1990); *Grand Isle Shipyard Inc. v. Seacor Marine, LLC,* 589 F. 3d at 782-3.

characterizations (based on argument, not facts) lead to false choices regarding which legal paradigm is applicable.

Under a more focused scrutiny, future discovery and development of the facts will determine that different types of claims are governed by different legal standards. For example, the nature of the claims asserted, including the timing and location of the actions and omissions and the location of their effects will prove crucial. For example, such claims that arose prior to any alleged "maiden voyage" of the *Deepwater Horizon* and/or prior to its being allegedly attached to the seabed cannot be easily connected to either a "vessel" or an OCSLA situs. Such claims would include allegations of fraud and concealment regarding representations or omissions to the Mineral Management Service; the design, manufacturing, and /or selection of the Blow Out Preventer; and numerous others. Other claims arose during the time that the *Deepwater Horizon* operated, exploded, and sank. Still others are based on decisions that were made and taken after the *Deepwater Horizon* (either as a vessel or an OCSLA situs) was no longer in existence.

Plaintiffs note that while they do allege jurisdiction under OCSLA, not all of their allegations fall into the purview of OCSLA and many will be determined based on "straight" application of state law under diversity principles. Although OCSLA applies to *many* of Plaintiffs' allegations, the breadth of the statute is not so extensive as to sweep all of the allegations into its scope. OCSLA controls only on the subsoil and seabed of the Outer Continental Shelf, and artificial islands and fixed structures erected thereon. *Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 217 (1986); 43 U.S.C. Sec. 1333(a) (2) (A). OCSLA must be construed in such a manner

that the character of the waters above the outer Continental Shelf as high seas shall not be affected. *Id.;* Sec. 1332(2). Thus, the purpose of the OCSLA was to define a body of law applicable to the *seabed, the subsoil, and the fixed structures* defined therein on the Continental Shelf. *Rodrigue v. Aetna Casualty & Surety Co.,* 395 U.S. 352, 355 (1969).

In many of the cases determining whether or not OCSLA applies, the analysis is curtailed by the fact that the injury occurred at the same time and place as the accident that gave rise to the injury—at the OCSLA situs. In other words, the injury or death was the immediate consequence of the accident on the OCSLA situs such that it was actually one event and the locus of that event was easy to determine. *See, Rodrigue v. Aetna Casualty & Surety Co.* 395 U.S. 352 (1969) (where both plaintiffs suffered their injuries and were killed on the offshore drilling platform, OCSLA applied and case was governed by Louisiana law rather than DOHSA); *Raffray v. Gulf Logistics, LLC,* 2010 U.S. Dist. LEXIS 133912 *15(E.D. La. 2010) (OCSLA inapplicable where locus of negligence [operation of crane] occurred on oil platform, but injury occurred on a ship tied to the platform). Therefore, under OCSLA, courts distinguish between the location of the actions or omissions that give rise to the tort and "where the alleged wrong took effect." *Egorov, Puchinsky, Afanasiev & Juring v. Terriberry, Carroll & Yancey,* 183 F. 3d 453, 456 (5th Cir. 1999); *Raffray v. Gulf Logistics, LLC,* 2010 U.S. Dist. LEXIS 133912 at *7; *Smith v. Pan Am Air Corp.,* 684 F. 2d. 1102 (5th Cir. 1982) (OCSLA did not apply where helicopter taking off from platform hit platform equipment, but crashed into the sea. [Presumably, the workers died when they hit the sea, not when the helicopter hit the platform]); *Hails v. Atlantic Richfield*

*Co.*, 595 F. Supp 948, (W.D. La. 1984) (For jurisdictional purposes, 'a tort occurs where the *impact* of the act or omission produces injury."[citations omitted]). Accordingly, development of a factual context and background is crucial in assessing the applicability of OCSLA.

By way of another example, it appears evident that the Blow Out Preventer was a "device" attached to the seabed such that OCSLA would apply to certain claims surrounding it such as its on-site maintenance or lack thereof, its operation by the personnel on the *Deepwater Horizon*, on-site modifications and malfunctions, *etc.*. Discovery may or may not show that the riser was similarly attached. However, as noted above, the status of the *Deepwater Horizon*, itself, is another issue sharply contested by the parties and its status is not established as a matter of law. *Sanamo v. Trico Marine Services, Inc.,* 73 Fed. Appx. 79, 2003 WL 21756647 at *3 (5th Cir. 2003) (noting that a jack-up rig that is not jacked up does not necessarily constitute an OCS *situs* since it can still be towed to other sites); *U.S. v. Pickett*, 598 F.3d 231, 236 (5th Cir. 2010) (to be an OCS site, a rig or platform must be "erected" upon the OCS; OCSLA does not apply to vessels that float on the water even if anchored.). Therefore, it is possible that facts will later demonstrate that OCSLA applies to the BOP and that maritime law (or other law) applies to the *Deepwater Horizon,* itself.

