## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010. | §<br>§<br>§<br>§<br>§ | MDL No. 2179<br>SECTION "J"<br><br>JUDGE BARBIER |
| This Document Relates to:<br>*STATE OF VERACRUZ, REPUB. OF MEXICO v. HALLIBURTON PLC,* No. 10-4239<br>*STATE OF TAMAULIPAS, REPUB. OF MEXICO v. HALLIBURTON PLC,* No. 10-4240<br>*STATE OF QUINTANA ROO, REPUB. OF MEXICO v. HALLIBURTON PLC*, No. 10-4241 | §<br>§<br>§<br>§<br>§<br>§<br>§ | MAGISTRATE SHUSHAN |

**CONSOLIDATED MEMORANDUM IN RESPONSE AND OPPOSITION BY PLAINTIFFS' STATE OF VERACRUZ, STATE OF TAMAULIPAS, AND STATE OF QUINTANA ROO TO HALLIBURTON ENERGY SERVICES, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT [AS TO QUINTANA ROO, TAMULIPAS, AND VERACRUZ] AND MEMORANDUM IN SUPPORT OF HALLIBURTON ENERGY SERVICES, INC.'S MOTIONS TO DISMISS AND, ALTERNATIVELY, FOR A MORE DEFINITE STATEMENT.**

i

**TABLE OF CONTENTS**

1. PRELIMINARY................................................................................................1

2. CONTEXTUAL BACKGROUND.............................................................2

3. PLAINTIFFS CAN MAINTAIN THEIR STATE CLAIMS BASED
   ON OTHER JURISDICTIONAL BASES.................................................5

4. HESI's MISCHARACTERIZATION OF THE COMPLAINTS.................6

   A. Plaintiffs' Allegations Ignored by HESI...........................................6

      i. Plaintiffs Allege Actual Damages to Their Property and Other
         Interests Have Already Occurred—Not Just Future Damages.................7

   B. HESI's Inapplicable Economic Loss Rule.......................................12

   C. Plaintiffs' Allegations Amply Satisfy the Rule 8 "Plausibility" Test.............15

5. OPA EXPRESSLY PERMITS THE ASSERTION OF STATE CLAIMS......................18

   A. OPA Does Not Preempt State Claims or Maritime Claims...........................18

   B. Application Of OCSLA Does Not Preempt State Claims................................26

      i. HESI's Argument Hinges On Unresolved Factual Issues And
         Such Arguments Are Not Supported by Competent Evidence................26

      ii. OCSLA Does Not Bar State Claims, Alone or Through OPA..............31

6. OPA's PRESENTATION REQUIREMENT IS NOT JURISDICTIONAL..................35

7. COMPLIANCE WITH TREATY REQUIREMENTS UNDER OPA..........................42

8. HESI'S NO RESPONSIBILITY ARGUMENT IS UNSUBSTANTIATED...................43

9. CONCLUSION................................................................................46

## TABLE OF AUTHORITIES

**STATUTES**

U.S. CONST. Article III § 2 ...............................................................................5,6

Fed. R. Civ. P. 8...........................................................................................15,16

Fed. R. Civ. P. 12(B)(6) .....................................................................................15

28 U.S.C. § 1331................................................................................................5

28 U.S.C. § 1332................................................................................5,6,35

28 U.S.C. § 1603(a) .........................................................................................6

33 U.S.C. § 2701 .........................................................................................2,40

33 U.S.C. §2702.....................................................................................44

33 U.S.C. § 2707.....................................................................................42,43

33. U.S.C. § 2713.................................................................................36,41

33. U.S.C. § 2715..................................................................................20,25

33. U.S.C. § 2717....................................................................25,26,39,40

33. U.S.C. § 2718.............................................................19,20,21,24,25,33

33. U.S.C. § 2719.....................................................................................19

42. U.S.C. § 6901.....................................................................................19

 43 U.S.C. §1331(f)(1)...............................................................................5,23

43 U.S.C. § 1332(2)................................................................................28

43 U.S.C. § 1333................................................................................5,28,35

**TREATIES**

Agreement of Cooperation Between the United States of America and the United Mexican States Regarding Pollution of the Marine Environment by Discharges of Hydrocarbons and Other Hazardous Substances (signed 1980)...................................43

MEXUS Plan ("Joint Contingency Plan Between the United Mexican States and the United States of America Regarding Pollution of the Marine Environment By Discharges of Hydrocarbons or Other Hazardous Substances....................................43

MEXUS Plan's Gulf Geographic Annex ("MEXUS GULF ANNEX")(Signed Nov. 7, 2007). Parenthetically, it is noted that the MEXUS GULF ANNEX ...................................................43

Cartagena Convention (effective June 8, 2000)("Convention for the Protection and Development of the Marine Environment in the Wider Caribbean Region")..............43

1992 Civil Liability Convention.......................................................................................43

TIAS; 2143 UNTS 405 - Treaty on Maritime Boundaries between the United States of America and the United Mexican States (Signed May 4, 1978; Ratified November 13, 1997).....................................................................................................................8,13,43

**AUTHORITY**

*Aguirre v. Nueces County,* 2007 U. S. App. LEXIS 3028 (5th Cir. 2007)...........................31

*Arbaugh v. Y & H Corp.,* 546 U.S. 500 (2006).............................................................36,37

*Ashcroft v. Iqbal,* 129 U.S. 1937 (2009).........................................................................15,17

*Boca Ciega Hotel, Inc. v. Brouchard Transportation Co.,* 51 F. 3d 235 (11th Cir. 1995).............................................................................................24,40,41

*Brown v. Valmet-Appleton,* 77 F. 3d 860 (5th Cir. 1996)..................................................16

*City of Uvalde v. Crow,* 713 S.W. 2d 154, (Tex. App.—Texarkana 1986).....................14

*Commonwealth of Puerto Rico v. The M/V Emily S, 13 F. Supp 2d 147(D. P.R) (1998)*..............................................................................................................................46

*Cuvillier v. Taylor*, 503 F. 3d 397 (5th Cir. 2007).............................................................15

*Eason v. Thaler,* 73 F. 3d 1322 (5th Cir. 1996)...............................................................31

*Egorov, Puchinsky, Afanasiev & Juring v. Terriberry, Carroll & Yancey,* 183 F. 3d 453, (5th Cir. 1999)..............................................................................................................29

*Freedman v. Briarcroft Prop. Owners, Inc.,* 776 S.W.2d 212 (Tex. App.—Houston [14th Dist.] 1989, writ den...............................................................................................14

*Ft. Worth & Rio Grande Ry v. Glenn,* 80 S.W. 992, (Tex. 1904).......................................14

*Gabarick v. Laurin Mar. (Am.) Inc.,* 623 F. Supp. 2d 741 (E.D. La. 20092)...........21,44,45

*Grand Isle Shipyard Inc. v. Seacor Marine, LLC,* 589 F. 3d 778 (5th Cir. 2009)...............26

*Green Atlas Shipping SA, TMMM Co. v. United States, 306 F.Supp 2d 974 (D. Ore. 2003)*........................................................................................................................46

*Hails v. Atlantic Richfield Co.*, 595 F. Supp 948, (W.D. La. 1984).........................................29

*Henderson v. Erick K. Shinseki, Sect'y of Veterans Affairs,* 131 U.S. 1197 (2010)..................................................................................................................19,33,37,38

*In re Ballard Shipping Co. v. Beach Shellfish,* 32 F. 3d 623 (1st Cir. 1994)....................24

*Isla Corp. v. Sundown Energy, LP,* 2007 U.S. Dist. LEXIS 31259 (E.D. La. 2007).........................................................................................................21,24,25,32,33

*Leboeuf v. Texaco,* 9 F. Supp. 2d 661 (E.D. La. 1998).................................................... 41

*Lormand v. U.S. Unwired, Inc., 565 F. 3d 228, (5th Cir. 2009)*...........................................15,17

*Marathon Pipe Line Co., v. LaRoche Industries, Inc.,* 944 F. Supp. 476 (E.D. La. 1996)................................................................................................................................41

*Morris v. Covan Worldwide Moving, Inc.*, 144 F. 3d. 377 (5th Cir. 1998)......................31

*National Shipping Co. of Saudi Arabia v. Moran Mid-Atl. Corp.,* 924 F. Supp. 1436, 1447 (E.D. Va. 1996), *aff'd,* 122 F. 3d 1062 (4th Cir. 1997)....................................21

*Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207 (1986)......................................27,28,32

*Principality of Monaco v. Mississippi,* 292 U.S. 313................................................................5

*Raffray v. Gulf Logistics, LLC,* 2010 U.S. Dist. LEXIS 133912 *15(E.D. La. 2010)................................................................................................................................28,29

*Ray v. Tandem Computers, Inc.,* 63 F. 3d 429 (5th Cir. 1995).........................................31

*Robins Dry Dock & Repair v. Flint*, 275 U.S. 303 (1927).............................................12,13

*Rodrigue v. Aetna Casualty & Surety Co.,* 395 U.S. 352 (1969)..................................28,29

*Russo v. M/T Dubai Star, 2010 U.S. LEXIS 50967 (N.D. CA. 2010)*..........................................24

*Sanamo v. Trico Marine Services, Inc.,* 73 Fed. Appx. 79, 2003 WL 21756647 (5th Cir. 2003)...............................................................................................................29

*Schneider Nat'l Carriers, Inc. v. Bates,* 147 S.W.3d 264 (Tex. 2004)............................14

*Smith v. Pan Am Air Corp.,* 684 F. 2d. 1102 (5th Cir. 1982)..............................................29

*Sosa v. Coleman,* 646 F. 2d 991 (5th Cir. 1981).................................................................15

*S. Port Marine, LLC v. Gulf Oil L.P.,* 234 F. 3d 58 (1st Cir. 2000)................................21,23

*Steel Co. v. Citizens for Better Environment,* 523 U.S. 83 (1998)....................................37

*Tangius v. M/V Westchester,* 153 F. Supp. 2d 859 (E.D. La. 2001)................22,24,25,34

*Tanglewood East Homeowners v. Charles-Thomas, Inc.,* 849 F. 2d 1568, 1572
(5th Cir. 1988)...........................................................................................................................15

*Tellabs, Inc. v. Makor Issues and Rights, Ltd,* 551 U.S. 308 (2007)................................15

*Tenn. Gas Pipeline v. Houston Cas. Ins. Co., 87 F.3d 150 (5th Cir. 1992)*............................35

*The St. Joe Co. v. Transocean Offshore Deepwater Drilling, Inc.,* 2011 U.S. Dist.
LEXIS 26391 (D. Del. 2011).....................................................................................................22,25

*Turner v. Murphy Oil USA, Inc.,* 2005 U.S. Dist. LEXIS 45123 (E.D. La. 2005)..........41,42

*Union Pacific R. Co. v. Locomotive Engineers and Trainmen Gen. Comm. Of
Adjustment, Central Region,* 130 S. Ct. 584 (2009).....................................36,37,38,39,41

*Union Texas Petroleum Corp. v. PLT Engineering, Inc., 895 F2d 1043,1047 (5th Cir.
1990)*...........................................................................................................................................26

*U.S. v. Locke*, 529 U.S 89 (2000)................................................................................23,24

*U.S. v. M/V Cosco Busan,* 557 F. Supp. 1058, (N.D. Ca. 2008)..........................24,32,39,40

*U.S. v. Pickett,* 598 F.3d 231 (5th Cir. 2010)....................................................................30

*Vann v. Bowie Sewerage Co.,* 90 S.W.2d 561 (Tex. 1936)................................................14

