```
 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF LOUISIANA
 2

 3   ********************************************************

 4   IN RE:  OIL SPILL BY THE
     OIL RIG DEEPWATER HORIZON
 5   IN THE GULF OF MEXICO ON
     APRIL 20, 2010
 6                              CIVIL ACTION NO. 10-MD-2179 "J"
                                NEW ORLEANS, LOUISIANA
 7                              FRIDAY, MARCH 25, 2011, 1:00 P.M.

 8   THIS DOCUMENT RELATES TO
     #10-2771
 9

10   ********************************************************

11                      TRANSCRIPT OF PROCEEDINGS
                  HEARD BEFORE THE HONORABLE CARL J. BARBIER
12                     UNITED STATES DISTRICT JUDGE

13

     APPEARANCES:
14

15

     FOR THE ST. JOE
16   COMPANY:                   BICKEL & BREWER
                                 BY:  JAMES S. RENARD, ESQUIRE
17                                    ROBERT W. GIFFORD, ESQUIRE
                                      WILLIAM A. BREWER, III, ESQUIRE
18                               1717 MAIN STREET, SUITE 4800
                                 DALLAS, TX 75201
19

20
     FOR TRANSOCEAN HOLDINGS
21   LLC, TRANSOCEAN
     OFFSHORE DEEPWATER
22   DRILLING INC., AND
     TRANSOCEAN DEEPWATER
23   INC.:                       FRILOT, LLC
                                  BY:  KERRY MILLER, ESQUIRE
24                                     CAMPBELL E. WALLACE, ESQUIRE
                                  ENERGY CENTRE, 36TH FLOOR
25                                1100 POYDRAS STREET
                                  NEW ORLEANS, LA  70163
```

01:01PM
01:01PM

1  APPEARANCES CONTINUED:

2

3
                              ROYSTON RAYZOR
4                             BY:  JOHN M. ELSLEY, ESQUIRE
                              PENNZOIL PLACE
5                             711 LOUISIANA STREET, SUITE 500
                              HOUSTON, TX  77002
6

7

8  FOR BP AMERICA INC.,
   BP AMERICA PRODUCTION
9  COMPANY, BP COMPANY
   NORTH AMERICA INC.,
10 BP CORPORATION NORTH
   AMERICA INC.,
11 BP EXPLORATION &
   PRODUCTION INC.,
12 BP HOLDINGS NORTH
   AMERICA LIMITED,
13 BP PRODUCTS NORTH
   AMERICA INC.:            LISKOW & LEWIS
14                          BY:  DON K. HAYCRAFT, ESQUIRE
                            ONE SHELL SQUARE
15                          701 POYDRAS STREET
                            SUITE 5000
16                          NEW ORLEANS, LA 70139

17

18 OFFICIAL COURT REPORTER:    CATHY PEPPER, CRR, RMR, CCR
                               CERTIFIED REALTIME REPORTER
19                             500 POYDRAS STREET, ROOM B406
                               NEW ORLEANS, LA  70130
20                             (504) 589-7779

21 PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.  TRANSCRIPT
   PRODUCED BY COMPUTER.
22

23 [REPORTER'S NOTE:  The audio sound of the attorneys attending via
   the telephone cut in and out.]
24

25

1                              **I N D E X**

2

3   <u>SPEAKERS</u>                                              <u>PAGE</u>

4

5   MR. WALLACE..........................................    6

6   MR. RENARD...........................................   15

7   MR. WALLACE..........................................   23

8   MR. BREWER...........................................   30

9   MR. HAYCRAFT.........................................   33

10  THE COURT............................................   34

11  MR. BREWER...........................................   38

12  MR. MILLER...........................................   39

13  MR. BREWER...........................................   39

14

15

16

17

18

19

20

21

22

23

24

25

**P-R-O-C-E-E-D-I-N-G-S**

FRIDAY, MARCH 25, 2011

A F T E R N O O N   S E S S I O N

(COURT CALLED TO ORDER)

THE DEPUTY CLERK:  All rise.  Court is in session.

THE COURT:  Good afternoon.  Let's see.  I think we have some folks on the telephone.

UNIDENTIFIED SPEAKER:  Yes, Your Honor.

THE COURT:  And Mr. Gifford?  Are you there?

MR. GIFFORD:  Yes, I am.

THE COURT:  Mr. Renard?

MR. RENARD:  Yes, Your Honor.

THE COURT:  And Mr. Brewer.

MR. BREWER:  Yes, Your Honor, I'm here.

THE COURT:  The three of you together represent St. Joe, as I appreciate it, correct?

MR. BREWER:  Yes, we do, Your Honor.

THE COURT:  Okay, very well.  We have a few folks here in the courtroom.  I'll let them identify themselves.  I think you all should get up to the podium so they can hear you on the telephone.

MR. WALLACE:  Yes, Your Honor.  Ed Wallace on behalf of the Transocean defendants, along with Kerry Miller and

01:07PM 1    John Elsley.

01:07PM 2           MR. HAYCRAFT:  Don Haycraft for BP.

01:07PM 3           THE COURT:  Very well.  The folks on the phone, can you

01:07PM 4    all hear okay?

01:07PM 5           VOICES:  Yes, we can, Your Honor.

01:07PM 6           THE COURT:  All right.  We're here in court this morning

01:07PM 7    in a matter that relates to the DEEPWATER HORIZON MDL 2179 and,

01:08PM 8    in particular, a motion that has been filed by Transocean.  I'll

01:08PM 9    just refer to the various Transocean entities as *Transocean*.

01:08PM 10          It's record document 1714.  It's labeled as an

01:08PM 11   Ex Parte Motion for Enforcement of the Limitation of Liability

01:08PM 12   and Monition Against Plaintiff, the St. Joe Company.  I have

01:08PM 13   received and read that motion and the memoranda attached.

01:08PM 14          I have also received and read over the response

01:08PM 15   filed on behalf of St. Joe, which is record document 1732, which

01:08PM 16   was filed yesterday.  Also yesterday -- I believe this was filed

01:09PM 17   yesterday, too -- was a reply filed by Transocean, record

01:09PM 18   document 1746.

01:09PM 19          I'll just also state for the record, of course,

01:09PM 20   that I am aware of and have, in fact, read, soon after it was

01:09PM 21   issued, the opinion and decision by Judge Leonard Stark in

01:09PM 22   Delaware dated March 15, 2011.  In fact, Judge Stark was kind

01:09PM 23   enough to send me, by e-mail, a copy of his decision.  I don't

01:09PM 24   remember if it's the day of or the day after he rendered it, so

01:09PM 25   I'm aware of that, too.

01:09PM 1              So here we are.  Who is going to speak first?

01:09PM 2    Mr. Wallace?

01:09PM 3              MR. WALLACE:  Yes, Your Honor.  May it please the Court,

01:09PM 4    Ed Wallace for the Transocean defendants.

01:09PM 5              We have a motion to enforce the monition that was

01:10PM 6    issued in the limitation action in this case.  The monition is

01:10PM 7    very straightforward.  It is an injunction by the limitation

01:10PM 8    court enjoining in the prosecution of all claims against the

01:10PM 9    Transocean defendants as petitioners in limitation.

01:10PM 10             After the ruling by Judge Stark --

01:10PM 11             THE COURT:  Excuse me, one moment.

01:10PM 12             Kat, for some reason, I know I had it on my desk, I

01:10PM 13   don't know if I left it on my desk or if you have it, I don't

01:10PM 14   have a copy of the monition here.  It's the second amended one, I

01:10PM 15   think.

01:10PM 16             THE CLERK:  I'll get it for you.

01:10PM 17             THE COURT:  I saw it.  I had it yesterday, and I thought

01:10PM 18   I had it in this stack of papers.  Also that proposed order that

01:11PM 19   you gave me.  I need those two things, please, yes.

01:11PM 20             Go ahead, Mr. Wallace.

01:11PM 21             MR. WALLACE:  Yes, Your Honor.  The monition was issued

01:11PM 22   back in May of 2010.  There was publication and submission of

01:11PM 23   that monition order to all known claimants at that time.

01:11PM 24             Subsequently, there was this suit by St. Joe.  We

01:11PM 25   removed the case to federal court in Delaware.  The Delaware

01:11PM 1    court remanded, as Your Honor noted, on March 15th.  The night of

01:11PM 2    that remand, I wrote a letter to St. Joe saying, here is the

01:11PM 3    monition order and we expect you to abide by that.

01:11PM 4         THE COURT:  Let me ask you one thing, just so I can

01:11PM 5    understand what you're asking me to do.  Are you somehow asking

01:11PM 6    me to stay?  My understanding is Judge Stark has, at your

01:11PM 7    request, I guess, on somebody on behalf of Transocean's request,

01:12PM 8    temporarily stayed the effective date of his remand order to

01:12PM 9    Monday, to the 28th, right?

01:12PM 10        MR. WALLACE:  Yes, sir.

01:12PM 11        THE COURT:  This is what I want to make clear:  Are you

01:12PM 12   asking me to somehow stay that order --

01:12PM 13        MR. WALLACE:  No, sir.

01:12PM 14        THE COURT:  -- or are you just asking me to stay or

01:12PM 15   enjoin, in effect, St. Joe from prosecuting the case when it gets

01:12PM 16   back to state court?

01:12PM 17        MR. WALLACE:  Well, the latter, Your Honor.  We're not

01:12PM 18   asking you to stay in any respect the Third Circuit or any

01:12PM 19   district court proceedings by Judge Stark.

01:12PM 20             The injunction set forth in the monition provides

01:12PM 21   that all claims shall be enjoined.  The broad language of that

01:12PM 22   is -- has been interpreted by courts for many, many years, and

01:12PM 23   when it says, quote, all claims, it means General Maritime Law

01:13PM 24   claims, as well as state common law claims.

01:13PM 25             We cited Your Honor to the *Richardson v. Harmon*

01:13PM 1   case from 1911.  It's a U.S. Supreme Court case holding that

01:13PM 2   state common law claims are enjoined.  So here, St. Joe has

01:13PM 3   expressly said the only claims that we have are state common law

01:13PM 4   claims under Florida law.  So on the face of the monition order,

01:13PM 5   if there is no exception to that monition order, the monition

01:13PM 6   order enjoins them from prosecuting their lawsuit in state court.

01:13PM 7   That's our position.

01:13PM 8           The issue that is in dispute between -- excuse me,

01:13PM 9   the principal issue in dispute between St. Joe and Transocean

01:13PM 10  over the monition order is the scope of the monition order.  We

01:13PM 11  say that the exception that was negotiated in the monition order

01:14PM 12  that says, quote, claims, claims within the scope of 2718, which

01:14PM 13  is the savings provision of OPA, are saved.  What is important is

01:14PM 14  that when that was negotiated, no one defined what claims were in

01:14PM 15  the scope, within the scope of 33 U.S.C. Section 2718.

01:14PM 16          The intent was that some day, if this issue ever

01:14PM 17  came up, Your Honor, as the only judge with authority to now

01:14PM 18  interpret the limitation monition, would make a determination is,

01:14PM 19  in this case, Transocean right in its position, where it claims

01:14PM 20  that, A, the admiralty law such as in the *Testbank*, where the

01:14PM 21  court in the Fifth Circuit en banc in the *Testbank* said that all

01:14PM 22  common law claims are ousted or preempted or by choice of law

01:15PM 23  they don't exist because of the supremacy of admiralty law and

01:15PM 24  the Admiralty Extension Act?  And if there are common law claims,

01:15PM 25  are they saved by 2718?  We say they are not saved by 2718

01:15PM  1    because, for one reason, 2718 couldn't save a common law claim

01:15PM  2    that St. Joe says it had, if it didn't exist.  Because of

01:15PM  3    *Testbank*, the preemptive effect of *Testbank*, they didn't have any

01:15PM  4    claims to save.

01:15PM  5              But then if you go one step further and you look at

01:15PM  6    the simple -- well, pardon me, the complicated language of 2718,

01:15PM  7    the savings clause itself, congressional intent was not to save

01:15PM  8    state common law claims, it was limited in Congress, we believe,

01:15PM  9    to claims that are state mini OPAs and, secondly, claims under

01:16PM 10    what is now RCRA, which was the Solid Waste Disposal Act.

01:16PM 11              I, unfortunately, ventured into the merits of what

01:16PM 12    the argument is about, whether there is a savings, and I'm

01:16PM 13    familiar with that because Your Honor has before Your Honor a

01:16PM 14    motion to dismiss by Transocean which raises this very issue,

01:16PM 15    what is the scope of 2718 and if there are any common law claims

01:16PM 16    that are, in fact, available to the plaintiffs?

01:16PM 17              So that is before Your Honor in the motions to

01:16PM 18    dismiss by Transocean, BP, and, I believe, Halliburton.  Our

01:16PM 19    position in this motion for enforcement was not for a permanent

01:16PM 20    injunction against St. Joe.  It was simply St. Joe's, like all

01:16PM 21    the other plaintiffs out there, let St. Joe, which is before

01:16PM 22    Your Honor in the MDL, let St. Joe abide by the monition as it

01:17PM 23    exists today without any decision today on does 2817 exempt state

01:17PM 24    common law claims or do state common law claims in the regular

01:17PM 25    course of this Court's proceedings.  Let's wait on that decision

01:17PM   1    until, I believe it's April 28th, when Your Honor will take all

01:17PM   2    of the motions to dismiss under submission.

01:17PM   3         So that's -- our basic position is we were told by

01:17PM   4    St. Joe, hey, this monition doesn't apply to us.  We went to the

01:17PM   5    court out of an abundance of caution to say we want this monition

01:17PM   6    enforced.  So that's our position.  We want it enforced today

01:17PM   7    provisionally until such time as Your Honor rules on the basic

01:17PM   8    questions that have been raised in the motions to dismiss, what's

01:17PM   9    the scope of 2718, and if the plaintiffs have any common law

01:18PM  10    claims.

01:18PM  11         When we got the opposition of the folks at St. Joe,

01:18PM  12    their position was, I think, dodging the merits.  What they

01:18PM  13    looked at was, they first said, well, we didn't have any notice

01:18PM  14    of this monition.  Well, Your Honor, they don't have to have

01:18PM  15    actual notice of a monition, as we cited in the *Dowdell* case from

01:18PM  16    the Ninth Circuit from 1905; actual notice for a monition to be

01:18PM  17    enforced is not required.

01:18PM  18         THE COURT:  Well, that's kind of moot now anyway, isn't

01:18PM  19    it?  Because they obviously have notice of it now, so I don't

01:18PM  20    think that's an issue, yes.

01:18PM  21         MR. WALLACE:  Yes, sir.  Thank you.  I'll move on from

01:18PM  22    that, and we gave them notice well in advance of the April 20th

01:18PM  23    deadline for filing a claim in limitation.

01:18PM  24         Second, they say, well, the law of the case

01:19PM  25    doctrine applies, and they rely on Judge Stark's opinion saying,

01:19PM 1  well, Judge Stark talked all about OPA, and he's ruled on this.

01:19PM 2       Well, first off, they can't have it both ways,

01:19PM 3  Your Honor.  First they say, well, Judge Stark must have ruled on

01:19PM 4  the scope of the monition because he ruled on 2718 and OPA.

01:19PM 5  Well, according to St. Joe, they didn't know anything about the

01:19PM 6  monition or the limitation action until I sent it to them the

01:19PM 7  night after the remand was issued in the afternoon.  So if it's

01:19PM 8  not -- if it wasn't at issue before Judge Stark when he made his

01:19PM 9  ruling, how can it be something that he ruled on?

01:19PM 10       Secondly, the remand order itself was based upon

01:19PM 11  basically a page-and-a-half ruling.  And it's on page 10 and 11

01:19PM 12  of Judge Stark's ruling.  At the bottom of the page, he says,

01:20PM 13  quote, "The well-pleaded complaint rule prohibits finding removal

01:20PM 14  jurisdiction on this basis," referring to OPA.  "Only if OPA,

01:20PM 15  quote, 'completely preempts' state tort claims based on the oil

01:20PM 16  spill damage can Transocean's arguments be availing.  The Court,

01:20PM 17  however, finds a complete preemption document inapplicable since

01:20PM 18  OPA's savings clauses, which are examined in greater detail

01:20PM 19  below, clearly contemplate a concurrent state legal regime,

01:20PM 20  thereby depriving OPA of 'extraordinary preemptive force.'"

01:20PM 21       What this -- what Judge Stark said was, plain and

01:20PM 22  simple, the well-pleaded complaint rule applies.  St. Joe, as

01:20PM 23  master of its complaint, never uttered the word *OPA*.  Because

01:20PM 24  they didn't utter the word *OPA* --

01:20PM 25       THE COURT:  Or maritime law.

01:20PM 1      MR. WALLACE:  Or maritime law.  Because they didn't

01:20PM 2  utter the word *OPA*, then under the well-pleaded complaint rule,

01:21PM 3  all of the OPA claims, which we say were their principal cause of

01:21PM 4  action, they say don't exist.

01:21PM 5      So what we have here is a ruling based on the

01:21PM 6  well-pleaded complaint rule where Judge Stark squarely said, they

01:21PM 7  didn't say *OPA*; I, under the well-pleaded complaint rule, I'm

01:21PM 8  remanding this case.

