UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, ON APRIL 20, 2010 | MDL 2179 |
| | SECTION J |
| This document relates to: | JUDGE CARL J. BARBIER |
| STATE OF LOUISIANA (PLAQUEMINES PARISH) V. BP EXPLORATION & PRODUCTION, INC., ET AL CIVIL ACTION NUMBER: **10-cv-1758** | MAG. JUDGE SALLY SHUSHAN |
| STATE OF LOUISIANA (LAFOURCHE PARISH) V. BP EXPLORATION & PRODUCTION, INC., ET AL CIVIL ACTION NUMBER: **10-cv-1757** | |
| STATE OF LOUISIANA (TERREBONNE PARISH) V. BP EXPLORATION & PRODUCTION, INC., ET AL CIVIL ACTION NUMBER: **10-cv-1759** | |
| STATE OF LOUISIANA (ST. TAMMANY PARISH) V. BP EXPLORATION & PRODUCTION, INC., ET AL CIVIL ACTION NUMBER: **10-cv-1760** | |
| STATE OF LOUISIANA (ST. BERNARD PARISH) V. BP EXPLORATION & PRODUCTION, INC., ET AL CIVIL ACTION NUMBER: **10-cv-2087** | |
| STATE OF LOUISIANA (ORLEANS PARISH) V. BP EXPLORATION & PRODUCTION, INC., ET AL CIVIL ACTION NUMBER: **10-cv-2731** | |
| STATE OF LOUISIANA (IBERIA PARISH) V. BP EXPLORATION & PRODUCTION, INC., ET AL CIVIL ACTION NUMBER: **10-cv-2996** | |
| STATE OF LOUISIANA (ST. MARY PARISH) V. BP EXPLORATION & PRODUCTION, INC., ET AL CIVIL ACTION NUMBER: **10-cv-2997** | |

**LOUISIANA PARISH DISTRICT ATTORNEYS' JOINT OPPOSITION TO
BP DEFENDANTS' MOTION TO DISMISS PURSUANT TO
FED. R. CIV. P. 12(B)(1) COMPLAINTS FILED BY
CERTAIN GOVERNMENTAL ENTITIES IN PLEADING BUNDLE C**

The District Attorneys of several coastal parishes in the State of Louisiana[1] have brought claims which they are authorized by statute (see LSA-R.S. 50:40.1, *et seq*., hereinafter "Title 56") to bring for civil penalties for damage to wildlife in Louisiana and adjacent waters caused by oil pollution as a result of the Deepwater Horizon disaster.[2]  Although the Oilfield Pollution Act (OPA) expressly preserves claims for civil penalties under state law, and although Louisiana's Oil Spill Pollution Recovery Act (LOSPRA) expressly preserves claims brought under LSA-R.S. 56:40.1 *et seq*., BP suggests that the Louisiana parish District Attorneys' claims are somehow preempted by OPA and LOSPRA.  BP's strained construction of OPA and LOSPRA not only is contrary to the express provisions of these laws and Title 56, but also flies in the face of the stated purpose of both OPA and LOSPRA.

Both the OPA and LOSPRA were enacted for the purpose of protecting natural resources from the destruction occasioned by oil spills.  Recognizing that more stringent state penalty provisions for pollution from oil spills fulfill the overriding purpose of OPA, Congress included a savings clause in OPA that preserves state remedies not provided by OPA.  33 U.S.C.A. §2718.  In passing LOSPRA, the Louisiana Legislature cited the threat to Louisiana's wildlife and aquatic life

---

[1]  In addition to the above-captioned District Attorney actions, District Attorneys for the Parishes of Jefferson, St. Charles and Cameron have asserted claims in the limitation and/or joined in the Government Entity Voluntary Master Complaint by short form.  Counsel for these Parishes also join in this motion.

[2]  *See e.g.* Local Government Entity Voluntary Master Complaint, Cross-Claim and Third Party Complaint (Doc. 1510), at ¶¶735-737.

from an oil spill as justification for the passage of LOSPRA.  Moreover, the Louisiana Legislature recognized the critical role Title 56 plays in protecting wildlife that could be harmed as a result of an oil spill in exempting actions brought under Title 56 from the limitations of liability of LOSPRA. BP's suggestion that OPA and LOSPRA somehow preempt the District Attorneys' Title 56 claims, which fall squarely within the savings provisions of both the state and federal laws, is contrary to both the letter and the spirit of these statutes which, at their core, are intended to extend protections against the threats of pollution from oil spills near Louisiana's delicate shores.

