**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater | : | MDL No. 2179 |
| Horizon" in the Gulf of Mexico, on | : | |
| April 20, 2010 | : | SECTION: J |
| | : | |
| This Document Relates To: All Cases | : | JUDGE BARBIER |
| …………………………………………... | : | MAGISTRATE SHUSHAN |

## COMBINED MEMORANDUM (1) IN SUPPORT OF BP'S MOTION FOR A STAY OF PROCEEDINGS BETWEEN BP AND ANADARKO AND MOEX, AND (2) IN OPPOSITION TO ANADARKO'S AND MOEX'S MOTION TO COMPEL DISCOVERY RESPONSES

## TABLE OF CONTENTS

Page

SUMMARY ...............................................................................................................1

BACKGROUND .......................................................................................................2

    A.    The Roles and Contractual Relationship of BPXP, Anadarko, and MOEX ............2

    B.    Anadarko and MOEX Refuse to Pay Contractual Invoices, Asserting They Are Relieved of Reimbursement Obligations by BP's Alleged "Gross Negligence." .......................................................................................................3

    C.    Discovery Propounded by Anadarko and MOEX Seeks Evidence to Support the Allegation That BP Was "Grossly Negligent." ...................................4

    D.    Anadarko and MOEX File Cross-Claims Against BP. ............................................6

    E.    The JOA Requires Arbitration of the Parties' Disputes and Prohibits Resort to Court Remedies. .......................................................................................7

ARGUMENT .............................................................................................................8

I.    THE COURT SHOULD STAY LITIGATION OF ANADARKO'S AND MOEX'S CLAIMS AGAINST BPXP, WHICH ARE DIRECTLY COVERED BY THE ARBITRATION AGREEMENT ...............................................8

    A.    The Claims by Anadarko and MOEX Are Covered by the JOA's Arbitration Clause. ...............................................................................................9

    B.    The FAA Requires That Litigation Covered by the Arbitration Clause Be Stayed. ..................................................................................................................10

    C.    The Stay of Litigation Should Extend to All BP Parties. ......................................11

II.    ANADARKO'S AND MOEX'S MOTION TO COMPEL SHOULD BE DENIED, AND THE STAY SHOULD PROHIBIT ANADARKO AND MOEX FROM OBTAINING DISCOVERY FROM BP RELATED TO ARBITRABLE CLAIMS. .....................................................................................12

    A.    Initiation of Arbitration Is Not Necessary to Obtain a Stay of Arbitrable Claims, and in Any Event, Formal ADR Procedures Under the JOA Have Been Invoked. .........................................................................................................13

    B.    Anadarko's and MOEX's Discovery Relates to Arbitrable Issues, and Thus Should Be Stayed. ........................................................................................14

i

C.      The Pendency of Claims by Plaintiffs Is Not the True Impetus of
        Anadarko's and MOEX's Discovery and in Any Event Does Not Override
        the FAA Policies for Staying Discovery.............................................................16

        1.      Fifth Circuit Caselaw Affirms Stays of Arbitrable Claims Even in
                Multi-Party Maritime Cases Involving Parallel Claims by Third
                Parties......................................................................................................16

        2.      The Contested Discovery Is Neither "Crucial" to, Nor Motivated
                by, Anadarko's and MOEX's Defense Against Claims by the
                Plaintiffs..................................................................................................20

D.      BP Has Not Engaged in a "Program of Discovery" That Justifies
        Anadarko's and MOEX's Discovery.................................................................23

**CONCLUSION** ............................................................................................................**24**

## SUMMARY

Anadarko Petroleum Corporation ("Anadarko") and MOEX Offshore 2007 LLC ("MOEX") are using this forum to prosecute claims against BP Exploration & Production ("BPXP") which are governed by the arbitration clause in the parties' contract. Their claims must be stayed under the Federal Arbitration Act ("FAA"). The Fifth Circuit has held that multi-party maritime cases such as limitation actions are not excepted from the FAA's strong policy prohibiting parties from attempting to end-run arbitration via court proceedings. BPXP therefore moves for a stay of the litigation amongst Anadarko, MOEX and BPXP. (*See infra* Part I.)

Anadarko and MOEX have propounded discovery against BPXP to further these claims. This discovery should likewise be stayed. Anadarko's and MOEX's moving papers have cherry picked particular discovery items in an attempt to portray the discovery as "crucial" to their MDL defense. But there is no exception to the FAA's mandatory stay provision based on whether discovery might be relevant to other actions. To create such an exception would allow the protections of a contractual arbitration procedure to be eroded by the imposition of third-party litigation, an argument that the Fifth Circuit has rejected. Moreover, the true purpose of Anadarko's and MOEX's discovery is offensive, not defensive. The Supreme Court has said that courts need not ignore the true underlying purpose of discovery in deciding whether it relates to issues that are properly within the scope of the action. The purpose of Anadarko's and MOEX's discovery is manifestly to prove BP's alleged "gross negligence" in order to avoid paying costs related to the *Deepwater Horizon* spill as required by their contract. Because disputes under that contract are subject to mandatory arbitration, BPXP opposes Anadarko's and MOEX's motion to compel further discovery responses. (*Infra* Part II.)[1]

---

[1] Contrary to Anadarko's and MOEX's assertion, the arbitration clause is not "[t]he sole ground" for BP's opposition to the motion to compel. (*See* 2179 Dkt. 1965-1 (Mem. in Support of Anadarko's and MOEX's Mot.

The order sought in BP's motion to stay would not affect the rights of parties other than Anadarko and MOEX to prosecute claims and take discovery from BP.  Nor would it affect the ability of Anadarko and MOEX to review and present evidence obtained in the extensive discovery being conducted by other parties.  The order also would not affect the trial schedule or the litigation of Plaintiffs' claims against any party.

## BACKGROUND

### A.     The Roles and Contractual Relationship of BPXP, Anadarko, and MOEX

In 2008 BPXP won the competition to lease what later became the Macondo prospect. As is customary in Gulf of Mexico deepwater exploration, BP sought out other investors to share ownership, risks and potential profits from the lease.  Anadarko and MOEX became those co-owners.  Under the parties' "Joint Operating Agreement" ("JOA") and ancillary contracts, Anadarko became a 25% owner and MOEX became a 10% owner in the Macondo prospect.

---

to Compel Discovery Responses at 1) [hereinafter "Mot. to Compel"].)  Instead, as Anadarko and MOEX know, the parties agreed during a meet-and-confer on April 5 to first resolve the overarching issue of whether Anadarko's and MOEX's discovery violated its agreement to arbitrate before exploring the other objectionable aspects of Anadarko's and MOEX's requests.  In fact, Anadarko's and MOEX's requests are vague, overbroad, burdensome, and irrelevant to the MDL.  If the Court rules in BP's favor on these cross-motions, there will be no need for the parties to meet and confer in an attempt to work out the detailed objections to individual discovery requests.  The only supposedly insufficient responses that Anadarko and MOEX identify in their motion are BP's responses to Anadarko's Request for Production Nos. 14 and 15, and Anadarko's Interrogatory Nos. 1, 2, and 4, (see Mot. to Compel at 8), and as to these, in brief:

- RFPs 14–15:  BP set forth detailed (5 pages) of explanation justifying its responses. (Mot. to Compel Ex. C at 90-95 (BP Response to APC RFP Nos. 14-15).)

- Interrogatory 1:  BP responded by providing the names of those who discussed an audit report, which "disclosed that the EST fault and inhibit alarm conditions were indicated on the bridge fire and gas panel." (Mot. to Compel Ex. C at 58-59 (BP Response to APC Interrog. No. 1).)  This is sufficient to identify those who discussed inhibition of the alarm systems.

