UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re:  Oil Spill by the Oil Rig<br>"Deepwater Horizon" in the Gulf<br>Of Mexico, on April 20, 2010<br><br>This Document applies to:<br>*All Cases* | MDL No. 2179<br><br>SECTION: J<br><br>JUDGE BARBIER<br><br>MAGISTRATE SHUSHAN |

**TRANSOCEAN'S MEMORANDUM IN SUPPORT
OF ITS MOTION FOR PROTECTIVE ORDER**

TO THE HONORABLE MAGISTRATE JUDGE SALLY SHUSHAN:

COME NOW Transocean Offshore Deepwater Drilling Inc., Transocean Holdings LLC, Transocean Deepwater Inc. and Triton Asset Leasing GmbH (collectively "Transocean") and, pursuant to Federal Rule of Civil Procedure 26(c), and file this its Memorandum in Support of Its Motion for Protective Order, seeking an Order to protect Transocean from the illegal use of the United States Coast Guard's marine casualty investigation report in these civil proceedings. In support thereof, Transocean would respectfully show this Court as follows:

**BACKGROUND**

As discussed below, a federal statute bars the use of any part of a Coast Guard investigative report in civil proceedings for any purpose. In spite of this statute, on Monday,

April 25, 2011, at the deposition of Neal Crammond, a BP employee, counsel for Halliburton questioned Mr. Crammond on various matters contained in Capt. Hung Nguyen's preliminary Coast Guard marine casualty investigation report on the BP Oil Spill.[1]  Again, on Tuesday, April 26, 2011, at the deposition of Adrian Rose, Transocean's Vice President, Special Projects, counsel for BP questioned Mr. Rose directly on various matters contained in the initial Coast Guard investigation report.  Asking witnesses about parts of the report is clearly designed as a backdoor method of introducing parts of the report which would otherwise be absolutely barred from civil proceedings by federal law.

In response to these objectionable lines of questioning, Transocean sought immediate relief from this Court.  This Court made an interim ruling that barred the use of any part of this or any Coast Guard investigative report in questioning witnesses in these proceedings.  To Transocean's knowledge, no further objectionable questioning along these lines has taken place.  However, for good cause, and because a federal statute bars the use of the Coast Guard report in these proceedings, Transocean moves at this time for a final Protective Order.  Transocean does not make this request for a Protective Order lightly.  Discovery is proceeding on a prompt schedule, with no time to repeat depositions or re-depose witnesses.  The parties have invested significant resources toward the discovery undertaken to date.  It is therefore imperative that the depositions and other discovery be conducted in conformity with the federal rules and statutes, including the statute barring the use of Coast Guard reports in discovery.

---

[1] The USCG "Report" is preliminary and remains in USCG review status.  It has not as yet been approved for final issuance by the U.S. Coast Guard.

## ANALYSIS

In civil litigation, the acceptable use of Coast Guard investigative reports has been viewed differently over time depending on the applicable law, and falls into three approximate periods: (1) the common-law period (to 1975); (2) the Federal Rules of Evidence period (1975-1996); and (3) the statutory period (1996 to present). Only the statutory period now controls, discussed *infra* at 5–11. However, for background and context purposes, Transocean will briefly discuss the reasoning which has guided the courts during the common-law and Federal Rules of Evidence periods, before enactment of a specific statute finally resolving the issue in 1996.

**A.     The Former Rule: The Common Law and Under the Federal Rules of Evidence**

Whether they contained factual findings or conclusions, "at common law the findings of a Marine Board of Investigation were not admitted in civil actions. . . ." *Am. Export Lines, Inc.*, 73 F.R.D. 454, 457 n.3 (S.D.N.Y. 1977) (citing *The Charles Morgan v. Kouns*, 115 U.S. 69 (1885)).

