UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

IN RE: OIL SPILL BY THE OIL RIG
"DEEPWATER HORIZON" IN THE
GULF OF MEXICO, ON APRIL 20, 2010

MDL NO. 2179

SECTION "J"

JUDGE BARBIER
MAG. JUDGE SHUSHAN

THIS DOCUMENT IS RELATED TO:
*Crawford v. BP, P.L.C.*, No. 2:10-CV-1540

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

PLAINTIFF DOUG CRAWFORD'S MEMORANDUM
IN OPPOSITION TO DEFENDANT M-I L.L.C.
MOTION TO DISMISS (DOC. 1589)

MAY IT PLEASE THE COURT:

The Supreme Court has held that the proper inquiry for deciding the instant FRCP 12(b) motion is whether plaintiff's complaint as to the defendant M-I is "plausible on its face," and factually specific enough to do more than merely set forth "a sheer possibility that [this] defendant has acted unlawfully." *See Ashcroft v. Igbal*, 129 S.Ct. 1937, 1949 (2009) [citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)]. A complaint which satisfies, or exceeds, this Supreme Court "*Igbal/Twombly* test" is not subject to dismissal under FRCP 12(b)(6).

In this matter, there was a catastrophic well-control failure and blow-out which led to a deadly explosion and fire aboard the Deepwater Horizon on April 20, 2010. At the time this occurred, a fundamentally critical means of avoiding such a catastrophe was through the use of the drilling muds or fluids designed to maintain pressure balance in the rising and casing between the well and the drilling vessel. The defendant M-I, using the trade name "SWACO," was the party

responsible under contract to provide all drilling fluid services to the Deepwater Horizon. *See* ¶¶13 & 22, Class Action Complaint of Doug Crawford [Doc. 1]. The role of the defendant-movant, therefore, is hardly peripheral. This company contractually assumed responsibility in an area which was key to the safety of the drilling operation; and on April 20, 2010 there occurred the very type of event which the proper use of drilling fluids is intended to prevent. The asserted case against M-I, based on the pleadings, is both plausible on its face and one in which there is more than a "sheer possibility" that the defendant will be proven legally responsible.

Interestingly, but erroneously, the defendant-movant seems to suggest in its motion that plaintiff believes "**all Defendants** share equally in responsibility and blame for his injuries." *See* Defendant Motion (Doc. 1589) at p. 4. As the Court well knows, however, the maritime law applicable to this case will require at trial a percentage fault allocation among all defendants/wrongdoers whose conduct caused or contributed to the damages sustained on April 20, 2010. At this pleadings stage, it is impossible to discern the extent of M-I's fault allocation. But the matter of fault allocation is not the question before the Court at this time; the question is whether the complaint filed by the plaintiff is factually specific enough to make a plausible case, beyond sheer possibility, that the defendant M-I as the drilling fluids contractor at the time of the catastrophe caused or contributed to the well blow-out and resulting injuries and damages suffered by Mr. Crawford.

Plaintiff has alleged that maritime law does apply to certain , but arguably not to all of, the claims presented on his behalf. *See* ¶14, Complaint of Doug Crawford (Doc. 1). Whether and to what extent state or non-maritime federal law may apply to "fill gaps" in the maritime law herein is a question neither informed by proper development of the record at this time nor necessary for the Court to resolve in this FRCP 12(b) motion. It should suffice for present purposes that the plaintiff

Crawford does not dispute M-I's position that maritime law is authoritative in regard to certain claims against this defendant.

The defendant argues that the doctrine of *res ipsa loquitur* is inapplicable because the doctrine is only available where the instrumentality causing harm was under the exclusive control of the defendant. Pretermitting whether a 12(b)(6) motion properly can challenge the applicability of legal doctrines as opposed to the existence of legal claims, the drilling fluids in this case obviously were in the exclusive control of the defendant M-I for some period of time prior to the blow-out. To the extent the alleged failure of M-I to properly manage or plan for the use of these fluids during this time is proven to be legal fault, the doctrine of *res ipsa loquitur* will apply.

Movant further contends that the plaintiff's claim of strict liability based on ultra-hazardous activity is not available under the maritime law. Even assuming this to be true, the defendant's argument again gives rise to a question of fact and law which this Court has not yet decided, and cannot fairly decide absent further development of the record. Since additional facts may be necessary to establish in discovery before this Court can discern which claims herein are covered by maritime law and which may be governed by state law, etc. M-I has chosen an inappropriate procedural vehicle to address this important question.

