UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 <br><br>THIS DOCUMENT RELATES TO: <br><br>*ALL CASES IN PLEADING BUNDLE SECTION III.B(3)* | MDL NO. 2179 <br><br> SECTION: J <br><br> JUDGE BARBIER <br> MAG. JUDGE SHUSHAN |

## REPLY MEMORANDUM IN SUPPORT OF O'BRIEN'S RESPONSE MANAGEMENT, INC. AND NATIONAL RESPONSE CORPORATION'S MOTION TO DISMISS THE B3 BUNDLE MASTER COMPLAINT

## TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................................. 1

    I.    THE PSC GROSSLY MISCHARACTERIZES THE DERIVATIVE CLEAN WATER ACT IMMUNITY ARGUMENT ADVANCED BY O'BRIEN'S AND NRC .................................................................................... 3

    II.   THE PSC FAILS TO OPPOSE THE UNIQUE IMPLIED CONFLICT PREEMPTION ARGUMENT MADE BY O'BRIEN'S AND NRC .................... 8

    III.  THE PSC'S RESPONSES TO THE ALTERNATIVE CLAIM-SPECIFIC ARGUMENTS MADE BY O'BRIEN'S AND NRC ARE DEFICIENT FOR SEVERAL REASONS ........................................................................... 10

CONCLUSION ..................................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009) .................................................................................................... 10

*Augman v. Seacor Marine L.L.C.*,
    No. 07-1508, 2007 WL 2726064 (E.D. La. Sept. 17, 2007) ........................................ 12

*Bell Atl. Corp. v. Twombly*,
    50 U.S. 544 (2007) ........................................................................................................ 10

*Beanal v. Freeport-McMoRan, Inc.*,
    969 F. Supp. 362 (E.D. La. 1997) ................................................................................. 10

*Bowden ex rel. Bowden v. Wal-Mart Stores, Inc.*,
    124 F. Supp. 2d 1228 (M.D. Ala. 2000) ....................................................................... 10

*Carden v. Gen. Motors Corp.*,
    509 F.3d 227 (5th Cir. 2007) ........................................................................................... 8

*Fidelity Fed. Sav. & Loan Ass'n v. De la Cuesta*,
    458 U.S. 141 (1982) ..................................................................................................... 8, 9

*Hines v. Davidowitz*,
    312 U.S. 52 (1941) ........................................................................................................ 8, 9

*In re Exxon Valdez*,
    104 F.3d 1196 (9th Cir. 1997) ....................................................................................... 11

*In re Katrina Canal Breaches Consol. Litig.*,
    No. 05-4182, 2007 WL 4293636 (E.D. La. Dec. 6, 2007) .......................................... 10

*In re Oswego Barge Corp.*,
    664 F.2d 327 (2d Cir. 1981) ............................................................................................ 8

*In re Prempro Prod. Liab. Litig.*,
    230 F.R.D. 555 (E.D. Ark. 2005) ................................................................................. 12

*In re World Trade Ctr. Disaster Site Litig.*,
    521 F.3d 169 (2d Cir. 2008) ....................................................................................... 2, 4

*Kadan v. Am. Contractors Ins. Co.*,
    No. 08-695, 2008 WL 5137259 (E.D. La. Dec. 5, 2008) ............................................... 5

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Ramming v. United States*,
   281 F.3d 158 (5th Cir. 2001) ............................................................................................... 3

*S. Pacific Co. v. Jensen*,
   244 U.S. 205 (1917) ........................................................................................................... 12

*Williamson v. Tucker*,
   645 F.3d 404 (5th Cir. 1981) ............................................................................................... 3

*Woodham v. Am. Cystoscope Co.*,
   335 F.2d 551 (5th Cir. 1964) ............................................................................................. 10

*Yearsley v. W.A. Ross Construction*,
   309 U.S. 18 (1940) .............................................................................................................. 4

