# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig | * | MDL No. 2179 |
| "Deepwater Horizon" in the Gulf | * | |
| of Mexico, on April 20, 2010 | * | SECTION "J" |
| | * | JUDGE BARBIER |
| This Document Relates to: | * | |
| *Rhodes v. Transocean, Ltd., et al.* | * | |
| No. 10-01502 | * | MAGISTRATE NO. 1 |
| | * | MAGISTRATE SHUSHAN |
| | * | |
| *   *   *   *   *   *   *   *   *   *   *   * | | |

## REPLY IN SUPPORT OF MOTION OF DEFENDANTS
## ANADARKO PETROLEUM CORPORATION AND MOEX OFFSHORE 2007 LLC
## <u>TO DISMISS COMPLAINT PURSUANT TO FED R. CIV. P. 12(b)(6)</u>

**MAY IT PLEASE THE COURT:**

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ................................................................................................. 1

II.  ARGUMENT ....................................................................................................... 4

    A.  Legal Standard Applicable to a Rule 12(b)(6) Motion to Dismiss ........................ 4

    B.  Plaintiff Fails to State a Claim Against Anadarko and MOEX Offshore
        Under the General Maritime Law of Negligence ................................................. 6

        1.  *Ainsworth* Mandates Dismissal of Plaintiff's Claims Against
            Anadarko and MOEX Offshore ...................................................... 7

        2.  Anadarko and MOEX Offshore's Status as Leaseholders Does Not
            Give Rise to the Duty Plaintiff Claims ...................................... 10

        3.  Anadarko and MOEX Offshore Had No Duty to Warn BP of
            Impending Danger ................................................................. 12

    C.  Plaintiff Does Not State a Claim Against Anadarko or MOEX Offshore
        Under Any Theory of Vicarious Liability or Under the Jones Act .................... 15

    D.  Plaintiff's Claims for Nonpecuniary Damages Fail as a Matter of Settled
        Law ................................................................................. 16

        1.  Plaintiff Cannot Recover Nonpecuniary Damages Under the Jones
            Act or General Maritime Law .................................................. 16

        2.  Even if Nonpecuniary Damages Were Available, Plaintiff Has Not
            Alleged That Anadarko or MOEX Offshore Owed Him Any Legal
            Duty ............................................................................ 18

III.  CONCLUSION .................................................................................................. 19

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ainsworth v. Shell Offshore, Inc.*,
    829 F.2d 548 (5th Cir. 1987), *cert. denied*, 485 U.S. 1034 (1988).....................................1, 6, 8

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009).................................................................................................................4

*Atl. Sounding Co v. Townsend*,
    129 S. Ct. 2561 (2009)...............................................................................................................16

*Bourg v. Texaco Oil Co., Inc.*,
    578 F.2d 1117 (5th Cir. 1978) ...................................................................................................11

*Boutwell v. Chevron U.S.A., Inc.*,
    864 F.2d 406 (5th Cir. 1989) .......................................................................................................3

*Coulter v. Texaco, Inc.*,
    117 F.3d 909 (5th Cir. 1997) .......................................................................................................2

*Croley v. Matson Navigation Co.*,
    434 F.2d 73 (5th Cir. 1970) .......................................................................................................12

*Duplantis v. Shell Offshore, Inc.*,
    948 F.2d 187 (5th Cir. 1991) .......................................................................................................2

*Dupre v. Chevron U.S.A., Inc.*,
    913 F. Supp. 473 (E.D. La. 1996) ......................................................................................8, 9, 10

*Ellison v. Conoco, Inc.*,
    950 F.2d 1196 (5th Cir. 1992) .....................................................................................................2

*Florida Fuels, Inc. v. Citgo Petroleum Corp.*,
    6 F.3d 330 (5th Cir. 1993), *cert. denied, Authement v. Citgo Petroleum Corp.*, 511
    U.S. 1019 (1994)...................................................................................................................13, 14

*Fruge ex rel. Fruge v. Parker Drilling Co.*,
    337 F.3d 558 (5th Cir. 2003) .....................................................................................................10

*Gaia Techs. Inc. v. Recycled Prods. Corp.*,
    175 F.3d 365 (5th Cir. 1999) .....................................................................................................17

*Graham v. Amoco Oil Co.*,
    21 F.3d 643 (5th Cir. 1994) .........................................................................................................2

i

*Gulf Oil Corp. v. Bivins*,
    276 F.2d 753 (5th Cir. 1960) ........................................................................12

*Hawkins v. Evans Cooperage Co., Inc.*,
    766 F.2d 904 (5th Cir. 1985) .........................................................................3

*Hyde v. Chevron U.S.A., Inc.*,
    697 F.2d 614 (5th Cir. 1983) .........................................................................3

*In re Cooper/T Smith*,
    929 F.2d 1073 (5th Cir. 1991) ......................................................................3

*Landry v. Huthnance Drilling Co.*,
    889 F.2d 1469 (5th Cir. 1989) ......................................................................3

*LeJeune v. Shell Oil Co.*,
    950 F.2d 267 (5th Cir. 1992) .........................................................................2

*Matrixx Initiatives, Inc. v. Siracusano*,
    __ U.S. __, 131 S. Ct. 1309 (2011).............................................................4, 5

*McCormack v. Noble Drilling Corp.*,
    608 F.2d 169 (5th Cir. 1979) ......................................................................7, 9

*Neal v. Barisich, Inc.*,
    707 F. Supp. 862 (E.D. La. 1989) ...............................................................15

