**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig | * | MDL No. 2179 |
| "Deepwater Horizon" in the Gulf | * | |
| of Mexico on April 20, 2010 | * | SECTION "J" |
| | * | JUDGE BARBIER |
| This Document Relates to: | * | |
| *All Cases in Pleading Bundles B1 and B3*; | * | MAGISTRATE NO. 1 |
| No. 10-2771 | * | MAGISTRATE SHUSHAN |
| * * * * * * * * * * * * | | |

**CONSOLIDATED REPLY TO PLAINTIFFS' STEERING COMMITTEE'S OMNIBUS OPPOSITIONS TO DEFENDANTS' MOTIONS TO DISMISS THE** <u>**MASTER COMPLAINTS FOR PLEADING BUNDLES B1 AND B3**</u>

**MAY IT PLEASE THE COURT:**

<u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION ............................................................................................. 1

II.     ARGUMENT ................................................................................................. 4

        A.    Federal Law Governs All Claims in this Case to the Exclusion of State
              Law ................................................................................................. 4

              1.    The Deepwater Horizon was an OCSLA situs under Section
                    1333(a)(1) ........................................................................... 4

              2.    State law does not apply as surrogate federal law under Section
                    1333(a)(2) ........................................................................... 6

              3.    Plaintiffs misapply the OCSLA situs requirements ................................. 7

        B.    Federal Maritime Law Applies and State Law Does Not Supplement It ............. 8

              1.    State law cannot be used to supplement maritime law in cases
                    covered by OCSLA Section 1333(a)(1) ..................................... 9

              2.    State law does not supplement maritime law in this case because
                    there is no "gap" to be filled by state law ................................ 10

              3.    Even if Florida law applied, Plaintiffs fail to state a claim for
                    medical monitoring damages .................................................. 13

        C.    OPA Displaces Maritime Law Causes of Action for Remedies Covered by
              OPA ................................................................................................ 13

        D.    Federal Law Preempts Application of State Law in This Case ........................ 16

        E.    Plaintiffs' OPA Claim Must Be Dismissed for Failure to Allege
              Presentment ...................................................................................... 18

        F.    The Bundle B1 Plaintiffs' Claims for Pure Economic Losses Also Fail
              Under the Rule of *Robins Dry Dock* ................................................... 20

              1.    CERCLA does not overrule *Robins Dry Dock* ..................................... 21

              2.    *Robins Dry Dock* is not limited to cases involving contractual
                    privity .............................................................................. 22

              3.    There is no exception to the *Robins Dry Dock* rule for commercial
                    fishermen or any other class of plaintiff .................................. 23

        G.    Plaintiffs' Fail to State a Claim for Negligence *Per Se* ........................ 23

III.    CONCLUSION ............................................................................................. 25

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*325-343 E. 56th St. Corp. v. Mobil Oil Corp.*,
  906 F. Supp. 669 (D.D.C. 1995) ........................................................................24

*Abundiz v. Explorer Pipeline Co.*,
  Nos. Civ. A. 300CV2029H, 303CV0508H, 303CV0787H, 2003 WL 23096018 (N.D.
  Tex. Nov. 25, 2003) ........................................................................19

*Am. River Transp. Co. v. KAVO KALIAKRA S.S.*,
  206 F.3d 462 (5th Cir. 2000) ........................................................................21

*Askew v. Am. Waterways Operators, Inc.*,
  411 U.S. 325 (1973)........................................................................9

*Barasich v. Shell Pipeline Co., LP*,
  Civ. No. 05-4180, 2006 WL 3913403 (E.D. La. Nov. 20, 2006) (Barbier, J.) .......................23

*Bates v. Dow Agrosciences*,
  544 U.S. 431 (2005)........................................................................17

*Boca Ciega Hotel, Inv. V. Bouchard Transp. Co*.,
  51 F.3d 235 (11th Cir. 1995) ........................................................................18, 19

*Byrd v. Napoleon Ave. Ferry Co.*,
  125 F. Supp. 573 (E.D. La. 1954), *aff'd per curiam*, 227 F.2d 958 (5th Cir. 1955)...............11

*Catalyst Old River Hydroelectric LP v. Ingram Barge Co.*,
  Case No. 10-30466 (5th Cir. Apr. 15, 2011) ........................................................................21, 22

*City of Milwaukee v. Illinois*,
  451 U.S. 304 (1981)........................................................................13, 15

*Cont'l Oil Co. v. London S.S. Owner's Mut. Ins. Ass'n, Ltd.*,
  417 F.2d 1030 (5th Cir. 1969) ........................................................................11

*Corpus Christi Oil & Gas Co. v. Zapata Gulf Marine Corp.*,
  71 F.3d 198 (5th Cir. 1995) ........................................................................21

*Demette v. Falcon Drilling Co.*,
  280 F.3d 492 (5th Cir. 2002) ........................................................................7, 9

*Diamond Offshore Co. v. A&B Builders, Inc.*,
  302 F.3d 531 (5th Cir. 2002), *overruled in part on other grounds by Grand Isle
  Shipyard Inc. v. Seacor Marine, LLC*, 589 F.3d 778 (5th Cir. 2009) ........................................5

*Dunham-Price Group, LLC v. CITGO Petroleum Corp.*,
  No. 2:07 CV 1019, 2010 WL 1285446 (W.D. La Mar. 31, 2010)...........................................20

*East River S.S. Corp. v. Transamerica Delaval Inc.*,
  476 U.S. 858 (1986)........................................................................................................8

*Gabarick v. Laurin Mar. (Am.) Inc.*,
  623 F. Supp. 2d 741 (E.D. La. 2009) ....................................................................................15

*Gough v. Natural Gas Pipeline Co. of Am.*,
  996 F.2d 763 (5th Cir. 1993) ................................................................................................21

*Gulf Offshore Co. v. Mobil Oil Corp.*,
  453 U.S. 473 (1981)................................................................................................5, 10

*Illinois v. City of Milwaukee*,
  406 U.S. 91 (1972)........................................................................................................15

*IMTT-Gretna v. Robert E. Lee S.S.*,
  993 F.2d 1193 (5th Cir. 1993) ........................................................................................12, 21

*In re Taira Lynn Marine Ltd. No. 5, LLC*,
  444 F.3d 371 (5th Cir. 2006) ..........................................................................20, 21, 23

*Int'l Paper Co. v. Ouellette*,
  479 U.S. 481 (1987)........................................................................................15, 16, 17, 18

*Johnson v. Colonial Pipeline Co.*,
  830 F. Supp 309 (E.D. Va 1993) ................................................................................18, 19

*Kingston Shipping Co., Inc. v. Roberts*,
  667 F.2d 34 (11th Cir. 1982) ................................................................................................20

*Laredo Offshore Constructors, Inc. v. Hunt Oil Co.*,
  754 F.2d 1223 (5th Cir. 1985) ................................................................................................10

*Lloyd's Leasing Ltd. v. Conoco*,
  868 F.2d 1447 (5th Cir.), *cert. denied*, 493 U.S. 964 (1989)...................................................21

*Louisiana ex rel. Guste v. M/V TESTBANK*,
  752 F.2d 1019 (5th Cir. 1985) (en banc) ..............................................................................22

*Lutz v. Chromatex, Inc.*,
  718 F. Supp. 413 (M.D. Pa. 1989)........................................................................................23

*Marathon Pipe Line Co. v. LaRoche Indus. Inc.*,
   944 F. Supp. 476 (E.D. La. 1996) ........................................................................18

*Mathiesen v. M/V OBELIX*,
   817 F.2d 345 (5th Cir.), *cert. denied*, 484 U.S. 898 (1987) ...................................21

*Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n*,
   453 U.S. 1 (1981) ..............................................................................................23, 24

*Miller v. E.I. Du Pont de Nemours & Co.*,
   880 F. Supp. 474 (S.D. Miss. 1994) ....................................................................23

*Mills v. Dir., Office of Workers Comp. Program*,
   877 F.2d 356 (5th Cir. 1989) ................................................................................7

*Mobil Oil Corp. v. Higginbotham*,
   436 U.S. 618 (1978) ............................................................................................14

*Mobil Oil Exploration & Producing SE, Inc. v. United States*,
   530 U.S. 604 (2000) ............................................................................................17

*Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atl. Corp.*,
   924 F. Supp. 1436 (E.D. Va. 1996), *aff'd*, 122 F.3d 1062 (4th Cir. 1997) .............14

*New Hampshire Ins. Co. v. Martech USA, Inc.*,
   993 F.2d 1195 (5th Cir. 1993) ..............................................................................10

*Nicor Supply Ships Assocs. v. Gen. Motors Corp.*,
   876 F.2d 501 (5th Cir. 1989) ................................................................................21

*Norfolk Shipbuilding & Drydock Corp. v. Garris*,
   532 U.S. 811 (U.S. 2001) ....................................................................................14

*Olsen v. Shell Oil Co.*,
   708 F.2d 976 (5th Cir. 1983) ................................................................................5

*Paul v. United States*,
   371 U.S. 245 (1962) ............................................................................................5

*Pennzoil Producing Co. v. Offshore Exp., Inc.*,
   943 F.2d 1465 (5th Cir. 1991) ..............................................................................21

*Petito v. A.M. Robins Co.*,
   750 So.2d 103 (Fla. Dist. Ct. App. 2000), *rev. denied*, 780 So.2d 912 (Fla. 2001) ...............13

*Rodrigue v. Aetna Cas. & Sur. Co.*,
   395 U.S. 352 (1969) ......................................................................................4, 5, 9

*Rodriguez v. Am. Cyanamid Co.*,
    858 F. Supp. 127 (D. Ariz. 1994) ...................................................................23, 24

*Rogers v. Coastal Towing, L.L.C.*,
    723 F. Supp. 2d 929 (E.D. La. 2010) ..................................................................12

*Smith v. Penrod Drilling Corp.*,
    960 F.2d 456 (5th Cir. 1992) .............................................................................10

*State of Louisiana ex rel. Guste v. M/V TESTBANK*,
    524 F. Supp. 1170 (E.D. La. 1981), *aff'd en banc on other grounds*, 752 F.2d 1019
    (5th Cir. 1985), *cert. denied*, 477 U.S. 903 (1986) .............................................22

*Strong v. B.P. Exploration & Prod., Inc.*,
    440 F.3d 665 (5th Cir. 2006) ...............................................................................9

*Tanguis v. M/V Westchester*,
    153 F. Supp. 2d 859 (E.D. La. 2001) ..................................................................15

*Tennessee Gas Pipeline v. Houston Cas. Ins. Co.*,
    87 F.3d 150 (5th Cir. 1996) .................................................................................9

*Texas Eastern Transmission Corp. v. McMoRan Offshore Exploration Co.*,
    877 F.2d 1214 (5th Cir. 1981), *cert. denied*, 493 U.S. 937 (1989).........................21

*Turner v. Murphy Oil USA, Inc.*,
    No. 05-4206, 2007 WL 4208986 (E.D. La. Nov. 21, 2007)..............................18, 19

*Union Texas Petroleum Corp. v. PLT Engineering, Inc.*,
    895 F.2d 1043 (5th Cir. 1990) ...........................................................................10

*Wooten v. Pumpkin Air, Inc.*,
    869 F.2d 848 (5th Cir. 1989) .............................................................................10

*Yamaha Motor Corp. v. Calhoun*,
    516 U.S. 199 (1996).................................................................................8, 9, 11

## STATUTES

33 U.S.C.
    § 1365(a)(1) ...................................................................................................24
    § 2702........................................................................................................14, 15, 19
    § 2713(a) .......................................................................................................18
    § 2718(a) .......................................................................................................18
    § 2751...........................................................................................................14

42 U.S.C.
§§ 6901–6992(k) ..................................................................................................24
§ 9607(h) ..............................................................................................................21

43 U.S.C.
§ 1333(a)(1)–(2) .....................................................................................................4

**OTHER AUTHORITIES**

135 CONG. REC. H7954-02 (daily ed. Nov. 2, 1989) ....................................................19

H.R. REP. NO. 101-653 (1990), *reprinted in* 1990 U.S.C.C.A.N. 779 ...........................14

H.R. REP. NO. 95-590 (1977), *reprinted in* 1978 U.S.C.C.A.N. 1450 ........................5, 6

RESTATEMENT (SECOND) OF TORTS § 288(b) (1965) ....................................................24

THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 4-4 (2d ed. 1994) ...........10

## I.      INTRODUCTION

The Non-Operating Defendants[1] respectfully submit this single consolidated Reply to the arguments pertaining to them in both the Plaintiffs Steering Committee's ("PSC's") Omnibus Oppositions to Defendants' Motions to Dismiss Master Complaints for Pleading Bundles B1 [Rec. Doc. 1821] and B3 [Rec. Doc. 1815].  In their pending Motions to Dismiss the B1 and B3 Master Complaints, the Non-Operating Defendants made four primary arguments:

(1)     all of Plaintiffs' state law causes of action against the Non-Operating Defendants in both the amended B1 and B3 Master Complaints must be dismissed because state law does not apply to this case under the Outer Continental Shelf Lands Act ("OCSLA") choice of law rules, and as a matter of conflict preemption;

(2)     the B1 Plaintiffs' claims for economic losses resulting from an oil spill under the general maritime law are displaced by the Oil Pollution Act ("OPA"), and even if they were not, the B1 Plaintiffs' claims are barred by the rule of *Robins Dry Dock*;

(3)     the B1 Plaintiffs fail to state a claim under OPA because they do not allege proper presentment of their claims, which is a condition precedent to maintaining an OPA suit; and

(4)     the B3 Plaintiffs' maritime negligence and other maritime claims (and, to the extent available, the B1 Plaintiffs' maritime negligence claims) fail because Plaintiffs do not allege that the Non-Operating Defendants had a right to exercise operational control over any activity or instrumentality that allegedly caused Plaintiffs harm.

The PSC responded to the Non-Operating Defendants' arguments on the fourth point in a separate Opposition brief [Rec. Doc. 1803] to which the Non-Operating Defendants also reply in a separate document filed contemporaneously herewith.  This Reply responds to Plaintiffs' arguments on the first three points and demonstrates that (1) all state law claims and remedies are unavailable under OCSLA and federal preemption principles; (2) Plaintiffs' general maritime law causes of action for remedies covered by OPA are both displaced by OPA and fail to state a claim; and (3) Plaintiffs have not satisfied OPA's mandatory presentment condition to filing suit.

---

[1]      "Non-Operating Defendants" refers collectively to MOEX Offshore 2007 LLC, MOEX USA Corporation, Anadarko Petroleum Corporation, and Anadarko E&P Company LP.

With respect to the substantive law applicable to this case, the allegations of both the amended B1 and B3 Master Complaints show that federal law, not the law of any State, is the only law that applies to Plaintiffs' claims.  Section 1333(a)(1) of OCSLA mandates that in cases such as this involving a vessel temporarily attached to the OCS for purposes of mineral exploration, federal law applies exclusively to all claims arising out of the activities of the vessel. Because the *Deepwater Horizon* was not an artificial island or other fixed structure, there is no means by which state law can apply as surrogate federal law under OCSLA Section 1333(a)(2). Also, under ordinary principles of preemption, comprehensive federal statutes governing interstate pollution preempt state remedies.  Cases of interstate water pollution are always governed by federal law, and, where permitted by federal law, the law of the location of the source of pollution.  But here, the location of the source of pollution is an area of exclusive federal sovereignty.  The inevitable conclusion is that neither the B1 nor the B3 Plaintiffs can assert claims under state law, and all state law causes of action in both the amended B1 and B3 Bundle Master Complaints must be dismissed.

Plaintiffs therefore must proceed only under federal statutory law or maritime law. Applicable federal statutes in this case, however, automatically displace all duplicative causes of action under federal common law, including maritime law.  Therefore, the B1 Plaintiffs cannot assert any claims under the general maritime law for damages that are covered by OPA, because OPA displaces all duplicative or supplemental maritime remedies.  Even if OPA did not displace Plaintiffs' general maritime law claims, the B1 Plaintiffs' claims still would fail because Plaintiffs do not allege concomitant injury to a proprietary interest in more than the barest of conclusory terms, such that those claims are barred under the rule of *Robins Dry Dock*.  Only the

B3 Plaintiffs can assert their personal injury claims under the general maritime law, because OPA does not cover personal injury damages.[2]

Thus, OPA is the B1 Plaintiffs' <u>only</u> available cause of action for the economic losses they seek.  But the B1 Plaintiffs fail to state a claim under OPA, because OPA requires that all OPA claims first be presented to the designated responsible party.  The presentment requirement is a condition precedent to filing suit, and Plaintiffs do not allege that they have complied.  The Court should order that all claims by plaintiffs that have not complied with the presentment requirement are dismissed, and direct the PSC to amend their Master Complaint to properly allege presentment on behalf of those plaintiffs that <u>have</u> complied with OPA, if any exist.

