UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

---------------------------------------------------------------- x
IN RE: Oil Spill by the Oil Rig            :   MDL No. 2179
"Deepwater Horizon" in the Gulf of Mexico, :
on April 20, 2010                          :   SECTION: J
                                           :
                                           :
These Pleadings Apply to:                  :   JUDGE BARBIER
*All Cases in Pleading Bundle*             :
*Section III.B(3)*                         :   MAGISTRATE SHUSHAN
                                           :
                                           :
---------------------------------------------------------------- x

**BP DEFENDANTS' REPLY IN SUPPORT OF
PARTIAL MOTION TO DISMISS PLEADING BUNDLE B3
PURSUANT TO FED. R. CIV. P. 12(B)(1) & 12(B)(6)**

The BP Defendants respectfully submit this Reply (the "Reply") in support of their Partial Motion to Dismiss Pleading Bundle B3 Pursuant to Fed. R. Civ. P. 12(b)(1) & 12(b)(6) and in response to the Omnibus Memorandum in Opposition to Motions to Dismiss Bundle B3 Master Complaint (the "Opposition").

**INTRODUCTION**

BP's Motion to Dismiss urged this Court to eliminate the unnecessary claims cluttering the B3 Master Complaint. In response, the Plaintiffs conceded two of BP's arguments by amending their Complaint to drop two of their causes of action, thus helping to refine the issues before this Court. As urged by BP in its Motion to Dismiss, the Plaintiffs have eliminated their OPA claim and their claim brought under the Florida Pollutant Discharge Prevention and Control Act. The amendment was but a small step in the right direction, though, as Plaintiffs insist on

pursuing claims and remedies that continue to cloud the issues before this Court. Notably, Plaintiffs' Opposition focuses heavily on the immunity and preemption arguments advanced by defendants other than BP, and fails to address head-on any of the dispositive arguments made by BP in its motion.

*First*, Plaintiffs fail to address entirely BP's arguments that punitive damages are not available for gross negligence under general maritime law or as a free standing cause of action and have thus abandoned those claims. *Second*, the Plaintiffs' claims for medical monitoring damages must be dismissed because Plaintiffs cannot recover lump sum medical monitoring damages under general maritime law and Florida state law does not apply. *Third*, Plaintiffs' nuisance claim must also be dismissed because no such cause of action exists under general maritime law.

## I. BECAUSE PLAINTIFFS AMENDED THE B3 MASTER COMPLAINT TO DROP THE OPA CLAIMS, THESE CLAIMS MUST BE DISMISSED WITH PREJUDICE

BP argued in its Motion to Dismiss that the Plaintiffs' OPA cause of action in the B3 Master Complaint is duplicative of the first cause of action in Plaintiffs' B1 Master Complaint and contrary to Pre-Trial Order No. 25. (Motion to Dismiss at 20–21). In response to BP's argument, the Plaintiffs filed a Motion for Leave to File a First Amended B3 Bundle Master Complaint (the "Amended Complaint") simultaneously with the filing of the Opposition. The Amended Complaint removed all OPA causes of action. As Plaintiffs acknowledged in their Opposition, they do not oppose BP's argument that the OPA claim had no place in the B3 Master Complaint, and all OPA claims are now before the Court in the B1 Master Complaint. (Opposition ("Opp.") at 2 n.2.)

BP also argued in its Motion to Dismiss that Plaintiffs' claim under the Florida Pollutant Discharge Prevention and Control Act ("PDPCA" or "the Act") must be dismissed. BP made

2

two arguments in support of dismissal: (1) the Act does not apply because Florida law does not apply, and (2) even if Florida law did apply, Plaintiffs had not alleged willful misconduct as required under the statute. (Motion to Dismiss at 16–20.) In response to these arguments, Plaintiffs eliminated their Eleventh Claim for Relief under the PDPCA, and the allegations brought under that Act are no longer before the Court, in this pleading bundle, or any other.

Because Plaintiffs have abandoned their claims by amending their complaint and not responding to BP's arguments, the motion to dismiss as to these claims must be granted. *Black v. North Panola School Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006); *Castro Romero v. Becken*, 256 F.3d 349, 354 n. 2 (5th Cir.2001); *David v. Assumption Parish Police Jury et al.*, No. Civ. A.02-765, 2003 WL 57039 at *8 (E.D. La., Jan. 6, 2003). The Amended Complaint is not a substitute for a dismissal with prejudice because Plaintiffs have already shown a propensity to amend the Master Complaints without warning. Without an order dismissing the claims with prejudice, therefore, there would be nothing to prevent the Plaintiffs from adding the claims again in a later version of the B3 Master Complaint.

