**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re: **OIL SPILL by the OIL RIG** | * | |
| **"DEEPWATER HORIZON" in the** | * | **MDL No. 2179** |
| **GULF OF MEXICO, on** | * | |
| **APRIL 20, 2010** | * | **SECTION: J** |
| | * | |
| **This document applies to:** | * | **JUDGE BARBIER** |
| *All Cases in Pleading Bundle III.B(3).* | * | **MAGISTRATE SHUSHAN** |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*  \*

**DEFENDANT MARINE SPILL RESPONSE
CORPORATION'S REPLY MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION TO DISMISS THE B(3)
PLEADING BUNDLE MASTER COMPLAINT**

BLANK ROME LLP
ATTORNEYS FOR DEFENDANT
MARINE SPILL RESPONSE CORPORATION
ALAN M. WEIGEL
405 LEXINGTON AVENUE
THE CHRYSLER BUILDING
NEW YORK, NY 10174
(212) 885-5000

## TABLE OF CONTENTS

ARGUMENT ........................................................................................................ 2

I.  THE CLAIMS AGAINST MSRC IN THE B(3) MASTER COMPLAINT ARE
PREEMPTED BY FEDERAL LAW.............................................................................. 2

II.  MSRC HAS DERIVATIVE FEDERAL IMMUNITY FOR ALL CLAIMS
ASSERTED  AGAINST IT IN THE B(3) MASTER COMPLAINT ................................ 6

III.  THE FLORIDA MEDICAL MONITORING CLAIM IS BARRED BY THE
GENERAL MARITIME LAW (COUNT IX) .................................................................. 10

IV.  THE B(3) MASTER COMPLAINT TORT CLAIMS AGAINST MSRC MUST
BE  DISMISSED AS A MATTER OF LAW BECAUSE THERE IS NO PRIVATE
CAUSE OF ACTION UNDER THE NATIONAL CONTINGENCY PLAN  (COUNTS
III, IV, V, VII AND VIII) .............................................................................................. 11

V.  THE B(3) MASTER COMPLAINT DOES NOT ADEQUATELY PLEAD
FACTS  TO SUPPORT ANY CLAIMS AGAINST MSRC............................................. 12

    A.  The B(3) Master Complaint Fails To Allege Sufficient Facts To Support A
Claim Of Negligence Against MSRC (Count III) ................................................. 14

    B.  The B(3) Master Complaint Fails To Allege Sufficient Facts To Support A
Claim Of Gross Negligence Against MSRC (Count IV)...................................... 16

    C.  The B(3) Master Complaint Fails To Allege Sufficient Facts To Support A
Claim Of Negligence Per Se Against MSRC (Count V) ...................................... 17

    D.  The B(3) Master Complaint Fails To Allege Sufficient Facts To Support A
Claim Of Nuisance Against MSRC (Count VII) .................................................. 18

    E.  The B(3) Master Complaint Fails To Allege Sufficient Facts To Support A
Claim Of Battery Against MSRC (Count VIII)..................................................... 18

VI.  MSRC IS EXEMPT FROM LIABILITY UNDER THE FLORIDA
POLLUTANT  DISCHARGE AND CONTROL ACT (COUNT XI) ............................. 19

VII.  THE PUNITIVE DAMAGES CLAIMS AGAINST MSRC IN THE B(3)
MASTER  COMPLAINT ARE NOT LEGALLY VIABLE UNDER THE GENERAL
MARITIME LAW .......................................................................................................... 19

CONCLUSIONS.................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009)...................................................................................... passim

*Bardwell v. George G. Sharp, Inc.*,
No. 93-3590, 1995 U.S. Dist. LEXIS 12624 (E.D. La. Aug. 29, 1995) ...................................19

*Bell Atlantic v. Twombly*,
550 U.S. 544 (2007).......................................................................................... passim

*Berkovitz v. United States*,
486 U.S. 531 (1988)....................................................................................................10

*Boyle v. United Tech. Corp.*,
487 U.S. 500 (1988)......................................................................................................9

*Carden v. Gen. Motors Corp.*,
509 F. 3d 227 (5th Cir. 2007) .......................................................................................3

*Complaint of Ballard Shipping Co.*,
772 F. Supp. 721 (D.R.I. 1991)...................................................................................12

*Fidelity Fed. Sav. & Loan Ass'n v. De la Cuesta*,
458 U.S. 141 (1982).....................................................................................................3

*First Commonwealth Corp. v. Hibernia Nat'l Bank*,
891 F. Supp. 290 (E.D. La. 1995) .............................................................................16

*Geier v. American Honda Motor Co.*,
529 U.S. 861 (2000)......................................................................................................5

*Gulf Refining Co. v. Mark C. Walker & Son Co.*,
124 F.2d 420 (6th Cir. 1942) .......................................................................................8

*Hines v. Davidowitz*,
312 U.S. 52 (1941)....................................................................................................3, 4

*In re Dredging Limitation Actions Consol. Litig.*,
No. 06-8676(K), 2008 U.S. Dist. LEXIS 46035 (E.D. La. June 12, 2008) ..........................14

*In re Prempro Prod. Liab. Litig.*,
230 F.R.D. 555 (E.D. Ark. 2005)...............................................................................10

ii

*In re World Trade Center Disaster Site Litig.*,
  456 F. Supp. 2d 520 (S.D.N.Y 2006) ...................................................................6

*In re World Trade Center Disaster Site Litig.*,
  521 F.3d 169 (2d Cir. 2008)..........................................................................7, 8

