UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig | * | MDL No. 2179 |
| "Deepwater Horizon" in the | * | |
| Gulf of Mexico, on April 20, 2010 | * | SECTION "J" |
| | * | |
| **THIS PLEADING APPLIES TO ALL** | * | JUDGE:  BARBIER |
| **CLAIMS AND CASES IN PLEADING** | * | |
| **BUNDLE B1, INCLUDING ALL** | * | MAGISTRATE:  SHUSHAN |
| **COMPLAINTS IN THE B1 BUNDLE** | * | |
| **NAMING WEATHERFORD AS** | * | |
| **DEFENDANT, IN PARTICULAR:** | * | |
| 10-01222, 10-1561, 10-1556, 10-1560, | * | |
| 10-01573, 10-01574, 10-03113, 10-03112, | * | |
| 10-02984, 10-02985, 10-03274, 10-03269, | * | |
| 10-01752, 10-02986, 10-01850, 10-01852, | * | |
| 10-01855, 10-01857, 10-03272, 10-02669, | * | |
| 10-02654, 10-1920, 10-03095, 10-01935, | * | |
| 10-04207, 10-04359, 10-03114, 10-03115, | * | |
| 10-03105, 10-01908, 10-03085, 10-03100, | * | |
| 10-2114, 10-02116, 10-02770 | * | |

\*      \*      \*      \*      \*      \*      \*

## WEATHERFORD U.S., L.P.'S REPLY MEMORANDUM TO THE OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS BUNDLE B1 FIRST AMENDED MASTER COMPLAINT, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

**MAY IT PLEASE THE COURT:**

In accordance with Pre-Trial Order No. 28 (Rec. Doc. 1235) and Pre-Trial Order No. 32 (CMO No. 2) (Rec. Doc. 1506), Defendant, Weatherford U.S., L.P. ("Weatherford"), submits this Reply Memorandum to the B1 Plaintiffs' Omnibus Memorandum of Law in Opposition to Defendants' Motions to Dismiss Bundle B1 First Amended Master Complaint, Cross-Claim, and Third-Party Complaint ("the Omnibus Opposition") (Rec. Doc. 1822).[1]

## I.   OPA IS EXCLUSIVE AND MANDATORY AND PROVIDES NO CAUSE OF ACTION AGAINST WEATHERFORD

Despite all of the B1 Plaintiffs' advocacy and demands for equity in these proceedings, the B1 Plaintiffs overlook the fact, whether intentionally or otherwise, that the inquiry before the Court is not what types of claims might be asserted against Weatherford, but what categories of damages are sought by the B1 Plaintiffs against Weatherford.   In the B1 Plaintiffs' First Amended Master Complaint (the "B1 Amended Complaint") (Rec. Doc. 1128), the B1 Plaintiffs seek damages which are covered under OPA, and are specifically enumerated as "covered damages" under 33 U.S.C. §2702(b)(2)(A)-(F).   Under the very wording of OPA itself, the damages sought by the B1 Plaintiffs here are OPA damages, nothing more, nothing less.

As concisely stated by the late Chief Judge Politz:  "That which looks like a duck, walks like a duck, and quacks like a duck, will be treated as a duck even though some would insist upon calling it a chicken."  *Tidelands Marine Service v. Patterson*, 719 F.2d 126, 128 n.3 (5th

---

[1] Weatherford submits this Reply in response to the Omnibus Opposition filed by the B1 Plaintiffs (Rec. Doc. 1822).  Weatherford also notes that the B1 Plaintiffs filed a separate Opposition, Rec. Doc. 1804, to respond directly to the Motion to Dismiss filed by Weatherford.  In the separate Opposition, Rec. Doc. 1804, the B1 Plaintiffs misstate the arguments set forth by Weatherford in its Motion to Dismiss.  Weatherford did not advocate a choice of law (i.e. maritime versus state law) in its Motion to Dismiss; rather, Weatherford stated that if certain claims by the B1 Plaintiffs are not displaced by OPA, only two sources of law could potentially apply to these claims: the General Maritime Law and Louisiana law (pursuant to the Outer Continental Shelf Lands Act).  Weatherford simply argued that to the extent any claims are not displaced by OPA, all claims for purely economic loss should be dismissed under both the General Maritime Law and Louisiana law.  Weatherford further argued that to the extent Louisiana law applies, the Louisiana Products Liability Act is the sole cause of action available to the B1 Plaintiffs.

