**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010** | * * * * | **MDL NO. 2179**<br><br>**SECTION J** |
| | * | |
| This document relates to: | * | |
| *MDL 2179 Master Complaint and All Cases in Pleading Bundle C.* | * * | **Honorable CARL J. BARBIER** |
| | * | |
| This document relates to: | * | **Magistrate Judge SHUSHAN** |
| *No. 10-2771 (Limitation Action)* | * * | |

**MEMORANDUM IN SUPPORT OF BP DEFENDANTS' MOTION
TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1) AND FED R. CIV. P. 12(B)(6)
THE LOCAL GOVERNMENT ENTITY MASTER COMPLAINT**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

BACKGROUND AND CLAIMS ........................................................................................2

ARGUMENT ......................................................................................................................3

I.  Plaintiffs Have No Valid Maritime Law Claims Against BP. ...............................4

    A.  OPA Displaces Plaintiffs' Maritime Claims. ..............................................4

    B.  Even If OPA Did Not Displace Plaintiffs' Maritime Claims, the *Robins Dry Dock* Rule Requires That Many of These Claims Be Dismissed. ..................6

II.  Plaintiffs' OPA Claims Must Be Dismissed for Failure to Satisfy OPA's Claim Presentment Requirement. ......................................................................................7

III.  Plaintiffs Have No Valid State Law Claims Against BP. ....................................11

    A.  Under the Outer Continental Shelf Lands Act and the Louisiana Oil Spill Act, Plaintiffs' Common Law Claims Fail as A Matter of Law. ...........................11

    B.  Many of Plaintiffs' Common Law Claims Fail as A Matter of Law for Independent Reasons. ..............................................................................12

    C.  The Clean Water Act and the Supreme Court's *Ouellette* Line of Cases Bar *All* State Law Claims. .......................................................................13

    D.  Plaintiffs Have No Valid Claims under the Florida, Louisiana, and Texas Oil Spill Statutes. ..................................................................................13

        1.  OCSLA Does Not Permit Application of Florida or Texas Law. ..............14

        2.  OPA, OCSLA, and the Clean Water Act Preempt Louisiana Oil Spill Act Claims for Oil Spills That Occur on the Outer Continental Shelf. ..................................................................................14

        3.  Plaintiffs' Claims Under the State Oil Spill Statutes Fail for Other Independent Reasons. ..............................................................15

    E.  The Claims of Local Government Entities, Including Parish District Attorneys, Under the Louisiana Wildlife and Fisheries Statute Are Preempted by the Louisiana Oil Spill Prevention and Response Act and Federal Law. ............................................................................................16

IV.  Plaintiffs' Punitive Damages Count Must Be Dismissed. ...................................19

CONCLUSION .................................................................................................................21

## INTRODUCTION

The plaintiffs—local governmental entities in Alabama, Florida, Louisiana, Mississippi, and Texas—allege in their Voluntary Master Complaint that they were harmed by the oil spill following the explosions on the *Deepwater Horizon* on April 20, 2010, and its sinking into the Gulf of Mexico two days later.  (MDL 2179 Doc. 1510 ("Compl.").)  Plaintiffs' complaint also alleges that the well from which the oil flowed was located on the Outer Continental Shelf, beyond the territorial jurisdiction of the surrounding states.  (*Id.* ¶ 29.)  Those two facts establish that the law governing each plaintiff's claims is exclusively federal and that the Oil Pollution Act of 1990 provides the exclusive remedy.  *See*, *e.g.*, 33 U.S.C. § 2702(a); 43 U.S.C. § 1333. Plaintiffs' claims, including under the Oil Pollution Act, are legally insufficient and should be dismissed for a number of independent reasons.  For example:

According to the Supreme Court, federal common law, including maritime law, must give way when Congress has enacted legislation covering a subject previously controlled by the common law.  Here, the Oil Pollution Act displaces exactly the sort of maritime claims that plaintiffs seek to bring against BP; it provides the sole federal remedy for claimants seeking recovery for damages and/or cleanup costs resulting from an oil spill.  *See* 33 U.S.C. § 2702(a).

Similarly, under the Outer Continental Shelf Lands Act, federal law provides the exclusive remedy for claims arising from drilling for oil or other mineral-exploration or development activities on the Outer Continental Shelf.  *See* 43 U.S.C. § 1333.[1]  State law is

---

[1]   *See also Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 217 (1986) ("The intent behind OCSLA was to treat the artificial structures covered by the Act as upland islands or as federal enclaves within a landlocked State."); *Demette v. Falcon Drilling Co.*, 280 F.3d 492, 498 (5th Cir. 2002) (holding that "a device temporarily attached to the seabed, which was erected on the Outer Continental Shelf for the purpose of drilling for oil" fell within the scope of section 1333(a)(1)), *overruled on other grounds by Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778 (5th Cir. 2009) (*en banc*); *Tennessee Gas Pipeline v. Houston Cas. Ins. Co.*, 87 F.3d 150, 153 (5th Cir. 1996) (OCSLA "makes federal law exclusive in its regulation of the [Shelf]…."). (*See generally* BP's B1 Bundle Mot. at 7-9.)

expressly preempted; it never applies of its own force to claims arising from such activities. *Id.*; *see also Tenn. Gas Pipeline v. Houston Cas. Ins. Co.,*, 87 F.3d 150, 153 (5th Cir. 1992) (explaining that OCSLA establishes "national authority over the [Outer Continental Shelf] at the expense of both foreign governments and the governments of the individual states."). Plaintiffs' state common law and statutory claims are therefore preempted and for this reason alone, must be dismissed.

