## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  OIL SPILL by the OIL RIG | § | **MDL No. 2179** |
| "DEEPWATER HORIZON" in the | § | |
| GULF OF MEXICO on | § | |
| APRIL 20, 2010 | § | **SECTION: J** |
| | § | |
| This pleading applies to: | § | |
| | § | **Judge Carl J. Barbier** |
| | § | **Magistrate Judge Sally Shushan** |
| **All cases in Pleading Bundle** | § | |
| **Section III.B(1) (the "B1 Bundle")** | § | |
| | § | |
| This pleading applies to: | § | |
| | § | |
| *No. 2:10-CV-2771* | § | |

### REPLY IN FURTHER SUPPORT OF DEFENDANT M-I L.L.C.'s MOTION TO DISMISS THE FIRST AMENDED MASTER COMPLAINT, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT FOR PRIVATE ECONOMIC LOSSES ["B1 BUNDLE"]

MORGAN, LEWIS & BOCKIUS LLP

**OF COUNSEL:**
MORGAN, LEWIS & BOCKIUS LLP

By:    /s/ Hugh E. Tanner
        Hugh E. Tanner

Derek E. Leon
dleon@morganlewis.com
Texas Bar No. 24002463
5300 Wachovia Financial Center
200 South Biscayne Boulevard
Miami, Florida  33131
Telephone:  (305) 415-3000
Facsimile:  (305) 415-3001

        htanner@morganlewis.com
        Texas Bar No. 19637400
        1000 Louisiana, Suite 4000
        Houston, Texas  77002
        Telephone:  (713) 890-5000
        Facsimile:  (713) 890-5001

Denise Scofield
dscofield@morganlewis.com
Texas Bar No. 00784934
1000 Louisiana, Suite 4000
Houston, Texas  77002
Telephone:  (713) 890-5000
Facsimile:  (713) 890-5001

**ATTORNEYS FOR DEFENDANT
M-I L.L.C.**

**ATTORNEYS FOR DEFENDANT
M-I L.L.C.**

# TABLE OF CONTENTS

**Page**

Introduction And Summary Of Argument ...................................................................... 1

Argument ....................................................................................................................... 1

I.      Plaintiffs Fail To Respond To Grounds Articulated By The Motion To Dismiss ........................................................................................................ 1

II.     The Supreme Court Has Not Weakened The *Twombly/Iqbal* Pleading Standard ...................................................................................................... 2

III.    All Of Plaintiffs' Claims Under Federal Law Fail Under Rules 12(b)(1) And 12(b)(6) .............................................................................................. 3

      A.    Every Court To Have Considered The Issue Has Determined That OPA Preempts General Maritime Law Claims For Oil Spill-Related Damages Because That Is What Congress Clearly Intended ........ 3

            1.    The Legislative History Shows Congress's Intent To Replace Maritime Law Claims With A Statutory Scheme ................................................................................. 5

            2.    The Vast Scope Of The Legislation Demonstrates That OPA Creates An Exclusive Remedy ................................... 7

            3.    There Is No Gap Left For Judge-Made Law To Fill .................... 7

            4.    In Enacting OPA, Congress Intended To Preempt Long-Established And Familiar Principles Of The Common Law ......... 8

      B.    M-I Has Not Been, And Cannot Be, Designated A Responsible Party Under OPA ...................................................................... 11

      C.    This Court Lacks Jurisdiction To Decide The Claims Of Any Plaintiffs Who Have Not Satisfied OPA's Presentment Requirement. .......................................................................... 15

      D.    Even If General Maritime Law Claims Had Not Been Preempted By OPA, Plaintiffs Cannot Recover Without Showing Physical Damage ................................................................................ 17

            1.    A Special Concurrence From Nearly 30 Years Ago In A Later-Vacated Case Did Not Overrule The Doctrine Of *Robins Dry Dock* ...................................................... 17

            2.    CERCLA Did Not Overrule *Robins Dry Dock* ......................... 17

IV.    Plaintiffs' State Law Claims Fail Under Federal Rule of Civil Procedure 12(b)(6). .............................................................................................. 18

      A.    OCSLA Prohibits The Application Of State Law In This Case ............. 18

      B.    Even If OCSLA Allowed State Law To Apply To The Deepwater Horizon, Only The Law Of Louisiana Would Be Applied .................... 19

**TABLE OF CONTENTS**
(continued)

**Page**

        C.      Even If Louisiana Law Applied, Plaintiffs Fail To State A Claim For Trespass ............................................................................... 19

V.      None Of Plaintiffs' Claims Allow For Recovery Of Punitive Damages ............ 20

        A.      Punitive Damages Are Unavailable Under State Law ............................ 20

        B.      Punitive Damages Are Unavailable Under The Applicable Federal Law ....................................................................................... 20

Conclusion ...................................................................................................... 21

# TABLE OF AUTHORITIES

**Page**

## CASES

*Altria Group, Inc. v. Good*,
    555 U.S. 70, 129 S. Ct. 538 (2008) .................................................................................9

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009) .........................................................................................2, 3

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................2, 3

*Bennett v. La. Pac. Corp.*,
    693 So. 2d 1319 (La. Ct. App. 1997) ...............................................................20

*Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.*,
    51 F.3d 235 (11th Cir. 1995) .......................................................................15, 16

*Bourquard v. L.O. Ausauma Enters., Inc.*,
    52 So. 3d 248 (La. Ct. App. 2010) ....................................................................19

*Clausen v. M/V New Carissa*,
    171 F. Supp. 2d 1127 (D. Or. 2001) ............................................................9, 15

*Exxon Shipping Co. v. Baker*,
    554 U.S. 471 (2008) ...................................................................................9, 10, 20

*Gabarick v. Lauren Mar. (Am.), Inc.*,
    No. 08-4007, 2009 WL 102549, at *1 (E.D. La. Jan. 12, 2009) .....................16

*Gabarick v. Laurin Mar. (Am.) Inc.*,
    623 F. Supp. 2d 741 (E.D. La. 2009) ...............................................5, 7, 8, 9, 15

*Gabarick v. Laurin Martime (Am.), Inc.*,
    No. 10-30148, 2010 WL 5421015, at *1 (5th Cir. Dec. 30, 2010) ..................14

*Green Atlas Shipping v. United States*,
    306 F. Supp. 2d 974 (D. Or. 2003) .............................................................12, 13

*Harris v. Oil Reclaiming Co.*,
    94 F. Supp. 2d 1210 (D. Kan. 2000) ................................................................12

