# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig | * | MDL No. 2179 |
| "Deepwater Horizon" in the Gulf | * | |
| of Mexico on April 20, 2010 | * | SECTION "J" |
| | * | JUDGE BARBIER |
| This Document Relates to: | * | |
| *All Cases in Pleading Bundle B1 and B3*; | * | MAGISTRATE NO. 1 |
| Case No. 10-2771 | * | |
| | * | MAGISTRATE SHUSHAN |
| *  *  *  *  *  *  *  *  *  *  *  * | | |

**REPLY TO PLAINTIFFS' STEERING COMMITTEE'S MEMORANDUM
OF LAW IN OPPOSITION TO THE MOEX AND ANADARKO DEFENDANTS'
MOTIONS TO DISMISS PLAINTIFFS' NEGLIGENCE CLAIMS AND MOTIONS
TO DISMISS THE OPA CLAIMS AGAINST ANADARKO E&P**

**MAY IT PLEASE THE COURT:**

## TABLE OF CONTENTS

Page

I.    INTRODUCTION .................................................................................................... 1

II.   ARGUMENT ........................................................................................................... 5

    A.   Plaintiffs Fail to State a Claim Against the Non-Operating Defendants
        Under the General Maritime Law of Negligence .................................................. 5

        1.   *Ainsworth* Mandates Dismissal of Plaintiffs' Claims Against the
            Non-Operating Defendants ........................................................................ 7

        2.   The Non-Operating Defendants Had No Duty to Protect Plaintiffs'
            Economic Interests .................................................................................. 10

        3.   The Non-Operating Defendants' Status As Leaseholders Does Not
            Give Rise to the Duty Plaintiffs Claim .................................................. 13

        4.   The Non-Operating Defendants Had No Duty to Warn BP of
            Impending Danger .................................................................................. 14

    B.   There Is No Factual Dispute That AE&P Was No Longer a Leaseholder
        on April 20, 2010, and the OPA Claims Against It Must Be Dismissed ............. 17

III.  CONCLUSION ..................................................................................................... 22

i

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*A&D P'ship v. Equity Group, Inc.*,
    Civ. A. No. 98-3139, 1988 WL 141942 (E.D. La. Dec. 23, 1988)...........................................21

*Ackerson v. Bean Dredging LLC*,
    589 F.3d 196 (5th Cir. 2009) ....................................................................................................21

*Ainsworth v. Shell Offshore, Inc.*,
    829 F.2d 548 (5th Cir. 1987), *cert. denied*, 485 U.S. 1034 (1988)...................................5, 7, 8

*Ballew v. Texaco*,
    Civ. A. No. 94-3946, 1995 WL 638595 (E.D. La. Oct. 27, 1995) ......................................9, 10

*Bourg v. Texaco Oil Co., Inc.*,
    578 F.2d 1117 (5th Cir. 1978) ..................................................................................................13

*Boutwell v. Chevron U.S.A., Inc.*,
    864 F.2d 406 (5th Cir. 1989) ......................................................................................................3

*Catalyst Old River Hydroelectric LP v. Ingram Barge Co.*,
    Case No. 10-30466 (5th Cir. Apr. 15, 2011) ...........................................................................12

*Coulter v. Texaco, Inc.*,
    117 F.3d 909 (5th Cir. 1997) ......................................................................................................2

*Croley v. Matson Navigation Co.*,
    434 F.2d 73 (5th Cir. 1970) ......................................................................................................15

*Delta Commodities, Inc. v. M/T JO OAK, ETC.*,
    No. 88-1349, 1989 WL 149253 (E.D. La. Dec. 6, 1989) ....................................................4, 15

*Duplantis v. Shell Offshore, Inc.*,
    948 F.2d 187 (5th Cir. 1991) ......................................................................................................3

*Dupre v. Chevron U.S.A., Inc.*,
    33 F.3d 7 (5th Cir. 1994) ............................................................................................................8

*Dupre v. Chevron U.S.A., Inc.*,
    913 F. Supp. 473 (E.D. La. 1996) (Vance, J.) ...............................................................8, 9, 10

*Dupre v. Chevron U.S.A., Inc.*,
    930 F. Supp. 248 (E.D. La. 1996) (Vance, J.), *aff'd per curiam*, 109 F.3d 230 (5th
    Cir. 1997) .................................................................................................................................12

*Ellison v. Conoco, Inc.*,
   950 F.2d 1196 (5th Cir. 1992) ....................................................................................3

*Florida Fuels, Inc. v. Citgo Petroleum Corp.*,
   6 F.3d 330 (5th Cir. 1993), *cert. denied*, *Authement v. Citgo Petroleum Corp.*, 511
   U.S. 1019 (1994)......................................................................................................15

*Fruge ex rel. Fruge v. Parker Drilling Co.*,
   337 F.3d 558 (5th Cir. 2003) ..................................................................................13

*Graham v. Amoco Oil Co.*,
   21 F.3d 643 (5th Cir. 1994) ......................................................................................2

*Gulf Oil Corp. v. Bivins*,
   276 F.2d 753 (5th Cir. 1960) ..................................................................................15

*Hawkins v. Evans Cooperage Co., Inc.*,
   766 F.2d 904 (5th Cir. 1985) ....................................................................................3

*Hyde v. Chevron U.S.A., Inc.*,
   697 F.2d 614 (5th Cir. 1983) ................................................................................3, 11

*In re Cooper/T Smith*,
   929 F.2d 1073 (5th Cir. 1991) ..................................................................................4

*In re Katrina Canal Breaches Litig.*,
   495 F.3d 191 (5th Cir. 2007) ..................................................................................19

*Krim v. Banctexas Group, Inc.*,
   989 F.2d 1435 (5th Cir. 1993) ................................................................................21

*Landry v. Huthnance Drilling Co.*,
   889 F.2d 1469 (5th Cir. 1989) ..................................................................................3

*LeJeune v. Shell Oil Co.*,
   950 F.2d 267 (5th Cir. 1992) ....................................................................................3

*Louisiana ex rel. Guste v. M/V TESTBANK*,
   752 F.2d 1019 (5th Cir. 1985) (en banc), *cert. denied*, 477 U.S. 903 (1986)..........11

*Louisiana ex rel. Guste v. United States*,
   656 F. Supp. 1310 (W.D. La. 1986)........................................................................18

*McCormack v. Noble Drilling Corp.*,
   608 F.2d 169 (5th Cir. 1979) .................................................................................6, 9

*Olsen v. Shell Oil Co.*,
   561 F.2d 1178 (5th Cir. 1977), *cert. denied*, 444 U.S. 979 (1979)..........................13

iii

*Robertson v. Arco Oil & Gas Co.*,
948 F.2d 132 (5th Cir. 1991) ..................................................................................3

*Robins Dry Dock & Repair Co. v. Flint*,
275 U.S. 303 (1927)..............................................................................................11

*Romero v. Mobil Exploration and Producing North America, Inc.*,
939 F.2d 307 (5th Cir. 1991) ................................................................................13

