# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig | * | MDL No. 2179 |
| "Deepwater Horizon" in the Gulf | * | |
| of Mexico on April 20, 2010 | * | SECTION "J" |
| | * | JUDGE BARBIER |
| This Document Relates to: | * | |
| *Pleading Bundle C*, | * | |
| No. 10-2771 | * | |
| | * | MAGISTRATE NO. 1 |
| | * | MAGISTRATE SHUSHAN |
| * * * * * * * * * * * * | | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANT MOEX OFFSHORE 2007 LLC TO DISMISS THE VOLUNTARY MASTER COMPLAINT, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT FOR LOCAL GOVERNMENTAL ENTITIES PURSUANT TO FED. R. CIV. P. 12(b)(6) ["PLEADING BUNDLE C"]

A/74247013.3

<u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    Introduction ................................................................................................................... 1

II.   Background ................................................................................................................... 3

      A.    The Local Government Plaintiffs Allege That They Have Incurred
            Damages Due to the Oil Spill Resulting from the *Deepwater Horizon*
            Incident ............................................................................................................. 3

      B.    The Defendants Are Divided into Subgroups ................................................... 4

            1.    The Master Local Government Complaint includes extensive
                  allegations against the Drilling Defendants, Cameron, and
                  Weatherford ........................................................................................... 4

            2.    The Local Government Plaintiffs' allegations cast MOEX Offshore
                  in a completely different light ................................................................ 6

III.  Argument ...................................................................................................................... 7

      The Local Government Plaintiffs Fail to State Any Claims Against
      MOEX Offshore For Which Relief Can Be Granted………………………………..……7

      A.    The Local Government Plaintiffs' Maritime Negligence Claim Fails as a
            Matter of Law Because Maritime Law Is Displaced by OPA .............................. 8

      B.    The OPA Claim Against MOEX Offshore Fails for Lack of Presentment ............ 9

      C.    Claims for Removal Costs Under OPA Must be Dismissed............................... 10

      D.    The Local Government Plaintiffs Fail to State a Claim for Maritime
            Negligence in Any Event .................................................................................. 12

            1.    MOEX Offshore did not have operational control over any of the
                  activities that allegedly caused the Plaintiffs harm................................. 12

            2.    Allegations about MOEX Offshore's rights under the Operating
                  Agreement are insufficient as a matter of law to establish liability
                  for maritime negligence ......................................................................... 15

            3.    Local Government Plaintiffs cannot recover economic losses
                  without alleging physical injury to a proprietary interest ....................... 18

      E.    The State Law Claims Must be Dismissed Because Federal Law Applies
            Exclusively........................................................................................................ 19

            1.    OCSLA requires the exclusive application of OPA to claims for
                  damages and costs arising from oil spills originating on the OCS .......... 20

            2.    Federal law preempts applying an affected state's law to interstate
                  oil pollution originating from the OCS ................................................... 22

i

# TABLE OF CONTENTS
(continued)

Page

F.   Even if State Law is Adopted under the OCSLA Choice of Law,
     Individual State Law Claims Against MOEX Offshore Nonetheless Fail
     and Must Be Dismissed ................................................................................... 24

     1.   The Master Local Government Complaint fails to allege sufficient
          facts to support the claims under Louisiana law ..................................... 25

     2.   The Master Local Government Complaint fails to state a claim
          under LOSPRA ....................................................................................... 27

     3.   LOSPRA preempts the Parish District Attorneys' claims under the
          Wildlife & Fisheries Statute, and further provides that OPA applies
          to claims under Louisiana law ............................................................... 29

IV.   Conclusion ..................................................................................................... 31

A/74247013.3

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ainsworth v. Shell Offshore, Inc.*,
   829 F.2d 548 (5th Cir. 1987), *cert. denied*, 485 U.S. 1034 (1988)....................................12, 18

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ................................................................................... *passim*

*Barasich v. Shell Pipeline Co.*,
   No. 05-4180, 2006 WL 3913403 (E.D. La. Nov. 20, 2006) (Barbier, J.)................................8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..........................................................................................7, 8, 26

*Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.*,
   51 F.3d 235 (11th Cir. 1995) ............................................................................10

*Bolivar v. R & H Oil and Gas Co.*,
   789 F. Supp. 1374 (S.D. Miss. 1991)..................................................................14

*Canal Barge Co. v. Torco Oil Co.*,
   220 F.3d 370 (5th Cir. 2000) ............................................................................12

*Collins v. Morgan Stanley Dean Witter*,
   224 F.3d 496 (5th Cir. 2000) ............................................................................13

*Dunham-Price Group, LLC v. Citgo Petroleum Corp.*,
   No. 2:07CV1019, 2010 WL 1285446 (W.D. La. Mar. 31, 2010)..........................19

*Duplantis v. Shell Offshore, Inc.*,
   948 F.2d 187 (5th Cir. 1991) ............................................................................15

*Gabarick v. Laurin Mar. (Am.) Inc.*,
   623 F. Supp. 2d 741 (E.D. La. 2009)..................................................................9

*Gabarick v. Laurin Maritime (Am.) Inc.*,
   No. 08-4007, 2009 WL 102549 (E.D. La. Jan. 12, 2009)......................................10

*Geier v. Am. Honda Motor Co.*,
   529 U.S. 861 (2000)..........................................................................................24

*Grammer v. Patterson Servs., Inc.*,
   860 F.2d 639 (5th Cir. 1988), *cert. denied*, 491 U.S. 906 (1989)..........................14

i

*Guillory v. Conoco, Inc.*,
    521 So.2d 1220 (La. App. 3d Cir.), *writ denied*, 526 So.2d 801 (La. 1988) ..........................14

*Hershey v. Energy Transfer Partners*,
    610 F.3d 239 (5th Cir. 2010) ........................................................................................8, 26

*IMTT-Gretna v. Robert E. Lee S.S.*,
    993 F.2d 1193 (5th Cir. 1993) ................................................................................................19

*In re Dant & Russell, Inc.*,
    951 F.2d 246 (9th Cir. 1991) ................................................................................................11

*In re Katrina Canal Breaches Litig.*,
    495 F.3d 191 (5th Cir. 2007) ................................................................................................13

*In re Taira Lynn Marine Ltd. No. 5 LLC*,
    444 F.3d 371 (5th Cir. 2006) ................................................................................................19

*Int'l Paper Co., Inc. v. Hilton*,
    966 So. 2d 545 (La. 2007) ................................................................................................29

*Int'l Paper Co. v. Ouellette*,
    479 U.S. 481 (1987)........................................................................................22, 23, 24

*Jones v. Bock*,
    549 U.S. 199 (2007)........................................................................................................8

*Kane Enters. v. MacGregor Inc.*,
    322 F.3d 371 (5th Cir. 2003) ................................................................................................13

*Landry v. Huthnance Drilling Co.*,
    889 F.2d 1469 (5th Cir. 1989) ................................................................................................15

*Lane v. Capital Acquisitions & Mgmt. Co.*,
    No. 04-60602CIV, 2006 WL 4590705 (S.D. Fla. Apr. 14, 2006) ...........................................25

*Louisiana ex rel. Guste v. M/V TESTBANK*,
    752 F.2d 1019 (5th Cir. 1985) (en banc) ................................................................................19

*Magluta v. Samples*,
    256 F.3d 1282 (11th Cir. 2001) ................................................................................................25

*Marathon Pipe Line Co. v. LaRoche Indus. Inc.*,
    944 F. Supp. 476 (E.D. La. 1996) ................................................................................................10

*Martin v. Pride Offshore Co., Inc.*,
    No. Civ. A. 97-3754, 1999 WL 4921 (E.D. La. Jan. 6, 1999), *aff'd*, 198 F.3d 241 (5th
    Cir. 1999) ................................................................................................17

*Miller Indus. v. Caterpillar Tractor Co.*,
   733 F.2d 813 (11th Cir. 1984) .............................................................................19

*Mobil Oil Exploration & Producing SE, Inc. v. United States*,
   530 U.S. 604 (2000)..............................................................................................23

*Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atl. Corp.*,
   924 F. Supp 1436 (E.D. Va. 1996), *aff'd*, 122 F.3d 1062 (4th Cir. 1997) ...............9

*Offshore Logistics, Inc. v. Tallentire*,
   477 U.S. 207 (1986)..............................................................................................24

*Pierson v. Orlando Reg'l Healthcare Sys., Inc.*,
   No. 6:08-cv-466-Orl-28GJK, 2009 WL 2151176 (M.D. Fla. July 13, 2009).........26

*Pro Image Installers, Inc. v. Dillon*,
   No. 3:08CV273/MCR/MD, 2009 WL 112953 (N.D. Fla. Jan. 15, 2009) ...............25

*Rice v. Harken Exploration Co.*,
   250 F.3d 264 (5th Cir. 2001) ................................................................................11

*Rogers v. Shell Oil Co.*,
   No. 92-1040, 1993 WL 30052 (E.D. La. Feb. 3, 1993).........................................18

*Ronquille v. MMR Offshore Servs., Inc.*,
   353 F. Supp. 2d 680 (E.D. La. 2004) ..............................................................12, 17

*Russo v. M/T Dubai Star*,
   No. C 09-05158 SI, 2010 WL 1753187 (N.D. Cal. Apr. 29, 2010).......................10

*Snyder Oil Corp. v. Samedan Oil Corp.*,
   208 F.3d 521 (5th Cir. 2000) ................................................................................24

