# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  OIL SPILL by the OIL RIG | § | MDL No. 2179 |
| "DEEPWATER HORIZON" in the | § | |
| GULF OF MEXICO on | § | SECTION: J |
| APRIL 20, 2010 | § | |
| | § | |
| | § | |
| This pleading applies to: | § | **Judge Carl J. Barbier** |
| | § | **Magistrate Judge Sally Shushan** |
| **Pleading Bundle "C"** | § | |
| | § | |
| This pleading applies to: | § | |
| | § | |
| *No. 2:10-CV-2771* | § | |
| | § | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT M-I L.L.C.'s MOTION TO DISMISS LOCAL GOVERNMENT ENTITY VOLUNTARY MASTER COMPLAINT (BUNDLE C)

**OF COUNSEL:**
MORGAN, LEWIS & BOCKIUS LLP

Derek E. Leon
dleon@morganlewis.com
Texas Bar No. 24002463
5300 Wachovia Financial Center
200 South Biscayne Boulevard
Miami, Florida  33131
Telephone:  (305) 415-3000
Facsimile:  (305) 415-3001

Denise Scofield
dscofield@morganlewis.com
Texas Bar No. 00784934
1000 Louisiana, Suite 4000
Houston, Texas  77002
Telephone:  (713) 890-5000
Facsimile:  (713) 890-5001

**ATTORNEYS FOR DEFENDANT
M-I L.L.C.**

April 29, 2011

MORGAN, LEWIS & BOCKIUS LLP

By: /s/ Hugh E. Tanner
    Hugh E. Tanner
    htanner@morganlewis.com
    Texas Bar No. 19637400
    1000 Louisiana, Suite 4000
    Houston, Texas  77002
    Telephone:  (713) 890-5000
    Facsimile:  (713) 890-5001

**ATTORNEYS FOR DEFENDANT
M-I L.L.C.**

# TABLE OF CONTENTS

**Page**

Introduction And Summary Of Argument ................................................................................. 1

Statement Of Facts ..................................................................................................................... 3

Argument ..................................................................................................................................... 5

I.     OPA Displaces All General Maritime Law Claims For Oil Spill-Related Damages ............................................................................................................................. 7

II.    Pursuant To OPA, M-I Cannot Be Sued Directly By Persons Injured By An Oil Spill ..................................................................................................................... 10

      A.     This Court Lacks Jurisdiction To Decide The Claims Of Any Plaintiffs That Have Not Satisfied OPA's Presentment Requirement ..................................................................................................................... 10

      B.     Even If Plaintiffs Satisfy The Presentment Requirements Of OPA, Their Sole Remedy Lies Against The Responsible Parties Designated Under OPA—Not Against M-I .................................................................... 12

III.   To The Extent Any Maritime Law Claims Survive, The Economic Loss Rule Bars These Claims ......................................................................................... 14

IV.   Plaintiffs' State Law Claims Are Foreclosed By OCSLA .................................... 15

V.    To The Extent Any State Law Claims Survive, Plaintiffs Have Failed To Plead Claims For Relief Under Applicable Law .................................................... 18

      A. Plaintiffs Fail To State A Claim For Nuisance ............................................... 19

      B. Plaintiffs Fail To State A Claim For Trespass ................................................ 20

VI.   Plaintiffs Fail To Plead Claims Under State "Mini-OPA" Statutes .................... 21

      A.     Plaintiffs Fail To Plead A Claim Under LOSPRA ................................ 21

      B.     Plaintiffs Fail To Plead A Claim Under TOSPRA ................................. 23

VII.   Plaintiffs Have Pled No Claim Entitling Them To Punitive Damages Against M-I ........................................................................................................... 25

Conclusion ................................................................................................................................. 26

## TABLE OF AUTHORITIES

### CASES

*Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.*,
    51 F.3d 235 (11th Cir. 1995) ........................................................................................11

*Borland v. Sanders Lead Co.*,
    369 So. 2d 523 (Ala. 1979) ..........................................................................................21

*Bourquard v. L.O. Ausauma Enters., Inc.*,
    52 So. 3d 248 (La. Ct. App. 2010) ..........................................................................20, 21

*City of Arlington v. City of Fort Worth*,
    873 S.W.2d 765 (Tex. App.—Fort Worth 1994) ............................................................21

*Clausen v. M/V New Carissa*,
    171 F. Supp. 2d 1127 (D. Or. 2001) ...........................................................................7, 8

*Donald v. Amoco Prod. Co.*,
    735 So. 2d 161 (Miss. 1999) ........................................................................................21

*EP Operating Ltd. P'ship v. Placid Oil Co.*,
    26 F.3d 563 (5th Cir. 1994) ................................................................................7, 15, 16

*Gabarick v. Lauren Mar. (Am.), Inc.*,
    No. 08-04007, 2008 WL 3560426, at *1 (E.D. La. Aug. 11, 2008) ..............................8, 9

*Gabarick v. Laurin Mar. (Am.) Inc.*,
    623 F. Supp. 2d 741 (E.D. La. 2009)......................................1, 2, 7, 8, 9, 10, 11, 13, 18

*Gov't of the Canal Zone v. Burjan*,
    596 F.2d 690 (5th Cir. 1979) ......................................................................................19

*Gregg v. Delhi-Taylor Oil Corp.*,
    344 S.W.2d 411 (Tex. 1961)........................................................................................21

*Gulf Offshore Co. v. Mobil Oil Corp.*,
    453 U.S. 473 (1981)........................................................................................2, 16, 17

*Holubec v. Brandenberger*,
    214 S.W.3d 650 (Tex. App. 2006) ...............................................................................26

*Johnson v. Colonial Pipeline Co.*,
    830 F. Supp. 309 (E.D. Va. 1993) ...............................................................................11

*In re Katrina Canal Breaches Consol. Litig.*,
    647 F. Supp. 2d 644 (E.D. La. 2009) ...........................................................................20

*LaRue v. Crown Zellerbach Corp.*,
   512 So. 2d 862 (La. Ct. App. 1987)................................................................21

*LeSassier v. Chevron USA, Inc.*,
   776 F.2d 506 (5th Cir. 1985) ...............................................................17, 18

*Marathon Pipe Line Co. v. LaRoche Indus. Inc.*,
   944 F. Supp. 476 (E.D. La. 1996)..........................................................11

*Monty v. Hayward*,
   451 So. 2d 938 (Fla. Dist. Ct. App. 1984) .........................................26

*Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atl. Corp.*,
   924 F. Supp. 1436 (E.D. Va. 1996),
   *aff'd*, 122 F.3d 1062 (4th Cir. 1997) (table) .........................................8

*Nations v. Morris*,
   483 F.2d 577 (5th Cir. 1973) .................................................................17

*Nw. Airlines, Inc. v. Transp. Workers Union of Am.*,
   451 U.S. 77 (1981)....................................................................................8

*Petroleum Prods. Corp. v. Clark*,
   248 So. 2d 196 (Fla. Dist. Ct. App. 1971) .........................................21

*Reserve Mooring Inc. v. Am. Commercial Barge Line, LLC*,
   251 F.3d 1069 (5th Cir. 2001) .......................................................14, 15

*Rice v. Harken Exploration Co.*,
   89 F. Supp. 2d 820 (N.D. Tex. 1999) ...................................................8

*Rice v. Merritt*,
   549 So. 2d 508 (Ala. Civ. App. 1989) ...............................................26

*Robins Dry Dock & Repair Co. v. Flint*,
   275 U.S. 303 (1927)............................................................................3, 14

*Rodrigue v. Aetna Cas. & Sur. Co.*,
   395 U.S. 352 (1969)............................................................................2, 16

*Ronquille v. MMR Offshore Servs., Inc.*,
   353 F. Supp. 2d 680 (E.D. La. 2004) .................................................19

