# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  OIL SPILL BY THE OIL RIG | * | MDL NO. 2179 |
| DEEPWATER HORIZON | * | |
| GULF OF MEXICO, APRIL 20, 2010 | * | SECTION "J" |
| | * | |
| Pleading Applies to: | * | JUDGE BARBIER |
| *All Cases in Pleading Bundle D1* | * | |
| ****************************************** | | MAGISTRATE SHUSHAN |

### REPLY IN SUPPORT OF BP's MOTION TO DISMISS
### MASTER COMPLAINT ("BUNDLE D1")
### PURSUANT TO FED. R. CIV. P. 12(B)(1), 12(B)(6) AND 12(B)(7)

## TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 3

I.  THERE IS NO CITIZEN SUIT ENFORCEMENT OF CWA SECTION 311 .................. 3

II.  PLAINTIFFS FAILED TO COMPLY WITH THE CITIZEN SUIT NOTICE
     PROVISIONS ........................................................................................................... 6

     A.  Plaintiffs Make No Argument That the Notice Requirements of CERCLA
         and EPCRA Were Met. ................................................................................... 7

     B.  The CWA Notice Provided in *CBD I* Was Defective, as the Immediate
         Suit Provision of CWA Section 505(b) Does Not Apply to Private Parties. .......... 7

     C.  The Notice of Claims Under the ESA Provided in *Defenders* Was
         Defective and Those Deficiencies Require Dismissal of This Suit ...................... 10

III.  PLAINTIFFS HAVE FAILED TO ALLEGE AN ONGOING VIOLATION,
      JUDGED FROM EITHER NOW (MOOTNESS) OR AT THE TIME THIS SUIT
      OR ANY OF THE UNDERLYING LAWSUITS WERE PROPERLY
      COMMENCED (LACK OF SUBJECT MATTER JURISDICTION). ............................ 12

     A.  There Was Not an Ongoing Violation, or a Reasonable Likelihood of
         Recurring Violations, at the Time Suit Was Commenced. ................................ 13

     B.  Plaintiffs' Claims for Injunctive Relief Are Moot as There Is Currently
         Not an Ongoing Violation, or a Reasonable Likelihood of Recurring
         Violations. ................................................................................................... 14

IV.  PLAINTIFFS LACK STANDING TO PURSUE THEIR CLAIMS UNDER THE
     CWA, THE ESA, AND EPCRA. ................................................................................ 18

     A.  Plaintiffs' Claims for Injunctive Relief Under the CWA Are Not
         Redressable Because the Macondo Well is Dead and There Is No Longer a
         Facility from Which a Future Release Could Occur. ........................................ 18

     B.  Plaintiffs' Claims Under the ESA Are Not Redressable or Are Already
         Being Redressed. ............................................................................................ 19

     C.  Plaintiffs Fail to Allege a Concrete Informational Injury Necessary to
         Establish Standing Under EPCRA. ................................................................. 20

V.  THE PETROLEUM EXCLUSION DEFEATS PLAINTIFFS' CLAIMS UNDER
    CERCLA. .................................................................................................................. 21

i

A.   Pursuant to the Petroleum Exclusion, Crude Oil and Its Naturally Occurring Constituents Are Not Hazardous Substances Under CERCLA. ..........21

B.   The Petroleum Exclusion Is Not Vitiated Due to the Introduction of Spacer and Drilling Mud into the Wellhead. ...........................................................23

VI.    GOVERNMENTAL AGENCIES WITH AN INTEREST IN ONGOING GULF REMEDIATION EFFORTS ARE NECESSARY AND INDISPENSABLE PARTIES TO THE PRESENT ACTION. ........................................................................24

VII.   THE PRIMARY JURISDICTION DOCTRINE APPLIES TO CLAIMS UNDER ENVIRONMENTAL STATUTES SUCH AS THE ESA. ..............................................25

VIII.  THE PLAINTIFFS' MARITIME AND STATE LAW CLAIMS MUST BE DISMISSED FOR THE REASONS GIVEN IN BP'S B1 MOTION TO DISMISS. .........................................................................................................................25

CONCLUSION ..............................................................................................................................25

APPENDIX ..................................................................................................................................A-1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aiello v. Town of Brookhaven,*
  136 F. Supp. 2d 81 (E.D.N.Y. 2001) ............................................................. 9

*Anthony v. United States,*
  520 F.3d 374 (5th Cir. 2010) ...................................................................... 24

*Ascon Properties, Inc. v. Mobil Oil Co.,*
  866 F.2d 1149 (9th Cir. 1989) ...................................................................... 6

*Atlantic States Legal Found., Inc. v. Tyson Foods, Inc.,*
  897 F.2d 1128 (11th Cir. 1990) ................................................................. 15

*Catskill Mountains Ch. of Trout Unlimited, Inc. v. City of N.Y.,*
  273 F.3d 481 (2d Cir. 2001) ...................................................................... 11

*Center for Biological Diversity v. Marina Point Dev. Co.,*
  566 F.3d 794 (9th Cir. 2009) ..................................................................... 12

*Chicago Ass'n of Commerce and Indus. v. EPA,*
  873 F.2d 1025 (7th Cir. 1989) .................................................................... 9

*City of L.A. v. Lyons,*
  461 U.S. 95 (1983) .................................................................................... 20

*Copeland v. C.I.R.,*
  290 F.3d 326 (5th Cir. 2002) ...................................................................... 24

*Dague v. City of Burlington,*
  935 F.2d 1343 (2d Cir. 1991), *rev'd on other grounds*, 505 U.S. 557 (1992) ........... 9

*Eagle-Picher Indus., Inc. v. United States,*
  901 F.2d 1530 (10th Cir. 1990) ............................................................... 17-18

*Envtl. Conservation Org. v. City of Dallas,*
  529 F.3d 519, 527 (5th Cir. 2008) .............................................................. 15

*Farnham v. Windle,*
  918 F.2d 47 (7th Cir. 1990) ......................................................................... 5

*FEC v. Akins,*
  524 U.S. 11 (1998) .................................................................................... 20

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
    528 U.S. 167 (2000) ................................................................................ 14, 15, 17, 18

*Fund for Animals v. Norton,*
    295 F. Supp. 2d 1 (D.D.C. 2003) .......................................................................... 20

*Garcia v. Cecos Int'l,*
    761 F.2d 76 (1st Cir. 1985) ............................................................................ 10, 12

*Glanton v. AdvancePCS, Inc.,*
    465 F.3d 1123 (9th Cir. 2006) ......................................................................... 19, 20

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.,*
    484 U.S. 49 (1987) ........................................................... 2, 5, 14, 15, 16, A-1

*Hallstrom v. Tillamook County,*
    493 U.S. 20 (1989) .................................................................................... 10, 11, 12

*Hamker v. Diamond Shamrock Chem. Co.,*
    756 F.2d 392 (5th Cir. 1985) .................................................................................. 16

*Hudson v. Leake County School Dist.,*
    No. 3:08cv90, 2009 WL 1111181, *8 (S.D. Miss. Apr. 21, 2009) ........................... 7

*Lollar v. Baker,*
    196 F.3d 603 (5th Cir. 1999) .................................................................................... 5

*McBryde v. Committee to Review,*
    264 F.3d 52 (D.C. Cir. 2001) ................................................................................. 17

*National Envtl. Found. v. ABC Rail Corp.,*
    926 F.2d 1096 (11th Cir. 1991) ........................................................................... 8, 9

*Niecko v. Emro Mkt. Co.,*
    769 F. Supp. 973, 981 (E.D. Mich. 1991) ......................................................... 21, 22

*National Parks & Conserv. Assoc., Inc. v. TVA,*
    502 F.3d 1316 (11th Cir. 2007) .......................................................................... 8, 11

*Northwest Envtl. Advocates v. EPA,*
    537 F.3d 1006 (9th Cir. 2008) ................................................................................. 4

*Pennsylvania Dep't of Envtl. Res. v. EPA,*
    618 F.2d 991 (3d Cir. 1980) ................................................................................... 10

*Penny v. Sw. Bell Tel. Co.,*
    906 F.2d 183 (5th Cir. 1990) ................................................................................. 25

iv

*Raritan Baykeeper, Inc. v. NL Indus.*,
  713 F. Supp. 2d 448 (D.N.J. 2010) ........................................................................ 25

*Save Our Sound Fisheries Ass'n v. Callaway*,
  429 F. Supp. 1136 (D. R.I. 1977) ............................................................................. 9

*Sierra Club v. Yeutter*,
  926 F.2d 429 (5th Cir. 1991) .................................................................................. 12

*SPPI-Somersville, Inc. v. TRC Co*s.,
  No. 07-5824, 2009 WL 2612227 (N.D. Cal. Aug. 21, 2009) ........................... 19, 20

*Stearman v. C.I.R.*,
  436 F.3d 533 (5th Cir. 2006) ................................................................................... 7

