UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | | |
|---|---|---|---|
| **In Re:** | **Oil Spill by the Oil Rig** | : | **MDL NO.  2179** |
| | **"Deepwater Horizon" in the** | : | |
| | **Gulf of Mexico, on** | : | **SECTION:  J** |
| | **April 20, 2010** | : | |
| | | : | **JUDGE BARBIER** |
| **This Document Relates to all cases.** | | : | **MAG. JUDGE SHUSHAN** |

. . .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .

Report on "Framework for Early Restoration Addressing Injuries
Resulting from the Deepwater Horizon Oil Spill"

The United States of America, the States of Alabama and Louisiana, and BP Exploration and Production, Inc. ("BP") jointly provide this Report on the administrative agreement entitled "Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill" (hereinafter, "Framework Agreement") (Exhibit 1)[1].  This Report is filed for information only and requires no action by the Court.

I.      **Legal Background:  NRD and NRDA.**

The Oil Pollution Act ("OPA"), 33 U.S.C. § 2702 makes responsible parties liable for "damages for injury to, destruction of, loss of, or loss of use of natural resources."[2]  This claim

---

[1] Although five states are parties to the Framework Agreement, only Alabama and Louisiana are providing this Report because the other three states, Mississippi, Florida, and Texas, are not now parties to MDL 2179.

[2] The Trustees have asserted that they possess authority to conduct natural resource restoration activities, including the development, planning, and implementation of restoration projects to address injuries resulting from the Oil Spill pursuant to other federal and state statutes and regulations, including, but not limited to the National Oil and Hazardous Substances Pollution Contingency Plan, 40 C.F.R. pt. 300, the Florida Pollutant Discharge Prevention and Control Act (Fla. Stat. §§ 376.011 *et seq.*); the Louisiana Oil Spill Prevention and Response Act and accompanying regulations (La. R.S. §§ 30:2451 *et seq.* and La. Admin. Code 43:XXIX.101 *et seq*.); the Mississippi Air and Water Pollution Control Law (Miss. Code Ann. §§ 49-17-1 through 49-17-43); the Texas Oil Spill Prevention and Response Act (Tex. Nat. Res. Code Ann.

1

for Natural Resource Damages ("NRD") is typically based on an administrative Natural Resource Damages Assessment ("NRDA").

OPA calls for the designation of State and Federal "Trustees," 33 U.S.C. § 2706(a), and charges these Trustees with assessing NRD resulting from discharges of oil and implementing restoration, rehabilitation, replacement, or acquisition of the equivalent of the injured natural resources.[3]  *See* 33 U.S.C. § 2706(c); 33 U.S.C. § 2706(d) (NRD is measured by the cost of restoring impacted natural resources, the loss of use of resources, and the cost of assessing those damages (*inter alia*)).  The OPA regulations, 15 C.F.R. Part 990 (required by OPA, 33 U.S.C. § 2706(e)), cast NRDA as a legal, scientific, cooperative, and public process whereby the Trustees *assess* damages and develop a plan for *restoration*.  Under the Regulations, Trustees assess the nature and extent of injuries to natural resources and the services that those resources provide, evaluate restoration alternatives, and finalize restoration plans.  OPA requires that restoration plans be adopted only after adequate public notice and opportunity for comment.  33 U.S.C. § 2706(c)(5).

The parties may enter into a settlement at any time, during or after the NRDA.  15 C.F.R § 990.25.

## II. Factual Background:  Status of the NRDA for this Matter.

In the case of the *Deepwater Horizon* oil spill ("Oil Spill"), designated officials of the five Gulf Coast states, the National Oceanic and Atmospheric Administration ("NOAA"), and the United States Department of the Interior ("DOI") are the relevant Trustees.  Specifically, the

---

§§ 40.001 *et seq*.) and applicable provisions of the Texas Water Code; and Alabama Code §§ 9-2-1 *et seq.* and 9-4-1 *et seq*.  For purposes of simplicity in this Report, we refer only to OPA.

