# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig | * | MDL No. 2179 |
| "Deepwater Horizon" in the Gulf | * | |
| of Mexico, on April 20, 2010 | * | SECTION "J" |
| | * | JUDGE BARBIER |
| This Document Relates to: | * | |
| *All cases in Pleading Bundles B1 and B3*; | * | |
| 10-2771; 10-3815; 10-1540; 10-1502 | * | MAGISTRATE NO. 1 |
| | * | MAGISTRATE SHUSHAN |
| *   *   *   *   *   *   *   *   *   *   * | * | |

**REPLY IN SUPPORT OF JOINT MOTION OF DEFENDANTS ANADARKO
PETROLEUM CORPORATION, ANADARKO E&P COMPANY LP, AND MOEX
OFFSHORE 2007 LLC TO COMPEL RESPONSE TO DISCOVERY REQUESTS
SERVED UPON BP EXPLORATION & PRODUCTION, INC., BP AMERICA, INC.,
BP AMERICA PRODUCTION COMPANY, AND BP PLC**

**MAY IT PLEASE THE COURT:**

Defendants Anadarko Petroleum Corporation, Anadarko E&P Company LP (together "Anadarko"), and MOEX Offshore 2007 LLC ("MOEX Offshore") (together the "Non-Operating Defendants") respectfully submit this Reply in support of their joint motion to compel responses to discovery requests that they have served upon BP Exploration & Production, Inc. ("BP Exploration"), BP America Inc., BP American Production Company, and BP p.l.c. (together "BP") [Rec. Doc. 1965].[1]

# I.
## INTRODUCTION

BP's Opposition to the Non-Operating Defendants' motion to compel[2] hinges on two meritless arguments: (1) that the Non-Operating Defendants are asserting an "exception" to the Federal Arbitration Act's ("FAA") mandatory stay provisions; and (2) that the "true purpose" of the Non-Operating Defendants' discovery requests is not to defend against the plaintiffs' claims but rather to develop claims against BP that should be pursued in some future arbitration conducted pursuant to the Macondo Prospect Offshore Deepwater Operating Agreement (the "Operating Agreement").  Opposition at 1.

BP's position ignores the reality facing the Non-Operating Defendants in this complex, multi-party litigation: they are among the many targets of claims brought by approximately 130,000 plaintiffs, cross-claims brought by numerous co-defendants other than BP, against

---

[1]     Pursuant to the Court's recent scheduling order, responses to BP's motion to stay are to be made in a separate filing due on May 12, 2011 and therefore are not addressed in this memorandum. [Rec. Doc. 2169-1].

[2]     References in this Reply to "Opposition" refer to BP's Combined Memorandum (1) in Support of BP's Motion for a Stay of Proceedings Between BP and Anadarko and MOEX and (2) in Opposition to Anadarko's and MOEX's Motion to Compel Discovery Responses.

     References to "Opening Memo." refer to the Memorandum in Support of Joint Motion of Defendants Anadarko Petroleum Corporation, Anadarko E&P Company LP, and MOEX Offshore 2007 LLC to Compel Response to Discovery Requests Served Upon BP Exploration & Production, Inc., BP America, Inc., BP America Production Company, and BP plc. [Rec. Doc. 1965-1].

whom the Non-Operating Defendants have asserted their own cross-claims, as well as claims by the United States and state governments seeking penalties, costs and damages.  None of those claims, and none of the defenses of the Non-Operating Defendants, are subject to any arbitration agreement.  Contrary to BP's assertions, discovery relevant to those claims and defenses does not implicate any of the policies of the FAA.  The issue is not whether the Non-Operating Defendants are entitled to an "exception" to the FAA; no exception is sought, and none is needed.  Rather, the issue is whether BP is entitled to a wholesale exception from the discovery obligations imposed by the Federal Rules of Civil Procedure on every other party to this case and related to facts underlying non-arbitrable claims.  BP's motion falls far short of demonstrating that it is entitled to such a special dispensation, especially when such a dispensation would be to the manifest prejudice of the Non-Operating Defendants, and to the detriment of other parties to these proceedings.

## II.
## ARGUMENT

### A.     BP Has No Right To Refuse To Produce Discovery Directly Relevant To Non-Arbitrable Claims Asserted By The Plaintiffs And The Plaintiffs-In-Cross-Claims Against The Non-Operating Defendants.

