UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf Of Mexico, on April 20, 2010<br><br>This Document applies to:<br>*All Cases.* | MDL No. 2179<br><br>SECTION: J<br><br>JUDGE BARBIER<br><br>MAGISTRATE SHUSHAN |

**TRANSOCEAN'S MEMORANDUM IN SUPPORT
OF ITS MOTION FOR A PROTECTIVE ORDER**

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Transocean Offshore Deepwater Drilling Inc., Transocean Holdings LLC, Transocean Deepwater Inc. and Triton Asset Leasing GmbH (collectively "Transocean") and, pursuant to Federal Rule of Civil Procedure 26(c), file this Memorandum in Support of Its Motion for a Protective Order, seeking an Order that protects Transocean from written discovery requests propounded by BP, Anadarko and MOEX (hereinafter referred to as "the Discovery") touching upon matters which are subject to contractual arbitration between BP and Transocean. Alternatively, should Transocean be required to respond to the Discovery, Transocean seeks an

Order that by responding to the Discovery Transocean will not be held to have waived its contractual right to arbitrate any of its disputes under its Drilling Contract with BP. Finally, should Transocean be required to respond to the Discovery, Transocean moves for leave to serve discovery of its own beyond the current deadline of April 29, 2011 set forth by Order of the Court. In support thereof, Transocean would respectfully show this Court as follows:

## BACKGROUND

The MDL-2179 proceedings can be divided roughly into two categories: on one hand, the thousands of plaintiffs' claims against the various defendants, including Transocean; on the other, the various defendants' claims against each other. Claims in the first category almost never trigger contractual arbitration issues; the claims in the latter category sometimes do. Transocean's Motion for a Protective Order concerns a discovery issue in the latter category.

### A.     *The Discovery at Issue*

On March 11, 2011, BP served its First Requests for Production of Documents on Transocean. On April 11, 2011, Transocean filed its objections to BP's First Request for Production of Documents asserting as follows:

> Respondents object generally to BP's Requests and to each individual Request, to the extent that they pertain to putative claims between BP and Respondents arising out of or relating to the Drilling Contract between Vastar Resources, Inc. and R&B Falcon Drilling Co. dated December 9, 1998 ("Drilling Contract"). Article 35.4 of the Drilling Contract states that such claims are subject to arbitration, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.

On April 29, 2011, various BP, Anadarko and MOEX entities propounded additional discovery requests on Transocean in the MDL. Transocean intends to file similar objections to this additional round of discovery.

2

B.  *BP Resists Discovery on the Basis of an Arbitration Clause*

At or about the same time that BP served the Discovery requests upon Transocean, other parties, including Anadarko and MOEX, served discovery requests upon BP. On April 27, 2011, BP filed a motion to stay MDL discovery proceedings between various BP entities and Anadarko and MOEX. **Dkt. 2169.** The motion to stay was in response to a joint motion to compel discovery from BP filed by Anadarko and MOEX. **Dkt. 1965.** In that response, BP has already made much of the argument for Transocean. In its motion to stay, BP seeks an order that it does not have to respond to previous discovery from Anadarko or MOEX and is not subject to future discovery from them either. Its basis for these arguments is that disputes between BP and Anadarko and MOEX are, as joint owners of and investors in the Macondo well, subject to a contractual arbitration clause in the parties' Joint Operating Agreement ("JOA"). Among other reasons, but as relevant to the instant Motion by Transocean, BP argues that initiation of arbitration is not even necessary to obtain a stay of discovery between parties to an arbitration agreement, **Dkt. 2169, at 13**; that BP did not initiate these proceedings but simply found itself as a co-party in the MDL alongside a co-signatory to the arbitration agreement, **Dkt. 2169, at 16**; and that it has not engaged in a program of discovery against Anadarko and MOEX that would waive BP's rights to arbitrate disagreements between them, **Dkt. 2169, at 23**. Citing *Texaco Exploration & Production Co. v. AmClyde Engineered Products Co.*, 243 F.3d 906, 911 (5th Cir. 2001), BP summarized much of the argument Transocean now makes against BP:

> In sum, both the Fifth Circuit and other courts have held that claims asserted by a third party in litigation cannot strip a party to an arbitration clause of its rights under the FAA. Nor can the Federal Rules of Civil Procedure trump the FAA. Yet that is what Anadarko and MOEX argue here—claiming that because third parties are suing them, they may (i) violate express provisions of the JOA, (ii) conduct discovery under the Federal Rules of Civil Procedure, and (iii) nullify the FAA's stay on all litigation between

3

> themselves and BP.  As *AmClyde* held, neither the actions of a third party (here, the Plaintiffs) nor the Federal Rules of Civil Procedure, can overcome the strong federal policies behind the FAA.  Allowing a party to an arbitration clause to conduct discovery on a counterparty because of litigation with a third party would inspire the kind of "abuse and opportunistic behavior" that the Fifth Circuit warned about in *AmClyde*.  *See* 243 F.3d at 910.  Under controlling Fifth Circuit precedent, regardless of what third parties—like the MDL plaintiffs—do, Anadarko and MOEX are bound by their express promises to BP and the policies of the FAA not to conduct litigation against BP.

