## UNITED STATES DISTRICT OF COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | § § § | **MDL NO. 2179** |
| | | **SECTION:  J** |
| Applies to: | § | **JUDGE BARBIER** |
| *All Cases in Pleading Bundle B1* | § § | **MAGISTRATE SHUSHAN** |

### REPLY IN SUPPORT OF HALLIBURTON ENERGY SERVICES, INC.'S, MOTION TO DISMISS PLAINTIFFS' MASTER COMPLAINT FOR ECONOMIC LOSSES

Defendant Halliburton Energy Services, Inc. ("HESI"), respectfully submits this Reply in Support of Its Motion to Dismiss Plaintiffs' Master Complaint[1] for Economic Losses [Bundle B1] and respectfully shows the Court as follows:[2]

## I.        INTRODUCTION

As set forth in HESI's Motions to Dismiss the B1 Master Complaint, all claims arising out of the *Deepwater Horizon* incident ("Incident") arise under admiralty tort jurisdiction and are therefore governed by maritime law.  Even claims for damages that allegedly occurred on shore are governed by maritime law by virtue of the Admiralty Extension Act, the statutory language of which cannot be more clear.  Moreover, because they seek oil-spill related damages, such maritime claims are displaced by the Oil Pollution Act of 1990, 33 U.S.C. §§ 2701-2720, *et seq.* ("OPA"), the federal statute that Congress intended to provide the exclusive federal remedy for oil-spill related damages.  Plaintiffs have asserted that they may properly assert state law claims as well.  However, state law may govern claims arising out of the Incident only if (1) state law is incorporated as proxy federal law pursuant to the "adjacent state law" provision of the Outer

[1] The PSC has stipulated that HESI's Motion to Dismiss the B1 Master Complaint may be deemed by the Court to also be a Motion to Dismiss the Amended B1 Master Complaint.

[2] HESI's Reply also addresses the additional briefing provided by the State of Louisiana in its Memorandum of Law in Interest in and Opposition to Defendants' Pending Motions to Dismiss (Dkt. 1993).

Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. §§ 1331-1356A, *et seq.*, or (2) such claims arise in state territorial waters.  Neither applies here.  OCSLA's adjacent state law provision does not apply because the *Deepwater Horizon* was a "vessel."  Moreover, the allegedly tortious acts or omissions at issue in this case, as well as the discharge of oil, occurred in exclusively federal waters and well beyond the territorial limits of any state.  Indeed, the cases upon which Plaintiffs rely to assert the validity of their state law claims suffer, among other things, from this critical distinction—they address oil spills that occurred in state territorial waters.  Therefore, they do not address the unique facts of the instant case.

## II.     SUMMARY OF REPLY ARGUMENTS

In their Omnibus Memorandum of Law in Opposition to Defendants' Motions to Dismiss Bundle B1 First Amended Master Complaint, Cross-Claim, and Third-Party Complaint (the "Opposition"), Plaintiffs assert that this "Court's jurisdiction is founded (at least in part) upon admiralty jurisdiction, and federal maritime law is applicable to claims."  Opposition at 30.[3] They also acknowledge that, generally speaking, "with admiralty jurisdiction comes the application of substantive admiralty law."  Opposition at 25 (quoting *E. River S.S. Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 865 (1986)); Louisiana Memorandum at 26 (quoting the same).  The majority of Plaintiffs also disclaim the applicability of the "adjacent state law" provision contained in OCSLA, 43 U.S.C. §§ 1331-1356A, *et seq.*[4]  However the State of Louisiana embraces OSCLA's "adjacent state law" provision and argues that "it is beyond

_____

[3] The State of Louisiana separately filed a Memorandum of Law in Interest in and in Opposition to Defendants' Pending Motions to Dismiss, (the "Louisiana Memorandum").  *See* Dkt. 1993.  The Louisiana Memoranda was filed in direct response to HESI's Motion to Dismiss Plaintiffs' Master Complaint for Economic Losses (Dkt. 1429).  *See id.* at 9.

[4] The "adjacent state law" provision of OCSLA is located at 43 U.S.C. § 1333(a)(2)(A).

dispute that Louisiana qualifies as the 'adjacent' state for purposes of gap-filling."  Louisiana Memorandum at 29.[5]

Plaintiffs further maintain that their various state law claims survive because state law is used to "'fill gaps' or provide relief that otherwise would not be available under admiralty law." Opposition at 55; *see also* Louisiana Memorandum at 29-32.  Plaintiffs' argument is unavailing, as they have not demonstrated how maritime law and OPA fail to provide relief for the damages they seek.  Nor do Plaintiffs offer any justification for supplementing federal law with state law, citing only cases arising from incidents that occurred within state territorial waters.  Opposition at 54-55.  The cases Plaintiffs cite – all cases in which a discharge occurred in state territorial waters – provide no justification for applying state law to claims arising out of a discharge in federal waters.  Federal maritime law, not state law, applies to Plaintiffs' claims.

Further, Plaintiffs' contention that OPA does not preempt or displace[6] their maritime law claims directly contradicts this Court's case law, as Plaintiffs concede.  Opposition at 40; Louisiana Memorandum at 17-21.  This case law establishes that OPA preempts or displaces Plaintiffs' maritime claims, which seek recovery for damages recoverable under OPA.  Thus, OPA provides the sole remedy for the damages they allege.

---

[5] HESI agrees that, if OCSLA's adjacent state law provision were to apply, Louisiana law likely would be the appropriate state law applied as proxy federal law under the statute.  However, as set forth herein and in HESI's motion to dismiss, OCSLA's adjacent state law provision does not apply.  Rather, maritime law applies.

