**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | : : : : | MDL No. 2179 SECTION: J |
| This Document Relates To: All Cases …………………………………………….. | : : | JUDGE BARBIER MAGISTRATE SHUSHAN |

**SUR-REPLY IN OPPOSITION TO ANADARKO AND MOEX'S MOTION TO COMPEL DISCOVERY RESPONSES**

The Reply brief (1) mischaracterizes the Fifth Circuit rule that contractual arbitration clauses supersede ordinary litigation procedures under the Federal Rules of Civil Procedure; (2) fails to rebut proof that the purpose of the contested discovery is to perform an end-run around their contractual promises: to arbitrate and forgo court remedies; and (3) fails to demonstrate any need to override these contractual promises or the policies of the Federal Arbitration Act.

1.  **Fifth Circuit Decisions Enforce Waivers of Litigation Procedures Between Parties to Arbitration Contracts in Multi-Party Admiralty Cases.**

Anadarko and MOEX contend that BP is seeking some special exception to discovery. (*See* Dkt. 2255 (hereinafter "Reply") at 3, 8–9.)  This is incorrect.  Anadarko and MOEX voluntarily and expressly agreed to arbitrate their disputes with BP, curtail discovery, and not resort to court remedies.  (*See* Dkt. 2169 (BP's Opposition brief) (hereinafter "BP Opp'n") at 7–8.)  BP seeks only to hold Anadarko and MOEX to their promise to arbitrate, which is no more than the Federal Arbitration Act requires.  Allowing discovery on concededly arbitrable issues would nullify the dispute resolution procedures Anadarko and MOEX promised to obey.  (*See* BP Opp'n at 7–11.)

The Reply does not contest the doctrine established in cases from a number of federal circuits holding that FAA policies require the quashing of court discovery between parties to an arbitration clause.  (*See* BP Opp'n at 12–13.)  The Reply contends, however, that this rule is applicable only to bilateral litigation.  (*See* Reply at 11 n. 4.)  But the Fifth Circuit repeatedly has held that the FAA's policies apply with equal force in multiparty admiralty cases.  (*See* BP Opp'n at 16–18.)  Even where other parties to an admiralty action are not parties to an arbitration contract, the litigation between the parties to the arbitration contract must be stayed.  *See, e.g.*, *Texaco Exploration & Prod. Co. v. AmClyde Engineered Prods. Co., Inc.*, 243 F.3d 906, 909 (5th Cir. 2001).

The Reply attempts to confine this rule to the particular alignment of parties in *Texaco v. AmClyde*.  (*See* Reply at 11–12 & n. 5.)  The Fifth Circuit's reasoning, however, was not so narrow:  "*any* litigation arguably arising under [an arbitration clause] should be stayed pending the arbitrator's decision as to whether the dispute is covered."  *See AmClyde*, 243 F.3d at 909 (emphasis added).  "[T]he policy of liberal joinder in maritime cases embodied in FRCP 14(c) does not supersede the statutory right to enforce contractual arbitration guaranteed by the FAA."  *Id.* at 908.  Here, Anadarko and MOEX are seeking to litigate crossclaims against BP (a party to their arbitration agreement), but these crossclaims fall squarely within the relevant contract's arbitration clause.  (*See* BP Opp'n at 4–7.)

The Reply contends that discovery cannot be restricted by a bilateral arbitration agreement where the case includes non-parties to that agreement and where the crisscrossing claims amongst the parties "require an allocation of the proportional degree of fault of all defendants."  (*See* Reply at 4, 7–8.)  The Fifth Circuit in *AmClyde* rejected the notion that judicial apportionment of liability justifies permitting litigation between parties to an arbitration

contract.  Referring to the issue of staying litigation between the parties to the arbitration contract (Texaco and McDermott) the court said:  "Apportionment of liability exists whether or not McDermott is impleaded under Rule 14(c).  Moreover, the essential functions of Rule 14(c) are accomplished because McDermott will have to face Texaco directly as a defendant, albeit in arbitration."  *AmClyde*, 243 F.3d at 910.

Similarly, BP, Anadarko, and MOEX can and will will face each other in a separate arbitration to sort out allocation of liability between themselves.  Anadarko itself said in an SEC filing last week that assessment of any liability against it would be followed by an attempt to re-allocate liability amongst its co-owners BP and MOEX:  "If Anadarko is required to recognize and pay additional liabilities, the Company could pursue remedies under the OA to recover costs from BP or the other party to the OA."  (*See* Boles Decl. Ex. E (Anadarko 10-Q Quarterly Report) (hereinafter "SEC Filing").)

