# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

IN RE:  OIL SPILL by the OIL RIG          :   MDL No. 2179
        "DEEPWATER HORIZON"          :
        in the GULF OF MEXICO,          :
        on APRIL 20, 2010,          :
                     :   SECTION: J
                     :

This Pleading Applies To:          :
***MDL 2179 B1 Amended Master Complaint***          :
***And All Cases In Pleading Bundle B1***          :
                     :   JUDGE BARBIER
                     :   MAGISTRATE SHUSHAN

This Pleading Applies To:          :
**No. 10-2771 (Limitation Action)**          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## BP DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF BP DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1) AND FED. R. CIV. P. 12(B)(6) THE FIRST AMENDED MASTER COMPLAINT, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT FOR PRIVATE ECONOMIC LOSSES IN ACCORDANCE WITH PTO NO. 11 [CMO NO. 1] SECTION III.B1 ["B1 BUNDLE"] AND IN RESPONSE TO STATE OF LOUISIANA'S MEMORANDUM OF LAW IN INTEREST IN AND OPPOSITION TO DEFENDANTS' PENDING MOTIONS TO DISMISS

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 2

I.  PLAINTIFFS' MARITIME CLAIMS AGAINST BP MUST BE DISMISSED. ............. 4

    A.  OPA Displaces Plaintiffs' Maritime Claims Against BP. ...................................... 4

    B.  Plaintiffs' Maritime Claims Are Also Barred By *Robins Dry Dock*. ..................... 9

II.  PLAINTIFFS' OPA COUNT MUST BE DISMISSED. .................................................. 10

    A.  OPA Claims Filed Before OPA Presentment Is Met Must Be Dismissed. ........... 10

    B.  Louisiana Is Not Exempt From OPA's Pre-Suit Presentment Requirement. ........ 16

    C.  OPA Does Not Apply To "VoO Plaintiffs" Or To "Moratorium Plaintiffs." ....... 19

III.  PLAINTIFFS' STATE LAW CLAIMS AGAINST BP MUST BE DISMISSED. .......... 25

    A.  All of Plaintiffs' State-Law Claims Are Preempted by the Clean Water
        Act. ..................................................................................................................... 26

    B.  OCSLA Preempts Plaintiffs' State Law Claims. ................................................. 31

        1.  OCSLA Preempts The Laws Of Non-Adjacent States as to B1
            Claims. ................................................................................................... 31

        2.  OCSLA Preempts Plaintiffs' Louisiana Law Claims Against BP ............ 34

    C.  OPA's Preemption Savings Clauses Are Irrelevant to the Operation of
        CWA and OCSLA Preemption ........................................................................... 38

    D.  Even If OPA's Savings Clauses Could Save CWA-Preempted or OCSLA-
        Preempted Claims, Which They Cannot, They are Textually Inapplicable. ......... 42

    E.  If Louisiana Law Is Borrowed, Plaintiffs Have No Valid Louisiana
        Claims. ................................................................................................................ 45

        1.  LOSPRA Would Be Plaintiffs' Exclusive Remedy. ............................... 45

        2.  Plaintiffs' Nuisance And Trespass Claims Fail Under Louisiana
            Law. ....................................................................................................... 45

**Page**

       3.    Plaintiffs' Fail To State A Claim For Fraudulent Concealment. ............... 46

  F.   Even If Florida Law Was Not Preempted, The Florida PDPCA Would Not Apply. ................................................................................ 48

IV.  PLAINTIFFS' PUNITIVE DAMAGES COUNT  MUST BE DISMISSED. ................. 49

V.  PLAINTIFFS' DECLARATORY RELIEF COUNTS MUST BE DISMISSED. ............ 49

CONCLUSION ................................................................................................ 50

## **TABLE OF AUTHORITIES**

**Page(s)**

### **Cases**

*Aasma v. Am. S.S. Owners Mutual Protection and Indemnity Association*,
  95 F.3d 400 (6th Cir. 1996) .................................................................................33

*Abundiz v. Explorer Pipeline Co.*,
  No. Civ. A. 300CV2092H, 2003 WL 23096018 (N.D. Tex. Nov. 25, 2003) ..................14

*Adkins v. Trans-Alaska Pipeline Liability Fund*,
  101 F.3d 86 (9th Cir. 1996) .................................................................................24

*Alamendez-Torres v. United States*,
  523 U.S. 224 (1998) ..........................................................................................18

*American Telephone & Telegraph Co. v. Central Office Telephone, Inc.*,
  524 U. S. 214 (1998) .........................................................................................39

*Amoco Prod. Co. v. Sea Robin Pipeline Co.*,
  844 F.2d 1202 (5th Cir. 1988) .............................................................................33

*Arbaugh v. Y & H Corp.*,
  546 U.S. 500 (2006) ..........................................................................................13

*Arkansas v. Oklahoma*,
  503 U.S. 91 (1992) ......................................................................................29, 30

*Ashcroft v. Iqbal*,
  129 S.Ct. 1937 (2009) ........................................................................................46

*Associated General Contractors of California, Inc. v. Cal. State Council of Carpenters*,
  459 U.S. 519 (1983) ..........................................................................................24

*AT&T Mobility LLC v. Concepcion*,
  No. 09-893, 2011 WL 1561956 (U.S. Apr. 27, 2011) ...............................................39

*Atlantic Sounding Co. v. Townsend*,
  129 S. Ct. 2561 (2009) ...............................................................................6, 7, 8

*Badaracco v. Commissioner*,
  464 U.S. 386 (1984) ..........................................................................................18

*Ballard Shipping Co. v. Beach Shellfish*,
  32 F.3d 623 (1st Cir. 1994) ................................................................................24

**Page(s)**

*Becnel v. Grodner*,
    2007-1041 (La. Ct. App. 4 Cir. 4/2/08), 982 So. 2d 891, 894.........................48

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................46

*Benefiel v. Exxon Corp.*,
    959 F.2d 805 (9th Cir. 1992) ........................................................................24

*Bilski v. Kappos*,
    130 S. Ct. 3218 (2010) ...........................................................................19, 41

*Boca Ciega Hotel, Inc. v. Bouchard Transportation Co.*,
    51 F.3d 235 (11th Cir. 1995)...................................................11, 14, 15, 18

*Brown-Forman Distillers Corp. v. New York State Liquor Authority*,
    476 U.S. 573 (1986) ........................................................................................49

*Carroll v. Fort James Corp.*,
    470 F.3d 1171 (5th Cir. 2006) ......................................................................47

*Catalyst Old River Hydroelectric Ltd. Partnership v. Ingram Barge Co.*,
    No. 10-30466, 2011 WL 1449616 at *2 (5th Cir. Apr. 15, 2011).....................9

*Central States Southeast and Southwest Areas Pension Fund v. T.I.M.E.-DC, Inc.*,
    826 F.2d 320 (5th Cir. 1987) ........................................................................12

*Chiarella v. United States*,
    445 U.S. 222 (1980) ........................................................................................48

*City of Milwaukee v. Illinois*,
    451 U.S. 304 (1981) ................................................................................26, 27

*Complaint of Nautilus Motor Tanker Co.*,
    900 F. Supp. 697 (D.N.J. 1995)......................................................................42

*Crosby v. National Foreign Trade Council*,
    530 U. S. 363 (2000) ......................................................................................39

*Curd v. Mosaic Fertilizer, LLC*,
    39 So. 3d 1216 (Fla. 2010) ............................................................................49

*Dawson Farms LLC v. Farm Service Agency*,
    504 F.3d 592 (5th Cir. 2007) ........................................................................12

**Page(s)**

*Demette v. Falcon Drilling Co.*,
   280 F.3d 492 (5th Cir. 2002),
   *overruled in irrelevant part by*
   *Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*,
   589 F.3d 778 (5th Cir. 2009) ...................................................................................35, 36

*Dostie Development, Inc. v. Arctic Peace Shipping Co.*,
   No. 95-808-CIV-J-MMP, 1996 WL 866119 (M.D. Fla. Aug. 14, 1996)........................42

*Duncan v. Walker*,
   533 U.S. 167 (2001) ......................................................................................................18

*Ebanks v. Offshore Lifeboats, LLC*,
   2009 WL 3834365 (E.D. La 2009)................................................................................35

*Eberhart v. United States*,
   546 U.S. 12 (2005) ........................................................................................................13

*Edison Elec. Inst. v. EPA*,
   2 F.3d 438 (D.C. Cir. 1993)...........................................................................................25

*Energy XXI, GOM, LLC v. New Tech Eng'g, LP*,
   Civ. A. No. H-10-00110, 2011 WL 11197 (S.D. Tex. Jan. 3, 2011) ..............................36

*EP Operating Ltd. Partnership v. Placid Oil Co.*,
   26 F.3d 563 (5th Cir. 1994)...........................................................................................32

*Exxon Shipping Co. v. Baker*,
   554 U.S. 471 (2008) .....................................................................................................6, 7

*Flaherty & Crumrine Preferred Income Fund v. TXU Corp.*,
   565 F.3d 200 (5th Cir. 2009) .........................................................................................47

*Freeman v. Quicken Loans, Inc.*,
   626 F.3d 799 (5th Cir. 2010) .........................................................................................43

*Gabarick v. Laurin Marine (America.), Inc.*,
   623 F. Supp. 2d 741 (E.D. La. 2009) .................................................................5, 11, 15

*Gatlin Oil Co. v. United States*,
   169 F.3d 207 (4th Cir. 1999)....................................................................................22, 23

*Geier v. American Honda Motor Co.*,
   529 U. S. 861 (2000) .....................................................................................................39

*Graham v. Freeport Sulphur Co.*,
   962 F. Supp. 82 (E.D. La. 1997).....................................................................................35

**Page(s)**

*Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*,
  589 F.3d 778 (5th Cir. 2009) (*en banc*)...........................................................................34

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*,
  313 F.3d 305 (5th Cir. 2002) ............................................................................................47

*Green v. Bock Laundry Machine Co.*,
  490 U.S. 504 (1989) ..........................................................................................................18

*Guidry v. Mobil Oil Exploration and Producing Se.*,
  No. Civ. A. 98-0534, 2000 WL 278091 (E.D. La. Mar. 13, 2000) ...................................35

*Gulf Offshore Co. v. Mobil Oil Corp.*,
  453 U.S. 473 (1981) ..........................................................................................................32

*Hallstrom v. Tillamook County*,
  493 U.S. 20 (1990) .....................................................................................................passim

*Haynes v. Blue Ridge Paper Products*,
  Civ. No. 1:09cv321, 2010 WL 3075738 (W.D.N.C. Aug. 5, 2010)..................................29

*Hemi Group, LLC v. City of New York*,
  130 S. Ct. 983 (2010) ........................................................................................................24

*Hohn v. United States*,
  524 U.S. 236 (1998) ..........................................................................................................29

*Holmes v. Sec. Investor Protection Corp.*,
  503 U.S. 258 (1992) .....................................................................................................23, 24

*Hornbeck Offshore Services v. Salazar*,
  Civ. A. No. 10-1663 (E.D. La. June 22, 2010)..................................................................19

*Illinois v. City of Milwaukee*,
  406 U.S. 91 (1972) ................................................................................................26, 27, 30

*Illinois v. City of Milwaukee*,
  731 F.2d 403 (7th Cir. 1984) ............................................................................................26

*In re Operation of Missouri River System Litigation*,
  418 F.3d 915 (8th Cir. 2005) ............................................................................................29

*In re Settoon Towing LLC*,
  2009 WL 4730969 (E.D. La. Dec. 4, 2009) ........................................................................6

*In re Taira Lynn Marine Ltd. No. 5, LLC*,
  444 F.3d 371 (5th Cir. 2006)........................................................................9, 10, 21, 22

**Page(s)**

*Isla Corp. v. Sundown Energy, LP*,
  Civ. A. No. 06-8645, 2007 WL 1240212 (E.D. La. Apr. 27, 2007)...........................15, 42

*J.E.M. AG Supply v. Pioneer Hi-Bred International*,
  534 U.S. 124 (2001) ........................................................................................40

*Johnson v. Colonial Pipeline Co.*,
  830 F. Supp. 309 (E.D. Va. 1993) ..................................................................14

*Johnson v. Seacor Marine Corp.*,
  404 F.3d 871 (5th Cir. 2005) ..........................................................................47

*Kadlec Med. Ctr. v. Lakeview Anesthesia Associates.*,
  527 F.3d 412 (5th Cir. 2008) ..........................................................................48

*Lane v. Champion International Corp.*,
  827 F. Supp. 701 (S.D. Ala. 1993) ................................................................29

*Leboeuf v. Texaco*,
  9 F. Supp. 2d 661 (E.D. La. 1998) .................................................................15

*Lockett v. EPA*,
  319 F.3d 678 (5th Cir. 2003) ..........................................................................14

*Louisiana ex rel. Guste v. M/V TESTBANK*,
  752 F.2d 1019 (5th Cir. 1985)........................................................................10

*Maine Central Railroad Co. v. Brotherhood of Maintenance of Way Employees*,
  813 F.2d 484 (1st Cir. 1987)............................................................................1

*Marastro Compania Naviera, S.A. v. Canadian Maritime Carriers, Ltd.*,
  959 F.2d 49 (5th Cir. 1992)............................................................................33

*Marathon Pipe Line Co. v. LaRoche Indutries Inc.*,
  944 F. Supp. 476 (E.D. La. 1996) ..................................................................15

*Matrix Initiatives, Inc. v. Siracusano*,
  2011 U.S. LEXIS 2416 (U.S. Mar. 22, 2011) .................................................46

*Medtronic, Inc. v. Lohr*,
  518 U.S. 470 (1996) ........................................................................................44

*Miles v. Apex Marine Corp.*,
  498 U.S. 19 (1990) ............................................................................................7

*Mills v. Damson Oil Corp.*,
  931 F.2d 346 (5th Cir. 1991)..........................................................................47

**Page(s)**

*Moragne v. States Marine Lines*,
    398 U.S. 375 (1970) ................................................................................28

*Morales v. TWA, Inc.*,
    504 U.S. 374 ........................................................................................18

*National Association of Home Builders v. Defenders of Wildlife*,
    551 U.S. 644 (2007) ................................................................................41

*National Shipping Co. of Saudi Arabia (NSCSA) v. Moran Mid-Atlantic Corp.*,
    924 F. Supp. 1436 (E.D. Va. 1996) ...........................................................42

*National Shipping Co. of Saudi Arabia v. Moran Mid-Atlantic Corp.*,
    924 F. Supp. 1436 (E.D. Va. 1996), *aff'd*, 122 F.3d 1062 (4th Cir. 1997),
    *cert. denied*, 523 U.S. 1021 (1988) ...........................................................6

*New Mexico Citizens for Clean Air and Water v. Espanola Mercantile Co.*,
    72 F.3d 830 (10th Cir. 1996) ....................................................................14

*Offshore Logistics, Inc. v. Tallentire*,
    477 U.S. 207 (1986) ................................................................................32

*Ouellette v. International Paper Co.*,
    602 F. Supp. 264 (D. Vt. 1985), *aff'd*, 776 F.2d 55 (2d Cir. 1984)
    (*per curiam*), *rev'd*, 479 U.S. 481 (1987)......................................26, 30, 39

*Pan Am. World Airways, Inc. v. Aetna Casualty & Surety Co.*,
    505 F.2d 989 (2d Cir. 1974) ....................................................................24

*Philip Morris USA v. Williams*,
    549 U.S. 346 (2007) ................................................................................50

*Poe v. PPG Industries*,
    2000-1141 (La. Ct. App. 3d Cir. Mar., 28, 2001); 782 So. 2d 1168 ...............31

*Reserve Mooring Inc. v. American Commercial Barge Line*,
    251 F.3d 1069 (5th Cir. 2001) ..................................................................10

*Rodrigue v. Aetna Casualty & Surety Co.*,
    395 U.S. 352 (1969) ................................................................................32

*Russo v. M/T Dubai Star*,
    No. C 09-05158 SI, 2010 WL 1753187 (N.D. Cal. Apr. 29, 2010) .................42

*Sanamo v. Trico Marine Services*,
    No. 02-31072, 2003 WL 21756647 (5th Cir. June 24, 2003)..........................36

**Page(s)**

*Seaboats, Inc. v. Alex C Corp.*,
    Nos. Civ. A. 01-12184-DPW, 01-12186-DPW, 00-12500-DPW,
    2003 WL 203078 (D. Mass. Jan. 30, 2003).......................................................42

*Sea-Land Service, Inc. v. United States*,
    874 F.2d 169 (3d Cir. 1989) ........................................................................43

*Sekco Energy, Inc. v. M/V Chouest*,
    Civ. A. No. 92-0420, 1993 WL 322942 (E.D. La. Aug. 13, 1993)....................23

*South Port Marine, LLC v. Gulf Oil Ltd. Partnership*,
    234 F.3d 58 (1st Cir. 2000)....................................................................4, 5, 8

*Sprietsma v. Mercury Marine*,
    537 U.S. 51 (2002) ....................................................................................44

*State Line Fishing & Hunting Club v. City of Waskom*,
    754 F. Supp. 1104 (E.D. Tex. 1991) ............................................................29

*Sullivan v. Leaf River Forest Products.*,
    791 F. Supp. 627 (S.D. Miss. 1991) ............................................................29

*Tanguis v. M/V Westchester*,
    153 F. Supp. 2d 859 (E.D. La. 2001) ........................................................4, 6

*Taylor v. United States Treasury Department*,
    127 F.3d 470 (5th Cir. 1997) ......................................................................12

*Tennessee Gas Pipeline v. Houston Casualty Insurance Co.*,
    87 F.3d 150 (5th Cir. 1996) ........................................................................32

*Tennessee Student Assistance Corp. v. Hood*,
    541 U.S. 440 (2004) ..................................................................................29

*Texas & Pacific R. Co. v. Abilene Cotton Oil Co.*,
    204 U. S. 426 (1907) ..................................................................................39

*Turner v. Murphy Oil USA*,
    No. 05-4206 (E.D. La. Dec. 29, 2005) ............................................11, 12, 15

