# EXHIBIT 4

Ex. 4
National Pollution Funds Center, Deepwater Horizon Claims, http://www.uscg.mil/npfc/claims/DWH.asp#Claims_Determinations (last visited May 9, 2011).





**About NPFC**
**Contact NPFC**
**FAQs**
**Glossary**
**Site Map**
**What's New**

**Home > Claims > Deepwater Horizon Claims**

# Deepwater Horizon Claims

|  More Information  |
|---|
| Deepwater Horizon Claimant FAQs |
| Deepwater Horizon Sample Claim Determinations of Note |
| OSLTF Form |
| **NPFC Claimant Guides** |
| Claimant Guide (English) |
| Guía Informativa para el Reclamante (En Español) |
| Tài Li•u H••ng D•n Ng••i••ng••n Ki•n (B•ng Ti•ng Vi•t) |
| _____ |
| _____ |
| _____ |

**Deepwater Horizon Claims Call Center**

|  |
|---|
| Call **800-280-7118**, or<br>Email **arl-pf-npfcclaimsinfo@uscg.mil**. |
| **Business Hours** |
| **Monday - Friday,** 7:00 a.m. - 7:00 p.m. (EST)<br>**Saturday,** 8:00 a.m. - 4:00 p.m. (EST)<br>**Sunday,** Closed |

{back to top}

## Examples of Deepwater Horizon Claim Determinations

| |
|---|
| Fully compensated by the RP, Loss of Profits and Earnings, Denial 9/29/2010 |
| Real Estate claim, Loss of Profits and Earnings, Denial, 11/12/2010 |
| Drilling Moratorium claim, Loss of Profits and earnings, Denial 11/8/2010 |
| Real Estate Investment, Loss of Profits, Denial 12/07/2010 |
| Loss of BP investment dividend not OPA, Denied, 12/10/2010 |
| Vacation cancelation costs claim, Denial 12/13/2010 |
| Real Estate Investment, Loss of Profits Claim, Denied on Reconsideration, 12/13/2010 |
| Loss of Tip Income Claim, Denied, 01/06/2011 |
| Moratorium and Fraud Determination, Denial on 01/07/11 |
| Loss of Subsistence Use Determination, Denial on 01/10/11 |
| Loss of Subsistence Use Determination, Denial on 01/10/11 |
| Quick payment from CGGF, Denial from NPFC on 01/12/11 |
| |
| **RECONSIDERATION DETERMINATIONS** |
| Loss of Real Estate Commissions, No New info, Denial on 12/13/10 |
| Airline Cancelation Fee, No new info, Denial on 01/04/11 |
| Falsification of Termination Notice, No new info, Denial 01/19/11 |
| Failed Business, No new info, Denial on 01/25/11 |
| New Business, No new info, Denial on 02/2/11 |
| Termination of Employment Moratorium, No new info, Denial on 02/16/11 |
| Diminution of Property Values, Denial on 03/15/11 |
| Paid more from BP than NPFC, Determined Loss, Denial 03/16/11 |
| Lack of documentation, No new info, Denial on 03/16/11 |
| Hair Stylist, No Loss, Denial 03/16/11 |

| |
|---|
| Fireplace Installer, No Loss of Hours, Denial on 03/17/11 |
| Cement Truck Driver, No Loss, Denial on 03/17/11 |
| Paid by RP with signed Release, No new info, Denial 03/17/11 |
| Termination of Employment due to Moratorium, No new info, Denial 03/17/11 |
| Loss of Rental Income and devaluation, Failed presentment and paid by RP, Denial 04/18/2011 |
| |

{back to top}

Ex. 4
Moratorium Denial, NPFC Claim No. N10036-0035 (Nov. 8, 2010), http://www.uscg.mil/npfc/docs/PDFs/Deepwater/Moratorium_Denial.pdf (redactions in original).

