# EXHIBIT 5

Ex. 5
Original Brief of Defendant-Appellant State of
Louisiana Through the Department of Transportation
and Development at xxxii-xxxiii, 2-28, 30-31 *In re
Taira Lynn Marine Ltd. No. 5*, 444 F.3d 371 (5th Cir.
2006) (No. 04-31069)

IN THE UNITED STATES COURT OF APPEAL
FOR THE FIFTH CIRCUIT

## CASE NUMBER:   04-31069

In Re:  In the Matter of the Complaint of TAIRA LYNN MARINE LIMITED
NUMBER 5 LLC, as Owner of the M/V Mr. Barry for Exoneration From or
Limitation of Liability

------------------------------------------------------

TAIRA LYNN MARINE LIMITED NUMBER 5 LLC; TAIRA LYNN MARINE,
INC.; TAIRA LYNN INC.; LLM MAINTENANCE & SURVEYING INC.;
LARRY J. LEBOEUF; SYLVIA LEBOEUF

Plaintiffs – Appellants

v.

JAYS SEAFOOD INC.; ET AL

Defendants

E. J. MASON, Individually and doing business as Mason Seafood

Defendant – Claimant – Third Party Plaintiff –Appellee

COASTLINE MARINE INC.; MARINE TURBINE TECHNOLOGIES LLC;
MTT PROPERTIES LLC; MTT MANUFACTURING LLC; MORTON
INTERNATIONAL INC.; CVD INC. doing business as Rohm & Haas Advanced
Materials; TWIN BROTHERS MARINE; COY REEKS, Individually and doing
business as Riverfront Seawalks and Bulkheads; TWIN BROTHERS MARINE
CORP.; BAGALAS QUALITY OYSTERS INC.; DOUGLAS OLANDER,
Individually and doing business as Big D's Seafood; CRYSTAL OLANDER;
Individually and doing business as Big D's Seafood; IVO JURISICH, Individually

E. J. MASON, Individually and doing business as Mason Seafood

Defendant - Claimant - Appellee

COASTLINE MARINE, INC.; MARINE TURBINE TECHNOLOGIES LLC;
MTT PROPERTIES LLC; MTT MANUFACTURING LLC; MORTON
INTERNATIONAL INC.; C V D INC., doing business as Rohm & Haas
Advanced Materials; TWIN BROTHERS MARINE INC.; COY REEKS,
Individually and doing business as Riverfront Seawalks and Bulkheads; TWIN
BROTHERS MARINE CORP; BAGALAS QUALITY OYSTERS, INC.;
DOUGLAS OLANDER, Individually and doing business as Big D's Seafood
CRYSTAL OLANDER, Individually and doing business as Big D's Seafood; IVO
JURISICH, Individually and doing business as Blue Gulf Seafood, Inc.; TOMMY
KLEINPETER, Individually and on behalf of Cajun Wireline, Inc.; NORTH
AMERICA SALT CO.; CAREY SALT CO; PAM DORE, Individually and on
behalf of Cove Marina; LEGNON ENTERPRISES, INC.

Defendants - Claimants - Cross Claimants - Appellees

---

## ORIGINAL BRIEF OF DEFENDANT-APPELLANT
## STATE OF LOUISIANA THROUGH THE DEPARTMENT
## OF TRANSPORTATION AND DEVELOPMENT

---

**On Appeal From The**
**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF LOUISIANA,**
**LAFAYETTE-OPELOUSAS DIVISION**
**Honorable Richard T. Haik, Sr., Judge Presiding**

# TABLE OF CONTENTS

L.R. 28.2.1  CERTIFICATE OF INTERESTED PARTIES . . . . . . . . . . . . . . . . . . i

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . xxx

TABLE OF CONTENTS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xxxi

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xxxiv

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF FACTS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

SUMMARY OF THE ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

I.     Maritime law is the only law applicable to the claims
       asserted in this case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

II.    The District Court erred in failing to give full effect to the rule
       of law enunciated in *Robins Dry Dock & Repair Co. v. Flint* as
       adopted by this Court in *State of Louisiana ex rel. William J.*
       *Guste, Jr. v. M/V TESTBANK* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

III.   The claimed physical damage claims were not foreseeable, even
       if they did constitute physical damage . . . . . . . . . . . . . . . . . . . . . . . 18

IV.   The District Court erred in creating a "geography exception"
      to the *Robins Dry Dock* rule was explicated by *TESTBANK* . . . . . . 22

V.    The District Court erred in denying the Motion for Summary
      Judgment of the State of Louisiana with respect to claims for
      economic loss unaccompanied by any physical damage
      to property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

VI.   The District Court erred in failing to dismiss the claims
      brought by the economic loss claimants under OPA 90  . . . . . . . . . 27

VII.  The District Court erred in failing to grant the Motion for
      Summary Judgment filed by the State of Louisiana with
      respect to claims brought under CERCLA . . . . . . . . . . . . . . . . . . . . . 28

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

CERTIFICATE OF SERVICE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

CERTIFICATE OF COMPLIANCE WITH RULE 32(A) . . . . . . . . . . . . . . . . . 34

ADDENDUM  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

## STATEMENT OF ISSUES

1.  Whether or not Admiralty law provides the substantive law controlling the issues on appeal through the operation of the Admiralty Extension Act, 46 U.S.C. § 740, to the exclusion of State law inasmuch as the precipitating event arose from an allision which occurred on navigable waters of the United States.

