# EXHIBIT 6

Ex. 6
Original Brief of Defendant - Claimant - Appellant,
Water Quality Insurance Syndicate at xxxi-xxxii, 2-10,
14-30 *In re Taira Lynn Marine Ltd. No. 5*, 444 F.3d 371
(5th Cir. 2006) (No. 04-31069).

Case No. 04-31069

_____

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

In Re: In the Matter of the Complaint of TAIRA LYNN
MARINE LIMITED NUMBER 5 LLC, as Owner of the M/V
MR. BARRY for Exoneration From or Limitation of Liability
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TAIRA LYNN MARINE LIMITED NUMBER 5, LLC; TAIRA LYNN
MARINE, INC.; TAIRA LYNN, INC.; LLM MAINTENANCE &
SURVEYING, INC.; LARRY J. LEBOUEF; SYLVIA LEBOUEF

Plaintiffs-Appellants

v.

JAYS SEAFOOD, INC., ET AL.

Defendants

E. J. MASON, INDIVIDUALLY and doing business as Mason Seafood

Defendant - Claimant - Third Party Plaintiff - Appellee

COASTLINE MARINE, INC.; MARINE TURBINE TECHNOLOGIES, LLC;
MTT PROPERTIES, LLC; MTT MANUFACTURING, LLC; MORTON
INTERNATIONAL, INC.; C V D, INC., doing business as Rohm & Haas
Advanced Materials; TWIN BROTHERS MARINE; COY REEKS, Individually
and doing business as Riverfront Seawalks and Bulkheads; TWIN BROTHERS
MARINE CORP.; BAGALAS QUALITY OYSTERS, INC.; DOUGLAS
CRYSTAL OLANDER, Individually and doing business as Big D's Seafood; IVO
JURISICH, Individually and doing business as Blue Gulf Seafood, Inc.; TOMMY
KLEINPETER, Individually and on behalf of Cajun Wireline, Inc.; NORTH
AMERICA SALT CO.; CAREY SALT CO.; PAM DORE, Individually and on
behalf of Cove Marina; LEGNON ENTERPRISES, INC.

Defendants - Claimants - Cross-Claimants - Appellees

v.

Wireline, Inc.; NORTH AMERICA SALT CO.; PAM DORE, Individually
and on behalf of Cove Marina; LEGNON ENTERPRISES, INC.

Defendants - Claimants - Cross Claimants - Appellees

---

Appeal from the United States District Court
for the Eastern District of Louisiana

---

## ORIGINAL BRIEF OF DEFENDANT - CLAIMANT - APPELLANT, WATER QUALITY INSURANCE SYNDICATE

---

**Montgomery, Barnett, Brown**
  **Read, Hammond & Mintz**
**By:**  **Joseph P. Tynan**
    **A. Gordon Grant, Jr.**
    **Philip S. Brooks, Jr.**
    3200 Energy Center
    1100 Poydras Street
    New Orleans, LA  70163

**Onebane Law Firm**
**By:**  **Timothy J. McNamara**
    **Brent G. Sonnier**
    102 Versailles Blvd.,
    Suite 600
    Lafayette, Louisiana 70501

Attorneys For Water Quality Insurance Syndicate

# TABLE OF CONTENTS

Page

Certificate Of Interested Persons . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

Statement Regarding Oral Argument  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  xxx

Table Of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  xxxi

Table Of Authorities  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  xxxiii

Statement Of Jurisdiction  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement Of The Issues Presented for Review  . . . . . . . . . . . . . . . . . . . . . . . . . 2

Statement Of The Case  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Statement Of Facts  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Summary Of The Argument  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Argument  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    A.    Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    B.    The Economic Loss Claims Are Not Recoverable Under The Comprehensive Environmental Responses, Compensation And Liability Act, 42 U.S.C. § 9601, *et. seq.* . . . . . . . . . . . . . . . . . . . . . . . 10

    C.    The Economic Loss Claimants Fail To State Claims Upon Which Relief Can be Granted Under The Oil Pollution act of 1990, 33 U.S.C. § 2701, *et. seq.*  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    D.    The Economic Loss Claims Are Not Recoverable Under United States Maritime Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Certificate Of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Certificate Of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

The principal issues presented to this Court for review are:

1.      Whether the Comprehensive Environmental Responses, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601, *et. seq.*, provides a private remedy for economic loss where there is no direct physical damage arising from any contact with the gaseous cargo released from a barge after a collision, or for property damage.

2.      Whether the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. § 2701, *et. seq.*, allows recovery of economic loss claims when the gaseous cargo released from a barge after collision did not cause any physical damage to any property.

