UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO on APRIL 20, 2010 | § § § § § | MDL No. 2179<br>SECTION: J |
| Applies to: | § § | Judge Carl J. Barbier<br>Magistrate Judge Sally Shushan |
| *Kleppinger v. Transocean Deepwater Drilling Inc., et al.* No. 2:10-CV-3168 | § § § § | |
| **Plaintiffs in Intervention:** Bill Francis, Tyrone Benton, and Carlos Ramos | § § § | |

### REPLY IN FURTHER SUPPORT OF DEFENDANT M-I L.L.C.'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

Defendant M-I L.L.C. ("M-I") files this Reply in Further Support of its Motion to Dismiss the Amended Complaint filed by Plaintiffs Bill Francis, Tyrone Benton, and Carlos Ramos. Despite the arguments made in their Memorandum in Opposition ("Opp."), Plaintiffs still fail to address the deficiencies in their Complaint.

**I.      Plaintiffs Fail To Dispute That They Lack A Claim For Negligence *Per Se.***

In its Memorandum of Law in Support of M-I L.L.C.'s Motion to Dismiss Plaintiffs' First Amended Complaint ("M-I MTD"), M-I moved to dismiss Plaintiffs' negligence *per se* claim because Plaintiffs failed to identify a single statute or regulation they claim M-I violated. *See* M-I MTD 6-7. While Plaintiffs responded to M-I's other arguments, they failed to respond to this argument whatsoever. Therefore, the Court should dismiss Plaintiffs' negligence *per se* claim. *See, e.g., Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("[W]hen a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff

failed to address as conceded." (citations omitted)), *aff'd*, 98 F. App'x 8, 2004 WL 1178772 (D.C. Cir. May 27, 2004).

II. **Plaintiffs' Complaint Fails To Adequately Plead Factual Or Legal Allegations.**

Plaintiffs, instead of drafting their own factual allegations and legal claims, purport to "adopt and incorporate" hundreds of paragraphs from other complaints in different suits. *See* First Amended Compl. of Bill Francis, Tyrone Benton, and Carlos Ramos ("Compl.") ¶¶ 19-20, 22-23. As M-I explained, this purported incorporation of hundreds of paragraphs from complaints involving different plaintiffs suing for other types of damages is ineffective. M-I MTD 3-4.

Plaintiffs claim that their purported incorporation of hundreds of paragraphs is proper under Federal Rule of Civil Procedure 10(c). Opp. 1-2. However, Rule 10(c) allows a party to incorporate a portion of a previous pleading *only in the same case*. *Muttathottil v. Mansfeld*, 381 F. App'x 454, 457 (5th Cir. 2010). The pleadings from which Plaintiffs purport to incorporate allegations—the B1 Bundle Master Complaint and Transocean's Third Party Complaint from its limitation of liability action—are pleadings from different cases. Plaintiffs cite WRIGHT & MILLER to support their efforts to incorporate by reference portions of these other pleadings, but their selective quotation omits the caveat that "[a]lthough Rule 10(c) is not expressly limited to pleadings in the same action, *it has been held that allegations in pleadings in another matter, even if between the same parties, cannot be incorporated by reference*." 5A Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE § 1326 (emphasis added).

Furthermore, incorporation by reference must be done "with a degree of specificity and clarity which would enable the responding party to easily determine the nature and extent of the incorporation." *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1176 (5th Cir. 2006). Plaintiffs fail to meet this standard as well. Plaintiffs' wholesale adoption of hundreds of paragraphs includes

many allegations that are entirely irrelevant to their personal injury suit against M-I. For example, Plaintiffs purport to adopt into their factual allegations section paragraphs 193-203 of an introduction from the B1 Bundle Master Complaint—an introduction, not a factual allegation section, that includes a discussion of the environmental harm from the Deepwater Horizon incident that has no connection to Plaintiffs' personal injury claims. *See* B1 Bundle Master Compl. ¶ 200. Plaintiffs expect M-I to wade through this morass and guess which paragraphs Plaintiffs rely on to assert facts and claims against M-I. This does not give fair notice to M-I of Plaintiffs' allegations and does not allow M-I to "easily determine" the claims against it. *Carroll*, 470 F.3d at 1176.

