UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **In re: Oil Spill by the Oil Rig** | * | MDL No. 2179 |
| **"Deepwater Horizon" in the Gulf** | * | |
| **of Mexico, on April 20, 2010** | * | SECTION "J" |
| | * | JUDGE BARBIER |
| **This Document Relates to:** | * | |
| *All cases in Pleading Bundles B1 and B3*; | * | |
| **10-2771; 10-3815; 10-1540; 10-1502** | * | MAGISTRATE NO. 1 |
| | * | MAGISTRATE SHUSHAN |

\* \* \* \* \* \* \* \* \* \* \* \*

OPPOSITION OF DEFENDANT MOEX OFFSHORE 2007 LLC
TO MOTION OF BP EXPLORATION & PRODUCTION, INC., BP AMERICA, INC.,
BP AMERICA PRODUCTION COMPANY, AND BP PLC
<u>FOR A STAY OF PROCEEDINGS</u>

**MAY IT PLEASE THE COURT:**

Defendant MOEX Offshore 2007 LLC ("MOEX Offshore") respectfully submits this Opposition to the Motion of BP America Inc., BP America Production Company, BP Exploration & Production Inc., and BP p.l.c. (collectively, "BP") for a Stay of Proceedings Between BP, Anadarko Petroleum Corporation and Anadarko E&P Company LP (collectively, "Anadarko"), and MOEX Offshore [Rec. Doc. 2169] ("BP's Motion").

## I.   INTRODUCTION

In its proposed Order accompanying BP's Motion, BP describes the "proceedings" it wants the Court to stay as "all litigation" between BP, Anadarko, and MOEX Offshore. BP Proposed Order at 1.[1]

While BP studiously avoids explaining what it means by "all litigation", its opposition to the discovery requests of MOEX Offshore makes clear that BP seeks nothing less than an order denying MOEX Offshore the ability to properly defend itself against the thousands of claims it faces from plaintiffs and other defendants, and any right to be heard in the limitation proceeding with respect to BP's conduct and resulting liability.

But the Operating Agreement between BP and MOEX Offshore, on which BP bases its Motion, cannot deny MOEX Offshore the right to defend itself against the claims asserted against it by the plaintiffs and other parties to this matter, or preclude it from the right of full participation in the process that will allocate the fault of the parties. Denying MOEX Offshore that right would render unenforceable against it any judgment entered in the limitation proceeding and, indeed, infect the entire proceeding with reversible error.

---

[1]   BP's proposed order includes MOEX USA Corp. among the parties subject to the stay, even though BP's Motion nowhere mentions that company or offers any basis for extending the stay to it.

## II. ARGUMENT

**A. MOEX Offshore Has the Right to Fully Litigate Issues Relating to the Conduct of All Parties And the Relative Allocation of Liability In the Allocation of Liability Proceeding.**

This Court has scheduled a trial for next February to allocate liability for several categories of damages and loss among a number of actors – both party and non-party – including BP and MOEX Offshore. MOEX Offshore faces the potential of multiple judgments of liability and damages through actions brought by approximately 130,000 plaintiffs, as well as by the United States, several states, multiple local governments, and the plaintiffs-in-cross-claim.[2] The potentially liable parties will necessarily seek to limit their own liability in this proceeding by assigning blame to one another.

All parties agree the trial shall include an allocation of liability for the damages and losses caused by the Deepwater Horizon incident. This allocation requires a determination of the culpability, both absolute and relative, of <u>all</u> potentially liable actors. *See generally United States v. Reliable Transfer Co.*, 421 U.S. 397, 411 (1975) (adopting proportional fault rule in maritime cases). This equitable determination is without regard to a potentially liable party's absence at trial or any arbitration agreement a subset of actors may have between themselves. *See, e.g.*, *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 217 (1994) (holding that in a proportionate fault allocation in a maritime action, percentages of fault can be assigned to a settling defendant's "empty chair").

