UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * | MDL NO. 2179<br><br>SECTION: J |
| This Document Relates Only To:<br>　Johnson Bros. v. BP p.l.c., et al<br>　2:11-cv-0781 | *<br><br>* | JUDGE BARBIER<br><br>MAGISTRATE SHUSHAN |

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

--------------------------------------------------

**FIRST AMENDED COMPLAINT**

--------------------------------------------------

NOW INTO COURT, through undersigned counsel, comes Johnson Bros. Corporation of Louisiana -- F. Miller Construction, L.L.C., a Joint Venture (hereinafter, "Johnson Bros."), which respectfully amends its Complaint and represents as follows:

Johnson Bros. seeks to amend its original Complaint by restating that Complaint entirely as follows:

**THE PARTIES**

1.

Plaintiff, Johnson Bros. Corporation of Louisiana -- F. Miller Construction, L.L.C., a Joint Venture (hereinafter interchangeably, "Johnson Bros." or "Plaintiff"), is comprised of Johnson Bros. Corporation d/b/a Johnson Bros. Corporation of Louisiana, a Minnesota

corporation, and F. Miller Construction, L.L.C., a Louisiana limited liability company.

2.

Made defendants herein are:

a) BP, p.l.c., a British public limited company with its headquarters in London, England, doing business in the state of Louisiana and within this district;

b) BP America Production Company, a Delaware corporation with its principal place of business in Texas, doing business in the state of Louisiana and within this district;

c) BP Exploration and Production, Inc., a Delaware corporation with its principal place of business in Illinois, doing business in the state of Louisiana and within this district;

d) O'Brien's Response Management, Inc., a Louisiana corporation doing business in the state of Louisiana and within this district;

e) Transocean, Ltd., a Swiss corporation doing business in the state of Louisiana and within this district;

f) Transocean Holdings, L.L.C., a Delaware corporation with its principal place of business in Texas, doing business in the state of Louisiana and within this district;

g) Transocean Offshore Deepwater Drilling, Inc., a Delaware corporation with its principal place of business in Texas, doing business in the state of Louisiana and within this district;

h) Transocean Deepwater, Inc., a Delaware corporation with its principal place of business in Texas, doing business in the state of Louisiana and within this district;

i)      Triton Asset Leasing GmbH, a Swiss limited liability company with its principal place of business in Zug, Switzerland, doing business in the state of Louisiana and within this district;

j)      Anadarko E&P Company L.P., a Delaware limited partnership with its principal place of business in Texas, doing business in the state of Louisiana and within this district;

k)      Anadarko Petroleum Corporation, a Delaware corporation with its principal place of business in Texas, doing business in the state of Louisiana and within this district;

l)      MOEX Offshore 2007 L.L.C., a Delaware limited liability company doing business in the state of Louisiana and within this district;

m)      Cameron International Corporation, a Delaware corporation with its principal place of business in Texas, doing business in the state of Louisiana and within this district; and,

n)      Halliburton Energy Services, Inc., a Delaware corporation with its principal place

of business in Texas, doing business in the state of Louisiana and within this

district.

(collectively, "Defendants").

## JURISDICTION AND VENUE

### 3.

The Court has jurisdiction over this matter based on 28 U.S.C. §1332 in that it presents

a federal question under the Oil Pollution Act, 33 U.S.C. §2701 *et seq*.   Further, the Court has

jurisdiction over this matter under 43 U.S.C. §1349 because it arises out of an operation conducted

on the Outer Continental Shelf.   The Court also has jurisdiction over Plaintiff's state law claims

in this matter pursuant to 28 U.S.C. §1367.

### 4.

Venue is proper in this district under 28 U.S.C. §1391(a)(2), as this district is where the

conduct complained of herein occurred, and where the injury to Plaintiff occurred.

## FACTS AND ALLEGATIONS

### 5.

On information and belief, Transocean, Ltd., Transocean Holdings, L.L.C., Transocean

Offshore Deepwater Drilling, Inc., Transocean Deepwater, Inc. and/or Triton Asset Leasing

GmbH (hereinafter collectively, "Transocean") is the owner and/or operator of the Deepwater

Horizon, a semi-submersible mobile drilling rig (hereinafter, "Deepwater Horizon"), which was

performing drilling and completing operations for BP, p.l.c., BP America Production Company,

and/or BP Exploration & Production, Inc. (hereinafter collectively, "BP") in Mississippi Canyon

Block 252 on the Outer Continental Shelf on April 20, 2010 (hereinafter, the "Site").  BP is also the lessee of the Deepwater Horizon.

