# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

300 North LaSalle Street
Chicago, Illinois 60654

Andrew Langan
To Call Writer Directly:
(312) 862-2064
andrew.langan@kirkland.com

(312) 862-2000

www.kirkland.com

Facsimile:
(312) 862-2200

May 19, 2011

**VIA E-MAIL**

The Honorable Sally Shushan
United States Magistrate Judge
United States District Court
500 Poydras Street, Room B345
New Orleans, LA 70130

       Re:    In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010, MDL No. 2179

Dear Judge Shushan:

      If granted, the PSC's request for relief in connection with the James Wetherbee deposition and the production of BP-HZN-BLY00141258 would prove that "no good deed goes unpunished." James Wetherbee is an Internal Investigation team member and was the third deponent in the case (on January 26, 2011). Late in 2010, the PSC pushed hard for early depositions of IIT members. BP was willing to cooperate, but repeatedly advised the PSC representatives that there "might be document production issues with the IIT deponents if the PSC pressed ahead." (Ex. 1, 1/11/11 Letter From A. Langan) The PSC reassured the Court and BP that it understood "the risk of deposing a critical witness too early without all the documents," and that it would "try to find some witnesses who we think will be key but their testimony won't be necessarily document intensive, be more, what did they see, what did they hear." (Ex. 2, 11/15/10 Tr. 30) Having received those reassurances from the PSC, BP produced 10 of the first 11 witnesses in the case, including Mr. Wetherbee on January 26.

      Notwithstanding the significant time pressures, BP produced over 1,694 documents from Mr. Wetherbee's custodial files before his deposition. 28 of these documents were marked as exhibits at his deposition. BP-HZN-BLY00141258 through BP-HZN-BLY00141309 (at issue here) comprise the notes of a discussion involving Mr. Wetherbee and Tony Brock, who also worked on the IIT investigation. This document was incorrectly coded as privileged by a contract attorney,[1] and then produced shortly after Mr. Wetherbee's January 26 deposition.

---

[1]    Mike Brock (not Tony Brock) is an attorney with Covington & Burling representing BP; in any event, the document is not privileged, and was caught as part of BP's quality control process.

Hong Kong    London    Los Angeles    Munich    New York    Palo Alto    San Francisco    Shanghai    Washington, D.C.

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
May 19, 2011
Page 2

It is opportunistic, to put it mildly, for the PSC (1) to first demand that BP produce IIT witnesses in January, notwithstanding BP's warnings about document issues for IIT deponents, (2) to provide assurances that the early depositions "won't be necessarily document intensive," and (3) to then seek relief when BP's predictions about document issues for these early depositions turned out to be correct.

In any event, the discussion at issue (between Mr. Brock and Mr. Wetherbee) was covered at Mr. Wetherbee's deposition, and the PSC had the opportunity to ask Mr. Wetherbee questions about it. Finally, the document was produced to the PSC on February 5; it is nothing remotely approaching a "smoking gun" or the PSC would not have waited over three months to raise it.

**I.    The IIT Depositions in January and February.**

Below is a timeline of events relevant to the IIT depositions in January and February:

- **November 15, 2010**. During a hearing, the PSC acknowledged that it faced risks with proceeding with early depositions before substantial completion of document productions: "…there's risk to both parties. This happens in every litigation. We face the risk of deposing a critical witness too early without all the documents, that's just a calculus we have to make…." (Ex. 2, 11/15/10 Tr. 30) In response, the Court then asked the PSC's counsel "[a]re you-all going to start with the more minor witnesses so the production can catch up with the deposition schedule?" (*Id.*) The PSC answered: "We'll have that discussion, and I'm not really the person in charge, but what I think my thinking would be is that we try to find some witnesses who we think will be key but their testimony won't be necessarily document intensive, be more, what did they see, what did they hear. And we'll try to identify some of these witnesses first." (*Id.*)

