# Exhibit 1

# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

300 North LaSalle Street
Chicago, Illinois  60654

| | | |
|---|---|---|
| J. Andrew Langan, P.C.<br>To Call Writer Directly:<br>(312) 862-2064<br>andrew.langan@kirkland.com | (312) 862-2000<br><br>www.kirkland.com | Facsimile:<br>(312) 862-2200 |

January 11, 2011

**Via Email**

| | |
|---|---|
| Stephen J. Herman<br>Herman Herman Katz & Cotlar<br>820 O'Keefe Avenue<br>New Orleans, LA  70113-1116 | James P. Roy<br>Domengeaux Wright Roy & Edwards<br>556 Jefferson Street<br>P.O. Box 3668<br>Lafayette, LA  70502 |

Re:   In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010, MDL 2179

Dear Steve and Jim:

I write with respect to certain document production issues related to the depositions of BP employees scheduled for this month.  As you are aware, Pretrial Order No. 17, Section M.4., requires that "[a]t least seven (7) days prior to the deposition of any person currently or formerly employed by any of the defendants, said defendant shall provide Plaintiffs' Liaison Counsel with a written certification that it has completed production of documents from that witness's custodial files which are responsive to requests for production of documents and relevant to the litigation."

Thus, the certification is linked to BP's production obligations in connection with pending requests for production.  In that context, Paragraph 13 of Pretrial Order No. 16 provides that BP's production obligations, as to ESI, are to "produce potentially relevant ESI in [its] possession according to the agreed search terms, custodians, and ranges."  Recognizing that the volume of documents, particularly ESI, belonging to individual custodians and potentially responsive to discovery requests varies, Pretrial Order No. 17 (fn. 3) further provides that "the parties shall work cooperatively to schedule the depositions of witnesses who may have document intensive depositions, including custodial files, later in the deposition schedule."  This is consistent with the Court's admonition against duplicative depositions. (Pretrial Order No. 17, Section K)

Indeed, at the conference with Magistrate Judge Shushan on November 15 that led to the issuance of Pretrial Order No. 17, Steve Herman acknowledged that the Plaintiffs' Steering Committee ("PSC") faced risks with proceeding with early depositions before substantial

## KIRKLAND & ELLIS LLP

January 11, 201
Page 2

completion of document productions: "…there's risk to both parties.  This happens in every litigation. We face the risk of deposing a critical witness too early without all the documents, that's just a calculus we have to make…." (11/15/10 Tr. 30)   In response, Magistrate Judge Shushan then asked Plaintiffs' counsel "[a]re you-all going to start with the more minor witnesses so the production can catch up with the deposition schedule?" (*Id.*)   And without committing the PSC, Steve answered "We'll have that discussion, and I'm not really the person in charge, but what I think my thinking would be is that we try to find some witnesses who we think will be key but their testimony won't be necessarily document intensive, be more, what did they see, what did they hear. And we'll try to identify some of these witnesses first." (*Id.*)  Pretrial Order No. 17 followed, with footnote 3 of that Order urging the PSC to focus early depositions on witnesses who are not document intensive.

    With these Court directives in mind, during our meet and confer on December 10, 2010, we advised the PSC that Pretrial Order No. 17's certification requirement precluded us from doing anything other than offering tentative deposition dates for the witnesses until we had reached an agreement with the PSC on search criteria.  As we discussed, once we have an agreed set of search criteria, we will be in a position – on a witness by witness basis – to discuss with the PSC the amount of time needed for BP to complete production of non-privileged documents responsive to those search criteria (subject to BP's objections) and, therefore, the appropriate time to schedule each witness's deposition.   We also advised the PSC representatives that there might be document production issues with early deponents if the PSC pressed ahead (despite PTO 17 fn. 3) with early depositions of BP deponents with extensive custodial files, and the PSC might have decisions to make about proceeding to depose at the early stages witnesses with large custodial files, with all parties aware of  the presumption against any re-deposing such witnesses later, absent a strong showing of good cause (in the words, of Magistrate Judge Shushan, cause such as the later production of "highly relevant" documents (11/15/10 Tr. 27)).

