# Exhibit 2

1   that.

2               **THE COURT:**  They seem more sure of it than you.

3               **MR. WILLIAMS:**  Well -- no, I'm fine with that.

4               **MR. HAYCRAFT:**  I think the problem is logistical and

5   mechanical, and at this point we don't have -- you know, you've

6   obligated the plaintiffs to come up with search terms and we're

7   going to meet and confer on the search terms.

8                   I think that absent search terms, searching of

9   custodial files is very difficult because the party who -- or

10  the attorney who's reviewing the files with the witness, if

11  it's just open-ended relevance, that's very tough in today's

12  modern age.

13                  I think that search terms are a bedrock, a

14  foundation, on doing custodial file searches.  So unless -- and

15  I'm not the world's expert on this subject.  If other folks on

16  my side have something to say, I'd appreciate hearing from

17  them.

18              **THE COURT:**  I would too.

19              **MR. WILLIAMS:**  Well, Judge, just let me say -- I

20  mean, we understand that as you used the term *relevance* -- I'm

21  sorry -- you're not talking about open-ended relevance.  We

22  know what that means, and we're going to play by the rules.

23              **THE COURT:**  Okay.  Good.  Thank you.

24                  Ms. Bertaut?

25              **MS. BERTAUT:**  Judge, I think this is going to be

 1   essentially a problem -- a critical problem in the early days
 2   of the depositions.  Document production requests are already
 3   outstanding.  We are due to produce on -- beginning on or about
 4   December 15th.  We know plaintiffs are going to be sitting at a
 5   table with us the week of December 13th through 17th
 6   identifying witnesses.
 7                   My concern is that in a haste to take a
 8   deposition, knowing that we're going to be doing rolling
 9   production of documents, knowing that the search terms have
10   been deferred, deferred, deferred, we anticipate the situation
11   that the plaintiff will pull a witness for a deposition early,
12   which is their choice, they make a decision to run with a
13   deposition prior to production of the relevant documents, that
14   risk really ought to be on them.  No one is requiring they take
15   a deposition beginning January 18th.  They choose to do that.
16                   In the typical case, document production would
17   be substantially complete before you'd start putting witnesses
18   in the box.  Now, if you want to go ahead and jump that gun and
19   take a deposition, it doesn't seem quite fair to us that we are
20   now being compelled to rush our production or accelerate or
21   change the rolling production that we've got to accommodate a
22   witness when some of this is going to work itself out with the
23   allotment of the time.
24                   So that is my concern.  I think that, as
25   Mr. Haycraft said, a particular problem is the search terms.

1    Because we know that we are anticipating, 21 days after the

2    production, that we're going to sit down with agreed upon

3    search terms.

4             It seems to me if you're going to talk in terms

5    of custodial files as opposed to just a rolling production,

6    then it's incumbent for the parties to agree on how to search

7    those files to make certain we're covering what they've got.

8             Because the way this is now setting up is you're

9    going to have a number of depositions being taken very early on

10   when productions are not complete and you're going to leave

11   open the very real possibility that witnesses are going to have

12   to come back in.  Nobody wants to see that, Judge.

13            So that's our concern with the certification.

14   You're asking me to do something that is just a recipe for a

15   complaint later on that we didn't find some piece of document

16   that -- or that somebody else produced a document.  Because it

17   may not even be my custodial file.  What you may deem relevant

18   may be somebody else's production later on in the case.

19        **THE COURT:**  When I talked about avoidance of

20   duplicative depositions, I gave, by way of example, production

21   of highly relevant.  Does that make a difference?  I mean, it's

22   not just any production.  It's not any document that may have

23   been missed.  But it's got to be highly relevant.  I mean, a

24   smoking gun.  I don't want to limit you guys to a smoking gun,

25   but, I mean, it's got to be really highly relevant.

1   importance to go back and talk to the witness about.

2           **MR. GODWIN:**  Thank you, Your Honor.

3           **THE COURT:**  Okay.

4           **MR. HERMAN:**  Three quick points.

5                 Very briefly, Your Honor.  First of all, I want

6   to apologize to Mr. Underhill and the other counsel for the

7   United States.  I usually try to either forward or cc and I

8   forgot and it's my fault and I apologize.  I'll try to do

9   better.

10                Second of all, with this situation, there's risk

11  to both parties.  This happens in every litigation.  We face

12  the risk of deposing a critical witness too early without all

13  the documents, that's a just a calculus we have to make, and

14  there's a natural deterrent to weigh the cost and benefits; and

15  for them, there's a natural deterrent to produce all their

16  documents so they minimize the risk that they'll be re-deposed.

17          **THE COURT:**  Yes.  And let me ask you on that issue:

18  Are you-all going to start with the more minor witnesses so

19  that the production can catch up with the deposition schedule?

20  Is that kind of how you're looking at it?

21          **MR. HERMAN:**  We'll have that discussion, and I'm not

22  really the person in charge, but what I think my thinking would

23  be is that we try to find some witnesses who we think will be

24  key but their testimony won't be necessarily document

25  intensive, be more, what did they see, what did they hear.  And

1    we'll try to identify some of these witnesses first.

2            **THE COURT:**  That makes sense.

3            **MR. HERMAN:**  Finally, I hate to revisit this issue

4    again, but as I'm sitting here, I just make a quick

5    observation.  I understand the defendants, you know, they want

6    to have their cake and eat it too, and so do we, and so does

7    every litigant, but their proposal right now, as I understand

8    it, is we want, we need, we should get collectively three and a

9    half hours.  So that should be what they get.

10            If the default's going to be eight, then we

11   should get, at the very least, four and a half and they should

12   get, at the very most, three and a half, and I would just throw

13   that on the table.

14            But thank you.

15            **THE COURT:**  Okay.  Thank you.

16            **MR. HAYCRAFT:**  Good try.

17            **THE COURT:**  He ran.

18            **MR. HAYCRAFT:**  How about three hours and 45 minutes?

19            **MS. KUCHLER:**  Just to clarify, Judge, at least this

20   defendant did not agree to three and a half hours if the

21   Court's inclined to give eight hours total.  We want 50/50

22   whatever the total amount of time is.

23            **THE COURT:**  Okay.  All right.

24            I think those were the only areas remaining in

25   dispute.  Did I miss something that you-all think was on the