UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG | : | MDL NO. 2179 |
| "DEEPWATER HORIZON" IN THE GULF | : | |
| OF MEXICO, ON APRIL 20, 2010 | : | SECTION J |
| | : | |
| THIS DOCUMENT RELATES TO: | : | JUDGE BARBIER |
| | : | |
| 2:10-CV-02771 | : | MAGISTRATE JUDGE SHUSHAN |
| | : | |

........................................................................................................................................................................

**MEMORANDUM IN SUPPORT OF UNITED STATES'
MOTION TO DISMISS RULE 14(c) THIRD-PARTY
COMPLAINT [DOC. # 1320] AND CROSS-CLAIM [DOC. # 2068]**

TABLE OF CONTENTS

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    I.    Regulatory Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    II.    Allegations of the Third-Party Complaint and Cross-Claim . . . . . . 4

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    I.    The Third-Party Complaint and Cross-Claim Should Be Dismissed
        Because the United States Has Not Waived Sovereign Immunity
        for Regulatory Oversight and Enforcement Actions. . . . . . . . . . . 6

        A.    The United States Has Sovereign Immunity
               for FTCA Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        B.    The United States Has Sovereign Immunity for
               Admiralty Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    II.    The Third-Party Complaint and Cross-Claim Should
        Be Dismissed for Failure To State a Claim Upon Which
        Relief Can Be Granted. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

# TABLE OF AUTHORITIES

## Federal Statutes

28 U.S.C. § 1346 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

28 U.S.C. § 2674 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

28 U.S.C. § 2680(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

30 U.S.C. § 21a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

33 U.S.C. § 1321 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

33 U.S.C. §§ 2701-2761 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

43 U.S.C. § 1334 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

46 U.S.C. §§ 30101-30106 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

46 U.S.C. §§ 30901-30918 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

46 U.S.C. § 30903 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10

## Federal Regulations

30 C.F.R. § 250.101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

30 C.F.R. § 250.102 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

30 C.F.R. § 250.106 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

30 C.F.R. § 250.107 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

30 C.F.R. § 250.400 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 16

30 C.F.R. § 250.401 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 16

## Federal Cases

*America Cargo Transp., Inc. v. United States*,
   625 F.3d 1176 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Ashcroft v. Iqbal*,
   556 U.S. —, 129 S. Ct. 1937, 1949 (2009) . . . . . . . . . . . . . 12, 13, 14, 15

*Baker v. Putnal*,
   75 F.3d 190, 196 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544, 555 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 12, 14

*Central Airlines, Inc. v. United States*,
   169 F.3d 1174 (8th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Dura Pharm., Inc. v. Broudo*,
    544 U.S. 336, 346 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

*Freeman v. United States*,
    556 F.3d 326, 334-35 (5th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

*Hershey v. Energy Transfer Partners*,
    610 F.3d 239, 245-46 (5th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

*Hornbeck Offshore Transp., LLC v. United States*,
    569 F.3d 506 (D.C. Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8, 9

*Howell v. United States*,
    932 F.2d 915, 918 (11th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

*HSBC Bank Nev., N.A. v. Murungi*,
    Civ. No. 10-1527, 2010 WL 3170736 (E.D. La. Aug. 11, 2010) . . . . . . .   13

*In re Great Lakes Dredge & Dock Co.*,
    624 F.3d 201, 211 (5th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

*Johnson v. Sawyer*,
    47 F.3d 716, 727-28 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . .   7, 9, 10

*Lormand v. U.S. Unwired, Inc.*,
    565 F.3d 228, 232-33 (5th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

*McPherson v. Union Oil Co. of Cal.*,
    628 F. Supp. 265 (S.D. Tex. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

*Myers v. United States*,
    17 F.3d 890 (6th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7, 8

*Royal Ins. Co. of Am. v. Sw. Marine*,
    194 F.3d 1009, 1018 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . .   13, 14

*Sea Air Shuttle Corp. v. United States*,
    112 F.3d 532, 536 (1st Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

*Taylor v. Books A Million, Inc.*,
    296 F.3d 376, 378 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

*United States v. Olson*,
      546 U.S. 43, 46-47 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Sherwood*,
      312 U.S. 584, 586 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*,
      467 U.S. 797, 808 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

