# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

300 North LaSalle Street
Chicago, Illinois  60654

| | | |
|---|---|---|
| J. Andrew Langan, P.C.<br>To Call Writer Directly:<br>(312) 862-2064<br>alangan@kirkland.com | (312) 862-2000<br><br>www.kirkland.com | Facsimile:<br>(312) 862-2200 |

May 13, 2011

**Via E-mail**

The Honorable Sally Shushan
United States Magistrate Judge
United States District Court for the Eastern
District of Louisiana
500 Poydras Street, Room B345
New Orleans, Louisiana 70130

      RE:    MDL 2179 - *In re: Deepwater Horizon*

Dear Judge Shushan:

      We write in response to Halliburton's May 12, 2011 letter to Your Honor seeking to justify its request for the deposition of Mr. Lamar McKay, Chairman and President of BP America Inc and President and CEO of the Gulf Coast Restoration Organization.

      To date, BP has not objected to a single requested deposition, and has agreed to produce its former Group CEO Tony Hayward, former head of E&P Andy Inglis, and dozens of other senior executives and engineers who actually had line responsibility for and/or involvement in the Macondo well, as well as at least 10 members of BP's Internal Investigation Team.  Mr. McKay had neither involvement in or responsibility for the Macondo prospect or any role in the event phase.

      Halliburton's May 12 letter is noteworthy for what it does not say.  Specifically, it does not even attempt to argue that Mr. McKay's deposition is necessary for the parties' experts to prepare their expert reports for Phase 1 of the Limitation Trial -- an important factor cited by this Court in denying Transocean senior executive depositions in the event phase.  Nor does it identify a single "event"-related subject for which Mr. McKay can provide factual testimony that is not already being provided by multiple BP witnesses during this phase.  The reason for these omissions is obvious: while Mr. McKay was not involved with the Macondo well prior to April 20, 2010, by July 31st, BP will have produced well-over 65 witnesses for deposition in connection with Phase 1 of this trial, each of whom will testify about the Phase 1 topics based on their own personal knowledge.  Collectively, these BP deponents will provide more than a sufficient factual record for the parties' experts to draft their reports.

Hong Kong    London    Los Angeles    Munich    New York    Palo Alto    San Francisco    Shanghai    Washington, D.C.

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
May 13, 2011
Page 2


  Halliburton's argument (joined by the PSC) is essentially that because Mr. Probert was deposed, Mr. McKay has to be too.  In the first place, Halliburton never objected to Mr. Probert's deposition and even listed him as a Rule 30(b)(6) designee before changing its mind a short time before his deposition.  Moreover, Mr. Probert has held specific roles at Halliburton that made him an appropriate Phase 1 deponent.  For example, Mr. Probert served as Halliburton's Chief of Health, Safety, and Environment.  Due to that role, it was appropriate for the parties to take Mr. Probert's deposition during Phase 1 because he was likely to be able to provide the parties with relevant pre-incident testimony.  Halliburton apparently saw it the same way, as it did not object.  Along with Mr. Richard Vargo and Mr. Tommy Roth, Mr. Probert also served as the face of Halliburton's investigation into the incident.  The same cannot be said of Mr. McKay and as the Court knows, BP has already produced Mr. Mark Bly and many other members of BP's IIT for deposition.

  Finally, in an overreaching attempt to justify the deposition of Mr. McKay during Phase 1 of these proceedings, Halliburton makes inflated claims about Mr. McKay's Congressional testimony for which it provides scant support.  For example, Halliburton states that, on May 11, 2010 before the Senate Committee on Energy, Mr. McKay testified that "there were anomalous pressure test readings prior to the explosion."  What Halliburton's letter does not say is that those 10 words constitute the *entirety* of Mr. McKay's testimony regarding the anomalous pressure test during that hearing.  That one line of text in the prepared statement that Mr. McKay read into the record before answering live questions hardly constitutes a basis for a two-day deposition during Phase 1 -- particularly when BP is producing numerous other deponents who can address this test.   Indeed, Mr. McKay referred the Senators to BP's ongoing internal investigation -- of which he was not a team member:  *"I want to be clear: It's inappropriate to draw any conclusion before all the facts are known. As we speak, our investigation team is locating and analyzing data, interviewing available witnesses, and reviewing and assessing evidence. And today I think it's important to give you and the American public an idea of the questions we are asking."*

  Halliburton's letter also argues that Mr. McKay provided Congress "detailed answers" regarding "BP's use of six centralizers, the rig crew, BP's engineering team, the temporary abandonment procedures used on the well, and the events leading up to the blowout."  Halliburton letter at 2.  To justify this claim, Halliburton cites a set of written responses to post-hearing, written questions for the record ("QFRs") that are not personal responses from Mr. McKay, but rather are responses filed  "on behalf of BP America Inc. (BP)."  *See* Ex. B to Halliburton's letter at 76.  Taking the example of the centralizers, the letter's response states that it is based on "BP's present understanding" -- not Mr. McKay's personal knowledge -- of the number of centralizers used on the Macondo well.  *Id*. at 81.  Many other responses defer to the various BP internal investigations that were underway at the time.  *Id*.  It was perfectly

KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
May 13, 2011
Page 3

appropriate for BP to provide the most up-to-date, company-wide information possible when responding to the Senators' questions.  Halliburton's attempt to use these responses -- which were clearly filed on behalf of BP America Inc. -- to justify Mr. McKay's Phase 1 deposition is wholly misplaced.  In fact, far from providing justification for Mr. McKay's deposition at this time,[1] these responses demonstrate the importance of deposing the central members of BP's IIT -- the Team Leader Bly and more than 10 members of which have already been deposed in these proceedings.

      In sum, Halliburton has not provided any legitimate reasons showing that Mr. McKay should be deposed during the event phase of these proceedings.  It did not show that his testimony is necessary for any Phase 1 expert reports.  It also did now show that Mr. McKay can provide any testimony based on personal knowledge related to the Phase 1 topics, let alone testimony that has not already been given by the other 65 BP deponents.  Since Mr. McKay does not meet the criteria that the Court and parties have used to determine which potential witnesses are appropriate for Phase 1 depositions, Mr. McKay should be treated no differently than the senior Transocean executives that the Court ordered need not be deposed in the event phase.  BP respectfully requests that the Court deny Halliburton's request to depose Mr. McKay at this time.

      Thank you for the Court's consideration of this issue.

Sincerely,

J. Andrew Langan, P.C.

cc:    Plaintiffs Liaison Counsel
        Defense Liaison Counsel
        Mike Underhill, Esq.
        Hon. Attorney General Luther Strange
        Cory Maze
        Donald E. Godwin
        James P. Roy
        Stephen J. Herman

---

[1] It is noteworthy that when listing the known BP personnel who provided "input and guidance in the planning, design and/or execution" of the Macondo well, the responses to the QFRs filed by BP America Inc. do not list Mr. McKay.  Ex. B to Halliburton Letter at 78-79.

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
May 13, 2011
Page 4

    Mike O'Keefe
    Robert Cunningham