**UNITED STATES DISTRICT OF COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL | § | MDL No. 2179 |
| RIG "DEEPWATER HORIZON" | § | |
| IN THE GULF OF MEXICO, | § | SECTION:  J |
| ON APRIL 20, 2010 | § | |
| | § | JUDGE BARBIER |
| Applies to:  *Pleading Bundle B3* | § | |
| | § | MAG. JUDGE SHUSHAN |
| | § | |

**MEMORANDUM OF LAW IN SUPPORT OF HALLIBURTON ENERGY**
**SERVICES, INC.'S, MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED**
**MASTER COMPLAINT IN ACCORDANCE WITH PTO NO. 11**
**[CASE MANAGEMENT ORDER NO. 1] SECTION III.B(3) ["B3 BUNDLE"] AND**
**STIPULATED ORDER DATED MARCH 24, 2011**

Defendant Halliburton Energy Services, Inc. ("HESI"),[1] respectfully files this

memorandum in support of its motion asking the Court to dismiss all claims against it in the First

Amended Master Complaint in Accordance with PTO No. 11 [Case Management Order No. 1]

Section III.B(3) ["B3 Bundle"] (the "Complaint") and Stipulated Order dated March 24, 2011

pursuant to Federal Rule of Civil Procedure 12.[2]

---

[1] The First Amended Master Complaint (the "Complaint") identifies Halliburton Energy Services, Inc. ("HESI") as a defendant.  It is unclear whether the Complaint asserts that HESI's product service line, Sperry Drilling Services ("Sperry"), is a separate defendant.  Sperry should not be a separate defendant as it is nothing more than a product service line and not a separate corporate entity.  Nevertheless, to the extent Plaintiffs assert claims against Sperry in the Complaint, HESI expressly adopts the arguments set forth herein as being applicable to Sperry in addition to HESI.

[2] HESI has previously filed Motions to Dismiss the Bundle A Master Complaint (Dkt. Nos. 1180, 1189, 1184, 1186, 1173, 1182, 1176, 1181, 1174, 1175, 1187, 1179, 1185, 1191, 1190, 1170, 1172, 1193, 1183; *see also* Dkt. No. 1195) and the Bundle B1 Master Complaint (Dkt. No. 1429, 1429-1).  HESI has also previously filed motions to dismiss the claims of the States of Tamaulipas, Veracruz and Quintana Roo.  Dkt. Nos. 1781, 1782, and 1783.  HESI incorporates herein, as if set out in full, the arguments contained within those Motions to Dismiss.  With regard to Bundle B2, Plaintiffs have not directly sued HESI under their Consolidated Class Action RICO Complaint in Accordance with PTO No. 11 [CMO No. 1] Section III(B2).  *See* Dkt. No. 1059.  Transocean did not supplement the claims or factual allegations of the B2 Consolidated Complaint in either its 14(C) Tender nor its Cross-Claims/Counter-Claims.  *See* Dkt. Nos. 1320 and 2068.  Nor did Transocean provide any factual basis for adding HESI as a B2 defendant.  To the extent a 12(b) Motion to Dismiss is appropriate to answer and/or respond to the claims of Plaintiffs in the B2 Consolidated Complaint, HESI joins in and adopts the arguments contained in BP

## I.     **INTRODUCTION**

All claims regarding the *Deepwater Horizon* incident (the "Incident") in this proceeding arise under admiralty tort jurisdiction and are therefore governed by general maritime law. Plaintiffs do not dispute the fact that this case arises under the Court's admiralty jurisdiction. Plaintiffs nevertheless allege various unsustainable state common law and statutory claims. Plaintiffs will likely contend that they may properly assert state law claims despite the exclusive applicability of admiralty and maritime law, but this contention must fail.  State law would only apply here if: (1) state law is incorporated as a proxy for federal law pursuant to the "adjacent state law" provision of the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. §§ 1331-1356A, *et seq.*, or (2) such claims arise in state territorial waters.  Neither requirement is applicable here.  Thus, dismissal is proper.

Indeed, Plaintiffs' actual claims against HESI further support dismissal.  To begin, Louisiana substantive law does not recognize negligence *per se* as a cause of action and Plaintiffs' battery claim rests solely upon factual allegations related to the use of chemical dispersants, which HESI had no involvement in.  Because HESI had no involvement with the dispersants and Plaintiffs' allegations do not state HESI did, Plaintiffs' claims against HESI must fail.

---

Defendants' Motion to Dismiss Consolidated Class Action RICO Complaint in Accordance with PTO No. 11 [CMO No. 1] Section III(B2) and the Memorandum in Support of same.  Dkt. Nos. 1437 and 1437-1.  Likewise, with regard to Bundle D, Plaintiffs have not directly sued HESI under the D1 Master Complaint.  *See* Dkt. No. 880. Neither in its 14(C) Tender nor its Cross-Claims/Counter-Claims did Transocean supplement the claims or factual allegations of the D1 Master Complaint.  *See* Dkt. Nos. 1320 and 2068.  Nor did Transocean provide any factual basis for adding HESI as a D1 defendant.  To the extent a 12(b) Motion to Dismiss is appropriate to answer and/or respond to the claims of Plaintiffs in the D1 Master Complaint HESI joins in and adopts the arguments contained in BP Defendants' Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(B)(1), 12(B)(6), and 12(B)(7) the Master Complaint for Injunctive Relief Claims Against Private Parties, Filed in Accordance with PTO No. 11 (CMO No. 1), Section III (D1) and the Memorandum in Support of same.  Dkt. Nos. 1441 and 1441-1. Pursuant to Court Order, HESI must answer and/or respond to the Bundle C (local governmental entities) claims, as well as the claims of the States of Louisiana and Alabama, by June 3, 2011.  Finally, with regard to Pleading Bundle B4, pursuant to Dkt. 2371 and to the extent an answer and/or response is required, HESI's deadline to file any motion to dismiss is June 8, 2011.

Furthermore, Plaintiffs' claims for punitive damages likewise fail.  Punitive damages are not an independent cause of action, but must instead relate to another claim which permits recovery, and Plaintiffs have not plead any such cause of action against HESI.  Accordingly, HESI's Motion to Dismiss should be granted and Plaintiffs' claims againt HESI dismissed.

## II.    <u>PROCEDURAL HISTORY</u>

This case is related to the fire, explosion, and sinking of the DEEPWATER HORIZON, "an ultra-deepwater dynamic positioned semisubmersible oil vessel[,]" and a subsequent release of oil into the Gulf of Mexico (hereinafter, the "Incident").  Compl. ¶¶ 1, 86, 88, 90.  Defendant BP[3] "implement[ed] a disaster response plan to prevent oil from escaping the blown out well, to manually contain the oil, and to disperse oil in the water using . . . chemical dispersants."  Compl. ¶ 102.   Numerous lawsuits were filed in state and federal courts, many of which allegedly arose from post-explosion clean-up efforts and asserted personal injury claims resulting from alleged harms that occurred after the explosion and fire of April 20, 2010 on the DEEPWATER HORIZON.

