IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL by the OIL RIG "*DEEPWATER HORIZON*" in the GULF OF MEXICO, on April 20, 2010 | MDL NO. 2179 <br><br> SECTION: J |
| **THIS DOCUMENT RELATES TO:** 2:10-CV-02771 | JUDGE BARBIER <br><br> MAGISTRATE JUDGE SHUSHAN |

### THIRD PARTY DEFENDANT DRIL-QUIP, INC.'S CROSS-CLAIMS

Following the April 20, 2010 blowout and explosion aboard the MODU Deepwater Horizon, numerous plaintiffs filed individual and class action lawsuits against various defendants in state and federal courts throughout the country. Many of those actions, which include claims under maritime and state law for damages that allegedly arose out of the explosion and subsequent oil spill, are before this Court for pretrial proceedings.

Triton Asset Leasing GmbH, Transocean Holdings, LLC and Transocean Offshore Deepwater Drilling, Inc. (the "Transocean Entities") tendered subsets of the claims to Dril-Quip, Inc. ("Dril-Quip") and others under Federal Rule of Civil Procedure 14(c) in Civil Action No. 2771 (the "Rule 14(c) Tender") and filed related cross-claims against various third-party defendants, including Dril-Quip. After the Transocean Entities tendered the claims to Halliburton Energy Services, Inc. ("HESI") and Cameron International Corporation f/k/a Cooper-Cameron Corporation ("Cameron"), HESI and Cameron filed their own cross-claims against Dril-Quip, Inc. and numerous other third-party defendants.

Dril-Quip, has moved to dismiss, or will move to dismiss, every complaint asserting claims against it, including the Rule 14(c) Tender, the Transocean Entities' cross-claim, HESI's cross-claim and Cameron's cross-claim, on the ground that no claim upon which relief may be

granted has been stated against Dril-Quip.  Because the motions to dismiss have not yet been heard, and in order to comply with this court's orders, however, Dril-Quip respectfully files this instrument and requests that the Court regard its submission and content as subject to and not inconsistent with those motions.

Pursuant to Federal Rules of Civil Procedure 13(g) and 14(c), this Court's Pretrial Order No. 1, and this Court's March 24, 2011 Stipulated Order Governing Deadlines In Connection With the Third-Party Complaint, therefore, Dril-Quip states as follows for its cross-claims against Cross-Claim Defendants BP Exploration & Production, Inc. ("BP Exploration"), BP America Production Company ("BP America"), BP p.l.c. (collectively "BP"), HESI,  M-I, LLC ("M-I"), Cameron, Anadarko Petroleum Corporation Co. ("Anadarko"), Anadarko E&P Company LP ("Anadarko E&P"), MOEX Offshore 2007 LLC ("Moex Offshore"), MOEX USA Corporation ("Moex USA"), Mitsui Oil Exploration Co., Ltd. ("Moeco"), Weatherford U.S. L.P. ("Weatherford") and Weatherford International, Inc. ("Weatherford International"):

## **PARTIES**

1.	Dril-Quip is a Delaware corporation with its principal place of business in Houston, Texas.  Dril-Quip has been served with the Rule 14(c) Tender, the Transocean Entities' cross-claim, HESI's cross-claim and Cameron's cross-claim, and various other summonses and complaints related to the Deepwater Horizon explosion and the resulting oil spill.  Dril-Quip denies any negligence or fault in connection with the explosion or the oil spill.  It, however, has statutory and/or common law rights to contribution, in whole or in part, from Cross-Claim Defendants for any liability Dril-Quip may face as a result of the events alleged in the Rule 14(c) Tender or any other complaint filed in connection with the explosion or the oil spill, to which Dril-Quip has been made a party or joined in issue.

2.   Upon information and belief, Cross-Claim Defendant BP Exploration is a Delaware Corporation with its principal place of business in Warrenville, Illinois.  This Court has personal jurisdiction over BP Exploration because it is registered to do business in Louisiana, does business in Louisiana and has a registered agent in Louisiana.  Various parties have served summonses and complaints on BP Exploration, and the Transocean Entities made BP Exploration a party to the limitation proceedings when they filed the Rule 14(c) Tender.

