**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * * | MDL NO. 2179<br><br>SECTION J |
| This document relates to: | * * | Honorable CARL J. BARBIER |
| *All cases* | * * | Magistrate Judge SHUSHAN |

**BP'S OPPOSITION TO**
**TRANSOCEAN'S MOTION FOR A PROTECTIVE ORDER**

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

and

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

*Attorneys for BP Exploration & Production*
*Inc. and BP America Production Company*

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ...................................................................................................................1

BACKGROUND ...................................................................................................................2

    A.    Transocean Has Filed Three Complaints Against BP..............................................2

    B.    Transocean Has Conducted Extensive Discovery Against BP. ..............................4

    C.    BP's Document Requests To Transocean................................................................5

ARGUMENT ........................................................................................................................5

I.    TRANSOCEAN HAS WAIVED ANY RIGHTS TO ARBITRATE................................5

    A.    Transocean Has Invoked The Judicial Process Against BP.....................................6

        1.    Transocean Has Waived Any Arbitration Rights By Filing
            Multiple Complaints Against BP. .................................................................7

        2.    Transocean's Extensive Discovery Against BP Waives Any
            Arbitration Rights. ......................................................................................10

    B.    Transocean's Litigation Against BP Has Prejudiced BP In Multiple Ways..........13

    C.    Transocean's Arguments That It Has Not Waived Lack Any Merit. ....................16

II.    INDEPENDENTLY, UNDER THE MAGISTRATE JUDGE'S ORDER,
    TRANSOCEAN MUST ANSWER BP'S DISCOVERY REGARDLESS OF
    ANY ARBITRATION RIGHTS. ...................................................................................19

CONCLUSION...................................................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Brown-McKee, Inc. v. Fiatallis Constr. Mach., Inc.*,
　587 F. Supp. 38 (N.D. Tex. 1984) ................................................................ 7

*Bunge Edible Oil Corp. v. M/V Torm Rask*,
　756 F. Supp. 261 (E.D. La. 1991) ............................................................... 7

*Certain Underwriters at Lloyd's v. Bristol-Myers Squibb Co.*,
　51 F. Supp. 2d 756 (E.D. Tex. 1999) ......................................................... 10

*Conant v. Morgan's Foods, Inc.*,
　2011 WL 672584 (S.D. Ohio Feb. 15, 2011) ...................................... 15, 17

*De Sapio v. Kohlmeyer*,
　321 N.E.2d 770 (N.Y. 1974) ....................................................................... 7

*In re Mirant Corp.*
　613 F.3d 584 (5th Cir. 2010) ............................................................. passim

*Kenyon Int'l Emergency, Servs., Inc. v. Malcolm*,
　2010 WL 2303328 (S.D. Tex. June 7, 2010) ............................................. 6

*Leal v. Luxottica Retail N. Am., Inc.*,
　2011 WL 873348 (N.D. Tex. Mar. 10, 2011) ......................................... 6, 7

*MC Asset Recovery, LLC v. Castex Energy, Inc.*,
　2009 WL 900745 (N.D. Tex. Apr. 3, 2009) ........................................ 16, 17

*Miller Brewing Co. v. Fort Worth Distrib. Co.*,
　781 F.2d 494 (5th Cir. 1986) ................................................................... 10

*Nicholas v. KBR, Inc.*,
　565 F.3d 904 (5th Cir. 2009) ............................................................ passim

*Nino v. Jewelry Exch., Inc.*,
　609 F.3d 191 (3d Cir. 2010) ...................................................................... 17

*Nortuna Shipping Co. v. Isbrandtsen Co.*,
　231 F.2d 528 (2d Cir. 1956) ....................................................................... 7

*Petroleum Pipe Americas Corp. v. Jindal Saw, Ltd.*,
　575 F.3d 476 (5th Cir. 2009) ............................................................... 6, 13

i

## <u>TABLE OF AUTHORITIES (CONT'D)</u>

**Page(s)**

*Prudential-Bache Sec., Inc. v. Stevenson*,
706 F. Supp. 533 (S.D. Tex. 1989) ............................................................................. 7

*Republic Ins. Co. v. Paico Receivables, LLC*,
383 F.3d 341 (5th Cir. 2004).......................................................................... 10, 14

*Robinson v. Food Serv. of Belton, Inc.*,
415 F. Supp. 2d 1221 (D. Kan. 2005) .......................................................... 15, 17

*SATCOM Int'l Group PLC v. ORBCOMM Int'l Partners, L.P.*,
49 F. Supp. 2d 331 (S.D.N.Y. 1999) ................................................................ 9, 10

*Walker v. J.C. Bradford & Co.*,
938 F.2d 575 (5th Cir. 1991)................................................................................ 15

## INTRODUCTION

Transocean's Motion for a Protective Order should be denied for two reasons.  First, Transocean has waived any arbitration rights through its litigation in this Court against BP America Production Company ("BPAP") and BP Exploration & Production Inc. ("BPXP," and collectively with BPAP, "BP").  Second, regardless of Transocean's waiver, the Magistrate Judge has held that an arbitration agreement does not prevent parties from discovering evidence that is relevant to their defenses in pending litigation with third parties.

Transocean's motion for a protective order is based on the fundamentally mistaken premise that Transocean has arbitration rights against BP.  Under the law, a party waives its arbitration rights when it substantially invokes the judicial process to the detriment or prejudice of the other party.  Transocean's conduct easily satisfies this standard.

