## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

In re:  Oil Spill by the Oil Rig "Deepwater
Horizon" in the Gulf of Mexico, on
April 20, 2010

This Document Relates To: All Cases AND No.
2:10-cv-2771 (*In re The Complaint And
Petition Of Triton Asset Leasing GmbH,
et al.*)
……………………………………………...

:
:
:
:
:
:
:
:

MDL No. 2179

SECTION: J

JUDGE BARBIER
MAGISTRATE JUDGE SHUSHAN

## THE BP PARTIES' ANSWER TO TRANSOCEAN'S
## RULE 13 CROSS-CLAIMS/COUNTER-CLAIMS[1]

BP Exploration & Production Inc. ("BPXP"), BP America Production Company

("BPAP"), and BP p.l.c. ("collectively, the BP Parties"), by their undersigned Counsel, and,

---

[1] Transocean's Rule 13 Cross-Claim/Counter-Claim is filed subject to, and without waiver of, Transocean's rights to invoke and compel arbitration of any and all arbitrable disputes which arise out of or are related to the Drilling Contract dated December 9, 1998 between Transocean Holdings LLC and BP America Production Company. The Drilling Contract's "ARBITRATION" provision provides:

> 35.4 ARBITRATION
>
> Any controversy or claim arising out of or related to this CONTRACT, or the breach thereof, which cannot be resolved satisfactorily between the parties, shall be settled by arbitration in Houston, Texas, in accordance with the rules of the American Arbitration Association Commercial Disputes. If no agreement can be reached by the parties on discovery disputes, then the Federal Rules of Civil Procedure shall govern and judgement upon the award rendered by the arbitrator(s) may be entered in any court of competent jurisdiction.

Accordingly, Transocean reserves for arbitration in Houston, Texas any and all claims it may have against BP Exploration & Production, Inc., BP America Production Company, and BP p.l.c. under the Drilling Contract's "ARBITRATION" provision.

**ANSWER:**

The BP Parties deny that any of Transocean's claims, cross-claims, or counter-claims in this matter are

arbitrable disputes under the Drilling Contract.  The BP Parties are not pursuing any arbitration rights they have

under the Drilling Contract and Transocean has, by its conduct in this Court, waived any claimed right to arbitrate

any aspect of the parties' dispute.

pursuant to Rule 8 of the Federal Rules of Civil Procedure, hereby answer Triton Asset Leasing GmbH, Transocean Holdings LLC, Transocean Offshore Deepwater Drilling Inc., and Transocean Deepwater Inc.'s (collectively, "Transocean") Rule 13 Cross-Claims/Counter-Claims (the "Complaint") as follows:

COME NOW Triton Asset Leasing GmbH, Transocean Holdings LLC, Transocean Offshore Deepwater Drilling Inc., and Transocean Deepwater Inc. (hereinafter collectively referred to as "Transocean") and, pursuant to Rule 13(g) and, alternatively, pursuant to Rule 13(a) and (b)[2] file this Transocean's Cross-Claim/Counter-Claim against BP Exploration & Production Inc., BP America Production Company, BP p.l.c., Halliburton Energy Services, Inc., M-I, LLC, Cameron International Corporation f/k/a Cooper Cameron Corporation, Anadarko Petroleum Corporation, Anadarko E&P Company LP, MOEX Offshore 2007 LLC, MOEX USA Corporation, Mitsui Oil Exploration Company, Ltd. (a/k/a MOECO), Weatherford International, Inc., Weatherford U.S.L.P., Dril-Quip, Inc., the United States of America, Marine Spill Response Corporation, Airborne Support, Inc., Airborne Support International, Inc., Lynden, Inc., Lynden Air Cargo LLC, Dynamic Aviation Group, Inc., International Air Response, Inc., Lane Aviation, National Response Corporation, O'Brien Response Management, Inc., The Modern Group, Ltd., DRC Emergency Services, LLC, and Nalco Company and, in support thereof, would respectfully show as follows:

## THE PARTIES

### TRANSOCEAN

---

[2] To the extent that this Cross-Claim should be designated a Counter-Claim under Rule 13, it is filed as both a compulsory Counter-Claim under Rule 13(a) and/or a permissive Counter-Claim under Rule 13(b). To the extent that this Cross-Claim should be designated a Counter-Claim, the references to "Cross-Claim" shall mean "Counter-Claim", the references to "Cross-Plaintiff" shall mean "Counter-Plaintiff", and the references to "Cross-Defendant(s)" shall mean "Counter-Defendant(s)". Fed. R. Civ. P. 8(e).

1.      Cross-Plaintiff Triton Asset Leasing GmbH is, and was at all material time hereinafter mentioned, a limited liability company organized and existing under the laws of the Swiss Confederation with its principal office in Zug, Switzerland.

**ANSWER:**

The BP Parties admit the allegations of this paragraph.

2.      Cross-Plaintiff Transocean Holdings LLC is, and was at all material time hereinafter mentioned, a limited liability company organized and existing under the laws of the State of Delaware, with its principal office in Houston, Texas.

**ANSWER:**

The BP Parties admit the allegations of this paragraph.

3.      Cross-Plaintiff Transocean Offshore Deepwater Drilling Inc. is, and was at all material time hereinafter mentioned, a corporation organized and existing under the laws of the State of Delaware, with its principal office in Houston, Texas.

**ANSWER:**

The BP Parties admit the allegations of this paragraph.

4.      Cross-Plaintiff Transocean Deepwater Inc. is, and was at all material time hereinafter mentioned, a corporation organized and existing under the laws of the State of Delaware, with its principal office in Houston, Texas.

**ANSWER:**

The BP Parties admit the allegations of this paragraph.

5.      Hereinafter, Cross-Plaintiffs Triton Asset Leasing GmbH, Transocean Holdings LLC, Transocean Offshore Deepwater Drilling Inc. and Transocean Deepwater Inc. are referred to collectively, where appropriate, as "Transocean".

**ANSWER:**

The BP Parties admit the allegations of this paragraph.

6.      Transocean was at all time material hereto the Owner, Managing Owners, Owners Pro Hac Vice, and/or Operators of the MODU *Deepwater Horizon* and/or are considered "Co- Owners" of the MODU *Deepwater Horizon* under the Limitation of Liability Act, 46 U.S.C. §§ 30501, *et seq.*, as a party or parties sought to be held liable as

Owner" of the MODU *Deepwater Horizon* as a result of the blow-out, explosion, fire, and sinking of the MODU *Deepwater Horizon* which occurred on or following April 20, 2010 (hereinafter referred to as the "Incident of April 20, 2010") and the resulting Oil Spill (hereinafter referred to as the "BP Oil Spill"). Transocean has filed a Petition for Exoneration from or Limitation of Liability in the United States District Court for the Southern District of Texas, C.A. No. 4:10-cv-1721 which was subsequently transferred to the Eastern District of Louisiana (after transfer, 10-2771), seeking exoneration from, or limitation of liability, as to all Claims arising out of the Incident of April 20, 2010, the BP Oil Spill and the voyage of the *Deepwater Horizon* which commenced on January 30, 2010 and ended on or about April 20, 2010 (hereinafter referred to as the "Voyage").

**ANSWER:**

The BP Parties admit that one or more of the Transocean entities was at all material times the Owner and/or Operator of the MODU *Deepwater Horizon* for purposes of the Limitation of Liability Act, 46 U.S.C. §§ 30501, et seq.; that Transocean filed a Petition as described; that the voyage of the of the *Deepwater Horizon* commenced on January 30, 2010 and ended on April 22, 2010 when the rig sank; and that on April 20, 2010 there was a loss of control of the Macondo Well and there occurred one or more explosions and/or fires aboard the *Deepwater Horizon*. The BP Parties deny the remaining allegations of this paragraph.

7.     On February 18, 2011, Transocean filed its Rule 14(c) Third-Party Complaint against Cross-Defendants. Pursuant to Transocean's Rule 14(c) Third-Party Complaint, Transocean tendered to the Cross-Defendants the Claims of all Claimants who have filed or will file Claims against Transocean in these Limitation proceedings, as the Cross-Defendants are parties which "may be wholly or partially liable – either to the Plaintiff [Claimant] or to the Third-Party Plaintiff – for remedy over, contribution, or otherwise, on account of the same transaction, occurrence, or series of transactions or occurrences" made the basis of the Claims filed in the Limitation of Liability action. Pursuant to Transocean's Rule 14(c) Third-Party Complaint, Transocean demanded judgment in the Claimants' favor against the Cross-Defendants pursuant to Rule 14(c)(2); Transocean demanded that the Cross-Defendants defend against the Claims under Rule 12; Transocean demanded that the Claimants assert their claims directly against the Cross-Defendants; and Transocean demanded that the Cross-Defendants file responsive pleadings to the Claims in Limitation.

**ANSWER:**

The BP Parties admit that Transocean filed a Rule 14(c) Third-Party Complaint on February 18, 2011, the text of which speaks for itself.  The BP Parties deny the remaining allegations of this paragraph.

8.    Transocean's Rule 14(c) tender and demand applied to all Limitation Claims filed or to be filed in these Limitation proceedings on or prior to April 20, 2011.[3]

**ANSWER:**

The BP Parties admit that Transocean filed a Rule 14(c) Third-Party Complaint on February 18, 2011, the text of which speaks for itself.  The BP Parties deny the remaining allegations of this paragraph.

## THE CROSS-DEFENDANTS

9.    Cross-Defendant BP Exploration & Production, Inc. ("BP Exploration") is a Delaware Corporation with its principal place of business in Warrenville, Illinois. BP Exploration was a lease-holder and the designated operator in the lease granted by the former Minerals Management Service ("MMS"), now re-organized as the Bureau of Ocean Energy Management Regulation & Enforcement ("BOEMRE"), allowing it to perform oil exploration, drilling, and production-related operations in Mississippi Canyon, Blk. 252, the location known as "Macondo," where the Macondo well was located and from which the Incident of April 20, 2010 originated. This Court has personal jurisdiction over BP Exploration because BP Exploration is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana. BP Exploration has been made a party to these Limitation proceedings pursuant to the filing of Transocean's Rule 14(c) Third-Party Complaint.

**ANSWER:**

The BP Parties admit that BPXP is a Delaware Corporation; that BPXP was the holder of

a lease granted by the MMS/BOEMRE pursuant to which it was allowed to perform oil

---

[3] Pursuant to the Stipulated Order Governing Deadlines In Connection With Petitioners' Rule 14(c) Third Party Complaint and Certain Bundle C Pleadings, **Dkt. No. 1730**, it was clarified that as to certain "Responder Defendants", Transocean's Rule 14(c) Complaint "shall be deemed a tender to each of these Responder Defendants only the claims contained in the B3 Bundle Master Complaint (**Rec. Doc. 881**) that have already been asserted against that particular Responder Defendant."

exploration, drilling, and production-related operations in Mississippi Canyon Block 252, in which the Macondo Well was located and from which the Oil Spill originated; and that BPXP is subject to this Court's jurisdiction. The BP Parties deny the remaining allegations of this paragraph.

10. Cross-Defendant BP America Production Company ("BP America") is a Delaware Corporation with its principal place of business in Houston, Texas. BP America was a party to the Drilling Contract with Petitioner Transocean Holdings LLC for the drilling of the Macondo Well by the MODU *Deepwater Horizon*. This Court has personal jurisdiction over BP America because BP America is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana. BP America Production Company has been made a party to these Limitation proceedings pursuant to the filing of Transocean's Rule 14(c) Third-Party Complaint.

**ANSWER:**

The BP Parties admit that BPAP is a Delaware Corporation; and that it is subject to this Court's jurisdiction. The BP Parties deny the remaining allegations of this paragraph.

11. Cross-Defendant BP p.l.c. is a British Public Limited Company with its corporate headquarters in London, England. BP p.l.c. is the global parent company of the world-wide business operating under the "BP" logo. BP p.l.c. operates its various business divisions, such as the "Exploration & Production" division in which BP Exploration and BP America fall, through vertical business arrangements. Third-Party Defendants in Limitation BP Exploration and BP America are wholly-owned subsidiaries of BP p.l.c. and are sufficiently controlled by BP p.l.c. so as to be BP p.l.c.'s agents in Louisiana and the U.S. more generally. This Court has general jurisdiction over BP p.l.c. pursuant to Louisiana's long-arm general jurisdiction provisions, *see* LA. REV. STAT. § 13:3201(B) and LA. CODE CIV. PROC. Art. 6, in combination with Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure. BP p.l.c. does business in Louisiana, has had continuous and systematic contacts with Louisiana (and the U.S. more generally). This Court also has specific jurisdiction over BP p.l.c. pursuant to Louisiana's long-arm specific jurisdiction provision, *see* LA. REV. STAT. § 13:3201(A), in combination with Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure. Transocean's Cross-Claim arises out of conduct committed by BP p.l.c. directly or indirectly, by its agents, that caused injury or damage in Louisiana by an offense or quasi offense committed through an act or omission outside of Louisiana, and BP p.l.c. regularly does or solicits business, or engages in any other persistent course of conduct, or derives revenue from goods used or consumed or services rendered in Louisiana. BP p.l.c. has been made a party to these Limitation proceedings pursuant to the filing of Transocean's Rule 14(c) Third-Party Complaint.

**ANSWER**:

The BP Parties admit that BP p.l.c. is a British Public Limited Company organized under the laws of England and Wales, which is publicly traded with its headquarters in London, England, and that BP p.l.c. is not contesting the jurisdiction of this Court in this case.  The BP Parties deny the remaining allegations of this paragraph

12.     Cross-Defendants BP Exploration, BP America and BP p.l.c. are generally referred to herein collectively as "BP". As lease operator of the Macondo prospect site, BP was responsible for assessing the geology of the prospect site, engineering the well design, obtaining regulatory approvals for well operations, and retaining and overseeing its contractors and working on various aspects of the well and drilling operations.

