UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | MDL No. 2179 |
| | SECTION: J |
| IN RE THE COMPLAINT AND PETITION OF TRITON ASSET LEASING GmbH, ET AL., IN A CAUSE OF EXONERATION FROM OR LIMITATION OF LIABILITY | JUDGE BARBIER |
| | MAGISTRATE SHUSHAN |
| This Document applies to: *C.A. No. 10-2771* | |

### TRANSOCEAN'S ANSWER TO BP PARTIES' COUNTER-COMPLAINT, CROSS-COMPLAINT, THIRD PARTY COMPLAINT, AND CLAIM IN LIMITATION

_____

Defendants Transocean Offshore Deepwater Drilling, Inc. ("TODDI"), Transocean Deepwater Inc. ("TDI"), Transocean Holdings LLC ("TH") and Triton Asset Leasing GmbH ("Triton") (collectively "Transocean" or "Transocean Defendants")[1] respond to the Counter-Complaint, Cross-Complaint and Third Party Complaint against Transocean, and Claim in Limitation of BP Exploration & Production, Inc. ("BPXP") and BP America Production Company ("BPAP") (collectively "the BP Parties"), **Dkt. 2074**, and, upon information and belief, respectfully show as follows:

### ANSWER

For each and every allegation of the Counter-Complaint, Cross-Complaint, Third Party Complaint, and Claim in Limitation, Transocean responds as follows. When a paragraph in the Counter-Complaint, Cross-Complaint, Third Party Complaint, and Claim in Limitation contains

_____

[1] Transocean Ltd. has filed a motion challenging personal jurisdiction (Docket Number 14/May 17, 2010). In addition, on May 6, 2011, this Court entered a Special Appearance by Transocean Ltd. and Transocean Inc., ordering a standstill of jurisdictional discovery, and allowing counsel to accept service of process without waiver of jurisdiction. (Docket Number 2274).

multiple subparts, the response of Transocean to the paragraph applies equally to all subparts unless otherwise expressly stated.

1.     The Transocean Defendants admit that one or more of them are the Managing Owners, Owners *Pro Hac Vice*, and/or Operators of the *Deepwater Horizon*.  Transocean admits that on April 20, 2010, the Macondo well blew out and an explosion and fire occurred on the *Deepwater Horizon.*  Transocean admits that 11 vessel workers lost their lives.  Transocean admits that on or about April 22, 2010, the *Deepwater Horizon* sank, and oil flowed into the Gulf of Mexico.  Transocean denies that Transocean is accountable to the BP Parties or to any other party for having caused the blow-out, explosion, fire, deaths and personal injuries, and subsequent oil spill.  Transocean denies any improper conduct, errors, omissions, and violations of maritime law related to the *Deepwater Horizon*.  Transocean denies any misconduct on its part.  Transocean denies the BP Parties' allegations that on April 20, 2010, every single safety system and device and well control procedure on the *Deepwater Horizon* failed, resulting in the casualty.  Transocean denies that the BP Parties are entitled to $40 Billion in damages and contribution from Transocean for the cost, expenses, injuries and damages that the BP Parties have incurred, continue to incur, and will incur as a result of the *Deepwater Horizon* incident and oil spill.  Transocean denies that there were multiple failures on its part.  To the extent not expressly admitted, Transocean denies all aspects and implications of the allegations in Paragraph 1.

2.     The Transocean Defendants admit that one or more of them are the Managing Owners, Owners *Pro Hac Vice*, and/or Operators of the *Deepwater Horizon*.  The Transocean Defendants deny that any one of them is directly liable for any improper conduct, errors, omissions, and violations of maritime law relating to the *Deepwater Horizon*.  Transocean denies any improper conduct, errors, omissions, and violations of maritime law relating to the

*Deepwater Horizon*.  Transocean denies the BP Parties' characterization of Transocean Ltd. and Transocean Inc. as Transocean's top level corporate entities.  Transocean denies that Transocean Ltd. and Transocean Inc. dominate, control, or are otherwise the alter egos of the Transocean *Deepwater Horizon* Companies.  Transocean denies that Transocean Ltd. and Transocean Inc. are directly responsible for the policies and practices that led to the MC-252 well blowout.  To the extent not expressly admitted, Transocean denies all aspects and implications of the allegations in Paragraph 2.

