**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **In re: Oil Spill by the Oil Rig** | * | **MDL No. 2179** |
| **"Deepwater Horizon" in the Gulf** | * | |
| **of Mexico on April 20, 2010** | * | **SECTION "J"** |
| | * | **JUDGE BARBIER** |
| **This Document Relates to:** | * | |
| **No. 10-2771** | * | **MAGISTRATE NO. 1** |
| | * | **MAGISTRATE SHUSHAN** |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF
DEFENDANTS ANADARKO PETROLEUM CORPORATION AND
ANADARKO E&P COMPANY LP TO DISMISS TRANSOCEAN'S
<u>RULE 13 CROSS-CLAIMS/COUNTER-CLAIMS</u>**

<u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION ............................................................................................... 1

II.    RELEVANT FACTUAL ALLEGATIONS IN TRANSOCEAN'S CROSS-CLAIMS ....................................................................................................... 3

III.   ARGUMENT ..................................................................................................... 6

     A.    Count 1 for Indemnity under the General Maritime Law Fails to State a Claim against Anadarko for which Relief Can Be Granted................................... 7

          1.    Transocean's general maritime law indemnity and contribution claims do not apply to the claims of the Bundle B1 and C Plaintiffs, because OPA displaces general maritime law contribution and indemnity claims for OPA covered damages ................ 7

          2.    Transocean fails to allege any viable theory of indemnity against Anadarko for the maritime personal injury claims of the Plaintiffs in Pleading Bundles A and B3 ..................................................... 8

     B.    Count 2 for Contribution/Comparative Fault under the General Maritime Law Fails to State a Claim against Anadarko for which Relief Can Be Granted............................................................................................ 10

          1.    Transocean fails to allege any fault on the part of Anadarko ................ 10

          2.    Transocean is a litigating defendant, and therefore has no claim against Anadarko for contribution ........................................... 12

          3.    Transocean cannot recover its attorneys' fees or costs of suit as a matter of law ................................................................... 13

     C.    Count 5 for Contribution under OPA Fails to State a Claim against Anadarko for which Relief Can Be Granted..................................................... 14

     D.    Count 6 for Subrogation under OPA Fails to State a Claim against Anadarko for which Relief Can Be Granted..................................................... 15

     E.    Count 9 for Negligence Fails to State a Claim against Anadarko for which Relief Can Be Granted ....................................................................... 16

IV.   CONCLUSION................................................................................................. 19

i

## TABLE OF AUTHORITIES

Page

**CASES**

*Adams v. Texaco,*
   640 F.2d 618 (5th Cir. Unit A 1981) ...................................................................11

*Ainsworth v. Shell Offshore, Inc.,*
   829 F.2d 548 (5th Cir. 1987), *cert. denied*, 485 U.S. 1034 (1988).........................11

*Ashcroft v. Iqbal,*
   129 S. Ct. 1937 (2009)............................................................................................6, 7

*Authement v. Citgo Petroleum Corp.,*
   511 U.S. 1019 (1994)...................................................................................................19

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)................................................................................................6, 7

*Combo Mar., Inc. v. U.S. United Bulk Terminal, LLC,*
   615 F.3d 599 (5th Cir. 2010) ............................................................................2, 10, 12

*Cooper Stevedoring Co. v. Kopke,*
   417 U.S. 106 (1974).....................................................................................................10

*Croley v. Matson Navigation Co.,*
   434 F.2d 73 (5th Cir. 1970) .......................................................................................17

*Delta Commodities, Inc. v. M/T JO OAK, ETC.,*
   Civ. A. No. 88-1349, 1989 WL 149253 (E.D. La. Dec. 6, 1989)............................18

*Essex Builders Grp., Inc. v. Amerisure Ins. Co.,*
   429 F. Supp. 2d 1274 (M.D. Fla. 2005)................................................................13, 16

*Fla. Fuels, Inc. v. Citgo Petroleum Corp.,*
   6 F.3d 330 (5th Cir. 1993), *cert. denied*, *Authement v. Citgo Petroleum Corp.,*
   511 U.S. 1019 (1994)................................................................................................18

*Gulf Oil Corp. v. Bivins,*
   276 F.2d 753 (5th Cir. 1960) .....................................................................................17

*Halliburton Co. v. Norton Drilling Co.,*
   313 F.2d 380 (5th Cir. 1963) .......................................................................................6

*Hardy v. Gulf Oil Corp.,*
   949 F.2d 826 (5th Cir. 1992) .................................................................................1, 8

TABLE OF AUTHORITIES
(continued)

Page

*Hershey v. Energy Transfer Partners, L.P.*,
610 F.3d 239 (5th Cir. 2010) ......................................................................................6

*In re ALEX C Corp.*,
Civil Action Nos. 00-12500-DPW, 01-12186-DPW,
2010 WL 4292328 (D. Mass. Nov. 10, 2010) ......................................................14

*In re Great Lakes Dredge & Dock Co. LLC*,
624 F.3d 201 (5th Cir. 2010) ....................................................................................16

*In re Liberty Seafood, Inc.*,
38 F.3d 755 (5th Cir. 1994) ......................................................................................10

*In re Two-J Ranch, Inc.*,
534 F. Supp. 2d 671 (W.D. La. 2008)........................................................................9

*Jones v. Bock*,
549 U.S. 199 (2007).....................................................................................................7

*Loose v. Offshore Navigation, Inc.*,
670 F.2d 493 (5th Cir. 1982) ......................................................................................9

*Marathon Pipe Line Co. v. Drilling Rig ROWAN/ODESSA*,
761 F.2d 229 (5th Cir. 1985) ......................................................................................9

*Murphy v. Fla. Keys Elec. Coop. Ass'n, Inc.*,
329 F.3d 1311 (11th Cir. 2003) ................................................................................12

*Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atl. Corp.*,
924 F. Supp. 1436 (E.D. Va. 1996), *aff'd*, 122 F.3d 1062 (4th Cir. 1997) ..........8, 14

