UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | MDL No. 2179 |
| | SECTION: J |
| IN RE THE COMPLAINT AND PETITION OF TRITON ASSET LEASING GmbH, ET AL., IN A CAUSE OF EXONERATION FROM OR LIMITATION OF LIABILITY | JUDGE BARBIER |
| | MAGISTRATE SHUSHAN |
| This Document applies to: *C.A. No. 10-2771* | |

## TRANSOCEAN'S ANSWER TO THE CLAIMS, COUNTER-CLAIMS, AND CROSS-CLAIMS OF CAMERON INTERNATIONAL CORPORATION

Defendants Transocean Offshore Deepwater Drilling, Inc. ("TODDI"), Transocean Deepwater Inc. ("TDI"), Transocean Holdings LLC ("TH") and Triton Asset Leasing GmbH ("Triton") (collectively "Transocean" or "Transocean Defendants") respond to the Answer to the Claims, Counter-Claims, and Cross-Claims of Cameron International Corporation ("Cameron"), **Dkt. 412**, and, upon information and belief, respectfully show as follows:

### ANSWER

For each and every allegation of the Claims, Counter-Claims, and Cross-Claims, Transocean responds as follows. When a paragraph in the Claims, Counter-Claims, and Cross-Claims contain multiple subparts, the response of Transocean to the paragraph applies equally to all subparts unless otherwise expressly stated.

Cameron's Claims against Petitioners and Cross-Claims against impleaded Co-Defendants commence with Paragraph 29. Accordingly, Transocean will respond with correspondingly numbered paragraphs.

12556842.2

29. The Transocean Defendants admit they initiated this proceeding and are therefore already parties to this action. The Transocean Defendants admit that the Cross-Defendants have been named Defendants in one or more pleadings in this action and are therefore already parties to this action. Transocean is without sufficient knowledge or information to form a belief as to whether the remaining allegations set forth in Paragraph 29 and, therefore, denies all aspects and implications of the remaining allegations in Paragraph 29.

30. Transocean admits that the *Deepwater Horizon* was leased and/or chartered to BP pursuant to the December 9, 1998 Drilling Contract between Vastar Resources, Inc. and R&B Falcon Drilling Co. and the amendments thereto. Transocean further states that allegations in Paragraph 30 are characterizations of the Drilling Contract and its corresponding exhibits, which speak for themselves, are the best evidence of their content, and as to which no response is required.

31. Transocean admits the allegations contained in Paragraph 31. The allegations in Paragraph 31 are characterizations of the Drilling Contract, which speaks for itself, is the best evidence of its content, and as to which no response is required, but out of an abundance of caution, Transocean denies the allegations contained in Paragraph 31.

32. The allegations in Paragraph 32 are characterizations of the Drilling Contract, which speaks for itself, is the best evidence of its content, and as to which no response is required, but out of an abundance of caution, Transocean denies the allegations contained in Paragraph 32.

33. Transocean denies all aspects and implications of the allegations in Paragraph 33.

34. Transocean admits that TH is a successor to R&B Falcon as the CONTRACTOR under the DRILLING CONTRACT. To the extent not expressly admitted, Transocean denies all aspects and implications of the allegations in Paragraph 34.

35. Transocean admits that any "TERMS AND CONDITIONS" of any written agreements or purchase orders between R&B Falcon and Cameron, should they exist, speak for themselves, are the best evidence of their content, and do not require a response, but out of an abundance of caution, Transocean denies all aspects and implications of the allegations in Paragraph 35.

36. Transocean admits that any "TERMS AND CONDITIONS" of any written agreements or purchase orders between R&B Falcon and Cameron, should they exist, speak for themselves, are the best evidence of their content, and do not require a response, but out of an abundance of caution, Transocean denies all aspects and implications of the allegations in Paragraph 36.

