**BRS** Beck Redden & Secrest
A Registered Limited Liability Partnership

DAVID W. JONES
djones@brsfirm.com

April 29, 2011

Re:   MDL No. 2719; *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010;* In the U.S. District Court, Eastern District of Louisiana

Mark Cohen                                                              **By Hand Delivery**
Cohen, Gorman & Putnam, L.L.P.
1010 Lamar Street, Suite 1000
Houston, Texas 77002-6314

Dear Mark:

   I write concerning DNV's request that Cameron International Corporation ("Cameron") produce certain information and materials as called for in the third attachment to the contract between BP Exploration & Production, Inc. (as customer) and Det Norske Veritas (U.S.A.), Inc. for forensic study of the Deepwater Horizon blowout preventer, as noted below:

8.   *In connection with the two Mark II Control Pods all drawings, documents, specifications or information of the overall design, manufacture and assembly including all modifications or changes that were made to the Control Pods since their original manufacture and assembly. In addition, drawings, documents or other information of the wiring or electrical circuits and hydraulic circuits or systems of the two Control Pods as fitted to the Deepwater Horizon Mark II Blowout Preventer*

   Copies of bills of material (CAM_CIV_0043083-106); drawings (CAM_CIV_0022734-38, CAM_CIV_0022763-64, and CAM_CIV_0022921-25); procedures (CAM_CIV_0020812-64 and CAM_CIV_0024655-59); and revision histories (CAM_CIV_0043107-28) are included on the enclosed CD. Please let us know if DNV needs additional information in response to this request.

9.   *In connection with the Subsea Electronic Modules with the following identification:*

   *BF400213714*
   *5009 30/06/2009*
   *Part No. – 2020722-21*
   *Serial No. 75008327/01*

One Houston Center
1221 McKinney Street, Suite 4500 – Houston, Texas 77010
Telephone 713.951.3700 – Facsimile 713.951.3720
www.brsfirm.com

Mark Cohen
April 29, 2011
Page 2

>    *222507-40 A05*
>    *A5024094-1*
>    *30013510*
>    *KIT 22413-25*

  a. *Drawings, documents, specifications or information of the overall design, wiring, or layout of the SEMs including any modifications or changes made to the SEMs and the circuitry.*

Copies of bills of material (CAM_CIV_0043135-44); drawings (CAM_CIV_0022832-81); procedures (CAM_CIV_0017206-10, CAM_CIV_0020675-704, CAM_CIV_0020705-15, CAM_CIV_0025005-11, and CAM_CIV_00285012-19); and revision histories (CAM_CIV_0043145-54) are included on the enclosed CD. Please let us know if DNV needs additional information in response to this request.

  b. *Cameron Proprietary Communications Protocol (i.e. software) for the above SEMs*
    i. *Software program for the AMF/Deadman function within the SEMs*

Cameron is unclear as to what specific information is sought by this request. Cameron is also unclear as to why review of proprietary communications protocols is necessary to complete the planned testing. Please clarify this request and explain its relevance to the planned testing.

  c. *Equipment, materials or special tools required to vent or open the Subsea Electronic Module*

Please let us know when these materials are needed at Michoud.

  d. *Drawings, Diagrams, parts list or PC board layouts for the:*
    i. *Subsea Electronic Modules*
    ii. *Automatic Mode Function Card*
    iii. *Central Processing Unit Function Card*
    iv. *Analog Input Card*
    v. *Solenoid Driver Cards*
    vi. *Communications Controller Card*
    vii. *Modem*
    viii. *5V Power Supply*
    ix. *24V Power Supply*

Cameron does not understand that Item 9.d.i is seeking information other than that requested in Item 9.a. If our understanding is incorrect, please let us know.

With respect to Items 9.d.ii-ix, copies of bills of material (CAM_CIV_0043155-57, CAM_CIV_0043170, and CAM_CIV_0043172-73); procedures (CAM_CIV_0024014-22 and

383.00017/479651

Mark Cohen
April 29, 2011
Page 3

CAM_CIV_0024078-85); revision histories (CAM_CIV_0043158-59); design specifications (CAM_CIV_0024023-26, CAM_CIV_0024782-90, and CAM_CIV_0043160-68); and commercial part descriptions (CAM_CIV_0043169, CAM_CIV_0043171, CAM_CIV_0043174-78) are included on the enclosed CD. Please let us know if DNV needs additional information in response to this request.

    e.    *Manufacturer specifications and information for the 9 and 27 Volt Lithium batteries used to power the AMF/Deadman circuits.*

Copies of bills of material (CAM_CIV_0043129-30); drawings (CAM_CIV_0022982); revision histories (CAM_CIV_0043132-34); design requirements (CAM_CIV_0025410-11); and commercial part descriptions (CAM_CIV_0043131) are included on the enclosed CD. Please let us know if DNV needs additional information in response to this request.

