
# BRS Beck Redden & Secrest
A Registered Limited Liability Partnership

DAVID W. JONES
djones@brsfirm.com

May 9, 2011

Re: MDL No. 2719; *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010;* In the U.S. District Court, Eastern District of Louisiana

Mark Cohen   ***By Email***
Cohen, Gorman & Putnam, L.L.P.
1010 Lamar Street, Suite 1000
Houston, Texas 77002-6314

Dear Mark:

I am writing to respond to the May 6, 2011, memorandum from the "DNV Project Team" directed to my client, Cameron International Corporation ("Cameron"), and to correct DNV's apparent fundamental misunderstanding concerning Cameron's role in the work DNV is performing at the request of and under contract with BP.

First and foremost, the "DNV Project Team" repeatedly states that the test protocol "notes that experienced and qualified technical personnel from the OEM should be available" to provide information in connection with certain specific tests. It is true that the protocol contains such language. However, the protocol *also* notes that DNV must *request* that such personnel be made available. Specifically, the protocol states:

> To the extent these protocols call for the attendance at the testing site of experienced and qualified OEM technical personnel for purposes of providing information to DNV during the testing process, as specified in Paragraphs II(c)(iii), II(d)(iii), II(g)(iii), III(c)(iii), VIII(c) and XIV(b) below, it is understood (1) that such ***requests*** (like many other determinations) are appropriate only if they have been determined to be necessary by DNV it its sole and unfettered discretion, and (2) that DNV will use best efforts to make such ***requests*** seven (7) in advance, recognizing that such advanced notice will not always be practical. Conversely, the OEM (Cameron International Corporation) will use best efforts to fulfill such ***requests*** made on less than seven (7) days notice, but cannot guarantee that fulfilling these short notice ***requests*** will be possible. (Emphasis added).

Until receipt of the May 6 memorandum, DNV had not requested that Cameron personnel be present at the test site to provide information concerning the annular preventers. Accordingly, the complaint by

One Houston Center
1221 McKinney Street, Suite 4500 – Houston, Texas 77010
Telephone 713.951.3700 – Facsimile 713.951.3720
www.brsfirm.com

383.00017/480177

the "DNV Project Team" that "no assistance" has been provided from Cameron in the form of "guidance from experienced technical individuals, *all as called for in the Test Protocol*" (emphasis added), is not simply misleading; it is false. You will, of course, note that when DNV finally did decide to ask for Cameron personnel to appear at the test site to provide information concerning the annular preventers (not on seven days advance notice as contemplated by the protocol, but "immediately" as you state in your email of May 6), Cameron fully complied with its obligation to "use best efforts to fulfill such requests made on less than seven (7) days notice" by making arrangements to have a service hand on site today.

Second, the "DNV Project Team" complains because Cameron did not respond to an email sent to former members of the JIT Technical Working Group at mid-day on April 27 requesting input on how to remove the top cap from the upper and lower annular preventers. However, as noted in DNV's May 6 memorandum as well as in the "Planned Activities" emails from Mr. Kenney, the top cap on the upper annular was removed by April 30. As such, Cameron – who had not been asked to bring personnel to the site – did not believe that there remained a reason to respond. I am not aware of any rule of civil procedure or any provision in the approved testing protocol which requires my client to respond to impromptu email requests for information from the consultants retained by its litigation adversaries within three days.

Simply stated, my client has fully complied and continues to comply with its obligations under the protocol. Given the many fundamental flaws and weaknesses contained in DNV's work to date in the forensic examination of the Deepwater Horizon blowout preventer, we can understand the desire to blame others for DNV's inability to complete the undertaking it agreed to perform for BP. However, Cameron is not and will not be the reason for any DNV shortcomings.

