Date: 5/23/11
Re: Further to BOP Testing

Dear Magistrate Judge Shushan,

BOP forensic examination is continuing at the NASA Facility in Port Michoud, Louisiana. BP writes to bring to your attention an issue regarding testing of solenoid valve 103Y of the *Deepwater Horizon* BOP.  According to the Court-approved protocols for the BOP forensic examination, DNV was retained to conduct testing of the solenoid valve 103Y to "[t]o determine what has been observed as a difference between solenoid valve 103-Y original and 103-Y replacement in order to determine if the difference could have an effect on the electrical functionality of the
solenoid valve coil."   In this regard, the parties submitted protocols 9(a) and 9(b) to achieve this purpose.  Recently, DNV conducted testing in furtherance of protocol 9(b). As will be further developed below, BP writes to request that the Court either (1) confirm that certain requested testing for solenoid valve 103Y is within protocol 9(b) of the Court-approved protocols, and/or (2) amend protocol 9(b) to allow for this testing because it is a logical outgrowth of the Court-approved testing and will not materially burden or delay the forensic examination.  BP details the specific testing that is requested relating to solenoid 103Y, and explains why such testing is within the scope of protocol 9(b) or a logical outgrowth of it.

Solenoids are normally functioned via the BOP control pods and are necessary to function various components of the BOP, including the blind shear rams.  To ensure that the solenoid itself was tested (and the test was not dependent on the control pods), a "bench test" was included as part of the protocol.   This testing requires that a Portable Electronic Testing Unit ("PETU") be used to function the solenoid valve.  The bench test was conducted last week at the Inspection site, and yielded results inconsistent with those  found during Phase 1 of the Inspection.  To further investigate the inconsistency, Technical Working Group ("TWG") petitioned DNV for testing of the PETU to determine whether the PETU itself was yielding the inconsistent results.  That petition is attached to this email.  Although it may not be specifically identified within the protocol, the requested PETU testing is within the expected testing of protocol 9(b) as a test of the equipment used to perform the underlying protocol.  To the extent it is not within the scope of protocol 9(b), the PETU testing is a natural outgrowth of the underlying test to enable the parties-in-interest to interpret the results achieved.

Second, BP requests that Solenoid Valve 103 Y be disassembled carefully so that the current state of the coil wiring can be observed.   This observation will address whether the polarity was correct, and thus, whether both coils could fire.  If it is not correct, the coils cannot function simultaneously.  Improper disassembly prevents any observation because the sensitivity of the connecting wires, which may tear during the disassembly process.

BP believes that the testing of the PETU, in accordance with the TWG petition, and the Solenoid 103Y disassembly process should be conducted.  The testing is within the scope of protocol 9(b) of the Court-approved protocols, and even if not, is a natural,

logical outgrowth of them, the purpose of which is to investigate the condition of solenoid valve 103Y at the time of the Incident.  We believe a majority of the TWG would support performing the controlled, careful disassembly of the solenoid valve, coupled with further PETU testing, and will assist in that determination. We further understand that Transocean's TWG representative may disagree.

Best Regards,

Rob Gasaway