# BRS Beck Redden & Secrest
### A Registered Limited Liability Partnership

DAVID W. JONES
djones@brsfirm.com

April 25, 2011

Re:   MDL No. 2719; *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010;* In the U.S. District Court, Eastern District of Louisiana

Mark Cohen                                            *By Email (mcohen@cgptexas.com)*
Cohen, Gorman & Putnam, L.L.P.
1010 Lamar Street, Suite 1000
Houston, Texas 77002-6314

Dear Mark:

I write concerning DNV's request that Cameron International Corporation ("Cameron") produce certain information and materials as called for in the third attachment to the contract between BP Exploration & Production, Inc. (as customer) and Det Norske Veritas (U.S.A.), Inc. for forensic study of the Deepwater Horizon blowout preventer, as noted below:

1.   *DNV intends to use the information provided by Cameron, Transocean and other Parties in Interest to the Joint Investigation Team's investigations in accordance with the requirements of Judge Barbier's Pre-Trial Order Protecting Confidentiality*

This is not a request for specific information or materials. Accordingly, no response is required or provided.

3.   *Material specifications or compositions of the following materials:*
     *a.   The elastomeric materials used in the Upper and Lower Annular*
     *b.   The elastomeric materials used in the packers or seals of the rams*
     *c.   The Teflon wear pads of the rams*

Cameron will provide copies of material specifications.

8.   *In connection with the two Mark II Control Pods all drawings, documents, specifications or information of the overall design, manufacture and assembly including all modifications or changes that were made to the Control Pods since their original manufacture and assembly. In addition, drawings, documents or other information of the wiring or electrical circuits and*

One Houston Center
1221 McKinney Street, Suite 4500 – Houston, Texas 77010
Telephone 713.951.3700 – Facsimile 713.951.3720
www.brsfirm.com

383.00017/479464

Mark Cohen
April 25, 2011
Page 2

> *hydraulic circuits or systems of the two Control Pods as fitted to the Deepwater Horizon Mark II Blowout Preventer*

Cameron will provide copies of bills of material, drawings, test procedures, and revision histories.

9. *In connection with the Subsea Electronic Modules with the following identification:*

*BF400213714*
*5009 30/06/2009*
*Part No. – 2020722-21*
*Serial No. 75008327/01*

*222507-40 A05*
*A5024094-1*
*30013510*
*KIT 22413-25*

a. *Drawings, documents, specifications or information of the overall design, wiring, or layout of the SEMs including any modifications or changes made to the SEMs and the circuitry.*
b. *Cameron Proprietary Communications Protocol (i.e. software) for the above SEMs*
      i. *Software program for the AMF/Deadman function within the SEMs*
c. *Equipment, materials or special tools required to vent or open the Subsea Electronic Module*
d. *Drawings, Diagrams, parts list or PC board layouts for the:*
      i. *Subsea Electronic Modules*
      ii. *Automatic Mode Function Card*
      iii. *Central Processing Unit Function Card*
      iv. *Analog Input Card*
      v. *Solenoid Driver Cards*
      vi. *Communications Controller Card*
      vii. *Modem*
      viii. *5V Power Supply*
      ix. *24V Power Supply*
e. *Manufacturer specifications and information for the 9 and 27 Volt Lithium batteries used to power the AMF/Deadman circuits.*

Cameron is still in the process of identifying responsive information, which will be provided. However, Cameron reserves the right to withhold disclosure of certain proprietary information that is not necessary for the planned testing.

Mark Cohen
April 25, 2011
Page 3

10.   *Drawings, documents or other information of the design, manufacture or assembly of the High
      Pressure Regulators (i.e. 5000 psi to 4000 psi) as fitted to the high pressure shear panel of the
      Deepwater Horizon Blowout Preventer*

      Cameron is still in the process of identifying responsive information, which will be provided.

11.   *Drawings, documents or other information of the design, manufacture or assembly of the Part
      No. 223290-63 solenoids as fitted to the Deepwater Horizon Blowout Preventer*

      Cameron is still in the process of identifying responsive information, which will be provided.

12.   *Manufacturer specifications or design for the solenoid (Part No. 223290-63) e-connectors.*

      Cameron is still in the process of identifying responsive information, which will be provided.

15.   *Materials, tools and equipment to test or verify the pressure/temperature sensors. All drawings,
      documents, specifications or other information concerning the manufacture and assembly of the
      pressure/temperature sensors as fitted to the Deepwater Horizon Blowout Preventer.*

      Cameron is still in the process of identifying responsive information, which will be provided.

17.   *Cameron procedures (including disassembly, assembly and testing procedures), schematics, and
      drawings for the purposes of DNV's review in order to ensure compliance and consistency with
      Cameron documentation in developing the final procedures for implementation*

      This is not a request for specific information or materials. Accordingly, no response is required
      or provided.

18.   *Cameron information regarding the differences between the two PETUs used at the NASA
      Michoud facility for the AMF/Deadman test of the Blue and Yellow Pods on March 3-4, 2011*

      Cameron is still in the process of identifying responsive information, which will be provided.

19.   *Cameron information constituting a general description and overview of the capabilities of the
      PETU used to test the Yellow Pod on the Q4000 and the Blue Pod on the Discoverer Enterprise
      in May/July 2010*

      Cameron is still in the process of identifying responsive information, which will be provided.

Mark Cohen
April 25, 2011
Page 4


We continue to work on your various recent requests for information that were not included in the third attachment to the BP contract.

Very truly yours,

David W. Jones

cc:   David J. Beck
      Carmelite M. Bertaut

*By Email*
*By Email*

383.00017/479464.1

Request to Cameron and Transocean

## Mark Cohen

**From:** Mark Cohen [mcohen@cgptexas.com] on behalf of Mark Cohen
**Sent:** Tuesday, May 03, 2011 7:04 PM
**To:** David Jones; Thalgott, Garrett
**Cc:** David Grassmick; Amund.W.Skou@dnv.com; rcolvin@cgptexas.com; dgilbert@cgptexas.com; arhodes@cgptexas.com
**Subject:** DWH - New Information / Material Request to Cameron and Transocean - Our file 01699

Gentlemen:

Your attention is drawn to the following time critical requests from DNV:

1. DNV requests Cameron to provide a status or delivery date for the Control Pod Test Stand listed as Item 5 approved by the Court on April 19, 2011 (i.e. R. Doc 2016-2 Pg 39).

2. DNV requests Cameron or Transocean provide a 'BOP Swing Arm' as depicted in Cameron's drawing SK-019490-01 (CAMCG 00000014) for the Deepwater Horizon Blowout Preventer to assist with removing certain of the ram bonnets as required in the approved Test Protocol (R. Doc 1757 – Item III-c).

3. DNV requests Cameron to confirm the weights of the Ram bonnets for the Blind Shear Rams, the Upper Pipe Rams and the Middle Pipe Rams as fitted to the Deepwater Horizon Blowout Preventer.  Per Cameron's drawing number SK-019369-01 (CAMCG 00000107) the weight for the Super Shear Bonnet Subassembly is estimated at 5,179 lbs.  DNV wishes to confirm whether this weight could be used as a representative weight for the Pipe Ram bonnets or if the weights of the pipe ram bonnets varies significantly from this super shear bonnets.  Further DNV wish to confirm whether those weights include the weight of the operating piston or whether the weight of the operating pistons should be added to the pipe ram bonnets weights.

4. DNV requests Cameron provide:
   A. Packers and seals from the Original Equipment Manufacturer of the same composition that was fused on the rams and annulars fitted to the Deepwater Horizon Blowout Preventer (R. Doc 1757 Item XII(a)).
   B. A Teflon Wear Pad from the Original Equipment Manufacturer of the same composition that was used on the rams fitted to the Deepwater Horizon Blowout Preventer (R. Doc 1757 Item XIII)

DNV requests Cameron and/or Transocean to revert promptly to the above request for equipment, material or information.

Mark

Mark Cohen
Cohen, Gorman & Putnam, L.L.P.
1010 Lamar Street, Suite 1000
Houston, Texas 77002-6314

Office Phone: 713-224-0628
Fax:  713 224-7487

Email: mcohen@cgptexas.com
Mobile Phone: 832-725-6750
**********************

CONFIDENTIALITY STATEMENT
This communication, all related responses and any attachments are intended for the
use of the addressee(s) only, and may contain information that is PRIVILEGED,
CONFIDENTIAL, and may contain ATTORNEY WORK PRODUCT.  If you are not the intended
recipient of this communication, you are hereby notified that dissemination of this
communication is strictly prohibited.  If you have received this communication in
error,  please delete all electronic copies of this message and its attachments,
destroy any hard copies you may have created and notify Mark Cohen or the Office
Manager the above email address and telephone number 713-224-0628.

5/22/2011

## Mark Cohen

| | |
|---|---|
| **From:** | Mark Cohen [mcohen@cgptexas.com] |
| **Sent:** | Wednesday, May 04, 2011 8:21 PM |
| **To:** | 'David Jones'; 'Thalgott, Garrett' |
| **Cc:** | 'Amund.W.Skou@dnv.com'; 'David Grassmick'; 'Ruth A. Colvin'; 'Drew Gilbert'; 'arhodes@cgptexas.com' |
| **Subject:** | DWH - Pending Information / Material Requests to Cameron and Transocean - Follow Up - Our file 01699 |

**Importance:** High

Gentlemen:

Your attention is drawn to the following time critical requests from DNV:(A) In response to David Jones' letter of 29/April:

(1) Items 8 and 9 in general) DNV is reviewing the information Cameron has provided and will advise if further information is needed.

(2) Item 9.b.i) DNV understands Cameron's response or request to clarify the information being sought and in accordance with Cameron's response or request will revert to clarify the request.

(3) Item 9.c) DNV will start the tests of the Control Pods and Subsea Electronic Modules the week of 9 May 2011.  DNV  therefore  requests the materials or equipment as described in 9.c be delivered to the Site as soon as possible.

(4) Item 9.d.i) DNV confirms the request for information in 9.d.i is a duplicate of the request for information as contained in 9.a and as noted earlier DNV is reviewing the information provided by Cameron in response to 9.a and will advise if further information is needed.

