# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  OIL SPILL by the OIL RIG | § | |
| "DEEPWATER HORIZON" in the | § | **MDL No. 2179** |
| GULF OF MEXICO on | § | |
| APRIL 20, 2010 | § | **SECTION: J** |
| | § | |
| Applies to: | § | **Judge Carl J. Barbier** |
| | § | **Magistrate Judge Sally Shushan** |
| *All Cases and* | § | |
| No. 2-10-cv-02771, *In re Complaint and* | § | |
| *Petition of Triton Asset Leasing GMBH, et al.* | § | |
| *In a Cause of Action for Exoneration From* | § | |
| *or Limitation of Liability.* | § | |

## DEFENDANT M-I L.L.C.'S FIRST AMENDED CROSS-CLAIMS

Defendant M-I L.L.C., pursuant to Federal Rule of Civil Procedure 13(g), states as follows for its cross-claims against Cross-Defendants.[1]

## THE PARTIES

1.     M-I, LLC ("M-I") is a Delaware limited liability company with its principal place of business in Houston, Texas.    M-I has been served with a summons and Master Complaint, Cross-Claim and Third-Party Complaint for Private Economic Losses in Accordance with PTO No. 11 Section III(B)(1) (B1 Bundle) and/or a First Amended Master Complaint, has been named as a Third-Party Defendant in Petitioners' Rule 14(c) Third-Party Complaint, and has been served with other summonses and complaints related to the *Deepwater Horizon* explosion and the resulting oil spill.  M-I denies any negligence or fault in connection with the explosion or the oil spill.  The *Deepwater Horizon* explosion and the resulting oil spill were caused by the negligence of other parties, including the Cross-Defendants herein.  M-I has a contractual right to

---

[1] M-I files these cross-claims in the Limitation Action pursuant to the Stipulated Order dated March 24, 2011 (Rec. Doc. 1730).  These cross-claims also apply to the complaints in Pleading Bundles B and C.

indemnification from the BP Parties, and statutory and/or common law rights to indemnification and/or contribution from Cross-Defendants herein, in whole or in part, for any damages that may be assessed against M-I as a result of the events alleged in the Rule 14(c) Third Party Complaint, the First Amended B1 Master Complaint, and other complaints that have been or may be filed arising out of the *Deepwater Horizon* explosion and oil spill.

2.      Cross-Defendant BP America Production Company, Inc. ("BP America") is a Delaware corporation with its principal place of business in Houston, Texas.  This Court has personal jurisdiction over BP America because it is registered to do business in Louisiana and does business in Louisiana, and has a registered agent in Louisiana.

3.      Cross-Defendant BP Exploration & Production, Inc. ("BP Exploration & Production") is a Delaware corporation with its principal place of business in Warrenville, Illinois.  This Court has personal jurisdiction over BP Exploration & Production because it is registered to do business in Louisiana and does business in Louisiana, and has a registered agent in Louisiana.

4.      Cross-Defendant BP p.l.c. is a British limited company with its corporate headquarters in London, United Kingdom.  BP p.l.c. is the global parent company of the worldwide business operating under the "BP" tradename.  Cross-Defendants BP America and BP Exploration & Production are wholly-owned subsidiaries of BP p.l.c.  This Court has personal jurisdiction over BP p.l.c. pursuant to the Louisiana long-arm statute, La. Rev. Stat. Ann. § 13:3201, because BP p.l.c. has continuous and systemic contacts with Louisiana and/or because the causes of action asserted in the complaints against BP p.l.c., the Rule 14(c) tender, and by M-I herein arise out of BP p.l.c.'s contacts with Louisiana.  BP America Production Company, Inc.,

BP Exploration & Production, Inc., and BP p.l.c. are sometimes referred to collectively as the "BP Parties."

5.      Cross-Defendant Halliburton Energy Services, Inc. ("Halliburton") is a Delaware corporation with its principal place of business in Houston, Texas.  This Court has personal jurisdiction over Halliburton because it is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.

6.      Cross-Defendant Anadarko Exploration & Production Company, L.P. ("Anadarko E&P") is a limited partnership organized under Delaware law, with its principal place of business in The Woodlands, Texas.  This Court has personal jurisdiction over Anadarko E&P because it is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.

7.      Cross-Defendant Anadarko Petroleum Corporation ("Anadarko Petroleum") is a Delaware corporation with its principal place of business in The Woodlands, Texas.  This Court has personal jurisdiction over Anadarko Petroleum because it is registered to do business in Louisiana and does business in Louisiana.  Anadarko Exploration & Production Company, L.P. and Anadarko Petroleum Corporation are sometimes referred to collectively as the "Anadarko Parties."

