

37329610

Apr 29 2011
11:37PM

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig | * | MDL No. 2179 |
| "Deepwater Horizon" in the Gulf | * | |
| Of Mexico, on April 20, 2010 | * | SECTION: J |
| | * | |
| Applies to: *All Cases.* | * | JUDGE BARBIER |
| | * | MAGISTRATE SHUSHAN |
| * * * * * * * * * * * * * * * * | * | |

**DEFENDANT CAMERON INTERNATIONAL CORPORATION'S FIRST SET
OF INTERROGATORIES AND REQUESTS FOR PRODUCTION TO
DEFENDANTS BP EXPLORATION & PRODUCTION, INC.,
BP AMERICA INC., BP AMERICA PRODUCTION COMPANY,
BP EXPLORATION AND PRODUCTION INC., AND BP P.L.C.**

TO:   Defendants BP Exploration & Production, Inc., BP America Inc., BP America Production Company, BP Exploration and Production Inc., and BP P.L.C., through their Counsel

Defendant Cameron International Corporation ("Cameron") requests that Defendants BP Exploration & Production, Inc., BP America Inc. BP America Production Company, BP Exploration and Production Inc., and BP P.L.C. (collectively, "BP") respond to Cameron's first set of interrogatories and requests for production and produce for inspection and copying the documents and tangible things requested.  BP shall file written responses to this request thirty (30) days after the date of service.  BP shall provide the requested documents for inspection and copying at the law offices of Beck, Redden & Secrest, 1221 McKinney, Suite 4500, Houston, Texas 77010.

Respectfully submitted,

*/s/ David J. Beck* _____

| | |
|---|---|
| David J. Beck, T.A. | Phillip A. Wittmann, 13625 |
| *dbeck@brsfirm.com* | *pwittmann@stonepigman.com* |
| Joe W. Redden, Jr. | Carmelite S. Bertaut, 3054 |
| *jredden@brsfirm.com* | *cbertaut@stonepigman.com* |
| David W. Jones | Keith B. Hall, 24444 |
| *djones@brsfirm.com* | *khall@stonepigman.com* |
| Geoffrey Gannaway | Jared Davidson, 32419 |
| *ggannaway@brsfirm.com* | *jdavidson@stonepigman.com* |
| BECK, REDDEN & SECREST, L.L.P. | STONE PIGMAN WALTHER |
| One Houston Center | WITTMANN L.L.C. |
| 1221 McKinney St., Suite 4500 | 456 Carondelet Street |
| Houston, TX 77010 | New Orleans, Louisiana  70130 |
| Phone: (713) 951-3700 | Phone: (504) 581-3200 |
| Fax: (713) 951-3720 | Fax: (504) 581-3361 |

*Attorneys for Cameron International Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing document has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, on this 29th day of April, 2011.

*/s/ David J. Beck* _____

## Definitions

1.   "You," "your," or "BP" shall mean, unless otherwise specified in a particular request, without limitation, BP Exploration and Production, Inc., BP America, Inc., BP America Production Company, and BP, P.L.C. (or any of them), including those entities' predecessors (including Vastar), successors, subsidiaries, departments, divisions, attorneys, accountants, and current and former directors, officers, employees, agents, representatives, and persons acting on those entities' behalf.

2.   "Transocean" shall mean, unless otherwise specified in a particular request, without limitation, Triton Asset Leasing GMBH, Transocean Holdings LLC, Transocean Offshore Deepwater Drilling Inc., and Transocean Deepwater Inc. (or any of them), including those entities' predecessors (including R&B Falcon), successors, subsidiaries, departments, divisions, attorneys, accountants, and current and former directors, officers, employees, agents, representatives, and persons acting on those entities' behalf.

3.   "Anadarko" shall mean, unless otherwise specified in a particular request, without limitation, Anadarko Petroleum Corporation and Anadarko E&P Company LP (or either of them), including those entities' predecessors, successors, subsidiaries, departments, divisions, attorneys, accountants, and current and former directors, officers, employees, agents, representatives, and persons acting on those entities' behalf.

4.   "MOEX" shall mean, unless otherwise specified in a particular request, without limitation, MOEX Offshore 2007 LLC and MOEX USA Corporation (or either of them), including those entities' predecessors, successors, subsidiaries, departments, divisions, attorneys, accountants, and current and former directors, officers, employees, agents, representatives, and persons acting on those entities' behalf.

5.   "Cameron" shall mean, unless otherwise specified in a particular request, without limitation, Cameron International Corporation, including its predecessors, successors, subsidiaries, departments, divisions, attorneys, accountants, and current and former directors, officers, employees, agents, representatives, and persons acting on those entities' behalf.

## FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION

## INTERROGATORY NO. 1:

Please describe the "conditions present during the April 20 incident," as that phrase is used in your pleadings.  (*see* BP's Cross-Claim Against Cameron International Corp., ¶¶ 57-58)

## RESPONSE:

**INTERROGATORY NO. 2:**

Please describe the "conditions present during . . . subsequent spill response efforts," as that phrase is used in your pleadings.  (*see* BP's Cross-Claim Against Cameron International Corp., ¶¶ 57-58)

**RESPONSE:**


**INTERROGATORY NO. 3:**

Please identify (by manufacturer and description of product or component) the "alternative designs" that you allege existed at the time the *Deepwater Horizon* BOP left Cameron's control, and that did not have the design "flaws" you allege the *Deepwater Horizon* BOP had.  (*see* BP's Cross-Claim Against Cameron International Corp., ¶ 56)

**RESPONSE:**


**INTERROGATORY NO. 4:**

Please identify (by manufacturer and description of product or component) the "alternative designs" that you allege existed at the time the *Deepwater Horizon* BOP left Cameron's control, and that "would have allowed for the blind shear rams, as well as the annulars and other ram-type preventers, to seal the Macondo well under the conditions present during the April 20 incident or during subsequent spill response efforts."  (*see* BP's Cross-Claim Against Cameron International Corp., ¶ 58)

**RESPONSE:**


**INTERROGATORY NO. 5:**

Please identify (by manufacturer and description of product or component) the "alternative designs" that you allege existed at the time the *Deepwater Horizon* BOP left Cameron's control, and that "were not vulnerable to single points of failure or contained solenoid valves, or functionally alternative equipment, that were not as prone to malfunction."  (*see* BP's Cross-Claim Against Cameron International Corp., ¶ 60)

**RESPONSE:**


**INTERROGATORY NO. 6:**

Please identify (by manufacturer and description of product or component) the "alternative designs" that you allege existed at the time the *Deepwater Horizon* BOP left Cameron's control, and that "did not rely on the use of batteries to function the AMF deadman system."  (*see* BP's Cross-Claim Against Cameron International Corp., ¶ 62)

**RESPONSE:**

**INTERROGATORY NO. 7:**

Please identify (by manufacturer and description of product or component) the "alternative designs" that you allege existed at the time the *Deepwater Horizon* BOP left Cameron's control, and that "included a warning system if the AMF deadman system or other emergency system would not operate as expected." (*see* BP's Cross-Claim Against Cameron International Corp., ¶ 64)

**RESPONSE:**


**INTERROGATORY NO. 8:**

For each of the "alternative designs" identified in response to Interrogatories # 3-7, please identify (by name of rig, owner of the equipment constituting an "alternative design," and date on which the "alternative design" was incorporated into the BOP) each subsea BOP used to drill any well on a prospect for which BP was a lessee that incorporated that "alternative design."

**RESPONSE:**


**INTERROGATORY NO. 9:**

For each of the "alternative designs" identified in response to Interrogatories # 3-7, please identify (by name of rig, owner of the equipment constituting an "alternative design," and date on which the "alternative design" was incorporated into the BOP) each subsea BOP used to drill any well on a prospect for which BP that did not incorporate that "alternative design."

**RESPONSE:**


**INTERROGATORY NO. 10 AND REQUEST FOR PRODUCTION NO. 1:**

For each of the "alternative designs" identified in response to Interrogatories # 3-7, please explain what efforts you undertook to have those alternative designs incorporated into the *Deepwater Horizon* BOP. If no such efforts were undertaken, please explain why. Please produce and identify by Bates number all documents referring or relating to those efforts.

**RESPONSE:**

**INTERROGATORY NO. 11 AND REQUEST FOR PRODUCTION NO. 2:**

For each of the "alternative designs" identified in response to Interrogatories # 3-7, please explain what communications you had with any person or entity regarding the possibility of having those alternative designs incorporated into the *Deepwater Horizon* BOP. If no such communications took place, please explain why. Please produce and identify by Bates number all documents referring or relating to those communications.

**RESPONSE:**

**INTERROGATORY NO. 12:**

For each of the "alternative designs" identified in response to Interrogatories # 3-7, please describe in detail the specific alleged features, benefits, advantages, or superior mechanism of operation or functioning present in the alternatively designed system, part or component and that you allege is lacking in Cameron's design.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 3:**

For each of the "alternative designs" identified in response to Interrogatories # 3-7, please produce all documents referring or relating to the system, part, or component that you have identified as an "alternative design."

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 4:**

For each of the "alternative designs" identified in response to Interrogatories # 3-7, please produce all documents referring or relating to any comparison of the system, part, or component that you have identified as an "alternative design" to a Cameron product or component or describing why the alleged alternative design is superior to the design of Cameron's equipment.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 5:**

For each of the "alternative designs" identified in response to Interrogatories # 3-7, please produce all documents referring or relating to any benefits, detriments, advantages, disadvantages, or flaws relating to the system, part, or component that you have identified as an "alternative design."

