UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | : : : : | MDL No. 2179 SECTION: J |
| This Document Relates To: All Cases ………………………………………………... | : : | JUDGE BARBIER MAGISTRATE JUDGE SHUSHAN |

**REPLY IN SUPPORT OF BP'S MOTION FOR A STAY OF PROCEEDINGS BETWEEN BP AND ANADARKO AND MOEX**

**TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................................................1

ARGUMENT ...................................................................................................................................2

I.         The Arbitration Clause Bars Anadarko's Claims Against BP. ............................................2

        A.         The Arbitrators Must Decide Questions of Arbitrability. ........................................3

        B.         Exhibit F Has No Express Exception to the Contractual Arbitration Clause........................................................................................................................4

        C.         The Arbitration Clause Controls Over Exhibit F in the Event of a Conflict. ..........6

        D.         Anadarko's Claims Are Not Covered by Exhibit F. ................................................7

II.        BP's Conduct in Discovery Is Consistent with the Arbitration Clause. ..............................7

III.       BPAP and BP p.l.c. May Invoke the Arbitration Clause. ......................................................8

IV.       AEP Is Bound by the Agreement it Ratified and Joined. .....................................................9

CONCLUSION..............................................................................................................................10

## **INTRODUCTION**

Anadarko's response attempts to rewrite the plain language of the arbitration clause to which it voluntarily agreed.  Article 22.9 of the Joint Operating Agreement ("JOA") between BPXP and Anadarko unambiguously states that "***[a]ny*** claim, controversy, or dispute arising out of, relating to, or in connection with this Agreement or an activity or operation conducted under this Agreement shall be resolved under the Dispute Resolution Procedure in Exhibit 'H' to this Agreement."  (JOA ¶ 22.9 (Apr. 27, 2011 Boles Decl. Ex. A at 144) (emphasis added).)  This language is clear, unequivocal, and requires Anadarko to arbitrate its claims.

Anadarko now attempts to escape this promise.  Anadarko asserts that Exhibit F to the JOA creates an exception to the arbitration clause.  Under the JOA's broad arbitration clause, this question of arbitrability must be decided by the arbitrators rather than this Court.  (*See infra* Part I.A.)  Neither Exhibit F nor any other portion of the JOA creates an exception to the arbitration clause's express language.  (*See infra* Parts I.B–D.)  Moreover, BP's conduct in this case is consistent with its requests in this motion.  (*See infra* Part II.)  Binding legal authority supports extending the stay to all of BP's and Anadarko's affiliates.  (*See infra* Parts III–IV.)

In its opening brief, BP argued that all litigation between BP and Anadarko and MOEX should be stayed—including any discovery sought against BP.  On May 13, 2011, the Magistrate Judge issued an order on Anadarko and MOEX's motion to compel discovery responses, holding that discovery related to claims properly pending in the MDL—even if also related to arbitrable issues—was allowed.  And on May 20, 2010, BP announced a settlement with MOEX.  In light of these events, BP now seeks a stay only of (a) the affirmative claims brought by Anadarko against BP, and (b) discovery by Anadarko that does not relate to its defenses against the claims of other parties in this litigation.  Thus, Anadarko's assertion that this motion would "violat[e] due process" by depriving Anadarko of "the opportunity to defend itself" (*see* Opp'n at 7–9)—

1

never well taken to begin with[1]—is now moot since BP is limiting its requested relief to a stay of Anadarko's affirmative claims, not its defense. For example, Anadarko has affirmative claims for declaratory judgment under the JOA. (*See, e.g.*, 2771 Dkt. 338 (Anadarko's Crossclaim) ¶¶ 117–135, 59–161.) BP is simultaneously submitting a new proposed order with revisions tailored to this narrower request.

## ARGUMENT

### I. THE ARBITRATION CLAUSE BARS ANADARKO'S CLAIMS AGAINST BP.

Anadarko promised to arbitrate "[a]ny claim, controversy, or dispute" with BP "arising out of [or] relating to" co-ownership of the Macondo Prospect. Anadarko has nevertheless filed claims in the MDL against BP and justifies this action by attempting to create an exception to the general arbitration provision. No such exception exists. (*See infra* Part I.B.) Even if such an exception existed, the arbitrators rather than this Court must decide questions of arbitrability. *See infra* Part I.A.) Other courts considering oil and gas operating agreements have had no difficulty compelling arbitration for a wide range of disputes brought by co-owners. *E.g.*, *Double G Energy, Inc. v. AT Gas Gathering, Inc.*, 2005 WL 1837953, at *9 (N.D. Tex. July 28, 2005) (claims against the operator and others for gross negligence and other claims were arbitrable because the claims "have a significant relationship" to the relevant agreements).

