UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| VALENTINO MONES d/b/a TINO MONES SEAFOOD | No. 2:11-cv-0996 |
| | SECTION: "J" |
| *VERSUS* | HONORABLE CARL BARBIER |
| BP AMERICA, INC. and the ST. BERNARD PARISH GOVERNMENT through Craig P. Taffaro, Jr., its duly elected Parish President | MAG: (1) Magistrate SALLY SHUSHAN |

### MEMORANDUM SUPPORTING PLAINTIFF'S MOTION FOR REMAND TO STATE COURT

*May It Please the Court:*

This memorandum is respectfully submitted on behalf of Valentino Mones d/b/a Tino Mones Seafood in support of his motion to remand this case to the 34th Judicial District Court for the State of Louisiana, which defendant BP America, Inc. ("BP") improvidently removed it. Defendant claims the other defendant, the St. Bernard Parish Government through Craig P. Taffaro, Jr., its duly elected Parish President, was improperly joined as a defendant in this case in order to defeat federal jurisdiction over this case. For the foregoing reasons, BP had no legitimate basis in fact or law for removal of this case, and this case is due to be remanded to the State Court from which it was improperly removed.

## The Applicable Facts

This case is one of many arising from the disaster created by the explosion and resulting massive discharge of crude oil into the Gulf of Mexico adjacent to the State of Louisiana.

Plaintiff acknowledges that he received a telephone call from a BP representative in mid-June of 2010 proposing to rent his property for $2,000.00 *per* **month** for use of BP Exploration and Production, Inc. as a staging site for its oil spill response activities.  Because he had heard that another land owner in Delacroix was receiving $3,000.00 *per* **day** for BP's lease of his property for a similar use, Plaintiff refused to accept BP's offer and told the BP executive who called him that he would have to speak with other persons and get back to him to discuss his offer to lease plaintiff's property.  Without any agreement with Plaintiff, BP had a crew of men move on to Plaintiff's property, clean the oil from it, spread rocks, and put portable restroom facilities upon Plaintiff's land.

As acknowledged in the attached Exhibit 1, Plaintiff advised that caller, now identified as Richard W. Potocek, the General Manager of Group Real Estate – M&A, BP America, Inc., that Plaintiff was going to check with other people and get back to him, Plaintiff did make such contacts with other persons.  Plaintiff told Mr. Potocek that he was definitely not interested in his low offer.

One of the "other people" with whom Plaintiff consulted was Mr. Craig P. Taffaro, Jr., the Parish President of St. Bernard Parish.  Mr. Taffaro advised Plaintiff that he could not force BP to pay any more than it offered, but he thought a meeting with BP personnel would be helpful in the resolution of the problem between him and them.  Mr. Taffaro called someone at BP's local offices and told that person of the nature of the problem involving the price of the

lease of Tino's property and he asked that BP send a person with authority to negotiate the lease to his office, and he obtained a date and time when such a meeting could be had. During the scheduled meeting, when Plaintiff and BP were still unable to resolve their dispute, Mr. Taffaro advised that the Parish would guarantee payment of Tino's $3,000.00 *per* **day** price. Thereafter, when BP's personnel showed up at Plaintiff's property and used it, Plaintiff accepted those acts as confirmation that BP accepted the lease on the same basis as guaranteed, with St. Bernard Parish serving as a surety of his price. To further reiterate the occurrences at that meeting, *see* Plaintiff's Exhibit 1 attached to his motion to remand. Further describing that meeting, two BP employees whose Christian names are Bert and Jerry, after the Parish offered to act as surety of the lease, agreed to lease Plaintiff's property at the rate guaranteed by the Parish.

      A verbal contract was then entered into by Plaintiff and Bert and Jerry on behalf of BP, and the Parish as surety of that agreement. Plaintiff was promised he would be provided with a written lease, which he never received. BP subsequently used Plaintiff's dock facilities and stored items used for the clean-up operations on Plaintiff's property.

      The parties to the agreement that was made in Mr. Taffaro's office also agreed that the lease would include the use of Plaintiff's heavy equipment that was on Plaintiff's property at no additional cost to BP. Plaintiff had two (2) forklifts, two (2) forty-foot (40') empty containers for dry storage, one (1) twenty-foot (20') container with a 14,000 pound *per* day capacity, an ice machine, and a twenty-six foot (26') camper with a slide out floor that could be used for housing crews working on the property or involved in the clean-up operations. After four (4) months, BP abandoned the lease without any prior notice, in contravention of Louisiana law and custom, leaving some of its property on the leased site. Plaintiff sent invoices to BP totaling $345,000.00, which BP subsequently failed to honor, denying that it had any lease upon

Plaintiff's property and denying any use thereof beyond the "site preparations" for its use of the property.

Plaintiff filed this suit in the 34th Judicial District Court for the State of Louisiana, alleging the above facts. BP removed this case to this Court, claiming that the Parish had been improperly joined as a defendant to defeat this Court's jurisdiction because Plaintiff had no viable claim against it.

