# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | | |
|---|---|---|---|
| IN RE: | OIL SPILL by the OIL RIG | § | MDL NO. 2179 |
| | "DEEPWATER HORIZON" | § | |
| | in the GULF OF MEXICO, | § | |
| | on APRIL 20, 2010 | § | SECTION: J |
| | | § | |
| This Document Relates To: ALL CASES | | § | |
| | | § | JUDGE BARBIER |
| | | § | MAG. JUDGE SHUSHAN |
| | | § | |
| | | § | |

## OBJECTIONS TO
## 30(B)(6) DEPOSITION NOTICE OF WEATHERFORD U.S., L.P.

WEATHERFORD U.S., L.P. ("Weatherford" or "Responding Party") hereby objects to the Notice of Videotaped Deposition of Weatherford Defendants and corresponding Areas of Inquiry served on Weatherford by Halliburton Energy Services, Inc. ("Halliburton") on May 16, 2011.  Notwithstanding these objections, Responding Party will produce witnesses to testify as to the following Areas of Inquiry pursuant to Federal Rule of Civil Procedure 30(b)(6).

## GENERAL OBJECTIONS AND RESERVATION OF RIGHTS

1.      Pursuant to Rules 26 and 30 of the Federal Rules of Civil Procedure, Responding Party objects to the Notice and Areas of Inquiry, insofar as they conflict with, or purport to impose obligations beyond those of the Federal Rules of Civil Procedure or the Rules and Orders of this Court.

2.      Responding Party will not offer testimony on matters outside the proper scope of the Notice, and incorporates by reference all relevant objections made in Weatherford's responses to discovery in this litigation.

3.      Responding Party objects to the Notice and the Areas of Inquiry to the extent they seek information not relevant to a claim or a defense of any party, and not reasonably calculated to lead to the discovery of admissible evidence.

4.      Responding Party objects to the Notice and the Areas of Inquiry to the extent they seek, or may be interpreted to seek, information protected by the attorney-client privilege, the work product doctrine, the common interest principle or any other privilege, applicable common law, and any applicable rule, regulation or statutory authority protecting, among other things, personal information from disclosure.  If any attorney-client privileged or other protected information is disclosed, such disclosure is inadvertent and shall not constitute a waiver of any privilege or protection. Any inadvertent disclosure of information shall not constitute a waiver of any other ground for objecting to the requested testimony.  Any such objection should not be construed as a representation that such information exists, existed, or is relevant.  Such an objection indicates only that the Notice and/or Area of Inquiry is of such scope as to actually or potentially embrace subject matter protected by such privilege, immunity or other protection.

5.      Responding Party objects to the Notice and the Areas of Inquiry to the extent they seek the disclosure of testimony or other information that contain or constitute trade secrets, proprietary information, or other confidential business information without appropriate restrictions on disclosure and dissemination as may be embodied in a protective order entered by the Court.

6.      Responding Party objects to the Notice and the Areas of Inquiry to the extent they exceed the limitations set forth in Pre-Trial Order No. 11 in that they are not limited to Casualty, Spill, Limitation and Related Issues.

7.     Responding Party objects to the Notice and the Areas of Inquiry to the extent they call for legal conclusions and expert testimony.  Responding Party will not present a corporate witness to provide legal analysis for any party.  Nor will Responding Party present a corporate witness to provide expert testimony for any party.

8.     Responding Party objects to the Notice and the Areas of Inquiry to the extent they seek to impose upon Responding Party an obligation to investigate or discover information that is as easily or more accessible to any party, and/or that is outside the possession, custody or control of Responding Party.

9.     Responding Party objects to the Notice and the Areas of Inquiry to the extent they include any factual misrepresentation.

10.     Responding Party objects to the Notice and the Areas of Inquiry to the extent they are vague, ambiguous, duplicative, repetitive, redundant, unreasonably cumulative, or otherwise excessive, oppressive or harassing.

11.     Responding Party objects to the Notice and the Areas of Inquiry to the extent they seek testimony and/or information related to wells other than the Macondo Project, the Macondo Well known as MC 252 #1 Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the incident.  Responding Party will only provide testimony and/or information relating to the Macondo Project, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the incident.

12.     Responding Party objects to the Notice and the Areas of Inquiry to the extent they are unduly burdensome.  An "unduly burdensome" objection means that the Area of Inquiry is unreasonably cumulative or duplicative, or seeks information that is publicly available or

available from some other source that is more convenient, less burdensome, or expensive, or that the burden or expense of providing the requested discovery outweighs its benefit.

13.     Responding Party objects to the Notice and the Areas of Inquiry to the extent they are overbroad.  An "overbroad" objection means that the area of inquiry seeks, in substantial part, information that is not relevant to a claim or defense in the pending action or does not appear reasonable calculated to lead to the discovery of admissible evidence.

14.     Responding Party further objects to the Notice and the Areas of Inquiry to the extent they are vague, ambiguous, and/or so unintelligible that Responding Party cannot reasonably respond.

15.     Responding Party further objects to the Notice and the Areas of Inquiry on the grounds that they are cumulative and duplicative of discovery already provided to any party.

16.     Responding Party further objects to the Notice and the Areas of Inquiry to the extent they call for information containing no date limitation, as it is overly broad, unduly burdensome, and calling for information that is neither relevant, nor reasonably calculated to lead to the discovery of admissible evidence.

17.     Responding Party's objections are made expressly without in any waiving or intending to waive, but rather preserving and intending to preserve the right at any time to revise, supplement, correct, amend or clarify these objections.  Responding Party reserves the right to make any and all appropriate objections at the deposition in accordance with the Federal Rules of Civil Procedure.

18.     Responding Party further objects to the use of the term "Weatherford Defendants" in the Notice on the grounds that this term is incorrect and overbroad.  Witnesses produced in

response to this Notice and the Areas of Inquiry will be testifying solely on behalf of Weatherford U.S., L.P.

