UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 <br><br> This Document applies to: <br> *2:10-cv-04536-CJB-SS* <br> (United States v. BP Exploration & Production Inc., *et al.*) | MDL No. 2179 <br><br> SECTION: J <br><br> JUDGE BARBIER <br><br> MAGISTRATE SHUSHAN |

**TRANSOCEAN'S ANSWER TO BP EXPLORATION & PRODUCTION, INC.'S CROSS-CLAIM AND THIRD PARTY COMPLAINT [Dkt. 2075] AND TRANSOCEAN'S RULE 13 CROSS-CLAIMS/COUNTERCLAIMS AND RULE 14 THIRD-PARTY COMPLAINT**

_____

Cross-Defendants and Third-Party Defendants Transocean Offshore Deepwater Drilling Inc., Transocean Deepwater Inc., Transocean Holdings LLC and Triton Asset Leasing GmbH (collectively "Transocean" or "Transocean Defendants")[1] hereby answer BP Exploration & Production, Inc.'s ("BPXP") Cross-Claim and Third Party Complaint against Transocean, **Dkt. 2075**, and, pursuant to Rule 13(a), (b), and (g) and Rule 14 file this Transocean's Cross-Claims/Counterclaims and Third-Party Complaint against BP Exploration & Production Inc., BP America Production Company, BP p.l.c., Halliburton Energy Services, Inc., M-I, LLC, Cameron International Corporation f/k/a Cooper Cameron Corporation, Anadarko Petroleum Corporation, Anadarko E&P Company LP, MOEX Offshore 2007 LLC, MOEX USA Corporation, Mitsui Oil

_____

[1] [1] Transocean Ltd. has filed a motion challenging personal jurisdiction (Docket Number 14/May 17, 2010). In addition, on May 6, 2011, this Court entered a Special Appearance by Transocean Ltd. and Transocean Inc., ordering a standstill of jurisdictional discovery, and allowing counsel to accept service of process without waiver of jurisdiction. (Docket Number 2274).

Exploration Company, Ltd. (a/k/a MOECO), Weatherford International, Inc., Weatherford U.S.L.P., Dril-Quip, Inc., and upon information and belief, respectfully show as follows:

## ANSWER

For each and every allegation of BPXP's Cross-Claim and ThirdParty Complaint, Transocean responds as follows.  When a paragraph in the above Cross-Claim and ThirdParty Complaint contains multiple subparts, the response of Transocean to the paragraph applies equally to all subparts unless otherwise expressly stated.

1.      The Transocean Defendants admit that one or more of them are the Managing Owners, Owners *Pro Hac Vice*, and/or Operators of the *Deepwater Horizon*.  Transocean admits that, on April 20, 2010, the Macondo well blew out and an explosion and fire occurred on the *Deepwater Horizon.*  Transocean admits that 11 vessel workers lost their lives.  Transocean admits that on or about April 22, 2010, the *Deepwater Horizon* sank, and oil flowed into the Gulf of Mexico.  Transocean denies any improper conduct, errors, omissions, and violations of maritime law related to the *Deepwater Horizon.*  Transocean denies any misconduct on its part. Transocean denies BPXP's allegations that on April 20, 2010, every single safety system and device and well control procedure on the *Deepwater Horizon* failed, resulting in the casualty.  To the extent not expressly admitted, Transocean denies all aspects and implications of the allegations in Paragraph 1.

2.      The Transocean Defendants admit that one or more of them are the Managing Owners, Owners *Pro Hac Vice*, and/or Operators of the *Deepwater Horizon*.  The Transocean Defendants deny that any one of them is directly liable for any improper conduct, errors, omissions, and violations of maritime law relating to the *Deepwater Horizon*.  Transocean denies any improper conduct, errors, omissions, and violations of maritime law relating to the *Deepwater Horizon*. Transocean denies BPXP's characterization of Transocean Ltd. and

Transocean Inc. as Transocean's top level corporate entities.  Transocean denies that Transocean Ltd. and Transocean Inc. dominate, control, or are otherwise the alter egos of the Transocean *Deepwater Horizon* Companies.  Transocean denies that Transocean Ltd. and Transocean Inc. are directly responsible for policies and practices that led to the MC-252 well blowout.  To the extent not expressly admitted, Transocean denies all aspects and implications of the allegations in Paragraph 2.

3.      Transocean denies all aspects and implications of the allegations in Paragraph 3.

4.      Transocean denies all aspects and implications of the allegations in Paragraph 4.

5.      Transocean admits that BP America Production Company and TH are parties to a Drilling Contract with an arbitration provision.  Transocean denies that it has waived any rights to arbitrate any aspects of any claims between any BP entities and Transocean relating to the *Deepwater Horizon* incident and resulting oil spill.  To the extent not expressly admitted, Transocean denies all aspects and implications of the allegations in Paragraph 5.

6.      Transocean is without sufficient knowledge or information to form a belief as to whether the assertions set forth in Paragraph 6 are true and, therefore, denies all aspects and implications of the allegations in Paragraph 6.

7.      Transocean admits that TODDI is a Delaware corporation with its principal place of business in Houston, Texas.

8.      Transocean admits that TDI is a Delaware corporation with its principal place of business in Houston, Texas.

9.      Transocean admits that TH is a Delaware limited liability company with its principal place of business in Houston, Texas.

10.     Transocean admits that Triton is a Swiss limited liability company with its principal place of business in Zug, Switzerland.

11.     Transocean admits that Transocean Inc. is a Cayman Islands corporation. Transocean denies that Transocean Inc. has its principal place of business at 4 Greenway Plaza, Houston, Texas 77046.  Transocean denies that Transocean Inc. is the direct or indirect parent of the Transocean *Deepwater Horizon* Companies.   To the extent not expressly admitted, Transocean denies all aspects and implications of the allegations in Paragraph 11.

12.     Transocean admits that Transocean Ltd. is a Swiss corporation with its principal place of business in Zug, Switzerland.  Transocean denies that the Court has *in personam* jurisdiction over Transocean Ltd.  Transocean denies the characterization of Transocean Ltd. as the ultimate parent and controlling entity of the Transocean *Deepwater Horizon* Companies.  To the extent not expressly admitted, Transocean denies all aspects and implications of the allegations in Paragraph 12.

13.     Transocean admits the allegations contained in Paragraph 13, but insofar as "other defendants" encompasses Transocean entities, Transocean denies that it is liable for any such removal costs and damages

14.     Transocean admits the allegations contained in Paragraph 14.

15.     Transocean denies all aspects and implications of the allegations in Paragraph 15.

16.     The assertions contained in Paragraph 16 contain statements of law, which do not require a response from Transocean, but out of an abundance of caution are denied.

17.     The assertions contained in Paragraph 16 contain statements of law, which do not require a response from Transocean, but out of an abundance of caution are denied.  Transocean denies all aspects and implications of the allegations in Paragraph 17.

18.     Transocean admits that BPXP obtained a Lease for Mississippi Canyon, Block 252, commonly known as the Macondo prospect.  Transocean admits that TH was hired to drill the MC-252 well, commonly known as the Macondo well, using the *Deepwater Horizon* mobile

offshore drilling unit ("MODU").  The Transocean Defendants admit that one or more of them are the Managing Owners, Owners *Pro Hac Vice*, and/or Operators of the *Deepwater Horizon*. To the extent not expressly admitted, Transocean denies all aspects and implications of the allegations in Paragraph 18.

19.     Transocean admits that Paragraph 19 contains some language that can be found in the Drilling Contract dated December 9, 1998, but denies that the partially quoted language is complete or that BPXP has properly characterized the Drilling Contract's language in the first sentence of Paragraph 19.  To the extent not expressly admitted, Transocean denies all aspects and implications of the allegations in Paragraph 19 (and subparts).

20.     Transocean denies all aspects and implications of the allegations in Paragraph 20.

21.     The allegations set forth in the first sentence of Paragraph 21 pertaining to Transocean contain a statement of law, and therefore do not require a response by Transocean. The remaining allegations set forth in Paragraph 21 are not directed at Transocean and therefore do not require a response by Transocean.  To the extent that the allegations in Paragraph 21 are directed at Transocean, all aspects and implications of the allegations are denied.

22.     Transocean admits that the *Deepwater Horizon* carried various appurtenances to drill subsea wells and to protect the vessel during drilling.  To the extent not expressly admitted, Transocean denies all aspects and implications of the allegations in Paragraph 22.

23.     Transocean admits that the *Deepwater Horizon* was equipped with rig protection equipment.  To the extent not expressly admitted, Transocean denies all aspects and implications of the allegations in Paragraph 23.

24.     Transocean denies all aspects and implications of the allegations in Paragraph 24.

25.     Transocean denies all aspects and implications of the allegations in Paragraph 25.

26.     Transocean denies all aspects and implications of the allegations in Paragraph 26 and its footnote.

27.     Transocean denies all aspects and implications of the allegations in Paragraph 27.

28.     Transocean denies all aspects and implications of the allegations in Paragraph 28.

29.     Transocean denies all aspects and implications of the allegations in Paragraph 29.

30.     Transocean denies all aspects and implications of the allegations which appear immediately before Paragraph 30 which state: "D. Transocean's Errors And The *Deepwater Horizon's* Unseaworthiness Caused The April 20 Blowout, Explosion And Fire, As Well As The Tragic Deaths, Personal Injuries, And Resulting Oil Spill."  Transocean denies all aspects and implications of the allegations in Paragraph 30.

31.     Transocean denies all aspects and implications of the allegations which appear immediately before Paragraph 31 which state:  "1. Transocean Failed To Identify And React To Warning Signs That The Well Was Flowing." Transocean denies all aspects and implications of the allegations in Paragraph 31.

32.     Transocean denies all aspects and implications of the allegations in Paragraph 32.

33.     Transocean denies all aspects and implications of the allegations in Paragraph 33.

34.     Transocean denies all aspects and implications of the allegations in Paragraph 34.

35.     Transocean denies all aspects and implications of the allegations in Paragraph 35.

36.     Transocean denies all aspects and implications of the allegations in Paragraph 36.

37.     Transocean denies all aspects and implications of the allegations which appear immediately before Paragraph 37 which state:  "2. Transocean Failed To Properly Monitor The Well To Detect Whether It Was Flowing." Transocean denies all aspects and implications of the allegations in Paragraph 37.

