# EXHIBIT A

# Proposed Supplemental Memorandum

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig<br>"Deepwater Horizon" in the Gulf<br>of Mexico on April 20, 2010<br><br>This Document Relates to:<br>*All cases in Pleading Bundles B1 and B3*;<br>No. 10-2771 | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* | MDL No. 2179<br><br>SECTION "J"<br>JUDGE BARBIER<br><br><br><br>MAGISTRATE NO. 1<br>MAGISTRATE SHUSHAN |

\* \* \* \* \* \* \* \* \* \* \* \*

## SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTIONS TO DISMISS AMENDED MASTER COMPLAINTS FOR PLEADING BUNDLES B1 AND B3

MAY IT PLEASE THE COURT: Defendants Anadarko Petroleum Corporation and Anadarko E&P Company LP (collectively "Anadarko") respectfully submit this Supplemental Memorandum in response to contentions by Plaintiffs' counsel at oral argument that had never previously been asserted, and in further support of their Motions to Dismiss the Amended Master Complaints for Pleading Bundles B1 and B3.[1]

1. On May 26, 2011, the Court heard oral argument on the defendants' Motions to Dismiss the Master Complaints for Pleading Bundles B1, B3 and D1. Anadarko presented two primary arguments: (1) all tort claims against Anadarko must be dismissed under the Fifth Circuit's *Ainsworth* line of precedent, because Plaintiffs do not allege that Anadarko retained a right of operational control over the activities or instrumentalities allegedly causing Plaintiffs' injuries; to the contrary, their allegations and concessions conclusively establish that no such

---

[1] Mem. in Support of Anadarko/MOEX Mot. to Dismiss First B1 Amend. Compl. [Rec. Doc. 1414-1] ("Anadarko/MOEX B1 MTD"); Mem. in Support of Anadarko/MOEX Mot. to Dismiss B3 Compl. [Rec. Doc. 1416-1] ("Anadarko/MOEX B3 MTD").

operational control existed, and; (2) pursuant to OCSLA's choice of law provisions, federal law applies to this case to the exclusion of state law.

2. Plaintiffs responded by making three erroneous arguments, none of which had ever been asserted prior to oral argument: (1) that the Operating Agreement contains provisions giving Anadarko control over BP's operations; (2) that recent deposition evidence shows that Anadarko employees were monitoring well conditions; and (3) that the Operating Agreement created a "joint venture" by which Anadarko could be held vicariously liable for BP's negligence. Because Plaintiffs never briefed these fallacious contentions, Anadarko dispenses with them here.

### The Operating Agreement Makes Clear That The Non-Operators Had No Operational Control

3. Plaintiffs egregiously mischaracterized the Operating Agreement, asserting for the first time at oral argument that the Operating Agreement contains provisions giving Anadarko a right of control over BP's operations. Plaintiffs argued that this purported right of control is "written into the contract" and that Anadarko's "right of control" "could have been exercised and should have been exercised." Plaintiffs did not cite any specific clause of the Operating Agreement to support this patently false contention, because none exists. There is no provision of the Operating Agreement empowering non-operators to "veto" the procedures selected by the Operator, or to otherwise "instruct" or direct the Operator (or its contractors) to take or refrain from any action. To the contrary, the Operating Agreement expressly vests all right to control operations exclusively in BP and unambiguously disclaims any intent to create a joint venture.

4. Specifically, Article 4.1 designates "BP Exploration & Production Inc." as the "Operator." Ex. A to Anadarko/MOEX B1 MTD at 14. Article 5.1 provides that

> the Operator has the exclusive right and duty to conduct (or cause to be conducted) all activities or operations under this Agreement. In

> performing services under this Agreement for the Non-Operating Parties, the Operator is an independent contractor, <u>not subject to the control or direction of Non-Operating Parties</u> . . . .

*Id*. at 20 (emphases added).

> 5. Similarly, Article 22.1 provides that the
>
> obligations, duties, and liabilities of the Parties under this Agreement are several and not joint or collective, and . . . nothing in this Agreement shall be construed to create a partnership, joint venture, association or other form of business entity recognizable in law for any purpose.

