**EXHIBIT 8.M**

In Support of

Plaintiff United States' Combined Memorandum of Law: (1) In Opposition to Defendant Anadarko E&P Company LP's Motion to Dismiss [Doc. 1861] and (2) In Support of United States' Motion for Partial Summary Judgment as to the Liability of the Anadarko Defendants

g.  With unanimous approval, the Participating Parties may authorize the early publication, or release from confidentiality, of any Project Technology and Information covered by this Agreement.

6.4  Rights under Copyright and Following Expiration of Confidentiality
Following the expiration of the period of confidentiality set forth in Sub-Section 5.1 above, each Participating Party may freely use and disclose the Confidential Information identified in Sub-Section 6.2 without accounting to any other Participating Party, subject only to whatever patent rights may apply to the technology and, where applicable, to the obligations of Sub-Sections 6.5 and 6.6. Subject to the obligations of confidentiality set forth in this Exhibit, each Participating Party has the right to copy, display, publish, distribute and prepare derivative works of all documents, drawings or other writings or materials created or conveyed under this Exhibit, including the rights to license, sell or otherwise transfer such rights.

6.5  Notice of Third Party Limitations

6.5.1  Notwithstanding the provisions of Sub-Sections 6.2, 6.3 and 6.4 the Participating Parties acknowledge that Background Technology and Information may have been received from third parties under pre-existing restrictions, e.g., that the Participating Party may disclose the third party source technology or information to a co-venturer in a joint venture only under obligations of confidentiality and under the restriction that the co-venturer use the information only in connection with the joint venture. Each Participating Party must identify, in writing, any such restrictions in effect and secure the receiving Participating Party's acknowledgment prior to transmittal of such third party source technology or information. The receiving Participating Party's acknowledgement constitutes its acceptance of such obligations and restriction.

6.5.2  The Project Manager and each Participating Party soliciting work from contractors or from Affiliates must use its best efforts to secure contract terms with such contractor or Affiliate that contain applicable confidentiality terms and that support the rights of the Participating Parties consistent with the provisions of this Exhibit. Unless otherwise agreed to in writing by all Participating Parties, any contract with a contractor or an Affiliate for the acquisition or development of Project Technology and Information must, with respect to the use, disclosure and intellectual property rights as to such Project Technology and Information, grant the same rights to and impose the same obligations on each Participating Party. Furthermore, if the use, disclosure, and intellectual property rights provisions of any contract related to the acquisition or development of Project Technology and Information are inconsistent with the use, disclosure, and intellectual property rights provisions of this

Integrated Project Team

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001807

Exhibit, those provisions must be submitted to each Participating Party in substantially final form for review and comment not less than thirty (30) days prior to contract execution.

6.6 <u>Software</u>
During the duration of the Project Team, a Participating Party or its Affiliate may authorize the other Participating Parties to use computer software proprietary to the authorizing Participating Party. Such proprietary software is not Project Technology and Information. Any authorization to use such proprietary software is not a license of any rights as to the proprietary software, which rights are retained by the authorizing Participating Party. Use of any such proprietary software is only for the purposes and duration of the Project Team; each Participating Party must destroy or return to the authorizing Participating Party all copies of any such proprietary software no later than the completion date of the Project Team's activities. Computer software and programs that are not proprietary to one of the Participating Parties or its Affiliate, but that are developed jointly by the Project Team, are Project Technology and Information.

6.7 <u>Identification, Declaration, and Use of Background Technology and Information</u>
Background Technology and Information must be identified and declared in writing before it is submitted to the Project Team. The decision to identify, declare, and submit Background Technology and Information to the Project Team is at the sole and absolute discretion of the individual Participating Party possessing such technology or Information. A Participating Party designating data as Background Technology and Information is not subject to the confidentiality obligation of this Exhibit or the Operating Agreement as to the identified Background Technology and Information. The Project Manager is responsible for maintaining a list describing all Background Technology and Information (and its ownership). This list will be updated from time to time as the Participating Parties submit such Background Technology and Information.

Nothing in the Operating Agreement or this Exhibit impairs the right of any owner of Background Technology and Information to use, exchange, disclose, or otherwise freely deal with its own Background Technology and Information.

