## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO on APRIL 20, 2010 | § § § § § § | MDL No. 2179 SECTION: J |
| This document relates to: *2:10-cv-04182;* *2:10-cv-04183* | § § § § § § § § | Judge Carl J. Barbier Magistrate Judge Sally Shushan |

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT M-I L.L.C.'s MOTION TO DISMISS THE STATE OF ALABAMA'S FIRST AMENDED COMPLAINT

**OF COUNSEL:**
MORGAN, LEWIS & BOCKIUS LLP

Derek E. Leon
dleon@morganlewis.com
Texas Bar No. 24002463
5300 Wachovia Financial Center
200 South Biscayne Boulevard
Miami, Florida  33131
Telephone:    (305) 415-3000
Facsimile:    (305) 415-3001

Denise Scofield
dscofield@morganlewis.com
Texas Bar No. 00784934
1000 Louisiana, Suite 4000
Houston, Texas  77002
Telephone:    (713) 890-5000
Facsimile:    (713) 890-5001

**ATTORNEYS FOR DEFENDANT M-I L.L.C.**

June 3, 2011

MORGAN, LEWIS & BOCKIUS LLP

By:  */s/ Hugh E. Tanner*
    Hugh E. Tanner
    htanner@morganlewis.com
    Texas Bar No. 19637400
    1000 Louisiana, Suite 4000
    Houston, Texas  77002
    Telephone:    (713) 890-5000
    Facsimile:    (713) 890-5001

**ATTORNEYS FOR DEFENDANT M-I L.L.C.**

# TABLE OF CONTENTS

**Page**

Introduction And Summary Of Argument ............................................................... 1

Statement Of Facts ............................................................................................... 3

Argument ............................................................................................................ 4

I.      OPA Displaces All General Maritime Law Claims For
        Oil Spill-Related Damages ......................................................................... 7

II.     Pursuant To OPA, Persons Injured By An Oil Spill
        Cannot Directly Sue M-I ........................................................................... 10

        A.      This Court Lacks Jurisdiction To Decide Alabama's Claims
                Because It Has Not Satisfied OPA's Presentment Requirement ........... 10

        B.      Even If Alabama Satisfied OPA's Presentment Requirements, Its Sole
                Remedy Lies Against The Responsible Parties Designated Under OPA—
                Not M-I .................................................................................. 12

III.    To The Extent Any Maritime Law Claims Survive, The Economic Loss Rule Bars
        These Claims .......................................................................................... 14

IV.     OCSLA Forecloses Alabama's State Law Claims ......................................... 15

V.      To The Extent Any State Law Claims Survive, Alabama Has Failed To Plead
        Claims For Relief Under Applicable Law ..................................................... 18

        A.      Alabama Fails To State a Claim For Nuisance .................................... 19

        B.      Alabama Fails To State A Claim For Trespass .................................... 20

VI.     Alabama Has Failed To Properly Plead Its Various Statutory State Law Claims .......... 21

        A.      Alabama's Claim Under The Environmental Management Act Should Be
                Dismissed ............................................................................... 21

        B.      Alabama's Claim Under The Water Pollution Control Act Should Be
                Dismissed ............................................................................... 23

        C.      Alabama's Claim Under the Air Pollution Control Act Should Be
                Dismissed ............................................................................... 25

        D.      Alabama's Claim Under The Hazardous Wastes Management Act Should
                Be Dismissed ........................................................................... 26

        E.      Alabama's Claim Under The Solid Waste Disposal Act Should Be
                Dismissed ............................................................................... 27

VII.    Alabama Has Pleaded No Claim Entitling It To Punitive Damages Against M-I .......... 28

Conclusion ......................................................................................................... 29

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ala. Dep't of Envtl. Mgmt. v. Wright Bros. Constr. Co.*,
    604 So. 2d 429 (Ala. Civ. App. 1992) ....................................................................22, 29

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009)..........................................................................................25

*Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.*,
    51 F.3d 235 (11th Cir. 1995) ................................................................................11

*Borland v. Sanders Lead Co.*,
    369 So. 2d 523 (Ala. 1979)...................................................................................21

*Bourquard v. L.O. Ausauma Enters., Inc.*,
    52 So. 3d 248 (La. Ct. App. 2010)..........................................................................20

*Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*,
    492 U.S. 257 (1989)..............................................................................................24

*City of Arlington v. City of Fort Worth*,
    873 S.W.2d 765 (Tex. App. 1994)..........................................................................21

*Clausen v. M/V New Carissa*,
    171 F. Supp. 2d 1127 (D. Or. 2001) .......................................................................7

*Dauphinais v. Cunningham*,
    395 F. App'x 745, 746 (2d Cir. 2010) ...................................................................26

*Donald v. Amoco Prod. Co.*,
    735 So. 2d 161 (Miss. 1999)................................................................................21

*EP Operating Ltd. P'ship v. Placid Oil Co.*,
    26 F.3d 563 (5th Cir. 1994) .........................................................................6, 15, 16

*Gabarick v. Lauren Mar. (Am.), Inc.*,
    Civil Action Nos. 08-04007, 08-04023, 08-04046,
    2008 WL 3560426, at *1 (E.D. La. Aug. 11, 2008) ...................................................8

*Gabarick v. Laurin Mar. (Am.) Inc.*,
    623 F. Supp. 2d 741 (E.D. La. 2009).............................................1, 6, 7, 8, 9, 11, 13, 17

*Gov't of the Canal Zone v. Burjan*,
    596 F.2d 690 (5th Cir. 1979) ..............................................................................18

**TABLE OF AUTHORITIES**
(continued)

Page

*Gregg v. Delhi-Taylor Oil Corp.*,
  344 S.W.2d 411 (Tex. 1961).........................................................................21

*Gulf Offshore Co. v. Mobil Oil Corp.*,
  453 U.S. 473 (1981)...........................................................................2, 15, 16

*Holubec v. Brandenberger*,
  214 S.W.3d 650 (Tex. App. 2006).................................................................29

*In re Katrina Canal Breaches Consol. Litig.*,
  647 F. Supp. 2d 644 (E.D. La. 2009)............................................................19

*Johnson v. Colonial Pipeline Co.*,
  830 F. Supp. 309 (E.D. Va. 1993) ................................................................10

*LeSassier v. Chevron USA, Inc.*,
  776 F.2d 506 (5th Cir. 1985) ...................................................................16, 17

*Marathon Pipe Line Co. v. LaRoche Indus. Inc.*,
  944 F. Supp. 476 (E.D. La. 1996).................................................................11

*Monty v. Hayward*,
  451 So. 2d 938 (Fla. Dist. Ct. App. 1984) ....................................................29

*Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atl. Corp.*,
  924 F. Supp. 1436 (E.D. Va. 1996),
  *aff'd*, 122 F.3d 1062 (4th Cir. 1997)...............................................................7

*Nations v. Morris*,
  483 F.2d 577 (5th Cir. 1973) ........................................................................16

*Nw. Airlines, Inc. v. Transp. Workers Union of Am.*,
  451 U.S. 77 (1981)..........................................................................................7

*Petroleum Prods. Corp. v. Clark*,
  248 So. 2d 196 (Fla. Dist. Ct. App. 1971) ....................................................21

*Powell v. Dallas Morning News LP*,
  610 F. Supp. 2d 569 (N.D. Tex. 2009) .........................................................25

*Powell v. Residential Mortg. Cap.*,
  No. C 09-04928 JF (PVT), 2010 WL 2133011, at *1
  (N.D. Cal. May 24, 2010)..............................................................................25

# TABLE OF AUTHORITIES
## (continued)

Page

*Reserve Mooring Inc. v. Am. Comm. Barge Line, LLC*,
    251 F.3d 1069 (5th Cir. 2001) ........................................................................14

*Rice v. Harken Exploration Co.*,
    89 F. Supp. 2d 820 (N.D. Tex. 1999) ...............................................................8

*Rice v. Merritt*,
    549 So. 2d 508 (Ala. Civ. App. 1989) .............................................................29

*Robins Dry Dock & Repair Co. v. Flint*,
    275 U.S. 303 (1927)......................................................................................3, 14

*Rodrigue v. Aetna Cas. & Sur. Co.*,
    395 U.S. 352 (1969)......................................................................................2, 16

*Ronquille v. MMR Offshore Servs., Inc.*,
    353 F. Supp. 2d 680 (E.D. La. 2004)..............................................................18

*Ross v. Conoco, Inc.*,
    828 So. 2d 546 (La. 2002) ...............................................................................29

*S. Port Marine, LLC v. Gulf Oil Ltd. P'ship*,
    234 F.3d 58 (1st Cir. 2000)...............................................................5, 7, 17, 29

