# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO on APRIL 20, 2010 | § § § § § § | MDL No. 2179 |
| | | SECTION: J |
| This document relates to: | § § § | Judge Carl J. Barbier Magistrate Judge Sally Shushan |
| *2:10-cv-03059;* *2:11-cv-00516* | § § § § | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT M-I L.L.C.'s MOTION TO DISMISS THE STATE OF LOUISIANA'S FIRST AMENDED COMPLAINT

**OF COUNSEL:**
MORGAN, LEWIS & BOCKIUS LLP

Derek E. Leon
dleon@morganlewis.com
Texas Bar No. 24002463
5300 Wachovia Financial Center
200 South Biscayne Boulevard
Miami, Florida  33131
Telephone:  (305) 415-3000
Facsimile:  (305) 415-3001

Denise Scofield
dscofield@morganlewis.com
Texas Bar No. 00784934
1000 Louisiana, Suite 4000
Houston, Texas  77002
Telephone:  (713) 890-5000
Facsimile:  (713) 890-5001

**ATTORNEYS FOR DEFENDANT**
**M-I L.L.C.**

June 3, 2011

MORGAN, LEWIS & BOCKIUS LLP

By: */s/ Hugh E. Tanner*
    Hugh E. Tanner
    htanner@morganlewis.com
    Texas Bar No. 19637400
    1000 Louisiana, Suite 4000
    Houston, Texas  77002
    Telephone:  (713) 890-5000
    Facsimile:  (713) 890-5001

**ATTORNEYS FOR DEFENDANT**
**M-I L.L.C.**

# TABLE OF CONTENTS

**Page**

Introduction And Summary Of Argument .................................................................. 1

Statement Of Facts ..................................................................................................... 3

Argument ................................................................................................................... 4

I.      OPA Displaces All General Maritime Law Claims For Oil Spill-Related Damages ...................................................................................................... 7

       A.     OPA Provides Louisiana With The Exclusive Federal Remedy ............... 7

II.     Pursuant To OPA, Persons Injured By An Oil Spill Cannot Directly Sue M-I ........................................................................................................... 10

       A.     This Court Lacks Jurisdiction To Decide Louisiana's Claims Because It Has Not Satisfied OPA's Presentment Requirement ............ 10

       B.     Even If Louisiana Satisfied OPA's Presentment Requirements, Its Sole Remedy Lies Against The Responsible Parties Designated Under OPA—Not M-I ....................................................................... 12

III.    To The Extent Any Maritime Law Claims Survive, The Economic Loss Rule Bars These Claims ......................................................................... 13

IV.    Congress's Statutory Scheme Under OCSLA Preempts Louisiana's State Law Claim Under The Louisiana Environmental Quality Act ........................... 15

V.     Louisiana Has Pleaded No Claim Entitling It To Punitive Damages Against M-I .............................................................................................. 19

Conclusion .............................................................................................................. 19

# TABLE OF AUTHORITIES

Page

## CASES

*Angleton v. Coffeyville Res. Refining & Mktg., LLC*,
   No. 08-1255-EFM, 2011 WL 1484204, at *1
   (D. Kan. Apr. 19, 2011) .........................................................................................19

*Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.*,
   51 F.3d 235 (11th Cir. 1995) ...........................................................................11

*Clausen v. M/V New Carissa*,
   171 F. Supp. 2d 1127 (D. Or. 2001) ...........................................................7, 19

*EP Operating Ltd. P'ship v. Placid Oil Co.*,
   26 F.3d 563 (5th Cir. 1994) ............................................................................6, 16

*Gabarick v. Lauren Mar. (Am.), Inc.*,
   Civil Action Nos. 08-04007, 08-04023, 08-04046,
   2008 WL 3560426, at *1 (E.D. La. Aug. 11, 2008) ..........................................8

*Gabarick v. Laurin Mar. (Am.) Inc.*,
   623 F. Supp. 2d 741 (E.D. La. 2009)...............................1, 6, 7, 8, 9, 11, 12, 18

*Gulf Offshore Co. v. Mobil Oil Corp.*,
   453 U.S. 473 (1981)................................................................................2, 16, 17

*Johnson v. Colonial Pipeline Co.*,
   830 F. Supp. 309 (E.D. Va. 1993) ...................................................................10

*La. ex rel. Guste v. M/V Testbank*,
   752 F.2d 1019 (5th Cir. 1985) .....................................................3, 13, 14, 15

*LeSassier v. Chevron USA, Inc.*,
   776 F.2d 506 (5th Cir. 1985) ......................................................................17, 18

*Marathon Pipe Line Co. v. LaRoche Indus. Inc.*,
   944 F. Supp. 476 (E.D. La. 1996).....................................................................11

*Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atl. Corp.*,
   924 F. Supp. 1436 (E.D. Va. 1996),
   *aff'd*, 122 F.3d 1062 (4th Cir. 1997) (table) ....................................................7

*Nations v. Morris*,
   483 F.2d 577 (5th Cir. 1973) ............................................................................17

*Nw. Airlines, Inc. v. Transp. Workers Union of Am.*,
    451 U.S. 77 (1981) ................................................................................................7

*Reserve Mooring Inc. v. Am. Comm. Barge Line, LLC*,
    251 F.3d 1069 (5th Cir. 2001) ..........................................................................14

*Rice v. Harken Exploration Co.*,
    89 F. Supp. 2d 820 (N.D. Tex. 1999) .................................................................8

*Robins Dry Dock & Repair Co. v. Flint*,
    275 U.S. 303 (1927) .......................................................................................3, 13

*Rodrigue v. Aetna Cas. & Sur. Co.*,
    395 U.S. 352 (1969) .......................................................................................2, 17

*Ross v. Conoco, Inc.*,
    828 So. 2d 546 (La. 2002) ................................................................................19

