## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **In re: Oil Spill by the Oil Rig** | * | MDL No. 2179 |
| **"Deepwater Horizon" in the Gulf** | * | |
| **of Mexico, on April 20, 2010** | * | SECTION "J" |
| | * | JUDGE BARBIER |
| **This Document Relates to:** | * | |
| *All cases in Pleading Bundles B1 and B3*; | * | |
| 10-2771; 10-3815; 10-1540; 10-1502 | * | MAGISTRATE NO. 1 |
| | * | MAGISTRATE SHUSHAN |
| * * * * * * * * * * * * | | |

## SUR-REPLY OF DEFENDANTS ANADARKO PETROLEUM CORPORATION AND ANADARKO E&P COMPANY LP TO MOTION OF BP EXPLORATION & PRODUCTION, INC., BP AMERICA, INC., BP AMERICA PRODUCTION COMPANY, AND BP PLC FOR A STAY OF PROCEEDINGS

MAY IT PLEASE THE COURT:

# I.
# INTRODUCTION AND SUMMARY OF ARGUMENT

BP concedes that its initial attempt to eviscerate virtually all litigation efforts and activities by Anadarko in this case, including discovery relevant to Anadarko's defenses with respect to the Plaintiffs' claims and the allocation of fault, was overbroad, and it has not sought review of the Magistrate Judge's Order rejecting BP's efforts and granting Anadarko's motion to compel discovery. The extremity of BP's initial position, together with its ongoing actions in this case that are fundamentally inconsistent with the arbitration rights it now claims -- and its contradictory claim that Transocean has waived its arbitration rights -- demonstrate that BP's motion for a stay is concerned with gaining an improper and unfair litigation advantage in the proceedings before this Court, rather than with vindicating any legitimate arbitration rights arising from the parties' Operating Agreement. Consequently, and for the following specific reasons that are discussed more fully hereinafter, BP's Motion to Stay should be denied.

First, under controlling Supreme Court precedent and Fifth Circuit precedent, whether the dispute between BP and Anadarko is subject to arbitration is a question for the Court, not for an arbitration panel. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002); *Executone Information Systems, Inc. v. Davis*, 26 F.3d 1314, 1321 (5th Cir. 1994).

Second, BP asks the Court to stay claims asserted by Anadarko E&P Company LP ("AE&P") -- who was not a party to the Operating Agreement when its causes of action arose on April 20, 2010 -- as well as claims against BP America Inc., BP America Production Company, and BP p.l.c. -- none of whom are parties to the Operating Agreement or have any contractual relationship with AE&P or Anadarko Petroleum Corporation ("APC"). A sophisticated commercial party such as BP is not entitled to obtain by its own say-so arbitration rights it chose to forgo when it negotiated the Operating Agreement.

Third, BP relies on one Exhibit to the Operating Agreement (Exhibit H) in seeking a stay while, at the same time, attempting to read another Exhibit entirely out of the Agreement (Exhibit F).  BP is unable to explain what purpose Exhibit F serves if not to grant Anadarko the right to bring suit on the very type of claims that BP seeks to stay.  The only way to read these competing Exhibits in harmony is to recognize that the more specific terms of Exhibit F grant the parties the option to bring suit when a party defaults on a secured payment obligation -- precisely what BP has done by repudiating its contractual obligation to be "solely responsible for liability resulting from its gross negligence or willful misconduct."  Operating Agreement, Art. 22.5.

Fourth, BP has actively engaged in discovery concerning the dispute with Anadarko that it claims must be arbitrated.  This conduct is particularly telling because, in its dispute with Transocean, BP contends that Transocean waived its right to arbitrate against BP by requiring BP to "engage in and respond to discovery from parties subject to an arbitration agreement on claims subject to that same arbitration agreement."  BP's Opposition to Transocean's Motion for a Protective Order at 1 ("BP's Opp. to TO Mtn.").  [Rec. Doc. 2470][1]

Fifth, BP has not, in fact, initiated any actual arbitration proceedings, nor has it embarked on a path that will inevitably lead to it doing so.  Moreover, as BP now concedes, its stay request can relate only to Anadarko's cross-claims against BP.  Anadarko filed its cross-claims against BP within the time required by the Court's schedule.  Under the current trial structure plan, however, only Anadarko's contribution cross-claims against BP (and other cross-claim defendants) will be tried  in the February 2012 limitations trial, because those cross-claims

