# EXHIBIT A

### Page 1

```
 1      UNITED STATES DISTRICT COURT
        EASTERN DISTRICT OF LOUISIANA
 2
 3   IN RE: OIL SPILL    )  MDL NO. 2179
        by the OIL RIG,  )
 4   DEEPWATER HORIZON in )  SECTION "J"
        the GULF OF MEXICO, )
 5   April 20, 2010     )  JUDGE BARBIER
                        )
 6                      )  MAG. JUDGE
                        )  SHUSHAN
 7
 8
14              **************
15                 VOLUME 1
                **************
16
17
        Deposition of JESSE GAGLIANO,
18   taken at Pan-American Building, 601 Poydras
     Street, 11th Floor, New Orleans, Louisiana,
19   70130, on May 11, 2011
20
     APPEARANCES:
21
22   Mr. Tom Thornhill
     Ms. Emily Gebhardt
23   THORNHILL LAW FIRM
     1308 Ninth Street
24   Slidell, Louisiana 70458
     (800) 989-2707
25
```

### Page 2

```
 1           APPEARANCES (continued):
 2
 3   Mr. Scott R. Bickford
     MARTZELL & BICKFORD
 4   338 Lafayette Street
     New Orleans, Louisiana 70130
 5   (504) 581-9065
 6           -
 7   Mr. Ronnie Penton
     LAW OFFICES OF RONNIE G. PENTON
 8   209 Hoppen Place
     Bogalusa, Louisiana 70427
 9   (985) 732-5651
10         APPEARING FOR THE
           PLAINTIFFS' STEERING COMMITTEE
11
12   Mr. Philip Chen
     KIRKLAND & ELLIS, LLP
13   333 South Hope Street
     Los Angeles, CA 90071
14   (213) 680-8400
15         APPEARING FOR BP, INC.
16
     Mr. A. Nathaniel Chakeres
17   Mr. Scott Cernich
     U.S. DEPARTMENT OF JUSTICE
18   Civil Division, Torts Branch
     1425 New York Avenue, Northwest, Suite 10100
19   Washington, D.C. 20005
20         APPEARING FOR THE UNITED
           STATES
21
22
23
24
25
```

### Page 3

```
 1           APPEARANCES (continued):
 2
 3   Ms. Deborah Kuchler
     Ms. Sara Iiums
 4   Ms. Janika Polk
     Mr. Lee Ziffer
 5   KUCHLER, POLK, SCHELL, WEINER & RICHESON, LLC
     1615 Poydras Street, Suite 1300
 6   New Orleans, Louisiana 70112
     (504) 592-0691
 7
         APPEARING FOR ANADARKO PETROLEUM
 8       COMPANY AND MOEX OFFSHORE 2007,
         LLC
 9
10   Mr. Dan Goforth
     GOFORTH GEREN EASTERLING, LLP
11   4900 Woodway, Suite 750
     Houston, Texas 77056
12   (713) 650-0022
13         APPEARING FOR TRANSOCEAN
14
     Mr. Floyd Hartley
15   GODWIN RONQUILLO
     1201 Elm Street, Suite 1700
16   Dallas, Texas 75270-2041
     (214) 939-4412 Fax: 214-939-4803
17
           APPEARING FOR HALLIBURTON
18
19   Mr. Eric J.R. Nichols
     BECK, REDDEN & SECREST
20   515 Congress, Suite 1750
     Austin, Texas 78701
21   (512) 708-1000
22         APPEARING FOR CAMERON
23
24
25
```

### Page 4

```
 1           APPEARANCES (continued):
 2
 3   Mr. Lambert J. "Joe" Hassinger Jr.
     GALLOWAY, JOHNSON, TOMPKINS, BURR & SMITH
 4   701 Poydras Street, 40th Floor
     New Orleans, Louisiana 70139
 5   (504) 525-6802
 6         APPEARING FOR THE STATE OF
           LOUISIANA
 7
 8   Mr. Eric A. Kuwana
     KATTEN MUCHIN ROSENMAN, LLP
 9   2900 K Street NW, Suite 200
     Washington, DC 20007
10   (202) 625-3500
11         APPEARING ON BEHALF OF JESSE
     GAGLIANO
12
13   ALSO PRESENT:
14   Mr. Karl Stiegman, Videographer
15
16   REPORTED BY:
17
           TAMARA CHAPMAN, CSR
18         Certified Court Reporter
           State of Texas
19
20
21
22
23
24
25
```

