UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf Of Mexico, on April 20, 2010<br><br>This Document applies to:<br>*All Cases.* | MDL No. 2179<br><br>SECTION: J<br><br>JUDGE BARBIER<br><br>MAGISTRATE SHUSHAN |

**TRANSOCEAN'S REPLY TO BP'S OPPOSITION TO**
**TRANSOCEAN'S MOTION FOR A PROTECTIVE ORDER**

In its Motion for a Protective Order, Transocean[1] seeks: (1) a protective order from written discovery requests propounded by BP, Anadarko and MOEX touching upon matters which are subject to contractual arbitration between BP and Transocean ("the Discovery"); or, should it be required to respond, Transocean seeks: (2) (i) an Order that by responding to the Discovery Transocean will not be held to have waived its contractual right to arbitrate the covered disputes as well as (ii) leave to serve discovery of its own beyond the current deadline set by the Court.  **Dkt. No. 2261.**

BP opposes these requests.  **Dkt. No. 2470.**  BP contends that: (1) Transocean has waived arbitration by litigating against BP, (2) this litigation has prejudiced BP, and, (3) regardless of waiver, Transocean is bound by Judge Shushan's adverse ruling on BP's motion to stay the Anadarko and MOEX discovery.  Each will be addressed in turn.

---

[1] Transocean Offshore Deepwater Drilling Inc., Transocean Holdings LLC, Transocean Deepwater Inc. and Triton Asset Leasing GmbH.

I.  **TRANSOCEAN HAS NOT SUBSTANTIALLY INVOKED THE JUDICIAL PROCESS AGAINST BP.**

BP offers two grounds to support its waiver-by-invocation argument: (1) Transocean has filed three complaints against BP and (2) Transocean has taken extensive discovery from BP. Neither allegation supports a finding of waiver.

A.  **Transocean's Three Filings Do Not Support a Finding of Waiver of Its Rights to Arbitrate**

The three "complaints" filed by Transocean do not waive its rights to arbitrate the claims under the Drilling Contract. In each instance, BP suggests that merely filing a pleading in court ends the inquiry into whether arbitration has been waived. **Dkt. No. 2470, at 7–8.**

The first filing contains only the Rule 14(c) tenders in the Limitation of Liability action. BP's argument implies that Transocean somehow demanded judgment in *Transocean's* favor against BP and the other defendants. This defies the plain language of Rule 14(c) and misunderstands a traditional facet of admiralty impleader. As noted in its memo, Transocean asserted no affirmative claims for relief against the defendants—including BP—which it tendered to plaintiffs/claimants who had sued Transocean. Moreover, Transocean impleaded BP and the others to defend claims made by plaintiffs/claimants that are not parties to the Drilling Contract's arbitration clause. *Cf. Texaco Exploration & Prod. Co. v. AmClyde Eng'd Prods. Co.*, 243 F.3d 906, 910 (5th Cir. 2001) ("If arbitration goes forward between [Plaintiff] Texaco and [14(c) Defendant] McDermott, it need not hold up or interfere with the admiralty litigation between Texaco and the other defendants [not subject to arbitration with Texaco]. Apportionment of liability exists whether or not McDermott is impleaded under Rule 14(c)."). It would defeat the purpose of Rule 14(c) if simply making use of its procedure, but not affirmatively asserting a party's own claims, operates to waive that party's arbitration rights.

Finally, BP cannot claim prejudice from the 14(c) tenders; it was already defending these cases in the MDL action, and Transocean simply asserted that BP, not Transocean, was either "wholly or partly liable" to the plaintiffs/claimants that had sued Transocean. *See* FED. R. CIV. P. 14(c).

The next filing BP refers to is Transocean's intervention in the coverage cases. Transocean only intervened to protect its insurance from being depleted by the overbroad claims of additional insureds, including BP. BP and others made demands on Transocean's carriers, including for defense costs—an immediate concern that grows daily in consideration of the enormity of this litigation and the number of lawyers involved. These claims of BP and others, if established, proportionally decrease the rights of Transocean in Transocean's own, finite insurance, for which Transocean is the only named insured. It was thus of necessity that Transocean intervene into the declaratory judgment action between the insurers and the claimants and have a voice at the table on so critical an issue, partially because its ability to proceed to a settlement resolution of claims for which it legitimately owes indemnity (and therefore insurance) to BP is potentially impacted by BP's overbroad claims. That Transocean sought equitable relief from a court does not in any way render inconsistent—much less reverse—its consistent position that the Drilling Contract issues are subject to arbitration. *See Nicholas v. KBR, Inc.*, 565 F.3d 904, 908 (5th Cir. 2009) ("There are lawsuits that can be filed that would not be inconsistent with seeking arbitration."); *see also Luckenbach Overseas Corp. v. Curran*, 398 F.2d 403, 405 (2d Cir. 1968) (observing that union's filing of suit for declaratory relief on issues subject to arbitration "did not waive its right to arbitration under the contract because the action 'represents an attempt by counsel to explore all possible avenues of redress, and is not clearly inconsistent with arbitration. . . .'"). Thus, Transocean's intervention in the coverage cases does not operate as a waiver of Transocean's right to arbitrate. Nor can BP claim

