## UNITED STATES DISTRICT OF COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL | § | MDL No. 2179 |
| RIG "DEEPWATER HORIZON" | § | |
| IN THE GULF OF MEXICO, | § | SECTION:  J |
| ON APRIL 20, 2010 | § | |
| | § | JUDGE BARBIER |
| Applies to:  *Pleading Bundle C* | § | |
| | § | MAG. JUDGE SHUSHAN |
| No. 10-2771 | § | |
| No. 11-0516 | § | |
| No. 10-3059 | § | |
| No. 10-4182 | § | |
| No. 10-4183 | § | |
| | § | |

## MEMORANDUM IN SUPPORT OF HALLIBURTON ENERGY SERVICES, INC.'S, MOTION TO DISMISS PLAINTIFFS' MASTER COMPLAINT ["BUNDLE C"], THE STATE OF ALABAMA'S FIRST AMENDED COMPLAINT, AND THE STATE OF LOUISIANA'S FIRST AMENDED COMPLAINT

Defendant Halliburton Energy Services, Inc. ("HESI"),[1] respectfully files this memorandum in support of its motion asking the Court to dismiss all claims against it in the Voluntary Master Complaint, Cross-Claim, and Third-Party Complaint for Local Governmental Entities (the "Master Complaint") (Dkt. No. 1510), the State of Alabama's First Amended Complaint ("AL Complaint") (Dkt. No. 1872) and the State of Louisiana's First Amended Complaint ("LA Complaint") (Dkt. No. 2031), pursuant to Federal Rule of Civil Procedure 12.

---

[1] The Complaints identify Halliburton Energy Services, Inc. ("HESI") as a defendant.  *See* Master Compl. ¶¶ 195-96; AL Compl. ¶¶ 18-19; LA Compl. ¶ 32.  It is unclear whether Plaintiffs assert that Halliburton's product service line, Sperry Drilling Services ("Sperry"), is a separate defendant.  Sperry is not a proper defendant as it is merely a product service line and not a separate corporate entity.  Nevertheless, to the extent Plaintiffs assert claims against Sperry in the Complaints, Halliburton expressly adopts the arguments set forth herein as being applicable to Sperry in addition to HESI.

## TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     PROCEDURAL BACKGROUND AND CLAIMS ..............................................2

        A.  The Bundle C Master Complaint. ............................................................2

        B.  The State of Alabama's First Amended Complaint. .................................3

        C.  The State of Louisiana's First Amended Complaint. ...............................5

III.    STATEMENT OF FACTS .....................................................................................6

IV.     SUMMARY OF ARGUMENT .............................................................................7

V.      ARGUMENT AND AUTHORITY .......................................................................9

        A.  PLAINTIFFS' STATE LAW CLAIMS MUST BE DISMISSED................9

            1.  The Supreme Court has Established that an Affected State's Law Does
                Not Apply to Out-of-State Sources of Pollution....................................10

            2.  Pursuant to OCSLA, Federal Law Applies to any Claims Arising out
                of or in Connection with Operations Conducted on the Outer
                Continental Shelf....................................................................................12

            3.  Plaintiffs' Claims, if Any, Arise Under this Court's Admiralty
                Jurisdiction. ...........................................................................................15

            4.  Plaintiffs' Alleged Damages Demonstrate that OPA is Their
                Exclusive Remedy....................................................................................19

            5.  Plaintiffs' Failure to Present Their Claims Through the OPA-Mandated
                Claims Process Divests this Court of Subject Matter Jurisdiction.......................23

            6.  Plaintiffs' Sole Remedy for Their Alleged Damages, if any, Lie
                Against a "Responsible Party" Designated under OPA, not against HESI...........25

        B.  EVEN IF THIS COURT FINDS THAT PLAINTIFFS' MARITIME
            LAW CLAIMS ARE NOT DISPLACED BY OPA, PLAINTIFFS FAIL
            TO STATE MARITIME LAW CLAIMS AGAINST HESI......................................26

            1.  Plaintiffs' Claims are Barred by the Economic Loss Rule. ....................26

            2.  The State of Louisiana's Maritime Law Nuisance Claims Must be Dismissed. ....28

        C.  EVEN IF THIS COURT DETERMINES THAT STATE LAW APPLIES
            TO PLAINTIFFS' CLAIMS, SEVERAL OF THESE CLAIMS MUST BE
            DISMISSED. .........................................................................................28

            1.  Plaintiffs Fail to State a Claim for Fraudulent Concealment. ................28

            2.  Local Government Plaintiffs and the State of Alabama Fail to State a
                Claim for Nuisance. ...............................................................................30

i

3. Louisiana Law Bars Plaintiffs' Claims to the Extent they Seek Economic Damages Absent Physical Injury to a Proprietary Interest. ...................................31

4. The State of Alabama has not Stated a Claim Against HESI for Civil Penalties Under the Alabama Hazardous Waste Disposal Act. .............................32

D. PLAINTIFFS CANNOT, AS A MATTER OF LAW, RECOVER PUNITIVE DAMAGES FROM HESI ........................................................................32

VI.    CONCLUSION.................................................................................................................33

D  1644080 v3-24010/0002 PLEADINGS

## <u>TABLE OF AUTHORITIES</u>

<small>CASES</small>

*Akron Corp. v. M/T Cantigny*,
   706 F.2d 151 (5th Cir. 1983) ...............................................................................27

*Arkansas v. Oklahoma*,
   503 U.S. 91 (1992)...............................................................................................11

*Ashcroft v. Iqbal*,
   556 U.S. __, 129 S.Ct. 1937 (2009).....................................................................9

*Barasich v. Columbia Gulf Transmission Co.*
   467 F. Supp. 2d 676 (E.D. La. 2006).................................................................30

*Barasich v. Shell Pipeline Co., LP*,
   2006 U.S. Dist. LEXIS 84389 (E.D. La. Nov. 20, 2006) ..................................31

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).............................................................................................9

*Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.*,
   51 F.3d 235 (11th Cir. 1995) ..............................................................................24

*Broughton Offshore Drilling, Inc. v. S. Cent. Mach., Inc.*,
   911 F.2d 1050 (5th Cir. 1990) ............................................................................18

*Brown v. S. Fla. Fishing Extreme, Inc.*,
   No. 08-CV-20678, 2008 U.S. Dist. Lexis 49452 (S.D. Fla. June 27, 2008).............8

*Butler v. Baber*,
   529 So. 2d 374 (La. 1988) ..................................................................................30

*Byrne v. Nezhat*,
   261 F.3d 1075 (11th Cir. 2001) ..........................................................................32

*Case v. Omega Natchiq, Inc.*,
   No. H-08-0835, 2008 U.S. Dist. LEXIS 52931 (S.D. Tex. July 10, 2008) ............16

*Chrysler Credit Corp. v. Whitney Nat'l Bank*,
   824 F. Supp. 587 (E.D. La. 1993).......................................................................29

*Cinel v. Connick*,
   15 F.3d 1338 (5th Cir. 1994) ................................................................................8

D  1644080 v3-24010/0002 PLEADINGS

*Clausen v. M/V New Carissa*,
    171 F. Supp. 2d. 1127 (D. Or. 2001) ...................................................................33

*Colomb v. Texaco, Inc.*,
    736 F.2d 218 (5th Cir. 1984) ..........................................................................16

*Conner v. Aerovox, Inc.*,
    730 F.2d 835 (1st Cir. 1984)............................................................................28

*Coventry First, LLC v. McCarty*,
    2010 U.S. App. LEXIS 9227 (11th Cir. May 5, 2010)...........................................9

*Cuvillier v. Taylor*,
    503 F.3d 397 (5th Cir. 2007) ...........................................................................9

*Demette v. Falcon Drilling Co.*,
    280 F.3d 492 (5th Cir. 2002) .........................................................................13

*Dennis v. Bud's Boat Rental, Inc.*,
    987 F. Supp. 948 (E.D. La. 1997).....................................................................14

*Domingue v. Ocean Drilling and Exploration Co.*,
    923 F.2d 393 (5th Cir. 1991) ..........................................................................16

*E. River S.S. Corp. v. Transamerica Delaval*,
    476 U.S. 858 (1986)......................................................................................15

*Eaton v. Dorchester Dev., Inc.*,
    692 F.2d 727 (11th Cir. 1982) ........................................................................10

*Gabarick v. Laurin Mar. (Am.) Inc.*,
    623 F. Supp. 2d 741 (E.D. La. 2009)..........................................................*Passim*

*Gatlin Oil Co. v. United States*,
    169 F.3d 207 (4th Cir. 1999) ..........................................................................20

*Grubart, Inc. v. Great Lakes Dredge & Dock Co*
    513 U.S. 527 (1995)...........................................................................*Passim*

*Gulf Offshore v. Mobil Oil Corp.*,
    453 U.S. 473 (1981).......................................................................................12

*Int'l Paper Co. v. Ouellette*,
    479 U.S. 481 (1987)................................................................................. 10-12

*In re Ford Motor Co. Vehicle Paint Litig.*,
    1997 U.S. Dist. LEXIS 13124 (E.D. La.) ...........................................................29

iv

*In re Jahre Spray II K/S*,
    1996 U.S. Dist. LEXIS 11594 (D. N.J. Aug. 5, 1996)..........................................................20

*In re Taira Lynn Marine Ltd. No. 5, LLC*,
    444 F.3d 371 (5th Cir. 2006) ............................................................................................26

*Johnson v. Colonial Pipeline Co.*,
    830 F. Supp. 309 (E.D. Va. 1993) ...................................................................................20

*Kingston Shipping Co. v. Roberts*,
    667 F.2d 34 (11th Cir. 1983) .............................................................................................26

*La. Crawfish Producers Ass'n v. Amerada Hess Corp.*
    935 So. 2d 380 (La. Ct. App. 2006)..................................................................................31

*Levy v. Ohl*,
    477 F.3d 988 (8th Cir. 2007) ...............................................................................................8

*Lum v. Bank of Am.*,
    361 F.3d 217 (3d Cir. 2004)..................................................................................................8

*Manuel v. P.A.W. Drilling & Well Serv., Inc.*,
    135 F.3d 344 (5th Cir. 1998) .............................................................................................16

*Marathon Pipe Line Co. v. LaRoche Indus. Inc.*,
    944 F. Supp. 476 (E.D. La. 1996).....................................................................................24

*McElmurray v. Consol. Gov't. of Augusta Richmond County*,
    501 F.3d 1244 (11th Cir. 2007) .........................................................................................10

*Fontenot v. Mesa Petroleum Co.*,
    791 F.2d 1207 (5th Cir. 1986) ...........................................................................................16

*Nat'l Sea Clammers Ass'n v. City of New York*,
    453 U.S. 1 (1981)...............................................................................................................28

*Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atl. Corp.*,
    924 F. Supp. 1436 (E.D. Va. 1996) ..................................................................................20

