# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig | * | **MDL No. 2179** |
| "Deepwater Horizon" in the Gulf | * | |
| of Mexico on April 20, 2010 | * | **SECTION "J"** |
| | * | **JUDGE BARBIER** |
| **This Document Relates to:** | | |
| **Case No. 2:11-cv-00516;** | | |
| **Case No. 2:10-cv-03059** | * | |
| **Case No. 2:10-cv-04182** | * | |
| **Case No. 2:10-cv-04183** | * | |
| | * | **MAGISTRATE NO. 1** |
| | * | **MAGISTRATE SHUSHAN** |
| *  *  *  *  *  *  *  *  *  *  *  * | | |

### CONSOLIDATED MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANT MOEX OFFSHORE 2007 LLC TO DISMISS THE FIRST AMENDED COMPLAINTS OF THE STATE OF LOUISIANA AND THE STATE OF ALABAMA PURSUANT TO FED. R. CIV. P. 12(b)(6)

John F. Pritchard
Edward Flanders
PILLSBURY WINTHROP SHAW PITTMAN LLP
1540 Broadway
New York, NY 10036-4039
Ph. (212) 858-1000
Fax (212) 858-1500

**ATTORNEYS FOR MOEX OFFSHORE 2007 LLC**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.  INTRODUCTION ........................................................................................................... 1

II.  BACKGROUND ........................................................................................................... 1

III.  ARGUMENT ................................................................................................................. 2

    A.  The State Plaintiffs' Maritime Claims Fail as a Matter of Law Because Maritime Law Is Displaced by OPA ................................................................... 3

    B.  The OPA Claim Against MOEX Offshore Fails for Lack of Presentment ........... 4

    C.  The State Plaintiffs' Claims for Removal Costs Under OPA Must be Dismissed ............................................................................................................ 5

    D.  The State Plaintiffs' General Maritime Law Claims Fail to State a Claim in Any Event ...................................................................................................... 6

        1.  The State Plaintiffs' Fail to State a Claim for Negligence ........................ 7

            a.  MOEX Offshore did not have operational control over any of the activities that allegedly harmed the State Plaintiffs ............. 7

            b.  Allegations about MOEX Offshore's rights under the Operating Agreement are insufficient as a matter of law to establish liability for maritime negligence ...................................... 9

        2.  Louisiana's Nuisance Claim Also Fails Because it is Barred by Federal Maritime Law and OPA ............................................................. 13

        3.  Louisiana Fails to State a Claim for Trespass Because It Does Not and Cannot Show Any Intention on Behalf of MOEX Offshore ............. 14

    E.  The State Law Claims Must be Dismissed Because Federal Law Applies Exclusively ........................................................................................................ 15

        1.  OCSLA requires the exclusive application of OPA to claims for damages and costs arising from oil spills originating on the OCS ......... 15

        2.  Federal law preempts applying an affected state's law to interstate oil pollution originating from the OCS .................................................. 17

    F.  The State Plaintiffs Have Failed to State a Claim Under State Law .................. 19

IV.  CONCLUSION ............................................................................................................ 19

## <u>TABLE OF AUTHORITIES</u>

<u>**Page**</u>

### CASES

*Ainsworth v. Shell Offshore, Inc.*,
    829 F.2d 548 (5th Cir. 1987) ...................................................................................2, 7

*In re Alex C Corp.*,
    No. 01-12184-DPW, 2003 WL. 203078 (D. Mass. Jan. 30, 2003)....................................14

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009)............................................................................................1, 2, 6

*Barasich v. Shell Pipeline Co.*,
    No. 05-4180, 2006 WL. 3913403 (E.D. La. Nov. 20, 2006)..............................................2

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)...............................................................................................2, 6

*Boca Ciega Hotel, Inc. v. Bouchard Transport Co.*,
    51  F.3d 235 (11th Cir. 1995) .......................................................................................4

*Bolivar v. R & H Oil and Gas Co.*,
    789 F. Supp. 1374 (S.D. Miss. 1991)............................................................................9

*Canal Barge Co. v. Torco Oil Co.*,
    220 F.3d 370 (5th Cir. 2000) .......................................................................................7

*City of Milwaukee v. Illinois*,
    451 U.S. 304 (1981)..................................................................................................14

*Collins v. Morgan Stanley Dean Witter*,
    224 F.3d 496 (5th Cir. 2000) .......................................................................................8

*Conner v. Aerovox, Inc.*,
    730 F.2d 835 (1st Cir. 1984).......................................................................................13

*In re Cooper/T. Smith*,
    929 F.2d 1073 (5th Cir. 1991) .....................................................................................7

*In re Dant & Russell, Inc.*,
    951 F.2d 246 (9th Cir. 1991) .......................................................................................6

i

*Duplantis v. Shell Offshore, Inc.*,
    948 F.2d 187 (5th Cir. 1991) ...............................................................................5

*In re Exxon Valdez*, 104 F.3d 1196 (9th Cir. 1997) ..........................................................9

*Gabarick v. Laurin Maritime (Am.) Inc.*,
    623 F. Supp. 2d 741 (E.D. La. 2009) ....................................................................3

*Gabarick v. Laurin Maritime (Am.) Inc.*,
    No. 08-4007, 2009 WL 102549 (E.D. La. Jan. 12, 2009)....................................5

*Geier v. America Honda Motor Co.*,
    529 U.S. 861 (2000)..............................................................................................18

*Grammer v. Patterson Services, Inc.*,
    860 F.2d 639 (5th Cir. 1988) .................................................................................9

*Guillory v. Conoco, Inc.*,
    521 So. 2d 1220 (La. App. 3d Cir.), *writ denied*, 526 So.2d 801 (La. 1988) ....................9

*Hershey v. Energy Transfer Partners, L.P.*,
    610 F.3d 239 (5th Cir. 2010) .................................................................................2

