UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, OF APRIL 20, 2010 | § § § | MDL NO. 2179 |
| | § | SECTION: J |
| THIS PLEADING APPLIES TO 10-4182, 10-4183 | § § | |
| | § | JUDGE BARBIER |
| | § § | MAGISTRATE JUDGE SHUSHAN |

**TRANSOCEAN'S RULE 12(b)(6) MOTION TO DISMISS THE STATE OF ALABAMA'S FIRST AMENDED COMPLAINT**

TO THE HONORABLE CARL J. BARBIER, United States District Judge:

Petitioners in Limitation and Defendants Transocean Offshore Deepwater Drilling Inc., Transocean Holdings LLC, Transocean Deepwater Inc. and Triton Asset Leasing GmbH (collectively "Transocean") respectfully submit Transocean's Rule 12(b)(6) Motion to Dismiss the State of Alabama's First Amended Complaint.

## I.

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

By the terms of Pre-Trial Order No. 11 [Case Management Order No. 1], this proceeding was separated into Pleading Bundles for the purpose of the filing of complaints, answers, and any Rule 12 motions. As to "Public Damage Claims," this Court directed that the parties meet and confer to discuss the desirability of a Master Complaint for "Public Damage Claims." By the terms of Pre-Trial Order No. 33, it was further ordered that Pleading Bundle C, as described in Section III(C) of CMO No. 1 (PTO No. 11), was to be clarified to provide as follows: "**Public Damage Claims.** This Pleading Bundle will include Claims brought by Governmental Entities

for, *inter alia*, loss of resources, loss of tax revenue, property damages, response or restoration costs, and civil penalties. Local public bodies or entities may voluntarily join or otherwise intervene into one administrative Master Complaint from Bundle C Claims, or may opt out of the Master Complaint and file their own separate individual Petitions or Complaints."

On April 5, 2011, the State of Alabama filed its First Amended Complaint. Transocean directs its Rule 12(b)(6) motion to the specific allegations of the State of Alabama's First Amended Complaint.

**II.**

**THE STATE OF ALABAMA'S FIRST AMENDED COMPLAINT**

The State of Alabama's First Amended Complaint alleges various causes of action against Transocean. These are:

(1) General Maritime Law (negligence, gross negligence and willful misconduct);

(2) OPA;

(3) State Common Law Claims (public nuisance, private nuisance, trespass, and fraudulent concealment); and

(4) Punitive damages under all claims.

In addition to these claims, the State of Alabama also seeks to recover damages and civil penalties under various State statutes, including the following:

(1) Civil penalties under the Alabama Environmental Management Act;

(2) Civil penalties for violation of the Alabama Water Pollution Control Act;

(3) Damages under the Alabama Water Pollution Control Act;

(4) Civil penalties under the Alabama Air Pollution Control Act;

(5) Civil penalties under the Alabama Hazardous Wastes Management Act; and

    (6) Civil penalties under the Alabama Solid Wastes Disposal Act.

As set forth in more detail by Transocean's Brief in Support of its Rule 12(b)(6) motion to dismiss, Transocean is entitled to a dismissal of the following State of Alabama claims asserted by its First Amended Complaint:

(1) All OPA claims as defined in 33 U.S.C. § 2702(b)(2) where the State has failed to present it claims pursuant to 33 U.S.C. § 2713;

(2) All general maritime law claims to the extent preempted or displaced by OPA;

(3) All state common law claims based on negligence, gross negligence and willful misconduct, public and private nuisance, trespass, and fraudulent concealment;

(4) All non-OPA economic loss claims where the State has not sustained physical damage to a proprietary interest under *Robins Dry Dock* and / or the equivalent state economic loss rule;

(5) All claims under Alabama's environmental statutes;

(6) All claims for punitive damages;

(7) All moratorium damage claims; and

(8) All stigma damage claims.

