## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG | * | MDL NO. 2179 |
| "DEEPWATER HORIZON" IN THE | * | |
| GULF OF MEXICO, on APRIL 20, 2010 | * | |
| | * | JUDGE BARBIER |
| | * | |
| Relates to: *All Cases* | * | MAG. JUDGE SHUSHAN |
| | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

### TRIAL PLAN BRIEF
### SUBMITTED BY PLAINTIFFS
### IN RESPONSE TO THE COURT'S ORDER OF MAY 18, 2011

The Plaintiffs' Steering Committee, by and thru Liaison Counsel, respectfully submits the following Brief on Trial Plan Issues in response to the Court's Order[1] of May 18, 2011:

**MAY IT PLEASE THE COURT:**

As set forth in previous submissions,[2]  Plaintiffs believe that the Court can and should conduct a bench trial on common factual issues raised by the claims, cross-claims, 14(c) claims and third-party claims asserted in connection with the Transocean Limitation action, going to:

- The negligence, gross negligence, willful misconduct and/or unseaworthiness of the Transocean entities and/or the *Deepwater Horizon* in causing or contributing to the blowout, explosion and fire on April 20, 2010 and/or the ensuing oil spill;

- The knowledge or privity of the Transocean entities with respect to such negligence, gross negligence, willful misconduct or unseaworthiness;

---

[1] Doc 2402.

[2] *See* JOINT TRIAL PLAN [Doc 1951], and REPLY MEMORANDUM [Doc 2130], (as well as the Memorandum in Support of Limited Motion to Strike Jury Demand [Doc 1704-1]).

- The negligence, gross negligence and/or willful misconduct of the 14(c) Defendants in causing or contributing to the blowout, explosion and fire on April 20, 2010 and/or ensuing oil spill;

- The allocation of fault between and among such Defendants with respect to the blowout, explosion and fire on April 20, 2010;

- The allocation of fault between and among such Defendants with respect to the length and extent of the oil spill due to the well-control failure commencing April 20, 2010, and continuing thereafter due to an inability to cap the well at the source;

- The total number of barrels of oil released as a result of the negligence, gross negligence, willful misconduct and/or unseaworthiness of one or more Defendants, in causing or contributing to the well-control failure commencing April 20, 2010, and continuing thereafter due to an inability to cap the well at the source;

- Any other factual issues relating to the threshold question of whether one or more Defendants might be held liable for punitive damages to some or all of the Limitation Claimants, in relation to the blowout, explosion and fire on April 20, 2010 and/or the ensuing oil spill.

Plaintiffs believe that all such factual issues may be tried to the bench, as outlined further below.   The Court need not, Plaintiffs respectfully suggest, attempt to predict or formally determine the precise *res judicata* or collateral estoppel effects in advance of trial.  And, even assuming *arguendo* that some claimants, cross-claimants or third-party claimants might thereafter retain the right to try some or all issues in front of a jury, the Court should nevertheless proceed with the bench trial, (which is certainly necessary and proper as to a multitude of Limitation claims), as a matter of judicial economy.

With this introduction, and for the reasons stated below, Plaintiffs respectfully respond to the questions set forth by the Court.

**ALL FACT ISSUES COMMON TO THE CLAIMS, CROSS-CLAIMS, 14(C) CLAIMS, AND/OR THIRD-PARTY CLAIMS ASSERTED IN CONNECTION WITH THE TRANSOCEAN LIMITATION ACTION CAN BE TRIED TO THE BENCH**

The oil spill at issue constitutes a maritime tort because it occurred on navigable waters and arose from an incident that bears a significant relationship to traditional maritime activity.[3]

Rule 9(h) is a purely procedural provision which permits a plaintiff whose claim arises within the maritime jurisdiction of the Court to identify his claim as an admiralty claim in order to obtain the procedural benefits traditionally available under admiralty jurisdiction, such as the right to a bench trial.[4]   Rule 9(h) has no impact on, nor is it impacted by, what substantive law applies to that claim.[5]   In fact, it is not unusual to have a case designated under 9(h) in which the applicable law is something other than solely maritime law; including OPA.[6]

Therefore, even though some claims arising out of the *Deepwater Horizon* disaster might be brought pursuant to OPA, the facts and circumstances surrounding the incident also place those cases within the Court's admiralty jurisdiction, thereby allowing the plaintiff to designate the case under Federal Rule of Civil Procedure 9(h).

