UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill By The Oil Rig "Deepwater Horizon" In the Gulf Of Mexico, Of April 20, 2010 | § § § § § § § § | MDL No. 2179<br><br>Section: J<br><br>Judge Carl J. Barbier<br><br>Magistrate Judge Shushan |
| Applies to: All Cases | | |

**TRANSOCEAN'S BRIEF IN RESPONSE TO THE COURT'S ORDER RE: REQUESTED BRIEFING ON TRIAL PLAN ISSUES [REC. DOC. 2402]**

Petitioners in Limitation, Transocean Offshore Deepwater Drilling Inc., Transocean Holdings LLC, Transocean Deepwater Inc. and Triton Asset Leasing GmbH (collectively "Transocean" or the "Transocean Petitioners") respectfully submit this brief on trial plan issues as requested by the Court [Rec. Doc. 2402].

In summary, Transocean believes that the Court can and should conduct a bench trial on common factual issues raised by the claims, cross-claims, 14(c) claims, and third-party claims asserted in connection with, and consolidated with, Transocean's Limitation Action. Below are the questions posed by the Court and Transocean's summary responses.

1. **Are there fact issues common to the claims, cross-claims, 14(c) claims and/or third-party claims asserted in connection with the Transocean limitation action claims (No. 10-2771) that cannot be tried by the Court in a bench trial without a jury in the trial scheduled to commence in February 2012?**

    No. Common fact issues relative to the following can and should be tried to the bench without a jury:

    > (1) the loss of well control at the Macondo Well and the ensuing fire and explosion on the MODU *Deepwater Horizon* on April 20, 2010, the sinking of the MODU *Deepwater Horizon* on April 22, 2010, and the initiation of the release of

1

oil from the Macondo Well during those time periods (collectively, the "**Incident**");

(2) "**Source Control**" issues consisting of issues pertaining to the conduct of various parties, third parties, and non-parties regarding stopping the release of hydrocarbons stemming from the Incident from April 22, 2010 through approximately September 19, 2010;

(3) "**Quantification of Discharge**" issues consisting of issues pertaining to the amount of oil actually released into the Gulf of Mexico as a result of the Incident from the time when these releases began until the Macondo Well was capped on approximately July 15, 2010 and then permanently cemented shut on approximately September 19, 2010;

(4) "**Containment**" issues pertaining to the efforts by various parties, third parties, and non-parties aimed at containing oil discharged as a result of the Incident, and;

(5) "**Migration**" issues pertaining to the migration paths and end locations of oil released as a result of the Incident as carried by wind, currents, and other natural forces and as affected by efforts to contain or direct this migration.

2. **Are there fact issues common to both United States' claims (No. 10-4563) and PSC-managed claims that cannot be consolidated for trial and tried to the bench in the limitation action (No. 10-2771) pursuant to Fed. R. Civ. P. 42?**

The operative facts relative to: (1) the Incident; (2) Source Control; (3) Quantification of Discharge; (4) Containment, and; (5) Migration, as set forth above, are common to the United States' claims and the PSC-managed claims, and can and should be consolidated and tried to the bench without a jury. As discussed below, however, there some are factual and legal issues relative to the United States' claims that are not common to the Limitation Trial. These non-common issues should be reserved for subsequent proceedings.

3. **What issues in cases assigned to MDL 2179 cannot be severed and consolidated for trial pursuant to Fed. R. Civ. P. 42?**

As Transocean is not a party to all cases consolidated in MDL-2179, it is unable to provide the Court with an exhaustive list of issues that cannot be severed and

2

consolidated for trial pursuant to Fed. R. Civ. P. 42. An illustrative list of the issues raised in cases filed against Transocean that are not subject to severance and consolidation for a Rule 42 common issue trial includes:

- Individual damage issues (i.e. specific causation and quantum);

- Factual and legal issue of whether Transocean is an "operator" of the Macondo well under the Clean Water Act ("CWA"), or only an "operator" of the *Deepwater Horizon*;

- Factual and legal issue of whether BP is also an "operator" of the Deepwater Horizon under the CWA;

- Factual and legal issue under the CWA of whether the oil discharged into the Gulf of Mexico was discharged from the well or from the vessel;

- Factual and legal issues under the Endangered Species Act;

- Factual and Legal issues relative claims under the Racketeer Influenced and Corrupt Organizations Act (RICO);

- Factual and legal issues relative to Vessels of Opportunity claims.

