UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG | : | MDL NO. 2179 |
| "DEEPWATER HORIZON" in the | : | |
| GULF OF MEXICO, on | : | SECTION:  J |
| APRIL 20, 2010 | : | |
| | : | JUDGE BARBIER |
| **THIS DOCUMENT RELATES TO** | : | MAG. JUDGE SHUSHAN |
| **THE *TRANSOCEAN* LIMITATION** | : | |
| **ACTION, NO. 10-2771** | : | |

. .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .

### BRIEF OF DEFENDANT CAMERON INTERNATIONAL CORPORATION ON TRIAL PLAN ISSUES

Cameron International Corporation ("Cameron") respectfully submits this brief addressing specified trial plan issues as requested by the Court in its Order Re: Requested Briefing on Trial Plan Issues (Doc. 2402).

### Answers to Questions Posed

As a summary of its argument, Cameron respectfully answers the Court's questions as follows:

1) Are there fact issues common to the claims, cross-claims, 14(c) claims, and/or third party claims asserted in connection with the Transocean limitation action claims (No. 10-2771) that cannot be tried by the Court in a bench trial without a jury in the trial scheduled to commence in February 2012?

> **Yes. Under the Seventh Amendment and settled Supreme Court precedent, (a) various claims asserted in the Transocean limitation action are legal claims subject to jury trial, so that (b) no fact issues common to the legal claims may be tried by the Court in a bench trial without a jury.**

2) Are there fact issues common to both United States' claims (No. 10-4563) and PSC-managed claims that cannot be consolidated for trial and tried to the bench in the limitation action (No. 20-2771) pursuant to FED. R. CIV. P. 42?

1

> **Yes. While fact issues in the United States' case might properly be consolidated for trial under Rule 42 with certain PSC-managed claims on the ground that there are common fact issues, the Seventh Amendment nevertheless precludes trial of the common fact issues to the bench without a jury. The United States claims cannot be consolidated for trial with PSC-managed claims that were not filed in the Eastern District of Louisiana.**

3) What issues in cases assigned to MDL 2179 cannot be severed and consolidated for trial pursuant to FED. R. CIV. P. 42?

> **Issues in lawsuits filed outside the Eastern District of Louisiana may not be consolidated for trial in this Court. In addition, Rule 42(b) does not permit a separate trial of issues that are not truly "separate" – separation of issues for trial must "cut at the joint." For example, allocation of fault cannot be tried separately from a trial of underlying liability to individual claimants. In particular, for economic loss claimants, liability (if any) under the economic loss doctrine would have to be resolved on a claimant-by-claimant basis, with allocation of fault premised on that case-by-case resolution.**

4) For those issues in cases assigned to MDL 2179 that cannot be tried by the Court in a bench trial without a jury, what alternative, manageable and efficient trial plan should be used?

> **Cameron recommends the following trial plan that is efficient, manageable, and not subject to reversal on procedural grounds:**

> **A. The Court should expeditiously resolve the contractual indemnity claims asserted against BP and Transocean and dispositive legal issues raised by Rule 12 motions. Resolution of indemnity claims and Rule 12 legal issues may create the grounds for a bench trial on the remaining issues without a jury based on jury waivers.**

> **B. The Court should first conduct a bench trial in February 2012 devoted solely to the issue of whether the Transocean petitioners are entitled to relief under the limitation statute.**

> **C. Next, the Court should conduct a jury trial of selected personal injury/wrongful death and property damage claims based on the well blowout (but not the oil spill), together with allocation of fault for the damages found for those claims, and any indemnity/hold**

1058921v.1

**harmless issues with respect to those claims not already resolved as a matter of law.**

**D. The Court should next conduct a jury trial of liability and damages for a carefully selected set of OPA and/or economic loss claims (filed in E.D. La.) related to oil spill contact, allocation of fault for the damages determined for those claims, and any unresolved indemnity issues with respect to those claims.**

**E. While the initial cases are tried, the Court can plan further trials of all types of cases filed in the Eastern District of Louisiana, including those involving actions or claims based on later oil contact with property or resources.**

## Supporting Argument

**1.      Fact Issues Common to Legal Claims Asserted
in the Limitation Action Require Trial by Jury.**

The Court's first question implicates fundamental principles under the Seventh Amendment.  Moreover, the Seventh Amendment issue cannot be resolved without consideration of all "the claims, cross-claims, 14(c) claims, and/or third party claims asserted in connection with the Transocean limitation action claims (No. 10-2771)" and the "fact issues common" to those claims.

**a.      Fundamental Seventh Amendment Principles.**

The Seventh Amendment mandates that "[i]n Suits at common law, . . . the right of trial by jury shall be preserved."  U.S. CONST. amend. VII. The Supreme Court has said that the "right of jury trial in civil cases at common law is a basic and fundamental feature of our system of federal jurisprudence, . . . [a] right so fundamental and sacred to the citizen [that it] should be jealously guarded by the court."  *Jacob v. New York*, 315 U.S. 752, 752-53 (1942). Accordingly, "the right to grant mandamus to require jury trial where it has been improperly denied is settled."  *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 511 & nn. 18, 20 (1959)

1058921v.1

(citations omitted); *accord*, *Dairy Queen Inc. v. Wood*, 369 U.S. 469, 472 (1962) (the decision in *Beacon* "emphasizes the responsibility of the Federal Courts of Appeals to grant mandamus where necessary to protect the constitutional right to trial by jury").  Correspondingly, FED. R. CIV. P. 38(a) provides that the "right of trial by jury as declared by the Seventh Amendment to the Constitution – or as provided by a federal statute – is preserved to the parties inviolate."

The Seventh Amendment phrase "Suits at common law" refers to "suits in which legal rights [are] to be ascertained and determined, in contradistinction to those where equitable rights alone [are] recognized, and equitable remedies are administered."  *City of Monterrey v. Del Monte Dunes at Monterrey, Ltd.*, 526 U.S. 687, 708 (1999) (quoted citation omitted).  The right to jury trial "embraces all suits which are not of equity and admiralty jurisdiction, whatever the particular form they may assume to settle legal rights."  *Chauffers, Teamsters and Helpers, Local 391 v. Terry*, 494 U.S. 558, 564 (1990) (quoted citation omitted).  Cameron acknowledges that issues falling exclusively within equity or admiralty jurisdiction are not subject to jury trial.  And the limitation of liability issues fall within admiralty jurisdiction.  The key issue, therefore, must focus on what the Seventh Amendment requires when ***both*** legal and non-legal claims are asserted in the same action.

