UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig | : | MDL NO.  2179 |
| "Deepwater Horizon" in the Gulf | : | |
| of Mexico, on April 20, 2010 | : | SECTION:  J |
| | : | |
| This Document Relates to: All Cases | : | JUDGE BARBIER |
| | : | MAG. JUDGE SHUSHAN |

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

MEMORANDUM OF THE UNITED STATES IN RESPONSE TO THE
ORDER Re: REQUESTED BRIEFING ON TRIAL PLAN ISSUES [DOC. 2402]

THE UNITED STATES OF AMERICA provides this Memorandum in response to the Court's "Order Re: Requested Briefing on Trial Plan Issues" [Doc. 2402].

The United States has previously stated to the Court that we favor consolidation generally where it will promote efficiency (*e.g.*, on matters related to the acts of the defendants) but not where the matters to be determined are unique to the interests of the United States and have less factual overlap (*e.g.*, for remedies such as natural resources damages).  (*See* Docs. 222 and 1946 filed in MDL 2179).  Nothing in the Court's questions appears to conflict with our previous positions or to impede the consolidation proposed here.

**Question # 2: Are there fact issues common to both United States' claims (No. 10-4563) and PSC-managed claims that cannot be consolidated for trial and tried to the bench in the limitation action (No. 10-2771) pursuant to Fed. R. Civ. P. 42?**

Insofar as the limited scope of consolidation sought by the United States – joining the trials on specific "Event"-related issues but not joining the cases for any other purposes – the answer to the Court's question is "no."[1]

---

[1] We have taken the liberty of addressing the Court's second question (consolidation of the United States' claims) before its first question (jury issues) as the answer to the consolidation issue informs the jury question.

1

### A. The Procedural Requirements of Rule 42(a)

Rule 42(a) of the Fed. R. Civ. P. provides (emphasis added):

(a) Consolidation. If actions before the court involve a *common question of law or fact*, the court may:

(1) *join* for hearing or trial *any* or all matters at issue in the actions;

(2) consolidate the actions; or

(3) issue any other orders to avoid unnecessary cost or delay.

It is well-settled that Rule 42(a) should be used to expedite trial and eliminate unnecessary repetition and confusion. *Miller v. U.S. Postal Serv.,* 729 F.2d 1033, 1036 (5th Cir.1984). It is also beyond dispute that the court has broad discretion to consolidate cases under Rule 42(a) and may order consolidation *sua sponte*. Wright, Miller, Kane, *9A Federal Practice and Procedure*, § 2383 at 51 (3d ed.). As summarized by the Fifth Circuit:

> The stated purpose of Rule 42(a) is to "avoid unnecessary costs or delay," and hence the decision to invoke the rule is entirely within the discretion of the district court as it seeks to promote the administration of justice. Fed. R. Civ. P. 42(a) [citations omitted]. In this Circuit, district judges have been "urged to make good use of Rule 42(a) . . . in order to expedite the trial and eliminate unnecessary repetition and confusion." *Dupont v. Southern Pacific Co.*, 5 Cir. 1966, 366 F.2d 193, 195.

*Gentry v. Smith,* 487 F.2d 571, 581 (5th Cir.1973).

Consolidation of cases does not, however, rob them of separate character; they remain separate actions, with only their original parties, and require entry of separate judgments. *See, e.g.*, *Frazier v. Garrison I.S.D.,* 980 F.2d 1514, 1532 (5th Cir. 1993) (citing *Johnson v. Manhattan Ry.,* 289 U.S. 479, 496-97, 53 S.Ct. 721, 727-28 (1933)). *See also*, Wright & Miller, *supra*, § 2382 at 9-11. Moreover, the fact that the parties in consolidated cases are not identical does not bar consolidation. "A substantial common question of law or fact is enough. If an

appropriate common question exists, federal courts often have consolidated actions despite differences in the parties." *Id.,* § 2384 at 57.

Significantly in the context of this case, consolidation may be ordered for less than the entirety of the actions and instead "may be limited to particular issues in or aspects of the various cases." *Id.,* § 2384 at 75.  As the treatise explains:

> Consolidation is not barred simply because the plaintiffs may be relying on different legal theories [citations omitted] or because there are some questions that are not common to all the actions; the critical consideration, as in other contexts under the Federal Rules, *is whether there is at least one common question of law or fact to justify bringing the actions together . . . .*

*Id.*, § 2384 at 63 (emphasis added, citations omitted).

