# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **In re: Oil Spill by the Oil Rig** | * | **MDL No. 2179** |
| **"Deepwater Horizon" in the Gulf** | * | |
| **of Mexico, on April 20, 2010** | * | **SECTION: J** |
| | * | |
| **This Document Relates to:** | * | |
| *All Cases and Consolidated Actions in* | * | **JUDGE BARBIER** |
| *MDL No. 2719 and Complaint and Petition* | * | **MAGISTRATE SHUSHAN** |
| *of Triton Asset Leasing GMBH, et al.* | * | |
| **Civil Action No. 10-2771** | * | |
| | * | |
| *    *    *    *    *    *    * | * | |

## MEMORANDUM OF ANADARKO PETROLEUM CORPORATION AND ANADARKO E&P COMPANY LP REGARDING
## BENCH TRIAL, JURY TRIAL, AND CONSOLIDATION ISSUES

TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................... 2
   A. Anadarko's Brief Answers to the Court's Questions............................................ 2
   B. Summary of Legal Argument ............................................................................... 3
II. ARGUMENT.................................................................................................................... 5
   A. There Are No Fact Issues Common to the Claims Presently in the Limitation Action That Cannot Be Tried Without a Jury ...................................... 5
      1. The Court has broad power to use the Limitation Action to resolve all claims other than CWA claims without a jury....................................... 6
      2. Common law claims consolidated in the Limitation Action must be tried to the bench...................................................................................... 7
   B. Because the United States and the PSC Claimants Have Alleged Admiralty Jurisdiction With Respect to Their OPA Claims, They Can Be Consolidated With the Limitation Action for Trial to the Bench .......................... 8
   C. Because Defendants Have a Constitutional Right to Demand a Jury on CWA Liability, the Court Should Reserve the United States' CWA Claims For a Separate Trial............................................................................................... 10
   D. Issues in Cases Assigned to MDL 2179 That Cannot Be Severed and Consolidated for Trial Pursuant to Fed. R. Civ. P. 42 ......................................... 12
   E. Alternative Trial Plan for Issues in Cases Assigned to MDL 2179 That Cannot be Tried by the Court in a Bench Trial Without a Jury........................... 12
III. CONCLUSION............................................................................................................... 13

## I.     INTRODUCTION

The Court has requested that the parties brief their positions on four specific questions relevant to the structure and composition of the trial beginning February 27, 2012. [Rec. Doc. 2402].   In this section, Anadarko sets out the Court's questions, and provides a brief statement of Anadarko's position with respect to each question.[1]   In the following sections, Anadarko sets out the legal and practical underpinnings for Anadarko's stated positions.

### A.     Anadarko's Brief Answers to the Court's Questions.

> *Question: Are there fact issues common to the claims, cross-claims, 14(c) claims, and/or third-party claims asserted in connection with the Transocean limitation action claims (No. 10-2771) that cannot be tried by the Court in a bench trial without a jury in the trial scheduled to commence in February 2012?*

Anadarko believes that there are no fact issues common to the claims, cross-claims, 14(c) claims or third-party claims presently in the Limitation Action that cannot be tried to the bench without a jury.

> *Question: Are there fact issues common to both United States' claims (No. 10-4563) and PSC-managed claims that cannot be consolidated for trial and tried to the bench in the limitation action (No. 10-2771) pursuant to Fed. R. Civ. P. 42?*

Anadarko believes that the United States' and the PSC-managed claims under the Oil Pollution Act ("OPA") can be consolidated and tried to the bench in the limitation action. However, the Supreme Court has held that defendants have a right to demand trial by jury on liability under the Clean Water Act ("CWA").  Thus, the United States' CWA claims (and similar claims brought under state law, if available) cannot be consolidated and tried to the bench.

---

[1]     Anadarko notes its broad agreement with the Plaintiffs' submission on these questions (Rec. Doc. 2658) with the exception of issues with respect to trial of the United States' civil enforcement action under the Clean Water Act, as discussed below.

