IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * | MDL NO. 2179 |
| | * | SECTION J |
| | * | |
| | * | |
| This document relates to: | * | |
| *All cases* | * | Honorable CARL J. BARBIER |
| | * | |
| | * | Magistrate Judge SHUSHAN |
| | * | |
| | * | |

**BP'S TRIAL PLAN MEMORANDUM IN RESPONSE TO MAY 18, 2011 ORDER**

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Andrew B. Bloomer, P.C.
Catherine L. Fitzpatrick
Elizabeth A. Larsen
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL  60654
Telephone:   (312) 862-2000
Facsimile:   (312) 862-2200

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana  70139-5099
Telephone:   (504) 581-7979
Facsimile:   (504) 556-4108

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC  20004-2401
Telephone:   (202) 662-5985

*Attorneys for BP*

## INTRODUCTION

In its May 18, 2011 Order, the Court directed the parties to brief four issues related to the process of planning for trial in this multidistrict litigation proceeding. BP's responses to the Court's questions are as follows:

- *First*, there are no common issues currently asserted in connection with the Transocean limitation action claims that cannot be tried to the bench in the trial scheduled to begin in February 2012. The Court has admiralty jurisdiction over the limitation action—as well as all claims, cross-claims, 14(c) claims, and third-party claims related to that action— and thus no jury trial right attaches to those claims.

- *Second*, to date, all fact issues common to the United States' and the PSC's claims can be consolidated for a bench trial. The complaints filed by the United States and the PSC share the core issues to be tried in the limitation trial: the cause of the explosions and fire on the *Deepwater Horizon*, its sinking, and each defendant's responsibility for the casualty. The United States, however, has stated that it reserves the right to assert additional claims against the present defendants or others. It is impossible to know at this point whether any such claims would be inconsistent with a bench trial.

- *Third*, issues or claims requiring a jury trial may arise at later phases of the trial, and BP respectfully submits that it is premature to address these issues or claims at this time, while the precise contours of those later phases are still unclear. Further developments in the case may well make it unnecessary to resolve some of these issues or simplify how they should be resolved, and BP believes the Court and the parties are better served by deferring the question until after the early phases of the trial have concluded.

I.  **THE COURT MAY PROPERLY TRY IN A BENCH TRIAL ALL ISSUES COMMON TO THE CLAIMS, CROSS-CLAIMS, 14(c) CLAIMS, AND THIRD-PARTY CLAIMS ASSERTED IN CONNECTION WITH THE LIMITATION ACTION.**

> Question 1:  Are there fact issues common to the claims, cross-claims, 14(c) claims, and/or third-party claims asserted in connection with the Transocean limitation action claims (No. 10-2771) that cannot be tried by the Court in a bench trial without a jury in the trial scheduled to commence in February 2012?

BP's answer to this question is "no."  It is well settled in the Supreme Court, Fifth Circuit, and elsewhere that a limitation trial properly and necessarily encompasses all issues common to the claims, cross-claims, 14(c) claims, and third-party claims asserted in connection with the limitation action.  As the Supreme Court held more than 50 years ago, "[l]ogic and efficient judicial administration require that recovery against all parties at fault is as necessary to the claimants as is the fund which limited the liability of the initial petitioner." *British Transp. Comm'n v. United States*, 354 U.S. 129, 138 (1957); *see also In re Endeavor Marine Inc.*, 234 F.3d 287, 290 n.2 (5th Cir. 2000) ("the district court may resolve all cross-claims that arise out of the limitation proceeding."); *Val Marine Corp. v. Costas*, 256 F.2d 911, 915 (2d Cir. 1958) (It is "thoroughly clear that cross-claims or counterclaims are recognized in a limitation proceeding and that all claims should desirably be settled in that one proceeding."); Thomas J. Schoenbaum, 2 ADMIRALTY & MARITIME LAW, § 15-5 n.15 (4th ed.) ("Liberal rules of joinder are applied in limitation proceedings, allowing the court to adjudicate the claims and cross-claims of all interests.").