The *nature and basis* of many of Plaintiffs' claims are not dependent on a determination of the status of the *Deepwater Horizon* or the BOP. Decisions regarding the design of the *Deepwater Horizon,* the well and its components, as well as the choice of its equipment and personnel, undoubtedly occurred away from the well, although those are matters to be determined through discovery at a later date.

28

Claims related to the design, modifications, and selection of the BOP bring into focus decisions that discovery would show took place away from any OCSLA situs and, therefore, such claims would be governed solely by state law, *e.g.*, Texas law where the BOP was designed and manufactured or the law of the state(s) where Defendants made the decisions related to the BOP. BP does not cite to any case holding that OPA applies to any negligence in product design, and, in fact, has alleged such state claims against Halliburton. Many of Defendants' actions, including, but not limited to, the choice and use of dispersants clearly occurred away from the well, for example, on land (*e.g.,* at BP's headquarters), and along coastal waterways. (Plaintiffs' allegations in Par. 44, 47, 51M, N, O, and bb). Dispersants sprayed onto the surface or subsurface of the Gulf waters are not easily perceived as being "attached to the seabed"—even if they should sink to the bottom. BP does not cite any cases holding that the use of dispersants, especially miles away from the non-existent "situs" is covered by OCSLA or even OPA. Moreover, the failures to take appropriate measures for months after the oil eruption do not lend itself easily to an OCSLA situs because the *Deepwater Horizon* had sunk and there was no longer an OCSLA site in existence. Since it had sunk, there was no "vessel" in existence either. Therefore, even if OPA were to be brought into the analysis by virtue of OCSLA, there is no indication that it is intended as a substitute for state claims alleging negligence in design, choice and use of dispersants, fraud, failure to warn, and numerous other claims that are germane herein.

The status of *Deepwater Horizon* under OCSLA and the "situs" and effects of many of the decisions leading to the claims herein are still in dispute and yet to be

determined through discovery and/or factual determinations by the Court. These issues are to be determined by facts, not argument in memoranda. *See, Eason v. Thaler,* 73 F. 3d 1322, 1325 (5th Cir. 1996); *Aguirre v. Nueces County,* 2007 U. S. App. LEXIS 3028 (5th Cir. 2007); *Ray v. Tandem Computers, Inc.,* 63 F. 3d 429 (5th Cir. 1995). *Morris v. Covan Worldwide Moving, Inc.,* 144 F. 3d. 377, 380 (5th Cir. 1998). Therefore, BP's motion is premature since it depends on unresolved facts that are not before the Court.

### ii.    BP Distorts the Holdings of the Cases Upon Which it Relies.

At the outset, it is instructive to note that BP relies heavily on its overextended misinterpretation of *Int'l Paper Co. v. Ouellete,* 479 U.S. 481 (1987). BP misperceives this case as holding that "a state has no authority to regulate—through its common law or otherwise—pollution whose source is outside its territory, even if the effects of the pollution are felt within the state." (p. 16, BP Memorandum; pp. 29-34 of BP's Memorandum in Support of BP Defendants' Motion to Dismiss [the B1 Bundle]—Document no. 1440-1). However, BP stretches the fabric of the Court's reasoning beyond the tearing point. A more scrutinizing reading of the case demonstrates that the Supreme Court specifically allowed the plaintiffs to pursue state claims (*e.g.*, for nuisance), although based on the law of the state where the pollution originated (New York) instead of under the laws of the state affected by the pollution (Vermont). Nevertheless, it's reasoning cannot be assessed without consideration of the important regulatory scheme governing discharge permits under the Clean Water Act that was at issue in that case. Moreover, since the case arose under the Clean Water Act—not OPA—OPA's unambiguous and resounding

preservation of state claims was not even under consideration by the Court. As seen from the Court's reasoning, the pivotal concern was its view that making unlawful in one state (Vermont) what might have been declared lawful in another state (through either state law or federal permits allowing the defendant's discharges of effluents into the lake) could create a conflict in standards. None of the foregoing concerns are applicable herein.

In *Ouellette*, lakeshore property owners in Vermont sued under Vermont common law, claiming that the defendant's discharge of effluents into the lake from the New York shores created a common-law nuisance since the New York discharges flowed across the lake onto their Vermont properties. The defendant was discharging the pollutants in New York (the "source state") pursuant to a discharge permit issued by the EPA Administrator under the CWA. The *Ouellette* Court found the Clean Water Act preempted the *Vermont* state nuisance claims since they would interfere or conflict with the discharge allowances under the permit regulatory scheme in New York—the source of pollutants. BP's misconstruction of this case overlooks the Supreme Court's express reservation of the right to sue under state law, *albeit,* New York's:

> Our conclusion that Vermont nuisance law is inapplicable to a New York point source ***does not leave respondents without a remedy.*** The CWA precludes only those suits that may require standards of effluent control that are incompatible with those established by the procedures set forth in the Act. ***The savings clause specifically preserves other state actions, and therefore nothing in the Act bars aggrieved individuals from bringing a nuisance claim pursuant to the law of the source State.*** (emphasis added).