*Vestal v. Gulf Oil Corp.,* 235 S.W.2d 440 (Tex. 1951).......................................................14

*Vicksburg Towing Co v. Miss. Marine Trans. Co.*, 609 F. 2d 176 (5th Cir. 1980)..............13

*Williams v. Potomac Elec. Power Co.,* 115 F. Supp. 2d 561 (D. Md.
2000)........................................................................................................................23,24,25,32,33

*Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385 (1982).........................................38,39,41

**MISCELLANEOUS**

*Oxford American Dictionary & Thesaurus, p.1017 (2003)*.........................................................20

U.S. Coast Guard Regulations 136.305.................................................................................44,45

U.S. Coast Guard Regulations 136.1.......................................................................................45

**COME NOW STATE OF VERACRUZ, REPUBLIC OF MEXICO; STATE OF TAMAULIPAS, REPUBLIC OF MEXICO; AND STATE OF QUINTANA ROO, REPUBLIC OF MEXICO** (hereinafter referred to as "Plaintiffs" or "Mexican States") and hereby file their Consolidated Memorandum In Response And Opposition By Plaintiffs' State Of Veracruz, State Of Tamaulipas, And State Of Quintana Roo To Halliburton Energy Services, Inc.'s Motion To Dismiss Plaintiff's First Amended Complaint [As To Quintana Roo, Tamaulipas, And Veracruz] and Memorandum In Support Of Halliburton Energy Services, Inc.'s Motions To Dismiss And, Alternatively, For A More Definite Statement,  and in support thereof, would respectfully show the following:

**1.    PRELIMINARY:**

Plaintiffs oppose Halliburton Energy Services, Inc.'s Motion To Dismiss Plaintiff's First Amended Complaint filed as To Quintana Roo, Tamaulipas, and Veracruz and further oppose and dispute the arguments and contentions raised in Memorandum In Support Of Halliburton Energy Services, Inc.'s Motions To Dismiss And, Alternatively, For A More Definite Statement  (hereinafter "Halliburton's Memorandum."). Accordingly, Plaintiffs respectfully submit that said Halliburton Energy Services, Inc.'s ("HESI") Motions should be denied.

In addition to the arguments and grounds relied upon in this document, Plaintiffs also rely on the analysis, grounds, and authority cited in the Omnibus Memorandum in Opposition to Defendants' Motions to Dismiss Certain Bundle C Complaints Submitted By the Plaintiffs' Steering Committee (Doc. No. 2110), filed April 24, 2011. Accordingly, Plaintiffs herein incorporate by reference, *verbatim,* as

though fully set forth herein the above-referenced Omnibus Memorandum in Opposition to Defendants' Motions to Dismiss Certain Bundle C Complaints Submitted By the Plaintiffs' Steering Committee.

Furthermore, Plaintiffs note that they are in the process of seeking leave to amend their First Amended Complaints through the filing of a Motion seeking leave to file their Second Amended Complaints. Said Motion will be filed on or near the date of the filing of this Consolidated Memorandum. Accordingly, many, if not all, of HESI's challenges to the allegations herein will be mooted by such Second Amended Complaint. Nevertheless, Plaintiffs will address herein the misapplication of legal precedent, HESI's distortions of Plaintiffs' allegations in their First Amended Complaint, and other unmeritorious contentions raised by HESI.

**2.      CONTEXTUAL FRAMEWORK:**

Like BP and other Defendants herein, HESI manifests a reluctance to be judged under the laws of the U.S. states that HESI and others have despoiled. HESI urges dismissal of all of Plaintiffs' state claims, arguing that the Oil Pollution Act, 33 U.S.C. § 2701 *et seq.* ("OPA") —and nothing but OPA—applies herein.   HESI's miscomprehension of the applicable statutory framework and pertinent case law will be addressed below. At this juncture, however, it is instructive to note that HESI manifests what can only be described as a lack of confidence in its own arguments. In HESI's recently filed pleadings against other co-Defendants, HESI asserts its own **state** law claims, although purportedly brought as maritime claims. Thus, while expending considerable resources of this Court with its arguments that state and maritime claims cannot be maintained, HESI has filed both types of claims against

cross-Defendants. HESI judicially abandons its contentions by asserting state law claims (although calling them maritime) against BP in its Original Cross-Claims of Defendant Halliburton Energy Services, Inc. (Doc. No. 2085):

**Count III—NEGLIGENCE/GROSS NEGLIGENCE/WILLFUL MISCONDUCT**

42.     The damages and injuries alleged by Plaintiffs/Claimants occurred as a result of the negligence of BP, Anadarko E&P, [continuing with additional parties]. These acts of negligence render these Cross-Defendants liable pursuant to the provisions of 46 USC § 30104 and the general maritime law, **or other applicable law for negligence**. (emphasis added).

43.     BP was negligent, grossly negligent, and/or acted with willful misconduct in at least the following ways . . .[listing many of the same negligent actions asserted by Plaintiffs herein].

Halliburton proceeds to allege negligence against Cameron (Par. 51); negligence, gross negligence, and willful misconduct against Weatherford (Par. 52); Negligence against M-1, Dril-Quip, and others (Par. 53, 54, 55, respectively). It also alleges claims of strict products liability against Cameron in Count III (Par. 57-60).

Similarly, in BP's Cross-Complaint and Third-Party Complaint Against Halliburton (Doc. No. 2082), BP alleges that Halliburton engaged in the following:

- Fraudulent Conduct (Count I--Par. 117, *etc.*);
- Fraudulent Concealment (Count II—Par. 125, *etc.*);
- Negligence and Fault (Count III—Par. 132, *etc.*).

Additionally, BP (which also takes the position state claims are barred herein) raises numerous state claims (although couched as maritime claims) against another co-defendant, Cameron. BP thus asserts the following state law claims:

- Negligence in design and maintenance of the blow out preventer. (Section J, Par. 57, *etc.*);
- Negligence in the Maintenance of the Blowout Preventer (Section K. Par. 71, etc.);
- Negligent Modification of the Blow Out Preventer (Section L. Par. 77 *etc.*).

3

(BP Exploration & Production Inc.'s Third-Party Complaint Against Cameron International Corp., (Doc. No. 2065).

Transocean, too, has filed claims based on state law seeking affirmative relief thereunder. (See, Transocean's Rule 13 Cross-Claims/Counter-Claims (Doc. No. 2068). Thus, Transocean alleges that it was not at fault, but that the spill and explosion were caused "in whole or in part by negligent acts, omissions or culpable conduct of the Cross-Defendants . . ." (*Id.* at Par. 65 and Par. 129). Transocean continues: "Each of the Cross-Defendants named herein is jointly, severally, and/or solidarily liable under various principles of general maritime law *and/or applicable state and/or applicable federal tort law.*" (emphasis added). *Id.* at Par. 66).

Clearly, HESI, as well as the other Defendants herein, is quick to abandon its own preemption arguments when *its* interests and claims are being presented to the Court. Thus, while spuriously arguing that Plaintiffs cannot assert their state law claims, HESI unabashedly files its own state claims. Plaintiffs' comments in this regard should not be misconstrued as arguing that HESI cannot maintain these state claims. It can—just like Plaintiffs herein can also do. Plaintiffs do note, however, that there is nothing in OPA, the Outer Continental Shelf Act, or any other principle of law that would give HESI preferential treatment allowing it to assert state and admiralty claims, while denying Plaintiffs the same right to do so. This is particularly true since HESI's efforts to eradicate the application of state law claims ignore both statutory language and well-settled judicial principles.

Apart from the glaring inconsistencies in HESI's position noted above, HESI's Motion distorts not only OPA and the Outer Continental Shelf Lands Act ("OCSLA"),

but also the allegations in Plaintiffs' Amended Complaints. HESI's Motion also ignores Plaintiffs' additional underpinnings for this Court's jurisdiction over Plaintiffs' claims. Therefore, regardless of the outcome of the Court's determinations regarding other issues herein, Plaintiffs are entitled to maintain their claims herein under diversity jurisdiction and the U.S. Constitution. Additionally, HESI's contentions, in large part, hinge on "factual" assertions on issues which have yet to be determined through evidence, discovery, or otherwise. As demonstrated below, HESI's arguments are without foundation and, therefore, HESI's Motion should be denied.

3.      **PLAINTIFFS CAN MAINTAIN THEIR STATE CLAIMS BASED ON OTHER JURISDICTIONAL BASES.**

Plaintiffs have alleged numerous state claims. Although HESI inappropriately attempts to recast them as maritime claims, they remain state law claims, which are properly brought herein. In addition to asserting federal question jurisdiction under 28 U.S.C. § 1331 by virtue of Plaintiff's claims under the Oil Pollution Act ("OPA"), Plaintiffs have asserted jurisdiction under several other provisions. For example, they assert jurisdiction under 28 U.S.C. Section 1331 and the federally adopted state laws under the Outer Continental Shelf Lands Act. 43 U.S.C. §§ 1331(f) (1) and 1333(a) (2). Additionally, jurisdiction is vested and conferred by Article III, § 2 of the United States Constitution inasmuch as this case between a foreign state and the citizens of a State of the United States. (Par. 29, Plaintiffs' Amended Complaints). *E.g., Principality of Monaco v. Mississippi,* 292 U.S. 313, 323 n. 2 ("There is no question but that foreign States may sue private parties in the federal courts."). Plaintiffs further assert jurisdiction pursuant to 28 U.S.C. Section 1332 based on

diversity of citizenship and the amount in controversy. (Par. 29, Plaintiffs' Amended Complaints). This Court has jurisdiction pursuant to 28 U.S.C. Section 1332(a)(4), because this matter in controversy vastly exceeds the minimum jurisdictional amount of $75,000, exclusive of interest and costs, and this case is between Plaintiff (a foreign state, as defined in 28 U.S.C. § 1603(a)) and citizens of a State or of different States.

Although HESI has seeks dismissal of Plaintiffs' state law claims and has otherwise asserted that they cannot be maintained through either OPA or OCSLA (which Plaintiffs dispute), HESI's Motion does not challenge Plaintiffs' rights to maintain these state claims under the alternative jurisdictional vehicles, *i.e.*, diversity jurisdiction and/or Art. III, § 2 of the U.S. Constitution. While Plaintiffs submit that HESI's Motion is completely without merit and that it should be denied in its entirety, Plaintiffs also note that regardless of this Court's determination based on OPA and/or OCSLA, Plaintiffs' state claims remain viable under this Court's alternate diversity and constitutional jurisdiction.

**4.      HESI'S MISCHARACTERIZATION OF THE COMPLAINTS:**

Initially, Plaintiffs note that HESI inappropriately mischaracterizes their state tort claims as "maritime" claims and then proceeds to argue that such claims are barred. Plaintiffs object to this mischaracterization, but note that even if the claims were to be thought of as maritime, they are still maintainable herein. See, Omnibus Memorandum in Opposition to Defendants' Motions to Dismiss Certain Bundle C Complaints Submitted By the Plaintiffs' Steering Committee (Doc. No. 2110).