01:21PM 9      So then when he goes on in a -- in his opinion, he

01:21PM 10  felt it necessary to carry his opinion out some 20 more pages,

01:21PM 11  and he talks about OPA and OPA savings clauses, that's all dicta,

01:21PM 12  because what's before the judge was simply, do I remand or do I

01:21PM 13  not remand?  In his mind, he said OPA wasn't mentioned, I'm

01:21PM 14  remanding.  And then he goes on to talk about OPA savings

01:22PM 15  clauses, all of which is pure dicta.

01:22PM 16      Now, but most importantly, who on earth can rule

01:22PM 17  about the enforcement, the scope or modify this monition order?

01:22PM 18  Not Judge Stark, not the Third Circuit, not a state court judge,

01:22PM 19  only Your Honor as the limitation court.  You issued this

01:22PM 20  injunction, and only you, not Judge Stark, has authority to rule

01:22PM 21  on the scope of 2718.

01:22PM 22      Based upon our arguments, Your Honor, we submit

01:22PM 23  that the monition should be enforced, and that there should be a

01:22PM 24  deferral of any ruling that 2718 saves or does not save the state

01:22PM 25  common law claims by the plaintiffs, St. Joe, until such time as

01:22PM 1    that issue is resolved in the motion practice currently before

01:23PM 2    Your Honor.

01:23PM 3            THE COURT:  Let me ask you this:

01:23PM 4            MR. WALLACE:  Yes, Your Honor.

01:23PM 5            THE COURT:  Since you're not asking me to somehow stay

01:23PM 6    or interfere with Judge Stark's remand order, presumably this

01:23PM 7    case will go back -- I don't know, do you all have something

01:23PM 8    pending in the Third Circuit or something?

01:23PM 9            MR. WALLACE:  Yes, sir.  We have filed a motion to stay

01:23PM 10   the application of the remand order.  The Third Circuit

01:23PM 11   submitted -- pardon me, the Third Circuit started consideration

01:23PM 12   of all the papers on Wednesday, and we expect a ruling any

01:23PM 13   moment.

01:23PM 14           THE COURT:  All right.  But since I'm not being asked

01:23PM 15   to, in any way, stay or interfere with Judge Stark's remand order

01:24PM 16   or what the Third Circuit is doing, either one or two things can

01:24PM 17   happen.  Either the Third Circuit will agree with you and stay

01:24PM 18   the remand order --

01:24PM 19           MR. WALLACE:  Yes, sir.

01:24PM 20           THE COURT:  -- or they won't, in which case the case,

01:24PM 21   presumably on Monday, I think, is what I understand, the order

01:24PM 22   will become effective and St. Joe's case will be remanded to

01:24PM 23   state court in Delaware.

01:24PM 24               There doesn't seem to be a sense of urgency here to

01:24PM 25   me to decide to do anything today is my first thought after

01:24PM 1 listening to you because if the case is sent back to the state

01:24PM 2 court, nothing is going to happen or be decided the next day or

01:25PM 3 probably in the next week or whatever.  I don't know what St. Joe

01:25PM 4 plans to do when it gets back to state court or what a state

01:25PM 5 court judge there plans to do, or if you all even know which

01:25PM 6 state court judge will be handling it.

01:25PM 7 MR. WALLACE:  We do, Your Honor, and there is a sense of

01:25PM 8 urgency from our perspective because, when the case would go back

01:25PM 9 to state court, we would be required to assert motions to dismiss

01:25PM 10 and engage in motion practice that would be -- would take several

01:25PM 11 days and extraordinary resources, all of which may be unnecessary

01:25PM 12 if Your Honor could defer the matter for essentially 30 days.

01:25PM 13 We're asking that this monition order be enforced against St. Joe

01:25PM 14 for basically 30 days because on April 28th, Your Honor is going

01:25PM 15 to rule on these very issues.

01:25PM 16 THE COURT:  Is there any reason that you would think

01:25PM 17 that you couldn't make the same argument you're making to me in

01:25PM 18 terms of the fact that the state court judge should not act on

01:26PM 19 that because of the monition order until I rule on it, that that

01:26PM 20 state court judge would not heed that or would not pay attention

01:26PM 21 to that?

01:26PM 22 MR. WALLACE:  Yes, I think the Third Circuit has a stake

01:26PM 23 in this because they are going to, if their -- well, let me step

01:26PM 24 back, Your Honor.  The state -- to directly answer your question,

01:26PM 25 the state court judge will be presented with a conundrum.  The

01:26PM 1    conundrum would be, well, there is a federal judge out there in

01:26PM 2    New Orleans who has presented an issue today of whether this

01:26PM 3    matter should be -- whether this monition should be enforced.

01:27PM 4            Your Honor, as the judge and the only judge who has

01:27PM 5    the authority to rule on the scope of that monition, will have,

01:27PM 6    in theory, deferred ruling on that, and then the state court

01:27PM 7    judge is in the conundrum where he's going, well, I don't have

01:27PM 8    authority to rule on it, and the case -- and his other choice is,

01:27PM 9    well, I want to rule on it, but his ruling is of no consequence

01:27PM 10   because there is only one judge who can rule on the scope and

01:27PM 11   enforcement of the monition and that's Your Honor.

01:27PM 12           THE COURT:  Let me hear from the other side.  Thank you

01:27PM 13   very much.

01:27PM 14           All right.  Who is going to argue for St. Joe's?

01:27PM 15           MR. RENARD:  Your Honor, this is Jim Renard.

01:27PM 16           Your Honor, first and foremost, is the court able

01:27PM 17   to hear me?

01:27PM 18           THE COURT:  Yes, I can hear you.  Let me see if -- can

01:27PM 19   everyone else in the courtroom hear Mr. Renard on the speaker?

01:27PM 20   We're going to turn up the volume a little bit.

01:27PM 21           MR. RENARD:  Very well, Your Honor.

01:27PM 22           THE COURT:  All right.  That's better.  Yes.  Go ahead.

01:27PM 23           MR. RENARD:  Your Honor, in response to any of the -- I

01:28PM 24   certainly appreciate the indulgence in case my partner,

01:28PM 25   Mr. Brewer, may like to weigh in on this, but I'll be presenting

01:28PM  1   the basic argument.

01:28PM  2              Your Honor, obviously, the Court has the power to

01:28PM  3   dispose of motions to enforce its monition.  That said,

01:28PM  4   Mr. Wallace's position was essentially that the first sentence of

01:28PM  5   the -- provision of the monition order that appears -- in the

01:28PM  6   court is what controls the scope of the -- and it's up to -- it's

01:28PM  7   up to St. Joe to demonstrate that its claims fit within an

01:28PM  8   exception, and until it demonstrates that it fits in that

01:28PM  9   exception, it's enjoined from seeking in the Delaware action,

01:28PM 10   Your Honor, respectfully we believe that that is the analysis on

01:29PM 11   it.

01:29PM 12          THE COURT:  Wait a minute, Mr. Renard.  We're having a

01:29PM 13   little bit of an issue.  I don't know if it's our end.  Maybe we

01:29PM 14   had it too loud, Eileen.

01:29PM 15              Okay, let's try that again.  Okay.  Pick up again,

01:29PM 16   Mr. Renard.

01:29PM 17          MR. RENARD:  All right, Your Honor.  Is the Court able

01:29PM 18   to hear me now?

01:29PM 19          THE COURT:  Yes.

01:29PM 20          MR. RENARD:  The point being, Your Honor, is that the

01:29PM 21   scope of the injunctive provision on page 4 of the monition order

01:29PM 22   does not include, and this is the second middle, any claims

01:29PM 23   including private parties asserted against Transocean within the

01:29PM 24   scope of 33 U.S.C. Section 2718(a) inclusive.

01:29PM 25              Your Honor, I won't read into the record,

01:29PM  1    obviously, 2718(a).

01:29PM  2            THE COURT:  I have it on the bench right in front of me.

01:29PM  3            MR. RENARD:  But as Your Honor can see, it begins that

01:30PM  4    nothing in this act, which is the Oil Pollution Act, or the act

01:30PM  5    of March 3, 1851, which is the limitations act under which the

01:30PM  6    monition order was issued, shall in any way affect, and this is

01:30PM  7    in sub (1)(A), a state's ability to impose liability, additional

01:30PM  8    requirements with respect to pollution violation -- subsection

01:30PM  9    (2) shall not in any way affect -- of any person under, among

01:30PM 10    other things, state law, including common law.

01:30PM 11            Your Honor, in terms of what the monition order

01:30PM 12    meant and said, well, with respect to 2718(a), that statute

01:30PM 13    itself finds the category of claims and rights and

01:30PM 14    responsibilities that are excepted out of the scope of the

01:31PM 15    injunction provision, so that's by way of background.

01:31PM 16            Let's talk, if you may, about the Delaware action.

01:31PM 17    The only proceeding in which St. Joe has asserted claims against

01:31PM 18    Transocean is in the Delaware action, which, as the Court knows

01:31PM 19    by now, was initiated in Superior Court, removed by Transocean to

01:31PM 20    federal court, and recently remanded.  At least an order of

01:31PM 21    remand issued by Judge Stark.

01:31PM 22            Number 2.  St. Joe has asserted on their face only

01:31PM 23    state common law claims against Transocean.  We carefully pled

01:31PM 24    the elements of several Florida tort law claims, including

01:31PM 25    negligence, gross negligence and -- negligence and strict

01:31PM 1   liability for abnormally-dangerous activity.

01:31PM 2           Your Honor intended and we did plead and assert

01:31PM 3   only state law, common law claims and only claims subject to the

01:32PM 4   savings clause, mainly Section 2718 of the Oil Pollution Act,

01:32PM 5   OPA.

01:32PM 6           Importantly, as Mr. Wallace said, the Delaware

01:32PM 7   District Court stated -- those claims were all subject to

01:32PM 8   Section 2718.  And, Your Honor, an important distinguishing

01:32PM 9   point.  Transocean wants to say that that was dicta on the part

01:32PM 10  of -- however, in fact, Your Honor has -- if not, I'll just cite

01:32PM 11  it for the record, page 11, which is the page that Mr. Wallace

01:32PM 12  cited the Court to, "The Court had to deal first and foremost

01:32PM 13  with whether there was complete preemption; in other words,

01:32PM 14  whether OPA itself abolished and preempted entirely any potential

01:33PM 15  state law claims."

01:33PM 16          At the very top, the Court says it finds the

01:33PM 17  complete preemption doctrine inapplicable.  Why does it say that?

01:33PM 18  In lieu of OPA's savings clauses.

01:33PM 19          THE COURT:  Let me interrupt, if I could, just to direct

01:33PM 20  the argument, Mr. Renard, for a second.

01:33PM 21          MR. RENARD:  Yes, sir.

01:33PM 22          THE COURT:  As I understand it, though, the argument

01:33PM 23  that they are now making, that they are making here is not so

01:33PM 24  much that OPA -- not that OPA preempts your state law claims but

01:33PM 25  that federal maritime law and/or the Outer Continental Shelf

01:33PM 1    Lands Act, OCSLA, may preempt your state law claims, and if so,

01:33PM 2    then they would only be federal claims.

01:33PM 3                  So if you could respond to that.

01:33PM 4                  MR. RENARD:  Sure, Your Honor.  Number 1, the bases are

01:34PM 5    fairly clear that the Oil Pollution Act preempts maritime law.

01:34PM 6    And, therefore, to the extent that an injured party has a claim

01:34PM 7    for damages relating to oil pollution, as St. Joe does here, it

01:34PM 8    has one of two options to seek redress for that.

01:34PM 9                  Number 1, it can file, assert a substantive federal

01:34PM 10   claim under OPA or, Number 2, it can assert a state law claim

01:34PM 11   that is preserved under Section 2718(a), and we have chosen to do

01:34PM 12   the latter.

01:34PM 13                 Now, Your Honor --

01:34PM 14                 THE COURT:  Isn't there another exception that preserves

01:34PM 15   admiralty and maritime law claims, too?

01:34PM 16                 MR. RENARD:  Your Honor, there --

01:34PM 17                 THE COURT:  I forget the name, the number of the

01:34PM 18   statute, but I thought that was contained in OPA itself.

01:34PM 19                 MR. RENARD:  Your Honor, there is another exception for

01:35PM 20   that.  I will point out two things, Your Honor.  Number 1, that

01:35PM 21   there is a body of case law that exists, some of which we've

01:35PM 22   cited to the Court, more of which we cited to Judge Stark, that

01:35PM 23   claims for sea-to-shore pollution are recognized under state law

01:35PM 24   and are not trumped by maritime law.

01:35PM 25                 And, Your Honor, among those cases that have found

01:35PM 1    that 2718 covers the very types of claims asserted here,

01:35PM 2    negligence, strict liability, nuisance, for sea-to-shore

01:35PM 3    pollution, are state common law claims that are covered by

01:35PM 4    Section 2718.  Among those cases, Your Honor, we've cited it to

01:35PM 5    the Court as the *Williams* case out of Maryland, 2000.

01:35PM 6    Judge Lemelle, in the *Isla* case in 2007 ruled that way.

01:36PM 7            Even more importantly, Your Honor, courts have held

01:36PM 8    that claims, common law claims, in other words, claims stated as

01:36PM 9    we have here for negligence, strict liability under state law,

01:36PM 10   for sea-to-shore oil pollution, are recognizable, are not

01:36PM 11   extinguished by maritime law, and fit within the 2718(a)

01:36PM 12   exception.  That includes *Russo*.  And, Your Honor, it also

01:36PM 13   includes -- *Russo*'s the Northern District of California, 2010.

01:36PM 14           It also includes a case, Your Honor, that we cited

01:36PM 15   to the Court, In re:  Jarrespray (spelled phonetically).  It was

01:36PM 16   District of New Jersey 1996 that held that state common law

01:36PM 17   claims, just as like those that we've asserted here, that involve

01:36PM 18   sea-to-shore pollution, were not subject to a limitations act

01:37PM 19   injunction and therefore could proceed in state court.

01:37PM 20           Now, Your Honor, that's a body of law that we

01:37PM 21   believe is instructive, if not controlling, to the Court, but,

01:37PM 22   Your Honor, juxtaposed against that you have Transocean that is

01:37PM 23   making the argument that -- and let's not bypass the argument,

01:37PM 24   the first argument being made here is 2718(a) does not encompass

01:37PM 25   state common law claims; rather, it's limited exclusively to

01:37PM 1    state statutory claims.

01:37PM 2            That has been rejected, Your Honor; and, Number 2,

01:37PM 3    there is not a single case that Transocean has cited for that

01:37PM 4    proposition.  In fact, you heard Mr. Wallace, he says, well, it

01:37PM 5    was the intent to keep that open, or, more precisely, he said it

01:37PM 6    was the intent of the court that issued the monition order to

01:37PM 7    decide later what kinds of claims are encompassed under 2718(a).

01:38PM 8    Well, Your Honor, 2718(a) defines the claims, and the substantial

01:38PM 9    body of case law interpreting it have ruled that it includes

01:38PM 10   state common law claims such as those asserted here.  The

01:38PM 11   second -- it says on its face, Your Honor, state common law

01:38PM 12   claims.

01:38PM 13           Secondly, in response to the Court's question --

01:38PM 14   and this hits upon something the Court asked Mr. Wallace a moment

01:38PM 15   ago -- if preemption is the argument, and let's examine that a

01:38PM 16   minute, the argument is really two steps that Transocean makes:

01:38PM 17   Number 1, that our state common law claims, notwithstanding the

01:38PM 18   way they have been pled, are really maritime; and, Number 2, the

01:38PM 19   Oil Pollution Act trumps the maritime claims.  That's their

01:38PM 20   argument.

01:38PM 21           Well, Your Honor, that's a preemption argument.

01:38PM 22   They are not saying that our claims need to be transformed into

01:38PM 23   maritime or transformed into a federal substantive OPA claim.

01:39PM 24   What they are saying ultimately is that claim ought to be

01:39PM 25   dismissed because it's been preempted.

01:39PM 1        Your Honor hit upon it exactly.  That's a defense,

01:39PM 2  and that's an assertion that needs to be made in the Delaware

01:39PM 3  Superior Court.  If we don't have claims, and that's the argument

01:39PM 4  being presented to the Court, if we don't have a claim that

01:39PM 5  sounds in Florida -- we believe most certainly we do, but if

01:39PM 6  that's the argument, it needs to be presented to the Court and

01:39PM 7  the only court that has the claim that St. Joe has asserted

01:39PM 8  against Transocean.

01:39PM 9        Your Honor -- obviously, what they are seeking here

01:39PM 10  is tantamount to, I suppose, a TRO or preliminary injunction; in

01:39PM 11  other words, wait, presume that there's a violation,

01:39PM 12  notwithstanding the clear language of 2718, but wait until this

01:39PM 13  Court rules on a motion to dismiss claims other than the ones

01:39PM 14  that are really at issue, namely, ours against Transocean, and

01:40PM 15  wait on that until the Court rules on that motion to dismiss.

01:40PM 16        Your Honor, that turns the analysis upside down.