## I.   TITLE 56 CLAIMS ARE PRESERVED UNDER OPA'S SAVINGS CLAUSE

State laws such as Title 56, which impose additional liability or restrictions regarding oil spill pollution, are expressly preserved under OPA.  33 U.S.C.A. §2718.  Section 2718 contains savings clauses which allow for the imposition of additional liability and/or penalties arising from the discharge of oil and/or pollution by oil within a State. Section 2718 (a) provides:

> Nothing in this Act or the Act of March 3, 1851 shall--
>
> > (1) affect, or be construed or interpreted as preempting, the authority of any State or political subdivision thereof from **imposing any additional liability or requirements** with respect to--
> >
> > > (A) the discharge of oil or other **pollution by oil within such State**....
>
> 33 U.S.C.A. §2718(a) (emphasis added).

Section 2718 ( c) further amplifies this general savings provision, preserving the States' authority to impose penalties for harm occasioned by an oil spill, such as the civil penalties claims arising under Title 56, providing:

(c)      Additional requirements and liabilities; penalties

Nothing in this Act, the Act of March 3, 1851 (46 U.S.C. 183 et seq.), or section 9509 of Title 26, shall in any way affect, or be construed to affect, the authority of the United States or any State or political subdivision thereof--

(1)      to impose additional liability or additional requirements; or

(2)      **to impose**, or to determine the amount of, **any fine or penalty** (whether criminal or civil in nature) for any violation of law; **relating to the discharge**, or substantial threat of a discharge, **of oil**.

33 U.S.C.A. §2718( c) (emphasis added).

The United States Supreme Court has found that these savings clauses were intended to allow additional remedies to be recovered under state law.  *U.S. v. Locke*, 529 U.S. 89, 105-106, 120 S. Ct. 1135, 1146 (2000).  The *Locke* court held:

The evident purpose of the saving clauses is to preserve state laws which, rather than imposing substantive regulation of a vessel's primary conduct, establish liability rules and financial requirements relating to oil spills. *See Gutierrez v. Ada*, 528 U.S. 250, 255, 120 S.Ct. 740, 145 L.Ed.2d 747 (2000) (words of a statute should be interpreted consistent with their neighbors to avoid giving unintended breadth to an Act of Congress).

BP's suggestion that OPA preempts claims under Title 56 is contrary to the unequivocal provisions of §2718.  Indeed, if accepted by this Court, BP's preemption argument would render the savings clauses of Section 2718 utterly meaningless.[3]  Tellingly, BP makes no mention of Section 2718, much less attempts to argue that its clear pronouncement that state laws providing for penalties for harm resulting from oil spills are preserved is somehow inapplicable to the claims asserted

---

[3]  See also discussion of preemption under OPA at Sec. II of Omnibus Memorandum of Law in Opposition to Defendants' Motions to Dismiss Bundle B1 First Amended Master Complaint, Cross-Claim Complaint, and Third-Party Complaint.

herein.  Such disregard for such an unquestionably applicable statutory provision is inexplicable, if not inexcusable.

## II.    NO PRESENTMENT REQUIREMENT FOR CLAIMS UNDER TITLE 56

Numerous courts have held that when plaintiffs assert state law claims preserved by OPA, they need not follow OPA's presentment requirements before asserting such claims.  When a claimant presents state law claims for oil spill clean up, which claims are preserved by §2718, the presentment requirement of OPA does not apply to those state law claims.  *Williams v. Potomac Elec. Power Co.*, 115 F.Supp.2d 561, 565 & n. 3 (D.Md.2000) ("OPA does not preempt ... state common law actions .... [a]nd there is, in consequence, no requirement for the presentment of claims under OPA prior to commencing suit."); *Isla Corp. v. Sundown Energy, LP*, No. 06-8645, 2007 WL 1240212, at *1-2 (E.D.La. Apr.27, 2007) (applying OPA presentation requirement only to claims brought under OPA and not to state law claims); *Abundiz v. Explorer Pipeline Co.*, No. 00-2029, 2003 WL 23096018, at *3-4 (N.D.Tex. Nov.25, 2003) (same). Just as BP has ignored the provisions of §2718, so has BP ignored this well-established line of cases.  The instant state law claims, which are expressly preserved by OPA, are not subject to the presentation requirements of claims asserted under OPA's liability provisions.