- Interrogatory 2:  BP responded by pointing to documents that identify those who communicated about the functionality of the BOP. (Mot. to Compel Ex. C at 59-60 (BP Response to APC Interrog. No. 2).)

- Interrogatory 4:  BP's limitation to the Gulf of Mexico is consistent with discovery orders, and broader than Anadarko's and MOEX's discovery responses.  Its response covered the subpart of the question related to centralizers. (Mot. to Compel Ex. C at 61 (BP Response to APC Interrog. No. 4).)

BPXP was designated as the "Operator." (JOA art. 4.1 (Boles Decl. Ex. A at 25).) The Operator typically pays the costs of operations and then charges the joint account. (*Id.* art. 6.1 (Boles Decl. Ex. A at 36); *id.* Ex. C ¶ I.2.A (Boles Decl. Ex. A at 163).) To allocate these expenditures, BPXP issues "joint interest billings" ("JIBs") to Anadarko and MOEX, who are required to reimburse BPXP in proportion to their respective participating interests. (*Id.* art. 6.1 (Boles Decl. Ex. A at 36); *id.* Ex. C ¶ I.2–3 (Boles Decl. Ex. A at 163–64).) Reimbursable "Costs" are defined in the JOA's "Accounting Procedure" to include expenditures for oil spill containment, cleanup and "resulting responsibilities . . . as required by applicable laws." (*See id.* Ex. C ¶ II.13.A (Boles Decl. Ex. A at 170).)

> **B.     Anadarko and MOEX Refuse to Pay Contractual Invoices, With Anadarko Asserting They Are Relieved of Reimbursement Obligations by BP's Alleged "Gross Negligence."**

After the April 20, 2010 incident, BPXP began incurring significant costs in responding to and remediating the oil spill. (*Id.*) BPXP sent JIBs to Anadarko and MOEX for their proportionate shares of the costs—as provided for by the JOA.

But Anadarko and MOEX have refused to pay those JIBs. On June 18, 2010, Anadarko issued a public statement alleging that "BP's behavior and actions likely represent gross negligence or willful misconduct and thus affect the obligations of the parties under the operating agreement[.]" (Boles Decl. Ex. B at 1.)

In early July, Anadarko followed up its public statement by writing to BP that it was withholding payment of the JIBs. (Boles Decl. Ex. C (July 7, 2010 letter from R. Reeves to K. Howe).) Anadarko claimed that the proceedings and investigations into the incident "raise serious questions as to the obligations Anadarko may have under the JOA to reimburse BP for costs related to the Macondo well blowout and response." (*Id.*) Anadarko's letter also referenced its prior public statement accusing BP of "gross negligence." (*Id.*) MOEX sent a

similar letter stating that it was withholding payment of the JIBs.  (Boles Decl. Ex. D (July 12, 2010 letter from N. Ishii to K. Howe).)

### C.     Discovery Propounded by Anadarko and MOEX Seeks Evidence to Support the Allegation That BP Was "Grossly Negligent."

Anadarko and MOEX profess that their discovery against BP is aimed at "protecting" them against claims by Plaintiffs.  (*See* 2179 Dkt. 1965-1 (Mem. in Support of Anadarko's and MOEX's Mot. to Compel Discovery Responses at 4, 6, 9, 10, 12) [hereinafter "Mot. to Compel"].)  In fact the discovery seeks to do the opposite, namely to bolster the Plaintiffs' allegations that BP was "grossly negligent" in order to support Anadarko's and MOEX's contention that they are thereby relieved of their contractual obligation to help pay spill-related costs.  This contractual dispute is covered by an arbitration clause that is enforceable under the Federal Arbitration Act.

The particulars of Anadarko's and MOEX's discovery align precisely with the allegations of the Plaintiffs' master complaints in accusing BP of gross negligence.  (*E.g.*, 2179 Dkt. 879, Master Complaint, Cross-Claim, And Third-Party Complaint For Private Economic Losses In Accordance With PTO No. 11 [CMO No. 1] Section III(B1) ["B1 Bundle"] ¶¶ 552–560, 687.) The Anadarko and MOEX discovery requests closely track these Plaintiff allegations of gross negligence.[2]  Anadarko's and MOEX's discovery also targets BP policies and procedures which

---

2    For example: (1) Plaintiffs allege that BP did not use enough centralizers (B1 Bundle ¶ 557), and Anadarko and MOEX seek discovery on the same topic (Mot. to Compel Ex. A at 14 (APC Interrog. No. 4); *id.* at 23 (APC RFP No. 23); *id.* at 56-57 (AE&P RFA Nos. 4–5)); (2) Plaintiffs complain about the circulation of the drilling mud (B1 Bundle ¶ 557), and Anadarko and MOEX seek discovery on the same (Mot. to Compel Ex. A at 15 (APC Interrog. No. 9)); (3) Plaintiffs allege that BP used an inappropriate cement mixture (B1 Bundle ¶ 558), as do Anadarko and MOEX (Mot. to Compel Ex. A at 16 (APC Interrog. No. 12); *id.* at 23 (APC RFP No. 27)); (4) Plaintiffs allege that BP did not adequately test the cement mixture (B1 Bundle ¶ 558), and Anadarko and MOEX target discovery at this mixture (Mot. to Compel Ex. A at 16 (APC Interrog. No. 12); *id.* at 42-43 (MOEX Offshore RFP No. 4)); (5) Plaintiffs, as well as Anadarko and MOEX, complain that BP did not run a cement bond log (B1 Bundle ¶ 558; Mot. to Compel Ex. A at 44 (MOEX Offshore RFP. No. 13)); (6) Plaintiffs allege problems with mixed spacer solutions (B1 Bundle ¶ 559), and Anadarko and MOEX seek discovery related to spacer fluid (Mot. to Compel Ex. A at 17 (APC Interrog. No. 16); *id.* at 19, 23 (APC RFP Nos. 1, 24–25)); (7) Plaintiffs allege that BP failed to maintain the blowout preventer (B1 Bundle ¶ 560), and Anadarko and

have been targeted in the Plaintiffs' allegations of "gross negligence" against BP.  (*Compare* B1 Bundle ¶¶ 552–560, 687 *with* Mot. to Compel Ex. A (Anadarko's and MOEX's Discovery Requests to BP).)[3]

The discovery requests read like a complaint against BP.  For instance, Anadarko seeks discovery on wells "in which YOU directed YOUR cement contractor to proceed with a cement job when Opticem or similar modeling showed the well would have a severe gas flow problem," or "in which YOU performed a temporary abandonment procedure that differed from the one YOU actually submitted to . . . the US Minerals Management Service[.]"  (Mot. to Compel Ex. A at 13, 16 (APC Interrog. Nos. 3, 13).)  And MOEX demands information on "every policy or standard practice … that ensured that any and all of BP's decisions about drilling operations or temporary abandonment of deep sea wells did not favor cost or schedules considerations over potential risks to safety."  (*Id.* at 37-38 (MOEX Offshore Interrog. No. 3).)