However, the common law rule absolutely barring the use of Coast Guard reports in civil actions lost much of its simplicity after the enactment of the Federal Rules of Evidence in 1975, particularly because of Rule 803(8), which provides:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . .
>
> **(8) Public records and reports.** Records, reports, statements, or data compilations, in any form of public offices or agencies, setting forth
>
> . . .
>
> (C) in civil actions and proceedings . . . factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

3

Following the adoption of Rule 803(8), the courts considering the use/admissibility of Coast Guard reports struggled with making a determination between statements in a report that were clearly not admissible—conclusions—and statements which might be admissible fact findings. As the court in *Am. Export Lines* observed:

> As the prologue to Rule 803 states, such reports "are not excluded by the hearsay rule, even though the declarant is available as a witness." Rule 803(8)(C) explicitly confines admission to "factual findings" contained in public records and reports which are the product of investigations. Even that apparently unambiguous language is the subject of some controversy, however.

73 F.R.D. at 456–57 (footnotes omitted).

The *Am. Export Lines* court, for example, was able to resolve the meaning of "factual findings" only by comparing 803(8) to the business records hearsay exception at 803(6)—it, unlike 803(8), allowed "opinions" and "diagnoses" to come in—and by noting that the purpose of the Coast Guard's investigatory authorization was, as it is now, not to fix subjective civil liability, but to carry out various objective, safety-oriented, public policy goals. *Id.* at 457–58.[2] "Thus, examining the possible interpretations of the term 'factual findings' against the background of statutory construction and the stated purposes of Coast Guard investigations, the Court finds that evaluative conclusions or opinions contained in the Coast Guard record and

---

[2] *Cf.* 46 C.F.R. § 4.07-1(b) ("The investigations of marine casualties and accidents and the determinations made are for the purpose of taking appropriate measures for promoting safety of life and property at sea, and are not intended to fix civil or criminal responsibility."); *id.* § 4.09-1 ("If it appears that it would tend to promote safety of life and property at sea or would be in the public interest, the Commandant may designate a Marine Board of Investigation to conduct an investigation.").

report will not be admissible at trial but that factual findings not coming within this category will be admissible." *Id.* at 458.[3]

The foregoing analysis—whether a report contained conclusions and/or opinions and/or factual findings, and thus could be used in a civil action—generally guided the lower courts until 1988. In *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153 (1988)—not a Coast Guard case—the Supreme Court found the distinction between fact findings and conclusions "arbitrary," *id.* at 167, and held that "portions of investigatory reports otherwise admissible under Rule 803(8)(C) are not inadmissible merely because they state a conclusion or opinion. As long as the conclusion is based on a factual investigation and satisfies the Rule's trustworthiness requirement," the reports could be used. *Id.* at 170. But this decision did not signal a return to the relatively uniform treatment of investigative reports that marked the pre-1975, pre-Rules of Evidence period. After *Beech Aircraft*, the lower courts either allowed the broad use of Coast Guard reports in civil proceedings so long as they were deemed trustworthy, *see, e.g.*, *Puerto Rico Ports Auth. v. M/V Manhattan Prince*, 897 F.2d 1, 8 (1st Cir. 1990), or limited their use

---

[3] As might be imagined, the distinctions between factual findings and opinions and conclusions was not always apparent. *See, e.g.*, *Smith v. Ithaca Corp.*, 612 F.2d 215, 222 (5th Cir. 1980) ("[W]e find the Coast Guard report sufficiently trustworthy to justify the district court's admission of the report's findings of fact. . . . Under *Complaint of American Export Lines*, however, evaluative conclusions and opinions of the Coast Guard Marine Board of Investigation contained in the report should not have been admitted into evidence."), *overruled by Beech Aircraft Corp. v. Rainey*, 488 U.S. 153 (1988) ("In the present action, the trial court had no difficulty in admitting as a factual finding the statement in the JAG Report that '[a]t the time of impact, the engine of 3E955 was operating but was operating at reduced power.' Surely this 'factual finding' could also be characterized as an opinion, which the investigator presumably arrived at on the basis of clues contained in the airplane wreckage.").