Finally, the defendant-movant seeks a dismissal of the plaintiff Crawford's claims of punitive damages pursuant to the authority of the Supreme Court decision in *Miles* and the Fifth Circuit decision in *Scarborough*. *In Miles*, the Court concluded that the Jones Act remedy precluded a recovery of non-pecuniary damages because such damages were not contemplated at the time the Jones Act was passed; and, in *Scarborough*, the Fifth Circuit held that this same preclusion of non-pecuniary damages recovery under the Jones Act applied in cases even where the Jones Act seaman brought negligence claims against a non-employer.

Importantly, however, a recent Supreme Court decision in the case of *Atlantic Sounding Company, Inc. v. Townsend*, 557 U.S. \_\_\_\_\_, 129 S.Ct. 2561, 174 L.Ed.2d 382 (2009) contains reasoning which may be seen as limiting Miles and casting doubt upon Scarborough. In *Townsend*, the Court addressed the question "whether an injured seaman may recover punitive damages for his employer's willful failure to pay maintenance and cure." *See Atlantic Sounding Co., Inc. v. Townsend*, 174 L.Ed.2d at 389. It answered this question affirmatively despite its prior holding in *Miles*, on the ground that, "[u]nlike the situation presented in *Miles*, both the general maritime cause of action (maintenance and cure) and the remedy (punitive damages) were well established before the passage of the Jones Act. *See* 174 L.Ed.2d at p. 397-98 [emphasis added].

Although plaintiff's maintenance and cure cause of action is not at issue as to the defendant M-I, his asserted punitive damages claim against this non-employer defendant clearly is predicated on pre-Jones Act, general maritime law. If, as the Supreme Court indicates in *Townsend*, the punitive damage remedy remains available under the general maritime law despite Miles, because it is a remedy which predates passage of the Jones Act, then the reasoning of *Miles* should not be extended to preclude punitive damage recovery by a seaman pursuing a general maritime law damage remedy against non-employer defendants.[1] It is respectfully submitted that the Fifth Circuit holding in Scarborough simply cannot sustain scrutiny under the rationale of Townsend.

The PSC has filed opposition memoranda to other defendant motions under FRCP 12(b)(6) in this matter, additionally arguing that punitive damages should not fall within the prohibitive ambit of the *Miles* holding because Miles is limited to the non-pecuniary damages. Plaintiff agrees, and

---

[1] The Court should note that another district judge has concluded in light of *Townsend* that a Jones Act seaman's claim for punitive damages based on unseaworthiness and the general maritime law is not precluded by *Miles* and its progeny. *See Wagner v. Kona Blue Water Farms, LLC*, 2010 WL 3566730 (D. Hawaii 2010).

respectfully incorporates and adopts the entirety of this argument made by the PSC on behalf of plaintiffs. The logic of *Miles* is that non-pecuniary damages are disallowed under the Jones Act because at the time the Jones Act was enacted Congress did not contemplate such damages as available to compensate victims. Non-pecuniary damages, of course, by definition are compensatory in nature; they represent the law's compensation for intangible, as opposed to economic, loss. Punitive damages, on the other hand, are by definition not compensatory in nature, but intended to penalize the defendant and deter future, similar misconduct by others. As one scholar has observed, the "pecuniary versus non-pecuniary" distinction (so fundamental in Miles) has "no useful applicability to the punitive damages debate." David Robertson, "Punitive Damages in American Maritime Law," 28 J. Mar. L. & Comm. 73, 164 (1997).

For the foregoing reasons, plaintiff Doug Crawford respectfully submits that the instant motion should be denied.

Respectfully submitted,

GAINSBURGH, BENJAMIN, DAVID, MEUNIER
& WARSHAUER, L.L.C.

BY: s/Gerald E. Meunier
**GERALD E. MEUNIER, #9471**
**IRVING J. WARSHAUER, #13252**
**STEVAN C. DITTMAN, #16888**
**MICHAEL J. ECUYER, #23050**
**JUSTIN I. WOODS, #24713**
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:   504/522-2304
Facsimile:   504/528-9973
gmeunier@gainsben.com
iwarshauer@gainsben.com
sdittman@gainsben.com
mecuyer@gainsben.com
jwoods@gainsben.com

LAWRENCE C. GUNN, JR.
Mississippi Bar Roll No. 5075
Post Office Box 1588
Hattiesburg, Mississippi 39403-1588
Telephone: 601/544-6771
Facsimile: 601/544-6773
larry@lcgunn.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2011, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to all counsel of record who are non-CM/ECF participants.

s/Gerald E. Meunier
GERALD E. MEUNIER, #9471