### STATE CASES

*Landry v. Avondale Indus., Inc.*,
   864 So. 2d 117 (La. 2003) ................................................................................................ 12

*Petito v. A.H. Robins*,
   750 So. 2d 103 (Fla. Dist. Ct. App. 1999) ........................................................................ 12

### FEDERAL STATUTES & REGULATIONS

28 U.S.C. § 2680(a) ..................................................................................................................... 5

33 U.S.C. § 1321(c)(4) ................................................................................................................. 7

33 U.S.C. § 1321(j)(5)(H) ............................................................................................................ 6

33 U.S.C. § 1321(j)(8) .......................................................................................... 1, 3, 5, 6, 7

40 C.F.R. § 300.322(b) ................................................................................................................ 9

### OTHER AUTHORITIES

RESTATEMENT (SECOND) OF TORTS § 821C cmt. b ................................................................... 11

O'Brien's Response Management, Inc. ("O'Brien's") and National Response Corporation ("NRC") respectfully submit the following Reply Memorandum in Support of their Motion to Dismiss the B3 Bundle Master Complaint.[1]

## INTRODUCTION

The Plaintiffs Steering Committee's ("PSC") Omnibus Memorandum in Opposition to Motions to Dismiss Bundle B3 Master Complaint (hereinafter "PSC Opp.") (Rec. Doc. 1815) offers no sound reason why this Court should not follow the Second Circuit in recognizing the availability of broad derivative federal immunity for private entities such as O'Brien's and NRC that act under the authority, direction, and ultimate control of the federal government in responding to national crises. Indeed, it is abundantly clear that O'Brien's and NRC are entitled to derivative federal immunity under the Clean Water Act ("CWA"), 33 U.S.C. § 1321(j)(8), given the federal government's extensive control over their response activities in cleaning up the first ever "Spill of National Significance."

In a transparent attempt to cover up the multiple legal deficiencies in the B3 Bundle Master Complaint, the PSC grossly mischaracterizes O'Brien's and NRC's derivative CWA immunity argument. The PSC also completely overlooks the fact that, just like O'Brien's and

---

[1] After O'Brien's and NRC filed their Motion to Dismiss (Rec. Doc. 1388), the PSC sought and obtained leave of Court to amend the B3 Bundle Master Complaint. *See* Mar. 30, 2011 Order (Rec. Doc. 1811). That Order was entered the same day the PSC's motion for leave was filed, precluding O'Brien's and NRC from filing any opposition. Moreover, that Order provided that "an answer or other response to the original B3 Master Complaint . . . shall also be deemed to answer or otherwise respond to the First Amended B3 Master Complaint." *Id.* The arguments set forth in the Memorandum in Support of O'Brien's and NRC's Motion to Dismiss (Rec. Doc. 1388-1) (hereinafter, "Mot.") apply with equal force to the claims in the First Amended B3 Bundle Master Complaint. Accordingly, although O'Brien's and NRC will continue to refer to the B3 Bundle Master Complaint in this Reply Memorandum for consistency, O'Brien's and NRC respectfully request that in granting their motion, the Court dismiss with prejudice all claims asserted against them in *both* the B3 Bundle Master Complaint (Rec. Doc. 881) and First Amended B3 Bundle Master Complaint (Rec. Doc. 1812). But in the event that all claims are not dismissed, O'Brien's and NRC specifically preserve all of their rights with respect to the new "Twelfth Claim for Relief" that was added in the First Amended B3 Bundle Master Complaint after the instant motion to dismiss was filed.

NRC here, the defendants in the *World Trade Center* litigation were <u>not</u> government contractors. As the Second Circuit implicitly recognized, the absence of a contract with the government is irrelevant in the disaster-response scenario because of the pervasive federal control exerted over private entities responding to such disasters.