*Northwestern Nat'l Cas. Co. v. McNulty*,
    307 F.2d 432 (5th Cir. 1962) ......................................................................16

*Olsen v. Shell Oil Co.*,
    561 F.2d 1178 (5th Cir. 1977), *cert. denied*, 444 U.S. 979 (1979)........................11

*Robertson v. Arco Oil & Gas Co.*,
    948 F.2d 132 (5th Cir. 1991) .........................................................................3

*Romero v. Mobil Exploration and Producing North Am., Inc.*,
    939 F.2d 307 (5th Cir. 1991) ......................................................................11

*Scarborough v. Clemco Indus.*,
    391 F.3d 660 (5th Cir. 2004), *cert. denied*, 544 U.S. 999 (2005)........................15

*Thomas v. Burlington Res. Oil & Gas Co.*,
    No. Civ. A. 99-3904, 2000 WL 1528082 (E.D. La. Oct. 13, 2000) (Barbier, J.) ...................6

*Wallace v. Oceaneering Int'l*,
    727 F.2d 427 (5th Cir. 1984) ...............................................................6, 9, 10

*Zepherin v. Conoco Oil Co., Inc.*,
   884 F.2d 212 (5th Cir. 1989) ................................................................................................3

**OTHER AUTHORITIES**

FED. R. CIV. P. 12(b)(6) .........................................................................................................4

# I.
## INTRODUCTION

Defendants Anadarko Petroleum Corporation ("Anadarko") and MOEX Offshore 2007 LLC ("MOEX Offshore") submit this reply in support of their Motion to Dismiss Plaintiff's Complaint [Rec. Doc. 1219] against them in its entirety.

Anadarko and MOEX Offshore moved to dismiss Plaintiff's original complaint because, among other reasons, it sets forth no factual allegations that, even if accepted as true, show that Anadarko or MOEX Offshore owed any legal duty to Plaintiff or took any action in violation of such a duty. The Fifth Circuit has held that where a principal contracts with an independent contractor, a duty to prevent harm resulting from oil and gas operations arises only as a consequence of a right to exercise operational control over the operations. *Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548, 550 (5th Cir. 1987), *cert. denied*, 485 U.S. 1034 (1988). Plaintiff's failure to allege any facts showing that Anadarko or MOEX Offshore had any right to operational control over the rig or the well out of which a duty to Plaintiff could have arisen is fatal to his claims. Indeed, Plaintiff's affirmative allegation that BP operated the oil well and that BP and Transocean together operated and controlled the *Deepwater Horizon* confirm that Anadarko and MOEX Offshore lacked the right to exercise the operational control necessary to give rise to a duty on their part to protect Plaintiff—or any other third party—from harm.

After Anadarko and MOEX Offshore filed their Motion to Dismiss, Plaintiff amended his complaint twice. Although Plaintiff's most recent "Fifth Amending Complaint" is longer than the original, it fails to state any claims against Anadarko and MOEX Offshore for essentially the same reasons as the original complaint. Nothing in either the Fifth Amended Complaint or in Plaintiff's Opposition to Anadarko and MOEX Offshore's Motion to Dismiss provides any basis to deny the Motion to Dismiss.

In fact, Plaintiff's Opposition, filed after and purporting to incorporate the allegations of his Fifth Amended Complaint, contains key concessions and admissions that strongly support dismissal of the claims against Anadarko and MOEX Offshore.  In particular, Plaintiff expressly disclaims any theory of vicarious liability against Anadarko and MOEX Offshore, as well as any claim under the Jones Act.  Rhodes Opp. at 15, 22.  Further, Plaintiff expressly admits that (1) Anadarko and MOEX Offshore did not conduct any of the operations allegedly giving rise to his injuries, and (2) Anadarko and MOEX Offshore are principals and BP is an independent contractor.  Rhodes Opp. at 13; 14–15.  In addition, Plaintiff does not contest that Anadarko and MOEX Offshore did not retain or exercise any right of operational control over BP's conduct related to the Macondo well and its operations.  *Id.*

Plaintiff thus makes clear that he is asserting only a claim that Anadarko and MOEX Offshore owed a direct duty to him to alert BP to the presence of hydrocarbons in the well so that BP could then hypothetically take actions to avert a catastrophe that was otherwise of BP's own making.  Plaintiff asserts that such a duty arises from Anadarko and MOEX Offshore's status as leaseholders and their ability to access certain well data.  Plaintiff is mistaken, and his allegations and arguments plainly establish as a matter of law that no such duty existed.

The question of whether leaseholders acting as principals who hire an independent contractor over which they retain no operational control owe a duty to third parties to intervene in the independent contractor's operations has been answered by the Fifth Circuit and the courts of this district countless times: there is no such duty absent operational control over the contractor.[1]  Plaintiff's attempts to distinguish those authorities are unavailing.  By their terms,

---

[1]    *See, e.g.*, *Coulter v. Texaco, Inc.*, 117 F.3d 909, 912 (5th Cir. 1997) ("[A]bsent an express or implied order to the contractor to engage in an unsafe work practice leading to an injury, a principal . . . cannot be liable . . ."); *Graham v. Amoco Oil Co.*, 21 F.3d 643, 645 (5th Cir. 1994) ("[A] principal is not

the cases plainly address <u>both vicarious and direct</u> theories of liability and uniformly condition any duty on operational control.