Plaintiffs refuse to meet any of the above arguments head-on.  With respect to the total exclusivity of federal law imposed by OCSLA Section 1333(a)(1), Plaintiffs confuse the issue by reference to inapplicable sections of the statute (sections 1333(a)(2) and 1333(b)) and equally inapplicable admiralty choice-of-law rules.  With respect to federal statutes' preemption of state remedies in cases of interstate water pollution, Plaintiffs do not even acknowledge the comprehensive regulatory regimes in place under OCSLA, the Coastal Zone Management Act ("CZMA"), the Clean Water Act ("CWA"), and OPA.  With respect to OPA's automatic displacement of duplicative maritime remedies, Plaintiffs misdirect the Court to inapposite case law concerning federal preemption of state law.  And on the issue of OPA presentment, Plaintiffs simply ask the Court to look the other way and ignore the fact that an uncounted multitude of individual plaintiffs in this case have flouted OPA's clear mandate.

---

[2]    But, as shown in the Non-Operating Defendants' Reply to PSC's Opposition to Anadarko and MOEX Motions to Dismiss Negligence Claims, filed contemporaneously herewith, the B3 Plaintiffs' maritime negligence claims against the Non-Operating Defendants still fail because the B3 Plaintiffs fail to allege that the Non-Operating Defendants had the right to exercise operational control over the activities or instrumentalities that allegedly caused them harm.

All of Plaintiffs' arguments are unavailing, and all of their claims against the Non-Operating Defendants fail and must be dismissed.

## II. ARGUMENT

### A. Federal Law Governs All Claims in this Case to the Exclusion of State Law.

Plaintiffs concede that the Court must apply the choice of law provisions of the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1333(a)(1)–(2). Omnibus B1 Opp. at 21. However, Plaintiffs ignore OCSLA's mandate that where, as here, maritime law applies to a case under Section 1333(a)(1), state law <u>cannot</u> apply under any circumstances. *Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352, 357 (1969). Plaintiffs' failure to address Section 1333(a)(1) dooms their choice-of-law analysis.

Plaintiffs argue that, through the application of maritime law choice of law rules, the law of any and all of the Gulf Coast States is available to them. That position is unprecedented, unworkable, and foreclosed by settled law. The maritime choice of law rules that occasionally permit supplementation of maritime law with state law are <u>irrelevant</u> in OCSLA cases. Moreover, even if the maritime choice of law rules Plaintiffs rely on applied here, they still would not help Plaintiffs in their efforts to apply state law to this case, because there simply is no gap in federal substantive law for state law to fill.

#### 1. The *Deepwater Horizon* was an OCSLA situs under Section 1333(a)(1).

OCSLA Section 1333(a)(1) subjects the soil and subsoil of the OCS and all extraction operations there to exclusive federal jurisdiction. It provides that:

> The Constitution and laws and civil and political jurisdiction of the United States are hereby extended to the sub-soil and seabed of the outer Continental Shelf and to all artificial islands, and all installations and other devices permanently or temporarily affixed to the seabed, which may be erected thereon for the purpose of exploring for, developing, or producing resources therefrom . . . to the same

extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State . . . . (emphasis added).

The purpose of Section 1333(a)(1) is "'to assert the exclusive jurisdiction and control of the Federal Government of the United States over the seabed and subsoil of the outer Continental Shelf, and to provide for the development of its vast mineral resources.'" *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 479–480 & n.7 (1981) (quoting S. REP. NO. 83-411, at 2 (1953)). Thus, "[a]ll law applicable to the Outer Continental Shelf is federal law," and all cases "involving events occurring on the Shelf [are] governed by federal law . . . ." *Id.* at 480–81. The consequence of Section 1333(a)(1) is that state law does not and cannot apply of its own force to cases arising from events on a 1333(a)(1) OCSLA situs. *See Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352, 357 (1969); *see also Olsen v. Shell Oil Co.*, 708 F.2d 976, 980 n.2 (5th Cir. 1983); *cf. Paul v. United States*, 371 U.S. 245, 268 (1962).

The *Deepwater Horizon* was an OCSLA situs under Section 1333(a)(1) because, at the time of the incident, it was "temporarily attached to the [OCS] seabed . . . for the purpose of exploring for, developing, or producing resources therefrom . . . ." Plaintiffs allege this in the Amended B1 Complaint and admit it in their Opposition. *See* Amend. Mast. Compl. B1 at ¶¶ 403–10; Omnibus B1 Opp. at 24.[3] OCSLA's legislative history and Fifth Circuit precedent confirm that a semi-submersible drilling rig like the *Deepwater Horizon*, though always a vessel, is also an OCSLA situs under Section 1333(a)(1) whenever "temporarily attached to the seabed [of the OCS]." *See* H.R. REP. NO. 95-590, at 128 (1977), *reprinted in* 1978 U.S.C.C.A.N. 1450,

---

[3]    In their Opposition, Plaintiffs argue that "the *Deepwater Horizon* was never attached to the ocean floor; instead, it stabilized itself by using complex 'thruster' technology and connected to nothing at all, except—via a 5,000-foot long riser pipe—the wellhead." Omnibus B1 Opp. at 24. Thus, according to Plaintiffs, the *Deepwater Horizon* was attached to nothing, except for what it was attached to—the wellhead on the ocean floor. The Plaintiffs' logical contortions notwithstanding, they recognize, as they must, that the *Deepwater Horizon* was temporarily attached to the wellhead on the floor of the OCS by a riser pipe for purposes of mineral exploration.

1534.  The House Report for the 1978 amendments to OCSLA states: "Section 203—Laws Applicable to Outer Continental Shelf[:] . . . It is thus made clear that Federal Law is to be applicable to all activities on all devices in contact with the seabed for exploration, development, and production.  The Committee intends that Federal Law is, therefore, to be applicable to activities on drilling ships, semi-submersible drilling rigs, and other watercraft, when they are connected to the seabed by drillstring, pipes, or other appurtenances, on the OCS for exploration, development, or production purposes."  *Id.* (emphasis added); *see also Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 542–43 (5th Cir. 2002), *overruled in part on other grounds by Grand Isle Shipyard Inc. v. Seacor Marine, LLC*, 589 F.3d 778, 782–83 (5th Cir. 2009).

Thus, at the time of the activities or events giving rise to all of the B1 and B3 Plaintiffs' alleged injuries, the *Deepwater Horizon* was a situs covered by Section 1333(a)(1) to which federal law alone applies, to the total exclusion of state law.

**2.     State law does not apply as surrogate federal law under Section 1333(a)(2).**

The only way that state law can apply in a case under Section 1333(a)(1) is as surrogate federal law by operation of OCSLA's second substantive law provision, Section 1333(a)(2), which provides in pertinent part:

> To the extent that they are applicable and not inconsistent with this [Act] or with other Federal laws and regulations . . . now in effect or hereafter adopted, the civil and criminal laws of each adjacent State . . . are declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon . . . .

The situs requirement of Section 1333(a)(2) is narrower than that of Section 1333(a)(1). While both encompass the OCS subsoil and seabed and artificial islands, Section 1333(a)(2) does not reach "installations and other devices . . . temporarily attached to the seabed." (emphasis added).

The difference between the two sections' situs requirements is significant in this case. Because the *Deepwater Horizon* is an OCSLA situs under Section 1333(a)(1) due solely to its temporary attachment to the seabed, the *Deepwater Horizon* is exclusively subject to federal statutory and maritime law, and state law cannot be applied to it even as surrogate federal law under Section 1333(a)(2).   Accordingly, as a consequence of the plain language of OCSLA Sections 1333(a)(1) and (2), only federal claims can be brought in this case, and state law does not apply either of its own force or as surrogate federal law.