## II. THE PLAINTIFFS FAILED TO RESPOND TO BP'S AND THE OTHER CO-DEFENDANTS' ARGUMENTS REGARDING PUNITIVE DAMAGES

### A. Punitive Damages Are Not Available for Gross Negligence Under General Maritime Law

In its Motion to Dismiss, BP argued that punitive damages for gross negligence are not available under federal maritime law. BP made three arguments in support of this position. *First*, as to those plaintiffs who are Jones Act seaman, BP argued that the prohibition in general maritime law against punitive damages for personal injuries under *Miles v. Apex Marine Corp.*, 498 U.S. 19 (1990), was well established, particularly in the Fifth Circuit. (Motion to Dismiss at 22–24.) *Second*, BP argued that for those Plaintiffs who are not Jones Act seamen, the principle of uniformity established by *Miles* prevents courts from awarding punitive damages under

3

general maritime law.  (*Id.* at 24–25.)  **Third**, to the extent Plaintiffs seek punitive damages for alleged property damages, their claim fails as a matter of law, because OPA displaces all federal-common-law claims.  (*Id.* at 25–26.)  A number of the Co-Defendants also made arguments that Plaintiffs' gross negligence claims should be dismissed.  NALCO argued that the Plaintiffs failed to allege facts sufficient under *Iqbal* and *Twombly* to state a claim for gross negligence.  (Nalco Motion to Dismiss at Section III.D.)  MSRC took issue with the conclusory allegations in support of Plaintiffs' gross negligence claim, while agreeing with BP's analysis that punitive damages are not available under general maritime law in the Fifth Circuit.  (MSRC Motion to Dismiss at Section VII.)

Stunningly, the Plaintiffs have failed to respond to *any* of these arguments in their nearly 50 page Opposition.  As noted above, the Fifth Circuit has found that a failure to respond to an argument to dismiss a claim will constitute abandonment of that claim.  *Black v. North Panola School Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006); *Castro Romero v. Becken*, 256 F.3d 349, 354 n.2 (5th Cir. 2001).  Given the Plaintiffs' failure to respond to a single argument made by BP or the Co-Defendants regarding the availability of punitive damages for gross negligence under general maritime law and the thorough legal analysis offered by BP (Motion to Dismiss at 21–27), BP respectfully urges this Court to rely on the papers before it and strike the Plaintiffs' claim for punitive damages in connection with their gross negligence cause of action.

    **B.**  **Plaintiffs Have No Free Standing Claim for Punitive Damages**

BP also argued in its Motion to Dismiss that Plaintiffs' free-standing cause of action for punitive damages should be dismissed because no such independent claim exists under any applicable law. (Motion to Dismiss at 26–27.)  Plaintiffs failed to respond to this argument in their Opposition.  As stated above, failure to respond to BP's arguments amounts to

4

abandonment of the claim, and for this reason alone, Plaintiffs independent cause of action for punitive damages should be dismissed.

### III. PLAINTIFFS' MEDICAL MONITORING CLAIMS MUST BE DISMISSED

Plaintiffs assert claims for lump sum medical monitoring damages under both general maritime law and Florida state law. Both claims fail because Plaintiffs cannot recover lump sum medical monitoring damages under general maritime law and Florida state law does not apply. (Motion to Dismiss at 7–13.)

#### A. Plaintiffs Have Not Stated a Claim for Medical Monitoring Under General Maritime Law

The Jones Act provides an action in negligence for the injury of a seaman.[1] *Miles v. Apex Marine Corp.*, 498 U.S. 19, 29 (1990). Lump sum medical monitoring costs are not recoverable to seamen under the Jones Act in the absence of a manifest injury. *See Metro-North Commuter R.R. Co. v. Buckley*, 521 U.S. 424 (1997); *see also Green v. McAllister Bros., Inc.*, No. 02 7588(FM), 03 1482(FM), 2005 WL 742624, at *23 (S.D.N.Y. Mar. 25, 2005) (denying as a matter of law Jones Act plaintiffs' claim to recover damages for "medical monitoring costs that they have incurred or will in the future incur" as a result of alleged exposure). Because such damages are not available to Jones Act seamen, they are not available to Plaintiffs under general maritime law. The Supreme Court has expressly stated that allowing plaintiffs to recover categories of damages under general maritime law that are prohibited under the Jones Act would undermine Congressional intent and the uniformity intended in maritime law. *Miles*, 498 U.S. at 36 ("Because [Plaintiff] cannot recover for his lost future income under the Jones Act, it cannot

---

[1] Plaintiffs argue that the Jones Act does not apply because they do not allege that BP was the employer of any of the Plaintiffs in the Amended Complaint. While the determination of each Plaintiffs' status as a seaman for purposes of the Jones Act is a question of fact—and such allegation is not made in the Amended Complaint—BP will accept the allegation for purposes of the Motion to Dismiss.