*In re: Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
  175 F. Supp. 2d 593 (S.D.N.Y. 2001)...............................................................6

*In re: Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
  457 F. Supp. 2d 324 (S.D.N.Y. 2006)...............................................................5

*Landry v. Avondale Indus., Inc.*,
  864 So. 2d 117 (La. 2003) ...............................................................................11

*Legros v. Panther Servs. Group Inc.*,
  863 F.2d 345 (5th Cir. 1988) ...........................................................................19

*Matrixx Initiatives, Inc. v. Siracusano*,
  131 S. Ct. 1390 (2011)......................................................................................13

*Norwood v. Raytheon Co.*,
  414 F. Supp. 2d 659 (W.D. Tex. 2006).............................................................11

*Procentury Ins. Co. v. Harbor House Club Condo. Ass'n., Inc.*,
  652 F. Supp. 2d 552 (D.N.J. 2009) ..................................................................14

*Sekco Energy v. M/V Margaret Chouest*,
  820 F. Supp. 1008 (E.D. La. 1993) ..................................................................11

*Southern Pacific Co. v. Jensen*,
  244 U.S. 205 (1917)..........................................................................................10

*Swope v. Columbian Chems. Co.*,
  281 F.3d 185 (5th Cir. 2002) ...........................................................................18

*United States v. Locke*,
  529 U.S. 89 (2000)..........................................................................................3, 4

*Yearsley v. W.A. Ross Construction*,
  309 U.S. 18 (1940).............................................................................................9

## STATUTES

28 U.S.C. § 2674.........................................................................................................7

33 U.S.C. § 1251.........................................................................................................2

33 U.S.C. § 1321.................................................................................................. passim

33 U.S.C. § 1365 ....................................................................................................12

33 U.S.C. § 2701 ..................................................................................................2, 3

33 U.S.C. § 2718 ......................................................................................................2

33 U.S.C. § 2751 ......................................................................................................2

FLA. STAT.§ 376.011 .............................................................................................19

**FEDERAL REGULATIONS**

40 C.F.R. Part 300 Appendix ................................................................................10

40 C.F.R. § 300.150 ..............................................................................................17

40 C.F.R. § 300.322(b) ...........................................................................................4

**OTHER AUTHORITIES**

Fed. R. Civ. P. 8 ...................................................................................................14

Fed. R. Civ. P. 12(b)(6)................................................................................. passim

iv

Defendant Marine Spill Response Corporation ("MSRC") respectfully submits this further memorandum of law in reply to the Omnibus Memorandum in Opposition to Motions to Dismiss Bundle B3 Master Complaint dated March 30, 2011 submitted by Plaintiffs ("Pls' Br."). (Doc. 1815.)

Plaintiffs' Opposition Brief does not provide the Court with sufficient legal arguments to deny MSRC's motion. *First*, Plaintiffs fail to oppose all of the arguments MSRC raised in its motion. In particular, Plaintiffs offer no arguments in opposition to MSRC's arguments that Plaintiffs' claims for relief for strict liability under the Florida Pollutant Discharge and Control Act or for punitive damages should be dismissed. *Second*, Plaintiffs' arguments that the B(3) claims are not preempted by federal law do not address any of the preemption related "obstacles" that would impede an effective response to oil spills as a result of Plaintiffs' state and maritime law claims. Plaintiffs ignore the clear impossibility faced by MSRC in attempting to comply with state and federal law simultaneously. *Third*, Plaintiffs' arguments that MSRC is not entitled to derivative federal immunity misconstrues MSRC's motion and the cases MSRC relies on, and ignores the regulations governing oil spill response and the public record of the response to the Oil Spill. *Fourth*, Plaintiffs ignore the applicable case law holding that there is no private cause of action for claims arising from an oil spill response and instead attempt to advance an unsupported and illogical argument justifying the B(3) Compliant against MSRC as a Clean Water Act citizen suit. *Finally*, Plaintiffs provide no adequate response to MRSC's arguments that each of the tort claims alleged against MSRC are unsupported by sufficient factual allegations to avoid dismissal for failure to state a valid claim. Accordingly, MSRC respectfully submits that all claims alleged against MSRC in the B(3) Complaint should be dismissed as a matter of law.

## ARGUMENT

## I.   THE CLAIMS AGAINST MSRC IN THE B(3) MASTER COMPLAINT ARE PREEMPTED BY FEDERAL LAW

Plaintiffs' opposition arguments in respect of preemption are addressed solely to the arguments raised by NALCO in its motion to dismiss the B(3) Complaint.  MSRC, however, also has raised the preemption arguments in its motion to dismiss.  Accordingly, MSRC responds here on the assumption that Plaintiffs also intend to rely on their opposition arguments addressed to NALCO in opposition to MSRC's motion.

Any argument by Plaintiffs that the Oil Pollution Act ("OPA") expressly reserves their personal injury claims against MSRC, an oil spill response organization, is wrong.  (*See* Pls.' Br. at 4.)[1]  It is based on an incorrect reading of the OPA and a mis-statement of the statutory basis of the claims asserted against MSRC.  The claims against MSRC cannot be based on the OPA, 33 U.S.C.  § 2701, *et seq*., because the OPA only allows for claims against "responsible parties," and MSRC was not a responsible party under OPA.  Instead, Plaintiffs' claims against MSRC can only be based, if at all, on MSRC's actions under the National Contingency Plan ("NCP"), established as part of the Federal Water Pollution Control Act (commonly known as the Clean Water Act ("CWA")), 33 U.S.C. §1321(c).[2]  But by the plain language of the OPA, the OPA savings clauses only apply to Chapter 40 of Title 33 (*i.e.*, to the OPA itself) and not to the CWA found in Chapter 26 (33 U.S.C. 1251, et seq., containing the contingency plan and oil spill response rules).  Thus, the saving clauses in the OPA, 33 U.S.C. §2718 and §2751, cannot be relied upon to preserve Plaintiffs' claims from pre-emption.