Cir. 1983); *see also Quave v. Progress Marine*, 912 F.2d 798, 800 n.4 (5th Cir. 1990).  No matter how craftily pled, the B1 Plaintiffs assert claims for OPA-covered damages.

Similar to the claimants in *Gabarick v. Laurin Maritime (America), Inc.*, 623 F. Supp. 2d 741 (E.D. La. 2009), the B1 Plaintiffs "cloud the issue at bar" by arguing that OPA does not preempt the General Maritime Law or state law "rather than focusing on preemption solely of the damages specifically covered by OPA." *Id.* at 746.  The B1 Plaintiffs can only offer arguments which have been tested and specifically rejected by Judge Lemelle in *Gabarick*; and the B1 Plaintiffs offer no authority to support their position. *Id.*  The B1 Plaintiffs' claims for "covered damages" are preempted by OPA; and the B1 Plaintiffs cannot avoid OPA's claims presentment requirement by attempting to re-characterize their OPA damage claims as General Maritime Law claims or state law claims.  Judge Lemelle's opinion to that effect in *Gabarick* could not be clearer, is absolutely a correct statement of the law and should be dispositive of the B1 Plaintiffs' claims.

Moreover, even if the B1 Plaintiffs satisfy the presentment requirements, OPA clearly does not provide a right of action against a third party like Weatherford alleged to be concurrently at fault.  Under OPA, the B1 Plaintiffs' claims for damages can only be sought against the designated responsible party.  33 U.S.C. §§ 2702, 2713.  There is no other alternative basis under which the B1 Plaintiffs might recover the types of private economic loss and property damages sought against Weatherford.  In *Gabarick*, the court dismissed all claims asserted against the third-party vessel, Tintomara, for damages covered under OPA, specifically those damages enumerated in 33 U.S.C. § 2702. *Id.* at 750-51.  Like the Tintomara, Weatherford "is regarded as a third party" in this case in light of the Coast Guard's designation of BP and Transocean as responsible parties.  Weatherford's liability, if any, in this case can be only as a

"contributor"; and Weatherford's liability, if any, can only be fixed in a separate proceeding by BP and Transocean for subrogation or contribution. *Id.* By failing to state a claim against Weatherford under OPA in the B1 Amended Complaint, the B1 Plaintiffs confirm that they do not possess a cause of action under OPA against Weatherford.[2]

OPA's deliberate liability scheme is in keeping with Congress' intent to provide an exclusive and comprehensive remedy for oil pollution and to avoid piecemeal litigation. *Gabarick*, 623 F. Supp. 2d at 744-46. This is just the opposite of what the B1 Plaintiffs advocate here. Congress could not have made its intent more clear: "The bill requires claims to be presented in the first instance to the discharger, where known." S. Rp. 101-94, S. Rep. No. 94, 101st Cong., 1st Sess. 1989, 1990 U.S. Code Cong. & Admin. News 722, 1989 WL 225005 (Leg. Hist.). Congress stated that "wherever possible, the burden is to be on the discharger to first bear the costs of removal and provide compensation for any damages." *Id.* "Then, the responsible party can take action to recover from third parties." *Gabarick*, 623 F. Supp. 2d at 750. "OPA explicitly states the damages to which it applies and the remedy to be pursued." *Id.* at 747. As Judge Lemelle noted, "[t]he courts are to recognize this direct answer of Congress rather than seek to subvert it by allowing pursuit of the types of claims covered by OPA under the general maritime law prior to proper submission of the claims as articulated in OPA." *Id.* This Court should not allow the B1 Plaintiffs to subvert Congress' clear mandate.

Despite the argument of the B1 Plaintiffs, this is not a case where the B1 Plaintiffs are left without a remedy.[3] The B1 Plaintiffs may proceed in court against the responsible parties

---

[2] *See* B1 Amended Complaint, pp. 176-78 (Rec. Doc. 1128).

[3] *See* Omnibus Opposition, Rec. Doc. 1822, pp. 33-34 ("That the OPA would act as a shield to insulate persons or entities that would have been otherwise liable for compensatory and/or punitive damages under existing law seems incomprehensible given the purpose and intent of the OPA.").

under OPA if they satisfy the presentment requirements.   Additionally, the B1 Plaintiffs' arguments regarding personal injury claims being preempted by OPA are a red herring and irrelevant.[4]   As noted by Weatherford in its Motion to Dismiss and by the court in *Gabarick*, "OPA does not cover bodily injury claims."  *Id.* at 745.  OPA's preemptive effect applies to the damages enumerated under OPA, which do not include bodily injury claims.