Finally, plaintiffs fail to allege necessary facts in order to state claims under the Oil Pollution Act. The Act requires certain designated "responsible parties" to pay specified cleanup costs and damages "that result from" an oil spill and requires claimants to first "present" all their claims to those parties before bringing a claim under the Act. *See* 33 U.S.C. §2713(a) - (c). Plaintiffs do not allege in the Master Complaint that they have met these presentment requirements and hence their OPA claims must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

In sum, the governmental plaintiffs do not allege proper facts that support this Court's jurisdiction or their right to relief under the Oil Pollution Act; nor do they allege facts supporting a right to relief under state or maritime law. Plaintiffs' claims are legally insufficient and should be dismissed in their entirety under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## BACKGROUND AND CLAIMS

### A.      The Local Government Entity Master Complaint.

The Court assigned complaints pending in MDL 2179 to various "pleading bundles" for purposes of "filing … complaints, answers and any Rule 12 motions." (CMO No. 1/PTO No. 11.) Bundle C includes "claims brought by governmental entities [other than state-level entities] for, *inter alia*, loss of resources, loss of tax revenue, property damages, response or restoration costs, and civil penalties." (PTO 33 ¶ 1.) These local public bodies or entities could

"voluntarily join or otherwise intervene into one administrative Master Complaint for Bundle C claims, or may opt out of the Master Complaint and file their own separate individual petitions or complaints."   (PTO 33 ¶ 1.)   On March 4, 2011, Coordinating Counsel for the States and the Plaintiffs' Steering Committee filed the Local Government Entity Voluntary Master Complaint, which BP moves to dismiss in its entirety.

### B.    The Statutory Background.

Three federal statutes are central to plaintiffs' claims alleging damages due to the *Deepwater Horizon* oil spill.   First, the Outer Continental Shelf Lands Act makes federal law exclusive for claims arising from drilling for oil and other mineral exploration and development activities on the Outer Continental Shelf.   *See* 43 U.S.C. § 1333.   Second, the Oil Pollution Act of 1990 ("OPA" or the "Act") establishes a comprehensive remedial scheme for oil spill damages, including claims for natural resource damages and lost tax and other revenue.   *See* 33 U.S.C.§ 2702(b)(2)(D).   Finally, the Clean Water Act and its permit system provide, according to authoritative case law, that the source point of pollution determines choice of law and other issues related to any discharge of pollution.   These statutes are discussed extensively in pages 7-13 of BP's Memorandum in Support of Motion to Dismiss the B1 Master Complaint, Doc. 1440-1.[2]

### ARGUMENT

Plaintiffs' claims are legally insufficient and should be dismissed under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).   Under either Rule, the standard is the same:   a claim must be dismissed unless the plaintiff's complaint alleges "a plausible set of facts to support [its] claim."   *Hensley v. Redi-Med of Mandeville*, Civ. A. No. 09-47, 2009 WL 2408319, at *2 (E.D.

---

[2]    Where appropriate and to avoid repetition, BP incorporates by reference portions of its brief supporting its motion to dismiss the B1 master complaint ("BP's B1 Mem.").

La. Aug. 4, 2009) (Barbier, J.) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). According to the Supreme Court and the Fifth Circuit, conclusory allegations are not presumed true, and to survive dismissal, the required elements of the claim must instead be supported by proper factual allegations that make plaintiffs' entitlement to relief not merely conceivable, but plausible. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950-51 (2009); *Sanford v. Louisiana*, 228 Fed.Appx. 492, 492-93 (5th Cir. 2007); *Hensley*, 2009 WL 2408319, at *2.

## I.    PLAINTIFFS HAVE NO VALID MARITIME LAW CLAIMS AGAINST BP.

### A.    OPA Displaces Plaintiffs' Maritime Claims.

Count I alleges claims under general maritime law for negligence, gross negligence, and willful misconduct against BP.  According to the Supreme Court, federal common law, including maritime law, must give way when Congress has enacted legislation covering a subject previously controlled by the common law.  *See*, *e.g.*, *Northwest Airlines, Inc. v. Transp. Workers Union of Am., AFL-CIO*, 451 U.S. 77, 96 (1981) ("Even in admiralty, . . . where the federal judiciary's lawmaking power may well be at its strongest, it is our duty to respect the will of Congress."); *Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 21-22 (1981) (Clean Water Act displaces federal common law of nuisance in the area of ocean pollution).  Federal courts have found maritime law to be displaced by such statutes as the Clean Water Act, *see United States v. Dixie Carriers, Inc.*, 627 F.2d 736, 738 (5th Cir. 1980), the Death on the High Seas Act, *see Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625 (1978), and the Equal Pay Act and Title VII of the Civil Rights Act of 1964, *see Northwest Airlines*, 451 U.S. at 95-97.

Every federal court that has addressed the issue has come to the same conclusion:  OPA displaces preexisting, judge-made maritime claims.  *See Tanguis v. M/V Westchester*, 153 F.

Supp. 2d 859, 867 (E.D. La. 2001) ("This new scheme [OPA] includes new remedies, which, in many respects, preempt traditional maritime remedies.")  As one district court explained:

> "*OPA clearly preempts maritime law as to recovery of cleanup expenses and the cost of compensating injured person*s.  A Court exercising its admiralty jurisdiction will apply the general maritime law only in the absence of a relevant federal statute. … In this case, OPA provides [plaintiff] with a remedy against [defendant]; it, therefore, preempts the general maritime law as to recovery of cleanup expenses and the cost of compensating third parties."

*Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atlantic Corp.*, 924 F. Supp. 1436, 1447 (E.D. Va. 1996), *aff'd* 122 F.3d 1062 (4th Cir. 1997) (citing *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864 (1986)) (emphasis added); *see also Gabarick v. Laurin Mar. (Am.), Inc.*, 623 F. Supp. 2d 741, 750-51 (E.D. La. 2009) (holding that "all claims that are recoverable under OPA," that is, those covered damages enumerated in 33 U.S.C. § 2702, "are preempted by OPA"); *South Port Marine, LLC v. Gulf Oil Ltd. P'ship*, 234 F.3d 58, 65-66 (1st Cir. 2000) (Congress intended for OPA "to supplant the existing general admiralty and maritime law.").

OPA displaces exactly the sort of maritime claims that plaintiffs seek to bring against BP here; it provides the sole federal remedy for claimants seeking recovery for damages and/or cleanup costs resulting from an oil spill.  *See* 33 U.S.C. § 2702(a) (establishing damages and cleanup cost remedies "[n]otwithstanding any other provision or rule of law").  The Act sets forth a "comprehensive list of recoverable damages including: [1] removal costs; damage to [2] natural resources and [3] real or personal property; [4] loss of subsistence use of natural resources; [5] loss of government revenues, [6] lost profits and earning capacity; and [7] costs of increased or additional public services occasioned by the unlawful act."  *South Port Marine*, 234 F.3d at 64 (citing 33 U.S.C. § 2702(b)).

Plaintiffs' maritime law claims alleged against BP in Count I fall squarely within the scope of OPA.  As a matter of federal law, such common-law claims are displaced by OPA and must be dismissed.  (*See also* B1 Mem. Part I.A.)

**B.     Even If OPA Did Not Displace Plaintiffs' Maritime Claims, the *Robins Dry Dock* Rule Requires That Many of These Claims Be Dismissed.**

Many of plaintiffs' maritime law claims must be dismissed because they are barred by the economic loss doctrine of *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 309 (1927).  In *Robins Dry Dock*, the Supreme Court held that unless a plaintiff can prove physical injury to a propriety interest, he may not recover economic losses allegedly caused by the defendants' tortious conduct.  *Id.; see In re Taira Lynn Marine Ltd. No. 5, LLC*, 444 F.3d 371, 377 (5th Cir. 2006) ("It is unmistakable that the law of this circuit does not allow recovery of purely economic claims absent physical injury to a proprietary interest in a maritime negligence suit.").

To avoid the *Robins Dry Dock* rule, a maritime plaintiff must demonstrate both that (1) it possesses a sufficient and cognizable interest in property alleged to be damaged; and (2) the economic losses "directly flow" from that physical injury.  *See Corpus Christi Oil & Gas Co. v. Zapata Gulf Marine Corp.*, 71 F.3d 198, 202 (5th Cir. 1995) (rejecting argument that the principle "simply requires a showing of damage to some proprietary interest of the plaintiff, in order to open the door to recovery for all [foreseeable] purely economic damages")).  Many of plaintiffs' claims fail under both prongs of the test.

Nowhere do plaintiffs allege that they suffered physical injury to a proprietary interest that directly led to their economic losses.  Although the complaint alleges that "certain local government entities own real and/or personal property that was lost, damaged, or diminished in value as a result of the Spill" (Compl. ¶ 173), plaintiffs do not connect that alleged property damage to any purported economic losses, as is necessary to avoid the *Robins Dry Dock* rule.

*See*, *e.g.*, *Corpus Christi Oil & Gas Co.*, 71 F.3d at 203 (denying recovery of lost revenue not directly caused by physical injury to plaintiff's proprietary interest).   Moreover, plaintiffs' allegation that some subset of plaintiffs ("certain" local government entities) own property that has allegedly suffered physical damage, cannot save the economic loss claims of the remaining plaintiffs, which are barred by *Robins Dry Dock*.  These local entities can have no claim as a matter of law.

## II.   Plaintiffs' OPA Claims Must Be Dismissed for Failure to Satisfy OPA's Claim Presentment Requirement.

Plaintiffs have not established the jurisdictional facts necessary for their claims under the Oil Pollution Act—in particular, that they have satisfied the presentment requirement of OPA. One of the purposes of OPA's comprehensive system to address oil pollution is to encourage out-of-court resolution of claims.  33 U.S.C. § 2713(a); *see* 135 Cong. Rec. H7965 (daily ed. Nov. 2, 1989) ("The system of liability and compensation provided for in the bill . . . is intended to allow for quick and complete payment of reasonable claims without resort to cumbersome litigation.").   To that end, the Act requires certain designated "responsible parties" to pay specified cleanup costs and damages "that result from" the incident and requires claimants to first "present" all their claims to those parties for payment.  33 U.S.C. §2713(a) - (c).  A lawsuit may be initiated only after a claim is "presented" in accordance with § 2713(a) and after (i) the responsible party denies all liability for the claim or (ii) the claim is not settled by payment within 90 days.  33 U.S.C. §2713(c).  (*See also* BP's B1 Mot. Part II.A.)[3]

---

[3]   OPA's mandatory pre-suit presentment requirement is set forth in 33 U.S.C. § 2713.  Subpart (a) provides that "**all claims** for removal costs or damages **shall be presented first to the responsible party** or guarantor of the source designated under section 2714(a) of this title."  *Id.* § 2713(a) (emphasis added).  Pursuant to subpart (c), only *after* "a claim is presented in accordance with subsection (a) of this section," and "(1) each person to whom the claim is presented denies all  liability for the claim," or "(2) the claim is not settled by any person by payment within 90 days after the date upon which (A) the claim was presented, or (B) advertising was begun pursuant to section 2714(b) of this title, whichever is later, the claimant may elect to commence an action in court against the responsible party or guarantor or to present the claim to the [Oil Spill Trust] Fund."  *Id.*