*Hercules Carriers, Inc. v. Florida*,
    720 F.2d 1201 (11th Cir. 1983) .........................................................................17

**TABLE OF AUTHORITIES**
(continued)

Page

*Hopkins v. Women's Div., Gen. Bd. of Global Ministries,*
    284 F. Supp. 2d 15 (D.D.C. 2003),
    *aff'd*, 98 F. App'x 8, 2004 WL 1178772, at *1 (D.C. Cir. May 27, 2004) ..................... 1, 2

*Kohen v. Pac. Inv. Mgmt. Co.,*
    571 F.3d 672 (7th Cir. 2009) ........................................................................... 16

*Matrixx Initiatives, Inc. v. Siracusano,*
    131 S. Ct. 1309 (2011) ..................................................................................... 2, 3

*Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atl. Corp.,*
    924 F. Supp. 1436 (E.D. Va. 1996),
    *aff'd*, 122 F.3d 1062 (4th Cir. 1997) (table) ........................................ 7, 8, 9, 15

*Rice v. Harken Exploration Co.,*
    89 F. Supp. 2d 820 (N.D. Tex. 1999) ............................................................... 7

*Robins Dry Dock & Repair Co. v. Flint,*
    275 U.S. 303 (1927) ................................................................................... 17, 18

*Robinson v. TCI/US W. Commc'ns Inc.,*
    117 F.3d 900 (5th Cir. 1997) .......................................................................... 16

*S. Port Marine, LLC v. Gulf Oil Ltd. P'ship,*
    234 F.3d 58 (1st Cir. 2000) .................................................... 4, 6, 7, 8, 15, 21

*Tanguis v. M/V Westchester,*
    153 F. Supp. 2d 859 (E.D. La. 2001) .................................. 6, 7, 8, 9, 15

*Teamsters Local 617 Pension & Welfare Funds v. Apollo Group, Inc.,*
    No. CIV 06-02674-PHX-RCB, 2011 WL 1253250, at *1
    (D. Ariz. Mar. 31, 2011) ............................................................................... 3

*Terre Aux Boeufs Land Co. v. J.R. Gray Barge Co.,*
    803 So. 2d 86 (La. Ct. App. 2001) ................................................................. 20

*Tosco Corp. v. Koch Indus., Inc.,*
    216 F.3d 886 (10th Cir. 2000) ...................................................................... 18

*Turner v. Murphy Oil USA, Inc.,*
    No. 05-4206, 2007 WL 4208986, at *1 (E.D. La. Nov. 21, 2007) ................... 16

*United States v. Bestfoods,*
    524 U.S. 51 (1998) ....................................................................... 11, 12, 13

iv

**TABLE OF AUTHORITIES**
(continued)

Page

*United States v. M/V Big Sam*,
  681 F.2d 432 (5th Cir. 1982) ..............................................................5

*United States v. Oswego Barge Corp.*,
  664 F.2d 327 (2d Cir. 1981)................................................................5

*United States v. Viking Res., Inc.*,
  607 F. Supp. 2d 808 (S.D. Tex. 2009) ....................................11, 12

*Walch v. Adjutant Gen.'s Dep't of Tex.*,
  533 F.3d 289 (5th Cir. 2008) ............................................................16

*Williams v. Potomac Elec. Power Co.*,
  115 F. Supp. 2d 561 (D. Md. 2000) ................................................15

**STATUTES**

33 C.F.R. § 138.20................................................................................13

15 U.S.C. § 78j....................................................................................2

15 U.S.C. § 78u....................................................................................3

33 U.S.C. § 2701................................................................................11

33 U.S.C. § 2702................................................................7, 10, 14

33 U.S.C. § 2703................................................................................14

33 U.S.C. § 2713................................................................................11

33 U.S.C. § 2716................................................................................13

33 U.S.C. § 2718................................................................................10

33 U.S.C. § 2751........................................................................7, 8, 15

42 U.S.C. § 9601................................................................................18

42 U.S.C. § 9607................................................................................18

43 U.S.C. § 1333................................................................................18

LA. CIV. CODE. art. 3440........................................................19, 20

## TABLE OF AUTHORITIES
(continued)

Page

## MISCELLANEOUS

H.R. Rep. No. 101-653 (Aug. 1, 1990)......................................................................................5, 6

Craig H. Allen, *Federalism in the Era of International Standards: Federal & State Regulation of Merchant Vessels in the United States (Part II)*, 29 J. MAR. L. & COM. 565 (1998).......................................................................................5

Sturla Olsen, *Comment, Recovery for the Lost Use of Water Resources: M/V Testbank on the Rocks?*, 67 TUL. L. REV. 271 (1992).................................................................17, 18

## INTRODUCTION AND SUMMARY OF ARGUMENT

The legal framework Congress created for addressing the damages from an oil spill provides those injured with remedies greater than those available in almost any other area of law. Individuals and corporations harmed by an oil spill may quickly obtain compensation for their damages under strict liability from the designated "Responsible Party."  This allows those injured to recover without having to endure the burdens and hassle of litigation and without having to prove any negligence.

Plaintiffs here, however, seek to pursue remedies under general maritime and state law, but these theories do not permit recovery for damages relating to a discharge of oil from the Outer Continental Shelf.  Under the Oil Pollution Act and the Outer Continental Shelf Lands Act, plaintiffs must seek compensation from the Responsible Party.  It is then for the Responsible Party to bring contribution actions against other potentially liable parties, if it so desires.  Because federal law has expressly created a statutory remedy for the damages Plaintiffs allege, their claims for damages outside of the statutes must be dismissed.

## ARGUMENT

**I.    Plaintiffs Fail To Respond To Grounds Articulated By The Motion To Dismiss.**

Even though Plaintiffs used over 100 pages to respond to the motions to dismiss the B1 Complaint, they chose not to dispute three grounds on which M-I argued that dismissal should be granted.  Therefore, based on the reasons stated in M-I's moving brief and the lack of objection from Plaintiffs, this Court should dismiss this Complaint as to those grounds.  *See, e.g., Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) (citations omitted) ("[W]hen a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff

failed to address as conceded."), *aff'd*, 98 F. App'x 8, 2004 WL 1178772 (D.C. Cir. May 27, 2004).

The arguments Plaintiffs failed to dispute are:

- Plaintiffs failed to state a claim for the tort of nuisance under the only potentially applicable state law (Louisiana).  M-I's Memorandum of Law in Support of Its Motion to Dismiss (hereinafter "M-I MTD") 18.