*Russell v. Choicepoint Servs., Inc.*,
302 F. Supp. 2d 654 (E.D. La. 2004) ....................................................................21

*Skidmore Energy, Inc. v. KPMG*,
No. Civ. A. 3:03CV2138-B, 2004 WL 3019097 (N.D. Tex. Dec. 28, 2004) ........21

*Southwestern Bell Telephone, LP v. City of Houston*,
529 F.3d 257 (5th Cir. 2008) ...........................................................................18, 21

*Thomas v. Burlington Res. Oil & Gas Co.*,
No. Civ. A. 99-3904, 2000 WL 1528082 (E.D. La. Oct. 13, 2000) (Barbier, J.) ....................5

*TS & C Invs., L.L.C. v. Beusa Energy, Inc.*,
637 F. Supp. 2d 370 (W.D. La. 2009)....................................................................12

*Wallace v. Oceaneering Int'l*,
727 F.2d 427 (5th Cir. 1984) .........................................................................5, 6, 9

*Zepherin v. Conoco Oil Co., Inc.*,
884 F.2d 212 (5th Cir. 1989) ..................................................................................3

## STATUTES

33 U.S.C.
§ 2701(16)..............................................................................................................18

43 U.S.C.
§ 1332(1)................................................................................................................18
§ 1334(a)................................................................................................................18

iv

## I.    INTRODUCTION

Settled and controlling law in this Circuit establishes that a leaseholder or other principal who does not retain a right to exercise operational control over an independent contractor owes no duty to third parties to monitor or intercede in the independent contractor's work and cannot be held liable for injuries resulting from the independent contractor's operations.   In their Motions to Dismiss the claims against them in the Amended B1 and B3 Master Complaints, MOEX Offshore 2007 LLC, MOEX USA, Anadarko Petroleum Corporation, and Anadarko E&P Company LP (collectively "the Non-Operating Defendants")[1] showed that Plaintiffs fail to state claims for maritime negligence, because the Non-Operating Defendants are not alleged to have had, and did not have, any right to exercise operational control over BP or any of the operations allegedly giving rise to Plaintiffs' injuries.[2]   The Non-Operating Defendants further established that, as a matter of law, the contractual right to access data from the rig or to conduct Health, Safety and Environment ("HSE") inspections does not give rise to any duty to intercede in an independent contractor's operations.

Plaintiffs' Opposition addressed specifically to the Non-Operating Defendants' Motions to Dismiss does nothing to undermine the Non-Operating Defendants' showing and provides no basis to deny the Motions.[3]   To the contrary, the Opposition contains key concessions and admissions that strongly support dismissal of the claims asserted against the Non-Operating

---

[1]      Simply for ease, this Motion refers to Anadarko E&P Company LP, Anadarko Petroleum Corporation, MOEX Offshore 2007 LLC, and MOEX USA Corporation together as the "Non-Operating Defendants."  All movants are independent and distinct corporate entities, and by using the shorthand, movants do not suggest or acknowledge otherwise.

[2]      Mem. in Support of Anadarko/MOEX Mot. to Dismiss First B1 Amend. Compl. [Rec. Doc. 1414-1] ("Anadarko/MOEX B1 MTD"); Mem. in Support of Anadarko/MOEX Mot. to Dismiss B3 Compl. [Rec. Doc. 1416-1] ("Anadarko/MOEX B3 MTD").

[3]      Plaintiffs' Memorandum of Law in Opposition to the MOEX and Anadarko Defendants' Motions to Dismiss Plaintiffs' Negligence Claims and Motions to Dismiss the OPA Claims Against Anadarko E&P [Rec. Doc. 1803] (hereafter "Opposition").

Defendants in both the Amended B1 and B3 Master Complaints.  In particular, Plaintiffs expressly disclaim any theory of vicarious liability, which includes any theory based upon joint venture, *respondeat superior*, partnership, or agency.  Further, Plaintiffs expressly <u>admit</u> that: (1) the Non-Operating Defendants did not conduct any of the operations allegedly giving rise to their injuries; (2) the Non-Operating Defendants are principals and BP is an independent contractor; (3) the Non-Operating Defendants retained no right of operational control over BP's conduct related to the Macondo well and its operations; and (4) the fact that the Non-Operating Defendants may have had access to information about BP's operations alone does not give rise to a duty to third parties, nor does it give rise to any liability for BP's actions.  *See* Opposition at 10.

Plaintiffs thus make clear that they are <u>only</u> asserting a claim that the Non-Operating Defendants owed a direct duty to the Plaintiffs to alert BP of the presence of hydrocarbons in the well so that BP could then hypothetically take actions to avert a catastrophe that was otherwise of BP's own making.  They assert that such a duty arises from the Non-Operating Defendants' status as leaseholders and based on their access certain well data.  Plaintiffs are mistaken, and their allegations and arguments plainly establish as a matter of law that no such duty existed.

One thing the Plaintiffs do get right, however, is that the legal question raised by the Non-Operating Defendants' Motions to Dismiss is straightforward.  *See* Opposition at 1–2.  The question is: whether leaseholders acting as principals who hire an independent contractor over which they retain no operational control owe a duty to third parties to intervene in the independent contractor's operations.  Indeed, that very question has been answered by the Fifth

Circuit and the courts of this district countless times: there is no duty to third parties as a matter of law absent operational control over the contractor.[4]

Plaintiffs' attempts to distinguish those authorities are unavailing.  By their terms, the cases plainly address both vicarious and direct theories of liability and uniformly hold that a principal owes no duty to third parties unless the principal has a right to exercise operational control over the independent contractor's work.  Nor can the cases be distinguished on the ground that they involve personal injuries to workers and others involved in the operations, rather than economic harms to diffuse third parties.  If anything, the argument in favor of a duty to protect a worker involved in the operations is much stronger, yet courts have consistently