*South Port Marine, LLC v. Gulf Oil LP*,
   234 F.3d 58 (1st Cir. 2000)......................................................................................9

*Tanguis v. M/V Westchester*,
   153 F. Supp. 2d 859 (E.D. La. 2001)........................................................................9

*Texaco Exploration & Prod., Inc. v. AmClyde Engineered Prods. Co.*,
   448 F.3d 760 (5th Cir. 2006) ................................................................................21

*Thibodeaux v. Vamos Oil & Gas Co.*,
   No. Civ. A. 03-1883, 2005 WL 3019773 (W.D. La. Nov. 10, 2005)....................15

*Thomas v. Burlington Res. Oil & Gas Co.*,
   No. Civ. A. 99-3904, 2000 WL 1528082 (E.D. La. Oct. 13, 2000) ................12, 17

A/74247013.3

*Transcon. Gas Pipe Line Corp. v. Mobile Drilling Barge or Vessel Mr. Charlie*,
    294 F. Supp. 1025 (E.D. La. 1968), *aff'd in relevant part and rev'd in part on other grounds*, 424 F.2d 684 (5th Cir. 1970), *cert. denied*, 400 U.S. 832 (1970)............................14

*Turner v. Murphy Oil USA, Inc.*,
    No. 05-4206, 2007 WL 4208986 (E.D. La. Nov. 21, 2007)..................................................10

STATUTES

16 U.S.C. §§ 1451–1464 ...............................................................................................................23

33 U.S.C. § 2701(20) ....................................................................................................................31

33 U.S.C. § 2702 ...........................................................................................................................22

33 U.S.C. § 2702(b) ...............................................................................................................9, 11, 31

33 U.S.C. § 2706 ...........................................................................................................................31

33 U.S.C. § 2713 .....................................................................................................................10, 31

33 U.S.C. § 2717(f)(2) ..................................................................................................................11

33 U.S.C. § 2718 ...........................................................................................................................24

43 U.S.C. § 1331 ...........................................................................................................................20

43 U.S.C. § 1333 .....................................................................................................................21, 24

43 U.S.C. § 1349 ...........................................................................................................................20

FLA. STAT. § 376.121 ....................................................................................................................22

FLA. STAT. § 376.205 ....................................................................................................................22

LA. ADMIN CODE Title 43, pt. XXIX, § 109 .................................................................................30

LA. REV. STAT. ANN. § 30:2453 ...................................................................................................30

LA. REV. STAT. ANN. § 30:2454................................................................................22, 27, 28, 29, 30

LA. REV. STAT. ANN. § 30:2482 ...................................................................................................22

LA. REV. STAT. ANN. § 30:2491 .............................................................................................29, 30, 31

LA. REV. STAT. ANN. § 30:2496 ...................................................................................................29

LA. REV. STAT. ANN. § 56:40.1, *et seq.*......................................................................................29, 30

iv

TEX. NAT. RES. CODE ANN. §§ 40.003, 40.202..................................................................22

TEX. NAT. RES. CODE ANN. §§ 40.159, 40.153, 40.161, 40.251 ...................................25

TEX. NAT. RES. CODE ANN. § 40.001, *et seq.*................................................................19

**OTHER AUTHORITIES**

FED. R. CIV. P. 8(a)(2)......................................................................................................25

Merriam-Webster Online Dictionary ..............................................................................27

## I.       INTRODUCTION

On February 2, 2011, Plaintiffs' Liaison Counsel moved to file a Local Government Entity Master Complaint under Pleading Bundle C, which local government entities can voluntarily join through filing a short form Joinder.  Mot. to File Local Government Entity Voluntary Mast. Compl. (Doc. 1093).  The Court granted the motion on March 9, 2011, clarifying that "[l]ocal public bodies or entities may voluntarily join or otherwise intervene into one administrative Master Complaints [sic] for Bundle C claims, or may opt out of the Master Complaint and file their own separate individual petitions or complaints."  PTO No. 33 at 1–2 (Doc. 1549).  The Voluntary Master Complaint, Cross-Claim, and Third-Party Complaint for Local Governmental Entities (PTO No. 11 [CMO No. 1] Section III(C) ["C Bundle"]) was filed March 4, 2011 (Doc. 1510) (hereinafter "Master Local Government Complaint").[1]

The Master Local Government Complaint asserts several claims against MOEX Offshore 2007 LLC ("MOEX Offshore").[2]  These claims include:  (1) claims for damages and removal costs based on negligence under General Maritime Law (Claim I.A); (2) claims for damages and removal costs under the Oil Pollution Act ("OPA") (Claim II); (3) claims for damages under the Louisiana Oil Spill Prevention and Response Act ("LOSPRA") and penalties under the Louisiana Wildlife and Fisheries statute (Claim III.F)[3]; and (4) claims for damages and response costs

---

[1]      The entities that voluntarily join the Master Local Government Complaint are referred to as "Local Government Plaintiffs."

[2]      Simply for ease, this Motion refers to (a) MOEX Offshore, MOEX USA Corporation, Anadarko Petroleum Corporation ("APC"), and Anadarko E&P Company LP ("AE&P") as "Non-Operating Defendants" and (b) APC and AE&P together as "Anadarko."  Each is an independent and distinct corporate entity, and by using this shorthand, movant does not suggest or acknowledge otherwise.

[3]      This claim is brought only by the members of the "Louisiana Subclass."

under the Texas Oil Spill Prevention and Response Act of 1991 ("TOSPRA") (Claim III.G).[4]
Mast. Local Govt. Compl. at ¶¶ 546, 662, 731, 741.  Each claim must be dismissed.[5]

The Local Government Plaintiffs' maritime negligence claim fails as a matter of law because maritime negligence law is displaced by OPA in this case.  Even if it were not displaced, the Local Government Plaintiffs fail to state a maritime negligence claim against MOEX Offshore.  They do not allege that MOEX Offshore conducted or had operational control over any of the activities that allegedly caused them harm.  Allegations that MOEX Offshore had certain rights to information are insufficient as a matter of law to establish liability for maritime negligence.

The Local Government Plaintiffs' OPA claim also fails because they do not allege compliance with the statute's pre-suit presentment requirement.  OPA's presentment requirement is mandatory and jurisdictional; all OPA claims by plaintiffs who have not complied must be dismissed.  Any claims for removal costs must be dismissed because the Master Local Government Complaint fails to adequately allege any removal actions taken by the Local Government Plaintiffs or that such actions were conducted consistent with the National Contingency Plan.

Finally, the remaining state law claims must be dismissed because state law does not apply in this case.  Even assuming for purposes of this motion that state law were adopted as surrogate federal law, the adopted state law would be that of Louisiana.  Although the members

---

[4]     This claim is brought only by members of the "Texas Subclass."

[5]     MOEX Offshore assumes that references to "MOEX" in the Claims for Relief section are to MOEX Offshore.  The Master Local Government Complaint does not name MOEX Offshore in any other claim.

of the Louisiana Subclass purport to raise claims under Louisiana law, the Master Local Government Complaint does not state a claim against MOEX Offshore under Louisiana law.[6]

For these reasons, and as explained more fully below, all of the Local Government Plaintiffs' claims against MOEX Offshore must be dismissed.

## II.   BACKGROUND

### A.   The Local Government Plaintiffs Allege That They Have Incurred Damages Due to the Oil Spill Resulting from the *Deepwater Horizon* Incident.

The Master Local Government Complaint is a voluntary and administrative pleading that local government entities may join.  Mast. Local Govt. Compl. at ¶¶ 174, 177.  Local Government Plaintiffs are a class of local government entities, officials, and other public or governmental bodies segregated into five subclasses for the states of Florida, Alabama, Mississippi, Louisiana,  and Texas.  *Id.* at ¶¶ 178, 518.  Several entities have submitted short form Joinders in the docket established in this Court under Case No. 10-9999.

The Master Local Government Complaint generally alleges that the Local Government Plaintiffs have suffered "damage, destruction, or diminution in value of property, loss of tax revenue, income and/or use, and/or costs of response, removal, clean-up, restoration and/or remediation and/or other damages, losses, and/or costs as a result of the oil spill by the oil rig Deepwater Horizon in the Gulf of Mexico on April 20, 2010" (referred to hereinafter as the "Deepwater Horizon Incident").  Mast. Local Govt. Compl. at ¶ 178.  Other damages alleged include natural resource damages and costs associated with providing additional public services.  *Id.* at ¶¶ 170, 172.

---

[6]     Because the Local Government Plaintiffs' claims largely track those of the plaintiffs in Pleading Bundles B1 and B3, many, but not all, of the arguments in this Motion to Dismiss mirror those in the Non-Operating Defendants' Motions to Dismiss the Pleading Bundle B claims.  Since these claims are filed in Pleading Bundle C, however, for convenience MOEX Offshore repeats them here.

**B.      The Defendants Are Divided into Subgroups.**

The Local Government Plaintiffs' allegations identify a litany of defendants, but portray the Non-Operating Defendants very differently from the others.  The Master Local Government Complaint also names BP Exploration & Production, Inc. ("BP E&P"), BP America Production Company, and BP p.l.c. (collectively "BP"); Transocean Ltd., Transocean Offshore Deepwater Drilling, Inc., Transocean Deepwater, Inc., Transocean Holdings, LLC, and Triton Asset Leasing GmbH (collectively "Transocean"); Halliburton Energy Services, Inc. ("Halliburton"); M-I, LLC ("M-I"); Cameron International Corporation ("Cameron"); and Weatherford U.S. L.P. ("Weatherford").  Mast. Local Govt. Compl. at ¶¶ 179–206.  The Master Local Government Complaint collectively refers to BP, Transocean, M-I, and Halliburton as the "Drilling Defendants."  *Id.* at ¶ 198.