*Ross v. Conoco, Inc.*,
   828 So. 2d 546 (La. 2002) ...............................................................25, 26

*S. Port Marine, LLC v. Gulf Oil Ltd. P'ship*,
  234 F.3d 58 (1st Cir. 2000) ..............................................................5, 7, 17, 25

*Sadler v. Int'l Paper Co.*,
  No. 09-cv-1254, 2010 WL 5125505, at *1 (W.D. La. Sept. 29, 2010),
  *modified on other grounds*,
  2010 WL 5125502, at *1 (W.D. La. Dec. 9, 2010) ........................................19

*Seale v. Pearson*,
  736 So. 2d 1108 (Ala. Civ. App. 1999) ........................................................26

*In re Settoon Towing LLC*,
  No. 07-1263, 2009 WL 4730969, at *1 (E.D. La. Dec. 4, 2009)....................10

*In re Settoon Towing LLC*,
  No. 07-1263, 2009 WL 4730971, at *1 (E.D. La. Dec. 4, 2009)....................10

*Snyder Oil Corp. v. Samedan Oil Corp.*,
  208 F.3d 521 (5th Cir. 2000) ........................................................................18

*Southland Co. v. Aaron*,
  80 So. 2d 823 (Miss. 1955)............................................................................26

*State ex rel. Dema Realty Co. v. McDonald*,
  121 So. 613 (La. 1929) ..................................................................................19

*In re Taira Lynn Marine Ltd. No. 5, LLC*,
  444 F.3d 371 (5th Cir. 2006) ........................................................................14

*Tanguis v. M/V Westchester*,
  153 F. Supp. 2d 859 (E.D. La. 2001) ..............................................................8

*Tenn. Gas Pipeline v. Houston Cas. Ins. Co.*,
  87 F.3d 150 (5th Cir. 1996) ...............................................................5, 15, 16

*Texaco Exploration & Production, Inc. v. AmClyde Engineered Prods. Co.*,
  448 F.3d 760 (5th Cir. 2006) ........................................................................16

*TS & C Invs. LLC v. Beusa Energy Inc.*,
  344 F. App'x 907 (5th Cir. 2009) ..................................................................20

*United States v. California*,
  332 U.S. 19 (1947) ........................................................................................16

*United States v. M/V Big Sam*,
  681 F.2d 432 (5th Cir. 1982) ........................................................................10

*United States v. Oswego Barge Corp.*,
    664 F.2d 327 (2d Cir. 1981)............................................................................9

*W. Oil & Gas Ass'n v. Sonoma Cnty.*,
    905 F.2d 1287 (9th Cir. 1990)......................................................................16

## STATUTES

33 U.S.C. § 2702............................................................................3, 6, 7, 10, 13, 14

33 U.S.C. § 2709.........................................................................................3, 13, 14

33 U.S.C. § 2710.......................................................................................................13

33 U.S.C. § 2713.................................................................................................2, 11, 12

33 U.S.C. § 2718.......................................................................................................17

43 U.S.C. § 1332.......................................................................................................15

43 U.S.C. § 1333...........................................................................................2, 16, 17, 18

43 U.S.C. § 1349.......................................................................................................16

43 U.S.C. § 1802.................................................................................................5, 16

LA. CIV. CODE ANN. art. 667...................................................................................20

Louisiana Oil Spill Prevention and Response Act,
    LA. R.S. 30:2451, *et seq.*.................................................................21, 22, 23

Oil Pollution Act of 1990, 33 U.S.C. § 2701 *et seq.*...........................................1

Outer Continental Shelf Lands Act, 43 U.S.C. § 1331 *et seq.*...........................1

Texas Oil Spill Prevention & Response Act of 1991,
    TEX. NAT. RES. CODE ANN. § 40.001 *et seq.*......................................23, 24, 25

## MISCELLANEOUS

Michael P. Donaldson, *The Texas Response to Oil Pollution: Which Law to Apply*,
    25 ST. MARY'S L.J. 533 (1994)..............................................................24

135 Cong. Rec. 7965 (1989)...............................................................5, 6, 13

S. Rep. No. 101-94 (1989).......................................................................8, 12

## INTRODUCTION AND SUMMARY OF ARGUMENT

The voluntary master complaint alleges claims on behalf of local government entities in Texas, Louisiana, Mississippi, Alabama, and Florida against M-I L.L.C. ("M-I") based on a wide variety of legal theories. But it fails to satisfy the requirements of Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

M-I was a service provider—a vendor—without authority to direct any drilling operations on the *Deepwater Horizon*. Under relevant law, M-I is not a "Responsible Party." Plaintiffs nonetheless contend that M-I is fully liable for alleged injuries they suffered following the blowout and oil spill. Plaintiffs attempt to allege seven separate claims against M-I, but they ultimately fail to state any claim on which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). Plaintiffs' claims also fail for lack of subject-matter jurisdiction and must be dismissed on this basis as well. *See* Fed. R. Civ. P. 12(b)(1). The Complaint must therefore be dismissed as to M-I.

Two federal statutes govern the resolution of Plaintiffs' claims: the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. § 2701 *et seq.*, and the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1331 *et seq*. OPA provides Plaintiffs with sweeping remedies for their alleged harms—including remedies for the precise kinds of harms they allegedly suffered. OCSLA directs the Court's choice of law analysis and forecloses claims asserted against M-I under general maritime law and state law.

First, OPA was created to provide a comprehensive statutory framework to address economic damages caused by an oil spill. OPA provides the sole remedy for Plaintiffs' economic loss and property damage claims because OPA displaces general maritime law claims for damages recoverable under OPA. *Gabarick v. Laurin Mar. (Am.) Inc.*, 623 F. Supp. 2d 741,

750 (E.D. La. 2009).  Because Plaintiffs seek to recover damages explicitly provided for by OPA, their general maritime law claims for negligence and gross negligence must be dismissed.

OPA, through its interaction with OCSLA, also forecloses Plaintiffs' state law claims. Through OCSLA, Congress clarified its intention that the conduct at issue here—oil and gas exploration and development on the Outer Continental Shelf—is subject to exclusive federal jurisdiction and that (with few exceptions not applicable here) federal law alone governs conduct and liability related to such activities.  43 U.S.C. § 1333(a).  Under OCSLA, it is only the law of the adjacent state—in this case, Louisiana—that may *potentially* be borrowed as surrogate federal law, but state law may only be applied to activities occurring on "artificial islands and fixed structures" on the Outer Continental Shelf, and only where necessary to fill a "substantial gap[]" or "void[]" in federal law.  *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 480 (1981) (internal quotations omitted); *see also Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352, 358 (1969).  The *Deepwater Horizon* is not an artificial island or a fixed structure, and there is no gap or void in federal law here.  Accordingly, Plaintiffs' state law claims must be dismissed.

Second, this Court cannot exercise jurisdiction over the claims of any Plaintiffs who have not fulfilled OPA's presentment requirements.  OPA is the exclusive law governing claims for oil spill-related damages.  Plaintiffs asserting claims under OPA must satisfy the mandatory condition precedent that all claims for oil spill-related damages be presented to the Responsible Party before filing suit.  33 U.S.C. § 2713.  To the extent that any Plaintiff has failed to satisfy this mandatory presentment requirement under OPA, this Court lacks jurisdiction to hear that Plaintiff's claim, and the claim should be dismissed.

Moreover, even if a Plaintiff has satisfied OPA's presentment requirement and can invoke this Court's jurisdiction, Plaintiffs may seek relief only from the Responsible Parties.  By

its plain language, OPA provides for recovery of oil spill-related damages directly and exclusively from the Responsible Parties.   The Responsible Parties, in turn, may seek contribution against any other person they believe to be liable or potentially liable for causing the damages.  *See* 33 U.S.C. §§ 2702, 2709.  Consistent with Congress's goal to provide an efficient process for injured persons to recover oil spill-related damages, OPA does not permit direct actions against third parties who have not been designated Responsible Parties, such as M-I.  Thus, even if Plaintiffs properly present their claims under OPA, they do not have a direct right of action against M-I for oil spill-related damages.  All claims seeking such damages must be dismissed.