*Steel Co. v. Citizens for a Better Env't*,
  918 F.2d 47 (7th Cir. 1990) ................................................................................... 20

*Texas v. United States*,
  523 U.S. 296 (1998) ............................................................................................... 19

*Thomas v. Union Carbide Agric. Prods. Co.*,
  473 U.S. 568 (1985) ............................................................................................... 19

*Thompson v. Goetzmann*,
  337 F.3d 489 (5th Cir. 2003) ................................................................................ 3-4

*TRW Inc. v. Andrews*,
  534 U.S. 19 (2001) ................................................................................................... 5

*United States v. Marrifield*,
  515 F.2d 877 (5th Cir. 1975) .................................................................................. 22

*United States v. Western Pac. R.R. Co.*,
  352 U.S. 59 (1956) ................................................................................................. 25

*Vermont Agency of Natural Res. v. United States ex rel. Stevens*,
  529 U.S. 765 (2000) ............................................................................................... 19

*Walls v. Waste Res. Corp.*,
  761 F.2d 311 (6th Cir. 1985) ............................................................................ 7-8, 9

*Wilshire Westwood Assoc. v. Atl. Richfield Corp.*,
  881 F.2d 80 (9th Cir. 1989) .................................................................................... 22

**Statutes**

*Endangered Species Act ("ESA")*

    ESA Section 3(19), 16 U.S.C. § 1532(19) ...............................................................17

*Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA")*

    CERCLA Section 101(14), 42 U.S.C. § 9601(14) ..........................................21, 22

    CERCLA Section 104(a)(2), 42 U.S.C. § 9604(a)(2) ............................................23

*Clean Water Act ("CWA")*

    CWA Section 301, 33 U.S.C. § 1311 ...............................................................A-1

    CWA Section 301(a), 33 U.S.C. § 1311(a) ...............................................3, 4, 5, 8

    CWA Section 306, 33 U.S.C. § 1316 ...............................................................7, 8, 9

    CWA Section 307, 33 U.S.C. § 1317 ...............................................................9

    CWA Section 307(a), 33 U.S.C. § 1317(a) ...............................................7, 8, 9

    CWA Section 307(d), 33 U.S.C. § 1317(d) ...............................................8, 9

    CWA Section 311, 33 U.S.C. § 1321 ...............................................1, 2, 3, 4, 5, 6, 17

    CWA Section 311(c), 33 U.S.C. § 1321(c) ...............................................5

    CWA Section 311(d), 33 U.S.C. § 1321(d) ...............................................5

    CWA Section 311(j), 33 U.S.C. § 1321(j) ...............................................5

    CWA Section 505, 33 U.S.C. § 1365 ...............................................5

    CWA Section 505(a), 33 U.S.C. § 1365(a) ...............................................5

    CWA Section 505(a)(1), 33 U.S.C. § 1365(a)(1) ...............................................3

    CWA Section 505(a)(2), 33 U.S.C. § 1365(a)(2) ...............................................10

    CWA Section 505(b), 33 U.S.C. § 1365(b)...............................................9, 9-10

    CWA Section 505(b)(2), 33 U.S.C. § 1365(b)(2). ...............................................7, 9, 10

    CWA Section 505(f), 33 U.S.C. § 1365(f) ...............................................3, 4, 5

## Legislative History

126 Cong. Rec. H11796 (Rep. Mikulski) (daily ed. Dec. 3, 1980) ...............................................22

S. Rep. No. 96-848, 96th Cong., 2d Sess. 29-30 (1980) .................................................................22

## Regulations

40 C.F.R. § 135.3(a) ...........................................................................................................................12

40 C.F.R. § 261.4(b)(5) ............................................................................................................23, 24

50 C.F.R. § 17.3...................................................................................................................................17

## Rules

Fed. R. Civ. P. 12(b)(7) ...................................................................................................................24

Fed. R. Civ. P. 19 .............................................................................................................................24

Fed. R. Civ. P. 19(a)(1)(A) ..............................................................................................................24

Fed. R. Civ. P. 19(a)(1)(B)(i) ..........................................................................................................24

Fed. R. Civ. P. 19(a)(1)(B)(ii) .........................................................................................................24

## Other Authorities

http://www.gulfcoastclaimsfacility.com/GCCF_Overall_Status_Report.pdf. ...............................1

Memorandum from Francis S. Blake, EPA Gen. Counsel, to J. Winston Porter,
   Ass't Adm'r for Solid Waste and Emergency Response, Scope of the CERCLA
   Petroleum Exclusion Under Sections 101(14) and 104(a)(2), 1987 WL 123926
   (July 31, 1987) ........................................................................................................................22-23

*Jeffrey G. Miller, Private Enforcement of Federal Pollution Control Laws, Part 1,*
   13 ENVTL. L. REP. 10,309, 10,320-21 (1983) ..............................................................................4

Regulatory Determination for Oil and Gas and Geothermal Exploration, Development,
   and Production Wastes, 53 Fed. Reg. 25,446 (July 6, 1988) ......................................................4

## INTRODUCTION

The D1 Plaintiffs' Opposition continues to ignore that the citizen suit provisions they try to invoke are cabined remedies.  They proceed here as if they are entitled to exercise the enforcement prerogatives of the United States, unconstrained by the many procedural prerequisites imposed on citizen suits.  But that is not the law.  Plaintiffs misconstrue or simply disregard the purpose of such suits, which is to supplement—not supplant—government action.

Perhaps to deflect from their flawed legal theories, Plaintiffs fill their Opposition with invective directed almost entirely at BP (though Transocean also filed a motion to dismiss the D1 master complaint).  For instance, Plaintiffs' claim, without citation or support, that BP mounted an "orchestrated campaign to shut out members of the public" and deny them information.  Pls.' Opp'n at 2.  To the contrary, BP conducted a response effort of unprecedented scale in full view and in open partnership with federal and state actors of the Unified Command.  Plaintiffs ignore the unfolding discovery process in the MDL, through which BP has disclosed over one million of pages of documents.  Plaintiffs also ignore that only BP has set aside $20 billion for injured claimants, of which nearly $4 billion has already been paid.  http://www.gulfcoastclaimsfacility.com/GCCF_Overall_Status_Report.pdf.

As BP has explained in its Motion to Dismiss, there are many independent reasons why the causes of action for injunctive relief in the D1 bundle cannot stand.  Three reasons, however, are particularly straightforward.  If the Court agrees with these three arguments, it does not need to reach the numerous other grounds for dismissal BP has established.

*First*, CWA Section 311 cannot be privately enforced.  The United States has underscored that fact to this Court, and the United States—not Plaintiffs—is right.  Indeed, Plaintiffs' contrary arguments find no support in precedent and violate fundamental principles of statutory construction.  The upshot is clear: any D1 claim premised on Section 311 must be

dismissed because there is no private right of action.  That reason *alone* is sufficient to dismiss all Section 311 claims, whether for injunctions or—as the Center for Biological Diversity let slip, *see* BP Mem. at 16 n.5—for "billions" in monetary penalties dressed in injunctive clothing.

*Second*, Plaintiffs have not complied with any of the mandatory notice requirements. Most tellingly, nowhere in the Response do Plaintiffs even argue that they gave notice under CERCLA or EPCRA.  That silence tells all.  Because Plaintiffs literally make no argument to the contrary, all CERCLA and EPCRA claims must be dismissed for failure to give notice.  There are many other reasons why CERCLA and EPCRA claims must be dismissed, but again Plaintiffs' failure to give notice is enough *by itself* to mandate that outcome.

*Third*, all claims for injunctive relief—and that means *all claims* here since claims for monetary damages or penalties by definition go beyond D1's scope—are moot and blocked by *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49 (1987).  Even Plaintiffs concede that the spill has ended.  But the result of that concession is dismissal of the D1 complaint—there is no longer a discharge to be enjoined.  Because the well has been capped, no case or controversy is left for this Court to decide.  Again, there are many other interlaced reasons why the ESA and all other CWA claims must be dismissed, but mootness is enough. Similarly, Plaintiffs do not have standing to seek redress by injunction to stop a spill that has been over for nine-plus months, and which is already being remedied.

To the extent the Plaintiffs could pass through the combined screen of the three defects focused on above, many additional flaws in the Plaintiffs' claims remain.  Dismissal is also warranted because (1) Plaintiffs did not give lawful notice under the CWA or ESA; (2) CERCLA's petroleum exclusion clearly applies to claims arising out of an oil spill, and (3) this Court cannot decide ESA claims in the absence of the United States, and, in any event, (4)

should  apply the doctrine of primary jurisdiction.  The Appendix contains a chart summarizing the legal defects applicable to each of the claims.  In short, no matter how this Court reaches its conclusion, there is only one lawful conclusion to be reached: each claim must be dismissed.