[3] There is no private right of action for NRD; only the Trustees may recover NRD.

United States is acting on behalf of the following federal Trustees of natural resources: the Secretary of the DOI, through the U.S. Fish and Wildlife Service ("FWS"), the National Park Service ("NPS"), the Bureau of Land Management ("BLM"), and the Bureau of Indian Affairs ("BIA"), and the Secretary of the United States Department of Commerce, through the Administrator of NOAA (collectively "Federal Trustees"). The following entities are participating state Trustees: for the State of Louisiana, the Louisiana Coastal Protection and Restoration Authority, the Louisiana Oil Spill Coordinator's Office, the Louisiana Department of Environmental Quality, the Louisiana Department of Wildlife and Fisheries, and the Louisiana Department of Natural Resources; for the State of Mississippi, the Mississippi Department of Environmental Quality; for the State of Alabama, the Alabama Department of Conservation and Natural Resources and the Geological Survey of Alabama; for the State of Florida, the Florida Department of Environmental Protection and the Florida Fish and Wildlife Conservation Commission; and for the State of Texas, the Texas Parks and Wildlife Department, the Texas General Land Office, and the Texas Commission on Environmental Quality (collectively, "State Trustees"; the State and Federal Trustees collectively are referred to as the "Trustees").

The Trustees have determined that, as a result of the Oil Spill, natural resources in the Gulf of Mexico, including natural resources located in the States of Louisiana, Mississippi, Alabama, Florida, and Texas, are or may be injured. Thus, these Trustees have issued a Notice of Intent ("NOI") to Conduct Restoration Planning, 75 Fed. Reg. 60,801 (October 1, 2010), and have begun to compile an administrative record for the process. *See* http://www.doi.gov/deepwaterhorizon/adminrecord/index.cfm.

Consistent with the OPA Regulations, the Trustees are collecting data on the nature of natural resource injuries, extent of oiling, exposure to living organisms, and harm to the

environment. Final data are being supplied to the public on the internet. *See*

http://www.noaa.gov/sciencemissions/bpoilspill.html. The Trustees have also started "scoping"

for possible restoration options. *See* http://www.gulfspillrestoration.noaa.gov/restoration/.

The OPA Regulations also require the Trustees to invite the responsible parties to participate in the NRDA and to consider cooperation with the responsible parties in conducting the assessment. In this instance BP and other parties have been designated by the United States Coast Guard as responsible parties for the Oil Spill, and have been invited to participate in the NDRA.[4] To date, BP has funded at significant expense, extensive scientific assessment of potential injuries to natural resources in the Gulf of Mexico, including observation, sample collection, and preliminary analysis of water, sediment, fish, birds, marine mammals, turtles, wetlands, beaches, and other habitat. *See* administrative record (cited above), and *see* P.T.O. # 22.

In summary, the administrative NRDA is proceeding apace, but the Trustees have not completed the NRDA and are not yet ready to calculate or quantify all those damages for injuries to natural resources resulting from the Oil Spill.

**III.    The Framework Agreement.**

While the NRDA process continues, the Trustees and BP seek to expedite efforts to restore natural resources and services that may have been injured as a result of the Oil Spill, based on information developed in the NRDA process. To that end, the Trustees and BP have agreed to the Framework Agreement (Exh. 1). In short, the Framework Agreement includes a commitment by BP to set aside $1 billion from the $20 billion *Deepwater Horizon* Oil Spill

---

[4] BP does not admit any liability or fact arising out of the transactions or occurrences alleged in this action, and BP specifically reserves its right to assert any and all defenses, counterclaims, or cross claims that may be available to it.

Trust to commence restoration projects in the Gulf of Mexico and the Gulf Coast states that would begin to restore natural resources, even while the administrative and scientific efforts continue to investigate the full nature and scope of such damages. A general overview of the Framework Agreement follows (paragraph numbers refer to the Framework Agreement):

First, the Framework Agreement requires BP to set aside $1 billion from the *Deepwater Horizon* Oil Spill Trust to be used solely for early restoration projects (and, if not used for early restoration, for other NRD claims). ¶ 1.[5]

Second, no particular restoration projects are identified; rather, a process is established whereby the Trustees identify projects that meet the OPA restoration criteria. ¶ 6. The goal is to begin the actual projects in 2011 and 2012. ¶ 2.