BP's Opposition brims with bare assertions that the Non-Operating Defendants' discovery requests to BP "do[] not aim at defense against claims brought by Plaintiffs," but instead are "an offensive attack on BP to support Anadarko's and MOEX's contentions that BP's conduct excuses their contractual obligation to help fund spill costs."  Opposition, at 6, 20-21. *See also id.*, at 4-6, 14-16, 22-23.  BP ignores that the Non-Operating Defendants are named as defendants in the Amended Master Complaints for Pleading Bundles B1 and B3, the Voluntary Local Government Entity Master Complaint, individual personal injury complaints within Pleading Bundle A, and individual complaints within Pleading Bundle C, including the United

States' complaint; and have been tendered to all claimants in the Limitation Action by Transocean.  BP also ignores that the Non-Operating Defendants have been named as cross-claim defendants by Halliburton, Transocean, Cameron, Dril-Quip, and the Marine Spill Response Corporation on claims for negligence, gross negligence, willful misconduct, contribution, indemnity and subrogation.  And it ignores that the Non-Operating Defendants have affirmative cross-claims of their own against co-defendants whom even BP agrees have no right to arbitration under the Operating Agreement.  Like all other parties, the Non-Operating Defendants have every right to conduct discovery and to fully defend themselves against the claims asserted against them and to pursue the claims they have asserted on their own behalf.

For example, to defend against the non-arbitrable claims asserted against them and to pursue their own cross-claims, the Non-Operating Defendants have the right to obtain evidence needed to prove that they did not cause any damage allegedly suffered by the plaintiffs or the plaintiffs-in-cross-claim and that, in fact, any such damage was caused by the other defendants, including BP.  In addition, the claims faced by the Non-Operating Defendants, as well as their own affirmative cross-claims, require an allocation of the proportional degree of fault of all defendants.  As a result, the Non-Operating Defendants -- like all other defendants -- have the right to gather evidence in discovery needed to prove at trial that their respective shares of fault, if any, are minimal as compared to all other defendants, including BP.  *See generally United States v. Reliable Transfer Co.*, 421 U.S. 397, 409 (1975) (adopting proportional fault rule in maritime cases).  These are the same defenses and claims being asserted by BP and other defendants, and the Non-Operating Defendants are equally entitled to pursue them on their own. In a multi-party litigation of this complexity, no party can represent another party's interests. Walling off only the Non-Operating Defendants from BP's unique repository of information will

put the adversarial process at risk and the rights of the Non-Operating Defendants in serious jeopardy.

> **1.     The Discovery Requests Are Directly Relevant And Necessary To The Non-Operating Defendants' Case.**

As the objector to discovery requests, BP bears the burden of "show[ing] specifically how . . . each [discovery request] is <u>not</u> relevant or how each [] is overly broad, burdensome or oppressive."  *McLeod, Alexander, Powel and Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990) (quoting *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982) (emphasis added)).   A brief overview of just some of the claims and defenses in this MDL vividly demonstrates how BP has fallen far short of carrying its burden.   The requested discovery is relevant to claims in at least three categories:   (1) the Non-Operating Defendants' defenses against non-arbitrable claims by the plaintiffs, including the United States, the states and foreign governments; (2) the Non-Operating Defendants' defenses against non-arbitrable cross-claims by other defendants; and (3) non-arbitrable cross-claims asserted by the Non-Operating Defendants.

For example, BP objects to the Non-Operating Defendants' taking discovery concerning "Anadarko's and MOEX's knowledge and/or approval of BP's conduct."  Opposition at 14.  But BP makes absolutely no attempt to explain how discovery on that subject is not directly targeted to the following allegations made by the plaintiffs against which the Non-Operating Defendants must defend:

- Plaintiffs allege that the Non-Operating Defendants "were not the passive and unknowing investors that they have portrayed themselves to be in the worldwide media" but instead were "non-operational leaseholders," who had the right to receive "significant information from BP regarding health, safety, and environment issues" concerning BP's drilling operations at the Macondo Prospect, including BP's files and audits, and "access to Halliburton/Sperry Sun INSITE real-time data that was transmitted from the Deepwater Horizon on April 20, 2010 . . . ."  Amend. Mast. Compl. B1 at ¶¶ 282–85, 573-74.

- Plaintiffs allege that the Non-Operating Defendants were "on notice" of certain provisions of BP's well plan, "including (a) location; (b) the anticipated time necessary to conclude the operation; (c) total depth and target zones; (d) the proposed drilling and completion plans, including the casing program and directional details; (e) details of all coring, logging, and other evaluation operations conducted; and (f) information about the drilling rig to be used." *Id.* ¶ 283.

- Plaintiffs allege that the Non-Operating Defendants had the right to suggest proposed well plans, to place their own personnel on key drilling and well development teams, to receive substantial information and data about operations (including INSITE real-time well data) on an ongoing basis, to call meetings with BP, approve press releases, and conduct health, safety and environmental inspections. *Id.* at ¶¶ 283-285.