**Dkt. 2169, at 18.**  The Discovery served on Transocean by the Macondo well ownership parties violates the arbitration agreement in the Drilling Contract, and cannot be justified on the ground that those parties are being sued by MDL plaintiffs.

### C. *Transocean Seeks Protective Relief*

BP's foregoing arguments for resisting discovery from Anadarko and MOEX are very nearly the same as Transocean brings against BP, Anadarko and MOEX in the instant Motion. BP, Anadarko and MOEX are attempting discovery on claims clearly arising out of or relating to the BP-Transocean Drilling Contract, and the Federal Arbitration Act prohibits discovery on such claims.

Of course, any decision by the Court on the issue of the BP-Anadarko-MOEX arbitration can necessarily impact Transocean only indirectly, as Transocean has expressly and repeatedly reserved its rights to arbitrate all along, although it has done so pursuant to a different clause in a different agreement—the BP-Transocean Drilling Contract.  Nevertheless, the wrangling over the Anadarko and MOEX motion to compel and the BP motion to stay does involve, possibly for the first time in these proceedings, the issue of discovery in the context of claims which are subject to contractual arbitration.  As noted above, contractual arbitration is of general

4

importance in many of the claims between MDL defendants, and of particular importance to Transocean in the BP Oil Spill litigation.

BP's motion to stay and response to the Anadarko and MOEX joint motion to compel also highlight an important, additional consideration that concerns Transocean. Anadarko and MOEX argue that they have the right to take discovery from BP in the MDL to defend against the various Plaintiffs' claims against Anadarko and MOEX, the defense of which will include establishing the relative fault of BP and the lack of fault of Anadarko and MOEX. **Dkt. 1965-1, at 2, 9.** Anadarko and MOEX argue in support of their motion to compel that they should not be deprived of the right to discovery in the MDL simply because the same discovery might be relevant to their arbitrable dispute under the BP-Anadarko-MOEX JOA (where they are assertedly trying to prove that BP was grossly negligent as the Operator, thus relieving Anadarko and MOEX of their obligation to pay participating shares under the JOA). **Dkt. 1965-1, at 2, 9.**

Transocean has an even stronger position than does BP with Anadarko and MOEX regarding discovery rights in the MDL proceedings. It, too, is being sued by tens of thousands of claimants who are not required to arbitrate their claims against Transocean. However, unlike the arbitrable claims Anadarko and MOEX have against BP, Transocean does not need to prove that BP was grossly negligent to obtain indemnity under the BP-Transocean Drilling Contract. In fact, the indemnity agreement between BP and Transocean does not look at all to the relative fault of the parties, but simply allocates liability relative to the origin of the pollution.[1] Thus, BP cannot claim, as it has with regard to Anadarko and MOEX, that Transocean's limited

---

[1] Article 24.1 of the Drilling Contract allocates liability for surface-originating pollution (". . . ORIGINATING ON OR ABOVE THE SURFACE OF THE LAND OR WATER . . .") to the Contractor, Transocean Holdings (". . . WITHOUT REGARD TO NEGLIGENCE OF ANY PARTY OR PARTIES . . ."), and Article 24.2 allocates all other pollution liability to the Company, BP America (". . . WITHOUT REGARD FOR NEGLIGENCE OF ANY PARTY OR PARTIES . . ."). In Article 25.1, it is further explained that the Drilling Contract's fault-free allocation of liability holds "WHETHER SUCH NEGLIGENCE BE SOLE, JOINT OR CONCURRENT, ACTIVE, PASSIVE **OR GROSS**. . . ."

participation in MDL discovery—the term "presence" is more appropriate than participation, as Transocean has served no discovery of its own on BP and has noticed no MDL depositions—is somehow being used to evade Transocean's right to resolve disputed factual issues through arbitration. And, for that reason, it would be even more of a stretch to argue that Transocean's limited participation in the MDL has thereby operated to waive its right to arbitrate the Drilling Contract issues. However, because of the importance of the issues to Transocean, Transocean is compelled to seek clarification from the Court as to: (1) whether it must comply with the Discovery requests of BP, Anadarko, and MOEX and (2) if required to comply with the Discovery requests that it may do so without waiver of its right to compel arbitration of its disputes with BP.