[6] The doctrine of "preemption" generally pertains to the effect of federal law on state law, where there are concerns associated with federalism and balancing states' rights.  However, the discussion herein regarding the OPA's effect on federal common law (*i.e.*, maritime law) pertains to the effect of a federal statute on a body of federal law, not state law.  In such instances, the federal statute more accurately "displaces" the federal common law, and there are no corresponding federalism issues.  Nevertheless, in discussing OPA's effect on federal maritime law, certain courts have referred to this issue as one of "preemption," and other courts seem to use "preemption" and "displacement" interchangeably.  *See, e.g., Gabarick v. Laurin Mar. (Am.) Inc.,* 623 F. Supp. 2d 741, 750-51 (E.D. La. 2009) (holding that "all [general maritime law] claims that are recoverable under OPA, specifically those covered damages enumerated in 33 U.S.C. § 2702, are preempted by OPA").  To avoid confusion with supporting case law, HESI's discussion of OPA asserts that the statute "preempts or displaces" federal maritime law.

Plaintiffs' argument that punitive damages are available is similarly futile.  Case law prohibits recovery of punitive damages under OPA.

Further, HESI's argument that Plaintiffs' asserted claims against it should be dismissed because HESI has not been named a "responsible party" for OPA purposes is not premature.  OPA's plain language dictates that HESI cannot be named a "responsible party" given the facts alleged by Plaintiffs in their Amended Master Complaint.

Plaintiffs do not dispute that some Plaintiffs failed to comply with OPA's mandatory presentment requirements.  Such a failure deprives this Court of subject matter jurisdiction over the underlying claims for which no such presentment has been made.

Although Plaintiffs may be able to recover economic damages under OPA, the economic loss rule established in *Robins Dry Dock* precludes recovery of such damages under maritime law.  Moreover, Plaintiffs cite no case law in support of their contention that "it could be argued that the Comprehensive Environmental Response, Compensation and Liability Act of 1980 . . . was amended . . . to overrule *TESTBANK* and *Robins Dry Dock.*"  Therefore, even if Plaintiffs' maritime law claims are not found to be displaced or preempted by OPA, their claims must be dismissed to the extent they allege economic damages without physical harm to a proprietary interest.

## III.   ARGUMENT

### A.    Federal Maritime Law Applies to Plaintiffs' Claims to the Exclusion of State Law.

Plaintiffs designated their Amended Master Complaint as "an admiralty or maritime case as provided in Rule 9(h)(1) of the Federal Rules of Civil Procedure[.]"  Am. Master Comp. p. 46.  Plaintiffs concede that, in general, "with admiralty jurisdiction comes the application of substantive admiralty law."  Opposition at 25 (quoting *E. River S.S. Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 865 (1986)).  Plaintiffs also point out that "the exercise of admiralty

jurisdiction does not result in the automatic displacement of state law."  Opposition at 53 (citing *Yamaha Motor Corp. v. Calhoun,* 516 U.S. 199, 206 (1996) and *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527, 545 (1995)).  However, Plaintiffs overlook the fact that "admiralty law does require displacement of state law in many contexts."  *Matheny v. The Tennessee Valley Authority,* 503 F. Supp. 2d 917, 922 (M. D. Tenn. 2007) (citing *Harris v. United States,* 261 F.3d 643, 647 (6th Cir. 2001) (holding that "general admiralty law, not state law, governs claims resulting from maritime deaths in territorial waters"); *Moragne v. States Marine Lines, Inc.,* 398 U.S. 376, 398-99 (1970) (holding that wrongful death actions asserted under admiralty jurisdiction lie under general maritime law for death caused by violation of maritime duties and are not limited to state standards of liability); *TAG/ICIB Servs. v. Pan American Grain Co.,* 215 F.3d 172, 177 (1st Cir. 2000) (noting that "an admiralty court must apply the federal maritime rules that directly address the issues at hand, and only resort to state law when no federal rules applies").

> **1.      *Federal law should not be supplemented with state law because this case arose on the outer continental shelf.***

Relying on *Yamaha,* Plaintiffs contend that state law should "supplement" federal law by filling gaps or providing relief "that otherwise would not be available under admiralty law."  Opposition at 55.  *Yamaha,* however, provides no justification for supplementing federal law with state law in this admiralty case, which arose far outside the territorial waters of any state.  In reaching its decision to "preserve the application of state statutes to deaths within territorial waters[,]" *id.* at 216, the *Yamaha* Court reasoned that "[f]ederal maritime law has long accommodated the States' interest in regulating maritime affairs within their territorial waters." *Id.* at 215 n. 13.  However, the Supreme Court's repeated emphasis on the location of the accident demonstrates that the location of the incident in territorial waters was an important

factor in its application of state law in that case.  *See id.* at 207-216; *see also Fernandez v. Aliff,* 2008 U.S. Dist. LEXIS 108281, at \*15 (D. P.R.) (noting that the only way that a Puerto Rico statute could apply to plaintiffs' claims in admiralty was if the accident giving rise to the lawsuit had occurred within Puerto Rico's territorial waters).  The present case, as Plaintiffs concede, arose out of activities that took place outside the territorial waters of any state and therefore requires the application of maritime law.  Am. Master Compl. ¶ 272.  Plaintiffs' reliance upon *Yamaha* is misplaced.