## 2.    The Improper Intent Underlying the Discovery Is Relevant to this Motion.

The Reply belittles what it calls BP's "psychoanalysis" of the discovery's underlying purpose.  (*See* Reply at 12.)  But the Supreme Court has stated that, in resolving discovery disputes, a court may consider the propounding party's motive.  (*See* BP Opp'n at 21.)  The Reply tries to brush aside this precedent on the ground that the discovery therein was concededly directed toward a purpose unrelated to the issues in the main case, and tries to suggest that "only then was the 'purpose' of the discovery considered."  (*See* Reply at 13.)  But this mischaracterizes the *Oppenheimer Fund* case's reliance on intent because, if the discovery was unrelated to the pending litigation, there would be no need to consider the intent of the propounding party.  *See* Fed. R. Civ. P. 26(b)(1).  The Reply does not rebut BP's  proof—the discovery requests themselves—that the motive for Anadarko and MOEX's discovery is to

further a claim that will be arbitrated, namely whether BP's alleged gross negligence excuses the contractual duty to reimburse BP for spill-related costs.  (*See* BP Opp'n at 4–6, 14–16, 20–23.)

In an odd twist for a motion to compel discovery, the movants fail to discuss the specific subject matters of all but a few, cherry-picked requests.  As BP demonstrated, the vast majority of the (now) 146 requests for production of documents, 124 requests for admissions, and 93 interrogatories, deal with BP's role in the Macondo Well's design and drilling.  (*See* BP Opp'n at 4–6.)  Discovery aimed at attacking BP's conduct serves no "defensive" purpose in this case:  As co-owners of the well, Anadarko and MOEX are contractually liable for their ownership share of any resulting liability.  Anadarko itself said in its SEC filing last week, "liability for . . . claims involving . . . [Macondo] operations shall be borne by each [JOA] party in proportion to its participating interest, except that when liability results from the gross negligence or willful misconduct of a party . . . ."  (*See* SEC Filing at 55.)  Thus, by using discovery to gather evidence of BP's conduct to try to support allegations of "gross negligence," Anadarko is seeking to protect itself under its contract with BP, not to defend claims by Plaintiffs.

3. **There Is No Need for the Discovery, and Other Sources Are Available that Do Not Violate FAA Policies.**

The Reply contends that Anadarko and MOEX are "[w]all[ed] off . . . from BP's unique repository of information[.]"  (*See* Reply at 4.)  Such a contention that they are somehow "walled off" from information is misguided.  Anadarko and MOEX have full access to the massive discovery that BP has produced to Plaintiffs and other parties.  Given how Anadarko and MOEX's claims against BP mirror Plaintiffs' claims against BP (*see* BP Opp'n at 4–7), and how vigorously Plaintiffs have pursued discovery against BP, Anadarko and MOEX have received all the information they could need for any legitimate (non-arbitrable) purpose.  The Reply contains no concrete description of any area in which their knowledge falls short.

4

## Conclusion

Anadarko and MOEX promised to BP to arbitrate disputes, curtail discovery, and forgo court remedies.  The FAA requires courts to uphold arbitration agreements.  Instead Anadarko and MOEX are trying to enlist the Court in enforcing their breach.  Their improper motive is clear; the supply of legitimate evidence from other sources is ample; and this motion should be denied.

DATE:  May 9, 2011                    By:    /s/ Martin R. Boles

> Richard C. Godfrey, P.C.
> (richard.godfrey@kirkland.com)
> J. Andrew Langan, P.C.
> (andrew.langan@kirkland.com)
> Kirkland & Ellis LLP
> 300 North LaSalle Street
> Chicago, IL 60654
> 312-862-2000 (Tel)
> 312-862-2200 (Fax)
>
> and
>
> Martin R. Boles
> (martin.boles@kirkland.com)
> Kirkland & Ellis LLP
> 333 South Hope Street, Suite 2900
> Los Angeles, CA 90071
> 213-680-8400 (Tel)
> 213-680-8500 (Fax)
>
> and
>
> Robert C. "Mike" Brock
> Covington & Burling LLP
> 1201 Pennsylvania Avenue, NW
> Washington, DC 20004-2401
> 202-662-5985
>
> *Attorneys for BP America Inc., BP America Production Company, BP Exploration & Production Inc., and BP p.l.c.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice in accordance with the procedures established in MDL 2179, on this 9th day of May, 2011.



/s/ Martin R. Boles