*Union Texas Petroleum Corp. v. PLT Engineering, Inc.*,
    895 F.2d 1043 (5th Cir. 1990) ................................................................32, 34

*United States ex rel. Willard v. Humana Health Plan of Tex.*,
    336 F.3d 375 (5th Cir. 2003) ......................................................................47

**Page(s)**

*United States v. Locke,*
    529 U.S. 89 (2000) ...................................................................................39, 40

*United States v. M/V Cosco Busan,*
    557 F. Supp. 2d 1058 (N.D. Cal. 2008)..............................................................17

*United States v. Murphy Exploration and Production Co.,*
    939 F. Supp. 489 (E.D. La. 1996) ...................................................................15

*United States v. Robinson,*
    361 U.S. 220 (1960) ...................................................................................13

*Weinberger v. Salfi,*
    422 U.S. 749 (1975) ...................................................................................12

*Williams v. Potomac Electric Power Co.,*
    115 F. Supp. 2d 561 (D. Md. 2000)..................................................................42

*Williams v. WMX Techs.,*
    112 F.3d 175 (5th Cir. 1997) ........................................................................46

*Woodford v. Ngo,*
    548 U.S. 81 (2006) ...................................................................................12

**Statutes**

33 U.S.C. § 1333(a)(1) ....................................................................................2

33 U.S.C. § 1333(a)(2)(A)................................................................................41

33 U.S.C. § 1365 ..........................................................................................30

33 U.S.C. § 2701(14)......................................................................................20

33 U.S.C. § 2701(18)......................................................................................36

33 U.S.C. § 2701(22)......................................................................................36

33 U.S.C. § 2701(37)......................................................................................36

33 U.S.C. § 2701(9)........................................................................................36

33 U.S.C. § 2702 ............................................................................................4

33 U.S.C. § 2702(a)..................................................................................passim

33 U.S.C. § 2702(b)........................................................................................22

**Page(s)**

33 U.S.C. § 2702(b)(2) ..................................................................................................21, 23, 24

33 U.S.C. § 2702(b)(2)(B) ....................................................................................................20

33 U.S.C. § 2702(b)(2)(E) ...............................................................................................20, 25

33 U.S.C. § 2709 ...................................................................................................................37

33 U.S.C. § 2710(c) ..............................................................................................................37

33 U.S.C. § 2713 .............................................................................................................15, 18

33 U.S.C. § 2713(a) ........................................................................................................12, 16

33 U.S.C. § 2713(b)(1) .........................................................................................................16

33 U.S.C. § 2713(c) ..........................................................................................................7, 21

33 U.S.C. § 2715 ...................................................................................................................37

33 U.S.C. § 2717(f)(2) ....................................................................................................17, 18

33 U.S.C. § 2718 .............................................................................................................40, 42

33 U.S.C. § 2718(a) ....................................................................................................18, 38, 43

33 U.S.C. § 2718(a)(1) .........................................................................................................43

33 U.S.C. § 2718(a)(2) .........................................................................................................44

33 U.S.C. § 2718(a)(2) ....................................................................................................42, 43

33 U.S.C. § 2718(b) ...................................................................................................38, 43, 44

33 U.S.C. § 2718(c) .......................................................................................................passim

33 U.S.C. § 2718(c)(1) .........................................................................................................44

33 U.S.C. § 2718(c)(1) ....................................................................................................43, 44

33 U.S.C. § 2718(c)(2) .........................................................................................................44

33 U.S.C. § 2751(e) ............................................................................................................4, 5

42 U.S.C. § 6901 ...................................................................................................................43

42 U.S.C. § 6972 ...................................................................................................................13

**Page(s)**

43 U.S.C. § 1333(a)(1) .................................................................................................32

43 U.S.C. § 1333(a)(2)(A) ...........................................................................................34

43 U.S.C. § 1653(c)(1) .................................................................................................24

Fla. Stat. § 376.031(5) ..................................................................................................48

Fla. Stat. § 376.031(7) ..................................................................................................49

Fla. Stat. § 376.313 .......................................................................................................49

**Other Authorities**

135 Cᴏɴɢ. Rᴇᴄ. H7954-02, at H7966 (Nov. 2, 1989)...............................................25

135 Cong. Rec. H7962 (daily ed. Nov. 2, 1989) .....................................................14

**H.R. Rep. No.** 101-653 (1990) ...........................................................................14, 25

**H.R. Rep. No.** 95-1474, at 80 (1978) .......................................................................36

*Oil Spill Liability and Compensation: Hearing before the Subcomm. on Water Res. of the House Comm. on Public Works and Transp.,*
   101st Cong., 1st Sess. 124 (1989) ......................................................................14

**S. Rep. No.** 83-411, at 6 (1953) ................................................................................33

## INTRODUCTION

This Reply Memorandum by the BP Defendants responds to Plaintiffs' Omnibus Memorandum in Opposition to Defendants' Motions to Dismiss Bundle B1 First Amended Master Complaint [Doc. 1822] (hereinafter "Pls.' Mem.") and their Memorandum in Opposition to Motions to Dismiss Plaintiffs' Fraud Claims [Doc. 1808] (hereinafter "Pls.' F. Mem."), as well as the State of Louisiana's Memorandum Of Interest In and Opposition To Defendants' Pending Motions To Dismiss [Doc. 1993] (hereinafter "La. Mem.").[1]

As established in the BP Defendants' Memorandum in Support of their Motion to Dismiss the B1 Bundle First Amended Master Complaint [Doc. 1440-1] (hereinafter "BP MTD Mem."), the Oil Pollution Act of 1990 ("OPA") provides a remedy for B1 Plaintiffs asserting claims against BP (as well as other OPA "responsible parties"), and the Louisiana Oil Spill Prevention and Response Act ("LOSPRA") provides a remedy for B1 Plaintiffs against those defendants who are not "responsible parties" under OPA.  As BP's Memorandum showed, this analysis makes sense of and harmonizes (1) the many statutory provisions, (2) Fifth Circuit and Supreme Court cases interpreting those provisions, and (3) state-law and maritime doctrines at stake in this case.  This analysis makes practical sense as well:  B1 Plaintiffs have a single potential legal remedy against each defendant here, but defendants are not at the same time subject to overlapping and conflicting requirements stemming from different sources of law.

B1 Plaintiffs and the State of Louisiana fail to address BP's straightforward analysis.  To the contrary — by claiming that the B1 Plaintiffs may bring suit simultaneously under federal

---

[1] The only issue at stake in BP's motion to dismiss is B1 Plaintiffs' ability to proceed on their B1 Master Complaint. Louisiana's Memorandum should not be construed as bringing up for immediate decision issues BP may raise in BP's forthcoming Motion to Dismiss the State's complaint or be deemed to make Louisiana's separate claims part of the upcoming oral argument on the B1 motions to dismiss.  Instead, Louisiana's Memorandum must be construed as in the nature of an *amicus* brief providing reasons Louisiana advances in support of Plaintiffs' B1 positions.  *See, e.g.*, *Me. Cent. R.R. Co. v. Brotherhood of Maint. of Way Employees*, 813 F.2d 484, 486 (1st Cir. 1987) ("The United States, as amicus curiae, filed a statement of interest and memorandum in support of the Act.").

statutes, federal common law, and the state law of innumerable States — B1 Plaintiffs and Louisiana have failed to grapple with the governing law issues raised by BP's motion.  B1 Plaintiffs and Louisiana fail to provide this Court a roadmap for how to conduct the B1 Pleading Bundle in a lawful, efficient and fair manner.  For the reasons given in BP's Motion to Dismiss and those below, this Court should dismiss the B1 First Amended Master Complaint and the individual complaints of B1 Plaintiffs who did not satisfy OPA's presentment requirement.

## ARGUMENT

The B1 Amended Master Complaint must be dismissed as legally defective on numerous grounds.  It is undisputed that that the Outer Continental Shelf ("OCS" or "Shelf") is a "federal enclave" (*see* La. Mem. 11) over which the federal Government has "exclusive Federal jurisdiction" and control, 33 U.S.C. § 1333(a)(1), and to which Congress has extended federal law exclusively.  And it is well-established that OPA created a comprehensive scheme providing an avenue for Plaintiffs to recover damages against "responsible parties" under OPA for spills that occur to exclusively federal waters.  Given these two well-established propositions, B1 Plaintiffs' and Louisiana's attempts to extend a confusing, convoluted, and conflicting set of laws to entities operating on the Shelf (a federal enclave) must be rejected.

The proper analysis is straightforward:

- B1 Plaintiffs' maritime claims against BP (Counts I.A-B) must be dismissed because OPA is a comprehensive statute that displaces federal common-law claims, including maritime-law claims.  Even absent OPA, Counts I.A-B would have to be dismissed for failing to satisfy the bright-line rule established in *Robins Dry Dock* that plaintiffs in a maritime negligence suit may not recover purely economic claims absent physical injury to a proprietary interest.

- B1 Plaintiffs' state law claims against BP (Count II) are preempted, and, even if not preempted, fail for a host of additional reasons as well.  The Clean Water Act ("CWA") preempts those claims.  Likewise, they are preempted by the Outer Continental Shelf Lands Act ("OCSLA").  OCSLA establishes a governing-law analysis that leads, in this case, inexorably to the application of the law of the "adjacent State" (here Louisiana), but only where there is a "gap" in federal law.  For Plaintiffs' claims against BP, there is no such "gap" in federal law because OCSLA analysis leads to application of OPA.  For Plaintiffs'

2

state-law claims against non-"responsible parties" under OPA, LOSPRA fills the "gap" in federal law.  Even if not preempted, Plaintiffs' state-law claims would fail under Louisiana law on a variety of grounds — Plaintiffs did not assert a claim under LOSPRA, their exclusive avenue for recovery of damages for oil spills under Louisiana law, and they failed to allege valid nuisance and trespass claims.  Also, Plaintiffs failed to satisfy the requirements for a fraudulent concealment claim.  Lastly, even if Plaintiffs could somehow rely on the law of Florida (a non-adjacent State here) and that law was not preempted, the Florida Pollutant Discharge and Control Act ("PDPCA") is inapplicable.

- The B1 Master Complaint OPA count (Count III) must be dismissed along with individual complaints of B1 Plaintiffs not satisfying OPA presentment.  *First*, although certain B1 Plaintiffs may have a remedy against BP under OPA, most (if not all) B1 Plaintiffs did not satisfy OPA's mandatory pre-suit presentment requirement before filing suit.  Plaintiffs' attempt to plead around the individualized presentment requirement by stating that "Plaintiffs have satisfied, *or will have satisfied*, all of the administrative requirements of 33 U.S.C. §§ 2713(a) and (b)," B1 Bundle First Amended Master Complaint (hereinafter "B1 Compl.") ¶ 689 (emphasis added), must be rejected.  Their allegation defeats the very purpose of Section 2713, which is to serve as a mandatory condition *precedent* to bringing suit, not a mere paper formality that can be perfunctorily fixed after suits have been filed.  *Second*, Louisiana's unripe claim that it is exempt from OPA's presentment requirement must be rejected.  Louisiana must play by OPA's rules and present its OPA claims to BP; indeed, BP has a fulsome government claims process in place.  *Third*, it is clear from the B1 Complaint that two subgroups, "VoO Plaintiffs" and "Moratorium Plaintiffs," do not satisfy OPA's causation requirements.  Neither B1 Plaintiffs' opposition brief nor Louisiana's memorandum provides a response that can remedy this fatal pleading defect.

- Plaintiffs' punitive damages count (Count IV) and their declaratory judgment counts (Counts V and VI) likewise must be dismissed.  B1 Plaintiffs do not have a punitive damages remedy.  And even if such a remedy were available, their declaratory relief count, if granted, would violate the Due Process Clause of the federal Constitution, which (according to the Supreme Court) prohibits an award of punitive damages on behalf of nonparties who are essentially "strangers to the litigation."

Neither the B1 Plaintiffs' nor Louisiana's briefs have any credible response to BP's principal arguments, or arguments in the alternative.  To the contrary, and as explained below, these briefs not only invite this Court to apply a veritable smorgasbord of law to activities on a federal enclave, but conflict with one another in ways that clearly indicate neither brief has advanced a coherent explanation of the key statutes and principles at stake here.

I.      **PLAINTIFFS' MARITIME CLAIMS AGAINST BP MUST BE DISMISSED.**

A.      **OPA Displaces Plaintiffs' Maritime Claims Against BP.**

As BP established in its opening brief, federal courts uniformly hold that OPA displaces all federal common-law claims for damages covered by OPA, such as Plaintiffs' maritime claims against BP.  (BP MTD Mem. 13-17)  Plaintiffs concede that these federal opinions exist, but assert "with all due respect" that all these courts "erroneously" reached the same result.  (Pls.' Mem. 31)  Louisiana, by contrast, makes no argument whatsoever regarding OPA displacement of maritime claims, effectively conceding that it has no credible response to BP's arguments.[2]

Plaintiffs argue that federal courts finding OPA displacement of federal common-law claims are wrong because (1) they have uniformly misinterpreted two provisions of OPA — 33 U.S.C. §§ 2718(c) and 2751(e) — that "save" all of their maritime claims; and (2) these opinions have been superseded with respect to the ability to seek a punitive damages remedy under maritime law by two recent Supreme Court cases.[3]  (Pls.' Mem. 30-50)  But it is B1 Plaintiffs who are wrong.  Nothing in OPA purports to "save" maritime claims that duplicate the cause of action created by OPA's liability provision, 33 U.S.C. § 2702.  Nor has the Supreme

---

[2] Indeed, the State of Louisiana explains that "OPA provides a *single federal law* providing clean up authority, penalties, and liability for oil pollution," (La. Mem. 14 (emphasis added)); that "OPA was intended by Congress to be the *exclusive federal statute* governing oil spills," (*id.* (emphasis added));"OPA *occupies the entire field of federal legislation* with respect to liability for oil discharges to navigable waters," (*id.* (emphasis added)).  These assertions are a tacit concession that OPA displaces Plaintiffs' maritime claims, and are flatly inconsistent with Louisiana's argument that maritime law governs Plaintiffs' claims against BP.  In fact, Louisiana relies on cases recognizing that OPA displaces maritime law claims.  (*See* La. Mem. 15 (citing *S. Port Marine, LLC v. Gulf Oil Ltd. P'Ship*, 234 F.3d 58, 65-66 (1st Cir. 2000) (OPA displaces maritime claims, including for punitive damages); *Tanguis v. M/V Westchester*, 153 F. Supp. 2d 859, 867 (E.D. La. 2001) (OPA displaces maritime claims))).

[3] Louisiana does not argue that OPA Section 2718(c) preserves maritime law claims, only that it preserves state law claims.  Louisiana's position is also erroneous, as explained below, but it is telling that the State did not even consider the argument that OPA preserves maritime law to be viable.  Louisiana instead argues that *OCSLA* preserves maritime law's application.  (La. Mem. 21)  This is irrelevant because Congress's intent that OCSLA not displace maritime law says nothing about whether OPA displaces maritime law.

Court disturbed the framework applied by courts to hold that OPA displaces maritime claims that duplicate those covered by OPA.

As an initial matter, it bears repeating that there is a ***presumption in favor of displacement*** of common-law claims when a new federal statute is adopted to control a particular subject area.  And, applying this principle, the Supreme Court and the Fifth Circuit have held — under a variety of different circumstances — that Congress's enactment of a comprehensive statutory scheme displaces common-law maritime claims.  (*See* BP MTD Mem. 14-15)

OPA is a "comprehensive" statute, *S. Port Marine, LLC v. Gulf Oil Ltd. P'ship*, 234 F.3d 58, 64-65 (1st Cir. 2000), whose "text . . . implies its mandatory and exclusive nature." *Gabarick v. Laurin Mar. (Am.), Inc.*, 623 F. Supp. 2d 741, 745 (E.D. La. 2009).  Under the "plain language of the statute," OPA "applies to the damages listed in § 2702, which also specifically references its exclusive nature with respect to other provisions of law: '***Notwithstanding any other provision or rule of law***, and subject to the provisions of this Act . . . .'"  *Id*. at 746 (emphasis in original).  That is why courts find that Congress "intended the enactment of the OPA to supplant the existing general admiralty and maritime law" for damages covered by OPA Section 2702.  *S. Port Marine*, 234 F.3d at 65.

Plaintiffs' argument that OPA Sections 2718(c) and 2751(e) nevertheless "save" their maritime claims has no merit.  (Pls.' Mem. 30-42)  Section 2751(e) provides that "***[e]xcept as otherwise provided in this Act***," OPA does not "affect" "admiralty and maritime law" or admiralty "jurisdiction."  33 U.S.C. § 2751(e) (emphasis added).  Thus, Congress expressly provided that OPA ***can and does "affect"*** maritime common-law claims, where Congress has "provided" as such "in this Act," namely, where maritime claims would seek recoveries for injuries duplicative of those covered by OPA Section 2702.  As Judge Clement explained, OPA

5

"includes new remedies, which, in many respects, preempt traditional maritime remedies.  This result is reflected in the first clause of OPA's admiralty and maritime savings provision: 'Except as otherwise provided in this chapter . . . .'"  *Tanguis v. M/V Westchester*, 153 F. Supp. 2d 859, 867 (E.D. La. 2001).[4]

Nor does Section 2718(c) save Plaintiffs' maritime claims.  Section 2718(c) provides that OPA does not "affect" "the authority of the **United States** . . . (1) to impose additional liability or additional requirements; or (2) to impose, or to determine the amount of, any fine or penalty (whether criminal or civil in nature) for any violation of law; relating to the discharge, or substantial threat of a discharge, of oil."  33 U.S.C. § 2718(c) (emphasis added).  Section 2718(c) establishes that OPA does not bar the federal Government from imposing liability, requirements, fines, or penalties to supplement OPA.  It does not save maritime claims by private parties.