CLAIM SUMMARY / DETERMINATION FORM

Date              : 11/08/2010
Claim Number      : N10036-0035
Claimant          : █████████████ Scientist/Paleontologist
Type of Claimant  : Private (US)
Type of Claim     : Loss of Profits and Earning Capacity
Claim Manager     : █████████████
Amount Requested  : $109,627.00

## *FACTS*:

On or about April 20, 2010, the Mobile Offshore Drilling Unit Deepwater Horizon exploded and sank in the Gulf of Mexico. As a result of the explosion and sinking, oil was discharged from an offshore facility, located on the Mississippi Canyon, Block 252. This area was leased by BP Exploration and Production, Inc. (BP). The Coast Guard designated the offshore facility as the source of the discharge and BP as the responsible party for the discharge. BP accepted the designation, advertised its OPA claims process and compensated claimants. On May 28, 2010, The U.S. Department of the Interior (DOI) issued a six-month moratorium on deepwater drilling, citing concerns over the safety of deepwater drilling and directing lessees and operators to cease drilling all new deepwater wells and related activities effective May 30, 2010. Lessees and operators conducting current drilling operations were directed to secure the wells and to take all necessary steps to cease operations and temporarily abandon or close the wells. On August 23, 2010 the Gulf Coast Claims Facility (GCCF) began accepting and adjudicating claims on behalf of BP. BP subsequently established a $100 million Rig Workers Assistance Fund to help compensate rig workers impacted by the moratorium on deepwater well activities. The Assistance Fund is administered by the Gulf Coast Restoration and Protection Foundation.

## *CLAIM AND CLAIMANT*:

Claimant, █████████, a paleontologist and sole proprietor, works in the oil industry examining microscopic fossils in rock samples obtained from exploratory oil rigs. He examines the samples to assess their age and potential for further oil exploration and production activities. Oil companies conducting exploratory oil and gas activities contract with him for his services. █████████ receives samples at his home laboratory and occasionally works on a rig when his services are necessary to provide real-time data for critical decision-making.[1] █████████ reports that he has not worked "since the tragic BP incident on April 20 and subsequent government issued moratorium."[2] He originally submitted a claim to BP on June 05, 2010. He later submitted a claim to the GCCF, which is accepting claims for BP. On September 23, 2010, the GCCF denied his claiming referring █████████ to the Rig Worker's Compensation Fund.[3] When the GCCF denied his claim, he submitted an optional Oil Spill Liability Trust Fund (OSLTF)

---

[1] Description of claimant's vocation obtained from his personal narrative dated 13 October 2010.
[2] Claimant's personal narrative, page 1.
[3] The 23 September 2010 letter that █████████ received from the GCCF referred him to the Gulf Coast Restoration and Protection Foundation's (GCRPF) adjudication process; the Rig Worker Assistance Fund (RWAF). According to the organizations website, the GCRPF process "is limited to people who worked on deepwater rigs on May 6." See, GCRPF website retrieved 08 NOV 10 from http://www.gcrpf.org/details/ As a paleontologist who works primarily from home, █████████ does not consider himself a "rig worker" and has appealed the GCCF's decision. Further, the "first round" for rig worker claims ended on 30 September 10. █████████ cannot presently submit to the RWAF. As noted, █████████ first submitted to the RP (BP) on 05 June 2010.

claim form seeking $109,627.00, asserting that his loss of profits and impairment of earnings capacity resulted from the Deepwater Horizon oil spill.

## *APPLICABLE LAW:*

Under the Oil Pollution Act of 1990 (OPA), 33 USC § 2702(a), responsible parties are liable for removal costs and damages resulting from the discharge or substantial threat of discharge of oil into navigable waters and adjoining shorelines or the exclusive economic zone, as described in Section 2702(b) of OPA.