2.  Whether the District Court erred in failing to give full effect to the rule of law enunciated in *Robins Drydock & Repair Co. v. Flint*, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290 (1927) as explicated and adopted by this Court in *STATE OF LOUISIANA ex rel. WILLIAM J. GUSTE, Jr. v. M/V TESTBANK*, 752 F.2d 1019 (5th Cir. 1985) (en banc).

3.  Whether or not the District Court erred in holding that certain of the claimants actually suffered "physical damage", which damage was foreseeable, and therefore, were entitled to recover.

4.  Whether or not the District Court erred in creating a "geographical" or *ad hoc* exception to the *Robins Drydock* rule as explicated by *TESTBANK*.

5.  Whether or not the District Court erred in denying the Motion for Summary Judgment of the State of Louisiana through the Department of Transportation and Development with respect to the claims for economic loss asserted by the plaintiffs who suffered no physical damage to their property.

6.  Whether or not the District Court erred in denying the Motion for Summary Judgment of the State of Louisiana through the Department of Transportation and Development with respect to the claims grounded on the Oil Pollution Act of 1990 (OPA 90), 33 U.S.C. § 2701, et seq., because the uncontradicted record e vidence c learly s hows t hat t he r eleased c argo c aused n o p hysical damage to any property.

7.  Whether or not the District Court erred in failing to grant the Motion for Summary Judgment filed by the State of Louisiana through the Department of Transportation and Development as to the claims brought under the Comprehensive Environmental Response Compensation and Liability Act (CERCLA), 42 U.S.C. § 9601, et seq.

## STATEMENT OF THE CASE

This litigation arises out of an allision which took place between the barge Kirby-31801 then in tow of the *M/V MR. BARRY* and the Louisa Bridge located near Cypremort Point, Louisiana. On 19 July 2001 the barge which was owned by Kirby Inland Marine, Inc. and loaded with a cargo of propane/propylene mix was being pushed in the Gulf Intracoastal Waterway by the *M/V MR. BARRY*, a tug owned by Taira Lynn Marine, Ltd. No. 5 L.L.C.   The barge allided with the Louisa Bridge, a bridge owned and operated by the State of Louisiana through the Department of Transportation and Development ("State" hereinafter) as the bridge was opening to permit passage of the tow.

The allision resulted in damage to the bridge and permitted some of the barge's cargo of propane/propylene to be vented to the atmosphere, resulting in a mandatory evacuation of businesses and residences within a certain radius of the bridge.

Subsequently, the Taira Lynn interests filed a limitation of liability proceeding in the United States District Court for the Western District of Louisiana, Lafayette-Opelousas Division. Numerous claims have been filed in that limitation and claims have also been filed asserting liability on the part of the State as the owner/operator of the bridge.

3

In these proceedings, maritime tort claims have been asserted as well as claims falling under the provisions of the Oil Pollution Act of 1990 (OPA 90) and the Comprehensive Environmental Response Compensation and Liability Act (CERCLA) 42 U.S.C. § 9601, et seq.

As a result of the complexity of the various claims being asserted, the District Court referred discovery with respect to claims alleging only economic loss to the Magistrate Judge, the underlying purpose being to allow dispositive motions to be filed w ith r espect t o t hose c laims. T he p ersonal i njury c laims o r c laims w hich included any economic loss claims as a component thereof were excluded from any proceedings at this stage of the litigation.

Thereafter, the parties pursued discovery from the economic loss claimants. As a result of that discovery, Taira Lynn, the State, and the Kirby interests all filed motions for summary judgment on the basis that the tests set forth in *ROBINS DRYDOCK* and *TESTBANK* precluded any recovery by claimants who had suffered no physical injury to their property. These motions were argued in open Court on 14 August 2003 and, in reasons for judgment dated 6 July 2004, the Court denied the motions for summary judgment.

The District Court, Judge Haik, certified the Judgment as appealable pursuant to 28 U.S.C. § 1292(b) on 11 August 2004. This Court subsequently granted the

4

petitions for permission to appeal by Order dated 29 October 2004, bringing these

matters before the Court at this time.