3.      Whether *Robins Dry Dock &Repair v. Flint*, 275 U.S. 303, 48 S.Ct. 134 (1927) (hereinafter "*Robins Dry Dock*") and *State of La. ex. rel. Guste v. M/V TESTBANK*, 752 F.2d 1019 (5th Cir. 1985) (*en banc*) (hereinafter "*TESTBANK*") apply to deny recovery under the general maritime law for economic loss to claimants who have not sustained any physical damage to a proprietary interest from a gaseous cargo released from a barge in collision.

## STATEMENT OF THE CASE

On July 30, 2001, Taira Lynn Marine Limited No. 5, L.L.C., as owner of the M/V MR. BARRY, filed a Petition for Exoneration From or Limitation of Liability under Supplemental Rule F for Certain Admiralty Claims of the Federal Rules of Civil Procedure, and 46 U.S.C. § 181, *et. seq.*[1]  The petitioners sought exoneration from or limitation of liability to all claimants arising out of the collision of the M/V MR. BARRY and its tow, the Barge KIRBY 31801 (owned by Kirby Inland Marine, L.L.C.) with the Louisa Bridge, a swing bridge spanning the Gulf Intracoastal Waterway, in the early morning hours of July 19, 2001.  Hundreds of claimants appeared in the proceeding, including the State of Louisiana, as owner and operator of the Louisa Bridge, which allegedly was damaged in the collision.  Various parties intervened or otherwise appeared in the case, including the Water Quality Insurance Syndicate (hereinafter "WQIS"), which had issued a specialized marine indemnity policy to the Taira Lynn entities.

When the Barge KIRBY 31801 and the Louisa Bridge collided, three valves on the deck of the tank barge were fractured or broken, allowing the barge's gaseous

---

[1] Record, page 1-8.  On September 17, 2001, the Petition was amended to add as complainants Taira Lynn Marine, Inc.; Taira Lynn, Inc.; L.L. Maintenance & Surveying, Inc.; Larry J. Leboeuf and Sylvia Leboeuf as owners, owners *pro hac vice*, operators and/or managing agents of the M/V MR. BARRY.  These entities collectively are referred to as "Taira Lynn" throughout this brief.

cargo of propane/polypropylene mix to be released as a vapor into the atmosphere. The Louisiana State Police ordered an evacuation of a certain area around the bridge, and electric service to that area was discontinued as a precaution.

Of all of the claims that were filed in the limitation proceeding, fourteen of those claims were solely for economic loss arising from the evacuation ordered by the State Police or from the discontinuance of electric service.

Taira Lynn and the State of Louisiana filed Motions for Summary Judgment in the U.S. District Court for the Western District of Louisiana, seeking to dismiss those fourteen economic loss claims as not cognizable under the general maritime law, following *Robins Dry Dock* and *TESTBANK*, nor under OPA, nor under CERCLA. WQIS filed a memorandum in response to those motions.

The district court denied the Motions for Summary Judgment, opining that a "geographical exception" applied to the fourteen claimants under the general maritime law, which set those claims apart from those which were denied in *Robins Dry Dock* and in *TESTBANK*. The district court also denied the Motions for Summary Judgment which sough to dismiss the fourteen economic loss claims under OPA and CERCLA, simply finding that there were questions of fact, without explanation, which would not allow it to grant the motions brought under those statutes.

-4-

On request, the district court found that there were controlling issues of law which, if reviewed by this Court, would materially advance the litigation; it certified its judgment on the motions for an immediate appeal. Several parties to the motions, including Taira Lynn, the State of Louisiana, WQIS and Kirby Barge Line, petitioned this Court for permission to appeal, which was granted.

## STATEMENT OF FACTS

On the early morning hours of July 19, 2001, the M/V MR. BARRY, pushing ahead the Tank Barge KIRBY 31801, was traveling from east to west on the Gulf Intracoastal Waterway near Cypremort Point, Louisiana. The M/V MR. BARRY was owned by Taira Lynn, Inc. and operated by Taira Lynn No. 5, Limited. The Barge KIRBY 31801, which was carrying a gaseous cargo of propane/polypropylene mix, was owned by Kirby Inland Marine, L.L.C.

As the M/V MR. BARRY and tow approached from the east the Louisa Bridge spanning the Gulf Intracoastal Waterway (GIWW), radio communications were exchanged between the bridgetender, Ruby Simon, and the pilot of the MR. BARRY, Hasley Prosperie. Nevertheless, the bow of the Barge KIRBY 31801 struck the bridge while the latter was swinging; both the bridge and the tow were moving, albeit at a low rate of speed, at the time of the collision.