Plaintiffs attempt to incorporate by reference volumes of general and irrelevant allegations from other pleadings in other lawsuits and have failed to plead factual allegations specific to themselves. This haphazard and irregular method is not the type of pleading Rule 10(c) contemplates. Because Plaintiffs have failed to comply with Rule 10(c) and have not otherwise specified their claims and supporting factual allegations against M-I, their Complaint should be dismissed.

**III.   Even If Plaintiffs Had Complied With Rule 10(c), Plaintiffs Fail To State A Claim For Negligence As Required By The Supreme Court In *Twombly/Iqbal*.**

Under the *Twombly/Iqbal* pleading standard, a plaintiff must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). A plaintiff must plead facts establishing its causes of action against each defendant; blanket assertions against all "Defendants" will not suffice. *See, e.g., Two Old Hippies, LLC v. Catch the Bus, LLC*, No. CIV 10-0459 JB/RLP, 2011 WL 831302, at *14 (D.N.M. Feb. 11, 2011) (stating that it

is particularly important to avoid collective allegations against multiple defendants when the liability of some defendants "turns on their individual participation in the alleged activities"); *Powell v. Residential Mortg. Capital*, No. C 09-04928 JF (PVT), 2010 WL 2133011, at *3 (N.D. Cal. May 24, 2010) ("Treating disparate parties identically without explanation, as Plaintiff does throughout the complaint, deprives each individual defendant a fair and meaningful opportunity to defend itself."); *Powell v. Dallas Morning News LP*, 610 F. Supp. 2d 569, 580 (N.D. Tex. 2009) (dismissing claims based on "blanket allegations against all Defendants" because the lack of specificity "fail[s] to give the [defendants] notice of what they would be required to defend against").

In their Opposition, Plaintiffs list a set of actions that allegedly show "M-I's involvement in the accident giving rise to this suit." *See* Opp. 3. Among these actions is the following paragraph:

> Ignoring Transocean's infrequent and inadequate maintenance; failing to address leaks in the hydraulic system of the Macondo well's BOP; failing to update the BOP's schematic design to reflect aftermarket changes, failing to address problems with the faulty solenoid valve, poor battery maintenance, hydraulic fluid leaks, and aftermarket modifications on the BOP before the April 20, 2010, incident; failing to install backup BOP activation systems, backup BOPs or other secondary redundant precautionary measures available to protect the vessel, its workers, plaintiffs, and the environment from the catastrophic results of a well blowout; and failing to ensure that the BOP present on the Deepwater Horizon possessed reasonably safe, adequate, functional technology to prevent blowouts.

*Id.* at 5. According to Plaintiffs' own Opposition, they are apparently asserting claims against M-I for a variety of actions related solely to the design and maintenance of the BOP. But as Plaintiffs recognize in their Opposition, M-I "provided mud products, including drilling fluids and spacers, engineering services, and mud supervisory personnel, such as mud engineers and drilling fluid specialists, to manage the properties of those fluids in the Macondo Well." *Id.* at 3.

Plaintiffs have utterly failed to assert any facts to explain how M-I, a drilling fluids company, is responsible for "failing to update the BOPs schematic design to reflect after market changes," "failing to install backup BOP activation systems," or any of the other BOP allegations. They do not assert any such factual allegation because they cannot—M-I provided no services related to and had no obligations with respect to the BOP.

This is but one example of Plaintiffs' general assertions against M-I without any factual basis. In their Opposition, Plaintiffs assert claims against M-I related to the well design, the running of a bond log test, the mixture of cement, and pressure tests. Yet, they fail to provide any factual basis to support how M-I, a drilling fluids company, is responsible for any of these matters.