---

[2] The claims have been asserted in (a) the individual personal injury complaints in Pleading Bundle A; (b) the Amended Master Complaints in Pleading Bundles B1 and B3; (c) the individual complaints in Pleading Bundle C, including the United States' complaint; (d) the Voluntary Local Government Entity Master Complaint and some long form local government complaints; (e) the limitation action, in which MOEX Offshore has been tendered to all claimants; and (f) the cross-claims for negligence/gross negligence/willful misconduct, contribution, indemnity, and subrogation brought against MOEX Offshore by Halliburton, Transocean, and Cameron.

The limitation action will also address and resolve the question of BP's conduct, as BP itself acknowledges – indeed insists. In its own proposed Trial Plan, BP identifies the "core events and issues" that should be "addressed" in "the first phase trial." Those issues, it says, include "the allocation of fault among the parties and the liability portion of property loss, personal injury and wrongful death claims." The "first trial phase" should also, BP says, include a determination "whether each or any defendant is responsible for negligence, gross negligence, or willful misconduct as regards their contribution to the initiation of an uncontrolled flow of oil as a result of the casualty." BP Defendants' Memorandum in Support of their Proposed February 2012 Trial Plan [Rec. Doc. 1943] at 2.

Not only does BP thus identify the issue of its own conduct (including, as framed by BP, issues of "negligence, gross negligence, or willful misconduct") as one to be determined in the first phase of the trial, the other parties do so as well. *See, e.g.*, Memorandum in Support of Motion to Adopt Plan Proposed by PSC, Transocean Limitation Petitioners and the State of Alabama [Rec. Doc. 1951] at 4; Halliburton Energy Services Inc.'s Brief In Support of a Proposed Trial Plan [Rec. Doc. 1953] at n.1 (adopting BP/NOPs' Trial Plan with certain inapplicable exceptions). Moreover, the Court indicated during the May 6, 2011, status conference that its trial plan would expressly so provide.

Thus, all parties, and the Court, agree that the first phase of trial will include a determination of the respective liability shares of the defendants based on a determination of the nature and degree of their respective conduct and culpability.

Although MOEX Offshore and BP are both defendants in the proceeding in which their respective liability shares will be determined and the issue of their respective conduct and

culpability resolved, BP now asks this Court to deny MOEX Offshore the ability to protect and advance its rights in that proceeding.

While BP avoids saying how the order it seeks would affect the ability of MOEX Offshore to defend and assert those rights, it actually intends nothing less than their elimination. Indeed, BP devotes a substantial portion of the memorandum supporting its stay motion to challenging the ability of MOEX Offshore to be heard on – or even to take discovery on – the issue of its own conduct and potential culpability.  Combined Memorandum (1) In Support of BP's Motion for a Stay of Proceedings Between BP and Anadarko and MOEX, and (2) In Opposition to Anadarko's and MOEX's Motion to Compel Discovery Responses [Rec. Doc. 2169-1] at 4-6, 20-23.

If granted as requested, BP's Motion would thus deny MOEX Offshore the ability to participate in litigating the most important issues that are to be raised in the limitation action and may affect the amount of liability allocated to MOEX Offshore, *viz.* the extent of BP's liability for the spill and issues relating to its conduct.

An order prohibiting MOEX Offshore from fully litigating those issues in the limitation action would be a denial of due process, rendering unenforceable against it any judgment entered by this Court in that proceeding.  *Aetna Ins. Co. v. Hartshorn*, 477 F.2d 97, 100 (5th Cir. 1973) ("The Due Process clause of the Fifth Amendment . . . guarantee[s] . . . adequate notice and opportunity to be heard or to defend.").

Moreover, the unenforceability of any allocation of liability shares as between MOEX Offshore and BP would imperil the enforceability of any liability share assigned to *any* party, since the sizes of all shares are interdependent. *Id.* at 101 (ordering full rehearing on the merits for all parties).