6.

On information and belief, BP, Anadarko E&P Company LP, Anadarko Petroleum Corporation, and/or MOEX Offshore 2007 LLC (hereinafter collectively, "Lessee Defendants") are the owners of a lease granted by the Minerals Management Service that allows the Lessee Defendants to drill for oil and perform oil production-related operations at the Site and, on April 20, 2010, operated the oil well that is the source of the oil spill.  BP is the designated operator of the lease.  The Lessee Defendants are jointly and solidarily responsible for all activities of the Deepwater Horizon and for all damages and relief requested herein.

7.

On information and belief, the Deepwater Horizon was a semi-submersible oil drilling rig owned/operated by Transocean and operated by BP approximately 50 miles southeast of Venice, Louisiana in the Gulf of Mexico.  At approximately 10 p.m. on April 20, 2010, while the Deepwater Horizon was performing drilling and completion operations for the production of crude oil off the coast of Louisiana, an explosion occurred on the Deepwater Horizon, killing at least 11 crewmembers.  The explosion and subsequent fire caused such significant damage to the Deepwater Horizon that it subsequently sank in 5,000 feet of water.

8.

On information and belief, Cameron International Corporation (hereinafter, "Cameron") manufactured the blowout-preventers (hereinafter, "BOPs") for the Deepwater Horizon that failed to prevent the explosion that caused the oil spill.  The BOPs were defective in that they were unreasonably dangerous in their manufacture, design, and/or composition, failed to comply with an express warranty, and/or failed to contain adequate warnings and instructions.

9.

On information and belief, Halliburton Energy Services, Inc. and Halliburton Company (hereinafter collectively, "Halliburton") were conducting the cementing operations on the Deepwater Horizon at the time of the explosion that led to the oil spill.  On information and belief, the cementing operations were conducted negligently, allowing highly combustible gas to escape from the well and ignite.

10.

On information and belief, when the Deepwater Horizon sank, it caused the well to release, leak and/or discharge crude oil directly into the Gulf of Mexico at an estimated rate of 12,500 to 21,500 barrels per day.

11.

On information and belief, at all times material hereto, the Deepwater Horizon was owned, manned, possessed, managed, controlled, chartered, repaired, serviced, and/or operated by the Defendants.

12.

Plaintiff is a construction company specializing in industrial, infrastructure and marine construction.  At the time of the Deepwater Horizon incident, it was performing a contract with the Louisiana Department of Transportation and Development (hereinafter, "DOTD") to build a bridge over Caminada Bay in Grand Isle, Louisiana (hereinafter, the "Project").

13.

In order to perform its work on the Project on time, Plaintiff was scheduled to locate its marine equipment on and around a right-of-way at the northwest end of the site of the new bridge, owned by the DOTD, in late May or early June of 2010.  This sequencing was essential to Plaintiff's timely completion of the Project.  This would have allowed Plaintiff to begin pile-driving operations on June 11, 2010, at the northwest end of the site of the new bridge, per its construction schedule, and as planned at the time of its original bid, and thereafter, until the occurrence of the Deepwater Horizon incident.

14.

As part of its response to and cleanup of the oil spill, BP hired a contractor, O'Brien's Response Management, Inc. (hereinafter, "O'Brien's"), to deploy spill booms in Caminada Bay to catch any oil that might enter the Bay waters from the Gulf of Mexico.  Before Plaintiff could move its equipment to the right-of-way to begin pile driving as planned, O'Brien occupied the right-of-way in late May 2010 as a staging ground for BP's response and cleanup operations.  As a direct result of O'Brien's occupancy of the right-of-way, Plaintiff could not perform its work

as it intended and planned.  At the time, despite repeated contact from Plaintiff's representatives and demands that it do so, O'Brien refused to move its cleanup operations from the right-of-way. Further, O'Brien's refused to or could not inform Plaintiff as to when O'Brien's cleanup operations would be completed such that Plaintiff could begin to work on the Project as scheduled and in the planned sequence.

15.

As a result of this delay and uncertainty, and in an attempt to mitigate damages, Plaintiff was forced to re-sequence its construction schedule to drive pilings for the bridge in a south-to-north sequence instead of a north-to-south sequence, as was originally planned.  This required Plaintiff to order different pilings and items, and to re-mobilize from the north to the south end of the new bridge, reversing the original construction sequence.  The lead time for ordering the different pilings was extensive and could not have been anticipated.  This re-sequencing ultimately added 75 days to Plaintiff's construction schedule.

16.