  Also during that hearing, the Court set forth the high standard for seeking a second deposition during the following exchange:

  > MS. BERTAUT: Judge, I think this is going to be essentially a problem -- a critical problem in the early days of the depositions. Document production requests are already outstanding
  > . . . .
  > No one is requiring [the PSC to] take a deposition beginning January 18th. They choose to do that.
  > In the typical case, document production would be substantially complete before you'd start putting witnesses in the box. Now, if you want to go ahead and jump that gun and take a deposition, it doesn't seem quite fair to us that we are now

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
May 19, 2011
Page 3

> being compelled to rush our production or accelerate or change the rolling production that we've got to accommodate a witness when some of this is going to work itself out with the allotment of the time.
> . . .
> Because the way this is now setting up is you're going to have a number of depositions being taken very early on when productions are not complete and you're going to leave open the very real possibility that witnesses are going to have to come back in. Nobody wants to see that, Judge. So that's our concern with the certification. You're asking me to do something that is just a recipe for a complaint later on that we didn't find some piece of document that -- or that somebody else produced a document.
> . . .
>
> THE COURT: When I talked about avoidance of duplicative depositions, I gave, by way of example, production of highly relevant. Does that make a difference? I mean, it's not just any production. It's not any document that may have been missed. **But it's got to be highly relevant. I mean, a smoking gun. I don't want to limit you guys to a smoking gun, but, I mean, it's got to be really highly relevant.**
> (Ex. 2, at 25-27) (emphasis added)

- **November 16, 2010**. The Court enters Pretrial Order No. 17 (fn. 3), which provides that "the parties shall work cooperatively to schedule the depositions of witnesses who may have **document intensive depositions**, including custodial files, **later in the deposition schedule**."

- **December 10, 2010**. During the parties' meet and confer on December 10, 2010, BP advised the PSC representatives that "there might be document production issues with the IIT deponents if the PSC pressed ahead (despite PTO 17 fn. 3) with depositions of BP deponents with extensive custodial files." (Ex. 1)

- **January 19, 2011**. BP provided its certification for Mr. Wetherbee's production on this date. As BP explained in its February 14 e-mail to the Court and the parties: "We further agreed with PSC representatives that PTO 17 does not require BP to represent that it has produced every document responsive to plaintiffs' requests from a particular custodian's files; but rather that BP has made a **good faith, reasonable effort** to do so (consistent of course with any unresolved objections to specific requests). BP's custodial certification language is consistent with these agreements reached with the PSC." (Ex. 3, 2/14 e-mail From A. Langan) (emphasis added)

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
May 19, 2011
Page 4

- **February 15, 2011**. On a teleconference, the Court clarified that parties could seek re-depositions if there were a "large group of documents missing; a great volume."

- **January and February 2011**. 10 of the first 11 deponents in the case are BP witnesses.

In sum, neither BP nor Mr. Wetherbee should be penalized for a good deed: agreeing to produce 10 of the first 11 witnesses in the case (including Mr. Wetherbee as the third deponent), notwithstanding the document challenges that were acknowledged by all parties at the outset.

### II.     The Brock/Wetherbee Transcript Was Discussed at Mr. Wetherbee's Deposition, and the PSC Had the Opportunity to Ask Questions About It.

As discussed above, BP produced 1,694 custodial Wetherbee documents before Mr. Wetherbee's deposition. The Wetherbee/Brock transcript - as well as several other transcripts - were discussed at great length in Mr. Wetherbee's deposition in response to questioning by the PSC:

> (Exhibit Number 28 marked.)
>
> Q. Explain to us what this document is.
>
> A. This is a transcript of conversation between Steve and me as we began the process -- as I began the process of beginning to write what we were finding.
>
> Q. Okay.
>
> A. So it's the beginning of the actual writing process. One of the steps that I chose to use was to -- so now you can see it. It is potentially more valuable to me to begin to write. The way we chose write was to dictate. And so I had begun to form in my mind the kinds of things we wanted to write in the report, and so *I was interested in one of the methods of capturing the thoughts from the subteam leaders as to where they were in their engineering assessment and analysis for the investigation*.
>
> Q. Okay. And you said this was *done via dictation where you actually have a machine* --
>
> A. The four subteam leaders, Mark Bly, the investigation leader, *and Tony Brock, the deputy*.
>
> Q. And did you then take the transcripts and use them as part of the effort to put the report together?
>
> A. The answer is yes. The amount that I used is very little. It turns out that the spoken word is not even close to what is needed in a written document with a pedigree and degree of accuracy that we want. And so it turned out to be not very useful to me.

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
May 19, 2011
Page 5

>Q. Okay.
>
>A. Which I had learned once before but decided to try it anyway.
>
>Q. All right. Was there any information -- did you use it to -- any of the interviews as personal learning tools about the deepwater drilling process?
>
>A. No, sir.
>
>Q. Okay. You didn't need those interviews to do that?
>
>A. At that point, no.
>
>Q. All right. Other than the four team leaders, were there any *transcribed conversations* taken that you were involved in?
>
>A. Yes, sir. The investigation leader *and the deputy team leader* in addition to the four subteam leaders.
>
>Q. Okay. So that would be six total?
>
>A. Six total, right.

(Ex. 4, Wetherbee Deposition at 174-77) (emphasis added)  Many of the interviews discussed at Mr. Wetherbee's deposition were marked as Wetherbee deposition exhibits. (*See, e.g.*, Ex. 5, Wetherbee Deposition Exhibits 28, 29, 33, 37 41, and 44-49)  No limitations were placed on the PSC's or any other party's ability to ask Mr. Wetherbee about his conversations with Mr. Brock or anyone else.

### III.    The Relief Sought Is Inappropriate.

BP respectfully submits that each of the three types of relief sought by the PSC is inappropriate.  The PSC has not met the good cause standard under PTO 17 for a second deposition of Mr. Wetherbee.  BP helped to push the schedule forward by supplying virtually all of the early deponents.  The PSC understood "the risk of deposing a critical witness too early without all the documents," and pressed forward for early depositions anyway.

Second, the PSC's request that BP "stipulate not only to the authenticity and admissibility of the document, but also to the truth of the matters asserted therein" is overreaching.  The PSC had the opportunity to ask Mr. Wetherbee about these items during his deposition.

Third, the PSC's request for Mr. Brock's deposition-outside of the carefully-considered process for new depositions set forth in paragraph 14 of the Court's May 17 order-should be

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
May 19, 2011
Page 6


denied.  The PSC has known about Mr. Brock and his role with the IIT since January.  And the PSC has deposed at least 14 IIT witnesses.  As discussed above, the PSC had the opportunity to cover the issues raised in the Wetherbee/Brock interview notes with Mr. Wetherbee.

Finally, the PSC's request for Mr. Brock's deposition should not be considered in isolation.  If the PSC wishes to add Mr. Brock as a deponent, that request should be made as part of the process set forth in the Court's May 17 Order (at pages 10-12), so the Court can weigh the benefits and downsides of adding Mr. Brock (among the two dozen or more other proposed deponents requested by various parties) to an already overburdened deposition schedule that has as many as 8 deponents per day in June and July.


Sincerely,

*J. Andrew Langan*

J. Andrew Langan, P.C.


cc:  Plaintiffs Liaison Counsel
     Defense Liaison Counsel
     Mike Underhill
     Hon. Attorney General Luther Strange
     Cory Maze
     Donald E. Godwin
     James P. Roy
     Stephen J. Herman
     Mike O'Keefe
     Robert Cunningham
     Ronald S. Kravitz
     Jeroen van Kwawegen
     Wilber H. Boies
     Mark C. Molumphy
     Laurie L. Largent
     Julie Reiser
     Lori G. Feldman