    Subsequent to the meet and confer, on December 17, 2010 (after several extensions sought by Plaintiffs), we received Plaintiffs' initial list of proposed search criteria.  While we appreciate the effort that went into creating the list, and the PSC's effort to tie criteria to specific numbered document requests, we believe the list is inadequate in several respects.  Just by way of example, the PSC proposed search terms for just 84 of 231 separate document requests.  And, many of the requests for which the PSC has declined to suggest search criteria are the subject of objections by BP due to the vagueness and/or over-breadth of the requests.  We recognize that Pretrial Order No. 16 contemplates a period of back-and-forth negotiation with respect to the search criteria; we have begun that process and had a very productive call with your colleagues, Bill Large and Anthony Irpino on January 10 to discuss these issues.  We expect that dialogue to continue early next week, after an exchange of additional information by both sides with respect to appropriate search criteria.

## KIRKLAND & ELLIS LLP

January 11, 201
Page 3

However, we also recognize the PSC's interest in getting started with depositions. You explained on December 10 that the first four witnesses tentatively scheduled for deposition in January (Messrs. Anderson, Fontenot, Robinson and Wetherbee) were selected by the PSC because of their roles as members of BP's Incident Investigation Team. Messrs. Large and Irpino confirmed the same during BP's call with PSC representatives on January 10. In an effort to balance the foregoing Court Orders and the interests of BP and the PSC, BP is prepared to offer the following by way of certification in lieu of postponing the depositions as contemplated in footnote 3 of Pretrial Order No. 17:

> Pursuant to Pretrial Order No. 17, Section M.4., and subject to its objections, BP certifies that it has completed production of responsive, non-privileged paper and electronic documents from the individual custodial files maintained by [INSERT NAME OF INCIDENT INVESTIGATION TEAM MEMBER] in connection with his participation in BP's internal Incident Investigation Team, whose work concluded with the release of the September 8, 2010 *Deepwater Horizon* Accident Investigation Report.

As we explained on December 10, in advance of the depositions tentatively scheduled for this month and in the absence of agreed search criteria, BP is not a position to certify that it has completed production of every non-privileged document in the January deponents' custodial files that may be potentially responsive to any of the more than 240 requests for production propounded to date by the PSC, particularly in light of the fact that BP has objected to certain of those requests that are overly broad, unduly burdensome, vague or that are otherwise improper under the Federal Rules.   We cannot certify something about custodial productions that is not accurate;  what is stated above is accurate, to the best of our understanding.   We assume the PSC wishes to proceed with the scheduled January depositions based on the certification proposed above and accept the risk of no re-depositions absent good cause shown;  but if that is not the case, please advise immediately.

BP is continuing to collect, review and produce documents in an expeditious manner. BP has already produced more than 500,000 pages of documents in MDL 2179, and BP will continue to produce documents on a rolling basis, including documents associated with the work of BP's Incident Investigation Team.  In addition, BP has responded to more than 240 document requests, 47 interrogatories, and 221 requests for admission, all with only short extensions. BP has arranged to schedule more than a dozen depositions of its employees in the first weeks of deposition discovery in MDL 2179 -- no other defendant has confirmed a single deponent.   And, BP will make reasonable efforts to prioritize production of custodial files for the deponents identified by the PSC; however, BP's discovery and production obligations are not limited to MDL 2179.  Accordingly, as we said on December 10 and repeated in discussions with Messrs.

**KIRKLAND & ELLIS LLP**

January 11, 201
Page 4

Large and Irpino on January 10, the further in advance of depositions that the PSC is able to identify future deponents, the greater potential there is for BP to accommodate the PSC's preferred order of depositions and attendant document productions in light of the totality of demands for discovery presently made on BP by the PSC and others.

    Please let me know if you would like to discuss our proposal.

                         Sincerely,

                          J. Andrew Langan, P.C.

cc:    Paul Sterbcow
       Bill Large
       Anthony Irpino
       MDL 2179 Defense Liaison Counsel