<u>Treatises</u>

5 Wright & Miller, Federal Practice and Procedure, § 1216 . . . . . . . . . . . . . . . . . . 14

# INTRODUCTION

THE UNITED STATES OF AMERICA hereby moves to dismiss the Third-Party Complaint brought by Petitioners Triton Asset Leasing GmbH, Transocean Holding LLC, Transocean Offshore Deepwater Drilling Inc., and Transocean Deepwater Inc. ("Third-Party Plaintiffs") [Doc. # 1320], as well as the Cross-Claim brought by the same parties against the United States [Doc. # 2068].  These complaints, including the Rule 14(c) tender of the United States to Plaintiffs, should be dismissed for lack of subject matter jurisdiction, or, in the alternative, for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(1), 12(b)(6).

The *Deepwater Horizon* tragedy of April 20, 2010, took eleven lives, caused the destruction and sinking of a massive mobile offshore drilling unit, led to the release of millions of barrels of oil, significantly disrupted the Gulf of Mexico region's economy, and damaged the environment.  The Third-Party Complaint and the Cross-Claim presumably challenge the actions of the federal government for the way in which it conducted regulatory activities before the accident, overseeing and regulating the private parties involved in the offshore oil drilling industry.  The United States has consented to suit, however, only to the extent a similarly situated private party would be liable under applicable state or maritime law.  Third-Party Plaintiffs have not alleged that a private party could be held liable under any such law for alleged negligent regulatory action.  Accordingly, the Third-Party Complaint and Cross-Claim should be dismissed for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  In the alternative, the actions should be dismissed because Third-Party Plaintiffs fail to satisfy the pleading standard set by

1

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), because they fail to make any factual allegations against the United States.

**FACTS**

**I.      Regulatory Background**

Offshore oil drilling is an enormous industry in the United States and involves some of the largest corporations in the world.  At the time of the incident, portions of the industry were subject to federal regulation by the Minerals Management Service (MMS).[1]

Under the Mining and Minerals Policy Act of 1970, Congress declared it the policy of the United States to foster and encourage private enterprise in the domestic mining and minerals industries, including the oil industry.  30 U.S.C. § 21a.  The Secretary of the Interior has the authority to carry out this policy.  *Id.*  The Secretary of the Interior is also authorized to regulate drilling operations on the Outer Continental Shelf, and accordingly has the authority to promulgate regulations governing drilling exploration and the production of oil and gas.  43 U.S.C. § 1334.

The Secretary of the Interior authorized MMS "to regulate oil, gas, and sulphur exploration, development, and production operations on the Outer Continental Shelf."  30 C.F.R. § 250.101 (2009).[2]  To accomplish that goal, MMS regulates drilling operations to promote the orderly exploration, development, and production of mineral resources, to

---

[1]      In May 2010, MMS was converted into the Bureau of Ocean Energy Management, Regulation and Enforcement (BOEMRE).  This Memorandum refers to MMS and BOEMRE interchangeably.

[2]      The 2009 regulations were in effect at the time of the Macondo incident.

2

prevent injury or loss of life, and to prevent damage to or waste of any natural resource, property, or the environment.  30 C.F.R. § 250.106.  Accordingly, MMS/BOEMRE promulgates federal drilling-related regulations that apply to private industry.  *See* 30 C.F.R. Part 250, "Oil and Gas and Sulphur Operations in the Outer Continental Shelf."

The agency requires that operators conduct all operations in accordance with Part 250, as well as pursuant to the Outer Continental Shelf Lands Act, agency orders, and any other applicable laws, regulations, and amendments.  30 C.F.R. § 250.101.  The agency requires companies to submit requests, applications, and notices, or to provide supplemental information for agency approval, all in order to allow such companies to conduct drilling operations on the Outer Continental Shelf.  30 C.F.R. § 250.102.  In carrying out their official duties, agency employees issue drilling permits, issue notices to lessees and operators, review plans, and perform other regulatory activities.  30 C.F.R. Part 250.