In its October 19, 2010 Case Management Order No. 1 ("CMO No. 1") and later clarification in Pre-Trial Order No. 25 ("PTO No. 25"), this Court ordered the Bundle B3 Plaintiffs to assert "all claims, of any type, relating to post-explosion clean-up efforts asserted against Defendants not named in the B1 Master Complaint, as well as all claims for personal injury and/or medical monitoring for exposure or other injury occurring after the explosion and fire of April 20, 2010" in a Master Complaint.  PTO No. 25 ¶ 1.

On December 15, 2010, Plaintiffs filed their initial B3 Master Complaint (the "Original Complaint").  In the Original Complaint, Plaintiffs asserted no claims against HESI.  However,

---

[3] Plaintiffs identified defendants BP Exploration and Production, Inc., BP America Production Company, and BP, p.l.c., collectively as "BP."  *See* Compl. ¶¶ 23, 26-27, 35.

in its Rule 14(c) Tender in the Limitation Action, the Transocean Defendants[4] tendered HESI as a defendant to the B3 claims pursuant to Federal Rule of Civil Procedure 14(c).  *See* Dkt. No. 1320.  Subsequently, in the Plaintiffs' First Amended Master Complaint, which was effective on March 30, 2011, Plaintiffs named HESI as a defendant.  Compl. ¶ 60.  According to this Court's stipulated order dated March 24, 2011, and due to the fact that the previous timeline for Rule 12 Motions to Dismiss had passed, this Court ruled that tendered Third Party Defendants who had not previously responded to the B1 or B3 Master Complaints were to file a single Rule 12 motion by May 20, 2011.

Plaintiffs assert against HESI maritime law claims for negligence, gross negligence, nuisance and battery[5] and state law claims for negligence, gross negligence, negligence *per se,* nuisance, battery and for medical monitoring pursuant to Florida common law. Compl. ¶¶ 216-222, 240-263, 280-309.  Plaintiffs also assert a separate claim for punitive damages against HESI.  Compl. ¶¶ 328-354.  Plaintiffs further identify the Complaint as an admiralty or maritime case as provided in Federal Rule of Civil Procedure 9(h).  *Id.* ¶ 84.

### III.   STATEMENT OF FACTS[6]

Generally, Plaintiffs allege that BP leased the DEEPWATER HORIZON to drill an exploratory well in Mississippi Canyon Block 252, "a location on the Outer Continental Shelf off the coast of Louisiana."  Compl. ¶ 87.  On April 20, 2010, workers on the vessel lost control of the well and an explosion occurred, igniting a fire on board the DEEPWATER HORIZON.  *Id.* ¶

---

[4] Plaintiffs identified defendants Transocean Deepwater, Inc., Transocean Offshore Deepwater Drilling, Inc., Transocean Holdings, LLC, Triton Asset Leasing GMbH, and Transocean Ltd., collectively as "Transocean."  *See* Compl. ¶¶ 36-41.

[5] Plaintiffs do not specify whether their nuisance and battery claims are brought pursuant to maritime law or state law.  Therefore, out of an abundance of caution, HESI will address these claims as if Plaintiffs assert them under both maritime and state law.

[6] The "Statement of Facts" is based on allegations made in the Complaint.  HESI does not stipulate to the veracity of these allegations by its citation to the facts as alleged in the Complaint.

88. Subsequently, oil was discharged from the well into the waters of the Gulf of Mexico. *Id.* ¶¶ 90, 97.

BP responded to the oil spill by implementing plans: to prevent oil from escaping the well; to contain the oil already in Gulf of Mexico waters; and to disperse that oil by chemical means. Compl. ¶ 102. Part of this response effort was BP's Vessel of Opportunity ("VoO") program, which consisted of commercial and charter fishing vessels and other local boats employed in various ways to contain the oil. *Id.* ¶¶ 103-04. BP also directed the efforts of aircraft to spray chemical dispersants over Gulf of Mexico waters containing oil. *Id.* ¶¶ 122, 125. BP implemented and oversaw efforts to clean up beaches and other onshore areas by removing tar balls and polluted sand. *Id.* ¶ 123.

In the Complaint, Plaintiffs delineate several categories of Defendants. First, the "Drilling Defendants," including HESI, "were involved in the drilling, cementing, and other temporary well abandonment activities of the Deepwater Horizon." Plaintiffs contend that the Drilling Defendants' actions allegedly "caused and/or contributed to the [oil spill].[7] Compl. ¶ 60. Second, the "Clean-Up Defendants" allegedly "participated in the post-explosion Oil Spill remediation and response efforts." *Id.* ¶¶ 62-73. The "Chemical Manufacturer Defendants" allegedly manufactured the chemical dispersants BP employed to disperse the oil spill. *Id.* ¶ 76.

Plaintiffs assert personal injury damages for "adverse health effects" allegedly suffered as a result of their exposure to crude oil and dispersants. Compl. ¶ 1929(a)-(d). They also allege damages in the form of "[c]osts incurred and inconvenience sustained in obtaining medical

---

[7] Plaintiffs also allege that the factual allegations asserted in the Amended Master Complaint for Pleading Bundle B1 [Dkt. No. 1128] "are incorporated fully by reference herein." Compl. ¶ 88. To the extent that the allegations of the Amended B1 Master Complaint are incorporated into this Complaint, HESI incorporates herein, as if set out in full, the arguments presented in its Memorandum in Support of Its Motion to Dismiss the Master Complaint for Economic Losses (Bundle B1).

treatment for exposure to chemicals" and "emotional distress caused by concern over exposure to chemicals." *Id.* ¶¶ 192(e), 196.[8]

## IV.    SUMMARY OF ARGUMENT

Plaintiffs' state common law claims for negligence, gross negligence, negligence *per se,* nuisance, battery and for medical monitoring must be dismissed.  Supreme Court jurisprudence applying the Clean Water Act clearly establishes that an affected state's common law cannot apply to a source of water pollution outside of that state's territory. In addition, pursuant to the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. §§ 1331-1356a, *et seq.*, federal law applies to cases that arise beyond the borders of any state's territory on the outer continental shelf ("OCS"), and OCSLA's choice of law provisions plainly demonstrate that Plaintiffs' claims arise, if at all, under maritime law (*not* state law).  Plaintiffs acknowledge that admiralty jurisdiction applies to this case, but Plaintiffs overlook the fact that with admiralty jurisdiction comes the requisite application of substantive maritime law.

Even if Florida law did apply, and it does not, Plaintiffs fail to state a claim for medical monitoring under it.  The only means for any state law to apply is pursuant to OCSLA's adjacent state law provision, which, if applicable (and it is not), would require Louisiana law, not Florida law, to govern this matter.  Moreover, Florida's medical monitoring remedy has been strictly limited and cannot provide the relief Plaintiffs request in any event.

---

[8] Confusingly, Plaintiffs also assert that they "do *not* [in the Complaint] assert damages under the Oil Pollution Act of 1990 or tort law for lost profits and/or loss of earning capacity *against the Clean-Up Defendants or Chemical Manufacturing Defendants.*"  Compl. ¶ 197 (emphasis added).  Plaintiffs further point out that they do not "assert claims for damage to real or personal property *against the Clean-Up Defendants or Chemical Manufacturing Defendants* under tort law or the OPA." *Id.* (emphasis added).  These allegations suggest that Plaintiffs might assert damages for lost profits or earning capacity and/or property damage against the Drilling Defendants, including HESI.  Any such allegations would directly contravene this Court's order that the Bundle B3 Master Complaint include "all claims, of any type, relating to post-explosion clean-up efforts *asserted against Defendants not named in the B1 Master Complaint*, as well as all claims for personal injury and/or medical monitoring for exposure or other injury occurring after the explosion and fire of April 20, 2010."  PTO No. 25 ¶ 1.