3.   Upon information and belief, Cross-Claim Defendant BP America is a Delaware Corporation with its principal place of business in Houston, Texas.  This Court has personal jurisdiction over BP America because it is registered to do business in Louisiana, does business in Louisiana and has a registered agent in Louisiana.  Various parties have served summonses and complaints on BP America, and the Transocean Entities made BP America a party to the limitation proceedings when they filed the Rule 14(c) Tender.

4.   Upon information and belief, Cross-Claim Defendant BP p.l.c. is a British Public Limited Company with its corporate headquarters in London, England.  The Plaintiffs/Claimants have alleged that this Court has personal jurisdiction over BP p.l.c. and that it is the corporate parent of BP Exploration and BP America.  Various parties have served summonses and complaints on BP p.l.c., and the Transocean Entities made BP p.l.c. a party to the limitation proceedings when they filed the Rule 14(c) Tender.

5.   Upon information and belief, Cross-Claim Defendant HESI is a Delaware Corporation with its principal place of business in Houston, Texas.  This Court has personal jurisdiction over HESI because it is registered to do business in Louisiana, does business in Louisiana and has a registered agent in Louisiana. Various parties have served summonses and

complaints on HESI, and the Transocean Entities made HESI a party to the limitation proceedings when they filed the Rule 14(c) Tender.

6. Upon information and belief, Cross-Claim Defendant M-I is a Delaware Limited Liability Company with its principal place of business in Houston, Texas. This Court has personal jurisdiction over M-I, also known as M-I Swaco, because it is registered to do business in Louisiana, does business in Louisiana and has a registered agent in Louisiana. Various parties have served summonses and complaints on M-I, and the Transocean Entities made M-I a party to the limitation proceedings when they filed the Rule 14(c) Tender.

7. Upon information and belief, Cross-Claim Defendant Cameron is a Delaware Corporation with its principal place of business in Houston, Texas. This Court has personal jurisdiction over Cameron because it is registered to do business in Louisiana, does business in Louisiana and has a registered agent in Louisiana. Various parties have served summonses and complaints on Cameron, and the Transocean Entities made Cameron a party to the limitation proceedings when they filed the Rule 14(c) Tender.

8. Upon information and belief, Cross-Claim Defendant Anadarko is a Delaware Corporation with its principal place of business in the Woodlands, Texas. This Court has personal jurisdiction over Anadarko because it is registered to do business in Louisiana, does business in Louisiana and has a registered agent in Louisiana. Various parties have served summonses and complaints on Anadarko, and the Transocean Entities made Anadarko a party to the limitation proceedings when they filed the Rule 14(c) Tender.

9. Upon information and belief, Cross-Claim Defendant Anadarko E&P is a Delaware Limited Partnership with its principal place of business in the Woodlands, Texas. This Court has personal jurisdiction over Anadarko E&P because it is registered to do business in

Louisiana, does business in Louisiana and has a registered agent in Louisiana. Various parties have served summonses and complaints on Anadarko E&P, and the Transocean Entities made Anadarko E&P a party to the limitation proceedings when they filed the Rule 14(c) Tender.

10. Upon information and belief, Cross-Claim Defendant Moex Offshore is a Delaware Corporation with its principal place of business in Houston, Texas. This Court has personal jurisdiction over Moex Offshore because it is registered to do business in Louisiana, does business in Louisiana and has a registered agent in Louisiana. Various parties have served summonses and complaints on Moex Offshore, and the Transocean Entities made Moex Offshore a party to the limitation proceedings when they filed the Rule 14(c) Tender.

11. Upon information and belief, Cross-Claim Defendant Moex USA is a Delaware Corporation with its principal place of business in Houston, Texas. The Plaintiffs/Claimants have alleged that this Court has personal jurisdiction over Moex USA and that it is a corporate parent of Moex Offshore. Various parties have served summonses and complaints on Moex USA, and the Transocean Entities made Moex USA a party to the limitation proceedings when they filed the Rule 14(c) Tender.

12. Upon information and belief, Cross-Claim Defendant Moeco is a Japanese Corporation with its principal place of business in Tokyo, Japan. The Plaintiffs/Claimants have alleged that this Court has personal jurisdiction over Moeco and that it is a corporate parent of Moex Offshore and Moex USA. Various parties have served summonses and complaints on Moeco, and the Transocean Entities made Moeco a party to the limitation proceedings when they filed the Rule 14(c) Tender.