Transocean has invoked the judicial process by filing three separate complaints against BP, litigating against BP in this Court, and deposing over two dozen BP witnesses.  Transocean's litigation in this Court also has been to BP's detriment and prejudice.  Transocean itself acknowledges that "there is clear prejudice … in having to engage in and respond to discovery from parties subject to an arbitration agreement on claims subject to that same arbitration agreement."  (TO Mem. at 8)  Thus, by Transocean's own admission, its depositions of BP witnesses (which are ongoing) have caused "clear prejudice" to BP.  Moreover, BP has been prejudiced by having to expend considerable time and resources responding to Transocean's complaints and litigation against it, including filing a motion to dismiss and preparing a response to another complaint.

Finally, BP is prejudiced by Transocean's ongoing strategy of using litigation as a sword against BP while asserting potential arbitration rights as a shield.  Despite ample opportunity, Transocean has refused to file an arbitration demand against BP.  As the Fifth Circuit has held, a

"party cannot keep its right to demand arbitration in reserve indefinitely while it pursues a decision on the merits before the district court." *In re Mirant Corp.*, 613 F.3d 584, 591 (5th Cir. 2010).

Finally, independent of Transocean's waiver, on May 13, 2010, the Magistrate Judge ruled that Anadarko and MOEX could obtain discovery from BP, even though BPXP, Anadarko, and MOEX are all parties to an arbitration agreement. That same conclusion applies to BP's discovery against Transocean. Regardless of whether Transocean has any arbitration rights, under the Magistrate Judge's ruling, BP should be allowed to take discovery of Transocean to defend itself against claims made by the Plaintiffs and other parties.

Transocean's motion for a protective order has no basis and should be denied. Transocean should be required to respond to BP's document requests and any other discovery.[1]

## BACKGROUND

### A.     Transocean Has Filed Three Complaints Against BP.

Transocean has filed three separate complaints against BP. In each case, Transocean had the option not to file the complaint and to demand arbitration. Instead, at each point Transocean voluntarily chose to invoke this Court's judicial processes against BP, to BP's detriment.

---

[1]    Transocean seeks alternative relief to the effect that by responding to discovery Transocean will not have waived its arbitration rights. BP does not oppose the entry of a properly worded order that Transocean's response to BP's discovery is not itself evidence of waiver. Indeed, BP proposed to Transocean that the parties agree to such an order but Transocean did not respond to BP's proposal.

BP does object to Transocean's request for leave to serve document requests beyond the deadline of April 29, 2011. That deadline has passed, and Transocean had plenty of time beforehand (including after BP served document requests on Transocean on March 11, 2011) to seek leave to serve such discovery. Transocean also could have served an arbitration demand and filed a motion to compel arbitration months ago, before waiving any arbitration rights. Additionally, Transocean had the option to serve discovery requests on BP while stipulating that BP had no obligation to respond unless Transocean could not compel arbitration. Transocean's failure to do any of these things should not be excused, and it should be bound by the choices it has made.

Transocean filed its first complaint against BP on February 18, 2011 as part of Transocean's Rule 14(c) Third-Party Complaint filed in the Limitation Action.  (Dkt. No. 1320, TO Third-Party Compl.)   Transocean's third-party complaint, which brought BP into the Limitation Action by tendering BP to the Limitation claimants, "demand[s] judgment in the Plaintiffs/Claimants' favor against the tendered Third-Party Defendants [including BP] pursuant to Rule 14(c)(2)."  (TO Third-Party Compl. at 22)  No Court order or any other rule required Transocean to file a third-party complaint against BP.  Nor does the third-party complaint mention arbitration or attempt to preserve Transocean's arbitration rights against BP.

At the February 25, 2011 status conference, counsel for Transocean told the Court that, "[w]e believe that disputes involving our insurance coverage and the extent to which BP would be entitled to our insurance coverage would be a contractual dispute properly subject to arbitration."  (Ex. A, 2/25/11 Tr. at 23:17-20)  Despite this, on March 25, 2011, Transocean filed its second complaint against BP, a Complaint-in-Intervention in an insurance coverage dispute between Transocean's insurers and BP, Case Nos. 2:11-cv-00274 and 2:11-cv-00275.  (Dkt. No. 1755, TO Compl.-in-Interv.)  Transocean's complaint-in-intervention, which was filed against BPAP, BPXP and other BP entities, makes allegations about how to interpret the indemnity provisions in the Drilling Contract between Transocean Holdings LLC and BPAP.  (TO Compl.-in-Interv. at 1, 4-6)  Transocean also sought various declarations against BP, including that "BP assumed full responsibility in the Drilling Contract for any and all liabilities arising out of or in any way related to the release of oil from BP's well."  (*Id.* at 8)  These are the exact same indemnity issues that Transocean now claims are arbitrable.  (TO Mem. at 5)  Transocean's Complaint-in-Intervention against BP does not purport to reserve any arbitration rights.  On May

3, 2011 BP moved to dismiss this complaint, expending significant time and resources in so doing.