**ANSWER**:

The BP Parties admit that Transocean refers to the BP Parties and BP p.l.c. collectively as "BP," but they deny such references are accurate or appropriate.  The BP Parties admit that BPXP had certain responsibilities with regard to assessing the geology of the prospect site, engineering the well design, obtaining regulatory approvals for well operations, and retaining and overseeing its contractors and working on various aspects of the well and drilling operations.  The BP Parties deny the remaining allegations of this paragraph.

13.     Cross-Defendant Halliburton Energy Services, Inc. ("Halliburton") is a Delaware Corporation with its principal place of business in Houston, Texas. Halliburton is registered to do and does business in the State of Louisiana. Halliburton provided engineering services, materials, testing, mixing, and pumping for cementing operations onboard the *Deepwater Horizon*, as well as onshore engineering support for those operations. Halliburton was responsible for the provision of technical advice about the design, modeling, placement and testing of the cement that was used in the Macondo Well at and before the time of the Macondo Well blow-out. Halliburton was engaged in cementing operations to isolate the hydrocarbon reservoirs and seal the bottom of the well against the influx of hydrocarbons like gas and oil. Through its division Sperry Drilling Services (f/k/a Sperry Sun Drilling Services), Halliburton Energy Services, Inc. was responsible for mud logging personnel and equipment on the *Deepwater Horizon*, including down-hole drilling tools. Halliburton and Sperry Drilling Services' mud logging personnel were partially responsible for monitoring the well, including mud pit fluid levels, mud float in and out of the well, mud gas levels, and pressure fluctuations. This Court has personal jurisdiction over

Halliburton because Halliburton is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana. Halliburton Energy Services, Inc. has been made a party to these Limitation proceedings pursuant to the filing of Transocean's Rule 14(c) Third-Party Complaint.

**ANSWER:**

The BP Parties admit that Halliburton and/or its affiliates provided products and services related to cementing operations at the Macondo Well.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

14.     Cross-Defendant M-I, LLC ("M-I") is a Delaware limited liability company with its principal place of business in Wilmington, Delaware. M-I was, at all relevant time, registered to do, and was doing, business in Louisiana and within this district. M-I, also known as M-I Swaco, supplies drilling and completion fluids and additives to oil and gas companies in Louisiana and elsewhere, providing pressure control, vessel instrumentation, and drilling waste management products and services. On the *Deepwater Horizon*, M-I provided mud products, including drilling fluids and spacers, engineering services, and mud supervisory personnel, such as mud engineers and drilling fluid specialists, to manage the properties of those fluids in the Macondo Well. M-I employed, planned and/or supervised key fluid activities concerning the Macondo Well, such as the mud displacement that was occurring at the time of the April 20, 2010 Macondo Well blow-out. This Court has personal jurisdiction over M-I because M-I is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana. M-I, LLC has been made a party to these Limitation proceedings pursuant to the filing of Transocean's Rule 14(c) Third-Party Complaint.

**ANSWER:**

The BP Parties admit that M-I and/or its affiliates provided products and services related to drilling fluids used at the Macondo Well.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

15.     Cross-Defendant Cameron International Corporation f/k/a Cooper-Cameron Corporation ("Cameron") is a Delaware corporation with its principal place of business in Houston, Texas. Cameron is registered to do and does business in the State of Louisiana. Cameron manufactured, designed, supplied and/or installed the *Deepwater Horizon's* sub-sea emergency well-closure device known as a blowout-preventer ("BOP") which was installed at

the Macondo Wellhead. This Court has personal jurisdiction over Cameron, because Cameron is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana. Cameron International Corporation f/k/a Cooper-Cameron Corporation has been made a party to these Limitation proceedings pursuant to the filing of Transocean's Rule 14(c) Third-Party Complaint.

**ANSWER:**

The BP Parties admit that Cameron International Corporation manufactured, designed, supplied, and/or installed the *Deepwater Horizon's* blowout preventer.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

16.    Cross-Defendant Anadarko Exploration & Production Company LP ("Anadarko E&P") is a Delaware limited partnership with its principal place of business in The Woodlands, Texas. Anadarko E&P is registered to do and does business in the State of Louisiana. Anadarko E&P is an oil and gas exploration production company. On various dates, BP and Anadarko E&P became co-lessees under the terms of a lease executed on or about May 8, 2008, by BP, as Lessee, and the United States, by and through the MMS, as Lessor, for the "Oil & Gas Lease of Submerged Lands under the Outer Continental Shelf Lands Act, Serial No. OCS-G 32306" (hereinafter the "Lease"), pertaining to "All of Block 252, Mississippi Canyon OSC Official Protraction Diagram, N.H. 16-10," which Lease became effective on June 1, 2008. As of April 20, 2010, and continuing until at least April 28, 2010, Anadarko E&P held a 22.5% interest in the Lease. This Court has personal jurisdiction over Anadarko E&P because Anadarko E&P is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana. Anadarko Exploration & Production Company LP has been made a party to these Limitation proceedings pursuant to the filing of Transocean's Rule 14(c) Third-Party Complaint.

**ANSWER:**

The BP Parties admit that on or about May 8, 2008, BPXP executed the "Oil & Gas Lease of Submerged Lands under the Outer Continental Shelf Lands Act" with "Serial No. OCS-G 32306."  The BP Parties admit that at certain times prior to April 20, 2010, BPXP and Anadarko E&P were co-lessees under the Lease but deny that Anadarko E&P held a 22.5% interest in the Lease as of April 20, 2010.  The BP Parties lack knowledge or information

sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

17.      Cross-Defendant Anadarko Petroleum Corporation Co. ("Anadarko") is a Delaware corporation with its principal place of business in The Woodlands, Texas. Anadarko is registered to do and does business in the State of Louisiana. Anadarko is an oil and gas exploration and production company. On various dates, BP and Anadarko became co-Lessees under the terms of the Lease. As of April 20, 2010, and continuing until at least April 28, 2010, Anadarko held a 2.5% interest in the Lease. This Court has personal jurisdiction over Anadarko because Anadarko is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana. Anadarko Petroleum Corporation Co. has been made a party to these Limitation proceedings pursuant to the filing of Transocean's Rule 14(c) Third-Party Complaint.

**ANSWER:**

The BP Parties admit that as a result of various agreements, BPXP and Anadarko were co-lessees under the Lease but deny that Anadarko held a 2.5% interest in the Lease as of April 20, 2010.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

18.      Cross-Defendant MOEX Offshore 2007 LLC ("MOEX Offshore") is a Delaware corporation with its principal place of business in Houston, Texas. On various dates, BP and MOEX became co-Lessees under the terms of the Lease. As of April 20, 2010 and continuing until at least April 28, 2010, MOEX Offshore held a 10% interest in the Lease. This Court has personal jurisdiction over MOEX Offshore because MOEX Offshore is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana. MOEX Offshore 2007 LLC has been made a party to these Limitation proceedings pursuant to the filing of Transocean" s Rule 14(c) Third-Party Complaint.

**ANSWER:**

The BP Parties admit that as a result of various agreements, BPXP and MOEX Offshore were co-lessees under the Lease and that MOEX Offshore held a 10% interest in the Lease as of April 20, 2010.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

19.     Cross-Defendant MOEX USA Corporation ("MOEX USA") is a Delaware corporation with its principal place of business in Houston, Texas. MOEX USA is the parent company of MOEX Offshore 2007 LLC. This Court has general jurisdiction over MOEX USA pursuant to Louisiana's long-arm general jurisdiction provisions, *see* LA. REV. STAT. § 13:3201 (B) and LA. CODE CIV. PROC. Art. 6, in combination with Rule 4(k)(l)(A) of the Federal Rules of Civil Procedure. MOEX USA does business in Louisiana, and has continuous and systematic contacts with Louisiana (and the U.S. more generally). This Court has specific jurisdiction over MOEX USA pursuant to Louisiana's long-arm specific jurisdiction provisions, *see* LA. REV. STAT. § 13:3201 (A), in combination with Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure. The Cross-Claim arises out of conduct committed by MOEX USA directly or indirectly, by its agents, that caused injury or damage in Louisiana by an offense or quasi-offense committed through an act or omission outside of Louisiana, and MOEX USA regularly does or solicits business, or engages in any other persistent course of conduct, or derives revenue from goods used or consumed or services rendered in Louisiana. MOEX USA Corporation has been made a party to these Limitation proceedings pursuant to the filing of Transocean's Rule 14(c) Third- Party Complaint.

**<u>ANSWER</u>:**

The BP Parties admit that MOEX USA is an affiliate of MOEX Offshore.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

20.     Cross-Defendant Mitsui Oil Exploration Company, Ltd. ("MOECO") is a Japanese corporation with its principal place of business in Tokyo, Japan. Upon information and belief, MOECO is a corporate parent and/or alter ego of MOEX Offshore and/or MOEX USA Corporation, which holds a 10% stake in the Macondo prospect lease. MOECO is the parent company of MOEX Offshore 2007 LLC. This Court has general jurisdiction over MOEX USA pursuant to *Louisiana's* long-arm general jurisdiction provisions, *see* LA. REV. STAT. § 13:3201(B) and LA. CODE CIV. PROC. Art. 6, in combination with Rule 4(k)(l)(A) of the Federal Rules of Civil Procedure. MOECO does business in Louisiana, and has continuous and systematic contacts with Louisiana (and the U.S. more generally). This Court has specific jurisdiction over MOECO pursuant to *Louisiana's* long-arm specific jurisdiction provision, *see* LA. REV. STAT. § 13:3201(A), in combination with Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure. The Cross-Claim arises out of conduct committed by MOECO directly or indirectly, by its agents, that caused injury or damage in Louisiana by an offense or quasi-offense committed through an act or omission outside of Louisiana, and MOECO regularly does or solicits business, or engages in any other persistent course of conduct, or derives revenue from goods used or consumed or services rendered in Louisiana. Mitsui Oil Exploration Company, Ltd. has been made a party to these Limitation proceedings pursuant to the filing of Transocean's Rule 14(c) Third-Party Complaint.

**ANSWER:**

The BP Parties admit that MOECO is an affiliate of MOEX and MOEX Offshore.  The

BP Parties lack knowledge or information sufficient to form a belief about the truth of the

remaining allegations of this paragraph, and therefore deny them.

21.     Cross-Defendant Weatherford U.S. L.P. ("Weatherford") is a Louisiana
limited partnership but maintains its principal place of business in Houston, Texas, and at
all pertinent time was registered to do, and was doing business, in Louisiana and within this
District. Weatherford designed and manufactured, marketed, sold and/or distributed the
casing components such as the float collar, shoe, and centralizers and provided the personnel
and equipment for running the casing and casing components into the well bore. This Court
has personal jurisdiction over Weatherford because Weatherford is registered to do business
in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.
Weatherford U.S. L.P. has been made a party to these Limitation proceedings pursuant to
the filing of Transocean's Rule 14(c) Third-Party Complaint.

**ANSWER:**

The BP Parties admit that Weatherford and/or its affiliates provided products and services

related to the casing used at the Macondo Well.  The BP Parties lack knowledge or information

sufficient to form a belief about the truth of the remaining allegations of this paragraph, and

therefore deny them.

22.     Cross-Defendant Weatherford International, Inc. ("Weatherford International")
is a Delaware corporation with its principal place of business in Houston, Texas.
Weatherford International designed and manufactured, marketed, sold and/or distributed
the casing components such as the float collar, shoe, and centralizers and provided the
personnel and equipment for running the casing and casing components into the well bore.
This Court has personal jurisdiction over Weatherford International because Weatherford
International is registered to do business in Louisiana, does business in Louisiana, and has a
registered agent in Louisiana. Weatherford International, Inc. has been made a party to these
Limitation proceedings pursuant to the filing of Transocean's Rule 14(c) Third-Party
Complaint.

**ANSWER:**

The BP Parties admit that Weatherford International and/or its affiliates provided

products and services related to the casing used at the Macondo Well.  The BP Parties lack

knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

23.     Cross-Defendant Dril-Quip, Inc. ("Dril-Quip") is a Delaware corporation which maintains its principal place of business in Houston, Texas. Dril-Quip, Inc. was involved with providing wellhead systems to the *Deepwater Horizon*, including the Macondo Well that suffered the Incident of April 20, 2010. Dril-Quip manufactured and built the wellhead that connects to the blow-out preventer at the seafloor and the lockdown seal assembly. This Court has personal jurisdiction over Dril-Quip, Inc., because Dril-Quip, Inc. is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana. Dril-Quip, Inc. has been made a party to these Limitation proceedings pursuant to the filing of Transocean's Rule 14(c) Third-Party Complaint.

**ANSWER:**

The BP Parties admit that Dril-Quip provided wellhead products and services to the *Deepwater Horizon*.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

24.     Cross-Defendant United States of America is responsible for the acts of Federal Agencies and government employees. This Court has jurisdiction over civil actions or claims against the United States of America with respect to personal injury and/or death caused by the negligent or wrongful act or omission of any agency or employee of the United States of America. United States of America has been made a party to these Limitation proceedings pursuant to the filing of Transocean's Rule 14(c) Third-Party Complaint.

**ANSWER:**

The BP Parties admit the allegations of this paragraph.

25.     Cross-Defendant Marine Spill Response Corporation ("MSRC") is a Tennessee nonprofit corporation with its principal place of business in Herndon, Virginia, and at all pertinent time was doing business in the State of Louisiana. MSRC participated in the post-explosion BP Oil Spill remediation and response efforts. Marine Spill Response Corporation has been made a party to these Limitation proceedings pursuant to the filing of Transocean's Rule 14(c) Third- Party Complaint.