3.      Transocean admits that BPAP and TH are parties to a Drilling Contract with a binding arbitration provision.  Transocean denies that it has waived any rights to arbitrate any aspects of any claims between any BP entities and Transocean relating to the *Deepwater Horizon* incident and resulting oil spill.  To the extent not expressly admitted, Transocean denies all aspects and implications of the allegations in Paragraph 3.

4.      Transocean denies all aspects and implications of the allegations in Paragraph 4.

5.      Transocean is without sufficient knowledge or information to form a belief as to whether the allegations set forth in Paragraph 5 are true and, therefore, denies all aspects and implications of the allegations in Paragraph 5.

6.      Transocean is without sufficient knowledge or information to form a belief as to whether the allegations set forth in Paragraph 6 are true and, therefore, denies all aspects and implications of the allegations in Paragraph 6.

7.      Transocean admits that TODDI is a Delaware corporation with its principal place of business in Houston, Texas.  To the extent not expressly admitted, Transocean denies all aspects and implications of the allegations in Paragraph 7.

12561397.2

8.      Transocean admits that TDI is a Delaware corporation with its principal place of business in Houston, Texas.  To the extent not expressly admitted, Transocean denies all aspects and implications of the allegations in Paragraph 8.

9.      Transocean admits that TH is a Delaware limited liability company with its principal place of business in Houston, Texas.  To the extent not expressly admitted, Transocean denies all aspects and implications of the allegations in Paragraph 9.

10.     Transocean admits that Triton is a Swiss limited liability company with its principal place of business in Zug, Switzerland.  To the extent not expressly admitted, Transocean denies all aspects and implications of the allegations in Paragraph 10.

11.     Transocean admits that Transocean Inc. is a Cayman Islands corporation. Transocean denies that Transocean Inc. has its principal place of business at 4 Greenway Plaza, Houston, Texas 77046.  Transocean denies that Transocean Inc. is the direct or indirect parent of the Transocean *Deepwater Horizon* Companies. To the extent not expressly admitted, Transocean denies all aspects and implications of the allegations in Paragraph 11.

12.     Transocean admits that Transocean Ltd. is a Swiss corporation with its principal place of business in Zug, Switzerland.  Transocean denies that the Court has *in personam* jurisdiction over Transocean Ltd.  Transocean denies the characterization of Transocean Ltd. as the ultimate parent and controlling entity of the Transocean *Deepwater Horizon* Companies.  To the extent not expressly admitted, Transocean denies all aspects and implications of the allegations in Paragraph 12.

13.     Transocean denies that the Court has subject matter jurisdiction over any claims between the BP Parties and Transocean because these claims are subject to a binding arbitration clause in the Drilling Contract dated December 9, 1998.  Transocean denies that the Court has *in*

4

*personam* jurisdiction over Transocean Ltd.  To the extent not expressly admitted, Transocean denies all aspects and implications of the allegations in Paragraph 13.

14.    Transocean admits that it filed a Rule 14(c) Third-Party Complaint tendering Third-Party Defendants, including the BP Parties, to the Plaintiffs/Claimants, and that the Complaint was filed pursuant to Rule 9(h) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1333.  Transocean also admits that the BP Parties are also named as Defendants in admiralty, maritime, and other complaints pending before this Court.  Transocean specifically denies that this Court has subject matter jurisdiction over claims between the BP Parties and Transocean because these claims are subject to a binding arbitration clause in the Drilling Contract dated December 9, 1998.  To the extent not expressly admitted, Transocean denies all aspects and implications of the allegations in Paragraph 14.

15.    Transocean denies all aspects and implications of the allegations in Paragraph 15.

16.    Transocean admits that it has filed a Complaint and Petition for Exoneration From or Limitation of Liability and that Plaintiffs/Claimants have filed claims against Transocean in the Limitation action and that Transocean has filed a Rule 14(c) Third-Party Complaint and tendered the BP Parties, among others, to the Plaintiffs/Claimants.  To the extent not expressly admitted, Transocean denies all aspects and implications of the allegations in Paragraph 16.

17.    Transocean denies all aspects and implications of the allegations in Paragraph 17 (and subparts).

18.    Transocean denies all aspects and implications of the allegations in Paragraph 18.

19.    Transocean admits that BPXP obtained a Lease for Mississippi Canyon, Block 252, commonly known as the Macondo prospect.  Transocean admits that it was hired to drill the MC-252, commonly known as the Macondo well, using the *Deepwater Horizon* mobile offshore drilling unit ("MODU").  The Transocean Defendants admit that one or more of them are the

Managing Owners, Owners *Pro Hac Vice*, and/or Operators of the *Deepwater Horizon*.  To the extent not expressly admitted, Transocean denies all aspects and implications of the allegations in Paragraph 19.