*Odd Bergs Tankrederi A/S v. S/T Gulfspray*,
650 F.2d 652 (5th Cir. Unit B 1981)...................................................................13, 14

*Ronquille v. MMR Offshore Servs., Inc.*,
353 F. Supp. 2d 680 (E.D. La. 2004)........................................................................12

*Thomas v. Burlington Res. Oil & Gas Co.*,
No. Civ. A. 99-3904, 2000 WL 1528082 (E.D. La. Oct. 13, 2000) (Barbier, J.) ....11

*United Gas Corp. v. Guillory*,
206 F.2d 49 (5th Cir. 1953) ...................................................................................6, 13

*United States v. Atl. Research Corp.*,
551 U.S. 128, 138 (2007)........................................................................................2, 10

TABLE OF AUTHORITIES
(continued)

Page

*United States v. Reliable Transfer Co.*,
  421 U.S. 397 (1975)...........................................................................................................9

*Weathersby v. Conoco Oil Co.*,
  752 F.2d 953 (5th Cir. 1984) ...........................................................................................14

**RULES**

Fed. R. Civ. P. 13 ..........................................................................................................13, 16

**STATUTES**

33 U.S.C. § 2701, *et seq.*................................................................................................2

33 U.S.C. § 2702..................................................................................................3, 7, 15, 16

33 U.S.C. § 2709.....................................................................................................7, 14, 15

33 U.S.C. § 2715...............................................................................................3, 7, 15, 16

**OTHER AUTHORITIES**

2-I BENEDICT ON ADMIRALTY § 13 ....................................................................................11

BLACK'S LAW DICTIONARY 353 (8th ed.2004) ...............................................................2, 10

6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND
  PROCEDURE § 1431 (2d ed. 1990)....................................................................................13

H.R. CONF. REP. NO. 101-653, at 111 (1990), *reprinted in* 1990 U.S.C.C.A.N. 779, 789 ...........15

RESTATEMENT (SECOND) OF TORTS § 886A(2)..................................................................11

**MAY IT PLEASE THE COURT:**

## I.
## INTRODUCTION

On April 20, 2011, Triton Asset Leasing GmbH, Transocean Holdings LLC, Transocean Offshore Deepwater Drilling Inc., and Transocean Deepwater Inc. (collectively "Transocean") asserted Cross-Claims against Anadarko Petroleum Corporation and Anadarko E&P Company, LP ("Anadarko E&P") (collectively "Anadarko"),[1] for contribution, indemnity, and negligence under the general maritime law, and for contribution and subrogation under the Oil Pollution Act ("OPA").[2]

Transocean alleges no new facts against Anadarko, instead incorporating by reference the Plaintiffs' allegations against Anadarko in the Amended Master Complaints for Pleading Bundles B1 and B3, and the Local Government Entity Master Complaint. Transocean's Cross-Claims against Anadarko therefore suffer from the same fatal infirmities as the Plaintiffs' claims and should be dismissed. Like the Plaintiffs, Transocean fails to allege any facts that show that Anadarko owed any duty to the Plaintiffs (or by extension to Transocean) or that Anadarko bears any measure of fault for the blowout, fire, explosion, and eventual sinking of the *Deepwater Horizon*. Taken as true, Transocean's allegations in fact show that there was no fault on the part of Anadarko, and therefore doom each of Transocean's Cross-Claims.

Specifically, Count 1 fails to state a *prima facia* indemnity claim against Anadarko. Indemnity "permits one tortfeasor to shift all of the loss onto another tortfeasor, provided that the

---

[1]    Simply for ease, this Motion refers to the movants together as "Anadarko." All movants are independent and distinct corporate entities, and by using the shorthand, movants do not suggest or acknowledge otherwise.

[2]    Transocean's Rule 13 Cross-Claims/Counter-Claims [Limitations Rec. Doc. 2068] (hereafter "Cross-Claims").

latter should appropriately answer for the entirety of the loss." *Hardy v. Gulf Oil Corp.*, 949 F.2d 826, 829-30 (5th Cir. 1992).  Transocean does not allege any relationship with Anadarko that would support a claim for indemnity and does not allege any facts that would demonstrate that Anadarko bears <u>any</u> share of the fault for the incident giving rise to Transocean's putative liability to the Plaintiffs, let alone the <u>entirety</u> of the fault.  Cross-Claims at ¶ 68.

Similarly, Count 2 fails to state a claim for contribution/comparative fault under the general maritime law.  Cross-Claims at ¶ 70.  "'Contribution is defined as the "tortfeasor's right to collect from others responsible for the same tort after the tortfeasor has paid more than his or her proportionate share, the shares being determined as a percentage of fault.'"  *Combo Mar., Inc. v. U.S. United Bulk Terminal, LLC*, 615 F.3d 599, 602-03 (5th Cir. 2010) (*quoting United States v. Atl. Research Corp.*, 551 U.S. 128, 138 (2007) (quoting BLACK'S LAW DICTIONARY 353 (8th ed.2004))).  Transocean's allegations affirmatively show that Anadarko is not in any way "responsible for the same tort," and that Anadarko should not bear any "percentage of fault" for the damages alleged by Plaintiffs.

Count 5, in which Transocean seeks contribution from Anadarko under OPA, 33 U.S.C. § 2701, *et seq.*, for "any amounts Transocean may be held liable to pay in judgment and/or settlement to, or as a result of, the B1, B3, C or D Claimants' Claims" fails to state a claim for the same reason.  Cross-Claims at ¶ 85.  First, there are no OPA claims asserted in the B3 or D Pleading Bundles for which OPA contribution could be available.[3]  Second, like contribution under the general maritime law, a claim for contribution for damages or removal costs paid to

---

[3]     Indeed, the D1 Pleading Bundle is limited to claims seeking <u>injunctive</u> relief against Transocean and BP, rather than damages or removal costs.  Anadarko is aware of no case allowing (or even discussing) contribution or indemnity for an injunctive relief claim.  Indeed, given that both contribution and indemnity serve to equitably proportion a damages judgment between joint tortfeasors, and that injunctive relief, by its very nature, is distinct from a damages judgment, it would be logically impossible for Transocean to receive contribution or indemnity for a claim for injunctive relief.

claimants under OPA requires a showing of fault on the part of Anadarko -- which Transocean fails to allege.