37. Transocean admits that any "TERMS AND CONDITIONS" of any written agreements or purchase orders between R&B Falcon and Cameron, should they exist, speak for themselves, are the best evidence of their content, and do not require a response, but out of an abundance of caution, Transocean denies all aspects and implications of the allegations in Paragraph 37.

38. Transocean denies all aspects and implications of the allegations in Paragraph 38.

39. Transocean admits that any Master Service Agreement between any of the Transocean Defendants and Cameron, should it exist, speaks for itself, is the best evidence of its content, and does not require a response, but out of an abundance of caution, Transocean denies all aspects and implications of the allegations in Paragraph 39.

40.     Transocean admits that any Master Service Agreement between any of the Transocean Defendants and Cameron, should it exist, speaks for itself, is the best evidence of its content, and does not require a response, but out of an abundance of caution, Transocean denies all aspects and implications of the allegations in Paragraph 40.

41.     Transocean admits that any Master Service Agreement between any of the Transocean Defendants and Cameron, should it exist, speaks for itself, is the best evidence of its content, and does not require a response, but out of an abundance of caution, Transocean denies all aspects and implications of the allegations in Paragraph 41.

42.     Transocean admits that any Master Service Agreement between any of the Transocean Defendants and Cameron, should it exist, speaks for itself, is the best evidence of its content, and does not require a response, but out of an abundance of caution, Transocean denies all aspects and implications of the allegations in Paragraph 42.

43.     Transocean admits that any Master Service Agreement between any of the Transocean Defendants and Cameron, should it exist, speaks for itself, is the best evidence of its content, and does not require a response, but out of an abundance of caution, Transocean denies all aspects and implications of the allegations in Paragraph 43.

44.     Transocean admits that any Master Service Agreement between any of the Transocean Defendants and Cameron, should it exist, speaks for itself, is the best evidence of its content, and does not require a response, but out of an abundance of caution, Transocean denies all aspects and implications of the allegations in Paragraph 44.

45.     The allegations in Paragraph 45 contain characterizations of a Master Service Agreement.  Transocean admits that any Master Service Agreement between any of the Transocean Defendants and Cameron, should it exist, speaks for itself, is the best evidence of its

content, and does not require a response, but out of an abundance of caution, Transocean denies all aspects and implications of the allegations in Paragraph 45.

46. Transocean denies all aspects and implications of the allegations in Paragraph 46.

47. Transocean denies all aspects and implications of the allegations in Paragraph 47.

48. The allegations in Paragraph 48 contain characterizations of a Master Service Agreement between Applied Drilling Technology, Inc. and Cameron. Transocean admits that any such Master Service Agreement, should it exist, speaks for itself, is the best evidence of its content, and does not require a response, but out of an abundance of caution, Transocean denies all aspects and implications of the allegations in Paragraph 48.

49. Transocean admits that any Master Service Agreement between Applied Drilling Technology, Inc. and Cameron, should it exist, speaks for itself, is the best evidence of its content, and does not require a response, but out of an abundance of caution, Transocean denies all aspects and implications of the allegations in Paragraph 49.

50. The allegations in Paragraph 50 contain characterizations of a Master Service Agreement between Applied Drilling Technology, Inc. and Cameron. Transocean admits that any such Master Service Agreement, should it exist, speaks for itself, is the best evidence of its content, and does not require a response, but out of an abundance of caution, Transocean denies all aspects and implications of the allegations in Paragraph 50.

51. Transocean denies all aspects and implications of the allegations in Paragraph 51.

52. Transocean denies all aspects and implications of the allegations in Paragraph 52.

53. Transocean denies all aspects and implications of the allegations in Paragraph 53.

54. Transocean denies all aspects and implications of the allegations in Paragraph 54.

55. Transocean denies all aspects and implications of the allegations in Paragraph 55.

56. Transocean denies all aspects and implications of the allegations in Paragraph 56.

57. Transocean admits that on April 20, 2010, the Macondo well blew out, that an explosion and fire occurred on the *Deepwater Horizon*, and that oil flowed into the Gulf of Mexico. To the extent not expressly admitted, Transocean denies all aspects and implications of the allegations in Paragraph 57.