Very truly yours,

David W. Jones

cc:    David J. Beck                                                              ***By Email***
        Carmelite M. Bertaut                                         ***By Email***

383.00017/479651

**Bertaut, Carmelite**

| | |
|---|---|
| **From:** | Mark Cohen [mcohen@cgptexas.com] |
| **Sent:** | Friday, May 06, 2011 1:14 PM |
| **To:** | 'David Jones'; 'David Beck'; Bertaut, Carmelite |
| **Cc:** | 'Thalgott, Garrett'; 'David Grassmick'; 'Robert Gasaway'; Amund.W.Skou@dnv.com; 'Ruth Colvin'; 'Drew Gilbert' |
| **Subject:** | Cameron Technical Assistance - Status & Request - BOP-FORENSIC INVESTIGATION - 01699 |
| **Attachments:** | 2011-05-05 Cameron Request Assit.pdf |

David,

Good day. I was not able to reach you by telephone around noon, so I send this message.

DNV requests Cameron's immediate advice as to ETA of the test stand at Michaud.
DNV also requests technically qualified Cameron personnel to attend at the test site. DNV has outlined the situation in the attached note.
Some prior DNV requests are outstanding, but DNV did not want to take time away from the work to prepare more notes covering the some of these points a second or third time, because Cameron has had no trouble to date explaining what items it did not understand, or that technically speaking, it could not satisfy.

DNV's requests are now matters of urgency, and Cameron's immediate help is again requested.

DNV ask that to expedite the process, Cameron and DNV technical people speak directly with each other, meaning without intervention of counsel, which would help reduce expense and delay.

If you need to discuss any of this or have information to send, please telephone me at the office, call, text, or email me. My mobile number is below. I appreciate that you have many tasks ongoing, and so I am available to you at any time. Please leave no messages on my mobile number, as its messaging system is unreliable.

DNV is working under the auspices of the Court. If Cameron cannot cooperate with DNV, DNV must ask for the Court's help so that the work moves forward smoothly.

Regards,
Mark

Mark Cohen
Cohen, Gorman & Putnam, L.L.P.
1010 Lamar Street, Suite 1000
Houston, Texas 77002-6314

Office Phone: 713-224-0628
Fax:  713 224-7487
Email: mcohen@cgptexas.com
Mobile Phone: 832-725-6750
* * * * * * * * * * * * * * * * * * * * *

CONFIDENTIALITY STATEMENT
This communication, all related responses and any attachments are intended for
the use of the addressee(s) only, and may contain information that is
PRIVILEGED, CONFIDENTIAL, and may contain ATTORNEY WORK PRODUCT. If you are
not the intended recipient of this communication, you are hereby notified that

5/19/2011

dissemination of this communication is strictly prohibited.  If you have received this communication in error,  please delete all electronic copies of this message and its attachments, destroy any hard copies you may have created and notify Mark Cohen or the Office Manager the above email address and telephone number 713-224-0628.

---

**From:** Gary Kenney [mailto:sinerivali1@comcast.net]
**Sent:** Friday, May 06, 2011 11:08 AM
**To:** Mark Cohen
**Cc:** Neil Thompson; Ruth Colvin; Drew Gilbert; Phillip Nidd
**Subject:** Cameron Technical Assistance - Status & Request - BOP-FORENSIC INVESTIGATION

Mark:

My apologies for the delay in sending this to you.  Yesterday afternoon and evening became hectic at the Test Site.

I have left the attached in a Word doc format to provide you some flexibility with it.

Regards
*Gary Kenney*
Mobile – 713 291 2598
PRIVILEGED & CONFIDENTIAL: CLIENT-ATTORNEY WORK PRODUCT
In Anticipation of Litigation

5/19/2011

| BOP FORENSICS – PHASE II | DEEPWATER HORIZON<br>FORENSIC INVESTIGATION OF<br>THE BLOWOUT PREVENTER | DET NORSKE VERITAS | |

May 6, 2011

From: DNV Project Team – NASA Michaud
To: Cameron
Regarding: BOP Phase 2 - Urgent Need for Cameron Assistance

Below outlines the need for Cameron assistance to complete various activities described in the Test Protocol (R. Doc 1757). These requests are in addition our multiple earlier requests for information, equipment and materials, to which Cameron's response has been incomplete.