Very truly yours,

David W. Jones

cc: David J. Beck      *By Email*
       Carmelite M. Bertaut      *By Email*
       Alex Roberts      *By Email*

**From:** Mark Cohen [mcohen@cgptexas.com]
**Sent:** Monday, May 09, 2011 7:35 PM
**To:** 'David Jones'
**Cc:** 'David Beck'; Bertaut, Carmelite; Amund.W.Skou@dnv.com; 'Drew Gilbert'; 'Ruth Colvin'; arhodes@cgptexas.com
**Subject:** DWH - BOP-FORENSIC INVESTIGATION-II - Clarification from Cameron - 01699

David,

DNV have asked for some clarification.

DNV requests Cameron to clarify an entry in the Deepwater Horizon Operation and Maintenance Manual. On page 3-79 of that Manual is a table under sub-section G of the DL Annular Blowout Preventer Section. That Table consists of two rows and provides data on the Hydraulic Operating System Requirements for the Annular Blowout Preventers. The two rows in the Manual provide the following data:

- U.S. Gallons to Open – 45.10    Liters 170.7
- U.S. Gallons to Open – 51.00    Liters 193.0

DNV requests Cameron to clarify if one of those two rows should be labeled "U.S. Gallons to Close" vs. U.S. Gallons to Open. If in fact that is the case would Cameron also identify or confirm the actual volume to function the annular closed versus the volume to function it open.

DNV plans to start the signature and hydraulic pressure tests of the Upper and Lower Annular as described in the Test Protocol possibly as early as Tuesday afternoon (May 10) and would appreciate Cameron's assistance and timely response to this request.

Regards,

Mark

Mark Cohen
Cohen, Gorman & Putnam, L.L.P.
1010 Lamar Street, Suite 1000
Houston, Texas 77002-6314

Office Phone: 713-224-0628
Fax: 713 224-7487
Email: mcohen@cgptexas.com
Mobile Phone: 832-725-6750
************************

CONFIDENTIALITY STATEMENT
This communication, all related responses and any attachments are intended for the use of the addressee(s) only, and may contain information that is PRIVILEGED, CONFIDENTIAL, and may contain ATTORNEY WORK PRODUCT. If you are not the intended recipient of this communication, you are hereby notified that dissemination of this communication is strictly prohibited. If you have received this communication in error, please delete all electronic copies of this message and its attachments, destroy any hard copies you may have created and notify Mark Cohen or the Office Manager the above email address and telephone number 713-224-0628.

**From:** Mark Cohen [mcohen@cgptexas.com]
**Sent:** Monday, May 09, 2011 7:46 PM
**To:** 'David Jones'
**Cc:** 'David Beck'; Bertaut, Carmelite; Amund.W.Skou@dnv.com; 'Drew Gilbert'; 'Ruth Colvin'; arhodes@cgptexas.com
**Subject:** RE: DWH - BOP-FORENSIC INVESTIGATION-II - Use of the Test Stand - 01699

David,

Another question has come from DNV Michaud:

In Item 5 of Cameron's letter of April 21, Cameron note that they will need to have the Test Stand back in its facilities by approximately May 23. If Cameron do not deliver the Test Stand to the Test Site until May 16 that provides DNV less than a week to complete the required tests on the Control Pods as described in the Test Protocol. DNV presently thinks this will not provide sufficient time to complete the tests as described in the Test Protocol. Is there any slack in the system allowing the test stand to stay on scene at Michaud beyond the 23rd, into the week of 30 May? If no joy, can it come back to the location?

Looking forward to Cameron's response.
Regards,
Mark

Mark Cohen
Cohen, Gorman & Putnam, L.L.P.
1010 Lamar Street, Suite 1000
Houston, Texas 77002-6314

Office Phone: 713-224-0628
Fax: 713 224-7487
Email: mcohen@cgptexas.com
Mobile Phone: 832-725-6750
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

CONFIDENTIALITY STATEMENT
This communication, all related responses and any attachments are intended for
the use of the addressee(s) only, and may contain information that is
PRIVILEGED, CONFIDENTIAL, and may contain ATTORNEY WORK PRODUCT. If you are
not the intended recipient of this communication, you are hereby notified that
dissemination of this communication is strictly prohibited. If you have
received this communication in error, please delete all electronic copies of
this message and its attachments, destroy any hard copies you may have created
and notify Mark Cohen or the Office Manager the above email address and
telephone number 713-224-0628.