(B) To follow-up on other materials, equipment or information as was previously requested by DNV and appended to the Court's Order dated 19/April (R.Doc 2016-2):

(1) Item 3 – When will Cameron provide copies of the material specifications as is noted in Cameron's letter of 25/April?

(2) Item 10 – When will Cameron provide copies of the information requested for the high pressure regulators as is noted in Cameron's letter of 25/April?

(3) Item 11 – When will Cameron provide copies of the information requested for the solenoids as is noted in Cameron's letter of 25/April?

(4) Item 12 - When will Cameron provide copies of the information requested for the e-connectors as is noted in Cameron's letter of 25/April?

(5) Item 15 – When will Cameron provide the materials, tools and equipment for calibrating the pressure/temperature sensor as is noted in Cameron's letter of 25/April?

(6) Item 18 - When will Cameron provide the information on the PETU's as is noted in Cameron's letter of 25/April?

(7) Item 19 - When will Cameron provide the information requested for the PETU that was used to test the Yellow Pod on the Q-4000 as is noted in Cameron's letter of 25/April?

(8) Item 16 – Cameron noted in their letter of 21/April that they do not have the materials or equipment (i.e. a test stinger) that could be used to test the integrity

of hydraulic circuits of the lower BOP and Lower Marine Riser Package per Item V of the Test Protocol (R. Doc. 1757). DNV requests and is seeking assistance from Cameron on alternatives Cameron suggest can be used to meet the objective of the tests as described in Item V of the Test Protocol. /

DNV requests Cameron to revert most promptly now regarding these time critical requests for equipment, material, or information.

Regards,
Mark

Mark Cohen
Cohen, Gorman & Putnam, L.L.P.
1010 Lamar Street, Suite 1000
Houston, Texas 77002-6314

Office Phone: 713-224-0628
Fax: 713 224-7487
Email: mcohen@cgptexas.com
Mobile Phone: 832-725-6750
************************

CONFIDENTIALITY STATEMENT
This communication, all related responses and any attachments are intended for the use of the addressee(s) only, and may contain information that is PRIVILEGED, CONFIDENTIAL, and may contain ATTORNEY WORK PRODUCT. If you are not the intended recipient of this communication, you are hereby notified that dissemination of this communication is strictly prohibited. If you have received this communication in error, please delete all electronic copies of this message and its attachments, destroy any hard copies you may have created and notify Mark Cohen or the Office Manager the above email address and telephone number 713-224-0628.

## Mark Cohen

| | |
|---|---|
| **From:** | Mark Cohen [mcohen@cgptexas.com] on behalf of Mark Cohen |
| **Sent:** | Friday, May 06, 2011 2:17 PM |
| **To:** | David Jones; David Beck; Carmelite Bertaut |
| **Cc:** | Thalgott, Garrett; David Grassmick; Robert Gasaway; Amund.W.Skou@dnv.com; Ruth Colvin; Drew Gilbert |
| **Subject:** | RE: Cameron Technical Assistance - Status & Request - BOP-FORENSIC INVESTIGATION - 01699 |

David,

   Thank you for responding from out of office, for the information, and to Cameron for their best efforts response.
   All this information has been forwarded to DNV Michaud.  Yes, please do update the outstanding requests soonest.

   Regards,
   Mark

Mark Cohen
Cohen, Gorman & Putnam, L.L.P.
1010 Lamar Street, Suite 1000
Houston, Texas 77002-6314

Office Phone: 713-224-0628
Fax:  713 224-7487
Email: mcohen@cgptexas.com
Mobile Phone: 832-725-6750
************************

CONFIDENTIALITY STATEMENT
This communication, all related responses and any attachments are intended for
the use of the addressee(s) only, and may contain information that is
PRIVILEGED, CONFIDENTIAL, and may contain ATTORNEY WORK PRODUCT.  If you are
not the intended recipient of this communication, you are hereby notified that
dissemination of this communication is strictly prohibited.  If you have
received this communication in error,  please delete all electronic copies of
this message and its attachments, destroy any hard copies you may have created
and notify Mark Cohen or the Office Manager the above email address and
telephone number 713-224-0628.

---

**From:** David Jones [mailto:DJONES@brsfirm.com]
**Sent:** Friday, May 06, 2011 2:00 PM
**To:** Mark Cohen; David Beck; Carmelite Bertaut
**Cc:** Thalgott, Garrett; David Grassmick; Robert Gasaway; Amund.W.Skou@dnv.com; Ruth Colvin; Drew Gilbert
**Subject:** RE: Cameron Technical Assistance - Status & Request - BOP-FORENSIC INVESTIGATION - 01699

5/22/2011

Mark – I am out of the office.  See my responses below.

David W. Jones
Beck, Redden & Secrest, L.L.P.
1221 McKinney, Suite 4500
Houston, Texas 77010
713/951-3700
713/951-3720 (fax)

---

**From:** Mark Cohen [mailto:mcohen@cgptexas.com]
**Sent:** Friday, May 06, 2011 1:14 PM
**To:** David Jones; David Beck; Carmelite Bertaut
**Cc:** 'Thalgott, Garrett'; 'David Grassmick'; 'Robert Gasaway'; Amund.W.Skou@dnv.com; 'Ruth Colvin'; 'Drew Gilbert'
**Subject:** Cameron Technical Assistance - Status & Request - BOP-FORENSIC INVESTIGATION - 01699

David,

Good day.  I was not able to reach you by telephone around noon, so I send this message.

DNV requests Cameron's immediate advice as to ETA of the test stand at Michaud.

Cameron has had to custom order hoses to connect the receptacles to the gauge panel.  The custom hoses are due from vendor on May 10, and Cameron currently anticipates shipment on May 12. Cameron is working with the hose vendor to see if the delivery date can be improved.

DNV also requests technically qualified Cameron personnel to attend at the test site.  DNV has outlined the situation in the attached note.

DNV is making this request on less than seven days notice.  Consistent with Cameron's agreement to use best efforts to fulfill such a request on less than seven days notice, a service hand will be at the site on Monday morning.

Some prior DNV requests are outstanding, but DNV did not want to take time away from the work to prepare more notes covering the some of these points a second or third time, because Cameron has had no trouble to date explaining what items it did not understand, or that technically speaking, it could not satisfy.

I do not understand your point.  To the extent you are asking about the status of DNV's outstanding requests, I will address them when I return to the office.

DNV's requests are now matters of urgency, and Cameron's immediate help is again requested.

See responses above.

DNV ask that to expedite the process, Cameron and DNV technical people speak directly with each other, meaning without intervention of counsel, which would help reduce expense and delay.

Any questions concerning the testing being performed at the request of Cameron's litigation adversary should continue to be directed through counsel.

5/22/2011

If you need to discuss any of this or have information to send, please telephone me at the office, call, text, or email me. My mobile number is below. I appreciate that you have many tasks ongoing, and so I am available to you at any time. Please leave no messages on my mobile number, as its messaging system is unreliable.

DNV is working under the auspices of the Court. If Cameron cannot cooperate with DNV, DNV must ask for the Court's help so that the work moves forward smoothly.

Regards,
Mark

Mark Cohen
Cohen, Gorman & Putnam, L.L.P.
1010 Lamar Street, Suite 1000
Houston, Texas 77002-6314

Office Phone: 713-224-0628
Fax:  713 224-7487
Email: mcohen@cgptexas.com
Mobile Phone: 832-725-6750
*************************

CONFIDENTIALITY STATEMENT
This communication, all related responses and any attachments are intended for the
use of the addressee(s) only, and may contain information that is PRIVILEGED,
CONFIDENTIAL, and may contain ATTORNEY WORK PRODUCT.  If you are not the intended
recipient of this communication, you are hereby notified that dissemination of this
communication is strictly prohibited.  If you have received this communication in
error,  please delete all electronic copies of this message and its attachments,
destroy any hard copies you may have created and notify Mark Cohen or the Office
Manager the above email address and telephone number 713-224-0628.

---

**From:** Gary Kenney [mailto:sinerivali1@comcast.net]
**Sent:** Friday, May 06, 2011 11:08 AM
**To:** Mark Cohen
**Cc:** Neil Thompson; Ruth Colvin; Drew Gilbert; Phillip Nidd
**Subject:** Cameron Technical Assistance - Status & Request - BOP-FORENSIC INVESTIGATION

Mark:

My apologies for the delay in sending this to you. Yesterday afternoon and evening became hectic at the Test Site.

I have left the attached in a Word doc format to provide you some flexibility with it.

Regards
*Gary Kenney*
Mobile – 713 291 2598

5/22/2011

PRIVILEGED & CONFIDENTIAL: CLIENT-ATTORNEY WORK PRODUCT
In Anticipation of Litigation

# Mark Cohen

| | |
|---|---|
| **From:** | Mark Cohen [mcohen@cgptexas.com] on behalf of Mark Cohen |
| **Sent:** | Tuesday, May 17, 2011 3:41 PM |
| **To:** | David Jones |
| **Cc:** | rcolvin@cgptexas.com; dgilbert@cgptexas.com; arhodes@cgptexas.com; Amund.W.Skou@dnv.com |
| **Subject:** | RE: BOP-FORENSIC INVESTIGATION-II -- DNV Requests - 01699 |

David -  Any word yet regarding picking up the hardware?

 Mark Cohen
Cohen, Gorman & Putnam, L.L.P.
1010 Lamar Street, Suite 1000
Houston, Texas 77002-6314

Office Phone: 713-224-0628
Fax:  713 224-7487
Email: mcohen@cgptexas.com
Mobile Phone: 832-725-6750
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
CONFIDENTIALITY STATEMENT
This communication, all related responses and any attachments are intended for
the use of the addressee(s) only, and may contain information that is
PRIVILEGED, CONFIDENTIAL, and may contain ATTORNEY WORK PRODUCT.  If you are
not the intended recipient of this communication, you are hereby notified that
dissemination of this communication is strictly prohibited.  If you have
received this communication in error,  please delete all electronic copies of
this message and its attachments, destroy any hard copies you may have created
and notify Mark Cohen or the Office Manager the above email address and
telephone number 713-224-0628.