8.      Cross-Defendant MOEX Offshore 2007 LLC ("MOEX Offshore") is a limited liability company organized under Delaware law, with its principal place of business in Houston, Texas.  This Court has personal jurisdiction over MOEX Offshore because it is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.

9.      Cross-Defendant MOEX USA Corporation ("MOEX USA") is a Delaware corporation with its principal place of business in Houston, Texas.  This Court has personal

jurisdiction over MOEX USA pursuant to the Louisiana long-arm statute, La. Rev. Stat. Ann. § 13:3201, because MOEX USA has continuous and systemic contacts with Louisiana, and/or because the causes of action asserted in the complaints against MOEX USA, the Rule 14(c) tender, and by M-I herein arise out of MOEX USA's contacts with Louisiana.

10.    Cross-Defendant Mitsui Oil Exploration Company, Ltd. ("Mitsui") is a corporation organized under Japanese law, with its principal place of business in Tokyo, Japan. Upon information and belief, Mitsui is a corporate parent and/or alter ego of MOEX Offshore. This Court has personal jurisdiction over Mitsui pursuant to the Louisiana long-arm statute, La. Rev. Stat. Ann. § 13:3201, because Mitsui has continuous and systemic contacts with Louisiana, and/or because the causes of action asserted in the complaints against Mitsui, the Rule 14(c) tender, and by M-I herein arise out of Mitsui's contacts with Louisiana.  Mitsui Oil Exploration Company, Ltd, MOEX Offshore 2007 LLC, and MOEX USA Corporation are sometimes referred to collectively as the "MOEX Parties."

11.    Cross-Defendant Cameron International Corporation ("Cameron") is a Delaware corporation with its principal place of business in Houston, Texas.  This Court has personal jurisdiction over Cameron because it is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.

12.    Cross-Defendant Weatherford U.S. L.P. ("Weatherford U.S.") is a limited partnership organized under Louisiana law, with its principal place of business in Houston, Texas.  This Court has personal jurisdiction over Weatherford U.S. because it is registered to do business in Louisiana and does business in Louisiana.

13.    Cross-Defendant Weatherford International, Inc. ("Weatherford International") is a Delaware corporation with its principal place of business in Houston, Texas.  This Court has

personal jurisdiction over Weatherford International because it is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.  Weatherford U.S., L.P. and Weatherford International, Inc. are sometimes referred to collectively as the "Weatherford Parties."

14.     Cross-Defendant Dril-Quip, Inc. ("Dril-Quip") is a Delaware corporation with its principal place of business in Houston, Texas.  This Court has personal jurisdiction over Dril-Quip because Dril-Quip is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.

15.     Cross-Defendant Triton Asset Leasing GmbH is a limited liability company organized under the laws of Switzerland, with its principal place of business in Zug, Switzerland. This Court has personal jurisdiction over Triton Asset Leasing GmbH because it does business in Louisiana and because it voluntarily submitted to the jurisdiction of this Court by filing the Rule 14(c) Third-Party Complaint.

16.     Cross-Defendant Transocean Holdings LLC ("Transocean Holdings") is a Delaware limited liability company with its principal place of business in Houston, Texas.  This Court has personal jurisdiction over Transocean Holdings because it does business in Louisiana and because it voluntarily submitted to the jurisdiction of this Court by filing the Rule 14(c) Third Party Complaint.

17.     Cross-Defendant Transocean Offshore Deepwater Drilling Inc. ("Transocean Offshore") is a Delaware corporation with its principal place of business in Houston, Texas. This Court has personal jurisdiction over Transocean Offshore because it does business in Louisiana and because it voluntarily submitted to the jurisdiction of this Court by filing the Rule 14(c) Third Party Complaint.

18.     Cross-Defendant Transocean Deepwater Inc. ("Transocean Deepwater") is a Delaware corporation with its principal place of business in Houston, Texas.  This Court has personal jurisdiction over Transocean Deepwater because it does business in Louisiana and because it voluntarily submitted to the jurisdiction of this Court by filing the Rule 14(c) Third Party Complaint.  Triton Asset Leasing GmbH, Transocean Holdings LLC, Transocean Offshore Deepwater Drilling Inc., and Transocean Deepwater Inc. are sometimes collectively referred to as the "Transocean Parties."

19.     Cross-Defendant Marine Spill Response Corporation ("MSRC") is a Tennessee non-profit corporation with its principal place of business in Herndon, Virginia. This Court has personal jurisdiction over MSRC because MSRC was doing business in the State of Louisiana at all pertinent times.

20.     Cross-Defendant Airborne Support, Inc. ("ASI") is a Florida corporation with its principal place of business in Houma, Louisiana.  This Court has personal jurisdiction over ASI because ASI was doing business in the State of Louisiana at all pertinent times.