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 6:**

For each of the "alternative designs" identified in response to Interrogatories # 3-7, please produce all documents referring or relating to any alternative design or any attributes of any alternative design that you reference in your allegations (*i.e.*, "would have allowed for the blind shear rams, as well as the annulars and other ram-type preventers, to seal the Macondo well under the conditions present during the April 20 incident or during subsequent spill response efforts," ¶ 58, "were not vulnerable to single points of failure or contained solenoid valves, or functionally alternative equipment, that were not as prone to malfunction", ¶ 60, "did not rely on the use of batteries to function the AMF deadman system," ¶ 62, "included a warning system if the AMF deadman system or other emergency system would not operate as expected," ¶ 64).

**RESPONSE:**

**INTERROGATORY NO. 13:**

For each of the "alternative designs" identified in response to Interrogatories # 3-7, please identify the date on which you first became aware of the existence of the alternative design.

**RESPONSE:**

**INTERROGATORY NO. 14:**

For each attribute of the alternative designs that you reference in your allegations (*i.e.*, "would have allowed for the blind shear rams, as well as the annulars and other ram-type preventers, to seal the Macondo well under the conditions present during the April 20 incident or during subsequent spill response efforts," ¶ 58, "were not vulnerable to single points of failure or contained solenoid valves, or functionally alternative equipment, that were not as prone to malfunction", ¶ 60, "did not rely on the use of batteries to function the AMF deadman system," ¶ 62, "included a warning system if the AMF deadman system or other emergency system would not operate as expected," ¶ 64), please identify the date on which you first became aware of the existence of the attribute in an alternative design.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 7:**

For each of the "alternative designs" identified in response to Interrogatories # 3-7, please produce all documents (including quotes, sales orders, purchase orders, invoices, contracts) showing that BP or any person or entity owning a rig that was used to drill any well on a prospect for which BP was a lessee considered acquiring or did acquire a BOP containing any alternative design that you reference in your allegations (*i.e.*, "would have allowed for the blind shear rams, as well as the annulars and other ram-type preventers, to seal the Macondo well under the conditions present during the April 20 incident or during subsequent spill response efforts," ¶ 58, "were not vulnerable to single points of failure or contained solenoid valves, or functionally alternative equipment, that were not as prone to malfunction", ¶ 60, "did not rely on the use of batteries to function the AMF deadman system," ¶ 62, "included a warning system if the AMF deadman system or other emergency system would not operate as expected," ¶ 64).

**RESPONSE:**

**INTERROGATORY NO. 15:**

Please identify the serial numbers and part numbers associated with the elastomers (specifically, VBR packers, blade packers, side packers, top seals, and annular packers) installed on the DWH BOP on April 20, 2010, the date on which each elastomer was last changed on the DWH BOP, and the purchase orders pursuant to which they were purchased.

**RESPONSE:**

**INTERROGATORY NO. 16 AND REQUEST FOR PRODUCTION NO. 8:**

Please identify the serial numbers and part numbers for the pods and SEMs that were subsea on the DWH BOP on April 20, 2010, and identify the last date on which those SEMs were inspected, serviced, maintained, repaired, or re-certified.  Please produce and identify by Bates number all documentation from which this answer was or could be derived.

**RESPONSE:**

**INTERROGATORY NO. 17 AND REQUEST FOR PRODUCTION NO. 9:**

Please identify the serial numbers and part numbers for the DWH spare pod and SEM that was not subsea on the DWH BOP on April 20, 2010, and identify the last date on which those SEMs were inspected, serviced, maintained, repaired, or re-certified.  Please produce and identify by Bates number all documentation from which this answer was or could be derived.

**RESPONSE:**

**INTERROGATORY NO. 18 AND REQUEST FOR PRODUCTION NO. 10:**

Please identify the serial numbers and part numbers for the BOP rams and annulars that were subsea on the DWH BOP on April 20, 2010, and identify from whom those components were purchased or acquired, the type of ram or annular, the date on which they were purchased or acquired, and the last date on which those components were inspected, serviced, maintained, repaired, or re-certified.  Please produce and identify by Bates number all documentation from which this answer was or could be derived.

**RESPONSE:**

**INTERROGATORY NO. 19 AND REQUEST FOR PRODUCTION NO. 11:**

Please identify the serial numbers and part numbers for any spare BOP rams and annulars that were on the DWH rig (but not deployed subsea) on April 20, 2010, and identify from whom those components were purchased or acquired, the type of ram or annular, the date on which they were purchased or acquired, and the last date on which those components were inspected, serviced, maintained, repaired, or re-certified.  Please produce and identify by Bates number all documentation from which this answer was or could be derived.