Courts should likewise stay claims between two parties to an arbitration contract even if their claims are part of a multi-party maritime proceeding. The Fifth Circuit in *Texaco v. AmClyde* rejected the notion "that the policy of liberal joinder in maritime cases embodied in Rule 14(c) . . . supersede[s] the statutory right to enforce contractual arbitration guaranteed by

---

[1] Parties—especially sophisticated corporations—are free to waive their due process right by contract. *D.H. Overmyer Co., Inc., of Ohio v. Frick Co.*, 405 U.S. 174, 186 (1972). Indeed, in every mandatory arbitration agreement the parties waive their due process right to litigate against each other in court. Anadarko agreed to arbitrate "any claim, controversy, or dispute" arising out of the JOA or the Macondo oil exploration activity. Thus, it is irrelevant that Anadarko might, absent that agreement, have a right to pursue theories against BP in court.

2

the FAA." *Texaco Exploration & Prod. Co. v. AmClyde Engineered Prods. Co., Inc.*, 243 F.3d 906, 908 (5th Cir. 2001).[2]  The Fifth Circuit reversed the District Court's denial of a motion to stay arbitrable claims.  *Id.*  And the holding in *Texaco v. AmClyde* is not dependent on the particular alignment of the parties.  The Fifth Circuit, in *In re Complaint of Hornbeck*, entered a stay between the two limitation action defendants where the plaintiff was not a party to the arbitration agreement.  *In re Compl. of Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 755 (5th Cir. 1993).

When a court is faced with a binding arbitration clause, it has no discretion but to stay arbitrable claims.  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("[T]he [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.").  The policy in favor of arbitration is so strong that a denial of stay is immediately appealable.  *Arthur Andersen LLP v. Carlisle*, 129 S. Ct. 1896, 1900 (2009).

      **A.**      **The Arbitrators Must Decide Questions of Arbitrability.**

The Fifth Circuit distinguishes between "broad" arbitration clauses and "narrow" ones. While "narrow" clauses limit the range of arbitrable disputes to matters "arising out of" the contract, "broad" clauses cover "all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute." *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998).  The arbitration clause in the JOA covers "[a]ny claim, controversy, or dispute arising out of, relating to, or in connection with this

---

[2] Anadarko claims that *Texaco v. AmClyde* "expressly distinguished cases in which a Rule 14(c) defendant was tendered to a party with whom it had no arbitration agreement." (Opp'n at 11)  The court in *AmClyde*, however, only expressly distinguished four cases dealing with arbitration, and none of the four cases examined by the court was distinguished on such a basis.  *AmClyde,* 243 F.3d at 910 –11.  The court actually noted that two of the cases supported the position it took, because—as in this case—the stay was only being sought among the parties to the arbitration agreement and excluded the non-signatories.  *Id.* at 911.

3

Agreement or any activity or operation conducted under this Agreement." (JOA art. 22.9 (Apr. 27, 2011 Boles Decl. Ex. A at 144); *see id.* Ex. H (Apr. 27, 2011 Boles Decl. Ex. A at 216).) The Fifth Circuit has found such a clause to be broad. *Pennzoil*, 139 F.3d at 1067.

"If the clause is broad, the action should be stayed and the arbitrators permitted to decide whether the dispute falls within the clause." *In re Compl. of Hornbeck*, 981 F.2d at 754; *see also Terrebonne v. K-Sea Transp. Corp.*, 477 F.3d 271, 286 (5th Cir. 2007). As explained in Parts I.B–D, Anadarko's argument that there is an exception to the JOA's arbitration clause is meritless. But in any event, under controlling Fifth Circuit case law, the arbitrators rather than this Court must decide whether an exception exists and whether a dispute falls within that exception. Thus, even if Anadarko had a colorable argument for an exception (and it does not), its litigation with BP would still need to be stayed and the dispute referred to arbitration.