## ARGUMENTS

### 1. There is a viable case against St. Bernard Parish Government

Ordinarily, the funds, credit, property or things of value of the state or of any political subdivision of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private." La.Const.1974, Art. VIII, § 14(A). However, "[f]or a public purpose, the state and its political subdivisions or political corporations may engage in cooperative endeavors with each other, with the United States or its agencies, or with any public or private association, corporation, or individual." La.Const. 1974, Art. VII, § 14(C).

In addition to Article VII, § 14(C) of the Constitution, the Legislature has passed the following statute which authorizes the action herein taken by the Parish President. La.R.S. 29:727(F)(2) provides:

> F. In addition to any other powers conferred upon the parish president by this constitution, laws, or by a home rule charter or plan of government, such authority may do any or all of the following:
>
> * * *
>
> (2) Utilize **all available resources of the local government** as **reasonably necessary to cope with the local disaster or emergency.**
>
> * * *

>   (4) Subject to any applicable requirements for compensation, commandeer or utilize any private property if he finds this necessary to cope with the local disaster.

* * *

When Plaintiff went to the Parish President to seek assistance from the Parish to obtain a more just compensation for BP's use of his property, BP was called and asked to send its representative(s) who were authorized to negotiate a fairer price than was previously offered to Plaintiff by BP. Two BP employees attended that meeting with Plaintiff, the Parish President, and David Dysart of the Parish Government. Plaintiff told the persons present that he wanted nothing less than $3,000.00 *per* day as rental for his property. Those BP employees participated in the negotiations, but they were unable to get Plaintiff to discuss any lesser amount. The Parish President then asserted that the Parish would guarantee the requested rental in exchange for Plaintiff's allowance of BP to rent the property to use in the clean-up of the private and public properties in the vicinity of Plaintiff's property. Plaintiff acceded to the BP employees' request to use Plaintiff's forklifts and any other property on the site to assist in their clean-up efforts related to the massive discharge of crude oil from the oil rig in the Gulf. After hearing the Parish's guarantee of the lease under the terms insisted upon by Plaintiff, the BP employees assented to the lease, as guaranteed by the Parish.

It is up to the Courts of the State of Louisiana to determine the reasonable price of BP's lease of the property and the balance, if any, secured by the Parish's guarantee of Plaintiff's price. Both BP and the Parish, as surety, are necessary parties to this litigation. As St. Bernard Parish Government is a political subdivision of the State of Louisiana, the Eleventh Amendment to the United States Constitution prevents this litigation from being conducted in this federal court. Accordingly, this case must be remanded to the State Court from which it was improvi-

dently removed because the Parish, an arm of the State acting within the powers granted by Article VII, § 14(C), of the State Constitution, as exemplified by La.R.S. 29:727(F)(2), destroy the diversity of citizenship among the defendants and plaintiff herein.

### 2. If Defendant is right, the requisite jurisdictional amount is not at issue.

In Plaintiff's petition, it is acknowledged that the requisite federal threshold amount is in controversy. But if the Parish Government is removed from this case, as the defendant BP seeks, then it will not be. The BP contractual involvement with Plaintiff was from June through September of 2010. If BP's misrepresentations are taken as true and this Court dismisses the Parish from this litigation, under the case as it then exists will have only $8,000.00 in controversy. We do not believe this Honorable Court has authority to resolve the issue of the Parish's surety agreement with the Plaintiff. That is a purely State Court issue under the Eleventh Amendment to the Constitution. Taking the case as whittled down by BP's machinations, the amount in controversy clearly will not meet federal requirements under 28 U.S.C. § 1332(a).

### CONCLUSION

For the foregoing reasons, the Plaintiff is due to have this Honorable Court remand this case to the 34th Judicial District Court of the State of Louisiana from which it was improperly removed.

Respectfully submitted,

THE LAW OFFICES OF FRANK D. IPPOLITO

s/ Frank D. Ippolito
FRANK D. IPPOLITO, T.A. (#23611)
Attorney for Plaintiff
700 W. Judge Perez Drive, Suite 101, Chalmette, LA 70043
2201 Williams Blvd., Kenner, LA 70062
Mailing: Post Office Box 428
Chalmette, Louisiana  70044-0428
Telephone:  (504) 276-5500, (504) 467-7226
Facsimile: (504) 276-5530, (504) 467-7732

## VERIFICATION

STATE OF LOUISIANA

PARISH OF ST. BERNARD

### AFFIDAVIT

BEFORE ME, the undersigned authority, personally came and appeared:

**VALENTINO MONES**

who being by me first duly sworn, deposed and said:

1. That he is the Plaintiff in the above captioned litigation;

2. That he has read the foregoing Memorandum in Support of his Motion to Remand, and as to every fact stated in the said memorandum, he knows of his own knowledge that the facts stated therein are true and correct, to the best of his knowledge, information and belief;

3. Further, he sayeth naught.

_____
VALENTINO MONES., Affiant

SWORN TO and SUBSCRIBED before me,
Notary Public, this 27th day of May, 2011.

_____
FRANK D. IPPOLITO, Notary Public
No. 23611
My Commission is Issued for Life