19.     Responding Party expressly reserves the right to substitute or supplement the designations set forth below for any reason, including, but not limited to, disputes as to the scope of the topics, unanticipated questions of the designees, or a designee's potential inability to provide accurate information as to any aspect the relevant corporate entity's knowledge of the topic.  Responding Party will work with all parties to address any practical concerns that may arise from any such changes, and fully anticipates that all parties will do so as well given the breadth and complexity of the issues on which Responding Party has been asked to designate corporate representatives.

20.     Nothing contained in these objections constitutes or shall be construed as an admission or acknowledgement that the Areas of Inquiry or any testimony elicited thereunder is relevant, material or admissible at trial.

21.     Responding Party reserve the right to modify, amend, or supplement its responses, which are made based on the current status of its knowledge, understanding, and belief.  The investigation of facts and information relating to these requests is continuing and, therefore, these responses are not intended as an admission or representation that additional information does not exist.

## SPECIFIC OBJECTIONS AND RESPONSES

### Area of Inquiry No. 1:

The existence, nature, scope, meaning and intent of drilling contracts, service agreements, mineral lease and/or mineral rights and/or royalty agreements, joint operation and/or exploration and/or production and/or joint-venture agreements, indemnity agreements, and/or charter agreements, relating or pertaining to the Macondo Prospect, the Deepwater Horizon, and/or the Macondo Well, including, but not limited to, contracts and/or agreements with: (a) Minerals

Management Services ("MMS"); (b) Anadarko; (c) MOEX; (d) BP; (e) Halliburton (and/or Sperry); (f) MI LLC and/or MI-Swaco; (g) Transocean; and/or (h) Schlumberger.

**Response to Area of Inquiry No. 1:**

Weatherford incorporates its General Objections.  Weatherford objects to this Area of Inquiry to the extent it seeks, or may be interpreted to seek, disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege.  Weatherford never operated or controlled any aspect of the operations at the Macondo Well, including the Deepwater Horizon's operations.  As BP was the operator of the Macondo Well, all or a portion of this topic is properly directed to BP, not Weatherford.  Weatherford further objects to this Area of Inquiry which requests information regarding "[t]he existence, nature, scope, meaning and intent of drilling contracts service agreements, mineral lease and/or mineral rights and/or royalty agreements, joint operation and/or exploration and/or production and/or joint-venture agreements, indemnity agreements, and/or charter agreements, relating or pertaining to the Macondo Prospect, the Deepwater Horizon, and/or the Macondo Well, including, but not limited to, contracts and/or agreements with: (a) Minerals Management Services ("MMS"); (b) Anadarko; (c) MOEX; (d) BP; (e) Halliburton (and/or Sperry); (f) MI LLC and/or MI-Swaco; (g) Transocean; and/or (h) Schlumberger" as overly broad, ambiguous, and on the grounds that the written agreements speak for themselves and are the best evidence of their content.

Subject to and without waiving these objections, Weatherford states that it has no information regarding "drilling contracts", "mineral lease and/or mineral rights and/or royalty agreements," "joint operation and/or exploration and/or production and/or joint venture agreements," and/or "charter agreements", relating to or pertaining to the Macondo Prospect, the Deepwater Horizon and/or the Macondo Well.  Weatherford has limited information regarding

"service agreements and/or "indemnity agreements" relating to work on the Macondo Well and will produce Mike Hayes, Weatherford's Vice President U.S. Gulf Coast Region, to testify as to non-privileged responsive information regarding these topics.

**Area of Inquiry No. 2:**

The existence, nature, scope, coverages, exclusions, defenses, applications, renewals, binders, endorsements, underwriting submissions and/or audits and/or investigations, claims, primary contacts, reservation of rights letters, relating and/or in any way pertaining to policies or contracts of insurance and/or indemnity, which may provide primary, excess, umbrella liability, professional services, errors and omissions, professional services, environmental, and/or any other type of coverage and/or indemnity to Weatherford and/or the Plaintiffs and/or any other Defendants with respect to the Deepwater Horizon and/or Macondo Well blow-out, explosion, fire and/or oil spill.

**Response to Area of Inquiry No. 2:**

Weatherford incorporates its General Objections.  Weatherford objects to this Area of Inquiry to the extent it seeks, or may be interpreted to seek, disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle, or any other applicable privilege.  Weatherford further objects to this Area of Inquiry because the request for information regarding "[t]he existence, nature, scope, coverages, exclusions, defenses, applications, renewals, binders, endorsements, underwriting submissions and/or audits and/or investigation, claims, primary contacts, reservation of rights letters relating and/or in any way pertaining to policies or contracts of insurance and/or indemnity, which may provide primary, excess, umbrella liability, professional services, errors and omissions, professional services, environmental, and/or any other type of coverage and/or indemnity to Weatherford and/or the Plaintiffs and/or any other Defendants with respect to the Deepwater Horizon and/or Macondo Well blow-out, explosion, fire and/or oil spill" as overly broad and burdensome; the written insurance policies speak for themselves and are the best evidence of

their contents; and that Weatherford's communications with its insurers are privilege subject to a joint defense privilege and/or work product or prepared in anticipation of litigation privilege.

Subject to and without waiving these objections, Weatherford will produce Mike Gallien, Weatherford's Director,   Risk Management, to testify as to non-privileged responsive information.

**Area of Inquiry No. 3:**

The existence, nature, scope and contents of any and all Failure Modes Effects and Critical Analysis, Quantified Risk Assessment ("QRA") and/or Major Accident Risk ("MAR") analysis or evaluation relating to (i) the Deepwater Horizon, and/or (ii) the exploration, development, production and/or drilling of (a) the Macondo Well, and/or (b) deepwater drilling in the Gulf of Mexico.