38.     Transocean denies all aspects and implications of the allegations in Paragraph 38.

39.     Transocean denies all aspects and implications of the allegations which appear immediately before Paragraph 39 which state: "3. Transocean's Belated Well Control Actions Dispersed Gas Onto The Rig, Causing The Explosions." Transocean denies all aspects and implications of the allegations in Paragraph 39.

40.     Transocean denies all aspects and implications of the allegations in Paragraph 40.

41.     Transocean denies all aspects and implications of the allegations in Paragraph 41.

42.     Transocean denies all aspects and implications of the allegations in Paragraph 42.

43.     Transocean denies all aspects and implications of the allegations in Paragraph 43.

44.     Transocean denies all aspects and implications of the allegations which appear immediately before Paragraph 44 which state: "4.  The *Deepwater Horizon's* ESD, Rig Savers And Over-Speed Controls Failed."   Transocean denies all aspects and implications of the allegations in Paragraph 44.

45.     Transocean denies all aspects and implications of the allegations in Paragraph 45.

46.     Transocean denies all aspects and implications of the allegations in Paragraph 46.

47.     Transocean denies all aspects and implications of the allegations in Paragraph 47.

48.     Transocean denies all aspects and implications of the allegations which appear immediately before Paragraph 48 which state: "5. The Rig's Power Generators Failed To Operate After The Explosion, Rendering The Vessel And Its Crew Helpless." Transocean denies all aspects and implications of the allegations in Paragraph 48.

49.     Transocean denies all aspects and implications of the allegations which appear immediately before Paragraph 49 which state: "6. Transocean's Divided Command Structure, Combined With The Failures Of Its Captain, Compounded The Effects Of The Casualty." Transocean denies all aspects and implications of the allegations in Paragraph 49.

50.     Transocean denies all aspects and implications of the allegations which appear immediately before Paragraph 50 which state: "7. Transocean And Its Captain Erred In Delaying To Activate The Blowout Preventer And EDS."  Transocean denies all aspects and implications of the allegations in Paragraph 50.

51.     Transocean denies all aspects and implications of the allegations which appear immediately before Paragraph 51 which state: "8. Transocean's EDS And Blowout Preventer Malfunctioned, Failing To Shut In The Well." Transocean denies all aspects and implications of the allegations in Paragraph 51.

52.     Transocean denies all aspects and implications of the allegations in Paragraph 52.

53.     Transocean denies all aspects and implications of the allegations which appear immediately before Paragraph 53 which state: "9. Transocean's Uncoordinated Fire-Fighting Attempts Allowed The Rig To Burn For Over 36 Hours And Then Sink Into The Gulf of Mexico."  Transocean denies all aspects and implications of the allegations in Paragraph 53.

54.     Transocean denies all aspects and implications of the allegations in Paragraph 54.

55.     Transocean denies all aspects and implications of the allegations in Paragraph 55.

56.     Transocean is without sufficient knowledge or information to form a belief as to whether the assertions set forth in Paragraph 56 are true and, therefore, denies all aspects and implications of the allegations in Paragraph 56.

57.     Transocean denies all aspects and implications of the allegations in Paragraph 57.

58.     Transocean denies all aspects and implications of the allegations in Paragraph 58.

59.     Transocean denies all aspects and implications of the allegations in Paragraph 59.

60.     Transocean denies all aspects and implications of the allegations in Paragraph 60.

61.     Transocean denies all aspects and implications of the allegations in Paragraph 61.

62.     Transocean denies all aspects and implications of the allegations in Paragraph 62 (and subparts).

63.     Transocean denies all aspects and implications of the allegations in Paragraph 63.

64.     Transocean denies all aspects and implications of the allegations in Paragraph 64.

65.     Transocean denies all aspects and implications of the allegations which appear immediately before Paragraph 65 which state: "G. Transocean Breached It (sic) Duties Under The Drilling Contract."  Transocean admits that Paragraph 65 contains some language that can be found in the Drilling Contract dated December 9, 1998, but denies that the partially quoted language is complete or that BPXP has properly characterized the Drilling Contract's language in the first sentence of Paragraph 65.  To the extent not expressly admitted, Transocean denies all aspects and implications of the allegations in Paragraph 65 (and subparts).

66.     Transocean denies all aspects and implications of the allegations in Paragraph 66 (and subparts).

67.     Transocean denies all aspects and implications of the allegations in Paragraph 67.

68.     Transocean denies all aspects and implications of the allegations in Paragraph 68.

69.     Transocean denies all aspects and implications of the allegations which appear immediately preceding Paragraph 69 which state: "H. Transocean Caused The Deepwater Horizon To Be Unseaworthy."  Transocean denies all aspects and implications of the allegations in Paragraph 69.

70.     Transocean denies all aspects and implications of the allegations in Paragraph 70.

71.     Transocean denies all aspects and implications of the allegations in Paragraph 71.

72.     Transocean denies all aspects and implications of the allegations in Paragraph 72.

73.     Transocean denies all aspects and implications of the allegations which appear immediately preceding Paragraph 73 which state: "I. Transocean Was Negligent Through

Deviating From The Standard Of Care And/Or Laws And Regulations." Transocean denies all aspects and implications of the allegations in Paragraph 73 (and subparts).

74.    Transocean denies all aspects and implications of the allegations in Paragraph 74.

75.    Transocean denies all aspects and implications of the allegations in Paragraph 75.

76.    Transocean denies all aspects and implications of the allegations in Paragraph 76.

77.    Paragraph 77 is a statement that BPXP realleges and incorporates by reference each and every allegation set forth in all preceding paragraphs as if fully restated herein. Transocean has responded to each of the preceding paragraphs and incorporates those responses as necessary and, accordingly, no further response is required.    78.    Paragraph 78 contains a statement of law, which does not require a response by Transocean.

79.    Transocean denies all aspects and implications of the allegations in Paragraph 79.

80.    Transocean denies all aspects and implications of the allegations in Paragraph 80.

81.    Transocean denies all aspects and implications of the allegations in Paragraph 81.

82.    Transocean denies all aspects and implications of the allegations in Paragraph 82.

83.    Transocean denies all aspects and implications of the allegations in Paragraph 83.

## **AFFIRMATIVE DEFENSES**

Transocean sets forth its affirmative defenses which apply to all claims unless otherwise noted. By setting forth these affirmative defenses, Transocean does not assume the burden of proving any fact, issue, or element of a cause of action where such burden properly belongs to BPXP.

### **Lack of Subject Matter Jurisdiction**

1.    The Court lacks subject matter jurisdiction over BPXP's claims under Rule 12(b)(1) of the Federal Rules of Civil Procedure and 9 U.S.C. § 2, because Article 35.4 of the

Drilling Contract between the Transocean Defendants and BPXP states that all such claims are subject to arbitration.

### Standing

2.     BPXP lacks standing because it has not alleged nor can it prove an actual or threatened injury caused by the Transocean Defendants' conduct and redressable by this Court.

### Proper Parties/Joinder

3.     BPXP has failed to join an indispensable party (or parties) under Rule 19, Federal Rules of Civil Procedure.

### Ripeness

4.     BPXP's claims for relief are not ripe.

### Failure to State a Claim

5.     BPXP has failed to state a claim upon which relief can be granted.

6.     BPXP has failed to plead, much less satisfy, conditions precedent to recovery.

7.     BPXP's claims are barred to the extent that BPXP seeks to impose liability retroactively for conduct that was not actionable at the time it occurred.

### Shipowners' Limitation of Liability Act

8.     The Transocean Defendants assert all rights and defenses available under the Shipowners' Limitation of Liability Act, 46 U.S.C. § 30501, *et seq.*  As a separate and complete defense to some or all of BPXP's claims, the Transocean Defendants aver that the subject incident was occasioned without the privity or knowledge of the Transocean Defendants, and that the amount of damages alleged in the Cross-Claim and Third Party Complaint greatly exceeds the amount of value of the interest of the Transocean Defendants in the mobile offshore drilling unit ("MODU") *Deepwater Horizon* and her freight then pending, and the Transocean Defendants accordingly invoke the benefits of the provisions of the revised statute of the United

States of America and acts amendatory thereof and supplement thereto, specifically 47 U.S.C. § 30501 *et seq.*, in the limitation of liability of shipowners, under which provision BPXP is not entitled to recover damages in a sum in excess of the value of the Transocean Defendants' interest in said vessel and her pending freight at the conclusion of the voyage during which the subject incident occurred.  The pleading of limitation of liability is not made as an admission of liability, but is made subject to the full denial set forth above in this pleading of any and all liability.

9.      BPXP's claims are enjoined, stayed, and restrained until the hearing and termination of the Limitation of Liability proceedings pursuant to the Limitation Court's Order dated June 14, 2010, and the Shipowners' Limitation of Liability Act, 46 U.S.C. § 30501, *et seq.*

## Oil Pollution Act

10.      The Transocean Defendants assert all defenses available under the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. § 2701 *et seq.,* including, without limitation:

(a)      Presentment has not been made as required under OPA;

(b)      OPA displaces or preempts BPXP's claims with respect to oil spill damages and otherwise;

(c)      There is no right of action against one or more of the Transocean Defendants to the extent any of them is not a Responsible Party as defined under OPA;

(d)      OPA eliminates or limits BPXP's alleged rights of recovery for certain economic loss claims;

(e)      OPA does not provide for, or allow, the recovery of punitive or exemplary damages; and

(f)      OPA does not provide for, or allow, a determination of joint and several liability, but requires an apportionment of fault.

**Maritime and State Law Claims**

11.     The Transocean Defendants assert all defenses to any maritime and state law claims including, without limitation:

(a)     The Transocean Defendants assert preemption to the extent that federal common law, including maritime law, is displaced by the Outer Continental Shelf Land Act, 43 U.S.C. § 1331 *et seq.,* or the Oil Pollution Act, 33 U.S.C. § 2701 *et. seq.*

(b)     The Transocean Defendants assert that, under the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331 *et seq.,* the Court must apply federal law, including the Oil Pollution Act and/or maritime law, to the exclusion of the law of the adjacent State.

(c)     The Transocean Defendants assert that any claims for purely economic losses, and any declaration or injunction pertaining to such claims, are barred absent physical injury to a proprietary interest, pursuant to *Robins Dry Dock & Repair Co. v. Flint,* 271 U.S. 303, 309 (1927) or similar precedent in Texas, Louisiana, Mississippi, Alabama, Florida, and/or other states.