*Id*. at 130. Nothing in the Operating Agreement supports Plaintiffs' claim at oral argument that Anadarko had a contractual right to control BP or any other defendant's conduct. The plain language of the Operating Agreement establishes the opposite, and precludes any finding of operational control as a matter of law. *See Fruge ex rel. Fruge v. Parker Drilling Co.*, 337 F.3d 558, 564 (5th Cir. 2003) ("When the contract assigns the independent contractor responsibility for its own activities, the principal does not retain operational control.").[2]

### Plaintiffs New Factual Allegations Upon Oral Argument Are Not Only Improper But Are Also Insufficient As A Matter Of Law To Establish Operational Control

6. Though Plaintiffs conceded that Anadarko did not retain "day to day control," Plaintiffs argued that because Anadarko had a right to monitor data, the Operating Agreement therefore provided Anadarko with a "modicum of control" and that this is all the cases require. Plaintiffs also asserted for the first time at oral argument that recent discovery may suggest that Anadarko may have somehow had access to "better" information than BP, even though Plaintiffs allege that Anadarko had access only to the data transmitted <u>from the rig</u>, and that at least one

---

[2] Indeed, in the *Fruge* case the principal Anadarko, there acting as the operating party, provided "on-site supervision 24-hours per day via various independent contractors whose employees reported to Anadarko staff engineers on a daily basis," and the Fifth Circuit held that Anadarko did not exercise "operational control" and could not be liable for the negligence of the independent contractor based on the plain terms of the parties' contracts. *Fruge*, 337 F.3d at 564. Plaintiffs' anemic and unsupported allegations of "control" in this case, where Anadarko is the <u>non-operating party</u>, pale in comparison with the facts of even the unsuccessful attempt to show operational control in *Fruge*.

Anadarko employee was monitoring data from the rig. Plaintiffs' arguments carry a whiff of desperation and fly in the face of well established law. The Motions to Dismiss must be resolved on the basis of the allegations in the Complaints and documents expressly referenced in the Complaints such as the Operating Agreement, not on the basis of counsel's one-sided and grossly exaggerated mischaracterization of deposition testimony. Plaintiffs own allegations and concessions establish as a matter of law that the Non-Operators had no operational control and owed no duty to the Plaintiffs or others. Counsel's references at oral argument to snippets of recent deposition testimony cannot save Plaintiffs' claims from dismissal.

7.  Only a right of "operational control" gives rise to liability, and "operational control" requires "direct supervision over the step-by-step process of accomplishing the work." *Grammer v. Patterson Servs., Inc.,* 860 F.2d 639, 644-45 (5th Cir. 1988) *cert. denied*, 109 S. Ct. 3190 (1989). No matter how Plaintiffs contort their characterizations of the Operating Agreement, contractual rights to monitor well data and access rig safety information do not meet the operational control standard and have been conclusively held not to give rise to liability. *See, e.g., Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 193 (5th Cir. 1991) ("The fact that a principal takes an active interest in the safety of the employees of its independent contractor does not, in and of itself, constitute direct operational control" and therefore does not lead to any liability of the principal); *Landry v. Huthnance Drilling Co.,* 889 F.2d 1469, 1471 (5th Cir. 1989) (holding that "'a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations or deviations'" is "'not enough'" to give rise to liability) (internal citations omitted).

**Plaintiffs' Reliance On Joint Venture Cases Under
The LHWCA Provides No Basis To Avoid Dismissal**

8.  Considering the plain language of the Operating Agreement, it was with good reason that Plaintiffs never before contended that Anadarko may be vicariously liable for BP's negligence on a theory that the Operating Agreement creates a "joint venture."[3] Indeed, Plaintiffs expressly and repeatedly disclaim any intention to assert a vicarious liability theory against Anadarko in their Opposition briefs.[4] *See, e.g.,* Opposition at 9. There is no express allegation in either of the Amended Master Complaints for Pleading Bundles B1 and B3 that the Operating Agreement creates a joint venture, and there are no allegations from which the Court could reasonably infer the existence of a joint venture. Plaintiffs' belated assertion of a joint venture theory should be rejected for the same reason that Plaintiffs' other theories of liability fail: in order to find a joint venture there must be a joint right of operational control over the venture.

9.  Under the general maritime law, "in determining whether a joint venture exists … pertinent factors include: (1) <u>the existence of joint control, or a joint right of control, relevant to the vessel's operations</u>, (2) joint proprietary interests in the subject matter of the venture, and (3) a sharing of profits and losses." *Hinson v. M/V CHIMERA*, 661 F. Supp. 2d 614, 619 (E.D. La.

---

[3] "Joint venture" liability is a theory of vicarious liability, because one member of a joint venture may be held liable for the torts of a co-joint venturer, in the absence of negligence or fault. "Imputation of negligence of one person to another is allowed only when there exists between them some relation of master or superior and servant or subordinate or other similar relationship. The relationship between them must be one invoking the principles of agency, or the persons must be co-operating in a common or joint enterprise, or the relationship between the parties must have been such that the person to whom the negligence is imputed must have had *a legal right to control* the action of the person who was actually negligent." *Ferry v. Deeper Life Christian Church, Inc. of Tampa, Florida* 2002 WL 1974112, at *2 (E.D. La. 2002) (Zainey, J.) (emphasis in original) *citing Aupied v. Joudeh,* 694 So.2d 1012 (La. App. 5 Cir.,1997). "Absent factual support of such control, vicarious liability cannot be imposed." *Id.*

[4] Plaintiffs' Memorandum of Law in Opposition to the MOEX and Anadarko Defendants' Motions to Dismiss Plaintiffs' Negligence Claims and Motions to Dismiss the OPA Claims Against Anadarko E&P [Rec. Doc. 1803] (hereafter "Opposition").