## SECTION 7
## PATENTS AND PROJECT TEAM INVENTIONS

7.1 <u>Patent Assignment with Right to License and Sub-License</u>
All inventions, whether patentable or not, that (1) are conceived by contractors of the Project Team, or conceived jointly by the Participating Parties (each including its respective Affiliates) while working on the Project Team and (2) result from work that has been charged to the Joint Account, are assigned to the Operator, who may seek patent(s) on same. The Operator hereby grants to each other Participating Party an irrevocable, non-exclusive, worldwide, royalty-free license to all such inventions and patents. Such license includes the right to make, have made, use, have used, and sell apparatus, and to use and have used methods,

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001808

covered by such inventions and patents, and includes the right to grant sublicenses to such inventions and patents to any third party or Affiliate on such other
terms and conditions that such Party deems appropriate, without accounting to any other Party.

7.2 <u>Patent Assignment and License with Limited Right to Sub-License</u>
Patents on inventions not covered in Sub-Section 7.1 that (1) are conceived or first reduced to practice (actual or constructive) by a Participating Party or its Affiliate, including contractors of a Participating Party or its Affiliate, and (2) result from work that has been charged to the Joint Account, will be owned by that Participating Party. The Participating Party owning any such patent hereby grants to each other Participating Party an irrevocable, non-exclusive, worldwide, royalty-free license, under all such patents and inventions, to make, have made, use, have used, and sell apparatus, and to use and have used methods, for such other Participating Party's own business, including any joint venture or production sharing arrangement in which such other Participating Party has the right to extend these rights to its Affiliates, and to any joint venture or production sharing arrangement in which any such Affiliates have an ownership interest, but may not otherwise sub-license any such patent.

7.3 <u>No Other Commitment to License or Disclose</u>
Except as expressly set forth above, nothing in this Exhibit will be deemed to require any Participating Party or Affiliate to grant any licenses under any patents to anyone.

7.4 <u>Patent Immunity</u>
Each Participating Party hereby grants each other Participating Party an immunity from infringement of any patent of such Participating Party provided to the other Participating Party in connection with any and all activities conducted under the Operating Agreement, including preparation of Development Plans for the Contract Area and planning, designing, engineering, fabrication, transportation, installation, and subsequent operation of any Development System for the Contract Area. This immunity applies only to those patents of a Participating Party where such Participating Party has a right to grant such immunity without accounting to any third party.

**SECTION 8
DISCLAIMER OR WARRANTIES; RELEASE; INDEMNITIES**

8.1 <u>DISCLAIMER OF WARRANTIES</u>
ALL INFORMATION OR TECHNOLOGY RECEIVED BY THE PARTICIPATING PARTIES HEREUNDER IS PROVIDED ON AN "AS IS" BASIS WITHOUT ANY WARRANTIES EITHER EXPRESS OR IMPLIED AS TO THE ACCURACY, VALIDITY OR UTILITY OF SUCH INFORMATION OR THAT IT CAN BE USED WITHOUT INFRINGING ANY THIRD PARTY PATENT, COPYRIGHT OR OTHER PROPRIETARY RIGHT. WITHOUT LIMITING THE PRECEDING, ANY

CONFIDENTIAL

APC-HEC1-000001809

ACCESS RESTRICTED

IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE ARE EXPRESSLY DISCLAIMED AND EXCLUDED FROM THIS AGREEMENT. IN NO EVENT IS A PARTICIPATING PARTY CONVEYING INFORMATION OR TECHNOLOGY LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL OR OTHER DAMAGES ARISING OUT OF OR RESULTING FROM THE USE OF THE INFORMATION OR TECHNOLOGY CONVEYED UNDER THIS EXHIBIT.

8.2 Releases
Each Participating Party releases the other Participating Parties from any loss, damage, claim, suit, liability, judgement, and expense that it may incur related to or in connection with its use (including use by others which it authorizes) outside of the Contract Area of any information or technology exchanged under or developed pursuant to this Exhibit.

8.3 Indemnities
Each Participating Party will defend, hold harmless, and indemnify the other Participating Parties from and against any loss, damage, claim, suit, liability, judgment, and expense including attorneys fees and other costs of litigation) related to or in connection with its use (including use by others which it authorizes) outside of the Contract Area of any information or technology exchanged under or developed pursuant to this Exhibit.

## SECTION 9
## MISCELLANEOUS

9.1 Export Controls
Each Participating Party must abide by the United States Department of Commerce regulations concerning the export or re-export of United States source technical data, or the direct product thereof, to unauthorized destinations and regulations in respect of information supplied by or on behalf of any other Participating Party hereunder.