*Sadler v. Int'l Paper Co.*,
    Civil Action No. 09-cv-1254, 2010 WL 5125505, at *1
    (W.D. La. Sept. 29, 2010),
    *modified on other grounds*, 2010 WL 5125502..............................................19

*Seale v. Pearson*,
    736 So. 2d 1108 (Ala. Civ. App. 1999) ..........................................................29

*In re Settoon Towing LLC*,
    Civil Action No. 07-1263, 2009 WL 4730969, at *1
    (E.D. La. Dec. 4, 2009).....................................................................................9

*In re Settoon Towing LLC*,
    Civil Action No. 07-1263, 2009 WL 4730971, at *1
    (E.D. La. Dec. 4, 2009).....................................................................................9

*Shanin v. Darling*,
    606 F. Supp. 2d 525 (D. Del. 2009)................................................................26

## TABLE OF AUTHORITIES
### (continued)

Page

*Snyder Oil Corp. v. Samedan Oil Corp.*,
   208 F.3d 521 (5th Cir. 2000) ........................................................................18

*Southland Co. v. Aaron*,
   80 So. 2d 823 (Miss. 1955) ...........................................................................29

*State ex rel. Dema Realty Co. v. McDonald*,
   121 So. 613 (La. 1929) ..................................................................................19

*In re Taira Lynn Marine Ltd. No. 5, LLC*,
   444 F.3d 371 (5th Cir. 2006) ........................................................................14

*Tanguis v. M/V Westchester*,
   153 F. Supp. 2d 859 (E.D. La. 2001) ..........................................................7, 8

*Tenn. Gas Pipeline v. Houston Cas. Ins. Co.*,
   87 F.3d 150 (5th Cir. 1996) ...............................................................5, 15, 16

*Texaco Exploration & Prod., Inc. v. AmClyde Engineered Prods. Co.*,
   448 F.3d 760 (5th Cir. 2006) ........................................................................16

*TS & C Invs. LLC v. Beusa Energy Inc.*,
   344 F. App'x 907 (5th Cir. 2009) .................................................................20

*Two Old Hippies, LLC v. Catch the Bus, LLC*,
   No. CIV 10-0459 JB/RLP, 2011 WL 831302, at *1
   (D.N.M. Feb. 11, 2011)..................................................................................25

*United States v. California*,
   332 U.S. 19 (1947)..........................................................................................15

*United States v. Halper*,
   490 U.S. 435 (1989)........................................................................................22

*United States v. M/V Big Sam*,
   681 F.2d 432 (5th Cir. 1982) ...........................................................................9

*United States v. Oswego Barge Corp.*,
   664 F.2d 327 (2d Cir. 1981)..............................................................................9

*W. Oil & Gas Ass'n v. Sonoma Cnty.*,
   905 F.2d 1287 (9th Cir. 1990) ......................................................................15

**TABLE OF AUTHORITIES**
(continued)

Page

**CONSTITUTIONAL PROVISIONS, STATUTES, & RULES**

U.S. Const. amend. V ......................................................................................................22

Oil Pollution Act of 1990, 33 U.S.C. § 2701 *et seq* .......................................................1

33 U.S.C. § 2702 .................................................................................3, 5, 6, 10, 13, 14

33 U.S.C. § 2709 .............................................................................................3, 6, 13

33 U.S.C. § 2710 ..........................................................................................................13

33 U.S.C. § 2713 .............................................................................................2, 10, 11, 12

33 U.S.C. § 2718 ..........................................................................................................17

Outer Continental Shelf Lands Act, 43 U.S.C. § 1331 *et seq* ..........................................1

43 U.S.C. § 1332 ..........................................................................................................15

43 U.S.C. § 1333 .............................................................................................2, 16, 18

43 U.S.C. § 1349 ..........................................................................................................16

43 U.S.C. § 1802 .............................................................................................5, 15

Ala. Code Ann. § 6-5-121 ..........................................................................................20

Ala. Code Ann. § 22-22-9 ..........................................................................................24

Ala. Code Ann. § 22-22-14 .................................................................................22, 24

Ala. Code Ann. § 22-22A-5 .........................................................................21, 22, 23, 26

Ala. Code Ann. § 22-27-2 ...................................................................................27, 28

Ala. Code Ann. § 22-27-3 ..........................................................................................28

Ala. Code Ann. § 22-27-7 ..........................................................................................27

Ala. Code Ann. § 22-27-11 ........................................................................................27

Ala. Code Ann. § 22-28-22 ........................................................................................26

Ala. Code Ann. § 22-30-19 ........................................................................................26

## TABLE OF AUTHORITIES
### (continued)

**Page**

LA. CIV. CODE ANN. art. 667 ......................................................................................................19

FED. R. CIV. P. 9 ........................................................................................................................4

FED. R. CIV. P. 12 .............................................................................................................1, 12, 28

## OTHER AUTHORITIES

135 CONG. REC. H7954 (1989) ...............................................................................................5, 12

S. REP. NO. 101-94 (1989), *reprinted in* 1990 U.S.C.C.A.N. 722 ..........................................8, 11

## INTRODUCTION AND SUMMARY OF ARGUMENT

In its First Amended Complaint ("Complaint"), the State of Alabama ("Alabama" or the "State") seeks to hold M-I L.L.C. ("M-I") liable for economic damages allegedly incurred by the State following the *Deepwater Horizon* explosion and subsequent oil spill.  Alabama's claims fail to state a claim for relief against M-I and should therefore be dismissed.

Despite the fact that M-I was only a service provider—a vendor—without authority to direct any drilling operations on the *Deepwater Horizon*, Alabama nevertheless contends that M-I is fully liable for alleged injuries the State incurred following the blowout and oil spill.  Alabama attempts to bring thirteen separate claims against M-I, but it ultimately fails to state any claim on which relief can be granted.  *See* FED. R. CIV. P. 12(b)(6).  Further, Alabama's claims fail for lack of subject-matter jurisdiction and should be dismissed on this basis as well.  *See* FED. R. CIV. P. 12(b)(1).

Two federal statutes govern the resolution of Alabama's claims: the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. § 2701 *et seq.*, and the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1331 *et seq*.  OPA provides Alabama with sweeping remedies for its alleged harms—including remedies for the precise kinds of harms allegedly suffered.  OCSLA directs the Court's choice of law analysis and forecloses claims asserted against M-I under general maritime law and state law.

First, OPA was created to provide a comprehensive statutory framework to address economic damages caused by an oil spill.  OPA displaces general maritime law claims for damages recoverable under OPA.  *Gabarick v. Laurin Mar. (Am.) Inc.*, 623 F. Supp. 2d 741, 750 (E.D. La. 2009).  Because Alabama seeks to recover damages explicitly provided for by OPA, OPA is its sole remedy for economic loss and property damages, and its general maritime law claims for negligence and gross negligence must be dismissed.

OPA, through its interaction with OCSLA, also forecloses Alabama's state law claims. Through OCSLA, Congress clarified its intention that the conduct at issue here—oil and gas exploration and development on the Outer Continental Shelf—is subject to exclusive federal jurisdiction and that (with few exceptions not applicable here) federal law alone governs conduct and liability related to such activities. 43 U.S.C. § 1333(a). Under OCSLA, it is only the law of an adjacent state—in this case, Louisiana—that may *potentially* be borrowed as surrogate federal law, but state law may be applied only to activities occurring on "artificial islands and fixed structures" on the Outer Continental Shelf and only where necessary to fill a "substantial gap[]" or "void[]" in federal law. *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 480 (1981) (internal quotations omitted); *see also Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352, 358 (1969). The *Deepwater Horizon* was not an artificial island or a fixed structure, and there is no gap or void in federal law here. Accordingly, Alabama's state law claims must be dismissed.

Second, this Court cannot exercise jurisdiction over Alabama's claims because it has not fulfilled OPA's presentment requirements. OPA is the exclusive law governing claims for oil spill-related damages. As a plaintiff asserting OPA claims, Alabama must satisfy the mandatory condition precedent that all claims for oil spill-related damages be presented to the Responsible Party before filing suit. 33 U.S.C. § 2713. To the extent that Alabama has failed to satisfy this mandatory presentment requirement under OPA, this Court lacks jurisdiction to hear Alabama's claims, and they should be dismissed.

Moreover, even if Alabama has satisfied OPA's presentment requirement and can invoke this Court's jurisdiction, it may seek relief only from the Responsible Parties. By its plain language, OPA provides for recovery of oil spill-related damages directly and exclusively from the Responsible Parties. The Responsible Parties, in turn, may seek contribution against any

2

other entity they believe to be liable or potentially liable for causing the damages. *See* 33 U.S.C. §§ 2702, 2709. Consistent with Congress's goal to provide an efficient process for injured persons to recover oil spill-related damages, OPA does not permit direct actions against non-responsible third parties such as M-I. Thus, even if Alabama properly presented its claims under OPA, it does not have a direct right of action against M-I for oil spill-related damages, and its claims seeking such damages must be dismissed.