*S. Port Marine, LLC v. Gulf Oil Ltd. P'ship*,
    234 F.3d 58 (1st Cir. 2000) ..............................................................5, 7, 17, 19

*In re Settoon Towing LLC*,
    Civil Action No. 07-1263, 2009 WL 4730969, at *1
    (E.D. La. Dec. 4, 2009) ......................................................................................9

*In re Settoon Towing LLC*,
    Civil Action No. 07-1263, 2009 WL 4730971, at *1
    (E.D. La. Dec. 4, 2009) ......................................................................................9

*In re Taira Lynn Marine Ltd. No. 5, LLC*,
    444 F.3d 371 (5th Cir. 2006) ...........................................................................14

*Tanguis v. M/V Westchester*,
    153 F. Supp. 2d 859 (E.D. La. 2001) ..............................................................7, 8

*Tenn. Gas Pipeline v. Houston Cas. Ins. Co.*,
    87 F.3d 150 (5th Cir. 1996) ...........................................................................4, 16

*Texaco Exploration & Prod., Inc. v. AmClyde Engineered Prods. Co.*,
    448 F.3d 760 (5th Cir. 2006) ...........................................................................16

*United States v. California*,
    332 U.S. 19 (1947) ...........................................................................................16

*United States v. M/V Big Sam*,
    681 F.2d 432 (5th Cir. 1982) .............................................................................9

*United States v. Oswego Barge Corp.*,
    664 F.2d 327 (2d Cir. 1981)........................................................................9

*W. Oil & Gas Ass'n v. Sonoma Cnty.*,
    905 F.2d 1287 (9th Cir. 1990) ................................................................16

## STATUTES & RULES

Oil Pollution Act of 1990, 33 U.S.C. § 2701 *et seq*................................................1

33 U.S.C. § 2702................................................................3, 5, 6, 10, 13, 14, 18

33 U.S.C. § 2709................................................................................3, 6, 13

33 U.S.C. § 2710..........................................................................................13

33 U.S.C. § 2713................................................................................2, 10, 11, 12

33 U.S.C. § 2718..........................................................................................18

Outer Continental Shelf Lands Act, 43 U.S.C. § 1331 *et seq*.................................1

43 U.S.C. § 1332..........................................................................................16

43 U.S.C. § 1333................................................................................................2, 17

43 U.S.C. § 1349..........................................................................................16

43 U.S.C. § 1802................................................................................................5, 16

Louisiana Environmental Quality Act, LA. REV. STAT. sec. 30:2025 ...................4, 15

FED. R. CIV. P. 12................................................................................................1, 12

## OTHER AUTHORITIES

135 CONG. REC. H7954 (1989)................................................................5, 12

S. REP. NO. 101-94 (1989), *reprinted in* 1990 U.S.C.C.A.N. 722 ...........................8, 11

## INTRODUCTION AND SUMMARY OF ARGUMENT

In its First Amended Complaint ("Complaint"), the State of Louisiana ("Louisiana" or the "State") seeks to hold M-I L.L.C. ("M-I") liable for economic damages allegedly incurred by the State following the *Deepwater Horizon* explosion and subsequent oil spill.  Louisiana's claims fail to state a claim for relief against M-I and should therefore be dismissed.

Despite the fact that M-I was only a service provider—a vendor—without authority to direct any drilling operations on the *Deepwater Horizon*, Louisiana contends that M-I is fully liable for an array of alleged economic injuries the State incurred following the blowout and subsequent oil spill.  Although Louisiana attempts to bring three claims against M-I (it also makes dozens of other claims against other defendants), it ultimately fails to state any claim on which relief can be granted.  *See* FED. R. CIV. P. 12(b)(6).  Further, Louisiana's claims fail for lack of subject-matter jurisdiction and should be dismissed on this basis as well.  *See* FED. R. CIV. P. 12(b)(1).

Two federal statutes govern the resolution of Louisiana's claims:  the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. § 2701 *et seq.*, and the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1331 *et seq.*  OPA provides Louisiana with sweeping remedies for its alleged harms—including remedies for the precise kinds of harms the State allegedly suffered.  OPA also displaces the claims Louisiana makes against M-I under general maritime law. Furthermore, OCSLA directs the Court's choice-of-law analysis and forecloses the claim the State makes against M-I under Louisiana state law.

First, OPA was created to provide a comprehensive statutory framework to address economic damages caused by an oil spill.  OPA provides the sole remedy for Plaintiff's economic loss and property damage claims because OPA displaces general maritime law claims for damages recoverable under OPA.  *Gabarick v. Laurin Mar. (Am.) Inc.*, 623 F. Supp. 2d 741,

750 (E.D. La. 2009).  Because Louisiana seeks to recover damages explicitly provided for by OPA, its general maritime law claims for negligence and public and private nuisance must be dismissed.

Second, this Court lacks jurisdiction over the State's claims against M-I because Louisiana has not alleged that it has fulfilled OPA's presentment requirements.  OPA is the exclusive law governing claims for oil spill-related damages.  Because Louisiana seeks to recover damages expressly provided for under OPA, it must satisfy the mandatory condition precedent that all claims for oil spill-related damages be presented to, and denied by, the Responsible Party before filing suit.  33 U.S.C. § 2713.  Louisiana has failed to allege that it satisfied the presentment requirement, and this Court therefore lacks jurisdiction to hear its claims.