---

[1] To illustrate, according to BP, its designation of Anadarko deponents should be dismissed as "preliminary and non-binding," but Transocean's designation of BP deponents should be considered compelling evidence that Transocean waived its right to arbitration. BP Reply at 8; BP Opp. to TO Mtn. at 5.  As shown below, this is one of several instances in which BP attempts to take a "heads I win, tails you lose" approach to arbitration. *In re Mirant Corp.*, 613 F.3d 584, 590 (5th Cir. 2010).

address issues which are part and parcel of the allocation of fault determination that must be made by the Court regardless of whether the Court formally stays Anadarko's cross claims against BP. Accordingly, there is no need for this Court to address BP's Stay Motion until, at the earliest, after the three phases of the February 2012 trial.

Finally, granting BP's Motion would unnecessarily inject uncertainty into Magistrate Judge Shushan's May 12, 2011, order ("Order") recognizing Anadarko's right to take full discovery from BP, regardless of whether such discovery might also be relevant to any potential future arbitration between Anadarko and BP. Order at 4 [Rec. Doc. 2358]. BP chose not to appeal the Order. Yet its proposed order for the Motion to Stay purports to govern the discovery rights of Anadarko against BP. Proposed Order at ¶ 2 [Rec. Doc. 2538-5]. Any future issues that may arise as to the scope and meaning of the Order are properly addressed in the first instance to Magistrate Judge Shushan. At a bare minimum, the claims and defenses asserted against and by Anadarko (including Anadarko's cross-claims against defendants other than BP) entitle Anadarko to full discovery in order to establish the extent of BP's responsibility for the plaintiffs' alleged injuries and to argue to this Court the appropriate allocation of the degree of fault of all parties.

## II.
## ARGUMENT

### A.    It Is for the Court to Decide Whether the Arbitration Provisions of the Operating Agreement Apply to Anadarko's Cross-Claims.

The Supreme Court unequivocally has ruled that "whether an arbitration clause in a concededly binding contract applies to a particular type of controversy" is a question for the Court, not the arbitrator. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002); *Executone Information Systems, Inc. v. Davis*, 26 F.3d 1314, 1321 (5th Cir. 1994) ("[T]he question of whether a party can be compelled to arbitrate, as well as the question of what issues a

3

party can be compelled to arbitrate, is an issue for the court rather than the arbitrator to decide."); *see also Pennzoil Exploration and Production Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1066 (5th Cir. 1998) (citing *Executone* for the same proposition).[2]

### B. A Stay Cannot Extend to Non-Signatories To The Operating Agreement

As a sophisticated commercial entity, BP was well able to decide whether it wanted the arbitration provisions of the Operating Agreement to apply to its affiliates who have no contractual relationship with Anadarko, if agreeable to the contracting parties. Instead, the only BP entity that is a party to the Operating Agreement is BP Exploration & Production, Inc. Indeed, BP American Production Company is <u>not</u> a party to the Operating Agreement, but <u>is</u> a party to the Drilling Contract with Transocean, which has its own arbitration provisions. Anadarko is not a party to the Drilling Contract and, <u>even if it were, BP has asked the Court to rule that the right to arbitrate under the Drilling Contract has been waived</u>. BP's Opp. to TO Mtn. In addition, according to the allegations of plaintiffs' complaint, BP chose to involve BP p.l.c. directly in the clean-up efforts. Anadarko's claims against these entities do not arise out of or allege any violation of the Operating Agreement, and should not be stayed.[3]

There is even less reason to stay the cross-claims asserted by AE&P. BP relies on *Nolde Bros. v. Bakery & Conf. Workers Union*, 430 U.S. 243 (1977) for the proposition that AE&P's obligation to arbitrate survived its withdrawal from the Operating Agreement. In *Litton Financial Printing Div. v. N.L.R.B.*, 501 U.S. 190, 205-206 (1991), however, the Supreme Court

---

[2] The only exception to this rule is where there is "clear and unmistakable" evidence that the parties intended such a "gateway" issue to be decided by the arbitrators. *See Rent-A-Center, West, Inc. v. Jackson*, __ U.S. __, 130 S. Ct. 2772, 2777 & n.1 (2010); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). BP does not contend (and there is no basis for contending) that the Operating Agreement clearly and unmistakably delegates to the arbitrators the issue of whether the arbitration clause applies to the dispute at issue.