Gagliano, Jesse  5/11/2011  12:00:00 PM

289

1  based on my constitutional Fifth Amendment
2  privilege.
3      Q.   Did you do anything yourself to
4  ensure or confirm that there was a procedure
5  in place for each test that was performed on
6  the cement slurry?
7      MR. HARTLEY:  Object; form.
8      A.   I respectfully decline to answer
9  based on my constitutional Fifth Amendment
10 privilege.
11     Q.   (BY MR. GOFORTH)  Did you do
12 anything yourself to ensure or confirm that
13 the proper lab procedure was followed for
14 each test?
15     A.   I respectfully decline to answer
16 based on my constitutional Fifth Amendment
17 privilege.
18     Q.   To your knowledge, did anyone at
19 Halliburton do anything to ensure or confirm
20 that the proper lab procedures were followed
21 for each test?
22     A.   I respectfully decline to answer
23 based on my constitutional Fifth Amendment
24 privilege.
25     Q.   Did you do anything to ensure or

290

1  confirm that the testing that was performed
2  by Halliburton was conducted in accordance
3  with industry standards for the testing?
4      A.   I respectfully decline to answer
5  based on my constitutional Fifth Amendment
6  privilege.
7      Q.   To your knowledge, did anyone at
8  Halliburton do anything to confirm or ensure
9  that the testing that was performed was
10 conducted in accordance with industry
11 standards for the testing?
12     A.   I respectfully decline to answer
13 based on my constitutional Fifth Amendment
14 privilege.
15     Q.   To your knowledge, did anyone at
16 Halliburton do anything to ensure or confirm
17 that the lab tests were -- results were
18 accurately reported?
19     MR. HARTLEY:  Object; form.
20     A.   I respectfully decline to answer
21 based on my constitutional Fifth Amendment
22 privilege.
23     MR. GOFORTH:  Thank you, sir.
24     THE VIDEOGRAPHER:  We're going off the
25 record.  It is 3:15.

291

1      MR. KUWANA:  Please stay on the record.
2      THE VIDEOGRAPHER:  This is Videotape
3  No. 6.
4      MR. KUWANA:  Can we stay on the record?
5      THE VIDEOGRAPHER:  Oh, sorry.  We're
6  still on the record.  It's 3:15.
7      MR. KUWANA:  During the break, the
8  Court Reporter and I had a brief conversation
9  that a few times where the witness said
10 either respectfully or started to say
11 respectively, if there would be any objection
12 that she would put in "respectfully" in those
13 instances where he started to mix up the two
14 words a little bit.
15     MR. GOFORTH:  I don't know about that.
16     MR. KUWANA:  Yes.
17     MR. GOFORTH:  No.  I don't -- have no
18 objection about that.
19     MS. KUCHLER:  No objection.
20     MR. KUWANA:  There's no objection by
21 the counsel gathered.  Thank you.
22     THE VIDEOGRAPHER:  We're going off the
23 record.  It's 3:16.  This is still Videotape
24 No. 6.
25         (Break.)

292

1      THE VIDEOGRAPHER:  We're back on the
2  record.  It's 3:26.  This is Videotape No. 6.
3               EXAMINATION
4  BY MR. CHEN:
5      Q.   Good afternoon, Mr. Gagliano.
6      A.   Hi.
7      Q.   My name is Phillip Chen, and I'm
8  here on behalf of BP.  And I have a few
9  questions for you.
10         I'd like to start off where
11 Anadarko and MOEX's counsel left off, if
12 that's okay.
13     A.   Okay.
14     Q.   Did you know that Anadarko has a
15 25 percent interest in the Macondo well?
16     A.   I respectfully decline to answer
17 based on my constitutional Fifth Amendment
18 privilege.
19     Q.   Did you know that Mitsui
20 Offshore Exploration has a 10 percent
21 interest in the Macondo well?
22     MS. KUCHLER:  Object to form.
23     A.   I respectfully decline to answer
24 based on my constitutional Fifth Amendment
25 privilege.