prejudice from Transocean's intervention. As BP has stated in a separate filing it made in this action, "Transocean's Complaint . . . adds nothing to the litigation. . . ." **Dkt. No. 2249-1, at 7.** BP should not be able to switch positions now to support its allegations of prejudice.

The final filing referred to by BP consists of Transocean's cross-/counterclaims.[2] Like its other arguments above, BP attempts to set before the Court a bright-line rule that the filing of a pleading forecloses the petitioner's contractual arbitration rights. But this is simply false. In every relevant[3] decision cited by BP, much more than the mere filing of a complaint is required to surmount the heavy presumption against waiver of arbitration.[4] None of these cases cited by BP—where a plaintiff in a two-party case sues a defendant and then, only after meeting with reverses, opts for arbitration—is anything like the conduct of Transocean in the relatively early stages of this massive litigation, in which it is but one defendant alongside BP and others faced with tens of thousands of lawsuits that are not subject to arbitration. *Cf. Luckenbach Overseas Corp.*, 398 F.2d at 405 (characterizing the filing of a lawsuit by a party claiming arbitration rights as simply "'an attempt by counsel to explore all possible avenues of redress'"). Regardless, in considering BP's cross-claim/counterclaim ground for asserting waiver,

---

[2] The terminology used varies depending upon procedural perspective, which is not easily had. Transocean and other defendants thus describe these claims broadly under Rule 8(e). **Dkt. No. 2068, at 2 n.2.**

[3] BP principally cites waiver cases in which a plaintiff, after having initially filed suit, later claimed arbitration. Of course there is no such bright-line rule in the other cases cited by BP, but for the sake of brevity not all have been summarized for the Court as in the footnotes below.

[4] *Nicholas v. KBR, Inc.*, 565 F.3d 904 (5th Cir. 2009) (holding substantial invocation of the judicial process resulted in waiver of arbitration where plaintiff filed suit in state court, pursued an unsuccessful motion to remand based on the most significant legal question in the case, and participated in discovery, moving to compel arbitration only after the court's adverse ruling on the removal issue); *Leal v. Luxottica Retail N. Am.*, No. 10-2044, 2011 WL 873348 (N.D. Tex. Mar. 10, 2011) (denying motion to compel arbitration where plaintiff filed suit in state court and openly rejected defendant's written offer to arbitrate after removing and moving to dismiss plaintiff's suit); *Kenyon Int'l Emergency Servs., Inc. v. Malcolm*, No. 09-3550, 2010 WL 2303328, at *4 (S.D. Tex. June 7, 2010) ("In filing suit twice, in opposing then equivocating about arbitration, and by withdrawing from an arbitration when compelled, Kenyon has twice elected litigation over arbitration. It has argued the merits of some of its claims and demonstrated a desire to litigate. Kenyon has changed its mind after adverse rulings, but it cannot erase its past elections and the quantity of litigation it forced the defendants to bear.").

Transocean is a defendant. The cross-claims/counterclaims thus cannot be treated as a new "complaint" against BP for the purposes its waiver argument, as if Transocean and BP were the only parties to this litigation. Beyond the Fifth Circuit,[5] courts across the country are clear that the mere assertion of a cross-claim or counterclaim does not operate as a waiver of that defendant's right to seek contractual arbitration. Something more—indeed, much more—is needed.[6]

Thus, none of the three filings, taken individually or together, can form the basis of a waiver of Transocean's contractual arbitration rights. Moreover, with regard to intervention in the coverage cases[7] and the assertion of cross-claims/counterclaims,[8] in taking each step