*Ramming v. United States*,
    281 F.3d 158 (5th Cir. 2001) .............................................................................................10

*Reserve Mooring, Inc. v. Am. Commercial Barge Line, LLC*,
    251 F.3d 1069 (5th Cir. 2001) ...........................................................................................26

*Robins Dry Dock & Repair Co. v. Flint*,
    275 U.S. 303 (1927)...........................................................................................................26

v

*Ronquille v. MMR Offshore Servs., Inc.,*
    353 F. Supp. 2d 680 (E.D. La. 2004) ...................................................................14

*S. Port Marine, LLC v. Gulf Oil Ltd. P'ship,*
    234 F.3d 58 (1st Cir. 2000) ..................................................................*Passim*

*Sekco Energy v. M/V Margaret Chouest,*
    820 F. Supp. 1008 (E.D. La. 1993) ..................................................................28

*Sisson v. Ruby,*
    497 U.S. 358 (1990) ..................................................................................14, 17

*Snyder Oil Corp. v. Samedan Oil Corp.*
    208 F.3d 521 (5th Cir. 2000) ...........................................................................14

*State of Louisiana v. M/V Testbank,*
    752 F.2d 1019 (5th Cir. 1985) .........................................................................26

*Stewart v. Dutra,*
    543 U.S. 481 (2005) ..........................................................................................16

*Sullivan v. Leaf River Forest Prods., Inc.,*
    791 F. Supp. 627 (S.D. Miss. 1991) ................................................................12

*Sulzer Carbomedics v. Or. Cardio-Devices, Inc.,*
    257 F.3d 449 (5th Cir. 2001) ...........................................................................32

*Tanguis v. M/V Westchester,*
    153 F. Supp. 2d 859 (E.D. La. 2001) ..............................................................20

*Tennessee Gas Pipeline v. Houston Cas. Ins. Co.,*
    87 F.3d 150 (5th Cir. 1996) .............................................................................15

*TS&C Invs. L.L.C. v. Beusa Energy, Inc.,*
    637 F. Supp. 2d 370 (W.D. La. 2009) .............................................................31

*Universal Express, Inc. v. SEC,*
    177 F. App'x 52 (11th Cir. 2006) ......................................................................8

*Ynclan v. Dep't of the Air Force,*
    943 F.2d 1388 (5th Cir. 1991) .........................................................................10

## STATUTES

1 U.S.C. § 3 .........................................................................................................16

33 U.S.C. § 2701 .................................................................................................20

33 U.S.C. § 2701(32) ....................................................................................8, 25

33 U.S.C. § 2702(a) ...............................................................................................................25

33 U.S.C. § 2702(b)(2) ..........................................................................................................21

33 U.S.C. § 2704(b) .................................................................................................................8

33 U.S.C. § 2709 ....................................................................................................................26

33 U.S.C. § 2713(a) ...............................................................................................................23

33 U.S.C. § 2713(c) ...............................................................................................................24

43 U.S.C. § 1333(a)(1) ...................................................................................................... 13-14

43 U.S.C. § 1333(a)(2)(A) ................................................................................................ 13-14

43 U.S.C. § 1349(b)(1) ...................................................................................................... 12-13

46 U.S.C. § 30101(a) .............................................................................................................15

46 U.S.C. § 30505(a) .............................................................................................................17

46 U.S.C. § 30506(a)-(b) .......................................................................................................17

46 U.S.C. §§ 30511(a) ...........................................................................................................17

**OTHER AUTHORITIES**

33 C.F.R. § 136.305 ...............................................................................................................25

S. Rep. No. 101-94 (1989) .....................................................................................................24

D  1644080 v3-24010/0002 PLEADINGS

## I.       __INTRODUCTION__

This case arises out of the fire, explosion, and sinking of the DEEPWATER HORIZON, "a dynamically positioned semisubmersible deepwater [drilling vessel,]" and a subsequent release of oil into the Gulf of Mexico (hereinafter, the "Incident").  Master Compl. ¶¶ 164-65; AL Compl. ¶ 43; LA Compl. ¶.42.  Numerous lawsuits were filed in state and federal courts, several of which were brought by state and local governmental entities, such as the plaintiffs here, the State of Alabama, the State of Louisiana and various local governmental entities (the "Local Government Plaintiffs" and, together with the State of Alabama and the State of Louisiana, "Plaintiffs").

All claims regarding the DEEPWATER HORIZON incident (the "Incident") in this proceeding arise under admiralty tort jurisdiction and are therefore governed by general maritime law.  Plaintiffs do not dispute this fact.  Plaintiffs nevertheless allege various unsustainable state common law and statutory claims.  Plaintiffs will likely contend that they may properly assert state law claims despite the exclusive applicability of admiralty and maritime law, but this contention must fail.  State law would only apply here if: (1) state law is incorporated as a proxy for federal law pursuant to the "adjacent state law" provision of the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. §§ 1331-1356A, *et seq.*, or (2) such claims arise in state territorial waters.  Neither requirement is applicable here.  Thus, dismissal of state law claims is proper.

In their Complaints, Plaintiffs assert largely economic damages, allegedly resulting from the oil spill.  *See* Master Compl. ¶ 178; AL Compl. ¶¶ 85-93; LA Compl. ¶ 2.  They also allege that the Macondo well, from which the oil flowed, is located on the outer continental shelf ("OCS"), beyond the territorial waters of any state.  *See* Master Compl. ¶ 241; AL Compl. ¶ 48;

1

LA Compl. ¶ 296(t).  These two facts establish that federal law, not state law, governs Plaintiffs' claims by operation of the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. §§ 1331-1356A, *et seq.,* and that the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. §§ 2701-2720, *et seq*., provides Plaintiffs' exclusive remedy.

Moreover, because maritime law applies to the claims of the Local Government Plaintiffs, the State of Louisiana and the State of Alabama, Plaintiffs' state law claims fail.  Accordingly, this Court should grant HESI's Motion to Dismiss.

## II.  PROCEDURAL BACKGROUND AND CLAIMS

On October 19, 2010, this Court entered Case Management Order No. 1 ("CMO 1"), in which it defined "Bundle C" pleadings to include "claims brought by governmental entities for, *inter alia,* loss of resources, loss of tax revenues, response costs and civil penalties[.]"  CMO 1 III.C.  The three Complaints addressed by this Motion to Dismiss are as follows:

### A.  The Bundle C Master Complaint.

On March 4, 2011, the local governmental entity Plaintiffs (the "Local Government Plaintiffs") filed the Master Complaint, asserting against HESI claims under maritime law and state common law and statutory law.  Master Compl. ¶¶ 542-595, 618-639, 670-710, 727-769.  Plaintiffs identify the Master Complaint as an admiralty or maritime case as provided in Federal Rule of Civil Procedure 9(h).  Master Compl. ¶ 222.  Specifically, Plaintiffs assert maritime law claims for negligence, negligence *per se*, gross negligence, willful misconduct and for strict liability for manufacturing and/or design defect against HESI.[2]  Master Compl. ¶¶ 542-595, 618-639.  Plaintiffs' state common law claims against HESI include claims for public nuisance, nuisance, trespass, and fraudulent concealment.  Master Compl. ¶¶ 670-710.  The Local

---

[2] The Local Government Plaintiffs also assert, in the alternative to their maritime law strict liability claim for manufacturing and/or design defect, a claim for strict products liability pursuant to the products liability statutes of Louisiana, Texas, Mississippi and/or Alabama's Extended Manufacturer's Liability Doctrine.  Master Compl. ¶ 639.

Government Plaintiffs also asserts claims pursuant to the Louisiana Oil Spill Prevention and Response Act, La. R. S. 30:2451, *et seq.*, and the Texas Oil Spill Prevention and Response Act of 1991, Tex. Nat. Res. Code Ann. § 40.001, *et seq.*  Master Compl. ¶¶ 727-746.

Local Government Plaintiffs also seek punitive damages against HESI.  Master Compl. ¶¶ 747-769.  They further assert additional claims against other defendants, including a claim for relief under the Oil Pollution Act of 1990, 33 U.S.C. § 2701, *et seq.*  Master Compl. ¶¶ 659-669.

Local Government Plaintiffs filed this suit alleging damages in the form of:

loss of revenue, royalties, rents, fees and net profit shares due to the loss of real and personal property [as well as] costs associated with increased public services, resulting in additional administrative costs, costs of additional personnel, out-of-pocket costs incurred for material and equipment; removal costs, including personnel salary costs, overtime travel and per diem expenses; costs for use of government-owned equipment and facilities, and actual expenses for goods and/or services supplied by contractors and/or vendors[;]

*Id.*¶¶ 171-72.  Moreover, they allege that "certain local government entities own real and/or personal property that was lost, damaged, or diminished in value as a result of the [oil spill]."  *Id.* ¶ 173.

## B.    The State of Alabama's First Amended Complaint.

Similarly, on April 5, 2011, the State of Alabama filed the AL Complaint, asserting various claims for damages under maritime and state common law as well as statutory law against HESI.  The State of Alabama also asserted claims under several Alabama environmental statutes.  AL Compl. ¶¶ 92-147, 186-204, 220-238, 256-345.[3]  The State of Alabama also asserts a claim against HESI under the Alabama Extended Manufacturer's Liability doctrine. *Id.*¶ 256-263.  Like the Local Government Plaintiffs, the State of Alabama also seeks punitive damages,

---

[3] Alabama asserts claims for damages and/or civil penalties under the following state statutes: the Alabama Water Pollution Control Act ("AWPCA"); the Alabama Environmental Management Act ("AEMA"); the Alabama Air Pollution Control Act ("AAPCA"); the Alabama Hazardous Wastes Management Act ("AHWMA"); and the Alabama Solid Waste Disposal Act ("ASWDA").  AL Compl. ¶ 282-327.

3

*Id.* ¶¶ 346-368, and demands a jury trial as to all its claims in which the law makes such a trial available.  *Id.* ¶ 369-371.

The State of Alabama invokes Fed. R. Civ. P. 9(h) to specify that it seeks admiralty jurisdiction as to its maritime law claims against HESI for negligence, gross negligence and willful misconduct and strict liability for manufacturing and/or design defect.  *See* AL Compl. ¶ 33.  It invokes this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367 as to its state law claims for damages and penalties against HESI.  *See id.* ¶ 35.[4]  The State of Alabama characterizes its complaint as an "enforcement action for a declaratory judgment, to recover the fines and penalties to which the State is entitled, as well as for compensatory, punitive, and other damages, to the fullest extent allowed by Alabama and federal law."  AL Compl. ¶ 4.