*International Paper Co. v. Ouellette*,
    479 U.S. 481 (1987)........................................................................................3, 4, 5

*Jones v. Bock*,
    549 U.S. 199 (2007)...............................................................................................2

*Kane Enterprises v. MacGregor USA Inc.*,
    322 F.3d 371 (5th Cir. 2003) .................................................................................8

*In re Katrina Canal Breaches Litigation*,
    495 F.3d 191 (5th Cir. 2007) .................................................................................8

*Landry v. Huthnance Drilling Co.*,
    889 F.2d 1469 (5th Cir. 1989) .............................................................................10

*Marastro Compania Naviera, S.A. v. Canadian Maritime Carriers, Ltd.*,
    959 F.2d 49 (5th Cir. 1992) .................................................................................14

*Marathon Pipe Line Co. v. LaRoche Industrial Inc.*,
    944 F. Supp. 476 (E.D. La. 1996)..........................................................................5

*Middlesex County Sewerage Authority v. National Sea Clammers Association*,
    453 U.S. 1 (1981)..................................................................................................13

*Mobil Oil Exploration & Producing SE, Inc. v. United States*,
    530 U.S. 604 (2000)................................................................................18

*National Shipping Co. of Saudi Arabia v. Moran Mid-Atlantic Corp.*,
    924 F. Supp. 1436 (E.D. Va. 1996), *aff'd*, 122 F.3d 1062 (4th Cir. 1997) .........................3

*Nissan Motor Corp. v. Maryland Shipbuilding*,
    544 F. Supp. 1104 (D. Md.1982) ................................................................1, 9

*North Carolina ex rel. Cooper v. Tenn. Valley Authority*,
    615 F.3d 291 (4th Cir. 2010) ......................................................................13

*Northwest Airlines, Inc. v. Transport Workers Union of America, AFL-CIO*,
    451 U.S. 77 (1981)......................................................................................8

*Offshore Logistics, Inc. v. Tallentire*,
    477 U.S. 207 (1986)..................................................................................18

*Rogers v. Shell Oil Co.*,
    No. 92-1040, 1993 WL. 30052 (E.D. La. Feb. 3, 1993) ......................................7

*Ronquille v. MMR Offshore Services, Inc.*,
    353 F. Supp. 2d 680 (E.D. La. 2004) .......................................................2, 7

*Sekco Energy, Inc. v. M/V Margaret Chouest*,
    820 F. Supp. 1008 (E.D. La. 1991) .............................................................8

*South Port Marine, LLC v. Gulf Oil LP*,
    234 F.3d 58 (1st Cir. 2000)....................................................................3, 9

*Tanguis v. M/V Westchester*,
    153 F. Supp. 2d 859 (E.D. La. 2001) ..........................................................3

*Texaco Exploration & Prod., Inc. v. AmClyde Engineered Products Co.*,
    448 F.3d 760 (5th Cir. 2006) ...................................................................16

*Thibodeaux v. Vamos Oil & Gas Co., No. Civ. A. 03-1883*,
    2005 WL. 3019773 (W.D. La. Nov. 10, 2005)...............................................10

*Thomas v. Burlington Resources Oil & Gas Co., No. Civ. A. 99-3904*,
    2000 WL. 1528082 (E.D. La. Oct. 13, 2000) .............................................2, 7

*Transcon. Gas Pipe Line Corp. v. Mobile Drilling Barge or Vessel Mr. Charlie*,
    294 F. Supp. 1025 (E.D. La. 1968), *aff'd in part and rev'd in part*, 424 F.2d 684
    (5th Cir.), *cert. denied*, 400 U.S. 832 (1970).................................................9

*Turner v. Murphy Oil USA, Inc.*,
    No. 05-4206, 2007 WL. 4208986 (E.D. La. Nov. 21, 2007) ................................................5

*United States v. Dixie Carriers, Inc.*,
    627 F.2d 736 (5th Cir. 1980) ........................................................................................13

## STATUTES

16 U.S.C. §§1451-1464 ...........................................................................................................17

33 U.S.C. §2702 .......................................................................................................................4

33 U.S.C. §2702(b)(2) ..............................................................................................................4

33 U.S.C. §2713(a) .................................................................................................................4, 5

33 U.S.C. §2717(f)(2) ...............................................................................................................6

33 U.S.C. §2718 .......................................................................................................................18

43 U.S.C. §§1331-1356 ...........................................................................................................15

43 U.S.C. §1331(a) ..............................................................................................................15-16

43 U.S.C. §1349(b)(1)(A) .......................................................................................................15

Fed. R. Civ. P. 12(b)(6)......................................................................................................1, 2, 3

## OTHER

Frank P. Grad, 6-18 Treatise on Environmental Law §18.04 (2010) .............................................9

## I.      INTRODUCTION

The State of Louisiana's First Amended Complaint ("Louisiana Compl.") and the State of Alabama's First Amended Complaint ("Alabama Compl.") (together, "the State Complaints") assert several claims against MOEX Offshore 2007 LLC ("MOEX Offshore").[1]  Each claim must be dismissed.  The maritime law claims fail as a matter of law because, for purposes of this case, maritime law has been supplanted by the Oil Pollution Act of 1990 ("OPA").  Even if maritime law were not displaced, Louisiana and Alabama ("the State Plaintiffs") fail to state maritime claims against MOEX Offshore.  The State Plaintiffs' OPA claims also fail because they do not allege satisfactory compliance with the statute's pre-suit presentment requirement.   OPA's presentment requirement is mandatory and jurisdictional; all OPA claims by plaintiffs who have not complied must be dismissed.  The remaining state law claims must be dismissed because state law does not apply in this case.

For these reasons, and as explained more fully below, all of the State Plaintiffs' claims against MOEX Offshore must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted.