**III.**

**RULE 12(b)(6) STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b) (6). To survive a motion to dismiss, a plaintiff must plead facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*

*Iqbal*, 129 S. Ct. 1937, 1949 (2009). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "shown"—"that the pleader is entitled to relief." *Id.* at 1950 (citing FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court further explained that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. While legal conclusions can provide the framework of a complaint, "they must be supported by factual allegations." *Id.* at 1950. Accordingly, the *Iqbal* Court instructed that a two-step approach is necessary for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, courts must identify, and disregard, conclusory allegations, because they are "not entitled to the assumption of truth." *Id.* Second, upon identifying the well-pleaded factual allegations, courts "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

A motion to dismiss must be granted "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 557). The court should not "'strain to find inferences favorable to the plaintiffs'" or "accept 'conclusory allegations, unwarranted deductions, or legal conclusions'" to allow such a claim to proceed. *R2 Invests. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004)). Rather, this "basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier*, 503 F.3d at 401 (quoting *Twombly*, 550 U.S. at 557).

## IV.

## THE STATE OF ALABAMA'S CLAIMS AGAINST TRANSOCEAN MUST BE DISMISSED PURSUANT TO RULE 12(B)(6) AS THEY DO NOT RAISE A CLAIM OF ENTITLEMENT TO RELIEF FOR THE CAUSES OF ACTION ASSERTED

A motion to dismiss must be granted when the allegations in a complaint, even if true, do not raise a claim of entitlement to relief. For the reasons summarized below, the allegations in the State of Alabama's First Amended Complaint do not raise claims of entitlement to relief. Based upon the arguments and authorities contained in the Brief in Support of Transocean's Rule 12(b)(6) motion to dismiss the First Amended Complaint, filed contemporaneously with this motion, the State's claims should be dismissed with prejudice.[1]

### The OPA Claims Must Be Dismissed for the Failure to Satisfy OPA's Presentment Requirements

BP has been designated the "responsible party" under the Oil Pollution Act ("OPA") for the downhole release of oil from the Macondo Well. OPA's Section 2713 provides that all claims for removal costs or damages shall be presented first to the responsible party or guarantor of the source designated under Section 2714 of OPA.[2] Presentment of a claim in accordance with OPA's Section 2713 is a "mandatory condition precedent" for commencing an OPA action in court against a responsible party. OPA's presentment requirement is jurisdictional. In order for the State to file suit, it must first satisfy OPA's presentment requirement.

The allegations in the State's First Amended Complaint fail to establish that (1) the State's claims have been presented to the responsible party <u>and</u> (2) either the responsible party

---

1 This Motion contains a brief summary of Transocean's arguments, without citation to the applicable case, statutory, and other authorities supporting dismissal. Reference is made to Transocean's Brief which contains the full argument and authorities mandating dismissal.

2 Other owners of the Macondo Well have been designated as responsible parties for the discharges from the wellhead. Transocean, however, is a responsible party only for discharges of diesel from the rig on or above the surface of the water, if any.

has denied all liability for the claim or the claim has not been settled by any person by payment within ninety days after the latter of presentment or advertisement. Accordingly, Transocean is entitled to dismissal of the State's OPA claims for its failure to satisfy these presentment requirements.

**The State of Alabama's State Common Law Claims Must Be Dismissed As They Are Preempted or Displaced By OPA and By the General Maritime Law**

The claims at issue arise out of the operations of a semisubmersible drilling rig, the *Deepwater Horizon*, a vessel, which was operating in navigable waters in the Gulf of Mexico, well beyond any state's territorial waters. For this reason, all cognizable claims arising from the BP Oil Spill are subject to this Court's admiralty jurisdiction and accompanying federal maritime law, which preempts and / or displaces state common law.

There are three fundamental reasons why the State's state common law actions are preempted and/or displaced by federal law. First, general maritime law preempts or displaces all state common law claims, including negligence, gross negligence, nuisance, trespass, and fraudulent concealment, according to the Fifth Circuit's holding in *TESTBANK*, and its progeny, and in accord with the distinctive features of admiralty preemption.