---

[3]*See generally,* OMNIBUS MEMORANDUM IN OPPOSITION TO MOTIONS TO DISMISS AMENDED B1 MASTER COMPLAINT [Doc 1821], at pp.21-30; *and,* SUPPLEMENT TO OMNIBUS MEMORANDA IN OPPOSITION TO THE CAMERON MOTIONS TO DISMISS [Docs 2121, 2202].

[4]*See generally,* In re Graham Offshore, 2000 WL 1263225, at p.*2 (E.D.La. 2000) (*citing,* T.N.T. Marine Serv., Inc. v. Weaver Shipyards & Dry Docks, Inc., 702 F.2d 585 (5th Cir.1983)); Romero v. Bethlehem Steel Corp., 515 F.2d 1249, 1252 (5th Cir. 1975) (holding that Rule 9(h) is the "device by which the [plaintiff] may claim the special benefits of admiralty procedures and remedies, including a nonjury trial, when the [complaint] show[s] that both admiralty and some other basis for federal jurisdiction exist"); Durden v. Exxon Corp., 803 F.2d 845, 849 n. 10 (5th Cir. 1986) (noting that Rule 9(h) "preserv[es] ... the *plaintiff's* right to choose the procedural consequences of a civil or admiralty action, by choosing the jurisdictional basis of the action and designating that basis in the complaint") (emphasis added); Fed.R.Civ.P. 9(h), ADVISORY COMMITTEE'S NOTE, 39 F.R.D. 69, 75 (1966); *see also,* Carey v. Bahama Cruise Lines, 864 F.2d 201, 206 (1st Cir.1988).

[5]Carey, *supra.*

[6]*See, e.g.,* Evergreen International, S.A. v. Norfolk Dredging Co., 531 F.3d 302 (4th Cir. 2008); GMD Shipyard Corp. v. M/V Athena Y, 2004 WL 2251670 (S.D.N.Y. 2004); National Shipping Co. of Saudi Arabia v. Moran Mid-Atlantic Corp., 924 F. Supp. 1436, 1446 (E.D. Va. 1996); *see also,* In re Glacier Bay, 746 F.Supp. 1379, 1383 -1384 (D.Alaska 1990) (TAPAA [one of the statutes upon which OPA is based] applied to oil spill claims despite the fact that the case also fell within the court's admiralty jurisdiction).

When, in this regard, maritime claims are joined with statutory or common law claims, the entire cause of action is subject to the maritime jurisdiction and procedural designations of a court sitting in admiralty.[7]

Although, pursuant to Pre-Trial Orders Nos. 24 and 25, numerous litigants who may have OPA claims have also simultaneously asserted claims for economic and/or other losses within the Transocean Limitation, it could be argued that even "pure OPA" claims would (or at least could, where voluntarily asserted) be subject to the procedures of Supplemental Admiralty Rule F.  Admiralty commentators have analyzed and endorsed this approach as both proper and practical.[8]   In particular, OPA expressly includes a "limitation of liability" provision for persons, including vessel owners, legally responsible for discharges of oil in the navigable waters of the