4. **For those issues in cases assigned to MDL 2179 that cannot be tried by the Court in a bench trial without a jury, what alternative, manageable and efficient trial plan should be used?**

The February 2012 Limitation Trial is structured as a bench trial on common factual issues relative to: (1) the Incident; (2) Source Control; (3) Quantification of Discharge; (4) Containment, and; (5) Migration. The non-common issues should be severed and reserved for subsequent proceedings. For the reasons stated below, the common issues can be tried to the bench without a jury, and there is no need to formulate an alternative trial plan for the February 27, 2012 Limitation and Liability Trial from Transocean's perspective.

## THE TRIAL PLAN

The Trial Plan outlined by the Court at the May 5, 2011, status conference contemplates a single adjudication of all common issues and facts related to the general liability of the defendants, third-parties, and non-parties that may be tried to the bench without a jury. The Trial will likely be conducted in three phases, with each phase comprised of the presentation of evidence and consideration of the related legal questions pertaining to the phase issues. The Trial should also include the claims or elements of claims, and defenses thereto, by the United States common with the phase issues. The phases will be structured as follows:

- **Phase One** will address issues arising out of the conduct of various parties, third parties, and non-parties allegedly relevant to the loss of well control at the Macondo Well and the ensuing fire and explosion on the MODU *Deepwater Horizon* on April 20, 2010, the sinking of the MODU *Deepwater Horizon* on April 22, 2010, and the initiation of the release of oil from the Macondo Well during those time periods (collectively, the "Incident"). Phase One will include issues asserted in or relevant to counterclaims, cross-claims, third-party claims and/or comparative fault defenses, as appropriate. **Phase One should also include the claims, or elements of claims, and defenses thereto, by the United States common with Phase One issues**.

- **Phase Two** will address: (1) "Source Control" issues consisting of issues pertaining to the conduct of various parties, third parties, and non-parties regarding stopping the release of hydrocarbons stemming from the Incident from April 22, 2010 through approximately September 19, 2010, and; (2) "Quantification of Discharge" issues consisting of issues pertaining to the amount of oil actually released into the Gulf of Mexico as a result of the Incident from the time when these releases began until the Macondo Well was capped on approximately July 15, 2010 and then permanently cemented shut on approximately September 19, 2010. Phase Two will include issues asserted in or relevant to counterclaims, cross-claims, third-party claims and/or comparative fault defenses, as appropriate. **Phase Two should also include the claims, or elements of claims, and defenses thereto, by the United States common with Phase Two issues.**

- **Phase Three** will address: (1) issues pertaining to the efforts by various parties, third parties, and non-parties aimed at containing oil discharged as a result of the Incident by, for example, controlled burning, application of dispersants, use of booms, skimming, etc., and; (2) issues pertaining to the migration paths and end locations of oil released as a result of the Incident as carried by wind, currents,

4

and other natural forces and as affected by efforts to contain or direct this migration. Phase Three will include issues asserted in or relevant to counterclaims, cross-claims, third-party claims and/or comparative fault defenses, as appropriate. **Phase Three should also include the claims, or elements of claims, and defenses thereto, by the United States common with Phase Three issues, if any.**

The Court's determination of liability issues and allocations should be made from cumulative evidence common to the claims, cross claims, 14(c) claims and third party claims asserted in connection with the Limitation Action. This cumulative evidence implicates overlapping risks, witnesses, events, and other facts, which should be tried only once, and the record should be held open between the phases.

## TRIAL PLAN ISSUES

**1. ALL FACT ISSUES COMMON TO THE CLAIMS, CROSS-CLAIMS, 14(C) CLAIMS, AND THIRD-PARTY CLAIMS ASSERTED IN CONNECTION WITH THE TRANSOCEAN LIMITATION ACTION CAN AND SHOULD BE TRIED TO THE BENCH**

As an Admiralty Court presiding over a Limitation Action, the District Court has the authority and discretion to try all issues related to the core Limitation Action. A District Court presiding over a limitation action may elect to order a common issue trial on issues such as privity and seaworthiness, liability, and allocation of fault, and while a limitation action is pending, "there is no right to a jury trial." *In re Mississippi Limestone Corp.*, No. 4:09-CV-00036, 2010 WL 4174631 (N.D. Miss 10/7/2010) citing Fed. R. Civ. P. 38(e) (providing that there is no right to a jury of issues in an admiralty or maritime action).