In the equity context, the Supreme Court has synthesized its holdings as follows: "where equitable and legal claims are joined in the same action, there is a right to jury trial on the legal claims which must not be infringed either by trying the legal issues as incidental to the equitable ones or by a court trial of a common issue existing between the claims."  *Ross v. Bernard*, 396 U.S. 531, 537-38 (1970).  It is now settled, therefore, that when both legal and equitable forms of relief are joined in the same suit, "the right to jury trial on the legal claim,

including all issues common to both" the legal and equitable claims, "remains intact."  *Tull v. United States*, 481 U.S. 412, 425 (1987), quoting *Curtis v. Loether*, 415 U.S. 189, 196 n.11 (1974).

 **b.** **Jury Trials in Admiralty Proceedings.**

 The Seventh Amendment principles established in equity cases plainly govern the right to jury trial in admiralty proceedings.  *See Garcia v. The Queen, Ltd.*, 487 F.2d 625, 628-29 & n. 8 (5th Cir. 1973) (relying on the Supreme Court's decision in *Beacon Theatres* to vacate the court's finding and conclusions after a bench trial in a Jones Act case).   As this Court has itself concluded, it is necessary to conduct a jury trial of both legal and admiralty claims "because to do otherwise would eviscerate the Seventh Amendment right to a jury trial for the" defendant responding to the legal claim.  *Henson v. Odyssea Vessels, Inc.*, 2008 WL 544184 at *4 (E.D. La. Feb. 25, 2008).  An authoritative treatise reaches the same conclusion: "when nonadmiralty and admiralty claims are so intertwined as to require trial by a single fact finder, the constitutionally protected jury trial right in civil claims outweighs the tradition of non-jury trials in admiralty actions, and a jury trial of all claims should be ordered."  8 MOORE'S FED. PRAC. [3RD ED.] § 38.32][6][b], at 38-106 (2010).

 As this Court noted in *Henson*, the Supreme Court's decision in *Fitzgerald v. United States Lines Co.*, 374 U.S. 16 (1963), is instructive on this point.   In *Fitzgerald*, the Supreme Court addressed a circuit conflict; some circuits required jury trials for interrelated Jones Act and maintenance and cure claims whereas others required bench trials.  374 U.S. at 17-18 & nn. 4, 5.  The *Fitzgerald* Court noted that while jury trials are not required in admiralty proceedings, no provision of law "forbids them."  *Id.* at 20.   In other words, there is no

1058921v.1

constitutional right to a non-jury trial in an admiralty proceeding.  The Court therefore concluded that "since Congress in the Jones Act has declared that the negligence part of the claim shall be tried by a jury, we would not be free, even if we wished, to require submission of all the claims to the judge alone."  *Id.* at 21.  On the other hand, the jury, "a time-honored institution in our jurisprudence, is the only tribunal competent under the present congressional enactments to try all the claims."  *Id.*  The Court therefore held "that a maintenance and cure claim joined with a Jones Act claim must be submitted to the jury when both arise out of one set of facts."  *Id.*  The Jones Act seaman "was therefore entitled to a jury trial as of right on his maintenance and cure claim." *Id.*

Since this principle applies to claims involving a statutory right to jury trial, it must apply with even greater force to cases in which legal claims subject to the Seventh Amendment are asserted along with admiralty claims that "arise out of one set of facts."  It necessarily follows from *Fitzgerald* that "only" a jury is "competent" in this proceeding to try admiralty and legal claims involving common fact issues, and thus that the admiralty and legal claims arising out of the Macondo well blowout "must be submitted to the jury."  In the words of the Supreme Court in *Ross*, it would infringe the Seventh Amendment to conduct "a court trial of a common issue existing between" any legal jury claim and any truly maritime non-jury claim. 396 U.S. at 537-38.

1058921v.1

### c.    The Limitation Action Does Not Justify Denial of Jury Trial.

The Supreme Court made clear in *Ross* that the "Seventh Amendment question depends on the nature of the issue to be tried rather than the character of the overall action." *Id.* at 539.  The *Ross* case originated as a stockholder's derivative suit, "overall" a proceeding in equity.  *Id.* at 534.  The Court explicitly held that "legal claims are not magically converted into equitable issues by their presentation to a court of equity in a derivative suit." *Id.* at 538. Moreover, "the right to jury trial is not forfeited merely because the stockholder's right to sue must first be adjudicated as an equitable issue triable to the court." *Id.* at 539.  In this case, correspondingly, any legal claims against Cameron triable by jury are not "magically converted" into non-jury issues "by their presentation to" an admiralty court in a limitation action, whether through a Rule 14(c) tender, third-party claim or cross-claim.  Likewise, a defendant's right to jury trial is not forfeited merely because the court may be authorized to resolve certain non-common issues in the limitation action without a jury.

### d.    The Plaintiffs May Not Recast Legal Claims As Admiralty Claims.

The Supreme Court has also made clear that the "constitutional right to trial by jury cannot be made to depend on the choice of words used in the pleadings." *Dairy Queen*, 369 U.S. at 477-78.   "[N]or can" the right to jury trial "be impaired by any blending with a claim, properly cognizable at law, of a demand for equitable relief in aid of the legal action, or during its pendency." *Beacon Theatres*, 359 U.S. at 511, quoting *Scott v. Nealy*, 140 U.S. 106, 109-10 (1891).  In other words, the Seventh Amendment does not permit a plaintiff to denominate a legal claim as a claim in equity or admiralty and by that mere expedient deny a defendant its

right to a jury on a legal claim – or to blend legal claims with a non-legal claim in order to deprive a defendant of the right to jury trial.