### B. Primary Examples of the Common Issues Supporting Joinder of the Trials: Gross Negligence, Willful Misconduct, Breach of Federal Regulation

These issues, and the evidence and witnesses necessary to prove them up, are common and central to both the United States' and the private plaintiffs' cases.[2]  Some of the issues, such as gross negligence, are also common to disputes between certain of the defendants *inter se.* Were the Court to be required to try these issues twice – once in the trial phases commencing in the February 2012 trial and then later in a separate action prosecuted by the United States – the court's (and the parties') resources would be wasted and judicial economy would be sacrificed.

The United States and those private plaintiffs included in the B1 pleading bundle have

---

[2] The issue of the amount of oil discharged during the spill is also relevant to the Clean Water Act ("CWA") penalty claim of the United States; as to the private plaintiffs' claims, that issue presently is proposed as part of the Phase 2 trial.  There presumably are other issues that would be common to the United States' claims and plaintiffs' claims to be decided during Phase 1 and Phase 2, but these primary examples – gross negligence, willful misconduct, and breach of federal regulation –  serve to exemplify why the limited consolidation recommended by the United States is warranted.  A fuller discussion was provided in the "Brief of United States Regarding the Plan for the February 2012 Liability Trial" [Doc. 1946].

asserted liability of the "responsible parties" under the Oil Pollution Act of 1990 ("OPA"). OPA is a strict liability statute that nevertheless affords a responsible party an initial "cap" on liability. 33 U.S.C. § 2704. The "cap" can be eliminated, however, and unlimited strict liability imposed, by statutory exceptions.[3] Specifically, OPA provides that the limitation of liability or "cap":

> . . . does not apply if the incident was proximately caused by
>
>> (A) *gross negligence or willful misconduct* of, or
>>
>> (B) *the violation of an applicable Federal safety, construction, or operating regulation* by,
>
> the responsible party, an agent or employee of the responsible party, or a person acting pursuant to a contractual relationship with the responsible party . . . .

33 U.S.C. § 2704(c)(1) (emphasis added).

In addition to its OPA cause of action, the United States' Clean Water Act penalty claim requires the imposition of a penalty of up to $4,300 per barrel of discharged oil when the violation was the result of "gross negligence or willful misconduct." CWA, 33 U.S.C. § 1321(b)(7)(D).

The issues of gross negligence, willful misconduct, and the OPA responsible parties' violation of federal safety or operating regulations are therefore common to: (1) the OPA-declaratory judgment claim of the United States; (2) the OPA claims of the private plaintiffs; (3) the United States' CWA penalty claim; and (4) the private plaintiffs' claims for punitive damages.

Likewise, breaches of federal regulations by the Transocean defendants are relevant to

---

[3] BP has waived its right to assert the OPA cap as a defense. None of the other OPA defendants has done so, however, such that breaking those parties' OPA cap limits pursuant to 33 U.S.C. § 2704(c) is still at issue.

both the Limitation claimants' initial burden in the Limitation of Liability Act case to be commenced in February 2012, as well as the Limitation Petitioners' burden of proving lack of "privity and knowledge." Establishing breach of federal regulations is also relevant to the various personal injury and death claimants' Jones Act negligence actions against their employer(s) as a violation of statute or regulation can negate comparative fault which otherwise might be assessed against the personal injury plaintiff or decedent. *See, e.g.*, *Roy Crook and Sons, Inc., v. Allen*, 778 F.2d 1037 (5th Cir. 1985); *In re Denet Towing Serv., Inc.,* 1999 WL 569520 (E.D. La., Aug. 2, 1999) (Jones Act incorporates relevant provisions of the Federal Employers' Liability Act, 45 U.S.C. § 53). And as stated, the breach of regulations relates to the United States's action under OPA and the CWA.

     Notably, the *issues* described here involve the same types of factual *evidence:* witnesses who were involved in the rig operations or drilling activities, or otherwise had information related to the Macondo well or the *Deepwater Horizon* prior to the explosion on April 20, 2010. It is precisely due to this evidentiary overlap that the United States recommends that the Court join the trials.