Anadarko proposes that the Court maintain the current separation between the United States' CWA claims and the other claims in the Limitation Action.

> *Question: What issues in cases assigned to MDL 2179 cannot be severed and consolidated for trial pursuant to Fed. R. Civ. P. 42?*

Aside from the United States' CWA claims (and equivalent State Government statutory claims seeking penalties and fines, if available), Anadarko is not aware of issues in the pending cases assigned to MDL 2179 that cannot be consolidated for trial pursuant to Fed. R. Civ. P. 42.

> *Question: For those issues in cases assigned to MDL 2179 that cannot be tried by the Court in a bench trial without a jury, what alternative, manageable and efficient trial plan should be used?*

The United States' CWA claims (and any equivalent State Government claims seeking penalties and fines, if available) should be set aside for a jury trial later in the proceedings. Some issues of fact and law common to both the CWA and OPA claims resolved in the Limitation Act trial may be binding on a later CWA trial, for example, issues particular to a limitation action such as Transocean's privity of knowledge. *See Pershing Auto Rentals, Inc. v. Gaffney,* 279 F.2d 546, 552 (5th Cir. 1960) (admiralty court's findings on right to limit liability are *res judicata* in subsequent state court trials). However, Anadarko concurs with Plaintiffs that the Court should "not attempt to predict or formally determine the precise *res judicata* or collateral estoppel effects in advance of trial" on subsequent proceedings. Plaintiffs' Submission (Rec. Doc. 2658) at 2.

    **B.**    **Summary of Legal Argument**

During the proposed February 2012 Trial, the Court has indicated it will hear evidence in three distinct trial segments, with respect to: (1) the loss of well control that caused the explosion and fire on and the ensuing sinking of the *Deepwater Horizon* between April 20 and April 22, 2010; (2) source control and volume of discharge, and; (3) evidence covering containment, fate

and transport of oil, and oil fingerprint.  The Limitation Action is a quintessential non-jury, federal admiralty proceeding in which even claims that might otherwise carry a jury-trial right are tried to the bench.  As argued in Anadarko's Motions to Dismiss the Amended Master Complaints for Pleading Bundles B1 and B3, state law does not apply to this case, and all state law causes of action (which may otherwise involve rights to trial by jury) must be dismissed.  Because all claims in this case are governed in the first instance by substantive maritime law, and where maritime law is displaced, federal statutes, all of the issues of fact identified in each of the proposed trial segments may be tried to the bench.  Trial of those issues to the bench will proceed far more expeditiously than a jury trial, will foster settlement negotiations, will increase the likelihood of settlements, and will clarify the remaining issues on which evidence will need to be taken in a later trial.  A bench trial will also substantially reduce the burdens on witnesses and the enormous burden that could potentially fall on jurors.

In addition to the claims of the Plaintiffs in the MDL and the Limitation Action the United States has asserted claims against multiple defendants under the Oil Pollution Act ("OPA") and the Clean Water Act ("CWA").  Private parties whose cases are being managed by the Plaintiffs' Steering Committee ("PSC") have also asserted OPA claims.  While OPA claims and CWA claims do not, *per se,* fall within the reach of the Limitation Action, *see In re MetLife Capital Corp.* 132 F.3d 818 (1st Cir. 1997), both the United States and the Plaintiffs have invoked this Court's admiralty jurisdiction.  Neither the United States nor the Plaintiffs have demanded a jury, and indeed, Plaintiffs expressly argue that under Rule 9(h) their OPA claims can and should be tried to the bench.  Plaintiffs' Submission [Rec. Doc. 2658] at 708.   As the masters of their complaints, they are entitled to press their claims on the Court's "admiralty side"

and to elect non-jury procedures.[2]  Because OPA claims can be tried without a jury, their consolidation with other claims in the Limitation Action to be tried in the February 2012 trial will promote judicial economy, significantly reduce duplicative testimony and trials, increase the chances of settlements, and will not run afoul of any Seventh Amendment or due process rights.