According to the Fifth Circuit, the Court should try all these issues in a bench trial without a jury.  *See Karim v. Finch Shipping Co., Ltd.*, 265 F.3d 258, 264 (5th Cir. 2001) ("The court takes jurisdiction to entertain those [Limitation Act] claims ***without a jury*** . . . .") (citing *Magnolia Marine Transp. Co. v. Laplace Towing Corp.*, 964 F.2d 1571, 1575 (5th Cir. 1992)

(emphasis added)).  A limitation action is maritime in nature, and there is no right to a jury trial, even as to claims that would otherwise provide a jury-trial right.  *See In re Dammers & Vanderheide & Scheepvaart Maats Christina B.V.*, 836 F.2d 750, 755 (2d Cir. 1988) ("In exercising this equitable power [under the Limitation Act], of course, the admiralty court must ***necessarily deny the claimants their right to pursue common law claims before a jury***.") (emphasis added); *Beiswenger Enters. Corp. v. Carletta*, 86 F.3d 1032, 1037 (11th Cir. 1996) ("In limitation proceedings, as in all admiralty cases, ***there is no right to a jury trial***.") (emphasis added); *In re Miss. Limestone Corp.*, No. 4:09-CV-00036, 2010 WL 4174631, at *1 (N.D. Miss Oct. 7, 2010) ("***no right to trial by jury***" while limitation action is pending) (emphasis added); *see generally Waring v. Clarke*, 46 U.S. (5 How.) 441, 458–60 (1847).[1]

Relying primarily on irrelevant case law arising outside of the Limitation Act context, Cameron has asserted that it has a right to a jury trial of certain claims, including OPA and products liability claims, that will be tried in connection with Transocean's limitation action.  It is mistaken.

For example, Cameron's reliance on case law involving jury trial rights under OCSLA in non-Limitation Act proceedings is irrelevant to whether or not there is any right to a jury trial in this Limitation Act proceeding.  *See Henson v. Odyssea Vessels, Inc.,* Civ. A. No. 07-613, 2008 WL 544184, at *4 (E.D. La. Feb. 25, 2008); *Debellefeuille v. Vastar Offshore, Inc.,* 139 F. Supp. 2d 821, 826 (S.D. Tex. 2001) (cited in Cameron's April 13 trial plan submission (Doc. 1940)); *see also Texaco Exploration & Prod., Inc. v. AmClyde Engineered Prods. Co., Inc.,* 448 F.3d

---

[1] Courts, including the Fifth Circuit, have recognized two limited exceptions to the federal district court's exclusive admiralty jurisdiction to preside over a Limitation Act proceeding: "(1) when the total amount of the claims does not exceed the shipowner's declared value of the vessel and its freight, and (2) when *all claimants* stipulate that the federal court has exclusive jurisdiction over the limitation proceeding, and that the claimants will not seek to enforce a damage award greater than the value of the ship and its freight until the shipowner's right to limitation has been determined by the federal court." *Odeco Oil & Gas Co., Drilling Div. v. Bonnette*, 74 F.3d 671, 674 (5th Cir. 1996) (emphasis in original).  Neither exception has any place here, of course.

3

760, 770-76 (5th Cir. 2006) (cited in Cameron's April 26, 2011 Supp. Br. (Doc. 2124) at 6) (examining right to a jury trial under OCSLA where there was neither a Limitation Act proceeding nor any maritime nexus at all).

Moreover, contrary to Cameron's contention, the Supreme Court's decision in *Beacon Theatres Inc. v. Westover,* 359 U.S. 500 (1959), is not even remotely "analogous" to the question of whether Cameron has a jury right in the Limitation Act proceeding. In *Beacon Theatres*, the Court examined a case involving a declaratory action, which ordinarily is tried without a jury, as well as common law claims. The Court held that the trial court's discretion to try the equitable claim first "is very narrowly limited and must, wherever possible, be exercised to preserve jury trial." *Id.* at 510.[2] But a jury trial's status in maritime claims is wholly different:

> "It has been recognized from early times that there is no right to jury trial on the admiralty side of the federal court, except as provided by Congress or as required by the Supreme Court in the exercise of its supervisory power over admiralty proceedings."

Wright & Miller, 9 Fed. Prac. & Proc. Civ. § 2315 (3d ed.); s*ee, e.g.*, *Becker v. Tidewater, Inc.*, 405 F.3d 257, 259 (5th Cir. 2005) (finding that the presence of non-maritime claims "do[es] not alter the historical exclusion of jury trials for admiralty suits").[3]

---

[2] In its June 6 Brief, Cameron suggests that *Garcia v. The Queen, Ltd.*, 487 F.2d 625, 628-29 & n.8 (5th Cir. 1973), extended the *Beacon Theatres* Seventh Amendment holding to an admiralty proceeding. (Doc. 2667 at 5.) Not so. In *Garcia*, the plaintiff had a statutory right to a jury trial because of his Jones Act claim. After the parties had agreed to an initial bench trial that would only resolve whether insurance coverage existed (a purely legal issue for the court under governing Florida law), the district court abused its discretion by also deciding liability issues necessary to the Jones Act claim. The Fifth Circuit explained that "[u]nder the teachings of *Beacon Theatres*, . . . the effect of the trial judge's considering and ruling upon the question of liability in a trial by stipulation and order limited to the single issue of insurance coverage, was to deprive appellant of his right to a jury trial on issues of fact." *Id.* at 628 n.8. Thus, *Garcia* involved a court overstepping its authority to make rulings on question of law and thus intruding on the plaintiff's uncontroversial statutory right to have a jury decide factual issues related to its Jones Act claim; it had nothing to do with any purported Seventh Amendment right to a jury trial in an admiralty proceeding.