479 U.S. at 489.

*Ouellette,* therefore, actually supports Plaintiffs' position that OPA does not preempt state law claims, although there may be a question as to which state's common law applies. This is especially true since OPA's savings clause is much broader and stronger than the language in CWA that was at issue in *Ouellette. The St. Joe Co. v. Transocean Offshore Deepwater Drilling, Inc.,* 2011 U.S. Dist. LEXIS 26391 (D. Del. 2011)(holding that states have the power to establish additional liabilities even though the oil pollution occurred on federal location). Moreover, the conflict perceived by the Court arising from the discharge permits (*e.g.,* the composition and volumes of effluents) is clearly absent herein. Unlike the defendant in *Ouellette,* BP cannot claim that it had any such permit (or other license) authorizing the massive, destructive oil spill at issue herein and consequently, the state claims do not conflict with any permitted discharges.

BP also relies on such cases as *Tenn. Gas Pipeline v. Houston Cas. Ins. Co.,* 87 F. 3d 150 (5th Cir. 1992) for its proposition that only OPA—not state claims—is applicable herein. However, reliance on this case is misplaced, as well.  First, the case arose in the context of removal so that the issue in dispute was the Court's *jurisdiction* under OCSLA—not which substantive law applied. Thus, the Court's holding and reasoning was centered on whether it had jurisdiction of a maritime claim under OCSLA. *Id.* at 153-4. BP's quote from the case that OCSLA asserts national authority over the OCS at the expense of both foreign governments and the state governments (pp. 14-5, BP's Memorandum) is taken out of context since this judicial comment was related to OCSLA's prohibition of the states' rights to lease mineral rights, not any absolute preclusion of state claims:

> In order to provide expeditious but environmentally safe development of the resources on the OCS, OCSLA explicitly prevents individual states from authorizing mineral leases covering the OCS. Thus OCSLA is an assertion of national authority over the OCS at the expense of both foreign governments and the governments of the individual states.

*Id.* at 153.

Of course, the case at bar has nothing to do with states' attempts to lease mineral rights in the OCS and therefore BP's out-of-context extraction from the case is inapplicable. Significantly, notwithstanding the broad sweep of OCSLA, the Fifth Circuit explicitly allowed plaintiffs to maintain their maritime claims, as well as claims under "other" provisions of law: "Furthermore, 43 U.S.C. § 1333(f) makes clear that the applicability of OCSLA law under 43 U.S.C. § 1333(a) shall not give rise to any inference that **other provisions of law** (such as general maritime law), do not **also apply.**" (emphasis added). 87 F. 3d at 154.

Like other cases cited by BP, *Rice v. Harken Exploration Co.,* 89 f. Supp. 2d 820(N.D. Tex. 1999) is completely inapposite. Although arising under OPA, that case merely held that a polluting discharge on ranch lands and a small creek was not a discharge on "navigable waters" as required by OPA.  There is no comparison between that small creek in North Texas and the waters of the Gulf of Mexico.

Rather than being diverted by tangential and inapposite legal principles relied upon by BP, the focus should be on the directly applicable and "on point" judicial authorities establishing that OPA does allow state claims and remedies, even in the context of OCSLA, as demonstrated below.

### iii.      OCSLA Does Not Bar State Claims, Alone Or Through OPA.

Notwithstanding the unsettled question of whether OCSLA, OPA, or other laws apply to the multitudinous and multifaceted actions and omissions by BP and other Defendants, BP argues that OCSLA mandates OPA's application to the exclusion of state law causes of action. (Part II p. 15, BP's Memorandum). In other words, BP would urge that since OCSLA injects federal law into OCS sites and that federal law is OPA, Plaintiffs' state law claims are preempted. (*Id.*). It is worth repeating that BP fails to explain how its own state claims against Cameron, Halliburton, and others would not be similarly precluded. Nevertheless, BP's preemption contentions are clearly erroneous.

In addition to ignoring judicial precedent holding state law claims are preserved through the savings clauses of OPA, BP's arguments (if accepted) would again create serious "inconsistent" results in the application of OCSLA and OPA. Without doubt, OPA's savings clauses expressly permitting state law claims are an integral part of OPA. Nothing in the statutory framework suggests that when it is applied through OCSLA, a defendant may pick and choose which of OPA's provisions will be applicable. If BP is to inject OPA as the federal law applicable under OCSLA (as it argues), it must accept *all* of OPA's provisions, including the unambiguous savings provisions in Section 2718. In other words, BP's argument succeeds only if OPA is dissected and only some of the provisions are injected into OCSLA. Clearly, such a disjointed application of any statute would be inappropriate. *See, Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 221 (1986) ("In expounding a statute, [courts] must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy."). Therefore, if OPA is

to be brought into the OCSLA analysis, all of OPA's provisions, including the savings provisions allowing state claims and remedies must be similarly applied through OPA.