**A.      Plaintiffs' Allegations Ignored by HESI.**

HESI attempts to minimize, ignore, avoid, and distort the nature of the allegations against it and the nature of the damages incurred by Plaintiffs. Overlooking or consciously ignoring a multitude of allegations by Plaintiffs, HESI argues that Plaintiffs lack standing because they have asserted only future damages that are speculative and not imminent and that they have not alleged a damage to a proprietary interest (Section 8, pp. 20-22, HESI's Mem.). However, even a cursory review of Plaintiffs' allegations demonstrates HESI's contentions are not grounded on a fair and complete reading of Plaintiffs' allegations.[1] For example, Plaintiffs have presented numerous allegations that Defendants' (including HESI's) actions and omissions proximately caused, caused, resulted in, or otherwise led to damages of its property, governmental interests, economy, waters, natural resources and other interests.

i.     **Plaintiffs Allege Actual Damages to Their Property and Other Interests Have Already Occurred—Not Just Future Damages.**

At the outset of their Amended Complaints, Plaintiffs asserted that Plaintiffs are states comprising part of the Republic of Mexico. (Par. 1 and 7, Plaintiffs' Amended Complaints). *All Plaintiffs have shorelines and waters as to which they possess governmental and proprietary interests in that they own, manage, control, maintain, use, develop, govern, and protect these natural resources and their related environments.* (emphasis added) (Par. 2, 5, 6, Plaintiffs' Amended Complaints).

---

[1] Since the filing of Plaintiffs' First Amended Complaints, the negative effects and damages resulting from the oil spill and dispersants have been aggravated by winds, tides and weather—allegations which Plaintiffs are in the process of seeking leave to file a Second Amended Complaint with the Court's permission. Accordingly, many of HESI's arguments herein will be mooted by such Second Amended Complaint.

Significantly, as acknowledged by treaties between the United States and Mexico, Mexico's waters extend deeply into the Gulf of Mexico and form a common border with the United States' territorial waters. (Treaty on Maritime Boundaries between the United States of America and the United Mexican States, May 4, 1978, Entered into force November 13, 1997). Within these Mexican-controlled waters which are contiguous with the U.S. waters covered by the oil spill herein, Mexico has an Exclusive Economic Zone as to which Mexico and the *Mexican States have exclusive rights, including the exclusive rights to control, regulate, and economically develop, among others.* Oil spills and dispersants do not respect international (or state) boundaries and consequently, *the devastating effects of the oil spill have already been felt in Plaintiffs' waters and shorelines.* (*E.g.,* Par. 2, 3, and 41 of Plaintiffs' Amended Complaints). Contrary to HESI's mischaracterization of Plaintiffs' Amended Complaints, Plaintiffs *do* allege that damages have *already* occurred and *do* assert claims for *past*, current, and future damages that "were caused" by HESI's actions and omissions, as well as those of the other Defendants. A few examples follow:[2]

- [Plaintiff] brings this [action] against Defendants for losses, injuries, and damages **arising out of** the catastrophic and avoidable oil spill in the Gulf of Mexico ....". **(** Par. 2, Plaintiffs' Complaints);

- As a **direct and proximate result** of the mismanagement, omissions, and negligence which permeated Defendants' operations and activities on and related to the Deepwater Horizon which led to the disastrous explosion and oil spill, Plaintiff **has suffered** and in the future will suffer severe economic, environmental, and other damages as further set forth below. (Par. 3 of Plaintiffs' Complaints);

---

[2] In the interests of brevity, all three of Plaintiffs' Amended Complaints are sometimes referred to collectively as "Plaintiffs' Complaints").

- With the wellhead's prolonged gushing of tens of thousands of gallons of oil per day into the waters of the Gulf of Mexico and/or the Caribbean, Plaintiff **has suffered, is suffering**, and will continue to suffer **serious financial losses and damages,** including, but not limited to, lost profits, incurred present and future expenses related to preventive measures and scientific studies, lost business, diminution of the tourist and related industries, and other damages and injuries. (Par. 6, of Plaintiffs' Complaints);

- [Plaintiffs] rel[y] on the natural resources found in the Gulf of Mexico and Caribbean waters and such natural resources are **now damaged** and further endange**red by the wrongful acts** of Defendants. (Par. 7, of Plaintiffs' Complaints);

- **As a result of** the events described herein, Plaintiff **has suffered** and will continue to suffer injuries, losses, and damages. . .". (Par. 8, of all Plaintiffs' Complaints);

- Fishing operations in the Gulf of Mexico and/or the Caribbean **have been** and will be **injured and damaged by the contaminating and destructive oil** that has killed and tainted fish and other marine life, thus significantly reducing the quantities of fish and other marine life that can be harvested for safe human consumption. The toxic oil **has** and will continue **to cause** severe financial losses to Plaintiff[s]. Additionally, **the actual effects** of the oil, along with reports of same, have **adversely affected** commerce and tourism. Plaintiff[s'] residents rely on a clean Gulf of Mexico and Caribbean, sea life, clean beaches and safe navigable waters for their livelihoods. The State[s] and its [their] citizens also rely heavily on tourism which is centered around its beautiful beaches, coral reefs, marine life, fishing, water sports, and other on-shore and offshore activities. All of this has been **jeopardized, damaged**, and severely **impacted by** Defendants' actions. (Par. 41 of Quintana Roo's Amended Complaint; See also, Par. 41 of Veracruz and Tamaulipas' Amended Complaints alleging, "Plaintiff, itself, **has had** its fishing operations **injured** and **damaged by** the contaminating and destructive oil . . .");

- Defendants knew or should have known that their negligent, grossly negligent, willful, wanton, and/or reckless conduct **would result** in the oil disaster, **causing past,** present, and future damages to all of the shorelines and waters adjacent to the Gulf of Mexico. (Par. 45, Plaintiffs' Complaints);

- The **past, present**, and future injuries to the State were also **caused by** or **aggravated** by the fact that Defendants failed to take necessary actions to mitigate the dangers associated with their operations. (Par. 46, Plaintiffs' Complaints).

- **As a direct and proximate result** of the combining and concurring negligence and wantonness of all Defendants, the State **has** and will continue to be

9

**damaged**, including, but not limited to, in the manners delineated herein. There are many other potential effects from the oil spill that have not yet become known, and Plaintiff reserves the right to amend this Complaint once additional information becomes available. (Par. 48, Plaintiffs' Complaints);

- Additionally, the injuries to Plaintiff also **were caused** by or **aggravated** by the fact that Defendants failed to take necessary actions to mitigate the danger associated with their operations. Defendants' initial response to the disaster was ineffective and only intensified the damage. (Par. 52, Plaintiffs' Complaints);

- … the damages **incurred to date** for which Defendants are jointly and severally liable to Plaintiff include, but are not limited, to: [listing a specification of damages] (Par. 55, Plaintiffs' Complaints);

- **As a direct and proximate result of** Defendants wanton or reckless conduct, Plaintiff **has suffered** legal injury and damages, in an amount to be proven at trial, including, but not limited to, loss of profits, revenues, loss of income, and other economic loss. (Par. 61, Plaintiffs' Complaints);

- Defendants' violations of these statutory standards **proximately caused** Plaintiff's injuries, warranting compensatory and punitive damages. (Par. 67, Plaintiffs' Complaints);

- **As a result of** the disaster and Defendants' gross negligence or willful misconduct with respect to the acts and omissions alleged herein, all responsible parties **have caused** and are liable for the following **past, present,** and future expenses and damages Plaintiff **has suffered**, which damages are the type of damages that may be recovered pursuant to the Oil Pollution Act. Plaintiff demands compensation from Defendants in amounts to be determined by the trier of fact, said amounts to include: [listing damages]. (Par. 72, Plaintiffs' Complaints);

- As a **direct and proximate result of** Defendants' nuisance generating conduct and nuisance continuation conduct, Plaintiff **has suffered** loss of income and other damages. (Par. 76, Plaintiffs' Complaints);

- The conduct of Defendants unreasonably **interfered** with the public health and safety. (Par. 79, Plaintiffs' Complaints);

- Defendants' acts and omissions with respect to the release of oil, dispersants, and other materials and substances will cause and continue to cause a material, substantial and unreasonable interference with the use and enjoyment of the waters, property, estuaries, seabed, animals, plants, beaches, shorelines, coral reefs, coastlines, marshlands, and other natural and economic resources of the State . . . Furthermore, **Defendants have caused** damage and injury **to same and to Plaintiff**. (Par. 80, Plaintiffs' Complaints);

10

- The conduct of Defendants **caused** Plaintiff to suffer particular damages distinct from the general public. As a **direct and proximate result** of Defendants' nuisance generating conduct and nuisance continuation conduct, Plaintiff and its citizens **have suffered** past, present, and future losses, by way of example, loss of income; loss of revenue for the State; expenditures of substantial amounts to combat, abate, and prepare for the oil spill; and other damages. (Par. 81, Plaintiffs' Complaints).

- **As a direct and proximate result of** Defendants' nuisance generating conduct, Plaintiff **has suffered** loss of income and other damages. (Par. 83, Plaintiffs' Complaints);

- Furthermore, the Prayer for Relief lists **past, present**, and future damages among the relief sought. ((Paragraph VII, Plaintiffs' Complaint).

(emphasis added)

The allegation that Plaintiffs' injuries and damages were "proximately caus**ed**" by Defendant's actions and omissions appears no fewer than seven times in the above allegations. Moreover, as even a cursory review shows, the allegations are replete with other assertions that Plaintiffs' damages were "caused by," "resulted from," "arise out of" or were caused "by" HESI's actions and omissions, as well as those of others. The "past tense" of the verbs utilized in the foregoing allegations clearly demonstrate that Plaintiffs allege damages that *have already occurred,* although other portions of the Complaints do assert claims for future damages.

HESI's efforts to mischaracterize Plaintiffs' claims as aimed solely at future unrealized damages or damages unrelated to the damage to Plaintiffs' property interests, natural resources, and other interests are clearly fallacious. Plaintiffs' do allege, among other things, that their governmental and proprietary interests in their property, lands, shores and adjoining waters, wildlife, and natural resources have been damaged by the Spill:

- Par. 80, Plaintiffs' Complaints, *supra*;

11

- Par. 41 of Quintana Roo's Amended Complaint, *supra*; See also, Par. 41 of Veracruz and Tamaulipas' Amended Complaints, *supra,* alleging, "Plaintiff, itself, **has had** its fishing operations **injured** and **damaged** by the contaminating and destructive oil . . .");

- Par. 45, Plaintiffs' Complaints, *supra*;

- Par. 7, of Plaintiffs' Complaints, *supra*;

- Par. 81, Plaintiffs' Complaints, *supra*;

- See, also, Par. 3, 6, 8, 46, 55, 61, 72, 76, and 79 of Plaintiffs' Complaints, *supra,* alleging **past and actual** damage to Plaintiffs' proprietary and governmental interests. (emphasis added).

Accordingly, it is respectfully submitted that HESI's arguments do not fairly read Plaintiffs allegations and therefore HESI's motions be denied.

### B.    HESI's Inapplicable "Economic Loss" Rule.

As clearly demonstrated above, Plaintiffs allege in clear and uncertain terms that their property, proprietary interests, and other interests and rights have already been despoiled, damaged, and polluted by the Oil Spill. Yet, HESI contends that Plaintiffs have not alleged damage to property and that, consequently, Plaintiffs cannot maintain their state causes of action for negligence, gross negligence, wantonness, negligence *per se*, and public and private nuisance. (P. 21, HESI's Memorandum). To support of its argument, HESI overlooks Plaintiffs' allegations to the contrary and relies on an overly broad application of the rule expressed in *Robins Dry Dock & Repair v. Flint*, 275 U.S. 303 (1927).