01:40PM 17  They are able to bring this argument before the Superior Court,

01:40PM 18  and we believe that they need to do so.  They have not

01:40PM 19  established a -- point, this is essentially a request for

01:40PM 20  temporary relief.  They have not established a probability of

01:40PM 21  success on the merits, given the fact they have not cited a

01:40PM 22  single case to this court that says that under OPA and the case

01:40PM 23  law interpreting it, claims were negligent, and nuisance and

01:40PM 24  strict liability for sea-to-shore pollution are recognized and

01:40PM 25  have historically been recognized by the states or preserved

01:40PM 1    under 2718(a) of OPA, Your Honor.

01:40PM 2              For those reasons and the fact that absolutely no

01:40PM 3    harm or injury by allowing this to go forward, allowing the

01:40PM 4    remand order to take effect, and it is my understanding now that

01:40PM 5    Transocean is saying we're not fighting that, that to allow it to

01:41PM 6    go forward is not going to create any irreparable harm, and their

01:41PM 7    preemption argument can be made in the Superior Court before

01:41PM 8    Judge Ableman, who's a very abled jurist.  Your Honor, for those

01:41PM 9    reasons, we believe this emergency request --

01:41PM 10             And, Your Honor, we've never said that there wasn't

01:41PM 11   notice of this or anything, but they have raised this.  They have

01:41PM 12   come to this Court after five months of litigating the Delaware

01:41PM 13   action, and now come to the Court on an emergency motion forcing

01:41PM 14   the Court, Your Honor, and all of us jump through hoops to take

01:41PM 15   care of this.  There is no emergency.  There is no reason that

01:41PM 16   there ought to be any injunction whatsoever.  Thank you.  Judge.

01:41PM 17             THE COURT:  All right.  Thank you.

01:41PM 18             Mr. Wallace, do you want to reply?

01:41PM 19             MR. WALLACE:  Yes, Your Honor.

01:41PM 20             The state court -- first off, our showing is not

01:41PM 21   that there is any sort of irreparable harm.  What we have to show

01:41PM 22   is a monition order applies.  We've made that showing.  And there

01:42PM 23   is an exception under 2718.  We do not know what the scope of the

01:42PM 24   exception of the monition order is.  That very issue is in the

01:42PM 25   pleadings we submitted to Your Honor on February 28th, and it's

01:42PM 1    detailed; all of our argument is at pages 23 to 27.

01:42PM 2            The suggestion that a state court judge should

01:42PM 3    examine the scope of the monition is incorrect.  How can a state

01:42PM 4    court judge look at the monition that is Your Honor's

01:42PM 5    responsibility to enforce?  We came to the Court because these

01:42PM 6    guys -- St. Joe said, we're not going to abide by it.  We thought

01:42PM 7    that was an offense that we needed to bring to Your Honor.

01:42PM 8            So then they come in and they say, well --

01:43PM 9    Your Honor asked a very pointed question to opposing counsel.

01:43PM 10   What about maritime law?  Isn't maritime law saved under OPA?

01:43PM 11   Answer, yes.  We raised that issue.  It's saved by 33 U.S.C.

01:43PM 12   Section 2751.  That's the other savings portion provision of OPA.

01:43PM 13           So then you hear about something called

01:43PM 14   *sea-to-shore pollution*.  Well, what's the difference between

01:43PM 15   pollution that occurs in territorial waters and causes harm in

01:43PM 16   territorial waters and the difference with sea to shore?  It's

01:43PM 17   all pollution, correct?

01:43PM 18           So what they are trying to tell you is that there

01:43PM 19   is some carve-out in OPA of common law claims for sea-to-shore

01:43PM 20   pollution.  There is no such carve-out.

01:43PM 21           What they avoided answering, and you pointedly

01:44PM 22   asked this question, what about maritime law?  Is there any

01:44PM 23   controlling maritime law?  And the answer is in the

01:44PM 24   Fifth Circuit, it's the *Testbank* en banc decision.  And if that

01:44PM 25   doesn't answer the question, nothing will, because in the

01:44PM   1   Fifth Circuit *Testbank* decision, you had pollution in the MRGO.

01:44PM   2   In the pollution when it occurred in the MRGO, it may not have

01:44PM   3   been sea to shore, but that's not an issue.  What you have got is

01:44PM   4   the *Testbank* decision, which is on all fours that says, if you

01:44PM   5   have pollution in navigable waters, what happens?

01:44PM   6           The admiralty law is supreme.  Admiralty law brings

01:44PM   7   with it maritime law, and in the *Testbank* decision, what did the

01:44PM   8   Court do?  They said there are no state common law claims.  They

01:44PM   9   said they don't exist.

01:44PM   10           THE COURT:  That *Testbank*, I forget the exact year, but

01:44PM   11   it was before OPA was enacted.

01:45PM   12           MR. WALLACE:  Yes, sir.

01:45PM   13           THE COURT:  Does that make a difference?

01:45PM   14           MR. WALLACE:  No, sir, it makes no difference because

01:45PM   15   our position is that when OPA was enacted, they said we're saving

01:45PM   16   the General Maritime Law, which would include *Testbank*, and so

01:45PM   17   they didn't save any -- you can't save a remedy, a state common

01:45PM   18   law remedy that didn't exist.  So it's a circular argument that

01:45PM   19   they are making.

01:45PM   20           Your Honor, when they say that there is no case law

01:45PM   21   that talks about the mini OPA and the congressional intent, we've

01:45PM   22   cited that in our briefs, Your Honor.

01:45PM   23           What Congress did in their review of this was they

01:45PM   24   said the states have a right to issue legislation that goes

01:45PM   25   beyond OPA.  And that's what they were talking about saving under

01:45PM  1    2718.  And then the federal law that existed at the time OPA

01:46PM  2    passed was called the *Solid Waste Hazardous Disposal Act*, which

01:46PM  3    is now RCRA, and they said we want to save that as well and

01:46PM  4    common law remedies similar to RCRA.  That is all 2718(a) says.

01:46PM  5         THE COURT:  If you take your argument to its logical

01:46PM  6    conclusion, maybe I'm understanding it wrong, is it your position

01:46PM  7    that any time there is an oil spill from a vessel on navigable

01:46PM  8    waters, wherever it occurs, and it reaches shore, that maritime

01:46PM  9    law, admiralty law and the Admiralty Extension Act would in every

01:46PM  10   case preempt state law remedies?

01:46PM  11        MR. WALLACE:  Yes, sir.  Based on the *Grubart* case from

01:46PM  12   the U.S. Supreme Court which involved a casualty in downtown

01:47PM  13   Chicago, the Admiralty Extension Act extends admiralty

01:47PM  14   jurisdiction shoreward if the cause of the casualty is a vessel.

01:47PM  15   And that's squarely what is alleged here.

01:47PM  16             And then --

01:47PM  17        THE COURT:  Yes.  I think that -- I don't think there is

01:47PM  18   any doubt here.  In fact, I think I read somewhere, I guess it

01:47PM  19   was in Judge Stark's opinion, whether it be the part that you say

01:47PM  20   is dicta or not, but where he even mentions that -- let's see,

01:47PM  21   this is at page 15 going on to 16 where he said, "Transocean

01:47PM  22   argues that St. Joe's claims invoke admiralty jurisdiction" --

01:47PM  23   skipping -- "according to Transocean, admiralty jurisdiction

01:47PM  24   applies by virtue of the Admiralty Extension Act."

01:47PM  25             And then on the top of the next page, Judge Stark's

01:48PM  1   language says, "St. Joe does not contest that under the facts at

01:48PM  2   hand admiralty jurisdiction would be proper, that is, the *Grubart*

01:48PM  3   test is satisfied, and St. Joe also recognizes that the Admiralty

01:48PM  4   Extension Act extends maritime jurisdiction to cover sea-to-shore

01:48PM  5   transactions."

01:48PM  6           So if I'm understanding -- I can let Mr. Renard

01:48PM  7   come back after; I think I understand his argument -- is that

01:48PM  8   even if admiralty law applies, it doesn't preclude concurrent

01:48PM  9   state law from applying in this scenario, the so-called

01:48PM 10   *sea-to-shore pollution*, and he uses, I think, OPA to -- he

01:48PM 11   boot-straps that argument on OPA.

01:48PM 12           MR. WALLACE:  Yes, sir.  The basic principle here is one

01:48PM 13   of the bedrocks of General Maritime Law conflicts analysis.  If

01:49PM 14   General Maritime Law provides a remedy, then you cannot go to a

01:49PM 15   state law common law remedy.  And here, it's obvious, you have

01:49PM 16   OPA, which provides a remedy.  You have the *Testbank*, which says

01:49PM 17   General Maritime Law provides the remedies here, and those are

01:49PM 18   General Maritime Law remedies of negligence and other matters.

01:49PM 19   *Testbank* expressly said the state common law remedies are

01:49PM 20   preempted under a conflicts-of-law analysis, whereby, A, General

01:49PM 21   Maritime Law is the supreme law of the land, and, B, if -- you

01:49PM 22   can only go to state common law, if, in fact, admiralty doesn't

01:49PM 23   cover and provide a remedy.  And here, we have the *Testbank* case

01:49PM 24   which squarely says that General Maritime Law provides a remedy;

01:50PM 25   ergo, there are no state common law claims.

01:50PM 1          Your Honor, just -- something just happened.

01:50PM 2    Mr. Miller mentioned to me that the Third Circuit has dismissed

01:50PM 3    our appeal.

01:50PM 4          THE COURT:  All right.

01:50PM 5          MR. WALLACE:  So --

01:50PM 6          THE COURT:  This is certainly the era of instantaneous

01:50PM 7    messaging.

01:50PM 8          MR. MILLER:  The things you find out in the courtroom at

01:50PM 9    1:45 in the afternoon.

01:50PM 10          THE COURT:  Yes, yes.

01:50PM 11          MR. WALLACE:  So, Your Honor, our position is, now more

01:50PM 12    than ever, Your Honor should enforce the state court -- pardon

01:50PM 13    me, the monition that, by its terms, we say, provides that all

01:50PM 14    state common law claims are enjoined, and not forever, but

01:50PM 15    pending a ruling by this Honorable Court in late April or early

01:50PM 16    May about the scope of 2718.

01:50PM 17          THE COURT:  Thank you.

01:50PM 18           Mr. Renard.

01:50PM 19          MR. RENARD:  Yes, Your Honor.

01:50PM 20          THE COURT:  What is it that you think would happen in

01:51PM 21    state court, I mean, that is so urgent that it couldn't be put

01:51PM 22    off for 30 to 60 days?

01:51PM 23           Here is the problem I'm having, I guess:  This is

01:51PM 24    obviously a somewhat complicated legal issue.  The real issue,

01:51PM 25    the bottom line here, is not whether admiralty law applies to an

01:51PM  1    explosion and sinking of a vessel in navigable waters on the high

01:51PM  2    seas, in fact, which then causes something to reach land, and

01:51PM  3    there is clearly admiralty jurisdiction and the Admiralty

01:51PM  4    Extension Act would certainly seem to apply, but the real

01:51PM  5    question is whether there can be application of concurrent state

01:52PM  6    law under this scenario.

01:52PM  7            I think I understand the arguments by both sides,

01:52PM  8    but I'm really troubled by being put in the position of having to

01:52PM  9    decide this issue and make a reasoned analysis and decision on it

01:52PM 10    without more thought and study and briefing than I have been able

01:52PM 11    to do in the last day or so.

01:52PM 12            I don't think either side is going to really be

01:52PM 13    greatly prejudiced, but there is a monition order, which, your

01:52PM 14    case, if it's admiralty, then it's admiralty, and no matter how

01:52PM 15    you style it it's still admiralty law.  You can't get around it,

01:52PM 16    unless, like I said, your argument may well be right in the end.

01:53PM 17    I'm not saying it's not, but if the case is purely admiralty,

01:53PM 18    then the monition order would clearly apply to your case.

01:53PM 19            It doesn't mean that your case would be -- that

01:53PM 20    would not make your case removable to federal court.  That would

01:53PM 21    just mean your case would be stayed as against Transocean until

01:53PM 22    the limitation issue was resolved in the admiralty court.

01:53PM 23            So, anyway, I throw that out to you.  I'm having a

01:53PM 24    hard time understanding why that would be a big problem for you

01:53PM 25    and/or your client.

01:53PM  1          MR. BREWER:  Well, Your Honor, this is Bill Brewer, if I

01:53PM  2    might jump in.

01:53PM  3          THE COURT:  Sure.

01:53PM  4          MR. BREWER:  Your Honor, to answer your question

01:53PM  5    directly, what we would imagine is that when the case gets back

01:54PM  6    to Delaware Superior Court, these arguments, which go to the

01:54PM  7    existence of whether or not we have any claims, as stated in our

01:54PM  8    complaint, will be the subject of a Motion to Dismiss in front of

01:54PM  9    Judge Ableman in that court; and if Transocean is right, then our

01:54PM 10    claims would be dismissed.  But Judge Ableman will have a full

01:54PM 11    and fair record developed and the ability to make the rulings

01:54PM 12    that will bind the litigants in that case.

01:54PM 13          With the opportunity, you know, to litigate this --

01:54PM 14    that issue for other litigants, is, we are now informed before

01:54PM 15    Your Honor, and -- you know, I think the real issue today for us

01:55PM 16    is whether or not we violated the monition order when we filed

01:55PM 17    claims under 2718(a), which are clearly excepted -- claims filed

01:55PM 18    under 2718(a) are clearly excepted from the terms of the

01:55PM 19    injunction.  That's all we've filed.  So we could not have

01:55PM 20    violated the terms of the order.

01:55PM 21          THE COURT:  Again, looking forward rather than

01:55PM 22    backwards, regardless of whether you're technically correct, the

01:55PM 23    question is whether I should stay or enjoin your claims until

01:55PM 24    it's been decided whether your claims fall under that exception

01:55PM 25    or not.

01:55PM 1          MR. BREWER:  Well, Your Honor, if I might, may I extend

01:55PM 2    with you on that, sir?

01:55PM 3          THE COURT:  Sure.

01:55PM 4          MR. BREWER:  Well, Your Honor, by definition, we only

01:55PM 5    filed claims under 2718(a).  If those claims don't exist -- if

01:56PM 6    the claims we filed are preempted or don't exist as on the face

01:56PM 7    of the savings statute, savings clause of the OPA, they seem to,

01:56PM 8    and Judge Stark indicated, that's an argument that should be made

01:56PM 9    right away, frankly, to the Delaware District Court, because if

01:56PM 10   Transocean is right in that regard and she agrees with him, well,

01:56PM 11   then they'll have our case in their rearview mirror because it

01:56PM 12   will be dismissed.  And we will have had a fair opportunity to

01:56PM 13   participate in the discussion on that issue in front of the only

01:56PM 14   court that can issue substantive relief, relief on the existence

01:56PM 15   of whether or not we have claims against Transocean.

01:56PM 16         Why would we -- you know, with all due respect to

01:57PM 17   my opposing counsel, it is not lethal prejudice that, going then

01:57PM 18   from whether or not there is any like -- to assess, clearly I've

01:57PM 19   told you, we've said it in front of two different courts

01:57PM 20   before -- before Your Honor today, that all we have is 2718(a)

01:57PM 21   claims.

01:57PM 22         Now -- so now we drop to -- and that's the

01:57PM 23   substantive response.  They want to make that argument and tie it

01:57PM 24   into some motion practice before Your Honor with other litigants.

01:57PM 25   With all due respect, as I indicated, that ought to go to the

01:57PM  1    Superior Court.

01:57PM  2            In terms of irreparable harm, frankly, it's not

01:57PM  3    right that there is any harm to Transocean, that they go to

01:57PM  4    Superior Court and make the argument that they sound like they

01:57PM  5    are prepared to make.  It would be prejudice, significant

01:57PM  6    prejudice to my company.

01:58PM  7            THE COURT:  Well, that was my original question.  What's

01:58PM  8    the prejudice?

01:58PM  9            MR. BREWER:  My client would be prejudiced by having

01:58PM 10    further delay to the development of their claims.  You know, we

01:58PM 11    are a victim of the DEEPWATER HORIZON.  We have significant

01:58PM 12    assets that are -- have been impacted significantly by the spill

01:58PM 13    and its aftermath effects, and we have been trying since last

01:58PM 14    year to get those claims on track towards a substantive

01:58PM 15    resolution in Delaware Superior Court.

01:58PM 16            THE COURT:  Tell me the nature.  Your client owns land

01:58PM 17    in Florida, right?

01:58PM 18            MR. BREWER:  Yes, yes, Your Honor.

01:58PM 19            THE COURT:  It's alleging what, that the oil spill

01:58PM 20    caused the value of the land to be diminished?

01:58PM 21            MR. BREWER:  It has both -- you're right, Your Honor.

01:58PM 22    We own significant land on the panhandle and in northwest

01:59PM 23    Florida.  We are in the business of selling the land, developing

01:59PM 24    it for entitlements and sales, and -- and the damage to us has

01:59PM 25    been that much of that activity has ceased as a result of the

01:59PM  1  DEEPWATER HORIZON, and we are -- it has interrupted our business,

01:59PM  2  has caused us to lose significant profit and suffer a diminution

01:59PM  3  in the value of our assets.