## III.    NEITHER OCSLA NOR THE CLEAN WATER ACT PREEMPT TITLE 56 CLAIMS.

With no discussion specific to actions for penalties such as Title 56, which fall squarely within the savings clause of §2718, BP makes the assertion that OPA, OCSLA and the Clean Water Act preempt all state claims, including the Louisiana District Attorneys' authorized claims under Title 56.  Congress, as set forth in OPA, has explicitly recognized the right of states to impose civil penalties for oil spills. Congress has expressed no intention under OPA, OCSLA or the Clean Water

-5-

Act to preempt claims such as those asserted by the Louisiana District Attorneys. Quite the opposite, Congress has expressly authorized these claims to proceed.

### A.  OCSLA DOES NOT PREEMPT TITLE 56 CLAIMS

As has been discussed at length in Plaintiffs' Omnibus Memorandum of Law in Opposition to Defendants' Motions to Dismiss Bundle B1 First Amended Master Complaint, Cross-Claim and Third Party Complaint, OCSLA does not apply to the instant suit.[4] Most significantly, the situs requirement of OCSLA is not met. The Deepwater Horizon vessel was not a fixed platform or other structure attached to the seabed within the scope OCSLA. Since OCSLA does not apply to the claims at issue, it cannot be construed to preempt these claims.

Moreover, assuming *arguendo* that OCSLA applied to the instant suit, OPA, with its savings clause which preserves state laws which impose greater penalties for oil spills, trumps any provisions of OCSLA which preclude the application of state law. OPA is the overriding federal law applicable to oil spills off the United States' shores. OPA expressly allows for the imposition of state laws such as Title 56 to oil spills (see discussion, *supra*). It is axiomatic that laws pertaining to specific issues prevail over laws of general application. *Bloate v. U.S.*, 559 U.S. __, 130 S.Ct. 1345, 1354, 176 L.Ed.2d (2010)(specific statutory provision controls provisions of more general application); *Navarro-Miranda v. Ashcroft*, 330 F.3d 672, 676 (5th Cir. 2003)(as a fundamental rule of statutory interpretation, specific provisions trump general provisions). OPA, which applies specifically to oil spills off of the United States' shores, and which expressly permits actions under state law such as the instant suit, trumps the rules of general applicability to offshore activities provided under

---

[4] See Sec. I of Omnibus Memorandum of Law in Opposition to Defendants' Motions to Dismiss Bundle B1 First Amended Master Complaint, Cross-Claim Complaint, and Third-Party Complaint.

OCSLA.  Assuming that OCSLA has any application to the instant suit involving a vessel, and further assuming that OCSLA would preclude application of Title 56, the provisions of OPA which expressly allow for imposition of state law penalties with respect to oil spills, would prevail.

### B.    THE CLEAN WATER ACT DOES NOT PREEMPT TITLE 56 CLAIMS

Nothing in the Clean Water Act purports to preempt state laws dealing with oil spills, and no court has ever embraced defendants' novel suggestion that the Clean Water Act preempts state law claims for oil spill pollution, which claims are expressly authorized by OPA.  The only case that BP cites in support of its novel proposition says nothing of the sort. *Int'l Paper v. Oulette*, 479 U.S. 481 (1987). *Oulette* has nothing to do with oil spills, contains no discussion of OPA or its savings clause, and most certainly does not suggest any conflict between a state's imposition liability for oil pollution damage occurring within the state from discharges outside of the state and the OPA's regulation of oil spills.

*Oulette* does *not* stand for the blanket proposition that the CWA preempts all state law claims for pollution damage from discharges outside of a state's boundaries.  *Oulette* merely holds that when a state seeks to impose liability for discharges into waterways outside of the state which were made *in accordance with federally granted permits*, such imposition of liability conflicts with federal permitting regulations.  In finding that the Clean Water Act preempts states from adopting standards for *permitted discharges* when the source is outside of the state, the *Oulette* court noted the fact that the CWA only allows the state of the source of discharge to adopt permitting requirements more stringent than the federal permits.  It further noted that allowing states other than that of the source of discharge to impose liability for permitted discharges would conflict with the rule-making

authority whereby the federal government and source states establish the limits of allowable discharges under permits.  This holding has no applicability to oil spills, which are not permitted discharges at all.[5]

### C.   SPILL NEED NOT HAVE OCCURRED IN LOUISIANA FOR TITLE 56 TO APPLY.

BP suggests that Title 56 cannot apply to the BP oil spill, because the spill did not occur within the state of Louisiana.  BP's sole support for this assertion is the holding in *Oulette supra*, which has no application to oil spills.  BP fails to offer any statutory support for this contention, nor can it.  Nothing in OPA or in Title 56 precludes the application of Title 56 to oil spills which originate outside of the state of Louisiana.  For purposes of Title 56 what matters is that the injury to wildlife occurred in Louisiana or waters adjacent to Louisiana.