---

MOEX seek discovery on the same (Mot. to Compel Ex. A at 41 (MOEX Offshore Interrog. No. 18)); (8) Plaintiffs allege BP was grossly negligent in maintaining *Deepwater Horizon* (B1 Bundle ¶ 687(a)), and Anadarko's and MOEX's discovery is targeted at maintenance (Mot. to Compel Ex. A at 18 (APC Interrog. No. 22)); (9) Plaintiffs, and Anadarko and MOEX, accuse BP of disregarding safety in favor of saving time and money (B1 Bundle ¶ 687(b); Mot. to Compel Ex. A at 37-38 (MOEX Offshore Interrog. No. 3)); (10) both assert that BP ignored warnings (B1 Bundle ¶ 687(c); Mot. to Compel Ex. A at 13-14 (APC Interrog. No. 3); *id.* at 37, 40 (MOEX Offshore Interrog. Nos. 1–2, 16)); (11) Plaintiffs allege that BP deviated from MMS regulations (B1 Bundle ¶ 687(e)), and Anadarko and MOEX want discovery on MMS approval of certain BP actions (Mot. to Compel Ex. A at 16 (APC Interrog. No. 13); *id.* at 47 (MOEX Offshore RFP Nos. 26–27)); (12) Plaintiffs complain that BP's mitigation efforts were grossly negligent (B1 Bundle ¶ 687(f)), and Anadarko and MOEX seek discovery on BP's mitigation efforts (Mot. to Compel Ex. A at  23 (APC RFP No. 26); *id.* at 15 (MOEX Offshore RFP No. 15)); (13) Plaintiffs allege that BP failed to ensure *Deepwater Horizon* was free from defects (B1 Bundle ¶ 687(h)), and Anadarko and MOEX contend the same thing (Mot. to Compel Ex. A at 13 (APC Interrog. No. 2).)

[3]   For example, Plaintiffs allege that BP's "policies," "procedures," "rules," "regulations," and "safeguards" were grossly negligent.  (B1 Bundle ¶¶ 557, 687)  And Anadarko and MOEX seek discovery on various "procedures," "systems," "protocols," "policies," "rules," and "decisions."  (Mot. to Compel Ex. A at 16-17, 18 (APC Interrog. Nos. 14, 23); *id.* at 21 (APC RFP Nos. 11–12); *id.* at 38-40 (MOEX Offshore Interrog. Nos. 4, 8, 11, 17); *id.* at 43-44, 47 (MOEX Offshore RFP Nos. 9–10, 14, 28); *id.* at 14-16 (APC Interrog. Nos. 5–8, 10–11); *id.* at 39 (MOEX Offshore Interrog. No. 9); *id.* at 43-46 (MOEX Offshore RFP Nos. 5–6, 8, 12, 16–20, 23, 25).)

In short, the discovery by Anadarko and MOEX against BP does not aim at defense against claims brought by Plaintiffs, but rather prosecuting the assertion that BP's alleged "gross negligence" relieves them of their legal obligations to pay for their share of the incident-related costs and liabilities, an issue that is subject to contractual arbitration.  (*See supra* Part B; *infra* Part E (arbitrability).)

This conclusion is confirmed by the correspondence demanding further discovery responses from BP.  For example, counsel for Anadarko and MOEX asserts that one of their requests is "relevant to the issue of whether the BP Parties were under time and money pressures during the temporary abandonment procedure at the Macondo Well."  (Mot. to Compel Ex. H at 8.)  This is not a quest for evidence for "protection" against claims by the Plaintiffs.

### D.     Anadarko and MOEX File Cross-Claims Against BP.

Four days after filing this motion professing that their discovery was intended to "protect" against claims by Plaintiffs, Anadarko and MOEX filed cross-claims accusing BP of negligence and (in Anadarko's cross-claim) gross negligence.  (*See* 2771 Dkt. 338 (Anadarko's Cross-Claims); 2771 Dkt. 420 (MOEX's Cross-Claims).)[4]  Just as their discovery aligned topic-by-topic with the Plaintiffs' accusations that BP was "grossly negligent," Anadarko's new cross-claim scrolls forth the same litany of alleged actions and omissions as are alleged by Plaintiffs and covered by the subject matters of Anadarko's and MOEX's discovery.  These cross-claims, in other words, have unmasked any pretense that Anadarko and MOEX are "defending" against claims by Plaintiffs.  They even incorporate by reference allegations of negligence by the Plaintiffs.  (*See* 2771 Dkt. 338 at 24.)  Accusing BP of negligence can only increase their exposure to liability to the Plaintiffs, since they are contractually obligated under the JOA to pay

---

[4]     "2771 Dkt." refers to the docket in the case captioned *In re: Triton Asset Leasing GmbH et al.*, Case No. 2:10-cv-02771-CJB-SS.

their working-interest share of Macondo-related liability.  (*See supra* Part A.)  Anadarko and MOEX assert that the JOA relieves them of this contractual obligation if BP is proven to be "grossly negligent."  (*See supra* Part B.)  And in its cross-claim, Anadarko alleges that "[b]ecause the JIBs arose from BP's gross negligence, Anadarko has no obligation under the OA to pay the JIBs and BP has no right to charge Anadarko's account for the JIBs[.]"  (*See* 2771 Dkt. 338 ¶ 131.)  Thus, their game plan is plain:  use claims and discovery in the MDL to litigate their contractual dispute with BP under the JOA.  But Anadarko and MOEX contracted to arbitrate that dispute, and the Federal Arbitration Act requires that contract to be enforced.

      **E.**     **The JOA Requires Arbitration of the Parties' Disputes and Prohibits Resort to Court Remedies.**

The arbitration clause in the JOA says that "[a]ny claim, controversy, or dispute arising out of, relating to, or in connection with this Agreement or an activity or operation conducted under this Agreement" is to be resolved through contractual dispute-resolution procedures including binding arbitration.  (JOA art. 22.9 (Boles Decl. Ex. A at 144); *see id.* Ex. H (Boles Decl. Ex. A at 216–24).)  Equally and independently as important, as part of the agreement to arbitrate, Anadarko and MOEX "expressly covenant[ed] that [they] shall not resort to court remedies."[5]  (*Id.* Ex. H § I.A(i) (Boles Decl. Ex. A at 216).)  These terms prohibit Anadarko and MOEX from doing what they've done here: file claims against BP and seek Court remedies on their discovery demands.

Under the JOA, the arbitration process is binding and intended to be the final resolution of any dispute among the parties.  (*Id.* Ex. H § I.A(i) (Boles Decl. Ex. A at 216).)  The JOA arbitration process was intended to be "expeditious, economical, and less burdensome and

---

[5]    The arbitration clause explicitly allows a party to seek court intervention in aid of arbitration—the precise relief BP seeks in the present motion.  No exception exists for Anadarko's and MOEX's attempt to obtain court relief on discovery.

adversarial than litigation."  (*Id.* Ex. H § II.D(iii) (Boles Decl. Ex. A at 220).)  The parties agreed

to circumscribe discovery, foregoing depositions and limiting document requests to 10 requests.

(*Id.* §§ I.A(i), II.C, II.I (Boles Decl. Ex. A at 216, 218, 221).)

## ARGUMENT

The FAA and implementing case law require specific performance of Anadarko's and

MOEX's express promise under the JOA to arbitrate their dispute and forego court remedies

such as their present motion to compel.  Under the FAA, a court must, "upon being satisfied that

the issue involved in . . . [a] suit or proceeding is referable to arbitration under . . . an

[arbitration] agreement, . . . stay the trial of the action until such arbitration has been had[.]"  9

U.S.C. § 3.  An order denying a stay requested under § 3 of the FAA is immediately appealable.

9 U.S.C. § 16(a)(1)(A).

There is no question that BPXP, Anadarko, and MOEX are parties to the JOA's

arbitration agreement, discovery limitations, and prohibition of resort to court remedies.  The

FAA requires courts to enforce these terms by staying arbitrable claims.  (*See infra* Part I.)