5

based on the Coast Guard's stated intent that the reports were not carried out so as to fix civil liability, *see, e.g.*, *In re Cleveland Tankers, Inc.*, 67 F.3d 1200, 1208 (6th Cir. 1995).[4]

## B. The Congressional Solution: Complete Prohibition of the Use of Coast Guard Investigation Reports in Civil Litigation

Recognizing that litigants, the courts and the Coast Guard were still occupied with distinctions that resulted in an unacceptable, case-by-case approach to an issue of national policy, Congress sought legislative uniformity. It framed the issue of the use of Coast Guard reports in civil litigation as follows:

> Although there are certain statutory and discovery provisions that presently protect parts of an investigation from use in civil and state criminal proceedings, **there is no statutory prohibition on the use of opinions, recommendations, deliberations, and conclusions contained in marine casualty investigation reports**. Marine casualty investigations are intended to expeditiously determine the factors that cause accidents, to determine whether there is a need for regulatory or statutory changes, to determine whether a material failure caused or contributed to the casualty, and whether there is evidence that warrants enforcement action. The amendments made by this section will ensure that the deliberative process of Coast Guard casualty investigations will be unaffected by the prospects of future litigation.

H.R. Rep. No. 106, 104th Cong., 1st Sess. (1995) (emphasis added). The section of the bill drafted by the House initially read as follows:

### 6308. Information barred in legal proceedings

(a) Notwithstanding any other provision of law, any opinion, recommendation, deliberation, or conclusion contained in a report of a marine casualty investigation conducted under section 6301 of this title with respect to the cause of, or

---

[4] Following *Beech Aircraft*, the courts still struggled with the four *Beech Aircraft* factors to be considered when evaluating the trustworthiness of investigative reports in determining whether to admit Coast Guard reports into evidence. *See Complaint of Nautilus Motor Tanker Co. Ltd.*, 862 F. Supp. 1251 (D.N.J. 1994).

6

> factors contributing to, the casualty set forth in the report of the investigation is not admissible as evidence or subject to discovery in any civil, administrative, or State criminal proceeding arising from a marine casualty, other than with the permission and consent of the Secretary of Transportation, in his or her sole discretion. Any employee of the United States or military member of the Coast Guard investigating a marine casualty or assisting in any such investigation conducted pursuant to section 6301 of this title, shall not be subject to deposition or other discovery, or otherwise testify or give information in such proceedings relevant to a marine casualty investigation, without the permission and consent of the Secretary of Transportation in his or her sole discretion. In exercising this discretion in cases where the United States is a party, the Secretary shall not withhold permission for an employee to testify solely on factual matters where the information is not available elsewhere or is not obtainable by other means. Nothing in this section prohibits the United States from calling an employee as an expert witness to testify on its behalf.
>
> (b) The information referred to in subsection (a) of this section shall not be considered an admission of liability by the United States or by any person referred to in those conclusions or statements.

H.R. 1361, 104th Cong., 1st Sess. § 414 (1995). The House understood even this language to have the broad effect of precluding use of the reports in civil litigation:

> Section 414(a) of this bill adds a new section to chapter 63 of title 46, United States Code, **to preclude the use** of certain portions of formal and informal marine casualty investigations in civil judicial, administrative, and state criminal proceedings. New section 6308 also clarifies that the restriction on the use of the portions of investigations is not an admission of liability by the United States or by a person referred to in the investigation.