Moreover, the PSC conflates the discrete implied preemption argument made by O'Brien's and NRC with other defendants' arguments and, thus, largely fails to respond to the argument that the claims asserted against O'Brien's and NRC in the B3 Bundle Master Complaint are impliedly preempted. Indeed, when it comes to implied preemption, the PSC's omnibus opposition focuses almost exclusively on the arguments advanced by Nalco. But the implied preemption argument made by O'Brien's and NRC is different and focuses on the extensive day-to-day authority, direction, and control exerted by the federal government pursuant to the federal statutory and regulatory schemes for responding to oil spills. Accordingly, because the PSC has failed to oppose this discrete argument, and because the claims asserted against O'Brien's and NRC are in fact preempted, the Court should dismiss all claims against O'Brien's and NRC for this alternative reason.

Finally, the PSC's response to the claim-specific alternative arguments advanced by O'Brien's and NRC are either unpersuasive or entirely non-existent (*i.e.*, the PSC doesn't even respond to several of these alternative arguments). Accordingly, in the event that the Court does not dismiss all claims asserted against O'Brien's and NRC on immunity and/or preemption grounds, several of the claims in the B3 Bundle Master Complaint should nevertheless be dismissed on various alternative grounds as set forth in the motion to dismiss.

Although the PSC's shotgun approach to briefing may make it easier to respond to the arguments advanced by O'Brien's and NRC, it is not sufficient to withstand the motion to

dismiss. Notwithstanding the confusion that the PSC has attempted to create, all of the claims in the B3 Bundle Master Complaint against O'Brien's and NRC should be dismissed for lack of subject matter jurisdiction and/or failure to state a claim.

I. **THE PSC GROSSLY MISCHARACTERIZES THE DERIVATIVE CLEAN WATER ACT IMMUNITY ARGUMENT ADVANCED BY O'BRIEN'S AND NRC**

The PSC summarizes its response to O'Brien's and NRC's derivative CWA immunity argument as follows: "In short, Defendants are not the federal government, they are not government contractors, and they are not acting under the control of the federal government." PSC Opp. at 21. The first two points are absolutely irrelevant and, in light of the extensive statutory scheme described in O'Brien's and NRC's motion and the post-spill federal reports discussing how that scheme was implemented in this disaster (all of which may be judicially noticed by the Court), there can be no genuine dispute that O'Brien's and NRC were acting under the authorization, direction, and control of the federal government.[2] Indeed, as described below, the PSC's blatant mischaracterization of O'Brien's and NRC's arguments and supporting authorities is troubling. Regardless, because O'Brien's and NRC share derivatively in the federal government's broad immunity under 33 U.S.C. § 1321(j)(8) in the context of the *Deepwater Horizon* spill, all of the claims asserted against O'Brien's and NRC in the B3 Bundle Master Complaint should be dismissed.

---

[2] As O'Brien's and NRC noted in their motion, the existence of derivative federal immunity will divest the Court of subject matter jurisdiction and, therefore, in resolving O'Brien's and NRC's Rule 12(b)(1) arguments, the Court "is empowered to consider matters of fact which may be in dispute." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Williamson v. Tucker*, 645 F.3d 404, 413 (5th Cir. 1981)). Thus, the Court need not be deterred by the PSC's repeated suggestion that "fact issues" should prevent resolution of the immunity question at this stage of the litigation. Moreover, the PSC's attempt to manufacture a factual dispute about whether or not the federal government was in charge of the clean-up operations is not genuine and, thus, the Court need not reach far at all to resolve that "dispute." The federal government's own post-spill reports, which were discussed at length in O'Brien's and NRC's motion, confirm this basic fact. Notably, the PSC fails to mention those reports in its omnibus opposition.

3

First, for obvious reasons, O'Brien's and NRC did not argue that they "are" the federal government. Rather, as private parties that were acting under the direction and control of the federal government in responding to the *Deepwater Horizon* spill, O'Brien's and NRC are entitled to *derivative* federal immunity—a concept established by the United States Supreme Court over seventy years ago. *See Yearsley v. W.A. Ross Construction*, 309 U.S. 18 (1940). Thus, the PSC's first response is simply a red herring.