In any event, the duty alleged by Plaintiff—to alert the rig to well information allegedly sent to Anadarko and MOEX Offshore <u>from the rig</u>—makes little sense.  There is no doubt that BP and others on the rig had access to the same, and far greater, information concerning the existence of hydrocarbons than did Anadarko and MOEX Offshore, since it was the rig that sent the information to them in the first place.  As a result, any hypothetical efforts by Anadarko or MOEX Offshore to alert BP to the existence of hydrocarbons would have been entirely futile, because BP and others on the rig already had that information and more.  Moreover, the alleged failure to alert BP to the well information showing hydrocarbons could not, as a matter of law, have proximately caused the Plaintiff's injuries.  Since BP already had all of the information relied upon by Plaintiff, and Anadarko and MOEX Offshore had no control over BP, no alert

---

liable for the negligent acts of an independent contractor acting pursuant to the contract") (citation omitted); *Ellison v. Conoco, Inc.*, 950 F.2d 1196, 1207 (5th Cir. 1992) (principal "generally has no duty to ensure that an independent contractor performs its obligations in a safe manner") (citation omitted); *LeJeune v. Shell Oil Co.*, 950 F.2d 267, 270 (5th Cir. 1992) ("[A] principal is not liable for the torts of an independent contractor unless the principal exercises operational control over or expressly or impliedly authorizes the independent contractor's actions") (citation and quotation marks omitted); *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 193 (5th Cir. 1991) ("The fact that a principal takes an active interest in the safety of the employees of its independent contractor does not, in and of itself, constitute direct operational control" and is no basis for liability); *Robertson v. Arco Oil & Gas Co.*, 948 F.2d 132, 133 (5th Cir. 1991) ("Where a platform owner hires independent contractors to supply operations and carry out the actual drilling, and the owner neither possesses nor exercises actual control over the independent contractors, the owner has no duty to remedy hazards created by its independent contractors") (citations omitted); *Boutwell v. Chevron U.S.A., Inc.*, 864 F.2d 406, 409 n.13 (5th Cir. 1989) (principal "was under no duty to interject himself into the situation to correct the hazard" created by independent contractor); *Landry v. Huthnance Drilling Co.*, 889 F.2d 1469, 1471 (5th Cir. 1989) ("A principal is not liable for the torts of an independent contractor unless the principal exercises operational control over or expressly or impliedly authorizes the independent contractor's actions") (citations omitted); *Zepherin v. Conoco Oil Co., Inc.*, 884 F.2d 212, 213 (5th Cir. 1989) ("This court has consistently held on similar facts that a principal . . . who hires an independent contractor, over which it exercises no operational control, has no duty to remedy hazards created by its independent contractors") (citations omitted); *Hawkins v. Evans Cooperage Co., Inc.*, 766 F.2d 904, 908 (5th Cir. 1985) ("[A] principal who exercises no operational control has no duty to discover and remedy hazards created by acts of its independent contractors") (citation omitted); *Hyde v. Chevron U.S.A., Inc.*, 697 F.2d 614, 630 (5th Cir. 1983) ("A principal cannot be held answerable for failing to supervise an independent contractor . . . [this] rule applies to employees of the independent contractor as well as to other third parties") (citations omitted).

from Anadarko or MOEX Offshore could have altered BP's operations relating to the Macondo well.  Plaintiff's entire theory of a duty on the part of Anadarko and MOEX Offshore is therefore pure folly.

Absent a legal duty, Plaintiff's claims fail.  *See In re Cooper/T Smith*, 929 F.2d 1073, 1077 (5th Cir. 1991) ("The plaintiff must demonstrate that there was a duty owed by the defendant to the plaintiff . . .").

Lastly, Plaintiff contends that he may seek punitive and other nonpecuniary damages in this case.  Plaintiff's argument is erroneous and foreclosed by binding Fifth Circuit law.

Accordingly, Anadarko and MOEX Offshore's Motion to Dismiss applies equally to Plaintiff's original complaint and Fifth Amending Complaint, and should be granted.

## II.
## ARGUMENT

### A.    Legal Standard Applicable to a Rule 12(b)(6) Motion to Dismiss.

As Anadarko and MOEX Offshore explained in their moving papers, "[t]o survive a Motion to Dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555).

Plaintiff contends that the Supreme Court's recent decision in *Matrixx Initiatives, Inc. v. Siracusano*, __ U.S. __, 131 S. Ct. 1309 (2011), loosened these pleading requirements, but he is incorrect.  Instead, *Matrixx* illustrates precisely what is missing from Plaintiff's complaint in this case—factual allegations that, taken as true, would tend to show the defendant's liability.  The

question before the Court in *Matrixx* was "whether a plaintiff can state a claim for securities fraud under § 10(b) of the Securities Exchange Act of 1934, based on a pharmaceutical company's failure to disclose reports of adverse events associated with a product if the reports do not disclose a statistically significant number of adverse events." *Id*. at 1313.  To state a claim for securities fraud, a plaintiff must plead, among other things, that the defendant made a statement that was misleading as to a material fact.  *Id*. at 1318.  That standard can be satisfied where a company makes affirmative statements that omit a material fact, *id*., and the question before the Court was whether the company's knowledge of the adverse event reports could be such a material fact.  *See id*.

The Court's affirmative holding provides no help for Plaintiff here.  In *Matrixx*, the complaint specifically identified the adverse event reports, including the names of the individuals who reported them to the company, the dates on which the company learned of the reports, the content of the reports, and even whether the company was notified of the reports by phone or by letter.  *See id*. at 1314–15.  The complaint's factual allegations established that "Matrixx received information that plausibly indicated a reliable causal link between" the product at issue and specific adverse effects.  *Id*. at 1322.  The complaint also alleged facts from which it could be inferred that Matrixx had not conducted any research that led to the opposite conclusion, and therefore the company "had no basis for rejecting" the information it received in the enumerated adverse incident reports.  *Id*. at 1323.