### 3.      Plaintiffs misapply the OCSLA situs requirements.

In opposing the Non-Operating Defendants' motions to dismiss, Plaintiffs fail to address the applicability and consequences of Section 1333(a)(1).   Skipping straight to Section 1333(a)(2), Plaintiffs argue that, because the *Deepwater Horizon* is not a situs covered by Section 1333(a)(2) (*i.e.*, it was not <u>permanently</u> attached to the seabed), the *Deepwater Horizon* "was not an OCSLA situs," and general maritime choice-of-law principles should apply. Omnibus B1 Opp. at 23.  Plaintiffs thereby confuse an OCSLA situs like the *Deepwater Horizon* that is "temporarily attached" to the seabed under 1333(a)(1), and to which federal law applies exclusively, with an OCSLA situs that is an "artificial island" or "fixed structure," to which state law may apply as surrogate federal law under Section 1333(a)(2).

Further confusing the analysis, Plaintiffs erroneously argue that the "Fifth Circuit has conclusively stated that the 'situs' required to trigger OCSLA refers to the location of the injury."   Omnibus B1 Opp. at 23.  For support, Plaintiffs cite only inapposite cases concerning OCSLA Section 1333(b), a separate provision that adopts the Longshore and Harbor Workers' Compensation Act ("LHWCA") <u>for workers' compensation claims</u> resulting from OCS operations.  *See Demette v. Falcon Drilling Co.*, 280 F.3d 492, 498 (5th Cir. 2002) (concluding that Section 1333(b) applied when an injury arose on vessel temporarily attached to OCS); *Mills*

*v. Dir., Office of Workers Comp. Program*, 877 F.2d 356, 357 (5th Cir. 1989) (holding that Section 1333(b) depends on the "situs" of an injury).   Section 1333(b)'s "situs-of-injury" requirement comes from the text of Section 1333(b) itself, and there is no support for applying that requirement to cases controlled by Sections 1333(a)(1) or 1333(a)(2).  *See Mills*, 877 F.2d at 357 ("OCSLA's provision adopting LHWCA includes a situs of injury requirement").   Thus, because Plaintiffs are not bringing claims under the LHWCA under Section 1333(b), regardless of where Plaintiffs allege their injuries occurred, Section 1333(a)(1) mandates that only federal law can apply in this case.

### B.    Federal Maritime Law Applies and State Law Does Not Supplement It.

Cases such as this one involving drilling vessels that are covered by Section 1333(a)(1), but not by Section 1333(a)(2)(A) are cases within the federal courts' admiralty jurisdiction, governed by federal maritime law.   Plaintiffs and the Non-Operating Defendants agree that, under *Jerome B. Grubart v. Great Lakes Dredge & Dock Co.*, this case satisfies both the location test and the substantial relationship test for admiralty jurisdiction.   Omnibus B1 Opp. at 26 (citing 513 U.S. 527, 534 (1995)).

Contending that state law supplements maritime law, Plaintiffs argue that the Non-Operating Defendants may be sued under such diverse state law theories as Medical Monitoring under Florida Law; strict liability under the Florida Pollutant Discharge Prevention and Control Act (the "Florida Act"); Negligence *Per Se* pursuant to "statutory standards . . . under Louisiana, Texas, Mississippi, Alabama, [and] Florida law;" Battery, Negligence, Gross Negligence and Nuisance.  Plaintiffs think that they are free to pick and choose among their preferred causes of action from each and every Gulf State.  Their self-serving view is unprecedented and contrary to law.

"With admiralty jurisdiction comes the application of substantive admiralty law." *East River S.S. Corp. v. Transamerica Delaval Inc*., 476 U.S. 858, 864 (1986).  While Plaintiffs are correct that the mere exercise of admiralty jurisdiction does not necessarily displace state law, s*ee Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 206 (1996), the ordinary maritime choice-of-law rules that produce that result do not apply here.  OCSLA's statutory choice-of-law rule displaces all others, including maritime choice-of-law rules.  And as already shown, OCSLA ousts state law under Section 1333(a)(1), without reintroducing it as surrogate federal law under Section 1333(a)(2).

> **1.    State law cannot be used to supplement maritime law in cases covered by OCSLA Section 1333(a)(1).**

Under the "maritime but local" exception, in non-OCLSA cases admiralty courts sometimes supplement maritime law with state remedies after applying a balancing test, considering (1) whether there is applicable federal maritime law; (2) whether the state has a substantial, legitimate interest in application of its law; and (3) whether the application of state law threatens the interest of uniformity.  THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 4-4, at 143–44 (2d ed. 1994); *New Hampshire Ins. Co. v. Martech USA, Inc.*, 993 F.2d 1195, 1198 (5th Cir. 1993).  That test has no place here because none of the events complained of occurred in state waters.  Furthermore, the "maritime but local" test cannot apply because "OCSLA . . . supersede[s] the normal choice-of-law rules that the forum would apply," such as contractual choice of law provisions, the forum state's choice of law rules, and—critically—maritime choice-of-law rules.  *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 482 n.8 (1981); *see also Union Texas Petroleum Corp. v. PLT Engineering, Inc.*, 895 F.2d 1043, 1050 (5th Cir. 1990) ("OCSLA is . . . a Congressionally mandated choice of law provision . . .");

*Wooten v. Pumpkin Air, Inc.*, 869 F.2d 848, 852 (5th Cir. 1989) (rejecting argument that Section 1333 adopts the choice-of-law rules of adjacent state).

The "maritime but local" choice of law rule is fundamentally incompatible with OCSLA: Section 1333(a)(1) removes all doubt about federal law's exclusivity on the OCS where, as here, the vessel is temporarily attached, and Section 1333(a)(2) prescribes the only way for state law to apply.  No precedent reaches an opposite result.  *See, e.g., Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352, 360 (1969); *Demette v. Falcon Drilling Co.*, 280 F.3d 492, 497 (5th Cir. 2002) ("the courts of this circuit have held that if the contract is a maritime contract, federal maritime law applies of its own force, and state law does not apply") *overruled in part on other grounds by Grand Isle Shipyard Inc. v. Seacor Marine, LLC*, 589 F.3d 778, 782–83 (5th Cir. 2009); *Smith v. Penrod Drilling Corp.*, 960 F.2d 456, 459 (5th Cir. 1992) ("When an event occurs on an OCSLA situs but also is governed by maritime law, maritime law controls") (citation omitted)) *overruled in part on other grounds by Grand Isle Shipyard Inc.*, 589 F.3d at 782–83; *Laredo Offshore Constructors, Inc. v. Hunt Oil Co.*, 754 F.2d 1223, 1229 (5th Cir. 1985) ("where admiralty and OCSLA jurisdiction overlap, the case is governed by maritime law").  The only choice-of-law rule is provided by Section 1333, which here precludes application of state law.

###        2.        State law does not supplement maritime law in this case because there is no "gap" to be filled by state law.

Even if ordinary maritime choice-of-law rules apply, and even if the Court concludes that application of state law would "accommodate[] the States' interest in regulating maritime affairs within their territorial waters," as required by *Yamaha*, 516 U.S. at 215 n.13 (emphasis added), Plaintiffs still could not call upon state law.  As Plaintiffs concede, state law applies only to fill gaps in maritime law.  Omnibus B1 Opp. at 54; *see also Cont'l Oil Co. v. London S.S. Owner's*

*Mut. Ins. Ass'n, Ltd.*, 417 F.2d 1030, 1036 (5th Cir. 1969).  Yet Plaintiffs fail to identify <u>any</u>

actual gaps in the federal maritime or statutory law to be filled.

Plaintiffs only identify two supposed "gaps" in general maritime law relevant to the Non-

Operating Defendants that they would fill with Florida law: attorneys' fees under the Florida

Pollutant Discharge Prevention and Control Act (the "Florida Act") and medical monitoring

damages.[4]  Plaintiffs misapprehend the entire concept of a "gap" in the maritime law.  A "gap"

exists only where "there is no right to recover under the general maritime law."  *Byrd v.*

*Napoleon Ave. Ferry Co*., 125 F. Supp. 573, 577 (E.D. La. 1954), *aff'd per curiam*, 227 F.2d 958

(5th Cir. 1955).   State law cannot be used "as a remedy to enforce a pre-existing right" for

which a remedy already exists in the general maritime law.  *Id.* at 578.  Indeed, in *Yamaha Motor*

*Corp.*, on which Plaintiffs mistakenly rely, the Supreme Court only approved applying state

<u>remedial</u> law in non-OCS cases involving deaths of non-seamen occurring in state territorial

waters, because in that unusual case, neither maritime law nor a federal statute provided a

wrongful death remedy.  *See* 516 U.S. at 216 n.14 (leaving open the question whether state law

can supply "standards governing liability, as distinguished from the rules on remedies").  There

is no comparable situation here.