5

do so under general maritime law."). Plaintiffs' claims under general maritime law thus fail regardless of whether they are Jones Act seamen.[2]

### B. Plaintiffs Can Not Bring a Claim for Medical Monitoring Under Florida Law

Conceding that "general maritime law is silent about whether Plaintiffs may recover costs of medical monitoring," plaintiffs assert that the "Court should therefore look to state law to fill the gap." (Opposition at 15–-16.) While BP asserts that general maritime law should follow the Jones Act in this instance to maintain the uniformity demanded by *Miles*, to the extent that "state law" must be used to "fill the gap" it is not *any* state law that may be used; it is the state law from the state where the Court sits. *Alcoa S.S. Co. v. Charles Ferran & Co.,* 383 F.2d 46, 50 (5th Cir. 1967). Moreover, state law may only be used to fill in the gap in a manner not destructive of the uniformity that maritime law seeks. *Id.* In this instance, Louisiana law is clear that damages for medical monitoring of unmanifested diseases, as sought by the VoO Plaintiffs, are not permitted. LA. CIV. CODE ANN. art. 2315 (2010) *Bonnette v. Conoco, Inc.*, 837 So. 2d 1219, 1230 n.6 (La. 2003)

Plaintiffs, on the other hand, assert that Florida law should apply to fill the gap in maritime law, without offering any explanation or logic to support their selection of state law. (Opp. at 17–18.) It is hornbook case law that to the extent there is a gap that must be filled in general maritime law, the law of the state where the Court sits must be applied; the parties are not free to shop around for the state law that best serves their purposes. *Wilburn Boat Co. v. Fireman's Fund Ins.*, 348 U.S. 310 (1955). As justification for the application of Florida law, Plaintiffs argue that "many other states across the country" permit the recovery of costs of

---

[2] Plaintiffs' citation to various paragraphs in the Amended Complaint fail to demonstrate that the VoO Plaintiffs have alleged a *specific manifest injury* as required to bring a claim for medical monitoring. Not a single VoO Plaintiff—let alone all VoO Plaintiffs—identify a specific manifest injury for which he or she is seeking medical monitoring.

medical monitoring in the absence of a manifest physical injury, citing cases from land-locked jurisdictions far from the Gulf of Mexico, including Utah, West Virginia and Pennsylvania (Opp. at 18).  There is no merit to Plaintiffs' assertion that applying the law of Florida would "promote uniformity" of the general maritime law when all of the Gulf coast states involved in the *Deepwater Horizon Incident* differ from Florida on this issue.  Plaintiffs offer no other basis for this Court to radically depart from the established case law of not only Louisiana, but of all the states in the Gulf region save Florida.³  This Court should adhere to the well established rule that only Louisiana law may fill gaps in general maritime law.

Thus, whether under the Jones Act, general maritime law, or Louisiana state law to fill any "gap" in general maritime law, damages for medical monitoring are not available to the VoO Plaintiffs as pleaded in the Amended Complaint for seamen and non-seamen alike.  Plaintiffs' claims for medical monitoring under general maritime law and Florida state law should be dismissed.

## IV.  PLAINTIFFS HAVE NOT STATED A CLAIM FOR PUBLIC NUISANCE

Plaintiffs concede "that there is no public nuisance claim under federal common law or general maritime law."  (Opp. at 18.)  This concession is dispositive, and Plaintiffs' public nuisance claim should be dismissed for this reason.  Plaintiffs cannot bring a public nuisance claim under state law, as there is no "gap" to be filled by state law.  Despite suggestions to the contrary throughout Plaintiffs' Opposition, courts sitting in admiralty do not arbitrarily apply "state" law.  When an alleged tort originates at an OCSLA situs, as is the case for Plaintiffs'

---

³ *Hinton ex rel. Hinton v. Monsanto Co.*, 813 So. 2d 827, 831–32 (Ala. 2001) ("[Alabama] law provides no redress for a plaintiff who has no present injury or illness."); *Paz v. Brush Eng'rd Materials, Inc.*, 949 So. 2d 1, 5–6 (Miss. 2007) (no medical monitoring cause of action for "mere exposure to a harmful substance without proof of current physical or emotional injury from that exposure."); *Norwood v. Raytheon Co.*, 414 F. Supp. 2d 659, 665 (W.D. Tex. 2006) (applying Texas state law and finding that a Texas court would likely not recognize a medical monitoring claim without a physical injury).

nuisance claim, the test is even more stringent.  "[F]or adjacent state law to apply as surrogate federal law under OCSLA, three conditions are significant.  (1) The controversy must arise on a situs covered by OCSLA (i.e. the subsoil, seabed, or artificial structures permanently or temporarily attached thereto); (2) Federal maritime law must not apply of its own force; (3) The state law must not be inconsistent with Federal law." *Union Texas Petroleum v. PLT Eng'g*, 895 F.2d 1043, 1047 (5th Cir. 1990).