---

[1] MSRC objects to Plaintiffs' attempt to incorporate by citation 20 pages of arguments from their Omnibus Memorandum in Opposition to Motions to Dismiss Bundle B1 First Amended Master Complaint.  This is nothing more than a blatant attempt by Plaintiffs to avoid the Court's 50 page limit for briefs in opposition to motions to dismiss.

[2] MSRC does not concede that claims under the NCP are proper.  *See* Point IV, below.

Moreover, as MSRC argued in its motion to dismiss – an argument not addressed by Plaintiffs' opposition – the OPA saving clauses are limited to regulations governing liability and compensation for oil pollution, and do not extend to other types of rules not found in Title I of the OPA, 33 U.S.C §2701, et seq.. *See United States v. Locke*, 529 U.S. 89, 105 (2000).   Here, the regulations governing the procedures for contingency plans and responding to oil spills are not part of Title I to OPA 90.  Thus, the savings clauses are inapplicable.

Plaintiffs agree with MSRC's argument that federal law will pre-empt state and maritime law claims where those claims conflict with the federal law or its purpose (*i.e.* field preemption). *Carden v. Gen. Motors Corp.¸* 509 F. 3d 227 (5th Cir. 2007); *Locke* at 100.  Indeed, Plaintiffs rely on many of the same cases that MSRC relies on.  (*Compare* MSRC's Br. at 14 – 15 and Pls.' Br. at 5.)  Thus, as Plaintiffs' Brief correctly states, to prevail on its motion to dismiss, MSRC must show that a state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941), or, in the alternative, that "compliance with both federal and state regulations is a physical impossibility." *Fidelity Fed. Sav. & Loan Ass'n v. De la Cuesta*, 458 U.S. 141, 153 (1982).

Notwithstanding Plaintiffs agreement with the cases cited by MSRC, Plaintiffs argument that their maritime and state law claims are not preempted by the CWA and the NCP ignores the undisputed facts that are part of the public record and fails to adequately address either the (1) field preemption/obstacle conflict circumstance, or (2) the physical impossibility conflict circumstance sufficiently to justify denying MSRC's motion.  In the present case, both conflict circumstances are present.  Plaintiffs' claims create clear obstacles that are counter to the national interest in promoting an effective and efficient federal response to oil spills established by Congress and thus results in field preemption.  In addition, in responding to the Oil Spill, it

3

was clearly impossible for MSRC to comply with both federal statutes and regulations governing oil spill response and state laws establishing potential liability for claims related to the response.

Nothing in Plaintiffs' opposition Brief effectively challenges MSRC's argument that the B(3) Master Complaint's state and maritime claims against MSRC "stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in promoting an effective and efficient federal response to significant oil spills. *Hines*, 312 U.S. at 67. The comprehensive clean-up regime established by the CWA and the NCP clearly indicates Congresses' intent to pre-empt the field from state and local regulation or claims. *Locke* at 110. As MSRC argued in its motion to dismiss the B(3) Complaint, permitting the B(3) Master Complaint to proceed against MSRC would undermine the federal government's decisions and mandatory requirement under OPA to direct all federal, state and private resources in responding to the Oil Spill. This would create clear "obstacles" to the purposes and objectives of the CWA and the NCP, and would directly conflict with Congress' goal of providing a rapid and effective response to discharges and with Congressional intent that decisions regarding response efforts must be governed by the procedures and criteria set forth in the CWA and NCP under the field preemption doctrine as held in *Locke*. These arguments are completely ignored by Plaintiffs omnibus opposition.

Instead, Plaintiffs focus their effort on the argument that it was not impossible for MSRC to comply with both federal and state law simultaneously. This argument, however, completely ignores federal law, which mandates that the Federal On-Scene Coordinator ("FOSC") provide response "direction" because the discharge presented a substantial threat to the public health or welfare of the United States, and which imposed a duty on MSRC to comply with the "direction" of the FOSC, even if those directions were in violation of state or maritime law. 40 C.F.R. §

4

300.322(b).  If MSRC had refused to obey such federal directives in order to conform to their purported duties under state or maritime law, they would have violated the CWA and the NCP. Thus, it was clearly impossible for MSRC to comply with federal and state law simultaneously.

Plaintiffs' attempt to distinguish *Geier v. American Honda Motor Co.*, 529 U.S. 861 (2000) (Pls. Br. at 7-8), is mistaken.  In *Geier*, the Court held that a claim based on state law was preempted because it stood "as an obstacle to the accomplishment and execution of the important means-related federal objective."  *Id.* at 881 (citation omitted).  Plaintiffs' argument that, in the present case, no federal statute "dictates the means for achieving federal objectives" is not correct.  The pervasive scheme established by the CWA and NCP and implemented by the FOSC established the specific means by which MSRC was to respond to the Oil Spill.  In short, there is no room for more than one individual to lead and direct all actions under this comprehensive federal scheme and that is the FOSC.  Plaintiffs' further argument that *Geier* is distinguishable because Plaintiffs are not seeking to dictate the use of a specific dispersant like the state law in *Geier* sought to impose the use of a specific passive restraint misses the point.  Plaintiffs are seeking to invalidate the decisions made by the FOSC and to substitute in their place Plaintiffs' judgment on how the Oil Spill should have been cleaned up.  Thus, Plaintiffs' claims – just like the state law claim in Geier – are a clear "obstacle" to the implementation of the mandatory requirements of OPA and the NCP which preempt the field in the area of spill response and should be dismissed.