This is not a case of the General Maritime Law or state law being a "gap filler" due to OPA's failure to include or cover a situation.  Rather, OPA provides a comprehensive remedy for a party who has "covered damages" as defined by OPA.  Congress expressly legislated that these OPA claims must first be administratively presented before an OPA claimant can file suit.  This is a classic example of federal preemption as there is no alternative basis upon which the B1 Plaintiffs can seek recovery of the damages enumerated under OPA.  The B1 Plaintiffs do not have the right to elect which law/set of laws under which to prosecute their claims.  Congress has spoken to the liability scheme to be applied in cases of marine oil pollution; and as a result, the Court cannot "supplement" with remedies not otherwise provided under OPA.  *Miles v. Apex Marine Corp.*, 498 U.S. 19, 31-32, 111 S. Ct. 317, 325, 112 L. Ed. 2d 275 (1990) (citing *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625, 98 S. Ct. 2010, 56 L. Ed. 2d 581 (1978)).

## II.   THE B1 PLAINTIFFS MISCONSTRUE AND OVERSTATE THE NARROW SCOPE OF THE SAVINGS CLAUSES IN OPA

Rather than presenting to the Court what putative claims for damages are not otherwise preempted and/or covered by OPA, the B1 Plaintiffs argue that OPA's savings clauses and legislative history dictate that General Maritime Law and state law claims are saved in their

---

[4] *See* Omnibus Opposition, Rec. Doc. 1822, p. 33 ("Taking Defendants' argument to its logical extension, for example, the general damage claims of a Jones Act Seaman would have to be dismissed, pending the presentment of his economic loss claims to BP under the OPA. This is certainly not what Congress could have intended.").

entirety.  According to the B1 Plaintiffs, the savings clauses of OPA signify that the statute is neither comprehensive nor exclusive despite the plain words of OPA and its legislative history. Such erroneous contentions are addressed in turn.

A.    *Gabarick* **Dictates that Section 2751(e) Does Not  Apply  to  the  B1  Plaintiffs' Claims**

At the outset, Judge Lemelle in *Gabarick* recognized that OPA is indeed comprehensive legislation.  623 F. Supp. 2d at 746 ("Judge Africk in the present case and Judge Clement in *Tanguis v. M/V Westchester*, 153 F. Supp. 2d 859, 867 (E.D. La. 2001) have described OPA as comprehensive legislation addressing marine oil spill liability and compensation.").  Moreover, in *Gabarick*, Judge Lemelle rejected the exact argument being put forth by the B1 Plaintiffs in this case regarding OPA's negative savings clause in 33 U.S.C. § 2751(e).  *Id.*  Section 2751(e) provides:

> (e) Admiralty and maritime law
>
> **Except as otherwise provided in this Act**, this Act does not affect –
>
> (1) admiralty and maritime law; or
>
> (2) the jurisdiction of the district courts of the United States with respect to civil actions under admiralty and maritime jurisdiction, saving to suitors in all case all other remedies to which they are otherwise entitled.

33 U.S.C. § 2751(e) (emphasis added).

Specifically describing the comprehensive nature of OPA, the *Gabarick* court noted that "'[t]his new scheme includes new remedies, which, in many respects, preempt traditional maritime remedies.  This result is reflected in the first clause of OPA's admiralty and maritime savings provision: '*Except as otherwise provided in this chapter*, this chapter does not affect . . . admiralty and maritime law . . . .'"  623 F. Supp. 2d at 746 (quoting *Tanguis v. M/V Westchester*, 153 F. Supp. 2d 859, 867 (E.D. La. 2001) (emphasis in original)).  The court rejected the

claimants' argument that Section 2751(e) indicated OPA's supplemental nature and stated that the claimants "ignore[d] the first part of section (e)-'except as otherwise provided in this Act.'" *Id.* The court noted that "OPA does not affect admiralty and maritime law except as provided in the Act. The Act applies to the damages listed in § 2702, which also specifically references its exclusive nature with respect to other provisions of law."  *Id.*  The court held that the "plain language of the statute indicates its mandatory and exclusive nature with respect to its covered damages." *Id.*