Plaintiffs' failure to comply with OPA's statutory presentment requirement is a jurisdictional defect that may not be excused by a court and, independently, defeats the claim on the merits; a district court may not entertain damages claims "unless and until a claimant has presented her claims in compliance with §2713(a)." *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co., Inc*., 51 F.3d 235, 240 (11th Cir. 1995). For this reason, courts in this district and elsewhere routinely dismiss OPA claims under both Fed. R. Civ. P. 12(b)(1) and 12(b)(6) if the plaintiffs have not complied with Section 2713's presentment requirements. *See Boca Ciega*, 51 F.3d at 240 (holding that "the district court was correct when it granted [defendant's] motions to dismiss for lack of subject matter jurisdiction"); *Berthelot v. Boh Bros. Constr. Co., L.L.C.*, Civ. A. No. 05-4182, 2006 WL 2256995, at *6 (E.D. La. July 19, 2006) (finding that OPA allegations could not provide a basis for federal jurisdiction because plaintiffs had failed to follow the OPA presentment requirement); *Marathon Pipe Line Co. v. LaRoche Indus., In*c., 944 F. Supp. 476, 477 (E.D. La. 1996) ("The Court agrees that § 2713's presentation requirement is jurisdictional and mandates dismissal when that provision is applicable and not complied with by the claimant"); *Johnson v. Colonial Pipeline Co.*, 830 F. Supp. 309, 311 (E.D. Va. 1993) (dismissing OPA claims for lack of federal question jurisdiction); *cf. Turner v. Murphy Oil USA, Inc.*, Civ. A. No. 05-4206, 2007 WL 4208986, at *2 (E.D. La. Nov. 21, 2007) (granting a 12(b)(6) motion to dismiss OPA claims because plaintiffs failed to follow the presentment requirement).

Importantly, to "present" a claim and start the clock running on the 90-day negotiation period, a claimant must both specify the amount of damages being sought (referred to in the statute as a "sum certain," *see* 33 U.S.C. § 2701(3)), and provide evidence and information

---

§ 2713(c). "Claim" is defined as "a request, made in writing for a **sum certain**, for compensation for damages or removal costs resulting from an incident." *Id.* § 2701(3) (emphasis added). *See Berthelot v. Boh Bros. Constr. Co.*, No. 05-4182, 2006 WL 2256995, at *7 (E.D. La. July 19, 2006) (no jurisdiction if § 2713 is not met).

sufficient for BP to assess whether (i) the alleged loss satisfies OPA's causation requirements and (ii) the claimant incurred the amount of damages alleged.  *See Johnson*, 830 F. Supp. at 311; *Turner*, 2007 WL 4208986, at *2.

Courts have rigorously applied these standards in granting motions to dismiss for failure to present.  As Judge Fallon has explained, "If the claim does not have the ***necessary specificity***, the responsible party will be unable to make a[n] informed offer of settlement."  *Turner*, 2007 WL 4208986, at *2 (granting motion to dismiss where Section 2713 presentment requirement was not met) (emphasis added).  Similarly, in granting a motion to dismiss OPA claims, the *Johnson* court held that claims presented without the necessary specific information will not afford the meaningful settlement opportunity the statute requires:

> "[T]he purpose of OPA's claim presentation requirement is to enable the parties to negotiate, if possible, a settlement of potential claims resulting from an oil spill without having to resort to litigation. . . . In order to accomplish this purpose, ***the claim presented must inform the responsible party with some precision of the nature and extent of the damages alleged and of the amount of monetary damages claimed.***  Otherwise, the responsible party will be unable to make an informed offer of its own, unable to engage in meaningful substantive negotiations, and thus unable to settle the matter by agreeing to a final amount. Instead the responsible party will have to ask for a more definite statement of the claim, as Colonial has done here, and the 90-day period will be spent trying to obtain basic information rather than actually negotiating a settlement."

830 F. Supp. at 311 (emphasis added).

In *Johnson*, the court reviewed a letter submitted by the plaintiffs that purported to present an OPA claim and held that it was "plainly inadequate" under the statute.  Plaintiffs made "no effort to describe the nature or extent of these alleged damages, much less to explain the basis for claiming that these damages have been sustained," and "fail[ed] to state a sum certain for any of the types of damages alleged."  *Id.*  Likewise, in *Gabarick*, the court held that

an invoice submitted by plaintiff did not satisfy OPA's "statutory requirements for a proper claim" because the plaintiff "has not described the manner in which the oil spill impacted it, nor has it cited evidence in support of its purported claim." *Gabarick v. Laurin Mar. (Am.), Inc.*, Civ. A. No. 08-4007, 2009 WL 102549, at * 2 (E.D. La. Jan. 12, 2009); *see also Abundiz v. Explorer Pipeline Co.*, Civ. A. Nos. 300CV2029H, 303CV0508H, 303CV0787H, 2003 WL 23096018, at *3-5 (N.D. Tex. Nov. 25, 2003) (court reviewed Excel files and a letter plaintiffs submitted to the responsible party, found them ambiguous as to the amount in dispute, and held that plaintiffs "did not successfully meet the sum certain presentation requirement of the OPA").