- Punitive damages are not available under the only possible state law that might apply (Louisiana).  *Id.* at 20.

- Even if the laws of the other Gulf Coast states applied (which they do not), punitive damages are unavailable for nuisance under the law of any state.  *Id.* at 20 n.9.

Therefore, this Court should rule, as a matter of law, that:  (1) no claim can be brought for nuisance under Louisiana law; (2) no punitive damages are available under any Louisiana state law claim; and (3) punitive damages for nuisance are not available under any law.  To the extent that the Master Complaint or any complaint in the B1 Bundle seeks such relief, it must be dismissed.

## II.    The Supreme Court Has Not Weakened The *Twombly/Iqbal* Pleading Standard.

Plaintiffs argue that the case of *Matrixx Initiatives, Inc. v. Siracusano*, 131 S.Ct. 1309 (2011), weakens the standards of *Twombly* and *Iqbal*.[1]  Opp. 19.  The case does no such thing. *Matrixx* addressed whether the allegation that a company failed to disclose non-statistically significant adverse incidents for one of its medical products was actionable under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b).  131 S. Ct. at 1313.  The specific legal

---

[1] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).

holding of the *Matrixx* Court was that adverse event reports that do not reveal a statistically significant increased risk of adverse events from product use can be material information for the purpose of securities laws. *Id.* at 1318.

The second legal issue addressed by the *Matrixx* Court was whether the plaintiffs had adequately pleaded that defendants acted with the required level of scienter. *Id.* at 1324. Under the Private Securities Litigation Reform Act of 1995, "a plaintiff must 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Id.* (quoting 15 U.S.C. § 78u-4(b)(2) (Feb. 2010 Supp.)). The *Matrixx* Court's discussion of pleading requirements applies to the congressionally mandated heightened pleading requirement that exists for securities litigation. *Id.* at 1324-25. It does not affect the general pleading standards applicable to every other type of pleading that *Twombly* and *Iqbal* govern, and other courts to have considered *Matrixx*'s impact have come to the same conclusion that *Matrixx* does not alter the normal pleading standards. *See Teamsters Local 617 Pension & Welfare Funds v. Apollo Group, Inc.*, No. CIV 06-02674-PHX-RCB, 2011 WL 1253250, at *37 n.30 (D. Ariz. Mar. 31, 2011).

## III.   All Of Plaintiffs' Claims Under Federal Law Fail Under Rules 12(b)(1) And 12(b)(6).

### A.   Every Court To Have Considered The Issue Has Determined That OPA Preempts General Maritime Law Claims For Oil Spill-Related Damages Because That Is What Congress Clearly Intended.

In their Response, Plaintiffs state that "some courts have (with all due respect, erroneously) determined that general maritime law claims might be preempted to the extent that the damages sought fall within the specifically enumerated provisions of the OPA." Opp. 31. This is an understatement: *every court* to have addressed the issue has held that OPA provides the exclusive federal remedy for oil spill-related damages and *not a single court since the*

*enactment of OPA 20 years ago has adopted the position Plaintiffs urge here.  See* M-I MTD 6-7 (collecting cases).[2]

Regarding these cases, Plaintiffs go on to state that "even those decisions recognize that OPA has no effect on claims for damages or other relief which are not covered under the OPA." Opp. 31.  M-I does not dispute this statement:  M-I has only moved to dismiss the general maritime law claims for oil spill-related damages pursuant to the preemptive nature of OPA regarding those claims.  M-I is not making a claim that OPA preempts all general maritime law claims arising from the Deepwater Horizon incident.[3]  Nevertheless, Plaintiffs argue that taking M-I's "argument to its logical extension," all personal injury claims brought under the Jones Act would have to be dismissed if not presented to BP under OPA.  Opp. 33.  This argument is a straw man that is wholly unrelated to M-I's argument.  M-I has not and does not claim that OPA preempts Jones Act or personal injury claims brought pursuant to general maritime law—claims for which OPA does not provide a remedy.  As court after court has uniformly held, OPA displaces general maritime law claims that seek recovery for *damages* that are recoverable under OPA.  This is why, for example, OPA does not displace general claims for wrongful death or personal injury.

Every court to address the issue since OPA was enacted almost twenty years ago has come to the conclusion that OPA preempts general maritime claims for oil spill-related damages. Four factors are considered when determining whether a statute preempts a provision of general maritime law:  "(1) legislative history, (2) the scope of the legislation, (3) whether judge-made

---

[2]   Although the parties have used the term "preemption," this issue "does not present any of the federalism concerns normally associated with that word, because we are concerned only with the OPA's effect on preexisting *federal* law."  *S. Port Marine, LLC v. Gulf Oil Ltd. P'ship*, 234 F.3d 58, 65 (1st Cir. 2000) (also noting that there is no presumption against preemption on this issue) (emphasis in original).

[3]   In their Response, Plaintiffs also argue that OPA does not preempt state law claims for oil spill-related damages.  M-I does not argue that OPA preempts state law causes of action.

law would fill a gap left by Congress's silence or rewrite rules that Congress enacted, and (4) the likelihood of Congress's intent to preempt 'long established and familiar principles of the common law or the general maritime law.'"  *Gabarick v. Laurin Mar. (Am.) Inc.*, 623 F. Supp. 2d 741, 747 (E.D. La. 2009) (quoting *United States v. Oswego Barge Corp.*, 664 F.2d 327, 344 (2d Cir. 1981)); *see also United States v. M/V Big Sam*, 681 F.2d 432, 442 (5th Cir. 1982).  A detailed analysis of these four factors demonstrates why all courts have come to the uniform conclusion that OPA preempts general maritime law claims for oil spill-related damages.

### 1.    The Legislative History Shows Congress's Intent To Replace General Maritime Law Claims With A Statutory Scheme.

Plaintiffs allege that the legislative history supports their view that OPA does not preempt general maritime claims for oil spill-related damages.  Opp. 36-41.  For example, Plaintiffs quote a House Conference report stating "'[t]his section is intended to clarify that the House bill does not supersede [Article III, clause 2, which provides the basis for admiralty and maritime law], nor does it change the jurisdiction of the District Courts.'"  *Id.* at 38-39 (alteration in original) (quoting H.R. Rep. No. 101-653, at 159 (Aug. 1, 1990) (Conf. Rep.)).  But as this court in *Gabarick* pointed out, this language simply "speak[s] to jurisdiction."  623 F. Supp. 2d at 747.  Nothing in this language addresses the issue at hand—whether OPA preempts general maritime law claims.