---

[4]     *See, e.g.*, *Coulter v. Texaco, Inc.*, 117 F.3d 909, 912 (5th Cir. 1997) ("[A]bsent an express or implied order to the contractor to engage in an unsafe work practice leading to an injury, a principal . . . cannot be liable . . ."); *Graham v. Amoco Oil Co.*, 21 F.3d 643, 645 (5th Cir. 1994) ("[A] principal is not liable for the negligent acts of an independent contractor acting pursuant to the contract") (citation omitted); *Ellison v. Conoco, Inc.*, 950 F.2d 1196, 1207 (5th Cir. 1992) (principal "generally has no duty to ensure that an independent contractor performs its obligations in a safe manner") (citation omitted); *LeJeune v. Shell Oil Co.*, 950 F.2d 267, 270 (5th Cir. 1992) ("[A] principal is not liable for the torts of an independent contractor unless the principal exercises operational control over or expressly or impliedly authorizes the independent contractor's actions") (citation and quotation marks omitted); *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 193 (5th Cir. 1991) ("The fact that a principal takes an active interest in the safety of the employees of its independent contractor does not, in and of itself, constitute direct operational control" and is no basis for liability); *Robertson v. Arco Oil & Gas Co.*, 948 F.2d 132, 133 (5th Cir. 1991) ("Where a platform owner hires independent contractors to supply operations and carry out the actual drilling, and the owner neither possesses nor exercises actual control over the independent contractors, the owner has no duty to remedy hazards created by its independent contractors") (citations omitted); *Boutwell v. Chevron U.S.A., Inc.*, 864 F.2d 406, 409 n.13 (5th Cir. 1989) (principal "was under no duty to interject himself into the situation to correct the hazard" created by independent contractor); *Landry v. Huthnance Drilling Co.*, 889 F.2d 1469, 1471 (5th Cir. 1989) ("A principal is not liable for the torts of an independent contractor unless the principal exercises operational control over or expressly or impliedly authorizes the independent contractor's actions") (citations omitted); *Zepherin v. Conoco Oil Co., Inc.*, 884 F.2d 212, 213 (5th Cir. 1989) ("This court has consistently held on similar facts that a principal . . . who hires an independent contractor, over which it exercises no operational control, has no duty to remedy hazards created by its independent contractors") (citations omitted); *Hawkins v. Evans Cooperage Co., Inc.*, 766 F.2d 904, 908 (5th Cir. 1985) ("[A] principal who exercises no operational control has no duty to discover and remedy hazards created by acts of its independent contractors") (citation omitted); *Hyde v. Chevron U.S.A., Inc.*, 697 F.2d 614, 630 (5th Cir. 1983) ("A principal cannot be held answerable for failing to supervise an independent contractor . . . [this] rule applies to employees of the independent contractor as well as to other third parties") (citations omitted).

rejected even those claims.  It follows, *a fortiori*, that no duty exists to protect against economic harms to unknown third parties.

In any event, the duty alleged by Plaintiffs—to alert the rig to well information sent to the Non-Operating Defendants <u>from the rig</u>—makes little sense.  There is no doubt that BP and others on the rig had access to the same, and to far greater, information concerning the existence of hydrocarbons than did the Non-Operating Defendants, given that it was the rig that sent the information to the Non-Operating Defendants in the first place.  As a result, any hypothetical efforts by the Non-Operating Defendants to alert BP to the existence of hydrocarbons would have been entirely futile, because the Non-Operating Defendants knew that BP and others on the rig already had that information and more.

Moreover, the alleged failure to alert BP to the well information purportedly showing hydrocarbons entering the well could not, as a matter of law, have proximately caused the Plaintiffs' injuries.  *See Delta Commodities, Inc. v. M/T JO OAK, ETC.*, No. 88-1349, 1989 WL 149253, at *4–5 (E.D. La. Dec. 6, 1989) (holding that dock owner aware of hazardous condition did not proximately cause injury resulting from vessel collision by failing to warn vessel operator of hazard, because vessel operator had same information, and any warning would have been "futile").  Because BP already had all of the information relied upon by Plaintiffs, and made conscious decisions to move forward despite that information, no alert from the Non-Operating Defendants could have had any effect on BP's acts or omissions in the operation of the Macondo well.  Plaintiffs' entire theory of a duty on the part of the Non-Operating Defendants is therefore pure folly.

Absent a legal duty, Plaintiffs' causes of action for maritime negligence in both of their Amended Master Complaints for Pleading Bundles B1 and B3 fail.  *See In re Cooper/T Smith*,

929 F.2d 1073, 1077 (5th Cir. 1991) ("The plaintiff must demonstrate that there was a duty owed by the defendant to the plaintiff . . .").[5]

Lastly, Plaintiffs' arguments concerning Anadarko E&P Company's status as a former leaseholder fail to provide any basis to deny the Motion to Dismiss the Oil Pollution Act ("OPA") claim against Anadarko E&P.  The language of the statute is clear: former lessees cannot be responsible parties.  Plaintiffs do not contest that Anadarko E&P legally transferred its interest in the leased property effective April 1, 2010, prior to the explosion and sinking of the *Deepwater Horizon*.  Thus, as a matter of law, Plaintiffs' OPA claim against Anadarko E&P fails and should be dismissed.

## II.     ARGUMENT

### A.     Plaintiffs Fail to State a Claim Against the Non-Operating Defendants Under the General Maritime Law of Negligence.

It is the unambiguous rule of this Circuit that a leaseholder acting as a principal who entrusts an independent contractor with operational control of an offshore drilling operation owes no duty to third parties to "discover and remedy hazards created" by an independent contractor, *Wallace v. Oceaneering Int'l*, 727 F.2d 427, 437 (5th Cir. 1984), or to "intervene in and correct the work practices selected by an independent contractor." *Thomas v. Burlington Res. Oil & Gas Co.*, No. Civ. A. 99-3904, 2000 WL 1528082, at *2 (E.D. La. Oct. 13, 2000) (Barbier, J.) (citation omitted).  Even in those cases where a leaseholder acting as principal has <u>actual</u> knowledge of a hazard created by an independent contractor, the principal owes no duty to third parties that could be breached by failing to intervene in the independent contractor's operations.

---

[5]     The Non-Operating Defendants assume for purposes of argument—but do not in any way concede—that Plaintiffs' maritime negligence claim for economic losses is not supplanted by the Oil Pollution Act.  The Non-Operating Defendants address this issue separately in their Reply to Plaintiffs' Omnibus Opposition to Defendants' Motions to Dismiss for Pleading Bundles B1 and B3, filed contemporaneously herewith.

*See Ainsworth v. Shell Offshore, Inc*., 829 F.2d 548, 551 (5th Cir. 1987), *cert. denied*, 485 U.S. 1034 (1988).

Plaintiffs do not contest that the Non-Operating Defendants are principals, and that they contracted with BP as an independent contractor to perform drilling operations on the leased property.  Plaintiffs do not allege in the Amended B1 or B3 Master Complaints or argue in their Opposition that the Non-Operating Defendants retained operational control over BP's operations on the leased property.  Nor do Plaintiffs allege in the Amended B3 Master Complaint or argue in their Opposition that the Non-Operating Defendants had or exercised any right of operational control over BP's conduct of the post-explosion clean-up and containment operations. Moreover, Plaintiffs expressly disclaim any theory of liability by which the Non-Operating Defendants could be held vicariously liable for the actions of BP.  Opposition at 9.

Instead, Plaintiffs attempt to repackage their theory of liability against the Non-Operating Defendants as something other than the fatally flawed argument that the Non-Operating Defendants owed a duty to intervene in the operations of an independent contractor over which they exercised no operational control.  Thus, Plaintiffs transparently cloak their allegations against the Non-Operating Defendants as a "failure to alert BP to the presence of hydrocarbons in the well," or a failure to consider "expert well kill information" during BP's well capping operations, or a "fail[ure] to exercise their right to conduct HSE inspections" of BP's operations. Opposition at 6, 10–11.  Plaintiffs further allege that the Non-Operating Defendants "owed a duty to Plaintiffs to warn [BP] of the impending disaster in time to avert it, "and breached that duty by "failing to warn the drilling vessel crew of the imminent blowout so that they could take evasive action."  Amend. B1 Mast. Compl. ¶ 573.