**1.      The Master Local Government Complaint includes extensive allegations against the Drilling Defendants, Cameron, and Weatherford.**

The Local Government Plaintiffs' allegations concerning the drilling operations and the safety and maintenance of the *Deepwater Horizon* relate exclusively to the Drilling Defendants. *See* Mast. Local Govt. Compl. at ¶¶ 227–49, 255–446.  The Drilling Defendants allegedly were involved in "the drilling, cementing, and other temporary well abandonment activities of the Deepwater Horizon . . . ."  Mast. Local Govt. Compl. at ¶ 198; *see also id.* at ¶ 543 ("At all times material hereto, Drilling Defendants were participating in drilling operations onboard the Deepwater Horizon in the Gulf of Mexico").  Their actions allegedly "caused and/or contributed to the Spill."  *Id.* at ¶ 198.

The Local Government Plaintiffs claim that BP E&P is a "lease holder and the designated operator in the lease granted by the former Minerals Management Service ('MMS') allowing it to perform oil exploration, drilling, and production-related operations in Mississippi Canyon

Block 252," also known as the Macondo Prospect.[7]  *Id.* at ¶ 179.  "As lease operator of the Macondo [P]rospect site, BP was responsible for assessing the geology of the prospect site, engineering the well design, obtaining regulatory approvals for well operations, and retaining and overseeing the contractors working on the various aspects of the well and drilling operations."  *Id.* at ¶ 188.

The Local Government Plaintiffs allege that Transocean was "owner, managing owner, owner *pro hac vice*, and/or operator of the Deepwater Horizon."  Mast. Local Govt. Compl. at ¶¶ 189–93.  "At the Macondo site, Transocean provided the Deepwater Horizon vessel and personnel to operate it."  *Id.* at ¶ 194.  "At all times relevant to the Spill, Transocean, subject to BP's inspection and approval, was responsible for maintaining well control equipment, such as the blowout preventer and its control systems."  *Id.*  Transocean also allegedly "provided operational support for drilling-related activities on board the Deepwater Horizon, as well as onshore supervision and support for those drilling activities at all times relevant to the Spill."  *Id.*; *see also id.* at ¶ 559 ("At all times material hereto the Deepwater Horizon was owned, navigated, manned, possessed, managed, and controlled by Transocean").

The Master Local Government Complaint alleges that Halliburton provided "technical advice about the design, modeling, placement, and testing of the cement that was used in the Macondo well."  Mast. Local Govt. Compl. at ¶ 195.  At the time of the blowout that resulted in explosions and fires on the *Deepwater Horizon*, Halliburton was allegedly "engaged in cementing operations to isolate the hydrocarbon reservoirs and seal the bottom of the well against the influx" of oil and gas.  *Id.*  Sperry Drilling Services, a Halliburton division, allegedly

---

[7]     In June 2010, MMS was renamed the Bureau of Ocean Energy Management, Regulation and Enforcement ("BOEMRE").  Because the actions at issue herein were taken at the time by MMS, we refer to the agency by its former name for convenience.

provided mudlogging personnel on the *Deepwater Horizon*, who were "partially responsible for monitoring the well . . . ." *Id.* at ¶ 196.

The Local Government Plaintiffs also allege that M-I provided drilling mud products, personnel, and services used on the *Deepwater Horizon*, "including drilling fluids and spacers, engineering services, and mud supervisory personnel, such as mud engineers and drilling fluid specialists, to manage the properties of those fluids in the well." Mast. Local Govt. Compl. at ¶ 197. Moreover, they allege that Cameron and Weatherford manufactured certain of the *Deepwater Horizon*'s appurtenances: a blowout-preventer and casing components, respectively. *See id.* at ¶¶ 199–200.

## 2. The Local Government Plaintiffs' allegations cast MOEX Offshore in a completely different light.

The Master Local Government Complaint alleges that "[o]n June 1, 2008, BP acquired a ten-year lease from the MMS to search for and exploit hydrocarbon reservoirs at the Macondo prospect site in Mississippi Canyon Block 252, 48 miles off the coast of Louisiana." Mast. Local Govt. Compl. at ¶ 241. MOEX Offshore "entered into a Lease Exchange Agreement (effective October 1, 2009), pursuant to which MOEX Offshore conveyed to BP E&P its interest in the Gouda Prospect site, and BP E&P, in exchange, conveyed to MOEX Offshore a 10% interest in the Macondo Prospect site." *Id.* at ¶ 215. BP E&P and MOEX Offshore entered into the Macondo Prospect Offshore Deepwater Operating Agreement ("Operating Agreement"). *Id.* at ¶ 216.

BP E&P, Anadarko, and MOEX Offshore later "executed a 'Joinder' of the Operating Agreement" and, as alleged in the Master Local Government Complaint, at that point, "held the following working interest ownership percentages in the lease of the Macondo Prospect: BP E&P, 65%; MOEX Offshore, 10%; Anadarko E&P, 22.5%; and Anadarko [Petroleum

Corporation], 2.5%." *Id.* at ¶ 216.  The Local Government Complaint alleges certain rights and obligations of the parties to the Operating Agreement.  *See, e.g.*, *id.* at ¶¶ 251–54, 546.  The Local Government Plaintiffs acknowledge that Anadarko and MOEX Offshore are "non-operational leaseholders" pursuant to that agreement.  *Id.* at ¶ 251.

In contrast to the allegations against the Drilling Defendants, the Local Government Plaintiffs seek to hold MOEX Offshore liable for an alleged ability to access information from the *Deepwater Horizon* rig concerning aspects of BP's operations and to confer with BP.  *Id.* at ¶¶ 251-54, 455, 546.  They do not allege that MOEX Offshore had any ownership, contractual, or leasehold interest in the *Deepwater Horizon*.  Nor do they allege that MOEX Offshore had any operational involvement in, control of, or authority over the *Deepwater Horizon*, its crew, the drilling and temporary abandonment operations conducted at the Macondo Prospect, or the post-April 20, 2010 cleanup activities.  Finally, the Local Government Plaintiffs do not allege that MOEX Offshore manufactured or distributed any product used on the *Deepwater Horizon*.

## III.    ARGUMENT

### THE LOCAL GOVERNMENT PLAINTIFFS FAIL TO STATE ANY CLAIMS AGAINST MOEX OFFSHORE FOR WHICH RELIEF CAN BE GRANTED.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 555).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

(citing *Twombly*, 550 U.S. at 555); *see also Hershey v. Energy Transfer Partners, L.P.*, 610 F.3d 239, 245–46 (5th Cir. 2010) (same).

Rather, to state a claim for relief, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556).  If the factual allegations do not raise a right to relief "above the speculative level," *Twombly*, 550 U.S. at 555, or if the allegations reveal an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007), a claim must be dismissed.  In the latter circumstance, which applies here, the plaintiff "pleads himself out of court by 'admitting all the ingredients of an impenetrable defense.'"  *Barasich v. Shell Pipeline Co*., No. 05-4180, 2006 WL 3913403, at *2 (E.D. La. Nov. 20, 2006) (Barbier, J.) (internal citations omitted) (granting Rule 12(b)(6) dismissal in part).

### A.   The Local Government Plaintiffs' Maritime Negligence Claim Fails as a Matter of Law Because Maritime Law Is Displaced by OPA.

Like the Bundle B1 plaintiffs, the Local Government Plaintiffs attempt to invoke maritime negligence to recover "covered damages" under OPA.  Yet, as explained in the Non-Operating Defendants' Motion to Dismiss the Bundle B1 Master Complaint, OPA is the exclusive federal remedy for claimants seeking "covered damages" following an oil spill.  *See* Mem. of Law in Support of Mot. of Defendants Anadarko Petroleum Corp., Anadarko E&P Co. LP, MOEX Offshore 2007 LLC, and MOEX USA Corp. to Dismiss First Am. Mast. Compl., Cross-Claim, and Third-Party Compl. for Private Economic Losses in Accordance with PTO No. 11 [CMO No. 1] Section III (B1)["B1 Bundle"] Pursuant to Fed. R. Civ. P. 12(B)(6), at 10–12 (Doc. 1414-1) (hereinafter "Non-Operating Defendants' MTD Mast. B1 Compl.").

Courts uniformly hold that "Congress intended the OPA to be the exclusive federal law governing oil spills," displacing maritime causes of action, including requests for punitive

damages.  *South Port Marine, LLC v. Gulf Oil LP*, 234 F.3d 58, 65–66 (1st Cir. 2000).  "OPA clearly preempts maritime law as to recovery of cleanup expenses and the cost of compensating injured persons" from an oil spill.  *Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atl. Corp.*, 924 F. Supp 1436, 1447 (E.D. Va. 1996), *aff'd*, 122 F.3d 1062 (4th Cir. 1997); *see also Tanguis v. M/V Westchester*, 153 F. Supp. 2d 859, 867 (E.D. La. 2001) (holding that OPA "includes new remedies, which, in many respects, preempt traditional maritime remedies"); *Gabarick v. Laurin Mar. (Am.) Inc.*, 623 F. Supp. 2d 741, 750–51 (E.D. La. 2009) (holding that all general maritime law claims that are recoverable under OPA, and specifically those covered damages enumerated in 33 U.S.C. § 2702, are preempted by OPA).  OPA is the only possible recourse for these covered removal costs and damages.