Third, even if Plaintiffs' general maritime law claims were not displaced by OPA, these claims are barred under the "economic loss rule," which precludes recovery for pure economic losses in the absence of physical injury to a proprietary interest.  *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 309 (1927).  Most Plaintiffs allege no such physical injury, which is fatal to their claims.

Fourth, to the extent the state claims are not preempted by federal law, Plaintiffs have failed to plead cognizable claims for relief under applicable state law.

Finally, to the extent Plaintiffs are seeking punitive damages from M-I, their claim is foreclosed under applicable law.

## STATEMENT OF FACTS

In June 2008, Defendant BP Exploration & Production ("BP") acquired a lease from the U.S. government to explore and develop hydrocarbon reserves on a site in the Gulf of Mexico, 48 miles south of Louisiana on the Outer Continental Shelf.  Plaintiffs' Voluntary Master Complaint, Cross-Claim, and Third Party Complaint ("Compl.") ¶¶ 241 (Rec. Doc. No. 1510).  BP contracted with a number of oilfield service providers to drill the Macondo well at this site.

The drilling contractor for the Macondo well was Defendant Transocean, which owned and operated the *Deepwater Horizon*.  *Id.* ¶¶ 255-56.   BP also contracted with other service providers, including M-I, which provided drilling fluids on the rig.  *Id.* ¶ 197.  M-I, as a service provider for BP, did not exercise (and is nowhere alleged to have exercised) responsibility for any drilling operations on the rig.

On April 20, 2010, an explosion and fire occurred aboard the *Deepwater Horizon* while it was in the final stages of drilling the Macondo well.  *Id.* ¶ 164  The rig later sank, severing a pipe connecting the vessel to the wellhead on the ocean floor and leading to the release of oil.  *Id.* ¶¶ 165-66.   In the aftermath of the accident, the Coast Guard designated Defendant BP Exploration & Production the "Responsible Party" under OPA for the subsea release of oil.  *Id.* ¶ 661.[1]

Within days of the accident, the first of hundreds of lawsuits were filed in courts throughout the country, with some plaintiffs alleging that M-I is liable for their injuries. Following the creation of this multi-district litigation, Plaintiffs filed the present Voluntary Master Complaint on behalf of local government entities or officials, "including cities, towns, counties, villages, parishes, municipalities, special districts, school boards, sheriffs, district attorneys, public boards, institutions, departments, commissions, districts, corporations, agencies, authorities, and any agencies or subdivisions of any of these, and other local public or governmental bodies of any kind which are not state agencies" in the Gulf states.  Compl. ¶ 178. Plaintiffs designated their Complaint as an admiralty or maritime case under Federal Rule of Civil Procedure 9(h)(1).  *Id.* ¶¶ 1-2.

---

[1]  Transocean was designated a Responsible Party for the release of oil on the surface of the water. Compl. ¶ 661.

Plaintiffs allege seven causes of action against M-I: (i) negligence under general maritime law; (ii) gross negligence under general maritime law; state common law claims for (iii) public nuisance, (iv) private nuisance, and (v) trespass; (vi) strict liability under the Louisiana Oil Spill Prevention and Response Act ("LOSPRA); and (vii) strict liability under the Texas Oil Spill Prevention and Response Act ("TOSPRA").  All of these claims should be dismissed.

## ARGUMENT

A comprehensive federal regulatory and liability scheme, set forth in OCSLA and OPA, governs oil exploration and development on the Outer Continental Shelf, including accidental discharge of oil arising from that activity.[2]  The Outer Continental Shelf has long been an area of federal, not state, concern and oversight.  OCSLA establishes "national authority over the [Outer Continental Shelf] at the expense of both foreign governments and the governments of the individual states."  *Tenn. Gas Pipeline v. Houston Cas. Ins. Co.*, 87 F.3d 150, 153 (5th Cir. 1996).  In enacting OCSLA and assuming broad authority over subsea lands outside of the territorial waters of the states, Congress sought to address the country's energy needs while protecting the environment and the public and private interests impacted by oil and gas development on the Outer Continental Shelf.  *See* 43 U.S.C. § 1802.

Following the Exxon Valdez oil spill in Alaskan territorial waters in 1989, Congress revisited its approach to compensating parties injured as a result of an oil spill.  Passed in 1990, OPA is "a comprehensive federal scheme for oil pollution liability."  *S. Port Marine, LLC v. Gulf Oil Ltd. P'ship*, 234 F.3d 58, 64 (1st Cir. 2000).  Under Congress's scheme, persons damaged as a result of an oil spill are entitled to wide-ranging recovery from a federally designated

---

[2]  In their memoranda of law in support of their motions to dismiss Plaintiffs' Amended B1 Master Complaint, co-defendants BP, Transocean, Halliburton, Weatherford, and Cameron provide a thorough explanation of the history of OCSLA and OPA and describe in detail OPA's compensatory scheme.  In

"Responsible Party" under strict liability provisions intended to quickly compensate injured parties "without resort to cumbersome litigation."  135 CONG. REC. 7965 (1989).

Public entities such as Plaintiffs who claim injury from an oil spill are entitled to prompt payment from the Responsible Party for, *inter alia*: (i) removal costs—"costs incurred by any person for acts taken by the person which are consistent with the National Contingency Plan" (33 U.S.C. § 2702(b)(1)(B)); (ii) real or personal property damage—"[d]amages for injury to, or economic losses resulting from destruction of, real or personal property, which shall be recoverable by a claimant who owns or leases that property," (*id.* § 2702(b)(2)(B)); (iii) revenues—"[d]amages equal to the net loss of taxes, royalties, rents, fees, or net profit shares due to the injury, destruction, or loss of real property, personal property, or natural resources, which shall be recoverable by the Government of the United States, a State, or a political subdivision thereof," (*id.* § 2702(b)(2)(D)); (iv) profits and earning capacity—"[d]amages equal to the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources, which shall be recoverable by any claimaint," (*id.* § 2702(b)(2)(E)); and (v) public services—"[d]amages for net costs of providing increased or additional public services during or after removal activities, including protection from fire, safety, or health hazards, caused by a discharge of oil, which shall be recoverable by a State, or a political subdivision of a State," (*id.* § 2702(b)(2)(F)).  Litigation, where necessary, is designed to take place between the Responsible Party and other persons the Responsible Party contends

---

the interest of conserving judicial resources, M-I does not repeat that history here, but instead refers the Court to co-defendants' memoranda.

are potentially liable for the discharge of oil, through indemnity, subrogation, and contribution actions brought by the Responsible Party.  *See id.* § 2709; *Gabarick*, 623 F. Supp. 2d at 750.[3]

OPA provides the sole and exclusive federal remedy for persons harmed by an oil spill anywhere within the federal government's jurisdiction.  And where, as here, injuries occur as a result of energy exploration on the Outer Continental Shelf, OCSLA's "broad substantive net" operates in conjunction with OPA to ensure that injured parties are compensated without upsetting Congress's intent that OCSLA "govern the full range of potential legal problems that might arise in connection with operations on the Outer Continental Shelf."  *EP Operating Ltd. P'ship v. Placid Oil Co.*, 26 F.3d 563, 569 (5th Cir. 1994) (internal citation omitted).

As set forth below, Plaintiffs' maritime and state statutory and common law claims against M-I are not cognizable under governing law.  Recognition of such claims would disrupt Congress's carefully considered compensatory regime and frustrate clearly stated congressional intent with respect to operations on the Outer Continental Shelf.  Each of Plaintiffs' claims against M-I must therefore be dismissed.