## ARGUMENT

## I.        THERE IS NO CITIZEN SUIT ENFORCEMENT OF CWA SECTION 311.

Plaintiffs argue that citizens are empowered to enforce CWA Section 311.  That argument, however, runs headlong into what the United States has already explained to this Court:  there is no private enforcement of Section 311.  The BP Defendants are aware of no scholarship, much less actual precedent, even suggesting that Section 311 may be enforced by citizen suit, and Plaintiffs cite none.  *See* Pls.' Opp'n at 20-24.  Instead, Plaintiffs weave a novel CWA theory that violates bedrock principles of statutory interpretation and common sense.

At the outset, Plaintiffs' entire argument is premised on the false proposition that Section 311 is somehow "concomitant with" and "subsumed by" CWA Section 301(a), such that Section 301(a) is effectively synonymous with Section 311.  Pls.' Opp'n at 22.  Plaintiffs advance this strained argument because they are faced with the undeniable fact that CWA Section 505(a)(1) only authorizes citizen suits to enforce "an effluent standard or limitation,"[1] which is expressly defined in CWA Section 505(f) to include seven CWA provisions and no more.  One of those provisions is Section 301(a), *but Section 311 is omitted*.  33 U.S.C. § 1365(a) & (f).  Congress's intent could hardly be clearer—Section 311 is not subject to private enforcement.  *See, e.g.*, *Thompson v. Goetzmann*, 337 F.3d 489, 499 (5th Cir. 2003) (per curiam) (Fifth Circuit applies "the well-known interpretative canon, *expressio unius est exclusio alterius*—'the expression of

---

[1]  Section 505(a)(1) also authorizes citizen suits to enforce "an order issued by the Administrator or a State with respect to such a standard or limitation."  33 U.S.C. § 1365(a).  But Plaintiffs do not allege in the D1 Master Complaint or in their Opposition that BP has failed to comply with any such order.  *See, e.g.*, Pls.' Opp'n at 21-22.

one thing implies the exclusion of another'") (quoted source omitted).

Importantly, the United States agrees with BP:  "Section 505(f) carefully defines 'effluent standard or limitation' in relation to various prohibitions or limitations established under specific sections of the CWA.  Nowhere does the definition include CWA Section 311's prohibition on the discharge of oil in such quantities as may be harmful.  As a result, suits based on that Section . . . can only be brought by the United States."  *United States' Mem. in Opp. to Sierra Club's Motion to Intervene* at 6; *see also Jeffrey G. Miller*, *Private Enforcement of Federal Pollution Control Laws*, *Part 1*, 13 ENVTL. L. REP. 10,309, 10,320-21 (1983) ("[Citizens] may not enforce [§ 311].").

In response, Plaintiffs cite nothing.  They argue that Section 311 is "subsumed by" Section 301(a), not because any case, principle of statutory interpretation, or even isolated scholarly article says or even suggests as much, but instead because a court has characterized Section 301(a) as the "cornerstone and fundamental premise of the Clean Water Act."  Pls.' Opp'n at 21 (quoting *Northwest Envtl. Advocates v. EPA*, 537 F.3d 1006, 1020 (9th Cir. 2008)).  Which provisions in complex statutes are central is often a matter in the eye of the beholder.  Whether descriptively accurate or not, however, Plaintiffs' focus on CWA Section 301(a)'s general prohibition on unauthorized discharges simply does not speak to the specific question that must be addressed here—whether CWA Section 311 can be enforced by citizen suit.

Moreover, Plaintiffs' novel interpretation would make entirely meaningless the explicit statutory language confining citizen suits to a limited and carefully defined list of enforceable provisions.  If Section 301(a)'s status as the "'cornerstone' of the CWA" causes it to subsume Section 311, then by the same logic, Section 301(a) would also subsume all provisions of the CWA and Section 505(f)'s inclusion of six CWA provisions in addition to Section 301(a) would become immediately superfluous.  *See* 33 U.S.C. § 1365(f).  No citizen would ever bother to sue under a particular provision being violated, even if that provision were specifically listed in

Section 505(f).  Instead, all citizen suits would purport to enforce Section 301(a) itself.  Section 301(a) would from that point forward swallow the rest of Section 505(f)'s list.  Plaintiffs' argument thus flatly violates the "cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that . . . no clause, sentence, or word shall be superfluous, void, or insignificant."  *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoted source omitted).  To interpret Section 301(a) to be enforceable by citizen suit for the purpose of obtaining the specific remedies of provisions of the Act ***not*** listed in Section 505(f), such as Section 311 relating specifically to oil spills, is to go beyond all reason.[2]

Plaintiffs' remaining arguments are also without merit.  Their discussion of the legislative history of Section 311, *see* Pls.' Opp'n at 22 n.21, says not a word about citizen suits.  And no principle could authorize this Court to accept Plaintiffs' invitation to ignore basic tenets of statutory interpretation because of the "enormity of this case."  *Id.* at 24.  The principles of statutory interpretation cannot be bent as Plaintiffs see fit to create result-oriented jurisprudence.

Plaintiffs' CWA Section 311 citizen suit claim is so untenable that the only basis for its inclusion would appear to be that the Plaintiffs do not trust the active federal enforcers that are

---

[2]  Plaintiffs' CWA Section 301 claim fails for many reasons: (1) lack of proper notice (*see* Section II.B); (2) violation of the *Gwaltney* doctrine (*see* Section III.A); (3) mootness (*see* Section III.B); and (4) lack of standing (*see* Section IV).  Were the Court to reject all four of those grounds for dismissal, then the Court would need to consider whether Section 301 could be enforced via a Section 505 citizen suit in the context of an oil spill controlled by Section 311's detailed forms of remedies.  *See Lollar v. Baker*, 196 F.3d 603, 609-10 (5th Cir. 1999) (specific remedies control over more general provisions); *Farnham v. Windle*, 918 F.2d 47, 49-50 (7th Cir. 1990) (specific provision limiting remedies in ordinance controls over other provision granting general enforcement rights).  For instance, we note that the United States, which is not even subject to the citizen limitations of Section 505(f), has not sued under Section 301, but rather only asserts CWA claims under Section 311.  To allow citizen plaintiff to utilize Section 301 to seek a Section 505(a) injunction relating to an oil spill would subvert Section 311's extensive provisions concerning the precise metes and bounds of oil spill injunctions, administrative orders by EPA and the Coast Guard, and cleanup remedies when and only when rendered consistent with the President's National Contingency Plan ("NCP").  *See especially* CWA Section 311(c), (d), (j), 33 U.S.C. § 1321(c), (d), (j).  Given the supplemental nature of citizen suit remedies, citizen enforcers should not be able to use the general remedies available regarding CWA Section 301 to circumvent the NCP restrictions that apply to federal officials or any other aspect of the tailored remedial regime Congress selected for oil spills in Section 311.

seeking relief against various defendants.  But Congress gave Plaintiffs no role to sit at a hoped-for settlement table so they could second guess federal enforcers.  Whatever Plaintiffs' motive, it does not and cannot change the fact that Section 311 can be enforced only by the United States.

Because Section 311 contains no private right of action, Plaintiffs' Second and Fifth Claims for Relief must be dismissed for this reason alone.

## II.    PLAINTIFFS FAILED TO COMPLY WITH THE CITIZEN SUIT NOTICE PROVISIONS.

Plaintiffs have not complied with the jurisdictional notice provisions.  To be sure, Plaintiffs assert that "[n]otice was, in fact, pled."  Pls.' Opp'n at 25 (citing Master Compl. at ¶ 7).  But the question is whether it was pled properly.  The Master Complaint fails to allege *facts* sufficient to show compliance with the 60-day notice requirements, providing only a conclusory assertion that "at least one of the Organizational Plaintiffs joining in this Master Complaint provided a valid notice of intent to sue . . . ."  Master Compl. at ¶ 7.  Such conclusory assertions—with no indication of which Plaintiff provided notice, when that notice was provided, or what specific violations were noticed—are insufficient to survive a motion to dismiss.  *See, e.g.*, *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1158 (9th Cir. 1989).  Moreover, it bears repeating that *each plaintiff* must independently comply with the 60-day notice requirement.  *See* BP Mem. at 22-23.  Any suggestion that proper notice by one plaintiff can paper over a failure to give notice on the part of all other plaintiffs is simply incorrect.

But the Complaint suffers from an even more fundamental flaw—for two of the statutes invoked, Plaintiffs do not even argue that notice was given.  One will search the Opposition in vain for any suggestion that Plaintiffs complied with the jurisdictional notice requirements for CERCLA or EPCRA.  Because Plaintiffs do not even argue that they met the standard under those two statutes, this Court can quickly dismiss Claims Six and Seven on notice grounds alone.

Likewise, Plaintiffs' CWA and ESA claims were not properly noticed, as explained below.