Third, any identified restoration projects will be incorporated into draft and final restoration plans, which must be approved by the Trustees. ¶12. All draft early restoration plans, including those containing projects to be funded through the Framework Agreement, will be subject to public review and comment, plus any environmental review required by law. *Id.* The plans submitted for public comment will identify proposed BP funding for any proposed project, along with the level of natural resources and services gains that the project is expected to achieve.

Finally, for a project to be funded under the Framework Agreement, BP and the Trustees must agree on the project and the amount of "NRD Offsets" attributable to the project, ¶ 8 - 11,

---

[5] The mechanisms of payment, accounting, interest, and the like are described in Paragraphs 4 and 5 of the Framework Agreement. Note that the Framework Agreement requires that early restoration funds be placed into a separate sub-account and also includes certain provisions to ensure that there are sufficient funds in the Trust for individual and business claimants by requiring BP to accelerate its contributions or contribute additional funds if needed. *See* Paragraph 4.

which will be used to determine the credit for that project against the Trustees' ultimate assessment of natural resource injury.

BP's commitment to fund early restoration projects as provided for in the Framework Agreement is voluntary and not otherwise required at this stage in the NRDA process. The Framework Agreement is a cooperative and positive response to the Oil Spill that the parties intend to help mitigate the potential impact of the spill on the environment and achieve important, meaningful restoration of natural resources in the Gulf of Mexico. The Framework provides the opportunity for great benefits to the natural resources of the Gulf of Mexico sooner than would otherwise happen. Under the Framework Agreement, some portion of the restoration can begin immediately once appropriate restoration projects and NRD Offsets are identified and approved.

## IV. How the Framework Agreement Relates to the Claims in the MDL.

On December 15, 2010, the United States filed a complaint against BP and other defendants in the U.S. District Court for the Eastern District of Louisiana, alleging in part that natural resources had been injured, destroyed, or lost as a result of the Oil Spill. United States Complaint at ¶¶ 65-66, *United States v. BP Exploration and Production, Inc.et al.*, No. 2:10-cv-04536 (E.D. La., Dec. 15, 2010). At this time, however, the United States has sought only a declaratory judgment of liability for costs and damages under OPA. The United States has asserted a reservation of rights to return later to seek an actual award of damages under OPA.[6]

---

[6] In its Answer to the United States' Complaint, BP has raised certain affirmative defenses to the United States' OPA claims, including BP's First Affirmative Defense regarding claim splitting. Nothing in the Framework Agreement or this filing, which is being submitted for informational purposes, is intended to waive or contradict in any manner any of the parties' respective positions as set forth in their pleadings or otherwise on the appropriate procedure for the adjudication of any NRD claims.

Alabama and Louisiana have both filed complaints alleging claims for NRD. *State of Louisiana v. BP et al.*, 11-516,; *State of Louisiana v.. Triton Asset Leasing et.al.*, 10-03059; *State of Alabama v. Transocean, et al.*, 10-4183; and *State of Alabama v. BP P.L.C. et al.*, 10-4182.

The States of Mississippi, Florida, and Texas have not filed any civil actions relating to the Oil Spill to date but are participating Trustees in the Framework Agreement.

The United States, Alabama, Louisiana, and BP all agree, and it appears that all parties in the MDL agree, that NRD should not be set for trial, either as part of the "segment" of the Limitation Action proceeding that will begin on February 27, 2012, or as part of the next succeeding trial segment. *See generally*, briefs filed on April 13, 2011 related to the "Trial Plan."[7]

Thus, at this time, neither the Framework Agreement nor this Report requires any action by the Court.