- Plaintiffs allege that the Non-Operating Defendants "knew or should have known of the presence of hydrocarbons in the well on the evening of April 20, 2010" and "fail[ed] to warn the drilling vessel crew of the imminent blow-out so that they could take evasive action." *Id.* at ¶ 573.

- Plaintiffs allege that "engineers knowledgeable about blowout responses told BP how to kill the well as early as June 2010" but that BP, after "conferring" with the Non-Operating Defendants, "chose to ignore the engineers' well-kill procedure, because BP did not want to damage the well . . . ." *Id.* at ¶ 486.

- Plaintiffs allege that BP, "along with" the Non-Operating Defendants, "hoped to retap the Macondo well" and "ignored expert well-kill information that could have stopped the Spill many weeks earlier." *Id.*

The Non-Operating Defendants have a right to defend themselves against these and all other allegations. Like any defendant, they can do so only by taking discovery of all the parties involved in Macondo-related operations, including the principal operating party -- BP. BP does not, and cannot, dispute this incontrovertible need -- or the fundamental right attendant to that need. While MOEX Offshore and Anadarko have information evidencing BP's conduct and discussions to which they were privy, only BP possesses evidence of the full continuum of its discussion, decision-making, and conduct. This full production of information is necessary for the Non-Operating Defendants to evaluate and understand what decisions and conduct they did and did not have information about, as well as the extent, timing and completeness of the

information they did have. Both points are directly relevant to and critical for the Non-Operating Defendants' defense against allegations and claims made by the plaintiffs and plaintiffs-in-cross-claims.

BP also complains that the Non-Operating Defendants are seeking discovery that might prove that BP either was negligent or grossly negligent in conducting drilling operations and related activities.  Opposition at 1, 4-6, 14-15, 20-21.  Here too, BP does explain how such discovery is anything but directly relevant to the following claims of the plaintiffs against the Non-Operating Defendants, and to the Non-Operating Defendants' affirmative defenses to those claims:

- The Non-Operating Defendants allegedly "owed a duty to Plaintiffs to warn of the impending disaster in sufficient time to avert it" and "breached their duties to Plaintiffs by failing to warn the drilling vessel crew of the imminent blowout so that they could take evasive action."  *Id.* ¶ 573.

- The plaintiffs ask for judgment against the Non-Operating Defendants finding them "liable, jointly, severally, and solidarily liable" to the plaintiffs for damages suffered as a result of their negligence."  *Id.* ¶ 612.

- Third Affirmative Defense to the Complaint of the United States:  Any "violations and/or damages that may have occurred were proximately caused by the acts or omissions of persons other than [the Non-Operating Defendants] or by the superseding intervention of causes outside the control of [the Non-Operating Defendants]."

- Fourth Affirmative Defense to the Complaint of the United States:  The Non-Operating Defendants are "not jointly and severally liable for the damages alleged in the Complaint based on divisibility of the harms alleged

- Eighth Affirmative Defense to the Complaint of the United States:  Any "damages alleged by Plaintiff were the result of the comparative fault or negligence of the Plaintiff or of other parties[.]"

Apart from the relevance of BP's conduct to the foregoing claims and defenses, BP cannot dispute that discovery concerning its conduct also is relevant to the Court's determination of proportional degrees of fault, if any, of the defendants.  *See generally Reliable Transfer Co.*,

421 U.S. at 409.  BP's conduct is directly relevant to the following factors to be offered by the Non-Operating Defendants and considered by the Court in making that allocation:  (1) whether a defendant's conduct resulted from inadvertence or involved an awareness of the danger; (2) how great a risk was created by the conduct; (3) the significance of what was sought by the conduct and whether other courses of conduct were available; (4) the comparative capacities of the actors; and (5) any extenuating circumstances that might have caused the actor to proceed in haste, without proper thought.  *See, e.g., Simon v. United States*, 51 F. Supp. 2d 739, 748 (W.D. La. 1999); *Watson v. State Farm & Cas. Ins.*, 469 So. 2d 967 (La. 1985); *Fontenot v. Southwestern Offshore Corp.*, 787 So. 2d 588 (La. App. 3d Cir. 2001), *writ denied* 799 So. 2d 504 (La. 2001).  *See also* 22 U.S.C. § 1321(b)(8) (including as factors for the determination of penalties under the Clean Water Act "the degree of culpability involved," and "any other matters as justice may require").  *See also Apex Oil Co. v. United States*, 208 F.Supp.2d 642, 652 (E.D.La. 2002) (courts rely on Clean Water Act in interpreting OPA).  These factors are all used by the Court to balance the gravity of the conduct and apportion *relative* fault amongst the actors.  They therefore are necessarily comparative and require a presentation of evidence comparing the conduct of, for example, the Non-Operating Defendants versus BP.