Transocean thus seeks an Order protecting it from all discovery requests touching upon matters which are subject to contractual arbitration between BP and Transocean. Alternatively—whether its Motion is granted or denied, in full or in part—Transocean seeks to clarify that, should it be required to respond to the outstanding written Discovery requests, it may do so without waiver of its right to compel arbitration of its disputes with BP. Finally, should the requested Order not issue, thus requiring Transocean to respond to the discovery complained of—Transocean moves for leave to serve discovery of its own, which it has to this point refrained from doing so as not to jeopardize its right to arbitrate the issues touching on the Drilling Contract.

## **ANALYSIS**

The FAA provides that arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Fifth Circuit has "repeatedly emphasized the strong federal policy in favor of

56816:10055708

arbitration." *Safer v. Nelson Fin. Grp., Inc.*, 422 F.3d 289, 294 (5th Cir. 2005) (observing that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration" (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983))).  In fact, this federal policy in favor of arbitration is so robust that the FAA has an appeal provision built into it: "An appeal may be taken from . . . an order . . . refusing a stay of any action under section 3. . . ."  9 U.S.C. § 16(a)(1).

Under Rule 26(c), the Court may, "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, . . . forbidding the disclosure or discovery[, or] . . . limiting the scope of disclosure or discovery of certain matters."  FED. R. CIV. P. 26(c)(1)(A), (D).

### A. BP, Anadarko and MOEX Seek Discovery on Issues that Are Subject to the Parties' Arbitration Agreement.

The December 9, 1998 Drilling Contract between BP and Transocean's predecessors in interest in the Macondo prospect sets forth in relevant part:

> **35.4   ARBITRATION**
> Any controversy or claim arising out of or relating to this CONTRACT, or the breach thereof, which cannot be resolved satisfactorily between the parties, shall be settled by arbitration in Houston, Texas, in accordance with the rules of the American Arbitration Association Commercial Disputes.

As BP observes in its motion with regard to the arbitration clause between it and its co-investors, **Dkt. 2169, at 9**, this type of language is considered one of the "broad arbitration clauses capable of expansive reach" by both the Fifth Circuit and the Supreme Court.  *See Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067–68 (5th Cir. 1998) ("[C]ourts distinguish 'narrow' arbitration clauses that only require arbitration of disputes 'arising out of'

the contract from broad arbitration clauses governing disputes that 'relate to' or 'are connected with' the contract.").

"With such a broad arbitration clause, it is only necessary that the dispute 'touch' matters covered by the [Drilling Contract] to be arbitrable." *Id.* at 1068.  The discovery BP previously propounded to Transocean (which Transocean has answered under objection) and the discovery recently served on Transocean by BP, Anadarko and MOEX touches upon matters covered by the BP-Transocean Drilling Contract, which governs indemnity and liability between the parties. Thus, "[b]earing in mind the strong federal policy in favor of arbitration," *id.*, those matters are arbitrable under the Drilling Contract and are not properly the subject of discovery in the MDL.

### B. *Discovery that Touches Upon Issues Subject to the Parties' Arbitration Clause Is Not Permitted.*

As BP urges in its response to Anadarko and MOEX's motion to compel certain discovery, where an arbitration clause covers an issue, as in the instant case, discovery related to that arbitrable issue is prohibited.  **Dkt. 2169, at 12** (collecting cases).  There is clear prejudice to Transocean in having to engage in and respond to discovery from parties subject to an arbitration agreement on claims subject to that same arbitration agreement.  *Cf. Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 346 (5th Cir. 2004) (observing, in the context of waiver, the prejudice to a party forced to participate in discovery on matters that are ultimately arbitrable). BP cannot now claim offensively that its own discovery demands on Transocean are somehow exempt from the rule it wields defensively against similar requests by Anadarko and MOEX. *See* **Dkt. 1965-1, at 14** (recounting BP's extensive involvement in propounding discovery on Anadarko and MOEX).  Transocean is thus entitled to an Order protecting it from discovery served on it by BP, Anadarko and MOEX.