Like *Yamaha,* Plaintiffs' other cited authorities are similarly unsupportive of their argument because none of the claims arose from incidents that transpired outside state territorial waters.  *See, e.g., Just v. Chambers,* 312 U.S. 383, 391-92 (1941) (holding that state survival statutes may be applied in cases arising out of accidents in territorial waters); *Coastal Iron Works, Inc. v. Petty Ray Geophysical,* 783 F.2d 577, 580 (5th Cir. 1986) (arising from a fire aboard a ship undergoing repairs in a shipyard); *J. Ray McDermott v. Vessel Morning Star,* 457 F.2d 815, 817 (5th Cir. 1972)[7] (arising from a deficiency judgment after a public sale of the subject vessels); *Rogers v. Coastal Towing, L.L.C.,* 723 F. Supp. 2d 929, 932 (E.D. La. 2010) (arising from injuries sustained by a paramedic as he tried to jump from the dock on board a ship to treat the ship's captain who had suffered a heart attack); *TAG/ICIB Servs.,* 215 F.3d at 174 (arising from the defendant's loading and unloading of containers and the resulting, disputed demurrage charges and fees); *American Dredging Co. v. Lambert,* 81 F.3d 127, 128-29 (11th Cir. 1996) (arising from the allision of a motorboat and a dredging pipeline "in territorial waters adjacent to the Port of Miami"); *Morrow v. Marinemax, Inc.,* 731 F. Supp. 2d 390, 392 (D. N.J. 2010) (arising from injuries sustained on a boat "off the coast of Atlantic City, New Jersey");

---

[7] Plaintiffs fail to explain how *Rogers* and *McDermott,* which were decided in 1986 and 1972 respectively, were decided "[i]n the wake of *Yamaha,*" which was decided in 1996.

*Matheny,* 503 F. Supp. 2d at 919 (arising from the capsizal of a fishing boat on the Cumberland River in Tennessee); and *Frohmader v. Sea Ray (In re SkipperLiner Indus.),* 2002 U.S. Dist. LEXIS 27139, at *15-16 (arising from the carbon monoxide poisoning of three people aboard a vessel beached on an island in the Mississippi River).

Indeed Plaintiffs can point to no case that, like this one, arose from an incident exclusively in federal waters over the outer continental shelf and in which the court, sitting in admiralty, applied state law.  Plaintiffs further offer no justification why *Yamaha* and their other cited authorities should be followed despite this critical distinction.  Accordingly, *Yamaha* is not relevant to this case.

**2.     *Plaintiffs identify no "gap" in federal law that should be filled by state law.***

Another circumstance that factored significantly in the *Yamaha* holding was the Supreme Court's recognition that "Congress has not prescribed remedies for the wrongful deaths of nonseafarers in territorial waters."  516 U.S. at 215.  Thus, in *Yamaha,* state law was only applied to fill a gap in applicable federal law.  *Id.* at 216.

By contrast, in this case, Congress has prescribed federal remedies for the economic damages alleged by Plaintiffs in OPA.  *See* Am. Master Compl. ¶¶ 154-166 (describing in detail the damages sought by each proposed sub-class); *see also* 33 U.S.C. § 2702(b)(2) (outlining the damages recoverable under OPA); *Tanguis v. M/V Westchester,* 153 F. Supp. 2d 859, 867 (E.D. La. 2001) (describing OPA as comprehensive federal legislation covering oil spill liability and compensation).  Therefore, because OPA provides relief for the kinds of oil-spill related damages alleged by Plaintiffs, there is no gap in the federal law for state law to fill.  *See J. Ray McDermott & Co., Inc. v. The Vessel Morning Star,* 457 F.2d 815, 817-18 (5th Cir. 1972)

(declining to apply a Louisiana statute after it "perceive[d] no void in the statutory scheme" of the federal Ship Mortgage Act).[8]

Plaintiffs continue to place more weight on *Yamaha* than it can bear, maintaining that "[i]n the wake of *Yamaha,* federal courts routinely apply state laws in admiralty cases when those state laws 'fill gaps' or provide relief that otherwise would not be available under maritime law." Opposition at 55.   However, in the majority of the cases cited by Plaintiffs for this proposition, the courts declined to apply state law.   *J. Ray McDermott,* 457 F.2d at 818 (rejecting an invitation to supplement the federal Ship Mortgage Act of 1920 with Louisiana law); *Rogers,* 723 F. Supp. 2d at 936 (declining to apply Louisiana's Professional Rescuer's Doctrine in an admiralty case); *Coastal Iron Works, Inc.,* 783 F.2d at 582 (declining to apply the Texas Deceptive Trade Practices Act to void a clause in a ship repair contract subject to maritime law); *Matheny,* 503 F. Supp. 2d at 922-23 (declining to apply the Tennessee Recreational Use Statute in a maritime case because in that case "the court [did] not face a situation where the federal maritime law is silent as to an issue and a state statute provides an applicable rule but, rather, the court face[d] a situation where the federal law clearly provide[d] a maritime avenue for recovery"); *Morrow,* 731 F. Supp. 2d at 399 (preserving the plaintiffs' general maritime negligence claim despite an exclusivity provision in a New Jersey statute); *TAG/ICIB Servs.,* 215 F.3d at 177 (deciding to apply applicable federal limitations period instead of the period prescribed by the Puerto Rico Code of Commerce because "an admiralty court must apply the federal maritime rules that directly address the issues at hand, and only resort to state law when

---

[8] Tellingly, the only "gap" in federal law identified by Plaintiffs is that attorneys' fees "might otherwise not be available under the general maritime law."   Opposition at 55.   Plaintiffs propose to fill this alleged gap with the Florida Pollutant Discharge Prevention and Control Act ("FDPCA"), Fla. Stat. §§ 376.011, *et seq*.  *Id.*   Even if the Court ascribed any significance to this supposed "gap," it would have no impact on Plaintiffs' claims against HESI, as Plaintiffs do not assert a claim under the FDPCA against HESI.

no federal rule applies").   Plaintiffs are unable to support their tenuous argument for the application of state law rather than maritime law with any binding or persuasive authority.

> **3.**     ***Applying the laws of numerous states would interfere with the proper harmony and uniformity of general maritime law.***

State law may be used to supplement maritime law only if such application would not disrupt the uniformity or harmony of the maritime law.  *Rogers,* 723 F. Supp. 2d at 935 (noting that state law may not supplement maritime law where state law "(i) conflicts with an applicable act of Congress, (ii) works a material prejudice to a characteristic feature of the general maritime law, or (iii) interferes with the proper harmony and uniformity of the general maritime law in its international or interstate relations"); *see also Green v. Vermilion Corp.,* 144 F.3d 332, 341 (5th Cir. 1998) ("That uniformity is not to be sacrificed to accommodate state law is a fundamental premise of admiralty jurisdiction.").