Likewise, there is no merit to Plaintiffs' claim that *Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008), and *Atl. Sounding Co. v. Townsend*, 129 S. Ct. 2561 (2009), neither of which interpret OPA, somehow change the straightforward textual analysis of OPA in the existing case law on Section 2751(e).  *Baker* and *Townsend* cannot be read to carve out and preserve from displacement the ability to recover punitive damages as a maritime law remedy for plaintiffs seeking to recover for damages that fall within the ambit of OPA Section 2702.  (Pls.' Mem. 43-49)  In *Baker*, the Supreme Court addressed Exxon's "untenable claim" that the Clean Water Act "somehow preempts punitive damages, but not compensatory damages, for economic loss."  554 U.S. at 489.  The Court rejected this claim pointing out that it "fragment[ed] the

---

[4] *See Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atl. Corp.*, 924 F. Supp. 1436, 1447 (E.D. Va. 1996), *aff'd*, 122 F.3d 1062 (4th Cir. 1997), *cert. denied*, 523 U.S. 1021 (1998) (the "[e]xcept as otherwise provided" language establishes that "section 2751 only preserves admiralty claims which are not addressed in OPA"); *Gabarick*, 623 F. Supp. 2d at 746 (any other reading of Section 2751 ignores "the first part of section (e) — 'except as otherwise provided in this Act'"); *In re Settoon Towing*, 2009 WL 4730969, at *3 (E.D. La. Dec. 4, 2009).

recovery scheme," and that the Court had "rejected similar attempts to sever remedies from their causes of action." *Id.* Here, unlike in *Baker*, all courts considering the issue interpret OPA to displace **all** maritime law remedies for damages covered by OPA Section 2702, not only the maritime remedy of punitive damages. It is B1 Plaintiffs — not BP or the federal courts — who seek a "fragmented recovery scheme." OPA sets forth a comprehensive statutory scheme that speaks directly to the maritime claims the B1 Plaintiffs seek to bring — as numerous courts have already held.

In *Townsend*, the Supreme Court held that the Jones Act "created a statutory cause of action for negligence, but did not eliminate pre-existing remedies available to seamen for the **separate** common-law cause of action based on a seaman's right to maintenance and cure." 129 S. Ct. at 2570 (emphasis added). The Court found instructive the fact that the Jones Act "bestows upon the injured seaman the right to 'elect' to bring a Jones Act claim, thereby indicating a choice of actions for seamen — not an exclusive remedy." *Id.* (reasoning that the statutory language allowing for "election" indicates that "Congress was envisioning the continued availability of [maritime] common-law causes of action"). But here, unlike the Jones Act at issue in *Townsend*, OPA does not contain any statutory language permitting Plaintiffs to "elect" to bring OPA claims, in lieu of some other preexisting federal common-law claims. To the extent that OPA refers to "election" at all, it speaks only of a choice that claimants have to seek a recovery from the Oil Spill Liability Trust Fund or from a responsible party. *See* 33 U.S.C. § 2713(c). Congress provided no "election" as to additional common law remedies.

Plaintiffs' claim that *South Port Marine* relies on "outdated" law on displacement of federal common law claims — *Miles v. Apex Marine Corp.*, 498 U.S. 19 (1990) in particular — lacks merit. (Pls.' Mem. 44) In *South Port Marine*, the First Circuit rejected the same argument

Plaintiffs make here that "the availability of punitive damages under general admiralty and maritime law survived the enactment of the OPA." 234 F.2d at 65. As the Supreme Court explained in *Townsend*, *Miles* held that "[i]t would have been illegitimate to create common-law remedies that exceeded those remedies statutorily available under the Jones Act and [the Death on the High Seas Act]." 129 S. Ct. at 2572. That is exactly the principle the First Circuit applied in *South Port*. In *Townsend*, the Supreme Court reaffirmed *Miles*, explaining that its reasoning is "sound," *id.*, but was not applicable in *Townsend* because "the Jones Act does not address maintenance and cure or its remedy," *id.* By contrast, the reasoning in *Miles* is applicable here; OPA, unlike the Jones Act, is a comprehensive scheme that displaces maritime claims.[5]

Plaintiffs' interpretation of *Baker* and *Townsend* sweeps too broadly. They claim these cases — in which the Supreme Court found maritime law was not displaced by statutes that are not comprehensive — stand for the proposition that comprehensive statutes such as OPA cannot displace maritime punitive damages claims. But if that were the law, numerous Supreme Court cases finding that comprehensive statutes displace maritime law would be wrongly decided. (*See* BP MTD Mem. 14-15 for citations.) Neither *Baker* nor *Townsend* so much as suggested that it was creating such a radical change in the law of displacement.

---

[5] Plaintiffs incorrectly assert this conclusion creates "anomalies." (Pls.' Mem. 45-46)They claim that because state law permits recovery of punitive damages from oil discharges from fixed platforms or vessels within the first three miles of territorial waters in the Gulf of Mexico "where OCSLA does not apply," maritime law must also permit recovery of punitive damages. (*Id.* at 46) This claim is doubly incorrect. ***First***, Plaintiffs' premise is mistaken because the law of the adjacent state under OCSLA here, Louisiana, does not permit the recovery of punitive damages. ***Second***, the "anomaly" Plaintiffs purport to identify results from the workings of OCSLA, which allows state law or maritime law to apply, depending on the circumstances. Neither *Miles* nor *Townsend* permit this Court to modify the displacing effect of OPA to make it uniform with the law of an adjacent state. To the contrary, the key uniformity that *Miles* and *Townsend* discuss is uniformity among sources of federal law. Here, Plaintiffs propose to make federal law anomalous by allowing them to supplement the remedies delineated in OPA with various kinds of damages depending on the law of the State where injury occurs.

### B.      Plaintiffs' Maritime Claims Are Also Barred By *Robins Dry Dock.*

Absent displacement by OPA, Plaintiffs' maritime claims are barred by *Robins Dry Dock.*  (BP MTD Mem. 17-19)  The Fifth Circuit adopts a bright line rule:  "It is unmistakable that the law of this circuit does not allow recovery of purely economic claims absent physical injury to a proprietary interest in a maritime negligence suit."  *In re Taira Lynn Marine Ltd. No. 5*, 444 F.3d 371, 377 (5th Cir. 2006).  Plaintiffs' attempts to circumvent this bright-line rule are unavailing.

First, contrary to Plaintiffs' argument, CERCLA did not overrule *Robins Dry Dock.*  (Pls.' Mem. 75-76)  Tellingly, Plaintiffs do not cite any case law for this claim.  In fact, the Fifth Circuit has consistently applied *Robins Dry Dock* even ***after*** the 1986 CERCLA amendments.  *See Catalyst Old River Hydroelectric Ltd. P'ship v. Ingram Barge Co.*,  No. 10-30466, 2011 WL 1449616, at *2 (5th Cir. Apr. 15, 2011) ("This court has faithfully applied the *Robins* rule and consistently denied recovery for economic loss to parties who have suffered no harm to a proprietary interest.").  There is thus no merit whatsoever to Plaintiffs' claim.

Second, *Robins Dry Dock* is not limited to cases "where the plaintiff is damaged because of injury to a party in privity with the plaintiff."  (Pls.' Mem. 76-77)  Plaintiffs' only support for this view is a concurrence in a vacated Eleventh Circuit opinion.  (*Id.* at 76)  The Fifth Circuit does not restrict application of *Robins Dry Dock* in this way.  As here, in both *Taira Lynn* and *TESTBANK*, plaintiffs alleged injury from defendants' conduct, not from defendants' injury to a party in contractual privity with them; nonetheless, the Fifth Circuit applied *Robins Dry Dock* to bar plaintiffs' claims.[6]  In *TESTBANK*, the Fifth Circuit rejected a similar argument by plaintiffs

---

[6] *See Taira Lynn*, 444 F.3d at 375-81 (businesses which suspended operations alleged economic losses following a mandatory evacuation after a tow and barge allided with a bridge causing a discharge of chemicals); *La. ex rel. Guste v. M/V TESTBANK*, 752 F.2d 1019 (5th Cir. 1985) (en banc) (marinas, seafood restaurants, recreational fishermen and others alleged economic losses after a spill from a vessel collision resulted in suspension of fishing).

9

there that *Robins* is confined to "losses suffered for inability to perform contracts between a plaintiff and others" reasoning that "[i]f a plaintiff connected to the damaged chattels by contract cannot recover, others more remotely situated are foreclosed *a fortiori*." *Id.* 1023-24.

Lastly, while Plaintiffs seek an exception to *Robins Dry Dock* for commercial fisherman (Pls.' Mem. 77), no such exception is recognized by the Fifth Circuit. Any such exception would be inconsistent with the interpretation of *Robins Dry Dock* by the Fifth Circuit, which has chosen "the predictability afforded by the 'bright line' rule that allows plaintiffs to recover economic losses only where the plaintiff has suffered physical injury to a proprietary interest." *Reserve Mooring Inc. v. Am. Commercial Barge Line*, 251 F.3d 1069, 1071 (5th Cir. 2001); *see also Taira Lynn*, 444 F.3d at 378 (rejecting other proposed exceptions to *Robins Dry Dock*).[7]

## II.    PLAINTIFFS' OPA COUNT MUST BE DISMISSED.

### A.    OPA Claims Filed Before OPA Presentment Is Met Must Be Dismissed.

B1 Plaintiffs admit they "must generally satisfy presentment under the OPA prior to invoking the Court's jurisdiction for purpose of asserting claims under the OPA." (Pls.' Mem. 59) But B1 Plaintiffs' OPA count is not limited, as it must be, to those who satisfied OPA presentment. (B1 Compl. ¶ 689) B1 Plaintiffs assert it is "premature" to dismiss OPA claims of B1 Plaintiffs who did not "present properly," and that they may pursue OPA claims via a Master Complaint for *all* B1 Plaintiffs even though only "some" satisfied OPA presentment. (Pls.' Mem. 57-60) These assertions do not withstand judicial scrutiny.[8] (*See* BP MTD Mem. 19-22)

---

[7] Some district courts have proposed an exception to *Robins Dry Dock* for commercial fishermen who "routinely operated" in public waters "closed by the Coast Guard" due to tortious invasion of pollutants. *See La. ex rel. Guste v. M/V TESTBANK*, 524 F. Supp. 1170, 1173-74 (E.D. La. 1981), *aff'd*, 728 F.2d 748 (5th Cir. 1984), *aff'd on reh'g*, 752 F.2d 1019 (5th Cir. 1985) (en banc), *cert. denied*, 477 U.S. 903 (1986). But the B1 Master Complaint allegations for "Commercial Fishermen Plaintiffs" do not satisfy this narrow exception even if the Fifth Circuit were to adopt it. (B1 Compl. ¶ 209(a))

[8] Plaintiffs assert that "a significant number" of them "have complied" with OPA presentment. (Pls.' Mem. 60) But review of the 41,939 PPFs filed as of February 22, 2011 reveals at most only 25 Plaintiffs who filed PPFs (*or*

Use of a Master Complaint does not excuse the need for each B1 Plaintiff to satisfy OPA's presentment requirement *before* filing suit.  Judge Fallon rejected an argument similar to B1 Plaintiffs' argument in *Turner v. Murphy Oil USA*, No. 05-4206, at 9-12 (E.D. La. Dec. 29, 2005), (BP MTD Ex. 19), a litigation in which, like here, a Master Complaint was used for administrative purposes to consolidate twenty-six underlying purported class action complaints. Granting defendants' motion to dismiss the OPA claim in the Master Complaint, Judge Fallon reasoned that "[a]lthough Plaintiffs ask the Court to waive the notice requirement, the case law indicates that notice in the form of presentment of a claim is a 'mandatory condition precedent' to bringing suit under OPA."  *See id.* at 9-12 (quoting *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.*, 51 F.3d 235, 240 (11th Cir. 1995)).  Judge Fallon held that his ruling "shall not only be applicable to the Administrative Master Complaint but also to the individual actions."  *Id*. Likewise, Judge Africk ruled that OPA claims must be "dismissed without prejudice, rather than stayed" if plaintiffs did not comply with OPA pre-suit presentment.  *Gabarick v. Laurin Mar. (Am.), Inc.*, Civ. A. No. 08-4007, 2009 WL 102549, at *3 (E.D. La. Jan. 12, 2009).

Just like the plaintiffs in *Turner*, Louisiana contends here that courts have "authority to excuse lack of compliance" with OPA's presentment requirement, a position rejected by

---

*0.06%*) might now satisfy Section 2713 if they re-filed their OPA claim.  Of the 41,939 PPFs, 15,076 PPFs (or nearly 40%) included an admission that the Plaintiff had not filed an OPA claim with either BP or the GCCF.  (BP MTD Mem. 24)  Of the 26,863 PPFs remaining, 111 PPFs by Plaintiffs who filed a claim with only BP did not satisfy OPA presentment.  (BP MTD Ex. 12 at 12-13)  Of the 26,752 PPFs remaining for Plaintiffs indicating they had filed claims with the GCCF, the GCCF provided information pursuant to the PPF authorizations to all parties demonstrating that only 80 Plaintiffs (*or less than 1/2 of 1% of all Plaintiffs*) have filed a Final Claim with the GCCF.  (BP MTD Ex. 12 at ¶¶ 23-26; *see also* BP MTD Mem. 6 (detailing types of claims permitted by GCCF)  A review of GCCF claims files for the 80 Plaintiffs reveals that about 55 Plaintiffs had filed for "Emergency Advance Payments" and not Final Claims, and thus have not presented a "sum certain" to the GCCF.  (BP MTD Ex. 12 at ¶¶ 23-26)  Nor have the Watts Plaintiffs complied.  The GCCF reported that for *all except one* of the 40,002 Plaintiffs purportedly represented by the Watts firm, the GCCF either has "no knowledge" of the Plaintiff as a GCCF claimant, "Watts Guerra did not complete the claims submission process," the Plaintiff did not list Watts as his attorney on the GCCF form, or the Plaintiff did not sign the forms.  (*See* Ex. 2, Letter from D. Pitofsky, Attorney for Kenneth Feinberg in His Capacity as Administrator of the GCCF, Goodwin Proctor LLP, to All Parties Regarding GCCF Claims Files for Plaintiffs Submitting PPFs (Apr. 26, 2011))

Judge Fallon.  (La. Mem. 34-39)  According to Louisiana, OPA's presentment requirement is "procedural" not "jurisdictional," and it necessarily follows, Louisiana contends, that the test used by courts to determine whether to excuse the requirement that a plaintiff exhaust administrative remedies before filing suit can be applied to excuse the requirement that plaintiffs must satisfy OPA presentment before filing suit.  (*See id.* at 37-38 (quoting the test for whether failure to exhaust administrative remedies may be excused set out in *Dawson Farms LLC v. Farm Serv. Agency*, 504 F.3d 592, 606 (5th Cir. 2007)) The problem with Louisiana's logic, however, is the OPA presentment provision is not an exhaustion of administrative remedies provision.  No agency adjudicative process is implicated.[9]  Rather, OPA presentment requires pre-suit submission of claims to the OPA "responsible party."  33 U.S.C. § 2713(a).  Thus, even if OPA's presentment requirement is "procedural," the test applied by courts to excuse the administrative exhaustion requirement is inapposite.[10]

As noted in BP's opening memorandum, the decision Louisiana tries to inject here — whether OPA's presentment requirement is "procedural" or "jurisdictional" — is not one this Court needs to reach.  (BP MTD Mem. 23 n.15)  The Supreme Court rejected an attempt to impose this precise choice in *Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 31 (1990).  In

---

[9] The jurisprudential "doctrine of administrative exhaustion," also codified into some statutes, serves to avoid "premature interference with **agency** processes, so that the **agency** may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review."  *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975) (emphasis added); *see also Woodford v. Ngo*, 548 U.S. 81, 90 (2006) ("exhaustion requirements are designed to deal with parties who do not want to exhaust . . .[and] to give the agency a fair and full opportunity to adjudicate their claims); *Taylor v. United States Treasury Dept.*, 127 F.3d 470, 476-77 (5th Cir. 1997) (similar).

[10] Even if the test for excusing a plaintiffs' requirement to exhaust administrative remedies were applicable to OPA's presentment requirement, that test is not met here.  As the Fifth Circuit observed in *Dawson*, the case cited by Louisiana, *see* La. Mem. 38, "[o]vercoming the jurisprudential requirement for administrative exhaustion is difficult."  504 F.3d at 606 (finding "[n]one of the grounds for excusing administrative exhaustion have been demonstrated to exist in this case.")  The "limited bases for excusing administrative exhaustion" apply "'only in extraordinary circumstances.'"  *Id.* (quoting *Central States Southeast and Southwest Areas Pension Fund v. T.I.M.E.-DC, Inc.*, 826 F.2d 320 (5th Cir. 1987)).