The OSLTF which is administered by the NPFC, is available, pursuant to 33 USC §§ 2712(a)(4) and 2713 and the OSLTF claims adjudication regulations at 33 CFR Part 136, to pay claims for uncompensated damages. Damages pursuant to 33 CFR §136.231 include claims for loss of profits or impairment of earnings capacity due to injury, destruction or loss of real or personal property or natural resources.

With certain exceptions, a claimant must first present their claim to the responsible party. 33 U.S.C. § 2713(a). If the claim is not settled by any person by payment within 90 days after the date on which it was presented, the claimant may elect to commence an action in court or present the claim to the OSLTF. 33 U.S.C. § 2713(c).

Under 33 CFR § 136.233 a claimant must establish the following:

    (a) That real or personal property or natural resources have been injured, destroyed, or lost.

    (b) That the claimant's income was reduced as a consequence of injury to, destruction of, or loss of property or natural resources, and the amount of that reduction.

    (c) The amount of the claimant's profits or earnings in comparable periods and during the period when the claimed loss or impairment was suffered, as established by income tax returns, financial statements, and similar documents. In addition, comparative figures for profits or earnings for the same or similar activities outside of the area affected by the incident also must be established.

    (d) Whether alternative employment or business was available and undertaken and, if so, the amount of income received. All income that a claimant received as a result of the incident must be clearly indicated and any saved overhead and other normal expenses not incurred as a result of the incident must be established.

Under 33 CFR 136.105(a) and 136.105(e)(6), the claimant bears the burden of providing to the NPFC, all evidence, information, and documentation deemed necessary by the Director, NPFC, to support the claim.

Under 33 CFR 136.235, the amount of compensation allowable for a claim involving loss of profits or impairment of earnings capacity is limited to the actual net reduction or loss of earnings or profits suffered. Calculations for net reductions or losses must clearly reflect adjustments for-

    (a) All income resulting from the incident;
    (b) All income from alternative employment or business undertaken;

(c) Potential income from alternative employment or business not undertaken, but reasonably available;
(d) Any saved overhead or normal expenses not incurred as a result of the incident; and
(e) State, local, and Federal taxes.

## *DETERMINATION OF LOSS:*

### A. Overview

███████ submitted the following list of documentation:

- Optional OSLTF Claim Form Submission dated 13 October 2010.
- Personal narrative dated 13 October 2010.
- Letter from the Gulf Coast Claims Facility dated 23 September 2010 redirecting ███ ███ to the Rig Worker's Assistance Fund.
- Letter from Shell International Exploration and Production, Inc. dated 07 July 2010 relating to the well-site on the Yucatan South prospect.
- Second Letter from Shell International Exploration and Production, Inc. dated 07 July 2010 relating to the well-site at Vito Sidetrack 3 prospect.
- Letter from Statoil dated 26 August 2010 relating to the well-site Tucker 2 and Krakatoa

The NPFC reviewed the documentation submitted by ███████

1. In his personal narrative and optional OSLTF claim form, ███████ asserts that his loss is moratorium related.
2. The letters provided by ███████ from Shell International Exploration and Production Inc. and Statoil all assert that the work that ███████ would have engaged in was placed on hold due to the moratorium.

### B. Analysis

Under 33 USC § 2702(b) and 33 CFR Part 136, a claimant must prove that his loss of income is due to the injury, destruction or loss of real or personal property or natural resources resulting from the discharge or substantial threat of discharge of oil. All documentary evidence submitted by ███████ indicates that his loss directly resulted from a directive issued by the Department of the Interior imposing a six month offshore drilling moratorium in order to implement new safety requirements.[4] As a result, ███████ claim is determined to be a direct result of the moratorium, not a direct result of an oil discharge. The claim is not compensable under the OPA.