## STATEMENT OF FACTS

The *M/V MR. BARRY* and her tow, the barge Kirby-31801 allided with the Louisa Bridge at approximately 0430 on the morning of 19 July 2001. As a result of this allision, a portion of the Kirby-31801's cargo of propane/propylene mix was released into the air. Subsequently, the Louisiana State Police ordered a mandatory evacuation in the area of the bridge in response to the release.

On 3 0 July 2 001 t he o wner o f t he *M/V MR. B ARRY*, T aira L ynn M arine Limited No. 5, L:L.C. ("Taira Lynn") filed a petition for exoneration from or limitation of liability in the United States District Court for the Western District of Louisiana.[1]   Subsequently, the State of Louisiana through its Department of Transportation and Development ("State") was made a defendant in the proceedings.

Although many claims were filed in the consolidated underlying cases, this appeal involves only those claimants who are claiming economic losses unaccompanied by any physical injury to their property.

On 16 June, 2003 the State filed a Motion for Summary Judgment seeking dismissal, with prejudice, of the demands of Coastline Marine, Inc., North American Salt Company, Twin Brothers Marine, Morton International, Inc. - Chemical Vapor Deposition Facility, Morton International, Inc. - Salt Mine, Blue Gulf Seafood, Inc.,

---

[1]    Record excerpts, pp 1-8

Bagala's Quality Oysters, Inc., Cove Marina, Big D's Seafood, Riverfront Seawall Construction, Legnon Enterprises, Inc., and Cajun Wireline, Inc.[2]

On 6 August the State filed an amended motion for summary judgment, accepted by the Clerk on 21 August 2003 adding Marine Turbine Technologies, L.L.C., MTT Properties, L.L.C., and MTT Manufacturing, L.L.C. as parties against whom the State sought a motion for summary judgment as a purely economic loss claimant.[3]

All of the Motions for Summary Judgment with respect to the economic loss claimants only were argued in open Court on 14 August 2003. The District Court prepared and signed reasons for judgment on 2 July 2004, filed 6 July 2004, denying all of the motions for summary judgment on the basis that the Court found distinctions between the issues presented by this case and the *TESTBANK* "bright line" rules adhered to by this Court.[4]

Thereafter, on 11 August 2004 the District Court entered judgment denying all of the motions for summary judgment and certifying in accordance with the provisions of 28 U.S.C. 1292(b) that the conditions for appeal set forth therein had

---

[2]    Record excerpts, pp387-388

[3]    Record excerpts, pp 808-809

[4]    Record excerpts, pp 820-843

been met.[5]

The non-personal injury claimants that are at issue in this appeal have been extensively described with appropriate references in the brief filed herein on behalf of the Taira Lynn interests. Accordingly, the State of Louisiana adopts that portion of the Taira Lynn brief as there is simply no need to describe the exact same parties who have already been carefully described in the Taira Lynn brief.

---

[5]     Record excerpts, pp 844-846

## SUMMARY OF THE ARGUMENT

In a case with absolutely no factual dispute, the State of Louisiana through the Department of Transportation and Development takes the position that the action of the District Court in denying its motion for summary judgment with respect to economic loss only plaintiffs, who had no physical damage to their property, was in error and should result in this Court reversing and rendering Judgment for the Appellants herein. In addition, it is the position of the State of Louisiana that with respect to the three (3) claimants found by the District Court to arguably have physical damage, that that position of the District Court is in error. Furthermore, even should this Court agree that the three (3) claimants did suffer physical damage of some type, the summary judgment should still be granted inasmuch as the damage in question was clearly not foreseeable and, therefore, not within the risk protected.

The State of Louisiana concedes that there is no question but that this case is one which falls exclusively within the admiralty jurisdiction of the United States and, therefore, the maritime law of the United States must be applied to the exclusion of State law. The Admiralty Extension Act, 46 U.S.C. § 740, extends the admiralty jurisdiction of the United States to any torts committed by a vessel and consummated on land. In re *Amtrak "Sunset Limited" Train Crash in Bayou Canot, Alabama, on September 22, 1993,* 121 F. 3d 1421 (11th Cir. 1997).

9

The attempt by the District Court to craft what it termed "a geography exception" to *TESTBANK* has already been considered by this Court and rejected in other cases. A similar fate should await the ruling of the District Court in this case.

With respect to the actions of the District Court in failing to dismiss the claims asserted against the State under OPA 90 and CERCLA, the actions are also in error. It is clear that OPA 90 does not apply to this case since there is no physical damage that can be attributed to the escape of the cargo of the Kirby-31801. Equally clear is the fact that the State of Louisiana is not a "responsible party" under OPA 90. Finally, claimants cannot recover compensation for economic injury under the provisions of CERCLA, which in any event has no application to the State of Louisiana.