The collision caused relatively little physical damage to either the bridge or the

tank barge. However, three valves on the deck of the tank barge were damaged, causing its cargo to be released into the air in a vapor. The collision was reported to the U.S. Coast Guard and to the Louisiana State Police; the latter required an evacuation of several businesses near the Louisa Bridge. Electric service also was discontinued to the area evacuated, given what was thought to be the explosive nature of the escaping vapor.

Taira Lynn filed a Petition for Exoneration From or Limitation of Liability under 46 U.S.C. § 183, *et. seq.*, as owner and operator of the M/V MR. BARRY. Hundreds of claims were filed in the limitation proceeding.[2]  Of those, twelve business entities filed claims purely for economic loss, *i.e.*, loss of profit solely as a result of the evacuation order of the Louisiana State Police. Two other business entities filed claims for economic loss and for indirect property damage, *i.e.*, damage to their inventory or their product which occurred not as a result of the collision nor of contact with the vapor released from the barge. The property damage claimed by these two entities was solely as a result of the cessation of operation of electric service to the area ordered evacuated by the Louisiana State Police, which resulted in damage to those entities' inventory or product being manufactured at the time the

---

[2] Some claims alleged personal injuries and/or direct physical damage as a result of the collision or of contact with the vapor released from the barge; those claims are not before the court on this appeal.

collision occurred.  The specifics of the claims of these fourteen business entities have been set forth by Taira Lynn on pages 6 through 18 of its Original Brief, and so need not be reiterated here.

Taira Lynn and the State of Louisiana, as the owner of the Louisa Bridge, filed Motions for Summary Judgment in the U.S. District Court for the Western District of Louisiana, asking the district court to dismiss the claims of those fourteen entities, because those claims are not cognizable under general maritime law, under the Oil Pollution Act of 1990, 33 U.S.C. § 2701, *et. seq.* ("OPA"), nor under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601, *et. seq.* ("CERCLA").  The district court found that jurisprudence under the general maritime law, principally *Robins Drydock* and *TESTBANK*, did not prohibit these fourteen claims from being adjudicated before it, and so denied the Motion for Summary Judgment based on general maritime law.  It also found that there were issues of fact which prevented it from deciding the motions under OPA and CERCLA.  This appeal seeks to reverse the decision of the district court, and asks this court to grant the Motions for Summary Judgment in all respects.

## SUMMARY OF THE ARGUMENT

As a result of the collision of the M/V MR. BARRY and tow with the Louisa Bridge spanning the Gulf Intracoastal Waterway on July 19, 2001, twelve business

entities who were required by the Louisiana State Police to evacuate the area filed claims in Taira Lynn's limitation proceeding, alleging pure economic loss, *i.e.*, no physical damage to any property at all. Those claimants are Coast Line Marine; North American Salt Company/Carey Salt Company; Twin Brothers' Marine; Cajun Wireline, Inc.; Legnon Enterprises, Inc.; Riverfront Seawalls and Bulkheads; Marine Turbine Technologies, L.L.C.; Blue Gulf Seafood, Inc.; Bagala's Quality Oysters, Inc.; Big D's Seafood; Cove Marina; and Morton Salt. The particulars of each of those twelve claims are set out in Section B. of the Statement of Facts in Taira Lynn's Original Brief in this appeal, and so will not be repeated here. In addition, two claims (also set out with particularity by Taira Lynn in Section C. of the Statement of Facts in its Original Brief) alleged not only economic loss, but also indirect property damage. Rohm & Haas Advanced Materials ("Advanced Materials") alleged that, as a result of the evacuation order of the Louisiana State Police, they were required to prematurely terminate production runs, which, in turn, caused raw materials to be lost to low quality unmarketable products. Mason's Seafood claimed a loss of eighty-eight boxes of processed crabs that were being stored at a seafood dealer within the evacuation zone, as well as an economic loss based on its inability to buy crabs from dealers within the evacuation zone and fill customer's orders. None of the fourteen claims allege physical damage as a result of contact with the gaseous vapor released

-8-

from the barge, nor do they assert economic loss as a result of physical damage to any other property from contact with that vapor.

Taira Lynn, in Sections I, II, III and VI of its Original Brief, sets forth a cogent and compelling argument for the dismissal of these fourteen claims under federal maritime law.  WQIS adopts the argument of Taira Lynn in those respects.  In addition, WQIS would show to the Court that Taira Lynn's Motion for Summary Judgment in the district court to dismiss these fourteen claims should have been granted as a matter of law because none of those claims are cognizable under either CERCLA, which provides a private right of action only for cleanup costs, or OPA, which allows recovery for economic damages as a result only of damage to property directly caused by the discharge of oil by a vessel.  Therefore, whether the gaseous cargo released from the Barge KIRBY 31801 was a "hazardous substance" as set forth in CERCLA, or "oil" as set forth in OPA, the fourteen economic loss claimants have no right of action as a matter of law to recover for their claimed losses.