Moreover, Plaintiffs fail to provide any factual support for their other various claims. For example, Plaintiffs assert that M-I "[e]ngag[ed] in reckless decision-making in the rush to complete the well." Opp. 4. But Plaintiffs fail to identify any specific reckless decision that M-I made. Plaintiffs also allege that M-I "[i]gnor[ed] and overlook[ed] warning signs of the imminent blowout" and "[f]ail[ed] to report to the Mineral Management Service Transocean's poor maintenance and . . . its practice of disabling or bypassing vital safety systems or alarms." Opp. 4-5. But Plaintiffs have provided no factual basis to demonstrate that M-I had knowledge of either any alleged signs of an imminent blowout or any of Transocean's alleged conduct that Plaintiffs claim should have been reported to the MMS.

Even where Plaintiffs' allegations have some vague connection to M-I, there is no factual basis to support them. For example, Plaintiffs state M-I was negligent because it "us[ed] an unorthodox spacer fluid mixture and volume, which *potentially* interfered with pressure tests and BOP functionality." Opp. 4 (emphasis added). With the use of the word "potentially," the

allegations itself makes clear Plaintiffs have no factual basis for claiming a causal link between an alleged breach of a duty by M-I and the incident. *Iqbal*, 129 S. Ct. at 1949 (stating that the plaintiff must assert "more than a sheer possibility that a defendant has acted unlawfully"). They also assert a claim for "[i]nattention to proper well monitoring during the mud displacement process and the use of woefully inadequate policies and instructions regarding well control procedures for vessel workers." Opp. 5. Again, there is simply no factual basis stated for these claims, such as which M-I policies Plaintiffs claim are inadequate.

Although Plaintiffs need not assert detailed factual allegations, they also cannot allege mere "'labels or conclusions'" or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557). Yet, that is all Plaintiffs have provided: conclusions and naked assertions. Moreover, most of these naked assertions are against defendants collectively, not M-I specifically. In their Opposition, Plaintiffs state that "M-I is defined as a 'Drilling Defendant' in the B1 Bundle Master Complaint because it is among those defendants involved in the drilling, cementing, and other temporary well abandonment activities of the Deepwater Horizon." Opp. 3 n.2. Clearly, Plaintiffs have simply lumped together a group of diverse defendants and made general allegations against the entire group. This results in nonsensical allegations against M-I, such as that M-I mis-designed the BOP. Plaintiffs have engaged in a shotgun approach to pleading: lump a group of defendants together, fire off a set of general allegations, and see what hits. This violates the pleading requirements of the Federal Rules of Civil Procedure as set forth in *Twombly* and *Iqbal*, and this Court should dismiss Plaintiffs' Amended Complaint.

IV. **Even If Plaintiffs Had Satisfied The *Twombly*/*Iqbal* Pleading Standards, Plaintiffs' Claims Should Be Dismissed For Failing To Properly Plead The Elements Of The Underlying Claims.**

　　A.　**Plaintiffs Fail To Counter M-I's Substantive Arguments.**

As to M-I's motion to dismiss the *res ipsa loquitur* and punitive damages claims, Plaintiffs "direct the Court's attention to the legal argument and authorities" in the PSC's Omnibus Response Memorandum to Halliburton's Motion to Dismiss. Opp. 7. First, this reference to the PSC's Response does not meet the specificity requirements to adopt a pleading by reference. Second, Plaintiffs do not actually adopt the reference or incorporate it into their Opposition, they simply "direct the Court's attention" to the Response. Third, Rule 10(c)'s provision regarding adoption by reference expressly applies only to statements made in pleadings. *See* FED. R. CIV. P. 10(c) ("A statement in a *pleading* may be adopted by reference elsewhere in the same pleading or in any other pleading or motion." (emphasis added)); *Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 345 (9th Cir. 1996) ("[T]he reach of the 10(c) provision permitting the adoption by reference of material from pleadings cannot be extended by 7(b)(2) to include the adoption of *substantive material* in 'other papers.'" (emphasis in original)). A "pleading" is a term of art under Federal Rule of Civil Procedure 7(a). Because a response to a motion to dismiss is not a pleading, it cannot be incorporated according to Rule 10(c). Plaintiffs' attempt to "direct the Court's attention" to a response filed by the PSC is an insufficient response to M-I's Motion to Dismiss and, therefore, the Court should dismiss Plaintiffs' *res ipsa loquitur* and punitive damages claims.