**B.     The Operating Agreement's Arbitration Clause Cannot Affect MOEX Offshore's Right to Participate in the Allocation of Liability Among All Potentially Liable Actors.**

The sole basis of BP's request for a stay of "all litigation" against it by MOEX Offshore is the Operating Agreement, which establishes a procedure for arbitrating certain disputes between those entitled to invoke the agreement's provisions. The Operating Agreement does not – and obviously could not – affect the ability of the plaintiffs or other defendants to pursue their claims against either BP or MOEX Offshore, and BP does not suggest that it could.

Accordingly, MOEX Offshore has no alternative but to defend itself in this Court against the tens of thousands of claims asserted against it by the plaintiffs and the other defendants. In the limitation action, this means urging that whatever quantum of liability and loss is established be assigned to other parties including, most notably, to BP.

The Operating Agreement cannot affect the resolution of that issue. It can, at most, affect the rights of BP and MOEX Offshore *inter se*. The fact that BP and MOEX Offshore may have rights under the Operating Agreement to transfer liabilities and losses among themselves cannot override the mandates of the law which determine the initial allocations of liability to them.

It is possible that liabilities created in the limitation could later be subject to allocation under the terms of the Operating Agreement, pursuant to the processes it provides. It is also possible that the outcome of the limitation proceeding would create no need for such an allocation or even render moot any such allocation as, for example, by establishing that one party or another engaged in conduct that, under the terms of the Operating Agreement, would disqualify it from invoking the allocation provisions therein. This cannot be known until the limitation action has run its course.

The possibility that some liabilities created in the limitation action might later be the subject of allocation under the Operating Agreement does not make that agreement applicable to the initial determination of those liabilities.

MOEX Offshore faces the risk of thousands of adverse, individual judgments on the claims brought against it. By seeking to employ the Operating Agreement to deprive MOEX Offshore of its right to participate in this Court's fault determinations among all defendants in this action (including those not bound by the Operating Agreement), BP seeks to expose MOEX Offshore to judgments in excess of its actual proportional share of fault (if any) while depriving it of the ability to fully defend itself. This is a clear violation of due process. *See generally Aetna Ins. Co. v. Hartshorn*, 477 F.2d at 100 (violation of due process where single defendant denied opportunity to be heard in proceeding apportioning insurance proceeds to various claimants); *Newton v. A.C. & S., Inc.*, 918 F.2d 1121, 1127-28 (3d Cir. 1990) (due process requires an opportunity "to be effectively adjudged before the imposition of any fine," including an opportunity to be heard as to "which, if any, of the parties were at fault); *cf. In re Masters Mates & Pilots Pension Plan & IRAP Litig.*, 957 F.2d 1020, 1031 (2d Cir. 1992) ("third party participation in an evidentiary fairness hearing and court approval of the settlement bar are necessary to protect the due process rights of third parties"). The opportunity to seek relief at a later date from a judgment imposed without an opportunity to be heard does not salvage the denial of an opportunity to *defend* in the original proceeding. *Newton*, 918 F.2d at 1128.

Accordingly, the only proper result – indeed the only constitutional result – is for this Court to allow MOEX Offshore the same opportunity to defend itself in the limitation action that it would enjoy in the absence of the Operating Agreement. How the outcome of the limitation action would affect the resolution of any issues that might remain to be arbitrated between the

parties to the Operating Agreement would be for the arbitrators to determine, if and when an arbitration is commenced and the outcome of the limitation action is known.

**C.      MOEX Offshore Must Be Permitted to Conduct Discovery Relevant to The Allocation Proceeding, Regardless of Any Overlap with a Potential Future Arbitration.**

In order to fully defend itself in the limitations action and included allocation proceeding, MOEX Offshore must conduct discovery regarding the fault that should be allocated to others (including BP).  This requires MOEX Offshore to develop evidence concerning the allocation factors to be considered by the Court, including:  (1) whether a defendant's conduct resulted from inadvertence or involved an awareness of the danger; (2) how great a risk was created by the conduct; (3) the significance of what was sought by the conduct and whether other courses of conduct were available; (4) the comparative capacities of the actors; and (5) any extenuating circumstances that might have caused the actor to proceed in haste, without proper thought.  *See, e.g.*, *Simon v. United States*, 51 F. Supp. 2d 739, 748 (W.D. La. 1999); *Watson v. State Farm & Cas. Ins.*, 469 So. 2d 967 (La. 1985); *Fontenot v. Southwestern Offshore Corp.*, 787 So. 2d 588 (La. App. 3d Cir. 2001), *writ denied* 799 So. 2d 504 (La. 2001).