As a result of this 75-day delay, Plaintiff incurred numerous damages, additional costs and expenses, including, but not limited to, additional overhead, additional labor costs, additional housing costs, additional equipment costs, additional lease costs and loss of income.

17.

Defendants knew of the dangers associated with deepwater drilling and failed to take appropriate measures to prevent damage to Plaintiff.

8

<center>18.</center>

BP is vicariously liable for the conduct of O'Brien, the contractor BP hired to perform cleanup and spill control operations in the Caminada Bay area.

<center>**FIRST CAUSE OF ACTION - OIL POLLUTION ACT**</center>

<center>19.</center>

Plaintiff re-alleges all facts contained in the preceding paragraphs.

<center>20.</center>

The United States Coast Guard, has designated  BP and Transocean as "responsible parties" under the Oil Pollution Act of 1990 (hereinafter, "OPA"), 33 U.S.C. §2701 *et seq*.

<center>21.</center>

Defendants BP and Transocean are not entitled to limit their liability under Section 2704(a) of OPA because the oil spill was proximately caused by their gross negligence, willful misconduct, or violation of applicable safety, construction or operating regulations.  33 U.S.C. §2704(c).

<center>22.</center>

Moreover, in its "Statement of BP Exploration & Production Inc. Re Applicability of Limitation of Liability Under Oil Pollution Act of 1990," filed in the U.S. District Court for the Eastern District of Louisiana on October 18, 2010, BP waived the statutory limitation on liability under OPA.

<center>23.</center>

OPA imposes liability upon a "responsible party for a vessel or a facility from which oil is discharged … into or upon navigable waters or adjoining shorelines" for the "damages that

<center>9</center>

result from such incident." 33 U.S.C. §2702(a). These damages include "loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources, which shall be recoverable by any claimant." 33 U.S.C. §2702(b)(2)(E).

<div align="center">24.</div>

As a result of the oil spill, Johnson Bros. has suffered the type of damages that may be recovered pursuant to 33 U.S.C. §2702(b)(2)(E), and demands compensation therefor from BP and Transocean, the responsible parties, in amounts to be determined by the trier of fact.

<div align="center">25.</div>

Johnson Bros. presented its claim for damages to the responsible parties, as required by 27 U.S.C. §2713(a), on November 1, 2010. More than 90 days have elapsed since that date and Johnson Bros.'s claim has not been settled by payment. Therefore, Johnson Bros. may pursue an action under OPA against the responsible parties in court.

<div align="center">**SECOND CAUSE OF ACTION - NEGLIGENCE**</div>

<div align="center">26.</div>

Plaintiff re-alleges all facts contained in the preceding paragraphs.

<div align="center">27.</div>

The incidents described above that caused damage to Plaintiff were a proximate result of the negligence, fault, gross negligence, and/or willful misconduct of any one or more Defendants through their agents, servants and employees, which are more particularly described as follows:

a)      Failing to operate the Deepwater Horizon in a safe manner;

<div align="center">10</div>

b)      Operating the Deepwater Horizon in such a manner that a fire and explosion occurred onboard, causing it to sink and resulting in an oil spill;

c)      Failing to properly inspect the Deepwater Horizon to assure that its equipment and personnel were fit for their intended purpose;

d)      Failing to promulgate, implement and enforce rules and regulations pertaining to the safe operations and/or maintenance of the Deepwater Horizon, which, if they had been promulgated, implemented and enforced, would have averted the fire, explosion, sinking and oil spill;

e)      Failing to provide appropriate maintenance to the Deepwater Horizon;

f)      Failing to adhere to applicable safety, construction and/or operating regulations, including, but not limited to, regulations designed to prevent the fire, explosion, and discharge of oil;

g)      Failing to properly design and/or engineer the well;

h)      Failing to take appropriate action to avoid or mitigate the accident;

i)      Negligent implementation of policies and procedures to safely conduct offshore operations in the Gulf of Mexico;

j)      Failing to properly train their employees;

k)      Failing to ascertain that the Deepwater Horizon and its equipment were free from defects and/or in proper working order;

l)      Failing to timely warn;

m)    Failing to provide all reasonable cooperation and assistance requested by the responsible officials in connection with the cleanup and removal activities;

n)    Failing to timely bring the oil release under control, to prevent the spill from migrating towards Caminada Bay, Louisiana;

o)    Failing to provide appropriate accident prevention equipment;

p)    Providing BOPs that did not work properly;

q)    Failing to operate the BOPs properly;

r)    Failing to ensure that BOPs would work as intended;

s)    Failing to test the BOPs to ensure that they would operate properly;

t)    Failing to properly maintain the BOPs to ensure that they would operate properly;

u)    Failing to conduct well cementing operations properly;

v)    Failing to employ alternative cementing operations in light of known problems with actual cementing operations employed; and,

w)    Other acts of negligence which will be shown more fully at trial.