When conducting drilling operations, private operators are at all times responsible for protecting health, safety, property, and the environment.  30 C.F.R. § 250.107.  This includes the responsibility to maintain equipment, perform all operations in a safe manner, and use the best available and safest technology.  30 C.F.R. § 250.107.  Private operators are responsible for taking necessary precautions to keep their wells under control.  30 C.F.R. §§ 250.400, 250.401.  Subpart D, which governs oil drilling operations, imposes requirements on "lessees, operating rights owners, operators, and their contractors and subcontractors."  30 C.F.R. § 250.400.  Thus, the requirement that operators must "keep wells under control at all times" applies to private operators, not to

3

the regulating agency.  30 C.F.R. § 250.401.  At no time did MMS take over the private operators' responsibility to comply with the performance requirements of the regulations and to ensure the safety of their operations.

The United States expended countless resources after the *Deepwater Horizon* tragedy to attempt to minimize the damage from the blowout, including deploying the Coast Guard and the military.  The spill necessitated a governmental response unprecedented in size, duration, and expense.  Under the authority of the Clean Water Act, 33 U.S.C. § 1321(c), over 47,000 persons assisted with the response.  The United States is pursuing all of its legal options to recover damages from BP, Transocean, and others.  (Case No. 10-cv-4536, Doc. # 1, filed Dec. 15, 2010.)

The United States' lawsuit seeks a declaration that BP, Transocean, and others are responsible and subject to strict liability for unlimited removal costs and damages under the Oil Pollution Act of 1990, 33 U.S.C. §§ 2701-2761.  The United States also seeks civil penalties under the Clean Water Act.  33 U.S.C. § 1321(b)(7).  The United States alleges that the Defendants (including the Third-Party Plaintiffs here) violated MMS regulations, including the fundamental requirement that they keep the Macondo well under control at all times.  30 C.F.R. § 250.401.

## II.     Allegations of the Third-Party Complaint and Cross-Claim

In their Complaint and Cross-Claim, Third-Party Plaintiffs allege that the Macondo incident and the oil spill "may have been caused in part by the comparative fault and/or negligence of the United States of America."  [Doc. # 1320 ¶ LI; Doc. # 2068 ¶ 64.]  Third-Party Plaintiffs make no specific factual allegations of negligence against

4

any government employee, stating only that the Third-Party Complaint was filed "to reserve any right to apportionment" to the extent not covered by an affirmative defense. [Doc. # 1320 ¶ LI.]  Third-Party Plaintiffs expressly acknowledge the United States' sovereign immunity defense to suit, including "discretionary function and sovereign immunity rights of the United States."  [Doc. # 1320 ¶ LI; Doc. # 2068 ¶ 64.]  Third-Party Plaintiffs seek a declaration regarding the relative fault of the United States and a credit, set-off, and/or recoupment against the United States.  [Doc. # 1320 ¶ LI.]

Third-Party Plaintiffs bring the Third-Party Complaint pursuant to Rule 14(c).  In an admiralty claim, a third-party plaintiff may demand judgment in the plaintiff's favor against the third-party defendant. Fed. R. Civ. P. 14(c).  "In that event, the third-party defendant must defend under Rule 12 against the plaintiff's claim as well as the third-party plaintiff's claim; and the action proceeds as if the plaintiff had sued both the third-party defendant and the third-party plaintiff."  Fed. R. Civ. P. 14(c)(2).

The Plaintiffs' claims consist of the B1 Amended Master Complaint for economic losses [Doc. # 1128] and the B3 Master Complaint for personal injury resulting from clean-up efforts [Doc. # 1805-1], the claims set forth in Exhibit A to Third-Party Plaintiffs' Complaint [Doc. # 1320], and the short form joinders in Case No. 10-8888. Those complaints make no factual or legal allegations of negligence against the United States of America or any federal employee.

**ARGUMENT**

**I.     The Third-Party Complaint and Cross-Claim Should Be Dismissed Because the United States Has Not Waived Sovereign Immunity for Regulatory Oversight and Enforcement Actions.**

An action can be brought against the United States only to the extent the United States waives its sovereign immunity.  *United States v. Sherwood*, 312 U.S. 584, 586 (1941); *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808 (1984); *Freeman v. United States*, 556 F.3d 326, 334-35 (5th Cir. 2009).  The United States has not waived its sovereign immunity for the Third-Party Plaintiffs' allegations, so the Complaint and Cross-Claim must be dismissed for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).