6

Nor can Plaintiffs succeed on their battery claim.  Plaintiffs' battery claim only involves harms allegedly caused by chemical dispersants, but Plaintiffs do not allege that HESI had any involvement with dispersants whatsoever.

Moreover, Louisiana law, if it did apply, does not recognize the doctrine of negligence *per se*, and Plaintiffs fail to provide the requisite statutory or regulatory basis for their negligence *per se* claim.

Plaintiffs' maritime law claims against HESI must also be dismissed.  First, general maritime law does not recognize a claim for nuisance.  Second, to the extent that Plaintiffs' maritime claims arise out of exposure to dispersants or other chemicals used to contain or dissipate the oil spill, such claims must be dismissed, as Plaintiffs do not allege that HESI had any involvement in such activities.  Given HESI's lack of involvement and relation to Plaintiff's alleged nuisance claim, there is no basis for this Court to find that HESI was a proximate cause of Plaintiffs' alleged injuries.

Further, Plaintiffs' request for punitive damages must also be denied because such damages are not recoverable for the claims alleged.  Plaintiffs' assertion of a separate cause of action for punitive damages should also be dismissed because punitive damages are not an independent cause of action.

Finally, to the extent that Plaintiffs assert economic damages in the form of lost profits or lost earning capacity or property damage, such claims are displaced by the Oil Pollution Act of 1990, 33 U.S.C. §§ 2701-2720, *et seq*. ("OPA"), which provides the exclusive federal remedy for these categories of oil spill-related damages.  As the exclusive federal remedial scheme for such damages, OPA specifically preempts or displaces maritime tort claims seeking damages such as

those asserted in Plaintiffs' Master Complaint.[9]   Plaintiffs are also barred from recovering punitive damages pursuant to such claims because OPA does not provide for the recovery of punitive damages.

For these reasons, HESI respectfully moves to dismiss all claims asserted against it pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## V.   ARGUMENT AND AUTHORITY

### A.   Standard of Review.

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of an action where the court lacks subject matter jurisdiction.[10]   A motion to dismiss filed pursuant to Rule 12(b)(1) allows a party to challenge the subject matter jurisdiction of the district court to hear a case. *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001); *see also McElmurray v. Consol. Gov't. of Augusta Richmond County*, 501 F.3d 1244, 1251 (11th Cir. 2007).   A court may decide such a motion on one of three bases: (1) the complaint alone; (2) the complaint and the undisputed facts in the record; or (3) the complaint, the undisputed facts in the record, and the court's own resolution of disputed facts.   *McElmurray*, 501 F.3d at 1251; *Ynclan v. Dep't of the Air Force,* 943 F.2d 1388, 1390 (5th Cir. 1991) (citing *Williamson v. Tucker,* 645 F.2d 404, 413

---

[9] The doctrine of "preemption" generally pertains to the effect of federal law on state law, where there are concerns associated with federalism and balancing states' rights.   However, the discussion herein regarding OPA's effect on federal common law (*i.e.*, maritime law) pertains to the effect of a federal statute on a body of federal law, not state law.   In such instances, the federal statute more accurately "displaces" the federal common law, and there are no corresponding federalism issues.   Nevertheless, in discussing OPA's effect on federal maritime law, certain courts have referred to this issue as one of "preemption," and other courts seem to use "preemption" and "displacement" interchangeably.   *See, e.g., Gabarick v. Laurin Mar. (Am.) Inc.,* 623 F. Supp. 2d 741, 750-51 (E.D. La. 2009) (holding that "all [general maritime law] claims that are recoverable under OPA, specifically those covered damages enumerated in 33 U.S.C. § 2702, are preempted by OPA").   To avoid confusion with supporting case law, HESI's discussion of OPA asserts that the statute "preempts or displaces" federal maritime law.

[10] Plaintiffs also allege that the factual allegations asserted in the Amended Master Complaint for Pleading Bundle B1 [Dkt. No. 1128] "are incorporated fully by reference herein."   Compl. ¶ 88.   While HESI does not directly seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1), HESI incorporates herein the arguments and authorities contained within its Motion to Dismiss the B1 Master Complaint.   *See supra* fn 7.   Thus, HESI provides the standard of review for dismissal pursuant to Rule 12(b)(1).

8

(5th Cir. 1981)).  In a Rule 12(b)(1) motion, the burden of proving that jurisdiction exists falls on the party asserting jurisdiction.  *Ramming,* 281 F.3d at 161; *Eaton v. Dorchester Dev., Inc.,* 692 F.2d 727, 732 n.9 (11th Cir. 1982).

Similarly, Rule 12(b)(6) provides defendants a mechanism early in litigation for challenging a plaintiff's right to recover on a particular set of facts or a particular cause of action.  To that end, Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. __, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)).  Although courts accept well-pleaded facts as true, the U.S. Supreme Court recently rejected the previously-applicable principle that a dismissal for failure to state a claim was improper "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim." *Twombly*, 550 U.S. 544, 561 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also Coventry First, LLC v. McCarty*, No. 09-11682, 2010 U.S. App. LEXIS 9227, at *4-5 (11th Cir. May 5, 2010) (citing *Castro v. Secretary of Homeland Sec.*, 472 F.3d 1334, 1336 (11th Cir. 2006)).  Rather, to survive a Rule 12(b)(6) challenge, the "complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 570); *see also Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).  These "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Twombly*, 550 U.S. at 555-56.

9

**B.**     **Plaintiffs' State Law Claims Should Be Dismissed Because State Law is Inapplicable.**

      *1.*     *The Supreme Court has established that an affected state's common law does not apply to out-of-state sources of pollution.*

Supreme Court jurisprudence is clear.  Liability under state common law cannot be imposed on sources of pollution located outside of that State's boundaries.  *See Int'l Paper Co. v. Ouellette,* 479 U.S. 481 (1987).  In *Int'l Paper Co. v. Ouellette,* several owners of lakeside property on the Vermont side of Lake Champlain asserted a nuisance claim under Vermont common law against a paper company whose paper mill discharged pollutants into the lake from the New York side of the lake.  479 U.S. at 484.  After noting that "the control of interstate pollution is primarily a matter of federal law,"[11] the Court concluded that "the CWA [Clean Water Act] precludes a court from applying the law of an affected State against an out-of-state source."  *Id.* at 494.  In further support of its holding, the Supreme Court reasoned that a contrary result would subject out-of-state pollution sources to multiple venues, exposing parties to an indeterminate number of common-law rules and statutes established by the different states along the interstate and coastal waterways.  *Id.* at 496.  The *Int'l Paper* rationale is even stronger in this case, where the discharge occurred outside the territory of *any* state, making the application of state law even more incongruous.