13. Upon information and belief, Cross-Claim Defendant Weatherford is a Louisiana Limited Partnership and maintains its principal place of business in Houston, Texas. This Court

has personal jurisdiction over Weatherford because it is registered to do business in Louisiana, does business in Louisiana and has a registered agent in Louisiana. Various parties have served summonses and complaints on Weatherford, and the Transocean Entities made Weatherford a party to the limitation proceedings when they filed the Rule 14(c) Tender.

14. Upon information and belief, Cross-Claim Defendant Weatherford International is a Delaware Corporation and maintains its principal place of business in Houston, Texas.  This Court has personal jurisdiction over Weatherford International because it is registered to do business in Louisiana, does business in Louisiana and has a registered agent in Louisiana. Various parties have served summonses and complaints on Weatherford International, and the Transocean Entities made Weatherford International a party to the limitation proceedings when they filed the Rule 14(c) Tender.

## JURISDICTION AND VENUE

15. Jurisdiction over Dril-Quip's cross-claims is proper pursuant to the rules governing cross-claims against co-parties.  This Court also has supplemental and/or ancillary jurisdiction over these cross-claims because the Court already has jurisdiction over the Rule 14(c) Tender and related complaints pursuant to 28 U.S.C. § 1333 (admiralty jurisdiction), 43 U.S.C. § 1349(b) (the Outer Continental Shelf Lands Act (OCSLA)), and 28 U.S.C. § 1331 (because the claims in the Rule 14(c) Tender arise under OCSLA and the Oil Pollution Act of 1990, 33 U.S.C. § 2701 et seq.).

16. This Court also has original jurisdiction over Dril-Quip's cross-claim pursuant to 28 U.S.C. § 1333 (admiralty jurisdiction) and 43 U.S.C. § 1349(b) (OCLSA).

17. Venue for this cross-claim is proper pursuant to the rules governing cross-claims against co-parties and 28 U.S.C. § 1391(b)(2).

## FACTS

*Claims Against BP*

18. BP entity, BP Exploration was a lease holder and the designated operator in the lease granted by the former Minerals Management Service ("MMS"). BP Exploration was, thus, allowed to perform oil exploration, drilling and production related operations at Mississippi Canyon Block 252, a location which is also known as "Macondo" and which is where the spill originated. BP Exploration has also been designated a "Responsible Party" by the U.S. Coast Guard under the Oil Pollution Act of 1990, 33 U.S.C. § 2714.

19. However, BP Entity, BP America was the party to the Drilling Contract with Transocean Ltd. related to the development of the Macondo well by the Deepwater Horizon vessel.

20. The Plaintiffs/Claimants allege that BP breached its duty to exercise reasonable care to design, create, manage and control the well and the flow of hydrocarbons therefrom in a safe and prudent manner and to conduct its drilling operations with reasonable and ordinary care by:

    (a) choosing and implementing a long string well design, which had few barriers against a gas blowout, instead of a safer liner/tieback design which would have provided additional barriers to a gas blowout;

    (b) using pipe material that might collapse under high pressure;

    (c) using too few centralizers to ensure that the casing was centered in the wellbore;

    (d) failing to implement a full "bottoms-up" circulation of mud between the running of casing and the beginning of the cement job;

  (e) failing to require comprehensive lab testing to ensure the density of the cement;

  (f) misinterpreting negative pressure test data that indicated that the cement job was defective;

  (g) cancelling the cement bond log test;

  (h) using an abnormally large quantity of mixed and untested spacer fluid;

  (i) failing to hire and train drilling vessel workers and onshore employees qualified in risk assessment and management of complex systems like that found on the Deepwater Horizon; and

  (j) requiring simultaneous operations in an effort to expedite the project.

*Claims Against HESI*

21. HESI provided engineering services and materials, testing services and mixing and pumping services for the cement operations. It also maintained onshore engineering support for its operations. HESI was responsible for the provision of technical advice about the design, modeling, placement and testing of the cement that was used in the Macondo well, and, before and during the blowout, HESI was engaged in cementing operations to isolate the hydrocarbon reservoirs and seal the bottom of the well against the influx of hydrocarbons.