On April 20, 2011, Transocean filed its third complaint against BP in this MDL.  (Dkt. No. 2068, TO's Cross/Counter-Complaint)  This Cross/Counter-Complaint names BPAP, BPXP, and another BP entity as cross-defendants, and alleges various claims against BP.  Transocean's Counts 7 and 8 expressly allege that BP breached the Drilling Contract containing the arbitration provision.  (TO's Cross/Counter-Complaint at 41-51)  Counts 1 and 2 seek common law indemnity and contribution against BP, while Counts 5 and 6 seek contribution and subrogation under the Oil Pollution Act ("OPA") against BP.  As relief against BP, Transocean prays that this Court award it judgment against (i) "Cross-Defendants [including BP] on Counts, 1, 2, 5 and 6 of its Cross-Claims/Counter-Claims;" (ii) "BP America and BP Exploration on Count 7 of its Cross-Claims/Counter-Claims;" and (iii) "BP America and BP Exploration in the amount of $12,900,000.00 on Count 8 of its Cross-Claims/Counter-Claims."  Transocean's third complaint includes footnotes purporting to reserve its arbitration rights, but by this time Transocean had already filed two complaints and conducted substantial discovery against BP, foregoing any arbitral procedures.  Such reservations also are ineffective under the circumstances for the reasons discussed *infra* at Part I.C.  Significantly, Transocean did not file an arbitration demand against BP in lieu of this complaint, and indeed has not filed for arbitration as of this date.

**B.     Transocean Has Conducted Extensive Discovery Against BP.**

Transocean also has conducted substantial deposition discovery against BP.  Starting on January 19, 2011 and continuing to this date, 34 depositions of BP witnesses have been taken. Transocean has conducted discovery against BP by asking questions at every one of these depositions.  Transocean typically receives 1.25 hours to question BP witnesses, and often borrows time from other parties to conduct lengthier discovery of BP.  The parties have

4

scheduled 32 additional depositions of BP witnesses, and Transocean has not provided any indication that it does not intend to depose each of those BP witnesses as well.  Indeed, on May 19, 2011, Transocean wrote to Magistrate Judge Shushan requesting that another six BP witnesses be added to the priority deponent list for this case.  (Ex. B, 5/19/11 E-mail from K. Miller to M.J. Shushan)

Finally, Transocean has listed numerous BP witnesses on Transocean's deposition witness list that do not appear on the PSC's list in this litigation.  (Ex. C, 2/17/11 Master List of Priority Deponents, at 14)  In many instances, Transocean is the only party to list a BP witness for deposition, underscoring Transocean's use of the litigation process.  (*Id.*)

### C.     BP's Document Requests To Transocean.

On March 11, 2011, after Transocean had been conducting deposition discovery of BP for nearly two months, BP served document requests on Transocean.  This discovery is relevant to BP's defenses against claims made by Plaintiffs in the MDL, including BP's defense that Transocean is wholly or partly at fault for the *Deepwater Horizon* incident.

On April 11, 2011, Transocean refused to respond to a single one of BP's requests, objecting to this discovery on the basis of Transocean's alleged arbitration rights.  On April 29, 2011, BP served additional document requests on Transocean; Transocean has stated that it intends to object to these requests on the same basis.  (TO Mem. at 2)

## ARGUMENT

## I.     TRANSOCEAN HAS WAIVED ANY RIGHTS TO ARBITRATE.

Transocean's extensive litigation against BP waives any arbitration rights Transocean had.  While the Federal Arbitration Act ("FAA") embodies policies favoring arbitration, a party can waive arbitration rights through its conduct.  "Waiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other

party." *Mirant Corp.*, 613 F.3d at 588 ; *Petroleum Pipe Americas Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 479-80 (5th Cir. 2009).  "To invoke the judicial process, a party must, at the very least, engage in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration."  *Mirant*, 613 F.3d at 589 (internal quotations omitted).  "A party generally invokes the judicial process by initially pursuing litigation of claims then reversing course and attempting to arbitrate those claims." *Nicholas v. KBR, Inc.*, 565 F.3d 904, 907 (5th Cir. 2009); *see also Kenyon Int'l Emergency, Servs., Inc. v. Malcolm*, 2010 WL 2303328, at *4 (S.D. Tex. June 7, 2010).  The Fifth Circuit and district courts within it frequently find waiver where, as here, a party claiming the right to arbitrate files complaints, seeks a decision on the merits, or conducts substantial discovery against the counterparty to the arbitration agreement.  *E.g., Mirant*, 613 F.3d 584; *Nicholas*, 565 F.3d 904; *Leal v. Luxottica Retail N. Am., Inc.*, 2011 WL 873348 (N.D. Tex. Mar. 10, 2011).

Notably, Transocean's conduct vis-à-vis BP stands in stark contrast to BP's conduct vis-à-vis Anadarko and MOEX.  As the Court knows, BP moved (unsuccessfully) to prevent Anadarko and MOEX's discovery against BP because of the parties' arbitration clause and covenant not to resort to court remedies.  But in so doing, BP had not filed any complaints against Anadarko or MOEX; Transocean, on the other hand, has filed three complaints against BP.  BP also had not deposed any Anadarko or MOEX witnesses; Transocean has conducted deposition discovery of every BP witness and apparently intends to depose dozens more.  BP served a notice of dispute on Anadarko and MOEX to begin the dispute resolution procedure that culminates in arbitration; Transocean has not served an arbitration demand on BP.  These fundamental differences make clear that Transocean has waived any right to arbitrate against BP.