**ANSWER:**

The BP Parties admit that MSRC provided response services.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

26.     Cross-Defendant Airborne Support, Inc. ("ASI") is a Florida corporation with its principal place of business in Houma, Louisiana, and at all pertinent time was doing business in the State of Louisiana. ASI participated in the post-explosion BP Oil Spill remediation and response efforts. Airborne Support, Inc. has been made a party to these Limitation proceedings pursuant to the filing of Transocean's Rule 14(c) Third-Party Complaint.

**ANSWER:**

The BP Parties admit that ASI provided response services.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

27.     Cross-Defendant Airborne Support International, Inc. ("ASI International") is a Florida corporation with its principal place of business in Houma, Louisiana, and at all pertinent time was doing business in the State of Louisiana. ASI International participated in the post- explosion BP Oil Spill remediation and response efforts. Airborne Support International, Inc. has been made a party to these Limitation proceedings pursuant to the filing of Transocean's Rule 14(c) Third-Party Complaint.

**ANSWER:**

The BP Parties admit that ASI International provided response services.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

28.     Cross-Defendant Lynden, Inc. (hereinafter "Lynden") is a Washington corporation with its principal place of business in Seattle, Washington, which at all pertinent time was doing business in the State of Louisiana by virtue of its 100% ownership interest in Lynden Air Cargo LLC, an Alaska limited liability company with its principal place of business in Seattle, Washington, which at all pertinent time was doing business in the State of Louisiana (collectively "Lynden"). Lynden participated in the post-explosion BP

14

Oil Spill remediation and response efforts. Lynden has been made a party to these Limitation proceedings pursuant to the filing of Transocean's Rule 14(c) Third-Party Complaint.

**ANSWER:**

The BP Parties admit that Lynden provided response services.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

29.    Cross-Defendant Dynamic Aviation Group, Inc. ("Dynamic") is a Virginia corporation with its principal place of business in Bridgewater, Virginia and at all pertinent times was doing business in the State of Louisiana. Dynamic participated in the post-explosion BP Oil Spill remediation and response efforts. Dynamic Aviation Group, Inc. has been made a party to these Limitation proceedings pursuant to the filing of Transocean's Rule 14(c) Third-Party Complaint.

**ANSWER:**

The BP Parties admit that Dynamic provided response services.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

30.    Cross-Defendant International Air Response, Inc. ("IAR") is an Arizona corporation with its principal place of business in Coolidge, Arizona, and at all pertinent time was doing business in the State of Louisiana. IAR participated in the post-explosion BP Oil Spill remediation and response efforts. International Air Response, Inc. has been made a party to these Limitation proceedings pursuant to the filing of Transocean's Rule 14(c) Third-Party Complaint.

**ANSWER:**

The BP Parties admit that IAR provided response services.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

31.    Cross-Defendant Lane Aviation ("Lane") is a Texas corporation with its principal place of business in Rosenberg, Texas and at all pertinent time was doing business in the State of Louisiana. Lane participated in the post-explosion BP Oil Spill remediation

and response efforts. Lane Aviation has been made a party to these Limitation proceedings pursuant to the filing of Transocean's Rule 14(c) Third-Party Complaint.

**ANSWER:**

The BP Parties admit that Lane provided response services.   The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

32.     Cross-Defendant National Response Corporation ("NRC") is a Delaware corporation with its principal place of business in Great River, New York and at all pertinent time was doing business in the State of Louisiana (together with SEACOR Holding, Inc., a Delaware corporation with its principal place of business in Delaware, of which NRC is a wholly-owned subsidiary). NRC participated in the post-explosion BP Oil Spill remediation and response efforts. National Response Corporation has been made a party to these Limitation proceedings pursuant to the filing of Transocean's Rule 14(c) Third-Party Complaint.

**ANSWER:**

The BP Parties admit that NRC provided response services.   The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

33.     Cross-Defendant O'Brien Response Management, Inc. ("O'Brien") is a Louisiana corporation with its principal place of business in the Parish of St. Tammany, State of Louisiana and was, at all time, doing business in the State of Louisiana. O'Brien participated in the post- explosion BP Oil Spill remediation and response efforts. O'Brien Response Management, Inc. has been made a party to these Limitation proceedings pursuant to the filing of Transocean's Rule 14(c) Third-Party Complaint.

**ANSWER:**

The BP Parties admit that O'Brien provided response services.   The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

34.     Cross-Defendant The Modern Group, Ltd. ("Modern Group") is a Texas for profit business entity, with its principal place of business in Beaumont, Texas. Individually,

and/or through one or more of its partners, subsidiaries and/or affiliated entities, including, but not limited to, The Modern Group GP SUB and/or Tiger Rentals, Ltd. (collectively "Modern Group"), the Modern Group, upon information and belief, participated in the post-explosion Oil Spill remediation and response efforts, through its ventures "Tiger Safety" and/or "Tiger Rentals", the names under which The Modern Group does business in the Parish of Broussard, State of Louisiana.

**ANSWER:**

The BP Parties admit that Modern Group provided response services.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

35.     Cross-Defendant DRC Emergency Services, LLC ("DRC") is an Alabama limited liability company that at all pertinent time was doing business in the State of Louisiana. DRC participated in the post-explosion BP Oil Spill remediation and response efforts. DRC Emergency Services, LLC has been made a party to these Limitation proceedings pursuant to the filing of Transocean's Rule 14(c) Third-Party Complaint.

**ANSWER:**

The BP Parties admit that DRC provided response services.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

36.     Cross-Defendant Nalco Company is a Delaware corporation. At all pertinent times, Nalco was doing business in the State of Louisiana. Nalco was the manufacturer of the chemical dispersants purchased by BP for use in connection with clean-up efforts in response to the BP Oil Spill. Nalco Company has been made a party to these Limitation proceedings pursuant to the filing of Transocean's Rule 14(c) Third-Party Complaint.

**ANSWER:**

The BP Parties admit that Nalco provided chemical dispersants for use in the clean-up efforts.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

37.     Cross-Defendants BP Exploration, BP America, BP p.l.c., Halliburton, M-I, Cameron, Anadarko E & P, Anadarko, MOEX Offshore, MOEX USA, MOECO, Weatherford, Weatherford International, Dril-Quip, the United States of America, MSRC, ASI, ASI International, Lynden, Dynamic, IAR, Lane, NRC, O'Brien, Modern Group, DRC and Nalco are collectively referred to as the "Cross-Defendants". Cross-Defendants MSRC, ASI, ASI International, Lynden, Dynamic, IAR, Lane, NRC, O'Brien, The Modern Group, and DRC are collectively referred to as the "Responder Cross-Defendants".

**ANSWER:**

The BP Parties admit the allegations of this paragraph.

### THE PLAINTIFFS/CLAIMANTS[4]

38.     Pursuant to this Court's Pre-Trial Order No. 11 [Case Management Order No. 1], the MDL proceedings were separated into Pleading Bundles for the purpose of filing Complaints, Answers and any Rule 12 Motions. A separate Pleading Bundle for "Personal Injury and Death" was designated as the "A" Bundle. And, pursuant to this Court's Pre-Trial Order No. 11, it was provided that all "such cases will be pled individually and shall not be included in any other Pleading Bundles or Master Complaints." A separate Pleading Bundle for "Private Individuals and Business Loss Claims" was designated as the "B" Bundle, including the following claims: B1. Non-governmental Economic Loss and Property Damages; B2. RICO Claims; B3. Post- Explosion Clean-up Claims; and B4. Post-Explosion Emergency Responder Claims. A separate Pleading Bundle for "Public Damage Claims" was designated as the "C" Bundle. A separate Pleading Bundle for "Injunctive and Regulatory Claims" was designated as the "D" Bundle, including the following claims: D1. Claims Against Private Parties; and D2. Claims Against the Government or any Government Official or Agency.

**ANSWER:**

The BP Parties admit the allegations of this paragraph.

### THE BUNDLE A CLAIMS

39.     Following the Incident of April 20, 2010, various Claims, Petitions and/or Complaints have or will be filed against one or more of the Transocean entities by Claimants seeking damages for personal injury and/or death resulting from the Incident of April 20, 2010. These Claims, Petitions and/or Complaints have also been filed against several or all of the Cross-Defendants. Additional personal injury and death actions are expected to be filed against Transocean as a result of the Incident of April 20, 2010. Collectively, the Claimants asserting these various Claims, Petitions and Complaints and these to-be-filed Claims, Petitions,

---

[4] For purposes of Transocean's Rule 13 Cross-Claims/Counter-Claims, all parties designated "Plaintiff(s)" in the Petitions, Complaints and/or Short-Form Joinders, are referred to herein as "Claimants".

and/or Complaints are referred to as the "Bundle A Claimants", and their individual claims, petitions, and/or complaints are referred to as "Bundle A Claims".

**ANSWER:**

The BP Parties admit the allegations of this paragraph.

### THE BUNDLE B CLAIMS

40.     Following the Incident of April 20, 2010, various Claims, Petitions, Complaints and/or Short-Form Joinders have or will be filed against one or more of the Transocean entities by private individuals asserting claims for non-governmental economic loss and property damages, RICO damages, post-explosion clean-up damages, and other damages, resulting from the Incident of April 20, 2010 and from the BP Oil Spill. These Claims, Petitions, Complaints and/or Short-Form Joinders have also been filed against several or all of the Cross-Defendants. Additional Claims are expected to be filed against Transocean by private individuals asserting Claims for non-governmental economic loss and property damages, RICO damages, post- explosion clean-up damages and other damages as a result of the Incident of April 20, 2010 and the BP Oil Spill. Collectively, the Claimants asserting these various Claims, Petitions, Complaints and/or Short-Form Joinders and these to-be-filed Claims, Petitions, Complaints and/or Short-Form Joinders are referred to as the "Bundle B Claimants" and their Claims are referred to as the "Bundle B Claims".

**ANSWER:**

The BP Parties admit the allegations of this paragraph.

### THE BUNDLE C CLAIMS

41.     Following the Incident of April 20, 2010, various Claims, Petitions, Complaints and/or Short-Form Joinders have or will be filed against one or more of the Transocean entities by private individuals asserting "Public Damage Claims" resulting from the Incident of April 20, 2010 and the BP Oil Spill. These Claims, Petitions, Complaints and/or Short-Form Joinders have also been filed against several or all of the Cross-Defendants. Additional Public Damage Claims are expected to be filed against Transocean as a result of the Incident of April 20, 2010 and from the BP Oil Spill. Collectively, the Claimants asserting these various Claims, Petitions, Complaints and/or Short-Form Joinders and these to-be-filed Claims, Petitions, Complaints and/or Short-Form Joinders are referred to as the "Bundle C Plaintiffs" and their Claims are referred to as the "Bundle C Claims".

**ANSWER:**

The BP Parties admit the allegations of this paragraph.

<u>THE BUNDLE D CLAIMS</u>

42.     Following the Incident of April 20, 2010, various Claims, Petitions and/or Complaints have or will be filed against one or more of the Transocean entities by Private Parties Challenging Regulatory Action or Authority and/or Seeking Injunctive Relief resulting from the Incident of April 20, 2010 and from the BP Oil Spill. These Claims, Petitions, and/or Complaints have also been filed against several or all of the Cross-Defendants. Additional Claims by Private Parties Challenging Regulatory Action or Authority and/or Seeking Injunctive Relief are expected to be filed against Transocean as a result of the Incident of April 20, 2010 and the BP Oil Spill. Collectively, the Claimants asserting these various Claims, Petitions and/or Complaints and these to-be-filed Claims, Petitions and/or Complaints are referred to as the "Bundle D Claimants" and their Claims are referred to as the "Bundle D Claims".

**ANSWER:**

       The BP Parties admit the allegations of this paragraph.


## JURISDICTION AND VENUE

43.     The Court has exclusive and original subject matter jurisdiction over Transocean's Rule 13 Cross-Claim/Counter-Claim pursuant to Rule 9(h) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1333.

**ANSWER:**

       The BP Parties admit the allegations of this paragraph.


44.     Venue is proper in this District pursuant to Rule F(9) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1391.

**ANSWER:**

       The BP Parties admit the allegations of this paragraph.


## FACTUAL ALLEGATIONS

45.     At all time material hereto, the *Deepwater Horizon* was an ultra-deepwater dynamic positioned semi-submersible vessel built in 2001. It was leased to BP America Production Company through 2013 pursuant to a Drilling Contract dated December 9, 1998. BP leased the *Deepwater Horizon* to drill exploratory wells at the Macondo prospect site in Mississippi Canyon Block 252, a location on the Outer Continental Shelf off the coast of Louisiana.

**ANSWER:**

The BP Parties admit that the *Deepwater Horizon* was an ultra-deepwater dynamic positioned semi-submersible vessel built in 2001, that BPAP had contracted for Transocean to use the *Deepwater Horizon* to drill wells, and that Transocean used the *Deepwater Horizon* at the Macondo prospect.  The BP Parties deny the remaining allegations of this paragraph.

46.    On April 20, 2010, a blow-out from BP's Macondo well occurred, resulting in explosion(s) and a fire on the *Deepwater Horizon*. The fire burned for two days, and the vessel began to list progressively until it finally sank on April 22, 2010.

**ANSWER:**

The BP Parties admit that on April 20, 2010, there were one or more fires and/or explosions aboard the *Deepwater Horizon* which caused the vessel to sink on April 22, 2010. The BP Parties deny the remaining allegations of this paragraph.

47.    Both prior to and following the sinking of the *Deepwater Horizon* on April 22, 2010, oil flowed from BP's Macondo Well, and continued to flow until approximately July 15, 2010, when BP finally capped the Macondo Well.