20.    Transocean admits that Paragraph 20 contains some language that can be found in the Drilling Contract dated December 9, 1998, but denies that the partially quoted language is complete or that the BP Parties have properly characterized the Drilling Contract's language in the first sentence of Paragraph 20.  To the extent not expressly admitted, Transocean denies all aspects and implications of the allegations in Paragraph 20 (and subparts).

21.    Transocean denies all aspects and implications of the allegations in Paragraph 21.

22.    The allegations set forth in the first sentence of Paragraph 22 pertaining to Transocean contain a statement of law, and therefore do not require a response by Transocean. The remaining allegations set forth in Paragraph 22 are not directed at Transocean and therefore do not require a response by Transocean.  To the extent that the allegations in Paragraph 22 are directed at Transocean, all aspects and implications of the allegations are denied.

23.    Transocean admits that the *Deepwater Horizon* carried various appurtenances to drill subsea wells and to protect the vessel during drilling.  To the extent not expressly admitted, Transocean denies all aspects and implications of the allegations in Paragraph 23.

24.    Transocean admits that the *Deepwater Horizon* was equipped with rig protection equipment.  To the extent not expressly admitted, Transocean denies all aspects and implications of the allegations in Paragraph 24.

25.    Transocean denies all aspects and implications of the allegations in Paragraph 25.

26.    Transocean denies all aspects and implications of the allegations in Paragraph 26.

27.    Transocean denies all aspects and implications of the allegations in Paragraph 27.

28.    Transocean denies all aspects and implications of the allegations in Paragraph 28.

12561397.2

29.     Transocean denies all aspects and implications of the allegations in Paragraph 29.

30.     Transocean denies all aspects and implications of the allegations in Paragraph 30.

31.     Transocean denies all aspects and implications of the allegations which appear immediately before Paragraph 31 which state: "D. Transocean's Errors And The *Deepwater Horizon's* Unseaworthiness Caused The April 20 Blowout, Explosion And Fire, As Well As The Tragic Deaths, Personal Injuries, And Resulting Oil Spill."  Transocean denies all aspects and implications of the allegations in Paragraph 31.

32.     Transocean denies all aspects and implications of the allegations which appear immediately before Paragraph 32 which state:  "1. Transocean Failed To Identify And React To Warning Signs That The Well Was Flowing."  Transocean denies all aspects and implications of the allegations in Paragraph 32.

33.     Transocean denies all aspects and implications of the allegations in Paragraph 33.

34.     Transocean denies all aspects and implications of the allegations in Paragraph 34.

35.     Transocean denies all aspects and implications of the allegations in Paragraph 35.

36.     Transocean denies all aspects and implications of the allegations in Paragraph 36.

37.     Transocean denies all aspects and implications of the allegations in Paragraph 37.

38.     Transocean denies all aspects and implications of the allegations which appear immediately before Paragraph 38 which state: "2. Transocean Failed To Properly Monitor The Well To Detect Whether It Was Flowing."  Transocean denies all aspects and implications of the allegations in Paragraph 38.

39.     Transocean denies all aspects and implications of the allegations in Paragraph 39.

40.     Transocean denies all aspects and implications of the allegations which appear immediately before Paragraph 40 which state: "3. Transocean's Belated Well Control Actions

Dispersed Gas Onto The Rig, Causing The Explosions."  Transocean denies all aspects and implications of the allegations in Paragraph 40.

41.     Transocean denies all aspects and implications of the allegations in Paragraph 41.

42.     Transocean denies all aspects and implications of the allegations in Paragraph 42.

43.     Transocean denies all aspects and implications of the allegations in Paragraph 43.

44.     Transocean denies all aspects and implications of the allegations in Paragraph 44.

45.     Transocean denies all aspects and implications of the allegations which appear immediately before Paragraph 45 which state: "4. The *Deepwater Horizon's* ESD, Rig Savers, And Over-Speed Controls Failed." Transocean denies all aspects and implications of the allegations in Paragraph 45.