Count 6, in which Transocean seeks subrogation pursuant to OPA, 33 U.S.C. § 2702(d)(1)(A) and (B) or 33 U.S.C. § 2715, fails to state a *prima facia* claim for subrogation against Anadarko.  Cross-Claims at ¶ 87.  Subrogation under OPA allows a responsible party to recover from others the removal costs or damages it has paid to OPA claimants.  Transocean's subrogation claim fails for the same reason its contribution and indemnity claims fail: Transocean's allegations show that Anadarko does not bear <u>any</u> share of the fault for the discharge giving rise to removal costs and damages under OPA.

Finally, Count 9, asserting an "affirmative damage claim" of negligence for the total loss of the *Deepwater Horizon*, fails to state a claim against Anadarko.  Cross-Claims at ¶¶ 126-134. Because the Plaintiffs -- and therefore Transocean -- do not allege that Anadarko had a right to exercise operational control over any of the events, operations or instrumentalities that caused the blowout, fire, explosion, and sinking of the *Deepwater Horizon*, there is no allegation showing that Anadarko owed any duty to Transocean.  Transocean's negligence claim against Anadarko therefore must be dismissed.

## II.
## RELEVANT FACTUAL ALLEGATIONS IN TRANSOCEAN'S CROSS-CLAIMS.

Transocean admits that "at all time[s] material hereto," it was "the Owner, Managing Owners, Owners Pro Hac Vice, and/or Operators of the MODU *Deepwater Horizon*."  Cross-Claims at ¶ 6.  Transocean alleges that the *Deepwater Horizon*, "an ultra-deepwater dynamic positioned semi-submersible vessel," was leased to BP America Production Company, so that BP could "drill exploratory wells" at the Macondo prospect site in the OCS.  Cross-Claims at ¶ 45. Transocean alleges that BP Exploration & Production, Inc. was allowed by a Mineral

Management Service ("MMS") lease to "perform oil exploration, drilling and production-related operations" at the Macondo site.  Cross-Claims at ¶ 9.

Transocean alleges that on April 20, 2010, a blow-out occurred at "BP's Macondo well[,]" which resulted in "explosion(s) and a fire on the *Deepwater Horizon*."  Cross-Claims at ¶ 46.  The *Deepwater Horizon* sank on April 22, 2010.  *Id.*  Transocean alleges that "oil flowed from BP's Macondo Well, and continued to flow until approximately July 15, 2010, when BP finally capped the Macondo Well."  Cross-Claims at ¶ 47.  Transocean further alleges that BP implemented "a Response Plan including relief and recovery efforts to prevent oil from escaping from the Macondo Well, to manually contain the oil, and to disperse oil in the water using chemical dispersants."  Cross-Claims at ¶ 48.

Other than identifying Anadarko and alleging that it held a minority interest in the lease for the Macondo Prospect, the Cross-Claims include no specific allegations about Anadarko. Instead, Transocean adopts wholesale the "allegations and contentions" asserted against Anadarko by the Bundle A, B, C, and D Claimants, including the allegations of the First Amended Master Complaints for Pleading Bundles B1 and B3, and the Voluntary Local Government Entity Master Complaint.  Cross-Claims at ¶ 56 (adopting the allegations and contentions in MDL Rec. Doc. 1128, MDL Rec. Doc. 1812, and MDL Rec. Doc. 1510).

Transocean -- by incorporation of the Plaintiffs' allegations  -- alleges that Anadarko Petroleum Corporation and Anadarko E&P Company, LP are "oil and gas exploration" companies holding minority "working interest ownership percentages in the lease of the Macondo Prospect[.]"  Amend. Mast. Compl. B1 at ¶¶ 233-34, 247.  Transocean alleges that as a "non-operational leaseholder[]," Anadarko possessed a right to receive certain types of information about the drilling operations at the Macondo Prospect, including certain files and

records of audits, and a right to "access to Halliburton/Sperry Sun INSITE real-time data that was transmitted from the *Deepwater Horizon* on April 20, 2010." *Id.* at ¶¶ 282-85, 573; *see also* Amend. Mast. Compl. B3 ¶¶ 42-43, 219-220. Transocean further alleges that Anadarko was "on notice" of certain provisions of BP's well plan and possessed contractual rights to suggest proposed well plans, call meetings with BP, approve press releases, and conduct health, safety, and environmental inspections. Amend. Mast. Compl. B1 at ¶ 283-285. Solely by incorporation of the Plaintiffs' allegations, Transocean asserts that Anadarko "breached [its] duties to Plaintiffs by failing to warn the drilling vessel crew [*i.e.*, BP and Transocean] of the imminent blowout so that they could take evasive action." *Id.* at ¶ 573.

As set forth in the Anadarko Petroleum Corporation ("Anadarko"), Anadarko E&P Company, LP ("Anadarko E&P"), MOEX Offshore 2007 LLC ("MOEX Offshore"), and MOEX USA Corporation ("MOEX USA") (collectively "the Non-Operating Defendants")[4] Motions to Dismiss the Amended Master Complaints for Pleading Bundles B1 and B3, Plaintiffs' allegations against Anadarko fail to state any viable claims against Anadarko, and fail to allege any facts showing that Anadarko is in any measure at fault for their alleged injuries.[5] The Plaintiffs do not allege—and therefore Transocean does not allege—that Anadarko had operational involvement in, control of, or supervisory authority over the engineering or design of

---

[4]    Simply for ease, this Motion refers to these movants together as the "Non-Operating Defendants." All movants are independent and distinct corporate entities, and by using the shorthand, movants do not suggest or acknowledge otherwise.