58. Transocean admits that Cameron has been named a Defendant in lawsuits based upon the Macondo well blow out and the resulting explosion, and fire, and the oil flow into the Gulf of Mexico. To the extent not expressly admitted, Transocean denies all aspects and implications of the allegations in Paragraph 58.

59. Transocean denies all aspects and implications of the allegations in Paragraph 59.

60. Transocean admits that persons other than persons described in Paragraph 59 have filed lawsuits alleging damages as a result of the Macondo well oil spill seeking to impose liability on and recover damages from Cameron. To the extent not expressly admitted, Transocean denies all aspects and implications of the allegations in Paragraph 60.

61. Transocean admits that Cameron has made a written demand dated August 10, 2010, but denies that the demand was made upon any one or more of the Transocean Defendants. To the extent not expressly admitted, Transocean denies all aspects and implications of the allegations in Paragraph 61.

62. Transocean admits that Transocean has written to BP America demanding that BP America comply with BP's obligations under Sections 24.2 and 25.1 of the DRILLING CONTRACT with respect to the indemnity claims of Cameron against Transocean, that despite BP's unambiguous contractual commitment in the DRILLING CONTRACT, BP has not

undertaken any responsibility for the alleged pollution liability and resulting costs of Cameron. To the extent not expressly admitted, Transocean denies all aspects and implications of the allegations in Paragraph 62.

63. Transocean admits that BP America began drilling the Macondo well on the MMS Lease with a Transocean drilling unit, the *Marianas*. The remaining allegations in Paragraph 63 either do not pertain to Transocean, or Transocean is without sufficient knowledge or information to form a belief as to whether the allegations set forth in Paragraph 63 are true, and, therefore, denies all aspects and implications of the remaining allegations in Paragraph 63.

64. Transocean admits that on or about January, 2010, the *Deepwater Horizon* arrived at the MMS Lease to conduct drilling of the Macondo well pursuant to the terms of the DRILLING CONTRACT. To the extent not expressly admitted, Transocean denies all aspects and implications of the allegations in Paragraph 64.

65. Transocean denies all aspects and implications of the allegations in Paragraph 65.

66. Transocean denies all aspects and implications of the allegations in Paragraph 66.

67. Transocean admits that Halliburton was the cementing contractor on the Macondo well. The remaining allegations contained in Paragraph 67 are not directed at Transocean and therefore do not require a response by Transocean. To the extent that the allegations in Paragraph 67 are directed at Transocean, Transocean denies all aspects and implications of the allegations.

68. Transocean admits the allegations in Paragraph 68.

69. Transocean denies all aspects and implications of the allegations in Paragraph 69.

70. Transocean denies all aspects and implications of the allegations in Paragraph 70.

71. Transocean denies all aspects and implications of the allegations in Paragraph 71.

12556842.2

72. Transocean denies all aspects and implications of the allegations in Paragraph 72.

73. Transocean denies all aspects and implications of the allegations in Paragraph 73.

74. The allegations contained in Paragraph 74 (and subparts) are not directed at Transocean and therefore do not require a response by Transocean.  To the extent that the allegations in Paragraph 74 are directed at Transocean, Transocean denies all aspects and implications of the allegations.

75. Transocean denies all aspects and implications of the allegations in Paragraph 75 (and subparts).

76. The allegations contained in Paragraph 76 are not directed at Transocean and therefore do not require a response by Transocean.  To the extent that the allegations in Paragraph 76 are directed at Transocean, Transocean denies all aspects and implications of the allegations.

77. The allegations contained in Paragraph 77 are not directed at Transocean and therefore do not require a response by Transocean.  To the extent that the allegations in Paragraph 77 are directed at Transocean, Transocean denies all aspects and implications of the allegations.

78. The allegations contained in Paragraph 78 are not directed at Transocean and therefore do not require a response by Transocean.  To the extent that the allegations in Paragraph 78 are directed at Transocean, Transocean denies all aspects and implications of the allegations.