**II.b Removal of Upper and Lower Annular BOP's from LMRP**

One of the first activities the Test Protocol stipulated is the removal of the upper and lower annular from the Lower Marine Riser Package. Paragraph II.c.iii notes that experienced and qualified technical personnel from the OEM should be available during this process.

As of April 19, 2011, DNV has been working on the process of removing the two annulars from the LMRP. DNV has encountered multiple issues during removal of the upper and lower annular from the LMRP, and removal of the packers, elements and donuts from the top cap(s) of the annular. On April 27 DNV sent an email to a number of individuals from the Interested Parties, including former members of the Technical Working Group formed for the investigations carried out for BOEMRE and the US Coast Guard, requesting advice or input on how DNV should proceed in removing the upper and lower annular. That email noted DNV had received advice from technical representatives attending at the Test Site (notably BP and Transocean) and that DNV had exhausted the approaches suggested by those individuals. The only response DNV received from the email request for assistance was from Transocean. Cameron did not respond even though the email was sent to a number of Cameron addresses.

As of this time, approximately noon on Friday, May 6, 2011, DNV continues to work the process of removing the lower annular as well as extracting the packer, element, and donut from the quick release tops of the annulars, doing so by using what information is contained in Cameron's Operations and Maintenance Manual. Notably, no assistance has yet been provided from Cameron in the form of detailed drawings, written procedures, or guidance from experienced technical individuals, all as called for in the Test Protocol.

**II.c Removal of Packing Elements/Donuts from Annular BOP's**

The quick release top of the Upper Annular was removed on Saturday April 30. When the top was removed the packing elements and donut remained lodged in the 'top cap'. DNV has made several attempts to remove the elements and donut following the guidance provided in Cameron's Operations and Maintenance Manual, and suggestions provided by various technical representatives who are attending at the Test Site. Despite these attempts, the packing elements remain lodged in the 'top cap'. DNV is currently fabricating a device as a further attempt to remove the packing elements. All this work has been done without the aid

| BOP FORENSICS – PHASE II | DEEPWATER HORIZON FORENSIC INVESTIGATION OF THE BLOWOUT PREVENTER | DET NORSKE VERITAS |
|---|---|---|

of detailed drawings or procedures, other than those contained in Cameron's Operation and Maintenance Manual, and without the ability to confer with experienced and qualified OEM technicians.

Paragraph II.c.iii of the approved Test Protocol notes that experienced and qualified OEM technical personnel should be in attendance at the Test Site during this work. We note that Cameron has been unrepresented at the site during this work despite the fact that Cameron personnel receive copies of the Daily Planned Activities for the Test Site, which describe the actual planned work being carried out at the Site, including the removal of the packing elements as per Section II.c of the approved Test Protocol.

### III. Ram Preventer Operator/Bonnet Hydraulic Testing

DNV has completed Signature and Hydraulic High and Low Pressure tests of the Middle and Upper Pipe Rams (Sections IIIa and IIIb). These same tests are being performed on the Blind Shear Rams. Following the tests of the Blind Shear Rams, the Starboard Casing Shear Ram will be subjected to the same tests.

Pressure could not be maintained on the Middle and Upper Pipe ram bonnets in accordance with the test requirements. As a result, all four of these pipe ram bonnets will have to be removed from the BOP stack and brought to grade for further examination and testing (III.c.i) Section III.c.iii of the Protocol notes:

   iii. Technical Personnel Requirements
   - Experienced and qualified OEM technical personnel should be in attendance at the inspection site for purposes of providing information to DNV during the testing process regarding these operations.

Starting Monday, May 9, DNV will begin the process of removing the middle, upper, and possibly the blind shear ram bonnets (should they fail the signature/hydraulic tests) from the BOP stack, in accordance with the requirements of the Test Protocol. DNV will then start the process of disassembling the ram blocks in accordance with the Section III.c of the Test Protocol. DNV requests Cameron to provide experienced and qualified technical personnel at the Site starting Monday , May 9, 2011 so that this work can be accomplished smoothly and expeditiously. If Monday is impossible, we request attendance as near that date as possible.