5/19/2011


# BRS Beck Redden & Secrest
A Registered Limited Liability Partnership

DAVID W. JONES
djones@brsfirm.com

May 10, 2011

Re: MDL No. 2719; *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010;* In the U.S. District Court, Eastern District of Louisiana

Mark Cohen  *By Email (mcohen@cgptexas.com)*
Cohen, Gorman & Putnam, L.L.P.
1010 Lamar Street, Suite 1000
Houston, Texas 77002-6314

Dear Mark:

I am writing in response to your email of May 4 to provide additional information concerning DNV's request that Cameron International Corporation ("Cameron") produce certain information and materials as called for in the third attachment to the contract between BP Exploration & Production, Inc. (as customer) and Det Norske Veritas (U.S.A.), Inc. for forensic study of the Deepwater Horizon blowout preventer, as noted below:

3. *Material specifications or compositions of the following materials:*
   a. *The elastomeric materials used in the Upper and Lower Annular*
   b. *The elastomeric materials used in the packers or seals of the rams*
   c. *The Teflon wear pads of the rams*

To provide this information, Cameron needs the part number and serial number for the requested packers, seals, and wear pad at issue. Cameron understands from the email from Gary Kenney re: "Planned Activities- Monday 2/May" that the packers, Teflon wear pads, and seals from the rams are or were in the process of being photographed. To the extent that the relevant numbers cannot be obtained from the annular elements, it is possible that such information may be obtained from Transocean in the interim. Upon receipt of the numbers, Cameron will be able to provide the information.

10. *Drawings, documents or other information of the design, manufacture or assembly of the High Pressure Regulators (i.e. 5000 psi to 4000 psi) as fitted to the high pressure shear panel of the Deepwater Horizon Blowout Preventer*

To provide this information, Cameron needs the part numbers for the regulators currently on the stack.

One Houston Center
1221 McKinney Street, Suite 4500 – Houston, Texas 77010
Telephone 713.951.3700 – Facsimile 713.951.3720
www.brsfirm.com

383.00017/480180

11. *Drawings, documents or other information of the design, manufacture or assembly of the Part No. 223290-63 solenoids as fitted to the Deepwater Horizon Blowout Preventer*

Copies of the bill of material (CAM_CIV_0043181-83), drawing (CAM_CIV_0037648-49); and procedures (CAM_CIV_0043184-218) are enclosed. Please let us know if DNV needs additional information in response to this request.

12. *Manufacturer specifications or design for the solenoid (Part No. 223290-63) e-connectors.*

Copies of the bill of material (CAM_CIV_0043179-80), drawing (CAM_CIV_0024263); function design specification (CAM_CIV_0024212-14); and procedure (CAM_CIV_0025475-79) are enclosed. Please let us know if DNV needs additional information in response to this request.

15. *Materials, tools and equipment to test or verify the pressure/temperature sensors. All drawings, documents, specifications or other information concerning the manufacture and assembly of the pressure/temperature sensors as fitted to the Deepwater Horizon Blowout Preventer.*

To provide this information, Cameron needs the part number for the sensors currently on the stack.

16. *Materials, tools and special equipment (e.g. a hydraulic test stinger) used to test integrity or pressure retaining capability of the hydraulic circuits of the lower BOP and the Lower Marine Riser Package*

In my letter of April 21, I noted that Cameron does not have these materials. In your email of May 4, you state that DNV is seeking information from Cameron "on alternatives Cameron suggest can be used to meet the objective of the tests as described in Item V of the Test Protocol." Cameron notes that this request is beyond the scope of the information required by the protocol. As you know, the testing at Michoud is being done by DNV at the request of and under contract with BP, a party that is suing my client over the blowout preventer. Under these circumstances, my client is certainly under no obligation to make suggestions to help its adversary meet its objectives. Nevertheless, without waiving any objection to providing information beyond that required by the protocol, Cameron notes that DNV can test the lower stack functions by installing the pods back on the LMRP and stacking the LMRP back on top of the lower stack. Alternatively, the hose and pipe connections leading away from the lower stack female receptacles can be disconnected and pressure applied directly to each lower stack function of interest.