---

**From:** David Jones [mailto:DJONES@brsfirm.com]
**Sent:** Tuesday, May 17, 2011 8:53 AM
**To:** Mark Cohen
**Subject:** RE: BOP-FORENSIC INVESTIGATION-II -- DNV Requests - 01699

- Service hand and Cameron lawyer should be on site already.
- 4 female connectors will be available for pick-up at Cameron in Houston today; I'll get back with a time and place.
- Still working on availability of 4 e-connectors.

DWJ

**From:** Mark Cohen [mailto:mcohen@cgptexas.com]
**Sent:** Tuesday, May 17, 2011 6:09 AM
**To:** 'Mark Cohen'; David Jones
**Cc:** Amund.W.Skou@dnv.com; dgilbert@cgptexas.com; 'Ruth Colvin'; arhodes@cgptexas.com; David

# Mark Cohen

| | |
|---|---|
| **From:** | David Jones [DJONES@brsfirm.com] |
| **Sent:** | Tuesday, May 17, 2011 3:59 PM |
| **To:** | Mark Cohen |
| **Subject:** | RE: BOP-FORENSIC INVESTIGATION-II -- DNV Requests - 01699 |
| **Attachments:** | CAMERON Drlg and Production Sys Quote# 20814979.pdf |

Attached is the quote for the materials. Please have DNV issue a purchase order. The materials are waiting to be picked up by DNV in shipping and receiving at:

Cameron
6650 Bingle Road
Houston, Texas 77092

David W. Jones
Beck, Redden & Secrest, L.L.P.
1221 McKinney, Suite 4500
Houston, Texas 77010
713/951-3700
713/951-3720 (fax)
www.brsfirm.com


**From:** Mark Cohen [mailto:mcohen@cgptexas.com]
**Sent:** Tuesday, May 17, 2011 3:41 PM
**To:** David Jones
**Cc:** rcolvin@cgptexas.com; dgilbert@cgptexas.com; arhodes@cgptexas.com; Amund.W.Skou@dnv.com
**Subject:** RE: BOP-FORENSIC INVESTIGATION-II -- DNV Requests - 01699

David -  Any word yet regarding picking up the hardware?

Mark Cohen
Cohen, Gorman & Putnam, L.L.P.
1010 Lamar Street, Suite 1000
Houston, Texas 77002-6314

Office Phone: 713-224-0628
Fax:  713 224-7487
Email: mcohen@cgptexas.com
Mobile Phone: 832-725-6750
************************

CONFIDENTIALITY STATEMENT
This communication, all related responses and any attachments are intended for
the use of the addressee(s) only, and may contain information that is
PRIVILEGED, CONFIDENTIAL, and may contain ATTORNEY WORK PRODUCT.  If you are
not the intended recipient of this communication, you are hereby notified that
dissemination of this communication is strictly prohibited.  If you have
received this communication in error,  please delete all electronic copies of
this message and its attachments, destroy any hard copies you may have created
and notify Mark Cohen or the Office Manager the above email address and
telephone number 713-224-0628.

## Mark Cohen

| | |
|---|---|
| **From:** | Mark Cohen [mcohen@cgptexas.com] on behalf of Mark Cohen |
| **Sent:** | Tuesday, May 17, 2011 5:49 PM |
| **To:** | David Jones |
| **Cc:** | Drew Gilbert; 'Ruth Colvin'; arhodes@cgptexas.com; Amund.W.Skou@dnv.com |
| **Subject:** | DWH - BOP 2 - Elastomerics / Data - 01699 |
| **Attachments:** | 2011-05-17 Elastomeric Information.pdf |

David,

DNV have captured the attached data from the elastomerics.
Please organize to have Cameron provide same soonest.
Kindly do as you just did and provide a quote and pick up location.

Regards,
Mark

Mark Cohen
Cohen, Gorman & Putnam, L.L.P.
1010 Lamar Street, Suite 1000
Houston, Texas 77002-6314

Office Phone: 713-224-0628
Fax:  713 224-7487
Email: mcohen@cgptexas.com
Mobile Phone: 832-725-6750
* * * * * * * * * * * * * * * * * * * * * * * *

CONFIDENTIALITY STATEMENT
This communication, all related responses and any attachments are intended for
the use of the addressee(s) only, and may contain information that is
PRIVILEGED, CONFIDENTIAL, and may contain ATTORNEY WORK PRODUCT.  If you are
not the intended recipient of this communication, you are hereby notified that
dissemination of this communication is strictly prohibited.  If you have
received this communication in error,  please delete all electronic copies of
this message and its attachments, destroy any hard copies you may have created
and notify Mark Cohen or the Office Manager the above email address and
telephone number 713-224-0628.

| BOP Forensics – II<br>MDL Litigation – R.Doc. 1757 | Deepwater Horizon<br>Forensic Investigation of<br>the Blowout Preventer | Det Norske Veritas |  |

## Identification or Information on
## Elastomeric Parts

Below please find certain identification numbers DNV has recovered from various elastomeric parts:

| Part Name | Identification or Number |
|---|---|
| Seals, Upper Pipe Rams (or upper variable bore ram) | ▪ 2163264-01-02<br>▪ 2163265-01-02 |
| Top Seal – Variable Bore Ram | ▪ 645068-01-00-02 |
| Lower Annular Elements | ▪ 2164572-03<br>▪ 18-110817562-05<br>▪ 84-82979 |
| Upper Annular Donut | ▪ 2231479-01-00-01 Rev 02<br>▪ 6 _ _ 855-1<br>▪ 11155025319 |

# Quotation



| | |
|---|---|
| **Document Number:** | **5000/H51/20814979** |
| Page: | 1 of 2 |
| Date Issued: | MAY 17 2011 |
| Payment Terms: | Net 30 days |
| Terms and Conditions | As Attached/Included |
| Freight Terms: | Ex Works |
| | Houston Bingle Plant |

DRILLING SYSTEMS
CAMERON
10900 Corporate Centre Drive
HOUSTON TX  77041
USA
Phone: 281-901-3100
Fax: 281-901-3240

Sold To:    22043153
DET NORSKE VERITAS (USA) INC
1400 RAVELLO DR
KATY TX  77449

Quote Prepared By : COREY PETRO/713-423-8812

Customer Reference   : TOI Horizon BOP Forensic Investigat
Valid From          : MAY 17 2011
Valid To            : JUN 17 2011

Re: TOI Horizon BOP Forensic Investigation

**Created by: Corey Petro**
corey.petro@c-a-m.com

| Item | Material Number. Description | Extended Weight | Qty | UM | Unit Price USD | Extended Price USD |
|---|---|---|---|---|---|---|
| 10 | 222843-01 RECEPTACLE E-CONNECTOR FOR SOLENOID VALVE 3/2 WAY PRODUCT MAINTENANCE | 4 KG | 4 | EA | 1,892.00 | 7,568.00 |
| 20 | 2197088-01-24 SUBSEA CONNECTOR, 24 WAY FEMALE PIE CONNECTOR 6 X 4 CONTACTS BOP FLANGE TO INTERNALS | 2 KG | 4 | EA | 3,918.00 | 15,672.00 |
| | **Total** | | | | | 23,240.00 |



**Quotation**

**Document Number:**   5000/H51/20814979
Page:                              2  of   2

**SECTION SUMMARY**

**Price Summary:**

|  |  |  |
|---|---|---|
| **Total Price:** | 23,240.00 | USD |
| **Total Quotation Value :** | 23,240.00 | USD |

CAMERON RESERVES THE RIGHT TO REVIEW QUOTED PRICES SHOULD THERE BE AN INCREASE BY MORE THAN 2% AS THE RESULT OF THE STEEL PRICE ADJUSTMENT FORMULA. THE FORMULA REFLECTS CHANGES TO MEPS-WORLD CARBON STEEL AND MEPS-WORLD STAINLESS STEEL PRODUCT PRICES, INDEX NAME HOT ROLLED PLATE, PUBLISHED BY MEPS INTERNATIONAL, UK. URL ADDRESS IS WWW.MEPS.CO.UK. THE FORMULA TO BE USED IN THIS ASSESSMENT IS INCLUDED WITHIN ATTACHMENT (X).

THESE COMMODITIES, TECHNOLOGY OR SOFTWARE WERE EXPORTED FROM THE UNITED STATES IN ACCORDANCE WITH THE EXPORT ADMINISTRATION REGULATIONS. DIVERSION CONTRARY TO U.S. LAW IS PROHIBITED.

TERMS & CONDITIONS

**1. CONTRACT ACCEPTANCE:**
Any written or oral purchase order received from Buyer by Seller shall be construed as a written acceptance of Seller's offer to sell and shall be filled in accordance with the terms and conditions of sale set forth herein. SELLER's ACCEPTANCE OF THIS ORDER IS EXPRESSLY CONDITIONED ON BUYER's ASSENT TO THE TERMS CONTAINED HEREIN. The terms and conditions of Seller's proposal (if any) and acknowledgement shall prevail over any conflicting or different terms in Buyer's order unless Buyer notifies Seller in writing of its objections thereto within fifteen (15) days from receipt of Seller's acknowledgement. Buyer's standard terms of purchase will not be considered a counteroffer to Seller's terms and conditions of sale. The failure of Seller to object to any provision in conflict herewith whether contained on Buyer's purchase order or otherwise shall not be construed as a waiver of the provisions hereof nor as an acceptance thereof.

**2. QUOTATIONS AND PRICES:**
Any product, service capability or manufacturing capability which may be available at the time a quotation is made is subject to prior sale. Prices quoted are subject to change without notice. The price in effect at the time of shipment including any escalation formula will apply, unless a valid quotation or written agreement to the contrary exists between Buyer and Seller. All prices shown are in U.S. dollars and are F.O.B. Seller's shipping point. Seller reserves the right to place a service charge on past due accounts at the highest rate permitted by law. Any documentation pertaining to traceability requirements for raw materials or products or documentation required for any routine of special processes must be identified by the Buyer at the time of quotation (if any) or at the time of order placement.