21.     Cross-Defendant Airborne Support International, Inc. ("ASI International") is a Florida corporation with its principal place of business in Houma, Louisiana.  This Court has personal jurisdiction over ASI International because ASI International was doing business in the State of Louisiana at all pertinent times.

22.     Cross-Defendant Lynden, Inc. ("Lynden") is a Washington corporation with its principal place of business in Seattle, Washington.  This Court has personal jurisdiction over Lynden because at all pertinent times, Lynden was doing business in the State of Louisiana by virtue of its one hundred percent ownership interest in Lynden Air Cargo, LLC.  Lynden Air Cargo, LLC is an Alaska limited liability company with its principal place of business in Seattle,

Washington.  At all pertinent times, Lynden Air Cargo, LLC, together with Lynden, Inc., was doing business in the State of Louisiana.

23.     Cross-Defendant Dynamic Aviation Group, Inc. ("Dynamic") is a Virginia corporation with its principal place of business in Bridgewater, Virginia.  This Court has personal jurisdiction over Dynamic because Dynamic was doing business in the State of Louisiana at all pertinent times.

24.     Cross-Defendant International Air Response, Inc. ("IAR") is an Arizona corporation with its principal place of business in Coolidge, Arizona.  This Court has personal jurisdiction over IAR because IAR was doing business in the State of Louisiana at all pertinent times.

25.     Cross-Defendant Lane Aviation ("Lane") is a Texas corporation with its principal place of business in Rosenberg, Texas.  This Court has personal jurisdiction over Lane because Lane was doing business in the State of Louisiana at all pertinent times.

26.     Cross-Defendant National Response Corporation ("NRC") is a Delaware corporation with its principal place of business in Great River, New York.  This Court has personal jurisdiction over NRC because at all pertinent times, NRC, along with SEACOR Holding, Inc., a Delaware corporation with its principal place of business in Delaware (of which NRC is a wholly-owned subsidiary), was doing business in the State of Louisiana.

27.     Cross-Defendant O'Brien Response Management, Inc. ("O'Brien") is a Louisiana corporation with its principal place of business in the Parish of St. Tammany, Louisiana.

28.     Cross-Defendant The Modern Group, Ltd. ("Modern Group") is a Texas for profit business entity, with its principal place of business in Beaumont, Texas. Individually, and/or through one or more of its partners, subsidiaries and/or affiliated entities, including, but not

limited to, The Modern Group GP SUB and/or Tiger Rentals, Ltd. (collectively "Modern Group"), the Modern Group, upon information and belief, participated in the post-explosion Oil Spill remediation and response efforts, through its ventures "Tiger Safety" and/or "Tiger Rentals", the names under which The Modern Group does business in the Parish of Broussard, State of Louisiana.

29.     Cross-Defendant Tiger Safety, LLC ("Tiger") is a Louisiana limited liability company with its principal place of business in the Parish of East Baton Rouge, State of Louisiana.

30.     Cross-Defendant DRC Emergency Services, LLC ("DRC") is an Alabama limited liability company.  At all pertinent times, DRC was doing business in the State of Louisiana. DRC participated in the post-blowout remediation and response efforts.

31.     Cross-Defendant Nalco Company ("Nalco") is a Delaware corporation and is wholly owned by Nalco Holdings LLC, a Delaware limited liability company.  This Court has personal jurisdiction over Nalco because Nalco was doing business in the State of Louisiana at all pertinent times.

32.     The cross-defendants described in Paragraphs 19-31 are referred to collectively as the "Responder Parties."

33.     Each of the above-described Cross-Defendants has been served with a summons and Master Complaint, Cross-Claim and Third-Party Complaint for Private Economic Losses in Accordance with PTO No. 11 Section III(B)(1) (B1 Bundle) and/or a First Amended Master Complaint, and has been served with other summonses and complaints related to the *Deepwater Horizon* explosion and the resulting oil spill.  With the exception of the Transocean Parties, each of the above-described Cross-Defendants has also been served with a Rule 14(c) tender by Triton

Asset Leasing GMBH, Transocean Holdings LLC, Transocean Deepwater Drilling Inc., and Transocean Deepwater Inc.

## JURISDICTION AND VENUE

34.     Jurisdiction over M-I's cross-claims is proper pursuant to the rules governing cross-claims against co-parties.  This Court also has supplemental and/or ancillary jurisdiction over these cross-claims and counterclaims because the Court already has jurisdiction over Petitioners' Rule 14(c) Complaint and the Amended B1 Master Complaint pursuant to 28 U.S.C. § 1333 (admiralty jurisdiction), 43 U.S.C. § 1349(b) (the Outer Continental Shelf Lands Act (OCSLA)), and 28 U.S.C. § 1331 (because the claims in the Rule 14(c) Complaint and the Master Complaint arise under OCSLA and the Oil Pollution Act of 1990, 33 U.S.C. § 2701 et seq.).