**RESPONSE:**

**INTERROGATORY NO. 20 AND REQUEST FOR PRODUCTION NO. 12:**

Please identify (by date, type of ram, and source of rams) every occasion on which rams were rented or borrowed for use on the DWH BOP.   For reference, a document produced by BP references a plan to "Change out Upper and Middle VBR'S with RENTAL VBR'S."  (*see* BP-HZN-MBI00252000).  Please produce and identify by Bates number all documentation relating to any such renting or borrowing of rams used on the DWH BOP.

**RESPONSE:**

**INTERROGATORY NO. 21 AND REQUEST FOR PRODUCTION NO. 13:**

Please identify any person(s) or entit(y/ies) that maintained or replaced the solenoid, pie connector, and/or e-connector on valve 103 of the DWH BOP's yellow pod, as well as the dates on which the maintenance or replacement occurred.  Please produce and identify by Bates number all documentation relating to this maintenance or replacement.

**RESPONSE:**

## INTERROGATORY NO. 22 AND REQUEST FOR PRODUCTION NO. 14:

Please identify any person(s) or entit(y/ies) that maintained or replaced the deadman batteries on the DWH BOP's blue pod, yellow pod, and spare pod, as well as the dates on which the maintenance or replacement occurred.  Please produce and identify by Bates number all documentation relating to this maintenance or replacement.

**RESPONSE:**

## INTERROGATORY NO. 23 AND REQUEST FOR PRODUCTION NO. 15:

Please identify any person(s) or entit(y/ies) that maintained or replaced the annular preventers on the DWH BOP, as well as the dates on which the maintenance or replacement occurred.  Please produce and identify by Bates number all documentations relating to this maintenance or replacement.

**RESPONSE:**

## INTERROGATORY NO. 24 AND REQUEST FOR PRODUCTION NO. 16:

Please identify any person(s) or entit(y/ies) that maintained or replaced the SBR rams on the DWH BOP, as well as the dates on which the maintenance or replacement occurred.  Please produce and identify by Bates number all documentation relating to this maintenance or replacement.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 17:**

Please produce records (including but not limited to quotations, sales orders, service orders, e-mail communications, invoices, and quotations) relating to products supplied and services performed on equipment, parts, and components on the DWH BOP by the company known as "D&D" or "D&D Tech Systems." For reference, "D&D" appears in Transocean DAR maintenance records, including, for example, BP-HZN-2179MDL00331805, at page 00331978, and TRN-HCEC-00036428, at page 00036437.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 18:**

Please produce records (including but not limited to quotations, sales orders, service orders, e-mail communications, invoices, and quotations) relating to products supplied and services performed on equipment, parts, and components on the DWH BOP by the company known as "SeaCon" or "Sea Connectors." For reference, "SEACON" appears in Transocean RMS records, including, for example, TRN-HCEC-00032579, at page 00032614.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 19:**

Please produce any contractual documents governing the products or services provided by SeaCon or D&D related to the DWH.

**RESPONSE:**

**INTERROGATORY NO. 25 AND REQUEST FOR PRODUCTION NO. 20:**

Please identify (by name of tester and approximate date of testing) all testing (of which you are aware) by any person or entity in which BOP rams were used to shear or attempt to shear buckled tubular or tubular that was intentionally placed in a position other than in the center of the BOP rams. Please produce and identify by Bates number all documents referring or relating to the testing.

**RESPONSE:**

**INTERROGATORY NO. 26 AND REQUEST FOR PRODUCTION NO. 21:**

383.00060./479685.v1

12

Please identify (by name of tester and approximate date of request) each occasion on which you have requested that any person or entity conduct testing to use BOP rams to shear or attempt to shear buckled tubular or tubular that was intentionally placed in a position other than in the center of the BOP rams.  Please produce and identify by Bates number all documents referring or relating to the requests for such testing.

**RESPONSE:**

**INTERROGATORY NO. 27 AND REQUEST FOR PRODUCTION NO. 22:**

Please identify (by name of tester and approximate date of testing) all testing (of which you are aware) by any person or entity in which BOP rams were tested under conditions intended to simulate flowing conditions.  Please produce and identify by Bates number all documents referring or relating to the testing.