    **B.**  **Exhibit F Has No Express Exception to the Contractual Arbitration Clause.**

Under Fifth Circuit law, "arbitration should not be denied unless it can be said with positive assurance that [the] arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." *Safer v. Nelson Fin. Grp., Inc.*, 422 F.3d 289, 294 (5th Cir. 2005) (internal quotation marks omitted; alteration in original). And in order to establish an exception to a broad arbitration clause, Anadarko must show "either (1) the existence of an express provision excluding the grievance from arbitration or (2) the most forceful evidence of a purpose to exclude the claim from arbitration." *Paper, Allied-Indus., Chem. & Energy Workers Int'l Union v. ExxonMobil Refining & Supply Co.*, 449 F.3d 616, 620 (5th Cir. 2006); *see Am. Dairy Queen Corp. v. Tantillo*, 536 F. Supp. 718, 723 (M.D. La. 1982). It cannot meet these tests.

Article 22.9 states that arbitration is required for "[a]ny claim, controversy, or dispute," without qualification or exception. Nor is there any provision in the JOA that contains language to the effect that, "notwithstanding Article 22.9," certain claims may be litigated. Indeed,

4

Anadarko itself cannot identify any express exception. Instead, Anadarko argues only that there is an *implicit* exception to the arbitration clause. (*See* Opp'n at 15 (pointing to a supposed "indication that the filing of a lawsuit is contemplated").)

Anadarko cites no case in which courts have relied on indirect language to create an exception to a broad, mandatory arbitration clause. In every one of its cases, the exception or limitation is explicit and appears within the body of the arbitration clause itself. Indeed, nearly all of the cases cited by Anadarko consider arbitration clauses that were explicitly optional, allowing the parties to either litigate or arbitrate under the clear language of the clauses.[3] By contrast, the JOA's arbitration clause is mandatory with no option for litigation. Thus, any implicit exception cannot overrule an express, broad arbitration clause.

Moreover, Exhibit F simply does not create an exception—even an implied one—to the arbitration clause. Anadarko relies on the phrases "bringing of a suit and the obtaining of judgment," "court costs," and "any available judicial procedure" as evidence of an implicit exception to an otherwise all-encompassing arbitration provision. But allowance of court proceedings for narrow classes of relief does not impugn the general applicability of the arbitration clause's conceded breadth. For example, another exhibit, Exhibit H, which defines the arbitration procedures, allows the parties to seek judicial remedies "for preliminary relief in aid of arbitration" and to enforce or seek to vacate an arbitration award. (JOA Ex. H §§ I.A(i), II.K(iii), II.L (Apr. 27, 2011 Boles Decl. Ex. A at 216, 223).) The provisions Anadarko cites thus provide no support for Anadarko's contention that they preclude arbitrability of claims that

---

[3] *Indep. Oil Workers v. Mobil Oil Corp.*, 441 F.2d 651, 653 (3d Cir. 1971); *BCS Ins. Co. v. Wellmark, Inc.*, 410 F.3d 349, 351 (7th Cir. 2005); *Summit Packaging Sys., Inc. v. Kenyon & Kenyon*, 273 F.3d 9, 11 (1st Cir. 2001); *Air China Ltd. v. Li*, 2008 WL 754450, at *2 (S.D.N.Y. March 17, 2008); *Digital Control Inc. v. Radiodetection Corp.*, 294 F. Supp. 2d 1199, 1205 (W.D.Wash. 2003). In the only case cited by Anadarko that involved a binding arbitration clause, *Baton Rouge Oil & Chemical Workers Union v. Exxon Mobil Corp.*, 289 F.3d 373 (5th Cir. 2002), the court considered a narrow arbitration provision that covered only "a good faith claim by one party that the other party has violated a written provision of this agreement," rather than a broad clause. *Id.* at 375–77.

5

are so manifestly within the arbitration clause's broad, plain meaning.

Courts have consistently rejected attempts to cite narrow, passing references to "court proceedings" and the like to create an exception to a broad-type arbitration clause. *E.g.*, *Baquie v. Eastern Energy Corp.*, 2010 WL 1416557, at *6-7) (W.D. Ky. April 2, 2010) (reference to "court proceedings" within the operating agreement did not create a right to file a court action); *Big Y Foods, Inc. v. Connecticut Properties Tri-Town Plaza, LLC*, 985 F. Supp. 232, 235-36 (D. Conn. 1998) (rejecting argument that an exception to arbitration was created by a reservation of rights for the landlord to potentially pursue rights of summary process under applicable law); *see also Dunn Indus. Grp., Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 429–430 (Mo. 2003) ("[The] change order does not clearly, positively, unequivocally, or decisively state that the right and obligation to arbitrate was modified, limited, or rescinded."); *Personal Sec & Safety Sys. Inc. v. Motorola Inc.*, 297 F.3d 388, 395–96 (rejecting creation of an exception to arbitration despite language referring to a potential "suit" "subject to the exclusive jurisdiction of the courts located in Texas").