**Response to Area of Inquiry No. 3:**

Weatherford incorporates its General Objections.  Weatherford objects to the request for information regarding "[t]he existence, nature, scope and contents of any and all Failure Modes Effects and Critical Analysis, Quantified Risk Assessment ("QRA") and/or Major Accident Risk ("MAR") analysis or evaluation relating to (i) the Deepwater Horizon, and/or (ii) the exploration, development, production" as being overly broad and burdensome.

Subject to and without waiving these objections, Weatherford states that it has no information on this topic.

**Area of Inquiry No. 4:**

The existence, nature and substance of economic, financial, accounting, or other evaluations, projections or analyses of (and/or communications regarding) the anticipated, projected or potential income, revenue and/or profit anticipated or expected to be realized from the Macondo Prospect (Mississippi Canyon Block 252).

**Response to Area of Inquiry No. 4:**

Weatherford incorporates its General Objections.  Weatherford objects to the request for information regarding "[t]he existence, nature, scope and substance of economic, financial,

accounting, or other evaluations, projections or analyses of (and/or communications regarding) the anticipated, projected or potential income, revenue and/or profit anticipated or expected to be realized from the Macondo Prospect (Mississippi Canyon Block 252) as being overly broad and burdensome.

Subject to and without waiving these objections, Weatherford states that it has no information on this topic.

**Area of Inquiry No. 5:**

The existence, nature and substance of mud log communications and/or analyses, and/or post-mud log communications and/or analyses, regarding the commercial viability of the Macondo Prospect (Mississippi Canyon Block 252).

**Response to Area of Inquiry No. 5:**

Weatherford incorporates its General Objections.  Weatherford objects to the request for information regarding "[t]he existence, nature, and substance of mud log communications and/or analyses, and/or post-mud log communications and/or analyses, regarding the commercial viability of the Macondo Prospect (Mississippi Canyon Block 252)" as being overly broad and burdensome.

Subject to and without waiving these objections, Weatherford states that it has no information on this topic.

**Area of Inquiry No. 6:**

The existence, nature, scope, and response to any and all requests for documents (and/or ESI), and/or any documents (and/or ESI) exchanged, at any time from April 20, 2010 to September 30, 2010, between and/or among Weatherford and any other one or more Defendants.

**Response to Area of Inquiry No. 6:**

Weatherford incorporates its General Objections.  Weatherford objects to the request for information regarding "[t]he existence, nature, scope, and response to any and all requests for documents (and/or ESI), and/or any documents (and/or ESI) exchanged, at any time from April

20, 2010 to September 30, 2010, between and/or among Weatherford and any other one or more Defendants" as being overly broad and burdensome.

Subject to and without waiving these objections, Weatherford will produce Mike Hayes, Weatherford's Vice President U.S. Gulf Coast Region, to testify as to non-privileged responsive information regarding these topics.

**Area of Inquiry No. 7:**

The existence, nature, scope, access and/or use of any and all real-time data feeds, data dumps, or other electronic communications to, from and/or regarding the navigational, drilling, completion, temporary abandonment or other operations of the Deepwater Horizon and/or the Macondo Well, including, but not limited to, the "Hitec" system, and/or the "INSITE" (or "Sperry Sun") real-time feed data that was transmitted from the Deepwater Horizon.

**Response to Area of Inquiry No. 7:**

Weatherford incorporates its General Objections.  Weatherford objects to this Area of Inquiry to the extent it seeks, or may be interpreted to seek, disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege.  Weatherford further objects to the request for information regarding "[t]he existence, nature, scope, access and/or use of any and all real-time data feeds, data dumps, or other electronic communications to, from and/or regarding the navigational, drilling, completion, temporary abandonment or other operations of the Deepwater Horizon and/or the Macondo Well, including, but not limited to, the "Hitec" system, and/or the "INSITE" (or "Sperry Sun") real-time feed data that was transmitted from the Deepwater Horizon" as being overly broad and burdensome.

Subject to and without waiving these objections, Weatherford states that it had no access to any real time data regarding the Deepwater Horizon and/or the Macondo Well but has limited information regarding the "Hitec" system and will produce Mike Hayes, Weatherford's Vice

President U.S. Gulf Coast Region, to testify as to non-privileged responsive information regarding these topics.

**Area of Inquiry No. 8:**

The existence, nature and contents of any discussions with BP, MOEX, Anadarko, Transocean, Halliburton (and/or Sperry) and/or Cameron regarding the potential costs, risks, benefits and other analyses or evaluations of potential methods to cap, control, contain, shut-in and/or kill the Macondo Well after April 20, 2010.

**Response to Area of Inquiry No. 8:**

Weatherford incorporates its General Objections.  Weatherford objects to this Area of Inquiry to the extent it seeks, or may be interpreted to seek, disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege.  Weatherford further objects to the request for information regarding "[t]he existence, nature, and contents of any discussions with BP, MOEX, Anadarko, Transocean, Halliburton (and/or Sperry) and/or Cameron regarding the potential costs, risks, benefits and other analyses or evaluations of potential methods to cap, control, contain, shut-in and/or kill the Macondo Well after April 20, 2010" as being overly broad and burdensome.

Subject to and without waiving these objections, Weatherford will produce Mike Hayes, Weatherford's Vice President U.S. Gulf Coast Region, to testify as to non-privileged responsive information regarding these topics.

**Area of Inquiry No. 9:**

The existence, nature, scope, contents and results of any and all geological, technical, engineering, professional, management, economic and/or other testing, evaluation, study and/or analysis of any potential method or technique to cap, control, contain, shut-in and/or kill the Macondo Well after April 20, 2010, including the possible risks, benefits or other consequences thereof.

**Response to Area of Inquiry No. 9:**

Weatherford incorporates its General Objections. Weatherford objects to this Area of Inquiry to the extent it seeks, or may be interpreted to seek, disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege. Weatherford further objects to the request for information regarding "[t]he existence, nature, scope, contents and results of any and all geological, technical, engineering, professional, management, economic and/or other testing, evaluation, study and/or analysis of any potential method or technique to cap, control, contain, shut-in and/or kill the Macondo Well after April 20, 2010, including the possible risks, benefits or other consequences thereof" as being overly broad and burdensome.