(d)     The Transocean Defendants assert that, under any State mini-OPA statutory scheme, liability is limited.  The Transocean Defendants are not responsible parties under State mini-OPA statutory schemes.  The Transocean Defendants further assert the defenses available under any State mini-OPA statutory scheme.

**Causation**

12.     BPXP complains of harm not caused or contributed to in any manner by the Transocean Defendants, their alleged servants, employees, agents, or anyone for whom the Transocean Defendants are responsible.  The incident and resulting harm that are the subject of BPXP's Cross-Claim and Third Party Complaint were caused by the fault, negligence, breach of

contract, breach of warranty, statutory and regulatory violations of other persons, entities, or sovereigns for whom the Transocean Defendants are not legally responsible.

13.     The injuries and resulting damages alleged to have been sustained by BPXP resulted from a superseding or intervening cause for which the Transocean Defendants are not responsible.

14.     The injuries and resulting damages alleged to have been sustained by BPXP were not proximately caused by any acts and/or omissions of the Transocean Defendants.

15.     The injuries and resulting damages alleged to have been sustained by BPXP were not foreseeable as a matter of law.

**Damages**

16.     The Transocean Defendants specifically deny that BPXP has sustained legally compensable damages.

17.     The injuries and resulting damages alleged to have been sustained by BPXP were not foreseeable as a matter of law.

18.     BPXP may not recover on the claims pleaded in its Cross-Claim and Third Party Complaint because the damages sought are too speculative and remote.

19.     BPXP has not reasonably mitigated its damages.

20.     BPXP has not reasonably mitigated its damages by paying claims which are not properly documented, and/or are not compensable under OPA or any other laws.

21.     The Transocean Defendants are entitled to set off, should any damages be awarded against them, in the amount recovered by BPXP with respect to the same alleged injuries.   The Transocean Defendants assert payment and release to the extent that any of BPXP's alleged damages have been or will be fully redressed under the Oil Pollution Act or other applicable statute or rule.   The Transocean Defendants are also entitled to have any

damages that may be awarded to BPXP reduced by the value of any benefit or payment to BPXP from any collateral source.

### Reservation of Rights to Compel Arbitration

22.     The Transocean Defendants reserve their rights to compel arbitration of BPXP's claims because Article 35.4 of the Drilling Contract between the Transocean Defendants and BP requires that all such claims be arbitrated.   The Transocean Defendants further reserve their rights to file a Motion to Stay BPXP's claims, pending conclusion of arbitration.

### Contribution Comparative Fault and Indemnity

23.     In addition to the Limitation of Liability to which the Transocean Defendants are entitled herein, the Transocean Defendants are also entitled to contribution, indemnification and/or reimbursement or a determination of comparative fault of/from Third-Parties for any damages the Transocean Defendants may be required to pay that are attributable to the comparative negligence, fault and/or legal responsibility of Third-Parties.

### No Duty or Breach of Duty

24.     The Transocean Defendants did not owe any duty or warranty to BPXP and did not breach any duty or warranty.

25.     At all material times, the Transocean Defendants acted with due diligence and reasonable care and did not breach any duty to BPXP.

### Preemption

26.     The claims are barred in whole or in part by the Supremacy Clause of the United States Constitution, art. VI, § 2, because the claims are preempted and/or precluded by federal law, including, but not limited to, the Outer Continental Shelf Lands Act, 43 U.S.C. §§ 1331, *et seq.*, the Oil Pollution Act of 1990, 33 U.S.C. §§ 2701, *et seq.*, the Clean Water Act, 33 U.S.C. §§ 1251, *et seq.*, Bureau of Ocean Energy Management, Regulation and Enforcement, formerly

Minerals Management Service ("BOEMRE") policies and regulations regarding offshore oil exploration and drilling, and federal maritime common law.

**Adoption of Affirmative Defenses and Reservation of Right to Amend Answer**

27.     The Transocean Defendants assert any other defenses to which they may be entitled under Rule 8(c), Federal Rules of Civil Procedure.

28.     Any affirmative defenses pleaded by the other defendants and not pleaded by the Transocean Defendants are incorporated herein to the extent such defenses do not conflict with the Transocean Defendants' affirmative defenses.

29.     The Transocean Defendants reserve the right to amend their Answer, Rule 12(b) defenses and other defenses, and to assert cross-claims and third-party claims, as appropriate.

## TRANSOCEAN'S RULE 13 CROSS-CLAIMS/COUNTER-CLAIMS AND RULE 14 THIRD-PARTY COMPLAINT[2]

COME NOW Triton Asset Leasing GmbH, Transocean Holdings LLC, Transocean Offshore Deepwater Drilling Inc., and Transocean Deepwater Inc. (hereinafter collectively referred to as "Transocean") and, pursuant to Rules 13(a), (b) and (g)[3] and Rule 14 file this

---

[2]  Transocean's Rule 13 Cross-Claim/Counter-Claim and Rule 14 Third-Party Complaint is filed subject to, and without waiver of, Transocean's rights to invoke and compel arbitration of any and all arbitrable disputes which arise out of or are related to the Drilling Contract dated December 9, 1998 between Transocean Holdings LLC and BP America Production Company. The Drilling Contract's "ARBITRATION" provision provides:

> 35.4  ARBITRATION
>
> Any controversy or claim arising out of or related to this CONTRACT, or the breach thereof, which cannot be resolved satisfactorily between the parties, shall be settled by arbitration in Houston, Texas, in accordance with the rules of the American Arbitration Association Commercial Disputes. If no agreement can be reached by the parties on discovery disputes, then the Federal Rules of Civil Procedure shall govern and judgement upon the award rendered by the arbitrator(s) may be entered in any court of competent jurisdiction.

Accordingly, Transocean reserves for arbitration in Houston, Texas any and all claims it may have against BP Exploration & Production, Inc., BP America Production Company, and BP p.l.c. under the Drilling Contract's "ARBITRATION" provision.

[3]  To the extent that a Cross-Claim should be designated a Counter-Claim under Rule 13, it is filed as both a compulsory Counter-Claim under Rule 13(a) and/or a permissive Counter-Claim under Rule 13(b). To the extent that a Cross-Claim should be designated a Counter-Claim, the references to "Cross-Claim" shall mean

Transocean's Cross-Claims/Counter-Claims and Third-Party Complaint against BP Exploration & Production Inc., BP America Production Company, BP p.l.c., Halliburton Energy Services, Inc., M-I, LLC, Cameron International Corporation f/k/a Cooper Cameron Corporation, Anadarko Petroleum Corporation, Anadarko E&P Company LP, MOEX Offshore 2007 LLC, MOEX USA Corporation, Mitsui Oil Exploration Company, Ltd. (a/k/a MOECO), Weatherford International, Inc., Weatherford U.S.L.P., and Dril-Quip, Inc., and, in support thereof, would respectfully show as follows:

## THE PARTIES

### TRANSOCEAN

**1.**

Cross-Plaintiff and Third-Party Plaintiff Triton Asset Leasing GmbH is, and was at all material time hereinafter mentioned, a limited liability company organized and existing under the laws of the Swiss Confederation with its principal office in Zug, Switzerland.

**2.**

Cross-Plaintiff and Third-Party Plaintiff Transocean Holdings LLC is, and was at all material time hereinafter mentioned, a limited liability company organized and existing under the laws of the State of Delaware, with its principal office in Houston, Texas.

**3.**

Cross-Plaintiff and Third-Party Plaintiff Transocean Offshore Deepwater Drilling Inc. is, and was at all material time hereinafter mentioned, a corporation organized and existing under the laws of the State of Delaware, with its principal office in Houston, Texas.

---

"Counter-Claim", the references to "Cross-Plaintiff" shall mean "Counter-Plaintiff", and the references to "Cross-Defendant(s)" shall mean "Counter-Defendant(s)".  Fed. R. Civ. P. 8(e).

**4.**

Cross-Plaintiff and Third-Party Plaintiff Transocean Deepwater Inc. is, and was at all material time hereinafter mentioned, a corporation organized and existing under the laws of the State of Delaware, with its principal office in Houston, Texas.

**5.**

Hereinafter, Cross-Plaintiffs and Third-Party Plaintiffs Triton Asset Leasing GmbH, Transocean Holdings LLC, Transocean Offshore Deepwater Drilling Inc. and Transocean Deepwater Inc. are referred to collectively, where appropriate, as "Transocean" or the "Transocean Defendants.".

**6.**

One or more of the Transocean Defendants was at all time material hereto the Owner, Managing Owners, Owners Pro Hac Vice, and/or Operators of the MODU *Deepwater Horizon*. A blow-out, explosion, fire, and sinking of the MODU *Deepwater Horizon* occurred on or following April 20, 2010 (and is hereinafter referred to as the "Incident of April 20, 2010"). Following the Incident, there was a resulting Oil Spill (hereinafter referred to as the "BP Oil Spill"). Transocean has filed a Petition for Exoneration from or Limitation of Liability in the United States District Court for the Southern District of Texas, C.A. No. 4:10-cv-1721 which was subsequently transferred to the Eastern District of Louisiana (after transfer, 10-2771), seeking exoneration from, or limitation of liability, as to all Claims arising out of the Incident of April 20, 2010, the BP Oil Spill and the voyage of the *Deepwater Horizon* which commenced on January 30, 2010 and ended on or about April 20, 2010 (hereinafter referred to as the "Voyage").

## THE CROSS-DEFENDANTS AND THIRD-PARTY DEFENDANTS

### 7.

Cross-Defendant BP Exploration & Production Inc. ("BP Exploration") is a Delaware Corporation with its principal place of business in Warrenville, Illinois.  BP Exploration was a lease-holder and the designated operator in the lease granted by the former Minerals Management Service ("MMS"), now re-organized as the Bureau of Ocean Energy Management Regulation & Enforcement ("BOEMRE"), allowing it to perform oil exploration, drilling, and production-related operations in Mississippi Canyon, Blk. 252, the location known as "Macondo," where the Macondo well was located and from which the Incident of April 20, 2010 originated.  This Court has personal jurisdiction over BP Exploration because BP Exploration is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.  BP Exploration has been made a party to these proceedings pursuant to the filing of Transocean's Rule 14(c) Third-Party Complaint.