2009) (emphasis added) (internal citations omitted).  Furthermore, "the parties' intentions are important." *Sasportes v. M/V Sol de Copacabana*, 581 F.2d 1204, 1209-10 (5th Cir. 1978). Thus, in *Sasportes*, the Fifth Circuit explained that while a "joint venture" could support a finding of vicarious liability, such joint ventures "involve joint control or the joint right of control." 581 F.2d at 1208 (citation omitted).  Indeed, courts have observed that the Fifth Circuit "equates vicarious liability with control." *Hajtman v. NCL (Bahamas) Ltd.*, 526 F. Supp. 2d 1324, 1327 (S.D. Fla. 2007) (citing *Barbetta v. Bermuda Star*, 848 F.2d 1364, 1369 (5th Cir. 1988)).

10.     Applying this standard, the Fifth Circuit and the courts of this district have held that a non-operating party to a minerals lease cannot be vicariously liable for the negligence of an operating party where the non-operator does not have an equal right to control the enterprise. *See, e.g.*, *James v. Nico Energy Corp.*, 838 F.2d 1365, 1373 (5th Cir. 1988) (no joint venture where one party's involvement in oil wells was limited to investment of capital and another party had "the sole right of control in drilling and operating of wells").[5]  Thus, even under a "joint venture" theory of liability, Plaintiffs must contend with the rule of *Ainsworth* that one who lacks a right of control over an operation cannot be liable for injuries resulting from the operation -- <u>either directly or indirectly</u>.

---

[5]     *See also Transcon. Gas Pipe Line Corp. v. Mr. Charlie*, 294 F. Supp. 1025, 1031 (E.D. La. 1968), *aff'd in relevant part and rev'd in part on other grounds*, 424 F.2d 684 (5th Cir. 1970), *cert. denied*, 400 U.S. 832 (1970) (no indirect liability under maritime law for non-operating co-owners of oil and gas lease where designated operator, but not non-operators, was negligent); *Misco-United Supply, Inc. v. Petroleum Corp.*, 462 F.2d 75, 80 (5th Cir. 1972) ("Joint ownership alone without joint operation creates only a cotenancy. A mining partnership requires an actual working of the mine by the partnership."); *Bolivar v. R & H Oil and Gas Co.*, 789 F. Supp. 1374, 1381–82 (S.D. Miss. 1991) (one who has no right to control operations at gas well may not be held liable as joint venturer); *Burlington Resources v. United National Ins. Co.,* 481 F. Supp. 2d 567, 573 (E.D. La. 2007) (holding that the operating agreement between non-operating parties and operating parties of oil and gas lease "in no way created any type of vicarious tort liability.").

11. At oral argument, Plaintiffs invoked for the first time the case of *Davidson v. Enstar*, 848 F.2d 574 (5th Cir. 1988), as support for their newly minted joint venture theory. Plaintiffs admitted that they did not cite *Davidson* in their Opposition briefs, but nevertheless baldly asserted that *Davidson* supports their theory without informing the Court of the facts, context, or even the holding of the case. In fact, *Davidson* and its progeny are completely inapposite. In *Davidson*, the Fifth Circuit considered whether non-operating parties to an oil and gas operating agreement should be considered "employers" under the Longshoreman and Harbor Workers Compensation Act ("LHWCA") and therefore <u>immune</u> from tort liability for workers' injuries. The Fifth Circuit held that while the non-operators in that case "relinquish[ed] most if not all control over routine operating decisions but retain[ed] some control over less routine decisions," and therefore did not meet the ordinary requirements of a joint venture, the non-operators should nevertheless be considered "joint venturers" of the operator entitled to an employer's immunity from tort under the LHWCA. *Id.* at 577.