9.2 Independent Research
Nothing herein in any way restricts or impairs the right of any Participating Party to conduct its own independent research, development or design activities even though such activities may parallel or overlap the activities provided for herein. A Participating Party conducting such independent activities has no obligation arising therefrom with respect to the use or disposition of the results thereof, including but not limited to all information and data resulting therefrom.

9.3 Assignability
A third party (not currently a Party to this Agreement) who acquires a Working Interest in the Prospect Area may join the Project Team upon the approval of the Participating Parties as a General Matter. A new Party joining the Project Team must agree, in writing, to undertake all obligations set forth for a Party under this Exhibit. Such new party will have all rights, duties and obligations under this

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001810

Exhibit regarding the use of all Confidential Information exchanged or developed prior to the date it joins the Project Team and during its participation thereunder. However, patent rights received by such new Party hereunder pursuant to Section 7.0 of this Exhibit shall be limited to patents based on developments after the date such Party joins the Project Team. In the event that a Party assigns its entire interest in the Leases, the assigning Party shall have all the rights specified in this Exhibit, including patent rights and license rights thereunder, based on developments and exchanges prior to the effective date of such assignment and shall continue to have all obligations and duties with respect thereto as set forth in this Exhibit relating to the confidentiality, restrictions on use, patents, indemnity, and as applicable, duties to license the other Parties.

9.4 <u>Confidential Information to a Non-Participating Party</u>
Any Party that elected not to participate in a Project Team, but that receives, upon the satisfaction of the applicable non-consent provisions of Article 16.5.3 of the Operating Agreement, Confidential Information resulting from that Project Team, is subject to all obligations and duties, and has all the rights, set forth in this Exhibit with respect to confidentiality, restrictions on use, patents, licensing and sub-licensing, indemnity, and export controls.

9.5 <u>Section and Sub-Section References</u>
All references in this Exhibit to a "Section" or "Sub-Section", either in the singular or plural, mean a "Section" or "Sub-Section" of this Exhibit.

9.6 <u>Survival of Certain Provisions</u>
All provisions of this Exhibit related to the confidentiality and use of information, patents, licensing and sub-licensing, export controls, and indemnity will survive the termination of this Exhibit or the Operating Agreement or both.

9.7 <u>Development System Proposals</u>
The proposal of any Development System and commitment of funds thereto will be handled in accordance with the provisions of the Operating Agreement. The final decision on the selection of any Development System to be designed, fabricated and installed, and the election to participate in funding of that Development System, will be made in accordance with the terms and conditions of the Operating Agreement.

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001811

EXHIBIT "H"

**DISPUTE RESOLUTION PROCEDURE**

Attached to and made a part of that certain Operating Agreement dated October 1, 2009 by and between BP Exploration & Production Inc., as Operator, and MOEX Offshore 2007 LLC, as Non-Operator

I.   **OVERVIEW**

A.   *Description and Goals.* Arbitration as used in this statement is a procedure whereby an Arbitrator resolves any claim(s), controversy(ies) or dispute(s) (the "Dispute") between BP Exploration & Production Inc. and MOEX Offshore 2007 LLC (hereinafter referred to singularly as "Party" and collectively as "Parties"), involving more than $500,000.00, arising out of, relating to, or in connection with that certain Operating Agreement effective October 1, 2009, by and between the Parties (hereinafter "Agreement") including the interpretation, validity, termination or breach thereof.

(i)   *Binding.* The arbitration process is binding on the Parties and this arbitration is intended to be a final resolution of any Dispute between the Parties as described above, to the same extent as a final judgment of a court of competent jurisdiction. Each Party hereby expressly covenants that it shall not resort to court remedies except as provided for herein, and for preliminary relief in aid of arbitration.

(ii)   *Violation.* A Party shall pay all legal and court costs incurred by the other Party in connection with the enforcement of the final resolution of any Dispute under this Dispute Resolution Procedure, if such other Party is successful in its enforcement efforts. Suits, actions or proceedings in connection with such enforcement shall be instituted in a federal court of proper jurisdiction and pursuant to Title IX of the United States Code. Each Party waives any option or objection which it may now or thereafter have to the laying of the venue in any such suit, action or proceeding and irrevocably submits to the jurisdiction of such court in any such suit, action or proceeding. If such court after the

Page 1 of 8

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001812

institution of an action hereunder should decline jurisdiction, then the action may be commenced in any court, including state courts having jurisdiction.