Third, even if OPA did not displace Alabama's general maritime law claims, they are barred under the Economic Loss Rule, which precludes recovery for pure economic losses in the absence of physical injury to a proprietary interest. *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303 (1927). Alabama alleges no such physical injury, which is fatal to its claims.

Fourth, to the extent state claims are not preempted by federal law, Alabama has failed to plead cognizable claims for relief under applicable state law.

Finally, to the extent Alabama is seeking punitive damages from M-I, such recovery is foreclosed under applicable law.

## STATEMENT OF FACTS

In June 2008, Defendant BP Exploration & Production ("BP") acquired a lease from the U.S. government to explore and develop hydrocarbon reserves on a site in the Gulf of Mexico, 48 miles south of Louisiana on the Outer Continental Shelf. Compl. ¶¶ 8, 38. The drilling contractor for the Macondo well was Defendant Transocean, which owned and operated the *Deepwater Horizon*. *Id.* ¶¶ 12-17, 44. BP also contracted with other service providers, including M-I, which provided drilling fluids on the rig. *Id.* ¶¶ 11, 20. M-I, as a service provider for BP, did not exercise (and is nowhere alleged to have exercised) responsibility for drilling operations on the rig.

On April 20, 2010, an explosion and fire occurred aboard the *Deepwater Horizon* during the final stages of drilling the Macondo well.  The rig later sank, severing a pipe connecting the vessel to the wellhead on the ocean floor and leading to the release of oil.  *Id*. ¶¶ 1, 2.  In the aftermath of the accident, the Coast Guard designated Defendant BP Exploration & Production the "Responsible Party" under OPA for the subsea release of oil and Transocean a Responsible Party for the release of oil on the surface of the water.  Compl. ¶¶ 8, 15.

Within days of the accident, the first of hundreds of lawsuits were filed in courts throughout the country, with various plaintiffs alleging that M-I is liable for their injuries.  Following the creation of this multi-district litigation, Alabama filed the present Amended Complaint.  Alabama designated its Complaint as an admiralty or maritime case under Federal Rule of Civil Procedure 9(h)(1).  *Id*. ¶ 33.

Alabama alleges various kinds of economic loss or property damage stemming from the oil spill.  Alabama alleges thirteen causes of action against M-I: (i) negligence under general maritime law; (ii) gross negligence under general maritime law; state common law claims for (iii) public nuisance; (iv) private nuisance; and (v) trespass; (vi) civil penalties under the Alabama Environmental Management Act ("AEMA"); (vii) civil penalties for violations of the Alabama Water Pollution Control Act ("AWPCA"); (viii) damages under the AWPCA; (ix) civil penalties under the Alabama Air Pollution Control Act ("AAPCA"); (x) civil penalties under the Alabama Hazardous Waste Management Act ("AHWMA"); (xi) civil penalties under the Alabama Solid Waste Disposal Act ("ASWDA"); (xii) negligence; and (xiii) wantonness.  All of these claims fail as a matter of law and should be dismissed.

## ARGUMENT

A comprehensive federal regulatory and liability scheme, set forth in OCSLA and OPA, governs the discharge of oil relating to oil exploration and development on the Outer Continental

Shelf.  The Outer Continental Shelf has long been an area of federal, not state, concern and oversight.  OCSLA establishes "national authority over the [Outer Continental Shelf] at the expense of both foreign governments and the governments of the individual states."  *Tenn. Gas Pipeline v. Houston Cas. Ins. Co.*, 87 F.3d 150, 153 (5th Cir. 1996).  In enacting OCSLA and assuming broad authority over subsea lands outside of the territorial waters of the states, Congress sought to address the country's energy needs while protecting the environment and the public and private interests impacted by oil and gas development on the Outer Continental Shelf.  *See* 43 U.S.C. § 1802.

Following the Exxon Valdez oil spill in 1989, Congress revisited its approach to compensating parties injured as a result of an oil spill.  Passed in 1990, OPA is "a comprehensive federal scheme for oil pollution liability."  *S. Port Marine, LLC v. Gulf Oil Ltd. P'ship*, 234 F.3d 58, 64 (1st Cir. 2000).  Under Congress's scheme, persons damaged as a result of an oil spill are entitled to wide-ranging recovery from a federally designated "Responsible Party" under strict liability provisions intended to quickly compensate injured parties "without resort to cumbersome litigation."  135 CONG. REC. H7954, H7965 (1989).  Public entities such as Alabama that claim injury from an oil spill are entitled to prompt payment from the Responsible Party for, *inter alia*:  (i) removal costs—"costs incurred by any person for acts taken by the person which are consistent with the National Contingency Plan" (33 U.S.C. § 2702(b)(1)(B)); (ii) real or personal property damage—"[d]amages for injury to, or economic losses resulting from destruction of, real or personal property, which shall be recoverable by a claimant who owns or leases that property," (*id.* § 2702(b)(2)(B)); (iii) revenues—"[d]amages equal to the net loss of taxes, royalties, rents, fees, or net profit shares due to the injury, destruction, or loss of real property, personal property, or natural resources, which shall be recoverable by the

Government of the United States, a State, or a political subdivision thereof," (*id.* § 2702(b)(2)(D)); (iv) profits and earning capacity—"[d]amages equal to the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources, which shall be recoverable by any claimant," (*id.* § 2702(b)(2)(E)); and (v) public services—"[d]amages for net costs of providing increased or additional public services during or after removal activities, including protection from fire, safety, or health hazards, caused by a discharge of oil, which shall be recoverable by a State, or a political subdivision of a State," (*id.* § 2702(b)(2)(F)).  Litigation, where necessary, is designed to take place between the Responsible Party and other persons the Responsible Party contends are potentially liable for the discharge of oil, through indemnity, subrogation, and contribution actions brought by the Responsible Party.  *See* 33 U.S.C. § 2709; *Gabarick*, 623 F. Supp. 2d at 750.[1]

OPA provides the sole and exclusive federal remedy for persons harmed by an oil spill anywhere within the federal government's jurisdiction.  And where, as here, injuries occur as a result of energy exploration on the Outer Continental Shelf, OCSLA's "broad substantive net" operates in conjunction with OPA to ensure that injured parties are compensated without upsetting Congress's intent that OCSLA "govern the full range of potential legal problems that might arise in connection with operations on the Outer Continental Shelf."  *EP Operating Ltd. P'ship v. Placid Oil Co.*, 26 F.3d 563, 569 (5th Cir. 1994) (quotation and internal citation omitted).

---

[1] Consistent with this scheme, on April 20, 2011, BP, as the Responsible Party under OPA, filed claims for contribution pursuant to OPA against certain of its MDL co-defendants, including Transocean, Halliburton, and Cameron.

As set forth below, Alabama's maritime and state statutory and common law claims against M-I are not cognizable under governing law.  Recognition of such claims would disrupt Congress's carefully considered compensatory regime and frustrate clear congressional intent with respect to operations on the Outer Continental Shelf.  Each of Alabama's claims against M-I must therefore be dismissed.

## I.   OPA DISPLACES ALL GENERAL MARITIME LAW CLAIMS FOR OIL SPILL-RELATED DAMAGES.

Alabama's Complaint seeks damages from M-I under "general maritime law" for both "negligence" and "gross negligence and willful misconduct."  *See* Compl. ¶¶ 94-147.  These claims must be dismissed because they are foreclosed by well-settled law, recognized unanimously by courts across the country, that OPA provides the *exclusive* federal remedy for economic damage caused by an oil spill.  *See S. Port Marine*, 234 F.3d at 64-66; *Gabarick*, 623 F. Supp. 2d at 746; *Clausen v. M/V New Carissa*, 171 F. Supp. 2d 1127, 1134 (D. Or. 2001); *Tanguis v. M/V Westchester*, 153 F. Supp. 2d 859, 867-68 (E.D. La. 2001); *Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atl. Corp.*, 924 F. Supp. 1436, 1447 (E.D. Va. 1996), *aff'd*, 122 F.3d 1062 (4th Cir. 1997) (table).

It is well-recognized that federal common law must cede to congressional enactments.  "[O]nce Congress addresses a subject, even a subject previously governed by federal common law, . . . the task of the federal courts is to interpret and apply statutory law, not to create common law."  *Nw. Airlines, Inc. v. Transp. Workers Union of Am.*, 451 U.S. 77, 95 n.34 (1981).  Here, "[b]ecause OPA provides a comprehensive scheme for the recovery of oil spill cleanup costs and the compensation of those injured by oil spills, the general maritime law does not apply to recovery of these types of damages."  *Nat'l Shipping*, 924 F. Supp. at 1447.