OPA, through its interaction with OCSLA, also forecloses Louisiana's state law claim for recovery of response costs pursuant to the Louisiana Environmental Quality Act ("LEQA"). Through OCSLA, Congress clarified its intention that the conduct at issue here—oil and gas exploration and development on the Outer Continental Shelf—is subject to exclusive federal jurisdiction and that federal law alone (with few exceptions not applicable here) governs conduct and liability related to such activities.  43 U.S.C. § 1333(a).  Under OCSLA, state law may be borrowed as surrogate federal law only when it applies to activities occurring on "artificial islands and fixed structures" on the Outer Continental Shelf, and only where necessary to fill a "substantial gap[]" or "void[]" in federal law.  *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 480 (1981) (internal quotations omitted); *see also Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352, 358 (1969).  The *Deepwater Horizon* was not an artificial island or a fixed structure. And there is no gap or void in federal law here; to the contrary, the response costs Louisiana

seeks to recover from M-I are expressly recoverable pursuant to the provisions of OPA. Accordingly, Louisiana's state law claim must be dismissed.

Under OPA, Louisiana may seek relief only from Responsible Parties. By its plain language, OPA provides for recovery of oil spill-related damages directly and exclusively from the Responsible Parties. The Responsible Parties, in turn, may seek contribution against any other entity they believe to be liable or potentially liable for causing the damages. *See* 33 U.S.C. §§ 2702, 2709. Consistent with Congress's goal to provide an efficient process for injured persons to recover oil spill-related damages, OPA does not permit direct actions against third parties who have not been designated Responsible Parties. M-I has not been designated a Responsible Party and therefore falls outside the purview of OPA liability. Thus, Louisiana has no direct right of action against M-I for oil spill-related damages (and does not seek to bring such a claim). Consequently, all claims seeking such damages must be dismissed.

Third, even if OPA did not displace the State's general maritime law claims, they are barred under the Economic Loss Rule, which precludes recovery for pure economic losses in the absence of physical injury to a proprietary interest. *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 309 (1927); *La. ex rel. Guste v. M/V Testbank*, 752 F.2d 1019 (5th Cir. 1985) (*en banc*). Most of the damages alleged by the State do not meet this standard and therefore are not recoverable under general maritime law.

Finally, to the extent the State seeks punitive damages from M-I, such recovery is foreclosed under applicable law.

## STATEMENT OF FACTS

In June 2008, Defendant BP Exploration & Production ("BP") acquired a lease from the U.S. government to explore and develop hydrocarbon reserves on a site in the Gulf of Mexico, 48 miles south of Louisiana on the Outer Continental Shelf. Compl. ¶¶ 1, 38 (Dkt. No. 2031).

The drilling contractor for the Macondo well was Defendant Transocean, which owned and operated the *Deepwater Horizon*. *Id.* ¶¶ 41-42.  BP also contracted with a number of third-party service providers, including M-I, which provided drilling fluids and attendant services on the rig. *Id*. ¶ 44.  M-I, as a service provider for BP, did not exercise (and is nowhere alleged to have exercised) responsibility or oversight for drilling operations on the rig.

On April 20, 2010, an explosion and fire occurred aboard the *Deepwater Horizon* during the final stages of drilling the Macondo well.  *Id*. ¶ 4.  The rig later sank, severing a pipe connecting the vessel to the wellhead on the ocean floor and leading to the release of oil.  *Id*.  In the aftermath of the accident, the Coast Guard designated Defendants BP and Transocean as "Responsible Parties" under OPA.  *Id*. ¶ 201.

On March 3, 2011, Louisiana filed its original complaint.  On April 19, 2011, the State filed its First Amended Complaint, adding numerous defendants and causes of action.  Out of a total of 24 claims pleaded in the First Amended Complaint, Louisiana alleges three causes of action against M-I:  (i) liability for oil spill response costs under the LEQA (Count IV), (ii) negligence under general maritime law (Count VII), and (iii) public and private nuisance under general maritime law (Count VIII).  Each of these claims should be dismissed.

## ARGUMENT

A comprehensive federal regulatory and liability scheme, set forth in OCSLA and OPA, governs the discharge of oil relating to oil exploration and development on the Outer Continental Shelf.  The Outer Continental Shelf has long been an area of federal—not state—concern and oversight.  OCSLA establishes "national authority over the [Outer Continental Shelf] at the expense of both foreign governments and the governments of the individual states."  *Tenn. Gas Pipeline v. Houston Cas. Ins. Co.*, 87 F.3d 150, 153 (5th Cir. 1996).  In enacting OCSLA and assuming broad authority over subsea lands beyond the territorial waters of the states, Congress

sought to address the country's energy needs while protecting the environment and the public and private interests impacted by oil and gas development on the Outer Continental Shelf. *See* 43 U.S.C. § 1802.

Following the Exxon Valdez oil spill in 1989, Congress revisited its approach to compensating parties injured as a result of an oil spill. Passed in 1990, OPA is "a comprehensive federal scheme for oil pollution liability." *S. Port Marine, LLC v. Gulf Oil Ltd. P'ship*, 234 F.3d 58, 64 (1st Cir. 2000). Under Congress's scheme, persons damaged as a result of an oil spill are entitled to wide-ranging recovery from a federally designated "Responsible Party" under strict liability provisions intended to quickly compensate injured parties "without resort to cumbersome litigation." 135 CONG. REC. H7954, H7965 (1989).

A state claiming injury from an oil spill is entitled to prompt payment from a Responsible Party for, *inter alia*: (i) removal costs—"all removal costs incurred by . . . a State" under federal or state law (33 U.S.C. § 2702(b)(1)(A)); (ii) real or personal property damage—"[d]amages for injury to, or economic losses resulting from destruction of, real or personal property, which shall be recoverable by a claimant who owns or leases that property," (*id.* § 2702(b)(2)(B)); (iii) revenues—"[d]amages equal to the net loss of taxes, royalties, rents, fees, or net profit shares due to the injury, destruction, or loss of real property, personal property, or natural resources, which shall be recoverable by the Government of the United States, a State, or a political subdivision thereof," (*id.* § 2702(b)(2)(D)); (iv) profits and earning capacity—"[d]amages equal to the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources, which shall be recoverable by any claimant," (*id.* § 2702(b)(2)(E)); and (v) public services—"[d]amages for net costs of providing increased or additional public services during or after removal activities, including protection from fire,

5

safety, or health hazards, caused by a discharge of oil, which shall be recoverable by a State, or a political subdivision of a State," (*id.* § 2702(b)(2)(F)).