[3] Because Anadarko did not name BP America Inc. as a defendant-in-cross-claim, that BP entity also is not entitled to a stay.

clarified its prior decision in *Nolde* and explained that "an expired contract has by its own terms released all its parties from their respective contractual obligations, except obligations already fixed under the contract but as yet unsatisfied." *Id.* at 206. Because AE&P was not a party to the Operating Agreement when the *Deepwater Horizon* incident occurred, its rights and obligations are not governed by the Agreement or by its arbitration provision.

### C. Exhibit F to the Operating Agreement Grants Anadarko The Right To Bring Suit On BP's Repudiation Of Its Secured Payment Obligations.

BP relies on Exhibit H for its stay argument, while reading Exhibit F, on which Anadarko relies for its right to bring suit, entirely out of the Operating Agreement. BP does not and cannot deny that it granted Anadarko a mortgage and a security interest in Exhibit F "to secure the complete and timely performance and payment by [BP] of all obligations" under the Operating Agreement. Exhibit F, § 6.3(a)(iii). Nor can it deny previously stating that the payment obligations under the Operating Agreement go "to the core of the benefit of the bargain of risk-sharing that is the fundamental purpose of the common industry practice of joint ownership and operating agreements." BP's Notice of Dispute at 4. The significance BP attributes to payment obligations amply explains the parties' decision to grant an option to either arbitrate or bring suit on such claims.

One of the performance and payment obligations secured by Exhibit F is BP's obligation to be "be solely responsible for liability resulting from its gross negligence or willful misconduct." Operating Agreement, Art. 22.5. BP has clearly and unequivocally repudiated that obligation in connection with the *Deepwater Horizon* incident by attempting to charge Anadarko for 25% of clean-up and related costs. *See* BP Mem. at 10. BP's repudiation of its obligations -- secured by Exhibit F -- give Anadarko an immediate cause of action. *See Shell Offshore, Inc. v. Marr*, 916 F.2d 1040 (5th Cir. 1990) ("The obligee has a cause of action when the obligor

5

signifies his intent to repudiate his obligation.").

BP's interpretation of the Operating Agreement fails to give any effect to the provisions of Exhibit F.  Exhibit F grants to Anadarko "all rights of a secured party under the Uniform Commercial Code," *id.* at § 6.3(c), which rights include the right to "reduce the claim to judgment . . . or otherwise enforce the claim . . . by any available judicial procedure."  LA. REV. STAT. ANN. § 10:9-601(a)(1) (2010).  Exhibit F also explicitly provides for the "bringing of a suit and the obtaining of a judgment by any Party for the secured indebtedness," including the recovery of "court costs."  Ex. F, § 6.3.c.  *See Personal Sec. & Safety Systems Inc. v. Motorola Inc.*, 297 F.3d 388, 396 n.10 (5th Cir. 2002) (the "plain meaning" of the term "suit" is "an action or process in a court for the recovery of a right or claim") (internal quotations and citation omitted).

Tellingly, none of the cases cited by BP involves a provision expressly granting a party "all rights of a secured creditor under the Uniform Commercial Code," or expressly providing for the "bringing of a suit" or the recovery of "court costs" for specified claims.  In addition, as BP acknowledges, Exhibit H has multiple provisions granting a right to resort to court remedies for preliminary relief in aid of arbitration or to enforce or challenge an arbitration award.  Exhibit H, § § I.A.(i), II.K.(iii), and L.  There is no reason to interpret Exhibit F as being needlessly redundant of those provisions.[4]

Nor is there any irreconcilable "conflict" between the arbitration provisions of Exhibit H and the right to sue under Exhibit F.  As the court recognized in *Air China Ltd. v. Li*, 2008 WL

---

[4] BP acknowledges that Art. 6.3 of the Operating Agreement provides that the terms of Exhibit F are "incorporated into this Agreement by reference" and that Art. 22.9 of the Operating Agreement, which references Exhibit H's arbitration provisions, does not.  BP correctly points out that similar language is contained in Article 3.1 with respect to all of the Exhibits to the Operating Agreement, but that does not explain why Exhibit F is given special treatment in Art. 6.3 which Exhibit H does not receive in Art. 22.9.  True to form, BP simply gives the relevant language no meaning at all.