Gagliano, Jesse 5/11/2011 12:00:00 PM

293

1  Q.  (BY MR. CHEN) Are you aware of
2  the relationship between BP and Anadarko and
3  MOEX as working interest owners of the well?
4  A.  I respectfully decline to answer
5  based on my constitutional Fifth Amendment
6  privilege.
7  Q.  Anadarko and MOEX, as the
8  working interest owners, had access to all of
9  the engineering information on this well;
10  isn't that true?
11  MS. KUCHLER: Objection; form.
12  A.  I respectfully decline to answer
13  based on my constitutional Fifth Amendment
14  privilege.
15  Q.  (BY MR. CHEN) And Anadarko and
16  MOEX could have requested any information
17  about this well that they wanted from BP;
18  isn't that correct?
19  MS. KUCHLER: Object to the form.
20  A.  I respectfully decline to answer
21  based on my constitutional Fifth Amendment
22  privilege.
23  Q.  (BY MR. CHEN) And based on your
24  experience, don't you believe that Anadarko
25  and MOEX should have requested more

294

1  information about the Macondo well?
2  MS. KUCHLER: Object to form.
3  A.  I respectfully decline to answer
4  based on my constitutional Fifth Amendment
5  privilege.
6  Q.  (BY MR. CHEN) Because Anadarko
7  and MOEX had all the same information about
8  the Macondo well that BP had, they should
9  have taken all the same actions that BP
10  should have taken with regard to this well?
11  MS. KUCHLER: Objection; form.
12  A.  I respectfully decline to answer
13  based on my constitutional Fifth Amendment
14  privilege.
15  Q.  (BY MR. CHEN) Now,
16  Mr. Gagliano, you're not a drilling engineer,
17  are you?
18  A.  I respectfully decline to answer
19  based on my constitutional Fifth Amendment
20  privilege.
21  Q.  You've never been employed as a
22  drilling engineer?
23  A.  I respectfully decline to answer
24  based on my constitutional Fifth Amendment
25  privilege.

295

1  Q.  Likewise, you've never worked
2  for an operator; isn't that true?
3  A.  I respectfully decline to answer
4  based on my constitutional Fifth Amendment
5  privilege.
6  Q.  Actually, let me be more clear.
7  You've never been employed by an operator as
8  an employee?
9  A.  I respectfully decline to answer
10  based on my constitutional Fifth Amendment
11  privilege.
12  Q.  So when you -- so when you were
13  providing testimony as to what the drilling
14  engineers should do, you actually don't have
15  a basis for saying what they shouldn't be
16  doing; isn't that true?
17  MR. HARTLEY: Object; form.
18  MS. KUCHLER: Object to form.
19  A.  I respectfully decline to answer
20  based on my constitutional Fifth Amendment
21  privilege.
22  Q.  (BY MR. CHEN) And when you were
23  asked about what the operator, BP, should do,
24  you actually don't have a basis for any
25  opinions on what the operator should do;

296

1  isn't that correct?
2  MS. KUCHLER: Object to form.
3  MR. HARTLEY: Object; form.
4  A.  I respectfully decline to answer
5  based on my constitutional Fifth Amendment
6  privilege.
7  Q.  (BY MR. CHEN) Now, there was a
8  lot of questioning about whether or not this
9  incident could have been avoided if more
10  centralizers were used. Do you recall that?
11  A.  I respectfully decline to answer
12  based on my constitutional Fifth Amendment
13  privilege.
14  Q.  Don't you agree that
15  centralization would, if anything, help with
16  channeling in the annulus?
17  MR. HARTLEY: Object; form.
18  A.  I respectfully decline to answer
19  based on my constitutional Fifth Amendment
20  privilege.
21  Q.  (BY MR. CHEN) You don't need to
22  centralize anything for the cement in the --
23  in the casing to have a good -- to have a
24  good fill; isn't that correct?
25  MS. KUCHLER: Objection; form.