---

[5] *See, e.g.*, *Petroleum Pipe Americas Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 481 (5th Cir. 2009) (holding Jindal waived arbitration where it undisputedly (1) waited to compel it until a year after being sued, (2) removed the case, (3) filed counterclaims related to arbitrable issues and (4) participated in extensive discovery; Jindal disagreed, however, that Jindal had sought—and was tipped off by the district court that it would lose—a merits ruling from the district court on the interpretation of the arbitrable contract). Why, if a mere counterclaim on arbitrable issues suffices to waive contractual arbitration rights, did the Fifth Circuit tackle and decide the case on the contentious issue of the district court's possibly ruling against Jindal on the merits? It can only be concluded that a counterclaim on the merits does not, with something substantially more than even Jindal did in (1)–(4) in *Petroleum Pipe*, waive contractual arbitration rights. *See also E.C. Ernst, Inc. v. Manhattan Constr. Co.*, 551 F.2d 1026, 1040-41 (5th Cir. 1977) (finding two and a half years of litigation, including participation in discovery, presentation of cross-claims, and filing various motions—including a motion to dismiss—evidenced waiver of the right to arbitrate); *Gen. Guar. Ins. Co. v. New Orleans Gen. Agency Inc.*, 427 F.2d 924, 928–29 (5th Cir. 1970) (finding no waiver although a party filed an answer to a court claim denying liability and filed counterclaims, and also attempted to implead parties and allowed taking of two depositions before demanding arbitration).

[6] *See Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 229 (2d Cir. 2001) (concluding that the right to arbitrate was not waived where only minimal litigation was undertaken, consisting of a court appearance and a filing of defenses and cross claims); *Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 925 (3d Cir. 1992) ("In *Gavlik Constr. Co. v. H.F. Campbell Co.*, 526 F.2d 777 (3d Cir. 1975), we stated that '[m]erely answering on the merits, asserting a counterclaim (or cross-claim) or participating in discovery, without more, will not necessarily constitute a waiver. . . .'"); *Seguros Banvenez, S.A. v. S/S Oliver Drescher*, 761 F.2d 855, 862 (2d Cir. 1985) ("Although Venline participated in the litigation, it asserted the right to arbitrate at the very outset when it filed its answer to the amended complaint and cross-claim. Moreover, since Venline could not prevent plaintiffs from proceeding with their claims, it had no choice but to participate. Waiver may not be inferred on the basis of conduct relating to non-arbitrable issues.").

[7] **Dkt. No. 1667, at 1 n.1.**

[8] **Dkt. No. 2068, at 1 n.1.**

5

Transocean has prominently asserted its rights to arbitrate Drilling Contract issues.[9]  BP is thus incorrect in arguing that Transocean has not reserved its rights to arbitrate in various filings; and it goes beyond incorrectness to say, as BP's response contends, that Transocean did not reserve its arbitration rights in the complaint in intervention.  That complaint was filed as an exhibit to the motion for leave to file that complaint, the first page of which reserves arbitration rights.[10]

Finally, in somewhat circular fashion, BP attempts to argue that there is no presumption against waiver here because BP has otherwise shown that Transocean has waived arbitration. **Dkt. No. 2470, at 9.**  As discussed above, Transocean has not waived arbitration.  Regardless, there most certainly is a presumption—a strong presumption—against waiver of contractual arbitration rights that applies in this and every such case, and BP has neither proposed a legitimate way around it nor overcome it.  *Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 577 (5th Cir. 1991) ("[W]e indulge a presumption against finding waiver.  A party asserting waiver thus bears a heavy burden of proof in its quest to show that an opponent has waived a contractual right to arbitrate."); *see also Nicholas*, 565 F.3d at 908 ("We have not . . . gone as far as the Seventh Circuit on this issue, and we do not do so here, as we continue to require a showing of prejudice, even if there is a substantial invocation of the process." (quoting *Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390 (7th Cir. 1995) (holding that a party's "election to proceed before a nonarbitral tribunal for the resolution of a contractual dispute is a presumptive waiver of the right to arbitrate."))).

---

[9]  Consistent with its position that no affirmative claims for relief were made therein, Transocean did not raise its right to arbitration in the Rule 14(c) tender.  **Dkt. No. 1320.**