The State of Alabama filed this suit alleging environmental damages in the form of "past, present, and future harm to, and contamination of, the State's waters, property, estuaries, seabeds, animals, plants, beaches, shorelines, coastlines, islands, marshlands, and other natural and economic resources."  AL Compl. ¶ 82.  It further alleges additional past, present and future damages for:

> physical injury to and destruction of State resources and property[;] . . . economic losses resulting from injury to or destruction of State property; . . . lost State revenues from taxes, rents, fees, licenses, or net profit shares; . . . costs expended by the State to assess, monitor, abate, remediate, remove, and/or clean contaminated State waters, land, and property; . . . costs expended by the State for providing increased or additional public services to address the oil disaster and protect human health and the environment; . . . damages associated with the long-term stigma of the oil disaster, including the loss of use of State property, taxes, royalties, license fees, revenues, and other income; . . . lost revenue and human-use opportunities associated with various natural resources in the Gulf region, including but not limited to fishing, swimming, beach-going, and viewing of birds and wildlife; and [p]assive use losses as measured by contingent valuation methods.

---

[4] The State of Alabama also brings a claim under the Oil Pollution Act of 1990, ("OPA") 33 U.S.C. § 2701, *et seq,* against other defendants.  AL Compl. ¶¶ 205-219.

*Id.*¶ 92.[5]

## C.    The State of Louisiana's First Amended Complaint.

The State of Louisiana filed its First Amended Complaint on April 19, 2011, asserting claims for damages and removal costs under state common and statutory[6] law, as well as under general maritime law.  LA Compl. ¶¶ 168-180, 190-194, 222-292, 301-307, 323-339, 361-385. It also demands a jury trial "on all issues so triable."  LA Compl. ¶ 393.  The State of Louisiana asserts jurisdiction based on 33 U.S.C. § 2717 (OPA) and Article III, Section 2 of the United States Constitution, which gives this Court jurisdiction over maritime claims.  LA Compl. ¶ 35. The State of Louisiana asserts that this Court has supplemental jurisdiction to hear its state law claims.  LA Compl. ¶ 36.

The State of Louisiana seeks to recover alleged removal and response costs associated with the oil spill, including removal of oil from water and shorelines and other actions taken "to minimize or mitigate damage to the public health or welfare, including but not limited to fish, shellfish, wildlife, and public and private property, shorelines and beaches."  LA Compl. ¶ 133. It further avers that is has incurred property and economic damages in the form of "increased costs of public services, revenue and tax losses, and injuries to the Louisiana brand and similar impacts to the State's earning capacity[.]"  LA Compl. ¶ 142.

---

[5] The State of Alabama characterizes this as a non-exhaustive list of its damages.  AL Compl. ¶ 93.

[6] These include alleged violations of the Louisiana Environmental Quality Act ("LEQA") and the Louisiana Oil Spill Prevention and Response Act ("LOSPRA").  LA Compl. ¶¶168-189, 222-238.

## III.  STATEMENT OF FACTS[7]

Defendant BP[8] was the holder of a lease granted by the Minerals Management Service ("MMS") authorizing the exploration, development and production of oil in Mississippi Canyon Block 252 in the Gulf of Mexico.  *See* Master Compl. ¶ 179; AL Compl. ¶ 38; LA Compl. ¶ 38. BP conducted its drilling exploration activities on the DEEPWATER HORIZON, an ultra-deepwater dynamic positioned semi-submersible oil rig built for defendant Transocean[9] and owned, navigated, and operated by Transocean.  *See* Master Compl. ¶¶ 255, 559; AL Compl. ¶¶ 43, 107; LA Compl. ¶¶ 42.  HESI's role was principally cement design and testing, as well as pumping said cement into the well.  *See* Master Compl. ¶ 195; AL Compl. ¶ 18; LA Compl. 61. HESI's Sperry personnel on the rig also assisted in mudlogging and well monitoring activities. Master Compl. ¶¶ 195-96; AL Compl. ¶ 19; LA Compl. ¶ 330.

On April 20, 2010, there was an explosion on board the DEEPWATER HORIZON as BP prepared to temporarily abandon the well.  *See* Master Compl. ¶ 227; AL Compl. ¶ 1; LA Compl. ¶ 4.  Subsequently, the DEEPWATER HORIZON sank into the Gulf of Mexico leading to the release of oil.  *See* Master Compl. ¶ 447; AL Compl. ¶ 2; LA Compl. ¶ 4.  Plaintiffs allege generally that the oil has affected beaches, wetlands, marshes, and estuaries that line the coasts of the Gulf States, destroying the habitats and spawning sites of marine life, which resulted in Plaintiffs' alleged damages.  *See* Master Compl. ¶ 448; AL Compl. ¶¶ 82, 85; LA Compl. ¶¶ 115-120.

---

[7] The "Statement of Facts" is based on allegations made in the Complaints.  HESI does not stipulate to the veracity of these allegations by its citation to the facts as alleged in the Complaints.

[8] Plaintiffs identified defendants BP Exploration and Production, Inc., BP America Production Company, and BP, p.l.c., collectively as "BP."  *See* Master Compl. ¶¶ 179-181, 188; AL Compl. ¶¶ 8-11; LA Compl. ¶ 11 (also identifying BP Corporation North America, Inc.).

[9] Plaintiffs identified defendants Transocean Deepwater, Inc., Transocean Offshore Deepwater Drilling, Inc., Transocean Holdings, LLC, Triton Asset Leasing GMbH, and Transocean Ltd., collectively as "Transocean."  *See* Master Compl. ¶¶ 189-194; AL Compl. ¶ 17; LA Compl. ¶¶ 26-30.

D 1644080 v3-24010/0002 PLEADINGS

## IV.    <u>SUMMARY OF ARGUMENT</u>

The Oil Pollution Act of 1990, 33 U.S.C. §§ 2701-2720, *et seq*. ("OPA") provides the exclusive federal remedy for the categories of oil spill-related damages Plaintiffs allege.  As the exclusive federal remedial scheme for such damages, OPA specifically preempts or displaces[10] maritime tort claims seeking damages such as those asserted by Plaintiffs here.

Plaintiffs also assert state common law and statutory claims against HESI.  However, case law establishes that Plaintiffs cannot bring state law causes of action against HESI in this case.  Supreme Court jurisprudence applying the Clean Water Act makes it clear that an affected state's law cannot apply to a source of pollution outside that state's territory.  Moreover, pursuant to OCSLA, federal law applies to cases that arise beyond the borders of any state's territory on the OCS, and OCSLA's choice of law provisions plainly demonstrate that Plaintiffs' claims arise, if at all, under maritime law (*not* state law).  Therefore, Plaintiffs' claims are maritime law claims and are, therefore, preempted or displaced by OPA.

Because of the applicability of OPA, this Court lacks subject matter jurisdiction to proceed to the extent that Plaintiffs have failed to plead and/or comply with the statute's mandatory claims presentment procedure.  This failure provides both an independent and additional basis requiring dismissal of Plaintiffs' claims.

---

[10] The doctrine of "preemption" generally pertains to the effect of federal law on state law, where there are concerns associated with federalism and balancing states' rights.  However, the discussion herein regarding OPA's effect on federal common law (*i.e.*, maritime law) pertains to the effect of a federal statute on a body of federal law, not state law.  In such instances, the federal statute more accurately "displaces" the federal common law, and there are no corresponding federalism issues.  Nevertheless, in discussing OPA's effect on federal maritime law, certain courts have referred to this issue as one of "preemption," and other courts seem to use "preemption" and "displacement" interchangeably.  *See, e.g., Gabarick v. Laurin Mar. (Am.) Inc.*, 623 F. Supp. 2d 741, 750-51 (E.D. La. 2009) (holding that "all [general maritime law] claims that are recoverable under OPA, specifically those covered damages enumerated in 33 U.S.C. § 2702, are preempted by OPA").  To avoid confusion with supporting case law, HESI's discussion of OPA asserts that the statute "preempts or displaces" federal maritime law.

Importantly, OPA only allows for claims to be asserted against a "responsible party," as defined by OPA."[11]  The Coast Guard has designated BP and certain other defendants, not including HESI, as "responsible parties" under OPA.[12]  Because HESI is not a designated "responsible party" under OPA, Plaintiffs' claims against HESI must be dismissed.

Even assuming, *arguendo*, that Plaintiffs' claims are properly asserted against HESI, dismissal of those claims is required under Rule 12(b)(6) to the extent they seek economic damages without alleging physical injury to a proprietary interest as they are barred by the "economic loss" rule.

Further, Plaintiffs' allegations in support of their fraudulent concealment claim fail to state a cognizable cause of action against HESI and must therefore be dismissed.  Finally, the State of Alabama and Local Government Plaintiffs' request for punitive damages must also be

---

[11]  *See* 33 U.S.C. § 2701(32) (defining "responsible party" of "vessels" and "offshore facilities") and §2702 (describing the liability of "responsible parties").  For limitation of liability purposes, under OPA, a MODU such as the DEEPWATER HORIZON may be treated as a "vessel" or an "offshore facility" depending on the nature of an oil spill and/or the extent of damages caused by a spill.  *See* 33 U.S.C. § 2704(b).  To the extent the DEEPWATER HORIZON is treated as a "vessel," OPA defines a "responsible party" as "any person owning, operating, or demise chartering the vessel."  *Id.* § 2701(32)(A).  To the extent the DEEPWATER HORIZON is treated as an "offshore facility," OPA defines a "responsible party," in relevant part, as "the lessee or permittee of the area in which the facility is located[.]"  *Id.* § 2701(32)(C).  Regardless of the limitation of liability treatment afforded the DEEPWATER HORIZON under the Act, HESI was a third-party contractor on the vessel and, therefore, satisfies neither definition of "responsible party."

[12]  In the days following the DEEPWATER HORIZON incident, the Coast Guard designated BP as a responsible party under OPA.  *See* http://www.uscg.mil/foia/docs/DWH/2094.pdf (including the Coast Guard's correspondence to BP, designating it as a responsible party under OPA and BP's acknowledgment of that designation); attached hereto as Exhibit "A."  *See also* http://www.uscg.mil/foia/docs/DWH/2886.pdf (including the Coast Guard's designation of Transocean Holding, LLC, as a responsible party); OIL SPILL COST AND REIMBURSEMENT FACT SHEET,  http://www.restorethegulf.gov/release/2011/01/11/oil-spill-cost-and-reimbursement-fact-sheet (noting that Anadarko and MOEX have also been designated as responsible parties), attached hereto as Exhibit B.

Courts may consider facts not specifically alleged in the complaint when considering a 12(b)(6) motion.  *See Universal Express, Inc. v. SEC*, 177 F. App'x 52, 53-54 (11th Cir. 2006); *Brown v. S. Fla. Fishing Extreme, Inc.*, No. 08-CV-20678, 2008 U.S. Dist. Lexis 49452, at * 3-4 (S.D. Fla. June 27, 2008); *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007) ("materials that are part of a public record or do not contradict the Complaints may be considered by a court in deciding a Rule 12(b)(6) motion"); *accord Cinel v. Connick*, 15 F.3d 1338, 1343 n. 6 (5th Cir. 1994); *see also Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (internal citations omitted) (noting that in deciding a motion to dismiss, courts may consider matters of public record).