## II.     BACKGROUND

The State Plaintiffs seek to premise MOEX Offshore's liability on an alleged right to receive information from the *Deepwater Horizon* rig concerning aspects of BP's operations and to confer with BP.  Louisiana Compl. ¶105; Alabama Complaint ¶31.  They do not allege that MOEX Offshore had any operational control or authority over the *Deepwater Horizon*, its crew,

---

[1]       Named defendant Mitsui Oil Exploration Co., Ltd. ("MOECO") has not been served with any complaint in connection with this case and does not join in this Motion or otherwise appear for any purpose in the MDL court.  Named defendant MOEX USA Corporation is separately filing its own motion to dismiss.

the drilling and temporary abandonment operations conducted at the Macondo Prospect, or the post-April 20, 2010 cleanup activities.

## III.    ARGUMENT

### THE STATE PLAINTIFFS FAIL TO STATE CLAIMS AGAINST MOEX OFFSHORE UPON WHICH RELIEF CAN BE GRANTED.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 555).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555); *see also Hershey v. Energy Transfer Partners, L.P.*, 610 F.3d 239, 245–46 (5th Cir. 2010) (same).

To state a cognizable claim for relief, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556).  If the factual allegations do not raise a right to relief "above the speculative level," *Twombly*, 550 U.S. at 555, or if the allegations reveal an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007), a claim must be dismissed.  In the latter situation – which applies here – the plaintiff "pleads himself out of court by 'admitting all the ingredients of an impenetrable defense.'" *Barasich v. Shell Pipeline Co.*, No. 05-4180, 2006 WL 3913403, at *2 (E.D. La. Nov. 20, 2006) (Barbier, J.) (internal citations omitted) (granting Rule 12(b)(6) dismissal in part).

2

A.   **The State Plaintiffs' Maritime Claims Fail as a Matter of Law Because Maritime Law Is Displaced by OPA.**

The State Plaintiffs attempt to invoke general maritime law to recover "covered damages" under OPA.  Yet, OPA is the <u>exclusive</u> federal remedy for claimants seeking "covered damages" following an oil spill.  *See* Mem. of Law in Support of Mot. of Defendants Anadarko Petroleum Corp., Anadarko E&P Co. LP, MOEX Offshore 2007 LLC, and MOEX USA Corp. to Dismiss First Am. Mast. Compl., Cross-Claim, and Third-Party Compl. for Private Economic Losses in Accordance with PTO No. 11 [CMO No. 1] Section III (B1)["B1 Bundle"] Pursuant to Fed. R. Civ. P. 12(B)(6), at 10–12 (Doc. 1414-1) (hereinafter "Non-Operating Defendants' MTD Mast. B1 Compl.").

Courts uniformly hold that "Congress intended the OPA to be the exclusive federal law governing oil spills," displacing maritime causes of action.  *South Port Marine, LLC v. Gulf Oil LP*, 234 F.3d 58, 65–66 (1st Cir. 2000) (holding that punitive damages were not available under OPA because "Congress's very specific treatment of oil pollution in the OPA, which does not provide for punitive damages, supplanted general admiralty and maritime law, which has traditionally provided for the general availability of punitive damages for reckless conduct"). "OPA clearly preempts maritime law as to recovery of cleanup expenses and the cost of compensating injured persons" from an oil spill.  *Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atl. Corp.*, 924 F. Supp 1436, 1447 (E.D. Va. 1996) ("Because OPA provides a comprehensive scheme for the recovery of oil spill cleanup costs and compensation of those injured by oil spills, the general maritime law does not apply to recovery of these types of damages."), *aff'd*, 122 F.3d 1062 (4th Cir. 1997); *see also Tanguis v. M/V Westchester*, 153 F. Supp. 2d 859, 867 (E.D. La. 2001) (holding that OPA "includes new remedies, which, in many respects, preempt traditional maritime remedies"); *Gabarick v. Laurin Mar. (Am.) Inc.*, 623 F.

Supp. 2d 741, 750–51 (E.D. La. 2009) (holding that all general maritime law claims that are recoverable under OPA, and specifically those covered damages enumerated in 33 U.S.C. §2702, are preempted by OPA).  OPA is the only possible recourse for these covered removal costs and damages.

The maritime claims seek damages covered by OPA.  The State Complaints' allegations about damages and costs encompass property damage, loss of revenues, and costs associated with additional public services.  *See, e.g.*, Louisiana Compl. ¶¶212-220, 232-38, 247; Alabama Compl. ¶¶2, 82, 85-86, 92.  All are covered by OPA.  *See* 33 U.S.C. §2702(b)(2) (listing "covered damages").  They also seek to recover removal costs, which also are covered by OPA. *See* Louisiana Compl. ¶¶190-94, 214; Alabama Compl. ¶¶212, 218, 135(e), 304; *see also* 33 U.S.C. §2702(b)(1).

Accordingly, because OPA displaces maritime claims for "covered damages" and removal costs arising out of oil pollution and because the State Plaintiffs seek only relief that OPA provides, the State Plaintiffs' maritime claims against MOEX Offshore must be dismissed.

**B.**    **The OPA Claim Against MOEX Offshore Fails for Lack of Presentment.**

OPA claims must be dismissed when plaintiffs do not allege compliance with the statute's presentment requirements.  *See* Non-Operating Defendants' MTD Mast. B1 Compl. at 12–15.  OPA requires that "all claims for removal costs or damages shall be presented first to the responsible party . . . of the source designated under section [2714(a) of this title]."  33 U.S.C. §2713(a) (emphasis added).  A claimant may elect to commence an action in court against a responsible party only after first presenting the claim, and only after the responsible party either denies liability or does not settle within 90 days. 33 U.S.C. §2713(c).  Simply put, "the clear text of §2713 creates a mandatory condition precedent barring all OPA claims unless and until a claimant has presented her claims . . . ."  *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.*, 51

4

F.3d 235, 240 (11th Cir. 1995) (emphasis added); *accord Gabarick v. Laurin Maritime (Am.) Inc.*, No. 08-4007, 2009 WL 102549, at *3 (E.D. La. Jan. 12, 2009) ("Having failed to comply with §2713(c)'s mandatory condition precedent to a lawsuit, claimants' OPA claims must be dismissed without prejudice."); *Turner v. Murphy Oil USA, Inc.*, No. 05-4206, 2007 WL 4208986, at *2 (E.D. La. Nov. 21, 2007) ("[The] notice provision is a "mandatory condition precedent" to bringing a suit under the OPA")(internal citation omitted); *Marathon Pipe Line Co. v. LaRoche Indus. Inc.*, 944 F. Supp. 476, 477 (E.D. La. 1996) ("The Court agrees that §2713's presentation requirement is jurisdictional and mandates dismissal when that provision is applicable and not complied with by the claimant.").