Second, Congress has spoken comprehensively in the field of oil pollution damages by enacting OPA. Because OPA provides broad all-encompassing remedies for damages resulting from maritime pollution incidents, courts have found OPA to displace other laws, including general maritime law. No matter how artfully pleaded, the State's claims are cognizable under OPA, as they seek relief for precisely the types of damages Congress enumerated in OPA's Section 2702(b)(2). OPA, in conjunction with the general maritime law, preempts and/or

displaces all state common law causes of action, leaving only a narrowly defined authority for states to enact the mini-OPAs or similar solid waste disposal laws.

Third, because the BP Oil Spill arises out of exploration, drilling, and production related well operations in Mississippi Canyon Block 252—the location known as "Macondo"—OCSLA applies. Under OCSLA, federal law (whether OPA or general maritime law) preempts all state common law claims. State law may only apply as surrogate federal law if federal maritime law does not apply of its own force and the state law is not inconsistent with federal law. Here, there is no gap in federal law in which to apply state law as a surrogate. OPA and general maritime law apply to the exclusion of state common law.

Finally, OPA provides no savings provision that would permit the assertion of state common law causes of action for negligence, gross negligence, nuisance, trespass, and fraudulent concealment.

**The State's Claims for Fraudulent Concealment Must Be Dismissed Under State and/or Federal Law**

The State of Alabama's pleading in support of its "fraudulent concealment claim" does not meet the heightened requirements of Federal Rule of Civil Procedure 9(b), as it neglects to provide the time, place, or content of any alleged misrepresentation by Transocean. The allegations also fail to connect any particular statement regarding the condition of the *Deepwater Horizon* or its components to an individual speaker. Furthermore, the State has alleged no facts to show when, if ever, it was incumbent upon Transocean to disclose any information to the State, nor how Transocean should have done so. Because the State has failed to satisfy Rule 9(b), its claim for fraudulent concealment must be dismissed.

In the alternative, the State has failed to state a claim for fraudulent concealment under the laws of Alabama.

**To the Extent that Its Damage Claims Do Not Flow Directly From Physical Damage to a Proprietary Interest, The State's Federal Maritime and State Law Claims Are Barred By the *Robins Dry Dock* Rule**

To the extent that the State of Alabama asserts claims for damages which do not directly flow from physical damage to a proprietary interest, maritime and Alabama state law bar such damages under the *Robins Dry Dock* rule, and all claims asserting these damages should be dismissed. The seminal case of *Robins Dry Dock* and its Fifth Circuit equivalent, *TESTBANK*, preclude recovery for economic losses absent physical injury to a proprietary interest. The *Robins Dry Dock / TESTBANK* rule also has been followed by state courts in Alabama.

Based on the description of the State's alleged damages, it is apparent that certain of the State's claims do not flow directly from physical damage to a proprietary interest. Because the Fifth Circuit has held that, to be recoverable, the economic damages must have some direct link to a plaintiff's specific physical loss or damage, these claims must be dismissed.

**The State of Alabama's Environmental Claims Must be Dismissed**

OPA is the comprehensive remedy for the State's claims, but Alabama has not satisfied the presentment requirements of OPA. Further, OCSLA jurisdiction applies, and Alabama is not the adjacent state for purposes of filling in any gaps under OCSLA.

**The State's Claims for Punitive Damages Must Be Dismissed**

The State of Alabama's claim for punitive damages should be dismissed. In this case, federal maritime law determines—and ultimately limits—the ability of the State to recover punitive damages. And here OPA has supplanted the general maritime law, and, simply put, OPA disallows the recovery of punitive damages. Accordingly, all of the State's claims for punitive damages, whether based on state or general maritime law, or OPA, must be dismissed.

**All Moratorium Damage Claims Must Be Dismissed**

OPA only allows recovery of "damages" that result from an "incident." Under OPA, an "incident" is any occurrence or series of occurrences having the same origin and resulting in the discharge or substantial threat of discharge of oil. A responsible party may be liable under OPA only if the plaintiff's damages were caused by a pollution incident, *i.e.* the discharge or threatened discharge of oil.

With respect to moratorium-related claims, the alleged damages were not caused by the discharge of oil, but rather implementation of the moratorium. As such, those damages are not damages per Section 2702(b) of OPA because they do not result from the injury, destruction, or loss of real property, personal property, or natural resources resulting from the discharge of oil. These claims, therefore, must be dismissed.