---

[7] *See generally,* FED. RULE CIV. PRO. 9(h)(1) ("If a claim for relief is within the admiralty or maritime jurisdiction and also within the court's subject-matter jurisdiction on some other ground, the pleading may designate the claim as an admiralty or maritime claim for purposes of Rules 14(c), 38(e), and 82 and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions"); FED. RULE CIV. PRO. 38(e) ("These rules do not create a right to a jury trial on issues in a claim designated as an admiralty or maritime claim under Rule 9(h)"); *see, e.g.,* Scarborough v. Clemco Industries, 391 F.3d 660, 665-666 (5th Cir. 2004) (finding admiralty jurisdiction to be proper and, thus, affirming the right to a bench trial and holding that because at least one of the tortfeasors was involved in traditional maritime activities giving rise to admiralty jurisdiction, the District Court properly sat in admiralty over all of the non-maritime claims and non-maritime tortfeasors); *citing,* Grubart v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 541, 115 S.Ct. 1043, 1052, 130 L.Ed.2d 1024 (1995) ("as long as one of the putative tortfeasors was engaged in traditional maritime activity, the allegedly wrongful activity will 'involve' such traditional maritime activity and will meet the second nexus prong.").

[8]*See, e.g.,* Ronald E. Kilroy, Making an Oily Mess Less Messy: Use of Rule F Concursus to Reduce Oil Spill Litigation Complexity, 2 ENVTL. L. 665, 690-691 (1996) (providing an overview of the historical development of Rule F); Patricia S. Schminke, The Oil Pollution Act of 1990: Has It Muddied the Waters of Liability Limitation? 5 U. BALT. J. ENVTL. L. 173 (1995) (arguing that Rule F should apply to OPA claims); Robert Force & Jonathan M. Gutoff, Limitation of Liability in Oil Pollution Cases: In Search of Concursus or Procedural Alternatives to Concursus, 22 TUL. MAR. L.J. 331, 362 (1998) (providing a detailed analysis and criticism of *MetLife* and arguing that Rule F should apply to OPA claims); Francis J. Gonynor, Six Years Before the Mast: The Evolution of the Oil Pollution Act of 1990, 9 U.S.F. MAR. L. J. 105, 108 (1996); Antonio J. Rodriguez & Paul A.C. Jaffe, The Oil Pollution Act of 1990, 15 TUL. MAR. L.J. 1 (1990); *and,* Daniel G. Rauh, Soverign Immunity, Rule F, and the Oil Pollution Act of 1990: The Eleventh Circuit Attempts to Clear the Waters in *Bouchard Transportation Co. v. Updegraff,* , 23 TUL. MAR. L.J. 541 (Spring 1999) (providing a detailed analysis and criticism of *Bouchard* and arguing that Rule F should apply to OPA claims).

United States.[9]  Not only does OPA adopt the concept of limited liability, it expressly preempts the substantive portions of the Limitation of Liability Act of 1851 (Limitation Act) with respect to OPA claims against Responsible Parties.[10]

However, OPA contains no procedural mechanism to effect the Act's limited liability. Nor is there anything within OPA or its legislative history that makes any reference to the procedures contained in Rule F of the Supplemental Rules.  As with any limitation proceeding, a concursus procedure is both a fair and necessary requirement to achieve OPA's goals of limiting liability.  It avoids the possibility of inconsistent verdicts on the issues of the responsible party's liability, the right to limit, and the limitation amount.  It also allows the responsible party to avoid the expense of defending a multitude of claims in a multitude of courts.[11]

Furthermore, the objective of concursus is not only to achieve fairness to responsible parties and their guarantors, but also to achieve fairness to claimants.  In the absence of notice to all claimants and an opportunity for them to file their claims in the limitation proceeding in which the fund will be distributed, the claimants in the suit may exhaust the fund to the detriment of others who have valid claims that were not presented in this suit.  A concursus procedure is a system that assures that every claimant has an opportunity to recover at least its pro-rata share from the limitation fund established by the responsible party.[12]  That a concursus is inherent in limitation proceedings is also evidenced by the fact that all limitation regimes, including those that contemplate claims being brought in courts of different countries, provide for a concursus of

---

[9]33 U.S.C. § 2704.

[10]33 U.S.C. § 2702(a).

[11]*See* In Search of Concursus or Procedural Alternatives to Concursus, 22 TUL. MAR. L.J. at 334-335.