Further, the Limitation Action is consolidated with an MDL consisting of maritime mass-tort economic loss claims and wrongful death and personal injury cases, all of which are designated Rule 9(h). As such, the District Court has the authority and discretion to structure a single trial on liability issues and allocations of fault arising form common fact issues. *See* Fed. R. Civ. P. 42(a) and (b); *see also* MANUAL FOR COMPLEX LITIGATION, FOURTH, §22.93.

Here, Plaintiffs' claims are designated Rule 9(h) admiralty claims. For example:

- The Master Claim in Limitation and Master Complaint, Cross-Claim and Third Party Complaint for Private Economic Losses in Accordance with PTO NO. 11 [CMO No. 1] Section III (B1) ["B1 Bundle"], filed on behalf of Claimants, individuals and/or entities that have suffered property losses, economic damages, and/or other costs (including removal costs) as a result of the Incident of April 20, 2010 and the BP oil Spill, designated the case as an admiralty or maritime case as provided for in Rule 9(h)(1) of the Federal Rules of Civil Procedure. [Rec. Doc. 879].

- The First Amended B1 Master Claim/Master Complaint designated the case as an admiralty or maritime case as provided for in Rule 9(h)(1) of the Federal Rules of Civil Procedure. [Rec. Doc. 1128].

- The Master Complaint in Accordance with PTO No. 11 [Case Management Order No. 1] Section III.B(3) ["B3 Bundle"], filed on behalf of Plaintiffs seeking damages for physical injuries, costs of future medical screening and monitoring, the implementation of a medical screening and monitoring program and other damages resulting from clean-up efforts after the Incident of April 20, 2010. [Rec. Doc. 881], designated the case as an admiralty or maritime case within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. [Rec. Doc. 881 at cover page and p. 21].

- In addition, other claims have been filed in the Limitation proceedings against Transocean by other Plaintiff/Claimants under Civil Action No. 10-2771, as well as short form joinder forms in Civil Action No. 10-8888. By Court Order, these claims are deemed an intervention into one of the Master Complaints, and therefore carry the Rule 9(h) designations of the Master Complaints.[1]

Transocean adopted Plaintiffs' Rule 9(h) elections in its Rule 14(c) third-party tender of Plaintiffs' claims.[2]

---

[1] This Court signed Pre-trial Order No. 11 [Case Management Order No. 1] dated October 19, 2010, [Rec. Doc. 411-1], MDL No. 2179, by which the Court directed that Master Complaints be filed by December 15, 2010 and that Pleading Bundles be pled pursuant to the Master Complaints. The Court's October 19, 2010 Order also directed that Transocean's Rule 14(c) claims asserted in connection with their Limitation proceedings be asserted on or before February 18, 2011. In Pre-Trial Order No. 24 filed on January 12, 2011, this Court created Civil Action No. 10-8888 for the sole purpose of the filing of the Claim Limitation/Short Claim Forms ("Short-Form Joinder"). [Rec. Doc. 982]. This Court further ordered that any Short-Form Joinder filed in C.A. No. 10-8888 "shall be deemed a simultaneous filing of an answer and claim in C.A. No. 10-2771, and an intervention into one or more of the Master Complaints (Docs. 879 and/or 881) in Civil Action No. 10-md-2179." [Rec. Doc. 983 at 4].

[2] Transocean filed third party tenders to BP Exploration & Production Inc., BP America Production Company, BP p.l.c., Halliburton Energy Services, Inc., M-I, LLC, Cameron International Corporation f/k/a Cooper Cameron Corporation, Anadarko Petroleum Corporation, Anadarko E&P Company LP, MOEX Offshore 2007 LLC, MOEX USA Corporation, Mitsui Oil Exploration Company, Ltd. (a/k/a MOECO), Weatherford International, Inc.,

As a result of the Rule 9(h) designations made by Plaintiffs/Claimants, all common fact issues set forth in the Trial Plan should be tried without a jury, despite the possibility that federal jurisdiction (*e.g.*, diversity jurisdiction, or federal question jurisdiction pursuant to the Outer Continental Shelf Lands Act, the Oil Pollution Act) may also exist.  *See, Romero v. Bethleham Steel Corp.,* 515 F.2d 1249, 1252 (5th Cir. 1975) (holding that Rule 9(h) is the "device by which the [plaintiff] may claim the special benefits of admiralty procedures and remedies, including a nonjury trial, when the [complaint] show[s] that both admiralty and some other basis for federal jurisdiction exist");  *see also T.N.T. Marine Serv., Inc. v. Weaver Shipyards & Dry Docks, Inc.,* 702 F.2d 585 (5th Cir.1983).