Fed. R. Civ. P. 9(h) and 38(e) do not alter this principle – and if they did, they would be unconstitutional under the Seventh Amendment.  Rule 38(a) provides that the "rules do not create a right to a jury trial on issues in a claim that is an admiralty or maritime claim under Rule 9(h)."  Rule 9(h) then applies when a single claim is within both admiralty and other federal jurisdiction and permits the plaintiff to designate such a claim as a maritime claim in order to clarify the jurisdictional basis on which the plaintiff intends to proceed.  The rules do not "create" a right to jury trial for claims that are truly "admiralty or maritime claims," but they do not purport to deny, and could not constitutionally operate to deny, jury trial of claims that are "properly cognizable at law" within the meaning of *Beacon Theaters*, or are Jones Act claims that enjoy a statutory right to jury trial.  The right to jury trial for legal claims or Jones Act claims is preserved "inviolate" by Rule 38(a).  "As long as any legal cause is involved the jury rights it creates control."  *Thermo-Stitch, Inc. v. Chemi-Cord Processing Corp.*, 294 F.2d 486, 491 (5th Cir. 1961), quoted in *Dairy Queen*, 369 U.S. at 473 n.8.

### e.      Many Claims in the Limitation Action Require a Jury Trial.

The key issue for resolution of the right to jury trial in the limitation action, therefore, is whether any Jones Act claims or legal claims are asserted as part of the claims, tendered claims, cross-claims, or third-party claims asserted in the limitation action by other parties against Cameron.

Many of the claims in the limitation action require a jury trial.  The tendered claims include state law claims sounding in negligence, nuisance, trespass, product liability,

1058921v.1

trespass, and statutory recovery, for all of which a jury trial is required.  The cross-claims among the tendered defendants include statutory claims under the Oil Pollution Act ("OPA") for which a jury trial is required.  As the Court is also aware, Cameron submits that the direct tort claims against some or all defendants are governed by OCSLA, so that those claims too require trial by jury.[1]

### i.   Tendered/Third-Party Oil Spill Claims Asserted Under State Law.

Although it is sometimes difficult to ascertain 18th century common law practices, "some proceedings were unmistakably actions at law triable to a jury."  *Ross*, 396 U.S. at 533. For example, the Seventh Amendment unquestionably entitles "the parties to a jury trial in actions for damages to a person or property."  *Id.*

Given this established Seventh Amendment principle, it is important to focus on state law tort claims asserted in the limitation action as part of the master third-party claims by the B1 and Local Government Claimants against Transocean and Cameron and other tendered defendants.  Based on alleged "negligence," the B1 Master Third-Party Complaint asserts claims under state law theories of nuisance and trespass for monetary relief based on alleged damages to property caused by the oil spill (Doc. 1128 ¶¶ 691-711).  The Local Government Master Third-Party Complaint similarly asserts claims for monetary damages purportedly based on nuisance and trespass claims in turn premised on alleged negligence (Doc. 1510 ¶¶ 670-90).  The B1 and Local Government Master Third-Party Claims and the Rule 13 Cross-Claims filed by Transocean assert claims against Cameron and another tendered defendant under state product liability laws

---

[1] Numerous claims filed in the limitation action assert claims under the Jones Act and demand trial by jury.  Under *Fitzgerald*, any fact issues common to these Jones Act claims and to any legitimate admiralty claims in the limitation action must be tried to a jury.  374 U.S. at 21.

1058921v.1

for monetary damages allegedly caused by the oil spill (Docs. 1128 ¶¶ 658, 677; 1510 ¶¶ 639, 658; 2068 ¶ 77.

Under *Ross*, it should be beyond dispute that the Seventh Amendment right to jury trial attaches to all of these state law tort claims.  "Parties are clearly entitled to a jury trial in [negligence] actions for damage to . . . property."  8 MOORE'S § 38.30[2][A], at 38-73.   In addition, "actions seeking monetary damages under a common law theory of nuisance are actions at law and provide a jury trial right."  *Id.* § 38.30[3], at 38-74 & n.26, citing *In re Acushnet River and New Bedford Harbor Proceedings*, 712 F. Supp. 994, 1000-04 (D. Mass. 1989) (state law nuisance claim for harbor pollution).   Trespass claims are perhaps the most longstanding of common law causes of action and therefore require a jury trial.  *See United States v. Williams*, 441 F.2d 637, 643-44 (5th Cir. 1971) (United States request for both damages and injunctive relief requires jury trial of trespass claim).

In addition, the Local Government Master Third-Party Claim against Cameron and other tendered defendants asserts claims under state environmental statutes for recovery of damages based on the oil spill (Doc. 1510 ¶¶ 671-746).  It is settled that the Seventh Amendment right to jury trial extends to statutory actions.  *Chauffers, Teamsters and Helpers, Local 391 v. Terry*, 494 U.S. 558, 564-65 (1990), citing *Tull v. United States*, 481 U.S. 412, 417 (1987).  In *Tull*, for example, the United States sought civil penalties under the Clean Water Act for placement of fill in navigable waters.  *See* 481 U.S. at 420.  The Supreme Court held that the defendant had "a constitutional right to jury trial to determine his liability" for such a claim for monetary relief.  *Id.* at 425.

Transocean has cross-claimed in the limitation action seeking an allocation of responsibility under state tort law from Cameron and other tendered defendants (Doc. 2068 ¶ 70).  BP has cross-claimed against Cameron for a declaratory judgment on similar grounds. (Doc. 2064 ¶¶ 104-108).  Because such a contribution claim for monetary relief is derivative of the underlying tort claims against Cameron and the other tendered defendants (Bundles A, B and C), Cameron has a right to jury trial on these Transocean "claims over" and the fact issues raised by BP declaratory judgment cross-claim.  *In re N500L Cases*, 691 F.2d 15, 19-21 (1st Cir. 1982); *Palmer v. United States*, 652 F.2d 893, 895-96 (9th Cir. 1981).

All of these claims, third party claims, and cross-claims in the limitation action that are based on state common and statutory law require trial by jury in accordance with Cameron's jury demand in its Master Answer to the tendered claims and Answer to the Transocean Cross-Claims.  *See* Docs. 2472, 2474.