     By the time the February trial commences, it is likely that more than 150 fact witnesses will have been deposed, plus numerous experts. To date, over 2,500 exhibits have been marked at depositions, with months left of discovery. The February 2012 trial and/or subsequent phases will encompass the foregoing witnesses and exhibits, many of which will in turn be central to the factual proof of the gross negligence, willful misconduct, breach of regulation, and other issues common to both the United States' and the private plaintiffs' cases.

     Various parties have estimated the length of the first phase of the trial at between two to

four months.  If the United States' action is *not* joined for trial of the common core factual issues, the result could be the requirement of a second trial of equal or nearly equal length involving the same witnesses and the same exhibits.  This is because the United States would not be bound by collateral estoppel with respect to the findings in the February trial.  *See, e.g., United States v. Mendoza,* 464 U.S. 154, 104 S.Ct. 568 (1984); *United States v. East Baton Rouge Parish School Bd., et al.*, 594 F.2d 56, 58 (5th Cir. 1979) ("First, the district court's conclusion is directly contrary to the general principle of law that the United States will not be barred from independent litigation by the failure of a private plaintiff.").

We respectfully suggest that the necessity of consolidation along the limited lines proposed by the United States need not be belabored.  Very simply, avoiding a months-long repetition of the first trial is precisely what Rule 42(a) is designed for, and, indeed, why the Fifth Circuit has urged trial courts to "make good use of Rule 42(a)."  *Gentry,* 487 F.2d at 581.

### C.	United States Role as a Third-party Defendant

Pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6), the United States has filed a motion to dismiss Transocean's third-party complaint and cross-claim, as well as the Rule 14(c) tender.  The pending motion is independent of other sovereign immunity defenses, statutory defenses, and non-statutory "merits" defenses.  Indeed, the United States' sovereign immunity defenses have been expressly acknowledged by Transocean in its pleadings.  [Doc.  1320 ¶ LI; Doc. 2068 ¶ 64.]  Joining trials under Rule 42(a) as a *procedural* tool would not affect or preclude the necessity of dismissal of claims against the United States based upon the broad sovereign immunity and other defenses outlined above.  However, if the Court declines to grant the motion(s) to dismiss, then the United States will be a party at the trial in 10-2771 in any event, at

which point there is no valid reason to refuse to allow the United States to join some portions of its affirmative case against the other defendants into the same trial.

> D. **There Are Many Parts of the United States' Case That Should Not Be Joined for Trial with the Limitation Action.**

The United States most assuredly does *not* seek consolidation for all purposes. First, 10-4563 and 10-2771 should be joined solely for trial purposes; the cases should remain separate and distinct cases, and not consolidated for other purposes. *See* answer to Question 3 *infra*. Second, consolidation should be ordered solely for the limited and discrete common factual issues discussed above and not for other purposes. Third, wholly aside from the fact that the February 2012 trial will not include "damages," it would not be appropriate for a variety of legal and practical reasons to consolidate private claims with any portion of the case of the United States for Natural Resource Damages, or for other OPA damages, assessment of a civil penalty under the CWA, and other potential claims of, or remedies available to the United States. Indeed, the United States, having filed only for a declaratory judgment of OPA liability, has not even filed any claims for recovery of specific damages under OPA. On an even more specific note, the United States does not agree that a Phase 3 of the trial should include any binding findings related to fate or transport of oil through the environment as it relates to quantifying Natural Resource Damages.

**Question # 1:  Are there fact issues common to the claims, cross-claims, 14(c) claims, and/or third-party claims asserted in connection with the Transocean limitation action claims (No. 10-2771) that cannot be tried by the Court in a bench trial without a jury in the trial scheduled to commence in February 2012?**

In answering this question, the United States shall limit itself to the issue as it relates to its claims in Case No. 10-4563. In that context, and insofar as the limited scope of consolidation

sought by the United States, the answer to the Court's question is "no."

The United States' Complaint was filed under the Court's admiralty jurisdiction and, relevant here, presently asserts claims for *judicially* assessed civil penalties under the CWA, 33 U.S.C. § 1321(b)(7), and a request for declaratory relief pursuant to provisions of OPA, 33 U.S.C. § 2717(f)(2) and the Declaratory Judgment Act, 28 U.S.C. § 2201.