However, the Supreme Court has held that <u>defendants</u> have a right to demand a trial by jury on liability under the CWA.[3]  Accordingly, the separation between the United States' CWA claims and the rest of the Limitation Action should be maintained, and the United States' claims under the CWA should be reserved for a later phase of the proceedings.

## II.     ARGUMENT

### A.     There Are No Fact Issues Common to the Claims Presently in the Limitation Action That Cannot Be Tried Without a Jury.

At the May 6, 2011 status conference, the Court indicated its general acceptance of the Trial Structure Plan submitted by the Non-Operating Defendants. (Rec. Doc. 2125).  Under that plan, liability issues including the acts and omissions of various parties and their proportionate fault in the context of the loss of well control and the ensuing explosion, vessel sinking and oil spill, will be addressed in the three phases of the February Trial.  Causation of specific injuries and damages arising out of party-specific injuries will be reserved for later proceedings. Depending upon findings and rulings made as a result of the February Trial, and depending upon the Court's exercise of its discretion under the Limitation Act, later proceedings can continue in the admiralty court or take place after the conclusion of the MDL and the return of remaining,

---

[2]     Since the unification of the admiralty rules and the civil rules of procedure in 1966, there is, technically, no longer a "law side" "equity side" or "admiralty side" in the district court.  The reference to "admiralty side," however, is a handy way for both the court and counsel to reference jurisdictional and procedural differences.

[3]     Anadarko Petroleum Corporation and Anadarko E&P Company LP requested a jury in the United States' case, 10-04536, on all issues so triable of right.  [Rec. Doc. 1991].

unsettled cases to their original forums. The proposed plan to try liability issues to the bench for claims already in the Limitation Action will comply with Article III, Section 2 of the Constitution; the Seventh Amendment; Fed. R. Civ. P. 42(b); and the dictates of due process.

> **1.      The Court has broad power to use the Limitation Action to resolve all claims other than CWA claims without a jury.**

There is no right to a jury in admiralty, *Waring v. Clarke,* 46 U.S. (5 How.) 441 (1847), although an admiralty court has the discretion to proceed with a jury. *See Fitzgerald v. United States,* 374 U.S. 16, 20 (1963). It is well established that in a limitation proceeding, "the court, sitting without a jury, adjudicates the claims" and "determines whether the vessel owner is liable and whether the owner may limit liability." *Lewis v. Lewis & Clark Marine, Inc.,* 531 U.S. 438, 448 (2001)(emphasis added). The scope of the limitation proceeding may extend beyond those issues to the adjudication of related claims, even if those claims do not necessarily arise under the court's admiralty jurisdiction. *Hartford Accident & Indemnity Co. v. Southern Pac. Co.,* 273 U.S. 207, 215-216 (1927) (holding that a limitation case is "the administration of equity in an admiralty court…[for] the complete…disposition of a many-cornered controversy….").

In *Hartford,* the Court explained that a court of admiralty acquires the right to "marshal all claims, whether of strictly admiralty origin or not" and to "furnish a complete remedy for the satisfaction of those claims." *Id.* at 217 (emphasis added). Thus, "[t]he litigation…may properly be carried to a complete settlement of all claims, without regard to whether the prayer for limitation of liability is denied or not." *Id.* at 221. *See also Just v. Chambers,* 312, 668, 690 (1941) (admiralty court "acquires the right to marshal all claims, whether of strictly admiralty origin or not…."); *British Transport Commission v. United States,* 354 U.S. 129, 138-140 (1957); *Endeavor Marine, Inc. v. Crane Operators, Inc.,* 234 F.3d 287, 290 n.2 (5th Cir. 2000) (*per curiam)* (limitation court's authority to consider and resolve wide range of issues "clearly

established law").[4]  Therefore, here the Court has broad discretion to consolidate into the Limitation Action related claims for damages under the general maritime law and OPA.