[3] Likewise, Cameron's reliance on certain non-maritime cases (*Chauffers Local No. 391 v. Terry,* 494 U.S. 558, 564-65 (1990); *Foster v. National Fuel Gas Co.,* 316 F.3d 424, 427 (3d Cir. 2003); *Joy v. Bell Helicopter Textron, Inc.,* 999 F.2d 549 (D.C. Cir. 1993)) in its April 26 Supplemental Brief (Doc. 2124) provides no support for its right to a jury trial in a Limitation Act proceeding.

4

Finally, Cameron's reliance on two wholly distinguishable out-of-Circuit Limitation Act cases is equally unavailing. Cameron cites two cases in which a court granted a jury trial to a Jones Act claimant in a limitation proceeding. (Cameron's Apr. 13 Br. (Doc. 1940) at 8)  The cases provide no support for **Cameron's** right to a jury trial in *this* limitation proceeding. In each case, the court exercised its discretion and granted a jury trial in connection with a claim under the Jones Act—a traditional bulwark of jury trials in admiralty. Cameron cites no authority, however, for the proposition that products liability and OPA contribution claims do not follow the settled rule of nonjury trials in limitation actions.

In *Newton v. Shipman,* 718 F.2d 959 (9th Cir. 1983), the court noted that "the admiralty court in limiting liability under the Limitation Act, [ ] ***proceeds in equity without a jury***," but applied the well-established "single claimant exception," under which the district court must "dissolve its injunction to permit the single claimant to pursue a separate action and a jury trial" if "only one [limitation] claim has been filed and 'nothing appears to suggest the possibility of another claim.'" 718 F.2d at 962 (emphasis added).[4]  This exception has no bearing whatsoever on the Transocean limitation proceeding, which has thousands of claimants.

In *Red Star Towing & Transportation v. The Ming Giant,* 552 F. Supp. 367 (S.D.N.Y. 1982), the court "reserved decision on the motion [to strike claimant's demand for a jury trial] until after trial, [and] empanel[ed] a jury whose verdict could be treated as binding, advisory, or surplusage, depending on the eventual resolution of the issue." 552 F. Supp. at 370. After trial, the court concluded that "the circumstances of this case make it more appropriate to exercise that

---

[4]  Even in Limitation Act proceedings involving a single claimant, the claimant "must: (1) stipulate that the value of the limitation fund equals the combined value of the vessel and its cargo; (2) waive the right to claim res judicata based on any judgment rendered against the vessel owner outside of the limitation proceedings; and (3) concede the district court's exclusive jurisdiction to determine limitation of liability issues." *Newton*, 718 F.2d at 962; *see also* n.1, *supra* (discussing the exceptions to exclusive admiralty jurisdiction for Limitation Act proceedings, including the exception when all claimants enter an appropriate stipulation, of which the single claimant exception is a variant).

5

discretion so as to give precedence to plaintiff's jury demand." The court emphasized the relative importance of claimant's Jones Act claim "as compared to other claims at issue in the limitation proceeding." *Id.* at 371.[5] Here, by contrast, the claims against Cameron (leaving aside the issue of whether they would require a jury trial outside of the Limitation Act context) are just one relatively small portion of the entire universe of Limitation Act claims, cross-claims, 14(c) claims, and third-party claims. In addition, the full scope of claims against Cameron in the limitation proceeding go well beyond claims for personal injury.[6] The Court may try issues common to the various claims in the Limitation Act proceeding to the bench.

## II. ALL FACT ISSUES COMMON TO THE UNITED STATES' AND THE PSC'S CLAIMS CAN BE CONSOLIDATED FOR A BENCH TRIAL.

> Question 2: Are there fact issues common to both United States' claims (No. 10-4563) and PSC-managed claims that cannot be consolidated for trial and tried to the bench in the limitation action (No. 10-2771) pursuant to Fed. R. Civ. P. 42?