As noted above, the savings clause in OPA clearly provides for the application of state claims—without any reservation, limitation, or conditions.[7] Any other construction would eviscerate OPA and contravene Congress' clearly expressed intent to allow state claims without preemption by OPA. Congress surely intended to allow states, as well as the United States, to impose additional remedies such as punitive damages. *E.g., U.S. v. M/V Cosco Busan*, 557 F. Supp. 2d 1058, 1063 (N.D. Ca. 2008). Therefore, the application of state law, including any elements of damages provided by state claims, is entirely consistent with, contemplated by, and expressly provided by OPA itself. *Id.*

In brief, OPA's savings clause exists and its emphatic preservation of state claims cannot be ignored. *E.g., Isla Corp. v. Sundown Energy, LP,* 2007 U.S. Dist. LEXIS 31259 (E.D. La. 2007); *Williams v. Potomac Elec. Power Co.*, 115 F. Supp. at 565. In urging the exclusion of state law claims from the OCSLA context, BP inappropriately relies on such inapposite cases as *Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207 (1986) which addressed—not OPA--but only the entirely dissimilar language in § 7 of the Death on the High Seas Act. (see, f.n. 7, p. 14 of BP's Memorandum). Although § 7 in DOHSA was held to only preserve state court jurisdiction for claims under DOHSA and accidents arising in territorial waters, the Supreme Court's reasoning

---

[7] Of course, OPA does not require that state causes of action be subject to any presentation requirement. § 2718; *Isla Corp. v. Sundown Energy, LP,* 2007 U.S. Dist. LEXIS 31259 (E.D. La. 2007); *Williams v. Potomac Elec. Power Co.*, 115 F. Supp. at 565, n. 3.

was based on that section's unique legislative history, the congressional purposes, the importance of uniformity of admiralty law, and the language of DOSHA as a whole. *Offshore Logistic*s, *Inc., 477 U.S. at 221.* Significantly, the Court characterized Section 7 as "ambiguous" since it only provided that state law 'remedies' or 'rights of action' would not be 'affected' and made no provisions for reconciling potentially conflicting state and federal measures of recovery. *Id.* at 222. In so doing, the Court contrasted DOHSA's Section 4 of DOHSA, which it noted clearly preserved the right to recover under the law of a foreign sovereign.[8]

Unlike Section 7 of DOHSA addressed in *Offshore Logistics, Inc.*, OPA's savings provisions are clear and unambiguous in their mandate that state law applies. *E.g., U.S. v. M/V Cosco Busan*, 557 F. Supp. 2d 1058, 1063 (N.D. Ca. 2008). As such, OPA's savings clause is even more emphatic than Section 4 of DOHSA, which the Supreme Court determined expressed a clear intent to apply the substantive laws of sovereignty. By way of example, the title of § 2718 of OPA, *i.e.*, "Relationship to other law" unambiguously describes the purpose of the section. *See, Henderson v. Erick K. Shinseki, Sect'y of Veterans Affairs,* 131 U.S. 1197 (2010) (noting that a statute's title is a significant aid in its interpretation). The intent and purpose of saving state law is further emphasized by the title of subsection (a) – " **Preservation of State** authorities." *Id.* Subsection  (a) goes on to unequivocally delineate in repetitive terms that OPA does not affect or **preempt** the authority of

---

[8] Section 4, DOHSA provides: "Whenever a right of action is granted by the law of any foreign State on account of death by wrongful act, neglect, or default occurring upon the high seas, such right may be maintained in an appropriate action in admiralty in the courts of the United States without abatement in respect to the amount for which recovery is authorized, any statute of the United States to the contrary notwithstanding."

states from imposing any **additional liability or requirements** with respect to the discharge of oil or other pollution by oil within such State; or any removal activities in connection with such a discharge.  In Section 2718(a) (2), OPA echoes even more resoundingly that OPA should not be interpreted **to affect or modify in any way the obligations or liabilities of any person under ... State law, including common law."** Without any doubt, the above-referenced language of OPA specifically provides that the obligations  and liabilities "State law, *including common law*" will **not** be affected or modified "in any way." (emphasis added) *Id.* Other language in OPA further echoes the resounding declaration that state laws may impose additional requirements and liabilities, regardless of whether they are criminal or civil, and regardless of whether they impose penalties. § 2718(c). Significantly, as noted above, "nothing in this Act shall **in any way"** affect such state remedies as common-law.