In *Robins,* a third party attempted to sue under a contract between the dry dock and a ship owner after the dry dock had damaged the ship, preventing the third party from using it. The ship owner had settled its claims with the negligent dry dock owner. With respect to the tort claim, the Court held that the defendant's

tort was only against the ship and that since the third party did not own the ship, the third party could not sue for tort. In other words, if a tort existed, it belonged to the owner of the ship, not the third party. However, where the plaintiff has an interest in the damaged property, the rule of *Robins* does not apply. *Vicksburg Towing Co v. Miss. Marine Trans. Co.*, 609 F. 2d 176 (5th Cir. 1980) (owner of damaged property could sue).  Although HESI seeks to extend this holding to bar Plaintiffs' state claims the economic loss rule is inapplicable, factually and legally. As amply noted in Part 4A(i), above, Plaintiffs have clearly alleged actual damages to their property (real and personal), as well as other proprietary interests, as exemplified by the following:

- Par. 80, Plaintiffs' Complaints);

- Par. 41 of Quintana Roo's Amended Complaint; See also, Par. 41 of Veracruz and Tamaulipas' Amended Complaints alleging, "Plaintiff, itself, **has had** its fishing operations **injured** and **damaged** by the contaminating and destructive oil . . .");

- Par. 45, Plaintiffs' Complaints;

- Par. 7, of Plaintiffs' Complaints;

- Par. 81, Plaintiffs' Complaints;

- Par. 3, 6, 8, 46, 55, 61, 72, 76, and 79 of Plaintiffs' Complaints alleging **past and actual** damage to Plaintiffs' proprietary and governmental interests. (emphasis added).

Moreover, under the Treaty on Maritime Boundaries between the United States of America and the United Mexican States, May 4, 1978, Plaintiffs have and share an interest in Mexico's Exclusive Economic Zone, a large expanse of the Gulf of Mexico that adjoins U.S. territorial waters. As Plaintiffs have clearly alleged, these interests and rights have already been damaged by the oil spill and subsequent

13

actions of Defendants.  Therefore, contrary to HESI's arguments, Plaintiffs are not alleging only future or unrealized damages.

Furthermore, to bring a tort action, the plaintiffs' interests need not be one based on strict "ownership" in a traditional sense since anyone who owns, occupies, or otherwise has an interest in property can maintain a claim for private nuisance. *Ft. Worth & Rio Grande Ry v. Glenn,* 80 S.W. 992, 993-4 (Tex. 1904); *Schneider Nat'l Carriers, Inc. v. Bates,* 147 S.W.3d 264, 268 n. 2 (Tex. 2004) (allowing tenant to assert claim); *Freedman v. Briarcroft Prop. Owners, Inc.,* 776 S.W.2d 212, 215-16 (Tex. App.—Houston [14th Dist.] 1989, writ den.)(property owners' association could maintain claim). Moreover, recovery for nuisance may be obtained regardless of whether the plaintiff owns the land involved and regardless of the absence of injury to the land. *Vann v. Bowie Sewerage Co.,* 90 S.W.2d 561, 563 (Tex. 1936) (allowing recovery for personal injuries arising from foul orders from polluted creek). Nuisance actions are not limited to recovery of damage to realty, but may also recover for loss of personal property and personal injury. *Vestal v. Gulf Oil Corp.,* 235 S.W.2d 440, 441-2 (Tex. 1951) (nuisance claims can recover for loss of enjoyment and use of property, as well as for damages to health or personal comfort); *City of Uvalde v. Crow,* 713 S.W. 2d 154, 158-9 (Tex. App.—Texarkana 1986).

Here, the Plaintiffs do allege proprietary and governmental interests (*e.g.*, beaches, coral reefs, land, *etc.*). Moreover, they do allege ownership, control, management rights, and other interests in the Gulf waters adjacent to the *Deepwater Horizon* that extend uninterrupted to the very shores of the States of Mexico.

Plaintiffs further clearly allege harm—not just to the marine environment—but also to their property interests, governmental interests, and other aspects, as well. In short, HESI's argument is devoid of either factual or legal support.

**C.    Plaintiffs' Allegations Amply Satisfy the Rule 8 "Plausibility" Test.**

Rule 8, Fed. R. Civ. P. requires only a "short and plain statement of the claim showing that the pleader is entitled to relief. Rule 8 (a) (2). Therefore, when ruling on a Rule 12(b) (6) motion to dismiss, the Court must accept as true all well-plead allegations and resolve all doubts in favor of the plaintiff. *See, Tanglewood East Homeowners v. Charles-Thomas, Inc.,* 849 F. 2d 1568, 1572 (5th Cir. 1988). Since all doubts are to be resolved in the plaintiffs' favor, courts should deny a Rule 12(b) (6) motion unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* Rule 12(b) (6) motions are viewed with disfavor and are rarely granted. *Sosa v. Coleman,* 646 F. 2d 991 (5th Cir. 1981).

To state a claim under Rule 8, the complaint does not have to allege "detailed factual allegations." *Ashcroft v. Iqbal*, 129 U.S. 1937, 1949 (2009); *Cuvillier v. Taylor*, 503 F. 3d 397, 401 (5th Cir. 2007). Rather, the complaint need only state a claim that is plausible on its face. *Id.;* A claim is plausible on its face when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* As the Fifth Circuit has noted, courts must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Lormand v. U.S. Unwired, Inc.,* 565 F. 3d 228, 232 (5th Cir. 2009)*, citing Tellabs, Inc. v. Makor Issues and Rights, Ltd,* 551 U.S.

308 (2007). Plaintiffs respectfully submit that the discussion below amply demonstrates that they have complied with the requirements of Rule 8. However, should the Court determine that additional specificity is required, Plaintiffs respectfully request that they be given the opportunity to amend their complaints accordingly.

Plaintiffs' allegations are more than plausible, especially when all reasonable inferences are resolved in Plaintiffs' favor, to meet the Rule 8 test. Initially, the Fifth Circuit has recognized that plaintiffs may allege that multiple defendants engaged in tortious or other unlawful conduct. *Brown v. Valmet-Appleton*, 77 F. 3d 860, 863 n. 10 (5th Cir. 1996) ("That plaintiff's allegations embrace [defendants] *in globo* does not detract from their specificity. An acceptable reading of the pleadings alleges that *each* defendant engaged in the tortious conduct therein described.").

Plaintiffs' allegations negate HESI's contention that Plaintiffs' Complaints lack specificity. Plaintiffs have alleged, "As a direct and proximate result of the mismanagement, omissions, and negligence which permeated Defendants' operations and activities on and related to the *Deepwater Horizon* which led to the disastrous explosion and oil spill, Plaintiff[s] [have] suffered and in the future will suffer severe economic, environmental, and other damages as further set forth below." (Par. 3, Plaintiffs' Amended Complaints). The Complaint provides very specific detailed factual allegations regarding HESI's and the other defendants' actions and omissions leading up to and after the explosion of the *Deepwater Horizon*. (*E.g.*, Par. 34, 35, 36, 38, 40, 41, 43, 46). HESI is alleged to be jointly and severally liable with the other Defendants. (Par. 42, 50, 51). Contrary to HESI's

contention, Plaintiffs' Complaints are replete with specific factual allegations pointing out HESI's culpable acts and omissions. In fact, in Paragraph 51 of their Complaints, Plaintiffs have listed **fifty-six** detailed, fact-specific omissions, violations of duties, negligent actions and other liability creating matters. These, as well as other allegations are incorporated by reference into Plaintiffs' statements of their claims. Furthermore, Plaintiffs specifically allege, "Whenever it is alleged herein that a corporate or business defendant engaged in tortious conduct, omissions, or actions, it did so through its authorized agents, officers, employees, representatives, and others acting on its behalf." (Par. 32). Since this allegation is carried over into all of the other allegations, Plaintiffs' Complaints do allege that HESI's employees, agents, *etc.* engaged in the omissions and actions giving rise to Plaintiffs' claims.

Although Plaintiffs' complaints need not allege 'detailed factual allegations." *Ashcroft v. Iqbal*, 129 U.S. at 1949, Plaintiffs have amply done so. Additionally, Plaintiffs have stated a claim that is plausible on its face since the factual content in their complaints would readily allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* This is especially true since the factual allegations in the complaint must be accepted as true and all reasonable inferences drawn in the plaintiffs' favor. *Lormand v. U.S. Unwired, Inc.,* 565 F. 3d at 232. Accordingly, HESI's motion to dismiss must be denied. In the alternative, should the Court determine there are deficiencies in the Complaint, Plaintiffs request leave to amend to cure same as being presented in their Motion for Leave to File their Second Amended Complaints.

5. **OPA EXPRESSLY PERMITS THE ASSERTION OF STATE AND MARITIME CLAIMS.**

Reduced to its essence, HESI's argument is that OPA—and no other law—applies in this litigation. (*E.g.*, Part III of HESI's Memorandum). Thus, HESI seeks dismissal of Plaintiffs' state law claims, seeking to completely eradicate the applicability of state law and supplant it entirely with OPA, notwithstanding the explicit language in OPA and the OCSLA to the contrary. Understandably, HESI does not cite any case specifically holding that **state** claims are preempted, but relies only on inapposite, generalized judicial pronouncements regarding **maritime law**. Moreover, as noted above, HESI and other Defendants have alleged their own state law claims against each other, thus implicitly (and even explicitly) admitting that their arguments are fallacious. Curiously, HESI does not explain how its own state court claims (*e.g.*, negligence, fraudulent conduct and concealment, *etc.*) would be saved by OPA while Plaintiffs' claims (*e.g.,* negligence, gross negligence, nuisance, *etc.*) are swept away.

HESI's argument rests heavily on two untenable propositions: 1) that OPA preempts all state law claims [which it does not]; and 2) that OCSLA is the only applicable federal jurisdictional basis herein [which it is not].  As seen below, both of HESI's underpinnings lack of any statutory or precedential support.

A.    **OPA Does Not Preempt State Claims or Maritime Claims.**

Regardless of whether OPA is relied upon as a "stand alone" federal claim or applied through OCSLA, OPA is not so all-encompassing that it preempts or otherwise affects state law or maritime. Rather, as amply demonstrated below, OPA clearly provides that it does not affect or preempt state law and that such state

claims may be maintained independently or along with OPA claims. Congress specifically provided for the contemporaneous application of state law in Section 2718:

§ 2718. Relationship to other law

(a) **Preservation of State authorities**; Solid Waste Disposal Act.

**Nothing** in this Act or the Act of March 3, 1851 shall—

(1) affect, or be construed or interpreted as **preempting**, the authority of any State or political subdivision thereof from imposing any **additional liability or requirements** with respect to—

(A) the discharge of oil or other pollution by oil within such State; or
(B) any removal activities in connection with such a discharge; **or**

(2) **affect, or be construed or interpreted to affect or modify in any way the obligations or liabilities of any person under** the Solid Waste Disposal Act (42 U.S.C. 6901 et seq.) **or State law, including common law.**  (emphasis added).

The title of a statutory provision is instructive. *Henderson v. Erick K. Shinseki, Sect'y of Veterans Affairs,* 131 S.CT. 1197 (2010). Section 2718's title clearly declares its purpose, *i.e.*, the "*Preservation* of State authorities."  In addition to its title, the other language of this provision clearly pronounces its intent and purpose. Unambiguous language declares that "nothing" in OPA shall "affect" or "preempt" the authority of states to impose additional state law liabilities or requirements. Section 2718(a). In case it was not clear the first time, OPA's language repeats the absence of preemption in even clearer and more emphatic terms: "*Nothing*" in OPA "affects" or "modifies" "***in any way***" obligations or "liabilities" under "State law, *including common law.*" (emphasis added). Section 2719(a) (2). A more resounding rejection of HESI's argument would be difficult to imagine. "*Nothing*"

must be given its plain and ordinary meaning—it means "not anything;" "no thing."