01:59PM  4        THE COURT:  Is it alleged that in any way that you own

01:59PM  5  beach-front property that was impacted directly by the oil?

01:59PM  6        MR. BREWER:  There was some direct impact on beach-front

01:59PM  7  property that we owned.

02:00PM  8        THE COURT:  Okay, anything else you want to say,

02:00PM  9  Mr. Brewer?

02:00PM 10        MR. BREWER:  No, Your Honor.  I very much appreciate the

02:00PM 11  opportunity to be heard.  Thank you.

02:00PM 12        MR. HAYCRAFT:  Your Honor?

02:00PM 13        THE COURT:  Yes.

02:00PM 14        MR. HAYCRAFT:  May I present something?

02:00PM 15        THE COURT:  Sure.

02:00PM 16        MR. HAYCRAFT:  Don Haycraft for BP.

02:00PM 17        Because these issues are common issues with what's

02:00PM 18  going on in the multidistrict litigation, I wanted to be heard,

02:00PM 19  first to just mention an argument that is certainly in many of

02:00PM 20  the moving parties' papers in the motions to dismiss; namely,

02:00PM 21  Florida state law wouldn't apply in any event because this --

02:00PM 22  Your Honor mentioned in the opening OCSLA, the Outer Continental

02:00PM 23  Shelf Lands Act, determines if, indeed, any state law would

02:00PM 24  apply, it would apply as surrogate federal law because this event

02:00PM 25  happened on an offshore installation on the Outer Continental

02:00PM 1    Shelf.  So that's getting into the merits.

02:01PM 2            As an admiralty practitioner and as a frequent

02:01PM 3    filer of limitation actions, as well as claims and limitation on

02:01PM 4    the admiralty side, I think what's at stake here isn't the

02:01PM 5    complicated merits of 2718 and the conflict of laws between

02:01PM 6    admiralty, OPA, and OCSLA but, rather, what court decides the

02:01PM 7    scope of its monition under the Limitation of Liability Act, and

02:01PM 8    I think that can only be decided by Your Honor, by the limitation

02:01PM 9    court that issues the monition; and to have a Delaware state

02:01PM 10   court or a Kentucky state court or a Florida state court

02:01PM 11   determining the scope of the stay is inappropriate.

02:01PM 12           I think that counsel for St. Joe is citing

02:01PM 13   irreparable harm and likelihood of success standards which I

02:01PM 14   don't think apply to this situation, but I just felt duty bound

02:01PM 15   to bring up the whole OCSLA issue because I think it's being

02:02PM 16   overlooked in this discussion.

02:02PM 17           THE COURT:  All right.  Thank you very much.

02:02PM 18           Okay.  First of all, as I view it, it's not the

02:02PM 19   typical rule 65 injunction issue here where certain showings of

02:02PM 20   irreparable harm and likelihood of success and those sorts of

02:02PM 21   things have to be shown, because here we're dealing with a

02:02PM 22   monition order issued by the admiralty court upon the filing of

02:02PM 23   the limitation action, which, as has been pointed out, on its

02:02PM 24   face stays continuing prosecution of any and all suits, actions

02:02PM 25   or legal proceedings in any jurisdiction other than this Court

02:02PM  1    against the petitioners, the DEEPWATER HORIZON, *in rem,* or their

02:03PM  2    agents, officers, et cetera, in any way arising out of the voyage

02:03PM  3    of the DEEPWATER HORIZON that ultimately resulted in the

02:03PM  4    capsizing of the rig in April 2010.

02:03PM  5              That monition order enjoins, stayed and restrained

02:03PM  6    any such legal proceedings, suits or actions in any other court

02:03PM  7    or jurisdiction, except this Court, against Transocean and the

02:03PM  8    DEEPWATER HORIZON until the hearing and termination of these

02:03PM  9    proceedings, meaning the limitation proceeding, not necessarily

02:03PM 10    the MDL proceedings.

02:03PM 11              The issue in question before the Court today is

02:03PM 12    whether the exception to the broad stay order, monition order,

02:03PM 13    which was initially issued by Judge Ellison before the limitation

02:04PM 14    was transferred to this Court, applies or not, and that's the

02:04PM 15    language that says this injunction does not apply to any claims

02:04PM 16    asserted against petitioners under the Oil Pollution Act,

02:04PM 17    33 U.S.C. § 2701 and following, except for claims by responsible

02:04PM 18    parties, which doesn't apply here.

02:04PM 19              It also goes on to say that this injunction does

02:04PM 20    not apply -- and I'm reading, obviously, from the second amended

02:04PM 21    monition order dated, it looks like, June 11, 2010.  "This

02:04PM 22    injunction does not apply to any claims, including those of

02:04PM 23    private parties, asserted against Petitioners within the scope of

02:04PM 24    33 U.S.C. § 2718(a), inclusive," and then again, excepting claims

02:04PM 25    by responsible parties.

02:04PM  1         I honestly don't know what was in Judge Ellison's

02:05PM  2    head, and I wasn't present at the hearing, if there was a hearing

02:05PM  3    when this amended order was issued.  I don't know exactly what he

02:05PM  4    envisioned, if he had something specific in mind.

02:05PM  5         The issue here, it seems to me, the fundamental

02:05PM  6    issue, is not whether the remand of this case by Judge Stark was

02:05PM  7    proper or not proper.  That's been decided by Judge Stark and

02:05PM  8    apparently now will become final since the Third Circuit has

02:05PM  9    declined to act; so, the Court assumes that Judge Stark's order

02:05PM 10    will become effective in this case.  When I say *this case*, I mean

02:05PM 11    the *St. Joe v. Transocean* Delaware case will be remanded back to

02:05PM 12    Delaware state court pursuant to Judge Stark's earlier order.  So

02:05PM 13    that's not really the issue before the Court.

02:06PM 14         It's clear that St. Joe has attempted to allege and

02:06PM 15    does allege on the face of its petition in state court, as Judge

02:06PM 16    Stark pointed out, only Florida state law claims.  They have

02:06PM 17    expressly disavowed any intent to bring claims under any federal

02:06PM 18    law under OPA, maritime law, or any other federal law.

02:06PM 19         However, the law is clear that if the facts and

02:06PM 20    circumstances of the case called for or required the application

02:06PM 21    of admiralty or maritime substantive law, then regardless of how

02:06PM 22    the case is pled, whatever the facts are, whatever the way the

02:06PM 23    case is pled, that nonetheless, the Court, whether the state or

02:07PM 24    federal court, is required to apply admiralty law to the

02:07PM 25    exclusion of state law.  That's pretty fundamental law that we

02:07PM  1    deal with often here.

02:07PM  2            In this case, the plaintiff, St. Joe, argues,

02:07PM  3    however, that preOPA, the Admiralty Extension Act did not

02:07PM  4    preclude concurrent state law for so-called *sea-to-shore*

02:07PM  5    *pollution*; therefore, even though admiralty law applies, it does

02:07PM  6    not necessarily preclude concurrent state law claims from being

02:07PM  7    pursued.

02:07PM  8            That may or may not be correct.  As I said a few

02:08PM  9    moments ago, I do not feel comfortable deciding that issue in the

02:08PM 10    setting that I find myself in now, with fairly limited briefing

02:08PM 11    and time to analyze these legal issues and think this through

02:08PM 12    and, hopefully, come to the right decision.

02:08PM 13            I don't see that there would be any great harm

02:08PM 14    to -- presuming at this point, and unless I decide otherwise,

02:08PM 15    that it's not clear that the earlier monition order would allow

02:08PM 16    St. Joe to pursue their claims in Delaware state court outside

02:09PM 17    the limitation, so that may or may not ultimately turn out to be

02:09PM 18    correct, but I'm just not prepared to say that at this time.

02:09PM 19            So for that reason, I'm going to grant Transocean

02:09PM 20    's motion for an enforcement at the present time of the monition

02:09PM 21    order against St. Joe in terms of enjoining, staying and

02:09PM 22    restraining St. Joe from prosecuting or continuing to prosecute

02:09PM 23    its claims against Transocean in the Delaware state court.

02:09PM 24            I want to make it abundantly clear that in no way

02:09PM 25    is this order intended to affect or impact Judge Stark's remand

02:10PM 1   order.  Well, I've just issued that order verbally, but I'll sign

02:10PM 2   a written order to that effect, too.

02:10PM 3           Thank you, Mr. Gifford, Mr. Renard and Mr. Brewer.

02:10PM 4   As has been stated, the current schedule here, just FYI for you

02:10PM 5   folks, is that the briefing should be completed on these motions

02:10PM 6   to dismiss in my court sometime in mid-April, I believe, and we

02:10PM 7   don't have a definite date, but the current tentative plan is to

02:10PM 8   have oral argument sometime in May, and I haven't set a date for

02:10PM 9   that yet.  I assume you all may have some interest in

02:10PM 10  participating --

02:10PM 11          MR. BREWER:  Your Honor.

02:11PM 12          THE COURT:  -- attending or whatever you care to do, but

02:11PM 13  that would be up to you all.  I just wanted to alert you to that.

02:11PM 14          MR. BREWER:  Your Honor, this is Bill Brewer.  May I

02:11PM 15  just address?  Would it be, given, and I know it's not the

02:11PM 16  substantive issue -- but based in your motions to dismiss, but

02:11PM 17  given the importance of the issue to us, under the circumstances,

02:11PM 18  did I just understand the Court to invite our participation in

02:11PM 19  that?

02:11PM 20          THE COURT:  I would not see any problem with you filing

02:11PM 21  some sort of -- well, your client is already a party in this

02:11PM 22  Court in two other cases, as I recall; is that correct?

02:11PM 23          MR. BREWER:  That's correct, Your Honor.

02:11PM 24          THE COURT:  So you're a party to the -- I don't know.

02:11PM 25  Are you of record?  Are you or any of you on the phone of record

02:11PM 1   in this court?

02:11PM 2            MR. BREWER:  You know, I don't think we've actually

02:11PM 3   appeared other than pursuant to the transfer order, Your Honor.

02:11PM 4            THE COURT:  I don't know what Transocean's position is

02:12PM 5   going to be, but I don't envision any problem with you all filing

02:12PM 6   some sort of -- whether you call it an *amicus brief* or whatever

02:12PM 7   you want to do.

02:12PM 8                 Mr. Miller?

02:12PM 9            MR. MILLER:  Kerry Miller on behalf of Transocean.

02:12PM 10               We don't have any problem with that.  I mean, like

02:12PM 11  Your Honor said, St. Joe and their counsel are in MDL 2179 on

02:12PM 12  behalf of St. Joe against Halliburton and M-I, so no problem at

02:12PM 13  all.

02:12PM 14           MR. BREWER:  Your Honor, just to inform the Court, you

02:12PM 15  know, we intend to, of course, file, as you might anticipate,

02:12PM 16  file -- refile the motions to remand those two cases, though, but

02:12PM 17  in terms of representing St. Joe's interest in connection with

02:12PM 18  this issue as it relates to the monition order, we would

02:12PM 19  appreciate the opportunity to be heard.

02:12PM 20           THE COURT:  Okay.  Well, it sounds like that won't be a

02:12PM 21  problem.

02:12PM 22           MR. BREWER:  Thank you very much.

02:12PM 23           THE COURT:  All right.  Have a good day, folks.

02:12PM 24  Good-bye.

02:13PM 25           MR. MILLER:  Thank you, Judge.

1       (WHEREUPON, at 2:13 p.m., the proceedings were

2   concluded.)

3                         *    *    *

4

5

6

7

8                     REPORTER'S CERTIFICATE

9

10      I, Cathy Pepper, Certified Realtime Reporter, Registered

11   Merit Reporter, Registered Professional Reporter, Certified Court

12   Reporter of the State of Louisiana, Official Court Reporter for

13   the United States District Court, Eastern District of Louisiana,

14   do hereby certify that the foregoing is a true and correct

15   transcript, to the best of my ability and understanding, from the

16   record of the proceedings in the above-entitled and numbered

17   matter.

18

19

20                          *s/Cathy Pepper*_____

21                          Cathy Pepper, CRR, RMR, CCR

22                          Certified Realtime Reporter

23                          Official Court Reporter

24                          United States District Court

25

# #

**#10-2771** [1] - 1:8

# '

**'completely** [1] -
11:15
**'extraordinary** [1] -
11:20

# 1

**1** [4] - 19:4, 19:9,
19:20, 21:17
**1)(A** [1] - 17:7
**10** [1] - 11:11
**10-MD-2179** [1] - 1:6
**11** [3] - 11:11, 18:11,
35:21
**1100** [1] - 1:25
**15** [3] - 3:6, 5:22,
26:21
**15th** [1] - 7:1
**16** [1] - 26:21
**1714** [1] - 5:10
**1717** [1] - 1:18
**1732** [1] - 5:15
**1746** [1] - 5:18
**1851** [1] - 17:5
**1905** [1] - 10:16
**1911** [1] - 8:1
**1996** [1] - 20:16
**1:00** [1] - 1:7
**1:45** [1] - 28:9

# 2

**2** [5] - 17:9, 17:22,
19:10, 21:2, 21:18
**20** [2] - 1:5, 12:10
**2000** [1] - 20:5
**2007** [1] - 20:6
**2010** [5] - 1:5, 6:22,
20:13, 35:4, 35:21
**2011** [3] - 1:7, 4:2,
5:22
**20th** [1] - 10:22
**2179** [2] - 5:7, 39:11
**23** [2] - 3:7, 24:1
**25** [2] - 1:7, 4:2
**27** [1] - 24:1
**2701** [1] - 35:17
**2718** [20] - 8:12, 8:15,
8:25, 9:1, 9:6, 9:15,
10:9, 11:4, 12:21,
12:24, 18:4, 18:8,

20:1, 20:4, 22:12,
23:23, 26:1, 28:16,
34:5
**2718(a** [12] - 16:24,
17:12, 19:11, 20:11,
20:24, 21:8, 23:1,
26:4, 30:17, 30:18,
31:20, 35:24
**2718(a)** [3] - 17:1,
21:7, 31:5
**2751** [1] - 24:12
**2817** [1] - 9:23
**28th** [4] - 7:9, 10:1,
14:14, 23:25
**2:13** [1] - 40:1

# 3

**3** [1] - 17:5
**30** [4] - 3:8, 14:12,
14:14, 28:22
**33** [6] - 3:9, 8:15,
16:24, 24:11, 35:17,
35:24
**34** [1] - 3:10
**36TH** [1] - 1:24
**38** [1] - 3:11
**39** [2] - 3:12, 3:13

# 4

**4** [1] - 16:21
**4800** [1] - 1:18

# 5

**500** [2] - 2:5, 2:19
**5000** [1] - 2:15
**504** [1] - 2:20
**589-7779** [1] - 2:20

# 6

**6** [1] - 3:5
**60** [1] - 28:22
**65** [1] - 34:19

# 7

**701** [1] - 2:15
**70130** [1] - 2:19
**70139** [1] - 2:16
**70163** [1] - 1:25
**711** [1] - 2:5
**75201** [1] - 1:18
**77002** [1] - 2:5

# A

**abide** [3] - 7:3, 9:22,
24:6
**ability** [3] - 17:7,
30:11, 40:15
**able** [4] - 15:16, 16:17,
22:17, 29:10
**abled** [1] - 23:8
**Ableman** [3] - 23:8,
30:9, 30:10
**abnormally** [1] - 18:1
**abnormally-
dangerous** [1] - 18:1
**abolished** [1] - 18:14
**above-entitled** [1] -
40:16
**absolutely** [1] - 23:2
**abundance** [1] - 10:5
**abundantly** [1] - 37:24
**according** [2] - 11:5,
26:23
**act** [6] - 14:18, 17:4,
17:5, 20:18, 36:9
**Act** [5] - 8:24, 9:10,
17:4, 18:4, 19:1,
19:5, 21:19, 26:2,
26:9, 26:13, 26:24,
27:4, 29:4, 33:23,
34:7, 35:16, 37:3
**action** [8] - 6:6, 11:6,
12:4, 16:9, 17:16,
17:18, 23:13, 34:23
**ACTION** [1] - 1:6
**actions** [3] - 34:3,
34:24, 35:6
**activity** [1] - 18:1,
32:25
**actual** [2] - 10:15,
10:16
**additional** [1] - 17:7
**address** [1] - 38:15
**Admiralty** [4] - 8:24,
26:9, 26:13, 26:24,
27:3, 29:3, 37:3
**admiralty** [26] - 8:20,
8:23, 19:15, 25:6,
26:9, 26:13, 26:22,
26:23, 27:2, 27:8,
27:22, 28:25, 29:3,
29:14, 29:15, 29:17,
29:22, 34:2, 34:4,
34:6, 34:22, 36:21,
36:24, 37:5
**advance** [1] - 10:22
**affect** [3] - 17:6, 17:9,
37:25
**aftermath** [1] - 32:13
**afternoon** [3] - 4:8,