OPA's savings clause likewise preserves state law claims for any oil pollution damage occurring within a state without respect to whether the spill originated in the State.  Notably, §2718(a) allows states to impose liability for discharges of oil within a state "*or* pollution by oil within a state." (Emphasis added).  If, as BP suggests, states were only allowed to impose liability for spills originating in the state, then §2718(a) would not have expressly distinguished between discharges in the state and pollution by oil within the state, allowing for state actions for either discharges within the state *or* pollution by oil within a state.  When the discharge occurs outside of

---

[5]  The other two Clean Water Act cases cited by BP at footnote 11 to its Memorandum likewise deal with permitted discharges and efforts by states to set standards for permitted discharges which are different from those set by the federal government and the source state.  *See Hillsborough County v. Automated Med. Labs., Inc.*, 471 U.S. 707 (1985) (addressing non-source state's attempts to impose liability for permitted discharges); *Arkansas v. Oklahoma*, 503 U.S. 91 (1992) (same).

the state, resulting in pollution by oil within the state, OPA preserves the state's authority to impose its own civil penalties and liability apart from that provided by OPA.

## IV.    TITLE 56 CLAIMS ARE NOT BARRED BY LOSPRA

Finally, BP contends that LOSPRA's limited exclusivity provision bars the DA's from proceeding with an action for penalties under Title 56.  This argument fails for two distinct reasons. First, LOSPRA expressly preserves Title 56 actions, and contrary to BP's assertion, that preservation includes claims brought by District Attorneys for the benefit of the Department of Wildlife and Fisheries.  Second, under the language of the provision upon which BP relies, even assuming the savings clause does not include actions by the DA's, under the facts alleged, LOSPRA does not bar this claim for civil penalties.

Acknowledging that §2491 of LOSPRA expressly allows claims under Title 56, BP asserts that the instant Title 56 claims are nevertheless barred, because this savings clause only applies when the Louisiana Department of Wildlife and Fisheries (DWF) itself brings actions under Title 56.  This narrow construction of the statute ignores the statute's express incorporation of the provisions of LSA-R.S. 56:40.1, *et seq.*, which provisions authorize the District Attorneys to bring such suit to recover funds *for the Department of Wildlife and Fisheries*.  See LSA-R.S. 56:40.4; 56:40.9.

Here the DWF has expressly authorized the district attorneys to bring the Title 56 actions.[6] The authority to do so is expressly granted by LSA-R.S. 56:40.4 and 56:40.9, which empower the District Attorneys to bring suit to recover funds to be paid to the DWF.[7]  Thus, BP's argument that

---

[6]  See Certifications of Robert Barham, Secretary of LDWF and Donald Puckett, General Counsel of LDWF, attached hereto as Exhibit A.

[7]  Under the framework of LSA-R.S. 56:40.1, *et seq*., the District Attorneys need not obtain authorization by the DWF to initiate suit under Title 56, as that authorization is provided

LOSPRA's savings provision only applies when DWF has initiated a Title 56 action falls flat, since here DWF has ceded the authority to bring those suits to the District Attorneys, as allowed by LSA-R.S. 56:40.4 and 56:40.9, which provisions are expressly preserved by LOSPRA's savings clause. Moreover, BP's suggestion that the savings provision of §2491(B) does not apply to claims which the DWF has authorized the DA's to bring, and which the DA's are empowered by statute to bring to recover funds for DWF, is not only without support in the statute or jurisprudence, but also flies in the face of the stated purpose of LOSPRA, which is to afford protection to Louisiana's vulnerable coastal wildlife from oil spills.