The Fifth Circuit has held that third party litigation cannot override arbitration

agreements between the parties, and Anadarko's and MOEX's arguments contradict this

principle.  Moreover, other authority specifically precludes discovery in cases such as this.  (*See*

*infra* Part II.)

## I.    THE COURT SHOULD STAY LITIGATION OF ANADARKO'S AND MOEX'S CLAIMS AGAINST BP, WHICH ARE COVERED BY THE ARBITRATION AGREEMENT.

The FAA provides that arbitration agreements are "valid, irrevocable, and enforceable,

save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C.

§ 2.  As the United States Supreme Court has explained, "[t]hese provisions manifest a 'liberal

federal policy favoring arbitration agreements.'"  *Gilmer v. Interstate/Johnson Lane Corp.*, 500

U.S. 20, 25 (1991) (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

Because of this strong federal policy, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Moses H. Cone*, 460 U.S. at 24–25. Indeed, any "[d]oubts should be resolved in favor of coverage." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960)). "Thus, as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

### A. The Claims by Anadarko and MOEX Are Covered by the JOA's Arbitration Clause.

The arbitration clause in the JOA—covering "[a]ny claim, controversy, or dispute arising out of, relating to, or in connection with this Agreement or an activity or operation conducted under this Agreement" (JOA art. 22.9 (Boles Decl. Ex. A at 144))—uses the formula that has been characterized by the Fifth Circuit as "broad" and having an expansive scope. *See Pennzoil Exploration and Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1069 (5th Cir. 1998); *see Steel Warehouse Co., Inc. v. Abalone Shipping Ltd. of Nicosai*, 141 F.3d 234, 238 (5th Cir. 1998). "If the clause is broad, the action should be stayed and the arbitrators permitted to decide whether the dispute falls within the clause." *In re Compl. of Hornbeck Offshore(1984) Corp.*, 981 F.2d 752, 754 (5th Cir. 1993); *see also Terrebonne v. K-Sea Transp. Corp.*, 477 F.3d 271, 286 (5th Cir. 2007).

The claims between BP and Anadarko and MOEX are arbitrable under the contract's plain wording. Under the JOA, claims are arbitrable if they relate (1) to the JOA itself, or (2) to

activities or operations under the JOA.  (JOA art. 22.9 (Boles Decl. Ex. A at 144).)  The disputes between BP and Anadarko and MOEX relate to both.  BP claims that, under the JOA, Anadarko and MOEX must pay their proportional shares of the JIBs.  In response, both Anadarko and MOEX have brought claims seeking to avoid this contractual obligation based on BP's alleged gross negligence or other conduct.  Each of Anadarko's 16 cross-claims against BP and MOEX's 4 cross-claims against BP relate to "an activity or operation conducted under" the JOA— specifically, the Macondo prospect.  Thus, the disputes are arbitrable.

### B.     The FAA Requires That Litigation Covered by the Arbitration Clause Be Stayed.

Congress enacted a strong policy that court proceedings related to arbitrable issues should be halted until after arbitration.  The FAA provides that, "[i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]"  9 U.S.C. § 3.  "As a result, any litigation arguably arising under such a clause should be stayed pending the arbitrator's decision as to whether the dispute is covered."  *Texaco Exploration & Prod. Co. v. AmClyde Engineered Prods. Co., Inc.*, 243 F.3d 906, 909 (5th Cir. 2001).

Moreover, this stay is mandatory, not discretionary.  "[I]f the issues in a case are within the reach of that [arbitration] agreement, the district court has no discretion under section 3 to deny the stay."  *AmClyde*, 243 F.3d at 909 (alteration in original); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992); *see also Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 345 (5th Cir. 2004).

The Fifth Circuit has held that arbitration provisions must be enforced, and litigation must be stayed, even in a complex admiralty case. *Texaco v. AmClyde* involved a multi-party admiralty action where parties had been brought into the litigation under Federal Rule of Civil Procedure 14(c). 243 F.3d at 908. The Fifth Circuit held that the admiralty nature of the action did not alter the fundamental requirements of the FAA, and the parties to an arbitration agreement were required to arbitrate their claims. *Id.* at 909–11. The appellate court also directed the district court to stay the litigation between the contracting parties. *Id.* at 912. Similarly, the Fifth Circuit has held that the requirements of the FAA are not preempted in a limitation action, and that parties in a limitation action who have agreed to an arbitration contract can be required to arbitrate their claims. *Hornbeck Offshore*, 981 F.2d at 753–55.

Because Anadarko's and MOEX's claims are covered by the arbitration clause, they must be stayed.

### C.      The Stay of Litigation Should Extend to All BP Parties.

All of the BP parties, not just BPXP, are entitled to a stay. BPXP is the BP entity that signed the JOA (JOA at 145 (Boles Decl. Ex. A at 156).) The Supreme Court has recognized that an arbitration "contract . . . [may] be enforced by or against nonparties to the contract through . . . third-party beneficiary theories, waiver and estoppel." *Arthur Andersen LLP v. Carlisle*, 129 S. Ct. 1896, 1902 (2009). For example, the theory of "equitable estoppel permits a nonsignatory to an arbitration clause to compel arbitration against a signatory 'when the signatory raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.'" *Griffin v. ABN AmroMortgage Group Inc.*, 378 Fed. App'x 437, 439–40 (5th Cir. 2010) (per curiam) (quoting *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2000)); *see also Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 398 (5th Cir. 2006) (same).

Anadarko's and MOEX's disputes with BPXP and the other BP parties directly fit within this principle.  BPXP was the operator of MC-252 under the JOA.  Any potential liability of the other BP parties would be derivative of any BPXP liability.  Thus, any disputes Anadarko and MOEX could have with any BP party are substantially interdependent, assert concerted misconduct, and are fundamentally intertwined with their allegations against BPXP.  *See also Brown*, 462 F.3d at 398–99; *see also Waste Mgm.*, 372 F.3d at 342–45; *Griffin*, 378 Fed. App'x at 440.  Tellingly, each of the cross-claims alleged by Anadarko and MOEX are alleged equally against BPXP, BP America Production Company, and BP p.l.c., without differentiation.

Having promised to arbitrate their disputes with BPXP, Anadarko and MOEX have no basis to complain for being required to comply with the terms of their agreement.  *See Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 361 (5th Cir. 2003) ("It is more foreseeable, and thus more reasonable, that a party who has actually agreed in writing to arbitrate claims with someone might be compelled to broaden the scope of his agreement to include others.").

## II.   ANADARKO'S AND MOEX'S MOTION TO COMPEL SHOULD BE DENIED, AND THE STAY SHOULD PROHIBIT ANADARKO AND MOEX FROM OBTAINING DISCOVERY FROM BP RELATED TO ARBITRABLE CLAIMS.

The policy of the Federal Arbitration Act mandating a stay of litigation of arbitrable issues also requires a prohibition on related discovery. "It is well established that discovery regarding matters to be arbitrated is generally denied, absent exceptional circumstances." *Thomas O'Connor & Co., Inc. v. Ins. Co. of N. Am.*, 697 F. Supp. 563, 567 (D. Mass. 1988). "Where an action has been stayed pending arbitration, a district court may not permit the parties to conduct discovery under the Federal Rules of Civil Procedure." *Corpman v. Prudential-Bache Sec., Inc.*, 907 F.2d 29, 31 (3d Cir. 1990) (per curiam); *see also Suarez-Valdez v. Shearson Lehman/Am. Express, Inc.*, 858 F.2d 648, 649 (11th Cir. 1988) (granting writ of mandamus requiring district court to stay discovery: "The district court erred in refusing to stay discovery.