H.R. Rep. No. 106, 104th Cong., 1st Sess. (1995) (emphasis added); *see also Fox v. United States*, 934 F. Supp. 1133, 1137 n.6 (N.D. Cal. 1996) ("The House of Representatives passed [sic] a bill on May 9, 1995, which would bar or limit use of Coast Guard reports investigating

7

56816:10053896

marine casualties in civil proceedings unless the Secretary of Transportation authorized the use of the report."). Yet the House's restrictive language on use became even more absolute after the Joint Conference with the Senate. The Conference Report states:

> The Conference substitute alters the House provision to **completely prohibit** a report of a Coast Guard marine casualty investigation from being admissible as evidence or subject to discovery in any civil or administrative proceeding, other than an administrative proceeding initiated by the United States. The substitute also prohibits any employee of the United States or member of the Coast Guard investigating a marine casualty from being subject to deposition or other discovery without the permission and consent of the Secretary of Transportation. The Secretary may not withhold permission for the employee or member to testify on solely factual matters where the information is not available elsewhere.

H. Conf. Rep. 854, 104th Cong., 2d Sess. 110, reprinted in 1996 U.S.C.C.A.N. 4239, 4304–05 (emphasis added). The modified language eventually made its way into the Coast Guard Authorization Act of 1996, *see* Pub. L. No. 104–324, § 313, 110 Stat. 3901, as reorganized slightly by the Coast Guard and Maritime Transportation Act of 2006, *see* Pub. L. No. 109–241, § 902, 120 Stat. 516.

C. **The Current Rule: Since 1996, the Use of Coast Guard Marine Casualty Investigation Reports Are Barred in Civil Proceedings**

Congress has expressly and absolutely forbidden the use in civil proceedings of marine casualty investigation reports conducted by the Coast Guard pursuant to Chapter 63 of the Shipping Code. As amended in 2006, the current statutory language reads:

> **§ 6308. Information barred in legal proceedings**
>
> (a) Notwithstanding any other provision of law, no part of a report of a marine casualty investigation conducted under section 6301 of this title, including findings of fact, opinions, recommendations, deliberations, or conclusions,

> shall be admissible as evidence or subject to discovery in any civil or administrative proceedings, other than an administrative proceeding initiated by the United States.

46 U.S.C. § 6308(a).

The marine casualty investigation at issue was specifically convened under Title 46, § 6301.[5] Further, in opening the investigation, Capt. Hung Nguyen reiterated that:

> As a reminder, no part of this investigation, including findings of facts, opinions, recommendation, deliberations o[r] conclusion[s], shall be admissible as evidence or subject to discovery in any civil [or] administrative proceedings other than administrative proceeding initiated by the United States.[6]

Finally, while the chapter governing the investigation of marine casualties does not define what is meant by the broad phrase "any civil . . . proceedings," Halliburton and BP are clearly attempting to use the U.S. Coast Guard report, and portions of it, in depositions which are indisputably part of these civil proceedings. Thus, the evidentiary prohibitions of § 6308 are in full effect, and the reports may not be used in depositions (or other discovery) in a backdoor attempt to fix civil liability. *See* 46 C.F.R. § 4.07-1(b).

Section 6308 has been given a broad application since its enactment, especially with regard to its interaction with other laws. As one court has reasoned:

> 2. The MCR is inadmissible as evidence for any purpose whatsoever pursuant to 46 U.S.C. 6308. *In re Crounse Corp.*, 956 F. Supp. 1384, 1390, 1998 AMC 1519 [DRO] (W.D. Tenn. 1997).

---

[5] *See* USCG/MMS Marine Board of Investigation into the Marine Casualty, Explosion, Fire, Pollution, and Sinking of Mobile Offshore Drilling Unit *Deepwater Horizon*, With Loss of Life in the Gulf of Mexico 21–22 April 2010, (May 11, 2010 session), http://www.deepwaterinvestigation.com/external/content/document/3043/621903/1/Deepwater%20Horizon%20Joint%20Investigation%20Transcript%20-20May%2011,%202010.pdf, at 6–7.

[6] *See* USCG/MMS Marine Board of Investigation into the Marine Casualty, Explosion, Fire, Pollution, and Sinking of Mobile Offshore Drilling Unit *Deepwater Horizon*, With Loss of Life in the Gulf of Mexico 21–22 April 2010, (May 26, 2010 session), http://www.deepwaterinvestigation.com/external/content/document/3043/670067/1/May%2026%20PDF.pdf, at 8.