Second, the PSC argues that O'Brien's and NRC are not entitled to derivative federal immunity because "they are not government contractors." But this ignores the central argument advanced by O'Brien's and NRC, namely that this Court should follow the United States Court of Appeals for the Second Circuit in recognizing the availability of *derivative* federal immunity for private entities in the disaster-relief context, even if those entities are not government contractors. *See In re World Trade Ctr. Disaster Site Litig.*, 521 F.3d 169, 197 (2d Cir. 2008) ("[T]he rationale for the government contractor defense would extend to the disaster relief context [where responders may not have contractual relationships with the federal government] due to the unique federal interest in coordinating federal disaster assistance and streamlining the management of large-scale disaster recovery projects.").[3] The Second Circuit recognized such derivative immunity under the Stafford Act despite the fact that the defendants in the *World Trade Center* litigation were not government contractors.[4] As O'Brien's and NRC explained in their motion, the Second Circuit's Stafford Act reasoning applies with even greater force in this

---

[3] The PSC's reliance on the *district court*'s holding in the *World Trade Center* litigation that "Stafford Act immunity not be extended to private parties" is at best misplaced (and at worst disingenuous) because that aspect of the district court's opinion was reversed by the Second Circuit. *See* PSC Opp. at 23. Similarly, the PSC's reliance on the *district court*'s policy views is also questionable in light of the Second Circuit's holding. *See* PSC Opp. at 25-26.

[4] Thus, the PSC's statements that "[d]efendants provide no legal support or authority for their argument" and that "[t]he authorities provided support only the theory of derivative immunity for government contractors" are simply wrong. *See* PSC Opp. at 23.

4

case due to the "uniquely federal interest," *Kadan v. Am. Contractors Ins. Co.*, No. 08-695, 2008 WL 5137259, at *2 (E.D. La. Dec. 5, 2008) (internal quotations omitted), in ensuring effective and efficient responses to significant oil spills, as reflected in and required by the CWA and NCP.

Third, as the PSC concedes in the B3 Bundle Master Complaint, there can be no doubt that, in performing their functions and assisting with the clean up of the *Deepwater Horizon* oil spill, O'Brien's and NRC acted pursuant to the authorization, direction, and ultimate control of the federal government. *See* B3 Bundle Master Complaint ¶ 92 ("The U.S. Coast Guard is responsible for . . . responding to oil spills and supervising and/or coordinating response actions."); *id.* ¶ 109 ("The Coast Guard's Federal On-Scene Coordinator . . . must approve BP's requests to use chemical dispersants."); *see also* Mot. at 3-7. Given the PSC's concession and the undisputable nature of this fact, O'Brien's and NRC are entitled to derivative immunity under § 1321(j)(8).

The PSC confuses this straightforward legal analysis by improperly attempting to inject the Federal Tort Claims Act "discretionary function" immunity framework into O'Brien's and NRC's derivative CWA immunity argument. But as explained in O'Brien's and NRC's motion, these are separate and distinct types of immunity governed by different legal standards. Moreover, unlike the federal government's "discretionary function" immunity under the Federal Tort Claims Act, 28 U.S.C. § 2680(a), the CWA provides <u>absolute immunity</u> to the federal government in connection with oil spill response efforts. *See* Mot. at 15. Accordingly, questions surrounding the discretionary function exception have no relevance to the availability of derivative immunity under 33 U.S.C. § 1321(j)(8).[5]

---

[5] As explained in the motion, however, O'Brien's and NRC are also entitled to derivative discretionary function immunity under the Federal Tort Claims Act, 28 U.S.C. § 2680(a). *See* Mot. at 16-18. The