The detailed factual pleading in *Matrixx* stands in sharp contrast to what Plaintiff has attempted here—generally alleging a leasehold interest in the Macondo Prospect by Anadarko and MOEX Offshore and setting forth no factual allegations that would support a finding of

control.  *Matrixx* did not alter the pleading standards set forth in *Iqbal* and *Twombly* and simply confirms why dismissal of Plaintiff's complaint here is proper.[2]

**B.     Plaintiff Fails to State a Claim Against Anadarko and MOEX Offshore Under the General Maritime Law of Negligence.**

It is the unambiguous rule of this Circuit that a leaseholder acting as a principal who entrusts an independent contractor with operational control of an offshore drilling operation owes no duty to third parties to "discover and remedy hazards created" by an independent contractor, *Wallace v. Oceaneering International*, 727 F.2d 427, 437 (5th Cir. 1984), or to "intervene in and correct the work practices selected by an independent contractor."  *Thomas v. Burlington Res. Oil & Gas Co*., No. Civ. A. 99-3904, 2000 WL 1528082, at *2 (E.D. La. Oct. 13, 2000) (Barbier, J.) (citation omitted).  Even in those cases where a leaseholder acting as principal has actual knowledge of a hazard created by an independent contractor, the principal breaches no duty to third parties by failing to intervene in the independent contractor's operations.  *See Ainsworth v. Shell Offshore, Inc*., 829 F.2d 548 (5th Cir. 1987), *cert. denied*, 485 U.S. 1034 (1988).

Plaintiff does not contest that Anadarko and MOEX Offshore are principals, or that they contracted with BP as an independent contractor to perform drilling operations on the leased property.  Plaintiff does not allege in his Fifth Amended Complaint or argue in his Opposition to the Motion to Dismiss that Anadarko or MOEX Offshore had the right to exercise operational control over BP's operations on the leased property.  Nor does Plaintiff allege that either Anadarko or MOEX Offshore had the right to exercise operational control over BP's conduct of the post-explosion cleanup and containment operations.  Moreover, Plaintiff disclaims any

---

[2]     Further, Plaintiff's suggestion that *Matrixx* is in tension with *Iqbal* and *Twombly*, or that it altered the pleading standards set forth in those decisions, is implausible.  *Matrixx* was a unanimous decision, joined by all of the justices who joined the majority opinion in *Iqbal* two years ago, as well as by all of the justices who are still on the Court who joined the majority opinion in *Twombly* four years ago.  On its face, the *Matrixx* opinion simply applied and followed *Iqbal* and *Twombly* to the securities fraud case before it.  *See id.* at 1314, 1323.

theory of liability by which Anadarko or MOEX Offshore could be held vicariously liable for the actions of BP.  Rhodes Opp. at 15.

Instead, Plaintiff attempts to repackage his theory of liability by asserting that Anadarko and MOEX Offshore, as non-operating investors, "fail[ed] to alert BP to the presence of hydrocarbons in the well," failed to consider "expert well kill information" during BP's well capping operations, or "failed to exercise their right to conduct HSE inspections" of BP's operations.  Rhodes Opp. at 9–10.  Plaintiff further alleges that Anadarko and MOEX Offshore "owed a duty to Plaintiff to warn [BP] of the impending disaster in time to avert it," and breached that duty by "failing to warn the drilling vessel crew of the imminent blowout so that they could take evasive action."  *Id.*; *see* Rhodes Fifth Amend. Compl. ¶ 12 (incorporating allegations from B1 Master Complaint).

Notwithstanding Plaintiff's attempts at repackaging, his claim remains the same; namely, that Anadarko and MOEX Offshore had access to information about an independent contractor's operations and failed to intervene in an independent contractor's work, or otherwise failed to discover and remedy hazards created by an independent contractor.  *McCormack v. Noble Drilling Corp.*, 608 F.2d 169, 175 (5th Cir. 1979) (principal owes no duty to ensure that the contractors perform their obligations in a reasonably safe manner).  That claim is flawed as a matter of law and must be dismissed.

### 1.    *Ainsworth* Mandates Dismissal of Plaintiff's Claims Against Anadarko and MOEX Offshore.

The rule of *Ainsworth* that a principal engaged in oil exploration and production without a right of operational control breaches no duty to third parties by failing to intervene in an independent contractor's operations is dispositive of Plaintiff's claims against Anadarko and MOEX Offshore.  Plaintiff attempts to avoid this conclusion by arguing that his claims against

Anadarko and MOEX Offshore are for <u>direct liability</u> rather than <u>vicarious liability</u>, and that *Ainsworth* is "fundamentally a case about vicarious liability for an unsafe worksite, with no applicability in a case about a party's own negligence."  Rhodes Opp. at 10.  Plaintiff's attempt to limit the applicability of *Ainsworth* to vicarious liability cases is meritless because in *Ainsworth*, the Fifth Circuit rejected <u>both a vicarious liability claim and a direct liability claim</u> against an owner/principal.