Plaintiffs do not contest that the Florida Act provides remedies duplicative in every sense

of the remedies available under OPA.  Plaintiffs instead argue that the Florida Act "fills a gap

that might otherwise not be available under the general maritime law" because "[i]f this Court

were to find that attorneys' fees were unavailable under the general maritime law, for example,

---

[4]      Plaintiffs do not even attempt to explain why <u>Florida</u> law should apply to the claims of plaintiffs
in Louisiana, Texas, Alabama, Mississippi, or other places more distant.  Nor do Plaintiffs attempt to
identify gaps in the general maritime or other federal law that their negligence *per se*, negligence, gross
negligence, or battery claims are supposed to fill, so these claims all must be dismissed.  Plaintiffs do
argue that state law punitive damages remedies fill a "gap" in the general maritime law, but do not seek
punitive damages against the Non-Operating Defendants.

attorneys' fees would nevertheless be available under the Florida Act."  Omnibus B1 Opp. at 55.
Likewise, Plaintiffs do not contend that maritime law provides <u>no remedy</u> in the form of medical
monitoring damages—nor could they, given that they seek to avail themselves of the remedy in
their amended B3 Master Complaint.  Plaintiffs instead seek to recover under Florida law
because, to recover medical monitoring damages under maritime law, a plaintiff must allege and
prove actual injury, and this the B3 Plaintiffs fail to do.[5]

That maritime law precludes aspects of the remedies Plaintiffs seek does not mean that
there is a "gap" in the law that state law may fill.  Maritime law answers the questions Plaintiffs
raise, even if Plaintiffs are displeased with the answers.  Thus, assuming, as Plaintiffs do, that
this Court will conclude that maritime law precludes their claims for attorneys' fees and medical
monitoring, that is not a reason to look to state law to provide a different answer.  To the
contrary, binding Fifth Circuit precedent expressly prohibits providing a remedy under state law
where one is denied under maritime law.  *IMTT-Gretna v. Robert E. Lee S.S.*, 993 F.2d 1193,
1195 (5th Cir. 1993) ("To allow state law to supply a remedy when one is denied in admiralty
would serve only to circumvent the maritime law's jurisdiction").  Plaintiffs' arguments that state
law can be used to supplement their claims against the Non-Operating Defendants are therefore
specious.

---

[5]        Contrary to Plaintiffs' contention, Florida medical monitoring law is in no way "representative of
many state laws across the country," and applying it would undermine the goal of uniformity in the
general maritime law.  Omnibus B3 Opp. at 18.  Though some far-flung jurisdictions like New York,
Utah, and Arizona may concur, Florida is alone among the Gulf States in eschewing the present injury
requirement—a reality Plaintiffs concede.  See Omnibus B3 Opp. at 16 n.10.  Cherry-picking the most
favorable state law when it conflicts with all nearby jurisdictions "interferes with the proper harmony and
uniformity of the general maritime law in its . . . interstate relations."  *Rogers v. Coastal Towing, L.L.C.*,
723 F. Supp. 2d 929, 933 (E.D. La. 2010) (declining to supplement federal maritime law with state
Professional Rescuer's doctrine because it was inconsistently recognized and applied among the states).

### 3.    Even if Florida law applied, Plaintiffs fail to state a claim for medical monitoring damages.

Ultimately, Plaintiffs have not sufficiently pleaded a Florida medical-monitoring claim against the Non-Operating Defendants.  Under the Florida decisions that have recognized the claim (the Florida Supreme Court has not), a plaintiff must show, *inter alia*, exposure to greater than normal background levels of a proven hazardous substance, caused by a defendant's negligence, for which the prescribed monitoring regime is reasonably necessary.  *See Petito v. A.M. Robins Co.*, 750 So.2d 103, 106–07 (Fla. Dist. Ct. App. 2000), *rev. denied*, 780 So.2d 912 (Fla. 2001) (describing elements of claim for medical monitoring).  Plaintiffs have failed to plead any negligence on the part of the Non-Operating Defendants that caused any alleged exposure to hazardous materials.[6]  Plaintiffs also have failed to allege that any particular monitoring regime is reasonably necessary.  *See* Non-Operating Defendants' B3 Memorandum, 35–37 (citing *Jacobs v. Osmose, Inc.*, No. 01-944-CIV, 2002 WL 34241682, at *3 (S.D. Fla. Jan. 3, 2002) and *Player v. Motiva Enters.*, No. Civ. 02-3216, 2006 WL 166452, at *9 (D.N.J. Jan. 20, 2006)).  Dismissal of the Florida medical-monitoring claim against the Non-Operating Defendants is therefore proper even if Florida law applied (which it does not).

### C.    OPA Displaces Maritime Law Causes of Action for Remedies Covered by OPA.

The B1 Plaintiffs seek to recover their economic losses under the general maritime law of negligence, but this claim fails as well.  "[W]hen Congress addresses a question previously governed by a decision rested on federal common law," federal common law is superseded by the statute.  *City of Milwaukee v. Illinois*, 451 U.S. 304, 314 (1981).  In this case, OPA provides

---

[6]    Moreover, Plaintiffs' Opposition also fails to address the lack of <u>any</u> allegations linking the Non-Operating Defendants to the use of, or Plaintiffs' alleged exposure to, dispersants or other chemicals.  *See* Non-Operating Defendants' B3 Memorandum, 11–13.

remedies for the economic injuries the B1 Plaintiffs allege.  Because Congress has spoken, Plaintiffs have no resort to the general maritime law and must comply with OPA.

Plaintiffs confuse the issue by reference to principles governing federal statutory preemption of state law, rather than federal statutory displacement of federal common law.  *See* Omnibus B1 Opp. at 35.  However, the legal standards are not the same.[7]  Where a federal statute squarely addresses an issue or provides a remedy, duplicative or supplemental remedies under the general maritime law are <u>automatically</u> displaced, and courts do not inquire into field or conflict preemption.  *See Norfolk Shipbuilding & Drydock Corp. v. Garris*, 532 U.S. 811, 817 (2001) ("[E]ven in admiralty, 'we have no authority to substitute our views for those expressed by Congress in a duly enacted statute' . . . when a statute resolves a particular issue, we have held that the general maritime law must comply with that resolution") (citation omitted); *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625 (1978) (maritime law can "fill[] a gap left by Congress' silence," but courts are not free to "rewrit[e] rules that Congress has affirmatively and specifically enacted").  Here, OPA provides a private right of action for recovery of economic losses resulting from injuries to natural resources, real or personal property, subsistence use, and profits and earning capacity where those losses result from an oil spill in navigable waters.  33 U.S.C. §§ 2702(b)(2)(A)–(E).  OPA therefore supersedes the B1 Plaintiffs' maritime negligence claims for the same types of injuries.  *Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atl. Corp.*, 924 F. Supp. 1436, 1447 (E.D. Va. 1996), *aff'd*, 122 F.3d 1062 (4th Cir. 1997) ("OPA

---

[7]      "Preemption is peculiarly an issue of concurrent power: The problem arises only where both the federal and state governments are assumed, in the absence of action by the other, to have authority to regulate the particular issue involved." Earnest A. Young, *Preemption at Sea*, 67 Geo. Wash. L. Rev. 273, 288 (1999).  Where, as here, the issue is one of displacement of <u>federal</u> common law by <u>federal</u> statutory law, there is no problem of concurrent power, and a preemption analysis inapplicable.

clearly preempts maritime law as to recovery of cleanup expenses and the cost of compensating injured persons" from an oil spill).