Here, Plaintiffs cannot satisfy these conditions.  Far from being silent on the issue, courts have affirmatively recognized that a nuisance cause of action cannot exist under maritime law, largely because "the federal common law of nuisance is entirely pre-empted by the more comprehensive scope of the FWPCA [Federal Water Pollution Control Act]." *Middlesex Cnty. Sewerage Auth v. Nat'l Sea Clammers Ass'n.*, 101 S. Ct. 2615, 2627 (1981).  The refusal to recognize the cause of action is grounded in the fact that a comprehensive body of statutory law declined to provide for such a cause of action.  As such, state law that does recognize a nuisance cause of action is inconsistent and may not be applied.  *See Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 214 (1996) ("When Congress has prescribed a comprehensive tort recovery regime to be uniformly applied, there is . . . no cause for enlargement of the damages statutorily provided.").  In a similar situation, an Eastern District of Louisiana Court refused to supplement with Louisiana nuisance law when a maritime tort occurred in the ocean.  *See Sekco Energy inc. v. M/V Margaret Chouest*, 820 F. Supp. 1008, 1013 (E.D. La.. 1993) (refusing to supplement with Louisiana nuisance law where a collision and resulting oil leak occurred in the ocean because maritime law applied of its own force to such an event).  There is no "gap" under maritime law and Plaintiffs' nuisance claim must be dismissed.[4]

---

[4]   As BP points out in its Motion to Dismiss, under general maritime law, the economic loss doctrine would bar recovery even if nuisance were a cognizable claim. (Motion to Dismiss at 15–16.)  Plaintiffs inexplicably rely

**CONCLUSION**

For these reasons, BP respectfully requests that this Court dismiss the Second, Seventh, and Eleventh Claims for Relief in the First Amended Master Complaint, as well as Plaintiffs' claims for punitive damages, and its claims under OPA and the Florida Pollutant Discharge Prevention and Control Act.

---

on a Pennsylvania state law exception to the economic loss doctrine as a basis for claiming that their public nuisance claim survives BP's motion to dismiss. (Opp. at 19.) Plaintiffs provide no basis for why Pennsylvania law should apply to a nuisance claim that arises in the Gulf of Mexico, or why state law is even relevant when considering how the economic loss doctrine applies to a claim under general maritime law. Under Louisiana law, however—which would apply to the extent state law is implicated at all—recovery for economic loss damages is limited to those damages that are the "***result of*** bodily harm to the claimant or physical injury to property." *Jones v. Dow Chemical Co.*, 108 F.3d 331 at *4 (5th Cir. 1997) (not selected for publication); *also see Corpus Christi Oil & Gas Co. v. Zapata Gulf Marine Corp., et al.*, 71 F. 3d 198, 202 (5th Cir. 1995) (applying law from the Fifth Circuit and finding that the recoverable economic damage must have some "direct tie to the plaintiff's specific physical loss or damage.") The Plaintiffs fail in the Amended Complaint to allege that the economic loss (i.e., loss of "fishing, boating, and other economic and recreational pursuits") had a direct tie to their personal injury (ie, injury from alleged exposure to oil and dispersants). (Amend. Compl. at ¶¶ 282, 285). To the contrary, there is not a single allegation that the economic losses claimed by Plaintiffs were the ***result of*** exposure to dispersants and oil either in the Complaint or in the Opposition. (Amend. Amend. Compl. at ¶ 283). Simply alleging personal injuries unrelated to the economic loss suffered does not cure the flaws in Plaintiffs' cause of action, and their nuisance claim is barred even if this Court looks to state law in analyzing the economic loss doctrine.

9

Respectfully submitted,

/s/ *Don K. Haycraft*
Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

And

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, Il. 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
(202) 662-5985

Lee Ann Stevenson
Christopher Coulston
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

**Attorneys for BP p.l.c., BP America Production Company and BP Exploration & Production Company**

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 29th day of April, 2011.

                                            /s/ *Don K. Haycraft*
                                              Don K. Haycraft