Plaintiffs' reliance on MTBE decisions is misplaced.  (See Pls. Br. at 7.)  In those cases, the courts found that the Clean Air Act did not dictate the selection of MTBE as an oxygenate in gasoline and therefore tort claims arising from the selection of MTBE were not an obstacle to the implementation of the Clean Air Act.  *See In re: Methyl Tertiary Butyl Ether ("MTBE") Prods.*

5

*Liab. Litig.*, 457 F. Supp. 2d 324, 327, 337 (S.D.N.Y. 2006); *In re: Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 175 F. Supp. 2d 593, 615 (S.D.N.Y. 2001). In the spill response context, the Environmental Protection Agency lists certain dispersants for use in the response to the Oil Spill, and then the FOSC approves specific dispersants for use at the time of a particular incident. Thus, the Federal government, and not MSRC, approved for use the dispersants that were used in this incident, the waters in which such dispersants were used, the procedures and techniques for dispersing the oil, and the quantities of such dispersants that could be used safely in such waters. Thus, unlike the defendant gasoline producers in the MTBE cases who could choose among various oxygenates, and contrary to Plaintiffs' argument, MSRC could only use those dispersants approved by the federal government in the spill response.

Accordingly, because the claims asserted against MSRC in the B(3) Master Complaint directly conflict with federal law and there is obstacle conflict/field preemption in this area, the Complaint should be dismissed in its entirety.

## II. MSRC HAS DERIVATIVE FEDERAL IMMUNITY FOR ALL CLAIMS ASSERTED AGAINST IT IN THE B(3) MASTER COMPLAINT

Plaintiffs arguments supporting their claim that MSRC is not entitled to derivative federal immunity for their actions responding to the oil spill (Pls.' Br. at 20 – 35) are inadequate for the Court to deny MSRC's motion.

First, Plaintiffs' argument that MSRC is a private entity, not the federal government, and that private entities are not entitled to share in the government's immunity (Pls.' Br. at 22-23, 25) simply fails. This is because there is no basis for the Court to conclude that Congress limited the liability exemption for actions under response plans solely to the federal government and that MSRC is not entitled to share derivatively in the federal government's absolute or discretionary immunity under these circumstances. Plaintiffs' citation to *In re World Trade Center Disaster*

6

*Site Litig.*, 456 F. Supp. 2d 520, 566 (S.D.N.Y 2006) ("WTC I"), in support of their arguments is

mis-placed.  In *In re World Trade Center Disaster Site Litig.*, 521 F.3d 169, 197 (2d Cir. 2008)

("WTC II"), which Plaintiffs cite to, but do not otherwise explain, the Second Circuit specifically

held that, under appropriate circumstances, private entities may share the government's Stafford

Act immunity, and concluded that the district court's ruling to the contrary was in error.  This

was based on the need to assure a prompt and comprehensive federal response to a national

disaster which would otherwise be frustrated by imposition of liability upon these entities, even

though not under a direct contract with the government at the time, when their actions are taken

under the specific direction and close supervision of federal agencies.  The need for derivative

immunity is even more compelling here than it was in the 9/11 litigation, because here, instead of

a state-run Stafford Act response supplemented with federal resources and financing, the NCP

demands that the federal government direct the response through a FOSC who was required to

"direct" all federal, state, and private actions.

Next, Plaintiffs argue that the federal government itself is not entitled to absolute

immunity from suit for actions taken under response plans either because the immunity

provisions of the CWA, 33 U.S.C. 1321(j)(8), cannot be read so broadly (Pls.' Br. at 23-25), or

because federal employees may be liable for actions taken responding to the Oil Spill under the

Federal Tort Claims Act, 28 U.S.C. §2674 ("FTCA").  (Pls.' Br. at 26-27.)  MSRC submits that

Plaintiffs are wrong on both counts.  The plain language of the statute grants absolute immunity

to the federal government for "any damages."

Plaintiffs' suggestion that to find a broad immunity provision in the statue would render

other sections of the CWA superfluous is illogical.  (See Pls. Br. at 24.)  The other sections of the

CWA that Plaintiffs reference concern either the liability or immunity from liability of other

parties. It is not reasonable to suggest that any connection between these sections can work to limit the government's immunity. In any event, neither section is applicable here. Section 1321(j)(5)(H) applies to the liability of owners or operators of vessels or facilities acting in accordance with an approved response plan. MSRC is neither an owner nor operator of vessels or facilities. Section 1321(c)(4)(A) provides responder immunity except in the case of personal injury, and thus is also not applicable to the present case.[3]

Plaintiffs' arguments that actions taken under the NCP do not have the "hallmarks of the type of discretionary function activities giving rise to derivative immunity" under the FTCA are mistaken and demonstrate a fundamental misunderstanding of the operation of the NCP. (*See* Pls.' Br. at 27.) While the planning phase of the NCP may be marked by "collaboration and cooperation," the same cannot be said for the execution phase. During the execution phase, response organizations carry out detailed and comprehensive incident action plans (not a policy, as Plaintiffs allege) under the direction and control of the FOSC, the exact type of activities that give rise to the FTCA exceptions to the waiver of immunity.