Similar to the claimants in *Gabarick*, the B1 Plaintiffs argue here that Section 2751(e) evidences that OPA does not preempt their General Maritime Law claims.  The B1 Plaintiffs ignore the clear language of Section 2751(e), which provides "Except as otherwise provided in this chapter."  As held by *Gabarick*, the text of OPA "indicates its mandatory and exclusive nature with respect to its covered damages" and requires the dismissal of the B1 Plaintiffs' General Maritime Law claims, which seek only OPA-covered damages.  *Id.*

With respect to 33 U.S.C. § 2751(e), the legislative history also confirms that the General Maritime Law is preserved only to the extent not otherwise provided by OPA:

> The Conference substitute adopts the House provision with respect to admiralty and maritime laws with an amendment clarifying that the provision was subject to the provisions of the substitute. Section 1002 of the Conference substitute establishes liability notwithstanding any other provision or rule of law, including the Act of March 3, 1851 (46 U.S.C. 183).  **Therefore, there is no change in current law unless there is a specific provision to the contrary.**[5]

*See also, Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atlantic Corp.*, 924 F. Supp. 1436, 1447 (E.D. Va. 1996), *aff'd*, 122 F.3d 1062 (4th Cir. 1997).

---

[5] H.R. CONF. REP. 101-653, H.R. Conf. Rep. No. 653, 101ST Cong., 2ND Sess. 1990, 1990 U.S. Code Cong. & Admin. News, 779, 838, 1990 WL 132747 (Leg. Hist.) (emphasis added).

**B.     Section 2718 Does Not Preserve State Law Claims for OPA-Covered Damages**

The B1 Plaintiffs also misconstrue OPA's savings clause regarding the states' ability to enact legislation to impose "additional liability" for marine oil spills.  Section 2718(a) provides in pertinent part:

> (a) Preservation of State authorities; Solid Waste Disposal Act
>
> Nothing in this Act or the Act of March 3, 1851 shall--
>
> (1) affect, or be construed or interpreted as preempting, the authority of any State or political subdivision thereof from imposing any additional liability or requirements with respect to—
>
>> (A) the discharge of oil or other pollution by oil within such State; or
>>
>> (B) any removal activities in connection with such a discharge; or
>
> (2) affect, or be construed or interpreted to affect or modify in any way the obligations or liabilities of any person under the Solid Waste Disposal Act (42 U.S.C. 6901 et seq.) or State law, including common law.

33 U.S.C. § 2718(a).  Additionally, Section 2718(c) provides in pertinent part:

> (c) Additional requirements and liabilities; penalties
>
> Nothing in this Act, the Act of March 3, 1851 (46 U.S.C. 183 et seq.), or section 9509 of Title 26, shall in any way affect, or be construed to affect, the authority of the United States or any State or political subdivision thereof—
>
>> (1) to impose additional liability or additional requirements; or
>>
>> (2) to impose, or to determine the amount of, any fine or penalty (whether criminal or civil in nature) for any violation of law;
>
> relating to the discharge, or substantial threat of a discharge, of oil.

33 U.S.C. § 2718(c).

Contrary to the B1 Plaintiffs' arguments, Section 2718 does not save the state law claims asserted against Weatherford by the B1 Plaintiffs in the B1 Amended Complaint.  Rather,

Section 2718 merely preserves the states' authority to enact legislation in the form of "mini-OPAs" to provide for liability in addition to the damages enumerated under OPA.

The intent of Congress regarding the limited purpose of OPA's savings provision is clear. The Senate Report expressed the following with respect to Section 2718:

> Section 106 of the reported bill explicitly preserves the authority of any State to impose its own requirements or standards with respect to discharges of oil within such State. Also explicitly preserved is State's authority to establish or maintain funds for cleanup or compensation purposes and collect such fees or penalties as they may establish.
>
> ***
>
> Preemption has been discussed by the members of the Committee more than any other single issue. **S. 686 does not embrace any preemption of State oil spill liability laws, State oil spill funds, or State fees, taxes, or penalties used to contribute to such funds.** The long-standing policy in environmental laws of not preempting State authority and recognizing the rights of States to determine for themselves the best way in which to protect their citizens, is clearly affirmed in S. 686.