In the Master Complaint, plaintiffs allege that "[t]o the extent required by law, and/or by consent or stipulation by BP, Plaintiffs have satisfied, or will have satisfied, all of the administrative requirements of 33 U.S.C. §§ 2713(a) and (b), as to each and all defendants by submission of their claims to the Gulf Coast Claims Facility (the "GCCF") and/or BP and/or its agents or designees."   (Compl. ¶ 668.)[4]   Plaintiffs' allegation not only fundamentally mischaracterizes the presentment requirement as "administrative," on its face the allegation lacks a "sum certain" or identification of "the precise nature" of the damages claimed and is therefore insufficient to meet the presentment requirement.  *See, e.g., Johnson*, 830 F. Supp. at 311; *Gabarick*, 2009 WL 102549, at * 2.  Indeed, to the extent plaintiffs assert they will, *in the future,* satisfy the presentment requirement, they concede they have not done so *before filing suit*, as the statute requires.  *See* 33 U.S.C. §2713(a) - (c).  Such threadbare pleading does not reveal whether

---

[4]     Unlike private parties, the Gulf Coast Claims facility does not process claims by government entities, which must present their claims directly to BP.  *See* http://www.gulfcoastclaimsfacility.com/not_covered (last visited April 29, 2011).

any individual plaintiff has actually provided a sum certain or information necessary to evaluate the claim—or even submitted any claim at all.[5]

### III.   PLAINTIFFS HAVE NO VALID STATE LAW CLAIMS AGAINST BP.

#### A.   Under the Outer Continental Shelf Lands Act and the Louisiana Oil Spill Act, Plaintiffs' Common Law Claims Fail as A Matter of Law.

The Outer Continental Shelf Lands Act ("OCSLA") governs the choice-of-law analysis and shows that plaintiffs can have no valid claims under the common law of any state.  Under OCSLA, federal law provides the exclusive remedy for claims arising from drilling for oil or other mineral-exploration or development activities on the Outer Continental Shelf.  *See* 43 U.S.C. § 1333.  (*See also* note 1, *infra*.)  State law is expressly preempted; it never applies of its own force to claims arising from such activities.  *Id.*; *see also Tenn. Gas Pipeline*, 87 F.3d at 153 (explaining that OCSLA establishes "national authority over the [Outer Continental Shelf] at the expense of both foreign governments and the governments of the individual states.").  Instead, the law of the nearest adjacent state (here, Louisiana) may apply (if at all) only indirectly as surrogate federal law and only if necessary to fill a gap in federal law.  *See Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 480-81 (1981).[6]  There is no gap for even surrogate federal law, however, because the Oil Pollution Act provides the comprehensive remedy for oil spills.

---

[5]   The short-form joinders filed by local government entities indicate that only about 22 out of 140 joining governmental entities have even filed a claim with BP.  Review of the relevant claims files reveals that among those who have filed claims, many are incomplete, lack necessary documentation, fail to state a sum certain, or were filed fewer than the required 90 days before this case, and therefore still fail to meet the presentment requirement.  At any rate, it is plaintiffs -- as claimants under OPA -- who must plead and prove that they have complied with presentment, and they have altogether failed to do so.

[6]   *See also Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 349 (5th Cir. 1999); *EP Operating Ltd. P'ship v. Placid Oil Co.*, 26 F.3d 563, 566 (5th Cir. 1994); *Union Tex. Petroleum Corp. v. PLT Eng'g, Inc.*, 895 F.2d 1043, 1052 (5th Cir. 1990) ("Any other result here would frustrate the Congressional purpose that the [Outer Continental Shelf] be treated as an area of exclusive federal jurisdiction within the state where state law will apply to fill in the gaps in the federal law.").

Independently, putting aside that federal law is exclusive, plaintiffs likewise have no valid claims under the common law of Louisiana, the adjacent state.  This is because under Louisiana law, the exclusive remedy for oil spills is the Louisiana Oil Spill Prevention and Response Act ("Louisiana Oil Spill Act").  *See* La. Rev. Stat. § 30:2491(A) (the Oil Spill Act "supersede[s] any other liability provisions provided by any other applicable state law.").  Accordingly, all of plaintiffs' state common law claims must be dismissed.  (*See also* B1 Mot. to Dismiss Parts III.A & III.C.)

**B.  Many of Plaintiffs' Common Law Claims Fail as A Matter of Law for Independent Reasons.**

As more fully explained in BP's B1 Motion to Dismiss, plaintiffs' common law claims independently fail to state valid claims for relief.

***First***, plaintiffs' nuisance claims fail because plaintiffs cannot satisfy the "neighbor" requirement of Louisiana Civil Code Article 667 and many plaintiffs have not alleged a physical injury to a proprietary interest, which is necessary to overcome the economic loss rule.  (*See* B1 Mot. Part III.D.2.)  ***Second***, the trespass claim is brought on behalf of all plaintiffs, whether or not they own property that has been physically invaded.  (*See id.* Part III.D.3.)  ***Third***, plaintiffs fail to state valid claims for fraudulent concealment because they (i) do not allege with the requisite specificity that BP made any fraudulent statements or omissions or that any alleged misrepresentations were material to plaintiffs; (ii) do not allege that BP had an intent to deceive; (iii) do not allege "justifiable reliance" and "resultant injury"; and (iv) fail to establish any special relationship between BP and plaintiffs such that BP had a duty to disclose.  (*See id.* Part III.D.4.)