It is true, as Plaintiffs claim, that "Congress vigorously debated whether the OPA would preempt state law."  Opp. 36; *see also* Craig H. Allen, *Federalism in the Era of International Standards: Federal & State Regulation of Merchant Vessels in the United States (Part II)*, 29 J. Mar. L. & Com. 565, 607 (1998) ("Preemption was, in fact, the principal point of disagreement between the Senate and the House of Representatives.  It is clear, however, that the preemption debate focused primarily on preemption of state liability laws." (footnote omitted)).  But M-I

does not argue that OPA preempts *state* law, only that it preempts *federal* common law. Plaintiffs' attempt to use authority regarding OPA preemption of state causes of action is non-responsive to the argument that OPA preempts federal common law clauses of action.

Congress clearly indicated its intent to preempt claims for oil spill-related damages when the Senate and the House met to confer regarding the differences in their two bills.  The House Conference Report on § 2751 states that the Senate bill did not have a savings provision regarding maritime and admiralty law and that "the House bill clarifies that the House bill does not affect admiralty and maritime law or the jurisdiction of the District Courts of the United States with respect to civil actions under admiralty and maritime jurisdiction, saving to suitors in all cases *other remedies to which they are otherwise entitled*."  H.R. Rep. 101-653, at 159 (Aug. 1, 1990) (Conf. Rep.) (emphasis added).  Congress clearly intended to limit the savings provision to claims for "other remedies to which [claimants] are entitled."  This language evinces Congress's intent to preempt maritime and admiralty law when the claim is not seeking "other remedies," that is, claims for something other than oil spill-related damages provided for by OPA.

The Conference Report also goes on to state: "Therefore, there is no change in current law *unless there is a specific provision to the contrary*."  H.R. Rep. No. 101-653, at 159 (Aug. 1, 1990) (Conf. Rep.) (emphasis added).  As the First Circuit has noted:

> The OPA sets forth a comprehensive list of recoverable damages, including: removal costs; damage to natural resources and real or personal property; loss of subsistence use of natural resources; loss of government revenues, lost profits and earning capacity; and costs of increased or additional public services occasioned by the unlawful act.

*S. Port Marine*, 234 F.3d at 64.  Various other courts have relied on this language to support their determination that general maritime claims for oil spill-related damages specifically enumerated in OPA are preempted.  *See id.*; *see also Tanguis v. M/V Westchester*, 153 F. Supp. 2d 859, 867

(E.D. La. 2001) ("This new scheme includes new remedies, which, in many respects, preempt traditional maritime remedies.");[4] *Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atl. Corp.*, 924 F. Supp. 1436, 1447 (E.D. Va. 1996) ("Because OPA provides a comprehensive scheme for the recovery of oil spill cleanup costs and the compensation of those injured by oil spills, the general maritime law does not apply to recovery of these types of damages."), *aff'd*, 122 F.3d 1062 (4th Cir. 1997) (table). There can be no doubt that Congress intended to preempt general maritime claims for oil spill-related damages.

> ### 2.    The Vast Scope Of The Legislation Demonstrates That OPA Creates An Exclusive Remedy.

The scope of OPA is in a sense both narrow and broad. By its own terms, OPA is limited to claims for oil spill-related damages. *See* 33 U.S.C. §§ 2702, 2751. However, within the narrow field of oil spills, its scope is broad and sweeping. As this Court in *Gabarick* noted: "OPA defines its scope explicitly through its statutory text." 623 F. Supp. 2d at 748. "It defines what damages are covered and the process for pursuing a claim, and allows suit in federal court should that process be unsuccessful." *Id.* OPA "represents Congress's attempt to provide a comprehensive framework in the area of marine oil pollution." *Rice v. Harken Exploration Co.*, 89 F. Supp. 2d 820, 822 (N.D. Tex. 1999). Given its broad and comprehensive scope, it is clear that Congress intended for OPA to preempt general maritime law claims for oil spill-related damages.

> ### 3.    There Is No Gap Left For Judge-Made Law To Fill.

OPA provide a comprehensive scheme with no gaps to be filled regarding oil spill-related claims. *See S. Port Marine*, 234 F.3d at 64 ("In 1990, in the wake of the *Exxon Valdez* and other

---

[4]  Plaintiffs argue that this Court should disregard the *Tanguis* opinion because it "dealt simply with the question of removal." Opp. 42. While it is true that the question at issue in *Tanguis* was whether OPA claims are removable, the *Tanguis* court considered the preemptive nature of OPA as part of its analysis. *See* 153 F. Supp. 2d at 867.

oil spill disasters, Congress established a comprehensive federal scheme for oil pollution liability in the OPA."); *Tanguis*, 153 F. Supp. 2d at 867 ("OPA creates a new, comprehensive federal scheme for the recovery of oil spill cleanup costs and the compensation of those injured by such spills"). As acknowledged by courts around the country, OPA leaves no room for judge-made law. *See S. Port Marine*, 234 F.3d at 65; *see also Tanguis*, 153 F. Supp. 2d at 867 ("This new scheme includes new remedies, which, in many respects, *preempt traditional maritime remedies*." (emphasis added)).

Outside that comprehensive scheme, OPA does not preempt general maritime law. As the *Gabarick* court stated:

> When looking at OPA preemption only with respect to the damages it states as covered, there is no gap. Preemption by OPA of the claims covered by OPA still allows the claimant to pursue claims not covered by OPA under general maritime law. OPA expressly leaves claims not addressed by the Act to general maritime and admiralty law.

623 F. Supp. 2d at 748. The fact that the comprehensive nature of OPA has left no gaps that need to be filled by judge-made law strongly demonstrates that OPA preempts general maritime law claims for oil spill-related damages. *Nat'l Shipping Co.*, 924 F. Supp. at 1447 ("Because OPA provides a comprehensive scheme for the recovery of oil spill cleanup costs and the compensation of those injured by oil spills, the general maritime law does not apply to recovery of these types of damages."). Where OPA has spoken, there are no gaps for common law to fill.