Notwithstanding Plaintiffs' attempts at repackaging, their claim remains the same; namely, that the Non-Operating Defendants had access to information about an independent contractor's operations and failed to intervene in an independent contractor's work, or otherwise failed to "discover and remedy hazards created" by an independent contractor. *Wallace*, 727 F.2d at 437; *McCormack*, 608 F.2d at 175 (holding that principal owes no duty to ensure that the contractors perform their obligations in a reasonably safe manner). That claim fails as a matter of law and must be dismissed.

1. ***Ainsworth* Mandates Dismissal of Plaintiffs' Claims Against the Non-Operating Defendants.**

The rule of *Ainsworth* that a principal engaged in oil exploration and production without operational control owes no duty to third parties to intervene in an independent contractor's operations is dispositive of Plaintiffs' claims against the Non-Operating Defendants. Plaintiffs attempt to avoid this conclusion by arguing that their claims against the Non-Operating Defendants are for <u>direct liability</u> rather than <u>vicarious liability</u>, and that *Ainsworth* is "fundamentally a case about vicarious liability for an unsafe worksite, with no applicability in a case about a party's own negligence." Opposition at 10. Plaintiffs' attempt to limit the applicability of *Ainsworth* to vicarious liability cases is meritless, because in *Ainsworth* the Fifth Circuit rejected <u>both a vicarious liability claim and a direct liability claim</u> against an owner/principal.

In *Ainsworth*, the plaintiff first alleged that Shell, a platform owner, was vicariously liable for injuries resulting from hazardous conditions created by an independent drilling contractor. The Fifth Circuit held that Shell was not vicariously liable because Shell retained no operational control over the independent contractor. *Ainsworth*, 829 F.2d at 550–51. The Fifth Circuit next considered the plaintiff's allegation that "Shell's knowledge of the danger to which

7

the Hercules crew was exposed gives rise to a duty by Shell to intervene in Hercules' operation." *Id.* at 551.  The Fifth Circuit rejected this direct liability theory as well, holding that because Shell retained no operational control over its independent contractor, the "law will not support the imposition of liability upon Shell for <u>failure to intercede</u> in Hercules' decision" to engage in unsafe operations.  *Id.* (emphasis added).  Thus, even in cases where a principal has actual knowledge of safety risks, as Plaintiffs conclusorily allege to be the case here, if the principal does not retain operational control, the principal is neither directly nor vicariously liable for hazards created by the contractor.  Plaintiffs' efforts to misstate the clear holding of *Ainsworth* must fail.

Likewise, in *Dupre v. Chevron U.S.A., Inc.*, Judge Vance considered the precise argument made by Plaintiffs and rejected the distinction between vicarious and direct liability that Plaintiffs attempt to draw, holding that there was "no practical difference" between the two theories under the applicable Fifth Circuit precedents.[6]  913 F. Supp. 473, 483 (E.D. La. 1996), *aff'd per curiam*, 109 F.3d 230 (5th Cir. 1997).  There, in dispensing with the plaintiff's argument that Chevron, a leaseholder and owner of a drilling platform, owed a direct duty of care to the plaintiff because it had created a safety inspection program for the drilling rig, Judge Vance held:

---

[6]     Plaintiffs rely heavily on an earlier opinion of a divided panel of the Fifth Circuit in *Dupre* for the broad proposition that "[the] owner or operator of a facility has the duty of exercising reasonable care . . . ." Opposition at 9 (citing *Dupre v. Chevron USA, Inc.*, 20 F.3d 154, 157 (5th Cir. 1994)).  This language does not apply to the Non-Operating Defendants in any event because neither is alleged be the owner or operator of the *Deepwater Horizon*.  Worse still, Plaintiffs fail to inform the Court that the language on which they rely <u>was retracted by the panel on petition for rehearing</u>: "We do not reject but fully accept the general principle that a platform principal owes no general duty to . . . correct a hazard on the platform which was created by the contractor." *Dupre v. Chevron U.S.A., Inc.*, 33 F.3d 7, 7 (5th Cir. 1994); *see also Dupre v. Chevron U.S.A., Inc.*, 913 F. Supp. 473, 476 (E.D. La. 1996) (Vance, J.) (holding on remand that the court would not rely on the earlier opinion because the panel "retreated from its earlier holding that Chevron had an independent duty to Russell Dupre").

> In addressing plaintiff's claim that Chevron had an independent duty of due care, the Court cannot ignore the substantial body of case law dealing with related issues under vicarious liability law.  Indeed, in this case, <u>the Court sees no practical difference between plaintiff's claim that Chevron acquired a duty by virtue of involving itself with safety and those cases in which the Fifth Circuit analyzed whether the platform owner's knowledge of risks or role in safety operations created a duty so that it could be vicariously liable for the negligence of its independent contractor</u>.  In the latter cases, the Court examined whether the principal "retained or exercised operational control" of the safety procedures on the contractor's rig in order to determine if a duty was owed.  To create a duty based on plaintiff's claim that Chevron "examin[ed] its contractor's work place, procedures and equipment for safety concerns" would amount to an end-run around a large body of Fifth Circuit precedent finding no "operational control" despite some knowledge of risk or involvement with safety issues . . . Even though couched in the language of vicarious liability, these decisions would be difficult to reconcile with a finding of an independent duty on the part of Chevron on the facts presented here.

*Id.* (internal citations omitted) (emphasis added).  As in *Dupre*, Plaintiffs attempt an "end-run" around the *Ainsworth* rule by couching their allegations in the language of direct liability rather than vicarious liability.  *Dupre*, like *Ainsworth*, is indistinguishable from this case, and this Court should reach the same result.