The maritime negligence claim seeks damages covered by OPA.  The Master Local Government Complaint's allegations about damages and costs encompass property damage, loss of revenues, and costs associated with additional public services.  *See* Mast. Local Govt. Compl. at ¶ 585.  All are covered by OPA.  *See* 33 U.S.C. § 2702(b)(2) (listing "covered damages").  They also seek to recover removal costs, which also are covered by OPA.  *See* Mast. Local Govt. Compl. at ¶ 585; *see also* 33 U.S.C. § 2702(b)(1).

Accordingly, because OPA displaces maritime negligence claims for "covered damages" and removal costs arising out of oil pollution and because Plaintiffs seek only relief that OPA provides, the Local Government Plaintiffs' maritime negligence claim against MOEX Offshore must be dismissed.

**B.     The OPA Claim Against MOEX Offshore Fails for Lack of Presentment.**

OPA claims must be dismissed when plaintiffs do not allege compliance with the statute's presentment requirements.  *See* Non-Operating Defendants' MTD Mast. B1 Compl. at 12–15.  OPA requires that "<u>all claims</u> for removal costs or damages <u>shall</u> be presented first to the

responsible party . . . of the source designated under section [2714(a) of this title]."  33 U.S.C. § 2713(a) (emphasis added).  A claimant may elect to commence an action in court against a responsible party only after first presenting the claim, and only after the responsible party either denies liability or does not settle within 90 days.  33 U.S.C. § 2713(c).  Simply put, "the clear text of § 2713 creates a mandatory condition precedent barring all OPA claims <u>unless and until</u> a claimant has presented her claims . . . ."  *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.*, 51 F.3d 235, 240 (11th Cir. 1995) (emphasis added); *see also Gabarick v. Laurin Maritime (Am.) Inc.*, No. 08-4007, 2009 WL 102549, at *3 (E.D. La. Jan. 12, 2009); *Turner v. Murphy Oil USA, Inc.*, No. 05-4206, 2007 WL 4208986, at *2 (E.D. La. Nov. 21, 2007); *Marathon Pipe Line Co. v. LaRoche Indus. Inc.*, 944 F. Supp. 476, 477 (E.D. La. 1996); *Russo v. M/T Dubai Star*, No. C 09-05158 SI, 2010 WL 1753187, at *2–3 (N.D. Cal. Apr. 29, 2010).

The Master Local Government Complaint vaguely alleges that "[t]o the extent required by law, and/or by consent or stipulation by BP, Plaintiffs have satisfied, <u>or will have satisfied</u>, all of the administrative requirements of 33 U.S.C. §§ 2713(a) and (b), as to each and all defendants, by the submission of their claims to the Gulf Coast Claims Facility (the 'GCCF') and/or BP and/or its agents or designees."  Mast. Local Govt. Compl. at ¶ 668 (emphasis added).  On its face, that allegation fails; the failure to satisfy presentment requirements <u>before litigation</u> cannot be cured in the midst of litigation.  Because the requirement is mandatory and jurisdictional, and because the Local Government Plaintiffs have failed to comply with it, the OPA claim in the Master Local Government Complaint must be dismissed.

### C.    Claims for Removal Costs Under OPA Must be Dismissed.

The Master Local Government Complaint asserts that "[p]ursuant to Section 2702(b)(1) of the OPA, the Plaintiffs are entitled to all removal costs they have incurred, or will incur, as a result of the Spill."  Mast. Local Govt. Compl. at ¶ 664.  Putting aside for the moment the issue

of whether the Local Government Plaintiffs have properly presented their claims for such costs under OPA, *see supra* Section III(B), this conclusory allegation is insufficient to support a claim for removal costs under OPA.

First, OPA requires that a claimant actually have incurred removal costs prior to bringing suit.  Generally "an action may be commenced under this subchapter [oil pollution liability and compensation] for recovery of removal costs at any time <u>after such costs have been incurred</u>." 33 U.S.C. § 2717(f)(2) (emphasis added).  Courts have construed this same requirement in CERCLA, which allows for recovery of costs incurred in responding to releases of hazardous substances, as imposing an additional requirement on cost-recovery claims—that they be brought only after the claimant has actually incurred costs.  *See In re Dant & Russell, Inc.*, 951 F.2d 246, 249–50 (9th Cir. 1991).  The mere "formulaic recitation" that the Local Government Plaintiffs are entitled to recover removal costs "will not do.'" *Iqbal*, 129 S. Ct. at 1949.  There are simply no allegations of "removal costs" already incurred <u>by the Local Government Plaintiffs</u> in response to the oil spill.

Second, the Master Local Government Complaint fails to provide <u>any</u> factual allegations that costs related to any such responses were incurred consistent with the National Contingency Plan ("NCP").  OPA allows persons, which includes political subdivisions of a State, to recover removal costs "for acts taken by the person which are consistent with the National Contingency Plan." 33 U.S.C. § 2702(b)(1)(B).  Removal costs by the Local Government Plaintiffs are recoverable under OPA, therefore, only "if they are consistent with the National Contingency Plan." *Rice v. Harken Exploration Co.*, 250 F.3d 264, 267 n.1 (5th Cir. 2001) (citing 33 U.S.C. § 2702(b)(1)(B)).  "'The purpose of the Plan is to 'provide for efficient, coordinated, and effective action to minimize damage from oil and hazardous substance discharges . . . .'" *Id.* (quoting 33

U.S.C. § 1321(d)(2)).  Persons who take actions of their own accord may exacerbate or counter

the overall response plan (which here was conducted and overseen by the federal government).

Because the Local Government Plaintiffs have failed to assert any "removal costs" incurred as a

result of actions consistent with the NCP, their OPA claim for removal costs must be dismissed.

>   **D.      The Local Government Plaintiffs Fail to State a Claim for Maritime
>           Negligence in Any Event.**

The Master Local Government Complaint alleges no facts that, even if taken as true,

would establish that MOEX Offshore is liable for negligence under maritime law.  "To establish

maritime negligence, a plaintiff must 'demonstrate that there was a duty owed by the defendant

to the plaintiff, breach of that duty, injury sustained by [the] plaintiff, and a causal connection

between the defendant's conduct and the plaintiff's injury.'"  *Canal Barge Co. v. Torco Oil Co*.,

220 F.3d 370, 376 (5th Cir. 2000) (quoting *In re Cooper/T. Smith*, 929 F.2d 1073, 1077 (5th Cir.

1991)).  The allegations make clear that, as a matter of law, MOEX Offshore is not liable for the

Local Government Plaintiffs' alleged injuries.  Thus, their maritime negligence claim must be

dismissed.

>   **1.      MOEX Offshore did not have operational control over any of the
>           activities that allegedly caused the Plaintiffs harm.**

The Master Local Government Complaint does not allege that MOEX Offshore had a

right to control the operations of BP or any other defendant, which is fatal to the maritime

negligence claim.  Only entities with operational control have a duty to prevent harm from oil

and gas operations.  *See, e.g.*, *Ainsworth v. Shell Offshore, Inc*., 829 F.2d 548, 550 (5th Cir.

1987), *cert. denied*, 485 U.S. 1034 (1988).  A principal neither assumes nor owes any duty to

protect others from the negligence of an independent contractor.  *Thomas v. Burlington Res. Oil*

*& Gas Co.*, No. Civ. A. 99-3904, 2000 WL 1528082, at *2 (E.D. La. Oct. 13, 2000) (Barbier, J.);

*Ronquille v. MMR Offshore Servs., Inc.*, 353 F. Supp. 2d 680, 682 (E.D. La. 2004) (the presence

of a company representative on an oil platform with knowledge of the rig's operations "is insufficient to create a duty; therefore, the law does not support the imposition of liability for any failure to intercede"); *see also* Non-Operating Defendants' MTD Mast. B1 Compl. at 18–20. The Master Local Government Complaint alleges that MOEX Offshore is or was, at most, a minority non-operational leaseholder of the Macondo Prospect that entered into an operating agreement with BP.  *See* Mast. Local Govt. Compl. at ¶¶ 216, 251.  Put simply, the Local Government Plaintiffs do not, and cannot, allege that MOEX Offshore had direct supervision or control over the activities aboard the *Deepwater Horizon* to support such liability.

The allegations instead show that MOEX Offshore <u>lacked</u> the requisite operational control.  The Complaint alleges that BP was the "designated operator" and "lease operator" for the Macondo Prospect lease and "responsible for assessing the geology of the prospect site, engineering the well design, obtaining regulatory approvals for well operations, and retaining and overseeing the contractors" working on well construction and drilling operations.  Mast. Local Govt. Compl. at ¶¶ 179, 188.