## I.      OPA Displaces All General Maritime Law Claims For Oil Spill-Related Damages.

Claims I(A) and I(B) of Plaintiffs' Voluntary Master Complaint seek damages from M-I under "general maritime law" for both "negligence" and "gross negligence and willful misconduct."  *See* Compl. ¶¶ 542-95.  These claims must be dismissed because they are foreclosed by the well-settled law, recognized unanimously by courts across the country, that OPA provides the *exclusive* federal remedy for economic damage caused by an oil spill.  *See S. Port Marine,* 234 F.3d at 64-66; *Gabarick*, 623 F. Supp. 2d at 746; *Clausen v. M/V New Carissa*,

---

[3]  Consistent with this scheme, on April 20, 2011, BP, as the Responsible Party under OPA, filed claims for contribution pursuant to OPA against certain of its MDL co-defendants, including Transocean, Halliburton, and Cameron.

171 F. Supp. 2d 1127, 1134 (D. Or. 2001); *Tanguis v. M/V Westchester*, 153 F. Supp. 2d 859, 867-68 (E.D. La. 2001); *Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atl. Corp.*, 924 F. Supp. 1436, 1447 (E.D. Va. 1996), *aff'd*, 122 F.3d 1062 (4th Cir. 1997) (table).

It is well-recognized that federal common law must cede to congressional enactments. "[O]nce Congress addresses a subject, even a subject previously governed by federal common law, . . . the task of the federal courts is to interpret and apply statutory law, not to create common law." *Nw. Airlines, Inc. v. Transp. Workers Union of Am.*, 451 U.S. 77, 95 n.34 (1981). Here, "[b]ecause OPA provides a comprehensive scheme for the recovery of oil spill cleanup costs and the compensation of those injured by oil spills, the general maritime law does not apply to recovery of these types of damages." *Nat'l Shipping*, 924 F. Supp. at 1447.

Indeed, courts in this district have at least twice addressed this very issue, and both times they have held that OPA displaces general maritime law.  A decade ago, in *Tanguis v. M/V Westchester*, a court in this district first considered the preemptive effect of OPA, noting that the plain language of the statute—consistent with and confirmed by legislative history—made clear Congress's intent to fully occupy the field and displace "traditional maritime remedies for oil spills."  153 F. Supp. 2d at 867-68 (citing *Rice v. Harken Exploration Co.*, 89 F. Supp. 2d 820, 822 (N.D. Tex. 1999) and S. REP. NO. 101-94, at 9 (1989), *reprinted in* 1990 U.S.C.C.A.N. 722, 730).

More recently, in *Gabarick*, the court considered the exact question presented here and concluded that "the plain language of [OPA] indicates its mandatory and exclusive nature with respect to its covered damages."  623 F. Supp. 2d at 746.  In *Gabarick*, a collision between a barge and a tow boat led to the release of approximately 500,000 gallons of fuel oil into the Mississippi River. *Gabarick v. Lauren Mar. (Am.), Inc.*, No. 08-04007, 2008 WL 3560426, at *1

8

(E.D. La. Aug. 11, 2008).  Plaintiffs alleged that the oil contaminated the shoreline and drinking water and that they suffered business losses as a result of the spill.  *Id.*

In reaching its holding that the plaintiffs' maritime claims were preempted by OPA, the *Gabarick* court conducted a detailed and thorough analysis of the four "*Oswego*" preemption factors:

(1)    legislative history;

(2)    the scope of the legislation;

(3)    whether judge made law would fill a gap left by Congress's silence or rewrite rules that Congress enacted; and

(4)    likeliness of Congress's intent to preempt "long established and familiar principles of the common law or the general maritime law."

*Gabarick*, 623 F. Supp. 2d at 747 (quoting *United States v. Oswego Barge Corp.*, 664 F.2d 327, 344 (2d Cir. 1981)).[4]

As to the first *Oswego* factor, the court reviewed OPA's legislative history and concluded that "Congress's intent in enacting OPA [was] the creation of a single Federal law regarding liability for oil pollution."  *Id.* at 748.  On the second factor, the court found the scope of OPA all-encompassing: "It defines what damages are covered and the process for pursuing a claim, and allows suit in federal court should that process be unsuccessful."  *Id.*  As to the third factor, the court held that because of the comprehensiveness of OPA, "there is no gap" that needed to be filled by judge-made law.  *Id.*    Finally, under the fourth factor, the court held "the intent of Congress . . . articulated in both the express language of the statute and the legislative history, was to encourage settlement and reduce litigation in oil spill cases through the enactment of comprehensive federal legislation that provides cleanup authority, penalties, and liability for oil pollution."  *Id.* at 750 (internal quotation omitted).

Accordingly, the court held that OPA preempted the *Gabarick* plaintiffs' maritime law claims seeking "supplemental" remedies against an alleged oil polluter—a holding that has since been repeated without question in other cases in this district. *See In re Settoon Towing LLC*, No. 07-1263, 2009 WL 4730969, at *3 (E.D. La. Dec. 4, 2009) ("[T]he OPA damages provision preempts the general maritime law.") (citing *Gabarick*, 623 F. Supp. 2d at 746); *In re Settoon Towing LLC*, No. 07-1263, 2009 WL 4730971, at *3-4 (E.D. La. Dec. 4, 2009) (granting summary judgment in favor of the vessel owner on a general maritime claim seeking recovery for oil spill-related claims because OPA preempted the general maritime law for the damages sought).

In this case, just as in *Gabarick*, the Bundle C Plaintiffs have alleged general maritime causes of action and seek damages for removal costs, property damage, loss of tax revenue associated with the decline in local business revenue, tourism, and rentals, and costs associated with additional public services. *See* Compl. ¶¶ 585, 595. All of these damages are expressly recoverable under OPA by a political subdivision of a state. *See* 33 U.S.C. § 2702(b). Thus, no matter how Plaintiffs characterize their claims, the damages Plaintiffs seek under general maritime law are identical to those recoverable under OPA. The general maritime law claims are therefore preempted and must be dismissed.

## II.   Pursuant To OPA, M-I Cannot Be Sued Directly By Persons Injured By An Oil Spill.

### A.   This Court Lacks Jurisdiction To Decide The Claims Of Any Plaintiffs That Have Not Satisfied OPA's Presentment Requirement.

Because OPA provides the exclusive remedy for Plaintiffs' alleged oil spill-related damages, the Voluntary Bundle C Master Complaint Plaintiffs—who are seeking recovery of

---

[4]  The Fifth Circuit adopted the *Oswego* analysis in *United States v. M/V Big Sam*, 681 F.2d 432, 441-42 (5th Cir. 1982).

such damages—must comply with the presentment requirements of OPA before filing suit against the Responsible Parties.  To the extent that any Plaintiff has failed to satisfy this requirement, this Court lacks jurisdiction to decide that Plaintiff's claims.

OPA's remedial scheme depends on the concept of the "Responsible Party" and the creation of a strict liability compensation procedure intended to provide prompt, complete resolution of claims outside of litigation.  OPA's mandatory presentment requirement is key to this procedure:  First, "all claims for removal costs or damages" covered by OPA "shall" be presented to the Responsible Party.  33 U.S.C. § 2713(a).  The claims must be sufficiently detailed about the nature and extent of the claimant's alleged injury to allow for genuine settlement negotiations between the claimant and the Responsible Party.  *See, e.g.*, *Johnson v. Colonial Pipeline Co.*, 830 F. Supp. 309, 311 (E.D. Va. 1993).  Only if the Responsible Party denies liability for the claim or a sufficiently presented claim is not settled within 90 days by the Responsible Party may the claimant elect to commence an action in court "against the responsible party."  33 U.S.C. § 2713(c).  The presentment requirement is applicable to any OPA claimant, including local government and public entities like Plaintiffs here.