### A. Plaintiffs Make No Argument That the Notice Requirements of CERCLA and EPCRA Were Met.

In the Motion to Dismiss, BP pointed out that Plaintiffs failed to give proper notice under each of four statutes. In the Response, Plaintiffs make arguments about claimed notice under the CWA and ESA, but are mum about CERCLA and EPCRA. There is a reason for that telling omission: Plaintiffs have no argument to make. They never gave notice. And even if they did have an argument, which they do not, it is now waived. *See, e.g.*, *Stearman v. C.I.R.*, 436 F.3d 533, 537 (5th Cir. 2006) (per curiam) ("Whatever arguments Stearman may have on appeal on why dismissal for failure to state a claim was improper are waived because he did not raise them in his invective-filled response to the motion to dismiss."); *Hudson v. Leake Cty. Sch. Dist.*, No. 3:08cv90, 2009 WL 1111181, *8 (S.D. Miss. Apr. 21, 2009) ("Plaintiff waived the claim when she failed to discuss this issue in response to Defendants' motion to dismiss."). This Court must dismiss all CERCLA and EPCRA claims, *i.e.*, Claims Six and Seven.

### B. The CWA Notice Provided in *CBD I* Was Defective, as the Immediate Suit Provision of CWA Section 505(b) Does Not Apply to Private Parties.

Plaintiffs also failed to satisfy the notice provisions of the CWA. The CWA provision recognizes a limited statutory exemption to the 60-day notice requirement for citizen suits filed against the EPA Administrator respecting a violation of Section 306 (regarding "national standards of performance") or Section 307(a) (regarding "toxic and pretreatment effluent standards"). CWA Section 505(b)(2), 33 U.S.C. § 1365(b)(2). Plaintiffs argue that this exception to the 60-day notice requirement also applies to citizen suits against private defendants such as BP. *See* Pls.' Opp'n at 25-31. They are incorrect. The immediate suit exception only applies to suits against the federal government, and not to citizen suits against private defendants. *See, e.g.*, *Walls v. Waste Res. Corp.*, 761 F.2d 311, 316-17 (6th Cir. 1985) ("Both the RCRA and

the [Clean Water Act] citizen suit statutes contain a sole, explicit exception to the notice requirement which authorizes an action ***against the EPA Administrator*** immediately after notice is given when certain kinds of violations are alleged. ***In all other instances***, plaintiffs invoking these citizen suit provisions must comply with specified procedures, including 60 days prior notice to potential defendants.") (internal quotations omitted) (emphasis added).[3]

As discussed above, to avoid the 60-day notice requirement, Plaintiffs must allege violations of Sections 306 or 307(a). However, neither of these provisions provides a basis for immediate suit against a private party such as BP. ***First***, the immediate suit exception does not apply to citizen suits against private parties alleging violations of Section 307(a). It is clear, and Plaintiffs do not deny, that Section 307(a) only imposes obligations on the EPA Administrator. *See, e.g.*, *National Envtl. Found. v. ABC Rail Corp.*, 926 F.2d 1096, 1098 (11th Cir. 1991) (Justice Powell, sitting by designation) ("The language of [33 U.S.C.] Section 1317(a) clearly addresses the Administrator only."). However, in an attempt to circumvent the plain language, Plaintiffs argue that an action against a private party pursuant to Section 307***(d)***, which is the "first and only subsection of [Section 307] to impose duties upon or proscribe conduct by private parties," *id.*, constitutes an action "respecting" a violation of Section 307***(a)***. Pls.' Opp'n at 29. This is wrong and is flatly inconsistent with the plain text, which specifically limits the exception to suits brought under Section 307***(a).*** The statutory exception to the 60-day notice requirement

---

[3] The argument that "the D1 Master Complaint (and underlying complaints) take the form of 'hybrid' complaints, free from any notice and delay restraints," Pls. Opp'n at 30 n.28, vastly overstates the case law. The complaint in *CBD I* only alleged violations of CWA Sections 301(a) and 306. Thus, at most, the ***Center's*** claims under Sections 301(a) and 306 might be free from notice requirements. The "hybrid complaint" cases provide no basis for eliminating the requirement that each plaintiff independently comply with the 60-day notice requirement. *See Nat'l Parks & Conserv. Assoc., Inc. v. TVA*, 502 F.3d 1316, 1329 (11th Cir. 2007) (such cases only addressed "excusal of [the] post-notice delay requirement" and did not provide a "basis for eliminating the requirement that specific notice be given"). Additionally, the hybrid complaint rule has no application if those seeking to invoke it cannot establish that at least one of their claims to enforce some statute allows immediate suit. If Plaintiffs here cannot establish that either their CWA Sections 306 or 307(a) claims against private defendants are eligible for immediate suit, then the hybrid complaint rule cannot save any of their other CWA citizen suit claims from failure to provide notice.

for citizen suits alleging violations of Section 307(a) is not applicable to suits against private parties.[4]  Plaintiffs' creative argument to the contrary would make Congress's careful restriction of the exception to Section 307*(a)* suits superfluous.

*Second*, the immediate suit provision does not apply to citizen suits against private parties alleging violations of Section 306.  *See, e.g.*, *Walls*, 761 F.2d at 316-17 & n.3 (noting that the "sole, explicit exception to the notice requirement . . . authorizes an action **against the EPA Administrator** immediately after notice is given" "when a violation . . . is alleged under §§ 33 U.S.C. 1316 and 1317(a)") (emphasis added).  *See also Chicago Ass'n of Commerce and Indus. v. EPA*, 873 F.2d 1025, 1031 n.10 (7th Cir. 1989) (reading CWA Section 505(b) in the same way as *Walls*: "Section [306] mandates the promulgation of regulations by the Administrator within a year of the time a category of sources is included under the statute, and delineates a procedure by which states can gain authority to enforce the standards set by the Administrator"); *Save Our Sound Fisheries*, 429 F. Supp. at 1141-1142 & nn. 7, 9 (similar).  Contrary to Plaintiffs' misleading and selective reproduction of the statute, in which they completely ignore Section 505(b)(2) (underlined below), *see* Pls.' Opp'n at 26, Section 505(b) actually reads:

> No action may be commenced —
>
> > (1) under subsection (a)(1) of this section —
> > > (A) prior to sixty days after the plaintiff has given notice of the alleged violation (i) to the Administrator, (ii) to the State in which the alleged

---

[4]  *See, e.g.*, *ABC Rail Corp.*, 926 F.2d at 1099 ("any suit against a private entity for a violation of a limitation set forth under any of the provisions of § 1317(a) is an action for a violation of § 1317(d)" and as such, the immediate suit exception does not apply); *Dague v. City of Burlington*, 935 F.2d 1343, 1353 (2d Cir. 1991), *rev'd on other grounds*, 505 U.S. 557 (1992) ("[Section] 1317 imposes obligations only on the EPA [A]dministrator, not the defendant city."); *Aiello v. Town of Brookhaven*, 136 F. Supp. 2d 81, 109 (E.D.N.Y. 2001) (holding that "exceptions to the sixty-day delay provision under these exceptions clearly are not applicable" and quoting *Dague*, 935 F.2d at 1353, for the proposition that § 1317 "imposes obligations only on the EPA administrator, not the defendant city"); *Save Our Sound Fisheries Ass'n v. Callaway*, 429 F. Supp. 1136, 1142 n.9 (D.R.I. 1977) ("Under plaintiff's theory, Congress' decision to specify that immediate jurisdiction would attach for suits challenging violations of § 1317(a), rather than each part of § 1317, is of no consequence.  The Court must prefer a statutory interpretation which gives effect to all of the statutory language.").

> violation occurs, and (iii) to any alleged violator of the standard, limitation, or order, or
>
> (B) if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States . . . .
>
> <u>(2) under subsection (a)(2) of this section prior to sixty days after the plaintiff has given notice of such action to the Administrator,</u>
>
> except that ***such action*** [i.e., an action under subsection (a)(2)] may be brought immediately after such notification in the case of an action under this section respecting a violation of sections 1316 and 1317(a) of this title.

33 U.S.C. § 1365(b) (emphasis added).  A textual reading of the statute shows that the immediate suit exception only applies to Section 505(b)(2), involving actions solely against the EPA Administrator under Section 505(a)(2).[5]

Accordingly, even apart from the other flaws in Plaintiffs' CWA claims, the fact that Plaintiffs failed to give proper notice means that all CWA claims must be dismissed.

**C.     The Notice of Claims Under the ESA Provided in *Defenders* Was Defective and Those Deficiencies Require Dismissal of This Suit.**

Plaintiffs' arguments as to why notice of the ESA claims in *Defenders* was sufficient or, in the alternative, why this Court should refuse to reach the notice issue at this stage in the proceedings, are also unsupported by law.  *See* Pls.' Opp'n at 34-39.