Nonetheless, the Framework Agreement expressly relates to this MDL in certain ways. First, the Trustees and BP agreed to file this Report to notify the Court of the Framework Agreement. ¶ 19. Second, after projects are selected, the parties will file one or more stipulations with the Court identifying the projects and other matters. ¶ 13.

Though not explicitly, the Framework Agreement may also relate to the NRD claims that have been or may be brought in this MDL in one other way: in facilitating early restoration, it provides an opportunity for amicable resolutions of issues that might otherwise have to be decided by this Court.

---

[7] Of course, it is possible that the other states could join the MDL, or file elsewhere. Also, there is always a chance that disputes may arise and any party could seek judicial involvement on some discrete issues, but –as the Framework itself indicates—that is not currently expected.

## V. Conclusion

The United States, the States of Alabama and Louisiana, and BP jointly provide this notice for informational purposes. When the Trustees and BP file any stipulations under ¶ 13 of the Framework Agreement, after projects are selected, the parties will make further informational or other filings with the Court, as appropriate.

Respectfully submitted,

For the United States of America:

| | |
|---|---|
| IGNACIA S. MORENO | MICHAEL F. HERTZ |
| Assistant Attorney General | Deputy Assistant Attorney General |
| Environment & Natural Resources Division | Civil Division |
| | |
| /s/ Steven O'Rourke | /s/ R. Michael Underhill |
| STEVEN O'ROURKE | R. MICHAEL UNDERHILL |
| Senior Attorney | Attorney in Charge, West Coast Office |
| Environmental Enforcement Section | Torts Branch, Civil Division |
| U.S. Department of Justice | U.S. Department of Justice |
| P.O. Box 7611 | 7-5395 Federal Bldg., Box 36028 |
| Washington, D.C. 20044 | 450 Golden Gate Avenue |
| Telephone: 202-514-2779 | San Francisco, CA 94102-3463 |
| Facsimile: 202-514-2583 | Telephone: 415-436-6648 |
| E-mail: steve.o'rourke@usdoj.gov | E-mail: mike.underhill@usdoj.gov |

JIM LETTEN, United States Attorney
SHARON D. SMITH, Assistant United States Attorney
Eastern District of Louisiana
Hale Boggs Federal Building
500 Poydras Street, Ste. B-210
New Orleans, LA 70130

| For the State of Louisiana: | For the State of Alabama: |
|---|---|
| | |
| JAMES D. "BUDDY" CALDWELL | LUTHER J. STRANGE |
| Louisiana Attorney General | Attorney General |
| James Trey Phillips | Robert D. Tambling |
| First Assistant Attorney General | Assistant Attorney General |
| Megan K. Terrell | |
| Assistant Attorney General | |

/s/ Allan Kanner
ALLAN KANNER
Elizabeth B. Petersen
Kanner & Whiteley, L.L.C.
701 Camp Street
New Orleans, LA 70130
Telephone: (504) 524-5777
Facsimile: (504) 524-5763
E-Mail: a.kanner@kanner-law.com

/s/ Corey Maze
COREY MAZE
Special Deputy Attorney General
Office of the Attorney General
501 Washington Avenue
Montgomery, Alabama 36130
Telephone: (334) 242-7300
Facsimile: (334) 242-4891
E-Mail: cmaze@ago.state.al.us

For BP Exploration and Production, Inc.:

DON K. HAYCRAFT (Bar #14361)
LISKOW & LEWIS
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
312-862-2000 (Tel)
312-862-2200 (Fax)

Robert Gasaway
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
 (202) 879-5000 (Tel)
(202) 879-5200 (Fax)

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
202-662-5985

/s/ Brian D. Israel
BRIAN D. ISRAEL
Arnold & Porter LLP
555 Twelfth Street, NW
Washington, DC 20004-1206
Telephone: 202.942.6546
brian_israel@aporter.com

9

## CERTIFICATE OF SERVICE

      I hereby certify that the above and foregoing document has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this date: May 2, 2011.

Date:  May 2, 2011                                             /s/ Steven O'Rourke