In addition, the cross-claims recently filed by and between the Non-Operating Defendants and co-defendants Transocean, Halliburton, Cameron and others assert claims of contribution, negligence, gross negligence, willful misconduct, indemnity and subrogation.  Defending against and prosecuting these cross-claims independently requires the Non-Operating Defendants to obtain discovery and offer evidence that they are not liable for such claims and that, alternatively, responsibility properly rests with other parties, including BP.

It is no answer for BP to claim that the Non-Operating Defendants can free-ride on the

8

discovery requests of the plaintiffs or of other defendants.  No other party to this case is required to depend on the work of their adversaries to protect their interests, and no other party stands in the shoes of the Non-Operating Defendants, or are presented with the same facts and issues that they face.  The Operating Agreement's arbitration provisions, which do not even apply to the claims and defenses at issue, do not justify singling out the Non-Operating Defendants for such disparate, prejudicial treatment.

In sum, BP has not demonstrated, and cannot demonstrate, that the discovery requests served by the Non-Operating Defendants are not directly relevant to the Non-Operating Defendants' ability to defend against the claims asserted against them by the plaintiffs and the plaintiffs-in-cross-claim.  Given the claims against the Non-Operating Defendants and the defenses they have asserted, the Non-Operating Defendants are entitled to gather information about BP's activities preceding, during and after the blowout, explosion and fire; its directions to and supervision of its contractors; its drilling, monitoring, well control, kick response, and post-incident response policies, practices, and actions; its decision-making processes (including whether and when the Non-Operating Defendants were included); its safety policies and procedures and adherence to the same at Macondo; and its records or other information regarding the Non-Operating Defendants' purported knowledge or approval of all of the above.  All of this information is unquestionably relevant to the MDL Plaintiffs' accusations that the Non-Operating Defendants had access to critical information about and control over the drilling activities at the well, and that they are jointly responsible with BP for the alleged resulting harm.

The same information also is probative of the defenses asserted by the Non-Operating Defendants and their own affirmative cross-claims -- *i.e.*, they were not the proximate cause of the blowout, explosion and fire, they are not jointly liable, and the other defendants bear a more

significant degree of fault for the plaintiff's damages. Yet BP seeks to prevent the Non-Operating Defendants from serving discovery requests to BP on these subjects, examining BP witnesses who are uniquely qualified to testify on such subjects and, presumably, even from examining physical evidence such as the Blowout Preventer under the same terms and conditions available to the other defendants. The Non-Operating Defendants cannot begin to protect their interests without this information, and BP has no right to refuse to respond to the Non-Operating Defendants discovery concerning these subjects.

> **2.    Defending Against The Plaintiffs' Claims Does Not Implicate the Operating Agreement's Arbitration Provisions.**

Having failed to carry its burden of proving that the discovery at issue is not relevant to the plaintiffs' claims against the Non-Operating Defendants, BP attempts to confuse the issue by arguing that the terms of the Operating Agreement somehow govern the scope of discovery relevant to defenses, claims and cross-claims by and between the Non-Operating Defendants and parties who have no rights under the Operating Agreement's arbitration provisions. Neither the Operating Agreement nor the case law cited by BP supports such an extraordinary assertion.

BP studiously avoids any mention of the controlling language of Exhibit H to the Operating Agreement, which limits the parties' arbitration rights to certain claims and disputes that are "between" parties entitled to invoke the agreement's provisions. The liability defenses and claims of the Non-Operating Defendants, and the allocation of proportional fault, in contrast, arise out of claims and disputes that are "between" the Non-Operating Defendants, on the one hand and, on the other hand, the plaintiffs and the cross-claims plaintiffs/defendants, all of which are entirely outside the reach of the Operating Agreement's arbitration provisions.[3]

---

[3]    BP can misstate the Non-Operating Defendants' position only by ignoring the governing language of Exhibit H. The Non-Operating Defendants are *not* arguing that "the pendency of claims against them by non-parties to the Operating Agreement, namely the MDL plaintiffs, overrides the FAA