C.   *Transocean Has Not Waived Its Right to Arbitration of Claims or Controversies Arising Under or Relating to the Drilling Contract*

Counsel for Transocean suspect that BP will argue Transocean has waived its right to arbitrate any disputes under the BP/Transocean Drilling Contract. Presumably, BP's theory will be that Transocean has participated in the MDL litigation and has waived arbitration; or perhaps that Transocean's Rule 14(c) tenders of BP, Anadarko and MOEX as third-party defendants, or its filing of cross-claims pursuant to Court order, operated to waive Transocean's contractual rights to arbitrate. None of these possible arguments has merit.

It must be noted at the outset that, in light of the strong policy favoring arbitration agreements, the Fifth Circuit does not look favorably upon waiver arguments:

> Normally, waiver occurs when a party initially pursues litigation and then reverses course and attempts to arbitrate, but waiver can also result from "some overt act in Court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration." *Subway Equipment Leasing Corp. v. Forte*, 169 F.3d 324, 329 (5th Cir. 1999). There is a strong presumption against waiver, and any doubts thereabout must be resolved in favor of arbitration. *Id.* at 326.

*Texaco Exploration & Prod. Co. v. AmClyde Engineered Prods. Co.*, 243 F.3d 906, 911 (5th Cir. 2001).

With regard to the waiver-by-participation-in-discovery argument, BP itself has noted in its response to Anadarko and MOEX's motion to compel that rights to arbitrate under the FAA are not waived merely by participating in discovery. BP has served multiple requests on Transocean. Transocean has served none on BP. Moreover, as explained in the Background section above, Transocean's participation in the MDL is compelled by its being a named defendant in the countless suits transferred there, not by any tactical desire to avoid its contractual agreement with BP that any disputes relating to the Drilling Contract would be

9

subject to arbitration. Transocean has not moved the Court for any sort of judgment on the merits of any claims beyond those of the MDL plaintiffs, nor has it sought to prove its own allegations or affirmative defenses as to the MDL defendants, nor has it in any other way substantially invoked the judicial process as is a required element to show waiver. And it has always made all parties aware of its rights to compel arbitration. *See, e.g.*, *Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156, 1159, 1162 (5th Cir. 1986) (affirming denial of motion to compel arbitration where, after seventeen months, movant initiated extensive discovery, answered twice, filed motions to dismiss and for summary judgment, filed and obtained two extensions of pre-trial deadlines, all without demanding arbitration).

Nor can BP attempt to argue that Transocean's Rule 14(c) motion as third-party plaintiff tendering those parties as third-party defendants operates as a waiver. This would evince a fundamental misunderstanding of 14(c) procedure. Transocean included no affirmative claims in its 14(c) tender. Transocean only tendered these third-party defendants to the thousands of plaintiffs/claimants in the Limitation Act proceeding, **Dkt. 1320, at 21**, as it is expressly permitted to do under the admiralty impleader rule. *See, e.g.*, *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 242–43 (5th Cir. 2009) ("... Rule 14(c) permits a defendant to implead a third-party defendant for two purposes: (1) to seek contribution or indemnification from the third-party defendant, and (2) to tender the third-party defendant to the plaintiff."). This Court's Order of March 24, 2011, cites the parties' stipulation to the same effect. **Dkt. 1730, at 1.** Moreover, BP cannot argue that Transocean's assertion of a cross-claim against it acts as a waiver of Transocean's contractual arbitration rights under the Drilling Contract. First, Transocean brought its cross-claim subject to its rights to arbitrate: "Transocean's Rule 13 Cross-Claim/Counter-Claim is filed subject to, and without waiver of, Transocean's rights to invoke

10

and compel arbitration of any and all arbitrable disputes which arise out of or are related to the Drilling Contract. . . ." **Dkt. 2068, at 1 n.1.**  Secondly, and more importantly, Transocean's cross-claim against BP was brought pursuant to a Court Order that established April 20, 2011 as the relevant cut-off date for the Limitation Petitioner to file cross-claims in the MDL. **Dkt. 1730-1, at 2.**  In short, neither the 14(c) tenders nor the cross-claims can serve as grounds for waiver of Transocean's right to arbitrate claims under the Drilling Contract.

In any event, regardless of how it might argue waiver, BP cannot demonstrate the prejudice that is a prerequisite to any finding of waiver of Transocean's right to arbitrate Drilling Contract claims.  *Nicholas v. KBR, Inc.*, 565 F.3d 904, 910 (5th Cir. 2009) ("In addition to invocation of the judicial process, the party opposing arbitration must demonstrate prejudice before we will find a waiver of the right to arbitrate.  Prejudice in the context of arbitration waiver refers to delay, expense, and damage to a party's legal position.").  BP, Transocean, Anadarko, MOEX and others are all being sued by tens of thousands of people as a result of the BP Oil Spill.  It is not likely that BP will be able to show that any one party's participation at this early stage in the MDL—much less a party such as Transocean, which has not served any discovery on BP and has noticed not one single deposition—has tipped the scales in favor of prejudice to BP.