Again, the authorities cited by Plaintiffs in support of their argument for the application of state law do not support their argument.  For instance, in *J. Ray McDermott,* the Fifth Circuit, sitting in admiralty, declined to turn to a state statute to fill an alleged gap in the federal Ship Mortgage Act.  The Fifth Circuit found that "'to engraft the various nuances of state law onto federal legislation would introduce an undesirable lack of uniformity in the interpretation of Congressional enactments and would impede the harmony and uniformity sought by the [Ship Mortgage] Act."  457 F.2d at 818.  Similarly, in *Rogers,* this Court declined to apply Louisiana's Professional Rescuer's Doctrine because "the application of the non-uniform doctrines espoused by the several States would necessarily produce a non-uniform national result, creating discord in the general maritime law."  *Rogers,* 723 F.Supp. 2d at 935.

The present case implicates the same concern.  Nonetheless, Plaintiffs propose to apply the laws of no fewer than five states to this admiralty case.  *See* Am. Master Compl. at ¶¶ 545,

587, 658, 677, 709.  Such application would unavoidably and unquestionably produce a non-uniform result nationally, and create discord and confusion in general maritime law.

Plaintiffs have offered no justification for their invitation to supplement general maritime law and OPA with state law.  Even the authorities cited by Plaintiffs, ostensibly in support of their argument, actually weigh against the application of state law in this case.  There is no gap in federal law for state law to fill.  As such, Plaintiffs' state law claims must be dismissed.

**B.      OPA is Plaintiffs' Exclusive Remedy for the Damages Alleged.**

Because Plaintiffs' claims are governed by maritime law, they are displaced by OPA, which provides their exclusive remedy.  Plaintiffs argue that OPA does not preempt or displace their maritime claims and cite to OPA's "Savings Provision," 33 U.S.C. § 2751, in support.[9] Opposition at 35; Louisiana Memorandum at 15-21.  However, Plaintiffs ignore the express language in the first phrase of this statutory provision.

Section 2751 provides:

> **Except as otherwise provided in this Act**, this Act does not affect – (1) admiralty and maritime law; or (2) the jurisdiction of the district courts of the United States with respect to civil actions under admiralty and maritime jurisdiction, saving to suitors all other remedies to which they are otherwise entitled.

33 U.S.C. § 2751(e) (emphasis added).  Plaintiffs read the "Savings Provision" as if the first phrase does not exist.

In overlooking this clause, Plaintiffs fall into the trap this Court identified in *Gabarick v. Laurin Maritime (America), Inc.*, 623 F. Supp. 2d 741 (E.D. La. 2009).  In *Gabarick*, this Court held that "all claims that are recoverable under OPA, specifically those covered damages

---

[9] Plaintiff, the State of Louisiana, unequivocally acknowledges that OPA "is the single controlling federal statute exclusively applicable to liability for oil discharges" and that "OPA was intended by Congress to be the exclusive federal statute governing oil spills."  Louisiana Memorandum at 13, 15.  Yet the State of Louisiana, like Plaintiffs, argues that OPA's savings clauses preserve states' rights to adopt state laws imposing additional liability for oil discharges.  *See id.* at 15-17.

enumerated in 33 U.S.C. § 2702, are preempted by OPA." *Id.* at 750-51.  The *Gabarick* court specifically noted that "[c]laimants[] ignore[] the first part of *section (e)* . . . [and] cloud the issue at bar by arguing that OPA does not preempt general maritime law claims rather than focusing on preemption solely of the damages specifically covered by OPA." *Id.* at 746.

Similarly, Plaintiffs attempt to cloud the issues here.  As this Court explained in *Gabarick*, consistent with the text of the savings clause, OPA does not preempt all general maritime claims.  Rather, it preempts those maritime claims seeking damages of the type recoverable under OPA.  *Id.* at 746-47.[10]  Thus, the savings provision, properly interpreted, provides that OPA does not affect admiralty and maritime law, except with respect to claims for damages of the types recoverable under OPA.  *Id.* at 746.

Other decisions from this Court likewise interpret OPA's preemptive effect on maritime law consistently with *Gabarick*.  For instance, in *In re Settoon Towing LLC,* this Court dismissed the general maritime claims brought by the United States because OPA provided relief for the damages asserted in the United States' general maritime claims.  2009 U.S. Dist. LEXIS 113534, at **9-10 (E.D. La. Dec. 4, 2009).  In *Tanguis v. M/V Westchester,* this Court held that OPA claims are removable and noted that "OPA creates a new, comprehensive federal scheme for the recovery of oil spill cleanup costs and the compensation of those injured by such spills" and that "[t]his new scheme includes new remedies, which, in many respects, preempt traditional maritime remedies."  153 F. Supp. 2d 859, 867 (E.D. La. 2001)(citing *National Shipping Co. of Saudi Arabia, v. Moran Mid-Atlantic Corp.,* 924 F. Supp. 1436 (E.D. Va. 1996)).  Similarly, in

---

[10] Thus, for example, as OPA does not cover bodily injury claims or collision damage, or Exoneration/Limitation Petitions, the savings provision operates to preserve such maritime claims, and OPA does not preempt them. *Gabarick*, 623 F. Supp. at 745; s*ee also Tanguis*, 153 F. Supp. 2d at 867 (noting that "certain maritime remedies are preempted by OPA, while others survive").

*Isla Corp. v. Sundown Energy, LP,* this Court noted, albeit in *dicta,* that "OPA is the exclusive federal remedy" for oil spill liability.  2007 U.S. Dist LEXIS 31259 at *4 (E.D. La. 2007).