*Hallstrom*, the Supreme Court held that compliance with a Resource Conservation and Recovery Act ("RCRA") provision requiring citizens to notify the alleged RCRA violator and regulators of their intent to sue 60 days before commencing suit, *see* 42 U.S.C. § 6972, is a "mandatory precondition to suit that cannot be disregarded by the district court at its discretion." *Id.* at 23. Reiterating that "the starting point for interpreting a statute is the language of the statute itself," the Supreme Court held that "***[u]nder a literal reading of the statute***, **compliance** with the 60-day notice provision **is a mandatory, not optional, condition precedent for suit.**" *Id.* at 25-26 (emphasis added). The Supreme Court rejected petitioners' call for a "flexible or pragmatic construction" of the RCRA notice provision that would allow courts to stay an action for 60 days in the event notice was not provided prior to filing suit, holding instead that such an interpretation of Section 6972 "flatly contradicts the language of the statute." *Id.* at 26-27 ("[W]e are not at liberty to create an exception where Congress has declined to do so."). Noting that "***[t]he parties have framed the question presented in this case as whether the [RCRA] notice provision is jurisdictional or procedural***," the Supreme Court held that "***[i]n light of our literal interpretation of the statutory requirement, we need not determine whether § 6972(b) is jurisdictional in the strict sense of the term. As a general rule, if an action is barred by the terms of a statute, it must be dismissed.***" *Id.* at 31 (citations omitted, emphasis added).[11]

---

[11] Moreover, even where statutory provisions containing mandatory language are  not  jurisdictional, the Supreme Court has expressed that the proper course of action for plaintiff's failure to comply is dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). For example, the Supreme Court has observed "[j]udicial opinions . . . 'often obscure the issue by stating that the court is dismissing 'for lack of jurisdiction' when some threshold fact has not been established without explicitly considering whether the dismissal should be for lack of subject matter jurisdiction or for failure to state a claim.'"  *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 511 (2006) (citation omitted) (holding that 42 U.S.C. § 2000e(b), which sets a threshold number of employees for applicability of Title VII, "is an element of a plaintiff's claim for relief, not a jurisdictional issue"). Similarly, the Supreme Court explained that in its *Robinson* decision it held that the Court of Appeals was wrong in excusing compliance with former Federal Rule of Criminal Procedure 37, which set a deadline for filing a notice of appeal, not because the district court lacked subject matter jurisdiction, but "because district courts must observe the clear limits of the Rules of Criminal Procedure when they are properly invoked." *Eberhart v. United States*, 546 U.S. 12, 17 (2005) (describing *United States v. Robinson*, 361 U.S. 220 (1960)). The Court explained that its characterization of Rule 37 in *Robinson* as "mandatory and jurisdictional" perhaps "obscured the central point of the *Robinson* case —that when

OPA's pre-suit presentment requirement is similar to the RCRA notice provision at issue in *Hallstrom*, which the Supreme Court held to be a "mandatory, not optional, condition precedent for suit" regardless of whether the provision was "jurisdictional" or "procedural." 493 U.S. at 308-09.  The Eleventh Circuit in *Boca Ciega* observed that RCRA's notice provision was a "provision very similar" to OPA Section 2713,[12] and found *Hallstrom* instructive in reaching its holding that OPA's presentment requirement is a "mandatory condition precedent" to filing an OPA claim in court.  51 F.3d at 239.[13]  Like Louisiana here (*see* La. Mem. 38-39),[14]

---

the Government objected to a filing untimely under Rule 37, **the court's duty to dismiss the appeal was mandatory**." *Id.* at 406 (emphasis added).  Thus, if this Court were to decide OPA's presentment requirement is not jurisdictional, given the mandatory language of OPA Section 2713, the Court must dismiss Plaintiffs' OPA count pursuant to Rule 12(b)(6) instead of Rule 12(b)(1).

[12] Like OPA's presentment requirement, the congressional purpose behind RCRA's notice provision was to create a "nonadversarial period" to achieve compliance with RCRA regulations.  *See Hallstrom*, 493 U.S. at 32.

[13] The Eleventh Circuit is not alone in applying *Hallstrom*'s reasoning to interpret OPA's presentment requirement or other similar requirements.  *See, e.g., Abundiz v. Explorer Pipeline Co.*, No. Civ. A. 300CV2092H, 2003 WL 23096018, at *3 (N.D. Tex. Nov. 25, 2003) (relying on *Hallstrom* to interpret OPA); *Johnson v. Colonial Pipeline Co.*, 830 F. Supp. 309, 310 (E.D. Va. 1993) (same).  Numerous federal courts have applied *Hallstrom* to hold that dismissal of a cause of action is required when a plaintiff fails to comply with a statutory provision that establishes a mandatory condition precedent to filing suit.  *See, e.g., Lockett v. EPA*, 319 F.3d 678, 682-83 (5th Cir. 2003) (applying *Hallstrom* to find that Clean Water Act's citizen suit pre-suit notice requirement is "mandatory"); *N.M. Citizens for Clean Air & Water v. Espanola Mercantile Co.*, 72 F.3d 830, 833 (10th Cir. 1996) (agreeing with the Third, Sixth, Ninth and Eleventh Circuits that the reasoning of *Hallstrom* applies such that "compliance with the sixty-day notice requirements in the Clean Water Act is also a mandatory precondition to suit" and finding that each Plaintiff must have submitted a notice).  Like OPA's presentment requirement, these notice statutes serve the purpose of encouraging settlement between parties prior to initiating litigation.

[14] The purported policy reason Louisiana offers in advocating that this Court "excuse" OPA's pre-suit presentment requirement flatly contradicts congressional intent reflected in OPA's legislative history.  Louisiana asserts "courts are better equipped to promote settlement negotiations" (La. Mem. 39), yet the very purpose of OPA's mandatory pre-suit presentment requirement is to facilitate the out-of-court resolution of claims.  *See Oil Spill Liability and Compensation: Hearing before the Subcomm. on Water Res. of the House Comm. on Public Works and Transp.*, 101st Cong., 1st Sess. 124 (1989) (stressing the importance of quick relief and noting that an individual "should not have to hire an attorney and file numerous lawsuits and wait years to receive reimbursement . . . ."); 135 Cong. Rec. H7962 (daily ed. Nov. 2, 1989) (co-sponsor of House Bill, Rep. Lent, stated: "The thrust of this legislation is to eliminate, to the extent possible, the need for an injured person to seek recourse through the litigation process, which — as we all know — can take years.")  Notably, prior to enactment, the Senate amendment to OPA had language that would not necessarily have required presentation of claims as a condition precedent to civil litigation.  Instead, the Senate language indicated that presentation was a condition precedent only for claims against the Oil Spill Liability Trust Fund.  But the Conference Committee rejected the Senate amendment and agreed on the House version providing that all claims first be presented to the responsible party.  *See* H.R. Rep. No. 101-653, at 17 (1990) (Conf. Rep.), *reprinted in* 1990 U.S.C.C.A.N. 779, 795.

appellants in *Boca Ciega* asserted "policy objections to [OPA's] claims presentation requirement," but the Eleventh Circuit found nothing in OPA's text or legislative history to "justify departing from the plain meaning of [the] statute's text." 51 F.3d at 239. Pointing to *Hallstrom*, the Eleventh Circuit opined,

> we are not at liberty to create an exception where Congress has declined to do so. . . . If Appellants perceive a policy shortcoming caused by OPA's claims presentation requirement, that shortcoming 'arises as a result of the balance struck by Congress, and is properly remedied by congressional action.

*Id.* (quoting *Hallstrom*, 493 U.S. at 26, 30).

All courts within this district considering the issue have followed the sound reasoning of the Eleventh Circuit in *Boca Ciega* to hold that OPA's pre-suit presentment requirement set forth in 33 U.S.C. § 2713 is mandatory and cannot be waived. This includes *Leboeuf v. Texaco*, 9 F. Supp. 2d 661 (E.D. La. 1998), relied upon by Louisiana (La. Mem. 36), which held "this Court agrees with the Eleventh Circuit that [the presentment requirements of 33 U.S.C. § 2713] are mandatory conditions precedent to filing an action in either state or federal court." *Id.* at 666; *see also Gabarick*, 2009 WL 102549, at *2 (discussed above); *Isla Corp. v. Sundown Energy, LP*, Civ. A. No. 06-8645, 2007 WL 1240212 (E.D. La. Apr. 27, 2007) ("Presentment of a claim in accordance with section 2713 is a 'mandatory condition precedent' for OPA claims."); *Turner*, No. 05-4206 (discussed above); *Marathon Pipe Line Co. v. LaRoche Indus. Inc.*, 944 F. Supp. 476, 477-78 (E.D. La. 1996) (§ 2713 "mandates dismissal when that provision is applicable and not complied with by the claimant"); *United States v. Murphy Exploration and Prod. Co.*, 939 F. Supp. 489 (E.D. La. 1996). Accordingly, the Court should reject the arguments of B1 Plaintiffs and Louisiana, and dismiss the OPA count in the B1 Master Complaint and underlying OPA claims of B1 Plaintiffs who failed to satisfy OPA's presentment requirement prior to filing suit.

**B.      Louisiana Is Not Exempt From OPA's Pre-Suit Presentment Requirement.**

Louisiana argues that this Court should read into OPA's mandatory pre-suit presentation provision an exception for government entities submitting "claims for damages brought in conjunction with claims for removal costs." (La. Mem. 39-42)  This argument is irrelevant to the B1 motion to dismiss and unripe because the deadline for responses to Louisiana's Complaint has not yet arrived.  As a preview, in the event Louisiana reasserts this argument when it is ripe, reading such an exception into OPA Section 2713 must be rejected outright as contrary to OPA's plain text and to congressional intent.Like the 155 government entities that have submitted OPA claims to the BP, Louisiana must present its OPA claims to BP ***before*** it may pursue them in court.  (*See* Decl. of Geir Robinson, Director of Claims, BP Gulf Coast Restoration Organization, attached as Ex. 3, (provides background on the BP Government Claims process)) Louisiana must play by the rules Congress established, and this Court is not at liberty to exempt government entities from OPA's pre-suit presentment requirement.

OPA Section 2713 expressly provides for certain exceptions to pre-suit presentment of OPA claims to the "responsible party," and the exception Louisiana proposes does not exist.Section 2713 states:  "***Except as provided in subsection (b) of this section, all claims for removal costs or damages shall be presented first to the responsible party*** or guarantor of the source designated under 2714(a) of this title."  33 U.S.C. § 2713(a) (emphasis added). Section 2713(a) could not be more clear:  "***all*** claims" unless they fall within the exception in subsection (b) must be presented first to BP.[15]  There is no exception for Louisiana or any other government entity.  As the Supreme Court has repeatedly noted, "'the starting point for

---

[15] Subsection (b) provides:  "Claims for removal costs or damages may be presented first to the Fund — (A) if the President has advertised or otherwise notified claimants in accordance with section 2714(c) of this title; (B) by a responsible party who may assert a claim under section 2708 of this title; (C) by the Governor of a State for removal costs incurred by the State; or (D) by a United States claimant in a case where a foreign offshore unit has discharged oil causing damage for which the Fund is liable under section 2712(a) of this title."  33 U.S.C. § 2713(b)(1).

interpreting a statute is the language of the statute itself," and here "[t]he language of this provision could not be clearer." *Hallstrom*, 493 U.S. at 25-26 (citation omitted).  As the Supreme Court observed in *Hallstrom*, which held that courts are not at liberty to give "a flexible or pragmatic construction" to RCRA's mandatory pre-suit notice provision, "we are not at liberty to create an exception where Congress has declined to do so."  *Id.* at 26-27.

BP has in place a fulsome process for evaluating OPA claims presented by government entities.  To date, 155 government entities have submitted almost 800 OPA claims directly to BP, and BP has paid over $1.25 billion to governmental claimants — almost $580 million to state and local governments and the remainder to the U.S. Coast Guard.  As Louisiana is well aware from meetings with BP, BP stands ready to consider Louisiana's OPA claims once Louisiana complies with its OPA obligations and presents them to BP.  (Ex. 3, Robinson Decl.)

Louisiana premises its plea for exemption from OPA pre-suit presentment to BP entirely on *United States v. M/V Cosco Busan*, 557 F. Supp. 2d 1058 (N.D. Cal. 2008), an opinion this Court should not embrace.  In *Cosco Busan*, the court held that "[i]n the interest of judicial economy" it would excuse the federal government from OPA's pre-suit presentment requirement for its OPA damages claims because the court was interpreting OPA's statute of limitations provision, 33 U.S.C. § 2717(f)(2), to allow the government to proceed in court with its OPA removal cost claims without first satisfying OPA's presentment requirement.  *Id.* at 1060-62.[16]

*Cosco Busan* is wrongly decided in many respects.  ***First***, OPA's statute of limitations is just that — a provision that proscribes the time by which actions to recover damages and

---

[16] Louisiana's footnote 9 is misleading in suggesting "***certain types of claims*** are not subject to OPA's presentment requirement."  (La. Mem. 40 n.9)  The opinions Louisiana cites do not hold that certain types of ***OPA*** claims are exempt from OPA's pre-suit requirement, rather, those opinions address ***non-OPA*** claims and are inapposite here where Louisiana seeks to end-run OPA's presentment requirement for its OPA damages and removal cost claims. Moreover, the opinions cited by Louisiana do not address the issue raised in BP's Motion to Dismiss the B1 Master Complaint, namely that the CWA and OCSLA preempt B1 Plaintiffs' state law claims against BP.

removal costs under OPA must be commenced; it is not a provision that addresses presentment of claims.  *See* 33 U.S.C. § 2717(f)(2).  OPA's presentment provision, 33 U.S.C. § 2713, does not exempt claims for removal costs from the mandatory pre-suit presentment process, nor does it exempt government entities.  The *Cosco Busan* court's interpretation of OPA Sections 2713 and 2717(f)(2) violates well-established rules of statutory construction.  *See Alamendez-Torres v. United States*, 523 U.S. 224, 234 (1998) ("[T]he title of a statute and the heading of a section are tools available for resolution of a doubt about the meaning of a statute."); *Duncan v. Walker*, 533 U.S. 167, 174 (2001) ("It is our duty to give effect, of possible, to every clause and word of a statute. . . .  We are thus reluctant to treat statutory terms as surplusage in any setting.  We are especially unwilling to do so when the term occupies so pivotal a place in the statutory scheme.").

*Moreover*, even if there were an exemption to OPA's presentment requirement for government removal cost claims (and there is not), the district court in *Cosco Busan* had no legitimate basis to disregard the express language of OPA Section 2173 and exempt the government's damages claims from OPA's presentment requirement as a matter of "judicial economy" so that those claims could proceed in court apace with the government's removal costs claims.[17]  *See Hallstrom*, 493 U.S. at 27 (courts "are not at liberty to create an exception where Congress has declined to do so."); *Badaracco v. Commissioner*, 464 U.S. 386, 398 (1984) ("Courts are not authorized to rewrite a statute because they might deem its effects susceptible to

---

[17] In *Boca Ciega* the Eleventh Circuit considered and rejected reasoning similar to that of the court in *Cosco Busan*. Appellants in *Boca Ciega* argued that OPA's savings clause, 33 U.S.C. § 2718(a), allowing claims for state remedies to be filed in court with no pre-suit presentation to the OPA responsible party, suggested that OPA's pre-suit presentation requirement should not apply to OPA claims against responsible parties and instead should apply only to Spill Fund claims.  The Eleventh Circuit responded that "[w]hile the side-by-side co-existence of state remedies requiring no presentation and OPA remedies requiring presentation might be relevant if we were interpreting a facially ambiguous statute,  the clarity of § 2713(a) forecloses the possibility.  A general statutory provision like OPA's savings clause does not trump the more specific command of § 2713(a)."  51 F.3d at 239 (citing *Morales v. TWA, Inc.*, 504 U.S. 374, 384-85 and *Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 523 (1989).

18

improvement.") (citation omitted); *Bilski v. Kappos*, 130 S. Ct. 3218, 3228-29 (2010) ("the canon against interpreting any statutory provision in a manner that would render another provision superfluous. . . . cannot be overcome by judicial speculation as to the intent of various legislators in enacting the subsequent provision") (citations omitted).

### C.   OPA Does Not Apply To "VoO Plaintiffs" Or To "Moratorium Plaintiffs."

The damages alleged by "VoO Plaintiffs" and "Moratorium Plaintiffs" do not satisfy OPA's causation requirements.[18]  As is plain from the B1 Amended Master Complaint, neither plaintiff subset alleges damages that result from the *Deepwater Horizon* incident and oil spill.[19] VoO Plaintiffs allege injuries that result from voluntary participation in BP's VoO program. Moratorium Plaintiffs allege injuries that result from the moratorium.[20]

B1 Plaintiffs and Louisiana concede  that the viability of OPA claims by Moratorium Plaintiffs and VoO Plaintiffs depends on their assertion that "but for" causation is sufficient under OPA, and assert that this "but for" test is satisfied because the moratorium and BP's VoO program would not have occurred "but for" the *Deepwater Horizon* oil spill incident.  (Pls.' Mem. 65, 67-74; La. Mem. 42-65)  But this assertion by B1 Plaintiffs and Louisiana that OPA's causation provisions require only "but for" causation is refuted by OPA's plain language, judicial opinions by the Fifth Circuit and Fourth Circuit and U.S. Coast Guard decisions interpreting OPA, judicial opinions interpreting similar causation provisions, and OPA's legislative history.

---

[18] BP joins in Transocean's motion to dismiss "Moratorium Plaintiffs."  (*See* TO MTD Mem. 47-48 [Doc. 1390].)

[19] *See* B1 Compl. ¶¶ 209(g), 209(l) for damages allegations of the "VoO Plaintiffs" and "Moratorium Plaintiffs".

[20] If Moratorium Plaintiffs' claims are not dismissed, this Court will need to address (i) whether the federal government is an indispensible party under FRCP 19; (ii) whether the government has sovereign immunity; and (iii) whether the claims must be dismissed because an indispensable party cannot be joined.  Of relevance, in a suit against the Department of Interior, Judge Feldman granted a preliminary injunction finding plaintiffs "established a likelihood of successfully showing the Administration acted arbitrarily and capriciously in issuing the moratorium. *Hornbeck Offshore Servs. v. Salazar*, Civ. A. No. 10-1663 (E.D. La. June 22, 2010) [Dkt. No. 68].

OPA's express terms make clear that OPA compensability is limited to damages *directly* caused by a covered oil spill and that indirect or derivative losses are not compensable.  B1 Plaintiffs seeking to recover damages under OPA must satisfy *two* statutory causation requirements.  All claimants must prove that their damages "*result from such incident*." 33 U.S.C. § 2702(a) (emphasis added).[21]  In addition, B1 Plaintiffs with lost income claims must demonstrate their lost profits were "*due to* the injury, destruction, or loss of real property, personal property, or natural resources," 33 U.S.C. § 2702(b)(2)(E) (emphasis added), and B1 Plaintiffs with property damage claims must demonstrate damages "*resulting from* destruction of, real or personal property" that they own or lease.  33 U.S.C. § 2702(b)(2)(B).