## *AMOUNT:* $0.00

---

[4] U.S. Department of the Interior, MINERALS MANAGEMENT SERVICE, MORATORIUM NOTICE TO LESSEES AND OPERATORS, NTL No. 2010-N04, Effective 30 May 2010. *See*, U.S. Department of the Interior, Minerals Management Service, NATIONAL NOTICE TO LESSEES AND OPERATORS OF FEDERAL OIL AND GAS LEASES, OUTER CONTINENTAL SHELF (OCS) NOTICE TO LESSEES AND OPERATORS, NTL No. 2010-N05, Effective 08 June 2010. (A preliminary injunction was issued against the May 28, 2010 Moratorium and, on June 8, 2010, The DOI revised the rationale to support a drilling suspension, based on drilling configurations and technologies instead of water depth. That action applied to all activities on the Outer Continental Shelf (OCS) suspended under the May 28, 2010 Moratorium and shallow water operations (under 500 feet in depth). *See Also*, See, Decision Memo dated 12 July 2010, From Secretary of the Interior To Director, Bureau of Ocean Energy Management, Regulation and Enforcement, Subject DECISION MEMORANDUM REGARDING THE SUSPENSION OF CERTAIN OFFSHORE PERMITTING AND DRILLING ACTIVITIES ON THE OUTER CONTINENTAL SHELF.

**DETERMINATION:** ██████ claim for $109, 627.00 to the OSLTF is denied.

Claim Supervisor: ██████████████  *Denial Approved*

Date: 11/9/10

Supervisor's Comments:

Ex. 4
Moratorium Fraud Determination Denial, NPFC Claim No. N10036-0322 (Jan. 7, 2011), http://www.uscg.mil/npfc/docs/PDFs/Deepwater/MoratoriumFraudDetermination_Denial.pdf (redactions in original).

| | | | |
|---|---|---|---|
| U.S. Department of<br>Homeland Security<br><br>**United States<br>Coast Guard** |  | Director<br>National Pollution Funds Center<br>United States Coast Guard | NPFC CA  MS 7100<br>US COAST GUARD<br>4200 Wilson Blvd, Suite 1000<br>Arlington, VA 20598-7100<br>Staff Symbol: (CA)<br>Phone: ▮<br>E-mail: ▮<br>Fax: 202-493-6937 |

5890
1/7/2011

CERTIFIED MAIL – RETURN RECEIPT REQUESTED
Number: 7010 1060 0001 7082 5583



Luling, LA 70070

RE:   Claim Number: N10036-0322

Dear ▮

The National Pollution Funds Center (NPFC), in accordance with 33 CFR Part 136, denies your claim. The NPFC is unable to establish that the loss of profits and earnings real or personal property damages you presented in your claim were a result of the Deepwater Horizon oil spill. Please see the attached claim summary for further explanation.

You may make a written request for reconsideration of this claim. The reconsideration must be received by the NPFC within 60 days of the date of this letter and must include the factual or legal basis of the request for reconsideration, providing any additional support for the claim. However, if you find that you will be unable to gather particular information within the time period, you may include a request for an extension of time for a specified duration with your reconsideration request. Reconsideration of the denial will be based upon the information provided. A claim may be reconsidered only once. Disposition of that reconsideration in writing will constitute final agency action. Failure of the NPFC to issue a written decision within 90 days after receipt of a timely request for reconsideration shall, at the option of the claimant, be deemed final agency action. All correspondence should include claim number N10036-0322.

Mail reconsideration requests to:

Director (ca)
NPFC CA  MS 7100
US COAST GUARD
4200 Wilson Blvd, Suite 1000
Arlington, VA 20598-7100

Sincerely,

▮

Claims Manager
U.S. Coast Guard

Encl: Claim Summary / Determination Form

CLAIM SUMMARY / DETERMINATION FORM

| | |
|---|---|
| Date | January 6, 2011 |
| Claim Number | N10036-0322 |
| Claimant | ███████████████ |
| Type of Claimant | Private (US) |
| Type of Claim | Loss of Profits and Earning Capacity |
| Claim Manager | ███████████████ |
| Amount Requested | $50,000.00 |