Thus, all of the rulings of the District Court are reversible error and should be reversed and judgment rendered by this Court.

10

## STANDARD OF REVIEW

A denial of a motion for summary judgment involves questions of law that are to be reviewed *de novo*, with the reviewing Court utilizing the same legal standards as the District Court applied in order to determine whether the summary judgment should have been granted. *Ramming v. Natural Gas Pipeline Co. of America*, 390 F.3rd. 366 (5th Cir. 2004).

Any motion for summary judgment should be granted when the record indicates that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law". F.R.C.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548 (1986).

## **ARGUMENT**

## **I.    Maritime law is the only law applicable to the claims asserted in this case.**

It is well settled, and indeed beyond dispute, that when a tort that is consummated upon the land is committed by a vessel on navigable waters that the applicable law is the Maritime and Admiralty law of the United States.  This was established by the Admiralty Extension Act, 46 U.S.C. § 740, which provided that:

> "The Admiralty and Maritime jurisdiction of the United States shall extend to and include all cases of damage or injury, to person or property, caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land."

As was stated in the *Grubart* opinion by the Supreme Court of the United States, "the purpose of the Act was to end concern over the sometimes confusing line between land and water by investing admiralty with jurisdiction over 'all cases' where the injury was caused by a ship or vessel on navigable water, even if such injury occurred on land".    *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Company, et al*, 513 U.S. 527, 115 S.Ct. 1043, 1047 (1995).

In this situation, there can be no question but that the provisions of the Admiralty Extension Act control.  The tort, if any has been committed, involves an allision between a barge underway on navigable waters of the United States and a

bridge permitted by the United States Coast Guard and the Corps of Engineers of the
Department of the Army over a navigable stream. The fact that the injury, if any, was
consummated upon land does not, in any way, affect the fact that this is a pure
admiralty matter and subject to no other law except the Admiralty and Maritime law
of the United States.

Similar cases include *Amtrak "Sunset Limited" Train Crash in Bayou Canot,
Alabama, on September 22, 1993,* 121 F. 3d 1421 (11th Cir. 1997) and an unreported
decision from the summary calendar of this Court which is, however, otherwise
persuasive, and In re: *In the Matter of the Complaint of Brown Water Towing I, Inc.,*
No. 02-41062, 2003 WL 21015917 (5th Cir. Tex). Both the *Brown Water* and *Sunset
Limited* cases involved allisions of vessels with bridges. Arguments were made in
both cases for the application of Texas law with respect to the *Brown Water* case and
Alabama law with respect to the *Sunset Limited* case. In both cases, the Appellate
Courts rejected those arguments pointing out the supremacy of the Admiralty
Extension Act and the fact that admiralty jurisdiction is the only jurisdiction to be
considered in such cases.

There is no question but that State law remedies cannot supplement Maritime
law in such situations. Louisiana Courts recognize the fact that Federal Maritime law
is the controlling law. *Harp v. Pine Bluff Sand & Gravel Co.,* 750 So.2d 226 (La.App.

13

3rd Cir. 1999). The *Harp* case is remarkably similar to this one inasmuch as the

claimants in that case were residents and business owners in the vicinity of a State

owned bridge that was removed from service following the allision of a barge with

the bridge. The claimants, like the economic loss claimants in this case, alleged no

physical damage to their property, but instead claimed economic damages as a result

of the closure of the bridge. Although the District Court permitted the claims to

stand, the Louisiana Third Circuit Court of Appeal reversed, finding that the claims

being asserted were governed by Federal Maritime law to the exclusion of any laws

of the State of Louisiana. 750 So.2d 226, 229. Continuing thereafter, the Court

found that claims based on economic loss only without any physical damage to their

property were barred by *Robins Dry Dock*.

Thus, there really can be no question but that this case is subject to adjudication

under Federal Maritime and Admiralty law only.

## II.   The District Court erred in failing to give full effect to the rule of law enunciated in *Robins Dry Dock & Repair Co. v. Flint* as adopted by this Court in *State of Louisiana ex rel. William J. Guste, Jr. v. M/V TESTBANK*.

In *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 72 L. Ed. 290, 48 S.

Ct. 134 (1927), the United States Supreme Court established a bright line rule that

compensation for economic losses standing alone is unavailable in admiralty cases.

In *Robins Dry Dock*, the charterer of a vessel sued a repair company that negligently

14

damaged the vessel while it was in dry dock, alleging that the resulting delay caused

the charterer to lose profits that it would have otherwise derived from the use of the

ship. Justice Holmes wrote for the Court in holding that the suit could not be

maintained:

> No authority need be cited to show that, as a general rule,
> at least, a tort to the person or property of one man does not
> make the tortfeasor liable to another merely because the
> injured person was under a contract with that other,
> unknown to the doer of the wrong. . . . The law does not
> spread its protection so far.