## **ARGUMENT**

### A.    **Standard Of Review**

The denial of motions for summary judgment in the district court involves question of law that are reviewed *de novo*, applying the same legal standards as the district court applied to determine whether summary judgment was appropriate.

*Ramming v. Natural Gas Pipeline Co. of America*, 390 F.3d 366 (5th Cir. 2004). Additionally, because this case turns on the proper interpretation of the Oil Pollution Act of 1990, 33 U.S.C. § 2701, *et. seq*, and of the Comprehensive Environmental Responses, Compensation and Liability Act, 42 U.S.C. § 9601, *et. seq.*, this Court reviews the district court's judgment *de novo*. *Dial One of The Mid-South v. Bellsouth,* 269 F.3d 523, 525 (5th Cir. 2001).

> **B.    The Economic Loss Claims Are Not Recoverable Under The Comprehensive Environmental Responses, Compensation And Liability Act, 42 U.S.C. § 9601, *et. seq.***

The Comprehensive Environmental Responses, Compensation and Liability Act, 42 U.S.C. § 9601, *et. seq.*, provides for the circumstances of liability and possible damages in the event of a release into the environment of a hazardous substance, as defined in the Act.  With particular reference to this case, the Act provides that the owner and operator of a vessel from which there is a release of a hazardous substance which causes the incurrence of response costs shall be liable for:

A.    All costs of removal or remedial action incurred by the government not inconsistent with the National Contingency Plan;

B.    Any other necessary costs of response incurred by anyone consistent with the National Contingency Plan;

C.    Damages for injury to, destruction of, or loss of natural resources,

C.    **The Economic Loss Claimants Fail To State Claims Upon Which Relief Can Be Granted Under The Oil Pollution Act of 1990, 33 U.S.C. § 2701, *et. seq*.**

The Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. § 2701, *et. seq.*, provides in § 2702(a) that a "responsible party" (as defined by the Act) is liable for damages under certain conditions.  While WQIS and Taira Lynn have denied their liability under OPA, and continue to do so, nevertheless the fourteen claimants in this case are not entitled to recover under that statute even if it were to apply in this case.

The specific damages for which the responsible party is claimed to be liable in this case are set forth in subsection (b)(2) of § 2701 as follows:

> (B)    Real or personal property
>
> Damages for injury to, or economic losses resulting from destruction of, real or personal property, which shall be recoverable by a claimant who owns or leases that property.
>
> ***
>
> (E)    Profits and earning capacity
>
> Damages equal to the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources, which shall be recoverable by any claimant.

If OPA applies (which it certainly does not), the legal issue which the district court could have decided is whether physical damage to property as a result of contact with

-14-

the alleged pollutant is a prerequisite to recovery of damages, specifically economic damages. Even assuming the discharge of the gaseous cargo triggered OPA, which is denied, the fourteen claimants here fail to state claims upon which relief can be granted because of the absence of physical damage to property from the vapors which were released.

In order to state a claim upon which relief can be granted under subsection (B), a claimant must have sustained damage to **property in which the claimant has a proprietary interest**. This provision is simply a codification of the *Robins Dry Dock* requirement that the OPA event, *i.e.*, the discharge of oil, cause direct physical damage to property in which the claimant has a proprietary interest in order to state a valid claim. None of the fourteen economic loss claimants here allege that their property was physically damaged because of contact with the vapors released from the barge. Twelve of the fourteen claimants allege only economic loss, and admit to no physical damage. Advanced Materials has alleged production of low-quality unmarketable products as a result of the premature termination of its production runs, not the result of contact with substances released from the barge. Mason Seafood has alleged loss of its crab inventory caused by a disruption of electric service to the cold storage unit where the inventory was stored, also not the result of contact with substances released from the barge. Without proof of physical damage to the

economic claimants' property by the atmospheric release of the barge's gaseous cargo, these stated claims are not cognizable under subsection (B) and must be dismissed.

Subsection (E) predicates the recovery of damages for lost profits and the impairment of earning capacity on the injury or destruction of real property, personal property or natural resources which causes the complained of damages. That provision allows recovery for "Damages . . . *due to* the injury, destruction, or loss of real property, personal property, or natural resources . . . . ) (Emphasis added.)  This subsection expands the *Robins Dry Dock* rule to recognize this Court's *TESTBANK* exception in environmental damage cases.  Thus, a claimant who did not sustain physical damage to his own property as a result of contact with oil from an OPA event may recover his economic losses suffered "**due to**" the physical damage to another party's property from the alleged pollutant.  The "**due to**" language of § 2702(b)(2)(E) codifies the *TESTBANK* exception requiring that a claimant's economic losses be the direct result of oil pollution that damaged another's property.