　　B.　**Even If Plaintiffs' Response Is Proper, The Doctrine Of *Res Ipsa Loquitur* Is Unavailable To Plaintiffs.**

To the extent the Court allows Plaintiffs to rely on the PSC's Response against Halliburton, the Court should still dismiss Plaintiffs' *res ipsa loquitur* claim. M-I agrees with

Plaintiffs that *res ipsa loquitur* is not a separate cause of action but rather a mechanism to prove negligence. But as a matter of law, this evidentiary doctrine is unavailable to Plaintiffs.

Plaintiffs' own Complaint defeats the applicability of *res ipsa loquitur*. For this doctrine to apply, the instrumentality causing the injury must have been under the defendant's exclusive control. *See United States v. Nassau Marine Corp.*, 778 F.2d 1111, 1115-16 (5th Cir. 1985). The PSC argues that they need only establish that a particular defendant was in exclusive control of the instrumentality at the time the negligence occurred. But Plaintiffs have failed to identify any instrumentality over which M-I had *exclusive* control, much less allege what instrumentality was a cause of the blowout or that M-I exclusively controlled that instrumentality at the time of the blowout. Thus, the Court should hold as a matter of law that the doctrine is not available to Plaintiffs.

### C. Even If Plaintiffs' Response Is Proper, The Punitive Damages Claims Should Be Dismissed.

To the extent the Court allows Plaintiffs to rely on the PSC's Response against Halliburton, the Court should still dismiss Plaintiffs' punitive damages claim. The PSC's argument that punitive damages should be allowed for a Jones Act seaman alleging a personal injury claim is contrary to settled Fifth Circuit law.

Fifth Circuit law clearly establishes that, even against a non-employer third party, Jones Act seamen bringing personal injury suits are limited to recovery of pecuniary damages. *Scarborough v. Clemco Indus.*, 391 F.3d 660, 667-68 (5th Cir. 2004) (discussing and applying *Miles v. Apex Marine Corp.*, 498 U.S. 19 (1990)). After considering arguments nearly identical to those in the PSC's Response, the Fifth Circuit in *Scarborough* held that "neither one who has invoked his Jones Act seaman status nor his survivors may recover nonpecuniary damages from non-employer third parties." *Id*. at 668. Other courts have held the same. *See, e.g.*, *Wagner v.*

*Kona Blue Water Farms, LLC,* Civil No. 09-00600 JMS/BMK, 2010 WL 3566730, at *3 (D. Haw. Sept. 13, 2010) ("Although *Miles* did not address punitive damages, courts have uniformly interpreted *Miles* as precluding plaintiffs from recovering punitive damages in Jones Act claims."); *see also Bergen v. F/V St. Patrick*, 816 F.2d 1345, 1347 (9th Cir. 1987) (holding that punitive damages are nonpecuniary damages not available under the Jones Act); *Wilson v. Noble Drilling Corp.*, Civil Action No. 08-4940, 2009 U.S. Dist. LEXIS 124302, at *6 (E.D. La. Aug. 12, 2009). The PSC points out that since *Scarborough*, the Supreme Court explicitly left open the issue of whether punitive damages are available under the Jones Act. *See Atl. Sounding Co. v. Townsend*, 129 S. Ct. 2561, 2575 n.12 (2009). The Fifth Circuit has not yet addressed this issue since *Townsend*, and until it does, this Court is bound to follow *Scarborough*. *See French v. Allstate Indem. Co.*, Civil Action No. 06-8251, 2009 WL 1668486, at *2 (E.D. La. June 12, 2009) (Barbier, J.) (following a Fifth Circuit decision because it is "binding precedent that this Court cannot simply ignore"); *see also Wagner*, 2010 WL 3566730, at *7 (stating that *Townsend* "does not call into question *Miles*'[s] holding concerning the damages limitations applicable to the Jones Act").