Discovery of BP's conduct is directly relevant to the allocation proceeding and defenses of MOEX Offshore, since it may show that:  (1) BP's actions involved awareness of the danger it created; (2) its conduct created a quantifiable or great risk of damage; (3) the BP entities pursued their course of conduct for unjustifiable reasons, despite the availability of other courses of action; (4) BP's position as Operator of the well, and its understanding of its rights, roles, and responsibilities in that position, put it in a superior capacity to control the rig operations over other actors; and that (5) no extenuating circumstances caused it to proceed in haste, such that it deserves a greater share of liability than other potentially liable actors.  This discovery, and the

7

potential evidence it may yield, is crucial to MOEX Offshore's – and indeed to all parties' – defenses and arguments in the allocation proceeding, as it goes directly to the key allocation factors. As explained in MOEX Offshore's reply in support of its joint motion to compel discovery responses, the fact that the discovery might also be relevant to later arbitrable claims is irrelevant to whether it is be available here. *See* Reply in Support of the Joint Motion of Defendants Anadarko Petroleum Corporation, Anadarko E&P Company LP, and MOEX Offshore 2007 LLC to Compel Response to Discovery Requests Served Upon BP Exploration & Production, Inc., BP America, Inc. BP America Production Company, and BP p.l.c. [Rec. Doc. 2278] at section II(B).

### III. CONCLUSION

The Operating Agreement provides no basis for stripping MOEX Offshore of its right to full participation in the limitation proceeding. Doing so would deprive that proceeding of any legal effect as to MOEX Offshore, and thereby infect the entire allocation proceeding with error since the liability shares of all parties are necessarily dependent upon one another.

For the foregoing reason, BP's Motion For a Stay of Proceedings should be denied to the extent it would deny MOEX Offshore the right to participate fully in all aspects of the allocation proceeding, including litigating issues relating to the conduct of all parties and the relative allocation of liability among those parties, including BP.

                Respectfully submitted,

DATED: May 12, 2011        BINGHAM McCUTCHEN, LLP

                */s/ David M. Balabanian*
                David M. Balabanian
                david.balabanian@bingham.com
                Three Embarcadero Center
                San Francisco, CA 94111-4067

Telephone (415) 393-2170
Facsimile (415) 393-2286

James J. Dragna
jim.dragna@bingham.com
Bingham McCutchen LLP
355 South Grand Avenue, Suite 4400
Los Angeles, California 90071-3106
Telephone (213) 680-6436
Facsimile (213) 680-8636

Ky E. Kirby
ky.kirby@bingham.com
Michael B. Wigmore
michael.wigmore@bingham.com
Warren Anthony Fitch
tony.fitch@bingham.com
2020 K Street, NW
Washington, DC 20006-1806
Telephone (202) 373-6000
Facsimile (202) 373-6001

KUCHLER POLK SCHELL
WEINER & RICHESON, LLC
Deborah D. Kuchler (La. Bar No. 17013)
Janika Polk (La. Bar No. 27608)
Robert Guidry (La. Bar No. 28064)
1615 Poydras Street, Suite 1300
New Orleans, LA 70112
Tel: (504) 592-0691
Fax: (504) 592-0696

**ATTORNEYS FOR MOEX OFFSHORE 2007 LLC**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, pursuant to Pre-trial Order No. 12, I have caused the foregoing to be served on all counsel via the Lexis Nexis File & Serve system, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, who will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on May 12, 2011.

_____/s/ *David M. Balabanian*_____
David M. Balabanian