28.

At all times relevant hereto, Defendants owed and breached duties of ordinary and reasonable care to Plaintiff in connection with the drilling operations of the Deepwater Horizon and the maintenance thereof, its appurtenances and equipment, and additionally owed and breached duties to Plaintiff to guard against and/or prevent the risk of an oil spill.

29.

At all times relevant hereto, Plaintiff was a foreseeable victim of Defendants' negligence.

30.

Defendants were aware at all times relevant hereto that their operations and the acts and/or omissions described above created an unreasonable risk of harm and knew that catastrophic economic loss would occur if the well being serviced by the Deepwater Horizon were to blow out. Defendants were indifferent to this risk of harm.

31.

Alternatively, Defendants intentionally failed to perform the duties owed to Plaintiff in reckless disregard of the consequences their actions and/or omissions would have on Plaintiff. Moreover, Defendants acted intentionally, with knowledge that their acts would probably result in injury or in such a way as to allow an inference of a reckless disregard of the probable consequences of their acts.  Therefore, Defendants are also liable to Plaintiff for gross negligence and/or willful misconduct.  The oil spill that caused damage to Plaintiff was proximately caused by Defendants' gross negligence and/or willful misconduct.

32.

Further, upon information and belief, the oil spill was proximately caused by the Defendants' violation of applicable federal safety, construction, or operating regulations and/or by violations of such regulations by an agent or employee of the Defendants and/or a person acting pursuant to a contractual relationship with Defendants.

33.

As a direct and proximate result of the Defendants' negligence and gross negligence, Plaintiff has suffered economic damages far in excess of $75,000 and is entitled to recover

monetary damages, including but not limited to increased and additional costs and expenses, loss of income and revenue, and any incidental or consequential damages resulting from Defendants' conduct. The Defendants are liable jointly and severally for Plaintiff's damages resulting from Defendants' negligence and gross negligence. The doctrine of *res ipsa loquitur* is applicable in this case.

## SECOND CAUSE OF ACTION - STRICT PRODUCTS LIABILITY

34.

Plaintiff re-alleges all facts contained in the preceding paragraphs.

35.

At all times relevant hereto, Cameron was in the business of designing, manufacturing, marketing, selling and/or distributing the BOPs used in connection with the Deepwater Horizon.

36.

Cameron placed the BOPs used in connection with the Deepwater Horizon into the stream of commerce.

37.

The BOPs used in connection with the Deepwater Horizon that were supplied by Cameron failed to operate as intended, if at all, and thus caused or contributed to the oil spill.

38.

Cameron's BOPs used in connection with the Deepwater Horizon were defective because they were defectively designed and/or were defectively manufactured, such that they did not operate as intended to prevent or minimize the oil spill.

39.

As a result of the defects in the BOPs, the massive oil spill emanated from the Deepwater Horizon well and caused harm and damages to Plaintiff.

40.

At the time the BOPs used in connection with the Deepwater Horizon left Cameron's control, they were in a defective condition and thereby unreasonably dangerous to Plaintiff.

41.

At all relevant times the BOPs used in connection with the Deepwater Horizon were used in the manner intended.

42.

Plaintiff was a foreseeable bystander harmed by the defects in Cameron's product.

43.

As a result of the defects in Cameron's BOPs and the resulting oil spill, Plaintiff suffered damages and is entitled to recover monetary damages, including, but not limited to, additional costs and expenses associated with the delay in completing the Project, loss of income, and/or other economic losses incurred as a result of the delay in completing the Project, as well as any incidental or consequential damages resulting from Cameron's defective BOPs.  The doctrine of *res ipsa loquitur* is applicable in this case.

## FOURTH CAUSE OF ACTION - ABNORMALLY DANGEROUS ACTIVITY

44.

Plaintiff re-alleges all facts contained in the preceding paragraphs.

45.

In the alternative, the actions and activities of Defendants, as described above, including but not limited to, drilling for and transporting oil and other pollutants in the Gulf of Mexico, constituted an abnormally dangerous and/or ultrahazardous activity that carried with it a high degree of risk of harm to persons, land, property and property interests of others.

46.

The injuries and damages suffered by Plaintiff are the kind of harm expected from Defendants' activities, the possibility of which made Defendants' activities abnormally dangerous.

47.