Third-Party Plaintiffs fail to allege the federal statute under which they seek to hold the United States liable.  Rule 14(c), which permits Third-Party Plaintiffs to tender the United States to the Plaintiffs, is a procedural rule and does not create a cause of action.  Assuming the allegations lie under the Court's admiralty jurisdiction, the allegations might be brought under the Suits in Admiralty Act, 46 U.S.C. §§ 30901-30918, or the Admiralty Extension Act, 46 U.S.C. §§ 30101-30106, which in turn incorporates the Suits in Admiralty Act.  If the case does not lie in admiralty, then Third-Party Plaintiffs may intend to bring the case under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2674.  These statutes, by themselves, do not create a cause of action, but serve as a vehicle for subjecting the United States to liability as if it were a private person under local law.  In the case of the Suits in Admiralty Act and the Admiralty Extension Act, the general maritime law applies.  46 U.S.C. §§ 30101, 30901,

30903(a).  In the case of the Federal Tort Claims Act, the law of the state where the alleged negligent act occurred applies.  28 U.S.C. §§ 1346(b), 2674.

For purposes of this motion, the Court need not determine whether this case falls under admiralty or non-admiralty jurisdiction.  Under the application of any body of federal law, the United States may be held liable for negligence only to the extent that local law would hold a similarly situated private person liable.

Thus, Third-Party Plaintiffs must allege a cause of action applicable to private parties under maritime or state law.  *United States v. Olson*, 546 U.S. 43, 46-47 (2005) (holding that courts must look for an analogy to a private person, not to a state or municipal entity, in determining if the United States' sovereign immunity has been waived under the FTCA); *Johnson v. Sawyer*, 47 F.3d 716, 727-28 (5th Cir. 1995).  If Third-Party Plaintiffs fail to allege a private party analogue, the Third-Party Complaint and Cross-Claim must be dismissed for lack of subject matter jurisdiction.

Here, Third-Party Plaintiffs make no factual or legal allegations against the United States.  Even if they did allege that government agents failed to enforce federal regulations concerning the issuance of drilling permits, simply asserting such a failure of enforcement does not establish liability in the absence of a maritime or state-law cause of action recognizing comparable liability for a similarly-situated private party.

## A.     The United States Has Sovereign Immunity for FTCA Claims.

Alleging a private party analogue is essential to Third-Party Plaintiffs' cause, and the lack of it completely defeats their action.  For example, in *Myers v. United States*, 17 F.3d 890 (6th Cir. 1994), the representatives of persons killed in a mine explosion sued

the United States, alleging that the Mine Safety and Health Administration negligently breached duties arising out of federal mine safety statutes and regulations.  The plaintiffs alleged that the federal agency allowed an unsafe condition to exist and should have ordered the mine operator to do things differently.  *Myers*, 17 F.3d at 893.  The district court granted the United States' motion to dismiss under the discretionary function exception to the Federal Tort Claims Act, 28 U.S.C. § 2680(a).  The Court of Appeals affirmed, but on other grounds.  The court ruled, instead, that the plaintiffs failed to plead facts sufficient to justify liability under ordinary state law principles, and held that "where a governmental actor merely fails to ensure a private party's compliance with federal safety regulations, no comparable state-law liability exists and, therefore, sovereign immunity is not waived under the FTCA."  *Id.* at 899.

The Sixth Circuit went on to explain that "[c]ases against regulatory agencies based solely on an alleged 'failure to prevent' are unique within the FTCA.  These are not situations in which a private person's participation can be readily imagined . . . .  These are situations in which *only* governments can find themselves and, therefore, ordinary state-law principles of private liability do not, and cannot, apply."  *Id.* at 905.

In the context of oil spill litigation, the D.C. Circuit recently affirmed the dismissal of a complaint for lack of a private-party analogue.  *Hornbeck Offshore Transp., LLC v. United States*, 569 F.3d 506 (D.C. Cir. 2009).  In that case, the Coast Guard misinterpreted provisions of the Oil Pollution Act dealing with single-hulled oil vessels, causing economic harm to the plaintiff, who owned and operated such vessels.  The operator sued the United States under the Federal Tort Claims Act for its lost profits.  The

district court dismissed the complaint for lack of subject matter jurisdiction, holding that the United States had sovereign immunity because there was no local private-party cause of action analogous to the plaintiff's claim.  The appellate court affirmed.