      *2.*     *Pursuant to OCSLA, federal law applies to any claims arising out of or in connection with operations conducted on the outer continental shelf.*

Plaintiffs allege that this case arises out of BP's operations at the Macondo prospect site in "Mississippi Canyon Block 252, 48 miles off the coast of Louisiana" and that BP's objective was "to perform oil exploration, drilling, and production-related operations in Mississippi

---

[11] 479 U.S. at 492 (citing *Illinois v. Milwaukee,* 406 U.S. 91, 107 (1972), a case involving interstate water pollution where the Supreme Court ruled that federal common law would apply to the exclusion of state law.)

Canyon Block 252[.]"  Compl. ¶ 23; *see also* Am. Master Compl. for Pleading Bundle B1 ¶ 272 (the "B1 Master Complaint"), Dkt. No. 1128[12] (asserting that the Macondo well was located "48 miles off the coast of Louisiana").  It is indisputable that this site is located on the OCS, far outside the territory of any state.[13]  OCSLA specifically grants jurisdiction in cases "arising out of, or in connection with . . . any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf" to the U.S. District courts.  43 U.S.C. § 1349(b)(1).

In addition to its specific provisions regarding jurisdiction, OCSLA also contains a choice of law framework that applies to the exclusion of the forum state's choice-of-law rules. *See Gulf Offshore v. Mobil Oil Corp.,* 453 U.S. 473, 482 n.8 (1981) ("OCSLA does supersede the normal choice of law rules that the forum would apply.")  As a proxy for federal law, OCSLA's adjacent state law provision applies the law of the adjacent state *in certain limited situations* on the outer continental shelf.  *See* 43 U.S.C. § 1333(a)(2)(A).  Specifically, Fifth Circuit precedent establishes that the only basis on which state law could theoretically apply to Plaintiffs' claims is pursuant to OCSLA's "adjacent state law provision."  *See Demette v. Falcon Drilling Co.,* 280 F.3d 492, 499 (5th Cir. 2002) ("Since the incident occurred on the [OCS] beyond the territorial waters of Louisiana, the only way state law could apply was by incorporation into federal law under OCSLA"), *overruled in part on other grounds by Grand Isle Shipyard, Inc. v. Seacor Marine, LLC,* 589 F.3d 778, 782-83 (5th Cir. 2009).

---

[12] Plaintiffs incorporate by reference the factual allegations in the Amended Master Complaint for Pleading Bundle B1. Compl. ¶ 88.

[13] OCSLA, by reference to the Submerged Lands Act, 43 U.S.C. § 1301, defines the OCS generally as the submerged lands lying seaward beyond the three-mile belt of territory ceded to the states.  This definition and Plaintiffs' allegation that the Macondo prospect was located 48 miles off the Louisiana coast establishes that the Incident occurred on the OCS.

The language in OCSLA's choice of law provisions makes it clear that the statute "adjacent state law" provision is inapplicable in this case.  OCSLA's choice of law rules are found in two distinct provisions—Sections 1333(a)(1) and 1333(a)(2)(A).  Section 1333(a)(1) contains a very broad exertion of federal control and authority over virtually all activities occurring on the OCS involving the exploration, development, production, and transportation of resources.  This exertion of federal control is extended to "the subsoil and seabed of the outer Continental Shelf and to all artificial islands, and *all installations and other devices permanently or temporarily attached to the seabed*[.]"  43 U.S.C. § 1333(a)(1) (emphasis added).  The DEEPWATER HORIZON, a vessel, squarely falls within the language of a "device . . . temporarily attached to the seabed[.]"  Thus, the vessel and its operations were subject to federal control and authority.

OCSLA § 1333(a)(2)(A) applies the "laws of each adjacent state" on the OCS but in a much narrower set of circumstances.  Section 1333(a)(2)(A) provides, in relevant part, that the law of the adjacent state applies only "to that portion of the subsoil and seabed of the outer Continental Shelf, and *artificial islands* and *fixed structures* erected thereon[.]" (emphasis added).  Noticeably absent in §1333[,] (a)(2)(A) is the language contained in § 1333(a)(1) pertaining to "all installations and other devices permanently or temporarily attached to the seabed."  As a result, § 1333(a)(2)(A) has a far narrower reach, applying adjacent state law only to "artificial islands" and "fixed structures"—not to vessels like the DEEPWATER HORIZON.[14]

---

[14] Sections 1333(a)(1) and 1333(a)(2)(A) differ in scope for a reason.  The broad exertion of federal authority under § 1333(a)(1) necessarily encompasses all mineral exploration and production activities on the OCS, whether performed by "fixed platforms" or "vessels," in order to maximize federal control over vital national resources.  However, maritime law has historically governed claims arising on or in connection to a vessel, *see Sisson*, 497 U.S. at 360-61, and so § 1333(a)(2)(A)'s application of adjacent state law is only needed to fill the gap where claims arise on or in connection with a non-vessel—*i.e.*, an artificial island or fixed structure—such as a fixed platform.  Consequently, claims arising out of mineral exploration on the OCS may broadly arise under OCSLA, but such

Because the DEEPWATER HORIZON was a vessel,[15] not an artificial island or a fixed structure, "adjacent state law" under § 1333(a)(2)(A) does not apply in this case.[16] Even if "adjacent state law" did apply, the Fifth Circuit has established that "where OCSLA and general maritime law both could apply, the case is to be governed by maritime law." *Tennessee Gas Pipeline v. Houston Cas. Ins. Co.,* 87 F.3d 150, 154 (5th Cir. 1996). Accordingly, maritime law applies to Plaintiffs' claims, not "adjacent state law."

### 3. *Plaintiffs' claims, if any, arise under this Court's admiralty jurisdiction.*

Plaintiffs' claims, if any, arise under admiralty jurisdiction. Contrary to Plaintiffs' suggestion, Plaintiffs' claims cannot arise under both state law and admiralty law, as admiralty jurisdiction ousts state law.[17] *See E. River S.S. Corp. v. Transamerica Delaval*, 476 U.S. 858, 864 (1986) ("With admiralty jurisdiction comes the application of substantive admiralty law"). Plaintiffs expressly designated their claims in the Complaint as "admiralty or maritime claims

---

claims may be governed either by maritime law (as in this case) or, to the extent they fall within §1333(a)(2)(A)'s narrower "adjacent state law" provision (applicable to non-vessels), state law as a proxy for federal law.

[15] *See* Compl. ¶ 86 (describing the DEEPWATER HORIZON as an "ultra-deepwater dynamic positioned semi-submersible oil vessel"; *see also infra* n. 14.