22. HESI division Sperry Drilling Services (formerly Sperry Sun Drilling Services) was responsible for mudlogging personnel and equipment on the Deepwater Horizon, including downhole drilling tools. Sperry mudlogging personnel were partially responsible for monitoring the well, including mud pit fluid levels, mud flow in and out of the well, mud gas levels and pressure levels.

23. The Plaintiffs/Claimants contend that HESI breached its duties to Plaintiffs/Claimants by failing to exercise reasonable care in conducting its cementing, testing and monitoring of the well when it:

    (a) failed to use a full "bottoms-up" circulation of mud between the running of the casing and the beginning of the cement job;

    (b) failed to require comprehensive lab testing to ensure the density of the cement;

    (c) misinterpreted negative pressure test data which indicated that the cement job was defective; and

    (d) cancelled, or acquiesced in the cancellation of, the cement bond log test.

*Claims Against M-I*

24. M-I provided mud products, including drilling fluids and spacers, engineering services and mud supervisory personnel to manage the use of the fluids at the well. M-I employees planned and supervised certain fluid-related activities at Macondo, including the displacement that was occurring at the time of the April 20, 2010 blowout.

25. The Plaintiffs/Claimants allege that M-I breached its duties to Plaintiffs/Claimants by failing to provide, control and monitor the mud and spacer solutions used on the Deepwater Horizon in a reasonably safe manner.

*Claims Against Cameron*

26. Cameron manufactured, designed, supplied, and/or installed the blowout preventer ("BOP") that served as the Deepwater Horizon's sub-sea emergency well-closure device.

27. As the designer of the BOP, the Plaintiffs/Claimants allege that Cameron owed and breached duties of ordinary and reasonable care to the Plaintiffs/Claimants in connection with the design, manufacture and supply of the BOP by:

  (a) failing to ensure and verify that the BOP it designed and manufactured was suitable for the types of drill pipe and casing assembly design which would be used during the Deepwater Horizon's drilling and exploration operations;

  (b) designing the BOP such that it was vulnerable to a single-point failure;

  (c) failing to install a backup activation system for the BOP; and

  (d) failing to provide adequate warnings, instructions and guidelines on the permissible uses, modifications and applications of the BOP appurtenant to the vessel.

28. The Plaintiffs/Claimants allege that these failures caused the BOP not to operate properly to prevent the blowout.

*Claims Against Anadarko and Anadarko E&P*

29. Anadarko was a party to the Macondo Prospect Offshore Deepwater Operating Agreement ("Operating Agreement") and held a 2.5% ownership interest in the lease of the Macondo Prospect site in the Mississippi Canyon Block 252 in the Gulf of Mexico.

30. Anadarko E&P was a party to the Operating Agreement and held a 22.5% ownership interest in the lease of the Macondo Prospect site in the Mississippi Canyon Block 252 in the Gulf of Mexico.

31. The Plaintiffs/Claimants allege that as a condition to acquiring their leasehold interest, BP required Anadarko and Anadarko E&P to execute BP's well plan and Authorizations

for Expenditure and that this put Anadarko and Anadarko E&P on notice of: (a) the location of the well; (b) the anticipated timeline for the operation; (c) the total depth and target zones; (d) the proposed drilling and completion plans, including the casing programs and directional details; (e) the details of all coring, logging and other evaluation operations conducted; and (f) information about the drilling rig to be used.  The Plaintiffs/Claimants further assert that the Operating Agreement also gave Anadarko and Anadarko E&P the right to suggest alternative well plans, to place their own personnel on drilling and well development teams and to receive information and data about operations on an ongoing basis.

32. The Plaintiffs/Claimants contend that these rights to information regarding the Macondo well put Anadarko and Anadarko E&P on actual or constructive notice of the conditions at the well site.  According to the Plaintiffs/Claimants, having been put on actual or constructive notice of those conditions and having negotiated for and obtained the right to be privy to health, safety and environment ("HSE") information, HSE inspections and to call HSE meetings, it was incumbent upon Anadarko and Anadarko E&P to perform the check and balance role that they had carved out for themselves.  The Plaintiffs/Claimants allege that the failure to exercise this role given the purportedly known history of specific problems at the wellsite constitutes negligence.

### *Claims Against Moex Offshore, Moex USA and Moeco*

33. Moex Offshore was a party to the Operating Agreement and held a 10% ownership interest in the lease of the Macondo Prospect site in the Mississippi Canyon Block 252 in the Gulf of Mexico.