### A.    Transocean Has Invoked The Judicial Process Against BP.

### 1. Transocean Has Waived Any Arbitration Rights By Filing Multiple Complaints Against BP.

Filing a complaint is the paradigmatic way that a party invokes the judicial process. "Indeed, short of directly saying so in open court, it is difficult to see how a party could more clearly evince a desire to resolve a dispute through litigation rather than arbitration than by filing a lawsuit going to the merits of an otherwise arbitrable dispute." *Nicholas*, 565 F.3d at 908 (citation and internal modifications omitted); *see also id.* ("we have recognized that the decision to file suit typically indicates a 'disinclination' to arbitrate"); *Nortuna Shipping Co. v. Isbrandtsen Co.*, 231 F.2d 528, 529 (2d Cir. 1956) ("[I]nvoking or actively assenting to the jurisdiction of a court, being manifestly inconsistent with an assertion of the right to arbitrate the same dispute, constitutes a waiver."); *Leal*, 2011 WL 873348, at *1 (quoting and relying on *Nicholas* to hold that party filing complaint waived its arbitration rights); *Prudential-Bache Sec., Inc. v. Stevenson*, 706 F. Supp. 533, 535 (S.D. Tex. 1989); *Brown-McKee, Inc. v. Fiatallis Constr. Mach., Inc.*, 587 F. Supp. 38, 40 (N.D. Tex. 1984) (finding waiver where party seeking arbitration filed complaint to the prejudice of the opposing party); *De Sapio v. Kohlmeyer*, 321 N.E.2d 770, 772 (N.Y. 1974)  ("[T]he party who commences an action may generally be assumed to have waived any right it may have had to submit the issues to arbitration.").  This principle applies as well to cross-complaints and similar pleadings. *E.g., Bunge Edible Oil Corp. v. M/V Torm Rask*, 756 F. Supp. 261, 268 (E.D. La. 1991); *De Sapio*, 321 N.E.2d at 772. Transocean does not cite any cases where a party was aware of its arbitration rights, filed a complaint against the counterparty seeking relief on the merits, and a court held that it had not waived its arbitration rights.

That Transocean has filed not just one, but three separate complaints against BP, is undisputed.  Each one of these complaints invokes the judicial process against BP.  Each

complaint clearly evinces a desire by Transocean to use and take advantage of litigation procedures against BP.  And each seeks affirmative relief from this Court, including:

- "judgment in the Plaintiffs/Claimants' favor against the tendered Third-Party Defendants [including BP] pursuant to Rule 14(c)(2)."  (TO Third-Party Compl. at 22);

- a declaration that "BP assumed full responsibility in the Drilling Contract for any and all liabilities arising out of or in any way related to the release of oil from BP's well."  (TO Compl.-in-Interv. at 8); and

- "judgment against Cross-Defendants [including BP] on Counts 1, 2, 5 and 6 of its Cross-Claims/Counter-Claims; … judgment against BP America and BP Exploration on Count 7 of its Cross-Claims/Counter-Claims; … [and] judgment against BP America and BP Exploration in the amount of $12,9000,000 on Count 8 of its Cross-Claims/Counter-Claims." (TO Cross/Counter Claims at 54-55)

Moreover, each of Transocean's complaints against BP relates to putatively arbitrable issues.  The Drilling Contract's arbitration provision states that it applies to "[a]ny controversy or claims arising out of or relating to this Contract, or the breach thereof."  (Ex. D, Drilling Contract at 36)  Transocean's Complaint-in-Intervention makes various allegations about the meanings of the indemnities and related provisions of the Drilling Contract.  (TO Compl.-in-Interv. at 5-6)  Transocean also seeks a declaration that through the Drilling Contract BP assumed liability for the release of oil from the Macondo well, and that BP is not entitled to additional insured status under the Drilling Contract.  (*Id.* at 8)  Likewise, in its Cross/Counter Complaint, Transocean alleges breach of the Drilling Contract, which is directly covered by the arbitration provision.  (TO Cross/Counter Compl. at 41-51)  Transocean's other claims for contribution, subrogation, and common law indemnity also "relate to this Contract," as they concern Transocean's attempts to recover for damages incurred while it was performing work under the Drilling Contract.  (TO Cross/Counter Compl. at 33-34, 40-41)  Similarly, Transocean's Third-Party Complaint demanding judgment in favor of Plaintiffs against BP is an attempt to limit Transocean's own liability—at the expense of BP—for the work Transocean

performed under the Drilling Contract.  (TO Third-Party Compl. at 22)  By itself, any one of Transocean's complaints establishes that it has waived any arbitration rights against BP; collectively, Transocean's three separate complaints remove any conceivable doubt.

Moreover, Transocean has not just initiated litigation against BP but has pursued court processes against BP in the MDL.  For example, Transocean joined with the Plaintiffs' Steering Committee ("PSC") in opposing BP's trial plan, asserting that "BP's proposal for a single allocation of fault, addressing less than 1% of the claims at issue, will result in a tremendous waste of resources, time, and money."  (Dkt. No. 2130, Reply Mem. in Supp. of Trial Plan at 7-8)  Transocean's position was particularly prejudicial because it was the only defendant to support the PSC's plan.  Similarly, Transocean has opposed BP's request to reallocate additional time to BP to depose Transocean witnesses.  (Ex. E, 5/11/2011 E-mail from K. Miller to M.J. Shushan)  In such cases, Transocean is invoking this Court's processes to deny relief on the merits that BP has requested in the MDL.

Finally, the fact that Transocean has assumed the role of plaintiff and filed multiple complaints against BP takes this case out of the realm of typical waiver arguments:

> Customarily, waiver is urged against the defendant and the inquiry for the court is whether the defendant litigated enough and the other side has suffered sufficient prejudice such that the defendant's waiver of the right to arbitrate may be inferred.  Rarely does a plaintiff begin a litigation on the merits and then alter course and attempt to compel an arbitration.