**ANSWER:**

The BP Parties admit that following the sinking of the *Deepwater Horizon* oil flowed from the Macondo Well until the well was capped on July 15, 2010.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

48.    After the Incident of April 20, 2010, BP began implementing a Response Plan including relief and recovery efforts to prevent oil from escaping from the Macondo Well, to manually contain the oil, and to disperse oil in the water using chemical dispersants. As part of its offshore containment Response Plan, BP directed the use of vessels to recover oil coming to the surface of the Gulf of Mexico, the use of vessels to skim oil from the surface of the water, the use of vessels to conduct *in situ* burning of oil that reached the surface of the water,

and the use of Vessels of Opportunity ("VoO"). In addition to directing vessels at sea, BP coordinated and directed aircraft owned and/or operated by Cross-Defendants MSRC, O'Brien, Modern Group, NRC, Lane, Dynamic, ASI, ASI International, Lynden, IAR, DRC and others to spot oil slicks and to spray chemical dispersants manufactured by Nalco to oil on the surface of the water.

**ANSWER:**

The BP Parties admit that under the direction of the Unified Command established to respond to the oil spill, BP participated in implementing a Response Plan and that the actions described above were directed by the Unified Command.  The BP Parties deny the remaining allegations of this paragraph.


49.     As a direct result of the Incident of April 20, 2010, the BP Oil Spill, and BP's Response Plan, including BP's relief and recovery efforts, the Bundles A, B, C and D Claimants have filed or will file Claims, Petitions, Complaints and Short-Form Joinders against Transocean. Transocean's Cross-Claims/Counter-Claims arise out of the transaction or the occurrence that is the subject matter of the Bundles A, B, C, and D Claimants' Claims against Transocean. Furthermore, the Cross-Defendants are or may be liable to Transocean or to the Bundles A, B, C and D Claimants for remedy over, contribution, or otherwise on account of the same transaction, occurrence, or series of transactions or occurrences made the basis of the Bundles A, B, C, and D Claimants' Claims.

**ANSWER:**

The BP Parties admit that claims have been filed or will be filed versus Transocean, and Transocean's Cross-Claims/Counter-Claims arise out of the subject matter of these complaints. The BP Parties further admit that Transocean seeks remedies.  The BP Parties deny that they are liable to Transocean.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations regarding other defendants.


50.     Transocean's Rule 13 Cross-Claims/Counter-Claims apply to all Bundle A, B, C and D Claims filed against Transocean as a result of the Incident of April 20, 2010 and/or the BP Oil Spill, whether these Bundle A, B, C and D Claims are filed in the Limitation of Liability action, C.A. No. 10-2771, in the MDL action, MDL No. 2179, or in any other forum, state or federal.

**ANSWER:**

The BP Parties admit the allegations of this paragraph.

51.    The Bundle A Claimants are various individuals who have or will file Claims, Petitions and/or Complaints for personal injury and/or death as a result of the Incident of April 20, 2010, seeking to recover damages against Transocean and others, alleging various causes of action, including but not limited to, negligence, gross negligence, willful misconduct and intentional acts. The Bundle A Claimants have also made claims against Transocean under the general maritime law for maintenance, cure, and unearned wages and for negligence under the Jones Act and unseaworthiness under the general maritime law. Transocean has or will file Rule 12(b) motions to dismiss or answers in response to the Bundle A Claims and Transocean will deny, or has denied, that it is liable, in whole or in part, to the Bundle A Claimants on account of their Claims. Although Transocean denies that it is liable to any Bundle A Claimant for the Incident of April 20, 2010, in the unlikely event Transocean is held liable to any Bundle A Claimants, the Cross-Defendants are or may be liable to Transocean for all or part of the claims and causes of action asserted by the Bundle A Claimants' Claims, Petitions and Complaints.

**ANSWER:**

The BP Parties admit that Transocean intends to engage in the above referenced actions.

The BP Parties deny that they are liable to Transocean.  The BP Parties lack knowledge or

information sufficient to form a belief about the truth of the remaining allegations regarding

other defendants.

52.    The Bundle B Claimants are various private parties who have or will file Claims, Petitions, Complaints and/or Short Form Joinders asserting claims for Non-Governmental Economic Loss and Property Damages, RICO Claims, Post-Explosion Clean-up Claims and other Claims, seeking to recover damages against Transocean and others, alleging various causes of action, including but not limited to, negligence, gross negligence, willful misconduct and intentional acts, nuisance, public nuisance, trespass, fraudulent concealment claims, claims under OPA, claims under various states' mini-OPA statutes, and other claims under state law, federal law and the general maritime law. Transocean has or will file Rule 12(b) Motions to Dismiss or Answers in Response to the Bundle B Claims and Transocean will deny, or has denied, that it is liable, in whole or in part, to the Bundle B Claimants on account of the allegations in their Claims. Although Transocean denies that it is liable to any Bundle B Claimant for the Incident of April 20, 2010 and the BP Oil Spill, in the unlikely event it is held liable to the Bundle B Claimants, the Cross-Defendants are or may be liable to Transocean for all or part of the claims and causes of action asserted by the Bundle B Claimants Claims, Petitions, Complaints and Short-Form Joinders.

**ANSWER:**

The BP Parties admit that Transocean intends to engage in the above referenced actions. The BP Parties deny that they are liable to Transocean.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations regarding other defendants.

53.     The Bundle C Claimants are various governmental entities who have or will file Claims, Petitions, Complaints and/or Short Form Joinders asserting Public Damage Claims for loss of resources, loss of tax revenues, response costs and civil fines and/or penalties seeking to recover damages against Transocean and others, alleging various causes of action, including but not limited to, negligence, gross negligence and willful misconduct, nuisance, public nuisance, trespass, fraudulent concealment, claims under the Oil Pollution Act, 33 U.S.C. § 2702 *et seq.,* ("OPA"), claims under the Clean Water Act, 33 U.S.C. § 1251, *et seq.*, ("CWA"), claims under various states' mini-OPA statutes, and other claims under state law, federal law, and under the general maritime law. Transocean has or will file Rule 12(b) Motions to Dismiss or Answers in Response to the Bundle C Claims and Transocean will deny, or has denied, that it is liable, in whole or in part, to the Bundle C Claimants on account of the allegations in their Claims. Although Transocean denies that it is liable to any Bundle C Claimant for the Incident of April 20, 2010 and the BP Oil Spill, in the unlikely event it is held liable to the Bundle C Claimants, the Cross-Defendants are liable to Transocean for all or part of the claims and causes of action asserted by the Bundle C Claimants Claims, Petitions, Complaints and Short-Form Joinders.

**ANSWER:**

The BP Parties admit that Transocean intends to engage in the above referenced actions. The BP Parties deny that they are liable to Transocean.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations regarding other defendants.

54.     The Bundle D Claimants are various private parties who have or will file Claims, Petitions, Complaints and/or Short Form Joinders asserting Injunctive and Regulatory Claims against Transocean and others, alleging various causes of action, including but not limited to, claims under federal and state law, claims under the CWA, trespass, nuisance and other claims under state and federal law. Transocean has or will file Rule 12(b) Motions to Dismiss or Answers in Response to the Claims, Petitions, Complaints and/or Short-Form Joinders of the Bundle D Claimants and Transocean will deny, or has denied, that it is liable, in whole or in part, to the Bundle D Claimants on account of the allegations in their Claims. Although Transocean denies that it is liable to any Bundle D Claimants for the Incident of April 20, 2010 and the BP Oil Spill, in the unlikely event it is

held liable to the Bundle D Claimants, the Cross-Defendants are or may be liable to Transocean for all or part of the claims and causes of action asserted by the Bundle D Claimants' Claims, Petitions, and Complaints.

**<u>ANSWER</u>:**

The BP Parties admit that Transocean intends to engage in the above referenced actions. The BP Parties deny that they are liable to Transocean.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations regarding other defendants

55.    The allegations and contentions which have been asserted against BP by the Bundle A, B, C and D Claimant(s) in their Claims, including, but not limited to the allegations and contentions set forth in the First Amended Master Complaint, Cross-Claim and Third-Party Complaint For Private Economic Losses In Accordance With PTO No. 11 [CMO No. 1] Section III.B(1) ["B1 Bundle"] **Dkt. No. 1128**, the First Amended Master Complaint in accordance with PTO No. 11 [CMO No. 1] Section III.B(3) ["B3 Bundle"] **Dkt. 1812**, and the Local Government Entity Voluntary Master Complaint, Cross-Claim, and Third-Party Complaint, **Dkt. No. 1510**, are incorporated herein by reference, as if set forth herein, and are adopted by Transocean pursuant to Rule 10(c) of the Federal Rules of Civil Procedure.

**<u>ANSWER</u>:**

To the extent allegations of this paragraph are directed at the BP Parties, the BP Parties adopt and incorporate by reference all pleadings and motions filed in response to any matter that Transocean purports to incorporate by reference, including but not limited to Document 1440, the BP Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) & 12(b)(6) Plaintiffs' First Amended Master Complaint, Cross-Claim, and Third-Party Complaint for Private Economic Losses Filed in Accordance with PTO No. 11 (CMO No. 1), Section III.B1 ("B1 Bundle") (hereafter "BP's Motion to Dismiss B1 Bundle Complaint"), filed and served on all counsel on February 28, 2011, Document 1406, the BP Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) & 12(b)(6) Master Complaint in Accordance With PTO No. 11 [Case Management Order No. 1] Section III.B(3) ["Pleading Bundle B3"] (hereafter "BP's Motion to

Dismiss B3 Bundle Complaint"), filed and served on all counsel on February 28, 2011, Document 1786, the BP Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) & 12(b)(6) Complaints Filed By Certain Governmental Entities in Pleading Bundle C (hereafter "BP's Motion to Dismiss Governmental Entities"), filed and served on all counsel on March 28, 2011, and Document 1441, the BP Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), and 12(b)(7) the Master Complaint for Injunctive Relief Claims Against Private Parties, Filed in Accordance with PTO No. 11 (CMO No.1), Section III (D1) ("D1 Bundle") (hereafter "BP's Motion to Dismiss D1 Bundle Complaint"), filed and served on all counsel on February 28, 2011.  To the extent any more specific response is required to any purportedly incorporated allegations, the BP Parties deny them unless expressly admitted in a pleading responsive to any document from which Transocean has purportedly incorporated allegations.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

56.    The allegations and contentions which have been asserted against Cross-Defendants Anadarko E&P, Anadarko, MOEX Offshore, MOEX USA and MOECO by the Bundle A, B, C and D Claimant(s) in their Claims, including, but not limited to the allegations and contentions set forth in the First Amended Master Complaint, Cross-Claim and Third-Party Complaint for private economic losses in accordance with PTO No. 11 [CMO No. 1] Section III.B(1) ["B1 Bundle"] **Dkt. No. 1128**, the First Amended Master Complaint in accordance with PTO No. 11 [CMO No. 1] Section III.B(3) ["B3 Bundle"] **Dkt. 1812**, and the Local Government Entity Voluntary Master Complaint, Cross-Claim, and Third-Party Complaint, **Dkt. No. 1510**, are incorporated herein for more particular reference, as if set forth herein, and are adopted by Transocean pursuant to Rule 10(c) of the Federal Rules of Civil Procedure.

**ANSWER:**

To the extent allegations of this paragraph are directed at the BP Parties, the BP Parties adopt and incorporate by reference all pleadings and motions filed in response to any matter that Transocean purports to incorporate by reference, including but not limited to BP's Motion to Dismiss B1 Bundle Complaint, BP's Motion to Dismiss B3 Bundle Complaint, BP's Motion to

Dismiss Governmental Entities, and BP's Motion to Dismiss D1 Bundle Complaint.  To the

extent any more specific response is required to any purportedly incorporated allegations, the BP

Parties deny them unless expressly admitted in a pleading responsive to any document from

which Transocean has purportedly incorporated allegations.  The BP Parties lack knowledge or

information sufficient to form a belief about the truth of the remaining allegations of this

paragraph, and therefore deny them.

57.    The allegations and contentions which have been asserted against Cross-
Defendant Cameron by the Bundle A, B, C and D Claimant(s) in their Claims, including, but
not limited to the allegations and contentions set forth in the First Amended Master
Complaint, Cross-Claim and Third-Party Complaint for private economic losses in accordance
with PTO No. 11 [CMO No. 1] Section III.B(1) ["B1 Bundle"] **Dkt. No. 1128**, the First
Amended Master Complaint in accordance with PTO No. 11 [CMO No. 1] Section III.B(3) ["B3
Bundle"] **Dkt. 1812**, and the Local Government Entity Voluntary Master Complaint,
Cross-Claim, and Third-Party Complaint, **Dkt. No. 1510**, are incorporated herein by
reference, as if set forth herein, and are adopted by Transocean pursuant to Rule 10(c) of the
Federal Rules of Civil Procedure.

**ANSWER:**

To the extent allegations of this paragraph are directed at the BP Parties, the BP Parties

adopt and incorporate by reference all pleadings and motions filed in response to any matter that

Transocean purports to incorporate by reference, including but not limited to BP's Motion to

Dismiss B1 Bundle Complaint, BP's Motion to Dismiss B3 Bundle Complaint, BP's Motion to

Dismiss Governmental Entities, and BP's Motion to Dismiss D1 Bundle Complaint.  To the

extent any more specific response is required to any purportedly incorporated allegations, the BP

Parties deny them unless expressly admitted in a pleading responsive to any document from

which Transocean has purportedly incorporated allegations.  The BP Parties lack knowledge or

information sufficient to form a belief about the truth of the remaining allegations of this

paragraph, and therefore deny them.

58.     The allegations and contentions which have been asserted against Cross-Defendants Weatherford by the Bundle A, B, C and D Claimant(s) in their Claims, including, but not limited to the allegations and contentions set forth in the First Amended Master Complaint, Cross-Claim and Third-Party Complaint for private economic losses in accordance with PTO No. 11 [CMO No. 1] Section III.B(1) ["B1 Bundle"] **Dkt. No. 1128**, the First Amended Master Complaint in accordance with PTO No. 11 [CMO No. 1] Section III.B(3) ["B3 Bundle"] **Dkt. 1812**, and the Local Government Entity Voluntary Master Complaint, Cross-Claim, and Third-Party Complaint, **Dkt. No. 1510**, are incorporated herein by reference, as if set forth herein, and are adopted by Transocean pursuant to Rule 10(c) of the Federal Rules of Civil Procedure.