46.     Transocean denies all aspects and implications of the allegations in Paragraph 46.

47.     Transocean denies all aspects and implications of the allegations in Paragraph 47.

48.     Transocean denies all aspects and implications of the allegations in Paragraph 48.

49.     Transocean denies all aspects and implications of the allegations which appear immediately before Paragraph 49 which state: "5. The Rig's Power Generators Failed To Operate After The Explosion, Rendering The Vessel And Its Crew Helpless."  Transocean denies all aspects and implications of the allegations in Paragraph 49.

50.     Transocean denies all aspects and implications of the allegations which appear immediately before Paragraph 50 which state: "6. Transocean's Divided Command Structure, Combined With The Failures Of Its Captain, Compounded The Effects Of The Casualty." Transocean denies all aspects and implications of the allegations in Paragraph 50.

51.     Transocean denies all aspects and implications of the allegations which appear immediately before Paragraph 51 which state: "7. Transocean And Its Captain Erred In Delaying

12561397.2

To Activate The Blowout Preventer And EDS." Transocean denies all aspects and implications of the allegations in Paragraph 51.

52. Transocean denies all aspects and implications of the allegations which appear immediately before Paragraph 52 which state: "8. Transocean's EDS And Blowout Preventer Malfunctioned, Failing To Shut In The Well." Transocean denies all aspects and implications of the allegations in Paragraph 52.

53. Transocean denies all aspects and implications of the allegations in Paragraph 53.

54. Transocean denies all aspects and implications of the allegations which appear immediately before Paragraph 54 which state: "9. Transocean's Uncoordinated Fire-Fighting Attempts Allowed The Rig To Burn For Over 36 Hours And Then Sink Into The Gulf of Mexico." Transocean denies all aspects and implications of the allegations in Paragraph 54.

55. Transocean denies all aspects and implications of the allegations in Paragraph 55.

56. Transocean denies all aspects and implications of the allegations in Paragraph 56.

57. Transocean is without sufficient knowledge or information to form a belief as to whether the allegations set forth in Paragraph 57 are true and, therefore, denies all aspects and implications of the allegations in Paragraph 57.

58. Transocean denies all aspects and implications of the allegations which appear immediately before Paragraph 58 which state: "F. Transocean's Domination And Control Of Its Corporate Subsidiaries." Transocean denies all aspects and implications of the allegations in Paragraph 58.

59. Transocean denies all aspects and implications of the allegations in Paragraph 59.

60. Transocean denies all aspects and implications of the allegations in Paragraph 60.

61. Transocean denies all aspects and implications of the allegations in Paragraph 61 (and subparts).

12561397.2

62.     Transocean denies all aspects and implications of the allegations in Paragraph 62.

63.     Transocean denies all aspects and implications of the allegations in Paragraph 63.

64.     Paragraph 64 is a statement that the BP Parties reallege and incorporate by reference each and every allegation set forth in all preceding paragraphs as if fully restated herein.  Transocean has responded to each of the preceding paragraphs and incorporates those responses as necessary and, accordingly, no further response is required.

65.     Transocean admits that the Drilling Contract is a valid and enforceable contract.

66.     Transocean denies all aspects and implications of the allegations in Paragraph 66.

67.     Transocean admits that Paragraph 67 contains some language that can be found in the Drilling Contract dated December 9, 1998, but denies that the partially quoted language is complete or that the BP Parties have properly characterized the Drilling Contract's language in the first sentence of Paragraph 67.  To the extent not expressly admitted, Transocean denies all aspects and implications of the allegations in Paragraph 67 (and subparts).

68.     Transocean denies all aspects and implications of the allegations in Paragraph 68 (and subparts).

69.     Transocean denies all aspects and implications of the allegations in Paragraph 69.

70.     Transocean denies all aspects and implications of the allegations in Paragraph 70.

71.     Paragraph 71 is a statement that the BP Parties reallege and incorporate by reference each and every allegation set forth in all preceding paragraphs as if fully restated herein.  Transocean has responded to each of the preceding paragraphs and incorporates those responses as necessary and, accordingly, no further response is required.

72.     Transocean denies all aspects and implications of the allegations in Paragraph 72.

73.     Transocean denies all aspects and implications of the allegations in Paragraph 73.

74.     Transocean denies all aspects and implications of the allegations in Paragraph 74.

75.     Transocean denies all aspects and implications of the allegations in Paragraph 75.

76.     Paragraph 76 is a statement that the BP Parties reallege and incorporate by reference each and every allegation set forth in all preceding paragraphs as if fully restated herein.  Transocean has responded to each of the preceding paragraphs and incorporates those responses as necessary and, accordingly, no further response is required.