[5]    Memorandum of Law in Support of Motion of Defendants Anadarko Petroleum Corporation, Anadarko E&P Company LP, MOEX Offshore 2007 LLC and MOEX USA Corporation to Dismiss First Amended Master Complaint, Cross-Claim and Third-Party Complaint for Private Economic Losses in Accordance with PTO No. 11 [CMO. No. 1] Section III (B1) Pursuant to Fed. R. Civ. P. 12(b)(6) [MDL Rec. Doc. 1414-1 ("B1 Motion to Dismiss")]; Memorandum of Law in Support of Motion of Defendants Anadarko Petroleum Corporation, Anadarko E&P Company LP, MOEX Offshore 2007 LLC and MOEX USA Corporation to Dismiss First Amended Master Complaint, Cross-Claim and Third-Party Complaint for Private Economic Losses in Accordance with PTO No. 11 [CMO. No. 1] Section III (B3) Pursuant to Fed. R. Civ. P. 12(b)(6) [MDL Rec. Doc. 1416-1 ("B3 Motion to Dismiss").

the Macondo well; the *Deepwater Horizon* or its crew; the drilling operations conducted at the Macondo Prospect; or the completion operations conducted on the Macondo well.  Indeed, unlike the Plaintiffs, there is no party to this litigation in better position than Transocean (with the possible exception of BP) to confirm that Anadarko had no right of operational control over the *Deepwater Horizon* and no contact with her crew.  There is <u>no</u> allegation in Transocean's pleadings showing that Anadarko had operational control or owed any duty of care directly to Transocean.  Absent such a right of operational control, Anadarko owed no duty to the Plaintiffs or to Transocean, and cannot be liable for contribution, indemnity, or subrogation to Transocean for Plaintiffs' injuries, or be liable for any injuries Transocean allegedly suffered.

### III.
### ARGUMENT

**TRANSOCEAN FAILS TO STATE ANY
CLAIM AGAINST ANADARKO
FOR WHICH RELIEF CAN BE GRANTED.**

The rules of pleading applicable to complaints are equally applicable to third-party complaints, cross-claims, and counterclaims for indemnity and contribution.  *See United Gas Corp. v. Guillory*, 206 F.2d 49, 52 (5th Cir. 1953); *Halliburton Co. v. Norton Drilling Co*., 313 F.2d 380, 380-81 (5th Cir. 1963) (third party complaint for contribution properly dismissed where third party complainant could not recover as a matter of law).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949-50 (citing *Twombly*, 550 U.S. at 555).  *See also Hershey v. Energy Transfer Partners*, *L.P.*, 610 F.3d 239, 245–46 (5th Cir. 2010) (same).

To state a claim for relief, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556).  If the factual allegations do not raise a right to relief "above the speculative level," *Twombly*, 550 U.S. at 555, or if the allegations reveal an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007), a claim should be dismissed. Under this standard, Transocean fails to state any claims against Anadarko for which relief can be granted.

**A.     Count 1 for Indemnity under the General Maritime Law Fails to State a Claim against Anadarko for which Relief Can Be Granted.**

Transocean's claim under the general maritime law for indemnity from Anadarko for "any amount Transocean may be held liable to pay in judgment and/or settlement to, or as a result of, the Bundle A, B, C and D Claimants' Claims" fails as a matter of law.  (Cross-Claims at ¶ 68).  Transocean alleges no viable legal basis for imposing an indemnity obligation on Anadarko and fails to allege any fault on the part of Anadarko.

**1.     Transocean's general maritime law indemnity and contribution claims do not apply to the claims of the Bundle B1 and C Plaintiffs, because OPA displaces general maritime law contribution and indemnity claims for OPA covered damages.**

As an initial matter, Plaintiffs in Pleading Bundles B1 and C assert claims for property damage and economic loss that are recoverable <u>only under OPA</u>.[6]  OPA specifically provides for

---

[6]     *See* B1 Motion to Dismiss at 10; Memorandum of Law in Support of Motion of Defendants Anadarko Petroleum Corporation and Anadarko E&P Company LP to Dismiss the Voluntary Master Complaint, Cross-Claim, and Third Party Complaint for Local Governmental Entities Pursuant to Fed. R.

contribution and the subrogation of claims.  *See* 33 U.S.C. § 2702(d)(1)(A) and (B); 33 U.S.C. § 2709; 33 U.S.C. § 2715.  "OPA clearly preempts maritime law as to recovery of cleanup expenses and the cost of compensating injured persons. . . . it, therefore, preempts the general maritime law as to recovery of cleanup expenses and the cost of compensating third parties." *Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atl. Corp.,* 924 F. Supp. 1436, 1447 (E.D. Va. 1996), *aff'd*, 122 F.3d 1062 (4th Cir. 1997).  To the extent Transocean's claims for indemnity and contribution under the general maritime law (Counts I and II) are intended to apply to the B1 and C Plaintiffs' economic loss and damage claims recoverable under OPA, Transocean "is restricted to the contribution scheme provided in the Act[]" with respect to damages paid pursuant to OPA, and cannot resort to the general maritime law.  *Id.* at 1449.  Transocean can only assert claims under the general maritime law for indemnity or contribution for the personal injury claims of plaintiffs in Pleading Bundles A and B3 because the Bundle A and B3 Plaintiffs' claims are not displaced by OPA.

2.   **Transocean fails to allege any viable theory of indemnity against Anadarko for the maritime personal injury claims of the Plaintiffs in Pleading Bundles A and B3.**

Indemnity "permits one tortfeasor to shift all of the loss onto another tortfeasor, provided that the latter should appropriately answer for the entirety of the loss."  *Hardy*, 949 F.2d at 829-30.  Though Transocean does not specifically allege <u>any</u> theory on which its indemnity claim against Anadarko is based, under maritime law's comparative fault system there are only three viable theories of maritime indemnity: (1) where a contract expressly provides for indemnification, (2) where the  "*Ryan* doctrine" applies, and (3) where a "vicariously liable or non-negligent tortfeasor is entitled to indemnity 'from a co-debtor guilty of actual fault.'"