79. The allegations contained in Paragraph 79 are not directed at Transocean and therefore do not require a response by Transocean.  To the extent that the allegations in

Paragraph 79 are directed at Transocean, Transocean denies all aspects and implications of the allegations.

80. The allegations contained in Paragraph 80 are not directed at Transocean and therefore do not require a response by Transocean. To the extent that the allegations in Paragraph 80 are directed at Transocean, Transocean denies all aspects and implications of the allegations.

81. The allegations contained in Paragraph 81 are not directed at Transocean and therefore do not require a response by Transocean. To the extent that the allegations in Paragraph 81 are directed at Transocean, Transocean denies all aspects and implications of the allegations.

82. The allegations contained in Paragraph 82 are not directed at Transocean and therefore do not require a response by Transocean. To the extent that the allegations in Paragraph 82 are directed at Transocean, Transocean denies all aspects and implications of the allegations.

83. The allegations contained in Paragraph 83 are not directed at Transocean and therefore do not require a response by Transocean. To the extent that the allegations in Paragraph 83 are directed at Transocean, Transocean denies all aspects and implications of the allegations.

84. Transocean denies all aspects and implications of the allegations in Paragraph 84.

85. Transocean admits that it, among others, maintained the *Deepwater Horizon* BOP on April 20, 2010. To the extent not expressly admitted, Transocean denies all aspects and implications of the allegations in Paragraph 85.

86. Transocean denies all aspects and implications of the allegations in Paragraph 86.

87. Transocean denies all aspects and implications of the allegations in Paragraph 87.

88. Transocean denies all aspects and implications of the allegations in Paragraph 88.

89. Transocean denies all aspects and implications of the allegations in Paragraph 89.

90. Transocean denies all aspects and implications of the allegations in Paragraph 90.

91. Transocean denies all aspects and implications of the allegations in Paragraph 91.

92. Transocean denies all aspects and implications of the allegations in Paragraph 92.

93. Transocean denies all aspects and implications of the allegations in Paragraph 93.

94. Transocean denies all aspects and implications of the allegations in Paragraph 94.

95. Transocean denies all aspects and implications of the allegations in Paragraph 95.

96. Transocean denies all aspects and implications of the allegations in Paragraph 96.

97. Transocean denies all aspects and implications of the allegations in Paragraph 97.

98. Transocean denies all aspects and implications of the allegations in Paragraph 98.

99. Transocean denies all aspects and implications of the allegations in Paragraph 99.

100. Transocean denies all aspects and implications of the allegations in Paragraph 100.

101. Transocean denies all aspects and implications of the allegations in Paragraph 101.

102. Transocean denies all aspects and implications of the allegations in Paragraph 102.

103. Transocean denies all aspects and implications of the allegations in Paragraph 103.

104. Transocean denies all aspects and implications of the allegations in Paragraph 104.

12556842.2

105. Transocean denies all aspects and implications of the allegations in Paragraph 105.

106. Transocean denies all aspects and implications of the allegations in Paragraph 106.

107. Transocean denies all aspects and implications of the allegations in Paragraph 107.

108. Transocean denies all aspects and implications of the allegations in Paragraph 108.

## AFFIRMATIVE DEFENSES

Transocean sets forth its affirmative defenses which apply to all claims unless otherwise noted.  By setting forth these affirmative defenses, Transocean does not assume the burden of proving any fact, issue, or element of a cause of action where such burden properly belongs to Cameron.

### Lack of Subject Matter Jurisdiction

1. Cameron's claims may be subject to arbitration and, if so, the Court lacks subject matter jurisdiction of all such claims pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and 9 U.S.C. § 2.

### Standing

2. Cameron lacks standing because it has not alleged nor can it prove an actual or threatened injury caused by the Transocean Defendants' conduct and redressable by this Court.