The Test Protocol calls for disassembly of the Annular operating systems (II.g.) should the annular operating systems fail the signature or hydraulic pressure tests. DNV is planning to conduct the signature tests of the annular operating systems late in the week of May 9, 2011. Should the annulars fail these tests, they too will have to be disassembled. Section II.g.iii notes that experienced and qualified OEM technical personnel should be available for that work. DNV requests Cameron personnel be available at the Test Site for this work when it is scheduled to start.

| BOP Forensics – Phase II | Deepwater Horizon Forensic Investigation of the Blowout Preventer | Det Norske Veritas | |

## VII Control Pods

Section VII of the Test Protocol describes various tests and examinations that are to be made of the software and firmware of the Yellow and Blue Control Pods. In order to complete those activities DNV requests Cameron to provide a qualified and experienced technical person. An individual that is qualified to operate Cameron supplied Portable Electronic Test Units (PETU's). DNV plans to start those tests of the Control Pods on May 16. DNV requests Cameron provide a qualified and experienced PETU operator on May 16.

## VIII - High Pressure Casing Shear Regulator – Disassembly, Inspection and Leak Rate Testing

This Section of the Protocol calls for various information to be provided (e.g. OEM drawings, documentation, manufacturing, etc. VIII.b as well as the need for qualified OEM Technical Personnel to be on site VII.c). DNV plans to start the activities as described in this Section of the Protocol on May 16. DNV requests Cameron provide an experienced and qualified technical person at the Test Site as noted in the Test Protocol on or before May 23.

## XIV Remove and determine accuracy of P/T Sensors

Section XIV.b of the Test Protocol calls for experienced and qualified OEM technical personnel to assist with the activities involved in determining the accuracy of the Pressure/Temperature Sensors that were fitted to the BOP and the LMRP. DNV plans to carry-out the activities to complete this work starting May 30. DNV requests Cameron's have on site the qualified and experienced technical individual(s) that can assist with this work starting May 30.

Without Cameron's cooperation, as described above, it may be impossible to perform some of the work described in the Test Protocol. DNV needs to accomplish as much of the work as time and circumstances allow. DNV therefore requests Cameron's urgent, complete cooperation to achieve this goal.

Kindly confirm that the necessary personnel will attend as requested above. Likewise, please confirm that Cameron is now promptly bringing to closure the outstanding DNV requests for information, material and equipment.

Sincerely,

G. Kenney,
DNV Project Team – NASA Michaud

| BOP FORENSICS – PHASE II | DEEPWATER HORIZON<br>FORENSIC INVESTIGATION OF<br>THE BLOWOUT PREVENTER | DET NORSKE VERITAS | |

**Bertaut, Carmelite**

| | |
|---|---|
| **From:** | David Jones [DJONES@brsfirm.com] |
| **Sent:** | Friday, May 06, 2011 2:00 PM |
| **To:** | Mark Cohen; David Beck; Bertaut, Carmelite |
| **Cc:** | Thalgott, Garrett; David Grassmick; Robert Gasaway; Amund.W.Skou@dnv.com; Ruth Colvin; Drew Gilbert |
| **Subject:** | RE: Cameron Technical Assistance - Status & Request - BOP-FORENSIC INVESTIGATION - 01699 |

Mark — I am out of the office. See my responses below.

David W. Jones
Beck, Redden & Secrest, L.L.P.
1221 McKinney, Suite 4500
Houston, Texas 77010
713/951-3700
713/951-3720 (fax)

---

**From:** Mark Cohen [mailto:mcohen@cgptexas.com]
**Sent:** Friday, May 06, 2011 1:14 PM
**To:** David Jones; David Beck; Carmelite Bertaut
**Cc:** 'Thalgott, Garrett'; 'David Grassmick'; 'Robert Gasaway'; Amund.W.Skou@dnv.com; 'Ruth Colvin'; 'Drew Gilbert'
**Subject:** Cameron Technical Assistance - Status & Request - BOP-FORENSIC INVESTIGATION - 01699

David,

Good day. I was not able to reach you by telephone around noon, so I send this message.

DNV requests Cameron's immediate advice as to ETA of the test stand at Michaud.

Cameron has had to custom order hoses to connect the receptacles to the gauge panel. The custom hoses are due from vendor on May 10, and Cameron currently anticipates shipment on May 12. Cameron is working with the hose vendor to see if the delivery date can be improved.

DNV also requests technically qualified Cameron personnel to attend at the test site. DNV has outlined the situation in the attached note.

DNV is making this request on less than seven days notice. Consistent with Cameron's agreement to use best efforts to fulfill such a request on less than seven days notice, a service hand will be at the site on Monday morning.