18. *Cameron information regarding the differences between the two PETUs used at the NASA Michoud facility for the AMF/Deadman test of the Blue and Yellow Pods on March 3-4, 2011*

One PETU could energize both the A coil and the B coil simultaneously. The other PETU could energize only the A or B coil at one time. Those are the only differences in functionality of which

Mark Cohen
May 10, 2011
Page 3

Cameron is currently aware. Please let us know if DNV needs additional information in response to this request.

19. *Cameron information constituting a general description and overview of the capabilities of the PETU used to test the Yellow Pod on the Q4000 and the Blue Pod on the Discoverer Enterprise in May/July 2010*

   Cameron is still attempting to identify responsive information.

   One additional note on testing: In the memorandum from the "DNV Project Team" you forwarded to me on May 6, there is a request for Cameron to provide a qualified and experienced technical person to operate PETU's beginning on May 16. Please note that operation of a PETU by Cameron personnel was not included in the protocol approved by the Court. Given the well known prior issues arising from operation of a PETU by a Cameron employee at Michoud, this is not a task my client will perform.

Very truly yours,

David W. Jones

cc: David J. Beck — *By Email*
Carmelite M. Bertaut — *By Email*
Alex Roberts — *By Email*

383.00017/480180



DAVID W. JONES
djones@brsfirm.com

May 10, 2011

Re: MDL No. 2719; *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010;* In the U.S. District Court, Eastern District of Louisiana

Mark Cohen                                             *By Email (mcohen@cgptexas.com)*
Cohen, Gorman & Putnam, L.L.P.
1010 Lamar Street, Suite 1000
Houston, Texas 77002-6314

Dear Mark:

    I write to provide responses from Cameron International Corporation to the requests for information contained in your two emails of May 9 sent in connection with the forensic study of the Deepwater Horizon blowout preventer pursuant to the contract between BP Exploration & Production, Inc. (as customer) and Det Norske Veritas (U.S.A.), Inc.

1.   *DNV requests Cameron to clarify an entry in the Deepwater Horizon Operation and Maintenance Manual. On page 3-79 of that Manual is a table under sub-section G of the DL Annular Blowout Preventer Section. That Table consists of two rows and provides data on the Hydraulic Operating System Requirements for the Annular Blowout Preventers. The two rows in the Manual provide the following data:*

   • *U.S. Gallons to Open – 45.10    Liters 170.7*
   • *U.S. Gallons to Open – 51.00    Liters 193.0*

   *DNV requests Cameron to clarify if one of those two rows should be labeled "U.S. Gallons to Close" vs. U.S. Gallons to Open. If in fact that is the case would Cameron also identify or confirm the actual volume to function the annular closed versus the volume to function it open.*

   The volume to close is 51 gallons. The volume to open is 45.1 gallons.

2.   *In Item 5 of Cameron's letter of April 21, Cameron note that they will need to have the Test Stand back in its facilities by approximately May 23. If Cameron do not deliver the Test Stand to the Test Site until May 16 that provides DNV less than a week to complete the required tests on the Control Pods as described in the Test Protocol. DNV presently thinks this will not provide*

One Houston Center
1221 McKinney Street, Suite 4500 – Houston, Texas 77010
Telephone 713.951.3700 – Facsimile 713.951.3720
www.brsfirm.com

383.00017/480256

*sufficient time to complete the tests as described in the Test Protocol. Is there any slack in the system allowing the test stand to stay on scene at Michaud beyond the 23rd, into the week of 30 May? If no joy, can it come back to the location?*

There is now some slack. Cameron will work with DNV either to keep the stand at Michoud beyond the 23rd or to bring it back to Michoud.