**3. TAXES:**
Any tax or other charge imposed by law on the sale or production of goods or the performance of services shall be paid by the Buyer, unless the law specifically provides that such payment must be made by Seller, in which case Buyer shall reimburse Seller for such payment as part of the purchase price. Custom duties, consular fees, insurance charges and other comparable charges will be borne by Buyer.

**4. SHIPPING SCHEDULE AND DELIVERY:**
Shipment schedules are given as accurately as conditions permit and every effort will be made to make shipments as scheduled. Seller will not be responsible for deviations in meeting shipping schedules nor for any losses or damages to Buyer (or any third party) occasioned by deviations in the shipping schedule, whether due to Acts of God, orders bearing priority ratings established pursuant to law, differences with workmen, local labor shortages, fire, flood, shortages or failure of raw materials, supplies, fuel, power or transportation, breakdown of equipment or any other causes beyond Seller's reasonable control, whether of similar or dissimilar nature than those enumerated. Seller shall have additional time within which to perform as may be reasonably necessary under the circumstances and shall have the right to apportion its production among its customers in such a manner as it may consider to be equitable. Seller reserves the right to furnish commercially equivalent or better substitutes for materials or to subcontract the Buyer's order or portions thereof as Seller deems necessary. In no event shall Seller be liable for any consequential damages resulting from failure or delay in shipment. If Buyer requires drawings, procedures, standards or similar material for approval, shipping schedules will be calculated from the time such approvals are received by Seller, since shipping schedules are based on Seller having all required information and a firm order from Buyer which is enterable into production. Any hold points, witness points or the need for inspection by Buyer's representatives must be identified by Buyer at the time of quotation (if any) and/or order placement in order that the effect on the prices or shipping schedules (if any) can be taken into account. Additional inspection or testing required by Buyer which affects normal production sequence will be considered as extending the shipping dates accordingly.

**5. TERMS OF PAYMENT:**
Terms of payment are 30 days from date of invoice unless otherwise stated in the quotation or Seller's order acknowledgment.

**6. CANCELLATIONS AND RETURNS:**
Purchase orders once placed by Buyer and accepted by Seller can be canceled only with Seller's written consent and upon terms which will save Seller from loss. No products may be returned for credit or adjustment without written permission from Seller's office authorized to issue such permission.

**7. WARRANTIES:**
All products of Seller's manufacture except for its Orbit product are warranted against defects of material and workmanship for a period of twelve (12) months from the date of installation or eighteen (18) months from date of shipment, whichever period first expires while its Orbit product is warranted for thirty six (36) months from date of shipment, when all such products are used in the service and within the pressure range for which they were manufactured. In the case of products or parts not wholly of Seller's manufacture, Seller's liability shall be limited to the extent of its recovery from the manufacturer of such products or parts under its liability to Seller. Any repair work performed by Seller is warranted for one year from completion of such repairs and applies only to work performed. If, within these specified periods, Seller receives notice from Buyer of any alleged defect in nonconformance of any product or repair and if in the Seller's sole judgment the product or repair does not conform or is found to be defective in material or workmanship, then, Buyer shall, at Seller's request, return the part or product F.O.B. to Seller's designated plant or service location. Seller has no liability for removal or reinstallation of products or equipment. Seller, at its option and expense, shall repair or replace the defective part or product, or repay to Buyer the full price paid by Buyer for such defective part, repair or product. Any repayment of purchase price shall be without interest. Seller's warranty liability, including defects caused by Seller's negligence, shall be limited to such repair, replacement or refund, and shall not include claims for labor costs, expenses of Buyer resulting from such defects, recovery under general tort law or strict liability or for damages resulting from delays, loss of use, or other direct, indirect, incidental or consequential damages of any kind. Seller will not be responsible for failures of products which have been in any way tampered with or altered by anyone other than an authorized representative of Seller, failures due to lack of compliance with recommended maintenance procedures or products which have been repaired or altered in such a way (in Seller's judgment) as to affect the products adversely. THIS WARRANTY IS EXPRESSLY IN LIEU OF ALL OTHER WARRANTIES, EXPRESS, STATUTORY OR IMPLIED, INCLUDING THE WARRANTY OF MERCHANTABILITY AND FITNESS FOR PARTICULAR PURPOSE WHICH EXCEED THE FOREGOING WARRANTY.

**8. ENGINEERING AND SERVICE:**
Upon request, Seller will provide engineering and/or technical information regarding its products and their uses and, if feasible, will provide personnel to assist Buyer in effecting field installations and/or field service. Any such information, service or assistance so provided, whether with or without charge, shall be advisory only

**9. LABOR STANDARDS:**
Seller hereby certifies that these products were produced in accordance with all applicable requirements of Section 6, 7 and 12 of the Fair Labor Standards Act as amended and of regulations and orders of the United States Department of Labor issued under Section 14 thereof.

**10. INSPECTION:**
Unless otherwise agreed in writing, final inspection and acceptance of products must be made at Seller's plant or other shipping or receiving point designated by Seller and shall be conclusive except as regards latent defects. Buyer's representatives may inspect at the Seller's plant or shipping point during working hours prior to shipment in such manner as will not interfere with operations.

**11. DELIVERY AND ACCEPTANCE:**
Delivery shall be in accordance with the requirements in the Purchase Contract, provided, in the event Buyer is unable to accept delivery upon completion of the manufacture of the Goods in accordance with requirements, Buyer agrees that (i) title and risk of ownership shall pass to Buyer on date of Seller's invoice, and (ii) Buyer will make payments within thirty days after date of such invoice. Seller shall retain custodial risk of loss until delivery is made in accordance with such requirements.

**12. EXPORT COMPLIANCE:**
The Buyer shall provide the Seller with relevant end-use, end-user and country of end-use information with respect to the goods, services, software or technology to be supplied hereunder (collectively, .Items.). Based on and in reliance on such information, the Seller will supply such Items in compliance with applicable trade and customs laws including that of the United States of America. The Seller cautions and the Buyer acknowledges that any change in end-use, end-user or country of end-use (including a shipment between countries other than the U.S.) may be restricted or prohibited by applicable trade and customs law, whether it be of the U.S. or other country. The Parties shall comply with all trade and customs laws (including U.S. Export Controls) except for any such laws which conflict with or are otherwise penalized under the laws of the U.S., which in the event of such conflict, Seller shall notify Buyer. The Buyer agrees in particular that it shall not use and shall not permit any third party to use such items in connection with the design, production, use, or storage of chemical, biological or nuclear weaponor missiles of any kind.

**13. TRANSPORTATION CHARGES, ALLOWANCES, CLAIMS:**
All prices are F.O.B. Seller's plant or other designated shipping point. No freight is allowed unless stated in Seller's quotation (if any) or in a written contract which may exist between Seller and Buyer at the time of shipment. If Seller's quotation or a written contract states that all or a portion of freight is allowed, all prices are F.O.B. Seller's plant or other designated shipping point, with most conventional surface transportation allowed. If the quoted or contractual price includes transportation, Seller reserves the right to designatethe common carrier and to ship in the manner it deems most economical. Added costs due to special routing requested by the Buyer are chargeable to the Buyer. Under no circumstances is any freight allowance which is absorbed by Seller to be deducted from the selling price. If the quoted price or contract includes transportation, no deduction will be made in lieu thereof whether Buyer accepts shipment at plant, warehouse, freight station, or otherwise supplies its own transportation. When sales are made from the Seller's warehouse, Seller reserves the right to charge either actual transportation or freight from Seller's principle point of manufacture to Seller's warehouse. Seller assumes risk of loss upon delivery to the carrier, regardless of who pays shipping costs. Seller endeavors to pack or prepare all shipments so that they will not break, rust or deteriorate in transit, but does not guarantee against such damage. Unless requested in writing by the Buyer, no shipments are insured by Seller against damage or loss in transit. Seller will place insurance as nearly as possible in accordance with Buyer's

written instructions but in such case Seller acts only as agent between the insurance company and the Buyer and assumes no liability whatsoever. Any claims for shipping loss, breakage or damage (obvious or concealed) are Buyer's responsibility and should be made to the carrier. All claims regarding shortages must be made within thirty (30) days from receipt of shipment and must be accompanied by the packing list(s) covering the shipment.

**14. INDEMNIFICATION AND LIMITATION OF LIABILITY:**

A. INDEMNIFICATION:
Buyer Group, means: Buyer, its parent (if any), subsidiaries, affiliates, co-owners, co-venturers, partners and any entity with whom Buyer has an economic interest with respect to the Work including Buyer's customer and its and their respective employees, personnel, directors, officers, borrowed servants, representatives, agents, contractors and subcontractors (respectively and of any tier or level and who are not included within the Seller Group), .Seller Group. means: Seller, its parent (if any), subsidiaries, affiliates, co-owners and its and their respective employees, personnel, directors, officers, borrowed servants, representatives, agents, contractors and subcontractors (respectively and of any tier or level and who are not included within the Buyer Group), .Negligence. means: sole, joint or concurrent, active, passive, gross or willful misconduct.
(1) Seller shall release, defend,save, indemnify (collectively .Indemnify.) and hold Buyer Group harmlessfrom and against all claims, demands, losses, damages and causes ofaction of whatever kind or nature (collectively .Claims.), for loss ofor damage to the property of the members of the Seller Group even ifsuch Claims arise from or attributable to the Negligence of the membersof Buyer Group.
(2) Sellershall Indemnify and hold Buyer Group harmlessfrom and against all Claims for the death(s) of or personal injury(ies) to members of the Seller Group even if such Claims arisefromor attributable to the Negligence of the members of Buyer Group.
(3) Buyer shall Indemnify and hold Seller Group harmless from andagainst all Claims for loss of or damage to the property (including theWork) of the members of the Buyer Group even if such Claims arisefrom or attributable to the Negligence of the members of Seller Group.
(4) Buyer shall Indemnify and hold Seller Group harmless from and against all Claims for the death(s) of or personal injury(ies) to members of the Buyer Group even if such Claims arise from or attributable to the Negligence of the members of Seller Group.
(5) Buyer (on its own behalf and on behalf of Buyer Group) and Seller (on its own behalf and on behalf of Seller Group) shall Indemnify and hold each other harmless from and against any and all Claims asserted against them by or on behalf of any third party for the death(s) of or personal Injury (ies) to such a third party, as well as loss (es) of or damage(s) to the property of such a third party. A third party is a person or eniity not included in Buyer Group or Seller Group. It is agreed by Buyer and Seller that their respective duty of indemnity to each other with respect to Claims asserted against them by a third party pursuant to this Article 14 (A) (5) shall be limited to their respective degree of Negligence.
(6) Notwithstanding any other provision contained in this Agreement, Buyer shall Indemnify and hold the members of Seller Group harmless from and against all Claims (including clean-up costs and loss (es) of oil, gas or hydrocarbons) arising from pollution, contamination, dumping or spilling of any substance and even if arising out of or attributable to the Negligence of the members of the Seller Group.