35.     This Court also has original jurisdiction over M-I's cross-claims pursuant to 28 U.S.C. § 1333 (admiralty jurisdiction) and 43 U.S.C. § 1349(b) (OCLSA).

36.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

## CLAIMS

37.     When the *Deepwater Horizon* explosion occurred on April 20, 2010, each of the Cross-Defendants identified above had personnel and/or equipment on the rig, were otherwise directly involved with the *Deepwater Horizon*'s drilling operations at the Macondo well, or were involved in the remediation and clean-up efforts that followed the blowout.

38.     In the Amended B1 Master Complaint and in other complaints, Plaintiffs/ Claimants have sought to hold M-I and the Cross-Defendants liable for the injuries they allegedly suffered as a result of the *Deepwater Horizon* explosion and fire and/or the resulting oil spill.

39.     The *Deepwater Horizon* explosion, the resulting oil spill, and the injuries alleged by Claimants/Plaintiffs were not caused, in whole or in part, by the conduct of M-I.  Instead, they were caused by the negligence of Cross-Defendants, as further described herein, and others against whom M-I has already asserted counter-claims.  As such, M-I is entitled to contractual indemnity, common law indemnity, and/or statutory or common law contribution, in whole or in part, for any damages that may be assessed against M-I as a result of the events alleged in the Rule 14(c) Third Party Complaint, the First Amended B1 Master Complaint, and other complaints that have been or may be filed arising out of the *Deepwater Horizon* explosion and oil spill.

## COUNT I
### (Against the BP Parties for Contractual Indemnification)

40.     Paragraphs 1-39 are incorporated by reference as if fully set forth.

41.     M-I and BP Exploration & Production, Inc. are parties to contract BPM-09-00209, a Contract For Gulf of Mexico Strategic Performance Unit Offshore Well Services (the BP Contract).  The effective date of the contract was February 1, 2009.

42.     The BP Contract is in full force and effect, and was in full force and effect at all relevant times, including on April 20, 2010 and thereafter.

43.      Pursuant to the BP Contract, the parties agreed that BP Exploration & Production

> shall save, indemnify, release, defend and hold harmless [M-I] from and against *any claim of whatsoever nature arising from pollution and/or contamination* including without limitation such pollution or contamination from the reservoir or from the property or equipment of [BP] arising from or related to the performance of the CONTRACT.

(BP Contract Section 19.4(a)) (emphasis added).

44.     BP Exploration & Production and M-I further agreed that "notwithstanding anything contained elsewhere in the CONTRACT to the contrary," BP Exploration & Production

would "save, indemnify, release, defend and hold harmless [M-I] against all claims, losses, damages, costs (including legal costs) expenses and liabilities resulting from:

> (a) loss or damage to any well or hole (including the cost to re-drill);
>
> (b) *blowout, fire, explosion, cratering or any uncontrolled well condition (including the costs to control a wild well and the removal of debris)*;
>
> (c) damage to any reservoir, aquifer, geological formation or underground strata or the loss of oil or gas therefrom;
>
> (d) the use of radioactive sources in relation to the WORK or any contamination resulting therefrom (including retrieval and/or containment, clean up and/or containment of contamination from naturally occurring radioactive materials)."

(BP Contract Section 19.6) (emphasis added).

45.    The BP Contract (including the indemnity provisions quoted above) is a binding, valid, and enforceable contract.

46.    The injuries alleged by Claimants/Plaintiffs in the Amended B1 Master Complaint and in other complaints in which M-I has been named as a defendant, and the claims tendered to M-I in the Rule 14(c) Third-Party Complaint all "aris[e] from pollution or contamination" – namely, from pollution or contamination resulting from the oil spill at the Macondo well.

47.    In addition, the injuries alleged by Claimants/Plaintiffs in the Amended B1 Master Complaint and in other complaints in which M-I has been named as a defendant, and the claims tendered to M-I in the Rule 14(c) Third-Party Complaint "result[] from blowout, fire, explosion, cratering, or [an] uncontrolled well condition."  Specifically, the injuries were caused by the blowout of the Macondo well and the explosion of the *Deepwater Horizon*, which proximately caused the oil spill that caused the injuries complained of in the Amended B1 Master Complaint and in other complaints in which M-I has been named as a defendant, and the claims tendered to M-I in the Rule 14(c) Third-Party Complaint.