**RESPONSE:**

**INTERROGATORY NO. 28 AND REQUEST FOR PRODUCTION NO. 23:**

Please identify (by name of tester and approximate date of request) each occasion on which you have requested that any person or entity conduct testing of BOP rams under conditions intended to simulate flowing conditions.  Please produce and identify by Bates number all documents referring or relating to the requests for such testing.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 24:**

Please produce documents and communications mentioning, discussing, or relating to:

- o  Shearing with BOP rams of buckled or off-center drillpipe

- o  Sealing with blind shear rams under conditions involving buckled or off-center drillpipe

- o  Shearing with BOP rams while a well is flowing

- o  Sealing with BOP rams while a well is flowing

- o  The need to change batteries for deadman systems

- o  Rechargeable batteries for deadman systems

- o  Monitoring subsea deadman system battery status from the rig

- o   Monitoring subsea ram position from the rig

- o   Monitoring subsea shearing or sealing success from the rig

- o   Testing BOP ram shearing capabilities under dynamic flow conditions

- o   Testing BOP ram sealing capabilities under dynamic flow conditions

- o   Centering capabilities of blind shear rams

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 25:**

Please produce documents referring or relating to design, manufacture, configuration, or commissioning of the DWH BOP stack, components, systems, or software during the period from 1999-2001.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 26:**

Please produce documents referring or relating to negotiations regarding the contractual terms pursuant to which Transocean or R&B Falcon would purchase from Cameron the DWH BOP stack, components, systems, or software.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 27:**

Please produce communications and documents (including but not limited to internal e-mails, quotations from Cameron and other vendors, and presentations) regarding upgrading, modifying, or replacing any portion of the control system on the DWH BOP.  For reference, documents produced by Transocean reference a "Cameron control system upgrade" (*see* TRN-MDL-00401409, at page 00401412), and a "quote on upgrading the control system" (*see* TRN-MDL-00311004).

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 28:**

Please produce communications and documents (including but not limited to internal e-mails, quotations from Cameron and other vendors, and presentations) regarding upgrading, modifying, or replacing any ram of the DWH BOP.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 29:**

Please produce communications and documents (including but not limited to internal e-mails, quotations from Cameron and other vendors, and presentations) regarding upgrading, modifying, or replacing any part or component of the DWH BOP.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 30:**

Please produce communications and documents relating or referring to planned maintenance or deferred maintenance of any part or component of the DWH BOP.  This request includes but is not limited to agreements between Transocean and BP regarding deferring maintenance or replacement of any part or component of the DWH BOP.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 31:**

Please produce communications and documents (including but not limited to internal e-mails, quotations from Cameron and other vendors, and presentations) referencing the possibility of using rechargeable deadman batteries on the DWH BOP.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 32:**

Please produce communications and documents (including but not limited to internal e-mails, quotations from Cameron and other vendors, and presentations) referencing the possibility of monitoring from the rig the charge of subsea deadman batteries on the DWH BOP.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 33:**

Please produce communications and documents (including but not limited to internal e-mails, quotations from Cameron and other vendors, and presentations) referencing the possibility of monitoring from the rig whether subsea rams or annulars on the DWH BOP are open or closed.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 34:**

Please produce communications and documents (including but not limited to internal e-mails, quotations from Cameron and other vendors, and presentations) referencing the possibility of monitoring from the rig the position of pipe, tools, or other materials in the bore of the DWH BOP.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 35:**

Please produce communications and documents (including but not limited to internal e-mails, quotations from Cameron and other vendors, and presentations) referencing the possibility of monitoring from the DWH rig whether tubular had been successfully sheared by the rams.

**RESPONSE:**


**INTERROGATORY NO. 29:**

Please identify all subsea BOPs that has been used to drill any well on a prospect for which you are/were a lessee, specifying for each BOP: the name of the rig, the date the rig was placed in service, the manufacturer of the BOP controls, the manufacturer and model of the shearing blind ram(s), the number of shearing blind rams, whether the batteries on the deadman system are rechargeable, whether it is possible to monitor subsea deadman system battery status from the rig, whether it is possible to monitor subsea ram position from the rig, and whether it is possible to monitor subsea shearing or sealing success from the rig.

**RESPONSE:**

**INTERROGATORY NO. 30 AND REQUEST FOR PRODUCTION NO. 36:**

Please produce and identify by Bates number all documents referring or relating to any basis for an expectation that the DWH BOP was intended to or would be capable of sealing a well under the "conditions present during the April 20 incident," as that phrase is used in your pleadings.  (see BP's Cross-Claim Against Cameron International Corp., ¶¶ 57-58)

**RESPONSE:**

**INTERROGATORY NO. 31 AND REQUEST FOR PRODUCTION NO. 37:**

Please produce and identify by Bates number all documents referring or relating to any basis for an expectation that the DWH blind shear ram "was supposed to be capable of sealing the well regardless of the presence or absence of drillpipe in the well," as that phrase is used in your pleadings.  (see BP's Cross-Claim Against Cameron International Corp., ¶ 28)