   **C. The Arbitration Clause Controls Over Exhibit F in the Event of a Conflict.**

Anadarko attempts to rely on the language of Exhibit F to create a conflict with the arbitration clause in Article 22.9, but Exhibit F is subordinate. (JOA art. 3.1 (Apr. 27, 2011 Boles Decl. Ex. A at 24).) Article 3.1 of the JOA states that, "[i]f any provision of an Exhibit conflicts with any provision of the body of this Agreement, the provision of the body of this Agreement shall prevail[.]" (*Id.*) While Anadarko correctly points out that Exhibit F is, not surprisingly, made a part of the JOA, no provision makes Exhibit F part of the *body* of the JOA. (*See* JOA art. 6.3 (Apr. 27, 2011 Boles Decl. Ex. A at 41) ("[Exhibit F] is incorporated into this Agreement by reference.").) Indeed, Exhibit F sits on the same footing as every other exhibit to the JOA—including the Dispute Resolution Procedure in Exhibit H—each of which "is made a

6

part of this Agreement and is incorporated into this Agreement by this reference." (JOA art. 3.1 (Apr. 27, 2011 Boles Decl. Ex. A at 24)).) Anadarko's argument would render nugatory the provision prescribing that the body of the JOA takes precedence over the exhibits. The body of the JOA, including Article 22.9, therefore controls. (*See* JOA art. 22.9 (Boles Decl. Ex. A at 144).)

### D. Anadarko's Claims Are Not Covered by Exhibit F.

For a court to apply any exception to a broad arbitration clause, it must have "positive, unambiguous assurance that the dispute is within that narrow exception." *Roso-Lino Beverage Distribs., Inc. v. The Coca-Cola Bottling Co. of N.Y., Inc*., 749 F.2d 124, 126 (2d Cir. 1984). Anadarko's claims for relief against BP do not meet the description of the claims discussed in Exhibit F.

Anadarko cites two provisions in Exhibit F, articles 6.3(a)(iii) and 6.3(c), which only grant a mortgage to secure any debts owed "pursuant to this Agreement," and allow the "exercise [of those] mortgage and security rights." None of the claims by Anadarko, however, purports to assert any mortgage right. And several of the claims by Anadarko do not involve any money owed by BP to Anadarko, but instead seek declaratory judgments about money owed *by Anadarko* to BP. (*See, e.g*., 2771 Dkt. 338 (Anadarko's Crossclaim) ¶¶ 117–135, 59–161.) Accordingly, the mortgage provision of Exhibit F is simply inapplicable. *See, e.g.*, *In re W.W. Jarvis & Sons*, 671 S.E.2d 534, 538 (N.C. Ct. App. 2009) (holding an arbitration clause applicable because the asserted exception allowed the withdrawing partner to seek court action, and the non-withdrawing partner was the party seeking to circumvent arbitration).

## II. BP'S CONDUCT IN DISCOVERY IS CONSISTENT WITH THE ARBITRATION CLAUSE.

Although Anadarko tries to take issue with BP's discovery conduct in the MDL, nothing

that BP has done is inconsistent with what it seeks by this motion. Before the Magistrate Judge's May 13 Order, BP had not attempted to take discovery of Anadarko.[4] The sole example of "discovery" offered by Anadarko is BP's inclusion of a handful of Anadarko employees on a Master List of *Potential* Deponents. This document, to which a number of parties contributed names, was by its own terms "preliminary and non-binding." (Dkt 1965-5 (Anadarko's Mot. to Compel Ex. D); *see* Dkt. 1346 (Feb. 11, 2011 Discovery Conference Tr.) at 48 (Magistrate Judge: "Everybody knows that these are nonbinding lists.").)

### III.   BPAP AND BP P.L.C. MAY INVOKE THE ARBITRATION CLAUSE.

Established case law requires that the arbitration clause apply to BPAP[5] and BP p.l.c. Non-signatories to an arbitration agreement can compel arbitration:

> (1) when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against a non-signatory; or (2) when the signatory raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more signatories to the contract.

*Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 398 (5th Cir. 2006) (citing *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2000)). This test is expressly stated in terms of "or," and thus satisfying either prong provides for arbitration of non-signatories. Both prongs are satisfied here.