Subject to and without waiving these objections, Weatherford will produce Mike Hayes, Weatherford's Vice President U.S. Gulf Coast Region, to testify as to non-privileged responsive information regarding these topics.

**Area of Inquiry No. 10:**

The existence, nature, scope, contents, and results of discussions, evaluations and/or analysis regarding the decision to use the "long string" as opposed to the "liner" casing, between approximately April 10 and April 20, 2010, at the Macondo Well.

**Response to Area of Inquiry No. 10:**

Weatherford incorporates its General Objections. Weatherford objects to this Area of Inquiry to the extent it seeks, or may be interpreted to seek, disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege. Weatherford further objects to the request for information regarding "[t]he existence, nature, scope, contents and results of discussions, evaluations and/or analysis regarding the decision to use the "long string" as opposed to the

"liner" casing, between approximately April 10 and April 20, 2010, at the Macondo Well" as being overly broad and burdensome.

Subject to and without waiving these objections, Weatherford will produce Mike Hayes, Weatherford's Vice President U.S. Gulf Coast Region, to testify as to non-privileged responsive information regarding these topics.

## Area of Inquiry No. 11:

The existence, nature, scope, contents, and results of discussions, evaluations and/or analysis regarding the decision to comply with and/or deviate from the BP standard, guideline, recommendation, requirement and/or protocol that the top of the annular cement be 1,000 feet above the uppermost hydrocarbon zone, between approximately April 10 and April 20, 2010, at the Macondo Well.

## Response to Area of Inquiry No. 11:

Weatherford incorporates its General Objections.  Weatherford objects to this Area of Inquiry to the extent it seeks, or may be interpreted to seek, disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege.  Weatherford further objects to the request for information regarding "[t]he existence, nature, scope, contents, and results of discussions, evaluations and/or analysis regarding the decision to comply with and/or deviate from the BP standard, guideline, recommendation, requirement and/or protocol that the top of the annular cement be 1,000 feet above the uppermost hydrocarbon zone, between approximately April 10 and April 20, 2010, at the Macondo Well" as being overly broad and burdensome.

Subject to and without waiving these objections, Weatherford states that it has no information on this topic.

## Area of Inquiry No. 12:

The existence, nature, scope, results (and/or any reporting, communication, discussion, analysis or evaluation of) any and all actual and/or contemplated foam stability tests and/or cement testing, performed by anyone, relating or in any way pertaining to the drilling,

exploration, development and/or production project at the Macondo Well, either before the April 20 blow-out, or after.

**Response to Area of Inquiry No. 12:**

Weatherford incorporates its General Objections.  Weatherford objects to this Area of Inquiry to the extent it seeks, or may be interpreted to seek, disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege.  Weatherford further objects to the request for information regarding "[t]he existence, nature, scope, results (and/or any reporting, communication, discussion, analysis or evaluation of) any and all actual and/or contemplated foam stability tests and/or cement testing, performed by anyone, relating or in any way pertaining to the drilling, exploration, development and/or production project at the Macondo Well, either before the April 20 blow-out, or after" as being overly broad and burdensome.

Subject to and without waiving these objections, Weatherford states that it has no information on this topic.

**Area of Inquiry No. 13:**

The existence, nature, scope, contents, and results of discussions, evaluations and/or analyses regarding the decision not to conduct or prepare cement bond logs, on or around April 20, 2010, at the Macondo Well.

**Response to Area of Inquiry No. 13:**

Weatherford incorporates its General Objections.  Weatherford objects to this Area of Inquiry to the extent it seeks, or may be interpreted to seek, disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege.  Weatherford further objects to the request for information regarding "[t]he existence, nature, scope, contents, and results of discussions,

evaluations and/or analyses regarding the decision not to conduct or prepare cement bond logs, on or around April 20, 2010, at the Macondo Well" as being overly broad and burdensome.

Subject to and without waiving these objections, Weatherford states that it has no information on this topic.

**Area of Inquiry No. 14:**

The existence, nature, scope, contents, and results of discussions, evaluations and/or analysis regarding the decision to comply with and/or deviate from MMS Regulations regarding the placement of the cement plug in relation to the ocean floor (or "mud line"), between approximately April 10 and April 20, 2010, at the Macondo Well.

**Response to Area of Inquiry No. 14:**

Weatherford incorporates its General Objections.  Weatherford objects to this Area of Inquiry to the extent it seeks, or may be interpreted to seek, disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege.  Weatherford further objects to the request for information regarding "[t]he existence, nature, scope, contents, and results of discussions, evaluations and/or analysis regarding the decision to comply with and/or deviate from MMS Regulations regarding the placement of the cement plug in relation to the ocean floor (or "mud line"), between approximately April 10 and April 20, 2010, at the Macondo Well" as being overly broad and burdensome.

Subject to and without waiving these objections, Weatherford states that it has no information on this topic.

**Area of Inquiry No. 15:**

Communications or discussions with BP and/or Transocean and/or Halliburton and/or APC, AEC, MOEX Offshore, MOEX USA and/or MOECO, and/or other knowledge, input, participation and/or review of BP's Application for Permit to Modify the temporary abandonment procedure on or around April 16, 2010, including the deviations, if any, between that procedure and the procedure(s) described in (a) the April 12, 2010 Drilling Plan, (b) the April 14, 2010 Morel "Forward Ops" E-Mail, or (c) the April 20, 2010 "Ops Note".