### 8.

Third-Party Defendant BP America Production Company ("BP America") is a Delaware Corporation with its principal place of business in Houston, Texas.  BP America was a party to the Drilling Contract with Petitioner Transocean Holdings LLC for the drilling of the Macondo Well by the MODU *Deepwater Horizon*.  This Court has personal jurisdiction over BP America because BP America is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.  BP America Production Company has been made a party to these proceedings pursuant to the filing of Transocean's Rule 14(c) Third-Party Complaint.

### 9.

Third-Party Defendant BP p.l.c. is a British Public Limited Company with its corporate headquarters in London, England.  BP p.l.c. is the global parent company of the world-wide

business operating under the "BP" logo.  BP p.l.c. operates its various business divisions, such as the "Exploration & Production" division in which BP Exploration and BP America fall, through vertical business arrangements.  BP Exploration and BP America are wholly-owned subsidiaries of BP p.l.c. and are sufficiently controlled by BP p.l.c. so as to be BP p.l.c.'s agents in Louisiana and the U.S. more generally.  This Court has general jurisdiction over BP p.l.c. pursuant to Louisiana's long-arm general jurisdiction provisions, *see* LA. REV. STAT. § 13:3201(B) and LA. CODE CIV. PROC. Art. 6, in combination with Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure.  BP p.l.c. does business in Louisiana, has had continuous and systematic contacts with Louisiana (and the U.S. more generally).  This Court also has specific jurisdiction over BP p.l.c. pursuant to Louisiana's long-arm specific jurisdiction provision, *see* LA. REV. STAT. § 13:3201(A), in combination with Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure.  Transocean's Third-Party Claim arises out of conduct committed by BP p.l.c. directly or indirectly, by its agents, that caused injury or damage in Louisiana by an offense or quasi offense committed through an act or omission outside of Louisiana, and BP p.l.c. regularly does or solicits business, or engages in any other persistent course of conduct, or derives revenue from goods used or consumed or services rendered in Louisiana.  BP p.l.c. has been made a party to these proceedings pursuant to the filing of Transocean's Rule 14(c) Third-Party Complaint.

## 10.

Cross-Defendants and Third-Party Defendants BP Exploration, BP America and BP p.l.c. are generally referred to herein collectively as "BP".  As lease operator of the Macondo prospect site, BP was responsible for assessing the geology of the prospect site, engineering the well design, obtaining regulatory approvals for well operations, and retaining and overseeing its contractors and working on various aspects of the well and drilling operations.

**11.**

Third-Party Defendant Halliburton Energy Services, Inc. ("Halliburton") is a Delaware Corporation with its principal place of business in Houston, Texas. Halliburton is registered to do and does business in the State of Louisiana. Halliburton provided engineering services, materials, testing, mixing, and pumping for cementing operations onboard the *Deepwater Horizon*, as well as onshore engineering support for those operations. Halliburton was responsible for the provision of technical advice about the design, modeling, placement and testing of the cement that was used in the Macondo Well at and before the time of the Macondo Well blow-out. Halliburton was engaged in cementing operations to isolate the hydrocarbon reservoirs and seal the bottom of the well against the influx of hydrocarbons like gas and oil. Through its division Sperry Drilling Services (f/k/a Sperry Sun Drilling Services), Halliburton Energy Services, Inc. was responsible for mud logging personnel and equipment on the *Deepwater Horizon*, including down-hole drilling tools. Halliburton and Sperry Drilling Services' mud logging personnel were partially responsible for monitoring the well, including mud pit fluid levels, mud float in and out of the well, mud gas levels, and pressure fluctuations. This Court has personal jurisdiction over Halliburton because Halliburton is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana. Halliburton Energy Services, Inc. has been made a party to these proceedings pursuant to the filing of Transocean's Rule 14(c) Third-Party Complaint.

**12.**

Third-Party Defendant M-I, LLC ("M-I") is a Delaware limited liability company with its principal place of business in Wilmington, Delaware. M-I was, at all relevant time, registered to do, and was doing, business in Louisiana and within this district. M-I, also known as M-I Swaco, supplies drilling and completion fluids and additives to oil and gas companies in

Louisiana and elsewhere, providing pressure control, vessel instrumentation, and drilling waste management products and services.  On the *Deepwater Horizon*, M-I provided mud products, including drilling fluids and spacers, engineering services, and mud supervisory personnel, such as mud engineers and drilling fluid specialists, to manage the properties of those fluids in the Macondo Well.  M-I employed, planned and/or supervised key fluid activities concerning the Macondo Well, such as the mud displacement that was occurring at the time of the April 20, 2010 Macondo Well blow-out.  This Court has personal jurisdiction over M-I because M-I is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.  M-I, LLC has been made a party to these proceedings pursuant to the filing of Transocean's Rule 14(c) Third-Party Complaint.

13.

Third-Party Defendant Cameron International Corporation f/k/a Cooper-Cameron Corporation ("Cameron") is a Delaware corporation with its principal place of business in Houston, Texas.  Cameron is registered to do and does business in the State of Louisiana.  Cameron manufactured, designed, supplied and/or installed the *Deepwater Horizon*'s sub-sea emergency well-closure device known as a blowout-preventer ("BOP") which was installed at the Macondo Wellhead.  This Court has personal jurisdiction over Cameron, because Cameron is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.  Cameron International Corporation f/k/a Cooper-Cameron Corporation has been made a party to these proceedings pursuant to the filing of Transocean's Rule 14(c) Third-Party Complaint.

14.

Cross-Defendant Anadarko Exploration & Production Company LP ("Anadarko E&P") is a Delaware limited partnership with its principal place of business in The Woodlands, Texas.

Anadarko E&P is registered to do and does business in the State of Louisiana.  Anadarko E&P is an oil and gas exploration production company.  On various dates, BP and Anadarko E&P became co-lessees under the terms of a lease executed on or about May 8, 2008, by BP, as Lessee, and the United States, by and through the MMS, as Lessor, for the "Oil & Gas Lease of Submerged Lands under the Outer Continental Shelf Lands Act, Serial No. OCS-G 32306" (hereinafter the "Lease"), pertaining to "All of Block 252, Mississippi Canyon OSC Official Protraction Diagram, N.H. 16-10," which Lease became effective on June 1, 2008.  As of April 20, 2010, and continuing until at least April 28, 2010, Anadarko E&P held a 22.5% interest in the Lease.  This Court has personal jurisdiction over Anadarko E&P because Anadarko E&P is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.  Anadarko Exploration & Production Company LP has been made a party to these proceedings pursuant to the filing of Transocean's Rule 14(c) Third-Party Complaint.

## 15.

Cross-Defendant Anadarko Petroleum Corporation Co. ("Anadarko") is a Delaware corporation with its principal place of business in The Woodlands, Texas.  Anadarko is registered to do and does business in the State of Louisiana.  Anadarko is an oil and gas exploration and production company.  On various dates, BP and Anadarko became co-Lessees under the terms of the Lease.  As of April 20, 2010, and continuing until at least April 28, 2010, Anadarko held a 2.5% interest in the Lease.  This Court has personal jurisdiction over Anadarko because Anadarko is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.  Anadarko Petroleum Corporation Co. has been made a party to these proceedings pursuant to the filing of Transocean's Rule 14(c) Third-Party Complaint.

**16.**

Cross-Defendant MOEX Offshore 2007 LLC ("MOEX Offshore") is a Delaware corporation with its principal place of business in Houston, Texas.  On various dates, BP and MOEX became co-Lessees under the terms of the Lease.  As of April 20, 2010 and continuing until at least April 28, 2010, MOEX Offshore held a 10% interest in the Lease.  This Court has personal jurisdiction over MOEX Offshore because MOEX Offshore is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.  MOEX Offshore 2007 LLC has been made a party to these proceedings pursuant to the filing of Transocean's Rule 14(c) Third-Party Complaint.

**17.**

Third-Party Defendant MOEX USA Corporation ("MOEX USA") is a Delaware corporation with its principal place of business in Houston, Texas.  MOEX USA is the parent company of MOEX Offshore 2007 LLC.  This Court has general jurisdiction over MOEX USA pursuant to Louisiana's long-arm general jurisdiction provisions, *see* LA. REV. STAT. § 13:3201(B) and LA. CODE CIV. PROC. Art. 6, in combination with Rule 4(k)(l)(A) of the Federal Rules of Civil Procedure.  MOEX USA does business in Louisiana, and has continuous and systematic contacts with Louisiana (and the U.S. more generally). This Court has specific jurisdiction over MOEX USA pursuant to Louisiana's long-arm specific jurisdiction provisions, *see* LA. REV. STAT. § 13:3201(A), in combination with Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure.  The Third-Party Claim arises out of conduct committed by MOEX USA directly or indirectly, by its agents, that caused injury or damage in Louisiana by an offense or quasi-offense committed through an act or omission outside of Louisiana, and MOEX USA regularly does or solicits business, or engages in any other persistent course of conduct, or derives revenue from goods used or consumed or services rendered in Louisiana.  MOEX USA

Corporation has been made a party to these proceedings pursuant to the filing of Transocean's Rule 14(c) Third-Party Complaint.

### 18.

Third-Party Defendant Mitsui Oil Exploration Company, Ltd. ("MOECO") is a Japanese corporation with its principal place of business in Tokyo, Japan. Upon information and belief, MOECO is a corporate parent and/or alter ego of MOEX Offshore and/or MOEX USA Corporation, which holds a 10% stake in the Macondo prospect lease. MOECO is the parent company of MOEX Offshore 2007 LLC. This Court has general jurisdiction over MOEX USA pursuant to Louisiana's long-arm general jurisdiction provisions, *see* LA. REV. STAT. § 13:3201(B) and LA. CODE CIV. PROC. Art. 6, in combination with Rule 4(k)(l)(A) of the Federal Rules of Civil Procedure. MOECO does business in Louisiana, and has continuous and systematic contacts with Louisiana (and the U.S. more generally). This Court has specific jurisdiction over MOECO pursuant to Louisiana's long-arm specific jurisdiction provision, *see* LA. REV. STAT. § 13:3201(A), in combination with Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure. The Third-Party Claim arises out of conduct committed by MOECO directly or indirectly, by its agents, that caused injury or damage in Louisiana by an offense or quasi-offense committed through an act or omission outside of Louisiana, and MOECO regularly does or solicits business, or engages in any other persistent course of conduct, or derives revenue from goods used or consumed or services rendered in Louisiana. Mitsui Oil Exploration Company, Ltd. has been made a party to these proceedings pursuant to the filing of Transocean's Rule 14(c) Third-Party Complaint.