12. The Fifth Circuit has explained that its limited deviation from the ordinary requirement of a right of joint operational control in finding a joint venture is tailored to the unique purpose of LHWCA tort immunity. In *Darr v. Chevron, U.S.A., Inc.,* 141 F.3d 1163, 1998 WL 197808, at *2 (5th Cir. 1998) (not selected for publication in the Federal Reporter, No. 97-30881), the court noted that LHWCA immunity is based on the fact that an employer "contributes to an insurance fund, which then forms the basis for the employee's recovery." *Id.* The Court reasoned that "[i]f two companies share the cost of employees by contributing to a joint account -- an account that also pays the premiums to the LHWCA insurance fund -- it makes no sense to allow the injured worker to seek recovery through the tort system against the employer's joint venturer." *Id.* Thus, where the LHWCA is inapplicable, the special joint

7

venture rule for LHWCA tort immunity also is inapplicable and provides no support for Plaintiffs' contention that non-operators can be vicariously liable for the torts of an operator without a right of operational control.[6]

13. The *Davidson* rule has been applied <u>only</u> to dismiss tort claims by employees against non-operators immune from tort claims under the LHWCA.[7] The Fifth Circuit has <u>never</u> used *Davidson* and its progeny to support the imposition of joint venture liability on non-operators for the torts of an operator. Indeed, outside of the LHWCA context, the Fifth Circuit has expressly held that an oil and gas operating agreement does <u>not</u> create a joint venture. *See Norman v. Apache Corp.*, 19 F.3d 1017, 1024-25 (5th Cir. 1994) (holding that operating agreement does not create joint venture giving rise to fiduciary duty). Thus, even if the Court considers Plaintiffs' joint venture theory, it does not avail Plaintiffs. A right of operational control is the essential element of both direct and indirect theories of liability, and Plaintiffs' tort claims against Anadarko must fail.

14. In sum, there is no basis for Plaintiffs' baseless contention that the Operating Agreement contains provisions granting Anadarko control over BP's drilling operations at the Macondo Prospect; Plaintiffs' new factual allegations purportedly based on deposition

---

[6] It is notable that the trial court in *Darr* dismissed the plaintiff's claims without even considering joint venture or LHWCA immunity on the ground that the non-operator owed no duty to plaintiff, because plaintiff failed to allege or show that the non-operator retained or exercised any operational control over the platform at any time relevant to plaintiff's injury. *Darr v. Chevron U.S.A., Inc.*, No. CIV.A. 96-2818, 1997 WL 470151, at *3 (E.D. La., Aug. 12, 1997) (Vance, J.) ("[T]his Court finds that there are no genuine issues of material fact in dispute, and it concludes that EOG owed no duty to plaintiff because it did not own, operate, occupy, control, or perform any work on the platform on the day of Mr. Darr's accident.").

[7] *See Heavin v. Mobil Oil Expl. and Prod. Southeast Inc.*, 913 F.2d 178 (5th Cir. 1990); *Darr v. Chevron, U.S.A., Inc.*, 141 F.3d 1163 (5th Cir. 1998); *Parker v. McDermott*, 1990 WL 2230111 (E.D. La. 1990); *Champagne v. McDermott, Inc.* 1992 WL 178661 (E.D. La. 1992); *Moore v. Phillips Petroleum Co.*, 1989 WL 38716 (E.D. La. 1989); *Miller v. Slam Offshore*, 1997 WL 537686 (E.D. La. 1997); *Baker v. Chevron U.S.A., Inc.*, 1993 WL 8300 (E.D. La. 1993).

testimony but not appearing in their Complaints are improper and meritless; and Plaintiffs' belated joint venture theory of liability is based on wholly inapposite case law.

                                                    Respectfully submitted,

DATED: May 31, 2011                        BINGHAM McCUTCHEN LLP

                                                    /s/ *Ky E. Kirby*
Ky E. Kirby
ky.kirby@bingham.com
David B. Salmons
david.salmons@bingham.com
Michael B. Wigmore
michael.wigmore@bingham.com
Warren Anthony Fitch
tony.fitch@bingham.com
Randall M. Levine
randall.levine@bingham.com
2020 K Street, NW
Washington, DC 20006-1806
Telephone (202) 373-6000
Facsimile (202) 373-6001

James J. Dragna
jim.dragna@bingham.com
Bingham McCutchen LLP
355 South Grand Avenue
Suite 4400
Los Angeles, California 90071-3106
Telephone (213) 680-6436
Facsimile (213) 680-8636

KUCHLER POLK SCHELL
WEINER & RICHESON, LLC

Deborah D. Kuchler, T.A. (La. Bar No. 17013)
dkuchler@kuchlerpolk.com
Janika Polk (La. Bar No. 27608)
jpolk@kuchlerpolk.com
Robert Guidry (La. Bar No. 28064)
rguidry@kuchlerpolk.com
1615 Poydras Street, Suite 1300
New Orleans, LA  70112
Tel:  (504) 592-0691
Fax:  (504) 592-0696

9

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, pursuant to Pre-trial Order No. 12, I have caused the foregoing to be served on all counsel via the Lexis Nexis File & Serve system, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, who will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on May 31, 2011.

                                                          _____/s/ *Ky E. Kirby*_____
                                                               Ky E. Kirby