B. *Duty to Negotiate.* The Parties shall inform one another promptly following the occurrence or discovery of any item or event, which might reasonably be expected to result in a Dispute in connection with the Agreement. The Parties will attempt to resolve satisfactorily any such matters.

C. *Notice of Unresolved Dispute.* Should a Dispute arise which the Parties cannot resolve satisfactorily, either Party may deliver to the other Party a written notice of the Dispute with supporting documentation as to the circumstances leading to the Dispute (the "Notice of Dispute"). Unless otherwise provided herein, all such notices shall be served in accordance with the provisions of the Agreement. The Parties, within ten (10) Business Days from delivery of a Notice of Dispute, shall then each appoint a management representative ("Management Representative") who has no prior direct involvement with the subject matter of the Notice of Dispute and who is duly authorized to investigate, negotiate and settle the Dispute. For a period not to exceed ninety (90) days following the appointment of the Management Representatives, the Management Representatives for each Party shall meet and confer as often as they deem reasonably necessary, in good faith negotiations, to try to resolve the Dispute amicably.

II. **ARBITRATION PROCESS**

A. *Arbitration.* If the Parties are unable to resolve the Dispute within ninety (90) days following the end of the negotiation period between the Management Representatives described in I.C., or such additional time as may be mutually agreed upon, the matter shall be submitted to arbitration in accordance with the procedures set forth below.

B. *Initiation of Arbitration.* Either Party may initiate the arbitration by delivering to the other a Notice of Intention to Arbitrate.

C. *Governing Procedures.* Except as expressly provided herein, the arbitration shall be conducted in accordance with procedures that are mutually

Page 2 of 8

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001813

acceptable to the Parties, including limited depositionless discovery and the presentation of live witness testimony, subject to cross examination, at the arbitration hearing.

> (i) *Governing Law.* The Arbitrator shall apply the governing substantive law of the state chosen by the Parties to the Agreement.
>
> (ii) *Location.* The arbitration hearing shall be conducted in a location mutually agreeable to the Parties to the arbitration.

D. *Arbitrator.* There shall be a panel of three (3) Arbitrators, each of whom must be experienced in the oil and gas industry and knowledgeable about or specializing in the subject matter involved in the Dispute the ("Panel"). The Panel shall be chosen as follows: within thirty (30) days after the delivery of a Notice of Intention to Arbitrate, each Party shall select one person to act as one of the three arbitrators. The two arbitrators selected by the Parties shall select a third arbitrator within thirty (30) days of their appointment. If the arbitrators selected by the Parties are unable or fail to agree on a third arbitrator within the second thirty (30) day period, or any mutually agreed upon extended period, then the Parties shall, within three (3) business days after expiration of the second thirty (30) day period or extended period, apply to the American Arbitration Association for the appointment of a third Arbitrator for or on behalf of the Parties. In such case the Arbitrator appointed by the American Arbitration Association shall meet the criteria set forth in this Section II.D. The Parties intend the involvement of the American Arbitration Association to be limited to appointing a third arbitrator in the event the arbitrators selected by the Parties are unable to do so; the Parties do not intend for the American Arbitration Association to manage the arbitration or to participate further in the arbitration process, unless the Parties mutually agree to further participation by the Association.

> (i) *Conflicts.* Any Arbitrator, prior to his or her appointment, shall disclose to the Parties all actual or perceived conflicts of interest and business relationships involving the Dispute or the Parties, including but not limited to, any professional or social relationships, present or past, with any Party (or its

Page 3 of 8

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001814

affiliates), including any Party's (or its affiliates) directors, officers, and supervisory personnel and counsel. If an Arbitrator is appointed by the American Arbitration Association pursuant to Section II.D, any Party may challenge in writing the appointment of the Arbitrator for lack of independence, partiality, or any other cause likely to impair such Arbitrator's ability to effectively participate in the proceedings or render a fair and equitable decision. Where such challenge is made, the American Arbitration Association shall uphold or dismiss the challenge. In the event a challenge is upheld, the Arbitrator shall be replaced, and the replacement will be selected in the same manner as the original Arbitrator was selected. If an Arbitrator resigns or becomes unable or unwilling to continue to serve as an Arbitrator for any reason, a replacement shall be selected in the same manner as that Arbitrator was chosen.