Indeed, courts in this district have at least twice addressed this very issue, and both times they have held that OPA displaces general maritime law.  A decade ago, in *Tanguis v. M/V Westchester*, a court in this district first considered the preemptive effect of OPA, noting that the plain language of the statute—consistent with and confirmed by legislative history—made clear Congress's intent to fully occupy the field and displace "traditional maritime remedies for oil spills."  153 F. Supp. 2d at 867-68 (citing *Rice v. Harken Exploration Co.*, 89 F. Supp. 2d 820, 822 (N.D. Tex. 1999), and S. Rep. No. 101-94 (1989), *reprinted in* 1990 U.S.C.C.A.N. 722, 730).

More recently, in *Gabarick v. Laurin Maritime (Am.) Inc.*, this court considered the exact question presented here and concluded that "the plain language of [OPA] indicates its mandatory and exclusive nature with respect to its covered damages."  623 F. Supp. 2d at 746.  In *Gabarick*, a collision between a barge and a tow boat led to the release of approximately 500,000 gallons of fuel oil into the Mississippi River.  *Gabarick v. Lauren Mar. (Am.), Inc.*, Civil Action Nos. 08-04007, 08-04023, 08-04046, 2008 WL 3560426, at *1 (E.D. La. Aug. 11, 2008).  Plaintiffs alleged that oil contaminated the shoreline and drinking water and that they suffered business losses as a result of the spill.  *Id.*

In reaching its holding that the plaintiffs' claims were preempted by OPA, the Gabarick court conducted a detailed and thorough analysis of the four "*Oswego*" preemption factors:

(1)    legislative history;

(2)    the scope of the legislation;

(3)    whether judge made law would fill a gap left by Congress's silence or rewrite rules that Congress enacted; and

(4)    likeliness of Congress's intent to preempt "long established and familiar principles of the common law or the general maritime law."

*Gabarick*, 623 F. Supp. 2d at 747 (quoting *United States v. Oswego Barge Corp.*, 664 F.2d 327, 344 (2d Cir. 1981)).[2]

As to the first *Oswego* factor, the court reviewed OPA's legislative history and concluded that "Congress's intent in enacting OPA [was] the creation of a single Federal law regarding liability for oil pollution." *Id.* at 748. On the second factor, the court found the scope of OPA all-encompassing: "It defines what damages are covered and the process for pursuing a claim, and allows suit in federal court should that process be unsuccessful." *Id.* As to the third factor, the court held that because of the comprehensiveness of OPA, "there is no gap" that needed to be filled by judge-made law. *Id.* Finally, under the fourth factor, the court held "the intent of Congress . . . articulated in both the express language of the statute and the legislative history, was to encourage settlement and reduce litigation in oil spill cases through the enactment of comprehensive federal legislation that provides cleanup authority, penalties, and liability for oil pollution." *Id.* at 750 (citation and internal quotation omitted).

Accordingly, the court held that OPA preempted the *Gabarick* plaintiffs' maritime law claims seeking "supplemental" remedies against an alleged oil polluter—a holding that has since been repeated without question in other cases in this district. *See In re Settoon Towing LLC*, Civil Action No. 07-1263, 2009 WL 4730969, at *3 (E.D. La. Dec. 4, 2009) ("[T]he OPA damages provision preempts the general maritime law.") (citing *Gabarick*, 623 F. Supp. 2d at 746); *In re Settoon Towing LLC*, Civil Action No. 07-1263, 2009 WL 4730971, at *3-4 (E.D. La. Dec. 4, 2009) (granting summary judgment in favor of the vessel owner on a general maritime claim seeking recovery for oil spill-related claims because OPA preempted the general maritime law for the damages sought).

---

[2] The Fifth Circuit adopted the *Oswego* analysis in *United States v. M/V Big Sam*, 681 F.2d 432, 441-42 (5th Cir. 1982).

In this case, just as the plaintiffs did in *Gabarick*, Alabama has alleged general maritime causes of action and seeks damages for removal costs, property damage, loss of tax revenue associated with decline in local business revenue, tourism, and rentals, and costs associated with additional public services.  *See* Compl. ¶¶ 135, 147, 225, 231-32, 238, 304, 337, 343.  All of these damages are expressly recoverable under OPA by a political subdivision of a state.  *See* 33 U.S.C. § 2702(b).  Thus, regardless of how Alabama characterizes its claims, the damages it seeks under the general maritime law are identical to those recoverable under OPA.  The general maritime law claims therefore must be dismissed.

## II.    PURSUANT TO OPA, PERSONS INJURED BY AN OIL SPILL CANNOT DIRECTLY SUE M-I.

### A.    This Court Lacks Jurisdiction To Decide Alabama's Claims Because It Has Not Satisfied OPA's Presentment Requirement.

Because OPA provides the exclusive remedy for the alleged oil spill-related damages sought in Alabama's Complaint, Alabama must comply with the presentment requirement of OPA before filing suit against the Responsible Parties.  To the extent that Alabama has failed to satisfy this requirement, this Court lacks jurisdiction to hear Alabama's claims against M-I.

OPA's remedial scheme depends on the concept of the "Responsible Party" and the creation of a strict liability compensation procedure intended to provide prompt, complete resolution of claims outside of litigation.  OPA's mandatory presentment requirement is key to this procedure, providing that "all claims for removal costs or damages" covered by OPA "shall" be presented first to the Responsible Party.  33 U.S.C. § 2713(a).  The claims must be sufficiently detailed about the nature and extent of the claimant's alleged injury to allow for genuine settlement negotiations between the claimant and the Responsible Party.  *See*, *e.g.*, *Johnson v. Colonial Pipeline Co.*, 830 F. Supp. 309, 311 (E.D. Va. 1993).  Only if the Responsible Party denies liability for the claim or a sufficiently presented claim is not settled

within 90 days by the Responsible Party may the claimant elect to commence an action in court "against the responsible party." 33 U.S.C. § 2713(c). The presentment requirement is applicable to all OPA claimants, including local government and public entities like Alabama.

"[T]he clear text of § 2713 creates a *mandatory condition precedent barring all OPA claims unless and until a claimant has presented [its] claims*" to the Responsible Party and had them denied. *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.*, 51 F.3d 235, 240 (11th Cir. 1995) (emphasis added); *see also Gabarick*, 623 F. Supp. 2d at 750-51 (dismissing for lack of subject matter jurisdiction all non-OPA claims seeking damages of the type covered by OPA for failure to present such claims to the designated responsible party); *Marathon Pipe Line Co. v. LaRoche Indus. Inc.*, 944 F. Supp. 476, 477 (E.D. La. 1996) ("The Court agrees that § 2713's presentation requirement is jurisdictional and mandates dismissal when that provision is applicable and not complied with by the claimant."); S. REP. No. 101-94 (noting that "the bill requires claims to be presented in the first instance to the discharger, where known"). Regardless of whether an OPA claim has been alleged against a Responsible Party or a non-responsible third party, until OPA's presentment requirements have been met, litigation for oil spill-related claims is foreclosed. Allowing Alabama to bypass the presentment requirement and immediately sue third parties who have not been designated as Responsible Parties would frustrate (and indeed, render unworkable) Congress's intent to provide through OPA a prompt, comprehensive remedial scheme that avoids complex and piecemeal litigation.

In this case, Alabama generally alleges that it "has satisfied" OPA's presentment requirements, but it does not allege that its claim was denied or that its claim was not settled within the statutorily mandated 90 day period. Compl. ¶ 217. This step is mandatory in the presentment process. *See* 33 U.S.C. § 2713(c). Because Alabama has not alleged facts showing

the completion of the presentment process, OPA's mandatory condition precedent acts as an absolute bar to Alabama's suit and divests this Court of jurisdiction to hear its claims.

Moreover, Alabama admits that it seeks recovery of damages that have not been presented in accordance with OPA.  Specifically, Alabama states that it is "presently assessing the breadth of its damages" and "may make additional presentments."  Compl. ¶ 217.  To the extent the Complaint seeks to recover damages for these "additional" non-presented claims, they are unripe, and this Court lacks jurisdiction to adjudicate them.

Alabama's claims against M-I must be dismissed for lack of subject matter jurisdiction because Alabama has not alleged facts showing that it has properly and completely presented its claims to the Responsible Parties.  *See* FED. R. CIV. P. 12(b)(1).

**B.**   **Even If Alabama Satisfied OPA's Presentment Requirements, Its Sole Remedy Lies Against The Responsible Parties Designated Under OPA—Not M-I.**

Even if Alabama had satisfied OPA's presentment requirements and can properly invoke this Court's jurisdiction, its claims for oil spill-related damages against M-I must nonetheless be dismissed because M-I has not been named an OPA "Responsible Party."