Litigation, where necessary, is designed to take place only between the Responsible Party and other entities the Responsible Party contends are potentially liable for the discharge of oil, through indemnity, subrogation, and contribution actions brought by the Responsible Party. *See id.* § 2709; *Gabarick*, 623 F. Supp. 2d at 750.[1]

OPA provides the sole and exclusive federal remedy for persons harmed by an oil spill anywhere within the federal government's jurisdiction. And where, as here, injuries occur as a result of energy exploration on the Outer Continental Shelf, OCSLA's "broad substantive net" operates in conjunction with OPA to ensure that injured parties are compensated without upsetting Congress's intent that OCSLA "govern the full range of potential legal problems that might arise in connection with operations on the Outer Continental Shelf." *EP Operating Ltd. P'ship v. Placid Oil Co.*, 26 F.3d 563, 569 (5th Cir. 1994) (internal citation and quotation omitted).

As set forth below, Louisiana's general maritime law and state statutory claims against M-I are not cognizable under governing law. Recognition of such claims would disrupt and undermine Congress's carefully considered compensatory regime and frustrate clearly stated congressional intent with respect to operations on the Outer Continental Shelf. Each of the State's claims against M-I must therefore be dismissed.

---

[1] Consistent with this scheme, on April 20, 2011, BP, as the Responsible Party under OPA, filed claims for contribution pursuant to OPA against certain of its MDL co-defendants, including Transocean, Halliburton, and Cameron.

I.     **OPA DISPLACES ALL GENERAL MARITIME LAW CLAIMS FOR OIL SPILL-RELATED DAMAGES.**

Counts VII and VIII of the First Amended Complaint seek damages from M-I under "maritime law" for "negligence" and "public and private nuisance." *See* Compl. ¶¶ 239-58. For each of these federal common law claims, Louisiana seeks damages for alleged harm to natural resources; response, removal and restoration costs; lost tax revenue; increased public services costs; loss of use and diminution of value of property; and other economic damages of an unspecified nature. *Id.* ¶¶ 247, 257.

A.     **OPA Provides Louisiana With The Exclusive Federal Remedy.**

These maritime law claims must be dismissed because they are foreclosed by the well-settled law, recognized unanimously by courts across the country, that OPA provides the *exclusive* federal remedy for economic damage caused by an oil spill and therefore displaces general maritime law claims. *See S. Port Marine,* 234 F.3d at 64-66; *Gabarick*, 623 F. Supp. 2d at 746; *Clausen v. M/V New Carissa*, 171 F. Supp. 2d 1127, 1134 (D. Or. 2001); *Tanguis v. M/V Westchester*, 153 F. Supp. 2d 859, 867-68 (E.D. La. 2001); *Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atl. Corp.*, 924 F. Supp. 1436, 1447 (E.D. Va. 1996), *aff'd*, 122 F.3d 1062 (4th Cir. 1997) (table).

It is well-recognized that federal common law must cede to congressional enactments. "[O]nce Congress addresses a subject, even a subject previously governed by federal common law, . . . the task of the federal courts is to interpret and apply statutory law, not to create common law." *Nw. Airlines, Inc. v. Transp. Workers Union of Am.*, 451 U.S. 77, 95 n.34 (1981). Here, "[b]ecause OPA provides a comprehensive scheme for the recovery of oil spill cleanup costs and the compensation of those injured by oil spills, general maritime law does not apply to recovery of these types of damages." *Nat'l Shipping*, 924 F. Supp. at 1447.

Indeed, courts in this district have at least twice addressed this very issue, and both times they have held that OPA displaces general maritime law. A decade ago, in *Tanguis v. M/V Westchester*, a court in this district first considered the preemptive effect of OPA, noting that the plain language of the statute—consistent with and confirmed by legislative history—made clear Congress's intent to fully occupy the field and displace "traditional maritime remedies for oil spills." 153 F. Supp. 2d at 867-68 (citing *Rice v. Harken Exploration Co.*, 89 F. Supp. 2d 820, 822 (N.D. Tex. 1999) and S. REP. No. 101-94 (1989), *reprinted in* 1990 U.S.C.C.A.N. 722, 730).

More recently, in *Gabarick v. Laurin Maritime (Am.) Inc.*, this court considered the exact question presented here and concluded that "the plain language of [OPA] indicates its mandatory and exclusive nature with respect to its covered damages." 623 F. Supp. 2d at 746. In *Gabarick*, a collision between a barge and a tow boat led to the release of approximately 500,000 gallons of fuel oil into the Mississippi River. *Gabarick v. Lauren Mar. (Am.), Inc.*, Civil Action Nos. 08-04007, 08-04023, 08-04046, 2008 WL 3560426, at *1 (E.D. La. Aug. 11, 2008). Plaintiffs alleged that the oil contaminated the shoreline and drinking water and that they suffered business losses as a result of the spill. *Id.*

In holding that the plaintiffs' maritime claims were preempted by OPA, the *Gabarick* court conducted a detailed and thorough analysis of the four "*Oswego*" preemption factors:

(1)     legislative history;

(2)     the scope of the legislation;

(3)     whether judge made law would fill a gap left by Congress's silence or rewrite rules that Congress enacted; and

(4)     likeliness of Congress's intent to preempt "long established and familiar principles of the common law or the general maritime law."