754450, at *2 (S.D.N.Y. Mar. 17, 2008), rights to elect arbitration or litigation "do not conflict, but rather, complement one another." Interpreting the specific provisions of Exhibit F as granting Anadarko the option to sue or arbitrate a secured payment claim harmonizes Exhibit F with the more general provisions of Exhibit H. *See generally Barkley Estate Community Ass'n, Inc. v. Huskey*, 30 So.3d 992, 998 (La. App. 5 Cir. 2010) ("In the interpretation of contracts, the specific controls the general.").

### D. BP Has Waived Its Arbitration Rights by Actively Taking Discovery Concerning Claims It Says Must Be Arbitrated.

BP claims that "[b]efore the Magistrate Judge's May 13 Order, BP had not attempted to take discovery of Anadarko." BP Sur-Reply at 8. BP ignores that on April 3, 2011, it served a document request on Halliburton seeking evidence of communications with Anadarko relating to the Macondo well and, in addition, responded to discovery requests initially propounded by Anadarko. BP also ignores that on May 11, 2011 (before the Magistrate Judge's Order), it deposed Mr. Jesse Gagliano, a Halliburton employee, and asked targeted questions about Anadarko's knowledge of well conditions and whether it "should have taken all the same actions that BP should have taken with regard to" the Macondo well. Gagliano Dep. Tr. at 292-94 (Exhibit A hereto).

Perhaps BP acted on the assumption that it somehow is entitled to seek discovery <u>about</u> a party to an arbitration agreement (albeit discovery that is directly relevant to arbitrable claims) so long as it does not seek such discovery directly <u>from</u> the party to the arbitration agreement. Even if this were a principled distinction (and it surely is not), BP abandoned all such pretenses when it deposed Robert Quitza, Anadarko's drilling engineer for the Macondo well. BP unequivocally has stated that evidence of Anadarko's "knowledge and/or approval of BP's conduct . . . go[es] to the heart of the arbitrable disputes between BP and Anadarko." BP Mem. at 14. Yet BP

7

deposed Mr. Quitzau on those very issues, asking detailed questions about Anadarko's ability to monitor the well and its position on various safety decisions made by BP.  (A copy of the rough transcript of the sixty-nine pages of BP's deposition questioning of Mr. Quitzau is attached hereto as Exhibit B.)

BP should not be permitted to simultaneously pursue discovery against Anadarko on claims it says must be arbitrated while obtaining a stay of Anadarko's cross-claims involving those same issues.  BP canvassed the relevant law on this issue when it argued that Transocean waived its right to arbitrate against BP:  "The Fifth Circuit and district courts within it frequently find waiver where, as here, a party claiming the right to arbitrate . . . conducts substantial discovery against the counterparty to the arbitration agreement."  BP's Opp. to TO Mtn. at 6 [Rec. Doc. 2470], citing *In re Mirant*, 613 F.3d 584, 592 (5th Cir. 2010); *Nicholas v. KBR, Inc.*, 565 F.3d 904, 910 (5th Cir. 2009); *Leal v. Luxottica Retail N. Am., Inc.*, 2011 WL 873348 (N.D. Tex. Mar. 10, 2011).  *See also* BP's Opp. to TO Mtn. at 1-2, 14.

### E.  BP's Motion Is Premature.

BP has not, in fact, initiated any actual arbitration proceedings, nor has it embarked on a path that will inevitably lead to it doing so.  Under the Operating Agreement, an arbitration is commenced by service of a Notice of Intention to Arbitrate only after good faith negotiations occur. A Notice of Dispute does not initiate arbitration but, instead, requires the parties to appoint Management Representatives who "shall meet and confer as often as they deem reasonably necessary, in good faith negotiations, to try to resolve the Dispute amicably." Exhibit H at §I.C. Because of mandatory waiting periods contained in Exhibit H, an arbitration cannot be commenced until at least October 2011. Exhibit H at §II.A.