[10]  **Dkt. No. 1667-5.**

6

**B.     Transocean Has Not Submitted One Page of Written Discovery to BP and Has Not Noticed a Single BP Deposition**

BP argues that Transocean's participation in and presence at depositions in the MDL discovery operates to waive Transocean's arbitration rights. **Dkt. No. 2470, at 10.** BP attempts to pin the large number of BP witness depositions solely on Transocean, as if this case involved simply the two parties, *Transocean v. BP*.[11] But besides overstating its case factually, BP again mischaracterizes Transocean's role in this case and the case's scope. Transocean, like BP and the other defendants, is being sued by plaintiffs/claimants whose liability claims are not subject to arbitration under any agreement. Those claims will be prosecuted and tried only in a courtroom and Transocean and BP must defend themselves in that forum. Thus, just because a lawyer for Transocean asks a BP witness a question that relates to BP's liability does not mean Transocean is manipulating the legal process to litigate what Transocean has consistently maintained are arbitrable issues under the BP-Transocean Drilling Contract. BP has not argued that Transocean's lawyers' relatively few questions to BP's witnesses are in any way distinguishable from those put to them by other counsel. There can be no prejudice to BP here. *See Texaco Exploration & Prod. Co. v. AmClyde Eng'd Prods. Co.*, 243 F.3d 906, 910 (5th Cir. 2001) ("If arbitration goes forward between [Plaintiff] Texaco and [14(c) Defendant] McDermott, it need not hold up or interfere with the admiralty litigation between Texaco and the

---

[11] According to BP, where Transocean is concerned, any issue of BP's liability relates to the Drilling Contract and is thus subject to arbitration and, should Transocean take any step whatsoever toward a court rather than toward arbitration, subject to waiver. **Dkt. No. 2470, at 11.** But while this over-broad interpretation undoubtedly bolsters BP's waiver argument—because BP can point to any MDL activity by Transocean and claim waiver-by-litigation—if taken to its conclusion, it would virtually shut down the MDL proceedings while Transocean and BP arbitrated their disputes which, under BP's understanding of it, arguably encompass this entire case. *See Texaco Exploration & Prod. Co. v. AmClyde Eng'd Prods. Co.*, 243 F.3d 906, 909 (5th Cir. 2001) ("The arbitration clause is one this court has termed a 'broad' agreement because it covers 'any dispute' between the parties. As a result, any litigation arguably arising under such a clause should be stayed pending the arbitrator's decision as to whether the dispute is covered.").

7

other defendants [not subject to arbitration with Texaco]. Apportionment of liability exists whether or not McDermott is impleaded under Rule 14(c).").

"The question of what constitutes a waiver of the right of arbitration depends on the facts of each case. . . ." *Petroleum Pipe*, 575 F.3d at 480 (quoting *Walker*, 938 F.2d at 576). Where BP has failed to rebut the anti-waiver presumption and has not shown prejudice—prejudice caused solely by Transocean's purportedly underhanded litigation of arbitrable claims against BP—its arguments for waiver must be rejected.

### C.  Transocean and BP Have Been Discussing Arbitration All Along

Since the disaster first occurred, BP and Transocean have been involved in discussions relating to the claims against them, including the possibility of arbitration. Yet BP replies that Transocean did not raise the issue of arbitration until February 18, 2011. **Dkt. No. 2470, at 16.** The records referred to in BP's opposition, however, rebut this argument, as they explicitly make reference to discussions the parties had been having throughout the preceding months.

On February 18, Mr. Steven Roberts, counsel for Transocean, sent Mr. Richard Godfrey, counsel for BP, a request by email that Transocean wished to initiate arbitration for the indemnity and Drilling Contract disputes.[12] Well over a month later, on April 27, 2011, Mr. Godfrey for the first time replied that BP was not interested in arbitration. Apparently, BP had now decided to litigate any disputes with Transocean. Mr. Godfrey wrote that BP believed Transocean had waived its arbitration rights under the Drilling Contract. At most, BP's reference to February 18 email and BP's belated follow-up proves no more than that *BP* finally decided—and then stated for the first time, one month ago—that it is no longer considering

---

[12]  *See also* **Dkt. No. 2470-1**, Exh. A to BP's Opposition to Transocean's Motion for a Protective Order (containing Steven Roberts' explanation to the Court on February 25, 2011 that, after intervening, "Transocean is likely to move to stay the dispute involving insurance in favor of arbitration" in the coverage cases).

8

arbitration. It is implicit in this statement that, because BP no longer wishes to arbitrate, Transocean has waived recourse to arbitration.