8

denied as such damages are not recoverable under OPA, which provides Plaintiffs' sole remedy for the damages they allege.

Accordingly, HESI respectfully moves the Court to dismiss all claims asserted against it pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## V.      ARGUMENT AND AUTHORITY

### A.      PLAINTIFFS' STATE LAW CLAIMS MUST BE DISMISSED.

Rule 12(b)(6) provides defendants a mechanism early in litigation for challenging a plaintiff's right to recover on a particular set of facts or a particular cause of action. To that end, Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. __, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). Although courts accept well-pleaded facts as true, the U.S. Supreme Court recently rejected the previously-applicable principle that a dismissal for failure to state a claim was improper "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim." *Twombly*, 550 U.S. 544, 561 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also Coventry First, LLC v. McCarty*, No. 09-11682, 2010 U.S. App. LEXIS 9227, at *4-5 (11th Cir. May 5, 2010) (citing *Castro v. Secretary of Homeland Sec.*, 472 F.3d 1334, 1336 (11th Cir. 2006)). Rather, to survive a Rule 12(b)(6) challenge, the "complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 570); *see also Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). These "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555-56.

9

Similarly, Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of an action where the court lacks subject matter jurisdiction.  A motion to dismiss filed pursuant to Rule 12(b)(1) allows a party to challenge the subject matter jurisdiction of the district court to hear a case.  *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001); *see also McElmurray v. Consol. Gov't. of Augusta Richmond County*, 501 F.3d 1244, 1251 (11th Cir. 2007).  A court may decide such a motion on one of three bases: (1) the complaint alone; (2) the complaint and the undisputed facts in the record; or (3) the complaint, the undisputed facts in the record, and the court's own resolution of disputed facts.  *McElmurray*, 501 F.3d at 1251; *Ynclan v. Dep't of the Air Force,* 943 F.2d 1388, 1390 (5th Cir. 1991) (citing *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir. 1981)).  In a Rule 12(b)(1) motion, the burden of proving that jurisdiction exists falls on the party asserting jurisdiction.  *Ramming,* 281 F.3d at 161; *Eaton v. Dorchester Dev., Inc.,* 692 F.2d 727, 732 n.9 (11th Cir. 1982).

### 1. The Supreme Court has Established that an Affected State's Law Does Not Apply to Out-of-State Sources of Pollution.

Supreme Court jurisprudence is clear.  Liability under state common law cannot be imposed on sources of pollution located *outside* that State's boundaries.  *See Int'l Paper Co. v. Ouellette,* 479 U.S. 481 (1987).  In *Int'l Paper,* several owners of lakeside property on the Vermont side of Lake Champlain asserted a nuisance claim against a paper company whose paper mill discharged pollutants into Lake Champlain from the New York side of the lake.  479 U.S. at 484.  Like Plaintiffs here, the Vermont landowners sought compensatory damages for the alleged diminution of their property values, as well as punitive damages for the release of pollutants.  *Id.*  After noting that "the control of interstate pollution is primarily a matter of

federal law,"[13] the Court concluded that "the CWA [Clean Water Act] precludes a court from applying the law of an affected State against an out-of-state source." *Id.* at 494. The Court noted that the only state law that can be applicable to an interstate discharge is "the law of the State in which the point source is located." *Id.* at 493. In further support of its holding, the Supreme Court reasoned that a contrary result would subject out-of-state pollution sources to multiple venues, exposing parties to an indeterminate number of common-law rules and statutes established by the different states along the interstate and coastal waterways. *Id.* at 496.

Citing its holding in *Int'l Paper,* the Supreme Court, in *Arkansas v. Oklahoma,* 503 U.S. 91 (1992), approved the EPA's grant of a permit to an Arkansas sewage treatment plant despite Oklahoma's contention that the permit violated Oklahoma's water quality regulations. The Supreme Court reaffirmed its holding in *Int'l Paper* and concluded that an affected state cannot apply its own laws to water pollution originating outside the affected state. *See id.,* at 100 n.6 ("The affected State may try to persuade the federal government or the source state to increase effluent requirements, but *ultimately possesses no statutory authority to compel that result, even when its waters are adversely affected by out-of-state pollution*") (emphasis in original).

The rationale of the Supreme Court's decision in *Int'l Paper* is even stronger in this case, where the discharge occurred outside the territory of *any* state,[14] and where Plaintiffs assert the applicability of numerous laws and regulations from multiple states to a source located well outside of the territorial waters of *any* state. *See* Master Compl. ¶¶ 727-737; AL Compl. ¶¶ 106, 294-298, 319-323, 325. The application of the state laws of each allegedly affected state would subject HESI to "an indeterminate number of common law rules and statutes established by

---

[13] 479 U.S. at 492 (citing *Illinois v. Milwaukee,* 406 U.S. 91, 107 (1972), a case involving interstate water pollution where the Supreme Court ruled that federal common law would apply to the exclusion of state law.

[14] It is undisputed that the source of any alleged pollution arose outside the territorial waters of the states of Louisiana, Alabama, or the states of any of the Local Government Plaintiffs. *See* Master Compl. ¶ 241; AL Compl. ¶ 38; *see also* LA Compl ¶ 296(t).

different states along [the Gulf of Mexico]." *Int'l Paper,* 479 U.S. at 496; *see also Sullivan v. Leaf River Forest Prods., Inc.,* 791 F. Supp. 627, 633 (S.D. Miss. 1991) (interpreting *Int'l Paper* to mean that "in cases which involve multiple state regulations applied to a single discharge site, federal law must prevail and preempts any state law claims").  Thus, under *Int'l Paper* and its progeny, Plaintiffs' state law claims must be dismissed.[15]

**2.      Pursuant to OCSLA, Federal Law Applies to any Claims Arising out of or in Connection with Operations Conducted on the Outer Continental Shelf.**

Plaintiffs allege that this case arises out of BP's operations at the Macondo prospect site in Mississippi Canyon Block 252, 48 miles off the coast of Louisiana and that BP's objective was "to search for and exploit hydrocarbon reservoirs" at that site.  Master Compl. ¶ 241; AL Compl. ¶ 38; *see also* LA Compl ¶ 296(t) (acknowledging that the Incident occurred on the OCS).  It is indisputable that the site is located on the outer continental shelf ("OCS"), far outside the territory of any state.[16]  OCSLA specifically grants jurisdiction to federal courts in cases "arising out of, or in connection with . . . any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf" to the U.S. District courts.  43 U.S.C. § 1349(b)(1).

OCSLA also contains a choice of law framework that applies to the exclusion of the forum state's choice-of-law rules.  *See Gulf Offshore v. Mobil Oil Corp.,* 453 U.S. 473, 482 n.8 (1981) ("OCSLA does supersede the normal choice of law rules that the forum would apply.").  Federal sovereignty is broad relating to OSCLA cases (and in this case mandates the application

---

[15] Thus, any claim by the Local Government Plaintiffs or the State of Alabama under its common law, the Alabama Extended Manufacturer's Liability Doctrine, or under AWPCA, AEMA, AAPCA, AHWMA, or the ASWDA fails. Likewise, any claim by the Local Government Plaintiffs or the State of Louisiana under its common law, Civil Code, LEQA or LOSPRA must also be dismissed.

[16] OCSLA, by reference to the Submerged Lands Act, 43 U.S.C. § 1301, defines the OCS generally as the submerged lands lying seaward beyond the three-mile belt of territory ceded to the states.  This definition and Plaintiffs' allegation that the Macondo prospect was located 48 miles off the Louisiana coast establish that the Incident occurred on the OCS.

of maritime law).  *See generally*, 43 U.S.C. § 1349(b)(1).   However, when necessary and only as a proxy for federal law, OCSLA's adjacent-state-law provision applies the substantive law of the adjacent state *in certain situations* on the outer continental shelf.  *See* 43 U.S.C. § 1333(a)(2)(A) (emphasis added).  Fifth Circuit case law establishes that the only basis on which state law could theoretically apply to Plaintiffs' claims is pursuant to OCSLA's "adjacent state law provision." *See Demette v. Falcon Drilling Co.,* 280 F.3d 492, 499 (5th Cir. 2002) ("Since the incident occurred on the [outer continental shelf] beyond the territorial waters of Louisiana, the only way state law could apply was by incorporation into federal law under OCSLA"), *overruled in part on other grounds by Grand Isle Shipyard, Inc. v. Seacor Marine, LLC,* 589 F.3d 778, 782-83 (5th Cir. 2009).

The straight forward language of OCSLA's choice of law provisions demonstrates that the adjacent-state-law provision is inapplicable to this case and that maritime law applies. OCSLA's choice of law rules are found in two meaningfully different provisions—Sections 1333(a)(1) and 1333(a)(2)(A).   Section 1333(a)(1) contains a very broad exertion of federal control and authority over virtually all activities occurring on the OCS involving the exploration, development, production, and transportation of resources.   This exertion of federal control is extended to "the subsoil and seabed of the outer Continental Shelf and to all artificial islands, and *all installations and other devices permanently or temporarily attached to the seabed*[.]"   43 U.S.C. § 1333(a)(1) (emphasis added).  The DEEPWATER HORIZON, a vessel, falls squarely within the language of a "device . . . temporarily attached to the seabed[.]" *Id*.   Thus, the vessel and its operations were subject to federal control and authority.

In contrast, OCSLA § 1333(a)(2)(A) separately applies the "laws of each adjacent state" on the OCS in a much narrower set of circumstances.   Section 1333(a)(2)(A) provides, in

relevant part, that the law of the adjacent state applies "to that portion of the subsoil and seabed of the outer Continental Shelf, and *artificial islands* and *fixed structures* erected thereon[.]" (emphasis added).  Conspicuously absent in § 1333(a)(2)(A) is the language contained in § 1333(a)(1) pertaining to "all installations and other devices permanently or temporarily attached to the seabed."  Consequently, § 1333(a)(2)(A) has a far narrower reach than § 1333(a)(1), applying adjacent state law only to "artificial islands" and "fixed structures"—not to vessels like the DEEPWATER HORIZON.[17]  As the DEEPWATER HORIZON was neither an artificial island nor a fixed structure, but rather a vessel,[18] § 1333(a)(2)(A) does not apply "adjacent-state-law" in this case.[19]  Accordingly, the "adjacent state law" provision of OCSLA does not apply because the DEEPWATER HORIZON was neither an "artificial island" nor a "fixed structure"

---

[17] It is not surprising that §§ 1333(a)(1) and 1333(a)(2)(A) differ in scope.  The broad exertion of federal authority under § 1333(a)(1) necessarily encompasses all mineral exploration and production activities on the OCS, whether performed by "fixed platforms" or "vessels," in order to maximize federal control over vital national resources. However, maritime law has historically governed claims arising on or in connection with a vessel, *see Sisson v. Ruby*, 497 U.S. 358 (1990), and so § 1333(a)(2)(A)'s application of adjacent state law is only needed to fill the gap where claims arise on or in connection with a non-vessel—*i.e.*, an artificial island or fixed structure—such as a fixed platform.  Consequently, claims arising out of mineral exploration on the OCS may broadly arise under OCSLA, but such claims may be governed either by maritime law (as in this case) or, to the extent they fall within §1333(a)(2)(A)'s narrower "adjacent state law" provision (applicable to non-vessels), state law as a proxy for federal law.