While the State of Alabama makes the cursory allegation that it has satisfied the presentment requirements of 33 U.S.C. §2713(a) and (b), it goes on to state, in the very next sentence, that it is still assessing the breadth of its damages, and "may make additional presentments to the Defendants." Alabama Compl. ¶217. The State of Louisiana contends that it "should not be required to repeatedly  present government claims" and that it is including in its complaint "claims for natural resource damages and other forward looking costs and economic damages." Louisiana Compl. ¶¶144, 152. On their face, those allegations fail; the failure to satisfy presentment requirements <u>before litigation</u> cannot be cured in the midst of litigation. Because the presentment requirement is mandatory and jurisdictional, and because the State Plaintiffs have failed to comply with it, the OPA claims in the State Complaints must be dismissed.

### C.    The State Plaintiffs' Claims for Removal Costs Under OPA Must be Dismissed.

The State Complaints assert that, pursuant to Section 2702(b) of OPA, the State Plaintiffs are entitled to all removal costs they have incurred, or will incur, as a result of the incident.

Louisiana Compl. ¶204, Alabama Compl. ¶212.  Putting aside for the moment the issue of whether the State Plaintiffs have properly presented their claims for such costs under OPA, these conclusory allegations are insufficient to support a claim for removal costs under OPA.

OPA requires that a claimant actually have incurred removal costs prior to bringing suit. Generally "an action may be commenced under this subchapter [oil pollution liability and compensation] for recovery of removal costs at any time <u>after such costs have been incurred</u>." 33 U.S.C. §2717(f)(2) (emphasis added).  Courts have construed this same requirement in CERCLA, which allows for recovery of costs incurred in responding to releases of hazardous substances, as imposing an additional requirement on cost-recovery claims—that they be brought only after the claimant has actually incurred costs.  *See In re Dant & Russell, Inc.*, 951 F.2d 246, 249–50 (9th Cir. 1991) (before suing, CERCLA plaintiffs must expend response costs).  The mere "formulaic recitation" that the State Plaintiffs are entitled to recover removal costs "will not do.'"  *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555).  The State Plaintiffs do not allege with the necessary specificity that removal costs have already been incurred by them in response to the spill.[2]

### D.     The State Plaintiffs' General Maritime Law Claims Fail to State a Claim in Any Event.

The State Complaints allege no facts that, even if taken as true, would establish that MOEX Offshore is liable for negligence, gross negligence or willful misconduct, nuisance, or trespass under maritime law.

---

[2]     For example, Louisiana merely recites the definition of removal costs and asserts that such costs have been incurred, but does not allege how, through what activity, or to what extent such costs were incurred.  *See* Louisiana Compl. ¶133; *accord, e.g., id* at ¶¶159-60, 172, 205, 247(f), 257(f), 268(f).  Alabama says that it is "continuing its assessment" of removal costs. Alabama Compl. ¶372.

      **1.**      **The State Plaintiffs' Fail to State a Claim for Negligence.**

"To establish maritime negligence, a plaintiff must 'demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by [the] plaintiff, and a causal connection between the defendant's conduct and the plaintiff's injury.'" *Canal Barge Co. v. Torco Oil Co.*, 220 F.3d 370, 376 (5th Cir. 2000) (quoting *In re Cooper/T. Smith*, 929 F.2d 1073, 1077 (5th Cir. 1991)).  The State Plaintiffs' allegations make clear that, as a matter of law, MOEX Offshore is not liable for the State Plaintiffs' alleged injuries.  Thus, their maritime negligence claims, including gross negligence and willful misconduct, must be dismissed.

      **a.**      **MOEX Offshore did not have operational control over any of the activities that allegedly harmed the State Plaintiffs.**

The State Complaints do not allege that MOEX Offshore had a right to control the operations of BP or any other defendant, which is fatal to their maritime negligence claims. Only entities with operational control have a duty to prevent harm from oil and gas operations. *See, e.g.*, *Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548, 550 (5th Cir. 1987), *cert. denied*, 485 U.S. 1034 (1988).  A principal neither assumes nor owes any duty to protect others from the negligence of an independent contractor.  *Thomas v. Burlington Res. Oil & Gas Co.*, No. Civ. A. 99-3904, 2000 WL 1528082, at *2 (E.D. La. Oct. 13, 2000) (Barbier, J.); *Ronquille v. MMR Offshore Servs., Inc.*, 353 F. Supp. 2d 680, 682 (E.D. La. 2004) (the presence of a company representative on an oil platform with knowledge of the rig's operations "is insufficient to create a duty; therefore, the law does not support the imposition of liability for any failure to intercede"); *see also* Non-Operating Defendants' MTD Mast. B1 Compl. at 18–20.  The State Complaints allege that MOEX Offshore, at most, owned a minority non-operational stake in the Macondo Prospect.  *See* Louisiana Compl. ¶39, Alabama Compl. ¶31.  Put simply, the State

Plaintiffs do not, and cannot, allege that MOEX Offshore had the control over the activities aboard the *Deepwater Horizon* that would be necessary to support such liability.