**All Stigma Damages Must Be Dismissed**

To the extent that the State of Alabama seeks damages associated with the long-term stigma of the BP Oil Spill, its claims must be dismissed under the general maritime law and under OPA.

Under the common-law, there is a well-established requirement of proximate causation. This proximate cause requirement has been specifically held to apply under the general maritime law to bar stigma damages. Furthermore, Section 2702 of OPA, in conjunction with OPA's Section 2702(14), requires that the "discharge of oil" result in, or cause, the damages complained of—a proximate cause standard. The State of Alabama's stigma damages are simply too remote to meet this standard. Accordingly, the State's stigma damage claims should be dismissed.

V.

**CONCLUSION**

For the reasons set forth above and in the accompanying memorandum of law, Transocean respectfully requests that its Rule 12(6) Motion to Dismiss the State of Alabama's First Amended Complaint be granted.

Respectfully submitted,

By: /s/ Steven L. Roberts
Steven L. Roberts (Texas, No. 17019300)
Rachel Giesber Clingman (Texas, No. 00784125)
Kent C. Sullivan (Texas, No. 19487300)
Teri L. Donaldson (Florida, No. 784310)
Sutherland Asbill & Brennan LLP
1001 Fannin Street, Suite 3700
Houston, Texas 77002
Telephone: (713) 470-6100
Facsimile: (713) 654-1301
Email: steven.roberts@sutherland.com, rachel.clingman@sutherland.com, kent.sullivan@sutherland.com, teri.donaldson@sutherland.com

By: /s/ Kerry J. Miller
Kerry J. Miller (Louisiana, No. 24562)
Frilot, L.L.C.
1100 Poydras Street, Suite 3700
New Orleans, Louisiana 70163
Telephone: (504) 599-8169
Facsimile: (504) 599-8154
Email: kmiller@frilot.com

-and-

/s/ Edwin G. Preis, Jr.
Edwin G. Preis, Jr. (Louisiana, No. 10703)
Edward F. Kohnke, IV (Louisiana, No. 07824)
Preis & Roy PLC
102 Versailles Boulevard, Suite 400
Lafayette, Louisiana 70501
Telephone: (337) 237-6062
Facsimile: (337) 237-9129

-and-

601 Poydras Street, Suite 1700
New Orleans, Louisiana 70130
Telephone: (504) 581-6062
Facsimile: (504) 522-9129
Email: egp@preisroy.com, efk@preisroy.com

Of Counsel:

Brad D. Brian (California, No. 79001)
Allen M. Katz (California, No. 054933)
Munger Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071
Office: (213) 683-9100
Facsimile: (213) 683-5180, (213) 683-4018
E-Mail: brad.brian@mto.com, allen.katz@mto.com

Daniel O. Goforth (Texas, No. 08064000)
Goforth Geren Easterling LLP
4900 Woodway, Suite 750
Houston, TX 77056
Office: (713) 650-0022
Facsimile: (713) 650-1669
E-Mail: dangoforth@goforthlaw.com

John M. Elsley (Texas, No. 0591950)
Royston, Rayzor, Vickery & Williams LLP
711 Louisiana Street, Suite 500
Houston, TX 77002
Office: (713) 224-8380
Facsimile: (713) 225-9945
E-Mail: john.elsley@roystonlaw.com

Blane Crutchfield (Alabama, No. CRUTB4243)
Hand Arendall, LLC
11 North Water Street, Suite 30200
Mobile, Alabama
Office: (251) 694-6241
Facsimile: (251) 544-1611
E-Mail: bcrutchfield@handarendall.com

***Counsel for Transocean***

**CERTIFICATE OF SERVICE**

I hereby certify that on June 3, 2011, I electronically filed the foregoing with the Court's CM/ECF system and/or by using the LexisNexis File & Serve, in accordance with Pretrial Order No. 12 which will send a notice of filing to all counsel accepting electronic notice.

/s/ Kerry J. Miller