[12]*See* In Search of Concursus or Procedural Alternatives to Concursus, 22 TUL. MAR. L.J. at 367.

claims.[13]   As one commentator noted, "it is impossible to imagine how limitation would work, regularly or otherwise, without a concursus."[14]   Although Supplemental Admiralty Rule F originated from language and practice involving the Limitation Act of 1851, Rule F provides a self-contained mechanism for vessel owners to limit their liability as authorized by *any* statute, not just those brought pursuant to the Limitation Act of 1851.[15]   The plain language of the Rule is broad enough to include limitation under OPA.[16]   Therefore, independent of the Limitation Act, Rule F provides a complete procedure for achieving a concursus of claims by anyone seeking limitation pursuant to statute.

Numerous provisions of OPA, including the provision stating that the Act is not intended to affect admiralty jurisdiction[17] – along with OPA's legislative history[18] – provide a strong indication that Congress contemplated that actions under OPA would fall within the Court's admiralty or maritime jurisdiction.   Moreover, an incident arising out of the discharge of oil from a vessel on navigable waters would ordinarily come within the admiralty jurisdiction of the Federal Courts because the incident would have the required locus (navigable waters) and maritime nexus (the discharge would affect maritime commerce and would result from the most traditional maritime activity imaginable, the operation of a vessel).   In addition, commentary

---

[13]*See* In Search of Concursus or Procedural Alternatives to Concursus, 22 TUL. MAR. L.J. at 369, (*citing,* the International Convention of Limitation of Liability for Maritime Claims and the International Convention on Civil Liability for Oil Pollution Damage).

[14]*See* In Search of Concursus or Procedural Alternatives to Concursus, 22 TUL. MAR. L.J. at 370.

[15]Rule F provides, "any vessel owner may file a complaint . . . for limitation of liability pursuant to statute. . ."

[16]In Search of Concursus or Procedural Alternatives to Concursus, 22 TUL. MAR. L.J. at 360.

[17]33 U.S.C. § 2751.

[18]See H.R. Conf. Rep. No. 101-653, at 159 (1990), reprinted in 1990 U.S.C.C.A.N. 779, 838 ("[section 6001] is intended to clarify that the House bill does not supersede [admiralty] law, nor does it change the jurisdiction of the District Courts under Section 1333 of title 28, United States Code (the codified section of the Judiciary Act of 1789) [establishing the admiralty jurisdiction of the district courts]").

from the agency charged with supervising OPA's liability provisions[19] and court opinions[20] have concluded that actions under OPA come within the admiralty and maritime jurisdiction of the Court.[21]

Indeed, OPA itself does not expressly provide for trial by jury.  While a few non-binding decisions have indicated that litigants may be afforded jury trial rights with respect to claims brought under OPA,[22]  it is significant that **(i)** none of those cases, to Plaintiffs' knowledge, have been found to arise within the Court's admiralty and maritime jurisdiction;[23]  and **(ii)** even those decisions conclude that some claims under OPA do not implicate the right to trial by jury.[24]

With respect, moreover, to the notion that BP's cross-claim against Cameron might provide an independent right to a jury trial, (which is denied), it is settled within the Fifth Circuit that the plaintiff's 9(h) non-jury designation controls even with respect to counter-claims or

---

[19]*See* NATURAL RESOURCE DAMAGE ASSESSMENTS, 59 Fed. Reg. 1062, 1086 (1994) (The Commerce Department noting, in response to a comment regarding the right to a jury trial in the assessment of damages to natural resources, that "most OPA actions are likely to be brought in the court's admiralty jurisdiction, where there is no right to jury trial").

[20]*See* FOOTNOTE 6, *supra.*

[21]In Search of Concursus or Procedural Alternatives to Concursus, 22 TUL. MAR. L.J. at 365-66.

[22]Plaintiffs are not aware of controlling precedent from the U.S. Fifth Circuit or the Supreme Court regarding the right to a jury trial under OPA.