It is a long standing principle that the right to a jury trial does not extend to cases in admiralty, which have historically been tried without juries. *See Fitzgerald v. U.S. Lines Co.,* 374 U.S. 16, 20 (1963); *see also Waring v. Clarke,* 46 U.S. 441, 460,(1847); *see also Rachal v. Ingram Corp.,* 795 F.2d 1210, 1216 (5th Cir.1986) (noting that "it is uncontested that admiralty jurisdiction gives no right to a jury trial").   This general principle is preserved in Rule 38(e) of the Federal Rules of Civil Procedure, which states that "[t]hese rules shall not be construed to create a right to trial by jury of the issues in an admiralty or maritime claim within the meaning of Rule 9(h)."  Fed. R. Civ. P. 38(e).

Furthermore, even when the Court has concurrent jurisdiction under admiralty and some other source, (*e.g.*, pursuant to the Outer Continental Shelf Lands Act, or based on Federal Question under the Oil Pollution Act), Rule 9(h) of the Federal Rules of Civil Procedure grants *the plaintiff* the right to elect how to proceed:

---

Weatherford U.S.L.P., Dril-Quip, Inc., Marine Spill Response Corporation, Airborne Support, Inc., Airborne Support International, Inc., Lynden, Inc., Dynamic Aviation Group, Inc., International Air Response, Inc., Lane Aviation, National Response Corporation, O'Brien Response Management, Inc., Tiger Safety, LLC, DRC Emergency Services LLC, Nalco Company, and the United States of America.  *Transocean's Rule 14(c) Third-Party Complaint* [Rec.Doc. 1320].

7

> If a claim for relief is within the admiralty or maritime jurisdiction and also within the court's subject-matter jurisdiction on some other ground, the pleading may designate the claim as an admiralty or maritime claim for purposes of Rules 14(c), 38(e), and 82 and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. A claim cognizable only in the admiralty or maritime jurisdiction is an admiralty or maritime claim for those purposes, whether or not so designated.

Fed. R. Civ. P. 9(h). Indeed, the long standing rule of the Fifth Circuit is that by making the Rule 9(h) election, the plaintiff can "preclude the defendant from invoking any right to a trial by jury that might otherwise exist." *Harrison v. Flota Mercante Grancolumiana, S.A.*, 577 F.2d 968, 986 (5th Cir. 1978). The plaintiff's designation controls even in cases in which a defendant asserts a counter-claim or third party claim based on "common law" or another legal theory that could grant a non-admiralty basis for jurisdiction or a right to a jury trial. *Id.* at 987. ("[W]e refuse to permit the third-party defendant to emasculate the election given to the plaintiff by Rule 9(h)."). This is especially true when the defendant's cross-claims or third-party claims <u>are based on the same set of operative facts which give rise to the first complaint</u>. *Id.* (holding that the defendant could not undo the plaintiff's 9(h) designation when "the facts which established admiralty jurisdiction for the plaintiff's original claims" also form the basis of defendant's claims).

As this Court has held, the fact that an alternative basis for subject-matter jurisdiction may exist is inconsequential, as "[t]he Fifth Circuit has made clear that whenever there are two or more possible bases of federal jurisdiction, including Admiralty, a plaintiff can elect to proceed on the Admiralty side of the Court." *In re Graham Offshore*, 2000 WL 1263225, * 2 (E.D.La. 2000) (citing *T.N.T. Marine Serv., Inc.,* 702 F.2d 585 (; *see also, Romero* 515 F.2d 1249, 1252 (holding that Rule 9(h) is the "device by which the [plaintiff] may claim the special benefits of admiralty procedures and remedies, including a nonjury trial, when the [complaint]

show[s] that both admiralty and some other basis for federal jurisdiction exist"); *Durden v. Exxon Corp.,* 803 F.2d 845, 849 n. 10 (5th Cir. 1986) (noting that Rule 9(h) "preserv[es] ... the *plaintiff's* right to choose the procedural consequences of a civil or admiralty action, by choosing the jurisdictional basis of the action and designating that basis in the complaint") (emphasis added).