### ii.  OPA Third-Party Claims and Contribution and Subrogation Cross-Claims.

In cases seeking monetary damages under federal statutes, the Supreme Court has routinely held that the Seventh Amendment requires jury trials.  As a settled procedure for resolving the Seventh Amendment issues in this context, the Court follows a two-step analysis: the first step analyzes the historic practice with respect to analogous causes of action at the time of the Seventh Amendment and the second analyzes the type of relief sought.  *Local 391 v. Terry*, 494 U.S. at 565 (citation omitted).  The "more important" consideration is the form of relief.  *Id.*  In that context, the Court applies the "'general rule' that monetary relief is legal." *City of Monterrey v. Del Monte Dunes*, 526 U.S. 687, 710 (1999), quoting *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 352 (1998).

1058921v.1

The B1 Master Third-Party claim asserts a claim under OPA for monetary damages.  (Doc. 1128, ¶¶ 678-90).  The Local Government Master Third-Party Claim asserts a similar claim under OPA.  (Doc. 1510 ¶¶ 659-669).  Just as important for the current analysis, moreover, are the cross-claims filed against Cameron under OPA.  BP and Transocean have asserted such statutory cross-claims under OPA's contribution and subrogation provisions, 33 U.S.C. §§ 2709, 2715(a).  (Docs. 2064 (BP) ¶¶ 88-92, 98-103; 2068 (Transocean) ¶¶ 84-87.)

Accidents involving oil and gas drilling operations were certainly not part of eighteenth century admiralty practice.  *See also Phoenix Const. Co. v. The Steamer Poughkeepsie*, 212 U.S. 558 (1908) (accident involving oil and gas drilling in navigable waters not subject to admiralty jurisdiction); *accord*, *Rodrigue v. Aetna Casualty & Surety Co.*, 395 U.S. 352, 360-66 (1969).  Allocation of liability based on comparative fault was unknown either at common law or in 18th century admiralty proceedings.

In this context, "the Seventh Amendment guarantee extends to statutory claims unknown to the common law, so long as the claims can be said to 'sound basically in tort,' and seek legal relief."  *City of Monterrey*, 526 U.S. at 709, quoting *Curtis v. Loether*, 415 U.S. 189, 195-96 (1974).  The direct OPA claims and the OPA contribution and subrogation cross-claims seeking monetary recovery from Cameron plainly meet these criteria.   Under OPA § 2709, the contribution plaintiff must prove that the defendant "is liable or potentially liable" in tort for a well blowout and resulting oil spill along with the contribution plaintiff.  33 U.S.C. § 2709.  In order to recover under the subrogation provision of OPA § 2715(a), the paying subrogated plaintiff is entitled to pursue the tort "cause of action" of any paid oil spill claimant based on the well blowout and resulting oil spill.  33 U.S.C. § 2715(a).   The OPA contribution and

1058921v.1

subrogation cross-claims, therefore, undeniably "sound in tort."  Under the "general rule," the statutory cross-claims for monetary damages from Cameron seek legal relief.  Because all the OPA claims sound in tort and seek legal relief, they are actions at law that require jury trial if demanded.  *City of Monterrey*, 526 U.S. at 710-11; *see In re N500L Cases*, 691 F.2d 15, 19-21 (1st Cir. 1982); *Palmer v. United States*, 652 F.2d 893, 895-96 (9th Cir. 1981).

The OPA statutory claims are not maritime claims and are not within admiralty jurisdiction.  Section 2751(e) of OPA provides in pertinent part that "***[e]xcept as provided in this chapter,*** this chapter does not affect . . . (1) admiralty or maritime law or (2) . . . admiralty or maritime jurisdiction."  33 U.S.C. § 2751(e).  By parity of reasoning, the opening qualifying phrase of section 2751(e) necessarily means that if OPA does "provide" a substantive rule of liability or jurisdiction, then admiralty or maritime law or admiralty or maritime jurisdiction is supplanted by OPA.  That is precisely how the authoritative decisions have interpreted OPA.

As the First Circuit held in the leading decision on the subject, the "very specific treatment of oil pollution in the OPA . . . supplanted general admiralty and maritime law" relating to recovery of damages for oil spills.  *South Port Marine, LLC v. Gulf Oil Ltd. P'ship*, 234 F.3d 58, 65 (1st Cir. 2000) ("Congress intended the OPA to be the exclusive law governing oil spills"); *accord, Gabarick v. Laurin Maritime (America) Inc.*, 623 F.Supp.2d 741, 746 (E.D. La. 2009); *Clausen v. M/V New Carissa*, 171 F.Supp.2d 1127, 1133 (D. Or. 2001); *Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atlantic Corp*, 924 F.Supp. 1436, 1447 (E.D. Va.), *aff'd w/o published opinion*, 122 F.3d 1064 (4th Cir. 1997), *cert. denied*, 523 U.S. 1021 (1998). Plaintiffs appear now to concede that "general maritime law is likely displaced to the extent a person or entity seeks the removal costs or damages provided by OPA."  (Doc. 2575-2, p. 1.)

1058921v.1

These principles apply in full measure to any allocation of OPA response costs or damages among "responsible parties" and third parties like Cameron.  As noted above, defined "responsible parties" under OPA have already asserted contribution claims under OPA. Unquestionably, OPA provides a cause of action for contribution with respect to oil spill claims. 33 U.S.C. § 2709.  Under the terms of the preamble of OPA § 2751(e), therefore, OPA supplants any maritime law allocation of fault for oil spill claims.  In the words of the Supreme Court in *Miles*, because the issue of allocation of fault is covered by OPA, it would not be appropriate to resort to maritime law "to prescribe" a different allocation of fault.  *Miles v. Apex Marine Corp.*, 498 U.S. 19, 31 (1990).

These OPA provisions also have application to the question of jurisdiction.  OPA provides separately for "exclusive original" federal jurisdiction "over all controversies arising under" OPA.  33 U.S.C. § 2717(b).  There is an exception to this exclusivity, but that is a grant of authority to state courts to adjudicate oil spill claims under OPA or state law.  33 U.S.C. § 2717(c).  There is ***no*** exception to OPA's exclusion of admiralty jurisdiction for oil spill claims. These express jurisdictional provisions in OPA, therefore, exclude admiralty or maritime jurisdiction over OPA contribution or subrogation claims.  Applying this proper statutory construction of OPA, the First Circuit has definitively held "that Rule F concursus . . . is inapplicable to OPA claims."  *In re Metlife Capital Corp.*, 132 F.3d 818, 824 (1st Cir. 1997), *cert. denied*, 524 U.S. 952 (1998).