The only parties named as defendants in the United States' action are BP Exploration & Production Inc. ("BP"), Anadarko E&P Company LP ("Anadarko E&P"), Anadarko Petroleum Corporation ("Anadarko Petroleum"), MOEX Offshore 2007 LLC ("MOEX"), Triton Asset Leasing GmbH ("Triton"), Transocean Holdings LLC ("Transocean Holdings"), Transocean Offshore Deepwater Drilling Inc. ("Transocean Offshore"), Transocean Deepwater Inc. ("Transocean Deepwater"), and QBE Underwriting Ltd., Lloyd's Syndicate 1036 ("Lloyd's").[4]

Of these parties, *only* Anadarko Petroleum and Anadarko E&P (collectively "Anadarko") have sought a jury. To the extent other parties in the MDL or Limitation case have asserted the right to a jury, *e.g.,* Cameron, those parties are not defendants in the United States' action and their claimed jury rights are irrelevant to the Government's case and the issue of consolidation for the United States.

The jury issue as it relates to consolidation of the United States' claims is therefore focused solely on Anadarko. In the context of the advantages of joint trials concerning the United States' Declaratory Judgment (OPA) and CWA claim against BP, the Transocean entities, MOEX, and Lloyds, we suggest that Anadarko's jury issue conjures the proverbial

---

[4] Lloyd's was named solely in the OPA cause of action and not as a Clean Water Act penalty defendant.

image of the tail attempting to wag the dog.

Anadarko has not explained its position, but we assume that its claim to the right to a jury stems from the Supreme Court's decision in *Tull v. United States,* 481 U.S. 412, 107 S.Ct. 1831 (1987). *Tull* involved a civil penalty action pursuant to section 309(d) of the CWA, 33 U.S.C. § 1319(d). The Court determined that the defendant was entitled to a jury trial concerning the liability aspect of the penalty claim, but that the trial court and not a jury should determine the amount of the penalty.

A full discussion of the how the Seventh Amendment applies to a claim under Section 311(b) of the CWA (*i.e.*, the claim filed by the United States in 10-4563) is beyond the scope of this brief. It is worth pointing out, however, that the CWA is a strict liability statute which is triggered by what is commonly called the "sheen test." As it implies, discharging oil sufficient to create a mere sheen on the water violates the statute. *See*, 40 C.F.R. § 110.3(b); *Chevron U.S.A., Inc. v. Yost*, 919 F.2d 27, 30-31 (5th Cir. 1990) (upholding EPA's "sheen" test). As demonstrated in the United States' "Motion for Summary Judgment as to the Liability of the Anadarko Defendants" [Doc. 2587], this spill at issue more than meets the "sheen" test, as well as other elements of liability. Moreover, neither fault nor intent are relevant to strict liability under 33 U.S.C. § 1321(b)(7), except in connection with the *amount* of penalty imposed, *United States v. Coastal States Crude Gathering Co.*, 643 F.2d 1125, 1127 (5th Cir. 1981), which would not be determined at the Phase 1 or Phase 2 trial.

In any event, the list of jury-triable elements necessary for liability determinations under the CWA for purposes of *Tull*, as opposed to bench-triable elements of the quantum of the penalty that remain within the province of the trial court, need not be resolved at this time: for

purposes of this brief and the issue of consolidation, the answer to the Court's question is an exceedingly practical one.[5] First, were the Court to decline consolidation as it relates to Anadarko, consolidation as against the other defendants (BP, the Transocean entities, and Lloyds) would still be proper. But consolidation is entirely appropriate, even for the Anadarko defendants.

To begin with, regardless of the United States' claims against Anadarko, the latter will still be a party at the Phase 1 and 2 trials in its capacities as a tendered third-party defendant to plaintiffs, as a third-party defendant, and as a cross-claim defendant and, in those roles, it will be subject to findings on gross negligence, willful misconduct, breach of regulation, *etc.* Yet even as to issues that Anadarko might argue are subject to jury trial on the Government's claims, any number of things may happen that would moot or entirely resolve the jury question, *e.g.*:

- Issues arguably subject to a jury right could be resolved by summary judgment;[6]
- Anadarko could withdraw the jury demand for a variety of reasons;
- Stipulation(s) could be reached that would moot the jury issue;
- Issues arguably subject to a jury right could be settled or narrowed so as to moot the jury issue.