### 2. Common law claims consolidated in the Limitation Action must be tried to the bench.

When forced into a limitation case by the court's monition, parties who otherwise might resolve their common law claims before a jury must try their cases to the bench. *Pickle v. Char Lee Seaford, Incorporated,* 174 F.3d 444, 449 (4th Cir. 1999) ("The proceeding is conducted before a court in admiralty without a jury").  As articulated in *Dammers & Vanderheide & Scheepvaart Maats Christina B.V. v. Corona,* 836 F.2d 750, 755 (2d Cir. 1988):

> In exercising this equitable power, of course, the admiralty court must necessarily deny the claimants their right to pursue common law claims before a jury.  There is no right to a jury in actions instituted in admiralty, and the claimants are enjoined from pursuing common law actions in other forums.

*See also In re Tetra Applied Technologies L.P.,* 362 F.3d 338 (5th Cir. 2004) (tension between savings to suitors clause and Limitation Act highlighted by Rule F's authorization to enjoin other actions); *Consolidation Coal Co.,* 123 F.3d 126, 134 (3rd Cir. 1997); *In re McCarthy Bros. Co./Clark Bridge,* 83 F.3d 821, 826 (7th Cir.), *cert. denied,* 519 U.S. 950 (1996); *Pershing Auto Rentals, Inc. v. Gaffney,* 279 F.2d 546, 552 (5th Cir. 1960) (admiralty court's findings on liability are *res judicata* if claimants seek damages in state court trials after decree denying the right to limit).  Thus, to the extent any maritime or state common law claims are available in this case that might otherwise have had an attendant right to trial by jury, these claims must be tried to the bench.

---

[4]  Two exceptions to the maintenance of the limitation *concursus,* the sole-claimant case, *Langes v. Green,* 282 U.S. 531 (1931), and the adequate-fund case, *Lake Tankers Corp. v. Henn,* 354 U.S. 147 (1957), are not relevant to the *Deepwater Horizon* matter.

This is so even though some plaintiffs have allegedly suffered injuries on land, because admiralty jurisdiction clearly covers even those plaintiffs who suffered on-shore injuries, and vitiates their right to a jury trial. For example, the landmark case of *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Company*, 513 U.S. 527 (1995), involved a limitation proceeding concerning negligent conduct on a vessel working in navigable waters. The alleged fault of the vessel as well as the alleged fault of the City of Chicago (which owned the tunnel punctured by the pile driver) caused widespread, onshore damage to thousands of claimants. The limitation court's admiralty jurisdiction rested, in part, on the Admiralty Extension Act, 46 U.S.C. § 30101, which confirms that the admiralty and maritime jurisdiction of the federal courts extends to injury or damage caused by a vessel on navigable waters but "done or consummated on land." After the Supreme Court resolved the admiralty jurisdiction issues in *Grubart*, the limitation action proceeded in the trial court, and the trial court granted a motion to strike a jury demand in that case. *Great Lakes Dredge & Dock Company v. Jerome B. Grubart, Inc.*, Case No. 92-C-6754, 1996 U.S. Dist. LEXIS 5553 at *10-11 (N.D. Ill., April 25, 1996).

> **B.    Because the United States and the PSC Claimants Have Alleged Admiralty Jurisdiction With Respect to Their OPA Claims, They Can Be Consolidated With the Limitation Action for Trial to the Bench.**

Parties asserting claims under OPA can concurrently invoke the jurisdiction granted by OPA itself, 33 U.S.C. § 2717, and the federal court's admiralty and maritime jurisdiction, 28 U.S.C. § 1333(1). Because OPA is silent on the question of a jury trial right and also silent on other aspects of how the Court should proceed to try the OPA claims, plaintiffs can legitimately characterize their OPA claims as sounding in admiralty, and elect to go forward under the non-

jury admiralty procedures of the Court.[5]  Indeed, it is evident from the pleadings in this case that both the United States and the Plaintiffs have elected to proceed on a non-jury admiralty basis.