BP's answer to this question is "no." The Court's authority under Fed. R. Civ. P. 42(a) to consolidate separate claims for trial "is as broad as the subject matter jurisdiction of the federal courts." *See* Charles Alan Wright, Arthur R. Miller, *et al.*, 9A Fed. Prac. & Proc. Civ. § 2384 (3d ed.). The Court may consolidate claims so long as "there is at least one common question of law or fact to justify bringing the actions together." *Id.* Claims by different plaintiffs arising

---

[5] *See also Weeks v. Reliance Ins. Co. of New York*, No. 81 Civ. 3479-CSH, 1985 WL 462, at *3 (S.D.N.Y. Mar. 28, 1995) (expressing "doubt as to whether the Judge [in *Red Star Towing*] was right in committing the limitation aspects of the case to the jury" and declining to follow the decision given that the *Red Star Towing* court was "influenced primarily by principles that arise out of cases applying the Death on the High Seas Act, 46 U.S.C. § 761, or claims for personal injury arising out of the Jones Act, 46 U.S.C. § 688"). Moreover, given that the other injured parties in *Red Star Towing* had settled before trial, 552 F. Supp. at 370, the court may have been applying the single claimant exception without explicitly terming it as such.

[6] The *Red Star Towing* court also considered the fact that the jury had already been empanelled and issued a verdict, and that both the court and the jury agreed that limitation must be denied. 552 F. Supp. at 371-72. Given the rule that "if limitation is denied, the judge is authorized to dissolve the injunction against outside proceedings, freeing the death claimant to pursue her action before a jury," the court found that it would be wasteful to require a retrial. *Id.*

6

from a single tort are frequently consolidated, including in maritime cases.  *Id.*; *Harcon Barge Co. v. D & G Boat Rentals, Inc.*, 746 F.2d 278, 286 (5th Cir. 1984) (affirming consolidation of actions by bridge owner against separate vessels for damage to bridge); *In re Dearborn Marine Serv., Inc.*, 499 F.2d 263, 271 (5th Cir. 1974) (affirming consolidation of limitation action with death action brought by captain's estate); *see also Bottazzi v. Petroleum Helicopters, Inc*., 664 F.2d 49, 50-51 (5th Cir. 1981); *Kershaw v. Sterling Drug, Inc*., 415 F.2d 1009, 1012 (5th Cir. 1969) ("Fed. R. Civ. P. 42(a) permits the trial judge to order consolidation when actions involving a common question of law or fact are pending.").

Consolidation is justified under Rule 42(a) if the cases share a single common issue; here, there are many.  For example, the United States has alleged responsibility by almost all defendants named by the PSC.  (*See* Compl. of the United States of America ("U.S. Compl.") ¶¶ 7, 15-23 (naming BP, Anadarko, MOEX, Transocean, and Lloyd's); *compare* B1 Bundle Master Complaint, Cross-Claim, And Third-Party Complaint ("Master Compl.") ¶¶ 210-237.) Indeed, the complaints filed by the PSC and the United States share the core issues that will be tried in the limitation trial:  the cause of the explosions and fire on the *Deepwater Horizon*, its sinking, and each defendant's responsibility for the casualty.  (*See e.g.*, U.S. Compl. ¶ 56; *compare* Master Compl. ¶¶ 258-261; 570-611.)

Furthermore, the claims asserted by the United States and the PSC—to the extent they do not qualify as Limitation claims, cross-claims, 14(c) claims, or third-party claims that necessarily must be brought as part of the Limitation action—are nevertheless maritime claims.  The casualty and resulting oil spill were caused by a vessel in navigable waters and the incident has (both generally and specifically) an impact on maritime commerce.  *See Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995).  Oil spills from vessels "have

consistently been held to be maritime torts." *In re Exxon Valdez*, 767 F. Supp. 1509, 1512 (D. Alaska 1991) (collecting cases).

Because these are maritime claims, if there is another basis for federal jurisdiction, the PSC and United States may nevertheless elect to proceed in admiralty, as they have here. *See* Fed. R. Civ. P. 9(h); (U.S. Compl. caption and ¶ 6 ("This civil action is a case of admiralty and maritime jurisdiction…"); (Master Compl. ¶ 253 ("The claims presented herein are admiralty or maritime claims within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.").[7] When a plaintiff designates its case as maritime pursuant to Fed. Rule Civ. P. 9(h), that election governs the jury trial issue: a properly designated maritime case must be tried to the bench without a jury. *See, e.g., Becker v. Tidewater, Inc.*, 405 F.3d 257, 259 (5th Cir. 2005) ("[I]t is well settled that the plaintiff is master of his complaint."); *T.N.T. Marine Serv., Inc. v. Weaver Shipyards & Dry Docks, Inc.,* 702 F.2d 585, 587 (5th Cir. 1983) (per curiam) ("[T]here is no right to a jury trial where the complaint contains a statement identifying the claim as an admiralty or maritime claim.").