Therefore, unlike Section 7 of DOHSA, which the Supreme Court found too ambiguous to preserve state claims in the context of DOHSA's complicated legislative history and historical basis, OPA's savings clauses do not speak meekly on the subject of their preservation of state remedies—including those under "common-law" and those, which constitute penalties.

Accordingly, if federal law, *i.e.*, OPA, is to be applied herein through OCSLA, *all of OPA*, including the savings provisions, must be applied. A dissected application of OPA in the OCSLA framework would not only violate the integrity of the statute, but also necessarily result in conflicting and inconsistent interpretations of OPA that would depend on whether the claims were brought in state or federal court and

whether claims were brought under OPA or in the context of OCSLA. Already noted above, is the inconsistent and unreasonable result that would ensue from BP's argument as applied to the respective powers of state courts and federal courts. Nothing in OPA suggests that federal courts can maintain state claims to any lesser extent than state courts. *See, Tangius v. M/V Westchester*, 153 F. Supp. 2d at 864-5(noting the broad authority remaining in state courts). If accepted, BP's contention would present still another inconsistent and conflicting result that would depend on whether OPA claims arose in an OCSLA context or in a non-OCSLA context. For example, in a "stand alone" context, OPA clearly allows for state claims to be presented without limitation on the causes of actions or remedies asserted. However, if one accepts BP's argument, when applied in the context of OCSLA, OPA would preclude the same state claims from being maintained in federal court. Under BP's argument, state claims (without presentation and with punitive damages) would be available in non-OCSLA situations, as well as in cases filed in state courts, but unavailable where OCSLA is applying OPA to the case. Therefore, BP's argument would result in the identical statutory language having two separate and conflicting meanings depending on whether OCSLA was in the picture. There is nothing in OPA or in the OCSLA supporting such a conflicting and inconsistent result. Therefore, state law "unaffected," "unpreempted," and "unmodified" by OPA is applicable, even in the context of OCSLA.

In this regard, it is again noted that the Mexican States do not depend solely on either OPA or OCSLA for jurisdiction herein. The U.S. Constitution through Article III, Sec. 2 and 28 U.S.C. §1332 provide alternative grounds for the assertion of the

claims herein. BP does not dispute jurisdiction under these provisions or the Mexican States' rights to pursue their state claims under these independent provisions. Therefore, regardless of the judicial result on BP's arguments, Plaintiffs' claims remain unaffected.

### 4.      OPA'S PRESENTATION REQUIREMENT IS NOT JURISDICTIONAL.

BP does not assert that it would pay any claim that would be presented to it by Plaintiffs. BP does not claim that but for any failure to make a presentation, these cases would have been settled. In short, there is no allegation of prejudice (or even inconvenience) to any extent allegedly arising from any failure to make a presentation. In reality, BP has not suffered any prejudice. Courts should not require a plaintiff to undertake futile actions. Plaintiffs acknowledge that some of the foregoing contentions raise "factual" issues that have not been presented herein through appropriate "evidence." However, these are issues that should be allowed to be developed through discovery rather than a premature resolution of this issue. *See, Arbaugh v. Y & H Corp.,* 546 U.S. 500, 514 (2006) (where jurisdiction depends on contested issues of fact, the court is required to review them).

Plaintiffs also acknowledge that some district courts have used the word "jurisdictional" to characterize the presentation requirement in § 2713. However, as noted by the Supreme Court, "jurisdiction" "is a word of many, too many, meanings." *Union Pacific R. Co. v. Locomotive Engineers and Trainmen Gen. Comm. Of Adjustment, Central Region,* 130 S. Ct. 584, 175 (2009); *Arbaugh v. Y & H Corp.,* 546 U.S. at 510; *Steel Co. v. Citizens for Better Environment,* 523 U.S. 83, 90 (1998). Thus, the Court has cautioned against relying on such "unrefined dispositions as 'drive-by

jurisdictional rulings' that should be accorded no precedential effect on the question whether the federal court had authority to adjudicate the claim in the suit." 546 U.S. at 511; *Steel Co.,* 523 U.S. at 91.

Several paramount principles of statutory construction and policy demonstrate that the presentation requirement is not jurisdictional. First, OPA's presentation requirement is clearly one aimed at processing claims. As very recently noted by the U.S. Supreme Court, such "claim-processing rules" should **not** be described as jurisdictional. *Union Pacific R. Co. v. Locomotive Engineers and Trainmen Gen. Comm. Of Adjustment, Central Region,* 130 S.Ct. 584, 175 (2009); *Henderson v. Eric Shinsekie, Secretary of Veterans Affairs,* 131 S. Ct. 1197 (2011).