*Oxford American Dictionary & Thesaurus,* p. 1017 (2003). Additional language in OPA reverberates with the statutory declaration that State laws, including common law, are preserved and do apply:

> **(c) Additional requirements and liabilities; penalties.** *Nothing* in this Act
> ... shall in any way affect, or be construed to affect, the authority of the
> United States or **any State** or political subdivision thereof—
>
> (1) **to impose additional liability** or additional requirements; or
>
> (2) to impose, or to determine the amount of, any fine or penalty
> (**whether criminal or civil in nature**) for any violation of law;
> relating to the discharge, or substantial threat of a discharge, of oil.

§ 2718 (c).

Again, OPA clearly and unambiguously recognizes that states may impose "additional" state law liabilities, requirements, fines, and penalties, regardless of whether criminal or civil in nature. *Id.*

Contrary to the opinions of various courts relied upon by Defendants, OPA also contains express language that also preserves and permits admiralty and maritime law claims (See, Omnibus Memorandum in Opposition to Defendants' Motions to Dismiss Certain Bundle C Complaints Submitted By the Plaintiffs' Steering Committee). Thus, OPA specifically provides:

> § 2715. Savings Provision
>
> (e)    Admiralty and maritime law. Except as otherwise provided in this Act,
> this Act **does not affect—**
> **(1) admiralty and maritime law; or**
>
> **(2)** the jurisdiction of the district courts of the United States with
> respect to civil actions **under admiralty and maritime jurisdiction,
> saving to suitors in all cases all other remedies to which they are
> otherwise entitled.  (emphasis added).**

As seen below, OPA's savings clauses have been judicially determined to allow state claims to be maintained, regardless of whether they were filed independently or with OPA claims.

HESI's preemption argument is identical to the contention rejected by this court in *Isla Corp. v. Sundown Energy, LP,* 2007 U.S. Dist. LEXIS 31259 (E.D. La. 2007). As herein, the defendant in that case argued that plaintiff's state common-law claims were precluded and contended that OPA provided the exclusive remedy. Noting the above-cited language in § 2718(a) providing that state law and additional state liabilities or requirements are unaffected by OPA, the Court held, "Therefore, OPA does not preempt Plaintiff's state law claims." *Id.* at *5.   In reaching this result, the Court pointed out that cases that *appeared* to reach a contrary result,[3] actually

---

[3] For example, *South Port Marine, LLC v. Gulf Oil Ltd. P'ship,* 234 F. 3d 58 (1st Cir. 2000). As noted by the Court, itself, no *state* claims were at issue on appeal and only OPA and general admiralty and maritime law claims were before the Court. *Id.* at 64. In focusing on the specific issues before it, the Circuit Court noted the misnomer of "preemption" used by the parties:

> First, we note that, although the parties have referred to this issue as one of "preemption," it does not present any of the federalism concerns normally associated with that word, because we are concerned *only* with the OPA's effect on preexisting *federal* law. The question, therefore, is not complicated by any 'presumption against preemption,' [citations omitted] but is rather a straightforward inquiry into whether Congress intended the enactment of the OPA to supplant the existing *general admiralty and maritime law* .... (emphasis added). *Id.* at 65.

Similarly, other cases cited by HESI failed to address state law claims. *E.g., National Shipping Co. of Saudi Arabia v. Moran Mid-Atl. Corp.,* 924 F. Supp. 1436, 1447 (E.D. Va. 1996), *aff'd,* 122 F. 3d 1062 (4th Cir. 1997)("OPA clearly preempts **maritime law** as to recovery of cleanup expenses and the cost of compensating injured persons."). (emphasis added); *Gabarick v. Laurin Mar. (Am.) Inc.,* 623 F. Supp. 2d 741, 750-51 (E.D. La. 2009)(**general maritime law claims** are displaced by OPA)(emphasis added).

did not even address the applicability of *state* law. As noted by the Court, those cases established only that OPA is the exclusive *federal* remedy and that they did not address, much less limit, additional *state* law remedies.

HESI's preemption argument was actually rejected by one of the cases that HESI cites. *Tangius v. M/V Westchester,* 153 F. Supp. 2d 859  (E.D. La. 2001). Although HESI cites this case (p. 14 of HESI Memorandum) as supporting its preemption argument, the court's holding and reasoning is the opposite of what HESI contends. In considering whether removal from state court was appropriate, the Court in *Tangius* specifically held that OPA does **not** preempt state claims:

> The structure of OPA does not suggest otherwise, since the creation of concurrent state court jurisdiction complements OPA's non-preemption principles. As one group of commentators has observed, 'jurisdiction under the OPA . . . to hear claims for removal costs and damages is not surprising, as the ***OPA does not preempt state law*** in the area of oil spill liability and compensation.' [citations omitted]. (emphasis added).

153 F. Supp. at 863.

The contemporaneous availability of state common-law claims and OPA claims was soundly confirmed by a recent decision arising out of the same HESI oil spill at issue in this MDL. *The St. Joe Co. v. Transocean Offshore Deepwater Drilling, Inc.,* 2011 U.S. Dist. LEXIS 26391 (D. Del. 2011) (". . . prior to OPA, state law was applicable to sea-to-shore pollution. OPA's saving clauses preserve this conclusion even following enactment of OPA."). The plaintiff in that case had filed state court claims based on Florida law. Defendant Transocean sought to remove the case by arguing that OPA displaced the state claims and that OPA provided the exclusive

---

In any event, these cases do not appear to be based on a full reading of the legislative history or all of the statutory provisions in OPA such as § 2715.

remedies. The Court rejected Transocean's preemption arguments and held that OPA does not preclude the application of state law providing for additional liability. In so ruling, the Court relied on well-established judicial authority demonstrating the absence of preemption. *U.S. v. Locke*, 529 U.S 89, 106 (2000) ("We have upheld state laws imposing liability for pollution caused by oil spills . . . Our view of OPA's saving clauses preserves this important role for the states."); *S. Port Marine, LLC v. Gulf Oil L.P.*, 234 F. 3d 58, 65 (1st Cir. 2000) ("We have indeed acknowledged that congress did not intend the OPA to bar the imposition of additional liability by the states."). The *St. Joe Co.* Court also rejected Transocean's attempt to limit the savings clause to state claims within a state's territorial waters and held that the states have authority to impose additional liability through its common laws even if the oil pollution occurs in federal waters.

Similarly, in *Williams v. Potomac Elec. Power Co.,* 115 F. Supp. 2d 561 (D. Md. 2000), the court held that OPA did not preempt state claims similar to those alleged by Plaintiffs herein. In that case, the plaintiffs filed a state court action alleging negligence, trespass, strict liability, and nuisance. The defendant sought to remove the action to federal court, arguing that the state claims were actually OPA claims preempted by OPA. The Court held that OPA does not preempt state claims:

> The Supreme Court [*U.S. v. Locke*, 529 U.S. 89, 120 (2000)] has thus effectively foreclosed any argument as to pre-emption in this case. OPA does not preempt 'state laws of a scope similar to the matters contained in Title I of OPA' such as the state common law actions pleaded here. There is no basis for removal jurisdiction predicated on OPA.

115 F. Supp. 2d at 565.

23

Other cases have also clearly etched the rule that OPA does not preempt or otherwise preclude the assertion of state claims. *In re Ballard Shipping Co. v. Beach Shellfish,* 32 F. 3d 623, 631 (1st Cir. 1994) ("The act [OPA] also expressly provides that it does not preempt state imposition of additional liability requirements."); *U.S. v. M/V Cosco Busan,* 557 F. Supp. 1058, (N.D. Ca. 2008) ("OPA contains an unambiguous savings clause that expressly preserves the authority of the United States [and states] to impose liability pursuant to statutes other than OPA."[citing § 2718]).

Therefore, HESI's arguments confuse OPA's interrelationship with *federal* causes of action with the true issue herein—the preservation of state claims. As the language of OPA unequivocally declares, state claims can be brought independently or simultaneously with OPA claims. *E.g., U.S. v. Locke*, 529 U.S. 89, 120 (2000); *Tangius v. M/V Westchester*, 153 F. Supp. 2d at 864-5; *Isla Corp. v. Sundown Energy, LP,* 2007 U.S. Dist. LEXIS 31259 (E.D. La. 2007). Additionally, state claims are not subject to any requirement of presentment, even in the context of additional OPA claims. *Id.* [4] *Williams v. Potomac Elec. Power Co.*, 115 F. Supp. at 565, n. 3. As the cases clearly demonstrate, the preservation of state laws, state remedies, and state common law is unequivocal regardless of whether they may constitute the basis for the imposition of additional remedies such as punitive damages. *See, Williams v.*

---

[4] In any event, if there would be any dismissal for failure to make a presentment of OPA claims, such dismissal would be without prejudice. *E.g., Russo v. M/T Dubai Star,* 2010 U.S. LEXIS 50967 (N.D. Ca. 2010); *See, Boca Ciega Hotel Hotel, Inc. v. Brouchard Transportation Co.,* 51 F. 3d 235, 240 (11th Cir. 1995)(plaintiffs remain free to refile "if and when" they comply with presentation requirement).

*Potomac Elec. Power Co.,* 115 F. Supp. 2d 561 (D. Md. 2000) (no preemption of negligence, trespass, strict liability, and nuisance); Section 2718.

Furthermore, acceptance of HESI's contention that OPA completely preempts state claims would create an anomalous result under OPA's provisions conferring jurisdiction to state courts. 33 U.S.C. § 2717(c). Reduced to its essence, HESI's contention is that federal courts, because of OPA, do not have the power or statutory authority to hear state claims, along with OPA claims. Yet, under Section 2717(c), state courts are given jurisdiction over claims for removal costs or damages as defined under OPA and "may consider claims under this chapter or **State** law . . . ". (emphasis added). *Id.; Tangius v. M/V Westchester*, 153 F. Supp. 2d at 864-5. Since state courts clearly have jurisdiction to maintain *state* law claims, along with OPA claims, without any preemption of state claims, an anomalous result would arise if federal courts' authority were diminished as HESI argues. Section 2717(c) is a broad grant of authority to state courts without any limitation on the types of remedies available in state court (*e.g.*, punitive damages) and without any condition of presentation. *The St. Joe Co. v. Transocean Offshore Deepwater Drilling, Inc.,* 2011 U.S. Dist. LEXIS 26391 (D. Del. 2011); *Isla Corp. v. Sundown Energy, LP,* 2007 U.S. Dist. LEXIS 31259 (E.D. La. 2007); *Williams v. Potomac Elec. Power Co.*, 115 F. Supp.2d at 565, n. 3. If OPA were to preempt state law claims in federal courts as HESI argues, such a principle would diminish the jurisdiction (or statutory authority) of federal courts and give state courts broader jurisdiction to handle state claims and remedies (along with OPA claims) than if those same claims had been brought in federal court. There is no indication in OPA that Congress intended state courts to

have broader powers than federal courts when addressing state claims brought along with OPA claims or that OPA in any manner strips their authority to apply state law. Clearly, HESI's contention would create inconsistent, conflicting, and illogical results under § 2717(c)—an absurd result not intended by Congress.