11:7, 28:9
**agents** [1] - 35:2
**ago** [2] - 21:15, 37:9
**agree** [1] - 13:17
**agrees** [1] - 31:10
**ahead** [2] - 6:20, 15:22
**alert** [1] - 38:13
**allege** [2] - 36:14,
36:15
**alleged** [2] - 26:15,
33:4
**alleging** [1] - 32:19
**allow** [2] - 23:5, 37:15
**allowing** [2] - 23:3
**amended** [3] - 6:14,
35:20, 36:3
**AMERICA** [6] - 2:8,
2:8, 2:9, 2:10, 2:12,
2:13
**amicus** [1] - 39:6
**analysis** [5] - 16:10,
22:16, 27:13, 27:20,
29:9
**analyze** [1] - 37:11
**AND** [1] - 1:22
**answer** [5] - 14:24,
24:11, 24:23, 24:25,
30:4
**answering** [1] - 24:21
**anticipate** [1] - 39:15
**anyway** [2] - 10:18,
29:23
**appeal** [1] - 28:3
**APPEARANCES** [2] -
1:13, 2:1
**appeared** [1] - 39:3
**application** [3] -
13:10, 29:5, 36:20
**applies** [8] - 10:25,
11:22, 23:22, 26:24,
27:8, 28:25, 35:14,
37:5
**apply** [12] - 10:4, 29:4,
29:18, 33:21, 33:24,
34:14, 35:15, 35:18,
35:20, 35:22, 36:24
**applying** [1] - 27:9
**appreciate** [4] - 4:18,
15:24, 33:10, 39:19
**APRIL** [1] - 1:5
**April** [6] - 10:1, 10:22,
14:14, 28:15, 35:4,
38:6
**argue** [1] - 15:14
**argues** [2] - 26:22,
37:2
**argument** [27] - 9:12,
14:17, 16:1, 18:20,
18:22, 20:23, 20:24,
21:15, 21:16, 21:20,

21:21, 22:3, 22:6,
22:17, 23:7, 24:1,
25:18, 26:5, 27:7,
27:11, 29:16, 31:8,
31:23, 32:4, 33:19,
38:8
**arguments** [4] - 11:16,
12:22, 29:7, 30:6
**arising** [1] - 35:2
**assert** [4] - 14:9, 18:2,
19:9, 19:10
**asserted** [9] - 16:23,
17:17, 17:22, 20:1,
20:17, 21:10, 22:7,
35:16, 35:23
**assertion** [1] - 22:2
**assess** [1] - 31:18
**assets** [2] - 32:12,
33:3
**assume** [1] - 38:9
**assumes** [1] - 36:9
**attached** [1] - 5:13
**attempted** [1] - 36:14
**attending** [2] - 2:23,
38:12
**attention** [1] - 14:20
**attorneys** [1] - 2:23
**audio** [1] - 2:23
**authority** [4] - 8:17,
12:20, 15:5, 15:8
**available** [1] - 9:16
**availing** [1] - 11:16
**avoided** [1] - 24:21
**aware** [2] - 5:20, 5:25

# B

**B406** [1] - 2:19
**background** [1] -
17:15
**backwards** [1] - 30:22
**banc** [2] - 8:21, 24:24
**BARBIER** [1] - 1:11
**based** [6] - 11:10,
11:15, 12:5, 12:22,
26:11, 38:16
**bases** [1] - 19:4
**basic** [4] - 10:3, 10:7,
16:1, 27:12
**basis** [1] - 11:14
**beach** [2] - 33:5, 33:6
**beach-front** [2] - 33:5,
33:6
**become** [3] - 13:22,
36:8, 36:10
**bedrocks** [1] - 27:13
**BEFORE** [1] - 1:11
**begins** [1] - 17:3
**behalf** [5] - 4:24, 5:15,

7:7, 39:9, 39:12
**below** [1] - 11:19
**bench** [1] - 17:2
**best** [1] - 40:15
**better** [1] - 15:22
**between** [4] - 8:8, 8:9, 24:14, 34:5
**beyond** [1] - 25:25
**BICKEL** [1] - 1:16
**big** [1] - 29:24
**Bill** [2] - 30:1, 38:14
**bind** [1] - 30:12
**bit** [2] - 15:20, 16:13
**body** [3] - 19:21, 20:20, 21:9
**boot** [1] - 27:11
**boot-straps** [1] - 27:11
**bottom** [2] - 11:12, 28:25
**bound** [1] - 34:14
**BP** [10] - 2:8, 2:8, 2:9, 2:10, 2:11, 2:12, 2:13, 5:2, 9:18, 33:16
**Brewer** [6] - 4:15, 15:25, 30:1, 33:9, 38:3, 38:14
**BREWER** [19] - 1:16, 1:17, 4:16, 4:19, 30:1, 30:4, 31:1, 31:4, 32:9, 32:18, 32:21, 33:6, 33:10, 38:11, 38:14, 38:23, 39:2, 39:14, 39:22
**BREWER**.................
............................ [3] -
3:8, 3:11, 3:13
**brief** [1] - 39:6
**briefing** [3] - 29:10, 37:10, 38:5
**briefs** [1] - 25:22
**bring** [4] - 12:17, 24:7, 34:15, 36:17
**brings** [1] - 25:6
**broad** [2] - 7:21, 35:12
**business** [2] - 32:23, 33:1
**BY** [7] - 1:4, 1:16, 1:23, 2:4, 2:14, 2:21, 2:21
**bye** [1] - 39:24
**bypass** [1] - 20:23

**C**

**California** [1] - 20:13
**CALLED** [1] - 4:4
**CAMPBELL** [1] - 1:24

---

36:8
**cannot** [1] - 27:14
**capsizing** [1] - 35:4
**care** [2] - 23:15, 38:12
**carefully** [1] - 17:23
**CARL** [1] - 1:11
**carry** [1] - 12:10
**carve** [2] - 24:19, 24:20
**carve-out** [2] - 24:19, 24:20
**case** [46] - 6:6, 6:25, 7:15, 8:1, 8:19, 10:15, 10:24, 12:8, 13:7, 13:20, 13:22, 14:1, 14:8, 15:8, 15:24, 19:21, 20:5, 20:6, 20:14, 21:3, 21:9, 22:22, 25:20, 26:10, 26:11, 27:23, 29:14, 29:17, 29:18, 29:19, 29:20, 29:21, 30:5, 30:12, 31:11, 36:6, 36:10, 36:11, 36:20, 36:22, 36:23, 37:2
**cases** [4] - 19:25, 20:4, 38:22, 39:16
**casualty** [2] - 26:12, 26:14
**category** [1] - 17:13
**CATHY** [1] - 2:18
**Cathy** [2] - 40:10, 40:21
**caused** [2] - 32:20, 33:2
**causes** [2] - 24:15, 29:2
**caution** [1] - 10:5
**CCR** [2] - 2:18, 40:21
**ceased** [1] - 32:25
**CENTRE** [1] - 1:24
**certain** [1] - 34:19
**certainly** [5] - 15:24, 22:5, 28:6, 29:4, 33:19
**CERTIFICATE** [1] - 40:8
**CERTIFIED** [1] - 2:18
**Certified** [3] - 40:10, 40:11, 40:22
**certify** [1] - 40:14
**cetera** [1] - 35:2
**Chicago** [1] - 26:13
**choice** [2] - 8:22, 15:8
**chosen** [1] - 19:11
**Circuit** [14] - 7:18, 8:21, 10:16, 12:18, 13:8, 13:10, 13:11, 13:16, 13:17, 14:22, 24:24, 25:1, 28:2,

---

circular [1] - 25:18
**circumstances** [2] - 36:20, 38:17
**cite** [1] - 18:10
**cited** [10] - 7:25, 10:15, 18:12, 19:22, 20:4, 20:14, 21:3, 22:21, 25:22
**citing** [1] - 34:12
**CIVIL** [1] - 1:6
**claim** [9] - 9:1, 10:23, 19:6, 19:10, 21:23, 21:24, 22:4, 22:7
**claimants** [1] - 6:23
**claims** [86] - 6:8, 7:21, 7:23, 7:24, 8:2, 8:3, 8:4, 8:12, 8:14, 8:19, 8:22, 8:24, 9:4, 9:8, 9:9, 9:15, 9:24, 10:10, 11:15, 12:3, 12:25, 16:7, 16:22, 17:13, 17:17, 17:23, 17:24, 18:3, 18:7, 18:15, 18:24, 19:1, 19:2, 19:15, 19:23, 20:1, 20:3, 20:8, 20:17, 20:25, 21:1, 21:7, 21:8, 21:10, 21:12, 21:17, 21:19, 21:22, 22:3, 22:13, 22:23, 24:19, 25:8, 26:22, 27:25, 28:14, 30:7, 30:10, 30:17, 30:23, 30:24, 31:5, 31:6, 31:15, 31:21, 32:10, 32:14, 34:3, 35:15, 35:17, 35:22, 35:24, 36:16, 36:17, 37:6, 37:16, 37:23
**clause** [3] - 9:7, 18:4, 31:7
**clauses** [4] - 11:18, 12:11, 12:15, 18:18
**clear** [7] - 7:11, 19:5, 22:12, 36:14, 36:19, 37:15, 37:24
**clearly** [6] - 11:19, 29:3, 29:18, 30:17, 30:18, 31:18
**CLERK** [2] - 4:7, 6:16
**client** [4] - 29:25, 32:9, 32:16, 38:21
**comfortable** [1] - 37:9
**common** [32] - 7:24, 8:2, 8:3, 8:22, 8:24, 9:1, 9:8, 9:15, 9:24, 10:9, 12:25, 17:10, 17:23, 18:3, 20:3, 20:8, 20:16, 20:25,

---

21:10, 21:11, 21:17, 24:19, 25:8, 25:17, 26:4, 27:15, 27:19, 27:22, 27:25, 28:14, 33:17
**Company** [1] - 5:12
**COMPANY** [3] - 1:16, 2:9
**company** [1] - 32:6
**complaint** [7] - 11:13, 11:22, 11:23, 12:2, 12:6, 12:7, 30:8
**complete** [3] - 11:17, 18:13, 18:17
**completed** [1] - 38:5
**complicated** [3] - 9:6, 28:24, 34:5
**COMPUTER** [1] - 2:21
**concluded** [1] - 40:2
**conclusion** [1] - 26:6
**concurrent** [5] - 11:19, 27:8, 29:5, 37:4, 37:6
**conflict** [1] - 34:5
**conflicts** [2] - 27:13, 27:20
**conflicts-of-law** [1] - 27:20
**Congress** [2] - 9:8, 25:23
**congressional** [2] - 9:7, 25:21
**connection** [1] - 39:17
**consequence** [1] - 15:9
**consideration** [1] - 13:11
**contained** [1] - 19:18
**contemplate** [1] - 11:19
**contest** [1] - 27:1
**Continental** [3] - 18:25, 33:22, 33:25
**CONTINUED** [1] - 2:1
**continuing** [2] - 34:24, 37:22
**controlling** [2] - 20:21, 24:23
**controls** [1] - 16:6
**conundrum** [3] - 14:25, 15:1, 15:7
**copy** [2] - 5:23, 6:14
**CORPORATION** [1] - 2:10
**correct** [8] - 4:18, 24:17, 30:22, 37:8, 37:18, 38:22, 38:23, 40:14
**counsel** [4] - 24:9, 31:17, 34:12, 39:11

---

course [3] - 5:19, 9:25, 39:15
**COURT** [60] - 1:1, 2:18, 4:4, 4:8, 4:11, 4:13, 4:15, 4:17, 4:20, 5:3, 5:6, 6:11, 6:17, 7:4, 7:11, 7:14, 10:18, 11:25, 13:3, 13:5, 13:14, 13:20, 14:16, 15:12, 15:18, 15:22, 16:12, 16:19, 17:2, 18:19, 18:22, 19:14, 19:17, 23:17, 25:10, 25:13, 26:5, 26:17, 28:4, 28:6, 28:10, 28:17, 28:20, 30:3, 30:21, 31:3, 32:7, 32:16, 32:19, 33:4, 33:8, 33:13, 33:15, 34:17, 38:12, 38:20, 38:24, 39:4, 39:20, 39:23
**Court** [50] - 6:3, 8:1, 11:16, 16:2, 16:17, 17:18, 17:19, 18:7, 18:12, 18:16, 19:22, 20:5, 20:15, 20:21, 21:14, 22:3, 22:4, 22:6, 22:13, 22:15, 22:17, 23:7, 23:12, 23:13, 23:14, 24:5, 25:8, 26:12, 28:15, 30:6, 31:9, 32:1, 32:4, 32:15, 34:25, 35:7, 35:11, 35:14, 36:9, 36:13, 36:23, 38:18, 38:22, 39:14, 40:11, 40:12, 40:13, 40:23, 40:24
**court** [52] - 4:7, 5:6, 6:8, 6:25, 7:1, 7:16, 7:19, 8:6, 8:21, 10:5, 12:18, 12:19, 13:23, 14:2, 14:4, 14:5, 14:6, 14:9, 14:18, 14:20, 14:25, 15:6, 15:16, 16:6, 17:20, 20:19, 21:6, 22:7, 22:22, 23:20, 24:2, 24:4, 28:12, 28:21, 29:20, 29:22, 30:9, 31:14, 34:6, 34:9, 34:10, 34:22, 35:6, 36:12, 36:15, 36:24, 37:16, 37:23, 38:6, 39:1
**Court's** [2] - 9:25, 21:13
**COURT**.....................
........................ [1] -

3:10
**courtroom** [3] - 4:21, 15:19, 28:8
**courts** [3] - 7:22, 20:7, 31:19
**cover** [2] - 27:4, 27:23
**covered** [1] - 20:3
**covers** [1] - 20:1
**create** [1] - 23:6
**CRR** [2] - 2:18, 40:21
**current** [2] - 38:4, 38:7
**cut** [1] - 2:23

## D

**DALLAS** [1] - 1:18
**damage** [2] - 11:16, 32:24
**damages** [1] - 19:7
**dangerous** [1] - 18:1
**date** [3] - 7:8, 38:7, 38:8
**dated** [2] - 5:22, 35:21
**days** [4] - 14:11, 14:12, 14:14, 28:22
**deadline** [1] - 10:23
**deal** [2] - 18:12, 37:1
**dealing** [1] - 34:21
**decide** [4] - 13:25, 21:7, 29:9, 37:14
**decided** [4] - 14:2, 30:24, 34:8, 36:7
**decides** [1] - 34:6
**deciding** [1] - 37:9
**decision** [10] - 5:21, 5:23, 9:23, 9:25, 24:24, 25:1, 25:4, 25:7, 29:9, 37:12
**declined** [1] - 36:9
**DEEPWATER** [9] - 1:4, 1:21, 1:22, 5:7, 32:11, 33:1, 35:1, 35:3, 35:8
**defendants** [3] - 4:25, 6:4, 6:9
**defense** [1] - 22:1
**defer** [1] - 14:12
**deferral** [1] - 12:24
**deferred** [1] - 15:6
**defined** [1] - 8:14
**defines** [1] - 21:8
**definite** [1] - 38:7
**definition** [1] - 31:4
**Delaware** [18] - 5:22, 6:25, 13:23, 16:9, 17:16, 17:18, 18:6, 22:2, 23:12, 30:6, 31:9, 32:15, 34:9, 36:11, 36:12, 37:16,

37:23
**delay** [1] - 32:10
**demonstrate** [1] - 16:7
**demonstrates** [1] - 16:8
**depriving** [1] - 11:20
**DEPUTY** [1] - 4:7
**desk** [2] - 6:12, 6:13
**detail** [1] - 11:18
**detailed** [1] - 24:1
**determination** [1] - 8:18
**determines** [1] - 33:23
**determining** [1] - 34:11
**developed** [1] - 30:11
**developing** [1] - 32:23
**development** [1] - 32:10
**dicta** [4] - 12:11, 12:15, 18:9, 26:20
**difference** [4] - 24:14, 24:16, 25:13, 25:14
**different** [1] - 31:19
**diminished** [1] - 33:20
**diminution** [1] - 33:2
**direct** [2] - 18:19, 33:6
**directly** [3] - 14:24, 30:5, 33:5
**disavowed** [1] - 36:17
**discussion** [2] - 31:13, 34:16
**dismiss** [10] - 9:14, 9:18, 10:2, 10:8, 14:9, 22:13, 22:15, 33:20, 38:6, 38:16
**Dismiss** [1] - 30:8
**dismissed** [4] - 21:25, 28:2, 30:10, 31:12
**Disposal** [2] - 9:10, 26:2
**dispose** [1] - 16:3
**dispute** [2] - 8:8, 8:9
**distinguishing** [1] - 18:8
**DISTRICT** [3] - 1:1, 1:1, 1:12
**District** [7] - 18:7, 20:13, 20:16, 31:9, 40:13, 40:24
**district** [1] - 7:19
**doctrine** [2] - 10:25, 18:17
**document** [4] - 5:10, 5:15, 5:18, 11:17
**DOCUMENT** [1] - 1:8
**dodging** [1] - 10:12
**DON** [1] - 2:14
**Don** [2] - 5:2, 33:16
**doubt** [1] - 26:18

**Dowdell** [1] - 10:15
**down** [1] - 22:16
**downtown** [1] - 26:12
**DRILLING** [1] - 1:22
**drop** [1] - 31:22
**due** [2] - 31:16, 31:25
**duty** [1] - 34:14