Even assuming that the savings clause of §2491 does not apply to claims by the District Attorneys, under the facts alleged, §2491 does not bar the DA actions. Although BP refers to §2491 as an exclusivity provision, by its clear language, it is a limited exclusion and does not act as a bar to actions under provisions other than LOSPRA. Rather, §2491 provides that the *limitations of liability and immunities* afforded under LOSPRA apply to any actions arising from oil spills. This limited exclusivity provision does not preclude causes of actions under theories other than LOSPRA, but merely holds that the limitations of liability and immunities of LOSPRA will apply to any such claims in connection with oil spills. Section 2491 provides:

> A.   When applicable, **the limitations of liability and immunities** provided in this Chapter shall be exclusive and shall supersede any other liability provisions provided by any other applicable state law. The provisions of this Chapter shall

---

by the legislature pursuant to LSA-R.S. 56:40.4 and 56:40.9. However, the fact that the DWF has expressly authorized the DA's to proceed with these claims in its stead and for its benefit only serves to bolster the argument that LOSPRA's savings provision for Title 56 claims encompasses the instant actions brought by the District Attorneys.

-10-

> supersede, but not repeal, any conflicting laws of this state. Any conflicting applicable federal law shall take precedence over this Chapter.

LSA-R.S. 2491A (emphasis added).

Nothing in this language precludes an action under Title 56, or under any other applicable Louisiana code article or statute, by any party. Rather, this language provides that when such an action is brought (assuming it does not fall within the savings provision discussed, *supra*) that action will be subject to the *limitations and immunities* afforded by LOSPRA.[8]  However, accepting the allegations of the Complaint as true, which this Court must for purposes of BP's Rule 12 motion, none of those limitations apply to the District Attorneys' claims, because the District Attorneys have alleged facts which fall within exceptions to LOSPRA's limitations of liability and immunities.

Further high-lighting that the exclusivity provision of § 2491 is limited, the section provides that its limitations and immunities supercede other claims only "when applicable."  By their own terms, which provide that the limitations apply only to "damages", the limitations of liability in LOSPRA are not applicable to the instant claims for penalties.  Moreover, under the facts alleged, the limitations and exclusions are not applicable, because the District Attorneys have alleged facts which fall into the exceptions to LOSPRA's limitations and immunities.

The "limits of liability" of LOSPRA apply only to "damages."  LSA-R.S. 30:2479.  By definition, civil penalties are not "damages."  Moreover, even assuming that the limits of liability

---

[8]  Contrast the language of §2491 with the exclusivity provision of the Louisiana Products Liability Act (LPLA), which provides, "This Chapter establishes the *exclusive theories of liability* for manufacturers for damage caused by their products. A claimant may not recover from a manufacturer for damage caused by a product on the basis of any *theory of liability* that is not set forth in this Chapter." LSA-R.S. 9:2800.52 (emphasis added).  Unlike the LPLA, which precludes all theories of liability not set forth in the LPLA, LOSPRA merely provides that its limitations and immunities will apply to any actions involving oil spills.

of LOSPRA did apply to claims for civil penalties, those limits do not apply "if the incident was primarily caused by gross negligence or willful misconduct of, or the violation of an applicable federal, state, or local safety, construction or operating regulation by the responsible party, an agent or employee of the responsible party, or a person acting pursuant to a contractual relationship with the responsible party..." LSA-R.S. 30:2479C.

The District Attorneys have alleged that the subject oil spill was caused by the gross negligence and willful misconduct of BP, its agents employees and parties acting pursuant to contractual relationships with BP.[9]  The District Attorneys have likewise alleged that the oil spill was caused by violations of federal, state and local safety regulations by BP, its agents and employees, and persons acting pursuant to contractual relationship with BP.[10]  Pursuant to LOSPRA, these allegations are exempted from LOSPRA's limits of liability, and as such LOSPRA's exclusivity provision, which merely provides that limitations of liability and exclusions will apply to all claims arising from oil spills, is of no consequence to the claims asserted.

The immunities of LOSPRA are likewise inapplicable to the claims asserted herein. LOSPRA provides immunities under a discreet set of circumstances not at issue herein.  LOSPRA's §2466, which provides an immunity for response efforts is not applicable to a party who is responsible for the initial discharge.  LSA-R.S. 30:2466B.  Other immunities in LOSPRA relate to liability of the fund created by LOSPRA, which likewise do not apply to defendants.  See LSA-R.S. 30:2488.  Defenses in LOSPRA of Act of War, act of government, unforeseeable occurrence and

---

[9]  See Local Government Entity Voluntary Master Complaint, Cross-Claim, and Third Party Complaint, (Doc. 1510), at ¶¶168, 586-596, 748, 760-764, and 766.