An agreement to arbitrate is an agreement to proceed under arbitration and not under court rules.").

This prohibition has a broad scope, and applies to any discovery pertaining to or regarding the merits of the arbitrable dispute.  "[T]he ordering of discovery which, in essence, pertains to a matter in binding arbitration would be inappropriate."  *Burlington N. Joint Protective Board v. Burlington N.R.R.*, 822 F.2d 810, 812 (8th Cir. 1987); *see also, e.g.*, *H.K. Porter Co., Conners Steel Division v. Local 37, United Steel Workers of Am.*, 400 F.2d 691, 695–96 (4th Cir. 1968) (holding that a district court "order quashing the notice to depose the manager for inquiry on the merits of the controversy was not an abuse of discretion").

Anadarko and MOEX argue in their Motion to Compel that their discovery should be allowed because (A) there is no arbitration presently proceeding (*see* Mot. to Compel at 2, 5, 10); (B) their discovery seeks evidence irrelevant to the arbitrable dispute (*see id.* at 9, 11); (C) even if the evidence is relevant to the arbitrable disputes, it is also "crucial" to their defense against claims by the Plaintiffs (*see id.* at 4, 6, 9, 10, 12); and (D) BP has conducted its own "program" of discovery that justifies the discovery by Anadarko and MOEX (*see id.* at 3, 14).  Each of these arguments is incorrect in its premise and/or wrong in its characterization of the law.

### A. Initiation of Arbitration Is Not Necessary to Obtain a Stay of Arbitrable Claims, and in Any Event, Formal ADR Procedures Under the JOA Have Been Invoked.

Anadarko and MOEX assert repeatedly in the Motion to Compel that the arbitration clause in the JOA does not bar their discovery because there is no arbitration underway.  (*See* Mot. to Compel at 2, 5, 10.)  This argument misconstrues Fifth Circuit law and mischaracterizes the state of ADR proceedings under the JOA.

First, under Fifth Circuit precedent, a stay of the litigation is decided based on the arbitrability of the claims, not on the progress of the arbitration proceedings.  A stay is required

even if the parties have not yet initiated arbitration. *See Tenneco Resins, Inc. v. Davy Int'l*, 770 F.2d 416, 419, 423 (5th Cir. 1985); 9 U.S.C. § 3.

Second, BP has initiated the formal dispute resolution procedures which lead to arbitration under the JOA.  On April 4, 2011, BP delivered the Notice of Dispute required under the JOA's dispute-resolution procedures to compel final negotiations prior to selection of arbitrators.  (*See* JOA Ex. H §§ I.C & II.A (Boles Decl. Ex. A at 217).)  Those procedures require that the parties negotiate over the dispute for a period of time, and Anadarko and MOEX have responded by designating their negotiators.  Pursuant to the dispute resolution procedures, if the negotiations are not successful, then "the matter shall be submitted to arbitration."  (JOA Ex. H § II.A (Boles Decl. Ex. A. at 217).)

> **B.**     **Anadarko's and MOEX's Discovery Relates to Arbitrable Issues, and Thus Should Be Stayed.**

Anadarko and MOEX argue that their discovery is not relevant to the arbitrable dispute. (*See* Mot. to Compel at 9, 11.)  The discovery relates almost entirely to two overarching issues: whether BP as the Operator under the JOA was negligent or grossly negligent, and Anadarko's and MOEX's knowledge and/or approval of BP's conduct.  *See supra* Background Part C.  These issues go to the heart of the arbitrable disputes between BP and Anadarko and MOEX.  *See id.* Parts B, D & E.  For example, evidence about what Anadarko or MOEX knew about well design and operation could impeach *post hoc* allegations that this conduct was "grossly negligent."

The only example in their moving papers of discovery that is supposedly irrelevant to the arbitrable dispute consists of requests going to whether they "exercise[ed] control over the Deepwater Horizon's operations."  (Mot. to Compel at 11.)  But whether they had control, provided input, approved, or otherwise had knowledge of the actions at Macondo goes to the

credibility of their attempt—after the fact—to avoid their contractual obligation to pay the JIBs. Thus, on its face, all of Anadarko's and MOEX's discovery is relevant to the arbitrable claims.

The relationship between Anadarko's and MOEX's discovery and the arbitrable issues is further demonstrated by the parallels between their discovery and their recent cross-claims against BP for negligence and gross negligence.[6]   Anadarko's and MOEX's discovery also targets BP policies and procedures, which are an additional basis of their allegations.[7]

---

[6]   The correspondence between their cross-claim allegations of negligence and gross negligence and their discovery includes the following subjects: (1) the negative pressure test (2771 Dkt. 338 ¶¶ 37–44, 85.k; 2771 Dkt. 420 ¶ 25(b) (cross-claim); Mot. to Compel Ex. A at 16 (APC Interrog. No. 12); *id.* at 37-38 (MOEX Offshore Interrog. Nos. 1–2, 4); *id.* at 43 (MOEX Offshore RFP No. 9); *id.* at 60 (AE&P RFA Nos. 23–24)); (2) the number of centralizers used (2771 Dkt 338 ¶¶ 45–54; Mot. to Compel Ex. A at 14 (APC Interrog. No. 4); *id.* at 23 (APC RFP No. 23); *id.* at 56-57 (AE&P RFA Nos. 4–5)); (3) the spacer solution used (2771 Dkt. 338 ¶¶ 55–62; 2771 Dkt. 420 ¶ 25(b); Mot. to Compel Ex. A at 17 (APC Interrog. No. 16); *id.* at 19, 23 (APC RFP Nos. 1, 24–25); *id.* at 58-59 (AE&P RFA No. 15)); (4) the attempts to convert the float collar (2771 Dkt. 338 ¶¶ 63–70, 85.g, 85.n–o; 2771 Dkt. 420 ¶ 25(b); Mot. to Compel Ex. A at 15-16, 18 (APC Interrog. Nos. 10–11, 19–20); *id.* at 38-39 (MOEX Offshore Interrog. No. 8); *id.* at 43 (MOEX Offshore RFP Nos. 7–8)); (5) the cement slurry used (2771 Dkt. 338 ¶¶ 71–78; Mot. to Compel Ex. A at 23 (APC RFP No. 27); *id.* at 41-42 (MOEX Offshore Interrog. Nos. 21–24); *id.* at 43 (MOEX Offshore RFP No. 5); *id.* at 56-58 (AE&P RFA Nos. 2–3, 8, 10, 13)); (6) the temporary abandonment plan (2771 Dkt. 338 ¶¶ 79–82, 85.c, 85.j, 85.m, 85.x; 2771 Dkt. 420 ¶ 25(c); Mot. to Compel Ex. A at 16-17 (APC Interrog. Nos. 13–14); *id.* at 19-20 (APC RFP No. 2); *id.* at 37-38, 40 (MOEX Offshore Interrog. Nos. 3, 14–15); *id.* at 44 (MOEX Offshore RFP Nos. 10–11); *id.* at 58-60 (AE&P RFA Nos. 14, 19–22)); (7) BP's supervision of drilling operations (2771 Dkt. 338 ¶¶ 85.a, 85.u; 2771 Dkt. 420 ¶ 25(e); Mot. to Compel Ex. A at 14-15 (APC Interrog. Nos. 5, 7); *id.* at 39 (MOEX Offshore Interrog. No. 9)); (8) well design (2771 Dkt. 338 ¶ 85.d; Mot. to Compel Ex. A at 15 (APC Interrog. No. 8); *id.* at 20 (APC RFP No. 3); *id.* at 44 (MOEX Offshore RFP No. 12); *id.* at 61 (AE&P RFA No. 28)); (9) circulation of the drilling mud (2771 Dkt. 338 ¶ 85.e; Mot. to Compel Ex. A at 15 (APC Interrog. No. 9)); (10) the spotting of heavy mud (2771 Dkt. 338 ¶ 85.f; Mot. to Compel Ex. A at 17 (APC Interrog. No. 17–18); *id.* at 57 (AE&P RFA No. 9)); (11) the decision not to run a cement bond log (2771 Dkt. 338 ¶ 85.h; Mot. to Compel Ex. A at 44 (MOEX Offshore RFP No. 13); *id.* at 58 (AE&P RFA No. 12)); (12) the use of lockdown sleeves (2771 Dkt. 338 ¶ 85.i; Mot. to Compel Ex. A at 59 (AE&P RFA No. 17)); (13) employee training (2771 Dkt. 338 ¶ 85.l; 2771 Dkt. 420 ¶ 25(f); Mot. to Compel Ex. A at 14, 19 (APC Interrog. Nos. 6, 24–25); *id.* at 45 (MOEX Offshore RFP Nos. 17–20); *id.* at 60 (RFA No. 27)); (14) design and maintenance of the BOP (2771 Dkt. 338 ¶ 85.n; Mot. to Compel Ex. A at 13, 17, 18 (APC Interrog. Nos. 2, 15, 21); *id.* at 21 (APC RFP No. 12); *id.* at 46 (MOEX Offshore RFP No. 24)); (15) testing of the cement job (2771 Dkt. 338 ¶ 85.p; Mot. to Compel Ex. A at 13-14 (APC Interrog. No. 3); *id.* at 57 (AE&P RFA Nos. 6–7)); (16) inspection and maintenance of the *Deepwater Horizon* (2771 Dkt. 338 ¶ 85.q; 2771 Dkt. 420 ¶ 25(d); Mot. to Compel Ex. A at 13, 18 (APC Interrog. Nos. 1, 22–23); *id.* at 41 (MOEX Offshore Interrog. No. 18)); (17) displacement of mud (2771 Dkt. 338 ¶ 85.r; Mot. to Compel Ex. A at 16-17 (APC Interrog. No. 14); *id.* at 38 (MOEX Offshore Interrog. No. 4); *id.* at 43, 46-47 (MOEX Offshore RFP Nos. 9, 25–27).)