9

3. Section 6308 of Title 46, U.S.C. provides:

> Notwithstanding any other provision of law, no part of a report of a marine casualty investigation conducted under 6301 of this title, including findings of fact, opinions, recommendations, deliberations, or conclusions, shall be admissible as evidence or subject to discovery in any civil or administrative proceedings other than an administrative proceeding initiated by the United States.

4. The regulations controlling investigations of marine casualties and the reports resulting from the investigations, i.e., the MCR, provide the underlying basis for the inadmissibility of this Coast Guard MCR. *See also* 46 C.F.R. 4.07-1(b) stating:

> The investigations of marine casualties and accidents and the determinations made are for the purpose of taking appropriate measures for promoting safety of life and property at sea, and are not intended to fix civil or criminal responsibility.

5. Also, the parties' expert witnesses cannot use the MCR as the basis for any of their opinions. While F.R.E. 703 provides that if the facts or data are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence," the language of 46 U.S.C. 6308 prohibits experts from relying on Coast Guard reports because this statute excludes such evidence "[n]otwithstanding any other provision of law."

*In re Ward Hornblower Proescher, Limitation Proceedings M/V Jack London Commodore*, 1999 A.M.C. 1612, 1615 (N.D. Cal. 1999).[7]

---

[7] Since the enactment of this statute, other courts addressing the admissibility of Coast Guard reports have held the reports (or any part thereof) inadmissible. *See In Re Complaint of Semrow*, 2011 U.S. Dist. LEXIS 34616, *14–15 (D. Conn. 2011); *Tokio Mar. & Fire Ins. Co. v. M/V FLORA*, 1998 U.S. Dist. LEXIS 13254 (E.D. La. Aug. 19, 1998); In *Re Crounse Corp.*, 956 F. Supp. 1384, 1999 A.M.C. 1519 [DRO] (W.D. Tenn. 1997); *Conagra, Inc. v. Weber Marine*, 1999 WL 705546 (E.D. La. 1999).

In other words, the "[n]otwithstanding any other provision of law" language means what it says, and § 6308 is to be applied literally. The reports, therefore, are neither admissible nor are they to be used in discovery, regardless of what any other provisions of law—e.g., evidence, civil procedure, or other statutes—might say.[8] Understanding the effect of the notwithstanding clause, no other reading of the statute is possible. By way of illustration, the United States Coast Guard is explicitly required to produce marine casualty investigation reports to the public. *See* 46 U.S.C. § 6305(b) ("Reports of investigations conducted under this part shall be made available to the public."). Yet, should anyone propose that § 6308(a) governs only admissibility of reports in civil proceedings, and not use of the reports in pretrial discovery as well, then the "subject to discovery" language in § 6308: (1) overrides and renders § 6305 meaningless by operation of the notwithstanding clause in § 6308; (2) does not override § 6305 and is itself meaningless;[9] or (3) means that Coast Guard reports may not be used in discovery in civil proceedings. Of course the Coast Guard, who would stand to gain the most from and be in the best position to argue the first interpretation, has not done so, and parties before and after 1996 have successfully sought reports under the Freedom of Information Act. The second interpretation certainly exists, but, as does the first interpretation, violates a longstanding canon of statutory construction. Only the last interpretation—Transocean's interpretation—respects the

---

[8] *Cf. Cisneros v. Alpine Ridge Grp.*, 508 U.S. 10, 18 (1993) ("As we have noted previously in construing statutes, the use of such a 'notwithstanding' clause clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section. Likewise, the Courts of Appeals generally have interpreted 'similar notwithstanding' language to supersede all other laws, stating that a clearer statement is difficult to imagine." (internal citation, quotations omitted)).