5

Without citing any authority, the PSC also brazenly pronounces that the federal government itself would not enjoy immunity under § 1321(j)(8) in this case because, according to the PSC, that provision only provides immunity for claims based on "acts or omissions related to Clean Water Act required response plans." PSC Opp. at 24. Ultimately, this is just another attempt by the PSC to confuse the issues. Indeed, as O'Brien's and NRC have demonstrated, the federal government's day-to-day management of the response to the *Deepwater Horizon* oil spill consisted of, by definition, "actions or omissions relating to any response plan required by this section." 33 U.S.C. § 1321(j)(8). In short, because the federal government enjoys broad immunity for its actions or omissions relating to its response to the *Deepwater Horizon* spill, and because its actions included approving, directing, and ultimately controlling the activities of O'Brien's and NRC in responding to the *Deepwater Horizon* spill, the B3 Bundle Master Complaint should be dismissed in its entirety as against these defendants because O'Brien's and NRC share derivatively in the federal government's absolute immunity under the CWA.

The PSC's argument that the availability of derivative immunity for O'Brien's and NRC under § 1321(j)(8) would render two other provisions of OPA superfluous misses the mark as well. *See* PSC Opp. at 24-25. The first "other provision" referenced by the PSC, 33 U.S.C. § 1321(j)(5)(H), relates to the liability of "responsible parties" under OPA for oil spills and is not implicated in any way. Neither O'Brien's nor NRC are "responsible parties" under OPA and, in any event, the First Amended B3 Bundle Master Complaint makes clear that there are no OPA claims being asserted in connection with the clean up. Thus, the limitation described in § 1321(j)(5)(H) is completely irrelevant here. And, as explained in O'Brien's and NRC's motion,

---

PSC's suggestion that the federal officials implementing the CWA and NCP in the wake of the *Deepwater Horizon* spill were not exercising discretion in determining *how* the clean-up operations would be conducted each day is simply not credible on its face. *See* PSC Opp. at 33-34.

6

the second "other provision" referenced by the PSC, 33 U.S.C. § 1321(c)(4)(A), is not "superfluous." Indeed, in the context of the *Deepwater Horizon* spill—the first oil spill to ever be designated a Spill of National Significance—broad derivative federal immunity is available under § 1321(j)(8) *for all claims* due to the unprecedented involvement of the federal government in authorizing, directing, and controlling the massive response to this national crisis, and merely *complements* the more narrow responder immunity set forth in § 1321(c)(4)(A). *See* Mot. at 15 n.26.[6]

Finally, the PSC suggests that its request for injunctive relief in the B3 Bundle Master Complaint somehow renders inapplicable the broad immunity provided by § 1321(j)(8). *See* PSC Opp. at 23. As an initial matter, the PSC's requests for injunctions "to abate the public nuisance created by Defendants," "to abate the unwanted offensive conduct by Defendants," and "to require monitoring of air and water" were improper when the B3 Bundle Master Complaint was filed, and remain moot to this day, because the conduct complained of has already taken place. Moreover, the claims in the B3 Bundle Master Complaint principally seek damages for alleged personal injuries. Regardless of the PSC's efforts to mischaracterize their own complaint, these facially deficient requests for injunctive relief do not remove the availability of derivative federal immunity under 33 U.S.C. § 1321(j)(8) for all claims for damages in the B3 Bundle Master Complaint. At a bare minimum then, all claims for damages contained in the B3 Bundle Master Complaint should be dismissed.

---

[6] In fact, the PSC itself later argues that § 1321(c)(4)(A) has no applicability to the claims asserted in the B3 Bundle Master Complaint because those claims do not seek "removal costs" or "damages" as defined by OPA. *See* PSC Opp. at 35-36. The PSC cannot have it both ways.

7

## II. THE PSC FAILS TO OPPOSE THE UNIQUE IMPLIED CONFLICT PREEMPTION ARGUMENT MADE BY O'BRIEN'S AND NRC

Although the PSC responds to the implied preemption arguments advanced by Nalco, *see* PSC Opp. at 4-9, the PSC entirely fails to respond to the unique implied preemption argument made by O'Brien's and NRC. As set forth in the motion to dismiss, the claims asserted against O'Brien's and NRC in the B3 Bundle Master Complaint are subject to dismissal because they conflict with the comprehensive federal response scheme set forth in the CWA, OPA, and the NCP because O'Brien's and NRC were compelled by federal law to obey the daily directives issued by the Federal On-Scene Coordinator in responding to the *Deepwater Horizon* oil spill— the only spill ever to be designated a Spill of National Significance. *See* Mot. at 18-20.