In *Ainsworth*, the plaintiff first alleged that Shell, a platform owner, was vicariously liable for injuries resulting from hazardous conditions created by an independent drilling contractor.  The Fifth Circuit held that Shell was not vicariously liable because Shell retained no operational control over the independent contractor.  *Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548, 550–51 (5th Cir. 1987).  The Fifth Circuit next considered the plaintiff's allegation that "Shell's knowledge of the danger to which the Hercules crew was exposed gives rise to a duty by Shell to intervene in Hercules' operation."  *Id.* at 551.  The Fifth Circuit rejected this direct liability theory as well, holding that because Shell retained no operational control over its independent contractor, the "law will not support the imposition of liability upon Shell for <u>failure to intercede</u> in Hercules' decision" to engage in unsafe operations.  *Id.* (emphasis added).  Thus, even in cases where a principal has actual knowledge of safety risks, as Plaintiff conclusorily alleges to be the case here, if the principal does not retain a right to exercise operational control, the principal is neither directly nor vicariously liable for hazards created by the contractor. Plaintiff's efforts to misstate the clear holding of *Ainsworth* must fail.

Likewise, in *Dupre v. Chevron U.S.A., Inc.*, Judge Vance considered the precise argument made by Plaintiff and rejected the distinction between vicarious and direct liability that Plaintiff attempts to draw, holding that there was "no practical difference" between the two

theories under applicable Fifth Circuit precedent.  913 F. Supp. 473, 483 (E.D. La. 1996), *aff'd per curiam*, 109 F.3d 230 (5th Cir. 1997).  There, in dispensing with the plaintiff's argument that Chevron, a leaseholder and owner of a drilling platform, owed a direct duty of care to the plaintiff because it had created a safety inspection program for the drilling rig, Judge Vance held:

> In addressing plaintiff's claim that Chevron had an independent duty of due care, the Court cannot ignore the substantial body of case law dealing with related issues under vicarious liability law.  Indeed, in this case, <u>the Court sees no practical difference between plaintiff's claim that Chevron acquired a duty by virtue of involving itself with safety and those cases in which the Fifth Circuit analyzed whether the platform owner's knowledge of risks or role in safety operations created a duty so that it could be vicariously liable for the negligence of its independent contractor</u>.  In the latter cases, the Court examined whether the principal "retained or exercised operational control" of the safety procedures on the contractor's rig in order to determine if a duty was owed.  To create a duty based on plaintiff's claim that Chevron "examin[ed] its contractor's work place, procedures and equipment for safety concerns" would amount to an end-run around a large body of Fifth Circuit precedent finding no "operational control" despite some knowledge of risk or involvement with safety issues . . .  Even though couched in the language of vicarious liability, these decisions would be difficult to reconcile with a finding of an independent duty on the part of Chevron on the facts presented here.

*Id.* (internal citations omitted) (emphasis added).  As in *Dupre*, Plaintiff in the present case attempts an "end-run" around the *Ainsworth* rule by couching his allegations in the language of direct liability rather than vicarious liability.  *Dupre*, like *Ainsworth*, is indistinguishable from this case, and this Court should reach the same result.

Other courts in this district and the Fifth Circuit have also recognized that the rule of *Ainsworth* and related cases, such as *McCormack v. Noble Drilling Corp.*, 608 F.2d 169, 175 (5th Cir. 1979) (principal has no duty to ensure independent contractor "performed [its] obligations in a reasonably safe manner") and *Wallace v. Oceaneering International*, 727 F.2d 427, 437 (5th Cir. 1984) (principal has no duty to "discover and remedy hazards created" by independent contractor), apply equally to vicarious liability and direct liability theories.  For example, in *Ballew v. Texaco*, Judge Clement held that "[a]s to plaintiff's claim of <u>direct</u>

negligence . . . a principal has no duty . . . to ensure that the contractors perform their obligations in a reasonably safe manner . . . [or to] discover and remedy hazards created by its independent contractors."  Civ. A. No. 94-3946, 1995 WL 638595, at *3 (E.D. La. Oct. 27, 1995) (emphasis added) (citing *McCormack*, 608 F.2d at 175; *Wallace*, 727 F.2d at 437).

Similarly, in *Wells v. Freeport-McMoran*, considering the plaintiff's argument that the defendant was directly liable for "negligently allowing a dangerous condition to exist on the defendant's property," the court held that the duty of "reasonable care . . . does not apply to dangerous conditions created by an independent contractor."  715 F. Supp. 155, 159–60 (W.D. La. 1988).  Citing *Ainsworth*, the court further held that the "principal's ability to have intervened and prevent the harm, by suggesting alternative conduct or methods, is irrelevant" and rejected the plaintiff's theory of direct liability.  *Id.* at 160 (emphasis added).

As the above cases demonstrate, Plaintiff's defense of his negligence claim against Anadarko and MOEX Offshore is based entirely on a false premise.  On the facts alleged, there is "no practical difference" between direct and vicarious theories of liability.  For Anadarko and MOEX Offshore to be liable under either theory, they must have had the right to exercise operational control over the actions giving rise to Plaintiff's alleged injuries.  *Dupre v. Chevron U.S.A., Inc.*, 913 F. Supp. 473, 483 (E.D. La. 1996).  By not contesting the point, Plaintiff concedes that they did not.  Rhodes Opp. at 9–10; 12–14.  His negligence claim must be dismissed.

> ### 2.      Anadarko and MOEX Offshore's Status as Leaseholders Does Not Give Rise to the Duty Plaintiff Claims.