Plaintiffs rely heavily on OPA's savings clause in an effort to resurrect their general maritime negligence claims, but OPA's savings clause has no impact on this ordinary principle of maritime law.  33 U.S.C. § 2751.  OPA's savings clause provides that OPA works no change in the maritime law unless "otherwise provided in [the] Act" itself.  *Id.* at § 2751(e); *see also* H.R. REP. NO. 101-653, at 159 (1990), *reprinted in* 1990 U.S.C.C.A.N. 779, 838 ("[T]here is no change in current law <u>unless there is a specific provision to the contrary</u>") (emphasis added).  There is no provision in OPA that alters the current and longstanding law that maritime remedies are automatically displaced by an on-point federal statute.

Plaintiffs acknowledge that the courts of this district have uniformly held that OPA displaces maritime law remedies covered by the statute.  *See* Omnibus B1 Opp. at 42 (quoting *Tanguis v. M/V Westchester*, 153 F. Supp. 2d 859, 867 (E.D. La. 2001) ("the first subsection of the admiralty and maritime savings clause recognizes that certain maritime remedies are preempted by OPA . . ."); *see also Tanguis*, 153 F. Supp. 2d at 867 (stating that OPA "includes new remedies, which, in many respects, preempt traditional maritime remedies"); *Gabarick v. Laurin Mar. (Am.) Inc.*, 623 F. Supp. 2d 741, 750–51 (E.D. La. 2009) (holding specifically that covered damages enumerated in 33 U.S.C. § 2702 are displaced by OPA).  Indeed, every court that has ever considered the issue has so held.

Plaintiffs cite no authority, and there is none, contrary to the conclusion that because OPA squarely addresses recovery of the precise injuries the B1 Plaintiffs allege, their maritime negligence claims are displaced and must be dismissed.  Plaintiffs' invitation for this Court to be the first to hold otherwise should be rejected.

### D.     Federal Law Preempts Application of State Law in This Case.

Plaintiffs' contention that state law remedies are saved from preemption in this case involving an <u>interstate</u> oil spill and concomitant <u>interstate</u> water pollution also fails.  Federal common law has <u>always</u> governed interstate water pollution, unless Congress enacts an applicable statute displacing it.  *See generally Illinois v. City of Milwaukee*, 406 U.S. 91 (1972). When federal statutory law governs, state law cannot apply unless the federal laws make room for it, and the mere fact that the federal laws contain savings clauses is not sufficient to draw that inference.  *City of Milwaukee v. Illinois*, 451 U.S. 304, 317 (1981); *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 492 (1987).

The Plaintiffs here wade into water teeming with complex and interrelated federal statutory and regulatory regimes.  As the Non-Operating Defendants explained in their Motions to Dismiss, Congress has enacted comprehensive statutes regulating not just interstate water pollution, but more pertinently, interstate water pollution <u>emanating from the OCS</u>.  *See* B1 Motion to Dismiss, 31–36.  The relevant statutes are OCSLA, the CZMA, OPA, and, to a lesser extent, the CWA.  *See id.*  The only private remedies that those laws preserve are the federal remedies in OPA, so OPA is the B1 Plaintiffs' only recourse.

Plaintiffs nevertheless argue that, in this case of alleged interstate water pollution emanating from the OCS, claims under the laws of affected Gulf States are not preempted.  <u>But Plaintiffs completely fail to address OCSLA and the CZMA</u>.  Instead, they train their sights on an argument that the Non-Operating Defendants do not make—namely, that the CWA alone preempts applying affected states' laws in this case.  Omnibus B1 Opp. at 50.  Even then, Plaintiffs' counterarguments lack merit, for they essentially contend that the CWA preempts affected state law only with respect to <u>authorized</u> discharges, thus leaving affected state law to apply in cases alleging <u>unauthorized discharges</u>.  *Id.*  No case supports that distinction, and

indeed, it makes no sense.  The CWA regulates both unauthorized and authorized discharges and, in all cases, allows only the law of a source state to apply in addition to federal law.  The preemption question in *Ouellette* did not turn on whether the source had violated the CWA or otherwise violated its permit; it turned on whether the cause of action was compatible with the broader federal scheme for controlling interstate water pollution.[8]  479 U.S. at 492.  Footnote 7 of *Exxon Shipping Co. v. Baker* does not help Plaintiffs either, as it addresses the inapposite question of whether the CWA displaces <u>federal maritime law</u> on punitive damages for commercial fisherman injured by an oil spill.  554 U.S. 471, 489 n.7 (2008).

Regardless, even if Plaintiffs' purported distinction between authorized and unauthorized discharges had a basis in the CWA, the statutes primarily at issue here—OCSLA and the CZMA—draw no such distinction.  Those laws exhaustively regulate exploration and drilling operations on the OCS for their potential environmental impacts, authorized or not.  *See Mobil Oil Exploration & Producing SE, Inc. v. United States*, 530 U.S. 604, 609–10 (2000).  Those laws "make[] it clear that affected States occupy a subordinate position . . . ."  *Ouellette*, 479 U.S. at 491.

No savings clause changes that result.  Plaintiffs rely on the savings clause in OPA, Omnibus B1 Opp. at 34, though it only preserves state laws from preemption <u>by OPA</u> and <u>not by OCSLA and the CZMA</u>, and dispute the well-established rule that conflict preemption applies even when statutes have savings clauses.  *Id.* at 53.  The lone case Plaintiffs cite, *Bates v. Dow Agrosciences*, 544 U.S. 431 (2005), is not even a conflict preemption case, and has no application here.  The question in *Bates* was what the express preemption provision in a federal insecticide act meant by the phrase "requirements for labeling or packaging in addition to or

---

[8]      In fact, in a footnote, the Court noted that the case did not involve plaintiffs' separate allegations that the defendant had exceeded the bounds of its permit.  *Ouellette*, 479 U.S. at 498 n.18.

different from those required under this subchapter."  Given the focused preemption provision, it is no surprise the Court held that state law claims totally unrelated to labeling were not preempted.  *Id.* at 443–54.  Here, express preemption is not the problem and the conflict between state and federal law is stark, as federal law regulates not just one facet of OCS operations for their environmental consequences, but all pre-spill and post-spill conduct.  States cannot attempt to do the same.

Furthermore, by its plain language, OPA saves only state law remedies that might otherwise be available; it does not open up new areas to state remedies where none previously existed.  *See* 33 U.S.C. § 2718(a) (OPA does not "<u>affect</u> . . . the authority of any State . . . from imposing any additional liabilities . . . or <u>affect</u> . . . in any way the obligations or liabilities of any person under . . . State law, including common law") (emphasis added).  The Supreme Court has <u>never</u> countenanced the application of an affected state's law in a case of <u>interstate</u> pollution, because "regulation of interstate water pollution is a matter of federal, not state, law . . . ."  *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 488 (1987) (citation omitted).  Thus, OPA's savings clause saves nothing here, because there is no valid application of state law to be saved in this context.

### E.    Plaintiffs' OPA Claim Must Be Dismissed for Failure to Allege Presentment.

As shown above, OPA provides the Bundle B1 Plaintiffs' <u>only</u> potential avenue for recovery of the economic loss and property damages they seek.  OPA requires that "all claims for removal costs or damages <u>shall</u> be presented first to the responsible party . . . ."  33 U.S.C. § 2713(a) (emphasis added).  "[T]he clear text of § 2713 creates a mandatory condition precedent barring all OPA claims unless and until a claimant has presented her claims . . . ."  *Boca Ciega Hotel, Inv. V. Bouchard Transp. Co.*, 51 F.3d 235, 240 (11th Cir. 1995).  The failure of a mandatory condition precedent requires dismissal.  *See, e.g., id.* (holding that presentment is a "mandatory condition precedent" and affirming dismissal); *Turner v. Murphy Oil USA, Inc.*, No.

05-4206, 2007 WL 4208986, at *2–3 (E.D. La. Nov. 21, 2007) (holding the same and citing both *Boca Ciega*, 51 F.3d at 240, and *Marathon Pipe Line Co. v. LaRoche Indus. Inc*., 944 F. Supp. 476, 477 (E.D. La. 1996) (requiring dismissal for lack of jurisdiction)); *Johnson v. Colonial Pipeline Co.*, 830 F. Supp 309, 310 (E.D. Va. 1993) ("If plaintiffs fail to comply with the prerequisites for bringing such a claim, the OPA claim must be dismissed").