Plaintiffs further argue that MSRC is not a government contractor and, therefore is not entitled to a government contractor defense. This argument, however, ignores established case law that extends the contractor defense to a sub-contractor doing Federal Government work. *See, e.g., Gulf Refining Co. v. Mark C. Walker & Son Co.*, 124 F.2d 420, 425 (6th Cir. 1942). It also should make no difference to the analysis that MSRC was a contractor hired by a responsible party. In the World Trade Center (*WTC II*) case this defense was extended to private parties even though there was not direct contract with the federal government in order to assure that the purposes of the response effort under the Stafford Act would not be frustrated by

---

[3] Plaintiffs amended the B(3) Master Complaint to drop all non-personal injury claims against MSRC.

imposing liability on private parties.  Furthermore, if BP, as the responsible party, had failed or refused to carry out its statutory obligations to clean up the Oil Spill, the government would have contracted directly with MSRC for oil spill response services.  MSRC should not be denied derivative immunity simply because the parties involved in the Oil Spill complied with their statutory obligations and MSRC was not under a direct contract with the Coast Guard.

Finally, Plaintiffs argue that MSRC is not entitled to discretionary federal immunity under the doctrines established by the Supreme Court in *Yearsley v. W.A. Ross Construction*, 309 U.S. 18 (1940) and *Boyle v. United Tech. Corp.*, 487 U.S. 500 (1988), either because whether MSRC is able to show it was acting under the direction and control of the federal government for purposes of derivative immunity is a question of fact that cannot be resolved on MSRC's motion to dismiss (Pls.' Br. at 31), or because MSRC's activities were not the kind that the discretionary function exception were designed to shield.[4]  (Pls.' Br. at 32 – 35.)  Both arguments are wrong.

Both the facts alleged in the B(3) Complaint and the undisputed public record of which the court may taken notice establishes that in assisting with the clean-up of the Oil Spill, MSRC was acting pursuant to the direction, and control of the federal government.  (*See* B(3) Master Complaint ¶¶ 92, 109.)  The FOSC directed, on a daily basis, specific actions to be taken by MSRC and the other responders pursuant to the approval of daily Incident Action Plans.  Moreover, because the spill was a Substantial Threat Spill, the government was required—unlike in *Yearsley*—to direct all federal, state, and private response actions in real time and to make decisions regarding how best to conduct the containment and clean-up efforts, including decisions about the use of dispersants.

---

[4] Plaintiffs also advance the baseless argument that Defendants cannot take advantage of discretionary immunity because they profited from contracts entered into with BP to clean up the spill.  (*See* Pls.' Br. at 29.)  Even if this were a relevant factor for the Court to consider, which it is not, it is irrelevant to MSRC who, by Plaintiffs' own admission is a not-for-profit corporation.  (B(3) Complaint at ¶54.)

There also can be no doubt that the federal government would enjoy discretionary function immunity for its actions in responding to the Oil Spill.  Despite Plaintiffs specious arguments to the contrary, there can be no dispute that the cleanup actions in the Gulf of Mexico were governed by the NCP, 33 U.S.C. §1321(d) and 40 C.F.R. Part 300 Appendix E.  The decisions made by the FOSC concerning the manner in which the clean-up operations would be conducted clearly involved an element of judgment or choice and were based on considerations of public policy.  These are precisely the types of governmental decisions that discretionary function immunity is designed to insulate from judicial review.  See *Berkovitz v. United States*, 486 U.S. 531, 537-38 (1988).

Accordingly, because MSRC shares derivatively in the federal government's absolute immunity under the CWA, or in the alternative is entitled to discretionary immunity, the claims in the B(3) Complaint asserted against MSRC should be dismissed in their entirety.

## III.  THE FLORIDA MEDICAL MONITORING CLAIM IS BARRED BY THE GENERAL MARITIME LAW (COUNT IX)

Plaintiffs concede that the general maritime law applies to Plaintiffs medical monitoring claims and that the general maritime law does not provide for medical monitoring damages. Plaintiffs' argument, however, that Florida's law of medical monitoring supplements their maritime law claims is contrary to the principle of uniformity that must be satisfied before a state law may be used to fill gaps in the general maritime law.  *See Southern Pacific Co. v. Jensen*, 244 U.S. 205, 216 (1917).

It is undisputed that "medical monitoring is not treated uniformly throughout the United States."  *In re Prempro Prod. Liab. Litig., 230 F.R.D. 555, 569 (E.D. Ark. 2005)*.  Nevertheless, the B(3) Master Complaint seeks to invoke Florida's medical monitoring law, which permits relief even when a plaintiff has yet to develop any identifiable physical injuries or symptoms,

which is clearly a minority position among the states that have adopted laws establishing claims for medical monitoring.  In fact, the majority of states considering medical monitoring as a cause of action have rejected such claims.  *Norwood v. Raytheon Co.*, 414 F. Supp. 2d 659, 666 (W.D. Tex. 2006).  As Plaintiffs' opposition points out, only four other states have adopted an approach similar to Florida's.  Moreover, Florida's approach to medical monitoring differs greatly from the approaches taken by the other Gulf States, which do not allow medical monitoring claims "unless said medical monitoring is directly related to a manifest physical or mental injury or disease."  *Landry v. Avondale Indus., Inc.*, 864 So. 2d 117, 123 n.2 (La. 2003).

Accordingly, because applying Florida state law on medical monitoring to supplement the plaintiffs' maritime law claims would undermine the policy requiring uniformity, the Florida medical monitoring claim in the B(3) Master Complaint must be dismissed.