S. Rp. 101-94, p. 739, S. Rep. No. 94, 101st Cong., 1st Sess. 1989, 1990 U.S. Code Cong. & Admin. News 722, 1989 WL 225005 (Leg. Hist.) (emphasis added).  The Senate Report goes on to state:

> Historically, the Committee on Environment and Public Works has protected the rights of States to impose more restrictive requirements or liability, particularly in the area of oil pollution law.  More stringent State laws are specifically preserved in both the Clean Water Act (for clean-up of spills of oil) and the Deepwater Port Act and title 3 of the Outer Continental Shelf Lands Act Amendments of 1978 (for clean-up and damages caused by spills of oil).  Other environmental statutes, including the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (the toxic chemical "super fund" law) and amendment to it (the 1986 "super fund" amendments and reauthorization act) contain similar protections.
>
> To date, 24 States have enacted comprehensive oil pollution laws covering clean-up and damages and many have established compensation funds.  Some have included hazardous substances as well.  **This legislation, as reported by the committee would permit such State laws to continue and would not preclude enactment of new state laws.**

> The theory behind the committee action is that the Federal statute is designed to provide basic protection for the environment and victims damaged by spills of oil. Any State wishing to impose a greater degree of protection for its own resources and citizens is entitled to do so. On the other hand, the State might feel adequately protected by the Federal statute and therefore choose not to enact additional State law.  In any event, the committee chose not impose, arbitrarily, the constraints of the federal regime on the States, while at the same time preempting their rights to their own laws.

*Id.* at 727-28 (emphasis added); *see also Nat'l Shipping Co.*, 924 F. Supp. at 1448 ("The savings clause was added to allow the states to enact legislation protecting their citizens and their resources to a greater extent than the protection offered by OPA. It was meant to allow the states to go beyond the basic protection of the federal law.").

Similarly, the discussions in the House Report regarding OPA's preemption of state law were limited to whether OPA should preempt a narrow set of existing and future "state oil pollution liability and compensation laws."  H.R. 101-242, pt. 2, p. 150 (Sept. 18, 1989). Congress never intended to allow all state law claims to survive OPA's enactment; rather, the focus of Section 2718 was those existing and future mini-OPA statutes pertaining to oil pollution liability and compensation.  No where in any of the legislative history does it provide that OPA allows the B1 Plaintiffs to seek OPA-enumerated damages under state law theories of negligence, gross negligence, products liability, nuisance, or trespass.

This interpretation of the Section 2718 is further supported by the Supreme Court's decision in *U.S. v. Locke*, 529 U.S. 89, 120 S. Ct. 1135, 146 L. Ed. 2d 69 (2000):

> Placement of the savings clauses in Title I of OPA suggests that Congress intended to preserve state laws of a scope similar to the matters contained in Title I of OPA, not all state laws similar to the matters covered by the whole of OPA or to the whole subject of maritime oil transport.  **The evident purpose of the saving clauses is to preserve state laws which, rather than imposing substantive regulation of a vessel's primary conduct, establish liability rules and financial requirements relating to oil spills.**

*Id.* at 105.  (emphasis added).

In this case, the B1 Plaintiffs have not asserted any claim against Weatherford under a mini-OPA and instead only seek state law damages which are clearly enumerated under OPA. Section 2718 does not preserve the claims asserted by the B1 Plaintiffs against Weatherford, which claims are completely preempted by OPA. Accordingly, the B1 Plaintiffs' claims against Weatherford should be dismissed in their entirety.

### III.   OPA PREEMPTS THE GENERAL MARITIME LAW AND OPA DOES NOT ALLOW PUNITIVE DAMAGES

As noted above, OPA is exclusive and mandatory; and OPA does not provide for the recovery of punitive damages.  The only federal appellate court to consider the issue of whether punitive damages are available under OPA has affirmatively held that punitive damages are not recoverable under OPA.  *South Port Marine, LLC v. Gulf Oil Ltd.,* 234 F.2d 58, 65-66 (1st Cir. 2000).  There is no separate cause of action for punitive damages; rather, they "must relate to some separate cause of action which permits recovery of punitive damages."  *Id.* at 64.  Since OPA is the exclusive remedy for the damages sought by the B1 Plaintiffs, punitive damages are not recoverable.