### C.     The Clean Water Act and the Supreme Court's *Ouellette* Line of Cases Bar *All* State Law Claims.

A state may not impose its own laws' pollution liability when the source of the oil spill is outside the state's territorial boundaries.  As the Supreme Court has held, a state has no authority to regulate—through its common law or otherwise—pollution whose source is outside its territory, even if the effects of that pollution are felt within the state.  *See Int'l Paper Co. v. Ouellette*, 479 U.S. 481 (1987).[7]   In such cases, pollution control is exclusively a matter of federal law, including the Clean Water Act and OPA.  Liability rules imposed by the impacted state impermissibly interfere with the federal scheme, "upsetting the balance of public and private interests so carefully addressed by the [Clean Water] Act."  *Ouellette*, 479 U.S. at 494.  Accordingly, all of plaintiffs' claims brought under state statutory or common law (Count III) must be dismissed.  (*See* B1 Bundle Mot. Part III.B for further discussion of preemption and the Clean Water Act.)

### D.     Plaintiffs Have No Valid Claims under the Florida, Louisiana, and Texas Oil Spill Statutes.

Plaintiffs' claims under the Florida Pollution Discharge Prevention and Control Act (the "Florida Pollution Act"), the Louisiana Oil Spill Act, and the Texas Oil Spill Prevention and Response Act of 1991 (the "Texas Oil Spill Act") are legally invalid and should be dismissed.

---

[7]     *See also id.* ("After examining the [Clean Water Act] as a whole, its purposes and its history, we are convinced that if affected States were allowed to impose separate discharge standards on a single point source, the inevitable result would be a serious interference with the achievement of the 'full purposes and objectives of Congress.'") (quoting *Hillsborough County v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713 (1985)); *Arkansas v. Oklahoma*, 503 U.S. 91, 100 n.6 (1992) ("The affected State may try to persuade the federal government or the source state to increase effluent requirements, but *ultimately possesses no statutory authority to compel that result, even when its waters are adversely affected by out-of-state pollution*.") (emphasis in original) (approvingly quoting Brief of the United States as Amicus Curiae, October Term 1986, No. 85-1233, p. 19).

1.      **OCSLA Does Not Permit Application of Florida or Texas Law.**

As discussed above, the Outer Continental Shelf Lands Act bars application of state law except the law of the adjacent state may apply indirectly as surrogate federal law and only if necessary to fill a gap in federal law.  *See Gulf Offshore*, 453 U.S. at 480-81.  Here, the nearest adjacent state is Louisiana, and plaintiffs therefore have no valid claims under the Florida Pollution Act or the Texas Oil Spill Act.  (*See also* B1 Mot. to Dismiss Part III.A.)

2.      **OPA, OCSLA, and the Clean Water Act Preempt Louisiana Oil Spill Act Claims for Oil Spills That Occur on the Outer Continental Shelf.**

There are no gaps to fill that would require adopting the Louisiana Oil Spill Act as surrogate law under the Outer Continental Shelf Lands Act because Congress has provided comprehensive federal remedies.  The Oil Pollution Act sets forth an expansive, comprehensive, and inclusive system to address oil pollution.   (*See* B1 Bundle Mot. at 9-11, Part III.C.) Congress enacted OPA "to create a single Federal law providing cleanup authority, penalties, and liability for oil pollution."   S. Rep. 101-94 (1990), *reprinted in* 1990 U.S.C.C.A.N. 722, 730.[8]  Because there is no need for surrogate federal law, there is no role, even indirectly, for Louisiana's oil spill statute.  *See Gulf Offshore*, 453 U.S. 473 at 480-81. (*See* B1 Bundle Mot. Part III.C.)  Accordingly, plaintiffs' claims under the Louisiana Oil Spill Act must be dismissed.

---

[8]    *See also Tanguis v. M/V Westchester*, 153 F. Supp. 2d 859, 867 (E.D. La. 2001) ("OPA 'represents Congress' attempt to provide a comprehensive framework in the area of marine oil pollution.'"); *Targa Midstream Servs. Ltd. P'ship v. K-Sea Transp. Partners, L.P.*, No. Civ.A. G-05-629, 2006 WL 2520914, *2 (S.D. Tex. Apr. 20, 2006) ("OPA created a stricter and more comprehensive liability scheme for oil spill pollution than had existed under prior legislation…"); *Rice v. Harken Exploration Co*., 89 F. Supp. 2d 820, 822 (N.D. Tex. 1999) (similar); *cf. Gatlin Oil Co., Inc. v. United State*s, 169 F.3d 207, 209 (4th Cir. 1999) (Congress enacted OPA to provide a "prompt, federally-coordinated response to oil spills in navigable waters of the United States and to compensate innocent victims").

3.      **Plaintiffs' Claims Under the State Oil Spill Statutes Fail for Other Independent Reasons.**

Plaintiffs' claims under the Florida, Louisiana, and Texas state oil spill statutes, like their common law claims, are based on alleged damages from the flow of pollution into the respective state's territories.  Plaintiffs acknowledge that the oil spill took place on the Outer Continental Shelf, beyond any state's territorial waters (*see e.g.*, Compl. ¶ 241 (Macondo site located 48 miles off the coast of Louisiana)), but allege that lands and waters within the states' territorial limits were affected by the discharge.  *See*, *e.g.*, Compl. ¶¶ 725, 731.  This sort of contingent effect is insufficient to state a valid claim under the state oil spill statutes.