### 4. In Enacting OPA, Congress Intended To Preempt Long-Established And Familiar Principles Of The Common Law.

Contrary to Plaintiffs' argument, the plain language of OPA makes it clear that it preempts general maritime law to the extent that OPA applies. Section 2751 states that "[e]xcept as otherwise provided in this Act, this Act does not affect . . . admiralty and maritime law." 33 U.S.C. § 2751. Plaintiffs read this language as indicating that no maritime law claims are

preempted by OPA, but in doing so they overlook the first words of the section: *except as otherwise provided in this Act*.  This language makes it clear that Congress intended to preempt maritime law to the extent that OPA provides for recovery.  *See Gabarick*, 623 F. Supp. 2d at 748; *Tanguis*, 153 F. Supp. 2d at 867.  "[S]ection 2751 only preserves admiralty claims which are not addressed in OPA."  *Nat'l Shipping*, 924 F. Supp. at 1447.  And, the fact that Congress did not expressly use the word "preemption" to express its intent is not controlling.  *Gabarick*, 623 F. Supp. 2d at 748.  As the Supreme Court has stated, "Congress may indicate pre-emptive intent through a statute's express language or through its structure and purpose."  *Altria Group, Inc. v. Good*, 555 U.S. 70, 129 S. Ct. 538, 543 (2008).

Plaintiffs rely on *Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008), for the proposition that "[i]f OPA was intended to occupy the field, then personal injury claims would also be preempted because OPA does not expressly provide damages for personal injury or punitive damages."  Opp. 41 n.20.  This again misunderstands M-I's argument.  M-I does not argue that OPA "occup[ies] the field."  Instead, M-I contends that where OPA provides for recovery, other claims seeking those same damages are preempted, and where OPA does not provide a remedy, other claims seeking those remedies are not preempted.  As one court has noted, OPA does not provide damages for personal injury, therefore those claims are not preempted.  *See Clausen v. M/V New Carissa*, 171 F. Supp. 2d 1127, 1134 (D. Or. 2001) ("If, for example, an oil spill resulted in personal injury or loss of life, then punitive damages would presumably be available for any general maritime claim not otherwise preempted by federal statute (other than the OPA).").[5]

---

[5]  Also, in making this argument Plaintiffs conflate claims with damages.  OPA does not preempt personal injury claims.  It does "preempt" punitive damages where those damages arise from claims for oil spill-related damages, but only in the sense that it preempts those claims completely and then does not itself provide a remedy of punitive damages.

Plaintiffs appear to reply on dicta in *Exxon Shipping*.  In that case, Exxon argued that the Clean Water Act ("CWA") preempted "any tort action predicated on an oil spill."  554 U.S. at 488.  In rejecting this argument, the Court stated that:

> If Exxon were correct here, there would be preemption of provisions for compensatory damages for thwarting economic activity or, for that matter, compensatory damages for physical, personal injury from oil spills or other water pollution. But we find it too hard to conclude that a statute expressly geared to protecting "water," "shorelines," and "natural resources" was intended to eliminate *sub silentio* oil companies' common law duties to refrain from injuring the bodies and livelihoods of private individuals.

*Id.* at 488-89.  But this analysis under the CWA is inapposite to any analysis under OPA.  As the Supreme Court noted, the CWA is a statute designed to protect "natural resources," not a statute designed to protect "livelihoods of private individuals."  OPA on the other hand is a statute designed to protect both.  *See* 33 U.S.C. § 2702.[6]

That OPA preempts general maritime claims for recovery of damages from the discharge of oil in federal waters fits with the intent of the statutory scheme.  It requires claimants to seek payment for their oil spill-related damages in a quick and efficient manner under OPA—and only under OPA—from the Responsible Party when those claims arise from a discharge of oil from the Outer Continental Shelf.  And, it does nothing to prevent a state from enforcing stricter requirements for discharges of oil within its territorial boundaries.  *See* 33 U.S.C. § 2718.  Further, OPA gives the Responsible Party the right to seek recovery from potentially liable third parties through contribution and subrogation rights.  OPA thus creates a method of expedient and efficient recovery by allowing claimants to avoid the time delay and costs associated with

---

[6]   The Court then went on address Exxon's argument that the CWA only preempts punitive and not compensatory damages available at common law.  *Exxon Shipping*, 554 U.S. at 489.  The Court described this position as "untenable" and rejected it because "nothing in the statutory text points to fragmenting the recovery scheme this way."  *Id.*  This analysis is also not applicable to this matter because, as explained above, M-I is not asserting any theory that would require the Court to "fragment the recovery scheme" by allowing common law compensatory damages but not common law punitive damages.

litigation and by shifting the burden to the Responsible Party to seek contribution through litigation.

Aside from having no support in the text, structure, or history of the statute, Plaintiffs' reading of OPA would undermine its purpose. As Plaintiffs envision it, OPA would continue to require claimants to seek recovery of oil spilled-related damages through litigation with all of its substantial barriers to recovery. This reading is contrary to the primary purpose of Congress in passing OPA. This Court should dismiss Plaintiffs' claims under general maritime law because they are preempted and displaced by OPA.

**B.    M-I Has Not Been, And Cannot Be, Designated A Responsible Party Under OPA.**

Plaintiffs can recover against a defendant under OPA only if the United States has designated a defendant a Responsible Party as that term is defined in the statute. *See* 33 U.S.C. § 2713. As Plaintiffs acknowledge in their Response, only "BP, Transocean, Anadarko Petroleum Corp., Anadarko E&P, LP, and MOEX Offshore 2007 LLC have been designated as responsible parties by the U.S. Coast Guard." Opp. 61. It is undisputed that M-I has not been designated a Responsible Party.

Moreover, M-I cannot possibly be designated a Responsible Party under OPA because it does not meet the plain language definition of Responsible Party. Under OPA, when addressing liability arising from a vessel, a Responsible Party is "any person owning, operating, or demise chartering the vessel." 33 U.S.C. § 2701(32)(A). By Plaintiffs' own pleading, it is undisputed that M-I was not the owner and had not chartered the *Deepwater Horizon*. Plaintiffs seem to imply—without actually providing any applicable support for the implication—that M-I was an operator of the *Deepwater Horizon*. *See* Opp. 61-62. In furtherance of this implication, Plaintiffs appear to rely on *United States v. Bestfoods*, 524 U.S. 51, 66-67 (1998), *United States*

*v. Viking Resources, Inc.*, 607 F. Supp. 2d 808, 822 (S.D. Tex. 2009), and *Harris v. Oil Reclaiming Co.*, 94 F. Supp. 2d 1210, 1213 (D. Kan. 2000).   These cases do not support Plaintiffs' argument, for several reasons.

First, all three cases dealt with efforts to pierce the corporate veil.  *See Bestfoods*, 524 U.S. at 65 (attempting to hold a parent corporation liable for a facility owned by a subsidiary); *Viking Resources*, 607 F. Supp. 2d at 822 (attempting to hold the sole shareholder, officer, and director of a corporation liable for a facility owned by the corporation); *Harris*, 94 F. Supp. 2d at 1213 (attempting to hold a former vice-president liable for a facility owned by the corporation). The doctrine of "piercing the corporate veil" does not apply to M-I's involvement with the *Deepwater Horizon*.