Other courts in this district and the Fifth Circuit have also recognized that the rule of *Ainsworth* and related cases, such as *McCormack v. Noble Drilling Corp.*, 608 F.2d 169, 175 (5th Cir. 1979) (principal has no duty to ensure independent contractor "performed their obligations in a reasonably safe manner") and *Wallace v. Oceaneering International*, 727 F.2d 427, 437 (5th Cir. 1984) (principal has no duty to "discover and remedy hazards created" by independent contractor), apply equally to vicarious liability and direct liability theories.  For example, in *Ballew v. Texaco*, Civ. A. No. 94-3946, 1995 WL 638595, at *3 (E.D. La. Oct. 27, 1995), Judge Clement held that "[a]s to plaintiff's claim of <u>direct negligence</u> . . . a principal has no duty . . . to ensure that the contractors perform their obligations in a reasonably safe manner . . . [or to] discover and remedy hazards created by its independent contractors."  *Id.* (emphasis added) (citing *McCormack*, 608 F.2d at 175; *Wallace*, 727 F.2d at 437).  Similarly, in *Wells v.*

*Freeport-McMoran*, considering the plaintiff's argument that the defendant was directly liable for "negligently allowing a dangerous condition to exist on the defendant's property," the court held that the duty of "reasonable care . . . does not apply to dangerous conditions created by an independent contractor." 715 F. Supp. 155, 159–60 (W.D. La. 1988). Citing *Ainsworth*, the court further held that the "principal's ability to have intervened and prevent the harm, by suggesting alternative conduct or methods, is irrelevant" and rejected the plaintiff's theory of direct liability. *Id.* at 160 (emphasis added).[7]

As the above cases demonstrate, Plaintiffs' primary defense of their negligence claims against the Non-Operating Defendants is based entirely on a false premise. On the facts alleged, there is "no practical difference" between direct and vicarious theories of liability: for the Non-Operating Defendants to be liable under either theory, they must have retained operational control over the actions giving rise to Plaintiffs' alleged injuries. *Dupre*, 913 F. Supp. at 483. Plaintiffs admit that they did not. Opposition at 6–7. Plaintiffs' negligence claims must be dismissed.

### 2. The Non-Operating Defendants Had No Duty to Protect Plaintiffs' Economic Interests.

Plaintiffs also seem to suggest, without any support whatsoever, that *Ainsworth* and related cases are distinguishable because they concern personal injury claims of workers physically injured by negligent operation of offshore drilling rigs, rather than cases such as Plaintiffs' seeking recovery of purely economic losses resulting from negligent operation of

---

[7]     Plaintiffs do not contend, nor could they, that an ability to intervene or suggest alternative methods amounts to operational control sufficient to give rise to liability. "It is not enough that [the principal] has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations or deviations . . . There must be such a retention of right of supervision that the contractor is not entirely free to do the work in his own way." *Ballew v. Texaco, Inc.*, Civ. A. No. 94-3946, 1995 WL 638595, at *2 (E.D. La. Oct. 27, 1995) (citing *Landry v. Huthnance Drilling Co.*, 889 F.2d 1469, 1471 (5th Cir. 1989) (quoting RESTATEMENT (SECOND) OF TORTS § 414 cmt. c (1965))).

offshore drilling rigs.  *See* Opposition at 2.  Plaintiffs' apparent position is that the Non-Operating Defendants owe a greater duty to protect the <u>purely economic interests</u> of unknown and distant third parties such as Plaintiffs than they do to protect workers on the leasehold from physical harm.  For example, Plaintiffs argue that the rule stated in *Rogers v. Shell Oil Co.* that "'a principal has no duty, however, to intercede when an independent contractor's actions have created a dangerous situation'" should not "be read to apply outside a worker's claim for personal injury . . . ."  Opposition at 9 n.9 (quoting *Rogers v. Shell Oil Co.*, Civ. A. No. 92-1040, 1993 WL 30052, at *2 (E.D. La. Feb. 3, 1993)).

As an initial matter, Plaintiffs' arguments that this Court should create a new rule dramatically narrowing the scope of controlling law conflicts with Fifth Circuit holdings to the contrary.  *See, e.g.*, *Hyde v. Chevron U.S.A., Inc.*, 697 F.2d 614, 630 (5th Cir. 1983) ("A principal cannot be held answerable for failing to supervise an independent contractor . . . [this] rule applies to employees of the independent contractor <u>as well as to other third parties</u>") (emphasis added).  Moreover, the notion that a non-operating principal might owe a greater duty to protect the economic interests of distant third parties than the physical safety of workers on the leased property contravenes both law and common sense.   Plaintiffs themselves argue that the foreseeability of injury is an important element in determining whether a duty is owed.  Opposition at 5 (citing *Canal Barge Co., Inc. v. Torco Oil Co.*, 220 F.3d 370, 377 (5th Cir. 2000)).  The potential for workers to be injured on an offshore drilling rig is more foreseeable than the potential for remote Plaintiffs' indirect economic injuries.  Yet *Ainsworth* and related cases establish as a matter of law that the Non-Operating Defendants have <u>no</u> duty to protect workers on the leased property from physical harm, because they lacked operational control of

the activities giving rise to the injury.  The Non-Operating Defendants cannot logically owe any <u>greater</u> duty to the Bundle B1 and B3 Plaintiffs than to the workers on the *Deepwater Horizon*.

Furthermore, as the Fifth Circuit recently reaffirmed, there is <u>no duty at all</u> to protect the purely economic interests claimed by the Bundle B1 Plaintiffs under the rule of *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303 (1927) and *Louisiana ex rel. Guste v. M/V TESTBANK*, 752 F.2d 1019 (5th Cir. 1985) (en banc), *cert. denied*, 477 U.S. 903 (1986).  In the appeal of *Catalyst Old River Hydroelectric LP v. Ingram Barge Co.*, Case No. 10-30466 (5th Cir. Apr. 15, 2011), the Fifth Circuit explained that it has "faithfully applied the *Robins* rule and consistently denied recovery for economic loss to parties who have suffered no harm to a proprietary interest."  *Id.* The Fifth Circuit further restated its long held view that the economic loss rule's purpose "is pragmatic: to limit the consequences of negligence and exclude indirect economic repercussions, which can be widespread and open-ended."  *Id.* (citing *TESTBANK*, 752 F.2d at 1022).  "In other words . . . the *Robins* rule is a pragmatic restriction on <u>foreseeability</u>."  *Id.* (citing *TESTBANK*, 752 F.2d at 1022) (emphasis added).  Thus, as a matter of law, the Non-Operating Defendants had <u>no</u> duty to protect the B1 Plaintiffs' economic interests, because their indirect economic injuries are *a priori* not reasonably foreseeable.  *See, e.g.*, *TS & C Invs., L.L.C. v. Beusa Energy, Inc.*, 637 F. Supp. 2d 370, 381 (W.D. La. 2009) (holding that economic loss rule precluded finding that defendant owed duty to protect plaintiff's purely economic interests).

In sum, *Ainsworth* and related cases cannot be meaningfully distinguished from this case on the basis that they concern claims for personal injury as opposed to claims such as Plaintiffs' for indirect economic losses.