Moreover, the Macondo Prospect Offshore Deepwater Operating Agreement ("Operating Agreement"), on which the Master Local Government Complaint extensively relies, shows that BP is an independent contractor with sole authority to conduct operations on the leased property.[8]  The Operating Agreement confirms that "BP Exploration & Production Inc." is designated as the "Operator."  Ex. A at 14.  As Operator, BP "has the <u>exclusive right</u> and duty to

---

[8]        The Operating Agreement is attached as Exhibit A to the Non-Operating Defendants' MTD Mast. B1 Compl.  For convenience, the relevant sections of the Operating Agreement are attached hereto as Exhibit A.  The Master Local Government Complaint repeatedly discusses the Operating Agreement, and the contractual rights and obligations of MOEX Offshore are central to Plaintiffs' claims against it.  *See, e.g.*, Mast. Local Govt. Compl. at ¶¶ 216, 250.  As such, the Court may consider it in ruling on this motion to dismiss.  *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Kane Enters. v. MacGregor USA Inc.*, 322 F.3d 371, 374 (5th Cir. 2003).

conduct (or cause to be conducted) <u>all activities or operations</u> under this Agreement." *Id.* at 20 (emphasis added).   In performing services under the agreement,   BP is an "<u>independent contractor, not subject to the control or direction of Non-Operating Parties</u> . . . ." *Id.* (emphasis added).   Thus, the Local Government Plaintiffs' contention that MOEX Offshore owed any duty to Plaintiffs or had a duty to intercede in BP's or its contractors' operations fails.[9]   MOEX Offshore simply did not have the operational control required to establish maritime negligence. *See Guillory v. Conoco, Inc.*, 521 So.2d 1220, 1223 (La. App. 3d Cir.), *writ denied*, 526 So.2d 801 (La. 1988); *Grammer v. Patterson Servs., Inc.*, 860 F.2d 639, 644 (5th Cir. 1988), *cert. denied*, 491 U.S. 906 (1989).

Mere possession of a non-operational interest in a lease is inadequate to give rise to a duty to third parties such as the Local Government Plaintiffs, to show that MOEX Offshore breached any duty, or to show that MOEX Offshore caused the alleged injuries.   Indeed, the allegation that the Non-Operating Defendants are "non-operational leaseholders" negates any inference that they conducted the operations that caused the Local Government Plaintiffs harm. The marked absence of allegations about MOEX Offshore's conduct contrasts sharply with the extensive allegations about the Drilling Defendants' conduct.   *See* Mast. Local Govt. Compl. at

---

[9]   The Master Local Government Complaint does not allege that MOEX Offshore is vicariously liable as a principal of or joint venture partner with BP, and does not plead a vicarious liability theory against MOEX Offshore.   In any event, the Complaint's allegations and the Operating Agreement establish that MOEX Offshore is not vicariously liable for any actions or omissions by BP, because MOEX Offshore is not alleged to have (and does not have) any right to control BP's operations.   *See, e.g.*, *Transcon. Gas Pipe Line Corp. v. Mobile Drilling Barge or Vessel Mr. Charlie*, 294 F. Supp. 1025, 1031 (E.D. La. 1968) (no indirect liability under maritime law for non-operating co-owners of oil and gas lease where designated operator, but not non-operators, was negligent), *aff'd in relevant part and rev'd in part on other grounds*, 424 F.2d 684 (5th Cir.), *cert. denied*, 400 U.S. 832 (1970); *Bolivar v. R & H Oil and Gas Co.*, 789 F. Supp. 1374, 1381–82 (S.D. Miss. 1991) (collecting cases for proposition that non-operating investor who has no right to control oil and gas operations may not be held vicariously liable as joint venturer).

¶¶ 227–49, 255–454.  Because MOEX Offshore did not conduct or control any of the operations that allegedly caused the Local Government Plaintiffs harm, they are not liable as a matter of law.

> **2.**   **Allegations about MOEX Offshore's rights under the Operating Agreement are insufficient as a matter of law to establish liability for maritime negligence.**

Despite recognizing that BP was the sole Operator under the Operating Agreement, the Local Government Plaintiffs refer to certain rights that MOEX Offshore allegedly had under the Operating Agreement.  These alleged rights include rights to conduct inspections of the *Deepwater Horizon*, to receive and access information, to suggest proposed well plans, and to have meetings with BP.  *See* Mast. Local Govt. Compl. at ¶¶ 251–54, 546.  Assuming these allegations are true, the Local Government Plaintiffs' maritime negligence claim still fails as a matter of law because none of the alleged rights are rights of operational control.

The so-called "series of checks and balances" provided under the Operating Agreement, Mast. Local Govt. Compl. at ¶ 251, are merely rights granted to MOEX Offshore to monitor the operations conducted by BP and its contractors, not to exercise authority over operations or control activities.  *See Thibodeaux v. Vamos Oil & Gas Co.*, No. Civ. A. 03-1883, 2005 WL 3019773, at *1 (W.D. La. Nov. 10, 2005) (The "reservation of the right to monitor contractor safety does not give rise to operational control so as to make the principal liable for the contractor's actions") (citations omitted); *Landry v. Huthnance Drilling Co.*, 889 F.2d 1469, 1471 (5th Cir. 1989) (holding under the general maritime law that "'a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations or deviations'" is "'not enough'" to give rise to liability) (quoting RESTATEMENT (SECOND) OF TORTS § 414 cmt. c (1965)); *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 193 (5th Cir. 1991)

(applying Louisiana law) ("The fact that a principal takes an active interest in the safety of the employees of its independent contractor does not, in and of itself, constitute direct operational control" and therefore does not lead to any liability of the principal); *see also* Non-Operating Defendants' MTD Mast. B1 Compl. at 21–26.

The Master Local Government Complaint alleges that "Anadarko, Anadarko E&P, and MOEX had access to Halliburton/Sperry Sun INSITE real time feed data that was transmitted from the Deepwater Horizon on April 20, 2010.  As such, they knew or should have known of the presence of hydrocarbons in the well on the evening of April 20, 2010 . . . ."  Mast. Local Govt. Compl. at ¶ 546.  Based on this access, the Complaint contends that "they owed a duty to Plaintiffs to warn of the impending disaster in sufficient time to avert it," and failed to meet that duty by "failing to warn the drilling vessel crew of the imminent blowout so that they could take evasive action."  *Id.*  But the Master Local Government Complaint does not, and cannot, explain how access by MOEX Offshore to data—even in real time—can give rise to liability or a duty to warn the *Deepwater Horizon* crew.[10]

The conclusory allegations that MOEX Offshore "knew or should have known" how to interpret "real time feed data" and breached its alleged duties to provide timely warning to the *Deepwater Horizon* crew are not only unsupported by factual allegations, they are patently implausible.  *Id.*  Regardless, an allegation of mere access to information is insufficient to establish that off-rig observers, without knowledge of contemporaneous operations on a rig,

---

[10]   The Master Local Government Complaint also makes the vague and unsupported allegation that unidentified engineers offered BP unspecified advice on a procedure to stop the well blowout, which BP "chose to ignore" after "conferring" with the Non-Operating Defendants.  Mast. Local Govt. Compl. at ¶ 455.  But the Complaint lacks any allegations about the nature or timing of the advice, or how it could support a claim for negligence against MOEX Offshore absent the authority to control.  At most, the allegation is merely another assertion that MOEX Offshore had access to certain information about BP's operations.

could have interpreted the available data and concluded that hydrocarbons had entered the well.[11] The Master Local Government Complaint also does not assert, even if MOEX Offshore were monitoring the data (which itself is not alleged), that the information available was sufficient to have allowed any of MOEX Offshore's off-rig personnel to conclude that a blowout was imminent.  Nor is there an allegation that MOEX Offshore even had the ability to contact those aboard the rig.  Critically, however, the Complaint does not allege that MOEX Offshore had authority to direct the crew of the *Deepwater Horizon* to "take evasive action."

The allegations are insufficient to establish maritime negligence as a matter of law. Based upon alleged access to information, the Local Government Plaintiffs attempt to impose on MOEX Offshore a duty to intercede in the operations of an independent contractor (BP) and unrelated parties (Transocean and Halliburton) over whom MOEX Offshore is not alleged to have any right, authority, or ability to control.  That notion contravenes settled law.  Controlling law in this Circuit, and the general rule in oil and gas tort cases, is that where, as here, a principal contracts with an independent contractor to conduct oil and gas operations but retains no operational control, the principal neither assumes nor owes any duty to protect others from hazards caused by the contractor.  *See Ronquille*, 353 F. Supp. 2d at 682 (holding that no duty existed where principal did not direct or perform the activities) (citation omitted); *Thomas*, 2000 WL 1528082, at *1–2 (holding that an independent contractor's injured employee was not owed a duty by the principal where the contractor created the hazard) (citations omitted); *Martin v. Pride Offshore Co., Inc.*, No. Civ. A. 97-3754, 1999 WL 4921, at *3 (E.D. La. Jan. 6, 1999), *aff'd*, 198 F.3d 241 (5th Cir. 1999) ("A principal has operational control over an independent

---

[11]     Indeed, the crew on the *Deepwater Horizon* undoubtedly was aware of the same information allegedly available to MOEX Offshore and, unlike MOEX Offshore, was also present during the events occurring aboard the *Deepwater Horizon*.

contractor when the principal retains the right of supervision such that 'the contractor is not entirely free to do the work his own way'") (quoting *McCormack v. Noble Drilling Co.*, 608 F.2d 169, 175 n.9 (5th Cir. 1979)) (other citations omitted); *see also* Non-Operating Defendants' Motion to Dismiss Mast. Compl. B1 at 25–26.

Without operational control, "[a] principal has no duty . . . to intercede when an independent contractor's actions have created a dangerous situation." *Rogers v. Shell Oil Co.*, No. 92-1040, 1993 WL 30052, at *2 (E.D. La. Feb. 3, 1993) (citing *Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548 (5th Cir. 1987)). Thus, the Local Government Plaintiffs' allegations that the MOEX Offshore "knew or should have known" that hydrocarbons had entered the well are insufficient as a matter of law to state a claim for negligence. Accordingly, the general maritime negligence claim against MOEX Offshore must be dismissed.