"[T]he clear text of § 2713 creates a *mandatory condition precedent barring all OPA claims* unless and until a claimant has presented [its] claims" to the Responsible Party and had them denied.  *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.*, 51 F.3d 235, 240 (11th Cir. 1995) (emphasis added); *see also Gabarick*, 623 F. Supp. 2d at 750-51 (dismissing for lack of subject matter jurisdiction all non-OPA claims seeking damages of the type covered by OPA for failure to present such claims to the designated responsible party); *Marathon Pipe Line Co. v. LaRoche Indus. Inc.*, 944 F. Supp. 476, 477 (E.D. La. 1996) ("The Court agrees that § 2713's presentation requirement is jurisdictional and mandates dismissal when that provision is

applicable and not complied with by the claimant."); S. Rep. No. 101-94, at 10 (1989) (noting that "the bill requires claims to be presented in the first instance to the discharger, where known"). Regardless of whether an OPA claim has been alleged against a Responsible Party or a non-responsible third party, until OPA's presentment requirements have been met, litigation for oil spill-related claims is foreclosed. Allowing Plaintiffs to bypass the presentment requirement and immediately sue third parties who have not been designated as Responsible Parties would frustrate (and indeed, render unworkable) Congress's intent to provide through OPA a prompt, comprehensive remedial scheme that avoids complex and piecemeal litigation.

In this case, Plaintiffs allege only that they "have satisfied, or will have satisfied"—at some unspecified time—OPA's presentment requirements. Compl. ¶ 668. Plaintiffs characterize the presentment requirement as an "administrative requirement," *see id.*, but it is much more than that. It is a mandatory condition precedent to bringing an OPA claim against a Responsible Party. Having admitted that they have not presented their claims to the Responsible Party in this case (BP) and had them denied, Plaintiffs' lawsuits are unripe, and this Court lacks jurisdiction to adjudicate them. Therefore, any claim against M-I asserted by any Plaintiff who has not satisfied OPA's presentment requirements must be dismissed for lack of subject matter jurisdiction. *See* FED. R. CIV. P. 12(b)(1).

> ### B. Even If Plaintiffs Satisfy The Presentment Requirements Of OPA, Their Sole Remedy Lies Against The Responsible Parties Designated Under OPA—Not Against M-I.

Even if Plaintiffs satisfy the presentment requirements of OPA and could properly invoke the jurisdiction of this Court, their claims for oil spill-related damages against M-I must nonetheless be dismissed because M-I has not been named an OPA Responsible Party.

Plaintiffs' sole remedy for oil spill-related damages lies against the Responsible Parties under OPA. 33 U.S.C. § 2713 (If a claim properly presented to the Responsible Party is denied,

"the claimant may elect to commence an action in court against the responsible party . . . ."). The plain language of the statute is supported by and consistent with clearly stated congressional intent that "[t]he system of liability and compensation provided for in the bill . . . is intended to allow for quick and complete payment of reasonable claims without resort to cumbersome litigation."  135 CONG. REC. 7965 (1989).  Indeed, as this court has explained, "[i]n light of Congress's intent to minimize piecemeal lawsuits and the mandatory language of OPA . . . Claimants should pursue claims covered under OPA only against the responsible party and in accordance with the procedures established by OPA."  *Gabarick*, 623 F. Supp. 2d at 750.  "Then, the responsible party can take action to recover against third parties," *id.*, as provided for by OPA:

> If the responsible party alleges that the discharge . . . was caused solely by an act or omission of a third party, the responsible party—
>
> (i)        . . . shall pay removal costs and damages to any claimant; and
>
> (ii)       shall be entitled by subrogation to all rights of the . . . claimant to recover removal costs or damages from the third party . . . paid under this subsection.

33 U.S.C. § 2702(d)(1)(B); *see also* 33 U.S.C. § 2709 (providing for rights of contribution); 33 U.S.C. § 2710 (permitting indemnity agreements among potentially responsible parties).

The language of the statute makes clear Congress's intent that persons allegedly injured by an oil spill not be additionally inconvenienced by cumbersome and time-consuming litigation. Claimants are entitled to resolution of their claims and payment of their economic damages by a Responsible Party.  Should litigation prove necessary, claimants are benefited because they need litigate against only the Responsible Party, and recovery is on a strict liability basis.  Complex multi-party litigation—with all of its attendant costs and burdens—is also shifted to the Responsible Party and other parties who are potentially liable for the oil spill, who may allocate

fault and damages among themselves through subrogation, contribution, and indemnity litigation.  *See* 33 U.S.C. §§ 2702(d), 2709.

Plaintiffs' claims for oil spill-related damages are not cognizable against M-I because M-I is not a designated Responsible Party under OPA.  Accordingly, to the extent Plaintiffs seek to bring claims against M-I under OPA, such claims must be dismissed as a matter of law because M-I is not a designated Responsible Party.  And to the extent Plaintiffs bring non-OPA claims against M-I for oil spill-related damages within the scope of OPA, these claims should also be dismissed because they are displaced or preempted by OPA.

**III.    To The Extent Any Maritime Law Claims Survive, The Economic Loss Rule Bars These Claims.**

Even if Plaintiffs' general maritime law claims were not displaced by OPA, the claims must nonetheless be dismissed to the extent that the damages they seek are not recoverable under the economic loss rule, which has long been a part of general maritime law.  *See Robins Dry Dock*, 275 U.S. 303 (1927).  Under the rule, which has been consistently reaffirmed by the Fifth Circuit, "physical injury to a proprietary interest is a prerequisite to recovery of economic damages in cases of unintentional maritime tort[s]."[5]  *Reserve Mooring Inc. v. Am. Commercial Barge Line, LLC*, 251 F.3d 1069, 1071 (5th Cir. 2001); *see also In re Taira Lynn Marine Ltd. No. 5, LLC*, 444 F.3d 371, 377 (5th Cir. 2006) ("It is unmistakable that the law of this circuit does not allow recovery of purely economic claims absent physical injury to a proprietary interest in a maritime negligence suit.").  The rule is a "pragmatic limitation on the doctrine of foreseeability."  *Reserve Mooring Inc.*, 251 F.3d at 1071 (internal quotation omitted).

---

[5]  Congress, apparently recognizing the limitation of the economic loss rule, has expressly permitted more expansive remedies for parties under OPA.  *See, e.g.*, 33 U.S.C. § 2702(b)(2)(C) (allowing the recovery for subsistence use of natural resources "without regard to the ownership or management of the resources").

Here, the only Plaintiffs who plausibly could assert injury that survives the economic loss rule are public entity Plaintiffs who allege physical damage to real property that they own. The other damages Plaintiffs assert—such as loss of tax revenue, cleanup costs, and increased public services costs—simply are not based on any physical injury to a proprietary interest. Such damages are recoverable under OPA, but not under the general maritime law. Thus, these claims should be dismissed on this basis as well.

## IV.  Plaintiffs' State Law Claims Are Foreclosed By OCSLA.

Plaintiffs allege that M-I is liable for public and private nuisance and trespass under Texas, Louisiana, Mississippi, Alabama, and Florida law. Compl. ¶¶ 670-90. They also allege claims against M-I under the "mini-OPA" statutes of Louisiana and Texas, LOSPRA and TOSPRA. Compl. ¶¶ 727-46. Congress has made clear that state law claims cannot be brought for oil spill-related injuries stemming from oil exploration and development activities on a rig such as the *Deepwater Horizon* that is engaged in activities on the Outer Continental Shelf. *See Tenn. Gas Pipeline*, 87 F.3d at 153 ("OCLSA makes federal law exclusive in its regulation of the OCS . . . .") (footnote omitted); *see also* 43 U.S.C. § 1332(1) ("the subsoil and seabed of the outer Continental Shelf  appertain to the United States and are subject to its jurisdiction, control, and power of disposition").