***First***, Plaintiffs argue that "[r]esolution of the notice issues raised by BP is not appropriate in response to a motion to dismiss."  *Id.* at 35.  The Supreme Court says differently. *Hallstrom v. Tillamook County*, 493 U.S. 20 (1989) (affirming such a dismissal); *see also Garcia v. Cecos Int'l*, 761 F.2d 76, 78-80 (1st Cir. 1985) (Wisdom, J., sitting by designation) (same).

---

[5] This interpretation of the statutory language is consistent with the lack of any indication in the relevant legislative history that of all the provisions of the CWA, Congress intended to permit citizens to sue private parties in one category alone (for violation of national performance standards) without providing 60-days notice.  A statute should be interpreted in a way that is rational, and there would be no rational purpose served by uniquely exempting Section 306 claims from the notice requirement.  The purpose of Section 505(b) was to "compel prompt ***agency*** action."  *Pennsylvania Dep't of Envtl. Res. v. EPA*, 618 F.2d 991, 1000 (3d Cir. 1980) (emphasis added).

To support its assertion, Plaintiffs point to two cases in which courts considered the adequacy of notice at the summary judgment stage.  *See* Pls.' Opp'n at 35-36.  It does not follow, however, that because some courts have addressed the adequacy of notice in the context of a motion for summary judgment, it is therefore inappropriate to resolve the notice issue in response to a motion to dismiss.  As noted, ample precedent holds that this issue can be decided on a motion to dismiss.  *See, e.g.*, *TVA*, 502 F.3d at 1328-29 (affirming grant of motion to dismiss where notice letter was inadequate to inform defendant of the violations); *Catskill Mountains Ch. of Trout Unlimited, Inc. v. City of N.Y.*, 273 F.3d 481, 488-89 (2d Cir. 2001) (same).  In fact, because compliance with the 60-day notice requirement is a "**mandatory** condition[] precedent to commencing suit," resolution of the notice issue is particularly appropriate at the front end of the proceedings.  *Hallstrom*, 493 U.S. at 31 (emphasis added). Now is precisely the moment at which it is appropriate to evaluate the sufficiency—or in this case the insufficiency—of Plaintiffs' notice.

**Second**, Plaintiffs argue that the *Defenders* notice was enough to alert BP to the violations alleged in their complaint.  This is incorrect.  The *Defenders* notice asserted violations of the ESA resulting from the release of crude oil and dispersants.  *Defenders* Notice at 1.  The *Defenders* complaint, on the other hand, alleges violations of the ESA resulting from the release of crude oil and "subsequent cleanup operations," *Defenders* Compl. at ¶ 1.  Dispersants, to the extent they constitute "cleanup operations," are only one small subset of the cleanup measures utilized during the response.  The BP Defendants were provided no notice regarding alleged violations as to other, non-dispersant cleanup operations.  As such, the *Defenders* notice was deficient in that it was much narrower than what Plaintiffs now purport to be suing over.  *See, e.g.*, *TVA*, 502 F.3d at 1328-29 ("notice letter [alleging violations of the Clean Water Act] was

inadequate because it failed to provide enough information to permit [the defendant] to identify . . . the relevant activities with the degree of specificity required by the regulations"); 40 C.F.R. § 135.3(a) ("Notice regarding an alleged violation of an effluent standard or limitation or of an order with respect thereto, shall include sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation[,]" etc.); *see also* BP Mem. at 24-25.[6]

Plaintiffs argue that citizen suit notice provisions are not jurisdictional.  Numerous courts disagree.  *See, e.g., Center for Biological Diversity v. Marina Point Dev. Co.*, 566 F.3d 794, 797 (9th Cir. 2009), and *Garcia*, *supra*.  As the Fifth Circuit has recognized, the Supreme Court did not resolve the issue in *Hallstrom*, holding that notice requirements are "mandatory conditions precedent to commencing suit."  *See Sierra Club v. Yeutter*, 926 F.2d 429, 435 (5th Cir. 1991) (rejecting federal government's position that it could raise for the first time on appeal the issue of insufficient citizen suit notice as grounds for dismissal).  But BP did not sleep on its rights and wait to raise the issue of insufficient notice until substantive adjudication of this case had begun. And thus it is immaterial whether the failure of notice here is construed as jurisdictional or as a mandatory condition precedent.  Either way, a failure of notice means dismissal must occur.

III.   **PLAINTIFFS HAVE FAILED TO ALLEGE AN ONGOING VIOLATION, JUDGED FROM EITHER NOW (MOOTNESS) OR AT THE TIME THIS SUIT OR ANY OF THE UNDERLYING LAWSUITS WERE PROPERLY COMMENCED (LACK OF SUBJECT MATTER JURISDICTION).**

Any discharges from the Macondo well ended when it was capped on July 15, 2010.

---

[6] Plaintiffs also argue that they provided adequate notice of the alleged ESA violations to all of the BP parties.  This is simply not true.  The *Defenders* notice is addressed to three officials of BP America, Inc.  Nowhere on the notice do the words "BP plc" or "BP Exploration and Production Inc." appear.  Thus, at the very least, BP plc and BP Exploration & Production must be dismissed from the suit.  *See also* BP Mem. at 25-26.

There is not currently an ongoing violation, nor was there an ongoing violation at the time any of the individual lawsuits that make up the D1 Master Complaint were properly filed.[7]   The BP Defendants discussed this issue at length in their Motion to Dismiss and will rely on their prior memorandum in large part to address Plaintiffs' claims.   However, some of Plaintiffs' more blatant misstatements of law and fact require additional response.

### A.   There Was Not an Ongoing Violation, or a Reasonable Likelihood of Recurring Violations, at the Time Suit Was Commenced.

Plaintiffs argue that "[a]t the time the D1 Plaintiffs filed suit, there were actual ongoing violations and, consequently, a reasonable likelihood of continuing, future violations at the Macondo well."   Pls.' Opp'n at 40.   However, they have not alleged facts, nor could they, sufficient to show that this assertion is true.   The Macondo well was plainly capped on July 15, 2010, halting uncontrolled discharges into the Gulf of Mexico from the well.   Nowhere in the Master Complaint do Plaintiffs allege that discharges from the Macondo well occurred after July 15, 2010.   Thus, despite Plaintiffs' newfound reliance on exhibits, affidavits, and the like, the Master Complaint itself fails to allege any facts to show that there was an ongoing violation, or even a violation reasonably likely to recur, at the time the relevant complaints were filed.[8]

In addition, Plaintiffs wrongly assert "a good faith belief [of ongoing violation] is enough" to survive a motion to dismiss.   Pls.' Opp'n at 40.   As Justice Scalia made clear in his

---

[7]   *CBD I* was filed on June 18, 2010, at a time when releases were still ongoing from the Macondo well.   However, Plaintiff in *CBD I* did not comply with the pre-suit notice requirements, waiting only fifteen days after notice before filing its Clean Water Act Claim.   As such, its claims must be dismissed.   *See* Section II.B, *supra*.

[8]   The best the Plaintiffs can muster to argue that the well was not capped as of July 15, 2010, is unverified material, *see* Snyder Decl. at ¶¶ 7-8, they found by surfing YouTube for video clips uploaded by a computer developer named Alex Higgins who advises on his blog "not to trust the Government."   http://blog.alexanderhiggins.com/topics/the-alexander-higgins-show/ (last visited Apr. 24, 2011).   Taken in the light most favorable to the Plaintiffs, the videos show nothing more than controlled releases associated with government-overseen operations to take all necessary precautions to irrevocably shut in the well.   The videos provide no basis for concluding that ordering injunctive relief between the period July 15, 2010 and September 19, 2010 would have done anything other than interfere with federal remediation efforts closely watched by the National Incident Commander, let alone that injunctive relief ordered on or after April 29, 2011 (the date of this reply brief) would stop any non-existent, ongoing discharges.

concurring opinion in *Gwaltney*, even if good faith allegations of ongoing violation are sufficient to establish the court's subject-matter jurisdiction under the statute, they are not sufficient to establish standing under the Constitution.  *Id.* at 70 (Scalia, J., concurring) ("such evidence [of a state of noncompliance] would still be required in order to establish the plaintiff's standing"). Plaintiffs must show that BP was "in fact 'in violation' on the date suit was brought," *id.* at 69, and cannot rely on good faith allegations alone.   Plaintiffs cannot meet either standard because they are fully aware that uncontrolled discharges from the Macondo well ceased on July 15, 2010.  Plaintiffs cannot possibly make a good faith allegation that there was an ongoing violation at the time they filed suit.