BP's argument that Anadarko and MOEX Offshore seek to "override" or "nullify" the policies of the FAA is specious and turns the law on its head.  The FAA cannot be used "to stretch a contractual clause beyond the scope intended by the parties or authorize an arbiter to disregard or modify the plain and unambiguous provisions of the agreement."  *Smith v. Transp. Workers Union of Am., AFL-CIO Air Transp. Local 556*, 374 F.3d 372, 375 (5th Cir. 2004) (internal quotation marks omitted).  Because the claims of the plaintiffs and the plaintiffs'-in-cross-claim are not the subject of **any** arbitration agreement, BP's self-serving interpretations of the policies underlying the FAA have no bearing on its discovery obligations.[4]

*Texaco Exploration and Production Co. v. AmClyde Engineered Products Co., Inc*., 243 F.3d 906, 908 (5th Cir. 2001), so heavily relied on by BP, offers no support for its position.  *AmClyde* held only that a stranger to an arbitration agreement cannot use Rule 14(c) to tender one party to an arbitration agreement to another party to the arbitration agreement and, by so doing, force them to litigate an arbitrable claim in federal court.[5]  *AmClyde* might be relevant

---

policy of staying arbitrable claims.'"  Opposition, at 16.  The policies of the FAA apply only to arbitrable claims, not to claims such as those between the plaintiffs and the Non-Operating Defendants that are not even arguably covered by any arbitration agreement.  BP's unwillingness to confront the issue head-on highlights its inability to support its position.

[4]     The cases cited by BP on this point all involved only bilateral litigation between parties with an arbitration agreement.  *See Thomas O'Connor & Co., Inc. v. Ins. Co. of N. Am.*, 697 F. Supp. 563, 564, 566 (D. Mass. 1988);  *Corpman v. Prudential-Bache Sec., Inc.*, 907 F.2d 29 (3d Cir. 1990) (per curiam);  *Suarez-Valdez v. Shearson Lehman/Am. Express, Inc.*, 858 F.2d 648 (11th Cir. 1988);  *Burlington N. Joint Protective Board v. Burlington N.R.R.*, 822 F.2d 810, 811 (8th Cir. 1987);  *H.K Porter Co., Conners Steel Division v. Local 37, United Steel Workers of Am.*, 400 F.2d 691, 692-93 (4th Cir. 1968).  These cases thus provide no basis for limiting the Non-Operating Defendants' discovery into the merits of and defenses against the *plaintiffs'* claims.

[5]     *AmClyde* arose out of an accident that occurred during the construction of a Texaco oil and gas production facility in the Gulf of Mexico.  Texaco brought suit in federal court against AmClyde, the manufacturer of a crane that had failed during the accident.  243 F.3d at 908.  The crane was owned and operated by McDermott.  Because of a mandatory arbitration clause between Texaco and McDermott, Texaco did not name McDermott as a party to the federal action.  *Id.*  Over Texaco's objection, AmClyde tendered McDermott **to Texaco** as a third-party defendant under Fed. R. Civ. P. 14(c).  *Id.* at 908, 910.  The Fifth Circuit held that AmClyde could not use Rule 14(c) to bring the Texaco-McDermott dispute into federal court in violation of the arbitration agreement between Texaco and McDermott.  *Id.* at 910.

here if the Non-Operating Defendants had been tendered **to BP**, a party with rights and obligations under the arbitration agreement.   Unlike *AmClyde*, however, the scores of claims to which the Non-Operating Defendants have been tendered (by Transocean) are those of the plaintiffs, and the cross-claims on which they have been sued are those of other defendants, none of whom have any rights under the arbitration agreement.   Neither *AmClyde*, nor any other case cited by BP, stands for the proposition that the FAA restricts the rights of a defendant, who has no arbitration agreement with a plaintiff, from fully defending against claims by such a plaintiff, the result urged by BP here.[6]

> **3.     The Scope Of Discovery Is Determined By The Standards Of Relevance, Not By BP's Speculation About Motives Or Its Own Self-Interest.**

Instead of addressing the relevance of Anadarko's and MOEX Offshore's discovery requests to these MDL and limitation action claims, cross-claims and defenses, BP attempts to psychoanalyze them.   BP repeatedly argues that "the unmistakable purpose of this discovery was an offensive attack on BP," and that the discovery "does not aim at defense against claims brought by Plaintiffs, but rather prosecuting Anadarko's and MOEX's assertion that BP's alleged conduct relieves them of their legal obligation to pay for their share of the incident-related costs and liabilities."   Opposition at 20-21.

BP feigns shock that some discovery requests suggest that BP might be responsible for the plaintiffs' injuries -- such requests, it says, "read like a complaint against BP."   Opposition at

---

In so holding, the Court explicitly distinguished cases in which a Rule 14(c) defendant was tendered to a party with whom it had no arbitration agreement.   *Id.* at 910-11.   In this case, of course, the plaintiffs directly brought suit against the Non-Operating Defendants, and Transocean later tendered the Non-Operating Defendants to *the claimants* in the Limitation Action, not to BP.