Lastly, counsel for BP and Transocean—for months now since this litigation began—have exchanged correspondence wherein BP was placed on notice that Transocean intended to assert its right to arbitration under the parties' Drilling Contract.  At this point, Transocean considers this body of correspondence between counsel for the parties to be privileged; however, in the event BP's response to this Motion attempts to argue waiver of arbitration, such correspondence will be produced in camera as an exhibit to Transocean's reply.

11

56816:10055708

Thus, because BP will be unable to counter the strong presumption against waiver of arbitration, Transocean is entitled to an Order that it has not waived its right to seek contractual arbitration under the Drilling Contract.

## CONCLUSION

For the foregoing reasons, Transocean seeks an Order protecting it from all discovery requests touching upon matters which are subject to contractual arbitration between BP and Transocean. Alternatively—should this Court deny the requested Order and, therefore, require Transocean to respond to the discovery complained of—Transocean moves for leave to serve discovery of its own. In any event—whether its Motion is granted or denied, in full or in part—Transocean seeks an Order that it has not waived its right to arbitration of disputes under its Drilling Contract.

Respectfully submitted,

| | |
|---|---|
| By: /s/ Steven L. Roberts<br>Steven L. Roberts (Texas, No. 17019300)<br>Rachel Giesber Clingman (Texas, No. 00784125)<br>Kent C. Sullivan (Texas, No. 19487300)<br>Teri L. Donaldson (Florida, No. 784310)<br>Sutherland Asbill & Brennan LLP<br>1001 Fannin Street, Suite 3700<br>Houston, Texas 77002<br>Telephone: (713) 470-6100<br>Facsimile: (713) 654-1301<br>Email: steven.roberts@sutherland.com,<br>rachel.clingman@sutherland.com,<br>kent.sullivan@sutherland.com,<br>teri.donaldson@sutherland.com | By: /s/ Kerry J. Miller<br>Kerry J. Miller (Louisiana, No. 24562)<br>Frilot, L.L.C.<br>1100 Poydras Street, Suite 3700<br>New Orleans, Louisiana 70163<br>Telephone: (504) 599-8169<br>Facsimile: (504) 599-8154<br>Email: kmiller@frilot.com<br>-and-<br><br>By: /s/ Edwin G. Preis, Jr.<br>Edwin G. Preis, Jr. (Louisiana, No. 10703)<br>Edward F. Kohnke, IV (Louisiana, No. 07824)<br>Preis & Roy PLC<br>102 Versailles Boulevard, Suite 400<br>Lafayette, Louisiana 70501<br>Telephone: (337) 237-6062<br>Facsimile: (337) 237-9129<br><br>-and- |

56816:10055708

601 Poydras Street, Suite 1700
New Orleans, Louisiana 70130
Telephone: (504) 581-6062
Facsimile: (504) 522-9129
Email: egp@preisroy.com, efk@preisroy.com

Of Counsel:

John M. Elsley (Texas, No. 0591950)
Royston, Rayzor, Vickery & Williams LLP
711 Louisiana Street, Suite 500
Houston, Texas 77002
Telephone: (713) 224-8380
Facsimile: (713) 225-9945
Email: john.elsley@roystonlaw.com

Daniel O. Goforth (Texas, No. 08064000)
Goforth Geren Easterling LLP
4900 Woodway, Suite 750
Houston, Texas 77056
Telephone: (713) 650-0022
Facsimile: (713) 650-1669
Email: dangoforth@goforthlaw.com

Brad D. Brian (California, No. 79001)
Allen M. Katz (California, No. 054933)
Munger Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California 90071
Telephone: (213) 683-9100
Facsimile: (213) 683-5180, (213) 683-4018
Email: brad.brian@mto.com, allen.katz@mto.com

*Counsel for Triton Asset Leasing GmbH.,
Transocean Holdings LLC, Transocean
Offshore Deepwater Drilling Inc. and
Transocean Deepwater Inc.*

13

56816:10055708

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 5th, 2011, I electronically filed the foregoing with the Court's CM/ECF system and service on all counsel of record by using the LexisNexis File & Serve, in accordance with Pretrial Order No. 12 which will send a notice of filing to all counsel accepting electronic notice.

                                                s/Kerry J. Miller

56816:10055708