Plaintiffs do not, and indeed cannot, cite any case law contradicting *Gabarick* and other authorities that demonstrate OPA's displacing effect on maritime law.  Instead, Plaintiffs cite two provisions of OPA's legislative history and suggest that "the *Gabarick* court may have been presented with an incomplete or selective legislative history."  Opposition at 37-40.  The text of *Gabarick* belies this suggestion as it specifically evidences the Court's review of House Report No. 101-653 (1990), reprinted in 1990 U.S.C.A.N. 779.  *Gabarick*, 623 F. Supp. at 747.  While the *Gabarick* court, upon reviewing the House Report, determined that those provisions "speak to jurisdiction," it is clear that the Court reviewed the very legislative history cited by Plaintiffs and nevertheless recognized OPA's displacing effect on maritime law.  *Gabarick*, 623 F. Supp. at 747.

The  second provision cited by Plaintiffs, "135 Cong. Rec. S9689-S9716, at S9683" (*sic*), Opposition at 39, is from a 1989 draft of the bill debated in the Senate falling under the heading of "State Laws and Programs" and was not included in the final version of OPA.  *See* 135 Cong. Rec. S9678-01 at S9683.  Thus, the legislative history cited by Plaintiffs does not suggest, let alone demonstrate, that *Gabarick* was decided wrongly.  Accordingly, under *Gabarick* and the other cited authorities, OPA supplies Plaintiffs' sole remedy for the damages they allege.

## C.    Plaintiffs Cannot, as a Matter of Law, Recover Punitive Damages From HESI.

Plaintiffs' contend[11] that OPA does not preempt general maritime law because Congress did not intend OPA to preempt the entire field of oil spill liability and, thus, does not proscribe Plaintiffs' recovery of punitive damages.  Opposition at 41.  However, preemption is not at issue

---

[11] HESI recognizes that this characterization of "Defendants' argument" is likely a consequence of the fact that Plaintiffs are addressing numerous arguments in their Opposition.  It may also be a result of the sometimes ambiguous use of the term "preemption." *See supra* p. 2 n. 3.

with respect to HESI, as HESI has argued that OPA displaces federal maritime claims, rather than state claims for the types of damages Plaintiffs assert.  *See* HESI 12(b) Memo at IV.A.4. Thus, there is no need to inquire whether OPA demonstrates Congressional intent to occupy the field of oil pollution remedies.  *See* Opposition at 41; *see also S. Port Marine v. Gulf Oil Ltd P'ship,* 234 F.3d 58, 65 (1st Cir. 2000) (noting that preemption and its federalism concerns are not implicated when inquiring into OPA's effect on preexisting *federal* law).

> ### 1.      *Plaintiffs may not recover punitive damages under OPA.*

Plaintiffs' argument in favor of recovery of punitive damages under OPA runs afoul of the holding of the only federal appellate court addressing the issue.  *See* Opposition at 44 (acknowledging that *S. Port Marine* "is the only federal appellate court case to address this issue").  Completely contrary to Plaintiffs' argument, the United States First Circuit Court of Appeals in *S. Port Marine* acknowledged that OPA had supplanted all prior, existing federal law governing oil spill pollution under certain circumstances and specifically held that Congress intended not to allow for the recovery of punitive damages under OPA.  234 F.3d at 66.

Nevertheless, like the plaintiffs in *S. Port Marine,* Plaintiffs contend that permitting recovery of punitive damages in this case would "further[] the goal of protecting our natural resources from the kind of devastation that unfolds in the wake of a major (and avoidable) oil spill" and "deter[] companies from making decisions that result in the type of devastation evidenced in this case."  Opposition at 42; *cf S. Port Marine,* 234 F.3d at 66 (noting that the plaintiffs, in arguing for the availability of punitive damages, requested that the court construe OPA liberally in furtherance of OPA's purposes of benefitting the victims of oil pollution and punishing the perpetrators).  The *S. Port Marine* Court responded to this same argument by observing that "it would be naïve to adopt so simpleminded a view of congressional policymaking in light of the competing interests addressed by [OPA]."  *Id.*  The First Circuit

explained that this policymaking is evidenced in OPA's remedial scheme which "imposes strict liability for oil discharges, provides both civil and criminal penalties for violations of the statute, and even removes the traditional limitation of liability in cases of gross negligence or willful misconduct[,]"[12] while "preserv[ing] the liability caps in most cases and declin[ing] to impose punitive damages." *Id.* The Court concluded that "the resolution of these difficult policy questions is better suited to the political mechanisms of the legislature than to our deliberative process." *Id.*[13]

### 2. *Plaintiffs' reliance on* Baker, Townsend, *and* Miles *is misplaced.*

Finding no support in OPA case law for the recovery of punitive damages, Plaintiffs rely on *Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008), in which the Supreme Court held that the Clean Water Act's ("CWA") silence as to punitive damages did not abrogate their availability under general maritime law. However, Plaintiffs' reliance is misplaced, as *Baker* is easily distinguished.

At issue in *Baker* was whether the CWA's penalties for water pollution, outlined in 33 U.S.C.S. § 1321, foreclosed the plaintiffs' recovery of punitive damages. 554 U.S. at 488. In *Baker*, Exxon admitted that the CWA, with its scheme of statutory penalties "does not displace compensatory remedies for consequences of water pollution, even those for economic harms" which the Supreme Court perceived left Exxon with the "untenable" claim that "the CWA

---

[12] *See Clausen v. M/V New Carissa,* 171 F. Supp. 2d 1127, 1134 n. 4 (D. Ore. 2001) (observing that "[i]t is unreasonable to read the statute as authorizing punitive damages when Congress considered the additional 'gross negligence' standard as a means for making the responsible party liable for all actual damages, and allowing a merely negligent responsible party to limit its liability").