The Coast Guard — the federal agency charged with administering the Oil Spill Trust Fund under OPA — has determined that moratorium claims are not compensable under OPA.  In published *Deepwater Horizon* decisions, the National Pollution Funds Center ("NPFC") has denied OPA claims to the Spill Fund relating to the moratorium.  Focusing on both OPA causation requirements, 33 U.S.C. §§ 2702(a) & (b)(2)(E), the Coast Guard denied a claim on the grounds that "*[t]he moratorium* and its regulatory implications for corporate entities and their employees *is not the result of* the injury, destruction or loss of property or natural resources *as a result of* a discharge or substantial threat of discharge of oil but rather due to permitting requirements therefore, the Claimant's loss is not a damage that may be compensated from the OSLTF."  (Ex. 4, Claim N10036-0290 (emphasis added); *see also* Claim No. N10036-0035 (denying claim for loss because it "directly *resulted from* a directive issued by the Department of the Interior imposing a six month offshore drilling moratorium in order to implement safety

---

[21] "Incident" is defined in OPA as "any occurrence or series of occurrences having the same origin, involving one or more vessels, facilities, or any combination thereof, resulting in the discharge or substantial threat of discharge of oil."  33 U.S.C. § 2701(14).

requirements . . . not [as] a direct result of an oil discharge."); Claim No. N10036-0322

(same).)[22]

Notably, Louisiana contends the Coast Guard's official guide on submitting OPA claims

for reimbursement from the Oil Spill Liability Trust Fund  lends support to Louisiana's claim

that moratorium claims are compensable under OPA.  (*See* La. Mem. 56-61)  Yet Louisiana

nowhere acknowledges that the Coast Guard is denying payment from the Spill Fund for OPA

claims for alleged economic losses resulting from the federally-imposed drilling moratorium.

Interpreting both OPA causation provisions — § 2702(a) (applicable to all damages

claims) and the subparts of § 2702(b)(2) applicable to property and economic loss claims, the

Fifth Circuit in *Taira Lynn* held that indirect economic loss and property damage claims were not

compensable.  At issue was an allision by a tugboat and tow with a bridge resulting in a

discharge of gaseous cargo that did not result in any property damage; however, police evacuated

an area around the bridge.  Businesses with no property damage sought lost revenues from

halting their operations to evacuate; a manufacturer sought property damages for product ruined

when it prematurely terminated operations to evacuate; and a seafood distributor sought property

damage for seafood spoiled because officials cut off electricity during the evacuation.  *See* 444

F.3d at 375-77, 380-82.  The Fifth Circuit addressed whether the discharge of gaseous cargo was

an event triggering liability under OPA, and, if so, whether plaintiffs satisfied OPA's causation

requirements.  *See id.* at 382-83.  The Fifth Circuit held:

> Even assuming arguendo that OPA applies, none of the claimants has raised an
> issue of fact as to whether any property damage was caused by the pollution
> incident, i.e. the release of the gaseous cargo.  A party is liable under OPA if,
> inter alia, the claimant's damages '***result from** such incident*,' i.e. the discharge or
> threatened discharge of oil.  ***See* 33 U.S.C. § 2702(a)** (emphasis added) . . . .  Any

---

[22] After satisfying OPA's presentment requirement, a claimant may elect to file an action in court or present the
claim to the Oil Spill Liability Trust Fund administered by the [NPFC].  *See* 33 U.S.C. § 2713(c).

> property damage upon which Claimants must rely to recover under
> § 2702(b)(2)(E) [which provides for recovery of economic loss damages] did not
> result from the discharge or threatened discharge of oil.  Claimants have not
> raised an issue of fact as to whether their economic losses are due to damage to
> property resulting from the discharge of the gas.  Therefore, Claimants cannot
> recover under OPA . . . ."

*Id*.  (bold added) (citing *Gatlin Oil Co. v. United States*, 169 F.3d 207, 210-11 (4th Cir. 1999)).

Louisiana claims *Taira Lynn* is "inapplicable" because the decision "did not address" the "'result from'" language of Section 2702(a).  (La. Mem. 45)  But Louisiana's claim is refuted by the text of the *Taira Lynn* opinion quoted above.  Significantly, Louisiana itself addressed OPA's causation requirement *Taira Lynn*, where Louisiana was a named defendant.  In direct conflict with the "but for" interpretation of OPA that Louisiana assert here, Louisiana advocated a narrow reading of OPA's causation provisions in its appellate brief in *Taira Lynn*.[23]

Likewise, in *Gatlin Oil*, the opinion relied upon by the Fifth Circuit in *Taira Lynn*, the Fourth Circuit rejected an OPA claim for indirect damages.  A vandal jammed open tanks at an oil company causing an oil spill, and vapors from the discharged oil ignited a fire that destroyed company property; the oil company submitted an OPA claim to the Spill Fund.  *See* 169 F.3d at 209.  The Coast Guard determined that the oil company could recover under OPA only for its property and economic loss damages caused by oil discharging into navigable waters, not for fire damage, and the Fourth Circuit agreed.  *Id*. at 210-11.  Focusing on the word "such" in the "result from such incident" phrase within OPA § 2702(a) as referring to the "last antecedent," the Fourth Circuit reasoned that "removal costs and damages specified in section 2702(b) are those

---

[23] In *Taira Lynn*, Louisiana argued that none of the claimants at issue in the appeal could recover economic loss damages under OPA because they had no "physical damage caused by the propane/propylene cargo," and OPA "does not provide any avenue for recovery to claimants who have economic loss claims but no physical damage to any property caused by the escaping cargo."  Original Brief of Defendant-Appellant State of Louisiana through the Department of Transportation and Development in *Taira Lynn* at 27-28 (excerpt); *see also* Original Brief of Defendant-Claimant-Appellant, Water Quality Management Insurance Syndicate in *Taira Lynn* at 14-27 (excerpt) for additional context; both attached hereto as Exs. 5, 6.

that result from a discharge of oil or from a substantial threat of a discharge of oil into navigable waters or the adjacent shoreline." *Id.* at 211.  The Fourth Circuit held "[a]s a matter of law, Gatlin Oil cannot recover from the Fund compensation for fire damage because the evidence did not establish that the fire caused the discharge of oil into navigable waters or posed a substantial threat to do so," rather the fire occurred subsequent to the discharge.  *Id.* at 212.

While Louisiana spends three pages arguing that "*Gatlin* is wrongly decided," (La. Mem. 49-52), and three-and-a-half  pages arguing for an interpretation of § 2702(a) that it concedes conflicts with *Gatlin Oil*, (La. Mem. 46-49), the fact of the matter is that the Fifth Circuit sees it differently.  As noted above, the Fifth Circuit expressly relied upon *Gatlin* in *Taira Lynn*.

Contrary to Plaintiffs' and Louisiana's suggestion, the "result from" and "due to" language selected by Congress for OPA plainly impose a proximate cause requirement.  (*See* Pls.' Mem. 68 (contending that "the causation standard under OPA is clearly more relaxed than traditional concepts of 'legal' or 'proximate cause'" and that the terms "result from" and "due to" are not "specialized legal terms").)  ***First***, *Taira Lynn* and *Gatlin Oil* and the NPFC decisions denying drilling moratorium claims make clear from directly construing Sections 2702(a) and 2702(b)(2) that OPA imposes a proximate cause requirement.  *See also Sekco Energy, Inc. v. M/V Chouest*, Civ. A. No. 92-0420, 1993 WL 322942, at *6 (E.D. La. Aug. 13, 1993) ("proximate cause" is required to recover of economic loss damages under OPA).

***Also***, as a general matter, liability statutes such as OPA are properly construed to include a proximate cause requirement unless Congress expressly provides to the contrary, which it had not done here.[24]  Proximate cause requires "some ***direct relation*** between the injury asserted and

---

[24] *See, e.g.*, *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 286-87 (1992) (Scalia, J., concurring) ("[I]t has always been the practice of common-law courts (and probably of all courts, under all legal systems) to require as a condition of recovery, unless the legislature specifically prescribes otherwise, that the injury have been proximately caused by the offending conduct.").

the injurious conduct alleged . . . .   A link that is 'too remote,' 'purely contingent,' or 'indirec[t]' is insufficient."  *Hemi Grp., LLC v. City of New York*, 130 S. Ct. 983, 989 (2010).

*Moreover*, courts have construed statutory provisions similar to OPA Sections 2702(a) and 2702(b)(2) as imposing a proximate cause requirement.  For example, the Ninth Circuit construed a similar causation provision in the Trans-Atlantic Pipeline Authorization Act ("TAPAA"), which authorized recovery of damages "sustained . . . as *the result of* discharges of oil from such vessel" to impose a proximate cause requirement.  *Benefiel v. Exxon Corp.*, 959 F.2d 805, 807 (9th Cir. 1992) (emphasis added) (quoting 43 U.S.C. § 1653(c)(1)).  Affirming a Rule 12(b)(6) dismissal of a TAPAA claim by plaintiffs seeking to recover damages for increased retail gasoline prices they were required to pay as a result of the *Exxon Valdez* oil spill, the Ninth Circuit reasoned:

> the spill itself did not directly cause any injury to the appellants.  Rather, plaintiffs alleged the spill triggered a series of intervening events, including the decision of the United States Coast Guard to close the Port of Valdez to facilitate clean-up efforts . . .

*Id*. at 807-08.  In another opinion arising out of the *Exxon Valdez* spill, the Ninth Circuit similarly held that the proximate cause requirement imposed by TAPAA's "as a result of" language barred claims by "businesses who suffered losses because the impact of the oil spill on their customers caused patronage to decline" and claims by businesses "located outside of the geographic limits of the oil spill" as "too remote."  *Adkins v. Trans-Alaska Pipeline Liab. Fund*, 101 F.3d 86, 89 (9th Cir. 1996).[25]

---

[25] *See also Ballard Shipping Co. v. Beach Shellfish*, 32 F.3d 623, 630 (1st Cir. 1994) (holding Rhode Island Environmental Injury and Compensation Act's extension of liability to "loss of income . . . *as a result of* damage to the natural resources of" the State incorporated "familiar tort limitations of foreseeability and proximate cause"); *Holmes*, 503 U.S. at 268 (the federal RICO statute, which allows for civil damages where the claimant is injured "*by reason of*" conduct that violates the statute, includes a proximate cause requirement); *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 521, 529 (1983) (Clayton Act's language allowing for civil damages where the claimant was injured "*by reason of*" anticompetitive conduct incorporates a proximate cause requirement); *Pan Am. World Airways, Inc. v. Aetna Cas. & Sur. Co.*, 505 F.2d 989, 1006 (2d Cir. 1974)

*Additionally*, OPA's legislative history confirms that Congress intended for OPA to include a proximate cause requirement.  Examples of compensable damages provided in the Conference Report discussing OPA reflect an intent to include a proximate cause requirement that bars recovery for indirect damage claims.[26]

Thus, efforts by Plaintiffs and Louisiana to open recovery under OPA to VoO Plaintiffs and Moratorium Plaintiffs on grounds OPA requires only "but for" causation must be rejected.  Indirect injuries of the type alleged by these B1 Plaintiffs are not recoverable under OPA.[27]

## III.    PLAINTIFFS' STATE LAW CLAIMS AGAINST BP MUST BE DISMISSED.

In response to BP's motion to dismiss Count III (state law claims for trespass, nuisance and fraudulent concealment), Plaintiffs ignore the state law preemption and federal law displacement arguments BP actually makes, and address themselves with great fervor to arguments BP does not make.

---

(interpreting phrase "loss or damage due to or resulting from" in insurance risk policies to "clearly refer[] to the proximate cause of the loss" and to "limit the inquiry to the facts immediately surrounding the loss").

[26] *See, e.g.*, H.R. REP. NO. 101-653, at 103 (1990) (Conf. Rep.) (example of a recoverable economic loss under Section 2702(b)(2)(E) is that "a fisherman may recover lost income due to damaged fisheries resources, even though the fisherman does not own those resources."); 135 CONG. REC. H7954-02, at H7966 (Nov. 2, 1989) (statement of Rep. Studds) ("[V]ictim should receive full compensation issues for ***direct, proven damages***.  This includes governmental cleanup costs, natural resource damages, and ***economic damages to third parties such as fishermen and beachfront property owners***.") (emphasis added).   The legislative history excerpts Plaintiffs cite do not refute the conclusion that Congress intended to include a proximate cause requirement.  (Pls. Mem. 69-73)  Likewise, Plaintiffs are mistaken in seeking to draw an inference the fact that one earlier draft of OPA included the phrase "proximate cause."  There is no indication in the legislative history why the phrase was removed, and there are any number of possible explanations, including that it was deemed superfluous in light of the "result from" and "due to" language finally included in OPA or in light of the presumption that liability statutes contain a proximate cause requirement.  *See Edison Elec. Inst. v. EPA*, 2 F.3d 438, 451 (D.C. Cir. 1993) ("deletion of a word or phrase in the throes of the legislative process does not ordinarily constitute, without more, evidence of a specific legislative intent.").

[27] Louisiana's assertion that its alleged OPA damages satisfy a "proximate cause" test is not ripe.  (La. Mem. 61-62)  Louisiana's OPA claim is not properly before the Court because it did not satisfy OPA's pre-suit presentment requirement before filing its complaint.  Nor is there a pending motion to dismiss Louisiana's OPA claims for any reason let alone on the ground that they do not satisfy a "proximate cause" test  Responses to Louisiana's amended complaint are not due until later this month.

For example, Plaintiffs state:  "Defendants' argument that the OPA is so comprehensive that Congress intended it to occupy the field and thus preempt general maritime law and state remedies, is misplaced."  (Pls.' Mem. 41)  There are many misstatements in that one sentence. BP does ***not*** argue that OPA preempts state law.  What BP argues is (i) that ***OPA <u>displaces</u>*** maritime federal common law (BP MTD Mem. 17), (ii) that the ***Clean Water Act <u>preempts</u>*** all state law claims for economic damages (*id.* at 29-34), and (iii) that ***OCSLA <u>preempts</u>*** the application of non-adjacent state law such as the law of Alabama, Florida, Mississippi, and Alabama, (*id.* at 26-29), and all state law where there is no federal law gap to fill (*id.* at 34-35). Plaintiffs' reference to "occupy[ing] the field" is wrong, too, because BP does not assert OPA field preemption.

Also significant are Plaintiffs' omissions.  They nowhere contest that LOSPRA is their exclusive remedy, if this Court finds a gap in federal law such that Louisiana law is applied as surrogate federal law under OCSLA.Louisiana agrees that LOSPRA applies if an OCSLA gap (in OPA's coverage) is identified.  (*See* La. Mem. 28-29)

### A.    All of Plaintiffs' State-Law Claims Are Preempted by the Clean Water Act.

Neither Plaintiffs nor Louisiana can escape the reality that under the Supreme Court's *Oullette* line of precedent, the law of ***all*** impacted states (Louisiana included) is preempted by the Clean Water Act ("CWA").  (BP MTD Mem. 29-34)Their arguments against preemption are easily addressed.  (Pls.' Mem. 50-53; La. Mem. 11-12, 32-33.)

Plaintiffs swirl displacement and preemption cases together as if they are all of one piece. (Pls.' Mem. 50 ("Defendants rely on *Int'l Paper Co. v. Ouellette*, 479 U.S. 481 (1987), and three opinions issued in one case — *Illinois v. City of Milwaukee*, 406 U.S. 91 (1972) ["*Milwaukee I*"], *City of Milwaukee v. Illinois*, 451 U.S. 304 (1981) ["*Milwaukee II*"], and *Illinois v. City of Milwaukee*, 731 F.2d 403 (7th Cir. 1984), in support of their position.").)  But it is not so.

*Ouellette* is the CWA preemption case on which BP principally relies.  *Ouellette* holds that only the federal NPDES system and the law of the source State (and the *Deepwater Horizon* was not present in any source State, but within a federal enclave) can regulate discharges of pollution within such a State, whereas other States (those impacted) lack the power to regulate water pollution beyond their borders.  *Milwaukee I* and *Milwaukee II* are displacement cases, not preemption cases.

Plaintiffs argue that *Ouellette* and the *Milwaukee* cases all involved "***regulated*** . . . discharge[s] of pollutants."[28]  (Pls.' Mem. 50.)  Similarly, Louisiana claims that BP mistakenly equates the *Deepwater Horizon* oil spill "with a permitted release under the CWA."  (La. Mem. 11) (asserting that because "the release was never permitted under the CWA or any other state or federal statute," "there can be no conflict that gives rise to preemption under the CWA").)

The apparent point of Plaintiffs and Louisiana is that the discharges from the *Deepwater Horizon* were not specifically "regulated," and for that reason *Ouellette* preemption must not apply.  But that is inaccurate.  As noted in BP's motion to dismiss, NPDES General Permit 290000 is applicable to the *Deepwater Horizon*'s activities, which Plaintiffs and Louisiana nowhere contest.  General Permit 290000 imposed regulatory restrictions "rang[ing] from limits on discharges of drilling fluid, oil, well treatment fluids, and produced water and sand, to discharges of garbage and sanitary waste from the human crews of drilling rigs."  (BP MTD Mem. 12 (citing Ex. 14, General Permit 290000).)  Indeed, Louisiana affirmatively relies on General Permit 290000, citing it numerous times concerning restrictions on oil discharge.

---

[28] This claim by Plaintiffs is wrong.  The whole point of *Milwaukee I* is that the discharges at issue were not subject to any particular set of prescriptive CWA standards, but only to a vague abatement process where, if settlement discussions broke down, the U.S. Attorney General was empowered to bring a nuisance suit.  *See Milwaukee I*, 406 U.S. at 102-03 (finding no federal common law displacement caused by the older version of CWA).  The discharges at issue in the *Milwaukee* cases were not regulated by the NPDES permitting regime until Congress later amended the CWA to create that extensive and detailed system.  *See Milwaukee II*, 451 U.S. at 307.  At that point, as *Milwaukee II* held, displacement of federal common law by the CWA began.

(La. Mem. 33)  Thus, this attempt Plaintiffs and Louisiana make to distinguish *Ouellette*, and to confuse matters by mixing in a discussion of displacement cases with *Ouellette* (a case about interstate preemption), falls flat.