*FACTS*

On or about April 20, 2010, the Mobile Offshore Drilling Unit Deepwater Horizon (Deepwater Horizon) exploded and sank in the Gulf of Mexico. As a result of the explosion and sinking, oil was discharged from an offshore facility associated with the Deepwater Horizon and located on the Mississippi Canyon, Block 252 (the Deepwater Horizon incident). This area was leased by BP Exploration and Production, Inc. (BP). The Coast Guard designated the offshore facility as the source of the discharge and BP as the responsible party (RP) for the discharge. BP accepted the designation, advertised its OPA claims process, and compensated claimants. On August 23, 2010, the Gulf Coast Claims Facility (GCCF) began accepting and adjudicating claims on behalf of BP.

On May 28, 2010, The U.S. Department of the Interior (DOI) issued a six-month moratorium on deepwater drilling, citing concerns over the safety of deepwater drilling and directing lessees and operators to cease drilling all new deepwater wells and related activities effective May 30, 2010[1]. Lessees and operators conducting current drilling operations were directed to secure the wells and to take all necessary steps to cease operations and temporarily abandon or close the wells. BP subsequently established a $100 million Rig Workers Assistance Fund to help compensate rig workers impacted by the moratorium on deepwater well activities. The Assistance Fund is administered by the Gulf Coast Restoration and Protection Foundation (GCRF).

*CLAIM AND CLAIMANT*

On December 9, 2010 the claimant, ███████████████, presented a loss of profits and impairment of earning capacity claim in the amount of $50,000.00 to the National Pollution Funds Center (NPFC) for reimbursement. The Claimant is asserting that he was terminated from his work assignment with ███████ Services because of the Deepwater Horizon incident.

The Claimant was employed through ███████ Services, a staffing agency that provides staffing for support vessels that service the oil industry in the Gulf of Mexico. ███████ Services trains and assigns riggers, cooks and galley hands. The Claimant was a cook aboard the offshore supply vessel HOS ███████. The Claimant stated the HOS ███████ was providing support services to a drilling rig called the ███████ at the time of the Deepwater Horizon

---

[1] U.S. Department of the Interior, MINERALS MANAGEMENT SERVICE, MORATORIUM NOTICE TO LESSEES AND OPERATORS, NTL No. 2010-N04, Effective 30 May 2010. See, Decision Memo dated 12 July 2010, From Secretary of the Interior To Director, Bureau of Ocean Energy Management, Regulation and Enforcement, Subject Decision Memorandum regarding the suspension of certain offshore permitting and drilling activities on the Outer Continental Shelf. See also, U.S. Department of the Interior, Minerals Management Service, NATIONAL NOTICE TO LESSEES AND OPERATORS OF FEDERAL OIL AND GAS LEASES, OUTER CONTINENTAL SHELF (OCS) NOTICE TO LESSEES AND OPERATORS, NTL No. 2010-N05, Effective 08 June 2010.

incident. The Claimant began working for ███████ Services on December 2, 2009 and was ultimately terminated on June 7, 2010. The Claimant asserts that due the moratorium, his employer's services were no longer being requested by customers which led to his termination.

The Claimant filed an initial claim with the GCCF on October 13, 2010 and, as per the Claimant, was subsequently denied on October 28, 2010.

## APPLICABLE LAW

Under the Oil Pollution Act of 1990 (OPA), at 33 U.S.C. § 2702(a), responsible parties are liable for removal costs and damages resulting from the discharge of oil into navigable waters and adjoining shorelines and the exclusive economic zone. Damages include damages equal to the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, person property, or natural resources, Section 2702(b)(2)(E) of OPA.

The Oil Spill Liability Trust Fund (OSLTF), which is administered by the NPFC, is available, pursuant to 33 U.S.C. §§ 2712(a)(4) and 2713 and the OSLTF claims adjudication regulations at 33 C.F.R. Part 136, to pay claims for uncompensated damages. Under 33 C.F.R. 136.105(a) and 136.105(e)(6), the claimant bears the burden of providing to the NPFC, all evidence, information, and documentation deemed necessary by the Director, NPFC, to support the claim.