275 U.S. at 309.

Justice Holmes's pronouncement could have been read merely as negating a

claim of negligent interference with contract. See *Getty Refining and Marketing Co.*

v. MT FADI B, 766 F.2d 829, 831-32 (3d Cir. 1985). Instead, *Robins Dry Dock* has

generally been taken to establish the broader rule that purely economic losses arising

from a tort, but unaccompanied by physical injury to anything in which the plaintiff

has a proprietary interest, are not compensable under federal maritime law. See, e.g.,

*State of Louisiana ex rel. Guste v. M/V TESTBANK*, 752 F.2d 1019, 1022 (5th Cir.

1985) (en banc), *cert. denied*, 477 U.S. 903, 91 L. Ed. 2d 562, 106 S. Ct. 3271 (1986).

In *State of Louisiana ex rel. Guste v. M/V TESTBANK*, 752 F.2d 1019 (5th Cir.

1985) (en banc), the Fifth Circuit commented on the impact of *Robins Dry Dock*:

15

> The principle that there could be no recovery for economic
> loss absent physical injury to a proprietary interest was not
> only well established when *Robins Dry Dock* was decided,
> but was remarkably resilient as well. Its strength is
> demonstrated by the circumstance that *Robins Dry Dock*
> came ten years after Judge Cardozo's shattering of privity
> in *MacPherson v. Buick Motor Co.*, 217 N.Y. 382, 111
> N.E. 1050 (1916). See also *Glanzer v. Shepard*, 233 N.Y.
> 236, 135 N.E. 275 (1922). Indeed this limit on liability
> stood against a sea of change in the tort law. Retention of
> this conspicuous bright-line rule in the face of the reforms
> brought by the increased influence of the school of legal
> realism is strong testament to the rule's utility and to the
> absence of a more "conceptually pure" substitute.

*Id.* at 1023.

The *TESTBANK* court, after discussing *Robins Dry Dock*, went on to apply its

rationale in the maritime case before it. In *TESTBANK* two ships had collided on the

Mississippi River. As a result of the collision, one of the ships, the TESTBANK,

spilled cargo containing chemicals into  the river and the Coast Guard closed the

affected part of the river for several weeks, halting fishing, shrimping and other

commercial activity in that part of the river. Several lawsuits were later filed against

the shipowners. Many of the suits were tort claims by shippers, marina and boat rental

businesses, seafood businesses, bait  shops, and restaurants for the economic losses

they suffered as a result of the accident and the closing of the river. The shipowners

moved for summary judgment on such claims because the economic loss claimants

had not suffered any physical damage to their property as a result of the incident.[6]

The District Court granted summary judgment as to all the claimants except the

commercial fishermen, shrimpers, and other businesses that had derived their income

directly from the river.

The unsuccessful claimants appealed. Initially, a panel of this Court affirmed

the District Court, relying on *Robins Dry Dock*, *Id*. at 1021. This Court, en banc,

then again affirmed the district court, and employed the bright line rule. *Id*. The court

specifically held that, in order for the economic loss claimants to be entitled to

recovery, they had to have economic loss claims accompanied by physical damage

to a proprietary interest. *Id*. The court stated:

> We are unpersuaded that we ought to drop physical damage
> to a proprietary interest as a prerequisite to recovery for
> economic loss. To the contrary, our reexamination of the
> history and central purpose of this pragmatic restriction on
> the doctrine of foreseeability heightens our commitment to
> it. Ultimately we conclude that without this limitation
> foreseeability loses much of its ability to function as a rule
> of law.

---

[6] The *TESTBANK* court defined the claims subject to summary judgment as follows:

Stated more generally, the summary judgment denied the claims asserted by shipping
interests suffering losses from delays or rerouting, marina and boat operators,
wholesale and retail seafood enterprises not actually engaged in fishing, shrimping,
crabbing or oystering in the area, seafood restaurants, tackle and bait shops, and
recreational fisherman, oysterman, shrimpers and crabbers.
*Id*. at 1021 n. 2.

17

*Id.*

   In summary, the bright line rule set forth in *TESTBANK* may be stated as follows: A claim by a party for recovery of economic losses from the negligent tortfeasor will only be allowed where the party has suffered physical damage to a proprietary interest as a result of the tortfeasor's negligence. *TESTBANK,* at 1021. Other circuit courts follow the bright line rule. See *Getty Refining & Marketing Co. v. M/T FADI B*, 766 F.2d 829 (3rd Cir. 1985); *Barber Lines A/S v. M/V DONAU MARU*, 764 F.2d 50 (1st Cir. 1985);and, *Kingston Shipping Co. v. Roberts*, 667 F.2d 34 (11th Cir. 1982) (per curiam).