There are no decisions of this Court interpreting subsections (B) and (E), and there are not many cases from other courts interpreting those subsections either. However, Congress shed light on the meanings of those provisions in the legislative history of the statute.  With respect to subsections (B) and (E), Congress clearly stated

recovery is only provided where there is injury or damage to property:

> Subsection (b)(2)(B) allows a person who owns or leases real or personal property to recover for injury to, or economic losses resulting from the destruction of that property. . . . Subsection (b)(2)(E) provides that any claimant may recovery for loss of profits or impairment of earning capacity **resulting from injury to property or natural resources**. The claimant need not be the owner of the damaged property or resources to recover for lost profits or income. **For example, a fisherman may recover lost income due to damaged fisheries resources, even though the fisherman does not own those resources**.

H.R. Conf. Rep. No. 101-653, at 103 (1990), reprinted in 1990 U.S.C.C.A.N. 779, 781. (Emphasis added.)

This legislative history and the text of § 2702 show that OPA made two important changes to the law that existed before the EXXON VALDEZ incident. First, OPA allowed actions brought by private persons for damages resulting from an oil spill, which actions were previously available only to the federal government under the Federal Water Pollution Control Act Amendments of 1972 (FWPCA), 33 U.S.C. §§ 1251-1387. *See* 33 U.S.C. § 2702(b)(2)(B), (C), and (E). Second, it allowed recovery by private persons who do not have a proprietary interest in the property that is actually damaged by the OPA event, thereby recognizing the exception to the *Robins Dry Dock* rule first set forth by this Court in *TESTBANK*. *See*

-17-

33 U.S.C. § 2702(b)(2)(E).  However, the text and legislative history show that OPA, particularly § 2702(b)(2)(B) and (E), maintained the requirement for physical injury to property from the alleged pollutant, thereby maintaining *Robins Dry Dock*'s necessary limitation on what would otherwise result in "no determinable measure of the limit of foreseeability." *TESTBANK*, 752 F.2d at 1028.  Indeed, if § 2702(b)(2)(E) did not include a limitation that the claimant's economic losses be the direct result of damage to another's property, the scope of claimants who could potentially recover for their purely economic losses would be virtually endless, with no determinable limit where the line should be drawn to deny recovery.

This limitation on the scope of § 2702(b)(2)(E) is also found in the above quoted legislative history discussing the claims of a commercial fisherman.  Although a commercial fisherman would not suffer damage to his property as a result of an OPA event, he might sustain impairment to his earning capacity because of his inability to fish the waters polluted by the OPA event.  The fisherman's economic losses would be "due to" the contamination of the waters where he fishes.  His damages would be the direct result of damage to the water.  Section 2702(b)(2)(E) would not, however, allow the seafood distributor or seafood restaurant to recover for their purely economic losses caused by the failure of the fishermen to deliver their catch, as those damages are not "due to" the physical damage to the water.  Such

-18-

economic losses would not be "due to" contamination of the fisheries resources but would instead be the result of the fisherman not supplying fish to the distributors and restaurants.

The purely economic loss claims in the instant action should be dismissed as a matter of law under § 2702(b)(2)(E) because the claimants' losses are not "due to" damage to the property of others.  The economic loss claimants damages are "due to" the mandatory evacuation of the area surrounding the Louisa Bridge.  Their claimed losses are the direct result of the evacuation order and not the result of property damage.

Neither can the two indirect property damage claimants find relief under § 2702(b)(2)(E).  Advanced Materials' claimed economic damages were the result of the premature termination of its manufacturing process due to the evacuation order of the Louisiana State Police, which allegedly resulted in the production of off spec products.  The production of the off-spec products was not "due to" contamination from a petroleum product but was instead the result of the mandatory evacuation. The discontinuance of electric service ordered by the State Police likewise caused Mason Seafood's alleged damages to the cold storage unit where its crabs were located.  The alleged spoliation of Mason Seafood's crab inventory was not "due to" contact of the cold storage unit or the crabs stored therein with a petroleum product.