The PSC further argues that even if nonpecuniary damages are unavailable to a Jones Act seaman in a personal injury suit, punitive damages are pecuniary and therefore not subject to this rule. This is incorrect. The Supreme Court has recognized that "'[p]unitive damages' is a legal term of art that has a widely accepted common-law meaning." *Molzof v. United States*, 502 U.S. 301, 306 (1992). "As a general rule, the common law recognizes that damages intended to compensate the plaintiff are different in kind from 'punitive damages.'" *Id.* at 307. Indeed, "[t]here can be little doubt that punitive damages are nonpecuniary in character." *Anderson v.*

*Texaco, Inc.*, 797 F. Supp. 531, 534 (E.D. La. 1992) (collecting cases); *see also Kopczynski v. The Jacqueline*, 742 F.2d 555, 561 (9th Cir. 1984) ("Punitive damages are nonpecuniary.").[1]

Punitive damages are nonpecuniary in nature and are not recoverable by Jones Act seamen asserting personal injury claims, even against non-employer third parties. Therefore, Plaintiffs' claims for punitive damages should be dismissed.

## CONCLUSION

For the foregoing reasons, as well as for the reasons set forth in M-I's Memorandum of Law in Support of its Motion to Dismiss, M-I respectfully requests that this Court dismiss all claims asserted against it by Bill Francis, Tyrone Benton, and Carlos Ramos in their First Amended Complaint.

---

[1] Plaintiffs' reliance on Justice O'Connor's separate opinion in *Browing-Ferris* is also misplaced. *Browning Ferris Indus. of V., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257 (1989) (O'Connor, J., concurring in part and dissenting in part). Justice O'Connor cited sources that used the phrase "pecuniary punishment" to describe the term "fine" and then argued that punitive damages should be considered fines under the Excessive Fines Clause of the Constitution. *Id.* at 295-97. Justice O'Connor simply never used the phrase "pecuniary" in reference to punitive damages. *Id.* Furthermore, the majority of the Court expressly rejected the view that punitive damages are fines under the Excessive Fines Clause. *Id.* at 262 (noting that seven of the Justices joined in this conclusion). So even to the extent Justice O'Connor did view punitive damages as pecuniary because they were fines, the overwhelming majority of the Court rejected this view. *Id.* Plaintiffs' reliance on *Austin v. United States*, 509 U.S. 602, 614 n.7 (1993), can similarly be rejected because the Court is simply citing the same source Justice O'Connor did in *Browning-Ferris* which states that fines are pecuniary nature while discussing whether civil forfeitures are fines under the Eighth Amendment. *Id.*

May 11, 2011 Respectfully submitted,

**OF COUNSEL:**
MORGAN, LEWIS & BOCKIUS LLP

MORGAN, LEWIS & BOCKIUS LLP

Derek E. Leon
dleon@morganlewis.com.
Texas Bar No. 24002463
5300 Wachovia Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 415-3000
Facsimile: (305) 415-3001

By: */s/ Hugh E. Tanner*
Hugh E. Tanner
htanner@morganlewis.com
Texas Bar No. 19637400
1000 Louisiana, Suite 4000
Houston, Texas 77002
Telephone: (713) 890-5000
Facsimile: (713) 890-5001

Denise Scofield
dscofield@morganlewis.com
Texas Bar No. 00784934
1000 Louisiana, Suite 4000
Houston, Texas 77002
Telephone: (713) 890-5000
Facsimile: (713) 890-5001

**ATTORNEYS FOR DEFENDANT M-I L.L.C.**

**ATTORNEYS FOR DEFENDANT M-I L.L.C.**

DB1/ 67182744.5

## **CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing Reply in Further Support of M-I's Motion To Dismiss Plaintiffs' Amended Complaint has been served on all Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the Court's CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL No. 2179, on this 11th day of May, 2011.

                                                         /s/ *Hugh E. Tanner*
                                                         Hugh E. Tanner