The above-described injuries and damages to the Plaintiff were proximately caused by this abnormally dangerous and/or ultrahazardous activity.

48.

Plaintiff is entitled to a judgment finding Defendants liable to Plaintiff for damages suffered as a result of Defendants' abnormally dangerous and/or ultrahazardous activities and awarding Plaintiff adequate compensation in an amount determined by the trier of fact.

## FIFTH CAUSE OF ACTION - FRAUD

49.

Plaintiff re-alleges all facts contained in the preceding paragraphs.

50.

In the alternative, on information and belief, BP engaged in a fraudulent scheme to defraud government regulators into believing that it would safely conduct offshore drilling and that it was able to effectively respond to and contain any oil spill, including the Deepwater Horizon oil spill.

51.

On information and belief, as part of this scheme, BP submitted to the Minerals Management Service (hereinafter, "MMS") in 2000 a Regional Oil Response Plan (hereinafter, "Response Plan") covering the entire Gulf of Mexico area, including the location later drilled by the Deepwater Horizon.  In 2009, BP submitted to the MMS a revised version of this Response Plan.  Both versions falsely stated that BP could contain an oil spill of up to 250,000 barrels per day.

52.

On information and belief, in February 2009, BP submitted to the MMS a document entitled "Initial Exploration Plan for Mississippi Canyon Block 252" (hereinafter, "Mississippi Canyon Plan"), discussing its proposal "to drill and temporarily abandon two (2) exploratory wells in the Macondo project area."  The Mississippi Canyon Plan falsely minimized the prospect of any serious damage associated with a spill, stating that there would be only non-lethal effects on fish and marine mammals, and that "birds could become oiled."

53.

On information and belief, BP further misrepresented in its Mississippi Canyon Plan that "[i]n the event of an unanticipated blowout resulting in an oil spill, it is unlikely to have an impact based on the industry wide standards for using proven equipment and technology for such responses, implementation of BP's Regional Oil Spill Response Plan which address available equipment and personnel, techniques for containment and recovery and removal of the oil spill." BP also falsely stated in its Mississippi Canyon Plan that it was prepared to handle a worst-case scenario involving a blowout that discharged up to 162,000 barrels of oil per day.

54.

On information and belief, BP misrepresented and/or suppressed the truth in its Response Plan and Mississippi Canyon Plan, with the intention to gain an unjust advantage for itself.

55.

BP's misrepresentation and/or suppression of the truth was a proximate cause of Plaintiff's damages.

56.

Plaintiff demands and is entitled to a trial by jury.

WHEREFORE, Plaintiff, Johnson Bros., L.L.C., prays that Defendants BP, p.l.c., BP America Production Company, BP Exploration & Production Inc., O'Brien's Response Management, Inc., Transocean, Ltd., Transocean Holdings, L.L.C., Transocean Offshore Deepwater Drilling, Inc., Transocean Deepwater, Inc., Triton Asset Leasing GmbH, Anadarko E&P Company L.P., Anadarko Petroleum Corporation, MOEX Offshore 2007 L.L.C., Cameron

International Company and Halliburton Energy Services, Inc. be duly cited and served with a copy of the Complaint, and that after due proceedings are had there be judgment rendered herein in favor of the Plaintiff and against Defendants, jointly and solidarily, for:

a)    Compensatory damages in an amount to be determined at trial but in an amount in excess of $75,000;

b)    All costs of this suit;

c)    Pre-Judgment and post judgment interest on all amounts awarded, attorneys' fees and costs as are just in this matter;

d)    All such other and further relief available under all applicable state and federal laws and any relief this honorable court deems just and appropriate; and,

d)    A trial by jury as to all Defendants and causes if action asserted herein.

<div style="margin-left: 50%;">

Respectfully submitted,

 /s/ Abaigeal L. Van Deerlin
Lloyd N. Shields, T.A. (La. Bar #12022)
Daniel Lund, III (La. Bar #19014)
Elizabeth L. Gordon (La. Bar #21619)
Abaigeal L. Van Deerlin (La. Bar #30774)
Shields Mott Lund L.L.P.
650 Poydras Street, Suite 2600
New Orleans, Louisiana  70130
Telephone:    (504) 581-4445
Telecopy:      (504) 581-4440
ELG@shieldsmottlund.com

Attorneys for
   Johnson Bros. Corporation of Louisiana
      -- F. Miller Construction, L.L.C.,
      a Joint Venture

</div>

19

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing First Amended Complaint has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 13th day of May, 2011.


/s/ Abaigeal L. Van Deerlin

W:\47880-01\Pleadings\First Amended Complaint.wpd