The *Hornbeck* court found no local cause of action that was sufficiently similar to impose liability for the Coast Guard employees' alleged failure to properly apply the provisions of the Oil Pollution Act.  The court noted that the plaintiff's lawsuit attempted to avoid the local law requirement merely by raising the general standard of care.  The standard of care is not a cause of action, however, so the court concluded that "[t]he FTCA's local law requirement may not be circumvented merely by casting the alleged . . . wrong as negligence."  569 F.3d at 509.  The Third-Party Plaintiffs here seek to do precisely what *Hornbeck* does not allow.

The controlling law of this Circuit leads to the same result.  In *Johnson v. Sawyer*, 47 F.3d 716, 727-28 (5th Cir. 1995), the Fifth Circuit ruled that the United States cannot be found liable unless a private entity would owe a duty under state law in a nonfederal context.  *Id.* at 728.  In that case, the plaintiff filed a tort claim under the Federal Tort Claims Act, alleging that the IRS tortiously released his tax information to the public in violation of federal statutes, causing him to lose his job.  The district court ruled in favor of the plaintiff, and the first appellate panel affirmed.  The full court, hearing the case *en banc*, reversed the trial court because the purported duty was found in federal law, not state law.  *Id.* at 718.  The court held that the FTCA was not intended to redress breaches

of federal duties, but only waives subject matter jurisdiction if local law would impose liability on a private party.[3]  *Id.* at 727.

###### B.    The United States Has Sovereign Immunity for Admiralty Claims.

The same analysis applies in admiralty under the Suits in Admiralty Act, which provides that a civil action in admiralty may be brought against the United States only to the extent that a civil action in admiralty could be maintained against a private person.  46 U.S.C. § 30903(a).  In *America Cargo Transp., Inc. v. United States*, 625 F.3d 1176 (9th Cir. 2010), a cargo shipping company sought monetary damages against the United States over a dispute concerning a humanitarian aid shipment.  The carrier argued that its bid was wrongfully rejected by government agents.  625 F.3d at 1180.  The district court dismissed the claim, ruling that it lacked subject matter jurisdiction.  *Id.*  The appellate court affirmed.  The court examined the waiver of sovereign immunity found in the Suits in Admiralty Act, and concluded that the waiver applies "only where a private party would be liable under admiralty law for the same conduct."  *Id.* at 1181.  Because a private party could not be held liable for violating federal cargo preference regulations,

---

[3]    *Accord Central Airlines, Inc. v. United States*, 169 F.3d 1174 (8th Cir. 1999) (finding no private party liability analogue for federal agency's erroneous regulatory enforcement actions, which caused economic harm to the plaintiff); *Sea Air Shuttle Corp. v. United States*, 112 F.3d 532, 536 (1st Cir. 1997) (finding no private party analogue and no resulting government liability where the claimed negligence arose out of the failure of the United States to carry out a federal statutory duty); *Howell v. United States*, 932 F.2d 915, 918 (11th Cir. 1991) (finding no private party analogue and no resulting government liability where an FAA inspector was aware of an airplane's contaminated fuel problem but took no action before the pilot, who also knew about the fuel problem, flew the airplane anyway and crashed).

the United States could not be held liable, either.  *Id.*  The court noted that the same analysis applies in Federal Tort Claims Act suits.  *Id.*

In the case of a helicopter crash on an oil rig in the Gulf of Mexico, a Texas district court held that the United States had no duty under general maritime law to promulgate or enforce federal regulations in any particular manner.  *McPherson v. Union Oil Co. of Cal.*, 628 F. Supp. 265 (S.D. Tex. 1985).  In that case, a helicopter crashed while landing on a rig, killing the helicopter pilot.  His widow sued the United States, alleging that the Federal Aviation Administration and the United States Coast Guard negligently failed to promulgate certain safety regulations, and negligently performed certain approval and certification procedures.  The district court granted the United States' motion to dismiss.  The court looked for a duty under which a similarly situated private person could be found liable, and found no such duty under common law principles.  The court noted that the duty to ensure that an aircraft remains in an airworthy condition lies with the private operator, and that the federal government merely policed the private operator's compliance with federal safety regulations.  *Id.* at 270.  This is the same situation as the present case, where MMS merely policed compliance, but the burden for ensuring that a drilling operation was conducted safely remained firmly with the operators and their various contractors – including Third-Party Plaintiff Transocean.