[16] If section 1333(a)(2)(A) were to apply in this case, Louisiana law would be adopted as adjacent state law. In *Snyder Oil Corp. v. Samedan Oil Corp.*, the court considered four kinds of evidence to determine which state was considered "adjacent" to an OCSLA situs: (1) geographic proximity; (2) which coast federal agencies consider the subject platform to be "off of"; (3) prior court determinations; and (4) projected boundaries. 208 F.3d 521, 524 (5th Cir. 2000). Louisiana is closer to the situs of the DEEPWATER HORIZON incident than any other state, and the Minerals Management Service (MMS) (n/k/a Bureau of Ocean Energy Management, Regulation, and Enforcement (BOEMRE)) has described the DEEPWATER HORIZON incident as occurring "approximately 41 miles offshore Louisiana" on its official website linking a webpage describing the DEEPWATER HORIZON incident, http://www.restorethegulf.gov/release/2010/04/21/bp-offers-full-support-transocean-after-drilling-rig-fire, a copy of which is attached hereto as Exhibit 1. Similarly, in a notice entitled "*Information to Lessees and Operators on Federal Oil and Gas Leases on the Outer Continental Shelf, Gulf Mexico Region*," dated April 28, 2010, MMS notified lessees and operators in the Gulf of Mexico about its intention to initiate controlled burns to abate the oil spill and described the oil spill as being "located offshore Louisiana." *See* http://www.gomr.boemre.gov/homepg/regulate/regs/itls/100428.pdf, a copy of which is attached hereto as Exhibit 2. In addition, federal district courts have noted that other locations in the Mississippi Canyon are adjacent to the State of Louisiana and have applied Louisiana law as surrogate federal law. *See, e.g., Ronquille v. MMR Offshore Servs., Inc.*, 353 F. Supp. 2d 680, 682 n.4 (E.D. La. 2004); *Dennis v. Bud's Boat Rental, Inc.*, 987 F. Supp. 948, 949-954 (E.D. La. 1997). Therefore, even if OCSLA were to apply adjacent state law in this case, it likely would apply Louisiana law, and not the laws of any of the other States.

[17] If maritime law applies to Plaintiffs' claims (and it does), Plaintiffs lack any state law claims.

13

within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure" and "designate[d] this case as an admiralty case as provided in Rule 9(h)."  Compl. ¶ 84.  Further, Plaintiffs cite, as a jurisdictional basis for their claims, the Admiralty Extension Act, 46 U.S.C. § 30101.  Compl. ¶ 82.

The Admiralty Extension Act extends federal admiralty jurisdiction to cases involving damages caused by a vessel on navigable waters, "even though the injury or damage is done or consummated on land."  46 U.S.C. § 30101(a).  Nevertheless and in addition to maritime claims, Plaintiffs also assert state law claims against HESI, without invoking an exception to the general rule that "with admiralty jurisdiction comes the application of substantive admiralty law."  *See E. River S.S. Corp. v. Transamerica Delaval*, 476 U.S. 858, 864 (1986).  Plaintiffs offer no rationale or binding authority for any recovery under state law.  Therefore, Plaintiffs' state law claims should be dismissed as there is no basis on which state law, rather than maritime law, could apply in this matter.

**C.     Even If This Court Finds That State Law Can Apply in This Case, Plaintiffs' State Law Claims Should Be Dismissed.**

*1.     Plaintiffs' Florida law claim for medical monitoring should be dismissed.*

The only avenue by which state law could theoretically apply in this case is pursuant to OCSLA's "adjacent state law" provision.  *See supra* IV.B.2.  Further, that provision, if applied, would call for Louisiana law, not Florida law, to govern this case.  *See supra* n. 11.  Louisiana law does not provide for medical monitoring damages.  *See* La. Civ. Code Ann. art. 2315(B) (2010) ("Damages do not include costs for future medical treatment, services, surveillance, or procedures of any kind unless such treatment, services, surveillance, or procedures are directly related to a manifest physical or mental injury or disease.").  Accordingly, this Court should dismiss Plaintiffs' asserted Florida medical monitoring claim.

14

Moreover, Plaintiffs' request for relief under this cause of action greatly exceeds the relief available as a result of it under Florida law.  In addition to a demand that Defendants "create, fund and support a medical monitoring program[,]" Plaintiffs further demand "that Defendants be ordered to provide continued environmental, water supply, food supply, and air monitoring for Plaintiffs in Florida."  Compl. ¶¶ 300-01.  Such relief would constitute a substantial expansion of Florida's medical monitoring remedy, which allows a plaintiff to "recover only the quantifiable costs of periodic medical examinations necessary to detect the onset of physical harm[.]"  *Petito v. A.M. Robins Co.,* 750 So. 2d 103, 106 (Fla. Dist. Ct. App. 2000); *see also Wyeth, Inc. v. Gottlieb,* 930 So. 2d 635, 640 (Fla. Dist. Ct. App. 2006) (noting that Florida's medical monitoring claim limit[s] defendants' liability" by requiring plaintiffs to "recover [medical monitoring] costs through a court supervised and administered trust fund instead of through lump sum damage award because a trust fund compensates the plaintiff only for the monitoring costs actually incurred") (citations omitted).  Florida law does not recognize the relief Plaintiffs seek.  Thus, Plaintiffs' purported cause of action for medical monitoring should also be dismissed.

### 2.   *Plaintiffs' state law*[18] *negligence* **per se** *claim should likewise be dismissed.*

Plaintiffs assert a negligence *per se* claim against HESI, citing, as a basis for this claim, alleged violations of "Section 311 of the Clean Water Act, 40 C.F.R. § 300 App. E, 30 C.F.R. Part 254 and the Oil Pollution Act, 33 U.S.C. § 2717(b) as bases for this cause of action.  Compl. ¶ 259.  Plaintiffs vaguely allege that "[o]ne or more of Defendants violated these statutory and/or regulatory standards."  *Id.* ¶ 260.

To the extent that this claim is brought pursuant to state law, it must be dismissed.  As discussed, OCSLA's adjacent state law provision offers the only means for applying state law in

---

[18] It is not clear whether Plaintiffs bring this negligence *per se* claim under federal maritime or state law.  In this section, HESI addresses the contingency that it is a state law claim.

this case, and that provision, if applicable, would call for the application of Louisiana law.  *See supra* n. 11.   However, "Louisiana law has no negligence per se doctrine."  *BellSouth Telecomms., Inc. v. Eustis Eng'g Co.,* 974 So. 2d 749, 752 (La. Ct. App. 2007) (citing *Galloway v. State ex rel. Dep't of Transp. & Dev.,* 654 So. 2d 1345, 1347 (La. 1995) (noting that "[t]he doctrine of negligence per se has been rejected in Louisiana").   Accordingly, to the extent that Plaintiffs assert a state law negligence *per se* claim, it must be dismissed, as the law of the only state which could theoretically apply to this case has affirmatively rejected the negligence *per se* doctrine.

Moreover, Plaintiffs fail to provide any authority supporting their negligence *per se* claim.  To prevail on negligence *per se* claim, a plaintiff must prove "th[e] violation of a statute which is intended to protect the class of persons to which the plaintiff belongs against the risk of the type of harm which has in fact occurred."  *Marshall v. Isthmian Lines, Inc.,* 334 F.2d 131, 134 (5th Cir. 1964).  In support of their negligence *per se* cause of action, Plaintiffs only identify "Section 311 of the Clean Water Act, 40 C.F.R. § 300 App. E, 30 C.F.R. Part 254 and the Oil Pollution Act, 33 U.S.C. § 2717(b)[.]"  Compl. ¶ 259.   These statutes do not establish HESI's negligence *per se*, and therefore this Court should dismiss Plaintiffs' claim.