34. The Plaintiffs/Claimants allege that as a condition to acquiring its leasehold interest, BP required Moex Offshore to execute BP's well plan and Authorizations for

Expenditure and that this put Moex Offshore on notice of: (a) the location of the well; (b) the anticipated timeline for the operation; (c) the total depth and target zones; (d) the proposed drilling and completion plans, including the casing programs and directional details; (e) the details of all coring, logging and other evaluation operations conducted; and (f) information about the drilling rig to be used.  The Plaintiffs/Claimants further assert that the Operating Agreement also gave Moex Offshore the right to suggest alternative well plans, to place its own personnel on drilling and well development teams and to receive information and data about operations on an ongoing basis.

35.    The Plaintiffs/Claimants contend that these rights to information regarding the Macondo well put Moex Offshore on actual or constructive notice of the conditions at the well site.  According to the Plaintiffs/Claimants, having been put on actual or constructive notice of those conditions and having negotiated for and obtained the right to be privy to HSE information, HSE inspections and to call HSE meetings, it was incumbent upon Moex Offshore to perform the check and balance role that it had carved out for itself.  The Plaintiffs/Claimants allege that the failure to exercise this role given the purportedly known history of specific problems at the wellsite was negligence.

36.    The Plaintiffs/Claimants purportedly named Moex USA as a party because it serves as part of the corporate construct through which Moeco owns, dominates, controls and benefits from the activities of Moex Offshore.

*Claims Against Weatherford*

37.    Weatherford and/or Weatherford International designed and manufactured, marketed, sold and/or distributed the casing components, such as the float collar, shoe and

centralizers used at Macondo and provided personnel and equipment for running the casing and casing components into the well bore.

38.     The Plaintiffs/Claimants allege that as the designer of the float collar, Weatherford owed and breached duties of ordinary and reasonable care to the Plaintiffs/Claimants by designing and manufacturing a float collar that failed to seal properly and which allowed hydrocarbon backflow into the casing, thereby causing the blowout and subsequent fire and oil spill.

## COUNT I
### (Cross-claim for Contribution Against Cross-Claim Defendants)

39.     Paragraphs 1 through 38 are incorporated by reference as if fully set forth herein.

40.     Dril-Quip denies that it is liable for any damages alleged against it as a result of the incident made the basis of this proceeding.

41.     The Plaintiffs/Claimants have alleged that their damages were caused, in whole or in part, by the conduct of Cross-Claim Defendants, as set forth above.  As such, the Cross-Claim Defendants are or may be liable to Dril-Quip for all or part of the claims asserted against Dril-Quip.

42.     To the extent that Dril-Quip is found liable for any part of the alleged damages, Dril-Quip has a right to contribution from other parties found liable, including Cross-Claim Defendants, to the extent of those parties' adjudicated proportion of liability.

## **PRAYER FOR RELIEF**

WHEREFORE, Dril-Quip requests a declaration that if Dril-Quip is found liable for any portion of damages alleged against it as a result of the incident made the bases of this proceeding, and Dril-Quip pays more than its adjudicated share of liability, Dril-Quip is entitled

to contribution from Cross-Claim Defendants to the extent of their adjudicated proportionate shares of liability.

Dated:  May 20, 2011

                                          Respectfully submitted,

                                          **WARE, JACKSON, LEE & CHAMBERS, LLP**

                                          BY: /s/ C. Dennis Barrow
                                                Don Jackson
                                                Texas Bar No. 10476000
                                                Fed ID No. 6915
                                                C. Dennis Barrow, Jr.
                                                Texas Bar No. 00796169
                                                Fed ID No. 20624
                                                America Tower
                                                2929 Allen Parkway, 42nd Floor
                                                Houston, TX 77019
                                                Phone :  (713) 659-6400
                                                Fax    :  (713) 659-6262

                                          *Attorneys for Defendant, Dril-Quip, Inc.*

**CERTIFICATE OF SERVICE**

      I certify that the above and foregoing document will be served on all counsel by electronically uploading the same to LexisNexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 20th day of May, 2011.

      /s/ C. Dennis Barrow, Jr.
      C. Dennis Barrow, Jr.