*SATCOM Int'l Group PLC v. ORBCOMM Int'l Partners, L.P.*, 49 F. Supp. 2d 331, 341 (S.D.N.Y. 1999).  Likewise, the Fifth Circuit has noted that, while the standards applied to plaintiffs and defendants are the same, "[d]ifferences between the two sides arise from the voluntariness and timing of their actions."  *Nicholas*, 565 F.3d at 908.  While ordinarily there is "a strong presumption against finding a waiver of arbitration, and the party claiming that the right to arbitrate has been waived bears a heavy burden," *Mirant*, 613 F.3d at 588, that

9

presumption has no application where, as here, Transocean has assumed the role of plaintiff and chosen to litigate against BP as a defendant. "Instead, there is on the face of the complaint[s] clear evidence of [Transocean's] conscious decision to litigate rather than arbitrate this dispute." *SATCOM*, 49 F. Supp. 2d at 341. Transocean's complaints, particularly when combined with its discovery against BP, discussed below, more than satisfy any burden to prove invocation of the judicial process.

> **2.    Transocean's Extensive Discovery Against BP Waives Any Arbitration Rights.**

In addition to filing complaints and initiating litigation, Transocean also has waived its arbitration rights by conducting extensive discovery against BP. Fifth Circuit case law is clear that, while limited discovery does not waive a party's arbitration rights, substantial discovery does. *E.g., Republic Ins. Co. v. Paico Receivables, LLC*, 383 F.3d 341, 344-45 (5th Cir. 2004) (finding waiver of right to arbitration when party undertook substantial discovery including four depositions); *Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494, 497-98 (5th Cir. 1986) (finding waiver of right to arbitration when "numerous depositions were taken," money and time were expended in defense, and there was pre-trial discovery going to the merits of the case); *Certain Underwriters at Lloyd's v. Bristol-Myers Squibb Co.*, 51 F. Supp. 2d 756, 761 (E.D. Tex. 1999) (waiver found in large part due to "extensive discovery").

In this litigation, Transocean has taken extensive deposition discovery. Transocean has deposed every single one of the 34 BP witnesses who have sat for a deposition. Transocean generally uses the full amount of its allocated time to take this discovery of BP, and often borrows additional time from other parties to lengthen its discovery. Moreover, 32 BP witnesses

currently are scheduled for depositions, and more will be scheduled in the future.[2]  Transocean has not provided any indication that it will not take discovery of these BP deponents as well.  To the contrary, on May 19, 2011, Transocean asked Magistrate Judge Shushan to add another six BP witnesses to the priority deponent list.  (Ex. B)  By conducting 34 depositions of BP, and apparently intending to conduct at least 32 more depositions of BP in the future, Transocean has engaged in, and is continuing to engage in, the kind of extensive discovery that establishes waiver.

As with its pleadings, Transocean's deposition discovery relates to arbitrable issues.  As explained in Section II.A.1, Transocean's claims for contribution, subrogation, and indemnity all fall within the scope of the Drilling Contract's arbitration clause.  Despite this, Transocean has asked numerous questions aimed at attempting to establish BP's liability for these claims, including questions suggesting that BP made well design decisions which caused the *Deepwater Horizon* incident and did not take sufficient time to make decisions regarding the Macondo well. (Ex. F, D. Sims Dep. at 553:10-563:6; Ex. G, R. Sepulvado Dep. at 500:6-501:10; Ex. H, M. Bly Dep. at 622:10-623:21, 638:10-640:7, 663:1-670:24)  Moreover, BP is challenging whether Transocean is entitled to any indemnification under the Drilling Contract because of Transocean's misconduct relating to the Macondo well and the *Deepwater Horizon* incident, such as poorly maintaining the *Deepwater Horizon* and its equipment, not properly training its crew, failing to properly monitor and control the well, having a divided command structure that delayed critical emergency measures, and other facts.  These issues are all covered by the Drilling Contract, which expressly required Transocean to provide a qualified, trained and

---

[2]    Transocean also has listed numerous BP witnesses on Transocean's deposition witness list — witnesses who do not appear on the PSC's deposition list.  In many instances Transocean is the only party to list a BP witness for deposition.  (Ex. C at 14)

competent crew; perform drilling operations in compliance with applicable industry practices and standards; and comply with all applicable laws, rules, and regulations governing Transocean's vessel and crew.  (*See, e.g.,* Ex. D, Drilling Contract ¶¶ 3.1.4, 14.1.1, 14.5, 17.1) Nevertheless, Transocean has examined BP's witnesses directly on these issues, attempting to elicit, among other things, that: (i) BP had not previously raised issues with the *Deepwater Horizon's* crew; (ii) BP was aware of certain maintenance problems with the *Deepwater Horizon*; (iii) Transocean corrected maintenance problems with the *Deepwater Horizon*; and (iv) Transocean did not willfully or intentionally cause harm.  (Ex. F, D. Sims Dep. at 451:7-453:22, 477:18-480:15; Ex. G, R. Sepulvado Dep. at 490:1-493:10; Ex. H, M. Bly Dep. at 642:15-645:3, 660:14-661:18; Ex. I, J. Sprague Dep. at 511:8-514:22)  In sum, for months Transocean has been using this Court's processes and procedures to take discovery on issues that Transocean now asserts are arbitrable.  Transocean's conduct constitutes waiver, pure and simple.