**ANSWER:**

To the extent allegations of this paragraph are directed at the BP Parties, the BP Parties adopt and incorporate by reference all pleadings and motions filed in response to any matter that Transocean purports to incorporate by reference, including but not limited to BP's Motion to Dismiss B1 Bundle Complaint, BP's Motion to Dismiss B3 Bundle Complaint, BP's Motion to Dismiss Governmental Entities, and BP's Motion to Dismiss D1 Bundle Complaint.  To the extent any more specific response is required to any purportedly incorporated allegations, the BP Parties deny them unless expressly admitted in a pleading responsive to any document from which Transocean has purportedly incorporated allegations.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

59.     The allegations and contentions which have been asserted against Cross-Defendant Halliburton by the Bundle A, B, C and D Claimant(s) in their Claims, including, but not limited to the allegations and contentions set forth in the First Amended Master Complaint, Cross-Claim and Third-Party Complaint for private economic losses in accordance with PTO No. 11 [CMO No. 1] Section III(B1) ["B1 Bundle"] **Dkt. No. 1128**, the First Amended Master Complaint in accordance with PTO No. 11 [CMO No. 1] Section III.B(3) ["B3 Bundle"] **Dkt. 1812**, and the Local Government Entity Voluntary Master Complaint, Cross-Claim, and Third-Party Complaint, **Dkt. No. 1510**, are incorporated herein by reference, as if set forth herein, and are adopted by Transocean pursuant to Rule 10(c) of the Federal Rules of Civil Procedure.

**ANSWER:**

To the extent allegations of this paragraph are directed at the BP Parties, the BP Parties adopt and incorporate by reference all pleadings and motions filed in response to any matter that Transocean purports to incorporate by reference, including but not limited to BP's Motion to Dismiss B1 Bundle Complaint, BP's Motion to Dismiss B3 Bundle Complaint, BP's Motion to Dismiss Governmental Entities, and BP's Motion to Dismiss D1 Bundle Complaint. To the extent any more specific response is required to any purportedly incorporated allegations, the BP Parties deny them unless expressly admitted in a pleading responsive to any document from which Transocean has purportedly incorporated allegations. The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

60.    The allegations and contentions which have been asserted against Cross-Defendant M-I by the Bundle A, B, C and D Claimant(s) in their Claims, including, but not limited to the allegations and contentions set forth in the First Amended Master Complaint, Cross-Claim and Third-Party Complaint for private economic losses in accordance with PTO No. 11 [CMO No. 1] Section III.B(1) ["B1 Bundle"] **Dkt. No. 1128**, the First Amended Master Complaint in accordance with PTO No. 11 [CMO No. 1] Section III.B(3) ["B3 Bundle"] **Dkt. 1812**, and the Local Government Entity Voluntary Master Complaint, Cross-Claim, and Third-Party Complaint, **Dkt. No. 1510**, are incorporated herein by reference, as if set forth herein, and are adopted by Transocean pursuant to Rule 10(c) of the Federal Rules of Civil Procedure.

**ANSWER:**

To the extent allegations of this paragraph are directed at the BP Parties, the BP Parties adopt and incorporate by reference all pleadings and motions filed in response to any matter that Transocean purports to incorporate by reference, including but not limited to BP's Motion to Dismiss B1 Bundle Complaint, BP's Motion to Dismiss B3 Bundle Complaint, BP's Motion to Dismiss Governmental Entities, and BP's Motion to Dismiss D1 Bundle Complaint. To the extent any more specific response is required to any purportedly incorporated allegations, the BP

Parties deny them unless expressly admitted in a pleading responsive to any document from which Transocean has purportedly incorporated allegations.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

61.     The allegations and contentions which have been asserted against Cross-Defendant DrilQuip by the Bundle A, B, C and D Claimant(s) in the Petitions, Complaints and/or Short-Form Joinders filed as a result of the Incident of April 20, 2010 and/or the BP Oil Spill are incorporated herein by reference, as if set forth herein, and are adopted by Transocean pursuant to Rule 10(c) of the Federal Rules of Civil Procedure.

**ANSWER:**

To the extent allegations of this paragraph are directed at the BP Parties, the BP Parties adopt and incorporate by reference all pleadings and motions filed in response to any matter that Transocean purports to incorporate by reference, including but not limited to BP's Motion to Dismiss B1 Bundle Complaint, BP's Motion to Dismiss B3 Bundle Complaint, BP's Motion to Dismiss Governmental Entities, and BP's Motion to Dismiss D1 Bundle Complaint.  To the extent any more specific response is required to any purportedly incorporated allegations, the BP Parties deny them unless expressly admitted in a pleading responsive to any document from which Transocean has purportedly incorporated allegations.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

62.     The allegations and contentions which have been asserted against the Responder Cross-Defendants by the Bundle A, B, C and D Claimant(s) in their Claims, including, but not limited to the allegations and contentions set forth in the First Amended Master Complaint in accordance with PTO No. 11 [CMO No. 1] Section III.B(3) ["B3 Bundle"] **Dkt. No. 1812**, are incorporated herein by reference, as if set forth herein, and are adopted by Transocean pursuant to Rule 10(c) of the Federal Rules of Civil Procedure.

**ANSWER:**

To the extent allegations of this paragraph are directed at the BP Parties, the BP Parties adopt and incorporate by reference all pleadings and motions filed in response to any matter that Transocean purports to incorporate by reference, including but not limited to BP's Motion to Dismiss B1 Bundle Complaint, BP's Motion to Dismiss B3 Bundle Complaint, BP's Motion to Dismiss Governmental Entities, and BP's Motion to Dismiss D1 Bundle Complaint.  To the extent any more specific response is required to any purportedly incorporated allegations, the BP Parties deny them unless expressly admitted in a pleading responsive to any document from which Transocean has purportedly incorporated allegations.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

63.     The allegations and contentions which have been asserted against Cross-Defendant Nalco by the Bundle A, B, C and D Claimant(s) in their Claims, including, but not limited to the allegations and contentions set forth in the First Amended Master Complaint in accordance with PTO No. 11 [CMO No. 1] Section III.B(3) ["B3 Bundle"] **Dkt. No. 1812**, are incorporated herein by reference, as if set forth herein, and are adopted by Transocean pursuant to Rule 10(c) of the Federal Rules of Civil Procedure.

**ANSWER:**

To the extent allegations of this paragraph are directed at the BP Parties, the BP Parties adopt and incorporate by reference all pleadings and motions filed in response to any matter that Transocean purports to incorporate by reference, including but not limited to BP's Motion to Dismiss B1 Bundle Complaint, BP's Motion to Dismiss B3 Bundle Complaint, BP's Motion to Dismiss Governmental Entities, and BP's Motion to Dismiss D1 Bundle Complaint.  To the extent any more specific response is required to any purportedly incorporated allegations, the BP Parties deny them unless expressly admitted in a pleading responsive to any document from which Transocean has purportedly incorporated allegations.  The BP Parties lack knowledge or

information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

64.     As to the United States of America, the Bundle A, B, C and D Claimant(s) and Transocean are entitled to a Declaration regarding the relative fault of the United States of America. By filing this Rule 13 Cross-Claim/Counter-Claim, the Transocean does not seek a recovery of money damages against the United States of America. As the Court has indicated that all fault determinations will be made in the trial of this matter during the Spring, 2012, this Court announced timetable has necessitated this pleading, and it should not be interpreted as Transocean's failure to acknowledge the discretionary function and sovereign immunity rights of the United States.

In addition to the above recited allegations as to the United States of America, and to the extent necessary to preserve Transocean's rights, Transocean has served notice of its affirmative defense in *United States of America v. BP Exploration & Production Inc., et al.*, 2:10-cv-04536 (E.D. La. 2010) (filed December 15, 2010), that the Incident of April 20, 2010 and the BP Oil Spill and any resulting damages therefrom may have been caused in part by the comparative fault and/or negligence of the United States of America. As such, Transocean is entitled to a credit, set-off and/or recoupment with respect to any monetary claim of the United States of America against Transocean to the extent that Transocean is held liable to any person or entity, either in that action, or in any other action, arising from the Incident of April 20, 2010 or the BP Oil Spill, for any amounts attributable to the comparable fault and/or negligence of the United States of America. Transocean seeks only to reserve any right to apportionment of fault in any appropriate procedure, and to obtain contribution through a credit, set-off, and recoupment based on such apportionment. And, to the extent a formal claim rather than affirmative defense in the above referenced pleadings is necessary to preserve such right to obtain contribution through a credit, set-off and/or recoupment, Transocean reserves its rights to file an affirmative claim against the United States of America.

**ANSWER:**

To the extent allegations of this paragraph are directed at the BP Parties, the BP Parties adopt and incorporate by reference all pleadings and motions filed in response to any matter that Transocean purports to incorporate by reference.  To the extent any more specific response is required to any purportedly incorporated allegations, the BP Parties deny them unless expressly admitted in a pleading responsive to any document from which Transocean has purportedly incorporated allegations.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

65.     The true facts and circumstances regarding the Incident of April 20, 2010 and the BP Oil Spill are that the April 20, 2010 incident and the BP Oil Spill were caused not by any negligent acts, omissions, or culpable conduct of Transocean, but were caused in whole or in part by the negligent acts, omissions or culpable conduct of the Cross-Defendants, and/or the breach of warranties of workmanlike performance of the Cross-Defendants, and/or by conditions for which the Cross-Defendants are strictly liable under law, and as a result, the losses and damages alleged to have been sustained by the Bundles A, B, C and D Claimants were proximately caused by the Cross-Defendants.

**ANSWER:**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the

BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the

truth of the remaining allegations of this paragraph, and therefore deny them.

66.     Each of the Cross-Defendants named herein is jointly, severally, and/or solidarily liable under various principles of the general maritime law and/or applicable state and/or applicable federal tort law.

**ANSWER:**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the

BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the

truth of the remaining allegations of this paragraph, and therefore deny them.

## COUNT 1 – INDEMNITY

**Applies to All Cross-Defendants[5]**
**Applies to All Bundle A, B, C and D Claims**

---

[5] With respect to the BP Cross-Defendants, Transocean's Rule 13 Cross-Claim/Counter-Claim is filed subject to, and without waiver of, Transocean's rights to invoke and compel arbitration of any and all arbitrable disputes which arise out of or are related to the Drilling Contract dated December 9, 1998 between Transocean Holdings LLC and BP America Production Company.

**ANSWER:**

The BP Parties deny that any of Transocean's claims, cross-claims, or counter-claims in this matter are arbitrable disputes under the Drilling Contract.  The BP Parties are not pursuing any arbitration rights they have under the Drilling Contract and Transocean has, by its conduct in this Court, waived any claimed right to arbitrate any aspect of the parties' dispute.

67.     Transocean incorporates all previous paragraphs 1-66 set out above as if completely restated herein.

**ANSWER:**

The BP Parties incorporate all previous answers to paragraphs 1-66 set out above as if completely restated herein.

68.     Transocean alleges further that, pursuant to the general maritime law, Transocean is entitled to indemnity against Cross-Defendants for any amount Transocean may be held liable to pay in judgment and/or settlement to, or as a result of, the Bundle A, B, C and D Claimants' Claims, together with pre- and post-judgment interest, plus Court costs and attorneys' fees for defending the Bundle A, B, C and D Claimants' Claims, and attorneys' fees and Court costs for pursuing this Cross-Claim/Counter-Claim. In the unlikely event that the general maritime law is held not to apply, Transocean is entitled to indemnity against Cross-Defendants under state law.

**ANSWER:**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

## COUNT 2 – CONTRIBUTION/COMPARATIVE FAULT

### Applies to All Cross-Defendants[6]
### Applies to All Bundle A, B, C and D Claims

69.     Transocean incorporates all previous paragraphs 1-66 set out above as if completely restated herein.

---

[6] With respect to the BP Cross-Defendants, Transocean's Rule 13 Cross-Claim/Counter-Claim is filed subject to, and without waiver of, Transocean's rights to invoke and compel arbitration of any and all arbitrable disputes which arise out of or are related to the Drilling Contract dated December 9, 1998 between Transocean Holdings LLC and BP America Production Company.

**ANSWER:**

The BP Parties deny that any of Transocean's claims, cross-claims, or counter-claims in this matter are arbitrable disputes under the Drilling Contract.  The BP Parties are not pursuing any arbitration rights they have under the Drilling Contract and Transocean has, by its conduct in this Court, waived any claimed right to arbitrate any aspect of the parties' dispute.

**ANSWER:**

The BP Parties incorporate all previous answers to paragraphs 1-66 set out above as if completely restated herein.

70.     Transocean alleges further that, pursuant to the general maritime law, Transocean is entitled to contribution or a finding of comparative fault against Cross-Defendants for any amount Transocean may be held liable to pay in judgment and/or settlement to, or as a result of, the Bundle A, B, C and D Claimants' Claims, together with pre- and post-judgment interest, plus Court costs and attorneys' fees for defending the Bundle A, B, C and D Claimants' Claims, and attorneys' fees and Court costs for pursuing this Cross-Claim/Counter-Claim. In the unlikely event that the general maritime law is held not to apply, Transocean is entitled to contribution or a finding of comparative fault against Cross-Defendants under state law.

**ANSWER:**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

## COUNT 3 – BREACH OF WARRANTY OF WORKMANLIKE PERFORMANCE

### Applies to Cross-Defendants Halliburton and M-I

### Applies to All Bundle A, B, C and D Claims

71.     Transocean incorporates all previous paragraphs 1-66 set out above as if completely restated herein.

**ANSWER:**

The BP Parties incorporate all previous answers to paragraphs 1-66 set out above as if completely restated herein.