77.     Transocean denies all aspects and implications of the allegations in Paragraph 77 (and subparts).

78.     Transocean denies all aspects and implications of the allegations in Paragraph 78.

79.     Transocean denies all aspects and implications of the allegations in Paragraph 79.

80.     Transocean denies all aspects and implications of the allegations in Paragraph 80.

81.     Paragraph 81 is a statement that the BP Parties reallege and incorporate by reference each and every allegation set forth in all preceding paragraphs as if fully restated herein.  Transocean has responded to each of the preceding paragraphs and incorporates those responses as necessary and, accordingly, no further response is required.

82.     Transocean denies all aspects and implications of the allegations in Paragraph 82.

83.     Transocean denies all aspects and implications of the allegations in Paragraph 83.

84.     Transocean denies all aspects and implications of the allegations in Paragraph 84.

85.     Paragraph 85 is a statement that the BP Parties reallege and incorporate by reference each and every allegation set forth in all preceding paragraphs as if fully restated herein.  Transocean has responded to each of the preceding paragraphs and incorporates those responses as necessary and, accordingly, no further response is required.

86.     Transocean denies all aspects and implications of the allegations in Paragraph 86.

87.     Transocean denies all aspects and implications of the allegations in Paragraph 87.

88.     Transocean denies all aspects and implications of the allegations in Paragraph 88.

12561397.2

89.     Transocean denies all aspects and implications of the allegations in Paragraph 89.

90.     Paragraph 90 is a statement that the BP Parties reallege and incorporate by reference each and every allegation set forth in all preceding paragraphs as if fully restated herein.  Transocean has responded to each of the preceding paragraphs and incorporates those responses as necessary and, accordingly, no further response is required.

91.     Transocean denies all aspects and implications of the allegations in Paragraph 91.

92.     Transocean admits that BPXP has a statutory duty to pay and continue to pay damages to resolve valid and properly documented claims brought against the BP Parties resulting from the Macondo well oil spill.  To the extent not expressly admitted, Transocean denies all aspects and implications of the allegations in Paragraph 92.

93.     Transocean denies all aspects and implications of the allegations in Paragraph 93.

94.     Transocean denies all aspects and implications of the allegations in Paragraph 94.

95.     Paragraph 95 is a statement that the BP Parties reallege and incorporate by reference each and every allegation set forth in all preceding paragraphs as if fully restated herein.  Transocean has responded to each of the preceding paragraphs and incorporates those responses as necessary and, accordingly, no further response is required.

96.     Paragraph 96 contains a statement of law, which does not require a response by Transocean.

97.     Transocean denies all aspects and implications of the allegations in Paragraph 97.

98.     Transocean admits that BPXP has a statutory duty to pay and continue to pay damages to resolve valid and properly documented claims brought against the BP Parties resulting from the Macondo well oil spill.  To the extent not expressly admitted, Transocean denies all aspects and implications of the allegations in Paragraph 98.

99.     Transocean denies all aspects and implications of the allegations in Paragraph 99.

12561397.2

100.    Transocean denies all aspects and implications of the allegations in Paragraph 100.

101.    Paragraph 101 is a statement that the BP Parties reallege and incorporate by reference each and every allegation set forth in all preceding paragraphs as if fully restated herein.  Transocean has responded to each of the preceding paragraphs and incorporates those responses as necessary and, accordingly, no further response is required.

102.    Transocean denies all aspects and implications of the allegations in Paragraph 102.

103.    Transocean is without sufficient knowledge or information to form a belief as to whether the allegations set forth in Paragraph 103 are true and, therefore, denies all aspects and implications of the allegations in Paragraph 103.

104.    Transocean denies all aspects and implications of the allegations in Paragraph 104.

105.    Transocean denies all aspects and implications of the allegations in Paragraph 105.

106.    Transocean denies all aspects and implications of the allegations in Paragraph 106.

107.    Transocean denies all aspects and implications of the allegations in Paragraph 107.

## **AFFIRMATIVE DEFENSES**

Transocean sets forth its affirmative defenses which apply to all claims unless otherwise noted.  By setting forth these affirmative defenses, Transocean does not assume the burden of proving any fact, issue, or element of a cause of action where such burden properly belongs to the BP Parties.