---

Civ. P. 12(b)(6) [Pleading Bundle C] [MDL Rec. Doc. 2218-1] ("Local Government Motion to Dismiss") at 8.

*Hardy*, 949 F.2d at 833-34 (quoting *Marathon Pipe Line Co. v. Drilling Rig ROWAN/ODESSA*, 761 F.2d 229, 236 (5th Cir. 1985)).[7]   None is applicable to Transocean's Cross-Claims against Anadarko.

The first two potential indemnity theories are dispensed with easily.  Transocean does not allege any agreement -- and there is none -- by which Anadarko agreed to indemnify Transocean in connection with operations on the Macondo Prospect.  The *Ryan* doctrine also is plainly inapplicable because it applies only to permit a vessel to recover where a stevedore breached a warranty of workmanlike performance.  *In re Two-J Ranch, Inc.*, 534 F. Supp. 2d 671, 687 (W.D. La. 2008).

The third theory of indemnity also does not avail Transocean.  As noted, the Fifth Circuit rule is that "a vicariously liable or non-negligent tortfeasor may be entitled to indemnity 'from a co-debtor guilty of <u>actual fault</u>.'"  *Marathon Pipe Line Co.*, 761 F.2d at 236 (emphasis added).[8]  As discussed more fully below, Transocean fails to allege any "actual fault" on the part of Anadarko.  A party who "neither caused nor contributed" to an alleged tort is not liable for actual fault.  *Id*.  Further, a party who "had no control" over the alleged tort is not guilty of actual fault.

---

[7]     Maritime law imposes joint and several liability among joint tortfeasors, permitting a plaintiff to "to obtain full legal redress from any defendant, even if that defendant's actions were not solely responsible for the plaintiff's injuries."  *Hardy*, 949 F.2d at 829.  Thus, joint and several liability potentially can create the inequitable result that a defendant is required to bear the entire burden of multiple defendants' wrongs.  *Id.*  "The courts developed the principles of indemnity and contribution to alleviate this potentially unfair allocation of responsibility."  *Id.*  In *United States v. Reliable Transfer Co.*, the Supreme Court instituted a system of comparative fault in maritime cases, obviating resort to indemnity in almost all maritime cases.  421 U.S. 397, 411 (1975); *see, e.g., Loose v. Offshore Navigation, Inc.*, 670 F.2d 493, 501 (5th Cir. 1982) ("A comparative fault system not only eliminates the doctrine of contributory negligence but also apportions fault among joint tortfeasors in accordance with a precise determination, not merely equally or all-or-none.").

[8]     No plaintiff alleges that Transocean is vicariously liable for the alleged torts of Anadarko.  Indeed, the Plaintiffs expressly disclaim any theory of vicarious liability applicable to Anadarko.  Plaintiffs' Memorandum of Law in Opposition to the MOEX and Anadarko Defendants' Motions to Dismiss Plaintiffs' Negligence Claims and Motions to Dismiss the OPA Claims Against Anadarko E&P [MDL Rec. Doc. 1803] at 9.  Nor does Transocean allege any relationship with Anadarko, such as *respondeat superior*, joint venture, agency, or partnership, that would provide any basis for a finding of vicarious liability (and there is none).

*Id.*  Transocean, by wholesale adoption of Plaintiffs' defective allegations against Anadarko, fails to allege that Anadarko in any way "caused or contributed" to the torts giving rise to Plaintiffs' injuries, let alone that Anadarko should appropriately bear the <u>entire</u> share of fault for Plaintiffs' injuries.  Transocean's maritime indemnity claim fails as a matter of law.

**B.      Count 2 for Contribution/Comparative Fault under the General Maritime Law Fails to State a Claim against Anadarko for which Relief Can Be Granted.**

Transocean alleges that pursuant to the general maritime law, Transocean is entitled to contribution "for any amount Transocean may be held liable to pay in judgment/or settlement to, or as a result of, the Bundle A, B, C and D Claimants' Claims…." (Cross-Claims at ¶ 70). Contribution is the "tortfeasor's right to collect from others responsible for the same tort after the tortfeasor has paid more than his or her proportionate share, <u>the shares being determined as a percentage of fault</u>."  *Combo Mar., Inc.*, 615 F.3d at 602 (*quoting Atl. Research Corp.*, 551 U.S. at 138 (2007) (quoting BLACK'S LAW DICTIONARY 353)) (emphasis added).  Transocean alleges no facts showing that Anadarko bears <u>any</u> fault for Plaintiffs' alleged personal injuries, and therefore fails to state a claim for maritime contribution.[9]

### 1.      Transocean fails to allege any fault on the part of Anadarko.

It is well-established that, where a party is entitled to contribution, that party is only entitled to contribution in proportion to the negligence or fault of a third party.  *Cooper Stevedoring Co. v. Kopke*, 417 U.S. 106, 115 (1974) ("Contribution rests upon a finding of

---

[9]      Transocean, like Anadarko, argues that federal law and the general maritime law exclusively govern this case.  *See* Reply Brief in Support of Transocean's Rule 12(b)(6) Motion to Dismiss the First Amended B1 Master Claim in Limitation and the First Amended B1 Master Complaint  [MDL Rec. Doc. 2188] at 4.  Like Anadarko in its own cross-claims [Limitations Rec. Doc. 338 at ¶ 90], Transocean alleges in an abundance of caution that "in the unlikely event that the general maritime law is held not to apply, Transocean is entitled to indemnity against Cross-Defendants under state law."  Cross-Claims at ¶ 68.  Accordingly, Anadarko does not here challenge Transocean's assertion that, if maritime law does not apply, "Transocean is entitled to contribution . . . under state law."  Cross-Claims at ¶ 70.  Anadarko reserves the right to contest Transocean's entitlement to contribution or any other form of relief under state law in the event the Court rules that state law may be applicable to this case.