### Proper Parties/Joinder

3. Cameron has failed to join an indispensable party (or parties) under Rule 19, Federal Rules of Civil Procedure.

### Ripeness

4. Cameron's claims for relief are not ripe.

### Failure to State a Claim

5. Cameron has failed to state a claim upon which relief can be granted.

6. Cameron has failed to plead, much less satisfy, conditions precedent to recovery.

7. Cameron's claims are barred to the extent that Cameron seeks to impose liability retroactively for conduct that was not actionable at the time it occurred.

### Shipowners' Limitation of Liability Act

8. The Transocean Defendants assert all rights and defenses available under the Shipowners' Limitation of Liability Act, 46 U.S.C. § 30501, *et seq.* As a separate and complete defense to some or all of Cameron's claims, the Transocean Defendants aver that the subject incident was occasioned without the privity or knowledge of the Transocean Defendants, and that the amount of damages alleged in the Claims, Counter-Claims, and Cross-Claims greatly exceed the amount of value of the interest of the Transocean Defendants in the mobile offshore drilling unit ("MODU") *Deepwater Horizon* and her freight then pending, and the Transocean Defendants accordingly invoke the benefits of the provisions of the revised statute of the United States of America and acts amendatory thereof and supplement thereto, specifically 47 U.S.C. § 30501 *et seq.*, in the limitation of liability of shipowners, under which provision Cameron is not entitled to recover damages in a sum in excess of the value of the Transocean Defendants' interest in said vessel and her pending freight at the conclusion of the voyage during which the subject incident occurred. The pleading of limitation of liability is not made as an admission of liability, but is made subject to the full denial set forth above in this pleading of any and all liability.

9. Cameron's claims are enjoined, stayed, and restrained until the hearing and termination of the Limitation of Liability proceedings pursuant to the Limitation Court's Order dated June 14, 2010, and the Shipowners' Limitation of Liability Act, 46 U.S.C. § 30501, *et seq.*

## Oil Pollution Act

10. The Transocean Defendants assert all defenses available under the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. § 2701 *et seq.,* including, without limitation:

(a) Presentment has not been made as required under OPA;

(b) OPA displaces or preempts Cameron's claims with respect to oil spill damages and otherwise;

(c) There is no right of action against one or more of the Transocean Defendants to the extent any of them is not a Responsible Party as defined under OPA;

(d) OPA eliminates or limits Cameron's alleged rights of recovery for certain economic loss claims;

(e) OPA does not provide for, or allow, the recovery of punitive or exemplary damages; and

(f) OPA does not provide for, or allow, a determination of joint and several liability, but requires an apportionment of fault.

## Maritime and State Law Claims

11. The Transocean Defendants assert all defenses to any maritime and state law claims including, without limitation:

(a) The Transocean Defendants assert preemption to the extent that federal common law, including maritime law, is displaced by the Outer Continental Shelf Land Act, 43 U.S.C. § 1331 *et seq.,* or the Oil Pollution Act, 33 U.S.C. § 2701 *et. seq.*

13

(b) The Transocean Defendants assert that, under the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331 *et seq.,* the Court must apply federal law, including the Oil Pollution Act and/or maritime law, to the exclusion of the law of the adjacent State.

(c) The Transocean Defendants assert that any claims for purely economic losses, and any declaration or injunction pertaining to such claims, are barred absent physical injury to a proprietary interest, pursuant to *Robins Dry Dock & Repair Co. v. Flint,* 271 U.S. 303, 309 (1927) or similar precedent in Texas, Louisiana, Mississippi, Alabama, Florida, and/or other states.

(d) The Transocean Defendants assert that under any State mini-OPA statutory scheme liability is limited. The Transocean Defendants are not responsible parties under State mini-OPA statutory schemes. The Transocean Defendants further assert the defenses available under any State mini-OPA statutory scheme.