Some prior DNV requests are outstanding, but DNV did not want to take time away from the work to prepare more notes covering the some of these points a second or third time, because Cameron has had no trouble to date explaining what items it did not understand, or that technically speaking, it could not satisfy.

I do not understand your point. To the extent you are asking about the status of DNV's outstanding requests, I will address them when I return to the office.

DNV's requests are now matters of urgency, and Cameron's immediate help is again requested.

5/10/2011

See responses above.

DNV ask that to expedite the process, Cameron and DNV technical people speak directly with each other, meaning without intervention of counsel, which would help reduce expense and delay.

Any questions concerning the testing being performed at the request of Cameron's litigation adversary should continue to be directed through counsel.

If you need to discuss any of this or have information to send, please telephone me at the office, call, text, or email me. My mobile number is below. I appreciate that you have many tasks ongoing, and so I am available to you at any time. Please leave no messages on my mobile number, as its messaging system is unreliable.

DNV is working under the auspices of the Court. If Cameron cannot cooperate with DNV, DNV must ask for the Court's help so that the work moves forward smoothly.

Regards,
Mark

Mark Cohen
Cohen, Gorman & Putnam, L.L.P.
1010 Lamar Street, Suite 1000
Houston, Texas 77002-6314

Office Phone: 713-224-0628
Fax: 713 224-7487
Email: mcohen@cgptexas.com
Mobile Phone: 832-725-6750
************************

CONFIDENTIALITY STATEMENT
This communication, all related responses and any attachments are intended for the use of the addressee(s) only, and may contain information that is PRIVILEGED, CONFIDENTIAL, and may contain ATTORNEY WORK PRODUCT. If you are not the intended recipient of this communication, you are hereby notified that dissemination of this communication is strictly prohibited. If you have received this communication in error, please delete all electronic copies of this message and its attachments, destroy any hard copies you may have created and notify Mark Cohen or the Office Manager the above email address and telephone number 713-224-0628.

---

**From:** Gary Kenney [mailto:sinerivali1@comcast.net]
**Sent:** Friday, May 06, 2011 11:08 AM
**To:** Mark Cohen
**Cc:** Neil Thompson; Ruth Colvin; Drew Gilbert; Phillip Nidd
**Subject:** Cameron Technical Assistance - Status & Request - BOP-FORENSIC INVESTIGATION

Mark:

My apologies for the delay in sending this to you. Yesterday afternoon and evening became hectic at the Test Site.

I have left the attached in a Word doc format to provide you some flexibility with it.

5/19/2011

Regards
*Gary Kenney*
Mobile – 713 291 2598
PRIVILEGED & CONFIDENTIAL: CLIENT-ATTORNEY WORK PRODUCT
In Anticipation of Litigation

Regards
*Gary Kenney*
5/10/2011



DAVID W. JONES
djones@brsfirm.com

May 9, 2011

Re:   MDL No. 2719; *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010;* In the U.S. District Court, Eastern District of Louisiana

Mark Cohen                                                                                 *By Email (mcohen@cgptexas.com)*
Cohen, Gorman & Putnam, L.L.P.
1010 Lamar Street, Suite 1000
Houston, Texas 77002-6314

Dear Mark:

    I write to provide responses from Cameron International Corporation to the requests for information attached to your email of April 27 sent in connection with the forensic study of the Deepwater Horizon blowout preventer pursuant to the contract between BP Exploration & Production, Inc. (as customer) and Det Norske Veritas (U.S.A.), Inc.

1.   *Ten (10) male SEM pie connectors.*
2.   *Four (4) female Subsea Electronic Module pie connectors.*
3.   *Mating connectors for the Subsea Electronic Module battery leads and terminals.*

    The document attached to your email notes that certain of the above equipment may be available from sources other than Cameron. Has DNV secured this equipment from another source?

4.   *Information from Cameron on the correct resistance measurements for each set of pins within the pie connectors mounted to the Subsea Electronic Modules of the Deepwater Horizon Blowout Preventer.*

    Cameron cannot predict what the correct resistance measurements would be for the actual Horizon SEM. The specification under which Cameron purchases "pie" connectors specifies the contact resistance for the connector itself at 0.1 ohms.