Very truly yours,

David W. Jones

cc: David J. Beck                  *By Email*
    Carmelite M. Bertaut           *By Email*
    Alex Roberts                 *By Email*

# Bertaut, Carmelite

| | |
|---|---|
| **From:** | Mark Cohen [mcohen@cgptexas.com] |
| **Sent:** | Tuesday, May 10, 2011 11:02 PM |
| **To:** | 'David Jones' |
| **Cc:** | 'David Beck'; Bertaut, Carmelite; Amund.W.Skou@dnv.com; 'Drew Gilbert'; 'Ruth Colvin'; arhodes@cgptexas.com |
| **Subject:** | DWH - BOP-FORENSIC INVESTIGATION-II - : Responses to Cameron's May 9 and 10 Letters- 01699 |
| **Importance:** | High |

David,

DNV thank you for your message earlier regarding the test stand and gallonage.

DNV have the following for Cameron:

In relation to Cameron's letter of May 9th, below is a response to the requests for further information as requested by Cameron:

<u>Item 4.</u> A & B – DNV's request that Cameron provide certain packers, seals and teflon wear pads. DNV can confirm the part numbers for these items are as follows:

- That the Cameron part numbers for the packers, top seals and wear pads as fitted to the Deepwater Horizon's Blowout Preventer's Pipe Rams (Upper and Middle Rams) (P/N – 2163092-01) are as follows:
    - CAMRAM Packer – P/N – 644404-01-01-01
    - Top Seal – P/N – 644369-01-00-01
    - Ram Wear Pad, Right Side P/N – 2011279-01
    - Ram Wear Pad, Left Side P/N – 2011279-02

- That the Cameron part numbers for the packers, seals and wear pads as fitted to the Deepwater Horizon's Blowout Preventer's Blind Shear Rams (P/N 2163096-01(upper) and P/N 2163096-02 (lower) are as follows:
    - Upper
        - Side Packer, Right – P/N – 644893-01-00-01
        - Side Packer, Left – P/N – 644893-02-00-01
        - Top Seal, P/N – 644369-01-00-01
        - Blade Packer, P/N – 644894-01-00-01
        - Ram Wear Pad, Right – P/N – 2011279-01
        - Ram Wear Pad, Left – P/N – 2011279-02
    - Lower
        - Side Packer, Right – P/N – 644893-01-00-01
        - Side Packer, Left – P/N – 644893-02-00-01
        - Top Seal, P/N – 644369-01-00-01
        - Ram Wear Pad, Right – P/N – 2011279-01
        - Ram Wear Pad, Left – P/N – 2011279-02
        - Blade Insert, Lower – P/N – 644519-02

  DNV is in the process of trying to identify individual serial numbers from the various components as listed above recovered from the Deepwater Horizon's

Blowout Preventer. However, in many cases due to the condition of these materials it is at best difficult if not impossible to discern any actual identification or additional information that is stamped, engraved or embossed onto the material itself. To assist DNV requests Cameron to provide DNV two sets of each of the above components as per the part numbers listed above. As DNV is able to identify further information from the components as fitted to the Deepwater Horizon Blowout Preventer DNV will provide that information to Cameron. Again though DNV requests Cameron to provide two each of the above components per the part numbers as provided above.

In relation to Cameron's letter of May 10th, below is a response to the requests for further information such as part and serial numbers for certain items:

Item 3. Material specifications or compositions for elastomeric materials:

As noted in Item 4 earlier - DNV can confirm that the packers, seals and elements fitted to the rams are per the Cameron part numbers as provided above. Further as noted earlier, DNV continues to try and identify additional information from the components recovered from the Deepwater Horizon Blowout Preventer, DNV will provide that information to Cameron.