B. INDEMNITY FOR CONSEQUENTIAL DAMAGES:
UNDER NO CIRCUMSTANCES SHALL SELLER BE LIABLE FOR ANY SPECIAL, CONSEQUENTIAL, INCIDENTAL, EXEMPLARY OR PUNITIVE DAMAGES (collectively .CONSEQUENTIAL.), AS DEFINED BY THE LAWS GOVERNING THIS PURCHASE ORDER, NOR FOR ANY LOSS OF ANTICIPATED PROFITS, LOSS OF BUSINESS OPPORTUNITY, LOSS OF USE OF EQUIPMENT OR OF ANY INSTALLATION, SYSTEM OR FACILITY TO WHICH SELLER's EQUIPMENT MAY BE LOCATED OR AT WHICH MEMBERS OF THE SELLER GROUP MAY BE PERFORMING WORK AND BUYER AGREES TO .INDEMNIFY. AND HOLD SELLER GROUP HARMLESS FROM AND AGAINST ANY .CLAIMS. FOR SUCH .CONSEQUENTIAL. DAMAGES EVEN IF ARISING OUT OF OR ATTRIBUTABLE TO THE .NEGLIGENCE. OF THE MEMBERS OF THE SELLER GROUP.

C. LIMITATION OF LIABILITY:
EXCEPT AS OTHERWISE EXPRESSLY LIMITED IN THIS AGREEMENT IT IS THE EXPRESS INTENTION OF THE PARTIES HERETO THAT ALL INDEMNITY OBLIGATIONS AND/OR LIABILITIES HEREBY ASSUMED BY THE PARTIES SHALL BE: (i) SUPPORTED BY INSURANCE; (ii) WITHOUT LIMIT; (iii) AND WITHOUT REGARD TO THE CAUSE OR CAUSES THEREOF, INCLUDING, BUT NOT LIMITED TO, PREEXISTING CONDITIONS (WHETHER SUCH CONDITIONS BE PATENT OR LATENT); THE UNSEAWORTHINESS OF ANY VESSEL OR VESSELS (WHETHER OR NOT PREEXISTING); THE UNAIRWORTHINESS OF ANY AIRCRAFT; BREACH OF REPRESENTATION OR WARRANTY (EXPRESS OR IMPLIED); BREACH OF CONTRACT; BREACH OF DUTY (STATUTORY, CONTRACTUAL, COMMON LAW OR OTHERWISE); STRICT LIABILITY; CONDITION OF RUIN OR DEFECTIVE PREMISES, EQUIPMENT, FACILITIES, OR APPURTENANCES OF ANY PARTY UNDER ANY CODE, LAW OR (WHETHER OR NOT SAID CONDITION IS PREEXISTING AND/OR LATENT, PATENT OR OTHERWISE); THE LOADING OR UNLOADING OF PERSONS OR CARGO; TORT; OR THE NEGLIGENCE OR FAULT OF ANY PARTY (AS DEFINED AT THE BEGINNING OF THIS ARTICLE 14; OR ANY OTHER THEORY OF LEGAL LIABILITY. Seller's total responsibility for any claim, damages, losses or liability arising out of or related to its performance of this contract or the products or services covered hereunder shall not exceed the purchase price.

**15. MODIFICATION, RESCISSION & WAIVER:**
The terms herein may not be modified or rescinded nor any of its provisions waived unless such modification, rescission or waiver is in writing and signed by an authorized employee of Seller at its office in Houston, Texas. Failure of Seller to insist in any one or more instances upon the performance of any of the terms and conditions of the contract or the failure of Seller to exercise any of its rights hereunder shall not be construed as a waiver or relinquishment of any such term, condition, or right hereunder and shall not affect Seller's right to insist upon strict performance and compliance with regard to any unexecuted portions of this contract or future performance of these terms and conditions. All orders must be accepted by an authorized employee of Seller. The rights and duties of the parties and construction and effect of all provisions hereof shall be governed by and construed according to the internal laws of the State of Texas. Any disputes which arise under this agreement shall be venued in the District Court of Harris County, Texas or in the Southern District of Texas.
REV08/06

**Ruth Colvin**

---

| | |
|---|---|
| **From:** | Mark Cohen [mcohen@cgptexas.com] |
| **Sent:** | Wednesday, May 18, 2011 1:14 PM |
| **To:** | 'David Jones' |
| **Cc:** | 'Drew Gilbert'; 'Ruth Colvin'; Amund.W.Skou@dnv.com; arhodes@cgptexas.com; 'David Grassmick' |
| **Subject:** | RE: DWH - BOP Testing -- Packer and Wear Pads// purchase // 01699 |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |
| **Attachments:** | CAMERON Drlg and Production Sys Quote# 20814979.pdf |

David,

Per yours below, DNV require:
One (1) Shearing Blind Ram (SBR) blade packer; and
One (1) each - Right and one (1) each – Left, Ram Wear Pads (total 2)

DNV is ready to obtain these materials.    Please advise when/where we can pick up these items.
A bill/quotation can be provided in your email or when we pick the items up.
++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++
Separately, with regard to the materials picked up yesterday, quotation attached:  DNV Michaud project PO Number is 110970 - for $23,240.00 to Cameron Drilling Systems.

Thanks, again, to Cameron and you.


Regards,
Mark

Mark Cohen
Cohen, Gorman & Putnam, L.L.P.
1010 Lamar Street, Suite 1000
Houston, Texas 77002-6314

Office Phone: 713-224-0628
Fax:  713 224-7487
Email: mcohen@cgptexas.com
Mobile Phone: 832-725-6750
* * * * * * * * * * * * * * * * * * * * * * * *

CONFIDENTIALITY STATEMENT
This communication, all related responses and any attachments are intended for the use of the addressee(s) only, and may contain information that is PRIVILEGED, CONFIDENTIAL, and may contain ATTORNEY WORK PRODUCT.  If you are not the intended recipient of this communication, you are hereby notified that dissemination of this communication is strictly prohibited.  If you have received this communication in error,  please delete all electronic copies of this message and its attachments, destroy any hard copies you may have created and notify Mark Cohen or the Office Manager the above email address and telephone number  713-224-0628.

**From:** David Jones [mailto:DJONES@brsfirm.com]
**Sent:** Wednesday, May 18, 2011 11:15 AM
**To:** Mark Cohen
**Subject:** DWH - BOP Testing -- Packer and Wear Pads

Mark – Following up on your email of May 10 concerning DNV's request that Cameron provide certain packers and wear pads, I have received an SBR blade packer and 4 ram wear pads (2 right and 2 left). These are the items from your May 10 email that match current Cameron part numbers.  We were not clear from DNV's request how many ram wear pads they want.  The price of the SBR blade packer is $2,013, and the price of each wear pad is $442.  Please let me know if DNV still wants these materials and, if so, how many wear pads they want.  I will then have Cameron issue a quote.

David W. Jones
Beck, Redden & Secrest, L.L.P.
1221 McKinney, Suite 4500
Houston, Texas 77010
713/951-3700
713/951-3720 (fax)
www.brsfirm.com

**Mark Cohen**

| | |
|---|---|
| **From:** | David Jones [DJONES@brsfirm.com] |
| **Sent:** | Wednesday, May 18, 2011 11:15 AM |
| **To:** | Mark Cohen |

**Subject:** DWH - BOP Testing -- Packer and Wear Pads

Mark – Following up on your email of May 10 concerning DNV's request that Cameron provide certain packers and wear pads, I have received an SBR blade packer and 4 ram wear pads (2 right and 2 left).  These are the items from your May 10 email that match current Cameron part numbers.  We were not clear from DNV's request how many ram wear pads they want.  The price of the SBR blade packer is $2,013, and the price of each wear pad is $442.  Please let me know if DNV still wants these materials and, if so, how many wear pads they want.  I will then have Cameron issue a quote.

David W. Jones
Beck, Redden & Secrest, L.L.P.
1221 McKinney, Suite 4500
Houston, Texas 77010
713/951-3700
713/951-3720 (fax)
www.brsfirm.com

# Mark Cohen

| | |
|---|---|
| **From:** | David Jones [DJONES@brsfirm.com] |
| **Sent:** | Wednesday, May 18, 2011 11:23 PM |
| **To:** | Mark Cohen |
| **Subject:** | RE: DWH - BOP Testing -- Packer and Wear Pads// purchase // 01699 |

Mark – I am told that CAM needs a "hard copy" (pdf is acceptable) of the PO (No. 110970) referenced below in order to create the Sales Order and close it out.  Please forward a copy whenever it is convenient.

DWJ


**From:** Mark Cohen [mailto:mcohen@cgptexas.com]
**Sent:** Wednesday, May 18, 2011 1:14 PM
**To:** David Jones
**Cc:** 'Drew Gilbert'; 'Ruth Colvin'; Amund.W.Skou@dnv.com; arhodes@cgptexas.com; 'David Grassmick'
**Subject:** RE: DWH - BOP Testing -- Packer and Wear Pads// purchase // 01699

David,

  Per yours below, DNV require:
  One (1) Shearing Blind Ram (SBR) blade packer; and
  One (1) each - Right and one (1) each – Left, Ram Wear Pads (total 2)

  DNV is ready to obtain these materials.    Please advise when/where we can pick up these items.
  A bill/quotation can be provided in your email or when we pick the items up.
+++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++
  Separately, with regard to the materials picked up yesterday, quotation attached:  DNV Michaud project PO Number is 110970 - for $23,240.00 to Cameron Drilling Systems.