48.     Pursuant to the provisions of the BP Contract, the BP Parties are obligated to save, indemnify, release, defend, and hold harmless M-I against all claims made, and  losses or damages assessed against, M-I in any claim for economic damages of any nature, consequential damages, or punitive damages arising from the *Deepwater Horizon* explosion or the subsequent oil spill.

### COUNT II
**(Against the BP Parties for Declaratory Judgment)**

49.     The allegations in Paragraphs 1-48 are incorporated herein as if fully set forth.

50.     Pursuant to 28 U.S.C. § 2201, M-I is entitled to a declaration that, under the terms of the BP Contract (including the provisions quoted above), M-I is entitled to indemnification from the BP Parties, without limitation, for any liability that M-I may incur to any person seeking economic damages of any nature, consequential damages, or punitive damages arising from the *Deepwater Horizon* explosion or the subsequent oil spill.

51.     M-I is also entitled to a declaratory judgment that, under the terms of the BP Contract, M-I is entitled to recover all legal fees and costs that M-I incurs defending against such claims.

### COUNT III
**(Against the BP Parties for Contribution/Indemnification)**

52.     Paragraphs 1-51 are incorporated herein as if fully set forth.

53.     The BP Parties were the primary leaseholder of the Macondo well and the sole operator of the well.  The BP Parties were responsible for controlling—and  did control—the activities of M-I and other contractors on the *Deepwater Horizon*.   The BP Parties were responsible for all major decisions regarding drilling and well control at the Macondo well.

54.     In operating the Macondo well, the BP Parties failed to meet their duties and responsibilities.  The BP Parties were negligent  in at least the following ways:

(a)   Failing to exercise ordinary and reasonable care in connection with designing and executing the Macondo well;

(b)  Failing to exercise reasonable care while conducting drilling operations to ensure that a blowout did not occur;

(c)   Failing to exercise reasonable care after the blowout to prevent an oil spill from occurring;

(d)   Failing to exercise reasonable care to quickly contain the oil that spilled from the Macondo well;

(e)   Failing to exercise reasonable care to ensure that adequate safeguards, protocols, and resources would be available to respond to and mitigate the effects of an uncontrolled oil spill from the Macondo well;

(f)  Failing to properly interpret pressure tests relating to well control and integrity;

(g) Failing to adequately train employees in management of the *Deepwater Horizon*'s complex systems;

(h)  Failing to take appropriate action to avoid the release of oil into the Gulf of Mexico;

(i)  Failing to timely control the release of oil;

(j)   Failing to exercise reasonable care in designing, operating, and executing the relief and recovery efforts following the oil spill; and

(k)  Violating applicable statutes, regulations, and industry standards.

55.     The *Deepwater Horizon* explosion and the subsequent oil spill resulted from the negligence of the BP Parties as set forth above.  M-I was not negligent and was not at fault in the explosion or oil spill.

56.     As a result of the BP Parties' negligence that proximately caused or contributed to the *Deepwater Horizon* explosion and subsequent oil spill, M-I is entitled to indemnity from the BP Parties for any and all damages that may be assessed against M-I as a result of the explosion and oil spill.

57.     In the alternative, to the extent that M-I is found liable for any part of the alleged damages, M-I has a right to contribution from the BP Parties, to the extent of those parties' adjudicated proportion of liability, pursuant to general maritime law or other applicable law.

<u>COUNT IV</u>
**(Against The Anadarko Parties and the MOEX Parties for Contribution/Indemnification)**

58.     Paragraphs 1-57 are incorporated herein as if fully set forth.

59.     Cross-Defendants the Anadarko Parties were co-lessees under the terms of the lease executed on May 8, 2008 by BP, as lessee, and the United States, as lessor, for oil and gas exploration and production at the Macondo well site.  Cross-Defendant Anadarko Exploration & Production held a 22.5% interest in the lease as of April 20, 2010.  Cross-Defendant Anadarko Petroleum Corporation held a 2.5% interest in the lease as of April 20, 2010.

60.     Cross-Defendant MOEX Offshore 2007 LLC was also a co-lessee of the Macondo well, holding a 10% interest in the lease as of April 20, 2010.  Cross-Defendant MOEX USA is the parent corporation of MOEX Offshore.  Cross-Defendant Mitsui is a parent corporation and/or alter ego of MOEX USA.

61.     The BP Parties, the Anadarko Parties, and the MOEX Parties entered into a Joint Operating Agreement ("JOA").  The JOA required the BP Parties to obtain the approval of the

Anadarko Parties and the MOEX Parties in order to proceed with nondiscretionary operations in connection with the lease, including by seeking the authorization of the Anadarko Parties and the MOEX Parties for the expenditure of funds and/or by seeking their election or vote to participate in the next stage of operations.  The JOA also provided that the parties would share any oil and gas discovered in connection with the lease and any losses in amounts proportionate to each party's interest.