**RESPONSE:**

**INTERROGATORY NO. 32 AND REQUEST FOR PRODUCTION NO. 38:**

Please produce and identify by Bates number all documents referring or relating to any allegedly negligent maintenance on the DWH BOP performed by Cameron (see BP's Cross-Claim Against Cameron International Corp., ¶¶ 71-75)

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 39:**

Please produce all records relating to maintenance performed and/or modifications conducted on any part or component of the DWH BOP, from 2001 forward, including but not limited to records of maintenance performed on and/or modifications conducted on any part or component of the DWH BOP equipment in 2009 and 2010.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 40:**

Please produce all records relating to 7-day function tests and 14-day pressure tests conducted on any part or component of the DWH BOP.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 41:**

Please produce all records, including but not limited to permitting materials, that constitute or relate to reports to or communications with MMS or BOEM concerning the manner of or results from tests conducted on any part or component of the DWH BOP; the performance of any part or component of the DWH BOP; and/or the maintenance of or modifications to any part or component of the DWH BOP.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 42:**

Please produce all records constituting or relating to OEM and/or API certifications obtained with respect to any part or component of the DWH BOP.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 43:**

Please produce all records of communications between BP, Transocean, and/or Anadarko/MOEX relating to any part or component of the DWH BOP, and its maintenance and/or modification.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 44:**

Please produce all records of communications between BP, Transocean, and/or Anadarko/MOEX relating to responsibility for the performance of any part or component of the DWH BOP (see, e.g., BP-HZN-MBI00254566, BP-HZN-MBI00254569).

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 45:**

Please produce all records, including but not limited to work orders and communications, between or among one or more of BP, Transocean, Anadarko/MOEX, and Cameron relating to any part or component of the DWH BOP, and its maintenance and/or modification.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 46:**

Please produce all records constituting or relating to audits, surveys, or studies conducted by BP, Transocean, and/or Anadarko/MOEX, or performed at one or more of their requests, that refer to any part or component of the DWH BOP.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 47:**

Please produce all records concerning findings in such audits, surveys, or studies relating to any part or component of the DWH BOP, including but not limited to communications and documents shared between any of BP, Transocean, and/or Anadarko/MOEX concerning such findings.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 48:**

Please produce all specifications provided to Cameron relating to the design, manufacture, and/or assembly of any part or component of the DWH BOP.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 49:**

Please produce all records, including but not limited to contracts and communications, transmitted between any of BP, Transocean, and/or Anadarko/MOEX and Cameron relating to the purchase, manufacture, and/or assembly of any part or component of the DWH BOP.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 50:**

Please produce all communications between any of BP, Transocean, and/or Anadarko/MOEX concerning the manufacture and assembly of the any part or component of the DWH BOP.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 51:**

Please produce complete copies of each version of the BP Drilling and Well Operations Practice (DWOP) in effect on any date from 1999 through April 2010.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 52:**

Please produce complete copies of each version of the Transocean Deepwater Horizon Emergency Response Manual, Transocean Field Operations Manual, Transocean Performance and Operations Policies and Procedures, Transocean Health and Safety Policies and Procedures Manual, and Transocean Well Control Handbook in effect on any date from 2001 through April 2010.

**RESPONSE:**

**INTERROGATORY NO. 33:**

With respect to your allegations in the in your Cross-Claim Against Cameron that the DWH BOP was flawed in design and alternative designs existed that did not have these flaws, please identify:

(a) the precise nature of each and every alleged flaw, including without limitation each and every flaw in design, manufacturing, or testing;

(b) how each flaw resulted in the injuries to BP;

(c) all facts upon which you base said allegations;

(d) the name and address of each and every person who has information or knowledge concerning such facts and claimed flaws;

(e) all documents that support or relate to said allegations;

(f) how the BOP could have feasibly been designed, manufactured, or tested to eliminate each alleged flaw;

(g) all patents relating to such alternate designs; and

(h) all documents describing or referring to such alternate designs.

**RESPONSE:**

**INTERROGATORY NO. 34:**

With respect to Count II of your Cross-Claim Against Cameron, alleging that Cameron was negligent in maintaining the DWH BOP, please identify:

(a)  Any and all maintenance activity performed by Cameron on the BOP;

(b)  Each and every maintenance activity that you allege amounted to a breach of an alleged duty by Cameron's duty to exercise reasonable care;

(c)  How specifically each maintenance activity was improperly performed or otherwise fell below the standard of reasonable care;

(d)  all facts upon which you base said allegations;

(e)  the name and address of each and every person who has information or knowledge concerning such maintenance activities;

(f)  all documents that support or relate to said allegations;

(g)  all documents describing or referring to such maintenance activities.