First, Anadarko plainly relies on the JOA for its claims against BPAP and BP p.l.c. In fact, Anadarko explicitly alleges that, "[t]he duties owed by [all the BP entities] to the Non-Operating Investors arose out of BP's status as the designated Operator under the Lease, the sole and controlling Operating Party under the OA[.]" (2771 Dkt. 338 ¶ 32.) And the first prong of

---

[4] BP has served requests for production on Anadarko, but those requests were expressly contingent on the outcome of this motion.

[5] Anadarko confuses BP America Production Company (BPAP) with BP America Inc. (Opp'n at 20–21.) Anadarko has named BPAP as a defendant in its crossclaims.

8

the Fifth Circuit rule also comports with the terms of the JOA itself, which mandate arbitration of "[a]ny claim, controversy or dispute arising out of, relating to, or in connection with this Agreement," without limit to claims against signatories.  (JOA art. 22.9 (Apr. 27, 2011 Boles Decl. Ex. A at 144).)[6]

All of Anadarko's claims against BPAP and BP p.l.c. also satisfy the second prong of *Brown* because they are alleged collectively against all three "BP" entities.  Accordingly, the claims against BPAP and BP p.l.c. allege "substantially interdependent and concerted misconduct" by all the BP entities.  Anadarko's exhortations that its claims are based on BPAP's and BP p.l.c.'s "own conduct" are unavailing.  That is not the distinction that *Grigson* draws.  Instead, *Grigson* allows the non-signatory to compel arbitration as long as the allegations of its conduct are substantially interdependent and concerted with a signatory's conduct.

Moreover, a party need not be bound by an arbitration provision to be entitled to a stay of the proceedings against them.  *See Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A.*, 372 F.3d 339, 342 (5th Cir. 2004) ("The grammatical structure of [9 U.S.C. § 3] would seem to make clear that *any* of the parties to the suit can apply to the court for a mandatory stay, and the court must grant the stay if the claim at issue is indeed covered by the arbitration agreement.").  "[I]f a suit against a nonsignatory is based upon the same operative facts and is inherently inseparable from the claims of the signatory," a stay is warranted.  *Hill v. G E Power Sys., Inc.*, 282 F.3d 343, 347 (5th Cir. 2002).  Thus, regardless of whether they are subject to the arbitration clause, the claims against them must be stayed.

## IV.     AEP IS BOUND BY THE AGREEMENT IT RATIFIED AND JOINED.

Lastly, Anadarko's claim that AEP is not bound by the arbitration provision because it

---

[6] The JOA also explicitly states that BPXP is permitted to use "Affiliates" to assist in its operations.  (JOA art. 5.1 (Apr. 27, 2011 Boles Decl. Ex. A at 31).)

9

"no longer has any obligations under the Operating Agreement" is contradicted by Supreme Court holdings. (*See* Opp'n at 22.) AEP expressly ratified, confirmed, and adopted the JOA, including its arbitration provision. (Ratification and Joinder of Operating Agreement (May. 25, 2011 Boles Decl. Ex. F).) That joinder in the arbitration provision continues regardless of whether AEP has any continuing obligations: "The Supreme Court . . . has held expressly that an arbitration agreement contained in a contract does not terminate merely because the contract has terminated." *Rive v. Briggs of Cancun, Inc.,* 82 Fed. App'x 359, 363 (5th Cir. 2003) (citing *Nolde Bros. v. Bakery & Confectionary Workers Union*, 430 U.S. 243, 249–55 (1977)). AEP still has obligations under the JOA, including the obligation in article 22.9 to resolve its disputes with BP in arbitration.

## CONCLUSION

For the reasons above, and those set forth in BP's opening brief in support of its motion, the Court should stay Anadarko's claims for affirmative relief against BP.

DATE:  May 25, 2011                                    By:   /s/ Martin R. Boles

Richard C. Godfrey, P.C.
(richard.godfrey@kirkland.com)
J. Andrew Langan, P.C.
(andrew.langan@kirkland.com)
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
312-862-2000 (Tel)
312-862-2200 (Fax)

and

Martin R. Boles
(martin.boles@kirkland.com)
Kirkland & Ellis LLP
333 South Hope Street, Suite 2900
Los Angeles, CA 90071
213-680-8400 (Tel)
213-680-8500 (Fax)

and

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
202-662-5985

*Attorneys for BP America Inc., BP America Production Company, BP Exploration & Production Inc., and BP p.l.c.*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice in accordance with the procedures established in MDL 2179, on this 25th day of May, 2011.



/s/ Martin R. Boles