**Response to Area of Inquiry No. 15:**

Weatherford incorporates its General Objections.  Weatherford objects to this Area of Inquiry to the extent it seeks, or may be interpreted to seek, disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege.  Weatherford further objects to the request for "[c]ommunications or discussions with BP and/or Transocean and/or Halliburton and/or APC, AEC, MOEX Offshore, MOEX USA and/or MOECO, and/or other knowledge, input, participation and/or review of BP's Application for Permit to Modify the temporary abandonment procedure on or around April 16, 2010, including the deviations, if any, between that procedure and the procedure(s) described in (a) the April 12, 2010 Drilling Plan, (b) the April 14, 2010 Morel "Forward Ops" E-Mail, or (c) the April 20, 2010 "Ops Note"" as being overly broad and burdensome.

Subject to and without waiving these objections, Weatherford states that it has no information on this topic.

**Area of Inquiry No. 16:**

Communications or discussions with BP and/or Halliburton and/or Transocean and/or Anadarko and/or MOEX, and/or other knowledge, evaluation and/or analyses of a so-called "bladder effect".

**Response to Area of Inquiry No. 16:**

Weatherford incorporates its General Objections.  Weatherford objects to this Area of Inquiry to the extent it seeks, or may be interpreted to seek, disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege.  Weatherford further objects to the request for "[c]ommunications or discussions with BP and/or Halliburton and/or Transocean and/or

Anadarko and/or MOEX, and/or other knowledge, evaluation and/or analyses of a so-called 'bladder effect'" as being overly broad and burdensome.

Subject to and without waiving these objections, Weatherford states that it has no information on this topic.

**Area of Inquiry No. 17:**

The existence, nature, scope, contents, and results of discussions, evaluations and/or analysis regarding the decision(s) made by BP and/or Halliburton and/or Weatherford regarding the nature and/or number of centralizers used at the Macondo Well, between approximately April 18, 2010, and April 20, 2010.

**Response to Area of Inquiry No. 17:**

Weatherford incorporates its General Objections.  Weatherford objects to this Area of Inquiry to the extent it seeks, or may be interpreted to seek, disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege.  Weatherford further objects to the request for information regarding "[t]he existence, nature, scope, contents, and results of discussions, evaluations and/or analysis regarding the decision(s) made by BP and/or Halliburton and/or Weatherford regarding the nature and/or number of centralizers used at the Macondo Well, between approximately April 18, 2010, and April 20, 2010" as being overly broad and burdensome.

Subject to and without waiving these objections, Weatherford will produce Bryan R. Clawson, Weatherford's Cementation Sales, to testify as to non-privileged responsive information regarding these topics.

**Area of Inquiry No. 18:**

The existence, nature, scope, contents, and results of discussions, evaluations and/or analysis regarding the use of float valves at the Macondo Well between April 10, 2010, and April 20, 2010.

**Response to Area of Inquiry No. 18:**

Weatherford incorporates its General Objections.  Weatherford objects to this Area of Inquiry to the extent it seeks, or may be interpreted to seek, disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege.  Weatherford further objects to the request for information regarding "[t]he existence, nature, scope, contents, and results of discussions, discussions, evaluations and/or analysis regarding the use of float valves at the Macondo Well between April 10, 2010, and April 20, 2010" as being overly broad and burdensome.

Subject to and without waiving these objections, Weatherford will produce Bryan R. Clawson, Weatherford's Cementation Sales, to testify as to non-privileged responsive information regarding these topics.

**Area of Inquiry No. 19:**

The existence, nature, scope, contents, and results of discussions, evaluations and/or analysis regarding the appropriate flow rate and/or volume of drilling mud and/or spacer and/or cement at the Macondo Well, between approximately April 18, 2010, and April 20, 2010.

**Response to Area of Inquiry No. 19:**

Weatherford incorporates its General Objections.  Weatherford objects to this Area of Inquiry to the extent it seeks, or may be interpreted to seek, disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege.  Weatherford further objects to the request for information regarding "[t]he existence, nature, scope, contents, and results of discussions, evaluations and/or analysis regarding the appropriate flow rate and/or volume of drilling mud and/or spacer and/or cement at the Macondo Well, between approximately April 18, 2010, and April 20, 2010" as being overly broad and burdensome.

Subject to and without waiving these objections, Weatherford states that it has no information on this topic.

## Area of Inquiry No. 20:

The existence, nature, scope, contents, and results of discussions, evaluations and/or analysis regarding the decision(s) made by BP and/or Halliburton and/or Weatherford regarding the nature and/or number of float collars used at the Macondo Well, between approximately April 18, 2010, and April 20, 2010, including but not limited to the advantages and disadvantages of different float collar designs, including designs using ball valves, flapper valves, and poppet valves, and the storage, shipping and handling of the Weatherford float collars used at the Macondo well.

## Response to Area of Inquiry No. 20:

Weatherford incorporates its General Objections. Weatherford objects to this Area of Inquiry to the extent it seeks, or may be interpreted to seek, disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege. Weatherford further objects to the request for information regarding "[t]he existence, nature, scope, contents, and results of discussions, evaluations and/or analysis regarding the decision(s) made by BP and/or Halliburton and/or Weatherford regarding the nature and/or number of float collars used at the Macondo Well, between approximately April 18, 2010, and April 20, 2010, including but not limited to the advantages and disadvantages of different float collar designs, including designs using ball valves, flapper valves, and poppet valves, and the storage, shipping and handling of the Weatherford float collars used at the Macondo well" as being overly broad and burdensome. Weatherford further objects to this Area of Inquiry as vague and ambiguous. It is Weatherford's understanding that this topic is limited to any actual discussions, evaluations, and/or analyses which took place.

Subject to and without waiving these objections, Weatherford will produce Bryan R. Clawson, Weatherford's Cementation Sales, to testify as to non-privileged responsive information regarding these topics.

**Area of Inquiry No. 21:**

The existence, nature, scope, contents, and results of discussions, evaluations and/or analysis regarding the decision made by BP and/or the recommendations of Weatherford and/or Halliburton regarding the volume or flow rate of cement pumped down into the well from April 18 to April 20, 2010.