### 19.

Third-Party Defendant Weatherford U.S. L.P. ("Weatherford") is a Louisiana limited partnership but maintains its principal place of business in Houston, Texas, and at all pertinent

time was registered to do, and was doing business, in Louisiana and within this District. Weatherford designed and manufactured, marketed, sold and/or distributed the casing components such as the float collar, shoe, and centralizers and provided the personnel and equipment for running the casing and casing components into the well bore.  This Court has personal jurisdiction over Weatherford because Weatherford is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.  Weatherford U.S. L.P. has been made a party to these proceedings pursuant to the filing of Transocean's Rule 14(c) Third-Party Complaint.

**20**.

Third-Party Defendant Weatherford International, Inc. ("Weatherford International") is a Delaware corporation with its principal place of business in Houston, Texas.  Weatherford International designed and manufactured, marketed, sold and/or distributed the casing components such as the float collar, shoe, and centralizers and provided the personnel and equipment for running the casing and casing components into the well bore.  This Court has personal jurisdiction over Weatherford International because Weatherford International is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.  Weatherford International, Inc. has been made a party to these proceedings pursuant to the filing of Transocean's Rule 14(c) Third-Party Complaint.

**21.**

Third-Party Defendant Dril-Quip, Inc. ("Dril-Quip") is a Delaware corporation which maintains its principal place of business in Houston, Texas.  Dril-Quip, Inc. was involved with providing wellhead systems to the *Deepwater Horizon*, including the Macondo Well that suffered the Incident of April 20, 2010.  Dril-Quip manufactured and built the wellhead that connects to the blow-out preventer at the seafloor and the lockdown seal assembly.  This Court

has personal jurisdiction over Dril-Quip, Inc., because Dril-Quip, Inc. is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.  Dril-Quip, Inc. has been made a party to these proceedings pursuant to the filing of Transocean's Rule 14(c) Third-Party Complaint.

### 22.

Cross-Defendants and Third-Party Defendants BP Exploration, BP America, BP p.l.c., Halliburton, M-I, Cameron, Anadarko E & P, Anadarko, MOEX Offshore, MOEX USA, MOECO, Weatherford, Weatherford International, and Dril-Quip, are collectively referred to as the "Cross-Defendants and Third-Party Defendants"

## JURISDICTION AND VENUE

### 23.

The Court has exclusive and original subject matter jurisdiction over Transocean's Rule 13 Cross-Claims/Counter-Claims and Transocean's Rule 14 Third-Party Claims pursuant to Rule 9(h) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1333.

### 24.

Venue is proper in this District pursuant to Rule F(9) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

### 25.

At all time material hereto, the *Deepwater Horizon* was an ultra-deepwater dynamic positioned semi-submersible vessel built in 2001.  It was contracted to BP America Production Company through 2013 pursuant tothe December 9, 1998 Drilling Contract between  Vastar Resources, Inc. and R&B Falcon Drilling Co and the amendments thereto.  BP used the

*Deepwater Horizon* to drill exploratory wells at the Macondo prospect site in Mississippi Canyon Block 252, a location on the Outer Continental Shelf off the coast of Louisiana.

**26.**

On April 20, 2010, a blow-out from BP's Macondo well occurred, resulting in explosion(s) and a fire on the *Deepwater Horizon*.  The fire burned for two days, and the vessel began to list progressively until it finally sank on April 22, 2010.

**27.**

Both prior to and following the sinking of the *Deepwater Horizon* on April 22, 2010, oil flowed from BP's Macondo Well, and continued to flow until approximately July 15, 2010, when BP finally capped the Macondo Well.

**28.**

After the Incident of April 20, 2010, BP began implementing a Response Plan including relief and recovery efforts to prevent oil from escaping from the Macondo Well, to manually contain the oil, and to disperse oil in the water using chemical dispersants.

**29.**

As a direct result of the Incident of April 20, 2010, the BP Oil Spill, and BP's Response Plan, including BP's relief and recovery efforts, the Plaintiff, the United States of America, and Cross-Claimant BP have filed or will file Claims and/or Complaints against Transocean. Transocean's Cross-Claims/Counter-Claims and Third-Party Claims arise out of the transaction or the occurrence that is the subject matter of these Claims and Complaints against Transocean. Furthermore, the Cross-Defendants and Third-Party Defendants are or may be liable to Transocean for remedy over, contribution, or otherwise on account of the same transaction, occurrence, or series of transactions or occurrences made the basis of these Claims and Complaints.

**30.**

Transocean's Rule 13 Cross-Claims/Counter-Claims and Rule 14 Third-Party Claims asserted herein apply to all Claims and Complaints filed against Transocean in Case No. 2:10-CV-04536-CJB-SS as a result of the Incident of April 20, 2010 and/or the BP Oil Spill.

**31.**

The Bundle A Claimants are various individuals who have or will file Claims, Petitions and/or Complaints for personal injury and/or death as a result of the Incident of April 20, 2010, seeking to recover damages against Transocean and others, alleging various causes of action, including but not limited to, negligence, gross negligence, willful misconduct and intentional acts. The Bundle A Claimants have also made claims against Transocean under the general maritime law for maintenance, cure, and unearned wages and for negligence under the Jones Act and unseaworthiness under the general maritime law.

**32.**

The Bundle B Claimants are various private parties who have or will file Claims, Petitions, Complaints and/or Short Form Joinders asserting claims for Non-Governmental Economic Loss and Property Damages, RICO Claims, Post-Explosion Clean-up Claims and other Claims, seeking to recover damages against Transocean and others, alleging various causes of action, including but not limited to, negligence, gross negligence, willful misconduct and intentional acts, nuisance, public nuisance, trespass, fraudulent concealment claims, claims under OPA, claims under various states' mini-OPA statutes, and other claims under state law, federal law and under the general maritime law.

**33.**

The Bundle C Claimants are various governmental entities who have or will file Claims, Petitions, Complaints and/or Short Form Joinders asserting Public Damage Claims for loss of

resources, loss of tax revenues, response costs and civil fines and/or penalties seeking to recover damages against Transocean and others, alleging various causes of action, including but not limited to, negligence, gross negligence and willful misconduct, nuisance, public nuisance, trespass, fraudulent concealment, claims under the Oil Pollution Act, 33 U.S.C. § 2702 *et seq.,* ("OPA"), claims under the Clean Water Act, 33 U.S.C. § 1251, *et seq.,* ("CWA"), claims under various states' mini-OPA statutes, and other claims under state law, federal law, and under the general maritime law.

**34.**

The Bundle D Claimants are various private parties who have or will file Claims, Petitions, Complaints and/or Short Form Joinders asserting Injunctive and Regulatory Claims against Transocean and others, alleging various causes of action, including but not limited to, claims under federal and state law, claims under the CWA, trespass, nuisance and other claims under state and federal law.

**35.**

The allegations and contentions which have been asserted against BP by the Bundle A, B, C and D Claimant(s) in their Claims, including, but not limited to the allegations and contentions set forth in the First Amended Master Complaint, Cross-Claim and Third-Party Complaint For Private Economic Losses In Accordance With PTO No. 11 [CMO No. 1] Section III.B(1) ["B1 Bundle"] **Dkt. No. 1128**, and the Local Government Entity Voluntary Master Complaint, Cross-Claim, and Third-Party Complaint, **Dkt. No. 1510**, are incorporated herein by reference, as if set forth herein, and are adopted by Transocean pursuant to Rule 10(c) of the Federal Rules of Civil Procedure.

**36.**

The allegations and contentions which have been asserted against Anadarko E&P, Anadarko, MOEX Offshore, MOEX USA and MOECO by the Bundle A, B, C and D Claimant(s) in their Claims, including, but not limited to the allegations and contentions set forth in the First Amended Master Complaint, Cross-Claim and Third-Party Complaint for private economic losses in accordance with PTO No. 11 [CMO No. 1] Section III.B(1) ["B1 Bundle"] and the Local Government Entity Voluntary Master Complaint, Cross-Claim, and Third-Party Complaint, **Dkt. No. 1510**, are incorporated herein for more particular reference, as if set forth herein, and are adopted by Transocean pursuant to Rule 10(c) of the Federal Rules of Civil Procedure.

**37.**

The allegations and contentions which have been asserted against Cameron by the Bundle A, B, C and D Claimant(s) in their Claims, including, but not limited to the allegations and contentions set forth in the First Amended Master Complaint, Cross-Claim and Third-Party Complaint for private economic losses in accordance with PTO No. 11 [CMO No. 1] Section III.B(1) ["B1 Bundle"] **Dkt. No. 1128**, and the Local Government Entity Voluntary Master Complaint, Cross-Claim, and Third-Party Complaint, **Dkt. No. 1510**, are incorporated herein by reference, as if set forth herein, and are adopted by Transocean pursuant to Rule 10(c) of the Federal Rules of Civil Procedure.

**38.**

The allegations and contentions which have been asserted against Weatherford by the Bundle A, B, C and D Claimant(s) in their Claims, including, but not limited to the allegations and contentions set forth in the First Amended Master Complaint, Cross-Claim and Third-Party Complaint for private economic losses in accordance with PTO No. 11 [CMO No. 1] Section

III.B(1) ["B1 Bundle"] **Dkt. No. 1128**, and the Local Government Entity Voluntary Master Complaint, Cross-Claim, and Third-Party Complaint, **Dkt. No. 1510**, are incorporated herein by reference, as if set forth herein, and are adopted by Transocean pursuant to Rule 10(c) of the Federal Rules of Civil Procedure.

### 39.

The allegations and contentions which have been asserted against Halliburton by the Bundle A, B, C and D Claimant(s) in their Claims, including, but not limited to the allegations and contentions set forth in the First Amended Master Complaint, Cross-Claim and Third-Party Complaint for private economic losses in accordance with PTO No. 11 [CMO No. 1] Section III(B1) ["B1 Bundle"] **Dkt. No. 1128**, and the Local Government Entity Voluntary Master Complaint, Cross-Claim, and Third-Party Complaint, **Dkt. No. 1510**, are incorporated herein by reference, as if set forth herein, and are adopted by Transocean pursuant to Rule 10(c) of the Federal Rules of Civil Procedure.