(ii) *Multi-Party Arbitrations.* When more than two Parties are involved in the Dispute ("Multi-Party Arbitration"), all Parties identifying as "Claimants" (those delivering a Notice of Intention to Arbitration under Section II.B.) shall select a single Arbitrator and all those Parties identifying as "Respondents" (those responding to a Notice of Intention to Arbitration delivered under Section II.B.) shall select a single Arbitrator. The Arbitrator selected by the Claimant(s) and the Arbitrator selected by the Respondent(s) shall select the third Arbitrator pursuant to Section II.D. If Claimants or Respondents cannot agree as to the choice of their Arbitrator within the said thirty (30) days, they may, within three (3) business days after written notice to the other Parties, apply to the American Arbitration Association for the appointment of an Arbitrator as provided in Section II.D.

(iii) *Management of the Arbitration.* The Panel shall actively manage the proceedings so as to make the proceedings expeditious, economical, and less burdensome and adversarial than litigation.

E. *Confidentiality.* All documents, briefs, testimony, transcripts, as well as all Arbitrator decisions shall be confidential. Likewise, the views, suggestions,

Page 4 of 8

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001815

admissions, proposals, and other information exchanged in the arbitration are confidential and are inadmissible in any other proceeding.

F. *Costs and Expenses.* The Parties shall each pay all costs, fees and expenses incurred by their Party-selected Arbitrator and shall share equally all costs, fees and expenses incurred by the third Arbitrator and any other incidental costs incurred in connection with the arbitration proceeding. Each Party is solely responsible for its own attorneys' fees and expenses incurred in the Arbitration.

G. *Submissions.* Within thirty (30) days after the selection of the Panel, each Party shall provide the Panel with a short and plain submission defining the issues to be decided and the nature of the relief that the Panel may award (the "Submission"). This Submission shall explicitly authorize the Panel to decide these issues. If the Parties are unable to reach consensus as to the issues involved, the Panel in its sole discretion shall frame the issues through a reasonable procedure. The Panel will render decisions on the specific issues established and shall fashion any remedy that the Panel deems appropriate so long as that remedy is consistent with the Parties' Submissions hereunder. Any money judgment entered by the Panel shall be payable in U.S. dollars.

H. *Transcriptions.* The presentations and argument at the arbitration hearing will be transcribed for the benefit of the Panel and the Parties.

I. *Discovery.* Commencing thirty (30) days after the receipt of the opposing Party's Submission, each Party may serve upon the other Party up to ten (10) requests for the production of documents, including sub-parts. The requests shall be made in good faith and not be served for the purpose of delay or harassment. Each request shall describe the type of document(s) sought and each request shall be limited to documents that are relevant to a claim or defense in the Arbitration proceeding, or reasonably calculated to lead to the discovery of admissible evidence. The requests need not be served all at once but may be served in stages.

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001816

    (i)    The Party served with a request under this provision shall provide the adverse Party with copies of the requested documents, and identify the request to which each document is responsive, within twenty (20) business days of the receipt of the request, or such longer time as may be agreed to by the Parties or set by the Panel. If the Party served with a request objects to the production of any of the requested documents, it shall nevertheless produce within the permitted time all documents responsive to any request that is not objected to by that Party.

    (ii)    A Party that is served with a request may challenge the propriety of the request within the time permitted for response by a short written objection, which shall be forwarded to the adverse Party and to the Panel. The adverse Party shall submit its response, if any, to the objecting Party and the Panel within five (5) business days of receipt of the objection. The Panel shall consider the request, the objection, and the response, if any, and decide whether the production shall be allowed or denied or whether the request should be modified within ten (10) days after the submission of the adverse Party's response.

J.   *Presentations.*   No later than twenty-five (25) days prior to the date that the arbitration hearing is to begin, each Party will submit to the Panel and serve on the other Party a written position statement. The original statement of each Party shall not exceed thirty-five (35) typewritten letter-size pages. Each Party shall have the right to submit reply statements no later than fifteen (15) days prior to the date of the arbitration hearing. Such reply statements shall not exceed twenty (20) typewritten letter-size pages.

    (i)    All documents and affidavits that a Party intends to use during its presentation at the arbitration hearing shall be submitted to the Panel and served on the other Party with the position and reply statements. All demonstrative exhibits and a list of the witnesses a Party anticipates calling to present live testimony at the arbitration hearing, along with a brief summary of the witnesses expected

Page 6 of 8

testimony, shall be exchanged no later than ten (10) days in advance of the presentations.