Alabama's sole remedy for oil spill-related damages lies against the Responsible Parties under OPA.  33 U.S.C. § 2713 (If a claim properly presented to the Responsible Party is denied, "the claimant may elect to commence an action in court against the responsible party . . . .").  The statutory language is supported by and consistent with clearly stated congressional intent that "[t]he system of liability and compensation provided for in the bill . . . is intended to allow for quick and complete payment of reasonable claims without resort to cumbersome litigation." 135 CONG. REC. at H7965.  Indeed, as this court has previously explained, "[i]n light of Congress's intent to minimize piecemeal lawsuits and the mandatory language of OPA . . . Claimants should pursue claims covered under OPA only against the responsible party and in

accordance with the procedures established by OPA." *Gabarick*, 623 F. Supp. 2d at 750. "Then, the responsible party can take action to recover against third parties," *id.*, as provided for by OPA:

> If the responsible party alleges that the discharge . . . was caused solely by an act or omission of a third party, the responsible party—
>
> (i)      . . . shall pay removal costs and damages to any claimant; and
>
> (ii)     shall be entitled by subrogation to all rights of the . . . claimant to recover removal costs or damages from the third party . . . paid under this subsection.

33 U.S.C. § 2702(d)(1)(B); *see also id.* § 2709 (providing for rights of contribution); *id.* § 2710 (permitting indemnity agreements among potentially responsible parties).

The statutory language makes clear Congress's intent that persons allegedly injured by an oil spill not be additionally inconvenienced by cumbersome and time-consuming litigation. Claimants are entitled to resolution of their claims and payment of their economic damages by a Responsible Party.  Should litigation prove necessary, claimants benefit because they must litigate only against the Responsible Party and recovery is on a strict liability basis.  Complex multi-party litigation—with all of its attendant costs and burdens—is also shifted to the Responsible Party and other parties who are potentially liable for the oil spill, who may allocate fault and damages among themselves through subrogation, contribution, and indemnity.  *See* 33 U.S.C. §§ 2702(d), 2709.

Alabama's claims for oil spill-related damages are not cognizable against M-I because M-I is not a designated Responsible Party under OPA.  Accordingly, to the extent Alabama has brought claims against M-I under OPA,[3] such claims must be dismissed as a matter of law

---

[3] Although Alabama names only Defendants BP, Transocean, Anadarko, Anadarko E&P, and MOEX in its OPA claim, it "realleges" "all preceding paragraphs" in paragraph 205 of this claim, which makes it unclear whether it intends to bring it against other defendants as well.

because M-I is not a designated Responsible Party.  And to the extent Alabama brings non-OPA

claims against M-I for oil spill-related damages within the scope of OPA, these claims should

also be dismissed because they are displaced or preempted by OPA.

### III.    TO THE EXTENT ANY MARITIME LAW CLAIMS SURVIVE, THE ECONOMIC LOSS RULE BARS THESE CLAIMS.

Even if OPA does not displace Alabama's general maritime law claims, the claims must

nonetheless be dismissed to the extent that the damages sought are not recoverable under the

Economic Loss Rule.

The Economic Loss Rule has long been a part of general maritime law.  *See Robins Dry*

*Dock*, 275 U.S. at 303.  Under the rule, which has been consistently reaffirmed by the Fifth

Circuit, "physical injury to a proprietary interest is a prerequisite to recovery of economic losses

in cases of unintentional maritime tort[s]."[4]  *Reserve Mooring Inc. v. Am. Comm. Barge Line,*

*LLC*, 251 F.3d 1069, 1071 (5th Cir. 2001); *see also In re Taira Lynn Marine Ltd. No. 5, LLC*,

444 F.3d 371, 377 (5th Cir. 2006) ("It is unmistakable that the law of this circuit does not allow

recovery of purely economic claims absent physical injury to a proprietary interest in a maritime

negligence suit.").  The rule is a "pragmatic limitation on the doctrine of foreseeability."  *Reserve*

*Mooring*, 251 F.3d at 1071 (internal quotations omitted).

Here, the only injury Alabama could plausibly assert that survives the Economic Loss

Rule is physical damage to its real property.  The other damages Alabama asserts—such as loss

of tax revenue, cleanup costs, and increased public services costs—simply are not based on any

physical injury to a proprietary interest.  Such damages are recoverable under OPA, but not

---

[4] Congress, apparently recognizing the limitation of the Economic Loss Rule, has expressly permitted more expansive remedies for parties under OPA.  *See*, *e.g.*, 33 U.S.C. § 2702(b)(2)(C) (allowing the recovery for subsistence use of natural resources "without regard to the ownership or management of the resources").

under the general maritime law.  Thus, any claims based on anything other than physical damage to State property should be dismissed.

## IV.     OCSLA FORECLOSES ALABAMA'S STATE LAW CLAIMS.

Alabama also alleges that M-I is liable for public and private nuisance, trespass, negligence, and wantonness under state law.  Compl. ¶¶ 220-38, 328-45.  It also asserts claims against M-I under Alabama pollution statutes—the AEMA, AWPCA, AAPCA, AHWMA, and ASWDA.  *Id*. ¶¶ 282-327.

Congress has made clear that state law claims cannot be brought for oil spill-related injuries stemming from oil exploration and development activities on a rig such as the *Deepwater Horizon* that is engaged in activities on the Outer Continental Shelf.  *See Tenn. Gas Pipeline*, 87 F.3d at 153 ("OCSLA makes federal law exclusive in its regulation of the OCS . . . .") (footnote omitted); *see also* 43 U.S.C. § 1332(1) ("the subsoil and seabed of the outer Continental Shelf  appertain to the United States and are subject to its jurisdiction, control, and power of disposition").  Courts have had no trouble finding that claims arising out of or in connection with the operation of oil exploration activities on the Outer Continental Shelf—such as the claims alleged by Alabama—are governed by OCSLA.  *See Tenn. Gas Pipeline*, 87 F.3d at 154; *EP Operating*, 26 F.3d at 569.  Indeed, this Court has already held that OCSLA governs this dispute.  Oct. 16, 2010 Order (Dkt. No. 470) 6-8.

Congress has long asserted plenary control over operations on the Outer Continental Shelf.  *See generally Gulf Offshore Co.*, 453 U.S. at 473; *United States v. California*, 332 U.S. 19 (1947).  Congress's many policy aims with respect to the Outer Continental Shelf require careful balancing of competing goals, such as protecting the environment and encouraging energy production.  *See* 43 U.S.C. § 1802; *see also W. Oil & Gas Ass'n v. Sonoma Cnty.*, 905 F.2d 1287, 1289 (9th Cir. 1990) (OCSLA "declares the policy of the United States that the Outer

Continental Shelf should be available for expeditious and orderly development subject to environmental safeguards."). Through OCSLA, Congress has extended an "expansive substantive reach" over "a wide range of activity occurring beyond the territorial waters of the states." *Texaco Exploration & Prod., Inc. v. AmClyde Engineered Prods. Co.*, 448 F.3d 760, 768 (5th Cir. 2006); *EP Operating*, 26 F.3d at 569. To that end, Congress has declared federal law "exclusive" with respect to activities on the Outer Continental Shelf. *See Tenn. Gas Pipeline*, 87 F.3d at 153; *see also* 43 U.S.C. § 1349(b)(1).

State law applies to activity on the Outer Continental Shelf only in certain narrowly defined circumstances. With respect to activity occurring on "artificial islands" or "fixed structures" that are "erected" on the Outer Continental Shelf, the law of the adjacent state may be adopted as surrogate federal law, but *only* when necessary to fill a "substantial gap[]" or "void[]" that exists in the applicable federal law. *Gulf Offshore Co.*, 453 U.S. at 480 (internal quotations omitted); *Rodrigue*, 395 U.S. at 357-58; *see also* 43 U.S.C. § 1333(a)(2)(A). The *Deepwater Horizon* is not alleged to be—and indeed, is not—an "artificial island" or a "fixed structure" that was "erected" on the seafloor. It is a semi-submersible mobile drilling rig. Thus, by the explicit terms of OCSLA, state law is inapplicable in this case.

Additionally, even if the door was open to state law on the facts presented in this case, state law can only apply to the extent it is "applicable and not inconsistent with" federal law. *Gulf Offshore Co.*, 453 U.S. at 480. The Fifth Circuit "has consistently held that "applicable" must be read in terms of necessity—necessity to fill a significant void or gap." *LeSassier v. Chevron USA, Inc.*, 776 F.2d 506, 509 (5th Cir. 1985) (quoting *Nations v. Morris*, 483 F.2d 577, 585 (5th Cir. 1973)); *see also Gulf Offshore Co.*, 453 U.S. at 480-81 (state law may be adopted only to fill a "substantial gap[] in the coverage of federal law" (citing 43 U.S.C. § 1333(a)(2)

(internal quotation omitted))).  Because Alabama claims economic loss as a result of an oil spill, it can—and indeed, must—seek relief through OPA, which provides a remedy for all of the economic losses sought under state law.  There is no "significant void or gap" in federal law for state law to fill under OCSLA.  *LeSassier*, 776 F.2d at 509; *see also S. Port Marine*, 234 F.3d at 64 (holding that OPA is intended to be the sole and exclusive federal law governing action for oil spill-related damages).  Therefore, Alabama cannot pursue its state law claims.