*Gabarick*, 623 F. Supp. 2d at 747 (quoting *United States v. Oswego Barge Corp.*, 664 F.2d 327, 344 (2d Cir. 1981)).[2]

As to the first *Oswego* factor, the court reviewed OPA's legislative history and concluded that "Congress's intent in enacting OPA [was] the creation of a single Federal law regarding liability for oil pollution." *Id.* at 748. On the second factor, the court found the scope of OPA all-encompassing: "It defines what damages are covered and the process for pursuing a claim, and allows suit in federal court should that process be unsuccessful." *Id.* As to the third factor, the court held that because of the comprehensiveness of OPA, "there is no gap" that needed to be filled by judge-made law. *Id.* Finally, under the fourth factor, the court held "the intent of Congress . . . articulated in both the express language of the statute and the legislative history, was to encourage settlement and reduce litigation in oil spill cases through the enactment of comprehensive federal legislation that provides cleanup authority, penalties, and liability for oil pollution." *Id.* at 750 (citation and internal quotation omitted).

Accordingly, the court held that OPA preempted the *Gabarick* plaintiffs' maritime law claims seeking "supplemental" remedies against an alleged oil polluter—a holding that has since been repeated without question in other cases in this district. *See In re Settoon Towing LLC*, Civil Action No. 07-1263, 2009 WL 4730969, at *3 (E.D. La. Dec. 4, 2009) ("[T]he OPA damages provision preempts the general maritime law.") (citing *Gabarick*, 623 F. Supp. 2d at 746); *In re Settoon Towing LLC*, Civil Action No. 07-1263, 2009 WL 4730971, at *3-4 (E.D. La. Dec. 4, 2009) (granting summary judgment in favor of the vessel owner on a general maritime claim seeking recovery for oil spill-related claims because OPA preempted the general maritime law for the damages sought).

---

[2]  The Fifth Circuit adopted the *Oswego* analysis in *United States v. M/V Big Sam*, 681 F.2d 432, 441-42 (5th Cir. 1982).

In this case, just as in *Gabarick*, the State has alleged causes of action under general maritime law seeking damages for harm to natural resources, removal and restoration costs, damage to property and diminution of property value, loss of tax revenue, and increased public services costs. *See* Compl. ¶¶ 247, 257. All of these damages are expressly recoverable by a state under OPA. *See* 33 U.S.C. § 2702(b). Thus regardless of how Louisiana characterizes its claims, the damages it seeks under general maritime law are identical to those recoverable under OPA. The general maritime law claims therefore must be dismissed.

## II. PURSUANT TO OPA, PERSONS INJURED BY AN OIL SPILL CANNOT DIRECTLY SUE M-I.

### A. This Court Lacks Jurisdiction To Decide Louisiana's Claims Because It Has Not Satisfied OPA's Presentment Requirement.

Because OPA provides the exclusive remedy for Louisiana's alleged oil spill-related damages, the State—which is seeking recovery of such damages—must comply with OPA's presentment requirement before filing suit. The State has failed to satisfy this requirement, thus depriving the court of jurisdiction to decide the State's claims.

OPA's remedial scheme depends on the concept of the "Responsible Party" and the creation of a strict liability compensation procedure intended to provide prompt, complete resolution of claims outside of litigation. OPA's mandatory presentment requirement is key to this procedure, providing that "all claims for removal costs or damages" covered by OPA "shall" be presented first to the Responsible Party. 33 U.S.C. § 2713(a). The claims must be sufficiently detailed regarding the nature and extent of the claimant's alleged injury to allow for genuine settlement negotiations between the claimant and the Responsible Party. *See, e.g.,* *Johnson v. Colonial Pipeline Co.*, 830 F. Supp. 309, 311 (E.D. Va. 1993). Only if the Responsible Party denies liability for the claim or a sufficiently presented claim is not settled within 90 days by the Responsible Party may the claimant elect to commence an action in court

10

"against the responsible party."  33 U.S.C. § 2713(c).  The presentment requirement applies to any OPA claimant, including local government and public entities like Louisiana.

"[T]he clear text of § 2713 creates a mandatory condition precedent barring all OPA claims unless and until a claimant has presented [its] claims" to the Responsible Party and had them denied.  *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.*, 51 F.3d 235, 240 (11th Cir. 1995) (emphasis added); *see also Gabarick*, 623 F. Supp. 2d at 750-51 (dismissing for lack of subject matter jurisdiction all non-OPA claims seeking damages of the type covered by OPA for failure to present such claims to the designated responsible party); *Marathon Pipe Line Co. v. LaRoche Indus. Inc.*, 944 F. Supp. 476, 477 (E.D. La. 1996) ("The Court agrees that § 2713's presentation requirement is jurisdictional and mandates dismissal when that provision is applicable and not complied with by the claimant."); S. REP. No. 101-94 (noting that "the bill requires claims to be presented in the first instance to the discharger, where known"). Regardless of whether an OPA claim has been alleged against a Responsible Party or a non-responsible third party, until OPA's presentment requirement has been met, litigation for oil spill-related claims is foreclosed.  Allowing the State to bypass the presentment requirement and immediately sue third parties who have not been designated as Responsible Parties would frustrate (and indeed render unworkable) Congress's intent to provide through OPA a prompt, comprehensive remedial scheme that avoids complex and piecemeal litigation.

In this case, presentment is a mandatory condition precedent to bringing a claim for OPA-covered damages. Although the State's First Amended Complaint does aver that it "directly presented BP with its claims", Compl. ¶ 143, the State has not alleged what specific claims have been denied or not been resolved within the statutorily mandated 90 day period.  *See* 33 U.S.C. § 2713(c).  This is a mandatory part of the presentment process that must be satisfied

before the court has jurisdiction to hear the suit.  *See id.*  Therefore, the three claims against M-I

must be dismissed for lack of subject matter jurisdiction.  *See* FED. R. CIV. P. 12(b)(1).