Even then, however, nothing requires BP to initiate arbitration if negotiations are

8

unsuccessful. BP inaccurately quotes Exhibit H as stating that if the negotiations fail, "the matter shall be submitted to arbitration." BP Mem. at 14. The full clause cited by BP in fact states:

> If the Parties are unable to resolve the Dispute within ninety (90) days following the end of the negotiation period between the Management Representatives described in I.C., or such additional time as may be mutually agreed upon, *the matter shall be submitted to arbitration in accordance with the procedures set forth below*.

Exhibit H, § II.A (emphasis added). BP thus has no obligation to proceed with arbitration regardless of the outcome of any negotiations with Anadarko.

Moreover, as BP now concedes, its stay request can only relate to Anadarko's cross-claims against BP. But while Anadarko has filed those claims, along with cross claims against the other Defendants, this Court has not yet even adopted a timeline or process by which those claims will be addressed except to the extent that contributions cross-claims will be implicated by the issues that will be tried during the various phases of the February 2012 limitations trial whether or not Anadarko's cross-claims are formally stayed. Accordingly, there is simply no need for this Court to address these issues at this time, nor will there be until after the multiple phases of the February 2012 trial are over.

In sum, BP (a) has not initiated arbitration; (b) is not obligated to ever do so; and (c) in the meantime, has engaged in discovery that is directly relevant to the claims it says must be arbitrated. BP cannot have it both ways. It cannot use discovery in this case to support claims it says must be arbitrated, while holding arbitration in abeyance so that it can prevent Anadarko from asserting its interests. Nor should it be allowed to advance one theory of waiver of arbitration rights against Transocean and an entirely different theory against Anadarko. Because BP has engaged in pretrial activity entirely inconsistent with an intent to arbitrate, its Motion should be denied.

9

>   F.  **BP May Not Indirectly Challenge Magistrate Judge Shushan's Order Granting Anadarko's Motion to Compel.**

BP's proposed order inexplicably contains a paragraph addressing discovery issues already ruled on by Magistrate Judge Shushan in an Order from which BP did not appeal. Should any issue as to the scope of the Order arise in the future, it should be presented first to Magistrate Judge Shushan.  In the meantime -- even if the Motion to Stay is granted -- BP should not be permitted to challenge Anadarko's right under the Order to take full discovery against BP to defend against the plaintiffs' claims, to pursue Anadarko's cross-claims against defendants other than BP, and to establish the extent of BP's responsibility for the plaintiffs' alleged injuries so as to argue to this Court the appropriate allocation of the degree of fault of all parties.

## III.
## CONCLUSION

For the foregoing reasons, the Motion of BP Exploration & Production, Inc., BP America Inc., BP America Production Company, and BP p.l.c. for a stay of proceedings should be denied.

Respectfully submitted,

DATED: June 3, 2011                     BINGHAM McCUTCHEN, LLP

/s/ *Ky E. Kirby*_____
Ky E. Kirby
ky.kirby@bingham.com
David B. Salmons
david.salmons@bingham.com
Michael B. Wigmore
michael.wigmore@bingham.com
2020 K Street, NW
Washington, DC 20006-1806
Telephone (202) 373-6000
Facsimile (202) 373-6001

James J. Dragna
jim.dragna@bingham.com
Bingham McCutchen LLP
355 South Grand Avenue

10

Suite 4400
Los Angeles, California 90071-3106
Telephone (213) 680-6436
Facsimile (213) 680-8636

KUCHLER POLK SCHELL
WEINER & RICHESON, LLC

Deborah D. Kuchler, T.A. (La. Bar No. 17013)
dkuchler@kuchlerpolk.com
Janika Polk (La. Bar No. 27608)
jpolk@kuchlerpolk.com
Robert Guidry (La. Bar No. 28064)
rguidry@kuchlerpolk.com
1615 Poydras Street, Suite 1300
New Orleans, LA  70112
Tel:  (504) 592-0691
Fax:  (504) 592-0696

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, pursuant to Pre-trial Order No. 12, I have caused the foregoing to be served on all counsel via the Lexis Nexis File & Serve system, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, who will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on May 31, 2011.

                                                                                      /s/ *Ky E. Kirby*
                                                                                        Ky E. Kirby