But the question was still considered to have been open and subject to discussion between BP and Transocean before April. In the weeks that intervened between the February email and the April reply, counsel for BP and Transocean discussed the possible arbitration of their Drilling Contract-related disputes. On March 23, 2011, before one of the Friday hearings in which discussion of the arbitrable coverage issues (Transocean had not yet intervened) was expected to overlap into discussion of the non-arbitrable MDL issues, counsel for Transocean wrote Mr. Godfrey and Mr. Andrew Langan. He wanted to clear with them that, should the issue of arbitration and its timing be raised by BP's coverage counsel at the hearing, counsel for Transocean (still a non-party) would simply tell the Court that BP and Transocean remained in negotiations on the matter. In other words, BP and Transocean, as of two months ago, were still discussing where and when to resolve their arbitrable disputes. That same evening, counsel for Transocean wrote again to the same BP attorneys after BP's coverage counsel moved for an expedited schedule to resolve BP's additional insured status. This concerned Transocean, because only the day before BP asked Transocean for more time to decide how it wants to resolve the BP-Transocean disputes; and yet in the coverage action it was pressing forward actually to expedite a judicial determination of the preeminent arbitrable issue.

Indeed, counsel for BP and Transocean have been discussing how best to resolve their indemnity and coverage disputes—i.e., their arbitrable issues—since Transocean first presented BP with its demands for indemnity under the Drilling Contract on May 10, 2010. The parties understood back then that this case was bigger than just BP and Transocean. Counsel for Transocean and BP—understandably—wanted to focus immediately on the resolution of the

9

death and injury claims. It was settled upon that the parties would simply reserve their rights with regard to the contractual indemnities and proceed at once to resolve the non-arbitrable personal injury and death claims pending against BP and Transocean. That has been Transocean's approach since then, though arbitration has even been present in the parties' discussions.

This "triage" approach to dealing with the thousands of claims accords with Transocean's position on waiver: this litigation involves mostly non-arbitrable claims. The parties have focused on the most urgent among these, and have waited to discuss the Drilling Contract issues at a later date once all have a better picture of the MDL's scope. Transocean's presence and limited activity in the MDL cannot in any sense constitute waiver of its rights to arbitrate the Drilling Contract issues, especially when both BP and Transocean were discussing arbitration and its timing right up to the present.

## II. TRANSOCEAN'S LIMITED PARTICIPATION IN THE MDL HAS NOT PREJUDICED BP WITH REGARD TO ARBITRABLE MATTERS.

BP's argument at pages thirteen through sixteen of its memo is focused on trying to convince the Court that Transocean's presence is prejudicial to BP. It refers to time and money spent opposing Transocean as well as this Court's resources in deciding various matters.[13] Yet it has been shown above how Transocean's few filings in this case and its participation in discovery have not affected BP. It also alludes to prejudice to its legal position and "trial strategy." **Dkt. No. 2470, at 15.** But the Fifth Circuit has observed that waiver does not occur where there is, for example, even something as substantial as a merits-based motion to dismiss if the case involves "several claims that [are] non-arbitrable":

---

[13] *But see In re Mirant Corp.*, 613 F.3d at 592 n.5 (observing that "considerations of judicial economy do not factor into our prejudice analysis"). This makes sense, as BP must demonstrate that BP—not the Court—has been harmed.

10

> In such a case, a motion to dismiss may not be inconsistent with a right to arbitrate; it might be necessary for the defendant to file the motion both to sort out the claims before it can intelligently decide whether to arbitrate and to protect its rights in court if the arguably non-arbitrable claims do turn out to be non-arbitrable.

*In re Mirant Corp.*, 613 F.3d at 591–92 (quoting *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co.*, 969 F.2d 585, 589 (7th Cir. 1992)). What Transocean has done so far is not inconsistent with what the Fifth Circuit permits of parties with arbitration rights who find themselves as defendants. There are likely several thousand non-arbitrable claims in this case. And to be sure, Transocean's limited actions to this point stop far short of a merits-based motion to dismiss, which *In re Mirant* deems to be a permissible, pre-arbitration demand on the parties' and judiciary's resources. It has only taken the minimal steps necessary to ensure it is legally and procedurally present in this case and can intelligently decide how best to protect its non-arbitrable interests without waiving its arbitrable ones.

In sum, where BP has not shown a bright-line instance of waiver or prejudice, and has not even approached the presumption against waiver, the Court should reject its opposition to Transocean's Motion.

### III. THE ORDER COMPELLING BP TO RESPOND TO THE ANADARKO-MOEX DISCOVERY DOES NOT COMPEL THE DENIAL OF TRANSOCEAN'S MOTION FOR PROTECTIVE ORDER.