[18] *See supra* fn. 11; *see also infra* fn. 21.

[19]  If section 1333(a)(2)(A) were to apply in this case, Louisiana law would be adopted as adjacent state law.  In *Snyder Oil Corp. v. Samedan Oil Corp.*, the court considered four kinds of evidence to determine which state was considered "adjacent" to an OCSLA situs:  (1) geographic proximity; (2) which coast federal agencies consider the subject platform to be "off of;" (3) prior court determinations; and (4) projected boundaries.  208 F.3d 521, 524 (5th Cir. 2000).  Louisiana is closer to the situs of the DEEPWATER HORIZON incident than any other state, and the Minerals Management Service (MMS) (n/k/a Bureau of Ocean Energy Management, Regulation, and Enforcement (BOEMRE)) has described the DEEPWATER HORIZON incident as occurring "approximately 41 miles offshore Louisiana" on its official website linking a webpage describing the DEEPWATER HORIZON incident, http://www.restorethegulf.gov/release/2010/04/21/bp-offers-full-support-transocean-after-drilling-rig-fire, a copy of which is attached hereto as Exhibit C.  Similarly, in a notice entitled "*Information to Lessees and Operators on Federal Oil and Gas Leases on the Outer Continental Shelf, Gulf Mexico Region*," dated April 28, 2010, MMS notified lessees and operators in the Gulf of Mexico about its intention to initiate controlled burns to abate the oil spill and described the oil spill as being "located offshore Louisiana."  *See* http://www.gomr.boemre.gov/homepg/regulate/regs/itls/100428.pdf, a copy of which is attached hereto as Exhibit D.  In addition, federal district courts have noted that other locations in the Mississippi Canyon are adjacent to the State of Louisiana and have applied Louisiana law as surrogate federal law.  *See, e.g., Ronquille v. MMR Offshore Servs., Inc.*, 353 F. Supp. 2d 680, 682 n.4 (E.D. La. 2004); *Dennis v. Bud's Boat Rental, Inc.*, 987 F. Supp. 948, 949-954 (E.D. La. 1997).  Therefore, even if OCSLA were to apply adjacent state law in this case, it likely would apply Louisiana law, and not the laws of any of the other States.

14

erected on the subsoil or seabed of the OCS.  Further, the Fifth Circuit has established that if maritime law applies to Plaintiffs' claims on its own force (and it does, as demonstrated *infra*), OCSLA's adjacent state law provision does not apply.  *See Tennessee Gas Pipeline v. Houston Cas. Ins. Co.,* 87 F.3d 150, 154 (5th Cir. 1996) (noting that "where OCSLA and general maritime law both could apply, the case is to be governed by maritime law").

### 3.    *Plaintiffs' Claims, if Any, Arise Under this Court's Admiralty Jurisdiction.*

A central question in this litigation is the issue of whether Plaintiffs' claims, if any, arise under admiralty jurisdiction.  Plaintiffs' claims cannot arise under both state law and admiralty law, as admiralty jurisdiction ousts state law from its own application.[20]  *See E. River S.S. Corp. v. Transamerica Delaval*, 476 U.S. 858, 864 (1986) ("With admiralty jurisdiction comes the application of substantive admiralty law").  Local Government Plaintiffs expressly designate the Master Complaint "as an admiralty or maritime case as provided in Rule 9(h)(1)" of the Federal Rules of Civil Procedure.  Master Compl. ¶ 222.  Further, the States of Alabama and Louisiana assert the applicability of admiralty jurisdiction as well.  AL Compl. ¶ 33; LA Compl. ¶ 35.  Moreover, the Local Government Plaintiffs and the State of Alabama both cite, as a jurisdictional basis for their claims, the Admiralty Extension Act, 46 U.S.C. § 30101.  Master Compl. ¶ 225; AL Compl. ¶ 33.  The Admiralty Extension Act extends federal admiralty jurisdiction to cases involving damages caused by a vessel on navigable waters, "even though the injury or damage is done or consummated on land."  46 U.S.C. § 30101(a).  Nevertheless, Plaintiffs also assert state law claims against HESI, without invoking an exception to the general rule that "with admiralty jurisdiction comes the application of substantive admiralty law" and thus offer no rationale for the application of state law to their claims.

---

[20] If maritime law applies to Plaintiffs' claims (and it does), Plaintiffs lack state law claims.  Moreover, Plaintiffs' maritime claims would be preempted or displaced by OPA.

The Supreme Court's decision in *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.* supplies the proper analytical framework to make the determination as to the applicability of admiralty law and the exclusion of state law.   *See* 513 U.S. 527 (1995).   As shown *infra*, applying *Grubart*, Plaintiffs' claims clearly arise under admiralty jurisdiction.   Thus, Plaintiffs' claims are governed by maritime law, not state law.

In *Grubart*, the Supreme Court reiterated the current test for admiralty tort jurisdiction, stating that "a party seeking to invoke federal admiralty jurisdiction . . . over a tort claim must satisfy conditions of both location and connection with maritime activity."   *Id.* at 534.   To satisfy the location test, the Court must determine only "whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water."   *Id.*   Plaintiffs concede that the DEEPWATER HORIZON was a "vessel" on navigable water.[21]   *See, e.g.,*

---

[21]   Plaintiffs' concession that the DEEPWATER HORIZON was a vessel makes sense.   *See* 1 U.S.C. § 3 (defining "vessel" as "every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water"); *see also Stewart v. Dutra*, 543 U.S. 481, 490 (2005) (standardizing the meaning of the word "vessel" as that supplied in 1 U.S.C. § 3 and noting that "[s]ection 3 merely codified the meaning that the term "vessel" had acquired in general maritime law").   Plaintiffs' description of the DEEPWATER HORIZON indicates that it was mobile and in navigable water.   *See e.g.,*   Master Compl. ¶¶ 33, 34 (acknowledging that the DEEPWATER HORIZON was "an ultra-deepwater dynamic positioned semisubmersible oil rig" operated by Transocean and BP in the Gulf of Mexico).   Further, courts have consistently held that mobile, semi-submersible rigs, like the DEEPWATER HORIZON, are vessels.   *See, e.g., Manuel v. P.A.W. Drilling & Well Serv., Inc.*, 135 F.3d 344, 351-52 (5th Cir. 1998) (holding that drilling craft was a vessel because it was a "highly mobile unit"); *Domingue v. Ocean Drilling and Exploration Co.*, 923 F.2d 393, 394 n.1 (5th Cir. 1991) ("We have consistently applied general maritime law [in Jones Act cases] . . . to accidents aboard special-purpose watercraft such as submersible, semi-submersible, jack-up, and other similar rigs."); *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1214 n.5 (5th Cir. 1986) (finding semi-submersible drilling rig to be "indisputably a vessel"); *Colomb v. Texaco, Inc.*, 736 F.2d 218, 221 (5th Cir. 1984) (finding submersible drilling barge to be a "vessel" because it was "highly mobile" due to routine relocation); *Case v. Omega Natchiq, Inc.*, No. H-08-0835, 2008 U.S. Dist. LEXIS 52931, at *16, (S.D. Tex. July 10, 2008) ("In contrast to production platforms, semisubmersible drilling rigs are generally considered vessels under the Jones Act.").

The determination that the DEEPWATER HORIZON was a "vessel in navigation" is further supported by facts alleged in the public record.   For example, certain Transocean employees and/or representatives of deceased persons who were aboard the DEEPWATER HORIZON on April 20, 2010, have filed Jones Act suits asserting damages for injuries sustained in their capacity as "seamen" under the Jones Act.   In doing so, these Plaintiffs have asserted admiralty jurisdiction and the application of maritime law, claiming that their injuries or damages were sustained as members of the crew on board DEEPWATER HORIZON, "a vessel within the meaning of the Jones Act, 46 U.S.C. §§ 30104, *et seq.*"   *See, e.g.,* Plfs. Stephen and Sara Stones' Pet. in Interv. at ¶¶ 9-10, 12, *Kleppinger v. Transocean Deepwater Offshore Drilling, Inc.*, Case No. 4:10-cv-01851 (S.D. Tex.), a copy is attached hereto as Exhibit E.

16

Master Compl. ¶¶ 227-28, 232, 234, 251, 255; AL Compl. ¶¶ 43, 45; LA Compl. ¶¶ 69, 71, 84, 272.

The *Grubart* Court explained that the "connection with maritime activity" test raises two "*Sisson* inquiries."[22]  Under the first *Sisson* inquiry, the Court must "assess the general features of the type of incident involved . . . to determine whether the incident has a potentially disruptive impact on maritime commerce."  513 U.S. at 534 (quotations and citations omitted).  The Court further stressed that this inquiry focuses "*not on the specific facts* at hand but on whether the '*general features*' of the incident were 'likely to disrupt commercial activity.'"  *Id.* at 538 (citations omitted) (emphasis added).  Applying these principles, the *Grubart* Court found that the general features of that case—namely "damage by a vessel in navigable water to an underwater structure"—plainly constituted "the kind of incident that has a potentially disruptive impact on maritime commerce."  *Id.*  (citations omitted).

Plaintiffs' allegations likewise describe maritime activity.  Plaintiffs allege, among other things, that defendants were negligent with respect to their operation of and activities aboard the vessel, the DEEPWATER HORIZON,[23] and seek largely economic damages resulting from alleged harm to the Gulf of Mexico,[24] a body of water "teeming with maritime activity."

---

Additionally, Transocean, the owner of the DEEPWATER HORIZON, and related entities have filed a Petition, now pending before this Court, under the Limitation of Liability Act, 46 U.S.C. §§ 30501 *et seq.*, seeking to have their liability limited to an amount equal to the value of the "vessel" and pending freight.  *See* Case No. 10-2771 [Doc. No. 1].  These Transocean entities have filed the Petition in their capacities as the "owner of the vessel."  *See* 46 U.S.C. §§ 30505(a), 30506(a)-(b); *see also* 46 U.S.C. § 30511(a) ("The *owner of a vessel* may bring a civil action in a district court of the United States for limitation of liability under this chapter." (emphasis added)).