The allegations instead show that MOEX Offshore <u>lacked</u> the requisite operational control. The Complaints allege that BP was the "designated operator" and "sole lease operator" of the *Deepwater Horizon* (Alabama Compl. ¶8, 31),[3] and that BP had "full authority to act in the lessee's behalf in complying with the terms of the lease and applicable regulations" (Louisiana Compl. ¶39).

Moreover, the Macondo Prospect Offshore Deepwater Operating Agreement ("Operating Agreement"), on which the Complaints rely, shows that BP is an independent contractor with sole authority to conduct operations on the leased property.[4] The Operating Agreement confirms that "BP Exploration & Production Inc. is designated as the Operator." Non-Operating Defendants' MTD Mast. B1 Compl., Ex. A at 14. As Operator, BP "has the <u>exclusive right</u> and duty to conduct (or cause to be conducted) <u>all activities or operations</u> under this Agreement." *Id.* at 20 (emphasis added). In performing services under the agreement, BP is an "<u>independent contractor, not subject to the control or direction of Non-Operating Parties</u>." *Id.* (emphasis added). Thus, the State Plaintiffs' contention that MOEX Offshore owed any duty to Plaintiffs

---

[3]     MOEX Offshore's lack of authority to operate or participation in operations of the well is supported by Alabama's own treatment of the parties in its complaint. BP is defined as a "Drilling Defendant," which by Alabama's definition was "involved in the drilling, cementing, and/or other temporary well abandonment activities of the *Deepwater Horizon*." Alabama Compl. ¶21. In contrast, Alabama refers to MOEX Offshore as a "non-operator." *Id.* ¶31.

[4]     The Operating Agreement is attached as Exhibit A to the Non-Operating Defendants' MTD Mast. B1 Compl. ("Ex. A"). The State Complaints discuss the Operating Agreement, and the contractual rights and obligations of MOEX Offshore are central to State Plaintiffs' claims against it. Therefore, the Court may consider the Operating Agreement in ruling on this motion to dismiss. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Kane Enters. v. MacGregor USA Inc.*, 322 F.3d 371, 374 (5th Cir. 2003).

or had a duty to intercede in BP's or its contractors' operations fails.[5]   MOEX Offshore simply did not have the operational control required to establish maritime negligence.   *See Guillory v. Conoco, Inc.*, 521 So.2d 1220, 1223 (La. App. 3d Cir.), *writ denied*, 526 So.2d 801 (La. 1988); *Grammer v. Patterson Servs., Inc*., 860 F.2d 639, 644 (5th Cir. 1988), *cert. denied*, 491 U.S. 906 (1989).

Mere possession of a non-operational interest in a lease is inadequate to give rise to a duty to third parties such as the State Plaintiffs, to show that MOEX Offshore breached any duty, or to show that MOEX Offshore caused the alleged injuries.   Indeed, the allegations that MOEX Offshore was a "non-operational leaseholder[]," Alabama Compl. ¶31, and was not the designated operator, Louisiana Compl. ¶39, negate any inference that it conducted the operations that harmed the State Plaintiffs.   Because MOEX Offshore did not conduct or control any of the operations that allegedly injured the State Plaintiffs, it is not liable as a matter of law.

> **b.**   **Allegations about MOEX Offshore's rights under the Operating Agreement are insufficient as a matter of law to establish liability for maritime negligence.**

The State Plaintiffs refer to certain rights that MOEX Offshore allegedly had under the Operating Agreement.   These alleged rights include rights "of access to activities and operations," to receive information, and to request meetings with BP.   Louisiana Compl. ¶104;

---

[5]      The Complaints do not allege that MOEX Offshore is vicariously liable as a principal of or joint venture partner with BP, and do not plead a vicarious liability theory against MOEX Offshore.   In any event, the Complaints' allegations and the Operating Agreement establish that MOEX Offshore is not vicariously liable for any actions or omissions by BP, because MOEX Offshore is not alleged to have (and does not have) any right to control BP's operations.   *See, e.g.*, *Transcon. Gas Pipe Line Corp. v. Mobile Drilling Barge or Vessel Mr. Charlie*, 294 F. Supp. 1025, 1031 (E.D. La. 1968) (no indirect liability under maritime law for non-operating co-owners of oil and gas lease where designated operator, but not non-operators, was negligent), *aff'd in relevant part and rev'd in part on other grounds*, 424 F.2d 684 (5th Cir.), *cert. denied*, 400 U.S. 832 (1970); *Bolivar v. R & H Oil and Gas Co.*, 789 F. Supp. 1374, 1381–82 (S.D. Miss. 1991) (collecting cases for proposition that non-operating investor who has no right to control oil and gas operations may not be held vicariously liable as joint venturer).

*see also* Alabama Compl. ¶129 (stating that MOEX Offshore had the right to be "privy" to certain information).  Assuming those allegations are true, the State Plaintiffs' maritime negligence claims still fail as a matter of law because none of the alleged rights are rights of operational control.

These so-called "contractual rights and obligations" under the Operating Agreement, Louisiana. Compl. ¶105, are merely rights granted to MOEX Offshore to review or request information about operations conducted by BP and its contractors, not to exercise authority over operations or control activities.  *See Thibodeaux v. Vamos Oil & Gas Co.*, No. Civ. A. 03-1883, 2005 WL 3019773, at *1 (W.D. La. Nov. 10, 2005) (The "reservation of the right to monitor contractor safety does not give rise to operational control so as to make the principal liable for the contractor's actions") (citations omitted); *Landry v. Huthnance Drilling Co*., 889 F.2d 1469, 1471 (5th Cir. 1989) (holding under the general maritime law that "'a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations or deviations'" is "'not enough'" to give rise to liability) (quoting RESTATEMENT (SECOND) OF TORTS §414 cmt. c (1965)); *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 193 (5th Cir. 1991) (applying Louisiana law) ("The fact that a principal takes an active interest in the safety of the employees of its independent contractor does not, in and of itself, constitute direct operational control" and therefore does not lead to any liability of the principal); *see also* Non-Operating Defendants' MTD Mast. B1 Compl. at 21–26.