[23]*See, e.g.,* South Port Marine, LLC v. Gulf Oil Limited Partnership, 234 F.3d 58, 64 (1st Cir. 2000) (upholding the plaintiff's right to a trial by jury, the Court held that "South Port's OPA claim is analogous to a claim under the common law at the time of the Seventh Amendment's ratification in 1791," as opposed to a claim in admiralty, and therefore "South Port was entitled to trial by jury"); U.S. v. Viking Resources, Inc., 607 F.Supp.2d 808 (S.D.Tex. 2009) (jury trial right over some claims arising from an oil spill that originated from a "tank battery" located on land); Clausen v. M/V New Carissa, 171 F.Supp.2d 1127, 1135 (D.Or. 2001) (plaintiff entitled to jury trial under OPA based on the court's conclusion that the claims at issue sounded in law, and not in admiralty).

[24] Viking Resources, supra, 607 F.Supp.2d at 829-830 (no jury trial right to OPA claim for removal costs, which are in the nature of an equitable remedy); *see also,* U.S. v. Wade, 653 F.Supp. 11, 13 (E.D.Pa. 1984) (noted in *Viking Resources*) (finding the natural resource damages remedy under CERCLA to be equitable in nature).

third-party demands based in "common law" or some other theory which would otherwise grant a

right to trial by jury on that particular claim.[25]

The existence of maritime and admiralty jurisdiction over claims asserted by Plaintiffs

provides a jurisdictional and procedural basis for the plaintiff to designate the entire action as a

bench trial under Federal Rule of Civil Procedure 9(h). *See* Scarborough, supra, 391 F.3d at 665-

666 (because at least one of the tortfeasors was involved in traditional maritime activities giving

rise to admiralty jurisdiction, the District Court properly sat in admiralty over all of the non-

maritime tortfeasors and non-maritime claims);[26] Becker v. Tidewater, Inc., 405 F.3d 257, 259

(5th Cir. 2005) (*"Becker II"*) (noting that "it is well settled that the plaintiff is master of his

complaint" and, if properly pled, controls whether a right to a jury trial exists).

---

[25]William P. Brooks Constr. Co. v. Guthrie, 614 F.2d 509, 511 (5th Cir. 1980) (despite the defendant's cross-claim, the presence of admiralty jurisdiction disposes of the defendant's claim of a right to jury trial); Harrison v. Flota Mercante Grancolombiana, S.A., 577 F.2d 968, 987 (5th Cir. 1978) (holding that the plaintiff's Rule 9(h) election prohibited a jury trial of legal claims raised by defendants in a third-party complaint stating, in part, that "we refuse to permit a third-party defendant to emasculate the election given to the plaintiff by Rule 9(h) by exercising the simple expedient of bringing in a fourth-party defendant"); *see also, e.g.,* Windsor Mount Joy Mut. Ins. Co. v. Johnson, 264 F.Supp.2d 158, 162 (D.N.J.2003) (concluding that plaintiff's Rule 9(h) election to proceed in admiralty jurisdiction could not be "undone ... through the assertion of a counterclaim that might have been subject to the Court's jurisdiction under Section 1332 and a jury trial if brought in a separate action"); Camrex (Holdings) Ltd. v. Camrex Reliance Paint Co., 90 F.R.D. 313, 317 (E.D.N.Y.1981) (concluding that a "plaintiff's election to sue on an admiralty or maritime claim as the basis for federal jurisdiction binds the parties in the lawsuit to the inevitable procedural consequence of a court trial, ... even where a 'legal' counterclaim has been interposed" (citation omitted)); Arkwright-Boston Mfrs. Mut. Ins. Co. v. Bauer Dredging Co., 1978 AMC 208 (S.D.Tex. 1977) (noting that where "a plaintiff files his complaint in admiralty, a defendant may not demand a jury trial for a counterclaim which, had the defendant been the first to the courthouse, would have been tried to a jury").

[26]The Supreme Court emphasized in *Grubart* that the nexus test is not meant to exclude broad swathes of activity; approving of the notion that "virtually every activity involving a vessel on navigable waters would be a traditional maritime activity sufficient to invoke maritime jurisdiction." Taghadomi v. U.S., 401 F.3d 1080, 1087 (9th Cir. 2005); *citing,* Grubart, supra, 513 U.S. at 542, 115 S.Ct. at 1052.