Here, Plaintiffs' claims, including economic loss claims, are designated 9(h) admiralty claims, and the Plaintiffs' Rule 9(h) designated claims were adopted by Transocean in its Rule 14(c) third-party tender of Plaintiffs' claims. Under the rule of law in this Circuit, the 9(h) election cannot be emasculated by claims of third party defendants based on the same set of operative facts which established admiralty jurisdiction in the original complaints. Therefore, because the claims of all parties, third-parties and cross-claimants derive from common fact issues relative to: (1) the Incident; (2) Source Control; (3) Quantification of Discharge; (4) Containment, and; (5) Migration, the issues should be tried to the bench, without a jury, as elected by Plaintiffs.

**2.    FACT ISSUES COMMON TO THE UNITED STATES' CLAIMS AND CLAIMS IN LIMITATION CAN AND SHOULD BE CONSOLIDATED AND TRIED TO THE BENCH UNDER FED. R. CIV. P. 42**

Transocean defers to the United States to determine whether it intends to consolidate some or all of its claims for trial with the claims, cross-claims, 14(c) claims and/or third-party claims asserted in connection with the Transocean limitation action claims. But, assuming that the United States intends to consolidate some or all of its claims, the fact issues relative to: (1) the Incident; (2) Source Control; (3) Quantification of Discharge; (4) Containment, and; (5) Migration, to the extent they are common to the United States' claims and the claims, cross-

claims, 14(c) claims and/or third-party claims in Limitation, can be consolidated and tried to the bench under Federal Rule of Civil Procedure 42.

To this end, the United States expressly stated that it believed the Liability Trial should be "defined by, and focused on, resolution of factual issues, based on bundles of related evidence."[3] The United States properly noted that there will be substantial overlap between the factual issues relevant to its claims and the claims of private parties.[4] Because of the overlap between "the evidence that supports (or defeats) the claims of the United States and the evidence that supports (or defeats) the claims of private parties in the MDL (represented the Plaintiffs Steering Committee or "PSC"), the trial should proceed in tandem with an eye towards reducing duplication and cost.[5] Only when the there is not a substantial overlap with evidence and factual issues should the United States' Claims be tried separately.[6] No such issues requiring separate trial are included in the Proposed Trial Plan.[7] On the common fact issues, the United States should be a party to the February 2012 Liability Trial.[8]

The United States has specifically identified the following common issues relating to the Incident (Phase One issues), for which it expects to appear in the February, 2012 Trail:

---

[3] Brief of United States Regarding the Plan for the February, 2012 Liability Trial, p. 1 of 15 [Rec. Doc. 1946].

[4] *Id.* at p. 4 of 15.

[5] *Id.*

[6] As currently filed, the United States' action seeks a declaration of the defendants' *liability* under OPA for both removal costs and damages resulting from the BP oil spill, and an award of civil penalties under the Clear Water Act ("CWA"). *Id.* at p. 3 of 15. The United States acknowledges that its complaint, as presently filed, "does not necessarily reflect the universe of potential claims or defendants liable to the United States for damages, penalties and claims. *Id.* These speculative claims are not presently before the Court.

[7] Categories of damages and costs under OPA that are uniquely governmental are not before the Court, and the United States expressly concedes that its OPA damage claims are not part of the February 2012 Liability Trial. *Id.* at 13 of 15.

[8] The United States is a party as a Plaintiff and by virtue of Transocean's 14(c) tender of the United States. Therefore, should the United States be successful on its Motion to Dismiss Transocean's 14(c) tender, "the United States expects to appear as plaintiff." *Id.* at 5 of 15, fn 3.