The OPA cross-claims require trial by jury under Cameron's jury demand in its Master Answer to the tendered claims and Answer to the Transocean Cross-Claims.  (Docs. 2472, 2474.)

1058921v.1

14

### iii.  <u>Tendered Personal Injury Claims and Rig Damage Claim</u>.

Rather than repeat its argument that OCSLA applies and preempts maritime law for the non-oil spill claims not encompassed by OPA, Cameron respectfully refers the Court to its briefing on its consolidated motion to dismiss the Bundle A claims (Docs. 1154, 1980). OCSLA in turn requires the application of Louisiana tort law to the personal injury, wrongful death and rig damage claims.   And as this Court is fully aware, resolution of those claims requires trial by jury.   *See Henson v. Odyssea Vessels, Inc.*, 2008 WL 544184 (E.D. La.). Respectfully, Cameron believes that it is entitled to a jury trial on all the tendered claims and all the cross-claims under OCSLA and borrowed Louisiana tort law.

### iv.  <u>Fact Issues Common to the Legal Claims in the Limitation Action</u>.

Assuming for the sake of argument that there are admiralty claims other than the claims asserted by Transocean under the limitations act and the claims of certain alleged seamen and employees of Transocean against Defendants **other than** Cameron, Cameron is entitled to a jury trial of all fact issues in the case that involve the liability or fault of Cameron.

The one clear exception is the statutory issue of limitation of liability under 46 U.S.C. § 30505 raised by the Transocean complaint initiating the limitation action.   Cameron acknowledges that resolution of this issue might not entail the Court's resolution of a fact issue common to the claims against Cameron in the limitation action.

In *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331 (5th Cir. 1997) (en banc), the trial court dealt with a Jones Act claim and a limitation claim.  The jury resolved liability, damages, and comparative fault to allocate damages, whereas the trial court addressed only the issue of privity under the limitation statute in a separate order after the jury verdict.  *Id.* at 333-

1058921v.1

34.  The Fifth Circuit, sitting en banc, reversed the comparative fault judgment on the ground that the jury had not been properly instructed on the standards of care in a Jones Act case, but otherwise affirmed the judgment of the trial court.  *Id.* at 339.

A possible alternative, therefore, would be a bench trial devoted solely to the limitation dispute in a traditional limitation action trial that did not address any fact issue involved in any claim against Cameron.  Under the Supreme Court's Seventh Amendment decisions, such a bench trial could not address allocation of fault to Cameron, because the court's findings after a bench trial could not bind Cameron on any legal claim against it.  *See Garcia v. The Queen, Ltd.*, 487 F.2d 625, 628-29 (5th Cir. 1973) (vacating findings and conclusions resulting from a bench trial issued despite a party's preserved right to a jury trial).

### f.      **Conclusion.**

The Seventh Amendment does not permit a bench trial of fact issues common to legal claims.  The legal claims in the limitation action therefore preclude a bench trial of virtually every fact issue involved in the claims against Cameron.

### 2.      **Consolidation of the U.S. Case May Be Proper, But a Bench Trial Would Not Be.**

"If actions before the court involve a common question of law or fact," FED. R. CIV. P. 42(a) grants the Court broad discretion to "(1) join for . . . trial any and all matters at issue in the actions" or "(2) consolidate the actions."  Certain of the PSC-managed claims are not "before the court" for the purpose of Rule 42(a).  Under 28 U.S.C. § 1407, no claim or issue in any case that did not originate in the Eastern District of Louisiana can be consolidated with the U.S. action and tried in the limitation action.  *See Lexecon v. Milberg Weiss Bershad Hynes & Lerach*, 118 S. Ct. 956 (1998).  Because the Master Complaints do not supersede the filed

complaints, no part of the actions asserted in complaints filed outside this District but managed by the PSC may be consolidated for trial in this District.

The Court asks most pointedly whether upon any consolidation "common" fact issues could "be tried to the bench in the limitation action."  The answer to that part of the question is straightforward.  BP Exploration & Production Inc. has filed a third-party complaint against Cameron in the United States action (Doc. 2065).  This third-party complaint both purports to tender the United States claims to Cameron under Rule 14(c) (¶ 10) and asserts an OPA contribution claim against Cameron (¶¶ 88-94).  In its response, Cameron will timely demand a jury trial.  For the reasons stated in the foregoing section, a bench trial of fact issues common to the United States action and the limitation action would not be permissible under the mendment because Cameron will have a right to jury trial of those common fact issues.

**3.        Separate Trials of Related Claims Are Not Permitted by Fed. R. Civ. P. 42(b).**

Under 28 U.S.C. § 1407, no claim or issue in any case that did not originate in the Eastern District of Louisiana can be separated out and consolidated with, or joined for trial in, the limitation action.  *See Lexecon v. Milberg Weiss Bershad Hynes & Lerach*, 118 S. Ct. 956 (1998).  Once again, because the master complaints do not supersede the originally filed actions, no part of the actions filed outside this District can be tried in this District.  Only claims or issues in actions properly filed in this District are subject to joinder for trial.

In appropriate circumstances, as noted above, FED. R. CIV. P. 42(a) provides for joint trials of matters in distinct actions or consolidation of actions.  In that context, FED. R. CIV. P. 42(b) provides as follows: "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims,

1058921v.1

crossclaims, counterclaims, or third-party claims.  When ordering a separate trial, the court must preserve any federal right to a jury trial."  The right to order separate trials of issues or claims is therefore constrained by the Seventh Amendment.  As with all other Federal Rules, moreover, Federal Rule 42(b) is also constrained by the Rules Enabling Act.  "Such rules shall not abridge, enlarge or modify any substantive right."  28 U.S.C. § 2072.