We also point out that if the claims against Anadarko are consolidated, and *if* it then turned out that a jury as to some issue is warranted, and *if* the jury claim were to remain at issue

---

[5] The United States reserves the right to seek to strike or clarify the jury demand of the Andadarko Defendants, including the right to seek a ruling on exactly which elements are triable to a jury. But such a discussion seems too detailed for today's purposes, and may be irrelevant if the Court grants the pending Motion for Summary Judgment.

[6] *See* the "Motion for Summary Judgment as to . . . Anadarko Defendants" [Doc. 2587].

despite the other possible outcomes outlined in the bullet points above – then the *worst* that would happen would be that the bench findings relevant to Anadarko in the private party case tried in Phase 1 would be inapplicable to Anadarko in the portion of the United States' case tried in Phase 1.  As a procedural matter, the latter circumstance may be performed under Fed. R. Civ. P. 21, which allows for severing claims for various reasons.  Thus, any post-trial findings against BP, Transocean, and MOEX would be binding in 10-4563, but no findings would be made against the Anadarko defendants in that case.

However, if the Court rules after the trial that the Anadarko defendants acted with gross negligence, then the United States would simply seek entry of partial summary judgment in 10-4563 based on collateral estoppel.  Collateral estoppel could be entered against the Anadarko defendants without impinging any jury rights. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 337 (1979) (Seventh amendment right to jury does not bar use of non-mutual offensive collateral estoppel in a subsequent action against defendant who, in a previous action asserted by another plaintiff in a bench trial, lost with respect to issues common to both cases).

Conversely, if the Court does not order the limited consolidation of the Government's case against Anadarko, the Court *a fortiori* will be consigning itself, akin to the characters in the movie *Groundhog Day,* to a *deja vu* trial in late 2012 or 2013.  One approach (consolidation) therefore offers flexibility.  The other sets the Court and the parties on a pre-determined, unalterable path that results in a waste of judicial resources.  We respectfully counsel the former approach.

**Question # 3:  What issues in cases assigned to MDL 2179 cannot be severed and <u>consolidated for trial pursuant to Fed. R. Civ. P. 42</u>?**

The United States is not seeking to sever any portion of its claims in 10-4563.  Fed. R. Civ. P. 21 provides for "severing" claims, either to correct misjoinder or for other purposes.  Application of Rule 21 creates two separate actions or suits that proceed as "discrete, independent action[s], and a court may render a final appealable judgment in either one of the resulting two actions notwithstanding the continued existence of unresolved claims in the other."  *Allied Elevator, Inc. v. East Texas State Bank of Buna*, 965 F.2d 34, 36 (5th Cir. 1992).  Rather, because of the overlapping evidence, the United States is seeking merely, under Rule 42(a), to "join" the trials on the "Event" and the other limited issues set out above.  Accordingly, no claims of the United States may be severed out of 10-4563 and consolidated into 10-2771, even though the trials of the overlapping factual issues based on similar evidence should be joined.

However, within case 10-4563 itself, there are issues that should be structured as "separate" trials under Rule 42(b), and, by this brief, the United States recommends such separation, as follows.

First, in the matter of 10-4563, the Court should use Rule 42(b) to separate the issues related to "the Event" (including gross negligence, wilful misconduct, and violations of laws) into an "event phase trial" separate from the trial of the other issues in 10-4563.  Thus, for example, assessment of a specific amount of a civil penalty would not be part of the "Event" or Phase 1 trial in 10-4563.  Similarly, Natural Resource Damages claims – which involve issues such as "fate and transport" of the oil throughout the ecosystem, whether living plants or animals were exposed to that oil, and whether they were harmed – would remain separated from any issues related to rig operations or well control in 10-4563.  This procedure is similar to a

12

traditional "bifurcation" of liability from damages.

Second, the Court should use Rule 42(a) to "join" the Phase 1 trial in 10-4563 with the Phase 1 trial in 10-2771, as explained above in the answer to Question # 2. However, the remainder of the United States' case – such as the amount of civil penalty – should not be consolidated or even joined for trial purposes with 10-2771, because only the issues of substantial overlap – rig operations, acts of the various defendants that contributed to the explosion, violations of law, *etc.* – should be joined for trial. Moreover, claims for Natural Resource Damages, other OPA damages, cannot be consolidated or joined as they have not yet even been filed.