In the *Amended B1 Master Complaint* [Rec. Doc. 879], the *Amended B3 Master Complaint* [Rec. Doc. 881] and the *Voluntary Master Complaint for Local Government Entities* [Rec. Doc. 1093], the Plaintiffs invoke the admiralty and maritime jurisdiction of Article III, Section 2 of the Constitution and characterize their claims as "admiralty and maritime claims within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure." *B1 Master Complaint* at ¶¶ 219 and 220.  They also allege jurisdiction "pursuant to the Admiralty Extension Act, 46 U.S.C. § 30101, which extends the admiralty and maritime jurisdiction of the United States to cases of injury or damage, to person or property, caused by a vessel on navigable waters, even though the injury or damage is done or consummated on land." *B1 Master Complaint* at ¶ 223.  Concurrently, Plaintiffs invoke jurisdiction under OPA.  *B1 Master Complaint* at ¶ 221.  These parties make the same jurisdictional allegations in the *B3 Master Complaint* at ¶¶ 71 through 76.  Neither master complaint demands a jury.  The Plaintiffs' express pleading of Rule 9(h) unmistakably demonstrates their willingness and desire for the court to proceed without a jury. *Shull v. United Barge Lines,* Civ. Act. 09-5515, 2010 WL 745006 at *4 (E.D. La., Feb. 26, 2010 2010) (Barbier, J.) (although not irreversible, a clear statement of admiralty jurisdiction trumps other causes of action);

The United States does not cite Fed. R. Civ. P. 9(h) in its Complaint, but does expressly invoke the Court's admiralty jurisdiction by stating that "[t]his civil action is a case of admiralty and maritime jurisdiction." U.S. Compl. ¶ 6.  Further, in its jurisdictional allegations, the United States alleges six different bases for jurisdiction, including the Court's admiralty jurisdiction at

---

[5]  On this point, Anadarko and Plaintiffs are in broad agreement.  Rec. Doc. 2658 at 3-8.

28 U.S.C. § 1333 among them. The United States also captions its Complaint as one "IN ADMIRALTY," proclaiming an unmistakable intention to litigate under admiralty procedures.

The Fifth Circuit has held that "a plaintiff who asserts admiralty jurisdiction as a basis for the court's subject matter jurisdiction over a claim has automatically elected under Rule 9(h) to proceed under the admiralty rules, even if she states that her claim is also cognizable under diversity or some other basis of federal subject matter jurisdiction." *Luera v. M/V ALBERTA,* 635 F.3d 181, 189 (5th Cir. 2011). In *Conti v. Sanko Steamship Company, Ltd.,* 912 F.2d 816 (5th Cir. 1990), the plaintiff alleged both diversity and admiralty jurisdiction. The Fifth Circuit held that "in such circumstances the complaint invokes the admiralty jurisdiction of the court." *Id.* at 817; *see also Gilmore v. Waterman Steamship Corporation,* 790 F.2d 1244 (5th Cir. 1986) (affirming trial court's grant of the defendant's motion to strike the jury claim where plaintiff asserted dual grounds for jurisdiction). The same conclusion pertains here.

The United States' emphasis on admiralty jurisdiction is a clear indication that even though its OPA claims are outside the scope of the Limitation Act, the Court can include the alleged OPA claims as part of the February Trial.[6]

> **C.    Because Defendants Have a Constitutional Right to Demand a Jury on CWA Liability, the Court Should Reserve the United States' CWA Claims For a Separate Trial.**

Like OPA, the CWA is not subject to the Limitations Act. *See Complaint of Oswego Barge Corp.,* 664 F.2d 327, 330 (2d Cir. 1981) ("limits on recovery established by § 1321(f) are