In sum, no common issues limit the Court's discretion to consolidate the United States' and PSC's claims and try those claims in a bench trial.

---

[7] Although the United States did not refer to Rule 9(h) specifically, its assertions that the case is "maritime" and "in admiralty" are sufficient to invoke Rule 9(h). *See T.N.T. Marine Serv., Inc. v. Weaver Shipyards & Dry Docks, Inc.*, 702 F.2d 585, 587 (5th Cir. 1983) (per curiam) (holding that plaintiff sufficiently invoked admiralty jurisdiction under Rule 9(h) by stating that "[t]his is also a suit for breach of a maritime contract and for maritime tort."). BP notes that the United States' current complaint contains a broad "Reservation of Rights" to file "additional complaints under statutory law, common law, and/or general maritime law, to assert claims for penalties, damages, and any other legal and equitable remedies authorized by law and regulation . . . ." (U.S. Compl. ¶ 92.) There is no order in MDL 2179 setting a date by which the United States must amend its pleading and/or assert all claims against BP and other parties. BP respectfully submits that, for purposes of trial planning and clarity, the Court should establish an early date by which the United States should file all of its claims, as part of a Case Management Order addressing the United States' case.

## III. THE COURT SHOULD DEFER DECISION ON OTHER ISSUES UNTIL THEY ARE MORE CONCRETE.

> Question 3: What issues in cases assigned to MDL 2179 cannot be severed and consolidated for trial pursuant to Fed. R. Civ. P. 42?
>
> Question 4: For those issues in cases assigned to MDL 2179 that cannot be tried by the Court in a bench trial without a jury, what alternative, manageable and efficient trial plan should be used?

BP respectfully submits that decision on these issues should be deferred until a later date. First, as explained above and given the broad authority of the Court under the Limitation Act and under Fed. R. Civ. P. 42, BP believes that the Court may consolidate and decide all issues that will be tried in the initial phases or segments currently contemplated for the trial scheduled to begin in February 2012. There may be issues or claims requiring a jury trial that arise in later phases of the trial. These could include, for example, post-incident non-maritime personal injury claims, post-incident non-maritime property damage claims, and post-incident non-maritime economic loss claims. But BP respectfully submits that it is premature to address these issues or claims at this time, when the contours of those later phases are unclear. Indeed, further developments in the case (including pretrial motions) may make it unnecessary to resolve some of these issues or will simplify how they should be resolved. *See*, *e.g.*, *In re Complaint of Clearsky Shipping Corp.*, No. CIV.A. 96-4099 C/W, 2002 WL 1974098, at* 1 (E.D. La. Aug. 22, 2002) (Barbier) (noting Judge Sear's earlier observation that "he considered it within his equitable power to adjudicate all claims, cross-claims and third-party claims arising out of the allision"; describing and approving plan for bench trials that would resolve all remaining claims).

Second, BP respectfully submits that to the extent juries may be required to decide issues or claims tried in the later phases of the trial, the parties will be better able to propose appropriate trial plans when those issues or claims are less hypothetical. For example, once the Court has made necessary determinations in connection with the Limitation Act proceeding, it may be that

9

there are some cases that must be returned to their transferor courts for trial in order to conform with *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998).  *See id.* (holding that a district court which had conducted pretrial proceedings in multidistrict litigation could not permanently transfer cases to its court for trial proceedings pursuant to 28 U.S.C. § 1404(a)).  But determination of this issue and other issues, and the best way to address them, is better left until they become more concrete in connection with the progress of these multidistrict proceedings.

## CONCLUSION

Common claims, including those of the USA, are properly tried to the bench—whether as integral parts of the limitation case or as maritime claims for which the plaintiffs have invoked admiralty jurisdiction under Rule 9(h).  Any potential claims that may or may not have a jury trial right—to the extent any will exist after the trial phases currently being contemplated—can be addressed when time and the proceedings have provided clarity as to any such issues.

Respectfully submitted,


/s/ Don K. Haycraft
Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

and

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Andrew B. Bloomer, P.C.
Catherine L. Fitzpatrick
Elizabeth A. Larsen
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200


Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

***Attorneys for BP***

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 6th day of June, 2011.

/s/ Don K. Haycraft
Don K. Haycraft