Additionally, in considering whether a particular requirement is a "jurisdictional" prerequisite, courts typically examine the structure and organization of the statute, particularly its provisions granting federal jurisdiction. *E.g., Arbaugh v. Y & H Corp.,* 546 U.S. at 514-16; *Union Pacific R. Co. v. Locomotive Engineers and Trainmen Gen. Comm. Of Adjustment, Central Region,* 130 S.Ct. 584, 175 (2009). Thus, in determining that Title VII's requirement that an employer have fifteen employees was not a jurisdictional prerequisite, the court noted that the requirement was not contained in the statute's provisions granting federal jurisdiction, but contained in a separate section that did not reference jurisdiction. *Id.* Therefore, the court reasoned, "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." 546 U.S. at 516. Other cases emphasize that Congress' decision to place a requirement in a section of the act separate from the statutory framework granting

jurisdiction demonstrates that the requirement is not jurisdictional. *Henderson v. Eric Shinsekie, Secretary of Veterans Affairs,* 131 S. Ct. 1197 (2010) (placement of appeal deadline in section other than the subchapter entitled "Organization and Jurisdiction" demonstrated the requirement was not jurisdictional.); *Union Pacific R. Co. v. Locomotive Engineers and Trainmen Gen. Comm. Of Adjustment, Central Region,* 130 S.Ct. 584, 175 (2009); *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393-4 (1982).

Furthermore, compliance with a statutory requirement is not jurisdictional where, as herein, the statute does not describe it as such. *Id.; Zipes v. Transworld Airlines, Inc.,* 455 U.S. at 394; *Union Pacific R. Co. v. Locomotive Engineers and Trainmen Gen. Comm. Of Adjustment, Central Region,* 130 S.Ct. 584, 175 (2009). Furthermore, even though a requirement is cast in mandatory terms, the Supreme Court has rejected the notion that 'all mandatory prescriptions, however emphatic, are . . . properly typed jurisdictional." *Henderson v. Eric Shinsekie, Secretary of Veterans Affairs,* 131 S. Ct. 1197 (2011); *Union Pacific R. Co. v. Locomotive Engineers and Trainmen Gen. Comm. Of Adjustment, Central Region,* 130 S.Ct. 584, 175 (2009). Therefore, even when a statutory scheme has an overriding policy of peacefully settling disputes, a statutory requirement aimed at promoting settlement of disputes does not transform the requirement into a jurisdictional one. *Union Pacific R. Co. v. Locomotive Engineers and Trainmen Gen. Comm. Of Adjustment, Central Region,* 130 S.Ct. at 175.

Application of the foregoing principles to OPA's presentation requirement results in the inescapable conclusion that it is not jurisdictional. Significantly, OPA's

sections creating federal "jurisdiction" do not contain any presentment obligations. 33 U.S.C. § 2717(a)-(f). In fact, the title of § 2717, as well as its subject matter, is "Litigation, **Jurisdiction**, and Venue." (emphasis added). *Id.* Of course, if Congress had intended to elevate a presentation requirement to a jurisdictional level, § 2717 would have been the place to create such a jurisdictional bar. It is significant that Congress did not do so. *See*, *Zipes,* 455 U.S. at 394; *Union Pacific R. Co.,* 130 S.Ct. at 175. In fact, §2717(b) creates exceptions in subparagraphs (a) and (c), but does not create any other exceptions to the Court's jurisdiction. In other words, the jurisdictional provisions do not indicate that the Court's jurisdiction is in any manner affected by a failure to present. The absence of such an exception to jurisdiction, especially when other exceptions have been carved out, strongly evidences that presentation is not a jurisdictional requirement.

Further negating that such a requirement is jurisdictional, is the language in §2717(f)(2) which specifically dispenses with any need to make a presentation (or any other requirement): "Except as otherwise provided in this paragraph, an action may be commenced under this title for recovery of removal costs **at any time** after such costs have been incurred." (emphasis added). "At any time" means that a presentation is not a prerequisite for filing a suit directly against a responsible party. *U.S. v. M/V Cosco Busan,* 557 F. Supp. 2d at 1062 (also holding that claims for damages under OPA could proceed without a prior presentation to further the goals of OPA.). Although the foregoing reasoning and holding applied to a claim by the United States, there is no practical or policy reason why it should not also apply to foreign states such as Plaintiffs herein.

Keeping into consideration the Supreme Court's admonition about undue reliance on cases with "drive-by" jurisdictional determinations, the cases relied upon by BP deserve special scrutiny. BP overreaches in its interpretation of the Eleventh Circuit's interpretation of the presentation requirements in *Boca Ciega Hotel, Inc. v. Brouchard Transportation Co.,* 51 F. 3d 235 (11th Cir. 1995). The Court therein framed the issue as, "In this case, we must decide whether the claims presentation procedure of the Oil Pollution Act of 1990 (OPA or the Act), 33 U.S.C. A. §§ 2701-2761 (West Supp. 1994), constitutes a mandatory **condition precedent** to the filing of **private** lawsuits under the Act." (emphasis added). 51 F. 3d at 236. Significantly, the word "jurisdictional" is absent from the framing of the issue. In fact, *Boca Ciega* used language demonstrating that the presentation requirement is nonjurisdictional and that a failure to present can be fixed—"[plaintiffs] remain free to refile this action, if and when they comply . . ." 51 F. 3d at 240. Moreover, crucial factors distinguish *Boca Ciega* from the facts at hand. As noted by the Court, the plaintiffs were "private" landowners—not public entities or sovereign entities as herein. In such circumstances, § 2717(f) renders presentation unnecessary. *U.S. v. M/V Cosco Busan*, 557 F. Supp. at 1062.