**B.      Application Of OCSLA Does Not Preempt State Claims.**

The foregoing authorities clearly establish that OPA does not preempt or otherwise preclude the application of state law claims, either with or without OPA. HESI assumes, without facts, that the *Deepwater Horizon* was a "vessel." Yet, the effects of HESI's actions and omissions regarding such matters as the cement, mud, cement slurry, well services, *etc.* clearly found their way into the bottom of the continental shelf, *i.e.,* the Macondo well. Certainly, HESI's arguments based on a "vessel" are premature and should await further development through discovery to determine the applicability of OCSLA herein. As demonstrated below, if OPA were to be applied through the OCSLA, OPA's crucial savings provisions allowing state and admiralty claims would similarly have to be applied.

**i.      HESI's Argument Hinges On Unresolved Factual Issues And Such Arguments Are Not Supported By Competent Evidence.**

Initially, it must be noted that HESI's arguments based on OCSLA only presume that OCSLA applies in the first instance.[5]  However, the arguments as to the status of the *Deepwater Horizon* and the applicable legal analysis are as fluid as the

---

[5] Application of state law under OCSLA requires satisfaction of three factors: 1) the controversy must arise on a situs covered by OCSLA; 2) federal maritime law must not apply of its own force; and 3) the state law must not be inconsistent with federal law. *Union Texas Petroleum Corp. v. PLT Engineering, Inc.,* 895 F. 2d 1043, 1047 (5th Cir. 1990); *Grand Isle Shipyard Inc. v. Seacor Marine, LLC,* 589 F. 3d at 782-3.

currents of the Gulf. Some parties allege that the *Deepwater Horizon* was a "vessel" and that maritime law applies exclusively. (See, e.g., Mem. in Opp. Of Plaintiffs, Bill Francis, *et al.* to Cameron Int'l Motion to Dismiss [Doc. No. 1587] ("It is indisputable that the Deepwater Horizon was a *vessel* for all maritime-law purposes." *Id.* at p. 4); Omnibus Response to Mem. Of Cameron's Motions to Dismiss Bundle A Claims, (same at p. 5). Others allege that the *Deepwater Horizon* was a situs "attached" to the seabed of continental shelf and therefore OCSLA is determinative. (See, Consolidated Mem. Of Law in Support of Motions of Defendants Anadarko (Doc. No. 1426), arguing for situs under OCSLA). Plaintiffs respectfully suggest that overly broad and unduly simplified characterizations (based on argument, not facts) lead to false choices regarding which legal paradigm is applicable.

Under a more focused scrutiny, future discovery and development of the facts will determine that different types of claims are governed by different legal standards. For example, the nature of the claims asserted, including the timing and location of the actions and omissions and the location of their effects will prove crucial. For example, such claims that arose prior to any alleged "maiden voyage" of the *Deepwater Horizon* and/or prior to its being allegedly attached to the seabed cannot be easily connected to either a "vessel" or an OCSLA situs. Such claims would include allegations of fraud and concealment regarding representations or omissions to the Mineral Management Service; the design, manufacturing, and /or selection of the Blow Out Preventer; and numerous others. Other claims arose during the time that the *Deepwater Horizon* operated, exploded, and sank. Still

others are based on decisions that were made and taken after the Deepwater Horizon (either as a vessel or an OCSLA situs) was no longer in existence.

Plaintiffs note that while they do allege jurisdiction under OCSLA, not all of their allegations fall into the purview of OCSLA and many will be determined based on "straight" application of state law under diversity principles. Although OCSLA applies to *many* of Plaintiffs' allegations, the breadth of the statute is not so extensive as to sweep all of the allegations into its scope. OCSLA controls only on the subsoil and seabed of the Outer Continental Shelf, and artificial islands and fixed structures erected thereon. *Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 217 (1986); 43 U.S.C. Sec. 1333(a) (2) (A). OCSLA must be construed in such a manner that the character of the waters above the Outer Continental Shelf as high seas shall not be affected. *Id.;* Sec. 1332(2). Thus, the purpose of the OCSLA was to define a body of law applicable to the *seabed, the subsoil, and the fixed structures* defined therein on the Continental Shelf. *Rodrigue v. Aetna Casualty & Surety Co.,* 395 U.S. 352, 355 (1969).

In many of the cases determining whether or not OCSLA applies, the analysis is curtailed by the fact that the injury occurred at the same time and place as the accident that gave rise to the injury—at the OCSLA situs. In other words, the injury or death was the immediate consequence of the accident on the OCSLA situs such that it was actually one event and the locus of that event was easy to determine. *See, Rodrigue v. Aetna Casualty & Surety Co.* 395 U.S. 352 (1969) (where both plaintiffs suffered their injuries and were killed on the offshore drilling platform, OCSLA applied and case was governed by Louisiana law rather than DOHSA); *Raffray v. Gulf*

*Logistics, LLC,* 2010 U.S. Dist. LEXIS 133912 *15(E.D. La. 2010) (OCSLA inapplicable where locus of negligence [operation of crane] occurred on oil platform, but injury occurred on a ship tied to the platform). Therefore, under OCSLA, courts distinguish between the location of the actions or omissions that give rise to the tort and "where the alleged wrong took effect." *Egorov, Puchinsky, Afanasiev & Juring v. Terriberry, Carroll & Yancey,* 183 F. 3d 453, 456 (5th Cir. 1999); *Raffray v. Gulf Logistics, LLC,* 2010 U.S. Dist. LEXIS 133912 at *7; *Smith v. Pan Am Air Corp.,* 684 F. 2d. 1102 (5th Cir. 1982) (OCSLA did not apply where helicopter taking off from platform hit platform equipment, but crashed into the sea. [Presumably, the workers died when they hit the sea, not when the helicopter hit the platform]); *Hails v. Atlantic Richfield Co.*, 595 F. Supp 948, (W.D. La. 1984) (For jurisdictional purposes, 'a tort occurs where the *impact* of the act or omission produces injury."[citations omitted]). Accordingly, development of a factual context and background is crucial in assessing the applicability of OCSLA.

By way of another example, it appears evident that the Blow Out Preventer was a "device" attached to the seabed such that OCSLA would apply to certain claims surrounding it such as its on-site maintenance or lack thereof, its operation by the personnel on the *Deepwater Horizon*, on-site modifications and malfunctions, *etc.*. Discovery may or may not show that the riser was similarly attached. However, as noted above, the status of the *Deepwater Horizon*, itself, is another issue sharply contested by the parties and its status is not established as a matter of law. *Sanamo v. Trico Marine Services, Inc.,* 73 Fed. Appx. 79, 2003 WL 21756647 at *3 (5th Cir. 2003) (noting that a jack-up rig that is not jacked up does not necessarily constitute

an OCS *situs* since it can still be towed to other sites); *U.S. v. Pickett*, 598 F.3d 231, 236 (5th Cir. 2010) (to be an OCS site, a rig or platform must be "erected" upon the OCS; OCSLA does not apply to vessels that float on the water even if anchored.). Therefore, it is possible that facts will later demonstrate that OCSLA applies to the BOP and that maritime law (or other law) applies to the *Deepwater Horizon,* itself.

The *nature and basis* of many of Plaintiffs' claims are not dependent on a determination of the status of the *Deepwater Horizon* or the BOP. Decisions regarding the design of the *Deepwater Horizon,* the well and its components, as well as the choice of its equipment and personnel and the choices regarding cementing substances and techniques, undoubtedly occurred away from the well, although those are matters to be determined through discovery at a later date. Claims related to the formulation and use of cement and cement slurry, as well as the design, modifications, and selection of the BOP bring into focus decisions that discovery would show took place away from any OCSLA situs and, therefore, such claims would be governed solely by state law, *e.g.,* Texas law where the BOP was designed and manufactured or the law of the state(s) where Defendants made the decisions related to the BOP. HESI does not cite to any case holding that OPA applies to any negligence in product design (whether the product be cement, mud, or a BOP) and, in fact, has alleged such state claims against Cameron. Also, many of Defendants' actions, including, but not limited to, the choice and use of dispersants clearly occurred away from the well, for example, on land (*e.g.,* at Defendants' headquarters or field offices), and along coastal waterways. (Plaintiffs' allegations in Par. 44, 47, 51M, N, O, and bb). Dispersants sprayed onto the surface and subsurface of the Gulf

waters are not easily perceived as being "attached to the seabed"—even if they should sink to the bottom. HESI does not cite any cases holding that the use of dispersants, especially miles away from the non-existent "situs" is covered by OCSLA or even OPA. Moreover, the failures to take appropriate measures for months after the oil eruption does not lend itself easily to an OCSLA situs because the *Deepwater Horizon* had sunk and there was no longer an OCSLA site in existence. Since it had sunk, there was no "vessel" in existence either. Therefore, even if OPA were to be brought into the analysis by virtue of OCSLA, there is no indication that it is intended as a substitute for state claims alleging negligence in design, choice and use of dispersants, fraud, failure to warn, and numerous other claims that are germane herein.

The status of *Deepwater Horizon* under OCSLA and the location and effects of many of the decisions leading to the claims herein, including those against HESI, are still in dispute and yet to be determined through discovery. These issues are to be determined by facts, not argument in memoranda. *See, Eason v. Thaler,* 73 F. 3d 1322, 1325 (5th Cir. 1996); *Aguirre v. Nueces County,* 2007 U. S. App. LEXIS 3028 (5th Cir. 2007); *Ray v. Tandem Computers, Inc.,* 63 F. 3d 429 (5th Cir. 1995). *Morris v. Covan Worldwide Moving, Inc.*, 144 F. 3d. 377, 380 (5th Cir. 1998). Therefore, HESI's motion is premature since it depends on unresolved facts that are not before the Court.

### ii.    OCSLA Does Not Bar State Claims, Alone Or Through OPA.

The failure to apply OPA's savings clauses (and state claims) through OCSLA would again create serious "inconsistent" results in the application of OCSLA and

31

OPA. Without doubt, OPA's savings clauses expressly permitting state law claims are an integral part of OPA. Nothing in the statutory framework suggests that when it is applied through OCSLA, any of its provisions are to be jettisoned. Clearly, such a disjointed application of any statute would be inappropriate. *See, Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 221 (1986) ("In expounding a statute, [courts] must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy."). Therefore, if OPA is to be brought into the OCSLA analysis, all of OPA's provisions, including the savings provisions allowing state claims and remedies must be similarly applied through OPA.

As noted above, the savings clause in OPA clearly provides for the application of state claims—without any reservation, limitation, or conditions.[6] Any other construction would eviscerate OPA and contravene Congress' clearly expressed intent to allow state claims without preemption by OPA. Congress surely intended to allow states, as well as the United States, to impose additional remedies such as punitive damages. *E.g., U.S. v. M/V Cosco Busan*, 557 F. Supp. 2d 1058, 1063 (N.D. Ca. 2008). Therefore, the application of state law, including any elements of damages provided by state claims, is entirely consistent with, contemplated by, and expressly provided by OPA itself. *Id.* In brief, OPA's savings clause exists and its emphatic preservation of state claims cannot be ignored. *E.g., Isla Corp. v. Sundown Energy, LP,*

---

[6] Of course, OPA does not require that state causes of action be subject to any presentation requirement. § 2718; *Isla Corp. v. Sundown Energy, LP,* 2007 U.S. Dist. LEXIS 31259 (E.D. La. 2007); *Williams v. Potomac Elec. Power Co.*, 115 F. Supp. at 565, n. 3.