## E

**e-mail** [1] - 5:23
**early** [1] - 28:15
**earth** [1] - 12:16
**Eastern** [1] - 40:13
**EASTERN** [1] - 1:1
**Ed** [2] - 4:24, 6:4
**effect** [4] - 7:15, 9:3, 23:4, 38:2
**effective** [3] - 7:8, 13:22, 36:10
**effects** [1] - 32:13
**Eileen** [1] - 16:14
**either** [3] - 13:16, 13:17, 29:12
**elements** [1] - 17:24
**Ellison** [1] - 35:13
**Ellison's** [1] - 36:1
**ELSLEY** [1] - 2:4
**Elsley** [1] - 5:1
**emergency** [3] - 23:9, 23:13, 23:15
**en** [2] - 8:21, 24:24
**enacted** [2] - 25:11, 25:15
**encompass** [1] - 20:24
**encompassed** [1] - 21:7
**end** [2] - 16:13, 29:16
**ENERGY** [1] - 1:24
**enforce** [4] - 6:5, 16:3, 24:5, 28:12
**enforced** [6] - 10:6, 10:17, 12:23, 14:13, 15:3
**Enforcement** [1] - 5:11
**enforcement** [4] - 9:19, 12:17, 15:11, 37:20
**engage** [1] - 14:10
**enjoin** [2] - 7:15, 10:23
**enjoined** [4] - 7:21, 8:2, 16:9, 28:14
**enjoining** [2] - 6:8, 37:21
**enjoins** [2] - 8:6, 35:5
**entirely** [1] - 18:14

**entities** [1] - 5:9
**entitled** [1] - 40:16
**entitlements** [1] - 32:24
**envision** [1] - 39:5
**envisioned** [1] - 36:4
**era** [1] - 28:6
**ergo** [1] - 27:25
**ESQUIRE** [7] - 1:16, 1:17, 1:17, 1:23, 1:24, 2:4, 2:14
**essentially** [3] - 14:12, 16:4, 22:19
**established** [2] - 22:19, 22:20
**et** [1] - 35:2
**event** [2] - 33:21, 33:24
**Ex** [1] - 5:11
**exact** [1] - 25:10
**exactly** [2] - 22:1, 36:3
**examine** [2] - 21:15, 24:3
**examined** [1] - 11:18
**except** [2] - 35:7, 35:17
**excepted** [3] - 17:14, 30:17, 30:18
**excepting** [1] - 35:24
**exception** [11] - 8:5, 8:11, 16:8, 16:9, 19:14, 19:19, 20:12, 22:23, 23:24, 30:24, 35:12
**exclusion** [1] - 36:25
**exclusively** [1] - 20:25
**excuse** [2] - 6:11, 8:8
**exempt** [1] - 9:23
**exist** [7] - 8:23, 9:2, 12:4, 25:9, 25:18, 31:5, 31:6
**existed** [1] - 26:1
**existence** [2] - 30:7, 31:14
**exists** [2] - 9:23, 19:21
**expect** [2] - 7:3, 13:12
**EXPLORATION** [1] - 2:11
**explosion** [1] - 29:1
**expressly** [3] - 8:3, 27:19, 36:17
**extend** [1] - 31:1
**extends** [2] - 26:13, 27:4
**Extension** [7] - 8:24, 26:9, 26:13, 26:24, 27:4, 29:4, 37:3
**extent** [1] - 19:6
**extinguished** [1] - 20:11

**extraordinary** [1] - 14:11

## F

**face** [6] - 8:4, 17:22, 21:11, 31:6, 34:24, 36:15
**fact** [11] - 5:20, 5:22, 9:16, 14:18, 18:10, 21:4, 22:21, 23:2, 26:18, 27:22, 29:2
**facts** [3] - 27:1, 36:19, 36:22
**fair** [2] - 30:11, 31:12
**fairly** [2] - 19:5, 37:10
**fall** [1] - 10:24
**familiar** [1] - 9:13
**February** [1] - 23:25
**federal** [13] - 6:25, 15:1, 17:20, 18:25, 19:2, 19:9, 21:23, 26:1, 29:20, 33:24, 36:17, 36:18, 36:24
**felt** [2] - 12:10, 34:14
**few** [2] - 4:20, 37:8
**Fifth** [3] - 8:21, 24:24, 25:1
**fighting** [1] - 23:5
**file** [3] - 19:9, 39:15, 39:16
**filed** [11] - 5:8, 5:15, 5:16, 5:17, 13:9, 30:16, 30:17, 30:19, 31:5, 31:6
**filer** [1] - 34:3
**filing** [4] - 10:23, 34:22, 38:20, 39:5
**final** [1] - 36:8
**first** [12] - 6:1, 10:13, 11:2, 11:3, 13:25, 15:16, 16:4, 18:12, 20:24, 23:20, 33:19, 34:18
**fit** [2] - 16:7, 20:11
**fits** [1] - 16:8
**five** [1] - 23:12
**FLOOR** [1] - 1:24
**Florida** [8] - 8:4, 17:24, 22:5, 32:17, 32:23, 33:21, 34:10, 36:16
**folks** [6] - 4:9, 4:20, 5:3, 10:11, 38:5, 39:23
**following** [1] - 35:17
**FOR** [3] - 1:15, 1:20, 2:8
**force** [1] - 11:20

37:13

**Harmon** [1] - 7:25
**HAYCRAFT** [5] - 2:14,
5:2, 33:12, 33:14,
33:16
**Haycraft** [2] - 5:2,
33:16
**HAYCRAFT...............
.......................** [1]
- 3:9
**Hazardous** [1] - 26:2
**head** [1] - 36:2
**hear** [8] - 4:22, 5:4,
15:12, 15:17, 15:18,
15:19, 16:18, 24:13
**HEARD** [1] - 1:11
**heard** [4] - 21:4,
33:11, 33:18, 39:19
**hearing** [3] - 35:8,
36:2
**heed** [1] - 14:20
**held** [2] - 20:7, 20:16
**hereby** [1] - 40:14
**high** [1] - 29:1
**historically** [1] - 22:25
**hit** [1] - 22:1
**hits** [1] - 21:14
**holding** [1] - 8:1
**HOLDINGS** [2] - 1:20,
2:12
**honestly** [1] - 36:1
**Honor** [96] - 4:10,
4:14, 4:16, 4:19,
4:24, 5:5, 6:3, 6:21,
7:1, 7:17, 7:25, 8:17,
9:13, 9:17, 9:22,
10:1, 10:7, 10:14,
11:3, 12:19, 12:22,
13:2, 13:4, 14:7,
14:12, 14:14, 14:24,
15:4, 15:11, 15:15,
15:16, 15:21, 15:23,
16:2, 16:10, 16:17,
16:20, 16:25, 17:3,
17:11, 18:2, 18:8,
18:10, 19:4, 19:13,
19:16, 19:19, 19:20,
19:25, 20:4, 20:7,
20:12, 20:14, 20:20,
20:22, 21:2, 21:8,
21:11, 21:21, 22:1,
22:9, 22:16, 23:1,
23:8, 23:10, 23:14,
23:19, 23:25, 24:7,
24:9, 25:20, 25:22,
28:1, 28:11, 28:12,
28:19, 30:1, 30:4,
30:15, 31:1, 31:4,
31:20, 31:24, 32:18,
32:21, 33:10, 33:12,

**forcing** [1] - 23:13
**foregoing** [1] - 40:14
**foremost** [2] - 15:16,
18:12
**forever** [1] - 28:14
**forget** [2] - 19:17,
25:10
**forth** [1] - 7:20
**forward** [3] - 23:3,
23:6, 30:21
**fours** [1] - 25:4
**frankly** [2] - 31:9, 32:2
**frequent** [1] - 34:2
**FRIDAY** [2] - 1:7, 4:2
**FRILOT** [1] - 1:23
**front** [6] - 17:2, 30:8,
31:13, 31:19, 33:5,
33:6
**full** [1] - 30:10
**fundamental** [2] -
36:5, 36:25
**FYI** [1] - 38:4

## G

**General** [8] - 7:23,
25:16, 27:13, 27:14,
27:17, 27:18, 27:20,
27:24
**GIFFORD** [2] - 1:17,
4:12
**Gifford** [2] - 4:11, 38:3
**given** [3] - 22:21,
38:15, 38:17
**good-bye** [1] - 39:24
**grant** [1] - 37:19
**great** [1] - 37:13
**greater** [1] - 11:18
**greatly** [1] - 29:13
**gross** [1] - 17:25
**Grubart** [2] - 26:11,
27:2
**guess** [3] - 7:7, 26:18,
28:23
**GULF** [1] - 1:5
**guys** [1] - 24:6

## H

**half** [1] - 11:11
**Halliburton** [2] - 9:18,
39:12
**hand** [1] - 27:2
**handling** [1] - 14:6
**hard** [1] - 29:24
**harm** [9] - 23:3, 23:6,
23:21, 24:15, 32:2,
32:3, 34:13, 34:20,

33:22, 34:8, 38:11,
38:14, 38:23, 39:3,
39:11, 39:14
**Honor's** [1] - 24:4
**HONORABLE** [1] -
1:11
**Honorable** [1] - 28:15
**hoops** [1] - 23:14
**hopefully** [1] - 37:12
**HORIZON** [7] - 1:4,
5:7, 32:11, 33:1,
35:1, 35:3, 35:8
**HOUSTON** [1] - 2:5

## I

**identify** [1] - 4:21
**III** [1] - 1:17
**imagine** [1] - 30:5
**impact** [2] - 33:6,
37:25
**impacted** [2] - 32:12,
33:5
**importance** [1] - 38:17
**important** [2] - 8:13,
8:8
**importantly** [3] -
12:16, 18:6, 20:7
**impose** [1] - 17:7
**IN** [2] - 1:4, 1:5
**inapplicable** [2] -
11:17, 18:17
**inappropriate** [1] -
34:11
**INC** [7] - 1:22, 1:23,
2:8, 2:9, 2:10, 2:11,
2:13
**include** [2] - 16:22,
25:16
**includes** [4] - 20:12,
20:13, 20:14, 21:9
**including** [4] - 16:23,
17:10, 17:24, 35:22
**inclusive** [2] - 16:24,
35:24
**incorrect** [1] - 24:3
**indeed** [1] - 33:23
**indicated** [2] - 31:8,
31:25
**indulgence** [1] - 15:24
**inform** [1] - 39:14
**informed** [1] - 30:14
**initiated** [1] - 17:19
**injunction** [13] - 6:7,
7:20, 9:20, 12:20,
17:15, 20:19, 22:10,
23:16, 30:19, 34:19,
35:15, 35:19, 35:22
**injunctive** [1] - 16:21

**injured** [1] - 19:6
**injury** [1] - 23:3
**installation** [1] - 33:25
**instantaneous** [1] -
28:6
**instructive** [1] - 20:21
**intend** [1] - 39:15
**intended** [2] - 18:2,
37:25
**intent** [6] - 8:16, 9:7,
21:5, 21:6, 25:21,
36:17
**interest** [2] - 38:9,
39:17
**interfere** [2] - 13:6,
13:15
**interpret** [1] - 8:18
**interpreted** [1] - 7:22
**interpreting** [2] - 21:9,
22:23
**interrupt** [1] - 18:19
**interrupted** [1] - 33:1
**invite** [1] - 38:18
**invoke** [1] - 26:22
**involve** [1] - 20:17
**involved** [1] - 26:12
**irreparable** [5] - 23:6,
23:21, 32:2, 34:13,
34:19
**Isla** [1] - 20:6
**issue** [32] - 8:8, 8:9,
8:16, 9:14, 10:20,
11:8, 13:1, 15:2,
16:13, 22:14, 23:24,
24:11, 25:3, 25:24,
28:24, 29:9, 29:22,
30:14, 30:15, 31:13,
31:14, 34:15, 34:19,
35:11, 36:5, 36:6,
36:13, 37:9, 38:16,
38:17, 39:18
**issued** [12] - 5:21, 6:6,
6:21, 11:7, 12:19,
17:6, 17:21, 21:6,
34:22, 35:13, 36:3,
38:1
**issues** [5] - 14:15,
33:17, 34:9, 37:11
**itself** [5] - 9:7, 11:10,
17:13, 18:14, 19:18

## J

**JAMES** [1] - 1:16
**Jarrespray** [1] - 20:15
**Jersey** [1] - 20:16
**Jim** [1] - 15:15
**Joe** [36] - 4:17, 5:12,
5:15, 6:24, 7:2, 7:15,

8:2, 8:9, 9:2, 9:20,
9:21, 9:22, 10:4,
10:11, 11:5, 11:22,
12:25, 14:3, 14:13,
16:7, 17:17, 17:22,
19:7, 22:7, 24:6,
27:1, 27:3, 34:12,
36:11, 36:14, 37:2,
37:16, 37:21, 37:22,
39:11, 39:12
**JOE** [1] - 1:15
**Joe's** [5] - 9:20, 13:22,
15:14, 26:22, 39:17
**John** [1] - 5:1
**JOHN** [1] - 2:4
**judge** [16] - 8:17,
12:12, 12:18, 14:5,
14:6, 14:18, 14:20,
14:25, 15:1, 15:4,
15:7, 15:10, 23:16,
24:2, 24:4
**JUDGE** [1] - 1:12
**Judge** [34] - 5:21,
5:22, 6:10, 7:6, 7:19,
10:25, 11:1, 11:3,
11:8, 11:12, 11:21,
12:6, 12:18, 12:20,
13:6, 13:15, 17:21,
19:22, 20:6, 23:8,
26:19, 26:25, 30:9,
30:10, 31:8, 35:13,
36:1, 36:6, 36:7,
36:9, 36:12, 36:15,
37:25, 39:25
**jump** [2] - 23:14, 30:2
**June** [1] - 35:21
**jurisdiction** [9] -
11:14, 26:14, 26:22,
26:23, 27:2, 27:4,
29:3, 34:25, 35:7
**jurist** [1] - 23:8
**juxtaposed** [1] - 20:22

## K

**Kat** [1] - 6:12
**keep** [1] - 21:5
**Kentucky** [1] - 34:10
**KERRY** [1] - 1:23
**Kerry** [2] - 4:25, 39:9
**kind** [2] - 5:22, 10:18
**kinds** [1] - 21:7
**known** [1] - 6:23
**knows** [1] - 17:18

## L

**LA** [3] - 1:25, 2:16,
2:19

**labeled** [1] - 5:10
**land** [6] - 27:21, 29:2, 32:16, 32:20, 32:22, 32:23
**Lands** [2] - 19:1, 33:23
**language** [5] - 7:21, 9:6, 22:12, 27:1, 35:15
**last** [2] - 29:11, 32:13
**late** [1] - 28:15
**latter** [2] - 7:17, 19:12
**Law** [8] - 7:23, 25:16, 27:13, 27:14, 27:17, 27:18, 27:21, 27:24
**law** [91] - 7:24, 8:2, 8:3, 8:4, 8:20, 8:22, 8:23, 8:24, 9:1, 9:8, 9:15, 9:24, 10:9, 10:24, 11:25, 12:1, 12:25, 17:10, 17:23, 17:24, 18:3, 18:15, 18:24, 18:25, 19:1, 19:5, 19:10, 19:15, 19:21, 19:23, 19:24, 20:3, 20:8, 20:9, 20:11, 20:16, 20:20, 20:25, 21:9, 21:10, 21:11, 21:17, 22:23, 24:10, 24:19, 24:22, 24:23, 25:6, 25:7, 25:8, 25:18, 25:20, 26:1, 26:4, 26:9, 26:10, 27:8, 27:9, 27:15, 27:19, 27:20, 27:21, 27:22, 27:25, 28:14, 28:25, 29:6, 29:15, 33:21, 33:23, 33:24, 36:16, 36:18, 36:19, 36:21, 36:24, 36:25, 37:4, 37:5, 37:6
**laws** [1] - 34:5
**lawsuit** [1] - 8:6
**least** [1] - 17:20
**left** [1] - 6:13
**legal** [5] - 11:19, 28:24, 34:25, 35:6, 37:11
**legislation** [1] - 25:24
**Lemelle** [1] - 20:6
**Leonard** [1] - 5:21
**lethal** [1] - 31:17
**letter** [1] - 7:2
**LEWIS** [1] - 2:13
**liability** [5] - 17:7, 18:1, 20:2, 20:9, 22:24
**Liability** [2] - 5:11, 34:7

**lieu** [1] - 18:18
**likelihood** [2] - 34:13, 34:20
**limitation** [15] - 6:6, 6:7, 6:9, 8:18, 10:23, 11:6, 12:19, 29:22, 34:3, 34:8, 34:23, 35:9, 35:13, 37:17
**Limitation** [2] - 5:11, 34:7
**limitations** [2] - 17:5, 20:18
**LIMITED** [1] - 2:12
**limited** [3] - 9:8, 20:25, 37:10
**line** [1] - 28:25
**LISKOW** [1] - 2:13
**listening** [1] - 14:1
**litigants** [3] - 30:12, 30:14, 31:24
**litigate** [1] - 30:13
**litigating** [1] - 23:12
**litigation** [1] - 33:18
**LLC** [2] - 1:21, 1:23
**logical** [1] - 26:5
**look** [2] - 9:5, 24:4
**looked** [1] - 10:13
**looking** [1] - 30:21
**looks** [1] - 35:21
**lose** [1] - 33:2
**loud** [1] - 16:14
**Louisiana** [2] - 40:12, 40:13
**LOUISIANA** [3] - 1:1, 1:6, 2:5