[10]  *Id.*, at ¶557.

willful misconduct of a third party do not apply, as the facts alleged do not give rise to any of these defenses.  See LSA-30:2481.  Since none of the "limitations of liability or immunities" under LOSPRA are "applicable" to the facts alleged, LOSPRA's limited exclusivity provision does not even come into play in this action, and cannot act as a bar to the District Attorneys' pursuit of Title 56 claims, regardless of whether those claims fall within the savings provision of LSA-R.S. 30:2491B.

Moreover, contrary to BP's contention, allowing the District Attorney actions to proceed is in accord with the stated purposes of LOSPRA.  In passing LOSPRA, the Louisiana Legislature stated that the intent of the Act was to protect, conserve and replenish the wildlife and aquatic life of the State of Louisiana from the "real and substantial" threat posed by the release of oil into the environment.  LSA-R.S. 30:2453.  Allowing Parish District Attorneys to bring actions for civil penalties for injury to wildlife caused by an oil spill pursuant to a statute that expressly authorizes them to do so is entirely consistent with this stated purpose.

Defendants have suggested that allowing District Attorney actions to proceed would frustrate the purpose of LOSPRA, because 40% of the proceeds in such an action would go to the District Attorneys.  Nothing in LOSPRA suggests that payment of a portion of the civil penalties to the District Attorneys, whose parishes have borne the brunt of the injury to wildlife and who undertake the burden of prosecuting the actions without diverting the limited resources of DWF, is any way inconsistent with the goals of LOSPRA.

Most significantly, LOSPRA makes no provision for civil penalties and provides no directive with respect to how civil penalties should be directed.  Since civil penalties are distinct from damages, and are awarded over and above amounts recoverable for actual damage and/or

remediation, participation in the recovery by District Attorneys is in no way inconsistent with the designation of DWF as an entity responsible for directing restoration of damage to natural resources. LOSPRA is intended to maximize the protections to wildlife and the replenishment of wildlife. Allowing District Attorneys whose parishes have been impacted by the damage to wildlife to share in the recovery of Title 56 civil penalties is entirely consistent with that purpose.

Moreover, BP ignores the fact that when weighing the advantages of allowing the District Attorneys to bring actions under Title 56, there are two sides to the equation: the proceeds of litigation and the *costs* of litigation.  While allowing the District Attorneys whose parishes have suffered from the loss of wildlife to share in the recovery of civil penalties is entirely consistent with the remedial purposes of LOSPRA, requiring DWF, whose resources have been and will continue to be stretched to the limit, to divert its limited resources to pursuit of a Title 56 action or receive no recovery at all is entirely *inconsistent* with both the remedial and protective intent of LOSPRA.  As has been witnessed in the wake of the unprecedented disaster that is the Deepwater Horizon explosion and oil spill, DWF has been overwhelmed with fulfillment of its duties as a designated State Natural Resources Trustee.  The suggestion that DWF must divert resources from these duties or have no recovery at all is inconsistent with the stated purpose of LOSPRA.  Conversely, allowing District Attorneys to shoulder the burden of Title 56 litigation for the benefit of DWF, thus allowing DWF to recover Title 56 penalties without diverting its limited resources away from oil spill response efforts, furthers the purpose of LOSPRA.

In authorizing Title 56 claims to proceed without respect to LOSPRA's limitations of liability and immunities, the drafters of LOSPRA imposed no restriction on DWF with respect to who could act on its behalf to recover civil penalties.  Title 56, on the other hand, does identify the parties who

-14-

may bring actions to recover funds for DWF, and expressly authorizes the District Attorneys to do so.  In the instant case, DWF has authorized the District Attorneys to take the initiative in pursuing these remedies, the majority of which recoveries will, by operation of §56:40.9, be paid to DWF. Allowing the District Attorneys to pursue these actions in return for a share of the proceeds, thus relieving a strained DWF of the burden of this litigation and directing some of the proceeds to the impacted parishes, is entirely consistent with both the letter and the intent of LOSPRA.

<u>**CONCLUSION**</u>

Both OPA and LOSPRA were intended to protect wildlife from the threat of oil pollution off Louisiana's coast.  Both OPA and LOSPRA expressly and implicitly preserve the ability of the state of Louisiana to impose civil penalties for harm occasioned by oil spills over and above the recovery for damages provided for under those statutes.  The District Attorneys' pursuit of these actions, which they have been authorized by both the Louisiana legislature and DWF to pursue for the benefit of DWF, is entirely consistent with both the letter and the spirit of these state and federal laws pertaining to oil spill pollution.