[7]   For example, Anadarko and MOEX allege that BP's "policies," "procedures," and "protocols" were somehow problematic.  (2771 Dkt. 338 ¶¶ 84, 85.b, 85.s, 85.t, 85.v; 2771 Dkt. 420 ¶¶ 25(a), 25(f.).)  And they seek discovery on various "procedures," "systems," "protocols," "policies," "rules," and "decisions."  (Mot. to Compel Ex. A at 16-17, 18 (APC Interrog. Nos. 14, 23); *id.* at 21 (APC RFP Nos. 11–12); *id.* at 38-39, 40 (MOEX Offshore Interrog. Nos. 4, 8, 11, 17); *id.* at 43-44, 47 (MOEX Offshore RFP Nos. 9–10, 14, 28); *id.* at

### C. The Pendency of Claims by Plaintiffs Is Not the True Impetus of Anadarko's and MOEX's Discovery and in Any Event Does Not Override the FAA Policies for Staying Discovery.

In support of the Motion to Compel, Anadarko and MOEX repeatedly assert that their discovery is "crucial," "critical," "fundamental" and "essential" to their defense against the claims by Plaintiffs.  (See Mot. to Compel at 4, 6, 9, 10, 12.)  This is not true even on the face of the discovery, and the Supreme Court has noted that courts can look to the underlying purpose of discovery in deciding whether the information is sought for use in other proceedings.  Moreover the Fifth Circuit has held that pendency of parallel claims by third parties to an arbitration contract, in multi-party maritime cases, is not a basis for overriding the FAA policy of staying arbitrable claims.

### 1. Fifth Circuit Caselaw Affirms Stays of Arbitrable Claims Even in Multi-Party Maritime Cases Involving Parallel Claims by Third Parties.

Anadarko and MOEX contend that the pendency of claims against them by non-parties to the JOA, namely the MDL Plaintiffs, overrides the FAA policy of staying arbitrable claims.  But the Fifth Circuit has already rejected the principle on which this argument is based.

In *Texaco v. AmClyde*, Texaco and McDermott were parties to an arbitration agreement. 243 F.3d 906, 908 (5th Cir. 2001).  Texaco sued AmClyde in court, and AmClyde brought in McDermott under Federal Rule 14(c), tendering McDermott to Texaco.  *Id.*  McDermott began litigating against Texaco, claiming that bringing in third parties under Rule 14(c) "trumps" the FAA, while Texaco sought to enforce its arbitration clause with McDermott.  *Id.* at 909–10.  The Fifth Circuit rejected the argument that the claims of third parties under Rule 14(c) created an "exception that would allow third parties unilaterally to nullify an arbitration clause."  *Id.* at 912.

---

14-16 (APC Interrog. Nos. 5–8, 10–11); *id.* at 39 (MOEX Offshore Interrog. No. 9); *id.* at 43-46 (MOEX Offshore RFP Nos. 5–6, 8, 12, 16–20, 23, 25).)

The Court explained that a contrary result would create an unnecessary conflict between the Federal Rules of Civil Procedure and the FAA, thwarting enforcement of the arbitration agreement:

> That result allows AmClyde, though not a party to the arbitration agreement, to override the Texaco-McDermott contract and fundamentally thwart the purposes of the FAA.  Further, to carve out a Rule 14(c) exception to the FAA could severely undermine maritime arbitration clauses, inspiring abuse and opportunistic behavior, as third parties are allowed or encouraged to do what the parties to a contract themselves are not: to put aside a mandatory arbitration provision and force litigation.

*Id.* at 910.  In reaching this decision, the Fifth Circuit cited with approval and relied on *Shipping Corp. of India v. American Bureau of Shipping*, 1989 WL 97821 (S.D.N.Y. Aug. 17, 1989), which also held that adding a third party under Rule 14(c) could not trump the FAA's policies:

> Given "the strong federal policy in favor of enforcing arbitration agreements," we are hesitant to deprive Split of the benefit of its arbitration agreement with SCI merely because ABS—as part of its third-party complaint against Split—engaged in a unilateral decision to implead Split in SCI's favor pursuant to Rule 14(c). It would be inconsistent and unfair to allow ABS to accomplish on SCI's behalf what SCI could not accomplish on its own . . .

*Id.* at *4.

Thus the Fifth Circuit has reaffirmed that the "federal policies" of the FAA are no less applicable in multi-party maritime cases.  One of the policies recognized under the FAA is the parties' right to contract for arbitration that curtails discovery.  "A hallmark of arbitration—and a necessary precursor to its efficient operation—is a limited discovery process."  *COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 276 (4th Cir. 1999); *see also Hires Parts Serv., Inc. v. NCR Corp.*, 859 F. Supp. 349, 355 (N.D. Ind. 1994) ("[P]ermitting discovery on two levels, district court level and arbitration level, is a great waste of resources and frustrates the basic purpose of the Arbitration Act which is to avoid the delay and expense of litigation[.]").