[9] "It is a basic precept of statutory construction that we should . . . not construe statutes in a way that renders words or clauses superfluous." *Wheeler v. Pilgrim's Pride Corp.*, 591 F.3d 355, 375 (5th Cir. 2009) (en banc).

11

realities of the continued public availability of Coast Guard reports and gives effect to every word of the plain language of § 6308(a) which, redacted to reinforce the point above, reads:

> [N]o part of a report . . . shall be . . . subject to discovery in any civil . . . proceeding[] . . . .

Just as the reports are not admissible in the trial phase of civil proceedings, they may not be used during the pretrial discovery phase of civil litigation.[10]

Halliburton's and BP's utilization of the preliminary Coast Guard report during their examination of witnesses this week is an impermissible, illegal use of the report. Halliburton and BP are asking questions from the report for the sole purpose of fixing civil liability. Such a use is strictly forbidden under both the letter and intent of § 6308 and the applicable CFRs. The purpose of § 6308 is made clear by the regulations governing Coast Guard § 6301 investigations. An investigation of marine casualties and accidents and the determinations made are for the purpose of taking appropriate measures promoting safety of life. *In the Matter of the Complaint of Am. Milling Co.*, 270 F. Supp. 2d 1068 (E.D. Mo. 2003). The investigations are not for the purpose of fixing civil liability. Accordingly, a Protective Order is necessary to make it clear to all parties in these civil proceedings that no person or party may question any witness from any part of the initial or final marine casualty investigation report of the United States Coast Guard.

---

[10] Finally, if they do not advance the argument above, then what BP and Halliburton seek is an exception to the statute for the use of the report in depositions. However, the statute already contains an exception for proceedings not subject to the absolute bar to admissibility and use of the reports, and only one: "an administrative proceeding initiated by the United States." It would thus violate another longstanding canon of statutory construction to read another exception into § 6308. *See United States v. Barnes*, 222 U.S. 513, 518–19 (1912) ("*Expressio unius est exclusio alterius*.").

**D.      No Right to Cross-Examine U.S. Coast Guard: An Additional Reason to Prohibit Use of the Report in Discovery**

There is an additional reason to prohibit the use of Coast Guard reports in civil proceedings such as this. Subject only to one very limited exception, members of the Coast Guard who produce the marine casualty investigation reports cannot testify or otherwise participate in discovery in civil proceedings—even if they wanted to—without the permission of the Secretary of Transportation:

> (b) Any member or employee of the Coast Guard investigating a marine casualty pursuant to section 6301 of this title shall not be subject to deposition or other discovery, or otherwise testify in such proceedings relevant to a marine casualty investigation, without the permission of the Secretary. The Secretary shall not withhold permission for such employee or member to testify, either orally or upon written questions, **on solely factual matters** at a time and place and in a manner acceptable to the Secretary **if** the information is not available elsewhere or is not obtainable by other means.

46 U.S.C. § 6308(b) (emphases added).

From the historical experience of Transocean's counsel, it is a near certainty that depositions of the persons responsible for the report will not be permitted, notwithstanding the second sentence of § 6308(b). Thus, if BP and Halliburton (or any other parties who in the future will wish to make use of the Coast Guard's report to support their own case) are able to use the report offensively in this litigation, there will be no opportunity for Transocean to cross-examine the Coast Guard personnel who prepared the report. And it is legally impossible to cross-examine the persons responsible for the report on anything beyond "factual matters," *id.*, which must be within the personal knowledge of the Coast Guard member, *see Danos & Curole Marine Contractors, Inc.*, 278 F. Supp. 2d 783, 785–86 (E.D. La. 2003) (citing the applicable

13

federal regulations, *see generally* 49 C.F.R. §§ 9.1–9.19); *see also Crosby Tugs, L.L.C.*, No. 02-1125, 2004 WL 5482859, at *2 (E.D. La. Aug. 16, 2004) (refusing to admit even the factual finding of a depth measurement from the report because the Coast Guard investigator's sounding methodology was "not currently subject to cross examination"). Thus, the objectionable line of questioning already carried out by Halliburton and BP—inquiring into whether a particular deponent agrees with conclusions and opinions in the Coast Guard report—can never be countered. For this additional, practical reason, in addition to § 6308(a)'s absolute bar, no part of the Coast Guard report should be available for use in these civil proceedings.