Under the Supremacy Clause of the U.S. Constitution, federal law impliedly preempts claims made under both state law and the general maritime law when such state or maritime law "conflicts with federal law or its purpose." *Carden v. Gen. Motors Corp.*, 509 F.3d 227, 230 (5th Cir. 2007) (discussing preemption of state law); *In re Oswego Barge Corp.*, 664 F.2d 327, 337-38 (2d Cir. 1981) ("Though judge-made maritime law has thus been less easily displaced by statutory preemption than non-maritime federal common law, preemption of maritime law has occurred both as to prior judge-made law and the authority to fashion new law."). Such a conflict exists either "when compliance with both federal and state regulations is a physical impossibility," *Fidelity Fed. Sav. & Loan Ass'n v. De la Cuesta*, 458 U.S. 141, 153 (1982), or when a plaintiff's claims "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941). Both circumstances exist in this case.

First, to the extent that the B3 Bundle Master Complaint alleges that the actions of O'Brien's and NRC in responding to the *Deepwater Horizon* spill violated state or maritime law,

8

it would have been physically impossible for O'Brien's and NRC to have complied with such laws without violating the CWA, OPA, and the NCP.  *See De la Cuesta*, 458 U.S. at 153.  As explained in O'Brien's and NRC's motion, federal law provides that the Federal On-Scene Coordinator "shall direct all federal, state, or private actions to remove the discharge." 40 C.F.R. § 300.322(b).  Thus, federal law imposed a duty on O'Brien's and NRC to obey the directives of the Federal On-Scene Coordinator and National Incident Commander.  If O'Brien's and NRC had refused to obey such federal directives in order to conform to their purported duties under state or maritime law, they would have violated the CWA, OPA, and the NCP.

Second, the claims against O'Brien's and NRC in the B3 Bundle Master Complaint "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in promoting an effective and efficient federal response to significant oil spills. *Hines*, 312 U.S. at 67.  Indeed, the B3 Bundle Master Complaint seeks to substitute the decision of this Court about appropriate response activities for the expert judgment of the Coast Guard and the other federal agencies that authorized, directed, and controlled the actions of O'Brien's and NRC in responding to the *Deepwater Horizon* spill.  As described in detail in O'Brien's and NRC's motion, the CWA, OPA, and the NCP set forth a comprehensive regime that squarely placed the responsibility for the clean-up effort upon the federal government. *See* Mot. at 3-6. By second-guessing the federal government's decisions and careful balancing of the public interest in responding to the *Deepwater Horizon* spill, the claims asserted against O'Brien's and NRC in the B3 Bundle Master Complaint are clear "obstacles" to the purposes and objectives of the CWA, OPA, and the NCP.

Accordingly, for these reasons, and in light of the PSC's failure to oppose these arguments, all of the claims asserted against O'Brien's and NRC in the B3 Bundle Master

9

Complaint should be dismissed pursuant to the doctrine of implied conflict preemption.

### III. THE PSC'S RESPONSES TO O'BRIEN'S AND NRC'S CLAIM-SPECIFIC ALTERNATIVE ARGUMENTS ARE DEFICIENT FOR SEVERAL REASONS

Finally, O'Brien's and NRC respond to the PSC's arguments concerning the alternative claim-specific bases for dismissal set forth in the motion to dismiss and note that the PSC does not even oppose some of those alternative claim-specific bases for dismissal.[7] As explained in the motion, however, the Court need not reach these various alternative arguments because all of the claims that have been asserted against O'Brien's and NRC in the B3 Bundle Master Complaint should be dismissed on derivative immunity and/or preemption grounds. That said, if the Court does reach any of the claim-specific alternative arguments, the PSC's responses are deficient for several reasons.