As the above discussion of the *Ainsworth* line of cases shows, the mere fact that Anadarko and MOEX Offshore are alleged to be "owner[s] of a leasehold interest to 'perform oil exploration, drilling, and production-related operations,'" Rhodes Opp. at 5, provides no

exception to the rule that a principal owes no duty to intercede in or otherwise ameliorate the conduct of an independent contractor where the principal does not have the right to exercise operational control. *See Fruge ex rel. Fruge v. Parker Drilling Co.*, 337 F.3d 558, 563 (5th Cir. 2003) (holding MMS lessee Anadarko not liable for plaintiffs' injuries because Anadarko did not retain operational control over drilling contractor); *Dupre*, 930 F. Supp. at 251 (Vance, J.) (holding that Chevron's "OCS lease has not created any new duties" and that imposing liability on such a leaseholder would be "squarely at odds with *Ainsworth v. Shell Offshore, Inc.*, and its progeny") (internal citations omitted), *aff'd per curiam*, 109 F.3d 230 (5th Cir. 1997) (rejecting "argument that Chevron contractually assumed a duty of reasonable care . . . under the terms of its lease with the United States"); *Romero v. Mobil Exploration and Producing North Am., Inc.*, 939 F.2d 307 (5th Cir. 1991) (affirming trial court's dismissal of vicarious and direct liability claims against Minerals Management Service ("MMS") leaseholder Mobil, because Mobil did not exercise operational control over independent contractor and neither lease nor MMS regulations imposed additional duties); *Bourg v. Texaco Oil Co., Inc.*, 578 F.2d 1117, 1122–23 (5th Cir. 1978) (same); *Olsen v. Shell Oil Co.*, 561 F.2d 1178, 1180 (5th Cir. 1977), *cert. denied*, 444 U.S. 979 (1979) (same).[3]

Nonetheless, Plaintiff broadly asserts that "an owner of a leasehold interest to 'perform oil exploration, drilling, and production-related operations' has a duty to prevent those operations from harming others when the owner has knowledge of impending harm and the ability to prevent it." Rhodes Opp. at 11. Even ignoring for these purposes the false, bootstrapping premise that Anadarko and MOEX Offshore had the ability to prevent BP's operations from causing harm, Plaintiff's argument still fails. In fact, virtually all of the principals in the

---

[3]  The MMS is now known as the Bureau of Ocean Energy Management, Regulation and Enforcement ("BOEMRE").

*Ainsworth* line of cases were leaseholders or other property owners that were held <u>not</u> to owe a duty to third parties even though their property, through the actions of an independent contractor over whom they retained no operational control, caused harm to others, and even though they had adequate knowledge and a theoretical ability to intercede to avoid the injury.  Contrary to Plaintiff's contention, Anadarko and MOEX Offshore's status as lessees of the Macondo Prospect imposed on them no greater duty to police the operations of their independent contractor.  So long as the principal does not have the right to exercise operational control over the operations of its independent contractor, it has no duty to intercede to protect third parties.

### 3.    Anadarko and MOEX Offshore Had No Duty to Warn BP of Impending Danger.

Plaintiff's theory of liability against Anadarko and MOEX Offshore is based primarily on the conclusory allegation that by virtue of access to data from the rig, Anadarko and MOEX Offshore "knew or should have known of the presence of hydrocarbons in the well" and therefore "owed a duty to Plaintiff to warn [BP] of the impending disaster in sufficient time to avert it."  Rhodes Opp. at 9; Fifth Amend. Compl. ¶ 12.  Plaintiff's theory rests on two novel and unsupported propositions: (1) that Anadarko and MOEX Offshore owed a duty to BP to warn of impending disaster; and (2) that Anadarko and MOEX Offshore's alleged duty to warn BP extended to protect the interests of third parties such as Plaintiff.  Both propositions are contrary to law.

Plaintiff does not identify the source of any duty on the part of Anadarko or MOEX Offshore to warn BP of danger, because none exists.  Plaintiff does not point to any such obligation under the Operating Agreement between Anadarko, MOEX Offshore, and BP, which entrusts operations on the leased property exclusively to BP as an independent contractor.  Ex. A

to Motion to Dismiss at 14, Article 5.1.  Nor can Plaintiff point to such a duty to warn under the case law.

Indeed, the very notion that Anadarko and MOEX Offshore had a duty to alert the rig to well information that they received from the rig is odd at best.  Under the general law, a leaseholder owes no duty to warn independent contractors of hazardous conditions on the leased property when the independent contractors "know or should know of the existence of a particular condition and [] appreciate or should appreciate its dangers."  *Gulf Oil Corp. v. Bivins*, 276 F.2d 753, 756 (5th Cir. 1960) (premises liability); *Croley v. Matson Navigation Co.*, 434 F.2d 73, 75 (5th Cir. 1970) ("[T]here is no duty on the owner to warn the employees of the contractor if they are already fully aware of the danger").  At most, Plaintiff alleges only that Anadarko and MOEX Offshore had access to the same information that was available to BP and its contractors and employees on the rig.  Rhodes Opp. at 9–10.  Indeed, the information available second-hand to Anadarko and MOEX Offshore was necessarily incomplete because without knowledge of the rig's contemporaneous operations, they had no way of interpreting the data transmitted by the rig.  Moreover, Plaintiff does not allege that Anadarko and MOEX Offshore were monitoring rig data at the precise moment that hydrocarbons allegedly entered the well, or at any pertinent time thereafter.  Nevertheless, taking Plaintiff's allegations at face-value, it must follow that if Anadarko and MOEX Offshore "knew or should have known of the entry of hydrocarbons into the well," BP and its contractors also "knew or should have known" of the same information, and Anadarko and MOEX Offshore therefore had no duty to warn BP.