Plaintiffs <u>concede</u> that presentment is required by OPA for OPA claims against responsible parties.  Omnibus B1 Opp. at 56.  Plaintiffs also concede that some unknown number of plaintiffs have failed to present their OPA claims as required by OPA.  *Id.* at 59–60.  Plaintiffs simply ask the Court to ignore the fact that untold thousands of plaintiffs in this case have flouted the statute.  Plaintiffs offer <u>no</u> legal basis for this position.  To allow plaintiffs to remain in court when they have failed to comply with the presentment requirement makes a mockery of Congress's entire purpose in crafting the presentment provisions.  *Boca Ciega*, 51 F.3d at 238–39 (presentment requirement reflects a congressional compromise "to temper the Act's increased liability with a congressional desire to encourage settlement and avoid litigation").

Delaying resolution would frustrate OPA's goal "to allow for quick and complete payment of reasonable claims without resort to cumbersome litigation," as delay will expose defendants to increasingly burdensome discovery and perhaps trial on claims that should never have been before the Court.  135 CONG. REC. H7954-02 (daily ed. Nov. 2, 1989) (statement of Rep. Hammerschmidt), 1989 WL 187822, at *H7695 (Westlaw).  A plaintiff who has properly presented a claim that has not been settled within 90 days should have no trouble alleging that fact in his or her complaint.  Absent an allegation that a plaintiff has complied with this jurisdictional prerequisite, the Court must dismiss the claim.

This Court simply has no discretion not to dismiss a plaintiff who had failed to give proper notice under OPA's requirements.[9]  *Abundiz v. Explorer Pipeline Co.*, Nos. Civ. A. 300CV2029H, 303CV0508H, 303CV0787H, 2003 WL 23096018, at *3 (N.D. Tex. Nov. 25, 2003) (citing *Hallstrom v. Tillamook County*,  493 U.S. 20, 26 (1989)).

### F.    The Bundle B1 Plaintiffs' Claims for Pure Economic Losses Also Fail Under the Rule of *Robins Dry Dock*.

Even if the Bundle B1 Plaintiffs' maritime negligence claims seeking pure economic losses were not displaced by OPA, they fail under the rule of *Robins Dry Dock*.  "It is unmistakable that the law of this circuit does not allow recovery of purely economic claims absent physical injury to a proprietary interest in a maritime negligence suit."  *In re Taira Lynn Marine Ltd. No. 5, LLC*, 444 F.3d 371, 377 (5th Cir. 2006) (citing *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 309 (1927) and *Louisiana ex rel. Guste v. M/V TESTBANK*, 752 F.2d 1019, 1023 (5th Cir. 1985) (en banc)); *see also Kingston Shipping Co., Inc. v. Roberts*, 667 F.2d 34 (11th Cir. 1982) ("[A] party may not recover for economic losses not associated with physical damages"); *Dunham-Price Group, LLC v. CITGO Petroleum Corp.*, No. 2:07 CV 1019, 2010 WL 1285446, at *3 (W.D. La Mar. 31, 2010) (denying plaintiffs' state law claims for economic losses resulting from negligence under *Robins Dry Dock* rule).  To the extent that Plaintiffs seek recovery of purely economic losses without alleging concomitant injury to a proprietary interest,

---

[9]     The Non-Operating Defendants do not contest that proper presentment of claims before the Gulf Coast Claims Facility ("GCCF") may satisfy OPA's presentment requirement, but note that it may do so only if presentment is made with sufficient specificity.  "If the claim does not have the necessary specificity, the responsible party will be unable to make a[n] informed offer of settlement."  *Turner v. Murphy Oil USA, Inc.*, No. 05-4206, 2007 WL 4208986, at *2 (E.D. La. Nov. 21, 2007).  To properly present a claim, the claimant must specify the amount of damages sought and provide evidence and information sufficient for the GCCF to assess (i) whether the alleged loss satisfies the causation requirements of 33 U.S.C. §§ 2702(a) and (b) and (ii) whether the claimant incurred the amount of damages alleged.  *See also Johnson*, 830 F. Supp. at 311 (holding an attempt to present inadequate where "Plaintiffs [made] no effort to describe the nature or extent of . . . alleged damages, much less to explain the basis for claiming that these damages have been sustained" and where Plaintiffs "fail[ed] to state a sum certain for any of the types of damages alleged").

Plaintiffs' maritime negligence claims must fail.

Plaintiffs advance three faulty arguments to avoid the rule of *Robins Dry Dock*, namely that (1) an admittedly inapplicable provision of CERCLA overrules the longstanding and consistently reaffirmed *Robins Dry Dock* rule; (2) the rule should be limited to cases involving contractual privity; and (3) even if it applies, the rule should not bar the economic loss claims of commercial fishermen.  All three arguments lack merit.

### 1.    CERCLA does not overrule *Robins Dry Dock*.

Plaintiffs weakly suggest that "it could be argued" that CERCLA was amended in order to overrule *TESTBANK* and *Robins Dry Dock* as "some commentators have suggested." Omnibus B1 Opp. at 75.  Plaintiffs cite one law review article for the proposition that CERCLA § 9607(h) overrules the *Robins Dry Dock* rule.  Yet Plaintiffs admit that they assert no claim under CERCLA, and that the statute is simply irrelevant.  Even if Plaintiffs had asserted a CERCLA claim, the text of § 9607(h) applies only to "[t]he owner or operator of a vessel," 42 U.S.C. § 9607(h), which the Non-Operating Defendants are not alleged to be.

No court has ever held that CERCLA overruled the *Robins Dry Dock* rule *sub silentio*. Ever since the enactment of the relevant CERCLA provision, the Fifth Circuit has uniformly upheld and applied the rule without exception—even reaffirming its vitality this month in *Catalyst Old River Hydroelectric LP v. Ingram Barge Co.*, Case No. 10-30466 (5th Cir. Apr. 15, 2011).  *See also In re Taira Lynn Marine Ltd. No. 5, LLC*, 444 F.3d 371, 379 (5th Cir. 2006) ("[P]hysical injury to a proprietary interest is a prerequisite to recovery of economic damages in cases of unintentional maritime tort") (citation and internal quotation marks omitted); *Am. River Transp. Co. v. KAVO KALIAKRA S.S.*, 206 F.3d 462 (5th Cir. 2000); *Corpus Christi Oil & Gas Co. v. Zapata Gulf Marine Corp.*, 71 F.3d 198 (5th Cir. 1995); *Gough v. Natural Gas Pipeline Co. of Am.*, 996 F.2d 763 (5th Cir. 1993); *IMTT-Gretna v. Robert E. Lee S.S.*, 993 F.2d 1193 (5th

Cir. 1993), *cert. denied*, 510 U.S. 1074 (1994); *Pennzoil Producing Co. v. Offshore Exp., Inc.*, 943 F.2d 1465 (5th Cir. 1991); *Lloyd's Leasing Ltd. v. Conoco*, 868 F.2d 1447 (5th Cir.), *cert. denied*, 493 U.S. 964 (1989); *Nicor Supply Ships Assocs. v. Gen. Motors Corp.*, 876 F.2d 501 (5th Cir. 1989); *Texas Eastern Transmission Corp. v. McMoRan Offshore Exploration Co.*, 877 F.2d 1214 (5th Cir. 1981), *cert. denied*, 493 U.S. 937 (1989); *Mathiesen v. M/V OBELIX*, 817 F.2d 345 (5th Cir.), *cert. denied*, 484 U.S. 898 (1987).  A single, decades-old law review article is no match for binding Fifth Circuit precedent.