## IV.   THE B(3) MASTER COMPLAINT TORT CLAIMS AGAINST MSRC MUST BE DISMISSED AS A MATTER OF LAW BECAUSE THERE IS NO PRIVATE CAUSE OF ACTION UNDER THE NATIONAL CONTINGENCY PLAN (COUNTS III, IV, V, VII AND VIII)

Plaintiffs' argument that the Clean Water Act expressly provides a private right of action against MSRC for its Oil Spill response activities ignores the cases cited by MSRC in support of its motion to dismiss and, in place of relevant case law, attempts to substitute tortured logic that requires a specious interpretation of the citizen suit provisions of the Clean Water Act.

In *Sekco Energy v. M/V Margaret Chouest*, 820 F. Supp. 1008, 1014 (E.D. La. 1993), a case not addressed by Plaintiffs' opposition, this Court held that the Clean Water Act, 33 U.S.C. §1321, does not provide for private causes of action.  In *Sekco*, Plaintiff sought damages pursuant to the CWA, specifically 33 U.S.C. § 1321, for expenses incurred in responding to an oil spill.  After examining the statute's language, the Court concluded that the CWA "does not allow private parties to bring suit" because "Congress has made clear that implied private actions

11

are not contemplated." *Id.   See also Complaint of Ballard Shipping Co.*, 772 F. Supp. 721 (D.R.I. 1991) (holding that the CWA does not give individual states a cause of action). Accordingly, because there is no private cause of action under the CWA, enabling act for the NCP, as a matter of law, Plaintiffs cannot maintain causes of action for any torts based on allegations related to any actions governed by or taken under the NCP.  Accordingly, any such tort claims in the B(3) Complaint must be dismissed.

Further, contrary to Plaintiffs' arguments, the citizen suit provisions of the Clean Water Act, 33 U.S.C. §1365, do not empower private citizens to bring claims against oil spill response organizations for their activities in responding to spills in accordance with the NCP and a FOSC's direction and control.  Congress enacted the citizen suit provisions to allow citizens to commence a civil action against any person alleged to be in violation of an "effluent standard or limitation."  33 U.S.C. § 1365(a)(1).  The provision may also be reasonably relied upon to bring a private suit for the discharge of "oil or hazardous substances."   It is absurd to argue as Plaintiffs do, however, that the citizen suit provision is intended to permit private causes of action to impose penalties for response actions.  The section of the CWA that Plaintiffs suggest gives them this authority, 33 U.S.C. § 1321(b)(7), does not address response activities, but instead addresses civil penalties against owners or operators who have wrongfully discharged oil. Plaintiffs provide no legal support for this argument because none exists.  According, there is no basis under the CWA citizen suit provisions for Plaintiffs to avoid dismissal of their tort claims against MSRC.

## V.   THE B(3) MASTER COMPLAINT DOES NOT ADEQUATELY PLEAD FACTS TO SUPPORT ANY CLAIMS AGAINST MSRC

To survive a Rule 12(b)(6) challenge to claims of negligence, gross negligence, negligence per se, nuisance or battery, the B(3) Master Complaint  must contain "sufficient

12

factual material, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)(citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).  This standard "does not require 'detailed factual allegations,' <u>but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation</u>." *Iqbal*, at 1949 (citing *Twombly*, at 570) (emphasis added).  The claims in the B(3) Master Complaint against MSRC, even if not dismissed as a matter of law, as discussed, *supra*, should be dismissed because the Complaint fails to plead sufficient facts supporting all of the elements of either negligence, gross negligence, negligence per se, nuisance or battery as required by *Twombly* and *Iqbal*.

Plaintiffs' suggestion that a Supreme Court decision has in some way "clarified" the dismissal standards set forth in *Iqbal* and *Twombly* and, therefore supports their argument that the claims against MSRC are "well-pleaded" misconstrues the holding in *Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1390 (2011).  In *Matrixx*, the Court analyzed pleading standards for materiality and scienter in the context of a securities fraud class action.  In its opinion, the Supreme Court rejected a "bright-line" standard for materiality or scienter and held that under the circumstances of the case, the pleaded allegations were sufficient to avoid a motion to dismiss.  The holding does not, however, change the requirement that Plaintiffs here plead sufficient facts to state a claim against MSRC that is plausible on its face, *Twombly* at 570, and suggests more than the sheer possibility that Plaintiffs are entitled to relief.  *Iqbal* at 1949.

Applying this pleading standard to the B(3) Master Complaint requires dismissal of all claims against MSRC.  Plaintiffs' assertions of various torts against MSRC are at best dressed-up legal conclusions and are not entitled to the assumption of truth.  As such, the Court should disregard those conclusory assertions in its application of the *Twombly*/*Iqbal* standards.  Further, the only remaining factual allegations entitled to the assumption of truth do not plausibly suggest

13

an entitlement to relief and are not sufficient for the Court to draw any reasonable inference that MSRC is liable for any of Plaintiffs' alleged injuries.

The overwhelming deficiency in Plaintiffs' Complaint, uncorrected by the amendment and not addressed in Plaintiffs' opposition, is that Plaintiffs only vaguely allege that they sustained personal injuries from the clean-up effort, and that one or more of the Dispersant Defendants did something unspecified to cause it.  Plaintiffs factual assertions do not differentiate MSRC's activities from among any other Defendant, do not state where any MSRC activities took place, and do not state which activities conducted by MSRC were negligent. Instead, Plaintiffs offer generalized, undifferentiated allegations that fail to satisfy the notice pleading requirement of Federal Rule of Civil Procedure 8.  *See Procentury Ins. Co. v. Harbor House Club Condo. Ass'n., Inc.*, 652 F. Supp. 2d 552, 560-61 (D.N.J. 2009) (holding that plaintiff did not sufficiently plead claims under *Twombly*/*Iqbal* where it simply lumped the defendants together with no factual allegations as to specific defendant).