The B1 Plaintiffs argue that the recent Supreme Court cases of *Atlantic Sounding Co. v. Townsend*, 129 S. Ct. 2561 (2009), and *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 128 S. Ct. 2605 (2008), support the availability of punitive damages for the B1 Plaintiffs.[6]   The B1 Plaintiffs ignore the fact though that *Baker* dealt with punitive damages under the Clean Water Act, which preceded the enactment of OPA.  554 U.S. at 484-89, 128 S. Ct. at 2616-19.  The *Baker* holding was premised on a lack of congressional intent in the Clean Water Act to occupy the entire field of pollution remedies.  *Id.* at 488-89, 128 S. Ct. at 2618-19.  As noted above, OPA created a new federal cause of action, which is significantly more comprehensive in the

---

[6] Omnibus Opposition, pp. 43-44.

field of marine oil pollution than any prior remedial scheme, including the Clean Water Act. Unlike the Clean Water Act, OPA is intended to be the sole federal law applicable in the area of marine oil pollution. *See South Port Marine, LLC*, 234 F.3d at 65-66. Accordingly, the Supreme Court's holding in *Baker* is inapposite. Moreover, *Atlantic Sounding* simply stands for the proposition that punitive damages are available for the willful and wanton failure to pay maintenance and cure. 129 S. Ct. at 2574. Its holding cannot be extended to allow for punitive damages under OPA in the case of a marine oil spill.

Finally, the availability of punitive damages under OPA would indeed have a frustrating effect on OPA's remedial scheme. The First Circuit in *South Port* expressly rejected the B1 Plaintiffs' argument that "OPA should be construed more liberally because it was enacted for the purposes of benefiting the victims of oil pollution and punishing its perpetrators." *Id.* at 66. As noted by the First Circuit, "it would be naïve to adopt so simpleminded a view of congressional policymaking," as urged by the B1 Plaintiffs in their Ominibus Opposition.[7] *Id.* Congress undertook a delicate balancing effort when enacting OPA by providing for strict liability for oil discharges and both civil and criminal penalties but "declin[ing] to impose punitive damages." *Id.* To allow punitive damages while also providing strict liability and civil fines would frustrate the inherent balancing undertaken by Congress in OPA. Any change in OPA's remedial scheme is better directed to the legislature as opposed to this Court.

## IV. *ROBINS DRY DOCK* FORECLOSES ANY B1 CLAIMS FOR PURELY ECONOMIC LOSS

To the extent that any of the B1 Plaintiffs' claims fall outside of OPA's preemptive effect, the United States Supreme Court's seminal opinion of *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290 (1927), requires the dismissal of all claims in the

---

[7] Ominibus Opposition, p. 42 (Rec. Doc. 1822).

B1 Bundle under the General Maritime Law for purely economic loss without physical damage to property in which the claimant has a proprietary interest.

In their Omnibus Opposition, pp. 74-77, the B1 Plaintiffs provide three separate reasons why the *Robins Dry Dock* rule does not apply in this case to bar their claims for purely economic loss. First, the B1 Plaintiffs argue that claims for purely economic loss are allowed by OPA; however, as noted above, OPA preempts the General Maritime Law, and the B1 Plaintiffs are preempted from seeking under the General Maritime Law the same damages for purely economic loss which are provided for by OPA.[8] Similarly, OPA preempts the recovery of economic damages under state law to the extent the same damages are provided for by OPA. Moreover, OPA does not provide a cause of action against Weatherford, and therefore, the B1 Plaintiffs are prohibited from seeking economic losses under OPA against Weatherford.

Second, the B1 Plaintiffs erroneously argue that the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA") somehow overrules the *Robins Dry Dock* principles.[9] Third, the B1 Plaintiffs direct this Court to a concurrence by an Eleventh Circuit judge in the 1983 case of *Hercules Carriers, Inc. v. State of Florida*, 720 F.2d 1201, 203 (11th Cir. 1983), *vacated and aff'd*, 728 F.2d 1359 (11th Cir. 1984), for the proposition that "*Robins Dry Dock* should be construed to apply only in cases where the plaintiff is damaged because of injury to a party in privity with the plaintiff."[10] Both of these arguments fail as a matter of law as several Fifth Circuit cases decided after CERCLA's enactment, and after *Hercules* was decided, confirm that the principles of *Robins Dry Dock* continue to apply in the

---

[8] Weatherford disputes the B1 Plaintiffs' broad statement that all purely economic losses are allowed by OPA and notes that the scope of recovery of economic loss under OPA is not relevant to the determination of the instant Motion to Dismiss.

[9] *See* Omnibus Opposition, pp. 75-76 (Rec. Doc. 1822).

[10] *See* Omnibus Opposition, pp. 75-76 (Rec. Doc. 1822).