*First*, the *Deepwater Horizon* situs lies far beyond the territorial waters of any state, and is not subject to any state's jurisdiction, including Florida, Louisiana, and Texas.  *See United States v. Florida*, 425 U.S. 791, 792 (1976) (*per curiam*) ("As against the United States, the State of Florida is entitled to all the lands, minerals, and other natural resources underlying the Gulf of Mexico extending seaward for a distance of 3 marine leagues from its coastline or its historic coastline, whichever is landward, but for not less than 3 geographic miles from its coastline."); Tex. Nat. Res. Code Ann. § 11.012(a) (Vernon 2009) (citing *Texas v. Louisiana*, 426 U.S. 465 (1976)); 31 Tex. Admin. Code § 19.2(a)(1) (defining "coastal waters as all tidally influenced waters extending from the head of tide in the arms of the Gulf of Mexico seaward to the three marine league limit of Texas' jurisdiction"); *Felarise v. Cheramie Marine, L.L.C.*, Civ.A. 09-6355, 2010 WL 375229, at *1 (E.D. La. Jan. 26, 2010) (citing 43 U.S.C. § 1312); La. Admin. Code tit. 43, pt. XI, § 301.  The United States, not the states of Florida, Louisiana, or Texas, holds jurisdiction over the *Deepwater Horizon* situs.

*Second*, applying the Florida, Louisiana, or Texas oil spill statutes to an incident outside of the respective state's territorial waters would be an unconstitutional extraterritorial application

of state law to regulate interstate commerce.  Congress, not state legislatures, governs interstate commerce, including the discovery, production, and transportation of oil in federal waters.  *See* U.S. Const. art. I, § 8, cl. 3.  "[T]he Commerce Clause…precludes the application of a state statute to commerce that takes place wholly outside of the state's borders, whether or not the commerce has effects within the State."  *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989). Plaintiffs seek to apply the state oil spill statutes in a way that would regulate interstate commerce taking place outside of the state's borders based solely on an effect felt within its borders.  This would have the practical effect of regulating commerce outside of Florida, Louisiana, or Texas, because it would permit the regulation of and imposition of liability for pollution taking place wholly outside each state's waters.  This "practical effect" violates the commerce clause and is unconstitutional.  *Id.* at 336; *See also* B1 Mot. Part III.E.

> **E.    The Claims of Local Government Entities, Including Parish District Attorneys, Under the Louisiana Wildlife and Fisheries Statute Are Preempted by the Louisiana Oil Spill Prevention and Response Act and Federal Law.**

Plaintiffs also allege that defendants are liable for killing fish and wildlife in violation of La. Rev. Stat. 56:40.1 *et seq.*  (Compl. ¶¶ 735-737.)  However, under Louisiana law, the exclusive remedy for oil spills is the Louisiana Oil Spill Act.  *See* La. Rev. Stat. § 30:2491(A). The preemptive effect is comprehensive, barring all state law claims with one exception:  under § 30:2491(B) of the Oil Spill Act, wildlife claims may be brought by the Louisiana Department of Wildlife and Fisheries ("Department") itself.  La. Rev. Stat. § 30:2491(B) ("[N]othing herein shall be construed to preclude the Department of Wildlife and Fisheries from bringing a civil suit to recover penalties for the value of each fish, wild bird, wild quadruped, and other wildlife and aquatic life unlawfully killed, caught, taken, possessed, or injured pursuant to" the Wildlife Statute).  Thus, regardless of the district attorneys' authority to bring civil actions under other

circumstances, if the alleged harm is from an oil spill, as in this case, the Louisiana Oil Spill Act vests the Department with sole responsibility for bringing civil actions under the wildlife statute. *Id*.  Any claims purportedly brought by local government entities, including parish district attorneys' claims, are plainly outside this narrow exception for Department wildlife claims in § 30:2491(B), and are therefore expressly preempted by § 30:2491(A) of the Louisiana Oil Spill Act.

The decision by the Louisiana legislature, expressed in its Oil Spill Act, to assign enforcement responsibility to a single state-level entity is consistent with a principal purpose of that Act:  to protect the state's interests in its abundant fish and wildlife and the economic opportunities they provide.  *E.g.*, *id.* § 30:2452 (finding that Louisiana is at greater risk from potential oil spills than any other state in part because Louisiana "has twenty-six percent of the nation's commercial fisheries, has the nation's highest marine recreational fishery catches, leads the nation in fur production and the world in alligator production, and has more overwintering waterfowl than any other state").  Limiting civil enforcement to the Department of Wildlife and Fisheries is also consistent with the Department's important role in oil spill responses under both Louisiana and federal law.  The Department is specifically designated as one of the State Natural Resource Trustees, who are central under OPA and Louisiana Oil Spill Act, 25:3 La. Reg. 500 § 109, and is an important participant in the natural resource damage assessment process.  La. Rev. Stat. § 30:2460 – 2480; *see also id.* § 30:2453 (noting that intent of the Louisiana Oil Spill Act is "to support and complement [OPA] and other federal law … including provisions relating to the responsibilities of state agencies designated as natural resources trustees").[9]  In contrast, parish district attorneys have no such role or responsibility.

---

[9]   Under the Louisiana Oil Spill Act, the Department is also a member of the Oil Spill Interagency Council, La. Rev. Stat. § 30:2458, and is involved with grants to universities related to oil spills and wildlife.  *Id.* § 30:2495.

Furthermore, under the state wildlife statute, if a district attorney rather than the Department initiates a civil action for wildlife violations, forty percent of any recovery—measured by the value of the affected fish and wildlife—is diverted to that district attorney's office.  *Id.* § 56:40.9(B).  The legislature was free to conclude that, in the case of an oil spill, the state's interests are better served by entrusting civil enforcement of the wildlife statute to the Department (with recoveries deposited in Department's Conservation Fund) rather than by numerous overlapping actions by parish district attorneys having competing claims to forty percent of the recoveries.