Moreover, *Bestfoods* is a case under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA").  *Bestfoods*, 524 U.S. at 65.  And although *Viking Resources* and *Harris* are both OPA cases, they are OPA cases involving onshore facilities, not vessels.  *Viking Resources*, 607 F. Supp. 2d at 812-13 (a tank battery onshore in Galveston County, Texas); *Harris*, 94 F. Supp. 2d at 1212 (an oil reclaiming plant in Stafford County, Kansas).  The *Viking Resources* court specifically noted the limited nature of its holding: "the court concludes that the *Bestfoods* 'operator' analysis applies in OPA cases *involving onshore facilities*."  607 F. Supp. 2d at 822 n.47 (emphasis added).  The court then distinguished *Green Atlas Shipping v. United States*, 306 F. Supp. 2d 974, 980-81 (D. Or. 2003), which held the CERCLA definition of "operator" should not apply to OPA claims at issue because that case dealt with oil discharge from a vessel.  *Viking Resources*, 607 F. Supp. 2d at 822 n.47.  It is undisputed that the *Deepwater Horizon* was a vessel, and the only authority Plaintiffs have for

this argument recognizes that the result is different for on-shore facilities than for off-shore facilities.

*Green Atlas* involved an attempt by the federal government to have a captain of a vessel declared a Responsible Party and addressed the captain's motion for summary judgment on ground that he was not an "operator" as the term is used in OPA.  306 F. Supp. 2d at 977-78. First, the court looked at § 2716, which requires a Responsible Party to file a certificate of financial responsibility.  *Id*. at 979.  It also noted that with regards to financial responsibility, OPA regulations define an "operator" as one "who conducts the operation, or who is responsible for the operation of a vessel."  *Id.* (quoting 33 C.F.R. § 138.20(b)).  While recognizing that this definition of "operator" was limited to § 2716, the court noted that § 2716 does not even apply unless a person is a Responsible Party.  *Id.*  The court stated that the financial responsibility requirements "indicate[d] that Congress had a narrow view of which entities would be responsible parties in the context of a vessel."  *Id.*

While acknowledging that it was only addressing the matter on the narrow issue of whether a captain could be liable under OPA as an operator, the court stated that in applying the *Bestfoods* CERCLA definition of operator to OPA:

> I recognize that both statutes have nearly identical broad definitions of operator and similar strict liability schemes, but I believe there are significant differences between the two statutes that lead me to conclude that the simple application of the CERCLA operator jurisprudence is not appropriate in this context.

*Id.* at 980-81.  It went on to state that it was "unwilling to find that in the context of vessels Congress meant to deviate far from the maritime understanding of operators as *those entities that are ultimately responsible for the vessel's overall operation*, including the direction of the captain and crew."  *Id.* at 981 (emphasis added).

Plaintiffs also argue that M-I can be liable under OPA because "any third party whose act or omission caused the discharge of oil 'shall be treated as the responsible party.'"  Opp.  61.  Plaintiffs omit the key word "solely" from their selective quoting of the statute.  Under the statute, a third party shall be treated as a Responsible Party *only if* the Responsible Party can show that the spill was *solely* caused by the act or omission of the third party.  33 U.S.C. § 2702(d)(1)(A).  Plaintiffs make no allegations in this matter that the spill was caused solely by an act or omission of M-I.

Plaintiffs' argument also relies on the recent Fifth Circuit case *Gabarick v. Laurin Martime (Am.), Inc.*, No. 10-30148, 2010 WL 5421015, at *1 (5th Cir. Dec. 30, 2010), where the court noted that if a Responsible Party proves a § 2703(a) defense, liability under OPA shifts to the third party at fault for the spill.  Opp. 61-62.  But *Gabarick* actually supports dismissal of Plaintiffs' OPA claims.  That court noted that to prove its § 2703(a)(3) defense,[7] the Responsible Party "must prove it had no fault in the spill and that it was not in a contractual relationship with any party that had any fault in the spill."  *Gabarick*, 2010 WL 5421015, at *3.  There is no circumstance where BP could be found to not have a contractual relationship with a party that had fault in the spill and for M-I to be found to have fault in the spill.  Therefore, as a matter of law, BP is not able to make a § 2703(a) defense in a manner to shift liability to M-I as a Responsible Party.  There is no possible way in which M-I could be a statutory Responsible Party.

---

[7]  Under § 2703(a), there are two other defenses available to Responsible Parties, but neither is applicable in this case: that the spill was caused solely by an act of God or by an act of war.  33 U.S.C. § 2703(a).

**C.      This Court Lacks Jurisdiction To Decide The Claims Of Any Plaintiffs Who Have Not Satisfied OPA's Presentment Requirement.**

Unless Plaintiffs first satisfy OPA's presentment requirement, this Court lacks subject matter jurisdiction over Plaintiffs' claims.  Plaintiffs' assertion that non-OPA claims need not be presented is a non-starter because OPA is the exclusive remedy for oil spill-related damages. And Plaintiffs' argument that this issue cannot be decided on a motion to dismiss is contrary to the express language of the statute and numerous decisions granting motions to dismiss under similar circumstances.

As explained in M-I's MTD and *supra*, OPA claims are Plaintiffs' exclusive remedy for oil spill-related damages, even against parties such as M-I that have not been designated Responsible Parties.  *See* M-I MTD 6-12.  Plaintiffs' non-OPA general maritime law claims for oil spill-related damages must be dismissed because courts have unanimously held that OPA provides the exclusive federal remedy for economic damage caused by an oil spill.  *See S. Port Marine*, 234 F.3d at 64-66; *Gabarick*, 623 F. Supp. 2d at 746; *Clausen*, 171 F. Supp. 2d at 1134; *Tanguis*, 153 F. Supp. 2d at 867-68; *Nat'l Shipping*, 924 F. Supp. at 1447.  And, Plaintiffs' state law claims are foreclosed by OCSLA.[8]  *See* M-I's MTD 9-12 and *infra*.  Plaintiffs are not "entitled" to their non-OPA claims and their reliance upon OPA's savings clause to argue that these claims survive (and do not need to be presented) is unavailing.  *See* Opp. 56-57 (citing 33 U.S.C. § 2751(e)(2)).