### 3. The Non-Operating Defendants' Status As Leaseholders Does Not Give Rise to the Duty Plaintiffs Claim.

As the above discussion of the *Ainsworth* line of cases shows, the mere fact that the Non-Operating Defendants are alleged to be "owner[s] of a leasehold interest to 'perform oil exploration, drilling, and production-related operations,'" (Opposition at 5) provides no exception to the rule that a principal owes no duty to intercede in or otherwise ameliorate the conduct of an independent contractor where the principal does not retain operational control. *See Dupre v. Chevron U.S.A., Inc.*, 930 F. Supp. 248, 251 (E.D. La. 1996) (Vance, J.) (holding that Chevron's "OCS lease has not created any new duties" and that imposing liability on such a leaseholder would be "squarely at odds with *Ainsworth v. Shell Offshore, Inc.*, and its progeny") (internal citations omitted), *aff'd per curiam*, 109 F.3d 230, 231 (5th Cir. 1997) (rejecting "argument that Chevron contractually assumed a duty of reasonable care . . . under the terms of its lease with the United States"); *Romero v. Mobil Exploration and Producing North America, Inc.*, 939 F.2d 307 (5th Cir. 1991) (affirming trial court's dismissal of vicarious and direct liability claims against Minerals Management Service ("MMS") leaseholder Mobil, because Mobil did not exercise operational control over independent contractor and neither lease nor MMS regulations imposed additional duties);[8] *Olsen v. Shell Oil Co.*, 561 F.2d 1178, 1180 (5th Cir. 1977), *cert. denied*, 444 U.S. 979 (1979) (same); *Bourg v. Texaco Oil Co., Inc.*, 578 F.2d 1117, 1122–23 (5th Cir. 1978) (same); *Fruge ex rel. Fruge v. Parker Drilling Co.*, 337 F.3d 558, 563 (5th Cir. 2003) (holding MMS lessee Anadarko not liable for plaintiffs' injuries because it did not retain operational control over drilling contractor).

---

[8]      The MMS is now known as the Bureau of Ocean Energy Management, Regulation and Enforcement ("BOEMRE").

Nonetheless, Plaintiffs broadly assert that "MOEX and Anadarko can only prevail if this Court reaches the conclusion that an owner need not prevent his property from causing harm to others, even when that owner has the ability to do so."  Opposition at 5.  Even ignoring the false, bootstrapping premise that the Non-Operating Defendants had the ability to prevent BP's operations from causing harm, Plaintiffs' arguments still fail.   In fact, virtually all of the principals in the *Ainsworth* line of cases were property owners held not to owe a duty to third parties even though their property, through the actions of an independent contractor over whom they retained no operational control, caused harm to others, and even though they had adequate knowledge and a theoretical ability to intercede to avoid the injury.   Contrary to Plaintiffs' contention, the Non-Operating Defendants' status as lessees of the Macondo Prospect imposed on them no greater duty to police the operations of their independent contractor.  So long as the owner/principal does not have a right to exercise operational control over the work of its independent contractor, it has no duty to intercede to protect third parties.

### 4.    The Non-Operating Defendants Had No Duty to Warn BP of Impending Danger.

Plaintiffs' theory of liability against the Non-Operating Defendants is based primarily on the conclusory allegation that by virtue of access to data from the rig, the Non-Operating Defendants "knew or should have known of the presence of hydrocarbons in the well" and therefore "owed a duty to Plaintiffs to warn [BP] of the impending disaster in sufficient time to avert it."  Opposition at 3; Amend. B1 Mast. Compl. ¶ 573.  Plaintiffs' theory rests on two novel and unsupported propositions: (1) that the Non-Operating Defendants owed a duty to BP to warn of impending disaster; and (2) that the Non-Operating Defendants' alleged duty to warn BP extended to protect the economic interests of unknown and distant third parties such Plaintiffs. Both propositions are contrary to law.

Plaintiffs do not identify the source of any duty on the part of the Non-Operating Defendants to warn BP of danger, because none exists.  Plaintiffs do not point to any such obligation under the Operating Agreement between the Non-Operating Defendants and BP, which entrusts operations on the leased property exclusively to BP as an independent contractor. Ex. A to Anadarko/MOEX B1 MTD at 14, Article 5.1.  Nor is any such duty to be found in the case law.

Indeed, the very notion that the Non-Operating Defendants had a duty to alert the rig to well information that they received from the rig is odd at best.  Under the general law, a leaseholder owes no duty to warn independent contractors of hazardous conditions on the leased property when the independent contractors "know or should know of the existence of a particular condition and [] appreciate or should appreciate its dangers."  *Gulf Oil Corp. v. Bivins*, 276 F.2d 753, 756 (5th Cir. 1960) (premises liability); *Croley v. Matson Navigation Co.*, 434 F.2d 73, 75 (5th Cir. 1970) ("[T]here is no duty on the owner to warn the employees of the contractor if they are already fully aware of the danger") (negligence).  At most, Plaintiffs allege only that the Non-Operating Defendants had access to the same information that was available to BP and its contractors and employees on the rig.  Amend. B1 Mast. Compl. ¶¶ 573–74.  Indeed, the information available second-hand to the Non-Operating Defendants was necessarily incomplete because without knowledge of the rig's contemporaneous operations, the Non-Operating Defendants had no way of interpreting the data transmitted by the rig.  Moreover, Plaintiffs do not allege that the Non-Operating Defendants were monitoring rig data at the precise moment that hydrocarbons allegedly entered the well, or at any pertinent time thereafter.  Nevertheless, taking Plaintiffs' implausible allegations at face-value, it must follow that if the Non-Operating Defendants "knew or should have known of the entry of hydrocarbons into the well," BP and its

15

contractors also "knew or should have known" of the same information, and the Non-Operating Defendants therefore had no duty to warn BP.

Moreover, not only would such a warning have been futile, as a matter of law, the failure to alert BP and others on the rig to the information Plaintiffs cite could not have proximately caused the Plaintiffs' injuries, because BP and others took the actions they did while already in possession of the same information. *See Delta Commodities, Inc. v. M/T JO OAK, ETC.*, No. 88-1349, 1989 WL 149253, at *4–5 (E.D. La. Dec. 6, 1989). Thus, even if a duty existed, which it does not, Plaintiffs still have not stated a claim for negligence against the Non-Operating Defendants. *See Florida Fuels, Inc. v. Citgo Petroleum Corp.*, 6 F.3d 330, 333 (5th Cir. 1993) (maritime law elements of negligence are "<u>a causal connection between the negligence and the injury</u>, the invasion of a legally protected interest, and lack of a countervailing legally protected interest as a defense to liability") (emphasis added), *cert. denied, Authement v. Citgo Petroleum Corp.*, 511 U.S. 1019 (1994).