### 3. Local Government Plaintiffs cannot recover economic losses without alleging physical injury to a proprietary interest.

Although the Master Local Government Complaint asserts, with no specificity, that "[s]ome Plaintiffs own or lease real property, and have suffered the loss, destruction, and/or diminution in value of their property as a result of the Spill," it is clear that the Master Local Government Complaint seeks recovery for economic losses without physical injury to a proprietary interest. *See* Mast. Local Govt. Compl. at ¶¶ 115, 511–512, 514.[12] That claim must

---

[12] For example, several local government entities joining the Master Local Government Complaint do not assert any damages to property. *See, e.g.*, City of Greenville, No. 2:10-cv-09999-CJB-SS (Doc. 2); City of Georgiana, No. 2:10-cv-09999-CJB-SS (Doc. 3); School Bd. of Polk County, Fl. (Doc. 17); School Bd. of Santa Rosa County, Fl., No. 2:10-cv-09999-CJB-SS (Doc. 56); Gravity Drainage District #5 (Doc. 86); Leon County, Fl., No. 2:10-cv-09999-CJB-SS (Doc. 101). These short forms do not allege under which Count they are seeking damages. Other local government entities seek to assert property damages based on property owned "as yet to be identified." *See, e.g.*, St. Bernard Parish Law Enforcement District (Sheriff's Office), No. 2:10-cv-09999-CJB-SS (Doc. 35); Terrebone Parish Fire Protection No. 6, No. 2:10-cv-09999-CJB-SS (Doc. 76).

fail.  "It is unmistakable that the law of this circuit does not allow recovery of purely economic claims absent physical injury to a proprietary interest in a maritime negligence suit."  *In re Taira Lynn Marine Ltd. No. 5 LLC*, 444 F.3d 371, 377 (5th Cir. 2006); *see also IMTT-Gretna v. Robert E. Lee S.S.*, 993 F.2d 1193, 1195 (5th Cir. 1993); *Dunham-Price Group, LLC v. Citgo Petroleum Corp.*, No. 2:07CV1019, 2010 WL 1285446, at *3 (W.D. La. Mar. 31, 2010); *cf. Miller Indus. v. Caterpillar Tractor Co.*, 733 F.2d 813, 818–19 (11th Cir. 1984) (quoting *Louisville & Nashville R.R. Co. v. M/V BYULACOMBE*, 597 F.2d 469, 472 (5th Cir. 1979) ("'Whatever the wisdom of the traditional rule of non-liability for negligent acts causing economic loss, *Robins* reflects the state of law in this circuit'")) (other citations omitted).  The economic loss rule is a "bright line" rule, without exceptions based upon foreseeability or any other particularized concern.  *Louisiana ex rel. Guste v. M/V TESTBANK*, 752 F.2d 1019, 1032 (5th Cir. 1985) (en banc) ("Denying recovery for pure economic losses is a pragmatic limitation on the doctrine of foreseeability, a limitation we find to be both workable and useful").  The Master Local Government Complaint fails to allege that each Local Government Plaintiff has suffered "physical injury to a proprietary interest," which is a "prerequisite to recovery of economic damages in cases of unintentional maritime tort."  *In re Taira Lynn*, 444 F.3d at 379 (internal citation and quotation marks omitted).  Thus, the general maritime negligence claims also must be dismissed on these grounds.

> **E.  The State Law Claims Must be Dismissed Because Federal Law Applies Exclusively.**

Several claims in the Master Local Government Complaint rely upon state law.  The members of the Louisiana Subclass assert a claim under LOSPRA, LA. REV. STAT. ANN. § 30:2451, *et seq.*, and under the Wildlife and Fisheries Statute, LA. REV. STAT. ANN. § 56:40.1, *et seq.* (Claim III.F).  The members of the Texas Subclass assert a claim under the Texas Oil

Spill Prevention and Response Act of 1991, TEX. NAT. RES. CODE ANN. § 40.001, *et seq.* (Claim III.G). Pursuant to OCSLA, however, federal law alone applies to claims arising out of and in connection with oil exploration, development, and extraction operations on the Outer Continental Shelf ("OCS"). Although federal law may sometimes borrow state law as surrogate federal law in OCS cases, it does not do so here because OPA is the applicable federal law. The Local Government Plaintiffs can assert their claims for removal costs and damages <u>only</u> under OPA. Because the state law claims are based on substantive law that does not apply, the claims must be dismissed.[13]

### 1. OCSLA requires the exclusive application of OPA to claims for damages and costs arising from oil spills originating on the OCS.

This case arises out of, and in connection with, operations involving the exploration and production of oil from the subsoil and seabed of the OCS.[14] *See* 43 U.S.C. § 1349(b)(1)(A) (granting U.S. district courts jurisdiction of cases "arising out of, or in connection with . . . any operation conducted on the outer Continental Shelf . . ."). As discussed in the Non-Operating Defendants' MTD Mast. B1 Compl. at 28–36, which is incorporated by reference, and as this

---

[13]    The members of the Florida Subclass purport to assert a claim pursuant to the Florida Pollutant Discharge Prevention and Control Act ("FPDPCA"), FLA. STAT. § 376.011, *et seq.* (Claim III.E). Although the claim is nominally asserted against only BP and Transocean, the Master Local Government Complaint makes allegations against "MOEX" within this Count. *See* Mast. Local Govt. Compl. at ¶¶ 712, 716 (asserting that Anadarko and MOEX "had a statutory duty to Florida Subclass Members" and qualify as "Responsible Parties" under the statute). MOEX Offshore reads this count as being against only the named Defendants: BP and Transocean. Nonetheless, to the extent that the Master Local Government Complaint seeks to allege a claim under the FPDPCA against MOEX Offshore, MOEX Offshore incorporates by reference the arguments made in the Non-Operating Defendants' MTD Mast. B1 Compl. at 28–36.

[14]    The Master Local Government Complaint alleges that the events giving rise to the claims occurred in an area 48 miles off the coast of Louisiana, which is indisputably on the OCS. *See* Mast. Local Govt. Compl. at ¶¶ 164, 241. The OCS is "all submerged lands lying seaward and outside" the territorial jurisdiction of the States, "and of which the subsoil and seabed appertain to the United States and are subject to its jurisdiction and control . . . ." 43 U.S.C. § 1331(a).

court has already held, this case arises under OCSLA.  Order Denying State of Louisiana's Motion to Remand, Case Nos. 10-1757; 10-1758; 10-1760; 10-2087 (E.D. La. Oct. 6, 2010) (Doc. 471); *see also Texaco Exploration & Prod., Inc. v. AmClyde Engineered Prods. Co.*, 448 F.3d 760, 774 (5th Cir. 2006) (finding OCSLA confers federal jurisdiction and provides choice-of-law rules over controversies "inextricably linked" to resource exploration and development on the OCS).  OCSLA's mandatory choice-of-law rules, 43 U.S.C. § 1333(a), make clear that federal law alone applies to claims arising on the OCS and out of OCS mineral extraction operations.  Non-Operating Defendants' MTD Mast. B1 Compl. at 28–36.  The Master Local Government Complaint alleges exactly that when it alleges that operations conducted on the *Deepwater Horizon*, while it was temporarily attached to the OCS seabed, caused the spillage of the oil resulting in the alleged harms.

State law may be adopted as applicable law in OCSLA cases only under limited circumstances not present here.  But it can apply only when the case involves a situs identified under Section 1333(a)(2) of OCSLA, and then only as surrogate federal law to fill in gaps in federal law.  Neither condition applies here.

As the Non-Operating Defendants explain in their reply brief in support of their motion to dismiss the B1 and B3 Master Complaints, Section 1333(a)(2) does not permit the application of state law as surrogate federal law for an incident involving the *Deepwater Horizon*, because it was only <u>temporarily</u> attached to the OCS during the relevant events.  Reply to PSC Omnibus Oppositions to Mot. to Dismiss Mast. Compl. B1 and B3 at 6–7.  Accordingly, under Section 1331(a)(1), only federal statutory and maritime law applies, unsupplemented by state law.  As shown above, OPA is the comprehensive federal law for oil pollution cases that would otherwise

be governed by maritime law. OPA is thus the only recourse for the Local Government Plaintiffs.

In any event, owing to OPA's comprehensiveness relating to oil spill damages, there is no possible gap for state law to fill. The Local Government Plaintiffs, in fact, bring claims that duplicate OPA and that seek relief essentially identical to that which they can obtain through OPA. Their FPDPCA, LOSPRA, and TOSPRA allegations essentially replicate their OPA allegations. In their OPA and state statutory claims, the Local Government Plaintiffs seek to recover purported removal costs, damages to real and personal property, loss of tax revenue, and costs of providing additional public services. *Compare* Mast. Local Govt. Compl. at ¶¶ 664–67 (OPA claim) *with* ¶¶ 721, 724 (FPDPCA claim), ¶¶ 729, 732–33 (LOSPRA claim), *and* ¶¶ 742–45 (TOSPRA claim). In addition, the statutory causes of action track each other closely. *Compare* FLA. STAT. §§ 376.205, 376.121 (2010); LA. REV. STAT. ANN. §§ 30:2454; 30:2482 (2010); *and* TEX. NAT. RES. CODE ANN. §§ 40.003, 40.202 (2010); *with* 33 U.S.C. §§ 2702(a), (b)(2). As such, the state law claims must be dismissed.