Courts, including this Court, have had no trouble finding that claims arising out of or in connection with the operation of oil exploration activities on the Outer Continental Shelf—such as the claims alleged by the Bundle C Plaintiffs—are governed by OCSLA. *See Tenn. Gas Pipeline*, 87 F.3d at 154; *EP Operating*, 26 F.3d at 569. Indeed, this Court has already held that OCSLA governs this dispute, and the Plaintiffs' allegations confirm the applicability of the statute. Order (Oct. 16, 2010) [Dkt. No. 470], at 6-8.

Congress has long asserted plenary control over operations on the Outer Continental Shelf.  *See generally Gulf Offshore Co.*, 453 U.S. at 473; *United States v. California*, 332 U.S. 19 (1947).  Congress's many policy aims with respect to the Outer Continental Shelf require careful balance of competing goals, such as protection of the environment and encouragement of energy production.  *See* 43 U.S.C. § 1802; *see also W. Oil & Gas Ass'n v. Sonoma Cnty.*, 905 F.2d 1287, 1289 (9th Cir. 1990) (OCLSA "declares the policy of the United States that the Outer Continental Shelf should be available for expeditious and orderly development subject to environmental safeguards.").   Through OCSLA, Congress has extended an "expansive substantive reach" over "a wide range of activity occurring beyond the territorial waters of the states."  *Texaco Exploration & Production, Inc. v. AmClyde Engineered Prods. Co.*, 448 F.3d 760, 768 (5th Cir. 2006) (internal quotation omitted); *EP Operating*, 26 F.3d at 569.  To that end, Congress has declared federal law "exclusive" with respect to activities on the Outer Continental Shelf.  *See Tenn. Gas Pipeline*, 87 F.3d at 153; *see also* 43 U.S.C. § 1349(b)(1).

State law applies to activity on the Outer Continental Shelf only in certain narrowly-defined circumstances.  With respect to activity occurring on "artificial islands" or "fixed structures" that are "erected" on the Outer Continental Shelf, the law of the adjacent state may be adopted as surrogate federal law, but *only* when necessary to fill a "substantial gap[]" or "void[]" that exists in the applicable federal law.  *Gulf Offshore Co.*, 453 U.S. at 480 (internal quotations omitted); *see also Rodrigue*, 395 U.S. at 358; 43 U.S.C. § 1333(a)(2)(A).   The *Deepwater Horizon* is not alleged to be—and indeed, is not—an "artificial island" or a "fixed structure" that was "erected" on the seafloor.  It is a semi-submersible mobile drilling rig.  Thus, by the explicit terms of OCSLA state law is inapplicable in this case.

16

Additionally, even if the door was open to state law on the facts presented in this case (which it is not), state law can only apply to the extent it is "applicable and not inconsistent with" federal law.  The Fifth Circuit "has consistently held that 'applicable' must be read in terms of necessity—necessity to fill a significant void or gap." *LeSassier v. Chevron USA, Inc.*, 776 F.2d 506, 509 (5th Cir. 1985) (quoting *Nations v. Morris*, 483 F.2d 577, 585 (5th Cir. 1973)); *see also Gulf Offshore Co.*, 453 U.S. at 480 (state law may be adopted only to fill a "substantial gap[] in the coverage of federal law" (citing 43 U.S.C. § 1333(a)(2)) (internal quotation omitted)). Because Plaintiffs claim economic loss as a result of an oil spill, they can—and indeed, must— seek relief through OPA, which provides a remedy for all of the economic loss they seek under state law.  There is thus no "significant void or gap" in federal law for state law to fill under OCSLA.  *LeSassier*, 776 F.2d at 509; *see also S. Port Marine*, 234 F.3d at 64 (holding that OPA is intended to be the sole and exclusive federal law governing action for oil spill-related damages).  Therefore, Plaintiffs cannot pursue their state law claims.

Nothing in OPA changes this result.  While OPA provides that states may impose additional liability for "the discharge of oil or other pollution by oil within such State," 33 U.S.C. § 2718(a)(1)(A), nothing in OPA or its legislative history evinces an intent to displace OCSLA or to disrupt decades of well-settled law about the limited applicability of state law to activities on the Outer Continental Shelf.  OPA's so-called "savings clause" instead operates where it is needed most:  in state territorial waters where state interests are high, federal interests are lower, and there is little risk of multiple inconsistent laws and legal regimes being applied to the same conduct.

Congress, through OCSLA, has deemed federal law exclusive on the Outer Continental Shelf and permits the adoption of state law only on a defined subset of *situses* on the Outer

Continental Shelf, and only then in situations where there is a significant gap or void in federal law. *LeSassier*, 776 F.2d at 509. Through OPA, Congress has provided a complete and comprehensive federal regime governing and providing recovery for damages stemming from oil spills, including those that occur on the Outer Continental Shelf. *See Gabarick*, 623 F. Supp. 2d at 746. Plaintiffs' alleged injuries are compensable through OPA; therefore, there is no gap or void in the federal law, and all of Plaintiffs' state law claims against M-I should be dismissed.

V.   **To The Extent Any State Law Claims Survive, Plaintiffs Have Failed To Plead Claims For Relief Under Applicable Law.**

Plaintiffs purport to plead causes of action for nuisance (public and private) and trespass under the common law of each of the Gulf states. Notwithstanding that Plaintiffs' state law claims are foreclosed under OCSLA, assuming *arguendo* that Plaintiffs could bring such claims, the claims can only arise under the law of the state adjacent to the Outer Continental Shelf *situs*—here, Louisiana. *See* 43 U.S.C. § 1333. Plaintiffs' Louisiana claims fail as a matter of law.

Courts are to consider four types of evidence when determining which state is adjacent to a *situs* on the Outer Continental Shelf: "(1) geographic proximity; (2) which coast federal agencies consider the subject platform to be 'off of'; (3) prior court determinations; and (4) projected boundaries." *Snyder Oil Corp. v. Samedan Oil Corp.*, 208 F.3d 521, 524 (5th Cir. 2000). Plaintiffs have alleged that the *Deepwater Horizon* was located "off the coast of Louisiana." Compl. ¶ 30; *see also id.* ¶ 241 (alleging that the Macondo well was located "in Mississippi Canyon Block 252, 48 miles off the coast of Louisiana"). This court has concluded that sites in the Mississippi Canyon Block, even farther off the coast of the state, are adjacent to Louisiana for OCSLA purposes. *See Ronquille v. MMR Offshore Servs., Inc.*, 353 F. Supp. 2d 680, 681 n.3 (E.D. La. 2004) (applying Louisiana law under OCSLA with respect to an alleged

injury occurring in Mississippi Canyon, block 809, approximately 140 miles southeast of New

Orleans).   Further, the Court can take judicial notice that if the boundaries of the State of

Louisiana were extended seaward, the location of the *Deepwater Horizon* would fall within its

borders.   *See Gov't of the Canal Zone v. Burjan*, 596 F.2d 690, 694 (5th Cir. 1979) ("[O]fficial

government maps have long been held proper subjects of judicial notice.").   Thus, to the extent

that any state law might apply under OCSLA, it is only the law of Louisiana.   Claims brought

under any other state law must be dismissed, and as set forth below, so too must Plaintiffs'

Louisiana claims.

### A.        Plaintiffs Fail To State A Claim For Nuisance.

Plaintiffs allege that M-I, as a result of its allegedly negligent conduct on the rig, created

both a public and a private nuisance.   Compl. ¶¶ 670-90.   Louisiana law recognizes a distinction

between a public nuisance, which "annoys the public generally or invades its rights," and a

private nuisance, in which "an individual, or class of individuals, sustains as such, a special

injury as distinguished from that sustained by the public."   *State ex rel. Dema Realty Co. v.