> **B.**      **Plaintiffs' Claims for Injunctive Relief Are Moot as There Is Currently Not an Ongoing Violation, or a Reasonable Likelihood of Recurring Violations.**

Though Plaintiffs concede, as they must, that as of September 19, 2010, "there were no apparent ongoing violations from the Macondo Well," Pls.' Opp'n at 44, they still maintain that their claims under the CWA, CERCLA, and the ESA are not moot.  In reaching this indefensible conclusion, Plaintiffs make a number of misstatements regarding the relevant law and facts.[9]

> **1.**      **Plaintiffs Misstate or Misapply the Applicable Mootness Standard.**

Plaintiffs purport to apply the mootness standard established in *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167 (2000), which requires defendants to show that it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."  *Id.* at 189 (internal citations omitted).   However, the elevated *Laidlaw* standard is not appropriate in this case.   As the Fifth Circuit has noted, the more stringent standard "is appropriate when considering voluntary cessations of CWA violations because it

---

[9] The BP Defendants do not argue that the EPCRA reporting claim is moot, and can now do the same as to the CERCLA claim.  *See* BP Mem. at 34 n.13.  However, these claims suffer from a number of other defects that require their dismissal.  *See also* Sections II.A. & V herein.

'protects plaintiffs from defendants who seek to evade sanction by predictable protestations of repentance and reform.'"  *Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 527 (5th Cir. 2008) (quoting *Gwaltney*, 484 U.S. at 66).  On the other hand, where the events mooting the case are now beyond the voluntary control of the defendant, the Fifth Circuit applies a less stringent standard, holding that the claims for relief are moot unless the plaintiff "proves that there is a realistic prospect that the violations alleged in [the] complaint will continue notwithstanding" the events allegedly mooting the case.  *Envtl. Conservation Org.*, 529 F.3d at 528.

Here, a dead well renders this case moot.  Mootness here does not turn on BP's voluntary commitment to cease using the well.  Even if BP wanted to start using the well again, it could not do so.  A new well would be needed.  As such, the considerations that normally underlie the more stringent "voluntary cessation" standard—*i.e.* that the defendant will cease its unlawful conduct in anticipation of a lawsuit, only to resume violations after the lawsuit has been dismissed as moot—simply do not apply.  Cases involving factories that remain operational are inapposite.

Furthermore, even if *Laidlaw* does provide the governing framework, Plaintiffs misstate and misapply the applicable standard.  Plaintiffs incorrectly argue that the BP Defendants must prove that the alleged violations "will be absolutely certain not to recur."  Pls.' Opp'n at 48-49. To the contrary, under *Laidlaw*, the BP Defendants are only required to show that the alleged violations "could not ***reasonably*** be expected to recur."  *Laidlaw*, 528 U.S. at 170 (emphasis added); *see also Atlantic States Legal Found., Inc. v. Tyson Foods, Inc.*, 897 F.2d 1128, 1135 n.13 (11th Cir. 1990) ("The law does not require a defendant to show that there is no conceivable chance that a future violation will occur, but only that 'there is no reasonable expectation that the wrong will be repeated.'").  As the BP Defendants clearly articulated, BP Mem. at 30, there is no

15

reasonable likelihood that the alleged violations will recur because (1) the well has been completely shut in, and (2) there is no longer a facility from which any violation could occur.[10]

### 2. Plaintiffs Cannot Rely on Ongoing Effects From a Past Discharge to Satisfy the Ongoing Violation Requirements of the CWA and ESA.

Throughout their Opposition, Plaintiffs reference ongoing effects of the Macondo discharge to argue that their claims under the Clean Water Act are not moot. *See, e.g.*, Pls.' Opp'n at 49-50 ("Portraying the largest oil spill in US history as a 'wholly past violation' is a gross misnomer. BP's discharges from the Macondo well . . . are still causing damage to human health and the environment on a scale never before encountered."); *id.* at 49 ("[W]hether or not the Macondo well was declared 'effectively dead' on September 19, 2010, the D1 Plaintiffs continue to suffer injury from the fallout of the Defendants' wrongful behavior."). Such arguments conflate ongoing ***effects*** with an ongoing ***violation***. Where the conduct that gave rise to a violation has ceased, but the effects continue, the violation is not ongoing and the case is moot. *See Hamker v. Diamond Shamrock Chem. Co.*, 756 F.2d 392, 397 (5th Cir. 1985);[11] *see also* BP Mem. at 35. Thus, Plaintiffs' claims that the effects of the Macondo discharge have not

---

[10] Plaintiffs' assertions that BP remains subject to a NPDES permit (which is true) and that BP has the option of returning to the reservoir miss the point. *See* Pls.' Opp'n at 49 n.50, 50-51. Regardless of the truth of these allegations, however, they have no bearing on whether the *specific* violations alleged last Summer are reasonably likely to recur. The NPDES permit in question is a ***general permit*** authorizing activities by a host of businesses in the western portion of the Outer Continental Shelf off the coasts of Louisiana and Texas. Moreover, Plaintiffs' assertions that BP intends to return to the reservoir are speculative and in no way inferable from the facts alleged in the Master Complaint. If BP were ever to start using the reservoir again, it would need to drill anew, subject to a new round of regulatory approvals. Any environmental cases arising thereafter would be entirely different cases, not a continuation of this dispute.

[11] Plaintiffs make much of a belabored claim that *Gwaltney* partially overruled *Hamker*, albeit for an entirely different proposition than it is cited for above. *See* Pls.' Opp'n at 2 n.2 & 41 n.40 (noting *Gwaltney* held intermittent violations can support subject matter jurisdiction, whereas *Hamker* focused only on continual violations). But that difference is a *non sequitur* in this situation. The *Deepwater Horizon* incident is not equivalent to a system of factory discharges where one day a discharge limit might be violated by operations and the next day not. The incident is a single, accidental event where any alleged violation started when oil began to flow and ended when the well was capped. *Hamker*'s holding on the difference between a violation and the effect of a violation is plainly the law of this Circuit.

completely dissipated do not demonstrate an ongoing violation.

This principle applies equally to Plaintiffs' claims under the ESA.  Plaintiffs argue that "oil released by BP continues to cause the take of threatened and endangered species . . . ."  Pls.' Opp'n at 53.  However, the term "take" is specifically defined by the ESA to require action.  For instance, "take" is defined to include, *inter alia*, "harass" and "harm."  16 U.S.C. § 1532(19).  EPA regulations implementing the ESA provide further clarification, defining "harass" to mean "an ***intentional or negligent act or omission*** which creates the likelihood of injury to wildlife . . . ."  50 C.F.R. § 17.3 (emphasis added).  Likewise, the regulations define "harm" to mean "an ***act*** which actually kills or injures wildlife."  *Id.* (emphasis added).  Thus, because the ***act*** (*i.e.*, oil discharge) allegedly harming wildlife was entirely in the past, there is no longer an ongoing violation and any claims for injunctive relief are now moot.

### 3.    The Prospect of Civil Penalties, Even if Available, Cannot Overcome Mootness as to Plaintiffs' Claims for Injunctive Relief.

Plaintiffs argue that "even where a violator has allegedly ceased all wrongdoing, the existence of civil penalties will overcome mootness by ensuring that future violations will be prevented."  Pls.' Opp'n at 51.  Plaintiffs fail to recognize, however, that the requirement that a case not be moot "applies independently to each form of relief sought[.]"  *McBryde v. Committee to Review,* 264 F.3d 52, 55 (D.C. Cir. 2001) (citing *Laidlaw,* 528 U.S. at 185).  Thus, even if civil penalties were available here, which they are not,[12] Plaintiffs would not be able to rely on the possibility of monetary damages to keep their claims for injunctive relief alive.[13]  Simply put,

---

[12]   Monetary penalties are not available here because: (1) PTO #11 precludes the Master Complaint from encompassing claims seeking monetary relief within the D1 bundle and (2) the only monetary penalties mentioned, under CWA Section 311, are unavailable to citizen enforcers (*see* Section I above).

[13]   Moreover, Plaintiffs cannot restyle their requests for monetary damages as claims for injunctive relief.  *Cf. Eagle-Picher Indus., Inc. v. United States,* 901 F.2d 1530, 1532 (10th Cir. 1990) ("A party may not circumvent the Claims

Footnote continued on next page

the D1 master complaint, which seeks injunctive relief, is moot, and must be dismissed.

**IV.    PLAINTIFFS LACK STANDING TO PURSUE THEIR CLAIMS UNDER THE CWA, THE ESA, AND EPCRA.**

      **A.    Plaintiffs' Claims for Injunctive Relief Under the CWA Are Not Redressable Because the Macondo Well is Dead and There Is No Longer a Facility from Which a Future Release Could Occur.**

Plaintiffs' argument that their CWA claims are redressable, notwithstanding that there is no ongoing release from the dead well and no offshore facility from which a release could occur, fails for at least two reasons.  *First*, Plaintiffs mistakenly suggest that *Laidlaw* stands for the proposition that the redressability element is satisfied in a CWA suit "*whenever* the plaintiff seeks an award of injunctive relief, remedial relief, or civil penalties . . . ."  Pls.' Opp'n at 12 (emphasis added).  In *Laidlaw*, the Supreme Court concluded that civil penalties that "effectively abate[] [illegal] conduct and prevent[] its recurrence provide[] a form of redress . . . [t]o the extent that they encourage defendants to discontinue current violations and deter them from committing future ones."  *See Laidlaw*, 528 U.S. at 185-86.  However, nowhere in *Laidlaw* did the Supreme Court suggest that a plaintiff's request for relief, much less the injunctive relief requested in the D1 Master Complaint, *ipso facto* satisfies the redressability element.  Plaintiffs still must demonstrate that the prospective injunctive relief they seek will redress their alleged injuries.  Plaintiffs are unable to meet this burden because their requested relief cannot "abate" or "discontinue" a non-existent release or "deter" future releases from a non-existent facility. Plaintiffs have no response to the summary table on pages 33-34 of BP's memorandum showing how injunctive relief claims must fail for virtually all of the causes of action they assert.