[6]     *Shipping Corp. of India v. American Bureau of Shipping*, 1989 WL 97821 (S.D.N.Y.Aug. 17, 1989), another case relied upon by BP, merely held, like *AmClyde*, that an outside party cannot use Rule 14(c) to override an arbitration agreement previously reached between a plaintiff and a third-party defendant.

5.   Defendants such as Transocean, Halliburton and Cameron must undoubtedly have had a similar reaction when they responded to **BP's** discovery requests and deposition questions suggesting that those defendants, and not BP, actually were responsible for the plaintiffs' damages.  And BP might have raised the same issue when it read discovery requests by those other defendants addressing the very same subjects of relative fault and proximate cause on the part of BP.  Of course, that does not make any of those discovery requests irrelevant or propounded for an ulterior purpose.  To the contrary, like the discovery sought by the Non-Operating Defendants, the other defendants' requests go to the heart of each defendant's attempt to prove that it is not responsible for the plaintiffs' damages but that, if it is deemed responsible, its proportional degree of fault is far less than that of its co-defendants.  BP has no basis for asserting that such discovery is improper when it is sought by the Non-Operating Defendants -- but not when it is pursued by the other defendants -- **or by BP itself as part of its defenses against the plaintiffs' claims**.

Neither the Supreme Court's decision in *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978), nor the district court's decision in *In re Refco Securities Litigation*, 2011 WL 497441 (S.D.N.Y. Feb. 14, 2011), supports BP's attempt to divine the motives of other parties. In each of those decisions, the court first determined that the discovery at issue was completely irrelevant to the pending litigation and thus outside the scope of Rule 26; only then was the "purpose" of the discovery considered.  *See Oppenheimer Fund*, 437 U.S. at 353 ("Taking [the party requesting discovery] at their word, it would appear that the request is not within the scope of Rule 26(b)(1)" because it could not be "forced into the concept of 'relevancy,'" and the requesting party had admitted on the record that it sought the evidence for reasons other than relevance to the pending litigation); *In re Refco Securities Litigation*, 2011 WL 497441, at *2

(agreeing with the Special Master's determination that the e-mail sought to be discovered was irrelevant to the MDL).  The standard of relevance, not BP's subjective speculation, governs the parties' discovery rights and obligations.

> **B.**     **The Non-Operating Defendants Are Entitled To Discovery Relevant To The Claims Of The Plaintiffs and Plaintiffs-In-Cross-Claim Regardless Of Its Relevance To A Possible Future Arbitration Proceeding.**

Because BP does not, and cannot, dispute the relevance of the Non-Operating Defendants' discovery requests to the claims and defenses in this case, BP's argument, at best, is that the requested discovery should be precluded because it also is relevant to separate claims that the parties might someday arbitrate.  As BP concedes, it "does not argue that 'the fact of BP, Anadarko, and MOEX's arbitration [or, presumably, their agreement to arbitrate] is enough by itself to bar discovery.  Instead, it is the fact that the discovery relates to arbitrable issues." Opposition at 19 n.8.  But this is a distinction without a difference, and BP cites nothing that directly supports this contorted basis for its opposition to the Non-Operating Defendants' motion to compel.  The only case cited by BP that touches on this issue is *Ohio Casualty Insurance Co. v. Southland Corp.*, No. 98-CV-6187, 1999 WL 562242 (W.D. Pa. July 30, 1999), which, if anything, supports the argument that BP claims it is not making (and has been rejected by other courts).  *Id.* at *1 (refusing to reconsider its decision to quash plaintiff's third-party subpoena issued in a stayed litigation based on the general rule that "no party may take discovery while an action is stayed pending arbitration").  *Contra Cornell v. Dean Witter Reynolds Inc.*, No. 95 Civ. 3050, 1996 WL 76131, at *1 (S.D.N.Y. Feb. 21, 1996) (denying motion by third party to quash deposition subpoena on grounds of arbitration agreement because "the fact of the pending arbitration is not reason to deny plaintiff discovery she is entitled to in the present case").