[13] In arguing against the notion that OPA occupied the field of oil spill liability, Plaintiffs maintain that allowing punitive damages would not have a frustrating effect on OPA's remedial scheme. Opposition at 41. However, *S. Port Marine's* analysis of OPA's remedial scheme demonstrates that allowing punitive damages would frustrate Congress's efforts to balance the numerous important considerations codified in OPA.

somehow preempts punitive damages, but not compensatory damages." *Id.* at 489. Exxon's admission foreclosed any argument that the CWA preempts punitive damages.

Moreover, based upon Exxon's admission and interpretation of the CWA, the Supreme Court recognized that "nothing in the statute points to that result" and the proposed application of the CWA would "sever remedies from their causes of action"—an interpretation unsupported by the statute or its legislative history. *Id.* Reasoning that the recovery of punitive damages for private harms would unlikely have any frustrating effect on the CWA's remedial scheme, the *Baker* Court concluded that punitive damages would be available to the plaintiffs after finding "no clear indication of congressional intent to occupy the entire field of pollution remedies." *Id.* Such is not the case with the OPA.

In addition, the present case is easily distinguishable from *Baker*, rendering the decision irrelevant and inapplicable to this Court's analysis of the recovery of punitive damages under OPA. First, *Baker* involved issues of state law preemption and the accompanying federalism concerns under the CWA. This case only implicates OPA's displacing effect on federal law. Therefore, this case, like *S. Port Marine,* is not complicated by any "presumption against preemption." *S. Port Marine,* 234 F.3d at 65. Second, *Baker* dealt with the CWA, which did not provide for recovery of the kinds of damages asserted by the plaintiffs in that case. The Court in *Baker* nonetheless found (and the defendant conceded) that the plaintiffs could recover their compensatory damages under other laws. 554 U.S. at 489. Here, OPA's remedial scheme includes a comprehensive list of available remedies intended to fully compensate the victims of oil spills for their losses. *See* 33 U.S.C. § 2702(b). Indeed, OPA's remedial scheme supplies remedies for all of the particular compensatory damages Plaintiffs allege. *See* HESI's 12(b) Memo at IV.A.4. Third, the *Baker* Court emphasized that the preemption of punitive damages

would have severed the punitive damages remedy from the cause of action on which it was based. 554 U.S. at 489. By contrast, in this case, a finding that punitive damages are unavailable would have no such result on Plaintiffs' claims because OPA does not provide for the recovery of punitive damages.

Plaintiffs also rely on *Atl. Sounding Co. v. Townsend,* 129 S. Ct. 2561 (2009), in an attempt to avoid the holding in *S. Port Marine.* In *Townsend,* the Supreme Court found that the Jones Act, in creating a statutory cause of action for negligence, "did not eliminate pre-existing remedies available to seamen for the separate common-law cause of action based on a seaman's right to maintenance and cure." 129 S. Ct. at 2570. The Court held that "nothing in the statutory scheme for maritime recovery restricts the availability of punitive damages for maintenance and cure for those, like respondent, who are not precluded from asserting the general maritime claim." *Id.* Thus, the availability of punitive damages in *Townsend* depended on a finding that the cause of action on which the punitive damages claim was based survived preemption or displacement by the federal statute. Unlike in *Townsend,* the court in *S. Port Marine* was not inquiring whether a general maritime claim survived OPA. Rather, it inquired whether an OPA claim could support an award of punitive damages. Accordingly, *Townsend* does not suggest that *S. Port Marine* was wrongly decided.

*Miles v. Apex Marine Corp.,* 498 U.S. 19 (1990), also cited by Plaintiffs, likewise fails to support Plaintiffs' contention that *S. Port Marine* was wrongly decided. The *S. Port Marine* court relied on *Miles* in concluding that it should defer to Congress and decline to supplement the damages provisions of OPA. 234 F.3d at 65-66 (reasoning that "in an area covered by statute, it would be no more appropriate to prescribe a different measure of damage than to prescribe a

different statute of limitations, or a different class of beneficiaries") (quoting *Miles,* 498 U.S. at 31).

In *Miles*, the Supreme Court inquired whether the parent of a deceased seaman could recover under general maritime law for loss of society and whether a claim for that seaman's lost future earnings survives his death.  498 U.S. at 21.  The Supreme Court held that the recovery of loss of society damages was precluded by the Jones Act, which limited recovery to pecuniary loss.  *Id.* at 32-33 ("[i]t would be inconsistent with our place in the constitutional scheme were we to sanction more expansive remedies in a judicially created cause of action in which liability is without fault than Congress has allowed in cases of death resulting from negligence").  The Court similarly denied the availability of a survival action, again deferring to the limits Congress had placed on recovery in survival actions in the Jones Act.  *Id.* at 36 ("We sail in occupied waters.  Maritime tort law is now dominated by federal statute, and we are not free to expand remedies at will simply because it might work to the benefit of seamen and those dependent upon them.").  Thus, notwithstanding Plaintiffs' attempts at obfuscation, *see* Opposition at 45-46, *Miles* stands for the principle that courts should defer to congressional judgment where Congress has placed limits on certain kinds of recoveries.  The *S. Port Marine* court correctly applied that principle in holding that, for oil spill-related claims, OPA supplants the general maritime law allowing punitive damages.  Other courts agree.

Despite Plaintiffs' protestations to the contrary, *S. Port Marine* remains "good law" and persuasive authority.  Plaintiffs lament that *S. Port Marine* somehow misinterpreted *Miles,* and that *Townsend* and *Baker* demonstrate these errors.  Opposition at 44.  However, neither *Baker* nor *Townsend* cites, let alone questions, *S. Port Marine.*  Moreover, courts continue to follow *S. Port Marine's* holding that punitive damages are not available under OPA even after *Baker* and

*Townsend.  See Posavina Shipping Co. v. Alex C Corp.,* 2010 U.S. Dist. LEXIS 116381 at *39 (D. Mass. Nov. 1, 2010) (concluding that "Congress intended the enactment of the OPA to supplant the existing general admiralty and maritime law, which allowed punitive damages under certain circumstances in the area of oil pollution").  Plaintiffs cannot recovery punitive damages in this case as a matter of law.