Plaintiffs next concede that "the state law of a neighboring state of the pollution source is preempted by the permit [regime] of the CWA." (Pls.' Mem. 51)  Plaintiffs then try to blunt that concession by arguing that source States can impose their own "more stringent standards," *id.* But that point, while true, is irrelevant.  The *Deepwater Horizon* was not located within the waters of Louisiana or indeed of any State.  Its discharges have no source State.  Instead, the *Deepwater Horizon* was operating in exclusively federal waters over the federal enclave known as the Outer Continental Shelf.  *See Moragne v. States Marine Lines*, 398 U.S. 375, 403 n.16 (1970).  Hence, pursuant to *Ouellette*, all States here by definition are "neighboring state[s]" as they stand in relation to the *Deepwater Horizon*, and attempts to apply the law of any such State to regulate the *Deepwater Horizon* as a "pollution source [are] preempted." (Pls.' Mem. 51)

Plaintiffs argue that BP "overstate[s] the holding in *Ouellette*.  The Supreme Court did not hold that the CWA preempts state law entirely . . . .  Thus, while the Supreme Court did not allow the suit to proceed under Vermont state law, it found that an action under New York law would not frustrate the goals of the CWA." (Pls.' Mem. 52)  There is nothing to this point. New York was the ***source State*** on the facts of *Ouellette*.  BP does not dispute that — consistent with *Ouellette* — a discharge occurring ***within*** a State's boundaries is subject to the source State's law as well as to NPDES.  But in this case, the discharge occurred from a rig on federal Shelf waters and from a leaking well 50 miles off the coast of the nearest State and bored 18,360

feet into the submerged lands of the Shelf, an exclusive federal enclave.[29]  New York's powers in *Ouellette* are thus not powers held by any of the receiving-waters/non-source States here.  Each Gulf Coast State is in the same position as Vermont in *Ouellette* — an **impacted State** restrained by CWA preemption.

Plaintiffs' claim there is a distinction between intentional discharges pursuant to NPDES permits (which they concede would be protected by *Ouellette* preemption) and accidental discharges, such as the *Deepwater Horizon* incident, in violation of a NPDES permit (which they posit would be unprotected by such preemption).  (Pls.' Mem. 52)  But *Arkansas v. Oklahoma*, 503 U.S. 107 n.12 (1992), which Plaintiffs' ignore entirely, negates their theory.  *Arkansas* reaffirmed *Ouellette* and reversed a ruling below that "the Clean Water Act prohibits granting an NPDES permit under the circumstances of this case (*i.e.*, where applicable water quality standards [under CWA Section 303, 33 U.S.C. § 1313] **have already been violated**)") (emphasis added).[30]  Indeed, Plaintiffs and Louisiana ignore **every** post-*Ouellette* interstate water pollution case BP cited, all of which are contrary to their new (and never-before adopted) reading of *Ouellette*.[31]

---

[29] Deepwater Horizon Accident Investigation Report, 19 fig. 3 (Sept. 8, 2010) http://www.bp.com/liveassets/ bp_internet/globalbp/globalbp_uk_english/incident_response/STAGING/local_assets/downloads_pdfs/ Deepwater_Horizon_Accident_Investigation_Report.pdf.

[30] Plaintiffs erroneously imply (Pls.' Mem. 52-53) that *Exxon Shipping v. Baker* disapproved of *Ouellette*.  But *Ouellette* is never discussed or even cited in *Baker*; the idea that *Baker sub silentio* overruled *Ouellette* and the unanimous opinion in *Arkansas* expanding on *Ouellette* cannot stand.  *See Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 448 n.4 (2004) (*sub silentio* overrulings of Supreme Court cases by other cases "unlikely"); *Hohn v. United States*, 524 U.S. 236, 252-53 (1998) ("Our decisions remain binding precedent until we see fit to reconsider them . . . .").

[31] Plaintiffs ignore **every one** of these *Ouellette*-inspired cases concerning interstate pollution preemption or the displacement of prior federal common law, which BP cited:  (1) *In re Operation of Mo. River Sys. Litig.*, 418 F.3d 915, 919 (8th Cir. 2005); (2) *Haynes v. Blue Ridge Paper Prods.*, Civ. No. 1:09cv321, 2010 WL 3075738, at *6 (W.D.N.C. Aug. 5, 2010); (3) *Sullivan v. Leaf River Forest Prods.*, 791 F. Supp. 627, 633 (S.D. Miss. 1991); (4) *Lane v. Champion Int'l Corp.*, 827 F. Supp. 701, 702 n.2 (S.D. Ala. 1993); and (5) *State Line Fishing & Hunting Club v. City of Waskom*, 754 F. Supp. 1104, 1113 (E.D. Tex. 1991).  (*See* BP MTD Mem. 32-34.)

Moreover, nothing in *Ouellette* even intimates that its brand of preemption, which is designed to protect the integrity of the NPDES permitting system, evaporates merely if a plaintiff can claim that a defendant permit holder has violated its NPDES permit.  To the contrary, the second count of the complaint in *Ouellette* itself alleged that International Paper was violating its NPDES permit and that such violation allowed Vermont nuisance law remedies to attach.  *See Ouellette v. Int'l Paper Co.*, 602 F. Supp. 264, 266 (D. Vt. 1985), *aff'd*, 776 F.2d 55 (2d Cir. 1984) (*per curiam*), *rev'd*, 479 U.S. 481 (1987).  Yet the Supreme Court found preemption.

Tellingly, Plaintiffs ignore footnote 18 of *Ouellette*, which directly counters their strained theory that accidental violations of NPDES permits void the CWA's conflict preemption protections.  Footnote 18 informs plaintiffs and States trying to invoke the law of a State receiving discharges that their remedies lie exclusively in federal, not state law.  *See Ouellette*, 479 U.S. at 498 n.18 ("If, as was also alleged in respondents' complaint, [International Paper] is ***violating the terms of its permit***, respondents may bring a citizen suit to compel compliance.  33 U.S.C. § 1365.[[32]]  Respondents also had the opportunity to protect their interests before the fact by commenting and objecting to the proposed standard . . . .  [The] Act provides 'ample' opportunity for affected States to protect their rights.") (emphasis added).[33]

---

[32] *See also* BP D1 MTD & D1 Reply Brief (incorporated by reference here) (explaining that no Plaintiff has filed a CWA citizen suit in accord with proper 60-day notice requirements and certainly did not do so before such cases became moot, as well as setting out additional defects in the D1 bundle citizen suits).  The BP D1 briefing explains that citizen suits are subject to special conditions and limitations not applicable to other types of federal causes of action.  Accordingly if Plaintiffs (or Louisiana) are allowed to bring suit under state law, they not only violate *Ouellette*, they are seeking to circumvent the limitations on citizen suit remedies established by the Clean Water Act.

[33] *Arkansas* similarly makes clear that affected States do not lack all recourse as to pollution originating outside of their borders.  While the CWA regime does prevent impacted States from applying their law as if it applied of its own force in the territory of another sovereign, it allows such States to have input into the federal process of formulating CWA permits issued in other States.  *See Arkansas*, 503 U.S. at 100 n.6 (quoting *Ouellette*, 479 U.S. at 490 ("Even though it may be harmed by the discharges, ***an affected State only has an advisory role in regulating pollution that originates beyond its borders***.  Before a federal permit may be issued, each affected State is given notice and the opportunity to object to the proposed standards at a public hearing.") (emphasis added)).  *See also id.* at 492 ("In light of this pervasive regulation and the fact that the control of interstate pollution is primarily a matter of federal law, *Milwaukee I*, 406 U.S. at 107, it is clear that the only state suits that remain available are those

To support their theory that accidental discharges violating NPDES permits lose the benefits of preemption, Plaintiffs rely only on a single case, *Poe v. PPG Indus.*, 2000-1141 (La. Ct. App. 3d Cir. 3/28/2001), 782 So. 2d 1168.  (Pls.' Mem. 52)  *Poe* mentions *Ouellette* offhandedly, but it is neither a preemption case nor a case involving interstate pollution at all; instead, *Poe* involves ***maritime claims*** brought to remedy contamination of a fishery.  Again, to be clear, BP does not argue that *Ouellette* or the CWA overrides maritime law, but rather that *Ouellette* preempts ***impacted state law claims*** against those operating under NPDES General Permit 290000.  *Poe* is irrelevant to whether Plaintiffs' state law claims are preempted by the CWA pursuant to *Ouellette*, and, in any event, is erroneous to the extent it is contrary to the many cases holding that OPA displaces maritime law.  *See supra* Section I.A.

**B.      OCSLA Preempts Plaintiffs' State Law Claims.**

BP makes two points on OCSLA preemption:  (1) OCSLA preempts any attempt to apply state law to Shelf activities, if the State in question is not the "adjacent State" to the relevant Shelf operations (*see* BP MTD Mem. 26-29, 34); and (2) in order for the law of the "adjacent State," Louisiana here, to apply as borrowed federal law, there must initially be a "void" or "gap" that needs filled in federal law, and OPA leaves no such gap for the B1 Plaintiffs' against BP (*id.* 34-35).  Plaintiffs and Louisiana fail to refute this straightforward analysis.

**1.      OCSLA Preempts The Laws Of Non-Adjacent States as to B1 Claims.**

Plaintiffs' non-Louisiana state-law claims must be dismissed.  OCSLA (i) establishes that federal law exclusively governs legal problems arising in connection with operations on the

---

*specifically preserved by the Act*.").  Finally, in point of fact, the States of Louisiana and Texas did exercise their rights under various federal laws to comment on EPA GP 290000.  *See* Notice of Final NPDES General Permit, *Final NPDES General Permit for New and Existing Sources and New Chargers in the Offshore Subcategory of the Oil and Gas Extraction Category for the Western Portion of the Other Continental Shelf of the Gulf of Mexico (GMG290000).*  72 Fed. Reg. 31,575 (June 7, 2007) nothing receipt of comments and correspondence from those States).

OCS; (ii) specifies the state law that should only apply to the Shelf in the case of a "substantial gap" or "void" in federal law; and (iii) bars the application of the law of other States.  *See Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 480-81 (1981); *Tenn. Gas Pipeline v. Houston Cas. Ins. Co.*, 87 F.3d 150, 156 (5th Cir. 1996); *EP Operating Ltd. P'ship v. Placid Oil Co.*, 26 F.3d 563, 569 (5th Cir. 1994).  OCSLA creates a "federal enclave" on the Shelf, to which only federal law applies and on which the law of an "adjacent State" is applicable only to the extent that OCSLA borrows it as gap-filling surrogate federal law.  43 U.S.C. § 1333(a)(1); *see also Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 217 (1986); *Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352, 355 (1969).  The law of non-adjacent States plays no role on the Shelf.

Plaintiffs and Louisiana have no direct response to this analysis.  Instead, they claim: (1) maritime law controls instead of "adjacent State" law under the "*PLT* test," *see Union Tex. Petroleum Corp. v. PLT Eng'g, Inc.*, 895 F.2d 1043, 1047 (5th Cir. 1990) ("*PLT*"), and (2) maritime law should borrow state law to fill in ill-defined areas of maritime law.  Plaintiffs make clear that this would involve *ad hoc* supplementation with law from **each of the Gulf States**.  (Pls.' Mem. 21-30, 53-56; La. Mem. 22-24)

They are wrong about maritime law controlling instead of "adjacent State" law.  As explained above, OPA displaces maritime law as to claims against OPA responsible parties.  *See supra* Section I.A.  As explained below, *see infra* Section III.B.2., the Fifth Circuit in *PLT* requires the application of maritime law only when such law applies "of its own force," 895 F.2d at 1047, and maritime law does not — as a matter of common sense — apply of its own force where it has been displaced by OPA.  The *PLT* test is irrelevant here because that test is **only** for the purpose of selecting whether maritime law or OCSLA "adjacent State" law governs, **when there is a potential choice between the two**.  There is no need for the Court to apply the *PLT* test

here because no such choice is viable: from the outset, OPA displacement precludes the application of maritime law. Similarly, there is no need (or ability) for the Court to apply state law, since it is preempted by the Clean Water Act as interpreted in *Ouellette*.

Even if OPA did not displace maritime law, there is no basis in law for Plaintiffs' *ad hoc* and selective incorporation of state law into maritime law. Such a process would mean that multiple and potentially conflicting state laws could apply to the "efficient exploitation of the minerals of the" Shelf, the protection of which was a "primary reason for OCSLA." *Amoco Prod. Co. v. Sea Robin Pipeline Co.*, 844 F.2d 1202, 1210 (5th Cir. 1988). Maritime law must be uniform and "a hodge-podge of state law rules" would undermine federal policies or statutes. *Aasma v. Am. S.S. Owners Mut. Prot. and Indem. Ass'n*, 95 F.3d 400, 404 (6th Cir. 1996).[34]

Simply put, Plaintiffs make no effort whatsoever to argue that non-Louisiana law can apply to this case *of its own force*, absent incorporation into maritime law. Indeed, Plaintiffs all but concede that a non-adjacent State canot apply its law *of its own force* to conduct that occurs on the OCS.[35] Those concessions are appropriate. Louisiana is the only State whose laws could conceivably be applied in this case to claims arising out of the *Deepwater Horizon* oil spill. The laws of Alabama, Florida, Mississippi, and Texas (or beyond) simply have no application here.[36]

---

[34] *See also Marastro Compania Naviera, S.A. v. Canadian Mar. Carriers, Ltd.*, 959 F.2d 49, 53 (5th Cir. 1992) ("[I]n the absence of federal cases or an established federal admiralty rule on trespass, it would be more appropriate to apply general common law rather than state law which would impair the uniformity and simplicity which is a basic principle of the federal admiralty law.") (quotation marks and citations omitted).

[35] (*See, e.g.*, Pls' Mem. 46 (reasoning that "punitive damages would not be recovered [under state law] where the same conduct causes a discharge of oil from the same drilling vessel four miles from the coast," because only maritime law and not the law of non-adjacent States would apply to the incident); *see also id.* at 30 n.7 (observing that if section 1333(a)(2)(A) applies, then this Court must apply the law of the adjacent State).)

[36] *See* Ex. 7, "Report to the Committee Submitted on Behalf of the Attorney General," S. Rep. No. 83-411, at 31-41 (1953) ("[T]he outer Continental Shelf] is a Federal area, outside State boundaries, and to give the States a sort of extraterritorial jurisdiction over it is unnecessary and undesirable. The situation is not comparable to that of federally owned areas within a State, as to which State law has some measure of applicability."). *See also id.* at 6 (referring to letter from United States Justice Department to Senator Cordon as the "Report to the Committee Submitted on Behalf of the Attorney General").

The OCSLA system of regulation and the very idea of a federal enclave would be nullified if multiple state laws could project statutory or tort duties out onto the Shelf, imposing their own, potentially conflicting obligations on rig owners, lessees, and operators creating a hodgepodge of duties governing the same project or set of operations.  Congress cannot have intended such a chaotic system of regulation.

### 2.        OCSLA Preempts Plaintiffs' Louisiana Law Claims Against BP.

OCSLA only borrows "adjacent State" law to fill a "gap" in federal law.  Plaintiffs correctly observe that this Court must apply 43 U.S.C. § 1333(a)(2)(A) to determine the substantive law that applies in this case (Pls.' Mem. 21-22), but they fail to recognize that "adjacent State" law cannot apply against BP because there is no "gap" to fill.  (*See* La. Mem. 29 (agreeing with BP that "federal law governs actions under OCSLA to the extent that there is applicable federal law; however, if there is gap in the federal law, the law of the adjacent state is used as a gap-filler") (quotation marks and citations omitted).)  OPA provides a comprehensive set of remedies for parties with economic injuries against BP.

Neither Plaintiffs nor Louisiana explains how there can be an OCSLA gap relevant to B1 Bundle claims of injury against BP in light of OPA.Instead, Plaintiffs and Louisiana discuss the Fifth Circuit's "*PLT* test," which addresses the circumstances under which "adjacent State" law (rather than maritime law) applies as surrogate federal law under OCSLA.  (Pls.' Mem. 21-26; La. Mem. 21-24.)  Under the *PLT* test, "adjacent State" law applies as surrogate federal law if (1) the controversy arises on a *situs* covered by OCSLA; (2) Federal maritime law does not apply of its own force; and (3) state law is not inconsistent with federal law.  *See* 895 F.2d at 1047; *Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778, 783 (5th Cir. 2009) (*en banc*). The *PLT* test cited by Plaintiffs and Louisiana is **irrelevant** to Plaintiffs' claims against BP.  For

one thing, maritime law does not apply of its own force because OPA displaces such law.  For another, there is no "gap" in federal law requiring application of surrogate state law.

To the extent that the *PLT* test has **any relevance** to the claims in the B1 Master Complaint, it is to determine the law under which Plaintiffs may bring suit against those who are **not** "responsible parties" under OPA.  In this regard, BP respectfully submits that Plaintiffs incorrectly apply the factors in the *PLT* test.  Under a proper application of the *PLT* factors, "adjacent State law" under OCSLA — here, Louisiana law[37] — governs Plaintiffs' claims against OPA non-responsible parties to the extent that there is a "gap" in federal law, not maritime law.

Under the first *PLT* factor, the *Deepwater Horizon* was a "*situs*" within the meaning of OCSLA.  Plaintiffs contend that "the *Deepwater Horizon* was a vessel for all maritime-law purposes" (Pls.' Mem. 24), but that analysis is incomplete.  The Fifth Circuit has squarely said that "the use of the term 'temporarily' [in the OCSLA statute] implies that devices that can detach from the seabed and are capable of movement on the sea — *i.e.*, vessels — can fall within the scope of the OCSLA," *Demette v. Falcon Drilling Co.*, 280 F.3d 492, 498 n.19 (5th Cir. 2002), *overruled in irrelevant part by Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778 (5th Cir. 2009); *Ebanks v. Offshore Lifeboats, LLC*, 2009 WL 3834365 (E.D. La 2009) (applying *Demette* and stating that "an offshore oil drilling platform that is temporarily or

---

[37] Contrary to Plaintiffs' assertion (Pls.' Mem. 30 n.7), there is no "significant question" as to the "adjacent State" here; it is Louisiana.  (*See* BP MTD Mem. 28-29 n.20; La. Mem. 29 ("In the present case, it is beyond dispute that Louisiana qualifies as the 'adjacent' state for purposes of gap-filling state law.").)  Courts within the Fifth Circuit routinely resolve factual issues with respect to which State is "adjacent" at the motion-to-dismiss stage.  *See, e.g.*, *Guidry v. Mobil Oil Exploration and Producing Se.*, No. Civ. A. 98-0534, 2000 WL 278091, at *1-2 (E.D. La. Mar. 13, 2000) (noting 12(b)(6) portion of decision: "OCSLA applies and plaintiff's claims would be properly asserted under Louisiana law and not under general maritime law as plaintiff has done"), *Graham v. Freeport Sulphur Co.*, 962 F. Supp. 82, 85 (E.D. La. 1997) ("the Court determines that the OCSLA applies to plaintiff's claims against Acadian and that Louisiana state law applies as surrogate federal law").  But, BP has no objection to targeted discovery on this issue, if deemed necessary.

permanently attached to the seabed is considered an OCSLA situs").  Moreover, the

*Deepwater Horizon* was a mobile offshore drilling unit ("MODU") under OPA.[38]  As a MODU

in use as an offshore facility at the time of the incident, over Shelf waters, the

*Deepwater Horizon* clearly qualified as an "Outer Continental Shelf facility," and thus as an

OCSLA *situs*.