The claims regulations at 33 C.F.R. §136.231 and .235 provide the additional requirements for a claim for loss of profits or impairment of earning capacity due to injury to or destruction of natural resources.

Under 33 C.F.R. § 136.233 a claimant must establish the following:

- (a) That real or personal property or natural resources have been injured, destroyed, or lost.

- (b) That the claimant's income was reduced as a consequence of injury to, destruction of, or loss of property or natural resources, and the amount of that reduction.

- (c) The amount of the claimant's profits or earnings in comparable periods and during the period when the claimed loss or impairment was suffered, as established by income tax returns, financial statements, and similar documents. In addition, comparative figures for profits or earnings for the same or similar activities outside of the area affected by the incident also must be established.

- (d) Whether alternative employment or business was available and undertaken and, if so, the amount of income received. All income that a claimant received as a result of the incident must be clearly indicated and any saved overhead and other normal expenses not incurred as a result of the incident must be established.

Under 33 C.F.R. 136.235, the amount of compensation allowable for a claim involving loss of profits or impairment of earning capacity is limited to the actual net reduction or loss of earnings or profits suffered. Calculations for net reductions or losses must clearly reflect adjustments for-

- (a) All income resulting from the incident;
- (b) All income from alternative employment or business undertaken;

  (c) Potential income from alternative employment or business not undertake, but reasonably available;
  (d) Any saved overhead or normal expenses not incurred as a result of the incident; and
  (e) State, local, and Federal taxes.

## DETERMINATION OF LOSS

### A. Claimant's Submission

To support his claim, the Claimant submitted the following documentation:

- NPFC OSLTF Claim Form dated December 9, 2010.
- Claim correspondence with GCCF.
- Application for unemployment benefits dated September 27, 2010.
- 2009 Tax Return filing and a summary of total historical earnings with ▮▮▮ Services.
- Separation notice from ▮▮▮ Services dated June 7, 2010
- The Claimant provided his Individual Income Tax Return filing from 2009 which indicates total earnings of $3,118. Claimant's earnings from January through June 2010, prior to his termination from ▮▮▮ervices, total $15,082. Claimant did not explain how he calculated his claimed losses of $50,000.

### B. NPFC Determination

Under 33 U.S.C. § 2702(b) and 33 C.F.R. Part 136, a claimant must prove that his loss of profits resulted from the injury to, or destruction of, real or personal property or a natural resource. As indicated on the documentation provided by the Claimant, his primary form of employment at the time of the Deepwater Horizon incident was working aboard an offshore supply vessel as a cook. The offshore supply vessel the Claimant worked aboard, serviced drilling rigs located in the Gulf of Mexico. He asserts that he lost his job because of the moratorium. Thus, his loss of profits was allegedly the result of the moratorium, a directive issued by the Department of the Interior to suspend permitting and drilling activities on the Outer Continental Shelf in order that safety regulations could be implemented, and not the result of the Deepwater Horizon incident.

Further, and more importantly, the Claimant misrepresented to the NPFC that he lost his job because of the moratorium. The NPFC concluded after a discussion with Mr. ▮▮▮ of ▮▮▮ Services, that the Claimant was not terminated from his employment because of the Deepwater Horizon incident or the moratorium, but rather because he was arrested by the ▮▮▮ Harbor Police for outstanding warrants[2].