## III. The claimed physical damage claims were not foreseeable, even if they did constitute physical damage

   The District Court, in its reasons for judgment, found that physical damage existed with respect to three (3) of the claimants, Marine Turbine Technologies, Mason's Seafood, and Morton International, through its wholly owned subsidiary, CVD, Inc. d/b/a Rohm & Haas Advanced Materials.[7]

   The Court found that the claim of Marine Turbine Technologies that it suffered physical damage in the form of toxic gas permeation of its property simply does not meet the standard for physical damage.  As is noted, Marine Turbine Technologies

---

[7]      Record excerpt, pp 839-840

18

admitted that the damages it was claiming were for loss of use of its facilities during the evacuation. It admitted in deposition that it incurred no expenses related to clean up or to decontaminate its facility or equipment and that none of its facilities or equipment were damaged. Clearly, Marine Turbine Technologies does not have any physical damage to justify a claim for economic loss.

With respect to Mason's Seafood, a company doing business in Berwick, Louisiana, a considerable distance away from the Louisa Bridge, the only claim that it has that has even a slight color of physical damage is the fact that it lost an order of 88 boxes of processed crabs which spoiled at a supplier's freezer when the electricity was turned off during the evacuation. The loss of electricity because of the evacuation order of the State Police which caused the spoilage of the crabs is simply not physical damage as defined by this Court.

Finally, Morton International through its subsidiary, Advanced Materials, has a claim that it, in its operation of a chemical vapor deposition facility, suffered losses because the manufacturing runs that were underway at the time of the allision had to be prematurely terminated and the materials in those runs were lost. The products that were in the process of being manufactured were unable to be sold. Accordingly, they claim that this meets the physical damage requirement to satisfy economic loss as the necessary step to be entitled to recover.

With respect to all of these claimants, it is respectfully submitted that a determination actually need not be made as to whether or not these different claims amount to physical damage, even though it certainly appears that they do not meet the established criteria for physical damage.

Instead, it is a matter of whether, even if the claims can be classed as physical damage, the claims can survive the foreseeability requirement that has been established in this Court.

In that respect, the attention of the Court is called to the Court's rulings in the various Consolidated Aluminum cases. In *Consolidated Aluminum I, Consolidated Aluminum Corp v. C.F. Bean Corp.*, 772 F.2d 1217 (5th Cir. 1985) this Court reversed a ruling of the District Court that the plaintiff had not suffered any physical harm to its property. The Court then remanded the case to the District Court to determine the foreseeability of the plaintiff's injury under traditional Maritime law principles. 772 F.2d 1222, 1224.

On remand, the District Court again rejected the claims of Consolidated; on this occasion on the basis that the damages were unforeseeable. The damage was actually caused when a C.F. Bean dredge ruptured a pipeline which supplied gas to Consolidated Aluminum's operation. Because of the interruption of the gas supply, extensive damage was done to Consolidated's equipment at the plant. However, the

20

District Court, as affirmed by this Court, held that there was no duty owed by Bean to Consolidated inasmuch as the damages suffered by Consolidated were not foreseeable. *Consolidated Aluminum II, Consolidated Aluminum Corp v. C.F. Bean Corp*, 833 F.2d 65, 67 (5th Cir. 1987), *cert. den*. 486 U.S. 1055, 108 S.Ct. 2821 (1998).

Obviously, the foreseeability burden that Consolidated could not carry in that case is identical to the same burden that these three (3) claimants cannot carry in this case.

As to Marine Turbine Technologies, it is clear that there really is no physical damage involved, simply an interruption of the ability of Marine Turbine Technologies to deliver its product. However, even should that be classed as physical damage, obviously Marine Turbine Technologies is in the same position as was Consolidated in its case. Since the Marine Turbine loss is clearly not foreseeable there can be no recovery by them.

As to Mason's Seafood, a company located in Berwick, Louisiana many miles from the Louisa Bridge, its claim concerning its boxes of processed crabs are similarly not within the foreseeability umbrella of protection. It is simply not foreseeable that an allision with a bridge would lead to a loss of electricity which in turn would lead to a loss of 88 boxes of processed crabs.

21

Finally, with respect to the claim of Morton International as Rohm & Haas Advanced Materials, that operation is almost exactly like the Consolidated case, except for the fact that there was no physical damage to the Advanced Materials' machinery. It did have some product lost because of the shutdown of the machinery, but once again, this claim fails to meet the foreseeability tests and, therefore, must be rejected by this Court. Again, it is simply not foreseeable that an allision with a bridge would lead to the losses being claimed by Advanced Materials.

These claims are obviously extremely remote and, therefore, not claims that are within the protected zone established by the Maritime law.