In *Alabama State Docks Dept. v. Compania Antares de Navegacion*, 1998 WL 1749264 (S.D. Ala. Aug. 27, 1998), *aff'd*, 194 F.3d 1323 (11th Cir. 1999), the M/V ANTARES developed mechanical and structural difficulties in the Gulf of Mexico; the U.S. Coast Guard ordered the vessel into the Port of Mobile, Alabama, because of her unseaworthy condition. *Id*. at *1. While moored at the facilities of the plaintiff, Alabama State Docks, the vessel leaked oil into the water requiring an oil containment boom to be placed around the vessel. *Id*. at *1. When the vessel owner did not pay Alabama State Docks for wharfage and dockage charges, it sued the vessel owner. *Id*. at *1. Several issues were before the court, including an argument made under OPA that Alabama State Docks should be entitled to recover its loss of profit or impairment of earning capacity under subsection E of the statute.[5] The court said:

> OPA 90 also provides for recovery of loss of revenues and for lost profits and earning capacity [quoting Subsection (E) of the statute]. **The key phrase . . . is "due to the injury, destruction or loss . . . ."** Plaintiff does not, and cannot, allege that there was any such loss that would trigger its recovery of damages under OPA 90. There was no oil spill, ***nor*** was there ***a discharge of oil or hazardous substances that caused injury*** to the plaintiff's real or personal property or to its natural resources. Therefore,

---

[5] The decision of the Southern District of Alabama, as reported in Westlaw, indicates that a claim was made under subsection (F) of the statute. However, subsection (F) relates to public services, and the discussion of the court concerning the claim clearly mentions lost profits and earning capacity, and quotes subsection (E) of the statute as if it were subsection (F).

> plaintiff cannot recover under the damages clauses of OPA 90.

*Id.* at *4-*5.  [Emphasis added.]  That decision, which was affirmed by the Eleventh Circuit, interprets subsection (E) to require direct damage to property from the alleged pollutant before a claim for loss of earnings or loss of profits can be maintained. None of the fourteen claimants in this case can point to such damage.

In *Petition of Cleveland Tankers, Inc.*, 791 F.Supp. 669 (E.D. Michigan 1992), the Court considered economic damage claims asserted when a tanker unloading gasoline broke loose from its mooring as a result of an explosion and fire.  791 F.Supp. at 669.  Because of the accident, the Coast Guard closed the channel for over a month.  The court, relying on *Robins Dry Dock* and *TESTBANK*, granted motions by the defendants to dismiss the maritime economic loss claims.  The business claimants argued that their claims for economic loss were "cognizable under the OPA because gasoline was spilled into the river as a result of the accident."  *Id.* at 678. The claimants sought economic damages for lost business, increased operating costs, and interruption of trade, which they claimed under subsections (C) and (E) of § 2701(b)(2).  The court held that the two damage provisions did not allow recovery for the economic losses claimed by the claimants.  Regarding Subsection (C), the court noted:

> Contrary to the claimants' assertion, they did not use the

> river for "subsistence use" – such term relates to use of a
> natural resource, such as water, to obtain the minimum
> necessities for life.  The claimants seek to stretch the term
> well beyond its plain meaning to include as "subsistence"
> any business activity.

*Id.*  The court further found that the claimants could not recover under subsection (E)

because "[n]one of the claimants . . . alleged '**injury, destruction, or loss**' to their

property," except one, Middle Ground Marine, Inc.  *Id.* at 679.  [Emphasis added.]

Middle Ground Marine had alleged smoke damage to its property from the fire, which

the court characterized without analysis as a claimed "physical injury," allowing this

claim to withstand summary judgment.  *Id.* at 79 and n.8.[6]  Accordingly, the court

granted the defendants' motions to dismiss all claimants who could not allege

physical injury to property.

The economic loss claimants in this case have not alleged damage to their

property as a result of contact with the gaseous cargo released from the barge.

Rather, the claimants' alleged damages are based purely on the interruption of their

businesses during the evacuation period.  Like the claimants' damages arising out of

the closing of the waterway in *Cleveland Tankers, Inc.*, the economic loss claimants'

damages in the case at bar are based upon the evacuation of the area surrounding the

---

[6] The holding of the district regarding the Middle Ground Marine claim is inconclusive, at
best.  Although that court did not dismiss the claim on motion, the court did not otherwise
address the claim.

-22-

Louisa Bridge and not physical injury to property.

The Court of Appeals for the Fourth Circuit has interpreted subsections (B) and (E) of § 2702(b)(2) of OPA precisely as WQIS urges here.   Recognizing that § 2702(b)(2) includes damages for real or personal property under subsection (B), and for profits and earning capacity under subsection (E), the Fourth Circuit held that, "Removal costs and damages specified in § 2702(b) are those that result from a discharge of oil or from a substantial threat of a discharge of oil into navigable waters or the adjacent shoreline." *Gatlin Oil Co., Inc. v. U.S.*, 169 F.3d 207, 210-211 (4th Cir. 1999).