Because Third-Party Plaintiffs have failed to make any factual allegations against the United States, the basis for the Third-Party Complaint/Cross-Claim is unclear.  To the extent such allegations constitute a challenge to regulatory actions such as issuing drilling permits under federal oil drilling regulations, such allegations fail as a matter of law

because Third-Party Plaintiffs have failed to allege any local law under which a similarly situated private person could be held liable.  Accordingly, the Court lacks subject matter jurisdiction, and the allegations against the United States should be dismissed.  Fed. R. Civ. P. 12(b)(1).

## II.     The Third-Party Complaint and Cross-Claim Should Be Dismissed for Failure To State a Claim Upon Which Relief Can Be Granted.

In the alternative, Third-Party Plaintiffs' Complaint and Cross-Claim, as well as the Rule 14(c) tender, should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted because Third-Party Plaintiffs fail to make any factual allegations against the United States.

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. —, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  *Twombly* "governs the pleading standard 'in all civil actions and proceedings in the United States district courts,'" *Iqbal*, 129 S. Ct. at 1953, which necessarily includes third-party complaints under Rule 14(c).  *Accord* Fed. R. Civ. P. 7(a) (listing a "third-party complaint" as a "pleading").

A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.  A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff.  *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232-33 (5th Cir. 2009); *see also Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.

1996). The court is not, however, bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 129 S. Ct. at 1949-50; *see also HSBC Bank Nev., N.A. v. Murungi*, Civ. No. 10-1527, 2010 WL 3170736 (E.D. La. Aug. 11, 2010). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal* at 1950; *see also Hershey v. Energy Transfer Partners*, 610 F.3d 239, 245-46 (5th Cir. 2010).

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must give the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005). The allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). The Third-Party Complaint must satisfy the pleading standard even though it contains a Rule 14(c) tender. *See Royal Ins. Co. of Am. v. Sw. Marine*, 194 F.3d 1009, 1018 (9th Cir. 1999) (noting that the third-party plaintiff's complaint under Rule 14(c) had "explained how and why the third-party [defendant] was directly liable to [the original plaintiff]").

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court identifies conclusory allegations and proceeds to disregard them, for they are "not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1951. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id*.

Turning first to conclusory allegations, Third-Party Plaintiffs allege that the incident of April 20, 2010, and the subsequent oil spill "may have been caused by the comparative fault of the United States of America."  [Doc. # 1320 ¶ LI; Doc. # 2068 ¶ 64.]  Third-Party Plaintiffs also allege that the Court has jurisdiction over this action and that the United States "is responsible for the acts of Federal Agencies and government employees."  [Doc. # 1320 ¶ XXXIII; Doc. # 2068 ¶ 24.]  These allegations must be disregarded, as they state conclusions of law and contain no factual allegations. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."  *Taylor v. Books A Million, Inc*., 296 F.3d 376, 378 (5th Cir. 2002).

Turning to factual allegations, Third-Party Plaintiffs' Complaint and Cross-Claim contain none whatsoever against the United States.  [Doc. # 1320 at 33-34; Doc. # 2068 ¶¶ 24, 64.]  The complaints seek apportionment of fault without making any factual allegations or even setting forth the federal statute upon which a claim must be based. The underlying Plaintiffs' complaints likewise contain no factual allegations against the United States.

*Twombly* and *Iqbal* affirm the trial court's authority to evaluate the strength of a complaint:  "the Court has vested trial judges with the authority to evaluate the strength of the factual 'showing' of each claim for relief and thus determine whether or not it should proceed."  5 Wright & Miller, Federal Practice and Procedure, § 1216.  In the present case, there are no allegations for the United States to answer – and no "factual showing" for the Court to evaluate.  As opposed to *Royal Insurance*, 194 F.3d at 1018, the

complaints and the Rule 14(c) tender here do not attempt to explain why the Third-Party Plaintiffs allege the United States is directly liable to the Plaintiffs.  With no allegations to answer, the United States is in the unusual position of having to dream up what the Third-Party Plaintiffs' allegations of liability might be.  Because there are no factual allegations against the United States, the Third-Party Complaint and Cross-Claim fail to set forth a plausible entitlement to relief.