First, Plaintiffs' reliance on OPA[19] as a basis for their negligence *per se* claim is misplaced.  OPA does not protect the class of persons to which the Plaintiffs belong against the risk of the type of harm Plaintiffs allege.  Plaintiffs bring claims for "personal injury and/or medical monitoring for exposure or other injury occurring after the explosion and fire of April 20, 2010."  PTO No. 25.  However, OPA does not provide recovery for such damages.  *See* 33

---

[19] Plaintiffs identify, apparently mistakenly, 33 U.S.C. § 2717(b), which is OPA's jurisdiction provision, as a basis for their negligence *per se* claim.

D 1662071 v1-24010/0002 PLEADINGS

U.S.C. § 2702(b).  Therefore, OPA cannot provide a basis for Plaintiffs' negligence *per se* claim against HESI.

Similarly, section 311 of the Clean Water Act provides no basis for a negligence *per se* claim against HESI because the Act does not give rise to a private right of action.  In fact, the Supreme Court has specificcally held that the Clean Water Act does not create a private right of action for damages.  *See Sea Clammers,* 453 U.S. at 14-15 (concluding that the Clean Water Act did not create a private cause of action for injured plaintiffs).  Moreover, the provision specifically cited by Plaintiffs, Section 311, provides only a list of civil penalties, not damages for civil liability.  Accordingly, any negligence *per se* claim based upon an alleged violation of the Clean Water Act must fail.

Finally, both regulations Plaintiffs cite, 40 C.F.R. Sec. 300 App. E and 30 C.F.R. Part 254, deal exclusively with the coordination and submission of oil spill response plans.  Plaintiffs' own allegations establish that HESI had no involvement in any oil spill response or clean-up activities.  *See* Compl. ¶¶ 102-147 (describing BP's response to the oil spill); *see also infra* IV.D.1.  As the Supreme Court and the Complaint itself make clear, these regulations cannot form the basis for negligence *per se* liability against HESI and Plaintiffs claim in that regard should be dismissed.

### 3. *Dismissal is proper as Plaintiffs cannot state a cognizable claim for battery*[20] *against HESI.*

In support of their cause of action for battery, Plaintiffs make several factual allegations, all of which arise from or relate to the VoO program and/or the spraying of chemical dispersants.  *See* Compl. ¶¶ 294-297 (alleging that "Defendants placed VoO Plaintiffs and Vessel Plaintiffs on vessels without adequate training, warning of risks, or safety equipment[;] Defendants

---

[20] Again, Plaintiffs do not specify whether this is a state law or a federal maritime law claim.  However, with respect to this claim, Plaintiffs fail to state a cause of action regardless of the source law.

D 1662071 v1-24010/0002 PLEADINGS

intentionally sprayed, and/or directed spraying, chemical dispersants in the immediate vicinity of VoO Plaintiffs or Vessel Plaintiffs").

The Complaint, however, lacks any allegation that HESI was in any way involved in or responsible for placing personnel on vessels, training them in support of the clean-up program, or the spraying of dispersants or clean-up efforts in general.  Rather, Plaintiffs merely allege that "*BP* directed the use of vessels to recover oil coming to the surface[;] [i]f *BP* deems that a vessel will come into contact with oil, it need only be staffed with one person who has completed a forty-hour occupational Safety and Health Administration ("OSHA") Hazardous Waste Operations and Emergency Response awareness training class."  Compl. ¶¶ 102, 120 (emphasis added).

Further, Plaintiffs have not alleged that HESI had any involvement in or responsibility for spraying dispersants as part of the clean-up effort.  Instead, Plaintiffs only allege that "*BP* coordinates and directs aircraft . . . to spray chemical dispersants to oil on the surface of the Gulf[;] *BP* began subsea and aerial application of chemical dispersants manufactured by Defendant Nalco to the resulting oil slicks and sheens on the surface of the Gulf[;] *BP's* use of chemical dispersants skyrocketed:  on May 22, 2010, *BP* used 45,000 gallons and on May 23, 2010, it used 70,000 gallons[;] *BP* has sought more than 40 exemption requests to use chemical dispersants on the surface of the Gulf of Mexico[;] *BP* and Clean-Up Defendants[21] have covered approximately 291 square miles of the Gulf with dispersant."  Compl. ¶¶ 122, 125, 132, 134-35 (emphasis added).

Plaintiffs' battery cause of action is based on the direction of vessels in support of the clean-up program and the spraying of dispersants.  The absence of any allegation that HESI was

---

[21] The "Clean-Up Defendants" do not include HESI.  Compl. ¶¶ 62-73.

D 1662071 v1-24010/0002 PLEADINGS

involved in either BP's clean-up program or the placement of chemical dispersants is fatal to Plaintiffs' battery cause of action against HESI. Therefore, based on the plain language of the Complaint, this Court should dismiss Plaintiffs' battery cause of action against HESI, regardless of whether it is construed as a state law or federal maritime law claim.

**D.     Plaintiffs' Maritime Law Claims Should Also Be Dismissed.**

   *1.     Plaintiffs cannot establish a claim for maritime negligence, gross negligence or nuisance.*

As this Court's Pre-Trial Order No. 11 makes clear, the Bundle B3 Master Complaint is to "include all claims related to post-explosion clean-up efforts[.]" PTO No. 11 III.B. Plaintiffs' allegations, therefore, focus on efforts to respond to the oil spill. Indeed, the Complaint defines the Plaintiffs by reference to their alleged participation in the clean-up program. *See id.* ¶ 21(a)-(d) (defining the "VoO Plaintiffs," "Decontamination Plaintiffs," and "Vessel Plaintiffs" as persons "who were exposed to harmful chemicals, odors and emissions *during post-explosion clean-up activities*" and "Onshore Plaintiffs" as personnel "who were *involved in clean-up activities* along shorelines and intercoastal and intertidal zones") (emphasis added).

However, the Complaint is void of any allegation that HESI was in any way responsible for or involved in any clean-up activities. Rather, Plaintiffs allege that "[i]n the wake of the disaster, *BP* began implementing a program to attempt to prevent the gushing oil from reaching the shores of the Gulf States." *Id.* ¶ 4 (emphasis added). Further, as part of the VoO program, "*BP* directed the use of vessels to recover oil coming to the surface of the Gulf of Mexico; the use of vessels to skim oil from the surface of the water; the use of vessels to conduct *in situ* burning of oil that reached the surface of the water; and the use of Vessels of Opportunity." *Id.* ¶ 103 (emphasis added). Plaintiffs also allege that *BP* hired "Onshore Plaintiffs" "to clean up beaches, marshes, wetlands and other onshore areas[.]" *Id.* ¶ 123 (emphasis added). Further,

Plaintiffs define the "Clean-Up Defendants as entities that "participated in the post-explosion Oil Spill remediation and response efforts."  *Id.* ¶¶ 62-73.  HESI is not named as one of the "Clean-Up Defendants" in the Complaint and is not mentioned at all with regard to these allegations.  *Id.*

Plaintiffs' allegations also clarify that *BP* directed the spraying of chemical dispersants by Clean-Up Defendants, Compl. ¶ 122, and that *BP* and the Clean-Up Defendants "engaged Decontamination Plaintiffs to decontaminate vessels that had come into contact with oil and/or chemical dispersants and/or other hazardous chemicals used resulting (*sic*) from the Oil Spill." *Id.* ¶ 124.  The Complaint lacks any allegation that HESI was involved in any way with the spraying of chemical dispersants or with the decontamination of vessels involved in BP's clean-up efforts.