Finally, regarding discovery and arbitration, Transocean's memorandum misstates both the law and the facts.  First, Transocean's assertion that "BP itself has noted … that rights to arbitrate under the FAA are not waived merely by participating in discovery," simply is wrong. (TO Mem. at 9)  BP stated that "the Fifth Circuit has held that *responding to or engaging in minimal discovery* does not invalidate a party's right to arbitration."  (BP Mem. in Supp. of Mot. to Stay at 26 (emphasis added))  That "minimal discovery" does not waive arbitration rights is a correct statement of the law, but does not apply to a party such as Transocean that has conducted 34 depositions of BP with the apparent intention to take at least 32 more.  Second, Transocean's parenthetical description of an Anadarko and MOEX brief as "recounting BP's extensive involvement in propounding discovery on Anadarko and MOEX" is belied by the record.  (TO Mem. at 8)  As of May 13, when the Magistrate Judge granted Anadarko and MOEX's motion to

compel against BP, BP had not taken *any* discovery of Anadarko or MOEX.   Unlike Transocean's extensive depositions of BP's witnesses, BP had not deposed Anadarko or MOEX witnesses.   Nor had BP propounded any written discovery on Anadarko and MOEX that they were required to answer if Anadarko and MOEX's discovery on BP had been quashed.

      **B.**      **Transocean's Litigation Against BP Has Prejudiced BP In Multiple Ways.**

Analysis of whether a party has been prejudiced begins with the invocation of the judicial process:

> Although the waiver standard involves two prongs of analysis (substantial invocation of the judicial process and prejudice) [Fifth Circuit] precedent has recognized some overlap:  When one party reveals a disinclination to resort to arbitration on any phase of suit involving all parties, those parties are prejudiced by being forced to bear the expenses of a trial …[.]   Arbitration is designed to avoid this very expense.   Substantially invoking the litigation machinery qualifies as the kind of prejudice that is the essence of waiver.

*Petroleum Pipe*, 575 F.3d at 480 n.2.

Here, Transocean has repeatedly invoked the judicial process and associated litigation machinery in the plainest way possible:  filing multiple complaints against BP and conducting discovery.   Under *Petroleum Pipe*, these facts alone establish prejudice and thus waiver, and BP need not produce further evidence of prejudice.

But even if the Court were to go beyond the holding of *Petroleum Pipe*, the evidence of BP's specific prejudice from Transocean's litigation is clear.   To begin with, because of Transocean's conduct, the threshold that BP must meet to prove prejudice is low.   "While the mere failure to assert the right of arbitration does not alone translate into a waiver of that right … such failure does bear on the question of prejudice, and may, along with other considerations, require a court to conclude that waiver has occurred."  *Petroleum Pipe*, 575 F.3d at 480 (internal quotations omitted).   Moreover, the Fifth Circuit has "recognized that, where a party fails to

demand arbitration, and, in the meantime engages in pretrial activity inconsistent with an intent to arbitrate, the party later opposing a motion to compel arbitration may more easily show that its position has been compromised, i.e., prejudiced." *Nicholas*, 565 F.3d at 910 (internal modifications omitted). This quotation precisely describes Transocean's conduct, as it has been litigating allegedly arbitrable issues and conducting discovery against BP without filing an arbitration demand—pretrial activity inconsistent with its supposed right to arbitrate.

The specific evidence of prejudice to BP easily satisfies any threshold for waiver. First, BP has incurred—and is incurring—considerable legal expense responding to Transocean's complaints and being forced to litigate against Transocean in court. BP has had to pay counsel to draft a motion to dismiss Transocean's complaint-in-intervention, which motion was filed on May 3, 2011. Likewise, BP is paying counsel to prepare a response to Transocean's Cross/Counter Complaint. Incurring legal expenses to respond to multiple court filings supports a finding of prejudice. *See Mirant*, 613 F.3d at 591; *Nicholas*, 565 F.3d at 910.

Second, BP is prejudiced from the additional costs of preparing for and defending against Transocean's deposition discovery. Transocean has deposed 34 BP witnesses so far, and if the pattern holds will depose every additional BP witness, including the 32 currently scheduled. BP must expend the time and resources to prepare these witnesses for questioning by Transocean, which has its own interests, goals, and strategies that are distinct in many respects from those of other parties. These additional costs constitute prejudice. *Nicholas*, 565 F.3d at 910; *Republic Ins.*, 383 F.3d at 347. Indeed, Transocean itself acknowledges "[t]here is clear prejudice … in having to engage in and respond to discovery from parties subject to an arbitration agreement on claims subject to that same arbitration agreement." (TO Mem. at 8) But that is exactly what Transocean has done to BP. Transocean thus admits that its conduct prejudices BP.

Third, Transocean is wasting the resources of both BP and the Court.  "The decision whether to arbitrate is one best made at the onset of the case."  *Mirant*, 613 F.3d at 592; *Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 577 (5th Cir. 1991).  Transocean should have filed its arbitration demand months ago.  Instead, it has delayed resolution of the issues between it and BP by refusing to demand arbitration.  In the meantime, BP must develop its litigation strategy assuming that Transocean will continue to litigate against it in the MDL—as Transocean has done to date.  Allowing Transocean to belatedly demand arbitration now (or, even worse, block BP's discovery without actually seeking arbitration) would prejudice BP by wasting this work.  *Cf. Conant v. Morgan's Foods, Inc.*, 2011 WL 672584, at *6   (S.D. Ohio Feb. 15, 2011) ("[O]rdering arbitration would reward Defendants' conduct while ignoring that they litigated this case for months, as well as the effects of that strategic choice on Plaintiffs and the fact that Defendants' actions contributed to the consumption of judicial resources.").