72.     Transocean further incorporates the contentions and allegations asserted against Halliburton and M-I by the "Plaintiffs" in the First Amended Master Complaint, Cross-Claim, and Third-Party Complaint for Private Economic Losses In Accordance With PTO No. 11 [CMO No. 1] Section III.B(1) ["B1 Bundle"], **Dkt. No. 1128,** the First Amended Master

Complaint In Accordance With PTO No. 11 [CMO No. 1] Section III.B(3) ["B3 Bundle"] **Dkt. No. 1812** and the Local Government Entity Voluntary Master Complaint, Cross-Claim and Third-Party Complaint, **Dkt. 1510**, as if set forth specifically herein.

**ANSWER:**

To the extent allegations of this paragraph are directed at the BP Parties, the BP Parties adopt and incorporate by reference all pleadings and motions filed in response to any matter that Transocean purports to incorporate by reference, including but not limited to BP's Motion to Dismiss B1 Bundle Complaint, BP's Motion to Dismiss B3 Bundle Complaint, BP's Motion to Dismiss Governmental Entities, and BP's Motion to Dismiss D1 Bundle Complaint.  To the extent any more specific response is required to any purportedly incorporated allegations, the BP Parties deny them unless expressly admitted in a pleading responsive to any document from which Transocean has purportedly incorporated allegations.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

73.     Transocean alleges further that, pursuant to the general maritime law, Cross-Defendants Halliburton and M-I owed express and/or implied warranties of workmanlike performance to Transocean with respect to the services which they performed onboard the *Deepwater Horizon.* Transocean further alleges that the services which Cross-Defendants Halliburton and M-I performed aboard the *Deepwater Horizon* were not performed in a workmanlike manner. Accordingly, Cross-Defendants Halliburton and M-I are liable to Transocean on the basis of the breach of these express and/or implied warranties of workmanlike performance by these Cross- Defendants, for any amount Transocean may be held liable to pay in judgment and/or settlement to, or as a result of, the Bundle A, B, C and D Claimants' Claims, together with pre- and post- judgment interest, plus Court costs and attorneys' fees for defending the Bundle A, B, C and D Claimants' Claims, and attorneys' fees and Court costs for pursuing this Cross-Claim/Counter-Claim.

**ANSWER:**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

## COUNT 4 – STRICT LIABILITY FOR MANUFACTURING AND DESIGN DEFECT

### Applies to Cameron, Weatherford, Weatherford International and Dril-Quip

### Applies to All Bundle A, B, C and D Claims

74.     Transocean reiterates all previous paragraphs 1-66 set out above as if completely restated herein.

**ANSWER:**

The BP Parties incorporate all previous answers to paragraphs 1-66 set out above as if completely restated herein.

75.     Transocean further incorporates the contentions and allegations asserted against Cameron, Weatherford and Weatherford International by the "Plaintiffs" in the First Amended Master Complaint, Cross-Claim, and Third-Party Complaint For Private Economic Losses In Accordance With PTO No. 11 [CMO No. 1] Section III.B(1) ["B1 Bundle"] **Dkt. No. 1128,** the allegations of the First Amended Master Complaint In Accordance With PTO No. 11 [CMO No. 1] Section III.B(3) ["B3 Bundle"] **Dkt. No. 1812,** and the Local Government Entity Voluntary Master Complaint, Cross-Claim and Third-Party Complaint, **Dkt. 1510,** as if set forth specifically herein. Transocean further incorporates the contentions and allegations pertaining to Dril-Quip in paragraph LX, as if set forth specifically herein.

**ANSWER:**

To the extent allegations of this paragraph are directed at the BP Parties, the BP Parties adopt and incorporate by reference all pleadings and motions filed in response to any matter that Transocean purports to incorporate by reference, including but not limited to BP's Motion to Dismiss B1 Bundle Complaint, BP's Motion to Dismiss B3 Bundle Complaint, BP's Motion to Dismiss Governmental Entities, and BP's Motion to Dismiss D1 Bundle Complaint.  To the extent any more specific response is required to any purportedly incorporated allegations, the BP Parties deny them unless expressly admitted in a pleading responsive to any document from which Transocean has purportedly incorporated allegations.  The BP Parties lack knowledge or

information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

76.     Transocean alleges further that Cross-Defendant Cameron is liable to Transocean for its defective design and/or manufacture of the BOP pursuant to Section 402A of the Restatement (Second) of Torts, as adopted by maritime law. Accordingly, Transocean is entitled to recover against Cross-Defendants for any amount Transocean may be liable to pay in judgment and/or settlement to, or as a result of, the Bundle A, B, C and D Claimants' Claims, together with pre- and post-judgment interest, plus Court costs and attorneys' fees for defending the Bundle A, B, C and D Claimants' Claims, and attorneys' fees and Court costs for pursuing this Cross-Claim/Counter-Claim.

**ANSWER:**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

77.     Alternatively, in the unlikely event that maritime law is held not to apply, Cameron is liable to Transocean for its defective design and/or manufacture of the BOP, under the Louisiana Products Liability Act (La. Rev. St. Ann. § 9.2800.51, *et seq.),* the Texas Products Liability Act of 1993 (Tex. Civ. Prac. & Rem. Code Ann. § 82.002, *et seq.),* the Mississippi Products Liability Act (Miss. Code Ann. § 11-1-63); the Alabama Extended Manufacturer's Liability Doctrine; and/or Florida law.

**ANSWER:**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

78.     Transocean alleges further that Cross-Defendant Weatherford is liable to Transocean for its defective design and/or manufacture of the float collar pursuant to Section 402A of the Restatement (Second) of Torts, as adopted by maritime law. Accordingly, Transocean is entitled to recover against Cross-Defendants for any amount Transocean may be liable to pay in judgment and/or settlement to, or as a result of, the Bundle A, B, C and D Claimants' Claims, together with pre- and post-judgment interest, plus Court costs and attorneys' fees for defending the Bundle A, B, C and D Claimants' Claims, and attorneys' fees and Court costs for pursuing this Cross-Claim/Counter-Claim.

**ANSWER:**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

79.     Alternatively, in the unlikely event that maritime law is held not to apply, Weatherford is liable to Transocean for its defective design and/or manufacture of the float collar, under the Louisiana Products Liability Act (La. Rev. St. Ann. § 9.2800.51, *et seq.),* the Texas Products Liability Act of 1993 (Tex. Civ. Prac. & Rem. Code Ann. § 82.002, *et seq.),* the Mississippi Products Liability Act (Miss. Code Ann. § 11-1-63); the Alabama Extended Manufacturer's Liability Doctrine; and/or Florida law.

**ANSWER:**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

80.     Transocean alleges further that Cross-Defendant Weatherford International is liable to Transocean for its defective design and/or manufacture of the float collar pursuant to Section 402A of the Restatement (Second) of Torts, as adopted by maritime law. Accordingly, Transocean is entitled to recover against Cross-Defendants for any amount Transocean may be liable to pay in judgment and/or settlement to, or as a result of, the Bundle A, B, C and D Claimants' Claims, together with pre- and post-judgment interest, plus Court costs and attorneys' fees for defending the Bundle A, B, C and D Claimants' Claims, and attorneys' fees and Court costs for pursuing this Cross-Claim/Counter-Claim.

**ANSWER:**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

81.     Alternatively, in the unlikely event that maritime law is held not to apply, Weatherford International is liable to Transocean for its defective design and/or manufacture of the float collar, under the Louisiana Products Liability Act (La. Rev. St. Ann. § 9.2800.51, *et seq.),* the Texas Products Liability Act of 1993 (Tex. Civ. Prac. & Rem. Code Ann. §

82.002, *et seq.),* the Mississippi Products Liability Act (Miss. Code Ann. § 11-1-63); the Alabama Extended Manufacturer's Liability Doctrine; and/or Florida law.

**ANSWER:**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

82.    Transocean alleges further that Cross-Defendant Dril-Quip is liable to Transocean for its defective design and/or manufacture of the wellhead systems pursuant to Section 402A of the Restatement (Second) of Torts, as adopted by maritime law. Accordingly, Transocean is entitled to recover against Cross-Defendants for any amount Transocean may be liable to pay in judgment and/or settlement to, or as a result of, the Bundle A, B, C and D Claimants' Claims, together with pre- and post-judgment interest, plus Court costs and attorneys' fees for defending the Bundle A, B, C and D Claimants' Claims, and attorneys' fees and Court costs for pursuing this Cross-Claim/Counter-Claim.

**ANSWER:**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

83.    Alternatively, in the unlikely event that maritime law is held not to apply, Dril-Quip is liable to Transocean for its defective design and/or manufacture of the wellhead systems, under the Louisiana Products Liability Act (La. Rev. St. Ann. § 9.2800.51, *et seq.),* the Texas Products Liability Act of 1993 (Tex. Civ. Prac. & Rem. Code Ann. § 82.002, *et seq.),* the Mississippi Products Liability Act (Miss. Code Ann. § 11-1-63); the Alabama Extended Manufacturer's Liability Doctrine; and/or Florida law.

**ANSWER:**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

## COUNT 5 – CONTRIBUTION UNDER OPA

**Applies to All Cross-Defendants[7]**
**Applies to All Bundle B1, B3, C and D Claims**

84.     Transocean incorporates all previous paragraphs 1-66 set out above as if completely restated herein.

**ANSWER:**

The BP Parties incorporate all previous answers to paragraphs 1-66 set out above as if

completely restated herein.

85.     Transocean alleges further that, pursuant to 33 U.S.C. § 2709, Transocean is entitled to contribution against the Cross-Defendants under the provisions of OPA, 33 U.S.C. § 2701, *et seq.*, for any amounts Transocean may be held liable to pay in judgment and/or settlement to, or as a result of, the Bundle B1, B3, C and D Claimants' Claims, together with pre- and post- judgment interest, plus Court costs and attorneys' fees for defending the Bundle B1, B3, C and D Claimants' Claims, and attorneys' fees and Court costs for pursuing this Cross-Claim/Counter-Claim.

**ANSWER:**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the

BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the

truth of the remaining allegations of this paragraph, and therefore deny them.

---

[7] With respect to the BP Cross-Defendants, Transocean's Rule 13 Cross-Claim/Counter-Claim is filed subject to, and without waiver of, Transocean's rights to invoke and compel arbitration of any and all arbitrable disputes which arise out of or are related to the Drilling Contract dated December 9, 1998 between Transocean Holdings LLC and BP America Production Company.

**ANSWER:**

The BP Parties deny that any of Transocean's claims, cross-claims, or counter-claims in this matter are arbitrable disputes under the Drilling Contract.  The BP Parties are not pursuing any arbitration rights they have under the Drilling Contract and Transocean has, by its conduct in this Court, waived any claimed right to arbitrate any aspect of the parties' dispute.

## COUNT 6 – SUBROGATION UNDER OPA

**Applies to All Cross-Defendants[8]**
**Applies to All Bundle B1, B3, C and D Claims**

86.    Transocean reiterates all previous paragraphs 1-66 set out above as if completely restated herein.

**ANSWER:**

The BP Parties incorporate all previous answers to paragraphs 1-66 set out above as if

completely restated herein.

87.    Transocean alleges further that, pursuant to 33 U.S.C. § 2702(d)(1)(A) and (B), to the extent that Transocean has been designated by the United States Coast Guard to be a responsible party under OPA, and to the extent that Transocean pays or has paid any removal costs and/or damages in accordance with 33 U.S.C. § 2713 to any Claimant as a result of the BP Oil Spill or as a result of the release of diesel from the surface, Transocean is entitled to recover from the Cross-Defendants a sum equal to the amount of any payments made by Transocean to any Claimant for removal costs or damages. In the alternative, Transocean is entitled to recover from the Cross-Defendants pursuant to 33 U.S.C. § 2715 under any other law.

**ANSWER:**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the

BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the

truth of the remaining allegations of this paragraph, and therefore deny them.

---

[8] With respect to the BP Cross-Defendants, Transocean's Rule 13 Cross-Claim/Counter-Claim is filed subject to, and without waiver of, Transocean's rights to invoke and compel arbitration of any and all arbitrable disputes which arise out of or are related to the Drilling Contract dated December 9, 1998 between Transocean Holdings LLC and BP America Production Company.

**ANSWER:**

The BP Parties deny that any of Transocean's claims, cross-claims, or counter-claims in this matter are arbitrable disputes under the Drilling Contract.  The BP Parties are not pursuing any arbitration rights they have under the Drilling Contract and Transocean has, by its conduct in this Court, waived any claimed right to arbitrate any aspect of the parties' dispute.

## COUNT 7 – BREACH OF EXPRESS CONTRACT

### Applies to BP Cross-Defendants
### Applies to All Bundle A, B, C and D Claims

88.    Transocean's Rule 13 Cross-Claim/Counter-Claim is filed subject to, and without waiver of, Transocean's rights to invoke and compel arbitration of any and all arbitrable disputes which arise out of or are related to the Drilling Contract dated December 9, 1998 between Transocean Holdings LLC and BP America Production Company.

**ANSWER:**

The BP Parties deny that any of Transocean's claims, cross-claims, or counter-claims in

this matter are arbitrable disputes under the Drilling Contract.  The BP Parties are not pursuing

any arbitration rights they have under the Drilling Contract and Transocean has, by its conduct in

this Court, waived any claimed right to arbitrate any aspect of the parties' dispute.

89.    Subject to its reservation of rights set forth in Footnote 1, page 1 of this Cross-Claim/Counter-Claim, Transocean reiterates all previous paragraphs I-LXIV set out above as if completely restated herein.

**ANSWER:**

The BP Parties reiterate all answers to previous paragraphs I-LXIV set out above as if

completely restated herein.