13

**Lack of Subject Matter Jurisdiction**

1.     The Court lacks subject matter jurisdiction over the BP Parties' claims under Rule 12(b)(1) of the Federal Rules of Civil Procedure and 9 U.S.C. § 2, because Article 35.4 of the Drilling Contract between the Transocean Defendants and the BP Parties states that all such claims are subject to arbitration.

**Standing**

2.     The BP Parties lack standing because they have not alleged nor can they prove an actual or threatened injury caused by the Transocean Defendants' conduct and redressable by this Court.

**Proper Parties/Joinder**

3.     The BP Parties have failed to join an indispensable party (or parties) under Rule 19, Federal Rules of Civil Procedure.

**Ripeness**

4.     The BP Parties' claims for relief are not ripe.

**Failure to State a Claim**

5.     The BP Parties have failed to state a claim upon which relief can be granted.

6.     The BP Parties have failed to plead, much less satisfy, conditions precedent to recovery.

7.     The BP Parties' claims are barred to the extent that the BP Parties seek to impose liability retroactively for conduct that was not actionable at the time it occurred.

**Shipowners' Limitation of Liability Act**

8.     The Transocean Defendants assert all rights and defenses available under the Shipowners' Limitation of Liability Act, 46 U.S.C. § 30501, *et seq.*  As a separate and complete defense to some or all of the BP Parties' claims, the Transocean Defendants aver that the subject

incident was occasioned without the privity or knowledge of the Transocean Defendants, and that the amount of damages alleged in the Counter-Complaint, Cross-Complaint and Third Party Complaint greatly exceeds the amount of value of the interest of the Transocean Defendants in the mobile offshore drilling unit ("MODU") *Deepwater Horizon* and her freight then pending, and the Transocean Defendants accordingly invoke the benefits of the provisions of the revised statute of the United States of America and acts amendatory thereof and supplement thereto, specifically 47 U.S.C. § 30501 *et seq.*, in the limitation of liability of shipowners, under which provision the BP Parties are not entitled to recover damages in a sum in excess of the value of the Transocean Defendants' interest in said vessel and her pending freight at the conclusion of the voyage during which the subject incident occurred.  The pleading of limitation of liability is not made as an admission of liability, but is made subject to the full denial set forth above in this pleading of any and all liability.

9.     The BP Parties' Counter-Complaint, Cross-Complaint, Third Party Complaint, and Claim in Limitation are enjoined, stayed, and restrained until the hearing and termination of the Limitation of Liability proceedings pursuant to the Limitation Court's Order dated June 14, 2010, and the Shipowners' Limitation of Liability Act, 46 U.S.C. § 30501, *et seq.*

### Oil Pollution Act

10.     The Transocean Defendants assert all defenses available under the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. § 2701 *et seq.,* including, without limitation:

(a)     Presentment has not been made as required under OPA;

(b)     OPA displaces or preempts the BP Parties' claims with respect to oil spill damages and otherwise;

(c)     There is no right of action against one or more of the Transocean Defendants to the extent any of them is not a Responsible Party as defined under OPA;

15

(d)     OPA eliminates or limits the BP Parties' alleged rights of recovery for certain economic loss claims;

(e)     OPA does not provide for, or allow, the recovery of punitive or exemplary damages; and

(f)     OPA does not provide for, or allow, a determination of joint and several liability, but requires an apportionment of fault.

### Maritime and State Law Claims

11.     The Transocean Defendants assert all defenses to any maritime and state law claims including, without limitation:

(a)     The Transocean Defendants assert preemption to the extent that federal common law, including maritime law, is displaced by the Outer Continental Shelf Land Act, 43 U.S.C. § 1331 *et seq.,* or the Oil Pollution Act, 33 U.S.C. § 2701 *et. seq.*

(b)     The Transocean Defendants assert that, under the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331 *et seq.,* the Court must apply federal law, including the Oil Pollution Act and/or maritime law, to the exclusion of the law of the adjacent State.

(c)     The Transocean Defendants assert that any claims for purely economic losses, and any declaration or injunction pertaining to such claims, are barred absent physical injury to a proprietary interest, pursuant to *Robins Dry Dock & Repair Co. v. Flint,* 271 U.S. 303, 309 (1927) or similar precedent in Texas, Louisiana, Mississippi, Alabama, Florida, and/or other states.