concurrent fault."); *In re Liberty Seafood*, *Inc.*, 38 F.3d 755, 757 (5th Cir. 1994) (holding that "contribution from the third-party tortfeasor" must be "in proportion to the third-party's fault"); *Adams v. Texaco*, 640 F.2d 618, 621 (5th Cir. Unit A 1981) (stating that "a concurrently negligent tortfeasor should proportionately contribute . . . . to the extent occasioned by its fault"); RESTATEMENT (SECOND) OF TORTS § 886A(2) ("No tortfeasor can be required to make contribution beyond his own equitable share of the liability.").  "[A] non-negligent tortfeasor is 0% at fault."  2-I BENEDICT ON ADMIRALTY § 13.  It follows that a non-negligent tortfeasor cannot be liable for contribution.  *Id.*

For the same reasons that the B1 and B3 Plaintiffs fail to state negligence claims against Anadarko, Transocean, by its adoption of the Plaintiffs' allegations, fails to state a claim for contribution.   By adopting Plaintiffs' defective allegations, Transocean alleges only that Anadarko possessed a non-operating interest in the MMS lease and had a right "to conduct 'health, safety, and environmental ["HSE"] inspection[s]' with a 'right of access to activities and operations' on the rig, as well as access to BP's files, audits, and statistics" on HSE issues. Amend. Mast. Compl. B1 at ¶¶ 233-34, 247, 282-285.  Transocean does not allege that Anadarko had a right to exercise or in fact exercised operational control over any activity allegedly giving rise to Plaintiffs' injuries.

As argued in the Non-Operating Defendants' B1 Motion to Dismiss and B3 Motion to Dismiss,[10] it is fundamental that a duty to prevent harm resulting from oil and gas operations arises as a consequence of operational control over the activity.  *See, e.g.*, *Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548, 550 (5th Cir. 1987), *cert. denied*, 485 U.S. 1034 (1988).  It is also settled law that where a principal contracts with an independent contractor to conduct oil and gas

---

[10]    Anadarko expressly incorporates by reference the B1 Motion to Dismiss, the B3 Motion to Dismiss, and the Local Government Motion to Dismiss.

operations but retains no operational control, the principal neither assumes nor owes any duty to protect others from the contractor's negligence. *Thomas v. Burlington Res. Oil & Gas Co.*, No. Civ. A. 99-3904, 2000 WL 1528082, at *1-2 (E.D. La. Oct. 13, 2000) (Barbier, J.). Even where a principal without operational control has <u>actual knowledge</u> of dangerous conditions on an oil rig, the principal has no legal duty to intercede. *See id.* at *2; *Ronquille v. MMR Offshore Servs., Inc.*, 353 F. Supp. 2d 680, 682 (E.D. La. 2004) (the presence of a company representative on an oil platform with knowledge of the rig's operations "is insufficient to create a duty; therefore, the law does not support the imposition of liability for any failure to intercede"). The Plaintiffs, and therefore by adoption Transocean, fail to allege that Anadarko had a right to control any aspect of the *Deepwater Horizon*'s drilling operations, or any other instrumentality or operation allegedly giving rise to the Plaintiffs' injuries. Thus, as a matter of law, Plaintiffs have no claim for negligence against Anadarko for which relief can be granted. Accordingly, Transocean has no claim for contribution against Anadarko because a non-negligent defendant is not liable for contribution. Transocean's maritime contribution claim therefore must be dismissed.

### 2. Transocean is a litigating defendant, and therefore has no claim against Anadarko for contribution.

Under maritime law, "federal courts allocate damages based upon the parties' respective degrees of fault." *Combo Mar., Inc.*, 615 F.3d at 602 (citations omitted). "Because a right of contribution requires that a defendant pay more than he owes, and the proportionate share rule dictates that a defendant pays only his share of the judgment -- no more, no less -- a litigating defendant could never have a contribution claim, by definition." *Id.* at 604. *See also Murphy v. Fla. Keys Elec. Coop. Ass'n, Inc.*, 329 F.3d 1311, 1316 (11th Cir. 2003) (stating that, under maritime law, "[n]o suit for contribution will lie against a nonsettling defendant who is not released from liability, because that defendant remains liable for its proportionate share of

damages regardless of the terms of the settlement the other defendant made").  Only by alleging that it has settled with a plaintiff and procured a global release for all potential defendants, including Anadarko, could Transocean obtain a right to seek contribution from other potentially liable parties.

While the Fifth Circuit has held that no damages or settlement need have been paid to any claimant to state a <u>contingent</u> claim for contribution or indemnity, *see Guillory*, 206 F.2d at 52,[11] Transocean specifically alleges that it is defending against the claims asserted by the Bundle A, B, C, and D Claimants.  *See* Cross-Claims at ¶¶ 51-54 (asserting that "Transocean has or will file 12(b) Motions to Dismiss or Answers in Response to the [Bundle A, B, C, and D Claims] and Transocean will deny, or has denied, that it is liable, in whole or in part, to the [Bundle A, B, C, and D Claimants] on account of . . . their claims").  Thus, as a matter of law, Transocean cannot assert a maritime contribution claim against Anadarko.

### 3.    Transocean cannot recover its attorneys' fees or costs of suit as a matter of law.

In its indemnity, contribution, and subrogation claims, Transocean seeks reimbursement of court costs; attorneys' fees for defending the Bundle A, B, C, and D Claimants' Claims; and attorneys' fees and court costs for pursuing its Cross-Claims.  Cross-Claims at ¶¶ 68, 70, 85, 87.  Even if Transocean asserts a viable contribution or indemnity claim against Anadarko (which it does not), Transocean cannot recover its costs and fees.  In *Odd Bergs Tankrederi A/S v. S/T Gulfspray*, the Fifth Circuit held that in maritime contribution suits not founded on a contract, "attorney's fees and legal costs incurred by the defending tortfeasor [are] not recoverable in

---

[11]     *See also* 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 1431 (2d ed. 1990) (Fed. R. Civ. P. 13(g) "does not require that the claim be mature at the time of pleading[;]" hence, "a cross-claim can be contingent upon the ultimate adjudication of the cross-claimant's liability to plaintiff"); *Essex Builders Grp, Inc. v. Amerisure Ins. Co*., 429 F.Supp.2d 1274, 1279 (M.D. Fla. 2005) (permitting contingent cross-claim for equitable subrogation and contribution).

contribution from the other negligent parties."  650 F.2d 652, 655 (5th Cir. Unit B 1981).  This is the rule because a tortfeasor "defends against claims of its own negligence . . . . [and] would incur the same legal expenses whether or not other parties were partly at fault for the loss and whether or not these other tortfeasors were in the action defending against claims directed against their own negligence."  *Id.* at 654.