## Causation

12. Cameron complains of harm not caused or contributed to in any manner by the Transocean Defendants, their alleged servants, employees, agents, or anyone for whom the Transocean Defendants are responsible. The incident and resulting harm that are the subject of its Claims, Counter-Claims, and Cross-Claims were caused by the fault, negligence, breach of contract, breach of warranty, statutory and regulatory violations of other persons, entities, or sovereigns for whom the Transocean Defendants are not legally responsible.

13. The injuries and resulting damages alleged to have been sustained by Cameron resulted from a superseding or intervening cause for which the Transocean Defendants are not responsible.

14.  The injuries and resulting damages alleged to have been sustained by Cameron were not proximately caused by any acts and/or omissions of the Transocean Defendants.

15.  The injuries and resulting damages alleged to have been sustained by Cameron were not foreseeable as a matter of law.

### Damages

16.  The Transocean Defendants specifically deny that Cameron has sustained legally compensable damages.

17.  The injuries and resulting damages alleged to have been sustained by Cameron were not foreseeable as a matter of law.

18.  Cameron may not recover on the claims pleaded in its Claims, Counter-Claims, and Cross-Claims because the damages sought are too speculative and remote.

19.  Cameron has not reasonably mitigated its damages.

20.  The Transocean Defendants are entitled to set off, should any damages be awarded against them, in the amount recovered by Cameron with respect to the same alleged injuries.  The Transocean Defendants assert payment and release to the extent that any of Cameron's alleged damages have been or will be fully redressed under the Oil Pollution Act or other applicable statute or rule.  The Transocean Defendants are also entitled to have any damages that may be awarded to Cameron reduced by the value of any benefit or payment to Cameron from any collateral source.

21.  Punitive damages are not recoverable against the Transocean Defendants as a matter of law.

22.  The Transocean Defendants deny that any of them have engaged in conduct that would support an award of punitive damages.

15

23. Any award of punitive damages against the Transocean Defendants would be in violation of the Constitutional safeguards provided to the Transocean Defendants under the Constitution of the United States, and under state constitutions or statutory regimes, if applicable. The imposition of punitive damages would violate Transocean Defendants' rights to (1) protection against excessive fines under the Eighth Amendment to the Constitution of the United States (and state constitutions or statutory regimes, if applicable) and (2) due process and equal protection of the law under the Fifth and Fourteenth Amendments of the United States Constitution (and state constitutions or statutory regimes, if applicable) in that: (a) the issue of punitive damages would be submitted to a jury without any adequate standards for determination, (b) the jury would be required to decide issues of law rather than issues of fact, (c) there is no adequate review of a jury determination of punitive damages, (d) punitive damages can be imposed jointly without regard to the responsibility of the individual defendants, (e) penalties can be imposed without the increased burden of proof and other protections required by criminal laws, (f) evidence is submitted to the jury on issues of liability that should be limited to the issues of punitive damages only, and (g) the amount of punitive damages are determined in part by the financial status of the defendant.

### Reservation of Rights to Compel Arbitration

24. Transocean reserves its rights to compel arbitration of Cameron's claims because many of them are subject to the binding arbitration provision. Transocean further reserves its rights to file a Motion to Stay Cameron's claims, pending conclusion of arbitration.

### Contribution Comparative Fault and Indemnity

25. In addition to the Limitation of Liability to which the Transocean Defendants are entitled herein, the Transocean Defendants are also entitled to contribution, indemnification

12556842.2

and/or reimbursement or a determination of comparative fault of/from Third-Parties for any damages the Transocean Defendants may be required to pay that are attributable to the comparative negligence, fault and/or legal responsibility of Third-Parties.

### No Duty or Breach of Duty

26. The Transocean Defendants did not owe any duty or warranty to Cameron and did not breach any duty or warranty.

27. At all material times, the Transocean Defendants acted with due diligence and reasonable care and did not breach any duty to Cameron.