One Houston Center
1221 McKinney Street, Suite 4500 – Houston, Texas 77010
Telephone 713.951.3700 – Facsimile 713.951.3720
www.brsfirm.com

383.00017/480198

Mark Cohen
May 9, 2011
Page 2

5. *Calibration procedures and associated calibration requirements for the SEM transducers (STEM's).*

The transducers used are loop powered 4-20mA. There is no calibration procedure. The accuracy of a transducer is verified by applying a known hydraulic pressure to the transducer and checking the mA output. The output must be +/- .2mA.

6. *Calibration procedures and associated calibration requirement for the analog input cards.*

The analog cards do not require calibration. The accuracy of the analog cards is verified by applying a mA signal to the analog card input. The output will be values of "raw count." 0 mA would be zero raw count, and the full scale would be 4096. Values are +/- 10.

Very truly yours,

David W. Jones

cc:  David J. Beck               *By Email*
     Carmelite M. Bertaut        *By Email*

383.00017/480198


Beck Redden & Secrest
A Registered Limited Liability Partnership

DAVID W. JONES
djones@brsfirm.com

May 9, 2011

Re:   MDL No. 2719; *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010;* In the U.S. District Court, Eastern District of Louisiana

Mark Cohen                                                                *By Email (mcohen@cgptexas.com)*
Cohen, Gorman & Putnam, L.L.P.
1010 Lamar Street, Suite 1000
Houston, Texas 77002-6314

Dear Mark:

    I write to provide responses from Cameron International Corporation to the requests for information contained in your email of May 3 sent in connection with the forensic study of the Deepwater Horizon blowout preventer pursuant to the contract between BP Exploration & Production, Inc. (as customer) and Det Norske Veritas (U.S.A.), Inc.

1.   *DNV requests Cameron to provide a status or delivery date for the Control Pod Test Stand listed as Item 5 approved by the Court on April 19, 2011 (i.e. R. Doc 2016-2 Pg 39).*

Cameron responded to this request in my email to you dated May 6, 2011.

2.   *DNV requests Cameron or Transocean provide a 'BOP Swing Arm' as depicted in Cameron's drawing SK-019490-01 (CAMCG 00000014) for the Deepwater Horizon Blowout Preventer to assist with removing certain of the ram bonnets as required in the approved Test Protocol (R. Doc 1757 – Item III-c).*

The only handling equipment used to remove bonnets from the stack are extensions. This equipment was delivered to Michoud in January. Please let us know if this equipment is no longer on site.

3.   *DNV requests Cameron to confirm the weights of the Ram bonnets for the Blind Shear Rams, the Upper Pipe Rams and the Middle Pipe Rams as fitted to the Deepwater Horizon Blowout Preventer. Per Cameron's drawing number SK-019369-01 (CAMCG 00000107) the weight for the Super Shear Bonnet Subassembly is estimated at 5,179 lbs. DNV wishes to confirm whether this weight could be used as a representative weight for the Pipe Ram bonnets or if the weights*

One Houston Center
1221 McKinney Street, Suite 4500 – Houston, Texas 77010
Telephone 713.951.3700 – Facsimile 713.951.3720
www.brsfirm.com

383.00017/480174

Mark Cohen
May 9, 2011
Page 2

> of the pipe ram bonnets varies significantly from this super shear bonnets. Further DNV wish to confirm whether those weights include the weight of the operating piston or whether the weight of the operating pistons should be added to the pipe ram bonnets weights.

The estimated weight of the standard 18-3/4" 15,000 psi WP "TL" Bonnet including the operating piston (as used for variable bore rams and shearing blind rams) is 7,500 lbs. as reflected on CAMCG 00000091.

4. DNV requests Cameron provide:

   A. *Packers and seals from the Original Equipment Manufacturer of the same composition that was fused [sic] on the rams and annulars fitted to the Deepwater Horizon Blowout Preventer (R. Doc 1757 Item XII(a)).*

   B. *A Teflon Wear Pad from the Original Equipment Manufacturer of the same composition that was used on the rams fitted to the Deepwater Horizon Blowout Preventer (R. Doc 1757 Item XIII).*

Please provide the part number and serial number for the requested packers, seals, and wear pad. Cameron understands from the email from Gary Kenney re: "Planned Activities- Monday 2/May" that the packers, Teflon wear pads, and seals from the rams are or were in the process of being photographed. To the extent that the relevant numbers cannot be obtained from the annular elements, it is possible that such information may be obtained from Transocean in the interim. Upon receipt of this information, Cameron will provide a quote for the materials.

Very truly yours,

David W. Jones

cc: David J. Beck — *By Email*
    Carmelite M. Bertaut — *By Email*

383.00017/480174