Item 10. DNV has identified the following part or identification numbers from the body of the high pressure Casing Shear Regulator:

- The name 'Gilmore'
- P/N 61903-52-Rev A
- AA577-12

Item 15. DNV has identified the following part or identification numbers from the two pressure/temperature sensors that were removed from the Deepwater Horizon Blowout Preventer:

- For the P/T sensor removed from the lower section of the BOP
  - P/N – 222255-43A01
  - CC 6/99/HD (please note the letter 'H' could be an 'N')
  - 45020627-2
  - S/N 199IO99 (please note the 'O' could be the letter 'O' or a zero '0')
- For the P/T sensor removed from the Lower Marine Riser Package
  - DWG – 37298
  - S/N 22409-04

Regards,

Mark

Mark Cohen
Cohen, Gorman & Putnam, L.L.P.
1010 Lamar Street, Suite 1000
Houston, Texas 77002-6314

Office Phone: 713-224-0628

5/19/2011

Fax: 713 224-7487
Email: mcohen@cgptexas.com
Mobile Phone: 832-725-6750
**********************

CONFIDENTIALITY STATEMENT
This communication, all related responses and any attachments are intended for the use of the addressee(s) only, and may contain information that is PRIVILEGED, CONFIDENTIAL, and may contain ATTORNEY WORK PRODUCT. If you are not the intended recipient of this communication, you are hereby notified that dissemination of this communication is strictly prohibited. If you have received this communication in error, please delete all electronic copies of this message and its attachments, destroy any hard copies you may have created and notify Mark Cohen or the Office Manager the above email address and telephone number 713-224-0628.

5/19/2011

# Bertaut, Carmelite

**From:** Mark Cohen [mcohen@cgptexas.com]
**Sent:** Friday, May 13, 2011 10:51 AM
**To:** 'David Jones'
**Cc:** 'David Beck'; Bertaut, Carmelite; Amund.W.Skou@dnv.com; 'Drew Gilbert'; 'Ruth Colvin'; arhodes@cgptexas.com
**Subject:** FW: Request for Technical Assistance- BOP-FORENSIC INVESTIGATION-II - 01699

David,

Good day.
Please ask Cameron to note and act in response to the following:

On Monday, May 16, DNV will start removing various ram bonnets from the lower section of the Deepwater Horizon Blowout Preventer as part of the process of disassembly and inspection in accordance with Section III.c of the Test Protocol (R.Doc 1757). On removal to grade, DNV will begin actual disassembly and inspection of the ram bonnets which will continue on during the week of May 16. Section III.c.iii of the Protocol recommends experienced and qualified technical personnel from the OEM be present during that work and DNV requests Cameron provide an individual at the NASA-MAF test site for the purposes of providing information to DNV during the period of time these activities are being performed.

DNV further requests Cameron to provide a 'ram bonnet disassembly table or bench' that provides the capability to work on the ram bonnet with the operator mounted in a vertical position to assist with this work.

DNV will also be working on the signature and hydraulic testing of the Annular Preventers starting on May 16 and continuing through the week. This will involve refitting the quick release tops to the upper and lower annular (Section II.d) and then performing the signature and hydraulic pressure tests (Sections II.e&f). During the week of May 16 and dependent on the results of the pressure tests DNV will begin the process of the disassembling the operators of the Annular Preventers in accordance with Section II.g of the Protocol. Section II.g.iii of the Protocol recommends experienced and qualified technical personnel from the OEM be present during that work and DNV requests Cameron provide an individual at the NASA-MAF test site for the purposes of providing information to DNV during the period of time these activities are being performed.