  Thanks, again, to Cameron and you.

  Regards,
  Mark

Mark Cohen
Cohen, Gorman & Putnam, L.L.P.
1010 Lamar Street, Suite 1000
Houston, Texas 77002-6314

Office Phone: 713-224-0628
Fax:  713 224-7487
Email: mcohen@cgptexas.com
Mobile Phone: 832-725-6750
* * * * * * * * * * * * * * * * * * * * * * *
CONFIDENTIALITY STATEMENT
This communication, all related responses and any attachments are intended for

the use of the addressee(s) only, and may contain information that is PRIVILEGED,
CONFIDENTIAL, and may contain ATTORNEY WORK PRODUCT.  If you are not the intended
recipient of this communication, you are hereby notified that dissemination of this
communication is strictly prohibited.  If you have received this communication in
error, please delete all electronic copies of this message and its attachments,
destroy any hard copies you may have created and notify Mark Cohen or the Office
Manager the above email address and telephone number 713-224-0628.

---

**From:** David Jones [mailto:DJONES@brsfirm.com]
**Sent:** Wednesday, May 18, 2011 11:15 AM
**To:** Mark Cohen
**Subject:** DWH - BOP Testing -- Packer and Wear Pads

Mark – Following up on your email of May 10 concerning DNV's request that Cameron provide certain packers and wear pads, I have received an SBR blade packer and 4 ram wear pads (2 right and 2 left). These are the items from your May 10 email that match current Cameron part numbers.  We were not clear from DNV's request how many ram wear pads they want.  The price of the SBR blade packer is $2,013, and the price of each wear pad is $442.  Please let me know if DNV still wants these materials and, if so, how many wear pads they want.  I will then have Cameron issue a quote.

David W. Jones
Beck, Redden & Secrest, L.L.P.
1221 McKinney, Suite 4500
Houston, Texas 77010
713/951-3700
713/951-3720 (fax)
www.brsfirm.com

## Mark Cohen

| | |
|---|---|
| **From:** | David Jones [DJONES@brsfirm.com] |
| **Sent:** | Wednesday, May 18, 2011 3:57 PM |
| **To:** | Mark Cohen |
| **Subject:** | RE: DWH - BOP Testing -- Packer and Wear Pads// purchase // 01699 |
| **Attachments:** | CAMERON Drlg and Production Sys Quote# 20814270.pdf |

Attached is a quote for the items referenced below.  They can be picked up at my office, or I can have them FedExed to a location of your choosing.  If you choose the latter, please provide an address, telephone number, and FedEx account number.  The package weighs about 28 lbs.

David W. Jones
Beck, Redden & Secrest, L.L.P.
1221 McKinney, Suite 4500
Houston, Texas 77010
713/951-3700
713/951-3720 (fax)
www.brsfirm.com


**From:** Mark Cohen [mailto:mcohen@cgptexas.com]
**Sent:** Wednesday, May 18, 2011 1:14 PM
**To:** David Jones
**Cc:** 'Drew Gilbert'; 'Ruth Colvin'; Amund.W.Skou@dnv.com; arhodes@cgptexas.com; 'David Grassmick'
**Subject:** RE: DWH - BOP Testing -- Packer and Wear Pads// purchase // 01699

David,

Per yours below, DNV require:
One (1) Shearing Blind Ram (SBR) blade packer; and
One (1) each - Right and one (1) each – Left, Ram Wear Pads (total 2)

DNV is ready to obtain these materials.    Please advise when/where we can pick up these items.
A bill/quotation can be provided in your email or when we pick the items up.
+++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++
Separately, with regard to the materials picked up yesterday, quotation attached:  DNV Michaud project PO Number is 110970 - for $23,240.00 to Cameron Drilling Systems.

Thanks, again, to Cameron and you.

Regards,
Mark

Mark Cohen
Cohen, Gorman & Putnam, L.L.P.
1010 Lamar Street, Suite 1000
Houston, Texas 77002-6314

Office Phone: 713-224-0628


5/22/2011

Fax:  713 224-7487
Email: mcohen@cgptexas.com
Mobile Phone: 832-725-6750
************************

CONFIDENTIALITY STATEMENT
This communication, all related responses and any attachments are intended for the
use of the addressee(s) only, and may contain information that is PRIVILEGED,
CONFIDENTIAL, and may contain ATTORNEY WORK PRODUCT.  If you are not the intended
recipient of this communication, you are hereby notified that dissemination of this
communication is strictly prohibited.  If you have received this communication in
error,  please delete all electronic copies of this message and its attachments,
destroy any hard copies you may have created and notify Mark Cohen or the Office
Manager the above email address and telephone number 713-224-0628.

---

**From:** David Jones [mailto:DJONES@brsfirm.com]
**Sent:** Wednesday, May 18, 2011 11:15 AM
**To:** Mark Cohen
**Subject:** DWH - BOP Testing -- Packer and Wear Pads

Mark – Following up on your email of May 10 concerning DNV's request that Cameron provide certain packers and wear pads, I have received an SBR blade packer and 4 ram wear pads (2 right and 2 left). These are the items from your May 10 email that match current Cameron part numbers.  We were not clear from DNV's request how many ram wear pads they want.  The price of the SBR blade packer is $2,013, and the price of each wear pad is $442.  Please let me know if DNV still wants these materials and, if so, how many wear pads they want.  I will then have Cameron issue a quote.

David W. Jones
Beck, Redden & Secrest, L.L.P.
1221 McKinney, Suite 4500
Houston, Texas 77010
713/951-3700
713/951-3720 (fax)
www.brsfirm.com

# Quotation

# CAMERON

| | |
|---|---|
| **Document Number:** | **5000/B31/20814270** |
| Page: | 1  of  2 |
| Date Issued: | May 18 2011 |
| Payment Terms: | Net 30 days |
| Terms and Conditions | As Attached/Included |

DRILLING SYSTEMS
CAMERON
29501 KATY FREEWAY
KATY TX  77494
USA
Phone: 281-391-4600
Fax: 281-391-4635

Sold To:    22043153
DET NORSKE VERITAS (USA) INC
1400 RAVELLO DR
KATY TX  77449

Quote Prepared By : Dale Dayton/281-391-4650

Customer Reference   : 18-3/4 15M TL SHEAR RAM SPARES
Valid From          : MAY 16 2011
Valid To            : JUN 16 2011

| Item | Material Number. Description | Extended Weight | Qty | UM | Unit Price USD | Extended Price USD |
|---|---|---|---|---|---|---|
| 10 | 644894-01-00-01 PKR,BLADE-SBR 350, 18 3/4" 15M "T" & "TL" BOPS PER QP 10010-01 | | 1 | EA | 2,013.00 | 2,013.00 |
| 20 | 2011279-01 <br><br> RAM WEAR PAD, RIGHT SIDE-18-3/4" T BOP | | 1 | EA | 442.00 | 442.00 |
| 30 | 2011279-02 RAM WEAR PAD, LEFT SIDE - 18-3/4" T BOP | | 1 | EA | 442.00 | 442.00 |

**Price Summary:**

| | | |
|---|---|---|
| **Total Price:** | **2,897.00** | **USD** |
| **Total Quotation Value :** | **2,897.00** | **USD** |

DELIVERY: STOCK
SUBJECT TO PRIOR SALE.

**Quotation**

 **CAMERON**

**Document Number:** 5000/B31/20814270
**Page:** 2 of 2

CAMERON RESERVES THE RIGHT TO REVIEW QUOTED PRICES SHOULD THERE BE AN INCREASE BY MORE THAN 2% AS THE RESULT OF THE STEEL PRICE ADJUSTMENT FORMULA. THE FORMULA REFLECTS CHANGES TO MEPS-WORLD CARBON STEEL AND MEPS-WORLD STAINLESS STEEL PRODUCT PRICES, INDEX NAME HOT ROLLED PLATE, PUBLISHED BY MEPS INTERNATIONAL, UK. URL ADDRESS IS WWW.MEPS.CO.UK. THE FORMULA TO BE USED IN THIS ASSESSMENT IS INCLUDED WITHIN ATTACHMENT (X).

THESE COMMODITIES, TECHNOLOGY OR SOFTWARE WERE EXPORTED FROM THE UNITED STATES IN ACCORDANCE WITH THE EXPORT ADMINISTRATION REGULATIONS. DIVERSION CONTRARY TO U.S. LAW IS PROHIBITED.

TERMS & CONDITIONS

**1. CONTRACT ACCEPTANCE:**
Any written or oral purchase order received from Buyer by Seller shall be construed as a written acceptance of Seller's offer to sell and shall be filled in accordance with the terms and conditions of sale set forth herein. SELLER's ACCEPTANCE OF THIS ORDER IS EXPRESSLY CONDITIONED ON BUYER's ASSENT TO THE TERMS CONTAINED HEREIN. The terms and conditions of Buyer's proposal (if any) and acknowledgement shall prevail over any conflicting or different terms in Buyer's order unless Buyer notifies Seller in writing of its objections thereto within fifteen (15) days from receipt of Seller's acknowledgement. Buyer's standard terms of purchase will not be considered a counteroffer to Seller's terms and conditions of sale. The failure of Seller to object to any provision in conflict herewith whether contained on Buyer's purchase order or otherwise shall not be construed as a waiver of the provisions hereof nor as an acceptance thereof.

**2. QUOTATIONS AND PRICES:**
Any product, service capability or manufacturing capability which may be available at the time a quotation is made is subject to prior sale. Prices quoted are subject to change without notice. The price in effect at the time of shipment including any escalation formula will apply, unless a valid quotation or written agreement to the contrary exists between Buyer and Seller. All prices shown are in U.S. dollars and are F.O.B. Seller's shipping point. Seller reserves the right to place a service charge on past due accounts at the highest rate permitted by law. Any documentation pertaining to traceability requirements for raw materials or products or documentation required for any routine or special processes must be identified by the Buyer at the time of quotation (if any) or at the time of order placement.