62.     The JOA also required BP to provide the Anadarko Parties and the MOEX Parties with detailed technical information regarding operations performed in connection with the lease. The Anadarko Parties and the MOEX Parties had the right to obtain and did obtain "real time" data as set forth in the JOA.  The Anadarko Parties and the MOEX Parties received detailed technical information regarding operations at the Macondo well, including daily reports, access to a secure web site containing sampling and other data, and access to other real time data from the *Deepwater Horizon*.

63.     The JOA provided for the prompt invoicing by the BP Parties of costs incurred under the JOA and prompt payment by the Anadarko Parties and the MOEX Parties of their agreed-upon share.  The JOA also provided the Anadarko Parties and the MOEX Parties with a mechanism to object to, prevent, control, address, and abate discharges of oil or health and safety issues.

64.     The Anadarko Parties and the MOEX Parties each designated the BP Parties as their operator and local agent, with full authority to act on their behalf in complying with the requirements of the lease and applicable regulations.

65.     The Anadarko Parties and the MOEX Parties are fully liable for the acts and omissions of their agents the BP Parties, including the negligence of the BP Parties.

66.     Furthermore, the Anadarko Parties and the MOEX Parties were negligent because they knew of, approved, and authorized the BP Parties' negligent design and operation of the well; and because they knew or should have known of the presence of hydrocarbons in the well on the night of April 20, 2010 and failed to warn the crew of the vessel of the imminent blowout.

67.     The *Deepwater Horizon* explosion and the subsequent oil spill resulted from the negligence of the Anadarko Parties and the MOEX Parties as set forth above.  M-I was not negligent and was not at fault in the explosion or oil spill.

68.     As a result of the Anadarko Parties' and the MOEX Parties' negligence that proximately caused or contributed to the *Deepwater Horizon* explosion and subsequent oil spill, M-I is entitled to indemnity from the Anadarko Parties and the MOEX Parties for any and all damages that may be assessed against M-I as a result of the explosion and oil spill.

69.     In the alternative, to the extent that M-I is found liable for any part of the alleged damages, M-I has a right to contribution from the Anadarko Parties and the MOEX Parties, to the extent of those parties' adjudicated proportion of liability, pursuant to general maritime law or other applicable law.

## COUNT V
### (Against Halliburton for Contribution/Indemnification)

70.     Paragraphs 1-69 are incorporated herein as if fully set forth.

71.     Halliburton was responsible for providing cementing services on the *Deepwater Horizon*.  These cementing services included providing technical advice about the design, placement, modeling, and testing of the cement that was in use at the Macondo well at the time of the blow-out.  Halliburton was engaged in cementing operations at the time of the blow-out. Halliburton was also responsible for mud logging personnel and equipment on the *Deepwater Horizon*, and partially responsible for monitoring mud operations on the *Deepwater Horizon*.

72.     Halliburton breached its duty of reasonable care in planning, supervising, and engaging in cementing operations on the *Deepwater Horizon*.  Among other things, Halliburton was negligent in:

(a)   Failing to properly design the cement for the conditions at the Macondo well, including designing cement that was unstable and prone to nitrogen breakout;

(b)  Adding defoamer which destabilized the foam cement slurry;

(c)  Failing to add appropriate loss control additives;

(d)  Failing to properly test the cement slurry design;

(e)  Pouring cement that was unstable and that Halliburton knew or had reason to believe was unstable;

(f)  Failing to properly evaluate the effectiveness of its cement job;

(g)  Failing to provide personnel who were competent and adequately trained;

(h)  Failing to properly monitor the status of the well, including by abandoning its station at a critical time during the capping of the well;

(i)  Missing or ignoring data indicators and alarms that indicated the well was flowing; and

(j)  Failing to take appropriate steps to ensure that its conduct did not lead to blowout, explosion, or uncontrolled well condition.

73.     As a result of Halliburton's negligence that proximately caused or contributed to the *Deepwater Horizon* explosion and subsequent oil spill, M-I is entitled to indemnity from Halliburton for any and all damages that may be assessed against M-I as a result of the explosion and oil spill.

74.     In the alternative, to the extent that M-I is found liable for any part of the alleged damages, M-I has a right to contribution from Halliburton, to the extent of its adjudicated proportion of liability, pursuant to general maritime law or other applicable law.

<u>COUNT VI</u>
**(Against Cameron for Contribution/Indemnification)**

75.     Paragraphs 1-74 are incorporated herein as if fully set forth.

76.     Cameron manufactured, designed, supplied, and installed the *Deepwater Horizon*'s blow-out preventer (BOP).  Cameron contracted with Transocean Deepwater Drilling for the provision of the BOP that was installed at the Macondo wellhead.