**RESPONSE:**

**INTERROGATORY NO. 35:**

With respect to Count III of your Cross-Claim Against Cameron, alleging that Cameron was negligent in modifying the DWH BOP, please identify:

(a)  Any and all modifications made by Cameron to the BOP;

(b)  Each and every modification that you allege amounted to a breach of an alleged duty by Cameron's duty to exercise reasonable care;

(c)  How specifically each modification was improperly performed or otherwise fell below the standard of reasonable care;

(d)  all facts upon which you base said allegations;

(e)  the name and address of each and every person who has information or knowledge concerning such modifications activities;

(f)  all documents that support or relate to said allegations;

(g)  all documents describing or referring to such modifications.

**RESPONSE:**

**INTERROGATORY NO. 36:**

Was any oral or written complaint made by you or any other owner or user of the DWH BOP either before or after the DWH Accident about a flaw in design or defect, modification or maintenance activity, including but not necessarily limited to the alleged design flaws, maintenance activities and modifications described in your answers to the previous interrogatories? If so, please state:

(a)  the design flaw, maintenance activity or modification complained of;

(b)  what action was taken, if any, to correct the design flaw, maintenance or modification and when you took this action;

(c)  the time and date such complaint or complaints were made (if you cannot recall the exact date, please make a reasonable estimate of the date);

(d)  the place where made;

(e)  to whom (name) it was made;

(f)  by whom the complaint was made;

(g)  the names and present addresses and telephone numbers of each person present at the time of the making of the complaint; and

(h)  the substance of any conversation in which the complaint was made, including what each person said, identifying each person by name, address, phone number, and job title.

**RESPONSE:**

**INTERROGATORY NO. 37 AND REQUEST FOR PRODUCTION NO. 53:**

Please identify all testing that you or any of your experts have conducted that relates in any way whatsoever to this action, any part or component of the DWH BOP, equipment intended to simulate any part or component of the DWH BOP, and produce and identify by Bates number all documents that evidence, relate or refer to such testing.

**RESPONSE:**


**INTERROGATORY NO. 38:**

For all of the expert witnesses you intend to call at the trial of this matter, please identify:

(a)  their name, address, and phone number;

(b)  their field of expertise;

(c)  subject matter of their testimony;

(d)  the documents on which they plan to rely; and

(e)  all publications on which they plan to rely.

**RESPONSE:**


**INTERROGATORY NO. 39:**

Please list by name, title, date and author any and all articles and documents relied upon by you or anyone on your behalf (including expert witnesses) which you contend support the allegations in your cross-claims against Cameron.

**RESPONSE:**

**INTERROGATORY NO. 40 AND REQUEST FOR PRODUCTION NO. 54:**

Have you, or has anyone on your behalf, either directly or through others, received or obtained any statement, either written, published, recorded, stenographic, oral or otherwise from Cameron or any of its employees or agents made in connection with the April 20 incident or the DWH BOP?  If so, please produce and identify by Bates number a full and complete copy of all such statements and for each statement identify:

      (a)  the name and address of the person making the statement;

      (b)  the name and address of the person taking the statement:

      (c)  the names and addresses of all persons present at the time, of said statement; and

      (d)  the time and place said statement was made.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 55:**

Please produce all documents relating or referring to any communication you had with any other entity or individual (including internal communications) related to testing of the DWH BOP.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 56:**

Please produce all documents relating to any input or comment you have provided to MMS, BOEMRE, API, or any other standard setting body regarding requirements for BOP testing or equipment.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 57:**

Please produce all documents relating to lobbying efforts by you related to legislation governing drilling safety or maintenance.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 58:**

383.00060./479685.v1

Please produce all documents relating to your comment, review, testimony, or other involvement with regulations and opinions issued by MMS/BOEMRE, DOI, CSB, or other state or federal agency with jurisdiction over drilling/exploration.

**RESPONSE:**

**INTERROGATORY NO. 41 AND REQUEST FOR PRODUCTION NO. 59:**

Identify (by date, location, and persons involved) and describe in detail all instances of which you are aware involving an attempt to shear with a BOP ram tubular that was buckled, either in connection with testing or in connection with drilling operations.  Please produce and identify by Bates label all documents related to these instances.

**RESPONSE:**

**INTERROGATORY NO. 42 AND REQUEST FOR PRODUCTION NO. 60:**

Identify (by date, location, and persons involved) and describe in detail all instances of which you are aware involving an attempt to shear tubular with BOP rams while a well was flowing.  Please produce and identify by Bates label all documents related to these instances.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 61:**

Please produce all BOP descriptions included in the Application for Permit to Drill MMS lease for MC252 pursuant to 30 CFR § 250.416, including "Information that shows the blind shear rams installed in the BOP stack (both surface and subsea) are capable of shearing the drill pipe in the hole under maximum anticipated surface pressures."