**Response to Area of Inquiry No. 21:**

Weatherford incorporates its General Objections.  Weatherford objects to this Area of Inquiry to the extent it seeks, or may be interpreted to seek, disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege.  Weatherford further objects to the request for information regarding "[t]he existence, nature, scope, contents, and results of discussions, evaluations and/or analysis regarding the decision made by BP and/or the recommendations of Weatherford and/or Halliburton regarding the volume or flow rate of cement pumped down into the well from April 18 to April 20, 2010" as being overly broad and burdensome.

Subject to and without waiving these objections, Weatherford states that it has no information on this topic.

**Area of Inquiry No. 22:**

The extraction, handling, storage, chain-of-custody documentation, physical property documentation, analysis, evaluation and/or testing of the Blow-Out Preventer ("BOP") on the Deepwater Horizon on April 20, 2010.

**Response to Area of Inquiry No. 22:**

Weatherford incorporates its General Objections.  Weatherford objects to this Area of Inquiry to the extent it seeks, or may be interpreted to seek, disclosure of information protected

by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege.  Weatherford further objects to the request for information regarding "[t]he extraction, handling, storage, chain-of-custody documentation, physical property documentation, analysis, evaluation and/or testing of the Blow-Out Preventer ("BOP") on the Deepwater Horizon on April 20, 2010" as being overly broad and burdensome.

Subject to and without waiving these objections, Weatherford states that it has no information on this topic.

**Area of Inquiry No. 23:**

Any and all communications or discussions between or among You, BP, Halliburton, Transocean, Anadarko, MOEX, and/or any other knowledge or experience You have regarding the estimated, budgeted, expected and/or actual time and/or cost savings realized by:

a.  Number and Nature of Centralizers Utilized
b.  Foregoing Substantiated Foam Stability Test Results
c.  Not Running Cement Bond or other Evaluation Log
d.  Using Spacer Made from Combined Lost Circulation Materials to Avoid Disposal Issues
e.  Displacing Mud from Riser Before Setting Surface Cement Plug
f.  Setting Surface Cement Plug 3,000 Feet Below Mud Line in Seawater
g.  Not Installing Additional Barriers During Temporary Abandonment Procedure
h.  Not Performing Further Well Integrity Diagnostics in Light of Troubling and Unexpected Negative Pressure Test Results
i.  Bypassing Pits and Conducting Other Simultaneous Operations During Displacement

**Response to Area of Inquiry No. 23:**

Weatherford incorporates its General Objections.  Weatherford objects to this Area of Inquiry to the extent it seeks, or may be interpreted to seek, disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege.  Weatherford further objects to the request as being overly broad and burdensome.

Weatherford states it has limited information regarding Topic 23(a) and will produce Bryan R. Clawson, Weatherford's Cementation Sales, to testify to testify as to Topic 23(a) only. Weatherford has no information on any of the other topics in Area of Inquiry No. 23.

**Area of Inquiry No. 24:**

The presence, participation, supervision or other involvement of officers, directors or other employees of BP plc: (i) in the exploration, development, drilling and/or production of the Macondo Well, from January 1, 2010 thru April 20, 2010; (ii) in the advertising and/or public relations effort directed to and/or conducted within the United States from April 20, 2010, thru the present; (iii) in responding to Federal, State and/or Local executive, legislative and/or regulatory officers, bodies and/or agencies within the United States from April 20, 2010, thru the present; (iv) in the well-control, containment, capping and/or kill efforts regarding the Macondo Well, from April 20, 2010 thru August of 2010; and/or (v) in the establishment, maintenance, staffing, funding and/or administration of the BP Claims Facility and/or Gulf Coast Claims Facility.

**Response to Area of Inquiry No. 24:**

Weatherford incorporates its General Objections.  Weatherford objects to this Area of Inquiry to the extent it seeks, or may be interpreted to seek, disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege.  Weatherford further objects to the request for information regarding "[t]he presence, participation, supervision or other involvement of officers, directors or other employees of BP plc: (i) in the exploration, development, drilling and/or production of the Macondo Well, from January 1, 2010 thru April 20, 2010; (ii) in the advertising and/or public relations effort directed to and/or conducted within the United States from April 20, 2010, thru the present; (iii) in responding to Federal, State and/or Local executive, legislative and/or regulatory officers, bodies and/or agencies within the United States from April 20, 2010, thru the present; (iv) in the well-control, containment, capping and/or kill efforts regarding the Macondo Well, from April 20, 2010 thru August of 2010; and/or (v) in the

establishment, maintenance, staffing, funding and/or administration of the BP Claims Facility and/or Gulf Coast Claims Facility" as being overly broad and burdensome.

Subject to and without waiving these objections, Weatherford states that it has no information on this topic.

**Area of Inquiry No. 25:**

The presence, participation, supervision or other involvement of officers, directors or other employees of Transocean Ltd: (i) in the exploration, development, drilling and/or production of the Macondo Well, from January 1, 2010 thru April 20, 2010; (ii) in responding to Federal, State and/or Local executive, legislative and/or regulatory officers, bodies and/or agencies within the United States from April 20, 2010, thru the present; (iii) in the well-control, containment, capping and/or kill efforts regarding the Macondo Well, from April 20, 2010 thru August of 2010.

**Response to Area of Inquiry No. 25:**

Weatherford incorporates its General Objections.  Weatherford objects to this Area of Inquiry to the extent it seeks, or may be interpreted to seek, disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege.  Weatherford further objects to the request for information regarding "[t]he presence, participation, supervision or other involvement of officers, directors or other employees of Transocean Ltd: (i) in the exploration, development, drilling and/or production of the Macondo Well, from January 1, 2010 thru April 20, 2010; (ii) in responding to Federal, State and/or Local executive, legislative and/or regulatory officers, bodies and/or agencies within the United States from April 20, 2010, thru the present; (iii) in the well-control, containment, capping and/or kill efforts regarding the Macondo Well, from April 20, 2010 thru August of 2010" as being overly broad and burdensome.