### 40.

The allegations and contentions which have been asserted against M-I by the Bundle A, B, C and D Claimant(s) in their Claims, including, but not limited to the allegations and contentions set forth in the First Amended Master Complaint, Cross-Claim and Third-Party Complaint for private economic losses in accordance with PTO No. 11 [CMO No. 1] Section III.B(1) ["B1 Bundle"] **Dkt. No. 1128**, and the Local Government Entity Voluntary Master Complaint, Cross-Claim, and Third-Party Complaint, **Dkt. No. 1510**, are incorporated herein by reference, as if set forth herein, and are adopted by Transocean pursuant to Rule 10(c) of the Federal Rules of Civil Procedure.

**41.**

The allegations and contentions which have been asserted against Dril-Quip by the Bundle A, B, C and D Claimant(s) in the Petitions, Complaints and/or Short-Form Joinders filed as a result of the Incident of April 20, 2010 and/or the BP Oil Spill are incorporated herein by reference, as if set forth herein, and are adopted by Transocean pursuant to Rule 10(c) of the Federal Rules of Civil Procedure.

**42.**

The true facts and circumstances regarding the Incident of April 20, 2010 and the BP Oil Spill are that the April 20, 2010 incident and the BP Oil Spill were caused not by any negligent acts, omissions, or culpable conduct of Transocean, but were caused in whole or in part by the negligent acts, omissions or culpable conduct of the Cross-Defendants and Third-Party Defendants, and/or the breach of warranties of workmanlike performance of the Cross-Defendants and Third-Party Defendants, and/or by conditions for which the Cross-Defendants and Third-Party Defendants are strictly liable under law, and as a result, the losses and damages alleged to have been sustained by the United States of America were proximately caused by the Cross-Defendants and Third-Party Defendants.

**43.**

Each of the Cross-Defendants and Third-Party Defendants named herein is jointly, severally, and/or solidarily liable under various principles of the general maritime law and/or applicable state and/or applicable federal tort law.

## <u>COUNT 1 – INDEMNITY</u>

## Applies to All Cross-Defendants and Third-Party Defendants[4]

Transocean incorporates all previous paragraphs 1-43 set out above as if completely restated herein.

## 44.

Transocean alleges further that, pursuant to the general maritime law, Transocean is entitled to indemnity against Cross-Defendants and Third-Party Defendants for any amount Transocean may be held liable to pay in judgment and/or settlement to, or as a result of, the Claims of the United States of America and/or the Claims asserted by BP Exploration in its Cross-Claim and Third Party Complaint, together with pre- and post-judgment interest, plus Court costs and attorneys' fees for defending said Claims, and attorneys' fees and Court costs for pursuing this Cross-Claim/Counter-Claim and Third-Party Complaint.  In the unlikely event that the general maritime law is held not to apply, Transocean is entitled to indemnity against Cross-Defendants and Third-Party Defendants under state law.

---

[4]   With respect to the BP Cross-Defendants and Third-Party Defendants, Transocean's Rule 13 Cross-Claim/Counter-Claim and Transocean's Rule 14 Third-Party Complaint is filed subject to, and without waiver of, Transocean's rights to invoke and compel arbitration of any and all arbitrable disputes which arise out of or are related to the Drilling Contract dated December 9, 1998 between Transocean Holdings LLC and BP America Production Company.

## COUNT 2 – CONTRIBUTION/COMPARATIVE FAULT

### Applies to All Cross-Defendants and Third-Party Defendants[5]

Transocean incorporates all previous paragraphs 1-44 set out above as if completely restated herein.

### 45.

Transocean alleges further that, pursuant to the general maritime law, Transocean is entitled to indemnity against Cross-Defendants and Third-Party Defendants for any amount Transocean may be held liable to pay in judgment and/or settlement to, or as a result of, the Claims of the United States of America and/or the Claims asserted by BP Exploration in its Cross-Claim and Third Party Complaint, together with pre- and post-judgment interest, plus Court costs and attorneys' fees for defending said Claims, and attorneys' fees and Court costs for pursuing this Cross-Claim/Counter-Claim and Third Party Complaint. In the unlikely event that the general maritime law is held not to apply, Transocean is entitled to contribution or a finding of comparative fault against Cross-Defendants and Third-Party Defendants under state law.

## COUNT 3 – BREACH OF WARRANTY OF WORKMANLIKE PERFORMANCE

### Applies to Third-Party Defendants Halliburton and M-I

Transocean incorporates all previous paragraphs 1-45 set out above as if completely restated herein.

---

[5] With respect to the BP Cross-Defendants and Third-Party Defendants, Transocean's Rule 13 Cross-Claim/Counter-Claim and Transocean's Rule 14 Third-Party Complaint  is filed subject to, and without waiver of, Transocean's rights to invoke and compel arbitration of any and all arbitrable disputes which arise out of or are related to the Drilling Contract dated December 9, 1998 between Transocean Holdings LLC and BP America Production Company.

**46.**

Transocean further incorporates the contentions and allegations asserted against Halliburton and M-I by the "Plaintiffs" in the First Amended Master Complaint, Cross-Claim, and Third-Party Complaint for Private Economic Losses In Accordance With PTO No. 11 [CMO No. 1] Section III.B(1) ["B1 Bundle"], **Dkt. No. 1128,** and the Local Government Entity Voluntary Master Complaint, Cross-Claim and Third-Party Complaint, **Dkt. 1510**, as if set forth specifically herein.

**47.**

Transocean alleges further that, pursuant to the general maritime law, Third-Party Defendants Halliburton and M-I owed express and/or implied warranties of workmanlike performance to Transocean with respect to the services which they performed onboard the *Deepwater Horizon.* Transocean further alleges that the services which Third-Party Defendants Halliburton and M-I performed aboard the *Deepwater Horizon* were not performed in a workmanlike manner. Accordingly, Third-Party Defendants Halliburton and M-I are liable to Transocean on the basis of the breach of these express and/or implied warranties of workmanlike performance by these Third-Party Defendants, for any amount Transocean may be held liable to pay in judgment and/or settlement to, or as a result of, the Claims of the United States of America and/or the Claims asserted by BP Exploration in its Cross-Claim and Third Party Complaint, together with pre- and post-judgment interest, plus Court costs and attorneys' fees for defending said Claims, and attorneys' fees and Court costs for pursuing this Cross-Claim/Counter-Claim and Third-Party Complaint.

## COUNT 4 – STRICT LIABILITY FOR MANUFACTURING AND DESIGN DEFECT

### Applies to Third-Party Defendants Cameron, Weatherford, Weatherford International and Dril-Quip

Transocean reiterates all previous paragraphs 1-47 set out above as if completely restated herein.

**48.**

Transocean further incorporates the contentions and allegations asserted against Cameron, Weatherford and Weatherford International by the "Plaintiffs" in the First Amended Master Complaint, Cross-Claim, and Third-Party Complaint For Private Economic Losses In Accordance With PTO No. 11 [CMO No. 1] Section III.B(1) ["B1 Bundle"] **Dkt. No. 1128**, and the Local Government Entity Voluntary Master Complaint, Cross-Claim and Third-Party Complaint, **Dkt. 1510**, as if set forth specifically herein.

**49.**

Transocean alleges further that Third-Party Defendant Cameron is liable to Transocean for its defective design and/or manufacture of the BOP pursuant to Section 402A of the Restatement (Second) of Torts, as adopted by maritime law.  Accordingly, Transocean is entitled to recover against Third-Party Defendants for any amount Transocean may be held liable to pay in judgment and/or settlement to, or as a result of, the Claims of the United States of America and/or the Claims asserted by BP Exploration in its Cross-Claim and Third Party Complaint, together with pre- and post-judgment interest, plus Court costs and attorneys' fees for defending said Claims, and attorneys' fees and Court costs for pursuing this Cross-Claim/Counter-Claim and Third-Party Complaint.

**50.**

Alternatively, in the unlikely event that maritime law is held not to apply, Cameron is liable to Transocean for its defective design and/or manufacture of the BOP, under the Louisiana Products Liability Act (La. Rev. St. Ann. § 9.2800.51, *et seq.);* the Texas Products Liability Act of 1993 (Tex. Civ. Prac. & Rem. Code Ann. § 82.002, *et seq.);* the Mississippi Products Liability Act (Miss. Code Ann. § 11-1-63); the Alabama Extended Manufacturer's Liability Doctrine; and/or Florida law.

**51.**

Transocean alleges further that Third-Party Defendant Weatherford is liable to Transocean for its defective design and/or manufacture of the float collar pursuant to Section 402A of the Restatement (Second) of Torts, as adopted by maritime law.   Accordingly, Transocean is entitled to recover against Third-Party Defendants for any amount Transocean may be held liable to pay in judgment and/or settlement to, or as a result of, the Claims of the United States of America and/or the Claims asserted by BP Exploration in its Cross-Claim and Third Party Complaint, together with pre- and post-judgment interest, plus Court costs and attorneys' fees for defending said Claims, and attorneys' fees and Court costs for pursuing this Cross-Claim/Counter-Claim and Third-Party Complaint.

**52.**

Alternatively, in the unlikely event that maritime law is held not to apply, Weatherford is liable to Transocean for its defective design and/or manufacture of the float collar, under the Louisiana Products Liability Act (La. Rev. St. Ann. § 9.2800.51, *et seq.);* the Texas Products Liability Act of 1993 (Tex. Civ. Prac. & Rem. Code Ann. § 82.002, *et seq.);* the Mississippi Products Liability Act (Miss. Code Ann. § 11-1-63); the Alabama Extended Manufacturer's Liability Doctrine; and/or Florida law.

**53.**

Transocean alleges further that Third-Party Defendant Weatherford International is liable to Transocean for its defective design and/or manufacture of the float collar pursuant to Section 402A of the Restatement (Second) of Torts, as adopted by maritime law. Accordingly, Transocean is entitled to recover against Third-Party Defendants for any amount Transocean may be held liable to pay in judgment and/or settlement to, or as a result of, the Claims of the United States of America and/or the Claims asserted by BP Exploration in its Cross-Claim and Third Party Complaint, together with pre- and post-judgment interest, plus Court costs and attorneys' fees for defending said Claims, and attorneys' fees and Court costs for pursuing this Cross-Claim/Counter-Claim and Third-Party Complaint.