(ii) The Panel shall determine a reasonable time and location for the presentations.

(iii) Each Party shall make an oral and/or documentary presentation of its position at the arbitration hearing in such order and in accordance with the time schedule established by the Panel. The Panel may question each of the presenters and/or witnesses during or following any and all presentations.

K. *Decision and Award.* The Panel shall promptly (within sixty (60) days of conclusion of the presentations at the arbitration hearing or such longer period as the Parties may mutually agree) determine the claims of the Parties and render a final decision in writing. The decision shall state with specificity the findings of fact and conclusions of law on which it rests. The decision rendered by the Panel may be enforced in accordance with Section I.A.(ii), above, and may only be appealed pursuant to Section II. L. below. The decision shall be served upon each of the Parties by facsimile transmission and by overnight mail.

(i) If applicable law allows pre-award interest, the Panel may, in its discretion, grant pre-award interest and, if so, such interest may be at commercial rates in the state chosen by the Parties pursuant to Section II.C.(i) during the relevant period. The Panel shall not award consequential, punitive, indirect or other non-compensatory damages.

(ii) Within ten (10) days of receipt of the award either Party may submit a Motion to Modify the award. A response to the Motion to Modify shall be due within fifteen (15) days thereafter, and the Panel shall rule thereon within fifteen (15) days after receipt of the response.

(iii) Judgment on the award may be entered in the United States District Court for the federal district within which the arbitration hearing was held

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001818

at any time within one year after the decision is made. If such court after the institution of an action hereunder should decline jurisdiction, then the action may be commenced in any court, including state courts having jurisdiction.

    L.    *Vacation of Award and Appeal.*    The Parties agree that an award made by the Panel may only be vacated or confirmed by a federal court of proper jurisdiction as established above. If such court after the institution of an action hereunder should decline jurisdiction, then the action may be commenced in any court, including state courts having jurisdiction. The Parties agree that an award made by the Panel may be vacated by a court only if the award was procured by or through fraud or corruption. An appeal from an order or judgment pursuant to this Section II.L. shall be instituted in a federal court of proper jurisdiction. If such court after the institution of an action hereunder should decline jurisdiction, then the action may be commenced in any court, including state courts having jurisdiction. Each Party waives any option or objection which it may now or thereafter have to the laying of the venue of any such suit, action or proceeding and irrevocably submits to the jurisdiction of the court in any such suit, action or proceeding. Each Party agrees that a remedy at law for a violation of this Section II.L. may not be adequate and therefore agrees that the remedies of specific performance and injunctive relief shall be available in the event of any violation in addition to any other right or remedy at law or in equity to which any Party may be entitled.

    M.    *Res Judicata.*    To the extent permitted by law, any decision of the Panel shall not be *res judicata* or have any binding effect in any unrelated litigation or arbitration where any Party to this Agreement may also be a party.

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001819

EXHIBIT "I"

Well Data Trade and Confidentiality Agreement

Attached to and made a part of that certain Operating Agreement dated October 1, 2009 by and between BP Exploration & Production Inc., as Operator, and MOEX Offshore 2007 LLC, as Non-Operator

This Agreement ("Agreement") is made effective _____, 200_ (the "Effective Date") between BP Exploration & Production Inc. ("BP") and _____ (collectively "the _____ Parties") and _____ ("_____"), and _____ (collectively "the _____ Parties"). In this Agreement, the _____ Parties and the _____ Parties may be sometimes referred to individually as a "Party" or collectively as the "Parties."

Recitals

The _____ Parties are the owners of the well data from the *Operator's Name*, *Protraction Area Name* *Block #*, OCS-G _____ No. 1 Well, identified on Exhibit "A" attached to and made a part of this Agreement (the "*Insert Prospect Name* Well Data").

The _____ Parties are the owners of the well data from the *Operator's Name*, *Protraction Area Name* *Block #*, OCS-G _____ No. _, Well(s), identified on Exhibit "B" attached to and made a part of this Agreement (the "*Insert Prospect Name* Well Data").

The Parties have agreed to exchange all of the *Insert Prospect Name* Well Data for all of the *Insert Prospect Name* Well Data, unless otherwise specified in this agreement.

The Parties desire, by their execution of this Agreement, to set forth the terms and provisions of the well data exchange, and further desire to set forth the Parties' confidentiality obligations in regard to the well data received by each Party.