Nothing in OPA changes this result.  While OPA provides that states may impose additional liability for "the discharge of oil or other pollution by oil within such State," 33 U.S.C. § 2718(a)(1)(A), nothing in OPA or its legislative history evinces an intent to displace OCSLA or to disrupt decades of well-settled law about the limited applicability of state law to activities on the Outer Continental Shelf.  OPA's so-called "savings clause" instead operates where it is needed most:  in state territorial waters where state interests are high, federal interests are lower, and there is little risk of multiple inconsistent laws and legal regimes being applied to the same conduct.

In summary, Congress, through OCSLA, has deemed federal law exclusive on the Outer Continental Shelf and permits the adoption of state law only on a defined subset of *situses* on the Outer Continental Shelf, and only then in situations where there is a significant gap or void in federal law.  *LeSassier*, 776 F.2d at 509.  Through OPA, Congress has provided a complete and comprehensive federal regime governing and providing recovery for damages stemming from oil spills, including those that occur on the Outer Continental Shelf.  *See Gabarick*, 623 F. Supp. 2d at 746-48.  Alabama's alleged injuries are compensable through OPA; therefore, there is no gap or void in the federal law, and all of Alabama's state law claims against M-I should be dismissed.

## V.   TO THE EXTENT ANY STATE LAW CLAIMS SURVIVE, ALABAMA HAS FAILED TO PLEAD CLAIMS FOR RELIEF UNDER APPLICABLE LAW.

Alabama purports to plead causes of action for nuisance (public and private) and trespass under state common law.   Notwithstanding that Alabama's state law claims are foreclosed under OCSLA, and assuming *arguendo* that Alabama could bring such claims, the claims can only arise under the law of the state adjacent to the Outer Continental Shelf *situs*—here, Louisiana. *See* 43 U.S.C. § 1333.  Applying Louisiana law, Alabama's claims fail as a matter of law.

Courts are to consider four types of evidence when determining which State is adjacent to a *situs* on the Outer Continental Shelf:   "(1) geographic proximity; (2) which coast federal agencies consider the subject platform to be 'off of'; (3) prior court determinations; and (4) projected boundaries."  *Snyder Oil Corp. v. Samedan Oil Corp.*, 208 F.3d 521, 524 (5th Cir. 2000).  Alabama alleges that the *Deepwater Horizon* was conducting drilling operations at the Macondo prospect in the Northern Gulf of Mexico.  Compl. ¶ 38.  The Macondo prospect, Alabama explains, is located "on the Outer Continental Shelf 48 miles off the coast of Louisiana."  *Id.*  This Court has concluded that sites in the Mississippi Canyon Block, even farther off the coast of the state, are adjacent to Louisiana for OCSLA purposes.  *See Ronquille v. MMR Offshore Servs., Inc.*, 353 F. Supp. 2d 680, 681 n.3 (E.D. La. 2004) (applying Louisiana law under OCSLA with respect to an alleged injury occurring in Mississippi Canyon block 809, approximately 140 miles southeast of New Orleans).  Further, the Court can take judicial notice that if the boundaries of the State of Louisiana were extended seaward, the location of the *Deepwater Horizon* would fall within its borders.  *See Gov't of the Canal Zone v. Burjan*, 596 F.2d 690, 694 (5th Cir. 1979) ("[O]fficial government maps have long been held proper subjects of judicial notice.").  Thus, to the extent that any state law might apply under OCSLA, it is only

the law of Louisiana.  Claims brought under any other state law must be dismissed and, as set forth below, so too must Alabama's claims under Louisiana law.

A.   **Alabama Fails To State a Claim For Nuisance.**

Alabama alleges that M-I, as a result of its allegedly negligent conduct on the rig, created both a public and a private nuisance.  Compl. ¶¶ 220-32.  Louisiana law recognizes a distinction between a public nuisance, which "annoys the public generally or invades its rights," and a private nuisance, in which "an individual, or class of individuals, sustains as such, a special injury as distinguished from that sustained by the public."  *State ex rel. Dema Realty Co. v. McDonald*, 121 So. 613, 615 (La. 1929).  As a practical matter, however, the elements of the two causes of action are the same.  *Id.* ("[T]here is no difference in principle between a condition which is called a private, and one which is called a public, nuisance; the constituents of both being the same."); *see also Sadler v. Int'l Paper Co.*, Civil Action No. 09-cv-1254, 2010 WL 5125505, at *6 (W.D. La. Sept. 29, 2010) (stating that "the elements of both nuisance theories [are] identical"), *modified on other grounds*, 2010 WL 5125502, at *1 (W.D. La. Dec. 9, 2010).  Alabama's allegations under both nuisance counts are materially identical.

Under Louisiana law, only a "neighbor" can bring a suit for nuisance.  LA. CIV. CODE ANN. art. 667.  By Alabama's own admission, the *Deepwater Horizon* was at least 48 miles away from the closest possible plaintiff.  Compl. ¶¶ 38, 46.  This is insufficient to permit recovery for nuisance under Louisiana law.  In *In re Katrina Canal Breaches Consolidated Litigation*, this Court, applying Louisiana law, held that a distance of three miles between the plaintiffs and defendants was "too attenuated" to support a claim for nuisance.  647 F. Supp. 2d 644, 734 (E.D. La. 2009).  Because a distance of three miles from the alleged source of the nuisance is too great to support relief for nuisance, this Court can hold as a matter of Louisiana law that M-I—working on the *Deepwater Horizon* located at least 48 miles from the Louisiana

coast at the time of the incident—cannot be liable for either public or private nuisance.  *See TS & C Invs. LLC v. Beusa Energy Inc.*, 344 F. App'x 907, 908-09 (5th Cir. 2009) (affirming dismissal of a Louisiana nuisance claim on the grounds that the plaintiffs were 20 miles away from the defendant-oil producer).

Even if the Court finds that Alabama law governs its common law claims, Alabama cannot maintain an action for both public and private nuisance.  *See* Compl. ¶¶ 227-32. According to the Alabama Code:

> Nuisances are *either* public *or* private. A public nuisance is one which damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals. A private nuisance is one limited in its injurious effects to one or a few individuals.  Generally, a public nuisance gives no right of action to any individual, but must be abated by a process instituted in the name of the state. A private nuisance gives a right of action to the person injured.

ALA. CODE ANN. § 6-5-121 (emphasis added).  The language of § 6-5-121 unambiguously defines a nuisance as either public or private, not both, and gives only the State authority to sue for public nuisances.  As the incident underlying this litigation can only be described as a public nuisance pursuant to the language of § 6-5-121, it is not a private nuisance.  Alabama's claim for private nuisance should be dismissed.

### B.    Alabama Fails To State A Claim For Trespass.

Alabama next alleges that M-I discharged oil knowing that it would "invade and intrude upon the State's property."  Compl. ¶ 234.  Alabama alleges further that M-I engaged in this behavior "intentionally and outrageously" and with "gross negligence, willful, wanton and reckless indifference for the rights of others."  *Id.* ¶ 235.  Alabama seeks compensatory and punitive damages.

In Louisiana, "[a] trespass occurs when there is an unlawful physical invasion of the property or possession of another."  *Bourquard v. L.O. Ausauma Enters., Inc.*, 52 So. 3d 248,

251 (La. Ct. App. 2010) (internal quotation omitted).[5]   Thus, Alabama can only recover for trespass for property that it owns upon which oil was present; to the extent the Complaint purports to bring a trespass claim for property that was not invaded by oil, the complaint should be dismissed.

## VI.   ALABAMA HAS FAILED TO PROPERLY PLEAD ITS VARIOUS STATUTORY STATE LAW CLAIMS.

Alabama has asserted claims for damages and civil penalties under various Alabama environmental statutory schemes.   Specifically, it asserts claims under the Alabama Environmental Management Act, Alabama Water Pollution Control Act, Alabama Air Pollution Control Act, Alabama Hazardous Wastes Management Act, and Alabama Solid Waste Disposal Act.   Compl. ¶¶ 282-327.   But even if Alabama law applied to the release of oil (which it does not), Alabama has not stated a claim under any of these statutes.