### B. Even If Louisiana Satisfied OPA's Presentment Requirements, Its Sole Remedy Lies Against The Responsible Parties Designated Under OPA—Not M-I.

Even if Louisiana has satisfied OPA's presentment requirements and can properly invoke

this Court's jurisdiction, its claims for oil spill-related damages against M-I must nonetheless be

dismissed because M-I has not been named an OPA "Responsible Party."

Under OPA, Louisiana's sole remedy for oil spill-related damages lies against the

Responsible Parties, as determined by the United States Coast Guard.  33 U.S.C. § 2713 (If a

claim properly presented to the Responsible Party is denied, "the claimant may elect to

commence an action in court against the responsible party . . . .").

The plain statutory language is supported by and consistent with clearly stated

congressional intent that "[t]he system of liability and compensation provided for in the bill . . .

is intended to allow for quick and complete payment of reasonable claims without resort to

cumbersome litigation."  135 CONG. REC. at H7965.  Indeed, as this court has previously

explained, "[i]n light of Congress's intent to minimize piecemeal lawsuits and the mandatory

language of OPA . . . Claimants should pursue claims covered under OPA only against the

responsible party and in accordance with the procedures established by OPA."  *Gabarick*, 623 F.

Supp. 2d at 750.  "Then, the responsible party can take action to recover against third parties,"

*id.*, as provided for by OPA:

> If the responsible party alleges that the discharge . . . was caused solely by an act or omission of a third party, the responsible party—
>
> (i)      . . . shall pay removal costs and damages to any claimant; and
>
> (ii)     shall be entitled by subrogation to all rights of the . . . claimant to recover removal costs or damages from the third party . . . paid under this subsection.

33 U.S.C. § 2702(d)(1)(B); *see also id.* § 2709 (providing for rights of contribution); *id.* § 2710 (permitting indemnity agreements among potentially responsible parties).

The statutory language makes clear Congress's intent that persons allegedly injured by an oil spill not be additionally inconvenienced by cumbersome and time-consuming litigation. Claimants are entitled to resolution of their claims and payment of their economic damages by a Responsible Party.  Should litigation prove necessary, claimants are benefited because they must litigate against only the Responsible Party, and recovery is on a strict liability basis.  Complex multi-party litigation—with all of its attendant costs and burdens—is also shifted to the Responsible Party.  Other parties who are potentially liable for the oil spill may allocate fault and damages among themselves through subrogation, contribution, and indemnity.   *See* 33 U.S.C. §§ 2702(d), 2709.

Recognizing that M-I is not a proper defendant because it is not a Responsible Party under OPA, Louisiana does not seek to bring an OPA claim against M-I directly.  *See* Compl. ¶¶ 153-167; *id.* ¶¶ 195-221.  But Louisiana nonetheless seeks to hold M-I liable for OPA damages through different legal theories.  These claims against M-I must be dismissed, and the State should, as the statute provides, pursue these damages solely against the Responsible Parties.

## III.   TO THE EXTENT ANY MARITIME LAW CLAIMS SURVIVE, THE ECONOMIC LOSS RULE BARS THESE CLAIMS.

Even if OPA does not displace Louisiana's general maritime law claims, these claims must nonetheless be dismissed to the extent that the damages sought are barred under the Economic Loss Rule, which has long been a part of general maritime law.  *See Robins Dry Dock*, 275 U.S. 303 (1927); *see also M/V Testbank*, 752 F.2d 1019 (5th Cir. 1985).   Under the Economic Loss Rule, which has been consistently reaffirmed by the Fifth Circuit, "physical injury to a proprietary interest is a prerequisite to recovery of economic damages in cases of

unintentional maritime tort[s]."[3]  *Reserve Mooring Inc. v. Am. Comm. Barge Line, LLC*, 251 F.3d 1069, 1071 (5th Cir. 2001); *see also In re Taira Lynn Marine Ltd. No. 5, LLC*, 444 F.3d 371, 377 (5th Cir. 2006) ("It is unmistakable that the law of this circuit does not allow recovery of purely economic claims absent physical injury to a proprietary interest in a maritime negligence suit."). The rule is a "pragmatic limitation on the doctrine of foreseeability."  *Reserve Mooring Inc.*, 251 F.3d at 1071 (internal quotations omitted).

In this context, the Fifth Circuit has already addressed Louisiana's exact claims in another case and determined that they do not survive the Economic Loss Rule.  In *Louisiana ex rel. Guste v. M/V Testbank*, Louisiana brought claims alleging nuisance under general maritime law and state law claims of negligence, nuisance, and pursuant to the Louisiana Environmental Affairs Act. 752 F.2d at 1030-32.  Addressing the maritime claim first, the court began its analysis by noting that "[p]laintiffs seek to avoid the *Robins* rule by characterizing their claims as damages caused by public nuisance." *Id.* at 1030.  However, the court pointed out that "[o]ur decisions under *Robins* have emphasized the nature of the interest harmed rather than the theory of recovery."  *Id.*  Thus, "rephrasing the claim as a public nuisance claim does not change its essential character."  *Id.* at 1030-31 (internal quotations omitted).  Consequently, the court found "no jurisprudential advantage in permitting the use of nuisance theory to skirt the *Robins* rule" and "conclude[d] that plaintiffs may not recover for pure economic losses under a public nuisance theory in maritime tort. *Id.* Turning to Louisiana's state law claims, the Fifth Circuit held that "[b]ecause established principles of general maritime law govern the issue of recovery in this case, we reject these state law theories."  *Id.* at 1031. Thus the court appropriately

---

[3]  Congress, apparently recognizing the limitation of the Economic Loss Rule, has expressly permitted more expansive remedies for parties under OPA.  *See, e.g.*, 33 U.S.C. § 2702(b)(2)(C) (allowing the recovery for subsistence use of natural resources "without regard to the ownership or management of the resources").