BP's final argument in opposition is that Judge Shushan's May 13th Order granting the Anadarko-MOEX motion to compel BP to answer certain discovery, **Dkt. No. 2358**, requires the denial of Transocean's motion for a protective order. And yet the Order itself shows that only the Anadarko-MOEX joint motion to compel was ruled on by the Court; BP's motion to stay, **Dkt. No. 2169**, which is the primary vehicle for addressing the arguments for arbitration and waiver under the parties' JOA, is to be decided by Judge Barbier. **Dkt. No. 2181.** The issue at

11

the heart of Transocean's Motion—waiver—remains to be addressed.[14] BP's argument here is thus premature.

Even if the reasoning supporting Judge Shushan's ruling on the Anadarko-MOEX motion does apply to the instant Motion, it comports with the alternative order sought in Transocean's motion for a protective order: "Alternatively, should Transocean be required to respond to the Discovery, Transocean seeks an Order that by responding to the Discovery Transocean will not be held to have waived its contractual right to arbitrate any of its disputes under its Drilling Contract with BP." Waiver must be addressed one way or the other.

## CONCLUSION

The scope of MDL proceedings goes far beyond the BP-Transocean disputes. These disputes have not been the subject of extensive litigation as BP suggests, and what litigation has taken place is not unique to any one dispute. Transocean's limited participation in the judicial proceedings is solely to protect its non-arbitrable interests. Because BP's brief demonstrates neither bright-line waiver by Transocean nor prejudice to BP, the Fifth Circuit's strong presumption against waiver disposes of BP's opposition.

---

[14] However, regardless of the Court's ruling on the effect of BP's behavior in this litigation on its own arbitration rights under the BP-Anadarko-MOEX JOA, that is an entirely different issue than *Transocean's* conduct to this point and how it relates to arbitration under the *BP-Transocean Drilling Contract*. As noted above, "[t]he question of what constitutes a waiver of the right of arbitration depends on the facts of each case. . . ." *Petroleum Pipe*, 575 F.3d at 480.

56816:10059302


Respectfully submitted,

By: /s/ Steven L. Roberts
Steven L. Roberts (Texas, No. 17019300)
Rachel Giesber Clingman (Texas, No. 00784125)
Kent C. Sullivan (Texas, No. 19487300)
Teri L. Donaldson (Florida, No. 784310)
Sutherland Asbill & Brennan LLP
1001 Fannin Street, Suite 3700
Houston, Texas 77002
Telephone: (713) 470-6100
Facsimile: (713) 654-1301
Email: steven.roberts@sutherland.com,
rachel.clingman@sutherland.com,
kent.sullivan@sutherland.com,
teri.donaldson@sutherland.com

By: /s/ Kerry J. Miller
Kerry J. Miller (Louisiana, No. 24562)
Frilot, L.L.C.
1100 Poydras Street, Suite 3700
New Orleans, Louisiana 70163
Telephone: (504) 599-8169
Facsimile: (504) 599-8154
Email: kmiller@frilot.com
-and-

By: /s/ Edwin G. Preis, Jr.
Edwin G. Preis, Jr. (Louisiana, No. 10703)
Edward F. Kohnke, IV (Louisiana, No. 07824)
Preis & Roy PLC
102 Versailles Boulevard, Suite 400
Lafayette, Louisiana 70501
Telephone: (337) 237-6062
Facsimile: (337) 237-9129
-and-

601 Poydras Street, Suite 1700
New Orleans, Louisiana 70130
Telephone: (504) 581-6062
Facsimile: (504) 522-9129
Email: egp@preisroy.com, efk@preisroy.com

Of Counsel:

John M. Elsley (Texas, No. 0591950)
Royston, Rayzor, Vickery & Williams LLP
711 Louisiana Street, Suite 500
Houston, Texas 77002
Telephone: (713) 224-8380
Facsimile: (713) 225-9945
Email: john.elsley@roystonlaw.com

Daniel O. Goforth (Texas, No. 08064000)
Goforth Geren Easterling LLP
4900 Woodway, Suite 750
Houston, Texas 77056
Telephone: (713) 650-0022
Facsimile: (713) 650-1669
Email: dangoforth@goforthlaw.com

13

56816:10059302

Brad D. Brian (California, No. 79001)
Allen M. Katz (California, No. 054933)
Munger Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California 90071
Telephone: (213) 683-9100
Facsimile: (213) 683-5180, (213) 683-4018
Email: brad.brian@mto.com, allen.katz@mto.com

*Counsel for Triton Asset Leasing GmbH.,
Transocean Holdings LLC, Transocean
Offshore Deepwater Drilling Inc. and
Transocean Deepwater Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, on June 3, 2011.

/s/  Kerry J. Miller

56816:10059302