[22] "*Sisson* inquiries" refer to inquiries established by the Supreme Court in its decision in *Sisson v. Ruby*, 497 U.S. 358 (1990), which also addressed the issue of federal admiralty jurisdiction.  The Supreme Court advanced this analysis further in *Grubart*, but retained the *Sisson* inquiries as part of the admiralty jurisdiction analysis.  *See Grubart*, 513 U.S. at 533-34.

[23] *See, e.g.*, Master Compl. ¶¶ 560-61; AL Compl. ¶¶ 67, 106, 108; LA Compl. ¶¶ 42, 176, 273, 275.

[24] *See, e.g.,* Master Compl. ¶¶ 166, 170, 448; AL Compl. ¶¶ 1-3, 293(j), 332(b), 362-63; LA Compl. ¶¶ 4-5, 131, 263, 303, 311, 372.

*Broughton Offshore Drilling, Inc. v. S. Cent. Mach., Inc.*, 911 F.2d 1050, 1052 n.1 (5th Cir. 1990).  Accordingly, this *Sisson* prong of the maritime nexus inquiry is satisfied.

Under the second *Sisson* inquiry, the Court must determine "whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Grubart*, 513 U.S. at 539.  Thus, the appropriate analysis focuses on the general nature of the incident.  In *Grubart*, the Supreme Court described the general character of the activity at issue as "repair or maintenance work on a navigable waterway performed from a vessel." *Id.* at 540.  The Court further noted that "[n]avigation of boats in navigable waters clearly falls within the substantial [maritime] relationship[.]" *Id.*  Likewise, the general character of the Incident could be described as *oil and gas well drilling from a vessel on a navigable waterway*.  Clearly, the general character of the Incident shows a substantial relationship to general maritime activity.

Moreover, even if some defendants were engaged in traditionally maritime activities and some were not, the "substantial relationship to maritime activity" test is satisfied "when at least one alleged tortfeasor was engag[ed] in activity substantially related to traditional maritime activity and such activity is claimed to have been a proximate cause of the incident." *Grubart*, 513 U.S. at 541.  Plaintiffs allege that certain defendants were engaged in traditional maritime activity aboard the DEEPWATER HORIZON—operating a vessel in navigable waters—and such activity is claimed to have been a proximate cause of the Incident.  *See, e.g.,* Master Compl. ¶ 582(a)-(b), (f); AL Compl. 132(a)-(b), (f) 332(a)-(b), (f); LA Compl. ¶¶ 1, 109-115, 132(a)-(b), (f).  Based upon the preceding analysis, admiralty jurisdiction and substantive maritime law govern Plaintiffs' claims—to the exclusion of any individual state's substantive or statutory law.

18

Furthermore, the *Grubart* admiralty jurisdiction is unaffected by Plaintiffs' status as land-based claimants or by the allegations that some or all of their damages were incurred on land. First, Plaintiffs' asserted damages—predicated on allegations of harm to the Gulf of Mexico and its coastline—are themselves intensely maritime.  Second, even assuming Plaintiffs demonstrate direct injury to property within the territory of the states, admiralty jurisdiction would still apply maritime law in lieu of substantive state law by virtue of the Admiralty Extension Act, 46 U.S.C. § 30101.[25]  As the Supreme Court has explained, "[t]he purpose of the [Admiralty Extension Act] was to end concern over the sometimes confusing line between land and water, by investing admiralty with jurisdiction over 'all cases' where the injury was caused by a ship or other vessel on navigable water, even if such injury occurred on land."  *Grubart*, 513 U.S. at 532.

Admiralty jurisdiction clearly attaches to any claims Plaintiffs may have arising out of the Incident.  Such claims are fundamentally maritime in nature and, therefore, are governed by maritime law, not state law.

### 4.      *Plaintiffs' Alleged Damages Demonstrate that OPA is Their Exclusive Remedy.*

Because Plaintiffs' claims are governed by maritime law, *see supra*, Plaintiffs' claims are displaced by OPA as they seek oil spill-related damages of the type specifically recoverable under the statute.  OPA is the exclusive federal remedy for the types of damages alleged by Plaintiffs.  *See S. Port Marine, LLC v. Gulf Oil Ltd. P'ship*, 234 F.3d 58, 65-66 (1st Cir. 2000) (citations omitted) (noting that Congress has established a "comprehensive" scheme that outlines with particularity the types of damages recoverable under OPA and that this is a "strong indication that Congress intended the OPA to be the sole federal law applicable in this area of

---

[25] The Admiralty Extension Act, originally codified at 46 U.S.C. § 740, is now recodified at 46 U.S.C. § 30101.

maritime pollution").  Plaintiffs cannot circumvent OPA by alleging common law claims arising under this Court's admiralty jurisdiction.

OPA, enacted by Congress in the wake of the *Exxon Valdez* oil spill, was intended to provide a prompt, federally-coordinated response to oil spills in the navigable waters of the United States and to compensate innocent victims.  *Gatlin Oil Co. v. United States*, 169 F.3d 207, 209 (4th Cir. 1999).  OPA provides a comprehensive statutory framework for parties injured by oil spills in navigable waters to make claims to a designated responsible party for recovery of costs and damages.  *See* 33 U.S.C. §§ 2701, *et seq.*  OPA "represents Congress's attempt to provide a  comprehensive framework in the area of marine oil pollution."  *Tanguis v. M/V Westchester*, 153 F. Supp. 2d 859, 867 (E.D. La. 2001) (citations omitted).  Its purpose is "to promote settlement and avoid litigation."  *Johnson v. Colonial Pipeline Co.*, 830 F. Supp. 309, 310 (E.D. Va. 1993).

Regardless of how artfully pled, Plaintiffs' claims, including their purported state law claims, seek relief for precisely the types of damages Congress intended to be recovered under OPA exclusively.  *See S. Port Marine*, 234 F.3d at 65-66; *see also In re Jahre Spray II K/S*, 1996 U.S. Dist. LEXIS 11594, at * 11 (D. N.J. Aug. 5, 1996) (noting that in the wake of the *Exxon Valdez* incident, OPA was developed as a comprehensive statutory scheme that would deal with all issues surrounding an oil spill, including liability levels for the respective responsible parties."); *Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atl. Corp.*, 924 F. Supp. 1436, 1447 (E.D. Va. 1996) ("OPA clearly preempts maritime law as to recovery of cleanup expenses and the cost of compensating injured persons.").

Pursuant to OPA, injured parties may recover a broad range of damages from a responsible party, including:

Natural resources

> Damages for injury to, destruction of, loss of, or loss of use of, natural resources, including the reasonable costs of assessing the damage, which shall be recoverable by a United States trustee, a State trustee, an Indian tribe trustee, or a foreign trustee.

Real or personal property

> Damages for injury to, or economic losses resulting from destruction of, real or personal property, which shall be recoverable by a claimant who owns or leases that property.

Subsistence use

> Damages for loss of subsistence use of natural resources, which shall be recoverable by any claimant who so uses natural resources which have been injured, destroyed, or lost, without regard to the ownership or management of the resources.

Revenues

> Damages equal to the net loss of taxes, royalties, rents, fees, or net profit shares due to the injury, destruction, or loss of real property, personal property, or natural resources, which shall be recoverable by the Government of the United States, a State, or a political subdivision thereof.

Profits and earning capacity

> Damages equal to the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources, which shall be recoverable by any claimant.

Public services

> Damages for net costs of providing increased or additional public services during or after removal activities, including protection from fire, safety, or health hazards, caused by a discharge of oil, which shall be recoverable by a State, or a political subdivision of a State.

33 U.S.C. § 2702(b)(2).

Because OPA is the exclusive federal remedy for recovery of oil spill-related damages, the statute preempts or displaces non-OPA-based claims for recovery of those damages. *See S. Port Marine*, 234 F.3d at 65 ("Congress intended the OPA to be the exclusive federal law

21

governing oil spills."); *Gabarick v. Laurin Mar. (Am.) Inc.*, 623 F. Supp. 2d 741, 750-51 (E.D. La. 2009) ("This Court finds that an evaluation of the *Oswego* factors indicates that OPA preempts general maritime law claims that are recoverable under OPA.").   Regarding the preemptive effect of OPA, it has been held that "all [general maritime law] claims that are recoverable under OPA, specifically those covered damages enumerated in 33 U.S.C. § 2702, are preempted by OPA."  *Gabarick*, 623 F. Supp. 2d at 750-51.  It is important to note that OPA specifically provides for recovery of such damages by state and other governmental claimants.

Consequently, Plaintiffs' attempt to recover oil spill related damages covered by OPA under any maritime law must fail. Likewise, any claim by the Local Government Plaintiffs and the State of Louisiana for recovery of their alleged OPA damages under the LOSPRA also fails. Local Government Plaintiffs contend that they "have suffered damage, destruction, or diminution in value of property, loss of tax revenue, income and/or use, and/or costs of response, removal, clean-up, restoration and/or remediation and/or other damages, losses, and/or costs as a result of the oil spill[.]"  Master Compl. ¶ 178.

Similarly, the State of Alabama alleges environmental damages in the form of "harm to, and contamination of, the State's waters, property, estuaries, seabeds, animals, plants, beaches, shorelines, coastlines, islands, marshlands, and other natural and economic damages" in the form of:

> lost State revenues from taxes, royalties, rents, fees, licenses, or net profit shares; . . . costs expended by the State to assess, monitor, abate, remediate, remove, and/or clean contaminated State waters, land, and property; . . . costs expended by the State for providing increased or additional public services to address the oil disaster and protect human health and the environment; . . . damages associated with the long-term stigma of the oil disaster, including the loss of use of State property, taxes, royalties, license fees, revenues, and other income; . . . lost revenue and human-use opportunities associated with various natural resources in the Gulf region, including but not limited to fishing, swimming, beach-going, and viewing of birds and wildlife; and . . . costs expended by the State for

22

unemployment compensation claims for workers compensation claims related to Spill[.]

AL Compl. ¶¶ 82, 92(d)-(i).

The State of Louisiana asserts comparable damages.  Specifically, it seeks to recover "property damages, response costs, increased costs of public services, revenue and tax loss, and injuries to the Louisiana brand and similar impacts to the State's earning capacity[.]"  LA Compl. ¶ 142.

The specific damages Plaintiffs seek fall within the categories of damages encompassed by OPA § 2702(b) precisely.  Thus, because "Congress intended OPA to be the exclusive federal law governing oil spills," *S. Port Marine*, 234 F.3d at 65-66, Plaintiffs' non-OPA claims for recovery of oil-spill related damages fail as a matter of law.  Dismissal  is proper.