The Louisiana Complaint alleges that "BP E&P [] gave or made available to its co-owners, Anadarko and MOEX [Offshore], documents that showed the well design and changes to the well design."  Louisiana Compl. ¶102.  As such, the co-owners allegedly were "aware of

design choices." *Id*. ¶103.   Further, the Louisiana Complaint alleges that the Operating Agreement "gave Anadarko and MOEX [Offshore] the right of access to activities and operations." *Id*. ¶104.   The Louisiana Complaint fails to allege actual operational control as opposed to mere access.   The Alabama Complaint alleges that MOEX Offshore "had access to Halliburton/Sperry Sun INSITE real-time data that was transmitted from the *Deepwater Horizon* on April 20, 2010."   Alabama Compl. ¶98.   Based on this access, the Alabama Complaint contends that MOEX Offshore "owed a duty to the State to warn of the impending disaster in sufficient time to avert it," and failed to meet that duty by "failing to warn the drilling vessel crew of the imminent blowout so that the crew could take evasive action." *Id*.   But the Complaints do not, and cannot, explain how MOEX Offshore's access to information—without the necessary right of operational control—can give rise to liability or a duty to warn the *Deepwater Horizon* crew.

The conclusory allegations that MOEX Offshore was "in the position of being able to oversee all of the operations at the Macondo Well," Louisiana Compl. ¶105, and breached its alleged duties to provide timely warning to the *Deepwater Horizon* crew, Alabama Compl. ¶98, are not only unsupported by factual allegations, but also patently implausible.   An allegation of mere access to information is insufficient to establish that off-rig observers could have interpreted the available data and concluded that hydrocarbons had entered the well.[6]   The State Complaints also do not assert, even if MOEX Offshore had been monitoring the data (which itself is not alleged), that the information available was sufficient to have allowed any of MOEX Offshore's off-rig personnel to conclude that a blowout was imminent.   Critically, the State

---

[6]      Indeed, the crew on the *Deepwater Horizon* undoubtedly was aware of the same information allegedly available to MOEX Offshore and, unlike MOEX Offshore, was also present during the events occurring aboard the *Deepwater Horizon* and/or had the authority to control operations of those events.

Complaints do not allege that MOEX Offshore had authority to direct the crew of the *Deepwater Horizon*.

The State Plaintiffs' allegations are insufficient to establish maritime negligence as a matter of law. Based upon alleged access to information, the State Plaintiffs attempt to impose on MOEX Offshore a duty to intercede in the operations of an independent contractor (BP) and unrelated parties (Transocean and Halliburton) over whom MOEX Offshore is not alleged to have any right, authority, or ability to control. That notion contravenes settled law. Controlling law in this Circuit, and the general rule in oil and gas tort cases, provides that where, as here, a principal contracts with an independent contractor to conduct oil and gas operations but retains no operational control, the principal neither assumes nor owes any duty to protect others from hazards caused by the contractor. *See Ronquille*, 353 F. Supp. 2d at 682 (holding that no duty existed where principal did not direct or perform the activities) (citation omitted); *Thomas*, 2000 WL 1528082, at *2 (holding that an independent contractor's injured employee was not owed a duty by the principal where the contractor created the hazard) (citations omitted); *see also* Non-Operating Defendants' Motion to Dismiss Mast. Compl. B1 at 25–26.

Without operational control, "[a] principal has no duty . . . to intercede when an independent contractor's actions have created a dangerous situation." *Rogers v. Shell Oil Co*., No. 92-1040, 1993 WL 30052, at *2 (E.D. La. Feb. 3, 1993) (citing *Ainsworth v. Shell Offshore, Inc*., 829 F.2d 548 (5th Cir. 1987)). Thus, allegations that MOEX Offshore "knew or should have known" that hydrocarbons had entered the well, Alabama Compl. ¶98, or that it was "in the position … to intervene to prevent the Incident from occurring," Louisiana Compl. ¶105, are insufficient as a matter of law to state a claim for negligence. Accordingly, the general maritime negligence claim against MOEX Offshore must be dismissed.

2.      **Louisiana's Nuisance Claim Also Fails Because it is Barred by Federal Maritime Law and OPA.**

Louisiana's nuisance claim also fails because federal maritime law does not recognize a claim for nuisance.  Even if it did, Louisiana's claim would be displaced by OPA, which provides the exclusive federal remedy for damages to real property that are recoverable under a nuisance theory.

Nuisance has been called the "ill-defined omnibus tort of last resort."  *North Carolina ex rel. Cooper v. Tenn. Valley Auth.*, 615 F.3d 291, 301–02 (4th Cir. 2010).  Many courts have determined that maritime law simply does not recognize the kind of public nuisance claim that Louisiana asserts.  *See Sekco Energy, Inc. v. M/V Margaret Chouest*, 820 F. Supp. 1008, 1014 (E.D. La. 1991) ("we decline to create such a cause of action" for public nuisance).