**FACT ISSUES COMMON TO THE UNITED STATES' CLAIMS AND CLAIMS IN LIMITATION CAN BE CONSOLIDATED FOR TRIAL AND TRIED TO THE BENCH UNDER FED. RULE CIV. PRO. 42**

The Plaintiffs' Steering Committee defers to the United States to determine whether it desires to consolidate some or all of its claims for the trial of certain issues with Claimants in the Limitation before the Court in the trial commencing in February of 2012.  However, to the extent the United States desires to consolidate some or all of its claims, Plaintiffs respectfully suggest that the limitation, liability, negligence, gross negligence, willful misconduct, fault allocation and volume of oil issues outlined above – at least to the extent they are common to both the claims of the United States and the claims of the Claimants in Limitation – can be consolidated and tried to the bench under the Federal Rule of Civil Procedure 42.

As outlined in Plaintiffs' original Memorandum in Support of Joint Trial Plan,[27] the Court has broad authority and discretion both as a Court sitting in Admiralty and pursuant to Rule 42 to consolidate and sever common issues for trial.[28]

---

[27]Doc 1951.

[28] *See generally,* MANUAL FOR COMPLEX LITIGATION, FOURTH, §11.631; Jenkins v. Raymark Indus., Inc., 782 F.2d 468, 473 (5th Cir. 1986); Mullen v. Treasure Chest Casino, LLC, 186 F.3d 620, 628 (5th Cir. 1999); In re Chevron U.S.A., 109 F.3d 1016, 1021 (5th Cir. 1997); In Re Air Crash Disaster at Florida Everglades on December 29, 1972, 549 F.2d 1006, 1012-1014 (5th Cir. 1977) ("The trial court's managerial power is especially strong and flexible in matters of consolidation"; the purpose is tri-fold: to "eliminate unnecessary repetition and confusion" within the cases; to conserve the resources of the litigants and the court in the case at bar; and to conserve judicial resources for other litigants in other cases); *see also, e.g.,* Caytrans BBC, LLC v. Equipment Rental and Contractors Corp., 2009 WL 3248044 *2 (S.D.Ala. 10/6/09) ("Based on considerations of efficiency, judicial economy, the risk of inconsistent rulings on common questions, the burden on the parties and the court, and the relative expense of proceeding separately versus together, consolidation of these actions would plainly streamline these proceedings and eliminate unnecessary repetition and confusion. Simply stated, it would be far more sensible and efficient to litigate all issues of fault and liability arising from the August 23, 2008 incident aboard the M/V BBC ARAMIS in a single proceeding than to do so piecemeal in multiple actions.  The discretion of the court to consolidate is not limited to the consolidation of admiralty claims, but can include the consolidation of maritime claims and claims at law"); Parsons Mills, Inc. v. Companhia Portuguese De Transportes Maritima S.A.R.L., 82 F.R.D. 331, 333 (D.C.N.Y. 1978) ("the consolidation of an action at law and an admiralty suit [under Fed. R. Civ. P. 42(a)] will save trial time and make for consistency and efficiency in the disposition of closely related disputes arising out of the same transaction or mishap … only by the decision of common issues of fact by a single trier of fact can the potential benefits of such consolidation be realized fully").

As outlined above, Plaintiffs believe that these issues can be tried to the bench, by virtue of the maritime nature of the tort from which the Limitation Action, the Claims in Limitation, and the claims of the United States all arise.  Even assuming *arguendo* that – outside of the admiralty context – OPA and/or the Clean Water Act would afford one or more of the defendants the right to invoke a jury trial with respect to the claims and remedies sought by the U.S. in Civil Action No. 10-4563, Plaintiffs believe that the United States has the right to invoke the admiralty jurisdiction of the Court and to proceed on such claims without a jury.

## THE COURT HAS BROAD DISCRETION TO SEVER AND CONSOLIDATE ISSUES FOR TRIAL PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 42

As noted, the Court has broad discretion, both in Admiralty and under Rule 42, to sever and consolidate issues for trial.  And, Plaintiffs would respectfully urge, the Court should likely refrain from attempting to determine the precise contours of *res judicata* or collateral estoppel effects in advance of trial.