- Negligence of any defendants;
- Gross negligence or willful misconduct of any defendants;
- The violation of any applicable Federal safety, construction, or operating regulation by any responsible party, an agent or employee of any responsible party, or a person acting pursuant to a contractual relationship with the responsible party;
- The unseaworthiness of Deepwater Horizon;
- Privity of Transocean;
- Allocation of fault among defendants.[9]

The United States has specifically identified the following common issues relating to the Source Control and Quantification of Discharge (Phase Two issues):

- Aggravating effects of negligence, gross negligence, willful misconduct, and reckless behavior of defendants after the Incident in failing to cap and contain the well;
- The total amount of oil discharged.[10]

These fact issues enumerated by the United States relate to the relative fault of the parties, and appear to be common to the Phase One "Incident" issues and Phase Two "Source Control" and "Quantification of Discharge" issues, and should be part of this Trial. Additionally, the relative fault of the United States with respect to the Incident and Source Control phases should be part of this Trial, whether or not the United States is a party. Further, Quantification of Discharge is a fact issue common to the United States' CWA claim.[11]

---

[9] *Id.* at p. 6 of 15.

[10] *Id.* at pp. 7, 8 of 15.

[11] But, some of the United States' CWA issues are not common to the Limitation claims, including: factual and legal issues relative to: who was an "operator" of the Macondo well under CWA: who was an "operator" of the Deepwater Horizon under the CWA; whether, under the CWA the oil discharged into Gulf of Mexico was discharged from the Macondo well or from the Deepwater Horizon. These are among the non-common issues reserved for subsequent trial.

11

3.  **SOME ISSUES IN CASES ASSIGNED TO MDL-2179 CANNOT BE SEVERED AND CONSOLIDATED FOR TRIAL PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 42, AND THESE ISSUES SHOULD BE RESERVED FOR SUBSEQUENT PROCEEDINGS**

An illustrative list of the issues raised in cases filed in MDL-2179 against Transocean that are not sufficiently common with issues raised in the claims, cross-claims, 14(c) claims, and third-party claims asserted in the Limitation, and, therefore, not subject to severance and consolidation for a Rule 42 common issue trial includes:[12]

- Individual damage issues (i.e. specific causation and quantum);

- Factual and legal issue of whether Transocean is an "operator" of the Macondo well under the Clean Water Act ("CWA"), or only an "operator" of the *Deepwater Horizon*;

- Factual and legal issue of whether BP is also an "operator" of the Deepwater Horizon under the CWA;

- Factual and legal issue under the CWA of whether the oil discharged into the Gulf of Mexico was discharged from the well or from the vessel;

- Factual and legal issues under the Endangered Species Act;

- Factual and legal issues relative to claims under the Racketeer Influenced and Corrupt Organizations Act (RICO);

- Factual and legal issues relative to Vessels of Opportunity claims.

- Factual and legal issues relative to alter ego claims against Transocean Ltd.;[13]

- Natural Resource Damages ("NRD") claims.

---

[12] Transocean cannot provide the Court with an exhaustive list of issues that cannot be severed and consolidated for trial pursuant to Fed. R. Civ. P. 42, as it is not a party to all cases consolidated in MDL-2179.

[13] In accordance with the May 6, 2011 Special Appearance By Transocean Ltd. and Transocean Inc. and Agreed Stipulation for Standstill of Jurisdictional Discovery (Rec. Doc. 2274 in Civil Action No. 10-MD-2179), discovery and resolution of this issue is stayed until the conclusion of the February 2012 Limitation and Liability Trial.

4.    **COMMON ISSUES RELATIVE TO: (1) THE INCIDENT; (2) SOURCE CONTROL; (3) QUANTIFICATION OF DISCHARGE; (4) CONTAINMENT, AND; (5) MIGRATION CAN AND SHOULD BE TRIED BY THE COURT IN A BENCH TRIAL, AND NO ALTERNATIVE TRIAL PLAN IS NECESSARY.**

The Trial Plan outlined by the Court at the May 5th status conference contemplates a single adjudication of all common issues and facts relative to the general liability of the defendants, third-parties, and non-parties regarding: (1) the Incident; (2) Source Control; (3) Quantification of Discharge; (4) Containment, and; (5) Migration. For the reasons stated above, the Court can properly sever and consolidate these issues for a single adjudication without a jury.[14]

As regards the non-common issues identified in Section 3 above, these issues should be severed from the common issues and reserved for subsequent proceedings. Transocean believes that it is not necessary for the Court to establish a comprehensive plan for these later proceedings at this time, pending completion of the February 2012 Limitation and Liability Trial.