The crux of the first sentence of Rule 42(b) is the second use of the word "separate."  To be subject to separate trials, the separated issues or claims must be truly "separate."  If issues or claims are interconnected, they are not "separate" and are not subject to a "separate trial" under Rule 42(d).  Accordingly, it is well settled in the Fifth Circuit that "separation of issues is not the usual course that should be followed."  *Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 318 (5th Cir. 1978), quoted with approval in *Castano v. American Tobacco Co.*, 84 F.3d 734, 750 (5th Cir. 1996).  For a separate trial to be permissible, "the issue to be tried must be so distinct and separable from the others that a trial of it alone may be had without injustice."  *Id.*

The second sentence of Rule 42(b) then implements the Seventh Amendment's independent constraints on separate trials.  Even in the context of jury trials, the "Seventh Amendment entitles parties to have fact issues decided by one jury, and prohibits a second jury from reexamining those facts and issues."  *Castano*, 84 F.3d at 750.  Accordingly, the Constitution only "allows bifurcation of issues that are so separable that [a] second jury will not be called upon to reconsider findings of fact by the first."  *Id.*  This constitutional limitation, embodied in the text of Rule 42(b), requires a court to "'carve at the joint' in such a way so that the same issue is not reexamined by different juries."  *Id.* at 751, quoting *In re Rhone-Poulenc*

1058921v.1

*Rorer, Inc.*, 51 F.3d 1293, 1302-03 (7th Cir.) (mandamus), *cert. denied*, 516 U.S. 867 (1995).  It follows *a fortiori* from the Supreme Court's Seventh Amendment decisions and the text of Rule 42(b) that an issue cannot be subjected to a separate bench trial at which a Court resolves fact issues that are common to legal claims before a jury is permitted to resolve those common fact issues.  *See Dairy Queen*, 369 U.S. at 479 ("the legal claims in the action must be determined prior to any final court determination of . . . claims").

In *Castano*, the trial court in a class action had attempted to remedy the predominance of individual issues by proposing "to empanel a class jury to adjudicate common issues" in a multitude of tobacco cases, so-called "core liability" issues, with subsequent juries to "pass on the individual issues, either on a case-by case basis or through group trials of individual plaintiffs."  84 F.3d at 750; *see id* at 739.  In this process, the trial court proposed to try certain aspects of an individual defendant's conduct separately as a common issue and then try comparative negligence issues on a case-by-case basis.  The Fifth Circuit rejected this separation of issues for trial because the second jury could reconsider the first jury's resolution of liability issues.  *Id.* at 751.

A similar plan was undertaken in *Rhone-Poulenc*, a putative drug class action. The trial court proposed to conduct a jury trial to "determine merely whether one or more of the defendants was negligent under one of two theories."  51 F.3d at 1303.  The Seventh Circuit noted that subsequent trials would be necessary to resolve "such issues as comparative negligence" and "proximate causation" with respect to individual class members.  *Id.*  The Seventh Circuit noted that both "issues overlap the issue of the defendants' negligence."  *Id.* Because the proposal for separate jury trials violated the defendants' right to jury trial, the

Seventh Circuit granted mandamus directing the district court to decertify the class action premised on the trial plan. *Id.* at 1303-04.

The proposals in this case to separate allocation of fault from underlying liability to individual claimants and then try allocation of fault in a bench trial do not solve the problems identified with the proposed trial plans in *Castano* and *Rhone-Poulenc*. They exacerbate them. The proposed bench trial on allocation of fault in this case would even more clearly contravene the Seventh Amendment and Rule 42(b). Allocation of fault in a vacuum (in effect on a class-wide basis in violation of Rule 23 and Admiralty Rule F) would be resolved by the Court in a bench trial, denying Cameron its right to have the intertwined issues of underlying fault to an individual claimant, proximate cause of the claimant's damages, and an allocation of proximately caused damages resolved by any jury. The proposal here for a global bench trial on supposedly common issues of allocation of fault, premised on deferral rather than consideration of class certification issues under Rule 23, would be even more indefensible than the separate class jury trial to resolve common issues proposed by the trial court in *Castano* and *Rhone-Poulenc*, but rejected by the Fifth and Seventh Circuits under Rule 42(b).

It should be beyond dispute, moreover, that the issue of allocation of fault in this case is not "separate" from the individual issues of liability and proximate cause within the meaning of Rule 42(b). If a defendant is not liable to an injured claimant, it cannot be adjudged liable to share in the liability to that claimant under any valid theory of allocation of fault. As the First Circuit has explained, "the claim for contribution is derivative of the original plaintiffs' right to sue the [contribution defendant] directly." *In re N-500L Cases*, 691 F.2d 15, 21 (1st Cir. 1982) (citation omitted). The contribution claim "arises out of the tort and turns on the legal

relationship between the injured plaintiffs and the contribution defendants – the duty owed the former by the latter.  *Id.*   "Unless and until [the contribution defendants] are found liable for the plaintiff's injuries, it cannot be determined to what extent, if any, they are liable in damages to" the contribution plaintiffs.  *Id.*

As explained in response to the Court's first question, this conclusion is explicitly required for oil spill contribution and subrogation claims under OPA.  The contribution plaintiff must prove that the contribution defendant "is liable or potentially liable" to OPA claimants.  33 U.S.C. § 2709.  The subrogation plaintiff must prove up the "cause of action" of a paid OPA claimant.  33 U.S.C. § 2715.

A bench trial devoted solely to allocation of fault divorced from resolution of individual issues of underlying liability would therefore abridge Cameron's substantive rights in defense of its liability in this proceeding in violation of the Rules Enabling Act (and violate Rule 23).  A bench trial devoted solely to allocation of fault in a vacuum would violate Cameron's right to a jury trial, and is therefore not permitted by the second sentence of Rule 42(b).  Because allocation of fault is not an issue "separate" from underlying tort liability issues and proximate cause, a separate trial of allocation of fault – bench or jury trial – is not permitted by the first sentence of Rule 42(b).

**4.    A Manageable and Efficient Trial Plan.**

Cameron has given careful consideration to the structure of a manageable and efficient trial plan in this proceeding.  In that endeavor, Cameron has been guided by general principles and decisions of the Fifth Circuit addressed to similarly innovative trial plans.

a.     **General Principles**.

Cameron is concerned that the trial plans proposed by other parties depart from the fundamental requirements of the Federal Rules of Civil Procedure, if not the "case or controversy" requirement of Article III of the Constitution.  Judicial authority does not extend to the investigation of "points of evidence" or "bundles of evidence."  Instead, the federal rules require the "adjudication" of "claims."