Third, any remedy-related topics in *United States v. BP, et al.,* should be tried later (if needed) in a separate trial within 10-4563, and should not be tried jointly with 10-2771 or any other case filed in the MDL. Such remedy trials are not yet scheduled and should not be scheduled until the parties in 10-4563 have met and conferred.[7]

**Question # 4: For those issues in cases assigned to MDL 2179 that cannot be tried by the Court in a bench trial without a jury, what alternative, manageable and <u>efficient trial plan should be used</u>?**

In answering this question, the United States shall limit itself to the issue as it relates to *United States v. BP, et al., Case No.* 10-4563.

As explained under Question 1 and 3, there are remedy-related topics in *United States v. BP, et al.,* that should be tried later (if needed) in one or more separate trials within 10-4563, and should not be tried jointly with 10-2771. Such remedy trials are not yet scheduled, and are not

---

[7] Although, entry of declaratory judgment of OPA liability, or some specific injunctive relief, may be appropriate after Phase I if the evidence adduced about rig and drilling operations satisfy the appropriate legal standards.

13

likely to be ready for trial during 2012. Thus, for today's purposes, the manageable trial plan is to defer that issue until the parties in 10-4563 have met and conferred regarding the timing of any remedy trials.

As for Phase 1 of the trial, if the trial on the Anadarko defendants is not joined due to Seventh Amendment issues,[8] there are two likely outcomes.

First, the Court could rule after the trial that the Anadarko defendants are liable, and *acted* with gross negligence or willful misconduct. In this case, the United States would seek entry of partial summary judgment in *United States v. BP, et al.*, 10-4563 based on collateral estoppel under *Parklane Hosiery,* 439 U.S. at 337.

Second, the Court could rule that the Anadarko defendants are not liable, or did *not act* with gross negligence or willful misconduct, in which case the United States would have the right to re-try the issues, *Mendoza,* 464 U.S. at 154, and the Anadarko defendants would get a jury in that new trial. *See, Tull,* 481 U.S. 412. In this situation, the United States will meet and confer with the Anadarko defendants about setting a re-trial date.

## CONCLUSION

The United States believes that its case, *United States v. BP, et al.*, 10-4563 should remain its own separate, non-consolidated action. However, certain discrete factual issues that are common with the private party claims in the Limitation case should be joined for trial

---

[8] We believe that the Andarko defendants are appropriate for joint trial under Rule 42(a) in the February 2012 trial (as discussed under Question 1 above).

purposes: gross negligence; willful misconduct, and violations of law by the various defendants.

Such a joint trial will save the Court and the parties time and money and avoid duplication.

                                              Respectfully submitted,

| | |
|---|---|
| IGNACIA S. MORENO | TONY WEST |
| Assistant Attorney General | Assistant Attorney General |
| Environment & Natural Resources Division | Civil Division |
| | |
| /s/ Steven O'Rourke | /s/ R. Michael Underhill |
| STEVEN O'ROURKE | R. MICHAEL UNDERHILL |
| Senior Attorney | Attorney in Charge, West Coast Office |
| Environmental Enforcement Section | Torts Branch, Civil Division |
| U.S. Department of Justice | U.S. Department of Justice |
| P.O. Box 7611 | 7-5395 Federal Bldg., Box 36028 |
| Washington, D.C. 20044 | 450 Golden Gate Avenue |
| Telephone: 202-514-2779 | San Francisco, CA 94102-3463 |
| Facsimile: 202-514-2583 | Telephone: 415-436-6648 |
| E-mail: steve.o'rourke@usdoj.gov | Facsimile: 415-436-6632 |
| | E-mail: mike.underhill@usdoj.gov |

JIM LETTEN
United States Attorney
SHARON D. SMITH
Assistant United States Attorney
Eastern District of Louisiana
Hale Boggs Federal Building
500 Poydras Street, Ste. B-210
New Orleans, LA 70130

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing "MEMORANDUM OF THE UNITED STATES IN RESPONSE TO THE ORDER RE: REQUESTED BRIEFING ON TRIAL PLAN ISSUES [DOC. 2402]" has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 6th day of June, 2011.

/s/ Steve O'Rourke
U.S. Department of Justice