---

[6] Some defendants in the case, presumably relying on *South Port Marina LLC v. Gulf Oil Limited Partnership,* 234 F.3d 58 (1st Cir. 2000), may assert on Seventh Amendment grounds that they are entitled to have a jury be the OPA fact-finder. *South Port Marina* is not binding on this Court and Anadarko respectfully submits that *South Port Marina* was decided erroneously and that no Seventh Amendment jury right attaches to the OPA claims in this case. In any event, because Plaintiffs and the United States have unequivocally invoked admiralty jurisdiction's non-jury procedures and are the masters of their complaints, *South Port Marina* offers <u>defendants</u> no assistance in efforts to secure a jury trial on OPA claims.

not to be varied by the different limits established by the Limitations Act"); *Complaint of Hokkaido Fisheries Co., Ltd.,* 506 F. Supp. 631 (D. Alaska 1981).  The CWA, however, does differ significantly in many respects from OPA.  OPA authorizes the government to recover money for the restitution of removal costs and for damages to natural resources, real or personal property, and various other categories of loss.  33 U.S.C. § 2702.  In contrast, the CWA is concerned not with compensation, but with punishment of culpable conduct and deterrence.[7]  It authorizes the government to prosecute alleged violations and to enforce criminal and civil remedies.  *See Exxon Shipping Co. v. Baker,* 554 U.S. 471 (2008) (government prosecuted both criminal and civil CWA cases as a result of Valdez oil spill); *Rapanos v. United States,* 547 U.S. 715, 721 (2006) (CWA imposes both criminal liability and steep civil fines).  The criminal punishments can include both jail sentences and fines.  Civil enforcement is another avenue for assessing and collecting fines.[8]

The Supreme Court has held that defendants have a constitutional right to demand a trial by jury with respect to the liability phase of a civil enforcement case under the CWA.  *Tull v. United States,* 481 U.S. 412, 422 (1987).[9]  The Court based its conclusion in large part on the punitive nature of the CWA civil enforcement action, and held that because of the "nature of the

---

[7] *Tull v. U.S.*, 481 U.S. 412, 422 (1987) ("The legislative history of the Act reveals that Congress wanted the district court to consider the need for retribution and deterrence, in addition to restitution, when it imposed civil penalties … Subsection 1319(d)'s authorization of punishment to further retribution and deterrence clearly evidences that this subsection reflects more than a concern to provide equitable relief.").

[8] The United States asserts a claim for civil penalties under the CWA, U.S. Compl. at ¶ 76, but has announced that it is conducting a criminal investigation into the *Deepwater Horizon* incident.  Article III, Section 2 of the Constitution will require trial by jury if any indicted defendant demands it, regardless of whether the United States' claims sound in admiralty.  *See Waring v. Clarke, supra*, at 459-460 ("Crimes, as well those of which the admiralty has jurisdiction as those of which it has not…the constitution declares shall be tried by a jury.").

[9] That case involved the illegal filling of an inland wetland and did not address the interaction of the CWA and federal admiralty jurisdiction.  The punitive nature of the CWA, however, even in the civil enforcement context, indicates that the CWA is different from OPA.

relief" authorized by the CWA, the defendant was "entitled to jury trial on demand." *Id.* at 423. Maintaining the current separation between the United States' CWA claims and the Limitation Action is the proper way to vindicate the defendants' right to jury trial.[10] Following the Limitation Act trial, the Court can revisit United States' claims under the CWA.[11] To the extent any State Government parties intend to prosecute State Clean Water Act claims or their equivalent (if the Court finds state remedies available) they too should be reserved for a later date with the potential option of trying them to a jury.

> **D.  Issues in Cases Assigned to MDL 2179 That Cannot Be Severed and Consolidated for Trial Pursuant to Fed. R. Civ. P. 42.**

Aside from the issues that are part of the United States' CWA claims (or equivalent State Government statutory claims seeking penalties and fines), and for the reasons set forth above, Anadarko is not aware of other issues in the pending cases assigned to the MDL 2179 that cannot be consolidated for trial pursuant to Fed. R. Civ. P. 42.