In *Leboeuf v. Texaco,* 9 F. Supp. 2d 661 (E.D. La. 1998), the Court astutely analyzed *Boca Ciega* and noted that decision had been too broadly applied. As the Court pointed out, the Eleventh Circuit's language characterized the presentation requirement as a "mandatory conditions precedent" and that the Court had avoided the use of the word "jurisdictional":

> Nowhere in the *Boca Ciega* opinion does this Court find the Eleventh Circuit concluding the requirements of § 2713 as being jurisdictional. Rather, the

Eleventh Circuit found the presentment requirements a mandatory condition precedent. The reasoning of the Eleventh Circuit is more in accord with an exhaustion of administrative process. This Court respectfully disagrees with Judge Clement's conclusion [in *Marathon Pipe Line Co., v. LaRoche Industries, Inc.,* 944 F. Supp. 476 (E.D. La. 1996)] that compliance with § 2713 is jurisdictional.

9 F. Supp. at 664.

Significantly, both *Boca Ciega* and *Marathon* failed to even address Section 2717(f)'s leeway to file a suit for recovery costs "at any time." *U.S. v. M/V Cosco Busan*, 557 F. Supp. at 1062. In short, the requirement is permeated with significant exceptions further indicating it is not a jurisdictional bulwark against claims. Additionally, both *Boca Ciega* and *Marathon* omitted any analysis of the statute in accordance with the interpretative rules applied by the Supreme Court. *Union Pacific R. Co. v. Locomotive Engineers and Trainmen Gen. Comm. Of Adjustment, Central Region,* 130 S.Ct. 584, 175 (2009); *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393-4 (1982).

Also, in *Turner v. Murphy Oil USA, Inc.,* 2005 U.S. Dist. LEXIS 45123 (E.D. La. 2005), the court declined to characterize the presentation requirement as "jurisdictional," noting that it was a "condition precedent" which in the Court's words, it declined to waive. *Id.* at *19. Since jurisdictional requirements cannot be waived, the Court's language referencing waiver strongly suggests it was the Court's view that it was not jurisdictional. The non-jurisdictional characterization is further borne out by the Court's characterization of the suit as "premature." *Id.* Again, the Court's language suggests its view that presentation can be cured, allowing refiling of OPA claims after the presentation has been made.

In a related case, *Turner v. Murphy Oil USA, Inc.*, 2007 U.S. Dist. LEXIS 94304 (E.D. La. 2007), the court noted that its dismissal for failure to make the necessary presentment was without prejudice to refiling: "This dismissal, however, will be treated as a dismissal without prejudice and [plaintiff] remains free to refile this action if and when it complies with the OPA procedure. [Citing *Boca Ciega*]." *Id*. at *6.

Therefore, it is respectfully submitted that even though the presentation requirement has been described as "jurisdictional" a careful scrutiny of the statute and cases interpreting same, along with application of sound interpretative principles demonstrates that it is not of that character. Moreover, Plaintiffs respectfully submit that if this Court should decide otherwise, the appropriate course would be to abate or stay the OPA claims until such time as Plaintiffs have made their presentation. In this regard, Plaintiffs note that they intend to submit such a presentation in the near future.

### 5.    CHALLENGES TO PLAINTIFFS' FOREIGN CLAIMANT STATUS.

### A.    Compliance With Treaty Requirement Under OPA.

Section 2707 of OPA provides that a foreign claimant "shall demonstrate" that recovery is "authorized" by a treaty or executive agreement between the United States and the claimant's country." (§2707(a) (1) (B). The United States and Mexico, as well as other foreign entities, have entered into various treaties and executive agreements providing for the protection of the environment, including safeguarding marine and coastal environments against pollution and other hazards. Plaintiffs respectfully submit that the following treaties, conventions, and executive agreements (among others) "authorize" their claims herein:

- Agreement of Cooperation Between the United States of America and the United Mexican States Regarding Pollution of the Marine Environment by Discharges of Hydrocarbons and Other Hazardous Substances (signed 1980); MEXUS Plan ("Joint Contingency Plan Between the United Mexican States, Mexican Sovereign States and the United States of America and some States of the United States Regarding Pollution of the Marine Environment By Discharges of Hydrocarbons or Other Hazardous Substances"; MEXUS Plan's Gulf Geographic Annex ("MEXUS GULF ANNEX")(Signed Nov. 7, 2007). Parenthetically, it is noted that the MEXUS GULF ANNEX recognizes the particularly environmentally and economically sensitive regions along Plaintiffs' coastlines and the paramount need to protect these. (§G406.1.2.1 andG406.1.3.1);
- Cartagena Convention (effective June 8, 2000) ("Convention for the Protection and Development of the Marine Environment in the Wider Caribbean Region"), as supplemented by its Protocols.
- 1992 Civil Liability Convention;
- Treaty on Maritime Boundaries between the United States of America and the United Mexican States (ratified October 23, 1997);

Plaintiffs are in the process of submitting their Motion for Leave to File their Second Amended Complaint, which will amend their Complaints to specify the treaties authorizing them to maintain this suit. Accordingly, BP's argument will be rendered moot by such amendment.

### B.      BP's Trustee for Natural Resources Argument.

Section 2707(b) and other provisions of OPA clearly grant "foreign claimants" such as Plaintiffs the rights to bring their claims under OPA. Subsection (c)(3) defines "foreign claimant" as "an agency or political subdivision of a foreign country." Clearly, states of the Republic of Mexico are "political subdivisions of the country of Mexico. It is important to note that Plaintiffs bring these actions to assert *their* interests, claims, and requests for damages and other remedies. Thus each of the Plaintiff States herein assert its claims, in part, based on its sovereign control, use, jurisdiction, ownership and authority over its land and waters, as well as its state and proprietary interests in and ownership of its natural resources and other

properties that have been damaged, injured, interfered with, and diminished in value by the actions of BP and others.  Additionally each State has numerous concession rights relating to property and natural resources that have been damaged by Defendants. (As noted in the First Amended Complaint, Plaintiffs also assert numerous other types of injuries and damages.). Plaintiffs do not purport to represent the interests of the Republic of Mexico, itself, or any claims the Republic of Mexico may have against Defendants for damages to the Republic's natural resources or otherwise. As with the United States, the federal government has interests separate and apart from the states comprising it.

However, Plaintiffs' actions have not only been authorized by the Governors of the Plaintiff States, but they have also been the subject of conferring and consultation with the Republic.  Thus, Plaintiffs have asserted their own claims and interests, and the Republic may elect whether to file its own claims and actions herein.

Accordingly, BP's arguments, based on the statutory language regarding liability to a "foreign country's" trustee who is asserting claims for damages to the foreign country's natural resources is not pertinent herein. As noted previously, the Plaintiff States are asserting their own claims, not those of the Republic. Of course, BP's argument relating to the appointment of a trustee is applicable solely to claims for damages to natural resources of the federal Republic of Mexico and not to claims for damages to the State's interests in their natural resources or any of the other damages sought by Plaintiffs herein.

Moreover, BP's contention opens the door even further for the assertion of state claims. As it has implicitly admitted, under OCSLA, state law claims also apply where there a "gap" in federal law that needs to be filled. (p. 15, BP's Memorandum). In addition to the savings clause of OPA, which creates plenty of room for the assertion of state claims, Plaintiffs' claims seeking recovery of damages to *their* natural resources is an area not addressed (nor prohibited) by OPA, necessitating the application of state law to provide Plaintiffs' remedies.

**7.     CONCLUSION.**

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request that BP's Motion to Dismiss be denied in all respects. Alternatively, Plaintiffs respectfully request that if any of their allegations are found by this Court to be deficient, that they be given permission to amend to cure same.

Dated: April 26, 2011

Respectfully submitted,

**SERNA & ASSOCIATES PLLC**

/s/ Enrique G. Serna
Enrique G. Serna
enrique@serna-associates.com
20985 IH 10 W
San Antonio, Texas
Telephone: 210.472.2222
Facsimile: 210.228.0839

**<u>CERTIFICATE OF SERVICE</u>**

I hereby Certify that the above and foregoing pleading, **CONSOLIDATED MEMORANDUM IN RESPONSE AND OPPOSITION BY PLAINTIFFS' STATE OF VERACRUZ, STATE OF TAMAULIPAS, AND STATE OF QUINTANA ROO TO BP DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1)& 12(B)(6) COMPLAINTS FILED BY CERTAIN GOVERNMENTAL ENTITIES IN PLEADING BUNDLE C AND THE ARGUMENTS AND CONTENTIONS ASSERTED BY**

**BP DEFENDANTS IN MEMORANDUM IN SUPPORT OF BP DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1)& 12(B)(6) COMPLAINTS FILED BY CERTAIN GOVERNMENTAL ENTITIES IN PLEADING BUNDLE C** has been served on All Counsel by electronically uploading the same to LexisNexis File & Serve in accordance with Pretrial Order No.12, and that the foregoing was electronically filed by using the CM/ECF System which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, this the 26th day of April, 2011.

/s/ Enrique G. Serna
Enrique G. Serna