2007 U.S. Dist. LEXIS 31259 (E.D. La. 2007); *Williams v. Potomac Elec. Power Co.*, 115 F. Supp. at 565.

The title of § 2718 of OPA, *i.e.*, "Relationship to other law" unambiguously describes the purpose of the section. *See, Henderson v. Erick K. Shinseki, Sect'y of Veterans Affairs,* 131 U.S. 1197 (2010) (noting that a statute's title is a significant aid in its interpretation). The intent and purpose of saving state law is further emphasized by the title of subsection (a) – " **Preservation of State** authorities." *Id.* Subsection  (a) goes on to unequivocally delineate in repetitive terms that OPA does not affect or **preempt** the authority of states from imposing any **additional liability or requirements** with respect to the discharge of oil or other pollution by oil within such State; or any removal activities in connection with such a discharge.  In Section 2718(a) (2), OPA echoes even more resoundingly that OPA should not be interpreted **to affect or modify in any way the obligations or liabilities of any person under ... State law, including common law."** Without any doubt, the above-referenced language of OPA specifically provides that the obligations and liabilities "State law, *including common law*" will **not** be affected or modified "in any way." (emphasis added) *Id.* Other language in OPA further echoes the resounding declaration that state laws may impose additional requirements and liabilities, regardless of whether they are criminal or civil, and regardless of whether they impose penalties. § 2718(c). Significantly, as noted above, "nothing in this Act shall **in any way"** affect such state remedies as common-law.

Accordingly, if federal law, *i.e.*, OPA, is to be applied herein through OCSLA, *all of OPA*, including the savings provisions, must be applied. A dissected application

of OPA in the OCSLA framework would not only violate the integrity of the statute, but also necessarily result in conflicting and inconsistent interpretations of OPA that would depend on whether the claims were brought in state or federal court and whether claims were brought under OPA or in the context of OCSLA. Already noted above, is the inconsistent and unreasonable result that would ensue concerning the respective powers of state courts and federal courts. Nothing in OPA suggests that federal courts can maintain state claims to any lesser extent than state courts. *See, Tangius v. M/V Westchester*, 153 F. Supp. 2d at 864-5(noting the broad authority remaining in state courts). The failure to incorporate the savings provisions would present still another inconsistent and conflicting result that would depend on whether OPA claims arose in an OCSLA context or in a non-OCSLA context. For example, in a "stand alone" context, OPA clearly allows for state claims to be presented without limitation on the causes of actions or remedies asserted. However, if one were to exclude the savings provisions in an OCSLA context, OPA would preclude the same state claims from being maintained in federal court. Thus, state claims (without presentation and with punitive damages) would be available in non-OCSLA situations, as well as in cases filed in state courts, but unavailable where OCSLA is applying OPA to the case. This would result in the identical statutory language having two separate and conflicting meanings depending on whether OCSLA was in the picture. There is nothing in OPA or in the OCSLA supporting such a conflicting and inconsistent result. Therefore, state law "unaffected," "unpreempted," and "unmodified" by OPA is applicable, even in the context of OCSLA.

HESI also relies on such cases as *Tenn. Gas Pipeline v. Houston Cas. Ins. Co.,* 87 F. 3d 150 (5th Cir. 1992) for its proposition that only OPA—not state claims—is applicable herein. However, reliance on this case is misplaced, as well.  First, the case arose in the context of removal so that the issue in dispute was the Court's *jurisdiction* under OCSLA—not which substantive law applied. Thus, the Court's holding and reasoning was centered on whether it had jurisdiction of a maritime claim under OCSLA. *Id.* at 153-4. Significantly, notwithstanding the broad sweep of OCSLA, the Fifth Circuit explicitly allowed plaintiffs to maintain their maritime claims, as well as claims under "*other*" provisions of law: "Furthermore, 43 U.S.C. § 1333(f) makes clear that the applicability of OCSLA law under 43 U.S.C. § 1333(a) shall not give rise to any inference that **other provisions of law** (such as general maritime law), do not **also apply.**" (emphasis added). 87 F. 3d at 154.

In this regard, it is again noted that the Mexican States do not depend solely on either OPA or OCSLA for jurisdiction herein. The U.S. Constitution through Article III, Sec. 2 and 28 U.S.C. §1332 provide alternative grounds for the assertion of the claims herein. HESI does not dispute jurisdiction under these provisions or the Mexican States' rights to pursue their state claims under these independent provisions. Therefore, regardless of the judicial result on HESI's arguments, Plaintiffs' claims remain unaffected.

### 6.    OPA'S PRESENTATION REQUIREMENT IS NOT JURISDICTIONAL.

HESI does not assert that it would pay any claim that would be presented to it by Plaintiffs. HESI does not claim that but for any failure to make a presentation, these cases would have been settled. HESI does not allege or even claim that it has

established any fund for handling claims or that it has contributed any funds to the existing BP fund. HESI has not. It does not claim that it has set aside any funds for purposes of settlement or that it has settled any claims that have been presented to it. In fact, it disavows any liability under OPA, arguing that it is not even a "responsible party." HESI's actions can only be characterized as demonstrating that notwithstanding its contention that a presentation of claims should have been made to someone other than HESI, it has never intended to settle any claims in the first place. In short, there is no allegation of prejudice (or even inconvenience) to any extent allegedly arising from any failure to make a presentation. In reality, HESI has not suffered any prejudice. In fact, in view of its untenable position that it is not a "responsible party" it is inconceivable that a failure to make a presentation to another party could cause HESI any prejudice. Courts should not require a plaintiff to undertake futile actions. Plaintiffs acknowledge that some of the foregoing contentions raise "factual" issues that have not been presented herein through appropriate "evidence." However, these are issues that should be allowed to be developed through discovery rather than a premature resolution of this issue. *See, Arbaugh v. Y & H Corp.,* 546 U.S. 500, 514 (2006) (where jurisdiction depends on contested issues of fact, the court is required to review them).

Plaintiffs also acknowledge that some district courts have used the word "jurisdictional" to characterize the presentation requirement in § 2713. However, as noted by the Supreme Court, "jurisdiction" "is a word of many, too many, meanings." *Union Pacific R. Co. v. Locomotive Engineers and Trainmen Gen. Comm. Of Adjustment, Central Region,* 130 S. Ct. 584, 175 (2009); *Arbaugh v. Y & H Corp.,* 546 U.S. at 510;

*Steel Co. v. Citizens for Better Environment,* 523 U.S. 83, 90 (1998). Thus, the Court has cautioned against relying on such "unrefined dispositions as 'drive-by jurisdictional rulings' that should be accorded no precedential effect on the question whether the federal court had authority to adjudicate the claim in the suit." 546 U.S. at 511; *Steel Co.,* 523 U.S. at 91.

Several paramount principles of statutory construction and policy demonstrate that the presentation requirement is not jurisdictional. First, OPA's presentation requirement is clearly one aimed at processing claims. As very recently noted by the U.S. Supreme Court, such "claim-processing rules" should **not** be described as jurisdictional. *Union Pacific R. Co. v. Locomotive Engineers and Trainmen Gen. Comm. Of Adjustment, Central Region,* 130 S.Ct. 584, 175 (2009); *Henderson v. Eric Shinsekie, Secretary of Veterans Affairs,* 131 S. Ct. 1197 (2011).

Additionally, in considering whether a particular requirement is a "jurisdictional" prerequisite, courts typically examine the structure and organization of the statute, particularly its provisions granting federal jurisdiction. *E.g., Arbaugh v. Y & H Corp.,* 546 U.S. at 514-16; *Union Pacific R. Co. v. Locomotive Engineers and Trainmen Gen. Comm. Of Adjustment, Central Region,* 130 S.Ct. 584, 175 (2009). Thus, in determining that Title VII's requirement that an employer have fifteen employees was not a jurisdictional prerequisite, the court noted that the requirement was not contained in the statute's provisions granting federal jurisdiction, but contained in a separate section that did not reference jurisdiction. *Id.* Therefore, the court reasoned, "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character."

546 U.S. at 516. Other cases emphasize that Congress' decision to place a requirement in a section of the act separate from the statutory framework granting jurisdiction demonstrates that the requirement is not jurisdictional. *Henderson v. Eric Shinsekie, Secretary of Veterans Affairs,* 131 S. Ct. 1197 (2010) (placement of appeal deadline in section other than the subchapter entitled "Organization and Jurisdiction" demonstrated the requirement was not jurisdictional.); *Union Pacific R. Co. v. Locomotive Engineers and Trainmen Gen. Comm. Of Adjustment, Central Region,* 130 S.Ct. 584, 175 (2009); *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393-4 (1982).

Furthermore, compliance with a statutory requirement is not jurisdictional where, as herein, the statute does not describe it as such. *Id.; Zipes v. Transworld Airlines, Inc.,* 455 U.S. at 394; *Union Pacific R. Co. v. Locomotive Engineers and Trainmen Gen. Comm. Of Adjustment, Central Region,* 130 S.Ct. 584, 175 (2009). Furthermore, even though a requirement is cast in mandatory terms, the Supreme Court has rejected the notion that 'all mandatory prescriptions, however emphatic, are . . . properly typed jurisdictional." *Henderson v. Eric Shinsekie, Secretary of Veterans Affairs,* 131 S. Ct. 1197 (2011); *Union Pacific R. Co. v. Locomotive Engineers and Trainmen Gen. Comm. Of Adjustment, Central Region,* 130 S.Ct. 584, 175 (2009). Therefore, even when a statutory scheme has an overriding policy of peacefully settling disputes, a statutory requirement aimed at promoting settlement of disputes does not transform the requirement into a jurisdictional one. *Union Pacific R. Co. v. Locomotive Engineers and Trainmen Gen. Comm. Of Adjustment, Central Region,* 130 S.Ct. at 175.

Application of the foregoing principles to OPA's presentation requirement results in the inescapable conclusion that it is not jurisdictional. Significantly, OPA's sections creating federal "jurisdiction" do not contain any presentment obligations. 33 U.S.C. § 2717(a)-(f). In fact, the title of § 2717, as well as its subject matter, is "Litigation, **Jurisdiction**, and Venue." (emphasis added). *Id.* Of course, if Congress had intended to elevate a presentation requirement to a jurisdictional level, § 2717 would have been the place to create such a jurisdictional bar. It is significant that Congress did not do so. *See*, *Zipes,* 455 U.S. at 394; *Union Pacific R. Co.,* 130 S.Ct. at 175. In fact, §2717(b) creates exceptions in subparagraphs (a) and (c), but does not create any other exceptions to the Court's jurisdiction. In other words, the jurisdictional provisions do not indicate that the Court's jurisdiction is in any manner affected by a failure to present. The absence of such an exception to jurisdiction, especially when other exceptions have been carved out, strongly evidences that presentation is not a jurisdictional requirement.

Further negating that such a requirement is jurisdictional, is the language in §2717(f)(2) which specifically dispenses with any need to make a presentation (or any other requirement): "Except as otherwise provided in this paragraph, an action may be commenced under this title for recovery of removal costs **at any time** after such costs have been incurred." (emphasis added). "At any time" means that a presentation is not a prerequisite for filing a suit directly against a responsible party. *U.S. v. M/V Cosco Busan,* 557 F. Supp. 2d at 1062 (also holding that claims for damages under OPA could proceed without a prior presentation to further the goals of OPA.). Although the foregoing reasoning and holding applied to a claim by the

United States, there is no practical or policy reason why it should not also apply to foreign states such as Plaintiffs herein.