# M

**mail** [1] - 5:23
**MAIN** [1] - 1:18
**March** [3] - 5:22, 7:1, 17:5
**MARCH** [2] - 1:7, 4:2
**Maritime** [8] - 7:23, 25:16, 27:13, 27:14, 27:17, 27:18, 27:21, 27:24
**maritime** [19] - 11:25, 12:1, 18:25, 19:5, 19:15, 19:24, 20:11, 21:18, 21:19, 21:23, 24:10, 24:22, 24:23, 25:7, 26:8, 27:4, 36:18, 36:21
**Maryland** [1] - 20:5
**master** [1] - 11:23
**matter** [5] - 5:7, 14:12, 15:3, 29:14, 40:17
**matters** [1] - 27:18

**MDL** [4] - 5:7, 9:22, 35:10, 39:11
**mean** [5] - 28:21, 29:19, 29:21, 36:10, 39:10
**meaning** [1] - 35:9
**means** [1] - 7:23
**meant** [1] - 17:12
**MECHANICAL** [1] - 2:21
**memoranda** [1] - 5:13
**mention** [1] - 33:19
**mentioned** [2] - 12:13, 28:2, 33:22
**mentions** [1] - 26:20
**Merit** [1] - 40:11
**merits** [5] - 9:11, 10:12, 22:21, 34:1, 34:5
**messaging** [1] - 28:7
**MEXICO** [1] - 1:5
**MI** [1] - 39:12
**mid** [1] - 38:6
**mid-April** [1] - 38:6
**middle** [1] - 16:22
**might** [3] - 30:2, 31:1, 39:15
**Miller** [4] - 4:25, 28:2, 39:8, 39:9
**MILLER** [4] - 1:23, 28:8, 39:9, 39:25
**MILLER....................
.................... [1] -
3:12
**mind** [2] - 12:13, 36:4
**mini** [2] - 9:9, 39:15
**minute** [2] - 16:12, 21:16
**mirror** [1] - 31:11
**modify** [1] - 12:17
**moment** [3] - 6:11, 13:13, 21:14
**moments** [1] - 37:9
**Monday** [2] - 7:9, 13:21
**Monition** [1] - 5:12
**monition** [52] - 6:5, 6:6, 6:14, 6:21, 6:23, 7:3, 7:20, 8:4, 8:5, 8:10, 8:11, 8:18, 9:22, 10:4, 10:15, 10:14, 10:15, 10:16, 11:4, 11:6, 12:17, 12:23, 14:13, 14:19, 15:3, 15:5, 15:11, 16:3, 16:5, 16:21, 17:6, 17:11, 21:6, 23:22, 23:24, 24:3, 24:4, 28:13, 29:13, 29:18, 30:16, 34:7,

34:9, 34:22, 35:5, 35:12, 35:21, 37:15, 37:20, 39:18
**months** [1] - 23:12
**moot** [1] - 10:18
**morning** [1] - 5:6
**most** [2] - 12:16, 22:5
**motion** [13] - 5:8, 5:13, 6:5, 9:14, 9:19, 13:1, 13:9, 14:10, 22:13, 22:15, 23:13, 31:24, 37:20
**Motion** [2] - 5:11, 30:8
**motions** [9] - 9:17, 10:2, 10:8, 14:9, 16:3, 33:20, 38:5, 38:16, 39:16
**move** [1] - 10:21
**moving** [1] - 33:20
**MR** [65] - 3:5, 3:6, 3:7, 3:8, 3:9, 3:11, 3:12, 3:13, 4:12, 4:14, 4:16, 4:19, 4:24, 5:2, 6:3, 6:21, 7:10, 7:13, 7:17, 10:21, 12:1, 13:4, 13:9, 13:19, 14:7, 14:22, 15:15, 15:21, 15:23, 16:17, 16:20, 17:3, 18:21, 19:4, 19:16, 19:19, 23:19, 25:12, 25:14, 26:11, 27:12, 28:5, 28:8, 28:11, 28:19, 30:1, 30:4, 31:1, 31:4, 32:9, 32:18, 32:21, 33:6, 33:10, 33:12, 33:14, 33:16, 38:11, 38:14, 38:23, 39:2, 39:9, 39:14, 39:22, 39:25
**MRGO** [2] - 25:1, 25:2
**multidistrict** [1] - 33:18
**must** [1] - 11:3

# N

**name** [1] - 19:17
**namely** [2] - 22:14, 33:20
**nature** [1] - 32:16
**navigable** [3] - 25:5, 26:7, 29:1
**necessarily** [2] - 35:9, 37:6
**necessary** [1] - 12:10
**need** [3] - 6:19, 21:22, 22:18
**needed** [1] - 24:7

**needs** [2] - 22:2, 22:6
**negligence** [6] - 17:25, 20:2, 20:9, 27:18
**negligent** [1] - 22:23
**negotiated** [2] - 8:11, 8:14
**never** [2] - 11:23, 23:10
**NEW** [4] - 1:6, 1:25, 2:16, 2:19
**New** [2] - 15:2, 20:16
**next** [3] - 14:2, 14:3, 26:25
**night** [2] - 7:1, 11:7
**Ninth** [1] - 10:16
**NO** [1] - 1:6
**nonetheless** [1] - 36:23
**NORTH** [4] - 2:9, 2:10, 2:12, 2:13
**Northern** [1] - 20:13
**northwest** [1] - 32:22
**NOTE** [1] - 2:23
**noted** [1] - 7:1
**nothing** [3] - 14:2, 17:4, 24:25
**notice** [6] - 10:13, 10:15, 10:16, 10:19, 10:22, 23:11
**notwithstanding** [2] - 21:17, 22:12
**nuisance** [2] - 20:2, 22:23
**Number** [8] - 17:22, 19:4, 19:9, 19:10, 19:20, 21:2, 21:17, 21:18
**number** [1] - 19:17
**numbered** [1] - 40:16

# O

**obvious** [1] - 27:15
**obviously** [6] - 10:19, 16:2, 17:1, 22:9, 28:24, 35:20
**occurred** [1] - 25:2
**occurs** [2] - 24:15, 26:8
**OCSLA** [4] - 19:1, 33:22, 34:6, 34:15
**OF** [3] - 1:1, 1:5, 1:11
**offense** [1] - 24:7
**officers** [1] - 35:2
**Official** [2] - 40:12, 40:23
**OFFICIAL** [1] - 2:18
**offshore** [1] - 33:25

**OFFSHORE** [1] - 1:21
**often** [1] - 37:1
**Oil** [5] - 17:4, 18:4, 19:5, 21:19, 35:16
**oil** [6] - 11:15, 19:7, 20:10, 26:7, 32:19, 33:5
**OIL** [2] - 1:4, 1:4
**ON** [1] - 1:5
**ONE** [1] - 2:14
**one** [10] - 6:11, 6:14, 7:4, 8:14, 9:1, 9:5, 13:16, 15:10, 19:8, 27:12
**ones** [1] - 22:13
**OPA** [38] - 8:13, 11:1, 11:4, 11:14, 11:20, 11:23, 11:24, 12:2, 12:3, 12:7, 12:11, 12:13, 12:14, 18:5, 18:14, 18:24, 19:10, 19:18, 21:23, 22:22, 23:1, 24:10, 24:12, 24:19, 25:11, 25:15, 25:21, 25:25, 26:1, 27:10, 27:11, 27:16, 31:7, 34:6, 36:18
**OPA's** [2] - 11:18, 18:18
**OPAs** [1] - 9:9
**open** [1] - 21:5
**opening** [1] - 33:22
**opinion** [5] - 5:21, 10:25, 12:9, 12:10, 26:19
**opportunity** [4] - 30:13, 31:12, 33:11, 39:19
**opposing** [2] - 24:9, 31:17
**opposition** [1] - 10:11
**options** [1] - 19:8
**oral** [1] - 38:8
**ORDER** [1] - 4:4
**order** [49] - 6:18, 6:23, 7:3, 7:8, 7:12, 8:4, 8:5, 8:6, 8:10, 8:11, 11:10, 12:17, 13:6, 13:10, 13:15, 13:18, 13:21, 14:13, 14:19, 16:5, 16:21, 17:6, 17:11, 17:20, 21:6, 23:4, 23:22, 23:24, 29:13, 29:18, 30:16, 30:20, 34:22, 35:5, 35:12, 35:21, 36:3, 36:9, 36:12, 37:15, 37:21, 37:25, 38:1, 38:2, 39:3, 39:18
**original** [1] - 32:7

**Orleans** [1] - 15:2
**ORLEANS** [4] - 1:6, 1:25, 2:16, 2:19
**otherwise** [1] - 37:14
**ought** [3] - 21:24, 23:16, 31:25
**ousted** [1] - 8:22
**Outer** [3] - 18:25, 33:22, 33:25
**outside** [1] - 37:16
**overlooked** [1] - 34:16
**own** [2] - 32:22, 33:4
**owned** [1] - 33:7
**owns** [1] - 32:16

## P

**P.M** [1] - 1:7
**p.m** [1] - 40:1
**page** [8] - 11:11, 11:12, 16:21, 18:11, 26:21, 26:25
**PAGE** [1] - 3:3
**page-and-a-half** [1] - 11:11
**pages** [2] - 12:10, 24:1
**panhandle** [1] - 32:22
**papers** [3] - 6:18, 13:12, 33:20
**pardon** [3] - 9:6, 13:11, 28:12
**part** [2] - 18:9, 26:19
**Parte** [1] - 5:11
**participate** [1] - 31:13
**participating** [1] - 38:10
**participation** [1] - 38:18
**particular** [1] - 5:8
**parties** [4] - 16:23, 35:18, 35:23, 35:25
**parties'** [1] - 33:20
**partner** [1] - 15:24
**party** [3] - 19:6, 38:21, 38:24
**passed** [1] - 26:2
**pay** [1] - 14:20
**pending** [2] - 13:8, 28:15
**PENNZOIL** [1] - 2:4
**Pepper** [3] - 40:10, 40:20, 40:21
**PEPPER** [1] - 2:18
**permanent** [1] - 9:19
**person** [1] - 17:9
**perspective** [1] - 14:8
**petition** [1] - 36:15
**petitioners** [3] - 6:9, 35:1, 35:16

**Petitioners** [1] - 35:23
**phone** [2] - 5:3, 38:25
**phonetically)** [1] - 20:15
**pick** [1] - 16:15
**PLACE** [1] - 2:4
**plain** [1] - 11:21
**Plaintiff** [1] - 5:12
**plaintiff** [1] - 37:2
**plaintiffs** [4] - 9:16, 9:21, 10:9, 12:25
**plan** [1] - 38:7
**plans** [2] - 14:4, 14:5
**plead** [1] - 18:2
**pleaded** [5] - 11:13, 11:22, 12:2, 12:6, 12:7
**pleadings** [1] - 23:25
**pled** [4] - 17:23, 21:18, 36:22, 36:23
**podium** [1] - 4:22
**point** [5] - 16:20, 18:9, 19:20, 22:19, 37:14
**pointed** [3] - 24:9, 34:23, 36:16
**pointedly** [1] - 24:21
**Pollution** [5] - 17:4, 18:4, 19:5, 21:19, 35:16
**pollution** [16] - 17:8, 19:7, 19:23, 20:3, 20:10, 20:18, 22:24, 24:14, 24:15, 24:17, 24:20, 25:1, 25:2, 25:5, 27:10, 37:5
**portion** [1] - 24:12
**position** [12] - 8:7, 8:19, 9:19, 10:3, 10:6, 10:12, 16:4, 25:15, 26:6, 28:11, 29:8, 39:4
**potential** [1] - 18:14
**power** [1] - 16:2
**POYDRAS** [1] - 1:25, 2:15, 2:19
**practice** [3] - 13:1, 14:10, 31:24
**practitioner** [1] - 34:2
**precisely** [1] - 21:5
**preclude** [3] - 27:8, 37:4, 37:6
**preempt** [2] - 19:1, 26:10
**preempted** [5] - 8:22, 18:14, 21:25, 27:20, 31:6
**preemption** [6] - 11:17, 18:13, 18:17, 21:15, 21:21, 23:7
**preemptive** [2] - 9:3,

11:20
**preempts** [2] - 18:24, 19:5
**preempts'** [1] - 11:15
**prejudice** [4] - 31:17, 32:5, 32:6, 32:8
**prejudiced** [2] - 29:13, 32:9
**preliminary** [1] - 22:10
**preOPA** [1] - 37:3
**prepared** [2] - 32:5, 37:18
**present** [3] - 33:14, 36:2, 37:20
**presented** [4] - 14:25, 15:2, 22:4, 22:6
**presenting** [1] - 15:25
**preserved** [2] - 19:11, 22:25
**preserves** [1] - 19:14
**presumably** [2] - 13:6, 13:21
**presume** [1] - 22:11
**presuming** [1] - 37:14
**pretty** [1] - 36:25
**principal** [2] - 8:9, 12:3
**principle** [1] - 27:12
**private** [2] - 16:23, 35:23
**probability** [1] - 22:20
**problem** [7] - 28:23, 29:24, 38:20, 39:5, 39:10, 39:12, 39:21
**proceed** [1] - 20:19
**proceeding** [2] - 17:17, 35:9
**PROCEEDINGS** [3] - 1:11, 2:21, 4:1
**proceedings** [8] - 7:19, 9:25, 34:25, 35:6, 35:9, 35:10, 40:1, 40:16
**PRODUCED** [1] - 2:21
**PRODUCTION** [2] - 2:8, 2:11
**PRODUCTS** [1] - 2:13
**Professional** [1] - 40:11
**profit** [1] - 33:2
**prohibits** [1] - 11:13
**proper** [3] - 27:2, 36:7
**property** [2] - 33:5, 33:7
**proposed** [1] - 6:18
**proposition** [1] - 21:4
**prosecute** [1] - 37:22
**prosecuting** [3] - 7:15, 8:6, 37:22
**prosecution** [2] - 6:8,

34:24
**provide** [1] - 27:23
**provides** [6] - 7:20, 27:14, 27:16, 27:17, 27:24, 28:13
**provision** [5] - 8:13, 16:5, 16:21, 17:15, 24:12
**provisionally** [1] - 10:7
**publication** [1] - 6:22
**pure** [1] - 12:15
**purely** [1] - 29:17
**pursuant** [2] - 36:12, 39:3
**pursue** [1] - 37:16
**pursued** [1] - 37:7
**put** [2] - 28:21, 29:8

## Q

**questions** [1] - 10:8
**quote** [4] - 7:23, 8:12, 11:13, 11:15

## R

**raised** [3] - 10:8, 23:11, 24:11
**raises** [1] - 9:14
**rather** [3] - 20:25, 30:21, 34:6
**RAYZOR** [1] - 2:3
**RCRA** [3] - 9:10, 26:3, 26:4
**re** [1] - 20:15
**RE** [1] - 1:4
**reach** [1] - 29:2
**reaches** [1] - 26:8
**read** [5] - 5:13, 5:14, 5:20, 16:25, 26:18
**reading** [1] - 35:20
**real** [3] - 28:24, 29:4, 30:15
**really** [6] - 21:16, 21:18, 22:14, 29:8, 29:12, 36:13
**Realtime** [2] - 40:10, 40:22
**REALTIME** [1] - 2:18
**rearview** [1] - 31:11
**reason** [5] - 6:12, 9:1, 14:16, 23:15, 37:19
**reasoned** [1] - 29:9
**reasons** [2] - 23:2, 23:9
**received** [2] - 5:13, 5:14

**recently** [1] - 17:20
**recognizable** [1] - 20:10
**recognized** [3] - 19:23, 22:24, 22:25
**recognizes** [1] - 27:3
**record** [10] - 5:10, 5:15, 5:17, 5:19, 16:25, 18:11, 30:11, 38:25, 40:16
**RECORDED** [1] - 2:21
**redress** [1] - 19:8
**refer** [1] - 5:9
**referring** [1] - 11:14
**refile** [1] - 39:16
**regard** [1] - 31:10
**regardless** [2] - 30:22, 36:21
**regime** [1] - 11:19
**Registered** [2] - 40:10, 40:11
**regular** [1] - 9:24
**rejected** [1] - 21:2
**RELATES** [2] - 1:8
**relates** [2] - 5:7, 39:18
**relating** [1] - 19:7
**relief** [3] - 22:20, 31:14
**rely** [1] - 10:25
**rem** [1] - 35:1
**remand** [15] - 7:2, 7:8, 11:7, 11:10, 12:12, 12:13, 13:6, 13:10, 13:15, 13:18, 17:21, 23:4, 36:6, 37:25, 39:16
**remanded** [4] - 7:1, 13:22, 17:20, 36:11
**remanding** [2] - 12:8, 12:14
**remedies** [5] - 26:4, 26:10, 27:17, 27:18, 27:19
**remedy** [7] - 25:17, 25:18, 27:14, 27:15, 27:16, 27:23, 27:24
**remember** [1] - 5:24
**removable** [1] - 29:20
**removal** [1] - 11:13
**removed** [2] - 6:25, 17:19
**Renard** [9] - 4:13, 15:15, 15:19, 16:12, 16:16, 18:20, 27:6, 28:18, 38:3
**RENARD** [13] - 1:16, 4:14, 15:15, 15:21, 15:23, 16:17, 16:20, 17:3, 18:21, 19:4, 19:16, 19:19, 28:19