Respectfully submitted, this 27th day of April, 2011.

| | |
|---|---|
| COUNSEL FOR PLAQUEMINES PARISH<br>DISTRICT ATTORNEY CHARLES J. BALLAY: | s/ *Stephen B. Murray, Jr.*<br>Stephen B. Murray, Jr. (23877)<br>*smurrayjr@murray-lawfirm.com*<br>Stephen B. Murray (9858)<br>Arthur M. Murray (27694)<br>MURRAY LAW FIRM<br>650 Poydras Street, Suite 2150<br>New Orleans, Louisiana  70130<br>T:  504.525.8100 |

-15-

Philip F. Cossich, Jr. (1788)
David A. Parisola (21005)
Christina Cossich de Young (32407)
Darin S. Britt (31639)
COSSICH SUMICH PARSIOLA & TAYLOR
8397 Highway 23, Suite 100
Belle Chasse, Louisiana 70037
T:  504.394.9000

Charles J. Ballay (2719)
PLAQUEMINES PARISH DISTRICT ATTORNEY
301-A Main Street
Belle Chasse, Louisiana 70037
T:  504.297.5146

**COUNSEL FOR LAFOURCHE PARISH DISTRICT ATTORNEY CAMILLE A. "CAM" MORVANT, II:**

Walter J. Leger, Jr.
LEGER & SHAW
600 Carondelet Street, Ninth Floor
New Orleans, Louisiana 70130
T: 504.588.9043

Camille A. "Cam" Morvant, II
LAFOURCHE PARISH DISTRICT ATTORNEY
103 Maronge Street, Suite A
Thibodaux, Louisiana 70301
T:  985.446.5810

**COUNSEL FOR TERREBONNE PARISH DISTRICT ATTORNEY JOSEPH L. WAITZ, JR.:**

Donald T. Carmouche
TALBOT, CARMOUCHE & MARCELLO
214 W. Cornerview Street
Gonzales, Louisiana 70737
T:  225.644.7777

C. Berwick Duval, II
Stanwood R. Duval
DUVAL, FUNDERBURK, SUNDBERY, LOVELL & WATKINS
101 Wilson Avenue
Houma, Louisiana 70364
T:  985.876.6410

-16-

Christopher J. St. Martin
Charles C. Bourque, Jr.
ST. MARTIN & BOURQUE
4084 Highway 311
Houma, Louisiana 70360
T:  985.876.3891

Joseph L. Waitz, Jr.
TERREBONNE PARISH DISTRICT ATTORNEY
220 Courthouse Annex
7865 Main Street
Houma, Louisiana 70360
T:  985.873.6500

**COUNSEL FOR ST. TAMMANY PARISH DISTRICT ATTORNEY JOSEPH L. WAITZ, JR.:**

Calvin C. Fayard, Jr.
LAW OFFICE OF CALVIN C. FAYARD, JR.
519 Florida Boulevard
Denham Springs, LA 70726
T:  225.664.4193

Shawn C. Reed
HOWARD & REED
516 N. Columbia Street
Covington, LA 70433
T:  985.893.3607

Tommy W. Thornhill
THORNHILL LAW FIRM
1308 9th Street
Slidell, LA 70458
T:  985.641.5010

Walter P. Reed
ST. TAMMANY PARISH DISTRICT ATTORNEY
701 N. Columbia Street
Covington, LA  70433
T:  985.809.8383

**COUNSEL FOR ST. BERNARD PARISH DISTRICT ATTORNEY JOHN F. ROWLEY:**

Peter J. Butler, Jr.
BREAZEALE, SACHSE & WILSON
909 Poydras Street, Suite 1500
New Orleans, Louisiana 70112
T:  504.584.5454

John F. Rowley
ST. BERNARD PARISH DISTRICT ATTORNEY
P.O. Box 947
Chalmette, Louisiana 70044-0947
1101 West St. Bernard Highway
Chalmette, Louisiana 70043
T:  504.271.1658

**COUNSEL FOR ORLEANS PARISH DISTRICT ATTORNEY LEON A. CANNIZZARO, JR.:**

Stephen B. Murray, Jr. (23877)
Stephen B. Murray (9858)
Arthur M. Murray (27694)
MURRAY LAW FIRM
650 Poydras Street, Suite 2150
New Orleans, Louisiana  70130
T:  504.525.8100