In sum, both the Fifth Circuit and other courts have held that claims asserted by a third party in litigation cannot strip a party to an arbitration clause of its rights under the FAA.  Nor can the Federal Rules of Civil Procedure trump the FAA.  Yet that is what Anadarko and MOEX argue here—claiming that because third parties are suing them, they may (i) violate express provisions of the JOA, (ii) conduct discovery under the Federal Rules of Civil Procedure, and (iii) nullify the FAA's stay on all litigation between themselves and BP.  As *AmClyde* held, neither the actions of a third party (here, the Plaintiffs) nor the Federal Rules of Civil Procedure, can overcome the strong federal policies behind the FAA.  Allowing a party to an arbitration clause to conduct discovery on a counterparty because of litigation with a third party would inspire the kind of "abuse and opportunistic behavior" that the Fifth Circuit warned about in *AmClyde*.  *See* 243 F.3d at 910.  Under controlling Fifth Circuit precedent, regardless of what third parties—like the MDL plaintiffs—do, Anadarko and MOEX are bound by their express promises to BP and the policies of the FAA not to conduct litigation against BP.

The cases cited by Anadarko and MOEX do not override this conclusion.  The moving papers rely principally on two unpublished, out-of-circuit, district court cases.  *See Fleet Business Credit, LLC v. Solarcom, LLC*, 2005 WL 1025799 (D. Md. May 2, 2005); *Major, Lindsey & Africa, LLC v. Mahn*, 2010 WL 3959609 (S.D.N.Y. Sept. 7, 2010).  Both of these cases provide a bare conclusion without citations or explanation.  Neither should be persuasive given the holdings and rationales of cases like the Fifth Circuit's decision in *AmClyde*.  In addition, the *Major Lindsey & Africa* case concerned an "unusual procedure" where the parties expressly agreed to arbitrate part of their case and litigate another part.  2010 WL 3959609 at *2–4.  Court discovery may make sense in that circumstance, but not where BP, Anadarko, and MOEX have agreed to submit the entirety of their disputes to arbitration.  Moreover, neither of

these cases addresses the situation where, as here, the intent of the requesting party is to use the discovery for arbitrable issues.  *See supra* Background Part B & C; *infra* Part II.C.2.  Better district court authority prohibits discovery on arbitrable issues despite an argued relevance to litigation with third parties, consistent with the Fifth Circuit's approach.  *See, e.g.*, *Ohio Cas. Ins. Co. v. Southland Corp.*, 1999 WL 562242 (W.D. Pa. July 30, 1999).[8]

Neither do the cases in the moving papers discuss the kinds of limitations on discovery and court process that the parties expressly agreed to in the JOA.  *See Harry F. Ortlip Co. v. George Hyman Constr. Co.*, 126 F.R.D. 494, 497 (E.D. Pa. 1989) (acceptance of an arbitration procedure means acceptance of discovery rules in that forum; permitting discovery in federal court is inconsistent with that expectation).  The JOA procedures allow for a maximum of ten document requests, and forbid depositions.  (JOA Ex. H § II.I (Boles Decl. Ex. A at 221); *id.* Ex. H § II.C (Boles Decl. Ex. A at 218).)  The arbitration panel is specifically required to actively manage the arbitration to make it more expeditious, economical, and less burdensome than litigation.  (JOA Ex. H § II.D(iii) (Boles Decl. Ex. A at 220).)  Anadarko and MOEX each "expressly covenant[ed] that it shall not resort to court remedies . . . ," contrary to the motion they are now bringing.  (JOA Ex. H § I.A(i) (Boles Decl. Ex. A at 216).)  "When a contract is

---

[8]   Anadarko and MOEX cite three additional district court cases—two of which are unpublished, and two of which are from out of circuit.  In *Texas Trading & Transportation Inc. v. Laine Construction Co.*, 1998 WL 814615 (E.D. La. Nov. 18, 1998), the court did not consider the criteria for a stay under § 3 of the FAA.  Moreover, the stay sought in that case would have applied even to the parties not subject to the arbitration agreement.  BP does not seek to stay any claims or litigation except that between the parties to the JOA arbitration clause.  And there is no indication that, in *Texas Trading*, the parties had agreed to limit discovery in arbitration.  Finally, the Court had already ruled that none of the claims were arbitrable.  The *Cornell v. Dean Witter Reynolds Inc.*, 1996 WL 76131 (S.D.N.Y. Feb. 21, 1996), decision provides no analysis or authority, and it is not even clear from the decision whether the subpoenaed discovery was relevant to the pending arbitration.  *See id.* at *1 (referring only to "the fact of" a pending arbitration).  BP does not argue that "the fact of" BP, Anadarko, and MOEX's arbitration is enough by itself to bar discovery.  Instead, it is the fact that the discovery relates to arbitrable issues.  And *In re Garlock*, 463 F. Supp. 2d 478 (S.D.N.Y. 2006), provides no additional support.  The *Garlock* court was bound by law of the case on the issue, and notes that there was no ongoing arbitrable dispute between the parties.  Furthermore, the court suggests that the parties could have contracted to limit the availability of discovery with respect to claims against third-parties—precisely what BP contracted for here by obtaining Anadarko's and MOEX's promise not to resort to court remedies.

clear and unambiguous, the court is required to enforce the contract according to its plain meaning." *Sport Tech, Inc. v. SFI Mfg., Inc.*, 838 So.2d 807, 816 n.5 (La. Ct. App. 2002) (applying Florida law and noting similarity to law of Louisiana); *see also In re Isbell Records, Inc.*, 586 F.3d 334, 337 (5th Cir. 2009) (same, applying federal law).

**2.    The Contested Discovery Is Neither "Crucial" to, Nor Motivated by, Anadarko's and MOEX's Defense Against Claims by the Plaintiffs.**

The Fifth Circuit's warning in *AmClyde*, that allowing the presence of non-contracting third parties to be a pretext to escape arbitration agreements would invite "abuse and opportunistic behavior," *see supra* Part II.C.1, is borne out by the discovery served here by Anadarko and MOEX.  In January 2011, they served a combined 49 interrogatories and 58 document requests on BP.  The interrogatories ask for exhaustive information related to BP's well design and drilling procedures from around the world over the last 10 years.  (*See* Mot. to Compel Ex. A.)  BP responded to Anadarko's and MOEX's requests on February 22 by objecting as well as providing certain substantive responses.  (Mot. to Compel Ex. C.).  These responses already go beyond any rights Anadarko and MOEX have to discovery in court. Nevertheless, on April 15, Anadarko and MOEX filed this motion to compel additional responses.  And, on April 4, 2011, Anadarko and MOEX served a new round of discovery on BP, containing 124 new requests for admission, 14 new requests for production, and 12 new interrogatories.

The Background section of this Memorandum demonstrated that the unmistakable purpose of this discovery was an offensive attack on BP to support Anadarko's and MOEX's contentions that BP's conduct excuses their contractual obligation to help fund spill costs.  *See supra* Background Parts B & C.  Indeed, the particulars of the discovery align precisely with their allegations against BP.  (*See supra* notes 6–7.)  The discovery requests read like a

complaint against BP.  For instance, Anadarko seeks discovery on wells "in which YOU directed YOUR cement contractor to proceed with a cement job when Opticem or similar modeling showed the well would have a severe gas flow problem," or "in which YOU performed a temporary abandonment procedure that differed from the one YOU actually submitted to . . . the US Minerals Management Service[.]"  (Mot. to Compel Ex. A at 13, 16 (APC Interrog. Nos. 3, 13).)  And MOEX demands information on "every policy or standard practice … that ensured that any and all of BP's decisions about drilling operations or temporary abandonment of deep sea wells did not favor cost or schedules considerations over potential risks to safety."  (*Id.* at 37–38 (MOEX Offshore Interrog. No. 3).)