## CONCLUSION

By enacting § 6308, Congress was concerned that the investigative function and purposes of Coast Guard reports not be adulterated by the function and purposes of civil litigation. Congress has resolved any issue about the admissibility or use of U.S. Coast Guard reports in civil litigation in clear, absolute language: **They are not admissible and should not be used in civil proceedings as a tool to establish civil liability.** BP and Halliburton have ignored the clear congressional mandate of § 6308 and have attempted to cross-examine witnesses in the civil proceedings by specific reference to the preliminary Coast Guard report. This flouting of a federal statute should not be tolerated.

56816:10053896

Respectfully submitted,

| | |
|---|---|
| By: /s/ Steven L. Roberts<br>Steven L. Roberts (Texas, No. 17019300)<br>Rachel Giesber Clingman (Texas, No. 00784125)<br>Kent C. Sullivan (Texas, No. 19487300)<br>Teri L. Donaldson (Florida, No. 784310)<br>Sutherland Asbill & Brennan LLP<br>1001 Fannin Street, Suite 3700<br>Houston, Texas 77002<br>Telephone: (713) 470-6100<br>Facsimile: (713) 654-1301<br>Email: steven.roberts@sutherland.com,<br>rachel.clingman@sutherland.com,<br>kent.sullivan@sutherland.com,<br>teri.donaldson@sutherland.com | By: /s/ Kerry J. Miller<br>Kerry J. Miller (Louisiana, No. 24562)<br>Frilot, L.L.C.<br>1100 Poydras Street, Suite 3700<br>New Orleans, Louisiana 70163<br>Telephone: (504) 599-8169<br>Facsimile: (504) 599-8154<br>Email: kmiller@frilot.com<br>-and-<br><br>By: /s/ Edwin G. Preis, Jr.<br>Edwin G. Preis, Jr. (Louisiana, No. 10703)<br>Edward F. Kohnke, IV (Louisiana, No. 07824)<br>Preis & Roy PLC<br>102 Versailles Boulevard, Suite 400<br>Lafayette, Louisiana 70501<br>Telephone: (337) 237-6062<br>Facsimile: (337) 237-9129<br>-and-<br>601 Poydras Street, Suite 1700<br>New Orleans, Louisiana 70130<br>Telephone: (504) 581-6062<br>Facsimile: (504) 522-9129<br>Email: egp@preisroy.com, efk@preisroy.com |

Of Counsel:

John M. Elsley (Texas, No. 0591950)
Royston, Rayzor, Vickery & Williams LLP
711 Louisiana Street, Suite 500
Houston, Texas 77002
Telephone: (713) 224-8380
Facsimile: (713) 225-9945
Email: john.elsley@roystonlaw.com

Daniel O. Goforth (Texas, No. 08064000)
Goforth Geren Easterling LLP
4900 Woodway, Suite 750
Houston, Texas 77056
Telephone: (713) 650-0022
Facsimile: (713) 650-1669
Email: dangoforth@goforthlaw.com

56816:10053896

Brad D. Brian (California, No. 79001)
Allen M. Katz (California, No. 054933)
Munger Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California 90071
Telephone: (213) 683-9100
Facsimile: (213) 683-5180, (213) 683-4018
Email: brad.brian@mto.com, allen.katz@mto.com

*Counsel for Triton Asset Leasing GmbH., Transocean Holdings LLC, Transocean Offshore Deepwater Drilling Inc. and Transocean Deepwater Inc.*

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, on April 28, 2011.

/s/  Kerry J. Miller
KERRY J. MILLER

56816:10053896