First, the PSC's attempt to clarify its negligence *per se* claim by specifying in its brief which particular statutes were allegedly violated not only fails to cure the defects of this claim, but confirms that the claim fails to satisfy the minimum pleading requirements established in *Twombly* and *Iqbal*. *See* PSC Opp. at 39-41. Indeed, it is axiomatic that a plaintiff cannot amend his or her complaint "by briefs submitted in opposition to the motion to dismiss." *Beanal v. Freeport-McMoRan, Inc.*, 969 F. Supp. 362, 367 (E.D. La. 1997) (noting that the plaintiff's "opposition memorandum presented summaries of the allegations which varied slightly from

---

[7] The Fifth Circuit has stated that a proper sanction for failure to respond to a motion to dismiss is for the district court to decide the motion solely on the papers before it. *See, e.g., Woodham v. Am. Cystoscope Co.*, 335 F.2d 551, 556-57 (5th Cir. 1964) ("Should one of the parties be at fault in failing to file his brief . . . the trial judge would be justified in deciding the motion on the papers before him. That seems a proper sanction, when the attorneys know or should be charged with knowing the rules."); *see also, e.g., In re Katrina Canal Breaches Consol. Litig.*, No. 05-4182, 2007 WL 4293636, at *1 (E.D. La. Dec. 6, 2007) (granting defendants' motion for summary judgment because plaintiffs filed no opposition and the motion "appear[ed] to have merit"); *Bowden ex rel. Bowden v. Wal-Mart Stores, Inc.*, 124 F. Supp. 2d 1228, 1236 (M.D. Ala. 2000) ("It is not for the court to manufacture arguments on Plaintiff's behalf.").

those contained in his amended complaint which the court disregards"). Accordingly, the negligence *per se* claim must be dismissed.

Second, the PSC admits that plaintiffs cannot pursue a public nuisance claim under maritime law or federal common law. *See* PSC Opp. at 18. But the PSC's reliance on state law is misplaced because, as explained in the motion to dismiss, the B3 Bundle Master Complaint fails to allege that plaintiffs have suffered a "special damage . . . different from that which is common to all." *See* Mot. at 23-25. Indeed, at most, the B3 Bundle Master Complaint alleges that plaintiffs have suffered damages different in *degree* from the general public, but not different in *kind*. This is insufficient to state a claim for public nuisance and, therefore, the nuisance claim must be dismissed. *See In re Exxon Valdez*, 104 F.3d 1196, 1198 (9th Cir. 1997) (rejecting public nuisance claim even though "oil spill may have affected [plaintiffs] more severely than other members of the public" because, "though potentially different in degree," the plaintiffs' alleged injury "was not different in kind"); *see also* RESTATEMENT (SECOND) OF TORTS § 821C cmt. b ("It is not enough that [a plaintiff] has suffered the same kind of harm or interference but to a greater extent or degree [than the general public].").

Third, the PSC argues that the Court may "fill in the gaps" of maritime law with Florida's law of medical monitoring because Florida medical monitoring law is "representative of the law of many states." *See* PSC Opp. at 17-18.[8] However, the PSC only identifies <u>eight</u> states that purportedly do not require manifest physical injury for recovery of medical monitoring costs. Even assuming that the PSC's characterizations of those eight states' laws are accurate, the fact

---

[8] Astoundingly, notwithstanding the fact that the Ninth Claim for Relief in the B3 Bundle Master Complaint is only brought on behalf of "Florida Plaintiffs," *see* B3 Bundle Master Complaint ¶¶ 278-88, the PSC now argues that the Court should apply Florida's medical monitoring law to *all* plaintiffs' claims, regardless of "whether Plaintiffs who are victims of the BP oil spill reside in Florida or not," *see* PSC Opp. at 18.