Moreover, not only would such a warning have been futile, as a matter of law, the alleged failure to alert BP and others on the rig to the information Plaintiff cites could not have caused Plaintiff's injuries because BP and others took the actions they did while already in possession of

13

the information.  *See Delta Commodities, Inc. v. M/T JO OAK, ETC.*, No. 88-1349, 1989 WL 149253, at *4–5 (E.D. La. Dec. 6, 1989) (holding that dock owner aware of hazardous condition did not proximately cause injury resulting from vessel collision by failing to warn vessel operator of hazard, because vessel operator had the same information, and any warning would have been "futile").  Thus, even if a duty existed, which it did not, Plaintiff still has not stated a claim for negligence against Anadarko and MOEX Offshore.  *See Florida Fuels, Inc. v. Citgo Petroleum Corp.*, 6 F.3d 330, 333 (5th Cir. 1993) (maritime law elements of negligence are "<u>a causal connection between the negligence and the injury</u>, the invasion of a legally protected interest, and lack of a countervailing legally protected interest as a defense to liability") (emphasis added), *cert. denied*, *Authement v. Citgo Petroleum Corp.*, 511 U.S. 1019 (1994).

Regardles, <u>even if</u> Anadarko and MOEX Offshore could have interpreted the data from the rig as signaling the entry of hydrocarbons into the well, as Plaintiff conclusorily alleges, and <u>even if</u> Anadarko and MOEX Offshore had some duty to warn BP, that duty was eliminated by BP's concurrent knowledge of the same facts, and any duty would not extend to third parties such as Plaintiff, with whom Anadarko and MOEX Offshore have no relationship.  In *Tidewater Marine, Inc., v. Sanco Int'l, Inc.*, the court held that "[m]ere observation of a hazard does not create a duty to either warn of the danger or to take affirmative action to prevent it."  No. Civ. A. 96-1258, 1997 WL 543108, at *12 (E.D. La. Sept. 3, 1997) (Vance, J.).  In that case, third parties injured as a result of a maritime casualty alleged that defendant "G & N" observed an independent contractor's failure to install a safety lighting system, but failed to warn the independent contractor.  In response to G & N's motion for summary judgment, the plaintiffs argued that G & N "had an affirmative duty to warn" the independent contractor of the omission, and therefore "G & N's silence" rendered it liable to the plaintiffs in negligence.  *Id.* at *11.

14

Citing *Ainsworth*, the court rejected the plaintiffs' theory, holding that "[t]he ability to intervene and prevent an accident does not, without more, create a duty to third parties to act." *Id.* at *12. The court, in granting summary judgment for G & N, held that while "G & N might have recognized the danger . . . this alone does not create an obligation to a third-party with whom it has no relationship to neutralize a situation that it had no part in creating." *Id.*

In sum, Plaintiff's attempts to distinguish *Ainsworth* and related cases fail. Moreover, Plaintiff fails to cite a single case, in any jurisdiction, where a plaintiff in his position has prevailed against a non-operating principal who hired an independent contractor over which it had no right to exercise operational control. Plaintiff's negligence claim against Anadarko and MOEX Offshore must be dismissed.

**C.    Plaintiff Does Not State a Claim Against Anadarko or MOEX Offshore Under Any Theory of Vicarious Liability or Under the Jones Act.**

As discussed, Plaintiff has expressly disclaimed any theory by which Anadarko or MOEX Offshore could be held vicariously liable for the actions of BP or others on the rig. *See* Rhodes Opp. at 15 ("Anadarko and MOEX's argument is misguided because the issue of control would be relevant <u>only if the petitioner was alleging vicarious liability</u> . . . In contrast, the question before the Court is whether the 'probable result' of Anadarko and MOEX's <u>own</u> action or inaction was harm to petitioner") (emphasis added). In addition, Plaintiff states in his Opposition that "Anadarko and MOEX correctly contend that petitioner did not state a claim against them under the Jones Act." Rhodes Opp. at 16. Thus, to the extent Plaintiff's complaint could be construed as intending to assert claims against Anadarko and MOEX Offshore under either a vicarious liability theory or the Jones Act, Plaintiff disclaims any such intent.

**D.      Plaintiff's Claims for Nonpecuniary Damages Fail as a Matter of Settled Law.**

      **1.      Plaintiff Cannot Recover Nonpecuniary Damages Under the Jones Act or General Maritime Law.**

Finally, Plaintiff contends that he may recover punitive and other nonpecuniary damages under the Jones Act and general maritime law.  Plaintiff's arguments are incorrect.  The Fifth Circuit has held that a "Jones Act seaman, injured outside of territorial waters," may not "recover nonpecuniary damages from a non-employer third party."  *Scarborough v. Clemco Indus.*, 391 F.3d 660, 666–68 (5th Cir. 2004), *cert. denied*, 544 U.S. 999 (2005).  This rule applies equally to a non-employer defendant.  In *Scarborough*, as here, the plaintiff was suing a third-party non-employer under the general maritime law.  *Id.* at 666.  The Fifth Circuit held that the Supreme Court's "uniformity principle" meant that the Jones Act's prohibition on nonpecuniary damages extended to claims under maritime law against the non-employer defendants.  *Id.* at 668.  Further, contrary to Plaintiff's argument, "[p]unitive damages are nonpecuniary."  *Neal v. Barisich, Inc.*, 707 F. Supp. 862, 873 (E.D. La. 1989).