> ## 2. *Robins Dry Dock* **is not limited to cases involving contractual privity.**

Relying on a special concurrence in a vacated Eleventh Circuit opinion, Plaintiffs argue that *Robins Dry Dock* "should be construed to apply only in cases where the plaintiff is damaged because of injury to a party in privity with the plaintiff."  Omnibus B1 Opp. at 76 (citing *Hercules Carriers, Inc. v. State of Florida*, 720 F.2d 1201, 1203 (11th Cir. 1983), *vacated and aff'd by an equally divided en banc court*, 728 F.2d 1359 (1984)).  Nearly a century of decisions applying *Robins Dry Dock* hold otherwise.  In the Fifth Circuit, the *Robins Dry Dock* rule applies to all cases of non-intentional maritime tort, as the recent decision of *Catalyst Old River Hydroelectric LP v. Ingram Barge Co.*, Case No. 10-30466 (5th Cir. Apr. 15, 2011) makes clear. There, the Fifth Circuit explained that it has "faithfully applied the *Robins* rule and consistently denied recovery for economic loss to parties who have suffered no harm to a proprietary interest."  *Id.*  The Court restated its long-held view that the rule's purpose "is pragmatic: to limit the consequences of negligence and exclude indirect economic repercussions, which can be widespread and open-ended."  *Id.* (citing *Louisiana ex rel. Guste v. M/V TESTBANK*, 752 F.2d 1019, 1022 (5th Cir. 1985) (en banc)).  "In other words . . . the *Robins* rule is a pragmatic restriction on foreseeability."  *Id.* (citing *TESTBANK*, 752 F.2d at 1022) (emphasis added).  That logic cannot be limited to contract cases.

3. **There is no exception to the *Robins Dry Dock* rule for commercial fishermen or any other class of plaintiff.**

In the Fifth Circuit, the *Robins Dry Dock* rule draws a "bright line"—without exceptions. *TESTBANK*, 752 F.2d at 1019.  Still, Plaintiffs request an exception for the purely economic claims of commercial fishermen.  Omnibus B1 Opp. at 77.  There is no such exception. Although one judge in this district has suggested such an exception <u>might</u> exist, neither the Fifth Circuit nor the Supreme Court has.  *State of Louisiana ex rel. Guste v. M/V TESTBANK*, 524 F. Supp. 1170, 1173–74 (E.D. La. 1981), *aff'd en banc on other grounds*, 752 F.2d 1019, 1027 n.10 (5th Cir. 1985) ("Whether the claims of commercial fishermen ought to be analyzed in this manner or simply carved from the rule today announced, in the fashion of *Union Oil*, or allowed at all, we leave for later"), *cert. denied*, 477 U.S. 903 (1986); *see also Barasich v. Shell Pipeline Co., LP*, Civ. No. 05-4180, 2006 WL 3913403, at *6 n.1 (E.D. La. Nov. 20, 2006) (Barbier, J.) ("This Court notes that [the commercial fishermen] exception has never been formally recognized by the Fifth Circuit or the United States Supreme Court").  The Fifth Circuit precedents reaffirming the bright line nature of the *Robins Dry Dock* rule control, and Plaintiffs' arguments must be rejected.  *See In re Taira Lynn Marine Ltd. No. 5, LLC*, 444 F.3d 371, 379 (5th Cir. 2006).

G. **Plaintiffs' Fail to State a Claim for Negligence *Per Se*.**

As noted above, Plaintiffs' negligence *per se* claims based on state law fail because state law does not apply, and Plaintiffs identify no "gap" that state law can fill.  Further, the Non-Operating Defendants have explained that Plaintiffs' negligence *per se* claims cannot be based on alleged violations of the Clean Water Act because the Act does not authorize private causes of action for damages.  *See Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 14–15 (1981); Non-Operating Defendants' B3 Memorandum, 39.  "The issue of whether

a plaintiff can assert a cause of action based on negligence *per se* is closely related to the question of whether a private cause of action exists under a statute . . . Both . . . address the question of whether the policy behind the legislative enactment will be appropriately served by using it to impose and measure civil damage liability."  *Lutz v. Chromatex, Inc.*, 718 F. Supp. 413, 428 (M.D. Pa. 1989) (citations and internal quotation marks omitted).  When Congress does not provide a private right of action in a statute, courts do not permit plaintiffs to bring negligence *per se* claims based on that statute.  *See, e.g.*, *Miller v. E.I. Du Pont de Nemours & Co.*, 880 F. Supp. 474, 480 (S.D. Miss. 1994); *Rodriguez v. Am. Cyanamid Co.*, 858 F. Supp. 127, 129 (D. Ariz. 1994).

Plaintiffs agree and even concede that *Sea Clammers* forecloses any claim of an implied private right of action under the Clean Water Act.  *See* Omnibus B3 Opp. at 41–44.  Still, they contend that their negligence *per se* claim is viable because the Act expressly allows citizens to enforce the statute as private attorneys general.  Omnibus B3 Opp. at 41–44; *see also* 33 U.S.C. § 1365(a)(1) (stating that "any citizen may commence a civil action on his own behalf . . . against any person . . . who is alleged to be in violation of . . . an effluent standard or limitation under this chapter . . .").  That contention lacks merit.

A statutory right of action to enforce statutory violations <u>on behalf of the public</u> does not imply a right of action for damages <u>suffered by an individual</u>, as courts have recognized in other contexts.  *See, e.g.*, *325-343 E. 56th St. Corp. v. Mobil Oil Corp.*, 906 F. Supp. 669, 688 (D.D.C. 1995) (rejecting claim of negligence *per se* for violation of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901–6992(k), where the court determined that there was "no express or implied private cause of action for money damages under RCRA, and . . . that the RCRA citizen suit provisions serve only to allow private plaintiffs to act as 'private attorney

generals'").  In such circumstances, Plaintiffs cannot demonstrate that they are "'a member of the class intended to be protected by the statute or regulation,'" as they must to maintain negligence *per se* claims.  *Rodriguez*, 858 F. Supp. at 129 (quoting *Delgado v. Southern Pac. Transp. Co.,* 763 F. Supp. 1509, 1517 (D. Ariz. 1991)); *see also* RESTATEMENT (SECOND) OF TORTS § 288(b) (1965) (discouraging adoption of negligence *per se* when "a legislative enactment or an administrative regulation whose purpose is found to be exclusively . . . to secure to individuals the enjoyment of rights or privileges to which they are entitled only as members of the public").

*Sea Clammers*, in fact, held that the "elaborate enforcement provisions" of the Clean Water Act, which include the citizen-suit provisions, established that Congress <u>did not</u> intend "to authorize by implication additional judicial remedies for private citizens suing under [the Act]." *Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 13–14 (1981). Plaintiffs simply cannot draw the opposite inference from the same provisions.  Plaintiffs' argument that oil qualifies as a hazardous substance under the Clean Water Act, Omnibus B3 Opp. at  42–44, is beside the point.  The issue is not whether the Act applies to oil; it is whether Plaintiffs can demonstrate a personal right of action under that Act separate and apart from rights conferred upon the public at large.  Plaintiffs' reliance on the limited private attorney general provisions in the Clean Water Act is unavailing, and their Negligence *Per Se* claim against the Non-Operating Defendants must be dismissed.

## III.    CONCLUSION

For the foregoing reasons, all of Plaintiffs' claims in Amended Master Complaints for Pleading Bundles B1 and B3 against the Non-Operating Defendants MOEX Offshore, MOEX USA, Anadarko Petroleum Corporation, and Anadarko E&P Company must be dismissed in their entirety.

Respectfully submitted,

DATED: April 29, 2011          BINGHAM McCUTCHEN, LLP


/s/*Ky E. Kirby*_____
Ky E. Kirby
ky.kirby@bingham.com
David B. Salmons
david.salmons@bingham.com
Michael B. Wigmore
michael.wigmore@bingham.com
Warren Anthony Fitch
tony.fitch@bingham.com
Randall M. Levine
randall.levine@bingham.com
2020 K Street, NW
Washington, DC 20006-1806
Telephone (202) 373-6000
Facsimile (202) 373-6001

James J. Dragna
jim.dragna@bingham.com
Bingham McCutchen LLP
355 South Grand Avenue
Suite 4400
Los Angeles, California 90071-3106
Telephone (213) 680-6436
Facsimile (213) 680-8636

KUCHLER POLK SCHELL
WEINER & RICHESON, LLC

Deborah D. Kuchler, T.A. (La. Bar No. 17013)
dkuchler@kuchlerpolk.com
Janika Polk (La. Bar No. 27608)
jpolk@kuchlerpolk.com
Robert Guidry (La. Bar No. 28064)
rguidry@kuchlerpolk.com
1615 Poydras Street, Suite 1300
New Orleans, LA  70112
Tel:  (504) 592-0691
Fax:  (504) 592-0696

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, pursuant to Pre-trial Order No. 12, I have caused the foregoing to be served on all counsel via the Lexis Nexis File & Serve system, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, who will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on April 29, 2011.


_____ /s/ *Ky E. Kirby*_____
Ky E. Kirby