**A.     The B(3) Master Complaint Fails To Allege Sufficient Facts To Support A Claim Of Negligence Against MSRC (Count III)**

Notwithstanding Plaintiffs' arguments to the contrary (Pls.' Br. at 45 – 47), the B(3) Master Complaint does not allege adequate facts to support a claim of negligence against MSRC. The B(3) Master Complaint fails in several significant respects to plead sufficient facts supporting all of the elements of a claim for negligence against MSRC.  In particular, the B(3) Complaint and Plaintiffs' Brief fail to articulate any duties owed by MSRC and how, as a factual matter, any duty may have been breached, *Procentury Ins. at* 560, and fail to allege any facts showing a casual connection between MSRC's operations and a particular Plaintiff's injury.  *In re Dredging Limitation Actions Consol. Litig.*, No. 06-8676(K), 2008 U.S. Dist. LEXIS 46035, *50-52 (E.D. La. June 12, 2008).

810517.00025/7016906v.1

The B(3) Complaint does not allege any facts that plausibly support even the possibility that MSRC either owed or breached any duties to any of the five categories of Plaintiffs named in the Complaint.  The list of allegations summarized by Plaintiffs (Pls.' Br. at 46 – 47) are not facts but simply "dressed-up" legal conclusions which are not entitled to the assumption of truth in determining any duties that may have been owed or breached.  The B(3) Complaint does not allege any facts, nor does Plaintiffs' Brief argue that there are any facts showing that MSRC owed or breached any duty to warn, train or equip VoO Plaintiffs.  Plaintiffs can hardly make such allegations because the B(3) Complaint alleges it was BP, not MSRC, that was involved with and coordinated the VoO Program.  There also is no factual support in either the B(3) Complaint or Plaintiffs' Brief for the allegation that MSRC was involved in vessel decontamination or on-shore clean-up.  Therefore MSRC did not owe or breach any duty to the Decontamination Plaintiffs or the On-Shore Plaintiffs to warn, train or equip them.  Similarly, neither the B(3) Compliant nor Plaintiffs' Brief allege any facts showing that MSRC owned or breached any duties to Vessel Plaintiffs or Resident Plaintiffs.  As members of the general public, any duty to warn the Vessel Plaintiffs and Resident Plaintiffs about the hazards of oil or dispersants was not owned by MSRC, but by the Federal Government entities directing the spill response or possibly the responsible party.  Finally, there can be no basis for alleging that MSRC breached any duty to any of the five categories of Plaintiffs to avoid conducting aerial dispersant spraying near vessels and in shallow water because MSRC did not own or operate any aircraft and there is no factual allegation that at any time MSRC conducted or directed aerial spraying near any vessel or anywhere near shore or shallow water.

The B(3) Master Complaint also fails to adequately allege facts showing that MSRC's actions were the cause of any Plaintiffs' injury.  Neither the B(3) Complaint nor Plaintiffs Brief

alleges any facts showing that any Plaintiff was exposed to dispersants sprayed from an aircraft owned or operated by MSRC (which they cannot, as no planes were owned or operated by MSRC.)  Nor do Plaintiffs allege any facts showing specifically when or where in the Gulf of Mexico any Plaintiffs were actually exposed to dispersants or that MSRC was the cause of the exposure.

Accordingly, because the Plaintiffs' negligence allegations fail to state a claim upon which relief can be granted, the cause of action in the B(3) Master Complaint against MSRC for negligence should be dismissed pursuant to Rule 12(b)(6).

**B.     The B(3) Master Complaint Fails To Allege Sufficient Facts To Support A Claim Of Gross Negligence Against MSRC (Count IV)**

Plaintiffs' argument that the B(3) Master Complaint pleads sufficient facts to support a claim for gross negligence against MSRC (Pls.' Br. at 47) ignores that Plaintiffs do not aver even a single fact demonstrating that MSRC undertook a conscious, voluntary act or omission which was likely to result in injury.  *See First Commonwealth Corp. v. Hibernia Nat'l Bank*, 891 F. Supp. 290, 294 (E.D. La. 1995).  Merely alleging that MSRC used a dispersant with potentially hazardous components (especially when the dispersant was on the EPA's authorized list, and when its spraying was specifically directed by the Coast Guard) falls far below the standard required for showing that MSRC was grossly negligent or guilty of willful or reckless misconduct.  Accordingly, because Plaintiffs have failed to allege sufficient facts to support the plausibility of the claim of gross negligence against MSRC, the cause of action in the B(3) Master Complaint for gross negligence against MSRC should be dismissed pursuant to Rule 12(b)(6).

**C.**     **The B(3) Master Complaint Fails To Allege Sufficient Facts To Support A Claim Of Negligence Per Se Against MSRC (Count V)**

Plaintiffs' argument that the B(3) Master Complaint sufficiently alleges a claim for negligence *per se* (Pls.' Br. at 39 – 41) is completely without merit.  Like the B(3) Complaint itself, Plaintiffs' vague and conclusory argument that there is no need for specificity because the four statutes or regulations cited in the Complaint set forth Defendants' duties and were well known to and familiar to Defendants is insufficient as a matter of law to avoid dismissal of Plaintiffs' negligence *per se* claim against MSRC.