General Maritime Law.  *See Reserve Mooring Inc. v. Amer. Commercial Barge Line, LLC*, 251 F.3d 1069 (5th Cir. 2001) ("[P]hysical injury to a proprietary interest is a prerequisite to recovery of economic damages in cases of unintentional maritime torts."); *Louisiana ex rel. Guste v. M/V TESTBANK*, 752 F.2d 1019, 1029 (5th Cir. 1985) (en banc), *cert. denied*, 477 U.S. 903 (1986) (providing a "bright line" rule that allows plaintiffs to recover economic losses only where the plaintiff has suffered physical injury to a proprietary interest.)  Indeed, this Court in *Barasich v. Shell Pipeline Co.*, Nos. 05-4180, 05-4197, 05-4199, 05-4212, 05-4512, 06-5102, 2006 WL 3913403, at *6 (E.D. La. Nov. 20, 2006), recognized the principle of *Robins Dry Dock* is controlling under the General Maritime Law.  *See Id.* (discussing the seminal case of *Robins Dry Dock*, which "stands for the broad proposition that a plaintiff is barred from recovering for economic loss resulting from physical damage to property in which he has no proprietary interest.").

Accordingly, under *Robins Dry Dock* and its progeny, all General Maritime Law claims for purely economic loss in the absence of physical damage to property in which the claimant has a proprietary interest must be dismissed.  Additionally, the B1 Plaintiffs acknowledge that Louisiana law limits recovery of purely economic loss to oyster fishermen and precludes the remaining B1 Plaintiffs' claims for purely economic loss under Louisiana law.[11]  As noted in Weatherford's original Memorandum in Support of its Motion to Dismiss, the only two possible sources of law for the B1 Plaintiffs' non-OPA claims, if any, are the General Maritime Law and Louisiana law.  Under both sources of law, all claims for purely economic loss, except Louisiana state law claims for economic loss by oyster fishermen, are precluded and should be dismissed.

---

[11] *See* Omnibus Opposition, pp. 94-95 (Rec. Doc. 1822).

V.      **CONCLUSION**

Essentially, the B1 Plaintiffs seek to have the Court legislate and overrule established precedent within the Eastern District of Louisiana.  The B1 Plaintiffs also seek to disrupt well-established principles of the General Maritime Law as set forth in *Robins Dry Dock* and its progeny.  To do as the B1 Plaintiffs suggest and allow a multitude of claimants to pursue OPA-covered damages via state law and General Maritime Law claims would effectively abrogate OPA in its entirety.  As indicated by the thousands of claimants who have already filed suit as a result of the oil spill, the B1 Amended Complaint completely frustrates the Congressional intent behind OPA of promoting settlement and avoiding piecemeal litigation.  For the reasons set forth above, the B1 Plaintiffs' arguments fail as a matter of law.

OPA is exclusive and mandatory.  The B1 Plaintiffs cannot seek damages from Weatherford under non-OPA theories of liability when all of the damages sought by the B1 Plaintiffs are clearly enumerated damages under OPA.  Moreover, OPA does not provide a cause of action against a third party like Weatherford.  OPA also does not provide for the recovery of punitive damages.  Therefore, all claims in the B1 Amended Complaint against Weatherford should be dismissed with prejudice.

Even in the absence of OPA, both the General Maritime Law and Louisiana law bar claims for purely economic loss, and all claims for purely economic loss should be dismissed with prejudice.

This 29th day of April, 2011.

Respectfully submitted:

*/s/  Glenn G. Goodier*

GLENN G. GOODIER (#06130)
RICHARD D. BERTRAM (#17881)
LANCE M. SANNINO (#29409)
Jones, Walker, Waechter, Poitevent,
  Carrère & Denègre, L.L.P.
201 St. Charles Avenue. 48th Floor
New Orleans, Louisiana  70170-5100
Telephone:     (504) 582-8174
Facsimile:      (504) 589-8174

MICHAEL G. LEMOINE, T.A. (#8308)
GARY J. RUSSO (#10828)
DOUGLAS C. LONGMAN, JR. (#8719)
Jones, Walker, Waechter, Poitevent,
  Carrère & Denègre, L.L.P.
600 Jefferson Street, Suite 1600
Lafayette, , Louisiana  70501-5100
Telephone:     (337) 262-9024

*Counsel for Weatherford U.S., L.P.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2011, the above and foregoing has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with the Court's Pretrial Order No. 12, on November 1, 2010.

*/s/  Glenn G. Goodier*