In fact, diverting any portion of the recoveries to the district attorneys is inconsistent with (and unlawful under) OPA, which establishes a comprehensive procedure for assessing damages and restoring natural resources injured by an oil spill.  *See* 33 U.S.C. § 2706.  Specifically, any natural resource damages recovered "shall be retained by the [state natural resource] trustee in a revolving trust account, without further appropriation, for use only to reimburse or pay costs incurred by the trustee … with respect to the damaged natural resources."  33 U.S.C. § 2706(f).  According to the Louisiana legislature, for oil spill incidents, "conflicting applicable federal law shall take precedence."  La. Rev. Stat. § 30:2491(A); *see also* § 30:2453 (the Louisiana Oil Spill Act is intended "to support and complement [OPA] and other federal law, specifically those provisions relating to the national contingency plan for cleanup of oil spills and discharges, including provisions relating to the responsibilities of state agencies designated as natural resources trustees.").  Permitting the district attorneys to retain forty percent of the monetary recoveries for damage to Louisiana's natural resources conflicts with OPA's express requirement that such damages be used only for natural resource restoration and similar efforts.

Finally, to the extent any Louisiana parish district attorneys purport to act on behalf of the Department, any attempt to do so must fail.  The Department is not and cannot be a plaintiff in the Local Government Entity Master Complaint, because the Complaint excludes state agencies from its definition of potential plaintiffs.  *See* Compl. ¶ 28 ("Claimants herein include…governmental bodies of any kind which are not state agencies").[10]

## IV.   Plaintiffs' Punitive Damages Count Must Be Dismissed.

Count IV for punitive damages must be dismissed because punitive damages are not recoverable under OPA.[11]  "Congress's very specific treatment of oil pollution in the OPA, which does not provide for punitive damages, supplanted general admiralty and maritime law." *South Port Marine*, 234 F.3d at 65-66.

*First*, OPA's comprehensive list of remedies does not include punitive damages, 33 U.S.C. § 2702 (defining elements of damages liability), and the statute's silence as to punitive damages means such damages are not recoverable.  *See Dean v. Am. Sec. Ins. Co.*, 559 F.2d 1036, 1039 (5th Cir. 1977) ("The provisions for liquidated damages for willful violation of the [Age Discrimination in Employment] Act and its silence as to punitive damages convinces us that the omission of any reference thereto was intentional.… *[I]t is obvious that, if Congress believed punitive damages necessary* to eliminate discrimination in employment based on age, *it knew exactly how to provide for them*.") (emphasis added).  OPA expressly addresses "gross negligence and willful misconduct" by a responsible party by lifting the caps on liability

---

[10]  For the reasons stated in Parts III.D.2 above, as well as in Part III.B of BP's Memorandum in Support of its Motion to Dismiss Complaints Filed by Certain Governmental Entities (Doc. 1786-1), the wildlife claims are also preempted by federal law and should be dismissed for that reason.

[11]  To the extent plaintiffs are attempting to assert a freestanding claim for punitive damages, such a claim is patently meritless.  There can be no independent claim for punitive damages.  *Byrne v. Nezhat*, 261 F.3d 1075, 1093 n.34 (11th Cir., 2001) ("We note that a prayer for punitive damages is not an independent cause of action."); *Allen v. R & H Oil and Gas Co.*, 63 F.3d 1326, 1333 (5th Cir. 1995) ("In other words, a claim for punitive damages is not by itself an independent tort.").

contained in 33 U.S.C. § 2704(c)(1)(A), not by providing for private recovery of punitive damages.[12]   Congress clearly chose not to provide a punitive damages remedy to private claimants under OPA.

**Second**, given OPA's comprehensive remedial regime, the notion that Congress's silence on punitive damages was designed to invite courts to supplement OPA's carefully delineated categories of damages is entirely implausible.  OPA defines a highly detailed set of remedial provisions clearly intended to be exclusive.  *See*, *e.g.*, *Blaze v. Payne*, 819 F.2d 128, 129 (5th Cir. 1987) ("To determine Congressional intent, '[w]e look first, of course, to the statutory language, particularly to the provisions made therein for enforcement and relief.") (quoting *National Sea Clammers*, 453 U.S. at 13).

**Finally**, courts addressing the issue have consistently concluded that punitive damages cannot be awarded under OPA.  The First Circuit held in *South Port Marine* that Congress intended for OPA to be a comprehensive damages scheme for oil spills, and because OPA does not provide for punitive damages, such damages could not be awarded under general maritime law claims for oil pollution.  234 F.3d at 65-66.  As the court explained that "Section 2702 sets forth a list of damages recoverable under the OPA, briefly describing each type.  As we have noted already, this scheme is comprehensive…. We take this to be a strong indication that Congress intended the OPA to be the ***sole federal law*** applicable in this area of maritime pollution.  234 F.3d at 65 (emphasis added); *see also Clausen v. M/V NEW CARISSA*, 171 F. Supp. 2d 1127, 1133 (D. Ore. 2001) (holding that OPA has precluded an award of punitive

---

[12]   In addition, Congress's specification in the Clean Water Act as part of the 1990 enactment of OPA that the ceiling on civil penalties increases if gross negligence or willful misconduct are proven further shows that Congress knows how to provide for enhanced monetary liability when it wants to.  33 U.S.C. § 1321(b)(7)(A), (D).

damages under any general maritime or admiralty law theory for any claim for which OPA could provide relief).

In sum, plaintiffs should not be able to read into OPA a remedy that Congress explicitly omitted from the statute's remedial scheme.

## <u>CONCLUSION</u>

For the foregoing reasons, the Local Government Entity Master Complaint fails to state any valid claim and should be dismissed in its entirety.

Respectfully submitted,

/s/ Don K. Haycraft
Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

and

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Andrew B. Bloomer, P.C.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

*Attorneys for BP*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 29th day of April, 2011.

/s/ Don K. Haycraft
Don K. Haycraft