While admitting they have not complied with the statute, Plaintiffs claim that this issue should be decided at a later time.  However, their own authorities do not support their position because those trial courts granted motions to dismiss under similar circumstances.  In *Boca*

---

[8]  Plaintiffs' reliance on *Williams v. Potomac Electric Power Company*, 115 F. Supp. 2d 561, 562 (D. Md. 2000), as authority in support of claims against M-I is misplaced: *Williams* involved a spill in a Maryland creek, not on the Outer Continental Shelf (which OCSLA governs).

*Ciega*, the Eleventh Circuit affirmed the district court's order granting defendants' motion to dismiss where (1) plaintiffs' claims included state common-law claims; (2) plaintiffs filed claims against the responsible parties and other third-parties involved in the spill; and (3) plaintiffs belatedly alleged in a reply that they had met the presentation requirements. *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.*, 51 F.3d 235, 236-37 (11th Cir. 1995); *see* Opp. 60 (citing *Boca Ciega*, 51 F.3d at 237; *Gabarick v. Lauren Mar. (Am.), Inc.*, No. 08-4007, 2009 WL 102549, at *2 n.21 (E.D. La. Jan. 12, 2009) (granting motion to dismiss even when claimant AEP "alleges that it submitted a claim"); *Turner v. Murphy Oil USA, Inc.,* No. 05-4206, 2007 WL 4208986, at *2 (E.D. La. Nov. 21, 2007) (granting motion to dismiss and refusing to waive requirement)).[9]

It is well-settled law that this Court may dismiss a claim for lack of subject matter jurisdiction based on "'the complaint alone.'" *Walch v. Adjutant Gen.'s Dep't of Tex.*, 533 F.3d 289, 293 (5th Cir. 2008) (quoting *Robinson v. TCI/US W. Commc'ns Inc.*, 117 F.3d 900, 904 (5th Cir. 1997)). Moreover, ruling on this jurisdictional issue now would eliminate the "cumbersome, duplicative and wasteful" litigation Plaintiffs claim they seek to avoid. Opp. 58. M-I thus requests that this Court dismiss all claims to the extent Plaintiffs did not meet OPA presentation requirements before filing suit.

---

[9]  The decision in *Kohen* is not relevant to this question. *See Kohen v. Pac. Inv. Mgmt. Co.*, 571 F.3d 672, 677 (7th Cir. 2009) (holding plaintiffs' inability to show injury does not justify dismissal for lack of subject matter jurisdiction in a decision not addressing any presentment requirements).

**D.     Even If General Maritime Law Claims Had Not Been Preempted By OPA, Plaintiffs Cannot Recover Without Showing Physical Damage.**

As presented in M-I's MTD, the rule of *Robins Dry Dock* has been the law of the land for over 80 years.  *See* M-I's MTD 15-16 (citing *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303 (1927)).  Plaintiffs have offered nothing that changes this well-settled rule of law.[10]

**1.     A Special Concurrence From Nearly 30 Years Ago In A Later-Vacated Case Did Not Overrule The Doctrine Of *Robins Dry Dock*.**

Plaintiffs' argument that the Supreme Court's doctrine of *Robins Dry Dock* does not apply here is misplaced.  Opp. 76-77.  Their only support is a later-vacated special concurrence from nearly 30 years ago.  This opinion of a single judge from another circuit does not overturn binding precedent from the Fifth Circuit and the Supreme Court as detailed in M-I's MTD.  M-I MTD 14-15.  And even the special concurrence Plaintiffs cite does not interpret the law as being different.  Rather, that concurring judge recognized that *Robins Dry Dock* has been extended to situations such as these, but thought that extension should be reversed.  *See Hercules Carriers, Inc. v. Florida*, 720 F.2d 1201, 1203 (11th Cir. 1983) (Clark, J., specially concurring).  *Robins Dry Dock* therefore remains binding law.

**2.     CERCLA Did Not Overrule *Robins Dry Dock*.**

As Plaintiffs admit, they do not bring a claim under CERCLA.  Opp. 75.  Yet, Plaintiffs weakly suggest that "it could be argued" that an amendment to CERCLA implicitly overruled *Robins Dry Dock*.  *Id.*  Plaintiffs' only authority for this bold assertion is a nineteen year-old law student comment that has never been applied by any court.  *See* Sturla Olsen, *Comment, Recovery for the Lost Use of Water Resources:*  M/V Testbank *on the Rocks?*, 67 TUL. L. REV. 271, 300 (1992).  And even the author of that comment did not go so far as to suggest that

---

[10] Plaintiffs contend that *Robins Dry Dock* is inapplicable to their OPA claims.  Opp. 74.  This is correct. But this simply shows that when Congress created the comprehensive recovery scheme of OPA, it chose to create a scheme that allowed for recovery of damages greater than those recoverable at common law.

CERCLA overruled *Robins Dry Dock* completely but only in the context of "spills of substances covered by CERCLA's provisions." *Id.*

CERCLA does not apply to the Deepwater Horizon incident and claims arising from the incident because CERCLA specifically excludes coverage for "petroleum, including crude oil or any fraction thereof." 42 U.S.C. § 9601(14); *see also id.* § 9601(33). This "petroleum exclusion" was intended to address oil spills. *Tosco Corp. v. Koch Indus., Inc.*, 216 F.3d 886, 893 (10th Cir. 2000). Moreover, the CERCLA provision Plaintiffs cite, by its own terms, applies only to "[t]he owner or operator of a vessel," 42 U.S.C. § 9607(h), and as discussed *infra*, M-I is neither. Given CERCLA's inapplicability to this litigation against M-I and the lack of supporting authority, this Court should reject Plaintiffs' suggestion that CERCLA implicitly overruled a well-developed line of Supreme Court precedent directly applicable to the present situation.

## IV.     Plaintiffs' State Law Claims Fail Under Federal Rule of Civil Procedure 12(b)(6).

### A.     OCSLA Prohibits The Application Of State Law In This Case.

OCSLA applies to the Deepwater Horizon oil spill, and this Court has already recognized such in its previous rulings. *See* M-I MTD 9-12. OCSLA makes federal law exclusive on the Outer Continental Shelf. *See id.* and authorities cited therein. The only time OCSLA allows for state law to operate is when the requirements of 43 U.S.C. § 1333(a)(2) are satisfied. But, as M-I explained in its memorandum, the requirements of § 1333 are not satisfied because the *Deepwater Horizon* was not "subsoil and seabed of the outer Continental Shelf, [nor] artificial islands and fixed structures erected thereon." 43 U.S.C. § 1333(a)(2)(A). Plaintiffs agree with this analysis that the requirements of § 1333(a)(2)(A) are not satisfied. *See* Opp. 23-30. This agreement concedes state law does not apply to the oil spill-related claims.