Regardless, <u>even if</u> the Non-Operating Defendants could have interpreted the data from the rig as signaling the entry of hydrocarbons into the well, as Plaintiffs conclusorily allege, and <u>even if</u> the Non-Operating Defendants had some duty to warn BP, that duty could not have extended to distant third parties such as Plaintiffs, with whom the Non-Operating Defendants have no relationship. In *Tidewater Marine, Inc., v. Sanco International, Inc.*, the court held that "[m]ere observation of a hazard does not create a duty to either warn of the danger or to take affirmative action to prevent it." 1997 WL 543108, at *12 (E.D. La. Sept. 3, 1997) (Vance, J.). In that case, third parties injured as a result of a maritime casualty alleged that defendant G & N observed an independent contractor's failure to install a safety lighting system, but failed to warn the independent contractor. The plaintiffs alleged that G & N "had an affirmative duty to warn"

the independent contractor of the omission, and therefore "G & N's silence" rendered it liable to the plaintiffs in negligence. *Id.* at *11.   Citing *Ainsworth*, the court rejected the plaintiffs' theory, holding that "[t]he ability to intervene and prevent an accident does not, without more, create a duty to third parties to act." *Id.* at *12.   The court further held that while "G & N might have recognized the danger . . . this alone does not create an obligation to a third-party with whom it has no relationship to neutralize a situation that it had no part in creating." *Id.*

In sum, Plaintiffs' attempts to distinguish *Ainsworth* and related cases fail.   Moreover, Plaintiffs fail to cite a single case, in any jurisdiction, where a plaintiff in their position has prevailed against a non-operating principal who had hired an independent contractor over which it retained no operational control.   Plaintiffs state in their Opposition that "the MOEX and Anadarko Defendants can only prevail if this Court reaches the conclusion that an owner need not prevent his property from causing harm to others, even when that owner has the ability to do so." Opposition at 5.   According to Plaintiffs, then, the Non-Operating Defendants must prevail, because where, as here, the harm is caused by an independent contractor over which the principal has no right to exercise operational control, that is precisely the conclusion that the law requires.

### B.   There Is No Factual Dispute That AE&P Was No Longer a Leaseholder on April 20, 2010, and the OPA Claims Against It Must Be Dismissed.

As outlined in the Motion to Dismiss, AE&P is not a "responsible party" under the OPA, because it did not hold any leasehold interest in the Macondo Prospect on April 20, 2010 or later. *See* Anadarko/MOEX B1 MTD at 15–17.[9]   In their Opposition, Plaintiffs do not dispute that April 20, 2010 is the earliest operative date for determining OPA liability.   Plaintiffs also do not dispute that OPA does not extend liability to former lessees in this case.   Despite Plaintiffs'

---

[9]        *See also* Anadarko/MOEX B3 MTD at 23–24.  Plaintiffs amended the Master B3 Complaint and removed the OPA claim.  *See* Motion for Leave to Amend B3 Master Compl. at 2 [Rec. Doc. 1805].

protests to dismissal, they cannot dispute that MMS approved AE&P's April 15, 2010 assignment of its leasehold interest with an effective date of April 1, 2010. *See* Opposition at 14. Under MMS regulations, this is sufficient to establish that, as a matter of law, AE&P was not a lessee for purposes of OPA liability.[10]

In their Opposition, Plaintiffs ignore the plain terms of OPA, which bases liability on an interest in <u>a government authorized lease</u>, to argue that AE&P is somehow still liable because it may have owed some unidentified regulatory obligations to MMS until April 28, 2010 or under the Operating Agreement. Opposition at 14. Even assuming such obligations existed through April 28, 2010, they are irrelevant for purposes of OPA liability.

OPA extends liability to certain <u>lessees</u>. Lessees are those that hold a leasehold interest in a "lease . . . granted or maintained" under the Outer Continental Shelf Lands Act ("OCSLA"). 33 U.S.C. § 2701(16). OCSLA recognizes that "the subsoil and seabed of the outer Continental Shelf appertain to the United States and are subject to its jurisdiction, control, and power of disposition as provided in this [Act]." 43 U.S.C. § 1332(1). OCLSA gives the Secretary of the Interior authority to administer leasing, which has been delegated to the MMS. 43 U.S.C. § 1334(a); 30 C.F.R. § 250.101; *Louisiana ex rel. Guste v. United States*, 656 F. Supp. 1310, 1313 n.4 (W.D. La. 1986). OCSLA also directs the adoption of regulations, among other things, "for the assignment . . . of a lease." 43 U.S.C. § 1334(a)(3). OCSLA regulations then define who "holds" lease interests when there is an assignment: "Any approved assignment shall be deemed to be effective on the first day of the lease month following its filing in the appropriate office of the MMS, <u>unless at the request of the parties, an earlier date is specified in the approval</u>." 30 C.F.R. § 256.62(c) (emphasis added). Thus, there can be no dispute that the April

---

[10] In their Opposition, Plaintiffs do not contend that they seek to hold AE&P liable under any theory other than OPA.

15, 2010 lease assignment was approved by MMS effective April 1, 2010, and thereafter AE&P no longer held any interest in the Macondo Prospect lease for purposes of OPA liability, as a matter of law.  Plaintiffs cannot rely on their conclusory statement in the Amended B1 Master Complaint that AE&P nonetheless remained a responsible party, in the hopes of "[d]etermining whether Plaintiffs' allegations are factually accurate" after discovery.  Opposition at 13.  *See Southwestern Bell Telephone, LP v. City of Houston*, 529 F.3d 257, 263 (5th Cir. 2008) (finding discovery is not warranted to rule on Motion to Dismiss under Rule 12(b)(6), which is based on allegations in complaint).  Because AE&P no longer held any leasehold interest in the Macondo Prospect as of April 1, 2010, no factual circumstances exist to render AE&P liable as a <u>lessee</u> under OPA.

Plaintiffs' reliance on purported MMS regulatory requirements that may have existed until the date of MMS's approval misses the point.  While MMS regulations provide that the assignor remains liable for "all obligations that <u>accrue under [the] lease</u> before the date that the Regional Director approves [the] request for assignment of the record title in the lease," this relates only to obligations that accrue <u>under the lease</u>, and does not extend to liability that may arise under other statutes.  30 C.F.R. § 256.62(d) (emphasis added).  Any such accrued lease obligations must be consistent with the scope of MMS's leasing authority, and MMS has no authority to impose upon assignors additional obligations or liability under other statutes administered by other agencies.  Moreover, it has no effect on the operation of 30 C.F.R. § 256.62(c), terminating AE&P's interest in the Macondo Prospect lease effective April 1, 2010.

Plaintiffs also cannot rely on the Operating Agreement, which is a <u>private</u> contract under which they have no rights, to impose OPA liability.  As noted above, only the United States, through MMS, has the authority to grant a leasehold interest on the OCS via issuance of a <u>lease</u>,

which may then be assigned by the parties subject to MMS regulations.  Moreover, the Joinder

signed by AE&P recognizes that the Lease Exchange Agreement and Assignments address the

transfer of record title interest in the lease.[11]   The Operating Agreement, on the other hand,

merely outlines the rights and obligations for operations conducted pursuant to the lease.  Thus,

while the Plaintiffs refer to the provision governing the transfer of obligations under the

Operating Agreement, these obligations are irrelevant to whether AE&P retains an interest in the

lease issued by MMS.[12]

Apparently recognizing their theory for OPA liability against AE&P fails on the law,

Plaintiffs also attempt to manufacture a factual issue to avoid dismissal.  This futile attempt also

must be rejected.  First, Plaintiffs attempt to raise a specter of doubt as to whether AE&P did, in

fact, transfer its interest.  Opposition at 13.  Plaintiffs, however, do not argue that the MMS-

approved assignment or the MMS listing showing that AE&P was not a leaseholder as of April

1, 2010 are inaccurate or improperly before the Court and cannot be relied upon.  Moreover,

contrary to Plaintiffs' statement that they "have not yet seen any document pre-dating the April

20, 2010 blowout that indicates Anadarko E&P's interest actually was assigned" prior to the

blowout, *id.* at 14, the assignment itself indicates that it was executed April 15, 2010, and was

effective April 1, 2010, as approved by MMS.  Anadarko/MOEX B1 MTD, Ex. C.  Indeed,

Plaintiffs' arguments are disingenuous, given that the initial Master Complaint for Bundle B1

expressly recognized that AE&P was no longer a leaseholder as of April 1, 2010, citing, as

---

[11]     The Ratification and Joinder of Operating Agreement is attached to this memorandum as Exhibit
A.  It was relied upon by Plaintiffs in the Amended Master Complaint.  Amend. B1 Mast. Compl. ¶ 247
[Rec. Doc. 1128].  *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (noting that
documents attached to Motion to Dismiss are considered part of pleadings if referenced in complaint and
central to claim) (citations omitted).