### 2. Federal law preempts applying an affected state's law to interstate oil pollution originating from the OCS.

OCSLA commands that only federal law applies to oil spills originating from the OCS. Ordinary principles of conflict preemption require the same result. The state law claims against MOEX Offshore attempt to invoke the law of affected states—*i.e.*, states allegedly harmed by the oil spill. But federal law preempts applying an affected state's law to claims arising out of oil spills originating from OCS sources, far outside the reach of any state's jurisdiction.

The Supreme Court has never allowed an affected state to apply its law to interstate pollution originating from outside the state's territory. "[R]egulation of interstate water pollution is a matter of federal, not state, law . . . ." *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 488 (1987).

Applying the law of an affected state to pollution originating in another state would seriously undermine, and stand as an obstacle to the full implementation of, the methods by which the Clean Water Act regulates interstate water pollution. *Id.* at 494–97. Thus, the Supreme Court held that the Clean Water Act, in light of its text, purposes, and history, and <u>notwithstanding its savings clause</u>, does not "preserve the right to bring suit under the law of any affected State." *Id.* at 493.

The justification for applying only federal law to interstate pollution is even stronger in this case, which involves pollution originating from a federal enclave: the OCS. Applying the law of affected states to claims arising out of an oil spill emanating from the OCS would frustrate several federal statutes that regulate OCS mineral extraction operations for their actual and potential environmental consequences. Through OCSLA and the Coastal Zone Management Act ("CZMA"), 16 U.S.C. §§ 1451–1464, the federal government extensively regulates exploration and drilling operations on the OCS for their environmental impacts. *See Mobil Oil Exploration & Producing SE, Inc. v. United States*, 530 U.S. 604, 609-10 (2000) (summarizing the four pillars of the comprehensive regime). Applying the law of affected states to discharges from OCS operations would circumvent this careful scheme, which specifically assigns a largely advisory role to affected states: "The inevitable result of" applying an affected state's law "would be that . . . States could do indirectly what they could not do directly—regulate the conduct of" OCS operations. *Ouellette*, 479 U.S. at 495. Applying the law of an affected state also would "undermine the important goals of efficiency and predictability," because "application of numerous States' laws would only exacerbate the vagueness and resulting uncertainty." *Id.* at 496. The same holds true for oil pollution covered under the Clean Water Act and OPA, and for activities regulated by OCSLA.

The savings clause in OPA, 33 U.S.C. § 2718, does not preserve the Local Government Plaintiffs' right to seek recovery under state law. A savings clause does not save state law that conflicts with federal law. *Oullette*, 479 U.S. at 493; *see also Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 869–74 (2000) (citation omitted); *cf. Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 230 (1986) ("[I]t is hardly conceivable that Congress," through a mere savings clause, "could have intended that these diverse state statutes could be applied to remedy maritime torts occurring the world over"). OPA's savings clause, moreover, is textually limited to OPA itself and cannot save state law that conflicts with other federal laws like OCSLA, CZMA, or the Clean Water Act. No other savings clause would help the Local Government Plaintiffs, either. For instance, although the Supreme Court ultimately held that the Clean Water Act's savings clause preserves claims brought under the law of a <u>source state</u>, *Oullette*, 479 U.S. at 497–500, the preservation of source state law is inapplicable here because the oil that allegedly harmed the Local Government Plaintiffs was not discharged from a state, but from a federal enclave on the OCS where federal law applies exclusively. Thus, in this instance, regardless of where the injury occurs state law is preempted by federal law.

**F.    Even if State Law Could be Adopted under the OCSLA Choice of Law, Individual State Law Claims Against MOEX Offshore Nonetheless Fail and Must Be Dismissed.**

Even assuming state law could be adopted in this case, it would not be the law of Texas or Florida, because Louisiana is the "adjacent state" whose law would apply as surrogate federal law in OCSLA cases. *See* 43 U.S.C. § 1333(a)(2)(A); *see also Snyder Oil Corp. v. Samedan Oil Corp.*, 208 F.3d 521, 522 (5th Cir. 2000).[15] And even *if* Louisiana law was adopted here, the claims still must be dismissed.

---

[15]    As described above, state law claims under Texas, Florida and Louisiana law fail because federal law exclusively applies in this case. The claims under Florida and Texas law also must

1.      **The Master Local Government Complaint fails to allege sufficient facts to support the claims under Louisiana law.**

Federal Rule of Civil Procedure 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  To state a claim for relief, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.  General, undifferentiated allegations fail to satisfy the notice pleading requirement of Rule 8, and require dismissal for that reason alone.  *See Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (dismissing complaint where there was no differentiation between defendants, geographic and temporal realities made complaint factually impossible, and all defendants were named in each count); *Pro Image Installers, Inc. v. Dillon*, No. 3:08CV273/MCR/MD, 2009 WL 112953, at *2 (N.D. Fla. Jan. 15, 2009) (dismissing complaint where claims were alleged against multiple defendants with very little in each count to distinguish between the separate defendants); *Lane v. Capital Acquisitions & Mgmt. Co.*, No. 04-60602CIV, 2006 WL 4590705, at *5 (S.D. Fla. Apr. 14, 2006) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, the Lane's Complaint fails to satisfy the minimum standard of Rule 8.").

With respect to the state law claims, the Master Local Government Complaint is replete with conclusory allegations merely asserting the elements of liability under each statute and against each "Defendant" without referring to any particular entity or alleging any facts.  *See, e.g.*, Mast. Local Govt. Compl. ¶¶ 731, 735, 741.  Hiding behind the catchall term "Defendants"

---

be dismissed because (a) the Master Local Government Complaint does not name MOEX Offshore as a defendant under the FPDPCA claim, *see, supra* n.13, and (b) TOSPRA does not provide a private right of action, TEX. NAT. RES. CODE ANN. §§ 40.159, 40.153, 40.161, 40.251.

does "not provide fair notice to each Defendant of their alleged wrongdoing or role in the alleged wrongdoing," a key goal of Rule 8. *Pierson v. Orlando Reg'l Healthcare Sys., Inc.*, No. 6:08-cv-466-Orl-28GJK, 2009 WL 2151176, at *1 (M.D. Fla. July 13, 2009).

The Master Local Government Complaint alleges claims under LOSPRA for property damages, economic losses related thereto, and costs of public services, as well as under the Wildlife and Fisheries statute for essentially natural resource damages.  Mast. Local Govt. Compl. at ¶¶ 727–37.  But it makes mere conclusory allegations in support of each claim.  After outlining the purported legal requirements of establishing a claim, the Master Local Government Complaint merely asserts that "Defendants qualify as responsible parties under the LOSPRA because they each caused, allowed, or permitted an unauthorized discharge of oil into the coastal waters of the State of Louisiana."[16]  Mast. Local Govt. Compl. at ¶ 731.  It also contends that "[a]s a result of the Spill, Defendants are also each liable for the killing of fish, wild birds, wild quadrupeds, and other wildlife and aquatic life . . . ."  *Id.* at ¶ 735.  Those allegations are inadequate as a matter of law.  Proper pleading "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555); *see also Hershey*, 610 F.3d at 245–46 (same).  As there are no factual allegations to support each element of these claims against MOEX Offshore, on these grounds alone, the claims under Louisiana law must be dismissed.

---

[16]     The Master Local Government Complaint does not seek to hold any of the defendants liable as an "owner or operator of a vessel or terminal facility."  Mast. Local Govt. Compl. at ¶ 730.

2.      **The Master Local Government Complaint fails to state a claim under LOSPRA.**

The Master Local Government Complaint asserts a claim for property damages, economic losses related thereto, and the cost of public services under LOSPRA.[17]   The Complaint contains only conclusory allegations in support of the claim, *i.e.*, that "Defendants qualify as responsible parties under the LOSPRA because they each caused, allowed, or permitted an unauthorized discharge of oil into the coastal waters of the State of Louisiana." Mast. Local Govt. Compl. at ¶ 731.   The Complaint also fails to make necessary allegations about causation.   It alleges certain other facts and repeatedly refers to the Operating Agreement, which only confirms MOEX Offshore could not have intervened to prevent the spill.   As a result, the LOSPRA claim must be dismissed.

Although LOSPRA does not define "cause," "allow," or "permit," as those terms are used in the definition of "responsible party," even the common definitions of those words most favorable to the Louisiana plaintiffs demonstrate that a responsible party must, at a minimum, be in a position to <u>intervene</u> to prevent the unauthorized discharge.[18]   Based on the allegations in the Master Local Government Complaint, it appears that the Local Government Plaintiffs allege that

---

[17]     Damages resulting from harm to property are only "recoverable by a person who owns or leases that property."   LA. REV. STAT. ANN. § 30:2454(5)(b).   The Master Local Government Complaint is wholly lacking in specific factual allegations concerning damages to property actually owned or leased by any Plaintiff, which is a prerequisite to recovering such damages under this section.   Damages for costs of public services are only "recoverable by the state of Louisiana or any of its political subdivisions."   LA. REV. STAT. ANN. § 30:2454(5)(d).   No other damages are recoverable by local government entities under LOSPRA.

[18]     *See* "Allow," Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/allow (last visited Mar. 28, 2011) ("to forbear or neglect to restrain or prevent"); "Permit," Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/permit (last visited Mar. 28, 2011) ("to make possible"); "Cause," Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/cause (last visited Apr. 7, 2011) ("to serve as a cause or occasion of").