McDonald*, 121 So. 613, 615 (La. 1929).   As a practical matter, however, the elements of the two

causes of action are the same.   *Id.* ("[T]here is no difference in principle between a condition

which is called a private, and one which is called a public, nuisance; the constituents of both

being the same."); *see also Sadler v. Int'l Paper Co.*, No. 09-cv-1254, 2010 WL 5125505, at *6

(W.D. La. Sept. 29, 2010), *modified on other grounds*, 2010 WL 5125502 (W.D. La. Dec. 9,

2010) ("the elements of both nuisance theories [are] identical").   Plaintiffs' allegations under

both nuisance counts are also materially identical.

Under Louisiana law, only a "neighbor" can bring a suit for nuisance.   LA. CIV. CODE

ANN. art. 667.   By Plaintiffs' own admission, M-I and the *Deepwater Horizon* were at least 48

miles away from the closest possible Bundle C plaintiff.   Compl. ¶ 241.   This is insufficient to

permit recovery for nuisance under Louisiana law.   In *In re Katrina Canal Breaches Consolidated Litigation*, this Court, applying Louisiana law, held that a distance of three miles between the plaintiffs and defendants was "too attenuated" to support a claim for nuisance.  647 F. Supp. 2d 644, 734 (E.D. La. 2009).  Because a distance of three miles from the alleged source of the nuisance is too great to support relief for nuisance, this Court can hold as a matter of law that M-I—located at least 48 miles from any Plaintiff—cannot be liable for either public or private nuisance under Louisiana law.  *See TS & C Invs. LLC v. Beusa Energy Inc.*, 344 F. App'x 907, 908-09 (5th Cir. 2009) (affirming dismissal of a Louisiana nuisance claim on the grounds that the plaintiffs were 20 miles away from the defendant oil producer).

**B.      Plaintiffs Fail To State A Claim For Trespass.**

Plaintiffs next allege that M-I discharged oil knowing that it would "invade" their property and that M-I allowed contaminants and noxious odors to migrate onto their property.  Compl. ¶¶ 685-90.  Plaintiffs allege further that M-I engaged in this behavior "outrageous[ly] and malicious[ly]" with "willful, reckless and wanton" disregard for their rights.  *Id.* ¶ 690.  Plaintiffs seek compensatory and punitive damages.  However, any Plaintiffs who were not the owners of real property that was "invaded" by oil have failed to allege a cognizable claim for trespass under Louisiana law.

In Louisiana, "[a] trespass occurs when there is an unlawful physical invasion of the property or possession of another."  *Bourquard v. L.O. Ausauma Enters., Inc.*, 52 So. 3d 248, 251 (La. Ct. App. 2010) (internal quotation omitted).[6]  Thus, any Plaintiff not suffering an actual

---

[6]  This is the case in each of the Gulf Coast states.  *See Donald v. Amoco Prod. Co.*, 735 So. 2d 161, 169 (Miss. 1999); *Borland v. Sanders Lead Co.*, 369 So. 2d 523, 527 (Ala. 1979); *Petroleum Prods. Corp. v. Clark*, 248 So. 2d 196, 198-99 (Fla. Dist. Ct. App. 1971); *City of Arlington v. City of Fort Worth*, 873 S.W.2d 765, 769 (Tex. App.—Fort Worth 1994) (citing *Gregg v. Delhi-Taylor Oil Corp.*, 344 S.W.2d 411, 416 (Tex. 1961)).  Thus, to the extent that these states' trespass laws could apply, the claims of all non-property owners must be dismissed as well.

physical invasion of their property has not pleaded a cognizable trespass claim.  Moreover, only property owners may recover for trespass in Louisiana.  *See*, *e.g.*, *LaRue v. Crown Zellerbach Corp.*, 512 So. 2d 862, 863 (La. Ct. App. 1987).  Thus, the only Plaintiffs who could even potentially recover for trespass are those that own property upon which oil was present.  To the extent the Plaintiffs bring a trespass claim regarding property they do not own or upon which oil did not invade, the Complaint should be dismissed.[7]

## VI.    Plaintiffs Fail To Plead Claims Under State "Mini-OPA" Statutes.

Plaintiffs also assert claims against M-I under Louisiana and Texas statutes that are state analogues to the federal OPA.  Even if OCSLA did not preempt state law, Plaintiffs fail to properly plead a claim under either statute.

### A.    Plaintiffs Fail To Plead A Claim Under LOSPRA.

The Louisiana subclass asserts a claim under the Louisiana Oil Spill Prevention and Response Act, LA. R.S. 30:2451, *et seq*. ("LOSPRA").  Compl. ¶¶ 727-37.  LOSPRA does not provide Plaintiffs with a viable cause of action.

LOSPRA does not create a cause of action for anyone other than the state-wide Coordinator.  The only support Plaintiffs identify for their argument that damages are not limited to the Coordinator is § 2454 of the Act.  But § 2454 is simply the definition section of the Act.  Definitions do not create a cause of action.  Analysis of the entire Act, however, shows that the Act provides recovery of the defined damages through an administrative scheme, not through a court action.

LOSPRA creates a state fund that can be used to pay for damages caused by an oil spill.  *See* § 2483.  If a political subdivision of Louisiana wishes to obtain recovery for its oil spill-

---

[7]  Notably, the State of Louisiana itself has chosen not to bring claims against M-I under Louisiana state nuisance or trespass law, even though it has brought such claims against other defendants.  First Am.

related damages from the fund, it must comply with the procedures laid out in the statute.  *See* § 2484(9) (If a "political subdivision seek[s] an appropriation from the fund [it] must notify the coordinator in writing before submitting the appropriation request to the legislature.").  It is only the state-wide Coordinator who—after the fund has paid money—is granted power by LOSPRA to pursue reimbursement from the responsible persons.  § 2489(B).   LOSPRA does not create a cause of action by anyone other than the Coordinator.

Even if local government entities had filed a claim with the fund, their claims would be premature.  LOSPRA makes explicit that the fund is to be used *only after* federal remedies are exhausted, and here, no local government entity alleges that it has exhausted its federal remedies under OPA (nor could it, as all the physical damages Plaintiffs seek are recoverable under OPA). Damages may be awarded "provided that such are not recoverable under the federal Oil Pollution Act of 1990 . . . and the claimant has exhausted all federal remedies."  *Id.* § 2488(C) (footnote omitted).

In addition, even if local government entities had filed a claim with the state fund, and even if they had exhausted all their federal remedies, the recovery they could obtain is limited. Recovery would be unavailable for lost taxes or damages to natural resources, as those types of damages may be recovered only by the State of Louisiana, not political subdivisions.  *See* § 2454(5)(a), (c).  Because the State of Louisiana has not joined the Complaint, Plaintiffs cannot recover the lost tax revenue and natural resources damages they seek under LOSPRA.

The Complaint also invokes La. R.S. 56:40.1, *et seq*., which governs the unlawful killing or injuring of wildlife.  Compl. ¶¶ 735-37.  The Complaint alleges that each district attorney in which a wild animal was killed may bring an action to recover the value of the animal.  Compl.

---

Compl., *State of Louisiana v. BP Exploration & Prod.* (filed Apr. 19, 2011) (Rec. Doc. No. 2031) 80-85.