      *Second*, mindful that there is no ongoing release and no viable offshore facility from

---

Footnote continued from previous page

Court's exclusive jurisdiction by framing a complaint in the district court as one seeking injunctive, declaratory or mandatory relief where the thrust of the suit is to obtain money from the United States.") (quoted source omitted).

which a future release could occur, Plaintiffs cobble together an argument (along with additional inflamed rhetoric) that future releases are possible based on a vague comment made at a press conference that BP will have to "think about what to do with [the Macondo reservoir] at some point."  *See* Pls.' Opp'n at 11 n.13, 13, 49 n.50 (quoted source omitted).  Even assuming, *arguendo*, that such a comment evidences an intent to return to the reservoir, Plaintiffs cannot rely on "contingent future events [requiring regulatory approval] that may not occur as anticipated, or indeed may not occur at all" to satisfy Article III's "case or controversy" requirement.  *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985) (quoted source omitted)).

**B.      Plaintiffs' Claims Under the ESA Are Not Redressable or Are Already Being Redressed.**

To establish that their ESA claims are redressable, Plaintiffs must demonstrate a "substantial likelihood that the requested relief will remedy the alleged injury in fact."  *Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000).  Plaintiffs cannot meet this burden—any injury is already being redressed through the ongoing state and federal remediation efforts, and any relief this Court could fashion would depend upon the independent actions of the National Incident Command, the Federal On Scene Coordinator, the Unified Area Command, and the Coast Guard.  *See* BP's Mot. at 37-39; *see also SPPI-Somersville, Inc. v. TRC Cos.*, No. 07-5824, 2009 WL 2612227, at *15 (N.D. Cal. Aug. 21, 2009) (concluding that plaintiffs could not establish redressability because the injury they alleged was "already being addressed" by a state agency); *Glanton v. AdvancePCS, Inc.*, 465 F.3d 1123, 1125 (9th Cir. 2006) ("There is no redressability, and thus no standing, where . . . any prospective benefits depend on an independent actor who retains broad and legitimate discretion the courts cannot presume to control or to predict.") (quotation omitted).

Plaintiffs offer nothing to establish that their claims are redressable. For example, Plaintiffs eschew a discussion of the merits of the *SPPI-Somersville* decision, choosing instead to argue in a footnote that the case is distinguishable because it was decided on cross-motions for summary judgment. *See* Pls.' Opp'n at 19 n.18. The posture of *SPPI-Somersville* is not, however, a persuasive basis for deviating from that court's conclusion that injuries are not redressable when they are already being addressed by ongoing agency remediation efforts. Even at the motion to dismiss stage, this Court can take judicial notice of the ongoing federal and state remediation efforts here. *See* BP Mem. at 10; Pls.' Opp'n at 11 ("[T]he Court may take judicial notice of the existence of a response to the oil spill.") (emphasis omitted). Furthermore, other than offering platitudes regarding the Court's equitable powers, *see* Pls.' Opp'n at 15-16, Plaintiffs provide no explanation as to how the Court can fashion relief to redress their alleged ESA injuries when the federal/state remediation efforts that are already addressing the alleged injuries are being conducted by independent actors. *See, e.g.*, *Glanton*, 465 F.3d at 1125; *Fund for Animals v. Norton*, 295 F. Supp. 2d 1, 7 (D.D.C. 2003) ("Courts have been loath to find standing when redress depends largely on policy decisions yet to be made by government officials.").

C.     **Plaintiffs Fail to Allege a Concrete Informational Injury[14] Necessary to Establish Standing Under EPCRA.**

To establish standing under EPCRA, Plaintiffs must establish an "injury in fact" that is "concrete" and "'real and immediate,' not 'conjectural' or 'hypothetical.'" *City of L.A. v. Lyons*, 461 U.S. 95, 101-102 (1983). In an attempt to satisfy this standard, Plaintiffs rely on a number of declarations from their members (late-filed April 17, 2011, and referring to a still-unfiled

---

[14] "Informational injury," treated in cases such as *FEC v. Akins*, 524 U.S. 11 (1998), involves situations in which Congress creates a cause of action giving all or certain members of the public a private right of action to obtain information. EPCRA is such a statute. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 105 (1998).

Celano declaration) to argue that their members have a concrete interest in EPCRA data.  *See* Pls.' Opp'n at 20.  Review of these declarations, however, reveals that the purported uses of EPCRA data asserted therein are not "concrete" or "actual," but "conjectural" and "hypothetical," and therefore not sufficient to constitute "injury in fact" as required for standing. For example, Plaintiffs assert that the declaration of Dr. Thrasher, a pulmonary specialist, demonstrates an injury in fact because the EPCRA data is necessary for him "to effectively treat patients."  Pls.' Opp'n at 20.  Conspicuously absent from Dr. Thrasher's declaration, however, is any indication that he has, or will, treat individuals exposed to toxic substances released during the spill.  *See generally* Decl. of Dr. Thrasher.  As such, his purported interest in the data is conjectural, hypothetical, and does not demonstrate an injury in fact necessary to establish standing.  Accordingly, Plaintiffs lack standing and their EPCRA claims should be dismissed.

## V.  THE PETROLEUM EXCLUSION DEFEATS PLAINTIFFS' CLAIMS UNDER CERCLA.

Plaintiffs' CERCLA claims do not exist because CERCLA excludes from the definition of "hazardous substance" "petroleum, including crude oil or any fraction thereof that is not otherwise specifically listed or designated as a hazardous substance under subparagraphs (A) through (F) of this paragraph . . . ."  42 U.S.C. § 9601(14) (hereinafter, "petroleum exclusion"). Plaintiffs' attempt to evade the petroleum exclusion finds no support in the case law.  As such, Plaintiffs' Sixth Claim for Relief should be dismissed.  *See also* BP Mem. at 16-20.

### A.  Pursuant to the Petroleum Exclusion, Crude Oil and Its Naturally Occurring Constituents Are Not Hazardous Substances Under CERCLA.

The petroleum exclusion "has been universally interpreted by both [EPA] and the courts to remove from the coverage of CERCLA those otherwise hazardous substances which are ***inherent*** in petroleum."  *Niecko v. Emro Mkt. Co.*, 769 F. Supp. 973, 981 (E.D. Mich. 1991) (emphasis in original).  Plaintiffs reject this and instead argue that the petroleum exclusion only

applies to the petroleum or crude oil itself and not to its naturally occurring constituents.  *See* Pls.' Opp'n at 57.  Plaintiffs' proposed interpretation belies common sense.

*First*, Plaintiffs' interpretation would read the petroleum exclusion out of existence.  *See, e.g.*, *Wilshire Westwood Assoc. v. Atl. Richfield Corp.*, 881 F.2d 801, 804 (9th Cir. 1989) (rejecting the same interpretation advanced by Plaintiffs because it "ignores the plain language of the statute and renders the petroleum exclusion a nullity").  Plaintiffs attempt to evade this conclusion by arguing that their interpretation does not render the petroleum exclusion a complete nullity because the exclusion would still "exempt oil or petroleum themselves."  Pls.' Opp'n at 57.  This strained argument would gut the aim of the provision to exempt from CERCLA oil discharges in their natural state.

*Second*, Plaintiffs' interpretation contravenes the specific congressional purpose of prohibiting CERCLA monies to be used for oil cleanups.  *See, e.g.*, *Niecko*, 769 F. Supp. at 982 ("The legislative purpose behind the petroleum exclusion is simply that Congress did not intend appropriated Superfund monies to be spent to clean up oil spills . . . .");  S. Rep. No. 96-848, 96th Cong., 2d Sess. 29-30 (1980) (noting that CERCLA "does not cover spills or other releases of strictly oil");  126 Cong. Rec. H11796 (Rep. Mikulski) (daily ed. Dec. 3, 1980) (noting that there is "no oil-related provision" in CERCLA).  Courts routinely reject "strained statutory construction[s]" that are "counter to the stated legislative purpose and would if followed emasculate the Act," *United States v. Marrifield*, 515 F.2d 877, 881 (5th Cir. 1975).  A petroleum exemption that does not include the constituents of petroleum is no exemption at all.