At the same time, BP makes no serious effort to distinguish the cases cited by the Non-

Operating Defendants that squarely reject the argument on which BP attempts to rely.[7]  Those cases expressly endorse discovery in federal cases, notwithstanding that the evidence sought also is relevant to issues in arbitration.  *Major, Lindsey & Africa, LLC v. Mahn*, No. 10 Civ. 4239, 2010 WL 3959609, at *4 (S.D.N.Y. Sept. 7, 2010) ("The fact that discovery in this action may prove useful in connection with the arbitration, which is subject to its own special discovery rules, is of no moment."); *Fleet Business Credit, LLC v. Solarcom, LLC*, No. Civ. AMD 05-901, 2005 WL 1025799, at *2 (D. Md. May 2, 2005) ("That one or more documents called for here might also be relevant to the issues in the (stayed) state court litigation . . . is not a sufficient basis for non-production of such documents in the federal litigation."); *see also Texas Trading & Transp. Inc. v. Laine Constr. Co*., No. Civ. A. 98-1473, 1998 WL 814615, at *2 (E.D. La. Nov. 18, 1998).

BP concedes that "[c]ourt discovery may make sense in th[e] circumstance" where the "parties expressly agreed to arbitrate part of their case and litigate another part," as was the case in *Major, Lindsey & Africa*.  Opposition at 18.  Court discovery makes no less sense where, as here, the parties expressly agreed to arbitrate certain claims, controversies, or disputes, but in no way limited their rights to litigate and defend against claims, controversies, or disputes brought by strangers to the arbitration agreement.  That was the exact circumstance that arose in *Fleet Business Credit, LLC v. Solarcom, LLC*, No. Civ. AMD 05-901, 2005 WL 1025799 (D. Md. May 2, 2005).  An employer, whose employee allegedly executed a guaranty on its behalf without authorization, was defending against a creditor's claim to enforce the guaranty in federal court.  *Id.* at *1.  The employer served discovery requests on the employee, asserting that he was a "critical" witness for the employer's defense against the creditor's claims.  *Id.*  The employee

---

[7]      Although BP attempts to dismiss these cases as "unpublished, out-of-circuit, district court cases," it cites at least three "unpublished, out-of-circuit, district court cases" in support of its own arguments.

sought to avoid producing discovery on the grounds that the documents requested were relevant to the employer's pending breach of contract claim against the employee, which had been stayed pending arbitration.  *Id.*   The court determined that the pertinence of the discovery to an arbitrable dispute between the employer and employee was "not a sufficient basis for non-production of such documents in the federal litigation."  *Id.* at *2.  This result made sense, as it does here, because the employer was entitled to defend against the non-arbitrable claims of a third party.

BP's attempt to distinguish *Fleet Business* and *Major, Lindsey & Africa* is limited to two unpersuasive arguments.   First, BP argues that these cases do not discuss "the kinds of limitations on discovery and court process that the parties expressly agreed to in the JOA." Opposition at 19.  To the contrary, the court in *Major, Lindsey & Africa* specifically stated that "the parties' agreement concerning arbitration discovery" did not "preempt the Federal Rules of Civil Procedure with respect to discovery in connection with this lawsuit," and concluded that "[t]he fact that discovery in this action may prove useful in connection with the arbitration, which is subject to its own special discovery rules, is of no moment."  2010 WL 3959609, at *4.

Second, BP contends that *Fleet Business* and *Major, Lindsey & Africa* do not address "the situation where, as here, the intent of the requesting party is to use the discovery for arbitrable issues."   Opposition at 19.  This is a false distinction because the Non-Operating Defendants, like the parties seeking discovery in the cited cases, have sought discovery based on its indisputable relevance to the claims brought and affirmative defenses made in these proceedings.  That the requested discovery may also pertain to arbitrable issues does not change the outcome or permit analysis of motive. *See Major, Lindsey & Africa*, 2010 WL 3959609, at *4 (making no inquiry into motive even where claims in litigation were "substantially

duplicative" of claims in arbitration, and discovery was relevant to both); *Fleet Business*, 2005 WL 1025799, at *2 (making no inquiry into motive where requested discovery "might also be relevant to the issues in the (stayed) state court litigation" because that "is not a sufficient basis for non-production of such documents").

Finally, if arbitration proceedings ever occur, they will take place far too late to enable the Non-Operating Defendants to make use of the pre-hearing discovery or any ultimate arbitral award to defend against the claims they face in this case. The Non-Operating Defendants instead would be terminally hamstrung in their efforts to litigate claims and defenses vis-à-vis *other parties* in the MDL, and would be manifestly prejudiced during the allocation proceedings. As BP is well aware, discovery delayed, in this case, is discovery denied.

In sum, because BP cannot successfully challenge the relevance of the discovery at issue to the claims and defenses in this case, its argument that the same discovery may be pertinent to and used in a possible future arbitration between BP and the Non-Operating Defendants misses the point and does not relieve BP of its discovery obligations.