    *3.*       **Because OPA provides Plaintiffs' sole remedy, if any, their request for punitive damages must be denied.**

Plaintiffs argue that, to the extent OPA displaces maritime claims with respect to the damages covered by OPA, they are preserved by OPA's maritime savings clause.  Opposition at 48.  This argument ignores the fact that "a claim for punitive damages is not by itself an independent tort."  *Allen v. R & H Oil and Gas Co.,* 63 F.3d 1326, 1333 (5th Cir. 1995).  As HESI has demonstrated, OPA provides Plaintiffs' sole cause of action for the kinds of economic damages that form the basis of Plaintiffs' lawsuit.[14]  As the court in *S. Port Marine* noted, for Plaintiffs to recover punitive damages, their assertion of punitive damages "must relate to some separate cause of action which permits recovery of punitive damages."  234 F.3d at 64.

Courts throughout the United States, including this Court, have recognized that Congress intended the enactment of OPA to supplant the existing general admiralty and maritime law, which allowed punitive damages under certain circumstances in the area of oil pollution.  Punitive damages are not recoverable under OPA.  Because OPA is Plaintiffs' sole remedy, if any, for the compensatory damages they allege, punitive damages are not available to them.

---

[14] HESI does not dispute that if Plaintiffs had a claim that was not displaced by OPA, they might be entitled to punitive damages on the basis of that claim.  *See In re Metlife Capital Corp.,* 132 F.3d 818, 822 (1st Cir. 1997) (noting that claims not covered by OPA, such as claims for damages to persons, would still be subject to the Limitation Act because they would not be displaced by OPA); *Clausen,* 171 F. Supp. 2d at 1134 (noting the presumed availability of punitive damages based on a personal injury claim because OPA does not cover personal injury claims).

**D.**   **Dismissal of Plaintiffs' Claims Is Not Premature because HESI is not and cannot be a "Responsible Party" Under OPA.**

Plaintiffs incorrectly assert that it would be premature to dismiss claims against HESI. While acknowledging that HESI has not been designated a "responsible party" under OPA, Plaintiffs argue that "[u]nder the unequivocal terms of § 2702(d)(1)(A), any third party whose act or omissions caused the discharge of oil 'shall be treated as the responsible party.'"  Opposition at 61.  Plaintiffs, however, selectively quote this subsection, omitting the provision that such third parties will be treated as responsible parties "in any case in which a responsible party establishes that a discharge or threat of a discharge and the resulting removal costs and damages were caused solely by an act or omission of one or more third parties described in [33 U.S.C. § 2703(a)(3)]."  33 U.S.C. 2702(d)(1)(A).  33 U.S.C. § 2703(a), in turn, provides a complete defense to a responsible party if the damages or removal costs "were caused solely by – . . . (3) an act or omission of a third party, other than . . . a third party whose act or omission occurs in connection with any contractual relationship with the responsible party[.]"

Here, there can be no doubt that HESI was performing activities on the Macondo well pursuant to a contract with BP.  *See* Dkt. 2082 [BP's Cross-Complaint and Third-Party Complaint Against Halliburton] ¶¶ 31-38 (establishing that HESI's activities on the Macondo well were performed pursuant to a well services contract with BP).  Accordingly, by operation of 33 U.S.C. §§ 2702(d)(1)(A) and 2703(a)(3), HESI cannot be an OPA responsible party because any alleged act or omission of HESI alleged to have caused Plaintiffs' damages occurred in connection with its contractual relationship with BP, a designated responsible party under OPA.

Plaintiffs contend that  HESI might be named a responsible party under OPA because it might be deemed an "operator" of the *Deepwater Horizon*.  Opposition at 62.  Specifically, Plaintiffs maintain that courts have applied the broad definition of "operator" described in *U.S. v.*

*Bestfoods,* 524 U.S. 51 (1998) (construing the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9601, *et seq.*), to OPA cases.  Opposition at 62 n. 34.  However, the cases Plaintiffs cite demonstrate that this broad definition would, in fact, be inapplicable to OPA in the context of a vessel.  *See U.S. v. Viking Resources, Inc.,* 607 F. Supp. 2d 808, 822 n. 47 (S.D. Tex. 2009) (noting that CERCLA's definition of "operator" "applies in OPA cases involving onshore facilities" but not to vessels); *see also Harris v. Oil Reclaiming Co.,* 94 F. Supp. 2d 1210, 1213 (D. Kan. 2000) (applying CERCLA's definition of "operator" to an OPA *onshore facility*).  Once again, Plaintiffs rely on fail to support their arguments.  OPA provides Plaintiffs' sole remedy, if any, and HESI is not, and indeed cannot be, an OPA responsible party.  This Court should dismiss Plaintiffs' claims against HESI.

**E.     Plaintiffs' Failure to Comply with OPA's Pre-Suit Presentment Requirements Results in a Jurisdictional Defect and Requires Dismissal.**

In their Opposition, "Plaintiffs do not dispute the applicability of the OPA's presentment requirements to claims arising under the OPA against those parties designated as OPA 'responsible parties.'"  Opposition at 56.  Further, they appear to tacitly acknowledge that many Plaintiffs have failed to comply with this mandatory prerequisite.  *See* Opposition at 60 (noting that in this case, "a significant number of plaintiffs *have* complied with the OPA").  Moreover, Plaintiffs cite no authority indicating that the presentment requirement is anything other than a mandatory condition to recovery under OPA.  *See* Opposition at 60 (citing*, e.g., Boca Ciega Hotel, Inc. v. Bouchard Transp. Co., Inc.,* 51 F.3d 235, 237 (11th Cir. 1995) (concluding that OPA's presentment requirement is a "mandatory condition")).[15]

---

[15] Plaintiffs also contend that they have "no obligation to make OPA presentment to pursue general maritime law or state law claims."  Opposition at 59.  HESI does not dispute this statement, but maintains that Plaintiffs' attempted state law claims must be dismissed because they arise under admiralty jurisdiction and are, therefore, properly

Instead, Plaintiffs contend that "there is no dispute that some of the plaintiffs have satisfied (and will continue to satisfy) the OPA's requirements[,]" Opposition at 60, and that "the entire claim" should not be dismissed on the basis that some Plaintiffs have not complied with the presentment requirement. *Id.* Therefore, Plaintiffs do not dispute HESI's argument that this Court lacks subject matter jurisdiction over individual OPA claims to the extent that the Plaintiffs bringing those claims have failed to present them through the OPA-mandated claims process. *See* HESI 12(b) Memo IV.A.5. Absent evidence of compliance with OPA's mandatory process, dismissal is proper.