Also, Plaintiffs admit that the *Deepwater Horizon* was connected via a riser to the

wellhead on the OCS.  (Pls.' Mem. 24)  That is all that is necessary to establish OCSLA *situs*

status.  *See, e.g., Energy XXI, GOM, LLC v. New Tech Eng'g, LP*, Civ. A. No. H-10-00110,

2011 WL 11197, at *3 (S.D. Tex. Jan. 3, 2011) ("alleged torts arose on a structure permanently

or temporarily attached to the seabed on the Outer Continental Shelf, as the workstring was

caught in the Well, which is located on the Outer Continental Shelf").  Moreover, "[u]nder the

conference report language, ***Federal law is to be applicable to all activities on <u>all devices</u> in***

***contact with the seabed for exploration, development, and production***."  H.R. REP. NO. 95-

1474, at 80 (1978) (Conf. Rep.) (emphasis added).[39]  And while Plaintiffs focus on the

*Deepwater Horizon* as the exclusive source of the spill, after that MODU sank, the leak

continued from the subsea well, clearly an offshore facility embedded within the Shelf.  The well

was indisputably an OCSLA *situs*.

---

[38] *See* OPA, 33 U.S.C. § 2701(9) (defining "facility"), (18) (defining a "MODU" as a "vessel (other than a self-elevating lift vessel) capable of use as an offshore facility"), (22) (defining "offshore facility"), (25) (defining ***"Outer Continental Shelf facility"*** as an "offshore facility which is located, in whole or in part, on the Outer Continental Shelf and is or was used for one or more of the following purposes: exploring for, drilling for, producing, storing, handling, transferring, processing, or transporting oil produced from the Outer Continental Shelf") (emphasis added).

[39] Plaintiffs' cases are not to the contrary.  They explain only that "[a] jack-up rig that is not jacked up [*i.e.*, not connected in any way to the Shelf] . . . does not necessarily constitute an OCS situs," *Sanamo v. Trico Marine Servs.*, No. 02-31072, 2003 WL 21756647, at *3 (5th Cir. June 24, 2003), and that a rig "attached to the OCS only by an anchor" is not a *situs*, *Demette*, 280 F.3d at 499-500.  Plaintiffs cite no cases that contradict the common-sense proposition that a platform attached to the OCS through a pipe facilitating the transfer of oil is "temporarily attached" to the Shelf.

As for the second *PLT* factor, maritime law does not apply of its own force because OPA displaces Plaintiffs' maritime law claims that fall within the scope of OPA, as the B1 Bundle claims undoubtedly do.  *See supra* Section I.A.  And, with regard to the third *PLT* factor, there can be nothing "inconsistent with federal law" — indeed, it fills a "gap" in federal law — for those not defined as "responsible parties" under the OPA.

In sum, this outcome of the *PLT* test in which the law of "adjacent State" applies for B1 Bundle claims against those who are ***not defined as*** "responsible parties" under OPA makes sense of Fifth Circuit case law and OCSLA's statutory provisions.  It also makes practical sense. Contrary to Plaintiffs' position, OCSLA does not permit application of a plethora of state laws to activities on the Shelf, nor does it allow Plaintiffs to pick and choose those state laws that they believe to be most favorable for such extraterritorial application.  Rather, OCSLA points to application of a single determinate federal law, which is OPA against "responsible parties" such as BP — and Plaintiffs undeniably may bring claims under OPA against BP.  At the same time, this analysis avoids the pitfall of implausibly placing parties who are not designated "responsible parties" under OPA into a "safety zone" in which Plaintiffs have no possible cause of action against them.  To the contrary, Plaintiffs may recover under "adjacent State" law (here, Louisiana law) against such parties, thereby avoiding the implausible conclusion that Congress wanted to entirely absolve such parties from liability for their role in Shelf oil spills.[40]

---

[40] The analysis of OCSLA versus maritime choice of law presented here is focused exclusively on the claims of B1 Plaintiffs, and not claims by BP against co-defendants.  OPA expressly provides responsible parties such as BP with federal contribution and subrogation remedies, *see* 33 U.S.C. §§ 2709, 2715, and preserves non-OPA claims that a responsible party has against other parties.  *See* 33 U.S.C. § 2710(c) ("Nothing in this Act, including the provisions of subsection(b) of this section [preventing indemnification agreements from transferring OPA liability], bars a cause of action that a responsible party subject to liability under this Act, or a guarantor, has or would have, by reason of subrogation ***or otherwise, against any person***.") (emphasis added).  Therefore, by its plain language, OPA does not displace maritime law claims that BP may have against other parties.

**C.    OPA's Preemption Savings Clauses Are Irrelevant to the Operation of CWA and OCSLA Preemption.**

Plaintiffs devote many pages to arguing that the OPA preemption savings clauses cushion all of their state law claims.  (Pls.' Mem. 30-50)Louisiana also argues that because "OPA is the federal law applicable to oil spills," OPA's savings clauses preserve Plaintiffs' ability to bring state-law causes of action, notwithstanding the preemptive effect of OCSLA and the CWA.  (La. Mem. 11)  These arguments miss the mark, first and foremost, because BP does not argue that OPA preempts Plaintiffs' state law claims.

Instead, BP argues that OCSLA and the Clean Water Act (as interpreted in *Ouellette* and *Arkansas*) preempt Plaintiffs' state law claims.

Plaintiffs and Louisiana nevertheless claim that OPA's savings clauses "save" Plaintiffs' state-law claims from the preemptive effect of other statutes.  That is wrong.  It is elementary that OPA's savings clauses are irrelevant to adjudicating preemption by CWA and OCSLA because they only save the relevant categories of state law claims *from preemption **by OPA*** (and certain other statutes, such as the Limitation Act).  None of OPA's three savings clauses have any application to CWA or OCSLA preemption because on their plain text they apply only to save certain state law claims from OPA preemption.  *See* 33 U.S.C. § 2718(a) ("***Nothing in this Act*** or the Act of March 3, 1851 [the Limitation Act] shall . . . .") (emphasis added); 33 U.S.C. § 2718(b) ("***Nothing in this Act*** or in section 9509 of Title 26 [the Oil Spill Liability Trust Fund] shall . . . .); 33 U.S.C. § 2718(c) ("***Nothing in this Act***, the Act of March 3, 1851 (46 U.S.C. 183 *et seq.*), or section 9509 of Title 26, shall . . . .").  Plaintiffs and Louisiana ignore these textual limitation on OPA's savings clauses entirely.

The Supreme Court in *Ouellette* read the relevant CWA savings clause plaintiffs sought refuge behind in that case in a similar way to how OPA's saving clauses must be read here.

*Ouellette* held there that a savings clause framed in terms of "**nothing in this section**" was, by its

term, and basic common sense limited to preemption **caused only by that section**.  *See*

479 U.S. at 493 (the clause "does not purport to preclude pre-emption of state law by other

provisions of the Act").  The same analysis applies here.  In addition, unless savings clauses

explicitly state otherwise, they do not prevent the ordinary operation of conflict preemption as

found in cases such as *Ouellette*.  It would be quite a feat for one statute (OPA), by silence, to

strip a different statute (the CWA) of the obstacle preemption necessary for that other statute to

operate.  For instance, just weeks ago in *AT&T Mobility LLC v. Concepcion*, No. 09-893,

2011 WL 1561956, at *7 (U.S. Apr. 27, 2011) (emphasis added), the Supreme Court declared

forcefully:

> *Although § 2's saving clause preserves generally applicable contract defenses, nothing in it suggests an intent to preserve state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives.*  *Cf. Geier v. American Honda Motor Co.*, 529 U. S. 861, 872 (2000); *Crosby v. National Foreign Trade Council*, 530 U. S. 363, 372–73 (2000).  As we have said, a federal statute's saving clause "'cannot in reason be construed as [allowing] a common law right, the continued existence of which would be absolutely inconsistent with the provisions of the act.  In other words, the act cannot be held to destroy itself.'"

*American Telephone & Telegraph Co. v. Central Office Telephone, Inc.*, 524 U. S. 214, 227–228

(1998) (quoting *Texas & Pacific R. Co. v. Abilene Cotton Oil Co.*, 204 U. S. 426, 446 (1907)).

   Plaintiffs and Louisiana next argue that *United States v. Locke*, 529 U.S. 89 (2000), saves

their claims from preemption.  (Pls.' Mem. 33-34; La. Mem. 15, 16, 19, 27-28.)  But *Locke*

involved a **successful claim of preemption against** Washington State regulation of oil tankers,

despite OPA's savings clauses.  In *Locke*, the Supreme Court unanimously **reversed** a

Ninth Circuit decision finding that OPA's savings clauses protected state laws from preemption.

"The Court of Appeals placed more weight on the saving clauses than those provisions can bear,

either from a textual standpoint or from a consideration of the whole federal regulatory scheme

of which OPA is but a part." *Locke*, 529 U.S. at 105. Thus, *Locke* held that the federal Ports and Waterways Safety Act ("PWSA") preempted Washington State regulations concerning design and construction of tankers (and certain other state law provisions). *See id.* at 107. The Court explained that "explicit qualifiers [in the OPA savings clauses] are inconsistent with interpreting the saving clauses to alter the pre-emptive effect of the PWSA or regulations promulgated thereunder." *Id.* at 106.[41] For precisely the same reasons, OPA's savings clauses do not alter the preexisting CWA preemption recognized in *Ouellette*, which was decided several years before OPA was passed — let alone the preemptive effect created by OCSLA, which clearly makes inapplicable the law of non-adjacent States.[42]

Louisiana's arguments further falter because Louisiana reads too much into the changes that OPA made to the preexisting statutory regime, while conveniently ignoring the textual limitation of the savings clauses to OPA preemption in 33 U.S.C. § 2718. It is clear that, as Louisiana argues, "[w]ith OPA, Congress consolidated the existing federal oil spill statutes under one program and made conforming amendments to the CWA, OCSLA, and other laws." (La. Mem. 14) And it is also clear, as Louisiana argues, that OPA "is the exclusive, unified federal

---

[41] *Locke* did allow to Washington State the ability to regulate "**local ports and waters under appropriate circumstances**," *id.* at 108-09 (emphasis added). But the Supreme Court stressed that Washington's powers in **federal waters** and over other predominantly **federal matters** of regulatory concern were far more likely to be subject to conflict preemption: "The state laws now in question bear upon national and international maritime commerce, and in this area there is no beginning assumption that concurrent regulation by the State is a valid exercise of its police powers. Rather, we must ask whether the local laws in question are consistent with the federal statutory structure, which has as one of its objectives a uniformity of regulation for maritime commerce." *Id.* at 108 (emphasis added). On the facts of the *Deepwater Horizon* incident on the Shelf, *Locke* similarly bars the Plaintiffs here from attempting to rely on a claimed presumption against preemption. OCSLA's regulatory structure, in particular, is a very strong uniform federal system of exclusive federal regulation for the Shelf enclave.

[42] Plaintiffs last argument — that under BP's logic, Jones Act claims would be preempted —is incorrect. (Pls.' Mem. 33, 41 n.20) They confuse the lines between the distinct legal categories of preemption, displacement and implied repeals. OPA can and does displace maritime federal common law. State law is preempted by both the CWA and OCSLA. But the Jones Act is a federal statute; it is not federal common law or state law. The Jones Act is protected by the presumption against implied repeals. *J.E.M. AG Supply v. Pioneer Hi-Bred Int'l*, 534 U.S. 124, 142 (2001). BP's displacement or preemption arguments do not threaten the validity of the Jones Act.

legislation" that establishes any liability for responsible parties arising out of the *Deepwater Horizon* oil spill.  (*Id.*)  Indeed, that is precisely why — as BP has observed — OPA is a comprehensive statute that displaces federal common law, such as maritime law.

But it is equally clear that OPA did ***not*** amend Section 1333(a)(2)(A) of OCSLA, and that this provision applies here.  Louisiana's argument rests upon the mistaken premise that, because OPA supplanted the preexisting liability provisions contained in OCSLA (*see* La. Mem. 14), it also somehow supplanted those provisions that it did ***not*** amend, such as section 1333(a)(2)(A).  That is not true.  To the contrary:  Where a statute (such as OPA) changes certain provisions in OCSLA and not others, Congress should be presumed to have kept the unchanged provisions in place.  Here, Louisiana never disputes (1) that Congress did not change Section 1333(a)(2)(A) of OCSLA in enacting OPA; (2) that Section 1333(a)(2)(A), by its terms, applies to the *Deepwater Horizon* oil spill, or (3) that, under Section 1333(a)(2)(A), Louisiana law applies to the oil spill only to the extent that there is a "gap" in federal law.[43]

For the same reason, Louisiana is mistaken when it claims that BP "argue[s] that Louisiana's laws and maritime claims do not apply because [OCSLA] renders meaningless [OPA's] savings clauses."  (La. Mem. 10)  BP's argument does not render those clauses meaningless.  To the extent that the savings clauses are applicable, they "save" state-law claims from preemption ***only by OPA***.  OPA's savings clauses say nothing about the preemptive effect of other statutes, such as OCSLA or the CWA.

---

[43] For example, the Supreme Court opined:  "While a later enacted statute can sometimes operate to amend or even repeal an earlier statutory provision, "repeals by implication are not favored and will not be presumed unless the 'intention of the legislature to repeal [is] clear and manifest.' . . . . .  We will not infer a statutory repeal 'under the later statute 'expressly contradict[s] the original act' or unless such a construction 'is absolutely necessary . . . in order that [the] words [of the later statute] shall have any meaning at all.  *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 662-63 (2007) (citations omitted); s*ee also Bilski*, 130 S.Ct. at 3218 ("canon against interpreting any statutory provision in a manner that would render another provision superfluous . . . .  applies to interpreting any two provisions in the U.S. Code, even when Congress enacted the provisions at different times.").

It is telling that Louisiana fails to recognize that *Locke* does not support their position that OPA's savings clause preserve all state law causes of action involving an oil spill, but instead fully supports BP's position that the preemption established by other statutes in preexisting cases are unaffected by OPA.  Louisiana is trying to blend together different federal statutes, which, while related, also operate with continued independent force.

The Plaintiffs and Louisiana cite cases recognizing, on the basis of the savings clauses in OPA Section 2718, that OPA does not preempt state law.  (Pls.' Mem. 31-33; La. Mem. 15-16) These cases also do not address the OPA savings clauses' impact on preemption established by other federal statutes, including the CWA and OCSLA.  There appears to be a simple reason for this — none of the prior cases involve either (1) an interstate oil spill (and thus have no reason to discuss *Ouellette*) or (2) an oil spill on a federal enclave such as the Shelf or in exclusively federal ocean waters (and thus have no reason to discuss OCSLA).[44]

### D.    Even If OPA's Savings Clauses Could Save CWA-Preempted or OCSLA-Preempted Claims, Which They Cannot, They are Textually Inapplicable.

Plaintiffs and Louisiana read the OPA savings clauses as if their plain text were limited only to the snippets they take out of context from OPA Section 2718:  *first*, they posit 33 U.S.C. § 2718(a)(2) says that the "obligations or liabilities of any person under . . . State law,

---

[44] Cases involving land-based spills or spills into state waters plainly cannot support the application of OPA's savings clauses as against *Ouellette* preemption when spills beyond state jurisdiction are involved.  For instance, in *Isla Corp. v. Sundown Energy, LP*, Civ. A. No. 06-8645, 2007 WL 1240212, at *2 (E.D. La. Apr. 27, 2007), a land-based spill was involved where *Ouellette* would not have barred the application of Louisiana tort law.  And in *Seaboats, Inc. v. Alex C Corp.*, Nos. Civ. A. 01-12184-DPW, 01-12186-DPW, 00-12500-DPW, 2003 WL 203078, at *4 (D. Mass. Jan. 30, 2003), the court noted OPA's savings clauses applied in a case involving a spill in the Boston Harbor.  *See also Russo v. M/T Dubai Star*, No. C 09-05158 SI, 2010 WL 1753187, at *1 (N.D. Cal. Apr. 29, 2010) (suggesting OPA indiscriminately saves tort causes of action from federal preemption, but involving a spill in the San Francisco Harbor); *Williams v. Potomac Elec. Power Co.*, 115 F. Supp. 2d 561, 563 (D. Md. 2000) (discharge from land pipeline into a creek); *Dostie Dev., Inc. v. Arctic Peace Shipping Co.*, No. 95-808-CIV-J-MMP, 1996 WL 866119, at *3 (M.D. Fla. Aug. 14, 1996) (spill from tanker docked at an oil terminal); *Nat'l Shipping Co. of Saudi Arabia (NSCSA) v. Moran Mid-Atl. Corp.*, 924 F. Supp. 1436, 1448 (E.D. Va. 1996) (spill resulting from collision on a river); *Complaint of Nautilus Motor Tanker Co.*, 900 F. Supp. 697, 699 (D.N.J. 1995) (spill resulting from a tanker running aground).

including common law" shall not be preempted; and **second**, they posit that

33 U.S.C. § 2718(c)(1) says that "the authority of . . . any State or political subdivision . . . to

impose additional liability or additional requirements," shall not be preempted.  But as the liberal

use of ellipses and added language in the paraphrased text above suggests, that is not what these

OPA subsections actually say.  The clauses must instead be read by focusing on their text.

"[T]he best evidence of Congress' intent with respect to the relevant issue is found in the text of

the statute itself."  *Sea-Land Serv., Inc. v. United States*, 874 F.2d 169, 172 (3d Cir. 1989).