---

[2] Email from Mr. ▮▮▮ to ▮▮▮ of 05JAN11

Mr. ███ also provided a Separation Notice Alleging Disqualification dated June 7, 2010, stating that the Claimant was terminated due to his arrest[3]. When comparing the separation notice provided by the Claimant to the one provided by Mr. ███ it is clear that the separation notice submitted by the Claimant has been altered.[4] It appears the Claimant used correction fluid and altered the block titled "Other" in Section 6 and then checked "Lack of Work (RIF)." Also, it appears the Claimant used correction fluid to hide the explanation paragraph of the notice. The separation notice provided by the Claimant states, "███ was a cook onboard for our customer's vessel, the H.O.S. ███ for the offshore workers. ███ worked on the vessel as a cook; not on the rig." The separation notice provided by ███ Services states, "███ was arrested and taken into custody by ███ Harbor Police while onboard our customer's vessel, the HOS ███."

Under 33 C.F.R. 136.9, Falsification of claims. Persons submitting false claims or making false statements in connection with claims under this part may be subject to prosecution under Federal law, including but not limited to 18 U.S.C. 287 and 1001. In addition, persons submitting written documentation in support of claims under this part which they know, or should know, is false or omits a material fact may be subject to a civil penalty for each claim. The Claimant has submitted an intentionally altered document in conjunction with his claim submission for which the NPFC was able to obtain from Claimant's previous employer, an unaltered copy of said document.[5]

Claim Supervisor: ███

Date of Review: *1/7/11*

Supervisor's Comments: **Denial approved**

---

[3] Separation Notice Alleging Disqualification provided by Mr. ███ of 07JUN10
[4] Separation Notice Alleging Disqualification provided by Claimant.

Ex. 4
Termination of Employment Due to Moratorium Reconsideration Denial, NPFC Claim No. N10036-0290 (March. 17, 2011), http://www.uscg.mil/npfc/docs/PDFs/Deepwater/Recon/TerminationofEmploymentDuetoMoratoriumRECON_Denial.pdf (redactions in original).

| U.S. Department of<br>Homeland Security<br><br>**United States<br>Coast Guard** |  | Director<br>United States Coast Guard<br>National Pollution Funds Center | NPFC CA  MS 7100<br>US COAST GUARD<br>4200 Wilson Blvd. Suite 1000<br>Arlington, VA 20598-7100<br>Staff Symbol: (CA)<br>Phone:<br>E-mail:<br><br>Fax:   202-493-6937 |

5890
3/17/2011

CERTIFIED MAIL – RETURN RECEIPT REQUESTED
Number:



Conway, AR 72032

RE:   Claim Number: N10036-0290

Dear                  :

The National Pollution Funds Center (NPFC), in accordance with the Oil Pollution Act of 1990, 33 U.S.C. § 2701 et seq. (OPA) and the associated regulations at 33 C.F.R. Part 136, denies payment on claim number N10036-0290 involving the Deepwater Horizon oil spill. Please see the enclosed Claim Summary/Determination Form for further explanation.

Disposition of this reconsideration constitutes final agency action.

If you have any questions or would like to discuss the matter, you may contact me at the above address and phone number.

Sincerely,

Claims Adjudication Division
U.S. Coast Guard

Encl:  Claim Summary / Determination Form

CLAIM SUMMARY / DETERMINATION FORM

| | |
|---|---|
| Date | : 3/11/2011 |
| Claim Number | : N10036-0290 |
| Claimant | : |
| Type of Claimant | : Private (US) |
| Type of Claim | : Loss of Profits and Earning Capacity |
| Claim Manager | : |
| Amount Requested | : $36,920.00 |

## *FACTS:*

On or about 20 April 2010, the Mobile Offshore Drilling Unit Deepwater Horizon (Deepwater Horizon) exploded and sank in the Gulf of Mexico. As a result of the explosion and sinking, oil was discharged. The Coast Guard designated the source of the discharge and identified BP as a responsible party (RP). BP accepted the designation and advertised its OPA claims process. On 23 August 2010, the Gulf Coast Claims Facility (GCCF) began accepting and adjudicating claims for certain individual and business claims on behalf of BP.