## IV.    The District Court erred in creating a "geography exception" to the *Robins Dry Dock* rule as it was explicated by *TESTBANK*

In its opinion, the District Court indicated that it would endorse a "geography exception" to the overarching *TESTBANK* decision.[8]

In attempting to construct the geographical exception, the Court analogized it to the commercial fishermen exception that has been accepted in other applications of the *Robins Dry Dock* rule. The District Court stated "The only way to conduct a business, operate a store or marina and travel to and from Cypremore (sic) Point was by the use of the Louisa Bridge. Just as the water provides livelihood to commercial

---

[8]    Record excerpt, pp 835-836

22

fishermen, the Louisa Bridge is the way in which businesses on the Island open their

doors, acquire patrons and conduct business."[9]

The Court continued to state that this particular exception is self-limiting since

it does not involve any continuous foreseeability nor does it open the flood gates of

litigation sought to be avoided by *TESTBANK*. The Court states that inasmuch as the

bridge is the only way on and off of the island, a barge colliding with the bridge is a

foreseeable event which produces foreseeable consequences. Finally, the District

Court states that the exception would apply only to small geographical areas.

Unfortunately, this analysis is simply not correct. For example, in this Court's

ruling in the *Brown Water Towing* case, the Court specifically rejected the argument

that purely economic damages resulting from the isolation of an island by an allision

are recoverable. Indeed, this Court determined that the law was so clear on this point

that it was handled on the summary calendar and did not publish the opinion. It is

attached hereto in accordance with Local Rule 47.5.4 inasmuch as it is persuasive

even though it cannot be used as precedent.

There is simply no basis for a "geographical exception" that can be found either

in the *Robins Dry Dock* case or in the *TESTBANK* explication thereof. The fact of

the matter is that physical damage is the requirement and geography plays no part in

---

[9]     Record excerpt, p 835

23

determining whether or not there is any physical damage. Inasmuch as bridges

virtually always link areas that in many instances are isolated from each other by the

closing of the bridge, the geographical exception could not be said to be a unique

thing. What it would amount to, if adopted, would be a return to the case-by-case

foreseeability consideration that *TESTBANK* completely negated.

Even though the case is not one that deals with geography in isolation as is

claimed in this case, *Reserve Mooring, Inc. v. American Commercial Barge Line*, 351

F.3d 1069 (5th Cir. 2001) serves as an example of why isolation is of no importance

in considering the application of *TESTBANK*. The *Reserve Mooring* case is one in

which a mooring facility was blocked by the sinking of a barge. Because it was

blocked, the plaintiff, Reserve Mooring, lost the income that it would otherwise have

received from vessels using that facility.

The District Court had ruled that the plaintiffs could recover inasmuch as the

*TESTBANK* rule was merely an application of the general requirement that damages

be foreseeable in order to be recoverable. This Court, in reversing the District Court,

indicated that it had rejected a case-by-case foreseeability approach and had a bright

line requirement that physical injury to a proprietary interest is required.   In

concluding, this Court stated "Under *TESTBANK*, physical injury to a proprietary

interest is a prerequisite to recovery of economic damages in cases of unintentional

24

maritime tort.".  251 F. 3d 1069, 1071.  Thus, even though the mooring facility was isolated and, therefore unusable because of the sinking, recovery was not allowed.

For the foregoing reasons, the geographical exception crafted by the District court is clearly not an acceptable exception to the rule of *Robin's Dry Dock* as explicated by *TESTBANK*.

## V.    The District Court erred in denying the Motion for Summary Judgment of the State of Louisiana with respect to claims for economic loss unaccompanied by any physical damage to property

What is clear from the opinion of the District Court is that it is the view of that Court that any damages that flow from the closing of any artery of commerce, for example a bridge, should be classed as foreseeable and, whether or not any physical injury ensues, should be an event which gives rise to liability on the part of the one interdicting the artery of commerce.

That i s s imply n ot t he l aw, e ither f rom t he s tandpoint o f t he *TESTBANK* rationale, i.e. requiring physical damage, or from the ordinary maritime tort standard which imposes liability for foreseeable consequences.

It can only be said that a particular loss is a foreseeable loss if one assumes that all consequences that flow from the interruption of commerce are foreseeable.

For example, although we have discussed it in other terms, the claim being asserted by Mason's Seafood for the 88 cases of processed crabs is a classic example

25

of a lack of foreseeability. Mason's Seafood, located many miles distant, had 88

cases of crabs located at a processing facility that was within the evacuation zone.

Because of the interruption of the electrical supply to that processing facility, the 88

cases of processed crabs spoiled and had to be discarded. To be able to say that that

was a foreseeable consequence of the allision of the Louisa Bridge by the Kirby-

31801 is simply incorrect.

The District Court in its opinion referred to the *China Union* case as one that

had a "well founded analysis".[10] However, a reading of that opinion reveals that at

no time did it consider the *Robins Dry Dock* doctrine and, of course, it was decided

long before this Court handed down its decision in *TESTBANK*.

Continuing, the District Court refers to the "managerial factor" and the

"economic factor" with respect to its review of the applicability of *TESTBANK* to the

case before it.

The District Court dismissed the basis of this Court's analysis of the economic

consequences that could ensue, should the physical damage rule be overturned by

concluding that this Court appeared to be resting its decision "...on a feeling of

comfort...".[11]

---

[10]     Record excerpt, p 826

[11]     Record excerpt, p 828

26

The District Court also suggests that there is no authority that permits this Court to reach the results that ensue by the application of the *TESTBANK* doctrine. Its position is that Congress, not the Courts, have the authority to limit liability and, therefore, by limiting liability the Court accepts the role of a judicial activist, not an interpreter of existing laws and regulations.

This conclusion is simply incorrect inasmuch as this Court is following the well established rule contained in the *Robins Dry Dock* decision and, a long and accepted line of cases, not only from this circuit but from other circuits throughout the country.

Accordingly, it is clear that the District Court erred when it refused to grant the Motions for Summary Judgment of the State of Louisiana with respect to the economic loss claims that are not supported by physical damage to property.

## VI. The District Court erred in failing to dismiss the claims brought by the economic loss claimants under OPA 90.

The Oil Pollution Act of 1990 ("OPA 90") 33 U.S.C. § 2701, et seq, does not provide any avenue for recovery to claimants who have economic loss claims but no physical damage to any property caused by the escaping cargo. None of the claimants at issue in this appeal have any physical damage caused by the escape of the propane/propylene cargo and, therefore, just as was the case in the *Robins Dry Dock* and *TESTBANK* situations, no recovery is permissible under the auspices of that act.

27

Although there is a serious question as to whether or not the discharge in question actually triggered OPA 90, putting that to one side, the economic loss claimants have not stated a claim that would permit relief to be granted inasmuch as there has been no physical damage to their property by the cargo. Even the claimants who were found to have physical damage according to the District Court, Marine Turbine Technologies, Advanced Materials and Mason's Seafood do not have any physical damage that they can attribute to contact from the released cargo.

Accordingly, there is simply no recovery possible with respect to the State of Louisiana under the provisions of OPA 90. Insofar as it is applicable to the situation of the State of Louisiana, the State adopts by reference the brief filed herein by Water Quality Insurance Syndicate which has directly appealed the OPA 90 issue.

## VII. The District Court erred in failing to grant the Motion for Summary Judgment filed by the State of Louisiana with respect to claims brought under CERCLA.

As was the case with OPA 90, the ruling of the District Court in denying the Motion for Summary Judgment filed by the State of Louisiana with respect to alleged CERCLA liability is an error and must be reversed.

CERCLA is the acronym for the Comprehensive Enviromental Response Compensation and Liability Act, 42 U.S.C. § 9601, et seq. CERCLA is a statutory scheme that permits a private party to recover for response costs, removal and/or the

28

## **CONCLUSION**

The District Court committed reversible error with respect to its denial of the

Motions for Summary Judgment in the following respects:

1.     It failed to recognize that the Admiralty law of the United States provides the

exclusive remedy for any issues arising from the allision at issue in this

proceeding.

2.     The District Court committed reversible error by its finding that some of the

claimants suffered physical damage and, therefore, denied the Motions for

Summary Judgment.

3.     The District Court committed reversible error by attempting to create a

geographical or *ad hoc* exception to the rule of *Robins Dry Dock* as explicated

by the *TESTBANK* decision.

4.     The District Court committed reversible error by failing to dismiss the claims

of all of the economic loss claimants who suffered no physical damage to their

property.

5.     The District Court committed reversible error by failing to dismiss the claims

brought against the State of Louisiana pursuant to OPA 90 and CERCLA.

In view of the foregoing, the State of Louisiana through the Department of

Transportation and Development urges this Court to reverse the Judgment of the

District Court in its entirety and render Judgment in favor of the State of Louisiana

through the Department of Transportation and Development, dismissing all claims

of the fourteen (14) claimants which are at issue in this appeal.

Respectfully Submitted,

CHARLES C. FOTI, JR.
ATTORNEY GENERAL

BY: _____

W. GERALD GAUDET (#5971)
MARY M. HAMILTION (#20768)
JAMES P. DOHERTY, III (#25651)
VOORHIES & LABBÉ
700 St. John Street, Suite 400
Post Office Box 3527
Lafayette, Louisiana   70502-3527
Telephone: 337-232-9700

Special Assistant Attorney General

ATTORNEYS FOR THE STATE OF
LOUISIANA THROUGH THE
DEPARTMENT OF TRANSPORTATION
AND DEVELOPMENT

31