In *Gatlin*, a vandal jammed open seven of Gatlin's above ground fuel storage tanks causing an oil spill, some of which seeped through dykes to a creek that flowed into navigable waters of the United States.  Vapors from the discharged oil ignited a fire that burned for several hours before being extinguished.  The fire destroyed a warehouse, a bulk plant, inventory, other property, a loading dock, and several vehicles.  *Id*. at 209.  Gatlin was entitled to a complete defense because an unknown vandal caused the oil spill (33 U.S.C. 2702(a)(3)), and it presented a claim to the U.S. Coast Guard National Pollution Fund Center for all of its damages resulting from the discharge of oil and the ensuing fire.  *Id*. at 210.  The court characterized the principal dispute to require a determination of the damages that are compensable under § 2702

-23-

of OPA, and requiring an interpretation of the entirety of that section.

Section § 2702(a) states:

> . . . [E]ach responsible party from which oil is discharged, or which poses the substantial discharge of a discharge of oil, into or upon the navigable waters of adjoining shoreline . . . is liable for the removal costs and damages specified in subsection (b) *that result from such incident.*

Quoted by the court, 169 F.3d at 210. [Emphasis in original.] Agreeing with the interpretation of that subsection made by the U.S. Coast Guard, which is expressly directed by Congress to administer OPA (33 U.S.C. § 2701(33)), the court found that the antecedent of the words "such incident" in subsection (a) is the discharge or substantial threat of discharge into navigable waters or adjacent shoreline, and declined to rely on the definition of incident in § 2701(14).  The court reasoned that the statement in § 2702(a) makes the responsible party liable for damages that result from *such* incident.  Because the word "such" is included in that statute, and requires a clear antecedent, then "such incident" refers to the discharge or substantial threat of discharge of oil mentioned in section 2702(a).  Relying upon the definition of

-24-

"such" in *Black's Law Dictionary*[7] and in *A Dictionary of Modern Legal Usage*[8], the court held that the Coast Guard's construction of 2702(a) is grammatically correct and accommodates the purpose of the act.   The court specifically adopted that interpretation, and said:

> We hold that the removal costs and damages specified in Section 2702(b) are those that result from a discharge of oil or from a substantial threat of a discharge of oil into navigable waters or the adjacent shoreline.

In straightforward and definite language, the Fourth Circuit determined that it is not the meaning of only the word "incident" that was at issue when determining the damages recoverable under § 2702(b).   Instead, it is the meaning of the words, "*such* incident" as they appear in § 2702(a).   It is appropriate to consider the language preceding the word "such," *i.e.*, the last antecedent,[9]  to determine what sort of damages can be said to "result from such incident."   The natural meaning of the word "such," used here as an adjective, is to reference a subject described immediately before it.   That subject is the responsible party for a vessel or facility "from which oil

---

[7] "Identical with, being the same as what has been mentioned. . . . 'Such' represents the object as already particularized in terms which are not mentioned, and is a descriptive and relative word, *referring to the last antecedent*."   *Black's Law Dictionary* (6th ed. 1990) at 1432. [Emphasis added.]

[8] "[Such] is a deictic term which *must refer to a clear antecedent*."   *A Dictionary of Modern Legal Usage* (2d Ed. 1995) at 849. [Emphasis added.]

[9] See footnotes 7 and 8, *infra*.

is discharged . . . into or upon the navigable waters . . . ." Thus, in providing that a responsible party is liable for removal costs and damages that result from, "such incident," Congress has made the responsible party liable for those damages that result from a discharge or substantial threat of discharge of oil into navigable water, not from an evacuation nor from a disruption if electric service..

Other sections of OPA are consistent with the Fourth Circuit's interpretation of § 2702(a) and (b).  For example, § 2703(a) provides that a responsible party is not liable for damages under § 2702 if the responsible party established, "that the discharge or substantial threat of a discharge of oil and the *resulting damages or removal costs* were caused" by an act of God, war or a third party.  That section clearly equates "removal costs or damages under § 2702" with removal costs or damages ***resulting*** from a discharge or substantial threat of discharge.  So, too, does § 2702(d)(1)(A), which provides that if the responsible party shows that a "discharge or threat of a discharge and the ***resulting*** removal costs and damages" were caused by a third party, then the third party is treated as the responsible party for liability purposes.  (Emphasis added.)

In § 2702(a), Congress did not say that the responsible party is liable for all removal costs and damages stemming from any incident or from an incident; the use by Congress of the words "***such*** incident" signals a deliberate limitation on the scope

-26-

of damages to those resulting from the sort of incident described in § 2702(a), *i.e.*, a discharge or substantial threat of discharge of oil into the navigable waters. To make any other interpretation simply reads out the adjective "such," from its modification of the noun "incident," in § 2702(a). Thus, regardless of whether the gaseous cargo of the Barge KIRBY 31801 which was released as a vapor into the atmosphere could be considered "oil" under OPA or not, the plain fact remains that, even if it were to be considered that way, the damages claimed by the fourteen economic loss claimants in this case are not recoverable under that statute.

The release of the gaseous cargo from the barge in this case prompted the State Police to evacuate the area surround the Louisa Bridge. This Court must find that the claimed economic damages in this case were not caused by the release of the gaseous cargo from the barge. The uncontradicted facts demonstrate that the claimed economic damages were caused solely by the ordered evacuation, and in some cases, the loss of electrical power as a result of the evacuation. Because the claimed economic damages were not the direct result of property damaged by an OPA event, this Court should find as a matter of law that the economic loss claimants in this case fail to state claims upon which relief can be granted under OPA.[10]

---

[10] Neither can the economic loss claimants seek any relief under the Louisiana Oil Spill Prevention and Response Act (OSPRA), La. Rev. Stat. 30:2451, *et. seq.* OSPRA is Louisiana's marine pollution law. Like CERCLA, OSPRA does not provide a private cause of action.

### D.     The Economic Loss Claims Are Not Recoverable Under United States Maritime Law.

The fourteen economic loss claims are not recoverable under federal maritime law. *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 48 S.Ct. 134 (1927), nor under *State of La. ex. rel. Guste v. M/V TESTBANK*, 752 F.2d 1019 (5th Cir. 1985). The district court's application of a unique "geographical exception" to *Robins Dry Dock* and *TESTBANK* is without factual or legal support.  In support of its argument, WQIS adopts the argument of Taira Lynn Marine Limited No. 5, L.L.C.; Taira Lynn Marine, Inc.; Taira Lynn, Inc.; L.L.M. Maintenance & Surveying, Inc.; Larry J. Lebouef and Sylvia Lebouef; specifically, its arguments labeled I, II, III and VI in its Original Brief filed herein.

## CONCLUSION

Fourteen claimants have asserted claims for economic loss in the limitation proceeding filed on behalf of Taira Lynn arising out of the collision of the M/V MR. BARRY and tow with the Louisa Bridge spanning the Gulf Intracoastal Waterway on July 19, 2001.  Twelve of those claimants assert purely economic claims, *i.e.*, they can point to no physical damage whatsoever.  The other two claimants sustained no physical damage as a result of the vaporized release of the gaseous cargo from the barge; the physical damage they claim, if any, occurred as a result of the evacuation

and/or discontinuance of electric service ordered by the Louisiana State Police, such that manufacture of products being produced was abandoned, allegedly making those products useless, and/or products requiring refrigeration allegedly were spoiled when electric service was discontinued.  Whether or not the gaseous cargo released from the Barge KIRBY 31801 was a hazardous substance under CERCLA, or was oil under OPA, those fourteen claimants have no right of action against either the barge owner, the tug owner or the bridge owner in this case.  CERCLA provides a private right of action only for costs to clean up product which is a threat to the environment. *Amoco*, *supra*; *Holloway*, *supra*.  OPA provides a private right of action for economic damages which occur as a direct result of the discharge of oil, or the substantial threat of discharge of oil, into or upon the navigable waters of the United States.  *Gatlin*, *supra*.  None of the damages claimed by any of the fourteen claimants are clean up costs under CERCLA, and none of them occurred as a direct result of the discharge or vaporized release of the gaseous cargo of the barge in this case.

In addition, none of the fourteen economic loss claimants may recover their asserted damages under the general maritime law of the United States.  *Robins Dry Dock*, *supra*; *TESTBANK*, *supra*.  There is no "geographical exception" to the general maritime law which would give those parties a rights of action against the barge owner, the tug owner or the bridge owner.

-29-

Therefore, the fourteen economic loss claims should have been dismissed by the district court, and must be dismissed by this Court, because they are without factual or legal basis.

NEW ORLEANS, LOUISIANA, this 18th day of January, 2005.

Respectfully submitted,

_____

**Joseph P. Tynan (La. Bar Roll No. 12973)**
**A. Gordon Grant, Jr. (La. Bar Roll No. 6221)**
**Philip S. Brooks, Jr. (La. Bar Roll No. 21501)**
**Montgomery, Barnett, Brown, Read,**
  **Hammond & Mintz, L.L.P.**
3200 Energy Center
1100 Poydras Street
New Orleans, LA  70163
Telephone:  (504) 585-3200
Fax: (504) 585-7688

And

**Timothy J. McNamara (La. Bar Roll No.10614)**
**Brent G. Sonnier (La. Bar Roll No. 22158)**
**Onebane Law Firm**
102 Versailles Blvd., Suite 600
Lafayette, Louisiana 70501
Telephone: (337) 237-2660
Fax: (337) 266-1232

*Attorneys for Water Quality  Insurance Syndicate*

-30-