Third-Party Plaintiffs also fail to plead the jurisdictional basis for their cause of action.  As the Court is aware, significant jurisdictional disputes abound in this Multi-District Litigation, and whether the Court has jurisdiction over a particular case depends on the specific facts pled in each case.  The Court's jurisdiction over claims against the United States depends on whether the United States has waived its sovereign immunity through the application of a particular statute.  Third-Party Plaintiffs' failure to specify the factual or legal bases of its claims impedes the United States' ability to raise threshold jurisdictional issues for the Court's attention.  Of important note, Third-Party Plaintiffs explicitly acknowledge the United States' sovereign immunity.  [Doc. # 1320 at 33.]

Assuming this is a negligence case brought under maritime law, which the United States does not concede here, Third-Party Plaintiffs must allege at least the factual predicate for the elements of duty, breach, causation, and damages.  *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 211 (5th Cir. 2010).  Third-Party Plaintiffs have not done so, nor have the original Plaintiffs in the master complaints.  Even if Third-Party Plaintiffs had pled factual and legal elements, the United States, as a matter of law, owed no duty because, as alleged in the Plaintiffs' complaints, it was at all times the

responsibility of the private parties involved in the oil drilling venture to comply with federal safety regulations, including maintaining control of their well.  30 C.F.R. §§ 250.400, 250.401 (2009).  The United States has never assumed the duties that are imposed on private parties under 30 C.F.R. Part 250 (MMS oil drilling regulations), nor do any Plaintiffs or Third-Party Plaintiffs allege as such.  *See* Argument I, *supra*.

Accordingly, the Third-Party Plaintiffs' allegations against the United States should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court dismiss the Third-Party Complaint [Doc. # 1320] and the Cross-Claim [Doc. # 2068], including the Rule 14(c) tender to Plaintiffs.  Fed. R. Civ. P. 12(b)(1), 12(b)(6).

Dated:  May 18, 2011

//

//

//

//

//

//

//

//

//

16

Respectfully submitted,

IGNACIA S. MORENO
Assistant Attorney General
Environment & Natural Resources
Division

JAMES NICOLL
Senior Counsel
NANCY FLICKINGER
Senior Attorney
SARAH HIMMELHOCH
Senior Attorney
DEANNA CHANG
SCOTT CERNICH
A. NATHANIEL CHAKERES
JUDY HARVEY
MATT LEOPOLD
Trial Attorneys

/s/ Steven O'Rourke
STEVEN O'ROURKE
Senior Attorney
U.S. Department of Justice
Environmental Enforcement Section
PO Box 7611
Washington, DC 20044
(202) 514-2779
steve.o'rourke@usdoj.gov

TONY WEST
Assistant Attorney General
Civil Division

PETER F. FROST
Director, Torts Branch, Civil Division
Aviation & Admiralty Litigation

STEPHEN G. FLYNN
Assistant Director
MICHELLE T. DELEMARRE
SHARON K. SHUTLER
JILL DAHLMANN ROSA
JESSICA SULLIVAN
JESSICA L. MCCLELLAN
MALINDA LAWRENCE
DAVID J. PFEFFER
Trial Attorneys
U.S. Department of Justice
Torts Branch, Civil Division
PO Box 14271
Washington, DC 20044
(202) 616-4100
(202) 616-4002 fax

/s/ R. Michael Underhill
R. MICHAEL UNDERHILL, T.A.
Attorney in Charge, West Coast Office
Torts Branch, Civil Division
7-5395 Federal Bldg., Box 36028
450 Golden Gate Ave.
San Francisco, CA 94102-3463
(415) 436-6648
(415) 436-6632 fax
mike.underhill@usdoj.gov

JAMES LETTEN
United States Attorney

SHARON D. SMITH
Assistant United States Attorney
Eastern District of Louisiana
Hale Boggs Federal Building
500 Poydras St., Suite B-210
New Orleans, LA 70130

Attorneys for the UNITED STATES OF AMERICA

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing "Memorandum in Support of United States' Motion to Dismiss Rule 14(c) Third-Party Complaint [Doc. # 1320] and Cross-Claim [Doc. # 2068]" has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 18th day of May, 2011.

/s/ Jill Dahlmann Rosa
U.S. Department of Justice