In fact, the Complaint establishes that HESI took no part in the VoO program and that HESI was not involved in any way in the spraying of chemical dispersants or onshore clean-up activities.  Thus Plaintiffs have failed to satisfy the *Iqbal* requirement that they plead a plausible basis for relief.  *See* 129 S. Ct. at 1949.  Accordingly, on the basis of Plaintiffs' own allegations, which do not even mention HESI, this Court should dismiss Plaintiffs' general maritime claims against HESI to the extent they are based on harms that allegedly arose in conjunction with clean-up activities or with the application of chemical dispersants.

> **2.     *Plaintiffs fail to plead the requisite causal connection between any alleged conduct by HESI and their alleged damages.***

In support of a negligence claim under general maritime law, "the plaintiff must demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by [the] plaintiff, and a causal connection between the defendant's conduct and the plaintiff's injury."  *In re Great Lakes Dredge & Dock Co.,* 624 F.3d 201, 211 (5th Cir. 2010).  "Under general maritime law, a party's negligence is actionable only if it is a legal cause of the

plaintiff's injuries." *Donaghey v. Ocean Drilling & Exploration Co.,* 974 F.2d 646, 649 (5th Cir. 1992). "Legal cause is something more than but for causation, and the negligence must be a substantial factor in the injury." *Thomas v. Express Boat Co.,* 759 F.2d 444, 448 (5th Cir. 1985). Accordingly, Plaintiffs are required to allege facts that support a conclusion that any alleged act or omission of HESI was more than a mere "but for" cause of their damages.

Moreover, an intervening cause can render an initial event in the causal chain so remote as to remove liability for that initial alleged tortfeasor. *See Dow Chemical Co. v. Barge Um-23b,* 287 F. Supp. 661, 665 (E.D. La. 1968) (West, C.J.). In *Dow*, several barges broke away from the fleeting area of defendant Cargo Carriers, Inc. ("Cargo Carriers"). 287 F. Supp. at 663. Defendant Cargo Carriers engaged the defendant tug boat owner to capture the breakaway barges. *Id.* The tug boat defendant captured several of the breakaway barges and secured them before leaving to bring the other captured barges upstream to defendant Cargo Carriers' fleeting area. *Id.* One of the barges that had been secured by the tug boat defendant later broke loose again and struck a mooring dolphin owned by the plaintiff. *Id.* This Court determined that "the negligence of the crew of the [tug boat] was the efficient intervening cause of the barge's collision with the [plaintiff's] dolphin and the damages resulting therefrom." *Id.* at 665. Moreover, this Court concluded that "[a]ny negligence of Cargo Carriers with respect to the initial breakaway of the [barges] was rendered remote insofar as the damage to [the plaintiff's] dolphin is concerned by the efficient intervening negligence of the crew of the [tug boat]." *Id.* Defendant Cargo Carriers was determined to have no liability for damages to the plaintiff's dolphin. *Id.*

Likewise, Plaintiffs' factual allegations demonstrate that any alleged act or omission by HESI is so removed from Plaintiffs' alleged damages that HESI cannot be liable for them.

D  1662071 v1-24010/0002 PLEADINGS

Plaintiffs allege that HESI was negligent in its provision of cementing services on the DEEPWATER HORIZON.  B1 Master Compl. ¶¶ 333-354.  However, the B1 Master Complaint asserts numerous events that constitute intervening causes of Plaintiffs' alleged injuries.  These events include (but are not limited to): (1) the decision to forego the cement bond log test, B1 Master Compl. ¶¶ 355-361; (2) the decision to forego deployment of the casing hanger lockdown sleeve, B1 Master Compl. ¶¶ 362-364; (3) the misinterpretation of the negative pressure test, B1 Master Compl. ¶¶ 376-77; (4) failures of safety equipment on the vessel, B1 Master Compl., ¶¶ 411-414; (5) the failure of the Blowout Preventer, B1 Master Compl. ¶¶ 415-449; and (6) maintenance problems on board the DEEPWATER HORIZON, B1 Master Compl. ¶¶ 450-460.

Thus, Plaintiffs' own allegations demonstrate that any act or omission of HESI was remote from the damages sought in the Complaint.  Therefore, Plaintiffs have failed to allege the requisite causal connection in support of their maritime negligence claims.

### 3.   *Plaintiffs' maritime law public nuisance claim must be dismissed.*

To the extent that Plaintiffs' public nuisance claim is brought pursuant to federal maritime law, it too should be dismissed because, as this Court has acknowledged, maritime law does not recognize such a cause of action.  *See Sekco Energy v. M/V Margaret Chouest,* 820 F. Supp. 1008, 1014 (E.D. La. 1993) (Livaudais, Jr., J.) (declining to create such a cause of action after "search[ing] in vain for case law which recognizes a federal cause of action for public nuisance").  Moreover, the Supreme Court has concluded that "the federal common law of nuisance in the area of water pollution is entirely pre-empted by the more comprehensive scope of the [Federal Water Pollution Control Act ("Clean Water Act"), 33 U.S.C. §§ 1251-1376]." *Nat'l Sea Clammers Ass'n v. City of New York,* 453 U.S. 1, 22 (1981).  The First Circuit subsequently held that the *Sea Clammers* decision applies to "all federal *judge-made* law of

22

nuisance whether maritime or general federal law").  *Conner v. Aerovox, Inc.,* 730 F.2d 835, 842 (1st Cir. 1984) (emphasis in original).   Accordingly, Plaintiffs' attempted claim for public nuisance must be dismissed, as the cause of action does not exist under federal maritime law.

Further, Plaintiffs appear to seek recovery of economic damages under this claim.  *See* Compl. ¶¶ 281-83 ("BP's oil disaster has significantly interfered with the public's right to use and enjoy the Gulf of Mexico[;] [p]rior to the *Deepwater Horizon* disaster, Plaintiffs enjoyed the use of the Gulf of Mexico for fishing, boating, and other economic and recreational pursuits[;]" and "[s]ince the disaster, Plaintiffs have been unable to fish or boat, and many have lost their livelihoods").  To the extent that Plaintiffs seek economic damages, their sole remedy is afforded by OPA.  *See Gabarick v. Laurin Mar. (Am.) Inc.,* 623 F. Supp. 2d 741, 750-51 (E.D. La. 2009) (holding that "all [general maritime law] claims that are recoverable under OPA, specifically those covered damages enumerated in 33 U.S.C. § 2702, are preempted by OPA"); *see also* HESI's Memorandum in Support of Its Motion to Dismiss the Master Complaint for Economic Losses (B1 Bundle) ("HESI B1 Memo") at IV.A.4.

Moreover, even if this Court determines that Plaintiffs have stated a cognizable claim under the general maritime law, dismissal remains proper.  Such claims, even under general maritime law, are subject to dismissal pursuant to the economic loss rule to the extent Plaintiffs seek economic damages in the absence of physical injury to a proprietary interest.  *See Louisiana ex rel. Guste v. M/V TESTBANK,* 752 F.2d 1019, (5th Cir. 1985) (holding that "plaintiffs may not recover for pure economic losses under a public nuisance theory in maritime tort").  *See* HESI B1 Memo at IV.B.

**E.      Plaintiffs Cannot, as a Matter of Law, Recover Punitive Damages from HESI.**

>    *1.      A request for punitive damages is not a separate cause of action.*

In addition to the other damage claims discussed *supra*, Plaintiffs assert a separate count in the Complaint, seeking recovery of punitive damages.   Compl. ¶¶ 328-353.   However, punitive damages are not a separate cause of action.  *Sulzer Carbomedics v. Or. Cardio-Devices, Inc.,* 257 F.3d 449, 461 (5th Cir. 2001); *see also Byrne v. Nezhat,* 261 F.3d 1075, 1087 (11th Cir. 2001) (noting that plaintiff's claim for punitive damages was not a separate cause of action). Instead, they "must relate to some separate cause of action which permits recovery of punitive damages."  *S. Port Marine v. Gulf Oil Ltd. P'ship,* 234 F.3d 58, 64 (1st Cir. 2000).   Thus, Plaintiffs' attempted independent claim for punitive damages must be dismissed.

>    *2.      Jones Act Plaintiffs cannot recover punitive damages under a general maritime law claim.*

Plaintiffs cannot recover punitive damages on the basis of their maritime law gross negligence claim.  Jones Act Plaintiffs cannot recover punitive damages under general maritime law because "the Jones Act limits a seaman's recovery for injury to pecuniary losses and precludes any recovery for nonpecuniary losses."  *Murray v. Anthony J. Bertucci Constr. Co.,* 958 F.2d 127, 131 (5th Cir. 1992).   "[P]unitive damages are non-pecuniary."  *Neal v. Barisich, Inc.,* 707 F. Supp. 862, 873 (E.D. La. 1992).

The court in *Murray* relied on the Supreme Court's decision in *Miles v. Apex Marine Corp.,* 498 U.S. 19 (1990), in which the Court held that a deceased seaman's mother could not recover loss of society damages in a general maritime law action, such as this one, for her son's wrongful death.  In *Miles,* the Supreme Court noted that both the Jones Act and the Death on the High Seas Act preclude the recovery of non-pecuniary damages such as loss of society.  498 U.S. at 31-32.  Reasoning that "[i]t would be inconsistent with [the Court's] place in the constitutional

scheme were [the Court] to sanction more expansive remedies in a judicially created cause of action in which liability is without fault than Congress has allowed in cases of death resulting from negligence[,]" the Court held that "there is no loss of society in a general maritime action for the wrongful death of a Jones Act seaman."  498 U.S. at 32-33.  Thus, according to Supreme Court precedent, this Court must dismiss claims for non-pecuniary damages, including punitive damages, asserted in the Complaint by any Jones Act seamen.

> **3.      This Court's precedent demonstrates that non-seamen Plaintiffs cannot recover punitive damages under a general maritime law claim.**

Non-seaman Plaintiffs are similarly barred from recovering punitive damages under this Court's established precedent.  In *Hunter v. Seabulk Offshore, Ltd.,* this Court recognized that "the trend within the lower courts of this Circuit is to deny nonpecuniary recovery to nonseaman plaintiffs for personal injuries under the general maritime law."  993 F. Supp. 973, 975 (E.D. La. 1998) (Clement, J.) (dismissing the nonseaman plaintiffs' claim for punitive damages based on the plaintiffs' maritime claim for personal injuries); *see also In re Amtrack "Sunset Limited" Train Crash in Bayou Canot v. Warrior & Gulf Navigation Co.,* 121 F.3d 1421, 1429 (11th Cir. 1997) (holding that the non-seaman personal injury plaintiffs were not entitled to pursue their assertion of punitive damages under general maritime law).  Accordingly, this Court should dismiss the non-seaman Plaintiffs' personal injury claim for punitive damages.

**F.      Plaintiffs' claims for property damage, if any, must be dismissed.**

In support of their gross negligence claim, Plaintiffs allege that they have "suffered physical injuries *and/or property damage.*"  Compl. ¶ 256 (emphasis added).  As HESI demonstrated in Motion to Dismiss the B1 claims, OPA displaces maritime claims for, among other things, property damage.  *See* HESI B1 Memo at IV.A.4.

Further, to the extent that Plaintiffs seek to recover punitive damages on the basis of alleged property damage, such claims also fail as a matter of law. OPA, which provides Plaintiffs' exclusive remedy for property damages resulting from the oil spill,[22] does not permit the recovery of punitive damages. *S. Port Marine*, 234 F.3d at 65-66. The statute's comprehensive list of recoverable damages is exclusive, as "Congress intended the OPA to be the sole federal law applicable in this area of maritime pollution." *Id.* at 65. Thus, Plaintiffs cannot recover punitive damages as a matter of law. *See Clausen v. M/V New Carissa*, 171 F. Supp. 2d. 1127, 1133 (D. Or. 2001) (holding that OPA precludes recovery of punitive damages under any general maritime law theory for which OPA could provide relief). Plaintiffs' demand for the recovery of punitive damages, therefore, must be dismissed.

## VI.    CONCLUSION

For the reasons set forth above, and as discussed in HESI's Motion to Dismiss the B1 Master Complaint, subject matter jurisdiction has yet to attach for Plaintiffs' asserted state law claims and, separately, Plaintiffs have failed to plead viable claims against HESI as a matter of law. Pursuant to Rule 12(b)(1) and Rule 12(b)(6), the Court, therefore, should dismiss Plaintiffs' claims against HESI in their entirety.

Dated:  May 20, 2011

---

[22] *See* HESI's B1 Memo at IV.A.4.

D  1662071 v1-24010/0002 PLEADINGS

Respectfully Submitted,

GODWIN RONQUILLO PC

By:   /s/  Donald E. Godwin, T.A.
Donald E. Godwin, T.A.
DGodwin@GodwinRonquillo.com
Bruce W. Bowman, Jr.
BBowman@GodwinRonquillo.com
Jenny L. Martinez
JMartinez@GodwinRonquillo.com
Floyd R. Hartley, Jr.
FHartley@GodwinRonquillo.com
Gavin Hill
GHill@GodwinRonquillo.com
1201 Elm Street, Suite 1700
Dallas, Texas 75270-2041
Telephone: 214.939.4400
Facsimile: 214.760.7332

and

R. Alan York
State Bar No. 22167500
AYork@GodwinRonquillo.com
Jerry C. von Sternberg
State Bar No. 20618150
JVonSternberg@GodwinRonquillo.com
Misty Hataway-Coné
State Bar No. 24032277
MCone@GodwinRonquillo.com

1331 Lamar, Suite 1665
Houston, Texas 77010
Telephone:  713.595.8300
Facsimile:  713.425.7594

ATTORNEYS FOR DEFENDANT
HALLIBURTON ENERGY SERVICES, INC.

D  1662071 v1-24010/0002 PLEADINGS

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing Motion to Dismiss has been served on all Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12 on this 20th day of May, 2011.

   /s/  Donald E. Godwin     
Donald E. Godwin

D  1662071 v1-24010/0002 PLEADINGS