Fourth, and perhaps most significantly, BP's trial strategy is being prejudiced by Transocean's pursuit of litigation against BP while citing its alleged arbitration rights to block BP from defending itself against Transocean in court.  Even after filing its motion for a protective order, Transocean still has not filed any arbitration demand.  *Cf. Robinson v. Food Serv. of Belton, Inc.*, 415 F. Supp. 2d 1221, 1226 (D. Kan. 2005)  ("[M]erely asserting the right to compel arbitration as an affirmative defense does not itself put plaintiffs on notice of defendants' intent to pursue arbitration.  When defendants proceeded to prepare for a lawsuit, plaintiffs proceeded similarly," and were thereby prejudiced).  Nor has it expressed any intent to file such a demand.  Instead, Transocean brings up its putative arbitration rights only when it suits Transocean's purpose.  "A party cannot keep its right to demand arbitration in reserve indefinitely while it pursues a decision on the merits before the district court."  *Mirant*, 613 F.3d

15

at 591.  Transocean has violated this tenet of Fifth Circuit law, and thus waived its arbitration rights.

###### C.    Transocean's Arguments That It Has Not Waived Lack Any Merit.

In response to the clear case law holding that filing complaints invokes the judicial process, Transocean offers a handful of assertions unsupported by argument or case law.  First, Transocean claims that it has reserved its right to arbitrate through correspondence with BP and a footnote in its Cross/Counter Complaint.  (TO Mem. at 10-11)  To begin with, BP has not located any record of Transocean mentioning its putative arbitration rights until February 18, 2011.  But by that time, Transocean had already deposed eight BP witnesses as part of the MDL, and so had waived any arbitration rights.

In any case, Transocean's position that it can litigate against BP while reserving its arbitration rights simply by providing notice has been categorically rejected by the Fifth Circuit.  In *MC Asset Recovery, LLC v. Castex Energy, Inc.*, 2009 WL 900745 (N.D. Tex. Apr. 3, 2009), *aff'd sub nom. In re Mirant*, 613 F.3d 584 (5th Cir. 2010), plaintiff MCAR filed a complaint against defendant Castex.  Castex responded with an answer containing its right to compel arbitration as a defense.  *Mirant*, 613 F.3d at 587.  When MCAR filed amended complaints, Castex filed motions to dismiss that purported to reserve its right to compel arbitration in a footnote.  *Id.* at 587-88.

But as the district court explained, "it is not enough merely to express a potential intention to arbitrate.  A party must make a demand that arbitrable claims be sent to arbitration." *MC Asset*, 2009 WL 900745 at *3 (citations omitted).  The district court then rejected MCAR's attempts to have its cake and eat it too by actually pursuing litigation while reserving its arbitration rights:

16

> Defendants' attempts at "reserving" their right to arbitrate in their answer and various other filings, including their motions to dismiss, demonstrate that they have been fully aware of their right to arbitrate since the outset of this litigation. Use of the federal court system to advance one's legal position only to seek to finish the suit in arbitration when the suit could have proceeded to arbitration immediately is not viewed with favor in this circuit.

*Id.* at *6.

On appeal, the Fifth Circuit affirmed, holding that Castex had waived its arbitration rights notwithstanding its purported written reservation of those rights:

> To hold otherwise would encourage litigants to delay moving to compel arbitration until they could ascertain how the case was going in federal district court.  In essence, Castex attempted to play "heads I win, tails you lose," which is the worst possible reason for failing to move for arbitration sooner than it did.

*Mirant*, 613 F.3d at 590 (internal quotations and citation omitted); *see also Conant*, 2011 WL 672584, at *3-4 (finding waiver because "Defendants' litigation conduct has been notably inconsistent with pursuing arbitration while Defendants periodically paid lip service to arbitrating."); *Robinson*, 415 F. Supp. 2d at 1226 ("While plaintiffs may have been made aware of defendants' *right* to arbitrate, they were not notified of defendants' *intent* to arbitrate until the current motion was filed on May 19, 2005.  Moreover, defendants course of conduct in taking depositions, engaging in discovery, and participating in other judicial procedures not available in arbitration is entirely inconsistent with an effort to notify plaintiffs of an intent to arbitrate.") (emphasis in original); *Nino v. Jewelry Exch., Inc.*, 609 F.3d 191, 211 (3d Cir. 2010).  Just so here.   Transocean has been actually litigating against BP while purporting to reserve its arbitration rights, yet without filing an arbitration demand or moving to compel arbitration.  Under *Mirant*, Transocean's attempts to reserve its arbitration rights are plainly ineffective.

Transocean argues next that it filed its Counter/Cross Complaint pursuant to a court deadline.  (TO Mem. at 10-11)  Transocean does not cite any authority for the proposition that filing a complaint because of a court deadline prevents a waiver of arbitration.  Instead, the rule

17

is that filing a complaint invokes the judicial process and waives arbitration rights.  *E.g.*, *Nicholas*, 565 F.3d at 908.  Moreover, Transocean's argument proves far too much.  Almost all litigation actions—from filing motions to dismiss, serving discovery, filing for summary judgment, and even going to trial—take place pursuant to court deadlines.  If compliance with a court deadline could excuse invocation of the judicial process, then there would almost never be waiver.  But this is not the law, and the Fifth Circuit has held that filing such motions or conducting discovery waives arbitrations rights.  *E.g.*, *Mirant*, 613 F.3d at 590-91.  If Transocean had wanted to preserve its arbitration rights, it should have filed an arbitration demand and moved to compel arbitration.

Third, Transocean claims that its actions are "compelled" by being named as a defendant in these suits, but this simply is not true.  (TO Mem. at 9)  Absolutely nothing, and especially no "compulsion," has prevented Transocean from filing an arbitration demand and moving to compel arbitration.  Instead, Transocean has voluntarily chosen not to file an arbitration demand and to litigate against BP instead, while raising its putative arbitration rights when it suits Transocean's purposes.

Transocean's fourth claim, that BP has not suffered prejudice, is addressed in Section II.B.  Transocean cites no case law for its assertion that simply because a multitude of parties are involved, Transocean's conduct cannot have prejudiced BP.  (TO Mem. at 11)  Transocean itself claims that being served discovery on arbitrable claims is "clear prejudice," even though it is part of the same multi-party proceedings as BP.  (TO Mem. at 8)  Moreover, BP has incurred additional costs in having to respond to Transocean's complaints as well as its discovery and litigation against BP.  Fifth Circuit case law is clear that such costs, as well as the harm to BP

18

from Transocean's strategy of litigating against BP while attempting to use its arbitration rights to defend against BP, are prejudicial.

Fifth, Transocean claims that its Third-Party Complaint against BP cannot operate as a waiver, but once again cites no authority to support this proposition.  (TO Mem. at 10)  Moreover, the Third-Party Complaint is just one aspect of Transocean's litigation against BP, and either of the remaining complaints or Transocean's extensive deposition discovery is sufficient to find waiver.  Furthermore, the fact remains that Transocean was not required to tender BP, that Transocean invoked the judicial process against BP by bringing BP into the litigation, and that Transocean's complaint seeks affirmative judicial relief against BP by "demand[ing] judgment in the Plaintiffs/Claimants' favor against the tendered Third-Party Defendants [including BP] pursuant to Rule 14(c)(2)." (TO Third-Party Compl. at 22)  That is more than sufficient to waive any arbitration rights.

## II.   INDEPENDENTLY, UNDER THE MAGISTRATE JUDGE'S ORDER, TRANSOCEAN MUST ANSWER BP'S DISCOVERY REGARDLESS OF ANY ARBITRATION RIGHTS.

On May 13, 2011, the Magistrate Judge ruled on the issue presented by Transocean's Motion for a Protective Order.  (Dkt. No. 2358, Order Regarding the Mot. of Anadarko/MOEX to Compel Disc.)  Separate and apart from waiver, that ruling disposes of Transocean's motion.

BP, Anadarko, and MOEX are all parties to a Joint Operating Agreement ("JOA") that requires claims among the parties to be submitted to dispute resolution procedures that culminate in arbitration.  (Dkt. No. 2169-1, BP Mem. in Supp. of Mot. to Stay at 7-8)  Anadarko and MOEX served discovery on BP and BP moved for a stay of litigation, including the discovery, based on the parties' arbitration agreement.  In response, Anadarko and MOEX moved to compel BP to answer the discovery.  The Magistrate Judge granted Anadarko and MOEX's motion, holding that the "arbitration agreement does not prevent the Non-Operators from discovering

evidence from BP relevant to their defenses of the claims made against them by parties other than BP simply because the evidence is relevant to an arbitration with BP."  (Dkt. No. 2358, Order at 4)

The Magistrate Judge's ruling granting Anadarko and MOEX's motion to compel requires that Transocean's Motion for a Protective Order be denied.  As Transocean has admitted, "BP's … arguments for resisting discovery from Anadarko and MOEX are very nearly the same as Transocean brings against BP … in the instant Motion" for a Protective Order.  (TO Mem. at 4)  Because BP's arguments have not been accepted by the Magistrate Judge, Transocean's must fall as well.

## CONCLUSION

Transocean has invoked the judicial process by filing three separate complaints against BP and conducting extensive deposition discovery.  BP has suffered prejudice from the expense of having to respond to Transocean's multiple complaints and the time and resources spent addressing discovery of arbitrable claims—which Transocean itself admits is "clear prejudice." Transocean has waived any right to arbitrate, and its pursuit of litigation against BP in Court while using the possibility of arbitration as Transocean sees fit to frustrate BP, all while refusing to file an arbitration demand, should be rejected.

Independently, the Magistrate Judge's recent ruling that an arbitration agreement does not prevent discovery relevant to defenses of claims made by third parties is fully applicable to BP's discovery against Transocean.  For this reason as well, Transocean's Motion for a Protective Order should be denied.

Date:  May 20, 2011                    Respectfully submitted,


                                        /s/ Don K. Haycraft
                                        Don K. Haycraft (Bar #14361)
                                        R. Keith Jarrett (Bar #16984)
                                        LISKOW & LEWIS
                                        701 Poydras Street, Suite 5000
                                        New Orleans, Louisiana 70139-5099
                                        Telephone: (504) 581-7979
                                        Facsimile: (504) 556-4108

                                        and

                                        Richard C. Godfrey, P.C.
                                        J. Andrew Langan, P.C.
                                        Kirkland & Ellis LLP
                                        300 North LaSalle Street
                                        Chicago, IL 60654
                                        Telephone: (312) 862-2000
                                        Facsimile: (312) 862-2200

                                        Robert C. "Mike" Brock
                                        Covington & Burling LLP
                                        1201 Pennsylvania Avenue, NW
                                        Washington, DC 20004-2401
                                        Telephone: (202) 662-5985

                                        ***Attorneys for BP Exploration & Production
                                        Inc. and BP America Production Company***

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 20th day of May, 2011.

/s/ Don K. Haycraft
Don K. Haycraft