90.    On or about December 9, 1998, Vastar Resources, Inc., the predecessor of BP America, and R&B Falcon Drilling Co., the predecessor of Transocean Holdings, entered into the "Drilling Contract for RBS – 8D", which vessel was later known as the *Deepwater Horizon.*

**ANSWER:**

The BP Parties admit the allegations of this paragraph.

91.    The Drilling Contract was amended on numerous occasions between December 9, 1998 and April 20, 2010.

**ANSWER:**

The BP Parties admit the allegations of this paragraph.

92.     Pursuant to the terms of the Drilling Contract dated December 9, 1998 between Transocean Holdings LLC and BP America Production Company, Transocean brings this action against BP for breach of express contract.

**ANSWER:**

The BP Parties admit that Transocean brought this action against BP.  The BP Parties

deny Transocean's claims against the BP Parties are valid.

93.     This count concerns the failure of BP to honor its contractual commitments to Transocean arising from the Incident of April 20, 2010 and the BP Oil Spill.

**ANSWER:**

The BP Parties deny the allegations of this paragraph.

94.     The Drilling Contract contains reciprocal obligations to "protect, release, defend, indemnify and hold harmless." Article 21.1 requires Transocean to defend and indemnify BP and hold it harmless for all claims for personal injury or death of Transocean personnel, regardless of whether those claims arise in whole or in part from BP's negligence. Article 21.2, in turn, requires BP to defend and indemnify Transocean and hold it harmless for all claims for personal injury or death of BP personnel, or third-party personnel (employees of non-Transocean contractors) regardless of whether those claims arise in whole or in part from Transocean's negligence. In addition, Article 24 requires BP to defend and indemnify Transocean and hold it harmless for all claims for pollution or contamination, including control and removal thereof (except with respect to discharges originating on or above the surface of the land or water).

**ANSWER:**

The BP Parties admit the existence of a Drilling Contract, as amended, the text of which

speaks for itself.  The BP Parties deny the remaining allegations of this paragraph.

95.     The reciprocal indemnity obligations in the Drilling Contract are broad and comprehensive. Article 24.2, for example, states in pertinent part that BP "shall assume full responsibility for and shall protect, release, defend, indemnify, and hold [Transocean] harmless from and against any loss, damage, expense, claim, fine, penalty, demand, or liability for pollution or contamination, including control and removal thereof, arising out of or connected with operations under this Contract hereunder and not assumed by Contractor in Article 24.1 above, without regard for negligence of any party or parties and specifically without regard for whether the pollution or contamination is caused in whole or in part by the negligence or fault of Contractor."

**ANSWER:**

The BP Parties admit the existence of a Drilling Contract, as amended, the text of which speaks for itself.  The BP Parties deny the remaining allegations of this paragraph.

96.    Article 25.1 provides that "the parties intend and agree that the phrase "shall protect, release, defend, indemnify and hold harmless" means that the indemnifying party shall protect, release, defend, indemnify, and hold harmless the indemnified party or parties from and against any and all claims, demands, causes of action, damages, costs, expenses (including reasonable attorneys fees), judgments and awards of any kind or character ..." Article 25 further provides that the obligations of the indemnifying party apply:

1.    "without limit and without regard to the cause or causes;"

2.    "without regard to ... preexisting conditions, whether such conditions be patent or latent, the unseaworthiness of any vessel or vessels (including the drilling unit), breach of representation or warranty, expressed or implied, breach of contract, strict liability, tort or the negligence of any person or persons;" and

3.    "without regard to ... the negligence of any person or persons, including that of the indemnified party ...whether such negligence be sole, joint or concurrent, active, passive or gross or any other theory of legal liability."

**ANSWER:**

The BP Parties admit the existence of a Drilling Contract, as amended, the text of which speaks for itself.  The BP Parties deny the remaining allegations of this paragraph.

97.    Transocean has honored its contractual obligations to BP and has offered to defend and indemnify BP and its subcontractors and hold them harmless for the personal injury or death claims of Transocean personnel that arose from the Incident of April 20, 2010, notwithstanding claims that the Incident of April 20, 2010 resulted from BP's negligence and/or gross negligence. Despite Transocean's repeated requests, however, BP has reserved its rights and to date has refused to confirm in writing that it will honor its contractual obligations to Transocean, including BP's obligation to defend and indemnify Transocean and hold it harmless for claims for pollution or contamination, as well as for claims for personal injury or death of BP or third- party personnel.

**ANSWER:**

The BP Parties deny the allegations of this paragraph.

98.     On or about September 2009, BP America and Transocean Holdings entered into Amendment No. 38 to the Drilling Contract. Amendment No. 38 states that its provisions become effective on the "Renewal Date," which is defined as September 18, 2010. Among other changes, Amendment No. 38 amends the indemnity provisions of the Drilling Contract.

**ANSWER:**

The BP Parties admit the existence of a Drilling Contract, as amended, the text of which

speaks for itself.  The BP Parties deny the remaining allegations of this paragraph.

99.     BP is required to defend and indemnify Transocean and hold it harmless with respect to claims for pollution or contamination, and claims for personal injury or death of BP personnel, irrespective of whether the governing indemnity provisions are those in the original Drilling Contract or those in the Drilling Contract as amended by Amendment No. 38.

**ANSWER:**

The BP Parties deny the allegations of this paragraph.

100.     Article 21 .5(b)(ii) of the Drilling Contract, as amended by Amendment No. 38, provides in pertinent part that "[BP] shall assume all responsibility for, including control, clean-up and removal of and shall release, defend, indemnify and hold harmless [Transocean] from all CLAIMS, however caused and arising in relation to pollution or contamination which may result from fire, blow-out, cratering, seepage, or any other uncontrolled flow of oil, gas, wastes or other substance from any WELL arising out of the CONTRACT."

**ANSWER:**

The BP Parties admit the existence of a Drilling Contract, as amended, the text of which

speaks for itself.  The BP Parties deny the remaining allegations of this paragraph.

101.     Article 21.3(c) of the Drilling Contract, as amended by Amendment No. 38, provides in pertinent part that "[BP] shall release, defend, indemnify and hold [Transocean] harmless ... from and against any and all liability for sickness, injury, or death to any of COMPANY GROUP personnel arising out of the CONTRACT or in tort and against all CLAIMS resulting therefrom."

**ANSWER:**

The BP Parties admit the existence of a Drilling Contract, as amended, the text of which

speaks for itself.  The BP Parties deny the remaining allegations of this paragraph.


102.   Article 21.0 of the Drilling Contract, as amended by Amendment No. 38, provides that CLAIMS "means all claims, liens, liabilities, fines, penalties, judgments, losses, damages, and expenses (including without limitation legal costs and expenses and other costs of defence), and shall, except as otherwise expressly provided, include claims based on contractual indemnity."

**ANSWER:**

The BP Parties admit the existence of a Drilling Contract, as amended, the text of which

speaks for itself.  The BP Parties deny the remaining allegations of this paragraph.


103.   Article 21.8 of the Drilling Contract, as amended by Amendment No. 38, provides in pertinent part that "[t]he release, defense, indemnity and hold harmless obligations as provided in the CONTRACT shall apply whether or not any injury, death, illness, loss or damage is occasioned by or the result in whole or in part of the negligence or fault, whether sole, concurrent, gross, joint, active, or passive, of either PARTY (or any person or entity to whom indemnity is owed), breach of contract, any theory of tort, strict liability, breach of duty (statutory, expressed, implied or otherwise provided in law or equity), breach of warranty (expressed or implied), or WILFUL MISCONDUCT, products liability or any other theory of liability ...."

**ANSWER:**

The BP Parties admit the existence of a Drilling Contract, as amended, the text of which

speaks for itself.  The BP Parties deny the remaining allegations of this paragraph.


104.   The treatment of indemnity for claims for employees of third-party contractors working on the *Deepwater Horizon* differs under the original Drilling Contract and under the Drilling Contract as amended by Amendment No. 38. Under Article 21.2 of the original Drilling Contract, BP is required to indemnify Transocean for claims of personal injury or death of employees of contractors other than Transocean. Under Article 21.3 (a) & (b) of the Drilling Contract as amended by Amendment No. 38, BP is required to indemnify Transocean for sickness, injury or death of any "THIRD PARTY" "to the extent of any negligent act or default on the part of [BP]" while Transocean is required to indemnify BP for sickness, injury or death of any "THIRD PARTY" "to the extent of any negligent act or default on the part of [Transocean]."

**ANSWER:**

The BP Parties admit the existence of a Drilling Contract, as amended, the text of which

speaks for itself.  The BP Parties deny the remaining allegations of this paragraph.


105.    Article 27.3 of the Drilling Contract provides that the termination of the Drilling Contract shall be immediate in the event of actual or constructive total loss of the Drilling Unit.

**ANSWER:**

The BP Parties admit the existence of a Drilling Contract, as amended, the text of which

speaks for itself.  The BP Parties deny the remaining allegations of this paragraph.


106.    Article 27.4 of the Drilling Contract provides that, notwithstanding the termination of the Drilling Contract, the parties shall continue to be bound by the provisions of the contract "that reasonably require some action or forbearance after the expiration" of the Drilling Contract.

**ANSWER:**

The BP Parties admit the existence of a Drilling Contract, as amended, the text of which

speaks for itself.  The BP Parties deny the remaining allegations of this paragraph.


107.    The *Deepwater Horizon* became a total loss when the blowout of the Macondo well on April 20, 2010 caused an explosion and fire aboard the vessel, which then caused the vessel to sink on April 22, 2010.

**ANSWER:**

The BP Parties admit the total loss of the *Deepwater Horizon* as a result of one or more

explosions and/or fires, and the sinking of the vessel.  The BP Parties deny the remaining

allegations of this paragraph.


108.    By virtue of Article 27.4, the parties to the Drilling Contract remain bound by the indemnity provisions of the Drilling Contract.

**ANSWER**:

The BP Parties admit the existence of a Drilling Contract, as amended, the text of which

speaks for itself.  The BP Parties deny the remaining allegations of this paragraph.


109.    Transocean has honored its obligations under the Drilling Contract by offering to
defend and indemnify BP and hold it harmless for all claims for personal injury and death of
Transocean personnel. To date, BP has not accepted this offer.

**ANSWER**:

The BP Parties deny the allegations of this paragraph.


110.    Transocean has timely demanded that BP honor its obligations under the
Drilling Contract to defend and indemnify Transocean and hold it harmless for all claims for
pollution and contamination. To date, BP has stated that it is reserving its rights and has yet to
defend and indemnify Transocean and hold it harmless.

**ANSWER**:

The BP Parties deny the allegations of this paragraph.


111.    Transocean has timely demanded that BP honor its obligations under the
Drilling Contract to defend and indemnify Transocean and hold it harmless for all claims for
personal injury and death of BP and third-party personnel. To date, BP has stated it is
reserving its rights and has yet to defend and indemnify Transocean and hold it harmless.

**ANSWER**:

The BP Parties deny the allegations of this paragraph.


112.    BP's reservation of its rights and its failure to date to confirm in writing that it
will honor its contractual obligations in the Drilling Contract constitute a breach of contract,
proximately resulting in damages to Transocean.

**ANSWER**:

The BP Parties deny the allegations of this paragraph.


113.    As a result of BP's reservation of its rights and its failure to date to confirm in
writing that it will honor its contractual obligation to defend Transocean, Transocean has
incurred and will continue to incur substantial attorneys' fees. As of the present date,

Transocean and/or its insurers have incurred attorneys' fees and expenses in an amount according to proof to defend Transocean against claims that should have been defended by BP.

**ANSWER:**

    The BP Parties deny the allegations of this paragraph.

    114.    Accordingly, Transocean seeks a judgment in Transocean's favor against BP for any amounts Transocean may be held liable to pay in judgment and/or in settlement to, or as a result of (1) any and all Bundle B, C or D Claims pertaining in any way to pollution or contamination, including claims for damages, removal costs, fines and/or penalties; (2) any and all Bundle A Claims for personal injury or death of BP's employees or personnel; and (3) any and all Bundle A Claims for personal injury or death of employees or personnel of Third-Party Contractors.

**ANSWER:**

    The BP Parties deny the allegations of this paragraph.

## COUNT 8 - AFFIRMATIVE DAMAGE CLAIMS
## FOR UNPAID INVOICES FOR USE OF *DEEP WATER HORIZON*

### Applies to BP America and BP Exploration

    115.    Transocean's Rule 13 Cross-Claim/Counter-Claim is filed subject to, and without waiver of, Transocean's rights to invoke and compel arbitration of any and all arbitrable disputes which arise out of or are related to the Drilling Contract dated December 9, 1998 between Transocean Holdings LLC and BP America Production Company.

**ANSWER:**

    The BP Parties deny that any of Transocean's claims, cross-claims, or counter-claims in

this matter are arbitrable disputes under the Drilling Contract.  The BP Parties are not pursuing

any arbitration rights they have under the Drilling Contract and Transocean has, by its conduct in

this Court, waived any claimed right to arbitrate any aspect of the parties' dispute.

    116.    Subject to its reservation of rights set forth in Footnote 1, page 1, of this Cross-Claim/Counter-Claim, Transocean incorporates all previous paragraphs 1-65 set out above as if completely restated herein.

**ANSWER:**

The BP Parties incorporate all previous answers to paragraphs 1-65 set out above as if completely restated herein.

117.   At all time material hereto, the *Deepwater Horizon* was an ultra-deepwater dynamic positioned semi-submersible vessel built in 2001. It was leased to BP America Production Company through 2003 pursuant to a Drilling Contract dated December 9, 1998. BP leased the *Deepwater Horizon* to drill exploratory wells at the Macondo prospect site in Mississippi Canyon Block 252, a location on the Outer Continental Shelf off the coast of Louisiana.

**ANSWER:**

The BP Parties admit that the *Deepwater Horizon* was an ultra-deepwater dynamic positioned semi-submersible vessel built in 2001, that BPAP had contracted for Transocean to use the *Deepwater Horizon* to drill wells, and that Transocean used the *Deepwater Horizon* at the Macondo prospect.  The BP Parties deny the remaining allegations of this paragraph.

118.   The terms of the Drilling Contract provide that BP shall pay Transocean for work performed, services rendered, and materials, equipment, supplies and personnel furnished by Transocean at rates specified by Article 2 and by Exhibit A to the Drilling Contract.

**ANSWER:**

The BP Parties admit the existence of a Drilling Contract, as amended, the text of which speaks for itself.  The BP Parties deny the remaining allegations of this paragraph.

119.   Transocean has issued certain invoices to BP America and BP Exploration for amounts owed for work performed, services rendered, and materials, equipment, supplies and personnel furnished by Transocean by the *Deepwater Horizon* under the Drilling Contract. On or about December 15, 2010, BP America and BP Exploration stated that they would not pay the amounts invoiced "at this time" based on "developing facts regarding the manner in which Transocean performed drilling operations on the Macondo well." The amount due and owing is approximately $12,900,000.00. The invoices at issue all bear the prefix 00014 and are

numbered 00011482, 00011485, 00011497, 000114504, 00011506, 00011509, 00011510, 00011519, 00011520, 00011525, 00011526 and 00011530.

**ANSWER:**

The BP Parties admit that Transocean has issued the above referenced invoices, the text of which speak for themselves.  The BP Parties deny the remaining allegations of this paragraph.

120.    The invoiced amounts for use of the *Deepwater Horizon* were properly billed to BP and are due and owing under the Drilling Contract.

**ANSWER:**

The BP Parties deny the allegations of this paragraph.

121.    Transocean has performed all the terms, conditions, and covenants to be performed on its part under the Drilling Contract.

**ANSWER:**

The BP Parties deny the allegations of this paragraph.

122.    BP America and BP Exploration have materially breached the Drilling Contract by failing to fully compensate Transocean for the work performed, services rendered, materials, equipment, supplies and personnel furnished by Transocean under the terms of the Drilling Contract.

**ANSWER:**

The BP Parties deny the allegations of this paragraph.

123.    BP America's and BP Exploration's breach of the Drilling Contract is the direct and proximate cause of the damages to Transocean as set out herein.

**ANSWER:**

The BP Parties deny the allegations of this paragraph.

124.    Transocean has made a demand upon BP America and BP Exploration for payment, but BP America and BP Exploration have not complied. Transocean has been forced to engage counsel to pursue collection of these amounts.

**ANSWER:**

The BP Parties deny the allegations of this paragraph.

125.    Accordingly, Transocean is entitled to recover from BP America and BP Exploration the amounts due and owing for use of the *Deepwater Horizon* in the amount of $12,900,000.00, in addition to pre- and post-judgment interest, costs, and attorneys' fees.

**ANSWER:**

The BP Parties deny the allegations of this paragraph.

### COUNT 9 – AFFIRMATIVE DAMAGE CLAIM FOR TOTAL LOSS OF *DEEP WATER HORIZON*

### Applies to Halliburton, M-I, Cameron, Anadarko E&P, Anadarko, MOEX Offshore, MOEX USA, MOECO, Weatherford, Weatherford International and Dril-Quip, Inc.

126.    At all time material hereto, the *Deepwater Horizon* was an ultra-deepwater dynamic positioned semi-submersible vessel built in 2001. It was leased to BP America Production Company through 2003 pursuant to a Drilling Contract dated December 9, 1998. BP leased the *Deepwater Horizon* to drill exploratory wells at the Macondo prospect site in Mississippi Canyon Block 252, a location on the Outer Continental Shelf off the coast of Louisiana.

**ANSWER:**

The BP Parties admit that the *Deepwater Horizon* was an ultra-deepwater dynamic positioned semi-submersible vessel built in 2001, that BPAP had contracted for Transocean to use the *Deepwater Horizon* to drill wells, and that Transocean used the *Deepwater Horizon* at the Macondo prospect.  The BP Parties deny the remaining allegations of this paragraph.

127.    On April 20, 2010, a blow-out from BP's Macondo well occurred, resulting in explosion(s) and a fire onboard the *Deepwater Horizon*. The fire burned for two days, and the vessel began to list progressively until it finally sank on April 22, 2010.

**ANSWER:**

The BP Parties admit that on April 20, 2010, there were one or more fires and/or explosions aboard the *Deepwater Horizon* which caused the vessel to sink on April 22, 2010. The BP Parties deny the remaining allegations of this paragraph.

128.    As a result of the sinking of the *Deepwater Horizon* on April 22, 2010, the *Deepwater Horizon* became a total loss.

**ANSWER:**

The BP Parties admit the allegations of this paragraph.

129.    The true facts and circumstances regarding the sinking and total loss of the *Deepwater Horizon* on April 22, 2010, are that the sinking and loss of the *Deepwater Horizon* were caused not by any negligent acts, omissions, or culpable conduct of Transocean, but were caused in whole or in part by the negligent acts, omissions, or culpable conduct of the Cross-Defendants Halliburton, M-I, Cameron, Anadarko E&P, Anadarko, MOEX Offshore, MOEX USA, MOECO, Weatherford, Weatherford International and Dril-Quip, Inc., and/or the breach of warranties of workmanlike performance of Halliburton and M-I and/or by conditions for which each or all of these Cross-Defendants are strictly liable under law.

**ANSWER:**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

130.    In further support of its Count 9, Transocean incorporates the allegations and contentions set forth in all previous paragraphs 1-83, which are incorporated herein for more particular reference, pursuant to Rule 10(c) of the Federal Rules of Civil Procedure.

**ANSWER:**

The BP Parties incorporate all previous answers to paragraphs 1-83 set out above as if completely restated herein.

131.    Following the sinking and total loss of the *Deepwater Horizon* on April 22, 2010, Transocean was reimbursed for the total loss of the *Deepwater Horizon* by its Hull Underwriters in the amount of $560,000,000.00. The fair market value of the *Deepwater Horizon* on April 22, 2010 was $580,000,000.00. Accordingly, as a result of the sinking and total loss of the *Deepwater* Horizon, Transocean has suffered damages in the amount of $20,000,000.00, representing the difference between the fair market value of the *Deepwater Horizon* on April 22, 2010 and the amount received from its Hull Underwriters.

**ANSWER:**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

132.    Transocean's damages in the amount of $20,000,000.00 were proximately caused by the negligent acts, omissions, or culpable conduct of these Cross-Defendants, and/or their breach of warranties of workmanlike performance and/or by conditions for which these Cross-Defendants are strictly liable under law, as set forth in paragraphs 1-83.

**ANSWER:**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

133.    Each of the Cross-Defendants in this Count is jointly, severally, and/or solidarily liable under various principles of the general maritime law and/or state and/or applicable federal tort law for Transocean's damages in the amount of $20,000,000.00.

**ANSWER:**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

134.    Transocean seeks judgment against these Cross-Defendants in the amount of $20,000,000.00, in addition to pre- and post-judgment interest, costs, and attorneys' fees.

**ANSWER:**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Triton Asset Leasing GmbH, Transocean Holdings LLC, Transocean Offshore Deepwater Drilling Inc., and Transocean Deepwater Inc., Petitioners, Cross-Plaintiffs herein, file this their Rule 13 Cross-Claims/Counter-Claims against BP America Production Company, BP Exploration & Production Inc., BP p.l.c., Halliburton Energy Services, Inc., M-I, LLC, Cameron International Corporation f/k/a Cooper Cameron Corporation, Anadarko Petroleum Corporation, Anadarko E& P Company, LP, MOEX Offshore 2007 LLC, MOEX USA Corporation, Mitsui Oil Exploration Company, Ltd. (a/k/a MOECO), Weatherford International, Inc., Weatherford U.S.L.P., Dril-Quip, Inc., and the United States of America, Marine Spill Response Corporation, Airborne Support, Inc., Airborne Support International, Inc., Lynden, Inc., Lynden Air Cargo LLC, Dynamic Aviation Group, Inc., International Air Response, Inc., Lane Aviation, National Response Corporation, O"Brien Response Management, Inc., The Modern Group, Ltd., DRC Emergency Services, LLC, and Nalco Company pray for the following:

1.  That process in due form of law, according to the practice of this Court and the Federal Rules of Civil Procedure, issue against Cross-Defendants, requiring them to appear and answer this Cross-Claims/Counter-Claims;

2.  That Transocean have judgment against Cross-Defendants on Counts 1, 2, 5 and 6 of its Cross-Claims/Counter-Claims;

3.     That Transocean have judgment against Cross-Defendants Halliburton and M-I on Count 3 of its Cross-Claims/Counter-Claims;

4.     That Transocean have judgment against Cross-Defendants Cameron, Weatherford, Weatherford International and Dril-Quip on Count 4 of its Cross-Claims/Counter-Claims;

5.     That Transocean have judgment against BP America and BP Exploration on Count 7 of its Cross-Claims/Counter-Claims;

6.     That Transocean have judgment against BP America and BP Exploration in the amount of $12,900,000.00 on Count 8 of its Cross-Claims/Counter-Claims;

7.     That Transocean have judgment in the amount of $20,000,000.00 against Cross-Defendants Halliburton, M-I, Cameron, Anadarko E&P, Anadarko, MOEX Offshore, MOEX USA, MOECO, Weatherford, Weatherford International and Dril-Quip, Inc.

8.     That Transocean recover pre- and post-judgment interest;

9.     That Transocean recover its attorneys' fees;

10.     That Transocean recover its costs; and

11.     That Transocean have such other and further relief available under applicable law and any relief the Court deems just and appropriate.

**ANSWER:**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

**AFFIRMATIVE DEFENSES**

**FIRST DEFENSE**

The allegations of the Complaint fail to state a claim upon which relief may be granted.

**SECOND DEFENSE**

The blowout, explosion, and subsequent oil spill were caused by the unseaworthy condition(s) of the MODU Deepwater Horizon, and/or unseaworthy conditions, breach of

contract or breaches of duty and breaches of warranty, express or implied, attributable to the Petitioners and the negligence of employees, agents, officers and directors of Petitioners.  The aforesaid unseaworthiness and negligence was within the knowledge or privity of Petitioners and accordingly, the Complaint should be dismissed as to the BP Parties.

## THIRD DEFENSE

Petitioners' damages or injuries, if any, were the result of an occurrence and/or accident unforeseeable by the BP Parties and for which the BP Parties cannot be held legally responsible.

## FOURTH DEFENSE

The events culminating in the injuries and damage to Petitioners were not the result of any negligence, fault, or want of due care on the part of BP Parties.  Furthermore, Petitioners have the burden of proof on this issue, and Petitioners cannot meet that burden.

## FIFTH DEFENSE

Any alleged negligence by the BP Parties, which the BP Parties specifically deny, was not the proximate cause or sole proximate cause of Petitioners' alleged damages and there is no causal connection between the acts complained of and the damages and injuries alleged.

## SIXTH DEFENSE

Petitioners' alleged damages or injuries, if any, were caused or contributed to by acts and/or omissions that constitute independent, intervening and/or superseding causes for which the BP Parties are not legally responsible.  The BP Parties specifically reserve the right to amend or supplement their affirmative defenses and this Answer as additional facts concerning their defenses become known to them.

## SEVENTH DEFENSE

To the extent the BP Parties are found liable to Petitioners for any damages or injuries, the BP Parties are entitled to have any reward or recovery mitigated or reduced accordingly by the contributory or comparative negligence of other individuals, entities, or vessels.

## EIGHTH DEFENSE

To the extent that the BP Parties are found liable to Petitioners for any damages, the BP Parties are entitled to contractual indemnity from other parties or entities.

## NINTH DEFENSE

To the extent that the BP Parties are found liable to Petitioners for any damages, the BP Parties are entitled to indemnity from other parties or entities.

## TENTH DEFENSE

To the extent that the BP Parties are found liable to Petitioners for any damages, the BP Parties are entitled to contribution from other parties or entities.

## ELEVENTH DEFENSE

To the extent that the BP Parties are found liable to Petitioners for any damages, the BP Parties are entitled to a set-off or other equitable reduction in liability for any compensation paid by the BP Parties or other parties or entities.

## TWELFTH DEFENSE

Petitioners' claims are barred, in whole or in part, because Petitioners are not entitled under the law to the damages that they seek, the alleged damages sought are too speculative and uncertain, and because of the impossibility of the ascertainment and allocation of such damages.

**THIRTEENTH DEFENSE**

Petitioners' damages are barred, in whole or in part, by a failure to mitigate damages.

**FOURTEENTH DEFENSE**

The BP Parties deny that they are liable to any extent as alleged in the Complaint, and claim exoneration from any and all liability for all losses, damages, and injuries incurred by Petitioners as a result of the allegations contained in the Complaint and for any other damages or claims which exist or may arise, but have not been specifically pled.

The BP Parties specifically reserve the right to amend or supplement their affirmative defenses and this Answer as additional facts concerning their defenses become known to them.

Dated:  May 20, 2011                                 Respectfully submitted,

                                                     /s/ Don K. Haycraft_____
                                                     Don K. Haycraft (Bar #14361)
                                                     R. Keith Jarrett (Bar #16984)
                                                     LISKOW & LEWIS
                                                     701 Poydras Street, Suite 5000
                                                     New Orleans, Louisiana 70139-5099
                                                     Telephone: (504) 581-7979
                                                     Facsimile: (504) 556-4108

                                                     and

                                                     Richard C. Godfrey, P.C.
                                                     J. Andrew Langan, P.C.
                                                     Timothy A. Duffy, P.C.
                                                     Kirkland & Ellis LLP
                                                     300 North LaSalle Street
                                                     Chicago, IL 60654
                                                     Telephone: (312) 862-2000
                                                     Facsimile: (312) 862-2200

                                                     and

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

*Attorneys for the BP Parties*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 20th day of May, 2011.

/s/  Don K. Haycraft