(d)     The Transocean Defendants assert that, under any State mini-OPA statutory scheme, liability is limited.  The Transocean Defendants are not responsible parties under State mini-OPA statutory schemes.  The Transocean Defendants further assert the defenses available under any State mini-OPA statutory scheme.

16

**Causation**

12.     The BP Parties complain of harm not caused or contributed to in any manner by the Transocean Defendants, their alleged servants, employees, agents, or anyone for whom the Transocean Defendants are responsible.  The incident and resulting harm that are the subject of the BP Parties' Counter-Complaint, Cross-Complaint, Third Party Complaint, and Claim in Limitation were caused by the fault, negligence, breach of contract, breach of warranty, statutory and regulatory violations of other persons, entities, or sovereigns for whom the Transocean Defendants are not legally responsible.

13.     The injuries and resulting damages alleged to have been sustained by the BP Parties resulted from a superseding or intervening cause for which the Transocean Defendants are not responsible.

14.     The injuries and resulting damages alleged to have been sustained by the BP Parties were not proximately caused by any acts and/or omissions of the Transocean Defendants.

15.     The injuries and resulting damages alleged to have been sustained by the BP Parties were not foreseeable as a matter of law.

**Damages**

16.     The Transocean Defendants specifically deny that the BP Parties have sustained legally compensable damages.

17.     The injuries and resulting damages alleged to have been sustained by the BP Parties were not foreseeable as a matter of law.

18.     The BP Parties may not recover on the claims pleaded in the Counter-Complaint, Cross-Complaint, Third Party Complaint, or Claim in Limitation because the damages sought are too speculative and remote.

19.     The BP Parties have not reasonably mitigated their damages.

20.     The BP Parties have not reasonably mitigated their damages by paying claims which are not properly documented, and/or are not compensable under OPA or any other laws.

21.     The Transocean Defendants are entitled to set off, should any damages be awarded against them, in the amount recovered by the BP Parties with respect to the same alleged injuries.  The Transocean Defendants assert payment and release to the extent that any of the BP Parties' alleged damages have been or will be fully redressed under the Oil Pollution Act or other applicable statute or rule.  The Transocean Defendants are also entitled to have any damages that may be awarded to the BP Parties reduced by the value of any benefit or payment to the BP Parties from any collateral source.

22.     Punitive damages are not recoverable against the Transocean Defendants as a matter of law.

23.     The Transocean Defendants deny that any of them have engaged in conduct that would support an award of punitive damages.

24.     Any award of punitive damages against the Transocean Defendants would be in violation of the Constitutional safeguards provided to the Transocean Defendants under the Constitution of the United States, and under state constitutions or statutory regimes, if applicable. The imposition of punitive damages would violate Transocean Defendants' rights to (1) protection against excessive fines under the Eighth Amendment to the Constitution of the United States (and state constitutions or statutory regimes, if applicable) and (2) due process and equal protection of the law under the Fifth and Fourteenth Amendments of the United States Constitution (and state constitutions or statutory regimes, if applicable) in that: (a) the issue of punitive damages would be submitted to a jury without any adequate standards for determination, (b) the jury would be required to decide issues of law rather than issues of fact, (c) there is no adequate review of a jury determination of punitive damages, (d) punitive

18

damages can be imposed jointly without regard to the responsibility of the individual defendants, (e) penalties can be imposed without the increased burden of proof and other protections required by criminal laws, (f) evidence is submitted to the jury on issues of liability that should be limited to the issues of punitive damages only, and (g) the amount of punitive damages are determined in part by the financial status of the defendant.

### Reservation of Rights to Compel Arbitration

25.     The Transocean Defendants reserve their rights to compel arbitration of the BP Parties' claims because Article 35.4 of the Drilling Contract between the Transocean Defendants and the BP Parties requires that all such claims be arbitrated.  The Transocean Defendants further reserve their rights to file a Motion to Stay the BP Parties' claims, pending conclusion of arbitration.

### Contribution Comparative Fault and Indemnity

26.     In addition to the Limitation of Liability to which the Transocean Defendants are entitled herein, the Transocean Defendants are also entitled to contribution, indemnification and/or reimbursement or a determination of comparative fault of/from Third-Parties for any damages the Transocean Defendants may be required to pay that are attributable to the comparative negligence, fault and/or legal responsibility of Third-Parties.

### No Duty or Breach of Duty

27.     The Transocean Defendants did not owe any duty or warranty to the BP Parties and did not breach any duty or warranty.

28.     At all material times, the Transocean Defendants acted with due diligence and reasonable care and did not breach any duty to the BP Parties.

**Preemption**

29.     The claims are barred in whole or in part by the Supremacy Clause of the United States Constitution, art. VI, § 2, because the claims are preempted and/or precluded by federal law, including, but not limited to, the Outer Continental Shelf Lands Act, 43 U.S.C. §§ 1331, *et seq.*, the Oil Pollution Act of 1990, 33 U.S.C. §§ 2701, *et seq.*, the Clean Water Act, 33 U.S.C. §§ 1251, *et seq.*, Bureau of Ocean Energy Management, Regulation and Enforcement, formerly Minerals Management Service ("BOEMRE") policies and regulations regarding offshore oil exploration and drilling, and federal maritime common law.

**Adoption of Affirmative Defenses and Reservation of Right to Amend Answer**

30.     The Transocean Defendants assert any other defenses to which they may be entitled under Rule 8(c), Federal Rules of Civil Procedure.

31.     Any affirmative defenses pleaded by the other defendants and not pleaded by the Transocean Defendants are incorporated herein to the extent such defenses do not conflict with the Transocean Defendants' affirmative defenses.

32.     The Transocean Defendants reserve the right to amend their Answer, Rule 12(b) defenses and other defenses, and to assert cross-claims and third-party claims, as appropriate.

WHEREFORE, the Transocean Defendants pray that their defenses be deemed good and sufficient; that after due proceedings are had there be judgment in favor of the Transocean Defendants, dismissing all claims asserted against them by the BP Parties, with prejudice, at the BP Parties' costs; and for any and all other just and equitable relief deemed appropriate.

12561397.2

Respectfully submitted,


By:____/s/ Steven L. Roberts_____
Steven L. Roberts (Texas, No. 17019300)
Rachel Giesber Clingman (Texas, No. 00784125)
Kent C. Sullivan (Texas, No. 19487300)
Teri L. Donaldson (Florida, No. 784310)
Sutherland Asbill & Brennan LLP
1001 Fannin Street, Suite 3700
Houston, Texas 77002
Telephone: (713) 470-6100
Facsimile: (713) 654-1301
Email: steven.roberts@sutherland.com,
rachel.clingman@sutherland.com,
kent.sullivan@sutherland.com,
teri.donaldson@sutherland.com

By:____/s/ Kerry J. Miller_____
Kerry J. Miller (Louisiana, No. 24562)
Frilot, L.L.C.
1100 Poydras Street, Suite 3700
New Orleans, Louisiana 70163
Telephone: (504) 599-8169
Facsimile: (504) 599-8154
Email: kmiller@frilot.com
-and-

By:____/s/ Edwin G. Preis, Jr._____
Edwin G. Preis, Jr. (Louisiana, No. 10703)
Edward F. Kohnke, IV (Louisiana, No. 07824)
Preis & Roy PLC
102 Versailles Boulevard, Suite 400
Lafayette, Louisiana 70501
Telephone: (337) 237-6062
Facsimile: (337) 237-9129

-and-

601 Poydras Street, Suite 1700
New Orleans, Louisiana 70130
Telephone: (504) 581-6062
Facsimile: (504) 522-9129
Email: egp@preisroy.com, efk@preisroy.com


Of Counsel:

John M. Elsley (Texas, No. 0591950)
Royston, Rayzor, Vickery & Williams LLP
711 Louisiana Street, Suite 500
Houston, Texas 77002
Telephone: (713) 224-8380
Facsimile: (713) 225-9945
Email: john.elsley@roystonlaw.com

Daniel O. Goforth (Texas, No. 08064000)
Goforth Geren Easterling LLP
4900 Woodway, Suite 750
Houston, Texas 77056
Telephone: (713) 650-0022
Facsimile: (713) 650-1669
Email: dangoforth@goforthlaw.com

12561397.2

Brad D. Brian (California, No. 79001)
Allen M. Katz (California, No. 054933)
Munger Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California 90071
Telephone: (213) 683-9100
Facsimile: (213) 683-5180, (213) 683-4018
Email: brad.brian@mto.com, allen.katz@mto.com

*Counsel for Transocean*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, on May 20, 2011.


/s/  Kerry J. Miller
_____


22

12561397.2