The Fifth Circuit has also held that there is "no right to recover attorney's fees and costs incurred in establishing [the] right to indemnification . . . ."  *Weathersby v. Conoco Oil Co.*, 752 F.2d 953, 959 (5th Cir. 1984).  Transocean alleges no basis for deviating from these well established rules.  Transocean's claims for attorneys' fees, court costs, and costs of suit in defending Plaintiffs' underlying actions and prosecuting its Cross-Claims against Anadarko must be dismissed.

**C.    Count 5 for Contribution under OPA Fails to State a Claim against Anadarko for which Relief Can Be Granted.**

Transocean asserts an OPA contribution claim against Anadarko pursuant to 33 U.S.C. § 2709 for "any amounts Transocean may be held liable to pay in judgment and/or settlement to, or as a result of, the Bundle B1, B3, C and D Claimants' Claims[.]"[12]  Cross-Claims at ¶ 85. Section 2709 provides: "[a] person may bring a civil action for contribution against any other person who is liable or potentially liable under this Act or another law."  33 U.S.C. § 2709.

Courts applying OPA contribution under Section 2709 have employed the same standards for allocating proportional fault among jointly liable parties as are used in analogous contribution actions under the general maritime law.  *See In re ALEX C Corp.*, Civil Action Nos. 00-12500-DPW, 01-12186-DPW, 2010 WL 4292328 at *15 (D. Mass. Nov. 10, 2010) (allocating

---

[12]    As argued above, only Plaintiffs in Bundles B1 and C assert claims under OPA, and thus Transocean cannot seek contribution under OPA for the claims of the Bundle A, B3, or D Plaintiffs.

proportional fault among two parties liable under OPA by reference to general maritime law); *Nat'l Shipping Co. of Saudi Arabia*, 924 F. Supp. at 1446 n.4 (applying maritime negligence principles to OPA contribution claim).  Legislative history also confirms that Congress intended contribution under Section 2709 to be made upon findings of relative fault for the discharge.  *See* H.R. CONF. REP. No. 101-653, at 111 (1990), *reprinted in* 1990 U.S.C.C.A.N. 779, 789 (explaining that if the "action or omission" of a third party not designated a responsible party "contributed to the discharge" then the third party could be held "accountable financially in part or in whole" under Section 2709).

Thus, adjudication of a contribution claim under OPA is no different than adjudication of a contribution claim under the general maritime law.  As discussed above, a non-negligent party cannot be liable for contribution because a non-negligent party appropriately bears 0% of the proportional fault for the discharge.  Because Transocean fails to set forth allegations showing that Anadarko bears <u>any</u> measure of fault for the discharge, Transocean's claim for contribution under OPA must be dismissed.

**D.    Count 6 for Subrogation under OPA Fails to State a Claim against Anadarko for which Relief Can Be Granted.**

Transocean also asserts an OPA claim for subrogation pursuant to 33 U.S.C. § 2702(d)(1)(A) and (B) or 33 U.S.C. § 2715.  Section 2702(d)(B) provides:

> If the responsible party alleges that the discharge or threat of a discharge was caused solely by an act or omission of a third party, the responsible party--
>
> > (i) in accordance with section 2713 of this title, <u>shall pay removal costs and damages to any claimant</u>; and
> >
> > (ii) shall be entitled by subrogation to all rights of the United States Government and the claimant to recover removal costs or damages from the third party or the Fund paid under this subsection.

(emphasis added).  33 U.S.C. § 2715 further provides that anyone "who pays compensation pursuant to [OPA] to any claimant for removal costs or damages shall be subrogated to all rights, claims, and causes of action that the claimant has under any other law."

Transocean does not allege that it has paid any removal costs or damages to any claimant. Nonetheless Anadarko assumes for the sake of argument that Transocean may assert a contingent claim for subrogation under OPA.  *See Essex Builders Grp., Inc. v. Amerisure Ins. Co.*, 429 F.Supp.2d at 1279 (permitting contingent cross-claim for equitable subrogation under Fed. R. Civ. P. 13(g)).  As argued above, Transocean -- by adoption of the Plaintiffs' allegations -- does not allege that the "discharge was caused <u>solely</u> by an act or omission" of Anadarko.  33 U.S.C. § 2702(d)(A) and (B) (emphasis added).  No plaintiff alleges that the discharge was caused <u>solely</u> by Anadarko; indeed, Plaintiffs' allegations fail to establish that the Anadarko bears <u>any</u> responsibility for the discharge.  Nor does Transocean have any contingent claim for subrogation under Section 2715, because, as argued in the B1 and B3 Motions to Dismiss, Plaintiffs fail to state any viable claims against Anadarko "under any other law."  33 U.S.C. § 2715.  Because Transocean has no claim for subrogation against Anadarko, Count 6 must be dismissed.

**E.     Count 9 for Negligence Fails to State a Claim against Anadarko for which Relief Can Be Granted.**

Finally, Transocean claims that the "negligent acts, omissions, or culpable conduct" of Anadarko caused the total loss of the *Deepwater Horizon*.  Cross-Claims at ¶ 132.  Because Transocean has not set forth allegations sufficient to state a plausible claim for negligence against Anadarko, Transocean's negligence claim must be dismissed.

To state a claim for negligence, "the plaintiff must demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by [the] plaintiff, and a causal connection between the defendant's conduct and the plaintiff's injury."  *In re Great*

*Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 211 (5th Cir. 2010) (internal citations and quotations omitted).  By incorporation and adoption of Plaintiffs' allegations, Transocean fails to set forth any allegations that Anadarko -- as a "non-operational leaseholder[]" of the mineral rights to the Macondo Prospect -- owed any duty to Transocean.

Plaintiffs' theory of liability against Anadarko (which Transocean adopts) is based primarily on their conclusory allegation that by virtue of access to data from the rig, Anadarko "knew or should have known of the presence of hydrocarbons in the well" and therefore "owed a duty to Plaintiffs to warn [BP or the crew of the *Deepwater Horizon*] of the impending disaster in sufficient time to avert it."  Amend. B1 Mast. Compl. ¶ 573.  Plaintiffs nowhere allege that Anadarko owes any duty to Transocean, and Transocean does not include any such allegation in its Cross-Claims.  Transocean's failure to state a claim for negligence is thus even <u>more</u> evident than Plaintiffs'.

Plaintiffs do not identify the source of any duty on the part of Anadarko to warn BP or Transocean of danger, because none exists.  Plaintiffs do not point to any such obligation under the Operating Agreement between the Non-Operating Defendants and BP, which entrusts operations on the leased property exclusively to BP as an independent contractor.  Exhibit A to B1 Motion to Dismiss at 14, Article 5.1 [MDL Rec. Doc. 1414-2].  Nor is any such duty to be found in the case law.

Indeed, the very notion that Anadarko had a duty to alert <u>Transocean</u> to information that it received <u>from Transocean's rig</u> -- which was at all pertinent times under the operational control of Transocean and BP -- is specious.  Leaseholders such as Anadarko owe no duty to warn independent contractors of hazardous conditions on the leased property when the independent contractors "know or should know of the existence of a particular condition and []

appreciate or should appreciate its dangers." *Gulf Oil Corp. v. Bivins*, 276 F.2d 753, 756 (5th Cir. 1960) (premises liability); *Croley v. Matson Navigation Co.*, 434 F.2d 73, 75 (5th Cir. 1970) ("[T]here is no duty on the owner to warn the employees of the contractor if they are already fully aware of the danger") (negligence). The alleged connection is even more tenuous here: Transocean is not even Anadarko's independent contractor -- Anadarko has no contractual relationship with Transocean whatsoever.

At most, Plaintiffs allege only that Anadarko had access to the same data that was available to BP, Transocean and other contractors and employees on the rig. Amend. B1 Mast. Compl. ¶¶ 573–74. Plaintiffs do not allege that Anadarko was monitoring rig data at the precise moment that hydrocarbons allegedly entered the well or at any pertinent time thereafter.[13] Nevertheless, taking Plaintiffs' implausible allegations at face-value -- as Transocean apparently does -- it must follow that if Anadarko "knew or should have known of the entry of hydrocarbons into the well," BP, Transocean, and BP's other contractors also "knew or should have known" of the same information, and Anadarko therefore had no duty to warn BP, or by any extension, a duty to warn Transocean.

Moreover, not only would such a warning have been futile, but also as a matter of law, the failure to alert BP and others on the rig to the information Plaintiffs allege could not have proximately caused the loss of the *Deepwater Horizon*, because BP and Transocean took the actions they did while already in possession of the same information. *See Delta Commodities, Inc. v. M/T JO OAK, ETC.*, Civ. A. No. 88-1349, 1989 WL 149253, at *4–5 (E.D. La. Dec. 6, 1989). Thus, even if a duty existed, which it does not, Transocean still has not stated a claim for negligence against Anadarko. *See Fla. Fuels, Inc. v. Citgo Petroleum Corp.*, 6 F.3d 330, 333

---

[13]     Indeed, the information available second-hand to Anadarko was necessarily incomplete because without knowledge of the rig's contemporaneous operations, Anadarko had no way of interpreting the data transmitted by the rig.

(5th Cir. 1993) (maritime law elements of negligence are "<u>a causal connection between the negligence and the injury</u>, the invasion of a legally protected interest, and lack of a countervailing legally protected interest as a defense to liability") (emphasis added), *cert. denied*, *Authement v. Citgo Petroleum Corp*., 511 U.S. 1019 (1994).  Based upon Plaintiffs' factual allegations, Transocean's negligence claim against Anadarko is foreclosed as a matter of law, and must be dismissed.

## IV.
## <u>CONCLUSION</u>

For the foregoing reasons, Transocean's Cross-Claims against Anadarko Petroleum Corporation and Anadarko E&P Company LP must be dismissed in their entirety.

Respectfully submitted,

DATED: May 20, 2011               BINGHAM McCUTCHEN, LLP


/s/ *Ky E. Kirby*_____
Ky E. Kirby
ky.kirby@bingham.com
David B. Salmons
david.salmons@bingham.com
Michael B. Wigmore
michael.wigmore@bingham.com
Warren Anthony Fitch
tony.fitch@bingham.com
Randall M. Levine
randall.levine@bingham.com
2020 K Street, NW
Washington, DC 20006-1806
Telephone (202) 373-6000
Facsimile (202) 373-6001

James J. Dragna
jim.dragna@bingham.com
Bingham McCutchen LLP
355 South Grand Avenue
Suite 4400

Los Angeles, California 90071-3106
Telephone (213) 680-6436
Facsimile (213) 680-8636

KUCHLER POLK SCHELL
WEINER & RICHESON, LLC

Deborah D. Kuchler, T.A. (La. Bar No. 17013)
dkuchler@kuchlerpolk.com
Janika Polk (La. Bar No. 27608)
jpolk@kuchlerpolk.com
Robert Guidry (La. Bar No. 28064)
rguidry@kuchlerpolk.com
1615 Poydras Street, Suite 1300
New Orleans, LA  70112
Tel:  (504) 592-0691
Fax:  (504) 592-0696

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, pursuant to Pre-trial Order No. 12, I have caused the foregoing to be served on all counsel via the Lexis Nexis File & Serve system, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, who will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on May 20, 2011.


_____ */s/ Ky E. Kirby* _____
Ky E. Kirby