### Preemption

28. The claims are barred in whole or in part by the Supremacy Clause of the United States Constitution, art. VI, § 2, because the claims are preempted and/or precluded by federal law, including, but not limited to, the Outer Continental Shelf Lands Act, 43 U.S.C. §§ 1331, *et seq.*, the Oil Pollution Act of 1990, 33 U.S.C. §§ 2701, *et seq.*, the Clean Water Act, 33 U.S.C. §§ 1251, *et seq.*, and Bureau of Ocean Energy Management, Regulation and Enforcement, formerly Minerals Management Service ("BOEMRE") policies and regulations regarding offshore oil exploration and drilling, and federal maritime common law.

### Adoption of Affirmative Defenses and Reservation of Right to Amend Answer

29. The Transocean Defendants assert any other defenses to which they may be entitled under Rule 8(c), Federal Rules of Civil Procedure.

30. Any affirmative defenses pleaded by the other defendants and not pleaded by the Transocean Defendants are incorporated herein to the extent such defenses do not conflict with the Transocean Defendants' affirmative defenses.

12556842.2

31. The Transocean Defendants reserve the right to amend their Answer, Rule 12(b) defenses and other defenses, and to assert cross-claims and third-party claims, as appropriate.

WHEREFORE, the Transocean Defendants pray that their defenses be deemed good and sufficient; that after due proceedings are had there be judgment in favor of the Transocean Defendants, dismissing all claims asserted by Cameron, with prejudice, at Cameron's costs; and for any and all other just and equitable relief deemed appropriate.

Respectfully submitted,

By:  /s/ Steven L. Roberts
Steven L. Roberts (Texas, No. 17019300)
Rachel Giesber Clingman (Texas, No. 00784125)
Kent C. Sullivan (Texas, No. 19487300)
Teri L. Donaldson (Florida, No. 784310)
Sutherland Asbill & Brennan LLP
1001 Fannin Street, Suite 3700
Houston, Texas 77002
Telephone: (713) 470-6100
Facsimile: (713) 654-1301
Email: steven.roberts@sutherland.com,
rachel.clingman@sutherland.com,
kent.sullivan@sutherland.com,
teri.donaldson@sutherland.com

By:  /s/ Kerry J. Miller
Kerry J. Miller (Louisiana, No. 24562)
Frilot, L.L.C.
1100 Poydras Street, Suite 3700
New Orleans, Louisiana 70163
Telephone: (504) 599-8169
Facsimile: (504) 599-8154
Email: kmiller@frilot.com
-and-

By:  /s/ Edwin G. Preis, Jr.
Edwin G. Preis, Jr. (Louisiana, No. 10703)
Edward F. Kohnke, IV (Louisiana, No. 07824)
Preis & Roy PLC
102 Versailles Boulevard, Suite 400
Lafayette, Louisiana 70501
Telephone: (337) 237-6062
Facsimile: (337) 237-9129
-and-

601 Poydras Street, Suite 1700
New Orleans, Louisiana 70130
Telephone: (504) 581-6062
Facsimile: (504) 522-9129
Email: egp@preisroy.com, efk@preisroy.com

12556842.2

Of Counsel:

John M. Elsley (Texas, No. 0591950)
Royston, Rayzor, Vickery & Williams LLP
711 Louisiana Street, Suite 500
Houston, Texas 77002
Telephone: (713) 224-8380
Facsimile: (713) 225-9945
Email: john.elsley@roystonlaw.com

Daniel O. Goforth (Texas, No. 08064000)
Goforth Geren Easterling LLP
4900 Woodway, Suite 750
Houston, Texas 77056
Telephone: (713) 650-0022
Facsimile: (713) 650-1669
Email: dangoforth@goforthlaw.com

Brad D. Brian (California, No. 79001)
Allen M. Katz (California, No. 054933)
Munger Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California 90071
Telephone: (213) 683-9100
Facsimile: (213) 683-5180, (213) 683-4018
Email: brad.brian@mto.com, allen.katz@mto.com

*Counsel for Transocean*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, on May 20, 2011.

/s/  Kerry J. Miller

19

12556842.2