Assuming the Control Pod test stand is delivered to the NASA-MAF test site on Monday, May 16, DNV plans to begin the series of tests on the Control Pods in accordance with Section VII of the Test Protocol. To perform this work it will be necessary to connect a Portable Electronic Test Unit (PETU) to the Control Pods in order to complete the Factory Acceptance Tests of the Control Pods. As the testing of the Control Pods will be concurrent with the work described earlier, DNV would request that the individual or individuals Cameron sends to the Test Site during the week of May 16 be capable of providing information to DNV on the set-up and operation of a PETU. DNV recognizes and respects Cameron's position concerning a Cameron individual being asked to operate the PETU as stated in the May 10th letter from Mr. David Jones. In accordance with those concerns DNV affirms at no time will a Cameron individual be asked to operate or 'lay their hands on' the PETU or Control Pods. The assistance sought is as noted in other sections of the Protocol i.e. to provide information to DNV individuals or DNV contractors who will operate the PETU.

Regards,
Mark

Mark Cohen
Cohen, Gorman & Putnam, L.L.P.
1010 Lamar Street, Suite 1000
Houston, Texas 77002-6314

Office Phone: 713-224-0628
Fax: 713 224-7487
Email: mcohen@cgptexas.com
Mobile Phone: 832-725-6750
************************

CONFIDENTIALITY STATEMENT
This communication, all related responses and any attachments are intended for the use of
the addressee(s) only, and may contain information that is PRIVILEGED, CONFIDENTIAL, and
may contain ATTORNEY WORK PRODUCT. If you are not the intended recipient of this
communication, you are hereby notified that dissemination of this communication is
strictly prohibited. If you have received this communication in error, please delete all
electronic copies of this message and its attachments, destroy any hard copies you may
have created and notify Mark Cohen or the Office Manager the above email address and
telephone number 713-224-0628.

5/19/2011

**Bertaut, Carmelite**

| | |
|---|---|
| **From:** | Mark Cohen [mcohen@cgptexas.com] |
| **Sent:** | Friday, May 13, 2011 12:05 PM |
| **To:** | 'David Jones' |
| **Cc:** | 'David Beck'; Bertaut, Carmelite; Amund.W.Skou@dnv.com; 'Drew Gilbert'; 'Ruth Colvin'; arhodes@cgptexas.com |
| **Subject:** | RE: DWH - BOP-FORENSIC INVESTIGATION-II - Cameron / : Request for E-Connectors - 01699 |
| **Importance:** | High |
| **Attachments:** | 2011-04-27 Equipment - Material Request.docx |

David,

Apologies for omitting the attachment from my email about this a few minutes ago. This is the Memo you were sent on 27 April 11.

David, DNV understand that you have many tasks ongoing. And, it may be that when Cameron delivers some hardware Monday the shipment will include the items I traced you about and that are on the memo. Unfortunately, DNV cannot determine from Cameron's earlier messages whether that is the plan or Cameron have not responded about this hardware for another reason. Hence, my tracing note(s).

Thanks/regards,
Mark



Mark Cohen
Cohen, Gorman & Putnam, L.L.P.
1010 Lamar Street, Suite 1000
Houston, Texas 77002-6314

Office Phone: 713-224-0628
Fax:  713 224-7487
Email: mcohen@cgptexas.com
```
Mobile Phone: 832-725-6750
*********************
CONFIDENTIALITY STATEMENT
This communication, all related responses and any attachments are intended for
the use of the addressee(s) only, and may contain information that is
PRIVILEGED, CONFIDENTIAL, and may contain ATTORNEY WORK PRODUCT.  If you are
not the intended recipient of this communication, you are hereby notified that
dissemination of this communication is strictly prohibited.  If you have
received this communication in error,  please delete all electronic copies of
this message and its attachments, destroy any hard copies you may have created
and notify Mark Cohen or the Office Manager the above email address and
telephone number 713-224-0628.
```

**From:** Mark Cohen

5/19/2011

**Sent:** Friday, May 13, 2011 11:17 AM
**To:** David Jones
**Cc:** David Beck; Carmelite Bertaut; Amund.W.Skou@dnv.com; Drew Gilbert; Ruth Colvin; arhodes@cgptexas.com
**Subject:** DWH - BOP-FORENSIC INVESTIGATION-II - Cameron / : Request for E-Connectors - 01699

David,

A second request to Cameron from DNV Michaud:

On April 27, DNV developed an email to which a list of materials, equipment and information was attached. A copy of that memo is attached to this email for your information.

DNV is planning to start a series of tests on Monday (16 May) in accordance with Sections VII (Control Pods) and IX (Solenoids and e-connectors) of the Test Protocol. A part of the April 27 request was for Transocean or Cameron to supply:

- Ten (10) male SEM pie connectors,
- Four (4) female Subsea Electronic Module pie connectors, and
- Mating connectors for the Subsea Electronic Module battery leads and terminals.

In our review of the male SEM pie connectors (i.e. the e-connectors) that connect the individual solenoids to the SEM, DNV identified the following markings embossed or stamped into the body of the connector.

- Rochester Corp. Culpepper VA 4-N-5, Sea Con, and
- Rochester Corp. Culpepper VA 4-N-5, Sea Con, AWQ

In accordance with the April 27 request, DNV requests Cameron to supply five each of the above e-connectors. DNV is willing to purchase these e-connectors from Cameron and requests Cameron to provide DNV an invoice in that respect.

If Cameron do not have these e-connectors in stock would Cameron provide DNV with the details of a supplier in the New Orleans area that might have them in stock or provide the name(s) and detail(s) of contact from the Original Equipment Manufacturer (i.e. Rochester Corp.) who might assist with expediting a delivery of these e-connectors?

We look forward to hearing from Cameron soonest.

Regards,
Mark

Mark Cohen
Cohen, Gorman & Putnam, L.L.P.
1010 Lamar Street, Suite 1000
Houston, Texas 77002-6314

Office Phone: 713-224-0628
Fax: 713 224-7487
Email: mcohen@cgptexas.com
Mobile Phone: 832-725-6750
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

CONFIDENTIALITY STATEMENT
This communication, all related responses and any attachments are intended for the use of

5/19/2011

the addressee(s) only, and may contain information that is PRIVILEGED, CONFIDENTIAL, and
may contain ATTORNEY WORK PRODUCT.  If you are not the intended recipient of this
communication, you are hereby notified that dissemination of this communication is
strictly prohibited.  If you have received this communication in error,  please delete all
electronic copies of this message and its attachments, destroy any hard copies you may
have created and notify Mark Cohen or the Office Manager the above email address and
telephone number 713-224-0628.

Regards,
*Gary Kenney*
Mobile – 713 291 2598
**PRIVILEGED & CONFIDENTIAL: CLIENT-ATTORNEY WORK PRODUCT**
In Anticipation of Litigation

5/19/2011



| DET NORSKE VERITAS DNV | REQUEST FOR EQUIPMENT, MATERIALS AND INFORMATION | BOP FORENSIC INVESTIGATION |

The Test Protocol (R. Doc. 1757) calls for various tests to be performed on the Subsea Electronic Modules, the e-connectors to the solenoids and bench tests of the solenoids themselves. In order to complete those tests DNV requires the following equipment or materials be supplied:

1. Ten (10) male SEM pie connectors,
2. Four (4) female Subsea Electronic Module pie connectors,
3. Mating connectors for the Subsea Electronic Module battery leads and terminals,
4. Information from Cameron on the correct resistance measurements for each set of pins within the pie connectors mounted to the Subsea Electronic Modules of the Deepwater Horizon Blowout Preventer,
5. Calibration procedures and associated calibration requirements for the SEM transducers (STEM's)
6. Calibration procedures and associated calibration requirement for the analog input cards

Certain of the above equipment may be available from sources other than Cameron (e.g. Transocean). As a result it is suggested this request be forwarded to BP, Cameron and Transocean for their review and action.

DNV requests the above equipment, information or material be provided as soon as possible to facilitate completion of the associated tests in a timely manner.

PRIVILEGED & CONFIDENTIAL – CLIENT ATTORNEY WORK PRODUCT