**3. TAXES:**
Any tax or other charge imposed by law on the sale or production of goods or the performance of services shall be paid by the Buyer, unless the law specifically provides that such payment must be made by Seller, in which case Buyer shall reimburse Seller for such payment as part of the purchase price. Custom duties, consular fees, insurance charges and other comparable charges will be borne by Buyer.

**4. SHIPPING SCHEDULE AND DELIVERY:**
Shipment schedules are given as accurately as conditions permit and every effort will be made to make shipments as scheduled. Seller will not be responsible for deviations in meeting shipping schedules nor for any losses or damages to Buyer (or any third party) occasioned by deviations in the shipping schedule, whether due to Acts of God, orders bearing priority ratings established pursuant to law, differences with workmen, local labor shortages, fire, flood, shortages or failure of raw materials, supplies, fuel, power or transportation, breakdown of equipment or any other causes beyond Seller's reasonable control, whether of similar or dissimilar nature than those enumerated. Seller shall have additional time within which to perform as may be reasonably necessary under the circumstances and shall have the right to apportion its production among its customers in such a manner as it may consider to be equitable. Seller reserves the right to furnish commercially equivalent or better substitutes for materials or to subcontract the Buyer's order or portions thereof as Seller deems necessary. In no event shall Seller be liable for any consequential damages resulting from failure or delay in shipment. If Buyer requires drawings, procedures, standards or similar material for approval, shipping schedules will be calculated from the time such approvals are received by Seller, since shipping schedules are based on Seller having all required information and a firm order from Buyer which is enterable into production. Any hold points, witness points or the need for inspection by Buyer's representatives must be identified by Buyer at the time of quotation (if any) and/or order placement in order that the effect on the prices or shipping schedules (if any) can be taken into account. Additional inspection or testing required by Buyer which affects normal production sequence will be considered as extending the shipping dates accordingly.

**5. TERMS OF PAYMENT:**
Terms of payment are 30 days from date of invoice unless otherwise stated in the quotation or Seller's order acknowledgement.

**6. CANCELLATIONS AND RETURNS:**
Purchase orders once placed by Buyer and accepted by Seller can be canceled only with Seller's written consent and upon terms which will save Seller from loss. No products may be returned for credit or adjustment without written permission from Seller's office authorized to issue such permission.

**7. WARRANTIES:**
All products of Seller's manufacture except for its Orbit product are warranted against defects of material and workmanship for a period of twelve (12) months from the date of installation or eighteen (18) months from date of shipment, whichever period first expires while its Orbit product is warranted for thirty six (36) months from date of shipment, when all such products are used in the service and within the pressure range for which they were manufactured. In the case of products of Seller's manufacture, Seller's liability shall be limited to the extent of its recovery from the manufacturer of such products or parts under its liability to Seller. Any repair work performed by Seller is warranted for one year from completion of such repairs and applies only to work performed. If, within these specified periods, Seller receives notice from Buyer of any alleged defect in or nonconformance of any product or repair and if in the sole judgment the product or repair does not conform or is found to be defective in material or workmanship, then, Buyer shall, at Seller's request, return the part or product F.O.B. to Seller's designated plant or service location. Seller has no liability for removal or reinstallation of products or equipment. Seller, at its option and expense, shall repair or replace the defective part or product, or repay to Buyer the full price paid by Buyer for such defective part, repair or product. Any repayment of purchase price shall be without interest. Seller's warranty liability, including defects caused by Seller's negligence, shall be limited to such repair, replacement or refund, and shall not include claims for labor costs, expenses of Buyer resulting from such defects, recovery under general tort law or strict liability or for damages resulting from delays, loss of use, or other direct, indirect, incidental or consequential damages of any kind. Seller will not be responsible for failures of products which have been in any way tampered with or altered by anyone other than an authorized representative of Seller, failures due to lack of compliance with recommended maintenance procedures or products which have been repaired or altered in such a way (in Seller's judgment) as to affect the products adversely. THIS WARRANTY IS EXPRESSLY IN LIEU OF ALL OTHER WARRANTIES, EXPRESS, STATUTORY OR IMPLIED, INCLUDING THE WARRANTY OF MERCHANTABILITY AND FITNESS FOR PARTICULAR PURPOSE WHICH EXCEED THE FOREGOING WARRANTY.

**8. ENGINEERING AND SERVICE:**
Upon request, Seller will provide engineering and/or technical information regarding its products and their uses and, if feasible, will provide personnel to assist Buyer in effecting field installations and/or field service. Any such information, service or assistance so provided, whether with or without charge, shall be advisory only

**9. LABOR STANDARDS:**
Seller hereby certifies that these products were produced in accordance with all applicable requirements of Section 6, 7 and 12 of the Fair Labor Standards Act as amended and of regulations and orders of the United States Department of Labor issued under Section 14 thereof.

**10. INSPECTION:**
Unless otherwise agreed in writing, final inspection and acceptance of products must be made at Seller's plant or other shipping or receiving point designated by Seller and shall be conclusive except as regards latent defects. Buyer's representatives may inspect at the Seller's plant or shipping point during working hours prior to shipment in such manner as will not interfere with operations.

**11. DELIVERY AND ACCEPTANCE:**
Delivery shall be in accordance with the requirements in the Purchase Contract, provided, in the event Buyer is unable to accept delivery upon completion of the manufacture of the Goods in accordance with such requirements, Buyer agrees that (i) title and risk of ownership shall pass to Buyer on date of Seller's invoice, and (ii) Buyer will make payments within thirty days after date of such invoice. Seller shall retain custodial risk of Goods until delivery is made in accordance with such requirements.

**12. EXPORT COMPLIANCE:**
The Buyer shall provide the Seller with relevant end-use, end-user and country of end-use information with respect to the goods, services, software or technology to be supplied hereunder (collectively, Items.). Based on and in reliance on such information, the Seller will supply such Items in compliance with applicable trade and customs laws including that of the United States of America. The Seller cautions and the Buyer acknowledges that any change in end-use, end-user or country of end-use (including a shipment between countries other than the U.S.) may be restricted or prohibited by applicable trade and customs law, whether it be of the U.S. or other country. The Parties shall comply with all trade and customs laws (including U.S. Export Controls) except for any such laws which conflict with or are otherwise penalized under the laws of the U.S., which in the event of such conflict, Seller shall notify Buyer. The Buyer agrees in particular that it shall not use and shall not permit any third partyto use such Items in connection with the design, production, use, or storage of chemical, biological or nuclear weaponsor missiles of any kind.

**13. TRANSPORTATION CHARGES, ALLOWANCES, CLAIMS:**
All prices are F.O.B. Seller's plant or other designated shipping point. No freight is allowed unless stated in Seller's quotation (if any) or in a written contract which may exist between Seller and Buyer at the time of shipment. If Seller's quotation or a written contract states that all or a portion of freight is allowed, all prices are F.O.B. Seller's plant or other designated shipping point, with most economical surface transportation allowed. If the quoted or contracted price includes transportation, Seller reserves the right to designatethe common carrier and to ship in the manner it deems most economical. Added costs due to special routing requested by the Buyer are chargeable to the Buyer. Under no circumstances is any freight allowance which is absorbed by Seller to be deducted from the selling price. If the quoted price or contract includes transportation, no deduction will be made in lieu thereof whether Buyer accepts shipment at plant, warehouse, freight station, or otherwise supplies its own transportation. When sales are made from the Seller's warehouse, Seller reserves the right to charge either actual or pro-rated freight from Seller's principle point of manufacture to Seller's warehouse. Buyer assumes risk of loss upon delivery to the carrier, regardless of who pays shipping costs. Seller endeavors to pack or prepare all shipments so that they will not break, rust or deteriorate in transit, but does not guarantee against such damage. Unless requested in writing by the Buyer, no shipments are insured by Seller against damage or loss in transit. Seller will place insurance as nearly as possible in accordance with Buyer's

written instructions but in such case Seller acts only as agent between the insurance company and the Buyer and assumes no liability whatsoever. Any claims for shipping loss, breakage or damage (obvious or concealed) are Buyer's responsibility and should be made to the carrier. All claims regarding shortages must be made within thirty (30) days from receipt of shipment and must be accompanied by the packing list(s) covering the shipment.

**14. INDEMNIFICATION AND LIMITATION OF LIABILITY:**
A. INDEMNIFICATION:
Buyer Group. means: Buyer, its parent (if any), subsidiaries, affiliates, co-owners, co-venturers, partners and any entity with whom Buyer has an economic interest with respect to the Work including Buyer's customer and its and their respective employees, personnel, directors, officers, borrowed servants, representatives, agents, contractors and subcontractors (respectively and of any tier or level and who are not included within the Seller Group). Seller Group. means: Seller, its parent (if any), subsidiaries, affiliates, co-owners and its and their respective employees, personnel, directors, officers, borrowed servants, representatives, agents, contractors and subcontractors (respectively and of any tier or level and who are not included within the Buyer Group). .Negligence. means: sole, joint or concurrent, active, passive, gross or willful misconduct.
(1) Seller shall release, defend,save, indemnify (collectively .Indemnify.) and hold Buyer Group harmlessfrom and against all claims, demands, losses, damages and causes ofaction of whatever kind or nature (collectively .Claims.), for loss ofor damage to the property of the members of the Seller Group even ifsuch Claims arise from or attributable to the Negligence of the membersof Buyer Group.
(2) Sellershall Indemnify and hold Buyer Group harmlessfrom and against all Claimsfor the death(s) of or personal injury(ies) to members of the Seller Group even if such Claims arisefromor attributable to the Negligence of the members of Buyer Group.
(3) Buyer shall Indemnify and hold Seller Group harmless from andagainst all Claims for loss of or damage to the property (including the Work) of the members of the Buyer Group even if such Claims arise from or attributable to the Negligence of the members of Seller Group.
(4) Buyer shall Indemnify and hold Seller Group harmless from and against all Claims for the death(s) of or personal injury(ies) to members of the Buyer Group even if such Claims arise from or attributable to the Negligence of the members of Seller Group.
(5) Buyer (on its own behalf and on behalf of Buyer Group) and Seller (on its own behalf and on behalf of Seller Group) shall Indemnify and hold each other harmless from and against any and all Claims asserted against them by or on behalf of any third party for the death(s) of or personal injury (ies) to such a third party, as well as loss (es) of or damage(s) to the property of such a third party. A third party is a person or entity not included in Buyer Group or Seller Group. It is agreed by Buyer and Seller that their respective duty of indemnity to each other with respect to Claims asserted against them by a third party pursuant to this Article 14 (A) (5) shall be limited to their respective degree of Negligence.
(6) Notwithstanding any other provision contained in this Agreement, Buyer shall Indemnify and hold the members of Seller Group harmless from and against all Claims (including clean-up costs and loss (es) of oil, gas or hydrocarbons) arising from pollution, contamination, dumping or spilling of any substance and even if arising out of or attributable to the Negligence of the members of the Seller Group.
B. INDEMNITY FOR CONSEQUENTIAL DAMAGES:
UNDER NO CIRCUMSTANCES SHALL SELLER BE LIABLE FOR ANY SPECIAL, CONSEQUENTIAL, INCIDENTAL, EXEMPLARY OR PUNITIVE DAMAGES (collectively .CONSEQUENTIAL.), AS DEFINED BY THE LAWS GOVERNING THIS PURCHASE ORDER, NOR FOR ANY LOSS OF ANTICIPATED PROFITS, LOSS OF BUSINESS OPPORTUNITY, LOSS OF USE OF EQUIPMENT OR OF ANY INSTALLATION, SYSTEM OR FACILITY INTO WHICH SELLER's EQUIPMENT MAY BE LOCATED OR AT WHICH MEMBERS OF THE SELLER GROUP MAY BE PERFORMING WORK AND BUYER AGREES TO .INDEMNIFY. AND HOLD SELLER GROUP HARMLESS FROM AND AGAINST ANY .CLAIMS. FOR SUCH .CONSEQUENTIAL. DAMAGES EVEN IF ARISING OUT OF OR ATTRIBUTABLE TO THE .NEGLIGENCE. OF THE MEMBERS OF THE SELLER GROUP.
C. LIMITATION OF LIABILITY:
EXCEPT AS OTHERWISE EXPRESSLY LIMITED IN THIS AGREEMENT IT IS THE EXPRESS INTENTION OF THE PARTIES HERETO THAT ALL INDEMNITY OBLIGATIONS AND/OR LIABILITIES HEREBY ASSUMED BY THE PARTIES SHALL BE: (i) SUPPORTED BY INSURANCE; (ii) WITHOUT LIMIT; (iii) AND WITHOUT REGARD TO THE CAUSE OR CAUSES THEREOF, INCLUDING, BUT NOT LIMITED TO, PREEXISTING CONDITIONS (WHETHER SUCH CONDITIONS BE PATENT OR LATENT); THE UNSEAWORTHINESS OF ANY VESSEL OR VESSELS (WHETHER OR NOT PREEXISTING); THE UNAIRWORTHINESS OF ANY AIRCRAFT; BREACH OF REPRESENTATION OR WARRANTY (EXPRESS OR IMPLIED); BREACH OF CONTRACT; BREACH OF DUTY (STATUTORY, CONTRACTUAL, COMMON LAW OR OTHERWISE); STRICT LIABILITY; CONDITION OF RUIN OR DEFECTIVE PREMISES, EQUIPMENT, FACILITIES, OR APPURTENANCES OF ANY PARTY UNDER ANY CODE, LAW OR (WHETHER OR NOT SAID CONDITION IS PREEXISTING AND/OR LATENT, PATENT OR OTHERWISE); THE LOADING OR UNLOADING OF PERSONS OR CARGO; TORT; OR THE NEGLIGENCE OR FAULT OF ANY PARTY (AS DEFINED AT THE BEGINNING OF THIS ARTICLE 14; OR ANY OTHER THEORY OF LEGAL LIABILITY. Seller's total responsibility for any claims, damages, losses or liability arising out of or related to its performance of this contract or the products or services covered hereunder shall not exceed the purchase price.
15. MODIFICATION, RESCISSION & WAIVER:
This Agreement may not be modified or rescinded nor any of its provisions waived unless such modification, rescission or waiver is in writing and signed by an authorized employee of Seller at its office in Houston, Texas. Failure of Seller to insist in any one or more instances upon the performance of any of the terms and conditions of the contract or the failure of Seller to exercise any of its rights hereunder shall not be construed as a waiver or relinquishment of any such term, condition, or right hereunder and shall not affect Seller's right to assign strict performance and compliance with regard to any unexecuted portions of this contract or future performance of these terms and conditions. All orders must be accepted by an authorized employee of Seller. The rights and duties of the parties and construction and effect of all provisions hereof shall be governed by and construed according to the internal laws of the State of Texas. Any disputes which arise under this agreement shall be venued in the District Court of Harris County, Texas or in the Southern District of Texas.
REV08/06

## Mark Cohen

| | |
|---|---|
| **From:** | Mark Cohen [mcohen@cgptexas.com] on behalf of Mark Cohen |
| **Sent:** | Thursday, May 19, 2011 10:16 AM |
| **To:** | David Jones |
| **Cc:** | Amund.W.Skou@dnv.com; dgilbert@cgptexas.com; rcolvin@cgptexas.com; David Grassmick |
| **Subject:** | DWH - BOP 2 - Progress of Work - Cameron issues - 01699 |

David,

After speaking with you yesterday evening, and considering the situation further with DNV Michaud project team, I would like to know if Cameron can agree to the following:

(1) Extend the test period 9 days? DNV project team at Michaud consider this a fair estimate of minimum time lost on the project to date on account of matters in the control of Cameron.

(2) Reform its approach to the Michaud project so that Cameron treats DNV's requests for materials, equipment, information, and help with the same promptness and enthusiasm it does requests from its best customers?

(3) Communicate on the project relative to logistics, purchasing, scheduling and the like proceed through senior managers instead of counsel?

(4) Participate in daily, short planning conferences with DNV between same management regarding  logistics, purchasing, scheduling and the like?

(5) Participate in weekly status conferences with the Court regarding project status?

DNV consider that these changes in project management would facilitate progress of the work and and reduce the work load for Cameron and others, and therefore transaction costs involved.  If we can agree to these items I shall need to address only the first (a time extension in the project) to the Court. If we cannot, I shall ask for relief on what is outstanding.

I have sent this note instead of calling this morning because of the length of my message.  I am prepared to speak with you further, when it becomes convenient for you.  You are welcome to call me on my mobile, if I am not at the office.

In view of the scheduling issue, I have requested the Court to have the Michaud Project status put on the agenda for the conference tomorrow.

regards,

Mark


Mark Cohen
Cohen, Gorman & Putnam, L.L.P.
1010 Lamar Street, Suite 1000
Houston, Texas 77002-6314

Office Phone: 713-224-0628
Fax:  713 224-7487
Email: mcohen@cgptexas.com
Mobile Phone: 832-725-6750
* * * * * * * * * * * * * * * * * * * * * *
CONFIDENTIALITY STATEMENT

This communication, all related responses and any attachments are intended for the use of the addressee(s) only, and may contain information that is PRIVILEGED, CONFIDENTIAL, and may contain ATTORNEY WORK PRODUCT.  If you are not the intended recipient of this communication, you are hereby notified that dissemination of this communication is strictly prohibited.  If you have received this communication in error,  please delete all electronic copies of this message and its attachments, destroy any hard copies you may have created and notify Mark Cohen or the Office Manager the above email address and telephone number 713-224-0628.

5/22/2011

## Mark Cohen

| | |
|---|---|
| **From:** | Mark Cohen [mcohen@cgptexas.com] on behalf of Mark Cohen |
| **Sent:** | Thursday, May 19, 2011 10:16 AM |
| **To:** | David Jones |
| **Cc:** | Amund.W.Skou@dnv.com; dgilbert@cgptexas.com; rcolvin@cgptexas.com; David Grassmick |
| **Subject:** | DWH - BOP 2 - Progress of Work - Cameron issues - 01699 |

David,

After speaking with you yesterday evening, and considering the situation further with DNV Michaud project team, I would like to know if Cameron can agree to the following:

(1) Extend the test period 9 days?  DNV project team at Michaud consider this a fair estimate of minimum time lost on the project to date on account of matters in the control of Cameron.

(2) Reform its approach to the Michaud project so that Cameron treats DNV's requests for materials, equipment, information, and help with the same promptness and enthusiasm it does requests from its best customers?

(3) Communicate on the project relative to logistics, purchasing, scheduling and the like proceed through senior managers instead of counsel?

(4) Participate in daily, short planning conferences with DNV between same management regarding  logistics, purchasing, scheduling and the like?

(5) Participate in weekly status conferences with the Court regarding project status?

DNV consider that these changes in project management would facilitate progress of the work and and reduce the work load for Cameron and others, and therefore transaction costs involved.  If we can agree to these items I shall need to address only the first (a time extension in the project) to the Court. If we cannot, I shall ask for relief on what is outstanding.

I have sent this note instead of calling this morning because of the length of my message.  I am prepared to speak with you further, when it becomes convenient for you.  You are welcome to call me on my mobile, if I am not at the office.

In view of the scheduling issue, I have requested the Court to have the Michaud Project status put on the agenda for the conference tomorrow.

regards,
Mark


Mark Cohen
Cohen, Gorman & Putnam, L.L.P.
1010 Lamar Street, Suite 1000
Houston, Texas 77002-6314

Office Phone: 713-224-0628
Fax:  713 224-7487
Email: mcohen@cgptexas.com
Mobile Phone: 832-725-6750
* * * * * * * * * * * * * * * * * * * * * *
CONFIDENTIALITY STATEMENT

This communication, all related responses and any attachments are intended for the use of the addressee(s) only, and may contain information that is PRIVILEGED, CONFIDENTIAL, and may contain ATTORNEY WORK PRODUCT.  If you are not the intended recipient of this communication, you are hereby notified that dissemination of this communication is strictly prohibited.  If you have received this communication in error,  please delete all electronic copies of this message and its attachments, destroy any hard copies you may have created and notify Mark Cohen or the Office Manager the above email address and telephone number 713-224-0628.