77.     Cameron breached its duty of reasonable care in connection with the design, manufacture, and supply of the BOP, and this negligence caused the blow-out and the subsequent oil spill.  M-I was not negligent and was not at fault in the explosion or oil spill.

78.     Cameron failed to ensure that the BOP was suitable for use at the Macondo wellhead; failed to provide adequate warnings, instructions, and guidelines regarding use of the BOP; and failed to design the BOP to function as it was intended to do.  As a result, the BOP was defective and unreasonably dangerous when supplied.

79.     As a result of Cameron's negligence that proximately caused or contributed to the *Deepwater Horizon* explosion and subsequent oil spill, M-I is entitled to indemnity from Cameron for any and all damages that may be assessed against M-I as a result of the explosion and oil spill.

80.     In the alternative, to the extent that M-I is found liable for any part of the alleged damages, M-I has a right to contribution from Cameron, to the extent of its adjudicated proportion of liability, pursuant to general maritime law or other applicable law.

## COUNT VII
### (Against the Weatherford Parties for Contribution/Indemnification)

81.     Paragraphs 1-80 are incorporated herein as if fully set forth.

82.     The Weatherford Parties designed, manufactured, marketed, and distributed the casing components (such as the float collar, shoe, and centralizers), and provided the personnel and equipment for running these components into the well bore.

83.     The Weatherford Parties breached their duty of reasonable care in connection with the design and manufacture of the float collar, and this negligence caused the blow-out and the subsequent oil spill.  As a result, the float collar failed to seal the well properly, which allowed hydrocarbons to back-flow into the casing.  The float collar was defective and unreasonably dangerous as supplied because it failed to operate as intended.  M-I was not negligent and was not at fault in the explosion or oil spill.

84.     As a result of the Weatherford Parties' negligence that proximately caused or contributed to the *Deepwater Horizon* explosion and subsequent oil spill, M-I is entitled to indemnity from the Weatherford Parties for any and all damages that may be assessed against M-I as a result of the explosion and oil spill.

85.     In the alternative, to the extent that M-I is found liable for any part of the alleged damages, M-I has a right to contribution from the Weatherford Parties, to the extent of its adjudicated proportion of liability, pursuant to general maritime law or other applicable law.

## COUNT VIII
### (Against Dril-Quip for Contribution/Indemnification)

86.     Paragraphs 1-85 are incorporated herein as if fully set forth.

87.     Dril-Quip was involved in providing wellhead systems to the *Deepwater Horizon* at the Macondo well.

88. Dril-Quip breached its duty of reasonable care while participating in drilling operations at the Macondo well. The wellhead systems Dril-Quip provided failed to operate, were improperly designed, and/or were defective and unreasonably dangerous as supplied because they failed to operate as intended. M-I was not negligent and was not at fault in the explosion or oil spill.

89. As a result of Dril-Quip's negligence that proximately caused or contributed to the *Deepwater Horizon* explosion and subsequent oil spill, M-I is entitled to indemnity from Dril-Quip for any and all damages that may be assessed against M-I as a result of the explosion and oil spill.

90. In the alternative, to the extent that M-I is found liable for any part of the alleged damages, M-I has a right to contribution from Dril-Quip, to the extent of its adjudicated proportion of liability, pursuant to general maritime law or other applicable law.

**COUNT IX**
**(Against The Transocean Parties for Contribution/Indemnification)[2]**

91. Paragraphs 1-90 are incorporated herein as if fully set forth.

92. The Transocean Parties were at all material times the Owners, Managing Owners, Owners Pro Hac Vice, and/or Operators of the *Deepwater Horizon*.

93. When the *Deepwater Horizon* explosion occurred on April 20, 2010, the Transocean Parties were the owners and/or operators of the rig. In addition to providing the *Deepwater Horizon* itself, the Transocean Parties also conducted, participated in, supervised, and/or oversaw drilling activities, made or participated in critical decisions regarding same, and

---

[2] M-I filed a cross-claim against the Transocean Parties in the Limitation Action only on April 20, 2011, pursuant to the Stipulated Order of March 24, 2011. In an abundance of caution, M-I files its cross-claim against the Transocean Parties here to make it applicable to the other complaints and pleadings in MDL 2179.

had personnel and equipment on the *Deepwater Horizon*, and were otherwise directly involved in the *Deepwater Horizon*'s drilling operations at the Macondo well.

94.     The Transocean Parties breached their duty of reasonable care in conducting, participating in, supervising, and overseeing drilling operations on the *Deepwater Horizon*.   The Transocean Parties failed to take reasonable steps to ensure that the drilling operations conducted on April 20, 2010 were done in a reasonably safe manner, and failed to mitigate the risk of blowout and oil spill that led to Plaintiffs/Claimants' alleged damages.  The Transocean Parties' negligence caused, in whole or in part, the blowout and the subsequent oil spill.

95.     The Transocean Parties breached their duty to at all times maintain the *Deepwater Horizon* in a seaworthy condition.   The unseaworthy condition of the *Deepwater Horizon* caused, in whole or in part, the blowout and subsequent oil spill.

96.     M-I denies that it is liable for any damages alleged by Plaintiffs/Claimants in the Amended B1 Master Complaint, for any damages alleged in the Rule 14(c) Third Party Complaint, for any damages alleged in applicable Bundle A and C complaints, and for any and all other claims for damages against M-I arising out of or associated with the *Deepwater Horizon* explosion and/or the resulting oil spill.

97.     The alleged damages were caused, in whole or in part, by the conduct of the Transocean Parties, as alleged above.  As such, the Transocean Parties are or may be liable for all or part of the claims asserted against M-I, and M-I is entitled to indemnity from the Transocean Parties for any and all damages that may be assessed against M-I as a result of the explosion and oil spill.

98.     In the alternative, to the extent that M-I is found liable for any part of the alleged damages, M-I has a right to contribution from the Transocean Parties, to the extent of their adjudicated proportion of liability, pursuant to general maritime law or other applicable law.

### COUNT X
### (Against The Responder Parties for Contribution/Indemnification)

99.     Paragraphs 1-96 are incorporated herein as if fully set forth.

100.    The Responder Parties participated in the remediation and response efforts that followed the blowout of the Macondo well.   Cross-Defendant NALCO manufactured the chemical dispersants that were used by the BP Parties in the clean-up and containment efforts that followed the blowout.

101.    The Responder Parties breached their duty of reasonable care in performing their duties following the Macondo well blowout.  The Responder Parties failed to exercise reasonable care, including but not limited to their conduct in designing, implementing, and executing the response and recovery efforts; failed to equip and protect against the harmful effects of crude oil, chemical dispersants, and other hazardous substances used or encountered in connection with the response efforts; failed to warn of the harmful effects of crude oil, chemical dispersants, and other hazardous substances used or encountered in connection with the response efforts; and failed to abide by the provisions of the National Contingency Plan and the regulatory standards set forth in the Clean Water Act and the Oil Pollution Act.  M-I was not negligent and was not at fault in the explosion or oil spill.

102.    As a result of the Responder Parties' negligence that proximately caused or contributed to the *Deepwater Horizon* explosion and subsequent oil spill, M-I is entitled to indemnity from the Responder Parties for any and all damages that may be assessed against M-I as a result of the explosion and oil spill.

103.    In the alternative, to the extent that M-I is found liable for any part of the alleged damages, M-I has a right to contribution from the Responder Parties, to the extent of their adjudicated proportion of liability, pursuant to general maritime law or other applicable law.

### PRAYER FOR RELIEF

WHEREFORE, M-I LLC requests that Plaintiffs/Claimants take nothing by reason of their pleadings and/or that M-I be entitled to indemnity and/or contribution from the Cross-Defendants identified herein as to the claims of Plaintiffs/Claimants, and for all other relief as may be just and proper.

May 24, 2011                                    Respectfully submitted,

                                               MORGAN, LEWIS & BOCKIUS LLP

**OF COUNSEL:**
MORGAN, LEWIS & BOCKIUS LLP            By: */s/ Hugh E. Tanner*

Derek E. Leon                                 Hugh E. Tanner
dleon@morganlewis.com                         htanner@morganlewis.com
Texas Bar No. 24002463                        Texas Bar No. 19637400
5300 Wachovia Financial Center                1000 Louisiana, Suite 4000
200 South Biscayne Boulevard                  Houston, Texas  77002
Miami, Florida  33131                         Telephone:    (713) 890-5000
Telephone:    (305) 415-3000                  Facsimile:    (713) 890-5001
Facsimile:    (305) 415-3001

Denise Scofield                               **ATTORNEYS FOR DEFENDANT**
dscofield@morganlewis.com                     **M-I L.L.C.**
Texas Bar No. 00784934
1000 Louisiana, Suite 4000
Houston, Texas  77002
Telephone:    (713) 890-5000
Facsimile:    (713) 890-5001

**ATTORNEYS FOR DEFENDANT**
**M-I L.L.C.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing Defendant M-I L.L.C.'s First Amended Cross-Claims has been served on all Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the Court's CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL No. 2179, on this 24th day of May, 2011.

 /s/ *Hugh E. Tanner*
Hugh E. Tanner

DB1/67292086.11