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 62:**

Please produce all documents relating or referring to pressure tests of the DwH BOP from January 1, 2010 – April 20, 2010.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 63:**

Please produce all documents relating or referring to the waiver that BP applied for and received from the MMS to test the DwH BOP at lower pressures than required by regulation.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 64:**

Please produce all documents relating to on-rig recertification and/or inspection of BOPs, including 1) every instance where Cameron conducted an inspection/recertification on the DwH rig of a BOP component; and 2) every instance where a company other than Cameron conducted an inspection/recertification of BOP components, including documents relating to the "ram block NDT inspection" performed by Hadco (*see, e.g.*, BP-HZN-2179MDL00331948) and the ram cavity clearance measurements were taken on Aug. 31, 2009 (*see* TRN-HCEC-00090735).

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 65:**

Please produce all documents in your possession that were submitted pursuant to MMS NTL 2010-NO5, which requires operators to submit the following information regarding "BOP and loss of well control events": "Document any loss of well control event, even if temporary, and the cause of the event. The operator does not have to include kicks that were controlled but should include the release of fluids through a diverter. "

**RESPONSE:**

**INTERROGATORY NO. 43**

Please explain the basis for Tony Hayward's claim that BOPs are "designed to fail between one in a hundred thousand and one in a million"?

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 67:**

Please produce all documents relating or referring to any actuation of DwH BOP emergency systems, including each time an EDS sequence was activated.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 68:**

Please produce all documents relating or referring to communications between or among Vastar, BP, Transocean, R&B Falcon, and Cameron (or any of them) regarding the design or configuration of the DWH BOP, or any part or component of the DWH BOP.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 69:**

Please produce copies of the following documents referred to in Appendix N of the BP Deepwater Horizon Accident Investigation Report, dated September 8, 2010.

    a. BP Tubular Design Manual.

    b. Drilling and Well Operations Practice.

    c. Casing and Tubing Design Group Practice.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 70:**

Please produce all documents related to any deviation or dispensation from the BP Tubular Design Manual referenced in Appendix N of the BP Deepwater Horizon Accident Investigation Report, dated September 8, 2010.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 71:**

Please produce all calculations and documents relating to the three exceptions summarized in Section 1.1.1(d) of the Executive Summary of Appendix N of the BP Deepwater Horizon Accident Investigation Report, dated September 8, 2010.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 72:**

Please produce all communications, documents and calculations related to the external party review performed by S.C. Morey of EPT Drilling or ETP Drilling referenced in Section 1.2 of the Executive Summary of Appendix N of the BP Deepwater Horizon Accident Investigation Report, dated September 8, 2010.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 73:**

Please produce all notes, documents and communications related to, and the names of participants in, the interview with M. L. Payne, BP Casing and Tubing Design SETA, referenced in note 2 of Section 1.2 of the Executive Summary of Appendix N of the BP Deepwater Horizon Accident Investigation Report, dated September 8, 2010.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 74:**

Please produce all calculations and documents relied upon or referencing the data in Table 1 in Section 1.2 of the Executive Summary of Appendix N of the BP Deepwater Horizon Accident Investigation Report, dated September 8, 2010.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 75:**

Please produce copies of StressCheck file entitled "Macondo (MC252#1) scm Mar 10.sck" and all versions of its accompanying document "Evaluation of Casing Design Basis for Macondo Prospect, Mississippi Canyon Block 252, OCS-G-32306 Well No. 1", referenced in Section 2 of Appendix N of the BP Deepwater Horizon Accident Investigation Report, dated September 8, 2010.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 76:**

Please produce a copy of StressCheck Version 2003.16 Build 1061 referenced in Note 4 of Section 2 of Appendix N of the BP Deepwater Horizon Accident Investigation Report, dated September 8, 2010.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 77:**

Please produce copies of the spreadsheet used to check StressCheck calculations referenced in Section 4.1 of Appendix N of the BP Deepwater Horizon Accident Investigation Report, dated September 8, 2010.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 78:**

Please produce all calculations or documents relied upon or referencing the data in Figure 8 in Section 4.5 of Appendix N of the BP Deepwater Horizon Accident Investigation Report, dated September 8, 2010.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 79:**

Please produce copies of the Gas Kick Profile and all documents referencing or incorporating the Gas Kick Profile referenced in Section 4.8 of Appendix N of the BP Deepwater Horizon Accident Investigation Report, dated September 8, 2010.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 80:**

Please produce training materials regarding use or maintenance of BOPs that were presented or provided to persons on the Deepwater Horizon.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 81:**

Please produce manuals and documents relating to the use or maintenance of subsea BOPs.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 82:**

Please produce all documents related to any risk assessment or risk assessment workshop related to the DWH BOP (including but not limited to any risk assessment performed by Wild Well Control in 2007).

**RESPONSE:**