Subject to and without waiving these objections, Weatherford states that it has no information on this topic.

**Area of Inquiry No. 26:**

The presence, participation, supervision or other involvement of officers, directors or other employees of Anadarko, MOEX, MOECO and/or Mitsui: (i) in the exploration, development, drilling and/or production of the Macondo Well, from January 1, 2010 thru April 20, 2010; (ii) in the advertising and/or public relations effort directed to and/or conducted within the United States from April 20, 2010, thru the present; (iii) in responding to Federal, State and/or Local executive, legislative and/or regulatory officers, bodies and/or agencies within the United States from April 20, 2010, thru the present; (iv) in the well-control, containment, capping and/or kill efforts regarding the Macondo Well, from April 20, 2010 thru August of 2010; and/or (v) in the establishment, maintenance, staffing, funding and/or administration of the BP Claims Facility and/or Gulf Coast Claims Facility.

**Response to Area of Inquiry No. 26:**

Weatherford incorporates its General Objections.  Weatherford objects to this Area of

Inquiry to the extent it seeks, or may be interpreted to seek, disclosure of information protected

by the attorney-client privilege, the attorney work product doctrine, the common interest

principle or any other applicable privilege.  Weatherford further objects to the request for

information regarding "[t]he presence, participation, supervision or other involvement of

officers, directors or other employees of Anadarko, MOEX, MOECO and/or Mitsui: (i) in the

exploration, development, drilling and/or production of the Macondo Well, from January 1, 2010

thru April 20, 2010; (ii) in the advertising and/or public relations effort directed to and/or

conducted within the United States from April 20, 2010, thru the present; (iii) in responding to

Federal, State and/or Local executive, legislative and/or regulatory officers, bodies and/or

agencies within the United States from April 20, 2010, thru the present; (iv) in the well-control,

containment, capping and/or kill efforts regarding the Macondo Well, from April 20, 2010 thru

August of 2010; and/or (v) in the establishment, maintenance, staffing, funding and/or

administration of the BP Claims Facility and/or Gulf Coast Claims Facility" as being overly

broad and burdensome.

Subject to and without waiving these objections, Weatherford states that it has no information on this topic.

**Area of Inquiry No. 27:**

The presence, participation, supervision or other involvement of officers, directors or other employees of Weatherford International Ltd: (i) in the exploration, development, drilling and/or production of the Macondo Well, from January 1, 2010 thru April 20, 2010; (ii) in responding to Federal, State and/or Local executive, legislative and/or regulatory officers, bodies and/or agencies within the United States from April 20, 2010, thru the present; (iii) in the well-control, containment, capping and/or kill efforts regarding the Macondo Well, from April 20, 2010 thru August of 2010.

**Response to Area of Inquiry No. 27:**

Weatherford incorporates its General Objections.  Weatherford objects to this Area of Inquiry to the extent it seeks, or may be interpreted to seek, disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege.  Weatherford further objects to the request for information regarding "[t]he presence, participation, supervision or other involvement of officers, directors or other employees of Weatherford International Ltd: (i) in the exploration, development, drilling and/or production of the Macondo Well, from January 1, 2010 thru April 20, 2010; (ii) in responding to Federal, State and/or Local executive, legislative and/or regulatory officers, bodies and/or agencies within the United States from April 20, 2010, thru the present; (iii) in the well-control, containment, capping and/or kill efforts regarding the Macondo Well, from April 20, 2010 thru August of 2010" as being overly broad, burdensome and ambiguous. Weatherford further objects on the grounds that Weatherford U.S., L.P. is the only party to this proceeding and is a separate and distinct entity from Weatherford International, Ltd.

Subject to and without waiving these objections, Weatherford will produce Mike Gallien, Weatherford's Director,   Risk Management, to testify as to non-privileged responsive information.

**Area of Inquiry No. 28:**

The activities, investments, offices, operations, advertising, marketing, sales, ownership or lease of real or immovable property, registration or enforcement of trademarks or tradenames or patents or copyrights or other intellectual property, lawsuits, regulatory action, or other conduct or activities of Weatherford International Ltd directed to or within the United States from 2000 to the present.

**Response to Area of Inquiry No. 28:**

Weatherford incorporates its General Objections.  Weatherford objects to this Area of Inquiry to the extent it seeks, or may be interpreted to seek, disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege.  Weatherford further objects to the request for information regarding "[t]he activities, investments, offices, operations, advertising, marketing, sales, ownership or lease of real or immovable property, registration or enforcement of trademarks or tradenames or patents or copyrights or other intellectual property, lawsuits, regulatory action, or other conduct or activities of Weatherford International Ltd directed to or within the United States from 2000 to the present" as being overly broad, burdensome and ambiguous.  Weatherford further objects on the grounds that Weatherford U.S., L.P. is the only party to this proceeding and is a separate and distinct entity from Weatherford International, Ltd.

Subject to and without waiving these objections, Weatherford will produce Mike Gallien, Weatherford's Director,   Risk Management, to testify as to non-privileged responsive information.

**Area of Inquiry No. 29:**

Studies, reports, and/or analyses of failure modes relating to all versions of the M45 Weatherford auto-fill float collar devices, including the float collar supplied by Weatherford to BP for use in the production casing on the Macondo well, including materials generated both pre- and post incident.

**Response to Area of Inquiry No. 29:**

Weatherford incorporates its General Objections.  Weatherford objects to this Area of Inquiry to the extent it seeks, or may be interpreted to seek, disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege.

Subject to and without waiving these objections, Weatherford will produce Brent J. Lirette, Weatherford's Global Engineering Manager, to testify as to non-privileged responsive information.

**Area of Inquiry No. 30:**

Development, design, production, and failure testing, including testing of conversion and pressure variables, of all versions of the M45 Weatherford auto-fill float collar device supplied by Weatherford to BP for use in the production casing on  the Macondo Well.

**Response to Area of Inquiry No. 30:**

Weatherford incorporates its General Objections.  Weatherford objects to this Area of Inquiry to the extent it seeks, or may be interpreted to seek, disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege.  Weatherford further objects to the request for information regarding "[d]evelopment, design, production, and failure testing, including testing of conversion and pressure variables, of all version of the type of auto-fill float collar device utilized on the Macondo Well" as being overly broad and burdensome.

Subject to and without waiving these objections, Weatherford will produce Brent J. Lirette, Weatherford's Global Engineering Manager, to testify as to non-privileged responsive information.

**Area of Inquiry No. 31:**

Any communications between you and APC, AEP, MOEX Offshore, MOEX USA, or MOECO regarding any of the preceding issues.

**Response to Area of Inquiry No. 31:**

Weatherford incorporates its General Objections.  Weatherford objects to this Area of Inquiry to the extent it seeks, or may be interpreted to seek, disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege.  Weatherford further objects to the request for information regarding "[a]ny communications between you and APC, AEP, MOEX Offshore, MOEX USA, or MOECO regarding any of the preceding issues" as being overly broad and burdensome.

Subject to and without waiving these objections, Weatherford states that it has no information on this topic.

**Area of Inquiry No. 32:**

Any knowledge that you have of any involvement by APC, AEP, MOEX Offshore, MOEX USA, or MOECO in any of the preceding issues.

**Response to Area of Inquiry No. 32:**

Weatherford incorporates its General Objections.  Weatherford objects to this Area of Inquiry to the extent it seeks, or may be interpreted to seek, disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege.  Weatherford further objects to the request for information regarding "[a]ny knowledge that you have of any involvement by APC, AEP, MOEX Offshore, MOEX USA, or MOECO in any of the preceding issues" as being overly broad and burdensome.

Subject to and without waiving these objections, Weatherford states that it has no information on this topic.

**Area of Inquiry No. 33:**

Defect and/or failure data for float collars produced in the same batch or group as the M45AP float collar installed on the long-string casing at the Macondo well, or if float collars are made to order then the data for the ten M45AP float collars manufactured before and after the float collar used at Macondo, including any literature and support provided for Weatherford's M45AP float collar, including material describing features, specifications, instructions for use and warnings.

**Response to Area of Inquiry No. 33:**

Weatherford incorporates its General Objections.  Weatherford objects to this Area of Inquiry to the extent it seeks, or may be interpreted to seek, disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege.  Weatherford further objects to the request for information regarding "[d]efect and/or failure data for float collars produced in the same batch or group as the M45AP float collar installed on the long-string casing at the Macondo well, or if float collars are made to order then the data for the ten M45AP float collars manufactured before and after the float collar used at Macondo, including any literature and support provided for Weatherford's M45AP float collar, including material describing features, specifications, instructions for use and warnings" as being overly broad and burdensome.

Subject to and without waiving these objections, Weatherford will produce Brent J. Lirette, Weatherford's Global Engineering Manager, to testify as to non-privileged responsive information.

**Area of Inquiry No. 34:**

The assembly of the long-string casing at the Macondo well, including assembly of the guide shoe, float collar and centralizers onto the casing.

**Response to Area of Inquiry No. 34:**

Weatherford incorporates its General Objections.  Weatherford objects to this Area of Inquiry to the extent it seeks, or may be interpreted to seek, disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege.  Weatherford further objects to the request for information regarding "[t]he assembly of the long-string casing at the Macondo well, including assembly of the guide shoe, float collar and centralizers onto the casing" as being overly broad and burdensome.

Subject to and without waiving these objections, Weatherford will produce Mike Hayes, Weatherford's Vice President U.S. Gulf Coast Region, to testify as to non-privileged responsive information regarding these topics.

Respectfully submitted,

/s/ *Glenn G. Goodier*
GLENN G. GOODIER (#06130) – Lead Counsel
RICHARD D. BERTRAM (#17881)
EDWARD D. WEGMANN (#13315)
WILLIAM C. BALDWIN (#31613)
TARAK ANADA (#31598)
BRETT VENN (# 32943)
Jones, Walker, Waechter, Poitevent,
  Carrère & Denègre, L.L.P.
Place St. Charles – 48th Floor
201 St. Charles Avenue
New Orleans, Louisiana 70170-5100
Telephone: (504) 582-8174
Fax: (504) 589-8174
Email: ggoodier@joneswalker.com;
rbertram@joneswalker.com;
dwegmann@joneswalker.com;
wbaldwin@joneswalker.com;
tanada@joneswalker.com;
bvenn@joneswalker.com

MICHAEL G. LEMOINE (#8308)
GARY J. RUSSO (#10828)
DOUGLAS C. LONGMAN, JR. (#8719)
MEGAN E. DONOHUE (#32429)
Jones, Walker, Waechter, Poitevent,
  Carrère & Denègre, L.L.P.
600 Jefferson Street – Suite 1600
Lafayette, Louisiana 70501
Telephone: (337) 262-9101
Fax: (337) 262-9001
Email: mlemoine@joneswalker.com;
grusso@joneswalker.com;
mdonohue@joneswalker.com

And

MICHAEL A. CHERNEKOFF (#01295)
Jones, Walker, Waechter, Poitevent,
  Carrère & Denègre, L.L.P.
JPMorgan Chase Tower
600 Travis, Suite 6601
Houston, Texas 77002
Telephone: (713) 437-1827
Fax: (504) 589-8264
E-Mail: mchernekoff@joneswalker.com.
*Counsel for Weatherford U.S., L.P.*

## CERTIFICATE OF SERVICE

    I hereby certify that the above and foregoing Objections to 30(b)(6) Deposition Notice of Defendant, Weatherford U.S., L.P. has been served on All Counsel by electronically uploading the same to LexisNexis File & Serve in accordance with Pretrial Order No. 12, on this 27th day of May, 2011.


             */s/ Glenn G. Goodier*