**54.**

Alternatively, in the unlikely event that maritime law is held not to apply, Weatherford International is liable to Transocean for its defective design and/or manufacture of the float collar, under the Louisiana Products Liability Act (La. Rev. St. Ann. § 9.2800.51, *et seq.);* the Texas Products Liability Act of 1993 (Tex. Civ. Prac. & Rem. Code Ann. § 82.002, *et seq.);* the Mississippi Products Liability Act (Miss. Code Ann. § 11-1-63); the Alabama Extended Manufacturer's Liability Doctrine; and/or Florida law.

**55.**

Transocean alleges further that Third-Party Defendant Dril-Quip is liable to Transocean for its defective design and/or manufacture of the wellhead systems pursuant to Section 402A of the Restatement (Second) of Torts, as adopted by maritime law. Accordingly, Transocean is entitled to recover against Third-Party Defendants for any amount Transocean may be held liable to pay in judgment and/or settlement to, or as a result of, the Claims of the United States of America and/or the Claims asserted by BP Exploration in its Cross-Claim and Third Party

Complaint, together with pre- and post-judgment interest, plus Court costs and attorneys' fees for defending said Claims, and attorneys' fees and Court costs for pursuing this Cross-Claim/Counter-Claim and Third-Party Complaint.

**56.**

Alternatively, in the unlikely event that maritime law is held not to apply, Dril-Quip is liable to Transocean for its defective design and/or manufacture of the wellhead systems, under the Louisiana Products Liability Act (La. Rev. St. Ann. § 9.2800.51, *et seq.*); the Texas Products Liability Act of 1993 (Tex. Civ. Prac. & Rem. Code Ann. § 82.002, *et seq.*); the Mississippi Products Liability Act (Miss. Code Ann. § 11-1-63); the Alabama Extended Manufacturer's Liability Doctrine; and/or Florida law.

## COUNT 5 – CONTRIBUTION UNDER OPA

### Applies to All Cross-Defendants and Third-Party Defendants[6]

Transocean incorporates all previous paragraphs 1-56 set out above as if completely restated herein.

**57.**

Transocean alleges further that, pursuant to 33 U.S.C. § 2709, Transocean is entitled to contribution against the Cross-Defendants and Third-Party Defendants under the provisions of OPA, 33 U.S.C. § 2701, *et seq.*, for any amounts Transocean may be held liable to pay in judgment and/or settlement to, or as a result of, the Claims of the United States of America and/or the Claims asserted by BP Exploration in its Cross-Claim and Third Party Complaint,

---

[6] With respect to the BP Cross-Defendants, Transocean's Rule 13 Cross-Claim/Counter-Claim and Transocean's Rule 14 Third-Party Complaint is filed subject to, and without waiver of, Transocean's rights to invoke and compel arbitration of any and all arbitrable disputes which arise out of or are related to the Drilling Contract dated December 9, 1998 between Transocean Holdings LLC and BP America Production Company.

together with pre- and post-judgment interest, plus Court costs and attorneys' fees for defending said Claims, and attorneys' fees and Court costs for pursuing this Cross-Claim/Counter-Claim and Third-Party Complaint.

## COUNT 6 – SUBROGATION UNDER OPA

### Applies to All Cross-Defendants and Third-Party Defendants[7]

Transocean reiterates all previous paragraphs 1-57 set out above as if completely restated herein.

**58.**

Transocean alleges further that, pursuant to 33 U.S.C. § 2702(d)(1)(A) and (B), to the extent that Transocean has been designated by the United States Coast Guard to be a responsible party under OPA, and to the extent that Transocean pays or has paid any removal costs and/or damages in accordance with 33 U.S.C. § 2713 as a result of the BP Oil Spill or as a result of the release of diesel from the surface, Transocean is entitled to recover from the Cross-Defendants and Third-Party Defendants a sum equal to the amount of any payments made by Transocean to any Claimant for removal costs or damages.  In the alternative, Transocean is entitled to recover from the Cross-Defendants and Third-Party Defendants pursuant to 33 U.S.C. § 2715 under any other law.

---

[7]   With respect to the BP Cross-Defendants and Third-Party Defendants, Transocean's Rule 13 Cross-Claim/Counter-Claim and Transocean's Rule 14 Third-Party Complaint is filed subject to, and without waiver of, Transocean's rights to invoke and compel arbitration of any and all arbitrable disputes which arise out of or are related to the December 9, 1998 Drilling Contract between Vastar Resources, Inc. and R&B Falcon Drilling Co. and the amendments thereto

## COUNT 7 – BREACH OF EXPRESS CONTRACT

**Applies to BP Cross-Defendants and Third-Party Defendants**

**59.**

Transocean's Rule 13 Cross-Claim/Counter-Claim and Rule 14 Third-Party Complaint is filed subject to, and without waiver of, Transocean's rights to invoke and compel arbitration of any and all arbitrable disputes which arise out of or are related to the December 9, 1998 Drilling Contract between Vastar Resources, Inc. and R&B Falcon Drilling Co. and the amendments thereto.

**60.**

Subject to its reservation of rights set forth in Footnote 1 of this Cross-Claim/Counter-Claim and Third-Party Claim, Transocean reiterates all previous paragraphs set out above as if completely restated herein.

**61.**

On or about December 9, 1998, Vastar Resources, Inc., the predecessor of BP America, and R&B Falcon Drilling Co., the predecessor of Transocean Holdings, entered into the "Drilling Contract for RBS – 8D", which vessel was later known as the *Deepwater Horizon.*

**62**.

The Drilling Contract was amended on numerous occasions between December 9, 1998 and April 20, 2010.

**63.**

Pursuant to the terms of the December 9, 1998 Drilling Contract, Transocean brings this action against BP for breach of express contract.  On information and belief, BP Exploration (i)

was the agent, assignee, joint venturer and/or alter ego of BP America with respect to the Drilling Contract; (ii) performed some or all of the obligations of BP America under the Drilling Contract, including the obligations to specify, direct and/or instruct performance of drilling, testing and sampling operations under Article 15 of the Drilling Contract and the obligation to furnish materials under Article 8 of the Drilling Contract; and (iii) exercised the rights of BP America to observe and inspect operations under Article 18.2 of the Drilling Contract.  By virtue of the foregoing, BP Exploration is jointly and severally liable for the indemnity obligations owed to Transocean under the Drilling Contract.  Respondent BP p.l.c. is a British public limited company with its corporate headquarters in London, England.  BP p.l.c. is a parent of BP America, is entitled to the benefit of the indemnities owed by Transocean Holdings in the Drilling Contract and is a third party beneficiary of Transocean Holdings' obligations to provide indemnity under the Contract.  On information and belief, BP p.l.c. was the agent, assignee, joint venturer and/or alter ego of BP America and/or BP Exploration with respect to the Macondo well through, inter alia, the direct participation of BP p.l.c. employees in the post-casualty investigation conducted by BP, the direct participation of BP p.l.c. officers and employees in the governmental post-casualty investigations, the direct participation of BP p.l.c. officers and employees in the post-casualty control efforts, and the direct participation of BP p.l.c. in the establishment and/or funding of an escrow fund and claims facility to pay claims arising from the incident.  By virtue of the foregoing, BP p.l.c. is jointly and severally liable for the indemnity obligations owed to Transocean under the Drilling Contract.

## 64.

This count concerns the failure of BP to honor its express, written contractual commitments to Transocean arising from the Incident of April 20, 2010 and the BP Oil Spill.

**65.**

The Drilling Contract contains reciprocal obligations to "protect, release, defend, indemnify and hold harmless." Article 21.1 requires Transocean to defend and indemnify BP and hold it harmless for all claims for personal injury or death of Transocean personnel, regardless of whether those claims arise in whole or in part from BP's negligence. Article 21.2, in turn, requires BP to defend and indemnify Transocean and hold it harmless for all claims for personal injury or death of BP personnel, or third-party personnel (employees of non-Transocean contractors) regardless of whether those claims arise in whole or in part from Transocean's negligence. In addition, Article 24 requires BP to defend and indemnify Transocean and hold it harmless for all claims for pollution or contamination, including control and removal thereof (except with respect to discharges originating on or above the surface of the land or water).

**66.**

The reciprocal indemnity obligations in the Drilling Contract are broad and comprehensive. Article 24.2, for example, states in pertinent part that BP "shall assume full responsibility for and shall protect, release, defend, indemnify, and hold [Transocean] harmless from and against any loss, damage, expense, claim, fine, penalty, demand, or liability for pollution or contamination, including control and removal thereof, arising out of or connected with operations under this Contract hereunder and not assumed by Contractor in Article 24.1 above, without regard for negligence of any party or parties and specifically without regard for whether the pollution or contamination is caused in whole or in part by the negligence or fault of Contractor."

**67.**

Article 25.1 provides that "the parties intend and agree that the phrase 'shall protect, release, defend, indemnify and hold harmless' means that the indemnifying party shall protect,

release, defend, indemnify, and hold harmless the indemnified party or parties from and against any and all claims, demands, causes of action, damages, costs, expenses (including reasonable attorneys fees), judgments and awards of any kind or character …"  Article 25 further provides that the obligations of the indemnifying party apply:

1.  "without limit and without regard to the cause or causes;"

2.  "without regard to … preexisting conditions, whether such conditions be patent or latent, the unseaworthiness of any vessel or vessels (including the drilling unit), breach of representation or warranty, expressed or implied, breach of contract, strict liability, tort or the negligence of any person or persons;" and

3.  "without regard to … the negligence of any person or persons, including that of the indemnified party …whether such negligence be sole, joint or concurrent, active, passive or gross or any other theory of legal liability."

**68.**

Transocean has honored its contractual obligations to BP and has offered to defend and indemnify BP and its subcontractors and hold them harmless for the personal injury or death claims of Transocean personnel that arose from the Incident of April 20, 2010, notwithstanding claims that the Incident of April 20, 2010 resulted from BP's negligence and/or gross negligence. Despite Transocean's repeated requests, however, BP has reserved its rights and to date has refused to confirm in writing that it will honor its contractual obligations to Transocean, including BP's obligation to defend and indemnify Transocean and hold it harmless for claims for pollution or contamination, as well as for claims for personal injury or death of BP or third-party personnel.

**69.**

On or about September 2009, BP America and Transocean Holdings entered into Amendment No. 38 to the Drilling Contract.  Amendment No. 38 states that its provisions become effective on the "Renewal Date," which is defined as September 18, 2010.  Among other changes, Amendment No. 38 amends the indemnity provisions of the Drilling Contract.

**70.**

BP is required to defend and indemnify Transocean and hold it harmless with respect to claims for pollution or contamination, and claims for personal injury or death of BP personnel, irrespective of whether the governing indemnity provisions are those in the original Drilling Contract or those in the Drilling Contract as amended by Amendment No. 38.

**71.**

Article 21.5(b)(ii) of the Drilling Contract, as amended by Amendment No. 38, provides in pertinent part that "[BP] shall assume all responsibility for, including control, clean-up and removal of and shall release, defend, indemnify and hold harmless [Transocean] from all CLAIMS, however caused and arising in relation to pollution or contamination which may result from fire, blow-out, cratering, seepage, or any other uncontrolled flow of oil, gas, wastes or other substance from any WELL arising out of the CONTRACT."

**72.**

Article 21.3(c) of the Drilling Contract, as amended by Amendment No. 38, provides in pertinent part that "[BP] shall release, defend, indemnify and hold [Transocean] harmless … from . . . and against any and all liability for sickness, injury, or death to any of COMPANY GROUP personnel arising out of the CONTRACT or in tort and against all CLAIMS resulting therefrom."

**73.**

Article 21.0 of the Drilling Contract, as amended by Amendment No. 38, provides that CLAIMS "means all claims, liens, liabilities, fines, penalties, judgments, losses, damages, and expenses (including without limitation legal costs and expenses and other costs of defense), and shall, except as otherwise expressly provided, include claims based on contractual indemnity."

**74.**

Article 21.8 of the Drilling Contract, as amended by Amendment No. 38, provides in pertinent part that "[t]he release, defense, indemnity and hold harmless obligations as provided in the CONTRACT shall apply whether or not any injury, death, illness, loss or damage is

occasioned by or the result in whole or in part of the negligence or fault, whether sole, concurrent, gross, joint, active, or passive, of either PARTY (or any person or entity to whom indemnity is owed), breach of contract, any theory of tort, strict liability, breach of duty (statutory, expressed, implied or otherwise provided in law or equity), breach of warranty (expressed or implied), or WILFUL MISCONDUCT, products liability or any other theory of liability ...."

## 75.

The treatment of indemnity for claims for employees of third-party contractors working on the *Deepwater Horizon* differs under the original Drilling Contract and under the Drilling Contract as amended by Amendment No. 38. Under Article 21.2 of the original Drilling Contract, BP is required to indemnify Transocean for claims of personal injury or death of employees of contractors other than Transocean. Under Article 21.3 (a) & (b) of the Drilling Contract as amended by Amendment No. 38, BP is required to indemnify Transocean for sickness, injury or death of any "THIRD PARTY" "to the extent of any negligent act or default on the part of [BP]" while Transocean is required to indemnify BP for sickness, injury or death of any "THIRD PARTY" "to the extent of any negligent act or default on the part of [Transocean]."

## 76.

Article 27.3 of the Drilling Contract provides that the termination of the Drilling Contract shall be immediate in the event of actual or constructive total loss of the Drilling Unit.

## 77.

Article 27.4 of the Drilling Contract provides that, notwithstanding the termination of the Drilling Contract, the parties shall continue to be bound by the provisions of the contract "that reasonably require some action or forbearance after the expiration" of the Drilling Contract.

**78.**

The *Deepwater Horizon* became a total loss when the blowout of the Macondo well on April 20, 2010 caused an explosion and fire aboard the vessel, which then caused the vessel to sink on April 22, 2010.

**79.**

By virtue of Article 27.4, the parties to the Drilling Contract remain bound by the indemnity provisions of the Drilling Contract.

**80.**

Transocean has honored its obligations under the Drilling Contract by offering to defend and indemnify BP and hold it harmless for all claims for personal injury and death of Transocean personnel.  To date, BP has not accepted this offer.

**81.**

Transocean has timely demanded that BP honor its obligations under the Drilling Contract to defend and indemnify Transocean and hold it harmless for all claims for pollution and contamination.  To date, BP has stated that it is reserving its rights and has yet to defend and indemnify Transocean and hold it harmless.

**82.**

Transocean has timely demanded that BP honor its obligations under the Drilling Contract to defend and indemnify Transocean and hold it harmless for all claims for personal injury and death of BP and third-party personnel.  To date, BP has stated it is reserving its rights and has yet to defend and indemnify Transocean and hold it harmless.

**83.**

BP's reservation of its rights and its failure to date to confirm in writing that it will honor its contractual obligations in the Drilling Contract constitute a breach of contract, proximately resulting in damages to Transocean.

**84.**

As a result of BP's reservation of its rights and its failure to date to confirm in writing that it will honor its contractual obligation to defend Transocean, Transocean has incurred and will continue to incur substantial attorneys' fees.  As of the present date, Transocean and/or its insurers have incurred attorneys' fees and expenses in an amount according to proof to defend Transocean against claims that should have been defended by BP.

**85.**

Accordingly, Transocean seeks a judgment in Transocean's favor against Cross-Defendants and Third-Party Defendants BP for any amounts Transocean may be held liable to pay in judgment and/or settlement to, or as a result of, the Claims of the United States of America and/or the Claims asserted by BP Exploration in its Cross-Claim and Third Party Complaint, together with pre- and post-judgment interest, plus Court costs and attorneys' fees for defending said Claims, and attorneys' fees and Court costs for pursuing this Cross-Claim/Counter-Claim and Third-Party Complaint.

## PRAYER

WHEREFORE, the Transocean Defendants pray that their defenses to the Cross-Claim and Third-Party Complaint of BPXP be deemed good and sufficient; that after due proceedings are had there be judgment in favor of the Transocean Defendants, dismissing all claims asserted by BPXP, with prejudice, at BPXP's costs; and for any and all other just and equitable relief deemed appropriate, and

WHEREFORE, in the event that BPXP recovers anything from any of the Transocean Defendants on its Cross-Claim and Third-Party Complaint, that Triton Asset Leasing GmbH,

Transocean Holdings LLC, Transocean Offshore Deepwater Drilling Inc., and Transocean Deepwater Inc., Cross-Plaintiffs and Third-Party Plaintiffs herein, have judgment on their Rule 13 Cross-Claims/Counter-Claims and their Rule 14 Third-Party Complaint against BP America Production Company, BP Exploration & Production Inc., BP p.l.c., Halliburton Energy Services, Inc., M-I, LLC, Cameron International Corporation f/k/a Cooper Cameron Corporation, Anadarko Petroleum Corporation, Anadarko E&P Company, LP, MOEX Offshore 2007 LLC, MOEX USA Corporation, Mitsui Oil Exploration Company, Ltd. (a/k/a MOECO), Weatherford International, Inc., Weatherford U.S.L.P., and Dril-Quip, Inc., as follows:

1. That process in due form of law, according to the practice of this Court and the Federal Rules of Civil Procedure, issue against Cross-Defendants and Third-Party Defendants, requiring them to appear and answer this Cross-Claims/Counter-Claims and Third-Party Complaint;

2. That Transocean have judgment against Cross-Defendants and Third-Party Defendants on Counts 1, 2, 5 and 6 of its Cross-Claims/Counter-Claims and Third-Party Complaint;

3. That Transocean have judgment against Third-Party Defendants Halliburton and M-I on Count 3 of its Cross-Claims/Counter-Claims and Third-Party Complaint;

4. That Transocean have judgment against Third-Party Defendants Cameron, Weatherford, Weatherford International and Dril-Quip on Count 4 of its Cross-Claims/Counter-Claims and Third-Party Complaint;

5. That Transocean have judgment against Cross-Defendants and Third-Party Defendants BP America and BP Exploration on Count 7 of its Cross-Claims/Counter-Claims and Third-Party Complaint;

6. That Transocean recover pre- and post-judgment interest;

7. That Transocean recover its attorneys' fees;

8. That Transocean recover its costs; and

9. That Transocean have such other and further relief available under applicable law and any relief the Court deems just and appropriate.

Respectfully submitted,

By:_____/s/ Steven L. Roberts_____
Steven L. Roberts (Texas, No. 17019300)
Rachel Giesber Clingman (Texas, No. 00784125)
Kent C. Sullivan (Texas, No. 19487300)
Teri L. Donaldson (Florida, No. 784310)
Sutherland Asbill & Brennan LLP
1001 Fannin Street, Suite 3700
Houston, Texas 77002
Telephone: (713) 470-6100
Facsimile: (713) 654-1301
Email: steven.roberts@sutherland.com,
rachel.clingman@sutherland.com,
kent.sullivan@sutherland.com,
teri.donaldson@sutherland.com

By:_____/s/ Kerry J. Miller_____
Kerry J. Miller (Louisiana, No. 24562)
Frilot, L.L.C.
1100 Poydras Street, Suite 3700
New Orleans, Louisiana 70163
Telephone: (504) 599-8169
Facsimile: (504) 599-8154
Email: kmiller@frilot.com
-and-

By:_____/s/ Edwin G. Preis, Jr._____
Edwin G. Preis, Jr. (Louisiana, No. 10703)
Edward F. Kohnke, IV (Louisiana, No. 07824)
Preis & Roy PLC
102 Versailles Boulevard, Suite 400
Lafayette, Louisiana 70501
Telephone: (337) 237-6062
Facsimile: (337) 237-9129

-and-

601 Poydras Street, Suite 1700
New Orleans, Louisiana 70130
Telephone: (504) 581-6062
Facsimile: (504) 522-9129
Email: egp@preisroy.com, efk@preisroy.com

Of Counsel:

John M. Elsley (Texas, No. 0591950)
Royston, Rayzor, Vickery & Williams LLP
711 Louisiana Street, Suite 500
Houston, Texas 77002
Telephone: (713) 224-8380
Facsimile: (713) 225-9945
Email: john.elsley@roystonlaw.com

Daniel O. Goforth (Texas, No. 08064000)
Goforth GerenEasterling LLP
4900 Woodway, Suite 750
Houston, Texas 77056
Telephone: (713) 650-0022
Facsimile: (713) 650-1669
Email: dangoforth@goforthlaw.com

Brad D. Brian (California, No. 79001)
Allen M. Katz (California, No. 054933)
Munger Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California 90071
Telephone: (213) 683-9100
Facsimile: (213) 683-5180, (213) 683-4018
Email: brad.brian@mto.com, allen.katz@mto.com

*Counsel for Transocean*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing has been served on All Counsel by

electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order

No. 12, on May 30, 2011.                              s/Kerry J. Miller_____