Accordingly, in consideration of the mutual advantages and benefits accruing to the Parties, and other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

ARTICLE 1

Definitions

Affiliate:
"Affiliate," means any corporation, company, limited liability company, partnership, or other legal entity that:
- is owned or controlled by a Party, or
- is owned or controlled by any other corporation, company, limited liability company, partnership, or other legal entity that is owned or controlled by a Party, or
  - owns or controls a Party, or
- is owned or controlled by a corporation, company, limited liability company, partnership, or other legal entity that owns or controls a Party.

Page 1 of 16

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001820

For the purposes of this definition, ownership or control means the ownership, directly or indirectly, of fifty percent (50%) or more of the shares, voting rights, or interest in a corporation, company, limited liability company, partnership, or other legal entity.

Confidential Information:

"Confidential Information" means (i) as to the _____ Parties, the *Insert Prospect Name* Well Data and any copies and reproductions thereof, and (ii) as to the _____ Parties, the *Insert Prospect Name* Well Data and any copies and reproductions thereof.

Consultant:

"Consultant" means an individual, corporation, company, limited liability company, partnership, financial analyst/institution, auditor or other legal entity that is engaged by a Party to evaluate, interpret, reprocess or make other technical studies of the well data received by that Party under the provisions of this Agreement, but shall not include one who is primarily engaged in the business of exploring for oil, gas, or other hydrocarbons.

Disclose or Disclosure:

"Disclose" or "Disclosure" means to display, show, reveal, or give access to, or permit to be viewed or accessed, the Confidential Information or any part thereof.

Transfer:

"Transfer" means a sale, assignment, trade, loan, conveyance, exchange, encumbrance, license, or other disposition of the Confidential Information.

ARTICLE 2

(Insert Prospect Name) Well Data

2.1   Grant of the *(Insert Prospect Name)* Well Data Use to the _____ Parties
The _____ Parties grant to the _____ Parties the non-exclusive, non-transferable (except as provided herein), perpetual right to use the _____ Well Data under the terms and conditions of this Agreement.

2.2   *(Insert Prospect Name)* Well Data Ownership
The *Insert Prospect Name* Parties represent and warrant that they hold full ownership rights in and to the _____ Well Data. The _____ Well Data is proprietary to the _____ Parties and the _____ Parties maintain all trade secret and copyright interests in such data. Except as provided herein, the _____ Parties retain the exclusive right to Disclose or Transfer the _____ Well Data to other parties at any time and under whatever terms and conditions they consider acceptable, subject to the terms of the joint operating agreement between the _____ Parties.

2.3   The _____ Parties' Obligation of Confidentiality and Restriction on Disclosure and Transfer
The _____ Parties agree to treat the _____ Well Data, and any copies and reproductions thereof, as confidential, agree to use the _____ Well Data only for their internal business purposes and the internal business purposes of their Affiliates, and agree not to Disclose or Transfer the _____ Well Data, except as specifically permitted under this Agreement and shall exercise the same degree of care to safeguard the _____ Well Data as they would for their own Confidential Information of a similar nature.

Page 2 of 16

2.4   Exceptions to the _____ Parties' Obligation of Confidentiality and Restriction on Disclosure and Transfer

A.   The _____ Parties, or each of them, may Disclose or Transfer the _____ Well Data to their Affiliate(s) provided that such Affiliate(s) agrees to the obligations of confidentiality and restrictions on Disclosure or Transfer set forth in this Agreement.

B.   The _____ Parties, or each of them, may Disclose the _____ Well Data, including providing copies of the _____ Well Data, to a Consultant retained by such Party ("the Disclosing *Insert Prospect Name* Party") to evaluate, reprocess, or interpret the _____ Well Data, provided that before any such Disclosure occurs, the Consultant must agree in writing that: (1) any evaluation, reprocessing or interpretation of the _____ Well Data is for the sole benefit of the Disclosing *Insert Prospect Name* Party, or its Affiliate, making the Disclosure, (2) the _____ Well Data will be maintained in accordance with Section 2.3 above and will not be Disclosed to any third party without the prior written permission of the _____ Parties, and (3) upon completion of its work, all copies of the _____ Well Data will be returned to the Disclosing _____ Party, or its Affiliate, making the Disclosure.

C.   The _____ Parties' obligation of confidentiality and restriction on Disclosure does not apply to the extent any portion of the _____ Well Data: (1) comes legally into the possession of the _____ Parties, or any of them, or the possession of an Affiliate, independent of this Agreement, or is legally divulged to the _____ Parties, or any of them, or an Affiliate, by a third party without limitation on disclosure, or (2) becomes part of the public domain through no fault or neglect of the _____ Parties, or any of them, or an Affiliate, or (3) must be disclosed to third parties under requirement of law, including, but not limited to, the regulations of the Minerals Management Service ("MMS") of the Department of Interior. In the event the _____ Parties are required by any rule, law or court order to disclose _____ Well Data, the _____ Parties shall immediately notify the _____ Parties and make good faith efforts to cooperate in the _____ Parties' efforts to obtain any injunctive or protective orders that the _____ Parties may unilaterally deem desirable or necessary.

2.5   Responsibility for Unauthorized Disclosure or Transfer
The _____ Parties shall be responsible for ensuring that all persons to whom it Discloses or Transfers the _____ Well Data keep such Well Data confidential and not Disclose or Transfer such Well Data to any unauthorized person, and comply with the use restrictions set forth in this Agreement. No _____ Party shall be liable for any breach of this Agreement by any other _____ Party, and the _____ Parties agree to hold all such non-breaching _____ Party harmless for any breach of this Agreement by a breaching _____ Party.

2.6   Paleo. Samples and Preparation
The _____ Parties agree to make reasonably available to the _____ Parties raw cutting samples for all depths collected in the respective borehole(s) corresponding to the _____ Well Data. Raw cuttings should be in quantities sufficient to conduct standard preparations for foraminifera and nannofossil analyses. In the event that the quantity of raw cuttings are insufficient to conduct standard paleo analyses, the _____ Parties are each entitled to borrow the previously prepared foraminifera wash and nannofossil slides used for the _____ Parties' paleontological analyses. After the _____ Parties have completed the

CONFIDENTIAL                                              APC-HEC1-000001822

ACCESS RESTRICTED

biostratigraphic analyses, the _____ Parties each agree to return all previously prepared foraminifera wash and nannofossil slide materials that were borrowed. Any unused, unprocessed raw materials provided to any of the _____ Parties will be returned after sample preparation is complete. Materials and residues resulting from sample processing (foram wash, nanno slurries, etc.) will become the property of the _____ Parties. All such furnished material shall be deemed to constitute a part of the _____ Well Data for all purposes.

2.7   Summary Reports

The _____ Parties agree to provide original paleontologic data in digital format, where possible, and to make reasonably available to the _____ Parties paleontological and biostratigraphic interpretations equivalent to or more detailed than what is provided to the MMS. The interpretations provided by the _____ Parties will be in the form of a summary of foraminiferal and nannofossil species events or "tops" and paleoenvironmental interpretations. All such furnished material shall be deemed to constitute a part of the _____ Well Data for all purposes.

2.8   Conventional Core

The _____ Parties agree to make reasonably available to the _____ Parties all conventional core data taken from all depths in the wellbore(s) which is part of the _____ Well Data. The _____ Parties shall be allowed to look at the conventional core photographs, as well as, physically inspect the conventional core at _____ Labs. The _____ Parties, individually, shall be allowed up to three physical inspection(s) of the conventional core within a period of one year from the date on which the last Party has executed this Agreement. Any costs associated with viewing the conventional core shall be at the sole cost of the viewing company. The _____ Parties shall also be allowed access to thin section samples made from conventional core and rotary cores, as well as petrographic (point count) data derived from the thin sections, and scanning electron microscopy (SEM) and X-Ray diffraction (XRD) data.

(Optional)

2.9   Data Being Withheld From *Prospect Name/Prospect Name* Trade

It is understood and agreed to between the _____ Parties and the _____ Parties that the Conventional Core data and the Palynostratigraphic Analysis from the *Insert Prospect Name* Well will not be made a part of this data exchange.

ARTICLE 3

*(Insert Prospect Name)* Well Data

Grant of the *(Insert Prospect Name)* Well Data Use to the _____ Parties

The _____ Parties grant to the _____ Parties the non-exclusive, non-transferable (except as provided herein), perpetual right to use the _____ Well Data under the terms and conditions of this Agreement.

3.2   *(Insert Prospect Name)* Well Data Ownership

CONFIDENTIAL

ACCESS RESTRICTED

APC-HEC1-000001823