### A.   Alabama's Claim Under The Environmental Management Act Should Be Dismissed.

Alabama asserts a claim against M-I under the Alabama Environmental Management Act ("AEMA").   Compl. ¶¶ 282-89.   This claim fails for five reasons.

First, the State of Alabama itself is not a proper plaintiff.   AEMA authorizes the Alabama Department of Environmental Management ("ADEM") to commence a civil action to recover civil penalties for violations of the Act.   ALA. CODE ANN. § 22-22A-5(18)b.   Although AEMA authorizes the Attorney General to bring suit on behalf of the ADEM, *see id.*, no provision

---

[5] This is the case in each of the Gulf Coast states.   *See Donald v. Amoco Prod. Co.*, 735 So. 2d 161, 169 (Miss. 1999); *Borland v. Sanders Lead Co.*, 369 So. 2d 523, 527 (Ala. 1979); *Petroleum Prods. Corp. v. Clark*, 248 So. 2d 196 (Fla. Dist. Ct. App. 1971); *City of Arlington v. City of Fort Worth*, 873 S.W.2d 765, 769 (Tex. App. 1994) (citing *Gregg v. Delhi-Taylor Oil Corp.*, 344 S.W.2d 411, 416 (Tex. 1961)). Thus, to the extent that these states' trespass law could apply, the State still fails to state a claim.

supports Alabama's argument that M-I is "liable to the State of Alabama for civil penalties." Compl. ¶ 288.

Second, Alabama sued in the wrong court.  Alabama brought suit in the United States District Court for the Middle District of Alabama, Northern Division.  However, AEMA only authorizes a civil action to be brought "in the circuit court of the county in which the defendant or any material defendant resides or does business or in which the threatened or continuing violation of" the statute is occurring.  ALA. CODE ANN. § 22-22A-5(19).  Alabama sued in the United States District Court, not the Alabama circuit court, and it did not allege that any material defendant does business or that any violation occurred in the county in which this suit was brought.

Third, Alabama seeks double recovery against M-I.  Alabama bases its AEMA claim for civil penalties on purported violations of four other Alabama environmental statutes.  Compl. ¶ 288.  Alabama then seeks additional penalties under each of those four other statutes.  *Id.* ¶¶ 290-302, 309-16, 317-23, 324-27.  Alabama's AEMA claim should be dismissed because it has not and cannot allege any independent violation under that statute and its attempts at double recovery are improper.  *See*, *e.g.*, U.S. CONST. amend. V; *see also* ALA. CODE ANN. § 22-22-14 (defining the penalties recoverable under AWPCA as criminal in nature); *see also Ala. Dep't of Envtl. Mgmt. v. Wright Bros. Constr. Co.*, 604 So. 2d 429, 433 (Ala. Civ. App. 1992) (stating that "'under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution'" (quoting *United States v. Halper*, 490 U.S. 435, 448-49 (1989)).

Fourth, AEMA provides that if the "person" being found to violate the statute is a corporation, "the same civil penalties that may be imposed upon a person under this subdivision may be imposed upon the responsible corporate officers in a civil action." *See* ALA. CODE ANN. § 22-22A-5(18)(b).  Alabama admits that it does "not currently know the responsible corporate officers' identities," and fails to plead any facts to support liability against any M-I corporate officers.  Compl. ¶ 289.  Thus, to the extent Alabama attempts to assert an AEMA claim against any corporate officer of M-I, that claim should be dismissed.

Finally, under AEMA, the ADEM's recovery may "not be less than $100.00 or exceed $25,000.00 for each violation" and a number of factors are given to determine the size of the penalty to be assessed:

> In determining the amount of any penalty, consideration shall be given to the seriousness of the violation, including any irreparable harm to the environment and any threat to the health or safety of the public; the standard of care manifested by such person; the economic benefit which delayed compliance may confer upon such person; the nature, extent and degree of success of such person's efforts to minimize or mitigate the effects of such violation upon the environment; such person's history of previous violations; and the ability of such person to pay such penalty.

ALA. CODE ANN. § 22-22A-5(18)(c).  Alabama has failed to plead any facts in support of these factors to warrant a civil penalty up to $25,000 per violation.   Therefore, the Court should dismiss Alabama's claims under AEMA or, in the alternative, limit its recovery to no more than $100 for each violation.

**B.      Alabama's Claim Under The Water Pollution Control Act Should Be Dismissed.**

Alabama asserts a claim against M-I under the Alabama Water Pollution Control Act ("AWPCA") for both civil penalties and for damages.  Compl. ¶¶ 290-308.  This claim should be dismissed for four reasons.

First, Alabama again sued in the wrong court.  AWPCA authorizes a civil action only in "the county or counties where pollution occurs or in which the defendant resides or does business."  ALA. CODE ANN. § 22-22-9(m).  Alabama sued in the United States District Court, not in Alabama circuit court, and it does not allege that any defendant does business or committed any statutory violation in the county in which this suit was brought.

Second, Alabama seeks both civil penalties and damages.  Compl. ¶¶ 290-308.  AWPCA authorizes damages, ALA. CODE ANN. § 22-22-9(m), but nowhere mentions civil penalties.  Rather, in a section entitled "Criminal penalty for violation of chapter," AWPCA allows fines and imprisonment against a person "who willfully or with gross negligence" is "convict[ed]" of violating the Act.  *Id*. § 22-22-14.  AWPCA penalties are clearly criminal in nature,[6] and nothing in the statute authorizes Alabama to recover civil penalties from M-I under AWPCA.  Moreover, Alabama has failed to plead that M-I willfully or with gross negligence violated AWPCA.  *See* Compl. ¶¶ 298, 300, 302.

Third, Alabama also alleges that "each responsible corporate officer of Defendants (and the corporation on their behalf) is liable for the same civil penalty."  *Id*. ¶¶ 298, 300, 302.  Even if civil penalties were recoverable under AWPCA, unlike AEMA, no provision of AWPCA authorizes any recovery against "responsible corporate officers."  Moreover, Alabama failed to name any corporate officers in this action and failed to allege any facts in support of its alleged claims against those corporate officers.  Thus, to the extent Alabama attempts to assert an AWPCA claim against any corporate officer of M-I, that claim should be dismissed.

---

[6] Fines are criminal, not civil, punishments.  *See Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 265 (1989) ("Then, as now, fines were assessed in criminal, rather than in private civil, actions.").

Fourth, even if Alabama's entire AWPCA claim is not dismissed, the Court should dismiss the portion of the claim regarding dispersants. Alabama generally alleges that "Defendants" caused dispersants to be discharged into Alabama waters, Compl. ¶ 296, but Alabama has failed to allege any facts to demonstrate that M-I actually discharged any dispersants. Under the *Twombly*/*Iqbal* pleading standard, a plaintiff must provide more than "'naked assertion[s]'" or "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). A plaintiff must plead facts establishing its causes of action against each defendant; blanket assertions against all "Defendants" do not provide fair notice and will not suffice. *See Two Old Hippies, LLC v. Catch the Bus, LLC*, No. CIV 10-0459 JB/RLP, 2011 WL 831302, at *14 (D.N.M. Feb. 11, 2011) (stating that it is particularly important to avoid collective allegations against multiple defendants when the liability of some defendants "turns on their individual participation in the alleged activities"); *Powell v. Residential Mortg. Cap.*, No. C 09-04928 JF (PVT), 2010 WL 2133011, at *3 (N.D. Cal. May 24, 2010) ("Treating disparate parties identically without explanation, as Plaintiff does throughout the complaint, deprives each individual defendant a fair and meaningful opportunity to defend itself."); *Powell v. Dallas Morning News LP*, 610 F. Supp. 2d 569, 580 (N.D. Tex. 2009) (dismissing claims based on "blanket allegations against all Defendants" because the lack of specificity "fail[s] to give the [defendants] . . . notice of what they would be required to defend against"). Any claim for an AWPCA violation related to dispersants should be dismissed.

## C.     Alabama's Claim Under the Air Pollution Control Act Should Be Dismissed.

Alabama purports to assert a claim against M-I under the Alabama Air Pollution Control Act ("AAPCA") for civil penalties. Compl. ¶¶ 309-16. This claim must be dismissed for two reasons.

First, AAPCA is a criminal statute and provides no civil cause of action.  Alabama cannot state a civil claim for violating AAPCA.  *See Dauphinais v. Cunningham*, 395 F. App'x 745, 746 (2d Cir. 2010) (dismissing purported civil claim because criminal statute did not provide civil cause of action); *Shanin v. Darling*, 606 F. Supp. 2d 525, 538-39 (D. Del. 2009) (same).

Second, even if the Act provided for a civil cause of action, Alabama seeks civil penalties, but the statute provides only criminal penalties.  AAPCA authorizes fines, penalties, and hard labor "upon conviction" of a person who "knowingly" violates the Act.  ALA. CODE ANN. § 22-28-22(a).  It is clear these penalties are criminal, and the statute nowhere authorizes Alabama to recover civil penalties from M-I.  Moreover, Alabama has failed to plead that M-I knowingly violated AAPCA.  Furthermore, AAPCA authorizes criminal penalties of up to $10,000 per day, *id.*, but Alabama is seeking a civil penalty of up to $25,000 per day through AEMA.  Compl. ¶ 314.  This is exactly the same relief Alabama seeks under its AEMA claim. *Id.* ¶ 288.  Clearly, Alabama is merely reasserting its AEMA claim under the guise of AAPCA, and therefore M-I incorporates by reference its response to Alabama's AEMA claim in section VII.A above.

### D.   Alabama's Claim Under The Hazardous Wastes Management Act Should Be Dismissed.

Alabama asserts a claim against M-I under the Alabama Hazardous Wastes Management Act ("AHWMA") for civil penalties.  Compl. ¶¶ 317-23.  This claim fails for three reasons.

First, as with AAPCA, AHWMA is a criminal statute providing no civil cause of action.  Therefore, Alabama cannot state a civil claim for violating AHMWA.

Second, Alabama seeks to recover civil penalties, but the statute authorizes only fines and imprisonment for violating the Act.  ALA. CODE ANN. § 22-30-19(e)(6).  These penalties are clearly criminal, and the statute nowhere authorizes Alabama to recover civil penalties.

Third, Alabama's AHWMA claim depends entirely on the allegation that "[s]ome or all of the chemical dispersants used by Defendants in their attempts to remediate the oil spill disaster constitute hazardous waste under the AHWMA."  Compl. ¶ 321.  As with its AWPCA claim, Alabama makes blanket assertions that "Defendants" used dispersants but does not allege that M-I introduced a dispersant into Alabama waters.  Such generalized, undifferentiated allegations against groups of defendants does not provide fair notice of the claims against them and therefore fails federal pleading standards.

### E. Alabama's Claim Under The Solid Waste Disposal Act Should Be Dismissed.

Alabama asserts a claim against M-I under the Alabama Solid Waste Disposal Act ("ASWDA") for civil penalties.  Compl. ¶¶ 324-27.  This claim should be dismissed for three reasons.

First, the State of Alabama is not a proper plaintiff for this claim.  Although ASWDA authorizes the Attorney General to seek injunctive relief, only the Alabama Department of Environmental Management can initiate a civil action.  ALA. CODE ANN. § 22-27-11(b), (d).

Second, ASWDA does not authorize recovery of civil penalties.  The Act provides that any person violating it "shall be guilty of a misdemeanor and, upon conviction, shall be fined."  ALA. CODE ANN. § 22-27-7.  This is clearly criminal, and Alabama has failed to plead any portion of the statute that entitles it to recover civil penalties.

Third, the types of solid waste Alabama asserts M-I dumped does not meet the statutory requirements.  Alabama alleges that M-I is liable for operating an unauthorized dump.  Compl. ¶ 325.  An unauthorized dump is defined as "[a]ny collection of solid wastes either dumped or caused to be dumped."  ALA. CODE ANN. § 22-27-2(36).  Solid waste is in turn defined as:

> Any garbage, rubbish, construction or demolition debris, ash, or sludge from a
> waste treatment facility, water supply plant, or air pollution control facility, and
> any other discarded materials, including solid, liquid, semisolid, or contained

gaseous material resulting from industrial, commercial, mining, or agricultural operations or community activities[.]

*Id.* § 22-27-2(32).  Alabama alleges that M-I violated that statute by dumping oil and dispersants onto the land and into the waters of the state.  Compl. ¶ 327.  However, oil and dispersants do not meet this definition of "solid waste."  They clearly are not garbage, rubbish, demolition debris, ash, or sludge from a waste treatment facility, water supply plant, or air control pollution facility.

Moreover, the definition of "solid waste" does not include those items listed in § 22-27-3(c).  ALA. CODE ANN. § 22-27-2(32).  Section 22-27-3 states that:

> As used in this article, the terms "solid wastes", "garbage", and "ash" do not include fly ash waste, bottom ash waste, boiler slag waste, or flue gas emission control waste which result primarily from the combustion of coal or other fossil fuels at electric generating plants, *nor shall such terms include any drilling discharges from oil or natural gas operations*.

*Id.* § 22-27-3(c) (emphasis added).  The oil and dispersants Alabama alleges M-I dumped do not meet the definition of "solid waste" under ASWDA.

## VII.   ALABAMA HAS PLEADED NO CLAIM ENTITLING IT TO PUNITIVE DAMAGES AGAINST M-I.

It is unclear from Alabama's Complaint whether and to what extent it is seeking punitive damages against M-I.  *Compare* Compl. ¶ 345 (claiming entitlement to punitive damages generally), *with* Compl. ¶¶ 347-68 (limiting demand for punitive damages to BP, Transocean, and Halliburton).[7]  Regardless, and notwithstanding that Alabama has failed to plead cognizable

---

[7] M-I disputes—and discovery since Alabama's suit was filed has demonstrated—that M-I is not properly classified a "Drilling Defendant."  Compl. ¶ 21.  Although the Court must accept Alabama's allegations as true in considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the notable exclusion of M-I from Alabama's detailed punitive damages allegations suggests Alabama's recognition that M-I's role on the *Deepwater Horizon* was far different from the true Drilling Defendants: Transocean, BP, and Halliburton.

claims against M-I, federal law clearly establishes that punitive damages are not available under OPA or the general maritime law. *See*, *e.g.*, *S. Port Marine*, 234 F.3d at 64-66.

Additionally, even if Louisiana law applied through OCSLA, which it does not, punitive damages would not be recoverable for trespass or nuisance. "In Louisiana, there is a general public policy against punitive damages; thus, a fundamental tenet of our law is that punitive or other penalty damages are not allowable unless expressly authorized by statute." *Ross v. Conoco, Inc.*, 828 So. 2d 546, 555 (La. 2002). No Louisiana statute allows punitive damages for nuisance or trespass.

Finally, punitive damages are not available under AEMA. *Ala. Dep't of Envtl. Mgmt.*, 604 So. 2d at 433.

Thus, to the extent Alabama is seeking punitive damages from M-I, its claim must be dismissed under governing law.[8]

## CONCLUSION

For the foregoing reasons, M-I respectfully requests that this Court dismiss all claims asserted against M-I in the State of Alabama's First Amended Complaint.

---

[8] For that matter, punitive damages are not available for Alabama's common law claims under the laws of the other four Gulf Coast states. Mississippi, Alabama, Florida, and Texas all require a heightened mental state for punitive damages to be available. *See Southland Co. v. Aaron*, 80 So. 2d 823, 826 (Miss. 1955); *Seale v. Pearson*, 736 So. 2d 1108, 1113 (Ala. Civ. App. 1999); *Rice v. Merritt*, 549 So. 2d 508, 511 (Ala. Civ. App. 1989); *Monty v. Hayward*, 451 So. 2d 938, 938 (Fla. Dist. Ct. App. 1984); *Holubec v. Brandenberger*, 214 S.W.3d 650, 659 (Tex. App. 2006). To the extent Alabama seeks punitive damages from M-I under these states' laws, it has failed to plead facts establishing M-I's heightened mental state and such claims must be dismissed.

Respectfully submitted,

**OF COUNSEL:**                                        MORGAN, LEWIS & BOCKIUS LLP
MORGAN, LEWIS & BOCKIUS LLP

Derek E. Leon                                          By:  */s/ Hugh E. Tanner*
dleon@morganlewis.com                                       Hugh E. Tanner
Texas Bar No. 24002463                                      htanner@morganlewis.com
5300 Wachovia Financial Center                              Texas Bar No. 19637400
200 South Biscayne Boulevard                                1000 Louisiana, Suite 4000
Miami, Florida  33131                                       Houston, Texas  77002
Telephone:     (305) 415-3000                               Telephone:     (713) 890-5000
Facsimile:     (305) 415-3001                               Facsimile:     (713) 890-5001

Denise Scofield
dscofield@morganlewis.com                              **ATTORNEYS FOR DEFENDANT**
Texas Bar No. 00784934                                 **M-I L.L.C.**
1000 Louisiana, Suite 4000
Houston, Texas  77002
Telephone:     (713) 890-5000
Facsimile:     (713) 890-5001

**ATTORNEYS FOR DEFENDANT**
**M-I L.L.C.**

## CERTIFICATE OF SERVICE

I hereby certify that the Memorandum of Law in Support of Defendant M-I L.L.C.'s Motion to Dismiss the State of Alabama's First Amended Complaint has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 3rd day of June, 2011.

/s/ Hugh E. Tanner
Hugh E. Tanner