14

concluded by stating: "The *Robins* rule has proved to be a workable and useful tool in our maritime jurisprudence. To permit recovery here on state law grounds would undermine the principles we seek to preserve today. Accordingly, we decline to adopt plaintiffs' state law claims as theories of recovery." *Id.* at 1032.

In this case, the State does not allege that any of its claimed damages arise out of physical injury to property in which Louisiana possesses a cognizable proprietary interest. Indeed, most of the alleged harm Louisiana identifies (including loss of tax revenue, increased public services costs, and damage to "industry") are purely economic on their face. *See* Compl. ¶¶ 247, 257. Louisiana's claims for damage to real property and natural resources *might* not be foreclosed by the Economic Loss Rule, but Louisiana does not identify the nature of its proprietary interest in this property nor the physical injury this property suffered. Hence, just as the Fifth Circuit recognized in *M/V Testbank*, Louisiana cannot skirt the *Robins* Economic Loss Rule by seeking to recharacterize its claims under general maritime law or state statutes. The Amended Complaint therefore fails to overcome the Economic Loss Rule with respect to these damages.

## IV. CONGRESS'S STATUTORY SCHEME UNDER OCSLA PREEMPTS LOUISIANA'S STATE LAW CLAIM UNDER THE LOUISIANA ENVIRONMENTAL QUALITY ACT.

In addition to its general maritime claims, Louisiana asserts one state law claim against M-I pursuant to the Louisiana Environmental Quality Act. The State alleges that M-I (along with other defendants) is liable for "response action costs" the State has incurred in responding to the oil spill under Louisiana Revised Statutes section 30:2025, the Louisiana Environmental Quality Act. Compl. ¶ 194. This purely state law claim—which seeks damages that are expressly recoverable under OPA from the Responsible Parties—is preempted by OCSLA.

Congress has made clear that state law claims cannot be brought for oil spill-related injuries stemming from oil exploration and development activities on a rig such as the

*Deepwater Horizon* that is engaged in activities on the Outer Continental Shelf.  *See Tenn. Gas Pipeline*, 87 F.3d at 153 ("OCSLA makes federal law exclusive in its regulation of the OCS . . . .") (footnote omitted); *see also* 43 U.S.C. § 1332(1) ("the subsoil and seabed of the outer Continental Shelf  appertain to the United States and are subject to its jurisdiction, control, and power of disposition").  Courts have had no trouble finding that claims arising out of or in connection with the operation of oil exploration activities on the Outer Continental Shelf—such as Louisiana's state law claim—are governed by OCSLA.  *See Tenn. Gas Pipeline*, 87 F.3d at 154; *EP Operating*, 26 F.3d at 569.  Indeed, this Court has already held that OCSLA governs this dispute.  Oct. 16, 2010 Order (Dkt. No. 470) 6-8.

Congress has long asserted plenary control over operations on the Outer Continental Shelf.  *See generally Gulf Offshore Co.*, 453 U.S. at 473; *United States v. California*, 332 U.S. 19 (1947).  Congress's many policy aims with respect to the Outer Continental Shelf require careful balancing of competing goals, such as protecting the environment and encouraging energy production.  *See* 43 U.S.C. § 1802; *see also W. Oil & Gas Ass'n v. Sonoma Cnty.*, 905 F.2d 1287, 1289 (9th Cir. 1990) (OCSLA "declares the policy of the United States that the Outer Continental Shelf should be available for expeditious and orderly development subject to environmental safeguards.").  Through OCSLA, Congress has extended an "expansive substantive reach" over "a wide range of activity occurring beyond the territorial waters of the states." *Texaco Exploration & Prod., Inc. v. AmClyde Engineered Prods. Co.*, 448 F.3d 760, 768 (5th Cir. 2006) (citation and internal quotation omitted); *EP Operating*, 26 F.3d at 569.  To that end, Congress has declared federal law "exclusive" with respect to activities on the Outer Continental Shelf.  *See Tenn. Gas Pipeline*, 87 F.3d at 153; *see also* 43 U.S.C. § 1349(b)(1).

State law applies to activity on the Outer Continental Shelf only in certain narrowly defined circumstances. With respect to activity occurring on "artificial islands" or "fixed structures" that are "erected" on the Outer Continental Shelf, the law of the adjacent state *may* be adopted as surrogate federal law, but *only* when necessary to fill a "substantial gap[]" or "void[]" that exists in the applicable federal law. *Gulf Offshore Co.*, 453 U.S. at 480 (internal quotations omitted); *Rodrigue*, 395 U.S. at 357-58; *see also* 43 U.S.C. § 1333(a)(2)(A). The *Deepwater Horizon* is not alleged to be—and indeed, is not—an "artificial island" or a "fixed structure" that was "erected" on the seafloor. It is a semi-submersible mobile drilling rig. Thus, by the explicit terms of OCSLA, state law is inapplicable in this case.

Additionally, even if the door was open to state law on the facts presented in this case, state law can only apply to the extent it is "applicable and not inconsistent" with federal law. *Gulf Offshore Co.*, 453 U.S. at 480. The Fifth Circuit "has consistently held that 'applicable' must be read in terms of necessity—necessity to fill a significant void or gap." *LeSassier v. Chevron USA, Inc.*, 776 F.2d 506, 509 (5th Cir. 1985) (quoting *Nations v. Morris*, 483 F.2d 577, 585 (5th Cir. 1973)); *see also Gulf Offshore Co.*, 453 U.S. at 480-81 (state law may be adopted only to fill a "substantial gap[] in the coverage of federal law" (citing 43 U.S.C. § 1333(a)(2)) (internal quotation omitted)). Because the State claims economic loss as a result of an oil spill, it can—and indeed, must—seek relief through OPA, which provides a remedy for all of the economic loss Louisiana attempts to recover for under state law. There is no "significant void or gap" in federal law for state law to fill under OCSLA. *LeSassier*, 776 F.2d at 509; *see also S. Port Marine*, 234 F.3d at 64 (holding that OPA is intended to be the sole and exclusive federal law governing action for oil spill-related damages). Therefore, the State is foreclosed from pursuing its state law claim in this case.

Nothing in OPA changes this result.  While OPA provides that states may impose additional liability for "the discharge of oil or other pollution by oil within such State," 33 U.S.C. § 2718(a)(1)(A), nothing in OPA or its legislative history evinces an intent to displace OCSLA or to disrupt decades of well-settled law about the limited applicability of state law to activities on the Outer Continental Shelf.  OPA's so-called "savings clause" instead operates where it is needed most:  in state territorial waters where state interests are high, federal interests are lower, and there is little risk of multiple inconsistent laws and legal regimes being applied to the same conduct.  In other words, OPA simply is not relevant to the issue of whether Louisiana's state law claim is preempted by OCSLA.

In summary, Congress, through OCSLA, has deemed federal law exclusive on the Outer Continental Shelf and permits the adoption of state law only on a defined subset of *situses* on the Outer Continental Shelf, and only then in situations where there is a significant gap or void in federal law.  *LeSassier*, 776 F.2d at 509.  Through OPA, Congress has provided a complete and comprehensive federal regime governing and providing recovery for damages stemming from oil spills, including those that occur on the Outer Continental Shelf.  *See Gabarick*, 623 F. Supp. 2d at 746-48.  Because the State's alleged injuries are compensable completely through OPA, there is no gap or void in the federal law, and Louisiana's state law claim against M-I should be dismissed.[4]

---

[4] Moreover, even if OCSLA did not preempt Louisiana's state law claim—which it does—the state law claim does not fit within the limited scope of state law claims that OPA permits in situations where the savings clause does apply.  Section 2718(a)(1) provides that OPA does not preclude a "State . . . from imposing any additional liability or requirements with respect to" the discharge or pollution of oil or the removal thereof.  However, Louisiana's claim against M-I under the LEQA does *not* seek to impose "additional liability or requirements" not already provided for in OPA.  Instead, it seeks to recover response costs, which are explicitly provided for in OPA.  *See* 33 U.S.C. § 2702(b)(1)(A); *id.* § 2702(b)(2)(F).  Therefore, Louisiana's state law claim fails and should be dismissed for this reason as well.

## V.   LOUISIANA HAS PLEADED NO CLAIM ENTITLING IT TO PUNITIVE DAMAGES AGAINST M-I.

It is not clear whether Louisiana seeks punitive damages against M-I under its general maritime law negligence and nuisance claims.  *Compare* Compl. ¶ 245(u) (alleging in general maritime negligence count that M-I "act[ed] in a manner that justifies imposition of punitive damages") *with id.* ¶¶ 386-91 (alleging claim for "punitive damages" in Count XXIV of the Amended Complaint against BP and the Transocean Defendants, but not M-I).   Even if Louisiana seeks punitive damages against M-I, such damages are not recoverable under OPA which, for the reasons described above, displaces Louisiana's maritime law claims.  *S. Port Marine*, 234 F.3d at 64-65 (holding that punitive damages are not available under OPA); *M/V New Carissa*, 171 F. Supp. 2d at 1133-34 (same); *Angleton v. Coffeyville Res. Refining & Mktg., LLC*, No. 08-1255-EFM, 2011 WL 1484204, at *5 n.33 (D. Kan. Apr. 19, 2011) ("Plaintiffs concede that punitive damages cannot be based on a claim under the Oil Pollution Act.").

Additionally, even if Louisiana law applied through OCSLA, which it does not, punitive damages would not be recoverable.  "In Louisiana, there is a general public policy against punitive damages; thus, a fundamental tenet of our law is that punitive or other penalty damages are not allowable unless expressly authorized by statute." *Ross v. Conoco, Inc.*, 828 So. 2d 546, 555 (La. 2002).  There is no Louisiana statute that allows for punitive damages for the alleged causes of action.

## CONCLUSION

For the foregoing reasons, M-I respectfully requests that this Court dismiss all claims asserted against M-I in the State of Louisiana's First Amended Complaint.

Respectfully submitted,

**OF COUNSEL:**                                    MORGAN, LEWIS & BOCKIUS LLP
MORGAN, LEWIS & BOCKIUS LLP

Derek E. Leon                                      By: /s/ Hugh E. Tanner
dleon@morganlewis.com                                   Hugh E. Tanner
Texas Bar No. 24002463                                  htanner@morganlewis.com
5300 Wachovia Financial Center                          Texas Bar No. 19637400
200 South Biscayne Boulevard                            1000 Louisiana, Suite 4000
Miami, Florida  33131                                   Houston, Texas  77002
Telephone:  (305) 415-3000                              Telephone:  (713) 890-5000
Facsimile:  (305) 415-3001                              Facsimile:  (713) 890-5001

Denise Scofield
dscofield@morganlewis.com                          **ATTORNEYS FOR DEFENDANT**
Texas Bar No. 00784934                             **M-I L.L.C.**
1000 Louisiana, Suite 4000
Houston, Texas  77002
Telephone:  (713) 890-5000
Facsimile:  (713) 890-5001

**ATTORNEYS FOR DEFENDANT**
**M-I L.L.C.**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing *Defendant M-I L.L.C.'s Motion to Dismiss the State of Louisiana's First Amended Complaint* has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 3rd day of June, 2011.

 /s/ *Hugh E. Tanner*
Hugh E. Tanner