### 5. *Plaintiffs' Failure to Present Their Claims Through the OPA-Mandated Claims Process Divests this Court of Subject Matter Jurisdiction.*

Despite the fact that OPA provides the exclusive remedy for Plaintiffs' alleged oil spill-related damages, some of the Local Government Plaintiffs failed to follow the Congressionally-mandated claims presentment process in OPA.  *See* Master Compl. ¶ 668 (alleging that "[Local Government] Plaintiffs have satisfied, or will have satisfied, all of the administrative requirements of 33 U.S.C. § 2713(a) and (b)").  Accordingly, to the extent any Plaintiff in the Master Complaint has failed to provide the requisite notice under OPA, this Court's subject matter jurisdiction has not been properly invoked, warranting dismissal.

Parties claiming to have suffered damages from oil releases are required to first present their claims to the responsible party before filing a lawsuit claiming damages: "[A]ll claims for removal costs or damages *shall be presented first to the responsible party* or guarantor designated under [§] 2714(a) of this title."  33 U.S.C. § 2713(a) (emphasis added).  Claimants may only initiate suit after: (1) a claim is presented in accordance with § 2713(a) and (2) the

23

responsible party denies all liability for the claim or the claim is not settled by payment within ninety days after the date upon which the claim was presented.  33 U.S.C. § 2713(c).  Pre-suit presentment is mandatory.

> Courts have strictly construed the statutory language:

> The clear text of § 2713 creates a *mandatory condition precedent* barring all OPA claims unless and until a claimant has presented [its] claims in compliance with § 2713(a) and either: (1) all responsible parties deny all liability; or (2) the claim is not settled by payment within 90 days after (A) the claim was presented, or (B) advertising was begun under [§] 2714(b) of the Act, whichever is later.

*Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.*, 51 F.3d 235, 240 (11th Cir. 1995) (emphasis added); *see also Gabarick*, 623 F. Supp. 2d at 750-51 (dismissing for lack of subject matter jurisdiction all non-OPA claims seeking damages of the type covered by OPA for failure to present such claims to the designated responsible party); *Marathon Pipe Line Co. v. LaRoche Indus. Inc.*, 944 F. Supp. 476, 477 (E.D. La. 1996) ("The Court agrees that § 2713's presentation requirement is jurisdictional and mandates dismissal when that provision is applicable and not complied with by the claimant."); S. Rep. No. 101-94 (1989), reprinted in 1990 U.S.C.C.A.N. 722, 732 (hereinafter "Senate Report") (noting that "the bill requires claims to be presented in the first instance to the discharger, where known.").

In the Master Complaint, Local Government Plaintiffs allege that they "have satisfied, or will have satisfied, all of the administrative requirements of 33 U.S.C. §§ 2713(a) and (b), as to each and all defendants[.]"  Master Compl. ¶ 668.[26]  Yet, as set forth above, claimants are required to meet the OPA's presentment requirements *before* filing suit.  As a result, to the extent any Plaintiff has failed to present a claim under the OPA's mandatory prerequisites, this Court lacks jurisdiction to hear any such claims, and such claims should be dismissed.

---

[26] The States of Louisiana and Alabama do not assert an OPA claim against HESI; therefore the individual States' compliance with OPA's presentment requirement is irrelevant to HESI's Motion to Dismiss.

**6.      *Plaintiffs' Sole Remedy for Their Alleged Damages, if any, Lies Against a "Responsible Party" Designated under OPA, not against HESI.***

The failure of certain Plaintiffs' to comply with the OPA claims presentment process warrants dismissal of their claims in their entirety.  However, even if Plaintiffs were to satisfy OPA's claims presentment process, their sole remedy, if any, lies against the designated responsible party or parties, not against HESI.[27]  Under OPA, the responsible party for the vessel or facility from which an oil release emanates is liable for all associated damages and removal costs:

> Notwithstanding any other provision or rule of law, and subject to the provisions of this Act, each responsible party for a vessel or facility from which oil is discharged  .  .  .  is liable for the removal costs and damages specified in subsection (b) that result from such incident.

33 U.S.C. § 2702(a).  In the case of an oil release originating from an offshore vessel or facility, OPA defines the responsible party, respectively, as "any person owning, operating, or demise chartering the vessel" or the "lessee or permittee of the area in which the facility is located."  33 U.S.C. § 2701(32).  The Coast Guard designates the responsible party, who is held strictly liable for all recovery costs and damages related to the spill.  *See* 33 C.F.R. § 136.305; *see also Gabarick*, 623 F. Supp. 2d at 744 ("When an oil spill occurs on U.S. navigable waters, the Coast Guard determines the source of the discharge and notifies a responsible party for that source."); Senate Report, at 723 (noting that "wherever possible, the burden is to be on the discharger to first bear the costs of removal and provide compensation for any damages.").

Recourse against the responsible party is the sole remedy for those injured by an oil release.  Recovery, if any, against non-responsible third parties is limited to an action for

---

[27] Local Government Plaintiffs and the State of Alabama acknowledge that only BP and Transocean have been named "responsible parties" for OPA purposes by the U.S. Coast Guard; and none of the Plaintiffs contend that HESI has been so named.  Master Compl. ¶ 661; AL Compl. ¶¶ 207-08; *see also* LA Compl. ¶ 159 (alleging that "the BP, Anadarko, MOEX and Transocean Defendants are responsible parties within the meaning of OPA").

contribution by the responsible party or parties, <u>and is not permitted through direct claims against non-responsible third parties by those alleging injury resulting from an oil release</u>. *See* 33 U.S.C. § 2709.  As the Court in *Gabarick* explained:

> In light of Congress's intent to minimize piecemeal lawsuits and the mandatory language of OPA discussed earlier, it appears that Claimants should pursue claims covered under OPA only against the responsible party and in accordance with the procedures established by OPA.  Then, the responsible party can take action to recover against third parties.

623 F. Supp. 2d at 750.  Plaintiffs, therefore, can only state viable claims against the designated responsible party or parties, and only in compliance with OPA's mandatory prerequisites.  Here, Plaintiffs' claims against HESI are not cognizable because HESI is not a designated responsible party.  Accordingly, as a matter of law, HESI is not liable to Plaintiffs and dismissal is proper.

**B.  EVEN IF THIS COURT FINDS THAT PLAINTIFFS' MARITIME LAW CLAIMS ARE NOT DISPLACED BY OPA, PLAINTIFFS FAIL TO STATE MARITIME LAW CLAIMS AGAINST HESI.**

### 1.  *Plaintiffs' Claims are Barred by the Economic Loss Rule.*

Assuming, *arguendo,* that Plaintiffs' claims against HESI are not otherwise barred by OPA (*see supra* IV.A), such claims would nonetheless fail under the economic loss rule to the extent that Plaintiffs seek recovery for economic losses absent physical injury to a proprietary interest.  *See Robins Dry Dock & Repair Co. v. Flint,* 275 U.S. 303, 309 (1927).  "It is unmistakable that the law . . . does not allow recovery of purely economic claims absent physical injury to a proprietary interest in a maritime negligence suit." *In re Taira Lynn Marine Ltd. No. 5, LLC*, 444 F.3d 371, 377 (5th Cir. 2006); *see also Reserve Mooring, Inc. v. Am. Commercial Barge Line, LLC,* 251 F.3d 1069, 1072 (5th Cir. 2001) ("[P]hysical injury to a proprietary interest is a prerequisite to recovery of economic damages in cases of unintentional maritime tort."); *State of Louisiana v. M/V Testbank*, 752 F.2d 1019, 1022 (5th Cir. 1985); *Kingston Shipping Co. v. Roberts,* 667 F.2d 34 (11th Cir. 1983).  The rule's purpose is to prevent limitless

26

liability for negligence and the filing of lawsuits of a highly speculative nature.  *Akron Corp. v. M/T Cantigny*, 706 F.2d 151, 153 (5th Cir. 1983).

In the Master Complaint, Local Government Plaintiffs allege damages in the form of "damage, destruction, or diminution in value of property, loss of tax revenue, income and/or use, and/or costs of response, removal, clean-up, restoration and/or remediation and/or other damages, losses, and/or costs as a result of the oil spill[.]"  Master Compl. ¶ 178.  However, other language in the Master Complaint clarifies that only some of the Local Government Plaintiffs allege a physical injury to a proprietary interest.  *See, e.g.,* Master Compl. ¶ 173 ("In addition, certain local government entities own real and/or personal property that was lost, damaged, *or* diminished in value as a result of the Spill.")  (emphasis added).  Accordingly, at most, only some of the Local Government Plaintiffs in this action allege that their real or personal property incurred physical damage.  Further, the States of Louisiana and Alabama assert numerous damages unrelated to any alleged physical harm to a proprietary interest.  *See* AL Compl. ¶ 92 (alleging damages in the form of lost revenues, taxes, rents, fees, licenses and profit shares; increased or additional public services; costs associated with the long-term stigma of the oil spill, and costs of unemployment compensation claims); LA Compl. ¶ 159 (alleging damages in the form of loss of revenues, lost profits and earning capacity and damages for net costs of providing increased or additional public services).  In sum, the majority of Plaintiffs' alleged damages are purely economic and unrelated to any alleged physical loss or damage.

Accordingly, Plaintiffs' maritime law claims should be dismissed to the extent that they seek these purely economic damages unrelated to any alleged physical injury to a proprietary interest of Plaintiffs.

27

### 2. *The State of Louisiana's Maritime Law Nuisance Claims Must be Dismissed.*

Among the various claims asserted against HESI, the State of Louisiana also asserts a claim for public and private nuisance pursuant to federal maritime law. LA Compl. ¶¶ 249-258. However, this claim should also be dismissed because, as this Court has acknowledged, maritime law does not recognize such a cause of action. *See Sekco Energy v. M/V Margaret Chouest,* 820 F. Supp. 1008, 1014 (E.D. La. 1993) (Livaudais, Jr., J.) (declining to create such a cause of action after "search[ing] in vain for case law which recognizes a federal cause of action for public nuisance"). Moreover, the Supreme Court has concluded that "the federal common law of nuisance in the area of water pollution is entirely pre-empted by the more comprehensive scope of the [Federal Water Pollution Control Act ("Clean Water Act"), 33 U.S.C. §§ 1251-1376]." *Nat'l Sea Clammers Ass'n v. City of New York,* 453 U.S. 1, 22 (1981). The First Circuit subsequently held that the *Sea Clammers* decision applies to "all federal *judge-made* law of nuisance whether maritime or general federal law"). *Conner v. Aerovox, Inc.,* 730 F.2d 835, 842 (1st Cir. 1984) (emphasis in original). Accordingly, the State of Louisiana's attempted claim for public nuisance must be dismissed, as the cause of action does not exist under federal maritime law.

### C. EVEN IF THIS COURT DETERMINES THAT STATE LAW APPLIES TO PLAINTIFFS' CLAIMS, SEVERAL OF THESE CLAIMS MUST BE DISMISSED.

### 1. *Plaintiffs Fail to State a Claim for Fraudulent Concealment.*

As HESI has established, the only avenue by which any state's law could apply is by operation of OCSLA's adjacent-state-law provision. *See supra* IV.A.3. Further, even if that provision were applicable, it would call for Louisiana law to apply. *See supra* n. 19.

Even in the unlikely event Louisiana law is determined applicable, Plaintiffs' fraudulent concealment claims against HESI must be dismissed because Plaintiffs have not alleged that

HESI owed Plaintiffs the requisite duty to disclose.  Under Louisiana law, in order to properly allege a fraudulent concealment claim, Plaintiffs must provide sufficient factual allegations showing:  "(1) the information that was withheld, (2) the general time period during which the fraudulent conduct occurred, (3) *the relationship giving rise to the duty to speak*, and (4) what the person or entity engaged in the fraudulent conduct gained by withholding the information."  *Chrysler Credit Corp. v. Whitney Nat'l Bank,* 824 F. Supp. 587, 598 (E.D. La. 1993) (emphasis added).  Louisiana law requires a relationship to support a claim for fraudulent concealment.  *See In re Ford Motor Co. Vehicle Paint Litig.,* 1997 U.S. Dist. LEXIS 13124 at *9-10 (E.D. La.) (concluding that a duty to disclose arose where the defendant and plaintiff had a buyer-seller relationship).

In support of their state law fraudulent concealment claims against HESI, Plaintiffs allege that HESI "misrepresented and concealed the stability of the cement used at the Macondo well, despite having performed three tests before the [blowout], all of which demonstrated that the foam cement used at Macondo was unstable" and that "[t]he instability of the cement used at the Macondo well and the results of the testing performed before the Spill were material facts that Halliburton had a duty to disclose."   Master Compl. ¶¶ 701-02; AL Compl. ¶¶ 273-274; LA Compl. ¶ 376.  Importantly, Plaintiffs do not indicate to whom HESI owed this alleged duty to disclose; nor do they allege any relationship between themselves and HESI that would give rise to such a duty.   Accordingly, Plaintiffs' fraudulent concealment claim against HESI must be dismissed because Plaintiffs have failed to state such a claim as required under Louisiana substantive law.

**2.    Local Government Plaintiffs and the State of Alabama Fail to State a Claim for Nuisance.**

The Local Government Plaintiffs and the State of Alabama also assert state law nuisance claims against HESI.  *See* Master Compl. ¶¶ 141-153 (asserting a general claim for nuisance); AL Compl. ¶¶ 220-232 (asserting a claim under Ala Code §6-5-120).  As discussed *supra*, should this Court find that general maritime law does not apply and that state law applies, Louisiana substantive law would apply pursuant to OCSLA's adjacent state law provision.  *See supra* IV.A.3; *see also supra* n. 15

However, the allegations in the Alabama Complaint and the Master Complaint are inadequate to state a nuisance claim under Louisiana law.  Article 667 of the Louisiana Civil Code, the provision of the Civil Code applicable to private nuisance claims, provides that "[a]lthough a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his *neighbor* of the liberty of enjoying his own, or which may be the cause of any damage to him." (Emphasis added).  Plaintiffs' allegations fail to state a claim of nuisance under this statute because they do not allege that HESI was a "neighbor" as that term has been interpreted by Louisiana courts.  For example, in *Barasich v. Columbia Gulf Transmission Co.,* several residents of Louisiana parishes sought to hold oil and gas producing companies liable for certain activities that the plaintiffs alleged contributed to Hurricane Katrina's destructive impact. 467 F. Supp. 2d 676, 678 (E.D. La. 2006) (Vance, J.).  This Court determined that "the definition of 'neighbor' under Article 667 does not contemplate the relationship plaintiffs assert."  *Id.* at 690.  It held that "[p]laintiffs' Article 667 claim fail[ed] because they d[id] not demonstrate that the 'neighbor' referred to in Article 667 could be a party whose property is physically remote from that of defendants."  *Id.*; *see also Butler v. Baber,* 529

30

So. 2d 374, 377, 381 (La. 1988) (noting that Article 667 creates "an obligation of vicinage" and that "[f]ault under 667 is the damage done to a neighboring property").

Similarly, here, there is no allegation of physical proximity between Plaintiffs and HESI such that they could be termed "neighbors" in any sense of the word.  Accordingly, Plaintiffs fail to state a claim for nuisance under Louisiana Civil Code Article 667, and their nuisance claims must, therefore, be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### 3.    Louisiana Law Bars Plaintiffs' Claims to the Extent they Seek Economic Damages Absent Physical Injury to a Proprietary Interest.

Moreover, even if this Court concludes that Louisiana law governs this case, the economic loss rule, just as with any federal maritime claim (*see supra* V.B.1.), would nonetheless require dismissal of Plaintiffs' economic damages claims to the extent that they are not based on alleged physical harm to a proprietary interest.  In *La. Crawfish Producers Ass'n v. Amerada Hess Corp.,* a Louisiana appellate court affirmed the dismissal of the *state law* claims of two crawfishermen who alleged that several defendants engaged in oil and gas exploration activities damaged a fishing area "based primarily on [the crawfishermen's] inability to demonstrate a proprietary interest in either the [fishing area] or the wild crawfish that they sought to catch."  935 So. 2d 380, 382 (La. Ct. App. 2006); *see also TS&C Invs. L.L.C. v. Beusa Energy, Inc.,* 637 F. Supp. 2d 370, 376, 381 (W.D. La. 2009) (concluding that *Crawfish Producers* "signal[ed] that the economic loss rule – heretofore applied on in the *maritime* context – was being brought into and applied in the *non-maritime* context" and "conclud[ing that] plaintiffs cannot recover on their state law claims for purely economic damages"); *see also Barasich v. Shell Pipeline Co., LP,* 2006 U.S. Dist. LEXIS 84389 *25-26 (E.D. La. Nov. 20, 2006) (Barbier, J.) (concluding that "the commercial fisherman Plaintiffs (with the exception of

the oyster fishermen) who did not sustain physical damages to their property lack standing to sue under either federal or state law").[28]

Accordingly, to the extent that Plaintiffs do not allege physical injury to property in which they have a proprietary interest, *see supra* IV.B.1, they have failed to state a claim for which relief can be granted under Louisiana law, and such claims must be dismissed.

### 4.     The State of Alabama has not Stated a Claim Against HESI for Civil Penalties Under the Alabama Hazardous Waste Disposal Act.

The State of Alabama alleges that "[s]ome or all of the chemical dispersants used by Defendants in their attempts to remediate the oil spill disaster constitute hazardous waste under the Alabama Hazardous Waste Disposal Act ("AHWDA").  AL Compl. ¶ 321.  However, allegations elsewhere in the State of Alabama's Complaint plainly demonstrate that it does not allege that HESI was involved in the discharge of such dispersants.  *See* AL Compl. ¶¶ 317-323. HESI was not involved in the use or decision to use chemical dispersants.  *Id*.  Therefore, the State of Alabama has not stated a claim upon which civil penalties could be levied against HESI for alleged violations of the AHWDA.  Dismissal is proper.

## D.     PLAINTIFFS CANNOT, AS A MATTER OF LAW, RECOVER PUNITIVE DAMAGES FROM HESI.

In addition to the other damage claims discussed *supra*, Local Government Plaintiffs and the State of Alabama seek punitive damages against HESI.  Master Compl. ¶¶ 747-768; AL Compl. ¶¶ 346-368.  However, Plaintiffs cannot recover punitive damages as a matter of law. First, punitive damages are not a separate cause of action.  *Sulzer Carbomedics v. Or. Cardio-Devices, Inc.,* 257 F.3d 449, 461 (5th Cir. 2001); *see also Byrne v. Nezhat,* 261 F.3d 1075, 1087 (11th Cir. 2001) (noting that plaintiff's claim for punitive damages was not a separate cause of

---

[28] Moreover, unlike OPA, LOSPRA no longer allows for recovery of purely economic losses.  *See* 1995 La. Act 740, § 2 (repealing La. Rev. Stat. 30:2454(5)(e), which earlier provided recovery for lost profits and loss of earning capacity).

D 1644080 v3-24010/0002 PLEADINGS

action).  Instead, they "must relate to some separate cause of action which permits recovery of punitive damages."  *S. Port Marine,* 234 F.3d at 64.  Therefore, Plaintiffs can only recover punitive damages if they have an independent cause of action that allows such recovery.

However, OPA, which provides Plaintiffs' exclusive remedy for damages resulting from the oil spill, does not permit the recovery of punitive damages.  *S. Port Marine*, 234 F.3d at 65-66.  The statute's comprehensive list of recoverable damages is exclusive, as "Congress intended the OPA to be the sole federal law applicable in this area of maritime pollution."  *Id.* at 65.  Thus, as a matter of law, Plaintiffs cannot recover punitive damages, even if their claims are construed as maritime tort claims.  *See Clausen v. M/V New Carissa*, 171 F. Supp. 2d. 1127, 1133 (D. Or. 2001) (holding that OPA precludes recovery of punitive damages under any general maritime law theory for which OPA could provide relief).  Plaintiffs' demand for the recovery of punitive damages, therefore, must be dismissed.

## VI.    CONCLUSION

For the reasons set forth above, subject matter jurisdiction has yet to attach for Plaintiffs' claims and, separately, they have failed to plead viable claims against HESI as a matter of law.  Pursuant to Rule 12(b)(1) and Rule 12(b)(6), the Court, therefore, should dismiss Plaintiffs' claims against HESI in their entirety.

Dated:  June 3, 2011

Respectfully Submitted,

**GODWIN RONQUILLO PC**

**By:** __/s/ _Donald E. Godwin, T.A.__
Donald E. Godwin, T.A.
DGodwin@GodwinRonquillo.com
Bruce W. Bowman, Jr.
BBowman@GodwinRonquillo.com
Jenny L. Martinez
JMartinez@GodwinRonquillo.com
Floyd R. Hartley, Jr.
FHartley@GodwinRonquillo.com
Gavin Hill
GHill@GodwinRonquillo.com

1201 Elm Street, Suite 1700
Dallas, Texas 75270-2041
Telephone: 214.939.4400
Facsimile: 214.760.7332

and

R. Alan York
AYork@GodwinRonquillo.com
Jerry C. von Sternberg
JVonSternberg@GodwinRonquillo.com
Misty Hataway-Coné
MCone@GodwinRonquillo.com

1331 Lamar, Suite 1665
Houston, Texas 77010
Telephone:  713.595.8300
Facsimile:  713.425.7594

**ATTORNEYS FOR DEFENDANT
HALLIBURTON ENERGY SERVICES, INC.**

34

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that the above and foregoing Motion to Dismiss has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12 on this 3rd day of June, 2011.

                    _/s/  Donald E. Godwin_
                    Donald E. Godwin

D  1644080 v3-24010/0002 PLEADINGS