Even if the general maritime law recognized a claim for public nuisance, OPA displaces it.  Louisiana's nuisance claim is based upon alleged damages that are covered by OPA.  *See* Louisiana Compl. ¶257.  OPA is the exclusive federal remedy for any claimant seeking recovery for covered damages.  The will of Congress is dominant in admiralty.  *Northwest Airlines, Inc. v. Transp. Workers Union of Am., AFL-CIO*, 451 U.S. 77, 96 (1981) ("Even in admiralty, however, where the federal judiciary's lawmaking power may well be at its strongest, it is our duty to respect the will of Congress.").   Accordingly, comprehensive legislation like OPA displaces federal common law and general maritime law in that same area.  *See Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 11 (1981) (Federal Water Pollution Control Act, as amended, fully preempts federal common law of nuisance in area of ocean pollution); *Conner v. Aerovox, Inc.*, 730 F.2d 835, 840–41 (1st Cir. 1984) (Federal Water Pollution Control Act preempts general maritime law tort claims); *United States v. Dixie Carriers, Inc.*, 627 F.2d 736, 740–42 (5th Cir. 1980) (Federal Water Pollution Control Act

provides the exclusive legal remedy for the government to recover its oil spill cleanup costs). "[W]hen Congress addresses a question previously governed by a decision rested on federal common law the need for such an unusual exercise of lawmaking by federal courts disappears." *City of Milwaukee v. Illinois*, 451 U.S. 304, 314 (1981) (holding that the Clean Water Act displaces the federal common law of interstate water pollution).

Congress passed OPA to occupy the field of economic damages caused by marine oil pollution, as the legislative history makes clear. *See South Port Marine, LLC*, 234 F.3d at 65-66; *see also In re Alex C Corp.*, No. 01-12184-DPW, 2003 WL 203078, at *11 (D. Mass. Jan. 30, 2003) (dismissing claims under maritime contribution law and maritime law indemnity where OPA has provided for recovery of those damages).  Because maritime law does not recognize a claim for public nuisance and, even if it did, OPA would displace it, Plaintiffs' nuisance claim must be dismissed.

Furthermore, a state cannot bring a claim for *private* nuisance.  A private nuisance claim can be brought only by one with a current possessory or beneficial interest in the property.  To prevail in a private nuisance action, "a plaintiff must show an interest peculiar to himself that is not shared by the public at large."  Frank P. Grad, 6-18 Treatise on Environmental Law §18.04 (2010), *citing In re Exxon Valdez*, 104 F.3d 1196 (9th Cir. 1997).

### 3.    Louisiana Fails to State a Claim for Trespass Because It Does Not and Cannot Show Any Intention on Behalf of MOEX Offshore.

While no rule of trespass exists in maritime law, this Circuit has held that "general common law and in particular the Restatement (Second) of Torts should control to determine the law of maritime trespass."  *Marastro Compania Naviera, S.A. v. Canadian Maritime Carriers, Ltd.* 959 F.2d 49, 53 (5th Cir. 1992) (citing *Nissan Motor Corp. v. Maryland Shipbuilding*, 544 F. Supp. 1104, 1111 (D. Md.1982)).

"Under the Restatement, one is liable for trespass if he intentionally enters land in possession of another, or causes a thing or a third person to do so." *Id.* (citing Restatement (Second) of Torts §158). Louisiana has made no allegation whatsoever that MOEX Offshore intentionally entered or caused oil to enter Louisiana's land. Louisiana has thus failed to state a claim against MOEX Offshore for trespass under maritime law.

**E.** **The State Law Claims Must be Dismissed Because Federal Law Applies Exclusively.**

Several claims in the State Complaints, including claims for civil penalties, rely upon state law. However, pursuant to the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. §§1331-1356, federal law alone applies to claims arising out of and in connection with oil exploration, development, and extraction operations on the Outer Continental Shelf ("OCS"). Although federal law may sometimes borrow state law as surrogate federal law in OCS cases, it does not do so in this case. Because the state law claims are based on substantive law that does not apply, the claims must be dismissed.

**1.** **OCSLA requires the exclusive application of OPA to claims for damages and costs arising from oil spills originating on the OCS.**

This case arises out of, and in connection with, operations involving the exploration and production of oil from the subsoil and seabed of the OCS.[7] *See* 43 U.S.C. §1349(b)(1)(A) (granting U.S. district courts jurisdiction of cases "arising out of, or in connection with . . . any operation conducted on the outer Continental Shelf . . ."). As discussed in the Non-Operating Defendants' MTD Mast. B1 Compl. at 28–36, which is incorporated by reference, and as this court has already held, this case arises under OCSLA. Order Denying State of Louisiana's

---

[7] The OCS consists of "all submerged lands lying seaward and outside" the land beneath the United States' navigable waters, "and of which the subsoil and seabed appertain to the United States and are subject to its jurisdiction and control." 43 U.S.C. §1331(a).

Motion to Remand, Case Nos. 10-1757; 10-1758; 10-1760; 10-2087 (E.D. La. Oct. 6, 2010) (Doc. 471); *see also Texaco Exploration & Prod., Inc. v. AmClyde Engineered Prods. Co.*, 448 F.3d 760, 774 (5th Cir. 2006) (finding OCSLA confers federal jurisdiction and provides choice-of-law rules over controversies "inextricably linked" to resource exploration and development on the OCS).  OCSLA's mandatory choice-of-law rules, 43 U.S.C. §1333(a), make clear that federal law alone applies to claims arising on the OCS and out of OCS mineral extraction operations. Non-Operating Defendants' MTD Mast. B1 Compl. at 28–36.

State law may be adopted as applicable law in OCSLA cases only under limited circumstances.  State law can apply only when the case involves a situs identified under Section 1333(a)(2) of OCSLA, and then only as surrogate federal law to fill in gaps in federal law. Neither condition is applicable here.

As the Non-Operating Defendants explain in their reply brief in support of their motion to dismiss the B1 and B3 Master Complaints, Section 1333(a)(2) does not permit the application of state law as surrogate federal law for an incident involving the *Deepwater Horizon*, because the *Deepwater Horizon* was only <u>temporarily</u> attached to the OCS during the relevant events.  Reply to PSC Omnibus Oppositions to Mot. to Dismiss Mast. Compl. B1 and B3 at 6–7.  Accordingly, under Section 1331(a)(1), only federal statutory and maritime law applies, unsupplemented by state law.  As shown above, OPA is the comprehensive federal law for oil pollution cases that would otherwise be governed by maritime law.  OPA therefore provides the only recourse for the State Plaintiffs.

In any event, owing to OPA's comprehensive coverage of the field of oil spill damages, there is no possible gap for state law to fill.  The State Plaintiffs, in fact, bring claims that duplicate OPA and seek relief essentially identical to that obtainable through OPA.  Louisiana's

16

allegations under the Louisiana Oil Spill Prevention and Response Act, for example, overlap with the OPA allegations.  *Compare* Louisiana Compl. ¶¶172, 176-79 with *id.* ¶¶159-65.

><h4>2.      Federal law preempts applying an affected state's law to interstate oil pollution originating from the OCS.</h4>

Under OCSLA, only federal law applies to oil spills originating from the OCS.  Ordinary principles of conflict preemption require the same result.  The state law claims against MOEX Offshore attempt to invoke the law of states allegedly harmed by the oil spill.  But federal law preempts the application of an affected state's law to claims arising out of oil spills originating from OCS sources, which are outside the reach of any state's jurisdiction.

The Supreme Court has never allowed an affected state to apply its law to interstate pollution originating from outside the state's territory.  "[R]egulation of interstate water pollution is a matter of federal, not state, law . . . ."  *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 488 (1987).  Applying the law of an affected state to pollution originating in another state would seriously undermine, and would stand as an obstacle to the full implementation of, the methods by which the Clean Water Act regulates interstate water pollution.  *Id.* at 494–97.  Thus, the Supreme Court held that the Clean Water Act, in light of its text, purposes, and history, and notwithstanding its savings clause, did not "preserve the right to bring suit under the law of any affected State."  *Id.* at 493.

The justification for applying only federal law to interstate pollution is even stronger in this case, which involves pollution originating from a federal enclave: the OCS.  Applying the law of affected states to claims arising out of an oil spill emanating from the OCS would frustrate several federal statutes that regulate OCS mineral extraction operations for their actual and potential environmental consequences.  Through OCSLA and the Coastal Zone Management Act ("CZMA"), 16 U.S.C. §§1451–1464, the federal government extensively regulates

exploration and drilling operations on the OCS for their environmental impacts.  *See Mobil Oil Exploration & Producing SE, Inc. v. United States*, 530 U.S. 604, 609-10 (2000) (describing the procedures to be completed by leaseholding companies wishing to explore and drill).  Applying the law of affected states to discharges from OCS operations would circumvent this careful scheme, which specifically assigns affected states a largely advisory role: "The inevitable result" of applying an affected state's law "would be that . . . States could do indirectly what they could not do directly—regulate the conduct of" out-of-state sources such as OCS operations.  *Ouellette*, 479 U.S. at 495.  Applying the law of an affected state also would "undermine the important goals of efficiency and predictability," because "application of numerous States' laws would only exacerbate the vagueness and resulting uncertainty."  *Id.* at 496.  The same holds true for oil pollution covered under the Clean Water Act and OPA, and for activities regulated by OCSLA.

OPA's savings clause, 33 U.S.C. §2718, does not preserve the State Plaintiffs' right to seek recovery under state law.  A savings clause does not save state law that is otherwise preempted, for example, because it conflicts with federal law.  *See Ouellette*, 479 U.S. at 493; *see also Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 869–74 (2000) (savings clause did not foreclose or limit operation of ordinary preemption principles); *cf. Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 230 (1986) ("it is hardly conceivable that Congress," through a savings clause, "could have intended that these diverse state statutes could be applied to remedy maritime torts occurring the world over").  OPA's savings clause, moreover, is textually limited to OPA itself and cannot save state law that conflicts with other federal laws like OCSLA, CZMA, or the Clean Water Act.  No other savings clause would help the State Plaintiffs, either.  For instance, although the Supreme Court ultimately held that the Clean Water Act's savings

clause preserves claims brought under the law of a <u>source state</u>, *Ouellette*, 479 U.S. at 497–500, the preservation of source state law is inapplicable here because the oil that allegedly harmed the State Plaintiffs was not discharged from a state, but from the OCS, a federal enclave where federal law applies.  Thus, in this instance, regardless of where the injury occurs, state law is preempted by federal law.

### F.    The State Plaintiffs Have Failed to State a Claim Under State Law

The State of Alabama's and State of Louisiana's claims against MOEX Offshore should be dismissed because those claims are either preempted by federal law or because the States fail to state a cause of action for their maritime and federal claims.  Further, all of the States' claims based on state law, including state law penalties, should be dismissed on the additional ground that the States have failed to state a claim under the relevant state statute or law.

In the interest of judicial efficiency, we have not included full briefing on the States' failures to set forth a viable claim for relief based on any of their nearly 20 state law-based theories against MOEX Offshore.  In the event the Court declines to dismiss Alabama's and Louisiana's state law-based claims on preemption grounds, MOEX Offshore respectfully submits that it should be permitted to file a supplemental response addressing the States' failure to plead any legally cognizable claim for relief whatsoever under state law.

## IV.    CONCLUSION

For the foregoing reasons, the claims in the State of Alabama and State of Louisiana Complaints against MOEX Offshore 2007 LLC should be dismissed in their entirety.

Dated:  June 3, 2011

Respectfully submitted,

_____/s/  John F. Pritchard_____
John F. Pritchard
john.pritchard@pillsburylaw.com
Edward Flanders

edward.flanders@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
1540 Broadway
New York, NY 10036-4039
Telephone (212) 858-1000
Facsimile (212) 858-1500

Christopher McNevin
chrismcnevin@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
725 South Figueroa Street, Suite 2800
Los Angeles, CA 90017-5406
Telephone (213) 488-7507
Fax (213) 629-1033

**ATTORNEYS FOR MOEX OFFSHORE 2007 LLC**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, pursuant to Pre-trial Order No. 12, I have caused the foregoing to be served on all counsel via the Lexis Nexis File & Serve system, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, who will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on June 3, 2011.


_____/s/___John F. Pritchard_____