Nevertheless, in response to the Court's request, the plaintiffs would suggest that *Lexecon*[29]  likely prevents the consolidation and trial of actions filed wholly outside of the Transocean Limitation in a venue other than the Eastern District of Louisiana.

There may also be cases in which the *plaintiff* has properly invoked the right to a trial by jury on some or all issues.

---

[29]Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 118 S.Ct. 956, 140 L.Ed.2d 62 (1998).  The Manual for Complex Litigation, Fourth suggests several solutions to the *Lexecon* problem that would enable the Court to try such actions, pursuant to the consent of the parties, or re-filing by plaintiffs. *See* COMPLEX MANUAL, §20.132, pp.223-225.

The Court, although perhaps empowered to consolidate for trial, should likely sever and/or otherwise reserve the trial of individual damage issues (*i.e.* specific causation and *quantum*), whether private economic, personal injury, natural resource damages, or quantification of civil penalties or punitive damages which may be owed.[30]

Finally, Plaintiffs would suggest that the Court might consider deferring the Phase Three issues, (*i.e.* clean-up, containment and response), until some of the science on medical monitoring and/or "fate and transport" issues has a little more time to mature.

TEST TRIALS ON SPECIFIC CAUSATION, COMPENSATORY DAMAGES AND PUNITIVE DAMAGES SHOULD FOLLOW THE PHASE ONE AND TWO TRIAL; TO BE FOLLOWED BY GOVERNMENT (NON-NRD) CLAIMS; TO BE FOLLOWED BY A "PHASE THREE" LIABILITY TRIAL; TO BE FOLLOWED BY ADDITIONAL INDIVIDUAL DAMAGE TRIALS, AND NATURAL RESOURCE DAMAGE CLAIMS

It is difficult, at this point, to set forth a comprehensive plan for what should occur beyond the February 2012 Trial, but – absent unforeseen circumstances, and subject to the Court's rulings on issues such as *res judicata,* collateral estoppel, jury trial rights, and class certification – Plaintiffs believe that things should generally proceed along the following time-line:

- OPA and other economic Test Cases

- Government Claims for Loss of Tax Revenue, Restoration, Response and other non-NRD Claims

- "Phase Three" Liability Trial (for Post-April 20, 2010 exposure, personal injury, medical monitoring)

---

[30]These issues could be tried in the context of a select group of "test" cases, as originally proposed, or otherwise.

- Additional Damage Trials (if necessary)

- Trial of Natural Resource Damages ("NRD") Claims

This <u>4th</u> day of <u>June,</u> <u>2011</u>.

Respectfully submitted,


   /s/   Stephen J. Herman                                                                                   /s/ James Parkerson Roy

**Stephen J. Herman**, La. Bar No. 23129        **James Parkerson Roy**, La. Bar No. 11511

**HERMAN HERMAN KATZ & COTLAR LLP**      **DOMENGEAUX WRIGHT ROY & EDWARDS LLC**

820 O'Keefe Avenue                                      556 Jefferson Street, Suite 500

New Orleans, Louisiana 70113                      Lafayette, Louisiana 70501

Telephone: (504) 581-4892                           Telephone: (337) 233-3033

Fax No. (504) 569-6024                                 Fax No. (337) 233-2796

E-Mail: **sherman@hhkc.com**                        E-Mail: **jimr@wrightroy.com**

*Plaintiffs Liaison Counsel*                            *Plaintiffs Liaison Counsel*


### PLAINTIFFS' STEERING COMMITTEE

| | |
|---|---|
| Brian H. Barr<br>LEVIN, PAPANTONIO, THOMAS, MITCHELL,<br>ECHSNER & PROCTOR, PA<br>316 South Baylen St., Suite 600<br>Pensacola, FL 32502-5996<br>Office:  (850) 435-7045<br>Telefax: (850) 436-6187<br>E-Mail: **bbarr@levinlaw.com** | Robin L. Greenwald<br>WEITZ & LUXENBERG, PC<br>700 Broadway<br>New York, NY  10003<br>Office: (212) 558-5802<br>Telefax: (212) 344-5461<br>E-Mail:  **rgreenwald@weitzlux.com** |
| Jeffrey A. Breit<br>BREIT DRESCHER & IMPREVENTO<br>999 Waterside Drive, Suite 1000<br>Norfolk, VA 23510<br>Office:  (757) 670-3888<br>Telefax: (757) 670-3895<br>E-Mail: **jbreit@bdbmail.com** | Rhon E. Jones<br>BEASLEY, ALLEN, CROW, METHVIN, PORTIS &<br>MILES, P. C.<br>218 Commerce St., P.O. Box 4160<br>Montgomery, AL 36104<br>Office: (334) 269-2343<br>Telefax: (334) 954-7555<br>E-Mail:  **rhon.jones@beasleyallen.com** |
| Elizabeth J. Cabraser<br>LIEFF, CABRASER, HEIMANN &<br>BERNSTEIN, LLP<br>275 Battery Street, 29th Floor | Matthew E. Lundy<br>LUNDY, LUNDY, SOILEAU & SOUTH, LLP<br>501 Broad Street<br>Lake Charles, LA  70601 |

San Francisco, CA  94111-3339
Office:  (415) 956-1000
Telefax: (415) 956-1008
E-Mail:  ecabraser@lchb.com

Philip F. Cossich, Jr.
COSSICH, SUMICH, PARSIOLA & TAYLOR
8397 Highway 23, Suite 100
Belle Chasse, LA  70037
Office:  (504) 394-9000
Telefax: (504) 394-9110
E-Mail:  pcossich@cossichlaw.com

Robert T. Cunningham
CUNNINGHAM BOUNDS, LLC
1601 Dauphin Street, P. O. Box 66705
Mobile, AL  36660
Office:  (251) 471-6191
Telefax: (251) 479-1031
E-Mail:  rtc@cunninghambounds.com

Alphonso Michael "Mike" Espy
MORGAN & MORGAN, P.A.
188 East Capitol Street, Suite 777
Jackson, MS 39201
Office: (601) 949-3388
Telefax: (601) 949-3399
E-Mail:  mike@mikespy.com

Calvin C. Fayard, Jr.
FAYARD & HONEYCUTT
519 Florida Avenue, SW
Denham Springs, LA  70726
Office:  (225) 664-4193
Telefax: (225) 664-6925
E-Mail:  calvinfayard@fayardlaw.com

Ervin A. Gonzalez
COLSON HICKS EIDSON
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Office: (305) 476-7400
Telefax: (305) 476-7444
E-Mail:  ervin@colson.com

Office:  (337) 439-0707
Telefax: (337) 439-1029
E-Mail:  mlundy@lundylawllp.com

Michael C. Palmintier
deGRAVELLES, PALMINTIER,
HOLTHAUS & FRUGE'
618 Main Street
Baton Rouge, LA  70801-1910
Office:  (225) 344-3735
Telefax: (225) 344-0522
E-Mail:  mpalmintier@dphf-law.com

Paul M. Sterbcow
LEWIS, KULLMAN, STERBCOW & ABRAMSON
601 Poydras Street, Suite 2615
New Orleans, LA  70130
Office:  (504) 588-1500
Telefax:  (504) 588-1514
E-Mail:  sterbcow@lksalaw.com

Scott Summy
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX  75219
Office:  (214) 521-3605
Telefax: (214) 599-1172
E-Mail:  ssummy@baronbudd.com

Mikal C. Watts (PSC)
WATTS GUERRA CRAFT, LLP
Four Dominion Drive, Building 3, Suite 100
San Antonio, TX 78257
Office: (210) 447-0500
Telefax: (210) 447-0501
E-Mail:  mcwatts@wgclawfirm.com

## CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that the above and foregoing Brief will be served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing will be electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, this 4th day of June, 2011.

/s/  James Parkerson Roy and Stephen J. Herman