---

[14] Because the Plaintiffs' claims in the limitation action are designated Rule 9(h) admiralty claims, and the Plaintiffs' Rule 9(h) designated claims were adopted by Transocean in its Rule 14(c) tender of Plaintiffs' claims to the third party defendants in limitation, the common claims and issues severed and consolidated for trial in the Limitation Trial can and should be tried to the bench without a jury. Because this is a limitation action, and because all relevant claims and complaint, as discussed above, are designated 9(h) admiralty cases, this is not a "hybrid proceeding" involving both admiralty and at law claims. Therefore, no party is deprived of the Seventh Amendment right to a jury trial, and the properly severed and consolidated issues set for trial in the February, 2012 Liability Trial should be tried to the bench without a jury.

In the alternative, should the Court determine any third party is entitled to a jury on its OPA and/or OSCLA claims, an advisory jury could be impaneled, but used only in an advisory capacity with respect to the Limitation Action. *See Solet v. CN Producing Corp.,* 908 F.Supp. 375, 378 (E.D.La.1995)(holding that a hybrid trial on maritime and at law claims would take place before a jury, but with respect to the claims against the vessel owner and the vessel operator, the jury would be used in an advisory capacity pursuant to Rule 39(c).)

Respectfully submitted,

| | |
|---|---|
| By: /s/ Steven L. Roberts | By: /s/ Kerry J. Miller |
| Steven L. Roberts (Texas, No. 17019300) | Kerry J. Miller (Louisiana, No. 24562) |
| Rachel Giesber Clingman (Texas, No. 00784125) | Frilot, L.L.C. |
| Kent C. Sullivan (Texas, No. 19487300) | 1100 Poydras Street, Suite 3700 |
| Teri L. Donaldson (Florida, No. 784310) | New Orleans, Louisiana 70163 |
| Sutherland Asbill & Brennan LLP | Telephone: (504) 599-8169 |
| 1001 Fannin Street, Suite 3700 | Facsimile: (504) 599-8154 |
| Houston, Texas 77002 | Email: kmiller@frilot.com |
| Telephone: (713) 470-6100 | |
| Facsimile: (713) 654-1301 | -and- |
| Email: steven.roberts@sutherland.com, | |
| rachel.clingman@sutherland.com, | /s/ Edwin G. Preis, Jr. |
| kent.sullivan@sutherland.com, | Edwin G. Preis, Jr. (Louisiana, No. 10703) |
| teri.donaldson@sutherland.com | Edward F. Kohnke, IV (Louisiana, No. 07824) |
| | Preis & Roy PLC |
| | 102 Versailles Boulevard, Suite 400 |
| | Lafayette, Louisiana 70501 |
| | Telephone: (337) 237-6062 |
| | Facsimile: (337) 237-9129 |
| | |
| | -and- |
| | |
| | 601 Poydras Street, Suite 1700 |
| | New Orleans, Louisiana 70130 |
| | Telephone: (504) 581-6062 |
| | Facsimile: (504) 522-9129 |
| | Email: egp@preisroy.com, efk@preisroy.com |

Of Counsel:
Brad D. Brian (California, No. 79001)
Allen M. Katz (California, No. 054933)
Munger Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071
Office: (213) 683-9100
Facsimile: (213) 683-5180, (213) 683-4018
E-Mail: brad.brian@mto.com, allen.katz@mto.com

Daniel O. Goforth (Texas, No. 08064000)
Goforth Geren Easterling LLP
4900 Woodway, Suite 750
Houston, TX 77056
Office:  (713) 650-0022
Facsimile:  (713) 650-1669
E-Mail:  dangoforth@goforthlaw.com

John M. Elsley (Texas, No. 0591950)
Royston, Rayzor, Vickery & Williams LLP
711 Louisiana Street, Suite 500
Houston, TX 77002
Office:  (713) 224-8380
Facsimile:  (713) 225-9945
E-Mail:  john.elsley@roystonlaw.com

*Counsel for Transocean*

## CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2011, I electronically filed the foregoing with the Court's CM/ECF system and/or by using the LexisNexis File & Serve, in accordance with Pretrial Order No. 12 which will send a notice of filing to all counsel accepting electronic notice.

/s/ Kerry J.  Miller