A lawsuit in federal court is a "civil action."  FED. R. CIV. P.  2.  An "action" is commenced by the filing of a complaint. FED. R. CIV. P.  3.  Such a pleading commencing the action must contain a "demand for relief" based on a "claim for relief" stated by the "pleader." FED. R. CIV. P.  8(a)(2), (3).  In order to resolve common issues in multiple claims, the court must satisfy the requirements of  FED. R. CIV. P.  23.

Trials are conducted on "any or all matters at issue" in "actions."  FED. R. CIV. P. 42(a)(1).  The Rules provide routes to entry of "judgment" without a trial: default judgment (Rule 55), or summary judgment (Rule 56).  Otherwise, a "judgment" is entered after a trial. FED. R. CIV. P.  58.  A judgment "must be entered" after a bench trial.  FED. R. CIV. P.  52(a)(1). A judgment may be entered as a matter of law after a jury trial.  FED. R. CIV. P.  50.  Otherwise, judgment is to be entered on the jury's verdict.  FED. R. CIV. P.  58(b).   Although the trial court may "direct entry of" judgment as to "fewer than all the claims or parties," the rules are structured to result in a final judgment "adjudicating all the claims and all the parties' rights and liabilities" in an "action."  FED. R. CIV. P.  54(b).

Cameron's recommendations for a trial plan are designed to lead to judgment on the claims of the parties, as contemplated by the Federal Rules and Article III.   Cameron's

1058921v.1

recommendations likewise acknowledge the Seventh Amendment right to a jury trial of the legal claims for monetary damages asserted in the limitation action.

**b.** **Fifth Circuit Decisions on Innovative Trial Plans.**

The Fifth Circuit has twice granted mandamus to vacate features of innovative trial plans in mass tort cases comparable to features of the trial plans proposed by other parties in this case. *See In re Chevron USA, Inc.*, 109 F.3d 1016 (5th Cir. 1997); *In re Fibreboard Corp.*, 893 F.2d 706 (5th Cir. 1990).

**i.** ***Chevron***

In *Chevron*, a groundwater pollution case brought by the residents of a single residential development, the Fifth Circuit denied mandamus to prevent the trial of thirty selected cases, but granted mandamus "as it relates to utilization of the results obtained from the trial of the . . . selected cases for any purpose affecting issues or claims of, or defenses to, the remaining untried cases." 109 F.3d at 1021.  In reaching this conclusion, the Fifth Circuit noted that such pollution "litigation typically contains property issue variables that are related to time, proximity and contamination levels of exposure to any pollutants." *Id.* at 1019.  These variables are, of course, amplified in the circumstances of the claims made in this proceeding.

Cameron respectfully submits that the idea of a separate trial of allocation of fault is even less defensible than the planned use of the trial of selected cases in *Chevron*.  The trial plans submitted by the parties in this case contemplate no trial of any claim of any underlying claimant.  Such a trial could not purport to resolve anything without running afoul of *Chevron*.

1058921v.1

**ii.**   ***Fibreboard***

The trial plans proposed in this case are disturbingly similar to, though much less defensible than, the trial plan rejected by the Fifth Circuit in *Fibreboard*.   In that certified asbestos class action, the trial court planned to conduct a phased trial before the same jury. Phase I was to address common defenses and punitive damages.   893 F.2d at 708.   Phase II was to try certain representative cases fully and to determine "omnibus damage" figures for "each disease category" of plaintiffs.   *Id.* at 709.   Phase III would then be devoted to distribution of the damages so found.   *Id.*   The Fifth Circuit granted mandamus vacating the order for the Phase II trial.   *Id.* at 712.   Cameron submits that the reasoning and analysis behind the Fifth Circuit's decision in *Fibreboard* have particular application to the trial plans proposed for the limitation action in this proceeding.

In addressing the challenges to the Phase II damages trial, the Fifth Circuit in *Fibreboard* focused on the defendants' insistence "that one-to-one adversarial engagement or its proximate, the traditional trial, is secured by the seventh amendment and certainly contemplated by Article III of the Constitutions itself."   *Id.* at 709.   The panel was particularly concerned that the "focus in Phase II upon the 'total picture'" would lead to recovery that would not occur in a traditional trial.   *Id.*   The panel concluded that the "total picture" approach would not reflect the many individual distinctions among the cases of the class members.   *Id.* at 710.   The Fifth Circuit was "also uncomfortable with the suggestion that a move from one-on-one 'traditional' modes is little more than a move to modernity."   *Id.*   The Court cautioned that "traditional ways of proceeding . . . reflect the very culture of the jury trial and the case and controversy requirement of Article III."   *Id.* at 710-11.   The Court reasoned that the plaintiffs' argument in favor of the

trial plan as a class trial "begs the question of whether" the plaintiffs were "actually before the court under FED. R. PROC. Rules 23 and 42(b) in any more than a fictional sense." *Id.* at 711.

The Court concluded that its "concerns are little more than different ways of looking at a core problem.  The core problem is that Phase II, while offering an innovative answer to an admitted crisis in the judicial system, is unfortunately beyond the scope of federal judicial authority." *Id.*  The contemplated Phase II trial of omnibus damage issues "without discrete focus can be no more than the testimony of experts regarding" the claims of individual class members, and "cannot focus upon such issues as individual causation," contrary to governing law.  *Id.* at 711-12.  The fundamental error was "treating discrete claims as fungible claims." *Id.* at 712.  The Phase II trial would have lifted the individual claims "to a level of generality that tears them from their substantively required moorings to actual causation and discrete injury.  Procedures can be devised to implement such generalizations, but not without alteration of substantive principle" in violation of the Rules Enabling Act. *Id.*

"We are told that Phase II is the only realistic way of trying these cases; that the difficulties faced by the courts . . . cry powerfully for innovation and judicial creativity." *Id.* The Fifth Circuit found these arguments "compelling" but immaterial.  "The Judicial Branch can offer the trial of lawsuits.  It has no power or competence to do more.  We are persuaded on reflection that the procedures here called for comprise something other than a trial within our authority.  It is called a trial, but it is not." *Id.*

This analysis of the planned jury trial in *Fibreboard* applies with even greater force to the proposed plans here for a bench trial of allocation of fault in the limitation action.  In *Fibreboard*, the trial of common issues was the result of formal class certification; here there is

1058921v.1

no opportunity for certification of a class of claims in the limitation action that could support a global trial of common issues, *see In re Lloyd's Leasing, Ltd.*, 902 F.2d 368, 370 (5th Cir. 1990). In *Fibreboard*, the claims of selected plaintiffs were to be tried fully in Phase II by the same jury that would address common issues in Phase I; here, the plans proposed by other parties do not purport to try individual cases at all, just allocation of fault. In *Fibreboard*, the plaintiffs defended the trial plan on the ground that, thanks to class certification, the class members would be involved in the Phase II trial; here, by contrast, the proponents of the allocation of fault trial plans tell us that no claimants even need to pursue their underlying claims at the proposed trial. In *Fibreboard*, the planned Phase II achieved levels of generality that ignored actual causation and discrete injury; here, the proponents of an allocation of fault trial seem to embrace even greater levels of generality and even less of a discrete focus on substantive principle.  The B1 plaintiffs now appear to concede that the "economic loss" doctrine requires an analysis on a case-by-case basis (Doc. 2400, pp. 1-2).  Yet they offer no explanation how their proposed trial plan can accomplish this case-by-case analysis without trying a single case of a single named claimant.

On a fundamental level, the trial plans proposed by other parties here suffer from the same core problem as the planned Phase II in *Fibreboard*: they are "beyond the scope of federal judicial authority."  The special concurrence of Judge Jones in *Chevron* is of particular import.  Relying on the holding in *Fibreboard,* Judge Jones cautioned that "[j]udges must be sensitive to stay within our proper bounds of adjudicating individual disputes.  We are not authorized by the Constitution or statutes to legislate solutions to cases in pursuit of efficiency and expeditiousness."  109 F.3d at 1023 (Jones, J., specially concurring).

1058921v.1

c.     **Cameron's Proposal**

Cameron therefore proposes traditional trials to adjudicate claims – a bench trial to adjudicate the limitation issue alone and jury trials to resolve the remaining claims in the limitation action.  Absent class certification, which is not available in the limitation action in any event, any trial of claims in the limitation action under Admiralty Rule F must be a trial of the claim[s] of one or more individual, named claimant[s].   An allocation of fault can only be premised on liability to an individual claimant – including individual case-by-case resolution of duty (including for oil spill claims the extent of a duty, if any, for purely economic losses) and specific causation.  Therefore, under Rule 42(b), allocation of fault cannot be separated from the underlying individual claimant's case for trial.  As noted above, the trial of a number of selected plaintiffs' pollution claims has specifically been approved by the Fifth Circuit, so long as the resolution of the selected claims is not made representative or binding on the resolution of other claims.  *In re Chevron USA, Inc.*, 109 F.3d 1016, 1021 (5th Cir. 1997).

The following is Cameron's proposal:

1.     Cameron respectfully submits that resolution of indemnity claims may assist the Court in providing the premise for a bench trial based on potential jury waivers of defendants who have contractual agreements to indemnify Cameron and others.[2]   Cameron therefore recommends that, where appropriate, the Court resolve the contractual indemnity issues as a matter of law.  The Court should request summary judgment motions on the contractual indemnity issues, set the motions for hearing, and resolve the motions.  Furthermore, legal issues should be resolved in order to determine the law governing the various claims to be tried.

---

[2] As Cameron reads the Transocean and BP pleadings in the limitation action, both have failed to demand jury trials and may have thereby waived any right to a jury trial (Docs. 2064, 2068).

1058921v.1

2.      So long as the Court's resolution is not binding on any other issue, Cameron respectfully submits that the Court may conduct a bench trial solely to resolve the issue of whether the Transocean petitioners are entitled to relief under the limitation statute.

3.      Any issue beyond the precise issue under the limitation statute must then be tried to a jury.  Each jury trial should involve the claims of selected claimants and resolve all issues related to their claims, including allocation of fault and indemnity.  Cameron suggests the first jury trial address personal injury/wrongful death and property damage claims based on the well blowout, but not the oil spill.

4.      A second jury trial could be conducted on a carefully selected set of  OPA or economic loss cases filed in the Eastern District of Louisiana that are related to oil spill contact.

5.      Further trial planning should be an ongoing process, informed by the results of the initial trials.

Cameron submits that properly conducted jury trials are in fact far more efficient than the bench trial proposed by other parties.  It would be demonstrably inefficient to conduct a bench trial through multiple phases, only to have the result reversed for procedural irregularity, thus delaying ultimate resolution while wasting judicial and party resources.

As the Seventh Circuit observed in *Rhone Poulenc*, with "aggregate stakes" in the billions of dollars, "it is not a waste of judicial resources to conduct more than one trial, before more than six jurors, to determine" the survival of several of the defendant corporations.  51 F.3d at 1300, quoted in *Castano*, 84 F.3d at 748.

## Conclusion

If requested by the Court, Cameron can promptly submit a trial plan order consonant with its proposals in this brief.

Respectfully submitted,

David J. Beck, T.A.
    dbeck@brsfirm.com
Joe W. Redden, Jr.
    jredden@brsfirm.com
David W. Jones
    djones@brsfirm.com
Geoffrey Gannaway
    ggannaway@brsfirm.com

BECK, REDDEN & SECREST, L.L.P.
One Houston Center
1221 Mckinney, Suite 4500
Houston, TX  77010-2010
713-951-3700
713-951-3720 (fax)

/s/ Phillip A. Wittmann
Phillip A. Wittmann, 13625
    pwittman@stonepigman.com
Carmelite S. Bertaut, 3054
    cbertaut@stonepigman.com
Keith B. Hall, 24444
    khall@stonepigman.com
Jared Davidson, 32419
    jdavidson@stonepigman.com

STONE PIGMAN WALTHER WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
504-581-3200
504-581-3361 (fax)

**ATTORNEYS FOR CAMERON
INTERNATIONAL CORPORATION**

1058921v.1

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Brief of Defendant Cameron International Corporation on Trial Plan Issues has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 6th day of June, 2011.

*/s/ Phillip A. Wittmann*

1058921v.1