> **E.  Alternative Trial Plan for Issues in Cases Assigned to MDL 2179 That Cannot be Tried by the Court in a Bench Trial Without a Jury.**

As noted, in order to avoid potential issues involving jury rights attendant to the United States' CWA claims (and any equivalent State Government claims seeking penalties and fines) the Court should set aside the United States' CWA claims for a jury trial later in the proceedings.

---

[10] *See generally Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506-509 (1959) (holding where the presence of legal and equitable causes in the same case requires the selection between a jury and a non-jury determination of certain common issues, the discretion of the trial court is 'very narrowly limited and must, wherever possible, be exercised to preserve jury trial."); *Doughty v. Nebel Towing Co.*, 270 F. Supp. 957, 961 (E.D. La. 1967)(Rubin, J.) (holding that jury right attached to certain issues within limitation act proceeding, but that the court would try issues to which no jury right attached).

[11] *See, e.g., In re Ingram Barge Co.*, Civil Action No. 05-4419, 2006 WL 5377855 at *1 (E.D. La., Oct. 19, 2006) (Berrigan, J.) (holding that while the limitation action is pending there is no right to trial by jury, but with respect to claims typically affording right to trial by jury "if and when limitation is denied, the Court will revisit the jury demand issues….") *appeal dismissed by In re Complaint of Ingram Barge Co.,* 517 F.3d 246, 247 (5th Cir. 2008) (holding that grant of motion to strike jury demand was not subject to interlocutory appeal in admiralty because it did not resolve rights or liabilities of parties).

While it is possible that some issues of fact relevant to both the OPA and CWA claims could be resolved in the February 2012 trial, factual issues relevant to the CWA liability will involve a discreet set of facts that can be efficiently tried to a jury.

## III. CONCLUSION

For the foregoing reasons, Anadarko respectfully submits that the Court should conduct the February Limitation Action Trial to the bench on all claims available under the proper choice of law analysis set forth in the Non-Operating Defendants' Motions to Dismiss (*i.e.*, OPA and, for personal injury claims, claims under the general maritime law) in the Amended Master Complaints for Pleading Bundles B(1) and B(3), and the Voluntary Local Government Entity Master Complaint and the United States' OPA claim. In order to vindicate defendants' right to a jury determination of CWA liability recognized by the Supreme Court, the United States' CWA claims should not be consolidated with the Limitations Action for trial, and reserved for a later phase of the proceeding.

Respectfully submitted,

DATED: June 6, 2011                      BINGHAM McCUTCHEN LLP

/s/ *Ky E. Kirby*
Ky E. Kirby
ky.kirby@bingham.com
David B. Salmons
david.salmons@bingham.com
Michael B. Wigmore
michael.wigmore@bingham.com
Warren Anthony Fitch
tony.fitch@bingham.com
Randall M. Levine
randall.levine@bingham.com
2020 K Street, NW
Washington, DC 20006-1806
Telephone (202) 373-6000
Facsimile (202) 373-6001

James J. Dragna
jim.dragna@bingham.com
Bingham McCutchen LLP
355 South Grand Avenue
Suite 4400
Los Angeles, California 90071-3106
Telephone (213) 680-6436
Facsimile (213) 680-8636

KUCHLER POLK SCHELL
WEINER & RICHESON, LLC

Deborah D. Kuchler, T.A. (La. Bar No. 17013)
dkuchler@kuchlerpolk.com
Janika Polk (La. Bar No. 27608)
jpolk@kuchlerpolk.com
Robert Guidry (La. Bar No. 28064)
rguidry@kuchlerpolk.com
1615 Poydras Street, Suite 1300
New Orleans, LA  70112
Tel:  (504) 592-0691
Fax:  (504) 592-0696

- 15 -

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, pursuant to Pre-trial Order No. 12, I have caused the foregoing to be served on all counsel via the Lexis Nexis File & Serve system, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, who will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on June 6, 2011.

_____/s/ *Ky E. Kirby*_____
Ky E. Kirby