Keeping into consideration the Supreme Court's admonition about undue reliance on cases with "drive-by" jurisdictional determinations, the cases relied upon by HESI deserve special scrutiny. HESI overreaches in its interpretation of the Eleventh Circuit's interpretation of the presentation requirements in *Boca Ciega Hotel, Inc. v. Brouchard Transportation Co.,* 51 F. 3d 235 (11th Cir. 1995). The Court therein framed the issue as, "In this case, we must decide whether the claims presentation procedure of the Oil Pollution Act of 1990 (OPA or the Act), 33 U.S.C. A. §§ 2701-2761 (West Supp. 1994), constitutes a mandatory **condition precedent** to the filing of **private** lawsuits under the Act." (emphasis added). 51 F. 3d at 236. Significantly, the word "jurisdictional" is absent from the framing of the issue. In fact, *Boca Ciega* used language demonstrating that the presentation requirement is nonjurisdictional and that a failure to present can be fixed—"[plaintiffs] remain free to refile this action, if and when they comply . . ." 51 F. 3d at 240. Moreover, crucial factors distinguish *Boca Ciega* from the facts at hand. As noted by the Court, the plaintiffs were "private" landowners—not public entities or sovereign entities as herein. In such circumstances, § 2717(f) renders presentation unnecessary. *U.S. v. M/V Cosco Busan*, 557 F. Supp. at 1062. It is also crucial to note that *Boca Cienega* is distinguished from HESI's situation by the fact that in that case, unlike HESI, the defendants had established a claims clearinghouse pursuant to OPA to identify, process, and settle claims arising from the spill. *Id.* As noted above, HESI has not even attempted to claim that it established or participated in any such claims

process. In other words, HESI attempts to create a barrier to its liability when it has not even complied with any corresponding obligations it has under OPA.

In *Leboeuf v. Texaco,* 9 F. Supp. 2d 661 (E.D. La. 1998), the Court astutely analyzed *Boca Ciega* and noted that decision had been too broadly applied. As the Court pointed out, the Eleventh Circuit's language characterized the presentation requirement as a "mandatory conditions precedent" and that the Court had avoided the use of the word "jurisdictional":

> Nowhere in the *Boca Ciega* opinion does this Court find the Eleventh Circuit concluding the requirements of § 2713 as being jurisdictional. Rather, the Eleventh Circuit found the presentment requirements a mandatory condition precedent. The reasoning of the Eleventh Circuit is more in accord with an exhaustion of administrative process. This Court respectfully disagrees with Judge Clement's conclusion [in *Marathon Pipe Line Co., v. LaRoche Industries, Inc.,* 944 F. Supp. 476 (E.D. La. 1996)] that compliance with § 2713 is jurisdictional.

9 F. Supp. at 664.

Significantly, both *Boca Ciega* and *Marathon* failed to even address Section 2717(f)'s leeway to file a suit for recovery costs "at any time." *U.S. v. M/V Cosco Busan*, 557 F. Supp. at 1062. In short, the requirement is permeated with significant exceptions further indicating it is not a jurisdictional bulwark against claims. Additionally, both *Boca Ciega* and *Marathon* omitted any analysis of the statute in accordance with the interpretative rules applied by the Supreme Court. *Union Pacific R. Co. v. Locomotive Engineers and Trainmen Gen. Comm. Of Adjustment, Central Region,* 130 S.Ct. 584, 175 (2009); *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393-4 (1982).

Also, in *Turner v. Murphy Oil USA, Inc.,* 2005 U.S. Dist. LEXIS 45123 (E.D. La. 2005), the court declined to characterize the presentation requirement as

"jurisdictional," noting that it was a "condition precedent" which in the Court's words, it declined to waive. *Id.* at *19. Since jurisdictional requirements cannot be waived, the Court's language referencing waiver strongly suggests it was the Court's view that it was not jurisdictional. The non-jurisdictional characterization is further borne out by the Court's characterization of the suit as "premature." *Id.* Again, the Court's language suggests its view that presentation can be cured, allowing refiling of OPA claims after the presentation has been made.

In a related case, *Turner v. Murphy Oil USA, Inc.*, 2007 U.S. Dist. LEXIS 94304 (E.D. La. 2007), the court noted that its dismissal for failure to make the necessary presentment was without prejudice to refiling: "This dismissal, however, will be treated as a dismissal without prejudice and [plaintiff] remains free to refile this action if and when it complies with the OPA procedure. [Citing *Boca Ciega*]." *Id*. at *6.

Therefore, it is respectfully submitted that even though the presentation requirement has been described as "jurisdictional" a careful scrutiny of the statute and cases interpreting same, along with application of sound interpretative principles demonstrates that it is not of that character. Moreover, Plaintiffs respectfully submit that if this Court should decide otherwise, the appropriate course would be to abate or stay the OPA claims until such time as Plaintiffs have made their presentation. In this regard, Plaintiffs note that they intend to submit such a presentation in the near future.

### 7.    COMPLIANCE WITH TREATY REQUIREMENT UNDER OPA.

Section 2707 of OPA provides that a foreign claimant "shall demonstrate" that recovery is "authorized" by a treaty or executive agreement between the United

States and the claimant's country." (§2707(a) (1) (B). The United States and Mexico, as well as other foreign entities, have entered into various treaties and executive agreements providing for the protection of the environment, including safeguarding marine and coastal environments against pollution and other hazards. Plaintiffs respectfully submit that the following treaties, conventions, and executive agreements (among others) "authorize" their claims herein:

- Agreement of Cooperation Between the United States of America and the United Mexican States Regarding Pollution of the Marine Environment by Discharges of Hydrocarbons and Other Hazardous Substances (signed 1980); MEXUS Plan ("Joint Contingency Plan Between the United Mexican States, Mexican Sovereign States and the United States of America and some States of the United States Regarding Pollution of the Marine Environment By Discharges of Hydrocarbons or Other Hazardous Substances"; MEXUS Plan's Gulf Geographic Annex ("MEXUS GULF ANNEX")(Signed Nov. 7, 2007). Parenthetically, it is noted that the MEXUS GULF ANNEX recognizes the particularly environmentally and economically sensitive regions along Plaintiffs' coastlines and the paramount need to protect these. (§G406.1.2.1 andG406.1.3.1);
- Cartagena Convention (effective June 8, 2000) ("Convention for the Protection and Development of the Marine Environment in the Wider Caribbean Region"), as supplemented by its Protocols.
- 1992 Civil Liability Convention;
- Treaty on Maritime Boundaries between the United States of America and the United Mexican States (ratified October 23, 1997);

Plaintiffs are in the process of submitting their Motion for Leave to File their Second Amended Complaint, which will amend their Complaints to specify the treaties authorizing them to maintain this suit. Accordingly, HESI's argument will be rendered moot by such amendment.

**8.     HESI'S NO RESPONSIBILITY ARGUMENT IS UNSUBSTANTIATED.**

HESI argues that it has absolutely no responsibility in this lawsuit under OPA (or any other law, for that matter). It points to the U.S. Coast Guard's administrative designation of BP and Transocean (p. 17, HESI's Memorandum) as "responsible

parties" and proceeds to argue that since it escaped designation, it is free from any responsibility under OPA. (*Id.*).

HESI's argument confuses the administrative designation for purposes of fund claims and the ultimate determination of liability to be made by the Court and/or jury in these cases. First, HESI does not cite to any authority expressly holding that if the Coast Guard does not designate a party as a "responsible party" that party is absolved of all liability under OPA. Moreover, HESI does not cite to any authority that the U.S. Coast Guard's designation is to be given collateral estoppel or res judicata effect. In fact, it is clear that even without a designation as a responsible party, liability can be shifted to HESI such that it would then be liable to all of the claimants. 33 U.S.C. § 2702(d)(1)(A); *Gabarick v. Laurin Mar. (AM), Inc.,* 2010 U.S. App. LEXIS 2668, at *8-10 (5th Cir. 2010).

HESI's argument is based on over-expansive constructions of a U.S. Coast guard regulation and one court decision. *Gabarick v. Laurin Mar. (Am.) Inc.,* 623 F. Supp. 2d 741 (E.D. La. 2009). First, the Coast Guard regulation HESI relies upon does not provide any party with an exculpatory effect:

§ 136.305 Notice of designation.

(a) When information of an incident is received, the source or sources or threat are designated, **where possible and appropriate**....(emphasis added).

There is no indication from the language that any determination has a preclusive or final effect in any Court proceeding. There is no indication from the regulation that the U.S. Coast Guard is intended to supplant the court system and eliminate the necessity of trials. In fact, the regulatory language acknowledges that

designations of a particular party by the U.S. Coast Guard as the responsible party may not be "possible" or "appropriate" for various reasons, not that HESI is "home free" under OPA for evermore.

In fact, Section 136.1 clearly notes that this part of the regulations (including § 136.305) is intended to relate to "claims authorized to be presented to the Oil Spill Liability Trust Fund (the Fund)" under section 1013 of [OPA] for certain costs and damages." As Section 136.1 further clearly provides, "Nothing in this part [which includes § 136.305] . . . Affects the authority of the United States or any State or political subdivision thereof to impose additional liability or additional requirements relating to a discharge . . . of oil." § 136.1 (c)(4).

In relying on *Gabarick v. Laurin Mar. (Am.) Inc.,* 623 F. Supp. 2d 741 (E.D. La. 2009), HESI fails to note the Court's true analysis and result. As evident from a review of the case, the Court focused on the claims payment procedure that had been set up by one of the parties pursuant to its designation. Not wishing to circumvent that process, the Court ordered the claimants to submit claims to the responsible party, adding, "once claimants have exhausted the OPA administrative remedies, they are then entitled, under the statutory language expressed in OPA, to pursue their claims in federal court." 623 F. Supp. 2d at 750. It is noted parenthetically that the Court referred to the presentation process as "administrative remedies"—not a jurisdictional requirement. Therefore, the Court's approach and holding cannot be distorted into an exoneration of culpable parties that were not designated as "responsible parties" by the Coast Guard.  In fact, numerous cases reflect that the determination of whether HESI is a responsible

party is one, which is to be determined by the courts. *See, e.g., Commonwealth of Puerto Rico v. The M/V Emily S,* 13 F. Supp. 2d 147 (D. P.R. 1998)(holding that a tug was a "responsible party" along with the barge it was towing); *Green Atlas Shipping SA, TMMM Co. v. United States,* 306 F. Supp. 2d 974 (D. Ore. 2003)(holding that captain of ship was not a responsible party). Accordingly, HESI's argument does not have any merit.

> 7.    **CONCLUSION.**

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request that HESI's Motions to Dismiss be denied in all respects. Alternatively, Plaintiffs respectfully request that if any of their allegations are found by this Court to be deficient, that they be given permission to amend to cure same.

Dated: April 26, 2011

Respectfully submitted,

**SERNA & ASSOCIATES PLLC**

/s/ Enrique G. Serna
Enrique G. Serna
enrique@serna-associates.com
20985 IH 10 W
San Antonio, Texas
Telephone: 210.472.2222
Facsimile: 210.228.0839

<u>**CERTIFICATE OF SERVICE**</u>

I hereby Certify that the above and foregoing pleading, **Consolidated Memorandum In Response And Opposition By Plaintiffs' State Of Veracruz, State Of Tamaulipas, And State Of Quintana Roo To Halliburton Energy Services, Inc.'s Motion To Dismiss Plaintiff's First Amended Complaint [As To Quintana Roo, Tamaulipas, And Veracruz] And Memorandum In Support Of Halliburton Energy Services, Inc.'s Motions To Dismiss And, Alternatively, For A More Definite Statement** has been served on All Counsel by electronically

uploading the same to LexisNexis File & Serve in accordance with Pretrial Order No.12, and that the foregoing was electronically filed by using the CM/ECF System which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, this the 26th day of April, 2011.

/s/ Enrique G. Serna
Enrique G. Serna