**RENARD..................
.......................** [1] -
3:6
**rendered** [1] - 5:24
**reply** [2] - 5:17, 23:18
**Reporter** [7] - 40:10, 40:11, 40:12, 40:22, 40:23
**REPORTER** [2] - 2:18, 2:18
**REPORTER'S** [2] - 2:23, 40:8
**represent** [1] - 4:17
**representing** [1] - 39:17
**request** [4] - 7:7, 22:19, 23:9
**required** [4] - 10:17, 14:9, 36:20, 36:24
**requirements** [1] - 17:8
**resolution** [1] - 32:15
**resolved** [2] - 13:1, 29:22
**resources** [1] - 14:11
**respect** [5] - 7:18, 17:8, 17:12, 31:16, 31:25
**respectfully** [1] - 16:10
**respond** [1] - 19:3
**response** [4] - 5:14, 15:23, 21:13, 31:23
**responsibilities** [1] - 17:14
**responsibility** [1] - 24:5
**responsible** [2] - 35:17, 35:25
**restrained** [1] - 35:5
**restraining** [1] - 37:22
**result** [1] - 32:25
**resulted** [1] - 35:3
**review** [1] - 25:23
**Richardson** [1] - 7:25
**RIG** [1] - 1:4
**rig** [1] - 35:4
**rights** [1] - 17:13
**rise** [1] - 4:7
**RMR** [2] - 2:18, 40:21
**ROBERT** [1] - 1:17
**ROOM** [1] - 2:19
**ROYSTON** [1] - 2:3
**rule** [14] - 11:13, 11:22, 12:2, 12:6, 12:12, 12:16, 12:20, 14:15, 14:19, 15:5, 15:8, 15:9, 15:10, 34:19
**ruled** [6] - 11:1, 11:3,

11:4, 11:9, 20:6, 21:9
**rules** [3] - 10:7, 22:13, 22:15
**ruling** [10] - 6:10, 11:9, 11:11, 11:12, 12:5, 12:24, 13:12, 15:6, 15:9, 28:15
**rulings** [1] - 30:11
**Russo** [1] - 20:12
**Russo's** [1] - 20:13

**S**

**s/Cathy** [1] - 40:20
**sales** [1] - 32:24
**satisfied** [1] - 27:3
**save** [7] - 9:1, 9:4, 9:7, 12:24, 25:17, 26:3
**saved** [5] - 8:13, 8:25, 24:10, 24:11
**saves** [1] - 12:24
**saving** [2] - 25:15, 25:25
**savings** [11] - 8:13, 9:7, 9:12, 11:18, 12:11, 12:14, 18:4, 18:18, 24:12, 31:7
**saw** [1] - 6:17
**scenario** [2] - 27:9, 29:6
**schedule** [1] - 38:4
**scope** [21] - 8:10, 8:12, 8:15, 9:15, 10:9, 11:4, 12:17, 12:21, 15:5, 15:10, 16:6, 16:21, 16:24, 17:14, 23:23, 24:3, 28:16, 34:7, 34:11, 35:23
**sea** [12] - 19:23, 20:2, 20:10, 20:18, 22:24, 24:14, 24:16, 24:19, 25:3, 27:4, 27:10, 37:4
**sea-to-shore** [10] - 19:23, 20:2, 20:10, 20:18, 22:24, 24:14, 24:19, 27:4, 27:10, 37:4
**seas** [1] - 29:2
**second** [6] - 6:14, 10:24, 16:22, 18:20, 21:11, 35:20
**secondly** [3] - 9:9, 11:10, 21:13
**Section** [7] - 8:15, 16:24, 18:4, 18:8, 19:11, 20:4, 24:12

**see** [6] - 4:8, 15:18, 17:3, 26:20, 37:13, 38:20
**seek** [1] - 19:8
**seeking** [2] - 16:9, 22:9
**seem** [3] - 13:24, 29:4, 31:7
**selling** [1] - 32:23
**send** [1] - 5:23
**sense** [2] - 13:24, 14:7
**sent** [2] - 11:6, 14:1
**sentence** [1] - 16:4
**session** [1] - 4:7
**set** [2] - 7:20, 38:8
**setting** [1] - 34:14
**several** [2] - 14:10, 17:24
**shall** [3] - 7:21, 17:6, 17:9
**Shelf** [3] - 18:25, 33:23, 34:1
**SHELL** [1] - 2:14
**shore** [13] - 19:23, 20:2, 20:10, 20:18, 22:24, 24:14, 24:16, 24:19, 25:3, 26:8, 27:4, 27:10, 37:4
**shoreward** [1] - 26:14
**show** [1] - 23:21
**showing** [2] - 23:20, 23:22
**showings** [1] - 34:19
**shown** [1] - 34:21
**side** [3] - 15:12, 29:12, 34:4
**sides** [1] - 29:7
**sign** [1] - 38:1
**significant** [4] - 32:5, 32:11, 32:22, 33:2
**significantly** [1] - 32:12
**similar** [1] - 26:4
**simple** [2] - 9:6, 11:22
**simply** [2] - 9:20, 12:12
**single** [2] - 21:3, 22:22
**sinking** [1] - 29:1
**situation** [1] - 34:14
**skipping** [1] - 26:23
**so-called** [2] - 27:9, 37:4
**Solid** [2] - 9:10, 26:2
**sometime** [2] - 38:6, 38:8
**somewhat** [1] - 28:24
**somewhere** [1] - 26:18
**soon** [1] - 5:20

**sort** [3] - 23:21, 38:21, 39:6
**sorts** [1] - 34:20
**sound** [2] - 2:23, 32:4
**sounds** [2] - 22:5, 39:20
**speaker** [1] - 15:19
**SPEAKER** [1] - 4:10
**SPEAKERS** [1] - 3:3
**specific** [1] - 36:4
**spelled** [1] - 20:15
**spill** [4] - 11:16, 26:7, 32:12, 32:19
**SPILL** [1] - 1:4
**SQUARE** [1] - 2:14
**squarely** [3] - 12:6, 26:15, 27:24
**St** [41] - 4:17, 5:12, 5:15, 6:24, 7:2, 7:15, 8:2, 8:9, 9:2, 9:20, 9:21, 9:22, 10:4, 10:11, 11:5, 11:22, 12:25, 13:22, 14:3, 14:13, 15:14, 16:7, 17:17, 17:22, 19:7, 22:7, 24:6, 26:22, 27:1, 27:3, 34:12, 36:11, 36:14, 37:2, 37:16, 37:21, 37:22, 39:11, 39:12, 39:17
**ST** [1] - 1:15
**stack** [1] - 6:18
**stake** [2] - 14:22, 34:4
**standards** [1] - 34:13
**Stark** [18] - 5:21, 5:22, 6:10, 7:6, 7:19, 11:1, 11:3, 11:8, 11:21, 12:6, 12:18, 12:20, 17:21, 19:22, 31:8, 36:6, 36:7, 36:16
**Stark's** [1] - 10:25, 11:12, 13:6, 13:15, 26:19, 26:25, 36:9, 36:12, 37:25
**started** [1] - 13:11
**State** [1] - 40:12
**state** [71] - 5:19, 7:16, 7:24, 8:2, 8:3, 8:6, 9:8, 9:9, 9:23, 9:24, 11:15, 11:19, 12:18, 12:24, 13:23, 14:1, 14:4, 14:6, 14:9, 14:18, 14:20, 14:24, 14:25, 15:6, 17:10, 17:23, 18:3, 18:15, 18:24, 19:1, 19:10, 19:23, 20:3, 20:9, 20:16, 20:19, 20:25, 21:1, 21:10, 21:11, 21:17, 23:20, 24:2,

24:3, 25:8, 25:17, 26:10, 27:9, 27:15, 27:19, 27:22, 27:25, 28:12, 28:14, 28:21, 29:5, 33:21, 33:23, 34:9, 34:10, 36:12, 36:15, 36:16, 36:23, 36:25, 37:4, 37:6, 37:16, 37:23
**state's** [1] - 17:7
**states** [2] - 22:25, 25:24
**STATES** [2] - 1:1, 1:12
**States** [2] - 40:13, 40:24
**statute** [3] - 17:12, 19:18, 31:7
**statutory** [1] - 21:1
**stay** [11] - 7:6, 7:12, 7:14, 7:18, 13:5, 13:9, 13:15, 13:17, 30:23, 34:11, 35:12
**stayed** [3] - 7:8, 29:21, 35:5
**staying** [1] - 37:21
**stays** [1] - 34:24
**STENOGRAPHY** [1] - 2:21
**step** [2] - 9:5, 14:23
**steps** [1] - 21:16
**still** [1] - 29:15
**straightforward** [1] - 6:7
**straps** [1] - 27:11
**STREET** [5] - 1:18, 1:25, 2:5, 2:15, 2:19
**strict** [4] - 17:25, 20:2, 20:9, 22:24
**study** [1] - 29:10
**style** [1] - 29:15
**sub** [1] - 17:7
**subject** [4] - 18:3, 18:7, 20:18, 30:8
**submission** [2] - 6:22, 10:2
**submit** [1] - 12:22
**submitted** [2] - 13:11, 23:25
**subsection** [1] - 17:8
**subsequently** [1] - 6:24
**substantial** [1] - 21:8
**substantive** [7] - 19:9, 21:23, 31:14, 31:23, 32:14, 36:21, 38:16
**success** [2] - 22:21, 34:13, 34:20
**suffer** [1] - 33:2
**suggestion** [1] - 24:2
**suit** [1] - 6:24

**SUITE** [3] - 1:18, 2:5, 2:15
**suits** [2] - 34:24, 35:6
**Superior** [8] - 17:19, 22:3, 22:17, 23:7, 30:6, 32:1, 32:4, 32:15
**suppose** [1] - 22:10
**supremacy** [1] - 8:23
**Supreme** [2] - 8:1, 26:12
**supreme** [2] - 25:6, 27:21
**surrogate** [1] - 33:24

## T

**talks** [2] - 12:11, 25:21
**tantamount** [1] - 22:10
**technically** [1] - 30:22
**telephone** [3] - 2:23, 4:9, 4:23
**temporarily** [1] - 7:8
**temporary** [1] - 22:20
**tentative** [1] - 38:7
**termination** [1] - 35:8
**terms** [8] - 14:18, 17:11, 28:13, 30:18, 30:20, 32:2, 37:21, 39:17
**territorial** [2] - 24:15, 24:16
**test** [1] - 27:3
**Testbank** [13] - 8:20, 8:21, 9:3, 24:24, 25:1, 25:4, 25:7, 25:10, 25:16, 27:16, 27:19, 27:23
**THE** [64] - 1:4, 1:5, 1:11, 1:15, 3:10, 4:7, 4:8, 4:11, 4:13, 4:15, 4:17, 4:20, 5:3, 5:6, 6:11, 6:16, 6:17, 7:4, 7:11, 7:14, 10:18, 11:25, 13:3, 13:5, 13:14, 13:20, 14:16, 15:12, 15:18, 15:22, 16:12, 16:19, 17:2, 18:19, 18:22, 19:14, 19:17, 23:17, 25:10, 25:13, 26:5, 26:17, 28:4, 28:6, 28:10, 28:17, 28:20, 30:3, 30:21, 31:3, 32:7, 32:16, 32:19, 33:4, 33:8, 33:13, 33:15, 34:17, 38:12, 38:20, 38:24, 39:4, 39:20,
39:23
**themselves** [1] - 4:21
**theory** [1] - 15:6
**thereby** [1] - 11:20
**therefore** [3] - 19:6, 20:19, 37:5
**Third** [10] - 7:18, 12:18, 13:8, 13:10, 13:11, 13:16, 13:17, 14:22, 28:2, 36:8
**THIS** [1] - 1:8
**three** [1] - 4:17
**throw** [1] - 29:23
**tie** [1] - 31:23
**TO** [2] - 1:8, 4:4
**today** [8] - 9:23, 10:6, 13:25, 15:2, 30:15, 31:20, 35:11
**together** [1] - 4:17
**top** [2] - 18:16, 26:25
**tort** [2] - 11:15, 17:24
**towards** [1] - 32:14
**track** [1] - 32:14
**transactions** [1] - 27:5
**TRANSCRIPT** [2] - 1:11, 2:21
**transcript** [1] - 40:15
**transfer** [1] - 39:3
**transferred** [1] - 35:14
**transformed** [2] - 21:22, 21:23
**TRANSOCEAN** [3] - 1:20, 1:21, 1:22
**Transocean** [34] - 4:25, 5:8, 5:9, 5:17, 6:4, 6:9, 8:9, 8:19, 9:14, 9:18, 16:23, 17:18, 17:19, 17:23, 18:9, 20:22, 21:3, 21:16, 22:8, 22:14, 23:5, 26:21, 26:23, 29:21, 30:9, 31:10, 31:15, 32:3, 35:7, 36:11, 37:19, 37:23, 39:9
**Transocean's** [3] - 7:7, 11:16, 39:4
**TRO** [1] - 22:10
**troubled** [1] - 29:8
**true** [1] - 40:14
**trumped** [1] - 19:24
**trumps** [1] - 21:19
**try** [1] - 16:15
**trying** [2] - 24:18, 32:13
**turn** [2] - 15:20, 37:17
**turns** [1] - 22:16
**two** [8] - 6:19, 13:16, 19:8, 19:20, 21:16, 31:19, 38:22, 39:16

**TX** [2] - 1:18, 2:5
**types** [1] - 20:1
**typical** [1] - 34:19

## U

**U.S** [2] - 8:1, 26:12
**U.S.C** [5] - 8:15, 16:24, 24:11, 35:17, 35:24
**ultimately** [3] - 21:24, 35:3, 37:17
**under** [29] - 8:4, 9:9, 10:2, 12:2, 12:7, 17:5, 17:9, 19:10, 19:11, 19:23, 20:9, 21:7, 22:22, 23:1, 23:23, 24:10, 25:25, 27:1, 27:20, 29:6, 30:17, 30:18, 30:24, 31:5, 34:7, 35:16, 36:17, 36:18, 38:17
**unfortunately** [1] - 9:11
**UNIDENTIFIED** [1] - 4:10
**UNITED** [2] - 1:1, 1:12
**United** [2] - 40:13, 40:24
**unless** [2] - 29:16, 37:14
**unnecessary** [1] - 14:11
**up** [8] - 4:22, 8:17, 15:20, 16:6, 16:7, 16:15, 34:15, 38:13
**upside** [1] - 22:16
**urgency** [1] - 13:24, 14:8
**urgent** [1] - 28:21
**uses** [1] - 27:10
**utter** [2] - 11:24, 12:2
**uttered** [1] - 11:23

## V

**value** [2] - 32:20, 33:3
**various** [1] - 5:9
**ventured** [1] - 9:11
**verbally** [1] - 38:1
**vessel** [3] - 26:7, 26:14, 29:1
**via** [1] - 2:23
**victim** [1] - 32:11
**view** [1] - 34:18
**violated** [2] - 30:16, 30:20
**violation** [2] - 17:8,

22:11
**virtue** [1] - 26:24
**VOICES** [1] - 5:5
**volume** [1] - 15:20
**voyage** [1] - 35:2

## W

**wait** [5] - 9:25, 16:12, 22:11, 22:12, 22:15
**Wallace** [9] - 4:24, 6:2, 6:4, 6:20, 18:6, 18:11, 21:4, 21:14, 23:18
**WALLACE** [21] - 1:24, 4:24, 6:3, 6:21, 7:10, 7:13, 7:17, 10:21, 12:1, 13:4, 13:9, 13:19, 14:7, 14:22, 23:19, 25:12, 25:14, 26:11, 27:12, 28:5, 28:11
**Wallace's** [1] - 16:4
**WALLACE..................**
**.........................** [2] - 3:5, 3:7
**wants** [1] - 18:9
**Waste** [2] - 9:10, 26:2
**waters** [5] - 24:15, 24:16, 25:5, 26:8, 29:1
**ways** [1] - 11:2
**Wednesday** [1] - 13:12
**week** [1] - 14:3
**weigh** [1] - 15:25
**well-pleaded** [5] - 11:13, 11:22, 12:2, 12:6, 12:7
**whatsoever** [1] - 23:16
**whereby** [1] - 27:20
**WHEREUPON** [1] - 40:1
**whole** [1] - 34:15
**WILLIAM** [1] - 1:17
**Williams** [1] - 20:5
**word** [3] - 11:23, 11:24, 12:2
**words** [3] - 18:13, 20:8, 22:11
**written** [1] - 38:2
**wrote** [1] - 7:2

## Y

**year** [2] - 25:10, 32:14
**years** [1] - 7:22

**yesterday** [4] - 5:16, 5:17, 6:17

**§**

**§** [2] - 35:17, 35:24