Philip F. Cossich, Jr. (1788)
David A. Parisola (21005)
Christina Cossich de Young (32407)
Darin S. Britt (31639)
COSSICH SUMICH PARSIOLA & TAYLOR
8397 Highway 23, Suite 100
Belle Chasse, Louisiana 70037
T:  504.394.9000

Stephen J. Herman
HERMAN, HERMAN, KATZ & COTLAR
820 O'Keefe Avenue
New Orleans, Louisiana 70113
T:  504.581.4892

Mickey P. Landry (22817)
Frank J. Swarr (23322)
David R. Cannella (26231)
Philip C. Hoffman (32277)
LANDRY & SWARR
1010 Common Street, Suite 2050
New Orleans, Louisiana 70112
T:  504.299.1214

Fred L. Herman (06811)
ASSISTANT DISTRICT ATTORNEY/SPECIAL
COUNSEL FOR THE ORLEANS PARISH D.A.
1010 Common Street, Suite 3000
New Orleans, Louisiana 70112
T:  504.581.7070

Leon A. Cannizzaro, Jr.
ORLEANS PARISH DISTRICT ATTORNEY
619 S. White Street
New Orleans, Louisiana 70112

**COUNSEL FOR IBERIA PARISH AND ST. MARY PARISH DISTRICT ATTORNEY JOHN PHILLIP HANEY:**

Calvin C. Fayard, Jr.
LAW OFFICE OF CALVIN C. FAYARD, JR.
519 Florida Boulevard
Denham Springs, Louisiana 70726
T:  225.664.4193

Donald T. Carmouche
TALBOT, CARMOUCHE & MARCELLO
214 W. Cornerview Street
Gonzales, Louisiana 70737
T:  225.644.7777

Tommy W. Thornhill
THORNHILL LAW FIRM
1308 9th Street
Slidell, Louisiana 70458
T:  985.641.5010

-19-

John Phillip Haney
DISTRICT ATTORNEY FOR IBERIA PARISH
AND ST. MARY PARISH
300 Iberia Street, Suite 200
New Iberia, Louisiana 70560-4583
T:  337. 369.4420 (Iberia Parish)
T:  337.828.4100 (St. Mary Parish)

COUNSEL FOR CAMERON PARISH DISTRICT
ATTORNEY CECIL R. SANNER:

Calvin C. Fayard, Jr.
LAW OFFICE OF CALVIN C. FAYARD, JR.
519 Florida Boulevard
Denham Springs, Louisiana 70726
T:  225.664.4193

Cecil R. Sanner
CAMERON PARISH DISTRICT ATTORNEY
P.O. Box 280
Cameron, LA  70631
T: 337.775.5720

COUNSEL FOR JEFFERSON PARISH DISTRICT
ATTORNEY PAUL D. CONNICK, JR.:

Calvin C. Fayard, Jr.
LAW OFFICE OF CALVIN C. FAYARD, JR.
519 Florida Boulevard
Denham Springs, Louisiana 70726
T:  225.664.4193

Paul D. Connick, Jr.
JEFFERSON PARISH DISTRICT ATTORNEY
200 Derbigny Street
Gretna, Louisiana 70053-5850
T:  504.368.1020

COUNSEL ST. CHARLES PARISH DISTRICT
ATTORNEY HARRY J. MOREL, JR.:

Philip F. Cossich, Jr. (1788)
David A. Parisola (21005)
Christina Cossich de Young (32407)
Darin S. Britt (31639)
COSSICH SUMICH PARSIOLA & TAYLOR
8397 Highway 23, Suite 100
Belle Chasse, Louisiana 70037
T:  504.394.9000

Harry J. Morel, Jr.
ST. CHARLES PARISH DISTRICT ATTORNEY
P.O. Box 680
Hahnville, Louisiana 70057-0680
T:  985.783.6263

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing **Louisiana Parish District Attorneys' Joint Opposition to BP Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) Complaints Filed by Certain Governmental Entities in Pleading Bundle C** has been served on All Counsel by electronically uploading the same to LexisNexis File & Serve in accordance with Pretrial Order No. 12 and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in DL 2179, on this 27th day of April, 2011.

_/s/   Stephen B. Murray, Jr._
STEPHEN B. MURRAY, JR.

-21-