In short, the discovery by Anadarko and MOEX against BP does not aim at defense against claims brought by Plaintiffs, but rather prosecuting Anadarko's and MOEX's assertion that BP's alleged conduct relieves them of their legal obligations to pay for their share of the incident-related costs and liabilities—an issue that is subject to contractual arbitration.

The Supreme Court has explained that in deciding issues related to discovery, a court can take into account the propounding party's intent.  "In deciding whether a request comes under the discovery rules, a court is not required to blind itself to the purpose for which a party seeks information.  Thus, when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery is properly denied."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 n.17 (1978).  This guideline from the Supreme Court has been applied to deny discovery of information that the propounding party intends to use in arbitration rather than litigation.  *See In re Refco Secs. Litig.*, 2011 WL 497441, *2 (S.D.N.Y. Feb. 14, 2011).  Because Anadarko and MOEX so manifestly seek this discovery with the intent of using it to prove their contentions that BP's alleged gross negligence or other conduct excuses their

obligations under their contract, the discovery should not be permitted in the face of contractual promises to arbitrate and "express[ ] covenants . . . not to resort to court remedies." *See supra* Background Part E.

Anadarko and MOEX do not credibly negate the clear proof of their intent. Their moving papers fail to quote or analyze a single one of the discovery requests to which BP has served written responses. Instead they quote from their second round of discovery, served April 4, after they received notice of BP's intent to initiate pre-arbitration procedures on April 1. (BP's responses to the second round of requests are not due until May 4.) Many of these discovery requests seek admissions that Anadarko and MOEX did not know numerous alleged facts about the Macondo Well. Again, the phrasing of these requests bristles with argument in favor of Anadarko's and MOEX's contentions of that they are relieved of their obligations under the JOA because of BP's alleged conduct.

Anadarko and MOEX repeatedly profess that these requests are "crucial," "critical," "fundamental" and "essential" to their defense against the claims by Plaintiffs. (*See* Mot. to Compel at 4, 6, 9, 10, 12.) They are not. The moving papers concede that the Plaintiffs do not allege that Anadarko or MOEX had operational control of the Macondo well. (*Id.* at 2.) The issue of what Anadarko or MOEX knew about BP's operation is a classic example of the kind of proof for which discovery is *not* needed: evidence of what they knew is uniquely within the custody and control of Anadarko and MOEX themselves.

But the focus should be the Supreme Court's admonition to consider the true purpose of this discovery. And that is clearly to inculpate BP so that Anadarko and MOEX can try to escape contractual obligations that are the subject of arbitrable claims. *See supra* Background Part C. Their purpose is not "defense against claims by the Plaintiffs." Indeed, Anadarko's and

MOEX's potential liability to the MDL plaintiffs is *increased* by claims that the Macondo well was operated negligently or grossly negligently, since as co-owners they are liable under the JOA for their working-interest share of spill-related liability.  (*See supra* Background Part A.) Anadarko and MOEX are instead trying to use MDL discovery to support their contention that BP's alleged conduct would extinguish their payment duty under the JOA.  But this is a contractual issue subject to contractual arbitration.  This is precisely the kind of "opportunistic" litigation that the Fifth Circuit in *AmClyde* said should not be permitted.

### D.     BP Has Not Engaged in a "Program of Discovery" That Justifies Anadarko's and MOEX's Discovery.

Anadarko and MOEX assert that BP has launched a "discovery program" against them and thereby conceded the relevance and propriety of their discovery.  (*See* Mot. to Compel at 3, 14.)  First, they point out that BP provided certain substantive responses to their first round of discovery requests.   But they cite no authority supporting the odd notion that providing information in response to discovery vitiates a party's rights under the FAA.  To the contrary, the Fifth Circuit has held that responding to or engaging in minimal discovery does not invalidate a party's right to arbitration.  *See Tenneco*, 770 F. 2d at 421; *General Guaranty Ins. Co. v. New Orleans General Agency, Inc.*, 427 F.2d 924, 930 (5th Cir. 1970) (allowing plaintiff to proceed with taking of depositions before seeking arbitration did not waive defendant's right to arbitrate). *See also J & S Const. Co., Inc. v. Travelers Indem. Co.*, 520 F.2d 809, 809-10 (1st Cir. 1975); *Amer. Dairy Queen Corp. v. Tantillo*, 536 F.Supp. 718, 721 (M.D. La. 1982).

Second, Anadarko and MOEX assert that BP has pursued an "extensive" discovery "program" against them.  (Mot. to Compel at 3, 14.)  This is simply incorrect.  Indeed, BP has refrained from serving any discovery on Anadarko and MOEX.  The only so-called "discovery" against Anadarko and MOEX that is identified in the moving papers is a Master List of *Potential*

Deponents, a court-ordered,[9] collective document to which a number of parties contributed names and which by its own terms was "preliminary and non-binding." (*See id.* Ex. D.) This document did not commit BP to noticing any of these depositions, and BP has not, in fact, served any deposition notices on any of the listed Anadarko or MOEX employees; half of the Anadarko and MOEX employees listed have not been noticed for a deposition by anyone else either.[10] The Master List also dates from long before BP delivered the pre-arbitration Notice of Dispute under the JOA. (*See supra* Part II.A.) Contrary to Anadarko's and MOEX's insinuation, BP has served no interrogatories, no requests for admission, no requests for production, and no deposition notices on Anadarko or MOEX. Accordingly, BP has not obtained any discovery from Anadarko or MOEX.

## CONCLUSION

Anadarko and MOEX both voluntarily agreed to be bound by the JOA and its dispute resolution procedures. The Federal Arbitration Act requires courts to enforce such agreements, and the Fifth Circuit has specifically enforced that statute in multi-party maritime cases like the one here. Anadarko's and MOEX's claims against BP, and their prosecution of discovery, conflicts with their promise to "not resort to court remedies"— particularly where BP has initiated already the arbitration process under the JOA. Therefore, this Court should deny Anadarko's and MOEX's motion to compel, and grant a stay of all litigation between BP and Anadarko and MOEX.

---

[9]   (*See* 2179 Dkt. 1346 at 44-53 (Transcript of February 11, 2011 Discovery Status Conference).)

[10]   Of the six Anadarko and MOEX employees identified by BP in the Court-ordered Master List of Potential Deponents, no deposition notices have been served on the following three witnesses: Darrell Hollek, Shinjiro Naito, and Kyoko Yamamoto. The remaining three witnesses—Paul Chandler, Nick Huch, and Robert Quitzau—have been served deposition notices by Plaintiffs' Steering Committee.

Dated:  April 27, 2011

Respectfully submitted,          By:        /s/ Martin R. Boles

Richard C. Godfrey, P.C.
(richard.godfrey@kirkland.com)
J. Andrew Langan, P.C.
(andrew.langan@kirkland.com)
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
312-862-2000 (Tel)
312-862-2200 (Fax)

and

Martin R. Boles
(martin.boles@kirkland.com)
Kirkland & Ellis LLP
333 South Hope Street, Suite 2900
Los Angeles, CA 90071
213-680-8400 (Tel)
213-680-8500 (Fax)

and

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
202-662-5985

*Attorneys for BP America Inc., BP America
Production Company, BP Exploration &
Production Inc., and BP p.l.c.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice in accordance with the procedures established in MDL 2179, on this 27th day of April, 2011.



/s/ Martin R. Boles