11

remains that "medical monitoring is not treated uniformly throughout the United States." *In re Prempro Prod. Liab. Litig.*, 230 F.R.D. 555, 569 (E.D. Ark. 2005). And perhaps even more importantly, there are significant discrepancies among the Gulf states' approaches to medical monitoring. For example, while Florida permits medical monitoring relief when a plaintiff has yet to develop any identifiable physical injuries, *see Petito v. A.H. Robins*, 750 So. 2d 103 (Fla. Dist. Ct. App. 1999), Louisiana only allows medical monitoring relief when said relief is "directly related to a manifest physical or mental injury or disease," *Landry v. Avondale Indus., Inc.*, 864 So. 2d 117, 123 n.2 (La. 2003). Accordingly, because using Florida state law on medical monitoring to supplement the general maritime law in this litigation would undermine the "strong federal maritime policy favoring national uniformity," *Augman v. Seacor Marine L.L.C.*, No. 07-1508, 2007 WL 2726064 (E.D. La. Sept. 17, 2007), and run afoul of the third limitation articulated in *Southern Pacific Co. v. Jensen*, 244 U.S. 205 (1917), the Florida medical monitoring claim in the B3 Bundle Master Complaint should be dismissed.

Fourth, because the PSC does not oppose the arguments made in relation to (i) the claim under the Florida Pollutant Discharge Prevention and Control Act and (ii) for any claims for economic losses absent personal injury or physical damage to a proprietary interest, and because those claims have been abandoned in the First Amended B3 Bundle Master Complaint, O'Brien's and NRC ask that those claims be dismissed with prejudice for the reasons set forth in the motion to dismiss. *See* Mot. at 27-29.

Finally, because the PSC did not respond to O'Brien's and NRC's arguments seeking dismissal of the PSC's request for punitive damages, and because those arguments are well founded, the request for punitive damages contained in the B3 Bundle Master Complaint should be dismissed for the reasons set forth in the motion to dismiss. *See* Mot. at 29-33.

**CONCLUSION**

For the reasons set forth in the motion to dismiss, and as further explained above, O'Brien's and NRC respectfully request that all of the claims asserted against them in the B3 Bundle Master Complaint be dismissed with prejudice.

Dated: April 29, 2011.

Respectfully submitted,

/s/ Michael J. Lyle
Michael J. Lyle (DC Bar #475078, IL Bar #6199227)
Eric C. Lyttle (DC Bar #482856)
WEIL, GOTSHAL & MANGES LLP
1300 Eye Street, NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 682-7157
Facsimile: (202) 857-0940

Theodore E. Tsekerides (NY Bar #2609642)
Jeremy T. Grabill (NY Bar #4501755)
Sylvia E. Simson (NY Bar #4803342)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8218
Facsimile: (212) 310-8007

Patrick E. O'Keefe (LA Bar #21086)
Philip S. Brooks, Jr. (LA Bar #21501)
MONTGOMERY, BARNETT, BROWN, REED,
    HAMMOND & MINTZ LLP
3300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-3300
Telephone: (504) 585-3200
Facsimile: (504) 585-7688

*Attorneys for O'Brien's Response Management, Inc.*

Michael J. Lyle (DC Bar #475078, IL Bar #6199227)
Eric C. Lyttle (DC Bar #482856)
WEIL, GOTSHAL & MANGES LLP
1300 Eye Street, NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 682-7157
Facsimile: (202) 857-0940

Theodore E. Tsekerides (NY Bar #2609642)
Jeremy T. Grabill (NY Bar #4501755)
Sylvia E. Simson (NY Bar #4803342)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone: (212) 310-8218
Facsimile: (212) 310-8007

*Attorneys for National Response Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Reply Memorandum in Support of O'Brien's Response Management, Inc. and National Response Corporation's Motion to Dismiss the B3 Bundle Master Complaint has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 29th day of April, 2011.

/s/ Michael J. Lyle
Michael J. Lyle