*Scarborough* and *Neal* are both directly on point.  *Scarborough* in particular binds this Court with its holding that "neither one who has invoked his Jones Act seaman status nor his survivors may recover nonpecuniary damages from non-employer third parties."  391 F. 2d at 668.  Plaintiff contends that the Supreme Court in *Townsend* "flagged the availability of punitive damages in Jones Act actions as an open question," Rhodes Opp. at 19, but the very language quoted makes clear that the Supreme Court simply <u>did not reach</u> the question of whether "the Jones Act, by incorporating the provisions of the Federal Employer's Liability Act . . . prohibits the recovery of punitive damages in actions under the statute."  *Atl. Sounding Co v. Townsend*, 129 S. Ct. 2561, 2575 n.12 (2009).  As discussed above, under governing Fifth Circuit law, this is not an open question: it is settled precedent that punitive damages are not available.

*Scarborough* confirms that Plaintiff cannot state a claim for punitive damages or other nonpecuniary damages against Anadarko or MOEX Offshore.

Plaintiff argues that because punitive damages are measured in money, they are "pecuniary" and therefore recoverable. Rhodes Opp. at 17–19. That is wrong. Punitive damages are not pecuniary damages because they do not <u>compensate</u> for pecuniary <u>losses</u>. In *Anderson v. Texaco, Inc*., Judge Feldman explained that "[t]here can be little doubt that punitive damages are nonpecuniary in character. Pecuniary damages are awards designed to restore 'material loss which is susceptible of a pecuniary valuation.' Punitive damages, on the other hand, do not compensate for a loss, but rather, are imposed to punish and deter by virtue of the gravity of the offense." 797 F. Supp. 531, 534 (E.D. La. 1992) (internal citations omitted); *see also Northwestern Nat'l Cas. Co. v. McNulty*, 307 F.2d 432, 434 n.2 (5th Cir. 1962) (punitive damages are "'damages other than compensatory or nominal damages awarded against a person to punish him for his outrageous conduct'" (quoting RESTATEMENT (SECOND) OF TORTS § 903 (1977)). As the court noted in *Anderson*, "the post-*Miles* district court cases, in this district and in others, speak with one voice in concluding that punitive damages are nonpecuniary and, therefore, are not recoverable . . . ." 797 F. Supp at 534 (collecting cases). Plaintiff cites no cases to the contrary.

In addition, Plaintiff argues that *Exxon Shipping Co. v. Baker* stands for the proposition that Jones Act seamen should receive the same treatment as "commercial fishermen, native Alaskans, and landowners," who were allowed to recover punitive damages under maritime law. 554 U.S. 471, 479 (2008). But *Baker* stands only for the proposition that punitive damages under general maritime law are not preempted by the Clean Water Act. *Id*. at 489. *Baker* did not address the availability of punitive damages under the Jones Act and specifically did not address

17

whether maritime law should award punitive damages, on the ground that Exxon did not raise the issue. *See id.* at 490 ("Other than its preemption argument, [Exxon] does not offer a legal ground for concluding that maritime law should never award punitive damages, or that none should be awarded in this case, but it does argue that this award exceeds the bounds justified by the punitive-damages").   Plaintiff's claims seeking punitive or other nonpecuniary damages are foreclosed by settled law, and must be dismissed.

> **2.      Even if Nonpecuniary Damages Were Available, Plaintiff Has Not Alleged That Anadarko or MOEX Offshore Owed Him Any Legal Duty.**

Even if Plaintiff could recover nonpecuniary damages under the general maritime law, Anadarko and MOEX Offshore cannot be held liable for punitive or other nonpecuniary damages because they owed Plaintiff no legal duty. *See* part B, above.  Without viable claims for any violation of a legal duty, it follows that Plaintiff cannot recover any damages from Anadarko or MOEX Offshore, let alone punitive damages or other nonpecuniary damages. *See Gaia Techs. Inc. v. Recycled Prods. Corp.*, 175 F.3d 365, 373 (5th Cir. 1999) (holding that because "individual defendants are not liable for any state law causes of action, there is no basis for awarding punitive damages").

## III.
## CONCLUSION

For the foregoing reasons, the claims asserted in Plaintiff's original and amended Complaints against Anadarko and MOEX Offshore fail as a matter of law and should be dismissed in their entirety.  In the alternative, Plaintiff's claims for nonpecuniary loss should be dismissed.


Respectfully submitted,


DATED: April 29, 2011                    BINGHAM McCUTCHEN LLP


/s/ *Ky E. Kirby*
Ky E. Kirby
ky.kirby@bingham.com
David B. Salmons
david.salmons@bingham.com
Michael B. Wigmore
michael.wigmore@bingham.com
Warren Anthony Fitch
tony.fitch@bingham.com
Randall M. Levine
randall.levine@bingham.com
2020 K Street, NW
Washington, DC 20006-1806
Telephone (202) 373-6000
Facsimile (202) 373-6001

James J. Dragna
jim.dragna@bingham.com
Bingham McCutchen LLP
355 South Grand Avenue
Suite 4400
Los Angeles, California 90071-3106
Telephone (213) 680-6436
Facsimile (213) 680-8636

KUCHLER POLK SCHELL
WEINER & RICHESON, LLC

Deborah D. Kuchler, T.A. (La. Bar No. 17013)
dkuchler@kuchlerpolk.com
Janika Polk (La. Bar No. 27608)
jpolk@kuchlerpolk.com
Robert Guidry (La. Bar No. 28064)
rguidry@kuchlerpolk.com
1615 Poydras Street, Suite 1300
New Orleans, LA  70112
Tel:  (504) 592-0691
Fax:  (504) 592-0696

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, pursuant to Pre-trial Order No. 12, I have caused the foregoing to be served on all counsel via the Lexis Nexis File & Serve system, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, who will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on April 29, 2011.


_____ /s/ *Ky E. Kirby* _____
                Ky E. Kirby

21