As MSRC has already pointed out, each of these statutes and regulations contain multiple parts and sub-parts and run for dozens of pages.   There is no allegation in the Complaint, as is required for a negligence *per se* claim, of which Defendant may have violated which statute or regulation or which of the four cited statutes or regulations allegedly violated protects a class of persons which is narrower than the general public.  There are certainly no factual allegations in either the Complaint or Plaintiffs' Brief that MSRC violated any statutory or regulatory standards.

Plaintiffs' argument that all of the regulations prescribe oil spill response worker safety is mistaken, illogical and unsupported by any citations.  The single section of the NCP, 40 C.F.R. §300.150, cited by Plaintiffs (Pls. Br. at 40 – 41), does not justify denying MSRC's motion to dismiss Plaintiffs' negligence *per se* claim because Plaintiffs do not allege any facts showing that MSRC violated the regulation or how any Plaintiff may have suffered harm from a violation. Accordingly, because the Plaintiffs' negligence *per se* allegations fail to state a claim upon which relief can be granted, the cause of action in the B(3) Master Complaint against MSRC for negligence *per se* should be dismissed pursuant to Rule 12(b)(6).

17

**D.** **The B(3) Master Complaint Fails To Allege Sufficient Facts To Support A Claim Of Nuisance Against MSRC (Count VII)**

Plaintiffs' argument that they have validly pleaded a claim for nuisance against MSRC is mistaken and unsupported by any factual allegations.  (See Pls.' Br. at 19 – 20.)  Plaintiffs' nuisance claim should be dismissed  as a matter of law because there is no federal common law cause of action for public nuisance and under state law, Plaintiffs have not alleged any facts supporting the conclusion that any conduct on the part of MSRC involves a significant interference with public health, safety, peace, comfort, or convenience.  In addition, the nuisance claim should be dismissed because Plaintiffs have failed to allege facts suggesting that if the alleged nuisance is not abated, they will suffer a special damage different from that which is common to Gulf residents.  Accordingly, because Plaintiffs have not alleged that MSRC's conduct interfered with a public right, Plaintiffs' nuisance claim against MSRC must be dismissed.

**E.** **The B(3) Master Complaint Fails To Allege Sufficient Facts To Support A Claim Of Battery Against MSRC (Count VIII)**

Plaintiffs' argument that the B(3) Master Complaint pleads sufficient facts to support a claim for battery against MSRC (Pls.' Br. at 47) overlooks the complete absence of any factual allegations that MSRC intended that any Plaintiff come in contact with dispersants.  *See Swope v. Columbian Chems. Co.*, 281 F.3d 185, 195-196 (5th Cir. 2002).  Nor can Plaintiffs make such an allegation because MSRC did not own or operate any aircraft that sprayed dispersants.  But such an allegation is required to support a cause of action for battery.  Further, the B(3) Master Complaint does not allege that MSRC played any role in placing Plaintiffs on VoOs.  Therefore, there is no basis for the VoO Plaintiffs to allege a battery claim against MSRC.  Accordingly, because Plaintiffs have failed to allege a necessary element of a claim for battery, the cause of

18

action in the B(3) Master Complaint for battery against MSRC should be dismissed pursuant to Rule 12(b)(6).

## VI.   MSRC IS EXEMPT FROM LIABILITY UNDER THE FLORIDA POLLUTANT DISCHARGE AND CONTROL ACT (COUNT XI)

Plaintiffs' opposition does not address MSRC's arguments that, under the plain language of the Florida Pollutant Discharge Prevention and Control Act, § 376.011, *et seq.* (the "Florida Act"), MSRC cannot be held liable as result from the Oil Spill.   Accordingly, MSRC submits that the Court should find, as MSRC argued in its motion to dismiss the B(3) Complaint, that Plaintiffs' have no legally viable claim for relief for strict liability under the Florida Act against MSRC and such claim in the B(3) Master Complaint should be dismissed as a matter of law.

## VII.   THE PUNITIVE DAMAGES CLAIMS AGAINST MSRC IN THE B(3) MASTER COMPLAINT ARE NOT LEGALLY VIABLE UNDER THE GENERAL MARITIME LAW

Plaintiffs' opposition does not address MSRC's arguments that Plaintiffs' punitive damages claims should be dismissed as a matter of law, *Bardwell v. George G. Sharp, Inc.*, No. 93-3590, 1995 U.S. Dist. LEXIS 12624, *7 (E.D. La. Aug. 29, 1995), or that, alternatively, Plaintiffs' factual allegations are not legally sufficient to impose an award of punitive damages against MSRC.   *Legros v. Panther Servs. Group Inc.*, 863 F.2d 345, 353 (5th Cir. 1988). Accordingly, MSRC submits that the Court should find, as MSRC argued in its motion to dismiss the B(3) Complaint, that Plaintiffs have no legally viable claim for punitive damages and the Court should dismiss all such claims in the B(3) Master Complaint against MSRC as a matter of law.

19

## <u>CONCLUSIONS</u>

For the foregoing reasons, MSRC respectfully requests that the Court enter an order pursuant to Fed. R. Civ. P. 12(b)(6) dismissing all claims in the B(3) Master Complaint against MSRC.

Dated:      New York, New York
            April 29, 2011

Respectfully submitted,

**BLANK ROME LLP**

By:    /s/ Alan M. Weigel_____
Alan M. Weigel, Esq.
Attorneys for Marine Spill Response Corporation
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
Telephone: 212-885-5000
Facsimile: 917-332-3836
E-mail: aweigel@blankrome.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing Reply Memorandum of Law in Support of Motion to Dismiss has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, on this 29th day of April 2011.

/s/ Alan M. Weigel_____
Alan M. Weigel

20