Plaintiffs make no argument as to why OCSLA does not preempt all state causes of action.  OCSLA makes federal law exclusive, with a few exceptions.  Plaintiffs admit that the exception allowing for state law to apply is not met.  Therefore, all state law claims should be dismissed.

**B.      Even If OCSLA Allowed State Law To Apply To The *Deepwater Horizon*, Only The Law Of Louisiana Would Be Applied.**

As M-I presented, even if OCSLA requirements were satisfied, only the law of Louisiana would apply because it is the adjacent state for OCSLA purposes.  M-I MTD 17.  Plaintiffs respond that determination of the adjacent state is a question of fact.  *See* Opp. 30 n.7.  But this issue can be resolved now *according to the Plaintiffs' own Complaint*.  Taking the allegations of the Complaint as true, as must be done for a 12(b)(6) motion to dismiss, the Plaintiffs' own Complaint clearly establishes that Louisiana law would be the adjacent state for OCSLA purposes.  *See* M-I MTD 17.

**C.      Even If Louisiana Law Applied, Plaintiffs Fail To State A Claim For Trespass.**

The Property Plaintiffs do not dispute M-I's argument that to prove trespass, Property Plaintiffs must show "an unlawful physical invasion of the property or possession of another." *Bourquard v. L.O. Ausauma Enters., Inc.*, 52 So. 3d 248, 251 (La. Ct. App. 2010) (internal quotation omitted).  Any plaintiffs not suffering an actual physical invasion of their property have not pleaded a cognizable trespass claim against M-I.[11]

Plaintiffs also contend that, in addition to the property owner, lessees are entitled to bring a claim for trespass in Louisiana, citing only article 3440 of the Louisiana Civil Code.  Article 3440 provides that a lessee can bring a possessory action for a disturbance to possession, but the

---

[11]  Plaintiffs also do not dispute the authorities cited by M-I that the same rule applies in all Gulf Coast states.  *See* M-I MTD 19 n.7.

Property Plaintiffs did not plead such a claim.  Rather, they pleaded only trespass (*see* Compl. ¶¶ 700-11), and under Louisiana law, a claim for trespass and a possessory action are distinct and separate causes of action.  *See Bennett v. La. Pac. Corp.*, 693 So. 2d 1319, 1321 (La. Ct. App. 1997); *see also Terre Aux Boeufs Land Co. v. J.R. Gray Barge Co.*, 803 So. 2d 86, 94-97 (La. Ct. App. 2001).  Thus, the Property Plaintiffs have no authority to support their argument that lessees in Louisiana are entitled to bring a claim for trespass.[12]

## V.      None Of Plaintiffs' Claims Allow For Recovery Of Punitive Damages.

Even if Plaintiffs had stated a cause of action, because none of the causes of action they allege allow for the recovery of punitive damages, the Complaint should be dismissed to the extent that it seeks punitive damages from M-I.

### A.      Punitive Damages Are Unavailable Under State Law.

As discussed *infra*, the only state law that might apply under OCSLA is Louisiana law. And as M-I explained, and Plaintiffs do not dispute, Louisiana law does not allow for the recovery of punitive damages for the state law claims alleged.  M-I MTD 18.

### B.      Punitive Damages Are Unavailable Under The Applicable Federal Law.

As explained *infra*, OPA is the only federal claim Plaintiffs may bring for oil spill-related damages.  Plaintiffs cite *Exxon Shipping*, 554 U.S. at 488-89, to respond to M-I's OPA punitive damages argument.  Opp. 32.  Plaintiffs' reliance on *Exxon Shipping* is misplaced.  The Supreme Court in *Exxon Shipping* held that the CWA did not preempt punitive damages under common law claims.   Specifically Exxon asserted that "the CWA's penalties for water pollution preempt[ed] the common law punitive-damages remedies at issue here."  *Id*. at 488 (internal citation omitted).  However, M-I has made no such argument here.  M-I's argument is a simple

---

[12]   Plaintiffs cite authorities that the Restatement (Second) of Torts is applied to determine the law of maritime trespass.  *See* Opp. 78.  This is inapposite because the only trespass claim Plaintiffs bring is under state law, not general maritime law.

two-step analysis: (1) OPA preempts general maritime claims for oil spill-related damages and (2) punitive damages are not available under OPA.  Nothing Plaintiffs have said is contrary to M-I's position.

OPA simply does not authorize recovery of punitive damages.  *S. Port Marine*, 234 F.3d at 64 ("Absent from that list of recoverable damages [under OPA] is any mention of punitive damages.").  OPA preempts general maritime law claims for oil spill-related damages and punitive damages are not available under OPA.  Therefore, all of Plaintiffs' claims for punitive damages under both OPA and general maritime law should be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, as well as for the reasons set forth in M-I's Memorandum of Law in Support of its Motion to Dismiss, M-I respectfully requests that this Court dismiss with prejudice all claims asserted against it in the B1 First Amended Master Complaint.

April 29, 2011

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

**OF COUNSEL:**
MORGAN, LEWIS & BOCKIUS LLP

By: _/s/ Hugh E. Tanner_____

Derek E. Leon
dleon@morganlewis.com
Texas Bar No. 24002463
5300 Wachovia Financial Center
200 South Biscayne Boulevard
Miami, Florida  33131
Telephone:    (305) 415-3000
Facsimile:    (305) 415-3001

Denise Scofield
dscofield@morganlewis.com
Texas Bar No. 00784934
1000 Louisiana, Suite 4000
Houston, Texas  77002
Telephone:    (713) 890-5000
Facsimile:    (713) 890-5001

**ATTORNEYS FOR DEFENDANT
M-I L.L.C.**

Hugh E. Tanner
htanner@morganlewis.com
Texas Bar No. 19637400
1000 Louisiana, Suite 4000
Houston, Texas  77002
Telephone:    (713) 890-5000
Facsimile:    (713) 890-5001

**ATTORNEYS FOR DEFENDANT
M-I L.L.C.**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that the above and foregoing *Reply in Further Support of M-I's Motion To Dismiss the First Amended Master Complaint, Cross-Claim, and Third-Party Complaint for Private Economic Losses ["B1 Bundle"]* has been served on all Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the Court's CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL No. 2179, on this 29th day of April, 2011.

           /s/ *Hugh E. Tanner* _____
           Hugh E. Tanner