[12]     Although AE&P does not concede that any such obligations under the Operating Agreement
exist, to the extent that there are any, they would not be enforceable by the Plaintiffs.

AE&P did in support of its Motion to Dismiss, to MMS's website.[13]  *See* Mast. Compl. B1 ¶ 217 [Rec. Doc. 879]; Mast. Compl. B3 ¶ 46 [Rec. Doc. 881].

Plaintiffs' other purported factual disputes are irrelevant to whether AE&P is a responsible party under OPA, and further illustrate that Plaintiffs' <u>Complaint</u> asserts no factual basis for the OPA claim against AE&P.[14]  Plaintiffs attempt to manufacture what would in any case be an irrelevant factual issue concerning the "reasons behind the transfer."  Opposition at 14 n.15.  Plaintiffs also assert that this Court should not dismiss AE&P until "a judicial determination of negligence or other fault . . . ."  *Id.* at 15.  Both of these suppositions are irrelevant to OPA liability, which is based only on status as a lessee.  Plaintiffs cite to no legal authority or any rationale to contend that these issues are in any way relevant to OPA liability.  This Court should not condone blatant attempts by the Plaintiffs to undergo a fishing expedition.[15]  "Plaintiffs must . . . 'have some basis in fact for the action' they are bringing

---

[13] In contrast to their original Complaint, Plaintiffs' Amended Master B1 Complaint merely states that AE&P held a leasehold interest "[a]t all relevant times."  Amend. B1 Mast. Compl. ¶ 234 [Rec. Doc. 1128]; Amend. B3 Mast. Compl. ¶ 43 [Rec. Doc. 1812].  Plaintiffs' conclusory allegations without basis in fact are not entitled to a presumption of truth.  If Plaintiffs obtained new information to support a good faith belief that AE&P held a leasehold interest after April 1, 2010, the Amended Complaint and the Opposition fail to so indicate.

[14] Any purported references to the need for further discovery must by rejected.  *See Southwestern Bell Telephone,* 529 F.3d at 263; *see also Ackerson v. Bean Dredging LLC,* 589 F.3d 196, 209 (5th Cir. 2009) (finding, as in motions to dismiss under Rule 12(b)(6), "discovery would not assist the Plaintiffs in defending the 12(c) motion"); *A&D P'ship v. Equity Group, Inc.,* Civ. A. No. 98-3139, 1988 WL 141942, at *10 (E.D. La. Dec. 23, 1988) ("Facts which might come to light during discovery and development of evidence are irrelevant to consideration of a Motion to Dismiss pursuant to 12(b)(6) . . .") (citations omitted).

[15] *See Krim v. Banctexas Group, Inc.,* 989 F.2d 1435, 1442–43 (5th Cir. 1993) (affirming grant of summary judgment to defense where plaintiff "did not state <u>how</u> further discovery would have aided his cause of action, and thus, he has failed to demonstrate that further discovery would be anything other than a 'fishing expedition'") (emphasis in original); *Skidmore Energy, Inc. v. KPMG,* No. Civ. A. 3:03CV2138-B, 2004 WL 3019097, at *12 n.6 (N.D. Tex. Dec. 28, 2004) ("The Court will not allow the Plaintiffs to conduct a 'fishing expedition' in an effort to manufacture their claims") (internal citations and quotation marks omitted).

against the Defendants." *Skidmore Energy, Inc.*, 2004 WL 3019097, at *12 n.6; *see also Russell v. Choicepoint Servs., Inc.*, 302 F. Supp. 2d 654, 670–71 (E.D. La. 2004).

Plaintiffs have not, and cannot, provide any support for their allegation that AE&P is a responsible party under OPA.  Because, as a matter of law, AE&P no longer held any leasehold interest in the Macondo Prospect as of April 1, 2010, the Plaintiffs' unsupported allegation to the contrary fails as a matter of law and cannot be "taken as true."  Opposition at 13.  Thus, Plaintiffs' Complaint fails to state a claim for OPA liability against AE&P, and the claim must be dismissed with prejudice.

## III.   CONCLUSION

For the foregoing reasons, Plaintiffs' maritime negligence claims in the Amended Master Complaints for Pleading Bundles B1 and B3 against Non-Operating Defendants MOEX Offshore 2007, Anadarko Petroleum Corporation, and Anadarko E&P Company, and Plaintiffs' claim against Anadarko E&P Company in Amended Master Complaint B1 must be dismissed for failure to state a claim upon which relief can be granted.

Respectfully submitted,

DATED: April 29, 2011               BINGHAM McCUTCHEN, LLP


/s/*Ky E. Kirby*_____
Ky E. Kirby
ky.kirby@bingham.com
David B. Salmons
david.salmons@bingham.com
Michael B. Wigmore
michael.wigmore@bingham.com
Warren Anthony Fitch
tony.fitch@bingham.com
Randall M. Levine
randall.levine@bingham.com
2020 K Street, NW

22

Washington, DC 20006-1806
Telephone (202) 373-6000
Facsimile (202) 373-6001

James J. Dragna
jim.dragna@bingham.com
Bingham McCutchen LLP
355 South Grand Avenue
Suite 4400
Los Angeles, California 90071-3106
Telephone (213) 680-6436
Facsimile (213) 680-8636

KUCHLER POLK SCHELL
WEINER & RICHESON, LLC

Deborah D. Kuchler, T.A. (La. Bar No. 17013)
dkuchler@kuchlerpolk.com
Janika Polk (La. Bar No. 27608)
jpolk@kuchlerpolk.com
Robert Guidry (La. Bar No. 28064)
rguidry@kuchlerpolk.com
1615 Poydras Street, Suite 1300
New Orleans, LA  70112
Tel:  (504) 592-0691
Fax:  (504) 592-0696

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, pursuant to Pre-trial Order No. 12, I have caused the foregoing to be served on all counsel via the Lexis Nexis File & Serve system, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, who will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on April 29, 2011.


_____/s/ *Ky E. Kirby*_____
Ky E. Kirby