MOEX Offshore was legally in a position to intervene based on its purported rights to access and information pursuant to the Operating Agreement.  *See* Mast. Local Govt. Compl. at ¶¶ 251–54, 546.  But, as discussed above, BP was an independent contractor in charge of conducting the oil and gas operations at the Macondo Prospect, and the general rule is that the principal neither assumes nor owes any duty to protect others from hazards caused by a contractor.  *See* Section III(D)(2)*, supra*.  Furthermore, the Master Local Government Complaint does <u>not</u> allege that MOEX Offshore had any operational control of or supervisory authority over the *Deepwater Horizon*, drilling operations, or BP's cleanup activities.  The allegations assert only that MOEX Offshore was, at most, a minority, non-operational leaseholder of the Macondo Prospect.  *See* Mast. Local Govt. Compl. at ¶¶ 216, 251.  Thus, even if it had certain rights as a non-operator under the Operating Agreement, MOEX Offshore was not legally in a position to intervene in BP's operational activities.

MOEX Offshore also was not in a <u>practical</u> position to intervene.  The Master Local Government Complaint alleges only that MOEX Offshore had some access rights and rights to certain information.  *See* Mast. Local Govt. Compl. at ¶¶ 251–54, 546.  But access to information—even a real-time data feed—cannot give rise to liability or a duty to warn.  *See* Section III(D)(2)*, supra*.  Based on the Complaint's allegations, only BP and its contractors could possibly have been in a position, legally or practically, to "cause," "allow," or "permit" any unauthorized discharge to occur. [19]

---

[19]     Although making no specific allegation that MOEX Offshore is liable under LOSPRA as an owner, *see* Mast. Local Govt. Compl. at ¶ 729, LOSPRA imposes ownership liability only on the owner of a "vessel" or "terminal facility."  *See id.* at ¶ 730; *see also* La. Rev. Stat. Ann. § 30:2454(22) (defining a "responsible party" as "[t]he owner or operator of a vessel or terminal facility from which an unauthorized discharge of oil emanates . . . .").  In any event, the Master Local Government Complaint does not allege that MOEX Offshore owned a vessel or terminal facility, but merely held a leasehold interest in the Macondo Prospect.  The Local Government

3.    **LOSPRA preempts the Parish District Attorneys' claims under the Wildlife & Fisheries Statute, and further provides that OPA applies to claims under Louisiana law.**

Even assuming Louisiana law could be adopted, LOSPRA preempts all other state law claims related to oil spill liability.  The Master Local Government Complaint purports to assert claims by Parish District Attorneys to recover penalties for the unlawful killing or injury of fish, wild birds, wild quadrupeds, and other wildlife and aquatic life as a result of the conduct of each Defendant.  Mast. Local Govt. Compl. at ¶¶ 735–37.  But these claims are allowed under the Wildlife and Fisheries statute, LA. REV. STAT. ANN. §§ 56:40.1, *et seq.*, not under LOSPRA.  As such, they are preempted by LOSPRA, and, moreover, governed by OPA.

LOSPRA expressly provides that it is "exclusive and shall supersede <u>any other liability</u> provisions provided by any other applicable state law."  LA. REV. STAT. ANN. § 30:2491(A) (emphasis added); *see also* LA. REV. STAT. ANN. § 30:2496 ("The provisions of this Chapter shall be the exclusive authority on oil spill prevention, response, removal, and limitations of liability").  LOSPRA further provides that the provisions of that Chapter "shall supersede, but not repeal, <u>any</u> conflicting laws of this state."  LA. REV. STAT. ANN. § 30:2491 (emphasis added).  Thus, the state preemptive effect of LOSPRA is comprehensive and bars all other state law claims, whether for damages or civil penalties.  The only exception to this broad preemption is that penalties may still be sought by the Louisiana Department of Wildlife & Fisheries under the Wildlife and Fisheries statute (LA. REV. STAT. ANN. §§ 56:40.1, *et seq.*).  LA. REV. STAT. ANN. § 30:2491(B).  LOSPRA, then, allows only the Louisiana Department of Wildlife & Fisheries to

Plaintiffs cannot base their LOSPRA claim against MOEX Offshore on alleged prior or existing interests in the Macondo Prospect lease, because LOSPRA does not impose liability on mere lessees.  *See* LA. REV. STAT. ANN. § 30:2454(22); *see also Int'l Paper Co., Inc. v. Hilton*, 966 So. 2d 545, 558–59 (La. 2007) ("[T]he settled doctrine of statutory construction . . . dictates that when the legislature specifically enumerates a series of things, the legislature's omission of other items . . . is deemed intentional") (internal citations and quotation marks omitted).

engage in enforcement of the Wildlife and Fisheries statute with respect to oil spills.[20]  LA. REV. STAT. ANN. § 30:2491(B).

In addition, the alleged "penalties" being sought in the Master Local Government Complaint by the Parish District Attorneys are essentially claims for natural resources damages. The penalties requested equate to the value of each fish, wild bird, wild quadruped, and other wildlife and aquatic life unlawfully killed or injured.  Mast. Local Govt. Compl. at ¶¶ 735–37. Natural resources damages under LOSPRA include "damages for injury to, destruction of, or loss of natural resources," which includes "all . . . fish, shellfish, fowl, wildlife . . . ."  LA. REV. STAT. ANN. §§ 30:2454(5)(a), (17) (emphasis added).  LOSPRA provides that natural resources damages are only recoverable by the State of Louisiana.  LA. REV. STAT. ANN. § 30:2454(5)(a). Thus, LOSPRA makes clear that any claims by Parish District Attorneys under LA. REV. STAT. ANN. §§ 56:40.1, et seq., again are superseded and barred by LOPRSA.  These claims, therefore, must be dismissed.

Moreover, LOSPRA provides that "[a]ny conflicting applicable federal statute shall take precedence over this Chapter."  LA. REV. STAT. ANN. § 30:2491(A); see also LA. REV. STAT. ANN. § 30:2453 ("The legislature declares that it is the intent of this Chapter to support and complement [OPA] and other federal law, specifically those provisions relating to the national contingency plan for cleanup of oil spills and discharges, including provisions relating to the responsibilities of state agencies designated as natural resources trustees.  This legislature intends this Chapter to be interpreted and implemented in a manner consistent with federal law").  The penalties recoverable under LA. REV. STAT. ANN. § 56:40.1, which, as noted above, are essentially natural resources damages, are also recoverable under OPA.  OPA allows such

---

[20]    The Louisiana Department of Wildlife & Fisheries is designated as a State natural resources trustee.  LA. ADMIN CODE tit. 43, pt. XXIX, § 109.

recovery only by a United States trustee, a State trustee, an Indian tribe trustee, or a foreign trustee.  33 U.S.C. § 2702(b)(2)(A); *see also* 33 U.S.C. § 2701(20) (defining "natural resources" to include, among other things, fish and wildlife).  OPA also outlines specific procedures for assessment, recovery, and disbursement of natural resources damages.  33 U.S.C. § 2706.  OPA bars double recovery for natural resource damages.  *Id.* § 2706(d)(3).  Allowing recovery of natural resource damages through state statutes, even if labeled "penalties," would be inconsistent and conflicts with the recovery of natural resources damages under OPA.  Thus, LOSPRA provides that OPA should apply.

Although the Master Local Government Complaint also asserts damages for injury to property, including economic losses, and public services costs, these claims are similarly covered by OPA.  LOSPRA provisions are inconsistent with the required procedures under OPA, including the presentment requirement.  33 U.S.C. § 2713.  As such, OPA similarly "take[s] precedence" over LOSPRA.  La. Rev. Stat. Ann. § 30:2491(A).

IV.   **CONCLUSION**

For the foregoing reasons, the claims in the Master Local Government Complaint against MOEX Offshore 2007 LLC must be dismissed in their entirety.

DATED: April 29, 2011                      Respectfully submitted,

                                           BINGHAM McCUTCHEN, LLP

                                           /s/ *David M. Balabanian*_____
                                           David M. Balabanian
                                           david.balabanian@bingham.com
                                           Three Embarcadero Center
                                           San Francisco, CA 94111-4067
                                           Telephone (415) 393-2170
                                           Facsimile (415) 393-2286

                                           James J. Dragna
                                           jim.dragna@bingham.com
                                           Bingham McCutchen LLP

355 South Grand Avenue, Suite 4400
Los Angeles, California 90071-3106
Telephone (213) 680-6436
Facsimile (213) 680-8636

Ky E. Kirby
ky.kirby@bingham.com
Michael B. Wigmore
michael.wigmore@bingham.com
Warren Anthony Fitch
tony.fitch@bingham.com
2020 K Street, NW
Washington, DC 20006-1806
Telephone (202) 373-6000
Facsimile (202) 373-6001

KUCHLER POLK SCHELL
WEINER & RICHESON, LLC
Deborah D. Kuchler, T.A. (La. Bar No. 17013)
Janika Polk (La. Bar No. 27608)
Robert Guidry (La. Bar No. 28064)
1615 Poydras Street, Suite 1300
New Orleans, LA  70112
Tel:  (504) 592-0691
Fax:  (504) 592-0696

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, pursuant to Pre-trial Order No. 12, I have caused the foregoing to be served on all counsel via the Lexis Nexis File & Serve system, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, who will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on April 29, 2011.


_____/s/ *David M. Balabanian*_____
David M. Balabanian