22

¶ 736.  A district attorney may bring suit only "in the name of the state."  LA. R.S. 56:40.4.  But the State of Louisiana itself has already brought suit to recover for the value of the animals.  *See* First Am. Compl., *State of Louisiana v. BP Exploration & Prod.*, (Rec. Doc. No. 2031) (filed Apr. 19, 2011), at 51-54.  The only liability for the killing or injuring of wildlife is "to the state." La. R.S. 56:40.1.  Therefore, because liability is to the state only, and the state already has sued, any suit by a district attorney in the name of the state would be duplicative.[8]

### B.    Plaintiffs Fail To Plead A Claim Under TOSPRA.

The Texas subclass asserts a claim under the Texas Oil Spill Prevention and Response Act of 1991, TEX. NAT. RES. CODE ANN. § 40.001, *et seq* ("TOSPRA").  Compl. ¶¶ 738-46.  This claim is also fatally flawed.  The State of Texas has never indicated that its own statute applies to the Deepwater Horizon oil spill.  TOSPRA does not provide a claim for relief.

No party may bring a suit under TOSPRA because TOSPRA does not apply to the Deepwater Horizon oil spill.  First, TOSPRA governs only very specific types of oil spills: discharges of oil from vessels and discharges of oil from terminal facilities.  *See* TEX. NAT. RES. CODE § 40.202(a-b).  The Act does not apply to oil emanating from the ocean floor.  The oil that spilled was not from the *Deepwater Horizon* itself—rather, the oil came from the ocean floor. Oil discharges from the ocean floor are not covered by TOSPRA.

Even if the wellhead from which the oil emerged was a vessel or a terminal facility, TOSPRA still does not apply.  TOSPRA defines a "[d]ischarge of oil" as an "intentional or unintentional act or omission by which harmful quantities of oil are spilled, leaked, pumped, poured, emitted, or dumped *into or on coastal waters or at a place adjacent to coastal waters*

---

[8]  In its First Amended Complaint, the State of Louisiana has not sued M-I under LOSPRA, although it has sued BP, Transocean, Halliburton, Anadarko, MOEX, and Cameron under the statute.  First Am. Compl., *State of Louisiana v. BP Exploration & Prod.*, (Rec. Doc. No. 2031) (filed Apr. 19, 2011) 51-54; *id.* at 63-67.

*where*, unless controlled or removed, an imminent threat of pollution to coastal waters exists." *Id.* § 40.003(8) (emphasis added).  The Deepwater Horizon oil spill occurred far outside Texas coastal waters, and it was not "adjacent" to the coastal waters—it was many miles away at the nearest point.   Indeed, as explained above, the location of the *Deepwater Horizon* is "adjacent" to Louisiana, not Texas.  By its terms, TOSPRA does not apply to this oil spill, and therefore, no claim may be brought under its provisions.  *See also* Michael P. Donaldson, *The Texas Response to Oil Pollution: Which Law to Apply*, 25 ST. MARY'S L.J. 533, 579 (1994) ("The reach of TOSPRA against responsible parties extends only to the coastal waters of Texas.").

But even if TOSPRA applied to the Deepwater Horizon oil spill, the statute creates a cause of action only for the State of Texas itself (brought on its behalf by the Texas attorney general), not for local municipalities within Texas.  *See* TEX. NAT. RES. CODE ANN. § 40.255(b). Thus, because the Complaint attempts to bring a TOSPRA claim on behalf of Texas municipalities, the claim fails according to the plain terms of the statute.   The reason local government entities may not sue under TOSPRA is apparent from the statute itself.  Other than the State of Texas, anyone bringing a claim under TOSPRA obtains compensation through an administrative scheme, by filing a claim with the designed responsible party (which M-I is not), filing a claim with the federal oil spill fund, and filing a claim with the Texas oil spill fund. *See id.* § 40.159.  Then, if the state fund has to pay for damages, the state fund may pursue a cause of action against the responsible party to reimburse the payment it made.  *Id.* § 40.255(b).  This makes sense: it allows injured parties to obtain relief without the expense and burden of litigation, while allowing the State of Texas to obtain compensation for any payments it is forced to make.   Municipalities have administrative remedies under TOSPRA, but TOSPRA specifically gives a right to sue only to the State of Texas.

## VII.   Plaintiffs Have Pled No Claim Entitling Them To Punitive Damages Against M-I.

It is unclear from Plaintiffs' Master Complaint whether and to what extent they are seeking punitive damages against M-I.  *Compare* Compl. ¶¶ 585, 595 (claiming entitlement to punitive damages generally), *with* Compl. ¶ 749 (limiting their demand for punitive damages on "all claims" to BP, Transocean, and Halliburton).[9]   Regardless, and notwithstanding that Plaintiffs have failed to plead cognizable claims against M-I, federal law clearly establishes that punitive damages are not available under OPA or the general maritime law.  *See*, *e.g.*, *S. Port Marine*, 234 F.3d at 64-66.

Additionally, even if Louisiana law applied through OCSLA, which it does not, punitive damages would not be recoverable for trespass or nuisance.  "In Louisiana, there is a general public policy against punitive damages; thus, a fundamental tenet of our law is that punitive or other penalty damages are not allowable unless expressly authorized by statute."  *Ross v. Conoco, Inc.*, 828 So. 2d 546, 555 (La. 2002).  There is no statute in Louisiana allowing for the recovery of punitive damages for nuisance or trespass.  To the extent Plaintiffs are seeking punitive damages from M-I, their claim must be dismissed.[10]

## CONCLUSION

---

[9]  M-I disputes—and discovery since Plaintiffs' suit was filed has demonstrated—that M-I is not properly classified a "Drilling Defendant," Compl. ¶ 229; while the Court must accept Plaintiffs' allegations as true in considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the notable exclusion of M-I from Plaintiffs' claim for punitive damages suggests Plaintiffs' recognition that M-I's role on the *Deepwater Horizon* was far different than the true Drilling Defendants—Transocean, BP, and Halliburton.

[10]  For that matter, punitive damages are not available under Plaintiffs' common law claims under the laws of the other four Gulf Coast states.  Mississippi, Alabama, Florida, and Texas all require a heightened mental state for punitive damages to be available.  *See Southland Co. v. Aaron*, 80 So. 2d 823, 826 (Miss. 1955); *Seale v. Pearson*, 736 So. 2d 1108, 1113 (Ala. Civ. App. 1999); *Rice v. Merritt*, 549 So. 2d 508, 511 (Ala. Civ. App. 1989); *Monty v. Hayward*, 451 So. 2d 938, 938 (Fla. Dist. Ct. App. 1984); *Holubec v. Brandenberger*, 214 S.W.3d 650, 658-59 (Tex. App. 2006).  To the extent Plaintiffs seek punitive damages from M-I under these states' laws, they have failed to plead facts establishing M-I's heightened mental state, and such claims must be dismissed.

For the foregoing reasons, M-I respectfully requests that this Court dismiss all claims asserted against M-I in Plaintiffs' Voluntary Bundle C Master Complaint and the Bundle C complaints encompassed therein.

Respectfully submitted,

**OF COUNSEL:**                                    MORGAN, LEWIS & BOCKIUS LLP
MORGAN, LEWIS & BOCKIUS LLP

Derek E. Leon                                      By: /s/ Hugh E. Tanner
dleon@morganlewis.com                                  Hugh E. Tanner
Texas Bar No. 24002463                                 htanner@morganlewis.com
5300 Wachovia Financial Center                         Texas Bar No. 19637400
200 South Biscayne Boulevard                           1000 Louisiana, Suite 4000
Miami, Florida  33131                                  Houston, Texas  77002
Telephone:  (305) 415-3000                             Telephone:  (713) 890-5000
Facsimile:  (305) 415-3001                             Facsimile:  (713) 890-5001

Denise Scofield
dscofield@morganlewis.com                          **ATTORNEYS FOR DEFENDANT**
Texas Bar No. 00784934                             **M-I L.L.C.**
1000 Louisiana, Suite 4000
Houston, Texas  77002
Telephone:  (713) 890-5000
Facsimile:  (713) 890-5001

**ATTORNEYS FOR DEFENDANT**
**M-I L.L.C.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing document has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 29th day of April 2011.

 /s/ *Hugh E. Tanner*
Hugh E. Tanner