Finally, Plaintiffs' interpretation of the petroleum exclusion conflicts with EPA's.  *See, e.g.*, Memorandum from Francis S. Blake, EPA Gen. Counsel, to J. Winston Porter, Ass't Adm'r for Solid Waste and Emergency Response, Scope of the CERCLA Petroleum Exclusion Under

Sections 101(14) and 104(a)(2), 1987 WL 123926, at *3 (July 31, 1987).  EPA noted that because "hazardous substances are found naturally in all crude oil and its fractions, they must be included in the term 'petroleum,' for [the petroleum exclusion] to have any meaning."  *Id.*

**B.  The Petroleum Exclusion Is Not Vitiated Due to the Introduction of Spacer and Drilling Mud into the Wellhead.**

Plaintiffs also argue that even if the petroleum exclusion does apply to crude oil's naturally occurring constituents, the exclusion does not apply in this case because BP introduced non-naturally occurring substances—spacer and drilling mud—that are regulated as hazardous substances under the Resource Conservation and Recovery Act ("RCRA").  *See* Pls.' Opp'n at 58-61.  Plaintiffs are incorrect.  Spacer and drilling mud are not hazardous substances under RCRA because 40 C.F.R. § 261.4(b)(5) explicitly provides that "[d]rilling fluids, produced waters, and other wastes associated with the exploration, development, or production of crude oil, natural gas or geothermal energy" are not hazardous substances.

Plaintiffs provide no argument, presumably because none exists, as to how drilling mud is a hazardous substance in light of 40 C.F.R. § 261.4(b)(5).  *See* Pls.' Opp'n at 60-61.  With respect to the spacer, Plaintiffs attempt to circumvent the plain meaning of 40 C.F.R. § 261.4(b)(5) by importing a *mens rea* requirement that is not reflected in the regulation's language and which is not supported by the case law.  *See* Pls.' Opp'n at 60.  Under the plain language of 40 C.F.R. § 261.4(b)(5), "wastes associated with the exploration, development, or production of crude oil" are categorically deemed non-hazardous substances—there is absolutely no indication of the *mens rea* requirement Plaintiffs seek to impose.  Once again, Plaintiffs' approach would eliminate the core purpose of a straightforward regulatory exemption and require an in-depth factual inquiry into the intent behind every particular use of drilling fluids. The plain language of the regulation is unambiguous and contrary to Plaintiffs' proposed

interpretation. *See Anthony v. United States*, 520 F.3d 374, 380 (5th Cir. 2008) ("Where the language is unambiguous, we do not look beyond the plain wording of the regulation to determine meaning.") (citing *Copeland v. C.I.R.*, 290 F.3d 326, 332-33 (5th Cir. 2002)).[15] Because spacer and drilling mud are undisputedly non-hazardous substances under 40 C.F.R. § 261.4(b)(5), their introduction into the wellhead does not vitiate the petroleum exclusion.

## VI.   GOVERNMENTAL AGENCIES WITH AN INTEREST IN ONGOING GULF REMEDIATION EFFORTS ARE NECESSARY AND INDISPENSABLE PARTIES TO THE PRESENT ACTION.

Plaintiffs argue that the governmental agencies are not necessary or indispensable parties under Federal Rule of Civil Procedure 19. Plaintiffs ignore, however, that a host of state and federal agencies are actively involved in ongoing Gulf remediation efforts. As the BP Defendants clearly articulated in their Motion to Dismiss, BP Mem. at 41-42, the Court cannot accord complete relief without including these parties in the present action. Fed. R. Civ. P. 19(a)(1)(A). Moreover, this lawsuit, if allowed to proceed in the absence of the relevant governmental agencies, will also have the prohibited dual effect of (1) "imped[ing] the [agencies'] ability to protect [their] interest" in the Gulf cleanup and (2) leaving the BP Defendants "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." *Id.* at 19(a)(1)(B)(i)-(ii). Thus, at the very least, Plaintiffs must join the relevant governmental agencies to protect the agencies' interests in the Gulf and to ensure that the BP Defendants are not subjected to inconsistent obligations. If Plaintiffs are unable to do so, their ESA claims must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(7).

---

[15] Nor can any *mens rea* requirement be found in EPA's regulatory determination, now embodied in 40 C.F.R. § 261.4(b)(5), that "wastes associated with the exploration, development, or production of crude oil" should not be regulated as hazardous substances. *See generally* Regulatory Determination for Oil and Gas and Geothermal Exploration, Development, and Production Wastes, 53 Fed. Reg. 25,446 (July 6, 1988).

## VII.   THE PRIMARY JURISDICTION DOCTRINE APPLIES TO CLAIMS UNDER ENVIRONMENTAL STATUTES SUCH AS THE ESA.

Finally, Plaintiffs argue that the doctrine of primary jurisdiction is not applicable to citizen suits brought pursuant to federal environmental laws.  Pls.' Opp'n at 68.  Contrary to Plaintiffs' intimations, however, there is no general rule against applying the primary jurisdiction doctrine to citizen suits involving federal environmental claims.  *See, e.g.*, *Raritan Baykeeper, Inc. v. NL Indus.*, 713 F. Supp. 2d 448, 457 (D.N.J. 2010) (holding that a CWA and RCRA citizen suit must be dismissed pursuant to the primary jurisdiction doctrine).  In fact, "[n]o fixed formula exists for applying the doctrine of primary jurisdiction" at all, and any determination must be made on a case-by-case basis.  *United States v. Western Pac. R.R. Co.*, 352 U.S. 59, 64 (1956); *accord Penny v. Southwestern Bell Tel. Co.*, 906 F.2d 183, 187 (5th Cir. 1990).  Even assuming the Court has jurisdiction over Plaintiffs' ESA claims, if the application of the primary jurisdiction doctrine is appropriate anywhere, it is in this situation where the natural resource damages ("NRD") trustees and federal agencies are in the midst of the most extensive natural resource damages assessment ("NRDA") in history.[16]

## VIII.   THE PLAINTIFFS' MARITIME AND STATE LAW CLAIMS MUST BE DISMISSED FOR THE REASONS GIVEN IN BP'S B1 MOTION TO DISMISS.

BP incorporates herein its B1 motion to dismiss and supporting memorandum as well as its forthcoming B1 reply brief to rebut Plaintiffs' claims for maritime and state law injunctive relief, just as Plaintiffs incorporated their B1 opposition by reference into their D1 opposition.

### CONCLUSION

For the foregoing reasons, the D1 Master Complaint should be dismissed in its entirety.

---

[16] Notably, none of the cases Plaintiffs cite in their Opposition involved an NRDA.

Dated:  April 29, 2011                    Respectfully submitted,

/s/ Don K. Haycraft
Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
Robert E. Holden (Bar #6935)
LISKOW & LEWIS
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

and

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
312-862-2000 (Tel)
312-862-2200 (Fax)

Granta Y. Nakayama, P.C.
Stuart A.C. Drake
Jeffrey Bossert Clark
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
(202) 879-5000 (Tel)
(202) 879-5200 (Fax)

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
202-662-5985

Joel M. Gross
Allison Rumsey
Arnold & Porter LLP
555 Twelfth Street, NW
Washington, DC  20004-1206
E-Mail:  Joel.Gross@aporter.com
Telephone:  202.942.5000
Facsimile:  202.942.5999

Attorneys for BP p.l.c., BP America Production
Company and BP Exploration & Production
Company

**APPENDIX — SUMMARY OF GROUNDS FOR D1 CLAIMS DISMISSAL**
**(Covering All Claims Except 9 & 10, Which Are Rebutted in the B1 Motion to Dismiss)**

| | Claim 1 CWA 301 | Claim 2 CWA 311 | Claim 3 CWA 307 | Claim 4 CWA 306 | Claim 5 CWA 311 (gross negligence) | Claim 6 CERCLA | Claim 7 EPCRA | Claim 8 ESA |
|---|---|---|---|---|---|---|---|---|
| **No Private Right of Action** | N/A | BARS | N/A | N/A | BARS | N/A | N/A | N/A |
| **Lack of Citizen Suit Notice** | BARS | BARS | BARS | BARS | BARS | BARS | BARS | BARS |
| **Mootness** | BARS | BARS | BARS | BARS | BARS | N/A | N/A | BARS |
| ***Gwaltney* Doctrine** | BARS | BARS | BARS | BARS | BARS | BARS | BARS | BARS |
| **Standing** | BARS | BARS | BARS | BARS | BARS | N/A | BARS | BARS |
| **Petroleum Exclusion** | N/A | N/A | N/A | N/A | N/A | BARS | N/A | N/A |
| **Absence of Indispensable Party** | N/A | N/A | N/A | N/A | N/A | N/A | N/A | BARS |
| **Primary Jurisdiction** | N/A | N/A | N/A | N/A | N/A | N/A | N/A | BARS |

A-1

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 29th day of April, 2011.

*/s/ Don K. Haycraft*

Don K. Haycraft