### C.   BP Has Availed Itself Of The Same Discovery It Seeks to Withhold From The Non-Operating Defendants.

BP has something of a selective memory when it comes to the discovery it has sought in this case. Like every other defendant, BP has pursued discovery seeking to prove that other defendants are responsible for the plaintiffs' alleged injuries. Nevertheless, it argues that the Non-Operating Defendants are not entitled to similarly defend against the plaintiffs' claims, at least where BP is concerned.

BP's position on discovery cannot be reconciled with its prior conduct in this case. As recently as March 25, 2011, BP reiterated to the Non-Operating Defendants that they bear the responsibility of defending against the claims asserted against them in these proceedings and of

17

pursuing their own affirmative cross-claims.  Having stated that it "has no obligation under [the] Operating Agreement to prosecute or defend such claims on behalf of Anadarko or MOEX," BP now would deny the Non-Operating Defendants the right to discovery needed to pursue those claims and defenses on their own.  *See* Exhibit A hereto.

BP certainly has not hesitated to seek the type of discovery of the Non-Operating Defendants that it now claims is prohibited by the Operating Agreement.  BP does not deny that on February 16, 2011 -- months after it was on notice of a dispute with the Non-Operating Defendants under the Operating Agreement -- it identified six employees or representatives of the Non-Operating Defendants or their affiliates in a document entitled "BP Parties' List of Potential Priority Deponents."  *See* Opening Memo., Appendix, Exhibit D, at 14, 17.  Instead it seeks to discount the significance of its filing as a "court-ordered document."  Opposition at 24.  But no court order ever required BP to include any particular persons or entities on its list.

Before BP's recent change of heart, it also responded to discovery requests propounded by the Non-Operating Defendants, conduct that is entirely inconsistent with its current, self-serving interpretation of the Operating Agreement's arbitration provisions.

BP's opposition papers also are steadfastly silent on why it served document requests seeking the following information about the Non-Operating Defendants:

> 42. Please produce all documents discussing, reflecting or relating to communications between Halliburton **and Anadarko** discussing, reflecting or relating to the Macondo well.
>
> 43. Please produce all documents discussing, reflecting or relating to communications between Halliburton and **Mitsui Offshore Exploration or MOEX** discussing, reflecting or relating to the Macondo well.

Opening Memo., Appendix, Exhibit E (emphasis added).

These discovery requests, propounded by BP to Halliburton and Transocean, are

especially curious given BP's claim that the "issue of what Anadarko or MOEX knew about BP's operation is a classic example of the kind of proof for which discovery is not needed: evidence of what they knew is uniquely within the custody and control of Anadarko and MOEX themselves."   Here too, BP applies a different standard to its own discovery requests than it would have the Court impose on the Non-Operating Defendants.  The point is not that BP should be prohibited from retaining the discovery it has sought and obtained; rather, it is that the Non-Operating Defendants are entitled to no less in their defense against the plaintiffs' claims.

### III.
### CONCLUSION

For the foregoing reasons, the Joint Motion of Defendants Anadarko and MOEX Offshore To Compel Response To Discovery Requests Served Upon BP Exploration & Production, Inc., BP America Inc., BP America Production Company, and BP p.l.c. should be granted.


Respectfully submitted,

DATED: May 4, 2011          BINGHAM McCUTCHEN, LLP


/s/ *Ky E. Kirby*
Ky E. Kirby
ky.kirby@bingham.com
David B. Salmons
david.salmons@bingham.com
Michael B. Wigmore
michael.wigmore@bingham.com
Warren Anthony Fitch
tony.fitch@bingham.com
Randall M. Levine
randall.levine@bingham.com
2020 K Street, NW
Washington, DC 20006-1806
Telephone (202) 373-6000
Facsimile (202) 373-6001

James J. Dragna
jim.dragna@bingham.com
Bingham McCutchen LLP
355 South Grand Avenue
Suite 4400
Los Angeles, California 90071-3106
Telephone (213) 680-6436
Facsimile (213) 680-8636

KUCHLER POLK SCHELL
WEINER & RICHESON, LLC

Deborah D. Kuchler, T.A. (La. Bar No. 17013)
dkuchler@kuchlerpolk.com
Janika Polk (La. Bar No. 27608)
jpolk@kuchlerpolk.com
Robert Guidry (La. Bar No. 28064)
rguidry@kuchlerpolk.com
1615 Poydras Street, Suite 1300
New Orleans, LA  70112
Tel:  (504) 592-0691
Fax:  (504) 592-0696

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, pursuant to Pre-trial Order No. 12, I have caused the foregoing to be served on all counsel via the Lexis Nexis File & Serve system, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, who will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on May 4, 2011.

_____ /s/ *Ky E. Kirby*_____
Ky E. Kirby