**F.     Alternatively, the Economic Loss Rule Bars Plaintiffs' Recovery.**

> ***1.     Plaintiffs cite no authorities to justify an alteration in the Fifth Circuit's established application of maritime law's economic loss rule.***

Plaintiffs correctly note that OPA allows for claims asserting economic damages absent allegations of physical harm to a proprietary interest. Opposition at 74. However, in the event this Court finds that Plaintiffs' maritime law claims are not displaced by OPA, such claims would fall under the federal maritime law's economic loss rule to the extent that they seek economic damages absent accompanying physical harm to a proprietary interest. *See Robins Dry Dock & Repair Co. v. Flint,* 275 U.S. 303, 309 (1927).

Plaintiffs cite no authority for the proposition that an amendment to CERCLA, codified at 42 U.S.C. § 9607(h), abrogates the economic loss rule announced in *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 309 (1927) and followed in the Fifth Circuit by *State ex rel Guste v. M/V TESTBANK,* 752 F.2d 1019 (5th Cir. 1985) (*en banc*). Even if such authority exists, it would not apply to HESI because Plaintiffs allege no CERCLA claim(s) against HESI or any defendant. Even if Plaintiffs did bring CERCLA claims, the plain text of § 9607(h) purports to

governed by maritime law. Further, Plaintiffs' maritime law claims are displaced by OPA because they seek the types of damages for which OPA provides the exclusive federal remedy.

apply only to "[t]he owner or operator of a vessel." 42 U.S.C. § 9607(h) ("The owner or operator of a vessel shall be liable in accordance with this section . . . ."). HESI was neither the "owner" nor the "operator" of the *Deepwater Horizon*. *See supra* pp. 18-19.

Next, Plaintiffs propose that this Court follow the special concurrence in *Hercules Carriers, Inc. v. State of Florida,* 720 F.2d 1201, 1203 (11th Cir. 1983) in which Judge Clark argued that "*Robins Dry Dock* should be construed to apply only in cases where the plaintiff is damaged because of injury to a party in privity with the plaintiff." Opposition at 76-77. This Court, however, is bound by Fifth Circuit precedent holding that "physical injury to a proprietary interest is a prerequisite to recovery of economic damages in cases of unintentional maritime tort." *Reserve Mooring, Inc. v. Am. Commercial Barge Line, LLC,* 251 F.3d 1069, 1072 (5th Cir. 2001). Accordingly, in the absence of allegations of physical harm to a proprietary interest, Plaintiffs' maritime law economic damages claims must be dismissed.

### 2. The Fifth Circuit has not recognized an exception to the maritime economic loss rule for commercial fishermen.

Plaintiffs contend that "there is no question that Plaintiffs who are fishermen and fishing boat owners can sue for non-impact economic loss notwithstanding the *Robins Dry Dock* rule." Opposition at 77. However, the Fifth Circuit has never recognized such an exception. *See M/V TESTBANK,* 752 F.2d at 1027. Thus, Plaintiffs' contention that commercial fishermen and boat owners can sue for economic damages absent allegations of physical harm to a proprietary interest is inconsistent with established and binding Fifth Circuit precedent.

Accordingly, maritime law's economic loss rule bars Plaintiffs' maritime claims for economic damages to the extent that they do not allege or cannot demonstrate physical harm to a proprietary interest.

## IV.   <u>CONCLUSION</u>

For the reasons set forth above, subject matter jurisdiction has yet to attach for Plaintiffs' claims and, separately, they have failed to plead viable claims against HESI as a matter of law. Pursuant to Rule 12(b)(1) and Rule 12(b)(6), the Court, therefore, should dismiss Plaintiffs' claims against HESI in their entirety.

Dated:  May 9, 2011

Respectfully Submitted,

**GODWIN RONQUILLO PC**

**By:**   /s/  *Donald E. Godwin, T.A.*
Donald E. Godwin, T.A.
DGodwin@GodwinRonquillo.com
Bruce W. Bowman, Jr.
BBowman@GodwinRonquillo.com
Jenny L. Martinez
JMartinez@GodwinRonquillo.com
Floyd R. Hartley, Jr.
FHartley@GodwinRonquillo.com
Gavin Hill
GHill@GodwinRonquillo.com

1201 Elm Street, Suite 1700
Dallas, Texas 75270-2041
Telephone: 214.939.4400
Facsimile: 214.760.7332

and

R. Alan York
State Bar No. 22167500
AYork@GodwinRonquillo.com
Jerry C. von Sternberg
State Bar No. 20618150
JVonSternberg@GodwinRonquillo.com
Misty Hataway-Coné
State Bar No. 24032277
MCone@GodwinRonquillo.com
1331 Lamar, Suite 1665
Houston, Texas 77010
Telephone:  713.595.8300
Facsimile:  713.425.7594

**ATTORNEYS FOR DEFENDANT
HALLIBURTON ENERGY SERVICES, INC.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing Reply has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12 on this 9th day of May, 2011.

      /s/  Donald E. Godwin
      Donald E. Godwin