OPA contains three subsections of preemption savings clauses.  *See* 33 U.S.C. § 2718(a)-

(c).  Initially, it should be observed that if Congress's intent was simply to preserve all state law

and especially state tort law from preemption (especially as to preemption caused by other

statutes), it would have written a very simple sentence or two in a single, no-muss/no-fuss

savings clause.  Congress did not do that.  Review of each of the subsections of Section 2718

reveals much greater complexity and care in drafting and complexity in the statute Congress

wrote:

- **Section 2718(a)(1) Does Not Save, as It Applies Only to Discharges to State Waters.**  OPA Section 2718(a)(1), by its plain terms, preserves only for oil discharges to state waters.  *See* 33 U.S.C. § 2718(a)(1) (applying only to "the discharge of oil or other pollution by oil ***within such State***") (emphasis added); *id.* § 2718(a)(2) (applying only to "any removal activities in connection with ***such a discharge***") (emphasis added).  In other words, Section 2718(a)(1) is consistent with reading the savings clauses not to authorize extraterritorial regulation by the States, which is unremarkable.

- **Section 2718(a)(1) Does Not Save, as It Applies Only to the Disposal of Oil or Cleanup-Related Wastes in State Territory.**  OPA Section 2718(a)(2) states only that nothing in OPA or the Limitation Act of 1851 shall "affect, or be construed or interpreted to affect or modify in any way the obligations or liabilities of any person under the Solid Waste Disposal Act (42 U.S.C. 6901 *et seq.*) or State law, including common law."  Context is important.  Section 2718(a)(2) preserves state common law that operates similarly to the federal Solid Waste Disposal Act, which regulates waste disposal on land.  *See, e.g., Freeman v. Quicken Loans, Inc.*, 626 F.3d 799, 804 (5th Cir. 2010)

(affirming decision of Barbier, J.) (traditional canon of statutory interpretation, *noscitur a sociis*, means that statutory concepts grouped in a list should be given a related meaning, so as to avoid giving unintended breadth to a statute that legislators did not authorize).

- **Section 2718(b) Does Not Save, as It Applies Only to the Creation by a State of an Oil Spill Cleanup or Compensation Fund.**  OPA Section 2718(b) states only that "Nothing in this Act or in section 9509 of Title 26 [which establishes the federal Oil Spill Liability Trust Fund] shall in any way affect, or be construed to affect, the authority of any State — (1) to establish, or to continue in effect, a fund any purpose of which is to pay for costs or damages arising out of, or directly resulting from, oil pollution or the substantial threat of oil pollution; or (2) to require any person to contribute to such a fund."  The B1 Master Complaint does not implicate the authority of a State to establish its own fund.  Nor does the B1 Master Complaint embody an action to compel BP to contribute to such a state fund.  The B1 Master Complaint seeks recoveries that will flow into private hands directly and not into any sort of state statutory fund.

- **Section 2718(c)(1) Does Not Save State Common Law Causes of Action, as It Applies Only to Statutory Liability or Additional Requirements.**  OPA Section 2718(c) states only that nothing in OPA or the Oil Spill Liability Trust Fund "shall in any way affect, or be construed to affect, the authority of . . . any State or political subdivision thereof — to impose additional liability or additional requirements."  As with all of the OPA savings clauses, Section 2718(c) does not apply to preemption established by statutes other than OPA (or in this case also by the statute establishing the federal Oil Spill Liability Trust Fund).  Even if that were not true, it could not save any common law claims.  Unlike OPA Section 2718(a)(2), Section 2718(c)(1) does not refer to common law claims.  Moreover, in preemption provisions, the term "requirements" is often read in proper context to leave out common law claims.  *See Spriestma v. Mercury Marine*, 537 U.S. 51, 62-64 (2002) (reading preemption provision referring, as in OPA Section 2718(c)(1), to "imposing a requirement" as referring only to positive enactments such as statutes or regulations and not to common law); *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 489-90 (1996) (plurality) (use of the word "requirements" in the Medical Device Amendments suggests that it is focused on "enactments of positive law by legislative or administrative bodies, not the application of general rules of common law by judges and juries").

- **Section 2718(c)(2) Does Not Save, as It Applies Only to Fines or Penalties.**  OPA Section 2718(c)(2) allows the States only "to impose, or to determine the amount of, any fine or penalty (whether criminal or civil in nature) for any violation of law."  The B1 Master Complaint is not a penalty recovery action filed by a government enforcer, and thus this is an irrelevant savings clause.

From any angle the matter is studied, the OPA savings clauses are irrelevant.  They

provide no shielding effect for state law against CWA or OCSLA preemption.  And even if they

did, they are designed to protect state authority for spills occurring in state waters, not to grant

States the license to regulate Shelf conduct.

### E. If Louisiana Law Is Borrowed, Plaintiffs Have No Valid Louisiana Claims.

#### 1. LOSPRA Would Be Plaintiffs' Exclusive Remedy.

Plaintiffs failed to assert a LOSPRA claim in the B1 Master Complaint. In their

opposition brief, they fail to address BP's argument that LOSPRA is their exclusive remedy if

Louisiana law applies and preempts, as a matter of state law, application of other Louisiana

statutes or civil-law analogues to common-law tort. Indeed, Louisiana has now filed a brief with

this Court that makes clear that the Louisiana civil code, through LOSPRA, makes available an

avenue for recovery under Louisiana state law, when federal law allows it to apply. (*See*, *e.g.*,

La. Mem. 12 (damages resulting from the spill "are recoverable pursuant to OPA and the

Louisiana Oil Spill Prevention and Response Act"); *id.* at 28-29 (explaining that plaintiffs can

bring "in Louisiana's case, civil code" claims where there is a "gap" under OCSLA).)

In short, LOSPRA is B1 Plaintiffs' exclusive remedy if this Court finds a gap in federal

law such that Louisiana law, the law of the adjacent state, is borrowed as surrogate federal law

pursuant to OCSLA. (BP MTD Mem. 36-37) Having failed to bring a claim for LOSPRA,

however, Plaintiffs simply have brought no viable state-law claims in the B1 Master Complaint.

#### 2. Plaintiffs' Nuisance And Trespass Claims Fail Under Louisiana Law.

Plaintiffs do not dispute that they have failed to allege the prerequisites for a nuisance

claim under Louisiana law. (*See* BP MTD Mem. 37-39) As to trespass law, Plaintiffs argue that

not only owners but also lessees may assert claims, and the law is undeveloped in this regard.

Plaintiffs admit a physical invasion of the property is required. (Pls.' Mem. 79-83) Thus, at a

minimum, the Plaintiff groups asserting trespass claims are overbroad; they include Plaintiffs

who are not owners or lessees and those with no physical invasion to their property.  (BP MTD Mem. 39-40)

### 3. Plaintiffs' Fail To State A Claim For Fraudulent Concealment.

Plaintiffs devote 16 pages to an attempt to resuscitate their fraudulent concealment claim (Count III.C), but their words are no cure for the fundamental defects of the claim.  Even if not preempted, their claim must be dismissed pursuant to FRCP 8, FRCP 9(b) and FRCP 12(b)(6).

*First*, if Plaintiffs' protestations of compliance with *Twombly* and *Iqbal* are put aside (Pls.' F. Mem. 3) and focus is placed on the complaint, it is clear Plaintiffs do not supply the factual allegations FRCP 8 requires.  They do not allege facts to support (i) a BP duty to disclose to them, (ii) their justifiable reliance on BP, (iii) their awareness of misrepresentations or omissions by BP, or (iv) how BP statements or omissions were material to them.  (B1 Compl. ¶¶ 713, 723, 729)  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*).[45]  These are facts, if they did exist, that are within Plaintiffs' knowledge.

*Second*, Plaintiffs do not plead with particularity the alleged misrepresentations including the times, places, and content of misrepresentations, the speakers, how they were mislead, or what BP obtained as required by FRCP 9(b).  *See Williams v. WMX Techs.*, 112 F.3d 175, 177 (5th Cir. 1997); (B1 Compl. ¶¶ 480-81, 714-15, 720).  Nor do Plaintiffs plead facts required for

---

[45] Plaintiffs claim that *Matrix Initiatives* changes pleading standards to relieve plaintiffs of a need to plead facts as long as discovery might be reasonably promising is unfounded.  (Pls.' F. Mem. 3 n.3, 8 (citing *Matrix Initiatives, Inc. v. Siracusano*, 2011 U.S. LEXIS 2416 (U.S. Mar. 22, 2011)  *Matrix* answers the narrow question of whether a non-statistically-significant number of adverse event reports to a pharmaceutical company can fails the threshold for constituting a "material omission" as a matter of law.  *See id.* at *6-7.  The Supreme Court clearly has rejected Plaintiffs' contention.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) ("the question presented on a motion to dismiss a complaint for insufficient pleadings does not turn on the controls placed upon the discovery process."); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559-60 (2007) ("It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through careful case management given the common lament that the success of judicial supervision in checking discovery abuse has been on the modest side.").

omissions including type of facts omitted, where they should have appeared and the way the omitted facts made a statement misleading as required by FRCP 9(b). *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1174 (5th Cir. 2006); (B1 Compl. ¶¶ 337, 344-45, 348-49, 431-32, 724). Claiming to meet FRCP 9(b) does not make it so. (Pls.' F. Mem. 4-8)

**Third**, FRCP 12(b)(6) dismissal is required over Plaintiffs' objections (Pls.' F. Opp. 11-12) because they do not allege facts establishing a deliberate misrepresentation or omission by BP, nor any BP intent to deceive B1 Plaintiffs.[46] While intent may be generally pled, Plaintiffs must at least set forth "specific facts that support an inference of fraud." *United States ex rel. Willard v. Humana Health Plan of Tex.*, 336 F.3d 375, 385 (5th Cir. 2003). The BP motives alleged here — avoiding fines and costly delays and Exploration Plan approval — suggest intent, if any, to deceive regulators, not B1 Plaintiffs. Nor can motive be inferred from the for-profit nature of corporations. (B1 Compl. ¶¶ 432, 480) *See Flaherty & Crumrine Preferred Income Fund v. TXU Corp.*, 565 F.3d 200, 213 (5th Cir. 2009) ("motives . . . universal to corporations . . . do not suffice to establish an inference of fraud under Rule 9(b).").

**Fourth**, Plaintiffs' claim to have pled reliance is not born out in the Complaint. (Pls.' F. Mem. 12-13) Plaintiffs do not allege awareness of any of BP's alleged misstatements or omissions. *See Johnson v. Seacor Marine Corp.*, 404 F.3d 871, 878 (5th Cir. 2005) (knowledge is a predicate to reliance). Nor have Plaintiffs alleged facts to show BP intended, or had "special reason to expect" B1 Plaintiffs to act on the alleged misrepresentations. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 322-23 (5th Cir. 2002).

---

[46] *See Mills v. Damson Oil Corp.*, 931 F.2d 346, 349 (5th Cir. 1991) ("[I]ntent that the falsity be acted on by the victim, in the manner reasonably contemplated, is indispensable to a fraud action . . . [and] separate from the issue of the speaker's knowledge of the falsity or his ignorance of the truth.").

***Finally***, Plaintiffs failed to allege any duty to disclose that BP owed to them.  (B1 Compl. ¶¶ 721, 724, 729; Pls.' F. Mem. 15-17)  There is no general duty to disclose; a party can be liable for fraudulent omissions only where a duty to disclose arises from a fiduciary or other special relationship of confidence, and none exists here.  *Chiarella v. United States*, 445 U.S. 222 (1980) (rejecting that there is a duty to disclose anytime one has material, nonpublic information); *Becnel v. Grodner*, 2007-1041 (La. Ct. App. 4 Cir. 4/2/08), 982 So. 2d 891, 894 ("[T]here is no general duty to speak . . . .").  The existence of a duty to disclose is a "legal question."  *Kadlec Med. Ctr. v. Lakeview Anesthesia Assocs.*, 527 F.3d 412, 423 (5th Cir. 2008).

### F.  Even If Florida Law Was Not Preempted, The Florida PDPCA Would Not Apply.

The Florida Pollutant Discharge and Control Act is inapplicable here.  Plaintiffs' PDPCA claim (Count III.D.) must be dismissed even if not preempted.  (BP MTD Mem. 42-45)

***First***, the express terms of the PDPCA render it inapplicable to the indirect damages Plaintiffs seek.  In response, Plaintiffs contend PDPCA Section 376.205, creating a private right of action for damages from pollution of coastal waters and lands, does not limit the type of damages recoverable.  (Pls.' Mem. 83-87)  However, Section 376.205 only permits recovery of "damages, ***as defined in s. 376.031***," and Section 376.031 expressly limits the type of damages recoverable.  *See* Fla. Stat. § 376.031(5) ("'Damage' means the documented extent of any ***destruction to or loss of any real or personal property*** . . . as ***the direct result of*** the discharge of a pollutant.").  Plaintiffs next contend that PDPCA Section 376.313 is "analogous" to PDPCA Section 376.025, so that cases interpreting Section 376.313 are equally applicable to Section 376.025.  (Pls. Mem. 85-86)  But Section 376.313 is the damages provision for a different antipollution law within the PDPCA addressing pollution to ground and surface waters, and its express terms are different than Section 376.025.  *See Curd v. Mosaic Fertilizer, LLC*, 39

48

So. 3d 1216, 1230 (Fla. 2010) (Polston, J., concurring in part) (describes the two separately

enacted antipollution laws within the PDPCA).  Section 376.313 allows for recovery of "*all*

*damages* resulting from a discharge . . . covered by §§ 376.30-376.319," and the term "damages"

is not further defined.  Fla. Stat. § 376.313.  Thus, the cases Plaintiffs' cite are inapplicable.

 *Second*, the PDPCA directly regulates interstate commerce pertaining by its own terms to

"any spilling, leaking, seeping, pouring, emitting, emptying, or dumping which occurs within . . .

*or outside the territorial limits of the state* and affects lands and waters within the territorial

limits of the state."  Fla. Stat. § 376.031(7).  The OPA savings clause, 33 U.S.C. § 2718(c), does

not grant explicit authority to regulate interstate commerce, rather merely to "impose additional

liability . . . relating to the discharge, or substantial threat of discharge of oil."  *Id.*  As Plaintiffs

concede, state statutes which directly regulate interstate commerce must be struck down "without

further inquiry" as violating the dormant Commerce Clause.  (Pls.' Mem. 90 (quoting *Brown-*

*Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 579 (1986).)

## IV. PLAINTIFFS' PUNITIVE DAMAGES COUNT  MUST BE DISMISSED.

 Plaintiffs admit there can be no stand-alone cause of action for punitive damages, and

they do not challenge BP's position that punitive damages are not a remedy under OPA — the

only cause of action B1 Plaintiffs may assert against BP.  (BP MTD Mem. 45-46; Pls. Mem. 43-

49, 102-03)  Thus, Plaintiffs' punitive damages count against BP (Count IV) must be dismissed.

## V. PLAINTIFFS' DECLARATORY RELIEF COUNTS MUST BE DISMISSED.

 Plaintiffs' declaratory relief counts must be dismissed for the reasons stated in BP's

motion.  (BP MTD Mem. 48-50)  Plaintiffs' arguments against dismissal are unavailing.

 *First*, Plaintiffs admit there is no independent cause of action for declaratory relief, but

contend they have a "pending claim for punitive damages" that suffices as the underlying claim.

(Pls.' Mem. 99)  This argument fails because B1 Plaintiffs do not have a punitive damages remedy against BP.  (*See supra* Section I.A;  BP MTD Mem. 45-48)

*Next*, Plaintiffs "agree" with BP that OPA encourages out-of-court settlements and that settlements releasing all claims are valid, but contend that BP "misapprehended" the relief Plaintiffs seek in Counts V and VI, namely a court decree that BP "cannot somehow reduce or eliminate its exposure to punitive damages through out-of-court, purely compensatory, settlements." (Pls.' Mem. 99-101)  However, any such decree would violate the Due Process Clause of the U.S. Constitution.  *Philip Morris USA v. Williams*, 549 U.S. 346 (2007), held that the Due Process Clause forbids use of punitive damages "to punish a defendant for injury that it inflicts upon nonparties or those whom they directly represent, i.e., injury that it inflicts upon those who are, essentially, strangers to the litigation."  *Id*. at 353.  Here, claimants resolving claims through the GCCF are not parties to MDL 2179, for OPA requires mandatory pre-suit presentment of claims.  (BP MTD Mem. 19-24)  Even if Plaintiffs could seek punitive damages against BP (and they cannot), the Due Process Clause bars consideration of GCCF settlements.

## CONCLUSION

For the foregoing reasons, and those set forth in BP's memorandum in support of the motion to dismiss, this Court should dismiss the B1 Amended Complaint claims against BP, as well as the individual complaints of B1 Plaintiffs who did not satisfy OPA presentment.

Dated:  May 9, 2011                    Respectfully submitted,


                                       /s/ Don K. Haycraft
                                       Don K. Haycraft (Bar #14361)
                                       R. Keith Jarrett (Bar #16984)
                                       LISKOW & LEWIS
                                       701 Poydras Street, Suite 5000
                                       New Orleans, LA  70139-5099
                                       Telephone:  (504) 581-7979
                                       Facsimile:  (504) 556-4108
                                       And

                                       Richard C. Godfrey, P.C.
                                       J. Andrew Langan, P.C.
                                       Wendy L. Bloom
                                       Jeffrey Bossert Clark
                                       KIRKLAND & ELLIS LLP
                                       300 North LaSalle Street
                                       Chicago, IL  60654
                                       Telephone:  (312) 862-2000
                                       Facsimile:  (312) 862-2200
                                       Robert C. "Mike" Brock
                                       COVINGTON & BURLING LLP
                                       1201 Pennsylvania Avenue, NW
                                       Washington, DC  20004-2401
                                       Telephone:  (202) 662-5985

                                       *Attorneys for BP p.l.c.,*
                                       *BP America Production Company and*
                                       *BP Exploration & Production Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 9th day of May, 2011.

<u>/s/ Don K. Haycraft</u>
Don K. Haycraft