## *CLAIM AND CLAIMANT:*

On 17 December 2010,             (Claimant) presented an optional Oil Spill Liability Trust Fund (OSLTF) claim form to the National Pollution Funds Center (NPFC) seeking $33,600.00 in loss of profits and earning capacity as a result of the Deepwater Horizon incident. On 29 December 2010, Claimant amended his sum certain to $36,920.00.[1]

Claimant is an engineer who was contracted out by             to work for        at the        Refinery in Baton Rouge, LA. Claimant indicated that the project he was working on was put on hold due to the Deepwater Horizon incident and that his employment was terminated because      had no other projects on which he could work.[2] Further, Claimant asserted that he has been unable to find alternate work due to the oil-spill and moratorium.

The NPFC denied the claim on February 18, 2011, on the grounds that the general counsel for FBD requested that the Claimant be replaced on the project with someone with a different skill set. Further, moratorium-related claims are not compensable from the OSLTF.

## *REQUEST FOR RECONSIDERATION:*

On March 8, 2011, the Claimant sent a request for reconsideration via facsimile dated March 7, 2010 to             stating he would like the NPFC to reconsider his claim. It is important to note that the Claimant states he wants written proof of the conversation the NPFC had with             General Counsel of             on February 1, 2011 and without that, he states the NPFC denied his claim based on hearsay and the NPFC cannot deny his claim based on such. The Claimant further asserted that due to the drilling moratorium, crews were not allowed on the rigs therefore how the NPFC is in error to think the moratorium did not have a

---

[1] Email Correspondence from Claimant to NPFC representative on 29 December 2010.
[2] *Id*

bearing on his alleged losses. The Claimant has not provided any new information in support of his claim for reconsideration other then his arguments in support of payment of his claim.

## *RECONSIDERATION CLAIM ANALYSIS:*

The claimant requested reconsideration via a letter dated March 7, 2011. To support his request for reconsideration, the claimant provided no new information. The Claimant was an engineer who was contracted out by ▮▮▮ to work for ▮ at the ▮▮▮ Refinery in Baton Rouge, LA. The Claimant indicated that the project he was working on was put on hold due to the Deepwater Horizon incident and that his employment was terminated because ▮ had no other projects on which he could work. The NPFC contacted the Claimant's employer, ▮, and spoke with General Counsel, ▮▮▮ who verbally stated to the NPFC on February 1, 2011 that ▮ asked for the Claimant to be replaced on the project with someone with a different skill set than the Claimant's.

### NPFC Determination on Reconsideration

Under 33 CFR 136.105(a) and 136.105(e)(6), the claimant bears the burden of providing to the NPFC all evidence, information, and documentation deemed necessary by the Director, NPFC, to support the claim. Under 33 CFR § 136.233, a claimant must establish loss of profits or impairment of earning capacity. A request for reconsideration must include the factual and legal grounds for the request and providing any additional information to support the claim. The NPFC considered all the documentation submitted by the Claimant.

The NPFC again denies the claim because the alleged loss is not due to injury, destruction or loss of property or natural resources as a result of a discharge or substantial threat of discharge of oil and the alleged loss of employment was caused by his employer terminating his position resulting from their client's request for the Claimant to be replaced with someone with a different skill set. The Claimant's argument on reconsideration that the NPFC cannot deny his claim based on hearsay is flawed. Additionally, the Claimant did not provide any new information in support of his alleged loss only his arguments. Furthermore, the Claimant states that the moratorium is the direct result of his alleged loss. The moratorium and its regulatory implications for corporate entities and their employees is not the result of the injury, destruction or loss of property or natural resources as a result of a discharge or substantial threat of discharge of oil but rather due to permitting requirements therefore, the Claimant's loss is not a damage that may be compensated from the OSLTF.

Therefore this claim is denied upon reconsideration.

Claim Supervisor: ▮▮▮

Date of Supervisor's review: *3/17/11*

Supervisor Action: ***Denial on reconsideration approved***

Supervisor's Comments: